SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ x
                               :
     In re                     :    Chapter 11
                               :
DELPHI CORPORATION, et al.,    :    Case No. 05-_____ (___)
                               :
               Debtors.        :    (Jointly Administered)
                               :
------------------------------ x

MOTION FOR ORDER UNDER 11 U.S.C. § 521 AND
FED. R. BANKR. P. 1007(a) AUTHORIZING DEBTORS TO (I) PREPARE
CONSOLIDATED LIST OF CREDITORS AND EQUITY SECURITY
HOLDERS IN LIEU OF MAILING MATRIX, (II) FILE CONSOLIDATED LIST OF
50 LARGEST UNSECURED CREDITORS, AND (III) MAIL INITIAL NOTICES

("CONSOLIDATED LISTS MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. § 521, Fed. R. Bankr. P. 1007(a), and Rule 1007-1 of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") authorizing the Debtors to (a) prepare a consolidated list of creditors and equity security holders in lieu of a mailing matrix, (b) file a consolidated list of the 50 largest unsecured creditors, and (c) mail initial notices. In support of this Motion, the Debtors submit the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005. In further support of this Motion, the Debtors respectfully represent as follows:

Background

A. The Chapter 11 Filings

1. On October 8, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession

---

[1] In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holding Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

2

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have moved this Court for an order authorizing joint administration of these chapter 11 cases.

2. No trustee, examiner, or creditors' committee has been appointed in the Debtors' cases.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4. The statutory predicates for the relief requested herein are sections 521 of the Bankruptcy Code, Rule 1007(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rule 1007-1.

B.  Current Business Operations Of The Debtors

5. With more than 180,000 employees worldwide, global 2004 revenues of approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1 billion,[2] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations without supervision from the Bankruptcy Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

6. Over the past century, the operations which are now owned by Delphi have become a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines. Today, the Company is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and

---

[2]  The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide. The Company supplies products to nearly every major global automotive original equipment manufacturer with 2004 sales to its former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

7. As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world. In the U.S., the Debtors employ approximately 50,600 people. Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan. Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions. Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8. Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of

customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9. Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle. When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base. The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.     Events Leading To Chapter 11 Filing

10. In the first two years following Delphi's separation from GM, the Company generated more than $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales. Reflective of a downturn in the marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005. The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[3]

---

[3]     Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

11. The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12. In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues and forward looking revenue requirements. Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13. Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses. This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan. The Debtors believe that a substantial segment of

Delphi's U.S. business operations must be divested, consolidated, or wound-down through the chapter 11 process.

14. Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

## Relief Requested

15. By this Motion, and in accordance with this Court's Amended General Order M-138, dated March 16, 1998, the Debtors seek entry of an order authorizing them to (a) prepare a consolidated list of creditors and a list of equity security holders in electronic format only, identifying their creditors in the format or formats currently maintained in the ordinary course of business in lieu of any required mailing matrix, (b) file a consolidated list of the 50 largest general unsecured creditors, and (c) mail initial notices. The Debtors further seek authority not to file either of the consolidated list of creditors or the list of equity security holders described in the preceding clause (a) with this Court concurrently with the filing of their bankruptcy petitions, but instead to make such lists available only upon request.

## Basis For Relief

A. Consolidated List Of Creditors And Equity Security Holders

16. In this instance, permitting the Debtors to maintain a consolidated list of their creditors in electronic format only in lieu of filing a creditor matrix is warranted under the circumstances. Indeed, converting the Debtors' computerized information to a format compatible with the matrix requirements would be an exceptionally burdensome task and would greatly

7

increase the risk and recurrence of error with respect to information already intact on computer systems maintained by the Debtors or their agents.

17. Furthermore, Local Rule 1007-1 directs a debtor to comply with any standing orders issued by this Court regarding the filing of creditor lists. Pursuant to Amended General Order M-138, a debtor filing a petition with more than 1,000 creditors and equity security holders, such as the case here, is directed to contact the Clerk of the Court and to use the services of a process and claims agent to assist with such lists.

18. Moreover, concurrently with this Motion and in accordance with Amended General Order M-138, the Debtors have filed an application seeking the appointment of Kurtzman Carson Consultants LLC ("KCC") as claims, noticing, and balloting agent in these chapter 11 cases. If such application is granted, KCC will, among other things, (a) assist with the consolidation of the Debtors' computer records into a creditor database and (b) complete the mailing of notices to the parties in such database.

19. After consultation with KCC, the Debtors believe that preparing the consolidated list in the format or formats currently maintained in the ordinary course of business will be sufficient to permit KCC to give notice promptly all applicable parties. Accordingly, it is in the best interest of the Debtors' estates to avoid the cost and risks associated with preparing and filing a separate matrix.

20. Relief similar to that requested herein has been granted in comparable chapter 11 cases in this district and elsewhere. See, e.g., In re Delta Air Lines, Inc., Case No. 05-17923 (Bankr. S.D.N.Y. Sept. 16, 2005); In re Nw Airlines Corp., Case No. 05-17930 (Bankr. S.D.N.Y. Sept. 15, 2005); In re Tower Auto., Inc., Case No. 05-10578 (Bankr. S.D.N.Y. Feb. 4, 2005); In re NRG Energy, Inc., Case No. 03-13054 (Bankr. S.D.N.Y. May 14, 2003); In re Enron

Corp., Inc., Case No. 01-16034 (Bankr. S.D.N.Y. Dec. 3, 2001); In re Laidlaw USA, Inc., Case No. 01-14099K (Bankr. W.D.N.Y. June 29, 2001).

B.      Single Consolidated List Of The 50 Largest General Unsecured Creditors

21.     Pursuant to Bankruptcy Rule 1007(d), a debtor shall file "a list containing the name, address and claim of the creditors that hold the 20 largest unsecured claims, excluding insiders ...." Fed. R. Bankr. P. 1007(d).  Because, however, many creditors are shared among certain of the Affiliate Debtors, and the Debtors would have to expend significant resources and effort to reconcile which claims are assertable against which Debtors, the Debtors request authority to file a single, consolidated list of their 50 largest general unsecured creditors.

22.     The Debtors have many thousands of potential unsecured creditors. Requiring each of the Debtors to file a separate top 20 list in each of their respective cases would generate almost a thousand names, addresses, and claim amounts. The Debtors do not believe that such a voluminous filing would facilitate the review of creditor claims by the Office of the United States Trustee (the "U.S. Trustee") or any other party-in-interest. In addition, the exercise of compiling separate "top 20" lists would consume an excessive amount of the Debtors' scarce time and resources. In light of the foregoing, the Debtors submit that authority to file a single, consolidated list of the 50 largest unsecured creditors in these chapter 11 cases is in the best interests of the estates and will facilitate the efficient and orderly administration of these chapter 11 cases.

23.     Relief similar to that requested in this Motion has been granted in other large chapter 11 cases. See, e.g., In re Tower Auto., Inc., Case No. 05-10578 (Bankr. S.D.N.Y. Feb. 4, 2005); In re NRG Energy, Inc., Case No. 03-13054 (Bankr. S.D.N.Y. May 14, 2003); In re Enron Corp., Inc., Case No. 01-16034 (Bankr. S.D.N.Y. Dec. 3, 2001); In re Laidlaw USA, Inc., Case No. 01-14099K (Bankr. W.D.N.Y. June 29, 2001).

9

C.  Mail Initial Notices To Creditors

24. As stated above, contemporaneously herewith, the Debtors by separate application are seeking authority to retain KCC as their notice and claims agent. The Debtors propose that KCC undertake all mailings directed by this Court, the U.S. Trustee, or as required by the Bankruptcy Code. Additionally, KCC will assist the Debtors in preparing creditor lists and mailing initial notices to the consolidated list of creditors and equity security holders, such as (a) a notice of filing of the chapter 11 cases, (b) a notice of a meeting of creditors under section 341 of the Bankruptcy Code, (c) notice of the time fixed for filing objections to and the hearing to consider approval of a disclosure statement or to consider confirmation of a plan, and (d) any correspondence the Debtors may wish to send to creditors and equity security holders as part of the Debtors' communication efforts to keep their creditors and equity security holders informed with respect to these chapter 11 cases.

25. With such assistance, the Debtors will be prepared to file a computer-readable consolidated list of creditors and a list of equity security holders upon request, and will be capable of undertaking all necessary mailings.

Notice

26. Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to (a) the U.S. Trustee, (b) the Debtors' 50 largest unsecured creditors, (c) counsel for the agent under the Debtors' prepetition credit facility, and (d) counsel for the agent under the Debtors' proposed postpetition credit facility. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

05-44481-rdd    Doc 4    Filed 10/08/05    Entered 10/08/05 17:06:51    Main Document
Pg 11 of 12

## Memorandum Of Law

27.     Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a) authorizing the Debtors to prepare a consolidated list of creditors and equity security holders in lieu of a mailing matrix, (b) authorizing the Debtors to file a consolidated list of their 50 largest unsecured creditors, (c) authorizing the Debtors to mail initial notices with the assistance of the notice and claims agent, and (d) granting the Debtors such other and further relief as is just.

Dated: New York, New York
October 8, 2005

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (pro hac vice motion pending)
    John K. Lyons
    Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession