SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                            :

     In re                      :    Chapter 11

                            :
DELPHI CORPORATION, et al.,    :    Case No. 05-_____ (___)

                            :
                 Debtors.   :    (Jointly Administered)

                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER
11 U.S.C. § 521(l) AND FED. R. BANKR. P. 1007 AND 9006(b) GRANTING
EXTENSION OF TIME FOR  DEBTORS TO FILE SCHEDULES AND STATEMENTS

("EXTENSION FOR SCHEDULES MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the

"Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11

U.S.C. § 521(l) and Fed. R. Bankr. P. 1007 and 9006(b) granting them additional time to file

their (a) schedules of assets, liabilities, and executory contracts and unexpired leases,

(b) statement of financial affairs, and (c) list of equity security holders.  In support of this

Motion, the Debtors submit the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11

Petitions And First Day Orders, sworn to October 8, 2005.  In further support of this Motion, the

Debtors respectfully represent as follows:

## Background

A.    The Chapter 11 Filings

1.    On October 8, 2005 (the "Petition Date"), each of the Debtors filed a

voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United

States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  The Debtors

continue to operate their businesses and manage their properties as debtors-in-possession

---

[1]    In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing
General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas
Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding),
Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc.,
Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems
Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems
Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc.,
Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics
(Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi
International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company,
Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi
Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holding
Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc.,
Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company,
Specialty Electronics, Inc., and Specialty Electronics International Ltd.

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have moved this
Court for an order authorizing joint administration of these chapter 11 cases.

2.   No trustee, examiner, or creditors' committee has been appointed in the
Debtors' cases.

3.   This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and
1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core
proceeding under 28 U.S.C. § 157(b)(2).

4.   The statutory predicates for the relief requested herein are section 521 of the
Bankruptcy Code and Rules 1007 and 9006(b) of the Federal Rules of Bankruptcy Procedure
(the "Bankruptcy Rules").

B.   Current Business Operations Of The Debtors

5.   With more than 180,000 employees worldwide, global 2004 revenues of
approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1
billion,[2] Delphi ranks as the fifth largest public company business reorganization in terms of
revenues, and the thirteenth largest public company business reorganization in terms of assets.
Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations
without supervision from the Bankruptcy Court, and will not be subject to the chapter 11
requirements of the U.S. Bankruptcy Code.

6.   Over the past century, the operations which are now owned by Delphi have
become a leading global technology innovator with significant engineering resources and
technical competencies in a variety of disciplines. Today, the Company is arguably the single

---

[2]   The aggregated financial data used in this Motion generally consists of consolidated information from
Delphi and its worldwide subsidiaries and affiliates.

3

largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide. The Company supplies products to nearly every major global automotive original equipment manufacturer with 2004 sales to its former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

       7.   As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world. In the U.S., the Debtors employ approximately 50,600 people. Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan. Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions. Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

       8.   Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive

4

supplier to a global supplier of components, integrated systems, and modules for a wide range of

customers and applications. Although GM is still the Company's single largest customer, today

more than half of Delphi's revenue is generated from non-GM sources.

9.     Due to the significant planning that goes into each vehicle model, Delphi's

efforts to generate new business do not immediately affect its financial results, because supplier

selection in the auto industry is generally finalized several years prior to the start of production

of the vehicle. When awarding new business, which is the foundation for the Company's

forward revenue base, customers are increasingly concerned with the financial stability of their

supply base. The Debtors believe that they will maximize stakeholder value and the Company's

future prospects if they stabilize their businesses and continue to diversify their customer base.

The Debtors also believe that this must be accomplished in advance of the expiration of certain

benefit guarantees between GM and certain of Delphi's unions representing most of its U.S.

hourly employees which coincides with the expiration of the Company's U.S. collective

bargaining agreements in the fall of 2007.

C.     Events Leading To Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the Company

generated more than $2 billion in net income. Every year thereafter, however, with the exception

of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net

operating loss of $482 million on $28.6 billion in net sales. Reflective of a downturn in the

marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005.

The Company experienced net operating losses of $608 million for the first six months of

5

calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion
less in sales than during the same time period in calendar year 2004.[3]

11.    The Debtors believe that three significant issues have largely contributed to
the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S.
legacy liabilities and operational restrictions driven by collectively bargained agreements,
including restrictions preventing the Debtors from exiting non-strategic, non-profitable
operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive
U.S. vehicle production environment for domestic OEMs resulting in the reduced number of
motor vehicles that GM produces annually in the United States and related pricing pressures, and
(c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent
and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio,
operational issues and forward looking revenue requirements.  Having concluded that pre-filing
discussions with its Unions and GM were not leading to the implementation of a plan sufficient
to address the Debtors' issues on a timely basis, the Company determined to commence these
chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and
preserve value.

13.    Through the reorganization process, the Debtors intend to achieve
competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive
legacy liabilities and burdensome restrictions under current labor agreements and realigning
Delphi's global product portfolio and manufacturing footprint to preserve the Company's core

---

[3]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily
related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

6

businesses. This will require negotiation with key stakeholders over their respective

contributions to the restructuring plan or, absent consensual participation, the utilization of the

chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned

in the Company's transformation plan. The Debtors believe that a substantial segment of

Delphi's U.S. business operations must be divested, consolidated, or wound-down through the

chapter 11 process.

14.   Upon the conclusion of this process, the Debtors expect to emerge from

chapter 11 as a stronger, more financially sound business with viable U.S. operations that are

well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all

of its resources to continue to deliver value and high-quality products to its customers globally.

Additionally, the Company will preserve and continue the strategic growth of its non-U.S.

operations and maintain its prominence as the world's premier auto supplier.

## Relief Requested

15.   Pursuant to section 521 of the Bankruptcy Code and Bankruptcy Rule

1007(c), a debtor is required, within 15 days after the Petition Date, to file with the court (a) a

schedule of assets, liabilities, and executory contracts and unexpired leases, (b) a statement of

financial affairs, and (c) a list of equity security holders (collectively, the "Schedules and

Statements"). By this Motion, the Debtors seek entry of an order extending the time for filing

the Schedules and Statements to January 22, 2006, without prejudice to the Debtors' ability to

request additional time or a waiver should it become necessary.

## Basis For Relief

16.   The Debtors are leading global suppliers of vehicle electronics,

transportation components, integrated systems and modules, and other electronic technology.

The Debtors' technologies and products are present in more than 75 million vehicles on the road

7

worldwide as well as in communication, computer, consumer electronic, energy, and medical applications. Accordingly, the Debtors have tens of thousands of creditors and other parties-in-interest. Given the size and complexity of the Debtors' operations, and the fact that certain prepetition invoices have not yet been received and/or entered into the Debtors' financial systems, the Debtors have not had the opportunity to gather the necessary information to prepare and file their respective Schedules and Statements.

17.     Although the Debtors have commenced the task of gathering the necessary information to prepare and finalize what will be voluminous Schedules and Statements, it would be virtually impossible for the Debtors to complete and file such Schedules and Statements within the 15-day period after the Petition Date that is provided by Bankruptcy Rule 1007(c). This Court may extend a debtor's time within which to file Schedules and Statements and may even dispense with the filing of the Schedules and Statements pursuant to section 521 of the Bankruptcy Code.

18.     The Debtors thus request that this Court extend the time within which the Debtors must file their Schedules and Statements to January 22, 2006. Because of the size and complexity of Debtors' operations and the time that would be required to compile the information for, and to complete, the Schedules and Statements, the Debtors respectfully submit that an extension of time to file the Schedules and Statements is appropriate. The Debtors request such an extension without prejudice to its rights to seek any further extensions or a waiver from this Court.

19.     The relief requested herein has been granted by this Court in other large chapter 11 cases in this district. See, e.g., In re Loral Space & Communications, Ltd., No. 03-41710 (Bankr. S.D.N.Y. July 15, 2003); In re WorldCom, Inc., No. 02-13533 (Bankr. S.D.N.Y.

8

July 22, 2002); In re Global Crossing, Ltd., No. 02-40188 (Bankr. S.D.N.Y. Jan. 28, 2002); In re

Enron Corp., No. 01-16034, (Bankr. S.D.N.Y. Dec. 3, 2001).

Notice

20.    Notice of this Motion has been provided by facsimile, electronic

transmission, overnight delivery, or hand delivery to (a) the Office of the United States Trustee,

(b) the Debtors' 50 largest unsecured creditors, (c) counsel for the agent under the Debtors'

prepetition credit facility, and (d) counsel for the agent under the Debtors' proposed postpetition

credit facility.  In light of the nature of the relief requested, the Debtors submit that no other or

further notice is necessary.

Memorandum Of Law

21.    Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order

(a) extending the time for filing the Schedules and Statements to January 22, 2006 and

(b) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
       October 8, 2005

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By: /s/ John Wm. Butler, Jr.
   John Wm. Butler, Jr. (pro hac vice motion pending)
   John K. Lyons
   Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700


   - and -


By: /s/ Kayalyn A. Marafioti
   Kayalyn A. Marafioti (KM 9632)
   Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

10