SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

         - and -

O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006
(202) 383-5300
Robert A. Siegel
Tom A. Jerman

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
     In re                     :     Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :     Case No. 05-____ (___)
                                          :
                  Debtors.     :     (Jointly Administered)
                                          :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x


MOTION FOR SCHEDULING ORDER ON DEBTORS' MOTIONS TO
(I) REJECT COLLECTIVE BARGAINING AGREEMENTS UNDER SECTION 1113(c) AND
(II) ELIMINATE RETIREE MEDICAL AND LIFE INSURANCE BENEFITS
FOR UNION-REPRESENTED RETIREES UNDER SECTION 1114(g)

("SECTION 1113 AND 1114 SCHEDULING MOTION")

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the

"Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11

U.S.C. §§ 1113 and 1114 and Fed. R. Bankr. P. 2002(m) and 9006 establishing notice

procedures, briefing schedule, and hearing date regarding the Debtors' Motions To (a) Reject

Collective Bargaining Agreements Under Section 1113(c) And (b) Eliminate Retiree Medical

---

[1]     In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing
General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas
Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding),
Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc.,
Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems
Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems
Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc.,
Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics
(Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi
International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company,
Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi
Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings
Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc.,
Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company,
Specialty Electronics, Inc., and Specialty Electronics International Ltd.

And Life Insurance Benefits For Union-Represented Retirees Under Section 1114(g) (the

"1113/1114 Motions").  Specifically, the Debtors propose the following schedule:

- December 16, 2005:   the Debtors to file the 1113/1114 Motions

- January 4, 2006:   any opposition to the 1113/1114 Motions to be filed and
  served

- January 11, 2006:   any reply to opposition to the 1113/1114 Motions be filed and
  served

- January 17, 2006:   hearing on the Debtors' 1113/1114 Motions

      In support of this Motion, the Debtors submit the Affidavit Of Robert S. Miller,

Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005.  In

further support of this Motion, the Debtors respectfully represent as follows:

Background

A.    The Chapter 11 Filings

      1.    On October 8, 2005 (the "Petition Date"), each of the Debtors filed a

voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United

States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  The Debtors

continue to operate their businesses and manage their properties as debtors-in-possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have moved this

Court for an order for joint administration of these chapter 11 cases.

      2.    No trustee, examiner, or creditors' committee has been appointed in the

Debtors' cases.

      3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.     The statutory predicates for the relief requested herein are sections 1113(d) and 1114 of the Bankruptcy Code, Rules 2002(m) and 9006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Local Rules 2002-2 and 9006-1.

B.     Current Business Operations Of The Debtors

5.     With more than 180,000 employees worldwide, global 2004 revenues of approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1 billion,[2] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations without supervision from the Bankruptcy Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

6.     Over the past century, the operations which are now owned by Delphi have become a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines.  Today, the Company is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide.  The Company supplies products to nearly every major global automotive original equipment manufacturer with 2004 sales to its former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

---

[2]     The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

7.    As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world.  In the U.S., the Debtors employ approximately 50,600 people.  Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan.  Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions.  Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.    Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's

forward revenue base, customers are increasingly concerned with the financial stability of their

supply base.  The Debtors believe that they will maximize stakeholder value and the Company's

future prospects if they stabilize their businesses and continue to diversify their customer base.

The Debtors also believe that this must be accomplished in advance of the expiration of certain

benefit guarantees between GM and certain of Delphi's unions representing most of its U.S.

hourly employees which coincides with the expiration of the Company's U.S. collective

bargaining agreements in the fall of 2007.

C.    Events Leading To Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the Company

generated more than $2 billion in net income.  Every year thereafter, however, with the exception

of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net

operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the

marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005.

The Company experienced net operating losses of $608 million for the first six months of

calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion

less in sales than during the same time period in calendar year 2004.[3]

11.    The Debtors believe that three significant issues have largely contributed to

the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S.

legacy liabilities and operational restrictions driven by collectively bargained agreements,

including restrictions preventing the Debtors from exiting non-strategic, non-profitable

operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive

U.S. vehicle production environment for domestic OEMs resulting in the reduced number of

---

[3]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily
related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

          12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues and forward looking revenue requirements.  Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

          13.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses.  This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan.  The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down through the chapter 11 process.

          14.    Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally.

Additionally, the Company will preserve and continue the strategic growth of its non-U.S.

operations and maintain its prominence as the world's premier auto supplier.

## Relief Requested

15.    As explained more fully below, the Debtors must obtain significant labor

and retiree cost savings and other modifications from the unions representing the employees of

the Debtors (collectively, the "Unions") in order to complete their transformation plan and

reorganize successfully.[4] If, however, the Debtors are unable to achieve voluntary contractual

modifications, the Debtors will be forced to seek authority of this Court (a) to reject the

collective bargaining agreements in place with each of the Unions and (b) to eliminate retiree

benefits for existing retirees who were members of the Unions.

## Basis For Relief

B.    The Need For Labor And Retiree Cost Reductions

16.    To carry out their restructuring plans, the Debtors must implement labor

cost-reductions with each of their Unions and eliminate the Debtors' retiree medical and life

insurance benefits.[5] Although the Debtors intend to pursue and hope to obtain ratified, signed

---

[4]    The Debtors have collective bargaining agreements in effect with the following International unions and their local unions: (a) United Auto Workers ("UAW"), representing approximately 24,000 Production and Skilled Trades employees at 21 plants nationwide, (b) International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communications Workers of America ("IUE-CWA"), representing approximately 8,200 Production and Skilled Trades employees at eight plants nationwide, (c) United Steelworkers of America ("USWA"), representing approximately 900 Production and Skilled Trades employees at 2 plants in Ohio, (d) International Association of Machinists and Aerospace Workers ("IAM"), representing approximately 40 Toolmakers and Machine Repairmen in Milwaukee, Wisconsin, (e) International Brotherhood of Electrical Workers ("IBEW"), representing approximately 60 Electricians and some Electronic Technicians in Milwaukee, Wisconsin, and (f) International Union of Operating Engineers ("IUOE"), representing approximately 20 Powerhouse Operators in Rochester, New York, Columbus, Ohio and Olathe, Kansas.

[5]    11 U.S.C. § 1114(a) defines "retiree benefits," which shall be referred to herein as "retiree medical benefits," to mean: payments to any entity or person for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise) maintained or established in whole or in part by the debtor prior to filing a petition commencing a case under this title. 11 U.S.C. § 1114(a).

cost-reduction agreements, there is no guarantee that these efforts will be successful.

Accordingly, because these labor cost reductions are necessary for the Debtors to complete a

successful reorganization, and because fairness and equity demand that all of the Debtors'

represented employees participate in the financial sacrifices necessary for the long-term success

of the Debtors, absent agreement, the Debtors intend to file, on or about December 16, 2005,

various 1113/1114 Motions to (a) reject the collective bargaining agreements of those Unions

with which, as of that date, the Debtors do not have ratified, signed cost reduction agreements

and (b) eliminate retiree medical and life insurance benefits of existing retirees whose initial

benefits were conferred by a collective bargaining agreement. The Debtors do not seek at this

time to terminate the recently reduced competitive salaried retiree health care plan.  The Debtors,

however, reserve the right to modify or eliminate such benefits at a later date if necessary to

successfully reorganize.

       17.    Therefore, by this Motion, the Debtors ask that this Court (a) schedule a

hearing on the Debtors' 1113/1114 Motions for January 17, 2005, to consider rejection of the

collective bargaining agreements with those Unions with which the Debtors do not have ratified,

signed cost-reduction agreements, and to consider elimination of their retiree medical and life

insurance benefits, (b) determine that such notice is appropriate under the circumstances

presented, (c) direct service of notice of the hearing on the 1113/1114 Motions in the manner set

forth in the proposed order attached hereto, and (d) set deadlines to file and serve any objections

to the 1113/1114 Motions and any reply memoranda as set forth in the proposed order.

C.    Request To Schedule Hearing On The Debtors' 1113/1114 Motions
      To Reject The Relevant Collective Bargaining Agreements And
      To Eliminate Retiree Medical And Life Insurance Benefits

18.    The Debtors believe that they must proceed on an expedited basis with the processes set forth in 11 U.S.C. §§ 1113 and 1114 for contract rejection and for elimination of retiree medical and life insurance benefits.  On or before October 21, 2005, the Debtors will provide their International Unions with written postpetition proposals pursuant to 11 U.S.C. § 1113 for modifications to their existing national collective bargaining agreements with the Debtors that are necessary to accomplish the Debtors' reorganization, as well as relevant information necessary for those International Unions to evaluate the proposals.  The national agreement modifications proposed would supercede all conflicting local agreements.  In the event that the parties are unable to reach agreement on modification to the national agreements by November 18, 2005, the Debtors will serve proposals to modify all of the local agreements as well.  In addition, on November 18, 2005, if they have not already done so, the Debtors will provide any "authorized representative" of the retirees (including any Retiree Committee or International Union which elects to represent its retirees)[6] with written post petition proposals pursuant to 11 U.S.C. § 1114 for elimination of their retiree medical and life insurance benefits, as well as relevant information necessary for the authorized representatives to evaluate the proposals.

19.    If the Debtors fail to reach ratified agreements with any of the Unions or authorized representatives on modifications to the collective bargaining agreements or elimination of retiree benefits by December 16, 2005, the Debtors will, on that date, file

---

[6]    Under 11 U.S.C. §1114(b)(1), the term "authorized representative" means the authorized representative designated for persons receiving any retiree benefits covered by a collective bargaining agreement or persons receiving retiree benefits not s covered by such an agreement.

10

1113/1114 Motions pursuant to 11 U.S.C. §§ 1113(c) and 1114(g) to reject the relevant

collective bargaining agreements and to eliminate retiree medical and life insurance benefits.

20.    Under 11 U.S.C. §§ 1113(d)(1) and 1114(k)(1), if the 1113/1114 Motions

are filed on December 16, 2005, the Debtors are entitled to request a hearing on the Motion

within 14 days after filing – i.e., December 30, 2005.  Due to the holiday season and the desire of

the Debtors to achieve negotiated consensual agreements, however, the Debtors request that the

hearing be delayed and commence on January 17, 2006.

21.    Although the Debtors' 1113/1114 Motions will be pursued to a hearing only

if they fail to reach voluntary agreements for modification of the collective bargaining

agreements, or if the authorized representatives fail to reach agreement on elimination of retiree

medical and life insurance benefits, the Debtors must expeditiously file and prosecute the

1113/1114 Motions and schedule a hearing on the 1113/1114 Motions in accordance with the

schedule set forth above.  In light of Debtors' financial situation, the cost savings that would

result from successful prosecution of the 1113/1114 Motions are necessary for a successful

reorganization because without them the Debtors will be unable to compete in the automotive

supplier marketplace.  Any delay in pursuing the 1113/1114 Motions would be inconsistent with

the necessity of a successful reorganization.

<u>Applicable Authority</u>

A.    Standards To Reject Collective Bargaining Agreements And Eliminate
       <u>Retiree Medical And Life Insurance Benefits Under Sections 1113 And 1114</u>

22.    Section 1113(c) of the Bankruptcy Code provides the exclusive means for a

debtor, other than a railroad, to reject a collective bargaining agreement.  Section 1113(c)

specifically provides:

>     The court shall approve an application for rejection of a collective
>     bargaining agreement only if the court finds that – (1) a trustee has,

11

> prior to the hearing, made a proposal that fulfills the requirements
> of subsection (b)(1); (2) the authorized representative of the
> employees has refused to accept such proposal without good cause;
> and (3) the balance of the equities clearly favors rejection of such
> agreement.

11 U.S.C. § 1113(c).

23.    Similarly, section 1114(g) of the Bankruptcy Code, which provides the

exclusive means for a debtor to eliminate retiree medical and life insurance benefits, provides

that:

> The court shall enter an order providing for modification in the
> payment of retiree benefits if the court finds that – (1) a trustee has,
> prior to the hearing, made a proposal that fulfills the requirements
> of subsection (f); (2) the authorized representative of the retirees
> has refused to accept such proposal without good cause; and (3)
> such modification is necessary to permit the reorganization of the
> debtor and assures that all creditors are treated fairly and equitably,
> and is clearly favored by the balance of equities[.]

11 U.S.C. § 1114(g).

24.    Subsection 1113(b)(1) and subsection section 1114(f) impose essentially

identical obligations on a debtor seeking rejection or elimination to:

> (A) [M]ake a proposal to the authorized representative of [the
> employees covered by such agreement][the retirees], based on the
> most complete and reliable information available at the time of
> such proposal, which provides for those necessary modifications in
> the [employees benefits and protections][retiree benefits] that are
> necessary to permit the reorganization of the debtor and assures
> that all creditors, the debtor and all of the affected parties are
> treated fairly and equitably; and (B) provide … the representatives
> of the [employees][retirees] with such relevant information as is
> necessary to evaluate the proposal.

11 U.S.C. §§ 1113(b)(1), 1114(f).

25.    In consideration of the foregoing, and in recognition of the exigent circumstances present here, the Debtors respectfully request that this Court enter an order with respect to the schedule for briefing and hearing on the Debtors' 1113/1114 Motions as follows:

(a)    based on the December 16, 2005 filing of the Debtors' 1113/1114 Motions, the hearing on the 1113/1114 Motions would be scheduled on January 17, 2006 at 10:00 a.m. or as soon thereafter as this Court can hear the matter;

(b)    any opposition to the 1113/1114 Motions would be required to be filed and served upon the Debtors and their counsel, with a copy to this Court's chambers, so as to be received no later than 5:00 p.m. on January 4, 2006; and

(c)    any reply to any opposition to the 1113/1114 Motions by the Debtors would be required to be filed and served upon the respective Unions and their counsel, with a copy to this Court's chambers, so as to be received no later than 5:00 p.m. on January 11, 2006.

### Notice

26.    Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to (a) the relevant International Unions, (b) the Office of the United States Trustee, (c) the Debtors' 50 largest unsecured creditors, (d) counsel for the agent under the Debtors' prepetition credit facility, and (e) counsel for the agent under the Debtors' proposed postpetition credit facility.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

### Memorandum Of Law

27.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a)

establishing the briefing schedule, hearing, and notice procedures for the Debtors' 1113/1114

Motions, and (b) granting the Debtors such other and further relief is just.

Dated:  New York, New York
        October 8, 2005

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (pro hac vice motion pending)
    John K. Lyons
    Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

    - and -

By: s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession