SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ x
                         :
      In re                    :   Chapter 11
                         :
DELPHI CORPORATION, et al.,    :   Case No. 05-_____ (___)
                         :
            Debtors.   :   (Jointly Administered)
                         :
------------------------------ x

MOTION FOR ORDER UNDER 11 U.S.C. § 105 ENFORCING
PROTECTIONS OF 11 U.S.C. §§ 362 AND 525 AND
APPROVING NOTICE TO CUSTOMERS, SUPPLIERS, AND OTHER
STAKEHOLDERS OF DEBTORS' NON-DEBTOR GLOBAL AFFILIATES
("NON-DEBTOR GLOBAL AFFILIATES NOTICE MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. § 105 (a) enforcing the protections of 11 U.S.C. §§ 362 and 525 and (b) approving notice to customers, suppliers, and other stakeholders of the Debtors' non-debtor global subsidiaries and affiliates (the "non-Debtor Global Affiliates"). In support of this Motion, the Debtors submit the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005. In further support of this Motion, the Debtors respectfully represent as follows:

Background

A.  The Chapter 11 Filings

1.  On October 8, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The

---

[1] In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, and Specialty Electronics, Inc., and Specialty Electronics International Ltd.

2

Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have moved this Court for an order for joint administration of these chapter 11 cases.

2. No trustee, examiner, or creditors' committee has been appointed in the Debtors' cases.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4. The statutory predicate for the relief requested herein is section 105(a) of the Bankruptcy Code.

B. Current Business Operations Of The Debtors

5. With more than 180,000 employees worldwide, global 2004 revenues of approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1 billion,[2] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations without supervision from the Bankruptcy Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

6. Over the past century, the operations which are now owned by Delphi have become a leading global technology innovator with significant engineering

---

[2] The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

resources and technical competencies in a variety of disciplines. Today, the Company is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide. The Company supplies products to nearly every major global automotive original equipment manufacturer with 2004 sales to its former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

        7. As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world. In the U.S., the Debtors employ approximately 50,600 people. Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan. Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions. Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

        8. Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and

liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.  Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle. When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base. The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.  Events Leading To Chapter 11 Filing

10.  In the first two years following Delphi's separation from GM, the Company generated more than $2 billion in net income. Every year thereafter, however,

5

with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales. Reflective of a downturn in the marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005. The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[3]

11. The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12. In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues and forward looking revenue requirements. Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the

---

[3] Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

6

Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13. Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses. This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan. The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down through the chapter 11 process.

14. Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15. To aid in the administration of the Debtors' bankruptcy cases and to further their reorganization prospects, the Debtors seek an order that confirms the

application of two key protections provided by the Bankruptcy Code: the automatic stay provisions of section 362 and the anti-discrimination provisions of section 525. The global nature of the Debtors' businesses and their extensive dealings with non-U.S. creditors who are unfamiliar with the protections afforded chapter 11 debtors under sections 362 and 525 of the Bankruptcy Code require that an order implementing these protections be entered by this Court.

16. In addition, to alleviate the confusion that likely will arise concerning the non-Debtor Global Affiliates, the Debtors seek approval from this Court of a notice (the "Notice") to the customers, suppliers, and other stakeholders of the non-Debtor Global Affiliates confirming that the non-Debtor Global Affiliates are not included in these U.S. chapter 11 cases and are not subject to (a) the supervision of this Court or (b) the provisions of the Bankruptcy Code.

### Basis For Relief

A.    Enforcing The Protections Of Sections 362 And 525 Of The Bankruptcy Code

17. As a result of the commencement of the Debtors' chapter 11 cases, and by operation of law pursuant to section 362 of the Bankruptcy Code, the automatic stay enjoins all persons and all governmental units from, among other things, (a) commencing or continuing any judicial, administrative, or other proceeding against the Debtors that was or could have been commenced before the Debtors' chapter 11 cases were commenced or recovering upon a claim against any of the Debtors that arose before the commencement of the Debtors' chapter 11 cases and (b) taking any action to collect,

8

assess, or recover a claim against any of the Debtors that arose before the commencement of the chapter 11 cases. See 11 U.S.C. § 362.

18.  In addition, section 525 of the Bankruptcy Code prohibits and enjoins any and all governmental units from, among other things, denying, revoking, suspending, or refusing to renew any license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtors solely because the Debtors are debtors under the Bankruptcy Code, may have been insolvent before the commencement of these chapter 11 cases, or are insolvent during the pendency of these chapter 11 cases. See 11 U.S.C. § 525.

19.  The injunctions contained in sections 362 and 525 of the Bankruptcy Code are self-executing. They constitute fundamental debtor protections which, in combination with other provisions of the Bankruptcy Code, provide the Debtors with the "breathing spell" that is essential to the Debtors' ability to reorganize successfully. See, e.g., Variable-Parameter Fixture Dev. Corp v. Morpheus Lights, Inc., 945 F. Supp. 603, 608 (S.D.N.Y. 1996) ("[Section] 362 is meant to give 'the debtor a breathing spell from his creditors [and] . . . permit [ ] the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.'") (quoting the legislative history of section 362).

20.  These protections extend to protect a debtor's property wherever it is located and by whomever held. See, e.g., Underwood v. Hilliard (In re Rimsat, Ltd.), 98 F.3d 956, 961 (7th Cir. 1996) (bankruptcy court's in rem jurisdiction over property of the estate permits injunctions against foreign proceedings pursuant to the automatic stay);

9

05-44481-rdd    Doc 19    Filed 10/08/05    Entered 10/08/05 17:57:38    Main Document
Pg 10 of 14


Hong Kong & Shangai Banking Corp., Ltd. v. Simon, 153 F.3d 991, 996 (9th Cir. 1998) (bankruptcy court may protect estate property wherever located by issuing a discharge injunction under section 524 of the Bankruptcy Code). See also 11 U.S.C. § 541(a) ("The commencement of a case under section 301... of this title creates an estate. Such estate is comprised of all the following property, wherever located and by whomever held . . . .") (emphasis added).

21. Notwithstanding the self-executing nature of sections 362 and 525 of the Bankruptcy Code, not all parties affected or potentially affected by the commencement of a chapter 11 case are aware of these Bankruptcy Code provisions. Nor are all parties cognizant of their significance and impact. Experience has shown that it is often necessary to advise third parties of the existence and effect of sections 362 and 525 of the Bankruptcy Code through a separate order. For these reasons, it is not uncommon for a bankruptcy court to issue an order embodying and restating the provisions of sections 362 and 525 of the Bankruptcy Code.

22. Such an order is particularly appropriate in the Debtors' chapter 11 cases because the Debtors operate global businesses across nearly 40 different countries. The Debtors believe that many of the non-U.S. creditors affected by sections 362 and 525 of the Bankruptcy Code likely are not aware of the significant and necessary protection these sections provide to the Debtors. Moreover, certain of the Debtors' assets are located around the globe, which may further confuse a non-U.S. creditor. Accordingly, the Debtors respectfully request that this Court issue an order which restates the applicable provisions of sections 362 and 525 of the Bankruptcy Code and approves a

notice substantially in the form of the Notice. The Debtors believe that the existence of such an order, which the Debtors will be able to transmit to affected parties, will maximize the protections afforded by sections 362 and 525 of the Bankruptcy Code. Further, the Debtors believe that the "automatic" and self-executing nature of these protections may not be recognized by foreign creditors or tribunals unless embodied in an order of this Court.

B. Approving Notice To Customers, Suppliers, And Other Stakeholders Of The Non-Debtor Global Affiliates

23. Because non-U.S. stakeholders may not be familiar with U.S. chapter 11 reorganizations, it is imperative to communicate to non-U.S. customers and suppliers that non-Debtor Global Affiliates are not included in these chapter 11 cases and thus are not subject to this Court's supervision or the chapter 11 process. Accordingly, to maintain the growth rate of global customer orders and to minimize the risk of an interruption in the supply of goods, the Debtors believe that they need a Court approved notice communicating this message. As explained above, Delphi and its subsidiaries are widely recognized as the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. Thus, word of these chapter 11 cases and their notoriety will quickly spread internationally to various third parties that deal with the Debtors and the non-Debtor Global Affiliates, likely creating confusion as to which Delphi affiliates are and are not debtors in these chapter 11 cases.

24.   As a result of this confusion, the Debtors believe that some third parties may be hesitant or, worse yet, refuse to deal with non-Debtor Global Affiliates under the mistaken assumption that such affiliates are part of these bankruptcy cases. Any detrimental effect resulting from the Debtors' bankruptcy cases on the operations of non-Debtor Global Affiliates will ultimately prejudice the Debtors' reorganization efforts. The Debtors believe that the Notice will help in educating the non-U.S. customers and suppliers, which in turn will assist the Debtors in achieving a successful reorganization.

Applicable Authority

25.   The court's general equitable powers are codified in section 105(a) of the Bankruptcy Code. Section 105(a) empowers the court to "issue any order, process, or judgment that is necessary to carry out the provisions of this title." 11 U.S.C. § 105(a). A bankruptcy court's use of its equitable powers to "authorize the payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not a novel concept." In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (citing Miltenberger v. Logansport, C. & S. W. R. Co., 106 U.S. 286 (1882)). Under section 105(a), a court "can permit pre-plan payment of a pre-petition obligation when essential to the continued operation of the debtor." In re NVR L.P., 147 B.R. 126, 127 (Bankr. E.D. Va. 1992).

26.   The Debtors respectfully request that the Court issue an order (a) enforcing the protections of sections 362 and 525 of the Bankruptcy Code and (b) approving the Notice stating that the non-Debtor Global Affiliates are not part of these chapter 11 cases and, accordingly, are not subject to operating their businesses within the

12

strictures of the Bankruptcy Code. The order will (i) protect the Debtors from unwitting parties, particularly those in non-U.S. jurisdictions who are not familiar with the Bankruptcy Code or its protections, who otherwise might violate these sections and (ii) eliminate the confusion that likely will arise with respect to non-Debtor Global Affiliates.

27. Accordingly, granting the relief requested herein will facilitate a smooth and orderly transition of the Debtors' operations into chapter 11 and minimize the disruption of their business affairs, without violating either the policies of chapter 11 or the rules of this Court. The Debtors, therefore, request that this Court grant the requested relief.

## Notice

28. Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to (a) the Office of the United States Trustee, (b) the Debtors' 50 largest unsecured creditors, (c) counsel for the agent under the Debtors' prepetition credit facility, and (d) counsel for the agent under the Debtors' proposed postpetition credit facility. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

29. Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, the Debtors respectfully request that the Court enter an order (a) enforcing the protections of sections 362 and 525 of the Bankruptcy Code, (b) approving the Notice, and (c) granting the Debtors such other and further relief as is just.

Dated: New York, New York
October 8, 2005

                              SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (pro hac vice motion pending)
    John K. Lyons
    Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By: s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession