```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
        In re                             :   Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :   Case No. 05-44481
                                          :
                    Debtors.              :
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
```

BRIDGE ORDER UNDER 11 U.S.C. §§ 105(a), 363, 364, 1107, AND 1108 AND FED. R. BANKR. P. 6004 AND 9019 AUTHORIZING CONTINUATION OF VENDOR RESCUE PROGRAM AND PAYMENT OF PREPETITION CLAIMS OF FINANCIALLY-DISTRESSED SOLE SOURCE SUPPLIERS AND VENDORS WITHOUT CONTRACTS

("ESSENTIAL SUPPLIERS BRIDGE ORDER")

Upon the motion for (I) Order Scheduling Expedited Hearing on "First Day Motions" and (II) Bridge Orders, dated October 8, 2005 (the "Expedited Hearing Motion"), of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,[1] debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), seeking, among other

---

[1] In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holding Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

things, entry of a bridge order under sections 105(a), 363, 364, 1107, And 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101 - 1330 (as amended, the "Bankruptcy Code") granting the relief requested in the Debtors' Motion For Order Under 11 U.S.C. §§ 105(a), 363, 364, 1107, and 1108 and Fed. R. Bankr. P. 6004 and 9019 Authorizing Continuation Of Vendor Rescue Program And Payment Of Prepetition Claims Of Financially-Distressed Sole Source Suppliers And Vendors Without Contracts dated October 8, 2005 (the "Motion"), on an interim basis pending this Court's disposition of the Motion on its merits after notice and a hearing; and this Court having determined that it has jurisdiction over the matters raised in the Expedited Hearing Motion and the Motion pursuant to 28 U.S.C. §§ 157 and 1334, this is a core proceeding under 28 U.S.C. § 157(b)(2), and the relief requested in the Expedited Hearing Motion and the Motion is essential to the continued operations of the Debtors' businesses and is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the Expedited Hearing Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1. The Debtors be, and they hereby are, authorized but not directed in the reasonable exercise of their business judgment, to pay all, a portion, or none of the prepetition claims (the "Essential Supplier Claims") owing to certain of the Debtors' suppliers that are essential to the uninterrupted functioning of the Debtors' business operations (the "Essential Suppliers") up to an aggregate amount of $45 million (the "Interim Essential Supplier Claims Cap") upon such terms and in the manner provided in this Order and subject to the provisions of the Debtors' postpetition financing agreement.

2. The Debtors shall undertake appropriate efforts to cause Essential Suppliers to enter into an agreement with the Debtors substantially similar to Exhibit A to the Motion as a condition of payment of their Essential Supplier Claims, which agreement shall include, but not be limited to, the following terms:

a. the amount of such Essential Supplier's estimated Essential Supplier Claims, accounting for any setoffs, other credits, and discounts thereto, shall be as mutually determined in good faith by the Essential Supplier and the Debtors (but such amount shall be used only for the purposes of determining such Essential Supplier's claim under this Order and shall not be deemed a claim allowed by this Court and the rights of all interested persons to object to such claim shall be fully preserved until further order of this Court, unless such claim is waived by the Essential Supplier pursuant to the terms of the letter);

b. MNS-2 payment terms and those other terms and conditions as are embodied in the Delphi's General Terms and Conditions or such other more favorable trade terms, practices, and programs in effect between such supplier and the Debtors in the twelve months prior to the Petition Date (the "Customary Trade Terms") between such Essential Supplier and the Debtors, or such other favorable terms as the Essential Suppliers and the Debtors may agree, and the Essential Supplier's agreement to provide goods and services in accordance with such terms;

c. the Essential Supplier's agreement to provide goods and services to the Debtors based upon Customary Trade Terms or on such other favorable terms as the Debtors and the Essential Supplier may otherwise agree for a period of no less than the greater of (i) two years from the Petition Date or (ii) the remaining term of the Essential Supplier's agreement with the Debtors and the Debtors' agreement to pay for such goods in accordance with such terms;

d. the Essential Supplier's agreement not to file or otherwise assert against any or all of the Debtors, their estates, or any other person or entity or any of their respective assets or property (real or personal) any lien (a "Lien"), regardless of the statute or other legal authority upon which such Lien is asserted, related in any way to any remaining prepetition amounts allegedly owed to the Essential Supplier by the Debtors arising from agreements or other arrangements entered into prior to the Petition Date, and, to the extent the Essential Supplier has already obtained or otherwise asserted such a Lien, the Essential Supplier shall take whatever actions are necessary to remove such Lien;

        e.      the Essential Supplier's acknowledgment that it has reviewed the terms and provisions of the Order and consents to be bound thereby; and

        f.      the Essential Supplier's agreement that it will not separately seek payment for reclamation claims outside the terms of this Order unless the Essential Supplier's participation in the program to pay Essential Supplier Claims pursuant to this Order is terminated; <u>provided</u>, <u>however</u>, that such reclamation claims shall, if thereafter raised by the Essential Supplier as permitted by this Order, be treated as though raised on the later of (i) the date of this Order and (ii) the date on which the Trade Agreement is executed by both parties.

        3.      An agreement executed by and between the Debtors and an Essential Supplier as set forth in this paragraph shall be referred to as a "Trade Agreement." This Order is intended to authorize, but shall not require, the Debtors to enter into Trade Agreements, it being the express intention of this Court that the Debtors shall enter into Trade Agreements only when the Debtors determine, in their sole discretion, that it is appropriate to do so.

        4.      The Debtors are authorized, in their sole discretion, to make payments on account of Essential Supplier Claims in the absence of a Trade Agreement after the Debtors have undertaken diligent efforts to cause the Essential Supplier to execute a Trade Agreement and if the Debtors determine, in their sole discretion, that failure to pay the Essential Supplier Claim is likely to result in irreparable harm to the Debtors' business operations.

        5.      If an Essential Supplier refuses to supply goods and/or services to the Debtors on Customary Trade Terms following receipt of payment on its Essential Supplier Claim (regardless of whether such Essential Supplier has entered into a Trade Agreement), or fails to comply with any Trade Agreement entered into between such Essential Supplier and the Debtors, then the Debtors may, in their sole discretion and without further order of this Court, (a) declare that any Trade Agreement between the Debtors and such Essential Supplier is terminated (if applicable) and (b) declare that the payments made to the Essential Supplier on account of its

4

Essential Supplier Claim be deemed to have been made in payment of then-outstanding postpetition claims of such suppliers without further order of this Court or action by any person or entity. In the event that such events occur, an Essential Supplier shall then immediately repay to the Debtors any payment made to it on account of its Essential Supplier Claims to the extent that payments on account of such Essential Supplier Claims exceed the postpetition claims of such suppliers then outstanding without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise. In the event that a Trade Agreement is terminated or an Essential Supplier refuses to supply goods and/or services to the Debtors on Customary Trade Terms following receipt of payment on its Essential Supplier Claim (regardless of whether such Essential Supplier has entered into a Trade Agreement), it is the explicit intention of this Court to return the parties to their position immediately prior to the entry of this Order with respect to all prepetition claims.

6. The Debtors may, in their sole discretion, reinstate a Trade Agreement if:

a. the Debtors determination to terminate a Trade Agreement is subsequently reversed by this Court, after notice and a hearing following a motion by the Essential Supplier, for good cause shown that the determination was materially incorrect;

b. the underlying default under the Trade Agreement was fully cured by the Essential Supplier not later than five business days following the Debtors' notification to the Essential Supplier that a default had occurred; or

c. the Debtors, in their discretion, reach a favorable alternative agreement with the Essential Supplier.

7. The Debtors are hereby authorized, but not the directed, to elect, in their sole discretion, to waive the conditions of this Order for payment of a claim under the Interim Essential Supplier Claims Cap (the "Waiver") and to conditionally pay the claim of such non-conforming supplier (the "Non-Conforming Supplier"), subject to the following procedures:

5

      a.    In the event that the Debtors grant a Waiver to a Non-Conforming Supplier, the Debtors shall file a Notice of Waiver, in substantially the form attached hereto as <u>Exhibit B</u> (the "Notice of Waiver"), and a proposed Order to Show Cause, in substantially the form attached hereto as <u>Exhibit C</u> (the "Order to Show Cause"), with this Court within three business days of the payment pursuant to the Waiver and serve such Notice of Waiver and Order to Show Cause on (i) the Non-Conforming Supplier, (ii) the Office of the United States Trustee, (iii) counsel for the official committee of unsecured creditors appointed in these cases (the "Creditors' Committee"), and (iv) counsel for the agent under Debtors' proposed postpetition credit facility; <u>provided</u>, <u>however</u>, that the Debtors will not be required to file a Notice of Waiver and an Order to Show Cause if, within three business days following the grant of the Waiver, the Creditors' Committee ratifies the Waiver in writing to the Debtors.

      b.    At the first regularly-scheduled hearing occurring at least five business days following entry of the Order to Show Cause by this Court, the Non-Conforming Supplier shall be required to appear before this Court and demonstrate that such Non-Conforming Supplier should not be held in violation of the automatic stay.

      c.    Should this Court determine that, by its conduct, the Non-Conforming Supplier has violated the automatic stay, the Non-Conforming Supplier shall be required to disgorge the amount of the payment made by the Debtors pursuant to the Waiver, plus attorneys' fees and interest accrued on such amount at the rate specified under the relevant agreements governing the Debtors' debtor-in-possession credit facility or such other higher rate as this Court specifies, within three business days of entry of the order holding such Non-Conforming Supplier in violation of the automatic stay.

      d.    Nothing contained herein shall limit the Debtors' right to file any motions, adversary complaints, or other pleadings that they determine in their sole and absolute discretion are necessary or appropriate to pursue other remedies, including, without limitation, injunctive relief.

8.    The form of Notice of Waiver attached to the Motion as <u>Exhibit B</u> and the form of Order to Show Cause attached to the Motion as <u>Exhibit C</u> are hereby approved by this Court in all respects for use in accordance with the provisions of the foregoing paragraph.

9.    The Debtors are hereby authorized, but not the directed, to continue their prepetition vendor rescue program (the "Vendor Rescue Program") in the ordinary course of business, including, without limitation, by providing the following forms of support to those

6

suppliers (the "Troubled Suppliers") which the Debtors determine, in the exercise of their business judgment, require such support to maintain their operations:

      a.      the Debtors may purchase, on behalf of a Troubled Supplier, the raw materials necessary to manufacture the Debtors' parts when a Troubled Supplier lacks the available credit to purchase such materials for its own account;

      b.      the Debtors may provide a lump sum subsidy to a Troubled Supplier when the Supplier is faced with an acute short-term economic problem;

      c.      the Debtors may lend funds to a Troubled Supplier, either by purchasing a participation in the Troubled Supplier's existing credit facility or by lending funds under a promissory note;

      d.      the Debtors may agree to pay their obligations under invoices from a Troubled Supplier on an accelerated basis;

      e.      the Debtors may agree to provide the Troubled Supplier with operational assistance, either through the Debtors' own personnel or through use of an outside consulting firm; and

      f.      the Debtors may enter into agreements necessary to effectuate the transactions entered into with Troubled Suppliers as part of the Vendor Rescue Program, including, without limitation, accommodation agreements, inventory repurchase agreements, and access agreements.

10. Nothing herein shall be construed to limit, or in any way affect, the Debtors' ability to dispute any Essential Supplier Claim or as a waiver by any of the Debtors of their rights to contest any invoice of an Essential Supplier under applicable non-bankruptcy law.

11. Nothing contained in the Motion or in this Order shall be deemed to constitute an assumption, adoption, or rejection of any executory contract or agreement between the Debtors and any third party or to require the Debtors to make any of the payments authorized herein.

7

12. Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

13. Notwithstanding any provision of the Bankruptcy Code or the Federal Rules of Bankruptcy Procedure to the contrary, this Order shall take effect immediately upon signature.

14. This Order is effective only through the conclusion of the first-day motion hearing, unless otherwise extended by the case-assigned Judge. This Court's ultimate disposition of the Motion shall not impair any action taken pursuant to this Order.

15. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

16. The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:    New York, New York
          October 8, 2005

*s/ Arthur J. Gonzalez*
UNITED STATES BANKRUPTCY JUDGE