Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ x
                               :
         In re                 :    Chapter 11
                               :
DELPHI CORPORATION, et al.,    :    Case No. 05-____ (___)
                               :
                   Debtors.    :    (Jointly Administered)
                               :
------------------------------ x

APPLICATION FOR ORDER UNDER 11 U.S.C. § 327(a) AND
FED. R. BANKR. P. 2014(a) (I) AUTHORIZING EMPLOYMENT AND
RETENTION OF TOGUT, SEGAL & SEGAL LLP AS CONFLICTS COUNSEL
FOR DEBTORS AND (II) SCHEDULING FINAL HEARING THEREON

("TOGUT RETENTION APPLICATION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this application (the "Application") for interim and

---

[1]  In addition to Delphi, the following entities are debtors in these related cases:  ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

final orders under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014(a) authorizing the employment and retention of Togut, Segal & Segal LLP ("TS&S") as conflicts counsel to the Debtors in these chapter 11 cases. In support of this Application, the Debtors submit the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005, and the Declaration of Albert Togut, the senior member of TS&S in support of the Application (the "Togut Declaration ") attached hereto as Exhibit A. In further support of this Application, the Debtors respectfully represent as follows:

## Background

A.    The Chapter 11 Filings

1. On October 8, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have moved this Court for an order authorizing joint administration of these chapter 11 cases.

2. No trustee, examiner, or creditors' committee has been appointed in the Debtors' cases.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4. The statutory predicates for the relief requested herein are sections 327(a) and 328(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.       Current Business Operations Of The Debtors

         1.   With more than 180,000 employees worldwide, global 2004 revenues of approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1 billion,[2] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations without supervision from the Bankruptcy Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

         2.   Over the past century, the operations which are now owned by Delphi have become a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines. Today, the Company is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide. The Company supplies products to nearly every major global automotive original equipment manufacturer with 2004 sales to its former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

         3.   As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world. In the U.S., the Debtors employ approximately 50,600 people. Those employees work in approximately 44 manufacturing sites

---

[2]   The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan. Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions. Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

        4. Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

        Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle. When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base. The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain

benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.   Events Leading To The Chapter 11 Filing

5. In the first two years following Delphi's separation from GM, the Company generated more than $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales. Reflective of a downturn in the marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005. The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[3]

6. The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

7. In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio,

---

[3] Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

operational issues and forward looking revenue requirements. Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

8. Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses. This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan. The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down through the chapter 11 process.

9. Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

Relief Requested

5.  By this Application, the Debtors respectfully request interim and final orders under section 327(a) of the Bankruptcy Code and Bankruptcy Rule 2014(a) (a) authorizing the employment and retention of TS&S as the Debtors' conflict counsel in these chapter 11 cases in accordance with the terms and subject to the conditions described below and as set forth more fully in TS&S' engagement letter dated October 5, 2005 (as attached hereto as Exhibit B, the "Engagement Letter") and (b) scheduling a final hearing to determine whether the relief should be granted on a final basis.

Basis For Relief

6.  Contemporaneously herewith, the Debtors are applying to retain Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") as the Debtors' general bankruptcy counsel, Shearman & Sterling LLP as the Debtors' special counsel, O'Melveny and Meyers LLP as the Debtors' special labor counsel, Groom Law Group Chartered as the Debtors' special employee benefits counsel, and the other professionals retained by the Debtors to perform specific tasks that are unrelated to the work to be performed by TS&S as conflicts counsel to the Debtors. The retention of TS&S as special counsel will enhance the employment of the Debtors' general bankruptcy counsel to represent the Debtors generally and to assist them in carrying out their duties under chapter 11.

7.  The Debtors seek court approval, pursuant to section 327(a) of the Bankruptcy Rule 2014(a), to employ and retain TS&S as their conflicts counsel in connection with these chapter 11 cases to handle matters that the Debtors may encounter which are not appropriately handled by Skadden because of a potential conflict of interest or, alternatively, which can be more efficiently handled by TS&S. This will avoid unnecessary litigation and

7

reduce the overall expense of administering these chapter 11 cases. Pursuant to section 328(a) of the Bankruptcy Code, the Debtors request that the Court approve the retention of TS&S, under a general retainer, as their attorneys, to perform services that will be necessary during these chapter 11 cases in accordance with TS&S' normal hourly rates and policies in effect when TS&S renders the services or incurs the expenses.

8. Having been involved in several cases where it has previously served as conflicts counsel, TS&S has found that the relationship works best when counsel promptly informs TS&S of any bankruptcy-related matter where there is any involvement of another client of the relevant counsel's firm, even if the Debtor is not adverse to that client. In that way and in this case, counsel is free to advise the Debtors without any appearance of bias. As soon as TS&S is notified of a transaction affecting a Skadden or another counsel's client, it becomes TS&S' responsibility to advise the Debtors on any aspect of the bankruptcy-related transaction, motion, or litigation as it affects such other client. This best serves the Debtors' fiduciary obligation to all creditors. For those matters in which the Debtors are clearly adverse to any Skadden or other counsel's client, TS&S will be responsible for handling the matter.

9. The members, counsel, and associates of TS&S who will be employed in these chapter 11 cases are members in good standing of the Bar of the State of New York and the United States District Court for the Southern District of New York.

10. The Debtors have selected TS&S as their attorneys because of the firm's knowledge in the field of debtors' protections and creditors' rights and business reorganizations under chapter 11 of the Bankruptcy Code. In addition, TS&S possesses extensive expertise, experience, and knowledge practicing before this and other bankruptcy courts.

11. TS&S has been actively involved in major chapter 11 cases, and has represented debtors in many cases in this Court including, without limitation: <u>In re Enron Corp. et al.</u>, Case No. 01-16034 (AJG); <u>In re Allegiance Telecom, Inc.</u>, Case No. Case No. 03-13057 (RDD); <u>In re Ames Department Stores</u>, Case No. 01-42217 (REG); <u>In re Loews Cineplex Entertainment Corp.</u>, Case No. 01-40346 (ALG); <u>Onsite Access, Inc.</u>, Case No. 01-12879 (RLB); <u>Daewoo International (America) Corp.</u>, Case No. 00-11050 (BRL); <u>Contifinancial Corp.</u>, Case No. 00-12184 (ALG); <u>Lois/USA, Inc.</u>, Case No. 99-45910 (REG); and <u>Rockefeller Center Properties</u>, Case No. 95-42089 (PCB).

12. The employment of TS&S under a general retainer is appropriate and necessary to enable the Debtors to faithfully execute their duties as debtors and debtors in possession, and to implement the restructuring and reorganization of the Debtors.

<u>Services To Be Provided</u>

13. Subject to the Court's approval TS&S will render professional services to the Debtors for certain discrete matters, which may include, but are not limited to the following:

(a) advise the Debtors regarding their powers and duties as debtors-in-possession in the continued management and operation of their businesses and properties;

(b) attend meetings and negotiate with representatives of creditors and other parties-in-interest;

(c) take necessary action to protect and preserve the Debtors' estates, including prosecuting actions on the Debtors' behalf, defending any action commenced against the Debtors, and representing the Debtors' interests in negotiations concerning litigation in which the Debtors are involved, including but not limited to objections to claims filed against the estates;

(d) prepare on the Debtors' behalf motions, applications, answers, orders, reports, and papers necessary to the administration of the estates;

(e) advise the Debtors in connection with any potential sale of assets;

(f) appear before this Court and any appellate courts and protect the interests of the Debtors' estates before these Courts; and

9

    (g)    perform other necessary legal services and provide other necessary legal advice to the Debtors in connection with these chapter 11 cases.

Disinterestedness

    14.    TS&S is willing to act in these chapter 11 cases and render the necessary professional services as attorneys for the Debtors. To the best of the Debtors' knowledge, the partners, counsel, and associates of TS&S do not have any connection with or any interest adverse to the Debtors, their creditors or any other party-in-interest, or their respective attorneys and accountants, except as may be set forth in the Togut Declaration, filed contemporaneously herewith. As such, TS&S is a "disinterested person," as that phrase is defined in section 101(14) of the Bankruptcy Code and as modified by section 1107(b) of the Bankruptcy Code, and TS&S' employment is necessary and in the best interests of the Debtors and the Debtors' estates.

Professional Compensation

    15.    TS&S has not received a retainer. As described in the Engagement Letter, work performed by members of TS&S will be at the hourly rates of $545 to $765. When appropriate TS&S will utilize the services of associates and legal assistants whose current hourly billing rates are $115 to $525 per hour.

    16.    The Debtors understand that during these chapter 11 cases, TS&S will apply to the Court for allowance of compensation and reimbursement of actual and necessary expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the United States Bankruptcy Court for the Southern District of New York, guidelines establishing by the United States Trustee for the Southern District of New York, and orders of this Court for all services performed and expenses incurred after the Petition Date.

    17.    Pursuant to section 328(a) of the Bankruptcy Code, the Debtors may retain TS&S on any reasonable terms and conditions. The Debtors submit that the most reasonable

terms and conditions are those charged by TS&S to the Debtors and other clients on a daily basis in a competitive market for legal services. Therefore, the Debtors and TS&S have agreed that TS&S shall be paid its customary hourly rates for services rendered that are in effect from time to time, as set forth in the Togut Declaration, and it shall be reimbursed according to TS&S' customary reimbursement policies.

## Conclusion

18. For the foregoing reasons, the Debtors submit that the relief requested herein is necessary and appropriate, is in the best interests of the Debtors, their estates, and creditors and should be approved.

## Notice

19. Notice of this Application has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to (a) the Office of the United States Trustee, (b) the Debtors' 50 largest unsecured creditors, (c) counsel for the agent under the Debtors' prepetition credit facility, and (d) counsel for the agent under the Debtors' proposed postpetition credit facility. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

20. Because the legal points and authorities upon which this Application relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter interim and final orders (a) authorizing the Debtors to retain TS&S as conflicts counsel to the Debtors in

these chapter 11 cases, (b) scheduling a final hearing thereon, and (c) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         October 8, 2005

>                               DELPHI CORPORATION, on behalf of itself
>                               and certain of its subsidiaries and affiliates, as
>                               Debtors and Debtors-in-Possession
>
>                               By:  /s/ John D. Sheehan
>                                    John D. Sheehan
>                                    Vice President and Chief Restructuring
>                                    Officer

12