Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ x
                               :
   In re                       :    Chapter 11
                               :
DELPHI CORPORATION, et al.,    :    Case No. 05-_____ (___)
                               :
                    Debtors.   :    (Jointly Administered)
                               :
------------------------------ x

APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(a)
(I) AUTHORIZING EMPLOYMENT AND RETENTION OF
GROOM LAW GROUP CHARTERED AS SPECIAL EMPLOYEE BENEFITS
COUNSEL TO DEBTORS AND (II) SCHEDULING FINAL HEARING THEREON

("GROOM LAW GROUP RETENTION APPLICATION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this application (the "Application") for interim and

---

[1] In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holding Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., Specialty Electronics International Ltd.

final orders under 11 U.S.C. §§ 327(e) and 1107(a) and Fed. R. Bankr. P. 2014 and 2016

(a) authorizing the employment and retention of Groom Law Group Chartered ("Groom"), whose business address and telephone number are 1701 Pennsylvania Avenue, NW, Washington, DC 20006-5893, (202) 857-0620, as special employee benefits counsel to the Debtors, and

(b) scheduling a final hearing thereon. In support of this Application, the Debtors submit the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005, and the Affidavit of Lonie A. Hassel, sworn to October 5, 2005 (the "Hassel Affidavit"). In further support of this Application, the Debtors respectfully represent as follows:

Background

A.    <u>The Chapter 11 Filings</u>

    1.    On October 8, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have moved this Court for an order authorizing joint administration of these chapter 11 cases.

    2.    No trustee, examiner, or creditors' committee has been appointed in the Debtors' cases.

    3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

      4. The statutory predicates for the relief requested herein are sections 327(e), 328, and 1107(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    <u>Current Business Operations Of The Debtors</u>

      5. With more than 180,000 employees worldwide, global 2004 revenues of approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1 billion,[2] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations without supervision from the Bankruptcy Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

      6. Over the past century, the operations which are now owned by Delphi have become a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines. Today, the Company is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide. The Company supplies products to nearly every major global automotive original equipment manufacturer with 2004 sales to its former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

---

[2]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

7. As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world. In the U.S., the Debtors employ approximately 50,600 people. Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan. Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions. Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8. Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9. Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle. When awarding new business, which is the foundation for the Company's

4

forward revenue base, customers are increasingly concerned with the financial stability of their supply base. The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.   Events Leading To The Chapter 11 Filing

10.   In the first two years following Delphi's separation from GM, the Company generated more than $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales. Reflective of a downturn in the marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005. The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[3]

11.   The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of

---

[3]   Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12. In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues and forward looking revenue requirements. Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13. Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses. This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan. The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down through the chapter 11 process.

14. Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally.

Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

## Relief Requested

15. By this Application, the Debtors request entry of interim and final orders (a) authorizing the Debtors to employ and retain Groom, pursuant to that certain engagement letter between Delphi and Groom, dated September 16, 2005, attached to the proposed interim order as <u>Exhibit 1</u> (the "Engagement Letter"), as the Debtors' special employee benefits counsel in these chapter 11 cases and (b) scheduling a hearing to determine whether the relief should be granted on a final basis.

## Basis For Relief

16. The Debtors submit that Groom's proposed retention meets all the prerequisites for retention of special counsel under section 327(e) of the Bankruptcy Code, which permits a debtor-in-possession, with court approval, to employ counsel that has represented the Debtors prior to the commencement of their chapter 11 cases, for a "specified special purpose" if such employment is in the best interest of the Debtors. As Groom is the proposed special employee benefits counsel to the Debtors, but not the proposed bankruptcy counsel in these chapter 11 cases, section 327(e) does not require that Groom and its attorneys be "disinterested persons" as defined in section 101(14) of the Bankruptcy Code. Rather, section 327(e) instead requires that Groom not represent or hold any interest adverse to the estates or the Debtors with respect to the matter on which Groom is to be employed. As discussed below, the employment of Groom as special employee benefits counsel is in the best interests of the Debtors.

7

### The Debtors' Employment Of Groom
### Is In The Best Interests Of The Estates

17. Groom will serve as special employee benefits counsel to the Debtors during these chapter 11 cases. Groom has performed similar work for the Debtors in the past and is therefore familiar with the Debtors' businesses and operations. In particular, Groom is especially attuned to the unique employee benefits issues that arise in the Debtors' industry.

18. Groom believes that it is the largest employee benefits specialty firm in the country with approximately 50 attorneys who handle a wide range of sophisticated benefits and tax matters for some of the nation's largest companies and non-profit organizations. Most importantly for present purposes, several members of Groom have extensive experience in employee benefits law and its interplay with restructuring and bankruptcy law. Accordingly, the Debtors believe that Groom is well qualified to serve as special employee benefits counsel in these chapter 11 cases in an efficient and effective manner.

19. The Debtors believe that the employment of Groom will enhance and will not duplicate the employment of Skadden, Arps, Slate, Meagher, & Flom LLP ("Skadden"), the Debtors' general bankruptcy counsel, Shearman & Sterling LLP, the Debtors' special counsel, O'Melveny & Myers LLP, the Debtors' special labor counsel, and the employment of other professionals retained by the Debtors to perform specific tasks that are unrelated to the work to be performed by Groom as special employee benefits counsel to the Debtors. The Debtors understand that Groom will work with the other professionals retained by the Debtors to avoid any such duplication.

Services To Be Rendered By Groom

20. As set forth in the Engagement Letter, the Debtors wish to engage Groom to provide services to the Debtors in connection with general employee benefits matters. The Debtors anticipate that such services will include the following:

(a) the provision of legal advice concerning the Debtors' employee benefit plans, including, but not limited to, the application of the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. §§ 1001-1461, and relevant provisions of the Internal Revenue Code;

(b) representation of the Debtors in connection with any information inquiries, investigations, or proceedings brought by the Pension Benefit Guaranty Corporation, the Department of Labor, or the Internal Revenue Service, which are three federal agencies with regulatory authority over the Debtors' employee benefit plans; and

(c) appearances on behalf of the Debtors before this Court, any appellate court, and the Office of the United States Trustee (the "U.S. Trustee") in connection with matters relating to the Debtors' employee benefit plans.

21. Groom has indicated its desire and willingness to represent the Debtors as set forth herein and to render the necessary professional services as special employee benefits counsel to the Debtors.

22. The Debtors may request that Groom undertake specific matters beyond the scope of the responsibilities set forth above. Should Groom agree in its discretion to undertake any such matter, the Debtors shall seek further order of this Court.

Disinterestedness Of Professionals

23. The Hassel Affidavit filed in support of this Application contains information available to date on Groom's connections with other parties-in-interest, as required by Bankruptcy Rule 2014(a). To the best of the Debtors' knowledge, and based on the information in the attached Hassel Affidavit, Groom, its partners, counsel, and associates do not hold or represent any interest adverse to the Debtors, their creditors, any other party-in-interest in

9

these chapter 11 cases, their respective attorneys and investment advisors, the U.S. Trustee, or any person employed therein, with respect to the matters on which Groom is to be employed.

24. Groom has disclosed to the Debtors that Groom has in the past represented, currently represents, and will likely represent in the future, certain of the Debtors' creditors and other parties-in-interest in matters unrelated to the Debtors or their chapter 11 cases. Groom does not believe that the foregoing raises any actual or potential conflict of interest of Groom relating to the representation of the Debtors as their special employee benefits counsel in these chapter 11 cases, but such relationships are disclosed out of an abundance of caution. The Debtors understand that, in order to vitiate any actual or potential conflicts of interest, Groom will not assist the Debtors in connection with their analysis, negotiations, and litigation, if any, with parties with whom Groom has existing client relationships, and that Skadden (or other counsel if Skadden has conflict), instead, will handle these tasks.

Professional Compensation

25. Groom intends to apply to this Court for compensation and reimbursement of expenses in accordance with section 330(a) of the Bankruptcy Code, the Bankruptcy Rules, applicable guidelines established by the U.S. Trustee, and orders of this Court. Groom acknowledges that all compensation will be subject to this Court's review and approval, after notice and a hearing.

26. In the 90 days leading up to the Petition Date, the Debtors paid to Groom approximately $148,943 in fees and expenses for employee benefits advice and legal services rendered to the Debtors, plus $33,036 as a retainer.

27. Under the applicable provisions of the Bankruptcy Code, and subject to the approval of this Court, the Debtors propose to pay Groom its standard hourly rates reduced by 10% and to reimburse Groom for expenses according to Groom's reimbursement policies. The

10

Groom attorneys who are expected to be principally responsible for the matters in these chapter 11 cases and their respective standard hourly rates are: Gary Ford ($695); Charles Sherman ($570); Lonie Hassel ($535); Thomas Gigot ($535); Andrée St. Martin ($535); Mark Lofgren ($515); John McGuiness ($470); and Christine Keller ($455). These hourly rates are subject to annual adjustment in accordance with Groom's standard policies.

28. No arrangement is proposed between the Debtors and Groom for compensation to be paid in these chapter 11 cases other than as set forth above, in the Engagement Letter, and in the Hassel Affidavit.

## Conclusion

29. For the foregoing reasons, the Debtors submit that the employment of Groom as the Debtors' special employee benefits counsel on the terms set forth herein is in the best interests of the estates.

## Notice

30. Notice of this Application has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to (a) the U.S. Trustee, (b) the Debtors' 50 largest unsecured creditors, (c) counsel for the agent under the Debtors' prepetition credit facility, and (d) counsel for the agent under the Debtors' proposed postpetition credit facility. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

31. Because the legal points and authorities upon which this Application relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an interim order (a) authorizing the Debtors to employ and retain Groom as their special employee benefits counsel to perform the services set forth herein, (b) scheduling a final hearing to consider granting the relief on a final basis, and (c) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
           October 8, 2005

DELPHI CORPORATION, on behalf of itself and certain of its subsidiaries and affiliates, as Debtors and Debtors-in-possession

By:  /s/ John D. Sheehan
      Name: John D. Sheehan
      Title:  Vice President and Chief Restructuring Officer