Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :

In re                          :     Chapter 11
                                    :

DELPHI CORPORATION, et al.,     :     Case No. 05-_____ (___)
                                    :

                Debtors.    :     (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(a) AND 328
(I) AUTHORIZING EMPLOYMENT AND RETENTION OF
ROTHSCHILD INC. AS FINANCIAL ADVISOR AND INVESTMENT BANKER
TO DEBTORS AND (II) SCHEDULING FINAL HEARING THEREON

("ROTHSCHILD RETENTION APPLICATION")

         Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the

"Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors" or the "Company"), hereby submit this application (the

"Application") for entry of interim and final orders under 11 U.S.C. §§ 327(a) and 328 (a)

---

[1]       In addition to Delphi, the following entities are debtors in these related cases:  ASEC Manufacturing
General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas
Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding),
Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc.,
Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems
Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems
Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc.,
Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics
(Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi
International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company,
Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi
Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings
Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc.,
Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company,
Specialty Electronics, Inc., and Specialty Electronics International Ltd.

authorizing the employment and retention of Rothschild Inc. ("Rothschild") as financial advisor

and investment banker to the Debtors, effective as of the Petition Date (as hereinafter defined),

and (b) scheduling a final hearing thereon.  In support of this Application, the Debtors submit the

Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders,

sworn to October 8, 2005, and the Declaration And Statement Of David L. Resnick, a Managing

Director at Rothschild (the "Resnick Declaration"), sworn to October 6, 2005 and attached hereto

as Exhibit A.  In further support of this Application, the Debtors respectfully represent as

follows:

Background

A.    The Chapter 11 Filings

    1.    On October 8, 2005 (the "Petition Date"), each of the Debtors filed a

voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United

States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  The Debtors

continue to operate their businesses and manage their properties as debtors-in-possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have moved this

Court for an order authorizing joint administration of these chapter 11 cases.

    2.    No trustee, examiner, or creditors' committee has been appointed in the

Debtors' cases.

    3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

    4.    The statutory predicates for the relief requested herein are sections 327(a) and

328 of the Bankruptcy Code.

B.      Current Business Operations Of The Debtors

5.      With more than 180,000 employees worldwide, global 2004 revenues of
approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1
billion,[2] Delphi ranks as the fifth largest public company business reorganization in terms of
revenues, and the thirteenth largest public company business reorganization in terms of assets.
Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations
without supervision from the Bankruptcy Court, and will not be subject to the chapter 11
requirements of the U.S. Bankruptcy Code.

6.      Over the past century, the operations which are now owned by Delphi have
become a leading global technology innovator with significant engineering resources and
technical competencies in a variety of disciplines.  Today, the Company is arguably the single
largest global supplier of vehicle electronics, transportation components, integrated systems and
modules, and other electronic technology. The Company's technologies and products are present
in more than 75 million vehicles on the road worldwide.  The Company supplies products to
nearly every major global automotive original equipment manufacturer with 2004 sales to its
former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to
each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company,
Ltd., and Volkswagen Group exceeding $850 million.

7.      As part of its growth strategy, Delphi has established an expansive global
presence with a network of manufacturing sites, technical centers, sales offices, and joint
ventures located in every major region of the world.  In the U.S., the Debtors employ
approximately 50,600 people.  Those employees work in approximately 44 manufacturing sites

---

[2]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates.

and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan.  Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions.  Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.    Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base.  The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of  the expiration of certain

4

benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.    Events Leading To The Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the Company generated more than $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005. The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[3]

11.    The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio,

---

[3]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

operational issues and forward looking revenue requirements.  Having concluded that pre-filing

discussions with its Unions and GM were not leading to the implementation of a plan sufficient

to address the Debtors' issues on a timely basis, the Company determined to commence these

chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and

preserve value.

13.    Through the reorganization process, the Debtors intend to achieve

competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive

legacy liabilities and burdensome restrictions under current labor agreements and realigning

Delphi's global product portfolio and manufacturing footprint to preserve the Company's core

businesses.  This will require negotiation with key stakeholders over their respective

contributions to the restructuring plan or, absent consensual participation, the utilization of the

chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned

in the Company's transformation plan.  The Debtors believe that a substantial segment of

Delphi's U.S. business operations must be divested, consolidated, or wound-down through the

chapter 11 process.

14.    Upon the conclusion of this process, the Debtors expect to emerge from

chapter 11 as a stronger, more financially sound business with viable U.S. operations that are

well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all

of its resources to continue to deliver value and high-quality products to its customers globally.

Additionally, the Company will preserve and continue the strategic growth of its non-U.S.

operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.    By this Application, the Debtors seek to employ and retain Rothschild as

financial advisor and investment banker with regard to certain restructuring matters as further

6

described herein, effective as of the Petition Date.  Accordingly, the Debtors respectfully request

the entry of interim and final orders under sections 327(a) and 328 of the Bankruptcy Code (a)

authorizing the employment and retention of Rothschild as financial advisor and investment

banker pursuant to that certain letter agreement (the "Engagement Letter")[4] dated as of May 1,

2005 (the "Engagement Letter Date") by and among Rothschild, Rohatyn Associates LLC,[5] and

Delphi and (b) scheduling a hearing to determine whether the relief should be granted on a final

basis.  A copy of the Engagement Letter is attached to the Resnick Declaration as <u>Exhibit 1</u>

thereto.

Qualifications Of Rothschild

16.    Rothschild is a member of one of the world's leading independent

investment banking groups, with expertise in domestic and cross-border mergers and

acquisitions, restructurings, privatization advice, and other financial advisory services, and with

particular experience in providing high-quality investment banking and financial advisory

services to financially troubled companies.  Rothschild, a member of the National Association of

Securities Dealers and the Securities Investor Protection Corporation, is a private firm with

approximately 250 employees in the United States that maintains offices in New York and

Washington, D.C.  Rothschild is highly qualified to advise on strategic alternatives, and its

professionals have extensive experience in deals involving complex financial and operating

restructurings.

17.    Rothschild and its professionals have extensive experience working with

financially troubled companies from a variety of industries in complex financial restructurings,

---

[4]    Capitalized terms used but not defined herein shall have the meanings assigned to them in the Engagement Letter.

[5]    As discussed below, effective October 2, 2005, the employment of Rohatyn Associates LLC under the Engagement Letter was terminated by mutual agreement.

both out-of-court and in chapter 11 cases. Rothschild's business reorganization professionals have served as financial and strategic advisors for debtors, creditors, and other constituents in numerous chapter 11 cases, including, among others, Atlantic Express Transportation, Inc.; Barney's, Inc.; Bedford Fair Industries; Comdisco, Inc.; Crown Vantage, Inc.; Edison Brothers Stores, Inc.; Federal-Mogul Global, Inc.; Geneva Steel Company; Globe Manufacturing; Guilford Mills, Inc.; Heartland Steel; HomePlace, Inc.; International Wire Group, Inc.; James River Coal Company; Key Plastics LLC; La Roche Industries, Inc.; Leiner Health Products, Inc.; MicroCell Communications, Inc.; Mpower Holdings Corp.; New World Pasta Company; Pacific Gas & Electric Company; Service Merchandise Corp.; Solutia Inc.; Special Metals Corporation; Superior Telecom Inc.; The FINOVA Group Inc.; Thermadyne Holdings Corp.; Thorn Apple Valley, Inc.; Trans World Airlines; Today's Man, Inc.; UAL Corporation; Viasystems Group, Inc.; Wilcox & Gibbs, Inc.; and Zenith Electronics, Inc.

18.    Rothschild also has considerable expertise in advising on restructuring and merger and acquisition transactions in the automotive sector, involving, among others, Federal-Mogul Global, Inc., Guilford Mills, Inc., Key Plastics LLC, Oxford Automotive, Inc., Peguform GmbH, Sanluis Corporacion, Textron, Inc., Tower Automotive, Inc., Venture Holdings, Inc., and Visteon Corporation.

19.    As shown, Rothschild provides a broad range of corporate advisory services, including services pertaining to general financial advice and corporate restructuring. The resources, capabilities, and experience of Rothschild in advising the Debtors are crucial to the Debtors' successful restructuring. For these reasons, the Debtors believe that the retention of Rothschild as financial advisor and investment banker is in the best interests of the Debtors' estates.

20.    Rothschild is aware that the Debtors have submitted applications relating to the proposed retention and employment of additional professionals in connection with these chapter 11 cases, including FTI Consulting, Inc. and Kurtzman Carson Consultants LLC.  The services to be provided by Rothschild under the Engagement Letter are not intended to duplicate the services of these or any other proposed professional to the Debtors, and Rothschild will make every effort to avoid duplicating the work performed by such other professionals retained by the Debtors.

<u>Services To Be Rendered</u>

21.    Since May 1, 2005, Rothschild has provided services to the Debtors in connection with the Debtors' restructuring efforts.  Rothschild was initially retained together with Rohatyn Associates LLC ("Rohatyn") as its co-advisor to assist and advise the Debtors in evaluating strategic alternatives and their implementation pursuant to the terms of the Engagement Letter.  The Engagement Letter contemplated that the Debtors would pay all compensation accruing thereunder to Rothschild, and that Rothschild and Rohatyn would apportion such compensation between them pursuant to a separate agreement.

22.    Prior to the Petition Date, Rohatyn and Rothschild jointly provided financial advisory and investment banking services under the Engagement Letter.  In connection therewith, Rothschild and Rohatyn commenced investigations of a range of possible strategic alternatives.  Consistent with its primary expertise, Rohatyn focused its efforts on the evaluation of proposals from private equity firms for an out-of-court investment in Delphi.  Rohatyn led due diligence efforts for several private equity firms and participated in meetings and negotiations.

23.    The Debtors, Rothschild and Rohatyn agreed that Rohatyn would discontinue the engagement, and that Rothschild would assume all duties under the Engagement

Letter as sole financial advisor and investment banker to the Debtors, in the event the Debtors

decided to commence bankruptcy cases in order to pursue a restructuring.

        24.    By mutual agreement, the Debtors, Rothschild, and Rohatyn amended the

Engagement Letter to reflect Rohatyn's withdrawal from the engagement and the termination of

Rohatyn's duties thereunder, effective as of October 2, 2005.  Rothschild has agreed to assume

such duties as sole financial advisor and investment banker under the Engagement Letter.

        25.    As set forth in the Engagement Letter, the Debtors have engaged Rothschild

to provide the following financial advisory and investment banking services:

      (a)    to the extent deemed desirable by the Company, identify, review, evaluate, and initiate potential Transactions, M&A Transactions, New Capital Raises, or other transactions;

      (b)    to the extent Rothschild deems necessary, appropriate, and feasible, or as the Company may request, review and analyze the Company's assets and the operating and financial strategies of the Company;

      (c)    assist the Company in developing and evaluating a range of strategic alternatives to restructure the Company's legacy liabilities, including without limitation the Company's current labor costs, liabilities for pension, and other post-employment benefits;

      (d)    review and analyze the business plans and financial projections prepared by the Company including, but not limited to, testing assumptions and comparing those assumptions to historical Company and industry trends;

      (e)    evaluate the Company's debt capacity in light of its projected cash flows and assist in the determination of an appropriate capital structure for the Company;

      (f)    assist the Company and its other professionals in reviewing and evaluating the terms of any proposed Transaction, M&A Transaction, New Capital Raise, or other transaction in responding thereto and, if directed, in developing and evaluating alternative proposals for a Transaction, M&A Transaction, New Capital Raise, or other transaction, whether in connection with a plan of reorganization or otherwise;

      (g)    determine values and/or ranges of values (as appropriate) for the Company and any securities that the Company offers or proposes to offer in

connection with a Transaction, M&A Transaction, New Capital Raise, or other transaction;

(h)     determine and evaluate the risks and benefits of considering, initiating, and consummating any Transaction, M&A Transaction, New Capital Raise, or other transaction, including, without limitation, the risks and benefits with respect to the Company's intermediate and long-term business prospects and strategic alternatives to maximize the business enterprise value of the Company, whether pursuant to a plan of reorganization or otherwise;

(i)     review and analyze any proposals the Company receives from third parties in connection with a Transaction, M&A Transaction, New Capital Raise, or other transaction, including, without limitation, any proposals for debtor-in-possession financing, as appropriate;

(j)     assist or participate in negotiations with the parties-in-interest, including, without limitation, any current or prospective creditors of, or holders of equity in, or claimants against the Company and/or their respective representatives in connection with a Transaction, M&A Transaction, New Capital Raise, or other transaction;

(k)     advise and attend meetings of the Company's Board of Directors, creditor groups, official constituencies, and other interested parties, as the Company determines to be necessary or desirable;

(l)     if requested by the Company, participate in hearings before this Court and provide relevant testimony with respect to the matters described in the Engagement Letter and with respect to issues arising in connection with any proposed plan of reorganization;

(m)    render to the Company's Board of Directors an opinion (the "Opinion") of Rothschild as to the fairness from a financial point of view of the consideration to be received pursuant to a Transaction of the kind described in paragraph (b) of the definition thereof (as defined in the Engagement Letter) or any M&A Transaction, which is not consummated or otherwise entered into pursuant to or in connection with a plan of reorganization (if Rothschild is asked to render an Opinion, the nature and scope of the analysis as well as the form and substance of the Opinion shall be as Rothschild reasonably deems appropriate);

(n)     assist the Company's internal and external counsel to enable such counsel to provide legal advice to the Company, as contemplated under Section 7 of the Engagement Letter; and

(o)     render such other financial advisory and investment banking services as reasonably may be requested by the Company in connection with any of the foregoing.

26.    Should this Court approve the retention of Rothschild as financial advisor and investment banker to the Debtors, Rothschild will continue to perform, without interruption, the services described in the Engagement Letter and in the Resnick Declaration filed herewith.

Disinterestedness Of Professionals

27.    To the best of the Debtors' knowledge, information, and belief, Rothschild has no connection with, and holds no interests adverse to, the Debtors, their creditors, or any other party-in-interest, or their respective attorneys or accountants, in the matters for which Rothschild is proposed to be retained, except as disclosed in the Resnick Declaration.

28.    To the best of the Debtors' knowledge, Rothschild is a "disinterested person," as such term is defined in section 101(14) of the Bankruptcy Code, and as required under section 327(a) of the Bankruptcy Code.  The Resnick Declaration, executed on behalf of Rothschild in accordance with section 327(a) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), is filed contemporaneously herewith and incorporated herein by reference.  The Debtors' knowledge, information, and belief regarding the matters set forth in this Application are based on, and made in reliance upon, the Resnick Declaration.

29.    The Debtors submit that the appointment of Rothschild on the terms and conditions set forth herein is in the best interest of the Debtors, their creditors, and all parties-in-interest.

Professional Compensation

30.    During the one-year period preceding the Petition Date, the Debtors paid Rothschild approximately $1,590,533.51 in respect of services rendered pursuant to the Engagement Letter and expenses incurred in relation thereto (including with respect to the services rendered by Rohatyn).  Additionally, pursuant to the Engagement Letter, the Debtors

12

provided Rothschild with a $250,000 retainer to be applied against the fees and expenses of

Rothschild thereunder (the "Retainer").  The Retainer was billed by Rothschild to the Debtors

within approximately two weeks of the final execution of the Engagement Letter, and was paid

by the Debtors to Rothschild approximately one month thereafter.

      31.    The Debtors respectfully refer interested parties to a copy of the

Engagement Letter for a full recitation of the proposed terms of Rothschild's compensation.  In

summary, if this Application is approved, as compensation for the services rendered under the

Engagement Letter, Rothschild will be entitled to receive the following fees in cash:

(a)     A $250,000 per month cash advisory fee (the "Monthly Fee"), payable in advance on the first day of each month.  The initial Monthly Fee shall be pro-rated based on the commencement of services as of the Engagement Letter Date and shall be due and payable by the Company upon the execution of the Engagement Letter.

(b)     A fee of $15 million (the "Completion Fee"), due and payable in cash upon the earlier of (i) the effective date of a plan of reorganization that provides for, pursuant to the terms of a binding written agreement, the consummation of a Transaction or (ii) the closing of another Transaction; provided, that Rothschild has agreed to credit against the Completion Fee (a) 50% of any M&A Fees indefeasibly paid (the "M&A Fee Credit"); (b) 50% of any New Capital Fees indefeasibly paid (the "New Capital Fee Credit"); and (c) to the extent not otherwise applied against the fees and expenses of Rothschild under the terms of the Engagement Letter, the Retainer; provided, that the sum of the M&A Fee Credit and the New Capital Fee Credit shall not exceed the Completion Fee.

(c)     In the case of any M&A Transaction for which Rothschild is designated by the Company as the Company's primary advisor and investment banker and does not arise out of a Transaction for which a Completion Fee is due under the immediately preceding paragraph, a fee (the "M&A Fee") equal to the product of (i) the Aggregate Consideration times (ii) the applicable M&A Fee Percentage, each as specified in Exhibit C to the Engagement Letter, which M&A Fee shall be due and payable in cash at the closing of such M&A Transaction.

(d)     A new capital fee (the "New Capital Fee") equal to (i) 1.0% of any senior secured debt raised, (ii) 3.0% of the face amount of any junior secured or senior or subordinated unsecured debt (including any convertible debt)

raised, and (iii) 5.0% of any equity or hybrid capital raised (each a "New Capital Raise"), in each case, in which Rothschild is designated by the Company as the Company's primary advisor and investment banker.  The New Capital Fee shall be due and payable in cash at the closing of any New Capital Raise; provided, that no New Capital Fee shall become payable in respect of any new capital raised (a) in the event the Company files a chapter 11 case, any debtor-in-possession financing arrangements, (b) from an entity not otherwise participating in or having expressed an interest in participating in a Transaction, or (c) from an Acquirer or an entity having expressed an interest in becoming an Acquirer in connection with the consummation of a Transaction which is intended to occur simultaneously with or within a reasonable period after the closing of such New Capital Raise.

(e)     An opinion fee, payable in cash upon notification to the Company that Rothschild is prepared to deliver its Opinion, in an amount to be negotiated in good faith at the time such Opinion is requested by the Company based upon customary fees for such services.

(f)     To the extent the Company requests Rothschild to perform additional services not contemplated by the Engagement Letter, such additional fees as shall be mutually agreed upon by Rothschild and the Company, in writing, in advance.

(g)     The Company will reimburse Rothschild for its reasonable expenses incurred in connection with the performance of its engagement under the Engagement Letter, and the enforcement of the Engagement Letter, including without limitation the reasonable fees, disbursements and other charges of Rothschild's counsel; provided, that the retention of any such counsel shall only be made with the Company's consent, which shall not be unreasonably withheld except in the case of legal services which are not customarily required in connection with the performance of the services to be provided under the Engagement Letter.  Reasonable expenses shall also include, but not be limited to, expenses incurred in connection with travel and lodging, data processing, and communication charges, research, and courier services.  The Company shall promptly reimburse Rothschild for expenses upon presentation of an invoice or other similar documentation with reasonable detail.

32.   The Company and Rothschild acknowledge and agree that (a) the hours worked, (b) the results achieved, and (c) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement, may be variable, and the Company and Rothschild have taken such factors into account in setting the fees under the Engagement

Letter; provided, however, that with respect to the hours worked, Rothschild shall devote whatever resources as are required to fulfill the purposes of this engagement on a timely basis.

33.    In the event that this Court approves the retention of Rothschild by the Company, (a) Rothschild's fees and expenses shall be subject to (i) the jurisdiction and approval of this Court under section 328(a) of the Bankruptcy Code and any order entered by this Court with regard to Rothschild's retention, (ii) any applicable fee and expense guideline orders, and (iii) any requirements governing interim and final fee applications, and (b) the Company shall pay all fees and expenses of Rothschild under the Engagement Letter as promptly as practicable in accordance with the terms thereof and the orders of this Court governing interim and final fee applications, and after obtaining all necessary further approvals from this Court, if any.

Basis For Relief

A.      Rothschild Meets Bankruptcy Code Requirements For Retention

34.    Section 327(a) of the Bankruptcy Code provides that a debtor-in-possession may, with the court's approval, employ professionals that do not hold or represent an interest adverse to the estate and that are "disinterested persons," as defined by section 101(14) of the Bankruptcy Code, to represent or assist the debtor-in-possession in carrying out its duties under the Bankruptcy Code.  See 11 U.S.C. §§ 101(14) & 327(a); see also In re Granite Partners, L.P., 219 B.R. 22, 32 (Bankr. S.D.N.Y. 1998).  Further, section 1107(b) of the Bankruptcy Code provides that a person is not disqualified for employment by a chapter 11 debtor-in-possession under section 327(a) of the Bankruptcy Code solely because of such person's employment by or representation of the debtor before the commencement of the case.  See 11 U.S.C. § 1107(b).

35.    As stated above, the Debtors believe that Rothschild does not hold or represent an interest adverse to the Debtors' estates and is a "disinterested person" under the

Bankruptcy Code.  The Debtors submit that Rothschild, therefore, is eligible to be employed by the Debtors in connection with these chapter 11 cases.

B.      The Proposed Terms Of Retention Are Reasonable

36.    Section 328(a) of the Bankruptcy Code provides, in relevant part, that a debtor "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis."  11 U.S.C. § 328(a).

37.    Congress intended section 328(a) to enable debtors to retain professionals pursuant to specific fee arrangements to be determined at the time of the court's approval of the retention, subject to reversal only if the terms are found to be improvident in light of "developments not capable of being anticipated at the time of the fixing of such terms and conditions."  11 U.S.C. § 328(a).  See also Donaldson, Lufkin & Jenrette Sec. Corp. v. Nat'l Gypsum Co., 123 F.3d 861, 862-63 (5th Cir. 1997) ("[I]f the most competent professionals are to be available for complicated capital restructuring and the development of successful corporate reorganization, they must know what they will receive for their expertise and commitment.").

38.    The Debtors believe that the fee structure and other terms and conditions in the Engagement Letter, including the indemnification provision, are reasonable terms and conditions of employment and should be approved under section 328(a) of the Bankruptcy Code. The fee structure appropriately reflects the nature of the services to be provided by Rothschild and the fee structures typically utilized by Rothschild and other leading financial advisory and investment banking firms.  In particular, the Debtors believe that the proposed fee structure creates a proper balance between fixed monthly fees and contingency fees based on a successful restructuring.

39.    The Debtors submit that the terms and conditions of Rothschild's

employment in these chapter 11 cases are reasonable in light of (a) industry practice, (b) market

rates charged for comparable services both in and out of the chapter 11 context, (c) Rothschild's

substantial investment banking and financial advisory experience, and (d) the nature and scope of

work already performed by Rothschild prior to the Petition Date and to be performed by

Rothschild in these chapter 11 cases.  The Debtors believe that Rothschild is qualified to act as

financial advisor and investment banker for the Debtors, that the terms and conditions of

Rothschild's retention and employment are reasonable and, therefore, should be authorized and

approved by this Court.

40.    As set forth in the Resnick Declaration, Rothschild intends to apply to this

Court for allowance of compensation and reimbursement of expenses in accordance with the

procedures set forth in the applicable provisions of the Bankruptcy Code, the Federal Rules of

Bankruptcy Procedure, and the Local Bankruptcy Rules for the United States Bankruptcy Court

for the Southern District of New York (the "Local Rules"), as those procedures may be modified

or supplemented by order of this Court.  Consistent with its ordinary practice and the practice of

financial advisors in other chapter 11 cases whose fee arrangements are typically not hours-

based, Rothschild does not ordinarily maintain contemporaneous time records in one-tenth hour

increments or provide or conform to a schedule of hourly rates for its professionals.  The Debtors

therefore request that Rothschild be excused from compliance with such requirements and that it

be required only to maintain such time records in one-hour increments.

## Indemnification

41.    As more fully described in the Engagement Letter, and subject to certain

modifications requested by the Office of the United States Trustee (the "U.S. Trustee"), which

are reflected in the attached orders, if the Application is granted, the Debtors will indemnify and

hold Rothschild harmless against liabilities arising out of or in connection with its retention by

the Debtors except for any such liability for losses, claims, damages, or liabilities incurred by the

Debtors that are finally judicially determined by a court of competent jurisdiction to have

resulted primarily from the bad faith, self-dealing, breach of fiduciary duty (if any), gross

negligence, or willful misconduct of Rothschild.

42.    The Debtors request that the indemnification provisions contained in the

Engagement Letter, including in Exhibit B thereto (the "Indemnification Provisions"), be

approved.  The Indemnification Provisions are summarized as follows:

(a)    The Company agrees to indemnify and hold harmless Rothschild and its affiliates, counsel, and other professional advisors, and the respective directors, officers, controlling persons, agents, and employees of each of the foregoing (Rothschild and all of such other persons collectively, the "Indemnified Parties") from and against any losses, claims, or proceedings (i) directly or indirectly related to or arising out of (a) oral or written information provided by the Company, which either the Company or an Indemnified Party provides to any person or entity, or (b) any other action or failure to act by the Company or any Indemnified Party at the Company's request or with the Company's consent, in each case in connection with, arising out of, based upon, or in any way related to the Engagement Letter, or (ii) otherwise directly or indirectly in connection with, arising out of, based upon, or in any way related to the engagement of Rothschild under the Engagement Letter or any transaction or conduct in connection therewith, provided, that the Company shall not be required to indemnify an Indemnified Party for such losses if and only to the extent that it is finally judicially determined by a court of competent jurisdiction that such losses arose (a) because of the gross negligence, willful misconduct, or fraud of such Indemnified Party, or (b) because of a material breach of a term or condition of the Agreement by such Indemnified Party.

(b)    The Company shall further reimburse any Indemnified Party promptly, after obtaining the approval of this Court, for any legal or other fees, disbursements, or expenses as they are incurred (i) in investigating, preparing, or pursuing any action or other proceeding or threat thereof, whether or not in connection with pending or threatened litigation or arbitration and whether or not any Indemnified Party is a party, in each case to the extent relating to losses for which indemnification is available under the Engagement Letter (each, an "Action"), and (ii) in connection

18

with enforcing such Indemnified Party's rights under the Agreement; provided, however, that in the event and only to the extent that it is finally judicially determined by a court of competent jurisdiction that the losses of such Indemnified Party arose (a) because of the gross negligence, willful misconduct, or fraud of such Indemnified Party, or (b) because of a material breach of a term or condition of the Agreement by such Indemnified Party, such Indemnified Party will promptly remit to the Company any amounts reimbursed under this paragraph.

(c)    The Company shall have the right to assume the defense of any Action, including the employment of counsel reasonably satisfactory to Rothschild, and will not, without the prior written consent of Rothschild (which shall not be unreasonably withheld or delayed), settle, compromise, consent, or otherwise resolve or seek to terminate any pending or threatened Action (whether or not any Indemnified Party is a party thereto) unless such settlement, compromise, consent, or termination (i) contains an express, unconditional release of each Indemnified Party which is a party to the Action from all liability relating to such Action, and (ii) does not include an admission of fault, culpability, or a failure to act by or on behalf of any Indemnified Party.

(d)    The Company also agrees that no Indemnified Party shall have any liability (whether direct or indirect, in contract or tort or otherwise) to the Company for or in connection with advice or services rendered or to be rendered by any Indemnified Party pursuant to the Engagement Letter, the transactions contemplated thereby, or any Indemnified Party's actions or inactions in connection with any such advice, services, or transactions except for and only to the extent that such losses to the Company are finally judicially determined by a court of competent jurisdiction to have arisen (i) because of the gross negligence, willful misconduct, or fraud of, or (ii) because of a material breach of a term or condition of the Agreement by such Indemnified Party in connection with any such advice, actions, inactions, or services.

43.    The Debtors and Rothschild believe that the Indemnification Provisions are customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in chapter 11 proceedings.  See United Artists Theater Co. v. Walton, 315 F.3d 217 (3d Cir. 2003); In re Acterna Corp., Case No. 03-12837 (BRL) (Bankr. S.D.N.Y. Jun. 24, 2003); In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000), aff'd, 2000 WL 1800690 (S.D.N.Y. 2000); and Bodenstein v. Comdisco, Inc., 2002 U.S. Dist. LEXIS 17994 (N.D. Ill. 2002).

<u>Interim Approval Of Monthly Fees And Expenses</u>

44.    At the request of the U.S. Trustee, the Debtors will provide 45-days notice

of the hearing to approve this Application to all known creditors in these chapter 11 cases.  Such

notice, substantially in the form attached to the proposed interim order as <u>Exhibit 2</u> (the "Notice

of Application"), will be served within five days of the entry of the interim order and will include

a description of the material terms of the compensation structure and the indemnification

provisions sought by this Application.  Pending the final hearing on this Application, the Debtors

respectfully request that this Court enter an interim order substantially in the form attached

hereto authorizing the retention and employment of Rothschild during the interim period,

approving the Monthly Fees during such period, and approving the reimbursement of

Rothschild's expenses during such period.

<u>Notice</u>

45.    Notice of this Application has been provided by facsimile, electronic

transmission, overnight delivery, or hand delivery to (a) the U.S. Trustee, (b) the Debtors' 50

largest unsecured creditors, (c) counsel for the agent under the Debtors' prepetition credit facility,

and (d) counsel for the agent under the Debtors' proposed postpetition credit facility.  In light of

the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

46.    Because the legal points and authorities upon which this Application relies

are incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an interim order (a) (i) approving the Notice of Application to be sent to all known creditors, (ii) approving the employment of Rothschild as the Debtors' financial advisor and investment banker on an interim basis, effective as of the Petition Date, pending approval of a final order substantially in the form attached hereto, and (iii) scheduling a final hearing to consider granting the relief on a final basis, and (b) granting the Debtors such other and further relief as this Court may deem just.

Dated:    New York, New York
          October 8, 2005

                                DELPHI CORPORATION, on behalf of itself and
                                certain of its subsidiaries and affiliates, as Debtors and
                                Debtors-in-possession

                                By:    /s/ John D. Sheehan_____
                                       Name: John D. Sheehan
                                       Title:   Vice President and Chief Restructuring
                                                Officer