UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
    In re                                 :   Chapter 11
                                                            :
DELPHI CORPORATION, et al.,                                 :   Case No. 05-_____ (___)
                                                            :
                    Debtors.   :   (Jointly Administered)
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FINAL ORDER UNDER 11 U.S.C. §§ 327(a)
AND 328 AUTHORIZING EMPLOYMENT AND
RETENTION OF ROTHSCHILD INC. AS FINANCIAL
ADVISOR AND INVESTMENT BANKER TO DEBTORS

("ROTHSCHILD RETENTION ORDER")

Upon the application, dated October 8, 2005 (the "Application"), of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of an order (the "Order") under 11 U.S.C. §§ 327(a) and 328 authorizing the employment and retention of Rothschild Inc. ("Rothschild") as financial advisor and investment banker to the Debtors as of October 8, 2005 (the "Petition Date"); and upon the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005, and on the Declaration and Statement of David L. Resnick, a Managing Director at Rothschild, sworn to October 6, 2005; and upon the proceedings held before this Court; and this Court having determined that the relief requested in the Application is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and this Court being satisfied that Rothschild is disinterested and represents no interest adverse to the Debtors or their estates as to the matters upon which Rothschild is to be engaged; and it appearing that proper and adequate notice of the

Application has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1. The Application is GRANTED on a final basis.

2. Pursuant to 11 U.S.C. §§ 327(a) and 328, the Debtors are authorized, effective as of the Petition Date, to retain Rothschild as the Debtors' financial advisor and investment banker to perform the services described in the Application, pursuant to the terms of that certain letter agreement, dated as of May 1, 2005, by and among Rothschild, Rohatyn Associates LLC, and Delphi attached hereto as Exhibit 1(the "Engagement Letter"), except that Rothschild acknowledges and agrees, notwithstanding any statement to the contrary in the Engagement Letter, that it is not being engaged as and shall not be deemed to be an independent contractor, it being understood that Rothschild shall have no authority to bind, represent, or otherwise act as agent, executor, administrator, trustee, lawyer, or guardian for the Debtors, nor shall Rothschild have the authority to manage money or property of the Debtors.

3. Rothschild will file fee applications for interim and final allowance of compensation and reimbursement of expenses pursuant to the procedures set forth in sections 330 and 331 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), any applicable Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), any orders of this Court, and any procedures as may be fixed by order of this Court.

4. Subject to the following paragraph, the compensation and reimbursement of expenses to be paid to Rothschild shall be in accordance with the terms of the Engagement

2

Letter, which fees and expense reimbursements shall not hereafter be subject to challenge except under the standard of review under section 328(a) of the Bankruptcy Code.

5. The Office of the United States Trustee retains all rights to object to Rothschild's fee applications (including expense reimbursements) in respect of fees and expenses accruing during Rothschild's engagement pursuant to this Order, on all grounds, including, but not limited to, the reasonableness standard provided for in section 330 of the Bankruptcy Code.

6. Rothschild shall apply previously unallocated portions of the $250,000 retainer, first, to unpaid prepetition fees and expenses, if any, and second, to postpetition fees and expenses approved by this Court.

7. All requests of Rothschild for payment of indemnity pursuant to the Engagement Letter shall be made by means of an application (interim or final as the case may be) and shall be subject to review by this Court to ensure that payment of such indemnity conforms to the terms of the Engagement Letter and is reasonable based on the circumstances of the litigation or settlement in respect of which such indemnity is sought.

8. In no event shall Rothschild be indemnified if the Debtors or a representative of their estates asserts a claim for, and a court determines by a final order that such claim arose out of, Rothschild's own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

9. In the event that Rothschild seeks reimbursement for attorneys' fees from the Debtors pursuant to the Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Rothschild's own applications (both interim and final), and such invoices and time records shall be subject to the Office of the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of this Court under the

standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorneys have been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

10. To the extent that any term of this Order is inconsistent with the Engagement Letter, such term of this Order shall govern.

11. Notwithstanding anything to the contrary in the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, any orders of this Court, or any guidelines regarding submission and approval of fee applications, Rothschild and its professionals (a) shall only be required to maintain contemporaneous time records for services rendered postpetition, in one-hour increments, and (b) shall not be required to conform to or provide any schedule of hourly rates.

12. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

13. The requirement under Local Rule 9013-1(b) for the service and filing of a separate memorandum of law is deemed satisfied by the Application.

Dated:    New York, New York
          October __, 2005

_____
UNITED STATES BANKRUPTCY JUDGE

4

# EXHIBIT 1

ENGAGEMENT LETTER



FTI Consulting
Park One Center
6100 Oak Tree Blvd., Suite 200
Cleveland, OH 44131
216.986.2750 tel
216.986.2749 fax
www.fticonsulting.com

PRIVATE & CONFIDENTIAL

As of August 1, 2005

John Wm. Butler, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
333 W. Wacker Drive, Suite 2100
Chicago, Illinois 60606

Re: Delphi Corporation -- Financial Advisory Services

Dear Mr. Butler:

1. **Introduction**

   This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by you, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), to provide certain financial advisory and consulting services (the "Services") set out below, to Delphi Corporation and its subsidiaries (collectively, the "Company") as intended third party beneficiaries hereof (herein, "you," "your" and related terms will refer to the Company, "we," "our" and "us" and related terms will refer to FTI). This letter of engagement (the "Engagement") and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which such Services will be provided.

2. **Scope of Services**

   At Skadden's direction, the scope of services to be performed will be related to assisting the Company in its restructuring efforts that the Company requests from time to time. The Services, as outlined above, are subject to change as mutually agreed between us.

   FTI is engaged by Skadden to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to Skadden or the Company, and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and board of directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders or others.

   As part of our Services, FTI may be requested by Skadden to assist the Company (and its legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties. In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

1

Skadden, Arps, Slate, Meagher & Flom LLP
As of August 1, 2005

3. **Fees**

   Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates, summarized as follows:

   |                                | Per Hour   |
   |--------------------------------|------------|
   | Senior Managing Directors      | $580 - 630 |
   | Directors / Managing Directors | 440 - 560  |
   | Associates / Consultants       | 235 - 385  |
   | Paraprofessionals              | 95 - 168   |

   Hourly rates are generally revised periodically. We will notify Skadden and the Company and obtain the Company's concurrence in advance of any such changes to our rates with respect to any rate increase for 2005 and any annual rate increase thereafter in excess of 5% of the then applicable hourly rates. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work. In addition to the hourly rates and subject to the approval of the Bankruptcy Court in the event that a chapter 11 case is commenced, the Company agrees to consider, in its sole discretion, a value-added fee at the conclusion of the Engagement that would be based upon our contribution to the successful restructuring of the Company.

   In addition to the fees outlined above and consistent with the Company's reimbursement guidelines provided to FTI by the Company concurrently with execution of this Agreement, FTI will bill for reasonable expenses which are likely to be incurred on your behalf during this Engagement, including, but not limited to, airfare, meals, hotel accommodations, telephone, industry research, duplicating and printing (at not more than $0.10 per page), etc. FTI will not charge any markup, overhead, profit or other fees on the reimbursable expenses.

   Based on our initial understanding of the matter and our scope of work, our retainer in this matter has been sized at $300,000. The retainer, which is to be paid by the Company upon the execution of this Engagement Contract, is typically held and applied to our final bill for the Services, with any excess amounts refunded to the Company. We reserve the right, however, to apply the retainer to our fees as the Engagement proceeds. The retainer is not intended to be an estimate for the total cost of the work to be performed. We may request an increase to this retainer depending upon the level of services provided and course to be taken to implement the restructuring. On or prior to September 9, 2005, FTI agrees to provide an estimate of project fees to be incurred by the Company in connection with the Engagement by project category and engagement phase.

   Invoices for fees and expenses incurred in connection with this Engagement will be billed weekly, and are due upon receipt by wire transfer. If we do not receive payments accordingly, we shall be entitled, without prejudice to any other rights that we may have, to immediately suspend provision of the Services until all sums due are paid in full. In no event shall Skadden be liable for any of our invoices in connection with the Engagement.

-2-

Skadden, Arps, Slate, Meagher & Flom LLP
As of August 1, 2005

4. **Terms and Conditions**

   The attached Standard Terms and Conditions, set forth the duties of each party with respect to the Services. Further, this letter and the Standard Terms and Conditions attached comprise the entire Engagement Contract for the provision of the Services to the exclusion of any other express or implied terms, whether expressed orally or in writing, including any conditions, warranties and representations, and shall supersede all previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services.

5. **Conflicts of Interest**

   Based on the list of interested parties (the "Potentially Interested Parties"), provided by Skadden and the Company, we have undertaken a limited review of our records to determine FTI's professional relationships with the Company and its stakeholders. As the Company is aware, FTI is regularly retained by the administrative agent and/or other members of the Company's lending group (or law firms retained by the administrative agent or lending group members). However, during the term of this engagement, such representations will only be in matters unrelated to the Company. In addition, FTI has previously represented JP Morgan Chase in connection with the Company's accounts receivables securitizations. Based upon our review, FTI has not been engaged to represent any other client over the past twelve months in relation to the Company, except to the extent that our representation of another client has incidentally related to Delphi on an indirect basis and was not material to the scope of the particular engagement. Should the Company become a debtor under the Bankruptcy Code, FTI agrees to provide services to the Company until its retention is approved or our Services are fully transitioned to another firm irrespective of whether we are compensated for such services and notwithstanding any other provision of this agreement.

   From the results of such review, we are not aware of any conflicts of interest or additional relationships that we believe would preclude us from performing the Services. As you know, we are a large consulting firm with numerous offices throughout the United States. We are regularly engaged by new clients, which may include one or more of the Potentially Interested Parties. However, we will not accept an engagement that directly conflicts with this Engagement without your prior written consent.

6. **Personnel**

   Randall Eisenberg and I will coordinate all engagement matters on behalf of FTI and we agree to make a substantial portion of time available for the engagement. We have agreed to the Company's request that, to the extent practicable under the circumstances and exigencies facing the Company, we will staff the engagement with a working group of professionals that are prepared to commit a concentrated effort to the engagement as the Company believes that there are efficiencies of identification with, and dedication to the engagement. We have also agreed to provide Skadden and the Company with an organizational chart of professionals assigned to the engagement and to promptly update the organizational chart as to any changes in staffing as to which we agree to consult with and obtain the concurrence of the Company.

---

Skadden, Arps, Slate, Meagher & Flom LLP
As of August 1, 2005

All of FTI's agents and employees furnished by FTI to perform the Services (collectively, "Personnel") are and will remain FTI's employees and, under no circumstances, will any Personnel furnished by FTI be deemed to be Company's employees. FTI is solely responsible, at FTI's sole cost and expense, for (i) the fulfillment of all obligations to Personnel and (ii) the compliance by FTI and Personnel with this Agreement and all laws, regulations, orders and other governmental requirements applicable to performance of the Services.

FTI will require all Personnel who are performing any work on the Company's premises to comply with all of the Company's regulations and policies as provided in writing by the Company to FTI. The Company, in its sole discretion, has the right to: (a) bar any of Personnel from the Company's premises for failure to observe the Company's regulations or policies, (b) require that FTI promptly remove from the Company's premises any Personnel who violate any of the Company's regulations or policies, and (c) require that FTI cease using any Personnel to perform the services who are reasonably unacceptable to the Company. The Company will confer with FTI to discuss the Company's concerns prior to requiring removal of any Personnel. FTI will replace any barred or removed Personnel with Personnel reasonably acceptable to the Company.

[Remainder of page intentionally left blank]

-4-

Skadden, Arps, Slate, Meagher & Flom LLP
As of August 1, 2005

7. **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please do not hesitate to contact Randall S. Eisenberg at 212-499-3614 or Scott King at 216-986-2755.

Yours faithfully,

FTI CONSULTING, INC.

By: _____
Scott H. King
Senior Managing Director

Attachment – As stated

Confirmation of Terms of Engagement

Skadden agrees to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.

Signed: John Wm. Butler, Jr., Esq.
On behalf of Skadden, Arps, Slate, Meagher & Flom LLP

Date:    As of August 1, 2005

Confirmation of Terms and Obligations of Payment

Company agrees to this Agreement and acknowledges its duties specified herein.

Signed: Mr. John D. Sheehan
On behalf of Delphi Corporation

Date:    As of August 1, 2005

-5-

## FTI CONSULTING, INC.

## STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement dated as of August 1, 2005. The Engagement letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

1.  **Reports and Advice**

1.1 **Reliance on drafts** – You acknowledge that no reliance shall be placed on draft reports, conclusion or advice, whether oral or written, issued by us as the same may be subject to further work, revision and other factors which may mean that such drafts are substantially different from any final report or advice issued.

1.2 **Our responsibility for final reports** – In the event we will be acting as independent experts, our reports or advice must be objective and impartial. While we will be prepared to discuss draft reports, which do not constitute our final opinion, the content of our final report is a matter for us alone.

1.3 **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for the use and benefit of Skadden and the Company and only in connection with the purpose in respect of which the Services are provided. Unless required by law, the Company shall not provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent (which will not be unreasonably withheld or delayed). In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

2.  **Information and Assistance**

2.1 **Provision of information and assistance** – Our performance of the Services is dependent upon the Company providing us with such information and assistance as we may reasonably require from time to time.

2.2 **Punctual and accurate information** – The Company's personnel shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. The Company shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3 **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

6

2.4  **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

3.  **Additional Services**

3.1  **Responsibility for other parties** – You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to Skadden or the Company without Skadden's and the Company's written authorization.

4.  **Confidentiality**
We acknowledge a separate Confidentiality Agreement will be entered into (the "Confidentiality Agreement") setting forth obligations with respect to confidential information.

5.  **Termination**

5.1  **Termination of Engagement with notice** – You may terminate the Engagement Contract for whatever reason upon written notice to us. Upon receipt of such notice, we will stop all work immediately but the Company will be responsible for all fees and expenses incurred by us through the date termination notice is received.

5.2  **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.3, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

6.  **Liability Limitation; Waiver of Jury Trial**

6.1  **Limitation of liability** – The Company agrees that FTI and any of its subsidiaries and affiliates, officers, directors, shareholders, agents, employees, subcontractors and/or independent contractors furnished by FTI to perform the Services (collectively, "Personnel") shall not have any liability to the Company or to any third party claim as a result of Skadden's retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by a final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of FTI or its Personnel in respect of whom such liability is asserted or as otherwise set forth herein or in a separate document. Without limiting the generality of the foregoing, in no event shall FTI or its Personnel be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

-7-

6.2   **WAIVER OF JURY TRIAL** –TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME AND EXPENSE, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH OTHER MATTER.

7.   **Governing Law and Jurisdiction**-The Engagement Contract shall be governed by and interpreted in accordance with the laws of the State of New York, without giving effect to the choice of law provisions thereof. The United States District Court for the Southern District of New York and the appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such Courts and irrevocably waive any right they may have to object to any action being brought in these Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts do not have jurisdiction. Notwithstanding the foregoing, in the event that the Company shall become a debtor under the Bankruptcy Code, the Bankruptcy Court having jurisdiction over the administration of the Company's bankruptcy cases shall have exclusive jurisdiction over the Engagement Contract and all references to other courts in this paragraph shall be deemed to be apply to the Bankruptcy Court only.

*FTI CONSULTING, INC.*

*Confirmation of Standard Terms and Conditions*

Skadden agrees to engage FTI Consulting, Inc. upon the terms set forth in these Terms and Conditions as outlined above.

Signed: John Wm. Butler, Jr., Esq.
On behalf of Skadden, Arps, Slate, Meagher & Flom LLP

Date:   As of August 1, 2005

The Company acknowledges these Terms and Conditions as outlined above.

Signed: Mr. John D. Sheehan
On behalf of Delphi Corporation

Date:   As of August 1, 2005

-8-