UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
    In re                          :    Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :    Case No. 05-_____ (___)
                                    :
             Debtors.    :    (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF RANDALL S. EISENBERG IN SUPPORT OF
APPLICATION FOR ORDER UNDER 11 U.S.C. § 327(a) AND
FED. R. BANKR. P. 2014 AND 2016 (I) AUTHORIZING EMPLOYMENT AND
RETENTION OF FTI CONSULTING, INC. AS RESTRUCTURING AND FINANCIAL
ADVISORS TO DEBTORS AND (II) SCHEDULING FINAL HEARING THEREON

STATE OF NEW YORK        )
                         ) SS:
COUNTY OF NEW YORK       )

        Randall S. Eisenberg, being duly sworn, deposes and states as follows:

        1.  I am a Senior Managing Director with the firm of FTI Consulting, Inc.

(together with its wholly owned subsidiaries, agents, independent contractors, and employees,

"FTI").  I submit this affidavit (the "Affidavit") on behalf of FTI in support of the application

(the "Application")[1] of Delphi Corporation ("Delphi") and certain of its subsidiaries and

affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the

"Debtors"), for interim and final orders under 11 U.S.C. § 327(a) and Fed. R. Bankr. P. 2014 and

2016 (a) authorizing the employment and retention of FTI as restructuring and financial advisors

for the Debtors under the terms and conditions set forth in the letter agreement attached hereto as

---

[1]     Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the
     Application.

Exhibit B (the "Engagement Letter") and the dispute resolution procedures set forth in Exhibit C

and (b) scheduling a final hearing thereon.

2.    Except as otherwise noted,[2] I have personal knowledge of the matters set

forth herein.

### Disinterestedness Of Professionals

3.    In connection with the preparation of this Affidavit, FTI conducted a review

of its contacts with the Debtors, their affiliates, and certain entities holding large claims against

or interests in the Debtors that were reasonably known to FTI and provided to us by the Debtors.

FTI's review, completed under my supervision, consisted of queries within an internal computer

database containing names of individuals and entities.  FTI's search included the following types

of entities:  (a) the Debtors and their affiliates, (b) officers and directors, (c) joint owners of the

Debtors' affiliates, (d) the Debtors' 50 largest unsecured creditors (on a consolidated basis),

(e) counterparties to major contracts, (f) major lenders, (g) shareholders who own over 5% of the

Debtors' shares, (h) professionals, (i) counterparties to major leases, (j) insurance providers,

(k) major vendors, (l) major customers, (m) non-Debtor parties to collective bargaining

agreements with the Debtors, (n) indenture trustees, (o) underwriters of securities, (p) major

litigation parties, and (q) certain state and governmental agencies.  A summary of such

relationships that FTI identified during the process is set forth in Exhibit A attached hereto.

4.    It is FTI's policy and intent to update and expand its ongoing relationship

search for additional parties-in-interest in an expedient manner.  If any new relevant facts or

---

[2]    Certain of the disclosures herein relate to matters within the personal knowledge of other professionals
within FTI and are based upon information they have provided.

relationships are discovered or arise, FTI promptly will file a Bankruptcy Rule 2014(a)

Supplemental Affidavit.

5.    Based on the results of its review, except as otherwise discussed herein, FTI

does not have a relationship with any of the parties reviewed in matters related to these

proceedings.  FTI has provided and could reasonably be expected to continue to provide services

unrelated to the Debtors' chapter 11 cases for the various entities shown on Exhibit A.  FTI's

assistance to these parties has been related to providing various financial restructuring, litigation

support, and/or engineering and scientific investigation consulting services unrelated to these

chapter 11 cases.  To the best of my knowledge, no services have been provided to these parties-

in-interest that involve their rights in the Debtors' chapter 11 cases, nor does FTI's involvement

in this case compromise its ability to continue such consulting services.  Nevertheless, in the

interest of full disclosure, I point out the following relationships:

> (a)    FTI previously has represented JP Morgan Chase in connection with the
> Debtors' accounts receivable securitizations.  There are no on-going
> services being provided in this regard; and

> (b)    the Debtors previously engaged FTI to provide certain services as part of a
> potential transaction involving the Debtors and a third party.  The third
> party was an intended beneficiary of the services provided.  There are no
> on-going services being provided in this regard.

6.    Further, as part of its diverse practice, FTI appears in numerous cases,

proceedings, and transactions that involve many different professionals, including attorneys and

financial consultants, who may represent claimants and parties-in-interest in the Debtors' chapter

11 cases.  Also, FTI has performed in the past, and may perform in the future, advisory

consulting services for various attorneys and law firms in the legal community, and has been

represented by several attorneys and law firms in the legal community, some of whom may be

involved in these proceedings.  In addition, FTI has in the past, may currently, and will likely in

the future be working with or against other professionals involved in these cases in matters
unrelated to the Debtors and these cases.  Based on our current knowledge of the professionals
involved, and to the best of my knowledge, none of these business relationships create interests
materially adverse to the Debtors herein in matters upon which FTI is to be employed, and none
are in connection with these cases.

       7.   FTI does not believe it is a "creditor" of any of the Debtors within the
meaning of section 101(10) of the Bankruptcy Code.  Further, neither I nor any of the FTI
engagement team serving the Debtors, to the best of my knowledge, is a holder of any
outstanding debt instruments or shares of the Debtors' stock.

       8.   FTI has not reviewed the relationship that the members of the FTI
engagement team may have against a comprehensive list of employees within the U.S. Trustee's
office in this District, but will do so upon being provided with a list of such persons by the office
of the U.S. Trustee.

       9.   As such, to the best of my knowledge, FTI believes it is a "disinterested
person," as that term is defined in section 101(14) of the Bankruptcy Code, as modified by
section 1107(b) of the Bankruptcy Code, in that, to the best of my information and belief, FTI:

      (a)     is not a creditor, an equity security holder, or an insider of
the Debtors;

      (b)     is not and was not an investment banker for any
outstanding security of the Debtors;

      (c)     has not been within three years before the commencement
of these chapter 11 cases, an investment banker for a
security of the Debtors, or an attorney for such investment
banker in connection with the offer, sale, or issuance of a
security of the Debtors; and

      (d)     was not, within two years before the commencement of
these chapter 11 cases, a director, officer, or employee of the

Debtors or of any investment banker as specified in
subparagraphs (b) or (c) of this paragraph.

10.    In addition, to the best of my knowledge and based upon the results of the

relationship search described above, and as set forth herein, FTI believes it neither holds nor

represents an interest adverse to the Debtors within the meaning of section 327(a) of the

Bankruptcy Code.

11.    FTI has not provided, and will not provide, any professional services to any

of the creditors, other parties-in-interest, or their respective attorneys and accountants with

regard to any matter directly related to these chapter 11 cases, except as disclosed or otherwise

described herein.  If and when additional information becomes available with respect to any

other relationships that may exist between FTI and the Debtors, creditors or any other

parties-in-interest that may affect these cases, supplemental affidavits describing such

information shall be filed with this Court.

Professional Compensation

12.    Subject to court approval and in accordance with the applicable provisions

of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, applicable U.S. Trustee

guidelines, and the local rules of this District, FTI will seek payment for compensation on an

hourly basis for the services outlined in the Application, plus reimbursement of actual and

necessary expenses incurred by FTI.  FTI's customary hourly rates as charged in bankruptcy and

non-bankruptcy matters of this type by the professionals assigned to this engagement are

outlined in the Engagement Letter.  These hourly rates are adjusted annually.  In addition to the

hourly rates and subject to the approval of this Court, the Debtors will consider, in their sole

discretion, a value-added fee at the conclusion of FTI's engagement that would be based upon

FTI's contribution to the successful restructuring of the Debtors.

13.    According to FTI's books and records, during the 90-day period prior to the Debtors' petition date, FTI received approximately $3.7 million from the Debtors for professional services performed and expenses incurred.  Further, FTI has received unapplied advance payments from the Debtors in excess of prepetition billings in the amount of $525,000. The Debtors and FTI have agreed that any portion of the unapplied advance payments not used to compensate FTI for its prepetition services and expenses will be held and applied against its final postpetition billing and will not be placed in a separate account.

14.    To the best of my knowledge (a) no commitments have been made or received by FTI with respect to compensation or payment in connection with these cases other than in accordance with the provisions of the Bankruptcy Code and (b) FTI has no agreement with any other entity to share with such entity any compensation received by FTI in connection with these chapter 11 cases.


Dated:    New York, New York
          October 7, 2005




                                        By:    /s/ Randall S. Eisenberg_____
                                               Name: Randall S. Eisenberg
                                               Title: Senior Managing Director




Sworn to before me on
this 7th day of October, 2005


/s/ Linda J. Pearson_____
Notary Public

# Exhibit A

Delphi Corporation, et al.
Relationship Check Summary

| Name |
| --- |
| 3M |
| Ableco |
| ABN Amro |
| ACE American Insurance Company |
| Agilent Technologies |
| AIG Member Companies |
| AIG/American International Group, Inc. |
| AIU Insurance |
| Alcoa Inc. |
| Allianz Insurance Company |
| Allstate Insurance |
| American Home Assurance Co. Ltd. |
| American International Specialty Lines Insurance Company (AISLIC) |
| Ameritech Wisconsin |
| Aon Corporation |
| Applera |
| AT&T Solutions |
| AT&T Wireless |
| Bain Capital |
| Bank of America |
| Bank of New York |
| Bank of Nova Scotia |
| BANK ONE NA |
| Barclays Bank |
| Best Buy Co. Inc. |
| BNP Paribas |
| Booz Allen Hamilton |
| BorgWarner |
| CapitalSource Finance |
| Cardinal Healthcare |
| Caterpillar, Inc. |
| Cellco Partnership |
| Cerberus |
| Chubb Insurance |
| CIBC (Canadian Imperial Bank) |
| CIT |
| Citibank |
| Columbia Casualty |
| Congress Financial (sub of Wachovia) |
| Continental Casualty Company |
| Credit Lyonnais |
| CSFB |
| Daewoo Motor Co., Ltd. (Korea) |
| DaimlerChrysler |
| Daniel G. Lamb Jr. |
| Dayton Power & Light |

# Exhibit A

Delphi Corporation, et al.
Relationship Check Summary

| Name |
|---|
| Deloitte & Touche |
| Delphi Corporation |
| Delphi Holdings Luxembourg |
| Deutsche Bank |
| Dickinson Wright |
| Directed Electronics, Inc. |
| Drinker Biddle & Reath |
| E I DuPont De Nemours & Co. Inc. |
| EDS |
| Ernst & Young |
| Federal Express Corporation |
| Federal Insurance |
| Fiber Systems International, Inc. (Ernie Gonzalez) |
| First National Bank of Chicago |
| Fleet |
| Foothill Capital |
| Ford Motor Company |
| Furukawa Electric North America APD, Inc. |
| GE Financial Services (General Electric Financial Services) |
| GE Medical Systems |
| GE Polymerland |
| GECC (General Electric Credit Corporation) |
| General Electric Capital |
| General Electric Co. Inc. |
| General Motors |
| GMAC (General Motors Acceptance Corporation) |
| Goldman Sachs |
| Great American Reserve Insurance Co. |
| Gulf Insurance Company |
| Heller Ehrman, LLP |
| Hewitt Associates |
| Hewlett Packard |
| Hitachi Ltd. |
| Honda |
| Honeywell |
| HSBC Bank USA |
| HSBC Securities |
| Hyundai |
| Indianapolis Power & Light Company |
| Infineon Technologies AG |
| Insurance Company of the State of Pennsylvania |
| Intermet Corporation |
| International Truck & Engine Corp. |
| Johnson Electric Holdings Ltd. |
| Jones Day |

# Exhibit A

Delphi Corporation, et al.
Relationship Check Summary

| Name |
| --- |
| Kilroy Realty Trust |
| KLA Tencor Corporation |
| Koninklijke Philips Electronics NV |
| KPMG LLP |
| Kyocera Mita America |
| L3 Communications |
| Land Rover |
| LaSalle Bank National Association |
| Lehman Brothers |
| Lehman Commercial Paper, Inc. |
| Lexington Insurance Company |
| Liberty Mutual Insurance Company |
| Linerboard Antitrust Class Action |
| Lloyd's of London Market Insurers |
| Locke Liddell & Sapp, LLP |
| Lockheed Martin |
| Marsh & McLennan Cos. |
| Marsh USA, Inc. |
| Matsushita Electric Industrial |
| Medco Health Solutions, Inc. |
| Merill Lynch |
| MetLife (Dental) |
| Metropolitan Life Insurance Company |
| Minebea Co. Ltd. |
| Mitsubishi |
| Molex Inc. |
| Morgan Stanley |
| Morgan Stanley Senior Funding, Inc. |
| Morris Nichols Arsht & Tunnell |
| Motorola Inc. |
| Murata Manufacturing Co. Ltd. |
| National Semiconductor |
| National Union Fire Insurance Co. |
| Navistar |
| Nextel Communications, Inc. |
| Nextel Partners |
| Nissan |
| O'Melveny & Myers |
| Oneok Energy Marketing |
| Oppenheimer & Company |
| Pepper Hamilton, LLP |
| Philips Semiconductors |
| Pillsbury Winthrop Shaw Pittman, LLP |
| Powertrain |
| PricewaterhouseCoopers |

# Exhibit A

Delphi Corporation, et al.
Relationship Check Summary

| Name |
|------|
| Quinn Emanuel Urquhart Oliver & Hedges |
| Rader Fishman & Grauer |
| Raytheon Company |
| Reliance Insurance Company |
| St. Paul Fire & Marine Insurance Company |
| St. Pauls Travelers Companies, Inc. |
| Salomon Smith Barney Holdings, Inc. |
| SBC Communications, Inc. |
| Securities and Exchange Commission |
| SG Cowen & Corporation |
| Shearman & Sterling |
| Simpson Thacher & Bartlett, LLP |
| Societe Generale |
| Southwest Securities |
| Sprint |
| Squire Sanders & Dempsey |
| SR International Business Insurance Co. |
| State Street Bank & Trust Company |
| Sumitomo Mitsui Banking Corporation |
| Swiss Re Insurance Company Ltd. |
| Teachers Insurance |
| Tenneco |
| Texas Instruments Inc. |
| Textron Inc. |
| The Huntington National Bank |
| Time Warner |
| Toronto Dominion Bank |
| Toyota |
| Toyota Motor Corp. |
| Tyco International Ltd. |
| UBS AG Stamford Branch |
| United Healthcare Corporation |
| US Steel Corporation |
| Verizon Wireless |
| Visteon |
| Volvo |
| Wachovia |
| Wal-Mart Stores CE |
| Waste Management, Inc. |
| Wells Fargo |
| Whitney Private Debt Fund LP |
| XL U.S. |
| Zurich American Insurance Company |

Note: To the extent a listed entity has filed for chapter 11, FTI may represent the Company, its lenders or Unsecured Creditors' Committee.

## EXHIBIT B

Engagement Letter



FTI Consulting
Park One Center
6100 Oak Tree Blvd., Suite 200
Cleveland, OH 44131

216.986.2750 telephone
216.986.2749 facsimile
www.fticonsulting.com

PRIVATE & CONFIDENTIAL

As of August 1, 2005

John Wm. Butler, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
333 W. Wacker Drive, Suite 2100
Chicago, Illinois  60606

Re: Delphi Corporation -- Financial Advisory Services

Dear Mr. Butler:

1.    **Introduction**

This letter confirms that we, FTI Consulting, Inc. ("FTI"), have been retained by you, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), to provide certain financial advisory and consulting services (the "Services") set out below, to Delphi Corporation and its subsidiaries (collectively,  the "Company") as intended third party beneficiaries hereof (herein, "you," "your" and related terms will refer to the Company, "we," "our" and "us" and related terms will refer to FTI).  This letter of engagement (the "Engagement") and the related Standard Terms and Conditions constitute the engagement contract (the "Engagement Contract") pursuant to which such Services will be provided.

2.    **Scope of Services**

At Skadden's direction, the scope of services to be performed will be related to assisting the Company in its restructuring efforts that the Company requests from time to time.  The Services, as outlined above, are subject to change as mutually agreed between us.

FTI is engaged by Skadden to provide financial advisory and consulting services only. Accordingly, while we may from time to time suggest options which may be available to Skadden or the Company, and further give our professional evaluation of these options, the ultimate decision as to which, if any, of these options to implement rests with the Company, its management and board of directors. FTI and its employees will not make any management decisions for the Company and will not be responsible for communicating information concerning the Company to the public, the Company's shareholders or others.

As part of our Services, FTI may be requested by Skadden to assist the Company (and its legal or other advisors) in negotiating with the Company's creditors and equity holders and with other interested parties.  In the event that we participate in such negotiations, the representations made and the positions advanced will be those of the Company and its management, not FTI or its employees.

Skadden, Arps, Slate, Meagher & Flom LLP
As of August 1, 2005

3.   **Fees**

Fees in connection with this Engagement will be based upon the time incurred providing the Services, multiplied by our standard hourly rates, summarized as follows:

|                                    | Per Hour    |
| ---------------------------------- | ----------- |
| Senior Managing Directors          | $580 - 630  |
| Directors / Managing Directors     | 440 - 560   |
| Associates / Consultants           | 235 - 385   |
| Paraprofessionals                  | 95 - 168    |

Hourly rates are generally revised periodically. We will notify Skadden and the Company and obtain the Company's concurrence in advance of any such changes to our rates with respect to any rate increase for 2005 and any annual rate increase thereafter in excess of 5% of the then applicable hourly rates. Note that we do not provide any assurance regarding the outcome of our work and our fees will not be contingent on the results of such work. In addition to the hourly rates and subject to the approval of the Bankruptcy Court in the event that a chapter 11 case is commenced, the Company agrees to consider, in its sole discretion, a value-added fee at the conclusion of the Engagement that would be based upon our contribution to the successful restructuring of the Company.

In addition to the fees outlined above and consistent with the Company's reimbursement guidelines provided to FTI by the Company concurrently with execution of this Agreement, FTI will bill for reasonable expenses which are likely to be incurred on your behalf during this Engagement, including, but not limited to, airfare, meals, hotel accommodations, telephone, industry research, duplicating and printing (at not more than $0.10 per page), etc. FTI will not charge any markup, overhead, profit or other fees on the reimbursable expenses.

Based on our initial understanding of the matter and our scope of work, our retainer in this matter has been sized at $300,000. The retainer, which is to be paid by the Company upon the execution of this Engagement Contract, is typically held and applied to our final bill for the Services, with any excess amounts refunded to the Company. We reserve the right, however, to apply the retainer to our fees as the Engagement proceeds. The retainer is not intended to be an estimate for the total cost of the work to be performed. We may request an increase to this retainer depending upon the level of services provided and course to be taken to implement the restructuring. On or prior to September 9, 2005, FTI agrees to provide an estimate of project fees to be incurred by the Company in connection with the Engagement by project category and engagement phase.

Invoices for fees and expenses incurred in connection with this Engagement will be billed weekly, and are due upon receipt by wire transfer. If we do not receive payments accordingly, we shall be entitled, without prejudice to any other rights that we may have, to immediately suspend provision of the Services until all sums due are paid in full. In no event shall Skadden be liable for any of our invoices in connection with the Engagement.

Skadden, Arps, Slate, Meagher & Flom LLP
As of August 1, 2005

4.    **Terms and Conditions**

The attached Standard Terms and Conditions, set forth the duties of each party with respect to
the Services. Further, this letter and the Standard Terms and Conditions attached comprise the
entire Engagement Contract for the provision of the Services to the exclusion of any other
express or implied terms, whether expressed orally or in writing, including any conditions,
warranties and representations, and shall supersede all previous proposals, letters of
engagement, undertakings, agreements, understandings, correspondence and other
communications, whether written or oral, regarding the Services.

5.    **Conflicts of Interest**

Based on the list of interested parties (the "Potentially Interested Parties"), provided by
Skadden and the Company, we have undertaken a limited review of our records to determine
FTI's professional relationships with the Company and its stakeholders. As the Company is
aware, FTI is regularly retained by the administrative agent and/or other members of the
Company's lending group (or law firms retained by the administrative agent or lending group
members). However, during the term of this engagement, such representations will only be in
matters unrelated to the Company. In addition, FTI has previously represented JP Morgan
Chase in connection with the Company's accounts receivables securitizations. Based upon
our review, FTI has not been engaged to represent any other client over the past twelve
months in relation to the Company, except to the extent that our representation of another
client has incidentally related to Delphi on an indirect basis and was not material to the scope
of the particular engagement. Should the Company become a debtor under the Bankruptcy
Code, FTI agrees to provide services to the Company until its retention is approved or our
Services are fully transitioned to another firm irrespective of whether we are compensated for
such services and notwithstanding any other provision of this agreement.

From the results of such review, we are not aware of any conflicts of interest or additional
relationships that we believe would preclude us from performing the Services. As you know,
we are a large consulting firm with numerous offices throughout the United States. We are
regularly engaged by new clients, which may include one or more of the Potentially Interested
Parties. However, we will not accept an engagement that directly conflicts with this
Engagement without your prior written consent.

6.    **Personnel**

Randall Eisenberg and I will coordinate all engagement matters on behalf of FTI and we agree
to make a substantial portion of time available for the engagement. We have agreed to the
Company's request that, to the extent practicable under the circumstances and exigencies
facing the Company, we will staff the engagement with a working group of professionals that
are prepared to commit a concentrated effort to the engagement as the Company believes that
there are efficiencies of identification with, and dedication to the engagement. We have also
agreed to provide Skadden and the Company with an organizational chart of professionals
assigned to the engagement and to promptly update the organizational chart as to any changes
in staffing as to which we agree to consult with and obtain the concurrence of the Company.

Skadden, Arps, Slate, Meagher & Flom LLP
As of August 1, 2005

All of FTI's agents and employees furnished by FTI to perform the Services (collectively, "Personnel") are and will remain FTI's employees and, under no circumstances, will any Personnel furnished by FTI be deemed to be Company's employees. FTI is solely responsible, at FTI's sole cost and expense, for (i) the fulfillment of all obligations to Personnel and (ii) the compliance by FTI and Personnel with this Agreement and all laws, regulations, orders and other governmental requirements applicable to performance of the Services.

FTI will require all Personnel who are performing any work on the Company's premises to comply with all of the Company's regulations and policies as provided in writing by the Company to FTI. The Company, in its sole discretion, has the right to: (a) bar any of Personnel from the Company's premises for failure to observe the Company's regulations or policies, (b) require that FTI promptly remove from the Company's premises any Personnel who violate any of the Company's regulations or policies, and (c) require that FTI cease using any Personnel to perform the services who are reasonably unacceptable to the Company. The Company will confer with FTI to discuss the Company's concerns prior to requiring removal of any Personnel. FTI will replace any barred or removed Personnel with Personnel reasonably acceptable to the Company.

[Remainder of page intentionally left blank]

Skadden, Arps, Slate, Meagher & Flom LLP
As of August 1, 2005

7. **Acknowledgement and Acceptance**

Please acknowledge your acceptance of the terms of this Engagement Contract by signing both the confirmation below and the attached Standard Terms and Conditions and returning a copy of each to us at the above address.

If you have any questions regarding this letter or the attached Standard Terms and Conditions, please do not hesitate to contact Randall S. Eisenberg at 212-499-3614 or Scott King at 216-986-2755.

Yours faithfully,

FTI CONSULTING, INC.

By: _____

Scott H. King
Senior Managing Director

Attachment – As stated

Confirmation of Terms of Engagement

Skadden agrees to engage FTI Consulting, Inc. upon the terms set forth herein and in the attached Standard Terms and Conditions.

Signed: John Wm. Butler, Jr., Esq.
On behalf of Skadden, Arps, Slate, Meagher & Flom LLP

Date:    As of August 1, 2005

Confirmation of Terms and Obligations of Payment

Company agrees to this Agreement and acknowledges its duties specified herein.

Signed: Mr. John D. Sheehan
On behalf of Delphi Corporation

Date:    As of August 1, 2005

-5-

FTI

## FTI CONSULTING, INC.

## STANDARD TERMS AND CONDITIONS

The following are the Standard Terms and Conditions on which we will provide the Services to you set forth within the attached letter of engagement dated as of August 1, 2005. The Engagement letter and the Standard Terms and Conditions (collectively the "Engagement Contract") form the entire agreement between us relating to the Services and replace and supersede any previous proposals, letters of engagement, undertakings, agreements, understandings, correspondence and other communications, whether written or oral, regarding the Services. The headings and titles in the Engagement Contract are included to make it easier to read but do not form part of the Engagement Contract.

1.    **Reports and Advice**

1.1    **Reliance on drafts** – You acknowledge that no reliance shall be placed on draft reports, conclusion or advice, whether oral or written, issued by us as the same may be subject to further work, revision and other factors which may mean that such drafts are substantially different from any final report or advice issued.

1.2    **Our responsibility for final reports** – In the event we will be acting as independent experts, our reports or advice must be objective and impartial. While we will be prepared to discuss draft reports, which do not constitute our final opinion, the content of our final report is a matter for us alone.

1.3    **Use and purpose of advice and reports** – Any advice given or report issued by us is provided solely for the use and benefit of Skadden and the Company and only in connection with the purpose in respect of which the Services are provided. Unless required by law, the Company shall not provide any advice given or report issued by us to any third party, or refer to us or the Services, without our prior written consent (which will not be unreasonably withheld or delayed). In no event, regardless of whether consent has been provided, shall we assume any responsibility to any third party to which any advice or report is disclosed or otherwise made available.

2.    **Information and Assistance**

2.1    **Provision of information and assistance** – Our performance of the Services is dependent upon the Company providing us with such information and assistance as we may reasonably require from time to time.

2.2    **Punctual and accurate information** – The Company's personnel shall use reasonable skill, care and attention to ensure that all information we may reasonably require is provided on a timely basis and is accurate and complete and relevant for the purpose for which it is required. The Company shall also notify us if you subsequently learn that the information provided is incorrect or inaccurate or otherwise should not be relied upon.

2.3    **No assurance on financial data** – While our work may include an analysis of financial and accounting data, the Services will not include an audit, compilation or review of any kind of any financial statements or components thereof. Company management will be responsible for any and all financial information they provide to us during the course of this Engagement, and we will not examine or compile or verify any such financial information. Moreover, the circumstances of the Engagement may cause our advice to be limited in certain respects based upon, among other matters, the extent of sufficient and available data and the opportunity for supporting investigations in the time period. Accordingly, as part of this Engagement, we will not express any opinion or other form of assurance on financial statements of the Company.

6

2.4    **Prospective financial information** - In the event the Services involve prospective financial information, our work will not constitute an examination or compilation, or apply agreed-upon procedures, in accordance with standards established by the American Institute of Certified Public Accountants or otherwise, and we will express no assurance of any kind on such information. There will usually be differences between estimated and actual results, because events and circumstances frequently do not occur as expected, and those differences may be material. We will take no responsibility for the achievability of results or events projected or anticipated by the management of the Company.

3.    **Additional Services**

3.1    **Responsibility for other parties** – You shall be solely responsible for the work and fees of any other party engaged by you to provide services in connection with the Engagement regardless of whether such party was introduced to you by us. Except as provided in this Engagement Contract, we shall not be responsible for providing or reviewing the advice or services of any such third party, including advice as to legal, regulatory, accounting or taxation matters. Further, we acknowledge that we are not authorized under our Engagement Contract to engage any third party to provide services or advice to Skadden or the Company without Skadden's and the Company's written authorization.

4.    **Confidentiality**
We acknowledge a separate Confidentiality Agreement will be entered into (the "Confidentiality Agreement") setting forth obligations with respect to confidential information.

5.    **Termination**

5.1    **Termination of Engagement with notice** – You may terminate the Engagement Contract for whatever reason upon written notice to us. Upon receipt of such notice, we will stop all work immediately but the Company will be responsible for all fees and expenses incurred by us through the date termination notice is received.

5.2    **Continuation of terms** – The terms of the Engagement that by their context are intended to be performed after termination or expiration of this Engagement Contract, including but not limited to, Clauses 3 and 4 of the Engagement letter, and Clauses 1.3, 6 and 7 of the Standard Terms and Conditions, are intended to survive such termination or expiration and shall continue to bind all parties.

6.    **Liability Limitation; Waiver of Jury Trial**

6.1    **Limitation of liability** – The Company agrees that FTI and any of its subsidiaries and affiliates, officers, directors, shareholders, agents, employees, subcontractors and/or independent contractors furnished by FTI to perform the Services (collectively, "Personnel") shall not have any liability to the Company or to any third party claim as a result of Skadden's retention of FTI, the execution and delivery of this Engagement Contract, the provision of Services or other matters relating to or arising from this Engagement Contract, other than liabilities that shall have been determined by a final non-appealable order of a court of competent jurisdiction to have resulted from the gross negligence or willful misconduct of FTI or its Personnel in respect of whom such liability is asserted or as otherwise set forth herein or in a separate document. Without limiting the generality of the foregoing, in no event shall FTI or its Personnel be liable for consequential, indirect or punitive damages, damages for lost profits or opportunities or other like damages or claims of any kind.

-7-

6.2    **WAIVER OF JURY TRIAL** –TO FACILITATE JUDICIAL RESOLUTION AND SAVE TIME
AND EXPENSE, THE COMPANY AND FTI IRREVOCABLY AND UNCONDITIONALLY
AGREE NOT TO DEMAND A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR
COUNTERCLAIM ARISING OUT OF OR RELATING TO THE SERVICES OR ANY SUCH
OTHER MATTER.

7.     **Governing Law and Jurisdiction**-The Engagement Contract shall be governed by and interpreted in
accordance with the laws of the State of New York, without giving effect to the choice of law
provisions thereof. The United States District Court for the Southern District of New York and the
appropriate Courts of the State of New York sitting in the Borough of Manhattan, City of New York
shall have exclusive jurisdiction in relation to any claim, dispute or difference concerning the
Engagement Contract and any matter arising from it. The parties submit to the jurisdiction of such
Courts and irrevocably waive any right they may have to object to any action being brought in these
Courts, to claim that the action has been brought in an inconvenient forum or to claim that those Courts
do not have jurisdiction. Notwithstanding the foregoing, in the event that the Company shall become a
debtor under the Bankruptcy Code, the Bankruptcy Court having jurisdiction over the administration of
the Company's bankruptcy cases shall have exclusive jurisdiction over the Engagement Contract and all
references to other courts in this paragraph shall be deemed to be apply to the Bankruptcy Court only.


*FTI CONSULTING, INC.*

*Confirmation of Standard Terms and Conditions*

Skadden agrees to engage FTI Consulting, Inc. upon the terms set forth in these Terms and Conditions as
outlined above.

Signed: John Wm. Butler, Jr., Esq.
On behalf of Skadden, Arps, Slate, Meagher & Flom LLP


Date:    As of August 1, 2005


The Company acknowledges these Terms and Conditions as outlined above.

Signed: Mr. John D. Sheehan
On behalf of Delphi Corporation


Date:    As of August 1, 2005

## EXHIBIT C

DISPUTE RESOLUTION PROCEDURES

## Dispute Resolution Procedures

The following procedures shall be used to resolve any controversy or claim ("dispute") as
provided in this Agreement.  If any of these provisions are determined to be invalid or
unenforceable, the remaining provisions shall remain in effect and binding the parties to the
fullest extent permitted by law.

**Mediation**

A dispute shall be submitted to mediation by written notice to the other party or parties.  In the
mediation process, the parties will try to resolve their differences voluntarily with the aid of an
impartial mediator, who will attempt to facilitate negotiations.  The mediator will be selected by
agreement of the parties.  If the parties cannot agree on a mediator, a mediator will be designated
by the American Arbitration Association ("AAA") or JAMS/Endispute at the request of a party.
Any mediator so designated must be acceptable to all parties.

The mediation will be conducted as specified by the mediator and agreed upon by the parties.
The parties agree to discuss their differences in good faith and to attempt, with the assistance of
the mediator, to reach an amicable resolution of the dispute.

The mediation will be treated as a settlement discussion and therefore will be confidential.  The
mediator may not testify for either party in any later proceeding relating to the dispute.  No
recording or transcript of shall be made of the mediation proceedings.

Each party will bear its own costs in mediation.  The fees and expenses of the mediator will be
shared equally by the parties.

**Arbitration**

If a dispute has not been resolved within 90 days after the written notice beginning the mediation
process (or a longer period, if the parties agree to extend the mediation), the mediation shall
terminate and the dispute will be settled by arbitration and judgment on the award rendered by
the arbitration may be entered in any court having jurisdiction thereof.  The arbitration will be
conducted in accordance with the procedures in this document and the Arbitration Rules for
Professional Accounting and Related Services Disputes of the AAA ("AAA Rules").