Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------ x
                               :
    In re                      :    Chapter 11
                               :
DELPHI CORPORATION, et al.,    :    Case No. 05-_____ (___)
                               :
                    Debtors.   :    (Jointly Administered)
                               :
------------------------------ x

APPLICATION FOR ORDER UNDER 28 U.S.C. § 156(c)
AUTHORIZING RETENTION AND APPOINTMENT OF
KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS, NOTICING,
AND BALLOTING AGENT FOR CLERK OF BANKRUPTCY COURT

("KCC RETENTION APPLICATION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates

(the "Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), hereby submit this application (this "Application") for an order

---

[1]   In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holding Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

under 28 U.S.C. § 156(c) authorizing the retention and employment of Kurtzman Carson Consultants LLC (collectively with its servants, agents, employees, licensees, and subcontractors, "KCC") as claims, noticing, and balloting agent of the Clerk of the Bankruptcy Court for the Southern District of New York (the "Clerk"). In support of this Application, the Debtors submit the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005, and the Affidavit of Eric S. Kurtzman in support of the Application, sworn to October 5, 2005 (the "Kurtzman Affidavit"). In further support of this Application, the Debtors respectfully represent as follows:

## Background

A.    The Chapter 11 Filings

1. On October 8, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have moved this Court for an order authorizing joint administration of these chapter 11 cases.

2. No trustee, examiner, or creditors' committee has been appointed in the Debtors' cases.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4. The statutory predicates for the relief requested herein are 28 U.S.C. § 156(c) and Rule 2002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2

B.   Current Business Operations Of The Debtors

5. With more than 180,000 employees worldwide, global 2004 revenues of approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1 billion,[2] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations without supervision from the Bankruptcy Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

6. Over the past century, the operations which are now owned by Delphi have become a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines. Today, the Company is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide. The Company supplies products to nearly every major global automotive original equipment manufacturer with 2004 sales to its former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

7. As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world. In the U.S., the Debtors employ approximately 50,600 people. Those employees work in approximately 44 manufacturing sites

---

[2]   The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan. Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions. Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8. Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9. Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle. When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base. The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain

4

benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.     Events Leading To Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the Company generated more than $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales. Reflective of a downturn in the marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005. The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[3]

11.    The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio,

---

[3]     Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

operational issues and forward looking revenue requirements. Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13. Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses. This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan. The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down through the chapter 11 process.

14. Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

Relief Requested

15. By this Application, the Debtors seek entry of an order authorizing the retention and appointment of KCC as claims, noticing, and balloting agent (the "Claims Agent") to, among other things, (a) distribute required notices to parties-in-interest, (b) receive, maintain, docket, and otherwise administer the proofs of claims filed in the these chapter 11 cases, (c) tabulate acceptances and rejections of the Debtors' plan(s) of reorganization, and (d) provide such other administrative services that the Debtors may require.

Basis For Relief

16. The Debtors have identified tens of thousands of creditors, potential creditors, and other parties-in-interest to whom certain notices, including notice of the commencement of these chapter 11 cases, and voting documents, must be sent. Upon information and belief, the Clerk is not equipped to docket and maintain, efficiently and effectively, the extremely large number of proofs of claim that likely will be filed in these chapter 11 cases. The sheer magnitude of the Debtors' creditor body makes it impracticable for the Clerk to undertake such a task and to send notices to the creditors and other parties-in-interest.

17. The Debtors submit that the most effective and efficient manner by which to accomplish the process of receiving, docketing, maintaining, photocopying, and transmitting proofs of claim in these chapter 11 cases is for them to engage an independent third party to act as an agent of the Clerk.

18. Further, the Debtors expect that the solicitation of votes on their reorganization plan(s) will necessitate the forwarding of ballots, disclosure statement(s), reorganization plan(s), and related solicitation materials to many thousands of creditors, as well

7

as the accurate recordation and tabulation of the numerous ballots that are returned by such creditors. The Debtors also wish to retain KCC to assist them in this process.

19. KCC is a data processing firm that specializes in noticing, claims processing, and other administrative tasks in chapter 11 cases. The Debtors wish to engage KCC to send out certain designated notices, to maintain claims files and a claims register, and to act as voting agent with respect to certain creditors in these chapter 11 cases. The Debtors believe that such assistance will expedite service of Bankruptcy Rule 2002 notices, streamline the claims administration process, and permit the Debtors to focus on their reorganization efforts.

20. The Debtors believe that KCC is well-qualified to provide such services, expertise, consultation, and assistance. As set forth in the Kurtzman Affidavit, KCC has assisted and advised numerous chapter 11 debtors in connection with noticing, claims administration and reconciliation, and the administration of plan votes. KCC has provided identical or substantially similar services in other chapter 11 cases, including In re Collins & Aikman Corp., Case No. 05-55927 (E.D. MI. 2005); In re Ultimate Elecs., Case No. 05-10104 (Bankr. D. Del. 2005); In re Interstate Bakeries Corp., Case No. 04-45814 (Bankr. W.D. Mo. 2004); In re Haynes Int'l, Inc., Case No. 04-05364 (Bankr. S.D. Ind. 2004); In re NorthWestern Corp., Case No. 03-12872 (Bankr. D. Del. 2003); In re National Equip. Servs., Case No. 03-27626 (Bankr. N.D. Ill. 2003); In re NRG Energy, Inc., Case No. 03-13024 (Bankr. S.D.N.Y. 2003); In re Newcor, Inc., Case No. 02-10575 (Bankr. D. Del. 2002); and In re Cold Metal Prods., Inc., Case No. 02-43619 (Bankr. N.D. Ohio 2002).

21. Bankruptcy Rule 2002 generally regulates the notices that must be provided to creditors and other parties-in-interest in bankruptcy cases. Under Bankruptcy Rule 2002, this

Court may direct that a person other than the Clerk give notice of the various matters described therein.

22.   Further, 28 U.S.C. § 156, which governs the staffing and expenses of the Bankruptcy Court, states in pertinent part:

> Any court may utilize facilities or services, either on or off the court's premises, which pertain to the provision of notices, dockets, calendars, and other administrative information to parties in cases filed under the provisions of title 11, United States Code, where the costs of such facilities or services are paid for out of the assets of the estate and are not charged to the United States. The utilization of such facilities or services shall be subject to such conditions and limitations as the pertinent circuit council may prescribe.

28 U.S.C. § 156(c). The Debtors' engagement of KCC as Claims Agent therefore is authorized expressly under Bankruptcy Rule 2002 and under 28 U.S.C. § 156(c).

23.   The Debtors propose to retain KCC on substantially the terms and conditions set forth in the agreement attached as <u>Exhibit 1</u> to the proposed order accompanying this Application (the "Services Agreement"). The Debtors propose to compensate KCC on a monthly basis, in accordance with the Services Agreement, upon the receipt of reasonably detailed invoices setting forth the services provided by KCC in the prior month and the rates charged for each, and to reimburse KCC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation. The Debtors further propose that, if any of these chapter 11 cases convert to cases under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services until the claims filed in the chapter 11 cases have been processed completely; if claims agent representation is necessary in the converted chapter 7 case(s), KCC will continue to be paid in accordance with 28 U.S.C. §156(c) under the terms set out herein.

9

24. Under the Services Agreement, the Debtors anticipate that KCC will perform the following services as Claims Agent, at the request of the Debtors or the Clerk, including but not limited to the following:

(a) notifying all potential creditors of the filing of the Debtors' bankruptcy petitions and of the setting of the first meeting of creditors, pursuant to section 341(a) of the Bankruptcy Code, under the proper provisions of the Bankruptcy Code and the Bankruptcy Rules;

(b) maintaining an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c) notifying all potential creditors of the existence and amount of their respective claims as evidenced by the Debtors' books and records and as set forth in the Schedules;

(d) furnishing a notice of the last date for the filing of proofs of claims and a form for the filing of a proof of claim, after such notice and form are approved by this Court;

(e) filing with the Clerk an affidavit or certificate of service with a copy of the notice, a list of persons to whom it was mailed (in alphabetical order), and the date the notice was mailed, within ten days of service;

(f) docketing all claims received, maintaining the official claims registers (the "Claims Registers") for each Debtor on behalf of the Clerk, and providing the Clerk with certified duplicate unofficial Claims Registers on a monthly basis, unless otherwise directed;

(g) specifying, in the applicable Claims Register, the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and, if applicable, the agent who filed the claim, and (iv) the classification(s) of the claim (e.g., secured, unsecured, priority, etc.);

(h) relocating, by messenger, all of the actual proofs of claim filed from this Court to KCC, not less than weekly;

(i) recording all transfers of claims and providing any notices of such transfers required by Bankruptcy Rule 3001;

(j) making changes in the Claims Registers pursuant to orders of this Court;

10

(k) upon completion of the docketing process for all claims received to date by the Clerk's office, turning over to the Clerk copies of the Claims Registers for the Clerk's review;

(l) maintaining the official mailing list for each Debtor of all entities that have filed a proof of claim, which list shall be available upon request by a party-in-interest or the Clerk;

(m) assisting with, among other things, solicitation and calculation of votes and distribution as required in furtherance of confirmation of plan(s) of reorganization;

(n) 30 days prior to the close of these chapter 11 cases, submitting an order dismissing KCC as the Claims Agent and terminating the services of KCC as the Claims Agent upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases; and

(o) at the close of these chapter 11 cases, boxing and transporting all original documents in proper format, as provided by the Clerk's office, to the Federal Archives and Record Administration.

25. KCC represents, among other things, that:

(a) KCC will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as Claims Agent in these chapter 11 cases;

(b) by accepting employment in these chapter 11 cases, KCC waives any rights to receive compensation from the United States government;

(c) in its capacity as Claims Agent in these chapter 11 cases, KCC will not be an agent of the United States and will not act on behalf of the United States;

(d) KCC will not misrepresent any fact to the public; and

(e) KCC will not employ any past or present employees of the Debtors in connection with its work as Claims and Noticing Agent in these chapter 11 cases.

26. KCC will be compensated in accordance with the standards and procedures set forth in sections 330 and 331 of the Bankruptcy Code and all applicable Bankruptcy Rules, Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New

11

York (the "Local Rules"), guidelines established by the Office of the United States Trustee, and further orders of this Court.

27. To the best of the Debtors' knowledge, neither KCC nor any employee thereof has any connection with the Debtors, their creditors, or any other party-in-interest herein, they are "disinterested persons," as that term is defined in section 101(14) of the Bankruptcy Code, and they do not hold or represent any interest adverse to the Debtors' estates, except as set forth herein and in the Kurtzman Affidavit.

28. Relief similar to that requested herein has been approved by this Court and utilized in many large chapter 11 cases. See, e.g., In re Enron Corp., No. 01-16034 (Bankr. S.D.N.Y. Jan. 30, 2002); In re Global Crossing Ltd., No. 02-40188 (Bankr. S.D.N.Y. Jan. 28, 2002); In re Worldcom, Inc., No. 02-13533 (Bankr. S.D.N.Y. July 24, 2002); In re Hayes Lemmerz Int'l, Inc., No. 01-11490 (Bankr. D. Del. Dec. 6, 2001); In re Mpower Holding Corp., No. 02-11046 (Bankr. D. Del. Apr. 9, 2002); In re Exide Techs., No. 02-11125 (JCA) (Bankr. D. Del. Aug. 21, 2002).

29. Accordingly, the relief requested herein is in the best interests of the Debtors and their estates and creditors and should be approved.

## Notice

30. Notice of this Application has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to (a) the U.S. Trustee, (b) the Debtors' 50 largest unsecured creditors, (c) counsel for the agent under the Debtors' prepetition credit facility, and (d) counsel for the agent under the Debtors' proposed postpetition credit facility. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

31. Because the legal points and authorities upon which this Application relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a) approving the Services Agreement with KCC and appointing KCC as Claims Agent to perform the services described herein and (b) granting the Debtors such other and further relief as is just.

Dated:   New York, New York
         October 8, 2005

                                    DELPHI CORPORATION, on behalf of itself and certain
                                    of its subsidiaries and affiliates, as Debtors and Debtors-
                                    in-possession

                                    By:  <u>s/ John D. Sheehan</u>
                                         Name: John D. Sheehan
                                         Title: Vice President and Chief Restructuring Officer

13