# EXHIBIT 1

### SERVICES AGREEMENT



# AGREEMENT FOR SERVICES

This Agreement is entered into as of the 28th day of September, 2005, between Delphi Corporation (hereinafter referred to collectively as the "Company"), and Kurtzman Carson Consultants LLC (hereinafter referred to as "KCC").

The services rendered by KCC will commence September 29, 2005, and continue until either party shall exercise its rights of suspension or termination as set forth below.

"KCC" shall mean Kurtzman Carson Consultants LLC, its servants, agents, employees, licensees, and subcontractors, and the term "Company" shall include the servants, agents, employees, licensees and subcontractors of the Company.

## Terms and Conditions

I.  CONSULTATION SERVICES

A.  KCC agrees to provide the Company with consulting services regarding Noticing, Claims Management and Reconciliation, Plan Solicitation, Balloting, Disbursements and any other services agreed upon by the parties.

B.  KCC further agrees to provide computer software support and to educate and train the Company in the use of the support software, provide KCC's standard reports as well as consulting and programming support for Company requested reports, program modifications, data base modification, and/or other features in accordance with the KCC Fee Structure annexed hereto.

II.  DOCUMENT MANAGEMENT

KCC agrees to provide copy and notice services consistent with the applicable Local Rules of the United States Bankruptcy Court and as requested by the Company and/or the Court.

III.  PRICES, CHARGES AND PAYMENT

A.  KCC agrees to charge and the Company agrees to pay KCC's standard prices for its services, expenses and supplies at the rates or prices in effect on the

1

day such services and/or supplies are provided to the Company, in accordance with the KCC fee structure annexed hereto (the "KCC Fee Structure"). In addition to all charges for services and materials hereunder, Company shall pay to KCC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by KCC or paid by KCC to taxing authorities. This provision includes, but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income.

B.   KCC submits that the Company shall enjoy a "Most Favored Nation" status with regard to the KCC Fee Structure; i.e. should KCC enter into a similar engagement with any other party using a fee structure (the "More Favorable Fee Structure") more favorable to the client than the KCC Fee Structure attached hereto, then KCC shall immediately switch the KCC Fee Structure operable hereunder to the More Favorable Fee Structure.

C.   KCC's prices are adjusted annually on January 1 of each year to reflect changes in the business and economic environment. No price increase prior to January 1, 2007 or of more than 5% shall be effective unless agreed upon in advance by Company.

D.   Company agrees to pay KCC for reasonable expenses for transportation, lodging, meals and related items and KCC agrees to comply with Company's standard reimbursement guidelines.

E.   KCC agrees to submit its invoice to the Company within fifteen (15) business days of the end of each calendar month. Company agrees that the amount invoiced is due and payable upon its receipt of the invoice.

F.   KCC will provide to the Company a projected budget for this engagement as soon as practicable after KCC has performed its initial case due diligence (including gaining guidance from the Company and its legal and financial advisors regarding the Company's anticipated notice, service, claims and technology requirements from KCC). The parties recognize that such a budget shall be based upon various assumptions that can only be fully-calculated over the course of the engagement and, accordingly, KCC shall update the budget on a monthly basis and the budget shall not be binding upon either party unless the parties separately agree so.

G.   KCC shall receive a retainer in the amount of $150,000 for services to be performed and expenses to be incurred in this matter. This shall be an "evergreen retainer;" invoices shall be drawn down from the retainer and Company's payments shall then be deposited into the retainer to return the retainer to its original $150,000.

2

IV.   RIGHTS OF OWNERSHIP

A.   The parties understand that the software programs furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. Company agrees not to copy or permit others to copy the source code from the support software or any other programs furnished pursuant to this Agreement.

B.   Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed during the course of its Agreement by KCC shall be the exclusive property of KCC.

C.   Furthermore, upon Company's request at any time or times while this Agreement is in effect, KCC shall immediately deliver to Company, at Company's sole expense, any or all of the non-proprietary data and records held by KCC pursuant to this Agreement, in the form requested by Company.

V.   NON-SOLICITATION

Company agrees that neither it nor its directly controlled subsidiaries shall directly or indirectly intentionally solicit for employment, employ or otherwise retain staff of KCC that are performing services for the Company during the term of this Agreement, nor for a period of twelve (12) months after termination of this Agreement unless mutually agreed upon by both parties; provided that hiring through general solicitations for employment that are not targeted at KCC's employees shall be permitted.

VI.   CONFIDENTIALITY

KCC, on behalf of itself and its employees, agrees to keep confidential all records and other information with respect to the Company. Company, on behalf of itself and its employees, agrees to keep all proprietary, non-public information with respect to KCC's system, procedures and software confidential; provided, however, that if either party is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

3

VII.  SUSPENSION OF SERVICE AND TERMINATION

A.  This Agreement shall remain in force until terminated by the Company upon thirty (30) days' written notice to KCC, or for cause, in which event no notice shall be required. Cause shall mean an act or omission to act by KCC performed with either gross negligence or wanton misconduct that causes, or an act or omission with the intent to cause, harm to the Company's reorganization under chapter 11 of the United States Bankruptcy Code, which harm shall be subject to the sole discretion of the Company. KCC may terminate this agreement if the Company fails to pay KCC invoices for more than sixty (60) days following the date established for payment by the Bankruptcy Court; provided that KCC shall give at least 10 business days written notice of termination during which the Company may cure the default.

B.  In the event that this contract is terminated, regardless for the reason for such termination; KCC shall cooperate with Company to maintain an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for an orderly transfer. Company agrees to pay for such services in accordance with the KCC Fee Structure.

VIII.  SYSTEM IMPROVEMENTS

KCC will provide continuous improvements in the quality of service to the Company. KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's reorganization under chapter 11 of the United States Bankruptcy Code and are coordinated with the employees of the Company.

IX.  LIMITATIONS OF LIABILITY AND INDEMNIFICATION

Company shall indemnify and hold KCC, its officers, employees and agents harmless against any losses, claims, damages, judgments, liabilities and expense (including reasonable counsel fees and expenses) resulting from action taken or permitted by KCC in good faith with due care and without negligence in reliance upon instructions or orders received from Company as to anything arising in connection with its performance under this Agreement. KCC shall be without liability to Company with respect to any performance or non-performance, in accordance with the terms of this Agreement or instructions properly received pursuant hereto, if done in good faith and without negligence or willful or wanton misconduct. In no event shall KCC be liable for any indirect, special or

4

consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

## X. INDEPENDENT CONTRACTORS

Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this agreement.

## XI. NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

Kurtzman Carson Consultants LLC
12910 Culver Blvd., Ste I
Los Angeles, CA 90066
Attn: Eric S. Kurtzman
Tel: (310) 823-9000
Fax: (310) 823-9133

Delphi Corporation
5725 Delphi Drive
Troy, MI 48098
Attn: General Counsel

With a copy to:

Skadden, Arps, Slate, Meagher, and Flom LLP
333 West Wacker Dr.
Chicago, IL 60606
Attn: John Wm Butler, Jr., Esq.
    James E. Lyons, Esq.

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

## XII. APPLICABLE LAW

This Agreement shall be construed in accordance with the laws of the State of California.

5

## XIII. ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings and other agreements, oral and written between the parties relating to the subject matter of this Agreement. The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law. If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby. This Agreement may be modified only by a written instrument duly executed by an authorized representative of Company and an officer of KCC.

## XIV. ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned by KCC to a wholly owned subsidiary of KCC.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY:   Eric S. Kurtzman
TITLE:  Chief Executive Officer


Delphi Corporation

BY: John D. Sheehan
TITLE: Acting CFO, Controller
         + Chief Accounting Officer

6



# KCC FEE STRUCTURE

## FEES*

### Consulting Services

| | |
|---|---|
| *Clerical* – data input | $35.00 - $55.00 per hour (estimated blended rate of $45 per hour) |
| *Case Manager* – Document management and case administration | $65.00 - $95.00 per hour (estimated blended rate of $80 per hour) |
| *Bankruptcy Consultant* – general consulting; document/data review | $105.00 - $175.00 per hour (estimated blended rate of $145 per hour) |
| *Senior Bankruptcy Consultant* – general consulting; document/data review | $200.00 - $275.00 per hour (estimated blended rate of $225 per hour) |
| *Technology/Programming Consultant* – Bankruptcy Administration System maintenance and support | $105.00 - $175.00 per hour (estimated blended rate of $145 per hour) |

## EXPENSES[1]

### Bankruptcy Administration System

| | |
|---|---|
| Case configuration | Applicable consulting fees only |
| Remote set-up; training | Applicable consulting fees only |

---

*Weekend and Overtime – no additional fees.
[1] Expenses shall be consistent with the general practice procedures authorized in the District of _____.

1

12910 CULVER BLVD., SUITE I   LOS ANGELES, CA 90066-6709   TEL 310.823.9000   FAX 310.823.9133   WEB WWW.KCCLLC.COM

| | |
|---|---|
| On-Line Access to KCC's Bankruptcy Administration System | $100.00 per month per user |
| License fee and data storage | $0.05 per creditor per month[2] |
| Creation of case-specific public website | Waived |
| Hosting case-specific public website | $500 per month |

### Claims Management / Administration

| | |
|---|---|
| Creditor Name Import | Waived |
| Proof of claim input | $0.25 per claim |
| Document handling and document storage | Waived (included as part of License Fee and Data Storage above) |

### Notice Printing

| | |
|---|---|
| Set up | Waived |
| Inserting creditor information into customized documents | $0.10 per piece |
| Electronic Noticing | $150.00 per 1,000 |
| Document folding and inserting | $0.05 per document |
| Legal Notice Publishing | Quote prior to publishing |

### Document Management/Imaging

| | |
|---|---|
| Electronic Imaging (includes scanning and bar-coding application) | $0.07 per imaged page |

---

[2] For all creditors after the first 100,000, the per creditor per month charge shall be reduced to $0.02.

2

### Standard Reporting

| | |
|---|---|
| Claims registers, claims reports, service lists, Schedules and Statements of Financial Affairs, exhibits, ballot tabulation/disbursement reports, etc. | Waived |

### Voting Tabulation and Reports

| | |
|---|---|
| Per ballot process charge | $0.25 per ballot |

### Disbursements

| | |
|---|---|
| Issuance | Quote prior to printing |

### Other Expenses

| | |
|---|---|
| Printing and photocopies | $0.10 per image[3] |
| Travel | Actual cost |
| Postage, delivery, envelopes | Actual cost |
| Labels (includes charges for printing addresses) | $0.05 each[4] |
| Faxes – service | $0.10 per page |
| Faxes – standard incoming/outgoing | Waived |

---

[3] With respect to notice printing related to service of a document on more than 500 parties or 1,000 parties, this charge will be reduced by 10% or 15% respectively.

[4] With respect to notice printing related to service of a document on more than 500 parties or 1,000 parties, this charge will be reduced by 10% or 15% respectively.