UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                                      :
    In re                                           :
                                                        :   Chapter 11
DELPHI CORPORATION, et al.,                :
                                                         :   Case No. 05–44481 (RDD)
                                Debtors.  :
                                                         :   (Jointly Administered)
                                                         :
------------------------------------------------------------x

ORDER UNDER 11 U.S.C. §§ 105(a), 363, 364, 1107, AND 1108 AND
FED. R. BANKR. P. 6004 AND 9019 AUTHORIZING CONTINUATION OF VENDOR
RESCUE PROGRAM AND PAYMENT OF PREPETITION CLAIMS OF FINANCIALLY-
DISTRESSED SOLE SOURCE SUPPLIERS AND VENDORS WITHOUT CONTRACTS

("ESSENTIAL SUPPLIER ORDER")

        Upon the motion, dated October 8, 2005 (the "Motion"),[1] of Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under sections 105, 363, 1107, and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), and Fed. R. Bankr. P. 6004 and 9019, authorizing the continuation of the Debtors' prepetition vendor rescue program and the payment of prepetition claims of financially-distressed sole source suppliers and vendors without enforceable contracts; and upon the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005; and upon the record of the hearing held on the Motion; and this Court having determined that the relief requested in the Motion is in the best interests of the

---

[1]     Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

Debtors, their estates, their creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.  The Motion is GRANTED.

2.  The Debtors be, and they hereby are, authorized but not directed in the reasonable exercise of their business judgment, to pay all, a portion, or none of the prepetition claims (the "Essential Supplier Claims") owing to certain of the Debtors' suppliers that are essential to the uninterrupted functioning of the Debtors' business operations (the "Essential Suppliers") up to an aggregate amount of $90 million (the "Essential Supplier Claims Cap," which amount includes any amounts paid by the Debtors under the Bridge Order Under 11 U.S.C. §§ 105(a), 363, 364, 1107, And 1108 And Fed. R. Bankr. P. 6004 And 9019 Authorizing Continuation Of Vendor Rescue Program And Payment Of Prepetition Claims Of Financially-Distressed Sole Source Suppliers And Vendors Without Contracts entered on October 8, 2005) upon such terms and in the manner provided in this Order and subject to the provisions of the Debtors' postpetition financing agreement.

3.  The Debtors shall undertake appropriate efforts to cause Essential Suppliers to enter into an agreement with the Debtors substantially similar to <u>Exhibit A</u> hereto as a condition of payment of their Essential Supplier Claims, which agreement shall include, but not be limited to, the following terms:

    (a) The amount of such Essential Supplier's estimated Essential Supplier Claims, accounting for any setoffs, other credits, and discounts thereto, shall be as mutually determined in good faith by the Essential Supplier and the Debtors (but such amount shall be used only for the purposes of determining such Essential Supplier's claim under the Order and shall not be deemed a claim allowed by the Court and the rights of all interested persons to object

2

to such claim shall be fully preserved until further order of the Court, unless such claim is waived by the Essential Supplier pursuant to the terms of the letter);

      (b)   MNS-2 payment terms and those other terms and conditions as are embodied in the Delphi's General Terms and Conditions or such other more favorable trade terms, practices, and programs in effect between such supplier and the Debtors in the twelve months prior to the Petition Date (the "Customary Trade Terms") between such Essential Supplier and the Debtors, or such other favorable terms as the Essential Suppliers and the Debtors may agree, and the Essential Supplier's agreement to provide goods and services in accordance with such terms;

      (c)   The Essential Supplier's agreement to provide goods and services to the Debtors based upon Customary Trade Terms or on such other favorable terms to the Debtors as the Debtors and the Essential Supplier may otherwise agree for the remaining term of the Essential Supplier's agreement with the Debtors, and the Debtors' agreement to pay for such goods in accordance with such terms;

      (d)   The Essential Supplier's agreement not to file or otherwise assert against any or all of the Debtors, their estates, or any other person or entity or any of their respective assets or property (real or personal) any lien (a "Lien"), regardless of the statute or other legal authority upon which such Lien is asserted related in any way to any remaining prepetition amounts allegedly owed to the Essential Supplier by the Debtors arising from agreements or other arrangements entered into prior to the Petition Date, and, to the extent the Essential Supplier has already obtained or otherwise asserted such a Lien, the Essential Supplier shall take whatever actions are necessary to remove such Lien;

      (e)   The Essential Supplier's acknowledgment that it has reviewed the terms and provisions of the Order and consents to be bound thereby; and

      (f)   The Essential Supplier's agreement that it will not separately seek payment for reclamation claims outside the terms of the Order unless the Essential Supplier's participation in the program to pay Essential Supplier Claims pursuant to the Order is terminated; <u>provided</u>, <u>however</u>, that such reclamation claims shall, if thereafter raised by the Essential Supplier as permitted by the Order, be treated as though raised on the later of (i) the date of the Order and (ii) the date on which the Trade Agreement is executed by both parties.

An agreement executed by and between the Debtors and an Essential Supplier as set forth in this paragraph shall be referred to as a "Trade Agreement."  This Order is intended to authorize, but shall not require, the Debtors to enter into Trade Agreements, it being the express intention of this Court that the Debtors shall enter into Trade Agreements only when the Debtors determine, in their sole discretion, that it is appropriate to do so.

4. The Debtors are authorized, in their sole discretion, to make payments on account of Essential Supplier Claims in the absence of a Trade Agreement after the Debtors have undertaken diligent efforts to cause the Essential Supplier to execute a Trade Agreement and if the Debtors determine, in their sole discretion, that failure to pay the Essential Supplier Claim is likely to result in irreparable harm to the Debtors' business operations.

5. If an Essential Supplier refuses to supply goods and/or services to the Debtors on Customary Trade Terms following receipt of payment on its Essential Supplier Claim (regardless of whether such Essential Supplier has entered into a Trade Agreement), or fails to comply with any Trade Agreement entered into between such Essential Supplier and the Debtors, then the Debtors may, in their sole discretion and without further order of this Court, (a) declare that any Trade Agreement between the Debtors and such Essential Supplier is terminated (if applicable) and (b) declare that the payments made to the Essential Supplier on account of its Essential Supplier Claim be deemed to have been made in payment of then-outstanding postpetition claims of such suppliers without further order of this Court or action by any person or entity. In the event that such events occur, an Essential Supplier shall then immediately repay to the Debtors any payment made to it on account of its Essential Supplier Claims to the extent that payments on account of such Essential Supplier Claims exceed the postpetition claims of such suppliers then outstanding without giving effect to any rights of setoff, claims, provision for payment of reclamation or trust fund claims, or otherwise. In the event that a Trade Agreement is terminated or an Essential Supplier refuses to supply goods and/or services to the Debtors on Customary Trade Terms following receipt of payment on its Essential Supplier Claim (regardless of whether such Essential Supplier has entered into a Trade Agreement), it is the explicit

intention of this Court to return the parties to their position immediately prior to the entry of this Order with respect to all prepetition claims.

6.  The Debtors may, in their sole discretion, reinstate a Trade Agreement if:

(a)  the Debtors determination to terminate a Trade Agreement is subsequently reversed by this Court, after notice and a hearing following a motion by the Essential Supplier, for good cause shown that the determination was materially incorrect;

(b)  the underlying default under the Trade Agreement was fully cured by the Essential Supplier not later than five business days following the Debtors' notification to the Essential Supplier that a default had occurred; or

(c)  the Debtors, in their discretion, reach a favorable alternative agreement with the Essential Supplier.

7.  The Debtors are hereby authorized but not directed to waive and release their rights, and the rights of their respective estates, under section 547 of the Bankruptcy Code to avoid a prepetition transfers (each a "Prefunding Transfer") on account of the prefunding of obligations to a supplier (each a "Prefunded Suppliers") if, on or before November 7, 2005, such Prefunded Supplier enters into a Trade Agreement. For the avoidance of doubt, nothing contained herein shall constitute a waiver or release of any of the Debtors' or their estates' rights under section 547 of the Bankruptcy Code with respect to any Prefunding Transfer absent the Debtors' express written agreement to waive and release their rights and the rights of their estates under section 547 of the Bankruptcy Code, the Debtors' entry into which shall only be authorized in accordance with the terms of the immediately-preceding sentence.

8.  The Debtors are hereby authorized but not the directed to elect, in their sole discretion, to waive the conditions of this Order for payment of a claim under the Essential Supplier Claims Cap (the "Waiver") and to conditionally pay the claim of such threatening supplier (the "Non-Conforming Supplier"), subject to the following procedures:

(a)  In the event that the Debtors grant a Waiver to a Non-Conforming Supplier, the Debtors shall, within three business days of payment pursuant to the Waiver (the

5

"Filing Deadline"), file with this Court (i) a Notice of Waiver, in substantially the form attached hereto as Exhibit B (the "Notice of Waiver"), and (ii) a proposed Order to Show Cause, in substantially the form attached hereto as Exhibit C (the "Order to Show Cause"), and shall serve such Notice of Waiver and Order to Show Cause on (v) the Non-Conforming Supplier, (w) the Office of the United States Trustee, (x) counsel for the official committee of unsecured creditors appointed in these cases (the "Creditors' Committee"), (y) counsel for the agent under the Debtors' prepetition credit facility, and (z) counsel for the agent under Debtors' proposed postpetition credit facility; provided, however, that the Debtors will not be required to file or serve a Notice of Waiver and an Order to Show Cause if, prior to the Filing Deadline, the Creditors' Committee ratifies the Waiver in writing to the Debtors.

      (b)   At the first regularly-scheduled hearing occurring at least five business days following entry of the Order to Show Cause by this Court, the Non-Conforming Supplier shall be required to appear before this Court and demonstrate that such Non-Conforming Supplier should not be held in violation of the automatic stay.

      (c)   Should the Court determine that, by its conduct, the Non-Conforming Supplier has violated the automatic stay, the Non-Conforming Supplier shall be required to disgorge the amount of the payment made by the Debtors pursuant to the Waiver, plus attorneys' fees and interest accrued on such amount at the rate specified under the relevant agreements governing the Debtors' debtor-in-possession credit facility or such other higher rate as this Court specifies, within three business days of entry of the order holding such Non-Conforming Supplier in violation of the automatic stay.

      (d)   Nothing contained herein shall limit the Debtors' right to file any motions, adversary complaints, or other pleadings that they determine in their sole and absolute discretion are necessary or appropriate to pursue other remedies, including, without limitation, injunctive relief, or alter the burden of proof as to any violation of the automatic stay.

      9.   The form of Notice of Waiver attached hereto as Exhibit B and the form of Order to Show Cause attached hereto as Exhibit C are hereby approved by this Court in all respects for use in accordance with the provisions of the foregoing paragraph.

      10.   The Debtors are hereby authorized but not the directed to continue their prepetition vendor rescue program (the "Vendor Rescue Program") in the ordinary course of business, including, without limitation, by providing the following forms of support to those suppliers (the "Troubled Suppliers") which the Debtors determine, in the exercise of their business judgment, require such support to maintain their operations:

6

     (a) the Debtors may purchase, on behalf of a Troubled Supplier, the raw materials necessary to manufacture the Debtors' parts when a Troubled Supplier lacks the available credit to purchase such materials for its own account;

     (b) the Debtors may provide a lump sum subsidy to a Troubled Supplier when the Supplier is faced with an acute short-term economic problem;

     (c) the Debtors may lend funds to a Troubled Supplier, either by purchasing a participation in the Troubled Supplier's existing credit facility or by lending funds under a promissory note;

     (d) the Debtors may agree to pay their obligations under invoices from a Troubled Supplier on an accelerated basis;

     (e) the Debtors may agree to provide the Troubled Supplier with operational assistance, either through the Debtors' own personnel or through use of an outside consulting firm; and

     (f) the Debtors may enter into agreements necessary to effectuate the transactions entered into with Troubled Suppliers as part of the Vendor Rescue Program, including, without limitation, accommodation agreements, inventory repurchase agreements, and access agreements.

    11. The Debtors shall provide periodic reports to the Creditors' Committee which shall reflect payments of prepetition claims made to the Debtors' suppliers pursuant to this Order.

    12. Nothing herein shall be construed to limit, or in any way affect, the Debtors' ability to dispute any Essential Supplier Claim or as a waiver by any of the Debtors of their rights to contest any invoice of an Essential Supplier under applicable non-bankruptcy law.

    13. Nothing contained in the Motion or in this Order shall be deemed to constitute an assumption, adoption, or rejection of any executory contract or agreement between the Debtors and any third party or to require the Debtors to make any of the payments authorized herein.

14. Notwithstanding the relief granted herein and any actions taken hereunder, nothing herein shall create, nor is intended to create, any rights in favor of, or enhance the status of any claim held by, any person.

15. Notwithstanding any provision in the Federal Rules of Bankruptcy Procedure to the contrary, the Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order, and the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

16. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

17. Service of the Motion as provided therein shall be deemed good and sufficient notice of such Motion.

18. The entry of this Order is final; provided, however, that (a) within ten business days after the Creditors' Committee has been formed and retained counsel, the Creditors' Committee may object to the prospective application of this Order from and after the date of such objection, and (b) within ten business days of the date of entry hereof, the agent for the Debtors' prepetition banks (the "Agent") may object to the prospective application of this Order from and after the date of such objection; provided further that if any such objection is timely made by the Creditors' Committee or the Agent, such objection shall be heard at the next regularly-scheduled omnibus hearing in these cases, and (c) pending such hearing, this Order shall remain in full force and effect.

19.     The requirement under Local Rule 9013-1(b) for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:    New York, New York
         October 13, 2005

          /s/ ROBERT D. DRAIN
          UNITED STATES BANKRUPTCY JUDGE

Exhibit A

_____, 2005

TO:   [Essential Trade Creditor]
        [Name]
        [Address]

Dear Valued Supplier:

       As you are no doubt aware, on October 8, 2005 (the "Petition Date"), Delphi Corporation ("Delphi"), together with certain of its U.S. affiliates (collectively, the "Debtors"), filed voluntary petitions under chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101-1330, as amended) in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Cases" and the "Bankruptcy Court," respectively). On the Petition Date, we requested the Bankruptcy Court's authority to pay certain suppliers in recognition of the importance of continuity in our business operations and our desire that the Bankruptcy Cases have as little effect on our operations as possible. On October \_\_, 2005, the Bankruptcy Court entered an order (the "Order") authorizing us, under certain conditions, to pay pre-bankruptcy claims of certain suppliers that agree to the terms set forth below and to be bound by the terms of the Order. A copy of the Order is enclosed.

       To receive payment on pre-bankruptcy claims, each selected supplier must agree to continue supplying goods to the Debtors based on "Customary Trade Terms." In the Order, Customary Trade Terms are defined as MNS-2 payment terms and those other terms and conditions as are embodied in the Delphi's General Terms and Conditions or such other more favorable trade terms, practices and programs (including, but not limited to, credit limits, pricing, cash discounts, timing of payments, allowance, rebates, coupon reconciliation, normal product mix and availability, and other applicable terms and programs) in effect between such supplier and the Debtors in the twelve months prior to the Petition Date.

       For purposes of administration of this trade program as authorized by the Bankruptcy Court, the Debtors and you agree as follows:

       (a)    The estimated balance of the prepetition trade claim (net of any setoffs, credits or discounts (the "Trade Claim") that the Debtors will provisionally pay you is $_____.

       (b)    You will provide MNS-2 payment terms or such other more favorable payment terms in effect between such supplier and the Debtors in the twelve months prior to the Petition Date as follows: (if more space is required, attach continuation pages) (as necessary).

       (c)    In consideration for the payment described herein, you agree not to file or otherwise assert against any or all of the Debtors, their estates, or any other person or

entity or any of their respective assets or property (real or personal) any lien (regardless of the statute or other legal authority upon which such lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to you by the Debtors arising from agreements entered into prior to the Petition Date.  Furthermore, if you have taken steps to file or assert such a lien prior to entering into this letter agreement, you agree to take all necessary steps to remove such lien as soon as possible.

(d) You will hereafter extend to the Debtors all Customary Trade Terms (as defined in the Order).

Payment of your Trade Claim in the manner set forth in the Order may occur only upon execution of this letter by a duly authorized representative of your company and the return of this letter to the Debtors.  Your execution of this letter agreement and return of the same to the Debtors constitutes an agreement by you and the Debtors:

(a) to the Customary Trade Terms and, subject to the reservations contained in the Order, to the amount of the Trade Claim set forth above;

(b) that, for the remaining term of the purchase orders or other supply agreements governing your supply of goods to the Debtors, you will continue to supply the Debtors with goods, pursuant to the Customary Trade Terms, and that the Debtors will pay for such goods in accordance with Customary Trade Terms;

(c) that you have reviewed the terms and provisions of the Order and that you consent to be bound by such terms;

(d) that you will not separately seek payment for reclamation and similar claims outside the terms of the Order unless your participation in the trade payment program authorized by the Order (the "Trade Payment Program") is terminated; and

(e) that if either the Trade Payment Program or your participation therein terminates as provided in the Order, any payments received by you on account of your Trade Claim will be deemed to have been in payment of then outstanding postpetition obligations owed to you and that you will immediately repay to the Debtors any payments made to you on account of your Trade claim to the extent that the aggregate amount of such payments exceed the postpetition obligations then outstanding without the right of any setoffs, claims, provision for payment of reclamation, or trust fund claims, or otherwise.

The Debtors and you also hereby agree that any dispute with respect to this agreement, the Order, and/or your participation in the Trade Payment Program shall be determined by the Bankruptcy Court.

You hereby agree that you will keep the terms of this Agreement together with all related settlement discussions strictly confidential.  You may disclose the terms of this Agreement only to your management personnel that need to know such information to implement the terms of this Agreement and legal counsel and other advisors with whom you

have a recognized legal privilege; <u>provided</u> that all such parties have been informed of the confidentiality restrictions contained herein.  You further agree that you will be responsible and liable for any breach of the confidentiality provisions set forth in this Agreement by your management personnel, legal counsel and other advisors.  You acknowledge that failure to honor the confidentiality provisions contained herein would cause significant economic harm to the Debtors.  Any discussions by you with any third parties, including the press or media or consultants, regarding this Agreement and its terms are expressly prohibited.

You also hereby acknowledge and agree that you continue to be bound by the terms of each purchase order or supply agreement between you and one or more of the Debtors, including, without limitation, the general terms and conditions applicable thereto, except to the extent modified by the terms of this agreement and the United States Bankruptcy Code.

The Debtors expressly reserve all of their rights at law and in equity, including, without limitation, all of their rights as debtors-in-possession under the United States Bankruptcy Code.  Without limiting the generality of the foregoing sentence, this agreement, and any payment made hereunder, does not constitute (a) a waiver of the Debtors' rights (i) to dispute any claim, (ii) to reject any agreement, contract, purchase order, or other document under section 365 of the United States Bankruptcy Code, or (iii) to take, or refrain from taking, any other action under any applicable section of the United States Bankruptcy Code or any other applicable law or (b) an approval, adoption, or assumption of any agreement, contract, purchase order, or other document under section 365 of the United States Bankruptcy Code or any other applicable law, all of the Debtors' rights with respect to which are expressly reserved.

If you have any questions about this Agreement or our financial restructuring, please do not hesitate to call (___) _____ or (___) _____.

    Sincerely,

    [DELPHI AUTOMOTIVE SYSTEMS LLC]

    _____
    By:
        Its:

Agreed and Accepted by:
[Name of Trade Vendor]

_____
By:
    Its:

Dated: _____, 2005

3

Exhibit B

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                            :
   In re                                    :    Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :    Case No. 05-44481 (RDD)
                                            :
                   Debtors.                 :    (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

NOTICE OF WAIVER

          PLEASE TAKE NOTICE that on October 8, 2005, Delphi Corporation ("Delphi")

and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-

captioned cases (collectively, the "Debtors"), filed the Motion For Order Under 11 U.S.C. §§ 105(a), 363, 364, 1107, And 1108 And Fed. R. Bankr. P. 6004 And 9019 Authorizing Continuation Of Vendor Rescue Program And Payment Of Prepetition Claims Of Financially-Distressed Sole Source Suppliers And Vendors Without Contracts (the "Motion").

        PLEASE TAKE FURTHER NOTICE that on October __, 2005, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an order granting the relief requested in the Motion (the "Order").

        PLEASE TAKE FURTHER NOTICE that, pursuant to the authority granted to the Debtors pursuant to paragraph 8 of the Order, the Debtors have determined to waive the conditions for payment of a prepetition claim under the Essential Supplier Claims Cap (as defined in the Motion) with respect to **[INSERT NAME OF SUPPLIER]** ("Supplier") and conditionally paid prepetition claims of Supplier in the amount of $_____ on **[DATE]**.

PLEASE TAKE FURTHER NOTICE that contemporaneously herewith the Debtors are filing a proposed Order to Show Cause requesting that the Bankruptcy Court order Supplier to appear before the Bankruptcy Court at a hearing to be held at **10:00 a.m. Eastern Time on [DATE]** before the Honorable Robert D. Drain, United States Bankruptcy Judge, in the Bankruptcy Court, Courtroom 610, One Bowling Green, New York, New York 10004-1408 (the "Hearing") and demonstrate why Supplier should not be held in violation of the automatic stay provisions of 11 U.S.C. § 362.

Dated: New York, New York
October __, 2005

        SKADDEN, ARPS, SLATE, MEAGHER
          & FLOM LLP

        By: _____
          John Wm. Butler, Jr.
          John K. Lyons
          Ron E. Meisler
        333 West Wacker Drive, Suite 2100
        Chicago, Illinois 60606
        (312) 407-0700

          - and -

        By: _____
          Kayalyn A. Marafioti (KM 9632)
          Thomas J. Matz (TM 5986)
        Four Times Square
        New York, New York 10036
        (212) 735-3000

        Attorneys for Delphi Corporation, et al.,
          Debtors and Debtors-in-Possession

Exhibit C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                              :

In re                                       :

                                              :   Chapter 11

DELPHI CORPORATION, et al.,               :

                                              :   Case No.  05 – 44481 (RDD)

                            Debtors.      :

                                              :   (Jointly Administered)

                                              :
------------------------------------------------------------x

ORDER TO SHOW CAUSE

        Upon the motion, dated October 8, 2005 (the "Motion"),[1] of Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under sections 105, 363, 1107, and 1108 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), and Fed. R. Bankr. P. 6004 and 9019 authorizing the continuation of the Debtors' prepetition vendor rescue program and the payment of prepetition claims of financially-distressed sole source suppliers and vendors without enforceable contracts; and upon the order of this Court, entered October ?, 2005 (the "Order"), granting the relief requested in the Motion; and upon the Debtors' notice of waiver, dated ?, 2005, with respect to **[NAME OF SUPPLIER]** ("Supplier"); and it appearing that proper and adequate notice of the Debtors' request for entry of this Order to Show Cause (the "Show Cause Order") has been given

---

[1]     Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the Motion.

and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

20.  The Debtors have complied with the procedures provided in paragraph 8 of the Order in determining to waive the conditions for payment of a prepetition claim under the Essential Supplier Claims Cap (as defined in the Motion) with respect to Supplier and conditionally paying prepetition claims of Supplier in the amount of $\_\_\_\_\_ on **[DATE]**.

21.  Supplier is hereby ordered to show cause before this Court at a hearing to be held at **10:00 a.m. Eastern Time on [DATE]** before the Honorable Robert D. Drain,, United States Bankruptcy Judge, in the Bankruptcy Court, Courtroom 610, One Bowling Green, New York, New York 10004-1408 (the "Hearing") why the Supplier should not be held in violation of the automatic stay provisions of 11 U.S.C. § 362 for willfully threatening to withhold essential goods from the Debtors under one or more contracts between the Debtors and Supplier, which action was automatically stayed by the Debtors' filing of voluntary petitions in this Court for reorganization relief under chapter 11 of the Bankruptcy Code.

22.  Service of this Order to Show Cause is to be made by service upon (a) the Supplier, (b) the Office of the United States Trustee, (c) counsel for the official committee of unsecured creditors appointed in these cases pursuant to section 1102 of the Bankruptcy Code, (d) counsel for the agent under the Debtors' prepetition credit facility, and (e) counsel for the agent under Debtors' proposed postpetition credit facility.  Notice served pursuant to the preceding sentence shall be via first class mail, postage prepaid.  No further notice of the Hearing or of the entry of this Order to Show Cause need be served by the Debtors.

23. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

Dated:   New York, New York
         October __, 2005

UNITED STATES BANKRUPTCY JUDGE