SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :

    In re                                :        Chapter 11
                                              :
DELPHI CORPORATION, et al.,      :        Case No. 05-44481 (RDD)
                                             :
                     Debtors.     :        (Jointly Administered)
                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


MOTION FOR ORDER UNDER 11 U.S.C. §§ 327, 330,
AND 331 AUTHORIZING RETENTION OF PROFESSIONALS UTILIZED
BY DEBTORS IN ORDINARY COURSE OF BUSINESS

("ORDINARY COURSE PROFESSIONALS MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. §§ 327(a), 330, and 331 authorizing the retention and employment of professionals utilized by the Debtors in the ordinary course of business. In support of this Motion, the Debtors submit the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005. In further support of this Motion, the Debtors respectfully represent as follows:

Background

A.   The Chapter 11 Filings

1. On October 8, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have moved this Court for an order authorizing joint administration of these chapter 11 cases.

---

[1] In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holding Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

2

  2. No trustee, examiner, or Creditors' Committee has been appointed in the Debtors' cases.

  3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

  4. The statutory predicates for the relief requested herein are sections 327(a), 330, and 331 of the Bankruptcy Code.

B. <u>Current Business Operations Of The Debtors</u>

  5. With more than 180,000 employees worldwide, global 2004 revenues of approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1 billion,[2] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations without supervision from the Bankruptcy Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

  6. Over the past century, the operations which are now owned by Delphi have become a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines. Today, the Company is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide. The Company supplies products to nearly every major global automotive original equipment manufacturer with 2004 sales to its

---

[2] The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company, Daimler Chrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

7. As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world. In the U.S., the Debtors employ approximately 50,600 people. Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan. Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions. Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8. Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

4

9. Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle. When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base. The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.      Events Leading To Chapter 11 Filing

10. In the first two years following Delphi's separation from GM, the Company generated more than $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales. Reflective of a downturn in the marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005. The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[3]

11. The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S.

---

[3]   Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.   In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues and forward looking revenue requirements.  Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13.   Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses.  This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan.  The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down through the chapter 11 process.

14. Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

## Relief Requested

15. The Debtors customarily retain the services of various attorneys, accountants, and other professionals to represent them in matters arising in the ordinary course of business (collectively, the "Ordinary Course Professionals"). A list of Ordinary Course Professionals as of the Petition Date is attached as <u>Exhibit 1</u> to the Order.

16. By this Motion, the Debtors seek authorization but not direction (a) to retain Ordinary Course Professionals pursuant to sections 327, 330, and 331 of the Bankruptcy Code without the necessity of a separate, formal retention application approved by this Court for each Ordinary Course Professional and (b) to compensate the Ordinary Course Professionals for postpetition services rendered, subject to certain limits set forth below, without the necessity of additional Court approval.

17. Notwithstanding the Debtors' belief that certain of the Ordinary Course Professionals are not "professional persons" as contemplated by section 327 of the Bankruptcy Code, out of an abundance of caution, the Debtors hereby move this Court for an order authorizing but not directing the retention of all Ordinary Course Professionals.

## Basis For Relief

18. Prior to the filing of their chapter 11 petitions, Ordinary Course Professionals rendered services to the Debtors consisting of, among other things, (a) tax

preparation and other tax advice, (b) legal advice pertaining to various corporate and intellectual property matters, (c) legal representation in respect of personal injury, commercial and employment matters, and (d) real estate brokerage.

19. The Debtors wish to continue to employ and retain Ordinary Course Professionals to render services that are similar to those that were rendered prior to the commencement of these chapter 11 cases. The number of Ordinary Course Professionals involved, however, makes it costly and inefficient for the Debtors to submit individual applications and proposed retention orders to this Court for each such Ordinary Course Professional. Furthermore, the procedures outlined herein will relieve this Court, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") and the official committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors' Committee") (or any other official committee) of the burden of reviewing numerous fee applications involving relatively small fees and expenses.

20. The Debtors submit that the retention of the Ordinary Course Professionals and the payment of interim compensation on the basis set forth herein is in the best interests of the Debtors' estates. While generally the Ordinary Course Professionals wish to represent the Debtors on an ongoing basis, many might be unwilling to do so if they may be paid only through a formal application process.

21. Moreover, if the expertise and background knowledge of certain of the Ordinary Course Professionals with respect to the particular matters for which they were responsible prior to the Petition Date are lost, the estates undoubtedly will incur additional and unnecessary expense because the Debtors will be forced to retain other professionals without such background and expertise. It is therefore in the best interests of the Debtors' estates to

8

avoid any disruption in the professional services required in the day-to-day operations of the Debtors' businesses.

        22.    Consistent with the dimensions of these chapter 11 cases, the Debtors request that they be permitted to employ and retain Ordinary Course Professionals on terms substantially similar to those in effect prior to the Petition Date, subject to the limits and conditions described below.

A.    <u>Payment of Fees And Expenses</u>

        23.    The Debtors propose that they be permitted to pay, without formal application to this Court by any Ordinary Course Professional, 100% of the postpetition fees and disbursements to each Ordinary Course Professional upon the submission to the Debtors of an appropriate invoice setting forth in reasonable detail the nature of the services rendered after the Petition Date. Except as provided below, the Debtors believe that such fees and disbursements will not exceed either (a) $60,000 per month per Ordinary Course Professional or (b) $900,000 in the aggregate per Ordinary Course Professional over the life of these chapter 11 cases.

        24.    The Debtors propose that to the extent that fees payable to any Ordinary Course Professional (except a Key Ordinary Course Professional, as defined below) exceed the $60,000 monthly limit, then such Ordinary Course Professional shall, on or before the 30th day of the month following the month for which compensation is sought (the "Monthly Statement Date"), submit a monthly statement for the additional compensation sought to (a) the Debtors, at Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (b) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (c) special counsel to the Debtors, Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022 (Att'n: Douglas P. Bartner), (d) counsel to the Debtors' postpetition lenders, (e) counsel to the Creditors'

9

Committee, and (f) the U.S. Trustee, 33 Whitehall Street, Suite 2100, New York, New York 10044 (Att'n: Deirdre A. Martini, Esq.) (collectively, the "Interested Parties").

25.   The Interested Parties will have 20 days after the Monthly Statement Date to review the statement for the additional compensation and object to the additional fees requested by such Ordinary Course Professional. If any of the Interested Parties objects to the payment of the additional fees, then the Ordinary Course Professional will be required to submit a formal application to this Court for the additional compensation. If no Interested Party timely objects to the payment of fees, then the Debtors shall be deemed authorized but not required to pay the additional compensation sought.

26.   The Debtors currently employ the following Ordinary Course Professionals which the Debtors would expect regularly to submit invoices for services in excess of the $60,000 per month limit: (a) Baker & Daniels; (b) Butzel, Long; (c) Cadwalader Wickersham & Taft LLP; (d) Covington & Burling LLP; (e) Cantor Colburn LLP; (f) Equis Corporation;[4] (g) Ernst & Young LLP; (h) Howard & Howard Attorneys, P.C.; (i) Jones Day; (j) Jones Lang LaSalle; (k) Price, Heneveld, Cooper, DeWitt; (l) Rader Fishman & Grauer; and (m) Wilmer Cutler Pickering Hale & Door, LLP (collectively, the "Key Ordinary Course Professionals").

27.   The Debtors propose that the procedures for payment of Key Ordinary Course Professionals be the subject of a protocol to be established by the Joint Fee Review Committee, as contemplated by the Motion For Administrative Order Under 11 U.S.C. § 331

---

[4]   As of the Petition Date the Debtors' retained Equis Corporation ("Equis") as their real estate broker. Pursuant to its current retention, Equis is obligated to continue to act in such capacity through November 2005. The Debtors have sought to retain Jones Lang LaSalle Americas Inc. ("Jones Lang LaSalle") to perform this function as of December 2005. The Debtors do not intend that Equis will perform the services set forth herein after November 2005 or that Jones Lang LaSalle will commence performance of the services set forth herein before December 2005. Accordingly, the Debtors do not anticipate that there will be any overlap in the services to be provided by each of Equis and Jones Lang LaSalle.

10

Establishing Procedures For Interim Compensation And Reimbursement Of Professionals, filed contemporaneously herewith. The Debtors further propose that the Key Ordinary Course Professionals (a) be authorized to continue to render services to the Debtors pending the establishment of such protocol and (b) not be required to file a formal retention application unless required to do so by the Joint Fee Review Committee.

B.      The Submission Of Rule 2014 Affidavits

28.     Pursuant to this Motion, the Debtors request that Ordinary Course Professionals be excused from filing an affidavit of disinterestedness pursuant to Bankruptcy Rule 2014, except as expressly provided herein. The Debtors recognize, however, the importance of providing to this Court and to the U.S. Trustee information regarding each Ordinary Course Professional that is an attorney.

29.     Accordingly, the Debtors propose that each Ordinary Course Professional, but not any De Minimis Ordinary Course Professional (as defined below), that is an attorney who is located in the United States be required to file with this Court and to serve upon the Interested Parties an Affidavit of Ordinary Course Professional (the "Affidavit") within 60 days of the date of an order granting this Motion. A form of the Affidavit is attached as Exhibit 2 to the Order.

30.     With respect to Ordinary Course Professionals who are not located within the United States, the Debtors request that such professionals not be required to file an Affidavit. The Debtors will coordinate with the U.S. Trustee regarding alternative procedures that will recognize the unique position of foreign professionals, whose services are critical to the Debtors but who are unfamiliar with and may be unwilling to follow the procedures applicable to professionals within the United States.

C.  Additional Ordinary Course Professionals

31. The Debtors further request that they be authorized but not directed to employ and retain additional Ordinary Course Professionals in their sole discretion without the need to file individual retention applications for each by filing with this Court a supplement to Exhibit 1 to the Order (the "Supplement"). The Supplement will set forth the name of the additional Ordinary Course Professional and whether such professional is to be a Key Ordinary Course Professional, along with a brief description of the services to be rendered and will be served upon the U.S. Trustee, counsel for the Creditors' Committee, and counsel for the agent under the Debtors' proposed postpetition credit facility, without the need for any further hearing or notice to any other party.

32. For the purposes of complying with the Bankruptcy Rule 2014 affidavit procedures set forth above, the Debtors request that the time for additional Ordinary Course Professionals that are attorneys to file an Affidavit with this Court and to serve it upon the Interested Parties runs from the filing of the Supplement, but that all other requirements remain the same.

D.  Objections To The Retention Of An Ordinary Course Professional

33. The Debtors propose that the U.S. Trustee, the Creditors' Committee, and the postpetition lenders shall have 20 days after the receipt of each Ordinary Course Professional's Affidavit (the "Affidavit Objection Deadline") to object to the retention of such Ordinary Course Professional. Such objecting party shall serve any such objections upon the Interested Parties and the Ordinary Course Professional on or before the Affidavit Objection Deadline.

34. If any such objection cannot be resolved within 20 days after the Affidavit Objection Deadline, the matter shall be scheduled for hearing before this Court at the next

12

regularly scheduled omnibus hearing date or date otherwise agreeable to the Ordinary Course Professional, the Debtors, and the U.S. Trustee. If no objection is received prior to the Affidavit Objection Deadline, the Debtors shall be deemed authorized to retain such Ordinary Course Professional as a final matter.

E.     <u>De Minimis Ordinary Course Professionals</u>

35.    In the ordinary course of their business, the Debtors employ a significant number of legal professionals, the fees and disbursements charged by which are relatively minimal. Following the filing of these cases, the Debtors anticipate that the number of such professionals will increase because many of the litigation matters in respect of which legal services are currently provided will be stayed. The Debtors therefore propose that they be authorized to pay any legal professional whose services do not result in fees and disbursements in excess of $5,000 per month per professional (collectively, the "De Minimis Ordinary Course Professionals") without the need to (a) file a formal application, (b) be scheduled on Exhibit 1 to the Order or on any Supplement, or (c) file an Affidavit. The Debtors propose that a De Minimis Ordinary Course Professional would be paid, subject to the limit set forth above, 100% of the fees and disbursements incurred upon submission of appropriate invoices setting forth in reasonable detail the nature of the services rendered and disbursements incurred.

36.    If in any month a De Minimis Ordinary Course Professional exceeds the applicable monthly limit, such professional would be required to (a) complete and serve an Affidavit in accordance with paragraph 29 of this Motion, and (b) submit a monthly fee statement in accordance with paragraphs 24 and 25 of this Motion, in order to receive further compensation.

37.    The U.S. Trustee shall then have 15 days following such service to notify the Debtors in writing of any objections to the retention of the De Minimis Ordinary Course

13

Professional stemming from the contents of the Affidavit. If after 15 days no objection is filed, the De Minimis Ordinary Course Professional would be retained as an Ordinary Course Professional and would be subject to all provisions herein regarding Ordinary Course Professionals. As noted above, the Debtors propose that no De Minimis Ordinary Course Professional who has exceeded the applicable limit be paid any amount in excess of such limit for invoiced fees and expense reimbursement until the Affidavit has been filed with this Court and the objection deadline has passed.

Applicable Authority

38. Because the nature of the work performed by the Ordinary Course Professionals is only indirectly related to the type of work carried out by the Debtors' restructuring counsel, because the degree of discretion afforded the Ordinary Course Professionals in performing such work is marginal, and because the Ordinary Course Professionals will not be involved in the administration of these chapter 11 cases, the Debtors do not believe that the Ordinary Course Professionals are "professionals," within the meaning of section 327 of the Bankruptcy Code, whose retention must be approved by this Court. See, e.g., In re Johns-Manville Corp., 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1989) (only those professionals involved in the actual reorganization effort, rather than the debtor's ongoing business, require approval under section 327); In the matter of Seatrain Lines, Inc., 13 B.R. 980, 981 (Bankr. S.D.N.Y. 1981) ("professional person" is limited to persons in those occupations which play a central role in the administration of the debtor proceeding); see also, In re First Merchants Acceptance Corp., Case No. 971500, 1997 Bankr. LEXIS 2245, at *8-9 (Bankr. D. Del. Dec. 15, 1997); Elstead v. Nolden (In re That's Entertainment Mktg. Group), 168 B.R. 226, 230 (N.D. Cal. 1994) (only the retention of professionals whose duties are central to the administration of the estate requires prior court approval under section 327); Kmart Corp., Case No. 02-02474

14

(SPS) (Bankr. N.D. Ill. Jan. 25, 2002 (same); Comdisco, Inc., Case No. 01-24795 (Bankr. N.D. Ill. July 17, 2001) (same); In re D'Lites of Am., Inc., 108 B.R. 352, 355 (Bankr. N.D. Ga. 1989) (section 327 approval not necessary for "one who provides services to the debtor that are necessary whether petition was filed or not").

39.   Nevertheless, out of an abundance of caution, the Debtors seek the relief requested herein to avoid any subsequent controversy as to the Debtors' employment and payment of the Ordinary Course Professionals during the pendency of these chapter 11 cases. The Debtors shall seek specific Court authority under section 327 to employ any other professionals involved in the actual administration of these chapter 11 cases.

40.   Relief similar to that requested herein has been approved by this Court and has been granted in other large chapter 11 cases.  See, e.g., In re Delta Air Lines, Inc., Case No. 05-17923 (Bankr. S.D.N.Y. Sept. 16, 2005); In re Loral Space & Communications Ltd, Case No. 03-41710 (Bankr. S.D.N.Y. Sept. 2, 2003); In re Spiegel, Inc., Case No. 03-11540 (Bankr. S.D.N.Y. May 30, 2003); In re NRG Energy, Inc., Case No. 03-13024 (Bankr. S.D.N.Y. May 20, 2003); In re Allegiance Telecom, Inc., Case No. 03-13057 (Bankr. S.D.N.Y. May 15, 2003); In re WorldCom, Inc., Case No. 02-13533 (Bankr. S.D.N.Y. Sept. 4, 2002); In re Adelphia Communications Corp., Case No. 02-41729 (Bankr. S.D.N.Y. Jun. 27, 2002); In re Enron Corp., Case No. 01-16034 (Bankr. S.D.N.Y. Feb. 22, 2002).

41.   Although certain of the Ordinary Course Professionals may hold unsecured claims against the Debtors, the Debtors do not believe that any of the Ordinary Course Professionals has an interest materially adverse to the Debtors, their estates, creditors, or shareholders.

42. Accordingly, the relief requested herein is in the best interests of the Debtors, their estates, and creditors and should be approved.

### Notice

43. Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to (a) the U.S. Trustee, (b) the Debtors' 50 largest unsecured creditors, (c) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n: Marissa Wesley), and (d) counsel for the agent under the Debtors' proposed postpetition credit facility, Davis Polk & Wardell, 450 Lexington Avenue, New York, New York, 10017 (Att'n: Marlane Melican). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

### Memorandum Of Law

44. Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

16

WHEREFORE, the Debtors respectfully request that this Court enter an order (a) authorizing the retention of professionals utilized by the Debtors in the ordinary course of business and (b) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
       October 13, 2005

                     SKADDEN, ARPS, SLATE, MEAGHER
                       & FLOM LLP

By: s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (pro hac vice motion pending)
    John K. Lyons
    Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

    - and -

By: s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession