SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
    In re                                 :   Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :   Case No. 05-44481(RDD)
                                          :
                       Debtors.           :   (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ADMINISTRATIVE ORDER UNDER 11 U.S.C. § 331
ESTABLISHING PROCEDURES FOR INTERIM COMPENSATION
AND REIMBURSEMENT OF EXPENSES OF PROFESSIONALS

("INTERIM COMPENSATION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. § 331 establishing procedures for interim compensation and reimbursement of expenses of court-approved professionals. In support of this Motion, the Debtors submit the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005. In further support of this Motion, the Debtors respectfully represent as follows:

Background

A.     The Chapter 11 Filings

1.     On October 8, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Debtors have moved this Court for an order for joint administration of these chapter 11 cases.

---

[1] In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

.

2

    2.  No trustee, examiner, or creditors' committee has been appointed in the Debtors' cases.

    3.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

    4.  The statutory predicate for the relief requested herein is section 331 of the Bankruptcy Code.

  B.  Current Business Operations Of The Debtors

    5.  With more than 180,000 employees worldwide, global 2004 revenues of approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1 billion,[2] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations without supervision from the Bankruptcy Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

    6.  Over the past century, the operations which are now owned by Delphi have become a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines. Today, the Company is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide. The Company supplies products to nearly every major global automotive original equipment manufacturer with 2004 sales to its

---

[2] The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

7. As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world. In the U.S., the Debtors employ approximately 50,600 people. Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan. Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions. Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8. Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9. Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle. When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base. The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C. Events Leading To The Chapter 11 Filing

10. In the first two years following Delphi's separation from GM, the Company generated more than $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales. Reflective of a downturn in the marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005. The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[3]

11. The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S.

---

[3] Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12. In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues and forward looking revenue requirements. Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13. Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses. This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan. The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down through the chapter 11 process.

14. Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

Relief Requested

15. Contemporaneously with the filing of this Motion, or soon thereafter, the Debtors expect to seek approval of the employment of (a) Skadden, Arps, Slate, Meagher & Flom LLP as restructuring and bankruptcy counsel, (b) Shearman & Sterling LLP as special counsel, (c) O'Melveny & Myers LLP as special labor counsel, (d) Groom Law Group Chartered as special employee benefits counsel, (e) Togut, Segal & Segal LLP as conflicts counsel, (f) Rothschild Inc. as financial advisors and investment bankers, and (g) FTI Consulting, Inc. as restructuring and financial advisors.[4]  The Debtors may seek to retain other professionals to assist them in these cases as the need arises (collectively, the "Debtors' Professionals").  In addition, a statutory committee of unsecured creditors (the "Creditors' Committee") and possibly other statutory committees likely will be appointed in these cases, and likely will retain counsel, and possibly other professionals, to assist them (collectively with the Debtors' Professionals, the "Chapter 11 Professionals").

---

[4] In addition to these professionals, the Debtors expect to seek approval of the employment of Kurtzman Carson Consultants LLC ("KCC"), pursuant to 28 U.S.C. § 156, to serve as claims, noticing, and balloting agent in these cases.  Although KCC will not be retained under section 327 of the Bankruptcy Code, its compensation will be subject to 11 U.S.C. § 330.  Contemporaneously herewith, the Debtors have also filed the Motion For Order Under 11 U.S.C. §§ 105, 327, 330, And 331 Authorizing Retention Of Professionals Utilized By Debtors In Ordinary Course of Business.

16. Pursuant to section 331 of the Bankruptcy Code, all professionals are entitled to submit applications for interim compensation and reimbursement of expenses every 120 days, or more often if this Court permits. Accordingly, the Debtors request the establishment of procedures (a) for compensating and reimbursing the Chapter 11 Professionals on a monthly basis and (b) governing the interim and final fee application process. In addition, pursuant to section 503(b)(3)(F) of the Bankruptcy Code, the Debtors seek to establish a mechanism by which members of the Creditors' Committee (and members of any other statutory committees) may be reimbursed for expenses incurred in the performance of their duties.

17. The specific relief requested by the Debtors conforms substantially with the professional and committee payment procedures approved by General Order of the United States Bankruptcy Court for the Southern District of New York, dated January 24, 2000, entitled "In the Matter of Order Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals." Such relief will permit this Court and all other parties to more effectively monitor the professional fees incurred in these Chapter 11 cases.

18. Accordingly, the Debtors propose that the interim payment of compensation and reimbursement of expenses to the chapter 11 Professionals be permitted as follows:

> a. On or before the last day of the month following each month for which compensation is sought, each professional will serve a monthly statement by hand or overnight delivery upon (a) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098, Att'n: General Counsel, (b) Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606, Att'n: John Wm. Butler, Jr., Esq., (c) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10044, Att'n: Alicia M. Leonhard, Esq. (the "U.S. Trustee"), (d) counsel for any official committee appointed in these cases, (e) counsel for the agent under the Debtors' prepetition credit facility, and (f) counsel for the agent under the Debtors' postpetition credit facility (collectively, the "Notice Parties").

          b.       The monthly statement need not be filed with this Court and a courtesy copy need not be delivered to the presiding judge's chambers. The procedures are not intended to alter the fee application requirements outlined in sections 330 and 331 of the Bankruptcy Code, and the Chapter 11 Professionals are still required to serve and file interim and final applications for approval of fees and expenses in accordance with the relevant provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the Local Bankruptcy Rules.

          c.       Each monthly fee statement must contain a list of the individuals and their respective titles (e.g., attorney, accountant, or paralegal) who provided services during the statement period, their respective billing rates, the aggregate hours spent by each individual, a reasonably detailed breakdown of the disbursements incurred, and contemporaneously maintained time entries for each individual in increments of tenths (1/10) of an hour. No professional should seek reimbursement of an expense that would otherwise not be allowed pursuant to this Court's Administrative Orders, dated June 24, 1991 and April 21, 1995, or the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330, dated January 30, 1996.

          d.       Each person receiving a statement will have at least 15 days after its receipt to review it. In the event that he or she has an objection to the compensation or reimbursement sought in a particular statement, he or she will, by no later than the 45th day following the month for which compensation is sought, serve upon the professional whose statement is objected to, and the Notice Parties, a written "Notice Of Objection To Fee Statement," setting forth the nature of the objection and the amount of fees or expenses at issue.

          e.       At the expiration of the 45-day period, the Debtors will promptly pay 80% of the fees and 100% of the expenses identified in each monthly statement to which no objection has been served in accordance with paragraph (d). Any disbursements from the holdback amount shall be made in accordance with the recommendation of the "Fee Committee" (defined below) and/or as may be determined by this Court.

          f.       If the Debtors receive an objection to a particular fee statement, they will withhold payment of that portion of the fee statement to which the objection is directed and promptly pay the remainder of the fees and disbursements in the percentages set forth in paragraph (e).

          g.       Similarly, if the parties to an objection are able to resolve their dispute following the service of a Notice Of Objection To Fee Statement, and if the party whose statement was objected to serves upon all of the Notice Parties a statement indicating that the objection is withdrawn and describing in detail the terms of the resolution, then the Debtors will promptly pay, in accordance with paragraph (e), that portion of the fee statement which is no longer subject to an objection.

    h. All objections that are not resolved by the parties will be preserved and presented to this Court at the next interim or final fee application hearing to be heard by this Court (see paragraph (j) below).

    i. The service of an objection in accordance with paragraph (d) will not prejudice the objecting party's right to object to any fee application made to this Court in accordance with the Bankruptcy Code on any ground, whether raised in the objection or not.  Furthermore, the decision by any party not to object to a fee statement will not be a waiver of any kind or prejudice that party's right to object to any fee application subsequently made to this Court in accordance with the Bankruptcy Code.

    j. Approximately every 120 days, but no more than every 150 days, each of the Chapter 11 Professionals will serve and file with this Court an application for interim or final court approval and allowance, pursuant to sections 330 and 331 of the Bankruptcy Code (as the case may be), of the compensation and reimbursement of expenses requested.

    k. Any professional who fails to file when due an application seeking approval of compensation and expenses previously paid under these procedures (a) will be ineligible to receive further monthly payments of fees or expenses as provided herein until further order of this Court and (b) may be required to disgorge any fees paid since his or her retention or the last fee application, whichever is later.

    l. The pendency of an application or an order that payment of compensation or reimbursement of expenses was improper as to a particular statement will not disqualify a professional from the future payment of compensation or reimbursement of expenses as set forth above, unless otherwise ordered by this Court.

    m. Neither the payment of, nor the failure to pay, in whole or in part, monthly compensation and reimbursement as provided herein will have any effect on this Court's interim or final allowance of compensation and reimbursement of expenses of any of the Chapter 11 Professionals.

    n. In the event of the administrative insolvency of the Debtors, the Creditors' Committee or the U.S. Trustee may seek contribution of any unapplied retainers to fund pro rata payments to retained professionals whose claims are not paid through any carve-out amount that had been established by a financing order in these cases and the rights of all retained professionals holding such retainers shall be fully reserved with respect to any such application.

   19. The Debtors further request that this Court limit the notice of hearings to consider interim fee applications and the final fee applications to the Notice Parties and all other parties who have filed notice of appearance and/or requested notice in these chapter 11 cases.

10

Such notice should apprise the parties most active in these cases and will save the expense of undue duplication and mailing.

        20.       The Debtors propose that a Joint Fee Review Committee (the "Fee Committee") be established in these cases comprised of (a) the U.S. Trustee, (b) two representatives appointed by the Debtors,[5] and (c) two representatives appointed by the Creditors' Committee. The Debtors propose that, on or prior to November 15, 2005, each constituent group identified in the preceding sentence advise the Debtors' attorneys of the identity of and contact information for its appointee to the Fee Committee. On or before December 15, 2005, the Debtors propose that the Fee Committee submit a protocol to this Court for its approval substantially in the form of Exhibit A attached hereto. See In re Adelphia Communications Corp., Case No. 02-41729 (REG) (Bankr. S.D.N.Y. Mar. 7, 2003); In re Adelphia Bus. Solutions, Inc., Case No. 02-11389 (REG) (Bankr. S.D.N.Y. May 20, 2002); In re The Singer Co., N.V., Case Nos. 99-10578 through 99-10607, 99-10613, 99-10616 through 99-10629 and 00-10423 (BRL) (Bankr. S.D.N.Y. Sept. 13, 1999); see also In re US Airways Group, Inc., Case No. 02-83984 (SSM) (Bankr. E.D. Va. Aug. 16, 2002); In re Kmart Corp., Case No. 02-02474 (SPS) (Bankr. N.D. Ill. Mar. 20, 2002); In re Service Merchandise Co., Case No. 99-02649 (Bankr. M.D. Tenn. 1999).

        21.       In cases of this magnitude, the volume of fee and expense requests are such that the Fee Committee will not have the resources to thoroughly review such requests without the assistance of dedicated outside professionals. These outside professionals provide valuable services which will allow the Fee Committee to fulfill its duties economically and effectively, such as preparation of computer-generated analyses of the Chapter 11 Professionals'

---

[5]    The Debtors shall be entitled to appoint one legal representative and one business representative.

11

monthly fee statements and fee applications, preparation of reports to the Fee Committee on such statements and applications, and coordination of discussions with the Chapter 11 Professionals on any fee or expense issues, as directed by the Fee Committee.  The Debtors believe that the cost of such professionals' services will be more than offset by the value to the Fee Committee of the services to be provided.  Therefore, the Debtors request that the Fee Committee be authorized to retain an outside fee examiner and separate legal counsel of its choosing.  Fee committees appointed in other large chapter 11 cases have regularly utilized the services of such professionals.  See, e.g., In re Adelphia Communications Corp., Case No. 02-41729 (REG) (Bankr. S.D.N.Y. June 25, 2003); In re WorldCom, Inc., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. July 29, 2003); In re Kmart Corp., Case No. 02-02474 (SPS) (Bankr. N.D. Ill. June 3, 2003); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. June 5, 2002).

        22.      With respect to the reimbursement of expenses of members of any statutory committees, it is proposed that counsel for each committee, in accordance with the foregoing procedure for monthly compensation and reimbursement of Chapter 11 Professionals, collect and submit statements of expenses, with supporting vouchers, from members of the committee he or she represents.  Each counsel would be responsible for ensuring that the reimbursement requests comply with this Court's Administrative Orders dated June 24, 1991 and April 21, 1995.  The interim and final application process would also be applicable to committee member expenses.

        23.      The Debtors believe that establishing procedures for compensation and reimbursement of expenses will enable all parties-in-interest to monitor closely the costs of administration, maintain a level cash flow, and implement efficient cash management procedures.  Moreover, on the Petition Date, the Debtors requested that this Court enter an order

approving a postpetition credit facility that will enable the Debtors to meet all of their postpetition working capital requirements, including the interim compensation and reimbursement of expenses of professionals sought to be retained by the Debtors.  The Debtors are administratively solvent and believe that these procedures are in the best interests of the Debtors, their estates, and their creditors and will leave sufficient liquidity in these chapter 11 cases to meet all obligations proposed herein.  Moreover, such procedures are consistent with the procedures established in other complex cases in this district.  See, e.g., In re Delta Air Lines, Inc., Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Oct. 6, 2005); In re Winn-Dixie Stores, Inc., Case No. 05-11063 (RDD) (Bankr. S.D.N.Y. Mar. 15, 2005); In re Spiegel, Inc., Case No. 03-11540 (CB) (Bankr. S.D.N.Y. Apr. 10, 2003); In re WorldCom, Inc., Case No. 02-13533 (Bankr. S.D.N.Y. Aug. 13, 2002); In re Global Crossing, Ltd., Case No. 02-40187 (Bankr. S.D.N.Y. Jan. 28, 2002).

### Notice

24.    Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to (a) the Office of the United States Trustee, (b) the Debtors' 50 largest unsecured creditors, (c) counsel for the agent under the Debtors' prepetition credit facility, and (d) counsel for the agent under the Debtors' proposed postpetition credit facility.  In light of the nature of the relief requested, under the Debtors submit that no other or further notice is necessary.

### Memorandum Of Law

25.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

13

WHEREFORE, the Debtors respectfully request that this Court enter an order (a) establishing procedures for compensating and reimbursing Chapter 11 Professionals on a monthly basis and governing the interim and final fee application process, (b) establishing a Fee Committee, (c) authorizing retention of outside professionals by the Fee Committee, and (d) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
       October 13, 2005

            SKADDEN, ARPS, SLATE, MEAGHER
              & FLOM LLP

            By: s/ John Wm. Butler, Jr._____
               John Wm. Butler, Jr. (pro hac vice motion pending)
               John K. Lyons
               Ron E. Meisler
            333 West Wacker Drive, Suite 2100
            Chicago, Illinois  60606
            (312) 407-0700

             - and -

            By: s/ Kayalyn A.  Marafioti_____
               Kayalyn A. Marafioti (KM 9632)
               Thomas J. Matz (TM 5986)
            Four Times Square
            New York, New York 10036
            (212) 735-3000

            Attorneys for Delphi Corporation, et al.,
              Debtors and Debtors-in-Possession