SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
    In re                               :   Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :   Case No. 05-44481 (RDD)
                                        :
                    Debtors.            :   (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR INTERIM AND FINAL ORDERS UNDER 11 U.S.C.§ 105(a) DIRECTING
THAT CERTAIN ORDERS IN CHAPTER 11 CASES OF DELPHI CORPORATION, ET AL.
BE MADE APPLICABLE TO DELPHI FURUKAWA WIRING SYSTEMS LLC,
DELPHI RECEIVABLES LLC, AND MOBILEARIA, INC.

("ADDITIONAL DEBTORS MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors" and, together with Delphi, the "Initial Debtors"), Delphi Furukawa Wiring Systems LLC ("Furukawa"), Delphi Receivables LLC ("Receivables"), and MobileAria, Inc. (together with Furukawa and Receivables, the "Additional Debtors") (the Initial Debtors and the Additional Debtors, collectively, the "Debtors"), debtors and debtors-in-possession in the above-captioned cases, hereby submit this motion (the "Motion") for interim and final orders directing that certain orders in the jointly-administered chapter 11 cases of In re Delphi Corporation, et al., Case No. 05-44481 (RDD), be made applicable to the Additional Debtors.  In support of this Motion, the Debtors respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8, 2005 (the "Petition Date"), each of the Initial Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  On that same date this Court entered an order directing the joint administration of the Initial Debtors' chapter 11 cases (Docket No. 28).  On October 14, 2005, each of the Additional Debtors filed a voluntary petition in this Court for relief under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    No trustee, examiner, or creditors' committee has been appointed in the Debtors' cases.

2

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicate for the relief requested herein is section 105(a) of the Bankruptcy Code.

B.      Current Business Operations Of The Debtors

5.      With more than 180,000 employees worldwide, global 2004 revenues of approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1 billion,[1] Delphi ranks as the fifth largest public company business reorganization in terms of revenues and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations without supervision from the Bankruptcy Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

6.      Over the past century, the operations which are now owned by Delphi have become a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines.  Today, the Company is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company's technologies and products are present in more than 75 million vehicles on the road worldwide.  The Company supplies products to nearly every major global automotive original equipment manufacturer with 2004 sales to its former parent, General Motors Corporation, equaling approximately $15.4 billion

---

[1]     The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

7. As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world. In the U.S., the Debtors employ approximately 50,600 people. Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan. Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions. Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8. Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

4

9.   Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle. When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base. The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.   Events Leading To Chapter 11 Filing

10.   In the first two years following Delphi's separation from GM, the Company generated more than $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales. Reflective of a downturn in the marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005. The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[2]

---

[2]   Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

11. The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12. In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio and operational issues, and forward looking revenue requirements. Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13. Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses. This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan. The Debtors believe that a substantial

segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down through the chapter 11 process.

14. Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

## Relief Requested

15. On October 14, 2005, the Additional Debtors filed a motion for an order under Rule 1015(a) of the Federal Rules of Bankruptcy Procedure directing the joint administration of their chapter 11 cases with those of the Initial Debtors (the "Second Joint Administration Motion"). Also on October 14, 2005, the Additional Debtors filed this Motion for interim and final orders under section 105(a) of the Bankruptcy Code directing that certain orders entered in the chapter 11 cases of the Initial Debtors be made applicable to the Additional Debtors.

16. By this Motion, the Debtors seek interim and final orders under section 105(a) of the Bankruptcy Code directing that all generally applicable orders previously approved or entered by this Court, as set forth on Exhibit 1 to the proposed order, and any generally proposed orders pending before this Court, in the Initial Debtors' chapter 11 cases (collectively, the "Initial Debtors' Orders") be made applicable to the Additional Debtors. Specifically, the Debtors seek to have (a) previously approved or entered orders apply to the Additional Debtors effective as of the entry of the order requested by this Motion or the entry of

the previously approved order, as applicable and (b) proposed orders currently pending, effective as of the dates of entry of such orders.

17.  In other words, assuming joint administration of the Additional Debtors' cases with the Initial Debtors' cases, the Additional Debtors seek application of the Initial Debtors' Orders as if the Additional Debtors were among the Initial Debtors identified therein; <u>provided</u>, <u>however</u>, that such orders be effective as of the dates set forth above.

Basis For Relief

18.  Section 105(a) of the Bankruptcy Code provides, in relevant part: "The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). Pursuant to this provision, this Court has expansive equitable powers to fashion any order or decree that is in the interest of preserving or protecting the value of a debtor's assets.  <u>See, e.g.</u>, <u>In re Chinichian</u>, 784 F.2d 1440, 1443 (9th Cir. 1986) ("Section 105 sets out the power of the bankruptcy court to fashion orders as necessary pursuant to the purposes of the Bankruptcy Code."); <u>Bird v. Crown Convenience</u> (In re NWFX, Inc.), 864 F.2d 588, 590 (8th Cir. 1988) ("The overriding consideration in bankruptcy . . . is that equitable principles govern."); <u>In re Cooper Properties Liquidating Trust, Inc.</u>, 61 B.R. 531, 537 (Bankr. W.D. Tenn. 1986) ("the Bankruptcy Court is one of equity and as such it has a duty to protect whatever equities a debtor may have in property for the benefit of its creditors as long as that protection is implemented in a manner consistent with the bankruptcy laws.").

19.  Entry of an order directing that the Initial Debtors' Orders be made applicable to the Additional Debtors will obviate the need for duplicative notices, motions, applications, and orders to be filed in these chapter 11 cases. The Debtors seek to save considerable time and expense for their estates and to reduce the burden on this Court and all

8

parties-in-interest by proceeding in this manner. The Additional Debtors require the protections and authorizations that are set forth in the Initial Debtors' Orders to facilitate a smooth entry into chapter 11 and to maintain their ability to reorganize successfully.  If this Motion is not granted, the Additional Debtors would seek substantially the same substantive relief  as that granted in the Initial Debtors' Orders.  Those orders address many of the matters that most large debtors must deal with, such as, among other things, retention and compensation of professionals, bank accounts, investment guidelines, cash management, and case management procedures.

20.    Had the Additional Debtors filed at the same time as the Initial Debtors, each would have been a movant with respect to all of the motions and applications seeking entry of the Initial Debtors' Orders.  By proceeding in the manner of this Motion, the Additional Debtors seek to streamline the motion practice for requesting such relief, while at the same time providing the same requisite facts and justification for such relief as if the Additional Debtors had filed such motions and applications.

21.    The Debtors believe that the relief requested herein is appropriate to carry out the provisions of the Bankruptcy Code. Similar procedures have been authorized in other complex chapter 11 cases.  See, e.g., In re Worldcom, Inc., Case No. 02-13533 (Bankr. S.D.N.Y. 2002); In re Adelphia Business Solutions, Inc., Case No. 02-11389  (Bankr. S.D.N.Y. 2002); In re Enron Corp., Case No. 01-16034 (Bankr. S.D.N.Y. 2002).

<u>Notice</u>

22.    Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to (a) the Office of the United States Trustee, (b) the Debtors' 50 largest unsecured creditors, (c) counsel for the agent under the Debtors'

prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n: Marissa Wesley) and (d) counsel for the agent under the Debtors' proposed postpetition credit facility, Davis Polk & Wardell, 450 Lexington Avenue, New York, New York, 10017 (Att'n: Marlane Melican). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

23. Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter interim and final orders (a) directing that Initial Debtors' Orders be made applicable to the Additional Debtors on the terms set forth herein and (b) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
       October 14, 2005

                          SKADDEN, ARPS, SLATE, MEAGHER
                            & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

   - and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession