**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                              :

     In re                                   :       Chapter 11
                                              :

  DELPHI CORPORATION et al.,      :       Case No. 05-44481 (RDD)
                                            :

                     Debtors.  :      (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

**AFFIDAVIT OF PUBLICATION OF CATHY ZIKE**
**IN THE NEW YORK TIMES**

**NYT**

**The New York Times**

229 WEST 43RD STREET • NEW YORK, NY 10036-3959

SEC. C  PG. /0

) Chapter 11
) Case No. 05-44481 (RDD)
) (Jointly Administered)

PPLICABLE TO SUBSTANTIAL HOLDERS OF CLAIMS AND EQUITY SECU-
G PROCEDURES FOR TRADING IN CLAIMS AND EQUITY SECURITIES
AGAINST OR EQUITY INTERESTS IN THE DEBTORS?

Petition Date"), Delphi Corporation ("Delphi") and certain of its subsidiaries and
Delphi, the "Debtors"), commenced cases under chapter 11 of title 11 of the
nded (the "Bankruptcy Code"). Subject to certain exceptions, section 362 of the
in possession of property of the Debtors' estates or of property from the Debtors'
tors' estates.
, 2005, the Debtors filed a motion seeking entry of an order pursuant to sections
hing notification procedures and approving restrictions on certain transfers of
d their estates (the "Motion").
12, 2005, the United States Bankruptcy Court for the Southern District of New
edures set forth below in order to preserve the Debtors' net operating losses and
t to sections 105, 362, and 541 of the Bankruptcy Code (the "Order"). Except
r transfer of claims against or equity securities is the Debtors in violation of
l ab initio as an act in violation of the automatic stay under section 362 of the

the Order, the following procedures shall apply to holding and trading in EQUITY

nes a Substantial Equityholder (as defined in paragraph (e) below) must file with
the Debtors, a notice of such status ("Notice of Status as a Substantial Equity-
effective date of the notice of entry of the Order or (B) ten days after becoming a

rities (including options to acquire stock, as defined in paragraph (e) below) that
stock of Delphi beneficially owned by a Substantial Equityholder or would result
)der, such Substantial Equityholder must file with the Court, and serve on the
notice ("Notice of Intent to Purchase, Acquire or Otherwise Accumulate"), of the

urities (including options to acquire stock) that would result in a decrease in the
by a Substantial Equityholder or would result in a person or entity ceasing to be a
r must file with the Court, and serve on the Debtors and counsel to the Debtors,
or Otherwise Transfer")", of the intended transfer of equity securities.
receipt of a Notice of Proposed Transfer to file with the Court and serve on such
transfer of equity securities described in the Notice of Proposed Transfer on the
btors' ability to utilize their Tax Attributes. If the Debtors file an objection, such
final and nonappealable order of the Court. If the Debtors file an objection, such
l and nonappealable order of the Court. If the Debtors do not object within such
orth in the Notice of Proposed Transfer. Further transactions within the scope of
s as set forth herein with an additional 30-day waiting period.
Equityholder" is any person or entity that beneficially owns at least 14,000,000
ownership" of equity securities includes direct and indirect ownership (e.g., a
m all shares owned or acquired by its subsidiaries), ownership by such holder's
h holder to make a coordinated acquisition of stock, and ownership of shares
"option" to acquire stock includes any contingent purchase, warrant, convert-
t to acquire stock, or similar interest, regardless of whether it is contingent or

e Order, except as otherwise provided therein, the following procedures shall
THE DEBTORS:
as a Substantial Claimholder (as defined in paragraph (e) below) must file with
tors, a notice of such status ("Notice of Status as a Substantial Claimholder")
te of the notice of entry of the Order or (B) ten days after becoming a Substan-

would result in an increase in the amount of aggregate principal claims benefi-
t in a person or entity's becoming a Substantial Claimholder, such Substantial
ebtors and counsel to the Debtors, advance written notice ("Notice of Intent to
nded transfer of claims, regardless of whether such transfer would be subject
ptcy Rule 3001.
would result in a decrease in the amount of aggregate principal claims benefi-
in a person or entity's ceasing to be a Substantial Claimholder, such Substan-
Debtors and counsel to the Debtors, advance written notice ("Notice of Intent
ansfer of claims, regardless of whether such transfer would be subject to the
le 3001.
receipt of a Notice of Proposed Transfer to file with the Court and serve on such
nsfer of claims described in a Notice of Proposed Transfer on the grounds that
utilize their Tax Attributes. If the Debtors file an objection, such transaction will
liable order of the Court. If the Debtors file an objection, such transfer will not
le order of the Court. If the Debtors do not object within such 30-day period,
r of Proposed Transfer. Further transactions within the scope of this paragraph
in with an additional 30-day waiting period.
Claimholder" is any person or entity which beneficially owns an aggregate
or exceeding $100,000,000 or any controlled entity through which a Sub-
t in claims against the Debtors, (B) "beneficial ownership" of claims includes
vould be considered to beneficially own all claims owned or acquired by its
p of persons acting pursuant to a formal or informal understanding to make
ms which such holder has an option to acquire, and (C) an "option" to acquire
acquire a claim(s), or similar interest, regardless of whether it is contingent or

of any person, counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom
60606-1285, Att'n John K. Lyons and Randall G. Reese, will provide a form of

st of any person, Kurtzman Carson Consultants LLC (the "Official Copy Ser-
ornia, telephone: (310) 823-9000, fax (310) 823-9133, shall supply a copy
of the Order at a cost to be paid by the person requesting it at the prevailing
l Copy Service shall accommodate document requests during normal busi-
ys)."
N THIS NOTICE SHALL CONSTITUTE A VIOLATION OF THE AUTOMATIC STAY
IDE.
HER TRANSFER OF CLAIMS AGAINST, OR EQUITY SECURITIES IN, THE
. AND VOID AB INITIO AND MAY BE PUNISHED BY CONTEMPT OR OTHER

VIDE FOR THE DISALLOWANCE OF CLAIMS AGAINST OR INTERESTS IN
LE THE HOLDERS THEREOF TO A DISTRIBUTION OF 5% OR MORE OF THE

set forth in this Notice are in addition to the requirements of Rule 3001(e)
able securities, corporate, and other laws, and do not excuse compliance

Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606-1285
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

with the definition of "claim" in section 101(5) of the Bankruptcy Code and
nder or arising out of any lease with respect to which the Debtor is one or

tion, ASEC Manufacturing General Partnership, ASEC Sales General Part-
on, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems
n Resources LLC, Delphi Automotive Systems International, Inc., Delphi
is LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automo-
ystems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi
hi Connection Systems, Inc., Delphi Diesel Systems Corp., Delphi Electronics
grated Service Solutions, Inc., Delphi International Holdings Corp., Delphi

## CERTIFICATION OF PUBLICATION

October 13         20 05

I, _____Cathy Zike_____ , in my capacity as a Principal Clerk
of the Publisher of **The New York Times** a daily newspaper of general
circulation printed and published in the City, County and State of New
York, hereby certify that the advertisement annexed hereto was published
in the editions of **The New York Times** on the following date or dates,
to wit on

_____October 13, _____ 20 05

Cathy Zike

Approved:

THIS CERTIFICATION
NOT VALID
WITHOUT NYT RAISED SEAL

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
In re                                    ) Chapter 11
**DELPHI CORPORATION, et al.,**          ) Case No. 05-44481 (RDD)
                        Debtors.         ) (Jointly Administered)

**NOTICE OF (A) NOTIFICATION PROCEDURES APPLICABLE TO SUBSTANTIAL HOLDERS OF CLAIMS AND EQUITY SECURITIES AND (B) NOTIFICATION AND HEARING PROCEDURES FOR TRADING IN CLAIMS AND EQUITY SECURITIES**

**TO ALL PERSONS OR ENTITIES WITH CLAIMS[1] AGAINST OR EQUITY INTERESTS IN THE DEBTORS[2]:**

PLEASE TAKE NOTICE that on October 8, 2005 ("Petition Date"), Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors," and together with Delphi, the "Debtors"), commenced cases under chapter 11 of title 11 of the United States Code 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). Subject to certain exceptions, section 362 of the Bankruptcy Code operates as a stay of any act to obtain possession of property of the Debtors' estates or of property from the Debtors' estates or to exercise control over property of the Debtors' estates.

PLEASE TAKE FURTHER NOTICE that on October 8, 2005, the Debtors filed a motion seeking entry of an order pursuant to sections 105, 362, and 541 of the Bankruptcy Code establishing notification procedures and approving restrictions on certain transfers of claims against and equity securities in the Debtors and their estates (the "Motion").

PLEASE TAKE FURTHER NOTICE THAT on October 12, 2005, the United States Bankruptcy Court for the Southern District of New York (the "Court") entered an order approving the procedures set forth below in order to preserve the Debtors' net operating losses and certain other tax attributes ("Tax Attributes") pursuant to sections 105, 362, and 541 of the Bankruptcy Code (the "Order"). Except as otherwise provided in the Order, any sale or other transfer of claims against or equity securities in the Debtors in violation of the procedures set forth below shall be null and void ab initio as an act in violation of the automatic stay under section 362 of the Bankruptcy Code.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Order, the following procedures shall apply to holding and trading in EQUITY SECURITIES OF DELPHI:

(a) Any person[3] or entity who currently is or becomes a Substantial Equityholder (as defined in paragraph (e) below) must file with the Court, and serve upon the Debtors and counsel to the Debtors, a notice of such status ("Notice of Status as a Substantial Equityholder") on or before the later of (A) 40 days after the effective date of the notice of entry of the Order or (B) ten days after becoming a Substantial Equityholder.

(b) Prior to effectuating any transfer of equity securities (including options to acquire stock, as defined in paragraph (e) below) that would result in an increase in the amount of common stock of Delphi beneficially owned by a Substantial Equityholder or would result in a person or entity becoming a Substantial Equityholder, such Substantial Equityholder must file with the Court, and serve on the Debtors and counsel to the Debtors, advance written notice ("Notice of Intent to Purchase, Acquire or Otherwise Accumulate"), of the intended transfer of equity securities.

(c) Prior to effectuating any transfer of equity securities (including options to acquire stock) that would result in a decrease in the amount of common stock of Delphi beneficially owned by a Substantial Equityholder or would result in a person or entity ceasing to be a Substantial Equityholder, such Substantial Equityholder must file with the Court, and serve on the Debtors and counsel to the Debtors, advance written notice ("Notice of Intent to Sell, Trade, or Otherwise Transfer")[4], of the intended transfer of equity securities.

(d) The Debtors shall have 30 calendar days after receipt of a Notice of Proposed Transfer to file with the Court and serve on such Substantial Equityholder an objection to any proposed transfer of equity securities described in the Notice of Proposed Transfer on the grounds that such transfer may adversely affect the Debtors' ability to utilize their Tax Attributes. If the Debtors file an objection, such transaction shall not be effective unless approved by a final and nonappealable order of the Court. If the Debtors file an objection, such transfer shall not be effective unless approved by a final and nonappealable order of the Court. If the Debtors do not object within such 30-day period, such transfer may proceed solely as set forth in the Notice of Proposed Transfer. Further transactions within the scope of this paragraph must be the subject of additional notices as set forth herein with an additional 30-day waiting period.

(e) For purposes of this Notice, (A) a "Substantial Equityholder" is any person or entity that beneficially owns at least 14,000,000 shares of the common stock of Delphi, (B) "beneficial ownership" of equity securities includes direct and indirect ownership (e.g., a holding company would be considered to beneficially own all shares owned or acquired by its subsidiaries), ownership by such holder's family members and persons acting in concert with such holder to make a coordinated acquisition of stock, and ownership of shares which such holder has an option to acquire, and (C) an "option" to acquire stock includes any contingent purchase, warrant, convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock, or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

PLEASE TAKE FURTHER NOTICE that, pursuant to the Order, except as otherwise provided therein, the following procedures shall apply to holding and trading in CLAIMS AGAINST ANY OF THE DEBTORS:

(a) Any person[3] or entity who currently is or becomes a Substantial Claimholder (as defined in paragraph (e) below) must file with the Court, and serve the Debtors and counsel to the Debtors, a notice of such status ("Notice of Status as a Substantial Claimholder") on or before the later of (A) 40 days after the effective date of the notice of entry of the Order or (B) ten days after becoming a Substantial Claimholder.

(b) Prior to effectuating any transfer of claims that would result in an increase in the amount of aggregate principal claims beneficially owned by a Substantial Claimholder or would result in a person or entity's becoming a Substantial Claimholder, such Substantial Claimholder must file with the Court, and serve on the Debtors and counsel to the Debtors, advance written notice ("Notice of Intent to Purchase, Acquire, or Otherwise Accumulate"), of the intended transfer of claims, regardless of whether such transfer would be subject to the filing, notice, and hearing requirements of Bankruptcy Rule 3001.

(c) Prior to effectuating any transfer of claims that would result in a decrease in the amount of aggregate principal claims beneficially owned by a Substantial Claimholder or would result in a person or entity's ceasing to be a Substantial Claimholder, such Substantial Claimholder must file with the Court, and serve on the Debtors and counsel to the Debtors, advance written notice ("Notice of Intent to Sell, Trade, or Otherwise Transfer")[5], of the intended transfer of claims, regardless of whether such transfer would be subject to the filing, notice, and hearing requirements of Bankruptcy Rule 3001.

(d) The Debtors shall have 30 calendar days after receipt of a Notice of Proposed Transfer to file with the Court and serve on such Substantial Claimholder an objection to any proposed transfer of claims described in a Notice of Proposed Transfer on the grounds that such transfer may adversely affect the Debtors' ability to utilize their Tax Attributes. If the Debtors file an objection, such transaction will not be effective unless approved by a final and nonappealable order of the Court. If the Debtors file an objection, such transfer will not be effective unless approved by a final and nonappealable order of the Court. If the Debtors do not object within such 30-day period, such transfer may proceed solely as set forth in the Notice of Proposed Transfer. Further transactions within the scope of this paragraph must be the subject of additional notices as set forth herein with an additional 30-day waiting period.

(e) For purposes of this Notice: (A) a "Substantial Claimholder" is any person or entity which beneficially owns an aggregate principal amount of claims against the debtors equal to or exceeding $100,000,000 or any controlled entity through which a Substantial Claimholder beneficially owns an indirect interest in claims against the Debtors, (B) "beneficial ownership" of claims includes direct and indirect ownership (e.g., a holding company would be considered to beneficially own all claims owned or acquired by its subsidiaries), ownership by family members and any group of persons acting pursuant to a formal or informal understanding to make a coordinated acquisition of claims, and ownership of claims which such holder has an option to acquire, and (C) an "option" to acquire claims includes any contingent purchase, put, contract to acquire a claim(s), or similar interest, regardless of whether it is contingent or otherwise not currently exercisable.

PLEASE TAKE FURTHER NOTICE that, upon the request of any person, counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606-1285. Att'n John K. Lyons and Randall G. Reese, will provide a form of each of the required notices described above.

PLEASE TAKE FURTHER NOTICE that, upon the request of any person, Kurtzman Carson Consultants LLC (the "Official Copy Service"), 12910 Culver Boulevard, Suite I, Los Angeles, California, telephone: (310) 823-9000, fax: (310) 823-9133, shall supply a copy of the Order. The Official Copy Service shall supply a copy of the Order at a cost to be paid by the person requesting it at the prevailing fee being charged by the Official Copy Service. The Official Copy Service shall accommodate document requests during normal business hours, Monday to Friday (excluding recognized holidays).[6]

FAILURE TO FOLLOW THE PROCEDURES SET FORTH IN THIS NOTICE SHALL CONSTITUTE A VIOLATION OF THE AUTOMATIC STAY PRESCRIBED BY SECTION 362 OF THE BANKRUPTCY CODE.

ANY PROHIBITED PURCHASE, SALE, TRADE, OR OTHER TRANSFER OF CLAIMS AGAINST, OR EQUITY SECURITIES IN, THE DEBTORS IN VIOLATION OF THE ORDER SHALL BE NULL AND VOID AB INITIO AND MAY BE PUNISHED BY CONTEMPT OR OTHER SANCTIONS IMPOSED BY THE BANKRUPTCY COURT.

THE DEBTORS PLAN OF REORGANIZATION MAY PROVIDE FOR THE DISALLOWANCE OF CLAIMS AGAINST OR INTERESTS IN THE DEBTORS TO THE EXTENT THAT THEY WOULD ENTITLE THE HOLDERS THEREOF TO A DISTRIBUTION OF 5% OR MORE OF THE VALUE OF THE REORGANIZED DEBTORS.

PLEASE TAKE FURTHER NOTICE that the requirements set forth in this Notice are in addition to the requirements of Rule 3001(e) of the Federal Rules of Bankruptcy Procedure and applicable securities, corporate, and other laws, and do not excuse compliance therewith.

Dated: October 12, 2005

| | |
|---|---|
| Delphi Corporation | Skadden, Arps, Slate, Meagher & Flom LLP |
| 5725 Delphi Drive | 333 West Wacker Drive, Suite 2100 |
| Troy, Michigan 48098-2815 | Chicago, Illinois 60606-1285 |
| Attn: General Counsel and Chief Tax Officer | John Wm. Butler, Jr. |
| | John K. Lyons |
| | Ron E. Meisler |

[1] References to "claims" herein are made in accordance with the definition of "claim" in section 101(5) of the Bankruptcy Code and includes a lessor's right to any current or future payment under or arising out of any lease with respect to which the Debtor or one or more of the Affiliate is a lessee.
[2] The Debtors are the following entities: Delphi Corporation, ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.
[3] References to "person" herein are made in accordance with the definition of "person" in section 101(41) of the Bankruptcy Code.
[4] A Notice of Intent to Sell, Trade, or Otherwise Transfer, together with a Notice of Intent to Purchase, Acquire, or Accumulate, is hereinafter collectively referred to as a "Notice of Proposed Transfer."
[5] References to "person" herein are made in accordance with the definition of "person" in section 101(41) of the Bankruptcy Code.
[6] A Notice of Intent to Sell, Trade, or Otherwise Transfer, together with a Notice of Intent to Purchase, Acquire, or Accumulate, is hereinafter collectively referred to as a "Notice of Proposed Transfer."
[7] Normal business hours for the Official Copy Service are from 7:00 a.m. to 6:00 p.m. (prevailing Pacific Time).

---

ing indebtedness by RGHI to Refco," the complaint says.

William Terrence Pigott, manager of Liberty Corner Capital Strategies, the entity believed to be involved in Mr. Bennett's transactions, runs a series of investment funds. Mr. Pigott set the funds up in 1999 after leaving Daiwa America, where he managed a portfolio of bond investments, according to a person with access to marketing documents for various Liberty Corner entities.

Mr. Pigott oversees two small hedge funds with $12 million under management as of April, this person said. Refco Securities is the prime broker for the funds. "Mr. Pigott vehemently denies any knowledge of concealed loans," said Kevin Marino, a lawyer who represents both Mr. Pigott and his firm. "He is anxious to fully cooperate with the authorities."

Mr. Bennett's personal ties to the hedge fund remain unclear.

Shares of Refco have now fallen 62 percent since the company's first disclosure on Monday.

In hindsight, investors might have been wary after an unusual disclosure in Refco's regulatory filings for its public offering.

In that filing, the company said its independent auditors found two significant deficiencies in the company's internal controls over financial reporting. The firm lacked an adequate finance staff to manage the documentation associated with being a public company and the firm lacked procedures for "closing its books" or preparing for the I.P.O. Refco had to use an outside firm to help it, which is rare.

Nonetheless, some of the largest investment banks felt confident enough about Refco in August that they sold shares worth $583 million to investors. As underwriters, they had an obligation to conduct an investigation into Refco to make sure that the company's representations to potential investors were accurate.

The complaint's contention that Mr. Bennett hid the $545 million loan provides some cover to the banks, which include **Credit Suisse First Boston, Goldman Sachs, and Banc of America Securities.** But the banks will still have to demonstrate that they did adequate due diligence before the offering to eliminate any liability arising from shareholder lawsuits, lawyers said.

"The underwriters would have the burden of showing they did reasonable due diligence," said Lewis D. Lowenfels, an expert in securities law at Tolins & Lowenfels in New York. "And reasonable due diligence entails, among other things, investigating Refco's current and past relationships with banks, creditors and competitors, communicating with key company officials, examining the company's regulatory problems and how they solved them, and examining any material litigation involving the company, its contracts and minutes of board meetings."