## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

                :

In re                :    Chapter 11

                :

DELPHI CORPORATION et al.,    :    Case No. 05-44481 (rdd)

                :

           Debtors.    :    (Jointly Administered)

                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>AFFIDAVIT OF SERVICE</u>

I, Amber M. Cerveny, being duly sworn according to law, deposes and says that I am employed by Kurtzman Carson Consultants, LLC, proposed claims and noticing agent for the Debtors in the above-captioned cases.

On October 13, 2005, under my direction and under my supervision, employees of KCC caused to be served, via first class US mail the documents listed in Section 1 on the parties attached hereto as <u>Exhibit A</u>:

### *<u>Section 1</u>*

I.   Motion for Order Under 11 U.S.C. §§ 361 and 363 (b) and Fed.R.Bankr.P. 4001(c) Authorizing Debtors to Continue Honoring Prepetition Insurance Premium Finance Agreement and Continue Grant of Security Interest to Insurance Premium Finance Company **(Docket No. 210) [Attached hereto as Exhibit B]**

II.  Motion for Order Under 11 U.S.C. §§ 327, 330, and 331 Authorizing Retention of Professionals Utilized by Debtors in Ordinary Course of Business **(Docket No. 211) [Attached hereto as Exhibit C]**

III. Motion for Order Under §§ 105 and 363 Authorizing the Debtors to Implement a Key Employee Compensation Program **(Docket No. 213) [Attached hereto as Exhibit D]**

IV. Motion for Administrative Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals **(Docket No. 212) [Attached hereto as Exhibit E]**

On October 13, 2005, under my direction and under my supervision, employees of KCC caused to be served, via first class US mail the document listed in Section 2 on the parties attached hereto as <u>Exhibit F</u>

### *<u>Section 2</u>*

1

**I.** Motion for Order Under 11 U.S.C. §§ 327, 330, and 331 Authorizing Retention of Professionals Utilized by Debtors in Ordinary Course of Business **(Docket No. 211) [Attached hereto as Exhibit C]**

On October 13, 2005, under my direction and under my supervision, employees of KCC caused to be served, via first class US mail the document listed in Section 3 on the parties attached hereto as Exhibit G

*Section 3*

**I.** Motion for Order Under 11 U.S.C. §§ 361 and 363 (b) and Fed.R.Bankr.P. 4001(c) Authorizing Debtors to Continue Honoring Prepetition Insurance Premium Finance Agreement and Continue Grant of Security Interest to Insurance Premium Finance Company **(Docket No. 210) [Attached hereto as Exhibit B]**

Dated: October 17, 2005

*/s/ Amber M. Cerveny*
Amber M. Cerveny

Sworn to and subscribed before
me on October 17, 2005

*/s/ Evan J. Gershbein*
Notary Public

My Commission Expires:   1/19/07

# EXHIBIT A

| Contact | Company | Address 1 | Address 2 | City | State | Zip | Country | Fax |
|---|---|---|---|---|---|---|---|---|
| Akihiko Imaya Group | Sharp Electronics Corp | Deputy General Manager | 26131 Chinomoto Cho Tenri | Nara | | 632-8567 | Japan | 81-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 |
| Albert Togut | Togut Segal & Segal LLP | One Penn Plaza | Suite 3335 | New York | NY | 10119 | US | 212-967-4258 |
| Alps Automotive Inc | Muneki Mitch Ishida | 1500 Atlantic Blvd | | Auburn Hills | MI | 48326 | US | 248-391-1564 |
| Ann Wagoner | Applied Bio Systems | 850 Lincoln Centre Dr | | Foster City | CA | 94404 | US | 650-638-5998 |
| Attn Insolvency Department | Internal Revenue Service | 290 Broadway | 5th Floor | New York | NY | 10007 | US | |
| Attorney General Eliot Spitzer | Office of New York State | 120 Broadway | | New York City | NY | 10271 | US | |
| Barry Perry | Engelhard Corporation | 101 Wood Ave | | Iselin | NJ | 08830 | US | 732-906-0337 |
| Bill Staron | Dmc 2 Canada Corporation | 2347 Commercial Dr | | Auburn Hills | MI | 48326 | US | 248-340-2471 |
| Bjoern Goeke | Victory Packaging | 3555 Timmons Lane | Suite 1440 | Houston | TX | 77027 | US | 713-961-3824 |
| Brad Countryman  Salesman | Isi Of Indiana Inc | 1212 East Michigan St | | Indianapolis | IN | 46202 | US | 317-631-7981 |
| Brent Mewhinney | Texas Instruments Inc | 12900 North Meridian St | Suite 175 Ms 4070 | Carmel | IN | 46032 | US | 317-573-6410 |
| Brian Mcgowan Sales Manager | Corus Lp | 496 Highway 35 Rr2 | | Pontypool | ON | LOA 1KO | Canada | 705-277-9742 |
| Brian Ruel | Timken Company | 31100 Telegraph Rd Ste 270 | | Bingham Farms | MI | 48025 | US | 248-433-2253 |
| Bruce A Fassett | Carlisle Engineered Prods | 100 Seventh Ave Ste 100 | | Chardon | OH | 44024 | US | 734-367-1431 |
| Burr & Forman LLP | Michael Leo Hal | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | US | |
| Chet Korzeniewski | Fujitsu Ten Corporation | 46029 Five Mile Rd | | Plymouth | MI | 48170 | US | 734-414-6660 |
| Clifford Trapani | JPMorgan Chase Bank NA | Loan and Agency Services Group | 1111 Fannin 10th Floor | Houston | TX | 77002 | US | 713-750-2948 |
| Darrell Seitz Senior Acct Mgr | Hitachi Automotive | 955 Warwick Rd | | Harrodsburg | KY | 40330 | US | 248-474-5097 |
| David Bader | Hss Llc | 5446 Dixie Highway | | Saginaw | MI | 48601 | US | 989-777-4818 |
| David L Resnick | Rothchild Inc | 1251 Avenue of the Americas | | New York | NY | 10020 | US | 212-403-5454 |
| David M Mcginnis | Murata Electronics North | 2200 Lake Park Dr | | Smyrna | GA | 30080 | US | 678-842-6625 |
| Deirdre A Martini | United States Trustee | 33 Whitehall Street | Suite 2100 | New York | NY | 10004 | US | 212-668-2256 |
| Devin Denner Sales Manager | Olin Corp | 427 N Shamrock St | | East Alton | IL | 62024 | US | 618-258-3481 |
| Don Duda President | Methode Electronics Inc | 7401 W Wilson | | Chicago | IL | 60706 | US | 708-867-3288 |
| Donald Bernstein | Davis Polk & Wardwell | 450 Lexington Avenue | | New York | NY | 10017 | US | 212-450-3092 |
| Douglas Bartner Jill Frizzley | Shearman & Sterling LLP | 599 Lexington Avenue | | New York | NY | 10022 | US | 212-848-7179 |
| Dr Jurgen W Gromer | Tyco Electronics Corp | PO Box 3608 | | Harrisburg | PA | 17105 | US | 717-592-7555 |
| Dr Jurgen W Gromer | Tyco Electronics Corp | PO Box 3608 | | Harrisburg | PA | 17105-3608 | US | 717-592-7555 |
| Dr Jurgen W Gromer | Tyco Electronics Corp | Amperestrabe 1214 | | Bensheim | | D-64625 | Germany | 49-0-62-51-133-1-548 |
| Ed Mike Sales Manager | Solectron De Mexico Sa De Cv | Solectron Invotronics | 26525 American Dr | Southfield | MI | 48034 | US | 248-263-8701 |
| Frank H Avant  President | Tdk Corporation Of America | 1221 Business Center Dr | | Mount Prospect | IL | 60056 | US | 847-803-1125 |
| Gary Thoe Chairman | Waupaca Foundry Inc | 311 S Tower Rd | | Waupaca | WI | 54981 | US | 715-258-1712 |
| Gordon Diag | Pbr Automotive Usa Pacific Group | 140 Ellen Dr | | Orion Township | MI | 48359 | US | 248-377-4939 |
| Harold M Stratton | Strattec Security Corp | 3333 West Good Hope Rd | | Milwaukee | WI | 53209 | US | 414-247-3329 |
| Hironobu Ono | Cataler North America Corp | 7800 Chihama | | Kakegawa-City Shizuoka | | | Japan | 81-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 |
| Hitachi Automotive | | 34500 Grand River Ave | | Farmington Hills | MI | 48335 | US | 248-474-5097 |
| Hitachi Chemical Asia Pacific | Hitachi Chemical Asia Pacific | Bedok Plant 20 | Bedock South Rd | Singapore | | 469277 | Singapore | 656-444-6002 |
| Infineon Technologies | | StMartinStrasse 53 | | Munich | | 81669 | Germany | 49-0-89-234-8-52-02 |
| James D Clark | IUE  Comm Workers of America | 501 3rd St NW 6th Floor | | Washington | DC | 20001 | US | 202-434-1343 |
| James Le | Kurtzman Carson Consultants | 12910 Culver Blvd | Suite I | Los Angeles | CA | 90066 | US | 310-751-1561 |
| Jeffrey Cohen | Pension Benefit Guaranty Corporation | 1200 K Street NW | Suite 340 | Washington | DC | 20005 | US | 202-326-4112 |
| Jeffrey Cohen | Pension Benefit Guaranty Corp | 1200 K St NW | | Washington | DC | 20005 | US | 202-326-4112 |
| Jim Offer | Pechiney Rolled Products | 39111 W Six Mile Rd | | Livonia | MI | 48152 | US | 734-632-8483 |
| Jim Trent | Nec Electronics Inc | Three Galleria Tower | 13155 Noel Rd Ste 1100 | Dallas | TX | 75240 | US | 972-655-5133 |
| Joe M Dorris President | Futaba Corp Of America | 2865 Wall Triana Hwy | | Huntsville | AL | 35824 | US | 256-461-7741 |
| Joe Minville | Flextronics Intl Asia Pacific | 2 Robbins Rd | | Westford | MA | 01886 | US | 978-392-3011 |
| Joel Robinson President Bob Finn | American Axle & Mfg Inc | One Dauch Dr | | Detroit | MI | 48211 | US | 313-974-2870 |
| John Devine | General Motors Corporation | 300 Renaissance Center | PO Box 300 | Detroit | MI | 48265 | US | 517-272-3709 |
| John Devine | General Motors Corporation | 300 Renaissance Center | PO Box 300 | Detroit | MI | 48265 | US | 517-272-3709 |
| John Nielsen Dir Sales | Trw Automotive | 12000 Tech Center Dr | | Livonia | MI | 48150 | US | 734-266-5704 |
| John Wm Butler J Lyons R Meisler | Skadden Arps Slate Meagher & Flom | 333 W Wacker Dr | Suite 2100 | Chicago | IL | 60606 | US | 312-407-0411 |
| Kayalyn A Marafioti Thomas J Matz | Skadden Arps Slate Meagher & Flom | 4 Times Square | | New York | NY | 10036 | US | 212-735-2000 |
| Kenji Ito Vp Larry Khaykin | Aw Transmission Eng Aisin Seiki Co | Metro West Industrial Park | 14933 Keel St | Plymouth | MI | 48170 | US | 734-416-3844 |
| Kenneth S Ziman Robert H Trust | Simpson Thatcher & Bartlett LLP | 425 Lexington Avenue | | New York | NY | 10017 | US | 212-455-2502 |
| Khuyen Ta | JPMorgan Chase Bank NA | Agent Bank Services Group | 1111 Fannin 10th Floor | Houston | TX | 77002 | US | 713-750-2938 |
| Lance Williams Director Of Sales | Semiconductor Components | 2000 S County Trail | | East Greenwich | RI | 02818 | US | 734-953-6860 |
| Leo W Gerard | United Steel Workers | 5 Gateway Center | | Pittsburgh | PA | 15222 | US | 412-562-2484 |
| Linda Lynch | Robert Bosch Corporation | 38000 Hills Tech Dr | | Farmington Hills | MI | 48331 | US | 248-848-6505 |
| Lonie A Hassel | Groom Law Group | 1701 Pennsylvania Avenue NW | | Washington | DC | 20006 | US | 202-659-4503 |
| Martin J Bienenstock | Weil Gotshal & Manges LLP | 767 Fifth Avenue | | New York | NY | 10153 | US | 212-310-8007 |
| Michael Rudnicki | Niles Usa Inc | 41129 Jo Dr | | Novi | MI | 48375 | US | 248-427-9701 |
| Patrick Healy | Law Debenture Trust Company of NY | 780 Third Ave 31st Fl | | New York | NY | 10017 | US | 212-750-1361 |
| Paul Grimme | Freescale Semiconductor Inc | 6501 William Cannon Dr West | | Austin | TX | 78735 | US | 512-895-8746 |
| Peter Bauer EVP | Infineon Technologies | PO Box 80 09 49 | | Munich | | 81609 | Germany | 49-0-89-234-8-52-02 |
| Peter Bauer, EVP | Infineon Technologies | PO Box 80 09 49 | | Munich | | 81669 | Germany | 49-0-89-234-8-52-02 |
| Peter H Huizinga | Siemens Automotive Ltd | 2400 Executive Hill Blvd | | Auburn Hills | MI | 48326 | US | 248-209-7877 |
| Pioneer Indl Comp | Auto Electr Sales Inc | Kevin M Martin SVP | 22630 Haggerty Rd | Farmington | MI | 48335 | US | 248-449-1940 |
| Ralph Seibt Sales Manager | Westwood Associates Inc | 612 Willers Farm Rd | | Milford | CT | 06460 | US | 203-283-3100 |
| Randall S Eisenberg | FTI Consulting Inc | 3 Times Square | 11th Floor | New York | NY | 10036 | US | 212-841-9350 |

In re Delphi Corporation et al
Case No. 05-44481

1 of 2

10/10/20058:44 AM

| Contact | Company | Address 1 | Address 2 | City | State | Zip | Country | Fax |
|---------|---------|-----------|-----------|------|-------|-----|---------|-----|
| Reorganization Branch | Securities and Exchange Commission | 233 Broadway | | New York | NY | 10279 | US | |
| Richard Shoemaker | United Auto Workers | 8000 E Jefferson | | Detroit | MI | 48214 | US | 313-823-6016 |
| Robert Caruso | FTI Consulting Inc | 333 West Wacker Drive | Suite 600 | Chicago | IL | 60606 | US | 312-759-8119 |
| Robert Siegel | O'Melveny & Meyer LLP | 400 South Hope Street | | Los Angeles | CA | 90071 | US | 213-430-6407 |
| Ron Schubel | Molex Inc | 222 Wellington Court | | Lisle | IL | 60532 | US | 630-813-5888 |
| Russ Pollack Director Of Sales | Traxle Mfg Ltd | 25300 Telegraph Rd Ste 450 | Raleigh Office Center | Southfield | MI | 48034 | US | 248-355-3558 |
| Sam L Trency | Philips Semiconductors | 1817 Dogwood Dr | | Kokomo | IN | 46902 | US | 765-452-9915 |
| Scott Dekoker | Autocam Corporation | East Paris Ave | | Kentwood | MI | 49512 | US | 616-698-6876 |
| Scott King | FTI Consulting Inc | Park One Center | 6100 Oaktree Blvd Suite 200 | Cleveland | OH | 44131 | US | 216-986-2749 |
| Scott Shilling Sales Director | Sgs Thompson | Victor Park West | 19575 Victor Parkway | Livonia | MI | 48152 | US | 734-462-4034 |
| Sean Corcoran Karen Craft | Delphi Corporation | 5725 Delphi Drive | | Troy | MI | 48098 | US | 248-813-2670 |
| Steven M Cimalore | Wilmington Trust Company | 1100 N Market St | Rodney Square N | Wilmington | DE | 19890 | US | 302-636-4143 |
| Ted B Opie | General Electric Company | Two Towne Square | | Southfield | MI | 48076 | US | 248-262-2663 |
| Thomas F Maher R Duker G Russello | JPMorgan Chase Bank NA | 270 Park Avenue | | New York | NY | 10017 | US | 212-270-0430 |
| Tim Kuppler Vice President | Ti Group Automotive System | 12345 E Nine Mile | | Warren | MI | 48090 | US | 586-427-3175 |
| Tom A Jerman Rachel Janger | O'Melveny & Meyer LLP | 1625 Eye Street NW | | Washington | DC | 20006 | US | 202-383-5414 |
| Tracy Delcampo | Calsonic N America Inc | 27000 Hills Tech Court | | Farmington Hills | MI | 48331 | US | 248-848-4850 |
| Vilma Francis | JPMorgan Chase Bank NA | 270 Park Avenue | | New York | NY | 10017 | US | 212-270-5484 |
| Vince Sarrecchia | Panasonic Automotive | 26455 American Dr | | Southfield | MI | 48034 | US | 248-447-7008 |
| Y Yokoya | Hitachi Chemical Asia Pacific | Loyang Plant 32 | Loyang Way | Singapore | | 508730 | Singapore | 656-546-2842 |

# EXHIBIT B

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  |  |  |
|---|---|---|
|  | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER 11 U.S.C. §§ 361 AND 363(b)
AND FED R. BANKR. P. 4001(c) AUTHORIZING DEBTORS TO
CONTINUE HONORING PREPETITION INSURANCE
PREMIUM FINANCE AGREEMENT AND CONTINUE GRANT OF
SECURITY INTEREST TO INSURANCE PREMIUM FINANCE COMPANY

("INSURANCE FINANCING MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. §§ 361 and 363(b) and Fed. R. Bankr. P. 4001(c) authorizing the Debtors to continue honoring their obligations pursuant to a prepetition insurance premium finance agreement for the purpose of financing the purchase of several forms of insurance coverage, and continue the grant of a security interest to the insurance premium finance company in all sums payable to Delphi under the financed insurance policies.  In support of this Motion, the Debtors submit the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005.  In further support of this Motion, the Debtors respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession

---

[1]    In addition to Delphi, the following entities are debtors in these related cases:  ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holding Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

2

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have moved this

Court for an order authorizing joint administration of these chapter 11 cases.

2.    No trustee, examiner, or creditors' committee has been appointed in the

Debtors' cases.

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are sections 361,

363(b), and 364(c) of the Bankruptcy Code and Rule 4001(c) of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").

B.    Current Business Operations Of The Debtors

5.    With more than 180,000 employees worldwide, global 2004 revenues of

approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1

billion,[2] Delphi ranks as the fifth largest public company business reorganization in terms of

revenues, and the thirteenth largest public company business reorganization in terms of assets.

Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations

without supervision from the Bankruptcy Court, and will not be subject to the chapter 11

requirements of the U.S. Bankruptcy Code.

6.    Over the past century, the operations which are now owned by Delphi have

become a leading global technology innovator with significant engineering resources and

technical competencies in a variety of disciplines.  Today, the Company is arguably the single

largest global supplier of vehicle electronics, transportation components, integrated systems and

---

[2]        The aggregated financial data used in this Motion generally consists of consolidated information from
Delphi and its worldwide subsidiaries and affiliates.

3

modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide. The Company supplies products to nearly every major global automotive original equipment manufacturer with 2004 sales to its former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

7.    As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world. In the U.S., the Debtors employ approximately 50,600 people. Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan. Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions. Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of

4

customers and applications.  Although GM is still the Company's single largest customer, today

more than half of Delphi's revenue is generated from non-GM sources.

        9.    Due to the significant planning that goes into each vehicle model, Delphi's

efforts to generate new business do not immediately affect its financial results, because supplier

selection in the auto industry is generally finalized several years prior to the start of production

of the vehicle.  When awarding new business, which is the foundation for the Company's

forward revenue base, customers are increasingly concerned with the financial stability of their

supply base.  The Debtors believe that they will maximize stakeholder value and the Company's

future prospects if they stabilize their businesses and continue to diversify their customer base.

The Debtors also believe that this must be accomplished in advance of the expiration of certain

benefit guarantees between GM and certain of Delphi's unions representing most of its U.S.

hourly employees which coincides with the expiration of the Company's U.S. collective

bargaining agreements in the fall of 2007.

C.      <u>Events Leading To Chapter 11 Filing</u>

        10.    In the first two years following Delphi's separation from GM, the Company

generated more than $2 billion in net income.  Every year thereafter, however, with the exception

of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net

operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the

marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005.

The Company experienced net operating losses of $608 million for the first six months of

calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion

less in sales than during the same time period in calendar year 2004.[3]

---

[3]      Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily
related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

11.    The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues and forward looking revenue requirements.  Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses.  This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan.  The Debtors believe that a substantial segment of

6

Delphi's U.S. business operations must be divested, consolidated, or wound-down through the chapter 11 process.

14.    Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.    By this Motion, the Debtors seek entry of an order under sections 361 and 363(b) of the Bankruptcy Code and Bankruptcy Rule 4001(c) authorizing the Debtors to continue honoring their obligations pursuant to a prepetition insurance premium finance agreement for the purpose of financing the purchase of several forms of insurance coverage, and continue the grant of a security interest to the insurance premium finance company in all sums payable to Delphi under the financed insurance policies.

<u>Basis For Relief</u>

A.    <u>Prepetition Insurance Premium Finance And Security Agreement</u>

16.    Since February 5, 2005, Delphi has financed certain of its fiduciary, directors and officers, and employment practices liability insurance (collectively, the "Insurance Policies") pursuant to a Commercial Insurance Premium Finance and Security Agreement (the "Finance Agreement") between Delphi and Cananwill, Inc. ("Cananwill"), dated February 21, 2005.  The Insurance Policies are essential to the preservation of the Debtors' businesses,

7

properties, and assets.  In some cases the coverage is required by regulations, laws, and/or

contracts that govern the Debtors' business obligations.[4]

17.    In total, Delphi is financing approximately 20 Insurance Policies under the

Finance Agreement, as set forth on Exhibit A hereto.  Delphi has financed the Insurance Policies

to take advantage of favorable interest rates under the Finance Agreement and to increase

liquidity.  Pursuant to the Finance Agreement, Cananwill agreed to pay in advance to Delphi's

insurance carriers the sum of $6,099,339.65, which constitutes the full annual insurance premium

for each of the Insurance Policies.  In exchange, the Finance Agreement required Delphi to pay

Cananwill a cash down payment of $564,992.11 and to make 11 monthly payments, each in the

amount of $564,992.11, starting on March 1, 2005.  The Finance Agreement further provided for

Cananwill to receive a finance charge in the amount of $115,573.56.  In addition, the Finance

Agreement includes a security agreement which grants to Cananwill a security interest in all

sums payable to Delphi under the Insurance Policies, including any gross return premiums that

would be payable in the event of cancellation of the Insurance Policies (the "Unearned

Premiums") and loss payments that reduce the Unearned Premiums.  Thus, as discussed below,

Cananwill likely is entitled to adequate protection in the form of payment under the Finance

Agreement.  As of the Petition Date, Delphi owed Cananwill a total of approximately $1.7

million under the Finance Agreement.

18.    In the Debtors' business judgment, the terms of the Finance Agreement

represent the best possible terms for financing the premiums of the Insurance Policies.  Under the

Finance Agreement, the Debtors are being charged an annual interest rate of just 3.77%.  The

---

[4]     For example, insurance coverage is required under the operating guidelines established by the Office of the
United States Trustee.  See 3 United States Trustee Manual § 3-3.2.3 (Oct. 1998) ("A debtor must obtain
appropriate insurance coverage, and documentation regarding the existence of the coverage must be
provided to the [Office of the] United States Trustee as early in the case as possible.").

Debtors' estates will benefit by maintaining this low-cost financing from Cananwill.  Moreover,

any interruption of payments might adversely affect the Debtors' ability to obtain financing for

future policies on favorable terms.

19.    Although the Insurance Policies cover certain of the Debtors' foreign,

non-Debtor affiliates, the Debtors do not allocate any of the premiums to such affiliates.  The

Debtors base their allocation of their insurance costs on exposure or past losses.  The vast

majority of the exposure resides in the U.S. Debtors, and there is no history of a non-U.S. claim

being made under the Insurance Policies in an amount that approaches the amount of the

Debtors' deductible thereunder.

## Applicable Authority

B.    Section 361

20.    Security interests created by premium finance agreements, such as the

Finance Agreement, generally are recognized as secured claims in bankruptcy to the extent of the

amount of unearned premiums financed pursuant to such agreements.  Section 361 of the

Bankruptcy Code specifically contemplates providing adequate protection to the extent of the

diminution in value of a secured creditor's collateral, and such security interests under the

Finance Agreement warrant adequate protection in the form of periodic payments pursuant to the

Finance Agreement's terms.  See, e.g., In re Waverly Textile Processing, Inc., 214 B.R. 476

(Bankr. E.D. Va. 1997); In re Megamarket of Lexington, Inc., 207 B.R. 527 (Bankr. E.D. Ky.

1997); TIFCO, Inc. v. U.S. Repeating Arms Co., 67 B.R. 990 (Bankr. D. Conn. 1986); Drabkin

v. A.I. Credit Corp., 9 B.R. 159 (Bankr. D.C. 1981); Feinstein v AICO Credit Corp. (In re

Krimbrell Trucking Co., Inc.), 3 B.R. 4 (Bankr. W.D. Wash. 1979).

21.    The Debtors' continued use of the Insurance Policies decreases the value of the Unearned Premiums that serve as the collateral for Cananwill.  This loss in value is replaced through the Debtors' payment of the monthly finance charges and related payments under the Finance Agreement.  Accordingly, Cananwill is entitled to continued payment of these amounts as adequate protection under section 361 of the Bankruptcy Code as a condition to the Debtors' continued ability to finance the Insurance Policies.

C.    Section 363

22.    In addition, the use of estate assets to pay monthly installments under the Finance Agreement constitutes a use of estate property that should be authorized under section 363(b) of the Bankruptcy Code so long as a sound business purpose exists for doing so.  See, e.g., Committee of Equity Sec. Holders v. Lionel Corp., 722 F.2d 1063, 1070 (2d Cir. 1983); see also Fulton State Bank v. Schipper, 933 F.2d 513, 515 (7th Cir. 1991); In re Global Crossing Ltd., 295 B.R. 726, 742 (Bankr. S.D.N.Y. 2003); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989); In re Gulf States Steel, Inc., 285 B.R. 497, 514 (Bankr. N.D. Ala. 2002).  The Debtors have determined, in the exercise of their business judgment, that financing the premiums on the Insurance Policies pursuant to the Finance Agreement enables the Debtors to maintain critical insurance coverage.  Doing so is in the best interests of the Debtors' estates and their creditors and these actions should be approved.

Notice

23.    Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to (a) the Office of the United States Trustee, (b) the Debtors' 50 largest unsecured creditors, (c) counsel for the agent under the Debtors' prepetition credit facility, (d) counsel for the agent under the Debtors' proposed postpetition

10

credit facility, and (e) Cananwill.  In light of the nature of the relief requested, the Debtors

submit that no other or further notice is necessary.

## Memorandum Of Law

24.    Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order

(a) authorizing the Debtors to continue honoring their obligations pursuant to the Finance

Agreement and to continue the grant of a security interest to Cananwill, in connection with the

Finance Agreement, pursuant to sections 361 and 363(b) of the Bankruptcy Code, and

(b) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
      October 13, 2005

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (pro hac vice motion pending)
    John K. Lyons
    Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

    - and -

By: s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

# EXHIBIT A

Insurance Policies

EXHIBIT A

| Type of Policy | Insurance Co. | Term | Amount of Annual Premium | Expiration Date | Financed or Non-Financed |
|---|---|---|---:|---|---|
| Combined Directors & Officers / Fiduciary Liability - Primary Layer | National Union Fire Ins. Co. (AIG) | 12 months | 1,650,000 | 2/5/2006 | Financed |
| Combined Directors & Officers / Fiduciary Liability - 1st Excess Layer | Zurich American Ins. Co. | 12 months | 1,303,500 | 2/5/2006 | Financed |
| Combined Directors & Officers / Fiduciary Liability - 2nd Excess Layer | Federal Ins. Co. (Chubb) | 12 months | 599,625 | 2/5/2006 | Financed |
| Combined Directors & Officers / Fiduciary Liability - 3rd Excess Layer | Twin City Fire (Hartford) | 12 months | 460,000 | 2/5/2006 | Financed |
| Combined Directors & Officers / Fiduciary Liability - 4th Excess Layer | Continental Casualty (C.N.A) | 12 months | 240,000 | 2/5/2006 | Financed |
| Combined Directors & Officers / Fiduciary Liability - 5th Excess Layer | AXIS | 12 months | 188,000 | 2/5/2006 | Financed |
| Combined Directors & Officers / Fiduciary Liability - 6th Excess Layer | Continental Casualty (C.N.A) | 12 months | 75,000 | 2/5/2006 | Financed |
| Combined Directors & Officers / Fiduciary Liability - 7th Excess Layer | Arch | 12 months | 198,000 | 2/5/2006 | Financed |
| Combined Directors & Officers / Fiduciary Liability - 8th Excess Layer | St. Paul | 12 months | 117,500 | 2/5/2006 | Financed |
| Combined Directors & Officers / Fiduciary Liability - 9th Excess Layer | US Specialty/HCC | 12 months | 105,000 | 2/5/2006 | Financed |
| Combined Directors & Officers / Fiduciary Liability - 10th Excess Layer | AWAC | 12 months | 262,500 | 2/5/2006 | Financed |
| Combined Directors & Officers / Fiduciary Liability - 11th Excess Layer | Great American | 12 months | 105,000 | 2/5/2006 | Financed |
| Combined Directors & Officers/ Fiduciary Liability - 12th Excess Layer | Twin City Fire (Hartford) | 12 months | 105,000 | 2/5/2006 | Financed |
| Combined Directors & Officers/ Fiduciary Liability - 13th Excess Layer | AXIS | 12 months | 52,500 | 2/5/2006 | Financed |
| Combined Directors & Officers/ Fiduciary Liability - 14th Excess Layer | Federal Ins. Co. (Chubb) | 12 months | 100,000 | 2/5/2006 | Financed |
| Employment Practices Liability - Primary Layer | Nation Union (AIG) | 12 months | 600,805 | 2/5/2006 | Financed |
| Employment Practices Liability - Punitive Dmg. Primary Layer | Starr Excess Liability Insurance International Lmt. | 12 months | 75,100 | 2/5/2006 | Financed |
| Employment Practices Liability - 1st Excess Layer | Zurich American Ins. Co. | 12 months | 252,338 | 2/5/2006 | Financed |
| Employment Practices Liability - Punitive Dmg. 1st Excess Layer | Hanseactic Insurance | 12 months | 25,234 | 2/5/2006 | Financed |
| Employment Practices Liability - 2nd Excess Layer | Allied World Assurance Co. Ltd. (AWAC) | 12 months | 129,535 | 2/5/2006 | Financed |

1

Hearing Date: October 27, 2005, 10:00 a.m.
Objection Deadline: October 24, 2005, 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
     Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
        In re                             :    Chapter 11
                                            :
    DELPHI CORPORATION, et al.,       :    Case No. 05- 44481 (RDD)
                                            :
                       Debtors.   :    (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF MOTION FOR ORDER UNDER
11 U.S.C. §§ 361 AND 363(b) AND FED. R. BANKR. P. 4001(c)
AUTHORIZING DEBTORS TO CONTINUE HONORING PREPETITION
INSURANCE PREMIUM FINANCE AGREEMENT AND CONTINUE GRANT
OF SECURITY INTEREST TO INSURANCE PREMIUM FINANCE COMPANY

PLEASE TAKE NOTICE that on October 8, 2005, Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in

the above-captioned cases filed the Motion For Order Under 11 U.S.C. §§ 361 And 363(b)

And Fed. R. Bankr. P. 4001(c) Authorizing Debtors To Continue Honoring Prepetition

Insurance Premium Finance Agreement And Continue Grant Of Security Interest To

Insurance Premium Finance Company (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of

the Motion on a final basis will be held on October 27, 2005, at 10:00 a.m. (Prevailing

Eastern Time) ("the Hearing") before the Honorable Robert D. Drain, United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610,

New York, New York, 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to approval of

the Motion on a final basis (a) must be in writing, (b) must conform to the Federal Rules of

Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New

York, (c) must be filed with the Bankruptcy Court in accordance with General Order M-242

(as amended) – registered users of the Bankruptcy Court's case filing system must file

electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word

processing format), (d) must be submitted in hard-copy form directly to the chambers of the

2

Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) and must be served

upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General

Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333

West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.),

(iii) special counsel to the Debtors, Shearman & Sterling LLP, 599 Lexington Avenue, New

York, New York 10022 (Att'n:  Douglas P. Bartner), (iv) counsel for the agent under the

Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington

Avenue, New York, New York 10017 (Att'n:  Marissa Wesley), (v) counsel for the agent

under the Debtors' proposed postpetition credit facility, Davis Polk & Wardell, 450

Lexington Avenue, New York, New York 10017 (Att'n:  Marlane Melican), (vi) counsel to

any official committee formed in these cases, and (vii) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York,

New York 10004 (Att'n:  Alicia M. Leonhard), in each case so as to be **received** no later

than **4:00 p.m. (Prevailing Eastern Time)** on **October 24, 2005** (the "Objection Dead-

line").

PLEASE TAKE FURTHER NOTICE that only those objections made in writing and timely filed and received by the Objection Deadline will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance with the procedures set forth herein, the Bankruptcy Court may enter a final order granting the Motion **without further notice.**

Dated: New York, New York
       October 13, 2005

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:   s/ John Wm. Butler, Jr.
  John Wm. Butler, Jr.
    John K. Lyons
    Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By:   s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
In re                           :     Chapter 11
                                            :
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                                            :
                    Debtors.    :     (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 361 AND 363(b) AND FED. R. BANKR. P.
4001(c) AUTHORIZING DEBTORS TO CONTINUE HONORING PREPETITION
INSURANCE PREMIUM FINANCE AGREEMENT AND CONTINUE GRANT OF
SECURITY INTEREST TO INSURANCE PREMIUM FINANCE COMPANY

("INSURANCE FINANCING ORDER")

          Upon the motion, dated October 8, 2005 (the "Motion"), of Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for entry of an order (the "Order") under 11

U.S.C. §§ 361 and 363(b) and Rule 4001(c) of the Federal Rules of Bankruptcy Procedure

authorizing the Debtors to continue honoring their obligations pursuant to a prepetition insurance

premium finance agreement for the purpose of financing the purchase of several forms of

insurance coverage, and continue the grant of a security interest to the insurance premium

finance company in all sums payable to Delphi under the financed insurance policies; and upon

the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders,

sworn to October 8, 2005; and upon the record of the hearing held on the Motion; and this Court

having determined that the relief requested in the Motion is in the best interests of the Debtors,

their estates, their creditors, and other parties-in-interest; and it appearing that proper and

adequate notice of the Motion has been given and that no other or further notice is necessary; and

after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Motion is GRANTED.

2.    The Debtors are authorized but not directed, in their sole discretion, to

continue honoring their obligations pursuant to that certain Commercial Insurance Premium

Finance and Security Agreement between Delphi and Cananwill, Inc. ("Cananwill"), dated

February 21, 2005 (the "Finance Agreement"), including but not limited to making periodic

payments to Cananwill pursuant to the terms of the Finance Agreement.

3.    The Debtors are authorized but not directed in their sole discretion, to grant

to Cananwill, and the Debtors' obligations under the Finance Agreement shall be secured by, a

first priority lien in all sums that may become payable to Delphi under those insurance policies

(the "Insurance Policies") financed pursuant to the Finance Agreement, including any gross

return premiums that would be payable in the event of cancellation of the Insurance Policies (the

"Unearned Premiums") and loss payments that reduce the Unearned Premiums.  No further

action by Cananwill shall be required to perfect its security interest.

4.    Nothing in this Order or the Motion shall be construed as prejudicing the

rights of the Debtors to dispute or contest the amount of or basis for any claims against the

Debtors in connection with or relating to the Debtors' Insurance Policies.

5.    Nothing herein shall be deemed an assumption, adoption, or authorization to

assume any contracts or other agreements, under section 365 of title 11 of the United States

Code, 11 U.S.C. §§ 101-1330, as amended, or otherwise, with Cananwill or parties to whom

amounts under the Finance Agreement may be owed.

6.    This Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Order.

7.    The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the

United States Bankruptcy Court for the Southern District of New York for the service and filing

of a separate memorandum of law is deemed satisfied by the Motion.

Dated:    New York, New York
          October __, 2005


_____
UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT C**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
          In re                               :     Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :     Case No. 05-44481 (RDD)
                                              :
                         Debtors.             :     (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


MOTION FOR ORDER UNDER 11 U.S.C. §§ 327, 330,
AND 331 AUTHORIZING RETENTION OF PROFESSIONALS UTILIZED
BY DEBTORS IN ORDINARY COURSE OF BUSINESS

("ORDINARY COURSE PROFESSIONALS MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. §§ 327(a), 330, and 331 authorizing the retention and employment of professionals utilized by the Debtors in the ordinary course of business.  In support of this Motion, the Debtors submit the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005.  In further support of this Motion, the Debtors respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have moved this Court for an order authorizing joint administration of these chapter 11 cases.

---

[1]    In addition to Delphi, the following entities are debtors in these related cases:  ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holding Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

2

2.    No trustee, examiner, or Creditors' Committee has been appointed in the

Debtors' cases.

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are sections 327(a),

330, and 331 of the Bankruptcy Code.

B.    Current Business Operations Of The Debtors

5.    With more than 180,000 employees worldwide, global 2004 revenues of

approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1

billion,[2] Delphi ranks as the fifth largest public company business reorganization in terms of

revenues, and the thirteenth largest public company business reorganization in terms of assets.

Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations

without supervision from the Bankruptcy Court, and will not be subject to the chapter 11

requirements of the U.S. Bankruptcy Code.

6.    Over the past century, the operations which are now owned by Delphi have

become a leading global technology innovator with significant engineering resources and

technical competencies in a variety of disciplines.  Today, the Company is arguably the single

largest global supplier of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company's technologies and products are present

in more than 75 million vehicles on the road worldwide.  The Company supplies products to

nearly every major global automotive original equipment manufacturer with 2004 sales to its

---

[2]    The aggregated financial data used in this Motion generally consists of consolidated information from
Delphi and its worldwide subsidiaries and affiliates.

former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company, Daimler Chrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

7.     As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world.  In the U.S., the Debtors employ approximately 50,600 people.  Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan.  Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions.  Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8.     Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.    Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base.  The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.    Events Leading To Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the Company generated more than $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005. The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[3]

11.    The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S.

---

[3]        Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues and forward looking revenue requirements.  Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses.  This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan.  The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down through the chapter 11 process.

14.    Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

Relief Requested

15.    The Debtors customarily retain the services of various attorneys, accountants, and other professionals to represent them in matters arising in the ordinary course of business (collectively, the "Ordinary Course Professionals").  A list of Ordinary Course Professionals as of the Petition Date is attached as Exhibit 1 to the Order.

16.    By this Motion, the Debtors seek authorization but not direction (a) to retain Ordinary Course Professionals pursuant to sections 327, 330, and 331 of the Bankruptcy Code without the necessity of a separate, formal retention application approved by this Court for each Ordinary Course Professional and (b) to compensate the Ordinary Course Professionals for postpetition services rendered, subject to certain limits set forth below, without the necessity of additional Court approval.

17.    Notwithstanding the Debtors' belief that certain of the Ordinary Course Professionals are not "professional persons" as contemplated by section 327 of the Bankruptcy Code, out of an abundance of caution, the Debtors hereby move this Court for an order authorizing but not directing the retention of all Ordinary Course Professionals.

Basis For Relief

18.    Prior to the filing of their chapter 11 petitions, Ordinary Course Professionals rendered services to the Debtors consisting of, among other things, (a) tax

7

preparation and other tax advice, (b) legal advice pertaining to various corporate and intellectual

property matters, (c) legal representation in respect of personal injury, commercial and

employment matters, and (d) real estate brokerage.

19.    The Debtors wish to continue to employ and retain Ordinary Course

Professionals to render services that are similar to those that were rendered prior to the

commencement of these chapter 11 cases.  The number of Ordinary Course Professionals

involved, however, makes it costly and inefficient for the Debtors to submit individual

applications and proposed retention orders to this Court for each such Ordinary Course

Professional.  Furthermore, the procedures outlined herein will relieve this Court, the Office of

the United States Trustee for the Southern District of New York (the "U.S. Trustee") and the

official committee of unsecured creditors appointed in these chapter 11 cases (the "Creditors'

Committee") (or any other official committee) of the burden of reviewing numerous fee

applications involving relatively small fees and expenses.

20.    The Debtors submit that the retention of the Ordinary Course Professionals

and the payment of interim compensation on the basis set forth herein is in the best interests of

the Debtors' estates.  While generally the Ordinary Course Professionals wish to represent the

Debtors on an ongoing basis, many might be unwilling to do so if they may be paid only through

a formal application process.

21.    Moreover, if the expertise and background knowledge of certain of the

Ordinary Course Professionals with respect to the particular matters for which they were

responsible prior to the Petition Date are lost, the estates undoubtedly will incur additional and

unnecessary expense because the Debtors will be forced to retain other professionals without

such background and expertise.  It is therefore in the best interests of the Debtors' estates to

8

avoid any disruption in the professional services required in the day-to-day operations of the Debtors' businesses.

22.    Consistent with the dimensions of these chapter 11 cases, the Debtors request that they be permitted to employ and retain Ordinary Course Professionals on terms substantially similar to those in effect prior to the Petition Date, subject to the limits and conditions described below.

A.    Payment of Fees And Expenses

23.    The Debtors propose that they be permitted to pay, without formal application to this Court by any Ordinary Course Professional, 100% of the postpetition fees and disbursements to each Ordinary Course Professional upon the submission to the Debtors of an appropriate invoice setting forth in reasonable detail the nature of the services rendered after the Petition Date.  Except as provided below, the Debtors believe that such fees and disbursements will not exceed either (a) $60,000 per month per Ordinary Course Professional or (b) $900,000 in the aggregate per Ordinary Course Professional over the life of these chapter 11 cases.

24.    The Debtors propose that to the extent that fees payable to any Ordinary Course Professional (except a Key Ordinary Course Professional, as defined below) exceed the $60,000 monthly limit, then such Ordinary Course Professional shall, on or before the 30th day of the month following the month for which compensation is sought (the "Monthly Statement Date"), submit a monthly statement for the additional compensation sought to (a) the Debtors, at Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n:  General Counsel), (b) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n:  John Wm. Butler, Jr.), (c) special counsel to the Debtors, Shearman & Sterling LLP, 599 Lexington Avenue, New York, NY 10022 (Att'n:  Douglas P. Bartner), (d) counsel to the Debtors' postpetition lenders, (e) counsel to the Creditors'

9

Committee, and (f) the U.S. Trustee, 33 Whitehall Street, Suite 2100, New York, New York

10044 (Att'n:  Deirdre A. Martini, Esq.) (collectively, the "Interested Parties").

    25.    The Interested Parties will have 20 days after the Monthly Statement Date to

review the statement for the additional compensation and object to the additional fees requested

by such Ordinary Course Professional.  If any of the Interested Parties objects to the payment of

the additional fees, then the Ordinary Course Professional will be required to submit a formal

application to this Court for the additional compensation.  If no Interested Party timely objects to

the payment of fees, then the Debtors shall be deemed authorized but not required to pay the

additional compensation sought.

    26.    The Debtors currently employ the following Ordinary Course Professionals

which the Debtors would expect regularly to submit invoices for services in excess of the

$60,000 per month limit:  (a) Baker & Daniels; (b) Butzel, Long; (c) Cadwalader Wickersham &

Taft LLP; (d) Covington & Burling LLP; (e) Cantor Colburn LLP; (f) Equis Corporation;[4]

(g) Ernst & Young LLP; (h) Howard & Howard Attorneys, P.C.; (i) Jones Day; (j) Jones Lang

LaSalle; (k) Price, Heneveld, Cooper, DeWitt; (l) Rader Fishman & Grauer; and (m) Wilmer

Cutler Pickering Hale & Door, LLP (collectively, the "Key Ordinary Course Professionals").

    27.    The Debtors propose that the procedures for payment of Key Ordinary

Course Professionals be the subject of a protocol to be established by the Joint Fee Review

Committee, as contemplated by the Motion For Administrative Order Under 11 U.S.C. § 331

---

[4]    As of the Petition Date the Debtors' retained Equis Corporation ("Equis") as their real estate broker.
Pursuant to its current retention, Equis is obligated to continue to act in such capacity through November
2005.  The Debtors have sought to retain Jones Lang LaSalle Americas Inc. ("Jones Lang LaSalle") to
perform this function as of December 2005.  The Debtors do not intend that Equis will perform the services
set forth herein after November 2005 or that Jones Lang LaSalle will commence performance of the
services set forth herein before December 2005.  Accordingly, the Debtors do not anticipate that there will
be any overlap in the services to be provided by each of Equis and Jones Lang LaSalle.

Establishing Procedures For Interim Compensation And Reimbursement Of Professionals, filed
contemporaneously herewith.  The Debtors further propose that the Key Ordinary Course
Professionals (a) be authorized to continue to render services to the Debtors pending the
establishment of such protocol and (b) not be required to file a formal retention application
unless required to do so by the Joint Fee Review Committee.

B.       The Submission Of Rule 2014 Affidavits

28.    Pursuant to this Motion, the Debtors request that Ordinary Course
Professionals be excused from filing an affidavit of disinterestedness pursuant to Bankruptcy
Rule 2014, except as expressly provided herein.  The Debtors recognize, however, the
importance of providing to this Court and to the U.S. Trustee information regarding each
Ordinary Course Professional that is an attorney.

29.    Accordingly, the Debtors propose that each Ordinary Course Professional,
but not any De Minimis Ordinary Course Professional (as defined below), that is an attorney who
is located in the United States be required to file with this Court and to serve upon the Interested
Parties an Affidavit of Ordinary Course Professional (the "Affidavit") within 60 days of the date
of an order granting this Motion.  A form of the Affidavit is attached as Exhibit 2 to the Order.

30.    With respect to Ordinary Course Professionals who are not located within
the United States, the Debtors request that such professionals not be required to file an Affidavit.
The Debtors will coordinate with the U.S. Trustee regarding alternative procedures that will
recognize the unique position of foreign professionals, whose services are critical to the Debtors
but who are unfamiliar with and may be unwilling to follow the procedures applicable to
professionals within the United States.

C.    Additional Ordinary Course Professionals

31.    The Debtors further request that they be authorized but not directed to employ and retain additional Ordinary Course Professionals in their sole discretion without the need to file individual retention applications for each by filing with this Court a supplement to Exhibit 1 to the Order (the "Supplement").  The Supplement will set forth the name of the additional Ordinary Course Professional and whether such professional is to be a Key Ordinary Course Professional, along with a brief description of the services to be rendered and will be served upon the U.S. Trustee, counsel for the Creditors' Committee, and counsel for the agent under the Debtors' proposed postpetition credit facility, without the need for any further hearing or notice to any other party.

32.    For the purposes of complying with the Bankruptcy Rule 2014 affidavit procedures set forth above, the Debtors request that the time for additional Ordinary Course Professionals that are attorneys to file an Affidavit with this Court and to serve it upon the Interested Parties runs from the filing of the Supplement, but that all other requirements remain the same.

D.    Objections To The Retention Of An Ordinary Course Professional

33.    The Debtors propose that the U.S. Trustee, the Creditors' Committee, and the postpetition lenders shall have 20 days after the receipt of each Ordinary Course Professional's Affidavit (the "Affidavit Objection Deadline") to object to the retention of such Ordinary Course Professional.  Such objecting party shall serve any such objections upon the Interested Parties and the Ordinary Course Professional on or before the Affidavit Objection Deadline.

34.    If any such objection cannot be resolved within 20 days after the Affidavit Objection Deadline, the matter shall be scheduled for hearing before this Court at the next

12

regularly scheduled omnibus hearing date or date otherwise agreeable to the Ordinary Course

Professional, the Debtors, and the U.S. Trustee.  If no objection is received prior to the Affidavit

Objection Deadline, the Debtors shall be deemed authorized to retain such Ordinary Course

Professional as a final matter.

E.      De Minimis Ordinary Course Professionals

35.     In the ordinary course of their business, the Debtors employ a significant

number of legal professionals, the fees and disbursements charged by which are relatively

minimal.  Following the filing of these cases, the Debtors anticipate that the number of such

professionals will increase because many of the litigation matters in respect of which legal

services are currently provided will be stayed.  The Debtors therefore propose that they be

authorized to pay any legal professional whose services do not result in fees and disbursements

in excess of $5,000 per month per professional (collectively, the "De Minimis Ordinary Course

Professionals") without the need to (a) file a formal application, (b) be scheduled on Exhibit 1 to

the Order or on any Supplement, or (c) file an Affidavit.  The Debtors propose that a De Minimis

Ordinary Course Professional would be paid, subject to the limit set forth above, 100% of the

fees and disbursements incurred upon submission of appropriate invoices setting forth in

reasonable detail the nature of the services rendered and disbursements incurred.

36.     If in any month a De Minimis Ordinary Course Professional exceeds the

applicable monthly limit, such professional would be required to (a) complete and serve an

Affidavit in accordance with paragraph 29 of this Motion, and (b) submit a monthly fee

statement in accordance with paragraphs 24 and 25 of this Motion, in order to receive further

compensation.

37.     The U.S. Trustee shall then have 15 days following such service to notify

the Debtors in writing of any objections to the retention of the De Minimis Ordinary Course

13

Professional stemming from the contents of the Affidavit. If after 15 days no objection is filed,

the De Minimis Ordinary Course Professional would be retained as an Ordinary Course

Professional and would be subject to all provisions herein regarding Ordinary Course

Professionals. As noted above, the Debtors propose that no De Minimis Ordinary Course

Professional who has exceeded the applicable limit be paid any amount in excess of such limit

for invoiced fees and expense reimbursement until the Affidavit has been filed with this Court

and the objection deadline has passed.

<u>Applicable Authority</u>

38.    Because the nature of the work performed by the Ordinary Course

Professionals is only indirectly related to the type of work carried out by the Debtors'

restructuring counsel, because the degree of discretion afforded the Ordinary Course

Professionals in performing such work is marginal, and because the Ordinary Course

Professionals will not be involved in the administration of these chapter 11 cases, the Debtors do

not believe that the Ordinary Course Professionals are "professionals," within the meaning of

section 327 of the Bankruptcy Code, whose retention must be approved by this Court. <u>See, e.g.,</u>

<u>In re Johns-Manville Corp.</u>, 60 B.R. 612, 619 (Bankr. S.D.N.Y. 1989) (only those professionals

involved in the actual reorganization effort, rather than the debtor's ongoing business, require

approval under section 327); <u>In the matter of Seatrain Lines, Inc.</u>, 13 B.R. 980, 981 (Bankr.

S.D.N.Y. 1981) ("professional person" is limited to persons in those occupations which play a

central role in the administration of the debtor proceeding); <u>see also</u>, <u>In re First Merchants</u>

<u>Acceptance Corp.</u>, Case No. 971500, 1997 Bankr. LEXIS 2245, at *8-9 (Bankr. D. Del. Dec. 15,

1997); <u>Elstead v. Nolden</u> (<u>In re That's Entertainment Mktg. Group</u>), 168 B.R. 226, 230 (N.D.

Cal. 1994) (only the retention of professionals whose duties are central to the administration of

the estate requires prior court approval under section 327); <u>Kmart Corp.</u>, Case No. 02-02474

14

(SPS) (Bankr. N.D. Ill. Jan. 25, 2002 (same); Comdisco, Inc., Case No. 01-24795 (Bankr. N.D.

Ill. July 17, 2001) (same); In re D'Lites of Am., Inc., 108 B.R. 352, 355 (Bankr. N.D. Ga. 1989)

(section 327 approval not necessary for "one who provides services to the debtor that are

necessary whether petition was filed or not").

     39.    Nevertheless, out of an abundance of caution, the Debtors seek the relief

requested herein to avoid any subsequent controversy as to the Debtors' employment and

payment of the Ordinary Course Professionals during the pendency of these chapter 11 cases.

The Debtors shall seek specific Court authority under section 327 to employ any other

professionals involved in the actual administration of these chapter 11 cases.

     40.    Relief similar to that requested herein has been approved by this Court and

has been granted in other large chapter 11 cases.  See, e.g., In re Delta Air Lines, Inc., Case No.

05-17923 (Bankr. S.D.N.Y. Sept. 16, 2005); In re Loral Space & Communications Ltd, Case No.

03-41710 (Bankr. S.D.N.Y. Sept. 2, 2003); In re Spiegel, Inc., Case No. 03-11540 (Bankr.

S.D.N.Y. May 30, 2003); In re NRG Energy, Inc., Case No. 03-13024 (Bankr. S.D.N.Y. May 20,

2003); In re Allegiance Telecom, Inc., Case No. 03-13057 (Bankr. S.D.N.Y. May 15, 2003); In

re WorldCom, Inc., Case No. 02-13533 (Bankr. S.D.N.Y. Sept. 4, 2002); In re Adelphia

Communications Corp., Case No. 02-41729 (Bankr. S.D.N.Y. Jun. 27, 2002); In re Enron Corp.,

Case No. 01-16034 (Bankr. S.D.N.Y. Feb. 22, 2002).

     41.    Although certain of the Ordinary Course Professionals may hold unsecured

claims against the Debtors, the Debtors do not believe that any of the Ordinary Course

Professionals has an interest materially adverse to the Debtors, their estates, creditors, or

shareholders.

42.    Accordingly, the relief requested herein is in the best interests of the Debtors, their estates, and creditors and should be approved.

<u>Notice</u>

43.    Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to (a) the U.S. Trustee, (b) the Debtors' 50 largest unsecured creditors, (c) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n: Marissa Wesley), and (d) counsel for the agent under the Debtors' proposed postpetition credit facility, Davis Polk & Wardell, 450 Lexington Avenue, New York, New York, 10017 (Att'n: Marlane Melican).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

44.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order

(a) authorizing the retention of professionals utilized by the Debtors in the ordinary course of

business and (b) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
   October 13, 2005


      SKADDEN, ARPS, SLATE, MEAGHER
       & FLOM LLP

      By: s/ John Wm. Butler, Jr.
       John Wm. Butler, Jr. (pro hac vice motion pending)
       John K. Lyons
       Ron E. Meisler
      333 West Wacker Drive, Suite 2100
      Chicago, Illinois  60606
      (312) 407-0700


       - and -


      By: s/ Kayalyn A. Marafioti
       Kayalyn A. Marafioti (KM 9632)
       Thomas J. Matz (TM 5986)
      Four Times Square
      New York, New York 10036
      (212) 735-3000

      Attorneys for Delphi Corporation, et al.,
       Debtors and Debtors-in-Possession

**Hearing Date: October 27, 2005, 10:00 a.m.**
**Objection Deadline: October 24, 2005, 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
        In re                                             :     Chapter 11
                                                          :
    DELPHI CORPORATION, et al.,                           :     Case No. 05- 44481 (RDD)
                                                          :
                                    Debtors.              :     (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF MOTION FOR ORDER UNDER
11 U.S.C. §§ 327, 330, AND 331 AUTHORIZING RETENTION
OF PROFESSIONALS UTILIZED BY DEBTORS IN THE
ORDINARY COURSE OF BUSINESS

PLEASE TAKE NOTICE that on October 8, 2005, Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in

the above-captioned cases, filed the Motion For Order Under 11 U.S.C. §§ 327, 330, And

331 Authorizing Retention Of Professionals Utilized By Debtors In The Ordinary Course

Of Business (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of

the Motion on a final basis will be held on October 27, 2005, at 10:00 a.m. (Prevailing

Eastern Time) ("the Hearing") before the Honorable Robert D. Drain, United States

Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610,

New York, New York, 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to approval of

the Motion on a final basis (a) must be in writing, (b) must conform to the Federal Rules of

Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New

York, (c) must be filed with the Bankruptcy Court in accordance with General Order M-242

(as amended) – registered users of the Bankruptcy Court's case filing system must file

electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word

processing format), (d) must be submitted in hard-copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) and must be served

upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General

2

Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333

West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.),

(iii) special counsel to the Debtors, Shearman & Sterling LLP, 599 Lexington Avenue, New

York, New York 10022 (Att'n:  Douglas P. Bartner), (iv) counsel for the agent under the

Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington

Avenue, New York, New York 10017 (Att'n:  Marissa Wesley), (v) counsel for the agent

under the Debtors' proposed postpetition credit facility, Davis Polk & Wardell, 450

Lexington Avenue, New York, New York 10017 (Att'n:  Marlane Melican), (vi) counsel to

any official committee formed in these cases, and (vii) the Office of the United States

Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York,

New York 10004 (Att'n:  Alicia M. Leonhard), in each case so as to be **received** no later

than **4:00 p.m. (Prevailing Eastern Time)** on **October 24, 2005** (the "Objection Dead-

line").

PLEASE TAKE FURTHER NOTICE that only those objections made in writing and timely filed and received by the Objection Deadline will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance with the procedures set forth herein, the Bankruptcy Court may enter a final order granting the Motion **without further notice.**

Dated: New York, New York
      October 13, 2005

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:  s/ John Wm. Butler, Jr.
  John Wm. Butler, Jr.
    John K. Lyons
    Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

    - and -

By:  s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

4
