rights and remedies under the DIP Documents other than those rights and remedies against the Collateral as provided in clause (ii) below and (ii) upon the occurrence and during the continuance of an Event of Default and the giving of five business days prior written notice to the extent provided for in the DIP Credit Agreement, all rights and remedies against the Collateral provided for in the DIP Documents (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the Agent or any DIP Lender). In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors, the Pre-Petition Agent and the Pre-Petition Secured Lenders hereby waive their right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Agent or the DIP Lenders set forth in this Order or the DIP Documents. In no event shall the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

9.  *Limitation on Charging Expenses Against Collateral.* Subject to and effective only upon entry of a final order granting such relief, except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior

19

written consent of the Agent or the Pre-Petition Agent, as the case may be, and no such

consent shall be implied from any other action, inaction, or acquiescence by the Agent,

the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders.

10.    *The Cash Collateral*.  To the extent any funds of any Debtor party to the

Existing Agreements (other than funds in accounts subject to lock-box arrangements

under the Debtors' receivables financing) were on deposit with the Pre-Petition Secured

Lenders as of the Petition Date, including, without limitation, all such funds deposited in,

or credited to, an account of any Debtor party to the Existing Agreements with any Pre-

Petition Secured Lender immediately prior to the filing of the Debtors' bankruptcy

petitions (the "**Petition Time**") (regardless of whether, as of the Petition Time, such

funds had been collected or made available for withdrawal by any such Debtor), such

funds (the "**Deposited Funds**") are subject to rights of setoff.  By virtue of such setoff

rights, the Deposited Funds are subject to a lien in favor of such Pre-Petition Secured

Lenders pursuant to sections 506(a) and 553 of the Bankruptcy Code.  The Pre-Petition

Secured Lenders are obligated, to the extent provided in the Existing Agreements, to

share the benefit of such liens and setoff rights with the other Pre-Petition Secured

Lenders party to such Existing Agreements.  The cash of the Debtors party to the Existing

Agreements, including, without limitation, the Deposited Funds or any other funds on

deposit at the Pre-Petition Secured Lenders as of the Petition Date, and any proceeds

generated by the collection of accounts receivable, sale of inventory or other disposition

of the Pre-Petition Collateral are cash collateral of the Pre-Petition Secured Lenders

within the meaning of section 363(a) of the Bankruptcy Code, and all such "cash

20

collateral" is referred to herein as "**Cash Collateral**." The Pre-Petition Secured Lenders

have objected to the use by the Debtors of the Pre-Petition Collateral, including the Cash

Collateral, except on the terms of this Order.

11.     *Use of Cash Collateral.* The Debtors are hereby authorized to use all Cash

Collateral of the Pre-Petition Secured Lenders, and the Pre-Petition Secured Lenders are

directed promptly to turn over to the Debtors all Cash Collateral received or held by

them, *provided* that the Pre-Petition Secured Lenders are granted adequate protection as

hereinafter set forth. The Debtors' right to use Cash Collateral shall terminate

automatically upon the occurrence of the Termination Date or the voluntary reduction by

the Borrower of the Total Commitments to zero (as each such term is defined in the DIP

Credit Agreement).

12.     *Adequate Protection.* The Pre-Petition Secured Lenders are entitled,

pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate

protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, for

and equal in amount to the aggregate diminution in value of the Pre-Petition Secured

Lenders' Pre-Petition Collateral, including, without limitation, any such diminution

resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash

Collateral and any other Pre-Petition Collateral, the priming of the Pre-Petition Agent's

security interests and liens in the Pre-Petition Collateral by the Agent and the DIP

Lenders pursuant to the DIP Documents and this Order, and the imposition of the

automatic stay pursuant to section 362 of the Bankruptcy Code. As adequate protection,

21

the Pre-Petition Agent and the Pre-Petition Secured Lenders are hereby granted the

following (collectively, the "**Adequate Protection Obligations**"):

(a)    Adequate Protection Liens.  As security for the payment of the

Adequate Protection Obligations, the Pre-Petition Agent (for itself and for the benefit of

the Pre-Petition Secured Lenders) is hereby granted (effective and perfected upon the

date of this Order and without the necessity of the execution by the Debtors of mortgages,

security agreements, pledge agreements, financing statements or other agreements) a

replacement security interest in and lien upon all the Collateral, subject and subordinate

only to (i) the security interests and liens granted to the Agent for the benefit of the DIP

Lenders in this Order and pursuant to the DIP Documents and any liens on the Collateral

to which such liens so granted to the Agent are junior and (ii) the Carve Out (the

"**Adequate Protection Liens**");

(b)    Section 507(b) Claim.  The Pre-Petition Agent and the Pre-Petition

Secured Lenders are hereby granted, subject to the payment of the Carve Out, a

superpriority claim as provided for in section 507(b) of the Bankruptcy Code, limited in

amount to the aggregate diminution in value of the Pre-Petition Secured Lenders' Pre-

Petition Collateral, including, without limitation, any such diminution resulting from the

sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any

other Pre-Petition Collateral, the priming of the Pre-Petition Agent's security interests

and liens in the Pre-Petition Collateral by the Agent and the DIP Lenders pursuant to the

DIP Documents and this Order, and the imposition of the automatic stay pursuant to

section 362 of the Bankruptcy Code, immediately junior to the claims under section

22

364(c)(1) of the Bankruptcy Code held by the Agent and the DIP Lenders *provided,
however*, that the Pre-Petition Agent and the Pre-Petition Secured Lenders shall not
receive or retain any payments, property or other amounts in respect of the superpriority
claims under section 507(b) of the Bankruptcy Code granted hereunder or under the
Existing Agreements unless and until the DIP Obligations have indefeasibly been paid in
cash in full;

        (c)      <u>Interest, Fees and Expenses</u>. The Pre-Petition Agent shall receive
from the Debtors (i) immediate cash payment of all accrued and unpaid interest on the
Pre-Petition Debt and letter of credit fees at the rates provided for in the Existing
Agreements, and all other accrued and unpaid fees and disbursements payable to or for
the benefit of the Pre-Petition Agent under the Existing Agreements and incurred prior to
the Petition Date including, but not limited to, fees owed and amounts to be paid or
reimbursed for counsel, financial and other consultants for the Pre-Petition Agent
pursuant to Section 10.6 of the Pre-Petition Credit Agreement, (ii) current cash payments
of all fees and expenses payable to the Pre-Petition Agent under the Existing Agreements,
including, but not limited to, the reasonable fees and disbursements of counsel, financial
and other consultants for the Pre-Petition Agent,  (iii) on the first business day of each
month, all accrued but unpaid interest on the Pre-Petition Debt, and letter of credit and
other fees at the non-default contract rate applicable on the Petition Date (including
LIBOR pricing options) under the Existing Agreements, *provided* that, without prejudice
to the rights of the Debtors or any other party to contest such assertion, the Pre-Petition
Secured Lenders reserve their rights to assert claims for the payment of additional interest

23

calculated at any other applicable rate of interest (including, without limitation, default

rates), or on any other basis provided for in the Existing Agreements, and for the payment

of any other amounts provided for in the Existing Agreements and (iv) current cash

payment of all reasonable out-of-pocket expenses of the members of any steering

committee of Pre-Petition Secured Lenders, in their capacity as such;

(d)    <u>Access to Collateral</u>. The Pre-Petition Agent (for the benefit of the

Pre-Petition Secured Lenders) and their experts and advisors shall be given reasonable

access for purposes of monitoring the business of the Debtors and the value of the

Collateral; and

(e)    <u>Information</u>. The Debtors shall provide the Pre-Petition Agent

with any written financial information or periodic reporting that is provided to, or

required to be provided to, the Agent or the DIP Lenders.

13.    *Reservation of Rights of Pre-Petition Secured Lenders.*  Under the

circumstances and given that the above described adequate protection is consistent with

the Bankruptcy Code, the Court finds that the adequate protection provided herein is

reasonable and sufficient to protect the interests of the Pre-Petition Secured Lenders.

Except as expressly provided herein, nothing contained in this Order (including, without

limitation, the authorization of the use of any Cash Collateral) shall impair or modify any

rights, claims or defenses available in law or equity, including, without limitation, any

right to propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a

Chapter 11 plan or plans of reorganization, to the Pre-Petition Agent, any Pre-Petition

Secured Lender, the Agent or any DIP Lender including, without limitation, rights of a

24

party to a swap agreement, securities contract, commodity contract, forward contract or

repurchase agreement with a Debtor to assert rights of setoff or other rights with respect

thereto as permitted by law (or the right of a Debtor to contest such assertion).

14.    *Perfection of DIP Liens and Adequate Protection Liens.*

(a)    Subject to the provisions of paragraph 8(a) above, the Agent and

the Pre-Petition Agent are hereby authorized, but not required, to file or record financing

statements, trademark filings, copyright filings, mortgages, notices of lien or similar

instruments in any jurisdiction or take any other action in order to validate and perfect the

liens and security interests granted to them hereunder.  Whether or not the Agent on

behalf of the DIP Lenders or the Pre-Petition Agent on behalf of the Pre-Petition Secured

Lenders shall, in their sole discretion, choose to file such financing statements, trademark

filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise

confirm perfection of the liens and security interests granted to them hereunder, such

liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-

avoidable and not subject to challenge dispute or subordination, at the time and as of the

date of entry of this Order.  Upon the request of the Agent, each of the Pre-Petition Agent

and Pre-Petition Secured Lenders, without any further consent of any party, is authorized

to take, execute and deliver such instruments (in each case without representation or

warranty of any kind) to enable the Agent to further validate, perfect, preserve and

enforce DIP Liens.

(b)    A certified copy of this Order may, in the discretion of the Agent,

be filed with or recorded in filing or recording offices in addition to or in lieu of such

25

financing statements, mortgages, notices of lien or similar instruments, and all filing

offices are hereby authorized to accept such certified copy of this Order for filing and

recording.

(c)    Any provision of any lease or other license, contract or other

agreement that requires (i) the consent or approval of one or more landlords or other

parties or (ii) the payment of any fees or obligations to any governmental entity, in order

for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold

interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby

deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any

such provision shall have no force and effect with respect to the transactions granting

post-petition liens, in such leasehold interest or the proceeds of any assignment and/or

sale thereof by any Debtor, in favor of the DIP Lenders in accordance with the terms of

the DIP Credit Agreement or this Order.

15.    *Preservation of Rights Granted Under the Order.*

(a)    No claim or lien having a priority superior to or *pari passu* with

those granted by this Order to the Agent and the DIP Lenders or to the Pre-Petition Agent

and the Pre-Petition Secured Lenders, respectively, shall be granted or allowed while any

portion of the Financing (or any refinancing thereof) or the Commitments thereunder or

the DIP Obligations or the Adequate Protection Obligations remain outstanding, and the

DIP Liens and the Adequate Protection Liens shall not be (i) subject or junior to any lien

or security interest that is avoided and preserved for the benefit of the Debtors' estates

under section 551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with

26

any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)    Unless all DIP Obligations shall have been paid in full (and, with respect to outstanding letters of credit issued pursuant to the DIP Credit Agreement, cash collateralized in accordance with the provisions of the DIP Credit Agreement) and the Adequate Protection Obligations shall have been paid in full, the Debtors shall not seek, and it shall constitute an Event of Default and a termination of the right to use Cash Collateral if any of the Debtors seek, or if there is entered, (i) any modifications or extensions of this Order without the prior written consent of the Agent, and no such consent shall be implied by any other action, inaction or acquiescence by the Agent, or (ii) an order dismissing any of the Cases.  If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, priming liens, security interests and replacement security interests granted to the Agent and, as applicable, the Pre-Petition Agent pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all DIP Obligations and Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above.

27

(c)     If any or all of the provisions of this Order are hereafter reversed,

modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect

(i) the validity of any DIP Obligations or Adequate Protection Obligations incurred prior

to the actual receipt of written notice by the Agent or Pre-Petition Agent, as applicable, of

the effective date of such reversal, stay, modification or vacation or (ii) the validity or

enforceability of any lien or priority authorized or created hereby or pursuant to the DIP

Credit Agreement with respect to any DIP Obligations or Adequate Protection

Obligations.  Notwithstanding any such reversal, stay, modification or vacation, any use

of Cash Collateral, or DIP Obligations or Adequate Protection Obligations incurred by

the Debtors to the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition

Secured Lenders prior to the actual receipt of written notice by the Agent and Pre-Petition

Agent of the effective date of such reversal, stay, modification or vacation shall be

governed in all respects by the original provisions of this Order, and the Agent, DIP

Lenders, Pre-Petition Agent and Pre-Petition Secured Lenders shall be entitled to all the

rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy

Code, this Order and pursuant to the DIP Documents with respect to all uses of Cash

Collateral, DIP Obligations and Adequate Protection Obligations.

(d)     Except as expressly provided in this Order or in the DIP

Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of

the Agent and the DIP Lenders granted by the provisions of this Order and the DIP

Documents shall survive, and shall not be modified, impaired or discharged by (i) the

entry of an order converting any of the Cases to a case under chapter 7, dismissing any of

28

the Cases, terminating the joint administration of these Cases or by any other act or

omission, or (ii) the entry of an order confirming a plan of reorganization in any of the

Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have

waived any discharge as to any remaining DIP Obligations.  The terms and provisions of

this Order and the DIP Documents shall continue in these Cases, in any successor cases if

these Cases cease to be jointly administered, or in any superseding chapter 7 cases under

the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights

and remedies of the Agent and the DIP Lenders granted by the provisions of this Order

and the DIP Documents shall continue in full force and effect until the DIP Obligations

are indefeasibly paid in full.

16.    *Effect of Stipulations on Third Parties.*  Subject to the reservation of rights

set forth in this paragraph 16, the stipulations and admissions contained in paragraphs 3

and 10 of this Order shall be binding upon the Debtors in all circumstances.  The

stipulations and admissions contained in paragraphs 3 and 10 of this Order shall be

binding upon all other parties in interest, including, without limitation, any Committee,

unless (a) a party in interest has timely filed an adversary proceeding or contested matter

(subject to the limitations contained herein, including, *inter alia*, in paragraph 17) by no

later than the date that is 60 days after the initial selection of counsel by the Official

Committee of Unsecured Creditors (the **"Creditors' Committee"**) in the Cases (or such

later date (x) as has been agreed to, in writing, by the Pre-Petition Agent in its sole

discretion or (y) as has been ordered by the Court) (i) challenging the validity,

enforceability, priority or extent of the Pre-Petition Debt or the Pre-Petition Agent's or

NYDOCS03/784835.3
(NY) 27011/094/DIPDOCS/interim.dip.order.doc

10/08/05 12:22 AM
10/08/05 12:22 AM

the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral or (ii) otherwise

asserting or prosecuting any Avoidance Actions or any other any claims, counterclaims

or causes of action , objections, contests or defenses (collectively, "**Claims and**

**Defenses**") against the Pre-Petition Agent or any of the Pre-Petition Secured Lenders or

their respective affiliates, subsidiaries, directors, officers, representatives, attorneys or

advisors in connection with matters related to the Existing Agreements, the Pre-Petition

Debt, or the Pre-Petition Collateral, and (b) there is a final order in favor of the plaintiff

sustaining any such challenge or claim in any such timely filed adversary proceeding or

contested matter, *provided* that as to the Debtors, all such Claims and Defenses are

hereby irrevocably waived and relinquished as of the Petition Date other than any such

Claims and Defenses as they relate to the allowance of any claim for default interest

under Section 2.14 of the Pre-Petition Credit Agreement or for any prepayment premium

under Sections 2.10 or 2.11 of the Pre-Petition Credit Agreement.  Subject in each case to

the reservation of the Debtors' rights to contest the allowance of any claim for default

interest on the Pre-Petition Debt or any prepayment premium, if no such adversary

proceeding or contested matter is timely filed, (x) the Pre-Petition Debt and all related

obligations of the Debtors (the "**Pre-Petition Obligations**") shall constitute allowed

claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or

avoidance, for all purposes in the Cases and any subsequent chapter 7 cases, (y) the Pre-

Petition Agent's and the Pre-Petition Secured Lenders' liens on the Pre-Petition

Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and

perfected, not subject to defense, counterclaim, recharacterization, subordination or

30

avoidance and (z) the Pre-Petition Obligations, the Pre-Petition Agent's and the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral and the Pre-Petition Agent and the Pre-Petition Secured Lenders shall not be subject to any other or further challenge by any party in interest, and any such party in interested shall be enjoined from, seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors).  If any such adversary proceeding or contested matter is timely filed, the stipulations and admissions contained in paragraphs 3 and 10 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any official committee (including the Creditors' Committee) and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter. Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), including any Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Existing Agreements or the Pre-Petition Obligations.

17.    *Limitation on Use of Financing Proceeds and Collateral.* Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, letters of credit, Cash Collateral, Pre-Petition Collateral, Collateral or the Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents or the Existing Agreements, or the liens or claims granted under this Order, the DIP

31

Documents or the Existing Agreements, (b) assert any Claims and Defenses or any other causes of action against the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders or their respective agents, affiliates, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the Agent's or the Pre-Petition Agent's assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with the DIP Documents, the Existing Agreements or this Order, (d) seek to modify any of the rights granted to the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders hereunder or under the DIP Documents or the Existing Agreements, in each of the foregoing cases without such parties' prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii) in accordance with the DIP Credit Agreement or otherwise approved by the Agent in its sole discretion; *provided* that, notwithstanding anything to the contrary herein, any statutory committee appointed by the U.S. Trustee shall be limited to $250,000, in the aggregate for all such committees, to perform the investigations contemplated hereby.

18.    *JPMCB as Collateral Agent.*  To the extent JPMCB, in its role as Collateral Agent under the Existing Agreements, is the secured party under any Control Agreements (as defined in the Existing Agreements), listed as loss payee under the Debtors' insurance policies as required under the Guarantee and Collateral Agreement or is the secured party under any other Existing Agreement, JPMCB, in its role as Collateral Agent under the DIP Credit Agreement, is also deemed to be the secured party under such Control Agreements, loss payee under the Debtors' insurance policies and the

NYDOCS03/784835.3
(NY) 27011/094/DIPDOCS/interim.dip.order.doc

10/08/05 12:22 AM
10/08/05 12:22 AM

secured party under any other Existing Agreement and shall act in that capacity and

distribute any proceeds recovered or received _first,_ for the benefit of the DIP Lenders in

accordance with the DIP Credit Agreement and _second,_ subsequent to indefeasible

payment in full of all DIP Obligations, for the benefit of the Pre-Petition Secured Lenders

under the Existing Agreements.

19.    _Order Governs._  In the event of any inconsistency between the provisions

of this Order and the DIP Documents, the provisions of this Order shall govern.

20.    _Prior Cash Collateral Order Superseded._  Upon entry of this Order, this

Order shall supersede in all respects the Bridge Order Under 11 U.S.C. §§ 361, 362, and

363 Authorizing Use of Cash Collateral and Adequate Protection to Prepetition Secured

Parties, dated October 8, 2005, which Order shall be of no further force or effect.

21.    _Binding Effect; Successors and Assigns._  The DIP Documents and the

provisions of this Order, including all findings herein, shall be binding upon all parties in

interest in these Cases, including, without limitation, the Agent, the DIP Lenders, the Pre-

Petition Agent, the Pre-Petition Secured Lenders, any Committee appointed in these

Cases, and the Debtors and their respective successors and assigns (including any estate

representative or any chapter 7 or chapter 11 trustee hereinafter appointed or elected for

the estate of any of the Debtors) and shall inure to the benefit of the Agent, the DIP

Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders and the Debtors and

their respective successors and assigns; _provided, however,_ that the Agent, the Pre-

Petition Agent, the DIP Lenders and the Pre-Petition Secured Lenders shall have no

obligation to permit the use of Cash Collateral or extend any financing to any chapter 7

NYDOCS03/784835.3
(NY) 27011/094/DIPDOCS/interim.dip.order.doc                                                         10/08/05 12:22 AM
10/08/05 12:22 AM

trustee or similar responsible person appointed for the estates of the Debtors. In

determining to make any loan under the DIP Credit Agreement, permitting the use of

Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to

this Order or the DIP Documents, the Agent, the Pre-Petition Agent, the DIP Lenders and

the Pre-Petition Secured Lenders shall not be deemed to be in control of the operations of

the Debtors or to be acting as a "responsible person" or "owner or operator" with respect

to the operation or management of the Debtors (as such terms, or any similar terms, are

used in the United States Comprehensive Environmental Response, Compensation and

Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state

statute).

        22.    *Final Hearing.* The Final Hearing is scheduled for _____, 2005 at

_____ __.m. before this Court.

        The Debtors shall promptly mail copies of this Order (which shall constitute

adequate notice of Final Hearing, including without limitation, notice that the Debtors

will seek approval at the Final Hearing of a waiver of rights under section 506(c) of the

Bankruptcy Code) to the parties having been given notice of the Interim Hearing, and to

any other party that has filed a request for notices with this Court and to any Committee

after the same has been appointed, or Committee counsel, if the same shall have been

appointed. Any party in interest objecting to the relief sought at the Final Hearing shall

serve and file written objections; which objections shall be served upon (a) Skadden,

Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, IL 60606, Attn:

John Wm Butler, Jr., Esq., attorneys for the Debtors; (b) Shearman & Sterling LLP, 599

34

Lexington Avenue, New York, New York 10022, Attn: Douglas P. Bartner, Esq.,

attorneys for the Debtors; (c) Davis Polk & Wardwell, 450 Lexington Avenue, New

York, NY 10017, Attn: Donald S. Bernstein, Esq., attorneys for the Agent and the Joint

Lead Arrangers; (d) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New

York, NY 10017, Attn: Kenneth S. Ziman, Esq., and Robert H. Trust, Esq., attorneys for

the Pre-Petition Agent and (e) the Office of the United States Trustee for the Southern

District of New York, and shall be filed with the Clerk of the United States Bankruptcy

Court, Southern District of New York, in each case to allow actual receipt by the

foregoing no later than _____ _____, 2005 at 4:00 p.m., prevailing Eastern time.

NYDOCS03/784835.3
(NY) 27011/094/DIPDOCS/interim.dip.order.doc

10/08/05 12:22 AM
10/08/05 12:22 AM

Dated:    October __, 2005
          New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE

36

# **EXHIBIT F**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                  :

In re                         :     Chapter 11
                                  :

DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                                  :

                   Debtors.    :     (Jointly Administered)
                                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

INTERIM ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), AND 364(e) AND FED. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) TO UTILIZE CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES AND (III) SCHEDULING FINAL HEARING <u>PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)</u>

("INTERIM DIP FINANCING ORDER")

       Upon the motion, dated October 8, 2005 (the "Motion"), of Delphi Corporation

(the "Borrower") and certain of its subsidiaries and affiliates, debtors and debtors-in-

possession in the above-captioned cases (collectively, the "Debtors"), for interim and

final orders under sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3),

364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the

"Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), seeking, among other things:

                (1)  authorization for the Borrower to obtain post petition financing

                (the "Financing"), and for all of the other Debtors (the "Guarantors") to

                guaranty the Borrower's obligations in connection with the Financing, up

                to the aggregate principal amount of $2,000,000,000 (the actual available

principal amount at any time being subject to those conditions set forth in the DIP Documents (as defined below)), pursuant to a credit facility with JPMorgan Chase Bank, N.A. ("JPMCB"), acting as Administrative Agent (in such capacity, the "Agent") for itself and a syndicate of financial institutions (together with JPMCB and including the fronting and issuing banks for the letters of credit, the "DIP Lenders"), and Citicorp USA, Inc. ("CUSA") as Syndication Agent, to be arranged by J.P. Morgan Securities Inc. and Citigroup Global Markets, Inc. (the "Joint Lead Arrangers");

(2)  authorization for the Debtors to execute and enter into the DIP Documents and to perform such other and further acts as may be required in connection with the DIP Documents;

(3)  the granting of adequate protection to the lenders (the "Pre-Petition Secured Lenders") under that certain Third Amended and Restated Credit Agreement, dated as of June 14, 2005 (as heretofore amended, supplemented or otherwise modified, the "Pre-Petition Credit Agreement"), among the Borrower, the several lenders from time to time party thereto, and JPMCB, as administrative agent for the Pre-Petition Secured Lenders (in such capacity, the "Pre-Petition Agent"), and in connection with that certain Guarantee and Collateral Agreement, dated as of June 14, 2005, by the Borrower and certain of its subsidiaries, in favor of the Pre-Petition Agent (as heretofore amended, supplemented or otherwise modified, the "Guarantee and Collateral Agreement" and,

2

collectively with the Pre-Petition Credit Agreement, and the mortgages and all other documentation executed in connection therewith, the "Existing Agreements"), whose liens and security interests are being primed by the Financing;

(4)  authorization for the Debtors to use cash collateral (as such term is defined in the Bankruptcy Code) in which the Pre-Petition Secured Lenders have an interest, and the granting of adequate protection to the Pre-Petition Secured Lenders with respect to, inter alia, such use of their cash collateral and all use and diminution in the value of the Pre-Petition Collateral (as defined below);

(5)  approval of certain stipulations by the Debtors with respect to the Existing Agreements and the liens and security interests arising therefrom, that are "Extraordinary Provisions" (each an "Extraordinary Provision") under General Order No. M-274 of the United States Bankruptcy Court for the Southern District of New York (the "General Order");

(6)  permission to accelerate Borrowings and the termination of the Commitments under the DIP Credit Agreement upon (a) a Change of Control (as each such term is defined in the DIP Credit Agreement) or (b) the entry of an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to the holder or holders of any security interest to permit foreclosure (or the granting of a

3

deed in lieu of foreclosure or the like) on any assets of the Borrower or any of the Guarantors which have a value in excess of $20 million in the aggregate, which are Extraordinary Provisions under the General Order;

(7)    subject and only effective upon the entry of a final order granting such relief, the limitation of the Debtors' right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code, which is an Extraordinary Provision under the General Order;

(8) pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing") on the Motion be held before this Court to consider entry of the proposed interim order annexed to the Motion (the "Interim Order") (a) authorizing the Borrower, on an interim basis, to forthwith borrow or obtain letters of credit from the DIP Lenders under the DIP Documents up to an aggregate principal or face amount not to exceed $950,000,000 (subject to any limitations of borrowings under the DIP Documents), (b) authorizing the Debtors' use of cash collateral, and (c) granting the adequate protection described herein; and

(9)  that this Court schedule a final hearing (the "Final Hearing") to be held within 45 days of the entry of the Interim Order to consider entry of a final order authorizing the balance of the borrowings and letter of credit issuances under the DIP Documents on a final basis, as set forth in the Motion and the DIP Documents filed with this Court (the "Final Order").

4

Due and appropriate notice of the Motion, the relief requested therein and the Interim Hearing having been served by the Debtors on the fifty largest unsecured creditors of the Debtors, on the Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Secured Lenders, the indenture trustee for the Debtors' senior noteholders, known holders of prepetition liens against the Debtors' property and the United States Trustee for the Southern District of New York.

The Interim Hearing having been held by this Court on October 11, 2005 at 4:00 p.m.

Upon the record made by the Debtors at the Interim Hearing and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Notice*.   Under the circumstances, the notice given by the Debtors of the Motion and the Interim Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c).

3.      *Debtors' Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon and the reservation of the Debtors' rights contained in paragraph 16 below), the Debtors, for themselves and not for their estates, admit, stipulate, and agree that:

5

(a)       (i) as of the filing of the Debtors' chapter 11 petitions (the

"Petition Date"), (x) the Borrower was indebted and liable to the Pre-Petition Secured

Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal

amount of approximately $2,488,329,620.59 in respect of loans made and in the

aggregate face amount of approximately $91,453,431.26 in respect of letters of credit

issued, in each case, by the Pre-Petition Secured Lenders pursuant to, and in accordance

with the terms of, the Existing Agreements, plus, in each case, interest thereon and fees,

expenses (including any attorneys', accountants', appraisers' and financial advisors' fees

that are chargeable or reimbursable under the Existing Agreements), charges and other

obligations incurred in connection therewith as provided in the Existing Agreements

(collectively, the "Pre-Petition Debt") and (y) each Debtor other than the Borrower was

contingently liable to the Pre-Petition Secured Lenders in respect of the Pre-Petition Debt

owing by the Borrower pursuant to the Guarantee and Collateral Agreement, (ii) the Pre-

Petition Debt constitutes the legal, valid and binding obligation of the Debtors,

enforceable in accordance with its terms (other than in respect of the stay of enforcement

arising from section 362 of the Bankruptcy Code), (iii) no portion of the Pre-Petition

Debt is subject to avoidance, recharacterization, recovery or subordination pursuant to the

Bankruptcy Code or applicable nonbankruptcy law and (iv) the Debtors do not have, and

hereby forever release, any claims, counterclaims, causes of action, defenses or setoff

rights, whether arising under the Bankruptcy Code or otherwise, against the Pre-Petition

Secured Lenders, the Pre-Petition Agent and their respective affiliates, subsidiaries,

agents, officers, directors, employees and attorneys;

6

(b)    the liens and security interests granted to the Pre-Petition Agent

pursuant to and in connection with the Existing Agreements (including, without

limitation, all security agreements, pledge agreements, mortgages, deeds of trust, control

agreements and other security documents executed by any of the Debtors in favor of the

Pre-Petition Agent, for its benefit and for the benefit of the Pre-Petition Secured Lenders)

in connection with the Existing Agreements, are (i) valid, binding, perfected, enforceable,

first-priority liens and security interests in the personal and real property constituting

"Collateral" (as defined in the Existing Agreements) immediately prior to the Petition

Date (the "Pre-Petition Collateral"), (ii) not subject to avoidance, recharacterization or

subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii)

subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve Out

(as defined below) to which the DIP Liens are subject and (C) valid, perfected and

unavoidable liens permitted under the Existing Agreements to the extent such permitted

liens are senior to or pari passu with the liens of the Pre-Petition Agent on the Pre-

Petition Collateral; and

(c)    the aggregate value of the Pre-Petition Collateral substantially

exceeds the aggregate amount of the Pre-Petition Debt.

4.    *Findings Regarding The Financing.*

(a)    Good cause has been shown for the entry of this Interim Order.

(b)    The Debtors have an immediate need to obtain the Financing and

use Cash Collateral (as defined below) in order to permit, among other things, the orderly

continuation of the operation of their businesses, to maintain business relationships with

7

vendors, suppliers and customers, to make payroll, to make capital expenditures and to
satisfy other working capital and operational needs.  The access of the Debtors to
sufficient working capital and liquidity through the use of Cash Collateral, incurrence of
new indebtedness for borrowed money and other financial accommodations is vital to the
preservation and maintenance of the going concern values of the Debtors and to a
successful reorganization of the Debtors.

(c)    The Debtors are unable to obtain financing on more favorable
terms from sources other than the DIP Lenders under the DIP Documents and are unable
to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy
Code as an administrative expense.  The Debtors are also unable to obtain secured credit
allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code
without the Debtors granting to the Agent and the DIP Lenders, subject to the Carve Out
as provided for herein, the DIP Liens and the Superpriority Claims (as defined below)
under the terms and conditions set forth in this Order and in the DIP Documents.

(d)    The terms of the Financing and the use of Cash Collateral are fair
and reasonable, reflect the Debtors' exercise of prudent business judgment consistent
with their fiduciary duties and constitute reasonably equivalent value and fair
consideration.

(e)    The Financing has been negotiated in good faith and at arm's
length between the Debtors, the Agent and the DIP Lenders, and all of the Debtors'
obligations and indebtedness arising under, in respect of or in connection with the
Financing and the DIP Documents, including without limitation, (i) all loans made to, and

8

all letters of credit issued for the account of, the Debtors pursuant to the Revolving

Credit, Term Loan and Guaranty Agreement substantially in the form attached as Exhibit

A to the Motion (the "DIP Credit Agreement"), and (ii) any "Obligations" and all other

"Secured Obligations" (as each such term is defined in the DIP Credit Agreement),

including any hedging obligations of the Debtors permitted under the DIP Credit

Agreement and any Indebtedness (as defined in the DIP Credit Agreement) permitted by

Section 6.03(viii) thereof, in each case owing to JPMCB, any DIP Lender or any of their

respective banking affiliates (all of the foregoing in clauses (i) and (ii) collectively,  the

"DIP Obligations"), shall be deemed to have been extended by the Agent and the DIP

Lenders and their affiliates in good faith, as that term is used in section 364(e) of the

Bankruptcy Code and in express reliance upon the protections offered by section 364(e)

of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of

the Bankruptcy Code in the event that this Order or any provision hereof is vacated,

reversed or modified, on appeal or otherwise.

(f)     The Debtors have requested entry of this Order pursuant to

Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the relief sought by this

Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation

of the Financing and the use of Cash Collateral in accordance with this Order and the DIP

Documents is therefore in the best interest of the Debtors' estates.

5.     *Authorization Of The Financing And The DIP Documents.*

(a)     The Debtors are hereby authorized to enter into the DIP

Documents.  The Borrower is hereby authorized to borrow money and obtain letters of

9

credit pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to

guaranty such borrowings and the Borrower's obligations with respect to such letters of

credit, up to an aggregate principal or face amount of $950,000,000 (plus interest, fees

and other expenses provided for in the DIP Documents), subject to any limitations of

borrowings under the DIP Documents, and in accordance with the terms of this Order and

the DIP Documents, which shall be used solely for purposes permitted under the DIP

Documents, including, without limitation, to provide working capital for the Borrower

and the Guarantors and for other general corporate purposes and to pay interest, fees and

expenses in accordance with this Order and the DIP Documents.  In addition to such

loans and obligations, the Debtors are authorized to incur overdrafts and related liabilities

arising from treasury, depository and cash management services or in connection with

any automated clearing house fund transfers provided to or for the benefit of the Debtors

by JPMCB, CUSA, any other DIP Lender or any of their respective affiliates; *provided,*

*however*, that nothing herein shall require JPMCB or CUSA or any other party to incur

overdrafts or to provide any such services or functions to the Debtors.

    (b)  In furtherance of the foregoing and without further approval of this

Court, each Debtor is authorized and directed to perform all acts, to make, execute and

deliver all instruments and documents (including, without limitation, the execution or

recordation of security agreements, mortgages and financing statements), and to pay all

fees, that may be reasonably required or necessary for the Debtors' performance of their

obligations under the Financing, including, without limitation:

(i)        the execution, delivery and performance of the Loan

Documents (as defined in the DIP Credit Agreement) and any exhibits attached thereto,

including, without limitation, the DIP Credit Agreement, the Security and Pledge

Agreement (as defined in the DIP Credit Agreement) and the mortgages, if any,

contemplated thereby (collectively, and together with the letter agreements referred to in

clause (iii) below, the "DIP Documents"),

(ii)       the execution, delivery and performance of one or more

amendments to the DIP Credit Agreement for, among other things, the purpose of adding

additional financial institutions as DIP Lenders and reallocating the commitments for the

Financing among the DIP Lenders, in each case in such form as the Debtors, the Agent

and the DIP Lenders may agree (it being understood that no further approval of the Court

shall be required for amendments to the DIP Credit Agreement that do not shorten the

maturity of the extensions of credit thereunder or increase the commitments, the rate of

interest or the letter of credit fees payable thereunder).  Notwithstanding any other

provision hereof, without further approval of this Court, amendments to the DIP

Documents may be made at any time prior to the Final Hearing, (A) as contemplated by

the Fee Letter dated September 22, 2005 among the Borrower, JPMCB and the Joint

Lead Arrangers (permitting certain modifications to the DIP Credit Agreement necessary

or advisable to ensure a successful syndication) or (B) as contemplated by the DIP Credit

Agreement with respect to the Borrowing Base Amendment (as defined in the DIP Credit

Agreement),

11

(iii)    the non refundable payment to the Agent, the Joint Lead
Arrangers or the DIP Lenders, as the case may be, of the fees referred to in the DIP
Credit Agreement (and in the separate letter agreements between them in connection with
the Financing) and reasonable costs and expenses as may be due from time to time,
including, without limitation, reasonable fees and expenses of the professionals retained
as provided for in the DIP Documents, and

(iv)    the performance of all other acts required under or in
connection with the DIP Documents.

(c)    Upon execution and delivery of the DIP Documents, the DIP
Documents shall constitute valid and binding obligations of the Debtors, enforceable
against each Debtor party thereto in accordance with the terms of the DIP Documents. No
obligation, payment, transfer or grant of security under the DIP Documents or this Order
shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under
any applicable law (including without limitation, under section 502(d) of the Bankruptcy
Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.    *Superpriority Claims.*

(a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the
DIP Obligations shall constitute allowed claims against the Debtors with priority over
any and all administrative expenses, diminution claims (including all Adequate
Protection Obligations and Junior Adequate Protection Liens (each as defined below))
and all other claims against the Debtors, now existing or hereafter arising, of any kind
whatsoever, including, without limitation, all administrative expenses of the kind

12

specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all

administrative expenses or other claims arising under sections 105, 326, 328, 330, 331,

503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the

"Superpriority Claims"), whether or not such expenses or claims may become secured by

a judgment lien or other non-consensual lien, levy or attachment, which allowed claims

shall be payable from and have recourse to all pre-petition and post-petition property of

the Debtors and all proceeds thereof, subject only to the payment of the Carve Out to the

extent specifically provided for herein.

(b)     For purposes hereof, the "Carve Out" means (i) all unpaid fees

required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United

States Trustee under section 1930(a) of title 28 of the United States Code, (ii) all fees and

expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code, (iii) after

the occurrence and during the continuance of an Event of Default (as defined in the DIP

Credit Agreement), all allowed and unpaid professional fees and disbursements incurred

by the Debtors and any statutory committees appointed in the Cases (each, a

"Committee"), that remain unpaid subsequent to the payment, pro rata with other

nonpriority administrative creditors, of such fees and expenses from available funds

remaining in the Debtors' estates for such creditors, in an aggregate amount not

exceeding $35,000,000, which amount may be used subject to the terms of this Order,

including, without limitation, paragraph 17 hereof, and (iv) all allowed and unpaid

professional fees and disbursements incurred or accrued by the Debtors and any

Committees at any time when no Event of Default is continuing, that remain unpaid

13

subsequent to the payment, pro rata with other nonpriority administrative creditors, of

such fees and expenses from available funds remaining in the Debtors' estates for such

creditors, in an aggregate amount not exceeding the sum of (x) such unpaid professional

fees and disbursements reflected on the most recent Borrowing Base Certificate (as

defined in the DIP Credit Agreement) delivered to the Agent prior to any Event of

Default that is then continuing and (y) such unpaid professional fees and disbursements

incurred or accrued after such Borrowing Base Certificate (but at a time when no Event

of Default is continuing) in an aggregate amount under this clause (y) not exceeding

$5,000,000 (and with amounts included in this clause (y), to be supported by back-up

documentation in respect of the amounts and dates of incurrence of such fees and

disbursements), in each of the foregoing clauses (i), (ii), (iii) and (iv), to the extent

allowed by the Bankruptcy Court at any time; *provided*, *however*, that (A) nothing herein

shall be construed to impair the ability of any party to object to any of the fees, expenses,

reimbursement or compensation described in clauses (iii) and (iv) above and (B)

following the Termination Date (as defined in the DIP Credit Agreement), cash or other

amounts on deposit in the Letter of Credit Account (as defined in the DIP Credit

Agreement), shall not be subject to the Carve Out.

      7.     *DIP Liens*.

As security for the DIP Obligations, effective and perfected upon the date of this

Order and without the necessity of the execution, recordation of filings by the Debtors of

mortgages, security agreements, control agreements, pledge agreements, financing

statements or other similar documents, the following security interests and liens are

14

hereby granted to the Agent for its own benefit and the benefit of the DIP Lenders (all

property identified in clauses (a), (b) and (c) below being collectively referred to as the

"Collateral"), subject, only in the event of the occurrence and during the continuance of

an Event of Default, to the payment of the Carve Out (all such liens and security interests

granted to the Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to

this Order and the DIP Documents, the "DIP Liens"):

(a)    First Lien On Cash Balances And Unencumbered Property.

Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing,

enforceable, fully-perfected first priority senior security interest in and lien upon all pre-

petition and post-petition property of the Debtors, whether existing on the Petition Date

or thereafter acquired, to the extent not subject to valid, perfected, non-avoidable and

enforceable liens in existence as of the Petition Date or valid liens in existence as of the

Petition Date that are perfected subsequent to such date to the extent permitted by Section

546(b) of the Bankruptcy Code (collectively, "Unencumbered Property"), including

without limitation, all cash and cash collateral of the Debtors (whether maintained with

the Agent or otherwise) and any investment of such cash and cash collateral, inventory,

accounts receivable, other rights to payment whether arising before or after the Petition

Date, contracts, properties, plants, equipment, general intangibles, documents,

instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade

names, other intellectual property, capital stock of subsidiaries, and the proceeds of all

the foregoing provided, however, that the Borrower and the Guarantors shall not be

required to pledge to the Agent in excess of 65% of the voting capital stock of its direct

15

Foreign Subsidiaries or any of the capital stock or interests of its indirect Foreign

Subsidiaries (if, in the good faith judgment of the Borrower, adverse tax consequences

would result to the Borrower).  Unencumbered Property shall exclude the Debtors'

claims and causes of action under sections 502(d), 544, 545, 547, 548, 549 and 550 of the

Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code

(collectively, "Avoidance Actions"), and any proceeds or property recovered,

unencumbered or otherwise the subject of successful Avoidance Actions.

       (b)    <u>Liens Priming Pre-Petition Secured Lenders' Liens</u>.  Pursuant to

section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable,

fully-perfected first priority senior priming security interest in and lien upon all pre-

petition and post-petition property of the Debtors (including, without limitation, cash

collateral, inventory, accounts receivable, other rights to payment whether arising before

or after the Petition Date, contracts, properties, plants, equipment, general intangibles,

documents, instruments, interests in leaseholds, real properties, patents, copyrights,

trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the

proceeds of all the foregoing), whether now existing or hereafter acquired, that is subject

to the existing liens presently securing the Pre-Petition Debt (including in respect of

issued but undrawn letters of credit).  Such security interests and liens shall be senior in

all respects to the interests in such property of the Pre-Petition Secured Lenders arising

from current and future liens of the Pre-Petition Secured Lenders (including, without

limitation, adequate protection liens granted hereunder), and shall be subject and

subordinate to (i) the Carve Out (except as provided in paragraph 6 hereof), and (ii) any

valid, perfected and unavoidable interests of other parties arising out of liens, if any, on such property existing immediately prior to the Petition Date, or to any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Pre-Petition Secured Lenders become subject subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code.

(c)    Liens Junior To Certain Other Liens.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected security interests in and liens upon all pre-petition and post-petition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 7, as to which the liens and security interests in favor of the Agent will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the Agent and the Lenders are junior to such valid, perfected and unavoidable liens.

(d)    Liens Senior To Certain Other Liens.  The DIP Liens, the Adequate Protection Liens (as defined below), and the Junior Adequate Protection Liens shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal

17

or other governmental unit, commission, board or court for any liability of the Debtors

other than with respect to any liens or security interests arising after the Petition Date and

permitted under the DIP Credit Agreement to be senior to the DIP Liens.

8.    *Protection Of DIP Lenders' Rights.*

(a)    So long as there are any borrowings or letters of credit or other

amounts (other than contingent indemnity obligations as to which no claim has been

asserted when all other amounts have been paid and no letters or credit are outstanding)

outstanding, or the DIP Lenders have any Commitment (as defined in the DIP Credit

Agreement) under the DIP Credit Agreement, the Pre-Petition Agent, the Pre-Petition

Secured Lenders, and holders of Junior Adequate Protection Liens shall (i) take no action

to foreclose upon or recover in connection with the liens granted thereto pursuant to the

Existing Agreements or this Order, or otherwise exercise remedies against any Collateral,

except to the extent authorized by an order of this Court and (ii) be deemed to have

consented to any release of Collateral authorized under the DIP Documents and (iii) not

file any further financing statements, trademark filings, copyright filings, mortgages,

notices of lien or similar instruments, or otherwise take any action to perfect their

security interests in the Collateral unless solely as to this clause (iii), the DIP Lenders file

financing statements or other documents to perfect the liens granted pursuant to this

Order, or as may be required by applicable state law to continue the perfection of valid

and unavoidable liens or security interests as of the Filing Date.  Nothing herein shall be

read to permit the Pre-Petition Agent, the Pre-Petition Secured Lenders, or the holders of

Junior Adequate Protection Liens to take any action in violation of the Bankruptcy Code or other applicable law.

(b)    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Agent and the DIP Lenders to exercise, (i) immediately upon the occurrence of an Event of Default, all rights and remedies under the DIP Documents other than those rights and remedies against the Collateral as provided in clause (ii) below and (ii) upon the occurrence and during the continuance of an Event of Default and the giving of five business days prior written notice to the extent provided for in the DIP Credit Agreement, all rights and remedies against the Collateral provided for in the DIP Documents (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the Agent or any DIP Lender).  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors, the Pre-Petition Agent, the Pre-Petition Secured Lenders, and the holders of Junior Adequate Protection Liens hereby waive their right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Agent or the DIP Lenders set forth in this Order or the DIP Documents.  In no event shall the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, or the holders of Junior Adequate Protection Liens be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

19

9.    *Limitation On Charging Expenses Against Collateral.*  Subject to and
effective only upon entry of a final order granting such relief, except to the extent of the
Carve Out, no expenses of administration of the Cases or any future proceeding that may
result therefrom, including liquidation in bankruptcy or other proceedings under the
Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to
section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior
written consent of the Agent or the Pre-Petition Agent, as the case may be, and no such
consent shall be implied from any other action, inaction, or acquiescence by the Agent,
the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders.

10.    *The Cash Collateral.*  To the extent any funds of any Debtor party to the
Existing Agreements (other than funds in accounts subject to lock-box arrangements
under the Debtors' receivables financing) were on deposit with the Pre-Petition Secured
Lenders as of the Petition Date, including, without limitation, all such funds deposited in,
or credited to, an account of any Debtor party to the Existing Agreements with any Pre-
Petition Secured Lender immediately prior to the filing of the Debtors' bankruptcy
petitions (the "Petition Time") (regardless of whether, as of the Petition Time, such funds
had been collected or made available for withdrawal by any such Debtor), such funds (the
"Deposited Funds") are subject to rights of setoff.  By virtue of such setoff rights, the
Deposited Funds are subject to a lien in favor of such Pre-Petition Secured Lenders
pursuant to sections 506(a) and 553 of the Bankruptcy Code.  The Pre-Petition Secured
Lenders are obligated, to the extent provided in the Existing Agreements, to share the
benefit of such liens and setoff rights with the other Pre-Petition Secured Lenders party to

20

such Existing Agreements.  The cash of the Debtors party to the Existing Agreements, including, without limitation, the Deposited Funds or any other funds on deposit at the Pre-Petition Secured Lenders as of the Petition Date, and any proceeds generated by the collection of accounts receivable, sale of inventory or other disposition of the Pre-Petition Collateral are cash collateral of the Pre-Petition Secured Lenders within the meaning of section 363(a) of the Bankruptcy Code, and all such "cash collateral" is referred to herein as "Cash Collateral."  The Pre-Petition Secured Lenders have objected to the use by the Debtors of the Pre-Petition Collateral, including the Cash Collateral, except on the terms of this Order.

11.     *Use Of Cash Collateral.*  The Debtors are hereby authorized to use all Cash Collateral of the Pre-Petition Secured Lenders, and the Pre-Petition Secured Lenders are directed promptly to turn over to the Debtors all Cash Collateral received or held by them, *provided* that the Pre-Petition Secured Lenders are granted adequate protection as hereinafter set forth.  The Debtors' right to use Cash Collateral shall terminate automatically upon the occurrence of the Termination Date or the voluntary reduction by the Borrower of the Total Commitments to zero (as each such term is defined in the DIP Credit Agreement).

12.     *Adequate Protection*.  The Pre-Petition Secured Lenders are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in value of the Pre-Petition Secured Lenders' Pre-Petition Collateral, including, without limitation, any such diminution

21

resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash

Collateral and any other Pre-Petition Collateral, the priming of the Pre-Petition Agent's

security interests and liens in the Pre-Petition Collateral by the Agent and the DIP

Lenders pursuant to the DIP Documents and this Order, and the imposition of the

automatic stay pursuant to section 362 of the Bankruptcy Code.  As adequate protection,

the Pre-Petition Agent and the Pre-Petition Secured Lenders are hereby granted the

following (collectively, the "Adequate Protection Obligations"):

        (a)    <u>Adequate Protection Liens</u>.  As security for the payment of the

Adequate Protection Obligations, the Pre-Petition Agent (for itself and for the benefit of

the Pre-Petition Secured Lenders) is hereby granted (effective and perfected upon the

date of this Order and without the necessity of the execution by the Debtors of mortgages,

security agreements, pledge agreements, financing statements or other agreements) a

replacement security interest in and lien upon all the Collateral, subject and subordinate

only to (i) the security interests and liens granted to the Agent for the benefit of the DIP

Lenders in this Order and pursuant to the DIP Documents and any liens on the Collateral

to which such liens so granted to the Agent are junior and (ii) the Carve Out (the

"Adequate Protection Liens");

        (b)    <u>Section 507(b) Claim</u>.  The Pre-Petition Agent and the Pre-Petition

Secured Lenders are hereby granted, subject to the payment of the Carve Out, a

superpriority claim as provided for in section 507(b) of the Bankruptcy Code, limited in

amount to the aggregate diminution in value of the Pre-Petition Secured Lenders' Pre-

Petition Collateral, including, without limitation, any such diminution resulting from the

sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any

other Pre-Petition Collateral, the priming of the Pre-Petition Agent's security interests

and liens in the Pre-Petition Collateral by the Agent and the DIP Lenders pursuant to the

DIP Documents and this Order, and the imposition of the automatic stay pursuant to

section 362 of the Bankruptcy Code, immediately junior to the claims under section

364(c)(1) of the Bankruptcy Code held by the Agent and the DIP Lenders *provided*,

*however*, that the Pre-Petition Agent and the Pre-Petition Secured Lenders shall not

receive or retain any payments, property or other amounts in respect of the superpriority

claims under section 507(b) of the Bankruptcy Code granted hereunder or under the

Existing Agreements unless and until the DIP Obligations have indefeasibly been paid in

cash in full;

(c)    Interest, Fees, And Expenses.  The Pre-Petition Agent shall receive

from the Debtors (i) immediate cash payment of all accrued and unpaid interest on the

Pre-Petition Debt and letter of credit fees at the rates provided for in the Existing

Agreements, and all other accrued and unpaid fees and disbursements payable to or for

the benefit of the Pre-Petition Agent under the Existing Agreements and incurred prior to

the Petition Date including, but not limited to, fees owed and amounts to be paid or

reimbursed for counsel, financial and other consultants for the Pre-Petition Agent

pursuant to Section 10.6 of the Pre-Petition Credit Agreement, (ii) current cash payments

of all fees and expenses payable to the Pre-Petition Agent under the Existing Agreements,

including, but not limited to, the reasonable fees and disbursements of counsel, financial

and other consultants for the Pre-Petition Agent,  (iii) on the first business day of each

23

month, all accrued but unpaid interest on the Pre-Petition Debt, and letter of credit and

other fees at the non-default contract rate applicable under the Existing Agreements,

*provided* that, without prejudice to the rights of the Debtors or any other party to contest

such assertion, the Pre-Petition Secured Lenders reserve their rights to assert claims for

the payment of additional interest calculated at any other applicable rate of interest

(including, without limitation, default rates), or on any other basis provided for in the

Existing Agreements, and for the payment of any other amounts provided for in the

Existing Agreements and (iv) current cash payment of all reasonable out-of-pocket

expenses of the members of any steering committee of Pre-Petition Secured Lenders, in

their capacity as such;

(d)     Access To Collateral.  The Pre-Petition Agent (for the benefit of

the Pre-Petition Secured Lenders) and their experts and advisors shall be given

reasonable access for purposes of monitoring the business of the Debtors and the value of

the Collateral; and

(e)     Information.  The Debtors shall provide the Pre-Petition Agent

with any written financial information or periodic reporting that is provided to, or

required to be provided to, the Agent or the DIP Lenders.

13.     *Reservation of Rights of Pre-Petition Secured Lenders*.  Under the

circumstances and given that the above described adequate protection is consistent with

the Bankruptcy Code, the Court finds that the adequate protection provided herein is

reasonable and sufficient to protect the interests of the Pre-Petition Secured Lenders.

Except as expressly provided herein, nothing contained in this Order (including, without

24

limitation, the authorization of the use of any Cash Collateral and the granting of any

Junior Adequate Protection Liens) shall impair or modify any rights, claims or defenses

available in law or equity, including, without limitation, any right to propose, subject to

the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans of

reorganization, to the Pre-Petition Agent, any Pre-Petition Secured Lender, the Agent or

any DIP Lender including, without limitation, rights of a party to a swap agreement,

securities contract, commodity contract, forward contract or repurchase agreement with a

Debtor to assert rights of setoff or other rights with respect thereto as permitted by law

(or the right of a Debtor to contest such assertion).

       14.     *Perfection Of DIP Liens And Adequate Protection Liens.*

       (a)     Subject to the provisions of paragraph 8(a) above, the Agent and

the Pre-Petition Agent are hereby authorized, but not required, to file or record financing

statements, trademark filings, copyright filings, mortgages, notices of lien or similar

instruments in any jurisdiction or take any other action in order to validate and perfect the

liens and security interests granted to them hereunder.  Whether or not the Agent on

behalf of the DIP Lenders or the Pre-Petition Agent on behalf of the Pre-Petition Secured

Lenders shall, in their sole discretion, choose to file such financing statements, trademark

filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise

confirm perfection of the liens and security interests granted to them hereunder, such

liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-

avoidable and not subject to challenge dispute or subordination, at the time and as of the

date of entry of this Order.  Upon the request of the Agent, each of the Pre-Petition Agent

25

and Pre-Petition Secured Lenders, without any further consent of any party, is authorized

to take, execute and deliver such instruments (in each case without representation or

warranty of any kind) to enable the Agent to further validate, perfect, preserve and

enforce DIP Liens.

(b)    A certified copy of this Order may, in the discretion of the Agent,

be filed with or recorded in filing or recording offices in addition to or in lieu of such

financing statements, mortgages, notices of lien or similar instruments, and all filing

offices are hereby authorized to accept such certified copy of this Order for filing and

recording.

(c)    Any provision of any lease or other license, contract or other

agreement that requires (i) the consent or approval of one or more landlords or other

parties or (ii) the payment of any fees or obligations to any governmental entity, in order

for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold

interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby

deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any

such provision shall have no force and effect with respect to the transactions granting

post-petition liens, in such leasehold interest or the proceeds of any assignment and/or

sale thereof by any Debtor, in favor of the DIP Lenders in accordance with the terms of

the DIP Credit Agreement or this Order.

15.    *Preservation Of Rights Granted Under The Order.*

(a)    No claim or lien having a priority superior to or *pari passu* with

those granted by this Order to the Agent and the DIP Lenders or to the Pre-Petition Agent

26

and the Pre-Petition Secured Lenders, respectively, shall be granted or allowed while any

portion of the Financing (or any refinancing thereof) or the Commitments thereunder or

the DIP Obligations or the Adequate Protection Obligations remain outstanding, and the

DIP Liens and the Adequate Protection Liens shall not be (i) subject or junior to any lien

or security interest that is avoided and preserved for the benefit of the Debtors' estates

under section 551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with

any other lien or security interest, whether under section 364(d) of the Bankruptcy Code

or otherwise.

> (b)     Unless all DIP Obligations shall have been paid in full (and, with

respect to outstanding letters of credit issued pursuant to the DIP Credit Agreement, cash

collateralized in accordance with the provisions of the DIP Credit Agreement) and the

Adequate Protection Obligations shall have been paid in full, the Debtors shall not seek,

and it shall constitute an Event of Default and a termination of the right to use Cash

Collateral if any of the Debtors seek, or if there is entered, (i) any modifications or

extensions of this Order without the prior written consent of the Agent, and no such

consent shall be implied by any other action, inaction or acquiescence by the Agent, or

(ii) an order dismissing any of the Cases.  If an order dismissing any of the Cases under

section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall

provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the

Superpriority Claims, priming liens, security interests and replacement security interests

granted to the Agent and, as applicable, the Pre-Petition Agent pursuant to this Order

shall continue in full force and effect and shall maintain their priorities as provided in this

Order until all DIP Obligations and Adequate Protection Obligations shall have been paid

and satisfied in full (and that such Superpriority Claims, priming liens and replacement

security interests, shall, notwithstanding such dismissal, remain binding on all parties in

interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for

the purposes of enforcing the claims, liens and security interests referred to in (i) above.

(c)    If any or all of the provisions of this Order are hereafter reversed,

modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect

(i) the validity of any DIP Obligations or Adequate Protection Obligations incurred prior

to the actual receipt of written notice by the Agent or Pre-Petition Agent, as applicable, of

the effective date of such reversal, stay, modification or vacation or (ii) the validity or

enforceability of any lien or priority authorized or created hereby or pursuant to the DIP

Credit Agreement with respect to any DIP Obligations or Adequate Protection

Obligations.  Notwithstanding any such reversal, stay, modification or vacation, any use

of Cash Collateral, or DIP Obligations or Adequate Protection Obligations incurred by

the Debtors to the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition

Secured Lenders prior to the actual receipt of written notice by the Agent and Pre-Petition

Agent of the effective date of such reversal, stay, modification or vacation shall be

governed in all respects by the original provisions of this Order, and the Agent, DIP

Lenders, Pre-Petition Agent and Pre-Petition Secured Lenders shall be entitled to all the

rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy

Code, this Order and pursuant to the DIP Documents with respect to all uses of Cash

Collateral, DIP Obligations and Adequate Protection Obligations.

28

(d)    Except as expressly provided in this Order or in the DIP

Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of

the Agent and the DIP Lenders granted by the provisions of this Order and the DIP

Documents shall survive, and shall not be modified, impaired or discharged by (i) the

entry of an order converting any of the Cases to a case under chapter 7, dismissing any of

the Cases, terminating the joint administration of these Cases or by any other act or

omission, or (ii) the entry of an order confirming a plan of reorganization in any of the

Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have

waived any discharge as to any remaining DIP Obligations.  The terms and provisions of

this Order and the DIP Documents shall continue in these Cases, in any successor cases if

these Cases cease to be jointly administered, or in any superseding chapter 7 cases under

the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights

and remedies of the Agent and the DIP Lenders granted by the provisions of this Order

and the DIP Documents shall continue in full force and effect until the DIP Obligations

are indefeasibly paid in full.

16.    *Effect Of Stipulations On Third Parties*.  Subject to the reservation of

rights set forth in this paragraph 16, the stipulations and admissions contained in

paragraphs 3 and 10 of this Order shall be binding upon the Debtors in all circumstances.

The stipulations and admissions contained in paragraphs 3 and 10 of this Order shall be

binding upon all other parties in interest, including, without limitation, any Committee,

unless (a) a party-in-interest has timely filed an adversary proceeding or contested matter

(subject to the limitations contained herein, including, *inter alia*, in paragraph 17) by no

29

later than the date that is 90 days after the initial selection of counsel by the Official

Committee of Unsecured Creditors (the "Creditors' Committee") in the Cases (or such

later date (x) as has been agreed to, in writing, by the Pre-Petition Agent in its sole

discretion or (y) as has been ordered by the Court) (i) challenging the validity,

enforceability, priority or extent of the Pre-Petition Debt or the Pre-Petition Agent's or

the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral or (ii) otherwise

asserting or prosecuting any Avoidance Actions or any other any claims, counterclaims

or causes of action , objections, contests or defenses (collectively, "Claims and

Defenses") against the Pre-Petition Agent or any of the Pre-Petition Secured Lenders or

their respective affiliates, subsidiaries, directors, officers, representatives, attorneys or

advisors in connection with matters related to the Existing Agreements, the Pre-Petition

Debt, or the Pre-Petition Collateral, and (b) there is a final order in favor of the plaintiff

sustaining any such challenge or claim in any such timely filed adversary proceeding or

contested matter, *provided* that as to the Debtors, for themselves and not their estates, all

such Claims and Defenses are hereby irrevocably waived and relinquished as of the

Petition Date other than any such Claims and Defenses as they relate to the allowance of

any claim for default interest under Section 2.14 of the Pre-Petition Credit Agreement or

for any prepayment premium under Sections 2.10 or 2.11 of the Pre-Petition Credit

Agreement.  Subject in each case to the reservation of the Debtors' rights to contest the

allowance of any claim for default interest on the Pre-Petition Debt or any prepayment

premium, if no such adversary proceeding or contested matter is timely filed, (x) the Pre-

Petition Debt and all related obligations of the Debtors (the "Pre-Petition Obligations")

30

shall constitute allowed claims, not subject to counterclaim, setoff, subordination,

recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent

chapter 7 cases, (y) the Pre-Petition Agent's and the Pre-Petition Secured Lenders' liens

on the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, legal,

valid, binding and perfected, not subject to defense, counterclaim, recharacterization,

subordination or avoidance and (z) the Pre-Petition Obligations, the Pre-Petition Agent's

and the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral and the Pre-

Petition Agent and the Pre-Petition Secured Lenders shall not be subject to any other or

further challenge by any party-in-interest, and any such party-in-interest shall be enjoined

from, seeking to exercise the rights of the Debtors' estates, including, without limitation,

any successor thereto (including, without limitation, any estate representative or a chapter

7 or 11 trustee appointed or elected for any of the Debtors).  If any such adversary

proceeding or contested matter is timely filed, the stipulations and admissions contained

in paragraphs 3  and 10 of this Order shall nonetheless remain binding and preclusive (as

provided in the second sentence of this paragraph) on any official committee (including

the Creditors' Committee) and on any other person or entity, except to the extent that

such findings and admissions were expressly challenged in such adversary proceeding or

contested matter.  Nothing in this Order vests or confers on any Person (as defined in the

Bankruptcy Code), including any Committee, standing or authority to pursue any cause

of action belonging to the Debtors or their estates, including, without limitation, Claims

and Defenses with respect to the Existing Agreements or the Pre-Petition Obligations.

31

17.    *Limitation On Use Of Financing Proceeds And Collateral*.

Notwithstanding anything herein or in any other order by this Court to the contrary, no

borrowings, letters of credit, Cash Collateral, Pre-Petition Collateral, Collateral or the

Carve Out may be used to (a) object, contest or raise any defense to, the validity,

perfection, priority, extent or enforceability of any amount due under the DIP Documents

or the Existing Agreements, or the liens or claims granted under this Order, the DIP

Documents or the Existing Agreements, (b) assert any Claims and Defenses or any other

causes of action against the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-

Petition Secured Lenders or their respective agents, affiliates, representatives, attorneys

or advisors, (c) prevent, hinder or otherwise delay the Agent's or the Pre-Petition Agent's

assertion, enforcement or realization on the Cash Collateral or the Collateral in

accordance with the DIP Documents, the Existing Agreements or this Order, (d) seek to

modify any of the rights granted to the Agent, the DIP Lenders, the Pre-Petition Agent or

the Pre-Petition Secured Lenders hereunder or under the DIP Documents or the Existing

Agreements, in each of the foregoing cases without such parties' prior written consent or

(e) pay any amount on account of any claims arising prior to the Petition Date unless such

payments are (i) approved by an Order of this Court and (ii) in accordance with the DIP

Credit Agreement or otherwise approved by the Agent in its sole discretion; *provided*

that, notwithstanding anything to the contrary herein, any statutory committee appointed

by the U.S. Trustee shall be limited to $250,000, in the aggregate for all such committees,

to perform the investigations contemplated hereby.

32

18.    *Junior Adequate Protection Liens.*  To the extent any person has a valid,

perfected, enforceable, and non-avoidable right to set off in respect of its pre-petition

payables as of the Petition Date, such person shall be granted a replacement lien (a

"Junior Adequate Protection Lien") under section 361(2) of the Bankruptcy Code in all of

the Debtors' right, title, and interest in, to and under the Collateral securing the Debtors'

Obligations under the DIP Credit Agreement, subject and subordinate (i) to the Carve

Out, (ii) to any liens and security interests granted hereunder or under any DIP Document

to or for the benefit of the Agent and the DIP Lenders and (iii) to the Adequate Protection

Liens granted to the Pre-Petition Agent and the Pre-Petition Secured Lenders.  Prior to

the entry of the Final Order, nothing contained in this Order shall affect the rights of

such person to request further or different adequate protection under section 361 of the

Bankruptcy Code; provided, however, that the Debtors or any other party may contest

any such request, including the continuation of the adequate protection liens granted

hereby to such person.

19.    *JPMCB As Collateral Agent*.  To the extent JPMCB, in its role as

Collateral Agent under the Existing Agreements, is the secured party under any Control

Agreements (as defined in the Existing Agreements), listed as loss payee under the

Debtors' insurance policies as required under the Guarantee and Collateral Agreement or

is the secured party under any other Existing Agreement, JPMCB, in its role as Collateral

Agent under the DIP Credit Agreement, is also deemed to be the secured party under

such Control Agreements, loss payee under the Debtors' insurance policies and the

secured party under any other Existing Agreement and shall act in that capacity and

33

distribute any proceeds recovered or received first, for the benefit of the DIP Lenders in accordance with the DIP Credit Agreement and second, subsequent to indefeasible payment in full of all DIP Obligations, for the benefit of the Pre-Petition Secured Lenders under the Existing Agreements.

20.    *Order Governs*.  In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

21.    *Prior Cash Collateral Order Superseded*.  Upon entry of this Order, this Order shall supersede in all respects the Bridge Order Under 11 U.S.C. §§ 361, 362, and 363 Authorizing Use of Cash Collateral and Adequate Protection to Prepetition Secured Parties, dated October 8, 2005, which Order shall be of no further force or effect.

22.    *Binding Effect; Successors And Assigns*.  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, any party granted a Junior Adequate Protection Lien hereunder, any Committee appointed in these Cases, and the Debtors, and their respective successors and assigns and shall inure to the benefit of the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, any party granted a Junior Adequate Protection Lien, and the Debtors and their respective successors and assigns; *provided*, *however*, that the Agent, the Pre-Petition Agent, the DIP Lenders and the Pre-Petition Secured Lenders shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan under the DIP

34

Credit Agreement, permitting the use of Cash Collateral or in exercising any rights or

remedies as and when permitted pursuant to this Order or the DIP Documents, the Agent,

the Pre-Petition Agent, the DIP Lenders and the Pre-Petition Secured Lenders shall not be

deemed to be in control of the operations of the Debtors or to be acting as a "responsible

person" or "owner or operator" with respect to the operation or management of the

Debtors (as such terms, or any similar terms, are used in the United States

Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C.

§§ 9601 et seq. as amended, or any similar federal or state statute).

23.     *Final Hearing*.  The Final Hearing is scheduled for October 27, 2005 at

10:00 a.m. before this Court.

The Debtors shall promptly mail copies of this Order (which shall constitute

adequate notice of Final Hearing, including without limitation, notice that the Debtors

will seek approval at the Final Hearing of a waiver of rights under section 506(c) of the

Bankruptcy Code) to the parties having been given notice of the Interim Hearing, and to

any other party that has filed a request for notices with this Court and to any Committee

after the same has been appointed, or Committee counsel, if the same shall have been

appointed.  Any party-in-interest objecting to the relief sought at the Final Hearing shall

serve and file written objections; which objections shall be served upon (a) Skadden,

Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60606,

Att'n: John Wm. Butler, Jr., Esq., attorneys for the Debtors; (b) Shearman & Sterling

LLP, 599 Lexington Avenue, New York, New York 10022, Att'n: Douglas P. Bartner,

Esq., attorneys for the Debtors; (c) Davis Polk & Wardwell, 450 Lexington Avenue, New

35

York, NY 10017, Att'n: Donald S. Bernstein, Esq., attorneys for the Agent and the Joint

Lead Arrangers; (d) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New

York, New York 10017, Att'n: Kenneth S. Ziman, Esq., and Robert H. Trust, Esq.,

attorneys for the Pre-Petition Agent and (e) the Office of the United States Trustee for the

Southern District of New York, Att'n: Alicia M. Leonhard, Esq. and shall be filed with

the Clerk of the United States Bankruptcy Court, Southern District of New York, in each

case to allow actual receipt by the foregoing no later than October 20, 2005 at 4:00 p.m.,

prevailing Eastern time.

Dated:    October 12, 2005
          New York, New York

                              /s/Robert D. Drain
                              UNITED STATES BANKRUPTCY JUDGE