PENSION BENEFIT GUARANTY CORPORATION
Jeffrey B. Cohen, Chief Counsel
Israel Goldowitz, Deputy Chief Counsel
Karen L. Morris, Assistant Chief Counsel
Ralph L. Landy, Attorney
Beth A. Bangert, Attorney
Office of the Chief Counsel
1200 K Street, NW, Suite 340
Washington, D.C. 20005-4026
Tel:  (202) 326-4020
Fax: (202) 326-4112

KELLEY DRYE & WARREN LLP
Merrill B. Stone (MS-0009)
Mark I. Bane (MB-4883)
Mark R. Somerstein (MS-9721)
101 Park Avenue
New York, New York 10178
Tel:  (212) 808-7800
Fax: (212) 808-7897

Attorneys for Pension Benefit Guaranty Corporation

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| DELPHI CORPORATION, *et al.*, | ) | Case No. 05-44481 (RDD) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

## LIMITED OMNIBUS OBJECTION OF PENSION BENEFIT GUARANTY CORPORATION TO (A) INTERIM CASH MANAGEMENT ORDER AND (B) DEBTOR IN POSSESSION FINANCING MOTION

Pension Benefit Guaranty Corporation ("PBGC") submits its limited omnibus objection (the "Objection") to the (a) Debtors' Motion for Order Under 11 U.S.C. §§ 105, 361, 362, 363, 364(c), 364(d), and 364(e) and Fed. R. Bankr. P. 2002, 4001, and 9014 (i) Authorizing Debtors to Obtain Secured Postpetition Financing on Superpriority Secured and Priming Basis, (ii) Authorizing Use of Cash Collateral, (iii) Granting Adequate Protection to Prepetition

Secured Lenders, (iv) Granting Interim Relief, and (v) Scheduling a Final Hearing, dated October 8, 2005 (the "DIP Motion") and (b) Interim Order Under 11 U.S.C. §§ 363 and 553 Authorizing (i) Continued Maintenance of Existing Bank Accounts, (ii) Continued Use of Existing Cash Management System, (iii) Continued Use of Existing Business Forms, (iv) Preservation and Exercise of Intercompany Setoff Rights, and (v) Grant of Administrative Status for Postpetition Intercompany Transactions, dated October 14, 2005 (the "Cash Management Order").[1]  In support of the Objection, PBGC respectfully represents as follows:

### Preliminary Statement

1.     The Debtors' cash management system and the financing the Debtors seek in the DIP Motion will precipitate, and indeed contemplate, intercompany advances among debtor entities during the chapter 11 cases.  By virtue of these intercompany advances, certain debtor entities will become net lenders and other debtor entities will become net borrowers by the conclusion of these cases.  PBGC objects to the Cash Management Order and the Proposed DIP Order (as defined below) because each Order fails to provide "lender" debtors with a sufficient degree of protection in exchange for the debtor in possession financing that each lender debtor will provide to each borrower debtor on account of the intercompany advances.

2.     This Court should modify the Cash Management Order and the Proposed DIP Order (as in *Enron's* and, more recently at PBGC's urging, *Delta's* chapter 11 cases) to grant to each lender debtor junior liens and junior superpriority administrative expense claims against the estate of any corresponding borrower debtor to the extent of the financing provided by virtue of such lender debtor's intercompany advances.  The Proposed DIP Order tendered by the Debtors for approval by this Court amply demonstrates that postpetition financing to a

---

[1]     By agreement memorialized on the record at the hearing on the Cash Management Motion (as defined below) conducted on October 11, 2005, PBGC reserved all of its rights with respect to the Cash Management Order and was granted an opportunity to object to the Cash Management Order.

2

debtor warrants important lender protections, including, among other things, liens and superpriority administrative expense claims. The Debtors have failed to justify their refusal to provide lender debtors the identical protections that the Debtors concede third party lenders — with the ability to bargain in good faith and at arm's length — require as a prerequisite to making a loan to the Debtors, particularly where the modifications that PBGC requests will not prejudice the Debtors in any respect.

### Background

A.  General Background

    3.    On October 8, 2005 (the "Petition Date"), Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (collectively, the "Initial Debtors") each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"). On October 14, 2005, Delphi Furukawa Wiring Systems LLC, Delphi Receivables LLC, and MobileAria, Inc. (collectively with the Initial Debtors, the "Debtors") each filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

    4.    The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to Bankruptcy Code sections 1107(a) and 1108.

    5.    No trustee or examiner has been appointed in the Debtors' cases. On October 17, 2005, the United States Trustee appointed a seven member official committee of unsecured creditors (the "Committee").

B.  Statutory Background and PBGC

    6.    PBGC is a United States government agency that administers the nation's pension insurance program under Title IV of the Employee Income Security Act of 1974, *as amended,*, 29 U.S.C. §§ 1301-1461 (2000 & Supp. II 2002) ("ERISA"). The termination

insurance program protects more than 44 million workers participating in over 30,000 private sector pension plans.

7.  The Debtors sponsor eight single-employer defined benefit pension plans (the "Defined Benefit Plans") covered by PBGC's insurance program. Based on information supplied by the Debtors, PBGC estimates that the Defined Benefit Plans, in the aggregate, cover defined benefits for over 54,400 employees and over 13,200 retirees.

8.  PBGC currently estimates that the Defined Benefit Plans are underfunded by approximately $10.8 billion. When a business debtor, such as Delphi, is a member of a "controlled group" of businesses, ERISA holds each member of the controlled group jointly and severally liable for the unfunded benefit liabilities of such a debtor's pension plans if such plans terminate. *See* 29 U.S.C. §§ 1362 and 1368. As a result, PBGC maintains a claim against each of the Debtors (and each non-Debtor member of the Debtors' "controlled group") for the total amount of the underfunding.

C.  The Cash Management Motion and the DIP Motion

9.  On the Petition Date, the Initial Debtors filed the Motion for Order Under 11 U.S.C. §§ 363 and 553 Authorizing (i) Continued Maintenance of Existing Bank Accounts, (ii) Continued Use of Existing Cash Management System, (iii) Continued Use of Existing Business Forms, (iv) Preservation and Exercise of Intercompany Setoff Rights, and (v) Grant of Administrative Status for Postpetition Intercompany Transactions (the "Cash Management Motion"). On October 14, 2005, this Court entered the Cash Management Order. The Cash Management Order grants to certain Debtors and non-Debtors administrative claims on account of intercompany advances. *See* Cash Management Order at 5, ¶11.

10. On the Petition Date, the Initial Debtors filed the DIP Motion seeking entry of an order (the "Proposed DIP Order") authorizing the Debtors to obtain up to $2 billion

4

in debtor in possession financing. On October 12, 2005, this Court granted the DIP Motion on an interim basis. The Proposed DIP Order provides the lenders with, among other rights and protections, certain liens and superpriority administrative claims in exchange for the financing. The Proposed DIP Order provides no protection for the Debtors that repay debtor in possession financing advances made to or for the benefit of other debtors.

### Grounds for Objection

11. While recognizing the inherent necessity of intercompany advances in enterprises larger and at least as complex as the Debtors' businesses, bankruptcy courts in this District in two recent chapter 11 cases have granted to lender debtors the precise protections requested by PBGC here. *See In re Enron Corp., et al.,* Chapter 11 Case No. 01-16034 (AJG) - Amended Order Authorizing Continued Use of Existing Bank Accounts, Cash Management System, Checks and Business Forms, and Granting Inter-Company Superpriority Claims, Pursuant to 11 U.S.C. §§ 361, 363(e), 364 and 507(b), as Adequate Protection, dated February 25, 2002, at 5, ¶ 5 (a copy of which is annexed hereto as Exhibit A); *see also In re Delta Air Lines Inc., et al.,* Chapter 11 Case No. 05-17923 (PCB) - Order (i) Authorizing Debtors (a) to Obtain Postpetition Credit Facilities Pursuant to Sections 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of the Bankruptcy Code and (b) to Utilize Cash Collateral Pursuant to Section 363 of the Bankruptcy Code, and (ii) Granting Adequate Protection to Prepetition Secured Parties Pursuant to Sections 361, 362, 363 and 364 of the Bankruptcy Code, dated October 6, 2005, at 41-42, ¶¶ 41-43 (a copy of which is annexed hereto as Exhibit B).

12. Both the *Enron* Court and the *Delta* Court recognized that postpetition financing provided to a debtor by an affiliate must be accompanied by the same protections customarily accorded to any debtor in possession lender. Accordingly, this Court similarly should require the Debtors to modify the Proposed DIP Order and/or the Cash Management

5

Order to incorporate the provisions cited above in the *Enron* and *Delta* Orders granting to lender debtors junior liens and junior superpriority administrative claims to the extent of intercompany advances.

        13.    Preserving and protecting the assets of each of the Debtors is particularly critical to PBGC. PBGC likely is the largest creditor of the Debtors' estates and has a claim against each of the Debtors (and each non-Debtor member of the Debtors' controlled group). Permitting the Debtors to prop up the estate of a borrower debtor with the assets of a lender debtor jeopardizes the ultimate recovery that unsecured creditors, such as PBGC, can obtain from the estate of such a lender debtor. It would be unfair to place the risks associated with this intercompany lending on PBGC and similarly situated unsecured creditors, particularly where the Debtors will suffer no prejudice whatsoever if this Court grants the modifications requested by PBGC. Finally, absent the protections sought by PBGC, the Debtors would begin moving toward substantive consolidation of their estates, which simply is not justified at this time.

## **Notice**

        14.    In accordance with the Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(M), 9006, 9007, and 9014 Establishing (i) Omnibus Hearing Dates, (ii) Certain Notice, Case Management, and Administrative Procedures, and (iii) Scheduling an Initial Case Conference in Accordance With Local Bankr. R. 1007-2(E), dated October 14, 2005, notice of the Objection has been provided via overnight mail, courier, or hand delivery to: (a) the Debtors and their counsel, (b) the Office of the United States Trustee, (c) counsel to the Committee, (d) counsel for the agent under the Debtors' prepetition credit facility, and (e) counsel for the agent under the Debtors' proposed postpetition facility.

**Memorandum of Law**

15.  PBGC respectfully requests that this Court waive and dispense with the requirement, pursuant to Local Bankr. R. 9013-1(b), that PBGC serve and file a memorandum of law in connection with the Objection.

WHEREFORE, PBGC respectfully requests that this Court (i) modify the Proposed DIP Order and the Cash Management Order as requested by PBGC herein and (ii) grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
      October 20, 2005

Respectfully submitted,

*/s/ Mark R. Somerstein*
Jeffrey B. Cohen, Chief Counsel
Israel Goldowitz, Deputy Chief Counsel
Karen L. Morris, Assistant Chief Counsel
Ralph L. Landy, Attorney
Beth A. Bangert, Attorney
PENSION BENEFIT GUARANTY
CORPORATION
Office of the Chief Counsel
1200 K Street, NW, Suite 340
Washington, D.C. 20005-4026
202-326-4020
202-326-4112 (facsimile)

- and -

Merrill B. Stone (MS-0009)
Mark I. Bane (MB-4883)
Mark R. Somerstein (MS-9721)
KELLEY DRYE & WARREN LLP
101 Park Avenue
New York, New York 10178
212-808-7800
212-808-7897 (facsimile)

Counsel to Pension Benefit Guaranty Corporation