# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |
|---|---|
| In re: | : |
|  | : **Chapter 11 Case No.** |
|  | : |
| **DELTA AIR LINES, INC., et al.,** | : **05-17923 (PCB)** |
|  | : |
|  | : **(Jointly Administered)** |
| **Debtors.** | : |
|  | : |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER (I) AUTHORIZING DEBTORS (A) TO OBTAIN POSTPETITION CREDIT FACILITIES PURSUANT TO SECTIONS 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) AND 364(e) OF THE BANKRUPTCY CODE AND (B) TO UTILIZE CASH COLLATERAL PURSUANT TO SECTION 363 OF THE BANKRUPTCY CODE, AND (II) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES PURSUANT TO SECTIONS 361, 362, 363 AND 364 OF THE BANKRUPTCY CODE

Upon the motion dated September 15, 2005 (the "**Motion**") of Delta Air Lines, Inc. (the

"**Borrower**") and certain of its direct and indirect subsidiaries, as debtors and debtors in

possession (the "**Guarantors**", and, together with the Borrower, the "**Debtors**"[1]), pursuant to

sections 361, 362, 363 and 364 of title 11 of the United States Code, 11 U.S.C. §§101, et seq.

(the "**Bankruptcy Code**") and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy

Procedure (the "**Bankruptcy Rules**") for the entry of orders authorizing the Debtors to:

        i.      obtain post-petition financing in an amount up to $1.9 billion (the

"**Postpetition GECC Credit Facility**"), pursuant to section 364 of the Bankruptcy Code by

entering into that certain Secured Super-Priority Debtor-In-Possession Credit Agreement, in

---

[1] The Debtors are the following entities: ASA Holdings, Inc.; Comair Holdings, LLC; Comair, Inc.; Comair Services, Inc.; Crown Rooms, Inc.; DAL Aircraft Trading, Inc.; DAL Global Services, LLC; DAL Moscow, Inc.; Delta AirElite Business Jets, Inc.; Delta Air Lines, Inc.; Delta Benefits Management, Inc.; Delta Connection Academy, Inc.; Delta Corporate Identity, Inc.; Delta Loyalty Management Services, LLC; Delta Technology, LLC; Delta Ventures III, LLC; Epsilon Trading, Inc.; Kappa Capital Management, Inc.; and Song, LLC.

substantially the form attached to the Motion, as the same may be amended, supplemented or

otherwise modified from time to time (the "**Postpetition GECC Credit Agreement**")[2] and the

related loan and security documents (together with the Postpetition GECC Credit Agreement, the

"**Postpetition GECC Loan Documents**") among the Borrower, the Guarantors, General Electric

Capital Corporation ("**GECC**"), acting as administrative agent and collateral agent (in such

capacities, the "**Administrative Agent**"), for itself and a syndicate of financial institutions

(together with GECC and including the issuing banks for the letters of credit, the "**DIP

Lenders**"), to be arranged by GE Capital Markets, Inc. and Morgan Stanley Senior Funding, Inc.

(in the latter case, as joint lead arranger for the Term Loan C), on the terms and subject to the

conditions set forth therein; and for the Guarantors to guarantee the payment of Borrower's

obligations under the Postpetition GECC Credit Agreement and under this Order, including,

without limitation, principal, accrued interest, unpaid fees and expenses, and all other amounts

due from time to time under the Postpetition GECC Loan Documents;

　　　　ii.　　　obtain post-petition financing in the amount of $350 million from

American Express Travel Related Services Company, Inc. ("**Amex**") (the "**Postpetition Amex

Credit Facility**" and, together with the Postpetition GECC Credit Facility, the "**Postpetition

Credit Facilities**") pursuant to section 364 of the Bankruptcy Code by entering into the

Modification Agreement (which shall incorporate terms of the existing Advance Payment

Supplements (as hereinafter defined) and any amendments thereto), in substantially the form

attached to the Assumption Motion filed on September 15, 2005 (the "**Postpetition Amex

Credit Agreement**" and, together with the Postpetition GECC Credit Agreement, the

---

[2] Unless otherwise defined herein, all capitalized terms used herein have the meanings ascribed to such terms in the Postpetition GECC Credit Agreement or, to the extent not defined therein, in the Postpetition Amex Credit Agreement.

"**Postpetition Credit Agreements**"), and any related loan and security documents (together with the Postpetition Amex Credit Agreement, the "**Postpetition Amex Loan Documents**" and, together with the Postpetition GECC Loan Documents, the "**Postpetition Loan Documents**");

iii.    execute, deliver and enter into the Postpetition Loan Documents, and to perform such other and further acts as may be necessary, required or desirable in connection therewith;

iv.    grant mortgages, security interests, liens and superpriority claims to the Administrative Agent, acting on behalf of and for the benefit of itself and the DIP Lenders, and to Amex (including a priority pursuant to section 364(c)(1) of the Bankruptcy Code, liens pursuant to sections 364(c)(2) and (3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code, where applicable), to secure amounts owing under the Postpetition Loan Documents;

v.    utilize the proceeds of the first borrowing under the Postpetition GECC Credit Facility to fund, among other things, (A) ongoing working capital needs of the Debtors, (B) the full and complete repayment and retirement of the obligations (and release of corresponding liens and security interests) arising under or related to (1) the Prepetition GECC Loan Documents (as defined below) and (2) the Advance Payments arising under the Prepetition SkyMiles Loan Documents (both as defined below); (C) pay fees and expenses (including, without limitation, reasonable attorneys' fees and expenses) due and payable under the Postpetition Loan Documents; and (D) for general corporate purposes of the Debtors;

vi.    use cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code (as so defined, "**Cash Collateral**"); and

3

vii.    grant adequate protection to Amex in respect of its interests in the

Prepetition Collateral (as hereinafter defined) that secure obligations under the Prepetition Amex

Card Agreements; and the Court having considered the Motion and the Postpetition Credit

Agreements and, in accordance with Bankruptcy Rule 4001(c), requisite notice of the Motion

having been provided to (i) the Office of the United States Trustee for the Southern District of

New York, (ii) counsel to the Debtors' prepetition and proposed postpetition secured lenders,

(iii) those creditors holding the five largest secured claims against the Debtors' estates, and (iv)

those creditors holding the thirty largest unsecured claims against the Debtors' estates; an interim

hearing to consider the interim relief requested in the Motion having been held by the Court on

September 16, 2005 (the **"Interim Hearing"**) and the Court having issued and entered an

interim order dated September 16, 2005 (the "**Interim Order**") (i) authorizing the Borrower to

(a) borrow money and obtain letters of credit pursuant to the Postpetition GECC Credit Facility

up to an aggregate principal or face amount of $1.4 billion (plus interest, fees and other expenses

provided for in the Postpetition GECC Loan Documents) and (b) borrow money pursuant to the

Postpetition Amex Credit Facility up to an aggregate principal amount of $350 million (plus

interest and other expenses provided for in the Postpetition Amex Loan Documents), (ii)

authorizing the Debtors to use Cash Collateral, (iii) granting adequate protection to Amex in

respect of its interests in the Prepetition Collateral that secure obligations under the Prepetition

Amex Card Agreements and (iv) scheduling a final hearing (the **"Final Hearing"**) to consider

entry of a final order authorizing borrowings and letter of credit issuances under the Postpetition

Loan Documents and certain other relief, all as set forth in the Motion and the Postpetition Loan

Documents, and upon consideration of the evidence presented or proffered at the Interim Hearing

and at the Final Hearing held on October 6, 2005, and all objections, if any, to the final relief

4

requested in the Motion having been withdrawn, resolved or overruled by the Court, and after

due deliberation and consideration and good and sufficient cause appearing therefor;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    On September 14, 2005, each of the Debtors filed separate voluntary

petitions under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the

Southern District of New York, commencing these bankruptcy cases (the "**Cases**").

B.    The Debtors have continued in the management and operation of their

businesses and property as debtors-in-possession pursuant to sections 1107 and 1108 of the

Bankruptcy Code.  No trustee or examiner has been appointed in these cases.  On September 28,

2005, the United States Trustee appointed an official committee of unsecured creditors (the

"**Creditors' Committee**") in these Cases.

C.    This Court has core jurisdiction over the Cases, this Motion, and the

parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Venue is proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

D.    Under the circumstances, the notice given by the Debtors of the Motion,

the Interim Hearing and the Final Hearing constitutes due and sufficient notice thereof and

complies with Bankruptcy Rules 4001(b) and (c).

E.    Without prejudice to the rights of any other party (but subject to the

limitations thereon contained in paragraph 35 below), the Debtors admit, stipulate and agree that:

(i)    In November 2004, the Borrower, the other credit parties signatory

thereto, the lenders signatory thereto from time to time (referred to as the

"**Prepetition Lenders**"), GECC, as Revolving Facility Administrative Agent,

Term Loan Administrative Agent and Collateral Agent (in such capacities, the

5

"**Prepetition Agent**"), GECC Capital Markets Group, Inc,. as Lead Arranger and Book Runner, Merrill Lynch Capital, as Syndication Agent, and Congress Financial Corporation, as Documentation Agent (collectively, and together with the Prepetition Agent, the "**Prepetition Arrangers**"), entered into the Credit Agreement, dated as of November 30, 2004 (as heretofore amended, supplemented or otherwise modified, the "**Prepetition GECC Credit Agreement**" and, together with related loan and security documents, the "**Prepetition GECC Loan Documents**").

(ii)    As of the Petition Date, the Borrower and Amex are parties to (i) the Delta American Express Co-Branded Credit Card Program Agreement, dated as of January 1, 2001, among Amex, the Borrower and Delta Loyalty Management Services, LLC ("**DLMS**") (as heretofore amended, supplemented or otherwise modified, the "**Co-Brand Agreement**"), (ii) the Membership Rewards Agreement, dated as of January 1, 2001, among Amex, the Borrower and DLMS (as heretofore amended, supplemented or otherwise modified, the "**Membership Rewards Agreement**"), both (i) and (ii) as modified by the Advance Payment Supplements (defined below); and (iii) the Airline Card Service Agreement, dated as of January 1, 2001, between Amex and the Borrower (the "**Card Service Agreement**") (collectively (i)-(iii) herein referred to as the "**Prepetition Amex Card Agreements**").

(iii)    In November 2004, Amex, the Borrower and DLMS entered into the Advance Payment Supplements to the Delta® American Express® Co-Branded Credit Card Program Agreement and the Membership Rewards

6

Agreement, both dated November 30, 2004 (the "**Advance Payment Supplements**" and together with all related loan and security documents, the "**Prepetition Skymiles Loan Documents**" and together with the Prepetition GECC Loan Documents, the "**Prepetition Loan Documents**"), whereby Amex paid $500 million (the "**Advance Payments**") to Borrower as an advance payment for the purchase of SkyMiles, for Amex's future use, with respect to Delta SkyMiles Credit Cards and with respect to Amex's Membership Rewards Program. Pursuant to the Prepetition SkyMiles Loan Documents, Borrower, DLMS and certain other Debtors granted to Amex liens, offset rights, recoupment rights, rights of reserve and security interests in certain of their assets as security for their obligations to Amex under the Prepetition SkyMiles Loan Documents and the Prepetition Amex Card Agreements.

(iv)    The obligations under the Prepetition Loan Documents and the Prepetition Amex Card Agreements are secured by security interests in and liens on all of the Collateral (as defined in the Prepetition GECC Credit Agreement) (the "**Prepetition Collateral**").

(v)    The Prepetition Collateral is comprised of the SkyMiles Collateral and the Credit Facility Collateral. The "SkyMiles Collateral" is comprised, excluding certain specified assets, of (a) substantially all of the assets of DLMS related to the Co-Brand Agreement and the Membership Rewards Agreement or the Delta SkyMiles® program, including without limitation payment intangibles and rights under the Co-Brand Agreement and the Membership Rewards Agreement, and (b) all right, title and interest of Delta in the Co-Brand

7

Agreement and the Membership Rewards Agreement and the Card Service

Agreement (collectively, with the proceeds thereof, the "**SkyMiles Collateral**").

The "Credit Facility Collateral" is comprised of substantially all of the Debtors'

assets other than (i) the SkyMiles Collateral, (ii) assets that were encumbered as

of November 30, 2004 and (iii) other specified excluded assets (collectively, the

"**Credit Facility Collateral**").

(vi)    Pursuant to the Intercreditor Agreement by and between Amex and

GECC, dated as of November 30, 2004 (the "**Intercreditor Agreement**"), Amex

has senior and prior lien priority in the SkyMiles Collateral, and the Prepetition

Agent, on behalf of the Prepetition Lenders, has junior and subordinate lien

priority in the SkyMiles Collateral.

(vii)    Pursuant to the Intercreditor Agreement, the Prepetition Agent, on

behalf of the Prepetition Lenders, has senior and prior lien priority in the Credit

Facility Collateral, and Amex has junior and subordinate lien priority in the Credit

Facility Collateral.

(viii)    As of the Petition Date, the Borrower was indebted and liable,

without defense, counterclaim or offset of any kind, to (A) the Prepetition Lenders

in the aggregate principal amount of approximately $480 million under the

Prepetition GECC Loan Documents and (B) Amex in the aggregate principal

amount of approximately $500 million under the Prepetition SkyMiles Loan

Documents,[3] plus, in each case, interest thereon and fees, expenses (including any

---

[3] The Borrower also has certain contingent obligations with respect to the Card Service Agreement and other obligations under other agreements with Amex.

attorneys', accountants', appraisers' and financial advisors' fees that are

chargeable or reimbursable under the Prepetition Loan Documents), charges and

other obligations incurred in connection therewith as provided in the Prepetition

Loan Documents (collectively, the "**Prepetition Debt**").

(ix)     The Prepetition Debt constitutes the legal, valid and binding

obligation of the Debtors party to the Prepetition Loan Documents, enforceable in

accordance with its terms (other than in respect of the stay of enforcement arising

from section 362 of the Bankruptcy Code); no portion of the Prepetition Debt is

subject to avoidance, recharacterization, recovery or subordination pursuant to the

Bankruptcy Code or applicable nonbankruptcy law; the Debtors do not have, and

hereby forever release, any claims, counterclaims, causes of action, defenses or

setoff rights, whether arising under the Bankruptcy Code or otherwise, relating in

any way to the Prepetition Credit Facilities or the enforcement of rights or

exercise of remedies in connection therewith, against the Prepetition Lenders, the

Prepetition Agent, the Prepetition Arrangers, Amex and their respective affiliates,

agents, officers, directors, employees and attorneys.

(x)     The liens and security interests granted to the Prepetition Lenders

and Amex pursuant to and in connection with the Prepetition Loan Documents

and the Prepetition Amex Card Agreements (including, without limitation, in each

case, all security agreements, pledge agreements, mortgages, deeds of trust and

other security documents executed by any of the Debtors in favor of the

Prepetition Lenders and Amex) were, immediately prior to the repayment of the

Prepetition Debt and concurrent release of the liens securing such Prepetition

9

Debt all in accordance with the Interim Order, and the liens and security interests

granted to Amex pursuant to and in connection with the Prepetition Amex Card

Agreements (including, without limitation, in each case, all security agreements,

pledge agreements, mortgages, deeds of trust and other security documents

executed by any of the Debtors in favor of the Prepetition Lenders and Amex) are

(a) valid, binding, perfected, enforceable, liens and security interests in the

Prepetition Collateral (as described above) (b) not subject to avoidance,

recharacterization or subordination pursuant to the Bankruptcy Code or applicable

nonbankruptcy law and (c) in the case of the liens and security interests granted to

Amex in connection with the Prepetition Amex Card Agreements and as

consented to by Amex, subject and subordinate only to (1) the DIP Liens (as

defined below), (2) the Carve Out (as defined below) to which the DIP Liens are

subject and (3) valid, perfected and unavoidable liens permitted under the

Prepetition Loan Documents.

      (xi)    The aggregate value of the Prepetition Collateral exceeds the

aggregate amount of the Prepetition Debt.

      F.    Good cause has been shown for the entry of this Order.

      G.    The Debtors need to obtain the Postpetition Credit Facilities and use Cash

Collateral in order to permit, among other things, the orderly continuation of the operation of

their businesses, to maintain business relationships with vendors, suppliers and customers, to

make payroll, to make capital expenditures and to satisfy other working capital and operational

needs, to fund, among other things, their obligations under Section 1110 Agreements (as defined

below), and to refinance the Prepetition Loan Documents.  The access of the Debtors to

10

sufficient working capital and liquidity through the use of Cash Collateral, incurrence of new

indebtedness for borrowed money and other financial accommodations is vital to the

preservation and maintenance of the going concern values of the Debtors and to a successful

reorganization of the Debtors. If the Debtors do not obtain authorization to borrow under the

Postpetition Credit Agreements, the Debtors will suffer irreparable harm. Such harm could

include the loss of use of the Section 1110 Assets, which could substantially impair the Debtors'

operations.

        H.     The Debtors are unable to obtain Postpetition Credit Facilities on more

favorable terms from sources other than the DIP Lenders under the Postpetition GECC Loan

Documents and Amex under the Postpetition Amex Loan Documents and are unable to obtain

adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an

administrative expense. The Debtors are also unable to obtain adequate secured credit allowable

under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors

granting (a) to the Administrative Agent, the DIP Lenders and Amex, subject to the Carve Out as

provided for herein, the DIP Liens (as defined below) and the Superpriority Claims (as defined

below) under the terms and conditions set forth in this Order and in the Postpetition Loan

Documents, and (b) repaying and retiring the Prepetition Debt (and obtaining the release of

associated liens and security interests in the Prepetition Collateral) on the Closing Date and upon

the initial funding under the Postpetition Credit Facilities.

        I.     Pursuant to the GECC Postpetition Loan Documents, GECC and Morgan

Stanley Senior Funding, Inc. committed to exercise best efforts to procure an additional $200

million in postpetition financing commitments, which additional commitments likely will be

obtained. Therefore, the amount of the Postpetition GECC Credit Facility is likely to increase to $1.9 billion.

        J.      Notwithstanding any rights it might otherwise have under the Bankruptcy Code, Bankruptcy Rules, applicable non-bankruptcy law or contract, Amex is willing to consent to the subordination of its junior and subordinate interests in the Credit Facility Collateral to a Postpetition GECC Credit Facility of not more than $1.9 billion, only upon, among other things, the terms of this Final Order and the unconditional assumption of the Prepetition Amex Card Agreements (in addition to other agreements between the Debtors and Amex), each to the extent amended by the Modification Agreement (the "**Amex Assumed Agreements**"). In consenting to such subordination, Amex is acting in specific and material reliance upon the Court's entry of such an assumption order. The Debtors' ability to obtain the Postpetition GECC Credit Facility is facilitated by Amex's consent to subordinate its junior and subordinate interests in the Credit Facility Collateral. Amex's consent to subordinate its interest in the Credit Facility Collateral in favor of the Postpetition GECC Credit Facility in an amount not to exceed $1.9 billion avoids the cost, uncertainty and serious risk to the estates of litigation before the Court with respect to "priming", valuation and adequate protection under section 364(d) of the Bankruptcy Code and enhances the Debtors' reorganization prospects at the critical early stage of the Cases. Amex's consent with respect to the Credit Facility Collateral and the Non-SkyMiles Collateral (defined below) does not and shall not prejudice, impair, contravene or affect Amex's interests in the SkyMiles Collateral and/or Amex's contractual, common law, equitable, legal and/or other rights of recoupment, setoff and/or counterclaim, the right to create reserves with respect to such rights and/or reserves created with respect to such rights, with respect to the indebtedness and/or

12

obligations of the Debtors to Amex arising under the Amex Assumed Agreements, except as
specifically set forth in this Order, including paragraph 27 hereof.

        K.     The terms of the Postpetition Credit Facilities and the use of Cash
Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment
consistent with their fiduciary duties and constitute reasonably equivalent value and fair
consideration.

        L.     The Postpetition Credit Facilities have been negotiated in good faith and at
arm's length between the Debtors, the Administrative Agent, the DIP Lenders and Amex, as
applicable, and all of the Debtors' obligations and indebtedness arising under, in respect of or in
connection with the Postpetition Credit Facilities and the Postpetition Loan Documents,
including without limitation, (i) all loans made to, and all letters of credit issued for the account
of, the Debtors pursuant to the Postpetition Credit Agreements, and (ii) any "Obligations" (as
defined in the Postpetition Credit Agreements) (all of the foregoing collectively, the "**DIP
Obligations**"), shall be deemed to have been extended by the Administrative Agent, the DIP
Lenders and Amex, as applicable, and their affiliates in good faith, as that term is used in section
364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section
364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the
Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or
modified, on appeal or otherwise.

        M.     Absent granting the relief sought by this Order, the Debtors' estates will
be immediately and irreparably harmed. Consummation of the Postpetition Credit Facilities and
the use of Cash Collateral in accordance with this Order and the Postpetition Loan Documents is
therefore in the best interest of the Debtors' estates.

Based on the foregoing, and upon the record made before this Court at the Interim

Hearing and at the Final Hearing, and good and sufficient cause appearing therefor,

### IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.    The Motion is granted, as set forth herein.

Authorization of the Postpetition Credit Facilities and the Postpetition Loan Documents.

2.    The Borrower is hereby authorized to borrow money and obtain letters of

credit pursuant to the Postpetition GECC Credit Facility, and the Guarantors are hereby

authorized to guaranty such borrowings and the Borrower's obligations with respect to letters of

credit, up to an aggregate principal or face amount of $1.9 billion (plus interest, fees and other

expenses provided for in the Postpetition GECC Loan Documents), inclusive of amounts

borrowed and letters of credit obtained under the Postpetition GECC Loan Documents pursuant

to the Interim Order, in accordance with the terms of this Order and the Postpetition GECC Loan

Documents, which shall be used for all purposes permitted under such loan documents,

including, without limitation, to provide working capital for the Debtors, to repay the Prepetition

Debt, to repay $50 million of the Postpetition Amex Credit Facility, and to pay interest, fees and

expenses in accordance with this Order and the Postpetition GECC Loan Documents.  In

addition to such loans and obligations, the Debtors are authorized to incur overdrafts and related

liabilities arising from treasury, depository and cash management services including any

automated clearing house fund transfers provided to or for the benefit of the Debtors by the DIP

Lenders; *provided, however*, that nothing herein shall require the DIP Lenders or any other party

to incur overdrafts or to provide any such services or functions to the Debtors.  In the event the

Postpetition GECC Credit Facility is increased to $1.9 billion, upon drawing the remaining $500

million under the Postpetition GECC Credit Facility, the Debtors are authorized to repay $50

million of the Postpetition Amex Credit Facility in order to reduce the principal amount of such

facility to $300 million.

      3.     Amex is hereby authorized to maintain the "Special Holdback" (as defined

in the Modification Agreement) pursuant to the Modification Agreement, subject to the terms

and conditions thereof.

      4.     The terms, conditions and covenants of the Postpetition Credit

Agreements and the other Postpetition Loan Documents are hereby approved.

      5.     In furtherance of the foregoing and without further approval of this Court,

each Debtor is authorized and directed to perform all acts, to make, execute and deliver all

instruments and documents (including, without limitation, the execution or recordation of

security agreements, mortgages and financing statements), and to pay all fees, that may be

reasonably required or necessary for the Debtors' performance of their obligations under the

Postpetition Loan Documents, including, without limitation:

      i.     the execution, delivery and performance of the Postpetition

Amex Credit Agreement, the Postpetition GECC Credit Agreement and the other Postpetition

Loan Documents and any exhibits attached thereto, including, without limitation, the Collateral

Documents, and the mortgages contemplated thereby;

      ii.     the execution, delivery and performance of one or more

amendments to the Postpetition GECC Credit Agreement for, among other things, the purpose of

adding additional financial institutions as DIP Lenders and reallocating the commitments for the

Postpetition GECC Credit Facility among the DIP Lenders, in each case in such form as the

Debtors and the Administrative Agent may agree;

15

iii.         the payment of the fees referred to in the Postpetition GECC

Credit Agreement (and in the separate letter agreements entered into in connection therewith),

and reasonable costs and expenses as may be due from time to time, including, without

limitation, fees and expenses of the professionals retained as provided for in the Postpetition

GECC Loan Documents (with reasonable supporting detail, which the Debtors shall supply to

the Creditors' Committee upon request); and

iv.         the performance of all other acts required under or in

connection with the Postpetition Loan Documents.

6.         Upon execution and delivery of each Postpetition Loan Document, each

Postpetition Loan Document shall constitute valid and binding obligations of the Debtors,

enforceable against each Debtor party thereto in accordance with their terms.  No obligation,

payment, transfer or grant of security under the Postpetition Loan Documents or this Order shall

be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any

applicable law (including without limitation, under section 502(d) of the Bankruptcy Code), or

subject to any defense, reduction, setoff, recoupment or counterclaim.

7.         The proceeds from the Postpetition Credit Facilities, net of amounts used

to repay in full the obligations under the Prepetition GECC Credit Agreement and the Advance

Payment Supplements, shall be used to fund the ongoing working capital needs of the Debtors, to

pay fees and expenses due and payable under the Postpetition Loan Documents and for general

corporate purposes.  The liens which secure the obligations under the Prepetition GECC Credit

Agreement and the Prepetition SkyMiles Credit Agreement are deemed and hereby are released,

effective as of the date that such obligations are repaid and replaced with the liens granted or

recognized under the Interim Order.

16

8.      Any obligations under the Prepetition Loan Documents that are not indefeasibly paid in full pursuant to the Interim Order (including without limitation, contingent indemnity obligations as to which no claim has been asserted) shall, subject to paragraph 35 hereof, be additional obligations under the Postpetition Loan Documents and the Administrative Agent, the DIP Lenders and Amex are entitled to all protections thereunder with respect to such additional obligations.

Superpriority Claims.

9.      Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations (as defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "**Superpriority Claims**"), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall be payable from and have recourse to all pre- and postpetition property of the Debtors and all proceeds thereof, subject only to the payment of the Carve Out to the extent specifically provided for herein, *provided, however, that* the Superpriority Claims of the DIP Lenders arising under the Postpetition GECC Loan Documents shall have priority over the Superpriority Claims of Amex arising under the Postpetition Amex Loan Documents.

17

10.    For purposes hereof, the "**Carve Out**" means (i) all fees required to be

paid to the Clerk of the Bankruptcy Court and to the Office of the United States Trustee under

section 1930(a) of title 28 of the United States Code, (ii) all fees and expenses incurred by any

trustee under section 726(b) of the Bankruptcy Code and (iii) after the occurrence and during the

continuance of an Event of Default (as defined in the Postpetition GECC Credit Agreement), the

aggregate allowed unpaid fees and expenses payable under sections 330 and 331 of the

Bankruptcy Code of professional persons retained and committee members appointed pursuant

to an order of the Bankruptcy Court by any Debtor or any statutory committees appointed in the

Cases (each, a "**Committee**"), in an amount not to exceed $35,000,000 (plus all unpaid

professional fees and disbursements accrued or incurred prior to the occurrence of an Event of

Default and reflected on the most recent borrowing base certificate delivered pursuant to the

Postpetition GECC Credit Agreement and reserved against the "Term A Borrowing Base" as

defined in the Postpetition GECC Credit Agreement, or otherwise reported in writing to the

Administrative Agent (which condition shall  be deemed satisfied by the Administrative Agent's

receipt of the monthly invoices of retained professionals for fees and expenses that have been

accrued or incurred before an Event of Default), to the extent allowed by the Bankruptcy Court

at any time), which amount may be used subject to the terms of this Order, including, without

limitation, paragraph 36 hereof, *provided, further,* that (a) as long as no Event of Default shall

have occurred and be continuing, the Debtors shall be permitted to pay compensation and

reimbursement of expenses allowed and payable under any order entered in these Cases

establishing procedures for interim monthly compensation and reimbursement of expenses of

professionals, or sections 330 and 331 of the Bankruptcy Code, as the same may be due and

payable, and the same shall not reduce the Carve Out and (b) in the event the Carve Out is

18

reduced by any amount during an Event of Default, upon the effectiveness of any cure or waiver

of such Event of Default pursuant to the terms of the Postpetition GECC Credit Agreement, the

Carve Out shall be increased by such amount.

<u>Grant of DIP Liens</u>.

    11. As security for the DIP Obligations, effective and perfected upon the date

of the Interim Order and without the necessity of the execution, recordation or filing by the

Debtors of mortgages, security agreements, control agreements, pledge agreements, financing

statements or other similar documents, the following security interests and liens were by the

Interim Order and hereby are granted to the Administrative Agent for its own benefit and the

benefit of the DIP Lenders subject to the Carve Out (all such liens and security interests granted

to the Administrative Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to

the Interim Order and this Order and the Postpetition Loan Documents, the "**Postpetition GECC**

**Liens**"):

    i. <u>First Lien on Unencumbered Property</u>.  Pursuant to section

364(c)(2) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first

priority senior security interest in and lien upon or pledge of (subject to the Carve Out) all pre-

and postpetition property of the Debtors, including, all of the following property, in each case to

the extent not subject to valid, perfected, nonavoidable and enforceable liens in existence as of

the Petition Date (or valid liens in existence as of the Petition Date that are perfected subsequent

to such date to the extent permitted by section 546(b) of the Bankruptcy Code): (i) a first priority

perfected pledge of notes and capital stock, and (ii) all other assets owned by the Borrower and

the Guarantors, including, without limitation, (a) all Prepetition Collateral, all of the Debtors'

existing and after acquired accounts, deposit accounts, concentration accounts, disbursement

19

accounts, and all other bank accounts and all deposits therein, money, cash or cash equivalents,

supporting obligations, general intangibles relating to the foregoing and other rights to payments

not otherwise included in the foregoing and all proceeds of the foregoing, and (b) all of the

Debtors' existing and after acquired real and personal, tangible and intangible, assets, including,

without limitation, chattel paper, documents, general intangibles including payment intangibles,

aircraft, all instruments, investments, all investment property, securities (whether or not

marketable), owned real estate, material leased real property, inventory, fixtures, franchise rights,

patents, tradenames, trademarks, copyrights and other intellectual property, flight simulators,

routes, slots, spare parts, airport gate leaseholds and licenses related thereto ("Gate Leaseholds,"

it being understood that the grant of any lien or security interest to the DIP Lenders herein with

respect to any Gate Leasehold is effective only to the extent permitted by law, but that, in any

event such lien or security interest shall extend to the proceeds of any disposition of such Gate

Leaseholds), technology equipment, ground service equipment, other furniture and equipment,

all commercial tort claims, contract rights, working capital distributions, the L/C Cash Collateral

Account, the Cash Collateral Account and, to the extent not otherwise included, all proceeds, tort

claims, insurance claims and other rights to payments not otherwise included in the foregoing

and products of the foregoing and all accessions to, substitutions and replacements for each of

the foregoing (including, without limitation, all rights to proceeds of the disposition of the

Section 1110 Assets and Section 1110 Agreements (both as defined below) after the payment in

full of any Debtors' obligations related to such Section 1110 Assets and Section 1110

Agreements as required pursuant to section 1110 of the Bankruptcy Code), in each case,

excluding the Excluded Assets (collectively, the "**Postpetition Collateral**"). "**Excluded Assets**"

means: (1) Section 1110 Assets (but only to the extent that the Debtors are prohibited under the

applicable Section 1110 Agreement from granting liens on such Section 1110 Assets) and related

exclusions as provided in paragraph 15-17 of this Order, (2) Debtors' claims and causes of action

under sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other

avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**") and any

proceeds or property recovered, unencumbered or otherwise the subject of successful Avoidance

Actions ("**Avoidance Proceeds**"), provided, however that any proceeds or property recovered,

unencumbered or otherwise the subject of successful Avoidance Actions shall be available to

repay the DIP Obligations, (3) funds held in the "Excluded Accounts," as defined in the

Postpetition Loan Documents, (4) the other exclusions to "Collateral," as defined in the

Postpetition Loan Documents, (5) cash being held by the Debtors for the purpose of providing

for payment of taxes, government charges and employee-related taxes and charges (the "**Trust

Funds**"),[4] (6) any asset subject to the restrictions on liens set forth in Section 5.12(b) of the

---

[4] For the avoidance of doubt, Trust Funds, as used in this Order, include (a) federal income tax withholding and backup withholding tax, employment taxes, transportation excise taxes and security related charges, including (i) federal payroll withholding taxes, as described in Sections 3101, 3111 and 3402 of the Internal Revenue Code; (ii) federal Unemployment Tax Act taxes, as described in Chapter 23 of Subtitle C of the Internal Revenue Code; (iii) federal air transportation excise taxes, as described in Sections 4261 and 4271 of the Internal Revenue Code; (iv) federal security charges, as described in Title 49 of the Code of Federal Regulations of 2002 (referred to in this definition as the "CFR"), Chapter XII, Part 1510; (v) federal Animal and Plant Health Inspection Service of the United States Department of Agriculture user fees, as described in 21 U.S.C. § 136a (2002) and 7 CFR § 354.3; (vi) federal Immigration and Naturalization Service (INS) fees, as described in 8 CFR Part 286; (vii) federal customs taxes as described in 19 U.S.C. § 58c; and (viii) federal jet fuel taxes as described in Sections 4091 and 4092 of the Internal Revenue Code collected on behalf of and owed to the federal government, (b) any and all state and local income tax withholding, employment taxes and related charges and fees and similar taxes, charges and fees, including, but not limited to, state and local payroll withholding taxes, unemployment and supplemental unemployment taxes, disability taxes, workman's or workers' compensation charges and related charges and fees that are analogous to those described in Subtitle C of the Internal Revenue Code and that are described in or are analogous to Chapter 23 of Title 19 Delaware Code Annotated (2002) (referred to in this definition as "D.C.A.") collected on behalf of and owed to state and local authorities, agencies and entities, (c) Passenger Facility Fees and Charges as described in 49 U.S.C. § 40117 (2002) and Title 14 of the CFR, Subchapter 1, Part 158 collected on behalf of and owed to various administrators, institutions, authorities, agencies and entities and (d) voluntary and/or other non-statutory required employee payroll deductions, whether authorized by the employee, imposed by court order, agreed to pursuant to collective bargaining arrangement or otherwise, including (i) employee contributions made for the purpose of participating in any employer-sponsored retirement plan as described and defined in Section 401(k) of the Internal Revenue Code (including repayment of any 401(k) related loans made to the employee but excluding any funds matched and/or contributed by the employer on behalf of any employee), (ii) employee payments made for the purpose of participating in any employer-sponsored medical, dental or related health plan, (...continued)

Postpetition GECC Credit Agreement, and (7) any asset excluded as Collateral in the Slot, Gate

and Route Security and Pledge Agreement from Borrower in favor of the Administrative Agent

for the benefit of the DIP Lenders (other than any proceeds thereof that any DIP Lender is

entitled to receive) and, to the extent the Administrative Agent has otherwise consented in

writing, in any other Postpetition Loan Documents;

           ii.                 <u>Liens Priming Amex</u>.  Pursuant to section 364(d)(1) of the

Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior

priming security interest in and lien upon the Postpetition Collateral securing the obligations

under the Prepetition Amex Card Agreements subject and subordinate only to (i) the Carve Out,

(ii) any valid, perfected and nonavoidable liens of third parties having priority over the

prepetition liens and security interests of the Administrative Agent, the DIP Lenders and/or

Amex in the Prepetition Collateral, (iii) any existing liens of or granted to Amex in the SkyMiles

Collateral in connection with the Postpetition Amex Credit Facility and/or the Prepetition Amex

Card Agreements and (iv) Amex's contractual, common law, equitable, legal and/or other rights

of recoupment, setoff and/or counterclaim, the right to create reserves with respect to such rights

and/or reserves created with respect to such rights, with respect to the indebtedness and/or

obligations of the Debtors to Amex arising under the Amex Assumed Agreements, except as

specifically set forth in this Order.

---

(continued...)

(iii) employee payments made for the purpose of satisfying periodic union dues, (iv) employee payments made for the purpose of purchasing Untied States Savings Bonds, (v) employee payments made for the purpose of making deposits to an account at or making repayment of an extension of credit from an employer-associated credit union, (vi) employee payments made for the purpose of purchasing life, accident, disability or other insurance, (vii) employee payments made for the purpose of participating in any employer-sponsored cafeteria plan as described and defined in Section 125 of the Internal Revenue Code, (viii) employee-directed donations to charitable organizations and (ix) levies, garnishments and other attachments on employee compensation (as described in Sections 6305 and 6331 of the Internal Revenue Code, in Section 4913 of Title 10 of D.C.A. or in any analogous provision of other applicable federal, state or local law) collected on behalf of any Governmental Authority or any other Person authorized to receive funds of the type described in this clause (d).

iii.        <u>Liens Junior to Certain Other Liens</u>.  Pursuant to section

364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected

security interest in and liens upon the Postpetition Collateral, whether now existing or hereafter

acquired, that is subject to valid, perfected and unavoidable liens in existence immediately prior

to the Petition Date or to valid and unavoidable liens in existence immediately prior to the

Petition Date that are perfected subsequent to the Petition Date to the extent permitted by section

546(b) of the Bankruptcy Code, that are senior to the liens and security interests of the

Prepetition Agent, the Prepetition Lenders and Amex under the Prepetition Loan Documents and

Prepetition Amex Card Agreements.

12.    <u>Amex Liens</u>.  As security for the Postpetition Amex Credit Facility,

effective and perfected upon the date of the Interim Order and without the necessity of the

execution, recordation or filing by the Debtors of mortgages, security agreements, control

agreements, pledge agreements, financing statements or other similar documents, the following

security interests and liens were granted to Amex by the Interim Order (collectively referred to

as the "**Amex DIP Liens**" and, together with the Postpetition GECC Liens, the "**DIP Liens**"):  a

valid, binding and automatically perfected encumbrance, lien, mortgage, offset right, recoupment

right, right of reserve with respect to such rights and/or security interest in the Postpetition

Collateral.  The lien granted to Amex by the Interim Order with respect to the SkyMiles

Collateral and the proceeds thereof shall be a first and senior to any other lien granted therein,

whether granted pursuant to the Interim Order as security for the DIP Obligations to the DIP

Lenders or otherwise.  The Amex DIP Lien with respect to Postpetition Collateral other than

SkyMiles Collateral shall be a "silent" lien to the extent provided in paragraph 19 hereof and be

subject to (i) liens existing as of the Petition Date that are valid, enforceable and not subject to

23

avoidance by a trustee under the Bankruptcy Code, (ii) the Carve Out, (iii) the Postpetition

GECC Liens and (iv) those other liens permitted to be first and senior pursuant to the

Postpetition Amex Loan Documents.

13.    Liens Senior to Certain Other Liens.  The DIP Liens and the Adequate

Protection Liens (as defined below) shall not be subject or subordinate to (i) any lien or security

interest that is avoided and preserved for the benefit of the Debtors and their estates under

section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date, including,

without limitation, any liens or security interests granted in favor of any federal, state, municipal

or other governmental unit, commission, board or court for any liability of the Debtors, except to

the extent expressly permitted by the Postpetition Loan Documents.

14.    All Postpetition Collateral will be free and clear of other liens, claims and

encumbrances, except for (i) with respect to Non-SkyMiles Collateral (as defined below), those

liens, claims and encumbrances permitted under the Postpetition GECC Loan Documents and (ii)

with respect to the SkyMiles Collateral, those liens, claims and encumbrances permitted under

the Postpetition Amex Loan Documents.

Section 1110 Issues.

15.    No Waiver of Section 1110 Beneficiary Rights.  Nothing in this Order (i)

shall constitute a waiver, forbearance or adjudication of the rights of any secured party, lessor or

vendor, or of any agent or controlling party for any such entity (including, without limitation,

any servicer or beneficial owner of any lessor and including any secured party, lessor or vendor

under any aircraft lease or mortgage) (in each case, an "**1110 Beneficiary**") under section 1110

of the Bankruptcy Code; or (ii) shall prejudice, limit, or otherwise affect any rights of any 1110

24

Beneficiary or other entity under section 1110 of the Bankruptcy Code, all of which rights are

expressly preserved.

      16.    <u>Limitation on Liens in Section 1110 Assets</u>.  Notwithstanding any

provision to the contrary in this Order, (A) to the extent prohibited or restricted under any

Section 1110 Agreement (as defined below), the Administrative Agent, DIP Lenders and Amex

(i) shall not be granted nor shall they have, and the Debtors likewise shall not grant, a security

interest in or lien on (x) any Section 1110 Assets, (y) any lease of, or any Debtor's leasehold

interest in, any Section 1110 Assets, or (z) any other property or Section 1110 Agreement which

is subject to the rights of an 1110 Beneficiary under section 1110 of the Bankruptcy Code; (ii)

shall not be listed as a loss payee or as an additional insured on any insurance policy which the

Debtors are obligated to any 1110 Beneficiary to obtain or maintain on or with respect to any

Section 1110 Assets; (iii) shall not be entitled to exercise, assert or otherwise have the benefits of

any rights or interests of any Debtor under any lease of Section 1110 Assets or property

described in clause (i) of this paragraph, including rights or interests in, or to any sums payable

to, any Debtor under any lease of Section 1110 Assets or property described in clause (i) and

rights or interests in, or to any property held under, such lease; (iv) shall not be given, and the

Debtors likewise shall not place, placards or other indicia of security interests or liens in or on

any Section 1110 Assets or property described in clause (i) above in favor of the Administrative

Agent, the DIP Lenders or Amex; and (B) to the extent that any liens are granted hereunder in

any Section 1110 Assets or Section 1110 Agreements, such liens shall be "silent" liens such that

the Administrative Agent, DIP Lenders and Amex shall not have the right to exercise any

remedies with respect thereto until the obligations under the relevant Section 1110 Agreements

have been satisfied and paid in full.

17.     For purposes of this Order the following definitions shall apply:

i.          "**Section 1110 Agreement**" shall be defined to include any agreement related to Section 1110 Assets (as defined below), including, without limitation, security agreements, mortgages, trusts, leases, conditional sale agreements or other instruments applicable to such Section 1110 Assets.

ii.          "**Section 1110 Assets**" shall include any interest of the Debtors in (A) any equipment described in section 1110(a)(3) of the Bankruptcy Code and any substitutions, renewals and replacements thereof, and any improvements, accessions and accumulations incident thereto, (B) any other asset with respect to which the granting of any lien would cause a default, directly or indirectly, of any Section 1110 Agreement and (C) any deposit or reserve delivered by a Debtor to a Section 1110 Beneficiary in connection with the purchase, finance or lease of a Section 1110 Asset, whether or not there is a specific restriction or prohibition in any Section 1110 Agreement in granting of liens on or in such deposits or reserves; provided that the DIP Lenders' liens shall attach automatically to any reversionary or residual interest any Debtor may have in such deposit or reserve upon the satisfaction of the obligations secured thereby.

iii.          To the extent of any inconsistency in the definitions of "Section 1110 Agreement" and "Section 1110 Assets" as set forth above and the definitions of such terms set forth in the Postpetition Credit Agreements, the definitions set forth in this Order shall control.

Protection of DIP Lenders' and Amex's Rights.

18.     None of the Administrative Agent, the DIP Lenders, the Prepetition Agent, the Prepetition Arrangers, the Prepetition Lenders and/or Amex shall be subject to (a) the

equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the

Prepetition Collateral, or (b) an "equities of the case" claim under section 552(b) of the

Bankruptcy Code against any of the Administrative Agent, the DIP Lenders, the Prepetition

Agent, the Prepetition Arrangers, the Prepetition Lenders and/or Amex with respect to proceeds,

product, offspring or profits of any of the Prepetition Collateral or Postpetition Collateral.

19.    Amex has agreed and the Court hereby orders that so long as there are any

borrowings or letters of credit or other amounts outstanding under the Postpetition GECC Loan

Documents, or the DIP Lenders have any remaining Commitments under the Postpetition GECC

Credit Agreement, Amex shall (i) not exercise or seek to exercise any rights or remedies with

respect to any Prepetition or Postpetition Collateral, other than the SkyMiles Collateral (the

"**Non-SkyMiles Collateral**"), institute any action or proceeding with respect to such rights or

remedies under the Prepetition Loan Documents, the Postpetition Amex Loan Documents, the

Prepetition Amex Card Agreements or this Order, or otherwise exercise remedies against the

Non-SkyMiles Collateral to the extent authorized by an order of this Court, (ii) be deemed to

have consented to the release of its liens in the Non-SkyMiles Collateral upon any sale,

disposition or abandonment thereof permitted under the Postpetition GECC Credit Agreement or

authorized by the Administrative Agent on behalf of the DIP Lenders, (iii) not object to, oppose

in any manner or join in any other objection or opposition to any exercise of remedies by the

Administrative Agent or the DIP Lenders and/or any sale, disposition or abandonment of the

Non-SkyMiles Collateral supported by the Administrative Agent on behalf of the DIP Lenders,

and (iv) not withdraw or revoke its consent to permit the use of Cash Collateral as provided

herein.

27

20.    The Administrative Agent, on behalf of the DIP Lenders, has agreed and the Court hereby orders that so long as there are any borrowings or other amounts outstanding under the Postpetition Amex Loan Documents, or Amex has any remaining Commitments under the Postpetition Amex Credit Agreement or there exist any other obligations of the Debtors secured by SkyMiles Collateral, the DIP Lenders shall (i) not exercise or seek to exercise any rights or remedies with respect to any SkyMiles Collateral, institute any action or proceeding with respect to such rights or remedies under the Prepetition GECC Loan Documents, the Postpetition GECC Loan Documents or this Order, or otherwise exercise remedies against the SkyMiles Collateral to the extent authorized by an order of this Court, (ii) be deemed to have consented to the release of its liens in the SkyMiles Collateral upon any sale, disposition or abandonment thereof permitted under the Postpetition Amex Credit Agreement or authorized by Amex, (iii) not object to, oppose in any manner or join in any other objection or opposition to any exercise of remedies by Amex and/or any sale, disposition or abandonment of the SkyMiles Collateral supported by Amex, and (iv) not withdraw or revoke its consent to permit the use of Cash Collateral as provided herein.

21.    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Administrative Agent and the DIP Lenders and Amex, respectively, but subject to the preceding two paragraphs, to exercise, (i) immediately upon the occurrence of an Event of Default, the right to accelerate the principal due under the Postpetition Loan Documents and assert an administrative freeze on cash, and (ii) upon the occurrence and during the continuance of an Event of Default and the giving of five business days prior written notice to the United States Trustee, and counsel to the Debtors, and counsel to all Committees, all other rights and remedies under the Postpetition Loan Documents,

28

including the rights and remedies against the Collateral provided for in the Postpetition Loan Documents. In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto (other than the Creditors' Committee) shall be whether, in fact, an Event of Default has occurred and is continuing, *provided*, that the failure to so limit the Creditors' Committee shall in no way limit or impair the rights and/or remedies of the Administrative Agent, the DIP Lenders or Amex under the Postpetition Loan Documents, the Interim Order or this Order or the protections afforded such parties under section 364(e) of the Bankruptcy Code. The Debtors, the Prepetition Agent, the Prepetition Lenders and Amex hereby waive their right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Administrative Agent or the DIP Lenders set forth in this Order or the Postpetition GECC Loan Documents.

22.     The Debtors are hereby authorized and directed to execute and deliver the SGR Security Agreement (as defined in the Postpetition GECC Credit Agreement) to the Administrative Agent and to execute and deliver on the Closing Date, from time to time, blank, undated signed transfer documents with respect to each of the Slots, to be held in escrow by the Administrative Agent pending exercise by the Administrative Agent or the DIP Lenders of any of their rights upon the occurrence and during the continuance of an Event of Default to foreclose upon or otherwise transfer or exercise rights or remedies with respect to any of the Slots in the manner set forth in this Order, the Postpetition GECC Loan Documents or such other structure as the Debtors and the DIP Lenders may agree.

23.     The Debtors are authorized to execute and deliver all documents with respect to the Postpetition Amex Credit Facility.

29

Use of Cash Collateral.

        24.    The Debtors are hereby authorized to use all Cash Collateral in which

Amex has an interest as holder of liens and security interests securing the Debtors' obligations

thereto, and Amex is directed promptly to turn over to the Debtors all Cash Collateral received or

held by it, *provided* that adequate protection is granted hereinafter as set forth.

Adequate Protection.

        25.    Subject to paragraph 35 hereof, Amex is entitled, pursuant to sections 361,

363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of its interest in the

Prepetition Collateral that secure the obligations under the Prepetition Amex Card Agreements

(notwithstanding their assumption pursuant to the Order of the Court) including the Cash

Collateral, equal in amount to the aggregate diminution in value of the Amex's Prepetition

Collateral, including, without limitation, any such diminution resulting from the sale, lease or use

by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral,

the priming of Amex's security interests and liens in connection with the Postpetition Credit

Facilities, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy

Code.  Subject to paragraph 35 hereof, as adequate protection, Amex is hereby granted the

following (collectively, the "**Adequate Protection Obligations**"):

        i.    Adequate Protection Liens.  Amex is hereby granted (effective

and perfected upon the date of the Interim Order and without the necessity of the execution by

the Debtors of mortgages, security agreements, pledge agreements, financing statements or other

agreements) replacement security interests in and junior liens upon all the Postpetition Collateral,

subject and subordinate only to (i) the security interests and liens granted to the Administrative

Agent for the benefit of the DIP Lenders and to Amex pursuant to the Postpetition Loan

Documents and this Order and any liens on the Postpetition Collateral to which such liens so

granted to the Administrative Agent and Amex are junior, (ii) the Carve Out, and (iii) liens

existing as of the Petition Date that are valid, enforceable and not subject to avoidance by a

trustee under the Bankruptcy Code (the "**Adequate Protection Liens**"), *provided, however*, that

the foregoing subordination shall not apply to Amex's contractual, common law, equitable, legal

and/or other rights of recoupment, setoff and/or counterclaim, the right to create reserves with

respect to such rights and/or reserves created with respect to such rights, with respect to the

indebtedness and/or obligations of the Debtors to Amex arising under the Amex Assumed

Agreements, except as specifically set forth in this Order, including paragraph 27 hereof.

      ii.      <u>Superpriority Claims</u>. Amex is hereby granted superpriority

claims as provided for in section 507(b) of the Bankruptcy Code with respect to its prepetition

and postpetition claims arising under the Prepetition Amex Card Agreements. With respect to

such superpriority claims, all of which shall be subject to payment of the Carve Out, the

following order of superpriority shall apply: *first*, claims under section 364(c)(1) of the

Bankruptcy Code held by the Administrative Agent and the DIP Lenders; *second,* claims under

section 364(c)(1) of the Bankruptcy Code held by Amex with respect to the Postpetition Amex

Credit Facility; and *third*, claims held by Amex under section 364(c)(1) of the Bankruptcy Code

with respect to the Prepetition Amex Card Agreements.

      26.      Under the circumstances and given that the above described adequate

protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court

finds that the adequate protection provided herein is reasonable and sufficient to protect the

interests of Amex with respect to its junior interests in the Prepetition Collateral securing the

Debtors' obligations under the Prepetition Amex Card Agreements.

31

27.    <u>Reservation of Amex's Rights</u>.  To the extent that any of the provisions of this Order conflict with any of the provisions of the Prepetition Skymiles Loan Documents, the Prepetition Amex Card Agreements or the Postpetition Amex Loan Documents (collectively, the "**Amex Agreements**"), this Order is deemed to control and shall supersede the conflicting provision(s) in said agreement(s).  Notwithstanding the foregoing, this Order (including the provisions of this Order with respect to Events of Default and the exercise of remedies) shall not prejudice, impair, contravene or encumber Amex's contractual right to create reserves with respect to its common law, equitable, legal and/or other rights of recoupment, setoff and/or counterclaim, and/or reserves created with respect to the indebtedness and/or obligations of the Debtors to Amex arising under the Amex Agreements; *provided, however*, that until the payment in full of the Postpetition GECC Credit Facility, Amex shall not exercise any rights of recoupment, setoff or counterclaim (or to impose reserves) in respect of (i) any and all obligations of the Debtors under or in connection with the Advance Payments and/or the Postpetition Amex Credit Facility against any and all obligations of Amex to make payments to any Debtor under the Card Service Agreement, except with respect to, and without prejudice to, the reserve rights granted to Amex in the Modification Agreement specifically with respect to the Court's order authorizing assumption of the Amex Assumed Agreements (the "**Amex Assumption Order**") not becoming final and non-appealable by October 11, 2005 (as defined in the Modification Agreement, the "**Special Holdback**"), or (ii) any Non-SkyMiles Collateral. <u>Perfection of DIP Liens and Adequate Protection Liens</u>.

28.    The Administrative Agent and Amex (subject to paragraphs 19 and 20 hereof) are hereby authorized, but not required, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction or

take any other action in order to validate and perfect the liens and security interests granted to

them hereunder. Whether or not the Administrative Agent on behalf of the DIP Lenders or

Amex shall, in their sole discretion, choose to file such financing statements, trademark filings,

copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm

perfection of the liens and security interests granted to them hereunder, such liens and security

interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to

challenge dispute or subordination, at the time and on the date of entry of the Interim Order.

Upon the request of the Administrative Agent or Amex, without any further consent of any party,

the Debtors are authorized to take, execute and deliver such instruments (in each case without

representation or warranty of any kind) to enable the Administrative Agent or Amex to further

validate, perfect, preserve and enforce DIP Liens.

29.     A certified copy of this Order may, in the discretion of the Administrative

Agent or Amex, be filed with or recorded in filing or recording offices in addition to or in lieu of

such financing statements, mortgages, notices of lien or similar instruments, and all filing offices

are hereby authorized to accept such certified copy of this Order for filing and recording.

30.     Any provision of any lease, license, contract or other agreement that

requires the consent or approval of one or more landlords or other parties or the payment of any

fees or obligations to any governmental entity (the "Restricted Agreements"), in order for any

Debtor to pledge, grant, sell, assign, or otherwise transfer any such Restricted Agreement or

leasehold interest or the proceeds thereof, or other postpetition collateral related thereto (except

to the extent such leasehold interest or Restricted Agreement or other Postpetition Collateral

related thereto is an "Excluded Asset" as defined in this Order or is "Excluded Collateral"

pursuant to the terms of the Postpetition Credit Agreements), is hereby deemed to be inconsistent

with the applicable provisions of the Bankruptcy Code. Any such provision shall have no force and effect with respect to the transactions granting postpetition liens in such leasehold interest or the proceeds of any assignment and/or sale thereof by any Debtor, in favor of the DIP Lenders or Amex in accordance with the terms of the Postpetition Credit Agreements or this Order.

Preservation of Rights Granted Under the Order.

31.     No claim or lien having a priority superior to or *pari passu* with those granted by this Order shall be granted or allowed while any portion of the Postpetition Credit Facilities (or any refinancing thereof) or the Commitments thereunder or the DIP Obligations or the Adequate Protection Obligations remain outstanding except to the extent expressly permitted by the Postpetition Loan Documents.

32.     If an order dismissing any of the Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy Code) that (i) the Superpriority Claims, priming liens, security interests and replacement security interests granted to the Administrative Agent and Amex pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order, as applicable, until all related DIP Obligations and Adequate Protection Obligations shall have been paid and satisfied in full (and that such Superpriority Claims, priming liens and replacement security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest) and (ii) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (i) above.

33.     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the

34

validity of any DIP Obligations or Adequate Protection Obligations incurred prior to the actual

receipt of written notice by Amex or the Administrative Agent, as applicable, of the effective

date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any

lien or priority authorized or created hereby or pursuant to the Postpetition Loan Documents with

respect to any DIP Obligations or Adequate Protection Obligations. Notwithstanding any such

reversal, stay, modification or vacation, any use of Cash Collateral, or DIP Obligations or

Adequate Protection Obligations incurred by the Debtors to Amex, the Administrative Agent or

the DIP Lenders prior to the actual receipt of written notice by the Administrative Agent, the DIP

Lenders or Amex of the effective date of such reversal, stay, modification or vacation shall be

governed in all respects by the original provisions of this Order, and the Administrative Agent,

DIP Lenders and Amex shall be entitled to all the rights, remedies, privileges and benefits

granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the Postpetition

Loan Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate

Protection Obligations.

        34.     Except as expressly provided in this Order or in the Postpetition Loan

Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of the

Administrative Agent, the DIP Lenders and Amex granted by the provisions of this Order and

the Postpetition Loan Documents shall survive, and shall not be modified, impaired or

discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7,

dismissing any of the Cases, terminating the joint administration of these Cases or by any other

act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the

Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors having waived

any discharge as to any remaining DIP Obligations. The terms and provisions of this Order and

the Postpetition Loan Documents shall continue in these Cases, in any successor cases if these

Cases cease to be jointly administered, or in any superceding chapter 7 cases under the

Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights and remedies,

of the Administrative Agent, the DIP Lenders and Amex granted by the provisions of this Order

and the Postpetition Loan Documents shall continue in full force and effect until the DIP

Obligations are indefeasibly paid in full.

      35.    Effect of Stipulations on Third Parties / Unwind.  The stipulations and

admissions contained in this Order, including, without limitation, in paragraph E of this Order,

shall be binding upon the Debtors in all circumstances.  The stipulations and admissions

contained in this Order, including, without limitation, in paragraph E of this Order, shall be

binding upon all other parties in interest, including, without limitation, any Committee, unless a

party in interest has timely filed an adversary proceeding or contested matter (or commenced

litigation for authorization to commence such litigation) (subject to the limitations contained

herein, including, *inter alia*, in paragraph 36) by no later than December 12, 2005 (or such later

date (x) as has been agreed to, in writing, by the Administrative Agent with respect to any

Claims or Defenses (defined below) related to the Prepetition GECC Loan Documents or

Postpetition GECC Loan Documents, and by Amex with respect to any Claims or Defenses

related to the Prepetition Amex Loan Documents or Postpetition Amex Loan Documents, in their

sole discretion or (y) as has been ordered by the Court) (i) challenging the validity,

enforceability, perfection, priority or extent of the Prepetition Debt or the liens of the Prepetition

Agent, the Prepetition Secured Lenders or Amex on the Prepetition Collateral, or the payment of

the Prepetition Debt pursuant to this Order, (ii) seeking a determination that the Prepetition Debt

was undersecured as of the Petition Date, or (iii) otherwise asserting or prosecuting any action

36

for preferences, fraudulent conveyances, other avoidance power claims or any other any claims,

counterclaims or causes of action, objections, contests or defenses (collectively, "**Claims and**

**Defenses**") against the Prepetition Agent, the Prepetition Lenders or Amex or their affiliates,

representatives, attorneys or advisors in connection with any matter related to the Prepetition

Amex Card Agreements, the Prepetition Loan Documents, the Prepetition Debt or the payment

thereof pursuant to this Order, or the Prepetition Collateral, and there is a final order in favor of

the plaintiff sustaining any Claims and Defenses in any such timely filed adversary proceeding or

contested matter, *provided* that as to the Debtors, all such Claims and Defenses are hereby

irrevocably waived and relinquished as of the Petition Date.  If no such adversary proceeding or

contested matter (or motion or other request for authorization to commence such litigation) is

timely filed, (x) the Prepetition Debt and all related obligations of the Debtors shall constitute

allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or

avoidance, for all purposes in the Cases and any subsequent chapter 7 cases, (y) the liens of the

Prepetition Agent, the Prepetition Lenders and Amex on the Prepetition Collateral shall be

deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to

recharacterization, subordination or avoidance and (z) the Prepetition Obligations, the liens of

the Prepetition Agent, the Prepetition Lenders and Amex on the Prepetition Collateral and the

Prepetition Agent, the Prepetition Lenders and Amex shall not be subject to any other or further

challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including,

without limitation, any successor thereto (including, without limitation, any chapter 7 or 11

trustee appointed or elected for any of the Debtors).  If any such adversary proceeding or

contested matter (or motion or other request for authorization to commence such litigation) is

timely filed, the stipulations and admissions contained in this Order, including, without

37

limitation, paragraph E hereof shall be without prejudice to the litigation of any Claims and

Defenses by the Creditors' Committee or any other person or entity, and the Court shall retain

the power to unwind the protections provided to the Prepetition Agent, the Prepetition Lenders

and Amex to the extent necessary to grant full relief with respect to any Claims and Defenses

that are successful.

          36.    Limitation on Use of Postpetition Credit Facilities Proceeds and

Collateral. Notwithstanding anything herein or in any other order by this Court to the contrary,

no borrowings, letters of credit, Cash Collateral, Postpetition Collateral or the Carve Out (except

in the case of the Carve Out for any actions by the Creditors' Committee referred to in

subparagraph (iii) below) may be used to (i) object, contest or raise any defense to, the validity,

perfection, priority, extent or enforceability of any amount due under the Postpetition Loan

Documents or the Prepetition Loan Documents, or the liens or claims granted under this Order,

the Postpetition Loan Documents or the Prepetition Loan Documents, (ii) assert any Claims or

Defenses or causes of action against the Administrative Agent, the DIP Lenders, the Prepetition

Agent, the Prepetition Arrangers, the Prepetition Lenders or Amex or their respective agents,

affiliates, representatives, attorneys or advisors, (iii) prevent, hinder or otherwise delay the

Administrative Agent's, Amex's or the Prepetition Agent's assertion, enforcement or realization

on the Cash Collateral or the Postpetition Collateral in accordance with the Postpetition Loan

Documents, the Prepetition Loan Documents or this Order, or (iv) seek to modify any of the

rights granted to the Administrative Agent, the DIP Lenders, the Prepetition Agent, the

Prepetition Arrangers, the Prepetition Lenders or Amex hereunder or under the Postpetition Loan

Documents or the Prepetition Loan Documents, in each of the foregoing cases without such

parties' prior written consent, *provided, however,* that nothing herein shall limit or impair the use

of borrowings, letters of credit, Cash Collateral, Postpetition Collateral or the Carve Out by the

Creditors' Committee to conduct an investigation with respect to potential Claims and Defenses.

      37.    <u>GECC as Collateral / Administrative Agent</u>.  To the extent GECC, in its

role as Collateral Agent under the Prepetition GECC Credit Agreement, is the secured party

under any Control Agreements (as defined in the Prepetition GECC Credit Agreement), listed as

loss payee under the Debtors' insurance policies as required under any Prepetition Loan

Documents or is the secured party under any Prepetition Loan Document, GECC, in its role as

Administrative Agent under the Postpetition GECC Credit Agreement, is also deemed to be the

secured party under such Control Agreements, loss payee under the Debtors' insurance policies

and the secured party under any other Prepetition GECC Loan Documents and shall act in that

capacity and distribute any proceeds recovered or received *first*, for the benefit of the DIP

Lenders in accordance with the Postpetition GECC Credit Agreement and *second*, subsequent to

indefeasible payment in full of all obligations under the Postpetition GECC Loan Documents, for

the benefit of Amex in accordance with the Postpetition Amex Credit Agreement.

      38.    <u>Certain Rights Preserved</u>.  Notwithstanding anything herein to the

contrary, the entry of this Order is without prejudice to, and does not constitute a waiver of,

expressly or implicitly, or otherwise impair (a) any of the rights of any of the DIP Lenders and/or

Amex under the Bankruptcy Code or under non-bankruptcy law, including, without limitation,

the right of any of the Prepetition Lenders, the DIP Lenders and/or Amex to (i) request

modification of the automatic stay of section 362 of the Bankruptcy Code, (ii) request dismissal

of any of the Cases, conversion of any of the Cases to cases under chapter 7, or appointment of a

chapter 11 trustee or examiner with expanded powers, or (iii) propose, subject to the provisions

of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans or (b) any other rights, claims

or privileges (whether legal, equitable or otherwise) of any of the Prepetition Lenders, the DIP

Lenders and/or Amex.

      39.    <u>Failure to Seek Relief</u>.  The Prepetition Lenders', the DIP Lenders' or

Amex's failure to seek relief or otherwise exercise its rights and remedies under the Postpetition

Loan Documents or, as the case may be, the Prepetition Loan Documents or this Order shall not

constitute a waiver of any of their hereunder, thereunder or otherwise.

      40.    <u>Amendments to Postpetition Facilities</u>.  (a) The Postpetition GECC Credit

Agreement or any other Postpetition GECC Loan Documents may from time to time be amended

by the parties thereto without further order of this Court, in each case, in such form as the

Debtors, the Administrative Agent, and the DIP Lenders (to the extent required) may agree and

(b) the Postpetition Amex Credit Agreement or any other Postpetition Amex Loan Document

may from time to time be amended by the parties thereto without further order of this Court, in

each case, in such form as the Debtors and Amex may agree; *provided, however* (i) that (other

than non-material amendments or waivers being provided for which neither advance notice nor

consent shall be required) notice of any such modification or amendment shall be provided to all

Committees and the U.S. Trustee, each of which will have five (5) business days from the date of

such notice within which to object in writing; and (ii) that notice of a modification or amendment

which proposes any change to the definition or treatment of "Excluded Collateral" or proposes

granting of security interests in additional property in which a party has an interest shall be

provided to any party directly and adversely affected thereby, and such party shall have fifteen

(15) days from the date of such notice within which to object in writing.  If such objection is

timely provided pursuant to sections (i) and (ii) of this paragraph and not resolved on a

consensual basis, then such modification or amendment shall be permitted only pursuant to an order of the Court.

Junior Reimbursement Claims and Junior Liens

41.    Without limiting the joint and several liability of each of the Debtors for the DIP Obligations, the Debtors shall use their reasonable best efforts to ensure that Debtors that receive the benefit of funds advanced under Postpetition Credit Facilities or the services contemplated thereunder or hereunder repay their share thereof on a dollar for dollar basis. To the extent a Debtor (i) incurs any of the DIP Obligations (including as a result of intercompany balances incurred after the Petition Date to the extent such balances arise from the incurrence of DIP Obligations) or (ii) receives a postpetition intercompany loan or transfer (including as a result of the Debtors' cash management system or otherwise) (each a **"Beneficiary Debtor"**), and such DIP Obligations were repaid or such postpetition intercompany loan or transfer is made (including from cash collateral) (each an **"Advance"**) by any other Debtor that is an obligor under the Postpetition Credit Facilities (an **"Adequately Protected Debtor"**), the Adequately Protected Debtor shall have (a) an allowed claim under sections 364(c)(1) and 507(b) of the Bankruptcy Code against the Beneficiary Debtor for the amount of such Advance, having priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, which claim shall bear interest at a rate agreed between the Debtors from time to time for the period accruing from and after the date such claim arises until repayment thereof (collectively, the **"Junior Reimbursement Claim"**) and (b) a lien on all Postpetition Collateral under section 364(c)(3) of the Bankruptcy Code securing such Junior Reimbursement Claim (a **"Junior Lien"**).

41

42.     All Junior Reimbursement Claims and Junior Liens shall be junior, subject and subordinate only to the Superpriority Claims, the DIP Liens and the Adequate Protection Obligations, and to any claims against such Beneficiary Debtor that are expressly senior to, and on a parity with, or carved out from the Superpriority Claims, the DIP Liens or the Adequate Protection Obligations.  All Junior Liens shall be "silent" liens and the Adequately Protected Debtor shall forbear from exercising, and shall not be entitled to exercise, any right or remedy relating to any Junior Reimbursement Claim or Junior Lien, including, without limitation, taking any of the actions that Amex or the Administrative Agent is prohibited from taking pursuant to paragraphs 19 and 20, respectively, including, without limitation, seeking relief from the automatic stay, or seeking any sale, foreclosure, realization upon repossession or liquidation of any property of another Debtor, or taking any position with respect to any disposition of the property, the business operations, or the reorganization of another Debtor.  The Administrative Agent shall have the exclusive right to manage, perform and enforce all rights and remedies described in the preceding sentence and in the Postpetition Loan Documents.  The Junior Lien of the Adequately Protected Debtor automatically, and without further action of any person or entity of any kind, shall be released or otherwise terminated to the extent that property subject to such Junior Lien is sold or otherwise disposed of by or on behalf of the Administrative Agent or any other Debtor or to the extent that such property is subject to a lien prior to the DIP Liens and such lien is permitted under the Postpetition Loan Documents.

43.     With respect to the effect of Junior Liens on any sale of property by the Debtors, (a) the Debtors may sell property, in accordance with section 363 of the Bankruptcy Code, free and clear of any Junior Lien, with such lien attaching to the proceeds of sale in the

same priority as existed in respect of the property sold and (b) the provisions of section 363(k) of the Bankruptcy Code shall not apply.

Waiver of Section 506(c) Claims

44.     Except for the Carve Out, the Debtors have agreed, on their own behalf and behalf of their estates, that no costs or expenses of administration which have or may be incurred prior to the Cases, in the Cases or in any conversion of any of Debtors' Cases to cases under chapter 7 of the Bankruptcy Code shall be charged against the DIP Lenders, Amex, their claims, or the Postpetition Collateral pursuant to section 506(c) of the Bankruptcy Code or otherwise without the prior written consent of the Administrative Agent with respect to the Non-SkyMiles Collateral or Amex with respect to the SkyMiles Collateral, and no such consent shall be implied from any other action, inaction or acquiescence by the Administrative Agent, the DIP Lenders or Amex.

45.     Financial Reporting Requirements.  The Debtors shall supply all financial reporting required to be sent to the DIP Lenders and Amex under the Postpetition Loan Documents to the Creditors' Committee.

46.     Order Governs.  In the event of any inconsistency between the provisions of this Order and the Postpetition Loan Documents, the provisions of this Order shall govern.  In the event of any inconsistency between the provisions of this Order and the Order Granting Motion for Authorization to (i) Continue to Use Existing Cash Management System and (ii) Maintain Existing Bank Accounts and Existing Business Forms, dated September 16, 2005, the provisions of this Order shall govern, including without limitation, the provisions regarding Junior Reimbursement Claims and Junior Liens.

47.     Binding Effect; Successors and Assigns.  The Postpetition Loan Documents and the provisions of this Order, including all findings herein, shall be binding upon

43

all parties in interest in these Cases, including, without limitation, the Administrative Agent, the

DIP Lenders, Amex, the Prepetition Agent, the Prepetition Lenders, any Committee appointed in

these Cases, and the Debtors and their respective successors and assigns (including any chapter 7

or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and

shall inure to the benefit of the Administrative Agent, the DIP Lenders, Amex, the Prepetition

Agent, the Prepetition Lenders and the Debtors and their respective successors and assigns;

*provided*, *however*, that the Administrative Agent and the DIP Lenders shall have no obligation

to extend any Postpetition Credit Facilities to any chapter 7 trustee or similar responsible person

appointed for the estates of the Debtors.

Dated:  New York, New York
        October 6, 2005

                    /s/ Prudence Carter Beatty
                    UNITED STATES BANKRUPTCY JUDGE