# EXHIBIT I

# (PART 2)

IN WITNESS WHEREOF, the parties hereto have caused the Lease to be duly executed by their respective officers thereunto duly authorized as of the date first written above.

Lessor:                                                Lessee:

FLEET NATIONAL BANK                                    SM 5105 LLC

By: _____                         By:_____
Name: John E. Hockenson, Jr.                          Name: _____
Title: Banking Officer                                Title:_____

Address:    c/o Fleet Capital Corporation             Address:    c/o 38500 Woodward Avenue
            One Financial Plaza, 5th Floor                      Suite 100
            Mall Stop: RI/DE/03705A                              Bloomfield Hills, Michigan  48304
            Providence, RI  02903

This is Counterpart No. 5 of a total of 5 counterparts.  Only Counterpart No. 1 shall be considered chattel paper for purposes of the Uniform Commercial Code and a security interest may be perfected only by possession of Counterpart No. 1.

0 0 0 0 0 0 0 0 9 2 1

9-89

    IN WITNESS WHEREOF, the parties hereto have caused the Lease to be duly executed by their respective officers thereunto duly authorized as of the date first written above.

Lessor:

FLEET NATIONAL BANK

By: _____
Name: _____
Title: Banking Officer

Address:    c/o Fleet Capital Corporation
                One Financial Plaza, 5th Floor
                Mail Stop: RI/DE/03705A
                Providence, RI  02903

Lessee:

SM 5105 LLC, *by its member, Delphi Automotive Systems LLC*

By: *John Blahnik*
Name: *John Blahnik*
Title: *Treasurer*

Address:    c/o 38500 Woodward Avenue
                Suite 100
                Bloomfield Hills, Michigan  48304

This is Counterpart No. *5* of a total of 5 counterparts.  Only Counterpart No. 1 shall be considered chattel paper for purposes of the Uniform Commercial Code and a security interest may be perfected only by possession of Counterpart No. 1.

21

(AIRCRAFT LEASE)

**EXHIBIT A**

**DEFINITIONS**

(a)    All References in the Lease to designated Sections and other subdivisions are to such designated Sections and other subdivisions only, and the words "herein," "hereof" and "hereunder" and other words of similar import refer to the Lease as whole and not to any particular Section or other subdivision.

(b)    Except as otherwise indicated, all the agreements and instruments defined herein or in the Lease shall mean such agreements and instruments as the same may from time to time be supplemented or amended, or as the terms thereof may be waived or modified to the extent permitted by, and in accordance with, the terms thereof.

(c)    The terms defined herein and in the Lease shall, for purposes of the Lease and all Lease Supplements, Schedules and Exhibits thereto, have the meanings assigned to them and shall include the plural as well as the singular as the context requires.

(d)    The following terms shall have the following meanings for all purposes of the Lease:

Basic Rent Date, Daily Lease Rate, Expiration Date, First Basic Rent Date, Last Basic Rent Date, Permitted Deductible, Remarketing Fee, Primary Hangar Location, and Rent Commencement Date shall have the meanings set forth in Schedules 2 and 2-A to Lease Supplement No. 1 to the Lease.

Abatements shall have the meaning set forth in Section 7 of the Lease.

Acceptance Date shall mean the date (which date shall be no later than the date designated as the "Last Acceptance Date" on Schedule No. 2 to Lease Supplement No. 1) on which Lessee irrevocably and unconditionally accepts the Aircraft for lease under the Lease as evidenced by the execution and delivery of Lease Supplement No. 1 relating thereto dated such date.

Additions shall have the meaning set forth in the Maintenance and Return Addendum hereto.

Affiliate shall mean any person controlling, controlled by, or under common control with Lessee, and for this purpose, "control" means the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of any such Person, whether through the legal or beneficial ownership of voting securities, by contract or otherwise, provided, however, that any person organized solely for the purpose of owning and operating aircraft shall not qualify as an Affiliate for purposes of the Lease.

Alterations shall have the meaning set forth in the Maintenance and Return Addendum hereto.

Aircraft shall mean (i) the Airframe, (ii) the Engines, and (iii) to the extent applicable, the Records.

Airframe shall mean (i) the Aircraft described in Schedule No. 1 to Lease Supplement No. 1, and shall not include the Engines and (ii) any and all Parts from time to time incorporated in, installed on or attached to such Aircraft and any and all Parts removed therefrom so long as title thereto shall remain vested in Lessor in accordance with the applicable terms of this Lease after removal from the Aircraft.

Assignee shall have the meaning set forth in Section 12 of the Lease.

Basic Rent shall have the meaning set forth in Section 3 of the Lease.

Basic Term shall mean the number of months set forth on Schedule No. 2 to Lease Supplement No.
1.

Business Day shall mean any day other than a Saturday, Sunday or other day on which banks located in Providence, Rhode Island are closed or are authorized to close.

Casualty Value for any Basic Rent Date shall be the amount equal to the Lessor's Cost multiplied by the factor set forth on Schedule No. 3 for such Basic Rent Date except that, in the case of an Event of Loss covered by the insurance covering loss or damage to the Aircraft required to be maintained by Lessee pursuant to the Lease (or which would have been covered by such insurance, had such insurance been maintained as required), Casualty Value shall mean the higher of Fair Market Value or the amount equal to the Lessor's Cost multiplied by the factor set forth on Schedule No. 3 to Lease Supplement No. 1.

Charter shall have the meaning set forth in Section 12 of the Lease.

Claims shall have the meaning set forth in Section 11 of the Lease.

Closing Documents shall mean the documents identified as such on Lease Supplement No. 2 and such other documents as Lessor shall consider necessary or advisable in order to convey to Lessor title to the Aircraft as contemplated under the Lease, which documents shall be in form and substance satisfactory to Lessor.

Consent and Assignment to Charter of Aircraft shall mean the Consent and Assignment to Charter of Aircraft by and among the charterer, Lessee and Lessor, and acknowledged by Guarantor.

Consent to Management Agreement shall mean the Consent to Management Agreement by and among the Manager, Lessee and Lessor, and acknowledged by Guarantor.

Corporate Guarantor shall mean that certain corporate guarantor (as more particularly described in Schedule No. 2-A to Lease Supplement No. 1) that entered into the Guaranty dated as of the Acceptance Date in favor of Lessor, and its successors and assigns.

Default shall mean an event or circumstance which, after the giving of notice or lapse of time, or both, would become an Event of Default.

Defenses shall have the meaning set forth in Section 12 of the Lease.

Engine shall mean (i) each of the engines and, if applicable, the auxiliary power units described and listed by manufacturer's serial numbers in Schedule No. 1 to Lease Supplement No. 1 and currently installed on the Airframe covered by such Lease Supplement whether or not thereafter installed on such Airframe or any other airframe from time to time; (ii) any engine and/or auxiliary power unit which may from time to time be substituted, pursuant to the applicable terms of this Lease, for an Engine leased hereunder and (iii) in each case set forth in clauses (i) and (ii) hereof, with any and all Parts incorporated in or installed on or attached to such Engine, engine and/or auxiliary power unit or any and all Parts removed therefrom so long as title thereto shall remain vested in Lessor in accordance with the applicable terms of this Lease after removal from such Engine. The term "Engines" means, as of any date of determination, all Engines leased hereunder.

Event of Default shall have the meaning set forth in Section 13 of the Lease.

Event of Loss with respect to the Aircraft, the Airframe or any Engine shall mean any of the following events with respect to such property (i) loss of such property or the use thereof due to theft, disappearance, destruction, damage beyond repair or rendition of such property permanently unfit for normal use for any reason whatsoever; (ii) any damage to such property which results in an insurance settlement with respect to

such property on the basis of a total loss or constructive total loss; (iii) the condemnation, confiscation or seizure of, or requisition of title to or use of, such property by the act of any government (foreign or domestic) or of any state or local authority or any instrumentality or agency of the foregoing ("Requisition of Use"); (iv) as a result of any rule, regulation, order or other action by any government (foreign or domestic) or governmental body (including, without limitation, the FAA or any similar foreign governmental body) having jurisdiction, the use of such property shall have been prohibited, or such property shall have been declared unfit for use, for a period of six (6) consecutive months, unless Lessee, prior to the expiration of six-month period, shall have undertaken and shall be diligently carrying forward all steps which are necessary or desirable to permit the normal use of such property by Lessee or, in any event, if use shall have been prohibited, or such property shall have been declared unfit for use, for a period of twelve (12) consecutive months; (v) with respect to an Engine, the removal thereof from the Airframe for a period of six (6) consecutive months or longer, whether or not such Engine is operational or (vi) an Engine is returned to the Manufacturer, other than for modification in the event of patent infringement or for repair or replacement (any such return being herein referred to as a "Return to Manufacturer"). The date of such Event of Loss shall be the date of such theft, disappearance, destruction, damage, Requisition of Use, prohibition, unfitness for use for the stated period, removal for the stated period or Return to Manufacturer. An Event of Loss with respect to the Aircraft shall be deemed to have occurred if an Event of Loss occurs with respect to the Airframe. An Event of Loss with respect to any Engine shall not, without loss of the Airframe, be deemed an Event of Loss with respect to the Aircraft.

FAA shall mean the United States Federal Aviation Administration and/or the Administrator of the Federal Aviation Administration and the Department of Transportation, or any person, governmental department, bureau, authority, commission or agency succeeding the functions of any of the foregoing.

FAA Counsel shall mean Messrs. Daugherty, Fowler, Peregrin & Haught, 204 North Robinson, Suite 900, Oklahoma City, Oklahoma 73102, or such other counsel as Lessor may designate.

Fair Market Value shall mean the amount which would be obtained in an arm's length transaction between an informed and willing buyer-user or lessee, as the case may be, (who is neither a lessee in possession nor a used equipment dealer) and an informed and willing seller or lessor, as the case may be, under no compulsion to sell or lease, as the case may be, and in such determination costs of removal of the Aircraft from its then location shall not be a deduction from such amount and it shall be assumed (whether or not the same be true) that the Aircraft has been maintained in accordance with the provisions of this Lease and would have been returned to Lessor in compliance with the requirements hereof.

Guarantor shall mean either or both LLC Guarantor and/or Corporate Guarantor, as the context may require.

Guaranty shall mean the Guaranty dated as of the Acceptance Date, by LLC Guarantor or Corporate Guarantor, as the case may be, in favor of Lessor.

Impositions shall have the meaning set forth in Section 8 of the Lease.

Late Payment Rate shall mean the lesser of a rate equal to (i) the 30-day London Interbank Offered Rate (LIBOR) as published in *The Wall Street Journal* in effect as of the 15th day of the month preceding the applicable payment date (or if *The Wall Street Journal* is not published on such day, the next preceding day on which *The Wall Street Journal* is published), plus 1.0% per annum or (ii) the highest rate permitted by applicable law . In the event *The Wall Street Journal* is not published or does not report a 30 day "London Interbank Offered Rate (LIBOR)" for seven consecutive Business Days, a comparable rate shall be selected by Lessor in its reasonable discretion. All interest hereunder shall be calculated on the basis of a year of 360 days comprised of 12 months of 30 days each.

Lease Supplement shall mean a supplement to the Lease to be entered into as of the Acceptance Date by Lessor and Lessee, which supplement shall be substantially in the form as attached to the Lease

and identified as either Lease Supplement No. 1 or Lease Supplement No. 2 both of which are attached to the Lease and made a part thereof.

Lessor's Cost shall have the meaning set forth in Schedule No. 2 to Lease Supplement No. 1 to the Lease.

Lessor's Liens shall mean any Liens created or granted by Lessor with respect to Lessor's purchase or financing of the Aircraft or resulting from claims against Lessor not related to Lessor's ownership of the Aircraft.

Liens shall mean all liens, charges, security interests, and encumbrances of every nature and description whatever, including, without limitation, liens, charges, security interests and encumbrances with respect to Impositions, (other than Lessor's Liens) and rights of third parties under management, pooling, interchange, overhaul, repair or other similar agreements or arrangements.

LLC Guarantor shall mean that certain limited liability company guarantor (as more particularly described in Schedule 2-A to Lease Supplement No. 1) that entered into the Guaranty dated as of the Acceptance Date in favor of Lessor, and its successors and assigns.

Management Agreement shall mean that certain Aircraft Management Agreement dated as of November 26, 2001, between Lessee and Manager.

Manager shall mean DaimlerChrysler Aviation Services, Inc., and its successors and assigns

Manufacturer shall mean the manufacturers identified on Schedule No. 1 to Lease Supplement No. 1 to the Lease and their respective successors and assigns.

Operator shall have the meaning set forth in Section 12 of the Lease.

Other Aircraft Lease shall have the meaning set forth in Section 13(d) of the Lease.

Other Lease Documents shall have the meaning set forth in Section 13(d) of the Lease.

Parts shall mean all appliances, avionics, parts, instruments, appurtenances, accessories, furnishings and other equipment of whatever nature (other than Additions or Engines), which may from time to time be incorporated or installed in or attached to the Airframe or any Engine for so long as title thereto shall be vested in Lessor in accordance with the applicable terms of this Lease.

Permitted Liens shall mean (a) the respective rights of others under agreements or arrangements to the extent expressly provided and permitted by the terms of Section 12 of the Lease, (b) Lessor's Liens and (c) Liens for taxes either not yet due or being contested by Lessee in good faith and inchoate materialmen's, mechanic's, workmen's, repairmen's, employee's or other like Liens arising in the ordinary course of business of Lessee for sums not yet delinquent or being contested in good faith (and for the payment of which adequate assurances and/or security have, in Lessor's sole judgment, been provided to Lessor) with due diligence and by appropriate proceedings, if counsel for Lessor shall have determined in its sole opinion that the nonpayment of any such tax or Lien or the contest of any such payment in such proceedings does not and will not adversely affect the title, property or rights of Lessor.

Person shall mean any individual, partnership, corporation, limited liability company, trust, association, joint venture, joint stock company, or non-incorporated organization or government or any department or agency thereof, or any other entity of any kind whatsoever.

Records shall mean any and all logs, manuals, certificates and date and inspection, modification, maintenance, engineering, technical and overhaul records (including all computerized data, records and

RSCOMBS 361753 · 25 (AIRCRAFT LEASE)

0 0 0 0 0 0 0 0 9 2 6

9-79

materials of any kind whatsoever) with respect to the Aircraft, including, without limitation, all records required to be maintained by the FAA or any other governmental agency or authority having jurisdiction with respect to the Aircraft or any Manufacturer or Supplier of the Aircraft (or any part thereof) with respect to the enforcement of warranties or otherwise, which Records shall be at all times the property of the Lessor after the Acceptance Date.

Rent shall have the meaning set forth in Section 3 of the Lease.

Requisition of Use shall have the meaning set forth in the Event of Loss definition contained herein.

Return to Manufacturer shall have the meaning set forth in the Event of Loss definition contained . herein.

SEC shall mean the Securities and Exchange Commission.

Sublease shall have the meaning set forth in Section 12 of the Lease.

Supplemental Rent shall have the meaning set forth in Section 3 of the Lease.

Supplier shall mean the "Supplier" or "Suppliers", as the case may be, identified as such on Schedule No. 1 to Lease Supplement No. 1 and their respective successors and assigns.

Term shall mean the Basic Term together with (i) the period, if any, from and including the Acceptance Date through, but not including, the Rent Commencement Date and (ii) any Renewal Term or Renewal Terms, if any, entered into pursuant to this Lease.

UCC shall mean the Uniform Commercial Code as in effect in the applicable jurisdiction.

Warranty Bill of Sale shall mean a warranty bill of sale in the form of Exhibit B hereto or such other form of warranty bill of sale as Lessor in its sole discretion shall deem satisfactory.

**LEASE SUPPLEMENT NO. 1**
(Acceptance Certificate)

AIRCRAFT LEASE dated as of March 30, 2001 (the "Lease") by and between FLEET NATIONAL BANK, as lessor ("Lessor"), and SM 5105 LLC, as lessee ("Lessee").

(a) The Aircraft.

Lessee hereby acknowledges, agrees and certifies that the Aircraft as set forth and described in Schedule No. 1 hereto is in Lessee's possession, has been inspected by Lessee to its complete satisfaction, has been found to be in good working order, repair and condition and fully equipped to operate as required under applicable law for its purpose, is of a size, design, capacity and manufacture selected by Lessee and suitable for Lessee's purposes, and is, as of the date set forth below, unconditionally, irrevocably and fully accepted by Lessee for lease under the Lease. Lessee hereby further unconditionally and irrevocably reaffirms its acknowledgments and agreements in the Lease. All capitalized terms used herein which are not otherwise defined herein shall have the meanings given to such terms in the Lease.

(b) Representations by Lessee.

Lessee hereby represents and warrants to Lessor that on the date hereof:

(1) The representations and warranties of Lessee set forth in the Lease and all certificates and opinions delivered in connection therewith were true and correct in all material respects when made and are true and correct in all material respects as of the date hereof, with the same force and effect as if the same had been made on this date.

(2) Lessee has satisfied or complied with all conditions precedent and requirements as set forth in the Lease and Lease Supplements which are required to be or to have been satisfied or complied with on or prior to the date thereof.

(3) No Default or Event of Default under the Lease has occurred and is continuing on the date hereof.

(4) Lessee has obtained, and there are in full force and effect, such insurance policies with respect to the Aircraft as are required to be obtained under the terms of the Lease.

(5) Lessee has furnished no equipment for the Aircraft other than as stated on Schedule No. 1 hereto or permitted as an Addition thereto pursuant to the Lease.

(6) The facts, terms, information, description and costs set forth in the attached Schedules No. 1, No. 2, No. 2-A, No. 3 and No. 4 hereto are true, complete, accurate and correct.

(7) The Lease shall be deemed a "finance lease" under Section 2A-103 (g) of the UCC.

Date of unconditional, irrevocable and final acceptance by Lessee:

_____, 2001.

RSCOMBS 361753                               27                               (AIRCRAFT LEASE)

00000000928

9-75

IN WITNESS WHEREOF, Lessee has caused this Lease Supplement No. 1 to be duly executed by its officer thereunto duly authorized.

SM 5105 LLC

By: _____
Name:_____
Title:_____

Address:      c/o 38500 Woodward Avenue
              Suite 100
              Bloomfield Hills, Michigan  48304

0 0 0 0 0 0 0 0 9 2 9

9-73

**SCHEDULE NO. 1**

**TO**

**LEASE SUPPLEMENT NO. 1**

<u>Description of Aircraft</u>

Bombardier Inc. CL-600-2B16 (Variant 604) aircraft which consists of the following components:

(a)  Airframe bearing FAA Registration Mark N599DA and manufacturer's serial number 5498.

(b)  two (2) General Electric CF34-3B engines bearing manufacturer's serial numbers 873033 and 873034 (each of which has 750 or more rated takeoff horsepower or the equivalent of such horsepower).

(c)  Standard accessories and optional equipment and such other items fitted or installed on the Aircraft and as may be more particularly described hereinafter:

See <u>Schedule A</u> which is attached hereto and made a part hereof.

(d)  Those items of Lessee furnished equipment described in a bill of sale or bills of sale therefor (copies of which may be appended hereto), delivered by Lessee to Lessor which constitute appliances and equipment which will be installed on the Aircraft.

(e)  one (1) Garrett GTCP36-100E auxiliary power unit bearing manufacturer's serial number P.699.

| | |
|---|---|
| Manufacturer of Airframe: | Bombardier Aerospace Corporation |
| Manufacturer of Engines: | Gulfstream |
| Supplier: | Bombardier Aerospace Corporation |

0 0 0 0 0 0 0 0 9 3 0

9-71

SCHEDULE A

## AVIONICS

Canadair Cockpit audio system
Cabin/Lavatory Call System
Auxiliary Annunciator Panel
Galley/Cabin Disconnect Switch
One 3.5 KVA 115V 60 Hz electrical power converter
Four 115V 60 Hz outlets and modem ports
Strobe Beacon System Lights
MagnaStar C-2000 Airborne Telephone System
Audio System including:

>Six mid/high range speakers and enclosures
>
>Two subwoofer speakers and enclosures
>One integrated chime/page- audio/video amplifier
>One CD changer with 12 disk remote unit
>One remote control Transmitter/Receiver
>One hand-held remote

Video System including:
>One video cassette player (VCP)(Multi standard VHS format)
>Two 18" flatscreen LCD displays
>One DVD player

Airshow Network Cabin Display System
5.6" Airshow cockpit display monitor
Refuel/Defuel panel
Collins 6000 Six Channel Satcom system
Safe Flight, AutoPower, Automatic Throttle System
Jumpseat Communication panel
Cockpit Voice Recorder
Loral Flight Data (DFDR) Recorder
AlliedSignal Ground Proximity Warning System
TCAS II Traffic Alert and Collision Avoidance System
Dual Collins Global Positioning System
Third Laser Inertial Reference System
Two weather radar control panels
Global Wulfsberg AFIS system

Exterior: Matterhorn White with stripes of Gamma Grey, Fire Red, Sky Blue, Blue Green and Fed Ex
Purple.

AND ALL STANDARD EQUIPMENT, ALL ADDITIONS, ACCESSIONS, MODIFICATIONS,
IMPROVEMENTS, REPLACEMENTS, SUBSTITUTIONS, AND ACCESSORIES THERETO AND
THEREFOR, ALL AVIONICS, ONBOARD EQUIPMENT, LOOSE EQUIPMENT LOCATED IN THE
AIRCRAFT, RECORDS, MANUALS, AND LOGBOOKS, IN BOTH WRITTEN AND COMPUTER DATA
FORM, AND WHETHER NOW EXISTING OR HEREAFTER ACQUIRED.

**SCHEDULE NO. 2**

**TO**

**LEASE SUPPLEMENT NO. 1**

<u>Financial Terms</u>

Rent Commencement Date: _____, 2001

Basic Term: 144 months commencing with the Rent Commencement Date through and including the Expiration Date

Basic Rent Dates: the ____ day of each and every calendar month from and including the First Basic Rent Date through and including the Last Basic Rent Date

First Basic Rent Date: _____, ____

Last Basic Rent Date: _____, ____

Expiration Date: _____, ____

Primary Hangar Location: 7310 Highland Road
Oakland County International Airport
Waterford, MI 48327

Acceptance Date: November ____, 2001

Last Acceptance Date: _____, 2001

Date of Last Financial Statements: _____, 2001

Lessor's Cost: $24,143,000.00

**SCHEDULE NO. 2-A**

**TO**

**LEASE SUPPLEMENT NO. 1**

<u>Financial Terms</u> (continued)

Daily Lease Rate:              $_____

Basic Rent:                   Basic Rent Date Nos. 1-72: ____% of Lessor's Cost
                              Basic Rent Date Nos. 73-144: ____% of Lessor's Cost*

Early Purchase Option Amounts:

| Basic Rent Date[s] | Percentage of Lessor's Cost |
|---|---|
| 84 | __.__% |
| 120 | __.__% |

Permitted Deductible:         $0 per occurrence

Estimated Annual Hours:       500

Remarketing Fee:              $_____

Corporate Guarantor:    Delphi Automotive Systems Corporation
LLC Guarantor:          Delphi Automotive Systems LLC

*Rate Reset:     Effective as of the 96th Basic Rent Date, the amount of Basic Rent to be paid by Lessee for the remainder of the Basic Term shall be reset and fixed for the remainder of the Basic Term at an amount determined by multiplying the Remaining Rental Factor by the Lessor's Cost. As used herein, the following terms shall have the meanings set forth below:

"Remaining Rental Factor" shall mean .____, adjusted (upward or downward) by the percentage adjustment calculated, upward or downward, obtained by multiplying ._____ for each basis point corresponding change in the Index Rate from ____%.

"Index Rate" shall mean the weekly average yield on United States Treasury securities adjusted to a constant maturity of _____ (_) year(s) determined by reference to the Selected Interest Rates table of the Federal Reserve Statistical Release H.15(519) (or similar or successor publication) in effect fifteen days prior to the _____ Basic Rent Date.

Effective upon the 96th Basic Rent Date, the Lessor shall prepare new Schedules No. 2-A, 3 and 4 to Lease Supplement No. 1 which reflects the revised payment schedule. Upon furnishing of the foregoing values to the Lessee, such values shall be deemed to replace the Early Purchase Option Amounts set forth on Schedule 2-A to Lease Supplement No. 1, Casualty Values set forth in Schedule No. 3 to Lease Supplement No. 1 and the Upgrade Option Amounts set forth in Schedule No. 4 to Lease Supplement No. 1.
Specific Description of Guarantors:

Initials:

Lessee: _____

Lessor: _____

D  0  0  0  0  0  0  0  9  3  3

9-65

# SCHEDULE NO. 3 TO LEASE

## SUPPLEMENT NO. 1

## CASUALTY VALUES

The Casualty Value of the Aircraft for any Basic Rent Date shall be an amount equal to the Lessor's Cost multiplied by the factor set forth opposite the rental payment number due on such Basic Rent Date.  Upon the exercise of any option to renew the Term by Lessee, Lessor shall provide to Lessee a new Schedule No. 3 to Lease Supplement No. 1 setting forth the Casualty Values for the Renewal Term.

| BASIC RENT DATE | CASUALTY VALUE | BASIC RENT DATE | CASUALTY VALUE |
|---|---|---|---|

Initials:

Lessee: _____

Lessor: _____

9-63

SCHEDULE NO. 4

TO

LEASE SUPPLEMENT NO. 1

**UPGRADE OPTION AMOUNTS**

Initials:

Lessee: _____

Lessor: _____

### LEASE SUPPLEMENT NO. 2
(Closing Terms)

AIRCRAFT LEASE dated as of March 30, 2001 (the "Lease") by and between FLEET NATIONAL BANK, as lessor ("Lessor"), and SM 5105 LLC, as lessee ("Lessee"). All capitalized terms used herein which are not otherwise defined herein shall have the meanings given to such terms in the Lease.

Closing Documents:

On or prior to the Acceptance Date, Lessee has delivered or caused to be delivered the following Closing Documents to Lessor:

1.   The duly executed Aircraft Purchase Agreement between Supplier and SM 5105 LLC dated January 31, 2001, together with all addenda thereto, and, if applicable, the duly executed and authorized assignments of same to Lessor in form and substance satisfactory to Lessor.

2.   Invoices for the Aircraft, including the Engines, from the Supplier showing Lessor as the purchaser thereof, and, if applicable, the duly executed and authorized assignments of same to Lessor in form and substance satisfactory to Lessor, and evidence that such invoices have been paid in full.

3.   Evidence of reservation of an "N" number for the Aircraft, together with an assignment of Lessee's rights in such "N" number to Lessor.

4.   A copy of the Standard Airworthiness Certificate (FAA Form 8100-2) Issued by the FAA for the Aircraft.

5.   A certificate or certificates, executed by the managing members or secretary, as the case may be, or other authorized representatives of Lessee and each Guarantor, as applicable, certifying: (A) that execution, delivery and performance of this Lease, the Guaranty to which such Guarantor is a party, and all ancillary documentation and the entrance by Lessee and such Guarantor into the transactions contemplated hereby and thereby have been authorized and (B) the name(s) of the person(s) authorized to execute and deliver such documents on behalf of Lessee and such Guarantor together with specimen signature(s) of such person, and (C) the organizational documents of Lessee and such Guarantor.

6.   A certificate of insurance as to the coverage required under the Lease accompanied, if requested by Lessor, by the applicable policies and reports of insurance brokers or underwriters pursuant thereto as to the conformity of such coverage with such requirements.

7.   Evidence that FAA Counsel has received in escrow: (A) the executed FAA AC Form 8050-2 Aircraft Bill of Sale (the "FAA Bill of Sale") in the name of Lessor; (B) the executed AC Form 8050-1 Aircraft Registration Application (the "Registration Application") (except for the pink copy which shall be available to be placed on the Aircraft upon acceptance thereof); (C) a Limited Liability Company application by and for each of Lessee and its managing member; (D) executed releases in form and substance satisfactory to FAA Counsel, Lessor's counsel and/or Lessor of any Liens; (E) such other documents as are necessary, in the opinion of Lessor's counsel and/or FAA Counsel to vest good title to the Aircraft in the name of Lessor; and (F) executed duplicates of the Lease, all Riders hereto requiring separate execution, and Lease Supplements No. 1 and 2 executed in triplicate, all the foregoing (except for the Warranty Bill of Sale) being in proper form for filing with the FAA.

8.   UCC financing statements executed by Lessee with respect to the Aircraft and the Collateral (and, where needed, assignment, release and/or termination statements with respect to UCC financing statements of record evidencing an interest in the Aircraft and/or Collateral) in all places which are, in Lessor's opinion, necessary or appropriate to protect Lessor's interest therein.

RSCOMBS 361753                                    35                                    (AIRCRAFT LEASE)

0 0 0 0 0 0 0 0 9 3 6

9-59

9.  An opinion of FAA Counsel satisfactory to Lessor that title to the Airframe is vested in Lessor, Lessor has a valid and perfected interest in the Engines and that the Aircraft (including, without limitation the Airframe and Engines) is free and clear of all other liens and encumbrances of record.

10.  If requested by Lessor, an opinion of counsel for each of Lessee and each Guarantor in form and substance satisfactory to Lessor.

11.  If requested by Lessor, certificate(s) of good standing for Lessee and each Guarantor from the state of their organization and incorporation, respectively, and the state(s) where the Primary Hangar Location and chief executive offices and principal place of business of Lessee and each Guarantor are located.

12.  Such other documents, certificates and opinions, and evidence of such other matters, as Lessor, Lessor's counsel or FAA Counsel may reasonably request.

13.  A Guaranty from each of Corporate Guarantor and LLC Guarantor.

14.  The duly executed Consent to Management Agreement.

15.  The duly executed Consent and Assignment to Charter of Aircraft.


Conditions Subsequent:

On or subsequent to the Acceptance Date, but not later than the date of the Aircraft's first flight under the leasehold conveyed herein, Lessee shall provide written confirmation to Lessor that copies of the Registration Application and Standard Airworthiness Certificate (FAA Form AC 8100-2) pertaining to the Aircraft have been properly placed on the Aircraft.

In addition, if the Aircraft is more than 12,500 pounds maximum certificated takeoff weight, prior to the date of the Aircraft's first flight under the Lease, Lessee shall provide Lessor with written confirmation that:

1.  a copy of the Lease, including Lease Supplements No. 1 and No. 2, has been properly placed on the Aircraft;

2.  a copy of the Lease, including Lease Supplements No. 1 and No. 2 thereto, was mailed, within 24 hours following execution thereof, to the Flight Standards Technical Division of the FAA; and

3.  Lessee has notified the FAA (such notification to have been given by facsimile transmission, telephone or in person to the FAA Flight Standards District Office, General Aviation District Office nearest the airport where such flight will originate) concerning the first flight of the Aircraft under this Lease at least 48 hours prior to takeoff.


[SIGNATURES ON NEXT PAGE]

00000000937

9-57

IN WITNESS WHEREOF, effective as of _____, 2001 the parties hereto have each caused
this Lease Supplement No. 2 to be duly executed by their respective officers, thereunto duly authorized.

FLEET NATIONAL BANK


By: _____
Name: _____
Title: Banking Officer


SM 5105 LLC


By: _____
Name:_____
Title:_____

Address:          c/o 38500 Woodward Avenue
                  Suite 100
                  Bloomfield Hills, Michigan  48304

0  0  0  0  0  0  0  0  9  3  8

9-55

## EXHIBIT B

## TO AIRCRAFT LEASE

## WARRANTY BILL OF SALE [See Bombardier Form, if different]

BOMBARDIER AEROSPACE CORPORATION (the "Seller"), in consideration of the sum of twenty-five million forty-three thousand dollars and 00/100 Dollars ($25,043,000.00) paid by FLEET NATIONAL BANK (the "Buyer"), receipt of which is acknowledged, hereby grants, sells, assigns, transfers and delivers to Buyer the aircraft described below together with the engines installed thereon and all appliances, parts, instruments, appurtenances, accessories, furnishings, avionics, components and other equipment of whatever nature installed on said aircraft and all logbooks, manuals, certificates, data and inspection, modification, maintenance, engineering, technical, overhaul and all other books and records (including all computerized data, records and materials) as pertain to the operation and maintenance of such aircraft (all of the foregoing hereinafter collectively referred to as the "Aircraft"), along with whatever claims and rights Seller may have against the manufacturer and/or supplier of the Aircraft, including, but not limited to, all warranties and representations. At Buyer's request, Seller will cause the manufacturer and/or supplier of the Aircraft to execute an Acknowledgment in form and substance satisfactory to Buyer in its sole discretion.

## DESCRIPTION OF AIRCRAFT

One (1) Bombardier Challenger 604 aircraft bearing FAA Registration Mark N599DA and manufacturer's serial number _____ and ___ ( ) _____ engines, respectively, bearing manufacturer's serial numbers. ____ and ____ and **[one (1) _____·_____ auxiliary power unit bearing manufacturer's serial number _____].**

(See also Schedule A attached hereto and made a part hereof for further description of the Aircraft.)

Seller represents, warrants and agrees to Buyer that (1) Seller is the lawful owner of the full title to the Aircraft and that Buyer will acquire by the terms of this Warranty Bill of Sale good and full title to the Aircraft free and clear of all mortgages, leases, security interests, claims, charges, liens and encumbrances of any kind whatsoever; (2) Seller has the right to sell the Aircraft as aforesaid; (3) Seller shall warrant and defend title to the Aircraft and indemnify Buyer against the claims of any person, party, firm, corporation or entity of any kind whatsoever and (4) the Aircraft had been delivered to Buyer in good order and condition and conforms to the specifications and the requirements and standards applicable thereto.

Seller agrees to save and hold harmless Buyer from and against any and all foreign, Federal, state, municipal and local license fees and taxes of any kind or nature, including, without limiting the generality of the foregoing, any and all excise, personal property, privilege, use and sales taxes, and from and against any and all liabilities, obligations, losses, damages, penalties, claims, actions and suits, including, without limitation, attorney's fees, resulting therefrom and imposed upon, incurred by or asserted against Buyer as a consequence of the sale of the Aircraft to the Buyer.

Seller agrees and acknowledges that the terms and conditions of this Warranty Bill of Sale, including, without limitation, all representations, warranties and agreements for the benefit of Buyer, shall survive the delivery of the Aircraft and the delivery, execution and recording of this or any Federal Aviation Administration Bill of Sale.

RSCOMBS 361753                                    38                                    (AIRCRAFT LEASE)

00 0 0 0 0 0 0 0 9 3 9

9-53

IN WITNESS WHEREOF, Seller has executed this Warranty Bill of Sale this 30th day of March, 2001

SELLER: _____

By: _____

Title: _____

12/17/01  MON 13:27  FAX 4092329589      05-44481-rdd   Doc 555-12   Filed 10/24/05   Entered 10/24/05 15:44:35   Exhibit I   Ø001
(Part 2)  Pg 22 of 25

0 0 0 0 0 0 0 0 9 4 0

9-51

## EXHIBIT C

### SPECIAL TAX INDEMNITY RIDER

Intentionally omitted from FAA filing counterpart thereof as containing confidential financial information.

40-42

**INSURANCE ADDENDUM** ("Insurance Addendum") to Aircraft Lease (N599DA) dated as of March 30, 2001 (the "Lease") by and between Fleet National Bank, as lessor ("Lessor"), and SM 5105 LLC, as lessee ("Lessee").

All capitalized terms used herein which are not otherwise defined herein shall have the meanings given to such terms in the Lease. Except as set forth herein, all of the terms and conditions of the Lease and any supplements, schedules, addenda, exhibits or the like entered into pursuant to the Lease remain in full force and effect. Execution of the Lease by Lessee and Lessor shall be deemed to constitute execution and acceptance of the terms and conditions hereof, whereupon this Insurance Addendum shall be deemed to be a part of the Lease.

The following provisions are hereby incorporated into the Lease:

Insurance.

(a) Aircraft Liability and Property Damage Insurance. Lessee shall maintain at its own cost and expense for the entire Term with insurers satisfactory to Lessor, (i) comprehensive aircraft and general public liability insurance against bodily injury and property damage claims including, without limitation, contractual liability, premises damage, public liability, death and property damage liability, public and passenger legal liability coverage in an amount not less than $100,000,000.00 for each single occurrence and (ii) personal injury liability in an amount not less than $25,000,000.00. Lessee shall also provide worker's compensation insurance with all-states coverage for the Aircraft's crew and maintenance personnel.

(b) Insurance Against Loss or Damage to the Aircraft. Lessee shall maintain at its own cost and expense for the entire Term with insurers satisfactory to Lessor, all-risk ground and flight aircraft hull insurance covering the Aircraft, including foreign object damage, fire and explosion coverage resulting from a collision, cargo, environmental (limited to pollutants released because of a crash or collision of the Aircraft or related to an emergency causing abnormal operation of the Aircraft), damages resulting, from ingestion and lightning and associated electrical damage and comparable insurance with respect to any Engines or Parts while removed from the Aircraft, and with respect to any engines or parts while temporarily installed on the Aircraft, provided that such insurance shall at all times be in an amount not less than the Casualty Value of the Aircraft (such amount determined at the Rent Commencement Date and at each anniversary thereof for the next succeeding year throughout the Term). Lessee shall maintain in effect hijacking (air piracy) insurance with respect to the Aircraft in a face amount of not less than the Casualty Value of the Aircraft (determined as described herein), which shall be in full force and effect worldwide throughout any geographical areas at any time traversed by the Aircraft. Such insurance shall also include war risk, governmental confiscation and expropriation and related insurance.

(c) Lessor as Additional Insured; Notice. Any policies of insurance carried in accordance with this Insurance Addendum and any policies taken out in substitution or replacement of any such policies (i) shall be amended to name Lessor as the owner of the Aircraft and as additional insured as its interests may appear, (ii) with respect to insurance carried in accordance with paragraph (b) of this Insurance Addendum covering the Aircraft, shall provide that any amount payable thereunder which exceeds $100,000.00 in the aggregate shall be paid directly to Lessor as sole loss payee and not to Lessor and Lessee jointly (and, so long as no Event of Default has occurred, such amounts shall be disbursed by Lessor to Lessee or other appropriate Persons in payment of the costs actually incurred with respect to repairs made to the Aircraft so as to restore it to the operating condition required by the M&R Addendum, or shall be disbursed by Lessor as otherwise required by the Lease), and that, provided no Default or Event of Default has occurred and is continuing, any amount(s) of less than $100,000.00 in the aggregate shall be paid to Lessee (and such amounts shall be applied by Lessee to pay the costs of such repairs), (iii) shall provide for thirty (30) days written notice by such insurer of cancellation, change, non-renewal or reduction and (iv) shall provide that in respect of the interests of Lessor in such policies, the insurance shall not be invalidated by any action or inaction of Lessee regardless of any breach or violation of any warranties, declarations or conditions contained in such policies by or binding upon Lessee. Each shall be primary insurance, not subject to any

RSCOMBS 361753                                43                              (AIRCRAFT LEASE)

0 0 0 0 0 0 0 0 9 4 2

co-insurance clause and shall be without right of contribution from any other insurance. Lessee shall arrange for appropriate certification as to the satisfaction of the requirements set forth above in this Insurance Addendum to be delivered to Lessor not later than the Acceptance Date by each such insurer or underwriter therefor, which certification shall specifically acknowledge that the insurance is in conformity with this Insurance Addendum. Notwithstanding the foregoing, Lessee shall promptly provide Lessor with a copy of each policy of insurance required hereunder if it so requests.

(d)  Reports, etc.  Annually on the anniversary of the Acceptance Date, Lessee shall furnish to Lessor a report describing in reasonable detail the insurance then carried and maintained on the Aircraft and certifying that such insurance complies with the terms hereof and, if Lessor shall so request, a copy of each applicable policy. In the event Lessee shall fail to maintain insurance as herein provided, Lessor may, at its option, provide such insurance, and Lessee shall, upon demand, reimburse Lessor for the cost thereof, together with interest at the Late Payment Rate from the date of payment through the date of reimbursement.

(e)  Agreed Value.  Anything herein to the contrary notwithstanding, at all times while the Aircraft is subject to this Lease, the insurance required hereunder shall be for an amount on an "agreed value" basis not less than the Casualty Value.

(f)  No Right To Self-Insure.  Lessee shall not self-insure (by deductible, premium adjustment, or risk retention arrangement of any kind) the insurance required to be maintained hereunder, except to the extent of deductibles usually and customarily maintained by companies engaged in the same or similar business as Lessee and operating the same or similar aircraft, but in no event shall any deductible exceed the Permitted Deductible amount on Schedule No. 2-A to Lease Supplement No. 1. Lessee agrees to give Lessor prompt notice of any damage to or loss of, the Aircraft, or any part thereof.

(g)  Attorney-In-Fact.  Effective upon the occurrence of an Event of Default, Lessee irrevocably appoints Lessor (and any assignee, mortgagee and/or lender of the Lessor) its attorney-in-fact to act in Lessee's name and on its behalf to make, execute, deliver and file any instruments or documents, settle, adjust, receive payment, make claim or proof of loss, endorse Lessee's name on any checks, drafts or other instruments in payment of such claims and to take any action as Lessor (and any such assignee, mortgagee and/or lender) deems necessary or appropriate to carry out the intent of this Insurance Addendum or any agreements, documents or instruments related thereto and to endorse Lessee's name on any checks, drafts or other instruments in payment of claims. To the extent appropriate or permissible under applicable law, such appointment is coupled with an interest, shall be irrevocable and shall terminate only upon payment in full of the obligations set forth in this Lease and/or any agreements, documents or instruments related thereto.

**PURCHASE, EARLY PURCHASE AND RENEWAL OPTION ADDENDUM ("Option Addendum") to** Aircraft Lease (N599DA) dated as of March 30, 2001 (the "Lease") by and between Fleet National Bank, as lessor ("Lessor"), and SM 5105 LLC, as lessee ("Lessee").

All capitalized terms used herein which are not otherwise defined herein shall have the meanings given to such terms in the Lease. Except as set forth herein, all of the terms and conditions of the Lease and any supplements, schedules, addenda, exhibits or the like entered into pursuant to the Lease remain in full force and effect. Execution of the Lease by Lessee and Lessor shall be deemed to constitute execution and acceptance of the terms and conditions hereof, whereupon this Option Addendum shall be deemed to be a part of the Lease.

The following provisions are hereby incorporated into the Lease:

Purchase, Early Purchase and Renewal Options.

(a)   End of Term Purchase Option. So long as (i) Lessee shall not have exercised its renewal option pursuant to paragraph (b) hereof and (ii) the Lease shall not have been earlier terminated or cancelled, Lessee shall be entitled, at its option, upon written notice to Lessor at least one hundred fifty (150) days but no more than two hundred forty (240) days prior to the expiration of the Basic Term, to purchase the Aircraft at the expiration of the Basic Term for an amount, payable in immediately available funds, equal to the greater of (i) sixty-four percent (64%) of the Lessor's Cost, or (ii) the Fair Market Sales Value of the Aircraft as of the end of the Basic Term determined in accordance with paragraph (c) hereof, plus any applicable sales, excise or other taxes imposed as a result of such sale (other than gross or net income taxes attributable to such sale) together with any Basic Rent due and payable on or before such Basic Rent Date and all accrued and unpaid Rent then due and owing.  Lessor's sale of the Aircraft shall be on an **"AS-IS WHERE-IS" BASIS, WITHOUT ANY REPRESENTATION OR WARRANTY, EXPRESS OR IMPLIED, OF ANY KIND WHATSOEVER, BY, OR RECOURSE TO, LESSOR.**

(b)   Renewal Option. So long as (i) no Default or Event of Default shall have occurred and be continuing under the Lease, (ii) Lessee shall not have exercised its purchase option pursuant to paragraph (a) hereof or its early purchase option pursuant to paragraph (e) hereof and (iii) the Lease shall not have been earlier terminated, Lessee shall be entitled, at its option, to extend the Term of the Lease with respect to the Aircraft at the expiration of the Basic Term for an additional period as set forth below. A Renewal Term shall commence at the expiration of the Basic Term. The Lessee's option to renew the Lease for a Renewal Term shall be exercisable by giving written notice to Lessor at least one hundred fifty (150) days but no more than two hundred forty (240) days prior to the expiration of the Basic Term. All of the provisions of the Lease shall be applicable during the Renewal Term, except that, during the Renewal Term, the Basic Rent shall be an amount equal to the Aircraft's Fair Market Rental Value, which shall be determined in accordance with paragraph (c) hereof and the Expiration Date shall be changed to the date the last day of the Renewal Term. During the Renewal Term, Basic Rent shall be payable monthly in advance on the same day of each month as Basic Rent was payable during the Basic Term, which dates shall be deemed "Basic Rent Dates" for purposes of the Lease.

(c)   Determination of Fair Market Sales and Rental Values. If Lessee has elected to exercise its purchase or renewal options, as provided in paragraphs (a) or (b) hereof, then as soon as practicable following Lessor's receipt of the written notice from Lessee of Lessee's intent to exercise such option, Lessor and Lessee shall consult for the purpose of determining the Fair Market Sales Value or Fair Market Rental Value, as applicable, (as defined below) of the Aircraft as of the end of the Basic Term, and any values agreed upon in writing shall constitute such Fair Market Sales Value or Fair Market Rental Value, as the case may be, of the Aircraft for the purposes of this Option Addendum.  If Lessor and Lessee fail to agree upon such value prior to one hundred thirty-five (135) days before the expiration of the Basic Term, Lessor shall appoint an independent appraiser (reasonably acceptable to Lessee) to determine Fair Market Sales Value or Fair Market Rental Value, as the case may be, and that determination shall be final, binding and conclusive.  Lessee and Lessor agree to split the costs and

RSCOMBS 361753                                    45                                    (AIRCRAFT LEASE)