# EXHIBIT I

# (PART 3)

expenses of any such appraisal. For the purposes of this Option Addendum, "Fair Market Sales Value" and "Fair Market Rental Value" shall be determined on the basis of, and shall equal in value, the amount which would be obtained in an arm's length transaction between an informed and willing buyer-user or lessee, as the case may be, (who is neither a lessee in possession nor a used equipment dealer) and an informed and willing seller or lessor, as the case may be, under no compulsion to sell or lease, as the case may be, and in such determination costs of removal of the Aircraft from its then location shall not be a deduction from such Fair Market Sales Value or Fair Market Rental Value, as the case may be, and it shall be assumed (whether or not the same be true) that the Aircraft has been maintained by Lessee and returned to Lessor in accordance with the provisions of the Lease. If on the date upon which Lessee exercises its purchase option pursuant to paragraph (a) above, the actual average annual flight hours accumulated with respect to the Airframe (such product, the "Actual Annual Hours") for the period from the Acceptance Date to such purchase date (such period, the "Operating Period"), is greater than the Estimated Annual Hours (as defined below), then, Lessor and Lessee shall consult for the purpose of determining the Fair Market Sales Value and the Excess Use Amount (as defined below) of the Aircraft as of such purchase date, and any values agreed upon in writing shall constitute such Fair Market Sales Value and Excess Use Amount of the Aircraft for the purposes of this Option Addendum. If Lessor and Lessee fail to agree upon such values within 30 days after the purchase date, then Lessor and Lessee shall follow the appraisal procedure set forth in this paragraph (c) for the purpose of determining the Fair Market Sales Value and Excess Use Amount of the Aircraft. Lessee shall then pay to Lessor within ten (10) days of Lessor's written demand therefor (which demand shall, unless determination of the amount payable is otherwise agreed upon by Lessor and Lessee without consulting with an appraiser, be accompanied by a copy of an appraiser's report containing such determination), an amount equal to the Excess Use Amount. For the purposes of this Option Addendum, (A) "Excess Use Amount" shall mean the amount by which the Aircraft's Fair Market Sales Value has been diminished as a result of the Actual Annual Hours accumulated with respect to the Airframe during the Operating Period being greater than the Estimated Annual Hours per annum on average; and (B) "Estimated Annual Hours" shall mean the anticipated number of average annual flight hours as shown on Schedule 2-A to Lease Supplement No. 1. Without limiting the generality of any other provision of the Lease, Lessee's obligation to pay the Excess Use Amount shall survive the expiration of this Lease.

(d) Time to Exercise Option. Lessee shall be deemed to have waived the foregoing purchase option and renewal option unless Lessee provides Lessor with written notice of its irrevocable election to exercise the applicable option within fifteen (15) days after the Fair Market Sales Value and/or Fair Market Rental Value, as applicable, is determined (by agreement or appraisal).

(e) Early Purchase Option. So long as no Default or Event of Default (that can be cured by payment of money) shall have occurred and be continuing hereunder, Lessee shall be entitled, at its option, on each Early Purchase Date upon written notice to Lessor of at least one hundred twenty (120) but no more than one hundred eighty (180) days prior to the proposed Early Purchase Date, to purchase the Aircraft. Such early purchase by Lessee shall be effective upon the payment to the Lessor on the Early Purchase Date of an amount equal to the applicable Early Purchase Option Amount together any applicable sales, excise or other taxes imposed as a result of such sale (other than gross or net income taxes attributable to such sale), any Basic Rent due and owing on or before such Early Purchase Date and all accrued and unpaid Rent then due and owing for the Aircraft.

On the Early Purchase Date, but in no event prior to Lessor's receipt of the amounts specified in this paragraph (e), Lessor shall sell the Aircraft to Lessee on an "AS-IS, WHERE-IS" BASIS, WITHOUT ANY REPRESENTATION BY, OR RECOURSE OR WARRANTY, EXPRESS OR IMPLIED, OF ANY KIND WHATSOEVER TO LESSOR. Upon receipt of the amounts specified in the foregoing paragraph and upon consummation of the sale of the Aircraft, this Lease shall be deemed terminated.

Unless and until the foregoing payments and performance have been made and/or observed in full by Lessee, Lessee's obligations under this Lease, including, without limitation, the obligation to pay Basic Rent for the Aircraft, shall continue in full force and effect.

RSCOMBS 361753                                46                                (AIRCRAFT LEASE)

Notwithstanding anything to the contrary contained herein or otherwise, Lessee shall not be entitled to purchase the Aircraft pursuant to this paragraph (e) if an Event of Default or Default shall have occurred and be continuing, this Lease shall have been earlier terminated and/or the Aircraft purchased or upgraded on or prior to the proposed Early Purchase Date.

(f)  Additional Definitions.  For purposes of this Option Addendum and the Lease, the following terms shall have the following meanings:

Renewal Term shall mean a period of twelve months.

Early Purchase Date shall mean each of the Basic Rent Date designated as such on Schedule 2A to Lease Supplement No. 1.

Early Purchase Option Amount shall be the amount payable by the Lessee in the event that it exercises its option to purchase the Aircraft pursuant to paragraph (e) hereof, and shall be determined by multiplying the Lessor's Cost of the Aircraft by the percentage set forth opposite the applicable Early Purchase Date set forth on Schedule No. 2-A to Lease Supplement No. 1 to the Lease.

**MAINTENANCE AND RETURN ADDENDUM** ("M&R Addendum") to Aircraft Lease (N599DA) dated as of March 30, 2001 (the "Lease") by and between Fleet National Bank, as lessor ("Lessor"), and SM 5105 LLC, as lessee ("Lessee").

All capitalized terms used herein which are not otherwise defined herein shall have the meanings given to such terms in the Lease. Except as set forth herein, all of the terms and conditions of the Lease and any supplements, schedules, addenda, exhibits or the like entered into pursuant to the Lease remain in full force and effect. Execution of the Lease by Lessee and Lessor shall be deemed to constitute execution and acceptance of the terms and conditions hereof, whereupon this M&R Addendum shall be deemed to be a part of the Lease.

The following provisions are hereby incorporated into the Lease:

I. Maintenance of Aircraft.

(a)  Maintenance and Operation.  During the Term, Lessee, at its own cost and expense, shall (i) maintain, inspect, service, repair, overhaul and test the Airframe and each Engine in accordance with FAA approved and Manufacturer's recommended maintenance programs; (ii) maintain (in the English language) all Records and (iii) promptly furnish to Lessor such information as may be required to enable Lessor to file any reports required by any governmental authority as a result of Lessor's ownership of the Aircraft.  All maintenance procedures shall be performed in accordance with all FAA and Manufacturer's standards and procedures by properly trained, licensed, and certified maintenance sources and maintenance personnel utilizing replacement parts approved by the FAA and the Manufacturer, so as to keep the Airframe and each Engine and Part in good operating condition, ordinary wear and tear alone excepted, and to enable the airworthiness certificate for the Aircraft to be continually maintained.

In the event any Engine is damaged or is being inspected or overhauled, Lessee, at its option, may substitute another engine of the same make and model as the Engine being repaired or overhauled provided such Engine is approved by the FAA and the manufacturer of the Airframe for use on the Aircraft (any such substitute engine being hereinafter referred to as a "Loaner Engine") during the period of such repair or overhaul and provided further (x) installation of the Loaner Engine is performed by an FAA and manufacturer certified mechanic with respect to an aircraft of the type of the Aircraft, (y) the Loaner Engine is removed and the repaired or overhauled original Engine is reinstalled on the Airframe promptly upon completion of the repair or overhaul of the original Engine but in no event later than the expiration, cancellation or earlier termination of the Term and (z) the Loaner Engine is free and clear of all Liens and is maintained in accordance herewith.

(b)  Additions, Alterations and Replacement Parts.  Lessee shall be entitled from time to time during the Term to acquire and install on the Aircraft at Lessee's own cost and expense (and Lessor hereby appoints Lessee to be Lessor's agent for such purpose, so long as no Event of Default has occurred and is continuing), any additional accessory, device or equipment as may be available at such time ("Additions") but only so long as such Additions (i) are ancillary to the Aircraft; (ii) are not required to render the Aircraft complete for its intended use by Lessee; (iii) will not impair the originally intended function or use of the Aircraft or diminish the value of the same; (iv) can be readily removed without causing material damage to the Aircraft and (v) in the event that Lessee has executed a Special Tax Indemnity Rider to the Lease, do not result in a "Tax Loss" as such term is defined in such Special Tax Indemnity Rider.  Title to each Addition which is not removed by Lessee prior to the return of the Aircraft to Lessor shall vest in Lessor upon such return.

Any alteration or modification ("Alterations") with respect to the Aircraft that may at any time during the Term be required to comply with any applicable law or any governmental rule or regulation, including, without limitation, any airworthiness directives, shall be made at the expense of Lessee.

Lessee, at its own cost and expense, will promptly replace all Parts which may from time to time become worn out, lost, stolen, taken, destroyed, seized, confiscated, requisitioned, damaged beyond repair or permanently rendered or declared unfit for use for any reason whatsoever.

Lessee shall repair all damage to the Aircraft resulting from the installation and removal of Additions, Alterations and/or replacement parts so as to restore the Aircraft to its condition prior to installation, ordinary wear and tear excepted.

Alterations and/or replacement parts shall be deemed accessions, and title thereto shall be immediately vested in Lessor without cost or expense to Lessor.

(c) Aircraft Marking. Lessee agrees, at its own cost and expense, to (i) cause the Airframe and the Engines to be kept numbered with the identification or serial number therefor as specified in Schedule No. 1 to Lease Supplement No. 1 hereof; (ii) prominently display on the Aircraft that "N" number, and only that "N" number, specified in Schedule No. 1 to Lease Supplement No. 1 or such other "N" number as has been approved in writing by the Lessor and duly recorded with the FAA; (iii) notify Lessor in writing thirty (30) days prior to making any change in the configuration, appearance or coloring of the Aircraft from the time the Aircraft is accepted by Lessee hereunder (other than changes in configuration mandated by the FAA or changes which are reasonably consistent with the configuration, appearance and coloring of the Aircraft as of the Acceptance Date) and in the event of any such change or modification of configuration, coloring or appearance, (other than as permitted hereby) at the request of Lessor to restore the Aircraft to the configuration, coloring and/or appearance of the Aircraft as of the Acceptance Date or, at Lessor's option to pay to Lessor an amount equal to the reasonable cost of such restoration and (iv) affix and maintain in the Airframe adjacent to the airworthiness certificate and on each Engine a two-inch by four-inch plaque made of metal or other permanent material or permanently painted stencil bearing the following legend:

"This property is Owned by and Leased from Fleet National Bank, c/o Fleet Capital Corporation, One Financial Plaza, Fifth Floor, Providence, Rhode Island 02903. Any removal, alteration, disposal or other change in the condition or location of this property must be approved by the Owner-Lessor."

and such other markings as from time to time may be required by law or otherwise deemed necessary or advisable by Lessor in order to protect the title of Lessor to the Aircraft and the rights of Lessor under this Lease.

II. Return of Aircraft.

(a) Condition Upon Return. Unless purchased by Lessee, upon the expiration, cancellation or other termination of the Lease (whether following an Event of Default or otherwise), Lessee, at its own expense, will return the Aircraft (together with all Records) to Lessor at a location specified by the Lessor within the continental United States and in the condition in which the Aircraft is required to be maintained pursuant to this M&R Addendum and any other applicable provisions of the Lease. The Aircraft shall be fully equipped with the Engines or the same number, make and model number of engines as are set forth on Schedule No. 1 to Lease Supplement No. 1, which shall fully comply with this M&R Addendum, and which, in the opinion of Lessor, have the same or improved utility, value, useful life, performance, and efficiency (normal wear and tear excepted) as the Engines had on the Acceptance Date and are suitable for use on the Airframe and owned by Lessor and properly installed thereon. Lessee shall not be relieved of any of its duties, obligations, covenants, or agreements under the Lease (including, without limitation, its obligation to pay Rent) prior to the return of the Aircraft in the manner and condition required with respect to such return. In addition, upon the return of the Aircraft, upon the expiration or other termination of this Lease (whether following an Event of Default or otherwise), Lessee shall pay to Lessor the Remarketing Fee. The Aircraft, at Lessee's expense, upon redelivery pursuant hereto (i) shall have a currently effective FAA airworthiness certificate; (ii) shall be free and clear of all Liens other than the Lease and any Lessor's Liens; (iii) shall be in the same configuration and in the same operating condition, ordinary wear and tear excepted, as when delivered to Lessee on the

Acceptance Date; (iv) shall be in good operating condition, in good physical condition and good appearance (ordinary wear and tear excepted) with all systems operating normally; (v) shall have no damage history (including, without limitation, any damage history required to be reported on a FAA form #337 or pursuant to any other governmental reporting requirement), unless such damage history has been repaired in accordance with the provisions hereof, and after the making of such repairs, the value of the Aircraft has not been negatively affected (or in the event that the value of the Aircraft continues to be negatively affected after such repairs, Lessee may avoid any Default that might otherwise result therefrom by paying to Lessor an amount equal to the difference between the value of the Aircraft without such history and the value of the Aircraft with such history); (vi) shall have no open (and shall be in compliance with) all mandatory service bulletins, manufacturer's directives or airworthiness directives and all other applicable service, maintenance, repair and overhaul regulations issued by the FAA and/or any Manufacturer, and (vii) shall be otherwise in the condition and repair required under the Lease. For purposes of clause (v) of the preceding sentence, the existence and the extent of any diminution in value contemplated therein shall be determined by mutual agreement, and if no such agreement is reached between the parties within ten (10) Business Days of Lessor's notice that it desires a valuation with respect to such damage history (the "Damage History Notice"), the parties will use the appraisal process set forth in Paragraph (c) of the Option Addendum to determine the existence and extent of such diminution. The parties will use their best efforts to complete such valuation as promptly as practicable, but, in any event, within thirty (30) Business Days after the Damage History Notice. A final determination regarding the existence and extent of any diminution shall be binding and conclusive on both parties. Upon Lessor's request, Lessee shall assign to Lessor Lessee's rights under any manufacturer's or servicer's maintenance service contracts and/or extended warranties for the Aircraft, the Engines and/or any Parts. If at the time of the return of the Aircraft to Lessor, the actual average annual flight hours accumulated with respect to the Airframe (such product, the "Actual Annual Hours") for the period from the Acceptance Date to such return date (such period, the "Operating Period"), is ten percent (10%) greater than the Estimated Annual Hours (as defined below), then, Lessor and Lessee shall consult for the purpose of determining the Fair Market Sales Value and the Excess Use Amount (as defined below) of the Aircraft as of the return date, and any values agreed upon in writing shall constitute such Fair Market Sales Value and Excess Use Amount of the Aircraft for the purposes of this M&R Addendum. If Lessor and Lessee fail to agree upon such values within 30 days after the return date, then Lessor and Lessee shall follow the appraisal procedure set forth in paragraph (c) of the Option Addendum to the Lease for the purpose of determining the Fair Market Sales Value and Excess Use Amount of the Aircraft. Lessee shall then pay to Lessor within ten (10) days of Lessor's written demand therefor (which demand shall, unless determination of the amount payable is otherwise agreed upon by Lessor and Lessee without consulting with an appraiser, be accompanied by a copy of an appraiser's report containing such determination), an amount equal to the Excess Use Amount. For the purposes of this M&R Addendum, (A) "Excess Use Amount" shall mean the amount by which the Aircraft's Fair Market Sales Value has been diminished as a result of the Actual Annual Hours accumulated with respect to the Airframe during the Operating Period being greater than the Estimated Annual Hours per annum on average; and (B) "Estimated Annual Hours" shall mean the anticipated number of average annual flight hours as shown on Schedule 2-A to Lease Supplement No. 1.

(b)  Mid-Life Condition.  At the time of such return (i) each Engine shall have available operating hours until both the next scheduled "hot section" inspection and the next scheduled major overhaul of not less than fifty percent (50%) of the total operating hours available between such "hot section" inspection or major overhaul, as the case may be; (ii) the Airframe shall have remaining not less than (aa) fifty percent (50%) of the available operating hours allowed between major airframe inspections; and (bb) fifty percent (50%) of number of available operating months allowed between major airframe inspections until the next scheduled major airframe inspection; and (iii) all life limited parts and components shall have remaining not less than fifty percent (50%) of the available hours, cycles and/or months, as the case may be, until the next scheduled replacement.  In addition to the requirements set forth in clauses (i), (ii) and (iii) above, all inspections and scheduled maintenance required to be performed on the Airframe, Engines and all life limited parts and components within one hundred twenty (120) days of the date of return and/or one hundred hours (100) of additional operation shall have been performed by Lessee.

(c) Engines. In the event that any Engine does not meet the conditions set forth in Section II (b) (i) above, for each such Engine Lessee shall pay Lessor an amount equal to the sum of (i) the current estimated cost of the next scheduled "hot section" inspection (including in such estimated cost, all required replacements of life limited parts) multiplied by the fraction wherein the numerator shall be the greater of (A) zero and (B) the remainder of (x) the actual number of operating hours since the previous hot section inspection, minus (y) 50% of the total operating hours allowable between hot section inspections, and the denominator shall be the total operating hours allowable between hot section inspections, plus (ii) for each such Engine, the product of the current cost of the next scheduled major overhaul (including in such estimated cost, all required replacements of life limited parts) multiplied by the fraction wherein the numerator shall be the greater of (A) zero and (B) the remainder of (x) the actual number of hours of operation since the previous major overhaul minus (y) 50% of the total operating hours allowable between major overhauls, and the denominator shall be the total operating hours allowable between major overhauls.

Notwithstanding the foregoing, the requirements of Section II (b)(i) above and the final sentence of Section II (b) above (but solely with respect to the Engines) shall be deemed to have been satisfied if at the time of return of the Engines (x) the Engines being returned to Lessor shall be covered by a service and maintenance contract in form and substance reasonably satisfactory to Lessor which provides for the maintenance and/or overhaul of the Engines ("Maintenance Contract"), (y) either (i) adequate reserves for future required maintenance and/or overhaul shall have been provided for pursuant to such Maintenance Contract or (ii) all amounts due and payable pursuant to such Maintenance Contract shall have been paid in full through the date of return and (z) the entity which provides the maintenance and/or overhaul services under such Maintenance Contract shall either (i) recognize the transfer by Lessee to Lessor of the rights and interests of Lessor (or its designee) under such Maintenance Contract or (ii) acknowledge the rights and interests of Lessor (or its designee) under such Maintenance Contract.

(d) Airframe. In the event that the Airframe does not meet the conditions set forth in Section II (b) (ii) above, Lessee shall pay Lessor an amount equal to the sum of the product of the current estimated cost of the next scheduled major airframe and pressure vessel inspection (including in such estimated cost, all required replacement of life limited parts) multiplied by the greater of the fraction wherein the numerator shall be the greater of (A) zero and (ii) the remainder of (x) the actual number of respective operating hours or months of operation since previous major airframe and pressure vessel inspection, minus (y) 50% of the respective total operating hours or months of operation allowable between scheduled major airframe and pressure vessel inspections, and the denominator shall be the respective total operating hours or months of operation between scheduled major airframe and pressure vessel inspections.

(e) Parts and Components. In the event any life limited part or component does not meet the conditions set forth in Section II (b)(iii) above, Lessee shall pay to Lessor with respect to each part or component for which said requirement is not met the dollar amount obtained by multiplying (i) the ratio that the life expended in excess of fifty percent (50%) of the available hours, cycles and/or months, as the case may be, until the next scheduled replacement bears to the total allowable life (measured in hours, cycles and/or months, as the case may be) for such part or component by (ii) Lessor's cost of replacement of such part or component. Lessor's cost of replacement of a part or component shall include Lessor's then current cost of purchasing the part or component itself and all of Lessor's then current costs associated with the replacement.

(f) Treatment of Charges. All prorated inspection and/or overhaul charges, if any, shall be payable as Supplemental Rent and shall be due upon presentation to Lessee of an invoice setting forth in reasonable detail the calculation of such amounts due, including the names of all sources used for the required cost estimates. Unless both Lessor and Lessee agree to an alternative source, the Manufacturers of the Airframe and Engines shall be used as the sources for all cost estimates.

RSCOMBS 361753                              51                              (AIRCRAFT LEASE)

(g)  Fuel and Records.  Upon the return of the Aircraft in accordance with the terms and conditions hereof, (i) each fuel tank shall contain no less than fifty percent (50%) of its full capacity or, in the case of differences in such quantity, an appropriate adjustment will be made at the then current market price of fuel and (ii) Lessee shall deliver all Records to Lessor.  In the event any Records are missing or incomplete, Lessor shall have the right to cause any such Records to be reconstructed at the reasonable expense of Lessee.

(h)  Storage.  Upon the expiration, cancellation or other termination of the Lease, Lessee will, if requested by Lessor, permit Lessor to store the Aircraft at the Primary Hangar Location.  During such storage period Lessee will, at its own cost and expense, keep the Aircraft properly hangared, and will permit Lessor or any Person designated by Lessor, including the authorized representatives of any prospective purchaser, lessee or user of the Aircraft to inspect the same.  Lessee shall not be liable, except in the case of negligence, gross negligence or intentional misconduct of Lessee or of its employees or agents, for injury to, or the death of, any Person exercising, either on behalf of Lessor or any prospective purchaser, lessee or user, the rights of inspection granted hereunder.  Lessee shall bear the risk of loss and shall pay any and all expenses connected with insuring and maintaining the Aircraft during such storage period.  Notwithstanding the foregoing, upon the expiration of the Term for any reason other than an expiration, cancellation or termination which occurs as a result of an Event of Default, the storage period provided for in this paragraph and the obligation to hangar and insure the Aircraft shall be limited to fifteen (15) days.

(i)  Replacement Engines.  In the event that any engine not owned by Lessor shall be installed on the returned Airframe as set forth in Section II (a) hereof, then Lessee will, concurrently with such delivery, at its own expense, furnish Lessor with a full warranty bill of sale, in form and substance satisfactory to Lessor, with respect to each such engine and with a written opinion of FAA Counsel to the effect that, upon such return, Lessor will acquire a valid and perfected interest in such engine free and clear of all Liens (except Lessor's Liens).  Thereupon, unless a Default or Event of Default shall have occurred and be continuing, Lessor will transfer to Lessee, on an "AS-IS, WHERE-IS" BASIS WITHOUT ANY REPRESENTATION OR WARRANTY BY, OR RECOURSE OR WARRANTY TO, LESSOR, all of Lessor's right, title and interest in and to any Engine not installed on the Airframe at the time of the return of such Airframe.

(j)  Inspections.  Not more than ninety (90) days prior to the expiration of the Lease, upon the written request of Lessor, Lessee shall, at its expense, review the maintenance records of the Aircraft to determine if the Aircraft is in the condition required by this M&R Addendum.  Following such review, Lessee shall certify to Lessor that such Aircraft is in the condition required by this M&R Addendum according to the maintenance records for such Aircraft, or, if the maintenance records so indicate, indicate what maintenance or repair is needed to bring the Aircraft to the specified condition.

Lessor shall have the right, but not the duty, to inspect the Aircraft, any component thereof and/or the Records, at any reasonable time and from time to time, wherever located, upon reasonable prior written notice to Lessee.  Upon request of Lessor, Lessee shall confirm to Lessor the location of the Aircraft and shall, at any reasonable time and from time to time, upon reasonable prior written notice to Lessee, make the Aircraft and/or the Records available to Lessor for inspection.

(k)  Survival.  The provisions of this M&R Addendum shall survive the expiration, cancellation or other termination of the Lease and the return of the Aircraft for any reason whatsoever.

(l)  Injunctive Relief.  Without limiting any other terms or conditions of the Lease, the provisions of this M&R Addendum are of the essence of the Lease, and upon application to any court of equity having jurisdiction, Lessor shall be entitled to a decree against Lessee requiring specific performance of the covenants of Lessee set forth herein.

UPGRADE ADDENDUM ("Upgrade Addendum") to Aircraft Lease (N599DA) dated as of March 30, 2001 (the "Lease") by and between Fleet National Bank, as lessor ("Lessor"), and SM 5105 LLC, as lessee ("Lessee").

All capitalized terms used herein which are not otherwise defined herein shall have the meanings given to such terms in the Lease. Except as set forth herein, all of the terms and conditions of the Lease and any supplements, schedules, addenda, exhibits or the like entered into pursuant to the Lease remain in full force and effect. Execution of the Lease by Lessee and Lessor shall be deemed to constitute execution and acceptance of the terms and conditions hereof, whereupon this Upgrade Addendum shall be deemed to be a part of the Lease.

The following provisions are hereby incorporated into the Lease:

Upgrade Option.  So long as no Default or Event of Default shall have occurred and be continuing hereunder, Lessee shall be entitled, at its option, upon at least one hundred twenty (120) days but no more than two hundred forty (240) days prior written notice to Lessor, to replace the Aircraft on any Basic Rent Date commencing with the seventy-second (72nd) Basic Rent Date and ending with the one hundred eighth (108th) Basic Rent Date (any such date for purposes of this Section called an "Upgrade Date"), with an aircraft (the "Upgrade Aircraft") which has a value, utility, and useful life better than the Aircraft immediately prior to the exercise by Lessee of its option under this Upgrade Addendum to upgrade the Aircraft. Any such proposed Upgrade Aircraft shall be expressly subject to the prior written approval and consent of the Lessor, which approval and consent shall be given, if at all, in Lessor's sole discretion.  On the Upgrade Date, the Lessee shall pay to Lessor in immediately available funds, (i) the Upgrade Option Amount, (ii) the Basic Rent due for the Aircraft on the Upgrade Date, (iii) all accrued and unpaid Rent then due and owing plus (iv) any applicable sales, excise or other taxes imposed as a result of the sale of the Aircraft (other than gross or net income taxes attributable to such sale).  Upon full compliance by Lessee with the terms of this Upgrade Addendum, the Lease shall terminate and Lessor will transfer to Lessee or its designee, all of Lessor's right, title and interest, if any, in and to the Aircraft.  **SUCH TRANSFER SHALL BE "AS-IS, WHERE-IS," WITHOUT RECOURSE TO LESSOR, AND LESSOR SHALL NOT BE DEEMED TO HAVE MADE, AND LESSOR HEREBY DISCLAIMS, ANY REPRESENTATION OR WARRANTY, EITHER EXPRESS OR IMPLIED, AS TO THE AIRCRAFT SO TRANSFERRED TO LESSEE.**

Notwithstanding anything to the contrary contained herein or otherwise, until such time as the Lease is actually terminated pursuant to the terms hereof, in no event shall Lessee's exercise of this option to upgrade the Aircraft under the circumstances contemplated by the terms of this Upgrade Addendum result in any reduction in or delay in the payment of Basic Rent or any other payments of any kind whatsoever due under the Lease or relieve Lessee of any obligations of any kind whatsoever under the Lease or any document, agreement or instrument related thereto.

Lessor's Option to Lease.  If the Lessor determines that the Upgrade Aircraft is acceptable, Lessor shall have the option, subject to satisfaction of Lessor's then current underwriting standards and completion of Lessor's then current underwriting process, to lease the Upgrade Aircraft to Lessee pursuant to the terms hereof.  In the event that Lessor exercises its option to lease pursuant hereto, on the Upgrade Date Lessee, at its own cost and expense, shall convey to the Lessor good and marketable title to the Upgrade Aircraft, free and clear of any Liens or title defects of any kind whatsoever (for no additional cost to Lessor, including, without limitation, any purchase price amounts or any taxes of any kind whatsoever relating to the conveyance or the sale of the Upgrade Aircraft).  Prior to or at the time of any such conveyance, Lessee, at its own cost and expense, will furnish Lessor with such documents to evidence such conveyance as Lessor shall request in its sole discretion, including, without limitation, bills of sale and opinions of Lessee's counsel and FAA Counsel comparable to those furnished on the Acceptance Date, which documents shall be in form and substance satisfactory in all respects to Lessor in its sole discretion.  In addition, Lessor and Lessee agree that any such lease financing of the Upgrade Aircraft shall be effected utilizing documentation which reflects Lessor's then current standard aircraft lease financing documents, but taking into account the

negotiated points of the Lease, and the financial terms of such financing shall reflect Lessor's then current financial terms for similar customers and aircraft.

In the event, and only in such event, that Lessor elects not to exercise the foregoing option to lease, Lessee shall be entitled to exercise the upgrade option set forth in this Upgrade Addendum free and clear of Lessor's option to lease.

<u>Additional Terms and Definitions</u>.  For purposes of this Upgrade Addendum and the Lease, the following definitions and terms shall apply:

<u>Upgrade Option Amount</u> shall mean (i) in the event that Lessor exercises its option to lease the Upgrade Aircraft to Lessee:  an amount equal to the Lessor's Cost multiplied by the factor set forth on Schedule No. 4 to Lease Supplement No. 1 to the Lease for the applicable Upgrade Option Date or (ii) in the event that Lessor does not exercise its option to lease the Upgrade Aircraft to Lessee:  an amount equal to the greater of (A) the Fair Market Value of the Aircraft and (B) an amount equal to the Lessor's Cost multiplied by the factor set forth on Schedule No. 4 to Lease Supplement No. 1 to the Lease for the applicable Upgrade Option Date.

<u>Determining Fair Market Value</u>:  If Lessee has elected to exercise its upgrade option, then as soon as practicable following Lessor's receipt of the written notice from Lessee of Lessee's intent to exercise such option, Lessor and Lessee shall consult for the purpose of determining the Fair Market Value of the Aircraft as of the Upgrade Date.  Any values agreed upon in writing shall constitute such Fair Market Value of the Aircraft for the purposes of this Upgrade Addendum.  If Lessor and Lessee fail to agree upon such value within thirty (30) days after Lessee has elected its upgrade option, Lessor shall appoint an independent appraiser (reasonably acceptable to Lessee) to determine Fair Market Value and that determination shall be final, binding and conclusive.  Lessee agrees to pay the costs and expenses of any such appraisal.

## LEASE SUPPLEMENT NO. 1
### (Acceptance Certificate)

AIRCRAFT LEASE dated as of March 30, 2001 (the "Lease") by and between FLEET NATIONAL BANK, as lessor ("Lessor"), and SM 5105 LLC, as lessee ("Lessee").

(a) The Aircraft.

Lessee hereby acknowledges, agrees and certifies that the Aircraft as set forth and described in Schedule No. 1 hereto is in Lessee's possession, has been inspected by Lessee to its complete satisfaction, has been found to be in good working order, repair and condition and fully equipped to operate as required under applicable law for its purpose, is of a size, design, capacity and manufacture selected by Lessee and suitable for Lessee's purposes, and is, as of the date set forth below, unconditionally, irrevocably and fully accepted by Lessee for lease under the Lease. Lessee hereby further unconditionally and irrevocably reaffirms its acknowledgments and agreements in the Lease. All capitalized terms used herein which are not otherwise defined herein shall have the meanings given to such terms in the Lease.

(b) Representations by Lessee.

Lessee hereby represents and warrants to Lessor that on the date hereof:

(1) The representations and warranties of Lessee set forth in the Lease and all certificates and opinions delivered in connection therewith were true and correct in all material respects when made and are true and correct in all material respects as of the date hereof, with the same force and effect as if the same had been made on this date.

(2) Lessee has satisfied or complied with all conditions precedent and requirements as set forth in the Lease and Lease Supplements which are required to be or to have been satisfied or complied with on or prior to the date thereof.

(3) No Default or Event of Default under the Lease has occurred and is continuing on the date hereof.

(4) Lessee has obtained, and there are in full force and effect, such insurance policies with respect to the Aircraft as are required to be obtained under the terms of the Lease.

(5) Lessee has furnished no equipment for the Aircraft other than as stated on Schedule No. 1 hereto or permitted as an Addition thereto pursuant to the Lease.

(6) The facts, terms, information, description and costs set forth in the attached Schedules No. 1, No. 2, No. 2-A, No. 3 and No. 4 hereto are true, complete, accurate and correct.

(7) The Lease shall be deemed a "finance lease" under Section 2A-103 (g) of the UCC.

Date of unconditional, irrevocable and final acceptance by Lessee:  December  17 2001.

## [SIGNATURE ON NEXT PAGE]

RSCOMBS 400628                                            (LEASE SUPPLEMENT NO. 1)

0 0 0 0 0 0 0 0 9 5 4

9-23

IN WITNESS WHEREOF, effective as of *Dumbu 17*, 2001, Lessee has caused this Lease Supplement No. 1 to be duly executed by its officer thereunto duly authorized.

SM 5105 LLC, by its member, Delphi Automotive Systems LLC

By: *John Blahnik*

Name: *John Blahnik*

Title: *Treasurer*

SCHEDULE NO. 1

TO

LEASE SUPPLEMENT NO. 1

## Description of Aircraft

Bombardier Inc. CL-600-2B16 (Variant 604) aircraft which consists of the following components:

(a)   Airframe bearing FAA Registration Mark N599DA and manufacturer's serial number 5498.

(b)   two (2) General Electric CF34-3B engines bearing manufacturer's serial numbers 873033 and 873034 (each of which has 750 or more rated takeoff horsepower or the equivalent of such horsepower).

(c)   Standard accessories and optional equipment and such other items fitted or installed on the Aircraft and as may be more particularly described hereinafter:

See Schedule A which is attached hereto and made a part hereof.

(d)   Those items of Lessee furnished equipment described in a bill of sale or bills of sale therefor (copies of which may be appended hereto), delivered by Lessee to Lessor which constitute appliances and equipment which will be installed on the Aircraft.

(e)   one (1) Garrett GTCP36-100E auxiliary power unit bearing manufacturer's serial number P.699.

Manufacturer of Airframe:          Bombardier Aerospace Corporation
Manufacturer of Engines:          Gulfstream
Supplier:                                    Bombardier Aerospace Corporation

0 0 0 0 0 0 0 0 9 5 6

9-19

SCHEDULE A

### AVIONICS

Canadair Cockpit audio system
Cabin/Lavatory Call System
Auxiliary Annunciator Panel
Galley/Cabin Disconnect Switch
One 3.5 KVA 115V 60 Hz electrical power converter
Four 115V 60 Hz outlets and modem ports
Strobe Beacon System Lights
MagnaStar C-2000 Airborne Telephone System
Audio System including:
      Six mid/high range speakers and enclosures
      Two subwoofer speakers and enclosures
      One integrated chime/page- audio/video amplifier
      One CD changer with 12 disk remote unit
      One remote control Transmitter/Receiver
      One hand-held remote
Video System including:
      One video cassette player (VCP)(Multi standard VHS format)
      Two 18" flatscreen LCD displays
      One DVD player
Airshow Network Cabin Display System
5.6" Airshow cockpit display monitor
Refuel/Defuel panel
Collins 6000 Six Channel Satcom system
Safe Flight, AutoPower, Automatic Throttle System
Jumpseat Communication panel
Cockpit Voice Recorder
Loral Flight Data (DFDR) Recorder
AlliedSignal Ground Proximity Warning System
TCAS II Traffic Alert and Collision Avoidance System
Dual Collins Global Positioning System
Third Laser Inertial Reference System
Two weather radar control panels
Global Wulfsberg AFIS system

Exterior: Matterhorn White with stripes of Gamma Grey, Fire Red, Sky Blue, Blue Green and
Fed Ex Purple.

      AND ALL STANDARD EQUIPMENT, ALL ADDITIONS, ACCESSIONS,
MODIFICATIONS, IMPROVEMENTS, REPLACEMENTS, SUBSTITUTIONS, AND
ACCESSORIES THERETO AND THEREFOR, ALL AVIONICS, ONBOARD EQUIPMENT,
LOOSE EQUIPMENT LOCATED IN THE AIRCRAFT, RECORDS, MANUALS, AND
LOGBOOKS, IN BOTH WRITTEN AND COMPUTER DATA FORM, AND WHETHER NOW
EXISTING OR HEREAFTER ACQUIRED.

0 0 0 0 0 0 0 9 5 7

9-17

## SCHEDULE NO. 2

### TO

## LEASE SUPPLEMENT NO. 1

**Financial Terms**

| | |
|---|---|
| Rent Commencement Date: | December 20, 2001 |
| Basic Term: | 144 months commencing with the Rent Commencement Date through and including the Expiration Date |
| Basic Rent Dates: | the 20th day of each and every calendar month from and including the First Basic Rent Date through and including the Last Basic Rent Date |
| First Basic Rent Date: | December 20, 2001 |
| Last Basic Rent Date: | November 20, 2013 |
| Expiration Date: | December 19, 2013 |
| Primary Hangar Location: | 7310 Highland Road Oakland County International Airport Waterford, MI 48327 |
| Acceptance Date: | December *17*, 2001 |
| Last Acceptance Date: | December 17, 2001 |
| Date of Last Financial Statements: | September 30, 2001 |
| Lessor's Cost: | $24,149,760.00 |

0 0 0 0 0 0 0 0 9 5 8

9-15

# SCHEDULE NO. 2-A

## TO

## LEASE SUPPLEMENT NO. 1

Financial Terms (continued)

Intentionally omitted from FAA filing counterpart thereof as containing confidential financial information.

6

0 0 0 0 0 0 0 0 9 5 9

9-13

SCHEDULE NO. 3 TO LEASE

SUPPLEMENT NO. 1

CASUALTY VALUES

Intentionally omitted from FAA filing counterpart thereof as containing confidential financial information.

7

0 0 0 0 0 0 0 0 9 6 0

9-11

SCHEDULE NO. 4

TO

LEASE SUPPLEMENT NO. 1

UPGRADE OPTION AMOUNTS

Intentionally omitted from FAA filing counterpart thereof as containing confidential financial information.

0  0  0  0  0  0  0  9  8  1                                          9-9

## LEASE SUPPLEMENT NO. 2
(Closing Terms)

AIRCRAFT LEASE dated as of March 30, 2001 (the "Lease") by and between FLEET NATIONAL BANK, as lessor ("Lessor"), and SM 5105 LLC, as lessee ("Lessee"). All capitalized terms used herein which are not otherwise defined herein shall have the meanings given to such terms in the Lease.

Closing Documents:

On or prior to the Acceptance Date, Lessee has delivered or caused to be delivered the following Closing Documents to Lessor:

1.  The duly executed Aircraft Purchase Agreement between Supplier and SM 5105 LLC dated January 31, 2001, together with all addenda thereto, and, if applicable, the duly executed and authorized assignments of same to Lessor in form and substance satisfactory to Lessor.

2.  Invoices for the Aircraft, including the Engines, from the Supplier showing Lessor as the purchaser thereof, and, if applicable, the duly executed and authorized assignments of same to Lessor in form and substance satisfactory to Lessor, and evidence that such invoices have been paid in full.

3.  Evidence of reservation of an "N" number for the Aircraft, together with an assignment of Lessee's rights in such "N" number to Lessor.

4.  A copy of the Standard Airworthiness Certificate (FAA Form 8100-2) issued by the FAA for the Aircraft.

5.  A certificate or certificates, executed by the managing members or secretary, as the case may be, or other authorized representatives of Lessee and each Guarantor, as applicable, certifying: (A) that execution, delivery and performance of this Lease, the Guaranty to which such Guarantor is a party, and all ancillary documentation and the entrance by Lessee and such Guarantor into the transactions contemplated hereby and thereby have been authorized and (B) the name(s) of the person(s) authorized to execute and deliver such documents on behalf of Lessee and such Guarantor together with specimen signature(s) of such person, and (C) the organizational documents of Lessee and such Guarantor.

6.  A certificate of insurance as to the coverage required under the Lease accompanied, if requested by Lessor, by the applicable policies and reports of insurance brokers or underwriters pursuant thereto as to the conformity of such coverage with such requirements.

7.  Evidence that FAA Counsel has received in escrow: (A) the executed FAA AC Form 8050-2 Aircraft Bill of Sale (the "FAA Bill of Sale") in the name of Lessor; (B) the executed AC Form 8050-1 Aircraft Registration Application (the "Registration Application") (except for the pink copy which shall be available to be placed on the Aircraft upon acceptance thereof); (C) a Limited Liability Company application by and for each of Lessee and its managing member; (D) executed releases in form and substance satisfactory to FAA Counsel, Lessor's counsel and/or Lessor of any Liens; (E) such other documents as are necessary, in the opinion of Lessor's counsel and/or FAA Counsel to vest good title to the Aircraft in the name of Lessor; and (F) executed duplicates of the Lease, all Riders hereto requiring separate execution, and Lease Supplements No. 1 and 2

executed in triplicate, all the foregoing (except for the Warranty Bill of Sale) being in proper form for filing with the FAA.

8. UCC financing statements authenticated and/or executed by Lessee with respect to the Aircraft and the Collateral (and, where needed, assignment, release and/or termination statements with respect to UCC financing statements of record evidencing an interest in the Aircraft and/or Collateral) in all places which are, in Lessor's opinion, necessary or appropriate to protect Lessor's interest therein. In the alternative, in lieu of executing UCC financing statements, Lessee hereby authorizes Lessor, in such jurisdictions where such action is authorized by law, to effect any such recordation or filing without the signature of Lessee thereto.

9. An opinion of FAA Counsel satisfactory to Lessor that title to the Airframe is vested in Lessor, Lessor has a valid and perfected interest in the Engines and that the Aircraft (including, without limitation the Airframe and Engines) is free and clear of all other liens and encumbrances of record.

10. If requested by Lessor, an opinion of counsel for each of Lessee and each Guarantor in form and substance satisfactory to Lessor.

11. If requested by Lessor, certificate(s) of good standing for Lessee and each Guarantor from the state of their organization and incorporation, respectively, and the state(s) where the Primary Hangar Location and chief executive offices and principal place of business of Lessee and each Guarantor are located.

12. Such other documents, certificates and opinions, and evidence of such other matters, as Lessor, Lessor's counsel or FAA Counsel may reasonably request.

13. A Guaranty from each of Corporate Guarantor and LLC Guarantor.

14. The duly executed Consent to Management Agreement.

15. The duly executed Consent and Assignment to Charter of Aircraft.


Conditions Subsequent:

On or subsequent to the Acceptance Date, but not later than the date of the Aircraft's first flight under the leasehold conveyed herein, Lessee shall provide written confirmation to Lessor that copies of the Registration Application and Standard Airworthiness Certificate (FAA Form AC 8100-2) pertaining to the Aircraft have been properly placed on the Aircraft.

In addition, if the Aircraft is more than 12,500 pounds maximum certificated takeoff weight, prior to the date of the Aircraft's first flight under the Lease, Lessee shall provide Lessor with written confirmation that:

1. a copy of the Lease, including Lease Supplements No. 1 and No. 2, has been properly placed on the Aircraft;

2. a copy of the Lease, including Lease Supplements No. 1 and No. 2 thereto, was mailed, within 24 hours following execution thereof, to the Flight Standards Technical Division of the FAA; and

0 0 0 0 0 0 0 0 9 6 3

9-5

3.    Lessee has notified the FAA (such notification to have been given by facsimile transmission, telephone or in person to the FAA Flight Standards District Office, General Aviation District Office nearest the airport where such flight will originate) concerning the first flight of the Aircraft under this Lease at least 48 hours prior to takeoff.

[SIGNATURES ON NEXT PAGE]

9-3

IN WITNESS WHEREOF, effective as of December _17_, 2001 the parties hereto have each caused this Lease Supplement No. 2 to be duly executed by their respective officers, thereunto duly authorized.

FLEET NATIONAL BANK

By: _____
Name: _____
Title: Banking Officer


SM 5105 LLC


By: _____
Name: _____
Title: _____

9-1

0 0 0 0 0 0 0 3 0 9 8 5

IN WITNESS WHEREOF, effective as of _Decmbr 17_, 2001 the parties hereto have each caused this Lease Supplement No. 2 to be duly executed by their respective officers, thereunto duly authorized.

FLEET NATIONAL BANK

By: _____
Name: _____
Title: Banking Officer

SM 5105 LLC, by its member, Delphi Automotive Systems LLC

By: _____ _John Blalvik_ _____
Name: _____ _John Blalvik_ _____
Title: _____ _Treasurer_ _____

RSCOMBS 400628

(LEASE SUPPLEMENT NO. 2)

4

9

**COMPARISON CERTIFICATE**
I have compared the foregoing instrument with the original and
the same is a true and correct copy thereof in all respects.