# EXHIBIT L

| U.S. DEPARTMENT OF TRANSPORTATION<br><br>FEDERAL AVIATION ADMINISTRATION<br>**CROSS-REFERENCE--RECORDATION** | SEE CONVEYANCE NO<br><br>FILING DATE: |
|---|---|

This form is to be used in cases where a conveyance covers several aircraft and engines, propellers, or locations. File original of this form with the recorded conveyance and a copy in each aircraft folder involved.

| TYPE OF CONVEYANCE<br>Aircraft Lease Assignment Assumption and Amendment Agreement to Conveyance T068688 C004; pg 1 | DATE EXECUTED<br>December 16, 2003 |
|---|---|
| FROM<br>SM 5105 LLC | DOCUMENT NO.<br>H110457 |
| TO OR ASSIGNED TO<br>Delphi Automotive Systems Human Resources LLC | DATE RECORDED<br>February 18, 2004 |

THE FOLLOWING COLLATERAL IS COVERED BY THE CONVEYANCE:

| AIRCRAFT (List by registration number) | TOTAL NUMBER INVOLVED   1 |
|---|---|
| N599DA | |

| ENGINES | | TOTAL NUMBER INVOLVED   2 |
|---|---|---|
| MAKE(S)<br>General Electric CF34-3B | SERIAL NO.   873033<br>873034 | |
| PROPELLERS | | TOTAL NUMBER INVOLVED |
| MAKE(S) | SERIAL NO. | |
| SPARE PARTS --LOCATIONS | | TOTAL NUMBER INVOLVED |
| LOCATION | | |

RECORDED CONVEYANCE FILED IN:   N599DA   BOMBARDIER INC CL-600-2B16   S/N 5498

AC FORM 8050-23 (1-96) (0052-00-582-6000)

CERTIFIED COPY
TO BE RECORDED

H110457

CONVEYANCE RECORDED

2004 FEB 18 PM 4 13

FEDERAL AVIATION
DEPARTMENT, Troy, MI

## AIRCRAFT LEASE ASSIGNMENT, ASSUMPTION AND AMENDMENT AGREEMENT

This Aircraft Lease Assignment, Assumption and Amendment Agreement dated as of December 16, 2003 (this "Agreement") is by and among SM 5105 LLC, a Delaware limited liability company ("Transferor") having its principal place of business and chief executive office at 5725 Delphi Drive, Troy, Michigan 48098, Delphi Automotive Systems Human Resources LLC, a Delaware limited liability company ("Transferee") having its principal place of business and chief executive office at 5725 Delphi Drive, Troy, Michigan 48098, and Fleet National Bank, a national banking association ("Lessor") having an office care of Fleet Capital Corporation, One Financial Plaza, Providence, RI 02903.

## WITNESSETH

WHEREAS, the Lessor and the Transferor entered into a certain Aircraft Lease (N599DA) dated as of March 30, 2001 and related Lease Supplement No. 1 dated December 17, 2001 and Lease Supplement No. 2 dated as of December 17, 2001, all of which documents were recorded as one document by the Federal Aviation Administration ("FAA") on January 25, 2002 as Conveyance No. I069528 (sometimes hereinafter collectively referred to as the "Aircraft Lease") regarding a certain Bombardier Inc. CL-600-2B16 (Variant 604) aircraft bearing U.S. Registration Mark N599DA and manufacturer's serial number 5498 (the "Bombardier Aircraft") and two (2) General Electric CF34-3B aircraft engines respectively bearing manufacturer's serial numbers 873033 and 873034, each of which engines has 750 or more rated takeoff horsepower or the equivalent of such horsepower (collectively, the "Engines") (said Bombardier Aircraft and Engines, and as more particularly described in the Aircraft Lease, sometimes hereinafter collectively referred to as the "Aircraft"); and

WHEREAS, the Lessor, the Transferor and Delphi Corporation entered into a certain Amendment dated as of March 13, 2002 ("2002 Amendment") regarding Delphi Corporation's change of name, which 2002 Amendment was not recorded by the FAA (said 2002 Amendment together with the Aircraft Lease hereinafter collectively referred to as the "Lease"); and

WHEREAS, the Transferor and Pentastar Aviation, LLC (the "Manager") entered into a certain Aircraft Management Agreement Under FAR Part 91 dated June 1, 2002, as amended May 1, 2003 (the "Management Agreement") regarding FAR Part 91 operations of the Aircraft by the Manager; and

WHEREAS, the Transferor and Automotive Air Charter, Inc. (the "Operator") entered into a certain Agreement for FAR 135 Operation dated November 26, 2001, as amended January 2, 2002 (the "Charter Agreement") regarding the charter of the Aircraft by the Operator; and

WHEREAS, the Transferor desires to assign to Transferee all of Transferor's right, title and interest in and to the Lease and the Operative Documents (as such term is defined in each of the 2001 Corporate Guaranty, as such term is defined below, and the 2001 LLC Guaranty, as such term is defined below), including, without limitation, the Management Agreement and the Charter Agreement (all of the foregoing, other than the Lease, sometimes hereinafter collectively referred to as the "Other Lease Documents") and the Aircraft, and Transferor has informed Lessor that promptly after the consummation of the transactions contemplated by this Agreement, Transferor will dissolve, wind up its business and affairs, and cease to exist; and

WHEREAS, the Transferee desires to accept the assignment contained herein and assume all of the duties, agreements, obligations and liabilities of Transferor under the Lease (as amended by this Agreement), the Other Lease Documents and the Aircraft to the same extent as if the Transferee had executed the Lease and the Other Lease Documents, pursuant to the terms contained below; and

WHEREAS, each of the Transferor, the Transferee, Delphi Corporation (the "Corporate Guarantor") and Delphi Automotive Systems LLC (the "LLC Guarantor") has requested that the Lessor consent to (i) the foregoing proposed assignment and assumption of the Lease, the Other Lease Documents and the Aircraft, (ii) the release of the Transferor only from the terms and conditions of the Lease, the Other Lease Documents and the Aircraft, and (iii) certain amendments to the Lease; and

WHEREAS, in order to further induce the Lessor to consent to the foregoing requests, (i) the Corporate Guarantor has voluntarily offered and agreed to guarantee to the Lessor the prompt payment and/or performance of the Obligations (as such term is defined in the 2001 Corporate Guaranty) as such Obligations relate to the Transferee and this Agreement and to ratify and reaffirm its obligations under a certain Guaranty dated March 30, 2001, as amended on March 13, 2002 (collectively, the "2001 Corporate Guaranty") executed by it in favor of the Lessor and with regard to Lease, and (ii) the LLC Guarantor has voluntarily offered and agreed to guarantee to the Lessor the prompt payment and/or performance of the Obligations (as such term is defined in the 2001 LLC Guaranty) as such Obligations relate to the Transferee and this Agreement and to ratify and reaffirm its obligations under a certain Guaranty dated March 30, 2001 (the "2001 LLC Guaranty") executed by it in favor of the Lessor and with regard to Lease; and

WHEREAS, the Lessor has agreed to the foregoing requests of the Transferor, the Transferee, the Corporate Guarantor and the LLC Guarantor, but only on the terms and conditions contained in this Agreement.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Transferor, Transferee and Lessor hereby agree as follows:

SECTION 1. Assignment. Transferor hereby assigns and transfers to Transferee all of its right, title and interest in and to the Lease, the Other Lease Documents and the Aircraft.

SECTION 2. Assumption. Transferee hereby accepts the assignment contained in Section 1 hereof and also assumes and agrees to perform all of the duties, agreements, indemnities, obligations and liabilities of any kind whatsoever of the Transferor under the Lease (as amended by this Agreement), the Other Lease Documents and the Aircraft to the same extent as if the Transferee had executed the Lease and the Other Lease Documents as of the initial execution date of the Lease for all purposes. Without limiting the generality of the foregoing, Transferee hereby further (i) agrees to be bound by all of the terms and conditions of the Lease (as amended by this Agreement) and the Other Lease Documents, and also accepts all of the Transferor's rights, interest, duties, agreements, indemnities, obligations and liabilities of any kind whatsoever thereunder for all purposes from the effective date of the Lease (as amended by this Agreement) until any and all such duties, agreements, indemnities, obligations and liabilities of any kind whatsoever under the Lease (as amended by this Agreement) and the Other Lease Documents have been fully performed and/or paid, as the case may be, (ii) agrees that Transferee shall be deemed the "Lessee" under or in connection with the terms of the Lease (as amended by this Agreement) and any Other Lease Documents for all purposes effective as of the date hereof, provided, however, that the Transferee shall be fully obligated for, and bound by, any and all duties, agreements, indemnities, obligations and liabilities of any kind whatsoever under the Lease (as amended by this Agreement) and the Other Lease Documents from the effective date of the Lease until any and all such duties, agreements, indemnities, obligations and liabilities of any kind whatsoever under the Lease (as amended by this Agreement) and the Other Lease Documents have been fully performed and/or paid, as the case may be, (iii) unconditionally, irrevocably and fully accepts the Aircraft for lease under the Lease (as amended by this Agreement) and the Other Lease Documents without any further action of any kind whatsoever, and (iv) agrees that the Lessor may proceed against the Transferee for any breach by Transferee of any terms or conditions of the Lease (as amended by this Agreement) and/or any Other Lease Documents pursuant to the terms and conditions of the Lease (as amended by this Agreement) and/or any Other Lease Documents.

2

SECTION 3.  Release of Liability of Transferor Only. Transferor only shall be released from all Obligations (as such term is defined in each of the 2001 Corporate Guaranty and the 2001 LLC Guaranty) to Lessor and Lessor's successors, assigns, Assignees (as such term is defined in the Lease), agents and servants (but not as to any other Person) under the Lease, the Other Lease Documents and the Aircraft effective upon the date that the Lessor receives (i) this Agreement duly executed by the Transferor and the Transferee, (ii) the duly executed Transferor Resolutions (as such term is defined in Section 6 of this Agreement), Consent to Manage (as such term is defined in Section 6 of this Agreement), Transferee Resolutions (as such term is defined below), Corporate Guarantor Amendment (as such term is defined in 6 of this Agreement), LLC Guarantor Amendment (as such term is defined in Section 6 of this Agreement) and Guarantor Certificates (as such term is defined in Section 6 of this Agreement), and (iii) the Costs (as such term is defined in Section 6 of this Agreement). Transferee hereby acknowledges and agrees that, pursuant to the terms of this Agreement, it shall be absolutely and unconditionally fully liable and responsible for any duties, agreements, indemnities, obligations and liabilities of any kind whatsoever of the Transferor under the Lease (as amended by this Agreement), the Other Lease Documents and the Aircraft notwithstanding any terms or conditions of this Agreement, including, without limitation, the release of the Transferor by the Lessor under the Lease, the Other Lease Documents and the Aircraft pursuant to this Agreement.

SECTION 4.  Ability of Lessor to Proceed Against Transferee and Other Parties. Transferor and Transferee hereby acknowledge and agree that upon the occurrence of any Event of Default under the Lease (as amended by this Agreement) or any Other Lease Documents, the Lessor shall be entitled to exercise any and all rights, remedies and/or recourses available to the Lessor under any of this Agreement, the Lease (as amended by this Agreement), the 2001 Corporate Guaranty (as amended by the Corporate Guarantor Amendment), the 2001 LLC Guaranty (as amended by the LLC Guarantor Amendment) or any Other Lease Documents or at law or in equity or otherwise against each or any of the Transferee, the Corporate Guarantor and the LLC Guarantor.

SECTION 5.  Amendments to Lease.

I.      Effective as of the date hereof, the Lease is hereby amended by inserting as additional subsections (n) and (o) to Section 13 of the Lease the following:

> (n) any representation or warranty of Delphi Automotive Systems Human Resources LLC set forth in a certain Aircraft Lease Assignment, Assumption and Amendment Agreement dated as of December 16, 2003 by and among Delphi Automotive Systems Human Resources LLC, Lessor and SM 5105 LLC or in any certificate, agreement, statement or document furnished to the Lessor in connection with such Aircraft Lease Assignment, Assumption and Amendment Agreement shall prove to be or to have been false or incorrect in any material respect; or

> (o) Delphi Automotive Systems Human Resources LLC shall fail to perform or observe any covenant, condition or agreement (other than those specifically referred to in this Section, including, without limitation, any failure to pay any amounts due or payable under this Lease or to insure the Aircraft pursuant to the terms of this Lease) required to be performed or observed by it under a certain Aircraft Lease Assignment, Assumption and Amendment Agreement dated as of December 16, 2003 (the "Assumption Agreement") by and among Delphi Automotive Systems Human Resources LLC, Lessor and SM 5105 LLC or in any other document, agreement or certificate delivered by Delphi Automotive Systems Human Resources LLC in connection with such Aircraft Lease Assignment, Assumption and Amendment Agreement, and any such failure shall continue for thirty (30) days after written notice thereof from Lessor to Delphi Automotive Systems Human Resources LLC; provided, however, if by its nature such breach cannot be cured within thirty (30) days but can be cured by practical means within an additional sixty (60) days, then so long as no other Event of Default then exists, and Delphi

3

Automotive Systems Human Resources LLC is at all times diligently undertaking to cure such breach, Delphi Automotive Systems Human Resources LLC shall have an additional sixty (60) days to complete such cure before an Event of Default shall be deemed to have occurred.

II. Effective as of the date hereof, the Lease is hereby further amended by deleting the defined term "Corporate Guarantor" set forth in Exhibit A to the Lease in its entirety and inserting in lieu thereof the following:

"Corporate Guarantor shall mean Delphi Corporation, a Delaware corporation having a principal place of business and chief executive office at 5725 Delphi Drive, Troy, Michigan 48098.".

III. Effective as of the date hereof, the Lease is hereby further amended by deleting the defined term "Guaranty" set forth in Exhibit A to the Lease in its entirety and inserting in lieu thereof the following:

"Guaranty shall mean, both individually and collectively, as the context may require, (i) the Guaranty dated as of March 30, 2001 executed by Delphi Corporation (as successor in interest to Delphi Automotive Systems Corporation) in favor of the Lessor regarding the Lease, as amended by a certain Amendment dated as of March 13, 2002 executed by Delphi Corporation (as successor in interest to Delphi Automotive Systems Corporation) in favor of the Lessor, and as further amended by a certain Amendment dated as of December 16, 2003 executed by Delphi Corporation (as successor in interest to Delphi Automotive Systems Corporation) in favor of the Lessor, and (ii) the Guaranty dated as of March 30, 2001 executed by Delphi Automotive Systems LLC in favor of the Lessor regarding the Lease, and as amended by a certain Amendment dated as of December 16, 2003 executed by Delphi Automotive Systems LLC in favor of the Lessor.".

IV. Effective as of the date hereof, the Lease is hereby further amended by deleting the defined term "LLC Guarantor" set forth in Exhibit A to the Lease in its entirety and inserting in lieu thereof the following:

"LLC Guarantor shall mean Delphi Automotive Systems LLC, a Delaware limited liability company having a principal place of business and chief executive office at 5725 Delphi Drive, Troy, Michigan 48098.".

V. Effective as of the date hereof, the Lease is hereby further amended by deleting the defined term "Management Agreement" set forth in Exhibit A to the Lease in its entirety and inserting in lieu thereof the following:

"Management Agreement shall mean, both individually and collectively, as the context may require, (i) that certain Aircraft Management Agreement Under FAR Part 91 dated June 1, 2002, as amended May 1, 2003 between Lessee and Pentastar Aviation, LLC, and (ii) that certain Agreement for FAR 135 Operation dated November 26, 2001, as amended January 2, 2002 between Lessee and Automotive Air Charter, Inc.".

VI. Effective as of the date hereof, the Lease is hereby further amended by deleting the defined term "Manager" set forth in Exhibit A to the Lease in its entirety and inserting in lieu thereof the following:

"Manager shall mean Pentastar Aviation, LLC, a Michigan limited liability company having an address of 7310 Highland Road, Waterford, Michigan 48327 and its successors and assigns.".

VII.    Effective as of the date hereof, the Lease is hereby further amended by deleting the defined term "Operator" set forth in Exhibit A to the Lease in its entirety and inserting in lieu thereof the following:

"<u>Operator</u> shall have the meaning set forth in Section 12 of the Lease; <u>provided, however</u>, that such term shall include Automotive Air Charter, Inc., a Delaware corporation having an address of 7310 Highland Road, Waterford, Michigan 48327.".

VIII.    Effective as of the date hereof, the Lease is hereby further amended so that the term "SM 5105 LLC" as used and provided in the Lease as to the lessee and/or any of the Other Lease Documents and the Aircraft shall mean, and be, "Delphi Automotive Systems Human Resources LLC" for all purposes except as otherwise provided in this Agreement.

IX.    Effective as of the date hereof, the Lease is hereby further amended so that any notices required to be sent to Transferee (as Lessee) under or in connection with the Lease shall be sent to the Transferee at the address set forth in the initial paragraph of this Agreement.

X.    Effective as of the date hereof, the Lease is hereby further amended so that the term "Lease" as used and provided in the Lease and/or any of the Other Lease Documents shall include this Agreement for all purposes.

**SECTION 6.    <u>Delivery of Amended Guaranties, Consent to Manage, Consent and Acknowledgment and Resolutions; Payment of Costs</u>.**

I.    The Transferor shall deliver to the Lessor on or before the date hereof a certificate or certificates (which certificates shall be in form and substance satisfactory in all respects to Lessor), executed by the Transferor's authorized officer certifying: (i) resolutions of Transferor's Member authorizing the execution, delivery and performance of this Agreement and any documents, agreements and instruments related hereto and the transactions contemplated hereby, and (ii) the name(s) of the person(s) authorized to execute and deliver such document on behalf of Transferor together with specimen signature(s) of such person (all such resolutions and certificates hereinafter collectively referred to as the "Transferor Resolutions").

II.    The Transferee shall duly execute and deliver to Lessor on or before the date hereof a Consent to Aircraft Management Agreement and Charter Agreement and Assignment (the "Consent to Manage"), which Consent to Manage shall be in substantially the form attached hereto and made a part hereof as Exhibit A. In addition, the Transferee shall cause the Manager and the Operator to execute and deliver to the Lessor on or before the date hereof the Consent to Manage.

III.    The Transferee shall deliver to the Lessor on or before the date hereof a certificate or certificates (which certificates shall be in form and substance satisfactory in all respects to Lessor), executed by the Transferee's authorized officer certifying: (i) resolutions of the Transferee's Board of Managers authorizing the execution, delivery and performance of this Agreement, the Consent to Manage and any documents, agreements and instruments related hereto or thereto, as the case may be, and the transactions contemplated hereby or thereby, as the case may be, and (ii) the name(s) of the person(s) authorized to execute and deliver such documents on behalf of Transferee together with specimen signature(s) of such person (all such resolutions and certificates hereinafter collectively referred to as the "Transferee Resolutions").

IV.    The Transferee shall cause (i) the Corporate Guarantor to duly execute and deliver to Lessor on or before the date hereof a certain amendment to the 2001 Corporate Guaranty in favor of Lessor (said amendment hereinafter referred to as the "Corporate Guaranty Amendment") which Corporate Guaranty Amendment shall be in substantially the form attached hereto and made a part hereof as Exhibit B and shall evidence, among other things, the Corporate Guarantor's guaranty to the

5

Lessor the prompt payment and/or performance of the Obligations (as such term is defined in the 2001 Corporate Guaranty) as such Obligations relate to the Transferee under the Lease (as amended by this Agreement) and the Other Lease Documents (as amended by this Agreement), (ii) the LLC Guarantor to duly execute and deliver to Lessor on or before the date hereof a certain amendment to the 2001 LLC Guaranty in favor of Lessor (said amendment hereinafter referred to as the "LLC Guaranty Amendment") which LLC Guaranty Amendment shall be in substantially the form attached hereto and made a part hereof as Exhibit C and shall evidence, among other things, the LLC Guarantor's guaranty to the Lessor the prompt payment and/or performance of the Obligations (as such term is defined in the 2001 LLC Guaranty) as such Obligations relate to the Transferee under the Lease (as amended by this Agreement) and the Other Lease Documents (as amended by this Agreement), (iii) the Corporate Guarantor to duly execute and deliver to Lessor on or before the date hereof the Consent to Manage, and (iv) the LLC Guarantor to duly execute and deliver to Lessor on or before the date hereof the Consent to Manage.

V.    The Transferee shall cause each of the Corporate Guarantor and the LLC Guarantor to duly execute and deliver to the Lessor on or before the date hereof a certificate or certificates (which certificates shall be in form and substance satisfactory in all respects to Lessor), executed by each of the Corporate Guarantor's and the LLC Guarantor's respective authorized officer certifying the name(s) of the person(s) authorized to execute and deliver the Consent to Manage, the Corporate Guaranty Amendment and/or the LLC Guaranty Amendment, as the case may be, on behalf of the Corporate Guarantor and/or the LLC Guarantor, as the case may be, together with specimen signature(s) of such person (all such certificates hereinafter collectively referred to as the "Guarantor Certificates").

VI.    Without limiting any terms of the Lease (as amended by this Agreement) and/or the Other Lease Documents, the Transferee agrees to pay to Lessor, upon any demand by the Lessor, any and all costs and expenses incurred by, or on behalf of, the Lessor in connection with the execution and delivery of this Agreement, the Consent to Manage, the Corporate Guaranty Amendment, the LLC Guaranty Amendment, the Transferor Resolutions, the Transferee Resolutions and/or the Guarantor Certificates, including, without limitation, any and all fees and expenses of the Lessor's counsel (all of such costs and expenses hereinafter collectively referred to as the "Costs").

SECTION 7.    Representations, Warranties and Agreements of Transferee.

Without limiting the generality of any terms or conditions of the Lease (including, without limitation, any representations and warranties contained therein), Transferee hereby represents, warrants and agrees for the benefit of the Lessor as follows:

(a)    Due Organization. Transferee is a Delaware limited liability company and is duly authorized and organized under the laws of the State of Delaware and is duly organized and existing in good standing under the laws of the State of Delaware and is also duly qualified to do business wherever necessary to carry on its present business and operations and to own or lease its property including, without limitation, the Primary Hangar Location.

(b)    Due Authorization; No Violation. This Agreement and the Consent to Manage have been duly authorized by all necessary action on the part of Transferee consistent with its form of organization, does not require any further member approval, does not require the approval of, or the giving notice to, except for approvals and notices contemplated by the Lease, any Federal, state, local or foreign governmental authority, including, without limitation, the Department of Transportation and/or the FAA, and do not contravene any law binding on Transferee or contravene any provision of, or constitute a default under any certificate or articles of incorporation or organization or by-laws or agreement, indenture, or other instrument to which Transferee is a party or by which it may be bound.

(c)    Enforceability. Each of this Agreement and the Consent to Manage have been duly executed and delivered by authorized officers of Transferee and each of the Lease, this Agreement and the

6

Consent to Manage constitutes a legal, valid and binding obligation of Transferee enforceable in accordance with their respective terms.

(d)   [This subsection (d) intentionally left blank].

(e)   Furnishing of Information. Transferee agrees that it shall furnish from time to time to Lessor such information relating to Transferee, its subsidiaries and/or affiliates as Lessor shall reasonably request.

(f)   Location of Chief Executive Offices; Transferee Name. Transferee's exact legal name and chief executive office and principal place of business is as shown in the first paragraph of this Agreement; Transferee's organizational identification number is 3257568. Transferee agrees that it shall not change its name, organizational number or any such address without prior written notice to Lessor. Transferee agrees to give Lessor thirty (30) days' prior written notice of any relocation of said chief executive offices or principal place of business from its present location, or of any change in its name or identity. Since its organization, Transferee has not changed its name, done business under any other names, changed its chief place of business from its present location or merger or been the surviving entity of any merger.

(g)   Documents on Board. A current and valid Registration Application or Certificate of Aircraft Registration, and a copy of the Lease and the Lease Supplements, will be kept on board the Aircraft at all times during the Term. In addition, for all operations outside the continental United States, the Lessee shall maintain either a permanent Certificate of Registration or "fly-time wire" (FAA Standard Form 14) on board the Aircraft.

(h)   [This subsection (h) intentionally left blank.]

(i)   Litigation. There are no proceedings pending or, so far as the officers of Transferee know, threatened against or affecting Transferee or any of its property before any court, administrative officer or administrative agency which would, directly or indirectly, adversely affect or impair the title of Lessor to the Aircraft, or which, if decided adversely, materially and adversely affect the financial condition or operations of Transferee or the ability of Transferee to perform its obligations under the Lease.

(j)   No Adverse Mortgages. The right, title and interest of Lessor in and to the Aircraft and the Rent will not be adversely affected or impaired by the terms of any mortgage, loan agreement or indenture or any other contract, agreement or instrument to which Transferee is a party, or under which it or any of its property is or may become bound. In addition, no mortgage, deed of trust, or other Lien which now covers or affects, or which may hereafter cover or affect, any property or interest therein of Transferee, now attaches or hereafter will attach to the Aircraft, the Airframe or any Engine, or in any manner affects or will affect adversely Lessor's right, title and interest therein.

(k)   Taxes. Transferee has filed or caused to be filed and will continue to file all Federal, state and local tax returns which are required to be filed, and has paid or caused to be paid and will continue to pay all taxes shown to be due and payable on such returns or (except to the extent being contested in good faith) on any assessment received by Transferee, to the extent that such taxes have heretofore or in the future become due and payable.

(l)   Good Title. Lessor is the owner of the Aircraft as of the Acceptance Date and has good and marketable title to the Aircraft, free and clear of all Liens other than any Liens created in favor of Lessor under the Lease or other Permitted Liens.

(m)   Records. Transferee has reviewed all Records with respect to the operation and maintenance of the Aircraft prior to the Acceptance Date and, to Transferee's knowledge, such Records have been kept in accordance with the requirements of the FAA rules and regulations and industry standards. Transferee shall maintain all such Records during the Term in accordance with the requirements of the FAA, and any manufacturer's maintenance programs or requirements as the requirements of the Lease.

7

(n)     [This subsection (n) intentionally left blank.]

(o)     Addenda, Exhibits and Riders. Transferee shall perform all of its agreements, undertakings and obligations set forth in the Addenda, Exhibits and Riders to the Lease and shall comply with all of the terms and conditions set forth in such Addenda, Exhibits and Riders.

(p)     U.S. Citizen. The Transferee is and will continue to be a "citizen of the United States" within the meaning set forth in 49 USC Section 40102(a)(15).

(q)     Engines. Each of the Engines has 750 or greater rated takeoff horsepower or the equivalent of such horsepower.

(r)     Incidental Use. The operation of the Aircraft by Transferee is incidental to a business purpose of Transferee (other than the business of transportation by air).

(s)     Due Authorization of Guarantor, No Violation. Each Guaranty has been duly authorized by all necessary action on the part of such Guarantor consistent with its form of organization, does not require any further approval, does not require the approval of, or the giving notice to, any Federal, state, local or foreign governmental authority (including, without limitation, the Department of Transportation and/or the FAA) and does not contravene any law binding on such Guarantor or contravene any provision of, or constitute a default under any certificate or articles of incorporation or organization or by-laws or partnership certificate or agreement, or any agreement, indenture, or other instrument to which such Guarantor is a party or by which it may be bound.

(t)     Binding Obligations of Guarantor. Each Guaranty has been duly executed and delivered by an authorized representative of such Guarantor and constitutes the legal, valid and binding obligations of such Guarantor enforceable against such Guarantor in accordance with its respective terms, except to the extent that enforcement may be limited under applicable bankruptcy and insolvency laws.

(u)     Litigation Regarding Guarantor. There are no proceedings pending or, so far as the officers or other authorized parties of Transferee know, threatened against or affecting either Guarantor or any of its property before any court, administrative officer or administrative agency that would, if decided adversely, materially and adversely affect the financial condition or operations of such Guarantor or the ability of such Guarantor to perform its obligations under the Guaranty to which it is a party.

(v)     Guarantor Financial Statements. Transferee agrees to cause Corporate Guarantor to make available to Lessor (i) as soon as available, and in any event within one hundred twenty (120) days after the last day of each fiscal year of Corporate Guarantor, a copy of the balance sheet of Corporate Guarantor as of the end of such fiscal year, and related statements of income and retained earnings of Corporate Guarantor for such fiscal year, all in reasonable detail prepared in accordance with generally accepted accounting principles consistently applied and certified by an independent certified public accounting firm of recognized standing and which is reasonably acceptable to Lessor, each on a comparative basis with corresponding statements for the prior fiscal year; and (ii) within forty five (45) days after the last day of each fiscal quarter of Corporate Guarantor (except the last fiscal quarter of any fiscal year), a copy of the balance sheet of Corporate Guarantor as of the end of each such quarter, and statement of income and retained earnings covering the fiscal year to date of Corporate Guarantor, each on a comparative basis with the corresponding period of the prior year, all in reasonable detail and certified by the treasurer or principal financial officer of Corporate Guarantor. Notwithstanding the foregoing, in the event that Corporate Guarantor has debt or equity securities regulated by the SEC, Corporate Guarantor shall make available to Lessor all reports, forms and other filings, if any, required to be made by Corporate Guarantor to the SEC including, without limitation, any SEC Forms 10-K and 10-Q and related reports or documents within thirty (30) days after the date on which they are filed and this shall be deemed to satisfy the requirements of this paragraph. All credit, financial and other information provided by Corporate Guarantor or at Corporate Guarantor's direction is, and all such information hereafter furnished will be, true, correct and complete in all material respects.

8

(w)  Consideration for Guaranty. Each Guarantor will receive reasonably equivalent value and adequate and sufficient consideration in exchange for the giving of the Guaranty to which it is a party. Neither Guarantor is insolvent on the date hereof and neither will become insolvent after giving effect to the Guaranty to which it is a party and the contingent liabilities contained herein. Each Guarantor has sufficient capital to perform its obligations under the Guaranty to which it is a party. The performance of the obligations by each Guarantor under the Guaranty to which it is a party will not cause each Guarantor to exceed its ability to pay its debts as they mature.

(x)  Wholly-Owned Limited Liability Company. Transferee shall at all times be a wholly-owned and controlled limited liability company of the Corporate Guarantor.

SECTION 8. Representations and Warranties of Transferor. Transferor represents and warrants to Lessor that (i) Transferor's execution and delivery of this Agreement and any other documents, agreements and instruments executed or delivered in connection therewith have been duly authorized and executed on its part and will be a legal, valid, binding and enforceable agreement against Transferor in accordance with its terms; (ii) Transferor has full power and authority to execute, deliver and perform its obligations under or in connection with this Agreement, and any other documents, agreements and instruments executed or delivered in connection therewith; and, (iii) all required consents for Transferor's execution, delivery and performance of this Agreement and any other documents, agreements and instruments executed or delivered in connection therewith have been duly obtained.

SECTION 9. Additional Documents. The Transferee and the Transferor agree to promptly duly execute and deliver, as applicable, to the Lessor any other documents, agreements or instruments reasonably required by the Lessor in connection with this Agreement.

SECTION 10. Lessor Consent. In consideration of (i) the Transferor's and the Transferee's respective representations, warranties and agreements contained in this Agreement; (ii) the Transferee's execution and delivery of this Agreement, the Consent to Manage and the Transferee Resolutions; (iii) the Transferor's execution and delivery of this Agreement and the Transferor Resolutions; (iv) the Corporate Guarantor's execution and delivery of the Corporate Guaranty Amendment, the Consent to Manage and the applicable Guarantor Certificates; (v) the LLC Guarantor's execution and delivery of the LLC Guaranty Amendment, the Consent to Manage and the applicable Guarantor Certificates; (vi) the Manager's and the Operator's respective execution and delivery of the Consent to Manage; and (vii) the Transferor's payment of all Costs, the Lessor hereby:

(a) consents to the assignment and assumption of the Lease, the Other Lease Documents and the Aircraft pursuant to the terms and conditions of this Agreement; and

(b) releases the Transferor only from any and all duties, obligations and liabilities to Lessor and Lessor's successors, assigns, Assignees, agents and servants (but not as to any other Person) under the Lease, the Other Lease Documents and the Aircraft pursuant to the terms and conditions of this Agreement; and

(c) consents to the Management Agreement, the Charter Agreement and the Consent to Manage; and

(d) consents to the amendments to the Lease as set forth herein; and

(e) agrees to execute the Consent to Manage.

Nothing contained in this Section 10 or otherwise shall be deemed an agreement by the Lessor or any other party, entity or person of any kind whatsoever to waive or forgive any indebtedness, indemnities, benefits, powers, rights, remedies or recourses of any kind whatsoever available, or due, owing or payable, to the Lessor or to any other party, entity or person of any kind whatsoever under any of the

9

Lease, the Other Lease Documents, this Agreement, the 2001 Corporate Guaranty, the 2001 LLC Guaranty, the Corporate Guaranty Amendment, the LLC Guaranty Amendment and/or the Consent to Manage, including, without limitation, releasing any of the Transferee, the Corporate Guarantor, the LLC Guarantor and/or the Manager from any of the obligations or liabilities of any kind whatsoever relating to any of the Lease, the Other Lease Documents, this Agreement, the 2001 Corporate Guaranty, the 2001 LLC Guaranty, the Corporate Guaranty Amendment, the LLC Guaranty Amendment and/or the Consent to Manage, releasing or terminating any of the Lease, the Other Lease Documents, this Agreement, the 2001 Corporate Guaranty, the 2001 LLC Guaranty, the Corporate Guaranty Amendment, the LLC Guaranty Amendment and/or the Consent to Manage or any of the obligations or liabilities of any of the Transferee, the Corporate Guarantor, the LLC Guarantor and/or the Manager thereunder, or waiving or releasing any rights, remedies or recourses of the Lessor (or any other party) against any of any of the Transferee, the Corporate Guarantor, the LLC Guarantor and/or the Manager relating to any of the foregoing, all of which are hereby expressly reserved by the Lessor.

SECTION 11. Counterparts. This Agreement may be executed by one or more of the parties to this Agreement on any number of separate counterparts and all of said counterparts taken together shall be deemed and constitute one and the same instrument.

SECTION 12. Severability of Provisions. If any provision in this Agreement or any part thereof is held invalid or unenforceable, such invalidity or unenforceability shall not affect or impair the validity or the enforceability of the remaining provisions, or any part thereof, of this Agreement.

SECTION 13. Entire Agreement. This Agreement, together with the Lease, the Other Lease Documents and the Consent to Manage, constitute the entire agreement between the parties hereto, and supersede all prior or contemporaneous agreements, communications and understandings, both written or oral with respect to the subject matter of this Agreement.

SECTION 14. Section Titles; Construction. The section titles contained in this Agreement are for convenience only and are without substantive meaning or content of any kind and shall not be considered part of this Agreement. Unless the context otherwise requires, singular nouns and pronouns, when used herein, shall be deemed to include the plural and vice versa, and impersonal pronouns shall be deemed to include the personal pronoun of the appropriate gender.

SECTION 15. No Waiver. THIS AGREEMENT SHALL NOT BE MODIFIED, ALTERED, AMENDED OR WAIVED IN WHOLE OR IN PART EXCEPT IN WRITING DULY SIGNED BY EACH PARTY. ANY WAIVER SHALL BE EFFECTIVE ONLY IN THE SPECIFIC INSTANCE AND FOR THE SPECIFIC PURPOSE FOR WHICH IT IS GIVEN. NO FAILURE TO EXERCISE, OR DELAY IN EXERCISING, ANY RIGHT HEREUNDER SHALL OPERATE AS A WAIVER THEREOF; NOR SHALL ANY FAILURE TO EXERCISE, OR PARTIAL EXERCISE OF, ANY RIGHT HEREUNDER PRECLUDE ANY OTHER OR FURTHER EXERCISE THEREOF OR THE EXERCISE OF ANY OTHER RIGHT.

SECTION 16. Binding Nature. This Agreement shall be binding upon the Transferor and the Transferee and their respective representatives, successors, transferees and assigns and the benefits hereof shall extend to and include the Lessor and its successors, representatives, transferees and assigns.

SECTION 17. No Amendments of Lease. Except as expressly modified or amended herein, the terms and conditions of the Lease and any Other Lease Documents shall remain in full force and effect in accordance with their respective original tenor. Without limiting the generality of the foregoing or any other terms of this Agreement, nothing contained herein shall be interpreted or construed in any way whatsoever to limit the various provisions of the Lease and any Other Lease Documents except as otherwise expressly provided herein. In the event that any term or provision of this Agreement conflicts with any term or provision of the Lease or any Other Lease Documents, the applicable terms and provisions of this Agreement shall control for all purposes. Further, in the event that any representations,

warranties or agreements contained in Section 7 of this Agreement conflict with any term or condition of the Lease or any Other Leased Documents, the applicable representation, warranty or agreement contained in Section 7 of this Agreement shall control for all purposes.

SECTION 18. Defined Terms. Capitalized terms used in this Agreement and not otherwise defined herein shall have the respective meanings set forth in the Lease or in any Other Lease Documents.

SECTION 19. Governing Law. For purposes of 49 USC Section 44108 (c), the Lessor, the Transferor and the Transferee intend, by virtue of the Lessor having countersigned and accepted this Agreement in Rhode Island and by virtue of this Agreement being delivered for closing purposes to Lessor's office in Providence, Rhode Island, that this Agreement has been executed and delivered in Rhode Island. In all other respects, this Agreement shall in all respects be governed by, and construed in accordance with, the laws of the State of New York, without giving effect to principles of conflicts of law or choice of law, including all matters of construction, validity and performance. Transferor and Transferee hereby irrevocably consent and agree that any legal action, suit or proceeding arising out of or in any way in connection with this Agreement may be instituted or brought in the courts of the State of New York or the United States District Court for the Southern District of New York, as Lessor may elect, and by execution and delivery of this Agreement, Transferor and Transferee hereby irrevocably accept and submit to, for themselves and in respect of their respective property, generally and unconditionally, the non-exclusive jurisdiction of any such court, and to all proceedings in such courts. TRANSFEREE AND TRANSFEROR ACKNOWLEDGE AND AGREE THAT THIS AGREEMENT AND ANY DOCUMENTS RELATED HERETO ARE COMMERCIAL TRANSACTIONS. TRANSFEREE AND TRANSFEROR ALSO HEREBY KNOWINGLY AND FREELY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY LITIGATION ARISING HEREFROM OR IN RELATION HERETO.

SECTION 20. Truth in Leasing. THE AIRCRAFT, AS EQUIPMENT, BECAME SUBJECT TO THE MAINTENANCE REQUIREMENTS OF PART 91 OF THE FEDERAL AVIATION REGULATIONS ("FARS") UPON THE REGISTRATION OF THE AIRCRAFT WITH THE FAA. LESSEE CERTIFIES THAT DURING THE 12 MONTHS (OR PORTION THEREOF DURING WHICH THE AIRCRAFT HAS BEEN SUBJECT TO U.S. REGISTRATION) PRECEDING THE EXECUTION OF THIS LEASE, THE AIRCRAFT HAS BEEN MAINTAINED AND INSPECTED UNDER PART 91 OF THE FARS. LESSEE CERTIFIES THAT THE AIRCRAFT WILL BE MAINTAINED AND INSPECTED UNDER PART 91 OF THE FARS FOR OPERATIONS TO BE CONDUCTED UNDER THE LEASE. UPON EXECUTION OF THIS LEASE, AND DURING THE TERM HEREOF, THE LESSEE, WHOSE NAME AND ADDRESS ARE SET FORTH IMMEDIATELY BELOW, ACTING BY AND THROUGH THE SIGNATORY HERETO, WHO EXECUTES THIS SECTION SOLELY IN HIS CAPACITY OF THE LESSEE SET FORTH BELOW HIS SIGNATURE, CERTIFIES THAT THE LESSEE SHALL BE RESPONSIBLE FOR THE OPERATIONAL CONTROL OF THE AIRCRAFT UNDER THE LEASE, UNLESS, THE AIRCRAFT IS SUBLEASED TO AN AIR CARRIER OR AIR TAXI OPERATOR CERTIFICATED UNDER PART 121 OR PART 135, RESPECTIVELY, OF THE FARS. THE LESSEE FURTHER CERTIFIES THAT IT UNDERSTANDS ITS RESPONSIBILITIES FOR COMPLIANCE WITH APPLICABLE FARS, PROVIDED HOWEVER, THAT THE LESSEE SHALL NOT BE DEEMED TO BE RESPONSIBLE FOR THE OPERATIONAL CONTROL OF THE AIRCRAFT FOR SO LONG AS THE AIRCRAFT IS IN POSSESSION OF ANY SUBLESSEE THAT IS CERTIFICATED UNDER PART 121 OR PART 135 OF THE FARS. AN EXPLANATION OF FACTORS BEARING ON OPERATIONAL CONTROL AND PERTINENT FARS CAN BE OBTAINED FROM THE NEAREST FEDERAL AVIATION FLIGHT STANDARD DISTRICT OFFICE, GENERAL AVIATION DISTRICT OFFICE OR AIR CARRIER DISTRICT OFFICE.

[this space intentionally left blank]

IN WITNESS WHEREOF, the parties have executed this Agreement by their respective duly authorized representatives as of the date and year first above written.

TRANSFEROR:

SM 5105 LLC

By: _/s/ Mark C. Long_
Name: _Mark C. Long_
Title: _President_

TRANSFEREE:

DELPHI AUTOMOTIVE SYSTEMS HUMAN RESOURCES LLC

By: _/s/ Kevin M. Butler_
Name: _Kevin M. Butler_
Title: _President_

LESSOR:

FLEET NATIONAL BANK

By:_____
Name:_____
Title:_____

fleet\sm\5assumption agreement-N599DA

IN WITNESS WHEREOF, the parties have executed this Agreement by their respective duly authorized representatives as of the date and year first above written.

TRANSFEROR:                                              TRANSFEREE:

SM 5105 LLC                                              DELPHI AUTOMOTIVE SYSTEMS HUMAN
                                                         RESOURCES LLC


By:_____                     By:_____
Name:_____                     Name:_____
Title:_____                   Title:_____



                                                         LESSOR:

                                                         FLEET NATIONAL BANK

                                                         By: *Tracy Dooley* (signature)
                                                         Name: Tracy Dooley
                                                         Title: Asst. Vice President


fleet\sm\5assumption agreement-N599DA

**COMPARISON CERTIFICATE**

I have compared the foregoing instrument with the original and the same is a true and correct copy thereof in all respects.

A. Denise Baustert

FILED WITH FAA
AIRCRAFT REGISTRATION BR
2003 DEC 31 AM 10 37
OKLAHOMA CITY
OKLAHOMA