Vincent A. D'Agostino (VAD 0120)          Hearing Date: October 27, 2005 at 10:00 a.m.

Scott Cargill (SC 4827)

**LOWENSTEIN SANDLER PC**

Attorneys At Law

65 Livingston Avenue

Roseland, New Jersey  07068

973.597.2500

*Attorneys for AT&T Corp.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| Delphi Corporation, <u>et</u> <u>al</u>.., | Chapter 11 |
| Debtors. | Case No. 05-44481 (RDD)<br>(Jointly Administered) |

**OBJECTION OF AT&T CORP. TO DEBTORS' MOTION FOR AN ORDER
PURSUANT TO SECTION 366(b) OF THE BANKRUPTCY CODE DEEMING
<u>UTILITIES ADEQUATELY ASSURED OF FUTURE PERFORMANCE</u>**

AT&T Corp. ("AT&T"), by and through its counsel, Lowenstein Sandler PC,

submits this objection to the Motion For an Order Pursuant to Section 366(b) of the Bankruptcy

Code Deeming Utilities Adequately Assured of Future Performance (the "Motion"), and

respectfully represents:

<u>BACKGROUND</u>

1.      On October 8, 2005 (the "Petition Date"), Delphia Corporation and certain of its

direct and indirect subsidiaries (collectively, the "Debtors") each filed a voluntary petition for

relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code").

2.      Prior to the Petition Date, and through the date hereof, AT&T provides

telecommunications and related services (collectively, the "AT&T Services") to the Debtors.  As

12459/1
10/24/2005 1787328.01

of the Petition Date, the Debtors owed AT&T approximately $950,385.13[1] for the AT&T

Services.

3.      Specifically, AT&T provides, among other products and services, local and long-distance voice and data service, teleconferencing service, toll free voice services, web-hosting, and calling card products, with an aggregate average monthly run rate of approximately $885,500.

## THE DEBTORS' MOTION

4.      The Debtors seek to provide adequate assurance to AT&T and other utility service providers based upon the administrative expense claim priority of post-petition obligations owed by the Debtors to AT&T.

## OBJECTION

5.      AT&T objects to the Motion and proposed form of order on the grounds that the adequate assurances therein proposed are insufficient to adequately assure payment of monthly invoices to AT&T.

Administrative Expense Claim

6.      The portion of the Motion and proposed order concerning the provision of an administrative expense claim fail to provide AT&T with anything more than what is already provided to any other vendor of post-petition goods or services; however, the proposed order could easily be construed as requiring AT&T to provide services to the Debtors without protections.  When goods or services are provided to a debtor-in-possession in the post-petition period, the debtor is obligated to pay for those goods and services if the debtor wants the vendor to continue supplying the goods or services.  Neither the Bankruptcy Code nor case law require vendors to continue to provide goods or services to a debtor-in-possession on a continuous basis if the debtor-in-possession does not does not timely pay for the goods and services.  Thus, the

---

[1] AT&T reserves any all rights relative to the amount of its prepetition claim.  The amount listed in this objection is an estimate as AT&T continues to reconcile the pre-petition amounts owed to it by the Debtors.

2

Debtors' promises that they will make timely payment of undisputed amounts is an assurance of nothing; to the contrary, it is nothing more than an acknowledgment that the Debtors are obligated to follow the law.

7.    Likewise, that AT&T's services to the Debtors are actual and necessary expenses of the debtor estates is unquestioned.  The Debtors cannot fully operate their businesses without the services provided by AT&T and the other utility companies.  Notwithstanding the Motion and proposed order, AT&T would be entitled to assert an administrative expense claim for its post-petition services to the Debtors.  Therefore, the Debtors' granting of administrative expense status for utility services rendered to the Debtors in the post-petition period is illusory since AT&T would be able to apply for an administrative claim for its post-petition services regardless of the Debtors' proposed measures of adequate assurance.  Consequently, the Debtors fail to provide AT&T anything more than what any creditor is already entitled to receive in these bankruptcy cases and the proposed measures of adequate assurance are insufficient.

AT&T Is Entitled To A Cash Deposit or Similar Security From the Debtors

8.    AT&T does not believe adequate assurance is satisfied in these cases by the Debtors' mere acknowledgment of an administrative expense claim.  The administrative claim is cold comfort if the Debtors fail to pay timely because administrative expense treatment for unpaid amounts is only necessary if the Debtors fail to pay timely.  Yet, if they fail to do so, the administrative claim will be recognized at some future time when the Debtors will likely lack the resources to pay AT&T anything more than a nominal amount.

9.    Pursuant to Bankruptcy Code § 366(b), a utility may

> alter, refuse, or discontinue service if neither the trustee nor the
> debtor, within 20 days after the date of the order for relief,
> furnishes adequate assurance of payment, in the form of a deposit
> or other security, for service after such date

3

11 U.S.C. § 366(b).   Congress clearly intended this provision to afford utility companies additional protections in the bankruptcy context as compared to what was afforded pre-petition. See In Re Security Investment Properties, Inc., 559 F.2d 1321, 1326 (5th Cir. 1997) ("While a public utility has a duty to serve, neither its history of past service nor its franchise to serve in the future may fix upon it a duty to provide unsecured future service to a … debtor.").

10.    Based on the foregoing, AT&T submits that the Debtors' proposed measures of adequate assurance are insufficient as a matter of law, and further, that AT&T is entitled to a deposit or other form of security.

The Second Circuit's Decisions In Caldor and Adelphia are not Applicable to the Debtors' Cases and Do Not Require a Finding that the Proposed Adequate Assurance Is Sufficient

11.    In *Virginia Electric & Power Co. v. Caldor, Inc.*, 117 F.3d 646 (2d Cir. 1997), the Second Circuit Court of Appeals, held that adequate assurance need not, within the bankruptcy court's discretion, be in the form of a deposit.   117 F.3d at 650-651.   The bankruptcy court decision that was ultimately upheld by the *Caldor* court was informed by consideration of six factors.  *See id*. at 647.   These six factors are (1) the debtors' cash on hand and access to debtor-in-possession financing, (2) the debtors posed significantly less risk than other customers of the utilities, (3) the utilities were better able to monitor the financial strength of the debtors, (4) the debtors were solvent and operating out of the proceeds of their businesses, (5) the debtors' good prepetition payment history, (6) the utilities had not required deposits prepetition.  *See id*.

12.    Prepetition payment history and the utilities' prepetition deposit requirements are "merely historical" and have "lesser relevance" to the analysis.  *See In re Adelphia Business Solutions, Inc.* 2002 WL 1455781 *14 (Bankr. S.D.N.Y. June 25, 2002).   The remaining four factors should not lead the court to  a "counting analysis nor a mechanical checking off of factors." *See id*.  Moreover, "in bankruptcy proceedings substance should not give way to form … and a bankruptcy judge must not be shackled with unnecessarily rigid rules… ." *Caldor*, 117 F.3d at 650.   Instead, "the heart of the inquiry … is the examination of the totality of the

4

circumstances to make an informed judgment as to whether or not the utilities would be subject to an unreasonable risk of payment." *Adelphia*, 2002 WL 1455781 * 14.

13.    A significant portion of the *Caldor* analysis is inapplicable in the Debtors' bankruptcy cases.  First, information concerning the Debtors' available cash and asserts is unavailable.  The Debtors have not yet filed their schedules in these Chapter 11 case.  Pursuant to an Order of this Court dated September 15, 2005, the Debtors were provided with a 180 day extension of time to file their schedules.  Consequently, at this juncture it is unknown whether the Debtors have sufficient post-petition liquidity to provide AT&T with adequate assurance of payment for AT&T's continued service.

14.    Second, it is too early to know with any degree of certainty whether the Debtors are solvent and will be able to operate out of the proceeds of their businesses.  To the extent the Debtors' businesses do not generate sufficient cash flow to support their operations, Debtors will be unable to meet their monthly obligation to AT&T and, therefore, the proposed adequate assurance is insufficient.  Consequently, AT&T is exposed to "an unreasonable risk of nonpayment for post-petition services," *see Adelphia*, 2002 WL 1455781 *12, and is entitled to greater measures of adequate assurance than proposed by the Debtors.

15.    AT&T submits that requiring it to continue providing services to the Debtors notwithstanding that they may default on post-petition invoices constitutes an unreasonable risk of nonpayment.

16.    Third, while AT&T is capable of monitoring the financial strength of the Debtors by, <u>inter</u> <u>alia</u>, reviewing the Debtors' monthly operating reports, it is unreasonable to foist upon AT&T, a company with customers from all corners of the globe, the burden of monitoring the fiscal health of ailing customers.

17.    Finally, *Caldor* does not mandate bankruptcy courts to approve adequate assurance of the kind therein upheld; it merely recognizes that "bankruptcy courts are properly afforded significant discretion in the exercise of their duties." *Caldor*, 117 F.3d at 650 ("…the bankruptcy court need not require some additional safeguard where it determines that safeguards

otherwise available under the Code provide the "adequate assurance of payment" with which §
366(b) is ultimately concerned."). When deciding what constitutes adequate assurance, a
bankruptcy court is only required to balance the "need to protect utilities from unreasonable risk
of nonpayment with the loss of debtor liquidity that would be occasioned by a mechanical
imposition of requirements for deposits." *See Adelphia*, 2002 WL 1455781 *13.

18.     Balancing AT&T's need for protection from unreasonable risk of nonpayment
with the Debtors' need to maintain liquidity, weighs in favor of granting AT&T additional
guarantees of future payment. A security deposit equal to three months of anticipated AT&T
services or a requirement that the Debtors' prepay AT&T's monthly invoices will resolve
AT&T's potential exposure to the risk of nonpayment without threatening the Debtors' liquidity.
That the Debtors' liquidity would not be adversely affected if they were required to post a deposit
or prepay monthly invoices is supported by the Debtors' proposal to timely pay each month's
invoices.

19.     AT&T therefore respectfully requests the Debtors be directed to post a security
deposit equal to three months of anticipated AT&T Services totaling $2,656,500 and prepay
AT&T's monthly invoices, subject to the Debtors' right to subsequently dispute any actual
charges. To the extent that the Debtors dispute any charges for AT&T Services, AT&T
requests that the Debtors implement a procedure by which disputes are resolved in an expedited
manner.

20.     Further, in the event the Debtors default on any of their post-petition obligations
to AT&T, AT&T requests authority to suspend or terminate all services rendered by AT&T to
the Debtors unless, within five (5) business days after AT&T provides written notice of such
default to the Debtors and their counsel, the Debtors cure such default.

21.     In addition, AT&T requests authority to enter into a post-petition setoff
arrangement with the Debtors whereby any amounts owed to AT&T by the Debtors on a
monthly basis  for AT&T Services may be setoff against any amounts owed to the Debtors by
AT&T on a monthly basis for the switched access services that the Debtors provide to AT&T.

6

22.     Finally, AT&T reserves the right to request further adequate assurance of payment pursuant to the Debtors' proposed order should circumstances warrant.

**WHEREFORE**, AT&T respectfully requests that the Court deny the Debtors' Motion and provide AT&T with additional adequate assurance as set forth herein.

Respectfully submitted,


   /s/  *Vincent A. D'Agostino*
**LOWENSTEIN SANDLER** PC
Vincent A. D'Agostino (VAD 0120)
Scott Cargill (SC 4827)
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500
(973) 597-2400 (telecopy)

*Attorneys for AT&T Corp.*


Dated:  October 24, 2005