# EXHIBIT A





**The Bond Market Association / Loan Syndications and Trading Association
Model NOL Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE [_____] DISTRICT OF [_____]
[_____] DIVISION**

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 Case |
|  | ) |  |
| [_____], et al., | ) | Case No. [_____] |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

**INTERIM ORDER PURSUANT TO SECTIONS 105(a), 362, AND 541 OF THE BANKRUPTCY CODE ESTABLISHING RESTRICTIONS AND PROCEDURES FOR CERTAIN TRADING ACTIVITY IN CLAIMS AGAINST AND EQUITY INTERESTS IN [_____] AND ITS AFFILIATED DEBTORS, AS DEBTORS IN POSSESSION[1]**

Upon the motion dated [_____ __], [_____], of [_____] and its affiliated debtors, as debtors-in-possession (collectively, the "Debtors"), for an interim order pursuant to sections 105(a), 362, and 541 of the Bankruptcy Code to establish restrictions and procedures for certain trading activity in claims against and equity interests in the Debtors (the "Motion"), it is hereby

FOUND THAT:

A.    Unrestricted trading in claims against and equity interests in the Debtors prior to the Debtors' emergence from chapter 11 could limit the Debtors' ability, in connection with their eventual emergence from bankruptcy, to utilize net operating loss ("NOL") carryovers and certain other tax attributes for U.S. federal income tax purposes, pursuant to the rules under section 382 of the Internal Revenue Code.[2]

---

[1]    Debtors sometimes seek to restrain trading in shares and claims as part of the first day motions or shortly after commencement of bankruptcy proceedings, in order to protect net operating loss carryovers. This model order is designed to put sufficient restrictions in place to achieve a reasonable degree of protection for a debtor corporation's NOL carryovers, while at the same time avoiding unnecessary disruptions to trading markets. An order consistent with the model should not need to be the subject of an adversary proceeding, and could be sought by motion under sections 105(a) and 362 of the Bankruptcy Code.

[2]    The Internal Revenue Code contains an elaborate regime that is designed to prevent the use of NOL carryovers and certain other tax attributes in inappropriate situations. In particular, section 382 limits the amount of NOL carryovers that can be used after certain significant changes in the ownership of a corporation's stock. In general, the section 382 limitation is triggered if increases in the percentage of the

**NOVEMBER 2004**                    Copyright © TBMA/LSTA 2004.  All rights reserved.

B.    The trading restrictions and procedures set forth herein are necessary and proper in order to preserve such NOL carryovers and other tax attributes and are therefore in the best interests of the Debtors, their estates, and their creditors.[3]

C.    The relief requested in the Motion is authorized under sections 105(a), 362, and 541 of the Bankruptcy Code.

THEREFORE, IT IS ORDERED THAT:

---

stock of the corporation owned (directly or by attribution) by 5-percent shareholders (including certain groups of public shareholders) aggregate to more than 50 percentage points over a 3-year testing period.  The rationale of this rule is to prevent trafficking in NOL carryovers.  Under the section 382 limitation, the maximum amount of a corporation's NOL carryovers that can be used in any taxable year after a triggering ownership change is generally the product of (x) the value of the stock of the corporation immediately before the ownership change and (y) the long term tax-exempt rate, so long as the corporation continues its prior business enterprise for a two-year period after the ownership change (where the continuity of business condition is not satisfied, the section 382 limitation is generally zero, subject to limited exceptions).  If the ownership change occurs in a bankruptcy proceeding, however, two alternative special rules may apply.

Under section 382(l)(5), a partial exemption from the section 382 limitation is available for an ownership change pursuant to a bankruptcy reorganization, so long as the historic shareholders and "qualified creditors" of the debtor corporation own at least 50 percent of the value and voting power of its stock after the change.  "Qualified creditors" are creditors that receive stock in exchange for (i) debt that they have beneficially owned since the date that was 18 months before the filing of the bankruptcy petition ("old and cold" debt); or (ii) debt that they have always beneficially owned and that arose in the ordinary course of business of the debtor corporation (e.g., trade debt).  Special, detailed tracking rules apply for purposes of the continuous beneficial ownership requirements.  In general, however, a debtor corporation may treat debt as always owned by the same beneficial owner if, immediately after the bankruptcy reorganization, that person owns less than 5 percent of the debtor corporation's equity.  If the section 382(l)(5) exemption applies, there is no section 382 limitation on the use of the debtor corporation's NOL carryovers.  However, the amount of pre-change NOL carryovers must be reduced by the amount of interest deductions accrued during a three-year period preceding the ownership change in respect of debt converted into stock under the plan of reorganization.  In addition, if a second ownership change occurs within two years of the ownership change covered by the section 382(l)(5) exemption, the section 382 limitation with respect to the second ownership change is zero, and the benefits of using the section 382(l)(5) exemption with respect to the first ownership change may be substantially eliminated.

Under the alternative bankruptcy rule, section 382(l)(6), a debtor corporation's NOL carryovers remain subject to the section 382 limitation, but the yearly limitation amount (i.e., the product of the value of the debtor corporation's stock and the long term tax-exempt rate, assuming satisfaction of the continuity of business condition) is calculated using a more favorable valuation formula.  Under the section 382(l)(6) formula, the value of the debtor corporation's stock is determined immediately after the ownership change and includes (i) stock received by creditors in exchange for canceling debt; and (ii) stock issued to new investors in connection with the bankruptcy reorganization.  The value is capped, however, by the gross value of the corporation's assets immediately before the ownership change, excluding recent capital contributions and certain excess non-business assets.

[3]     Pursuant to the basic section 382 rule, normal trading in a debtor corporation's equity can directly result in significant limitations on future use of NOL carryovers, regardless of the value of that equity.  For this reason, the model orders places significant restrictions on equity trading during the course of the bankruptcy.  Although trading in debt claims cannot directly result in a limitation under section 382, the model order also places limited restrictions on debt trading, in order to preserve the Debtors' ability to benefit from the favorable "old and cold" debt presumption for less-than-5-percent holders under section 382(l)(5).  In this regard, the emergence of a reorganized debtor from chapter 11 frequently constitutes a triggering ownership change for purposes of section 382, and it is often difficult to determine at the outset of a bankruptcy whether it will be more advantageous for the debtor to make use of the section 382(l)(5) exemption or the section 382(l)(6) valuation formula (the latter of which would not benefit from any trading restrictions with respect to debt claims).

1.      The Motion is Granted.  The Motion is granted on an interim basis, with effect from the Effective Time.   The definitions of all capitalized terms used herein are listed in Paragraph 14.

2.      Imposition of Sanctions for Failure to Comply.  Until further order of this Court to the contrary, any acquisition or disposition of Tax Ownership of Specified Shares after the Effective Time in violation of the restrictions and procedures set forth in this Order, or any violation of the restrictions and procedures set forth in this Order with respect to Specified Claims, shall subject the acquirer to sanctions as set forth herein.  Notwithstanding the foregoing, in no event shall an acquisition or disposition of Tax Ownership of Specified Claims be rendered void or unenforceable by reason of this Order.

3.      Applicability of the Automatic Stay.  Until further order of this Court to the contrary, any acquisition or disposition of Tax Ownership of Specified Shares after the Effective Time in violation of the procedures set forth in this Order shall constitute an act in violation of the automatic stay prescribed by sections 362 and 105(a) of the Bankruptcy Code.

4.      Substantial Shareholder Notices and Substantial Claimholder Notices.  Within thirty (30) days of the later of the Effective Time and the date on which an Entity becomes a Substantial Shareholder or a Substantial Claimholder, each Substantial Shareholder and Substantial Claimholder shall serve on the Debtors and their attorneys, by facsimile or overnight mail, a notice in the form attached hereto as Exhibit A1 (a "Substantial Shareholder Notice") or Exhibit A2 (a "Substantial Claimholder Notice"), as applicable, setting forth summary information regarding the aggregate amount of each class of Specified Shares or Specified Claims of which it has Tax Ownership.  Except to the extent necessary to respond to a petition to allow consummation of a proposed transaction in Specified Shares or Specified Claims, to the extent otherwise required by law, or to the extent that the information contained therein is already public, the Debtors shall keep all Substantial Shareholder Notices and Substantial Claimholder Notices strictly confidential and shall not disclose the contents thereof to any person; provided, however, that the Debtors may, if they wish, disclose the contents thereof to their counsel and professional financial advisers and/or the counsel and professional financial advisers to the Equity Committee(s) and the Creditors Committee(s), who shall themselves keep all Substantial Shareholder Notices and Substantial Claimholder Notices strictly confidential and shall not disclose the contents thereof to any other person, including a member of an Equity Committee or Creditors Committee.

5.      Restrictions and Procedures for Trading in Specified Shares.[4]  Except as set forth in Paragraph 8, any Entity that, after the Effective Time,

(i)     is not a Substantial Shareholder and wishes to purchase or otherwise acquire Tax Ownership of an amount of any class of Specified Shares that would cause the Entity to become a Substantial Shareholder;

(ii)    is a Substantial Shareholder and wishes to purchase or otherwise acquire Tax Ownership of any additional Specified Shares; or

(iii)   is a Substantial Shareholder and wishes to sell or otherwise dispose of Tax Ownership of any Specified Shares,

---

[4]     This provision is intended to prevent transactions that would trigger an ownership change under the basic provisions of section 382 relating to acquisitions of shares by 5-percent shareholders.  Because trading in shares can directly trigger a section 382 ownership change, the model order requires prior notice to the Debtors of potentially problematic transactions, and gives them 10 days to object.  Acquisitions and dispositions of Specified Shares in violation of this procedure are void ab initio.  The provision extends to dispositions of Specified Shares by Substantial Shareholders because a group of non-Substantial Shareholders may be treated as a separate 5-percent shareholder for purposes of the ownership change rules, and a transfer of Specified Shares from a Substantial Shareholder to that group could result in a triggering ownership change by virtue of increasing the group's aggregate ownership of Specified Shares.

must, at least ten (10) days before the proposed consummation of any such transaction, serve on the Debtors and their attorneys, by facsimile or overnight mail, a notice in the form attached hereto as Exhibit B1 (a "Proposed Specified Share Transaction Notice"), together with any Substantial Shareholder Notice that the Entity is required to file under Paragraph 4 but has not yet filed.  Upon receipt of a Proposed Specified Share Transaction Notice together with any required Substantial Shareholder Notice, the Debtors shall have ten (10) days (or until thirty-five (35) days after the Effective Time, if later) to object to the transaction.  If no objection to the proposed transaction is served by the Debtors upon such Entity within such period, then the transaction may proceed as set forth in the Proposed Specified Share Transaction Notice.  If an objection to the proposed transaction is served by the Debtors upon such Entity within such period, then the transaction may not be consummated; provided, however, that the Entity may petition this Court for permission to consummate a proposed transaction notwithstanding the Debtors' objection, and such permission shall be granted unless the Debtors can establish that there is a reasonable possibility that allowing the proposed transaction to be consummated would jeopardize substantial NOL carryovers or other tax attributes.  Further transactions within the scope of this Paragraph 5 must be the subject of additional notices as set forth herein with additional waiting periods.  If the Debtors do not object to a proposed transaction, the Debtors will use reasonable efforts to advise the applicable Entity in writing as soon as practicable that they do not object.  Except to the extent necessary to respond to a petition to allow consummation of a proposed transaction, to the extent otherwise required by law, or to the extent that the information contained therein is already public, the Debtors shall keep all Proposed Specified Share Transaction Notices strictly confidential and shall not disclose the contents thereof to any person; provided, however, that the Debtors may, if they wish, disclose the contents thereof to their counsel and professional financial advisers and/or the counsel and professional financial advisers to the Equity Committee(s) and the Creditors Committee(s), who shall themselves keep all Proposed Specified Share Transaction Notices strictly confidential and shall not disclose the contents thereof to any other person, including a member of an Equity Committee or Creditors Committee.

      6.    <u>Restrictions and Procedures for Trading in Specified Claims</u>.[5]  Except as set forth in Paragraph 8, any Entity that, after the Effective Time,

      (i)    is not a Substantial Claimholder and purchases or otherwise acquires Tax Ownership of an amount of Specified Claims that causes the Entity to become a Substantial Claimholder; or

      (ii)    is a Substantial Claimholder and purchases or otherwise acquires Tax Ownership of any additional Specified Claims,

will have an obligation, in the event that the Court issues a Sell Down Notice to such Entity at the request of the Debtors pursuant to Paragraph 7, to sell or otherwise transfer Tax Ownership of an aggregate amount of Specified Claims sufficient to prevent such Entity from having Tax Ownership of [4.75] percent

---

[5]    This provision is intended to preserve the Debtors' ability to benefit from the section 382(l)(5) exemption, and in particular to conserve the amount of claims with respect to which the Debtors may apply the rule that allows claims against a debtor corporation to be treated as "old and cold" if the holder will own less than 5 percent of the corporation's equity after the bankruptcy reorganization.  The provision functions by way of a "sell down" mechanism under which creditors, including Substantial Claimholders, remain free to buy and sell claims throughout the course of the bankruptcy proceeding, unless and until the Debtors propose a plan of reorganization that relies on the section 382(l)(5) exemption and such plan more particularly requires Substantial Claimholders to reduce their positions in order to increase the amount of claims with respect to which the Debtors may make an "old and cold" presumption.  The mechanism then generally requires Substantial Claimholders to sell claims in order to reduce their positions, but not below the Threshold Amount or below the level of their positions at the beginning of the bankruptcy.  The "sell down" mechanism also generally does not require Substantial Claimholders to sell any claims that are (i) acquired pursuant to binding contracts entered into before the bankruptcy; (ii) acquired in circumstances that would not result in an increased risk of the section 382(l)(5) exemption being unavailable; or (iii) acquired pursuant to an optional procedure whereby the Debtors are given notice of the proposed transaction and an opportunity to object.  See the definition of "Protected Amount," below.

or more of the reorganized Debtors' equity as a result of the implementation of a 382(l)(5) Plan;[6] provided, however, that such Entity shall not be required to make any sale or other transfer of Tax Ownership of Specified Claims that would result in such Entity having Tax Ownership of an aggregate amount of Specified Claims that is less than either (x) the Threshold Amount; or (y) such Entity's Protected Amount. In addition, such Entity shall not participate in formulating such 382(l)(5) Plan (which shall include, without limitation, making any suggestions or proposals to the Debtors or their advisers with regard to the plan, but shall not include merely voting on the plan or taking any action required by this Order),[7] to the extent that such participation makes evident to the Debtors that the transferor has Tax Ownership of any Specified Claims that do not constitute "qualified indebtedness" within the meaning of Treasury regulations section 1.382-9(d)(2) (the "Participation Restriction").[8]  Each transfer of Specified Claims required by this Paragraph 6 shall be made to an unrelated Entity that has represented to the transferor that it will not have Tax Ownership of an aggregate amount of Specified Claims equal to or greater than the Threshold Amount after the transfer, and shall occur prior to the later of the date of confirmation of such 382(l)(5) Plan and the date that is thirty (30) days after receipt of the Sell Down Notice.[9]

7.    Sell Down Notices.  After filing a proposed 382(l)(5) Plan and Disclosure Statement with respect thereto with the Court, the Debtors may petition the Court for the issuance of Sell Down Notices. A petition for Sell Down Notices shall state the lowest level to which an affected Substantial Claimholder could be required to reduce its position consistent with the provisions of this Order but shall not reveal the identity of any Substantial Claimholder.  The Debtors shall serve the petition on all known Substantial Claimholders as well as on the parties and via the publication methods specified in Paragraph 11. Substantial Claimholders shall have ten (10) days after such service to object to the petition and request a hearing on the matter.  If no Substantial Claimholder serves an objection on the Debtors within such ten (10) day period, the Court shall issue Sell Down Notices to Substantial Claimholders without any further

---

[6]    As with the threshold for being a Substantial Shareholder, it may be appropriate in some cases to use a lower percentage if calculations of percentage ownership will be uncertain or complicated.  See note 31, below.

[7]    See note 17, below.

[8]    In order to be "qualified indebtedness" for purposes of the noted regulation, a claim must be either (i) debt that has been beneficially owned by the same creditor since the date that was 18 months before the filing of the bankruptcy petition ("old and cold" debt); or (ii) debt that has always been beneficially owned by the same creditor and that arose in the ordinary course of business of a debtor.  Thus, the requirement of the model order is that an acquiring Substantial Claimholder not make any suggestions or proposals to a Debtor or its advisers with regard to a 382(l)(5) plan, if those suggestions or proposals would make evident to the Debtor that some of the holder's claims were owned by other persons during the period beginning 18 months before the petition date.

This requirement is motivated by an extremely complicated provision of the section 382(l)(5) regulations, which is designed to prevent the section 382(l)(5) exemption from applying where a new holder acquires claims with a view to influencing the resolution of a bankruptcy.  Under an anti-abuse rule, the restriction applies both with respect to the new holder, as well as with respect to persons that acquire claims from the new holder, if certain conditions are met.  Under this latter rule, claims can arguably become "tainted" if the debtor becomes aware that the claims are associated with a new holder that is attempting to influence the resolution of the bankruptcy, and will no longer qualify for the "old and cold" presumption thereafter, either in the new holder's hands or in the hands of subsequent acquirers.  Because the "sell down" mechanism is designed to increase the amount of claims for which the "old and cold" presumption can be made, it is important that Specified Claims subject to a Sell Down Notice not become tainted under this rule.  In this regard, some debtors may prefer to prohibit Substantial Claimholders that utilize Paragraph 6 from participating to any extent in the formulation of the debtor's plan of reorganization, in order to preclude any possibility of tainting.

[9]    A transfer of Tax Ownership can occur prior to settlement.  Thus, so long as an effective transfer of Tax Ownership is made before the 30 day / date of confirmation cutoff, settlement may occur after such date.

showing by the Debtors.  In the event that any Substantial Claimholder objects to the issuance of Sell Down Notices, the Court will not issue them unless the Debtors establish the following:[10]

(i)    there is a reasonable possibility that the proposed 382(l)(5) Plan will be confirmed; and

(ii)    based on projections by a nationally recognized law firm or accounting firm:

(1)    substantial tax attributes will be available to be carried over under the proposed 382(l)(5) Plan to reduce the future U.S. federal income tax liabilities of the Debtors, taking into account any reductions in tax attributes under section 108(b) of the Internal Revenue Code that will occur as a result of the implementation of the 382(l)(5) Plan;[11]

(2)    a transfer of Specified Claims as provided in Paragraph 6 is reasonably necessary and appropriate to ensure that the ownership requirements of section 382(l)(5) of the Internal Revenue Code will be satisfied in connection with the proposed 382(l)(5) Plan; and

(3)    it is reasonably likely that the utilization of section 382(l)(5) of the Internal Revenue Code will be more beneficial to the Debtors and their estates than utilizing section 382(l)(6) of the Internal Revenue Code.

In preparation for petitioning the Court for Sell Down Notices, the Debtors may request that each Substantial Claimholder provide updated information regarding the aggregate amount of each class of Specified Claims of which it has Tax Ownership (but not any information that would establish that any Specified Claims do not constitute "qualified indebtedness" within the meaning of Treasury regulations section 1.382-9(d)(2)), and each Substantial Claimholder shall deliver such updated information to the Debtors within twenty (20) days of receipt of the request therefor.  Except to the extent necessary to respond to an objection to the issuance of Sell Down Notices, to the extent otherwise required by law, or to the extent that the information is already public, the Debtors shall keep all such updated information strictly confidential and shall not disclose the contents thereof to any person; provided, however, that the Debtors may, if they wish, disclose such updated information to their counsel and professional financial advisers and/or the counsel and professional financial advisers to the Equity Committee(s) and the Creditors Committee(s), who shall themselves keep all such updated information strictly confidential and shall not disclose the contents thereof to any other person, including a member of an Equity Committee or Creditors Committee.  If the criteria for the issuance of Sell Down Notices are satisfied, the Court will issue to each relevant Substantial Claimholder a Sell Down Notice specifying the amount of each class of Specified Claims that is expected to be converted into [4.75] percent or more of the reorganized Debtors' equity pursuant to the proposed 382(l)(5) Plan and directing the Substantial Claimholder to transfer Specified Claims as described in Paragraph 6;[12] provided, however, that to the maximum extent possible, the Court will exempt Substantial Claimholders from the requirements of Sell Down Notices, beginning with the first Substantial Claimholder to file a Substantial Claimholder Notice and proceeding chronologically by date of filing, to the extent that such exemptions cannot reasonably be expected to impede the successful implementation of the 382(l)(5) Plan.  In the event that the Court has not approved

---

[10]    Sell Down Notices should only be issued to the extent necessary to implement a 382(l)(5) plan, and only to the extent that a 382(l)(5) plan is in the interests of the Debtors and their estates.  If any Substantial Claimholder objects to the issuance of Sell Down Notices, this provision requires Debtors to make a rigorous showing that these prerequisites exist before Sell Down Notices may be issued.

[11]    Under section 108(b), a corporation's tax attributes, including its NOL carryovers, will be reduced by deemed income from the discharge of indebtedness in bankruptcy, including deemed income in respect of debt that is exchanged for equity with a fair market value that is less than the debt's principal amount.  Section 108(b) operates independently of section 382, and imposes an additional and substantial limitation on the continued viability of pre-bankruptcy NOL carryovers.

[12]    See note 6, above.

a Disclosure Statement with respect to the proposed 382(l)(5) Plan within ninety (90) days of a petition for Sell Down Notices, any Sell Down Notices issued by the Court pursuant to the petition shall become void ab initio.  Except as otherwise provided herein, the Debtors shall keep all proposed or actual Sell Down Notices strictly confidential and shall not disclose the contents thereof to any person; provided, however, that the Debtors may, if they wish, disclose the contents thereof to their counsel and professional financial advisers and/or the counsel and professional financial advisers to the Equity Committee(s) and the Creditors Committee(s), who shall themselves keep all such Sell Down Notices strictly confidential and shall not disclose the contents thereof to any other person, including a member of an Equity Committee or Creditors Committee.

        8.     Exceptions and Special Rules.[13]

        (a)    *Agents*.  Acquisitions and dispositions of Tax Ownership of Specified Shares or Specified Claims by an Entity acting as an Agent on behalf of another Entity shall not be subject to this Order with respect to that Agent; provided, however, that the account, customer, fund, principal, trust, or beneficiary shall not be excluded from this Order by reason of this Subparagraph, although there shall be no affirmative duty to inquire whether the account, customer, investment fund, principal, trust, or beneficiary is subject to any restrictions or requirements under this Order.

        (b)    *Offsetting Acquisitions and Dispositions*.  Acquisitions and dispositions of Tax Ownership of Specified Shares or Specified Claims by an Entity that net to zero at the end of a trading day and that settle on the same settlement date (including, without limitation, "day trading" transactions, and transactions in which an Entity acts as a "riskless principal" between customers by buying and selling the same aggregate amounts of securities) shall not be subject to this Order with respect to such Entity; provided, however, that such transactions shall not be excluded from this Order with respect to such Entity's counterparties solely by reason of this Subparagraph, although there shall be no affirmative duty to inquire whether such counterparties are subject to any restrictions or requirements under this Order.

        (c)    *Short Sales and Onlending*.  The borrowing of Specified Shares or Specified Claims by an Entity for the purpose of effecting short sales or for onlending, whether for the Entity's own account or for a customer account, shall not be subject to this Order with respect to such Entity or its customer, nor shall such short sales or onlending, so long as such borrowing does not occur prior to the day when such Specified Shares or Specified Claims are used to complete and settle the short sale or on-lending; provided, however, that the purchaser of such Specified Shares or Specified Claims in a short sale shall not be excluded from this Order solely by reason of this Subparagraph, although there shall be no affirmative duty to inquire whether such purchaser is subject to any restrictions or requirements under this Order.  The unwinding of such a short sale by the short-seller shall also not be subject to this Order, so long as the Specified Shares or Specified Claims used to close the borrowing are acquired on the date such Specified Shares or Specified Claims are returned to the lender.

        (d)    *Netting Agreements*.  Where an Entity is a party to an enforceable netting agreement with respect to transactions in Specified Shares or Specified Claims, the Entity shall be treated for purposes of this Order as having an obligation to acquire or dispose of Tax Ownership on a given day of only the net amount of Specified Shares or Specified Claims that are to be acquired or disposed of on such day pursuant to such agreement.

        (e)    *Collateral for Money Loans*.  The use of Specified Shares or Specified Claims as collateral for a money loan shall not be treated as giving rise to an acquisition or disposition of Tax Ownership of Specified Shares or Specified Claims that is subject to this Order; provided, however, that

---

[13]    The exceptions set forth in Paragraph 8 are mainly situations in which there is no relevant transfer of Tax Ownership with respect to a particular party (e.g., because the party is an agent, and acquires no ownership in its own right, or because the party engages in offsetting transactions).  Although many of the situations described in Paragraph 8 would not give rise to concern under the basic provisions of the model order, it is useful to make the correct interpretation of certain common transactions absolutely clear.

any transfer of collateral pursuant to the collection of such money loan shall not be excluded from this Order solely by reason of this Subparagraph.

(f)    *Acquisition of Ownership Interest in a Substantial Claimholder*.  The acquisition of an equity interest in a Substantial Claimholder (the "Transferred Person") shall not be subject to this Order, so long as the aggregate amount of Specified Claims held by the Transferred Person represents less than 25 percent of the fair market value of the total gross assets (excluding cash or cash equivalents) of the Transferred Person.

(g)    *Participations*.  The holder of a participation interest in a Specified Share or Specified Claim, and not the originator of such participation interest, shall be treated as having Tax Ownership of such Specified Share or Specified Claim for purposes of this Order to the extent of the participation interest, so long as the participation interest is documented under standard commercial terms and is without recourse to the originator.

9.    Sanctions for Noncompliance.

(a)    *Noncompliance Relating to Specified Shares*.  Acquisitions and dispositions of Tax Ownership of Specified Shares in violation of the restrictions and procedures set forth in Paragraph 5 shall be void ab initio, and the sanction for violating Paragraph 5 shall be reversal of the noncompliant transaction.[14]

(b)    *Noncompliance Relating to Sell Down Notices*.  In the event that a Substantial Claimholder fails to comply with an obligation to transfer Specified Claims in accordance with a Sell Down Notice, the sole sanction that may be applied to such Substantial Claimholder with respect to such failure will be to prohibit the Substantial Claimholder from receiving as a result of a 382(l)(5) Plan consideration consisting of equity of the Debtors that is attributable to the Specified Claims that were required to be (but were not) transferred (or consideration in lieu thereof).  As a substitute for any such sanction, however, the Substantial Claimholder may elect to indemnify the Debtors for any losses that they suffer as a result of limitations on their ability to utilize NOL carryovers or other tax attributes that are attributable to such failure; provided, however, that the Substantial Claimholder must provide the Debtors with such assurances of creditworthiness with respect to such indemnification obligation as the Debtors may in their reasonable discretion require.[15]

(c)    *Sanctions Procedures*.  In the event that an Entity fails to comply with the restrictions and procedures set forth in this Order (a "Noncomplying Person"), the Debtors shall deliver to the Noncomplying Person a notice setting forth a description of the violation and the sanctions requested by the Debtors against the Noncomplying Person (a "Notice of Noncompliance").  Within five (5) days after service of the Notice of Noncompliance, the Noncomplying Person shall file with the Court and serve upon the Debtors a response to said notice (the "Response") and obtain a hearing date not later than ten (10) days after service of the Notice of Noncompliance (the Response shall state the date and time of the hearing date obtained by the Noncomplying Person).  If a Response is timely filed and served, the Court may hear the matter within ten (10) days after service of the Notice of Noncompliance.  If a Response is not timely filed and served as required, then the Court may enter an order granting the sanctions requested by the Debtors in the Notice of Noncompliance.  Notwithstanding anything to the contrary in this Order, a Noncomplying Person shall not be subject to sanctions for transactions entered into before the Effective Time.

---

[14]    Because transactions in Specified Shares can directly trigger an immediate section 382 ownership change, the model order makes noncompliant transactions void ab initio.

[15]    Because acquisitions of Specified Claims are only potentially problematic to the extent that they result in a Substantial Claimholder receiving additional equity of a Debtor pursuant to a 382(l)(5) Plan, the appropriate sanction for failure to comply with a Sell Down Notice is to prohibit the Substantial Claimholder from receiving equity in exchange for the additional Specified Claims that it acquired.  Alternatively, the Substantial Claimholder may opt to indemnify the Debtors for any lost NOL carryovers.  In order to enforce the first part of this provision, it may be appropriate to insert a forfeiture clause in the plan of reorganization.

10.     <u>Discretionary Waiver by Debtors</u>.  The Debtors, with the consent of the Creditors Committee(s) or pursuant to an order of this Court, shall be permitted to waive any restrictions, sanctions, remedies, or procedures imposed pursuant to this Order; <u>provided</u>, <u>however</u>, that any such waiver shall be filed with this Court.

11.     <u>Notice of this Order</u>.  The Debtors shall submit a notice of the entry of this Order for publication on the Bloomberg newswire service and arrange for publication of such notice in the Wall Street Journal and the [applicable local publication] as promptly as reasonably possible.[16]  The Debtors shall also post such notice together with a copy of this Order on the Debtors' website before the Effective Time.  Notice in substantially the form attached hereto as Exhibit C is approved for publication.  Within twenty-four (24) hours of the Effective Time, the Debtors shall serve a notice of the entry of this Order on (i) the Office of the United States Trustee for the [_____] District of [_____]; (ii) the holders of the [one hundred (100)] largest unsecured claims on a consolidated basis against the Debtors; (iii) any indenture trustee(s) or transfer agent(s) for the Specified Shares or Specified Claims, as applicable; (iv) those persons that have formally appeared and requested service in this case pursuant to Bankruptcy Rule 2002; (v) counsel for the Equity Committee(s) and the Creditors Committee(s) (or, in the absence thereof, counsel for any ad hoc committees of shareholders and claimholders of the Debtors and the agents for the bank lenders to the Debtors); and (vi) the Internal Revenue Service.  Upon receipt of such notice, counsel for the Equity Committee(s) and the Creditors Committee(s) (or, in the absence thereof, counsel for any ad hoc committees of shareholders or claimholders of the Debtors and the agents for the bank lenders to the Debtors) shall send such notice to their respective committee members and lender groups and, if requested by the Debtors, any indenture trustees and transfer agents shall send such notice to all holders of the Specified Shares or Specified Claims, as applicable, registered with such indenture trustee or transfer agent.  Any such registered holder shall, in turn, provide such notice to any holder for whose account such registered holder holds Specified Shares or Specified Claims, as applicable.  Any such holder shall, in turn, provide such notice to any Entity for whom such holder holds the Specified Shares or Specified Claims, as applicable.

12.     <u>Continued Compliance with Other Applicable Laws and Rules</u>.  The requirements set forth in this Order are in addition to the requirements of Bankruptcy Rule 3001(e) and applicable securities, corporate, and other laws, and do not excuse compliance therewith.

13.     <u>Scope of Relief Granted</u>.  The relief granted in this Order is intended solely to permit the Debtors to protect and preserve the value of their NOL carryovers and certain other tax attributes.  Accordingly:

(i)     except to the extent necessary to protect, preserve, and maximize the value of the Debtors' NOL carryovers and certain other tax attributes, nothing in this Order shall be construed to prejudice, impair, or otherwise alter or affect the rights of any holders of claims against or interests in the Debtors, including in connection with the treatment of any such claims or interests under any plan of reorganization;

(ii)    except to the extent this Order expressly conditions trading in claims against and interests in the Debtors, nothing in this Order shall be construed to prejudice, impair, or otherwise alter or affect the rights of any holders of claims against or interests in the Debtors, including in connection with the treatment of any such claims or interests under any plan of reorganization;

(iii)   nothing in this Order shall be construed to waive the right of any holder of a claim against or interest in the Debtors to oppose any attempt by the Debtors to prohibit any transaction;

---

[16]     The Bloomberg newswire service publishes company press releases, subject to editorial screening and review.  Press releases may be submitted by email to release@bloomberg.net, and by fax to (609) 897-8394.

(iv)    nothing in this Order shall be construed to impose any restrictions or requirements on Entities that sell or otherwise dispose of Tax Ownership of claims against the Debtors solely by reason of such Entities engaging in such sales or other dispositions, and in no event shall any acquisition or disposition of Tax Ownership of claims against the Debtors be rendered void or unenforceable by reason of this Order;

(v)    notwithstanding anything to the contrary in this Order, in no event shall the votes with respect to plan confirmation by a Substantial Claimholder be designated as not having been in good faith pursuant to section 1126(e) of the Bankruptcy Code as a result of (1) a purchase of Specified Claims by such Substantial Claimholder above the Threshold Amount; (2) a failure by such Substantial Claimholder to comply with an obligation to transfer Specified Claims under a Sell Down Notice; or (3) such Substantial Claimholder taking any action or failing to take any action in a manner that violates this Order;[17]

(vi)    within one-hundred-twenty (120) days of the entry of this Order, the Debtors must establish that they have significant NOL carryovers or other tax attributes governed by section 382 of the Internal Revenue Code that are not subject to limitations thereunder, and in the event that the Debtors fail to make the required showing, this Order shall immediately become void ab initio;[18]

(vii)    within one-hundred-twenty (120) days of the entry of this Order, the Debtors must establish that:

    (1)    there is a reasonable possibility that section 382(1)(5) of the Internal Revenue Code will be available in connection with the formulation and implementation of the Debtors' plan of reorganization (taking into account the potential for Sell Down Notices);

    (2)    there is a reasonable possibility that the Debtors will propose a 382(l)(5) Plan;

    (3)    there is a reasonable possibility that such a proposed 382(l)(5) Plan will be confirmed;

    (4)    there is a reasonable possibility that substantial tax attributes will be available to be carried over under such a proposed 382(l)(5) Plan to reduce the future U.S. federal income tax liabilities of the Debtors, taking into account any reductions in tax attributes under section 108(b) of the Internal Revenue Code that will occur as a result of the implementation of the 382(l)(5) Plan;

    (5)    there is a reasonable possibility that the utilization of section 382(l)(5) of the Internal Revenue Code will be more beneficial to the Debtors and their estates than utilizing section 382(l)(6) of the Internal Revenue Code; and

---

[17]    This provision (together with a parenthetical in Paragraph 6) preserves a Substantial Claimholder's ability to vote on a proposed plan of reorganization, regardless of whether the Substantial Claimholder is subject to, or in violation of, a Sell Down Notice. Thus, a noncompliant Substantial Claimholder may vote to reject a 382(l)(5) Plan, and if the plan is in fact rejected, its sell down obligation would effectively be eliminated.

[18]    Because the model order is only appropriate to the extent that there are NOL carryovers or other tax attributes to be preserved, and because transactions in a Debtor's stock in the period leading up to a bankruptcy petition may themselves trigger the section 382 limitation, the model order requires the Debtors to establish that they have significant NOL carryovers or other tax attributes that are not currently subject to limitations in order for any of the trading restrictions to continue to apply.

(6)    the Threshold Amount is reasonable taking into account the Debtors' circumstances and the principles of section 382(l)(5) of the Internal Revenue Code,

and in the event that the Debtors fail to make any of the required showings, all of the provisions of this Order relating to Specified Claims shall immediately become void ab initio;[19]

(viii)    upon the reasonable request of an Entity that has Tax Ownership of Specified Shares or Specified Claims, the Debtors must repeat the showing in (vi) above, with the same consequences for a failure to make the required showing; provided, however, that the Debtors shall not be required to repeat the showing more frequently than once every one-hundred-eighty (180) days, and shall not be required to make the showing earlier than sixty (60) days after receipt of the request therefore; and

(ix)    upon the reasonable request of an Entity that has Tax Ownership of Specified Claims, the Debtors must repeat the showings in (vii) above, with the same consequences for a failure to make any of the required showings; provided, however, that the Debtors shall not be required to repeat the showings more frequently than once every one-hundred-eighty (180) days, and shall not be required to make the showings earlier than sixty (60) days after receipt of the request therefore.

14.    Definitions.  For purposes of this Order, the following definitions shall apply:

"382(l)(5) Plan" means a plan of reorganization for the Debtors under chapter 11 pursuant to which there is a significant likelihood that (i) section 382(l)(5) of the Internal Revenue Code will be utilized; and (ii) transfers of Tax Ownership of the reorganized Debtors' equity will be restricted for not less than two years after the reorganization, in a manner sufficient to prevent the application of section 382(l)(5)(D) of the Internal Revenue Code.[20]

"Agent" means a broker, account manager, agent, custodian, nominee, prime broker, clearinghouse, or trustee (including an indenture trustee but not including a trustee qualified under section 401(a) of the Internal Revenue Code).

"Bankruptcy Code" means title 11 of the United States Code.

"Creditors Committee" means a statutorily appointed creditors committee for one or more of the Debtors.

"Debtors" has the meaning given in the first paragraph hereof.

"Disclosure Statement" means a disclosure statement filed with the Court relating to a proposed plan of reorganization for the Debtors under chapter 11.

---

[19]    Because the debt provisions of the model order are only appropriate to the extent that there is a reasonable possibility that the Debtors will implement a 382(l)(5) Plan that requires the restrictions, the model order requires the Debtors to establish that a 382(l)(5) Plan is possible, and that the Threshold Amount is reasonable, in order for the debt provisions to continue to apply.

[20]    As discussed above, if a second ownership change occurs within two years of an ownership change covered by the section 382(l)(5) exemption, the section 382 limitation with respect to the second ownership change is zero, and the benefits of using the section 382(l)(5) exemption with respect to the first ownership change may be substantially eliminated.  The debt provisions of the model order are limited to situations in which a plan for reorganization will utilize the section 382(l)(5) exemption, and will not allow the benefits of the exemption to be eliminated by post-reorganization transfers.

"Effective Time" means the earlier of:

(i)    two hours after notice of this Order first appears on the Bloomberg newswire service; and

(ii)   10:00 A.M. Eastern Time on the morning when notice of this Order is first published in the Wall Street Journal.[21]

"Entity" means a person or entity for purposes of the rules under section 382 of the Internal Revenue Code.

"Equity Committee" means a statutorily appointed shareholders committee for one or more of the Debtors.

"Internal Revenue Code" means the Internal Revenue Code of 1986, as amended.

"Motion" has the meaning given in the first paragraph hereof.

"Newly Traded Specified Claims" means Specified Claims (i) of which an Entity acquired Tax Ownership after the date that was 18 months before the petition date; and (ii) that are not "ordinary course" claims, within the meaning of Treasury regulations section 1.382-9(d)(2)(iv), of which the same Entity has always had Tax Ownership.

"NOL" has the meaning given in Paragraph A of the findings hereof.

"Noncomplying Person" has the meaning given in Paragraph 9(c).

"Notice of Noncompliance" has the meaning given in Paragraph 9(c).

"Noticed Specified Claims" means Specified Claims of which an Entity acquires Tax Ownership pursuant to the following procedure:

(i)    At least ten (10) days before the consummation of the transaction, such Entity shall serve on the Debtors and their attorneys, by facsimile or overnight mail, a notice in the form attached hereto as Exhibit B2 (a "Proposed Specified Claim Transaction Notice"), together with any Substantial Claimholder Notice that the Entity is required to file under Paragraph 4 but has not yet filed.

(ii)   Upon receipt of a Proposed Specified Claim Transaction Notice together with any required Substantial Claimholder Notice, the Debtors shall have ten (10) days (or until thirty-five (35) days after the Effective Time, if later) to object to the transaction.

(iii)  If no objection to the proposed transaction is served by the Debtors upon such Entity within such period, then the transaction may proceed as set forth in the Proposed Specified Claim Transaction Notice.

(iv)   If an objection to the proposed transaction is served by the Debtors upon such Entity within such period, then the transaction may not be consummated; underlined provided, however, that the Entity may petition this Court

---

[21]    The Effective Time definition is intended to ensure that market participants receive adequate notice of the restrictions imposed by the order.  In this regard, the model order is primarily designed for situations in which claims are actively traded in the national and international debt markets.

for permission to consummate a proposed transaction notwithstanding the Debtors' objection, and such permission shall be granted unless the Debtors can establish that:

(1)     there is a reasonable possibility that section 382(1)(5) of the Internal Revenue Code will be available in connection with the formulation and implementation of the Debtors' plan of reorganization (taking into account the potential for Sell Down Notices);

(2)     there is a reasonable possibility that the Debtors will propose a 382(l)(5) Plan;

(3)     there is a reasonable possibility that such a proposed 382(l)(5) Plan will be confirmed;

(4)     there is a reasonable possibility that substantial tax attributes will be available to be carried over under such a proposed 382(l)(5) Plan to reduce the future U.S. federal income tax liabilities of the Debtors, taking into account any reductions in tax attributes under section 108(b) of the Internal Revenue Code that will occur as a result of the implementation of the 382(l)(5) Plan;

(5)     there is a reasonable possibility that the utilization of section 382(l)(5) of the Internal Revenue Code will be more beneficial to the Debtors and their estates than utilizing section 382(l)(6) of the Internal Revenue Code; and

(6)     there is a reasonable possibility that allowing the proposed transaction to be consummated would prevent the Debtors from utilizing section 382(l)(5) of the Internal Revenue Code in connection with their reorganization.

Each transaction within the scope of this definition must be the subject of a separate notice as set forth herein with a separate waiting period.  If the Debtors do not object to a proposed transaction, the Debtors will use reasonable efforts to advise the applicable Entity in writing as soon as practicable that they do not object.  Except to the extent necessary to respond to a petition to allow consummation of a proposed transaction notwithstanding an objection, to the extent otherwise required by law, or to the extent the information contained therein is already public, the Debtors shall keep all Proposed Specified Claim Transaction Notices strictly confidential and shall not disclose the contents thereof except, if the Debtors so desire, to their counsel and professional financial advisers and/or the counsel and professional financial advisers to the Equity Committee(s) and the Creditors Committee(s), who shall themselves keep all Proposed Specified Claim Transaction Notices strictly confidential and shall not disclose the contents thereof to any other person, including a member of an Equity Committee or Creditors Committee.

"Participation Restriction" has the meaning given in Paragraph 6.

"Proposed Specified Claim Transaction Notice" has the meaning given in the definition of "Noticed Specified Claims".

"Proposed Specified Share Transaction Notice" has the meaning given in Paragraph 5.

"Protected Amount" means the amount of Specified Claims of which an Entity has Tax Ownership at the Effective Time, increased by:

(i)      the amount of Specified Claims of which such Entity acquires Tax Ownership pursuant to contracts entered into before the Effective Time;[22]

(ii)     the amount of Specified Claims of which such Entity acquires Tax Ownership from another Entity that are Newly Traded Specified Claims in the hands of the transferor, to the extent that (x) both the transferor and the transferee are Substantial Claimholders immediately before the transfer; or (y) the transferor is a Substantial Claimholder immediately before the transfer and the transferee becomes a Substantial Claimholder as a result of the transfer, but the transferor ceases to be a Substantial Claimholder as a result of the transfer, the aggregate amount of Newly Traded Specified Claims of which the transferor has Tax Ownership immediately after the transfer equals or exceeds the aggregate amount of Newly Traded Specified Claims of which the transferee has Tax Ownership immediately before the transfer, and the transferor has complied and continues to comply with the Participation Restriction;[23] and

(iii)    the amount of Noticed Specified Claims of which such Entity acquires Tax Ownership.[24]

"Response" has the meaning given in Paragraph 9(c).

"Sell Down Notice" means a notice to a Substantial Claimholder requiring the Substantial Claimholder to transfer Specified Claims in accordance with Paragraph 6.

"Specified Claims" means:

(i)      any general unsecured claims against the Debtors that are treated as indebtedness for U.S. federal income tax purposes, including unsecured claims incurred in the ordinary course of the Debtors' business, unsecured debt securities issued by the Debtors, and unsecured preferred securities issued by the Debtors that are treated as indebtedness for U.S. federal income tax purposes,[25] but not including:

---

[22]    For this purpose, a "contract" is any contract that is enforceable against such Entity before the Effective Time, and includes a contract that is subject to contingencies or conditions subsequent (as, e.g., a credit default swap) that will only be resolved after the Effective Time. For purposes of the provision, it is also contemplated that Specified Claims will be treated as acquired pursuant to such a contract notwithstanding the fact that the acquisition is only required after the transferor or transferee exercises or fails to exercise, before or after the Effective Time, a right or privilege that is embedded in the contract (including, without limitation, a right to give notice of a triggering event, a right to settle the contract with cash or other property, or a right of first refusal with respect to the Specified Claims).

[23]    This provision allows a Substantial Claimholder to acquire additional Specified Claims without creating a risk of being subject to a Sell Down Notice with respect to those Specified Claims, if the Specified Claims are not "old and cold" debt or trade debt in the hands of the transferor, and the acquisition is such that it will not increase the amount of non-qualifying debt in the hands of Substantial Claimholders in the aggregate. The rationale of the provision is that such acquisitions should not reduce the Debtors' ability to benefit from the section 382(l)(5) exemption.

[24]    This provision allows a Substantial Claimholder to acquire additional Specified Claims without creating a risk of being subject to a Sell Down Notice with respect to those Specified Claims, by using an optional procedure whereby the Debtors are given notice of the proposed transaction and an opportunity to object.

[25]    The restrictions on claim trading set forth in the model order are generally not intended to apply to secured debt. The reason for this limitation is that claim trading during a bankruptcy only has a potential to

(1)    any loans or other financial accommodations made to or for the benefit of the Debtors pursuant to debtor-in-possession financing agreements;[26] and

(2)    any [_____] claims; and[27]

(ii)    a portion of certain partially secured claims as follows:

(1)    [__]% of the principal and accrued interest as of the petition date in the case of the [_____] claims; and

(2)    [__]% of the principal and accrued interest as of the petition date in the case of the [_____] claims.[28]

[Specified Claims include, without limitation, claims with the following CUSIP numbers: [_____].]

"Specified Shares" means each class of common stock of the Debtors.[29]  [Specified Shares include, without limitation, shares with the following CUSIP numbers: [_____].]

"Substantial Claimholder" means an Entity that has Tax Ownership of an aggregate amount of Specified Claims that equals or exceeds the Threshold Amount, measured by principal and accrued interest as of the petition date.[30]

---

jeopardize a debtor's post-confirmation NOL carryovers to the extent that the traded claims may be exchanged for equity pursuant to a plan of reorganization.  A reorganization plan will typically provide for the distribution of new debt securities, instead of equity, in satisfaction of secured claims in accordance with the requirements of fair and equitable treatment under section 1129(b)(2) of the Bankruptcy Code.

[26]    Because claims under debtor-in-possession financing arrangements would not be expected to be exchanged for equity pursuant to a plan of reorganization, they are also excluded from the scope of the model order.

[27]    In many cases, it will be helpful specifically to list certain classes of claims that will be excluded from the Specified Claims definition, in order to avoid any confusion as to what constitutes an excluded claim.  In some cases, there may also be some basis for excluding claims against certain debtor entities from the provisions of the order.  For example, where one affiliated Debtor has substantial assets and remains solvent on a balance sheet basis notwithstanding the bankruptcy proceedings, it may be unlikely that claims against that Debtor would be subject to a debt-for-equity exchange on the same terms as contemplated with respect to other less solvent affiliated Debtors.  However, even in cases where some Debtors appear relatively more solvent, it may be appropriate to have the order apply to unsecured claims against all Debtors until such time as the actual terms of a plan of reorganization are formulated.

[28]    A more difficult question arises with respect to debt that is undersecured, and with respect to sale-leaseback and other structured finance arrangements that do not have sufficient collateral.  The approach taken in a number of cases, and that has been taken in the model order, is to include a portion of such partially secured claims within the definition of Specified Claims.  The Debtors and the Creditors Committee(s) will need to determine a percentage to be applied against each class of partially secured claims, such percentage being a best guess estimate of the extent to which the claims from the class could potentially be exchanged for equity pursuant to a plan of reorganization.

[29]    Transactions in "plain vanilla" preferred stock generally do not count for purposes of the section 382 ownership change test.  If the debtors have more exotic equity and equity-like securities, however, such securities may need to be included in the Specified Share definition.

"Substantial Claimholder Notice" has the meaning given in Paragraph 4.

"Substantial Shareholder" means an Entity that has Tax Ownership of at least [4.75] percent of any class of Specified Shares.[31]

"Substantial Shareholder Notice" has the meaning given in Paragraph 4.

"Tax Ownership" means beneficial ownership as determined for U.S. federal income tax purposes in accordance with the rules under section 382 of the Internal Revenue Code, including applicable attribution and indirect ownership rules.[32]  Tax Ownership shall include, but not be limited to:

(i)      direct Tax Ownership by an Entity;

(ii)     indirect Tax Ownership by attribution from related Entities;

(iii)    indirect Tax Ownership through a participation interest or an interest in a disregarded entity or grantor trust;

(iv)    indirect Tax Ownership by attribution from family members;

(v)     indirect Tax Ownership by attribution from other Entities that are acting in concert;

(vi)    indirect Tax Ownership under an option, contingent purchase right, warrant, convertible instrument, or similar interest, under the rules set forth in Treasury regulations section 1.382-4; and

(vii)   indirect Tax Ownership through a trust qualified under section 401(a) of the Internal Revenue Code.

"Threshold Amount" means, as an initial matter, $[_____].[33]  The Debtors will periodically review the definition of the Threshold Amount, in consultation with the Creditors Committee(s),

---

[30]   Pursuant to attribution rules, ownership of Specified Claims generally must be computed on a consolidated basis.  Thus, if two affiliated entities own Specified Claims aggregating to the Threshold Amount, both entities will generally be treated as Substantial Claimholders for purposes of the order.

[31]   If calculations of percentage ownership are thought to be uncertain or complicated, it may be appropriate to lower the triggering percentage, in order to build in an additional buffer.  In some cases, the percentage has been as low as 4.50 percent.  It should also be noted that, pursuant to attribution rules, the percentage ownership of Specified Shares generally must be computed on a consolidated basis.  Thus, if one entity owns 2 percent of the Specified Shares and an affiliated entity owns 3 percent, both entities will generally be treated as Substantial Shareholders for purposes of the order.  Furthermore, ownership of certain options on Specified Shares will be treated as ownership of the applicable shares for section 382 purposes.

[32]   Ownership of an asset for U.S. federal income tax purposes generally is determined by reference to the locus of risk of loss and opportunity for gain with respect to the asset, and must be resolved based on all the facts and circumstances of a particular situation.  Specifically, the fact that a person holds "legal title" to an asset is not enough to make that person the owner for tax purposes.  By way of example, a typical loan participation will generally result in the purchaser of the participation having tax ownership of the applicable portion of the loan.  A typical cash-settled notional principal contract with respect to a debt instrument, on the other hand, will generally not convey tax ownership of the debt instrument so long as the contract does not require any party actually to hold or transfer the debt instrument.  Determinations of tax ownership can be very difficult, and will frequently require the advice of tax professionals.

[33]   Determining an appropriate level for the Threshold Amount is one of the most important decisions to be made in connection with a proposed order.  Unfortunately, there is no simple formula or methodology for

with a view to ensuring the reasonableness thereof, but in no event shall the Threshold Amount be decreased with retroactive effect.

"Transferred Person" has the meaning given in Paragraph 8(f).

The relief provided in this Order is in addition to, and not in lieu of, any and all other rights and remedies available to the Debtors.

Dated:  [_____ __], [_____]

_____

[_____],
United States Bankruptcy Judge

---

determining a reasonable Threshold Amount in any given case.  The goal of the Threshold Amount is to limit the order's debt-related provisions to holders of claims that may potentially be exchanged for 5 percent or more of a Debtor's equity pursuant to a plan of reorganization, because only such holders have a significant potential to jeopardize a Debtor's post-confirmation NOL carryovers as a result of acquiring claims.  The determination of the Threshold Amount must be made in the light of a variety of factors, the most important considerations being (i) an estimate of the aggregate amount of unsecured claims that will ultimately be allowed in the proceedings; and (ii) the extent to which post-confirmation business operations will require a debt-for-equity exchange in order to establish a feasible capital structure.  In most cases, both of these factors will be difficult to determine with any degree of precision, particularly at an early stage in the proceedings.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE [_____] DISTRICT OF [_____]
[_____] DIVISION**

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 Case |
| [_____], et al., | ) | Case No. [_____] |
| Debtors. | ) | |

**SUBSTANTIAL SHAREHOLDER NOTICE**

Please take notice that [_____] believes that it has Tax Ownership of the following Specified Shares:

| Debtor | Description of Specified Shares | Number of Specified Shares |
|---|---|---|
|  |  |  |
|  |  |  |
|  |  |  |

Capitalized terms used but not defined herein shall have the meanings given to them in the Interim Order, dated [_____ __], [_____], Establishing Restrictions and Procedures for Certain Trading Activity in Claims Against and Equity Interests in [_____] and Its Affiliated Debtors, as Debtors in Possession.

Dated:  [_____ __], [_____]

[_____]

_____
Name:
Title:

<u>Exhibit A2</u>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE [_____] DISTRICT OF [_____]**
**[_____] DIVISION**

| | | |
|---|---|---|
| In re | ) | Chapter 11 Case |
| | ) | |
| [_____], <u>et</u> <u>al</u>., | ) | Case No. [_____] |
| | ) | |
| Debtors. | ) | |
| | ) | |

**SUBSTANTIAL CLAIMHOLDER NOTICE**

Please take notice that [_____] believes that it has Tax Ownership of the following Specified Claims:

| Debtor | Description of Specified Claims | Amount of Specified Claims |
|---|---|---|
| | | |
| | | |
| | | |

Capitalized terms used but not defined herein shall have the meanings given to them in the Interim Order, dated [_____ __], [_____], Establishing Restrictions and Procedures for Certain Trading Activity in Claims Against and Equity Interests in [_____] and Its Affiliated Debtors, as Debtors in Possession.

Dated:  [_____ __], [_____]

[_____]

_____
Name:
Title:

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE [_____] DISTRICT OF [_____]
[_____] DIVISION**

|  |  |  |
|---|---|---|
| In re | ) | Chapter 11 Case |
|  | ) |  |
| [_____], et al., | ) | Case No. [_____] |
|  | ) |  |
| Debtors. | ) |  |
|  | ) |  |

**PROPOSED SPECIFIED SHARE TRANSACTION NOTICE**

Please take notice that [_____] intends to acquire Tax Ownership of the following Specified Shares from [_____]:

| Debtor | Description of Specified Shares | Number of Specified Shares |
|---|---|---|
|  |  |  |

Capitalized terms used but not defined herein shall have the meanings given to them in the Interim Order, dated [_____ __], [____], Establishing Restrictions and Procedures for Certain Trading Activity in Claims Against and Equity Interests in [_____] and Its Affiliated Debtors, as Debtors in Possession.

Dated:   [_____ __], [____]

[_____]

_____
Name:
Title:

<u>Exhibit B2</u>

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE [_____] DISTRICT OF [_____]**
**[_____] DIVISION**

| | | |
|---|---|---|
| In re | ) | Chapter 11 Case |
| | ) | |
| [_____], <u>et al</u>., | ) | Case No. [_____] |
| | ) | |
| Debtors. | ) | |
| | ) | |

**PROPOSED SPECIFIED CLAIM TRANSACTION NOTICE**

Please take notice that [_____] intends to acquire Tax Ownership of the following Specified Claims from [_____]:

| Debtor | Description of Specified Claims | Amount of Specified Claims |
|---|---|---|
| | | |

Capitalized terms used but not defined herein shall have the meanings given to them in the Interim Order, dated [_____ __], [____], Establishing Restrictions and Procedures for Certain Trading Activity in Claims Against and Equity Interests in [_____] and Its Affiliated Debtors, as Debtors in Possession.

Dated:   [_____ __], [____]

[_____]

_____
Name:
Title:

21

<u>Exhibit C</u>

**PUBLICATION NOTICE**

Court Orders Restrictions on Trading in Equity and Debt of [_____]

The United States Bankruptcy Court for the [_____] District of [_____], [_____] Division, has ordered substantial restrictions on trading in equity interests in and debt claims against the following entities:

[_____]

Securities affected by the order include securities with the following CUSIP numbers:

[_____]

A copy of the order may be found at the following internet address: [_____]; questions regarding the order may be directed to representatives of the debtors at the following telephone number: [_____].  The case number for the bankruptcy action is [_____].