Bruce D. Angiolillo (BA-9271)
Kenneth S. Ziman (KZ-2486)
William T. Russell, Jr. (WR-0998)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Fax: (212) 455-2502

Attorneys for the Administrative Agent for the
Prepetition Secured Lenders

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>DELPHI CORPORATION., et al.,<br>Debtors. | Chapter 11<br>Case No. 05-44481 (RDD)<br>(Jointly Administered) |

### RESPONSE AND RESERVATION OF RIGHTS OF THE PREPETITION AGENT TO THE PROPOSED ADEQUATE PROTECTION FOR THE PREPETITION LENDERS IN THE DEBTOR IN POSSESSION FINANCING MOTION

JPMorgan Chase Bank, N.A., in its capacity as administrative agent (in such capacity, the "Prepetition Agent"), for itself and a syndicate of approximately 250 senior secured lenders (collectively, the "Prepetition Lenders") to the above-captioned debtors and debtors-in-possession herein (collectively, the "Debtors"), hereby responds and reserves its rights with respect to the Debtors' Motion for Order Under 11 U.S.C. §§ 105, 361, 362, 363, 364(c), 364(d) and 364(e) and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors to Obtain Secured Postpetition Financing on Superpriority Secured and Priming Basis, (II) Authorizing Use of Cash Collateral, (III) Granting Adequate Protection to Prepetition Secured Lenders, (IV)

Granting Interim Relief and (V) Scheduling a Final Hearing under Fed. R. Bankr. P. 4001(b) and (c) (the "Motion"). In support hereof, the Prepetition Agent respectfully represents as follows:

## BACKGROUND

A. **The Prepetition Credit Agreement and Related Collateral**

1.  Prior to the Debtors' commencement of these Chapter 11 cases on October 8, 2005 (the "Petition Date"), Delphi Corporation (the "Borrower") entered into the 5-Year Third Amended and Restated Credit Agreement, dated as of June 14, 2005 (as amended, supplemented or otherwise modified, the "Prepetition Credit Agreement")[1], among Delphi, the Prepetition Lenders and the Prepetition Agent.  As of the Petition Date, the Borrower was liable to the Prepetition Lenders in the aggregate principal amount of approximately $2.6 billion on account of loans, letters of credit that have been issued and are outstanding and other extensions of credit (the "Prepetition Obligations").[2] The Prepetition Obligations are held by more than 250 Prepetition Lenders, which include money-center commercial banks, hedge funds and other financial institutions.

---

[1] Capitalized terms not otherwise defined herein shall have the meanings as defined in the Prepetition Credit Agreement.

[2] The Prepetition Credit Agreement defines "Obligations" to include: "the unpaid principal of and interest on (including interest accruing after the maturity of the Loans and Reimbursement Obligations and interest accruing after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding, relating to the Borrower, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding) the Loans and all other obligations and liabilities of the Borrower to the Administrative Agent or to any Lender (or, in the case of Specified Swap Agreements, any affiliate of any Lender), whether direct or indirect, absolute or contingent, due or to become due, or now existing or hereafter incurred, which may arise under, out of, or in connection with, this Agreement, any other Loan Document, the Letters of Credit, any Specified Swap Agreement or any other document made, delivered or given in connection herewith or therewith, whether on account of principal, interest, reimbursement obligations, fees, indemnities, costs, expenses (including all fees, charges and disbursements of counsel to the Administrative Agent or to any Lender that are required to be paid by the Borrower pursuant hereto) or otherwise." Prepetition Credit Agreement § 1.1.

2.  Upon the closing of the Prepetition Credit Agreement, the Prepetition Lenders made a term loan to the Borrower in the principal amount of $1 billion (the "Term Loans"), of which the Borrower contributed not less than $475 million its U.S. pension plans to bring the total contributions for the quarter to $625 million. The balance of the Term Loans was used to refinance existing indebtedness, pay related fees and expenses and for other general corporate purposes.

3.  In August 2005, the Debtors borrowed $1.5 billion of revolving loans (the "Revolving Loans") from the Prepetition Lenders. Upon information and belief, more than $350 million of these loans proceeds were used to pay the prepetition claims of certain customers and suppliers. In addition, substantial amounts of cash were transferred overseas to the Borrower's foreign subsidiaries in preparation for the Debtors' Chapter 11 filing. As of the Petition Date, the Debtors reported that there was approximately $1 billion on hand in non-US entities and $500 million in the United States. Affidavit of Robert S. Miller, Jr., dated October 8, 2005, ¶ 26.

4.  The Prepetition Obligations accrue interest each day at a rate per annum equal to either the Eurodollar plus the Applicable Margin (the "Eurodollar Rate") or ABR plus the Applicable Margin (the "ABR Rate"). *See* Prepetition Credit Agreement § 2.14. As of the Petition Date, the Prepetition Obligations were accruing interest at the Eurodollar Rate.

5.  Following an Event of Default under the Prepetition Credit Agreement, interest ceases to accrue at the Eurodollar Rate and accrues, instead, at the ABR Rate if the Majority Facility Lenders in respect of each Facility shall so determine in their sole discretion. *See* Prepetition Credit Agreement § 2.12(b). Based on the Prepetition Agent's polling of the Prepetition Lenders, the Majority Facility Lenders under each Facility have so directed and, therefore, interest on the Prepetition Obligations under the Prepetition Credit Agreement will

begin accruing at the ABR Rate upon the expiration of the existing LIBOR contracts on or about November 15, 2005.[3]

6.  The Prepetition Credit Agreement also provides that overdue Loans bear interest at a rate per annum equal to the rate then applicable to such Loans plus 2%. Given that the Prepetition Obligations have been accelerated as a result of the commencement of these Chapter 11 cases, interest on the entire approximately $2.6 billion of Prepetition Obligations is accruing at the default rate. In addition, any interest not paid when due will also accrue at the ABR Rate plus 2%.

7.  Pursuant to the Guarantee and Collateral Agreement, dated as of June 14, 2005 (as amended, supplemented or otherwise modified, the "<u>Guarantee and Collateral Agreement</u>"), made by the Borrower and the subsidiary guarantors (each a "<u>Loan Party</u>"), other Debtors guaranteed the Prepetition Obligations under the Credit Agreement. In addition, each Loan Party granted to the Prepetition Agent, for the ratable benefit of the Prepetition Lenders, as security for Prepetition Obligations, a first priority security interest in substantially all its personal property, including Accounts, Chattel Paper, Contracts, Deposit Accounts, Documents, Equipment, Fixtures, General Intangibles, Instruments, Intellectual Property, Inventory, Investment Property, Letter-of-Credit Rights and Proceeds of the foregoing, other than, among other exceptions, receivables sold into permitted receivables programs and Domestic Manufacturing Properties and stock and debt of Domestic Manufacturing Subsidiaries (as all such terms are defined in the Guarantee and Collateral Agreement). Although the Prepetition Agent's security interest did not attach to receivables sold into certain permitted receivables programs, the Prepetition Agent effectively obtained a first priority security interest in the value

---

[3]  As of the expiry of the existing LIBOR contracts, the Revolving Loans will accrue interest at ABR plus 4.00% and the Term Loans will accrue interest at ABR plus 5.50%.

of such receivables by having a lien on the General Intangible intercompany obligations that arose when the originators of the receivables sold the receivables to the special purpose vehicle. As of the Petition Date, no other creditor had a superior claim to the value represented by those receivables.

8. In addition, certain Loan Parties granted to the Prepetition Agent mortgages on certain real property and security interests in certain other assets constituting Domestic Manufacturing Properties and stock and indebtedness of Domestic Manufacturing Subsidiaries in order to secure its Prepetition Obligations in respect of the Term Loans and the "A Revolving Obligations" (i.e., those Revolving Obligations that could from time to time be secured by such assets without triggering the equal and ratable sharing provisions in the 1999 bond indenture). Upon information and belief, approximately $1.2 billion of the Prepetition Obligations are secured by this collateral.

9. The Debtors have acknowledged and agreed that the value of the Prepetition Lenders' collateral substantially exceeds the Prepetition Obligations as of the Petition Date. *See* Interim DIP Order ¶ 3.

**B.**     **The Motion and the DIP Credit Agreement**

10. On the Petition Date, the Debtors filed the Motion seeking *inter alia*, approval of a $2 billion DIP facility that would prime the Prepetition Lenders' liens, authority to use the Prepetition Lenders' cash collateral and approval of the provision of adequate protection. At the "first-day" hearing, the Prepetition Agent reserved its rights and the rights of the Prepetition Lenders to object on any and all grounds to the priming or the use of the cash collateral at the hearing on a final order on the Motion. At the conclusion of the hearing, the

Bankruptcy Court entered an interim order authorizing the DIP facility (the "Interim DIP Order").

11. The Interim DIP Order, *inter alia*, authorized the Debtors to obtain secured post-petition financing (the "DIP Financing") on an interim basis up to $950 million. The DIP Financing contemplates that on a final basis the Debtors can borrow up to an aggregate principal amount not to exceed $2 billion, consisting of a $1,750,000,000 revolving credit facility (inclusive of a sublimit in the aggregate of $325 million for the issuance of letters of credit) and a $250 million term loan facility, from a syndicate of financial institutions (collectively, the "DIP Lenders").

12. The Interim DIP Order further authorized the Debtors to grant the DIP Lenders (A) superpriority administrative claims under Bankruptcy Code Section 507(b) in respect of the Debtors' obligations under the DIP Financing, subject to the Carve Out (as defined in the DIP Agreement), (B) perfected first priority security interests in and liens upon, all unencumbered pre-petition and post-petition property of the Debtors, subject to the Carve Out and excluding avoidance actions, (C) perfected junior security interests in and liens upon all pre-petition and post-petition property of the Debtors that is subject to valid, perfected, and non-avoidable liens in existence on the Petition Date that are perfected thereafter as permitted by Bankruptcy Code Section 546(b), subject to the Carve-Out; provided that such security interests and liens shall not be junior to any liens of the Prepetition Agent or the Prepetition Lenders and (D) security interests senior to all liens and security interests of the Prepetition Agent or the Prepetition Lenders in the Collateral.

13. The Debtors offered the following in the Interim DIP Order as adequate protection to the Prepetition Lenders: (i) current payment of interest on the Prepetition

Obligations at the applicable contractual rate under the Prepetition Credit Agreement; (ii) replacement liens to replace the collateral being consumed by the Debtors through the ordinary course of business; (iii) a combination of equity in prepetition collateral and unencumbered property as of the Petition Date, (iv) a superpriority administrative claim pursuant to Section 507(b), subject and subordinate only to the 507(b) claim granted to the DIP Lenders and the Carveout and (v) information provided to the DIP Lenders and access to collateral.[4]

---

[4] The full terms of the Adequate Protection Package are as follows:

- The Prepetition Agent (for itself and for the benefit of the Prepetition Secured Lenders) is granted a replacement security interest in and lien upon all the Collateral, subject and subordinate only to (i) the security interests and liens granted to the DIP Agent for the benefit of the DIP Lenders and any liens on the Collateral to which such liens so granted to the DIP Agent are junior and (ii) the Carve Out;

- The Prepetition Agent and the Prepetition Secured Lenders are granted, subject to the payment of the Carve Out, a superpriority claim as provided for in section 507(b) of the Bankruptcy Code, limited in amount to the aggregate diminution in value of the Prepetition Secured Lenders' Prepetition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Prepetition Collateral, the priming of the Prepetition Agent's security interests and liens in the Prepetition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code, immediately junior to the claims under section 364(c)(1) of the Bankruptcy Code held by the DIP Agent and the DIP Lenders provided, however, that the Prepetition Agent and the Prepetition Secured Lenders shall not receive or retain any payments, property or other amounts in respect of the superpriority claims under section 507(b) of the Bankruptcy Code unless and until the DIP Obligations have indefeasibly been paid in cash in full;

- The Prepetition Agent shall receive from the Debtors (i) immediate cash payment of all accrued and unpaid interest on the Prepetition Debt and letter of credit fees at the rates provided for in the Prepetition Agreements, and all other accrued and unpaid fees and disbursements payable to or for the benefit of the Prepetition Agent under the Prepetition Agreements and incurred prior to the Petition Date including, but not limited to, fees owed and amounts to be paid or reimbursed for counsel, financial and other consultants for the Prepetition Agent pursuant to Section 10.6 of the Prepetition Credit Agreement, (ii) current cash payments of all fees and expenses payable to the Prepetition Agent under the Prepetition Agreements, including, but not limited to, the reasonable fees and disbursements of counsel, financial and other consultants for the Prepetition Agent, (iii) on the first business day of each month, all accrued but unpaid interest on the Prepetition Debt, and letter of credit and other fees at the non-default contract rate applicable on the Petition Date (including LIBOR pricing options) under the Prepetition Agreements, provided that, without prejudice to the rights of the Debtors or any other party to contest such assertion, the Prepetition Secured Lenders reserve their rights to assert claims for the payment of additional interest calculated at any other applicable rate of interest (including, without limitation, default rates), or on any other basis provided for in the Prepetition Agreements, and for the payment of any other amounts provided for in the Prepetition Agreements and (iv) current cash payment of all reasonable out-of-pocket expenses of the members of any steering committee of Prepetition Secured Lenders, in their capacity as such;

14. At the time the Bankruptcy Court entered the Interim DIP Order, the DIP Credit Agreement did not have any restrictions on dispositions of property if the amount available under the DIP Facility were greater than $500 million nor did it require that net cash proceeds from asset sales be applied to permanently reduce the commitments under the DIP Credit Agreement or repay the Prepetition Obligations.

15. Following entry of the Interim DIP Order, the Prepetition Agent engaged in discussions with the Debtors regarding the proposed adequate protection. Ultimately, the Prepetition Agent informed the Debtors that the Prepetition Agent would object to the Motion seeking approval of the DIP Credit Agreement if the Debtors' proposed retention and use in the business of non-ordinary course asset sale proceeds were not resolved in a satisfactory manner. The Prepetition Agent also informed the Debtors of certain other provisions in the Interim DIP Order that needed to be modified, including those that purportedly restricted the Prepetition Agent's and Prepetition Lenders' rights to seek further or different adequate protection upon a change of circumstances or any other rights that the Prepetition Lenders may have as secured creditors and parties in interest in these Chapter 11 cases.

16. After further negotiations, the Prepetition Agent and the Debtors have reached an agreement which the Prepetition Agent expects to be reflected in the version of the Final DIP Order to be submitted to this Court by the Debtors.[5] Accordingly, the Prepetition

---

- The Prepetition Agent (for the benefit of the Prepetition Secured Lenders) and their experts and advisors shall be given reasonable access for purposes of monitoring the business of the Debtors and the value of the Collateral; and

- The Debtors shall provide the Prepetition Agent with any written financial information or periodic reporting that is provided to, or required to be provided to, the DIP Agent or the DIP Lenders.

[5]   Nonetheless, the Prepetition Agent understands that other Prepetition Lenders have filed, or intend to file, objections to the proposed DIP Financing on, among other grounds, that the

Agent is not objecting to the entry of the Final DIP Order, subject to its confirmation that such Order incorporates the agreed upon changes and is otherwise satisfactory in form and substance (and that other changes to such Order are not in any way adverse to the interests of the Prepetition Agent or the Prepetition Lenders).

17. The Prepetition Agent reserves the rights of the Prepetition Lenders to assert claims for any and all amounts owing under the Prepetition Credit Agreement including, without limitation, unpaid non-default interest, interest at the default rate on the unpaid Prepetition Obligations and any accrued and unpaid interest and other fees, costs and charges under the Prepetition Credit Agreement. The Prepetition Agent further reserves its right to respond to any objections interposed by other parties in interest that may affect the Prepetition Lenders' interests with respect to the DIP Motion and to respond to any amendments to or changes in the Adequate Protection Package proposed by the Debtors, including, without limitation, the right to seek an adjournment of the Final Hearing.

Dated: New York, New York
       October 25, 2005

SIMPSON THACHER & BARTLETT LLP

By: /s/ Ken S. Ziman
Bruce D. Angiolillo (BA-9271)
Kenneth S. Ziman (KZ-2486)
William T. Russell, Jr. (WR-0998)

425 Lexington Avenue
New York, New York 10017
Telephone:   (212) 455-2000
Facsimile:   (212) 455-2502

ATTORNEYS FOR THE PRE-PETITION AGENT

---

Debtors proposed adequate protection includes cash payments that are not equal to the interest that will actually accrue on the Prepetition Obligations.