UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                        :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

INTERIM ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(a)
(I) AUTHORIZING EMPLOYMENT AND RETENTION
OF O'MELVENY & MYERS LLP AS SPECIAL LABOR COUNSEL
TO DEBTORS AND (II) SCHEDULING FINAL HEARING THEREON

("O'MELVENY & MYERS RETENTION INTERIM ORDER")

Upon the application, dated October 8, 2005 (the "Application"), of Delphi
Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the
above-captioned cases (collectively, the "Debtors"), for an interim order (the "Interim Order")
under 11 U.S.C. §§ 327(e) and 1107(a) and Fed. R. Bankr. P. 2014 and 2016 (a) authorizing the
employment and retention of O'Melveny & Myers LLP ("O'Melveny") as special labor counsel
to the Debtors and (b) scheduling a final hearing thereon; and upon the Affidavit Of Robert S.
Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005,
and upon the Affidavit of Tom A. Jerman, sworn to October 7, 2005, in support of the
Application (the "Jerman Affidavit"); and this Court being satisfied with the representations
made in the Application and the Jerman Affidavit that O'Melveny does not represent or hold any
interest adverse to any of the Debtors' estates or the Debtors with respect to the matters on which
O'Melveny is to be employed, and that O'Melveny's employment is necessary and would be in
the best interests of each of the Debtors' estates; and it appearing that proper and adequate notice

has been given and that no other or further notice is necessary; and upon the record herein; and

after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Application is GRANTED on an interim basis.

2.    Subject to the terms of this Interim Order, the Debtors' employment of

O'Melveny as their special labor counsel, to perform the services set forth in the Application and

in accordance with the engagement letter attached hereto as <u>Exhibit 1</u>, is approved under sections

327(e) and 1107(a) of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the

"Bankruptcy Code"), and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), effective as of the date of the Application.

3.    All compensation to be paid by the Debtors to O'Melveny, including any

discretionary payments or success fees, shall be paid in accordance with the standards and

procedures set forth in sections 330 and 331 of the Bankruptcy Code and all applicable

Bankruptcy Rules, Local Bankruptcy Rules for the Southern District of New York, guidelines

established by the Office of the United States Trustee, and further orders of this Court.

4.    This Interim Order shall remain in full force and effect until such time as this

Court enters an order ruling on the Application on a final basis.

5.    The Debtors shall serve a notice of the final hearing to approve the

Application (the "Notice"), substantially in the form attached hereto as <u>Exhibit 2</u>, on (a) the

Office of the United States Trustee, (b) the Debtors' 50 largest unsecured creditors, (c) counsel

for the agent under the Debtors' prepetition credit facility, (d) counsel for the agent under the

Debtors' proposed postpetition credit facility, and (e) any committee appointed under section

1102 of the Bankruptcy Code.  Notice served pursuant to the preceding sentence shall be via first

class mail, postage prepaid.  No further notice of the final hearing to approve the Application or

of the entry of this Interim Order need be served by the Debtors.

      6.   Objections, if any, to approval of the Application on a final basis must be in

writing and filed timely in accordance with the requirements set forth in the Notice.  There shall

be a hearing held on October 27, 2005 at 10:00 a.m. (Prevailing Eastern Time) before the

Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New

York, One Bowling Green, Room 610, New York, New York 10004, to determine whether to

approve, on a final basis, the retention of O'Melveny on the terms described in the Application.

      7.   Any party-in-interest shall have the right to raise the issue of the application

of O'Melveny's prepetition retainer to postpetition fees and expenses incurred at any time.

      8.   This Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Interim Order.

      9.   The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the

United States Bankruptcy Court for the Southern District of New York for the service and filing

of a separate memorandum of law is deemed satisfied by the Application.

Dated:   New York, New York
        October 14, 2005

                              /s/ ROBERT D. DRAIN
                              UNITED STATES BANKRUPTCY JUDGE

## EXHIBIT 1

ENGAGEMENT LETTER

See separately attached exhibit.

## EXHIBIT 2

NOTICE

**Hearing Date: October 27, 2005, 10:00 a.m.**
**Objection Deadline: October 24, 2005, 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                         :
    In re                       :    Chapter 11
                          :
DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                          :
             Debtors.    :    (Jointly Administered)
                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

NOTICE OF APPLICATION AND ENTRY OF INTERIM ORDER
UNDER 11 U.S.C. §§ 327(e) AND 1107(a) (I) AUTHORIZING
DEBTORS TO EMPLOY AND RETAIN O'MELVENY & MYERS LLP AS
SPECIAL LABOR COUNSEL AND (II) SCHEDULING FINAL HEARING THEREON

PLEASE TAKE NOTICE that on October 8, 2005, Delphi Corporation ("Delphi")
and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-
captioned cases (collectively, the "Debtors"), filed the Application For Order Under 11 U.S.C.
§§327(e) And 1107(a) (I) Authorizing Employment And Retention Of O'Melveny & Myers LLP
As Special Labor Counsel To Debtors And (II) Scheduling Final Hearing Thereon (the
"Application").

PLEASE TAKE FURTHER NOTICE that on October __, 2005, the United States
Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an
interim order granting the relief requested in the Application, a copy of which is enclosed
herewith.

PLEASE TAKE FURTHER NOTICE that a hearing (the "Hearing") to consider
approval of the Application on a final basis will be held on October 27, 2005 at 10:00 a.m.
(Prevailing Eastern Time) before the Honorable Robert D. Drain, United States Bankruptcy
Court for the Southern District of New York, One Bowling Green, Room 610, New York, New
York 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to approval of the
Application on a final basis must (a) be in writing, (b) conform to the Federal Rules of
Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York,
(c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) –
registered users of the Bankruptcy Court's case filing system must file electronically, and all
other parties in interest must file on a 3.5 inch disk (preferably in Portable Document Format

(PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in

hard-copy form directly to the chambers of the Honorable Robert D. Drain, and (e) be served

upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General

Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West

Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) O'Melveny

& Myers LLP, 1625 Eye Street, N.W., Washington, D.C. 20006 (Att'n:  Tom A. Jerman), (iv)

special counsel to the Debtors, Shearman & Sterling LLP, 599 Lexington Avenue, New York,

New York 10022 (Att'n:  Douglas P. Bartner), (v) counsel for the agent under the Debtors'

prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York,

New York 10017 (Att'n:  Marissa Wesley), (vi) counsel for the agent under the Debtors'

proposed postpetition credit facility, Davis Polk & Wardell, 450 Lexington Avenue, New York,

New York 10017 (Att'n:  Marlane Melican), (vii) counsel to any official committee formed in

these cases, and (viii) the Office of the United States Trustee for the Southern District of New

York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M.

Leonhard), in each case so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time)**

on **October 24, 2005** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made in writing and filed timely and received by the Objection Deadline will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Application are filed timely and served in accordance with the procedures set forth herein, the Bankruptcy Court may enter a final order granting the Application **without further notice.**

Dated:  New York, New York
October __, 2005

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: _____
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: _____
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

## EXHIBIT 1

Engagement Letter

# O'MELVENY & MYERS LLP

<table>
<tr><td>BEIJING<br>BRUSSELS<br>CENTURY CITY<br>HONG KONG<br>LONDON<br>NEWPORT BEACH</td><td>400 South Hope Street<br>Los Angeles, California 90071-2899<br><br>TELEPHONE (213) 430-6000<br>FACSIMILE (213) 430-6407<br>www.omm.com</td><td>NEW YORK<br>SAN FRANCISCO<br>SHANGHAI<br>SILICON VALLEY<br>TOKYO<br>WASHINGTON, D.C.</td></tr>
</table>

September 28, 2005

OUR FILE NUMBER
600,000-012

WRITER'S DIRECT DIAL
213-430-6005

## CONFIDENTIAL

WRITER'S E-MAIL ADDRESS
rsiegel@omm.com

Beth Sax, Esq.
Assistant General Counsel
Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098-2815

> **Re:** *Section 1113/1114 Advice – Terms of*
> *Engagement, Conflict Waiver and Relationship Matters*

Dear Ms. Sax:

We are pleased to have the opportunity to serve as attorneys for Delphi Corporation (the "Company"). This letter agreement and the enclosed Terms of Engagement (the "Terms") contain the Company's agreement with us regarding the engagement of our firm.

## Subject Matter and Scope of Representation

Our representation of the Company relates only to Bankruptcy Code Section 1113/1114 advice and related labor law advice (the "Subject Matter"). We have not been asked to represent the Company in other legal matters at this time,[1] and our representation as to any matters not specified will be subject to resolution of any conflict issues that may arise and our acceptance in writing at the time of a request from the Company for a particular undertaking. The Company

---

[1] We currently represent Alan S. Dawes, Vice Chairman and Chief Financial Officer, in connection with the Securities and Exchange Commission investigation captioned, *In the Matter of Delphi Corporation*. In addition, we represent Mr. Dawes in *Glinka v. Delphi Corp.*, No. 05-71291 (E.D. Mich). The complaint alleges various violations of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.*, as a result of the purchase and holding of Delphi common stock by the Delphi Savings-Stock Purchase Program for Salaried Employees of the United States. The representations are subject to an indemnification agreement by which Delphi is funding our defense of Mr. Dawes. O'Melveny will not assist Mr. Dawes in his ongoing employment termination discussions with the Company. O'Melveny's representation of Mr. Dawes is subject to the "Waiver of Prospective Conflicts on Unrelated Matters," addressed below.

O'MELVENY & MYERS LLP

September 28, 2005 - Page 2

can limit the scope of our representation at any time. Any substantial expansion of our representation should be evidenced by a written mutual understanding. Unless otherwise agreed in writing, the terms of this letter agreement and the Terms will also apply to any additional matters we agree to handle on the Company's behalf.

## Identity of Client

We will represent only the Company in connection with the Subject Matter. Unless expressly agreed in writing, we will not be representing any of the Company's related or affiliated or associated persons or entities (collectively, "Affiliates"), i.e., any parent, subsidiary, or affiliated corporation or other entity, or any of the Company's or their officers, directors, investors, agents, partners or employees (collectively, "Agents"), in connection with the Subject Matter. Accordingly, we will generally not be precluded from representing other existing clients or future clients in legal matters relating or adverse to the Company's Affiliates or any of its or their Agents.

## Waiver of Prospective Conflicts on Unrelated Matters

We represent many other clients. It is possible that during or after the time we represent the Company, other present or future clients will ask us to represent them in disputes or transactions with or involving the Company (which term in this section includes any Affiliates or Agents) as to legal matters substantially unrelated to our representation of the Company.

As I mentioned to you, we have represented General Motors in the past, but we no longer represent General Motors in any active matter. We understand that the Company is willing to accept the risk of disqualification of O'Melveny due to O'Melveny's past representation of General Motors. In addition, we currently represent GMAC or its GMAC affiliates in our Shanghai and Tokyo offices in corporate matters. While we do not believe these representations pose a current conflict with representation of the Company in the Subject Matter, we are disclosing them in the utmost of caution.

Because our representation of the Company is limited to the Subject Matter, we wish to clarify our mutual understanding with the Company as to the extent to which our present representation both will affect, and will not affect, our ability to represent other existing or future clients in other legal matters, whether or not the Company (including, for these purposes, Affiliates and Agents) is adverse or otherwise involved in those matters. As a condition of our undertaking this matter, the Company agrees that

- we can continue to represent, or can in the future represent, existing or new clients in any matter, including litigation or other adversarial proceedings, so long as the matter is not substantially related to our work for the Company on the Subject Matter, even if those other clients' interests are adverse to the Company in the other matter;

O'MELVENY & MYERS LLP

September 28, 2005 - Page 3

- we might obtain confidential information of interest to the Company in these other matters that we cannot share with the Company; and

- the Company waives any conflict of interest that might arise from any of such engagements, and will not seek to disqualify us in or assert a conflict with respect to any of those engagements.

If for any reason, the Company's consent and waiver of potential conflicts is not effective in the circumstances, the Company consents to our resignation from our representation of it if resignation at that time is otherwise permissible under applicable professional rules. In that case, the Company would need to engage, at the Company's expense, separate counsel to represent its interests.

For example, this consent and waiver specifically includes (but is not limited to) the Company's consent to our representation of Mr. Alan Dawes in the litigation matters described above and any related matters, including in matters adverse to the Company, wherein the Company agrees that we may obtain confidential information of interest to the Company from Mr. Dawes that we cannot share with the Company.

Of course, without the Company's further prior written consent, we cannot and will not represent another client in a matter adverse to the Company if we have obtained confidential information of a nonpublic nature from the Company, as a result of our representation of the Company, that, if known to the other client, could be used in the other matter by the other client to the Company's material disadvantage unless we establish a "screen" to preserve the Company's confidences; the Company consents to this arrangement.

## Responsible Attorneys

I and my partner, Tom Jerman, will be primarily responsible for this matter. My direct dial at the office is 213-430-6005 and my e-mail address is rsiegel@omm.com. Tom Jerman is available at 202-383-5233 and tjerman@omm.com. We may delegate to other attorneys and staff particular tasks and responsibilities to better serve your interests. In particular, I anticipate that counsel Rachel Janger, and associates Jessica Kastin, Heidi Son, and Kyra Grundeman will assist. Ms. Janger, Ms. Son and Ms. Grundeman have significant experience in 1113 and 1114 matters, and Ms. Janger, Ms. Son and Ms. Kastin have significant traditional labor and employment law experience. Additionally, first year associates Stacy Hauf, Deepa Ambekar and Melissa Janiak will provide assistance in drafting and other appropriate tasks as needed on a cost-effective basis. If you have any questions at any time about appropriate staffing, I encourage you to call.

## Fees and Charges

Our fees are based primarily on time spent at then applicable billing rates. My individual current rate on this engagement is $690 per hour. Tom Jerman's current rate is $680 per hour, Rachel Janger's is $460, Jessica Kastin's is $465, Heidi Son's is $400, Kyra Grundeman's is

O'MELVENY & MYERS LLP

September 28, 2005 - Page 4


$270, Stacy Hauf's is $205, and Deepa Ambekar's and Melissa Janiak's are $235. Charges for all attorneys, legal assistants, staff and ancillary services will be at their applicable rates, which are available on request.

Our rates will change from time to time based on, among other variables, changes in attorney seniority or status, changes in our rates generally, and changes in the nature of the services performed. For more information on this subject, including frequency of billing, payment deadlines, notice of rate changes, and other factors affecting fees and other charges, as well as agreements concerning charges and expenses, please refer to the Terms. We have reviewed the attached Instructions of Delphi Corporation relating to law firm billing, and believe they are generally consistent with the Terms, except that one-half of unproductive travel time will be billable. To the extent there are additional inconsistencies between the Terms and the Instructions of Delphi Corporation, we agree that the Instructions of Delphi Corporation will control. Also, we understand that no new billing attorney will be added to the file without your prior approval.

If for any reason you become dissatisfied with our charges or services, we encourage you to tell us immediately. We believe that most problems of this nature can be resolved promptly through good faith discussion.

## Advances for Fees

On an "evergreen" (i.e., continuing) basis, we request for our benefit an advance payment for our legal fees in the amount of $300,000. Advances from the client may be treated as the property of the lawyer if the client so consents, but otherwise will be treated as the property of the client and held in a separate account. In order to avoid administrative burdens of separate accounts, we request the Company's consent to our treating the advance as our property and commingling the advance with our funds, as described in the Terms under the section captioned "Advances." The Company's acceptance of this engagement letter will constitute its consent. The Company's rights to a refund (if any) at the conclusion of the engagement and other terms applicable to the advance are described in greater detail in the Terms.

## Possible Premium Fee

The Subject Matter poses significant challenges. Therefore, if our legal services contribute to an exceptionally successful result, we expect to have the opportunity to discuss an additional fee (without any advance commitment from the Company) based on the nature and quality of our contribution to the results achieved rather than a fee based solely on the time expended would dictate. We understand that the Company will consider such factors as the actual result, its subjective view of our contribution to the Subject Matter, our efficiency and cost containment efforts, and its perception of our success in integrating with and utilizing the Company's in-house team.

O'MELVENY & MYERS LLP

September 28, 2005 - Page 5

## Media Contact

Without the Company's express consent, we will not make, respond to or engage in any media contact relating to this matter or any aspect of our relationship with the Company, other than to confirm that we are its counsel and a polite "I am not authorized to comment". We will refer any contact by the media relating to the Subject Matter to the Company's media relations representative. We request that the Company advise us in advance, however, of any information releases concerning the Subject Matter.

## ADR Processes with Adverse Party

The Company should note that alternative dispute resolution (ADR) processes may provide a means to resolve disputed claims. ADR processes include any structured process in which a neutral assists disputants in reaching a voluntary settlement by means of dispute resolution techniques such as mediation, conciliation, early neutral evaluation, nonjudicial settlement conferences or any other proceeding leading to a voluntary settlement. We will be prepared to discuss with the Company from time to time the advantages, disadvantages and availability of ADR processes as events unfold. The Company will have the ultimate authority, subject to applicable legal limits or orders, to determine (and eventually will need to determine) whether or not to pursue an ADR process.

## Arbitration

**The Terms include an agreement to arbitrate certain matters before and pursuant to the Commercial Rules (as then in effect) of the American Arbitration Association in the City of Los Angeles. The Company should note that discovery rules, standards of evidence, rights to appeal, and procedural rules, among other things, differ in arbitration from the rules applicable in a civil trial. By agreeing to arbitration, the Company also will be agreeing to waive any right to a jury or court trial.**

**If the Company does not wish to agree now to arbitration of any disputes, claims or controversies to the extent provided in the attached Terms, check this box ☐. If the box is checked, the arbitration provisions in the enclosed Terms will be deemed deleted.**

---

Our engagement, conflict and billing practices reflect our desire to deal fairly with our clients in these as in all other aspects of our relationship. We welcome the opportunity to be retained by the Company, and, assuming this letter is acceptable to the Company, we look forward to providing our services to it on a mutually satisfactory basis.

We encourage the Company to consult with other counsel or advisors of its choice regarding these matters, and to consider fully the possible implications of our representation on the basis described. If the Company agrees to all the foregoing matters and Terms of

**O'MELVENY & MYERS LLP**

September 28, 2005 - Page 6

Engagement, please communicate that agreement by signing and returning to me the enclosed copy of this letter.

The effective date of our agreement is the date on which our services commenced. The date of this letter on page 1 is for convenience of reference only. Although this engagement letter is considered confidential, you agree that we may share the terms of any conflict waivers (after redacting any otherwise confidential information) with our other affected client(s) and that we may disclose the fact of your waiver publicly or to other persons where reasonably necessary to rebut allegations that we are engaged in improper conflicting representations.

If you have any questions, please do not hesitate to give me a call.

Best personal regards.

Sincerely,

Robert A. Siegel
of O'MELVENY & MYERS LLP

**ACCEPTED AND AGREED WITH
CONSENTS AND WAIVERS GRANTED:
DELPHI CORPORATION**

By: _____
Beth Sax

Its   Assistant General Counsel

O'MELVENY & MYERS LLP

## O'MELVENY & MYERS LLP
### TERMS OF ENGAGEMENT

Except as modified in writing, O'Melveny & Myers LLP ("we") and the client ("you") agree to the
following provisions with respect to the relationship between them identified in the accompanying letter
agreement:

### Respective Responsibilities of Attorney and Client

We will keep you reasonably informed of significant developments in the Subject Matter and as necessary
to perform our services. We will consult with you as to our progress and issues that arise.

You will be candid and cooperative with us and will keep us informed with complete, accurate and timely
factual information, documents and other communications relevant to the Subject Matter or otherwise
reasonably requested by us to perform the services. We may rely on these communications, without
independent verification. You will also assist us by making business, strategic and technical decisions
appropriate to enable completion of the work and performance of the services.

We provide only legal services. You are not relying on us for and, among other things, we are not
providing investment, insurance, accounting or technical advice or making business decisions, nor are we
investigating the character or credit of persons with whom you may be dealing.

### Timely Billing and Payments

Fees, charges and expenses will generally be billed monthly and are payable upon presentation. You
agree that you will promptly review our statements, raise any questions regarding the amounts and items
billed within 30 days of presentation and pay all amounts billed consistent with these Terms of
Engagement. We expect prompt payment. In our experience prompt billing and prompt payment
enhance the working relationship.

We reserve the right to postpone or defer providing additional services or to discontinue our
representation, if billed amounts are not paid when due. We also reserve a right to charge a late fee at the
rate of 10% per annum on all sums not paid within 30 days of presentation of our statement, and you
agree to pay such late fees if applicable. Our failure to charge late fees at any time or on any occasion(s)
is not a waiver of our right to do so on any unpaid amount then outstanding, from the 31st day after such
amount was first billed.

### Billing Rates

You agree to pay our fees based on time expended on your behalf, computed on an hourly basis at our
then applicable rates for this engagement for the applicable attorneys and staff on the matter.

Generally speaking, these hourly rates currently range, with limited exceptions, in our California and
Washington D.C. offices from $205 per hour for our most junior attorneys, to $790 per hour for our most
experienced partners.

For legal assistants and practice support staff and managers, the current range firm-wide is from $45 per
hour for our most junior clerks ($150 per hour for junior legal assistants) to $265 per hour for our most
seasoned, non-attorney legal assistants and managers (except for certain special trade and other
consultants whose higher rates are available on request).

**O'MELVENY & MYERS LLP**

Beth Sax, Esq., September 28, 2005 - Page 2

We will not separately bill for the following services: word processing, coders, text editing, distribution and proofreading, and (when required by the urgency of a client's matter) secretarial overtime.

We change our rates, as well as our other charges, from time to time, to reflect competitive conditions, inflation and other factors. You agree that those and other changes apply prospectively to all matters then being handled by the firm for you and may result in increases in excess of the specific numbers or ranges provided to you at a particular time. In addition to periodic or general changes in rates, changes in an attorney's status at various intervals may result in more frequent increases in a particular attorney's rate. (For example, if an associate becomes a senior counsel, his or her billing rate may exceed that of an associate with the same tenure; or if an associate becomes a partner, his or her rate will increase.) You will receive notice of general rate changes no later than upon delivery of our first statement that includes the new rates. Individual rate changes will be evident from the detailed information you receive with each bill.

*The rates in all our offices of the specific attorneys or staff involved from time to time in your matters, and the basis of all of our other charges, are available to you at any time on request.*

### Charges for Other Items

Your statement will include other charges and costs, summarized below, that you agree by these Terms to pay. (Additional information about the amount and the basis of all of our charges is available on request.) More specifically, you agree to pay:

***Duplicating/Printing and Faxes.*** Our standard charges for duplicating (including copying, printing, scanning, and alternative means of reproduction), currently at $.15 per page. There will be no fee for outgoing facsimile transmissions other than for long distance charges associated with such transmissions. There is no charge for incoming faxes.

***Charges for Travel, Lodging, Meals and Meetings.*** Amounts charged for transportation fares, hotels and other lodging, meals and other travel accommodations, including (as applicable) agency fees.

If a meeting is for your benefit, direct and specific meeting-related costs, including but not limited to meals (and related service).

***Research/Telephone Charges.*** Automated database and computer-assisted legal and other research and search charges, long distance telephone charges, and other similar items (generally billed at or below our estimated costs, including an allocation of associated overhead or of associated aggregate discounts or both). These charges are in addition to professional fees associated with the specific research or communications.

***Costs and Expenses.*** Any and all other costs that we incur for your benefit. These costs may include, for example, filing fees, special deliveries, messengers, expert witnesses, consulting services, external duplicating, and imaging, as well as special appearance fees and other local charges imposed on attorneys solely in connection with the specific engagement. You agree to pay vendor invoices sent to you for direct payment in a timely manner. (We assume no obligation to advance any costs or expenses on your behalf or to pay vendors, experts, consultants or other third parties we engage on your behalf .)

O'MELVENY & MYERS LLP

Beth Sax, Esq., September 28, 2005 - Page 3

## Estimates Not Binding

It is often impractical to determine in advance the amount of effort that will be needed to complete all the necessary work on a matter or the total amount of fees, charges and costs that may be incurred. Obviously, if any estimates or budgets are provided, they may need to be adjusted upward or downward in response to changing circumstances. Unless otherwise expressly agreed in writing, our estimates and budgets are not intended to be binding, are subject to unforeseen circumstances, and by their nature are inexact and do not limit or "cap" our fees and other charges or costs.

## Advances

Before commencing or during the course of work for you, we may require, for our benefit, an advance payment for our professional fees and charges. We will notify you as the advance is applied to pay our monthly statements, and we will account to you regularly on the application of our fees and charges to the advance in our statements or on request at any time. We also may unilaterally require, as a condition to providing further services, the restoration of this advance to the original level on a continuing or "evergreen" basis, or to a higher level, if in our reasonable judgment the circumstances so warrant. In such case, the required advance must be paid not more than 30 days after the earlier of our notice to you of that requirement or the date of the statement indicating a lower balance than required. Of course, any other remaining balances must also be timely paid.

The advanced amount should not be viewed as a quote or a limitation on fees. Our fees could well exceed the amount of the advance.

*Advances are for Our Benefit.* All advance payments will be considered advances for professional fees and charges of our attorneys and staff (as distinguished from costs and expenses billed to you). These advances are for our (and not for your) account and benefit; they are not intended as a security deposit. Unless otherwise required by law, advance payments will not be maintained in a separate account or retained as trust funds, and they will earn no interest, for your benefit.

You agree that we may withdraw or suspend services if our bills or required advances are not timely paid or restored as agreed, subject to any required notice or applicable judicial or professional rules.

*Refund of Any Excess Amount.* After the nearly all work on the Subject Matter is completed (i.e., all litigation is completed) payment of our final statement incorporating charges for such work, if amounts paid (including advances) by you or on your behalf exceed aggregate amounts charged by us, the difference will be repaid to you.

## Experts

You authorize us to retain on your behalf or directly any investigators, consultants or experts necessary in our judgment to represent your interests. We recognize that the Company retains the right to make the final selection of any experts, and we will seek the Company's approval prior to retaining any expert.

## Fees Not Contingent

Unless otherwise specifically agreed in writing, our fees are not contingent upon the outcome or completion of a matter.

O'MELVENY & MYERS LLP

Beth Sax, Esq., September 28, 2005 - Page 4

## No Guarantee of Outcome

We do not and cannot guarantee the outcome of any matter. Either at the commencement or during the course of our representation, we may express our opinions, views or beliefs concerning claims or courses of action and the results that might be anticipated. Any such statement made by any representative of our firm is intended to be an expression of opinions, views and beliefs only, based on information available to us at the time, and should not be construed by you as a guarantee of any type.

## E-mail Communications

During the course of our engagement, we may exchange electronic versions of documents and e-mails with you using commercially available software. Unfortunately, such communications are occasionally victimized by the creation and dissemination of so-called viruses, destructive electronic programs or invasions of expected privacy. Our virus scanning software also may occasionally reject a communication that you send to us, or we in turn may send you something that is rejected by your system. We believe these infrequent occurrences are to be expected as part of the ordinary course of business, although they do affect the security and reliability of these communications.

We cannot guarantee that our communications and documents will always be virus free or immune from invasions of expected privacy. If for these or other reasons you would prefer or require that we not use electronic communications or that we follow special instructions or use encryptions, on e-mail or other communications, you should promptly advise in writing those working on your matters of this preference or requirement.

## Termination of Representation

You can terminate our services at any time. If you do, you agree to give us prompt written notice of the termination. Upon our termination, you will remain obligated to pay for all services rendered and costs or expenses paid or incurred on your behalf before the termination or which are reasonably necessary thereafter. If we are attorneys of record in any proceeding, you agree to promptly execute and return to us the Substitution of Attorney we provide to you.

We can also withdraw from this representation at any time, except to the extent limited by applicable law or rules of professional conduct. Some reasons for our withdrawal might include:

- You fail to honor the terms of our engagement letter and these Terms of Engagement or fail to pay our statements in a timely manner, or you decline to pay any increased rates contemplated by this agreement;

- You make it unreasonably difficult to represent you effectively or you insist on conduct contrary to our advice on a matter; or

- Facts or circumstances arise that, in our view, render our continuing representation unlawful or unethical.

If we elect to withdraw, you will take all steps necessary to free us of any obligation to perform further services, including the execution of any documents necessary to complete our withdrawal. Notwithstanding such withdrawal, you will remain obligated to pay us for all services provided and to

**O'MELVENY & MYERS LLP**

Beth Sax, Esq., September 28, 2005 - Page 5

reimburse us for all costs and expenses paid or incurred on your behalf before the termination or which are reasonably necessary thereafter.

Our representation of you will be considered terminated at the earliest of your termination of our representation, our withdrawal from our representation of you, or the substantial completion of our work for you (as may be evidenced by a final bill, by a substantial period of inactivity not caused by our negligence or otherwise).

## Arbitration and Waiver of Jury Trial

*Arbitration of All Disputes, Claims or Controversies. As a material part of our agreement, you and we agree that any and all disputes, claims or controversies arising out of or relating to this agreement, our relationship, or the services performed, will be determined exclusively by confidential, final and binding arbitration, in accordance with the then existing Commercial Rules of the American Arbitration Association, in the [City of Los Angeles/City of New York]. Disputes, claims and controversies subject to final and binding arbitration include, without limitation, all those that otherwise could be tried in court to a judge or jury in the absence of this agreement to arbitrate. Such disputes, claims and controversies include, without limitation, claims of professional malpractice or other disputes over the quality of our services, claims relating to or arising out of your or our performance under these Terms, and disputes over fees or other charges, costs or expenses (except as covered by the next paragraph or prohibited by law) and any other claims arising out of any alleged act or omission by you or us. By agreeing to submit all such disputes, claims and controversies to binding arbitration, you and we expressly waive any rights to have such matters heard or tried in court before a judge or jury or in another tribunal. Any award will be final, binding and conclusive upon the parties, subject only to judicial review provided by statute, and a judgment rendered on the arbitration award can be entered in any state or federal court having jurisdiction thereof.*

*California State Bar Fee Arbitration. Notwithstanding the above, in a dispute subject to the jurisdiction of the State of California over fees, charges, costs or expenses, you have the right to elect arbitration pursuant to the fee arbitration procedures of the State Bar of California, as set forth in California Business & Professions Code §§ 6200 et seq. Those procedures permit a trial after arbitration, unless the parties agree in writing, after the dispute has arisen, to be bound by the arbitration award. If you do not elect to proceed under the State Bar fee arbitration procedures, any dispute over fees, charges, costs or expenses, will be resolved by binding arbitration in accordance with the then existing Commercial Rules of the American Arbitration Association, as provided above.*

*New York Fee Dispute Arbitration. Notwithstanding the above, in a dispute over fees, charges, costs or expenses ("NY Fee Dispute") subject to the jurisdiction of the State of New York Fee Dispute Resolution Program ("FDRP"), Part 137 of the Rules of the Chief Administrator of the courts of the State of New York, the commercial arbitration and waiver provisions of this section on "Arbitration and Waiver of Jury Trial" shall not apply to the NY Fee Dispute, unless you then duly elect to use such provisions after notice and due consideration of any rights you may then have to elect arbitration pursuant to the FDRP.*

*Waiver of Right to Jury or Court Trial. You understand that by entering into this agreement to arbitrate you and we are waiving any right to a jury or court trial, to the extent permitted by law.*

**O'MELVENY & MYERS LLP**

Beth Sax, Esq., September 28, 2005 - Page 6

*Other Arbitration Service Providers. Nothing herein shall limit the right of the parties to mutually stipulate and agree to conduct the arbitration before and pursuant to the then existing rules of any other agreed-upon arbitration services provider.*

## Disclosure of Conflicts and Other Information

To allow us to conduct a conflicts check, you represent that you have identified for us all persons and entities that are or may become involved in the subject matter, including all persons and entities that in any material respect are related, affiliated or associated with you, and other involved or potentially involved parties (such as parent corporations, subsidiaries and other affiliates, officers, directors and principals). You also agree that you will promptly notify us if you become aware of any other persons or entities that are or may become involved in the matter. You agree to cooperate fully with us and to provide promptly all information known or available to you that is relevant to our representation.

## Registered Limited Liability Partnership/Limitation on Liability

The firm of O'Melveny & Myers LLP is a California registered limited liability partnership, registered also as a foreign limited liability partnership in other jurisdictions in which our domestic offices are located. As a result, with certain possible limited exceptions, none of which may be applicable, our partners, as distinguished from the partnership, by reason of being a partner or acting in the conduct of the business or activities of O'Melveny & Myers LLP, are not liable or accountable to you, directly or indirectly, including by way of indemnification, contribution, assessment, or otherwise, for debts, obligations, or liabilities of or chargeable to the firm or another partner, whether arising in tort, contract, or otherwise, that are incurred, created, or assumed by the firm.

## Document Retention and Destruction

In the course of our representation of you, we are likely to come into possession of copies or originals of documents or other materials belonging to you or otherwise constituting client records, such as correspondence, pleadings, transcripts, exhibits, physical evidence, and other items reasonably necessary to your representation (collectively, "Client Materials"). Once the particular matter to which those Client Materials relate has been concluded, we will make arrangements either to return the Client Materials to you, retain them in our storage facilities or dispose of them. If you do not request their return and in the absence of any other specific arrangements with you or legal requirements to the contrary, you agree that we may dispose of those Client Materials consistent with any reasonable records retention policy that we may have in effect from time to time. Moreover, unless you have sought the return of such Client Materials within two years after the conclusion of the matter to which they relate, we may destroy them and will be relieved of any responsibility to you with respect to them. If we conclude that it would be inappropriate or impermissible to destroy all or any portion of these Client Materials, you agree that we may return or deliver them to you at your last known address, and we will be relieved of any responsibility with respect to them. We may retain copies if we choose. You agree to pay the expense of the return (or any other directed delivery) of Client Materials. You also agree to take possession (whether or not you take possession of other Client Materials) of original documents, such as wills, investments, stock certificates, etc., whereupon we will have no further responsibility for them.

Our own files pertaining to the matter will not be delivered to you. You agree that our firm files include, for example, firm administrative records, time and expense reports, personnel and staffing materials, and credit and accounting records, as well as internal lawyers' work product (such as drafts, notes, internal memoranda, and legal and factual research, including investigative reports and mental impressions,

**O'MELVENY & MYERS LLP**

Beth Sax, Esq., September 28, 2005 - Page 7

prepared by us or for our internal use). You agree that our files remain our property and for various reasons, including the minimization of unnecessary storage expenses, or for no reason, we may destroy or otherwise dispose of our files a reasonable time after the conclusion of the matter.

## Miscellaneous

These Terms of Engagement and the accompanying letter agreement supersede all other prior and contemporaneous written and oral agreements and understandings between us and contain the entire agreement between us, and can be modified only by your and our subsequent written agreement. You acknowledge that no promises have been made to you by us other than those stated in these writings.

Any provision of these Terms of Engagement or the accompanying letter agreement held in whole or in part to be unenforceable for any reason shall be severable if the essential terms of engagement both to you and us remain enforceable. In that case, the remainder of that provision and our agreement will remain in effect.

Our agreement will be governed by the internal law, and not the law pertaining to choice or conflict of laws, of the State of California, except to any extent required by applicable law or rules of professional conduct.

## Application to Other Matters

The agreement reflected in these Terms of Engagement and in the accompanying letter agreement applies to our present representation of you and to any subsequent matters we agree to undertake on your behalf, unless we agree in writing to a different arrangement

You also agree to pay us on the same basis as set forth above with respect to our fees and charges and for expenses incurred in responding to subpoenas, in testifying (and preparing testimony) by deposition or otherwise, and otherwise responding with respect to obligations, claims or demands relating to or arising out of the matters in which we have represented or are representing you, whether or not related to our services and whether or not we are then representing you.

DC1:640558.3
DC1:641250.1

O'MELVENY & MYERS LLP

Beth Sax, Esq., September 28, 2005 - Page 8


bcc:    Tom Jerman
        Rachel Janger
        Jessica Kastin

# **<u>EXHIBIT T</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
              In re                       :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05-44481 (RDD)
                                          :
                          Debtors.        :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

INTERIM ORDER UNDER 28 U.S.C. § 156(c) AUTHORIZING RETENTION AND
APPOINTMENT OF KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS,
NOTICING, AND BALLOTING AGENT FOR CLERK OF BANKRUPTCY COURT

("KCC RETENTION INTERIM ORDER")

Upon the application, dated October 8, 2005 (the "Application"), of Delphi

Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an interim order (the "Interim Order")

under 28 U.S.C. § 156(c) authorizing the retention and employment of Kurtzman Carson

Consultants LLC (collectively with its servants, agents, employees, licensees, and

subcontractors, "KCC") as claims, noticing, and balloting agent (the "Claims Agent") of the

Clerk of the Bankruptcy Court for the Southern District of New York, Manhattan Division (the

"Clerk"), pursuant to the terms of the Agreement For Services attached hereto as Exhibit 1 (the

"Services Agreement"), to among other things (a) distribute required notices to parties-in-

interest, (b) receive, maintain, docket, and otherwise administer the proofs of claims filed in the

these chapter 11 cases, (c) tabulate acceptances and rejections of the Debtors' plan(s) of

reorganization, and (d) provide such other administrative services that the Debtors may require;

and upon the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day

Orders, sworn to October 8, 2005, and upon the affidavit of Eric S. Kurtzman, sworn to October

5, 2005, in support of the Application; and this Court having determined that the relief requested

in the Application is in the best interests of the Debtors, their estates, their creditors, and other

parties-in-interest; and it appearing that proper and adequate notice of the Application has been

given and that no other or further notice is necessary; and after due deliberation thereon; and

good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Application is GRANTED on an interim basis.

2.    Subject to the terms of this Interim Order and pursuant to Rule 2002 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and 28 U.S.C. § 156(c), each

of the Debtors is authorized to retain KCC, effective as of the date of the Application, to perform

the services set forth in the Application, pursuant to the terms of the Services Agreement, and to

receive, maintain, record, and otherwise administer the proofs of claim filed in these chapter 11

cases.

3.    KCC is appointed as agent for the Clerk and as custodian of court records

and, as such, is designated as the authorized repository for all proofs of claim filed in these

chapter 11 cases and is authorized and directed to maintain official claims registers for each of

the Debtors, and to provide the Clerk access to the electronic record maintained by KCC or as

with a certified duplicate thereof on a weekly basis unless otherwise directed by the Clerk.

4.    KCC is authorized and directed to perform all services related to

processing the proofs of claim and maintaining a claims register, which services include, without

limitation:

(a)    notifying all potential creditors of the filing of the Debtors' bankruptcy
petitions and of the setting of the first meeting of creditors, pursuant to
section 341(a) of title 11 of the United States Code, 11 U.S.C.
§§ 101-1330, as amended (the "Bankruptcy Code"), under the proper
provisions of the Bankruptcy Code and the Bankruptcy Rules;

(b)    maintaining an official copy of the Debtors' schedules of assets and liabilities and statement of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c)    notifying all potential creditors of the existence and amount of their respective claims as evidenced by the Debtors' books and records and as set forth in the Schedules;

(d)    furnishing a notice of the last date for the filing of proofs of claims and a form for the filing of a proof of claim, after such notice and form are approved by this Court;

(e)    filing with the Clerk an affidavit or certificate of service with a copy of the notice, a list of persons to whom it was mailed (in alphabetical order), and the date the notice was mailed, within ten days of service;

(f)    docketing all claims received, maintaining the official claims registers (the "Claims Registers") for each Debtor on behalf of the Clerk, and providing the Clerk with access to the electronic record maintained by KCC, unless otherwise directed;

(g)    specifying, in the applicable Claims Register, the following information for each claim docketed:  (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and, if applicable, the agent who filed the claim, and (iv) the classification(s) of the claim (e.g., secured, unsecured, priority, etc.);

(h)    relocating, by messenger, all of the actual proofs of claim filed from the court to KCC, not less than weekly;

(i)    recording all transfers of claims and providing any notices of such transfers required by Bankruptcy Rule 3001;

(j)    making changes in the Claims Registers pursuant to orders of this Court;

(k)    upon completion of the docketing process for all claims received to date by the Clerk's office, turning over to the Clerk all electronic records of the Claims Registers for the Clerk's review;

(l)    maintaining the official mailing list for each Debtor of all entities that have filed a proof of claim, and notices of appearances which list shall be available upon request by a party-in-interest or the Clerk;

(m)    assisting with, among other things, solicitation and calculation of votes and distribution as required in furtherance of confirmation of plan(s) of reorganization;

(n)  30 days prior to the close of these chapter 11 cases, submitting an order dismissing KCC as the Claims Agent and terminating the services of KCC as the Claims Agent upon completion of its duties and responsibilities and upon the closing of these chapter 11 cases; and

(o)  at the close of these chapter 11 cases, boxing and transporting all original documents in proper format, as provided by the Clerk's office, to the Federal and Records Administration.

5.  The Debtors are authorized and directed to obtain a special post office box for the receipt of proofs of claim.

6.  KCC is authorized to take such other action as is necessary to comply with all duties set forth in the Application.

7.  The Debtors are authorized to compensate KCC on a monthly basis, in accordance with the Services Agreement, upon the receipt of reasonably detailed invoices setting forth the services provided by KCC in the prior month and the rates charged for each, and to reimburse KCC for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation; provided that KCC shall not charge in excess of the amounts that would be charged by the Clerk for services that would otherwise be performed by the Clerk.

8.  If any of these chapter 11 cases converts to a case under chapter 7 of the Bankruptcy Code, KCC will continue to be paid for its services until the claims filed in the chapter 11 cases have been processed completely; if claims agent representation is necessary in the converted chapter 7 case(s), KCC will continue to be paid in accordance with 28 U.S.C. §156(c) under the terms set out herein.

9.  In the event that KCC is unable to provide the services set out in this Interim Order, KCC immediately shall notify the Clerk and Debtors' counsel and cause to have all original proofs of claim and computer information turned over to another claims agent with the advice and consent of the Clerk and Debtors' counsel.

10.     KCC shall notify promptly the Clerk, the Court, and the Debtors in the event that KCC or any affiliate of KCC becomes a creditor or party-in-interest in these chapter 11 cases.

11.     The Debtors shall serve a notice of the final hearing to approve the Application (the "Notice"), substantially in the form attached hereto as Exhibit 2, on (a) the Office of the United States Trustee, (b) the Debtors' 50 largest unsecured creditors, (c) counsel for the agent under the Debtors' prepetition credit facility, (d) counsel for the agent under the Debtors' proposed postpetition credit facility, and (e) any committee appointed under section 1102 of the Bankruptcy Code.  Notice served pursuant to the preceding sentence shall be via first class mail, postage prepaid.  No further notice of the final hearing to approve the Application or of the entry of this Interim Order need be served by the Debtors.

12.     Objections, if any, to approval of the Application on a final basis must be in writing and filed timely in accordance with the requirements set forth in the Notice.  There shall be a hearing held on October 27, 2005 at 10:00 a.m. (Prevailing Eastern Time) before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004, to determine whether to approve, on a final basis, the retention of KCC on the terms described in the Application.

13.     Any party-in-interest shall have the right to raise the issue of the application of KCC's prepetition retainer to postpetition fees and expenses incurred at any time.

14.     This Court shall retain jurisdiction, to the extent authorized by law, to hear and determine all matters arising from the implementation of this Order.

15.     This Interim Order shall remain in full force and effect until such time as this Court enters an order ruling on the Application on a final basis.

16.    The requirement under Local Rule 9013-1(b) for the service and filing of a

separate memorandum of law is deemed satisfied by the Application.

Dated:    New York, New York
          October 14, 2005

/s/ ROBERT D. DRAIN

UNITED STATES BANKRUPTCY JUDGE

<u>EXHIBIT 1</u>

Services Agreement

See separately attached exhibit.

<u>EXHIBIT 2</u>

Notice

**Hearing Date: October 27, 2005, 10:00 a.m.**
**Objection Deadline: October 24, 2005, 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

　　- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
　　Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                          :

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

NOTICE OF APPLICATION AND ENTRY OF INTERIM ORDER
UNDER 28 U.S.C. § 156(c) AUTHORIZING RETENTION AND APPOINTMENT OF
KURTZMAN CARSON CONSULTANTS LLC AS CLAIMS, NOTICING, AND
<u>BALLOTING AGENT FOR CLERK OF BANKRUPTCY COURT</u>

PLEASE TAKE NOTICE that on October 8, 2005, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed the Application For Order Under 28 U.S.C. §156(c) Authorizing Retention And Appointment Of Kurtzman Carson Consultants LLC As Claims, Noticing, And Balloting Agent For Clerk Of Bankruptcy Court (the "Application").

PLEASE TAKE FURTHER NOTICE that on October __, 2005, the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") entered an interim order granting the relief requested in the Application, a copy of which is enclosed herewith.

PLEASE TAKE FURTHER NOTICE that a hearing ("the Hearing") to consider approval of the Application on a final basis will be held on October 27, 2005, at 10:00 a.m. (Prevailing Eastern Time) before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to approval of the Application on a final basis must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure and the Local Bankruptcy Rules for the Southern District of New York, (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties in interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in

hard-copy form directly to the chambers of the Honorable Robert D. Drain, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) Kurtzman Carson Consultants LLC, 12910 Culver Boulevard, Suite I, Los Angeles, California 90066 (Att'n:  Eric S. Kurtzman), (iv) special counsel to the Debtors, Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022 (Att'n:  Douglas P. Bartner), (v) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n:  Marissa Wesley), (vi) counsel for the agent under the Debtors' proposed postpetition credit facility, Davis Polk & Wardell, 450 Lexington Avenue, New York, New York 10017 (Att'n:  Marlane Melican), (vii) counsel to any official committee formed in these cases, and (viii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard), in each case so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time)** on **October 24, 2005** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made in writing and filed timely and received by the Objection Deadline will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Application are filed timely and served in accordance with the procedures set forth herein, the Bankruptcy Court may enter a final order granting the Application **without further notice.**

Dated:  New York, New York
　　　　October __, 2005

　　　　　　　　　　　　SKADDEN, ARPS, SLATE, MEAGHER
　　　　　　　　　　　　　& FLOM LLP

　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　John Wm. Butler, Jr.
　　　　　　　　　　　　　　John K. Lyons
　　　　　　　　　　　　　　Ron E. Meisler
　　　　　　　　　　　　333 West Wacker Drive, Suite 2100
　　　　　　　　　　　　Chicago, Illinois  60606
　　　　　　　　　　　　(312) 407-0700

　　　　　　　　　　　　　　- and -

　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　Kayalyn A. Marafioti (KM 9632)
　　　　　　　　　　　　　　Thomas J. Matz (TM 5986)
　　　　　　　　　　　　Four Times Square
　　　　　　　　　　　　New York, New York 10036
　　　　　　　　　　　　(212) 735-3000

　　　　　　　　　　　　Attorneys for Delphi Corporation, et al.,
　　　　　　　　　　　　　Debtors and Debtors-in-Possession

4

<u>EXHIBIT 1</u>

SERVICES AGREEMENT



# AGREEMENT FOR SERVICES

This Agreement is entered into as of the 28th day of September, 2005, between Delphi Corporation (hereinafter referred to collectively as the "Company"), and Kurtzman Carson Consultants LLC (hereinafter referred to as "KCC").

The services rendered by KCC will commence September 29, 2005, and continue until either party shall exercise its rights of suspension or termination as set forth below.

"KCC" shall mean Kurtzman Carson Consultants LLC, its servants, agents, employees, licensees, and subcontractors, and the term "Company" shall include the servants, agents, employees, licensees and subcontractors of the Company.

## Terms and Conditions

I.    CONSULTATION SERVICES

A.    KCC agrees to provide the Company with consulting services regarding Noticing, Claims Management and Reconciliation, Plan Solicitation, Balloting, Disbursements and any other services agreed upon by the parties.

B.    KCC further agrees to provide computer software support and to educate and train the Company in the use of the support software, provide KCC's standard reports as well as consulting and programming support for Company requested reports, program modifications, data base modification, and/or other features in accordance with the KCC Fee Structure annexed hereto.

II.    DOCUMENT MANAGEMENT

KCC agrees to provide copy and notice services consistent with the applicable Local Rules of the United States Bankruptcy Court and as requested by the Company and/or the Court.

III.    PRICES, CHARGES AND PAYMENT

A.    KCC agrees to charge and the Company agrees to pay KCC's standard prices for its services, expenses and supplies at the rates or prices in effect on the

1

day such services and/or supplies are provided to the Company, in accordance with the KCC fee structure annexed hereto (the "KCC Fee Structure"). In addition to all charges for services and materials hereunder, Company shall pay to KCC all taxes, however designated, levied or based that are applicable to this Agreement or are measured directly by payments made under this Agreement and are required to be collected by KCC or paid by KCC to taxing authorities. This provision includes, but is not limited to, sales, use and excise taxes, but does not include personal property taxes or taxes based on net income.

B.    KCC submits that the Company shall enjoy a "Most Favored Nation" status with regard to the KCC Fee Structure; i.e. should KCC enter into a similar engagement with any other party using a fee structure (the "More Favorable Fee Structure") more favorable to the client than the KCC Fee Structure attached hereto, then KCC shall immediately switch the KCC Fee Structure operable hereunder to the More Favorable Fee Structure.

C.    KCC's prices are adjusted annually on January 1 of each year to reflect changes in the business and economic environment. No price increase prior to January 1, 2007 or of more than 5% shall be effective unless agreed upon in advance by Company.

D.    Company agrees to pay KCC for reasonable expenses for transportation, lodging, meals and related items and KCC agrees to comply with Company's standard reimbursement guidelines.

E.    KCC agrees to submit its invoice to the Company within fifteen (15) business days of the end of each calendar month. Company agrees that the amount invoiced is due and payable upon its receipt of the invoice.

F.    KCC will provide to the Company a projected budget for this engagement as soon as practicable after KCC has performed its initial case due diligence (including gaining guidance from the Company and its legal and financial advisors regarding the Company's anticipated notice, service, claims and technology requirements from KCC). The parties recognize that such a budget shall be based upon various assumptions that can only be fully-calculated over the course of the engagement and, accordingly, KCC shall update the budget on a monthly basis and the budget shall not be binding upon either party unless the parties separately agree so.

G.    KCC shall receive a retainer in the amount of $150,000 for services to be performed and expenses to be incurred in this matter. This shall be an "evergreen retainer;" invoices shall be drawn down from the retainer and Company's payments shall then be deposited into the retainer to return the retainer to its original $150,000.

2

IV.    RIGHTS OF OWNERSHIP

A.    The parties understand that the software programs furnished by KCC pursuant to this Agreement and/or developed during the course of this Agreement by KCC are the sole property of KCC. The term "program" shall include, without limitation, data processing programs, specifications, applications, routines, and documentation. Company agrees not to copy or permit others to copy the source code from the support software or any other programs furnished pursuant to this Agreement.

B.    Company further agrees that any ideas, concepts, know-how or techniques relating to data processing or KCC's performance of its services developed during the course of its Agreement by KCC shall be the exclusive property of KCC.

C.    Furthermore, upon Company's request at any time or times while this Agreement is in effect, KCC shall immediately deliver to Company, at Company's sole expense, any or all of the non-proprietary data and records held by KCC pursuant to this Agreement, in the form requested by Company.

V.    NON-SOLICITATION

Company agrees that neither it nor its directly controlled subsidiaries shall directly or indirectly intentionally solicit for employment, employ or otherwise retain staff of KCC that are performing services for the Company during the term of this Agreement, nor for a period of twelve (12) months after termination of this Agreement unless mutually agreed upon by both parties; provided that hiring through general solicitations for employment that are not targeted at KCC's employees shall be permitted.

VI.    CONFIDENTIALITY

KCC, on behalf of itself and its employees, agrees to keep confidential all records and other information with respect to the Company. Company, on behalf of itself and its employees, agrees to keep all proprietary, non-public information with respect to KCC's system, procedures and software confidential; provided, however, that if either party is required to produce any such information by order of any governmental agency or other regulatory body it may, upon not less than five (5) business days' written notice to the other party, release the required information.

3

## VII.  SUSPENSION OF SERVICE AND TERMINATION

A.    This Agreement shall remain in force until terminated by the Company upon thirty (30) days' written notice to KCC, or for cause, in which event no notice shall be required. Cause shall mean an act or omission to act by KCC performed with either gross negligence or wanton misconduct that causes, or an act or omission with the intent to cause, harm to the Company's reorganization under chapter 11 of the United States Bankruptcy Code, which harm shall be subject to the sole discretion of the Company. KCC may terminate this agreement if the Company fails to pay KCC invoices for more than sixty (60) days following the date established for payment by the Bankruptcy Court; provided that KCC shall give at least 10 business days written notice of termination during which the Company may cure the default.

B.    In the event that this contract is terminated, regardless for the reason for such termination; KCC shall cooperate with Company to maintain an orderly transfer of record keeping functions and shall provide all necessary staff, services and assistance required for an orderly transfer. Company agrees to pay for such services in accordance with the KCC Fee Structure.

## VIII.  SYSTEM IMPROVEMENTS

KCC will provide continuous improvements in the quality of service to the Company. KCC, therefore, reserves the right to make changes in operating procedure, operating systems, programming languages, general purpose library programs, application programs, time period of accessibility, types of terminal and other equipment and the KCC data center serving the Company, so long as any such changes do not materially interfere with ongoing services provided to the Company in connection with the Company's reorganization under chapter 11 of the United States Bankruptcy Code and are coordinated with the employees of the Company.

## IX.   LIMITATIONS OF LIABILITY AND INDEMNIFICATION

Company shall indemnify and hold KCC, its officers, employees and agents harmless against any losses, claims, damages, judgments, liabilities and expense (including reasonable counsel fees and expenses) resulting from action taken or permitted by KCC in good faith with due care and without negligence in reliance upon instructions or orders received from Company as to anything arising in connection with its performance under this Agreement. KCC shall be without liability to Company with respect to any performance or non-performance, in accordance with the terms of this Agreement or instructions properly received pursuant hereto, if done in good faith and without negligence or willful or wanton misconduct. In no event shall KCC be liable for any indirect, special or

4

consequential damages such as loss of anticipated profits or other economic loss in connection with or arising out of the services provided for in this Agreement.

## X.    INDEPENDENT CONTRACTORS

Company and KCC are and shall be independent contractors of each other and no agency, partnership, joint venture or employment relationship shall arise, directly or indirectly, as a result of this agreement.

## XI.    NOTICES

All notices and requests in connection with this Agreement shall be given or made upon the respective parties in writing and shall be deemed as given as of the third day following the day it is deposited in the U.S. Mail, postage pre-paid or on the day it is given if sent by facsimile or on the day after the day it is sent if sent by overnight courier to the appropriate address set forth below:

Kurtzman Carson Consultants LLC
12910 Culver Blvd., Ste I
Los Angeles, CA 90066
Attn: Eric S. Kurtzman
Tel: (310) 823-9000
Fax: (310) 823-9133

Delphi Corporation
5725 Delphi Drive
Troy, MI 48098
Attn: General Counsel


With a copy to:

Skadden, Arps, Slate, Meagher, and Flom LLP
333 West Wacker Dr.
Chicago, IL 60606
Attn: John Wm Butler, Jr., Esq.
      James E. Lyons, Esq.

Or to such other address as the party to receive the notice or request so designates by written notice to the other.

## XII.    APPLICABLE LAW

This Agreement shall be construed in accordance with the laws of the State of California.

## XIII.  ENTIRE AGREEMENT/ MODIFICATIONS

Each party acknowledges that it has read this Agreement, understands it, and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings and other agreements, oral and written between the parties relating to the subject matter of this Agreement.  The Company represents that it has the authority to enter into this Agreement, and the Agreement is non-dischargeable under any applicable statute or law.  If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.  This Agreement may be modified only by a written instrument duly executed by an authorized representative of Company and an officer of KCC.

## XIV.  ASSIGNMENT

This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other, with the exception that this Agreement can be assigned by KCC to a wholly owned subsidiary of KCC.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the first date mentioned above.

Kurtzman Carson Consultants LLC

BY:    Eric S. Kurtzman
TITLE:  Chief Executive Officer


Delphi Corporation

BY:  JOHN D. SHEEHAN
TITLE:  AJing CFO, Controller
         + Chief Accovsy Officer .

6



# KCC FEE STRUCTURE

## FEES*

### Consulting Services

*Clerical* – data input
$35.00 - $55.00 per hour
(estimated blended rate of $45 per hour)

*Case Manager* – Document management and case administration
$65.00 - $95.00 per hour
(estimated blended rate of $80 per hour)

*Bankruptcy Consultant* – general consulting; document/data review
$105.00 - $175.00 per hour
(estimated blended rate of $145 per hour)

*Senior Bankruptcy Consultant* – general consulting; document/data review
$200.00 - $275.00 per hour
(estimated blended rate of $225 per hour)

*Technology/Programming Consultant* – Bankruptcy Administration System maintenance and support
$105.00 - $175.00 per hour
(estimated blended rate of $145 per hour)

## EXPENSES[1]

### Bankruptcy Administration System

Case configuration
Applicable consulting fees only

Remote set-up; training
Applicable consulting fees only

---

*Weekend and Overtime – no additional fees.
[1] Expenses shall be consistent with the general practice procedures authorized in the District of _____.

1

| | |
|---|---|
| On-Line Access to KCC's Bankruptcy Administration System | $100.00 per month per user |
| License fee and data storage | $0.05 per creditor per month[2] |
| Creation of case-specific public website | Waived |
| Hosting case-specific public website | $500 per month |

### Claims Management / Administration

| | |
|---|---|
| Creditor Name Import | Waived |
| Proof of claim input | $0.25 per claim |
| Document handling and document storage | Waived (included as part of License Fee and Data Storage above) |

### Notice Printing

| | |
|---|---|
| Set up | Waived |
| Inserting creditor information into customized documents | $0.10 per piece |
| Electronic Noticing | $150.00 per 1,000 |
| Document folding and inserting | $0.05 per document |
| Legal Notice Publishing | Quote prior to publishing |

### Document Management/Imaging

| | |
|---|---|
| Electronic Imaging (includes scanning and bar-coding application) | $0.07 per imaged page |

---

[2] For all creditors after the first 100,000, the per creditor per month charge shall be reduced to $0.02.

## Standard Reporting

Claims registers, claims reports, service
lists, Schedules and Statements of
Financial Affairs, exhibits, ballot
tabulation/disbursement reports, etc.

Waived

## Voting Tabulation and Reports

Per ballot process charge

$0.25 per ballot

## Disbursements

Issuance

Quote prior to printing

## Other Expenses

| | |
|---|---|
| Printing and photocopies | $0.10 per image[3] |
| Travel | Actual cost |
| Postage, delivery, envelopes | Actual cost |
| Labels (includes charges for printing addresses) | $0.05 each[4] |
| Faxes – service | $0.10 per page |
| Faxes – standard incoming/outgoing | Waived |

---

[3] With respect to notice printing related to service of a document on more than 500 parties or 1,000 parties, this charge will be reduced by 10% or 15% respectively.

[4] With respect to notice printing related to service of a document on more than 500 parties or 1,000 parties, this charge will be reduced by 10% or 15% respectively.

3

## **<u>EXHIBIT U</u>**