GREENBERG TRAURIG, LLP
Attorneys for Duraswitch Industries, Inc.
Thomas J. Weber (TW–3887)
Maria J. DiConza (MD–4619)
200 Park Avenue
New York, New York 10166
212-801-9200

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
   In re                                       :      Chapter 11
:
DELPHI CORPORATION, et al.,       :      Case No. 05-44481 (RDD)
:
                             Debtors.     :      (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

OBJECTION OF DURASWITCH INDUSTRIES, INC. TO DEBTORS'
MOTION FOR AN ORDER UNDER 11 U.S.C. § 365(a) AUTHORIZING
REJECTION OF LICENSE AGREEMENT WITH DURASWITCH INDUSTRIES, INC.

      Duraswitch Industries, Inc. ("Duraswitch"), by and through its undersigned counsel, submits this objection (the "Objection") to the motion, dated October 17, 2005 (the "Motion"), of Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, "Delphi" or the "Debtors"), for an order (the "Order") under 11 U.S.C. § 365(a) authorizing the Debtors to reject the License Agreement between Delphi Automotive Systems LLC and Duraswitch, dated April 20, 2000 (the "License Agreement"); and respectfully submits as follows:

      1.      Duraswitch has developed unique switch technology for use in a variety of industries. In or about April 2000, in connection with a larger investment and strategic partnership transaction between Delphi and Duraswitch, Delphi entered into the License Agreement with Duraswitch for the

exclusive right to utilize and manufacture Duraswitch's revolutionary magnetically coupled switch technology for the automotive industry (the "Licensed Technology").[1]

2.    Pursuant to the License Agreement,[2] Delphi received an exclusive license with the right to grant sublicenses in certain fields (defined in the License Agreement as the "Exclusive License Fields") and a non-exclusive license in certain other fields (defined in the License Agreement as the "Non-Exclusive License Fields").

3.    The License Agreement provides that Delphi will pay to Duraswitch minimum royalties and additional royalties should Delphi issue any sublicense or sell any "Licensed Products" as defined in the License Agreement. The License Agreement required Delphi to pay minimum royalty payments of $12 million during 2004 through 2007. To date, Delphi has made minimum royalty payments of $3 million. Subsequent payments are due as follows: $3 million in July 2006 and $6 million in July 2007. Under the License Agreement, Delphi could maintain exclusivity for the automotive industry through June 30, 2012, by making additional minimum royalty payments during that period. After June 30, 2012, either party could convert the agreement to a non-exclusive agreement through 2020.

4.    In connection with the License Agreement, Duraswitch provided to Delphi drawings, designs, data, reports, written specification, instructions, and consultations related to the Licensed Technology. Duraswitch further understands that Delphi may have created drawings, designs, data,

---

[1]    On April 20, 2000, the date of the License Agreement, Duraswitch and Delphi also entered into an Option Purchase Agreement (the "Option Purchase Agreement") and a Warrant Purchase Agreement (the "Warrant Purchase Agreement"). Under the Option Purchase Agreement Delphi received an option to purchase shares of Duraswitch. Delphi exercised its option on June 20, 2000, and acquired 1,651,846 shares of Duraswitch common stock, representing approximately 18 percent of Duraswitch's outstanding shares. In connection therewith, Delphi was given representation on Duraswitch's Board.

[2]    Although the License Agreement contains a confidentiality provision, its does not prevent the disclosure of the License Agreement's existence and certain of its terms. In addition, certain of the terms of the Agreement have previously been consensually publicly disclosed, including a redacted version of the License Agreement as part of Duraswitch's form 8-K in April 2000.

reports, written specification, instructions, and samples related to the Licensed Technology and that Delphi's suppliers may be in the possession of tooling that uses the Licensed Technology.

5. To date, Duraswitch is informed and believes that Delphi has only produced prototype quantities of switches under the License Agreement. In an email dated, October 24, 2005, from Debtors' counsel to Duraswitch's counsel, Delphi has represented that it has not issued any sublicenses or sold any Licensed Products.

6. The License Agreement was valuable to Delphi, as part of a strategic partnership with Duraswitch. The value to Delphi was present even in the absence of sales of Licensed Products, because the Agreement allowed Delphi to keep the Licensed Technology from being used by other manufacturers and competitors of Delphi.

7. If the License Agreement is rejected, Duraswitch should have no further obligations and will be able to license the technology to other parties and otherwise use the technology at its discretion. Duraswitch believes that it has claims against the Debtors under the License Agreement, including for rejection damages in the event the Court enters an order authorizing the rejection. Duraswitch is investigating whether it has other claims against the Debtors arising out of the relationship between Duraswitch and the Debtors.

8. Duraswitch requests that any order authorizing the Debtors to reject the License Agreement provide protections for Duraswitch from the Debtors' unauthorized use of the Licensed Technology in the future. Duraswitch further requests that its rights to the Licensed Technology and to assert any and all claims it may have against the Debtors are preserved.

9. WHEREFORE, Duraswitch requests that any order granting rejection of the License Agreement provide:

    a) The rejection shall terminate the License Agreement and all exclusive and non-exclusive licenses granted thereby, effective as of October 17, 2005, and

3

Duraswitch shall have no further obligations thereunder and shall have the right to take any action with respect to the technology that was the subject of the License Agreement, including to issue licenses to any other party.

b) Delphi's right to issue any sublicenses, sell any Licensed Products or otherwise use the technology that is the subject of the License Agreement is terminated as of October 17, 2005.

c) Nothing provided in the Order shall prejudice Duraswitch's right to assert any and all claims against the Debtors, including, but not limited to, damages for rejection of the License Agreement and/or any other claim arising under the License Agreement, other agreement between the Duraswitch and the Debtors, or otherwise.

d) Within thirty (30) days of entry of the Order, Delphi shall return to Duraswitch all drawings, designs, data, reports, written specification, instructions, consultations, and samples in Delphi's possession or control related to the technology which is the subject of the License Agreement.

e) Within thirty (30) days of entry of the Order, Delphi shall deliver to Duraswitch, or certify that it has destroyed, all tooling that uses or incorporates the technology which is the subject of the License Agreement, whether in the possession of the Debtors or their suppliers.

Dated:    New York, New York
          October 25, 2005

GREENBERG TRAURIG, LLP

By:  /s/ Maria J. DiConza
     Thomas J. Weber (TW–3887)
     Maria J. DiConza (MD–4619)
200 Park Avenue
New York, New York 10166
212-801-9200

-and-

Nancy A. Peterman
Greenberg Traurig, LLP
77 West Wacker Drive
Suite 2500
Chicago, IL 60601

Attorneys for Duraswitch Industries, Inc.

4

5