LATHAM & WATKINS LLP
885 Third Avenue
New York, NY 10022-4802
(212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (*pro hac vice* application pending)
Mark A. Broude (MB-1902)
Email: robert.rosenberg@lw.com
         mitchell.seider@lw.com
         mark.broude@lw.com

Proposed Attorneys for The Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION., et al., | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | |
| | ) | Jointly Administered |
| | ) | |

**STATEMENT OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS IN RESPONSE TO DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 363, 364(c), 364(d), AND 364(e) AND FED. R. BANKR. P. 2002, 4001, AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN SECURED POSTPETITION FINANCING ON SUPERPRIORITY SECURED AND PRIMING BASIS, (II) AUTHORIZING USE OF CASH COLLATERAL, (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED LENDERS, (IV) GRANTING INTERIM RELIEF, AND (V) SCHEDULING A FINAL HEARING UNDER FED. R. BANKR. P. 4001(b) AND (c)**

The Official Committee of Unsecured Creditors (the "Committee") of Delphi Corporation, *et al.* (the "Debtors"), by and through its proposed counsel, Latham & Watkins LLP ("L&W"), files its Statement (this "Statement") in Response to the Debtors' Motion for Order Under 11 U.S.C. §§ 105, 361, 362, 363, 364(c), 364(d), and 364(e) and Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing Debtors to Obtain Secured Postpetition Financing on Superpriority Secured and Priming Basis, (II) Authorizing Use of Cash Collateral, (III) Granting

Adequate Protection to Prepetition Secured Lenders, (IV) Granting Interim Relief, and (V) Scheduling a Final Hearing Under Fed. R. Bankr. P. 4001(b) and (c) (the "DIP Motion"). In support of its Statement, the Committee respectfully represents as follows:[1]

## PRELIMINARY STATEMENT

The Committee supports the Debtors' efforts to obtain postpetition financing. The Committee wants the Debtors to receive financing on terms that assure the Debtors' suppliers and other unsecured creditors the Debtors have ample liquidity to continue their operations while not diminishing, unnecessarily, recoveries to suppliers and other unsecured creditors on their prepetition claims. Revisions of the proposed Final DIP Order, as set forth below, will promote this result.

## JURISDICTION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of the Debtors' chapter 11 cases and this Statement in this Court is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

## BACKGROUND

2. On October 8, 2005 (the "Petition Date"), each of the Debtors filed with this Court a voluntary petition for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors' cases are being jointly administered pursuant to that certain Order Authorizing Joint Administration, entered by this Court on October 8, 2005.

3. The Debtors continue to operate their respective businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these chapter 11 cases.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the DIP Motion and the Interim DIP Order.

4.  This Court entered the Interim DIP Order on October 12, 2005.

5.  On October 17, 2005, pursuant to section 1102(a) and (b) of the Bankruptcy Code, the United States Trustee for the Southern District of New York formed the Committee.[2] That evening, the Committee selected L&W as counsel. L&W initiated discussions with the Debtors regarding the Final DIP Order the next day. On October 19, 2005, the Committee selected Jefferies & Company, Inc. as its proposed investment banker and Mesirow Financial Consulting as its proposed financial advisor.

6.  The Committee first received a draft of the proposed Final DIP Order at approximately 9:30 p.m. on Friday, October 21. The following day, the Committee suggested to the Debtors certain revisions to the proposed Final DIP Order to obviate the need for this Statement. The issues raised in this Statement were not resolved before the October 25, 2005 objection deadline the Debtors set for the Committee.

7.  Pursuant to the terms of the Interim DIP Order, the Borrower is authorized to borrow or obtain letters of credit from the DIP Lenders under the DIP Documents up to an aggregate principal or face amount not to exceed $950,000,000 (subject to any limitations of borrowings under the DIP Documents) and to use cash collateral. The Interim DIP Order requires that this Court schedule the Final Hearing within 45 days of the entry of the Interim DIP Order to consider entry of a final order authorizing the balance of the borrowings and letter of credit issuances under the DIP Documents on a final basis, as set forth in the DIP Motion and the DIP Documents filed with this Court. Therefore, the Interim Order requires that this Court schedule the Final Hearing no later than November 26, 2005.

8.  At a hearing before this Court on October 11, 2005, Debtors' counsel stated that the interim borrowing authority would provide the Debtors with excess availability of about $400 million. See Transcript at pp. 113-114.

## ARGUMENT

---

[2] The members of the Committee are: (i) Electronic Data Systems Corp.; (ii) General Electric Company; (iii) Flextronics International Asia-Pacific, Ltd.; (iv) IUE-CWA; (v) Capital Research and Management Company; (vi) Wilmington Trust Company, as Indenture Trustee; and (vii) Freescale Semiconductor, Inc.

3

LA\1498681.8

9.     It is unclear to the Committee why it is was necessary for the Debtors to force this matter to a final hearing sixteen days after the Interim Hearing and compel the Committee to file this Statement instead of seeking an adjournment to discuss with the Committee the issues raised in this Statement. As set forth below, resolution of the Committee's concerns will protect the economic and procedural interest of unsecured creditors without limiting substantive rights provided any party under the Bankruptcy Code.

### A.     Payments of Postpetition Interest, Fees and Expenses for the Pre-Petition Secured Lenders as Adequate Protection Should be Subject to Recharacterization

10.    Pursuant to section 363(e) of the Bankruptcy Code, a Debtor may not use a creditor's cash collateral unless the Debtor provides the creditor with adequate protection of such creditor's interest in its cash collateral.  See 11 U.S.C. §363(e).  It is also true that a Debtor may not obtain credit or incur debt secured by a senior or equal lien on property of the estate that is subject to a lien unless "there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted." 11 U.S.C. §364(d)(1). To fulfill their obligations under the Bankruptcy Code, the Debtors must adequately protect the Pre-Petition Secured Lenders against diminution in the value of their interest in the Pre-Petition Collateral.[3]  See, e.g., United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd., 484 U.S. 365, 370 (1988); 2 Lawrence P. King, Collier on Bankruptcy ¶361.03 (15th ed. 1996).

11.        The Interim DIP Order grants the Pre-Petition Secured Lenders, as adequate protection, the following rights and protections:

- Liens:  A security interest in and lien on all Collateral, including collateral that was not security for the claims of the Pre-Petition Secured Lenders.

- Section 507(b) Claim:  A superpriority claim with priority over every other administrative expense claim.

- Pre-Petition Interest:  Immediate cash payment of all accrued and unpaid interest on the Pre-Petition Debt and letter of credit fees at the rates provided for in the Existing Documents, and all other accrued and unpaid fees and disbursements

---

[3] It is worth noting that while the Interim DIP Order speaks to adequate protection against diminution in the value of, *inter alia*, the Pre-Petition Collateral, in fact secured lenders must be adequately protected only against diminution in the value of *their interest* in their collateral. In certain circumstances, this difference may be significant.

4

payable to or for the benefit of the Pre-Petition Agent under the Existing Agreements and incurred prior to the Petition Date including, but not limited to, fees owed and amounts to be paid or reimbursed for counsel, financial and other consultants for the Pre-Petition Agent pursuant to the Pre-Petition Credit Agreement.

- <u>Post-Petition Interest</u>: On the first business day of each month, all accrued but unpaid interest on the Pre-Petition Debt, and letter of credit and other fees at the non-default contract rate applicable under the Existing Agreements, including a reservation of rights to assert claims for the payment of additional interest calculated at any other applicable rate of interest, or on any other basis provided for in the Existing Agreements, and for the payment of any other amounts provided for in the Existing Agreements.

- <u>Fees of any Steering Committee</u>: Current cash payment of all reasonable out-of-pocket expenses of the members of any steering committee of Pre-Petition Secured Lenders.

- <u>Fees of the Pre-Petition Agent</u>: Current cash payment of all fees and expenses payable to the Pre-Petition Agent under the Existing Agreements, including, but not limited to, the reasonable fees and disbursements of counsel, financial and other consultants.

12.     The Committee understands the need to protect adequately the Pre-Petition Secured Lenders against diminution in the value of their interest in the Pre-Petition Collateral. However, the Final DIP Order should provide that any postpetition payments for interest, fees, costs or charges made to the Pre-Petition Secured Lenders are subject to recharacterization as payments of principal to reduce the Pre-Petition Debt in the event that it is determined that the Pre-Petition Secured Lenders are not oversecured. Section 506(b) provides that " to the extent that an allowed secured claim is secured by property the value of which…is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." 11 U.S.C. §506(b). The Final DIP Order should fully preserve the requirements of section 506(b) as to the Pre-Petition Secured Lenders and their claims against the estates.

13.     The adequate protection set forth in the Interim DIP Order for the Pre-Petition Secured Lenders described in Paragraph 11 of this Statement is more than sufficient. It should be modified in one respect. Any claim that the Pre-Petition Secured Lenders may have under section 507(b) should not have recourse to the Debtors' claims and causes of action under sections 502(d), 510, 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other

5

avoidance actions under the Bankruptcy Code (the "Avoidance Actions"), or to any proceeds or property recovered, unencumbered or otherwise the subject of successful Avoidance Actions. Without this modification, the Pre-Petition Secured Lenders are receiving significantly more than many cases indicate is necessary.

14.     The amount by which the value of a secured creditor's collateral exceeds the amount of its claim is commonly referred to as an "equity cushion". Case law has established that "the existence of an equity cushion may, in and of itself, constitute adequate protection for an oversecured creditor." In re McKillips, 81 B.R. 454, 458 (Bankr. N.D. Ill. 1987); *citing* In re Mellor, 734 F.2d 1396 (9th Cir. 1984); In re Ritz Theatres, Inc., 68 B.R. 256 (Bankr. M.D. Fla. 1987). Moreover, courts have almost uniformly held that an equity cushion of 20% or more constitutes adequate protection, and several courts have held that a smaller equity cushion is sufficient. See In re McKillips at 458; *citing* In re Helionetics, 70 B.R. 433 (Bankr. C.D. Cal. 1987) (20.4% is adequate); In re Mellor (20% is adequate); In re Carson, 34 B.R. 502 (D. Kan. 1983) (11% is adequate); In re Hawaiian Pacific Industries, 17 B.R. 670 (Bankr. D. Haw. 1982) (15% is adequate); In re Rodgers Development Corp., 2 B.R. 679 (Bankr. E.D. Va. 1980) (17% is adequate); In re Pitts, 2 B.R. 476 (Bankr. C.D. Cal. 1979) (15% is adequate).

15.     In fact, *this* Court has held that an equity cushion alone may constitute adequate protection for an oversecured creditor. In In re Worldcom, this Court found that an equity cushion alone constituted adequate protection, and also noted that "courts have recognized that an equity cushion can provide adequate protection." In re Worldcom, Inc., 2003 WL 22025051 (Bankr. S.D.N.Y. 2003); *citing* Baybank-Middlesex v. Ralar Distributors, Inc., 69 F.3d 1200, 1203 (1st Cir. 1995) (reasoning that a sufficient equity cushion is a recognized form of adequate protection). "It is beyond cavil that an equity cushion can, under certain circumstances, serve as a form of adequate protection." In re Elmira Litho, Inc., 174 B.R. 892 (Bankr. S.D.N.Y. 1994).

16.     The adequate protection granted to the Pre-Petition Secured Lenders in the Final DIP Order should be limited to that which is required by the Bankruptcy Code. As set forth below in sections "B", "F" and "J", several aspects of the proposed adequate protection are inappropriate and unnecessary.

6

LA\1498681.8

B.     **The Provisions Regarding the Binding Effect of the Debtors' Stipulations on Third Parties Should be Revised**

17.    In paragraph 3 of the Interim DIP Order, the Debtors stipulate, *inter alia*, that they do not have, and forever release, any claims, counterclaims, causes of action, defenses or setoff rights against the Pre-Petition Secured Lenders, and that the aggregate value of the Pre-Petition Collateral substantially exceeds the aggregate amount of the Pre-Petition Debt. Paragraph 16 of the Interim DIP Order provides that the stipulations and admissions in paragraphs 3 and 10 of the Interim DIP Order shall be binding upon the Debtors in all circumstances, and shall be binding upon all other parties in interest, including, without limitation, the Committee, unless a party in interest has timely filed an adversary proceeding or contested matter by no later than the date that is 90 days after the initial selection of counsel by the Committee (or such later date as has been agreed to in writing by the Pre-Petition Agent or ordered by the Court). This provision should be modified for several reasons.

18.    First, motions or proceedings which must be brought against the Pre-Petition Secured Lenders in the early stages of the case or forever barred should be limited to challenges to the validity and priority of their prepetition liens and the allowability of their prepetition claims. Motions or proceedings related to the value of the Pre-Petition Secured Lenders' allowed secured claims, if any, should not be subject to a deadline other than as hearings on notice under Section 506 or in connection with confirmation of a plan of reorganization may require.

19.    Second, given the great size and complexity of these chapter 11 cases, and the fact that there appear to have been intercompany transfers and may have been consolidations shortly before the Petition Date, the Committee may well need additional time to investigate the validity, enforceability, priority or extent of the Pre-Petition Debt or the Pre-Petition Agent's or the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral, or otherwise to assert or prosecute any Claims and Defenses against the Pre-Petition Agent or any of the Pre-Petition Secured Lenders. Therefore, the deadline of 90 days after initial selection of counsel by the Committee should be extended upon the filing of a motion by the Committee showing a reasonable basis for extending the deadline.

7

20.     Third, it is inappropriate to grant a full release to the Pre-Petition Secured Lenders. This Court should not permit the Debtors to bind all parties in interest to a blanket release of any and all claims and causes of action of the estates against the Pre-Petition Secured Lenders.

21.     Fourth, the Final DIP Order should explicitly grant the Committee standing to bring any claims or causes of actions that the Debtors have waived in the Final DIP Order to the extent that such claims and causes of action are property of the estate. Requiring the Committee to seek such standing later will only cause unnecessary expense.

## C.     The Committee Should Receive All Financial Information Provided to the Lenders

22.     All reports, including financial information and similar analyses, that are provided to any of the lenders by the Debtors pursuant to the DIP Documents and/or the Final DIP Order must also be simultaneously, and in the same manner, provided to the Committee.

## D.     Clarification That Defined Terms Apply Only to Persons in Such Capacity

23.     Defined terms used in the Final DIP Order should make clear that such terms apply only to persons in the applicable capacity.

## E.     Amendments Affecting Liquidity Should be Subject to the Court's Review and Approval

24.     While the Interim DIP Order appears to require approval of this Court for amendments to the DIP Credit Agreement that shorten the maturity of the extensions of credit thereunder or increase the commitments, the rate of interest or the letter of credit fees payable thereunder, the Agent and the DIP Lenders should not be granted unfettered discretion with respect to all other amendments. Modifications to the Borrowing Base and the financial and negative covenants, among others, could affect the Debtors' liquidity. Among other things, reducing the Debtors' liquidity could, in effect, mandate shuttering certain operations and staging asset sales outside the ordinary course of business. Additionally, liquidity will have an impact in the section 1113 and section 1114 litigation the Debtors have initiated. The Committee should have reasonable advance notice of amendments to the DIP Documents that revise the Borrowing Base or tighten the financial or negative covenants. In the event of an objection to such a modification, the

Debtors should be required to seek this Court's approval before implementation of the amendment(s).

### F. The Adequate Protection Liens and Junior Adequate Protection Liens Should be Subject and Subordinate to Section 551

25. The Adequate Protection Liens and, to the extent granted, the Junior Adequate Protection Liens, should be subject and subordinate to any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code. The value of any such avoided liens or security interests should inure directly to the benefit of the Debtors' unsecured creditors.

### G. Notice of Enforcement Against Collateral Must be Provided to Committee

26. The Committee does not object to authorizing the Agent and the DIP Lenders to exercise, upon the occurrence and during the continuance of an Event of Default and the giving of five business days prior written notice, all rights and remedies against the Collateral provided for in the DIP Documents. However, the Final DIP Order should explicitly require five business days prior written notice to the Committee, among others. Requiring such notice "to the extent provided for in the DIP Credit Agreement" is insufficient.

### H. The Debtors Should not Waive Their Rights Under 11 U.S.C. § 506(c)

27. The Interim DIP Order provides that upon entry of the Final DIP Order, no expenses of administration of the Cases or any future proceeding that may result therefrom shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent of the Agent or the Pre-Petition Agent, as applicable.

28. The Committee does not oppose the 506(c) waiver for the benefit of the Agent. It is advancing fresh credit. The waiver, however, is not appropriate for the Pre-Petition Secured Lenders as a form of adequate protection. Prepetition secured creditors are entitled to adequate protection of the value of their interest in their prepetition collateral. Adequate protection guards against a decrease in the value of that interest. Section 506(c), on the other hand, protects the

9

estate from unduly bearing the burden of expenses arising from actions causing an increase in the value of the secured creditor's interest in its collateral.

### I.     The Carve Out

29.    The Carve Out should include all allowed and unpaid professional fees and disbursements incurred or accrued by the Debtors or any Committees prior to the Debtors' or any Committees' actual receipt of written notice that an Event of Default has occurred. The Carve Out should not be subject to the formulaic cap as provided in the Interim DIP Order. The Final DIP Order should expressly state that payments on account of allowed and unpaid professional fees and disbursements incurred or accrued prior to receipt of written notice of an Event of Default shall not reduce the amounts available under the Carve Out. Further, to the extent the dollar limitation on fees and disbursements is reduced by any amount as a result of payment of such fees and disbursements during the continuance of an Event of Default, and such Event of Default is subsequently cured or waived and no other Event of Default then exists, then effective as of the effectiveness of such cure or waiver, such dollar limitation should be increased by an amount equal to the amount by which it has been so reduced.

### J.     Intercompany Claims Should be Secured by Liens Subordinate Only to the DIP Liens

30.    Claims by one Debtor against another Debtor arising out of postpetition intercompany transactions should be secured by liens on all of the transferee Debtor's assets. The Final DIP Order should provide that such intercompany claims, and all liens securing such claims, shall be junior, subject and subordinate only to the Superpriority Claims and DIP Liens, as applicable, granted to the Agent and the DIP Lenders in respect of the Debtors' DIP Obligations, and to any claims or liens against the Debtors that are expressly senior to, or carved out from, such Superpriority Claims and DIP Liens of the Agent and DIP Lenders.

31.    The Committee is hopeful that it will be able to resolve with the Debtors the concerns set forth in this Statement prior to the Final Hearing, and the Committee reserves all rights in connection with the DIP Motion.

**WHEREFORE,** the Committee respectfully requests that this Court (a) require modifications of the Final DIP Order consistent with this Statement and (b) grant the Committee such other relief as is just and proper.

Dated: October 25, 2005
New York, New York

                          LATHAM & WATKINS LLP

                          By: /s/ Robert J. Rosenberg
                             Robert J. Rosenberg (RR-9585)
                             885 Third Avenue, Suite 1000
                             New York, New York 10022
                             (212) 906-1200

                          Proposed Attorneys for Official
                          Committee of Unsecured Creditors