# IN THE UNITED STATES BANKRUPTCY COURT
# SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
        In re                             :    Chapter 11
                                          :
DELPHI CORPORATION et al.,                :    Case No. 05-44481 (rdd)
                                          :
                           Debtors.       :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

## AFFIDAVIT OF SERVICE

I, Amber M. Cerveny, being duly sworn according to law, deposes and says that I am employed by Kurtzman Carson Consultants, LLC, proposed claims and noticing agent for the Debtors in the above-captioned cases.

On October 25, 2005, I caused to be served, via overnight delivery the documents listed in Section 1 on the parties attached hereto as Exhibit A:

### *Section 1*

I. Motion of the Debtors for an Order Pursuant to 11 U.S.C. §§ 362, 503 and 546 and Fed. R. Bankr. P. 9019 Establishing Procedures for Treatment of Reclamation Claims ("Reclamation") **(Docket No. 21) [Attached hereto as Exhibit B]**

II. Order Pursuant to 11 U.S.C. §§ 362, 503 and 546 and Fed. R. Bankr. P. 9019 Establishing Procedures for Treatment of Reclamation Claims **("Reclamation") (Docket No. 230) [Attached hereto as Exhibit C]**


Dated: October 25, 2005


                                    */s/ Amber M. Cerveny*
                                    Amber M. Cerveny

Sworn to and subscribed before
me on October 25, 2005

     */s/ Sarah E. Frankel*
Notary Public

My Commission Expires:     12/23/08

1

# EXHIBIT A

Reclamation
051025

| Company | Contact | Address 1 | Address 2 | City | State | Zip |
|---|---|---|---|---|---|---|
| Chamberlain Amanda Oppenheimer | Jerry R Greenfield | 2 State Street | Suite 1600 | Rochester | NY | 14614 |
| Chapman & Cutler LLP | David S Barritt | 111 W Monroe St | | Chicago | IL | 60603-4080 |
| CML Innovative Technologies Inc | John P Walker | 147 Central Avenue | | Hackensack | NJ | 07601 |
| Coolidge Wall Womsley & Lombard | Steven M Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402-1289 |
| Denso International America Inc | Ronald P Clogg | 24777 Denso Drive | PO Box 5047 | Southfield | MI | 48086-5047 |
| Dinsmore & Shohl LLP | John Schmidt | 255 East Fifth Street | Suite 1900 | Cincinnati | OH | 45202 |
| Foreman Tool & Mold Corporation | Richard W Foreman | 3850 Swenson Avenue | | Saint Charles | IL | 60174 |
| IDG USA LLC Northeast Division | Vickie Enterline | 3100 Farmtrail Road | | York | PA | 17402 |
| Kickhaefer Manufacturing Company | Stephen P Anderson | 1221 South Park Street | PO Box 348 | Port Washington | WI | 53074-0348 |
| Klestadt & Winters LLP | Tracy L Klestadt | 292 Madison Avenue | 17th Floor | New York | NY | 10017 |
| McDermott Will & Emery | Dean C Gramlich | 227 West Monroe Street | | Chicago | IL | 60606-5096 |
| Miniature Precision Components Inc | Miniature Precision Components Inc | 100 Wisconsin Street | PO Box 1901 | Walworth | WI | 53184 |
| Nelson Mullins Riley & Scarborough | George B Cauthen | 1320 Main Street | 17th Floor | Columbia | SC | 29201 |
| Pax Machine Works Inc | Michael J Pax | 5139 Monroe Road | PO Box 338 | Celina | OH | 45822-0338 |
| PEC of America Corp | Hisashi Ishiguro | 2297 Neils Bohr CT | Ste 100 | San Diego | CA | 92154 |
| Phillips and Temro Industries Inc | David J Hawkins | 9700 West 74th Street | | Eden Prairie | MN | 55344 |
| Production Tube Cutting Inc | R Bruce Benedict | 1100 South Smithville Road | | Dayton | OH | 45403 |
| Rutter Hobbs & Davidoff Inc | Duane Kumagai | 1901 Avenue of the Stars | Suite 1700 | Los Angeles | CA | 90067-6018 |
| Schafer and Weiner PLLC | Ryan D Heilman | 40950 Woodward Avenue | Suite 100 | Bloomfield Hills | MI | 48304 |
| Seal & Design Inc | Adam Mikols | 4015 Casilio Parkway | | Clarence | NY | 14031 |
| Silverman & Morris PLLC | Thomas R Morris | 7115 Orchard Lake Road | Suite 500 | West Bloomfield | MI | 48322 |
| SMSC NA Automotive LLC | Larry Moore | 1120 S Capital of Texas Highway | Building 2 Suite 100 | Austin | TX | 78746 |
| St Clair Plastics Co | William Lianoz | 30855 Teton Place | | Chesterfield Twp | MI | 48047 |
| Stroock & Stroock & Lavan LLP | Robin E Keller | 180 Madison Lane | | New York | NY | 10038-4982 |
| Swidler Berlin LLP | Jonathan P Guy Richard H Wyron | 3000 K Street NW Suite 300 | The Washington Harbour | Washington | DC | 20007 |
| Thompson Hine LLP | Sean A Gordon | 3900 Key Center | 127 Public Square | Cleveland | OH | 44114-1291 |
| TTI Inc | Rick E Smith | 2441 Northeast Parkway | | Fort Worth | TX | 76106-1896 |
| Tzangas Plakas Mannos & Raies | James M McHugh | 220 Market Avenue South | Eighth Floor | Canton | OH | 44702 |
| Warner Norcross & Judd LLP | Gordon J Toering | 900 Fifth Third Center | 111 Lyon Street NW | Grand Rapids | MI | 49503-2487 |
| Warner Stevens LLP | Emily S Chou | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 |

# **EXHIBIT B**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2689

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-_____ (___) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER
UNDER 11 U.S.C. §§ 362, 503, AND 546 AND
FED. R. BANKR. P. 9019 ESTABLISHING PROCEDURES
FOR TREATMENT OF RECLAMATION CLAIMS

("RECLAMATION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"),[1] debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. §§ 362, 503, and 546 and Fed. R. Bankr. P. 9019 (a) providing administrative expense treatment for certain holders of valid reclamation claims and (b) establishing procedures for the resolution and payment of reclamation claims.  In support of this Motion, the Debtors rely on the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005.  In further support of this Motion, the Debtors respectfully represent as follows:

<u>Background</u>

A.   <u>The Chapter 11 Filings</u>

1.   On October 8, 2005 (the "Petition Date"), each of the Debtors filed a voluntary petition in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Debtors have moved this Court for an order for joint administration of these chapter 11 cases.

---

[1]   In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi NY Holdings Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

2

2.      No trustee, examiner, or creditors' committee has been appointed in the

Debtors' cases.

3.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are sections 362,

503, and 546 of the Bankruptcy Code and Fed. R. Bankr. P. 9019.

B.      Current Business Operations Of The Debtors

5.      With more than 180,000 employees worldwide, global 2004 revenues of

approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1

billion,[2] Delphi ranks as the fifth largest public company business reorganization in terms of

revenues, and the thirteenth largest public company business reorganization in terms of assets.

Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations

without supervision from the Bankruptcy Court, and will not be subject to the chapter 11

requirements of the U.S. Bankruptcy Code.

6.      Over the past century, the operations which are now owned by Delphi have

become a leading global technology innovator with significant engineering resources and

technical competencies in a variety of disciplines.  Today, the Company is arguably the single

largest global supplier of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology. The Company's technologies and products are present

in more than 75 million vehicles on the road worldwide.  The Company supplies products to

nearly every major global automotive original equipment manufacturer with 2004 sales to its

---

[2]      The aggregated financial data used in this Motion generally consists of consolidated information from
Delphi and its worldwide subsidiaries and affiliates.

3

former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

7.     As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world.  In the U.S., the Debtors employ approximately 50,600 people.  Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan.  Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions.  Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8.     Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

4

9.    Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base.  The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of  the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.    Events Leading to the Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the Company generated more than $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005. The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[3]

11.    The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S.

---

[3]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

legacy liabilities and operational restrictions driven by collectively bargained agreements,
including restrictions preventing the Debtors from exiting non-strategic, non-profitable
operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive
U.S. vehicle production environment for domestic OEMs resulting in the reduced number of
motor vehicles that GM produces annually in the United States and related pricing pressures, and
(c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be
imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product
portfolio, operational issues and forward looking revenue requirements.  Having concluded that
pre-filing discussions with its Unions and GM were not leading to the implementation of a plan
sufficient to address the Debtors' issues on a timely basis, the Company determined to commence
these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and
preserve value.

13.    Through the reorganization process, the Debtors intend to achieve
competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive
legacy liabilities and burdensome restrictions under current labor agreements and realigning
Delphi's global product portfolio and manufacturing footprint to preserve the Company's core
businesses.  This will require negotiation with key stakeholders over their respective
contributions to the restructuring plan or, absent consensual participation, the utilization of the
chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned
in the Company's transformation plan.  The Debtors believe that a substantial segment of
Delphi's U.S. business operations must be divested, consolidated, or wound-down through the
chapter 11 process.

6

14.    Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.    By this Motion, the Debtors seek entry of an order (i) providing administrative treatment for certain holders of valid reclamation claims and (ii) establishing procedures for the resolution and payment of valid reclamation claims against the Debtors.

16.    Under section 546(c)(2) of the Bankruptcy Code, the court may deny reclamation to a seller of goods with a statutory or common law right of reclamation (a "Seller") if the court grants the Seller's claim (to the extent that the Seller proves the validity and amount of its alleged reclamation claim) an administrative expense priority pursuant to section 503(b) of the Bankruptcy Code.  By this Motion, the Debtors thus request that this Court grant administrative treatment to the valid claim of any Seller (i) who timely demands in writing reclamation of Goods (as defined below) pursuant to section 546(c)(1) of the Bankruptcy Code and section 2-702 of the Uniform Commercial Code as enacted under applicable state law (the "UCC"), (ii) whose Goods the Debtors have accepted for delivery, (iii) who specifically identifies the Goods to be reclaimed and thus proves the validity and amount of its reclamation claim, and (iv) whose Goods the Debtors do not agree to make available for pick-up by the Seller.

7

17.    Debtors request that the amount of the administrative claim and the method of payment be as ordered by this Court or as determined pursuant to the Court-authorized global reclamation procedures proposed herein.

18.    Moreover, the Debtors request that this Court authorize the Debtors to make Goods available for pick-up by any reclaiming Seller (i) who timely demands in writing reclamation of Goods pursuant to section 546(c)(1) of the Bankruptcy Code and section 2-702 of the UCC, (ii) whose Goods the Debtors have accepted for delivery, and (iii) who properly identifies the Goods to be reclaimed, provided that the Debtors agree to a return of the Goods rather than granting to the Seller an administrative claim or other form of consideration as permitted under the Bankruptcy Code.  Additionally, the Debtors request this Court to prohibit the reclamation claimants and others from seeking to reclaim, or interfering with the delivery of, the Goods outside of the parameters of the Reclamation Procedures (as defined below).  Such relief will facilitate the uninterrupted operation of the Debtors' businesses.

19.    The Debtors also seek entry of an order instituting uniform procedures under section 546 of the Bankruptcy Code and Bankruptcy Rule 9019 pursuant to which Sellers must submit reclamation claims, authorizing the Debtors to conduct settlement negotiations to reconcile and pay each such claim, and enjoining reclamation claimants from pursuing payment of reclamation claims by alternative means.

<u>Basis For Relief</u>

20.    As a result of the commencement of these cases, the Debtors expect to receive numerous reclamation claims pursuant to section 546(c) of the Bankruptcy Code demanding that the Debtors return certain goods (collectively, the "Goods") purportedly delivered to the Debtors on or prior to the commencement of these cases (collectively, the "Reclamation Claims").

8

21.     It is of paramount importance for the Debtors to maintain normal business operations and avoid costly and distracting litigation relating to Reclamation Claims.  If the Debtors are unable to establish a global set of reclamation procedures to resolve the Reclamation Claims, they will be faced with the prospect of simultaneously defending multiple reclamation adversary proceedings at a time when the Debtors need to focus on critical aspects of the reorganization process.

22.     The Debtors believe that many of the Reclamation Claims that they receive may be valid, in whole or in part, subject to certain defenses the Debtors may have to such demands.  In addition, while the Debtors do not concede that any of the elements necessary to prove a right of reclamation will be shown by any of their vendors, the Debtors seek to adopt a uniform procedure for determining and settling all valid Reclamation Claims so that litigation regarding Reclamation Claims does not interfere with the Debtors' reorganization efforts.

<u>Proposed Reclamation Procedures</u>

23.     By this Motion, the Debtors also seek an order (the "Reclamation Order") authorizing and approving the Debtors' adoption and implementation of the following procedures (the "Reclamation Procedures") for reconciling Reclamation Claims (as reconciled and agreed to by the Debtors and the holder of a Reclamation Claim and/or approved by this Court, each, an "Allowed Reclamation Claim"):

    (a)     Reclamation Demands:

        (i)     All Sellers seeking to reclaim Goods from the Debtors would be required to submit a written demand (a "Reclamation Demand"):

            (1)     before 10 days after receipt of such Goods by the Debtors; or

9

(2) if such 10-day period expires after the Petition Date, before 20 days after receipt of such Goods by the Debtors.

(ii) Such a Reclamation Demand must identify with specificity the Goods for which reclamation is sought and the basis for the Reclamation Claim.

(iii) Any Seller who fails to timely submit a Reclamation Demand pursuant to section 546 of the Bankruptcy Code would be deemed to have waived its right to payment on any purported Reclamation Claim.

(b) The Statement Of Reclamation

(i) Within 90 days after the Petition Date or receipt of a timely Reclamation Demand, whichever is later, the Debtors would provide the Seller with a copy of the Reclamation Order and a statement of reclamation (the "Statement Of Reclamation" or the "Statement").

(ii) The Statement Of Reclamation would set forth the extent and basis, if any, upon which the Debtors believe the underlying Reclamation Claim is not legally valid (the "Reconciled Reclamation Claim"). In addition, the Statement would identify any defenses that the Debtors choose to reserve, notwithstanding any payment of the Reconciled Reclamation Claim (the "Reserved Defenses").

(iii) Sellers who are in agreement with the Reconciled Reclamation Claim as contained in the Statement Of Reclamation may indicate such assent on the Statement Of Reclamation and return the Statement to the Debtors' representative as set forth in such Statement, with copies to Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John K. Lyons, Esq. and Allison Verderber Herriott, Esq.) within 60 days after the date of receipt of the Statement Of Reclamation (the "Reconciliation Deadline").

(iv) Sellers who are in disagreement with the Reconciled Reclamation Claim as contained in the

10

Statement Of Reclamation (the "Dissenting Sellers") must indicate such dissent on the Statement Of Reclamation and return the Statement by the Reconciliation Deadline as provided in subparagraph (iii) above. A Statement Of Reclamation returned under this subparagraph must be accompanied by:

(1)    a copy of the Reclamation Demand together with any evidence of the date such Reclamation Demand was sent and received;

(2)    the identity of the Debtor that ordered the products and the identity of the Seller from whom the Goods were ordered;

(3)    any evidence demonstrating when the Goods were shipped and received;

(4)    copies of the respective Debtor's and Seller's purchase orders, invoices, and proofs of delivery, together with a description of the Goods shipped; and

(5)    a statement identifying which information on the Debtors' Statement Of Reclamation is incorrect, specifying the correct information, and stating any legal basis for the objection.

(v)    The failure of a Dissenting Seller to materially comply with subparagraph (iv) above would constitute a waiver of such Dissenting Seller's right to object to the proposed treatment and allowed amount of such Reclamation Claim, unless the Court orders otherwise.

(vi)    Any Seller who fails to return the Statement Of Reclamation by the Reconciliation Deadline or who returns the Statement Of Reclamation by the Reconciliation Deadline but fails to indicate assent or dissent would be deemed to have assented to the Reconciled Reclamation Claim.

(c)    Fixing The Amount Of The Reclamation Claim:

(i)    Each Reclamation Claim of (i) all Sellers who return the Statement Of Reclamation by the

11

Reconciliation Deadline and indicate their assent to the Reconciled Reclamation Claim as contained in the Statement Of Reclamation, (ii) all Sellers who fail to return the Statement Of Reclamation by the Reconciliation Deadline, and (iii) all Sellers who return the Statement Of Reclamation by the Reconciliation Deadline but who fail to indicate either assent or dissent would be deemed an Allowed Reclamation Claim in the amount of the Reconciled Reclamation Claim.

(ii)    The Debtors would be authorized to negotiate with all Dissenting Sellers and to adjust each such Seller's Reconciled Reclamation Claim either upward or downward to reach an agreement regarding the Dissenting Seller's Reclamation Claim.  The Debtors would also be authorized to include any Reserved Defenses as part of any such agreement.  In the event the Debtors and a Dissenting Seller are able to settle on the amount and treatment of the Dissenting Seller's Reclamation Claim, the Reclamation Claim would be deemed an Allowed Reclamation Claim in the settled amount.

(iii)    In the event that no consensual resolution of the Dissenting Seller's Reclamation Demand is reached within 60 days of the Reconciliation Deadline (or such later date as the parties agree), the Debtors would file a motion for determination of the Dissenting Seller's Reclamation Claim and set such motion for hearing at the next regularly-scheduled omnibus hearing occurring more than 20 days after the filing of the motion for determination, unless another hearing date is agreed to by the parties or ordered by the Court (the "Determination Hearing").  The Dissenting Seller's Reclamation Claim, if any, will be deemed an Allowed Reclamation Claim as fixed by the Court at the Determination Hearing or as agreed to by the Debtors and the Dissenting Seller prior to a determination by the Court at the Determination Hearing.

(d)    Treatment Of Allowed Reclamation Claims:

12

(i)     The Debtors may at any point in these Reclamation Procedures satisfy in full any Reclamation Claim or Allowed Reclamation Claim by making the Goods at issue available for pick-up by the Seller or Dissenting Seller.

(ii)    All Allowed Reclamation Claims for which the Debtors choose not to make the Goods available for pick-up would be paid in full as an administrative expense pursuant to a confirmed plan of reorganization, or earlier, in whole or in part, in the Debtors' sole discretion.

24.    The Debtors request that they be permitted to reconcile and pay Allowed Reclamation Claims pursuant to the Reclamation Procedures without need for further order of this Court.  In the event that an Allowed Reclamation Claim, in whole or in part, is paid earlier than the effective date of a confirmed plan of reorganization, all such payments would be subject to any Reserved Defenses.  Reserved Defenses would be deemed waived by the Debtors on the earlier of such effective date or the date which is one year following the last payment of an Allowed Reclamation Claim.  The Debtors request that such date could be extended by agreement of the parties or by this Court, upon request of the Debtors.

25.    The Debtors further propose that satisfaction of an Allowed Reclamation Claim pursuant to the Reclamation Procedures would constitute a waiver, release, discharge, and satisfaction of any and all rights and claims that the holder of the Allowed Reclamation Claim has ever had, or hereafter could, will, or may have, against the Debtors arising from, or in connection with, the Goods constituting the basis for the Allowed Reclamation Claim, and of any other reclamation rights for the same Goods that the holder of the Allowed Reclamation Claim has asserted against the Debtors.

26.    The Debtors respectfully request that by the payment and acceptance under the Reclamation Procedures set forth herein, the Debtors and the holder of the Allowed

13

Reclamation Claim be deemed to agree that the Debtors do not in any way waive any claims they may have against any vendor relating to preferential or fraudulent transfers, or other potential avoidance actions, claims, counterclaims, or offsets with respect to that vendor.  Rather, the Debtors expressly reserve their rights to pursue such claims, and any and all other claims they may seek to advance against any vendor in the future, other than those arising specifically in connection with the Allowed Reclamation Claim.  The Debtors specifically reserve the right to object on any grounds to any claim filed by a Seller.

27.    Nothing contained herein shall be deemed an admission as to the solvency or insolvency of the Debtors as the Petition Date.

28.    The Debtors propose that the holder of an Allowed Reclamation Claim, by accepting payment in accordance with the Reclamation Procedures, be deemed to warrant that it has not assigned any of its rights to its Reclamation Claim.

<u>Exclusive Remedy</u>

29.    The Debtors respectfully request that this Court establish the Reclamation Procedures as the sole and exclusive method permitted with respect to the resolution and payment of Reclamation Claims asserted against the Debtors.  The Debtors further request that (i) all Sellers be prohibited from seeking any other treatment for their Reclamation Claims than is permitted by the Reclamation Procedures and (ii) all parties be prohibited from commencing adversary proceedings against the Debtors in respect of Reclamation Claims.

<u>Applicable Authority</u>

30.    Reclamation rights generally are governed by section 2-702(2) of the Uniform Commercial Code.  Section 2-702(2) allows a seller of goods, upon discovering that the buyer has received the goods on credit while insolvent, to reclaim the goods upon a demand made within ten days after the buyer's receipt of the goods.  If a written misrepresentation of the

14

buyer's solvency has been made to the seller within three months before the delivery of the

goods, the ten-day limit does not apply.

31.   Pursuant to Bankruptcy Code section 546(c), a seller of goods to a debtor,

in the ordinary course of the seller's business, retains its statutory or common law right to reclaim

such goods so long as it complies with the additional requirements of section 546(c).  11 U.S.C.

§ 546(c).

32.   When read together, reclamation claims under section 546(c) of the

Bankruptcy Code and section 2-702 of the UCC are subject to an array of defenses, including the

following:

(a)   a seller has no right to reclaim goods delivered to a debtor which
was solvent when the goods were delivered;

(b)   a seller has a right to reclaim only those goods delivered without
the Seller's knowledge of the buyer's insolvency;

(c)   a seller has a right to reclaim only those goods for which it made a
reclamation demand before 10 days after the buyer's receipt of the
goods or, if such 10-day period expires after the commencement of
the bankruptcy case, before 20 days after such receipt;

(d)   the reclamation demand must be in writing;

(e)   a seller has a right to reclaim only those goods that are specifically
identifiable (i.e., goods not having been commingled, altered, or
manufactured into a finished product);

(f)   a seller may reclaim goods only to the extent that the goods were
in the possession of the debtor at the time the reclamation demand
was dispatched; and

(g)   a seller has no right to reclaim goods that have been transferred to
a "buyer in the ordinary course" or a "good faith purchaser."

33.   Any vendor asserting a claim for reclamation is required to demonstrate that

it has satisfied all requirements entitling it to a right of reclamation under applicable state law

and section 546(c)(1) of the Bankruptcy Code.  See Galey & Lord Inc. v. Arley Corp. (In re

15

Arlco), 239 B.R. 261, 266 (Bankr. S.D.N.Y. 1999) ("[t]he reclaiming seller has the burden of

establishing each element of 546(c) by a preponderance of the evidence."); see also In re Victory

Mkts. Inc., 212 B.R. 738, 741 (Bankr. N.D.N.Y. 1997) ("[i]t is [the seller's] burden to establish

[the debtor's insolvency], along with every other element of Code § 546(c), by a preponderance

of the evidence.").

34.    Section 546(c) also provides a debtor with the right to continue to use goods

subject to valid reclamation claims in the ordinary course of business, if the reclaiming seller is

granted an administrative claim under section 503(b) of the Bankruptcy Code for the value of

such goods or a lien to secure such claim. See 11 U.S.C. §§ 503(b), 546(c)(2)(A); In re Roberts

Hardware Co., 103 B.R. 396 , 399(Bankr. N.D.N.Y. 1988) (granting administrative expense

claim in lieu of reclamation). Conversely, if the debtor determines that the goods at issue are not

necessary to the estate, section 546(c) of the Bankruptcy Code authorizes the debtor to seek to

return the goods to the vendor.  11 U.S.C. § 546(c).

35.    In addition, pursuant to Bankruptcy Rule 9019(b), after notice and a

hearing, the court may authorize the Debtors as debtors-in-possession to compromise or settle

controversies within a class of controversies without further hearing or notice.

36.    The Debtors believe that the relief requested herein will ensure the

continuous supply of Goods that are vital to the Debtors' ongoing operations and integral to their

successful reorganization.  See Eagle Indus. Truck Mfg. Inc. v. Continental Airlines (In re

Continental Airlines, Inc.), 125 B.R. 415, 417-18 (Bankr. D. Del. 1991) (denying reclamation of

equipment and granting administrative expense claim to creditor where equipment was necessary

to debtor's reorganization).  Reclamation procedures similar to those requested herein are

routinely granted by bankruptcy courts in large chapter 11 cases in order to streamline the

16

process of resolving reclamation claims and reduce the expense of the administration of the

estate.  See, e.g., In re Winn-Dixie Stores, Inc., Case No. 05-11063 (RDD) (Bankr. S.D.N.Y.

Feb. 23, 2005);  In re Ultimate Elecs., Inc., Case No. 05-10104 (PJW) (Bankr. D. Del. 2005);  In

re Fleming Cos, Case No. 03-10945 (Bankr. D. Del. April 22, 2003); In re Eagle Food Ctrs, Inc.,

Case No. 03-15299 (Bankr. N.D. Ill. April 7, 2003); In re Genuity Inc., Case No. 02-43558

(Bankr. S.D.N.Y. Dec. 2, 2002); In re Kmart Corp., Case No. 02-02474 (SPS) (Bankr. N.D. Ill.

Jan. 25, 2002 and Feb. 22, 2002).

   37. Absent the relief requested in this Motion, the Debtors would be required

to expend substantial time and resources either to (i) convince the Sellers of the Debtors'

authority to make certain payments or (ii) establish their right to retain the Goods.  The attendant

disruption to the continuous flow of Goods to the Debtors would likely result in a shortage of

Goods necessary to maintain certain of the Debtors' manufacturing operations.  Given Debtors'

use of "just in time" inventory systems, without these Goods such manufacturing facilities may

be forced to shut down, which would in turn cause the potential shut down of the facilities of the

Debtors' large original equipment manufacturer customers, thereby risking large damage claims

and jeopardizing the Debtors' opportunity to achieve a successful reorganization.  See In re

Griffin Retreading Co., 795 F.2d 676, 679-80 (8th Cir. 1986) (affirming grant of administrative

claims because such claims provide flexibility to the bankrupt estate by permitting use of

property necessary for a successful reorganization and protecting the Seller without placing the

plan in jeopardy).

   38. The Debtors submit that implementing the Reclamation Procedures is a

sound exercise of their business judgment and is necessary and appropriate to carry out the

provisions of section 546(c).  The Debtors believe that their ability to reconcile the Reclamation

17

Claims in this uniform manner will assist in the consensual resolution of such demands and, ultimately, the maximization of value for the Debtors' estates and creditors.

39.    Furthermore, the Debtors would avoid unnecessary litigation costs which would arise in connection with non-consensual resolutions of the Reclamation Claims.  If the Reclamation Procedures are not approved and implemented, it can be expected that creditors will file adversary proceedings against the Debtors, thereby increasing the Debtors' costs to defend piecemeal litigation.  The Reclamation Procedures will effectively and efficiently streamline the process of resolving these claims for the Debtors and the holders of the Reclamation Claims.  It is therefore in the best interests of the Debtors, and their respective estates, and creditors, to implement the Reclamation Procedures.

## Notice

40.    Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery, or hand delivery to (i) the Office of the United States Trustee, (ii) the Debtors' 50 largest unsecured creditors, (iii) counsel for the agent under the Debtors' prepetition credit facility, and (iv) counsel for the agent under the Debtors' proposed postpetition credit facility.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

41.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE the Debtors respectfully request that this Court enter an order (i) providing administrative treatment for certain holders of valid reclamation claims, (ii) establishing procedures for the resolution and payment of reclamation claims, and (iii) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
         October 8, 2005

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:  s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (pro hac vice motion pending)
    John K. Lyons
    Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By:  s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

19

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
-------------------------------------------------------- x
                                                         :
        In re                                            :
                                                         :   Chapter 11
DELPHI CORPORATION, et al.,                              :
                                                         :   Case No.  05 – _____ (___)
                   Debtors.                              :
                                                         :   (Jointly Administered)
                                                         :
-------------------------------------------------------- x
```

ORDER UNDER 11 U.S.C. §§ 362, 503, AND 546 AND FED. R. BANKER. P. 9019
<u>ESTABLISHING PROCEDURES FOR THE TREATMENT OF RECLAMATION CLAIMS</u>

("RECLAMATION ORDER")

Upon the motion, dated October 8, 2005 (the "Motion"),[1] of Delphi Corporation

("Delphi") and certain of its domestic subsidiaries and affiliates (the "Affiliate Debtors"), debtors

and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order

under sections 362, 503, and 546 of the Bankruptcy Code authorizing the Debtors to establish

procedures for the resolution and payment of reclamation claims; and upon the Affidavit Of

Robert J. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October

8, 2005; and upon the record of the hearing held on the Motion; and the Court having determined

that the relief requested in the Motion is in the best interests of the Debtors, their estates, their

creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the

Motion has been given and that no other or further notice is necessary; and after due deliberation

thereon; and good and sufficient cause appearing therefor it is hereby

---

[1]    Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the
Motion.

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Motion is GRANTED.

2.    The Debtors be and hereby are authorized, pursuant to sections 362, 503, and 546 of the Bankruptcy Code, to resolve Reclamation Claims in accordance with the Reclamation Procedures set forth below:

    (a)    Reclamation Demands:

        (i)    All Sellers seeking to reclaim Goods from the Debtors shall be required to submit a written demand (a "Reclamation Demand"):

            (1)    before 10 days after receipt of such Goods by the Debtors; or

            (2)    if such 10-day period expires after the Petition Date, before 20 days after receipt of such Goods by the Debtors.

        (ii)    Such a Reclamation Demand must identify with specificity the goods for which reclamation is sought and the basis for the Reclamation Claim.

        (iii)    Any Seller who fails to timely submit a Reclamation Demand pursuant to section 546 of the Bankruptcy Code shall be deemed to have waived its right to payment on any purported Reclamation Claim.

    (b)    The Statement Of Reclamation:

        (i)    Within 90 days after the Petition Date or receipt of a timely Reclamation Demand, whichever is later, the Debtors shall provide the Seller with a copy of the Reclamation Order and a statement of reclamation (the "Statement Of Reclamation" or the "Statement").

        (ii)    The Statement Of Reclamation shall set forth the extent and basis, if any, upon which the Debtors believe the underlying Reclamation Claim is not legally valid (the "Reconciled Reclamation Claim"). In addition, the Statement shall identify any defenses that the Debtors choose to reserve, not withstanding any payment of the Reconciled Reclamation Claim (the "Reserved Defenses").

2

(iii)    Sellers who are in agreement with the Reconciled
Reclamation Claim as contained in the Statement Of
Reclamation may indicate such assent on the
Statement Of Reclamation and return the Statement to
the Debtors' representative as set forth in such
Statement, with copies to Skadden, Arps, Slate,
Meager & Flom LLP, 333 West Wacker Drive, Suite
2100, Chicago, Illinois 60606 (Att'n: John K. Lyons,
Esq. and Allison Verderber Herriott, Esq.) within 60
days after the date of receipt of the Statement Of
Reclamation (the "Reconciliation Deadline").

(iv)    Sellers who are in disagreement with the Reconciled
Reclamation Claim as contained in the Statement Of
Reclamation (the "Dissenting Sellers") must indicate
such dissent on the Statement Of Reclamation and
return the Statement by the Reconciliation Deadline
as provided in subparagraph (c) above.  A Statement
Of Reclamation returned under this subparagraph
must be accompanied by:

(1)    a copy of the Reclamation Demand together
with any evidence of the date such
Reclamation Demand was sent and received;

(2)    the identity of the Debtor that ordered the
products and the identity of the Seller from
whom the Goods were ordered;

(3)    any evidence demonstrating when the Goods
were shipped and received;

(4)    copies of the respective Debtor's and Seller's
purchase orders, invoices, and proofs of
delivery together with a description of the
Goods shipped; and

(5)    a statement identifying which information on
the Debtors' Statement Of Reclamation is
incorrect, specifying the correct information
and stating any legal basis for the objection.

(v)    The failure of a Dissenting Seller to materially
comply with subparagraph (d) above shall constitute a
waiver of such Dissenting Seller's right to object to
the proposed treatment and allowed amount of such
Reclamation Claim unless the Court orders otherwise.

(vi)     Any Seller who fails to return the Statement Of Reclamation by the Reconciliation Deadline or who returns the Statement Of Reclamation by the Reconciliation Deadline but fails to indicate assent or dissent shall be deemed to have assented to the Reconciled Reclamation Claim.

(c)     Fixing The Amount Of The Reclamation Claim:

(i)     The Reclamation Claims of (i) all Sellers who return the Statement Of Reclamation by the Reconciliation Deadline and indicate their assent to the Reconciled Reclamation Claim as contained in the Statement Of Reclamation, (ii) all Sellers who fail to return the Statement Of Reclamation by the Reconciliation Deadline, and (iii) all Sellers who return the Statement Of Reclamation by the Reconciliation Deadline but who fail to indicate either assent or dissent shall be deemed an Allowed Reclamation Claim in the amount of the Reconciled Reclamation Claim.

(ii)     The Debtors are authorized to negotiate with all Dissenting Sellers and to adjust the Reconciled Reclamation Claim either upward or downward to reach an agreement regarding the Dissenting Seller's Reclamation Claim. The Debtors are also authorized to include any Reserved Defenses as part of any such agreement. In the event the Debtors and a Dissenting Seller are able to settle on the amount and/or treatment of the Dissenting Seller's Reclamation Claim, the Reclamation Claim shall be deemed an Allowed Reclamation Claim in the settled amount.

(iii)     In the event that no consensual resolution of the Dissenting Seller's Reclamation Demand is reached within 60 days of the Reconciliation Deadline (or such later date as the parties agree), the Debtors shall file a motion for determination of the Dissenting Seller's Reclamation Claim and set such motion for hearing at the next regularly scheduled omnibus hearing occurring more than 20 days after the filing of the motion for determination, unless another hearing date is agreed to by the parties or ordered by the Court (the "Determination Hearing"). The Dissenting Seller's Reclamation Claim, if any, shall be deemed an Allowed Reclamation Claim as fixed by the Court

4

in the Determination Hearing or as agreed to by the Debtors and the Dissenting Seller prior to a determination by the Court in the Determination Hearing.

(d)    Treatment Of Allowed Reclamation Claims:

(i)    The Debtors may at any point in these Reclamation Procedures satisfy in full any Reclamation Claim or Allowed Reclamation Claim by making the Goods at issue available for pick-up by the Seller or Dissenting Seller.

(ii)    All Allowed Reclamation Claims for which the Debtors choose not to make the Goods available for pick-up shall be paid in full as an administrative expense pursuant to a confirmed plan of reorganization, or earlier, in whole or in part, in the Debtors' sole discretion.

3.    All adversary proceedings, except those proceedings brought by the Debtors in accordance with these procedures (the "Reclamation Procedures"), in these cases relating to Reclamation Claims, whether currently pending or initiated in the future, shall be, and hereby are, stayed, and the claims asserted therein shall be subject to the Reclamation Procedures set forth herein.

4.    In accordance with the foregoing and pursuant to section 503(b) of the Bankruptcy Code, vendors shall have administrative expense priority status for those undisputed obligations arising from shipments of goods received and accepted by the Debtors on or after the Petition Date.

5.    To the extent necessary or appropriate, the Debtors shall seek Court approval of any settlements and compromises with trade vendors with respect to payments of reclamation claims.

6.    Nothing in this Order shall constitute a waiver of any of the Debtors' claims against any vendor, including claims relating to preferential or fraudulent transfers and other

potential claims, counterclaims, or offsets.  The Debtors expressly reserve their rights to pursue

such claims.

7.    The Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Order.

8.    The requirement under Local Rule 9013-1(b) for the service and filing of a

separate memorandum of law is deemed satisfied by the Motion.

Dated:        New York, New York
              October __, 2005


_____
UNITED STATES BANKRUPTCY JUDGE

# **<u>EXHIBIT C</u>**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------x
                                            :
        In re                               :
                                            :    Chapter 11
DELPHI CORPORATION, et al.,                 :
                                            :    Case No.  05–44481 (RDD)
                    Debtors.                :
                                            :    (Jointly Administered)
                                            :
------------------------------------------------------------x

ORDER UNDER 11 U.S.C. §§ 362, 503, AND 546 AND FED. R. BANKER. P. 9019
ESTABLISHING PROCEDURES FOR THE TREATMENT OF RECLAMATION CLAIMS

("RECLAMATION ORDER")

Upon the motion, dated October 8, 2005 (the "Motion"),[1] of Delphi Corporation

("Delphi") and certain of its domestic subsidiaries and affiliates (the "Affiliate Debtors"), debtors

and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order

under sections 362, 503, and 546 of the Bankruptcy Code authorizing the Debtors to establish

procedures for the resolution and payment of reclamation claims; and upon the Affidavit Of

Robert J. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October

8, 2005; and upon the record of the hearing held on the Motion; and the Court having determined

that the relief requested in the Motion is in the best interests of the Debtors, their estates, their

creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the

Motion has been given and that no other or further notice is necessary; and after due deliberation

thereon; and good and sufficient cause appearing therefor, it is hereby

---

[1]      Unless otherwise defined herein, all capitalized terms shall have the meaning ascribed to them in the
         Motion.

ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED as provided herein.

2.      The Debtors be and hereby are authorized, pursuant to sections 362, 503,

and 546 of the Bankruptcy Code, to resolve Reclamation Claims in accordance with the

Reclamation Procedures set forth below:

    (a)    Reclamation Demands:

        (i)    All Sellers seeking to reclaim Goods from the Debtors shall be required to submit a written demand (a "Reclamation Demand"):

            (1)    before 10 days after receipt of such Goods by the Debtors; or

            (2)    if such 10-day period expires after the Petition Date, before 20 days after receipt of such Goods by the Debtors.

        (ii)    Such a Reclamation Demand must identify with specificity the goods for which reclamation is sought and the basis for the Reclamation Claim.

        (iii)    Any Seller who fails to timely submit a Reclamation Demand pursuant to section 546 of the Bankruptcy Code shall be deemed to have waived its right to payment on any purported Reclamation Claim.

    (b)    The Statement Of Reclamation:

        (i)    Within 90 days after the Petition Date or receipt of a timely Reclamation Demand, whichever is later, the Debtors shall provide the Seller with a copy of the Reclamation Order and a statement of reclamation (the "Statement Of Reclamation" or the "Statement").

        (ii)    The Statement Of Reclamation shall set forth the extent and basis, if any, upon which the Debtors believe the underlying Reclamation Claim is not legally valid (the "Reconciled Reclamation Claim"). In addition, the Statement shall identify any defenses that the Debtors choose to reserve, not withstanding any payment of the Reconciled Reclamation Claim (the "Reserved Defenses").

2

(iii)    Sellers who are in agreement with the Reconciled Reclamation Claim as contained in the Statement Of Reclamation may indicate such assent on the Statement Of Reclamation and return the Statement to the Debtors' representative as set forth in such Statement, with copies to Skadden, Arps, Slate, Meager & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John K. Lyons, Esq. and Allison Verderber Herriott, Esq.) within 60 days after the date of receipt of the Statement Of Reclamation (the "Reconciliation Deadline").

(iv)    Sellers who are in disagreement with the Reconciled Reclamation Claim as contained in the Statement Of Reclamation (the "Dissenting Sellers") must indicate such dissent on the Statement Of Reclamation and return the Statement by the Reconciliation Deadline as provided in subparagraph (c) above.  A Statement Of Reclamation returned under this subparagraph must be accompanied by:

(1)    a copy of the Reclamation Demand together with any evidence of the date such Reclamation Demand was sent and received;

(2)    the identity of the Debtor that ordered the products and the identity of the Seller from whom the Goods were ordered;

(3)    any evidence demonstrating when the Goods were shipped and received;

(4)    copies of the respective Debtor's and Seller's purchase orders, invoices, and proofs of delivery together with a description of the Goods shipped; and

(5)    a statement identifying which information on the Debtors' Statement Of Reclamation is incorrect, specifying the correct information and stating any legal basis for the objection.

(v)    The failure of a Dissenting Seller to materially comply with subparagraph (d) above shall constitute a waiver of such Dissenting Seller's right to object to the proposed treatment and allowed amount of such Reclamation Claim unless the Court orders otherwise.

3

(vi)     Any Seller who fails to return the Statement Of
Reclamation by the Reconciliation Deadline or who
returns the Statement Of Reclamation by the
Reconciliation Deadline but fails to indicate assent or
dissent shall be deemed to have assented to the
Reconciled Reclamation Claim.

(c)     Fixing The Amount Of The Reclamation Claim:

(i)     The Reclamation Claims of (i) all Sellers who return
the Statement Of Reclamation by the Reconciliation
Deadline and indicate their assent to the Reconciled
Reclamation Claim as contained in the Statement Of
Reclamation, (ii) all Sellers who fail to return the
Statement Of Reclamation by the Reconciliation
Deadline, and (iii) all Sellers who return the
Statement Of Reclamation by the Reconciliation
Deadline but who fail to indicate either assent or
dissent shall be deemed an Allowed Reclamation
Claim in the amount of the Reconciled Reclamation
Claim.

(ii)     The Debtors are authorized to negotiate with all
Dissenting Sellers and to adjust the Reconciled
Reclamation Claim either upward or downward to
reach an agreement regarding the Dissenting Seller's
Reclamation Claim.  The Debtors are also authorized
to include any Reserved Defenses as part of any such
agreement.  In the event the Debtors and a Dissenting
Seller are able to settle on the amount and/or
treatment of the Dissenting Seller's Reclamation
Claim, the Reclamation Claim shall be deemed an
Allowed Reclamation Claim in the settled amount.

(iii)     In the event that no consensual resolution of the
Dissenting Seller's Reclamation Demand is reached
within 60 days of the Reconciliation Deadline (or
such later date as the parties agree), the Debtors shall
file a motion for determination of the Dissenting
Seller's Reclamation Claim and set such motion for
hearing at the next regularly-scheduled omnibus
hearing occurring more than 20 days after the filing of
the motion for determination, unless another hearing
date is agreed to by the parties or ordered by the
Court (the "Determination Hearing").  The Dissenting
Seller's Reclamation Claim, if any, shall be deemed
an Allowed Reclamation Claim as fixed by the Court

4

in the Determination Hearing or as agreed to by the Debtors and the Dissenting Seller prior to a determination by the Court in the Determination Hearing.

(d)    Treatment Of Allowed Reclamation Claims:

(i)    The Debtors may at any point in these Reclamation Procedures satisfy in full any Reclamation Claim or Allowed Reclamation Claim by making the Goods at issue available for pick-up by the Seller or Dissenting Seller.

(ii)    All Allowed Reclamation Claims for which the Debtors choose not to make the Goods available for pick-up shall be paid in full as an administrative expense at any time during these chapter 11 cases in the sole discretion of the Debtors or pursuant to a confirmed plan of reorganization, in either case if and to the extent that such allowed reclamation claims constitute administrative expenses under applicable law.

3.    All adversary proceedings, except those proceedings brought by the Debtors in accordance with these procedures (the "Reclamation Procedures"), in these cases relating to Reclamation Claims, whether currently pending or initiated in the future, shall be, and hereby are, stayed, and the claims asserted therein shall be subject to the Reclamation Procedures set forth herein.

4.    In accordance with the foregoing and pursuant to section 503(b) of the Bankruptcy Code, vendors shall have administrative expense priority status for those undisputed obligations arising from shipments of goods received and accepted by the Debtors on or after the Petition Date.

5.    To the extent necessary or appropriate, the Debtors shall seek Court approval of any settlements and compromises with trade vendors with respect to payments of reclamation claims.

6.      Nothing in this Order shall constitute a waiver of any of the Debtors' claims against any vendor, including claims relating to preferential or fraudulent transfers and other potential claims, counterclaims, or offsets.  The Debtors expressly reserve their rights to pursue such claims.

7.      Nothing herein shall constitute a waiver by the agent under the Debtors' prepetition credit facility of its right to contest the allowance of any reclamation claim.

8.      The entry of this Order is final; provided, however, that (a) within ten business days after the official committee of unsecured creditors (the "Creditors' Committee") has been formed and retained counsel, the Creditors' Committee or any holder of an alleged reclamation claim may object to the procedures set forth in this Order, (b) if any such objection is timely made, it shall be heard at the next regularly-scheduled omnibus hearing in these cases, and (c) pending such hearing, this Order shall remain in full force and effect.

9.      Nothing herein shall preclude the holder of an Allowed Reclamation Claim from seeking payment of such claim in a manner other than that set forth in this Order.

10.    The Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

11.    The requirement under Local Rule 9013-1(b) for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:      New York, New York
            October 13, 2005


                        /s/ ROBERT D. DRAIN
                        UNITED STATES BANKRUPTCY JUDGE


6