Martin J. Bienenstock, Esq. (MB 3001)
Michael P. Kessler, Esq. (MK 7134)
Jeffrey L. Tanenbaum, Esq. (JT 9797)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

- and -

Robert B. Weiss, Esq.
Frank L. Gorman, Esq.
HONIGMAN MILLER SCHWARTZ
& COHN, LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3583
Telephone: (313) 465-7000
Facsimile: (313) 465-8000

Attorneys for General Motors Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
| | |
|---|---|
| **In re** : | |
| : | **Chapter 11 Case No.** |
| : | |
| **DELPHI CORPORATION, et al.,** : | **05-44481 (RDD)** |
| : | |
| **Debtors.** : | **(Jointly Administered)** |
| : | |
-------------------------------------------------------------x

**GENERAL MOTORS CORPORATION'S CONDITIONAL OBJECTION TO**
**DEBTORS' REQUEST FOR FINAL ORDER GRANTING ADEQUATE**
**PROTECTION TO PREPETITION LENDERS BY PRIMING SETOFF RIGHTS**

TO THE HONORABLE ROBERT D. DRAIN:
UNITED STATES BANKRUPTCY JUDGE:

General Motors Corporation ("General Motors") hereby submits its

conditional objection to the motion of Delphi Corporation ("Delphi") and certain of its

subsidiaries and affiliates (together with Delphi, the "<u>Debtors</u>") for a final order under 11

U.S.C. §§ 361, 362 and 363 and Federal Rules of Bankruptcy Procedure 2002, 4001 and

9014 granting adequate protection to prepetition lenders (the "<u>DIP Motion</u>").

<p align="center">**<u>Preliminary Statement</u>**</p>

1.     As of the Debtors' petition date, General Motors had setoff claims

against the Debtors of approximately $1.15 billion.  It is undisputed under all applicable

law and by any party that General Motors' setoff rights are senior to all other creditors'

liens against the Debtors' prepetition accounts receivable from General Motors.  As of

the date hereof, General Motors and the Debtors are continuing to negotiate a modified

postpetition financing order to provide General Motors with protection of its setoff claims

sufficient to induce it to consent to the adequate protection proposed to be provided to the

Debtors' prepetition secured lenders.  Accordingly, in the event the Court does not enter a

version of postpetition financing order agreed to by General Motors, General Motors

objects to the adequate protection proposed by the DIP Motion to be provided to the

Debtors' prepetition secured lenders.

2.     This objection is necessitated because the Debtors are demanding

that General Motors pay the Debtors $1.15 billion (or else their postpetition loan will

default), forfeit its setoff rights, and obtain in exchange a third lien against property of the

estates.  In contrast, the Debtors procured for themselves on the Saturday they

commenced their chapter 11 cases, an order allowing the Debtors to exercise their setoff

rights against each other.  Moreover, while the Debtors propose to demote General

Motors from a setoff claim holder to a third lien holder, the Debtors propose to grant their

prepetition secured lenders (a) approximately $3.2 billion of collateral they did not have

prior to the petition date (certain accounts receivable, plants, and real property), (b)

postpetition cash interest payments the law does not require, (c) a second lien ahead of

General Motors, and (d) a superpriority administrative claim pursuant to Bankruptcy

Code section 507(b) senior to any claim General Motors would have.  While the

prepetition secured lenders will go from holding a first lien to a second lien against the

collateral they held prepetition, the only lien the Debtors propose to place in front of them

is the lien for the postpetition loan, which adds $2 billion cash to the estate.  If General

Motors pays its $1.15 billion prepetition payable, it will add $1.15 billion cash to the

estate and receive only a third lien on assets (to be shared with countless other setoff

claimholders) in exchange.

     3.     General Motors objects to the adequate protection the Debtors

propose to grant the prepetition lenders because:

     a.    Setoff rights are the best security a creditor can have, and transforming them into a third lien against illiquid collateral is not adequate protection.

     b.    Section 553(a) of title 11 of the United States Code (the "Bankruptcy Code") provides that the Bankruptcy Code "does not affect any right of a creditor to offset…" except as otherwise provided in sections 362 and 363 of the Bankruptcy Code.

     c.    There is no valid basis to grant the prepetition secured lenders a section 507(b) claim or a lien equal to or senior to General Motors' lien to secure its setoff rights once it pays its accounts payable to the Debtors because doing so would put the prepetition secured lenders ahead of General Motors when on the petition date the prepetition secured lenders' lien was junior to General Motors' setoff rights.

     d.    The prepetition secured lenders are receiving collateral they did not have prepetition consisting of approximately $3.2 billion of accounts receivable, plants and real property.

e.  The prepetition secured lenders are receiving postpetition cash interest not required to be paid, if at all, until the end of the case in a form to be determined by a chapter 11 plan.

f.  As described in more detail in General Motors' motion seeking adequate protection filed on the date hereof,[1] to facilitate the Debtors' acquisition of postpetition financing, General Motors would consent to its setoff rights being primed (to the extent described herein and in the Adequate Protection Motion) by the postpetition lenders if General Motors is (i) granted a second lien against the estate to secure its allowable setoff claim, (ii) provided certain financial information to evaluate the status of its adequate protection, and (ii) permitted to set off certain relatively small prepetition claims.  Moreover, General Motors would agree to limit its setoff and/or unstayed recoupment rights to no more than $50 million per month in connection with its warranty/product recall claims.

g.  If the Court grants the adequate protection requested by General Motors in the Adequate Protection Motion, (i) the postpetition lenders would add $2 billion cash to the estate in exchange for their first lien and (ii) General Motors would lose its setoff rights, materially limit its unstayed recoupment rights, and pay the estate $1.15 billion cash in exchange for its second lien, thereby providing the prepetition secured lenders more collateral value than they held prepetition even after correcting for the demotion of their lien.

h.  The Debtors already obtained relief to exercise their rights of setoff against each other in this case and thereby established precedent and the law of the case.

---

[1] See Motion for an Order Granting General Motors Corporation (I)(A) Adequate Protection of Property Interests and Setoff Rights Pursuant to Sections 363(e), 506 and 553 of the Bankruptcy Code and Rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure and (B) Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code to Set Off Certain Prepetition Warranty, Overpricing, and Ordinary Course Claims or, (II) in the Alternative, Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code to Set Off Prepetition Amounts Between General Motors Corporation and Delphi Corporation (the "Adequate Protection Motion").

    i.    General Motors is entitled pursuant to section 542(b) of the Bankruptcy Code[2] and <u>Citizens Bank v. Strumpf</u>, 516 U.S. 16 (1995), to freeze payment of its accounts payable to the Debtors until it is granted adequate protection.

**<u>The Debtors and the DIP Motion</u>**

4.        On either October 8, 2005 (the "<u>Commencement Date</u>") or October 14, 2005, each of the Debtors commenced a case under chapter 11 of the Bankruptcy Code. The Debtors continue to be authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

5.        On the Commencement Date, the Debtors filed numerous motions, including the DIP Motion. The DIP Motion proposes that the Debtors (i) obtain a postpetition financing facility under which they would be authorized to borrow up to $2 billion and (ii) continue to use the cash collateral of their prepetition secured lenders. The rights of the postpetition lenders and agent (collectively, the "<u>Postpetition Lenders</u>") would be secured by liens on substantially all of the Debtors' prepetition and postpetition assets (the "<u>Collateral</u>") and entitled to a "superpriority claim" with priority over all other claims against the Debtors, including any administrative expenses or claims for lack of adequate protection. The Postpetition Lenders' liens would be subject only to valid,

---

[2] Section 542(b) provides:

> "Except as provided in subsection (c) or (d) of this section, an entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trsutee, <u>except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor.</u>"

11 U.S.C. § 542(b) (emphasis added).

perfected, non-avoidable and enforceable liens in existence as of the Commencement

Date, other than the liens securing the claims of the Debtors' prepetition secured lenders

and agent (collectively, the "Prepetition Lenders" and, together with the Postpetition

Lenders, the "Lenders"), which would be primed by the Postpetition Lenders' liens.

6.    The  Prepetition Lenders' interest in their prepetition collateral

would be protected from diminution in value by, among other things, liens on the

Collateral and a superpriority claim, in each case junior only to the liens and superpriority

claim of the Postpetition Lenders, monthly cash payments of interest accruing at the

applicable contract rate in the prepetition financing documents (as well as an immediate

cash payment of interest currently accrued and unpaid under the applicable prepetition

financing documents), payment of all fees and expenses payable to the prepetition agent

under the prepetition financing documents and payments of reasonable out of pocket

expenses of members of any steering committee of Prepetition Lenders.  The relief

requested by the DIP Motion would result in granting second liens for the benefit of the

Prepetition Lenders on significant collateral that was not subject to their prepetition liens,

including accounts receivable that the Debtors estimate have a face value of

approximately $1.2 billion, several parcels of real property, material manufacturing

plants of Delphi and its manufacturing subsidiaries and portions of shares of capital stock

of foreign subsidiaries (collectively, the "New Collateral").[3]  The Debtors have informed

---

[3] The DIP Motion states that the $1.2 billion receivable was not subject to the Prepetition
Lenders' liens.  DIP Motion ¶ 16.  But the DIP Motion does not clearly disclose that the
receivable is part of the Collateral.

General Motors that they estimate the New Collateral has a value of approximately $3.2 billion.

7.      After a hearing on October 11, 2005, the Court granted the DIP Motion on an interim basis and entered an interim order authorizing the Debtors to enter into the proposed postpetition financing, use cash collateral and provide adequate protection to the Prepetition Lenders (the "Interim Order").  The Interim Order also provides that parties holding valid rights of setoff shall be granted a replacement lien on the Collateral junior to the liens of the Lenders.[4]  A final hearing on the DIP Motion is scheduled on October 27, 2005.

### Relationship and Claims Between General Motors and Delphi

8.      During the early 1990s, General Motors organized into an internal business sector various divisional units responsible for the manufacture and supply of automotive component parts and systems for the production of General Motors vehicles. Consistent with certain automotive industry trends and marketplace considerations, General Motors determined in late 1998 to separate its automotive parts and systems manufacturing and supply business from General Motors, and to transfer that business to Delphi.  General Motors completely divested its equity interest in Delphi on May 28, 1999.  As described in more detail in the Adequate Protection Motion, since the formation of Delphi in 1998, General Motors and Delphi have entered into various

---

[4] At the interim hearing, General Motors informed the Court that the proposed third liens would not adequately protect General Motors' setoff rights and that General Motors would require adequate protection of its setoff rights if it continued to be stayed from exercising such rights.

purchase agreements (collectively, the "Purchase Agreements") pursuant to which Delphi

sells automotive parts and systems to General Motors.

　　　　　9.　　　　As of the Commencement Date, General Motors held numerous

claims, both contingent and noncontingent, matured and unmatured, against Delphi (the

"Prepetition GM Claims").  As described in more detail in the Adequate Protection

Motion, such claims include, without limitation, warranty/product recall claims (the

Warranty Claims"), overpricing claims (the "Overpricing Claims"), claims relating to

former Delphi employees who retire from General Motors (pursuant to the U.S.

Employee Matters Agreement between General Motors and Delphi and attachments and

supplements thereto), indemnification claims relating to Delphi's obligations to provide

pension, retiree health and retiree life insurance benefits to certain of Delphi's UAW-

represented employees, claims in the event that Delphi rejects executory contracts or

leases with General Motors, unpaid obligations under certain legacy agreements,

environmental and asbestos related claims and product liability claims.  General Motors'

noncontingent claims as of the Commencement Date arising from the Purchase

Agreements and U.S. Employee Matters Agreement exceeded $1.3 billion.  General

Motors also routinely and in the ordinary course of business recoups and offsets amounts

Delphi owes General Motors for certain claims, including, without limitation, prepetition

short shipments, damaged goods and other ordinary course claims against Delphi.

　　　　　10.　　　　General Motors' monthly payables to Delphi generally aggregate

approximately $1.0 billion under the Purchase Agreements (the "GM Payables").

General Motors generally pays its aggregate monthly payables, subject to certain setoffs

and/or recoupments, to Delphi on the second business day of the second month following

Delphi's shipment date of goods or date of services. General Motors' remaining payments for shipments received from Delphi prior to the Commencement Date will be due, less setoffs and recoupments, on or about November 2, 2005 and December 2, 2005, and aggregate approximately $1.15 billion, less setoffs and recoupments (the "Prepetition GM Payable").

<u>**Argument**</u>

**A.**     **General Motors' Setoff Rights Are Entitled to
Protection and Priority Over the Prepetition Lenders' Liens**

<u>Special Status of Setoff Rights</u>

11.     Section 553(a) of the Bankruptcy Code provides, in pertinent part, that:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before commencement of the case….

11 U.S.C. § 553(a). Accordingly, and as discussed in more detail in the Adequate Protection Motion and memorandum of law filed in support thereof (the "Memorandum of Law"), the Bankruptcy Code protects and preserves a creditor's setoff right under nonbankruptcy law. The Bankruptcy Code further protects setoff rights by (i) protecting a creditor from being forced to make payment on a matured, payable debt to a debtor to the extent of a setoff right protected by section 553, <u>see</u> 11 U.S.C. § 542(b); <u>Strumpf</u>, 516 U.S. at 21, and (ii) treating a right of setoff as a secured claim, <u>see</u> 11 U.S.C. § 506(a) ("An allowed claim of a creditor…that is subject to setoff under section 553 of this title, is a secured claim…to the extent of the amount subject to setoff…and is an unsecured

claim to the extent…the amount so subject to setoff is less than the amount of such allowed claim.").

12.     Outside of the context of bankruptcy cases, however, setoff rights enjoy even more favorable treatment than a secured claim.  As discussed below, under the Uniform Commercial Code as adopted by Michigan,[5] setoff rights take priority over third parties' security interests in accounts.  Additionally, setoff rights can be exercised without foreclosure or seeking any judicial or other relief.  Compare Strumpf, 516 U.S. at 19 ("[A] setoff has not occurred until three steps have been taken:  (i) a decision to effectuate setoff, (ii) some action accomplishing the setoff, and (iii) a recording of the setoff.") with MICH. COMP. LAWS § 440.9601 (providing that after default, a secured party has the rights to reduce a claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure).

13.     As analyzed in detail in the Motion and Memorandum of Law, General Motors has a protected right to set off the GM Prepetition Payable against the GM Prepetition Claim because the claims and relevant relationship between General Motors and Delphi meet all requirements for setoffs under both applicable nonbankruptcy law and section 553 of the Bankruptcy Code.  Accordingly, General Motors' setoff rights

---

[5] Pursuant to the Uniform Commercial Code, which has been adopted by the states of Michigan and New York, Michigan law governs the perfection, effect of perfection and priority of the security interests of third parties, such as the Prepetition Lenders, in Delphi's accounts receivable, such as the Prepetition GM Payable, because Delphi is located in Michigan.  U.C.C. § 9-301(1) ("Except as otherwise provided in this section, while a debtor is located in a jurisdiction, the local law of that jurisdiction governs perfection, the effect of perfection or nonperfection, and the priority of a security interest in collateral."); MICH. COMP. LAWS § 440.9301(a) (same); N.Y. U.C.C. LAW § 9-301(a) (same).

are entitled under the Bankruptcy Code and applicable nonbankruptcy law to the priority,

protections and status described above.

<div align="center">Priority of General Motors' Setoff
Rights Over Prepetition Lenders' Liens</div>

14.    Moreover, as recognized by the Debtors, Prepetition Lenders and

Postpetition Lenders, as of the Commencement Date, General Motors' right to set off

against the Prepetition GM Payable had priority over any security interests of the

Prepetition Lenders (or any other creditors) in the Prepetition GM Payable.  Under the

Uniform Commercial Code as adopted by Michigan, unless an account payor has entered

into an agreement not to assert setoff rights, the account payor is entitled to assert any

setoff rights to which it is entitled under the contract giving rise to the account, regardless

of any security interest of a third party in the account.  MICH. COMP. LAWS § 440.9404

("Unless an account debtor has made an enforceable agreement not to assert defenses or

claims…the rights of an assignee are subject to…(a) all terms of the agreement between

the account debtor and assignor and any defense or claim in recoupment arising from the

transaction that gave rise to the contract…."); see also U.C.C. § 9-404 (same); N.Y.

U.C.C. LAW § 9-404 (same); In re Doctors Hosp. of Hyde Park, Inc., 337 F.3d 951, 954-

55 (7th Cir. 2003) (holding that account payor may set off under the Uniform

Commercial Code regardless of security interest in account if contract permits setoff).

General Motors has not entered into an agreement to refrain from asserting setoff rights

and the General Terms and Conditions applicable to the Purchase Agreements provides

for the right of General Motors and its affiliates to set off debts owed to Delphi and its

affiliates.[6]  Accordingly, any security interest for the benefit of the Prepetition Lenders in

the Prepetition GM Payable is subject to General Motors' right of setoff against the

Prepetition GM Payable.

**B.      The Debtors' Proposed Adequate Protection Would Deny
         General Motors the Adequate Protection to Which It Is Entitled**

<u>Entitlement to Adequate Protection to Maintain Status Quo</u>

15.     Pursuant to section 363(e) of the Bankruptcy Code, any secured

claimholder is entitled upon request to adequate protection of its interest in collateral

used by a debtor during its bankruptcy case.  11 U.S.C. § 363(e) ("Notwithstanding any

other provision of this section, at any time, on request of an entity that has an interest in

property used, sold, or leased, by the trustee, the court, with or without a hearing, shall

prohibit or condition such use, sale or lease as is necessary to provide adequate protection

of such interest.").  Adequate protection is "recognized as a fundamental right afforded

secured creditors in bankruptcy proceedings."  <u>In re Waste Conversion Techs., Inc.</u>, 205

B.R. 1004, 1007 (D. Conn. 1997).

16.     As recently set forth by this Court, the purpose of adequate

protection "is to ensure that a secured creditor receives the value for which the creditor

bargained for prior to the debtor's bankruptcy."  <u>In re WorldCom, Inc.</u>, 304 B.R. 611,

618-19 (Bankr. S.D.N.Y. 2004) (citations omitted).  Adequate protection is thus intended

to maintain the <u>status</u> <u>quo</u> between the petition date and confirmation or rejection of the

---

[6] <u>See</u> General Terms and Conditions ¶ 23 ("In addition to any right of setoff or
recoupment provided by law, all amounts due to Seller shall be considered net of
indebtedness of Seller and its affiliates/subsidiaries to Buyer and its
affiliates/subsidiaries; and Buyer shall have the right to setoff against or to recoup from
any amounts due to Seller and its affiliates/subsidiaries from Buyer and its
affiliates/subsidiaries.").

chapter 11 plan.  In re 354 E. 66th St. Realty Corp., 177 B.R. 776, 781 (Bankr. E.D.N.Y.

1995).  Consistent with maintenance of the status quo, adequate protection may not

reorder the rights of holders of secured claims as of the petition date vis-à-vis each other.

For example, in In re Sunrise R.V. Inc., 107 B.R. 277, 282 (Bankr. E.D. Cal. 1989), a

bankruptcy court refused to allow a secured claimholder to use a debtor's alleged failure

to comply with terms of a cash collateral order to obtain proceeds of collateral that but for

the alleged failure would have belonged to another secured claimholder with a senior

right to the collateral.  The court observed that,

> As between secured creditors holding conflicting interests
> in the same collateral, therefore, a cash collateral order
> should protect all parties and maintain the status quo as
> equitably as possible.  The intent behind the [cash collateral
> orders] was to permit [the debtor] to sell its floored
> inventory, but only if the secured creditors' liens attached
> to the sales proceeds in the same priority and extent as
> existed before the sale was made.  To have provided
> otherwise would have been to deny the secured creditors
> the adequate protection required by 11 U.S.C. § 363(e).

Id. (emphasis added); see also First Federal Bank of Cal. v. Weinstein (In re Weinstein),

227 B.R. 284, 297 (B.A.P. 9th Cir. 1998) ("Payments intended to provide adequate

protection are not meant to improve the undersecured creditor's position in relation to

other creditors.").

       17.    A related corollary to adequate protection's purpose of maintaining

the status quo is that a secured claimholder is not permitted to receive adequate protection

that would improve its position during the bankruptcy case.  See, e.g., WorldCom, 304

B.R. at 619 ("However, neither the legislative history nor the Bankruptcy Code require

the Court to protect a creditor beyond what was bargained for by the parties."); In re

TennOhio Transp. Co., 269 B.R. 775 (Bankr. S.D. Ohio 2001) (requiring secured

claimholder to return to debtor's estate adequate protection payments in excess of value

of collateral on petition date); United States v. Smithfield Estates, Inc. (In re Smithfield

Estates, Inc.), 48 B.R. 910, 915 (Bankr. D.R.I. 1985) ("The concept of adequate

protection was not designed or intended to place an undersecured or minimally secured

creditor in a better post-filing position than it was in before the stay.") (citation omitted);

cf. In re James Wilson Assocs., 965 F.2d 160, 171 (7th Cir. 1992) ("The first lienor is

entitled to the preservation of so much of his security interest as is necessary generously

to secure his claim, but to no more.") (emphasis added).  Consistent with this limitation, a

secured claimholder is not entitled to adequate protection of any "equity cushion" (i.e.,

any excess of value of the collateral above the claim secured by an interest in the

collateral).  See Nantucket Investors II v. California Fed. Bank (In re Indian Palms

Assocs., Ltd.), 61 F.3d 197, 207 (3rd Cir. 1995) (secured creditor is entitled to adequate

protection only as to its claim); In re Mellor, 734 F.2d 1396 (9th Cir. 1984) (same); In re

Senior Care Props., Inc., 137 B.R. 527 (Bankr. N.D. Fla. 1992) (secured creditor not

entitled to adequate protection for the erosion of its interest in the debtor's equity

cushion); In re Lane, 108 B.R. 6, 7-9 (Bankr. D. Mass. 1989) (rejecting the position that

creditors are entitled to adequate protection of an equity cushion as an interest in

property); In re McCombs Props. VI, Ltd., 88 Bankr. 261 (Bankr. C.D. Cal. 1988)

(same); In re Hutton-Johnson Co., 6 B.R. 855, 859-60 (Bankr. S.D.N.Y. 1980) (same).

18.    Accordingly, a secured claimholder is not entitled to payments of

interest and expenses during a bankruptcy case if the value of its collateral sufficiently

exceeds the claim.  See In re Megan-Racine Assocs. Inc., 202 B.R. 660, 663 (Bankr.

N.D.N.Y. 1996) ("If, as the Debtor alleges, the [secured claimholder] is oversecured, it may not be entitled to either cash payments or postpetition liens…Indeed, where there is a substantial value cushion there may be no need for additional protection."); In re Gallegos Research Group Corp., 193 B.R. 577, 584 (Bankr. D. Colo. 1995) ("Oversecured creditors may not be entitled to cash payments or postpetition liens because they are adequately protected through the existence of a value cushion.").  Such payments are antithetical to the general principles underlying adequate protection and the Bankruptcy Code, which generally does not require chapter 11 debtors to pay any postpetition interest to secured creditors prior to a chapter 11 plan, see, e.g., Orix Credit Alliance v. Delta Res. (In re Delta Res.), 54 F.3d 722 (11th Cir. 1995) (concluding that payment of accrued postpetition interest to an oversecured creditor must await the completion of reorganization or confirmation of the plan) (citing United States Sav. Ass'n of Tex v. Timbers of Inwood Forest Assocs., Ltd., 484 U.S. 365, 372-73 (1988)), because such payments would improve the secured claimholder's position to the detriment of other holders of claims against the debtor.

   19. Section 507(b) of the Bankruptcy Code establishes a superpriority administrative claim only to secured claimholders granted adequate protection that turns inadequate.  11 U.S.C. § 507(b).[7]  General Motors would be entitled to a section 507(b)

―――――――――――――――――――

[7] Section 507(b) of the Bankruptcy Code provides:

> "If the trustee, under section 362, 363, or 364 of this title, provides adequate protection of the interest of a holder of a claim secured by a lien on property of the debtor and if, notwithstanding such protection, such creditor has a claim allowable under subsection (a)(1) of this section arising from the stay of action against such property under section 362 of this title, from the use, sale or lease of such property under section 363 of

claim as a matter of right if it is granted inadequate protection of its setoff claim.  See,
e.g., Temecula v. LPM Corp. (In re LPM Corp.), 300 F.3d 1134, 1138 n.3 (9th Cir. 2002)
(noting that creditors "receive" section 507(b) claims when adequate protection fails); In
re Falconer, 79 B.R. 283 (W.D. Mich. 1987) (superpriority claim under section 507(b)
granted as a result of depletion of secured claimholder's security interest).  The
postpetition credit agreement and the proposed order approving it, however, grant the
Prepetition Lenders a superpriority claim junior only to that provided for the benefit of
the Postpetition Lenders.  This provision improperly grants a section 507(b) superpriority
to lenders who do not satisfy the requirements of section 507(b) in that they were granted
adequate protection that turns out inadequate.  See, e.g., In re Smith, 75 B.R. 365 (W.D.
Va. 1987) (to establish a claim under section 507(b) of the Bankruptcy Code, a creditor
"must have been provided with some form of adequate protection at some earlier time
and that protection must later prove to be inadequate") (emphasis added); In re United
States Lines, Inc., 79 B.R. 542, 549 (Bankr. S.D.N.Y. 1987) (claim under section 507(b)
limited to instances where previously granted adequate protection has proven
inadequate).

     20.     If the adequate protection granted the Prepetition Lenders does
turn out inadequate and the adequate protection granted General Motors is also
inadequate, there is no basis for the Prepetition Lenders to have a higher priority

---

     this title, or from the granting of a lien under section 364(d) of this title,
then such creditor's claim under such subsection shall have priority over
every other claim allowable under such subsection.

11 U.S.C. § 507(b).

deficiency claim to the estates' unencumbered assets than General Motors' deficiency

claim.  Accordingly, the Debtors' attempt to grant the Prepetition Lenders a section

507(b) potential deficiency claim senior to General Motors' potential deficiency claim is

contrary to the plain words of section 507(b) and to basic fairness and equity.

<u>Forms of Adequate Protection</u>

21.     Courts have flexibility in fashioning forms of adequate protection.

As set forth in section 361 of the Bankruptcy Code, periodic cash payments, additional or

replacement liens and such other relief as will provide the "indubitable equivalent" of the

interest are potential forms of adequate protection.  11 U.S.C. § 361.  But a secured

claimholder's interest in collateral is not adequately protected if the protection subjects

the claimholder to increased risk of deterioration in the value of its collateral.  <u>See</u>, <u>e.g.</u>,

<u>In re O'Connor</u>, 808 F.2d 1393, 1398 (10th Cir. 1987) ("[C]are must be exercised to

insure that the vested property rights of the secured creditor and the values and risks

bargained for by that creditor prior to bankruptcy are not detrimentally affected."); <u>In re</u>

<u>Carolina Util. Supply Co.</u>, 118 B.R. 412, 417 (Bankr. D.S.C. 1990) (holding that

unsecured guaranty of nondebtor did not provide adequate protection for use of cash

collateral); <u>In re Ziegler</u>, 88 B.R. 67 (Bankr. E.D. Pa. 1988) (holding that a lien on real

property was not adequately protected by a substitute lien on lawsuit proceeds); <u>In re</u>

<u>Magnus</u>, 50 B.R. 241, 243-44 (Bankr. N.D. 1985) (holding that replacement lien on silos

of speculative value was too risky to provide adequate protection for interest in cash

collateral).  This is particularly true when the interest in the prepetition collateral to be

used by the debtor is easily realizable, such as a security interest in cash or an account

receivable owed by a setoff creditor.  <u>See</u> <u>In re Krumm</u>, 87, B.R. 76, 77 (Bankr. D. Neb.

1988) ("In the context of depriving a secured creditor of its security interest in cash collateral, 'indubitable equivalence' analysis imports a necessary comparison of the relative risks of loss to the secured creditor if it has recourse on the replacement collateral instead of the cash collateral.  If the proposed adequate protection in the form of a replacement lien and other protections do not constitute the indubitable equivalence to cash collateral, the substitution cannot be approved because to do so would deprive the secured creditor of a protected property interest."); <u>Magnus</u>, 50 B.R. at 244 (""[T]he standard of adequate protection to be afforded a creditor when its cash collateral is being used should be a high one.") (quotation omitted).  In such circumstances, a secured claimholder simply cannot be forced to accept as a replacement of an interest with a certain value an interest with a speculative or unknown value.  <u>Cf.</u> <u>In re Wabash Valley Power Ass'n, Inc.</u>, 114 B.R. 613, 620 (S.D. Ind. 1989) (holding that replacement lien did not provide adequate protection where debtors did not produce evidence of the value and likely depreciation of the replacement collateral).

**B.      The Court Cannot Provide General Motors with the Adequate Protection to Which It Is Entitled If the Court Grants the DIP Motion**

22.      The adequate protection package proposed by the Debtors does not comply with any of the legal standards governing adequate protection.  The package would rearrange the relative rights of General Motors and the Prepetition Lenders, provide the Prepetition Lenders with protection that would dramatically improve their position (at the expense of General Motors and all other creditors) from what it was on the Commencement Date and leave General Motors with postpetition security that is impermissibly diminished from General Motors' security as of the Commencement Date.

23.     As discussed above, any forms of adequate protection provided to General Motors and the Prepetition Lenders must maintain the <u>status quo</u>, including that of the rights of General Motors relative to the rights of the Prepetition Lenders.  As of the Commencement Date, by virtue of General Motors' setoff right, it held the equivalent of a fully secured, first priority lien on the Prepetition GM Receivable in the amount of the Prepetition GM Receivable.  In fact, as discussed above, General Motors' setoff right was entitled to more favorable treatment under nonbankruptcy law than a first priority lien. General Motors was thus entitled at any point in time prior to the Commencement Date immediately to set off (x) General Motors' payables owed to Delphi against (y) General Motors' claims against Delphi.  The Prepetition Lenders' prepetition liens only entitled them to any remaining portion of General Motors' payables <u>after</u> exercise of General Motors' setoff right (and the fulfillment of conditions under the prepetition secured financing documents and nonbankruptcy law entitling the Prepetition Lenders to foreclose on their collateral, which did not occur prior to the Commencement Date).  But the adequate protection package proposed by the Debtors in the DIP Motion would deny General Motors its mandatory adequate protection by reversing the priority of the relative rights of General Motors and the Prepetition Lenders as a result of the provision for the benefit of the Prepetition Lenders of postpetition liens senior to the postpetition liens proposed to be provided to General Motors.

24.     Moreover, the Prepetition Lenders do not need the proposed package to protect their interest in their prepetition collateral.  The liens securing the postpetition financing would not diminish the Prepetition Lenders' interest in their collateral because the Postpetition Lenders' liens only exist to the extent that they loan

funds to the Debtors.  And any funds loaned to the Debtors commensurately increase the value of their estates.  The Debtors propose to provide the Prepetition Lenders with several forms of adequate protection that will significantly increase the value of the their collateral package, even accounting for the priming of their lien.  As noted above, the Prepetition Lenders would be granted liens on the New Collateral, which the Debtors assert has a value of approximately $3.2 billion.  Additionally, the Prepetition Lenders would be granted a lien senior to General Motors' lien on GM Payables incurred postpetition (the "Postpetition GM Payables").  If GM pays the Prepetition GM Payable, the net result of these new liens would be to increase, at General Motors' expense (General Motors' adequate protection, as proposed by the Debtors, would consist of liens on the Collateral junior to Prepetition Lenders' liens), the Prepetition Lenders' collateral base by approximately $4.35 billion (the sum of the Prepetition GM Payable and the New Collateral).

25.    Although the Prepetition Lenders' new liens alone would impermissibly improve the Prepetition Lenders' position from that on the Commencement Date, the Debtors also propose to pay the Prepetition Lenders' postpetition interest and expenses.  These proposed payments, which would drain the resources of the Debtors' estates to the detriment of all parties in interest other than the Prepetition Lenders, are not permitted because, as discussed above, the Prepetition Lenders' interest in their prepetition collateral is not declining in value, but is instead dramatically increasing in value.

26.    Finally, the proposed adequate protection package would force General Motors to refrain from exercising its setoff right in exchange for a deeply

subordinated, vague lien on the Collateral.  Under the Debtors' proposal, the moment

General Motors pays the Prepetition GM Payable, General Motors will be transformed

from a secured creditor with a first priority right to collateral indisputably worth

approximately $1.15 billion into a creditor with a third lien on the Collateral subject to

liens securing approximately $4.48 billion of senior debt.  Moreover, General Motors'

third lien would be shared <u>pari</u> <u>passu</u> by all parties with setoff rights.  But the Debtors

have produced no evidence that the Collateral's value equals $5.63 billion (the sum of the

postpetition facility, the principal amount of the prepetition secured loans and the

approximate amount of General Motors' setoff claim), let alone exceeds this amount

sufficiently to provide assurance that General Motors' setoff claim will be unimpaired

during the course of the Debtors' chapter 11 cases.  Additionally, even assuming

<u>arguendo</u> that the Debtors could demonstrate the value of the Collateral exceeds the sum

of the claims of the Lenders and the Prepetition GM Payable, the value of the third lien

proposed to be granted to General Motors is not measurable because no party knows the

amount of setoff claims that might be asserted by other parties in these cases.  This

proposed adequate protection would expose General Motors to dramatically increased

risk that it would not be able to realize the full value of its setoff rights as of the

Commencement Date.  Thus, the proposed adequate protection does not in fact

adequately protect General Motors as required by the Bankruptcy Code.

### C. General Motors' Requested Adequate Protection Package Would Comply with the Bankruptcy Code

27.    In contrast to the Debtors' proposed adequate protection package,

the adequate protection requested by General Motors in the Adequate Protection Motion

would comply with the principles governing the provision of adequate protection.  As

described in more detail in the Adequate Protection Motion, General Motors seeks two

forms of adequate protection:  (1) an administrative claim secured by a lien on all assets

of the Debtors' estates junior only to the DIP Lenders' liens; and (2) the delivery by

Delphi to General Motors of certain financial information to allow General Motors to

evaluate the status of and risk to its adequate protection.[8]  Additionally, to facilitate the

Debtors' reorganization, General Motors would agree to materially limit its recoupment

rights, which are not subject to the automatic stay, see, e.g., Newbery Elec., Inc. v.

Fireman's Fund Ins. Corp. (In re Newbery Corp.), 95 F.3d 1392, 1399-1400 (9th Cir.

1996); Universal Med. Ctr. v. Sullivan (In re Universal Med. Ctr.), 973 F.2d 1065, 1079-

81 (3d Cir. 1992).[9]  Specifically, General Motors would agree to limit its recoupment

and/or setoff of its Warranty Claims to an aggregate of no more than $50 million per

month.[10]  General Motors would have no objection to the provision of all adequate

protection proposed by the Debtors for the Prepetition Lenders, other than that the

Prepetition Lenders' lien would be junior to General Motors' lien.

---

[8] The description herein of adequate protection and stay relief requested by General
Motors is summary only.  General Motors' actual requests are contained in the Adequate
Protection Motion.  To the extent of any conflict between the description herein and the
requests in the Adequate Protection Motion, the terms of the Adequate Protection Motion
shall govern.

[9] Recoupment rights are also discussed in more detail in the Adequate Protection Motion
and Memorandum of Law.

[10] General Motors believes it is entitled to recoup its Warranty Claims, Overpricing
Claims, and other claims arising from the Purchase Agreements (including claims for
short shipments and damaged goods).  Nonetheless, out of an abundance of caution, in
the Adequate Protection Motion, General Motors seeks, to the extent necessary, relief
from the automatic stay to allow it to set off such claims.

28.    The adequate protection requested by General Motors would maintain the status quo between General Motors and the Prepetition Lenders:  General Motors would maintain its senior position relative to the Prepetition Lenders and the Prepetition Lenders' interest in their prepetition collateral would not decline in value because General Motors would pay to the Debtors the maximum amount of General Motors' replacement lien (i.e., approximately $1.15 billion) (as described above, the DIP Lenders' liens also do not decrease the value of the Prepetition Lenders' interest in their prepetition collateral).  Moreover, the Prepetition Lenders will receive additional adequate protection in the form of new liens on the New Collateral and the payments of postpetition interest and expenses.

29.    Not only does General Motors' requested adequate protection not change the relative rights of General Motors and the Prepetition Lenders, it also does not improve General Motors' position during the Debtors' chapter 11 cases.  To the contrary, even with the requested adequate protection, General Motors is not completely ensured that it will receive the benefit of its prepetition setoff rights (i.e., General Motors would exchange a senior right to realize $1.15 billion in value with no need for foreclosure or judicial relief for a claim "primed" by the liens of the DIP Lenders' liens, and General Motors unstayed right of recoupment and/or right of setoff with respect to Warranty Claims would be subject to a cap of $50 million per month.).  To facilitate the Debtors' acquisition of postpetition financing, however, General Motors would consent under these circumstances to the effective priming of its secured setoff right by the DIP Lenders' liens.

**D.      If General Motors Does Not Receive Adequate Protection, It
Is Entitled to Relief from the Automatic Stay to Exercise Its Setoff Right**

30.      Section 553(a) of the Bankruptcy Code provides that no provision
of the Bankruptcy Code shall affect a creditor's setoff right except as provided in sections
362 and 363 of the Bankruptcy Code.  Section 362 of the Bankruptcy Code entitles a
secured claimholder to relief from the automatic stay to exercise its rights against
collateral if the claimholder does not receive adequate protection of its interest in the
collateral.  11 U.S.C. § 362(d) ("[T]he court shall grant relief from the stay…for cause,
including lack of adequate protection of an interest in property…").  Accordingly, a
creditor with a setoff right that is not adequately protected pursuant to section 363 of the
Bankruptcy Code is entitled pursuant to sections 553 and 362 of the Bankruptcy Code to
exercise its setoff right.  Moreover, in these cases, the Debtors have already obtained
relief to exercise their rights of setoff against each other, thus establishing precedent and
the law of the case that creditors with valid setoff rights may exercise their rights.  See
Interim Order Under 11 U.S.C. §§ 363 and 553 Authorizing (I) Continued Maintenance
of Existing Bank Accounts, (II) Continued Use of Existing Cash Management System,
(III) Continued Use of Existing Business Forms, (IV) Preservation and Exercise Oo
Intercompany Setoff Rights, and (V) Grant of Administrative Status for Postpetition
Intercompany Transactions ¶ 12.  As discussed above, the adequate protection proposed
by the Debtors does not adequately protect General Motors' setoff right.  General Motors
is thus entitled to relief from the stay to exercise its setoff right if the Court grants the
adequate protection requested in the DIP Motion.

31.    Finally, pursuant to section 542(b) of the Bankruptcy Code and the Supreme Court's holding in <u>Strumpf</u>, 516 U.S. at 21, General Motors is entitled to freeze payments (without violating the automatic stay) of its accounts payable until it is granted adequate protection.  Accordingly, General Motors reserves its right to freeze the Prepetition GM Payable until the Court's disposition of this Objection and the Adequate Protection Motion.

32.    If the Court provides General Motors with its requested adequate protection, General Motors has no objection to the provision of adequate protection proposed by the Debtors in the DIP Motion for the benefit of the Prepetition Lenders (as modified by the terms of General Motors' requested adequate protection).  If the Court does not provide General Motors with its requested adequate protection, however, the Court should either deny the adequate protection proposed by the DIP Motion or grant General Motors relief from the automatic stay to exercise its setoff rights.

WHEREFORE, if the Court does not enter a version of postpetition financing order agreed to by General Motors, General Motors respectfully requests that the Court (i) deny the Debtors' request in the DIP Motion to provide adequate protection to the Prepetition Lenders to the extent necessary to grant General Motors the adequate protection requested in the Adequate Protection Motion or grant General Motors relief from the automatic stay to exercise its setoff rights and (ii) grant General Motors such other and further relief as is just.

Dated:  October 26, 2005
        New York, New York

<div style="margin-left: 50%">

/s/ Michael P. Kessler
Martin J. Bienenstock (MB 3001)
Michael P. Kessler (MK 7134)
Jeffrey L. Tanenbaum (JT 9797)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY 10153-0119
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

- and -

Robert Weiss
Frank Gorman
HONIGMAN MILLER SCHWARTZ
& COHN, LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3583
Telephone: (313) 465-7000
Facsimile: (313) 465-8000

Attorneys for General Motors Corporation

</div>