Martin J. Bienenstock, Esq. (MB 3001)
Michael P. Kessler, Esq. (MK 7134)
Jeffrey L. Tanenbaum, Esq. (JT 9797)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

– and –

Robert B. Weiss, Esq.
Frank L. Gorman, Esq.
HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226-3506
Telephone: (313) 465-7000
Facsimile: (313) 465-8000

Attorneys for General Motors Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x
In re                                                       :
                                                            :    **Chapter 11 Case No.**
                                                            :
**DELPHI CORPORATION, <u>et al.</u>,**                       :    **05-44481 (RDD)**
                                                            :
                     Debtors.                                :    **(Jointly Administered)**
                                                            :
------------------------------------------------------------x

**MOTION FOR AN ORDER GRANTING GENERAL MOTORS CORPORATION (I) (A) ADEQUATE PROTECTION OF PROPERTY INTERESTS AND SETOFF RIGHTS PURSUANT TO SECTIONS 363(e), 506, AND 553 OF THE BANKRUPTCY CODE AND RULES 4001(a) AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND (B) RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE TO SET OFF CERTAIN PREPETITION WARRANTY, OVERPRICING, AND ORDINARY COURSE CLAIMS OR, (II) IN THE ALTERNATIVE, RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE TO SET OFF PREPETITION AMOUNTS BETWEEN <u>GENERAL MOTORS CORPORATION AND DELPHI CORPORATION</u>**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

   General Motors Corporation ("General Motors"), as and for its motion (the "Motion") for entry of an order granting (i) (a) adequate protection of property interests and setoff rights pursuant to sections 363(e), 506, and 553 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and (b) relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to set off certain prepetition warranty, overpricing, and ordinary course claims or, (ii) in the alternative, granting relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to set off prepetition amounts owing between General Motors and Delphi Corporation (f/k/a Delphi Automotive Systems Corporation) ("Delphi"), respectfully represents:

## Jurisdiction

1. This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Factual Background

2. On either October 8, 2005 (the "Commencement Date") or October 14, 2005, Delphi and certain of its subsidiaries and affiliates (collectively, the "Debtors") each commenced a case under chapter 11 of the Bankruptcy Code. As set forth in the Court's order dated October 8, 2005, the Debtors chapter 11 cases are being jointly administered pursuant to Bankruptcy Rule 1015, and pending as Case No. 05-44481(RDD).

3. The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

**A.    General Motors's Relationship with the Debtors**

4. During the early 1990's, General Motors organized into an internal business sector various divisional units responsible for the manufacture and supply of automotive component parts and systems for the production of General Motors vehicles. This internal business sector eventually became known as the "Delphi Automotive Systems Group." Consistent with certain automotive industry trends and marketplace considerations, General Motors determined in late 1998 to separate its automotive parts and systems manufacturing and supply business from General Motors, and to transfer that business to Delphi. Following the formation and spin-off of Delphi in 1998, shares of common stock of Delphi were offered for sale to the public on February 4, 1999. General Motors retained ownership of the remainder of Delphi's equity until it completely divested its equity interest in Delphi on May 28, 1999.

5. In connection with the spin-off, General Motors and Delphi entered into a Component Supply Agreement, dated as of January 1, 1999 (the "<u>Component Supply Agreement</u>"). The Component Supply Agreement obligated Delphi and General Motors to honor all existing supply agreements (the "<u>Existing Purchase Agreements</u>"), whether formal or informal, as if Delphi and General Motors were separate legal entities at the time such agreements were made. The Component Supply Agreement also provided the terms governing Delphi's retention of General Motors' business for product programs commencing in the following three year period. Since the

formation and spin-off of Delphi, and as explained in detail below, General Motors and Delphi have entered into other purchase agreements pursuant to which Delphi sells automotive parts and systems to General Motors (together with the Existing Purchase Agreements, the "Purchase Agreements").[1]  General Motors is Delphi's largest customer — in 2004, Delphi sales to General Motors aggregated approximately $15.4 billion.  See Delphi Corporation, Annual Report (Form 10-K), at 23 (June 30, 2005).

**B.     General Motors' Prepetition Claims Against Delphi**

6.     Pursuant to the General Terms and Conditions applicable to Purchase Agreements (the "Terms and Conditions"), Delphi warrants/guarantees the automotive parts and systems it provides to General Motors, and sells such automotive parts and systems to General Motors in accordance with certain pricing mechanisms.  As of the Commencement Date, General Motors had asserted prepetition warranty/product recall claims against Delphi aggregating approximately $100 million (the "Asserted Warranty Claims").  General Motors also asserted prepetition overpricing claims against Delphi aggregating approximately $7.5 million (the "Overpricing Claims").  In addition to the Asserted Warranty Claims and Overpricing Claims, General Motors will in the ordinary course assert further warranty/product recall claims against Delphi in connection with automotive parts delivered prior to the Commencement Date (the "Additional Warranty Claims" and together with the Asserted Warranty Claims, the "Warranty Claims").

---

[1] Purchase Agreements are often for the life of a model, which could be a period of five to eight years of production.  Production may commence one to three years after the date of the Purchase Agreement.  For example, a Purchase Agreement dated in 1999 may govern supply from 2001-2006.

7. Pursuant to the U.S. Employee Matters Agreement and attachments and supplements thereto between Delphi and General Motors, which was entered into in connection with Delphi's spin-off from General Motors, Delphi is liable to General Motors for certain costs associated with post-employment benefits ("OPEB") for certain employees who worked at Delphi and retire from General Motors (the "Flowback Employees"). The total amount of such OPEB obligations, which are currently accrued and due to be paid to General Motors between 2006 and 2014, is approximately $1.228 billion (the "OPEB Flowback Claims"). Delphi is required to make certain annual true-up payments to partially reimburse General Motors for such OPEB Flowback Claims (the "Annual OPEB Flowback Payments"). The next Annual OPEB Flowback Payment in the amount of approximately $64 million is due from Delphi to General Motors on June 10, 2006.[2]

8. In connection with 1999 labor negotiations, General Motors and the United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW") entered into an agreement (the "Benefit Guarantee Agreement") pursuant to which General Motors agreed, subject to various conditions, to be secondarily liable for a portion of certain obligations if, under certain circumstances, Delphi were to reduce the scope and level of pension benefits, retiree health benefits, or retiree life insurance benefits provided to certain of its UAW-represented employees. In connection with the Benefit Guarantee Agreement, Delphi and General Motors entered into an indemnity agreement pursuant to which, among other things, Delphi indemnified General Motors

---

[2] The OPEB Flowback Claims and Annual OPEB Flowback Payments are subject to revision due to additional Flowback Employees and updates to actuarial assumptions.

and its affiliates for any losses and liabilities relating to the Benefit Guarantee (the "Indemnity Agreement").  In connection with the Indemnity Agreement, General Motors asserts claims against Delphi, including prepetition contingent claims (the "Benefit Guarantee Claims").

9. If, pursuant to section 365(a) of the Bankruptcy Code, Delphi rejects one or more Purchase Agreements, or other executory contracts and/or leases to which General Motors is a party, General Motors will have prepetition rejection damage claims against Delphi pursuant to section 502(g) of the Bankruptcy Code (the "Rejection Damage Claims").

10. General Motors also asserts various other unliquidated and/or contingent prepetition claims against Delphi including, without limitation, unpaid obligations under certain legacy agreements, environmental and asbestos related claims, and product liability claims (the "Other Claims").

11. Pursuant to the Terms and Conditions, General Motors routinely and in the ordinary course recoups and offsets amounts Delphi owes it for certain claims, including, without limitation, prepetition short shipments, damaged goods, and other ordinary course claims against Delphi (the "Ordinary Course Claims" and together with the Warranty Claims, the Overpricing Claims, the OPEB Flowback Claims, the Benefit Guarantee Claims, the Rejection Damage Claims, the Other Claims, and any other prepetition claims of General Motors against Delphi, the "General Motors Prepetition Claims").

**C.       General Motors' Prepetition Obligations to Delphi**

12.      As noted above, General Motors is Delphi's largest customer. Currently, General Motors has aggregate monthly payables to Delphi of approximately $1 billion under the Purchase Agreements. General Motors pays its aggregate monthly payable, subject to certain setoffs and/or recoupments, to Delphi pursuant to General Motors' Multilateral Netting System, which provides, on average, that payment shall be made on the second business day of the second month following Delphi's shipment date of goods or date of services.

13.      For shipments during the period September 1, 2005 through the Commencement Date, General Motors incurred approximately $1.15 billion of indebtedness to Delphi, that will be due, less setoffs and/or recoupments, on or about November 2, 2005 for shipments during September 2005 (the "<u>November General Motors Payable</u>"), and on or about December 2, 2005 for shipments during the period October 1, 2005 to the Commencement Date (the "<u>December General Motors Payable</u>" and together with the November General Motors Payable, the "<u>General Motors Prepetition Payable</u>").

**D.       General Motors' Setoff Rights**

14.      Each of the Purchase Agreements,[3] U.S. Employee Matters Agreement, and Indemnity Agreement provide that such agreement shall be construed

---

[3] Paragraph 29 of the Terms and Conditions provides that the Purchase Agreements are to be governed by the law of the state from which the Purchase Order issues as shown by the address of Buyer on the face side of the Purchase Order. The Purchase Agreements are issued from the offices of General Motors' Global Purchasing and Supply Chain Management operations in Michigan.

and enforced in accordance with the laws of the State of Michigan. As set forth more fully in the Memorandum of Law in Support of the Motion for an Order Granting General Motors Corporation (I) (A) Adequate Protection of Property Interest and Setoff Rights Pursuant to Sections 363(e), 506, and 553 of the Bankruptcy Code and Rules 4001(a) and 9015 of the Federal Rules of Bankruptcy Procedure and (B) Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code to Set Off Certain Prepetition Warranty, Overpricing, and Ordinary Course Claims or, (II) in the Alternative, Relief from the Automatic Stay Pursuant to Section 362(d) of the Bankruptcy Code to Set off Prepetition Amounts Between General Motors Corporation and Delphi Corporation, (the "Memorandum of Law"), filed contemporaneously herewith in support of this Motion and incorporated herein by reference, the Bankruptcy Code does not provide creditors with an independent right of setoff, but simply preserves for the benefit of the creditor, any right to setoff that the creditor had under applicable nonbankruptcy law. In re Westchester Structures, Inc., 181 B.R. 730, 738-39 (Bankr. S.D.N.Y. 1995). As detailed in the Memorandum of Law, General Motors has established its rights of setoff under Michigan law.

15.    In addition to the common law rights of setoff under Michigan law, General Motors has bargained for an independent right to set off or recoup any amount due to Delphi and its affiliates and subsidiaries, as against General Motors' claims against Delphi and its affiliates and subsidiaries. Specifically, paragraph 23 of the Terms and Conditions provides:

> **23. SETOFF/RECOUPMENT:**
> In addition to any right of setoff or recoupment provided by law, all amounts due to Seller shall be considered net of

> indebtedness of Seller and its affiliates/subsidiaries to
> Buyer and its affiliates/subsidiaries; and Buyer shall have
> the right to setoff against or to recoup from any amounts
> due to Seller and its affiliates/subsidiaries from Buyer and
> its affiliates/subsidiaries.

Terms and Conditions, ¶ 23.

## Relief Requested

16.     As set forth above, the debtor-creditor relationship between General Motors and Delphi is quite extensive. In view of the impracticality of resolving all disputes relating to every contract and issue at bar in the near term, General Motors has formulated its request for adequate protection in a manner that provides for General Motors to make substantially all payments when due to Delphi while allowing General Motors to set off certain Warranty Claims, Overpricing Claims, and Ordinary Course Claims and preserving for General Motors the value of its additional valid setoff rights it is adjudged to have after notice and hearing.[4] Moreover, to facilitate the Debtors' acquisition of postpetition financing, General Motors has constructed its request for adequate protection in a manner that contemplates the priming of its setoff rights by the postpetition lenders if General Motors is granted a second lien against the estate to secure its allowable setoff claim. General Motors is further proposing to limit its unstayed recoupment rights and its right of setoff in connection with its Warranty Claims to no more than an aggregate of $50 million per month.

---

[4] Pending determination of this Motion, General Motors is entitled to freeze payment of the General Motors Prepetition Payable pursuant to section 542(b) of the Bankruptcy Code and Citizens Bank v. Strumpf, 516 U.S. 16 (1995).

17.     By this Motion, General Motors seeks two substitutes as adequate protection for its setoff rights pursuant to sections 363(e), 506, and 553 of the Bankruptcy Code and Bankruptcy Rules 4001(a) and 9014:

1) an administrative claim secured by a junior lien on all assets of the Debtors' estates; and

2) the delivery by Delphi to General Motors of certain financial information to allow General Motors to evaluate the status of and risk to its adequate protection.

Specifically, General Motors requests: (i) an allowed secured claim against the Debtors' estates up to an amount equal the lesser of the (x) allowable General Motors Prepetition Claims and (y) the General Motors Prepetition Payable (as same may be reduced from time to time as a result of the setoff by General Motors of allowable General Motors Prepetition Claims) which claim shall (x) be secured by valid, binding, enforceable, and fully perfected security interests in and mortgages and liens on all property and assets of the Debtors' estates of any kind or nature (other than proceeds of avoidance actions), whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising and all proceeds, products, rents, and profits thereof; provided, however, that the security interests shall be subject to the Carve-Out (as such term is defined in the Postpetition Financing Order) and junior to (a) the liens granted by order of the Court (the "Postpetition Financing Order") to the lenders providing the Debtors' postpetition financing (the "DIP Financing") pursuant to section 364 of the Bankruptcy Code and (b) other valid prepetition liens, excluding the liens of the lenders

providing prepetition financing (the "Prepetition Liens"),[5] and (y) constitute an administrative expense claim pursuant to sections 503(b), 507(a)(1), and 507(b) of the Bankruptcy Code; and (ii) the delivery by Delphi to General Motors of monthly unaudited consolidated balance sheets of the Domestic Entities and Global Entities (each of the latter two capitalized terms as defined in the agreement governing the DIP Financing (the "DIP Financing Agreement")) and related consolidated statements of income and consolidated cash flows of such entities for the prior fiscal month, and monthly financial projections and variance reports of the Domestic Entities and Global Entities (each of the latter two capitalized terms as defined in the DIP Financing Agreement), as such projections shall be updated pursuant to the terms of the DIP Financing Agreement.

18. In addition to the adequate protection set forth above, General Motors seeks, to the extent necessary, relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to allow it to set off (i) Ordinary Course Claims, (ii) Overpricing Claims, and (iii) Warranty Claims, provided, however, that the aggregate

---

[5] As set forth in General Motor's Objection to Debtors' Request for Final Order Granting Adequate Protection to Prepetition Lenders, there is no valid basis to grant the Debtors' prepetition secured lenders (the "Prepetition Lenders") a lien equal to or senior to General Motors' adequate protection lien because doing so would put the Prepetition Lenders ahead of General Motors following payment of the GM Prepetition Payable when, on the Commencement Date, the Prepetition Lenders' liens were behind General Motors' setoff rights. Moreover, in their postpetition financing motion, the Debtors are seeking to pay the Prepetition Lenders postpetition cash interest not required to be paid, if at all, until the end of the case. In addition, the Prepetition Lenders are receiving approximately $3.2 billion of collateral they did not have prepetition. The DIP Financing adds $2 billion cash to the estate and payment of the General Motors Prepetition Payable would add another $1.15 billion to the estate, providing the Prepetition Lenders more collateral value than they held prepetition even after correcting for the demotion of their lien.

amount of Warranty Claims set off and/or recouped will not exceed an aggregate of $50 million per month.

19.    The relief requested above is consistent with the pertinent provisions of the Bankruptcy Code and applicable nonbankruptcy law, as more fully explained in the Memorandum of Law, and adequately protects General Motors' secured right to set off the General Motors Prepetition Claims against the General Motors Prepetition Payable.

20.    If General Motors' secured setoff rights are not adequately protected in accordance with the relief requested above, General Motors seeks, in the alternative, relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to allow the setoff of the General Motors Prepetition Claims against the General Motors Prepetition Payable. Without the provision of adequate protection of General Motors' security interest under these circumstances, relief from the automatic stay is essential to ensure that General Motors' lien on the General Motors Prepetition Payable is not eviscerated.

**A.    General Motors has Valid Rights of Setoff and is a Secured Claimholder**

21.    Section 553 of the Bankruptcy Code provides, in pertinent part:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement date . . . against a claim of such creditor against the debtor that arose before the commencement date of the case . . .

11 U.S.C. § 553(a). Accordingly, while section 553 of the Bankruptcy Code itself does not confer any substantive right of setoff, it does protect a creditor's right of setoff under

nonbankruptcy law.  See Official Comm. of Unsecured Creditors v. Mfrs. &Traders Trust Co. (In re Bennett Funding Group, Inc.), 146 F.3d 136, 139 (2d Cir. 1998).

22. As set forth in the Memorandum of Law, General Motors has demonstrated its right to set off the General Motors Prepetition Claims against the General Motors Prepetition Payable under Michigan law.  Furthermore, General Motors has satisfied its burden of establishing that the General Motors Prepetition Claims and the General Motors Prepetition Payable are both "mutual and prepetition" as required under section 553 of the Bankruptcy Code, in that the credits and debts in question are between General Motors and Delphi, each standing in the same capacity.  See Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.), 181 B.R. 730, 738-39 (Bankr. S.D.N.Y. 1995).

23. The valid right of setoff under Michigan law and section 553 of the Bankruptcy Code entitles General Motors to a secured claim.  Specifically, section 506(a) of the Bankruptcy Code provides, in pertinent part:

> An allowed claim of a creditor . . . that is subject to setoff under section 553 of this title, is a secured claim . . . to the extent of the amount subject to setoff . . . and is an unsecured claim to the extent . . . the amount so subject to setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a).  Thus, General Motors' claims are deemed secured to the extent of its right of setoff.  Bank of N.Y. v. Treco (In re Treco), 240 F.3d 148 (2d Cir. 2001).

**B.    Adequate Protection for General Motors is Mandated**

24. Section 363(e) of the Bankruptcy Code provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, by the trustee, the court, with or

> without a hearing, shall prohibit or condition such use, sale,
> or lease as is necessary to provide adequate protection of
> such interest

11 U.S.C. § 363(e).

25. Section 361 of the Bankruptcy Code provides examples of what constitutes "adequate protection." As set forth in section 361 of the Bankruptcy Code and in the accompanying Memorandum of Law, periodic cash payments, additional or replacement liens, and such other relief as will provide the "indubitable equivalent" of the interest are potential forms of adequate protection. The court's duty to provide adequate protection is mandatory. 11 U.S.C. § 363(e) ("the court . . . <u>shall</u> prohibit or condition the use, sale, or lease is necessary to provide adequate protection") (emphasis added).

26. As discussed above and set forth more fully in the Memorandum of Law, pursuant to section 553 of the Bankruptcy Code and applicable nonbankruptcy law, General Motors has a right to set off (subject to the automatic stay) the General Motors Prepetition Payable against the General Motors Prepetition Claims. To protect its right of setoff, and in accordance with section 506(a) of the Bankruptcy Code, General Motors is entitled to, and it is a court's duty to provide, adequate protection of its secured setoff claims in accordance with sections 361 and 363(e) of the Bankruptcy Code.

**C.    Relief from the Automatic Stay To Permit Ordinary Course and Certain other Setoff is Appropriate**

27. As noted above, General Motors, in the ordinary course, recoups and/or offsets amounts that Delphi owes General Motors for certain Ordinary Course Claims, including, without limitation, short shipments and damaged goods. While amounts Ordinary Course Claims recouped vary during the course of the year, such

amounts recouped are typically and consistently relatively small.  General Motors is also entitled to recoup the Overpricing Claims and Warranty Claims from its payables to Delphi.

28. To the extent General Motors has rights of recoupment, the exercise of such rights are not subject to the automatic stay.  See Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.), 973 F.2d 1065, 1079-81 (3d Cir. 1992).  Accordingly, as General Motors believes the Ordinary Course Claims, Overpricing Claims, and Warranty Claims are subject to recoupment, General Motors is entitled to recoup the Ordinary Course Claims, the Overpricing Claims, and the Warranty Claims from the General Motors Prepetition Payable and/or from the General Motors' postpetition payables (the "General Motors Postpetition Payable"), as the case may be, without further order of the Court.[6]  As to the recoupment of Warranty Claims, however, to facilitate the DIP Financing, if General Motors is granted the adequate protection requested herein, General Motors would consent to limit the recoupment and/or setoff of Warranty Claims to $50 million per month.[7]

29. Nonetheless, out of an abundance of caution, by this Motion, pursuant to section 362(d) of the Bankruptcy Code, General Motors seeks relief from the automatic stay to set off the Warranty Claims (up to $50 million per month minus the amount of Warranty Claims recouped in that month), the Overpricing Claims, and the

---

[6] General Motors further reserves its rights to show that any other claims against the Debtors are subject to recoupment.

[7] General Motors reserves its rights, in accordance with applicable law, to setoff and/or recoup any and all postpetition claims, including warranty/recall claims, in the ordinary course and without further order of the court.

Ordinary Course Claims against the General Motors Prepetition Payable and/or General Motors Postpetition Payable, to the extent General Motors does not have a right of recoupment with respect to such amounts.  As detailed in the Memorandum of Law, cause exists to grant relief from the automatic stay, as the valid exercise of a right of setoff constitutes "cause" for such relief.  See, e.g., United States v. Orlinski (In re Orlinski), 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991).

### Alternative Relief

30.     Without the provision of adequate protection of its secured setoff rights in accordance with sections 361 and 363(e) of the Bankruptcy Code, General Motors seeks, in the alternative, to immediately setoff the General Motors Prepetition Claims against the General Motors Prepetition Payable.  Effectively, the setoff of the General Motors Prepetition Claims, which exceed the General Motors Prepetition Payable, would relieve General Motors from payment of the General Motors Prepetition Payable.

31.     Prior to effectuating a set off, a creditor must obtain relief from the automatic stay or must otherwise obtain an order allowing the setoff.  See In re Acad. Answering Servs., Inc., 90 B.R. 294, 295 (Bankr. N.D. Ohio 1988).  Pursuant to section 362 of the Bankruptcy Code, an automatic stay was in effect upon the commencement of each of the Debtors' chapter 11 cases.  The automatic stay expressly prohibits the following:

> the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor . . .

11 U.S.C. § 362(a)(7).

32.     Although the automatic stay is intended to protect a debtor from interference with its efforts to successfully reorganize and to prevent certain creditors from gaining an unfair distribution in respect of their claims against the debtor, "upon request of a party in interest and after notice and a hearing" the Court is empowered to grant relief from the stay in order to effectuate a setoff.  11 U.S.C. § 362(d).  In fact, "[t]he automatic stay does not defeat the right of setoff, rather it 'merely stays its enforcement pending an orderly examination of the debtor's and creditor's rights.'"  In re Luz International, Ltd., 219 B.R. 837, 841 (9th Cir. BAP 1998) (internal citations omitted).  Upon establishing its right to setoff, a party "makes a prima facie showing of 'cause' for relief from stay."  United States v. Orlinski (In re Orlinski), 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991).

33.     As set forth in the Memorandum of Law, courts frequently grant relief from the automatic stay to allow parties to effectuate a setoff.  See, e.g., In re Nuclear Imaging Sys., Inc., 260 B.R. 724 (Bankr. E.D. Pa. 2000).  Moreover, at the request of the Debtors' in these chapter 11 cases, the Court has authorized the Debtors and their non-Debtor affiliates to set off prepetition and postpetition obligations arising on account of intercompany transactions between a Debtor and another Debtor, or between a Debtor and a non-Debtor, thereby establishing precedent and the law of the case.  See Interim Order Under 11 U.S.C. §§ 363 and 553 Authorizing (I) Continued Maint. of Existing Bank Accounts, (II) Continued Use of Existing Cash Mgmt. Sys., (III) Continued Use of Existing Bus. Forms, (IV) Pres. and Exercise of Intercompany Setoff Rights, and (V) Grant of Admin. Priority Status for Postpetition Intercompany Transactions, Oct. 14, 2005.

34. If Delphi is unable to satisfy its burden of providing General Motors adequate protection of its right of setoff and security interest in the General Motors Prepetition Payable, cause exists to terminate the automatic stay and permit setoff of the General Motors Prepetition Claims against the General Motors Prepetition Payable. Under such circumstances, without relief from the automatic stay to effectuate General Motors' secured setoff rights, General Motors will effectively be forced to waive its security interest in the General Motors Prepetition Payable — a result in contravention of the rights afforded General Motors and all secured claimholders under the Bankruptcy Code and applicable nonbankruptcy law.

## Memorandum of Law

35. Contemporaneously herewith, General Motors has filed the Memorandum of Law in support of the Motion, pursuant to Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York.

## Notice

36. Notice of this Motion has been provided pursuant to this Court's Order, dated October 14, 2005, establishing notice procedures in the chapter 11 cases.

37. General Motors submits that no other or further notice need be provided.

38. No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE General Motors respectfully requests that the Court enter an order granting (i) (a) adequate protection of property interests and setoff rights pursuant to sections 363(e), 506, and 553 of the Bankruptcy Code and Bankruptcy Rules 4001(a) and 9014 and (b) relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to set off certain prepetition warranty (subject to the cap described above), overpricing, and ordinary course claims or, (ii) in the alternative, relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to set off prepetition amounts owing between General Motors and Delphi, and such other and further relief as is just.

Dated:  October 26, 2005
        New York, New York

/s/ Michael P. Kessler
Martin J. Bienenstock, Esq. (MB 3001)
Michael P. Kessler, Esq. (MK 7134)
Jeffrey L. Tanenbaum, Esq. (JT 9797)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

– and –

Robert B. Weiss, Esq.
Frank L. Gorman, Esq.
HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226-3506
Telephone: (313) 465-7000
Facsimile: (313) 465-8000

Attorneys for General Motors Corporation