UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x

In re                                    :
                                         :        Chapter 11 Case No.
                                         :
DELPHI CORPORATION, et al.,              :        05-44481 (RDD)
                                         :
            Debtors.                     :        (Jointly Administered)
                                         :
---------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER GRANTING GENERAL MOTORS CORPORATION (I) (A) ADEQUATE PROTECTION OF PROPERTY INTERESTS AND SETOFF RIGHTS PURSUANT TO SECTIONS 363(e), 506, AND 553 OF THE BANKRUPTCY CODE AND RULES 4001(a) AND 9014 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE AND (B) RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE TO SET OFF CERTAIN PREPETITION WARRANTY, OVERPRICING, AND ORDINARY COURSE CLAIMS OR, (II) IN THE ALTERNATIVE, RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE TO SET OFF PREPETITION AMOUNTS BETWEEN GENERAL MOTORS CORPORATION AND DELPHI CORPORATION

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
Martin J. Bienenstock (MB 3001)
Michael P. Kessler (MK 7134)
Jeffrey L. Tanenbaum (JT 9797)

– and –

HONIGMAN MILLER SCHWARTZ
AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226-3506
Telephone: (313) 465-7000
Facsimile: (313) 465-8000
Robert B. Weiss, Esq.
Frank L. Gorman, Esq.

Attorneys for General Motors Corporation

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ........................................................................................ 1

FACTS .......................................................................................................................... 3

ARGUMENT .................................................................................................................. 3

I. GENERAL MOTORS HAS VALID RIGHTS OF SETOFF AND IS A
    SECURED CLAIMHOLDER .................................................................................. 3

    A. THE DOCTRINE OF SETOFF ......................................................................... 3

    B. THE BANKRUPTCY CODE AND APPLICABLE
        NONBANKRUPTCY LAW RECOGNIZE GENERAL
        MOTORS' SECURED SETOFF RIGHTS ................................................. 6

        1. MUTUALITY ........................................................................................ 10

II. GENERAL MOTORS SHOULD BE GRANTED ADEQUATE
    PROTECTION .................................................................................................... 12

III. RELIEF FROM THE AUTOMATIC STAY TO PERMIT ORDINARY
    COURSE SETOFF IS APPROPRIATE ............................................................... 15

IV. ALTERNATIVE RELIEF ...................................................................................... 18

CONCLUSION ............................................................................................................. 22

# TABLE OF AUTHORITIES

**Cases**                                                                                                    Page(s)

In re 354 E. 66th St. Realty Corp., 177 B.R. 776 (Bankr. E.D.N.Y. 1995).................................13

In re Acad. Answering Servs., Inc., 90 B.R. 294, 295 (Bankr. N.D. Ohio 1988),
rev'd on other grounds, 100 B.R. 327 (N.D. Ohio 1989) ......................................... 18-19

Am. Cent. Airlines v. Dep't of Transp. (In re Am. Cent. Airlines, Inc.),
60 B.R. 587 (Bankr. N.D. Iowa 1986) ..........................................................................15

Bank of N.Y. v. Treco (In re Treco), 240 F.3d 148 (2d Cir. 2001) ...................................5

Biggs v. Stovin (In re Luz Int'l, Ltd.), 219 B.R. 837 (B.A.P. 9th Cir. 1998) ...............20

Citizens Bank of Md. v. Strumpf, 516 U.S. 16 (1995) ......................................................4

In re Coleman, 52 B.R. 1 (Bankr. S.D. Ohio 1985)................................................... 17-18

In re Continental Airlines, 152 B.R. 420 (Bankr. D. Del. 1993) ....................................19

E. Airlines, Inc. v. Chem. Bank, Inc., Case No. 95-3981,
1997 U.S. Dist. LEXIS 7380 (Bankr. S.D.N.Y. May 27, 1997)......................................9

Farmers Home Admin v. Buckner (In re Buckner), 66 F.3d 263 (10th Cir. 1995) ........5

In re Flanagan Bros. Inc., 47 B.R. 299 (Bankr. D.N.J. 1985)........................................18

In re Gibson, 308 B.R. 763 (Bankr. N.D. Tex. 2002)....................................................20

Gordan Sel-Way, Inc. v. United States (In re Gordan Sel-Way, Inc.),
270 F.3d 280 (6th Cir. 2001) ...........................................................................................4

Hansman v. Imlay City St. Bank, 328 N.W.2d 652, (Mich. Ct. App. 1982)...................7

Harvis Trien & Beck, P.C. v. Federal Home Loan Mortgage Corp.
(In re Blackwood Assocs., L.P.), 153 F.3d 61 (2d Cir. 1998) ................................. 13-14

In re Heatron, Inc., 6 B.R. 493 (Bankr. W.D. Mo. 1980) .............................................13

King v. Fulbright & Jaworski, LLP (In re Koch), 224 B.R. 572
(Bankr. E.D. Va. 1998) .....................................................................................................9

MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393 (10th Cir. 1987)................13

Mahesh v. Mills, 602 N.W.2d 618, 237 Mich. App. 359 (Mich. Ct. App. 1999)............................6

Malinowski v. N.Y. State Dep't of Labor (In re Malinowski),
156 F.3d 131 (2d Cir. 1998) ...............................................................................................15

Martin v. United States (In re Martin), 761 F.2d 472 (8th Cir. 1985) ............................................13

In re McLean Indus. Inc., 90 B.R. 614 (Bankr. S.D.N.Y. 1988) ......................................................4

Metro. Life Ins. Co. v. Murel Holding Corp.
(In re Murel Holding Corp.), 75 F.2d 941 (2d Cir. 1935) ..............................................14

Mich. Bell Telegraph Co. v. Airtouch Cellular, Inc., Case No. 00-70034,
2002 U.S. Dist. LEXIS 6569 (E.D. Mich. Mar. 27, 2002) ............................................6

Mich. Consol. Gas Co. v. Fred Sanders Co. (In re Fred Sanders Co.),
33 B.R. 310 (Bankr. E.D. Mich. 1983)...........................................................................5

Newbery Elec., Inc. v. Fireman's Fund Ins. Co. (In re Newbery Corp.),
95 F.3d 1392 (9th Cir. 1996) .........................................................................................16

In re New Haven Foundry, Inc., 285 B.R. 646 (Bankr. E.D. Mich. 2002)........................... 4, 5, 6,
......................................................................................................................................7, 8, 20

Norfolk Shipbuilding & Drydock Corp. v. Carlye (In re Carlye),
242 B.R. 881 (Bankr. E.D. Va. 1999)............................................................................10

In re NTG Indus., Inc., 103 B.R. 195 (Bankr. N.D. Ill. 1989).......................................................20

In re Nuclear Imaging Sys., Inc., 260 B.R. 724 (Bankr. E.D. Pa. 2000) ....................................7, 21

Official Comm. of Unsecured Creditors v. Mfrs. &Traders Trust Co.
(In re Bennett Funding Group, Inc.), 212 B.R. 206 (B.A.P. 2d Cir. 1997),
aff'd, 146 F.3d 136 (2d Cir. 1998)..........................................................................4, 8, 9, 20

Reed v. Citizens Ins. Co. of Am., 499 N.W.2d 22 (Mich. Ct. App. 1993).....................................5

Scherling v. Hellman Elec. Corp. (In re Westchester Structures, Inc.),
181 B.R. 730 (Bankr. S.D.N.Y. 1995)........................................................................4, 5

Siciliano v. Mueller, Case No. 222258, 2001 WL. 1699801
(Mich. Ct. App. Dec. 28, 2001) ......................................................................................6

United States v. Orlinski (In re Orlinski), 140 B.R. 600 (Bankr. S.D. Ga. 1991) ...................18, 20

Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.),
973 F.2d 1065 (3d Cir. 1992) ...............................................................................15, 16

U.S. Aeroteam v. Delphi Auto. Sys., LLC, (In re U.S. Aeroteam),
Adv. Case No. 04-3047, 2005 Bankr. LEXIS 1900 (Bankr. S.D. Ohio 2005) ............................20

Walker v. Farmers Ins. Exch., 572 N.W.2d 17 (Mich. Ct. App. 1997) ...........................................7

In re Waste Conversion Techs., Inc., 205 B.R. 1004 (D. Conn. 1997) .........................................13

In re Whitaker, 173 B.R. 359 (Bankr. S.D. Ohio 1994) ...............................................................20

In re WorldCom, Inc., 304 B.R. 611 (Bankr. S.D.N.Y. 2004) ..................................................4, 13

## **Statutes**

11 U.S.C. § 101 ...........................................................................................................8n.3

11 U.S.C. § 101(5) .......................................................................................................8n.3

11 U.S.C. § 361....................................................................................... 2, 11, 12-13, 13, 14

11 U.S.C. § 362............................................................................................................3, 12, 19

11 U.S.C. § 362(a) ........................................................................................................11

11 U.S.C. § 362(a)(7)....................................................................................................19

11 U.S.C. § 362(d) ..............................................................1, 2, 3, 15, 16, 17, 19, 22

11 U.S.C. § 363....................................................................................................1, 3, 12, 21

11 U.S.C. § 363(e) .............................................................1, 2, 11, 12, 13, 14, 21

11 U.S.C. § 364.............................................................................................................12

11 U.S.C. § 503(b)(1) ...................................................................................................12

11 U.S.C. § 506...........................................................................................................1, 21

11 U.S.C. § 506(a) ....................................................................................................2, 5, 6

11 U.S.C. § 553.............................................................................1, 2, 3, 4, 5, 6,
.............................................................................................................8, 16, 18, 21

11 U.S.C. § 553(a) ................................................................................................................3, 21


**Rules**

Fed. R. Bankr. P. 4001(a) ...........................................................................................................1

Fed. R. Bankr. P. 9014................................................................................................................1


**Other Authorities**

5 COLLIER ON BANKRUPTCY at 506.03 (15th Ed. Rev. 2005)............................................................5

5 COLLIER ON BANKRUPTCY at 553.03[1] (15th Ed. Rev. 2005) .......................................................9

5 COLLIER ON BANKRUPTCY at 553.03[3][a] (15th Ed. Rev. 2005)................................................10

Interim Order Under 11 U.S.C. §§ 363 and 553 Authorizing (I)
Continued Maint. of Existing Bank Accounts, (II) Continued
Use of Existing Cash Mgmt. Sys., (III) Continued Use of
Existing Bus. Forms, (IV) Pres. and Exercise of Intercompany
Setoff Rights, and (V) Grant of Admin. Priority Status for
Postpetition Intercompany Transactions, Oct. 14, 2005 ....................................................... 20-21

General Motors Corporation ("General Motors"), respectfully submits this memorandum of law in support of its motion (the "Motion") for entry of an order granting (i) (a) adequate protection of property interests and setoff rights pursuant to sections 363(e), 506, and 553 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 4001(a) and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and (b) relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to set off certain warranty, overpricing, and prepetition ordinary course claims or, (ii) in the alternative, granting relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code to set off prepetition amounts owing between General Motors and Delphi Corporation (f/k/a Delphi Automotive Systems Corporation) ("Delphi").

## PRELIMINARY STATEMENT

General Motors and Delphi, a debtor in these chapter 11 cases, are parties to the Component Supply Agreement and various Purchase Agreements[1] pursuant to which Delphi manufactures and sells to General Motors automotive parts and systems.  In accordance with the Purchase Agreements and several other agreements and/or transactions between the parties, General Motors has numerous and large prepetition claims against Delphi.  Additionally, General Motors owes prepetition payables (not yet due in the ordinary course) to Delphi in the amount of approximately $1.15 billion for prepetition deliveries under the Purchase Agreements.

---

[1] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to such terms in the Motion.

In accordance with applicable law and section 553 of the Bankruptcy Code, subject to the automatic stay, General Motors has a right to offset its prepetition payables against its allowable prepetition claims and nothing in title 11 affects its setoff rights. Pursuant to section 506(a) of the Bankruptcy Code, the claims of General Motors against Delphi are secured by Delphi's prepetition receivables due from General Motors.

By its Motion filed contemporaneously herewith, General Motors is not seeking to withhold or set off immediately its prepetition payables against its prepetition claims. To the contrary, to facilitate the Debtors' acquisition of postpetition financing, General Motors is prepared to pay in the ordinary course its obligations to Delphi as they come due, subject to its right pursuant to section 363(e) of the Bankruptcy Code to obtain adequate protection provided in section 361 of the Bankruptcy Code to protect its interests in its prepetition payables and preserve its setoff rights. Moreover, General Motors would agree to limit its setoff rights and unstayed recoupment rights in connection with its Warranty Claims to an aggregate of no more than $50 million per month. The relief sought in the Motion by General Motors maintains the status quo, and merely preserves the rights that General Motors has specifically bargained for and is afforded under the Bankruptcy Code and applicable nonbankruptcy law.

If the Debtors cannot provide General Motors with adequate protection of its security interest in Delphi's prepetition receivables due from General Motors, however, General Motors seeks, in the alternative, relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code. Without provision of adequate protection mandated by section 363(e) of the Bankruptcy Code, payment to Delphi of prepetition receivables due from General Motors would result in the total loss of General Motors'

2

security interest in Delphi's receivables — an outcome that is inconsistent with the

Bankruptcy Code and applicable nonbankruptcy law.  Consequently, if adequate

protection is lacking, cause exists to modify the automatic stay pursuant to section 362(d)

of the Bankruptcy Code to permit setoff of General Motors Prepetition Payable against

General Motors Prepetition Claims.

## FACTS

Except to the extent supplemented below, the pertinent facts underlying

this memorandum are set forth in the Motion and are incorporated by reference herein as

if fully set forth at length.

## ARGUMENT

### I.

### GENERAL MOTORS HAS VALID RIGHTS
### OF SETOFF AND IS A SECURED CLAIMHOLDER

**A.**      **The Doctrine of Setoff**

Section 553 of the Bankruptcy Code provides, in pertinent part:

> Except as otherwise provided in this section and in sections
> 362 and 363 of this title, this title does not affect any right
> of a creditor to offset a mutual debt owing by such creditor
> to the debtor that arose before the commencement date . . .
> against a claim of such creditor against the debtor that arose
> before the commencement date of the case . . .

11 U.S.C. § 553(a).  As the United States Supreme Court has explained,

> The right of setoff (also called 'offset') allows entities that
> owe each other money to apply their mutual debts against
> each other, thereby avoiding the 'absurdity of making A
> pay B when B owes A.'  Although no federal right of setoff
> is created by the Bankruptcy Code, 11 U.S.C. § 553(a)
> provides that, with certain exceptions, whatever right of
> setoff otherwise exists is preserved in bankruptcy.

Citizens Bank of Md. v. Strumpf, 516 U.S. 16, 18 (1995) (internal citations omitted)

(holding that to protect its right to setoff, a creditor may temporarily withhold payment of

a debt it owes to a debtor without violating the automatic stay); see also Gordan Sel-Way,

Inc. v. United States of Am. (In re Gordan Sel-Way, Inc.), 270 F.3d 280, 290 (6th Cir.

2001); In re New Haven Foundry, Inc., 285 B.R. 646, 647 (Bankr. E.D. Mich. 2002);

Scherling v. Hellman Elec. Corp.(In re Westchester Structures, Inc.), 181 B.R. 730, 738-

39 (Bankr. S.D.N.Y. 1995) (noting that section 553 of the Bankruptcy Code is not "an

independent source of rights," but "merely preserves for the benefit of the creditor, any

right to setoff that the creditor had under applicable nonbankruptcy law . . .").

    Thus, while section 553 of the Bankruptcy Code itself does not confer any

substantive right of setoff, it does safeguard a creditor's right of setoff under

nonbankruptcy law.  See, e.g., Gordon Sel-Way, Inc., 270 F.3d at 290; Official Comm. of

Unsecured Creditors v. Mfrs. & Traders Trust Co. (In re Bennett Funding Group, Inc.),

212 B.R. 206 (B.A.P. 2d Cir. 1997), aff'd,  146 F.3d 136 (2d Cir. 1998); In re

WorldCom, Inc., 304 B.R. 611, 619 (Bankr. S.D.N.Y. 2004).  Accordingly, in

determining whether a right of setoff exists, the Court must look to "the law of the state

where the relevant facts transpired."  Id. at 619 (citing Westchester Structures, Inc., 181

B.R. at 740); see also New Haven Foundry, Inc., 285 B.R. at 648 ("[S]tate law governs

the substance of a setoff claim under § 553); In re McLean Indus. Inc., 90 B.R. 614, 618

(Bankr. S.D.N.Y. 1988) ("A creditor seeking to setoff a debt under Title 11, therefore

must establish a claim and a right to setoff by applying the law of the state where the

operative facts occurred.").

    Once a creditor establishes a valid right of setoff under applicable

nonbankruptcy law, courts must turn their attention to section 553 of the Bankruptcy

Code which provides that the debts subject to setoff must be "both mutual and

prepetition." Westchester Structures, Inc., 181 B.R. at 738-39; see also Mich. Consol.

Gas Co. v. Fred Sanders Co. (In re Fred Sanders Co.), 33 B.R. 310, 311 (Bankr. E.D.

Mich. 1983); New Haven Foundry, Inc, 285 B.R. at 648. While "mutuality" is not

defined in the Bankruptcy Code, courts have interpreted it to mean debts which are owed

between the same parties, acting in the same capacity. See, e.g., Westchester Structures,

Inc., 181 B.R. at 738-39 ("Debts are mutual when the debts and credits are in the same

right and are between the same parties, standing in the same capacity."); Reed v. Citizens

Ins. Co. of Am., 499 N.W. 2d 22, 25 (Mich. Ct. App. 1993) (defining mutuality to mean

"that both parties to an agreement are bound or neither is bound, that is, mutuality is not

present where one party is bound to perform, but the other is not").

       A valid right of setoff entitles the holder of such right to a secured claim.

Specifically, section 506(a) of the Bankruptcy Code provides, in pertinent part:

> An allowed claim of a creditor . . . that is subject to setoff
> under section 553 of this title, is a secured claim . . . to the
> extent of the amount subject to setoff . . . and is an
> unsecured claim to the extent . . . the amount so subject to
> setoff is less than the amount of such allowed claim.

11 U.S.C. § 506(a). Accordingly, if a creditor has a right of setoff, its claim is deemed

secured to the extent of the right of setoff. Bank of N.Y. v. Treco (In re Treco), 240 F.3d

148 (2d Cir. 2001); see also Farmers Home Admin v. Buckner (In re Buckner), 66 F.3d

263, 265 n.3 (10th Cir. 1995) (same); 5 COLLIER ON BANKRUPTCY at 506.03 (15th Ed. Rev.

2005) ("By treating the right of setoff as a secured claim under section 506(a), Congress

intended to encourage creditors to refrain from exercising the right immediately before

the debtor commences a case under the Code."). Notably, General Motors has refrained

from setting off against Delphi, notwithstanding Delphi's repeated public disclosures of

the possibility it would commence chapter 11 cases. As such, the amounts owed by

Delphi to General Motors with respect to the General Motors Prepetition Claims,

represent collateral for the amounts owed to Delphi by General Motors.

**B.      The Bankruptcy Code and Applicable Nonbankruptcy
          Law Recognize General Motors' Secured Setoff Rights**

Pursuant to section 553 of the Bankruptcy Code and applicable

nonbankruptcy law, General Motors has a right to set off, subject to the automatic stay,

the General Motors Prepetition Payable against the General Motors Prepetition Claims.

To protect its right of setoff, and in accordance with section 506(a) of the Bankruptcy

Code, General Motors is entitled to adequate protection of its secured setoff claims.

The Component Supply Agreements, Purchase Agreements,[2] U.S.

Employee Matters Agreement, and Indemnity Agreement each provide that such

agreement shall be construed and enforced in accordance with the laws of the State of

Michigan. In Michigan, setoff is an equitable right under common law. See In re New

Haven Foundry, Inc., 285 B.R. 646 (Bankr. E.D. Mich. 2002); see also Mich. Bell Tel.

Co. v. Airtouch Cellular, Inc., Case No. 00-7734, 2002 U.S. Dist. LEXIS 6569 *22-23

(E.D. Mich. March 27, 2002) (acknowledging Michigan common law right to setoff);

Mahesh v. Mills, 602 N.W.2d 618, 620 (Mich. Ct. App. 1999) (same); Walker v. Farmers

---

[2] Paragraph 29 of the Terms and Conditions provides that the Purchase Agreements are to be governed by the law of the state from which the Purchase Agreement issues as shown by the address of Buyer on the face side of the Purchase Agreement. The Purchase Agreements are issued from the offices of General Motors' Global Purchasing and Supply Chain Management operations in Michigan.

Ins. Exch., 572 N.W.2d 17 (Mich. Ct. App. 1997) (same); Hansman v. Imlay City St.

Bank, 328 N.W.2d 653 (Mich. Ct. App. 1982) (same).  As recently set forth in Siciliano

v. Mueller, Case No. 222258, 2001 WL 1699801 (Mich. Ct. App. Dec. 28, 2001), the law

in Michigan regarding setoff provides:

> Generally, the setoff and the action must be between the
> same parties and in the same capacity or right, and the court
> can look through the transactions and nominal parties to
> determine the real parties in interest. A setoff requires a
> mutuality of debt between the same real parties in interest,
> where the demands of the mutually indebted parties are
> setoff against each other and only the balance recovered.
> However, setoff rests on opposing claims that are
> enforceable in their own right. A claim for setoff need not
> arise out of the same transaction as that sued on. If the
> parties are mutually indebted, there may be a setoff
> regardless of whether the debt arises out of the same
> contract or transaction.

Id. at *6 (citations omitted).

The "same parties" requirement quite literally refers to the identity of the

parties, whereas the concept of "capacity" is satisfied where the same parties owe

something to each other in their individual capacity, rather than in the capacity of an

agent, fiduciary, or trustee.  New Haven Foundry, Inc., 285 B.R. at 648 (citing In re

Nuclear Imaging Sys., Inc., 260 B.R. 724, 734-35 (Bankr. E.D. Pa. 2000) (quotation

omitted)).  "Mutuality requires that the debts be owed between the same parties acting in

the same capacity but not necessarily the same character."  Id.  (citation omitted).

Finally, under Michigan law, setoff does not require that the debt(s) arise out of the same

contract or transaction.  Id. ("If the parties are mutually indebted, there may be a setoff

regardless of whether the debt arises out of the same contract or transaction.").

General Motors easily satisfies the conditions for setoff required under

Michigan law.  Specifically, the obligations in question — the General Motors

Prepetition Payable and the General Motors Prepetition Claims — are owed between the

same parties, General Motors and Delphi.  See New Haven Foundry, Inc., 285 B.R. at

648 (noting that the requirement that the obligations be owed between the same parties

refers to the identity of the parties).  The "capacity" requirement is fulfilled as General

Motors and Delphi each owe the other something in their own name, not as a fiduciary or

trustee.  Id.  Additionally, mutuality exists because the debts owed are "between the same

parties acting in the same capacity but not necessarily of the same character."  Id.

Finally, under Michigan law, setoff does not require that the debt(s) arise out of the same

contract or transaction and, therefore, all claims arising out of the various agreements and

transactions between General Motors and Delphi are subject to setoff.  Id. ("If the parties

are mutually indebted, there may be a setoff regardless of whether the debt arises out of

the same contract or transaction.").

Turning to section 553 of the Bankruptcy Code, in the first instance

General Motors has demonstrated that its right to set off exists under Michigan law.

Official Comm. of Unsecured Creditors v. Mfrs. &Traders Trust Co. (In re Bennett

Funding Group, Inc.), 212 B.R. 206, 212 (B.A.P. 2d Cir. 1997) (noting the requirement

that a creditor must demonstrate the right to set off exists under applicable nonbankruptcy

law).  Next, courts generally consider four conditions to determine whether a state law

right to set off is recognized and preserved by section 553 of the Bankruptcy Code: (1)

the creditor holds a "claim" against the debtor that arose prepetition;[3] (2) the creditor

"owes" a debt to the debtor that arose prepetition; (3) the claim and the debt are mutual;

and (4) the claim and the debt are each enforceable and valid.  See, e.g., 5 COLLIER ON

BANKRUPTCY at 553.03[1] (15th Ed. Rev. 2005); Bennett Funding Group, 212 B.R. at

212; King v. Fulbright & Jaworski, LLP (In re Koch), 224 B.R. 572, 576 (Bankr. E.D.

Va. 1998); E. Airlines, Inc. v. Chemical Bank, Inc., Case No. 95-3981, 1997 U.S. Dist.

LEXIS 7380, at *5 (Bankr. S.D.N.Y. 1997).  Here, the four conditions are clearly

satisfied:

  ✓ General Motors holds claims (the General Motors Prepetition Claims) against
    Delphi that arose prepetition;

  ✓ General Motors owes a debt (the General Motors Prepetition Payable) to
    Delphi that arose prepetition;

  ✓ the General Motors Prepetition Claims and the General Motors Prepetition
    Payable are mutual — both General Motors and Delphi are bound by the
    terms of the Purchase Agreements, U.S. Employee Matters Agreement, and
    Indemnity Agreement;[4] and

  ✓ the General Motors Prepetition Claims and the General Motors Prepetition
    Payable are enforceable and valid, in that the General Motors Prepetition
    Claims and the General Motors Prepetition Payable arise out of legally
    binding agreements.

---

[3] Section 101 of the Bankruptcy Code defines "claim" as any "right of payment, whether
or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent,
matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . ."
11 U.S.C. § 101(5).  The concept of "claim" is intended to encompass virtually any type
of obligation reducible to some monetary equivalence.

[4] In addition to the Component Supply Agreement, Purchase Agreements, U.S. Employee
Matters Agreement, and Indemnity Agreement, General Motors and Delphi are parties to
other executory contracts and/or leases pursuant to which General Motors may assert
setoff rights, including, without limitations, claims for prepetition obligations and, if
Delphi were to reject one or more of such executory contracts and/or leases, Rejection
Damage Claims.

9

Consequently, General Motors has satisfied, with respect to the General Motors

Prepetition Claims, the standard for setoff of claims under section 553 of the Bankruptcy

Code.

### 1.    Mutuality

As discussed above, "mutuality," which is not defined in the Bankruptcy

Code, is generally held to mean that the prepetition claim and prepetition debt must be

owed between the same parties and the parties must be acting in the same capacity.  See,

e.g., 5 COLLIER ON BANKRUPTCY at 553.03[3][a] (15th Ed. Rev. 2005); Norfolk

Shipbuilding & Drydock Corp. v. Carlye (In re Carlye), 242 B.R. 881 (Bankr. E.D. Va.

1999).  Here, the only contracting parties in connection with the General Motors

Prepetition Claims and the General Motors Prepetition Payables are General Motors and

Delphi.[5]

Delphi is the sole Debtor from whom General Motors purchased

automotive parts and systems under the Purchase Agreements; however, even if that were

not the case, General Motors' holds rights of setoff with any Debtor seller ("Seller")

under the Purchase Agreements.  As set forth in detail in the Motion, pursuant to

paragraph 23 of the Terms and Conditions, General Motors has, among other things, the

right to set off amounts due from Seller's affiliates against any amounts due from General

Motors to Seller.  Thus, the Purchase Agreements render each Seller liable to satisfy the

---

[5] As discussed above, see supra note 4, General Motors and Delphi are parties to other
executory contracts and/or leases pursuant to which General Motors may assert setoff
rights.  In addition, General Motors may also be party to certain other agreements with
other Debtors or affiliates of Delphi, and affiliates of General Motors may be parties to
other agreements with certain Debtors.

debts of all other Delphi entities to General Motors to the extent General Motors owes

money to the Seller.  Accordingly, to the extent any of the Debtors other than Delphi

provided automotive parts and systems to General Motors, General Motors has a right of

setoff secured by the General Motors receivable(s) of such Debtor(s).[6]

In light of the foregoing, General Motors has a right to set off, subject to

the automatic stay, the General Motors Prepetition Claims against the General Motors

Prepetition Payable, and General Motors is a secured creditor under sections 553(a) and

506 of the Bankruptcy Code with a lien on the General Motors Prepetition Payable.

Since the automatic stay pursuant to section 362(a) of the Bankruptcy Code prevents

General Motors from exercising its setoff rights against the Debtors, General Motors is

entitled to adequate protection of its security interest in the General Motors Prepetition

Payable pursuant to sections 361 and 363(e) of the Bankruptcy Code.  Moreover, to

protect General Motors' secured setoff rights under the circumstances noted above,

General Motors seeks adequate protection from all the Debtors, including Delphi.  The

adequate protection sought by General Motors does not impair the Debtors or adversely

affect their ability to reorganize.  It permits the Debtors and other parties in interest to

---

[6] Certain foreign affiliates of General Motors (each, a "GM Purchaser") purchase
automotive parts and systems from non-Debtor affiliates of the Debtors (each, a "Non-
Debtor Seller") pursuant to purchase agreements (the "Foreign Purchase Agreements")
that provide, among other things, that the GM Purchaser may set off from its payments
owed to the Non-Debtor Seller any amounts due to the GM Purchaser and its affiliates
from the Non-Debtor Seller and its affiliates.  In other words, in accordance with the
Foreign Purchase Agreements, a Non-Debtor Seller is liable to satisfy the debts of other
Delphi entities (including Delphi and other Debtors) to General Motors and its affiliates.
As of the date hereof, GM Purchasers have not exercised this right; however, General
Motors and its affiliates reserve all their rights with respect to Non-Debtor Sellers under
the Foreign Purchase Agreements and applicable law.

devote their resources to the critical issues of their chapter 11 cases and preserves the

status quo until the appropriate time to address General Motors' claims and setoff rights.

## II.

### GENERAL MOTORS SHOULD BE GRANTED ADEQUATE PROTECTION

Section 363(e) of the Bankruptcy Code provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. § 363(e).

Section 361 of the Bankruptcy Code, in turn, provides examples of what

constitutes "adequate protection:"

> When adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by –

> (1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of such entity's interest in such property;

> (2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of such entity's interest in such property; or

> (3) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will result in the realization by such entity of the indubitable equivalent of such entity's interest in such property.

12

11 U.S.C. § 361.  Thus, periodic cash payments, additional or replacement liens, and such

other relief as will provide the "indubitable equivalent" of the interest constitute adequate

protection.  The concept of adequate protection is to be decided flexibly on a case by case

basis.  See MBank Dallas, N.A. v. O'Connor (In re O'Connor), 808 F.2d 1393, 1396-97

(10th Cir. 1987); Martin v. United States (In re Martin), 761 F.2d 472 (8th Cir. 1985).

Adequate protection is "recognized as a fundamental right afforded

secured creditors in bankruptcy proceedings."  In re Waste Conversion Techs., Inc., 205

B.R. 1004, 1007 (D. Conn. 1997).  As recently set forth by this Court and in accordance

with the legislative history of section 361 of the Bankruptcy Code, the purpose of

adequate protection "is to insure that a secured creditor receives the value for which the

creditor bargained for prior to the debtor's bankruptcy."  In re WorldCom, Inc., 304 B.R.

611, 618-19 (Bankr. S.D.N.Y. 2004) (citations omitted).  Moreover, adequate protection

is intended to maintain the status quo between the petition date and before confirmation

or rejection of the plan.  In re 354 E. 66th St. Realty Corp., 177 B.R. 776, 781 (Bankr.

E.D.N.Y. 1995).

The court's duty to provide adequate protection is mandatory.  See 11

U.S.C. § 363(e) ("the court . . . shall prohibit or condition such use, sale, or lease as is

necessary to provide adequate protection") (emphasis added); see also In re Heatron, Inc.,

6 B.R. 493 (Bankr. W.D. Mo. 1980).  As set forth by the United States Court of Appeals

for the Second Circuit, the Bankruptcy Code "deliberately protects and preserves the

interests of secured creditors in property in which they have a security interest, and

accordingly takes the concept of adequate protection very seriously."  Harvis Trien &

Beck, P.C. v. Fed. Home Loan Mortgage Corp. (In re Blackwood Assocs., L.P.), 153

13

F.3d 61, 68 (2d Cir. 1998); see also Metro. Life Ins. Co. v. Murel Holding Corp. (In re Murel Holding Corp.), 75 F.2d 941 (2d Cir. 1935).

General Motors has established a security interest in the General Motors Prepetition Payable and the right to set off, subject to the automatic stay, the General Motors Prepetition Claims as against the General Motors Prepetition Payable.  General Motors is not seeking to withhold or set off immediately the General Motors Prepetition Payable against the General Motors Prepetition Claims and is prepared to pay in the ordinary course its obligations to Delphi as they come due, subject to its right under the Bankruptcy Code to obtain adequate protection.  General Motors is entitled pursuant to section 363(e) of the Bankruptcy Code to obtain adequate protection provided in section 361 of the Bankruptcy Code to protect its interests in the General Motors Prepetition Payable and preserve its setoff rights.  The adequate protection requested by General Motors will provide the "indubitable equivalent" of the General Motors' secured setoff rights as against the General Motors Prepetition Payable and, therefore, constitute adequate protection of its property interests and setoff rights.

As noted above, the adequate protection requested by General Motors does not impair the Debtors or adversely affect their ability to reorganize.  Rather, the relief sought by General Motors will permit the Debtors and other parties in interest to devote their resources to the critical issues of their chapter 11 cases, while preserving the status quo as between General Motors and the Debtors.  Indeed, to facilitate the Debtors' acquisition of postpetition financing, General Motors has constructed its request for adequate protection in a manner that contemplates the priming of its setoff rights by the postpetition lenders if General Motors is granted a second lien against the estate to secure

14

its allowable setoff claim.  General Motors is further proposing to limit its setoff rights

and unstayed recoupment rights in connection with its Warranty Claims to an aggregate

of no more than $50 million per month.

### III.

### RELIEF FROM THE AUTOMATIC STAY TO PERMIT ORDINARY COURSE SETOFF IS APPROPRIATE

As set forth in the Motion, General Motors routinely and in the ordinary

course recoups and/or offsets amounts that Delphi owes General Motors for Ordinary

Course Claims, including, without limitation, short shipments and damaged goods.

General Motors is also entitled to recoup the Overpricing Claims and Warranty Claims

from its payables to Delphi.

Recoupment is "the setting up of a demand arising from the same

transaction as the plaintiff's claim or cause of action, strictly for the purpose of abatement

or reduction of such claim."  Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr.), 973

F.2d 1065, 1079 (3d Cir. 1992).  The doctrine of recoupment differs from setoff "mainly

in that the claim must grow out of the identical transaction that furnishes plaintiff's cause

of action and, being in the nature of a claim of right to reduce the amount demanded, can

be had only to an extent sufficient to satisfy plaintiff's claim."  In re Am. Cent. Airlines,

Inc., 60 B.R. 587, 590 (Bankr. N.D. Iowa 1986); see also Malinowski v. N.Y. State Dep't

of Labor (In re Malinowski), 156 F.3d 131 (2d Cir. 1998) (noting that the typical

situation in which recoupment can be invoked involves a credit and a debt arising out of a

transaction for the same goods or services).  Recoupment is an exception to the general

rule that debts which arise prepetition may not be satisfied postpetition without obtaining

15

relief from the automatic stay.  See Univ. Med. Ctr., 973 F.2d at 1079-81.  Accordingly,

the doctrine of recoupment is not subject to limitations on setoff contained in section 553

of the Bankruptcy Code.  As the relevant cases provide, "so long as a creditor's claim

arises out of the identical transaction as the debtor's, that claim may be offset against the

debt owed to the debtor, without concern for the limitations put on the doctrine of setoff

by Code section 553."  Id. at 1080.  See also Newbery Elec., Inc. v. Fireman's Fund Ins.

Corp. (In re Newbery Corp.), 95 F.3d 1392 (9th Cir. 1996).

        To the extent General Motors has rights of recoupment, the exercise of

such rights are not subject to the automatic stay.  Accordingly, as General Motors

believes the Overpricing Claims, Warranty Claims, and Ordinary Course Claims are

subject to recoupment, General Motors may recoup the Overpricing Claims, Warranty

Claims, and Ordinary Course Claims from the General Motors Prepetition Payable and/or

General Motors Postpetition Payable, as the case may be, without further order of the

Court.  As to the recoupment of Warranty Claims, however, General Motors will agree to

restrict the setoff and recoupment of such claims to an amount not to exceed an aggregate

of $50 million per month with respect to the General Motors Prepetition Payable and/or

the General Motors Postpetition Payable.

        Nonetheless, out of an abundance of caution, pursuant to section 362(d) of

the Bankruptcy Code, General Motors seeks relief from the automatic stay to set off the

Ordinary Course Claims, Overpricing Claims, and the Warranty Claims (up to a

maximum of $50 million per month for the Warranty Claims minus the amount of

Warranty Claims recouped in that month) from the General Motors Prepetition Payable

and/or General Motors Postpetition Payable, to the extent General Motors does not have a

16

right of recoupment with respect to such amounts.[7]

Section 362(d) of the Bankruptcy Code provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –

(1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

(2) with respect to a stay of an act against property under subsection (a) of this section, if –

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization . . . .

11 U.S.C. § 362(d).  Accordingly, this Court is authorized to grant the relief requested.

The setoffs of prepetition payables that General Motors is requesting permission to exercise are inherently equitable and critical to prevent overpayments.  In short, if General Motors cannot set off for such items as damaged goods or short shipments, it would be paying Delphi for undelivered or defective goods.  (Indeed, this is really recoupment.)  Moreover, General Motors is consenting to limit its right to recoup/setoff the Warranty Claims to no more than $50 million per month.

General Motors submits that ample cause exists to grant the relief requested.  As a threshold matter, the valid exercise of a right of setoff constitutes "cause" for relief from the automatic stay.  See, e.g., United States v. Orlinski (In re Orlinski), 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991); In re Coleman, 52 B.R. 1, 3 (Bankr.

---

[7] General Motors further reserves its rights to show that any other claims against the Debtors are subject to recoupment.

NY2:\1580018\08\XV5#08!.DOC\72240.5726

S.D. Ohio 1985); In re Flanagan Bros., Inc., 47 B.R. 299, 303 (Bankr. D.N.J. 1985).

Accordingly, the relief requested may be granted on this basis alone.

   The amounts General Motors anticipates to recoup in connection with the

Ordinary Course Claims, the Overpricing Claims, and the Warranty Claims are small in

the context of these cases and the Debtors' cash availability, and when compared to the

monthly General Motors' payables and the total amount of General Motors Prepetition

Claims that are entitled to setoff pursuant to section 553 of the Bankruptcy Code.

Recoupment and/or setoff of such claims, because of their relatively small amount, will

not adversely affect the Debtors or impair their efforts to reorganize.  Accordingly, relief

from the automatic stay should be granted.

## IV.

## ALTERNATIVE RELIEF

   If the Debtors are unable to adequately protect General Motors' secured

setoff rights in accordance with the relief requested in the Motion, General Motors seeks,

in the alternative, relief from the automatic stay pursuant to section 362(d) of the

Bankruptcy Code to permit the immediate setoff of the General Motors Prepetition

Claims against the General Motors Prepetition Payable.  Because the General Motors

Prepetition Claims exceed the General Motors Prepetition Payable, relief from the

automatic stay to permit setoff under these circumstances will relieve General Motors of

its obligation to pay the General Motors Prepetition Payable.

   Prior to effectuating a setoff, a creditor must obtain relief from the

automatic stay or must otherwise obtain an order allowing the setoff.  See In re Acad.

Answering Servs., Inc., 90 B.R. 294, 295 (Bankr. N.D. Ohio 1988), rev'd on other

NY2:\1580018\08\XV5#08!.DOC\72240.5726

grounds, 100 B.R. 327 (N.D. Ohio 1989).  Pursuant to section 362 of the Bankruptcy

Code, an automatic stay was in effect upon the commencement of the Debtors' chapter

11 cases.  The automatic stay expressly prohibits the following:

> the setoff of any debt owing to the debtor that arose before
> the commencement of the case under this title against any
> claim against the debtor . . .

11 U.S.C. § 362(a)(7).

Although the automatic stay is intended to protect a debtor from

interference with its efforts to successfully reorganize and to prevent certain creditors

from gaining an unfair distribution in respect of their claims against the debtor, pursuant

to section 362(d) of the Bankruptcy Code, courts are empowered to grant relief from the

stay to allow a setoff in order to prevent the automatic stay from unduly prejudicing

parties in interest.  See 11. U.S.C. § 362(d).  Specifically, section 362(d) of the

Bankruptcy Code provides, in pertinent part:

> On request of a party in interest and after notice and a hearing, the
> court shall grant relief from the stay provided under subsection (a) of this
> section, such as by terminating, annulling, modifying, or conditioning
> such stay –
>
> (1) for cause, including the lack of adequate protection of an
> interest in property of such party in interest;

11 U.S.C. § 362(d).  Although "cause" is not defined under the Bankruptcy Code, in

deciding whether to grant stay relief this Court has looked to "the policies underlying the

automatic stay in addition to the competing interests of the debtor and the movant."  In re

Continental Airlines, Inc., 152 B.R. 420, 424 (Bankr. D. Del. 1993).

General Motors submits that ample cause exists to grant the relief

requested.  As a threshold matter, the valid exercise of a right of setoff constitutes

"cause" for relief from the automatic stay.  Indeed, "[t]he automatic stay does not defeat

the right of setoff, rather it 'merely stays its enforcement pending an orderly examination

of the debtor's and creditor's rights.'"  Biggs v. Stovin (In re Luz Int'l, Ltd.), 219 B.R.

837, 841 (B.A.P. 9th Cir. 1998) (internal citations omitted); see also In re Whitaker, 173

B.R. 359 (Bankr. S.D. Ohio 1994) (granting relief from automatic stay upon cause shown

in order to effectuate setoff); In re NTG Indus., Inc., 103 B.R. 195 (Bankr. N.D. Ill. 1989)

(granting relief from automatic stay to allow creditor to setoff prepetition claims).

Upon establishing its right to setoff, a party "makes a prima facie showing

of 'cause' for relief from stay."  In re Orlinski, 140 B.R. at 603.  Once such a showing is

made, the burden shifts to the debtor to rebut the right to setoff or cause for relief from

the stay.  Courts frequently grant relief from the automatic stay to allow parties to

effectuate a setoff of prepetition debts.  See, e.g., U.S. Aeroteam v. Delphi Auto. Sys.,

LLC (In re U.S. Aeroteam), Adv. Case No. 04-3047, 2005 Bankr. LEXIS 1900 (Bankr.

S.D. Ohio 2005) (granting creditor relief from stay to set off prepetition debts where

creditor owed debtor for prepetition purchases and had prepetition claims against debtor);

New Haven Foundry, Inc., 285 B.R. 646 (granting creditor relief from stay to set off

prepetition receivables owed to creditor by debtor's affiliate against money owed to

debtor for parts purchased prepetition); In re Gibson, 308 B.R. 763 (Bankr. N.D. Tex.

2002); Nuclear Imaging Sys., Inc., 260 B.R. at 724 (granting the U.S. government relief

from the stay to set off payment of prepetition receivables due to debtor against the

debtors' prepetition tax liabilities); Bennett Funding Group, Inc., 146 F.3d at 136

(affirming decision granting creditor bank relief from the stay to set off against an

account maintained by debtor where creditor bank was owed a debt pursuant to a

prepetition agreement).

Moreover, at the request of the Debtors' in these chapter 11 cases, the Court has expressly authorized the Debtors and their non-Debtor affiliates to set off prepetition and postpetition obligations arising on account of intercompany transactions between a Debtor and another Debtor, or between a Debtor and a non-Debtor, thereby establishing precedent and the law of the case.  See Interim Order Under 11 U.S.C. §§ 363 and 553 Authorizing (I) Continued Maint. of Existing Bank Accounts, (II) Continued Use of Existing Cash Mgmt. Sys., (III) Continued Use of Existing Bus. Forms, (IV) Pres. and Exercise of Intercompany Setoff Rights, and (V) Grant of Admin. Priority Status for Postpetition Intercompany Transactions, Oct. 14, 2005.

As noted above, pursuant to section 553 of the Bankruptcy Code and Michigan law, General Motors has clearly established its right to set off the General Motors Prepetition Claims against the General Motors Prepetition Payable. Consequently, General Motors is a secured claimholder under sections 553(a) and 506 of the Bankruptcy Code with a lien on the General Motors Prepetition Payable.  Without the adequate protection requested in the Motion, payment by General Motors of the General Motors Prepetition Payable will result in the relinquishment of General Motors' secured rights of setoff.  If Delphi cannot, as mandated by section 363(e) of the Bankruptcy Code, adequately protect General Motors' security interest in the General Motors Prepetition Payable, the lack of adequate protection warrants relief from the automatic stay to allow the immediate setoff of the General Motors Prepetition Claims against the General Motors Prepetition Payable.

21

## CONCLUSION

The relief requested in the Motion, which is consistent with the pertinent provisions of the Bankruptcy Code and applicable nonbankruptcy law as set forth herein, adequately protects General Motors' right to set off the General Motors Prepetition Claims.  While the provision of adequate protection to General Motors under these circumstances is mandatory, the proposed adequate protection has no adverse or prejudicial effect on the Debtors' estates or the continued operations of their business.  In fact, an order granting the adequate protection to General Motors, as contemplated in the Motion, will contribute to the ultimate stabilization of the Debtors' business, as such relief will result in General Motors making timely payment of the General Motors Prepetition Payable without prior setoff (other than to the limited extent permitted by the Court).  Accordingly, the adequate protection requested by General Motors will simply maintain the status quo as between General Motors and the Debtors, and insure that General Motors, as a secured claimholder, receives the value for which it is entitled under applicable state law and the Bankruptcy Code, and for which it bargained prior to the Debtors' chapter 11 cases.

Without the provision of adequate protection as requested in the Motion, however, General Motors must be afforded relief from the automatic stay to effectuate the immediate setoff of the General Motors Prepetition Claims against the General Motors Prepetition Payable.  The lack of adequate protection constitutes "cause" for relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code; without such relief, General Motors will be deprived of the secured setoff rights to which it is entitled under the Bankruptcy Code and applicable state law.

22

Accordingly, General Motors respectfully requests entry of an order granting the relief requested in the Motion, and granting General Motors such other and further relief as is just.

Dated:  October 26, 2005
       New York, New York

/s/ Michale P. Kessler
Martin J. Bienenstock, Esq. (MB 3001)
Michael P. Kessler, Esq. (MK 7134)
Jeffrey L. Tanenbaum, Esq. (JT 9797)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

– and –

Robert B. Weiss, Esq.
Frank L. Gorman, Esq.
HONIGMAN MILLER SCHWARTZ
AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226-3506
Telephone: (313) 465-7000
Facsimile: (313) 465-8000

Attorneys for General Motors Corporation

23