6800093500
INDENTURE

DELPHI CORPORATION

AND

BANK ONE TRUST COMPANY, N.A.

TRUSTEE

INDENTURE

DATED AS OF OCTOBER 28, 2003

SUBORDINATED DEBT SECURITIES

6

## TABLE OF CONTENTS

PAGE

ARTICLE ONE DEFINITIONS ....................................................................... 1

    SECTION 1.01. DEFINITIONS. .......................................................... 1
    SECTION 1.02. NOTICE TO SECURITYHOLDERS ............................. 9

ARTICLE TWO ISSUE, EXECUTION, REGISTRATION AND EXCHANGE
    OF DEBT SECURITIES ...................................................................... 9

    SECTION 2.01. AMOUNT UNLIMITED; ISSUABLE IN SERIES. ..................... 9
    SECTION 2.02. FORM OF TRUSTEE'S CERTIFICATE OF
        AUTHENTICATION. ................................................................ 12
    SECTION 2.03. FORM, EXECUTION, AUTHENTICATION,
        DELIVERY AND DATING OF DEBT SECURITIES. ........................... 12
    SECTION 2.04. DENOMINATIONS; RECORD DATE. ...................... 14
    SECTION 2.05. EXCHANGE AND REGISTRATION OF TRANSFER
        OF DEBT SECURITIES. ............................................................ 15
    SECTION 2.06. TEMPORARY DEBT SECURITIES. ........................ 16
    SECTION 2.07. MUTILATED, DESTROYED, LOST OR STOLEN
        DEBT SECURITIES. ................................................................ 17
    SECTION 2.08. CANCELLATION. ................................................ 18
    SECTION 2.09. COMPUTATION OF INTEREST. ............................ 18
    SECTION 2.10. DEBT SECURITIES IN GLOBAL FORM. ................. 18
    SECTION 2.11. MEDIUM-TERM SECURITIES. ............................. 20
    SECTION 2.12. CUSIP NUMBERS. .............................................. 20

ARTICLE THREE REDEMPTION OF DEBT SECURITIES ........................ 21

    SECTION 3.01. APPLICABILITY OF ARTICLE. ............................ 21
    SECTION 3.02. NOTICE OF REDEMPTION; SELECTION OF DEBT
        SECURITIES. ........................................................................ 21
    SECTION 3.03. PAYMENT OF DEBT SECURITIES CALLED FOR
        REDEMPTION. ...................................................................... 22

ARTICLE FOUR PARTICULAR COVENANTS OF THE CORPORATION .............. 23

    SECTION 4.01. PAYMENT OF PRINCIPAL, PREMIUM, INTEREST
        AND ADDITIONAL AMOUNTS. ................................................ 23
    SECTION 4.02. OFFICES FOR NOTICES AND PAYMENTS, ETC. ............... 23
    SECTION 4.03. PROVISIONS AS TO PAYING AGENT. ..................... 24
    SECTION 4.04. LUXEMBOURG PUBLICATIONS. .......................... 25
    SECTION 4.05. STATEMENT BY OFFICERS AS TO DEFAULT.................. 25

ARTICLE FIVE SECURITYHOLDER LISTS AND REPORTS BY THE
CORPORATION AND THE TRUSTEE ........................................................ 25

SECTION 5.01. SECURITYHOLDER LISTS. ..................................... 25
SECTION 5.02. PRESERVATION AND DISCLOSURE OF LISTS. ................ 26
SECTION 5.03. REPORTS BY THE CORPORATION. ........................... 27
SECTION 5.04. REPORTS BY THE TRUSTEE. .................................. 28

ARTICLE SIX REMEDIES ON DEFAULT ........................................ 28

SECTION 6.01. EVENTS OF DEFAULT. .......................................... 28
SECTION 6.02. PAYMENT OF DEBT SECURITIES ON DEFAULT;
SUIT THEREFOR. ............................................................... 30
SECTION 6.03. APPLICATION OF MONIES COLLECTED BY
TRUSTEE. ......................................................................... 32
SECTION 6.04. PROCEEDINGS BY SECURITYHOLDERS. .................. 33
SECTION 6.05. REMEDIES CUMULATIVE AND CONTINUING. ............. 34
SECTION 6.06. DIRECTION OF PROCEEDINGS. ............................... 34
SECTION 6.07. NOTICE OF DEFAULTS. .......................................... 35
SECTION 6.08. UNDERTAKING TO PAY COSTS. ............................... 35

ARTICLE SEVEN CONCERNING THE TRUSTEE ........................... 35

SECTION 7.01. DUTIES AND RESPONSIBILITIES OF TRUSTEE. .......... 35
SECTION 7.02. RELIANCE ON DOCUMENTS, OPINIONS, ETC. ............ 36
SECTION 7.03. NO RESPONSIBILITY FOR RECITALS, ETC. ............... 37
SECTION 7.04. OWNERSHIP OF DEBT SECURITIES OR COUPONS. ....... 38
SECTION 7.05. MONIES TO BE HELD IN TRUST. ............................. 38
SECTION 7.06. COMPENSATION AND EXPENSES OF TRUSTEE. .......... 38
SECTION 7.07. OFFICERS' CERTIFICATE AS EVIDENCE. .................. 38
SECTION 7.08. CONFLICTING INTEREST OF TRUSTEE. ................... 39
SECTION 7.09. ELIGIBILITY OF TRUSTEE. .................................... 39
SECTION 7.10. RESIGNATION OR REMOVAL OF TRUSTEE. ............... 39
SECTION 7.11. ACCEPTANCE BY SUCCESSOR TRUSTEE. ................. 40
SECTION 7.12. SUCCESSOR BY MERGER, ETC. ............................... 41
SECTION 7.13. LIMITATIONS ON RIGHTS OF TRUSTEE AS
CREDITOR. ........................................................................ 42

ARTICLE EIGHT CONCERNING THE SECURITYHOLDERS ........... 42

SECTION 8.01. ACTION BY SECURITYHOLDERS. ............................ 42
SECTION 8.02. PROOF OF EXECUTION BY SECURITYHOLDERS. ......... 42
SECTION 8.03. WHO ARE DEEMED ABSOLUTE OWNERS. ................. 43

SECTION 8.04. CORPORATION-OWNED DEBT SECURITIES
DISREGARDED ............................................................. 43
SECTION 8.05. REVOCATION OF CONSENTS; FUTURE
SECURITYHOLDERS BOUND. ...................................... 44
SECTION 8.06. SECURITIES IN A FOREIGN CURRENCY. ......................... 44

ARTICLE NINE SECURITYHOLDERS' MEETINGS ............................................. 45

SECTION 9.01. PURPOSES OF MEETINGS. ........................................ 45
SECTION 9.02. CALL OF MEETINGS BY TRUSTEE. ........................... 45
SECTION 9.03. CALL OF MEETINGS BY CORPORATION OR
SECURITYHOLDERS. ..................................................... 46
SECTION 9.04. QUALIFICATION FOR VOTING. ............................... 46
SECTION 9.05. REGULATIONS. ......................................................... 46
SECTION 9.06. VOTING. ..................................................................... 47

ARTICLE TEN SUPPLEMENTAL INDENTURES ............................................... 47

SECTION 10.01. SUPPLEMENTAL INDENTURES WITHOUT
CONSENT OF SECURITYHOLDERS. ........................... 47
SECTION 10.02. SUPPLEMENTAL INDENTURES WITH CONSENT
OF SECURITYHOLDERS. .............................................. 49
SECTION 10.03. COMPLIANCE WITH TRUST INDENTURE ACT;
EFFECT OF SUPPLEMENTAL INDENTURES. ............... 50
SECTION 10.04. NOTATION ON DEBT SECURITIES. ..................... 50

ARTICLE ELEVEN CONSOLIDATION, MERGER, SALE OR CONVEYANCE ...... 50

SECTION 11.01. CORPORATION MAY CONSOLIDATE, ETC., ON
CERTAIN TERMS. ........................................................ 50
SECTION 11.02. SUCCESSOR CORPORATION SUBSTITUTED. ................ 51
SECTION 11.03. CERTIFICATE TO TRUSTEE. ................................ 51

ARTICLE TWELVE SATISFACTION AND DISCHARGE OF INDENTURE;
UNCLAIMED MONIES. ..................................................................... 51

SECTION 12.01. DISCHARGE OF INDENTURE. ............................ 51
SECTION 12.02. SATISFACTION, DISCHARGE AND DEFEASANCE
OF DEBT SECURITIES OF ANY SERIES. ....................... 52
SECTION 12.03. DEPOSITED MONIES TO BE HELD IN TRUST BY
TRUSTEE. ...................................................................... 53
SECTION 12.04. PAYING AGENT TO REPAY MONIES HELD. .................... 54
SECTION 12.05. RETURN OF UNCLAIMED MONIES. ..................... 54

iii

ARTICLE THIRTEEN IMMUNITY OF INCORPORATORS,
STOCKHOLDERS, OFFICERS AND DIRECTORS .................................. 54

SECTION 13.01. INDENTURE AND DEBT SECURITIES SOLELY
CORPORATE OBLIGATIONS. ......................................... 54

ARTICLE FOURTEEN MISCELLANEOUS PROVISIONS ................................... 55

SECTION 14.01. BENEFITS OF INDENTURE RESTRICTED TO
PARTIES AND SECURITYHOLDERS. ............................... 55
SECTION 14.02. PROVISIONS BINDING ON CORPORATION'S
SUCCESSORS. ............................................... 55
SECTION 14.03. ADDRESSES FOR NOTICES, ETC. ........................ 55
SECTION 14.04. EVIDENCE OF COMPLIANCE WITH CONDITIONS
PRECEDENT. ............................................... 55
SECTION 14.05. LEGAL HOLIDAYS. ................................... 56
SECTION 14.06. TRUST INDENTURE ACT TO CONTROL. ................ 56
SECTION 14.07. EXECUTION IN COUNTERPARTS. ...................... 56
SECTION 14.08. NEW YORK CONTRACT. ............................... 56
SECTION 14.09. JUDGMENT CURRENCY. .............................. 56
SECTION 14.10. SEVERABILITY OF PROVISIONS. ...................... 57
SECTION 14.11. CORPORATION RELEASED FROM INDENTURE
REQUIREMENTS UNDER CERTAIN CIRCUMSTANCES. ......... 57

ARTICLE FIFTEEN SINKING FUNDS ...................................... 57

SECTION 15.01. APPLICABILITY OF ARTICLE. .......................... 57
SECTION 15.02. SATISFACTION OF SINKING FUND PAYMENTS
WITH DEBT SECURITIES. .................................... 57
SECTION 15.03. REDEMPTION OF DEBT SECURITIES FOR
SINKING FUND. ............................................ 58

ARTICLE SIXTEEN REPAYMENT AT THE OPTION OF HOLDERS ................... 58

SECTION 16.01. APPLICABILITY OF ARTICLE. .......................... 58
SECTION 16.02. REPAYMENT OF DEBT SECURITIES. ................... 58
SECTION 16.03. EXERCISE OF OPTION; NOTICE. ...................... 58
SECTION 16.04. ELECTION OF REPAYMENT BY REMARKETING
ENTITIES. .................................................. 60
SECTION 16.05. DEBT SECURITIES PAYABLE ON THE
REPAYMENT DATE. ......................................... 60

ARTICLE SEVENTEEN SUBORDINATION OF DEBT SECURITIES .......................60

    SECTION 17.01. DEBT SECURITIES SUBORDINATE TO SENIOR
        DEBT.................................................................................60

    SECTION 17.02. TRUSTEE AND HOLDERS OF DEBT SECURITIES
        MAY RELY ON CERTIFICATE OF LIQUIDATING AGENT;
        TRUSTEE MAY REQUIRE FURTHER EVIDENCE AS TO
        OWNERSHIP OF SENIOR DEBT; TRUSTEE NOT FIDUCIARY
        TO HOLDERS OF SENIOR DEBT. .......................................62

    SECTION 17.03. PAYMENT PERMITTED IF NO DEFAULT.......................63

    SECTION 17.04. TRUSTEE NOT CHARGED WITH KNOWLEDGE OF
        PROHIBITION. ....................................................................63

    SECTION 17.05. TRUSTEE TO EFFECTUATE SUBORDINATION. .............64

    SECTION 17.06. RIGHTS OF TRUSTEE AS HOLDER OF SENIOR
        DEBT.................................................................................64

    SECTION 17.07. ARTICLE APPLICABLE TO PAYING AGENTS.................64

    SECTION 17.08. SUBORDINATION RIGHTS NOT IMPAIRED BY
        ACTS OR OMISSIONS OF THE CORPORATION OR HOLDERS
        OF SENIOR DEBT. ..............................................................64

ARTICLE EIGHTEEN CONVERSION OF CONVERTIBLE SECURITIES ...............65

    SECTION 18.01. APPLICABILITY OF ARTICLE...................................65

    SECTION 18.02. RIGHT TO CONVERT. .............................................65

    SECTION 18.03. EXERCISE OF CONVERSION PRIVILEGE;
        DELIVERY OF COMMON STOCK ON CONVERSION; NO
        ADJUSTMENT FOR INTEREST OR DIVIDENDS. ..............................65

    SECTION 18.04. CASH PAYMENTS IN LIEU OF FRACTIONAL
        SHARES. ...........................................................................67

    SECTION 18.05. CONVERSION PRICE...............................................67

    SECTION 18.06. ADJUSTMENT TO CONVERSION PRICE. .......................67

    SECTION 18.07. EFFECT OF RECLASSIFICATION,
        CONSOLIDATION, MERGER OR SALE. ....................................70

    SECTION 18.08. TAXES ON SHARES ISSUED. ...................................71

    SECTION 18.09. SHARES TO BE FULLY PAID; COMPLIANCE WITH
        GOVERNMENTAL REQUIREMENTS; LISTING OF COMMON
        STOCK. .............................................................................71

    SECTION 18.10. TRUSTEE NOT RESPONSIBLE. .................................71

    SECTION 18.11. NOTICE TO HOLDERS PRIOR TO CERTAIN
        ACTIONS. ..........................................................................72

    SECTION 18.12. COVENANT TO RESERVE SHARES. ...........................72

v

The following is a comparison of provisions of Trust Indenture Act of 1939 with Indenture dated as of October 28, 2003, between DELPHI CORPORATION and BANK ONE TRUST COMPANY, N. A. as Trustee;

| SECTION OF ACT | SECTION OF INDENTURE |
| --- | --- |
| 310(a)(1), (2) and (5) | 7.09 |
| 310(a)(3) and (4) | Not applicable |
| 310(b) | 7.08 |
| 310(c) | Not applicable |
| 311(a) and (b) | 7.13 |
| 311(c) | Not applicable |
| 312(a) | 5.01 and 5.02(a) |
| 312(b) and (c) | 5.02(b) and (c) |
| 313(a) and (b) | 5.04(a) |
| 313(c) | 5.04(a) |
| 313(d) | 5.04(b) |
| 314(a) | 5.03 |
| 314(b) | Not applicable |
| 314(c)(1) and (2) | 14.04 |
| 314(c)(3) | Not applicable |
| 314(d) | Not applicable |
| 314(e) | 14.04 |
| 315(a), (c) and (d) | 7.01 |
| 315(b) | 6.07 |
| 315(e) | 6.08 |
| 316(a)(1) | 6.06 |
| 316(a)(2) | Omitted |
| 316(a) last sentence | 8.04 |
| 316(b) | 6.04 |
| 316(c) | 9.02 |
| 317(a) | 6.02 |
| 317(b) | 4.03 |
| 318(a) | 14.06 |

This tie-sheet is not part of the Indenture as executed.

THIS INDENTURE, dated as of the 28th day of October, 2003 between DELPHI CORPORATION, a corporation duly organized and existing under the laws of the State of Delaware (hereinafter sometimes called the "Corporation"), party of the first part, and BANK ONE TRUST COMPANY, N. A., a banking association duly incorporated and existing under the laws of the United States of America, as trustee hereunder (hereinafter sometimes called the "Trustee," which term shall include any successor trustee appointed pursuant to Article Seven).

## WITNESSETH:

WHEREAS, the Corporation deems it necessary or appropriate to issue from time to time for its lawful purposes securities (hereinafter called the "Debt Securities" or, in the singular, "Debt Security") evidencing its unsecured indebtedness and has duly authorized the execution and delivery of this Indenture to provide for the issuance of the Debt Securities in one or more series, unlimited as to principal amount, to bear such rates of interest, to mature at such time or times and to have such other provisions as shall be established as hereinafter provided; and

WHEREAS, the Corporation represents that all acts by it necessary to constitute a valid indenture and agreement according to its terms have been done and performed, and the execution of this Indenture has in all respects been duly authorized by the Corporation, and the Corporation, in the exercise of legal rights and power in it vested, is executing this Indenture;

NOW, THEREFOR: In order to declare the terms and conditions upon which the Debt Securities are authenticated, issued and received, and in consideration of the premises, of the purchase and acceptance of the Debt Securities by the Holders thereof and of the sum of one dollar to it duly paid by the Trustee at the execution of these presents, the receipt whereof is hereby acknowledged, the Corporation covenants and agrees with the Trustee, for the equal and proportionate benefit of the respective Holders from time to time of the Debt Securities, as follows:

## ARTICLE ONE

## DEFINITIONS

SECTION 1.01. DEFINITIONS. The terms defined in this Section (except as herein otherwise expressly provided or unless the context otherwise requires) for all purposes of this Indenture and of any indenture supplemental hereto shall have the respective meanings specified in this Section. All other terms used in this Indenture which are defined in the Trust Indenture Act of 1939 or which are by reference therein defined in the Securities Act of 1933, as amended, shall have the meanings (except as herein otherwise expressly provided or unless the context otherwise clearly requires) assigned to such terms in said Trust Indenture Act and in said Securities Act as in force at the date of this Indenture as originally executed. The words "herein," "hereof" and "hereunder" and other words of similar import refer to this Indenture as a whole, including the Exhibits to this instrument, and not to any particular Article, Section or other subdivision. Certain terms used wholly or principally within an Article of this Indenture may be defined in that Article.

1

## ADDITIONAL AMOUNTS:

The term "Additional Amounts" shall mean any additional amounts which are required by a Debt Security or by or pursuant to a Board Resolution under circumstances specified therein, to be paid by the Corporation in respect of certain taxes, assessments or governmental charges imposed on certain Holders of Debt Securities and which are owing to such Holders of Debt Securities.

## AFFILIATE:

The term "Affiliate" of any specified Person means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

## AUTHORIZED NEWSPAPER:

The term "Authorized Newspaper" shall mean a newspaper in an official language of the country of publication of general circulation in the place in connection with which the term is used. If it shall be impracticable in the opinion of the Trustee to make any publication of any notice required hereby in an Authorized Newspaper, any publication or other notice in lieu thereof which is made or given with the approval of the Trustee shall constitute a sufficient publication of such notice.

## BOARD OF DIRECTORS:

The term "Board of Directors" shall mean the Board of Directors of the Corporation or the Executive Committee or Finance Committee of the Corporation or any committee established by the Board of Directors.

## BOARD RESOLUTION:

The term "Board Resolution" shall mean a resolution certified by the Secretary or an Assistant Secretary of the Corporation or in lieu thereof by a Treasurer or Assistant Treasurer to have been duly adopted by the Board of Directors and to be in full force and effect on the date of such certification, and delivered to the Trustee.

## BUSINESS DAY:

The term "Business Day" shall mean, with respect to any Debt Security, a day (other than a Saturday or Sunday) that in the city (or in any of the cities, if more than one) in which amounts are payable as specified on the face of the form of such Debt Security, is neither a legal holiday nor a day on which banking institutions are authorized or required by law, regulation or executive order to close.

2

CLEARSTREAM:

The term "Clearstream" means Clearstream Banking, Luxemborg, societe anonyme.

CLOSING PRICE:

The term "Closing Price" has the meaning specified in Section 18.06(d).

COMMISSION:

The term "Commission" means the Securities and Exchange Commission, as from time to time constituted, created under the Securities Exchange Act of 1934, or if at any time after the execution of this instrument such Commission is not existing and performing the duties now assigned to it under the Trust Indenture Act, then the body performing such duties on such date.

COMMON STOCK:

The term "Common Stock" means when used with reference to the capital stock of the Corporation, the class of stock which, at the date of execution of this Indenture, is designated as common stock of the Corporation and stock of any class or classes into which such common stock or any such other class may thereafter be changed or reclassified.

CONVERSION PRICE:

The term "Conversion Price" has the meaning specified in Section 18.05.

CONVERTIBLE SECURITIES:

The term "Convertible Securities" means any series of Debt Securities that are designated as such pursuant to Section 2.01.

CORPORATE TRUST OFFICE:

The term "Corporate Trust Office" means the office of the Trustee at which at any particular time its corporate trust business shall be principally administered, which office at the date hereof is located at 1111 Polaris Parkway, Mail Suite OHI-0181, Columbus, Ohio 43240, except that, with respect to presentation of Debt Securities for payment or registration of transfers and exchanges and the location of the Security Registrar, such term means the office or agency of the Trustee located at 55 Water Street, 1st Floor, Jeannette Park Entrance, New York, New York 10041.

CORPORATION:

The term "Corporation" shall mean the person named as the "Corporation" in the first paragraph of this instrument until a successor corporation shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Corporation" shall mean such successor corporation

CORPORATION ORDER:

The term "Corporation Order" shall mean any request, order or confirmation to the Trustee signed by any one of the following: the Chairman of the Board of Directors, Vice Chairman of the Board of Directors, the President or any Vice President, the Treasurer or any Assistant Treasurer, or the Secretary or any Assistant Secretary of the Corporation.

COUPON:

The term "Coupon" shall mean any interest coupon appertaining to a Debt Security.

COUPON SECURITY:

The term "Coupon Security" shall mean any Debt Security authenticated and delivered with one or more Coupons appertaining thereto.

CURRENCY:

The term "Currency" means dollars or foreign currency.

DEBT SECURITIES:

The term "Debt Securities" shall have the meaning stated in the first recital of this Indenture and more particularly means any Debt Securities authenticated and delivered under this Indenture.

DEPOSITORY:

The term "Depository" shall mean, with respect to the Debt Securities of any series issuable or issued in whole or in part in the form of one or more Global Securities, the Person designated as Depository by the Corporation pursuant to Section 2.01 until a successor Depository shall have become such pursuant to the applicable provisions of this Indenture, and thereafter "Depository" shall mean or include each Person who is then a Depository hereunder, and if at any time there is more than one such Person, "Depository" as used with respect to the Debt Securities of any such series shall mean the Depository with respect to the Debt Securities of that series.

EVENT OF DEFAULT:

The term "Event of Default" shall mean any event specified as such in Section 6.01.

GLOBAL SECURITY:

The term "Global Security" shall mean a Registered Security or an Unregistered Security evidencing all or part of a series of Debt Securities issued to the Depository for such series in accordance with Section 2.03.

4

HOLDER:

The terms "Holder," "Holder of Debt Securities," "Securityholder" or other similar terms, shall mean (a) in the case of any Registered Security, the person in whose name at the time such Debt Security is registered on the registration books kept for that purpose in accordance with the terms hereof, and (b) in the case of any Unregistered Security, the bearer of such Debt Security.

INDENTURE:

The term "Indenture" shall mean this instrument as originally executed or as it may from time to time be supplemented or amended by one or more indentures supplemental hereto entered into pursuant to the applicable provisions hereof.

INTEREST PAYMENT DATE:

The term "Interest Payment Date" when used with respect to any Debt Security, means the Stated Maturity of an installment of interest on such Debt Security.

ISSUE DATE:

The term "Issue Date" shall mean, with respect to any Debt Security, whether evidenced by a Registered Security or an Unregistered Security, the date such Debt Security is authenticated pursuant to Section 2.03.

MATURITY DATE:

The term "Maturity Date" when used with respect to any Debt Security, shall mean the date on which the principal of such Debt Security becomes due and payable as therein or herein provided, whether at the Stated Maturity or by declaration or acceleration, call for redemption or exchange, prepayment at the option of the Holder or otherwise.

OFFICERS' CERTIFICATE:

The term "Officers' Certificate" shall mean a certificate signed on behalf of the Corporation (and without personal liability), and complying with Section 14.04, by any two of the Chairman of the Board of Directors, Vice Chairman of the Board of Directors, the President or any Vice President, the Treasurer or any Assistant Treasurer, or the Secretary or any Assistant Secretary of the Corporation.

OPINION OF COUNSEL:

The term "Opinion of Counsel" shall mean an opinion in writing, complying with Section 14.04, signed by legal counsel who may be an employee of or counsel to the Corporation or who may be other counsel acceptable to the Trustee.

**ORIGINAL ISSUE DISCOUNT SECURITIES:**

The term "Original Issue Discount Securities" shall mean any Debt Securities that are initially sold at a discount from the principal amount thereof and that provide upon an Event of Default for declaration of an amount less than the principal amount thereof to be due and payable upon acceleration thereof.

**OUTSTANDING:**

The term "outstanding" when used with reference to Debt Securities, shall, subject to the provisions of Section 8.01, Section 8.04 and Section 8.06, mean, as of any particular time, all Debt Securities authenticated and delivered by the Trustee under this Indenture, except

(a) Debt Securities theretofore cancelled by the Trustee or delivered to the Trustee for cancellation;

(b) Debt Securities, or portions thereof, for the payment or redemption of which monies in the necessary amount shall have been deposited in trust with the Trustee or with any paying agent (other than the Corporation) or shall have been set aside and segregated in trust by the Corporation (if the Corporation shall act as its own Paying Agent), provided, that if such Debt Securities are to be redeemed prior to the maturity thereof, notice of such redemption shall have been given as provided in Article Three, or provisions satisfactory to the Trustee shall have been made for giving such notice; and

(c) Debt Securities in lieu of and in substitution for which other Debt Securities shall have been authenticated and delivered pursuant to the terms of Article Two, unless proof satisfactory to the Trustee is presented that any such Debt Securities are held by bona fide Holders in due course.

**PAYING AGENT:**

The term "Paying Agent" shall mean initially Bank One Trust Company, N.A. and, subsequently, any other paying agent appointed by the Corporation from time to time in respect of the Debt Securities.

**PERSON:**

The term "person" shall mean any individual, corporation, partnership, limited liability company, joint venture, association, joint-stock company trust or other entity, unincorporated organization or government or any agency or political subdivision thereof.

**PLACE OF PAYMENT:**

The term "Place of Payment," when used with respect to the Debt Securities of any series, means the place or places where the principal of (and premium, if any) and interest, if any, (and Additional Amounts, if any) on the Debt Securities of that series are payable.

6

**REDEMPTION DATE:**

The term "Redemption Date," when used with respect to any Debt Security to be redeemed, means the date fixed for such redemption by or pursuant to this Indenture.

**REDEMPTION PRICE:**

The term "Redemption Price," when used with respect to any Debt Security to be redeemed, means the price at which it is to be redeemed pursuant to this Indenture.

**REGISTERED SECURITY:**

The term "Registered Security" shall mean any Debt Security registered on the Security registration books of the Corporation.

**REGULAR RECORD DATE:**

The term "Regular Record Date" for the interest payable on any Interest Payment Date on the Debt Securities of any series means the date specified for that purpose as contemplated by Sections 2.01 and 2.04.

**REMARKETING ENTITY:**

The term "Remarketing Entity", when used with respect to Debt Securities of any series that are repayable at the option of the Holders thereof before their Stated Maturity, means any person designated by the Corporation to purchase any such Debt Securities.

**REPAYMENT DATE:**

The term "Repayment Date", when used with respect to any Debt Security to be repaid upon exercise of option for repayment by the Holder, means the date fixed for such repayment pursuant to this Indenture.

**REPAYMENT PRICE:**

The term "Repayment Price", when used with respect to any Debt Security to be repaid upon exercise of option for repayment by the Holder, means the price at which it is to be repaid pursuant to this Indenture.

**RESPONSIBLE OFFICER:**

The term "responsible officer" when used with respect to the Trustee shall mean any officer assigned by the Trustee to administer its corporate trust matters.

**RIGHTS:**

The term "Rights" has the meaning specified in Section 18.06(c).

SECURITY REGISTER AND SECURITY REGISTRAR:

The term "Security Register" and "Security Registrar" shall have the respective meanings specified in Section 2.05.

SENIOR DEBT:

The term "Senior Debt" means any obligation of the Corporation to its creditors whether now outstanding or subsequently incurred other than (i) any obligation as to which, in the instrument creating or evidencing the same or pursuant to which the same is outstanding, it is provided that such obligation ranks equal or subordinate to the Debt Securities, (ii) obligations evidenced by the Debt Securities, and (iii) obligations that are expressly stated in the terms of the Debt Securities (or in this Indenture, any indenture supplement, or any Officers' Certificate delivered under Section 2.01 hereof with respect to such Debt Securities) not to be Senior Debt.

SIGNIFICANT SUBSIDIARY:

The term "Significant Subsidiary" shall mean any Subsidiary of the Corporation that, at any time, has at least 5% of the consolidated revenues of the Corporation and its Subsidiaries at such time as reflected in the most recent annual audited consolidated financial Statements of the Corporation.

STATED MATURITY:

The term "Stated Maturity" when used with respect to any Debt Security or any installment of interest thereon, means the date specified in such Debt Security or a Coupon representing such installment of interest as the fixed date on which the principal of such Debt Security or, with respect to a Coupon, on which such installment of interest is due and payable.

SUBSIDIARY:

The term "Subsidiary" shall mean any corporation or other entity of which at least a majority of the outstanding stock or other beneficial interests having by the terms thereof ordinary voting power to elect a majority of the board of directors or other governing body of such corporation or other entity (irrespective of whether or not at the time stock or other beneficial interests of another class or classes of such corporation or other entity shall have or might have voting power by reason of the happening of any contingency) is at the time owned by the Corporation, or by one or more Subsidiaries, or by the Corporation and one or more Subsidiaries.

TRUST INDENTURE ACT OF 1939:

The term "Trust Indenture Act of 1939" shall mean the Trust Indenture Act of 1939, as amended.

8

UNITED STATES:

The term "United States" shall mean the United States of America (including the states thereof and the District of Columbia) and its possessions (including the Commonwealth of Puerto Rico, the U.S. Virgin Islands, Guam, American Samoa, Wake Island and the Northern Mariana Islands).

UNREGISTERED SECURITY:

The term "Unregistered Security" shall mean any Debt Security other than a Registered Security.

U.S. DOLLAR:

The term "U.S. Dollar" or "$" means a dollar or other equivalent unit in such coin or currency of the United States of America as at the time shall be legal tender for the payment of public and private debts.

SECTION 1.02. NOTICE TO SECURITYHOLDERS. Except as otherwise expressly provided herein, where this Indenture provides for notice to Holders of Debt Securities of any event, such notice shall be sufficiently given if in writing and mailed, first class, postage prepaid, to each Holder at such Holder's address as it appears in the Security Register, not later than the latest date, and not earlier than the earliest date, prescribed for such notice.

Neither the failure to mail such notice nor any defect in any notice so mailed to any particular Holder of a Debt Security shall affect the sufficiency of such notice with respect to other Holders of Debt Securities.

In case by reason of the suspension of regular mail service or by reason of any other cause it shall be impracticable to give such notice by mail, then such notification as shall be made with the approval of the Trustee shall constitute a sufficient notification for every purpose hereunder.

Where this Indenture provides for notice in any manner, such notice may be waived in writing by the person entitled to receive such notice, either before or after the event, and such waiver shall be the equivalent of such notice. Waivers of notice by Holders of Debt Securities shall be filed with the Trustee, but such filing shall not be a condition precedent to the validity of any action taken in reliance upon such waiver.

## ARTICLE TWO

### ISSUE, EXECUTION, REGISTRATION AND
### EXCHANGE OF DEBT SECURITIES

SECTION 2.01. AMOUNT UNLIMITED; ISSUABLE IN SERIES. The aggregate principal amount of Debt Securities that may be authenticated and delivered under this Indenture is unlimited.

9

The Debt Securities may be issued in one or more series.  There shall be established in or pursuant to a Board Resolution, and set forth in an Officers' Certificate, or established in one or more indentures supplemental hereto, prior to the issuance of Debt Securities of any series:

(1) the designation of the Debt Securities of the series (which shall distinguish the Debt Securities of the series from all other Debt Securities);

(2) any limit upon the aggregate principal amount of the Debt Securities of the series which may be authenticated and delivered under this Indenture (except for Debt Securities authenticated and delivered upon registration of transfer of, or in exchange for, or in lieu of, other Debt Securities of the series pursuant to Section 2.05, 2.06, 2.07, 3.02, 10.04, 16.03, or 18.03);

(3) the date or dates on which the principal of the Debt Securities of the series is payable;

(4) the rate or rates, which may be fixed or variable, at which the Debt Securities of the series shall bear interest, if any, and if the rate or rates are variable, the manner of calculation thereof, the date or dates from which such interest shall accrue, the Interest Payment Dates on which such interest shall be payable and, in the case of Registered Securities, the Regular Record Date for the determination of Holders of such Debt Securities to whom interest is payable on any Interest Payment Date;

(5) the Place of Payment (in addition to such place or places specified in this Indenture);

(6) the right, if any, of the Corporation to redeem Debt Securities of the Series, in whole or in part, at its option and the period or periods within which, the price or prices at which and the terms and conditions upon which Debt Securities of the series may be redeemed pursuant to any sinking fund or otherwise;

(7) the obligation, if any, of the Corporation to redeem, purchase or repay Debt Securities of the series pursuant to any mandatory redemption, sinking fund or analogous provisions or at the option of a Holder thereof and the period or periods within which, the price or prices at which and the terms and conditions upon which Debt Securities of the series shall be redeemed, purchased or repaid, in whole or in part, pursuant to such obligation;

(8) if other than U.S. Dollars, the currency or currencies, including Euros, in which the Debt Securities of the series shall be denominated and in which payments of principal of (premium, if any), interest, if any, and Additional Amounts, if any, payable with respect to such Debt Securities shall or may be payable; the manner in which such currency or currencies will be determined; and if the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on the Debt Securities of such series are to be payable, at the election of the Corporation or a Holder thereof, in a currency or currencies, other than that or those in which the Debt Securities are stated to be payable, the currency or currencies in which payment of the principal of (and premium, if any), interest, if any, and Additional Amounts, if

10

any, on Debt Securities of such series as to which such election is made shall be payable, and the periods within which and the terms and conditions upon which such election is to be made;

(9) if the amount of principal of and interest on the Debt Securities of the series may be determined with reference to an index based on a currency or currencies other than that in which the Debt Securities of the series are denominated, the manner in which such amounts shall be determined;

(10) the denominations in which Debt Securities of the series shall be issuable, if other than U.S. $1,000 or integral multiples thereof, with respect to Registered Securities, and denominations of U.S. $1,000 and U.S. $5,000 for Unregistered Securities;

(11) if other than the principal amount thereof, the portion of the principal amount of Debt Securities of the series which shall be payable upon declaration of acceleration of the maturity thereof or which the Trustee shall be entitled to claim pursuant to Section 6.02;

(12) whether the Debt Securities of the series will be issuable as Registered Securities or Unregistered Securities (with or without Coupons), or both, any restrictions applicable to the offer, sale or delivery of Unregistered Securities and, if other than as provided for in Section 2.05, the terms upon which Unregistered Securities of the series may be exchanged for Registered Securities of such series and vice versa; and whether the Debt Securities of the series shall be issued in whole or in part in the form of one or more Global Securities and, in such case, the Depository for such Global Security or Debt Securities and whether any Global Securities of the series are to be issuable initially in temporary form and whether any Global Securities of the series are to be issuable in definitive form with or without Coupons and, if so, whether beneficial owners of interests in any such definitive Global Security may exchange such interests for Debt Securities of such series and of like tenor of any authorized form and denomination, and the circumstances under which and the place or places where any such exchanges may occur, if other than in the manner provided in Section 2.05;

(13) whether and under what circumstances the Corporation will pay Additional Amounts on the Debt Securities of the series in respect of any tax, assessment or governmental charge withheld or deducted and, if so, whether the Corporation will have the option to redeem such Debt Securities rather than pay such Additional Amounts;

(14) the provisions, if any, for the defeasance of the Debt Securities of the series;

(15) if the Debt Securities of such series are to be issuable in definitive form (whether upon original issue or upon exchange of a temporary Debt Security of such series) only upon receipt of certain certificates or other documents or satisfaction of other conditions, the form and terms of such certificates, documents or conditions;

(16) except as otherwise provided herein, any trustees, depositories, authenticating or paying agents, transfer agents, registrars or any other agents with respect to the Debt Securities of such series;

11

(17)    the percentage of their principal amount at which the Debt Securities will be issued;

(18)    any securities exchanges on which the Debt Securities will be listed;

(19)    whether the Debt Securities of the series are Convertible Securities and the terms related thereto including the Conversion Price and the date on which the right to convert expires; and

(20)    any other terms of the series (which terms shall not be inconsistent with the provisions of this Indenture).

All Debt Securities of any one series shall be substantially identical except (i) as to denomination, (ii) that Debt Securities of any series may be issuable as either Registered Securities or Unregistered Securities and (iii) as may otherwise be provided in or pursuant to such Board Resolution and set forth in such Officers' Certificate or in any such indenture supplemental hereto.

If any of the terms of the series are established by action taken pursuant to a Board Resolution, a copy of an appropriate record of such action shall be certified by the Secretary or any Assistant Secretary of the Corporation or in lieu thereof by a Treasurer or Assistant Treasurer and delivered to the Trustee at the same time as or prior to the delivery of the Officers' Certificate setting forth the terms of the series.

SECTION 2.02. FORM OF TRUSTEE'S CERTIFICATE OF AUTHENTICATION. The Trustee's certificate of authentication shall be in the following form:

{FORM OF TRUSTEE'S CERTIFICATE OF AUTHENTICATION}

This is one of the Debt Securities of the series designated therein referred to in the within-mentioned Indenture.

Bank One Trust Company, N.A.,
as Trustee,

By:_____
        Authorized Signatory

SECTION 2.03. FORM, EXECUTION, AUTHENTICATION, DELIVERY AND DATING OF DEBT SECURITIES. The Debt Securities of each series and the Coupons, if any, to be attached thereto, shall be in the forms approved from time to time by or pursuant to a Board Resolution, or established in one or more indentures supplemental hereto, and may have such letters, numbers or other marks of identification or designation and such legends or endorsements printed, lithographed or engraved thereon as the Corporation may deem appropriate and as are not inconsistent with the provisions of this Indenture, or as may be required to comply with any

12

law or with any rule or regulation made pursuant thereto or with any rule or regulation of any securities exchange on which the Debt Securities may be listed, or to conform to usage.

Each Debt Security and Coupon shall be executed on behalf of the Corporation by its Chairman of the Board of Directors or the President or any Vice Chairman or Vice President or its Treasurer and the Secretary or any Assistant Secretary, or, if the other signatory is other than the Treasurer, any assistant Treasurer, under its Corporate seal. Such signatures may be the manual or facsimile signatures of the present or any future such officers. The seal of the Corporation may be in the form of a facsimile thereof and may be impressed, affixed, imprinted or otherwise reproduced on the Debt Securities.

Each Debt Security and Coupon bearing the manual or facsimile signatures of individuals who were at any time the proper officers of the Corporation shall bind the Corporation, notwithstanding that such individuals or any of them have ceased to hold such offices prior to the authentication and delivery of such Debt Security, or the Debt Security to which such Coupon appertains. At any time and from time to time after the execution and delivery of this Indenture, the Corporation may deliver Debt Securities of any series executed by the Corporation and, in the case of Coupon Securities, having attached thereto appropriate Coupons, to the Trustee for authentication, together with a Corporation Order for the authentication and delivery of such Debt Securities, and the Trustee in accordance with such Corporation Order shall authenticate and deliver such Debt Securities. If the form or terms of the Debt Securities or Coupons of the series have been established in or pursuant to one or more Board Resolutions as permitted by this Section and Section 2.01, in authenticating such Debt Securities and accepting the additional responsibilities under this Indenture in relation to such Debt Securities, the Trustee shall be entitled to receive, and (subject to Section 7.01) shall be fully protected in relying upon, an Opinion of Counsel stating:

(a) if the form of such Debt Securities or Coupons has been established by or pursuant to Board Resolution as permitted by Section 2.01, that such form has been established in conformity with the provisions of this Indenture;

(b) if the terms of such Debt Securities have been established by or pursuant to Board Resolution as Permitted by Section 2.01, that such terms have been established in conformity with the provisions of this Indenture; and

(c) that each such Debt Security and Coupon, when authenticated and delivered by the Trustee and issued by the Corporation in the manner and subject to any conditions specified in such Opinion of Counsel, will constitute valid and legally binding obligations of the Corporation, enforceable in accordance with its terms, subject to bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other laws of general applicability relating to or affecting the enforcement of creditors' rights and to general equity principles, whether applied in a proceeding at law or in equity.

If such form or terms have been so established, the Trustee shall not be required to authenticate such Debt Securities if the issue of such Debt Securities pursuant to this Indenture will affect the Trustee's own rights, duties or immunities under the Debt Securities and the Indenture or otherwise in a manner that is not reasonably acceptable to the Trustee.

13

Every Registered Security shall be dated the date of its authentication. Each Unregistered Security shall be dated as provided in or pursuant to the Board Resolution or supplemental indenture referred to in Section 2.01 or, if no such terms are specified, the date of its original issuance.

No Debt Security shall be entitled to any benefit under this Indenture or be valid or obligatory for any purpose unless there appears on such Debt Security a certificate of authentication substantially in the form provided for herein executed by the Trustee by manual signature, and such certificate upon any Debt Security shall be conclusive evidence, and the only evidence, that such Debt Security has been duly authenticated and delivered hereunder and is entitled to the benefits of this Indenture. Notwithstanding the foregoing, if any Debt Security shall have been duly authenticated and delivered hereunder but never issued and sold by the Corporation, and the Corporation shall deliver such Debt Security to the Trustee for cancellation as provided in Section 2.08 together with a written statement (which need not comply with Section 14.04 and need not be accompanied by an Opinion of Counsel) stating that such Debt Security has never been issued and sold by the Corporation, for all purposes of this Indenture such Debt Security shall be deemed never to have been authenticated and delivered hereunder and shall never be entitled to the benefits of this Indenture.

If the Corporation shall establish pursuant to Section 2.01 that the Debt Securities of a series are to be issued in whole or in part in the form of a Global Security, then the Corporation shall execute and the Trustee shall in accordance with this Section and the Corporation Order with respect to such series authenticate and deliver the Global Security that (i) shall represent and shall be denominated in an aggregate amount equal to the aggregate principal amount of outstanding Debt Securities of such series to be represented by the Global Security, (ii) shall be registered, if in registered form, in the name of the Depository for such Global Security or the nominee of such Depository, and (iii) shall be delivered by the Trustee to such Depository or pursuant to such Depository's instructions and (iv) shall bear a legend substantially to the following effect: "Except as otherwise provided in Section 2.03 of the Indenture, this Security may be transferred, in whole but not in part, only to another nominee of the Depository or to a successor Depository or to a nominee of such successor Depository" and such other legend or legends as may be required by the Depositary.

SECTION 2.04.  DENOMINATIONS; RECORD DATE.  The Debt Securities shall be issuable as Registered Securities or Unregistered Securities in such denominations as may be specified as contemplated in Section 2.01.  In the absence of any such specification with respect to any series, such Debt Securities, other than Global Securities, shall be issuable in the denomination contemplated by Section 2.01.

The term "record date" as used with respect to an Interest Payment Date (except a date for payment of defaulted interest) shall mean such day or days as shall be specified in the terms of the Registered Securities of any particular series as contemplated by Section 2.01; provided, however, that in the absence of any such provisions with respect to any series, such term shall mean (1) the last day of the calendar month next preceding such Interest Payment Date if such Interest Payment Date is the fifteenth day of a calendar month; or (2) the fifteenth day of a calendar month next preceding such Interest Payment Date if such Interest Payment Date is the first day of the calendar month.

14

The person in whose name any Registered Security is registered at the close of business on the Regular Record Date with respect to an Interest Payment Date shall be entitled to receive the interest payable and Additional Amounts, if any, payable on such Interest Payment Date notwithstanding the cancellation of such Registered Security upon any transfer or exchange thereof subsequent to such Regular Record Date and prior to such Interest Payment Date; provided, however, that if and to the extent the Corporation shall default in the payment of the interest and Additional Amounts, if any, due on such Interest Payment Date, such defaulted interest and Additional Amounts, if any, shall be paid to the persons in whose names outstanding Registered Securities are registered on a subsequent record date established by notice given by mail by or on behalf of the Corporation to the Holders of Debt Securities of the series in default not less than fifteen days preceding such subsequent record date, such record date to be not less than five days preceding the date of payment of such defaulted interest.

SECTION 2.05. EXCHANGE AND REGISTRATION OF TRANSFER OF DEBT SECURITIES. Registered Securities of any series, except for Global Securities, may be exchanged for a like aggregate principal amount of Registered Securities of other authorized denominations of such series. Registered Securities to be exchanged shall be surrendered at the office or agency to be designated and maintained by the Corporation for such purpose in the Borough of Manhattan, The City of New York, in accordance with the provisions of Section 4.02, and the Corporation shall execute and register and the Trustee shall authenticate and deliver in exchange therefor the Registered Security or Registered Securities that the Holder making the exchange shall been titled to receive.

If the Debt Securities of any series are issued in both registered and unregistered form, except as otherwise specified pursuant to Section 2.01, at the option of the Holder thereof, Unregistered Securities of any series may be exchanged for Registered Securities of such series of any authorized denominations and of a like aggregate principal amount, upon surrender of such Unregistered Securities to be exchanged at the agency of the Corporation that shall be maintained for such purpose in accordance with Section 4.02, with, in the case of Unregistered Securities that are Coupon Securities, all unmatured Coupons and all matured Coupons in default thereto appertaining. At the option of the Holder thereof, if Unregistered Securities of any series are issued in more than one authorized denomination, except as otherwise specified pursuant to Section 2.01, such Unregistered Securities may be exchanged for Unregistered Securities of such series of other authorized denominations and of a like aggregate principal amount, upon surrender of such Unregistered Securities to be exchanged at the agency of the Corporation that shall be maintained for such purpose in accordance with Section 4.02 or as specified pursuant to Section 2.01, with, in the case of Unregistered Securities that are Coupon Securities, all unmatured Coupons and all matured Coupons in default thereto appertaining. Unless otherwise specified pursuant to Section 2.01, Registered Securities of any series may not be exchanged for Unregistered Securities of such series. Whenever any Debt Securities are so surrendered for exchange the Corporation shall execute, and the Trustee shall authenticate and deliver, the Debt Securities that the Holder making the exchange is entitled to receive.

Transfers or exchanges of Global Securities shall be made in accordance with this Section and Section 2.10.

15

The Corporation or its designated agent (the "Security Registrar") shall keep, at such office or agency, a Security Register (the "Security Register") in which, subject to such reasonable regulations as it may prescribe, the Corporation shall register Debt Securities and shall register the transfer of Registered Securities as provided in this Article Two. The Security Register shall be in written form or in any other form capable of being converted into written form within a reasonable time. At all reasonable times the Security Register shall be open for inspection by the Trustee. Upon due presentment for registration of transfer of any Registered Security of a particular series at such office or agency, the Corporation shall execute and the Corporation or the Security Registrar shall register and the Trustee shall authenticate and deliver in the name of the transferee or transferees a new Registered Security or Registered Securities of such series for an equal aggregate principal amount.

Unregistered Securities (except for any temporary bearer Debt Securities) and Coupons shall be transferable by delivery.

All Debt Securities presented for registration of transfer or for exchange, redemption or payment, as the case may be, shall (if so required by the Corporation or the Trustee) be duly endorsed by, or be accompanied by, a written instrument or instruments of transfer in form satisfactory to the Corporation and the Trustee duly executed by the Holder or his, her or its attorney duly authorized in writing.

No service charge shall be made for any exchange or registration of transfer of Registered Securities, but the Corporation may require payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection therewith.

The Corporation shall not be required to exchange or register a transfer of (a) any Registered Securities of any series for a period of fifteen days next preceding any selection of Registered Securities of such series to be redeemed, or (b) any Debt Security of any such series selected for redemption except in the case of any such series to be redeemed in part, the portion thereof not to be so redeemed.

Notwithstanding anything herein or in the terms of any series of Debt Securities to the contrary, neither the Corporation nor the Trustee (which shall rely on an Officers' Certificate and an Opinion of Counsel) shall be required to exchange any Unregistered Security for a Registered Security if such exchange would result in adverse Federal income tax consequences to the Corporation (including the inability of the Corporation to deduct from its income, as computed for Federal income tax purposes, the interest payable on any Debt Securities) under then applicable United States Federal income tax laws.

SECTION 2.06. TEMPORARY DEBT SECURITIES. Pending the preparation of definitive Debt Securities of any series, the Corporation may execute and on receipt of a Corporation Order the Trustee shall authenticate and deliver temporary Debt Securities of such series (printed or lithographed). Temporary Debt Securities of any series shall be issuable in any authorized denominations, and in the form approved from time to time by or pursuant to a Board Resolution but with such omissions, insertions and variations as may be appropriate for temporary Debt Securities, all as may be determined by the Corporation. Every temporary Debt Security shall be executed by the Corporation and authenticated by the Trustee upon the same conditions and in

16

substantially the same manner, and with like effect, as the definitive Debt Securities. Without unnecessary delay the Corporation shall execute and furnish definitive Debt Securities of such series and thereupon any or all temporary Registered Securities of such series may be surrendered in exchange therefor without charge at the office or agency to be designated and maintained by the Corporation for such purpose in the Borough of Manhattan, The City of New York, in accordance with the provisions of Section 4.02 and in the case of Unregistered Securities at any agency maintained by the Corporation for such purpose as specified pursuant to Section 2.01, and the Trustee shall authenticate and deliver in exchange for such temporary Debt Securities an equal aggregate principal amount of definitive Debt Securities of the same series of authorized denominations and in the case of such Debt Securities that are Coupon Securities, having attached thereto the appropriate Coupons. Until so exchanged the temporary Debt Securities of any series shall be entitled to the same benefits under this Indenture as definitive Debt Securities of such series. The provisions of this Section 2.06 are subject to any restrictions or limitations on the issue and delivery of temporary Unregistered Securities of any series that may be established pursuant to Section 2.01 (including any provision that Unregistered Securities of such series initially be issued in the form of a single global Unregistered Security to be delivered to a depositary or agency of the Corporation located outside the United States and the procedures pursuant to which definitive Unregistered Securities of such series would be issued in exchange for such temporary global Unregistered Security).

SECTION 2.07. MUTILATED, DESTROYED, LOST OR STOLEN DEBT SECURITIES. In case any temporary or definitive Debt Security of any series or, in the case of a Coupon Security, any Coupon appertaining thereto, shall become mutilated or be destroyed, lost or stolen, the Corporation in the case of a mutilated Debt Security or Coupon shall, and in the case of a lost, stolen or destroyed Debt Security or Coupon may, in its discretion, execute, and upon receipt of a Corporation Order the Trustee shall authenticate and deliver, a new Debt Security of the same series as the mutilated, destroyed, lost or stolen Debt Security or, in the case of a Coupon Security, a new Coupon Security of the same series as the mutilated, destroyed, lost or stolen Coupon Security or, in the case of a Coupon, a new Coupon of the same series as the Coupon Security to which such mutilated, destroyed, lost or stolen Coupon appertains, bearing a number not contemporaneously outstanding, in exchange and substitution for the mutilated Debt Security, or in lieu of and in substitution for the Debt Security so destroyed, lost or stolen or in exchange for the Coupon Security to which such mutilated, destroyed, lost or stolen Coupon appertains, with all appurtenant Coupons not destroyed, lost or stolen. In every case the applicant for a substituted Debt Security or Coupon shall furnish to the Corporation and to the Trustee such security or indemnity as may be required by them to save each of them harmless, and, in every case of destruction, loss or theft, the applicant shall also furnish to the Corporation and to the Trustee evidence to their satisfaction of the destruction, loss or theft of such Debt Security or Coupon, as the case may be, and of the ownership thereof. Upon the issuance of any substituted Debt Security or Coupon, the Corporation may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in relation thereto and any other expenses connected therewith and in addition a further sum not exceeding ten dollars for each Debt Security so issued in substitution. In case any Debt Security or Coupon which has matured or is about to mature shall become mutilated or be destroyed, lost or stolen, the Corporation may, instead of issuing a substituted Debt Security, pay or authorize the payment of the same (without surrender thereof except in the case of a mutilated Debt Security or Coupon) if the applicant for such payment shall furnish the Corporation and the Trustee with

17

such security or indemnity as they may require to save them harmless and, in case of destruction loss or theft, evidence to the satisfaction of the Corporation and the Trustee of the destruction, loss or theft of such Debt Security or Coupon and of the ownership thereof.

Every substituted Debt Security with, in the case of any such Debt Security that is a Coupon Security, its Coupons, issued pursuant to the provisions of this Section by virtue of the fact that any Debt Security or Coupon is destroyed, lost or stolen shall, with respect to such Debt Security or Coupon, constitute an additional contractual obligation of the Corporation, whether or not the destroyed, lost or stolen Debt Security or Coupon shall be found at any time, and shall be entitled to all the benefits of this Indenture equally and proportionately with any and all other Debt Securities, and the Coupons appertaining thereto, duly issued hereunder.

All Debt Securities and any Coupons appertaining thereto shall be held and owned upon the express condition that the foregoing provisions are exclusive with respect to the replacement or payment of mutilated, destroyed, lost or stolen Debt Securities and Coupons appertaining thereto and shall, to the extent permitted by law, preclude any and all other rights or remedies, notwithstanding any law or statute existing or hereafter enacted to the contrary with respect to the replacement or payment of negotiable instruments or other securities without their surrender.

SECTION 2.08. CANCELLATION. Unless otherwise provided with respect to a series of Debt Securities, all Debt Securities and Coupons surrendered for payment, redemption, repayment, transfer, exchange or credit against any sinking fund payment pursuant to this Indenture, shall, if surrendered to the Corporation or any agent of the Corporation or of the Trustee, be delivered to the Trustee and promptly cancelled by it or, if surrendered to the Trustee, be cancelled by it, and no Debt Securities or Coupons shall be issued in lieu thereof except as expressly permitted by any of the provisions of this Indenture. The Trustee shall destroy cancelled Debt Securities and Coupons and deliver a certificate of destruction to the Corporation.

SECTION 2.09. COMPUTATION OF INTEREST. Except as otherwise specified as contemplated by Section 2.01 for Debt Securities of any series, interest on the Debt Securities of each series shall be computed on the basis of a 360-day year of twelve 30-day months.

SECTION 2.10. DEBT SECURITIES IN GLOBAL FORM. If Debt Securities of a series are issuable in global form, as specified as contemplated by Section 2.01, then, notwithstanding clause (9) of Section 2.01 and the provisions of Sections 2.04 and 2.05, such Global Security shall represent such of the outstanding Debt Securities of such series as shall be specified therein and may provide that it shall represent the aggregate amount of outstanding Debt Securities from time to time endorsed thereon and that the aggregate amount of outstanding Debt Securities represented thereby may from time to time be reduced to reflect exchanges. Any endorsement of a Debt Security in global form to reflect the amount, or any increase or decrease in the amount, of outstanding Debt Securities represented thereby shall be made by the Trustee in such manner and upon instructions given by such Person or Persons as shall be specified therein or in the Corporation Order to be delivered to the Trustee pursuant to Section 2.03 or Section 2.06. Subject to the provisions of Section 2.03 and, if applicable, Section 2.06, the Trustee shall deliver and redeliver any Debt Security in definitive global bearer form in the manner and upon written instructions given by the Person or Persons specified therein or in the applicable Corporation Order. If a Corporation Order pursuant to Section 2.03 or 2.06 has been, or

18

simultaneously is, delivered, any instructions by the Corporation with respect to endorsement or delivery or redelivery of a Debt Security in global form shall be in writing but need not comply with Section 14.04 and need not be accompanied by an opinion of Counsel. The beneficial owner of a Debt Security represented by a definitive Global Security in bearer form may, upon no less than 30 days written notice to the Trustee, given by the beneficial owner through a Depository, exchange its interest in such definitive Global Security for a definitive bearer Debt Security or Debt Securities, or a definitive Registered Security or Debt Securities, of any authorized denomination, subject to the rules and regulations of such Depository and its members. No individual definitive bearer Debt Security will be delivered in or to the United States.

Unless otherwise specified as contemplated by Section 2.01 for Debt Securities of any Series:

    (1)    if at any time the Depository for a series of Debt Securities notifies the Corporation that it is unwilling or unable to continue as Depository for such series or if at any time the Depository for such series shall no longer be registered or in good standing, if so required, under the Securities Exchange Act of 1934, as amended, or other applicable statute or regulation and a successor Depository for such series is not appointed by the Corporation within 90 days after the Corporation receives such notice or becomes aware of such condition, as the case may be;

    (2)    the Corporation may at any time determine that the Debt Securities of any series shall no longer be represented by a Global Security and that the provisions of this Indenture relating to Global Securities shall no longer apply to the Debt Securities of such series; or

    (3)    if at any time there shall have occurred and be continuing an Event of Default and the Holders of a majority in principal amount of the Debt Securities outstanding determine that the Global Security shall be exchangeable for Debt Securities in definitive registered form, in authorized denominations, and in an aggregate principal amount equal to the principal amount of the Global Security of such series,

the Corporation will execute, and upon receipt of a Corporation Order the Trustee will authenticate and deliver, Debt Securities of such series in definitive registered form, in authorized denominations, and in an aggregate principal amount equal to the principal amount of the Global Security of such series, in exchange for such Global Security.

Upon the exchange of the Global Security for such Debt Securities in definitive registered form, in authorized denominations, the Global Security shall be cancelled by the Trustee. Such Debt Securities in definitive registered form issued in exchange for the Global Security pursuant to this paragraph shall be registered in such names and in such authorized denominations as the Depository, pursuant to instructions from its direct or indirect participants

or otherwise, shall instruct the Trustee. The Trustee shall deliver such Debt Securities to the persons in whose names such Debt Securities are so registered.

The provisions of the last sentence of the second to the last paragraph of Section 2.03 shall apply to any Debt Security represented by a Debt Security in global form if such Debt Security was never issued and sold by the Corporation and the Corporation delivers to the Trustee the Debt Security in global form together with written instructions (which need not comply with Section 14.04 and need not be accompanied by an Opinion of Counsel) with regard to the reduction in the principal amount of Debt Securities represented thereby together with the written statement contemplated by the last sentence of the second to the last paragraph of Section 2.03.

Unless otherwise specified as contemplated by Section 2.01, payment of principal of, and any premium and any interest on, any Debt Security in definitive global form shall be made to the Person or Persons specified therein.

SECTION 2.11. MEDIUM-TERM SECURITIES. Notwithstanding any contrary provision herein, if all Debt Securities of a series are not to be originally issued at one time, it shall not be necessary to deliver the Corporation Order, Officers' Certificate, supplemental indenture or Opinion of Counsel otherwise required pursuant to Sections 2.01, 2.03, 2.06, and 14.04 at or prior to the time of authentication of each Debt Security of such series if such documents are delivered at or prior to the authentication upon original issuance of the first Debt Security of such series to be issued.

An Officers' Certificate or supplemental indenture, delivered pursuant to this Section 2.11 in the circumstances set forth in the preceding paragraph may provide that Debt Securities which are the subject thereof will be authenticated and delivered by the Trustee on original issue from time to time upon the written order of persons designated in such Officers' Certificate or supplemental indenture and that such persons are authorized to determine, consistent with such Officers' Certificate or any applicable supplemental indenture such terms and conditions of said Debt Securities as are specified in such Officers' Certificate or supplemental indenture, provided that the foregoing procedure is acceptable to the Trustee.

SECTION 2.12. CUSIP NUMBERS. The Corporation, in issuing the Debt Securities, may use "CUSIP" numbers (if then generally in use), and, if so, the Trustee shall use "CUSIP" numbers in notices of redemption as a convenience to Holders; provided that any such notice may state that no representation is made as to the correctness of such numbers either as printed on the Debt Securities or as contained in any notice of a redemption and that reliance may be placed only on the other identification numbers printed on the Debt Securities, and any such redemption shall not be affected by any defect in or omission of such numbers. The Corporation will promptly notify the Trustee of any change in the "CUSIP" numbers.

20

## ARTICLE THREE

### REDEMPTION OF DEBT SECURITIES

**SECTION 3.01.  APPLICABILITY OF ARTICLE.**  Redemption of Debt Securities of any series as permitted or required by the terms thereof shall be made in accordance with such terms and this Article; provided, however, that if any provision of any series of Debt Securities shall conflict with any provision of this Article, the provision of such series of Debt Securities shall govern.

The notice date for a redemption of Debt Securities shall mean the date on which notice of such redemption is given in accordance with the provisions of Section 3.02 hereof.

**SECTION 3.02.  NOTICE OF REDEMPTION; SELECTION OF DEBT SECURITIES.**  The election of the Corporation to redeem any Debt Securities shall be evidenced by an Officers' Certificate.  In case the Corporation shall desire to exercise the right to redeem all, or, as the case may be, any part, of a series of Debt Securities pursuant to the terms and provisions applicable to such series, it shall fix a Redemption Date and shall mail a notice of such redemption at least thirty and not more than sixty days prior to the Redemption Date to the Holders of the Debt Securities of such series that are Registered Securities to be redeemed as a whole or in part, at their last addresses as the same appear on the Security Register.  Such mailing shall be by prepaid first class mail.  Any notice that is mailed in the manner herein provided shall be conclusively presumed to have been duly given, whether or not the Holder shall have received such notice.  In any case, failure to give notice by mail, or any defect in the notice to the Holder of any Debt Security of a series designated for redemption as a whole or in part shall not affect the validity of the proceedings for the redemption of any other Debt Security of such series.

Notice of redemption to the Holders of Unregistered Securities to be redeemed as a whole or in part, who have filed their names and addresses with the Trustee as described in Section 313(c) of the Trust Indenture Act of 1939, shall be given by mailing notice of such redemption, by first class mail, postage prepaid, at least thirty days and not more than sixty days prior to the Redemption Date, to such Holders at such addresses as were so furnished to the Trustee (and, in the case of any such notice given by the Corporation, the Trustee shall make such information available to the Corporation for such purpose).  Notice of redemption to any other Holder of an Unregistered Security of such series shall be published in an Authorized Newspaper in the Borough of Manhattan, The City of New York and in an Authorized Newspaper in London (and, if required by Section 4.04, in an Authorized Newspaper in Luxembourg), in each case, once in each of two successive calendar weeks, the first publication to be not less than thirty nor more than sixty days prior to the Redemption Date.  Any notice that is mailed in the manner herein provided shall be conclusively presumed to have been duly given, whether or not the Holder shall have received such notice.  In any case, failure to give notice by mail, or any defect in the notice to the Holder of any Debt Security of a series designated for redemption as a whole or in part shall not affect the validity of the proceedings for the redemption of any other Debt Security of such series.

Each such notice of redemption shall specify the provisions of such Debt Securities under which such redemption is made, that the conditions precedent, if any, to such redemption have

occurred, shall describe the same and the Redemption Date, the Redemption Price, the Place of Payment, that payment will be made upon presentation and surrender of such Debt Securities and, in the case of Coupon Securities, of all Coupons appertaining thereto maturing after the Redemption Date, that interest and Additional Amounts, if any, accrued to the Redemption Date will be paid as specified in said notice, and that on and after said date interest, if any, thereon on the portions thereof to be redeemed will cease to accrue. If fewer than all of the Debt Securities of a series are to be redeemed any notice of redemption shall specify the number of the Debt Securities to be redeemed and, if applicable, the CUSIP Numbers thereof. In case any Debt Security is to be redeemed in part only, the notice of redemption shall state the portion of the principal amount thereof to be redeemed and shall state that upon surrender of such Debt Security, a new Debt Security or Debt Securities in principal amount equal to the unredeemed portion thereof will be issued of the same series.

At least one Business Day prior to the Redemption Date specified in the notice of redemption given for Unregistered Securities as provided in this Section and on or prior to the Redemption Date specified in the notice of redemption given for all Debt Securities other than Unregistered Securities, the Corporation will deposit in trust with the Trustee or with one or more Paying Agents an amount of money sufficient to redeem on the Redemption Date all the Debt Securities or Debt Securities so called for redemption at the Redemption Price together with interest, if any, and Additional Amounts, if any, accrued to the Redemption Date. The Corporation will give the Trustee notice of each redemption at least forty-five days prior to the Redemption Date (unless a shorter notice is acceptable to the Trustee) as to the aggregate principal amount of Debt Securities to be redeemed.

If fewer than all of the Debt Securities of a series are to be redeemed, the Trustee shall select, pro rata or by lot or in such other manner as it shall deem reasonable and fair, the amount of the Debt Securities to be redeemed in whole or in part.

SECTION 3.03. PAYMENT OF DEBT SECURITIES CALLED FOR REDEMPTION. If notice of redemption has been given as above provided, the Debt Securities or portions of Debt Securities with respect to which such notice has been given shall become due and payable on the date and at the Place of Payment stated in such notice at the Redemption Price, together with interest, if any, and Additional Amounts, if any, accrued to the Redemption Date, and on and after said date (unless the Corporation shall default in the payment of such Debt Securities at the Redemption Price, together with interest, if any, and Additional Amounts, if any, accrued to such date) interest on the Debt Securities or portions of Debt Securities so called for redemption will cease to accrue. On presentation and surrender of such Debt Securities subject to redemption at said Place of Payment in said notice specified, the said Debt Securities or the specified portions thereof shall be paid and redeemed by the Corporation at the Redemption Price, together with interest, if any, and Additional Amounts, if any, accrued thereon to the Redemption Date. Interest, if any, and Additional Amounts, if any, maturing on or prior to the Redemption Date shall continue to be payable (but without interest thereon unless the Corporation shall default in payment thereof) in the case of Coupon Securities to the bearers of the Coupons for such interest upon surrender thereof, and in the case of Registered Securities to the Holders thereof registered as such on the Security Register on the relevant record date subject to the terms and provisions of Section 2.04. At the option of the Corporation payment may be made by check to (or to the

22

order of) the Holders of the Debt Securities or other persons entitled thereto against presentation and surrender of such Debt Securities.

If any Coupon Security surrendered for redemption shall not be accompanied by all appurtenant Coupons maturing after the Redemption Date, the surrender of such missing Coupon or Coupons may be waived by the Corporation and the Trustee, if there be furnished to each of them such security or indemnity as they may require to save each of them harmless.

Upon presentation of any Debt Security redeemed in part only, the Corporation shall execute, and the Trustee shall authenticate and deliver to the Holder thereof, at the expense of the Corporation, a new Debt Security or Debt Securities, of authorized denominations, in aggregate principal amount equal to the unredeemed portion of the Debt Security so presented of the same series.

### ARTICLE FOUR

### PARTICULAR COVENANTS OF THE CORPORATION

SECTION 4.01. PAYMENT OF PRINCIPAL, PREMIUM, INTEREST AND ADDITIONAL AMOUNTS. The Corporation shall duly and punctually pay or cause to be paid the principal of (and premium, if any), interest, if any, and Additional Amounts, if any, on each of the Debt Securities at the place, at the respective times and in the manner provided in the terms of the Debt Securities and in this Indenture. The interest on Coupon Securities (together with any Additional Amounts) shall be payable only upon presentation and surrender of the several Coupons for such interest installments as are evidenced thereby as they severally mature. The interest, if any, on any temporary bearer securities (together with any Additional Amounts) shall be paid, as to the installments of interest evidenced by Coupons attached thereto, if any, only upon presentation and surrender thereof, and, as to the other installments of interest, if any, only upon presentation of such Debt Securities for notation thereon of the payment of such interest. The interest on Registered Securities (together with any Additional Amounts) shall be payable only to the Holders thereof and at the option of the Corporation may be paid by (i) mailing checks for such interest payable to or upon the order of such Holders at their last addresses as they appear on the Security Register for such Debt Securities or (ii) in the case of Holders of U.S. $10,000,000 or more in aggregate principal amount of such Registered Securities, by wire transfer of immediately available funds, but only if the Trustee has received wire transfer instructions in writing not less than 15 days prior to the applicable Interest Payment Date.

SECTION 4.02. OFFICES FOR NOTICES AND PAYMENTS, ETC. As long as any of the Debt Securities of a series remain outstanding, the Corporation shall designate and maintain, in the Borough of Manhattan, The City of New York, an office or agency where the Registered Securities of such series may be presented for registration of transfer and for exchange as provided in this Indenture, an office or agency where notices and demands to or upon the Corporation in respect of the Debt Securities of such series or of this Indenture may be served, and an office or agency where the Debt Securities of such series may be presented for payment. The Corporation shall give to the Trustee notice of the location of each such office or agency and of any change in the location thereof. In case the Corporation shall fail to maintain any such office or agency in the Borough of Manhattan, The City of New York, or shall fail to give such

23

notice of the location or of any change in the location thereof, presentations may be made and notices and demands may be served at the corporate trust office of the Trustee in the Borough of Manhattan, The City of New York, and the Corporation hereby appoints the Trustee as its agent to receive all such presentations, notices and demands.

If Unregistered Securities of any series are outstanding, the Corporation shall maintain or cause the Trustee to maintain one or more agencies in a city or cities located outside the United States (including any city in which such an agency is required to be maintained under the rules of any securities exchange on which the Debt Securities of such series are listed) where such Unregistered Securities, and Coupons, if any, appertaining thereto may be presented for payment. No payment on any Unregistered Security or Coupon will be made upon presentation of such Unregistered Security or Coupon at an agency of the Corporation within the United States nor will any payment be made by transfer to an account in, or by mail to an address in, the United States, except, at the option of the Corporation, if the Corporation shall have determined that, pursuant to applicable United States laws and regulations then in effect such payment can be made without adverse tax consequences to the Corporation. Notwithstanding the foregoing, payments in U.S. Dollars with respect to Unregistered Securities of any series and Coupons appertaining thereto that are payable in U.S. Dollars may be made at an agency of the Corporation maintained in the Borough of Manhattan, The City of New York if such payment in U.S. Dollars at each agency maintained by the Corporation outside the United States for payment on such Unregistered Securities is illegal or is effectively precluded by exchange controls or other similar restrictions.

The Corporation hereby initially designates Bank One Trust Company, N.A., located at its Corporate Trust Office, as the Security Registrar and as the office or agency of the Corporation in the Borough of Manhattan, The City of New York, where the Debt Securities may be presented for payment and, in the case of Registered Securities, for registration of transfer and for exchange as in this Indenture provided and where notices and demands to or upon the Corporation in respect of the Debt Securities of any series or of this Indenture may be served.

SECTION 4.03. PROVISIONS AS TO PAYING AGENT.

(a) Whenever the Corporation shall appoint a paying agent other than the Trustee with respect to the Debt Securities of any series, it will cause such paying agent to execute and deliver to the Trustee an instrument in which such agent shall agree with the Trustee, subject to the provisions of this Section:

(1) that it will hold sums held by it as such agent for the payment of the principal of (and premium, if any), interest, if any, or Additional Amounts, if any, on the Debt Securities of such series in trust for the benefit of the Holders of such series, or Coupons appertaining thereto, as the case may be, entitled thereto and will notify the Trustee of the receipt of sums to be so held,

(2) that it will give the Trustee notice of any failure by the Corporation (or by any other obligor on the Debt Securities of such series) to make a payment of the principal of

24