*6800093500*
*Indenture*

AMENDED AND RESTATED DECLARATION OF TRUST

AMONG

DELPHI CORPORATION
as Sponsor,

BANK ONE TRUST COMPANY, N.A.
as Property Trustee,

BANK ONE DELAWARE, INC.
as Delaware Trustee,

AND

THE ADMINISTRATIVE TRUSTEES NAMED HEREIN
Dated as of October 28, 2003

DELPHI TRUST I

*18*

## TABLE OF CONTENTS

Page(s)

ARTICLE I DEFINED TERMS ...................................................................................2

    Section 1.01    Definitions ................................................................................2

ARTICLE II ESTABLISHMENT OF THE TRUST.........................................................10

    Section 2.01    Name ..........................................................................................10
    Section 2.02    Office of the Delaware Trustee; Principal Place of Business.............10
    Section 2.03    Organizational Expenses ...........................................................11
    Section 2.04    Issuance of the Preferred Securities.............................................11
    Section 2.05    Subscription and Purchase of Notes; Issuance of the Common
                    Securities.....................................................................................11
    Section 2.06    Declaration of Trust....................................................................12
    Section 2.07    Authorization to Enter into Certain Transactions.........................12
    Section 2.08    Assets of the Trust ......................................................................16
    Section 2.09    Title to Trust Property ................................................................16
    Section 2.10    Responsibilities of the Sponsor ...................................................17
    Section 2.11    Certain Covenants of the Sponsor ...............................................17
    Section 2.12    Guarantee of Payment of Trust Obligations .................................18
    Section 2.13    Execution of Documents...............................................................18

ARTICLE III PAYMENT ACCOUNT.............................................................................18

    Section 3.01    Payment Account .......................................................................18

ARTICLE IV DISTRIBUTIONS; REDEMPTION; EXCHANGE ...................................19

    Section 4.01    Distributions ..............................................................................19
    Section 4.02    Optional Redemption, Mandatory Redemption and Special
                    Event Redemption ......................................................................20
    Section 4.03    Record Date for Redemption Price ..............................................22
    Section 4.04    Subordination of Common Securities...........................................22
    Section 4.05    Payment Procedures...................................................................22
    Section 4.06    Tax Returns and Reports ............................................................22
    Section 4.07    Payment of Taxes, Duties, Etc. of the Trust .................................23
    Section 4.08    Payments under Indenture .........................................................23

ARTICLE V TRUST SECURITIES CERTIFICATES .....................................................23

    Section 5.01    Initial Ownership .......................................................................23
    Section 5.02    The Trust Securities Certificates ................................................24
    Section 5.03    Delivery of Trust Securities Certificates .....................................24
    Section 5.04    Registration of Transfer and Exchange of Preferred Securities;
                    Restrictions on Transfer...............................................................25

i

Section 5.05       Mutilated, Destroyed, Lost or Stolen Trust Securities
                   Certificates .............................................................27
Section 5.06       Persons Deemed Securityholders ...............................27
Section 5.07       Access to List of Securityholders' Names and Addresses...........27
Section 5.08       Maintenance of Office or Agency ..............................28
Section 5.09       Appointment of Paying Agent ....................................28
Section 5.10       Ownership of Common Securities by Sponsor..................29
Section 5.11       Global Certificates; Non-Global Certificates; Common
                   Securities Certificate....................................................29
Section 5.12       Notices to Clearing Agency.......................................30
Section 5.13       Definitive Preferred Securities Certificates .................31
Section 5.14       Rights of Securityholders ..........................................31

ARTICLE VI ACT OF SECURITYHOLDERS; MEETINGS; VOTING.............32

Section 6.01       Limitations on Voting Rights ......................................32
Section 6.02       Notice of Meetings ....................................................33
Section 6.03       Meetings of Preferred Securityholders .......................33
Section 6.04       Voting Rights ............................................................33
Section 6.05       Proxies, Etc. .............................................................33
Section 6.06       Securityholder Action by Written Consent....................34
Section 6.07       Record Date for Voting and Other Purposes..................34
Section 6.08       Acts of Securityholders..............................................34
Section 6.09       Inspection of Records ................................................36

ARTICLE VII REPRESENTATIONS AND WARRANTIES .............................36

Section 7.01       Representations and Warranties of the Property Trustee and the
                   Delaware Trustee .......................................................36
Section 7.02       Representations and Warranties of Sponsor .................37

ARTICLE VIII THE TRUSTEES .................................................................38

Section 8.01       Certain Duties and Responsibilities.............................38
Section 8.02       Notice of Defaults......................................................39
Section 8.03       Certain Rights of Property Trustee ..............................41
Section 8.04       Not Responsible for Recitals or Issuance of Securities ........44
Section 8.05       May Hold Securities...................................................44
Section 8.06       Compensation; Indemnity; Fees..................................44
Section 8.07       Property Trustee Required; Eligibility of Trustees.............45
Section 8.08       Conflicting Interests; Guarantee Described ..................45
Section 8.09       Resignation and Removal; Appointment of Successor .........46
Section 8.10       Acceptance of Appointment by Successor ....................47
Section 8.11       Merger, Conversion, Consolidation or Succession to Business.........48
Section 8.12       Preferential Collection of Claims Against Sponsor or Trust ........48
Section 8.13       Reports by Property Trustee .......................................48
Section 8.14       Reports to the Property Trustee ..................................49
Section 8.15       Evidence of Compliance with Conditions Precedent ..........49

ii

Section 8.16    Number of Trustees .................................................................50
Section 8.17    Delegation of Power .................................................................50
Section 8.18    Appointment of Administrative Trustees ...............................50
Section 8.19    Administrative Trustee Meetings ...........................................51
Section 8.20    Outside Businesses ..................................................................51

ARTICLE IX TERMINATION, LIQUIDATION AND MERGER ..........................52

Section 9.01    Dissolution upon Expiration Date ..........................................52
Section 9.02    Early Termination.....................................................................52
Section 9.03    Termination...............................................................................52
Section 9.04    Liquidation................................................................................53
Section 9.05    Mergers, Consolidations, Amalgamations or Replacements of
                the Trust ....................................................................................54

ARTICLE X MISCELLANEOUS PROVISIONS ...............................................55

Section 10.01   Limitation of Rights of Securityholders ...............................55
Section 10.02   Amendment................................................................................55
Section 10.03   Separability................................................................................57
Section 10.04   Governing Law ........................................................................57
Section 10.05   Payments Due on Non-Business Day.....................................58
Section 10.06   Successors .................................................................................58
Section 10.07   Headings ...................................................................................58
Section 10.08   Reports, Notices and Demands ...............................................58
Section 10.09   Trust Indenture Act; Conflict with Trust Indenture Act.......59
Section 10.10   Acceptance of Terms of Declaration, Guarantee and Indenture..........59
Section 10.11   Counterparts..............................................................................59

EXHIBITS

Exhibit A – Common Securities Certificate

Exhibit B – Preferred Securities Certificate

## DELPHI TRUST I

Certain Sections of this Declaration
relating to Sections 310 through 318
of the Trust Indenture Act of 1939:

| TRUST INDENTURE ACT SECTION | | DECLARATION SECTION |
|---|---|---|
| Section 310 | (a)(1) | 8.7 |
| | (a)(2) | 8.7 |
| | (a)(4) | 2.7(a)(ii) |
| | (b) | 8.8 |
| Section 311 | (a) | 8.12 |
| | (b) | 8.12 |
| Section 312 | (a) | 5.7 |
| | (b) | 5.7 |
| | (c) | 5.7 |
| Section 313 | (a) | 8.13(a) |
| | (c) | 10.8 |
| | (d) | 8.13(c) |
| | (a)(4) | 8.13(b) |
| | (b) | 8.13(b) |
| Section 314 | (a) | 8.14 |
| | (b) | Not Applicable |
| | (c)(1) | 8.15 |

iv

|  |  |  |
|---|---|---|
|  | (c)(2) | 8.15 |
|  | (c)(3) | Not Applicable |
|  | (d) | Not Applicable |
|  | (e) | 1.1, 8.15 |
| Section 315 | (a) | 8.1(a), 8.3(a) |
|  | (b) | 8.2, 10.8 |
|  | (c) | 8.1(a) |
|  | (d) | 8.1, 8.3 |
|  | (e) | Not Applicable |
| Section 316 | (a) | Not Applicable |
|  | (a)(1)(A) | Not Applicable |
|  | (a)(1)(B) | Not Applicable |
|  | (a)(2) | Not Applicable |
|  | (b) | Not Applicable |
|  | (c) | 6.7 |
| Section 317 | (a)(1) | Not Applicable |
|  | (b) | 5.9 |
| Section 318 | (a) | 10.10 |

*Note: This reconciliation and tie sheet shall not, for any purpose, be deemed to be a part of the Declaration.

v

AMENDED AND RESTATED DECLARATION OF TRUST, dated as of October 28, 2003 among (i) Delphi Corporation, a Delaware corporation (including any successors or assigns, the "Sponsor"), (ii) Bank One Trust Company, N.A., a national banking association, as property trustee (in such capacity, the "Property Trustee" and, in its personal capacity and not in its capacity as Property Trustee, the "Bank"), (iii) Bank One Delaware, Inc., a Delaware corporation, as Delaware trustee (in such capacity, the "Delaware Trustee") and (iv) J.T. Battenberg III, an individual, and Alan S. Dawes, an individual, each of whose address is c/o Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098, (each, an "Administrative Trustee" and, collectively, the "Administrative Trustees" and, collectively with the Property Trustee and Delaware Trustee, the "Trustees"). The Sponsor and the Trustees hereby agree as follows:

## WITNESSETH:

WHEREAS, the Sponsor, the Delaware Trustee and J.T. Battenberg III and Alan S. Dawes, as administrative trustees, have heretofore duly declared and established a statutory trust pursuant to the Delaware Statutory Trust Act by the entering into a Declaration of Trust, dated as of August 25, 2003 (the "Original Declaration"), and by the execution and filing by the Delaware Trustee and J.T. Battenberg III and Alan S. Dawes, as administrative trustees, with the Secretary of State of the State of Delaware of a certificate of trust, filed on August 25, 2003, for the sole purpose of issuing and selling certain securities representing undivided beneficial interests in the assets of the Trust (as defined herein) and investing the proceeds thereof in the Notes (as defined herein);

WHEREAS, as of the date hereof, no interests in the Trust have been issued; and

WHEREAS, the Sponsor and the Trustees desire to amend and restate the Original Declaration in its entirety as set forth herein to provide for, among other things, (i) the issuance and sale of the Common Securities (as defined herein) by the Trust to the Sponsor, (ii) the issuance and sale of the Preferred Securities (as defined herein) by the Trust pursuant to the Underwriting Agreement (as defined herein) and (iii) the acquisition by the Trust from the Sponsor of all of the right, title and interest in the Notes;

NOW, THEREFORE, in consideration of the agreements and obligations set forth herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, each party, for the benefit of the other party and for the benefit of the Holders (as defined herein) of the Preferred Securities, hereby amends and restates the Original Declaration in its entirety and agrees as follows:

## ARTICLE I

### DEFINED TERMS

Section 1.01    <u>Definitions</u>

For all purposes of this Declaration, except as otherwise expressly provided or unless the context otherwise requires:

(a)    the terms defined in this Article have the meanings assigned to them in this Article and include the plural as well as the singular;

(b)    all other terms used herein that are defined in the Trust Indenture Act, either directly or by reference therein, have the meanings assigned to them therein;

(c)    unless the context otherwise requires, any reference to an "Article", "Section" or an "Exhibit" refers to an Article, Section or an Exhibit, as the case may be, of this Declaration; and

(d)    the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Declaration as a whole and not to any particular Article, Section or other subdivision.

"Act" has the meaning specified in Section 6.08.

"Additional Amount" means, with respect to Trust Securities of a given Liquidation Amount and a given period, the amount of Compounded Interest (as defined in the Notes) paid by the Sponsor on a Like Amount of Notes for such period.

"Additional Sums" means, with respect to the Trust Securities, the amount of Additional Sums (as defined in the Notes) paid by the Sponsor on the Notes.

"Administrative Trustee" means each of J.T. Battenberg III and Alan S. Dawes, each solely in his capacity as Administrative Trustee of the Trust continued hereunder and not in her individual capacity, or such Administrative Trustee's successor in interest in such capacity, or any successor in interest in such capacity, or any successor administrative trustee appointed as herein provided.

"Affiliate" of any specified Person means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person, provided, however that an Affiliate of the Sponsor shall not be deemed to include the Trust. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or

2

indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Applicable Procedures" means, with respect to any transfer or transaction involving a Global Certificate or beneficial interest therein, the rules and procedures of the Clearing Agency for such security, in each case to the extent applicable to such transaction and as in effect from time to time.

"Authorized Officer" of a Person means any Person that is authorized to bind such Person.

"Bank" has the meaning specified in the preamble to this Declaration.

"Bankruptcy Event" means, with respect to any Person:

(a)     the entry of a decree or order by a court having jurisdiction in the premises judging such Person as bankrupt or insolvent, or approving as properly filed a petition seeking reorganization, arrangement, adjudication or composition of or in respect of such Person under any applicable federal or state bankruptcy, insolvency, reorganization or other similar law, or appointing a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of such Person or of any substantial part of its property or ordering the winding-up or liquidation of its affairs, and the continuance of any such decree or order unstayed and in effect for a period of 60 consecutive days; or

(b)     the institution by such Person of proceedings to be adjudicated as bankrupt or insolvent, or the consent by it to the institution of bankruptcy or insolvency proceedings against it, or the filing by it of a petition or answer or consent seeking reorganization or relief under any applicable federal or state bankruptcy, insolvency, reorganization or other similar law, or the consent by it to the filing of any such petition or to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or similar official) of such Person or of any substantial part of its property, or the making by it of an assignment for the benefit of creditors, or the admission by it in writing of its inability to pay its debts generally as they become due and its willingness to be adjudicated a bankrupt, or the taking of corporate action by such Person in furtherance of any such action.

"Board of Directors" means either the board of directors of the Sponsor or any committee of that board duly authorized to act hereunder.

"Business Day" means each Monday, Tuesday, Wednesday, Thursday and Friday which is not (1) a day on which banking institutions in the City of New York are authorized or obligated by law or executive order to remain closed or (2) a day on which the Corporate Trust

3

Office of the Property Trustee or the corporate trust office of the Note Trustee is closed for business.

"Certificate Depository Agreement" means the Letter of Representations by the Trust and accepted by The Depository Trust Company, as the initial Clearing Agency, dated as of the Closing Date, relating to the Preferred Securities Certificates, as the same may be amended and supplemented from time to time.

"Clearing Agency" means an organization registered as a "clearing agency" pursuant to Section 17A of the Securities Exchange Act of 1934, as amended, that has been designated to act as depositary for the Preferred Securities pursuant to the Certificate Depository Agreement. The Depository Trust Company will be the initial Clearing Agency.

"Clearing Agency Participant" means a broker, dealer, bank, other financial institution or other Person for whom from time to time a Clearing Agency effects book-entry transfers and pledges of securities deposited with the Clearing Agency.

"Closing Date" means the date on which the Preferred Securities are issued and delivered under the Underwriting Agreement.

"Code" means the Internal Revenue Code of 1986, as amended from time to time, or any successor legislation.

"Commission" means the Securities and Exchange Commission, as from time to time constituted, created under the Securities Exchange Act of 1934, as amended, or, if at any time after the execution of this instrument such Commission is not existing and performing the duties now assigned to it under the Trust Indenture Act, then the body performing such duties at such time.

"Common Securities Certificate" means a certificate evidencing ownership of Common Securities, substantially in the form attached as Exhibit A.

"Common Securities Purchase Agreement" means the Common Securities Purchase Agreement, dated as of October 28, 2003, between the Trust and the Sponsor.

"Common Security" means an undivided beneficial interest in the assets of the Trust, having a Liquidation Amount with respect to the assets of the Trust of $25 and having the rights provided therefor in this Declaration, including the right to receive Distributions and a Liquidation Distribution as provided herein.

"Corporate Trust Office" means the corporate trust office of the Property Trustee at which at any particular time its corporate trust business shall be administered, which office at the date hereof is located at 1111 Polaris Parkway, Mail Suite OH1-0181, Columbus, Ohio 43240, Attention: Global Corporate Trust Services.

"Covered Person" means (a) any officer, director, trustee, shareholder, partner, member, representative, employee or agent of (i) the Trust or (ii) the Trust's Affiliates; and (b)

4

any Holder of Trust Securities.

"Declaration" means this Amended and Restated Declaration of Trust, as the same may be modified, amended or supplemented in accordance with the applicable provisions hereof, including all exhibits hereto, including, for all purposes of this Declaration any such modification, amendment or supplement, the provisions of the Trust Indenture Act that are deemed to be a part of and govern this Declaration and any such modification, amendment or supplement, respectively.

"Definitive Preferred Securities Certificates" means either or both (as the context requires) of (a) Preferred Securities Certificates that are not Global Certificates issued in certificated, fully registered form as provided in Section 5.11(b) and (b) Preferred Securities Certificates that are not Global Certificates issued in certificated, fully registered form as provided in Section 5.13.

"Delaware Statutory Trust Act" means Chapter 38 of Title 12 of the Delaware Code, 12 Del. C. §§ 3801 et seq., as it may be amended from time to time.

"Delaware Trustee" means the Person identified as the "Delaware Trustee" in the preamble to this Declaration solely in its capacity as Delaware Trustee of the Trust continued hereunder and not in its individual capacity, or its successor in interest in such capacity, or any successor Delaware trustee appointed as herein provided.

"Direct Action" has the meaning specified in Section 6.08(e).

"Distribution Date" has the meaning specified in Section 4.01(a).

"Distributions" means amounts payable in respect of the Trust Securities as provided in Section 4.01.

"Early Termination Event" has the meaning specified in Section 9.02.

"Event of Default" means the occurrence of a Note Event of Default, whatever the reason for such Note Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body.

"Expiration Date" has the meaning specified in Section 9.01.

"Global Certificate" means a Preferred Security Certificate that is registered in the Security Register in the name of a Clearing Agency or a nominee thereof.

"Guarantee" means the Guarantee Agreement executed and delivered by the Sponsor and Bank One Trust Company, N.A., a national banking association, as guarantee trustee, contemporaneously with the execution and delivery of this Declaration, for the benefit of the Holders of the Preferred Securities, as amended from time to time.

5

"Holder" means a Person in whose name a Trust Securities Certificate representing a Trust Security is registered, such Person being a beneficial owner within the meaning of the Delaware Statutory Trust Act.

"Indemnified Person" has the meaning specified in Section 8.06(c).

"Indenture" means the Indenture, dated as of October 28, 2003 between the Sponsor and the Note Trustee, as amended or supplemented from time to time.

"Lien" means any lien, pledge, charge, encumbrance, mortgage, deed of trust, adverse ownership interest, hypothecation, assignment, security interest or preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever.

"Like Amount" means (a) with respect to a redemption of any Trust Securities, Trust Securities having an aggregate Liquidation Amount equal to the principal amount of Notes to be contemporaneously redeemed in accordance with the Indenture, the proceeds of which will be used to pay the applicable Redemption Price of such Trust Securities, (b) with respect to a distribution of Notes to Holders of Trust Securities in connection with a dissolution or liquidation of the Trust, Notes having a principal amount equal to the aggregate Liquidation Amount of the Trust Securities of the Holder to whom such Notes are distributed, and (c) with respect to any distribution of Additional Amounts to Holders of Trust Securities, Notes having a principal amount equal to the aggregate Liquidation Amount of the Trust Securities in respect of which such distribution is made.

"Liquidation Amount" means an amount with respect to the assets of the Trust equal to $25 per Trust Security.

"Liquidation Date" means each date on which Notes or cash are to be distributed to Holders of Trust Securities in connection with a dissolution and liquidation of the Trust pursuant to Section 9.04(a).

"Liquidation Distribution" has the meaning specified in Section 9.04(d).

"1940 Act" means the Investment Company Act of 1940, as amended.

"Note Event of Default" means an "Event of Default" as defined in the Indenture.

"Note Purchase Agreement" means the Note Purchase Agreement, dated as of October 28, 2003, between the Trust and the Sponsor.

"Note Redemption Date" means, with respect to any Notes to be redeemed under the Indenture, the date fixed for redemption thereof under the Indenture.

"Note Trustee" means the Person identified as the "Trustee" in the Indenture, solely in its capacity as Trustee pursuant to the Indenture and not in its individual capacity, or its successor in interest in such capacity, or successor Trustee appointed as provided in the Indenture.

6

"Notes" means up to $257,731,975 aggregate principal amount of the Sponsor's 8.25% junior subordinated Notes due 2033 issued pursuant to the Indenture.

"Officers' Certificate" means, with respect to any Person, a certificate signed by two Authorized Officers of such Person or, if such Person is an individual, signed by such Person. Any Officers' Certificate delivered with respect to compliance with a condition or covenant provided for in this Declaration shall include:

(a)    a statement that each officer signing the Officers' Certificate has read the covenant or condition and the definitions relating thereto;

(b)    a brief statement of the nature and scope of the examination or investigation undertaken by each officer in rendering the Officers' Certificate;

(c)    a statement that each officer has made such examination or investigation as, in such officer's opinion, is necessary to enable such officer to express an informed opinion as to whether or not such covenant or condition has been complied with; and

(d)    a statement as to whether, in the opinion of each such officer, such condition or covenant has been complied with.

"Opinion of Counsel" means a written opinion of counsel, who may be counsel for the Trust, the Property Trustee or the Sponsor, and who may be an employee of any thereof and who shall be reasonably acceptable to the Property Trustee. Any Opinion of Counsel delivered with respect to compliance with a condition or covenant provided for in this Declaration shall include:

(a)    a statement that each individual signing the Opinion of Counsel has read the covenant or condition and the definitions relating thereto;

(b)    a brief statement of the nature and scope of the examination or investigation undertaken by each individual in rendering the Opinion of Counsel;

(c)    a statement that each individual has made such examination or investigation as is necessary to enable such individual to express an informed opinion as to whether or not such covenant or condition has been complied with; and

(d)    a statement as to whether, in the opinion of each such individual, such condition or covenant has been complied with.

"Original Declaration" has the meaning specified in the recitals to this Declaration.

7

"Outstanding", when used with respect to Trust Securities, means, as of the date of determination, all Trust Securities theretofore executed and delivered under this Declaration, except:

      (a)    Trust Securities theretofore canceled by the Security Registrar or delivered to the Security Registrar for cancellation;

      (b)    Trust Securities for whose payment or redemption money in the necessary amount has been theretofore deposited with the Property Trustee or any Paying Agent for the Holders of such Trust Securities; provided that, if such Trust Securities are to be redeemed, notice of such redemption has been duly given pursuant to this Declaration; and

      (c)    Trust Securities which have been paid or in exchange for or in lieu of which other Trust Securities have been executed and delivered pursuant to Section 5.05;

provided, however, that in determining whether the Holders of the requisite Liquidation Amount of the Outstanding Trust Securities have given any request, demand, authorization, direction, notice, consent or waiver hereunder, Trust Securities owned by the Sponsor, any Administrative Trustee or any Affiliate of the Sponsor or any Administrative Trustee shall be disregarded and deemed not to be Outstanding, except that (a) in determining whether any Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Trust Securities that an officer of such Trustee involved in the administration of this Declaration actually knows to be so owned shall be so disregarded and (b) the foregoing shall not apply at any time when all of the Outstanding Trust Securities are owned by the Sponsor, one or more of the Administrative Trustees and/or any such Affiliate. Trust Securities so owned which have been pledged in good faith may be regarded as Outstanding if the pledge establishes to the satisfaction of the Security Registrar the pledgee's right so to act with respect to such Trust Securities and that the pledgee is not the Sponsor, any Administrative Trustee or any Affiliate of the Sponsor or any Administrative Trustee.

"Owner" means each Person who is the beneficial owner of Preferred Securities as reflected in the records of the Clearing Agency or, if a Clearing Agency Participant is not the Owner, then as reflected in the records of a Person maintaining an account with such Clearing Agency (directly or indirectly, in accordance with the rules of such Clearing Agency).

"Paying Agent" means any paying agent or co-paying agent appointed pursuant to Section 5.09.

"Payment Account" means a segregated non-interest bearing trust account maintained by the Property Trustee with the Bank in its trust department for the benefit of the Securityholders in which all amounts paid in respect of the Notes will be held and from which the Property Trustee shall make payments to the Securityholders in accordance with Section 4.01. The Payment Account shall be an account that is maintained with a banking institution (which may be the Property Trustee) the rating on whose long-term unsecured indebtedness is at

least equal to the rating assigned to the Preferred Securities by a "nationally recognized statistical rating organization," as that term is defined for purposes of Rule 436(g)(2) under the Securities Act.

"Person" means any individual, corporation, partnership, joint venture, trust, limited liability company, unincorporated organization or government or any agency or political subdivision thereof or any other entity.

"Preferred Securities Certificate" means a certificate evidencing ownership of Preferred Securities, substantially in the form attached as Exhibit B.

"Preferred Security" means an undivided beneficial interest in the assets of the Trust, having a Liquidation Amount with respect to the assets of the Trust of $25 and having the rights provided therefor in this Declaration, including the right to receive Distributions and a Liquidation Distribution as provided herein.

"Property Trustee" means the commercial bank or trust company identified as the "Property Trustee" in the preamble to this Declaration solely in its capacity as Property Trustee of the Trust heretofore formed and continued hereunder and not in its individual capacity, or its successor in interest in such capacity, or any successor property trustee appointed as herein provided.

"Redemption Date" means, with respect to any Trust Security to be redeemed, each Note Redemption Date.

"Redemption Price" means, with respect to any Trust Security, $25 per Trust Security, plus accumulated and unpaid Distributions (including any Additional Amounts) to the Redemption Date.

"Relevant Trustee" has the meaning specified in Section 8.09(a).

"Securities Act" means the Securities Act of 1933, as amended.

"Security Register" and "Security Registrar" have the respective meanings specified in Section 5.04.

"Securityholder" has the same meaning as "Holder."

"Special Event" means a Tax Event or an Investment Company Event (each as defined in the Notes).

"Sponsor" has the meaning specified in the preamble to this Declaration.

"Successor Delaware Trustee" has the meaning specified in Section 8.09(c).

"Successor Property Trustee" has the meaning specified in Section 8.09(b).

9

"Successor Securities" has the meaning specified in Section 9.05.

"Successor Trustee" means either the Successor Delaware Trustee or the Successor Property Trustee."

"Trust" means the Delaware statutory trust continued hereby and identified on the cover page of this Declaration.

"Trust Indenture Act" means the Trust Indenture Act of 1939 as amended and in force at the date as of which this instrument was executed; provided, however, that in the event the Trust Indenture Act of 1939 is amended after such date, "Trust Indenture Act" means, to the extent required by any such amendment, the Trust Indenture Act of 1939 as so amended.

"Trust Property" means (a) the Notes, (b) any cash on deposit in, or owing to, the Payment Account and (c) all proceeds and rights in respect of the foregoing to be held by the Property Trustee pursuant to the terms of this Declaration for the benefit of the Securityholders.

"Trust Securities Certificate" means any one of the Common Securities Certificates, the Global Certificates or the Preferred Securities Certificates.

"Trust Security" means any one of the Common Securities or the Preferred Securities.

"Trustees" has the meaning specified in the preamble to this Declaration.

"Underwriting Agreement" means the Underwriting Agreement dated as of October 21, 2003 for the offering and sale of the Preferred Securities.

## ARTICLE II

## ESTABLISHMENT OF THE TRUST

### Section 2.01    Name

The Trust continued by this Declaration shall be known as "Delphi Trust I" as such name may be modified from time to time by the Administrative Trustees following written notice to the Holders of Trust Securities and the other Trustees. The Trust's activities may be conducted under the name of the Trust or any other name deemed advisable by the Administrative Trustees.

### Section 2.02    Office of the Delaware Trustee; Principal Place of Business

The address of the Delaware Trustee in the State of Delaware is c/o Bank One Delaware, Inc., Three Christina Centre, 201 Walnut Street, Wilmington, Delaware 19801, Attention: Global Corporate Trust Services, or such other address in the State of Delaware as the Delaware Trustee may designate by written notice to the Securityholders and the Sponsor. The

10

principal executive office of the Trust is c/o Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098.

Section 2.03    Organizational Expenses

The Sponsor shall pay organizational expenses of the Trust as they arise or shall, upon request of any Trustee, promptly reimburse such Trustee for any such expenses paid by such Trustee. The Sponsor shall make no claim upon the Trust Property for the payment of such expenses.

Section 2.04    Issuance of the Preferred Securities

On October 21, 2003, the Sponsor, both on its own behalf and on behalf of the Trust, pursuant to the Original Declaration, executed and delivered the Underwriting Agreement, which action is hereby ratified and confirmed on behalf of the Trust. The Administrative Trustees shall, on behalf of the Trust, issue Preferred Securities having such terms as are set forth in this Declaration. On the Closing Date, an Administrative Trustee, on behalf of the Trust, shall execute in accordance with Section 5.02 one or more permanent Global Certificates in definitive, fully registered form which shall be delivered to the Clearing Agency or a nominee thereof or a custodian therefor and registered in the name of the Clearing Agency or a nominee thereof, in an aggregate amount sold as provided in the Underwriting Agreement, against receipt of the purchase price of such Preferred Securities of $25 per Preferred Security, which amount the Administrative Trustees shall promptly deliver to the Property Trustee. The number of Preferred Securities represented by a Global Certificate may from time to time be increased or decreased by adjustments made on the records of the Property Trustee, as Security Registrar, whereupon the Property Trustee, in accordance with Applicable Procedures, shall instruct the Clearing Agency or its authorized representative to make a corresponding adjustment to its records as hereinafter provided.

Section 2.05    Subscription and Purchase of Notes; Issuance of the Common Securities

On the Closing Date, an Administrative Trustee, on behalf of the Trust, shall execute in accordance with Section 5.02 and deliver to the Sponsor a single Common Securities Certificate registered in the name of the Sponsor, in the aggregate amount acquired by the Sponsor on the Closing Date pursuant to the Common Securities Purchase Agreement against receipt of the purchase price of such Common Securities from the Sponsor in the amount of $25 per Common Security, which amount the Administrative Trustees shall promptly deliver to the Property Trustee. In the event the purchase price for the Common Securities acquired by the Sponsor on the Closing Date as herein provided is not an integral multiple of $25, a fractional Common Security will be issued. Contemporaneously therewith, the Administrative Trustees, on behalf of the Trust, shall on the Closing Date subscribe to and purchase from the Sponsor the Notes, registered in the name of the Property Trustee (in its capacity as such) and having an aggregate principal amount equal to the aggregate Liquidation Amount of Preferred Securities and Common Securities acquired on the Closing Date and, in satisfaction of the purchase price for such Notes, the Property Trustee, on behalf of the Trust, shall deliver to the Sponsor the sum

11

of the amounts delivered on the Closing Date to the Property Trustee pursuant to (i) the second sentence of Section 2.04, and (ii) the first sentence of this Section 2.05.

Section 2.06    Declaration of Trust

The exclusive purposes and functions of the Trust are (a) to issue and sell Trust Securities and use the proceeds from such sale to acquire the Notes, (b) to distribute the Trust's income as provided in this Declaration and (c) to engage in only those other activities necessary or incidental thereto. The Trust shall not borrow money, issue debt or reinvest proceeds derived from investments, pledge any of its assets or otherwise undertake (or permit to be undertaken) any activity that would cause the Trust not to be classified for United States federal income tax purposes as a grantor trust. The Sponsor hereby appoints the Trustees as trustees of the Trust, to have all the rights, powers and duties to the extent expressly set forth herein, and the Trustees hereby accept such appointment. The Property Trustee hereby declares that it will hold the Trust Property in trust upon and subject to the conditions set forth herein for the benefit of the Trust and the Securityholders. The Administrative Trustees shall have all rights, powers and duties set forth herein and in accordance with applicable law with respect to accomplishing the purposes of the Trust. The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Property Trustee or the Administrative Trustees set forth herein. The Delaware Trustee shall be one of the Trustees of the Trust for the sole and limited purpose of fulfilling the requirements of Section 3807(a) of the Delaware Statutory Trust Act and for taking such actions as are required to be taken by a Delaware trustee under the Delaware Statutory Trust Act, and shall not be entitled to exercise any powers or have any of the duties and responsibilities of the Administrative Trustees or the Property Trustee described in this Declaration.

Section 2.07    Authorization to Enter into Certain Transactions.

(a) The Trustees shall conduct the affairs of the Trust in accordance with the terms of this Declaration. Subject to the limitations set forth in Section 2.06 and paragraph (b) of this Section, and in accordance with the following provisions (i) and (ii), the Trustees shall have the exclusive power, duty and the authority to cause the Trust to engage in the following activities:

(i)    As among the Trustees, each Administrative Trustee (and no other Trustee) shall have the power and authority to act on behalf of the Trust, acting alone or jointly, with respect to the following matters:

(A) to issue and sell the Trust Securities, provided, however, that the Trust may issue no more than one series of Preferred Securities and no more than one series of Common Securities, and, provided, further, that there shall be no interests in the Trust other than the Trust Securities, and the issuance of Trust Securities shall be limited to simultaneous issuances of both Preferred Securities and Common Securities on the Closing Date in accordance with the provisions of the Underwriting Agreement and the Common Securities Purchase Agreement

12

subject to the issuance of Trust Securities pursuant to Sections 5.04 and 5.05 and Successor Securities pursuant to Section 9.05;

(B) to cause the Trust to enter into, and to execute, deliver and perform on behalf of the Trust, the Common Securities Purchase Agreement, the Certificate Depository Agreement and the Note Purchase Agreement;

(C) to assist in the registration of the Preferred Securities under the Securities Act, and under state securities or blue sky laws, and the qualification of this Declaration as a trust indenture under the Trust Indenture Act;

(D) to assist in the listing of the Preferred Securities upon such securities exchange or exchanges as shall be determined by the Sponsor and the registration of the Preferred Securities under the Securities Exchange Act of 1934, as amended, and the preparation and filing of all periodic and other reports and other documents pursuant to the foregoing (only to the extent that such listing or registration is requested by the Sponsor);

(E) to appoint a Paying Agent, a Security Registrar and an authenticating agent in accordance with this Declaration;

(F) to the extent provided in this Declaration, to wind up the affairs of and liquidate the Trust and prepare, execute and file the certificate of cancellation with the Secretary of State of the State of Delaware;

(G) to execute and deliver letters, documents or instruments with the Clearing Agency relating to the Preferred Securities;

(H) to obtain a CUSIP number for the Preferred Securities;

(I) to establish a record date with respect to all actions to be taken hereunder that require a record date be established, including and with respect to, for the purposes of Section 316(c) of the Trust Indenture Act, Distributions, voting rights, and redemptions and to issue relevant notices to the Holders of Preferred Securities and Holders of Common Securities as to such actions and applicable record dates;

(J) to bring or defend, pay, collect, compromise, arbitrate, resort to legal action, or otherwise adjust claims or demands of or against the Trust, unless pursuant to the terms of this Declaration, the Property Trustee has the exclusive power to take such action;

(K) to employ or otherwise engage employees and agents (who may be designated as officers with titles) and managers, contractors, advisors, and consultants and pay reasonable compensation for such services;

13

(L) to give the certificate required by Section 314(a)(4) of the Trust Indenture Act to the Property Trustee, which certificate may be executed by any Administrative Trustee;

(M)    to incur expenses that are necessary or incidental to carry out any of the purposes of the Trust;

(N) to execute all documents or instruments, perform all duties and powers, and do all things for and on behalf of the Trust in all matters necessary or incidental to the foregoing; and

(O) to take any action incidental to the foregoing as the Trustees may from time to time determine is necessary or advisable to give effect to the terms of this Declaration including, but not limited to:

(I)    causing the Trust not to be deemed to be an "investment company" required to be registered under the 1940 Act;

(II)    causing the Trust to be classified for United States federal income tax purposes as a grantor trust; and

(III)    cooperating with the Sponsor to ensure that the Notes will be treated as indebtedness of the Sponsor for United States federal income tax purposes; provided that such action does not adversely affect in any material respect the interests of Securityholders except as otherwise provided in Section 10.02(a).

(ii)    As among the Trustees, the Property Trustee shall have the power, duty and authority to act on behalf of the Trust only with respect to the following matters:

(A) the establishment and maintenance of the Payment Account;

(B) the receipt of and taking legal title to the Notes;

(C) the collection of interest, principal and any other payments made in respect of the Notes in the Payment Account;

(D) the distribution from the Trust Property of amounts owed to the Securityholders in respect of the Trust Securities;

(E) the exercise of all of the rights, powers and privileges of a holder of the Notes;

(F) the sending of notices of default, other notices and other information regarding the Trust Securities and the Notes to the Securityholders in accordance with this Declaration;

14

(G) the distribution of the Trust Property in accordance with the terms of this Declaration;

(H) to the extent provided in this Declaration, the winding up of the affairs of and liquidation of the Trust and the preparation, execution and filing of the certificate of cancellation with the Secretary of State of the State of Delaware;

(I) after an Event of Default, the taking of any action incidental to the foregoing as is necessary or advisable or as the Property Trustee may from time to time determine is necessary or advisable to give effect to the terms of this Declaration and protect and conserve the Trust Property for the benefit of the Securityholders (without consideration of the effect of any such action on any particular Securityholder);

(J) to act as Paying Agent and/or Security Registrar to the extent appointed as such hereunder; and

(K) subject to this Section 2.07(a)(ii), the Property Trustee shall have none of the duties, liabilities, powers or the authority of the Administrative Trustees set forth in Section 2.07(a)(i).

(b) So long as this Declaration remains in effect, the Trust (or the Trustees acting on behalf of the Trust) shall not undertake any business, activities or transaction except as expressly provided herein or contemplated hereby. In particular, the Trust shall not, and the Trustees shall not and shall cause the Trust not to (i) invest any proceeds received by the Trust from holding the Notes (rather, the Trustees shall distribute all such proceeds to the Securityholders pursuant to the terms of this Declaration and the Trust Securities), acquire any investments or engage in any activities not authorized by this Declaration, (ii) sell, assign, transfer, exchange, mortgage, pledge, set-off or otherwise dispose of any of the Trust Property or interests therein, including to Securityholders, except as expressly provided herein, (iii) take any action that would cause the Trust to fail or cease to qualify as a "grantor trust" for United States federal income tax purposes, (iv) make any loans or incur any indebtedness for borrowed money or issue any other debt, (v) take or consent to any action that would result in the placement of a Lien on any of the Trust Property, (vi) possess any power or otherwise act in such a way as to vary the Trust Property or the terms of the Trust Securities in any way whatsoever except as permitted by the terms of this Declaration, or (vii) issue any securities or other evidences of beneficial ownership of, or beneficial interest in, the Trust other than the Trust Securities. The Administrative Trustees shall defend all claims and demands of all Persons at any time claiming any Lien on any of the Trust Property adverse to the interest of the Trust or the Securityholders in their capacity as Securityholders.

(c) In connection with the issue and sale of the Preferred Securities, the Sponsor shall have the right and responsibility to assist the Trust with respect to, or effect on behalf of the Trust, the following actions (and any actions taken by the Sponsor in furtherance of the following prior to the date of this Declaration are hereby ratified and confirmed in all respects):

15

(i)    to file with the Commission and to execute on behalf of the Trust a registration statement on the appropriate form in relation to the Preferred Securities, including any amendments thereto;

(ii)    to determine the states and foreign jurisdictions in which to take appropriate action to qualify or register for sale all or part of the Preferred Securities and to do any and all such acts, other than actions which must be taken by or on behalf of the Trust, and advise the Trustees of actions they must take on behalf of the Trust, and prepare for execution and filing any documents to be executed and filed by the Trust or on behalf of the Trust, as the Sponsor deems necessary or advisable in order to comply with the applicable laws of any such states and foreign jurisdictions;

(iii)    to the extent necessary, to prepare for filing by the Trust with the Commission and to execute on behalf of the Trust a registration statement on Form 8-A relating to the registration of the Preferred Securities under Section 12(b) or 12(g) of the Securities Exchange Act of 1934, as amended, including any amendments thereto;

(iv)    to prepare for filing by the Trust an application to the New York Stock Exchange for listing upon notice of issuance of any Preferred Securities; and

(v)    engage in the activities set forth under Section 2.10(a) and any other actions necessary or incidental to carry out any of the foregoing activities.

(d) Notwithstanding anything herein to the contrary, the Administrative Trustees are authorized and directed to conduct the affairs of the Trust and to operate the Trust so that the Trust will not be deemed to be an "investment company" required to be registered under the 1940 Act, or taxed as a corporation for United States federal income tax purposes and so that the Notes will be treated as indebtedness of the Sponsor for United States federal income tax purposes. In this connection, the Sponsor and the Administrative Trustees are authorized to take any action, not inconsistent with applicable law, the certificate of trust or this Declaration, that each of the Sponsor and the Administrative Trustees determines in their discretion to be necessary or desirable for such purposes, so long as such action does not adversely affect in any material respect the interests of the Holders of the Preferred Securities except as otherwise provided in Section 10.02(a).

Section 2.08    Assets of the Trust

The assets of the Trust shall consist of only the Trust Property.

Section 2.09    Title to Trust Property

Legal title to all Trust Property shall be vested at all times in the Property Trustee and shall be held and administered by the Property Trustee for the benefit of the Trust and the Securityholders in accordance with this Declaration. Each Securityholder shall not have legal

16

title to any part of the assets of the Trust, but shall have an undivided beneficial interest in the assets of the Trust.

### Section 2.10    Responsibilities of the Sponsor

(a) In connection with the issue and sale of the Preferred Securities, the Sponsor is hereby appointed an agent of the Trust pursuant to Section 3806(b)(7) of the Delaware Statutory Trust Act and in such capacity shall have the exclusive right and responsibility to engage in the following activities:

(i)    to prepare a prospectus relating to the offering of Preferred Securities by the Trust and to prepare for filing by the Trust with the Commission, and execute on behalf of the Trust, a registration statement on Form S-3 or on another appropriate form (including, if appropriate, a registration statement under Rule 462(b) of the Securities Act) and any pre-effective or post-effective amendments thereto, relating to the registration under the Securities Act of the Preferred Securities;

(ii)    to determine the states in which to take appropriate action to qualify or register for sale all or part of the Preferred Securities and to do any and all such acts, other than actions which must be taken by the Trust, and advise the Trust of actions it must take, and prepare for execution and filing any documents to be executed and filed by the Trust, as the Sponsor deems necessary or advisable in order to comply with the applicable laws of any such states;

(iii)    to negotiate the terms of, and execute on behalf of the Trust, the Underwriting Agreement providing for the sale of the Preferred Securities; and

(iv)    to execute and deliver letters, documents or instruments on behalf of the Trust with any Clearing Agency.

(b) The Sponsor must exercise the powers set forth in this Section 2.10 in a manner that is consistent with the purposes and functions of the Trust set out in Section 2.06, and the Sponsor shall not take any action that is inconsistent with the purposes and functions of the Trust set forth in Section 2.06.

(c) Subject to this Section 2.10, the Sponsor shall have none of the powers or the authority of the Property Trustee set forth in Article VIII.

### Section 2.11    Certain Covenants of the Sponsor

(a) On the Closing Date, the Sponsor will purchase all of the Common Securities issued by the Trust that shall represent an aggregate Liquidation Amount of no less than 3% of the aggregate Liquidation Amount of the Trust Securities being purchased on the Closing Date;

(b) The Sponsor shall maintain directly or indirectly 100% ownership of the Common Securities, provided that certain successors that are permitted by the Indenture may succeed to the Sponsor's ownership of the Common Securities; and

17