## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF DELAWARE

In re:                                          :   **Chapter 11**
                                                :
**FEDERAL-MOGUL CORPORATION, et al.,**          :   **Jointly Administered**
                                                :   **Case No. 01-10578**
                                                :
            Debtors.                            :

## FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING PURSUANT TO 11 U.S.C. §§105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3) AND 364(d), AND (II) AUTHORIZING USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. §363 AND GRANTING ADEQUATE PROTECTION TO THE HOLDERS OF THE EXISTING OBLIGATIONS REFERRED TO BELOW

Upon the motion (the "Motion"),[1] dated October 1, 2001, of Federal-Mogul Corporation, et al.,[2] as debtors and debtors in possession jointly and severally (each a "Borrower" or "Debtor" and, collectively the "Borrowers" or the "Debtors"), in the above captioned jointly administered bankruptcy case (the "Case" or "Cases"):

1.       seeking this Court's authorization, pursuant to Sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3) and 364(d) of the United States Bankruptcy Code, 11 U.S.C. §§101, et seq. (the "Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

---

[1]       Capitalized terms used in this Order, unless otherwise defined, shall have the meaning set forth in the Credit Agreement, as defined herein. To the extent that any provisions of the Documents, as defined herein, conflict with this Order, the provisions of this Order shall control.

[2]       The parties to the Motion are the U.S. Debtors: Carter Automotive Company, Inc., Federal-Mogul Corporation, Federal-Mogul Dutch Holdings Inc., Federal-Mogul FX, Inc., Federal-Mogul Global Inc., Federal-Mogul Ignition Company, Federal-Mogul Piston Rings, Inc., Federal-Mogul Powertrain Inc., Federal-Mogul Products, Inc., Federal-Mogul Puerto Rico, Inc., Federal-Mogul Mystics, Inc., Federal-Mogul Tri-Way Inc., Federal-Mogul UK Holdings Inc., Federal-Mogul Venture Corporation, Federal-Mogul World Wide, Inc., Felt Products Manufacturing Co., F-M Global Properties, Inc., F-M International, LLC, Ferodo America, Inc., Gasket Holdings Inc., J.W.J. Holdings, Inc., McCord Sealing Inc., and T&N Industries Inc.

for the Borrowers to obtain post-petition financing (the "Financing") pursuant to that certain Revolving Credit, Term Loan and Guaranty Agreement, dated as of October 1, 2001 (the "Credit Agreement") of up to the principal amount of $675,000,000 from The Chase Manhattan Bank ("Chase" or "Agent"), 270 Park Avenue, New York, New York 10017, with Chase acting as Agent for itself and a syndicate of financial institutions to be arranged by Chase (together with Chase, the "Banks"),

(w) with priority over any and all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Code (other than the Carve-Out (as defined below)) pursuant to Section 364(c)(1) of the Code,

(x) to be secured pursuant to Section 364(c)(2) of the Code by a perfected first priority security interest in and lien upon (aa) all cash maintained in the Letter of Credit Account (as defined in the Credit Agreement) and any investment of the funds contained therein, provided that amounts in the Letter of Credit Account shall not be subject to the Carve-Out (all of such property referred to in this clause (aa) being hereinafter referred to as the "Credit Agreement Cash Collateral") and (bb) all property of the Borrowers (including, without limitation, inventory, receivables, rights under license agreements, property, plant and equipment, real estate, interests in leaseholds, accounts and capital stock of the Debtors, and all cash and non-cash proceeds of any of the foregoing) not subject to valid and perfected liens in existence at the time of the commencement of the Cases or to valid liens in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by Section 546(b) of the Code

(collectively with the Credit Agreement Cash Collateral, the "Unencumbered Collateral"),

(y) to be secured pursuant to Section 364(c)(3) of the Code by a perfected junior lien on all property of the Borrowers that is subject to valid and perfected liens in existence at the time of the commencement of the Cases (including the perfected liens on the stock and any evidence of indebtedness of certain Debtor subsidiaries of Federal-Mogul Corporation (the "Indenture Shared Liens") and including those security interests and liens in favor of a collateral trustee (the "Collateral Trustee") held for the benefit of (aa) the holders of the indebtedness of the applicable Borrowers under the Borrowers' three public debt indentures (the "Indentures"), and (bb) the holders of obligations under the Existing Agreement Documents (as defined below)), or to valid liens in existence at the time of such commencement that are perfected subsequent to such commencement as permitted by Section 546(b) of the Code, other than certain property that is subject to the existing liens that secure obligations under the Existing Agreement Documents, which liens shall be primed by the liens granted to the Agent as described in clause (z) below (all of such property referred to in this clause (y) being hereinafter referred to as the "Encumbered Collateral"), and

(z) to be secured pursuant to Section 364(d)(1) of the Code by a perfected first priority, senior priming lien on all of the property of the Borrowers (including, without limitation, inventory, receivables, rights under license agreements, property, plant and equipment, real estate, accounts and interests in leaseholds and all cash and non-cash proceeds of any of the foregoing) that is

3

subject to the existing liens (the "Primed Liens", it being understood that the Indenture Shared Liens shall not be primed or constitute part of the Primed Liens) which secure (aa) on a first priority and pari passu basis (i) approximately $350,000,000 principal amount of indebtedness (including reimbursement obligations associated with certain issued but undrawn letters of credit issued pursuant to the Existing Credit Agreement (as defined below)), plus related interest, fees, costs and charges owed to the Existing Lenders (as defined below) arising under that certain Fourth Amended and Restated Credit Agreement dated as of December 29, 2000 (as heretofore amended, supplemented or otherwise modified, the "Existing Credit Agreement"), among Federal-Mogul Corporation and certain of its foreign subsidiaries as borrowers, the several banks and other financial institutions from time to time party thereto (the "Existing Lenders") and Chase, as administrative agent for the Existing Lenders (in such capacity, the "Prepetition Agent"), and (ii) up to $5 million of obligations in respect of certain hedge agreements (collectively, the "First Priority Existing Obligations"), (bb) on a second priority and pari passu basis, (i) the remaining approximately $1,650,000,000 of principal amount of indebtedness (plus related interest, fees, costs and charges) owed to the Existing Lenders under the Existing Credit Agreement, (ii) the obligations to the trustees (the "Collateral Trustees") under the collateral trust, security and/or pledge agreements executed in respect of the Existing Agreement Documents (collectively the "Trust Agreements") and (iii) the current approximate amount of $225,000,000 of contingent obligations of the Borrowers to certain issuers (the "Surety Bond Issuers") of Surety Bonds (as

defined in the Existing Credit Agreement) in connection with certain asbestos
settlement payments and the obligations to the Surety Bond Issuers arising under
the Surety Bond Documents (as defined in one or more of the Trust Agreements)
(collectively the obligations described in this clause (bb) are the "Second Priority
Existing Obligations"; together with the First Priority Existing Obligations, the
"Existing Obligations"), and (cc) other obligations or indebtedness (of whatever
nature or type) of the Borrowers in an aggregate amount in excess of $20,000,000,
all of which Primed Liens shall be primed by and made subject and subordinate to
the perfected first priority senior liens to be granted to Agent, which senior
priming liens in favor of Agent shall also prime any liens granted after the
commencement of the Cases to provide adequate protection liens in respect of any
of the Primed Liens but shall not prime liens, if any, to the extent such liens
secure obligations or indebtedness (other than the Existing Obligations) in an
aggregate amount less than or equal to $20,000,000 (all property referred to in this
clause (z) being hereinafter referred to as the "Primed Collateral", collectively, the
Unencumbered Collateral, the Encumbered Collateral and the Primed Collateral
are referred to herein as the "Collateral"); and

2.    seeking this Court's authorization, pursuant to Section 363(c) of the
Code, to use the Cash Collateral (as defined below), and, pursuant to Sections
361, 363 and 364 of the Code, to provide adequate protection (on the terms set
forth below) to the Existing Lenders and the Surety Bond Issuers with respect to
any diminution in the value of their respective interests in the Primed Collateral,
whether from the priming described above, the use of the Cash Collateral or the

use, sale, lease, depreciation, decline in market price or otherwise of the Primed

Collateral; and

due notice of the Motion having been given by the Debtors pursuant to Bankruptcy Rule 4001(c),

and upon all of the pleadings filed with this Court, and upon the record in these proceedings to

date and the record made at the final hearing on the Motion (the "Final Hearing") and after due

deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.       This Court has core jurisdiction over these proceedings and the parties and

property affected hereby pursuant to 28 U.S.C. §§157(b) and 1334. The statutory predicates for

the relief sought herein are Sections 105, 361, 362, 363, 364 and 507 of the Code and Rules

4001(b) and (d) of the Federal Rules of Bankruptcy Procedure.

2.       Pursuant to the Existing Credit Agreement and the Surety Bond

Documents and all collateral and ancillary documentation executed in connection therewith

(collectively, including the Trust Agreements, the "Existing Agreement Documents"), the

Existing Lenders and the Surety Bond Issuers made loans and/or issued surety bonds (in the case

of the Surety Bond Issuers) or other financial accommodations to or for the benefit of Federal-

Mogul Corporation and its direct and indirect subsidiaries.   All such loans, surety bonds,

financial accommodations and other amounts owing to the Prepetition Agent, the Surety Bond

Issuers, and the Existing Lenders (including, without limitation, amounts owing to any Existing

Lenders in connection with the maintenance or participation in the Debtors' cash management

system) under, or in connection with, the Existing Credit Agreement and the Surety Bond

Documents comprise the Existing Obligations.  Without prejudice to the rights of any other party

(but subject to the limitations thereon described below in decretal paragraph 29), the Debtors

6

admit that, in accordance with the terms of the Existing Agreement Documents, the Debtors are
truly and justly indebted to the Existing Lenders and the Surety Bond Issuers, without defense,
counterclaim or offset of any kind, and that as of the commencement of the Cases (i) Federal-
Mogul Corporation was liable to the Existing Lenders in respect of loans made pursuant to the
Existing Credit Agreement in the aggregate principal amount of approximately $1,900,000,000
(plus interest accrued and unpaid thereon), (ii) Federal-Mogul Corporation was contingently
liable to certain Existing Lenders in the aggregate amount of approximately $83,500,000 in
respect of letters of credit issued pursuant to the Existing Credit Agreement and which remained
outstanding as of the commencement of the Cases, (iii) Federal-Mogul Corporation was liable to
the Prepetition Agent and the Existing Lenders for agency, letter of credit, facility and other fees
and expenses incurred in connection therewith as provided in the Existing Credit Agreement and
in respect of Hedge Agreements (as defined in the Existing Credit Agreement), plus accrued and
unpaid interest thereon, (iv) each Debtor party to a guarantee executed and delivered in respect of
the Existing Credit Agreement was contingently liable to the Prepetition Agent and the Existing
Lenders pursuant to such guarantee, and (v) each Debtor party to a Surety Bond Guarantee (as
defined in one or more of the Trust Agreements) was contingently liable to the Surety Bond
Issuers in the current aggregate amount of approximately $225,000,000 in respect of the Surety
Bonds.

       3.     Without prejudice to the rights of any other party (but subject to the
limitations thereon described below in decretal paragraph 29), the Debtors further admit, and
agree that they will not challenge, that (i) the First Priority Existing Obligations are secured by
valid, perfected, enforceable first priority liens and security interests granted by the Debtors
pursuant to the Existing Agreement Documents to the Collateral Trustees for the ratable benefit

of the holders of the First Priority Existing Obligations to secure such obligations, upon and in substantially all of the Debtors' assets and property (but excluding any of the Debtors' avoidance actions under Sections 544 - 549 of the Code and the proceeds thereof), including without limitation, accounts receivable, real property, equipment, inventory, general intangibles, capital stock of subsidiaries and other tangible and intangible personal property and the proceeds thereof (including the setoff rights described in the Existing Agreement Documents and arising by operation of law collectively, the "Existing Obligations Collateral"), and (ii) the Second Priority Existing Obligations are secured by valid, perfected, enforceable second priority liens and security interests granted by the Debtors pursuant to the Existing Agreement Documents to the Collateral Trustees for the ratable benefit of the holders of the Second Priority Existing Obligations to secure such obligations, upon and in substantially all of the Existing Obligations Collateral.

        4.      The Debtors' cash constitutes Existing Obligations Collateral or the proceeds thereof and, therefore, is cash collateral of the Existing Lenders and the Surety Bond Issuers within the meaning of Section 363(a) of the Code (the "Cash Collateral"). Such parties have objected to the use by the Debtors of the Existing Obligations Collateral, including the Cash Collateral, except on the terms of this Order. In addition, such parties are entitled, pursuant to Sections 361, 363(e) and 364(d) of the Code, to adequate protection of their interests in the Existing Obligations Collateral, including for the priming of the Existing Obligations Collateral, the use of the Cash Collateral, the use, sale, lease, depreciation, decline in market price or other diminution in value of the Existing Obligations Collateral other than the Cash Collateral, and the imposition of the automatic stay.

5.    (a)    The Borrowers have an immediate need to obtain financing and use the Cash Collateral in order to permit, among other things, the orderly continuation of the operation of its business, to maintain business relationships with vendors and suppliers, to make certain strategic capital expenditures and to satisfy other working capital needs;

(b)    The Borrowers are unable to obtain adequate unsecured credit allowable under Section 503(b)(1) of the Code as an administrative expense;

(c)    A facility in the amount provided by the Financing is unavailable to the Borrowers without the Debtors granting to the Agent and the Banks (i) pursuant to Section 364(c)(1) of the Code, allowed claims, with respect to all indebtedness and obligations of the Debtors under the Credit Agreement having priority over any and all administrative expenses of the kind specified in Sections 503(b) and 507(b) of the Code (other than the Carve-Out), (ii) pursuant to Section 364(c)(2) of the Code, security for such obligations by the granting of a perfected first priority senior security interest in and lien upon the Unencumbered Collateral, (iii) pursuant to Section 364(c)(3) of the Code, security for such obligations by the granting of a perfected junior lien on all Encumbered Collateral, and (iv) pursuant to Section 364(d)(1) of the Code, security for such obligations by the granting of a perfected first priority, senior priming lien on all Primed Collateral;

(d)    The ability of the Debtors to obtain sufficient working capital and liquidity through the incurrence of new indebtedness for borrowed money and other financial accommodations and the use of the Cash Collateral is vital to the Debtors;

(e)    The preservation and maintenance of the going concern values of the Debtors is integral to a successful reorganization of the Debtors pursuant to the provisions of Chapter 11 of the Code; and

1343082.13
RLF1-2387163-3

9

(f)     The terms of the Financing and the use of the Cash Collateral are
fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with
their fiduciary duty and are supported by reasonably equivalent value and fair consideration.

6.     The Financing and the use of the Cash Collateral has been negotiated in
good faith and at arm's-length between the Debtors and the Agent and the Prepetition Agent, as
applicable, and any credit extended, letters of credit issued for the account of and loans made to
the Debtors by the Banks pursuant to the Credit Agreement, and any credit extended in respect of
overdrafts referred to in the Credit Agreement, shall be deemed to have been extended by the
Banks in "good faith," as that term is used in Section 364(e) of the Code.

7.     The Borrowers are authorized and empowered to borrow the full
availability of the Tranche A Commitment and the Tranche B Commitment (as those terms are
defined in the Credit Agreement), subject to the terms and conditions of the Credit Agreement.
The Tranche A Commitment and the Tranche B Commitment shall be used for the purpose of
providing working capital, other general corporate purposes of the Borrowers, the repurchase of
accounts receivable, as may be necessary, in connection with the termination of the securitization
arrangements with Wachovia Bank, N.A. and Bank One, N.A., and payment of any related
transactions costs, fees and expenses, all in accordance with the Credit Agreement and Budget
(as that term is defined in the Credit Agreement).  Notwithstanding anything herein to the
contrary, no borrowings, letters of credit, Cash Collateral, Collateral or the Carve-Out may be
used, directly or indirectly, to initiate (other than investigation) or prosecute any action for
preferences, fraudulent conveyances, other avoidance power claims or any other claims or causes
of action against the Agent, the Banks, the Prepetition Agent, the holders of the Existing

Obligations (including, without limitation, the Surety Bond Issuers) or the holders of Tranche C Loans, as defined herein.

        8.     The Debtors are expressly authorized and empowered to execute and deliver, among other documents, the Credit Agreement and the Security and Pledge Agreement (as defined in the Credit Agreement) to which the Debtors are parties, in substantially the forms heretofore filed with this Court (collectively, and together with the letter agreement referred to in paragraph 16(iii) hereof, the "Documents"). The Documents are approved, and the Debtors are hereby authorized to perform and do all acts that may be required in connection with the Documents. The Documents shall constitute valid and binding obligations of the Debtors that are parties thereof, enforceable against each Debtor that is a party thereto in accordance with their terms.

        9.     For all of the Debtors' obligations and indebtedness arising under the Financing and the Documents, the Agent and the Banks are granted, pursuant to Section 364(c)(1) of the Code, an allowed claim having priority over any and all administrative expenses of the kind specified in Sections 503(b), 105, 326, 328, 330, 331, 506(c), 507(a), 507(b), 546(c), 726 (to the extent permitted by law) and 1112 of the Code, subject only to (x) in the event of the occurrence and during the continuance of an Event of Default (as defined in the Credit Agreement), or an event that would constitute an Event of Default with the giving of notice or lapse of time or both, the payment of accrued and unpaid professional fees and disbursements incurred by the Borrowers and any statutory committees (each, a "Committee") appointed in the Cases, and allowed by Order of this Court, in an aggregate amount not in excess of $5,000,000 and (y) payment of fees pursuant to 28 U.S.C. §1930 and to the Clerk of the Court (collectively, the "Carve-Out"), provided that (i) no portion of the Carve-Out shall be utilized for

payment of the fees and expenses, if any, of any professional persons retained by any such Committee incurred, directly or indirectly, in respect of, arising from or relating to, the initiation (other than investigation) or prosecution of any action for preferences, fraudulent conveyances, other avoidance power claims or any other claims or causes of action against the Agent, the Banks, the Prepetition Agent, the Existing Lenders or the Surety Bond Issuers or the holders of the Tranche C Loans, and (ii) amounts in the Letter of Credit Account shall not be subject to the Carve-Out. Except as expressly provided in this Order, no other claim having a priority superior or pari passu with that granted by this Order to the Agent and the Banks shall be granted while any portion of the Financing (or refinancing thereof by the Banks during the pendency of these Cases) or the commitment thereunder remains outstanding.

10.     So long as an Event of Default, or an event which with the giving of notice or lapse of time or both would constitute an Event of Default, shall not have occurred and be continuing, (x) the Borrowers shall be permitted to pay compensation and reimbursement of expenses allowed and payable under Sections 330 and 331 of the Code and pursuant to such compensation procedures as may be approved by the Court, as the same may be due and payable, and (y) such payments shall not be applied against the Carve-Out.

11.     As security for all of the Debtors' obligations and indebtedness, including with respect to the obligations related to any incidental overadvances, as set forth in Section 6.3 of the Credit Agreement and incorporated into Section 2 of the Security and Pledge Agreement, as to Bank One, N.A., arising under the Financing and the Documents, the Agent, on behalf of the Banks, is hereby granted (effective as of the date of the commencement of the Cases and without the necessity of the execution by the Debtors of mortgages, security agreements or otherwise), pursuant to Sections 364(c)(2), (3) and 364(d) of the Code and subject to the Carve-

Out, (x) a perfected first priority senior security interest in and lien upon the Unencumbered Collateral, (y) a perfected junior priority lien on all Encumbered Collateral being limited in accordance with the Credit Agreement, and (z) a perfected first priority, senior priming lien on all Primed Collateral; provided, that no payments or set-offs may be made on account of any pre-petition intercompany claims among the Debtors that is not Primed Collateral, except as provided herein.

12.    The security interests and liens granted hereunder to the Agent on behalf of the Banks, to the Prepetition Agent, the holders of the Existing Obligations, the holders of the Tranche C Loans and the Payor Borrowers (as defined below) shall not be, except as provided herein *inter se*, subordinated to or made pari passu with any other lien or security interest under Sections 364(c) or (d) of the Code.  Notwithstanding anything herein to the contrary, Collateral shall not include, and no liens are being granted pursuant to this Order on, any of the Debtors' avoidance actions under Sections 544 - 549 of the Code or any proceeds thereof.  The Collateral shall also be limited, solely to the extent provided in the Credit Agreement, in the case of an entity that is a controlled foreign corporation under Section 957 of the Internal Revenue Code, to 66% of the voting stock of such entity.

13.    In the event that any Borrower (a "Payor Borrower") makes a payment to the Agent or Banks on account of principal of, interest on, or other payment obligations fairly allocable to, loans or advances received by any other Borrower under the Financing (such loan repayments, the "Intercompany Advances" and each Borrower who is the recipient of such Intercompany Advances, a "Benefited Borrower"), each Payor Borrower shall thereupon have (i) a direct right of reimbursement from each Benefited Borrower to the extent of Intercompany Advances extended by such Payor Borrower to such Benefited Borrower (a "Reimbursement

Right"), and (ii) a right of contribution (a "Contribution Right") against every other Borrower in respect of the Intercompany Advances extended to a Benefited Borrower to the extent that the Reimbursement Right against such Benefited Borrower is insufficient fully to repay the Intercompany Advance. Subject to the remaining provisions of this paragraph 13, each Payor Borrower is hereby granted a lien upon and security interest in (a) all Collateral owned by each Benefited Borrower to secure payment of such Payor Borrower's Reimbursement Right in respect of such Benefited Borrower, and (b) all Collateral owned by each other Borrower to secure payment of the Contribution Right. The foregoing liens, security interests, Reimbursement Rights, Contribution Rights and other rights of payment shall be (1) junior in priority to the rights, claims, liens and security interests granted to the Agent for the benefit of the holders of Tranche A Loans and Tranche B Loans, (2) senior in priority to the liens and security interests granted to the holders of the Tranche C Loans, and (3) senior in priority to the liens and security interests granted in favor of the holders of the Existing Obligations whether such liens and security interests were granted prepetition or were granted postpetition as a facet of adequate protection. These liens, security interests, Reimbursement Rights, Contribution Rights and other rights of payment constitute assets of the applicable Payor Borrower and, as such, shall constitute Collateral. Each Payor Borrower's Reimbursement Right and Contribution Right shall also be accorded Section 364(c)(1) priority status in the estates of the other Borrowers, as applicable, subject only to the Carve-Out and junior in priority to the Section 364(c)(1) priority rights, claims, liens and security interests granted to the Agent for the benefit of the holders of Tranche A Loans and Tranche B Loans. Amounts payable to a Payor Borrower pursuant to this paragraph 13 shall bear interest at the rates provided for under the Financing from and after the date of any allocation of Intercompany Advances by the Debtors as set forth herein. Each Payor Borrower's

Reimbursement Rights, Contribution Rights and other rights, claims, security interests and liens under this paragraph shall become enforceable only after payment in full of all obligations of the Borrowers in respect of the Financing and termination of the Financing. After full payment of all obligations of the Borrowers in respect of the Financing and termination of the Financing and upon the request thereafter of the Prepetition Agent, any Committee or the Indenture Trustees, the Debtors shall determine and apprise the Prepetition Agent, any Committee and the Indenture Trustees of the Debtors' conclusions concerning the allocation of Intercompany Advances among the Borrowers and the Court retains jurisdiction to resolve any dispute with respect to such allocation. Any such Reimbursement Right or Contribution Right arising from any such allocation of Intercompany Advances shall be payable on the effective date of any confirmed plan of reorganization or otherwise ordered by the Court.

14.    None of the Agent, the Banks, the Prepetition Agent, the holders of the Existing Obligations, the holders of the Tranche C Loans or the Payor Borrowers shall be required to file or record financing statements, mortgages, notices of lien or similar instruments in any jurisdiction or take any other action in order to validate and perfect the security interests and liens granted to them pursuant to this Order. If any such party, shall, in its business judgment, choose to file such financing statements, mortgages, notices of lien or similar instruments or otherwise confirm perfection of such security interests and liens, all such documents shall be deemed to have been filed or recorded as of commencement of the Cases, but subject in all respects to the priorities set forth in this Order.

15.    Each of the Debtors is authorized and empowered to use proceeds of the Financing in accordance with the terms of the Credit Agreement.

16.    Each of the Debtors is authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution of security agreements, mortgages and financing statements), and to pay fees, which may be reasonably required or necessary for the Debtors' performance under the Financing, including, without limitation:  (i) the execution of the Documents, (ii) the execution of one or more amendments to the Credit Agreement for, among other things, the purpose of adding additional financial institutions as Banks, amending the Financing in accordance with the separate letter agreement dated September 21, 2001, between the Borrowers and Agent referred to in the Credit Agreement, reallocating the commitment for the Financing among the Banks, reallocating the amounts of the commitments (and sublimits therein) in separate tranches of loans and financial accommodations under the Credit Agreement, in each case in such form as the Debtors, the Agent and the Banks may agree, and (iii) the non-refundable payment to the Agent or the Banks, as the case may be, of the Fees referred to in the Credit Agreement (and in the separate letter agreement, dated September 21, 2001, between the Borrowers and the Agent referred to in the Credit Agreement) and such Letter of Credit Fees, Commitment Fees and reasonable costs and expenses as may be due from time to time including, without limitation, reasonable attorneys' fees and disbursements as provided in the Documents, all as such terms are defined in the Documents.

17.    Subject to and conditioned upon the provision of adequate protection as provided in paragraph 18 below and the conversion of the First Priority Existing Obligations into the Tranche C Loans pursuant to paragraphs 21 - 23 below, the Debtors are hereby authorized to use all Cash Collateral of the Existing Lenders and the Surety Bond Issuers for the same purposes as the Debtors are to use the Financing.

18.     As adequate protection for the priming of the Existing Obligations
Collateral, the use of the Cash Collateral, the use, sale, lease, depreciation, decline in market
price or other diminution in value (including without limitation, as a result of the proposed
merger of Federal-Mogul Funding Corporation into Federal-Mogul Corporation) of the Existing
Obligations Collateral (other than the Cash Collateral) and the imposition of the automatic stay,
the Prepetition Agent and the holders of the Existing Obligations (i) are hereby granted, as of the
commencement of the Cases, valid, binding and enforceable security interests in and liens on the
Collateral, which liens shall be subject to the Carve-Out and immediately junior to the security
interests and liens granted to the Agent for the benefit of the Banks, to the holders of the Tranche
C Loans pursuant to this Order and to the Payor Borrowers, to secure an amount (the "Adequate
Protection Obligations"; which Adequate Protection Obligations shall be allocated ratably to the
holders of the Existing Obligations) equal to the aggregate diminution, whether by the priming of
the Existing Obligations Collateral, the use, sale, lease, depreciation, decline in market price or
otherwise of the Existing Obligations Collateral (including the Cash Collateral) or the imposition
of the automatic stay, (ii) are hereby granted superpriority claims allowable under Section
507(a)(1) of the Bankruptcy Code of the priority set forth in Section 507(b) of the Bankruptcy
Code in the amount of the Adequate Protection Obligations, which shall be immediately junior to
the claims under Section 364(c)(1) of the Bankruptcy Code held by the Agent and the Banks in
connection with the Credit Agreement, by the holders of the Tranche C Loans and by the Payor
Borrowers (and junior to the Carve-Out), (iii) shall receive (consistent with the rights of the
holders of the Existing Obligations under Section 506(b) of the Bankruptcy Code) (x) the current
monthly payment to the Existing Lenders and letter of credit issuers under the Existing Credit
Agreement of interest on the Loans and drawings on Letters of Credit (as such terms are defined

in the Existing Credit Agreement) and letter of credit fees (and the payment of all interest and fees that are accrued and unpaid as of the commencement of the Cases) at the applicable non-default rates (including LIBOR pricing options) provided for pursuant to the Existing Credit Agreement (which payments and pricing options shall be without prejudice to the rights of any Existing Lender or letter of credit issuer to assert a claim for the payment of additional interest calculated at any other applicable rates of interest, or on any other basis, set forth in the Existing Credit Agreement and without prejudice to the rights of the Debtors, the Committees and other parties in interest to contest such assertions), and (y) from and after the date of any drawing under any of the Surety Bonds, the current monthly payment to the Surety Bond Issuers of interest due pursuant to the terms of the Surety Bond Documents for any payments made under the Surety Bonds, at the same rates provided to the Existing Lenders under the foregoing clause (x) (which payments shall be without prejudice to the rights of any Surety Bond Issuer to assert a claim in the Cases for the payment of additional interest calculated at any other applicable rates of interest, or on any other basis set forth in the Surety Bond Documents and without prejudice to the rights of the Debtors, the Committees and other parties in interest to contest such assertions), and (iv) shall receive (x) the current, regularly scheduled payment of fees/premiums, if any, payable to the Surety Bond Issuers at the applicable non-default rates set forth in the Surety Bond Documents, (y) the payment to the Prepetition Agent and the Collateral Trustees on a current basis of the administration fees that are provided for under the Existing Agreements and the reasonable fees and expenses (including, but not limited to, the reasonable fees and disbursements of counsel and internal and third-party consultants, including financial consultants, and auditors) (collectively the "Fees and Expenses") incurred by the Prepetition Agent and the Collateral Trustees in respect of the Existing Agreement Documents (including

any unpaid prepetition fees and expenses) and the reasonable expenses (but not professional fees) of members of the Steering Committee of Existing Lenders in their capacity as such, in each case, in connection with matters relating to the Existing Agreement Documents, the Surety Bond Documents, the Existing Obligations, the monitoring of the Cases or the enforcement and protection of the rights and interests of the Prepetition Agent, the holders of the Existing Obligations and the holders of the Tranche C Loans in the Cases (which payments hereunder to the Prepetition Agent and to the members of such Steering Committee shall be without prejudice to the rights of any such member or any other Existing Lender to assert a claim in the Cases for the payment of any Fees and Expenses which are not payable by the Debtors pursuant to this subclause and without prejudice to the rights of the Debtors, the Committees and other parties in interest to contest such assertions), and (z) the payment to one of the Surety Bond Issuers on a current basis of the Fees and Expenses incurred by that Surety Bond Issuer (including any unpaid prepetition Fees and Expenses) (provided, however, that (i) the Surety Bond Issuer whose Fees and Expenses are to be paid hereunder shall be chosen by the Surety Bond Issuers and the Surety Bond Issuer whose Fees and Expenses are to be paid hereunder may be a different Surety Bond Issuer from time to time so long as not more than one Surety Bond Issuer seeks its Fees and Expenses during any one particular time period and (ii) the Debtors shall not be required to pay Fees and Expenses on behalf of one Surety Bond Issuer for services that are duplicative of services already paid for by the Debtors on behalf of another Surety Bond Issuer) in connection with matters relating to the Existing Agreement Documents, the Surety Bond Documents, the Existing Obligations, the monitoring of the Cases or the enforcement and protection of the rights and interests of the Surety Bond Issuers (which payments hereunder to the Surety Bond Issuers shall be without prejudice to the rights of any Surety Bond Issuer to assert a claim in the Cases

for the payment of any Fees and Expenses which are not payable by the Debtors pursuant to this subclause (z)). None of such reasonable fees, costs and expenses payable pursuant to this paragraph shall be subject to the approval of this Court, and no recipient of any such payment shall be required to file with respect thereto any interim or final fee application with this Court. Nothing contained herein shall limit the right of any party in interest to seek to recharacterize any payments made pursuant to this paragraph 18 if the Existing Obligations are undersecured, or to challenge the reasonableness of, or the right under the Existing Agreement Documents to, any payment of Fees and Expenses under § 506(b) of the Code if the Existing Obligations are oversecured. As additional adequate protection, the Debtors shall provide the Prepetition Agent, the Existing Lenders, the Surety Bond Issuers and the holders of the Tranche C Loans with copies of all reports and other materials delivered to the Agent and the Banks under the Credit Agreement and such other reports, information and materials as reasonably requested by the Prepetition Agent. Based upon the facts and circumstances presented to the Court and the non-objection of the holders of the Existing Obligations, the adequate protection provided herein is reasonable and sufficient to protect the interests of such parties.

19.     (i)     So long as (a) the Debtors are in compliance with the Credit Agreement covenants, (b) no request is made by the Creditors' Committee for additional adequate protection for the benefit of the holders under the Indentures (the "Public Debt Holders"), and (c) no order is entered providing for additional adequate protection for the benefit of Public Debt Holders without the consent of the Debtors, the Debtors will pay to the Collateral Trustee, for the exclusive benefit of the Public Debt Holders, an amount equal to one half of one percent (.5%) on the outstanding principal amount of the debt under the Indentures in cash per year (the "Cash Guaranteed Component"). In addition, the Debtors will pay to the Collateral

20

Trustee, for the exclusive benefit of the Public Debt Holders, an additional amount equal to one half of one percent on the outstanding principal amount of the debt under the Indentures per year in cash (the "Cash Optional Component") or, at the Debtors' option, the Debtors will award the Collateral Trustee, for the exclusive benefit of the Public Debt Holders, a Section 507(b) priority claim in an amount equal to 200% of that portion of the Cash Optional Component that is not paid in cash. If the Debtors elect to pay any of the Cash Optional Component in the form of a section 507(b) priority claim, then, on or before March 31st in each year beginning in 2003, the Debtors will determine whether actual EBITDA for the preceding year (beginning with EBITDA for 2002) exceeded the EBITDA projected for such year in the Debtors' Five Year Strategic Plan dated as of August, 2001. If (x) actual EBITDA for such year exceeded projected EBITDA (to the extent of such excess, the "Excess EBITDA"), and (y) 25% of the Excess EBITDA exceeds the aggregate cash adequate protection payments made to the Collateral Trustee, for the benefit of the Public Debt Holders, during such prior year, the Debtors will pay to the Collateral Trustee, for the exclusive benefit of the Public Debt Holders, cash in an amount equal to the amount by which 25% of such Excess EBITDA exceeds the cash adequate protection payments actually made to the Collateral Trustee, for the benefit of the Public Debt Holders, during such preceding year, up to a maximum aggregate cash payment by the Debtors for such year of an amount equal to one percent (1.0%) on the outstanding principal amount of the debt under the Indentures (the "EBITDA Payments"). The Debtors will receive a credit against accrued Section 507(b) administrative claims held by the Collateral Trustee for the benefit of the Public Debt Holders at the rate of $2.00 for every $1.00 in EBITDA Payments made by the Debtors. Section 507(b) administrative claims awarded to the Collateral Trustee pursuant to this Order, for the benefit of the Public Debt Holders, (1) will not be payable prior to the effective date of a plan of

reorganization for the Debtors so long as these cases continue under Chapter 11, and (2) shall be bound by the treatment of such administrative claims proposed in a Chapter 11 plan of reorganization if Public Debt Holders holding at least 2/3rds (in principal amount) of the debt under the Indentures that are voted in connection with such plan vote to accept such treatment. The Cash Guaranteed Component, the Cash Optional Component and the EBITDA Payments shall be referred to collectively as the "Bondholder Adequate Protection Payments".

(ii)     If the Debtors fail to pay either any Cash Guaranteed Component or EBITDA Payment when due (whether because of a breach of the Credit Agreement covenants or otherwise), then, at the Creditors' Committee's election, either (1) the Collateral Trustee will receive, for the exclusive benefit of the Public Debt Holders, a Section 507(b) priority claim equal to 200% of those portions of the cash adequate protection payments that are not paid, or (2) the Collateral Trustee, any Indenture Trustee (to the extent that it has standing and legal authority) or any other party in interest may seek adequate protection for amounts in excess of the foregoing payments and/or other appropriate relief from the Court. Under no circumstances will Section 507(b) claims awarded to the Collateral Trustee for the benefit of the Public Debt Holders exceed an amount equal to 2% per annum of the outstanding principal amount of the debt under the Indentures. All parties in interest, including the Debtors, the Committees, the Prepetition Agent and the Surety Bond Issuers reserve all of their rights to contest any such request for adequate protection or other relief on all grounds.

(iii)     The Cash Guaranteed Component accrued for the fourth quarter of 2001 will be payable in cash (approximately $2.5 million) and the Cash Optional Component in cash or as a Section 507(b) claim (at the Debtors' option) on January 15, 2002. Thereafter, Bondholder Adequate Protection Payments, except for EBITDA Payments, will be payable

quarterly, and the Debtors will have the discretion to pay the Cash Optional Component each quarter in the manner they elect (i.e. by cash or Section 507(b) claim). To the extent required, EBITDA Payments will be due on April 15th of each year. Cash payments received by the Collateral Trustee for the benefit of the Public Debt Holders shall be remitted by the Collateral Trustee, when and as received, to the respective Indenture Trustees for immediate distribution in accordance with the terms of the Indentures.

(iv)     All Bondholder Adequate Protection Payments shall be provisional in nature in all respects and, as such, will remain subject to recharacterization, credit against distributions in respect of allowed claims under a plan (and, in the case of accrued administrative claims, disallowance) and other appropriate relief if and to the extent the Court ultimately concludes that the Public Debt Holders were not entitled to adequate protection for any reason, and the rights of all parties in interest to challenge the adequate protection awarded hereunder are preserved; provided, however, that the Cash Guaranteed Component payments required to be paid to the Collateral Trustee prior to May 1, 2002 shall be made by the Debtors (and distributed by the Collateral Trustee to the Indenture Trustees) notwithstanding the pendency of a challenge to the Bondholder Adequate Protection Payments. If and to the extent such a challenge is asserted and is sustained, the Court will fashion appropriate relief in respect of such payments as contemplated in the first sentence of this subparagraph 19(iv). Subject to the exercise of the Agent's and the Banks' remedies upon the occurrence of an Event of Default, even if the Debtors fail to comply with the Credit Agreement covenants prior to May 1, 2002, the Debtors shall remain obligated to make the Bondholder Adequate Protection Payments throughout the period ending May 1, 2002.

(v)     The Debtors are hereby authorized to grant a lien upon and security interest in all of the Collateral (the "Trade Lien") to secure payment of the Debtors' obligations in respect of postpetition trade payables, in an aggregate amount for all such payables, of up to $20 million. The Trade Lien will be junior in priority to the liens securing Tranches A and B of the Financing and the Tranche C Loans, but will be pari passu with the liens securing the Existing Obligations. The Trade Lien shall be in full force and effect without the need for any further action on the part of the Debtors or any trade creditor entitled to share therein. Nevertheless, the Debtors are authorized and directed to execute appropriate documentation as reasonably requested by the Creditors' Committee, including a Collateral Trust Agreement if necessary, to effect the grant of the Trade Lien.

20.     Except to the extent of the Carve-Out, no expenses of administration of the Cases or any future proceeding or case which may result therefrom, including liquidation in bankruptcy or other proceedings under the Code, shall be charged against the Collateral or the Existing Obligations Collateral, pursuant to Section 506(c) of the Code or otherwise, without the prior written consent of the Agent or the Prepetition Agent, as applicable, and no such consent shall be implied from any other action, inaction, or acquiescence by the Agent, the Banks, the Prepetition Agent, the holders of the Existing Obligations or the Tranche C Loans, as applicable.

21.     The outstanding First Priority Existing Obligations shall be deemed converted into postpetition loans ("Tranche C Loans") upon entry of this Order, and shall no longer be subject to the provisions of the Existing Credit Agreement, except as expressly provided herein, all without the need for or the making of any payment in respect of such First Priority Existing Obligations. The adequate protection granted pursuant to the Interim Order in respect of the First Priority Existing Obligations shall only be in effect so long as the First

Priority Existing Obligations are outstanding. The Tranche C Loans shall constitute superiority claims against the Debtors and shall be secured by liens in favor of the Prepetition Agent for the ratable benefit of the holders of the Tranche C Loans on the Collateral, in each case, subject to the Carve-Out and immediately junior to the claims of and liens in favor of the Agent and the Banks with respect to the Credit Agreement obligations and the claims of and liens in favor of the Payor Borrowers and senior to the claims and the liens in favor of the Prepetition Agent and the holders of the Existing Obligations with respect to the Adequate Protection Obligations. The Borrowers' obligations under Tranche C shall also be secured by a pari passu lien on all property of the Borrowers that secures the obligations of the Borrowers under the Indentures to the extent, and on the same terms and conditions as, the First Priority Existing Obligations were secured by a lien on such property, including, without limitation, the priority in right of payment with respect to such property in relation to the other obligations outstanding under the Existing Agreement Documents, and the applicable provisions of the Trust Agreements shall continue to apply thereto. Notwithstanding the conversion of the First Priority Existing Obligations into Tranche C Loans, the First Priority Existing Obligations shall be deemed to remain outstanding under the Existing Credit Agreement (including without limitation, with respect to when such First Priority Existing Obligations were incurred and when the liens granted to secure such First Priority Existing Obligations were granted) for purposes of any analysis of the "equal and ratable" provisions of Section 3.1 of the 1998 Indenture (First Supplement), Section 3.8 of the 1999 Indenture and the applicable provisions of the 1994 Indenture. The Tranche C Loans shall bear interest at LIBOR (as defined and determined in a manner consistent with the Credit Agreement) plus 3.75% (the "Margin") and shall be payable in arrears on the last day of each month, provided that upon the occurrence and during the continuance of an "Event of Default"

under the Credit Agreement, the Margin shall be increased by 2.00% and accrued interest shall be due and payable thereon. The Borrowers shall pay the Fees and Expenses of the Prepetition Agent in respect of the Tranche C Loans. The Tranche C Loans shall mature upon the maturity of the Loans under the Credit Agreement (whether at stated maturity (including any extension thereof), by acceleration or otherwise). Notwithstanding the foregoing, the Prepetition Agent shall continue to act as administrative agent for the holders of the Tranche C Loans and the provisions of Article XIV of the Existing Credit Agreement shall continue to apply.

22.     All payments of interest, principal or other amounts in respect of the Tranche C Loans shall be made to the Prepetition Agent for the ratable benefit of the holders of the Tranche C Loans in accordance with the terms of the applicable provisions of the Existing Credit Agreement and provisions requiring notice or minimum amounts in respect thereof shall not apply.

23.     Letters of credit that constitute First Priority Existing Obligations shall be deemed converted into post-petition obligations, but shall continue to be governed by the applicable provisions of the Existing Credit Agreement, provided that the Debtors' reimbursement obligation with respect to any such drawing shall be satisfied by the conversion of each Existing Lenders' participating interest in such drawing into an additional Tranche C Loan of such Existing Lender and the Debtors shall have no obligation to reimburse any such drawing in cash. Transfers of interests in Tranche C Loans and such letters of credit shall be effected in a manner consistent with the applicable provisions of the Existing Credit Agreement.

24.     Notwithstanding the superpriority claims afforded to the Tranche C Loans pursuant to this Order and further notwithstanding any other provision hereof to the contrary, all holders of such Tranche C Loans shall be bound by the treatment of such claims proposed in a

plan of reorganization under Chapter 11 of the Bankruptcy Code if holders of at least two-thirds

in amount of such claims vote to accept such plan.

25.     So long as there are any borrowings or Letters of Credit outstanding, or the

Financing is in effect, the holders of the Existing Obligations and the Tranche C Loans shall not

be permitted to take any action in the Court or otherwise to exercise any remedies in respect of

the Adequate Protection Obligations or the Tranche C Loans; provided, that the foregoing shall

not prevent the holders of the Existing Obligations (or the Prepetition Agent on their behalf)

from seeking additional adequate protection or modification thereof (as long as such additional

adequate protection shall at all times be subject and junior to the claims and liens of the Agent

and the Banks) or terminating, without further order of this Court, the use of cash collateral upon

7 business days' notice to counsel for the Debtors, counsel to the Agent, counsel for the U.S.

Trustee, counsel to the Surety Bond Issuers, and counsel for any Committee following the

occurrence and during the continuance of any unwaived Event of Default under the Credit

Agreement or following the occurrence and during the continuance of any unwaived default by

the Debtors of any term of this Order.  The Debtors', the Committees' and other parties-in-

interest' rights to contest any request for additional adequate protection and the Debtors' right to

seek authority to use cash collateral notwithstanding the termination of the consensual use

thereof are preserved.

26.     The Debtors, the Agent and the Banks may amend, modify, supplement or

waive any provision of the Documents if such amendment, modification, supplement or waiver is

permitted under the terms of the Documents and is not material (in the good faith judgment of

the Debtors and the Agent) without the need to apply to, or receive further approval from, the

Court.

27

27.    Subject only to the provisions of the Credit Agreement, the automatic stay

provisions of Section 362 of the Code are vacated and modified to the extent necessary so as to

permit the Agent and the Banks to exercise, upon the occurrence of an Event of Default and the

giving of 5 business days' written notice to counsel for the Debtor, counsel to the Prepetition

Agent, counsel for the U.S. Trustee, counsel for the Surety Bond Issuers, and counsel for any

Committee, all rights and remedies provided for in the Documents (including, without limitation,

the right to setoff monies of the Debtors in accounts maintained with the Agent or any Bank).

28.    The Documents and the provisions of this Order shall be binding upon the

Agent, the Banks, the Prepetition Agent, the Collateral Trustees, the Existing Lenders, the

holders of the Tranche C Loans, the Surety Bond Issuers, the holders of the indebtedness under

the Indentures and the Debtors and their respective successors and assigns (including any Chapter

7 or Chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors) and

inure to the benefit of the Agent, the Banks, the Prepetition Agent, the Collateral Trustees, the

Existing Lenders, the holders of the Tranche C Loans, the Surety Bond Issuers, the holders of the

indebtedness under the Indentures and the Debtors and their respective successors and assigns

(except with respect to any trustee hereinafter appointed or elected for the estate of any of the

Debtors).

29.    The admissions contained in paragraphs 2 and 3, and the conversion of the

First Priority Existing Obligations into Tranche C Loans, shall be binding upon the Debtors

under all circumstances, and shall be binding upon all other parties in interest, including without

limitation, any Committee, unless (a) a party in interest (including a Committee) has filed an

adversary proceeding or contested matter (subject to the fee limitation set forth in paragraphs 7

and 9) challenging the amount, validity, enforceability, perfection, or priority of the Existing

28

Obligations or the liens on the Existing Obligations Collateral in respect thereof, or otherwise asserting any claims or causes of action against the Prepetition Agent, the Existing Lenders, the Surety Bond Issuers or the holders of the Tranche C Loans on behalf of the Debtors' estates, no later than April 17, 2002 (it being understood that the Committees shall have standing to file any such adversary proceeding or contested matter), and (b) the Court rules in favor of the plaintiff in any such timely filed adversary proceeding or contested matter. If no such adversary proceeding or contested matter is commenced as of such date, the Existing Obligations and the Tranche C Loans shall constitute allowed claims, not subject to subordination and otherwise unavoidable, for all purposes in these Chapter 11 cases and any subsequent Chapter 7 cases, the liens securing the Existing Obligations on the Existing Obligations Collateral, and the liens on the Collateral securing the Tranche C Loans, shall be deemed legal, valid, binding, perfected, not subject to defense, counterclaim, offset of any kind, subordination and otherwise unavoidable, and the Prepetition Agent, the Existing Lenders, the Surety Bond Issuers, the holders of the Tranche C Loans, the Existing Obligations and the liens on the Existing Obligations Collateral securing the Existing Obligations, and the liens on the Collateral securing the Tranche C Loans, shall not be subject to any other or further challenge by any party in interest seeking to exercise the rights of the Debtors' estates, including without limitation, any successor thereto (but without prejudice to any non-Debtor third party claims against the Prepetition Agent, the Existing Lenders, the Surety Bond Issuers or the holders of the Tranche C Loans). If any such adversary proceeding or contested matter is timely commenced on or before April 17, 2002, the conversion of the First Priority Existing Obligations into Tranche C Loans and the admissions contained in paragraphs 2 and 3 shall nonetheless remain binding and preclusive (as provided in this paragraph) except to the extent that such acknowledgements and agreements were challenged in such adversary

proceeding or contested matter. If any such adversary proceeding or contested matter is timely commenced on or before April 17, 2002, nothing in this Order shall prevent this Court from granting any appropriate relief, provided that the only basis to challenge the conversion of the First Priority Existing Obligations into Tranche C Loans shall be if the Court in any such timely commenced adversary proceeding or contested matter finds that the First Priority Existing Obligations were undersecured as of the commencement of the Cases (including as a result of the avoidance, subordination or disallowance, pursuant to any such adversary proceeding or contested matter, of the First Priority Existing Obligations or the liens on the Existing Obligations Collateral which secure the First Priority Existing Obligations).

30. Unless all obligations and indebtedness owing to the Agent and the Banks under the Credit Agreement shall theretofore have been paid in full (and, with respect to outstanding Letters of Credit issued pursuant to the Credit Agreement, cash collateralized in accordance with the provisions of the Credit Agreement), the Adequate Protection Obligations shall have been paid in full and the Tranche C Loans and related obligations have been paid in full, the Debtors shall not seek, and it shall constitute an Event of Default if any of the Debtors seek, or if there is entered, an order dismissing any of the Cases. If an order dismissing any of the Cases under Section 1112 of the code or otherwise is at any time entered, such order shall provide (in accordance with Sections 105 and 349(b) of the Code) that (x) the superpriority claims, liens and security interests granted pursuant to this Order shall continue in full force and effect and shall maintain their priorities as provided in this Order until all obligations in respect thereof shall have been paid and satisfied in full (and that such superpriority claims, liens and security interests, shall, notwithstanding such dismissal, remain binding on all parties in interest)

and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in (x) above.

        31.    If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (x) the validity of any obligation, indebtedness or liability incurred by the Debtors to the Banks in connection with the Financing or to the Existing Lenders and Surety Bond Issuers in respect of Adequate Protection Obligations or to the holders of the Tranche C Loans prior to written notice to the Agent, the Prepetition Agent and the Surety Bond Issuers of the effective date of such reversal, stay, modification or vacation, or (y) the validity and enforceability of any lien or priority authorized or created hereby or pursuant to the Credit Agreement with respect to any such obligations, indebtedness or liability. Notwithstanding any such reversal, stay, modification or vacation, any indebtedness, obligation or liability incurred by the Debtors to the Banks in connection with the Financing or to the Existing Lenders and Surety Bond Issuers in respect of Adequate Protection Obligations or to the holders of the Tranche C Loans prior to written notice to the Agent, the Prepetition Agent and the Surety Bond Issuers of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and the Banks shall be entitled to all the rights, remedies, privileges and benefits, granted herein and/or pursuant to the Credit Agreement with respect to such indebtedness, obligation or liability. The obligations of the Debtors under this Order and the Financing and, subject to paragraph 24 in respect of the Tranche C Loans, shall not be discharged by the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to Section 1141(d)(4) of the Code, the Debtors have waived such discharge.

32.     In order to facilitate the processing of claims, to ease the burden upon the Court and to reduce any unnecessary expense to the Debtors' estates, (i) the Prepetition Agent is authorized to file a single master proof of claim in the Case of Federal-Mogul Corporation on behalf of itself and the Existing Lenders on account of their claims arising under the Existing Agreement Documents and hereunder against all of the Debtors (the "Master Proof of Claim"), and the Prepetition Agent shall not be required to file a verified statement pursuant to Rule 2019 of the Federal Rules of Bankruptcy Procedure in any of the Cases.

33.     Upon the filing of the Master Proof of Claim against Federal-Mogul Corporation, the Prepetition Agent and each Existing Lender, and each of their respective successors and assigns, shall be deemed to have filed a proof of claim in the amount set forth opposite its name therein in respect of its claims against each of the Debtors arising under the Existing Agreement Documents, and the claims of the Prepetition Agent and each Existing Lender (and each of their respective successors and assigns), named in the Master Proof of Claim shall be allowed or disallowed as if each such entity had filed a separate proof of claim in each of the Cases in the amount set forth in the Master Proof of Claim; provided that the Prepetition Agent may but shall not be required to amend the Master Proof of Claim from time to time to, among other things, reflect a change in the holders of claims set forth therein or a reallocation among such holders of the claims asserted therein resulting from any transfer of any such claims.

34.     The provisions set forth in paragraphs 32 and 33 and the Master Proof of Claim are intended solely for the purpose of administrative convenience and, except to the extent set forth herein or therein, neither the provisions of this paragraph nor the Master Proof of Claim shall affect the substantive rights of the Debtors, any Committee, the Prepetition Agent or the Existing Lenders or any other party in interest or their respective successors in interest including,

without limitation, the right of each Existing Lender (or their successors in interest) to vote separately on any plan of reorganization proposed in any of the Cases.

35.     Nothing herein shall prejudice the right of any party in interest to contend that it is entitled to seek (subject to the right of any party in interest to object) in a separate proceeding adequate protection in the form of allocation of liens and claims between and among the Debtors relating to intercompany advances that would be senior to the Tranche C Loans, the Prepetition Agent and the Existing Lenders, provided that any such adequate protection in favor of such party in interest would be in all events subject to and subordinate to the claims, rights, liens and priorities of the Agent and the Banks set forth in this Order.

36.     The Debtors shall provide the Committees with copies of all reports and other materials delivered to the Agent and the Banks under the Credit Agreement. The Debtors shall also provide the Committees with copies of professional fee and expense reimbursement requests submitted to the Debtors by the Agent and the holders of the Existing Obligations.

37.     The notice given of the Motion and the Final Hearing constitutes due and sufficient notice of the Motion and the Final Hearing.

Dated: November 4th, 2001
      Wilmington, Delaware

                                        UNITED STATES DISTRICT JUDGE



FILED    HARRISBURG PA

JUL **-9** 2004

Clerk, U.S. Bankruptcy Court

**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| In re: | Chapter 11 |
| NEW WORLD PASTA COMPANY | Case No. 04-02817 (MDF) |
| PASTA ACQUISITION CORP. | Jointly Administered |
| THE PRINCE COMPANY, INC. | |
| RONZONI FOODS INTERNATIONAL CORPORATION | |
| NWP DELAWARE, LLC. | |
| Debtors. | |

**FINAL ORDER AUTHORIZING (A) SECURED POSTPETITION
FINANCING ON A SUPER PRIORITY BASIS PURSUANT TO 11 U.S.C.
§ 364, (B) USE OF CASH COLLATERAL PURSUANT TO 11 U.S.C. § 363
AND (C) GRANT OF ADEQUATE PROTECTION
PURSUANT TO 11 U.S.C. §§ 363 AND 364**

Upon the motion (the "Motion") dated May 10, 2004 of New World Pasta

Company ("New World"), and Pasta Acquisition Corp., The Prince Company, Inc., Ronzoni

Foods International Corporation, and NWP Delaware, LLC (collectively, the "Affiliated

Debtors"), the above-captioned debtors and debtors-in-possession (New World and the Affiliate

Debtors collectively, the "Debtors"), for entry of an order (a) seeking this Court's authorization

pursuant to section 364 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (as

amended, the "Bankruptcy Code") and Rules 2002, 4001 and 9014 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), for the Debtors, inter alia, (i) to obtain

postpetition financing up to an aggregate amount of $45,000,000 (the "Postpetition Financing")

by entering into that certain Senior Secured, Super-Priority Debtor in Possession Credit

*Or on the record,*

Agreement, dated as of May 10, 2004 (as the same has been or may be amended, supplemented

or otherwise modified herein or from time to time, the "Postpetition Credit Agreement"),[1] a copy

of which is annexed hereto as Exhibit A, by and among New World, as borrower, the Affiliated

Debtors, as guarantors, the lenders and letter of credit issuers from time to time parties thereto

(collectively, the "Postpetition Lenders"), and Black Diamond Commercial Finance, LLC, as

Administrative Agent for the Postpetition Lenders (in such capacity, the "Postpetition Agent"),

subject to the terms and conditions set forth therein, (ii) to grant to the Postpetition Agent and

Postpetition Lenders, pursuant to section 364(c) of the Bankruptcy Code, security interests in and

liens upon all of the Debtors' currently owned and after acquired property to secure the Debtors'

Obligations under the Postpetition Credit Agreement, as well as security interests and liens

senior and superior to the security interests and liens securing the Prepetition Senior

Indebtedness and Prepetition Junior Indebtedness (as defined below in paragraph D of this

Order) pursuant to section 364(d) of the Bankruptcy Code; and (iii) to grant to the Postpetition

Agent and Postpetition Lenders super-priority administrative claims pursuant to section

364(c)(1) of the Bankruptcy Code, with priority in payment with respect to such obligations over

any and all administrative expenses of the kinds specified in sections 503(b) and 507(b) of the

Bankruptcy Code; (b) seeking this Court's authorization to use the Cash Collateral (as defined

below in paragraph I of this Order) pursuant to section 363(c) of the Bankruptcy Code and to

provide adequate protection, pursuant to sections 361, 363(e) and 364(c) of the Bankruptcy

Code, to the Prepetition Senior Lenders; (c) seeking a preliminary hearing (the "Preliminary

---

[1]    Unless otherwise defined herein, all capitalized terms used herein have the meanings
ascribed to such terms in the Postpetition Credit Agreement or Prepetition Loan
Documents (as defined below), as applicable.

Hearing") on the Motion to consider entry of an interim order pursuant to Bankruptcy Rule 4001

(the "Interim Order"); and (d) requesting that a final hearing (the "Final Hearing") be scheduled

by this Court to consider entry of a final order (this "Order") authorizing on a final basis, inter

alia, the Postpetition Financing, use of Cash Collateral and provision of adequate protection; and

due and sufficient notice of the Motion under the circumstances having been given; and the

Preliminary Hearing on the Motion having been held before this Court on May 10, 2004, at

which time the Court approved the entry of the Interim Order; and the Final Hearing on the

Motion having been held before this Court; and upon the entire record made at the Preliminary

Hearing and Final Hearing, and this Court having found good and sufficient cause appearing

therefor;

**THE DEBTORS AND AGENTS HAVE STIPULATED TO THE FOLLOWING FOR ALL PURPOSES IN THESE CHAPTER 11 CASES. THE COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW WHICH ARE EXPRESSLY SUBJECT TO THE PRESERVATION OF RIGHTS IN FAVOR OF THIRD PARTIES SET FORTH IN PARAGRAPH 26:**

THE COURT HEREBY FINDS THAT:

A.    Commencement of Cases; Appointment of Creditors' Committee. On May 10,

2004 (the "Petition Date"), the Debtors filed voluntary petitions for relief with this Court under

chapter 11 of the Bankruptcy Code (the "Chapter 11 Cases"). The Debtors are continuing in

possession of their property, and operating and managing their businesses, as debtors-in-

possession pursuant to sections 1107 and 1108 of the Bankruptcy Code. No request has been

made for the appointment of a trustee or examiner. The official committee of unsecured

creditors (the "Creditors' Committee") was appointed in the Chapter 11 Cases pursuant to

section 1102 of the Bankruptcy Code on May 24, 2004.

B.    Jurisdiction; Venue. This Court has jurisdiction over the Chapter 11 Cases and

the Motion pursuant to 28 U.S.C. §§ 157 and 1334. Consideration of the Motion constitutes a

core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for the relief sought

herein are sections 105, 361, 362, 363, and 364 of the Bankruptcy Code and Rules 2002, 4001

and 9014 of the Federal Rules of Bankruptcy Procedure. Venue of the Chapter 11 Cases and the

Motion in this District is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Prepetition Loan Documents. Without prejudice to the rights of any other party,

but subject to the time limitations specified in paragraph 26 of this Order, the Debtors admit that

pursuant to that certain Credit Agreement dated as of January 28, 1999 (as heretofore amended,

supplemented or otherwise modified, the "Prepetition Credit Agreement"), among New World,

as borrower, the various financial institutions party thereto, as lenders (the "Prepetition

Lenders"), and BNY Asset Solutions LLC, as successor to The Bank of Nova Scotia, as

administrative agent for the Prepetition Senior Lenders (as defined herein ) and Prepetition

Junior Lenders (as defined herein), as senior collateral agent for the Prepetition Senior Liens and

as collateral agent for the Prepetition Junior Liens (in such capacities, the "Prepetition Agent"),

and all agreements, documents, notes, mortgages, pledges, guarantees, subordination agreements,

instruments and any other agreements delivered pursuant thereto or in connection therewith

(collectively, the "Prepetition Loan Documents"), certain lender parties to the Credit Agreement

(the "Prepetition Senior Lenders") made certain senior loans, advances and other financial

accommodations, and provided for the issuance of letters of credit, to the Debtors to, among

other things, fund the operations of the Debtors (collectively, the "Prepetition Senior

Indebtedness"), while certain other lender parties to the Prepetition Credit Agreement, including

without limitation The Bank of Nova Scotia, as selling lender, (the "Prepetition Junior Lenders")

4

made certain junior loans, advances and other financial accommodations to the Debtors to,
among other things, fund the operations of the Debtors (collectively, the "Prepetition Junior
Indebtedness"). For purposes of this Order, the term "Prepetition Senior Indebtedness" shall
mean all amounts owing under the Prepetition Loan Documents (including, without limitation,
all Obligations as defined in the Prepetition Credit Agreement) to the Prepetition Senior Lenders,
and shall include the principal of, interest on, fees and other charges owing in respect of, such
amounts (including, without limitation, any reasonable attorneys', accountants', financial
advisors' and other fees and expenses that are chargeable or reimbursable under the Prepetition
Loan Documents) owing to the Prepetition Senior Lenders, and any obligations, contingent or
otherwise, in respect of the letters of credit, owing to the Prepetition Senior Lenders. For
purposes of this Order, the term "Prepetition Junior Indebtedness" shall mean all amounts owing
under the Prepetition Loan Documents to the Prepetition Junior Lenders.

    D.    Prepetition Indebtedness.

    a.    Prepetition Senior Indebtedness. Without prejudice to the rights of
any other party, but subject to the time limitations specified in paragraph 26 of this Order, the
Debtors admit that, as of the Petition Date, the aggregate principal amount of all indebtedness
owed by Debtors to the Prepetition Agent and Prepetition Senior Lenders pursuant to the
Prepetition Credit Agreement with respect to the Revolving Loans, Term-A Loans and Term-B
Loans is not less than $140,896,000 (which includes not less than $2,728,886 of letters of credit
that were issued and outstanding), plus accrued interest, fees, costs, and expenses incurred in
connection therewith as provided under the Prepetition Credit Agreement.

 

b.         Prepetition Junior Indebtedness. The Prepetition Junior Lenders assert that, as of the Petition Date, the aggregate principal amount of all indebtedness owed by Debtors to the Prepetition Agent and Prepetition Junior Lenders pursuant to the Prepetition Credit Agreement with respect to the Term-C Loans, Term-D Loans and Term-E Loans is approximately $152,398,000, plus accrued interest, fees, costs and expenses incurred in connection therewith as provided under the Prepetition Credit Agreement.

c.        Subordination of Prepetition Junior Indebtedness. Pursuant to the Prepetition Loan Documents, the Prepetition Senior Indebtedness is senior and superior to the Prepetition Junior Indebtedness.

E.     Prepetition Guarantees

(a)    Prepetition Senior Lenders. Without prejudice to the rights of any other party, but subject to the time limitations specified in paragraph 26 of this Order, the Debtors admit that pursuant to those certain Guaranties (the "Guarantees") executed by the Affiliated Debtors, or their predecessors, and Ronzoni Foods Canada Corporation ("Ronzoni"), a non-debtor, foreign subsidiary of New World, as guarantors (collectively, the "Guarantors") in favor of the Prepetition Agent and Prepetition Senior Lenders, the Guarantors have unconditionally guaranteed all the Prepetition Senior Indebtedness owed by New World to the Prepetition Agent and Prepetition Senior Lenders. Without prejudice to the rights of any other party, but subject to the time limitations specified in paragraph 26 of this Order, the Debtors acknowledge and confirm that each of the Guarantees continue in full force and effect notwithstanding any use of Cash Collateral permitted under the Interim Order or this Order or any financing and financial accommodations extended by the Postpetition Agent or Postpetition Lenders to the Debtors pursuant to the terms of the Interim Order, this Order or Postpetition Loan Documents.

(b)    Prepetition Junior Lenders. The Prepetition Junior Lenders assert that

pursuant to the Guaranties, the Guarantors have unconditionally guaranteed all the Prepetition

Junior Indebtedness owed by New World to the Prepetition Agent and Prepetition Junior

Lenders.

F.    Prepetition Liens.

(a)    Prepetition Senior Liens. Without prejudice to the rights of any other

party, but subject to the time limitations specified in paragraph 26 of this Order, the Debtors

admit that to secure the Prepetition Senior Indebtedness and in furtherance of the Prepetition

Credit Agreement, the Debtors executed for the Prepetition Agent and Prepetition Senior

Lenders certain security agreements, pledge agreements, mortgages and other agreements

pursuant to which the Debtors have granted security interests and senior liens (collectively, the ·

"Prepetition Senior Liens"), in and upon substantially all of their assets, whether real or personal,

tangible or intangible and wherever located, and all the proceeds, products, offspring, rents and

profits thereof (all of the foregoing collateral generally described above shall be referred to

herein collectively as the "Prepetition Collateral").

(b)    Prepetition Junior Liens. The Prepetition Junior Lenders assert that to

secure the Prepetition Junior Indebtedness and in furtherance of the Prepetition Credit

Agreement, the Debtors executed for the Prepetition Agent and Prepetition Junior Lenders

certain security agreements, pledge agreements, mortgages and other agreements pursuant to

which the Debtors have granted security interests and junior liens (collectively, the "Prepetition

Junior Liens"), in and upon the Prepetition Collateral.

CH\694096.6  New World Pasta - Final DIP Order

(c)    Subordination of Prepetition Junior Liens.  Pursuant to the Prepetition

Loan Documents, the Prepetition Senior Liens are senior and superior to the Prepetition Junior

Liens, if any and if such Prepetition Junior Liens are valid, binding, enforceable and properly

perfected.

G.    Prepetition Subordination and Participation Agreements.  Pursuant to those

certain subordination and participation agreements by and between The Bank of Nova Scotia, as

administrative agent and selling lender, and JLL Pasta, LLC and JLL Pasta III, LLC

(collectively, "JLL"), as participants (the "Prepetition Participation Agreements"),[2] The Bank of

Nova Scotia sold a 100% participation in the Prepetition Junior Indebtedness to JLL.  Pursuant to

the Prepetition Participation Agreements, the Prepetition Senior Indebtedness and Prepetition

Senior Liens are senior and superior to JLL's participation in the Prepetition Junior Indebtedness

and Prepetition Junior Liens.

H.    Validity of Prepetition Senior Indebtedness and Prepetition Senior Liens.

Without prejudice to the rights of any other party, but subject to the time limitations specified in

paragraph 26 of this Order, the Debtors acknowledge and agree that the Prepetition Senior Liens

(i) constitute valid, binding, enforceable and perfected first priority liens, subject only to the

Liens described in section 7.2.3 of the Prepetition Credit Agreement, and (ii) are not subject to

---

[2] The Prepetition Participation Agreements are the following:  (1) with respect to the
Term-C Loans, that certain Subordination and Participation Agreement, dated as of July 30, 2001
(as amended), by and between The Bank of Nova Scotia, as administrative agent and selling
lender, and JLL Pasta, LLC, as participant; (2) with respect to the Term-D Loans, that certain
Subordination and Participation Agreement, dated as of August 14, 2002 (as amended), by and
between The Bank of Nova Scotia, as administrative agent and selling lender, and JLL Pasta,
LLC, as participant; and (3) with respect to the Term-E Loans, that certain Subordination and
Participation Agreement, dated as of December 2, 2002 (as amended), by and between The Bank
of Nova Scotia, as administrative agent and selling lender, and JLL Pasta III, LLC, as participant.

avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law. Without prejudice to the rights of any other party, but subject to the time limitations specified in paragraph 26 of this Order, the Debtors further acknowledge and agree that (i) the Prepetition Senior Indebtedness constitutes the legal, valid and binding obligations of the Debtors, enforceable in accordance with their terms, (ii) no objection, offsets, defenses or counterclaims of any kind or nature to the Prepetition Senior Indebtedness exist, and (iii) the Prepetition Senior Indebtedness, and any amounts previously paid to the Prepetition Agent or Prepetition Senior Lenders on account of the Prepetition Senior Indebtedness, is not subject to avoidance, reduction, disallowance, impairment or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law. Without prejudice to the rights of any other party, but subject to the time limitations specified in paragraph 26 of this Order, the Debtors further acknowledge and agree that the Prepetition Agent and Prepetition Senior Lenders are entitled to be paid postpetition interest on the Prepetition Senior Indebtedness, as well as reasonable attorneys', accountants', financial advisors' and other fees, costs and charges related to the Prepetition Senior Indebtedness, all as provided in the Prepetition Loan Documents, as a condition to the Prepetition Senior Lenders' consent to the Debtors' use of the Cash Collateral as set forth herein. Subject to the time limitations specified in paragraph 26 of this Order, none of the foregoing acknowledgments or agreements by the Debtors shall be binding on any other party and shall not affect the rights of the Creditors' Committee or any other committee, person or entity (other than the Debtors) with respect to their rights to assert, pursue or otherwise allege any of the Claims and Defenses (as defined below in paragraph 24 of this Order) in accordance with and subject to the terms of this Order.

9

I.    Cash Collateral.  For purposes of this Order, the term "Cash Collateral" shall
mean and include all "cash collateral" as defined by section 363 of the Bankruptcy Code,
deposits subject to setoff, and cash arising from the collection, sale, lease or other disposition,
use or conversion to cash of any property of the Debtors in which the Prepetition Agent,
Prepetition Senior Lenders or Prepetition Junior Lenders have any lien or security interest,
whether such liens or security interests (including, without limitation, any adequate protection
liens or security interests) existed at the commencement of the Chapter 11 Cases or arise
thereafter pursuant to the Interim Order, this Order, any other order of the Court, applicable law
or otherwise.

J.    Exigent Circumstances.  The Debtors do not have sufficient available sources of
working capital and financing to carry on the operation of their businesses without the use of
Cash Collateral and Postpetition Financing.  The ability of the Debtors to maintain business
relationships with their vendors and suppliers so that they may be able to purchase new inventory
and otherwise finance their operations is essential to the Debtors' continued viability and ability
to successfully restructure their business operations.  In addition, the Debtors' need for continued
financing under the Postpetition Credit Agreement is critical and immediate.  In the absence of
the Postpetition Financing and use of the Cash Collateral, both on an interim and a final basis,
the continued operation of the Debtors' businesses would not be possible and serious, immediate
and irreparable harm to the Debtors and their estates would occur.  The preservation,
maintenance and enhancement of the going concern value of the Debtors are of the utmost
significance and importance to a successful restructuring of the Debtors under Chapter 11 of the
Bankruptcy Code.

10

K.    Adequate Protection to the Prepetition Senior Lenders.  The adequate protection
provided to the Prepetition Agent and Prepetition Senior Lenders as described herein for any
decline in the value of such parties' interest in the Prepetition Collateral from and after the
Petition Date, including, without limitation, from the use of the Cash Collateral and from the
granting to the Postpetition Agent and Postpetition Lenders of senior, priming liens pursuant to
the provisions of the Interim Order or this Order, is consistent with and authorized by the
Bankruptcy Code.

L.    Separate Adequate Protection to the Prepetition Junior Lenders.  On May 10,
2004, the Court approved the entry of an interim order granting adequate protection to the
Prepetition Junior Lenders for their interests, if any, in the Prepetition Collateral and Cash
Collateral. The Prepetition Junior Lenders are seeking adequate protection for their interests, if
any, in the Prepetition Collateral and Cash Collateral on a final basis by separate order
(collectively with such interim order, the "Prepetition Junior Lenders Orders").  The Prepetition
Junior Lenders are not seeking or requesting any adequate protection as part of the Interim Order
or this Order.

M.    Inability to Distinguish Between Collateral.  It would be practically difficult and
costly not only to trace and allocate the cash proceeds received by any Debtor to particular items
of Postpetition Collateral (as defined below in paragraph 6 of this Order), but to determine the
extent to which such proceeds are attributable to Prepetition Collateral as distinguished from
Postpetition Collateral not constituting Prepetition Collateral.

N.    No Alternative Sources of Funding.  Given the Debtors' current financial
condition and capital structure, the Debtors have attempted but are unable to obtain unsecured

credit allowable under section 503(b)(1) of the Bankruptcy Code or pursuant to sections 364(a),

(b) or (c)(1) of the Bankruptcy Code or secured credit pursuant to Sections 364(c)(2) and (3)

only.  Financing on a postpetition basis is not otherwise available without the Debtors granting,

pursuant to section 364(c)(1) of the Bankruptcy Code, claims having priority over any and all

administrative expenses of the kinds specified in sections 503(b) and 507(b) of the Bankruptcy

Code, and securing such indebtedness and obligations with the security interests in and the liens

upon the property described below pursuant to sections 364(c)(2), (c)(3) and (d)(1) of the

Bankruptcy Code.  Under the circumstances, no other source of financing exists on terms more

favorable than those offered by the Postpetition Agent and Postpetition Lenders.

      O.     Consent by Required Lenders.  The "Required Lenders" as defined under the

Prepetition Credit Agreement have consented to the Debtors' entering into the financing

arrangements contemplated by this Order and the Postpetition Loan Documents and to the

Debtors' use of Cash Collateral in which the Prepetition Agent, the Prepetition Senior Lenders

and Prepetition Junior Lenders have an interest, on the terms and conditions set forth in this

Order, and have directed the Prepetition Agent to so consent.  Pursuant to the terms of the

Prepetition Credit Agreement, including sections 7.2.2, 7.2.3 and 10.1 thereof, only the consent

of the Required Lenders is required for the incurrence of the Postpetition Indebtedness and the

granting of the Postpetition Liens.  The consent granted herein is expressly limited to the

postpetition financing being provided by the Postpetition Agent and Postpetition Lenders as

contemplated by this Order and the Postpetition Credit Agreement.

      P.     Section 364(e); Good Faith.  Based on the record presented to this Court by the

Debtors, it appears (and the Debtors, the Prepetition Agent and Postpetition Agent have

CH\694096.6  New World Pasta - Final DIP Order

stipulated) that the Postpetition Credit Agreement, amendment to the Postpetition Credit Agreement attached hereto as Exhibit B (the "Amendment"), Postpetition Financing, use of Cash Collateral and provision of adequate protection have been negotiated in good faith and at arm's-length among the Debtors, the Prepetition Agent and Postpetition Agent, and any credit extended and loans made to, Cash Collateral used by, and adequate protection provided by the Debtors pursuant to the Interim Order or this Order shall be deemed to have been extended, issued, made, used or provided, as the case may be, in good faith as required by, and within the meaning of, section 364(e) of the Bankruptcy Code.

Q.    Fair and Reasonable Terms.  Based on the record before this Court, it appears (and the Debtors, the Prepetition Agent and Postpetition Agent have stipulated) that the terms of the Interim Order and this Order, including, without limitation, the terms of the Postpetition Credit Agreement, Amendment, Postpetition Financing, use of Cash Collateral and provision of adequate protection, are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

R.    Minimize Disputes and Litigation.  Pursuant to sections 363(c)(2), 363(e) and 364(d) of the Bankruptcy Code, the Debtors are required to provide adequate protection to the Prepetition Agent and the Prepetition Senior Lenders in respect of any decline in the value of the such parties' interest in the Prepetition Collateral from and after the Petition Date, including, without limitation, from the use of Cash Collateral and from the granting to the Postpetition Agent of senior, priming liens on property in which the Prepetition Agent and the Prepetition Senior Lenders have the Prepetition Senior Liens.  The Debtors believe that the treatment provided by the Interim Order and this Order will minimize disputes and litigation over

13

Prepetition Collateral values, the use of Cash Collateral, the provision of adequate protection and
the need to segregate the Prepetition Collateral and the proceeds thereof including Cash
Collateral.

     S.    Good Cause Shown.  Good cause has been shown for the entry of this Order.
Among other things, entry of this Order will minimize disruption of the Debtors' businesses and
operations and permit them to meet payroll and other operating expenses, obtain needed supplies
and retain customer, employee and supplier confidence by demonstrating an ability to maintain
normal operations.  The Postpetition Credit Agreement, Amendment, Postpetition Financing, use
of Cash Collateral and provision of adequate protection authorized hereunder are critical to avoid
immediate and irreparable harm to the Debtors' estates, and the Postpetition Credit Agreement,
Amendment, Postpetition Financing, use of Cash Collateral and provision of adequate protection
authorized in the Interim Order and/or this Order are in the best interests of the Debtors' estates.

     T.    Adequate Notice.  On May 10, 2004, the Debtors filed the Motion with the Court
and provided notice of the Preliminary Hearing and the relief requested in the Motion by
facsimile or overnight delivery to the following parties: (i) the Office of the United States
Trustee, (ii) the creditors holding the 20 largest unsecured claims against the Debtors on a
consolidated basis; (iii) the Prepetition Agent and its counsel, (iv) counsel to the Prepetition
Junior Lenders and JLL, (v) other known holders of prepetition liens against the Debtors'
property or their counsel; (vi) the U.S. Attorney; (vii) the Internal Revenue Service; and (viii)
counsel to the unofficial committee of unsecured creditors.  Copies of the Interim Order and
Postpetition Credit Agreement, and notice of the Final Hearing, were served on all such parties,
counsel to the Creditors' Committee, and all parties requesting notice pursuant to Bankruptcy
Rule 2002, and were made available to all parties at the offices of the Debtors' counsel.  A term

sheet summarizing the principle terms of the Amendment were provided to, among others, the Office of the United States Trustee, counsel to the Creditors' Committee, counsel to the Prepetition Agent, and counsel to JLL on July 6, 2004. Copies of the Amendment were made available to all parties at the Final Hearing. Such notice constitutes sufficient notice under section 102 of the Bankruptcy Code and Bankruptcy Rules 4001 and 9014 and no other or further notice is required or need be given.

U.    Immediate Entry of Order. The Debtors have requested immediate entry of this Order pursuant to Bankruptcy Rule 4001(b)(2) and (c)(2). The permission granted herein on a final basis to use Cash Collateral, obtain the Postpetition Financing, enter into the Postpetition Credit Agreement and Amendment, and obtain funds thereunder is necessary to avoid immediate and irreparable harm to the Debtors. This Court concludes that entry of this Order is in the best interests of the Debtors' respective estates and creditors as its implementation will, among other things, allow for the flow of supplies and services to the Debtors necessary to sustain the operation of the Debtors' existing businesses and enhance the Debtors' prospects for a successful restructuring.

Based upon the foregoing findings, stipulations, and conclusions, and upon the record made before this Court at the Preliminary Hearing and Final Hearing, and good and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED** that:

1.    Motion Granted. The Motion is granted on a final basis, subject to the terms and conditions set forth in this Order.

2.    <u>Authorization</u>. The Debtors are expressly authorized and empowered on a final basis to:

(a) borrow money, incur Postpetition Indebtedness (as defined below in this paragraph 2), use Cash Collateral, and perform their obligations pursuant to the provisions of the Interim Order, this Order and the Postpetition Credit Agreement, subject to the Debtors' providing adequate protection to the Prepetition Agent and the Prepetition Senior Lenders as set forth in paragraph 8 of this Order; and

(b) execute and enter into the Postpetition Credit Agreement, as well as all such other financing statements, notices, schedules, other security agreements, deeds of trust, mortgages, instruments, guaranties, subordination agreements, acceptance agreements and documents as may be reasonably appropriate, necessary or required to (i) evidence their obligations to the Prepetition Agent or Postpetition Agent (collectively, the "<u>Agents</u>"), or Prepetition Senior Lenders or Postpetition Lenders (collectively, the "<u>Lenders</u>") arising under or in connection with the Interim Order, this Order or Postpetition Credit Agreement, (ii) consummate the terms and provisions of the Interim Order, this Order or Postpetition Credit Agreement, or (iii) evidence the Postpetition Financing or the perfection of the liens and security interests to be given to Agents or Lenders pursuant to the Interim Order, this Order or the Postpetition Credit Agreement (collectively, the "<u>Postpetition Loan Documents</u>").

Upon execution by the Debtors, the Postpetition Loan Documents, including without limitation the Amendment, shall be incorporated as part of this Order and shall be deemed binding on and enforceable against the Debtors, their estates, and their successors and assigns. The Debtors are further authorized to execute and deliver any non-material amendments or modifications to the Postpetition Credit Agreement or any of the Postpetition Loan Documents as may be agreed upon in writing by the Debtors and the Postpetition Agent, without the need of further notice, hearing or order of this Court. Any and all Postpetition Loan Documents entered into by the Debtors prior to the date of this Order in accordance with the terms of the Interim Order are hereby approved and ratified in full. For purposes of this Order, the term "<u>Postpetition Indebtedness</u>" shall mean all amounts owing under the Postpetition Credit Agreement and other Postpetition Loan Documents (including, without limitation, all

16

05-44481-rdd    Doc 710-1    Filed 10/27/05    Entered 10/27/05 08:03:43    Exhibit A -
Part III    Pg 50 of 82

Obligations as defined in the Postpetition Credit Agreement) and shall include the principal of, interest on, fees and other charges owing in respect of, such amounts (including, without limitation, any reasonable attorneys', accountants', financial advisors' and other fees and expenses that are chargeable or reimbursable under the Postpetition Loan Documents), and any obligations, contingent or otherwise, in respect of the letters of credit.

        3.     Borrowing; Use of Cash Collateral. Subject to the terms and conditions of this Order and the Postpetition Loan Documents, including without limitation, the financial covenants as specified in the Postpetition Credit Agreement, and the provision of adequate protection as described in this Order, (a) Agents and Lenders hereby consent to the Debtors' limited use of Agents' and Lenders' Cash Collateral and (b) Postpetition Agent and Postpetition Lenders may make loans and advances, and issue, or cause to be issued, as and when provided under the Postpetition Credit Agreement, letters of credit, to the Debtors. Notwithstanding anything in this Order to the contrary, the Debtors may use the Cash Collateral and incur Postpetition Indebtedness solely in accordance with the financial covenants, formulae and other terms and conditions set forth in the Postpetition Credit Agreement and this Order. Notwithstanding the foregoing, if Postpetition Agent in its sole discretion advances funds or other extensions of credit in excess of any financial covenants, formulae, or other terms and conditions (or any other limitations in the Postpetition Loan Documents), such advances (and any other indebtedness in excess of such amount) shall constitute Postpetition Indebtedness entitled to the benefits of the Postpetition Loan Documents and this Order; provided that such advances shall not exceed $45,000,000. None of the Agents or Lenders shall have any obligation with respect to the Debtors' use of Cash Collateral or the proceeds of the Postpetition Financing, the Postpetition Collateral or Cash Collateral, and none of them shall be obligated to ensure or

17

CH\694096.6  New World Pasta - Final DIP Order

monitor the Debtors' compliance with any such financial covenants, formulae, or other terms and conditions or be obligated to pay (directly or indirectly from the Prepetition Collateral or Postpetition Collateral) any expenses incurred or authorized to be incurred pursuant to the Postpetition Loan Documents. The Agents' or Lenders' consent to any Budget shall not be construed as a consent to the use of any Cash Collateral or a commitment to continue to provide Postpetition Financing after the occurrence of an Event of Default (as defined in section 8.1 of the Postpetition Credit Agreement) or beyond the Termination Date (as defined below in paragraph 16 of this Order), regardless of whether the aggregate funds shown on the Budget have been expended.

4. <u>Interest, Fees, Costs and Expenses for Postpetition Indebtedness</u>. All Postpetition Indebtedness shall bear interest, including without limitation at the Default Rate upon the occurrence and continuation of an Event of Default, and be payable as set forth in the Postpetition Credit Agreement. The Debtors are hereby authorized and directed, without further motion, fee application, or order of this Court, to pay or reimburse Postpetition Agent for all present and future fees (including any and all amendment fees), commissions, costs and expenses, including all reasonable attorneys', accountants', and financial advisors' fees and expenses, paid or incurred by Postpetition Agent at any time in connection with the financing transactions as authorized by and provided for in the Interim Order, this Order, the Postpetition Credit Agreement, the Amendment, or the Postpetition Loan Documents, all of which unpaid fees, commissions, costs and expenses shall be and are included as part of the principal amount of the Obligations, shall be secured by the Postpetition Collateral and afforded all of the rights, priorities and protections afforded to Postpetition Agent in respect of the Postpetition Indebtedness under the Interim Order, this Order and the Postpetition Loan Documents. Any and

all fees, costs and expenses paid prior to the Petition Date by any Debtor to the Postpetition
Agent or Postpetition Lenders in connection with or with respect to the Postpetition Financing,
Postpetition Credit Agreement or Amendment are hereby approved in full on a final basis.

     5. Closing Date Payments. As part of the Interim Order, the Debtors were
authorized and directed to pay on the Closing Date (taking into account all amounts paid prior to
the Closing Date) and on a calendar monthly basis thereafter (i) all reasonable costs and
expenses of the Postpetition Agent (including all reasonable fees and expenses of professionals
(including, without limitation, a primary legal advisor, a "local" legal advisor and a financial
advisor) engaged by the Postpetition Agent) relating to the negotiation, documentation and
administration of the Postpetition Credit Agreement (whether or not the Postpetition Credit
Agreement is put into place), and (ii) all accrued but unpaid interest at Alternate Base Rate plus
8% on the Prepetition Senior Indebtedness and all other fees, expenses, costs and charges
(including all reasonable fees and expenses of professionals (including, without limitation, a
primary legal advisor, a "local" legal advisor and a financial advisor) engaged by the Prepetition
Agent) owing in respect thereof under the Prepetition Credit Agreement, regardless of whether
any of the interest, fees, expenses, costs and charges described in this paragraph 5 accrued, arose
or were incurred prior to, on or as of the Closing Date (other than with respect to interest accrued
on the Prepetition Senior Indebtedness prior to the Petition Date). Such payments are hereby
approved in full on a final basis, subject to paragraph 28 of this Order. The payment by Debtors
of such interest, fees, expenses, costs and charges described in this paragraph 5 shall be a
condition precedent to the Debtors' use of the Cash Collateral. The payment of interest accrued
on the Prepetition Senior Indebtedness prior to the Petition Date is hereby approved in full and
on a final basis, subject to paragraph 28 of this Order.

6.    Security for Postpetition Agent and Postpetition Lenders.

a.    Postpetition Liens. The Postpetition Agent and Postpetition

Lenders are hereby granted as security for the repayment of all Postpetition Indebtedness,

pursuant to sections 364(c)(2), 364(c)(3) and 364(d)(1) of the Bankruptcy Code, valid, binding,

enforceable, first priority and perfected security interests and liens (the "Postpetition Liens") in

and upon all currently owned or hereafter acquired property and assets of the Debtors of any kind

or nature whatsoever, whether real or personal, tangible or intangible, wherever located,

including, without limitation, all cash (including all Cash Collateral, wherever held), goods,

accounts receivable, inventory, cash-in-advance deposits, real estate, machinery, equipment,

vehicles, 100% of the capital stock and other equity or ownership interests held by any Debtor,

trademarks, trade names, licenses, causes of action, rights to payment including tax refund

claims, insurance proceeds and tort claims (exclusive of actions for preferences, fraudulent

conveyances, and other avoidance power claims under sections 544, 545, 547, 548, 549, 550,

552(b) and 553 of the Bankruptcy Code (the "Avoidance Actions") and the proceeds and

recoveries from the Avoidance Actions (the "Avoidance Action Proceeds")), and the proceeds,

products, offspring, rents and profits of all of the foregoing, all as described more fully in the

Postpetition Credit Agreement (all of the foregoing, the "Postpetition Collateral"), provided that

the Postpetition Liens shall be subject only to: (1) the Carve-Out (as defined below in paragraph

19 of this Order and subject to paragraph 40), and (2) the Permitted Encumbrances as defined in

the Postpetition Credit Agreement, other than the Prepetition Senior Liens and Prepetition Junior

Liens which are being primed as described below, provided further that the Postpetition Liens

shall be, pursuant to section 364(d)(1) of the Bankruptcy Code, senior and superior to the

Prepetition Senior Liens and Prepetition Junior Liens. Other than the Carve-Out and Permitted

Encumbrances, the Postpetition Liens shall at all times be senior to (i) the rights of the Debtors

and any successor trustee or estate representative in the Chapter 11 Cases or any other

subsequent proceedings under the Bankruptcy Code, (ii) any inter-company claim of any Debtor

or any domestic or foreign subsidiary or affiliate of any Debtor, (iii) any security interest or lien

of any creditor or other party in interest in these Chapter 11 Cases, (iv) any security interest in or

lien which is avoided or otherwise preserved for the benefit of any Debtor's estate under section

551 or any other provision of the Bankruptcy Code, and (v) any liens granted on or after the

Petition Date to provide adequate protection to any party.  The Postpetition Liens shall be

deemed legal, valid, binding, enforceable, and perfected liens, not subject to subordination or

avoidance for all purposes in the Chapter 11 Cases and any subsequent proceedings under the

Bankruptcy Code, including, without limitation, any Chapter 7 proceedings if any of the Chapter

11 Cases are converted to a case under Chapter 7 of the Bankruptcy Code (collectively, the

"Successor Case").  Other than the Carve-Out and Permitted Encumbrances, no other liens or

security interests shall be senior or equal to or pari passu with the Postpetition Liens in these

Chapter 11 Cases and the Successor Case without the express written consent of the Postpetition

Agent and Postpetition Lenders (which consent may be withheld in their sole discretion).

Notwithstanding anything herein to the contrary, all parties retain and reserve all their rights to

dispute the validity, priority, enforceability and perfection of the Permitted Encumbrances,

subject to the time limitations and waivers provided in paragraph 26 of this Order with respect to

the Prepetition Senior Liens.

        b.    Super-Priority Claims.  In addition to the Postpetition Liens, for all

Postpetition Indebtedness now existing or hereafter arising pursuant to Postpetition Credit

Agreement, the Postpetition Loan Documents, the Interim Order, and/or this Order, the

Postpetition Agent and Postpetition Lenders are hereby granted an allowed super-priority

administrative claim pursuant to Section 364(c)(1) of the Bankruptcy Code (the "Super-Priority Claims"), and, except for the Carve-Out, the Super-Priority Claims shall have priority over all other costs and expenses of administration of any kind, including those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise (whether incurred in these Chapter 11 Cases and any Successor Case), and shall at all times be senior to the rights of the Debtors or any domestic or foreign subsidiary or affiliate of any Debtor, any successor trustee or estate representative, or any other creditor or party in interest in the Chapter 11 Cases or any Successor Case. Except for the Carve-Out, no cost or expense of administration under any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326, 328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114 or any other provision of the Bankruptcy Code or otherwise (whether incurred in these Chapter 11 Cases and any Successor Case), shall be senior to, equal to, or pari passu with, the Super-Priority Claims.

7.    Continuing Prepetition Lien. The Prepetition Agent and Prepetition Senior Lenders shall have continuing valid, binding, enforceable and perfected liens in all Prepetition Collateral, including any proceeds, products, offspring or profits of the Prepetition Collateral generated after the Petition Date, under the same terms and conditions provided under the Prepetition Credit Agreement and the Prepetition Loan Documents, with the same validity and priority as existed on the Petition Date.

8.    Adequate Protection to Prepetition Agent and Prepetition Senior Lenders.

Until the indefeasible repayment in full in cash of the Prepetition Senior Indebtedness, as adequate protection for the priming of the Prepetition Senior Liens, any Cash

22

Collateral expended by the Debtors pursuant to the Interim Order or this Order and the use,

consumption, sale or other disposition of other Prepetition Collateral and any proceeds thereof

(the "Adequate Protection Senior Obligations"), the Prepetition Agent and Prepetition Senior

Lenders consent to and are hereby granted the following:

a.    Replacement Liens.  Pursuant to sections 361(2), 362, 363(c)(2),

and 363(e) of the Bankruptcy Code, continuing valid, binding, enforceable and perfected, liens

and security interests in and to all of the Postpetition Collateral (the "Adequate Protection Senior

Liens").  The Adequate Protection Senior Liens shall secure an amount of the Prepetition Senior

Indebtedness equal to the aggregate decline in the value of the Prepetition Senior Lenders'

interest in the Prepetition Collateral (in which the Prepetition Senior Lenders hold valid,

perfected, enforceable and non-avoidable liens) occurring from and after the Petition Date,

whether as a result of the imposition of the automatic stay, priming of the Prepetition Senior

Liens or the physical deterioration, consumption, use, sale, lease, disposition, shrinkage, decline

in market value of the Prepetition Collateral or otherwise, and shall at all times be senior to (i)

the rights of the Debtors and any successor trustee or estate representative in the Chapter 11

Cases or any other subsequent proceedings under the Bankruptcy Code, (ii) any inter-company

claim of any Debtor or any domestic or foreign subsidiary or affiliate of any Debtor, (iii) any

security interest or lien of any creditor or other party in interest in these Chapter 11 Cases, and

(iv) any security interest in or lien which is avoided or otherwise preserved for the benefit of any

Debtor's estate under section 551 or any other provision of the Bankruptcy Code; provided,

however, that the Adequate Protection Senior Liens shall be subordinate in priority only to the

Postpetition Liens, Prepetition Senior Liens, Permitted Encumbrances, Carve-Out, and

Replacement Liens as defined in and granted to Miller Milling Company pursuant to that certain

23

Stipulated Order Authorizing Use Of Miller Milling Company's Collateral And Granting The

Replacement Lien As Adequate Protection (the "Miller Stipulation") in the event and solely to

the extent that the asserted PMSI Lien (as defined in the Miller Stipulation) is determined to be

valid and senior in priority to the Prepetition Senior Lenders. The Adequate Protection Senior

Liens shall be deemed legal, valid, binding, enforceable, perfected liens, not subject to

subordination or avoidance for all purposes in the Chapter 11 Cases and any Successor Case.

        b.     Adequate Protection Claim. As further adequate protection for the

aggregate decline in value of the Prepetition Senior Lenders' interest in the Prepetition Collateral

(in which the Prepetition Senior Lenders hold valid, perfected, enforceable and non-avoidable

liens) from and after the Petition Date, whether as a result of the imposition of the automatic

stay, priming of the Prepetition Senior Liens or physical deterioration, consumption, use, sale,

lease, disposition, shrinkage, decline in market value or otherwise, the Prepetition Agent and

Prepetition Senior Lenders shall have an allowed super-priority administrative claim under

sections 364(c)(1), 503(b), 507(a)(1) and 507(b) of the Bankruptcy Code (the "Adequate

Protection Senior Claim"). Except for the Carve-Out and Super-Priority Claim, the Adequate

Protection Senior Claim shall have priority over all other costs and expenses of administration of

the kinds specified and ordered pursuant to any provision of the Bankruptcy Code, including, but

not limited to, sections 105, 326, 328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114

of the Bankruptcy Code, and shall at all times be senior to the rights of the Debtors or any

domestic or foreign subsidiary or affiliate of any Debtor, any successor trustee or estate

representative, or any other creditor or party in interest in the Chapter 11 Cases or any Successor

Case. Except for the Carve-Out and Super-Priority Claim, no cost or expense of administration

under any provision of the Bankruptcy Code, including, but not limited to, sections 105, 326,

328, 330, 331, 363, 364, 503, 506, 507, 546, 726, 1113 or 1114 of the Bankruptcy Code, or

otherwise, shall be senior to, equal to, or pari passu with, the Adequate Protection Senior Claim.

Notwithstanding anything in this Order to the contrary, the Adequate Protection Senior Claim

shall be subordinate in priority to the super-priority administrative claim granted to Miller

Milling Company pursuant to the Miller Stipulation in the event and solely to the extent that the

asserted PMSI Lien (as defined in the Miller Stipulation) is determined to be valid and senior in

priority to the Prepetition Senior Lenders.

        c.     Current Payment of Interest, Fees and Charges.  The payment of

interest monthly in arrears on the Prepetition Senior Indebtedness (to be shared ratably by the

Prepetition Senior Lenders on the basis of their principal outstanding) at the Alternate Base Rate

plus 8%, plus payment on a current basis of all other fees, costs and charges arising under or in-

connection therewith under the Prepetition Credit Agreement, including without limitation, the

reasonable attorneys', accountants', financial advisors' and other fees and expenses of the

Prepetition Agent and Prepetition Senior Lenders, all without further motion, fee application or

order of the Court.

        9.     Subordination of Prepetition Junior Lenders.  Notwithstanding anything in

this Order to the contrary, any and all claims and liens of the Postpetition Agent, Postpetition

Lenders, Prepetition Agent (provided that such claims and liens are for the benefit of the

Prepetition Senior Lenders) and Prepetition Senior Lenders arising with respect to or in

connection with the Interim Order, this Order, the Prepetition Loan Documents or Postpetition

Loan Documents (the "Superior Obligations"), including without limitation, the Postpetition

Indebtedness, Postpetition Liens, Super-Priority Claims, Adequate Protection Senior Obligations,

Adequate Protection Senior Claims, Adequate Protection Senior Liens, Prepetition Senior

Indebtedness and Prepetition Senior Liens, must and shall be indefeasibly paid and satisfied in

full in cash before any payment or distribution, whether pursuant to a plan of reorganization or

otherwise, may or can be made to or retained by the Prepetition Junior Lenders or JLL arising

with respect to or in connection with the Prepetition Loan Documents, the Prepetition Junior

Lenders Orders, the Interim Order, this Order or Postpetition Loan Documents, if applicable (the

"Subordinate Obligations"). Any payment or distribution, whether in cash, securities or other

property, which would otherwise, but for the terms hereof, be payable or deliverable to the

Prepetition Junior Lenders or JLL in respect of or in connection with the Subordinate Obligations

shall be paid or delivered directly to the Postpetition Agent (to be held and/or applied by

Postpetition Agent in accordance with the terms of this Order and the Postpetition Credit

Agreement) until all Superior Obligations are indefeasibly paid and satisfied in full in cash and

all commitments to lend under the Postpetition Credit Agreement shall have been terminated.

10.    Perfection of New Liens. The liens and security interests on or in the

Postpetition Collateral granted to the Agents or Lenders by the Interim Order, this Order or the

Postpetition Loan Documents shall be, and they hereby are, deemed duly perfected and recorded

under all applicable federal or state or other laws as of the date hereof, and no notice, filing,

mortgage recordation, possession, further order, landlord or warehousemen lien waivers or other

third party consents or other act, shall be required to effect such perfection; provided, however,

that notwithstanding the provisions of section 362 of the Bankruptcy Code, which is hereby

lifted and vacated: (i) Agents or Lenders may, at their sole option, file or record or cause the

Debtors to obtain any such landlord or warehousemen lien waivers or other third party consents

or execute, file or record, at the Debtors' expense, any such UCC financing statements, notices

of liens and security interests, mortgages and other similar documents as Agents or Lenders may

require, and (ii) Agents or Lenders may require the Debtors to deliver to Agents or Lenders any

chattel paper, instruments or securities evidencing or constituting any Postpetition Collateral, and

the Debtors are directed to cooperate and comply therewith.  If Agents or Lenders, in their sole

discretion, shall elect for any reason to cause to be obtained any landlord or warehouse lien

waivers or other third party consents or cause to be filed or recorded any such notices, financing

statements, mortgages or other documents with respect to such postpetition security interests and

liens, all such landlord or warehouse lien waivers or other third party consents, financing

statements or similar documents shall be deemed to have been filed or recorded in these Chapter

11 Cases as of the Petition Date, but with the priorities as set forth herein.  Agents or Lenders

may (in their sole discretion) but shall not be required to, file a certified copy of this Order in any

filing or recording office in any county or other jurisdiction in which any Debtor has real or

personal property and such filing or recording shall be accepted and shall constitute further

evidence of perfection of such applicable parties' interests in the Postpetition Collateral.

Notwithstanding anything in this Order to the contrary, the Prepetition Agent, Prepetition Senior

Lenders, Prepetition Junior Lenders and JLL shall not file such financing statements, mortgages,

notices of lien or similar instruments, or otherwise confirm the perfection of such security

interests and liens granted in the Interim Order, this Order, or the Prepetition Junior Lenders

Orders, if applicable, unless the Postpetition Agent and Postpetition Lenders shall theretofore

have done so.  Upon the request of the Postpetition Agent, the Prepetition Agent, Prepetition

Senior Lenders, Prepetition Junior Lenders and JLL are authorized to make, execute and deliver

such instruments to enable the Postpetition Agent to further perfect, preserve and enforce the

security interests and liens granted to the Postpetition Agent and Postpetition Lenders by the

Interim Order, this Order or the Postpetition Credit Agreement.  To the extent that any applicable

non-bankruptcy law would otherwise restrict the grant, scope, enforceability, attachment or

perfection of the security interests and liens authorized or created hereby, or otherwise would

impose filing or registration requirements with respect thereto, such law is hereby pre-empted to

the maximum extent permitted by the United States Constitution, the Bankruptcy Code,

applicable federal law, and the judicial power of the United States Bankruptcy Court (provided

that Agents and Lenders may still take such steps as they wish to perfect their security interests

and liens under otherwise applicable state law without waiving the benefits of this provision of

the Interim Order or this Order).

11.    Financial Reports to Prepetition Agent.  The Debtors shall deliver to the

Prepetition Agent, simultaneously with their delivery to the Postpetition Agent, all financial

reports and Budgets required under the Postpetition Credit Agreement.  The Postpetition Agent

shall make such documents available to the Postpetition Lenders.

12.    Default Under Other Documents.  The Agents and Lenders shall have all

rights and remedies with respect to the Debtors as are set forth in the Interim Order, this Order or

the Postpetition Credit Agreement, including without limitation the Postpetition Liens, Super-

Priority Claims, Prepetition Senior Liens, Adequate Protection Senior Obligations, Adequate

Protection Senior Liens, and Adequate Protection Senior Claims.  Notwithstanding anything to

the contrary contained in any prepetition or postpetition agreement, contract, document, note or

instrument to which any Debtor is a party or under which any Debtor is obligated, except as

otherwise provided herein, any provision that restricts, limits or impairs in any way any Debtor

from granting the Agents and Lenders postpetition security interests or liens upon any of its

assets or properties or otherwise entering into and complying with all of the terms, conditions

and provisions of the Interim Order, this Order or Postpetition Loan Documents shall be

28

unenforceable against such Debtors(s), and therefore, shall not adversely affect the validity, priority or enforceability of the liens, security interests, claims, rights, priorities and/or protections granted to the Agents and Lenders pursuant to the Interim Order, this Order or Postpetition Loan Documents.

13. <u>Debtors' Waiver of Rights</u>. Subject to the provisions of paragraph 25 of this Order, the Debtors and their estates (and any party in interest acting on behalf of any Debtor) hereby irrevocably waive, and are barred from asserting or exercising any right, (a) without Agents' and Lenders' prior written consent (which may be withheld in their sole discretion), or (b) without prior indefeasible payment and satisfaction in full in cash of the Postpetition Indebtedness: (i) to grant or impose, or request that the Court grant or impose, under section 364 of the Bankruptcy Code or otherwise, liens on or security interests in any Postpetition Collateral, which are <u>pari</u> <u>passu</u> with, equal to or superior to the Agents' or Lenders' liens on and security interests in such Postpetition Collateral granted under the Interim Order or this Order; (ii) to grant or impose, or request that the Court grant or impose, under section 364 of the Bankruptcy Code or otherwise, claims or expenses against the Debtors, which are <u>pari</u> <u>passu</u> with, equal to or superior to the Agents' or Lenders' claims and expenses granted under the Interim Order or this Order; (iii) to request that the Court authorize the use of Cash Collateral in which Agents or Lenders have an interest or the sale, lease, or other disposition of any property of Debtors' estates in which Agents or Lenders have a lien or security interest, except as expressly permitted hereunder; or (iv) to modify or affect any of the rights of Agents or Lenders under the Interim Order, this Order or any Postpetition Loan Documents by any order entered in any of the Chapter 11 Cases or any Successor Case.

CH\694096.6  New World Pasta - Final DIP Order

14.     Retainers.  Any unused retainers with professionals engaged pursuant to or in connection with the Prepetition Credit Agreement may be used by the Postpetition Agent and Postpetition Lenders as retainers for professionals engaged in connection with the Postpetition Credit Agreement, without further order of the Court.

15.     Waiver of Section 506(c) Claims.  No costs or expenses of administration or other charge, lien, assessment or claim incurred on or after the Petition Date of any person or entity shall be imposed against Postpetition Agent, Postpetition Lenders, Prepetition Agent or Prepetition Senior Lenders, their claims or the Prepetition Collateral or Postpetition Collateral under section 506(c) of the Bankruptcy Code or otherwise, and the Debtors hereby waive any and all such rights under section 506(c) of the Bankruptcy Code.

16.     Termination of Postpetition Financing.  Except as otherwise agreed in writing by the Postpetition Agent, the Debtors' authorization to incur Postpetition Indebtedness shall immediately and automatically terminate, and all Postpetition Indebtedness shall be immediately due and payable in cash, upon the earliest to occur of the following (the "Termination Date"), all without further notice, order or relief of the Court, and as described more fully in the Postpetition Credit Agreement:

        a.      the later of (i) May 11, 2005 or, (ii) if on or prior to March 31, 2005, the Credit Parties and the Requisite Lenders agree to a new budget that runs through December 31, 2005 and new financial covenants through September 30, 2005, October 11, 2005;

        b.      the date of termination of Postpetition Lenders' obligations to make Advances and to incur Letter of Credit Obligations or permit existing Loans to remain outstanding pursuant to Section 8.2(b) of the Postpetition Credit Agreement;

        c.      the date of indefeasible prepayment in full by Borrower of the Loans and the cancellation and return (or stand-by guarantee) of all Letters of Credit or the cash collateralization of all Letter of Credit Obligations pursuant to Section 1.2(c) of the Postpetition Credit Agreement, and the permanent reduction of all Commitments to zero dollars ($0),

    d.    [intentionally omitted];

    e.    sixty (60) days following the Petition Date if the Final Order has not been entered by the Bankruptcy Court by such date;

    f.    the date upon which the Interim Order expires, unless the Final Order shall have been entered and become effective by such date;

    g.    [intentionally omitted];

    h.    the date of entry of an order of the Bankruptcy Court confirming a plan of reorganization in any Chapter 11 Case that has not been consented to by the Requisite Lenders and fails to provide for the payment in full in cash of all Obligations under the Postpetition Credit Agreement and the other Postpetition Loan Documents on the effective date of such plan; and

    i.    if a plan of reorganization that has been consented to by Postpetition Agent and the Requisite Lenders or that provides for payment in full in cash of all Obligations under the Postpetition Credit Agreement and the other Postpetition Loan Documents has been confirmed by order of the Bankruptcy Court, the earlier of the effective date of such plan of reorganization or the sixtieth day after the date of entry of such confirmation order.

    17.    <u>Termination of Use of Cash Collateral</u>.  Except as otherwise agreed in writing by the Prepetition Agent, the Debtors' authorization to consensually use the Cash Collateral shall immediately and automatically terminate upon the earlier of the Termination Date or the date on which the Debtors fail to comply with the adequate protection provisions of this Order specified in paragraph 8 hereof.

    18.    <u>Modification of Automatic Stay; Other Remedies</u>.

    a.    Except as otherwise provided in this paragraph 18, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted and vacated as to Postpetition Agent, Postpetition Lenders, Prepetition Agent and Prepetition Senior Lenders to permit them to perform in accordance with, and exercise, enjoy and enforce their rights, benefits, privileges and remedies pursuant to, the Interim Order, this Order and/or the other Postpetition Loan Documents without further application or motion to, or order from, the Court, other than

those remedies that require the occurrence and continuance of an Event of Default and prior

notice as described in this paragraph 18. Regardless of any change in circumstances (whether or

not foreseeable), neither section 105 of the Bankruptcy Code nor any other provision of the

Bankruptcy Code or applicable law shall be utilized to prohibit Postpetition Agent, Postpetition

Lenders, Prepetition Agent or Prepetition Senior Lenders' exercise, enjoyment and enforcement

of any of such rights, benefits, privileges and remedies as described herein. Postpetition Agent,

Postpetition Lenders, Prepetition Agent and Prepetition Senior Lenders are hereby authorized

and granted leave, among other things, to (i) receive and apply payments of the Postpetition

Indebtedness and collections on and proceeds of the Postpetition Collateral to the Postpetition

Indebtedness in the manner specified in the Interim Order, this Order and the Postpetition Loan

Documents, (ii) file or record any financing statements, mortgages or other instruments or other

documents to evidence the security interests in and liens upon the Postpetition Collateral or

reflect any change of agency under the Prepetition Credit Documents, (iii) as adequate protection

or to the extent permitted by section 506(b) of the Bankruptcy Code, charge and collect any

interest, fees, costs, and expenses and other amounts accruing at any time under the Prepetition

Loan Documents, the Interim Order, or this Order as provided therein or herein, (iv) to give any

Debtor any notice provided for in any of the Postpetition Loan Documents, the Interim Order, or

this Order, including without limitation the notice described in this paragraph 18, and (v) upon

the occurrence of an Event of Default (as defined in section 8.1 of the Postpetition Credit

Agreement), charge the Default Rate on the Postpetition Indebtedness.

        b.     Upon the occurrence of an Event of Default, and after providing

ten (10) days' prior notice to the Debtors, the Creditors' Committee, and the U.S. Trustee, the

Postpetition Agent, Postpetition Lenders, Prepetition Agent and Prepetition Senior Lenders shall

be entitled to: (1) terminate the Postpetition Financing under the Interim Order, this Order and

the Postpetition Loan Documents (it being understood that the obligations of the Prepetition

Agent and the Prepetition Senior Lenders to make loans or otherwise provide extensions of credit

have already ceased and terminated), (2) declare all Postpetition Indebtedness immediately due

and payable, and require that all contingent Obligations, if any, be cash collateralized or

terminated without liability to Postpetition Agent, Postpetition Lenders, Prepetition Agent or

Prepetition Senior Lenders, and (3) revoke the Debtors' right, if any, under the Interim Order,

this Order and/or the other Postpetition Loan Documents to use Cash Collateral.  During such ten

(10) day period, the parties shall use their best efforts to schedule and attend an expedited Court

hearing with respect to Court approval of the exercise of the remedies described in this paragraph

18(b).  The parties further acknowledge and agree that the only issue to be determined and

decided at such Court hearing is whether an Event of Default has occurred and is continuing

under the Postpetition Loan Documents.  During such ten (10) day period, the Debtors shall only

be authorized to incur Postpetition Indebtedness, or use Postpetition Financing or Cash

Collateral, under the Interim Order, this Order and the Postpetition Loan Documents for the

payment of critical operating expenses, after which time such authorization shall immediately

terminate, without further order of the Court.

        c.      Upon the occurrence of an Event of Default, and after Court

approval upon notice and hearing, the Postpetition Agent, Postpetition Lenders, Prepetition

Agent and Prepetition Senior Lenders shall be entitled to foreclose or otherwise enforce their

liens on any or all of the Postpetition Collateral and/or to exercise any other default-related

remedies under the Postpetition Loan Documents, the Interim Order, this Order or applicable

law.  The parties shall use their best efforts to schedule and attend an expedited Court hearing

within ten (10) days of notice of the Event of Default given to the Debtors, the Creditors'
Committee, and the U.S. Trustee. The parties further acknowledge and agree that the only issue
to be determined and decided at such Court hearing is whether an Event of Default has occurred
and is continuing under the Postpetition Loan Documents.

    d.  Notwithstanding anything in paragraph 18(c) to the contrary,
unless the Postpetition Agent otherwise agrees in writing, so long as there are any borrowings or
letters of credit outstanding, or the Postpetition Agent or Postpetition Lenders have any
Postpetition Indebtedness outstanding under the Postpetition Loan Documents, the Prepetition
Agent, Prepetition Senior Lenders, Prepetition Junior Lenders and JLL are directed to take no
action to foreclose upon the liens granted to the Prepetition Agent, Prepetition Senior Lenders,
Prepetition Junior Lenders or JLL pursuant to the Prepetition Credit Agreement, Postpetition
Credit Agreement, the Interim Order, this Order or Prepetition Junior Lender Order, if
applicable, or otherwise exercise any remedies against the Debtors or with respect to the Cash
Collateral, Prepetition Collateral or Postpetition Collateral, in each case to the extent not
authorized by further order of the Court.

    19.  <u>Carve-Out</u>. Notwithstanding anything to the contrary contained in this
Order but subject to paragraph 40 of this Order, the Postpetition Liens, Super-Priority Claims,
Adequate Protection Senior Obligations, Adequate Protection Senior Liens and Adequate
Protection Senior Claims shall be subject to: (a) unpaid fees of the United States Trustee
pursuant to Section 1930 of Title 28 of the United States Code and to the Clerk of the
Bankruptcy Court, and (b) following notice to affected professionals and the occurrence of either
(i) an Event of Default or (ii) an event that would constitute an Event of Default with the giving
of notice or the lapse of time or both (the "<u>Carve-Out Date</u>"), the payment of claims of

professionals of the Debtors, the Creditors' Committee and of any other statutory committee(s) appointed in the Chapter 11 Cases whose retention is approved by the Court during the Chapter 11 Cases pursuant to Section 327 and 1103 of the Bankruptcy Code (the "Retained Professionals") for fees and expenses accrued or incurred after the Carve-Out Date in an aggregate amount not to exceed $1,000,000, in addition to such Retained Professionals' fees and expenses accrued or incurred before the Carve-Out Date and previously allowed or, if not yet allowed, permitted by the Budget as and when allowed, whether or not paid; provided that all such fees and expenses of Retained Professionals described in this paragraph 19 shall be ultimately allowed by final order of the Bankruptcy Court under sections 330 and 331 of the Bankruptcy Code; provided further that such Retained Professionals file their fee applications with the Court within 20 days of the time such professionals are first permitted to file an application for such fees and disbursements; provided further that all such fees and expenses of Retained Professionals described in this paragraph 19 are not incurred with respect to or in connection with the actions described in paragraph 24 of this Order (such amounts under clauses (a) and (b) of this paragraph being the "Carve-Out"). Agents' and Lenders' obligation to fund or otherwise pay the Carve-Out shall be added to and made a part of the Debtors' obligations to such applicable party, secured by the Postpetition Collateral, and Agents and Lenders, as applicable, shall be entitled to all of the rights, claims, liens, priorities and protections under the Interim Order, this Order, the Postpetition Credit Agreement, the Bankruptcy Code, and/or applicable law in connection therewith. Payment of any obligations relating to the Carve-Out, whether by or on behalf of Agents and Lenders, shall not and shall not be deemed to reduce the Debtors' obligations and shall not and shall not be deemed to subordinate any of Agents' and Lenders' liens and security interests in the Postpetition Collateral or its claims to any junior pre-

petition or post-petition lien, interest, or claim in favor of any other party. Except as otherwise

provided herein with respect to the Carve-Out, Agents and Lenders shall not be responsible for

the direct payment or reimbursement of any fees or disbursements of any Retained Professionals

incurred in connection with the Debtors' cases under any chapter of the Bankruptcy Code, and

nothing in this Order or otherwise shall be construed to obligate Agents and Lenders in any way,

to pay compensation to or to reimburse expenses of any Retained Professional, or to ensure that

the Debtors have sufficient funds to pay such compensation or reimbursement.

20.    Cash Collection Procedures. From and after the date of the entry of this

Order, all collections and proceeds of any Postpetition Collateral or services provided by any

Debtor and all Cash Collateral which shall at any time come into the possession, custody or

control of any Debtor, or to which any Debtor shall become entitled at any time, shall be

deposited in the same bank accounts into which the collections and proceeds of the Prepetition

Collateral were deposited under the Prepetition Credit Agreement (or in such other accounts as

are designated by Postpetition Agent from time to time), and such collections and proceeds upon

such deposit shall become the sole and exclusive collateral of Prepetition Agent and Postpetition

Agent and shall be applied against the Postpetition Indebtedness as provided in the Postpetition

Credit Agreement and this Order. All cash and cash equivalents of any Debtor currently in any

account of any Debtor or otherwise in the possession, custody or control of any Debtor

constitutes proceeds of the Prepetition Collateral, which the Debtors are authorized to use in

accordance with this Order and the Postpetition Credit Agreement.

21.    Non-Ordinary Course Dispositions. Except as otherwise permitted by the

Postpetition Credit Agreement, no sale, lease or other disposition of Postpetition Collateral

outside the ordinary course of business (including any auction or other similar sales) or

CH\694096.6  New World Pasta - Final DIP Order

inconsistent with past practice may be done without the Postpetition Agent's written consent,
including the compromise, adjustment or modification of the amount of any of Debtors' accounts
receivable (by way of discount, offset or otherwise), and no such consent shall be implied, from
any other action, inaction or acquiescence by Postpetition Agent or Postpetition Lenders.

22.    Books and Records.  The Debtors shall permit Postpetition Agent and any
authorized representatives designated by Postpetition Agent (including, without limitation, their
auditors, appraisers and financial advisors) to visit and inspect any of the properties of any
Debtor, including the Debtors' respective financial and accounting records, and to make copies
and take extracts therefrom, and to discuss any Debtor's affairs, finances and business with such
Debtor's officers and independent public accountants, at such reasonable times during normal
business hours and as often as may be reasonably requested.  Without limiting the generality of
the foregoing, the Debtors shall promptly provide to Postpetition Agent or its respective
designated representatives any information or data reasonably requested to monitor the Debtors'
compliance with the provisions of the Postpetition Loan Documents and this Order and to
perform appraisals or other valuation analyses of any property of any Debtor.

23.    No Waiver of Rights by Agents and Lenders. None of the Agents or
Lenders waives, and each expressly reserves, any and all claims, causes of action, defenses,
rights and remedies it has pursuant to any or all of the Prepetition Loan Documents, Postpetition
Loan Documents, the Bankruptcy Code and/or other applicable law against any Debtor, any
officer, director, employee, agent or other representative of any Debtor, and any other third
party.  In addition, the rights and obligations of the Debtors and the rights, claims, liens, security
interests and priorities of the Agents and Lenders arising under the Interim Order or this Order
are in addition to, and are not intended as a waiver or substitution for, the rights, obligations,

37

claims, liens, security interests and priorities granted by the Debtors under the Prepetition Loan Documents or Postpetition Loan Documents. Without limiting the generality of the foregoing, the Agents and Lenders may, as applicable, petition this Court for any such additional protection they may reasonably require with respect to the Prepetition Senior Indebtedness, the Postpetition Indebtedness, or otherwise, including, without limitation, their rights to request additional adequate protection of their interests in the Prepetition Collateral or the Cash Collateral, relief from or modification of the automatic stay extant under section 362 of the Bankruptcy Code, or termination of the forbearance provided by the Prepetition Agent and Prepetition Senior Lenders in paragraph 27 of this Order. Except as set forth herein, entry of this Order shall not in any way constitute agreement, consent, or acquiescence to the terms of any plan of reorganization by virtue of any term or provision of this Order.

24.     <u>Restriction on Use of Lenders' Funds</u>. Notwithstanding anything herein to the contrary, no Prepetition Collateral, Postpetition Collateral, proceeds thereof, or Cash Collateral, or any portion of the Carve-Out, may be used by any of the Debtors, Creditors' Committee, or any other committee, person or entity to: (i) object to or contest in any manner, or raise any defenses to, the validity, perfection, priority, amount, payment or enforceability of the Prepetition Senior Indebtedness, Postpetition Indebtedness, the Prepetition Senior Liens, the Postpetition Liens, the Super-Priority Claims, the Adequate Protection Senior Obligations, the Adequate Protection Senior Claims, the Adequate Protection Senior Liens, (ii) request to use the Cash Collateral without the prior written consent of Postpetition Agent, Postpetition Lenders, Prepetition Agent, or Prepetition Senior Lenders, (iii) request for authorization to obtain postpetition loans or other financial accommodations pursuant to section 364(c) or (d) of the Bankruptcy Code other than from Postpetition Agent and Postpetition Lenders without their prior

*[handwritten: the Creditors' Committee May use up to $150,000 Of the Carve-out to Lawsuits etc]*

written consent, and (iv) assert, join, commence, support or prosecute any action for preferences,

fraudulent conveyances, other avoidance power claims or any other claim, counter-claim, action,

proceeding, application, motion, objection, defense, or other contested matter seeking any order,

judgment, determination or similar relief against, or adverse to the interests of, any of the

Postpetition Agent, Postpetition Lenders, Prepetition Agent, or Prepetition Senior Lenders, or

any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or

successors, including, without limitation, any actions under chapter 5 of the Bankruptcy Code or

any so-called "lender liability" claims and causes of action (all actions described in this

paragraph 24 are collectively, the "Claims and Defenses"); provided that ~~the Creditors'~~

~~Committee shall not be, or seek to be, reimbursed by the Debtors' estates for any fees and~~

~~expenses incurred by the Creditors' Committee in excess of $100,000 (and any such fees and~~

~~expenses incurred by the Creditors' Committee in excess thereof shall not be allowed in the~~

~~Debtors' Chapter 11 Cases) in connection with its investigation~~ of the validity, perfection,

priority, amount, payment or enforceability of the Prepetition Senior Indebtedness, Prepetition

Senior Liens, Prepetition Junior Indebtedness, and/or Prepetition Junior Liens.

       25.     From and after the entry of this Order and so long as (i) the Postpetition

Agent has not given notice of its intent to terminate lending under the Postpetition Credit

Agreement, and (ii) the Prepetition Agent has not given notice of its intent to terminate the

Debtors' authority to use the Cash Collateral (in each case whether on account of a default by the

Debtors or otherwise), the Debtors waive and are hereby prohibited, absent the consent of the

Postpetition Agent and the Prepetition Agent, from (a) granting liens to any third party, or (b)

using Cash Collateral other than in accordance with the terms of this Order.  The Postpetition

Agent and the Prepetition Agent will afford the Debtors advance written notice of their intent to

terminate lending or to terminate the Debtors' right to use Cash Collateral, as the case may be, in accordance with paragraph 18 of this Order. If the Postpetition Agent terminates lending, the Debtors may seek to impose liens and gain the nonconsensual use of cash collateral in connection with replacement financing so long as (x) the Postpetition Indebtedness is paid in full with the proceeds of such replacement financing, and (y) the Debtors are otherwise able to provide to the Prepetition Senior Lenders adequate protection for the use of such cash collateral and the imposition of priming liens in favor of the replacement lenders as required by applicable provisions of the Bankruptcy Code.

26.     <u>Release of Claims and Defenses Against Prepetition Senior Lenders</u>.

(A)     Without limitation of the restrictions stated in paragraph 24 of this Order, (i) the Debtors shall have no right to assert, and hereby forever waive, relinquish and release, any and all Claims and Defenses, and (ii) the Creditors' Committee and any other committee, person or entity shall have the right to assert such Claims and Defenses against the Prepetition Agent or Prepetition Senior Lenders, or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, only in an action commenced in this Court on or prior to August 22, 2004. If no such action is commenced on or prior to August 22, 2004 (or such timely commenced action does not result in a final and non-appealable order of this Court that is inconsistent with clauses (i) through (iv) of paragraph 26(b) of this Order), then all Claims and Defenses against the Prepetition Agent or Prepetition Senior Lenders, or any of their respective officers, directors, employees, agents, attorneys, affiliates, assigns, or successors, shall be, without further notice or order of the Court, deemed to have been forever relinquished, released and waived as to the Creditors' Committee and such other committee, person or entity, and if such an action is timely commenced on or before such date, all Claims and Defenses shall be

deemed, immediately and without further action, to have been forever relinquished, released and waived as to the Creditors' Committee and such other committee, person or entity, except with respect to Claims and Defenses that are expressly asserted in such action. Nothing in this Order shall be deemed to grant standing to the Creditors' Committee or any other committee, person or entity to commence such an action.

(B)    If no such action is commenced on or prior to August 22, 2004, or such timely commenced action does not result in a final and non-appealable order of this Court that is inconsistent with clauses (i) through (iv) of this paragraph, then (i) the Prepetition Senior Indebtedness shall constitute allowed secured claims for all purposes in the Chapter 11 Cases and any Successor Case, without the requirement or need to file any proof of claim with respect thereto, (ii) the Prepetition Senior Liens shall be deemed legal, valid, binding, enforceable, perfected, not subject to subordination or avoidance for all purposes in the Chapter 11 Cases and any Successor Case, (iii) the release of the Claims and Defenses shall be binding on the Creditors' Committee and any and all other committees, persons and entities in the Chapter 11 Cases and any Successor Case, and (iv) the Prepetition Senior Indebtedness, the Prepetition Senior Liens, releases of the Claims and Defenses, and payment of any portion of the Prepetition Senior Indebtedness shall not be subject to any other or further claims, cause of action, objection, contest, setoff, defense or challenge by the Creditors' Committee or any and all other committees, persons and entities for any reason, including, without limitation, any successor to or estate representative of the Debtors, in the Chapter 11 Cases or Successor Case.

(C)    Notwithstanding anything in this Order to the contrary, the release, waiver and discharge of claims and actions described in Section 1.23 of the Postpetition Credit Agreement, including without limitation the Claims and Defenses with respect to the Postpetition

Agent and Postpetition Lenders, is hereby approved in full on a final basis. The Postpetition

Financing, Postpetition Indebtedness, Postpetition Liens, Super-Priority Claims, and any and all

amounts described in paragraphs 4 and 5 of this Order shall not be subject to any other or further

claims, cause of action, objection, contest, setoff, defense or challenge by the Debtors, Creditors'

Committee or any other committee, person or entity.

27.    Forbearance under Prepetition Credit Agreement Against Non-Debtors. In

exchange for receiving the adequate protection provided in this Order, the Prepetition Agent and

Prepetition Senior Lenders agree to forbear from exercising any and all rights and remedies

under the Prepetition Credit Agreement against any non-debtor, subsidiary or affiliate of any

Debtor; provided that such forbearance shall terminate upon the earliest of (i) an Event of

Default, (ii) material breach of this Order, (iii) material adverse change in the business or

operation of any such non-debtor, subsidiary or affiliate, or (iv) Court approval after notice and a

hearing.

28.    Provisional Nature of Adequate Protection Payments. Adequate

protection payments made to the Prepetition Senior Lenders pursuant to the terms of this Order

shall be provisional in nature pending ultimate allowance under Section 506(b) of the

Bankruptcy Code. Absent the consent of the Prepetition Agent, the Debtors will be obligated to

continue making adequate protection payments hereunder until a plan of reorganization is

confirmed. If and to the extent that any adequate protection payment made to the Prepetition

Senior Lenders is not allowed under Section 506(b) of the Bankruptcy Code, including those

described in paragraphs 5 and 8 of this Order, such payment(s) will be recharacterized as a

payment of principal on the Prepetition Senior Indebtedness.

CH\694096.6  New World Pasta - Final DIP Order

29.    No Liability to Third Parties.  In making decisions to advance any Loans

or other extensions of credit or letters of credit to any Debtor, in administering any Loans, letters

of credit or other extensions of credit, permitting the use of Cash Collateral, or in taking any

other actions reasonably related to the Interim Order, this Order or the Postpetition Loan

Documents (including, without limitation, the exercise of their approval rights with respect to

any Budget), Agents and Lenders (i) shall have no liability to any third party and shall not be

deemed to be in control of the operations of any Debtor or to be acting as a "controlling person,"

"responsible person" or "owner or operator" with respect to the operation or management of any

Debtor (as such term, or any similar terms, are used in the Internal Revenue Code, the United

States Comprehensive Environmental Response, Compensation and Liability Act as amended, or

any similar Federal or state statute), and (ii) shall not owe any fiduciary duty to Debtors, their

creditors or their estates.  Agents' and Lenders' relationship with any Debtor shall not constitute

or be deemed to constitute a joint venture or partnership with any Debtor.

30.    No Marshaling.  Prepetition Agent, Prepetition Senior Lenders,

Postpetition Agent and Postpetition Lenders shall not be subject to the doctrine of "marshaling"

and shall not be under any obligation to marshal any assets in favor of the Debtor or any other

party or against or in payment of any or all of the Prepetition Senior Indebtedness or Postpetition

Indebtedness.

31.    No Subrogation.  In no event shall any person or entity who pays (or

through the extension of credit to any Debtor, causes to be paid) any of the Postpetition

Indebtedness or any of the Prepetition Senior Indebtedness be subrogated, in whole or in part, to

any rights, remedies, claims, privileges, liens or security interests granted in favor of, or

conferred upon, Postpetition Agent, Postpetition Lender, Prepetition Agent or Prepetition Senior

CH\694096.6  New World Pasta - Final DIP Order

Lenders by the terms of the Postpetition Credit Agreement, the Prepetition Credit Agreement, the Interim Order, or this Order, until such time as all of the Postpetition Indebtedness and the Prepetition Senior Indebtedness is indefeasibly paid in full in cash.

32.    No Requirement to Accept Title to Collateral. Postpetition Agent and Postpetition Lenders shall not be obligated to accept title to any portion of the Postpetition Collateral in payment of any of the Postpetition Indebtedness, in lieu of payment in cash or cash equivalents, nor shall Postpetition Agent and Postpetition Lenders be obligated to accept payment in cash or cash equivalents that is encumbered by any interest of any person or entity other than Postpetition Agent and Postpetition Lenders.

33.    Successors and Assigns. The provisions of this Order, Postpetition Credit Agreement and other Postpetition Loan Documents shall be binding upon and inure to the benefit of the Agents (as applicable), each of the Prepetition Senior Lenders and Prepetition Junior Lenders (as applicable), JLL, and the Debtors and their respective successors and assigns, including any trustee or other fiduciary hereafter appointed as a legal representative of the Debtors or with respect to the property of the estates of the Debtors. Except as otherwise explicitly set forth in this Order, no third parties are intended to be or shall be deemed to be third party beneficiaries of this Order or the Postpetition Loan Documents.

34.    Sections 363(m) and 364(e); Effect of Modification or Appeal. Based on the findings set forth in the Interim Order and this Order, in consideration for the Postpetition Financing, and the use of the Cash Collateral and Prepetition Collateral, the Agents and Lenders are entitled to, and hereby are granted, the full rights, privileges and protections of sections 363(m) and 364(e) of the Bankruptcy Code with respect to the Postpetition Credit Agreement,

44

Amendment, Postpetition Indebtedness, Postpetition Liens, Super-Priority Claims, Adequate

Protection Senior Obligations, Adequate Protection Senior Liens and Adequate Protection Senior

Claims created or authorized by the Interim Order or this Order in the event that this Order or

any authorization contained herein is subsequently stayed, vacated, reversed, amended or

modified on appeal.  Any subsequent stay, modification, reversal, amendment or vacation of this

Order shall not affect the validity, priority, perfection and enforceability of any obligation of the

Debtors to the Agents and Lenders incurred pursuant to the Interim Order or this Order.

Notwithstanding any such stay, modification, reversal, amendment or vacation, all obligations

and other financial accommodations made pursuant to the Interim Order or this Order, all

Postpetition Indebtedness, uses of Cash Collateral and other Prepetition Collateral by the Debtors

pursuant hereto prior to the effective date of such stay, modification, reversal, amendment or

vacation, shall be governed in all respects by the original provisions hereof and the Agents and

Lenders shall be entitled to all the rights, privileges, remedies and benefits granted herein,

including without limitation, the Postpetition Liens, Super-Priority Claims, Adequate Protection

Senior Obligations, Adequate Protection Senior Liens and Adequate Protection Senior Claims.

     35.    Waiver of Discharge; Effect of Conversion or Dismissal.  The obligations

of the Debtors hereunder in respect of the Postpetition Indebtedness and Adequate Protection

Senior Obligations, unless otherwise indefeasibly paid in full in cash to the Agents or as

otherwise agreed upon by the Agents, shall not be discharged or effected or modified in any

manner or method by the entry of an order (a) confirming a plan of reorganization in any of the

Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors

having hereby waived such discharge or (b) converting or dismissing any or all of the Chapter 11

Cases.  If one or more of the Chapter 11 Cases is dismissed, converted, otherwise superseded or

45

substantively consolidated, the Agents and Lenders' rights and remedies under the Interim Order and this Order shall be and remain in full force and effect as if such case(s) had not been dismissed, converted or otherwise superseded or substantively consolidated. Furthermore, notwithstanding any such dismissal, conversion, supercission or consolidation, all of the terms and conditions of the Interim Order and this Order, including, without limitation, the liens and the priorities granted hereunder, shall remain in full force and effect.

36.   Survival.  Any liens, claims and other adequate protection granted to the Agents and the Lenders herein shall survive the Termination Date and shall continue until the indefeasible payment in full in cash of the Prepetition Senior Indebtedness and Postpetition Indebtedness.

37.   Foreign Subsidiary.  Notwithstanding anything herein to the contrary, with respect to the capital stock or other equity interests of any subsidiary of any Debtor that is a "controlled foreign corporation" within the meaning of Section 957 of the Internal Revenue Code of 1986 (each a "Foreign Subsidiary"), the Postpetition Collateral shall also include shares or other equity interests representing 100% of the voting power of all classes of the capital stock or other equity interests of each Foreign Subsidiary that are entitled to vote within the meaning of US Treasury Regulation 1.956-2.

38.   Prepetition Participation Agreement.  Notwithstanding anything in this Order to the contrary, the Prepetition Participation Agreements are in full force and effect and nothing herein shall alter, modify, amend or effect the terms and conditions of the Prepetition Participation Agreements, and nothing herein is or shall be deemed a waiver of any rights or remedies of the Prepetition Agent or Prepetition Senior Lenders thereunder. Nothing in this

Order shall be deemed to alter, amend, prejudice or waive the rights of the Prepetition Senior

Lenders or the Prepetition Junior Lenders with respect to the Subordinate Obligations under the

Prepetition Credit Agreement and the Prepetition Participation Agreements, provided, however,

that in the event a court of appropriate jurisdiction finds that the Prepetition Junior Lenders'

and/or JLL's agreements and waivers contained in the Prepetition Credit Agreement and/or the

Prepetition Participation Agreements are enforceable, the Prepetition Agent preserves its rights

to enforce such agreements and waivers retroactively to the Petition Date, including revoking

any protections previously granted to the Prepetition Junior Lenders and/or JLL (including,

without limitation, those protections contained in that certain Stipulation and Agreed Interim

Order entered by this Court on May 10, 2004, and any final order entered with respect thereto),

which protections upon such revocation shall be deemed void ab initio and of no force and

effect.

      39.   <u>No Adequate Protection to Prepetition Junior Lenders</u>.  Notwithstanding

anything in this Order to the contrary, no adequate protection is being, or shall be deemed to be,

provided to or for the benefit of the Prepetition Junior Lenders and/or JLL under the Interim

Order or this Order. $\left( Other\ than\ the\ \$1,000,000\ Carve-Out \right)$

      40.   <u>Professional Fees and Expenses</u>.  Notwithstanding anything in this Order

to the contrary, the Prepetition Agent and Prepetition Senior Lenders reserve their rights to seek

and require disgorgement of the fees and expenses paid to professionals retained under section

327, 328 and/or 1103 of the Bankruptcy Code or otherwise in these Chapter 11 Cases or

Successor Case to the extent the adequate protection provided herein to the Prepetition Agent

and Prepetition Senior Lenders is determined by the Court to be inadequate to protect such

parties' interests in the Cash Collateral and Prepetition Collateral existing as of the Petition Date,

including without limitation any diminution caused by the imposition of the Postpetition Agent's or Postpetition Lenders' priming liens. Any term or provision of this Order describing, granting or addressing the priority, funding and/or payment of the Carve-Out shall be subject to the terms and conditions of this paragraph 40.

41.    Notwithstanding anything in the Interim Order, this Order or Postpetition Credit Agreement to the contrary, it shall not be an Event of Default if the Creditors' Committee prevails on a motion, pleading, complaint or action against the Prepetition Junior Lenders and/or JLL or otherwise prevails on an objection to the Prepetition Junior Lenders' and/or JLL's claims and/or Liens or prevails on any similar pleading which seeks to affect the Prepetition Junior Lenders' and/or JLL's claims or Liens or the collateral of the Prepetition Junior Lenders and/or JLL.

42.    Objections Overruled or Withdrawn. All objections to the entry of this Order have been withdrawn or overruled.

43.    Order Controls If Conflict Exists.  To the extent any provisions in this Order conflict with any provisions of the Postpetition Credit Agreement, the provisions of this Order shall control to the extent of such conflict; provided however with respect to Section 1.23 of the Postpetition Credit Agreement which shall control to the extent of any conflict with this Order or the Interim Order.  To the extent any provisions in this Order conflict with any provisions of the Interim Order, the provisions of this Order shall control to the extent of such conflict.

44.    Order Effective Immediately.  This Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof.

IT IS SO ORDERED.

DATED this _9th_ day of July, 2004.

_____
UNITED STATES BANKRUPTCY JUDGE

49