UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :
In re                      :     Chapter 11
                                  :
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                                  :
                   Debtors.    :     (Jointly Administered)
                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

~~INTERIM~~**FINAL** ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), AND 364(e) AND FED. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) TO UTILIZE CASH COLLATERAL~~,~~ **AND** (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES ~~AND (III) SCHEDULING FINAL HEARING PURSUANT TO BANKRUPTCY RULES 4001(b) AND (c)~~

("~~INTERIM~~**FINAL** DIP FINANCING ORDER")

Upon the motion, dated October 8, 2005 (the "Motion"), of Delphi Corporation (the "Borrower") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for interim and final orders under sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking, among other things:

> (1)  authorization for the Borrower to obtain post petition financing
>
> (the "Financing"), and for all of the other Debtors (the "Guarantors") to
>
> guaranty the Borrower's obligations in connection with the Financing, up
>
> to the aggregate principal amount of $2,000,000,000 (the actual available

principal amount at any time being subject to those conditions set forth in

the DIP Documents (as defined below)), pursuant to a credit facility with

JPMorgan Chase Bank, N.A. ("JPMCB"), acting as Administrative Agent

(in such capacity, the "Agent") for itself and a syndicate of financial

institutions (together with JPMCB and including the fronting and issuing

banks for the letters of credit, the "DIP Lenders"), and Citicorp USA, Inc.

("CUSA") as Syndication Agent, to be arranged by J.P. Morgan Securities

Inc. and Citigroup Global Markets, Inc. (the "Joint Lead Arrangers");

(2)  authorization for the Debtors to execute and enter into the DIP

Documents and to perform such other and further acts as may be required in

connection with the DIP Documents;

(3)  the granting of adequate protection to the lenders (the

"Pre-Petition Secured Lenders") under that certain Third Amended and

Restated Credit Agreement, dated as of June 14, 2005 (as heretofore

amended, supplemented or otherwise modified, the "Pre-Petition Credit

Agreement"), among the Borrower, the several lenders from time to time

party thereto, and JPMCB, as administrative agent for the Pre-Petition

Secured Lenders (in such capacity, the "Pre-Petition Agent"), and in

connection with that certain Guarantee and Collateral Agreement, dated as

of June 14, 2005, by the Borrower and certain of its subsidiaries, in favor of

the Pre-Petition Agent (as heretofore amended, supplemented or otherwise

2

modified, the "Guarantee and Collateral Agreement" and, collectively with the Pre-Petition Credit Agreement, and the mortgages and all other documentation executed in connection therewith, the "Existing Agreements"), whose liens and security interests are being primed by the Financing;

(4)  authorization for the Debtors to use cash collateral (as such term is defined in the Bankruptcy Code) in which the Pre-Petition Secured Lenders have an interest, and the granting of adequate protection to the Pre-Petition Secured Lenders with respect to, *inter alia*, such use of their cash collateral and all use and diminution in the value of the Pre-Petition Collateral (as defined below);

(5)  approval of certain stipulations by the Debtors with respect to the Existing Agreements and the liens and security interests arising therefrom, that are "Extraordinary Provisions" (each an "Extraordinary Provision") under General Order No. M-274 of the United States Bankruptcy Court for the Southern District of New York (the "General Order");

(6)  permission to accelerate Borrowings and the termination of the Commitments under the DIP Credit Agreement upon (a) a Change of Control (as each such term is defined in the DIP Credit Agreement) or (b) the entry of an order or orders granting relief from the automatic stay

3

applicable under section 362 of the Bankruptcy Code to the holder or

holders of any security interest to permit foreclosure (or the granting of a

deed in lieu of foreclosure or the like) on any assets of the Borrower or any

of the Guarantors which have a value in excess of $20 million in the

aggregate, which are Extraordinary Provisions under the General Order;

(7)   subject and only effective upon the entry of a final order

granting such relief, the limitation of the Debtors~~'~~'= right to surcharge

against collateral pursuant to section 506(c) of the Bankruptcy Code, which

is an Extraordinary Provision under the General Order;

(8) pursuant to Bankruptcy Rule 4001, that an interim hearing (the

"Interim Hearing") on the Motion be held before this Court to consider

entry of the proposed interim order annexed to the Motion (the "Interim

Order") (a) authorizing the Borrower, on an interim basis, to forthwith

borrow or obtain letters of credit from the DIP Lenders under the DIP

Documents up to an aggregate principal or face amount not to exceed

$950,000,000 (subject to any limitations of borrowings under the DIP

Documents), (b) authorizing the Debtors~~'~~'= use of cash collateral, and (c)

granting the adequate protection described ~~herein~~**therein**; and

(9)   that this Court schedule a final hearing (the "Final Hearing") to

be held within 45 days of the entry of the Interim Order to consider entry of

a final order authorizing the balance of the borrowings and letter of credit

4

issuances under the DIP Documents on a final basis, as set forth in the

Motion and the DIP Documents filed with this Court (the "Final Order").

**The Interim Hearing having been held by this Court on October 11, 2005, at**

**which the Court issued and entered the Interim Order (a) authorizing the Borrower**

**to borrow or obtain letters of credit up to an aggregate principal or face amount of**

**$950,000,000 of the Financing from the DIP Lenders as provided for in the Interim**

**Order and (b) scheduling the Final Hearing to consider entry of an order authorizing**

**the balance of the Financing, all as set forth in the Motion, the Interim Order, this**

**Final Order and the loan documentation filed with this Court.**

**The Final Hearing having been held by this Court on October 27, 2005 at**

**10:00 a.m.**

Due and appropriate notice of the Motion, the relief requested therein**, the Interim**

**Hearing** and the ~~Interim~~**Final** Hearing having been served by the Debtors on the fifty

largest unsecured creditors of the Debtors, on the Agent, the DIP Lenders, the Prepetition

Agent, the Prepetition Secured Lenders, the indenture trustee for the Debtors~~'~~' senior

noteholders, known holders of prepetition liens against the Debtors~~'~~' property and the

United States Trustee for the Southern District of New York.

~~The Interim Hearing having been held by this Court on October 11, 2005 at 4:00~~

~~p.m.~~

**Objections to the Motion having been filed by Bank of America Leasing &**

**Capital, LLC, the Ad Hoc Committee of Prepetition Secured Lenders, Venture**

**Plastics, Inc., Gibbs Die Casting Corporation, DaimlerChrysler Corporation, Mercedes-Benz U.S. International, Inc., Autocam Corporation, Lorentson Manufacturing Company Southwest, Inc., Lorentson Manufacturing Company, Inc., Calsonic Kansei North America, Inc., Decatur Plastic Products, Inc., Pension Benefit Guaranty Corporation, Ford Motor Company, Freescale Semiconductor, Inc., Nissan North America, Inc., Fujikura America, Inc., Murata Electronics North America, Inc., Flextronics International Asia Pacific Ltd. and Flextronics Technology (M) Sdn. Bhd., Multek Flexible Circuits, Inc., Sheldahl de Mexico S.A. de C.V. and Northfield Acquisition Co., Omega Tool Corp., L&W Engineering Co., Southtec, LLC, DOTT Industries, Inc., ALPS Automotive, Inc., Pioneer Automotive Technologies, Inc., Lakeside Plastics Limited, Android Industries, Inc., Ai-Doraville, LLC, Ai-Genesee, LLC, Honda of America Manufacturing, Inc., OSRAM Opto Semiconductors Inc., Worthington Steel Company and Worthington Steel of Michigan, Inc., Hitachi Automotive Products, National Molding Corp., Security Plastics Division/NMC, LLC, Arneses Electronics Automotrices, S.A. de C.V., Cordaflex, S.A. de C.V., Neuman Aluminum Automotive, Inc., Neuman Aluminum Impact Extrusion, Inc., Magna International, Inc. and certain of its foreign and domestic affiliates, A. Schulman, Inc., the Creditors' Committee (as hereinafter defined), Textron Fastening Systems, Inc., ARC Automotive, Inc., XM Satellite Radio Inc., General Motors Corporation, Benteler Automotive Corp., Pentastar Aviation, LLC, Lear Corporation, American Axle & Manufacturing, Inc., Robert Bosch Corporation and Semiconductor Components Industries, LLC (collectively, the "Objections").[1]**

---

**[1]    Inclusive of objections filed prior to 11:00 p.m. on October 26, 2005.**

6

Upon the record made by the Debtors at the Interim Hearing **and the Final Hearing,** and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1. *Jurisdiction*. This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2. *Notice*. Under the circumstances, the notice given by the Debtors of the Motion and, the Interim Hearing**, and the Final Hearing** constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c).

3. *Debtors' Stipulations*. Without prejudice to the rights of any other party (but subject to the limitations thereon and the reservation of the Debtors' rights contained in paragraph 16 below), the Debtors, for themselves and not for their estates, admit, stipulate, and agree that:

(a)  (i) as of the filing of the Debtors' chapter 11 petitions (the "Petition Date"), (x) the Borrower was indebted and liable to the Pre-Petition Secured Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $2,488,329,620.59 in respect of loans made and in the aggregate face amount of approximately $91,453,431.26 in respect of letters of credit issued, in each case, by the Pre-Petition Secured Lenders pursuant to, and in accordance with the terms of, the Existing Agreements, plus, in each case, interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or

7

reimbursable under the Existing Agreements), charges and other obligations incurred in

connection therewith **including, without limitation, amounts owing under "Specified**

**Swap Agreements" (as defined in the Pre-Petition Credit Agreement),** as provided in

the Existing Agreements (collectively, the "Pre-Petition Debt") and (y) each Debtor other

than the Borrower was contingently liable to the Pre-Petition Secured Lenders in respect of

the Pre-Petition Debt owing by the Borrower pursuant to the Guarantee and Collateral

Agreement, (ii) the Pre-Petition Debt constitutes the legal, valid and binding obligation of

the Debtors, enforceable in accordance with its terms (other than in respect of the stay of

enforcement arising from section 362 of the Bankruptcy Code), (iii) no portion of the

Pre-Petition Debt is subject to avoidance, recharacterization, recovery or subordination

pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iv) the Debtors do

not have, and hereby forever release, any claims, counterclaims, causes of action, defenses

or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the

Pre-Petition Secured Lenders, the Pre-Petition Agent and their respective affiliates,

subsidiaries, agents, officers, directors, employees and attorneys;

(b)    the liens and security interests granted to the Pre-Petition Agent

pursuant to and in connection with the Existing Agreements (including, without limitation,

all security agreements, pledge agreements, mortgages, deeds of trust, control agreements

and other security documents executed by any of the Debtors in favor of the Pre-Petition

Agent, for its benefit and for the benefit of the Pre-Petition Secured Lenders) in connection

with the Existing Agreements, are (i) valid, binding, perfected, enforceable, first-priority

8

liens and security interests in the personal and real property constituting "Collateral" (as defined in the Existing Agreements) immediately prior to the Petition Date (the "Pre-Petition Collateral"), (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve Out (as defined below) to which the DIP Liens are subject and (C) valid, perfected and unavoidable liens permitted under the Existing Agreements to the extent such permitted liens are senior to or pari passu with the liens of the Pre-Petition Agent on the Pre-Petition Collateral; and

(c)    the aggregate value of the Pre-Petition Collateral substantially exceeds the aggregate amount of the Pre-Petition Debt.

4.    *Findings Regarding The Financing.*

(a)    Good cause has been shown for the entry of this ~~Interim~~**Final** Order.

(b)    The Debtors ~~have an immediate need to obtain~~**require the remainder of** the Financing and use Cash Collateral (as defined below) in order to permit, among other things, the orderly continuation of the operation of their businesses, to maintain business relationships with vendors, suppliers and customers, to make payroll, to make capital expenditures and to satisfy other working capital and operational needs.  The access of the Debtors to sufficient working capital and liquidity through the use of Cash Collateral, incurrence of new indebtedness for borrowed money and other financial accommodations is vital to the preservation and maintenance of the going concern values of the Debtors and to a successful reorganization of the Debtors.

9

(c)     The Debtors are unable to obtain financing on more favorable terms from sources other than the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Debtors are also unable to obtain secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code without the Debtors granting to the Agent and the DIP Lenders, subject to the Carve Out as provided for herein, the DIP Liens and the Superpriority Claims (as defined below) under the terms and conditions set forth in **the Interim Order,** this Order and in the DIP Documents.

(d)     The terms of the Financing and the use of Cash Collateral are fair and reasonable, reflect the Debtors'' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)     The Financing has been negotiated in good faith and at arm''s length between the Debtors, the Agent and the DIP Lenders, and all of the Debtors'' obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Documents, including without limitation, (i) all loans made to, and all letters of credit issued for the account of, the Debtors pursuant to the Revolving Credit, Term Loan and Guaranty Agreement substantially in the form attached as Exhibit A to the Motion (**, as amended by the Amendment No. 1 thereto dated as of October 27, 2005, a copy of which was filed with the Court prior to commencement of the Final Hearing (as so amended,** the "DIP Credit Agreement"), and (ii) any "Obligations" and all other "Secured

10

Obligations" (as each such term is defined in the DIP Credit Agreement), including any

hedging obligations of the Debtors permitted under the DIP Credit Agreement and any

Indebtedness (as defined in the DIP Credit Agreement) permitted by Section 6.03(viii)

thereof, in each case owing to JPMCB, any DIP Lender or any of their respective banking

affiliates (all of the foregoing in clauses (i) and (ii) collectively,  the "DIP Obligations"),

shall be deemed to have been extended by the Agent and the DIP Lenders and their

affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in

express reliance upon the protections offered by section 364(e) of the Bankruptcy Code,

and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the

event that this Order or any provision hereof is vacated, reversed or modified, on appeal or

otherwise.

   (f)  The Debtors have requested entry of this Order pursuant to

Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the relief sought by this

Order, the Debtors*'* estates will be immediately and irreparably harmed.  Consummation

of the Financing and the use of Cash Collateral in accordance with this Order and the DIP

Documents is therefore in the best interest of the Debtors*'* estates.

   5.  *Authorization Of The Financing And The DIP Documents.*

   (a)  The Debtors are hereby authorized to ~~enter into~~**be a party to** the

DIP Documents.  The Borrower is hereby authorized to borrow money and obtain letters of

credit pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to

guaranty such borrowings and the Borrower*'*s obligations with respect to such letters of

11

credit, up to an aggregate principal or face amount of $950,000,000**, inclusive of amounts authorized by the Interim Order, of $2,000,000,000** (plus interest, fees and other expenses provided for in the DIP Documents), subject to any limitations of borrowings under the DIP Documents, and in accordance with the terms of this Order and the DIP Documents, which shall be used solely for purposes permitted under the DIP Documents, including, without limitation, to provide working capital for the Borrower and the Guarantors and for other general corporate purposes and to pay interest, fees and expenses in accordance with this Order and the DIP Documents.  In addition to such loans and obligations, the Debtors are authorized to incur overdrafts and related liabilities arising from treasury, depository and cash management services or in connection with any automated clearing house fund transfers provided to or for the benefit of the Debtors by JPMCB, CUSA, any other DIP Lender or any of their respective affiliates; *provided, however*, that nothing herein shall require JPMCB or CUSA or any other party to incur overdrafts or to provide any such services or functions to the Debtors.

(b)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be reasonably required or necessary for the Debtors' performance of their obligations under the Financing, including, without limitation:

(i)        the execution, delivery and performance of the Loan

Documents (as defined in the DIP Credit Agreement) and any exhibits attached thereto,

including, without limitation, the DIP Credit Agreement, the Security and Pledge

Agreement (as defined in the DIP Credit Agreement) and the mortgages, if any,

contemplated thereby (collectively, and together with the letter agreements referred to in

clause (iii) below, the "DIP Documents"),

(ii)        the execution, delivery and performance of one or more

amendments to the DIP Credit Agreement for, among other things, the purpose of adding

additional financial institutions as DIP Lenders and reallocating the commitments for the

Financing among the DIP Lenders, in each case in such form as the Debtors, the Agent and

the DIP Lenders may agree (it being understood that no further approval of the Court shall

be required for amendments to the DIP Credit Agreement that do not shorten the maturity

of the extensions of credit thereunder or increase the commitments, the rate of interest or

the letter of credit fees payable thereunder**, amend the financial covenants in Section**

**6.04 therein to be more restrictive on the Debtors or amend the notice provisions of**

**Section 7.01 therein (i.e., notice of exercise of remedies after the occurrence of an**

**Event of Default**)).  Notwithstanding any other provision hereof, without further approval

of this Court, amendments to the DIP Documents may be made at any time **(x) **prior to the

~~Final Hearing, (A) as contemplated by the~~**Successful Syndication (as defined in the**

**Second Amended and Restated** Fee Letter dated ~~September 22,~~**October 27,** 2005 among

the Borrower, JPMCB and the Joint Lead Arrangers (**the "Fee Letter")), to the extent**

**contemplated by the Fee Letter (**permitting certain modifications to the DIP Credit Agreement necessary or advisable to ensure a successful syndication) ~~or~~**, and** (B**y**) as contemplated by the DIP Credit Agreement with respect to the Borrowing Base Amendment ~~(as defined in the DIP Credit Agreement),~~**.**

**In addition, Section 2.13 of the DIP Credit Agreement shall be amended to provide for the application of net cash proceeds from asset sales to be subject to mandatory prepayments and permanent reductions of commitments under the Facility or to be held in a cash collateral account maintained with the DIP Agent for the benefit of holders of the liens and claims granted hereunder in the manner set forth below.  Notwithstanding anything to the contrary in this Order or the DIP Credit Agreement, the amendments to Section 2.13 of the DIP Credit Agreement set forth in this paragraph 5(b)(iii), (x) are intended, in part, for the benefit of the Pre-Petition Agent and the Pre-Petition Secured Lenders, (y) may be enforced by the Pre-Petition Agent and the Pre-Petition Secured Lenders as though they were parties to the DIP Credit Agreement solely for such purposes and (z) shall survive and remain in full force and effect regardless of the permanent repayment in full of the DIP Obligations or the termination of the DIP Credit Agreement or any provision hereof.  This paragraph 5(b)(iii) shall not be amended, supplemented, waived or otherwise modified without the prior written consent of the Pre-Petition Agent. Specifically, Section 2.13 will be amended to (i) reorder subsection "(b)" to be subsection "(c)" and (ii) adding a new subsection (b) to read as follows:**

14

**"If on any date the Borrower or any Guarantor shall receive Net Cash Proceeds from (i) any Asset Sale or (ii) any Recovery Event (except to the extent that Net Cash Proceeds received in connection with such Recovery Event are applied within 180 days of receipt thereof to the replacement or repair of the assets giving rise thereto), and in each case, the aggregate amount of all Net Cash Proceeds from Asset Sales and Recovery Events received by the Borrower and the Guarantors from Asset Sales and Recovery Events occurring on and after the Closing Date exceeds $125,000,000 then (without duplication of any reduction to the Borrowing Base as a result of such Asset Sale or Recovery Event), an amount equal to 66-2/3% of such Net Cash Proceeds received on such date shall be promptly, and in any event, within 10 days after such date either (i) first, applied to the prepayment of the Tranche B Loans (with a corresponding permanent reduction of the Total Tranche B Commitments) and second, applied to the prepayment of the Tranche A Loans (with a corresponding permanent reduction of the Total Tranche A Commitments) or (ii) deposited into a cash collateral account maintained with the DIP Agent for the benefit of the holders of Liens and claims granted under the Final DIP Order in the order of priority set forth therein; _provided_ that the Borrower shall be permitted to request approval of the Bankruptcy Court to use such proceeds in accordance with Section 363 of the Bankruptcy Code so long as such uses are permitted under the DIP Credit Agreement and subject to the rights of parties in interest to contest such request."**

**The following related definitions will also be added to the DIP Credit Agreement:**

**"Asset Sale":  any Disposition of property or series of related Dispositions of property by the Borrower or any Guarantor (excluding any such Disposition permitted by clauses (i), (ii), (iii), (v), (vii) and (viii) of Section 6.10).**

**"Disposition":  with respect to any property, any sale, lease, sale and leaseback, assignment (other than for security or collection in the ordinary course of business), conveyance, transfer or other disposition thereof.  The terms "Dispose" and "Disposed of" shall have correlative meanings.**

**"Net Cash Proceeds":  in connection with any Asset Sale or any Recovery Event, the proceeds thereof in the form of cash and Permitted Investments, net of attorneys' fees, accountants' fees, investment banking fees, commissions, premiums, amounts required to**

15

**be applied to the repayment of Indebtedness secured by a Lien permitted hereunder on any asset that is the subject of such Asset Sale or Recovery Event (other than any Lien pursuant to the Security and Pledge Agreement) and other customary fees and expenses actually incurred in connection therewith and net of taxes paid or reasonably estimated to be payable as a result thereof (after taking into account any available tax credits or deductions and any tax sharing arrangements) and a reasonable reserve for purchase price adjustments and indemnification payments that could reasonably be expected to arise during the term of the Tranche A Loans and the Tranche B Loans;** _**provided**_ **that in the case of any Asset Sale or Recovery Event in respect of which the Net Cash Proceeds do not exceed $2,500,000, such Net Cash Proceeds shall not be deemed to constitute "Net Cash Proceeds" for purposes of Section 2.13 until the aggregate amount of all such excluded Net Cash Proceeds is at least $10,000,000.**

**"Recovery Event":  any settlement of or payment in respect of any property or casualty insurance claim or any condemnation proceeding relating to any asset of the Borrower or any Guarantor, in each case in an amount in excess of $5,000,000.**

(iii)    the non refundable payment to the Agent, the Joint Lead Arrangers or the DIP Lenders, as the case may be, of the fees referred to in the DIP Credit Agreement (and in the separate letter agreements between them in connection with the Financing) and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable fees and expenses of the professionals retained as provided for in the DIP Documents, and

(iv)    the performance of all other acts required under or in connection with the DIP Documents.

(c)    ~~Upon execution and delivery of the~~**The** DIP Documents~~, the DIP Documents shall~~ constitute valid and binding obligations of the Debtors, enforceable

16

against each Debtor party thereto in accordance with the terms of the DIP Documents.  No

obligation, payment, transfer or grant of security under the DIP Documents or this Order

shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under

any applicable law (including without limitation, under section 502(d) of the Bankruptcy

Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

    6.  *Superpriority Claims.*

    (a)  Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP

Obligations shall constitute allowed claims against the Debtors with priority over any and

all administrative expenses, diminution claims (including all Adequate Protection

Obligations**, Replacement Liens** and Junior Adequate Protection Liens (each as defined

below)) and all other claims against the Debtors, now existing or hereafter arising, of any

kind whatsoever, including, without limitation, all administrative expenses of the kind

specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all

administrative expenses or other claims arising under sections 105, 326, 328, 330, 331,

503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the

"Superpriority Claims"), whether or not such expenses or claims may become secured by a

judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall

be payable from and have recourse to all pre-petition and post-petition property of the

Debtors and all proceeds thereof, subject only to the payment of the Carve Out to the extent

specifically provided for herein.

(b)        For purposes hereof, the "Carve Out" means (i) all unpaid fees

required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United

States Trustee under section 1930(a) of title 28 of the United States Code, (ii) all fees and

expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code, (iii) after the

occurrence and during the continuance of an Event of Default (as defined in the DIP Credit

Agreement), all allowed and unpaid professional fees and disbursements incurred by the

Debtors and any statutory committees appointed in the Cases (each, a "Committee"), that

remain unpaid subsequent to the payment, pro rata with other nonpriority administrative

creditors, of such fees and expenses from available funds remaining in the Debtors' estates

for such creditors, in an aggregate amount not exceeding $35,000,000, which amount may

be used subject to the terms of this Order, including, without limitation, paragraph 17

hereof, and (iv) all allowed and unpaid professional fees and disbursements incurred or

accrued by the Debtors and any Committees at any time when no Event of Default is

continuing, that remain unpaid subsequent to the payment, pro rata with other nonpriority

administrative creditors, of such fees and expenses from available funds remaining in the

Debtors' estates for such creditors, in an aggregate amount not exceeding the sum of (x)

such unpaid professional fees and disbursements reflected on the most recent Borrowing

Base Certificate (as defined in the DIP Credit Agreement) delivered to the Agent prior to

any Event of Default that is then continuing and (y) such unpaid professional fees and

disbursements incurred or accrued after such Borrowing Base Certificate (but at a time

when no Event of Default is continuing) in an aggregate amount under this clause (y) not

18

exceeding $5,000,000 (and with amounts included in this clause (y), to be supported by back-up documentation in respect of the amounts and dates of incurrence of such fees and disbursements), in each of the foregoing clauses (i), (ii), (iii) and (iv), to the extent allowed by the Bankruptcy Court at any time; *provided*, *however*, that (A) nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (iii) and (iv) above and (B) following the Termination Date (as defined in the DIP Credit Agreement), cash or other amounts on deposit in the Letter of Credit Account (as defined in the DIP Credit Agreement), shall not be subject to the Carve Out.

7.      *DIP Liens*.

As security for the DIP Obligations, effective and perfected upon the date of ~~this~~**entry of the Interim** Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, the following security interests and liens are hereby granted to the Agent for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "Collateral"), subject, only in the event of the occurrence and during the continuance of an Event of Default, to the payment of the Carve Out (all such liens and security interests granted to the Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Order and the DIP Documents, the "DIP Liens"):

19

(a)     First Lien On Cash Balances And Unencumbered Property.

Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing,

enforceable, fully-perfected first priority senior security interest in and lien upon all

pre-petition and post-petition property of the Debtors, whether existing on the Petition

Date or thereafter acquired, to the extent not subject to valid, perfected, non-avoidable and

enforceable liens in existence as of the Petition Date or valid liens in existence as of the

Petition Date that are perfected subsequent to such date to the extent permitted by

~~Section~~**section** 546(b) of the Bankruptcy Code (collectively, "Unencumbered Property"),

including without limitation, all cash and cash collateral of the Debtors (whether

maintained with the Agent or otherwise) and any investment of such cash and cash

collateral, inventory, accounts receivable, other rights to payment whether arising before or

after the Petition Date, contracts, properties, plants, equipment, general intangibles,

documents, instruments, interests in leaseholds, real properties, patents, copyrights,

trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the

proceeds of all the foregoing, *provided*, *however*, that the Borrower and the Guarantors

shall not be required to pledge to the Agent in excess of 65% of the voting capital stock of

its direct Foreign Subsidiaries or any of the capital stock or interests of its indirect Foreign

Subsidiaries (if, in the good faith judgment of the Borrower, adverse tax consequences

would result to the Borrower).  Unencumbered Property shall exclude the Debtors' claims

and causes of action under sections 502(d), 544, 545, 547, 548, 549 and 550 of the

Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively,

20

"Avoidance Actions"), and any proceeds or property recovered, unencumbered or

otherwise the subject of successful Avoidance Actions.

      (b)      <u>Liens Priming Pre-Petition Secured Lenders<del>'</del>' Liens</u>.  Pursuant to

section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable,

fully-perfected first priority senior priming security interest in and lien upon all

pre-petition and post-petition property of the Debtors (including, without limitation, cash

collateral, inventory, accounts receivable, other rights to payment whether arising before or

after the Petition Date, contracts, properties, plants, equipment, general intangibles,

documents, instruments, interests in leaseholds, real properties, patents, copyrights,

trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the

proceeds of all the foregoing), whether now existing or hereafter acquired, that is subject to

the existing liens presently securing the Pre-Petition Debt (including in respect of issued

but undrawn letters of credit).  Such security interests and liens shall be senior in all

respects to the interests in such property of the Pre-Petition Secured Lenders arising from

current and future liens of the Pre-Petition Secured Lenders (including, without limitation,

adequate protection liens granted hereunder), and shall be subject and subordinate to (i) the

Carve Out (except as provided in paragraph 6 hereof), <del>and</del> (ii) any valid, perfected and

unavoidable interests of other parties arising out of liens, if any, on such property existing

immediately prior to the Petition Date, <del>or to</del><u>(iii)</u> any valid, perfected and unavoidable

interests in such property arising out of liens to which the liens of the Pre-Petition Secured

Lenders become subject subsequent to the Petition Date as permitted by section 546(b) of

the Bankruptcy Code **and (iv) statutory liens or security interests arising after the**

**Petition Date and permitted under the DIP Credit Agreement that by operation of**

**law would have priority over a previously perfected security interest**.

(c)    <u>Liens Junior To Certain Other Liens</u>.  Pursuant to section 364(c)(3)

of the Bankruptcy Code, ~~a~~ valid, binding, continuing, enforceable, fully-perfected security

interests in and liens upon all pre-petition and post-petition property of the Debtors (other

than the property described in clauses (a) or (b) of this paragraph 7, as to which the liens

and security interests in favor of the Agent will be as described in such clauses), whether

now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens

**and, as to Pre-Petition Payables and Setoffs (each as defined below)** in existence

immediately prior to the Petition Date or to valid and unavoidable liens in existence

immediately prior to the Petition Date that are perfected subsequent to the Petition Date as

permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in

favor of the Agent and the Lenders are junior to such valid, perfected and unavoidable liens

**and Setoffs**.

(d)    <u>Liens Senior To Certain Other Liens</u>.  The DIP Liens, the Adequate

Protection Liens ~~(as defined below)~~, **the Replacement Liens** and the Junior Adequate

Protection Liens **(each as defined below)** shall not be subject or subordinate to (i) any lien

or security interest that is avoided and preserved for the benefit of the Debtors and their

estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition

Date including, without limitation, any liens or security interests granted in favor of any

22

federal, state, municipal or other governmental unit, commission, board or court for any

liability of the Debtors other than with respect to any liens or security interests arising after

the Petition Date and permitted under the DIP Credit Agreement to be senior to the DIP

Liens.

        8.      *Protection Of DIP Lenders*'* Rights.*

      (a)     So long as there are any borrowings or letters of credit or other

amounts (other than contingent indemnity obligations as to which no claim has been

asserted when all other amounts have been paid and no letters or credit are outstanding)

outstanding, or the DIP Lenders have any Commitment (as defined in the DIP Credit

Agreement) under the DIP Credit Agreement, the Pre-Petition Agent, the Pre-Petition

Secured Lenders, **the holders of Replacement Liens** and holders of Junior Adequate

Protection Liens shall (i) take no action to foreclose upon or recover in connection with the

liens granted thereto pursuant to the Existing Agreements or this Order, or otherwise

exercise remedies against any Collateral, except to the extent authorized by an order of this

Court and (ii) be deemed to have consented to any release of Collateral authorized under

the DIP Documents**, *provided* that the Pre-Petition Agent and any Pre-Petition**

**Secured Lender may appear and be heard as a party in interest in connection with**

**any proceeding relating to the sale, transfer or other disposition of any Collateral** and

(iii) not file any further financing statements, trademark filings, copyright filings,

mortgages, notices of lien or similar instruments, or otherwise take any action to perfect

their security interests in the Collateral unless solely as to this clause (iii), the DIP Lenders

file financing statements or other documents to perfect the liens granted pursuant to this

Order, or as may be required by applicable state law to continue the perfection of valid and

unavoidable liens or security interests as of the ~~Filing Date~~**Petition Date.**

**Notwithstanding the foregoing, the Pre-Petition Secured Lenders shall be permitted**

**to file pleadings with respect to any proposed sale, transfer or other disposition of the**

**Collateral by the Debtors outside the ordinary course of business so long as such**

**pleadings do not contravene the provisions of this paragraph 8 and do not otherwise**

**interfere with the exercise of any right or remedy by the Agent or the DIP Lenders**.

Nothing herein shall be read to permit the Pre-Petition Agent, the Pre-Petition Secured

Lenders, or the holders of **Replacement Liens or** Junior Adequate Protection Liens to take

any action in violation of the Bankruptcy Code or other applicable law**.  This paragraph**

**8(a) defines the relative rights of the DIP Agent and the DIP Lenders, on the one**

**hand, and the Pre-Petition Agent and the Pre-Petition Secured Lenders, on the other,**

**and is not intended to confer any rights on the Debtors**.

       (b)     The automatic stay provisions of section 362 of the Bankruptcy

Code are vacated and modified to the extent necessary to permit the Agent and the DIP

Lenders to exercise, (i) immediately upon the occurrence of an Event of Default, all rights

and remedies under the DIP Documents other than those rights and remedies against the

Collateral as provided in clause (ii) below and (ii) upon the occurrence and during the

continuance of an Event of Default and the giving of five business days prior written notice

to the extent provided for in the DIP Credit Agreement, all rights and remedies against the

Collateral provided for in the DIP Documents (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the Agent or any DIP Lender).  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors, the Pre-Petition Agent, the Pre-Petition Secured Lenders, and the holders of **Replacement Liens or** Junior Adequate Protection Liens hereby waive **in such capacities, but not in capacities as holders of general unsecured claims,** their right to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the rights and remedies of the Agent or the DIP Lenders set forth in this Order or the DIP Documents.  In no event shall the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, or the holders of **Replacement Liens or** Junior Adequate Protection Liens be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

9.      *Limitation On Charging Expenses Against Collateral*.  ~~Subject to and effective only upon entry of a final order granting such relief, except~~**Except** to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Agent or the Pre-Petition Agent, as the case may be, and no such

consent shall be implied from any other action, inaction, or acquiescence by the Agent, the

DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders.

10.    *The Cash Collateral*.  To the extent any funds of any Debtor party to the

Existing Agreements (other than funds in accounts subject to lock-box arrangements under

the Debtors'  receivables financing) were on deposit with the Pre-Petition Secured Lenders

as of the Petition Date, including, without limitation, all such funds deposited in, or

credited to, an account of any Debtor party to the Existing Agreements with any

Pre-Petition Secured Lender immediately prior to the filing of the Debtors'  bankruptcy

petitions (the "Petition Time") (regardless of whether, as of the Petition Time, such funds

had been collected or made available for withdrawal by any such Debtor), such funds (the

"Deposited Funds") are subject to rights of setoff.  By virtue of such setoff rights, the

Deposited Funds are subject to a lien in favor of such Pre-Petition Secured Lenders

pursuant to sections 506(a) and 553 of the Bankruptcy Code.  The Pre-Petition Secured

Lenders are obligated, to the extent provided in the Existing Agreements, to share the

benefit of such liens and setoff rights with the other Pre-Petition Secured Lenders party to

such Existing Agreements.  The cash of the Debtors party to the Existing Agreements,

including, without limitation, the Deposited Funds or any other funds on deposit at the

Pre-Petition Secured Lenders as of the Petition Date, and any proceeds generated by the

collection of accounts receivable, sale of inventory or other disposition of the Pre-Petition

Collateral are cash collateral of the Pre-Petition Secured Lenders within the meaning of

section 363(a) of the Bankruptcy Code, and all such "cash collateral" is referred to herein

26

as "Cash Collateral."  The Pre-Petition Secured Lenders have objected to the use by the

Debtors of the Pre-Petition Collateral, including ~~the~~ Cash Collateral, except on the terms of

this Order.

11.    *Use Of Cash Collateral.*  The Debtors are hereby authorized to use all Cash

Collateral of the Pre-Petition Secured Lenders **and of the holders of Replacement Liens**

**or Junior Adequate Protection Liens**, and the Pre-Petition Secured Lenders **and the**

**holders of Replacement Liens or Adequate Protection Liens** are directed promptly to

turn over to the Debtors all Cash Collateral received or held by them, *provided* that the

Pre-Petition Secured Lenders **and the holders of Replacement Liens or Adequate**

**Protection Liens** are granted adequate protection as hereinafter set forth.  The Debtors'

right to use Cash Collateral shall terminate automatically upon the occurrence of the

Termination Date or the voluntary reduction by the Borrower of the Total Commitments to

zero (as each such term is defined in the DIP Credit Agreement).

12.    *Adequate Protection.*  The Pre-Petition Secured Lenders are entitled,

pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate

protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, for

and equal in amount to the aggregate diminution in value of the Pre-Petition Secured

Lenders' Pre-Petition Collateral, including, without limitation, any such diminution

resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash

Collateral and any other Pre-Petition Collateral, the priming of the Pre-Petition Agent's

security interests and liens in the Pre-Petition Collateral by the Agent and the DIP Lenders

27

pursuant to the DIP Documents and this Order, and the imposition of the automatic stay

pursuant to section 362 of the Bankruptcy Code.  As adequate protection, the Pre-Petition

Agent and the Pre-Petition Secured Lenders are hereby granted the following (collectively,

the "Adequate Protection Obligations"):

(a)    Adequate Protection Liens.  As security for the payment of the

Adequate Protection Obligations, the Pre-Petition Agent (for itself and for the benefit of

the Pre-Petition Secured Lenders) is hereby granted (effective and perfected ~~upon~~**as of** the

~~date of this Order~~**Petition Date** and without the necessity of the execution by the Debtors

of mortgages, security agreements, pledge agreements, financing statements or other

agreements) a replacement security interest in and lien upon all the Collateral, subject and

subordinate only to (i) the security interests and liens granted to the Agent for the benefit of

the DIP Lenders in this Order and pursuant to the DIP Documents and any liens on the

Collateral to which such liens so granted to the Agent are junior**, (ii) the Replacement**

**Lien (as hereinafter defined)** and ~~(ii)~~**(iii)** the Carve Out**_, provided_ that the security**

**interest in and lien granted to the Pre-Petition Agent pursuant to this paragraph 12(a)**

**upon Collateral that is not (x) Pre-Petition Collateral or (y) Collateral that would**

**have constituted Pre-Petition Collateral but for the operation of section 552(a) of the**

**Bankruptcy Code as to which, without further action, the Pre-Petition Agent would**

**have had a valid and perfected security interest or lien shall be _pari passu_ with the**

**Junior Adequate Protection Liens granted to any Setoff Claimant in such Collateral**

**pursuant to this Order** (the "Adequate Protection Liens");

(b)      Section 507(b) Claim.  The Pre-Petition Agent and the Pre-Petition

Secured Lenders are hereby granted, subject to the payment of the Carve Out, a

superpriority claim as provided for in section 507(b) of the Bankruptcy Code **equal in**

**priority to the priority granted to the Setoff Claimants in paragraph 18(b) below**,

limited in amount to the aggregate diminution in value of the Pre-Petition Secured

Lenders'' Pre-Petition Collateral, including, without limitation, any such diminution

resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash

Collateral and any other Pre-Petition Collateral, the priming of the Pre-Petition Agent''s

security interests and liens in the Pre-Petition Collateral by the Agent and the DIP Lenders

pursuant to the DIP Documents and this Order, and the imposition of the automatic stay

pursuant to section 362 of the Bankruptcy Code, immediately junior to the claims under

section 364(c)(1) of the Bankruptcy Code held by the Agent and the DIP Lenders *provided*,

*however*, that the Pre-Petition Agent and the Pre-Petition Secured Lenders shall not receive

or retain any payments, property or other amounts in respect of the superpriority claims

under section 507(b) of the Bankruptcy Code granted hereunder or under the Existing

Agreements unless and until the DIP Obligations have indefeasibly been paid in cash in

full;

(c)      Interest, Fees, And Expenses.  The Pre-Petition Agent shall receive

from the Debtors (i) immediate cash payment of all accrued and unpaid interest on the

Pre-Petition Debt and letter of credit fees at the **non-default contract** rates provided for in

the Existing Agreements, and all other accrued and unpaid fees and disbursements payable

to or for the benefit of the Pre-Petition Agent under the Existing Agreements and incurred prior to the Petition Date including, but not limited to, **reasonable** fees owed and amounts to be paid or reimbursed for counsel, financial and other consultants for the Pre-Petition Agent pursuant to Section 10.6 of the Pre-Petition Credit Agreement, (ii) current cash payments of all fees and expenses payable to the Pre-Petition Agent under the Existing Agreements, including, but not limited to, the reasonable fees and disbursements of counsel, financial and other consultants for the Pre-Petition Agent,  (iii) on the first business day of each month, all accrued but unpaid interest on the Pre-Petition Debt, and letter of credit and other fees at the non-default contract rate applicable under the Existing Agreements, *provided* that, without prejudice to the rights of the Debtors or any other party to contest such assertion, the Pre-Petition Secured Lenders reserve their rights to assert claims for the payment of additional interest calculated at any other applicable rate of interest (including, without limitation, default rates), or on any other basis provided for in the Existing Agreements, and for the payment of any other amounts provided for in the Existing Agreements**,** and ~~(iv)~~**(iv)**  current cash payment of all reasonable out-of-pocket expenses of the members of any steering committee of Pre-Petition Secured Lenders, in their capacity as such~~.~~ **(but excluding any fees and disbursements of counsel, financial or other consultants to such steering committee).  The Debtors shall pay the fees and expenses provided for in the preceding clause (ii) or clause (iv) only after reasonably detailed invoices for such fees and expenses shall have been submitted to the Debtors and counsel to the official committee of unsecured creditors (the "Creditors'**

30

**Committee").  The rights of all parties in interest with respect to the application of such payments in clauses (ii), (iii) and (iv) above shall be preserved in accordance with Paragraph 16 below.**

(d)    Access To Collateral.  The Pre-Petition Agent (for the benefit of the Pre-Petition Secured Lenders) and their experts and advisors shall be given reasonable access for purposes of monitoring the business of the Debtors and the value of the Collateral; and

(e)    Information.  The Debtors shall provide the Pre-Petition Agent **and the Creditors' Committee** with any written financial information or periodic reporting that is provided to, or required to be provided to, the Agent or the DIP Lenders**; *provided, however,* that to the extent such information is provided to the Creditors' Committee, the Debtors shall be entitled to restrict access to such information solely to professionals retained by such committee.  The Debtors shall also provide the Agent and the Pre-Petition Agent with information related to payments made to and setoffs taken by the Debtors' suppliers in respect of any pre-petition claims to the extent such information is provided to the Creditors' Committee or is otherwise required to be supplied pursuant to the DIP Documents**.

**(f)    Pre-Petition Letters of Credit.  Subject to the terms and conditions of the DIP Documents, letters of credit issued and outstanding under the Pre-Petition Credit Agreement shall be replaced by letters of credit issued under the DIP Documents at the earlier of the stated expiry of such letters of credit and the next**

**notice date for non-renewal of such letters of credit.  The Pre-Petition Agent, in**

**consultation with and after prior notice to the Debtors, is authorized to provide**

**notice of non-renewal to letter of credit beneficiaries to prevent the automatic**

**renewal of "evergreen" Letters of Credit.**

13.     *Reservation of Rights of Pre-Petition Secured Lenders*.  Under the

circumstances and given that the above described adequate protection is consistent with the

Bankruptcy Code, the Court finds that the adequate protection provided herein is

reasonable and sufficient to protect the interests of the Pre-Petition Secured Lenders.

Except as expressly provided herein, nothing contained in this Order (including, without

limitation, the authorization of the use of any Cash Collateral and the granting of any

**Replacement Liens or** Junior Adequate Protection Liens) shall impair or modify any

rights, claims or defenses available in law or equity, including, without limitation, any right

to propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11

plan or plans of reorganization, to the Pre-Petition Agent, any Pre-Petition Secured Lender,

the Agent or any DIP Lender including, without limitation, rights of a party to a swap

agreement, securities contract, commodity contract, forward contract or repurchase

agreement with a Debtor to assert rights of setoff or other rights with respect thereto as

permitted by law (or the right of a Debtor to contest such assertion).  **The Pre-Petition**

**Agent and the Pre-Petition Secured Lenders shall have the right to request further or**

**different adequate protection under sections 361, 363(e) and 364(d)(2) of the**

**Bankruptcy Code following the occurrence of any event after the Petition Date, that**

**could reasonably be expected to have a material adverse effect on (A) the Debtors'
ability to repay or refinance the Pre-Petition Obligations in full in cash under a
Chapter 11 plan of reorganization or (B) the Debtors' ability to satisfy the Adequate
Protection Obligations.  The Debtors or any other party in interest may object to any
such request, and with respect to such objections nothing herein shall operate to shift
any applicable burdens of proof from those set forth in the Bankruptcy Code.**

14.    *Perfection Of DIP Liens And Adequate Protection Liens.*

(a)    Subject to the provisions of paragraph 8(a) above, the Agent and the
Pre-Petition Agent are hereby authorized, but not required, to file or record financing
statements, trademark filings, copyright filings, mortgages, notices of lien or similar
instruments in any jurisdiction or take any other action in order to validate and perfect the
liens and security interests granted to them hereunder.  Whether or not the Agent on behalf
of the DIP Lenders or the Pre-Petition Agent on behalf of the Pre-Petition Secured Lenders
shall, in their sole discretion, choose to file such financing statements, trademark filings,
copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm
perfection of the liens and security interests granted to them hereunder, such liens and
security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable
and not subject to challenge dispute or subordination, at the time and as of the date of entry
of this Order.  Upon the request of the Agent, each of the Pre-Petition Agent and
Pre-Petition Secured Lenders, without any further consent of any party, is authorized to
take, execute and deliver such instruments (in each case without representation or warranty

33

of any kind) to enable the Agent to further validate, perfect, preserve and enforce DIP

Liens.

(b)      A certified copy of this Order may, in the discretion of the Agent, be

filed with or recorded in filing or recording offices in addition to or in lieu of such

financing statements, mortgages, notices of lien or similar instruments, and all filing

offices are hereby authorized to accept such certified copy of this Order for filing and

recording.

(c)      Any provision of any lease or other license, contract or other

agreement that requires (i) the consent or approval of one or more landlords or other parties

or (ii) the payment of any fees or obligations to any governmental entity, in order for any

Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or

the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to

be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such

provision shall have no force and effect with respect to the transactions granting

post-petition liens, in such leasehold interest or the proceeds of any assignment and/or sale

thereof by any Debtor, in favor of the DIP Lenders in accordance with the terms of the DIP

Credit Agreement or this Order.

15.      *Preservation Of Rights Granted Under The Order.*

(a)      No claim or lien having a priority superior to or *pari passu* with

those granted by this Order to the Agent and the DIP Lenders or to the Pre-Petition Agent

~~and,~~ the Pre-Petition Secured Lenders **and the Setoff Claimants**, respectively, shall be

34

granted or allowed while any portion of the Financing (or any refinancing thereof) or the

Commitments thereunder or the DIP Obligations or the Adequate Protection Obligations

remain outstanding, and the DIP Liens**, the Adequate Protection Liens, the**

**Replacement Liens** and the **Junior** Adequate Protection Liens shall not be (i) subject or

junior to any lien or security interest that is avoided and preserved for the benefit of the

Debtors~'~ estates under section 551 of the Bankruptcy Code or (ii) subordinated to or made

pari passu with any other lien or security interest, whether under section 364(d) of the

Bankruptcy Code or otherwise~.~ **(other than as specifically provided for in this Order).**

**Nothing in this paragraph 15(a) shall limit (x) the rights of the Debtors to refinance**

**the Financing in compliance with the DIP Credit Agreement or (y) the rights of any**

**party in interest with respect to any such refinancing.**

        (b)      Unless all DIP Obligations shall have been paid in full (and, with

respect to outstanding letters of credit issued pursuant to the DIP Credit Agreement, cash

collateralized in accordance with the provisions of the DIP Credit Agreement) ~and the~

~Adequate Protection Obligations shall have been paid in full~, the Debtors shall not seek,

and it shall constitute an Event of Default and a termination of the right to use Cash

Collateral if any of the Debtors seek, or if there is entered, (i) any modifications or

extensions of this Order without the prior written consent of the Agent, and no such

consent shall be implied by any other action, inaction or acquiescence by the Agent, or (ii)

an order dismissing any of the Cases.  If an order dismissing any of the Cases under section

1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide

(in accordance with sections 105 and 349 of the Bankruptcy Code) that ~~(i)~~**(x)** the

Superpriority Claims, priming liens, security interests and replacement security interests

granted to the Agent and, as applicable, the Pre-Petition Agent **or the Setoff Claimants**

pursuant to this Order shall continue in full force and effect and shall maintain their

priorities as provided in this Order until all DIP Obligations and Adequate Protection

Obligations shall have been paid and satisfied in full (and that such Superpriority Claims,

priming liens and replacement security interests, shall, notwithstanding such dismissal,

remain binding on all parties in interest) and ~~(ii)~~**(y)** this Court shall retain jurisdiction,

notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security

interests referred to in (i**x**) above.

(c)    If any or all of the provisions of this Order are hereafter reversed,

modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect

(i) the validity of any DIP Obligations or Adequate Protection Obligations incurred prior to

the actual receipt of written notice by the Agent or Pre-Petition Agent, as applicable, of the

effective date of such reversal, stay, modification or vacation or (ii) the validity or

enforceability of any lien or priority authorized or created hereby or pursuant to the DIP

Credit Agreement with respect to any DIP Obligations or Adequate Protection Obligations.

Notwithstanding any such reversal, stay, modification or vacation, any use of Cash

Collateral, or DIP Obligations or Adequate Protection Obligations incurred by the Debtors

to the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders

prior to the actual receipt of written notice by the Agent and Pre-Petition Agent of the

effective date of such reversal, stay, modification or vacation shall be governed in all

respects by the original provisions of this Order, and the Agent, DIP Lenders, Pre-Petition

Agent and Pre-Petition Secured Lenders shall be entitled to all the rights, remedies,

privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and

pursuant to the DIP Documents with respect to all uses of Cash Collateral, DIP Obligations

and Adequate Protection Obligations.

   (d)  Except as expressly provided in this Order or in the DIP Documents,

the DIP Liens, the Superpriority Claims and all other rights and remedies of the Agent and

the DIP Lenders granted by the provisions of this Order and the DIP Documents shall

survive, and shall not be modified, impaired or discharged by (i) the entry of an order

converting any of the Cases to a case under chapter 7, dismissing any of the Cases,

terminating the joint administration of these Cases or by any other act or omission, or (ii)

the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant

to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to

any remaining DIP Obligations.  The terms and provisions of this Order and the DIP

Documents shall continue in these Cases, in any successor cases if these Cases cease to be

jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and

the DIP Liens, the Superpriority Claims and all other rights and remedies of the Agent and

the DIP Lenders granted by the provisions of this Order and the DIP Documents shall

continue in full force and effect until the DIP Obligations are indefeasibly paid in full.

37

16.    *Effect Of Stipulations On Third Parties*.  Subject to the reservation of rights

set forth in this paragraph 16, the stipulations and admissions contained in paragraphs 3

and 10 of this Order shall be binding upon the Debtors in all circumstances.  The

stipulations and admissions contained in paragraphs 3 and 10 of this Order shall be binding

upon all other parties in interest, including, without limitation, ~~any~~**the Creditors'**

Committee, unless (a) a party-in-interest has timely filed an adversary proceeding or

contested matter**, or commenced litigation for authorization to commence such**

**adversary proceeding or contested matter ("Authorization Motion"),** (subject to the

limitations contained herein, including, *inter alia*, in paragraph 17) by no later than ~~the date~~

~~that is 90 days after the initial selection of counsel by the Official Committee of Unsecured~~

~~Creditors (the "Creditors' Committee") in the Cases~~**January 16, 2006** (or such later date (x)

as has been agreed to, in writing, by the Pre-Petition Agent in its sole discretion or (y) as

has been ordered by the Court) (i) challenging the validity, enforceability, priority or

extent of the Pre-Petition Debt or the Pre-Petition Agent~~'~~**'**s or the Pre-Petition Secured

Lenders~~'~~**'** liens on the Pre-Petition Collateral ~~or (ii)~~**, (ii) seeking a determination that the**

**Pre-Petition Debt was under-secured as of the Petition Date, or (iii)** otherwise

asserting or prosecuting any Avoidance Actions or any other any claims, counterclaims or

causes of action , objections, contests or defenses (collectively, "Claims and Defenses")

against the Pre-Petition Agent or any of the Pre-Petition Secured Lenders or their

respective affiliates, subsidiaries, directors, officers, representatives, attorneys or advisors

in connection with matters related to the Existing Agreements, the Pre-Petition Debt, or the

38

Pre-Petition Collateral, and (b) there is a final order in favor of the plaintiff sustaining any such challenge or claim in any such timely filed adversary proceeding or contested matter, *provided* that as to the Debtors, all such Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition Date other than any such Claims and Defenses as they relate to the **appropriateness of any interest rate charged or claimed by the Pre-Petition Secured Lenders, including the** allowance of any claim for default interest under Section 2.14 of the Pre-Petition Credit Agreement or **the allowance of any claim** for any prepayment premium under Sections 2.10 or 2.11 of the Pre-Petition Credit Agreement. Subject in each case to the reservation of the Debtors' rights **set forth above** to contest the allowance of any claim for default interest on the Pre-Petition Debt or any prepayment premium, if no such adversary proceeding or contested matter is timely filed **(it being understood that such adversary proceeding or contested matter is commenced promptly following a disposition in favor of a movant of an Authorization Motion)**, (x) the Pre-Petition Debt and all related obligations of the Debtors (the "Pre-Petition Obligations") shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 cases, (y) the Pre-Petition Agent's and the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and perfected, not subject to defense, counterclaim, recharacterization, subordination or avoidance and (z) the Pre-Petition Obligations, the Pre-Petition Agent's and the Pre-Petition Secured Lenders' liens on the Pre-Petition

39

Collateral and the Pre-Petition Agent and the Pre-Petition Secured Lenders shall not be

subject to any other or further challenge by any party-in-interest, and any such

party-in-interest shall be enjoined from, seeking to exercise the rights of the Debtors**''**

estates, including, without limitation, any successor thereto (including, without limitation,

any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the

Debtors).  If any such adversary proceeding or contested matter is timely filed **(it being**

**understood that such adversary proceeding or contested matter is commenced**

**promptly following a disposition in favor of a movant of an Authorization Motion**),

the stipulations and admissions contained in paragraphs 3  and 10 of this Order shall

nonetheless remain binding and preclusive (as provided in the second sentence of this

paragraph) on any official committee (including the Creditors**''** Committee) and on any

other person or entity, except to the extent that such findings and admissions were

expressly challenged in such adversary proceeding or contested matter **(it being**

**understood that such adversary proceeding or contested matter is commenced**

**promptly following a disposition in favor of a movant of an Authorization Motion**).

Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code),

including ~~any~~**the Creditors'** Committee, standing or authority to pursue any cause of

action belonging to the Debtors or their estates, including, without limitation, Claims and

Defenses with respect to the Existing Agreements or the Pre-Petition Obligations.

      17.    *Limitation On Use Of Financing Proceeds And Collateral.*

Notwithstanding anything herein or in any other order by this Court to the contrary, no

borrowings, letters of credit, Cash Collateral, Pre-Petition Collateral, Collateral or the

Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection,

priority, extent or enforceability of any amount due under the DIP Documents or the

Existing Agreements, or the liens or claims granted under this Order, the DIP Documents

or the Existing Agreements, (b) assert any Claims and Defenses or any other causes of

action against the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition

Secured Lenders or their respective agents, affiliates, representatives, attorneys or advisors,

(c) prevent, hinder or otherwise delay the Agent's or the Pre-Petition Agent's assertion,

enforcement or realization on the Cash Collateral or the Collateral in accordance with the

DIP Documents, the Existing Agreements or this Order, (d) seek to modify any of the

rights granted to the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition

Secured Lenders hereunder or under the DIP Documents or the Existing Agreements, in

each of the foregoing cases without such parties' prior written consent or (e) pay any

amount on account of any claims arising prior to the Petition Date unless such payments

are (i) approved by an Order of this Court and (ii) in accordance with the DIP Credit

Agreement or otherwise approved by the Agent in its sole discretion; *provided* that,

notwithstanding anything to the contrary herein, ~~any statutory committee appointed by the~~

~~U.S. Trustee~~**the Creditors' Committee** shall be limited to $~~250,000, in the aggregate for~~

~~all such committees,~~**250,000** to perform the investigations contemplated hereby **and no**

**other official committee shall be authorized to perform such investigations**.

18.    ~~*Junior Adequate Protection Liens.*  To the extent any person has a valid,~~

~~perfected, enforceable, and non-avoidable right to set off in respect of its pre-petition~~

~~payables as of the Petition Date, such person shall be granted a replacement lien (a "Junior~~

~~Adequate Protection Lien") under section 361(2) of the Bankruptcy Code in all of the~~

~~Debtors' right, title, and interest in, to and under the Collateral securing the Debtors'~~

~~Obligations under the DIP Credit Agreement, subject and subordinate (i) to the Carve Out,~~

~~(ii) to any liens and security interests granted hereunder or under any DIP Document to or~~

~~for the benefit of the Agent and the DIP Lenders and (iii) to the Adequate Protection Liens~~

~~granted to the Pre-Petition Agent and the Pre-Petition Secured Lenders.  Prior to the entry~~

~~of the Final Order, nothing contained in this Order shall affect the rights of  such person to~~

~~request further or different adequate protection under section 361 of the Bankruptcy Code;~~

~~provided,~~ <u>however,</u> ~~that the Debtors or any other party may contest any such request,~~

~~including the continuation of the adequate protection liens granted hereby to such~~

~~person.~~<u>***Setoff, Replacement Liens and Junior Adequate Protection Liens***</u>**.  To the extent**

**that a customer or supplier of the Debtors that has an allowable setoff claim under**

**section 506 or 553 of the Bankruptcy Code in respect of its payables owed to any**

**Debtor as of the Petition Date ("Pre-Petition Payables") or a valid right of**

**recoupment that arose prior to the Petition Date (such setoff claim or right of**

**recoupment, "Setoff"), such customer or supplier (a "Setoff Claimant") is hereby**

**provided with certain rights and adequate protection as described below.  For the**

**avoidance of doubt, nothing herein shall be construed to be an admission or**

42

**acknowledgement, or an increase or decrease in the monetary amount of the pre-petition setoff rights of any person, under the Bankruptcy Code, applicable non-bankruptcy law or otherwise.**

**(a)     Exercise of Set Off.  (1)  Any exercise of a Setoff Right (as defined below) in accordance with this Order shall not be stayed by section 362 of the Bankruptcy Code.  Any exercise of any right of Setoff other than in accordance with this Order is subject to section 362 of the Bankruptcy Code.  Nothing in this Order shall prevent any holder of a right of Setoff from seeking relief from the automatic stay with respect to such Setoff, or prevent the Debtors or any party in interest from objecting or being heard with respect to any such request.  A Setoff Claimant shall, in accordance with this paragraph, be entitled to exercise its Setoff that arose in the ordinary course of business for any claims or recoupment defenses arising from or related to the claims for prepetition warranty and/or product recall claims, customer adjustments, customer rebates and allowances, overpricing claims, claims for short shipments and damaged goods, customer/supplier netting and other similar claims arising in the ordinary course of business of the relevant parties other than any such claims or recoupment defenses arising as a result of the filing of the cases (a "Setoff Right").  A Setoff Right shall not include any claims or recoupment defenses arising from or related to employee or employee benefit matters, retiree benefit or pension matters, including, without limitation, any related indemnities or guarantees, the rejection of executory contracts, or consequential or punitive damages.  The**

**determination as to whether a Setoff Claimant may exercise a "Setoff Right" will be made solely by (i) the agreement of the Setoff Claimant, the Creditors' Committee and the Debtors, (ii) pursuant to the procedures hereinafter set forth or (iii) order of the Court.**

**(2)    Any Setoff Claimant seeking to exercise a Setoff Right against payables during any month (whether against Pre-Petition Payables or post-petition payables) shall submit to the Debtors and the Creditors' Committee (with a copy to the Agent) a written request to exercise such Setoff Right, the basis for such Setoff Right and reasonably detailed documentation supporting such Setoff Right.  If the Setoff Claimant, the Creditors' Committee and the Debtors fail to agree in writing that any amount is included in a Setoff Right within 10 Business Days after submission of such information to the Debtors and the Creditors' Committee (the "Agreement Deadline"), the Debtors and such Setoff Claimant shall (unless all such parties agree to extend such 10 Business Day period) seek resolution of such matter through a mediator agreed to by the Debtors and such Setoff Claimant or appointed by this Court.  Such mediation shall end not later than 30 days after the Agreement Deadline unless such period is extended by agreement of the Debtors and such Setoff Claimant.  If the Debtors and such Setoff Claimant cannot resolve the matter through such mediation, then such matter will be submitted to binding arbitration to a single arbitrator agreed to by all such parties or appointed by this Court, and such parties shall request that such arbitrator issue its ruling within 90 days after the**

**Agreement Deadline.  Notwithstanding any award in any such arbitration, in no event shall the Setoff Claimant be permitted to exercise its Setoff Right against any payables other than Pre-Petition Payables except as hereinafter set forth.**

**(3)    In the event any Setoff Claimants (the "Non-Exercising Setoff Claimants") have not exercised their asserted Setoff Rights in respect of their respective Pre-Petition Payables and have instead paid their Pre-Petition Payables to the Debtors, in addition to any other adequate protection provided to such Non-Exercising Setoff Claimants herein, the Non-Exercising Setoff Claimants may exercise Setoff Rights established in accordance with this paragraph against post-petition payables owed by such Non-Exercising Setoff Claimants to the Debtor or Debtors against which such Non-Exercising Setoff Claimants have their Setoff Rights; *provided* that (a) in the case of the exercise of any Setoff Rights by General Motors Corporation or any of its affiliates ("GM"), the aggregate amount of Setoff Rights that may be exercised pursuant to this subparagraph (3) against Pre-Petition Payables or post-petition payables owed by GM to the Debtors during any month shall not exceed $35 million (the "Aggregate Monthly Cap Amount") and (b) to the extent Setoff Rights are recognized in accordance with this Order in excess of the Setoff Rights that are permitted to be exercised pursuant to such limitations, Setoff Claimants may carry forward their Setoff Right to succeeding months, subject to the applicable monthly limitations, if any, until such Setoff Rights have been fully exercised.**

45

**(4)        (a) Except as set forth above, and subject to the adequate protection provided to Setoff Claimants as herein set forth, Setoff Claimants shall not be permitted to exercise any Setoff until the later of (x) the effective date of the Debtors' confirmed plan of reorganization and (y) allowance of the Setoff as a claim in these Cases.  Any exercise of Setoff pursuant to (x) or (y) above is subject to the treatment afforded to such Setoff under a plan of reorganization confirmed by the Bankruptcy Court.  Nothing contained herein shall limit (i) the discretion of the Debtors to pay warranty and/or product recall claims in accordance with orders of the Court, (ii) the right of any party in interest to exercise a post-petition setoff or recoupment against a post-petition payable or (iii) the right of a Setoff Claimant to request further adequate protection (or the Debtors or any party in interest to oppose any such request).**

**(b)        Adequate Protection.  Setoff Claimant is entitled, pursuant to sections 361, 362(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of its Setoff to the extent it does not exercise such Setoff and remits the amount of such Pre-Petition Payables not setoff or recouped.  As adequate protection, Setoff Claimant is hereby granted, effective upon payment to the Debtors of the amount subject to such Setoff, the following (collectively, the "Junior Adequate Protection Liens"):**

**(i)        A replacement lien (the "Replacement Lien") on such Setoff Claimant's post-petition payables to the extent that it is determined that such Setoff**

46

**Claimant had a Setoff in respect of the Pre-Petition Payables that have been remitted to the Debtors, which Replacement Lien is limited to the amount of the Setoff;** *provided, however*, **that (i) the Debtors reserve their rights to any and all Claims and Defenses that may be asserted with respect to such Setoff and (ii) the Replacement Liens are subject and subordinate to and only to (x) the security interests and liens granted to the Agent for the benefit of the DIP Lenders in this Order and pursuant to the DIP Documents and any liens to which such liens so granted to the Agent are junior and (y) the Carve-Out.**

**(ii)    As further adequate protection to protect the Setoff Claimant against any diminution in the value of its Replacement Lien, the Setoff Claimant is hereby granted a security interest in and lien upon all the other Collateral, subject and subordinate to and only to (A) the security interests and liens granted to the Agent for the benefit of the DIP Lenders in this Order and pursuant to the DIP Documents and any liens to which such liens so granted to the Agent are junior, (B) the Carve Out and (C) Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral and the Adequate Protection Liens granted to the Pre-Petition Agent and the Pre-Petition Secured Lenders,** *provided* **that the Setoff Claimant's security interest in and lien upon Collateral which is not (x) Pre-Petition Collateral, (y) Collateral that would have constituted Pre-Petition Collateral but for the operation of section 552(a) of the Bankruptcy Code as to which, without further action, the Pre-Petition Agent would have had a valid and perfected security interest**

**or lien or (z) subject to the Replacement Lien shall be *pari passu* with the Adequate**

**Protection Liens granted to the Pre-Petition Agent and the Pre-Petition Secured**

**Lenders in such Collateral.**

**(iii)    As further Adequate Protection, to the extent that the**

**post-petition payables in respect of which the Setoff Claimant is granted a**

**Replacement Lien are less than the Setoff of such Setoff Claimant, such Setoff**

**Claimant is hereby granted an administrative claim under section 507(b) of the**

**Bankruptcy Code in the amount of such deficiency subject to the Carve Out and**

**equal in priority to the administrative claim granted as adequate protection to the**

**Pre-Petition Secured Lenders in Paragraph 12(b) above; *provided, however*, that the**

**Setoff Claimant shall not receive or retain any payments, property or other amounts**

**in respect of the claims under section 507(b) of the Bankruptcy Code granted**

**hereunder unless and until the DIP Obligations have indefeasibly been paid in cash**

**in full.**

**19.    *Debtor Reimbursement Claims and Debtor Liens*.  Without limiting the**

**joint and several liability of each of the Debtors for the DIP Obligations, the Debtors**

**shall use their reasonable best efforts to ensure that Debtors that receive the benefit**

**of funds advanced under the Financing repay their share thereof on a dollar for**

**dollar basis.  To the extent a Debtor (i) incurs any of the DIP Obligations (including**

**as a result of intercompany balances incurred after the Petition Date to the extent**

**such balances arise from the incurrence of DIP Obligations) or (ii) receives a**

48

**postpetition intercompany loan or transfer (including as a result of the Debtors' cash management system or otherwise) (each a "Beneficiary Debtor"), and such DIP Obligations were repaid or such postpetition intercompany loan or transfer is made (including from cash collateral) (each an "Advance") by (A) any other Debtor that is a Borrower or Guarantor under the Financings or (B) any non-Debtor affiliate participating in the cash management system (together (A) and (B) an "Adequately Protected Entity"), the Adequately Protected Entity shall have, subject to the limitations set forth in paragraph 20 below (a) an allowed claim under sections 364(c)(1) and 507(b) of the Bankruptcy Code against the Beneficiary Debtor for the amount of such Advance, having priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, which claim shall bear interest at a rate agreed between the Debtors from time to time for the period accruing from and after the date such claim arises until repayment thereof (collectively, the "Debtor Reimbursement Claim") and (b) a lien on all Collateral under section 364(c)(3) of the Bankruptcy Code securing such Debtor Reimbursement Claim (a "Debtor Lien").**

**20.    All Debtor Reimbursement Claims and Debtor Liens shall be junior, subject and subordinate to and only to the Superpriority Claims, the DIP Liens, the Adequate Protection Obligations, Junior Adequate Protection Liens, the Replacement Liens and to any claims against such Beneficiary Debtor that are expressly senior to, and on a parity with, or carved out from the Superpriority**

49

**Claims, the DIP Liens, the Adequate Protection Obligations, Junior Adequate Protection Liens or the Replacement Liens.  All Debtor Liens shall be "silent" liens and the Adequately Protected Entity shall forbear from exercising, and shall not be entitled to exercise, any right or remedy relating to any Debtor Reimbursement Claim or Debtor Lien, including, without limitation, taking any of the actions that the Pre-Petition Agent, the Pre-Petition Secured Lenders and holders of Replacement Liens and Junior Adequate Protection Liens are prohibited from taking pursuant to paragraph 8, including, without limitation, seeking relief from the automatic stay, or seeking any sale, foreclosure, realization upon repossession or liquidation of any property of another Debtor, or taking any position with respect to any disposition of the property, the business operations, or the reorganization of another Debtor. The Agent shall have the exclusive right to manage, perform and enforce all rights and remedies described in the preceding sentence and in the DIP Documents.  The Debtor Lien of the Adequately Protected Entity automatically, and without further action of any person or entity of any kind, shall be released or otherwise terminated to the extent that property subject to such Debtor Lien is sold or otherwise disposed of by or on behalf of the Agent or any other Debtor or to the extent that such property is subject to a lien prior to the DIP Liens and such lien is permitted under the DIP Documents.**

      **21.**      **With respect to the effect of Debtor Liens on any sale of property by the Debtors, (a) the Debtors may sell property, in accordance with section 363 of the**

**Bankruptcy Code, free and clear of any Debtor Lien, with such lien attaching to the proceeds of sale in the same priority and subject to the same limitations and restrictions as existed in respect of the property sold and (b) the provisions of section 363(k) of the Bankruptcy Code shall not apply.**

22.    *JPMCB As Collateral Agent*.  To the extent JPMCB, in its role as Collateral Agent under the Existing Agreements, is the secured party under any Control Agreements (as defined in the Existing Agreements), listed as loss payee under the Debtors*'* insurance policies as required under the Guarantee and Collateral Agreement or is the secured party under any other Existing Agreement, JPMCB, in its role as Collateral Agent under the DIP Credit Agreement, is also deemed to be the secured party under such Control Agreements, loss payee under the Debtors*'* insurance policies and the secured party under any other Existing Agreement and shall act in that capacity and distribute any proceeds recovered or received <u>first</u>, for the benefit of the DIP Lenders in accordance with the DIP Credit Agreement and <u>second</u>, subsequent to indefeasible payment in full of all DIP Obligations, for the benefit of the Pre-Petition Secured Lenders under the Existing Agreements.

23.    *Order Governs*.  In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.

~~21.    *Prior Cash Collateral Order Superseded*.  Upon entry of this Order, this Order shall supersede in all respects the Bridge Order Under 11 U.S.C. §§ 361, 362, and 363 Authorizing Use of Cash Collateral and Adequate Protection to Prepetition Secured Parties, dated October 8, 2005, which Order shall be of no further force or effect.~~**The**

51

**terms of this Order shall govern to the extent of any inconsistency between this Order and that certain Cash Management Order dated October 14, 2005, including, without limitation, with respect to the matters set forth in paragraphs 19 to 21 of this Order.**

24.    *Binding Effect; Successors And Assigns*.  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, any party granted a Junior Adequate Protection Lien hereunder, any Committee appointed in these Cases, and the Debtors, for themselves and not for their estates, and their respective successors and assigns and shall inure to the benefit of the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, any party granted a **Replacement Lien or** Junior Adequate Protection Lien, and the Debtors and their respective successors and assigns; *provided*, *however*, that the Agent, the Pre-Petition Agent, the DIP Lenders and the Pre-Petition Secured Lenders shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan under the DIP Credit Agreement, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the Agent, the Pre-Petition Agent, the DIP Lenders and the Pre-Petition Secured Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the

52

operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).

23.    ~~*Final Hearing*.  The Final Hearing is scheduled for October 27, 2005 at 10:00 a.m. before this Court.~~

~~The Debtors shall promptly mail copies of this Order (which shall constitute adequate notice of Final Hearing, including without limitation, notice that the Debtors will seek approval at the Final Hearing of a waiver of rights under section 506(c) of the Bankruptcy Code) to the parties having been given notice of the Interim Hearing, and to any other party that has filed a request for notices with this Court and to any Committee after the same has been appointed, or Committee counsel, if the same shall have been appointed.  Any party-in-interest objecting to the relief sought at the Final Hearing shall serve and file written objections; which objections shall be served upon (a) Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60606, Att'n: John Wm. Butler, Jr., Esq., attorneys for the Debtors; (b) Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022, Att'n: Douglas P. Bartner, Esq., attorneys for the Debtors; (c) Davis Polk & Wardwell, 450 Lexington Avenue, New York, NY 10017, Att'n: Donald S. Bernstein, Esq., attorneys for the Agent and the Joint Lead Arrangers; (d) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017, Att'n: Kenneth S. Ziman, Esq., and Robert H. Trust, Esq., attorneys for the Pre-Petition Agent and (e) the Office of the United States Trustee for the Southern District~~