of New York, Att'n: Alicia M. Leonhard, Esq. and shall be filed with the Clerk of the United States Bankruptcy Court, Southern District of New York, in each case to allow actual receipt by the foregoing no later than October 20, 2005 at 4:00 p.m., prevailing Eastern time.

**25.**     *Aircraft Leases.*  **Notwithstanding anything to the contrary contained in this Order, no DIP Liens or any other liens or interests granted, authorized or contemplated herein shall attach to any interests of Delphi Automotive Systems Human Resources, LLC ("Delphi HR") in two leases of aircraft, both of which are dated March 30, 2001 between Bank of America, N.A., and Delphi HR (the "Aircraft Leases"), or in any personal property that is the subject of the Aircraft Leases.**

**26.**     *Objections Overruled***.  Any Objection which has not been withdrawn or resolved is, to the extent not resolved, hereby overruled.**

**27.**     *Committee Notices***.  All notices to be provided to the Creditors' Committee shall be sent to Latham & Watkins LLP, 885 Third Avenue, Suite 1000, New York, NY 10022-4834, Attn: Robert Rosenberg, Esq.**

Dated:   October __, 2005
        New York, New York

                    _____
                    UNITED STATES BANKRUPTCY JUDGE

54

Exhibit B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
     In re                         :    Chapter 11
                                                            :
DELPHI CORPORATION, <u>et al.</u>,                          :    Case No. 05-44481 (RDD)
                                                            :
                    Debtors.    :    (Jointly Administered)
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3),
364(d)(1), AND 364(e) AND FED. BANKR. P. 2002, 4001 AND 9014 (I)
AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) TO
UTILIZE CASH COLLATERAL AND (III) GRANTING ADEQUATE PROTECTION
<u>TO PREPETITION SECURED PARTIES</u>

("FINAL DIP FINANCING ORDER")

       Upon the motion, dated October 8, 2005 (the "Motion"), of Delphi Corporation (the

"Borrower") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession

in the above-captioned cases (collectively, the "Debtors"), for interim and final orders

under sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e)

of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"),

and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules"), seeking, among other things:

                (1)  authorization for the Borrower to obtain post petition financing

        (the "Financing"), and for all of the other Debtors (the "Guarantors") to

        guaranty the Borrower's obligations in connection with the Financing, up to

        the aggregate principal amount of $2,000,000,000 (the actual available

        principal amount at any time being subject to those conditions set forth in

the DIP Documents (as defined below)), pursuant to a credit facility with

JPMorgan Chase Bank, N.A. ("JPMCB"), acting as Administrative Agent

(in such capacity, the "Agent") for itself and a syndicate of financial

institutions (together with JPMCB and including the fronting and issuing

banks for the letters of credit, the "DIP Lenders"), and Citicorp USA, Inc.

("CUSA") as Syndication Agent, to be arranged by J.P. Morgan Securities

Inc. and Citigroup Global Markets, Inc. (the "Joint Lead Arrangers");

(2)  authorization for the Debtors to execute and enter into the DIP

Documents and to perform such other and further acts as may be required in

connection with the DIP Documents;

(3)  the granting of adequate protection to the lenders (the

"Pre-Petition Secured Lenders") under that certain Third Amended and

Restated Credit Agreement, dated as of June 14, 2005 (as heretofore

amended, supplemented or otherwise modified, the "Pre-Petition Credit

Agreement"), among the Borrower, the several lenders from time to time

party thereto, and JPMCB, as administrative agent for the Pre-Petition

Secured Lenders (in such capacity, the "Pre-Petition Agent"), and in

connection with that certain Guarantee and Collateral Agreement, dated as

of June 14, 2005, by the Borrower and certain of its subsidiaries, in favor of

the Pre-Petition Agent (as heretofore amended, supplemented or otherwise

modified, the "Guarantee and Collateral Agreement" and, collectively with

the Pre-Petition Credit Agreement, and the mortgages and all other

2

documentation executed in connection therewith, the "Existing

Agreements"), whose liens and security interests are being primed by the

Financing;

(4)  authorization for the Debtors to use cash collateral (as such term

is defined in the Bankruptcy Code) in which the Pre-Petition Secured

Lenders have an interest, and the granting of adequate protection to the

Pre-Petition Secured Lenders with respect to, *inter alia*, such use of their

cash collateral and all use and diminution in the value of the Pre-Petition

Collateral (as defined below);

(5)  approval of certain stipulations by the Debtors with respect to

the Existing Agreements and the liens and security interests arising

therefrom, that are "Extraordinary Provisions" (each an "Extraordinary

Provision") under General Order No. M-274 of the United States

Bankruptcy Court for the Southern District of New York (the "General

Order");

(6)  permission to accelerate Borrowings and the termination of the

Commitments under the DIP Credit Agreement upon (a) a Change of

Control (as each such term is defined in the DIP Credit Agreement) or (b)

the entry of an order or orders granting relief from the automatic stay

applicable under section 362 of the Bankruptcy Code to the holder or

holders of any security interest to permit foreclosure (or the granting of a

deed in lieu of foreclosure or the like) on any assets of the Borrower or any

3

of the Guarantors which have a value in excess of $20 million in the aggregate, which are Extraordinary Provisions under the General Order;

(7)   subject and only effective upon the entry of a final order granting such relief, the limitation of the Debtors' right to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code, which is an Extraordinary Provision under the General Order;

(8) pursuant to Bankruptcy Rule 4001, that an interim hearing (the "Interim Hearing") on the Motion be held before this Court to consider entry of the proposed interim order annexed to the Motion (the "Interim Order") (a) authorizing the Borrower, on an interim basis, to forthwith borrow or obtain letters of credit from the DIP Lenders under the DIP Documents up to an aggregate principal or face amount not to exceed $950,000,000 (subject to any limitations of borrowings under the DIP Documents), (b) authorizing the Debtors' use of cash collateral, and (c) granting the adequate protection described therein; and

(9)  that this Court schedule a final hearing (the "Final Hearing") to be held within 45 days of the entry of the Interim Order to consider entry of a final order authorizing the balance of the borrowings and letter of credit issuances under the DIP Documents on a final basis, as set forth in the Motion and the DIP Documents filed with this Court (the "Final Order").

4

The Interim Hearing having been held by this Court on October 11, 2005, at which

the Court issued and entered the Interim Order (a) authorizing the Borrower to borrow or

obtain letters of credit up to an aggregate principal or face amount of $950,000,000 of the

Financing from the DIP Lenders as provided for in the Interim Order and (b) scheduling the

Final Hearing to consider entry of an order authorizing the balance of the Financing, all as

set forth in the Motion, the Interim Order, this Final Order and the loan documentation filed

with this Court.

The Final Hearing having been held by this Court on October 27, 2005 at 10:00

a.m.

Due and appropriate notice of the Motion, the relief requested therein, the Interim

Hearing and the Final Hearing having been served by the Debtors on the fifty largest

unsecured creditors of the Debtors, on the Agent, the DIP Lenders, the Prepetition Agent,

the Prepetition Secured Lenders, the indenture trustee for the Debtors' senior noteholders,

known holders of prepetition liens against the Debtors' property and the United States

Trustee for the Southern District of New York.

Objections to the Motion having been filed by Bank of America Leasing & Capital,

LLC, the Ad Hoc Committee of Prepetition Secured Lenders, Venture Plastics, Inc., Gibbs

Die Casting Corporation, DaimlerChrysler Corporation, Mercedes-Benz U.S. International,

Inc., Autocam Corporation, Lorentson Manufacturing **Company** Southwest**,** Inc.,

Lorentson Manufacturing Company, Inc., Calsonic Kansei North America, Inc., Decatur

Plastic Products, Inc., Pension Benefit Guaranty Corporation, Ford Motor Company,

Freescale Semiconductor, Inc., Nissan North America, Inc., Fujikura America, Inc.,

5

Murata Electronics North America, Inc., Flextronics International Asia Pacific Ltd., and

Flextronics Technology (M) Sdn. Bhd., Multek Flexible Circuits, Inc., Sheldahl de Mexico

S.A. de C.V. and Northfield Acquisition Co., Omega Tool Corp., L&W Engineering Co.,

Southtec, LLC, DOTT Industries, Inc., ALPS Automotive, Inc., Pioneer Automotive

Technologies, Inc., Lakeside Plastics Limited, Android Industries, Inc., Ai-Doraville, LLC,

Ai-Genesee, LLC, Honda of America Manufacturing, Inc., OSRAM Opto Semiconductors

Inc., Worthington Steel Company and Worthington Steel of Michigan, Inc., Hitachi

Automotive Products, National Molding Corp., Security Plastics Division/NMC, LLC,

Arneses Electronics Automotrices, S.A. de C.V., Cordaflex, S.A. de C.V., Neuman

Aluminum Automotive, Inc., Neuman Aluminum Impact Extrusion, Inc., Magna

International, Inc. and certain of its foreign and domestic affiliates, A. Schulman, Inc., the

Creditors' Committee (as hereinafter defined), Textron Fastening Systems, Inc., ARC

Automotive, Inc., XM Satellite Radio Inc., General Motors Corporation, and **Benteler**

**Automotive Corp., Pentastar Aviation, LLC, Lear Corporation, American Axle &**

**Manufacturing, Inc.,** Robert Bosch Corporation **and Semiconductor Components**

**Industries, LLC** (collectively, the "Objections"). [1]

Upon the record made by the Debtors at the Interim Hearing and the Final Hearing,

and after due deliberation and consideration and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

---

[1] **Inclusive of objections filed prior to 11:00 p.m. on October 26, 2005.**

1.    *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    *Notice*.  Under the circumstances, the notice given by the Debtors of the Motion, the Interim Hearing, and the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c).

3.    *Debtors' Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon and the reservation of the Debtors' rights contained in paragraph 16 below), the Debtors, for themselves and not for their estates, admit, stipulate, and agree that:

(a)    (i) as of the filing of the Debtors' chapter 11 petitions (the "Petition Date"), (x) the Borrower was indebted and liable to the Pre-Petition Secured Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $2,488,329,620.59 in respect of loans made and in the aggregate face amount of approximately $91,453,431.26 in respect of letters of credit issued, in each case, by the Pre-Petition Secured Lenders pursuant to, and in accordance with the terms of, the Existing Agreements, plus, in each case, interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Existing Agreements), charges and other obligations incurred in connection therewith including, without limitation, amounts owing under "Specified Swap Agreements" (as defined in the Pre-Petition Credit Agreement), as provided in the Existing Agreements (collectively, the "Pre-Petition Debt") and (y) each Debtor other than the

7

Borrower was contingently liable to the Pre-Petition Secured Lenders in respect of the

Pre-Petition Debt owing by the Borrower pursuant to the Guarantee and Collateral

Agreement, (ii) the Pre-Petition Debt constitutes the legal, valid and binding obligation of

the Debtors, enforceable in accordance with its terms (other than in respect of the stay of

enforcement arising from section 362 of the Bankruptcy Code), (iii) no portion of the

Pre-Petition Debt is subject to avoidance, recharacterization, recovery or subordination

pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iv) the Debtors do

not have, and hereby forever release, any claims, counterclaims, causes of action, defenses

or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the

Pre-Petition Secured Lenders, the Pre-Petition Agent and their respective affiliates,

subsidiaries, agents, officers, directors, employees and attorneys;

(b)    the liens and security interests granted to the Pre-Petition Agent

pursuant to and in connection with the Existing Agreements (including, without limitation,

all security agreements, pledge agreements, mortgages, deeds of trust, control agreements

and other security documents executed by any of the Debtors in favor of the Pre-Petition

Agent, for its benefit and for the benefit of the Pre-Petition Secured Lenders) in connection

with the Existing Agreements, are (i) valid, binding, perfected, enforceable, first-priority

liens and security interests in the personal and real property constituting "Collateral" (as

defined in the Existing Agreements) immediately prior to the Petition Date (the

"Pre-Petition Collateral"), (ii) not subject to avoidance, recharacterization or subordination

pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and

subordinate only to (A) the DIP Liens (as defined below), (B) the Carve Out (as defined

8

below) to which the DIP Liens are subject and (C) valid, perfected and unavoidable liens

permitted under the Existing Agreements to the extent such permitted liens are senior to or

pari passu with the liens of the Pre-Petition Agent on the Pre-Petition Collateral; and

(c)    the aggregate value of the Pre-Petition Collateral substantially

exceeds the aggregate amount of the Pre-Petition Debt.

4.    *Findings Regarding The Financing.*

(a)    Good cause has been shown for the entry of this Final Order.

(b)    The Debtors require the remainder of the Financing and use Cash

Collateral (as defined below) in order to permit, among other things, the orderly

continuation of the operation of their businesses, to maintain business relationships with

vendors, suppliers and customers, to make payroll, to make capital expenditures and to

satisfy other working capital and operational needs.  The access of the Debtors to sufficient

working capital and liquidity through the use of Cash Collateral, incurrence of new

indebtedness for borrowed money and other financial accommodations is vital to the

preservation and maintenance of the going concern values of the Debtors and to a

successful reorganization of the Debtors.

(c)    The Debtors are unable to obtain financing on more favorable terms

from sources other than the DIP Lenders under the DIP Documents and are unable to

obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy

Code as an administrative expense.  The Debtors are also unable to obtain secured credit

allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the Bankruptcy Code

without the Debtors granting to the Agent and the DIP Lenders, subject to the Carve Out as

9

provided for herein, the DIP Liens and the Superpriority Claims (as defined below) under

the terms and conditions set forth in the Interim Order, this Order and in the DIP

Documents.

(d)    The terms of the Financing and the use of Cash Collateral are fair

and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with

their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)    The Financing has been negotiated in good faith and at arm's length

between the Debtors, the Agent and the DIP Lenders, and all of the Debtors' obligations

and indebtedness arising under, in respect of or in connection with the Financing and the

DIP Documents, including without limitation, (i) all loans made to, and all letters of credit

issued for the account of, the Debtors pursuant to the Revolving Credit, Term Loan and

Guaranty Agreement substantially in the form attached as Exhibit A to the Motion, as

amended by the Amendment No. 1 thereto dated as of October [26],**27,** 2005, a copy of

which was filed with the Court prior to commencement of the Final Hearing (as so

amended, the "DIP Credit Agreement"), and (ii) any "Obligations" and all other "Secured

Obligations" (as each such term is defined in the DIP Credit Agreement), including any

hedging obligations of the Debtors permitted under the DIP Credit Agreement and any

Indebtedness (as defined in the DIP Credit Agreement) permitted by Section 6.03(viii)

thereof, in each case owing to JPMCB, any DIP Lender or any of their respective banking

affiliates (all of the foregoing in clauses (i) and (ii) collectively,  the "DIP Obligations"),

shall be deemed to have been extended by the Agent and the DIP Lenders and their

affiliates in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in

10

express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(f)    The Debtors have requested entry of this Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the relief sought by this Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation of the Financing and the use of Cash Collateral in accordance with this Order and the DIP Documents is therefore in the best interest of the Debtors' estates.

5.    *Authorization Of The Financing And The DIP Documents.*

(a)    The Debtors are hereby authorized to be a party to the DIP Documents.  The Borrower is hereby authorized to borrow money and obtain letters of credit pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to guaranty such borrowings and the Borrower's obligations with respect to such letters of credit, up to an aggregate principal or face amount, inclusive of amounts authorized by the Interim Order, of $2,000,000,000 (plus interest, fees and other expenses provided for in the DIP Documents), subject to any limitations of borrowings under the DIP Documents, and in accordance with the terms of this Order and the DIP Documents, which shall be used solely for purposes permitted under the DIP Documents, including, without limitation, to provide working capital for the Borrower and the Guarantors and for other general corporate purposes and to pay interest, fees and expenses in accordance with this Order and the DIP Documents.  In addition to such loans and obligations, the Debtors are authorized

11

to incur overdrafts and related liabilities arising from treasury, depository and cash management services or in connection with any automated clearing house fund transfers provided to or for the benefit of the Debtors by JPMCB, CUSA, any other DIP Lender or any of their respective affiliates; *provided, however*, that nothing herein shall require JPMCB or CUSA or any other party to incur overdrafts or to provide any such services or functions to the Debtors.

(b)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be reasonably required or necessary for the Debtors' performance of their obligations under the Financing, including, without limitation:

(i)    the execution, delivery and performance of the Loan Documents (as defined in the DIP Credit Agreement) and any exhibits attached thereto, including, without limitation, the DIP Credit Agreement, the Security and Pledge Agreement (as defined in the DIP Credit Agreement) and the mortgages, if any, contemplated thereby (collectively, and together with the letter agreements referred to in clause (iv**iii**) below, the "DIP Documents"),

(ii)    the execution, delivery and performance of one or more amendments to the DIP Credit Agreement for, among other things, the purpose of adding additional financial institutions as DIP Lenders and reallocating the commitments for the Financing among the DIP Lenders, in each case in such form as the Debtors, the Agent and

12

the DIP Lenders may agree (it being understood that no further approval of the Court shall

be required for amendments to the DIP Credit Agreement that do not shorten the maturity

of the extensions of credit thereunder or increase the commitments, the rate of interest or

the letter of credit fees payable thereunder, amend the financial covenants in Section 6.04

therein to be more restrictive on the Debtors or amend the notice provisions of Section 7.01

therein (i.e., notice of exercise of remedies after the occurrence of an Event of Default))**.**

Notwithstanding any other provision hereof, without further approval of this Court,

amendments to the DIP Documents may be made at any time (x) prior to the Successful

Syndication (as defined in the **Second** Amended and Restated Fee Letter dated October

~~14,~~**27,** 2005 among the Borrower, JPMCB and the Joint Lead Arrangers (the "Fee Letter")),

to the extent contemplated by the Fee Letter (permitting certain modifications to the DIP

Credit Agreement necessary or advisable to ensure a successful syndication), and (y) as

contemplated by the DIP Credit Agreement with respect to the Borrowing Base

Amendment.

~~(iii)~~                In addition, Section 2.13 of the DIP Credit Agreement shall be

amended to provide for the application of net cash proceeds from asset sales to be subject

to mandatory prepayments and permanent reductions of commitments under the Facility or

to be held in a cash collateral account maintained with the DIP Agent for the benefit of

holders of the ~~other~~ liens and claims granted hereunder in the manner set forth below.

Notwithstanding anything to the contrary in this Order or the DIP Credit Agreement, the

amendments to Section 2.13 of the DIP Credit Agreement set forth in this paragraph

5(b)(iii), (x) are intended, in part, for the benefit of the Pre-Petition Agent and the

13

Pre-Petition Secured Lenders, (y) may be enforced by the Pre-Petition Agent and the

Pre-Petition Secured Lenders as though they were parties to the DIP Credit Agreement

solely for such purposes and (z) shall survive and remain in full force and effect regardless

of the permanent repayment in full of the DIP Obligations or the termination of the DIP

Credit Agreement or any provision hereof.  This paragraph 5(b)(iii) shall not be amended,

supplemented, waived or otherwise modified without the prior written consent of the

Pre-Petition Agent.  Specifically, Section 2.13 will be amended to (i) reorder subsection

"(b)" to be subsection "(c)" and (ii) adding a new subsection (b) to read as follows:

> "If on any date the Borrower or any Guarantor shall receive Net Cash
> Proceeds from (i) any Asset Sale or (ii) any Recovery Event (except to the
> extent that Net Cash Proceeds received in connection with such Recovery
> Event are applied within 180 days of receipt thereof to the replacement or
> repair of the assets giving rise thereto), and in each case, the aggregate
> amount of all Net Cash Proceeds from Asset Sales and Recovery Events
> received by the Borrower and the Guarantors from Asset Sales and
> Recovery Events occurring on and after the Closing Date exceeds
> $125,000,000 then (without duplication of any reduction to the Borrowing
> Base as a result of such Asset Sale or Recovery Event), an amount equal to
> 66-2/3% of such Net Cash Proceeds received on such date shall be promptly,
> and in any event, within 10 days after such date either (i) first, applied to the
> prepayment of the Tranche B Loans (with a corresponding permanent
> reduction of the Total Tranche B Commitments) and second, applied to the
> prepayment of the Tranche A Loans (with a corresponding permanent
> reduction of the Total Tranche A Commitments) or (ii) deposited into a
> cash collateral account maintained with the DIP Agent for the benefit of the
> holders of Liens and claims granted under the Final DIP Order in the order
> of priority set forth therein; *provided* that the Borrower shall be permitted to
> use such proceeds with the**request** approval of the Bankruptcy Court for
> purposes permitted by**to use such proceeds in accordance with** Section
> 363 of the Bankruptcy Code so long as such uses are permitted under the
> DIP Credit Agreement **and subject to the rights of parties in interest to
> contest such request**."

The following related definitions will also be added to the DIP Credit Agreement:

"Asset Sale":  any Disposition of property or series of related Dispositions of property by the Borrower or any Guarantor (excluding any such Disposition permitted by clauses (i), (ii), (iii), (v), (vii) and (viii) of Section 6.10).

"Disposition":  with respect to any property, any sale, lease, sale and leaseback, assignment (other than for security or collection in the ordinary course of business), conveyance, transfer or other disposition thereof.  The terms "Dispose" and "Disposed of" shall have correlative meanings.

"Net Cash Proceeds":  in connection with any Asset Sale or any Recovery Event, the proceeds thereof in the form of cash and Permitted Investments, net of attorneys' fees, accountants' fees, investment banking fees, commissions, premiums, amounts required to be applied to the repayment of Indebtedness secured by a Lien permitted hereunder on any asset that is the subject of such Asset Sale or Recovery Event (other than any Lien pursuant to the Security and Pledge Agreement) and other customary fees and expenses actually incurred in connection therewith and net of taxes paid or reasonably estimated to be payable as a result thereof (after taking into account any available tax credits or deductions and any tax sharing arrangements) and a reasonable reserve for purchase price adjustments and indemnification payments that could reasonably be expected to arise during the term of the Tranche A Loans and the Tranche B Loans; *provided* that in the case of any Asset Sale or Recovery Event in respect of which the Net Cash Proceeds do not exceed $2,500,000, such Net Cash Proceeds shall not be deemed to constitute "Net Cash Proceeds" for purposes of Section 2.13 until the aggregate amount of all such excluded Net Cash Proceeds is at least $10,000,000.

"Recovery Event":  any settlement of or payment in respect of any property or casualty insurance claim or any condemnation proceeding relating to any asset of the Borrower or any Guarantor, in each case in an amount in excess of $5,000,000.

(iii)     the non refundable payment to the Agent, the Joint Lead Arrangers or the DIP Lenders, as the case may be, of the fees referred to in the DIP Credit Agreement (and in the separate letter agreements between them in connection with the Financing) and reasonable costs and expenses as may be due from time to time, including,

without limitation, reasonable fees and expenses of the professionals retained as provided for in the DIP Documents, and

(iv)    the performance of all other acts required under or in connection with the DIP Documents.

(c)    The DIP Documents constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of the DIP Documents.  No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

6.    *Superpriority Claims.*

(a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the DIP Obligations shall constitute allowed claims against the Debtors with priority over any and all administrative expenses, diminution claims (including all Adequate Protection Obligations, Replacement Liens and Junior Adequate Protection Liens (each as defined below)) and all other claims against the Debtors, now existing or hereafter arising, of any kind whatsoever, including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the "Superpriority Claims"), whether or not such expenses or claims may become secured by a

16

judgment lien or other non-consensual lien, levy or attachment, which allowed claims shall

be payable from and have recourse to all pre-petition and post-petition property of the

Debtors and all proceeds thereof, subject only to the payment of the Carve Out to the extent

specifically provided for herein.

(b)    For purposes hereof, the "Carve Out" means (i) all unpaid fees

required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United

States Trustee under section 1930(a) of title 28 of the United States Code, (ii) all fees and

expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code, (iii) after the

occurrence and during the continuance of an Event of Default (as defined in the DIP Credit

Agreement), all allowed and unpaid professional fees and disbursements incurred by the

Debtors and any statutory committees appointed in the Cases (each, a "Committee"), that

remain unpaid subsequent to the payment, pro rata with other nonpriority administrative

creditors, of such fees and expenses from available funds remaining in the Debtors' estates

for such creditors, in an aggregate amount not exceeding $35,000,000, which amount may

be used subject to the terms of this Order, including, without limitation, paragraph 17

hereof, and (iv) all allowed and unpaid professional fees and disbursements incurred or

accrued by the Debtors and any Committees at any time when no Event of Default is

continuing, that remain unpaid subsequent to the payment, pro rata with other nonpriority

administrative creditors, of such fees and expenses from available funds remaining in the

Debtors' estates for such creditors, in an aggregate amount not exceeding the sum of (x)

such unpaid professional fees and disbursements reflected on the most recent Borrowing

Base Certificate (as defined in the DIP Credit Agreement) delivered to the Agent prior to

17

any Event of Default that is then continuing and (y) such unpaid professional fees and disbursements incurred or accrued after such Borrowing Base Certificate (but at a time when no Event of Default is continuing) in an aggregate amount under this clause (y) not exceeding $5,000,000 (and with amounts included in this clause (y), to be supported by back-up documentation in respect of the amounts and dates of incurrence of such fees and disbursements), in each of the foregoing clauses (i), (ii), (iii) and (iv), to the extent allowed by the Bankruptcy Court at any time; *provided*, *however*, that (A) nothing herein shall be construed to impair the ability of any party to object to any of the fees, expenses, reimbursement or compensation described in clauses (iii) and (iv) above and (B) following the Termination Date (as defined in the DIP Credit Agreement), cash or other amounts on deposit in the Letter of Credit Account (as defined in the DIP Credit Agreement), shall not be subject to the Carve Out.

7.      *DIP Liens*.

As security for the DIP Obligations, effective and perfected upon the date of entry of the Interim Order and without the necessity of the execution, recordation of filings by the Debtors of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, the following security interests and liens are hereby granted to the Agent for its own benefit and the benefit of the DIP Lenders (all property identified in clauses (a), (b) and (c) below being collectively referred to as the "Collateral"), subject, only in the event of the occurrence and during the continuance of an Event of Default, to the payment of the Carve Out (all such liens and security interests

18

granted to the Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this

Order and the DIP Documents, the "DIP Liens"):

(a)      First Lien On Cash Balances And Unencumbered Property.

Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing,

enforceable, fully-perfected first priority senior security interest in and lien upon all

pre-petition and post-petition property of the Debtors, whether existing on the Petition

Date or thereafter acquired, to the extent not subject to valid, perfected, non-avoidable and

enforceable liens in existence as of the Petition Date or valid liens in existence as of the

Petition Date that are perfected subsequent to such date to the extent permitted by section

546(b) of the Bankruptcy Code (collectively, "Unencumbered Property"), including

without limitation, all cash and cash collateral of the Debtors (whether maintained with the

Agent or otherwise) and any investment of such cash and cash collateral, inventory,

accounts receivable, other rights to payment whether arising before or after the Petition

Date, contracts, properties, plants, equipment, general intangibles, documents, instruments,

interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other

intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing,

*provided*, *however*, that the Borrower and the Guarantors shall not be required to pledge to

the Agent in excess of 65% of the voting capital stock of its direct Foreign Subsidiaries or

any of the capital stock or interests of its indirect Foreign Subsidiaries (if, in the good faith

judgment of the Borrower, adverse tax consequences would result to the Borrower).

Unencumbered Property shall exclude the Debtors' claims and causes of action under

sections 502(d), 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other

19

avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions"), and

any proceeds or property recovered, unencumbered or otherwise the subject of successful

Avoidance Actions.

        (b)    <u>Liens Priming Pre-Petition Secured Lenders' Liens</u>.  Pursuant to

section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable,

fully-perfected first priority senior priming security interest in and lien upon all

pre-petition and post-petition property of the Debtors (including, without limitation, cash

collateral, inventory, accounts receivable, other rights to payment whether arising before or

after the Petition Date, contracts, properties, plants, equipment, general intangibles,

documents, instruments, interests in leaseholds, real properties, patents, copyrights,

trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the

proceeds of all the foregoing), whether now existing or hereafter acquired, that is subject to

the existing liens presently securing the Pre-Petition Debt (including in respect of issued

but undrawn letters of credit).  Such security interests and liens shall be senior in all

respects to the interests in such property of the Pre-Petition Secured Lenders arising from

current and future liens of the Pre-Petition Secured Lenders (including, without limitation,

adequate protection liens granted hereunder), and shall be subject and subordinate to (i) the

Carve Out (except as provided in paragraph 6 hereof), (ii) any valid, perfected and

unavoidable interests of other parties arising out of liens, if any, on such property existing

immediately prior to the Petition Date, (iii) any valid, perfected and unavoidable interests

in such property arising out of liens to which the liens of the Pre-Petition Secured Lenders

become subject subsequent to the Petition Date as permitted by section 546(b) of the

Bankruptcy Code and (iv) statutory liens or security interests arising after the Petition Date and permitted under the DIP Credit Agreement that by operation of law would have priority over a previously perfected security interest.

(c)    <u>Liens Junior To Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected security interests in and liens upon all pre-petition and post-petition property of the Debtors (other than the property described in clauses (a) or (b) of this paragraph 7, as to which the liens and security interests in favor of the Agent will be as described in such clauses), whether now existing or hereafter acquired, that is subject to valid, perfected and unavoidable liens and, as to Pre-Petition Payables (~~as hereinafter defined~~)**and** Setoffs (**each** as ~~hereinafter defined~~ **below**) in existence immediately prior to the Petition Date or to valid and unavoidable liens in existence immediately prior to the Petition Date that are perfected subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens in favor of the Agent and the Lenders are junior to such valid, perfected and unavoidable liens and Setoffs.

(d)    <u>Liens Senior To Certain Other Liens</u>.  The DIP Liens, the Adequate Protection Liens, the Replacement Liens and the Junior Adequate Protection Liens (each as defined below) shall not be subject or subordinate to (i) any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens arising after the Petition Date including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit, commission, board or court for any liability of the Debtors other

21

than with respect to any liens or security interests arising after the Petition Date and

permitted under the DIP Credit Agreement to be senior to the DIP Liens.

8.    *Protection Of DIP Lenders' Rights.*

(a)    So long as there are any borrowings or letters of credit or other

amounts (other than contingent indemnity obligations as to which no claim has been

asserted when all other amounts have been paid and no letters or credit are outstanding)

outstanding, or the DIP Lenders have any Commitment (as defined in the DIP Credit

Agreement) under the DIP Credit Agreement, the Pre-Petition Agent, the Pre-Petition

Secured Lenders, the holders of Replacement Liens and holders of Junior Adequate

Protection Liens shall (i) take no action to foreclose upon or recover in connection with the

liens granted thereto pursuant to the Existing Agreements or this Order, or otherwise

exercise remedies against any Collateral, except to the extent authorized by an order of this

Court and (ii) be deemed to have consented to any release of Collateral authorized under

the DIP Documents, *provided* that the Pre-Petition Agent and any Pre-Petition Secured

Lender may appear and be heard as a party in interest in connection with any proceeding

relating to the sale, transfer or other disposition of any Collateral and (iii) not file any

further financing statements, trademark filings, copyright filings, mortgages, notices of

lien or similar instruments, or otherwise take any action to perfect their security interests in

the Collateral unless solely as to this clause (iii), the DIP Lenders file financing statements

or other documents to perfect the liens granted pursuant to this Order, or as may be

required by applicable state law to continue the perfection of valid and unavoidable liens or

security interests as of the Petition Date. Notwithstanding the foregoing, the Pre-Petition

22

Secured Lenders shall be permitted to file pleadings with respect to any proposed sale, transfer or other disposition of the Collateral by the Debtors outside the ordinary course of business so long as such pleadings do not contravene the provisions of this paragraph 8 and do not otherwise interfere with the exercise of any right or remedy by the Agent or the DIP Lenders.  Nothing herein shall be read to permit the Pre-Petition Agent, the Pre-Petition Secured Lenders, or the holders of Replacement Liens or Junior Adequate Protection Liens to take any action in violation of the Bankruptcy Code or other applicable law.  This paragraph 8(a) defines the relative rights of the DIP Agent and the DIP Lenders, on the one hand, and the Pre-Petition Agent and the Pre-Petition Secured Lenders, on the other, and is not intended to confer any rights on the Debtors.

(b)    The automatic stay provisions of section 362 of the Bankruptcy Code are vacated and modified to the extent necessary to permit the Agent and the DIP Lenders to exercise, (i) immediately upon the occurrence of an Event of Default, all rights and remedies under the DIP Documents other than those rights and remedies against the Collateral as provided in clause (ii) below and (ii) upon the occurrence and during the continuance of an Event of Default and the giving of five business days prior written notice to the extent provided for in the DIP Credit Agreement, all rights and remedies against the Collateral provided for in the DIP Documents (including, without limitation, the right to setoff monies of the Debtors in accounts maintained with the Agent or any DIP Lender).  In any hearing regarding any exercise of rights or remedies, the only issue that may be raised by any party in opposition thereto shall be whether, in fact, an Event of Default has occurred and is continuing, and the Debtors, the Pre-Petition Agent, the Pre-Petition

23

Secured Lenders, and the holders of Replacement Liens or Junior Adequate Protection
Liens hereby waive in such capacities, but not in capacities ~~of~~**as** holders of general
unsecured claims, their right to seek relief, including, without limitation, under section 105
of the Bankruptcy Code, to the extent such relief would in any way impair or restrict the
rights and remedies of the Agent or the DIP Lenders set forth in this Order or the DIP
Documents.  In no event shall the Agent, the DIP Lenders, the Pre-Petition Agent, the
Pre-Petition Secured Lenders, or the holders of Replacement Liens or Junior Adequate
Protection Liens be subject to the equitable doctrine of "marshaling" or any similar
doctrine with respect to the Collateral.

9.      *Limitation On Charging Expenses Against Collateral*.  Except to the extent
of the Carve Out, no expenses of administration of the Cases or any future proceeding that
may result therefrom, including liquidation in bankruptcy or other proceedings under the
Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to
section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior
written consent of the Agent or the Pre-Petition Agent, as the case may be, and no such
consent shall be implied from any other action, inaction, or acquiescence by the Agent, the
DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders.

10.     *The Cash Collateral*.  To the extent any funds of any Debtor party to the
Existing Agreements (other than funds in accounts subject to lock-box arrangements under
the Debtors' receivables financing) were on deposit with the Pre-Petition Secured Lenders
as of the Petition Date, including, without limitation, all such funds deposited in, or
credited to, an account of any Debtor party to the Existing Agreements with any

24

Pre-Petition Secured Lender immediately prior to the filing of the Debtors' bankruptcy petitions (the "Petition Time") (regardless of whether, as of the Petition Time, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the "Deposited Funds") are subject to rights of setoff.  By virtue of such setoff rights, the Deposited Funds are subject to a lien in favor of such Pre-Petition Secured Lenders pursuant to sections 506(a) and 553 of the Bankruptcy Code.  The Pre-Petition Secured Lenders are obligated, to the extent provided in the Existing Agreements, to share the benefit of such liens and setoff rights with the other Pre-Petition Secured Lenders party to such Existing Agreements.  The cash of the Debtors party to the Existing Agreements, including, without limitation, the Deposited Funds or any other funds on deposit at the Pre-Petition Secured Lenders as of the Petition Date, and any proceeds generated by the collection of accounts receivable, sale of inventory or other disposition of the Pre-Petition Collateral are cash collateral of the Pre-Petition Secured Lenders within the meaning of section 363(a) of the Bankruptcy Code, and all such "cash collateral" is referred to herein as "Cash Collateral."  The Pre-Petition Secured Lenders have objected to the use by the Debtors of the Pre-Petition Collateral, including Cash Collateral, except on the terms of this Order.

11.     *Use Of Cash Collateral.*  The Debtors are hereby authorized to use all Cash Collateral of the Pre-Petition Secured Lenders and of the holders of Replacement Liens or Junior Adequate Protection Liens, and the Pre-Petition Secured Lenders and the holders of Replacement Liens or Adequate Protection Liens are directed promptly to turn over to the Debtors all Cash Collateral received or held by them, *provided* that the Pre-Petition

25

Secured Lenders and the holders of Replacement Liens or Adequate Protection Liens are

granted adequate protection as hereinafter set forth.  The Debtors' right to use Cash

Collateral shall terminate automatically upon the occurrence of the Termination Date or

the voluntary reduction by the Borrower of the Total Commitments to zero (as each such

term is defined in the DIP Credit Agreement).

12.     *Adequate Protection*.  The Pre-Petition Secured Lenders are entitled,

pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate

protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, for

and equal in amount to the aggregate diminution in value of the Pre-Petition Secured

Lenders' Pre-Petition Collateral, including, without limitation, any such diminution

resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash

Collateral and any other Pre-Petition Collateral, the priming of the Pre-Petition Agent's

security interests and liens in the Pre-Petition Collateral by the Agent and the DIP Lenders

pursuant to the DIP Documents and this Order, and the imposition of the automatic stay

pursuant to section 362 of the Bankruptcy Code.  As adequate protection, the Pre-Petition

Agent and the Pre-Petition Secured Lenders are hereby granted the following (collectively,

the "Adequate Protection Obligations"):

(a)     <u>Adequate Protection Liens</u>.  As security for the payment of the

Adequate Protection Obligations, the Pre-Petition Agent (for itself and for the benefit of

the Pre-Petition Secured Lenders) is hereby granted (effective and perfected as of the

Petition Date and without the necessity of the execution by the Debtors of mortgages,

security agreements, pledge agreements, financing statements or other agreements) a

26

replacement security interest in and lien upon all the Collateral, subject and subordinate

only to (i) the security interests and liens granted to the Agent for the benefit of the DIP

Lenders in this Order and pursuant to the DIP Documents and any liens on the Collateral to

which such liens so granted to the Agent are junior, (ii) the Replacement Lien (as

hereinafter defined) and (iii) the Carve Out, *provided* that the security interest in and lien

granted to the Pre-Petition Agent pursuant to this paragraph 12(a) upon Collateral that is

not (x) Pre-Petition Collateral or (y) Collateral that would have constituted Pre-Petition

Collateral ~~in which~~**but for the operation of section 552(a) of the Bankruptcy Code as to
which, without further action,** the Pre-Petition Agent would have had a valid and

perfected security interest or lien ~~but for the commencement of these cases and without~~
~~further action~~ shall be *pari passu* with the Junior Adequate Protection Liens granted to any

Setoff Claimant in such Collateral pursuant to this Order (the "Adequate Protection

Liens");

        (b)    <u>Section 507(b) Claim</u>.  The Pre-Petition Agent and the Pre-Petition

Secured Lenders are hereby granted, subject to the payment of the Carve Out, a

superpriority claim as provided for in section 507(b) of the Bankruptcy Code equal in

priority to the priority granted to the Setoff Claimants in paragraph 18(b) below, limited in

amount to the aggregate diminution in value of the Pre-Petition Secured Lenders'

Pre-Petition Collateral, including, without limitation, any such diminution resulting from

the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any

other Pre-Petition Collateral, the priming of the Pre-Petition Agent's security interests and

liens in the Pre-Petition Collateral by the Agent and the DIP Lenders pursuant to the DIP

Documents and this Order, and the imposition of the automatic stay pursuant to section 362

of the Bankruptcy Code, immediately junior to the claims under section 364(c)(1) of the

Bankruptcy Code held by the Agent and the DIP Lenders *provided*, *however*, that the

Pre-Petition Agent and the Pre-Petition Secured Lenders shall not receive or retain any

payments, property or other amounts in respect of the superpriority claims under section

507(b) of the Bankruptcy Code granted hereunder or under the Existing Agreements unless

and until the DIP Obligations have indefeasibly been paid in cash in full;

(c)      Interest, Fees, And Expenses.  The Pre-Petition Agent shall receive

from the Debtors (i) immediate cash payment of all accrued and unpaid interest on the

Pre-Petition Debt and letter of credit fees at the non-default contract rates provided for in

the Existing Agreements, and all other accrued and unpaid fees and disbursements payable

to or for the benefit of the Pre-Petition Agent under the Existing Agreements and incurred

prior to the Petition Date including, but not limited to, reasonable fees owed and amounts

to be paid or reimbursed for counsel, financial and other consultants for the Pre-Petition

Agent pursuant to Section 10.6 of the Pre-Petition Credit Agreement, (ii) current cash

payments of all fees and expenses payable to the Pre-Petition Agent under the Existing

Agreements, including, but not limited to, the reasonable fees and disbursements of

counsel, financial and other consultants for the Pre-Petition Agent,  (iii) on the first

business day of each month, all accrued but unpaid interest on the Pre-Petition Debt, and

letter of credit and other fees at the non-default contract rate applicable under the Existing

Agreements, *provided* that, without prejudice to the rights of the Debtors or any other party

to contest such assertion, the Pre-Petition Secured Lenders reserve their rights to assert

28

claims for the payment of additional interest calculated at any other applicable rate of

interest (including, without limitation, default rates), or on any other basis provided for in

the Existing Agreements, and for the payment of any other amounts provided for in the

Existing Agreements, and (iv)  current cash payment of all reasonable out-of-pocket

expenses of the members of any steering committee of Pre-Petition Secured Lenders, in

their capacity as such (but excluding any fees and disbursements of counsel, financial or

other consultants to such steering committee).  The Debtors shall pay the fees and expenses

provided for in the preceding clause (ii) or clause (iv) only after reasonably detailed

invoices for such fees and expenses shall have been submitted to the Debtors and counsel

to the official committee of unsecured creditors (the "Creditors' Committee").  **The rights**

**of all parties in interest with respect to the application of such payments in clauses (ii),**

**(iii) and (iv) above shall be preserved in accordance with Paragraph 16 below.**

(d)    Access To Collateral.  The Pre-Petition Agent (for the benefit of the

Pre-Petition Secured Lenders) and their experts and advisors shall be given reasonable

access for purposes of monitoring the business of the Debtors and the value of the

Collateral; and

(e)    Information.  The Debtors shall provide the Pre-Petition Agent and

the Creditors' Committee with any written financial information or periodic reporting that

is provided to, or required to be provided to, the Agent or the DIP Lenders; *provided,*

*however*, that to the extent such information is provided to the Creditors' Committee, the

Debtors shall be entitled to restrict access to such information solely to professionals

retained by such committee.  The Debtors shall also provide the Agent and the Pre-Petition

29

Agent with information related to payments made to and setoffs taken by the Debtors' suppliers in respect of any pre-petition claims to the extent such information is provided to the Creditors' Committee or is otherwise required to be supplied pursuant to the DIP Documents.

(f)      Pre-Petition Letters of Credit.  Subject to the terms and conditions of the DIP Documents, letters of credit issued and outstanding under the Pre-Petition Credit Agreement shall be replaced by letters of credit issued under the DIP Documents at the earlier of the stated expiry of such letters of credit and the next notice date for non-renewal of such letters of credit.  The Pre-Petition Agent, in consultation with and after prior notice to the Debtors, is authorized to provide notice of non-renewal to letter of credit beneficiaries to prevent the automatic renewal of "evergreen" Letters of Credit.

13.      *Reservation of Rights of Pre-Petition Secured Lenders*.  Under the circumstances and given that the above described adequate protection is consistent with the Bankruptcy Code, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Pre-Petition Secured Lenders. Except as expressly provided herein, nothing contained in this Order (including, without limitation, the authorization of the use of any Cash Collateral and the granting of any Replacement Liens or Junior Adequate Protection Liens) shall impair or modify any rights, claims or defenses available in law or equity, including, without limitation, any right to propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans of reorganization, to the Pre-Petition Agent, any Pre-Petition Secured Lender,

the Agent or any DIP Lender including, without limitation, rights of a party to a swap

agreement, securities contract, commodity contract, forward contract or repurchase

agreement with a Debtor to assert rights of setoff or other rights with respect thereto as

permitted by law (or the right of a Debtor to contest such assertion).  The Pre-Petition

Agent and the Pre-Petition Secured Lenders shall have the right to request further or

different adequate protection under sections 361, 363(e) and 364(d)(2) of the Bankruptcy

Code following the occurrence of any event after the Petition Date, that ~~(i) would~~**could**

reasonably be expected to have a ~~Material Adverse Effect (as defined in the DIP Credit~~

~~Agreement but without regard to clause (y) of the proviso of said definition) and (ii) either~~

~~(A) the Debtors are not able~~**material adverse effect on (A) the Debtors' ability** to repay

or refinance the Pre-Petition Obligations in full in cash under a Chapter 11 plan of

reorganization or (B) the Debtors ~~are not able~~**' ability** to satisfy the Adequate Protection

Obligations.  The Debtors or any other party in interest may object to any such request, and

with respect to such objections nothing herein shall operate to shift any applicable burdens

of proof from those set forth in the Bankruptcy Code.

      14.    *Perfection Of DIP Liens And Adequate Protection Liens.*

      (a)    Subject to the provisions of paragraph 8(a) above, the Agent and the

Pre-Petition Agent are hereby authorized, but not required, to file or record financing

statements, trademark filings, copyright filings, mortgages, notices of lien or similar

instruments in any jurisdiction or take any other action in order to validate and perfect the

liens and security interests granted to them hereunder.  Whether or not the Agent on behalf

of the DIP Lenders or the Pre-Petition Agent on behalf of the Pre-Petition Secured Lenders

31

shall, in their sole discretion, choose to file such financing statements, trademark filings,

copyright filings, mortgages, notices of lien or similar instruments or otherwise confirm

perfection of the liens and security interests granted to them hereunder, such liens and

security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable

and not subject to challenge dispute or subordination, at the time and as of the date of entry

of this Order.  Upon the request of the Agent, each of the Pre-Petition Agent and

Pre-Petition Secured Lenders, without any further consent of any party, is authorized to

take, execute and deliver such instruments (in each case without representation or warranty

of any kind) to enable the Agent to further validate, perfect, preserve and enforce DIP

Liens.

       (b)    A certified copy of this Order may, in the discretion of the Agent, be

filed with or recorded in filing or recording offices in addition to or in lieu of such

financing statements, mortgages, notices of lien or similar instruments, and all filing

offices are hereby authorized to accept such certified copy of this Order for filing and

recording.

       (c)    Any provision of any lease or other license, contract or other

agreement that requires (i) the consent or approval of one or more landlords or other parties

or (ii) the payment of any fees or obligations to any governmental entity, in order for any

Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold interest, or

the proceeds thereof, or other post-petition collateral related thereto, is hereby deemed to

be inconsistent with the applicable provisions of the Bankruptcy Code.  Any such

provision shall have no force and effect with respect to the transactions granting

post-petition liens, in such leasehold interest or the proceeds of any assignment and/or sale

thereof by any Debtor, in favor of the DIP Lenders in accordance with the terms of the DIP

Credit Agreement or this Order.

        15.    *Preservation Of Rights Granted Under The Order.*

        (a)    No claim or lien having a priority superior to or *pari passu* with

those granted by this Order to the Agent and the DIP Lenders or to the Pre-Petition Agent,

the Pre-Petition Secured Lenders and the Setoff Claimants, respectively, shall be granted

or allowed while any portion of the Financing (or any refinancing thereof) or the

Commitments thereunder or the DIP Obligations or the Adequate Protection Obligations

remain outstanding, and the DIP Liens, the Adequate Protection Liens, the Replacement

Liens and the Junior Adequate Protection Liens shall not be (i) subject or junior to any lien

or security interest that is avoided and preserved for the benefit of the Debtors' estates

under section 551 of the Bankruptcy Code or (ii) subordinated to or made pari passu with

any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or

otherwise (other than as specifically provided for in this Order).  Nothing in this paragraph

15(a) shall limit (x) the rights of the Debtors to refinance the Financing in compliance with

the DIP Credit Agreement or (y) the rights of any party in interest with respect to any such

refinancing.

        (b)    Unless all DIP Obligations shall have been paid in full (and, with

respect to outstanding letters of credit issued pursuant to the DIP Credit Agreement, cash

collateralized in accordance with the provisions of the DIP Credit Agreement), the Debtors

shall not seek, and it shall constitute an Event of Default and a termination of the right to

use Cash Collateral if any of the Debtors seek, or if there is entered, (i) any modifications

or extensions of this Order without the prior written consent of the Agent, and no such

consent shall be implied by any other action, inaction or acquiescence by the Agent, or (ii)

an order dismissing any of the Cases.  If an order dismissing any of the Cases under section

1112 of the Bankruptcy Code or otherwise is at any time entered, such order shall provide

(in accordance with sections 105 and 349 of the Bankruptcy Code) that (x) the

Superpriority Claims, priming liens, security interests and replacement security interests

granted to the Agent and, as applicable, the Pre-Petition Agent or the Setoff Claimants

pursuant to this Order shall continue in full force and effect and shall maintain their

priorities as provided in this Order until all DIP Obligations and Adequate Protection

Obligations shall have been paid and satisfied in full (and that such Superpriority Claims,

priming liens and replacement security interests, shall, notwithstanding such dismissal,

remain binding on all parties in interest) and (y) this Court shall retain jurisdiction,

notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security

interests referred to in (x) above.

       (c)     If any or all of the provisions of this Order are hereafter reversed,

modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect

(i) the validity of any DIP Obligations or Adequate Protection Obligations incurred prior to

the actual receipt of written notice by the Agent or Pre-Petition Agent, as applicable, of the

effective date of such reversal, stay, modification or vacation or (ii) the validity or

enforceability of any lien or priority authorized or created hereby or pursuant to the DIP

Credit Agreement with respect to any DIP Obligations or Adequate Protection Obligations.

Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral, or DIP Obligations or Adequate Protection Obligations incurred by the Debtors to the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders prior to the actual receipt of written notice by the Agent and Pre-Petition Agent of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and the Agent, DIP Lenders, Pre-Petition Agent and Pre-Petition Secured Lenders shall be entitled to all the rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Documents with respect to all uses of Cash Collateral, DIP Obligations and Adequate Protection Obligations.

(d)     Except as expressly provided in this Order or in the DIP Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of the Agent and the DIP Lenders granted by the provisions of this Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by (i) the entry of an order converting any of the Cases to a case under chapter 7, dismissing any of the Cases, terminating the joint administration of these Cases or by any other act or omission, or (ii) the entry of an order confirming a plan of reorganization in any of the Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have waived any discharge as to any remaining DIP Obligations.  The terms and provisions of this Order and the DIP Documents shall continue in these Cases, in any successor cases if these Cases cease to be jointly administered, or in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights and remedies of the Agent and

35

the DIP Lenders granted by the provisions of this Order and the DIP Documents shall

continue in full force and effect until the DIP Obligations are indefeasibly paid in full.

16.     *Effect Of Stipulations On Third Parties*.  Subject to the reservation of rights

set forth in this paragraph 16, the stipulations and admissions contained in paragraphs 3

and 10 of this Order shall be binding upon the Debtors in all circumstances.  The

stipulations and admissions contained in paragraphs 3 and 10 of this Order shall be binding

upon all other parties in interest, including, without limitation, the Creditors' Committee,

unless (a) a party-in-interest has timely filed an adversary proceeding or contested matter,

or commenced litigation for authorization to commence such ~~litigation~~**adversary**

**proceeding or contested matter ("Authorization Motion")**, (subject to the limitations

contained herein, including, *inter alia*, in paragraph 17) by no later than January 16, 2006

(or such later date (x) as has been agreed to, in writing, by the Pre-Petition Agent in its sole

discretion or (y) as has been ordered by the Court) (i) challenging the validity,

enforceability, priority or extent of the Pre-Petition Debt or the Pre-Petition Agent's or the

Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral, (ii) seeking a

determination that the Pre-Petition Debt was under-secured as of the Petition Date, or (iii)

otherwise asserting or prosecuting any Avoidance Actions or any other any claims,

counterclaims or causes of action , objections, contests or defenses (collectively, "Claims

and Defenses") against the Pre-Petition Agent or any of the Pre-Petition Secured Lenders

or their respective affiliates, subsidiaries, directors, officers, representatives, attorneys or

advisors in connection with matters related to the Existing Agreements, the Pre-Petition

Debt, or the Pre-Petition Collateral, and (b) there is a final order in favor of the plaintiff

36

sustaining any such challenge or claim in any such timely filed adversary proceeding or

contested matter, *provided* that as to the Debtors, all such Claims and Defenses are hereby

irrevocably waived and relinquished as of the Petition Date other than any such Claims and

Defenses as they relate to the appropriateness of any interest rate charged or claimed by the

Pre-Petition Secured Lenders, including the allowance of any claim for default interest

under Section 2.14 of the Pre-Petition Credit Agreement or the allowance of any claim for

any prepayment premium under Sections 2.10 or 2.11 of the Pre-Petition Credit Agreement.

Subject in each case to the reservation of the Debtors' rights set forth above to contest the

allowance of any claim for default interest on the Pre-Petition Debt or any prepayment

premium, if no such adversary proceeding or contested matter is timely filed (~~or motion or~~

~~other request for authorization to commence such litigation~~**it being understood that such**

**adversary proceeding or contested matter is commenced promptly following a**

**disposition in favor of a movant of an Authorization Motion**), (x) the Pre-Petition Debt

and all related obligations of the Debtors (the "Pre-Petition Obligations") shall constitute

allowed claims, not subject to counterclaim, setoff, subordination, recharacterization,

defense or avoidance, for all purposes in the Cases and any subsequent chapter 7 cases, (y)

the Pre-Petition Agent's and the Pre-Petition Secured Lenders' liens on the Pre-Petition

Collateral shall be deemed to have been, as of the Petition Date, legal, valid, binding and

perfected, not subject to defense, counterclaim, recharacterization, subordination or

avoidance and (z) the Pre-Petition Obligations, the Pre-Petition Agent's and the

Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral and the Pre-Petition

Agent and the Pre-Petition Secured Lenders shall not be subject to any other or further

37

challenge by any party-in-interest, and any such party-in-interest shall be enjoined from,

seeking to exercise the rights of the Debtors' estates, including, without limitation, any

successor thereto (including, without limitation, any estate representative or a chapter 7 or

11 trustee appointed or elected for any of the Debtors).  If any such adversary proceeding or

contested matter ~~(or motion or other request for authorization to commence such litigation)~~

is timely filed **(it being understood that such adversary proceeding or contested**

**matter is commenced promptly following a disposition in favor of a movant of an**

**Authorization Motion)**, the stipulations and admissions contained in paragraphs 3  and 10

of this Order shall nonetheless remain binding and preclusive (as provided in the second

sentence of this paragraph) on any official committee (including the Creditors' Committee)

and on any other person or entity, except to the extent that such findings and admissions

were expressly challenged in such adversary proceeding or contested matter (~~or motion or~~

~~other request for authorization to commence such litigation~~**it being understood that such**

**adversary proceeding or contested matter is commenced promptly following a**

**disposition in favor of a movant of an Authorization Motion**).  Nothing in this Order

vests or confers on any Person (as defined in the Bankruptcy Code), including the

Creditors' Committee, standing or authority to pursue any cause of action belonging to the

Debtors or their estates, including, without limitation, Claims and Defenses with respect to

the Existing Agreements or the Pre-Petition Obligations.

      17.    *Limitation On Use Of Financing Proceeds And Collateral.*

Notwithstanding anything herein or in any other order by this Court to the contrary, no

borrowings, letters of credit, Cash Collateral, Pre-Petition Collateral, Collateral or the

Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents or the Existing Agreements, or the liens or claims granted under this Order, the DIP Documents or the Existing Agreements, (b) assert any Claims and Defenses or any other causes of action against the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders or their respective agents, affiliates, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the Agent's or the Pre-Petition Agent's assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with the DIP Documents, the Existing Agreements or this Order, (d) seek to modify any of the rights granted to the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders hereunder or under the DIP Documents or the Existing Agreements, in each of the foregoing cases without such parties' prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii) in accordance with the DIP Credit Agreement or otherwise approved by the Agent in its sole discretion; *provided* that, notwithstanding anything to the contrary herein, the Creditors' Committee shall be limited to $250,000 to perform the investigations contemplated hereby and no other official committee shall be authorized to perform such investigations.

18.    *Setoff, Replacement Liens and Junior Adequate Protection Liens.*  To the extent that a customer or supplier of the Debtors that has an allowable setoff claim under section 506 or 553 of the Bankruptcy Code in respect of its payables owed to any Debtor as

of the Petition Date ("Pre-Petition Payables") or a valid right of recoupment that arose prior to the Petition Date (such setoff claim or right of recoupment, "Setoff"), such customer or supplier (a "Setoff Claimant") is hereby provided with **certain rights and** adequate protection as described below.  For the avoidance of doubt, nothing herein shall be construed to be an admission or acknowledgement, or an increase or decrease in the monetary amount of the pre-petition setoff rights of any person, under the Bankruptcy Code, applicable non-bankruptcy law or otherwise~~, as such rights existed as of the Petition Date~~.

       (a)     Exercise of Set Off.  (1)~~Notwithstanding the effect of the stay imposed~~  **Any exercise of a Setoff Right (as defined below) in accordance with this Order shall not be stayed** by section 362~~(a) of the Bankruptcy Code and except as hereinafter provided, a~~ **of the Bankruptcy Code.  Any exercise of any right of Setoff other than in accordance with this Order is subject to section 362 of the Bankruptcy Code.  Nothing in this Order shall prevent any holder of a right of Setoff from seeking relief from the automatic stay with respect to such Setoff, or prevent the Debtors or any party in interest from objecting or being heard with respect to any such request.  A** Setoff Claimant shall**, in accordance with this paragraph,** be entitled to exercise its Setoff ~~solely in respect of its Pre-Petition Payables~~ that arose in the ordinary course of business ~~as determined pursuant to this paragraph~~ for any claims or recoupment defenses ~~("Qualifying Claims and Defenses")~~ arising from or related to the ~~Debtors'~~**claims for** prepetition warranty ~~programs~~**and/or product recall claims**, customer adjustments,

customer rebates and allowances, overpricing claims, claims for short shipments and damaged goods**, customer/supplier netting** and other similar claims arising in the ordinary course of business of the relevant parties other than any such claims or recoupment defenses arising as a result of the filing of the cases (a "Setoff Right").  A Setoff Right shall not include any claims or recoupment defenses arising from or related to employee or employee benefit matters, retiree benefit or pension matters, including, without limitation, any related indemnities or guarantees, the rejection of executory contracts, or consequential or punitive damages.  The determination as to whether a ~~Qualifying Claim or Defense gives rise to~~**Setoff Claimant may exercise** a "Setoff Right" will be made solely by (i) the agreement of the Setoff Claimant, the Creditors' Committee and the Debtors, (ii) pursuant to the procedures hereinafter set forth or (iii) order of the Court.

(2)    Any Setoff Claimant seeking to exercise a Setoff Right against payables during any month (whether against Pre-Petition Payables or post-petition payables) shall submit to the Debtors and the Creditors' Committee (with a copy to the Agent) a written request to exercise such Setoff Right, the basis for such Setoff Right and reasonably detailed documentation supporting such Setoff Right.  If the Setoff Claimant, the Creditors' Committee and the Debtors fail to agree in writing that any amount is included in a Setoff Right within 10 Business Days after submission of such information to the Debtors and the Creditors' Committee (the "Agreement Deadline"), the Debtors and such Setoff Claimant shall (unless all such parties agree to extend such 10 Business Day period) seek resolution of such matter through a mediator agreed to by the Debtors and

41

such Setoff Claimant or appointed by this Court.  Such mediation shall end not later than

30 days after the ~~appointment of such mediator~~**Agreement Deadline** unless such period is

extended by agreement of the Debtors and such Setoff Claimant.  If the Debtors and such

Setoff Claimant cannot resolve the matter through such mediation, then such matter will be

submitted to binding arbitration to a single arbitrator agreed to by all such parties or

appointed by this Court, and such parties shall request that such arbitrator issue its ruling

within 90 days after the Agreement Deadline.  Notwithstanding any award in any such

arbitration, in no event shall the Setoff Claimant be permitted to exercise its Setoff Right

against any payables other than Pre-Petition Payables except ~~to the extent expressly~~

~~permitted by the Debtors,~~ as hereinafter set forth.

       (3)     In the event any Setoff Claimants (the "Non-Exercising Setoff

Claimants") have not exercised their asserted Setoff Rights in respect of their respective

Pre-Petition Payables and have instead paid their Pre-Petition Payables to the Debtors, in

addition to any other adequate protection provided to such Non-Exercising Setoff

Claimants herein, the Non-Exercising Setoff Claimants may exercise Setoff Rights

established in accordance with this paragraph against post-petition payables owed by such

Non-Exercising Setoff Claimants to the Debtor or Debtors against which such

Non-Exercising Setoff Claimants have their Setoff Rights; *provided* that (a) in the case of

the exercise of any Setoff Rights by General Motors Corporation or any of its affiliates

("GM"), the aggregate amount of Setoff Rights that ~~the Debtors~~ may ~~authorize to~~ be

exercised pursuant to this subparagraph (3) against **Pre-Petition Payables or** post-petition

payables owed by GM to the Debtors during any month shall not exceed $35 million (the "Aggregate Monthly Cap Amount") and (e**b**) to the extent Setoff Rights are recognized in accordance with this Order in excess of the Setoff Rights that are permitted to be exercised pursuant to such limitations, Setoff Claimants may carry forward their Setoff Right to succeeding months, subject to the applicable monthly limitations, if any, until such Setoff Rights have been fully exercised.

(4)      **(a)** Except as set forth above, and subject to the adequate protection provided to Setoff Claimants as herein set forth, Setoff Claimants shall not be permitted to exercise any Setoff until the later of (x) the effective date of the Debtors' confirmed plan of reorganization and (y) allowance of the Setoff as a claim in these Cases.  Any exercise of Setoff pursuant to (x) or (y) above is subject to the treatment afforded to such Setoff under a plan of reorganization confirmed by the Bankruptcy Court.  Nothing contained herein shall ~~(i)~~ limit **(i)** the discretion of the Debtors to pay warranty and/or product recall claims in accordance with orders of the Court ~~or~~**,** (ii) ~~limit~~ the right of any party in interest to exercise a post-petition ~~Setoff Right~~**setoff or recoupment** against a post ~~petition payable in respect of a Qualifying Claim or Defense arising after the commencement of the Cases~~**-petition payable or (iii) the right of a Setoff Claimant to request further adequate protection (or the Debtors or any party in interest to oppose any such request)**.

(b)      Adequate Protection.  Setoff Claimant is entitled, pursuant to sections 361, 362(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of its

43

Setoff ~~Rights in its Pre-Petition Payables~~ to the extent it does not exercise such Setoff

~~Right~~ and remits the amount ~~subject to such Setoff Right to the Debtors~~**of such**

**Pre-Petition Payables not setoff or recouped**.  As adequate protection, Setoff Claimant

is hereby granted, effective upon payment to the Debtors of the amount subject to such

Setoff ~~Right~~, the following (collectively, the "Junior Adequate Protection Liens"):

(i)    A replacement lien (the "Replacement Lien") on such Setoff

Claimant's post-petition payables to the extent that it is determined that such Setoff

Claimant had a Setoff ~~Right~~ in respect of the Pre-Petition Payables that have been remitted

to the Debtors, which Replacement Lien is limited to the **amount of the** Setoff ~~that could~~

~~have been validly asserted at the time such Pre-Petition Payable was due and owing~~;

*provided, however*, that (i) the Debtors reserve their rights to any and all Claims and

Defenses that may be asserted with respect to such Setoff ~~Rights~~ and (ii) the Replacement

Liens are subject and subordinate to and only to (x) the security interests and liens granted

to the Agent for the benefit of the DIP Lenders in this Order and pursuant to the DIP

Documents and any liens to which such liens so granted to the Agent are junior and (y) the

Carve-Out.

(ii)    As further adequate protection to protect the Setoff Claimant

against any diminution in the value of its Replacement Lien, the Setoff Claimant is hereby

granted a security interest in and lien upon all the other Collateral, subject and subordinate

to and only to (A) the security interests and liens granted to the Agent for the benefit of the

DIP Lenders in this Order and pursuant to the DIP Documents and any liens to which such

liens so granted to the Agent are junior,  (B) the Carve Out and (C) Pre-Petition Secured

44

Lenders' liens on the Pre-Petition Collateral and the Adequate Protection Liens granted to the Pre-Petition Agent and the Pre-Petition Secured Lenders, *provided* that the Setoff Claimant's security interest in and lien upon Collateral which is not (x) Pre-Petition Collateral, (y) Collateral that would have constituted Pre-Petition Collateral ~~in which~~**but for the operation of section 552(a) of the Bankruptcy Code as to which, without further action,** the Pre-Petition Agent would have had a valid and perfected security interest or lien ~~but for the commencement of these cases and without further action~~ or (z) subject to the Replacement Lien shall be *pari passu* with the Adequate Protection Liens granted to the Pre-Petition Agent and the Pre-Petition Secured Lenders in such Collateral.

(iii)    As further Adequate Protection, to the extent that the post-petition payables in respect of which the Setoff Claimant is granted a Replacement Lien are less than the Setoff ~~Rights~~ of such Setoff Claimant, such Setoff Claimant is hereby granted an administrative claim under section 507(b) of the Bankruptcy Code in the amount of such deficiency subject to the Carve Out and equal in priority to the administrative claim granted as adequate protection to the Pre-Petition Secured Lenders in Paragraph 12(b) above; *provided, however*, that the Setoff Claimant shall not receive or retain any payments, property or other amounts in respect of the claims under section 507(b) of the Bankruptcy Code granted hereunder unless and until the DIP Obligations have indefeasibly been paid in cash in full.

19.    *Debtor Reimbursement Claims and Debtor Liens*.  Without limiting the joint and several liability of each of the Debtors for the DIP Obligations, the Debtors shall use their reasonable best efforts to ensure that Debtors that receive the benefit of funds

45

advanced under the Financing repay their share thereof on a dollar for dollar basis.  To the

extent a Debtor (i) incurs any of the DIP Obligations (including as a result of intercompany

balances incurred after the Petition Date to the extent such balances arise from the

incurrence of DIP Obligations) or (ii) receives a postpetition intercompany loan or transfer

(including as a result of the Debtors' cash management system or otherwise) (each a

"Beneficiary Debtor"), and such DIP Obligations were repaid or such postpetition

intercompany loan or transfer is made (including from cash collateral) (each an "Advance")

by (A) any other Debtor that is a Borrower or Guarantor under the Financings or (B) any

non-Debtor affiliate participating in the cash management system (together (A) and (B) an

"Adequately Protected Entity"), the Adequately Protected Entity shall have, subject to the

limitations set forth in paragraph 20 below (a) an allowed claim under sections 364(c)(1)

and 507(b) of the Bankruptcy Code against the Beneficiary Debtor for the amount of such

Advance, having priority over any and all administrative expenses of the kind specified in

sections 503(b) and 507(b) of the Bankruptcy Code, which claim shall bear interest at a rate

agreed between the Debtors from time to time for the period accruing from and after the

date such claim arises until repayment thereof (collectively, the "Debtor Reimbursement

Claim") and (b) a lien on all Collateral under section 364(c)(3) of the Bankruptcy Code

securing such Debtor Reimbursement Claim (a "Debtor Lien").

    20.    All Debtor Reimbursement Claims and Debtor Liens shall be junior, subject

and subordinate to and only to the Superpriority Claims, the DIP Liens, the Adequate

Protection Obligations, Junior Adequate Protection Liens, the Replacement Liens and to

any claims against such Beneficiary Debtor that are expressly senior to, and on a parity

46

with, or carved out from the Superpriority Claims, the DIP Liens, the Adequate Protection

Obligations, Junior Adequate Protection Liens or the Replacement Liens.  All Debtor

Liens shall be "silent" liens and the Adequately Protected Entity shall forbear from

exercising, and shall not be entitled to exercise, any right or remedy relating to any Debtor

Reimbursement Claim or Debtor Lien, including, without limitation, taking any of the

actions that the Pre-Petition Agent, the Pre-Petition Secured Lenders and holders of

Replacement Liens and Junior Adequate Protection Liens are prohibited from taking

pursuant to paragraph 8, including, without limitation, seeking relief from the automatic

stay, or seeking any sale, foreclosure, realization upon repossession or liquidation of any

property of another Debtor, or taking any position with respect to any disposition of the

property, the business operations, or the reorganization of another Debtor. The Agent shall

have the exclusive right to manage, perform and enforce all rights and remedies described

in the preceding sentence and in the DIP Documents.  The Debtor Lien of the Adequately

Protected Entity automatically, and without further action of any person or entity of any

kind, shall be released or otherwise terminated to the extent that property subject to such

Debtor Lien is sold or otherwise disposed of by or on behalf of the Agent or any other

Debtor or to the extent that such property is subject to a lien prior to the DIP Liens and such

lien is permitted under the DIP Documents.

21.    With respect to the effect of Debtor Liens on any sale of property by the

Debtors, (a) the Debtors may sell property, in accordance with section 363 of the

Bankruptcy Code, free and clear of any Debtor Lien, with such lien attaching to the

proceeds of sale in the same priority and subject to the same limitations and restrictions as

existed in respect of the property sold and (b) the provisions of section 363(k) of the
Bankruptcy Code shall not apply.

22.    *JPMCB As Collateral Agent*.  To the extent JPMCB, in its role as Collateral
Agent under the Existing Agreements, is the secured party under any Control Agreements
(as defined in the Existing Agreements), listed as loss payee under the Debtors' insurance
policies as required under the Guarantee and Collateral Agreement or is the secured party
under any other Existing Agreement, JPMCB, in its role as Collateral Agent under the DIP
Credit Agreement, is also deemed to be the secured party under such Control Agreements,
loss payee under the Debtors' insurance policies and the secured party under any other
Existing Agreement and shall act in that capacity and distribute any proceeds recovered or
received first, for the benefit of the DIP Lenders in accordance with the DIP Credit
Agreement and second, subsequent to indefeasible payment in full of all DIP Obligations,
for the benefit of the Pre-Petition Secured Lenders under the Existing Agreements.

23.    *Order Governs*.  In the event of any inconsistency between the provisions of
this Order and the DIP Documents, the provisions of this Order shall govern.  **The terms of
this Order shall govern to the extent of any inconsistency between this Order and
that certain Cash Management Order dated October 14, 2005, including, without
limitation, with respect to the matters set forth in paragraphs 19 to 21 of this Order.**

24.    *Binding Effect; Successors And Assigns*.  The DIP Documents and the
provisions of this Order, including all findings herein, shall be binding upon all parties in
interest in these Cases, including, without limitation, the Agent, the DIP Lenders, the
Pre-Petition Agent, the Pre-Petition Secured Lenders, any party granted a Junior Adequate

Protection Lien hereunder, any Committee appointed in these Cases, and the Debtors, for themselves and not for their estates, and their respective successors and assigns and shall inure to the benefit of the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, any party granted a Replacement Lien or Junior Adequate Protection Lien, and the Debtors and their respective successors and assigns; *provided*, *however*, that the Agent, the Pre-Petition Agent, the DIP Lenders and the Pre-Petition Secured Lenders shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan under the DIP Credit Agreement, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the Agent, the Pre-Petition Agent, the DIP Lenders and the Pre-Petition Secured Lenders shall not be deemed to be in control of the operations of the Debtors or to be acting as a "responsible person" or "owner or operator" with respect to the operation or management of the Debtors (as such terms, or any similar terms, are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any similar federal or state statute).

25.    *Aircraft Leases.*  Notwithstanding anything to the contrary contained in this Order, no DIP Liens or any other liens or interests granted, authorized or contemplated herein shall attach to any interests of Delphi Automotive Systems Human Resources, LLC ("Delphi HR") in two leases of aircraft, both of which are dated March 30, 2001 between Bank of America, N.A., and Delphi HR (the "Aircraft Leases"), or in any personal property that is the subject of the Aircraft Leases. ~~The terms of this Order shall govern~~

49

~~to the extent of any inconsistency between this Order and that certain Cash Management Order dated October 14, 2005, including, without limitation, with respect to the matters set forth in paragraphs 19 to 21 of this Order.~~

26.    *Objections Overruled*.  Any Objection which has not been withdrawn or resolved is, to the extent not resolved, hereby overruled.

27.    *Committee Notices*.  All notices to be provided to the Creditors' Committee shall be sent to Latham & Watkins LLP, 885 Third Avenue, Suite 1000, New York, NY 10022-4834, Attn: Robert Rosenberg, Esq.

Dated:    October __, 2005
           New York, New York

_____
          UNITED STATES BANKRUPTCY JUDGE