UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                          :

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FINAL ORDER UNDER 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), AND 364(e) AND FED. R. BANKR. P. 2002, 4001 AND 9014 (I) AUTHORIZING DEBTORS TO OBTAIN POSTPETITION FINANCING, (II) TO UTILIZE CASH COLLATERAL AND (III) GRANTING ADEQUATE PROTECTION TO PREPETITION SECURED PARTIES

("FINAL DIP FINANCING ORDER")

Upon the motion, dated October 8, 2005 (the "Motion"), of Delphi Corporation (the "Borrower") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for interim and final orders under sections 105, 361, 362, 363(c), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1) and 364(e) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), and Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), seeking, among other things:

> (1)  authorization for the Borrower to obtain post petition financing (the "Financing"), and for all of the other Debtors (the "Guarantors") to guaranty the Borrower's obligations in connection with the Financing, up to the aggregate principal amount of $2,000,000,000 (the actual available principal amount at any time being subject to those conditions set forth in

the DIP Documents (as defined below)), pursuant to a credit facility with JPMorgan Chase Bank, N.A. ("JPMCB"), acting as Administrative Agent (in such capacity, the "Agent") for itself and a syndicate of financial institutions (together with JPMCB and including the fronting and issuing banks for the letters of credit, the "DIP Lenders"), and Citicorp USA, Inc. ("CUSA") as Syndication Agent, to be arranged by J.P. Morgan Securities Inc. and Citigroup Global Markets, Inc. (the "Joint Lead Arrangers");

(2)  authorization for the Debtors to execute and enter into the DIP Documents and to perform such other and further acts as may be required in connection with the DIP Documents;

(3)  the granting of adequate protection to the lenders (the "Pre-Petition Secured Lenders") under that certain Third Amended and Restated Credit Agreement, dated as of June 14, 2005 (as heretofore amended, supplemented or otherwise modified, the "Pre-Petition Credit Agreement"), among the Borrower, the several lenders from time to time party thereto, and JPMCB, as administrative agent for the Pre-Petition Secured Lenders (in such capacity, the "Pre-Petition Agent"), and in connection with that certain Guarantee and Collateral Agreement, dated as of June 14, 2005, by the Borrower and certain of its subsidiaries, in favor of the Pre-Petition Agent (as heretofore amended, supplemented or otherwise modified, the "Guarantee and Collateral Agreement" and,

2

collectively with the Pre-Petition Credit Agreement, and the mortgages and all other documentation executed in connection therewith, the "Existing Agreements"), whose liens and security interests are being primed by the Financing;

(4)  authorization for the Debtors to use cash collateral (as such term is defined in the Bankruptcy Code) in which the Pre-Petition Secured Lenders have an interest, and the granting of adequate protection to the Pre-Petition Secured Lenders with respect to, *inter alia*, such use of their cash collateral and all use and diminution in the value of their interest in the Pre-Petition Collateral (as defined below);

(5)  approval of certain stipulations by the Debtors with respect to the Existing Agreements and the liens and security interests arising therefrom, that are "Extraordinary Provisions" (each an "Extraordinary Provision") under General Order No. M-274 of the United States Bankruptcy Court for the Southern District of New York (the "General Order");

(6)  permission to accelerate Borrowings and the termination of the Commitments under the DIP Credit Agreement upon (a) a Change of Control (as each such term is defined in the DIP Credit Agreement) or (b) the entry of an order or orders granting relief from the automatic stay applicable under section 362 of the Bankruptcy Code to the holder or

3

holders of any security interest to permit foreclosure (or the granting of a

deed in lieu of foreclosure or the like) on any assets of the Borrower or

any of the Guarantors which have a value in excess of $20 million in the

aggregate, which are Extraordinary Provisions under the General Order;

(7) subject and only effective upon the entry of a final order

granting such relief, the limitation of the Debtors' right to surcharge

against collateral pursuant to section 506(c) of the Bankruptcy Code,

which is an Extraordinary Provision under the General Order;

(8) pursuant to Bankruptcy Rule 4001, that an interim hearing (the

"Interim Hearing") on the Motion be held before this Court to consider

entry of the proposed interim order annexed to the Motion (the "Interim

Order") (a) authorizing the Borrower, on an interim basis, to forthwith

borrow or obtain letters of credit from the DIP Lenders under the DIP

Documents up to an aggregate principal or face amount not to exceed

$950,000,000 (subject to any limitations of borrowings under the DIP

Documents), (b) authorizing the Debtors' use of cash collateral, and (c)

granting the adequate protection described therein; and

(9)  that this Court schedule a final hearing (the "Final Hearing") to

be held within 45 days of the entry of the Interim Order to consider entry

of a final order authorizing the balance of the borrowings and letter of

credit issuances under the DIP Documents on a final basis, as set forth in

the Motion and the DIP Documents filed with this Court (the "Final

Order").

The Interim Hearing having been held by this Court on October 11, 2005, at

which the Court issued and entered the Interim Order among other things (a) authorizing

the Borrower to borrow or obtain letters of credit up to an aggregate principal or face

amount of $950,000,000 of the Financing from the DIP Lenders as provided for in the

Interim Order and (b) scheduling the Final Hearing to consider entry of an order

authorizing the balance of the Financing, all as set forth in the Motion, the Interim Order,

this Final Order and the loan documentation filed with this Court; and

the Final Hearing having been held by this Court on October 27, 2005 at

10:00 a.m.; and

due and appropriate notice of the Motion, the relief requested therein, the Interim

Hearing and the Final Hearing having been served by the Debtors on the fifty largest

unsecured creditors of the Debtors, on the Agent, the DIP Lenders, the Prepetition Agent,

the Prepetition Secured Lenders, the indenture trustee for the Debtors' senior noteholders,

known holders of prepetition liens against the Debtors' property and the United States

Trustee for the Southern District of New York; and

objections to the Motion having been filed by Bank of America Leasing & Capital

(Docket Nos. 70 and 565), LLC, the Ad Hoc Committee of Prepetition Secured Lenders

(Docket Nos. 101 and 553), Venture Plastics, Inc. (Docket No. 436), Gibbs Die Casting

Corporation (Docket No. 455), DaimlerChrysler Corporation (Docket No. 450),

Mercedes-Benz U.S. International, Inc. (Docket No. 436), Autocam Corporation (Docket

No. 459), Lorentson Manufacturing Company Southwest, Inc. (Docket No. 461),

Lorentson Manufacturing Company, Inc. (Docket No. 458), Calsonic Kansei North

America, Inc. (442), Decatur Plastic Products, Inc. (Docket No. 451), Pension Benefit

Guaranty Corporation (Docket No. 437), Ford Motor Company (Docket Nos. 495 and

623), Freescale Semiconductor, Inc. (Docket No. 501), Nissan North America, Inc.

(Docket No. 503), Fujikura America, Inc. (Docket Nos. 506 and 648), Murata Electronics

North America, Inc. (Docket Nos. 507 and 649), Flextronics International Asia Pacific

Ltd. and Flextronics Technology (M) Sdn. Bhd. (Docket No. 511) Multek Flexible

Circuits, Inc., Sheldahl de Mexico S.A. de C.V. and Northfield Acquisition Co. (Docket

No. 512) , Omega Tool Corp., L&W Engineering Co., Southtec, LLC, DOTT Industries,

Inc., ALPS Automotive, Inc., Pioneer Automotive Technologies, Inc., Lakeside Plastics

Limited, Android Industries, Inc., Ai-Doraville, LLC, and Ai-Genesee, LLC (Docket No.

551), Honda of America Manufacturing, Inc. (Docket No. 577), OSRAM Opto

Semiconductors Inc. (Docket No. 589), Worthington Steel Company and Worthington

Steel of Michigan, Inc. (Docket No. 590), Hitachi Automotive Products (Docket No.

591), National Molding Corp. and Security Plastics Division/NMC, LLC (Docket No.

600), Arneses Electronics Automotrices, S.A. de C.V. and Cordaflex, S.A. de C.V.

(Docket No. 619), Neuman Aluminum Automotive, Inc., Neuman Aluminum Impact

Extrusion, Inc. (Docket No. 631), Magna International, Inc. and certain of its foreign and

domestic affiliates (Docket No. 632), A. Schulman, Inc. (Docket No. 634), the Creditors'

6

Committee (as hereinafter defined) (Docket No. 641), Textron Fastening Systems, Inc.

(Docket No. 643), ARC Automotive, Inc. (Docket No. 646), XM Satellite Radio Inc.

(Docket No. 651), General Motors Corporation (Docket No. 658), Benteler Automotive

Corp. (Docket No. 695), Pentastar Aviation, LLC (Docket Nos. 683 and 684) Lear

Corporation (Docket Nos. 676 and 678), American Axle & Manufacturing, Inc. (Docket

Nos. 679 and 682), Robert Bosch Corporation  (Docket No. 428) and Semiconductor

Components Industries, LLC (Docket No. 701)[1] (and any other objections filed or raised

at the Final Hearing, collectively, the "Objections"); and

upon the record made by the Debtors at the Interim Hearing and the Final

Hearing, including the representations and clarifications on the record by counsel to the

Debtors and for the Agent and the Pre-Petition Agent; and all Objections having been

resolved on the record, and after due deliberation and consideration and sufficient cause

appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.      *Jurisdiction*.  This Court has core jurisdiction over the Cases, this Motion,

and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.

Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      *Notice*.  Under the circumstances, the notice given by the Debtors of the

Motion, the Interim Hearing, and the Final Hearing constitutes due and sufficient notice

thereof and complies with Bankruptcy Rules 4001(b) and (c).

---

[1]    Inclusive of objections filed prior to 11:00 p.m. on October 26, 2005.

3.      *Debtors' Stipulations*.  Without prejudice to the rights of any other party (but subject to the limitations thereon and the reservation of the Debtors' rights contained in paragraph 16 below), the Debtors, for themselves and not for their estates, admit, stipulate, and agree that:

(a)      (i) as of the filing of the Debtors' chapter 11 petitions (the "Petition Date"), (x) the Borrower was indebted and liable to the Pre-Petition Secured Lenders, without defense, counterclaim or offset of any kind, in the aggregate principal amount of approximately $2,488,329,620.59 in respect of loans made and in the aggregate face amount of approximately $91,453,431.26 in respect of letters of credit issued, in each case, by the Pre-Petition Secured Lenders pursuant to, and in accordance with the terms of, the Existing Agreements, plus, in each case, interest thereon and fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the Existing Agreements), charges and other obligations incurred in connection therewith including, without limitation, amounts owing under "Specified Swap Agreements" (as defined in the Pre-Petition Credit Agreement), as provided in the Existing Agreements (collectively, the "Pre-Petition Debt"), and (y) each Debtor other than the Borrower was contingently liable to the Pre-Petition Secured Lenders in respect of the Pre-Petition Debt owing by the Borrower pursuant to the Guarantee and Collateral Agreement, (ii) the Pre-Petition Debt constitutes the legal, valid and binding obligation of the Debtors, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the

8

Bankruptcy Code), (iii) no portion of the Pre-Petition Debt is subject to avoidance, recharacterization, recovery or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iv) the Debtors do not have, and hereby forever release, any claims, counterclaims, causes of action, defenses or setoff rights, whether arising under the Bankruptcy Code or otherwise, against the Pre-Petition Secured Lenders, the Pre-Petition Agent and their respective affiliates, subsidiaries, agents, officers, directors, employees and attorneys;

(b)     the liens and security interests granted to the Pre-Petition Agent pursuant to and in connection with the Existing Agreements (including, without limitation, all security agreements, pledge agreements, mortgages, deeds of trust, control agreements and other security documents executed by any of the Debtors in favor of the Pre-Petition Agent, for its benefit and for the benefit of the Pre-Petition Secured Lenders) in connection with the Existing Agreements, are (i) valid, binding, perfected, enforceable, first-priority liens and security interests in the personal and real property constituting "Collateral" (as defined in the Existing Agreements) immediately prior to the Petition Date (the "Pre-Petition Collateral"), (ii) not subject to avoidance, recharacterization or subordination pursuant to the Bankruptcy Code or applicable nonbankruptcy law and (iii) subject and subordinate only to (A) the DIP Liens (as defined below), (B) the Carve Out (as defined below) to which the DIP Liens are subject and (C) valid, perfected and unavoidable liens permitted under the Existing Agreements to the extent such permitted

9

liens are senior to or pari passu with the liens of the Pre-Petition Agent on the Pre-

Petition Collateral; and

      (c)     the aggregate value of the Pre-Petition Collateral substantially

exceeds the aggregate amount of the Pre-Petition Debt.

      4.    *Findings Regarding The Financing.*

      (a)     Good cause has been shown for the entry of this Final Order.

      (b)     The Debtors require the remainder of the Financing and use of

Cash Collateral (as defined below) in order to permit, among other things, the orderly

continuation of the operation of their businesses, to maintain business relationships with

vendors, suppliers and customers, to make payroll, to make capital expenditures and to

satisfy other working capital and operational needs.  The access of the Debtors to

sufficient working capital and liquidity through the use of Cash Collateral, incurrence of

new indebtedness for borrowed money and other financial accommodations is vital to the

preservation and maintenance of the going concern values of the Debtors and to a

successful reorganization of the Debtors.

      (c)     The Debtors are unable to obtain financing on more favorable

terms from sources other than the DIP Lenders under the DIP Documents and are unable

to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy

Code as an administrative expense.  The Debtors are also unable to obtain adequate

secured credit allowable under sections 364(c)(1), 364(c)(2) and 364(c)(3) of the

Bankruptcy Code without the Debtors granting to the Agent and the DIP Lenders, subject

10

to the Carve Out as provided for herein, the DIP Liens and the Superpriority Claims (as defined below) under the terms and conditions set forth in the Interim Order, this Order and in the DIP Documents.

(d)    The terms of the Financing and the use of Cash Collateral are fair and reasonable, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties and constitute reasonably equivalent value and fair consideration.

(e)    The Financing has been negotiated in good faith and at arm's length between the Debtors, the Agent and the DIP Lenders, and all of the Debtors' obligations and indebtedness arising under, in respect of or in connection with the Financing and the DIP Documents, including without limitation, (i) all loans made to, and all letters of credit issued for the account of, the Debtors pursuant to the Revolving Credit, Term Loan and Guaranty Agreement substantially in the form attached as Exhibit A to the Motion, as amended by the Amendment No. 1 thereto dated as of October 27, 2005, a copy of which was filed with the Court prior to commencement of the Final Hearing (as so amended, the "DIP Credit Agreement"), and (ii) any "Obligations" and all other "Secured Obligations" (as each such term is defined in the DIP Credit Agreement), including any hedging obligations of the Debtors permitted under the DIP Credit Agreement and any Indebtedness (as defined in the DIP Credit Agreement) permitted by Section 6.03(viii) thereof, in each case owing to JPMCB, any DIP Lender or any of their respective banking affiliates (all of the foregoing in clauses (i) and (ii) collectively,  the "DIP Obligations"), shall be deemed to have been extended by the Agent and the DIP

11

Lenders and their affiliates in good faith, as that term is used in section 364(e) of the

Bankruptcy Code and in express reliance upon the protections offered by section 364(e)

of the Bankruptcy Code, and shall be entitled to the full protection of section 364(e) of

the Bankruptcy Code in the event that this Order or any provision hereof is vacated,

reversed or modified, on appeal or otherwise.

(f)     The Debtors have requested entry of this Order pursuant to

Bankruptcy Rules 4001(b)(2) and 4001(c)(2).  Absent granting the relief sought by this

Order, the Debtors' estates will be immediately and irreparably harmed.  Consummation

of the Financing and the use of Cash Collateral in accordance with this Order and the DIP

Documents is therefore in the best interest of the Debtors' estates.

5.     *Authorization Of The Financing And The DIP Documents.*

(a)     The Debtors are hereby authorized to be a party to the DIP

Documents.  The Borrower is hereby authorized to borrow money and obtain letters of

credit pursuant to the DIP Credit Agreement, and the Guarantors are hereby authorized to

guaranty such borrowings and the Borrower's obligations with respect to such letters of

credit, up to an aggregate principal or face amount, inclusive of amounts authorized by

the Interim Order, of $2,000,000,000 (plus interest, fees and other expenses provided for

in the DIP Documents), subject to any limitations of borrowings under the DIP

Documents, and in accordance with the terms of this Order and the DIP Documents,

which shall be used solely for purposes permitted under the DIP Documents, including,

without limitation, to provide working capital for the Borrower and the Guarantors and

12

for other general corporate purposes and to pay interest, fees and expenses in accordance with this Order and the DIP Documents. In addition to such loans and obligations, the Debtors are authorized to incur overdrafts and related liabilities arising from treasury, depository and cash management services or in connection with any automated clearing house fund transfers provided to or for the benefit of the Debtors by JPMCB, CUSA, any other DIP Lender or any of their respective affiliates; *provided, however*, that nothing herein shall require JPMCB or CUSA or any other party to incur overdrafts or to provide any such services or functions to the Debtors.

(b)    In furtherance of the foregoing and without further approval of this Court, each Debtor is authorized and directed to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing statements), and to pay all fees, that may be reasonably required or necessary for the Debtors' performance of their obligations under the Financing, including, without limitation:

(i)    the execution, delivery and performance of the Loan Documents (as defined in the DIP Credit Agreement) and any exhibits attached thereto, including, without limitation, the DIP Credit Agreement, the Security and Pledge Agreement (as defined in the DIP Credit Agreement) and the mortgages, if any, contemplated thereby (collectively, and together with the letter agreements referred to in clause (iii) below, the "DIP Documents"),

13

(ii)      the execution, delivery and performance of one or more

amendments to the DIP Credit Agreement for, among other things, the purpose of adding

additional financial institutions as DIP Lenders and reallocating the commitments for the

Financing among the DIP Lenders, in each case in such form as the Debtors, the Agent

and the DIP Lenders may agree (it being understood that (A) no further approval of the

Court shall be required for amendments to the DIP Credit Agreement that do not

(i) shorten the maturity of the extensions of credit thereunder, (ii) increase the

commitments, the rate of interest or the letter of credit fees payable thereunder,

(iii) amend the financial covenants in Section 6.04 therein to be more restrictive on the

Debtors or (iv) amend the notice provisions of Section 7.01 therein (i.e., notice of

exercise of remedies after the occurrence of an Event of Default), and (B) the Debtors

shall provide the Creditors' Committee with five (5) business days' prior notice (or such

shorter period as the Creditors' Committee and the Debtors may agree) of any amendment

to the DIP Credit Agreement that causes the Borrowing Base to be decreased).

Notwithstanding any other provision hereof, without further approval of this Court,

amendments to the DIP Documents may be made at any time (x) prior to the Successful

Syndication (as defined in the Second Amended and Restated Fee Letter dated

October 27, 2005 among the Borrower, JPMCB and the Joint Lead Arrangers (the "Fee

Letter")), to the extent contemplated by the Fee Letter (permitting certain modifications

to the DIP Credit Agreement necessary or advisable to ensure a successful syndication),

and (y) as contemplated by the DIP Credit Agreement with respect to the Borrowing Base Amendment.

In addition, Section 2.13 of the DIP Credit Agreement shall be amended to provide for the application of net cash proceeds from asset sales to be subject to mandatory prepayments and permanent reductions of commitments under the Facility or to be held in a cash collateral account maintained with the DIP Agent for the benefit of holders of the liens and claims granted hereunder in the manner set forth below. Notwithstanding anything to the contrary in this Order or the DIP Credit Agreement, the amendments to Section 2.13 of the DIP Credit Agreement set forth in this paragraph 5(b)(iii), (x) are intended, in part, for the benefit of the Pre-Petition Agent and the Pre-Petition Secured Lenders, (y) may be enforced by the Pre-Petition Agent and the Pre-Petition Secured Lenders as though they were parties to the DIP Credit Agreement solely for such purposes and (z) shall survive and remain in full force and effect regardless of the permanent repayment in full of the DIP Obligations or the termination of the DIP Credit Agreement or any provision hereof.  This paragraph 5(b)(iii) shall not be amended, supplemented, waived or otherwise modified without the prior written consent of the Pre-Petition Agent.  Specifically, Section 2.13 will be amended to (i) reorder subsection "(b)" to be subsection "(c)" and (ii) adding a new subsection (b) to read as follows:

> "If on any date the Borrower or any Guarantor shall receive Net Cash Proceeds from (i) any Asset Sale or (ii) any Recovery Event (except to the extent that Net Cash Proceeds received in connection with such Recovery Event are applied within 180 days of receipt thereof to the replacement or repair of the assets giving rise thereto), and in each case, the aggregate amount of all Net Cash Proceeds from Asset Sales and Recovery Events

15

received by the Borrower and the Guarantors from Asset Sales and Recovery Events occurring on and after the Closing Date exceeds $125,000,000 then (without duplication of any reduction to the Borrowing Base as a result of such Asset Sale or Recovery Event), an amount equal to 66-2/3% of such Net Cash Proceeds received on such date shall be promptly, and in any event, within 10 days after such date either (i) first, applied to the prepayment of the Tranche B Loans (with a corresponding permanent reduction of the Total Tranche B Commitments) and second, applied to the prepayment of the Tranche A Loans (with a corresponding permanent reduction of the Total Tranche A Commitments) or (ii) deposited into a cash collateral account maintained with the DIP Agent for the benefit of the holders of Liens and claims granted under the Final DIP Order in the order of priority set forth therein; *provided* that the Borrower shall be permitted to request approval of the Bankruptcy Court to use such proceeds in accordance with Section 363 of the Bankruptcy Code so long as such uses are permitted under the DIP Credit Agreement and subject to the rights of parties in interest to contest such request."

The following related definitions will also be added to the DIP Credit Agreement:

"Asset Sale":  any Disposition of property or series of related Dispositions of property by the Borrower or any Guarantor (excluding any such Disposition permitted by clauses (i), (ii), (iii), (v), (vii) and (viii) of Section 6.10).

"Disposition":  with respect to any property, any sale, lease, sale and leaseback, assignment (other than for security or collection in the ordinary course of business), conveyance, transfer or other disposition thereof.  The terms "Dispose" and "Disposed of" shall have correlative meanings.

"Net Cash Proceeds":  in connection with any Asset Sale or any Recovery Event, the proceeds thereof in the form of cash and Permitted Investments, net of attorneys' fees, accountants' fees, investment banking fees, commissions, premiums, amounts required to be applied to the repayment of Indebtedness secured by a Lien permitted hereunder on any asset that is the subject of such Asset Sale or Recovery Event (other than any Lien pursuant to the Security and Pledge Agreement) and other customary fees and expenses actually incurred in connection therewith and net of taxes paid or reasonably estimated to be payable as a result thereof (after taking into account any available tax credits or deductions and any tax sharing arrangements) and a reasonable reserve for purchase price adjustments and indemnification payments that could reasonably be expected to arise during the term of the Tranche A Loans and the Tranche B Loans;

16

*provided* that in the case of any Asset Sale or Recovery Event in respect of which the Net Cash Proceeds do not exceed $2,500,000, such Net Cash Proceeds shall not be deemed to constitute "Net Cash Proceeds" for purposes of Section 2.13 until the aggregate amount of all such excluded Net Cash Proceeds is at least $10,000,000.

"Recovery Event":  any settlement of or payment in respect of any property or casualty insurance claim or any condemnation proceeding relating to any asset of the Borrower or any Guarantor, in each case in an amount in excess of $5,000,000.

(iii)    the non refundable payment to the Agent, the Joint Lead Arrangers or the DIP Lenders, as the case may be, of the fees referred to in the DIP Credit Agreement (and in the separate letter agreements between them in connection with the Financing) and reasonable costs and expenses as may be due from time to time, including, without limitation, reasonable fees and expenses of the professionals retained as provided for in the DIP Documents, and

(iv)    the performance of all other acts required under or in connection with the DIP Documents.

(c)    The DIP Documents constitute valid and binding obligations of the Debtors, enforceable against each Debtor party thereto in accordance with the terms of the DIP Documents.  No obligation, payment, transfer or grant of security under the DIP Documents or this Order shall be stayed, restrained, voidable, or recoverable under the Bankruptcy Code or under any applicable law (including without limitation, under section 502(d) of the Bankruptcy Code), or subject to any defense, reduction, setoff, recoupment or counterclaim.

17

6.    *Superpriority Claims.*

(a)    Pursuant to section 364(c)(1) of the Bankruptcy Code, all of the

DIP Obligations shall constitute allowed claims against the Debtors with priority over

any and all administrative expenses, diminution claims (including all Adequate

Protection Obligations, Replacement Liens and Junior Adequate Protection Liens (each

as defined below)) and all other claims against the Debtors, now existing or hereafter

arising, of any kind whatsoever, including, without limitation, all administrative expenses

of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and over any

and all administrative expenses or other claims arising under sections 105, 326, 328, 330,

331, 503(b), 506(c), 507(a), 507(b), 726, 1113 or 1114 of the Bankruptcy Code (the

"Superpriority Claims"), whether or not such expenses or claims may become secured by

a judgment lien or other non-consensual lien, levy or attachment (other than to the extent

of any statutory liens or security interests arising after the Petition Date and permitted

under the DIP Credit Agreement that by operation of law would have priority over a

previously perfected security interest), which allowed claims shall be payable from and

have recourse to all pre-petition and post-petition property of the Debtors and all

proceeds thereof, subject only to the payment of the Carve Out to the extent specifically

provided for herein.

(b)    For purposes hereof, the "Carve Out" means (i) all unpaid fees

required to be paid to the Clerk of the Bankruptcy Court and to the Office of the United

States Trustee under section 1930(a) of title 28 of the United States Code, (ii) all fees and

18

expenses incurred by a trustee under Section 726(b) of the Bankruptcy Code, (iii) after

the occurrence and during the continuance of an Event of Default (as defined in the DIP

Credit Agreement), all allowed and unpaid professional fees and disbursements incurred

by the Debtors and any statutory committees appointed in the Cases (each, a

"Committee"), that remain unpaid subsequent to the payment, pro rata with other

nonpriority administrative creditors, of such fees and expenses from available funds

remaining in the Debtors' estates for such creditors, in an aggregate amount not

exceeding $35,000,000, which amount may be used subject to the terms of this Order,

including, without limitation, paragraph 17 hereof, and (iv) all unpaid professional fees

and disbursements incurred or accrued by the Debtors and any Committees at any time

when no Event of Default is continuing (and promptly upon receipt of a notice of an

Event of Default, the Debtors shall provide a copy of such notice to counsel for the

Creditors' Committee), that remain unpaid subsequent to the payment, pro rata with other

nonpriority administrative creditors, of such fees and expenses from available funds

remaining in the Debtors' estates for such creditors, in an aggregate amount not

exceeding the sum of (x) such unpaid professional fees and disbursements reflected on

the most recent Borrowing Base Certificate (as defined in the DIP Credit Agreement)

delivered to the Agent prior to any Event of Default that is then continuing and (y) such

unpaid professional fees and disbursements incurred or accrued after such Borrowing

Base Certificate (but at a time when no Event of Default is continuing) in an aggregate

amount under this clause (y) not exceeding $5,000,000 (and with amounts included in

this clause (y), to be supported by back-up documentation in respect of the amounts and

dates of incurrence of such fees and disbursements), in each of the foregoing clauses (i),

(ii), (iii) and (iv), to the extent allowed by the Bankruptcy Court at any time; *provided*,

*however*, that (1) to the extent the dollar limitation in this clause 6(b) on fees and

disbursements is reduced by any amount as a result of the payment of fees and

disbursements during the continuance of an Event of Default, and such Event of Default

is subsequently cured or waived and no other Event of Default then exists, then effective

as of the effectiveness of such cure or waiver, such dollar limitation shall be increased by

an amount equal to the amount by which it has been so reduced, and (2) (A) nothing

herein shall be construed to impair the ability of any party to object to any of the fees,

expenses, reimbursement or compensation described in clauses (iii) and (iv) above and

(B) following the Termination Date (as defined in the DIP Credit Agreement), cash or

other amounts on deposit in the Letter of Credit Account (as defined in the DIP Credit

Agreement), shall not be subject to the Carve Out.

      7.     *DIP Liens*.

      As security for the DIP Obligations, effective and perfected upon the date of entry

of the Interim Order and without the necessity of the execution, recordation of filings by

the Debtors of mortgages, security agreements, control agreements, pledge agreements,

financing statements or other similar documents, the following security interests and liens

are hereby granted to the Agent for its own benefit and the benefit of the DIP Lenders (all

property identified in clauses (a), (b) and (c) below being collectively referred to as the

"Collateral"), subject, only in the event of the occurrence and during the continuance of
an Event of Default, to the payment of the Carve Out (all such liens and security interests
granted to the Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to
this Order and the DIP Documents, the "DIP Liens"):

        (a)      First Lien On Cash Balances And Unencumbered Property.
Pursuant to section 364(c)(2) of the Bankruptcy Code, a valid, binding, continuing,
enforceable, fully-perfected first priority senior security interest in and lien upon all pre-
petition and post-petition property of the Debtors, whether existing on the Petition Date
or thereafter acquired, to the extent not subject to valid, perfected, non-avoidable and
enforceable liens in existence as of the Petition Date or valid liens in existence as of the
Petition Date that are perfected subsequent to such date to the extent permitted by section
546(b) of the Bankruptcy Code (collectively, "Unencumbered Property"), including
without limitation, all cash and cash collateral of the Debtors (whether maintained with
the Agent or otherwise) and any investment of such cash and cash collateral, inventory,
accounts receivable, other rights to payment whether arising before or after the Petition
Date, contracts, properties, plants, equipment, general intangibles, documents,
instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade
names, other intellectual property, capital stock of subsidiaries, and the proceeds of all
the foregoing, *provided*, *however*, that the Borrower and the Guarantors shall not be
required to pledge to the Agent in excess of 65% of the voting capital stock of its direct
Foreign Subsidiaries or any of the capital stock or interests of its indirect Foreign

21

Subsidiaries (if, in the good faith judgment of the Borrower, adverse tax consequences would result to the Borrower). Unencumbered Property shall exclude the Debtors' claims and causes of action under sections 502(d), 544, 545, 547, 548, 549, 550 and 553(b) of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "Avoidance Actions"), and any proceeds or property recovered, unencumbered or otherwise the subject of successful Avoidance Actions.

(b)     Liens Priming Pre-Petition Secured Lenders' Liens. Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre-petition and post-petition property of the Debtors (including, without limitation, cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, equipment, general intangibles, documents, instruments, interests in leaseholds, real properties, patents, copyrights, trademarks, trade names, other intellectual property, capital stock of subsidiaries, and the proceeds of all the foregoing), whether now existing or hereafter acquired, that is subject to the existing liens presently securing the Pre-Petition Debt (including in respect of issued but undrawn letters of credit). Such security interests and liens shall be senior in all respects to the interests in such property of the Pre-Petition Secured Lenders arising from current and future liens of the Pre-Petition Secured Lenders (including, without limitation, adequate protection liens granted hereunder), and shall be subject and subordinate to (i) the Carve Out (except as provided in paragraph 6 hereof), (ii) any valid,

22

perfected and unavoidable interests of other parties arising out of liens, if any, on such

property existing immediately prior to the Petition Date, (iii) any valid, perfected and

unavoidable interests in such property arising out of liens to which the liens of the Pre-

Petition Secured Lenders become subject subsequent to the Petition Date as permitted by

section 546(b) of the Bankruptcy Code and (iv) statutory liens or security interests arising

after the Petition Date and permitted under the DIP Credit Agreement that by operation of

law would have priority over a previously perfected security interest.

(c)    Liens Junior To Certain Other Liens.  Pursuant to section 364(c)(3)

of the Bankruptcy Code, valid, binding, continuing, enforceable, fully-perfected security

interests in and liens upon all pre-petition and post-petition property of the Debtors (other

than the property described in clauses (a) or (b) of this paragraph 7, as to which the liens

and security interests in favor of the Agent will be as described in such clauses), whether

now existing or hereafter acquired, that is subject to valid, perfected and unavoidable

liens and, as to Pre-Petition Payables and Setoffs (each as defined below) in existence

immediately prior to the Petition Date or to valid and unavoidable liens in existence

immediately prior to the Petition Date that are perfected subsequent to the Petition Date

as permitted by section 546(b) of the Bankruptcy Code, which security interests and liens

in favor of the Agent and the Lenders are junior to such valid, perfected and unavoidable

liens and Setoffs.

(d)    Liens Senior To Certain Other Liens.  The DIP Liens, the

Adequate Protection Liens, the Replacement Liens and the Junior Adequate Protection

23

Liens (each as defined below) shall not be subject or subordinate to (i) solely in the case

of the DIP Liens, any lien or security interest that is avoided and preserved for the benefit

of the Debtors and their estates under section 551 of the Bankruptcy Code or (ii) any liens

arising after the Petition Date including, without limitation, any liens or security interests

granted in favor of any federal, state, municipal or other governmental unit, commission,

board or court for any liability of the Debtors other than with respect to any liens or

security interests arising after the Petition Date and permitted under the DIP Credit

Agreement to be senior to the DIP Liens.

    8.    *Protection Of DIP Lenders' Rights.*

        (a)    So long as there are any borrowings or letters of credit or other

amounts (other than contingent indemnity obligations as to which no claim has been

asserted when all other amounts have been paid and no letters or credit are outstanding)

outstanding, or the DIP Lenders have any Commitment (as defined in the DIP Credit

Agreement) under the DIP Credit Agreement, the Pre-Petition Agent, the Pre-Petition

Secured Lenders, the holders of Replacement Liens, the holders of Junior Adequate

Protection Liens and the holders of Debtor Liens (as defined below) shall (i) take no

action to foreclose upon or recover in connection with the liens granted thereto pursuant

to the Existing Agreements or this Order, or otherwise exercise remedies against any

Collateral, except to the extent authorized by an order of this Court and (ii) be deemed to

have consented to any release of Collateral authorized under the DIP Documents,

*provided* that the Pre-Petition Agent and any Pre-Petition Secured Lender may appear

24

and be heard as a party in interest in connection with any proceeding relating to the sale,

transfer or other disposition of any Collateral and (iii) not file any further financing

statements, trademark filings, copyright filings, mortgages, notices of lien or similar

instruments, or otherwise take any action to perfect their security interests in the

Collateral unless solely as to this clause (iii), the DIP Lenders file financing statements or

other documents to perfect the liens granted pursuant to this Order, or as may be required

by applicable state law to continue the perfection of valid and unavoidable liens or

security interests as of the Petition Date. Notwithstanding the foregoing, the Pre-Petition

Secured Lenders shall be permitted to file pleadings with respect to any proposed sale,

transfer or other disposition of the Collateral by the Debtors outside the ordinary course

of business so long as such pleadings do not contravene the provisions of this paragraph 8

and do not otherwise interfere with the exercise of any right or remedy by the Agent or

the DIP Lenders.  Nothing herein shall be read to permit the Pre-Petition Agent, the Pre-

Petition Secured Lenders, or the holders of Replacement Liens, the holders of Junior

Adequate Protection Liens or the holders of Debtor Liens to take any action in violation

of the Bankruptcy Code or other applicable law.  This paragraph 8(a) defines the relative

rights of the DIP Agent and the DIP Lenders, on the one hand, and the Pre-Petition Agent

and the Pre-Petition Secured Lenders, on the other, and is not intended to confer any

rights on the Debtors except with respect to the Debtor Liens.

　　　　　(b)　　　The automatic stay provisions of section 362 of the Bankruptcy

Code are vacated and modified to the extent necessary to permit the Agent and the DIP

Lenders to exercise, (i) immediately upon the occurrence of an Event of Default, all

rights and remedies under the DIP Documents other than those rights and remedies

against the Collateral as provided in clause (ii) below, and (ii) upon the occurrence and

during the continuance of an Event of Default and the giving of five business days prior

written notice to the extent provided for in the DIP Credit Agreement (promptly upon

receipt of such notice, the Debtors shall provide a copy of such notice to counsel for the

Creditors' Committee), all rights and remedies against the Collateral provided for in the

DIP Documents (including, without limitation, the right to setoff monies of the Debtors

in accounts maintained with the Agent or any DIP Lender).  In any hearing regarding any

exercise of rights or remedies, the only issue that may be raised by any party in

opposition thereto shall be whether, in fact, an Event of Default has occurred and is

continuing, and the Debtors, the Pre-Petition Agent, the Pre-Petition Secured Lenders,

and the holders of Replacement Liens or Junior Adequate Protection Liens hereby waive

in such capacities, but not in capacities as holders of general unsecured claims, their right

to seek relief, including, without limitation, under section 105 of the Bankruptcy Code, to

the extent such relief would in any way impair or restrict the rights and remedies of the

Agent or the DIP Lenders set forth in this Order or the DIP Documents.  In no event shall

the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, or

the holders of Replacement Liens or Junior Adequate Protection Liens be subject to the

equitable doctrine of "marshaling" or any similar doctrine with respect to the Collateral.

9.      *Limitation On Charging Expenses Against Collateral*.  Except to the extent of the Carve Out, no expenses of administration of the Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the Collateral pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the Agent or the Pre-Petition Agent, as the case may be, and no such consent shall be implied from any other action, inaction, or acquiescence by the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders.

10.     *The Cash Collateral*.  To the extent any funds of any Debtor party to the Existing Agreements (other than funds in accounts subject to lock-box arrangements under the Debtors' receivables financing) were on deposit with the Pre-Petition Secured Lenders as of the Petition Date, including, without limitation, all such funds deposited in, or credited to, an account of any Debtor party to the Existing Agreements with any Pre-Petition Secured Lender immediately prior to the filing of the Debtors' bankruptcy petitions (the "Petition Time") (regardless of whether, as of the Petition Time, such funds had been collected or made available for withdrawal by any such Debtor), such funds (the "Deposited Funds") are subject to rights of setoff.  By virtue of such setoff rights, the Deposited Funds are subject to a lien in favor of such Pre-Petition Secured Lenders pursuant to sections 506(a) and 553 of the Bankruptcy Code.  The Pre-Petition Secured Lenders are obligated, to the extent provided in the Existing Agreements, to share the

27

benefit of such liens and setoff rights with the other Pre-Petition Secured Lenders party to

such Existing Agreements.  The cash of the Debtors party to the Existing Agreements,

including, without limitation, the Deposited Funds or any other funds on deposit at the

Pre-Petition Secured Lenders as of the Petition Date, and any proceeds generated by the

collection of accounts receivable, sale of inventory or other disposition of the Pre-Petition

Collateral are cash collateral of the Pre-Petition Secured Lenders within the meaning of

section 363(a) of the Bankruptcy Code, and all such "cash collateral" is referred to herein

as "Cash Collateral."  The Pre-Petition Secured Lenders have objected to the use by the

Debtors of the Pre-Petition Collateral, including Cash Collateral, except on the terms of

this Order.

   11. *Use Of Cash Collateral.*  The Debtors are hereby authorized to use all

Cash Collateral of the Pre-Petition Secured Lenders and of the holders of Replacement

Liens or Junior Adequate Protection Liens, and the Pre-Petition Secured Lenders and the

holders of Replacement Liens or Adequate Protection Liens are directed promptly to turn

over to the Debtors all Cash Collateral received or held by them, *provided* that the Pre-

Petition Secured Lenders and the holders of Replacement Liens or Adequate Protection

Liens are granted adequate protection as hereinafter set forth.  The Debtors' right to use

Cash Collateral shall terminate automatically upon the occurrence of the Termination

Date or the voluntary reduction by the Borrower of the Total Commitments to zero (as

each such term is defined in the DIP Credit Agreement).

12.    *Adequate Protection*.  The Pre-Petition Secured Lenders are entitled, pursuant to sections 361, 363(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of their interest in the Pre-Petition Collateral, including the Cash Collateral, for and equal in amount to the aggregate diminution in the value of their interest in the Pre-Petition Secured Lenders' Pre-Petition Collateral, including, without limitation, any such diminution resulting from the sale, lease or use by the Debtors (or other decline in value) of Cash Collateral and any other Pre-Petition Collateral, the priming of the Pre-Petition Agent's security interests and liens in the Pre-Petition Collateral by the Agent and the DIP Lenders pursuant to the DIP Documents and this Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.  As adequate protection, the Pre-Petition Agent and the Pre-Petition Secured Lenders are hereby granted the following (collectively, the "Adequate Protection Obligations"), to the extent of such diminution:

(a)    Adequate Protection Liens.  As security for the payment of the Adequate Protection Obligations, the Pre-Petition Agent (for itself and for the benefit of the Pre-Petition Secured Lenders) is hereby granted (effective and perfected as of the Petition Date and without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements) a replacement security interest in and lien upon all the Collateral, subject and subordinate only to (i) the security interests and liens granted to the Agent for the benefit of the DIP Lenders in this Order and pursuant to the DIP Documents and any liens on the Collateral

29

to which such liens so granted to the Agent are junior, (ii) the Replacement Lien (as

hereinafter defined) and (iii) the Carve Out, *provided* that the security interest in and lien

granted to the Pre-Petition Agent pursuant to this paragraph 12(a) upon Collateral that is

not (x) Pre-Petition Collateral or (y) Collateral that would have constituted Pre-Petition

Collateral but for the operation of section 552(a) of the Bankruptcy Code as to which,

without further action, the Pre-Petition Agent would have had a valid and perfected

security interest or lien shall be *pari passu* with the Junior Adequate Protection Liens

granted to any Setoff Claimant in such Collateral pursuant to this Order (the "Adequate

Protection Liens");

       (b)      <u>Section 507(b) Claim</u>.  The Pre-Petition Agent and the Pre-Petition

Secured Lenders are hereby granted, subject to the payment of the Carve Out and to the

payment of all reasonable fees, costs and expenses (including the professional fees and

expenses) incurred by or on behalf of the Debtors' estates in the pursuit of Avoidance

Actions, a superpriority claim as provided for in section 507(b) of the Bankruptcy Code

equal in priority to the priority granted to the Setoff Claimants in paragraph 18(b) below,

limited in amount to the aggregate diminution in value of the Pre-Petition Secured

Lenders' interest in the Pre-Petition Collateral, including, without limitation, any such

diminution resulting from the sale, lease or use by the Debtors (or other decline in value)

of Cash Collateral and any other Pre-Petition Collateral, the priming of the Pre-Petition

Agent's security interests and liens in the Pre-Petition Collateral by the Agent and the

DIP Lenders pursuant to the DIP Documents and this Order, and the imposition of the

automatic stay pursuant to section 362 of the Bankruptcy Code, immediately junior to the

claims under section 364(c)(1) of the Bankruptcy Code held by the Agent and the DIP

Lenders; *provided*, *however*, that the Pre-Petition Agent and the Pre-Petition Secured

Lenders shall not receive or retain any payments, property or other amounts in respect of

the superpriority claims under section 507(b) of the Bankruptcy Code granted hereunder

or under the Existing Agreements unless and until the DIP Obligations have indefeasibly

been paid in cash in full;

        (c)     <u>Interest, Fees, And Expenses</u>.  The Pre-Petition Agent shall receive

from the Debtors (i) immediate cash payment of all accrued and unpaid interest on the

Pre-Petition Debt and letter of credit fees at the non-default contract rates provided for in

the Existing Agreements, and all other accrued and unpaid fees and disbursements

payable to or for the benefit of the Pre-Petition Agent under the Existing Agreements and

incurred prior to the Petition Date, including, but not limited to, reasonable fees owed and

amounts to be paid or reimbursed for counsel, financial and other consultants for the Pre-

Petition Agent pursuant to Section 10.6 of the Pre-Petition Credit Agreement, (ii) current

cash payments of all fees and expenses payable to the Pre-Petition Agent under the

Existing Agreements, including, but not limited to, the reasonable fees and disbursements

of counsel, financial and other consultants for the Pre-Petition Agent,  (iii) on the first

business day of each month, all accrued but unpaid interest on the Pre-Petition Debt, and

letter of credit and other fees at the non-default contract rate (including at the option of

the Borrower, the Eurodollar Rate plus the Applicable Margin (each as defined in the

Pre-Petition Credit Agreement)) applicable under the Existing Agreements, *provided* that,

(x) without prejudice to the rights of the Debtors or any other party to contest such

assertion, the Pre-Petition Secured Lenders reserve their rights to assert claims for the

payment of additional interest calculated at any other applicable rate of interest

(including, without limitation, default rates), or on any other basis provided for in the

Existing Agreements, and for the payment of any other amounts provided for in the

Existing Agreements, and (y) notwithstanding anything to the contrary in this Order or

the Pre-Petition Credit Agreement, as to each Pre-Petition Secured Lender which

executes and delivers a written consent in the form to be provided by the Pre-Petition

Agent (which consent shall be in form and substance reasonably satisfactory to the

Borrower), waiving and releasing all claims, if any, in respect of default interest and any

claims related to the early prepayment of the loans, including, without limitation, any

prepayment premiums under the Pre-Petition Credit Agreement, interest shall accrue and

be paid by the Borrower to such Pre-Petition Secured Lender and its assignee(s) on the

first business day of each month at ABR (as defined in the Pre-Petition Credit

Agreement) plus the Applicable Margin in respect of the pre-petition loans held by such

Pre-Petition Secured Lender from and after the later of (a) the expiry of existing LIBOR

contracts and (b) the delivery of such release and waiver, (iv) current cash payment of all

reasonable out-of-pocket expenses of the members of any steering committee of Pre-

Petition Secured Lenders, in their capacity as such (but excluding any fees and

disbursements of counsel, financial or other consultants to such steering committee).  The

Debtors shall pay the fees and expenses provided for in the preceding clause (ii) or clause (iv) only after reasonably detailed invoices for such fees and expenses shall have been submitted to the Debtors and counsel to the official committee of unsecured creditors (the "Creditors' Committee").  The rights of all parties in interest with respect to the application of such payments in clauses (ii), (iii) and (iv) above shall be preserved in accordance with Paragraph 16 below.  The Debtors shall pay the reasonable and documented fees and expenses of counsel to the Ad Hoc Committee of Pre-Petition Secured Lenders in connection with the Motion through the date of the Final Hearing in an aggregate amount not to exceed the cap previously agreed upon by the Debtors and such counsel.  The Creditors' Committee shall be provided an opportunity to review such fees and expenses prior to the payment thereof.  During the pendency of the Chapter 11 Cases, and except as otherwise set forth in any confirmed reorganization plan, the Pre-Petition Debt of any Pre-Petition Secured Lender shall not be repaid or refinanced in whole unless (x) it is part of a transaction in which the obligations under the DIP Credit Agreement and the Pre-Petition Credit Agreement are repaid or refinanced in whole, or (y) such Pre-Petition Secured Lender consents to such repayment.

(d)    Access To Collateral.  The Pre-Petition Agent (for the benefit of the Pre-Petition Secured Lenders) and their experts and advisors shall be given reasonable access for purposes of monitoring the business of the Debtors and the value of the Collateral; and

33

(e)    <u>Information</u>.  The Debtors shall provide the Pre-Petition Agent and the Creditors' Committee with any written financial information or periodic reporting that is provided to, or required to be provided to, the Agent or the DIP Lenders; *provided, however*, that to the extent such information is provided to the Creditors' Committee, the Debtors shall be entitled to reasonably restrict access to such information solely to professionals retained by such committee.  The Debtors shall also provide the Agent and the Pre-Petition Agent with information related to payments made to and setoffs taken by the Debtors' suppliers in respect of any pre-petition claims to the extent such information is provided to the Creditors' Committee or is otherwise required to be supplied pursuant to the DIP Documents.

(f)    <u>Pre-Petition Letters of Credit</u>.  Subject to the terms and conditions of the DIP Documents, letters of credit issued and outstanding under the Pre-Petition Credit Agreement shall be replaced by letters of credit issued under the DIP Documents at the earlier of the stated expiry of such letters of credit and the next notice date for non-renewal of such letters of credit.  The Pre-Petition Agent, in consultation with and after prior notice to the Debtors, is authorized to provide notice of non-renewal to letter of credit beneficiaries to prevent the automatic renewal of "evergreen" Letters of Credit.

13.    *Reservation of Rights of Pre-Petition Secured Lenders*.  Under the circumstances and given that the above described adequate protection is consistent with the Bankruptcy Code, the Court finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Pre-Petition Secured Lenders.

34

Except as expressly provided herein, nothing contained in this Order (including, without limitation, the authorization of the use of any Cash Collateral and the granting of any Replacement Liens or Junior Adequate Protection Liens) shall impair or modify any rights, claims or defenses available in law or equity, including, without limitation, any right to propose, subject to the provisions of Section 1121 of the Bankruptcy Code, a Chapter 11 plan or plans of reorganization, to the Pre-Petition Agent, any Pre-Petition Secured Lender, the Agent or any DIP Lender including, without limitation, rights of a party to a swap agreement, securities contract, commodity contract, forward contract or repurchase agreement with a Debtor to assert rights of setoff or other rights with respect thereto as permitted by law (or the right of a Debtor to contest such assertion). The Pre-Petition Agent and the Pre-Petition Secured Lenders shall have the right to request further or different adequate protection under sections 361, 363(e) and 364(d)(2) of the Bankruptcy Code following the occurrence of any event after the Petition Date, that could reasonably be expected to have a material adverse effect on (A) the Debtors' ability to repay or refinance the Pre-Petition Obligations in full in cash under a Chapter 11 plan of reorganization or (B) the Debtors' ability to satisfy the Adequate Protection Obligations. The Debtors or any other party in interest may object to any such request, and with respect to such objections nothing herein shall operate to shift any applicable burdens of proof from those set forth in the Bankruptcy Code.

14.    *Perfection Of DIP Liens And Adequate Protection Liens.*

(a)    Subject to the provisions of paragraph 8(a) above, the Agent and

the Pre-Petition Agent are hereby authorized, but not required, to file or record financing

statements, trademark filings, copyright filings, mortgages, notices of lien or similar

instruments in any jurisdiction or take any other action in order to validate and perfect the

liens and security interests granted to them hereunder.  Whether or not the Agent on

behalf of the DIP Lenders or the Pre-Petition Agent on behalf of the Pre-Petition Secured

Lenders shall, in their sole discretion, choose to file such financing statements, trademark

filings, copyright filings, mortgages, notices of lien or similar instruments or otherwise

confirm perfection of the liens and security interests granted to them hereunder, such

liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-

avoidable and not subject to challenge dispute or subordination, at the time and as of the

date of entry of this Order.  Upon the request of the Agent, each of the Pre-Petition Agent

and Pre-Petition Secured Lenders, without any further consent of any party, is authorized

to take, execute and deliver such instruments (in each case without representation or

warranty of any kind) to enable the Agent to further validate, perfect, preserve and

enforce DIP Liens.

(b)    A certified copy of this Order may, in the discretion of the Agent,

be filed with or recorded in filing or recording offices in addition to or in lieu of such

financing statements, mortgages, notices of lien or similar instruments, and all filing

offices are hereby authorized to accept such certified copy of this Order for filing and

recording.

(c)        Any provision of any lease or other license, contract or other

agreement that requires (i) the consent or approval of one or more landlords or other

parties or (ii) the payment of any fees or obligations to any governmental entity, in order

for any Debtor to pledge, grant, sell, assign, or otherwise transfer any such leasehold

interest, or the proceeds thereof, or other post-petition collateral related thereto, is hereby

deemed to be inconsistent with the applicable provisions of the Bankruptcy Code.  Any

such provision shall have no force and effect with respect to the transactions granting

post-petition liens, in such leasehold interest or the proceeds of any assignment and/or

sale thereof by any Debtor, in favor of the DIP Lenders in accordance with the terms of

the DIP Credit Agreement or this Order.

15.        *Preservation Of Rights Granted Under The Order.*

(a)        No claim or lien having a priority superior to or *pari passu* with

those granted by this Order to the Agent and the DIP Lenders or to the Pre-Petition

Agent, the Pre-Petition Secured Lenders and the Setoff Claimants, respectively, shall be

granted or allowed while any portion of the Financing (or any refinancing thereof) or the

Commitments thereunder or the DIP Obligations or the Adequate Protection Obligations

remain outstanding, and the DIP Liens, the Adequate Protection Liens, the Replacement

Liens and the Junior Adequate Protection Liens shall not be (i) solely in the case of the

DIP Liens, subject or junior to any lien or security interest that is avoided and preserved

37

for the benefit of the Debtors' estates under section 551 of the Bankruptcy Code or (ii)

subordinated to or made pari passu with any other lien or security interest, whether under

section 364(d) of the Bankruptcy Code or otherwise (other than as specifically provided

for in this Order).  Nothing in this paragraph 15(a) shall limit (x) the rights of the Debtors

to refinance the Financing in compliance with the DIP Credit Agreement or (y) the rights

of any party in interest with respect to any such refinancing.

        (b)      Unless all DIP Obligations shall have been paid in full (and, with

respect to outstanding letters of credit issued pursuant to the DIP Credit Agreement, cash

collateralized in accordance with the provisions of the DIP Credit Agreement), the

Debtors shall not seek, and it shall constitute an Event of Default and a termination of the

right to use Cash Collateral if any of the Debtors seek, or if there is entered, (i) any

modifications or extensions of this Order without the prior written consent of the Agent,

and no such consent shall be implied by any other action, inaction or acquiescence by the

Agent, or (ii) an order dismissing any of the Cases.  If an order dismissing any of the

Cases under section 1112 of the Bankruptcy Code or otherwise is at any time entered,

such order shall provide (in accordance with sections 105 and 349 of the Bankruptcy

Code) that (x) the Superpriority Claims, priming liens, security interests and replacement

security interests granted to the Agent and, as applicable, the Pre-Petition Agent, the

Setoff Claimants or the holders of the Debtor Liens pursuant to this Order shall continue

in full force and effect and shall maintain their priorities as provided in this Order until all

DIP Obligations and Adequate Protection Obligations shall have been paid and satisfied

in full (and that such Superpriority Claims, priming liens and replacement security

interests, shall, notwithstanding such dismissal, remain binding on all parties in interest)

and (y) this Court shall retain jurisdiction, notwithstanding such dismissal, for the

purposes of enforcing the claims, liens and security interests referred to in (x) above.

        (c)     If any or all of the provisions of this Order are hereafter reversed,

modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect

(i) the validity of any DIP Obligations or Adequate Protection Obligations incurred prior

to the actual receipt of written notice by the Agent or Pre-Petition Agent, as applicable, of

the effective date of such reversal, stay, modification or vacation or (ii) the validity or

enforceability of any lien or priority authorized or created hereby or pursuant to the DIP

Credit Agreement with respect to any DIP Obligations or Adequate Protection

Obligations.  Notwithstanding any such reversal, stay, modification or vacation, any use

of Cash Collateral, or DIP Obligations or Adequate Protection Obligations incurred by

the Debtors to the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition

Secured Lenders prior to the actual receipt of written notice by the Agent and Pre-Petition

Agent of the effective date of such reversal, stay, modification or vacation shall be

governed in all respects by the original provisions of this Order, and the Agent, DIP

Lenders, Pre-Petition Agent and Pre-Petition Secured Lenders shall be entitled to all the

rights, remedies, privileges and benefits granted in section 364(e) of the Bankruptcy

Code, this Order and pursuant to the DIP Documents with respect to all uses of Cash

Collateral, DIP Obligations and Adequate Protection Obligations.

(d)    Except as expressly provided in this Order or in the DIP

Documents, the DIP Liens, the Superpriority Claims and all other rights and remedies of

the Agent and the DIP Lenders granted by the provisions of this Order and the DIP

Documents shall survive, and shall not be modified, impaired or discharged by (i) the

entry of an order converting any of the Cases to a case under chapter 7, dismissing any of

the Cases, terminating the joint administration of these Cases or by any other act or

omission, or (ii) the entry of an order confirming a plan of reorganization in any of the

Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Debtors have

waived any discharge as to any remaining DIP Obligations.  The terms and provisions of

this Order and the DIP Documents shall continue in these Cases, in any successor cases if

these Cases cease to be jointly administered, or in any superseding chapter 7 cases under

the Bankruptcy Code, and the DIP Liens, the Superpriority Claims and all other rights

and remedies of the Agent and the DIP Lenders granted by the provisions of this Order

and the DIP Documents shall continue in full force and effect until the DIP Obligations

are indefeasibly paid in full.

16.    *Effect Of Stipulations On Third Parties*.  Subject to the reservation of

rights set forth in this paragraph 16, the stipulations and admissions contained in

paragraphs 3 and 10 of this Order shall be binding upon the Debtors in all circumstances.

The stipulations and admissions contained in paragraphs 3 and 10 of this Order shall be

binding upon all other parties in interest, including, without limitation, the Creditors'

Committee, unless (a) a party-in-interest has timely filed an adversary proceeding or

40

contested matter, or commenced litigation for authorization to commence such adversary

proceeding or contested matter ("Authorization Motion"), (subject to the limitations

contained herein, including, *inter alia*, in paragraph 17) by no later than January 16, 2006

in the case of clause (i) below and April 17, 2006 in the case of clauses (ii) and (iii)

below (or, in each case, such later date (x) as has been agreed to, in writing, by the Pre-

Petition Agent in its sole discretion or (y) as has been ordered by the Court) (i)

challenging the validity, enforceability, priority or extent of the Pre-Petition Debt or the

Pre-Petition Agent's or the Pre-Petition Secured Lenders' liens on the Pre-Petition

Collateral, (ii) seeking a determination that the Pre-Petition Debt was under-secured as of

the Petition Date, or (iii) otherwise asserting or prosecuting any Avoidance Actions or

any other any claims, counterclaims or causes of action , objections, contests or defenses

(collectively, "Claims and Defenses") against the Pre-Petition Agent or any of the Pre-

Petition Secured Lenders or their respective affiliates, subsidiaries, directors, officers,

representatives, attorneys or advisors in connection with matters related to the Existing

Agreements, the Pre-Petition Debt, or the Pre-Petition Collateral, and (b) there is a final

order in favor of the plaintiff sustaining any such challenge or claim in any such timely

filed adversary proceeding or contested matter, *provided* that as to the Debtors, all such

Claims and Defenses are hereby irrevocably waived and relinquished as of the Petition

Date other than any such Claims and Defenses as they relate to the appropriateness of any

interest rate, fees or expenses charged or claimed by the Pre-Petition Secured Lenders

(except with respect to the payments of interest at ABR plus the Applicable Margin to

41

any Pre-Petition Secured Lender who has executed and delivered the release and waiver,

and the other fees and expenses, all as provided in paragraph 12(c) of this Order),

including, without limitation, the allowance of any claim for default interest under

Section 2.14 of the Pre-Petition Credit Agreement or the allowance of any claim for any

prepayment premium under Sections 2.10 or 2.11 of the Pre-Petition Credit Agreement.

Subject in each case to the reservation of the Debtors' rights set forth above to contest the

allowance of any claim for default interest on the Pre-Petition Debt or any prepayment

premium, if no such adversary proceeding or contested matter is timely filed (it being

understood that such adversary proceeding or contested matter is commenced promptly

following a disposition in favor of a movant of an Authorization Motion), (x) the Pre-

Petition Debt and all related obligations of the Debtors (the "Pre-Petition Obligations")

shall constitute allowed claims, not subject to counterclaim, setoff, subordination,

recharacterization, defense or avoidance, for all purposes in the Cases and any subsequent

chapter 7 cases, (y) the Pre-Petition Agent's and the Pre-Petition Secured Lenders' liens

on the Pre-Petition Collateral shall be deemed to have been, as of the Petition Date, legal,

valid, binding and perfected, not subject to defense, counterclaim, recharacterization,

subordination or avoidance and (z) the Pre-Petition Obligations, the Pre-Petition Agent's

and the Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral and the Pre-

Petition Agent and the Pre-Petition Secured Lenders shall not be subject to any other or

further challenge by any party-in-interest, and any such party-in-interest shall be enjoined

from, seeking to exercise the rights of the Debtors' estates, including, without limitation,

42

any successor thereto (including, without limitation, any estate representative or a chapter 7 or 11 trustee appointed or elected for any of the Debtors). If any such adversary proceeding or contested matter is timely filed (it being understood that such adversary proceeding or contested matter is commenced promptly following a disposition in favor of a movant of an Authorization Motion), the stipulations and admissions contained in paragraphs 3 and 10 of this Order shall nonetheless remain binding and preclusive (as provided in the second sentence of this paragraph) on any official committee (including the Creditors' Committee) and on any other person or entity, except to the extent that such findings and admissions were expressly challenged in such adversary proceeding or contested matter (it being understood that such adversary proceeding or contested matter is commenced promptly following a disposition in favor of a movant of an Authorization Motion). Nothing in this Order vests or confers on any Person (as defined in the Bankruptcy Code), standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, Claims and Defenses with respect to the Existing Agreements or the Pre-Petition Debt other than the Creditors' Committee, which is hereby vested with standing and authority to pursue any cause of action arising from or related to the Debtors' stipulations and admissions in paragraphs 3 and 10 of this Order.

17.    *Limitation On Use Of Financing Proceeds And Collateral*.

Notwithstanding anything herein or in any other order by this Court to the contrary, no borrowings, letters of credit, Cash Collateral, Pre-Petition Collateral, Collateral or the

43

Carve Out may be used to (a) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Documents or the Existing Agreements, or the liens or claims granted under this Order, the DIP Documents or the Existing Agreements, (b) assert any Claims and Defenses or any other causes of action against the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders or their respective agents, affiliates, representatives, attorneys or advisors, (c) prevent, hinder or otherwise delay the Agent's or the Pre-Petition Agent's assertion, enforcement or realization on the Cash Collateral or the Collateral in accordance with the DIP Documents, the Existing Agreements or this Order, (d) seek to modify any of the rights granted to the Agent, the DIP Lenders, the Pre-Petition Agent or the Pre-Petition Secured Lenders hereunder or under the DIP Documents or the Existing Agreements, in each of the foregoing cases without such parties' prior written consent or (e) pay any amount on account of any claims arising prior to the Petition Date unless such payments are (i) approved by an Order of this Court and (ii) in accordance with the DIP Credit Agreement or otherwise approved by the Agent in its sole discretion; *provided* that, notwithstanding anything to the contrary herein, the Creditors' Committee shall be limited to $250,000 to perform the investigations contemplated hereby and no other official committee shall be authorized to perform such investigations; *provided, further*, that such $250,000 limit shall not include the fees and expenses of an investment banker in connection with the investigations contemplated by clause (a)(ii) of paragraph 16 of this Order.

18.      *Setoff, Replacement Liens and Junior Adequate Protection Liens*.  To the extent that a customer or supplier of the Debtors that has an allowable setoff claim under section 506 or 553 of the Bankruptcy Code in respect of its payables owed to any Debtor as of the Petition Date ("Pre-Petition Payables") or a valid right of recoupment that arose prior to the Petition Date (such setoff claim or right of recoupment, "Setoff"), such customer or supplier (a "Setoff Claimant") is hereby provided with certain rights and adequate protection as described below.  For the avoidance of doubt, nothing herein shall be construed to be an admission or acknowledgement, or an increase or decrease in the monetary amount of the pre-petition setoff or recoupment rights of any person, under the Bankruptcy Code, applicable non-bankruptcy law or otherwise.

(a)      <u>Exercise of Set Off</u>.  (1)  Any exercise of a Setoff Right (as defined below) in accordance with this Order shall not be stayed by section 362 of the Bankruptcy Code.  Any exercise of any right of Setoff other than in accordance with this Order is subject to section 362 of the Bankruptcy Code.  Nothing in this Order shall prevent any holder of a right of Setoff from seeking relief from the automatic stay with respect to such Setoff, or prevent the Debtors or any party in interest from objecting or being heard with respect to any such request.  A Setoff Claimant shall, in accordance with this paragraph, be entitled to exercise its Setoff that arose in the ordinary course of business for any claims or recoupment defenses arising from or related to the claims for prepetition warranty and/or product recall claims, customer adjustments, customer rebates and allowances, overpricing claims, claims for short shipments and damaged

45

goods, customer/supplier netting and other similar claims arising in the ordinary course

of business of the relevant parties other than any such claims or recoupment defenses

arising as a result of the filing of the cases (a "Setoff Right").  A Setoff Right shall not

include any claims or recoupment defenses arising from or related to employee or

employee benefit matters, retiree benefit or pension matters, including, without limitation,

any related indemnities or guarantees, the rejection of executory contracts, or

consequential or punitive damages.  The determination as to whether a Setoff Claimant

may exercise a "Setoff Right" will be made solely by (i) the agreement of the Setoff

Claimant, the Creditors' Committee and the Debtors, (ii) pursuant to the procedures

hereinafter set forth or (iii) order of the Court.

        (2)     Any Setoff Claimant seeking to exercise a Setoff Right against

payables during any month (whether against Pre-Petition Payables or post-petition

payables) shall submit to the Debtors and the Creditors' Committee (with a copy to the

Agent) a written request to exercise such Setoff Right, the basis for such Setoff Right and

reasonably detailed documentation supporting such Setoff Right.  If the Setoff Claimant,

the Creditors' Committee and the Debtors fail to agree in writing that any amount is

included in a Setoff Right within 10 business days after submission of such information

to the Debtors and the Creditors' Committee (the "Agreement Deadline"), the Debtors

and such Setoff Claimant shall (unless all such parties agree to extend such 10 business

day period) seek resolution of such matter through a mediator agreed to by the Debtors

and such Setoff Claimant or appointed by this Court.  Such mediation shall end not later

46

than 30 days after the Agreement Deadline unless such period is extended by agreement

of the Debtors and such Setoff Claimant.  If the Debtors and such Setoff Claimant cannot

resolve the matter through such mediation, then such matter may be submitted to binding

arbitration to a single arbitrator agreed to by all such parties or appointed by this Court,

and such parties shall request that such arbitrator issue its ruling within 90 days after the

Agreement Deadline.  Notwithstanding any award in any such arbitration, in no event

shall the Setoff Claimant be permitted to exercise its Setoff Right against any payables

other than Pre-Petition Payables except as set forth in this paragraph 18.

        (3)     In the event any Setoff Claimants (the "Non-Exercising Setoff

Claimants") have not exercised their asserted Setoff Rights in respect of their respective

Pre-Petition Payables and have instead paid their Pre-Petition Payables to the Debtors, in

addition to any other adequate protection provided to such Non-Exercising Setoff

Claimants herein, the Non-Exercising Setoff Claimants may exercise Setoff Rights

established in accordance with this paragraph against post-petition payables owed by

such Non-Exercising Setoff Claimants to the Debtor or Debtors against which such Non-

Exercising Setoff Claimants have their Setoff Rights; *provided* that (a) in the case of the

exercise of any Setoff Rights by General Motors Corporation or any of its affiliates

("GM"), the aggregate amount of Setoff Rights that may be exercised pursuant to this

subparagraph (3) against Pre-Petition Payables or post-petition payables owed by GM to

the Debtors during any month shall not exceed $35 million (the "Aggregate Monthly Cap

Amount") and (b) to the extent Setoff Rights are recognized in accordance with this

47

Order in excess of the Setoff Rights that are permitted to be exercised pursuant to such

limitations, Setoff Claimants may carry forward their Setoff Right to succeeding months,

subject to the applicable monthly limitations, if any, until such Setoff Rights have been

fully exercised.

(4)     (a) Except as set forth above, and subject to the adequate

protection provided to Setoff Claimants as herein set forth, Setoff Claimants shall not be

permitted to exercise any Setoff until the later of (x) the effective date of the Debtors'

confirmed plan of reorganization and (y) allowance of the Setoff as a claim in these

Cases.  Any exercise of Setoff pursuant to (x) or (y) above is subject to the treatment

afforded to such Setoff under a plan of reorganization confirmed by the Bankruptcy

Court.  Nothing contained herein shall limit (i) the discretion of the Debtors to pay

warranty and/or product recall claims in accordance with orders of the Court, (ii) the right

of any party in interest to exercise a post-petition setoff or recoupment against a

post-petition payable or (iii) the right of a Setoff Claimant to request further adequate

protection (or the Debtors or any party in interest to oppose any such request).

(b)     Adequate Protection.  A Setoff Claimant is entitled, pursuant to

sections 361, 362(e) and 364(d)(1) of the Bankruptcy Code, to adequate protection of its

Setoff to the extent it does not exercise such Setoff and remits the amount of such Pre-

Petition Payables not setoff or recouped.  As adequate protection therefor, each such

Setoff Claimant is hereby granted, effective upon payment to the Debtors of the amount

48

subject to such Setoff, the following (collectively, the "Junior Adequate Protection Liens"), such Junior Adequate Protection Liens to be effective and perfected without the necessity of the execution by the Debtors of mortgages, security agreements, pledge agreements, financing statements or other agreements:

(i)        A replacement lien (the "Replacement Lien") on such Setoff Claimant's post-petition payables to the extent that it is determined that such Setoff Claimant had a Setoff in respect of the Pre-Petition Payables that have been remitted to the Debtors, which Replacement Lien is limited to the amount of the Setoff; *provided, however*, that (i) the Debtors reserve their rights to any and all Claims and Defenses that may be asserted with respect to such Setoff and (ii) the Replacement Liens are subject and subordinate to and only to (x) the security interests and liens granted to the Agent for the benefit of the DIP Lenders in this Order and pursuant to the DIP Documents and any liens to which such liens so granted to the Agent are junior and (y) the Carve-Out.

(ii)       As further adequate protection to protect the Setoff Claimant against any diminution in the value of its Replacement Lien, the Setoff Claimant is hereby granted a security interest in and lien upon all the other Collateral, subject and subordinate to and only to (A) the security interests and liens granted to the Agent for the benefit of the DIP Lenders in this Order and pursuant to the DIP Documents and any liens to which such liens so granted to the Agent are junior,  (B) the Carve Out and (C) Pre-Petition Secured Lenders' liens on the Pre-Petition Collateral and the Adequate Protection Liens granted to the Pre-Petition Agent and the Pre-Petition Secured Lenders,

49

*provided* that the Setoff Claimant's security interest in and lien upon Collateral which is not (x) Pre-Petition Collateral, (y) Collateral that would have constituted Pre-Petition Collateral but for the operation of section 552(a) of the Bankruptcy Code as to which, without further action, the Pre-Petition Agent would have had a valid and perfected security interest or lien or (z) subject to the Replacement Lien shall be *pari passu* with the Adequate Protection Liens granted to the Pre-Petition Agent and the Pre-Petition Secured Lenders in such Collateral.

(iii)    As further Adequate Protection, to the extent that the post-petition payables in respect of which the Setoff Claimant is granted a Replacement Lien are less than the Setoff of such Setoff Claimant, such Setoff Claimant is hereby granted an administrative claim under section 507(b) of the Bankruptcy Code in the amount of such deficiency subject to the Carve Out and equal in priority to the administrative claim granted as adequate protection to the Pre-Petition Secured Lenders in Paragraph 12(b) above; *provided, however*, that the Setoff Claimant shall not receive or retain any payments, property or other amounts in respect of the claims under section 507(b) of the Bankruptcy Code granted hereunder unless and until the DIP Obligations have indefeasibly been paid in cash in full.

19.    *Debtor Reimbursement Claims and Debtor Liens*.  Without limiting the joint and several liability of each of the Debtors for the DIP Obligations, the Debtors shall use their reasonable best efforts to ensure that Debtors that receive the benefit of funds advanced under the Financing repay their share thereof on a dollar for dollar basis.

50

To the extent a Debtor (i) incurs any of the DIP Obligations (including as a result of

intercompany balances incurred after the Petition Date to the extent such balances arise

from the incurrence of DIP Obligations) or (ii) receives a postpetition intercompany loan

or transfer (including as a result of the Debtors' cash management system or otherwise)

(each a "Beneficiary Debtor"), and such DIP Obligations were repaid or such postpetition

intercompany loan or transfer is made (including from cash collateral) (each an

"Advance") by (A) any other Debtor that is a Borrower or Guarantor under the

Financings or (B) any non-Debtor affiliate (together (A) and (B) an "Adequately

Protected Entity"), the Adequately Protected Entity shall have, subject to the limitations

set forth in paragraph 20 below (a) an allowed claim under sections 364(c)(1) and 507(b)

of the Bankruptcy Code against the Beneficiary Debtor for the amount of such Advance,

having priority over any and all administrative expenses of the kind specified in sections

503(b) and 507(b) of the Bankruptcy Code, which claim shall bear interest at a rate

agreed between the Debtors from time to time for the period accruing from and after the

date such claim arises until repayment thereof (collectively, the "Debtor Reimbursement

Claim") and (b) a lien on all Collateral under section 364(c)(3) of the Bankruptcy Code

securing such Debtor Reimbursement Claim (a "Debtor Lien").  All Debtor Liens are

effective and perfected without the necessity of the execution by the Debtors of

mortgages, security agreements, pledge agreements, financing statements or other

agreements.

20.    All Debtor Reimbursement Claims and Debtor Liens shall be junior,

subject and subordinate to and only to the Superpriority Claims, the DIP Liens, the

Adequate Protection Obligations, Junior Adequate Protection Liens, the Replacement

Liens and to any claims against such Beneficiary Debtor that are expressly senior to, and

on a parity with, or carved out from the Superpriority Claims, the DIP Liens, the

Adequate Protection Obligations, Junior Adequate Protection Liens or the Replacement

Liens.  All Debtor Liens shall be "silent" liens and the Adequately Protected Entity shall

forbear from exercising, and shall not be entitled to exercise, any right or remedy relating

to any Debtor Reimbursement Claim or Debtor Lien, including, without limitation, taking

any of the actions that the Pre-Petition Agent, the Pre-Petition Secured Lenders and

holders of Replacement Liens and Junior Adequate Protection Liens are prohibited from

taking pursuant to paragraph 8, including, without limitation, as to seeking relief from the

automatic stay, or seeking any sale, foreclosure, realization upon repossession or

liquidation of any property of another Debtor, or taking any position with respect to any

disposition of the property, the business operations, or the reorganization of another

Debtor. The Agent shall have the exclusive right to manage, perform and enforce all

rights and remedies described in the DIP Documents.  The Debtor Lien of the Adequately

Protected Entity automatically, and without further action of any person or entity of any

kind, shall be released or otherwise terminated to the extent that property subject to such

Debtor Lien is sold or otherwise disposed of by or on behalf of the Agent or any other

Debtor or to the extent that such property is subject to a lien prior to the DIP Liens and such lien is permitted under the DIP Documents.

21.    With respect to the effect of Debtor Liens on any sale of property by the Debtors, (a) the Debtors may sell property, in accordance with section 363 of the Bankruptcy Code, free and clear of any Debtor Lien, with such lien attaching to the proceeds of sale in the same priority and subject to the same limitations and restrictions as existed in respect of the property sold and (b) the provisions of section 363(k) of the Bankruptcy Code shall not apply.

22.    *JPMCB As Collateral Agent*.  To the extent JPMCB, in its role as Collateral Agent under the Existing Agreements, is the secured party under any Control Agreements (as defined in the Existing Agreements), listed as loss payee under the Debtors' insurance policies as required under the Guarantee and Collateral Agreement or is the secured party under any other Existing Agreement, JPMCB, in its role as Collateral Agent under the DIP Credit Agreement, is also deemed to be the secured party under such Control Agreements, loss payee under the Debtors' insurance policies and the secured party under any other Existing Agreement and shall act in that capacity and distribute any proceeds recovered or received first, for the benefit of the DIP Lenders in accordance with the DIP Credit Agreement and second, subsequent to indefeasible payment in full of all DIP Obligations, for the benefit of the Pre-Petition Secured Lenders under the Existing Agreements.

53

23.     *Order Governs*.  In the event of any inconsistency between the provisions of this Order and the DIP Documents, the provisions of this Order shall govern.  The terms of this Order shall govern to the extent of any inconsistency between this Order and that certain Cash Management Order dated October 14, 2005, including, without limitation, with respect to the matters set forth in paragraphs 19 to 21 of this Order.

24.     *Binding Effect; Successors And Assigns*.  The DIP Documents and the provisions of this Order, including all findings herein, shall be binding upon all parties in interest in these Cases, including, without limitation, the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, any party granted a Junior Adequate Protection Lien hereunder, any Committee appointed in these Cases, and the Debtors, for themselves and not for their estates, and their respective successors and assigns and shall inure to the benefit of the Agent, the DIP Lenders, the Pre-Petition Agent, the Pre-Petition Secured Lenders, any party granted a Replacement Lien or Junior Adequate Protection Lien, and the Debtors and their respective successors and assigns; *provided*, *however*, that the Agent, the Pre-Petition Agent, the DIP Lenders and the Pre-Petition Secured Lenders shall have no obligation to permit the use of Cash Collateral or extend any financing to any chapter 7 trustee or similar responsible person appointed for the estates of the Debtors.  In determining to make any loan under the DIP Credit Agreement, permitting the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Order or the DIP Documents, the Agent, the Pre-Petition Agent, the DIP Lenders and the Pre-Petition Secured Lenders shall not be deemed to be

54

in control of the operations of the Debtors or to be acting as a "responsible person" or

"owner or operator" with respect to the operation or management of the Debtors (as such

terms, or any similar terms, are used in the United States Comprehensive Environmental

Response, Compensation and Liability Act, 29 U.S.C. §§ 9601 et seq. as amended, or any

similar federal or state statute).

25.     *Aircraft Leases.*  Notwithstanding anything to the contrary contained in

this Order, no DIP Liens or any other liens or interests granted, authorized or contemplated

herein shall attach to any interests of Delphi Automotive Systems Human Resources, LLC

("Delphi HR") in two leases of aircraft, both of which are dated March 30, 2001 between

Bank of America, N.A., and Delphi HR (the "Aircraft Leases"), or in any personal property

that is the subject of the Aircraft Leases.

26.     *Objections Overruled.*  Any Objection which has not been withdrawn or

resolved is, to the extent not resolved, hereby overruled.

27.     *Committee Notices.*  All notices to be provided to the Creditors'

Committee shall be sent to Latham & Watkins LLP, 885 Third Avenue, Suite 1000, New

York, NY 10022-4834, Attn: Robert Rosenberg, Esq.


Dated:    October 28, 2005
          New York, New York

                              /s/ ROBERT D. DRAIN
                              UNITED STATES BANKRUPTCY JUDGE


55