## EXHIBIT B

## SUMMARY OF OBJECTIONS TO DIP
**(Docket Order)**

A total of 36 objections were filed.  Each is summarized herein.

| Objecting Party | Summary of Objection | Resolution, Response or Proposal | DIP Order Modification (if any) |
|---|---|---|---|
| A-30.  Magna International, Inc. and certain of its foreign and domestic affiliates (Docket No. 632)<br><br>SANFORD P. ROSEN & ASSOCIATES, P.C.<br>747 Third Avenue<br>New York, NY 10017-2803<br>(212) 223-1100<br>Sanford P. Rosen<br>Kenneth M. Lewis<br><br>SCHAFER AND WEINER, PLLC<br>40950 Woodward Ave. Ste. 100<br>Bloomfield Hills, MI 48304<br>(248) 540-3340<br>Daniel J. Weiner<br>Ryan D. Heilman | Magna joins in the Limited Objection of Omega Tool Corp., L&W Engineering Co., Southtec, LLC, DOTT Industries, Inc., ALPS Automotive, Inc., Pioneer Automotive Technologies, Inc., Lakeside Plastics Limited, Android Industries, Inc., Ai-Doraville, LLC, and Ai-Genesee, LLC to Entry of a Final Order Authorizing Postpetition Financing and the Use of Cash Collateral, and Granting Adequate Protection, specifically as it relates to the preservation of setoff rights. | See the Setoff Party Proposal. | See paragraph 18 |

## EXHIBIT B

## SUMMARY OF OBJECTIONS TO DIP
### (Docket Order)

A total of 36 objections were filed. Each is summarized herein.

| Objecting Party | Summary of Objection | Resolution, Response or Proposal | DIP Order Modification (if any) |
|---|---|---|---|
| A-31.    A. Schulman, Inc. (Docket No. 634)<br><br>VORYS, SATER, SEYMOUR AND PEASE LLP<br>2100 One Cleveland Center<br>1375 East Ninth Street<br>Cleveland, Ohio 44114<br>Telephone: (216) 479-6100<br>Carrie M. Caldwell | Schulman joins the objection of Mercedes-Benz International, Inc., DaimlerChrysler Corporation, Robert Bosch Corporation in objecting to the any impairment of its setoff rights.<br><br>Schulman objects to entering the Final Order with the current setoff provision. | See the Setoff Party Proposal. | See paragraph 18 |
| A-32.    Official Committee of Unsecured Creditors (Docket No. 641)<br><br>LATHAM & WATKINS LLP<br>885 Third Avenue<br>New York, NY 10022-4802<br>(212) 906-1200<br>Robert J. Rosenberg<br>Mitchell A. Seider<br>Mark A. Broude<br>Email: robert.rosenberg@lw.com<br>mitchell.seider@lw.com<br>mark.broude@lw.com | Creditors' Committee is seeking the following changes:<br>(1) payments of postpetition interest, fees and expenses for the pre-petition secured lenders as adequate protection should be subject to recharacterization as payments of principal in the event that the secured lenders are not oversecured;<br><br>(2) preserve the requirements of § 506(b) as to the Pre-Petition Secured Lenders and their claims against the estate; | There is nothing in the order that precludes the right of the Creditors' Committee to seek to recharacterize the payments of post petition interest, fees and expenses as a repayment of principal in the event that the court determines that the Pre-Petition Secured Lenders were not oversecured.<br><br>There is nothing in the order that contravenes the requirements of section 506(b). The Pre-Petition Secured Lenders will be entitled to receive and retain post petition interest, fees and expenses as such only to the extent that they are oversecured. The Creditors' Committee is not bound, subject to the 90 day period contained in paragraph 16 of the order, by the Debtors stipulations in paragraphs 3 and 10 to the effect that the Pre-Petition Secured Lenders. | N/A<br><br>N/A |

# EXHIBIT B

## SUMMARY OF OBJECTIONS TO DIP
### (Docket Order)

A total of 36 objections were filed.  Each is summarized herein.

| Objecting Party | Summary of Objection | Resolution, Response or Proposal | DIP Order Modification (if any) |
|---|---|---|---|
| | (3) and any claim that the Pre-Petition Secured Lenders may have under section 507(b) should not have recourse to the Debtors' claims and causes of action under sections 502(d), 510, 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other avoidance actions or to any proceeds recovered on account of successful avoidance actions; | Under 507(b) of the Bankruptcy Code any claim for the inadequacy of adequate protection is granted priority over all other administrative claims and by extension all other unsecured claims.  There is nothing in the Bankruptcy Code that would require that avoidance actions be carved out of this protection. | N/A |
| | (4) request for the expansion of the 90 day deadline (upon a motion by the Creditors' Committee showing good cause) for the Creditors' Committee to contest the binding nature of certain provisions of the DIP; | The 90 day deadline is common practice in this district and provides in this case adequate time for the Creditors' Committee to conduct its investigations and due diligence and be in a position to either (i) confirm the stipulations made by the debtor and contained in the order, (ii) commence an action to preserve its rights, (iii) seek a consensual extension of the 90 days or (iv) return to court to show cause why the deadline should not be extended under the particular circumstances. | N/A |
| | (5) opposes the grant of a full release to the Pre-Petition Secured Lenders; | During the 90 day period, the Creditors' Committee will have an ample opportunity to determine the appropriateness of the full release. | N/A |
| | (6) the Creditors' Committee should receive all financial information provided to the lenders at the same time; | The Debtors have agreed with the Creditors' Committee and has provided for the delivery of such information in paragraph 12(e). | See paragraph 12(e) |
| | (7) clarification that defined terms apply only to persons in such capacity; | The Debtors agree that this is the appropriate way to interpret the order and no further clarification is necessary. | N/A |

## EXHIBIT B

## SUMMARY OF OBJECTIONS TO DIP
### (Docket Order)

A total of 36 objections were filed. Each is summarized herein.

| Objecting Party | Summary of Objection | Resolution, Response or Proposal | DIP Order Mod- ification (if any) |
|---|---|---|---|
| | (8) Creditors' Committee should get notice of any amendments affect- ing liquidity (e.g., borrowing base, covenants, etc.) and in the event the Creditors' Committee objects, the Debtors should be required to get Court approval for such amendment; | The Debtors have agreed with the Creditors' Committee regarding amendments to the finan- cial covenants in section 6.04 of the DIP agree- ment to the extent such amendments would be more restrictive on the Debtors and have so provided in paragraph 5(b)(ii) of the order. The DIP agent will not accept a third party's attempt to manage matters related to the borrowing base thereto. | See Paragraph 5(b)(ii) |
| | (9) the adequate protection liens and junior adequate protection liens should be subject and subordinate to section 551; | To the extent that there is a recovery on any avoidance action on the prepetition lenders' collateral, the priority of the prepetition lenders security interest in that collateral should not be altered. To the extent that the recovery is in respect of property that was not the prepetition lenders' collateral, the recovery would be for the benefit of the estate. | N/A |
| | (10) 5 business days prior notice of enforcement against collateral must be provided to Creditors' Committee; | Section 7.01 of the credit agreement requires that such notice be given to the Creditors' Com- mittee and the Debtors have agreed not to mod- ify such notice provision without court approval as provided in paragraph 5(b)(ii) of the Order. | See Paragraph 5(b)(ii) |
| | (11) the Debtors should not waive their rights under 11 U.S.C. § 506(c) in favor of the Pre-Petition Secured Lenders; | The Pre-Petition Secured Lenders' security in- terest in their prepetition collateral is being primed and the Debtors have the right to use and sell such collateral without applying the proceeds of such use or sale to the repayment of the prepetition obligations. In exchange for and | N/A |

## EXHIBIT B

## SUMMARY OF OBJECTIONS TO DIP
### (Docket Order)

A total of 36 objections were filed.  Each is summarized herein.

| Objecting Party | Summary of Objection | Resolution, Response or Proposal | DIP Order Modification (if any) |
|---|---|---|---|
| | | as part of the adequate protection for the prepetition lenders, the Debtors believe that it is reasonable and appropriate in such circumstances to agree to the 506(c) waiver. | |
| | (12) the carve out should include all allowed and unpaid professional fees and disbursements incurred or accrued by the Debtors or any Creditors' Committees prior to the Debtors' or any Creditors' Committees' actual receipt of written notice that an Event of Default has occurred; | The DIP agent has refused to further burden the exercise of its remedies by giving notice to any parties other than the Debtors.  However, the Debtors will agree to notify the Creditors' Committees' counsel upon receipt of any such notice. | N/A |
| | (13) intercompany claims should be secured by liens subordinate only to the DIP liens and any other superpriority claims. | None of the parties being provided with adequate protection under the DIP order will consent to such arrangement.  In addition, the Debtors believe that it would be unusual for the intercompany claims to have priority over other parties' adequate protection rights. | N/A |
| A-33.    Textron Fastening Systems, Inc. (Docket No. 643)<br><br>KLESTADT & WINTERS, LLP<br>Tracy L. Klestadt<br>292 Madison Avenue, 17th Floor<br>Hearing Date:<br>New York, NY 10017-6314<br>(212) 972-3000 | Textron joins other limited objections filed by other creditors with respect to the request that setoff rights be preserved. | See the Setoff Party Proposal. | See paragraph 18 |
| | Textron also joins in the limited objection filed by Flextronics regarding the preservation of its reclamation rights. | See the Reclamation Response. | N/A |

# EXHIBIT B

## SUMMARY OF OBJECTIONS TO DIP
### (Docket Order)

A total of 36 objections were filed.  Each is summarized herein.

| Objecting Party | Summary of Objection | Resolution, Response or Proposal | DIP Order Modification (if any) |
|---|---|---|---|
| A-34.    ARC Automotive, Inc. (Docket No. 646)<br><br>Cherie Macdonald, Esq.<br>J. Patrick Bradley, Esq.<br>GREENSFELDER, HEMKER & GALE, P.C.<br>12 Wolf Creek Drive, Suite 100<br>Swansea, Illinois 62226<br><br>Alan D. Halperin<br>Christopher J. Battaglia<br>HALPERIN BATTAGLIA RAICHT, LLP<br>555 Madison Avenue – 9th Floor<br>New York, New York 10022<br>(212) 765-9100 | ARC Automotive, Inc.  hereby joins in the limited objections filed by other creditors with respect to the request that the right of setoff be preserved for all suppliers to the Debtors. | See the Setoff Party Proposal. | See paragraph 18 |
| A-35.    XM Satellite Radio Inc. (Docket No. 651)<br><br>HOGAN & HARTSON, L.L.P.<br>Scott A. Golden, Esq.<br>875 Third Avenue<br>New York, NY 10022<br>(212) 918-3000 | XM Satellite Radio joins in the limited objections filed by other creditors and requests that the Court modify the proposed final order to expressly provide that the relief granted therein does not impair or subordinate any setoff rights that XM may have. | See the Setoff Party Proposal. | See paragraph 18 |

# EXHIBIT B

## SUMMARY OF OBJECTIONS TO DIP
### (Docket Order)

A total of 36 objections were filed.  Each is summarized herein.

| Objecting Party | Summary of Objection | Resolution, Response or Proposal | DIP Order Modification (if any) |
|---|---|---|---|
| A-36.    General Motors Corporation (Docket No. 658)<br><br>Martin J. Bienenstock, Esq.<br>Michael P. Kessler, Esq.<br>Jeffrey L. Tanenbaum, Esq.<br>WEIL, GOTSHAL & MANGES LLP<br>767 Fifth Avenue<br>New York, NY 10153<br>Telephone: (212) 310-8000<br>Facsimile: (212) 310-8007<br><br>Robert B. Weiss, Esq.<br>Frank L. Gorman, Esq.<br>HONIGMAN MILLER SCHWARTZ & COHN, LLP<br>2290 First National Building<br>660 Woodward Avenue<br>Detrpit, MI 48226<br>Telephone: (313) 465-7000<br>Facsimile: (313) 465-8000 | GM conditionally objects to the DIP, subject to review of the language of the Final Order, to preserve its rights in the event GM finds the language of the Final Order to impair its prepetition setoff rights without providing adequate protection.  In particular, GM seeks two forms of adequate protection: (1) an administrative claim secured by a lien on all assets of the Debtors' estates junior only to the DIP Lenders' liens; and (2) the delivery by the Debtors to GM of certain financial information to allow GM to evaluate the status of and risk to its adequate protection. | See the Setoff Party Proposal. | See paragraph 18. |

# EXHIBIT C

## SUMMARY OF OBJECTIONS TO
## ORGANIZED BY NATURE OF OBJECTION[1]

**(Late objections are indicated in BOLD)**

A.    <u>Objection by Goodwin Procter Group</u>[2]

| | OBJECTION ASSERTED | OBJECTION DOCKET NO. | RESPONSE |
|---|---|---|---|
| 1. | Priming prepetition lenders should not be allowed because sufficient postpetition financing is available on a nonpriming basis and priming the liens of the prepetition lenders without their consent is an extraordinary remedy that implicates their constitutionally protected property rights. | 553 | The Debtors have proposed providing: (a) the Ad Hoc lenders (and the other Pre-Petition Secured Lenders) liens junior to the DIP Agent, but pari passu with holders of valid setoff rights in prepetition collateral that was not included as part of the prepetition lenders' collateral under the applicable credit agreement; (b) replacement liens on new collateral junior only to the DIP Agent; (c) section 507(b) priority to such parties' prepetition secured claims; (d) payment of current interest at the contract rate; (e) access to Collateral to the Pre-Petition Agent; and (f) access to certain financial information to be provided to the Pre-Petition Agent. |

---

[1] Terms used but not defined herein shall have the meanings ascribed to them in the Final DIP Order.

[2] Prepetition Agent, JPMorgan Chase filed a pleading indicating that it is not objecting to the Final DIP Order subject to its confirmation that the Order incorporates the changes agreed to by JPMorgan Chase and the Debtors and is otherwise in satisfactory form and substance and that no other changes are adverse to the interests of JPMorgan Chase (Docket #612).

| | OBJECTION ASSERTED | OBJECTION DOCKET NO. | RESPONSE |
|---|---|---|---|
| | The objection also asserts that the debtors have not met their burden under 364(d)(1) to establish that (1) the debtors cannot obtain credit otherwise, and (2) existing lienholders are adequately protected. | | |
| | The prepetition lenders are not adequately protected by junior replacement liens and less than current pay of the contract rate of interest due under the credit agreement. | | |
| | Requested adequate protection package:<br>(1) Requesting that debtors pay interest at the default rate (applicable rate plus 2%) and principal amortization for adequate protection;<br>(2) Debtors should reduce prepetition debt by $25 million per quarter;<br>(3) 100% of asset sales outside of the ordinary course should go to premanently reduce the DIP facility;<br>(4) repayment of all reimbursable expenses of the Prepetition Lenders;<br>(5) Prepetition Lenders should be granted liens and security interests in all of the Debtors remaining assets including a pledge of the Excluded Stock (100% of stock in foreign subsidiaries unless Debtors can show that the tax consequences significantly outweigh the benefit to the Prepetition Lenders);<br>(6) The Final Order should not include any waiver of the right to object to any relief sought by the Debtors (sale, assignment or release) in respect of the property comprising the Collateral, whether as parties-in-interest in the Debtors' chapter 11 cases or as holders of interests in such Collateral under section 363(f) of the Bankruptcy | | |

| | OBJECTION ASSERTED | OBJECTION DOCKET NO. | RESPONSE |
|---|---|---|---|
| | Code;<br>(7) the Final Order should expressly reserve the rights of the Prepetition Agent and the Prepetition Lenders to request further or different adequate protection under sections 361, 363(e) and 364(d)(2) of the Bankruptcy Code; and<br>(8) The Interim Order should be clarified to reflect that the Junior Adequate Protection Liens granted to any person in respect of any valid and non-avoidable right to setoff in respect of its prepetition payables as of the Petition Date shall be subject and subordinate to (and shall not prime) all valid, enforceable, non-avoidable and fully-perfected first priority liens in existence as of the Petition Date, including the liens of the Prepetition Lenders in the Prepetition Collateral and the replacement liens granted to the Prepetition Lenders in the Collateral. | | |

3

**B.**    **Objection by Setoff/Lien Claimants**

| | OBJECTION ASSERTED | OBJECTION DOCKET NO. | RESPONSE |
|---|---|---|---|
| 1. | Objection on the grounds that it impairs vendor's prepetition setoff rights without providing adequate protection. Vendor requests that it be granted a superior replacement lien as adequate protection for its prepetition setoff rights. | 428, 435, 436, 442, 450, 451, 458, 461, 495 and 623, 501, 503, 577, 590, 634, 646, 651, 658 | The Debtors have proposed providing the following (the "Setoff Party Proposal"):**(a)** the Debtors shall provide to each holder of a valid setoff claim (each, a "Setoff Party"), subject to the payment of the Carve Out, a superpriority claim as provided for in section 507(b) of the Bankruptcy Code, with the limitations set forth in ordering paragraph 12(b) of the proposed Final Order; plus **(b)** if a Setoff Party makes payment to the Debtors on account of an ordinary course prepetition debt owed to the Debtors which amount could rightfully have been setoff by the Setoff Party (assuming such party received approval under 11 U.S.C. § 553) then the Debtors shall grant such Setoff Party a lien in its post-petition payables in the amount of such setoff, which liens shall be junior only to the liens of the DIP Agent and DIP Lenders; plus **(c)** the Debtors shall grant the Setoff Party liens in collateral of the Pre-Petition Secured Lenders, which liens shall be junior to the DIP Agent, the DIP Lenders and the Pre-Petition Secured Lenders, but senior to all other parties; plus **(d)** the Debtors shall grant such party liens in assets owned by the Debtors that were not pledged as collateral to the Pre-Petition Secured Lenders, which liens shall be junior only to the DIP Agent and DIP Lenders and shall be pari passu with the adequate protection liens granted to the Pre-Petition Secured Lenders; plus **(e)** the Debtors shall allow the Setoff Party to setoff its valid prepetition claims against the Debtors against postpetition payables owed to the Debtors, provided that such prepetition claims arose in the ordinary course of the Debtors' business. |

4

| | OBJECTION ASSERTED | OBJECTION DOCKET NO. | RESPONSE |
|---|---|---|---|
| 2. | Vendor objects to the DIP motion on the ground that it impairs vendor's prepetition setoff rights without providing adequate protection.  To the extent that the DIP motion in any way attempts to subordinate or otherwise modify the rights of lienholders with liens arising by operation of law, including special tooling and mold liens, vendor objects to such subordination or modification and specifically requests adequate protection of its interest in such tooling and molds. | 455, 459, 551, 600, 632 | With respect to setoff rights, the see the Setoff Party Proposal: With respect to the party's request to preserve liens arising by operation of law, the Debtors propose the language incorporated in paragraph 7(b), which provides that the DIP Agent's liens are subject to, among other things, (i) any valid, perfected and unavoidable interests in such property arising out of liens to which the liens of the Pre-Petition Secured Lenders become subject subsequent to the Petition Date as permitted by section 546(b) of the Bankruptcy Code and (ii) statutory liens or security interests arising after the Petition Date and permitted under the DIP Credit Agreement that by operation of law would have priority over a previously perfected security interest in such liens. |
| 3. | Vendor objects to the DIP motion to the extent that it seeks to subordinate prepetition setoff rights absent adequate protection.  Vendor requests that it be granted a superior replacement lien as adequate protection for its prepetition setoff rights.  Objection also provides adequate protection of its reclamation rights. | 506 and 648, 507 and 649, 511, 512, 589, 591, 619, 631, 643 | With respect to the issue of setoff, see Setoff Party Proposal.  With respect to the party's request to preserve its reclamation right, the Debtors' request the Court to deny such relief on the grounds that (a) objector failed to raise the issue with sufficient specificity to alert the Debtors as to the nexus of the issue; and (b) the Debtors do not believe that the Final DIP Order affects the party's reclamation rights in a way that contradicts the law. |

5

**C.**       <u>**Objection by PBGC**</u>

| | OBJECTION ASSERTED | OBJECTION DOCKET NO. | RESPONSE |
|---|---|---|---|
| 1. | DIP motion fails to adequately protect "lender" Debtors in connection with financing provided to "borrower" Debtors on account of intercompany advances.<br><br>Requests that the Court modify the cash management order and DIP order to grant to each lender Debtor junior liens and junior superpriority administrative expense claims against the estate of any corresponding borrower Debtor to the extent of any intercompany advances rendered. | 437 | The Debtors and the PBGC agreed to the following: (a) in connection with intercompany loans where the borrower is a chapter 11 debtor, a lending entity shall be entitled to an administrative claim in the borrowing entity's chapter 11 case for each dollar lent to such borrower and (b) the Debtors have added clarifying language to the Cash Management Order, which provides that to the extent there is a conflict between the Final DIP Order and the Cash Management Order as it relates to intercompany transactions, the Final DIP Order controls. |

D.    **Objection by Aircraft Leasors**

|   | OBJECTION ASSERTED | OBJECTION DOCKET NO. | RESPONSE |
|---|---|---|---|
| 1. | Bank of America objects to the Motion on the following grounds: (i) the Debtors should not grant any lien or security interest whatsoever in the aircraft leases between Bank of America, as lessor, and Delphi Automotive Systems Human Resources LLC ("Delphi HR") nor in any of the personal property subject to these leases; and (ii) if any such lien or interest in Delphi HR's leasehold interests is granted pursuant to the Motion, such interest should only attach to Delphi HR's interests therein and should be subordinate and junior in all respects to the interests of Bank of America.<br><br>In addition, Bank of America objects to the grant of any DIP Liens in the Management Agreement and the Charter Agreement and any revenues generated therefrom unless they are deemed junior and subordinate to the liens held by Bank of America in these assets and unless Bank of America's liens in these assets are granted adequate protection.<br><br>Finally, Bank of America objects to any attempt in the Motion and the proposed financing order to encumber in any fashion Bank of America's rights and interests under a certain foreign exchange swap agreement with Delphi Corporation, which is a guarantor of the aircraft leases.<br><br>Bank of America objects to the grant of any liens or | 565 | (a) The Debtors shall not grant the DIP Agent or DIP Lenders liens on aircrafts;<br>(b) Setoff: Bank of America is protected by Bankruptcy Code "safe harbor"; Bank of America is protected to the extent its swap is collateralized |

| | **OBJECTION ASSERTED** | **OBJECTION DOCKET NO.** | **RESPONSE** |
|---|---|---|---|
| | security interests, including the DIP Liens and any adequate protection liens, in any of Bank of America's collateral serving as security for the obligations of Delphi HR and the two lease guarantors which collateral includes cash collateral under section 363(a) of the Federal Bankruptcy Code. Objects to the proposed Financing Order for the use of Bank of America's collateral without granting adequate protection. | | |

E.    **Objection by Creditors' Committee**

| | OBJECTION ASSERTED | OBJECTION DOCKET NO. | RESPONSE |
|---|---|---|---|
| 1. | Creditors' Committee is seeking the following changes: (1) payments of postpetition interest, fees and expenses for the pre-petition secured lenders as adequate protection should be subject to recharacterization as payments of principal in the event that the secured lenders are not oversecured; | 641 | There is nothing in the order that precludes the right of the Creditors' Committee to seek to recharacterize the payments of post petition interest, fees and expenses as a repayment of principal in the event that the court determines that the Pre-Petition Secured Lenders were not oversecured. |
| | (2) preserve the requirements of § 506(b) as to the Pre-Petition Secured Lenders and their claims against the estate; | | There is nothing in the order that contravenes  the requirements of section 506(b).  The Pre-Petition Secured Lenders will be entitled to receive and retain post petition interest, fees and expenses as such only to the extent that they are oversecured.  The Creditors' Committee is not bound, subject to the 90 day period contained in paragraph 16 of the order,  by the Debtors stipulations in paragraphs 3 and 10 to the effect that the Pre-Petition Secured Lenders. |
| | (3) and any claim that the Pre-Petition Secured Lenders may have under section 507(b) should not have recourse to the Debtors' claims and causes of action under sections 502(d), 510, 544, 545, 547, 548, 549 and 550 of the Bankruptcy Code, or any other avoidance actions or to any proceeds recovered on account of successful avoidance actions; | | Under 507(b) of the Bankruptcy Code any claim for the inadequacy of adequate protection is granted priority over all other administrative claims and by extension all other unsecured claims.  There is nothing in the Bankruptcy Code that would require that avoidance actions be carved out of this protection. |

| | OBJECTION ASSERTED | OBJECTION DOCKET NO. | RESPONSE |
|---|---|---|---|
| | (4) request for the expansion of the 90 day deadline (upon a motion by the Creditors' Committee showing good cause) for the Creditors' Committee to contest the binding nature of certain provisions of the DIP; | | The 90 day deadline is common practice in this district and provides in this case adequate time for the Creditors' Committee to conduct its investigations and due diligence and be in a position to either (i) confirm the stipulations made by the debtor and contained in the order, (ii) commence an action to preserve its rights, (iii) seek a consensual extension of the 90 days or (iv) return to court to show cause why the deadline should not be extended under the particular circumstances. |
| | (5) opposes the grant of a full release to the Pre-Petition Secured Lenders; | | During the 90 day period, the Creditors' Committee will have an ample opportunity to determine the appropriateness of the full release. |
| | (6) the Creditors' Committee should receive all financial information provided to the lenders at the same time; | | The Debtors have agreed with the Creditors' Committee and has provided for the delivery of such information in paragraph 12(e). |
| | (7) clarification that defined terms apply only to persons in such capacity; | | The Debtors agree that this is the appropriate way to interpret the order and no further clarification is necessary. |
| | (8) Creditors' Committee should get notice of any amendments affecting liquidity (e.g., borrowing base, covenants, etc.) and in the event the Creditors' Committee objects, the Debtors should be required to get Court approval for such amendment; | | The Debtors have agreed with the Creditors' Committee regarding amendments to the financial covenants in section 6.04 of the DIP agreement to the extent such amendments would be more restrictive on the Debtors and have so provided in paragraph 5(b)(ii) of the order.  The DIP agent will not accept a third party's attempt to manage matters related to the borrowing base thereto. |
| | (9) the adequate protection liens and junior adequate protection liens should be subject and subordinate to section 551; | | To the extent that there is a recovery on any avoidance action on the prepetition lenders' collateral, the priority of the prepetition lenders security interest in that collateral should not be altered.  To the extent that the recovery is in respect of property that was not the prepetition lenders' collateral, the recovery would be for the benefit of the estate. |

10

| | OBJECTION ASSERTED | OBJECTION DOCKET NO. | RESPONSE |
|---|---|---|---|
| | (10) 5 business days prior notice of enforcement against collateral must be provided to Creditors' Committee; | | Section 7.01 of the credit agreement requires that such notice be given to the Creditors' Committee and the Debtors have agreed not to modify such notice provision without court approval as provided in paragraph 5(b)(ii) of the Order. |
| | (11) the Debtors should not waive their rights under 11 U.S.C. § 506(c) in favor of the Pre-Petition Secured Lenders; | | The Pre-Petition Secured Lenders' security interest in their prepetition collateral is being primed and the Debtors have the right to use and sell such collateral without applying the proceeds of such use or sale to the repayment of the prepetition obligations. In exchange for and as part of the adequate protection for the prepetition lenders, the Debtors believe that it is reasonable and appropriate in such circumstances to agree to the 506(c) waiver. |
| | (12) the carve out should include all allowed and unpaid professional fees and disbursements incurred or accrued by the debtors or any Creditors' Committees prior to the debtors' or any Creditors' Committees' actual receipt of written notice that an Event of Default has occurred; and | | The DIP agent has refused to further burden the exercise of its remedies by giving notice to any parties other than the Debtors. However, the Debtors will agree to notify the Creditors' Committees' counsel upon receipt of any such notice. |
| | (13) intercompany claims should be secured by liens subordinate only to the DIP liens and any other superpriority claims. | | None of the parties being provided with adequate protection under the DIP order will consent to such arrangement. In addition, the Debtors believe that it would be unusual for the intercompany claims to have priority over other parties' adequate protection rights. |

DIP OBJECTORS
BY DOCKET NUMBER

|   | Docket No. | Objecting Party |
|---|---|---|
| 1 | 428 | Robert Bosch Corporation |
| 2 | 435 | Mercedes-Benz U.S. International, Inc. |
| 3 | 436 | Venture Plastics, Inc. |
| 4 | 437 | Pension Benefit Guaranty Corporation |
| 5 | 442 | Calsonic Kansei North America, Inc. |
| 6 | 450 | DaimlerChrysler Corporation, on behalf of itself, DaimlerChrysler Motors Company, LLC and DaimlerChrysler Canada Inc. |
| 7 | 451 | Decatur Plastic Products, Inc. |
| 8 | 455 | Gibbs Die Casting Corporation |
| 9 | 458 | Lorentson Manufacturing Company, Inc. |
| 10 | 459 | Autocam Corporation |
| 11 | 461 | Lorentson Manufacturing Company Southwest, Inc. |
| 12 | **495 and 623** | **Ford Motor Company** |
| 13 | **501** | **Freescale Semiconductor, Inc.** |
| 14 | **503** | **Nissan North America, Inc.** |
| 15 | **506 and 648** | **Fujikura America, Inc.** |
| 16 | **507 and 649** | **Murata Electronics North America, Inc.** |
| 17 | **511** | **Flextronics International Asia Pacific Ltd. And Flextronics Technology (M Sdn. Bhd.** |
| 18 | **512** | **Multek Flexible Circuits, Inc., Sheldahl de Mexico S.A. de C.V. and Northfield Acquisition Co.** |
| 19 | **551** | **Omega Tool Corp., L&W Engineering Co., Southtec, LLC, DOTT Industries, Inc., ALPS Automotive, Inc., Pioneer Automotive Technologies, Inc., Lakeside Plastics Limited, Android Industries, Inc., Ai-Doraville, LLC, and Ai-Genesee, LLC** |
| 20 | 553 | Ad Hoc Committee of Lenders |
| 21 | 565 | Bank of America N.A. |
| 22 | **577** | **Honda of America Manufacturing, Inc.** |
| 23 | **589** | **OSRAM Opto Semiconductors Inc.** |
| 24 | **590** | **Worthington Steel Company and Worthington Steel of Michigan, Inc.** |
| 25 | **591** | **Hitachi Automotive Products** |

12

|    | Docket No. | Objecting Party |
|----|------------|-----------------|
| 26 | **600** | **National Molding Corp and Security Plastics Division/NMC, LLC** |
| 27 | 612 | JPMorgan Chase Bank, N.A. (as administrative agent to approx. 250 senior secured lenders |
| 28 | **619** | **Arneses Electronics Automotrices, S.A. de C.V. and Cordaflex, S.A. de C.V.** |
| 29 | **631** | **Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc.** |
| 30 | **632** | **Magna International, Inc. and certain of its foreign and domestic affiliates** |
| 31 | **634** | **A. Schulman, Inc.** |
| 32 | 641 | Official Committee of Unsecured Creditors |
| 33 | **643** | **Textron Fastening Systems, Inc.** |
| 34 | **646** | **ARC Automotive, Inc.** |
| 35 | **651** | **XM Satellite Radio Inc.** |
| 36 | 658 | General Motors Corporation |

# EXHIBIT L

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - x
                                                   :
         In re                                     :     Chapter 11
                                                   :
DELPHI CORPORATION, et al.,                        :     Case No. 05-44481 (RDD)
                                                   :
                             Debtors.              :     (Jointly Administered)
                                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' FIRST SET OF INTERROGATORIES AND FIRST
REQUEST FOR PRODUCTION OF DOCUMENTS DIRECTED TO
AD HOC COMMITTEE OF PREPETITION LENDERS

Pursuant to Fed. R. Bankr. P. 7026, 7033, and 7034, Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), by and through their attorneys, Skadden, Arps, Slate, Meagher & Flom LLP and Shearman & Sterling LLP, hereby request that the Ad Hoc Committee (as defined below) answer fully and under oath the following interrogatories and produce the requested documents by making them available for inspection and/or copying at the offices of Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York, 10022, or at such other place and date as is agreed upon, on or before Wednesday, October 26, 2005 at 11:00 a.m. local time.

Definitions

1.    "Ad Hoc Committee" means an ad hoc committee comprising certain funds and managed accounts managed by DK Acquisition Partners LP, Latigo Partners, LP, Quadrangle Master Funding Ltd., Cyrus Capital Partners, Canyon Capital Partners, Concordia Advisors LLC, Avenue Capital Group, Special Situations Investing Group, Inc., D.E. Shaw & Co., L.P., Longacre Fund Management LLC, and Elliott & Associates.

2.    "Bankruptcy Code" means title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended.

3.    "Bankruptcy Court" means the United States District Court for the Southern District of New York having jurisdiction over these Chapter 11 Cases and, to the extent of any reference made pursuant to 28 U.S.C. § 157 and/or a general order of such District Court pursuant to 28 U.S.C. § 151, the bankruptcy unit of such District Court.

4.    "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to these Chapter 11 Cases, promulgated under 28 U.S.C. § 2075.

5.    "Chapter 11 Cases" means the above-captioned chapter 11 proceedings filed by the Debtors and jointly administered under case number 05-44481.

6.  "Communication" means any transmission of words, ideas, or information between or among two or more Persons, including, but not limited to, spoken words, conversations, conferences, discussions, interviews, reports, meetings, negotiations, agreements, and understandings, whether transmitted in person or by an electronic device, and Documents, as defined below.

7.  "Describe" means: (a) describe fully by reference to underlying facts rather than by ultimate facts or conclusions of fact or law; (b) where applicable, particularize as to (i) time, (ii) date, and (iii) manner; and (c) identify each and every Person having personal knowledge of such facts.

8.  "DIP Credit Facility" means Delphi's secured postpetition credit facility, as guaranteed by certain of the Affiliate Debtors, up to an aggregate principal amount not to exceed $2 billion, consisting of a $1,750,000,000 revolving credit facility (inclusive of a sublimit in the aggregate of $325 million for the issuance of letters of credit) and a $250 million term loan facility, from JPMorgan Chase Bank, N.A., as administrative agent, and from a syndicate of other financial institutions arranged by J.P. Morgan Securities Inc. and Citigroup Global Markets, Inc., pursuant to the Revolving Credit, Term Loan and Guaranty Agreement, dated as of October 8, 2005, and the other loan documents to be executed and delivered in connection therewith, substantially in the form attached as Exhibit A to the Debtors' Motion For Order Under 11 U.S.C. §§ 105, 361, 362, 363, 364(c), 364(d), And 364(e) And Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing Debtors To Obtain Secured Postpetition Financing On Superpriority Secured And Priming Basis, (II) Authorizing Use Of Cash Collateral, (III) Granting Adequate Protection To Prepetition Secured Lenders, (IV) Granting Interim

Relief, And (V) Scheduling A Final Hearing Under Fed. R. Bankr. P. 4001(b) and (c) (Docket No. 42).

9.    "DIP Financing Hearings" means those hearings at which approval, on an interim or final basis, of the DIP Credit Facility was, is, or will be considered by the Bankruptcy Court.

10.    "Document" shall have the same meaning as it has in Bankruptcy Rule 7034(a) and Rule 34 of the Federal Rules of Civil Procedure and shall include any written or other electronic record, graphic, or photographic matter of any kind or character, whether produced or reproduced, and shall include, without limiting the generality of the foregoing, all photographs, letters, telegrams, teletypes, facsimiles, correspondence, electronic mail, contracts, agreements, drafts, proofs, work papers, applications, pro formas, financial statements, resumes, notes to file, reports, memoranda, mechanical or electronic sound recordings or transcripts thereof, computer programs, tapes or discs, calendar or diary entries, memoranda of telephone or personal conversations or of Meetings or conferences, transcripts, maps, studies, reports, charts, interoffice communications, minutes of meetings, articles, announcements, ledgers, vouchers, checks, bills and invoices, including originals and copies of any of the foregoing, whether typed, printed, handwritten, or on tape or otherwise recorded, and any material underlying, supporting, or used in the preparation of any such document.

11.    "Identify," when used in connection with a natural person, means to state that person's full name, present business and home address, and present title and job description.

12.    "Identify," when used in connection with an entity, means to state that entity's full name and present address.

13.    "Identify," when used in connection with Documents, means to describe each Document, setting forth the date, title, author, addresses of all recipients, and a brief description of the substance thereof, with such reasonable particularity as is sufficient for a specific request for production, and its present or last known location or custodian.

14.    "Identify" or "state," when used with reference to a particular subject matter, means to state all facts that are known to you that refer or relate to that subject matter, to specify each event, occurrence, and instance that refers or relates to that subject matter, and to identify all Persons having knowledge of that subject matter.

15.    "Interrogatory" means this Interrogatory and any numbered interrogatory as set forth below, as the context requires.

16.    "Meeting" means any encounter between two or more Persons during which Communication of any kind occurred and includes, but is not limited to, formal or informal gatherings, conversations, and telephone calls.

17.    "Person" means an individual, firm, corporation, partnership, limited liability company, sole proprietorship, association, joint stock company, joint venture, estate, trust, unincorporated organization, or other legal or governmental entity, including any divisions or departments within any of the aforementioned.  All references to any Person (including any defined Person) shall include any of such Person's present or former parents, subsidiaries, divisions, subdivisions, affiliates, predecessors, successors, joint ventures, present and former officers, directors, financial advisors, consultants, analysts, employees, representatives, attorneys, agents, and all other Persons acting or purporting to act on behalf of such Person.

18.    "Prepetition Credit Facility" means the revolving loans, term loans, swingline loans, and letters of credit up to an aggregate principal amount of $2,825,000,000

pursuant to that certain Third Amended and Restated Credit Agreement, dated as of June 14, 2005, among Delphi, as borrower, JPMorgan Chase Bank, N.A., as administrative agent, the lenders from time to time party thereto, Citicorp USA, Inc., as syndication agent, Credit Suisse First Boston, Deutsche Bank AG, New York Branch, and HSBC Bank USA, as co-documentation agents for the revolving facility, Deutsche Bank AG, New York Branch, as documentation agent for the term facility, J.P. Morgan Securities Inc. and Citigroup Global Markets Inc., as joint bookrunners for the revolving facility, J.P. Morgan Securities Inc., Citigroup Global Markets, Inc., and Deutsche Bank Securities Inc., as joint bookrunners for the term facility, and J.P. Morgan Securities Inc. and Citigroup Global Markets, Inc., as joint lead arrangers.

19.   "Request" means this Document Request and any numbered request for production of Documents set forth below, as the context requires.

20.   "Statement" means and refers to any verbalizations and includes testimony given in connection with the instant matter.

21.   The following rules of construction apply to all discovery requests:

(a) the use of the word "all" shall be construed as "any and all," the word "any" shall be construed as "any and all," and the word "each" shall be construed as "all and each";

(b) the connectives "and" and "or" shall be construed either disjunctively or conjunctively as necessary to bring within the scope of the discovery requests all responses that otherwise might be construed to be outside of their scope;

(c) the term "including" shall be construed to mean "without limitation";

(d) the use of the singular form of any word includes the plural and vice versa; and

(e) the terms "relating to" or "concerning," or any derivative thereof, as used herein, mean: constitutes; refers to; reflects; concerns; pertains to; describes; evidences; or in any way logically or factually connects with the matter described in the request.

<u>Instructions</u>

1.  These Interrogatories are deemed to be continuing in nature so as to require supplementation as the answering party obtains further information relating to the answers provided in response hereto.

2.  If any Document or other information required to be identified in response to these Interrogatories is withheld on the basis of any claim of privilege, you shall provide, in lieu of identifying or providing any such Document or information, a written statement: (a) identifying the Person who prepared or authorized the Document and information and, if applicable, any Person to whom the Document was sent or shown; (b) specifying the date on which the Document was prepared or transmitted; (c) identifying the subject matter of the Document or information; (d) describing the nature of the Document (e.g., letter, telegram, etc.); (e) stating briefly why the Document or information is claimed to be privileged or to constitute work product; and (f) stating the paragraph of this request to which the Document or information relates.

3.  All Documents shall be produced in the file folders, envelopes, or other containers in which you keep or maintain the Documents.  If for any reason the container cannot be produced, produce copies of all labels or other identifying marks.  Documents shall be produced in such fashion as to identify the department, branch, or office in whose possession they were located and, where applicable, the natural person in whose possession they were found, and the business address of the custodian of each Document.  Documents attached to one another should not be separated.

4.   Documents not otherwise responsive to this request shall be produced if such Documents mention, discuss, refer to, or explain any Documents that are called for by this request, or if such Documents are attached to Documents called for by this request, or if such Documents constitute transmittal letters or memoranda, routing slips, letters, comments, evaluations, or similar materials.

5.   If any Interrogatory or portion thereof cannot be answered fully, the Interrogatory shall be answered to the extent possible and the response shall set forth the reasons for the failure to answer more fully.

6.   Where the answer to an Interrogatory requires the identification of Documents, it shall suffice to answer such Interrogatory by supplying copies of the Documents. However, if any of the aforementioned Documents cannot be produced because they have been lost or destroyed or otherwise disposed of, you are required to: (a) describe in detail the nature of the Document and its contents; (b) identify the Person who prepared or authorized the Document or material and, if applicable, the Persons to whom the Document was sent, copied, or blind copied; (c) specify the date on which the Document was prepared or transmitted; and (d) specify, if possible, (i) the date on which the Document was lost or destroyed and, if destroyed, the circumstances of and reasons for such destruction, and (ii) the Persons requesting or performing that destruction.

7.   If a Document was prepared in several copies or if additional copies are thereafter made, and if any such copies are identical but found in different files, are not identical, or are no longer identical by reason of subsequent notation or modification of any kind whatsoever, including, without limitation, notations on the front or back of any of the pages thereof, then each such copy is a separate Document and must be produced.

8.   In producing Documents and other materials, you shall furnish all Documents or things in your possession, custody, or control, regardless of whether such Documents or materials are possessed directly by you or your directors, officers, partners, members, agents, advisors, consultants, employees, representatives, subsidiaries, managing agents, affiliates, or investigators, or by your attorneys or their agents, advisors, consultants, employees, representatives, or investigators.

<u>Interrogatories</u>

1.   Identify and describe the backgrounds of all Persons whom the Ad Hoc Committee expects to call to provide live testimony, or an affidavit or declaration, concerning the DIP Financing Hearings or any other hearing in these Chapter 11 Cases related or ancillary to the DIP Financing Hearings, or any issue pertaining thereto, including without limitation the Prepetition Credit Facility and the DIP Credit Facility.

2.   With respect to each Person identified in Interrogatory 1, summarize the substance of his or her testimony, affidavit, or declaration and describe the relationship to the Ad Hoc Committee of each Person named and the terms of any engagement, employment, or retention by the Ad Hoc Committee or any member of the Ad Hoc Committee of each such Person.

3.   Identify each Person that the Ad Hoc Committee expects to call as an expert witness at the DIP Financing Hearings or any other hearing in these Chapter 11 Cases related or ancillary to the DIP Financing Hearings or any issue pertaining thereto, including without limitation the Prepetition Credit Facility and the DIP Credit Facility, and describe the terms of engagement, employment, or retention by the Ad Hoc Committee or any member of the Ad Hoc Committee of each such Person.

4.   Describe the specific subject matter regarding which each expert witness identified in response to Interrogatory 3 is expected to testify.

5.   State whether any expert witness identified in response to Interrogatory 3 rendered any Documents or oral reports as to his or her opinion(s) and provide a copy of each such Document and the substance or a summary of each such oral report.

6.   Identify all financial advisors, law firms, accountants, and other advisors or professionals retained by the Ad Hoc Committee in connection with the Prepetition Credit Facility, the DIP Credit Facility, the DIP Financing Hearings, any valuation of the Debtors' tangible or intangible assets, or any other matter relating to these Chapter 11 Cases.

7.   Identify all Communications with respect to any valuation of the tangible and intangible assets of the Debtors, including but not limited to any financial analyses or studies, projections, reports, internal memoranda, appraisals, pro formas, financial statements, work papers, liquidation analyses, or evaluations produced, prepared, or reviewed by the Ad Hoc Committee in connection therewith.

8.   Identify all Communications among the Ad Hoc Committee, the members of the Ad Hoc Committee, or any of them, concerning the Prepetition Credit Facility, the DIP Credit Facility, the DIP Financing Hearings, the purchase of outstanding debt of the Debtors, the valuation of the Debtors' tangible or intangible assets, or these Chapter 11 Cases, and each Person who participated in such Communication.

9.   Identify all information and Documents that were provided by the Ad Hoc Committee to the members of the Ad Hoc Committee, or any of them, regarding the Prepetition Credit Facility, the DIP Credit Facility, the DIP Financing Hearings, or the valuation of the Debtors' tangible or intangible assets, and any cover or transmittal letters relating thereto, and

identify each and every individual who provided such information to any members of the Ad Hoc Committee.

     10.   Identify the members of the Ad Hoc Committee to whom the information and Documents identified in response to Interrogatory 9 were provided.

     11.   Identify all information and Documents relating to the purchase by the Ad Hoc Committee, the members of the Ad Hoc Committee, or any of them, of any outstanding debt of the Debtors, including, but not limited to, duly executed assignment and acceptances, copies of the register of the administrative agent, written consents of the administrative agent, administration questionnaires, and evidence of payment of any processing or recordation fee.

     12.   State the amount of outstanding debt of the Debtors held by each member of the Ad Hoc Committee on each of the following dates: (a) October 7, 2005; (b) October 11, 2005; (c) October 19, 2005; and (d) October 24, 2005.

     13.   Identify all information and Documents verifying the amount of outstanding debt of the Debtors held by each member of the Ad Hoc Committee on each of the following dates: (a) October 7, 2005; (b) October 11, 2005; (c) October 19, 2005; and (d) October 24, 2005.

     14.   Identify all trades effectuated by members of the Ad Hoc Committee between October 7, 2005 and October 25, 2005 relating to outstanding debt of the Debtors, and indicate the date on which each such trade settled.

     15.   Identify all members of the Ad Hoc Committee that were original lenders under the Prepetition Credit Facility and the amount of each such member's commitment as of June 14, 2005.

16.   Identify and annex all Documents relied upon in responding to any of the Interrogatories, or referring or relating to the facts set forth in any response to any of the Interrogatories, identify each Person participating in the preparation of the answers to the Interrogatories, and describe the relationship of each such Person to the Ad Hoc Committee.

<u>Request For Production Of Documents</u>

Please produce the following:

1.   All Documents identified in or relating to the subject matter of each of your answers to the Interrogatories.

2.   All reports by any expert or by any Person consulted concerning expert testimony for the DIP Financing Hearings or for any other hearing related or ancillary to the DIP Financing Hearings in any of these Chapter 11 Cases, including all Documents relied upon by any such expert or Person and all Documents reviewed by any such expert or Person in connection with such reports.

3.   All Documents concerning the terms of engagement, employment, or retention by the Ad Hoc Committee of any expert, or any Person consulted concerning expert testimony, with respect to the DIP Financing Hearings or any other hearing related or ancillary to the DIP Financing Hearings in any of these Chapter 11 Cases.

4.   All Documents that you intend or expect to use as exhibits or evidence or for any other purpose at the DIP Financing Hearings, or at any other hearing related or ancillary to the DIP Financing Hearings in any of these Chapter 11 Cases.

5.   All Documents concerning, reflecting, or discussing any valuation of the tangible and intangible assets of the Debtors, including but not limited to any financial analyses or studies, projections, reports, internal memoranda, appraisals, <u>pro formas</u>, financial statements,

work papers, liquidation analyses, or evaluations produced, prepared, or reviewed by the Ad Hoc Committee or any member of the Ad Hoc Committee in connection therewith.

6.    All Documents evidencing Communications between the Ad Hoc Committee and members of the Ad Hoc Committee, or any of them, relating to, referring to, or concerning the Prepetition Credit Facility, the DIP Credit Facility, the DIP Financing Hearings, the valuation of the tangible or intangible assets of the Debtors, or these Chapter 11 Cases.

7.    All Documents concerning the Ad Hoc Committee's or any members of the Ad Hoc Committee's decision to object to the DIP Financing.

8.    All Documents concerning the formation or purpose of the Ad Hoc Committee, including, but not limited to, any Communications between or among the Ad Hoc Committee, the members of the Ad Hoc Committee, any prospective members of the Ad Hoc Committee, or any of them relating to such formation or purpose, and any Communications made by DK Acquisition Partners LP regarding the organization of the Ad Hoc Committee.

9.    All Documents evidencing Communications between the Ad Hoc Committee, the members of the Ad Hoc Committee, or any of them, and the Debtors and/or their financial advisor, relating to, referring to, or concerning the Prepetition Credit Facility, the DIP Credit Facility, the DIP Financing Hearings, the valuation of the tangible or intangible assets of the Debtors, or these Chapter 11 Cases.

10.    Any agreements or contractual arrangements between the Ad Hoc Committee and the members of the Ad Hoc Committee, or any of them, including but not limited to powers of attorney, indemnification agreements, and conflicts or other waivers.

11.    All Documents, including, but not limited to, all reports, internal memoranda, appraisals, pro formas, financial statements, financial analyses or studies,

projections, work papers, liquidation analyses, or evaluations, prepared, produced, or reviewed by the Ad Hoc Committee, members of the Ad Hoc Committee, or any of them, relating to, referring to, or concerning the Prepetition Credit Facility, the DIP Credit Facility, the DIP Financing Hearings, the valuation of the tangible or intangible assets of the Debtors, or these Chapter 11 Cases.

12.    All calendars, agendas, notes, and diaries, whether electronic or otherwise, of the Ad Hoc Committee, members of the Ad Hoc Committee, or any of them, relating to any Meetings in which items relating to, referring to, or concerning the Prepetition Credit Facility, the DIP Credit Facility, the DIP Financing Hearings, any valuation of the Debtors' tangible or intangible assets, or these Chapter 11 Cases were discussed.

13.    All Documents relating to the purchase by the Ad Hoc Committee, the members of the Ad Hoc Committee, or any of them, of any outstanding debt of the Debtors, including, but not limited to, duly executed assignment and acceptances, copies of the register of the administrative agent, written consents of the administrative agent, administration questionnaires, and evidence of payment of the processing and recordation fee, and any other Documents indicating the date on which members of the Ad Hoc Committee acquired outstanding debt of the Debtors.

14.    All Documents verifying the amount of outstanding debt of the Debtors held by each member of the Ad Hoc Committee on each of the following dates: (a) October 7, 2005; (b) October 11, 2005; (c) October 19, 2005; and (d) October 24, 2005.

15.    All Documents relating to trades effectuated by members of the Ad Hoc Committee between October 7, 2005 and October 25, 2005 involving outstanding debt of the Debtors.

16. With regard to each trade for which Documents are produced pursuant to Request 15, all Documents indicating the date on which each such trade settled.

17. All Documents evidencing the Ad Hoc Committee's and each member of the Ad Hoc Committee's standing to appear and assert an objection in these Chapter 11 Cases.

18. All Documents supporting the assertion in paragraph 2 of the Verified Statement Pursuant to Bankruptcy Rule 2019 of Goodwin Procter LLP that the members of the Ad Hoc Committee held or had "economic interests in, directly or indirectly, Loans (as defined in the Prepetition Credit Agreement) in the aggregate amount of at least $443,250,000" as of October 24, 2005.

19. All Documents supporting the assertion in paragraph 2 of the Verified Statement Pursuant to Bankruptcy Rule 2019 of Goodwin Procter LLP that "[o]ne or more members of the Ad Hoc Committee are original Lenders under the Prepetition Credit Agreement."

Dated:  New York, New York
       October 25, 2005

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: _John Butler Jr. (by permission /LCK)_

John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

SHEARMAN & STERLING LLP

By: _____

Douglas P. Bartner (DB 2301)
William J.F Roll, III (WR-8996)
Lynette C. Kelly (LK-7971)
599 Lexington Avenue
New York, NY 10022-6069
Telephone:  (212) 848-4000
Facsimile:  (212) 848-7179

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

# **EXHIBIT M**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
        In re                                       :    Chapter 11
                                                    :
DELPHI CORPORATION, et al.,                         :    Case No. 05-44481 (RDD)
                                                    :
                            Debtors.                :    (Jointly Administered)
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>NOTICE OF DEPOSITION UPON ORAL EXAMINATION</u>

        PLEASE TAKE NOTICE that, pursuant to Rules 7026, 7030, and 7034 of the

Federal Rules of Bankruptcy Procedure, incorporating Rules 26, 30, and 34 of the Federal Rules

of Civil Procedure, Delphi Corporation and certain of its subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases, will, by their attorneys, take the deposition

upon oral examination of an officer, director, managing agent, employee, member or other

person of the Ad Hoc Committee,[1] whom the Ad Hoc Committee shall designate pursuant to

Rule 30(b)(6) of the Federal Rules of Civil Procedure as having the most knowledge concerning

the matters set forth in Schedule A annexed hereto.

        The deposition will commence on Wednesday, October 26, 2005 at 2:00 p.m. at

the offices of Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022,

or at such other location upon which the parties may agree.  The deposition will be taken before

a notary public or other officer authorized by law to administer oaths, will be recorded by

stenographic and/or videographic means, will continue from day to day until completed, and is

being taken for purposes of discovery, or use at trial, or for such other purposes as are permitted

under the Federal Rules of Bankruptcy Procedure, the Federal Rules of Civil Procedure, or other

applicable rules of the Court.

*[Remainder of page has been left blank by intention]*

---

[1]    The "Ad Hoc Committee" means an ad hoc committee comprising certain funds and managed accounts
managed by DK Acquisition Partners LP, Latigo Partners, LP, Quadrangle Master Funding Ltd., Cyrus Capital
Partners, Canyon Capital Partners, Concordia Advisors LLC, Avenue Capital Group, Special Situations
Investing Group, Inc., D.E. Shaw & Co., L.P., Longacre Fund Management LLC, and Elliott & Associates.

Dated:  New York, New York
        October 25, 2005

                              SKADDEN, ARPS, SLATE, MEAGHER
                              & FLOM LLP

                              By:  _John Butler Jr. (by permission/lcw)_
                                 John Wm. Butler, Jr. (JB 4711)
                                 John K. Lyons (JL 4951)
                                 Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois  60606
                              (312) 407-0700

                                 - and -

                              SHEARMAN & STERLING LLP

                              By:  _____
                                 Douglas P. Bartner (DB 2901)
                                 William J.F Roll, III (WR-8996)
                                 Lynette C. Kelly (LK-7971)
                              599 Lexington Avenue
                              New York, NY 10022-6069
                              Telephone:  (212) 848-4000
                              Facsimile:  (212) 848-7179

                              Attorneys for Delphi Corporation, et al.,
                                 Debtors and Debtors-in-Possession

## SCHEDULE A

### Definitions

The following definitions apply to all requests set forth below unless otherwise indicated.

1. "Ad Hoc Committee" means an ad hoc committee comprising certain funds and managed accounts managed by DK Acquisition Partners LP, Latigo Partners, LP, Quadrangle Master Funding Ltd., Cyrus Capital Partners, Canyon Capital Partners, Concordia Advisors LLC, Avenue Capital Group, Special Situations Investing Group, Inc., D.E. Shaw & Co., L.P., Longacre Fund Management LLC, and Elliott & Associates.

2. "Bankruptcy Court" means the United States District Court for the Southern District of New York having jurisdiction over these Chapter 11 Cases and, to the extent of any reference made pursuant to 28 U.S.C. § 157 and/or a general order of such District Court pursuant to 28 U.S.C. § 151, the bankruptcy unit of such District Court.

3. "Bankruptcy Rules" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to these Chapter 11 Cases, promulgated under 28 U.S.C. § 2075.

4. "Chapter 11 Cases" means the above-captioned chapter 11 proceedings filed by the Debtors and jointly administered under case number 05-44481.

5. "Communication" means any transmission of words, ideas, or information between or among two or more Persons, including, but not limited to, spoken words, conversations, conferences, discussions, interviews, reports, meetings, negotiations, agreements, and understandings, whether transmitted in person or by an electronic device, and Documents, as defined below.

6. "DIP Credit Facility" means Delphi Corporation's secured postpetition credit facility, as guaranteed by certain of Delphi Corporation's subsidiaries and affiliates, up to an aggregate principal amount not to exceed $2 billion, consisting of a $1,750,000,000 revolving credit facility (inclusive of a sublimit in the aggregate of $325 million for the issuance of letters of credit) and a $250 million term loan facility, from JPMorgan Chase Bank, N.A., as administrative agent, and from a syndicate of other financial institutions arranged by J.P. Morgan Securities Inc. and Citigroup Global Markets, Inc., pursuant to the Revolving Credit, Term Loan and Guaranty Agreement, dated as of October 8, 2005, and the other loan documents to be executed and delivered in connection therewith, substantially in the form attached as <u>Exhibit A</u> to the Debtors' Motion For Order Under 11 U.S.C. §§ 105, 361, 362, 363, 364(c), 364(d), And 364(e) And Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing Debtors To Obtain Secured Postpetition Financing On Superpriority Secured And Priming Basis, (II) Authorizing Use Of Cash Collateral, (III) Granting Adequate Protection To Prepetition Secured Lenders, (IV) Granting Interim Relief, And (V) Scheduling A Final Hearing Under Fed. R. Bankr. P. 4001(b) and (c) (Docket No. 42).

7. "DIP Financing Hearings" means those hearings at which approval, on an interim or final basis, of the DIP Credit Facility was, is, or will be considered by the Bankruptcy Court.

8. "Document" shall have the same meaning as it has in Bankruptcy Rule 7034(a) and Rule 34 of the Federal Rules of Civil Procedure and shall include any written or other electronic record, graphic, or photographic matter of any kind or character, whether produced or reproduced, and shall include, without limiting the generality of the foregoing, all photographs, letters, telegrams, teletypes, facsimiles, correspondence, electronic mail, contracts,

agreements, drafts, proofs, work papers, applications, pro formas, financial statements, resumes, notes to file, reports, memoranda, mechanical or electronic sound recordings or transcripts thereof, computer programs, tapes or discs, calendar or diary entries, memoranda of telephone or personal conversations or of Meetings or conferences, transcripts, maps, studies, reports, charts, interoffice communications, minutes of meetings, articles, announcements, ledgers, vouchers, checks, bills and invoices, including originals and copies of any of the foregoing, whether typed, printed, handwritten, or on tape or otherwise recorded, and any material underlying, supporting, or used in the preparation of any such document.

9.   "Meeting" means any encounter between two or more Persons during which Communication of any kind occurred and includes, but is not limited to, formal or informal gatherings, conversations, and telephone calls.

10. "Person" means an individual, firm, corporation, partnership, limited liability company, sole proprietorship, association, joint stock company, joint venture, estate, trust, unincorporated organization, or other legal or governmental entity, including any divisions or departments within any of the aforementioned.  All references to any Person (including any defined Person) shall include any of such Person's present or former parents, subsidiaries, divisions, subdivisions, affiliates, predecessors, successors, joint ventures, present and former officers, directors, financial advisors, consultants, analysts, employees, representatives, attorneys, agents, and all other Persons acting or purporting to act on behalf of such Person.

11. "Prepetition Credit Facility" means the revolving loans, term loans, swingline loans, and letters of credit up to an aggregate principal amount of $2,825,000,000 pursuant to that certain Third Amended and Restated Credit Agreement, dated as of June 14, 2005, among Delphi, as borrower, JPMorgan Chase Bank, N.A., as administrative agent, the lenders from time

to time party thereto, Citicorp USA, Inc., as syndication agent, Credit Suisse First Boston,

Deutsche Bank AG, New York Branch, and HSBC Bank USA, as co-documentation agents for

the revolving facility, Deutsche Bank AG, New York Branch, as documentation agent for the

term facility, J.P. Morgan Securities Inc. and Citigroup Global Markets Inc., as joint bookrunners

for the revolving facility, J.P. Morgan Securities Inc., Citigroup Global Markets, Inc., and

Deutsche Bank Securities Inc., as joint bookrunners for the term facility, and J.P. Morgan

Securities Inc. and Citigroup Global Markets, Inc., as joint lead arrangers.

<u>Subjects Of Inquiry</u>

1. The Prepetition Credit Facility, the DIP Credit Facility, the DIP Financing

Hearings, and the valuation of the tangible or intangible assets of the Debtors.

2. The Ad Hoc Committee's or any members of the Ad Hoc Committee's

decision to object to the DIP Financing.

3. The formation and purpose of the Ad Hoc Committee.

4. Agreements or contractual arrangements between the Ad Hoc Committee and

the members of the Ad Hoc Committee, or any of them.

5. Documents, reports, internal memoranda, appraisals, <u>pro formas</u>, financial

statements, financial analyses or studies, projections, work papers, liquidation analyses, or

evaluations, prepared, produced, or reviewed by the Ad Hoc Committee, members of the Ad Hoc

Committee, or any of them, relating to, referring to, or concerning the Prepetition Credit Facility,

the DIP Credit Facility, the DIP Financing Hearings, the valuation of the tangible or intangible

assets of the Debtors, or these Chapter 11 Cases.

6. The purchase by the Ad Hoc Committee, the members of the Ad Hoc

Committee, or any of them, of any outstanding debt of the Debtors.

7.   The amount of outstanding debt of the Debtors held by each member of the Ad Hoc Committee on each of the following dates: (a) October 7, 2005; (b) October 11, 2005; (c) October 19, 2005; and (d) October 24, 2005.

8.   Trades involving outstanding debt of the Debtors effectuated by members of the Ad Hoc Committee between October 7, 2005 and October 25, 2005, and the dates on which each such trade settled.

## **EXHIBIT N**