```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                         :
     In re                                               :
                                                         :    Chapter 11
DELPHI CORPORATION, et al.,                              :
                                                         :    Case No.  05 – 44481 (RDD)
                      Debtors.                           :
                                                         :    (Jointly Administered)
                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
```

FINAL ORDER UNDER 11 U.S.C. §§ 363 AND 553 AUTHORIZING
(I) CONTINUED MAINTENANCE OF EXISTING BANK ACCOUNTS, (II) CONTINUED
USE OF EXISTING CASH MANAGEMENT SYSTEM, (III) CONTINUED USE OF
EXISTING BUSINESS FORMS, (IV) PRESERVATION AND EXERCISE OF
INTERCOMPANY SETOFF RIGHTS, AND (V) GRANT OF ADMINISTRATIVE
<u>STATUS FOR POSTPETITION INTERCOMPANY TRANSACTIONS</u>

("CASH MANAGEMENT ORDER")

Upon the motion, dated October 8, 2005 (the "Motion"),[1] of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order (the "Final Order") under sections 363 and 553 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), authorizing the (a) continued maintenance of existing bank accounts, (b) continued use of existing cash management systems, (c) continued use of existing business forms, (d) preservation and exercise of intercompany setoff rights, and (e) grant of administrative status for postpetition intercompany transactions; and upon the Affidavit Of Robert S. Miller, Jr. In Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005; and upon the record of the hearing held on the Motion; and the Court

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Motion.

having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and upon the record herein; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1. The Motion is GRANTED on a final basis.

2. <u>Maintenance Of Bank Accounts</u>. Pursuant to section 363 of the Bankruptcy Code, the Debtors, in their discretion, are authorized and empowered to: (a) designate, maintain, and continue to use any and all of their respective miscellaneous depository, receipt, concentration, payroll disbursement, and nonpayroll disbursement accounts (collectively, the "Prepetition Bank Accounts") in existence as of October 8, 2005 (the "Petition Date"), with the same account numbers, including, without limitation, the accounts identified in <u>Exhibit A</u> attached hereto at the financial institutions identified therein (collectively, the "Banks"), regardless of whether such financial institutions are designated depositories in the Southern District of New York, (b) if necessary, open new accounts and give the Office of the United States Trustee (the "U.S. Trustee") and the statutory committee of unsecured creditors prompt notice of each such newly-opened account, wherever it is needed, regardless of whether the financial institution maintaining such account is a designated depository in the Southern District of New York (such new accounts, together with the Prepetition Bank Accounts, are hereinafter referred to as the "Bank Accounts"), (c) treat the Bank Accounts and any such newly-opened accounts for all purposes as accounts of the Debtors in their capacity as debtors-in-possession, and (d) close any Bank Account; <u>provided</u>, <u>however</u>, that the Debtors and the U.S. Trustee shall

have until February 7, 2006 to reach a consensual agreement with respect to the Debtors use of accounts at financial institutions that are not designated depositories in the Southern District of New York (the "Reserved Issue"); provided, further, that, if the Debtors and the U.S. Trustee have not reached an agreement with respect to the Reserved Issue by February 7, 2006, the U.S. Trustee may, but shall not be required to, file a statement or motion by February 2, 2006, in accordance with this Court's Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And Administrative Procedures, And (III) Scheduling Initial Case Conference In Accordance With Local Bankr. R. 1007-2(e), requesting this Court to resolve the Reserved Issue at the next regularly-scheduled omnibus hearing.

3. Checks.  The Debtors shall, as soon as reasonably practicable, cause the phrase "Debtor-in-Possession" to be included on their checks issued within the United States.

4. Cash Management Systems.  The Debtors are authorized to continue to use their existing cash management systems, as generally delineated in the flow charts attached as Exhibit B hereto, and shall maintain through the use thereof detailed records reflecting all transfers of funds, including intercompany services and corresponding transfers among appropriate intercompany accounts (collectively, the "Intercompany Transactions"), under the terms and conditions provided for by the existing agreements with the institutions participating in the Debtors' cash management systems, except as modified by this Order.  In connection with the ongoing utilization of their cash management systems, the Debtors shall continue to maintain records with respect to all transfers of cash so that all transactions, including Intercompany Transactions, may be readily ascertained, traced, and recorded properly on applicable intercompany accounts.

5. After the Petition Date, and subject to the terms of this Order, all banks at which the Bank Accounts are maintained are authorized and directed to continue to administer the Bank Accounts as such accounts were maintained prepetition, without interruption and in the usual and ordinary course, and to pay any and all checks, wire transfers, automated clearing house ("ACH") transfers, electronic fund transfers, or other items presented, issued, or drawn on any of the Bank Accounts; provided, however, that unless otherwise ordered by this Court, no checks, drafts, ACH transfers (excluding any ACH transfer the banks are obligated to settle), or other items presented, issued, or drawn on any of the Bank Accounts prior to the Petition Date shall be honored.

6. Each Bank at which a disbursement account is maintained shall implement reasonable handling procedures designed to effectuate the terms of this Order.  No Bank which implements such handling procedures and then honors a prepetition check or other item drawn on any account that is the subject of this Order (a) at the direction of the Debtors to honor such prepetition check or item, (b) in good faith belief that this Court has authorized such prepetition check or item to be honored, or (c) as a result of an innocent mistake made despite implementation of such handling procedures, shall be deemed to be liable to the Debtors or their estates or otherwise in violation of this Order.

7. Subject to the provisions of this Order, the Banks are authorized and directed to honor all representations from the Debtors as to which checks should be honored or dishonored and any final payment made by a Bank prior to the Petition Date (including any ACH transfer that the Banks are or become obligated to settle) against any of the Bank Accounts, or any instrument issued by a Bank on behalf of any Debtor pursuant to a "midnight deadline" or

4

otherwise, shall be deemed to be paid prepetition, whether or not actually debited from any Bank Account prepetition.

8. All third party service providers with whom the Debtors directly or indirectly have contracted to provide services in connection with the operation of their cash management systems are authorized and directed to continue to provide to the Debtors those services they provided prior to the Petition Date, until further order of this Court.

9. The Debtors shall indemnify, defend, and hold harmless General Motors Corporation ("GM"), its directors, officers, employees, and agents from and against any losses, claims, damages, costs, expenses, liabilities, or actions (including reasonable attorneys' fees) arising out of the performance or failure to perform vendor and payroll disbursement processing services under that certain Financial Services Supply Agreement between GM and Delphi Automotive Systems LLC dated as of December 16, 1998 (the "FSS Agreement"), except that no indemnification shall be provided by the Debtors under this Order or under the FSS Agreement to the extent that GM has committed gross negligence or willful misconduct.

10. <u>Intercompany Transfers And Setoff</u>. The Debtors are authorized, from and after the Petition Date, to continue to engage in the Intercompany Transactions in the ordinary course of the Debtors' businesses.

11. The Debtors and their non-Debtor affiliates are authorized to set off prepetition obligations arising on account of Intercompany Transactions between a Debtor and another Debtor, or between a Debtor and a non-Debtor, in accordance with their existing practices regarding the monthly netting of intercompany payables and receivables.

12. <u>Debtor Reimbursement Claims and Debtor Liens</u>. To the extent a Debtor receives a postpetition intercompany loan or transfer (each a "Beneficiary Debtor"), and such

postpetition intercompany loan or transfer is made (each an "Advance") by (a) any other Debtor or (b) any non-Debtor affiliate (together (a) and (b) an "Adequately Protected Entity"), the Adequately Protected Entity shall have, subject to the limitations set forth in paragraph 13 below (x) an allowed claim under sections 364(c)(1) and 507(b) of the Bankruptcy Code against the Beneficiary Debtor for the amount of such Advance, having priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, which claim shall bear interest at a rate agreed between the Debtors from time to time for the period accruing from and after the date such claim arises until repayment thereof (collectively, the "Debtor Reimbursement Claim") and (y) a lien on all real and personal property of the Beneficiary Debtor under section 364(c)(3) of the Bankruptcy Code securing such Debtor Reimbursement Claim (a "Debtor Lien").

        13.   All Debtor Reimbursement Claims and Debtor Liens shall be junior, subject and subordinate to and only to the Superpriority Claims, the DIP Liens, the Adequate Protection Obligations, Junior Adequate Protection Liens, and the Replacement Liens (all as defined in the Final Order Under 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), And 364(e) And Fed. Bankr. P. 2002, 4001 And 9014 (I) Authorizing Debtors To Obtain Postpetition Financing, (II) To Utilize Cash Collateral And (III) Granting Adequate Protection To Prepetition Secured Parties (the "Final DIP Financing Order")) and to any claims against such Beneficiary Debtor that are expressly senior to, and on a parity with, or carved out from the Superpriority Claims, the DIP Liens, the Adequate Protection Obligations, Junior Adequate Protection Liens or the Replacement Liens.  All Debtor Liens shall be "silent" liens and the Adequately Protected Entity shall forbear from exercising, and shall not be entitled to exercise, any right or remedy relating to any Debtor Reimbursement Claim or Debtor Lien, including, without limitation,

6

taking any of the actions that the Pre-Petition Agent, the Pre-Petition Secured Lenders and holders of Replacement Liens and Junior Adequate Protection Liens are prohibited from taking pursuant to paragraph 8 of the Final DIP Financing Order, including, without limitation, seeking relief from the automatic stay, or seeking any sale, foreclosure, realization upon repossession or liquidation of any property of another Debtor, or taking any position with respect to any disposition of the property, the business operations, or the reorganization of another Debtor. The Debtor Lien of the Adequately Protected Entity automatically, and without further action of any person or entity of any kind, shall be released or otherwise terminated to the extent that property subject to such Debtor Lien is sold or otherwise disposed of by or on behalf of the Agent (as defined in the Final DIP Financing Order) or any other Debtor or to the extent that such property is subject to a lien prior to the DIP Liens and such lien is permitted under the DIP Documents (as defined in the Final DIP Financing Order).

      14.    With respect to the effect of Debtor Liens on any sale of property by the Debtors, (a) the Debtors may sell property, in accordance with section 363 of the Bankruptcy Code, free and clear of any Debtor Lien, with such lien attaching to the proceeds of sale in the same priority and subject to the same limitations and restrictions as existed in respect of the property sold and (b) the provisions of section 363(k) of the Bankruptcy Code shall not apply.

      15.    In connection with any postpetition intercompany loan transaction, the Debtors shall provide to the financial advisors to the official committee of unsecured creditors periodic reports, no less frequently than monthly, which shall identify all loans and borrowings in such period and all intercompany loan balances for each Debtor, and shall include, at a minimum, information regarding any material increase in the credit exposure of any intercompany lender, any material increase in borrowing levels of any intercompany borrower,

and any material deterioration in the financial condition of any intercompany lender or borrower, and shall also provide similar reports to counsel for the Pension Benefit Guaranty Corporation. In each case, such reports shall contain such information, and be delivered in such a manner, as is reasonably acceptable to the parties. Nothing in this order relieves any of the Debtors or other person or entity of its fiduciary duties with respect to entry into any intercompany transactions.

16. The Debtors are hereby authorized to execute any additional documents as may be required to carry out the intent and purpose of this Order.

17. The Debtors shall serve a copy of this Order, by overnight mail, on each of the Banks within five business days of the entry of this Order.

18. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

19. The requirement under Local Rule 9013-1(b) for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

20. Each of the banks at which the Bank Accounts are maintained are hereby authorized to credit, debit, and/or refund amounts in the ordinary course of business to and/or from the Bank Accounts it maintains in respect of returned items, chargebacks, or other cash management losses and unpaid fees regardless of whether any such returned items, chargebacks, losses, or unpaid fees were incurred or first became due prior to or after the Petition Date.

Dated:    November 4, 2005
          New York, New York

/s/ Robert D. Drain
UNITED STATES BANKRUPTCY JUDGE