CHARLES E. BOULBOL (CB-1049)
Attorney for Russell Reynolds Associates, Inc.
26 Broadway 17th Floor
New York, New York  10004
(212) 825-9457- Telephone
(212) 825-9414 - Facsimile

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

In re:

        DELPHI CORP., et al.,

                      Debtors.

Case No.
**05-B-44481 (RDD)**
**Jointly Administered**

**Chapter 11**

------------------------------------------------------------------------X

**MOTION FOR ORDER FIXING DEADLINE FOR THE DEBTORS
TO ASSUME OR REJECT EXECUTORY CONTRACT WITH
RUSSELL REYNOLDS ASSOCIATES, INC.**

        Russell Reynolds Associates, Inc. ("RRA"), by its attorneys, Charles E. Boulbol, P.C., as and for its motion seeking an order pursuant to 11 U.S.C. § 365 (d)(2) to fix a deadline within which Delphi Corporation et al ("Debtors") must assume or reject an executory contract between RRA and the Debtors, represents and shows this Court as follows:

**Preliminary Statement**

        1.      By this motion, RRA seeks an Order requiring the Debtors to assume or reject an executory contract between RRA and the Debtors. The facts and circumstances of the

contract between RRA and Debtor, and the uncertainty the bankruptcy petition has created with respect to that contract, requires prompt intervention by the Court.

2. The executory contract between the Debtors and RRA, a copy of which is attached as Exhibit A, provides that RRA will conduct an executive recruiting search for Debtors to hire a Director of Global Architecture and Infrastructure. The Debtors have insisted that RRA must continue to provide its services to Debtor in accordance with the terms of the executory contract, and even has conducted post-petition interviews of individuals selected and recommended to Debtors by RRA, but the Debtors have refused to: (I) either assume or reject the executory contract; (ii) obtain the Court's permission to hire RRA as an ordinary course professional; and, (iii) provide any guaranties to RRA that it will be paid for its performance of the executory contract.

3. Despite Debtors' demand upon RRA to continue its performance under the executory contract between them, there is no apparent basis upon which RRA can be assured that it either is authorized to perform under the executory contract or that it will be paid for its services.

4. The Debtors' demand for RRA's continued performance of the executory contract between them in the absence of either an assumption of the agreement and/or the Court's approval of RRA's retention by Debtor, imposes an unreasonable burden upon RRA and appears to unjustly enrich the Debtors' estate.

**Jurisdiction and Venue**

5.  The Court has jurisdiction over this application pursuant to 28 U.S.C. §§ 157 (a) and 1334 (a). This application is a core proceeding under 28 U.S.C. § 157 (b)(2)(a).

**Background**

**6.**  On or about July 12, 2005, RRA and the Debtors entered into a written agreement (the "Retainer Agreement") whereby RRA agreed to lead an executive recruiting search for Debtors' Director of Global Architecture and Infrastructure (the "Executive Search"). A copy of the Retainer Agreement is attached as Exhibit A.

7.  RRA is one of the world's leading providers of executive recruiting services. RRA was retained by the Debtors in accordance with the Retainer Agreement to solicit and vet individuals for employment by Debtors as their Director of Global Architecture and Infrastructure in accordance with the Retainer Agreement. RRA implemented a search strategy specifically tailored to the Debtors' needs and focused its approaches to client contacts and references in order to develop prospects, identify candidates, schedule interviews and ultimately obtain employment for a successful candidate with Debtors.

8.  The Executive Search has been conducted under the direct supervision and control of Matt Aiello of RRA together with other members of RRA's staff.

9.  The Retainer Agreement provides that RRA's fee for the Executive Search is one-third of the total compensation required to attract a candidate to the Director of Global Architecture and Infrastructure position. In addition, the minimum fee for the Executive Search,

without regard to its outcome, is $106,300 (the "Minimum Fee"), of which $6,300 is denominated as a "communications charge."

10. The Minimum Fee was to be paid in three monthly retainers, all of which were billed pre-petition. In addition to the Minimum Fee, and any fee that may be due to RRA based upon the compensation given to the successful candidate (the "Pick-Up Fee"), the Debtors are obligated to reimburse RRA for all of its out-of-pocket recruiting related expenses without mark-up.

11. The Debtor paid the first retainer in the amount of $35,433.34. The second retainer was paid by a check that bounced, and the third retainer was not paid at all.

12. The Debtor currently owes RRA $71,504.94 in connection with the Executive Search. Post-petition out-of-pocket candidate expenses have been incurred by RRA but they have not yet been billed to Debtor.

13. In addition to the money owed to RRA in connection with the Executive Search, the Debtors also owe RRA $73,055.90 in connection with a pre-petition executive search for Debtor's Director of Global Accounting, and $4,652.76 in connection with a pre-petition executive search for Debtor's Vice President of Audit.

14. Since the filing of the Petition initiating this case, the Debtors also have asked RRA to take on two additional executive searches. RRA has declined to accept these engagements because Debtors' prior representation to RRA that it would be included in Debtors' First Day Orders as an Ordinary Course Professional has since proven to be false, and the Debtors have refused to seek the Court's approval to assume or reject the Retainer Agreement at

issue on this Motion. Under these circumstances, without any assurance that RRA will be paid either for the Executive Search or any future search, RRA is unwilling to provide any services to the Debtor that it is not already obligated to provide.

15.    The Retainer Agreement provides that RRA will continue the Executive Search "until it is completed, charging only for expenses," and that the Debtors may cancel the Executive Search at any time. If, however, the Executive Search is cancelled at any time after the third month, the Minimum Fee is considered to be earned. The Retainer Agreement also provides that if a "successful candidate leaves Delphi during the first 12 months of employment for any reason other that just cause, [RRA] will conduct the search again billing only for out-of-pocket recruiting related expenses." It therefore is indisputable that significant future performance under the Retainer Agreement may be required of both RRA and the Debtors.

16.    The Retainer Agreement also provides that where, as here, the Debtors have failed to pay the Minimum Fee, RRA is entitled to suspend the Executive Search.

17.    On October 8, 2005, the Debtors filed voluntary petitions in this Court and the cases are being jointly administered.

18.    On or about October 13, 2005, Mr. Skip Wagner of Debtors' Human Resources Department advised Mr. Aiello that RRA had a "legal obligation" to continue the Executive Search notwithstanding the fact that payments already made to RRA likely would be "recalled."

- 5 -

19. On or about October 21, 2005, Ms. Bette Walker, a senior executive of Debtors, also advised Mr. Aiello that RRA was legally obligated to continue the Executive Search.

20. Since the execution of the Retainer Agreement, RRA has considered scores of candidates for employment by Debtors as their Director of Global Architecture and Infrastructure, and the Debtors have interviewed six prospective candidates. Two of these candidates have been interviewed during the post-petition period. The most recent interview was conducted by Debtors on November 3, 2005.

21. There is no doubt that Debtors' bankruptcy has added to RRA's burden in completing the executive search and that numerous prospective candidates have withdrawn themselves from consideration in light of Debtors' bankruptcy. Nevertheless, RRA has continued to solicit and recruit high level and very qualified individuals and has worked very hard to keep prospective candidates' interested in obtaining employment at Delphi.

22. RRA repeatedly has sought assurances from Debtors' representatives that it will be paid for the services it has rendered under the Retainer Agreement. The Debtors' representatives have refused to provide these assurances and have stated clearly that no effort will be made either to assume or reject the Retainer Agreement or to obtain the Court's approval to retain RRA as an executive search consultant.

23. Under these circumstances, RRA has no choice but to seek a Court order compelling the Debtors to assume or reject the Retainer Agreement.

**Relief Requested**

24.     11 U.S.C. § 365 (d)(2) provides that the Debtors may assume or reject an executory contract at any time prior to the confirmation of a plan of reorganization, but that any party to such executory contract may seek an order compelling the Debtors to assume or reject the contract within a specified period of time.

25.     The Retainer Agreement presents several unique circumstances which militate strongly in favor of compelling the Debtors to make a prompt decision whether to assume or reject it.

26.     The Debtors have insisted that RRA continue to perform its obligations under the Retainer Agreement without providing any commitment that RRA will be paid for its services.

27.     The Debtors' insistence that RRA complete its performance under the Retainer Agreement without providing a commitment that RRA will be paid for its services is manifestly unfair. Indeed, the Debtors appear to be unreasonably seeking to compel RRA's full performance of an executory contract without imposing any mutual obligation to pay for those services upon Debtors.

28.     Moreover, as more fully stated in the accompanying Memorandum of Law, it is unclear whether RRA's post-petition services to Debtor require Court approval under 11 U.S.C. § 337 thereby governing its compensation under 11 U.S.C. § 503 (b)(2), or whether its services do not require Court approval and RRA's compensation will be governed by 11 U.S.C. § 503 (b)(1).

29. For these reasons, RRA respectfully requests that the Court issue an order requiring the Debtors to assume or reject the Retainer Agreement within a reasonable period of time and, if the agreement is rejected, fixing the reasonable value of RRA's post-petition services under 11 U.S.C.§ 503 (b)(1).

WHEREFORE, Russell Reynolds Associates, Inc. respectfully requests relief consistent with the foregoing, together with such other and further relief as may be just and proper under the circumstances.

Dated:    New York, New York
November 9, 2005

CHARLES E. BOULBOL, P.C.

By:_____
Charles E. Boulbol (CB-1049)
26 Broadway, 17th Floor
New York, New York 10004
212-825-9457
Attorney for Russell Reynolds Associates, Inc.