SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| DELPHI CORPORATION et al., | : | Case No. 05-44481 (RDD) |
| Debtors. | : | (Jointly Administered) |

AFFIDAVIT OF MATTHEW J. ZARNOSKY IN SUPPORT OF
MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(a) AND 365
AUTHORIZING THE DEBTORS TO OBTAIN PREFERENTIAL
POWER RATES PURSUANT TO LETTER AGREEMENT WITH NIAGARA
MOHAWK POWER CORPORATION AND ASSUMPTION THEREOF

STATE OF NEW YORK        )
                                       ) ss:
COUNTY OF NEW YORK     )

I, Matthew J. Zarnosky, being duly sworn, state that the following is true to the best of my knowledge, information, and belief:

1. I am a Facility Plant Engineer of Delphi Corporation ("Delphi"), debtor and debtor-in-possession in the above-captioned chapter 11 cases. I have been on this position for five years. I am familiar with the Debtors operations, their process of obtaining electrical services, and the prices customarily charged for such services in the industry.

2. I submit this affidavit in support of the motion (the "Motion") for an order under 11 U.S.C. §§ 105(a) And 365 Authorizing the Debtors to Obtain Preferential Power Rates Pursant to Letter Agreement With Niagara Mohawk Power Corporation ("NIMO") and Assumption Thereof, dated November 9, 2005. Pursuant to the Motion, the Debtors seek to assume the Letter Agreement, dated September 20, 2005, between Delphi Automotive Systems LLC ("DAS LLC") and NIMO (the "Letter Agreement") on the terms and conditions described in the Motion and the term sheet between DAS LLC and NIMO.

3. Pursuant to the Power Contracts (as defined below), NIMO provided low-cost energy to Ultra Tool & Plastics, Inc. ("Ultra Tool"). At some time following the execution of the Power Contracts, Ultra Tool became severely distressed and filed for chapter 11 bankruptcy protection. Either as part of, or contemporaneous with such bankruptcy proceeding, Par Industries, LLC ("Par") acquired all or some portion of the assets of Ultra Tool, including the operations of the manufacturing facility located at 500 Commerce Drive, Amherst, New York (the "Facility"). Under various purchase orders and/or supply agreements, Par manufactured and supplied component parts to DAS LLC, which component parts were critical to the continuation of uninterrupted production at other Delphi manufacturing operations.

4. Subsequently, Par experienced financial and operational problems that threatened Par's financial viability and the supply of component parts. In response, DAS LLC, extended a secured first priority loan to Par. Despite the loan and other accommodations provided to Par by DAS LLC, Par's financial viability and the supply of the component parts remained threatened and Par determined that it was no longer able to meet its obligations to supply the component parts to DAS LLC. As a result of exercising its rights with respect to the collateral provided in connection with the secured first priority loan extended to Par, the Debtors obtained ownership in certain equipment and commenced its own operations at the Facility for the continued manufacture and supply of component parts.

5. The low-cost rates provided to Par, as a successor of interest to Ultra Tool, were highly beneficial rates and were essential element of the cost structure of the Facility. Accordingly, on September 20, 2005, DAS LLC entered into the Letter Agreement with NIMO which provided for the assignment of the underlying energy contracts (collectively, the "Power Contracts"). Pursuant to the Letter Agreement, DAS LLC was to pay NIMO the sum of $60,000 (the "Assumption Price") in consideration for NIMO's assent to the Power Contracts which consist of the:

(i) Replacement Power Allocation Agreement among NIMO, Power Authority of the State of New York ("NYPA"), and Ultra Tool, dated May 1, 1988,

(ii) Expansion Power Allocation and Service Agreement among NYPA, NIMO, and Ultra Tool, dated July 13, 1992,

(iii) Replacement Power Agreement between NYPA and Ultra Tool, dated October 17, 1994, and

(iv) Power For Jobs Service Allocation Agreement between NYPA and Ultra Tool, dated May 21, 1999.

6. Although the Letter Agreement was executed, the Debtors sought chapter 11 protection before they were able to issue payment to NIMO in connection with the

assignment. I have reviewed the Letter Agreement, the Power Contracts, and the energy rates related thereto. The assumption of the Letter Agreement will provide the Debtors with significant energy cost savings. The assumption will save the Debtors at least $50,000 per month over the term of these contracts - an average of $12,500 per contract per month. The term of these contracts range from 10 months to 7 years from today's date. In addition, the terms of each contract can be extended if certain conditions are met. There are no alternative means of obtaining such low prices. Moreover, the Power Contracts, which provide for the distribution of hydro-electric energy, are very difficult to obtain from other sources.

7. I understand that the amount necessary to cure the defaults existing under the Power Contracts is $ 96,888.70, (collectively with the Assumption Price, the "Cure Amount"), which is the total amount due for actual services rendered but unbilled by NIMO for periods during which DAS LLC operated the Facility prior to October 8, 2005. The savings will exceed the payment of the Cure Amount within 3 months.

By: s/ Matthew J. Zarnosky_____
    MATTHEW J. ZARNOSKY

Sworn to and subscribed
before me this 9th day
of November, 2005

_____
 Notary Public