SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
|  | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF DONALD S. POOLE IN SUPPORT OF
MOTION FOR ORDER UNDER 11 U.S.C. §§ 105(a), 363, AND 365
AUTHORIZING THE DEBTORS TO PRESERVE OPTION TO ENTER
INTO NEW POWER CONTRACT WITH PREFERENTIAL RATES
WITH CONSUMERS ENERGY COMPANY AND ANCILLARY
ASSUMPTION OF RELATED POWER CONTRACTS

I, Donald S. Poole, being duly sworn, state that the following is true to the best of my knowledge, information, and belief:

1.      I am  the Manager of Utilities Supply of Delphi Corporation ("Delphi"), debtor and debtor-in-possession in the above-captioned chapter 11 cases.  I am familiar with the Debtors' operations, their process of obtaining electrical services and the prices customarily charged for such services in the industry.  I have held this position in Delphi since 1999 and have worked with electrical utility companies on industrial plant power delivery for over 35 years.  I have a B.A. degree in Electrical Engineering from the University of Akron and am a registered Professional Engineer in the State of Ohio.

2.      I submit this affidavit in support of the motion  for an order under 11 U.S.C. §§ 105(a), 363, And 365 Authorizing The Debtors To Preserve Option To Enter Into New Power Contract With Preferential Rates With Consumers Energy Company And Ancillary Assumption Of Related Power Contracts, dated November 9, 2005 (the "Motion").  Pursuant to the Motion, the Debtors seek to have Delphi Automotive Systems LLC ("DAS LLC") assume that certain Special Manufacturing Contract, dated October 13, 1995, as amended by the Partial Assignment Agreement, dated December 22, 1998 (the "Power Contracts"), attached to the Motion as <u>Exhibit A</u> and <u>Exhibit B</u>, respectively, on the terms and conditions set forth below.  By assuming the Power Contracts, DAS LLC will be entitled to preferential rates with respect to a New Power Contract (as defined below) for power services to certain DAS LLC sites for a two to four period, commencing on January 2006, on terms that would provide the Debtors with significant savings.

<u>The Power Contracts With Consumers Energy Corporation</u>

   3.  With operations throughout the United States, the Debtors use electric services from hundreds of utility companies.  Consumers Energy Company ("CEC") is one of the Debtors' largest electrical providers, providing services to six Delphi sites located in Michigan.  Prior to Delphi's separation from General Motors ("GM") in 1999, the six Delphi sites obtained electrical power through a Special Manufacturing Contract, dated October 13, 1995, between General Motors and CEC (the "Special Manufacturing Contract").  Upon Delphi's separation from GM, Delphi, GM and CEC entered into a Partial Assignment Agreement, dated December 22, 1998, in which DAS LLC became directly obligated to CEC under the Special Manufacturing Contract.  The Power Contracts expire on December 31, 2005.

   4.  The Power Contracts entitle the Debtors to obtain electricity at preferential rates.  The Power Contracts are valuable, low-cost, below-market contracts which provide substantial savings that would be difficult to procure from other sources.  CEC has informed DAS LLC that DAS LLC will not be eligible for preferential rates for the contract year commencing in 2006 unless it assumes the Power Contracts and pays the cure amount thereunder, which is approximately $3.6 million (the  "Cure Amount").

   5.  According to CEC, only a "current customer taking Primary Voltage Service under a Special Contract approved by the Michigan Public Service Commission (MPSC) and whose special contract terminates on December 31, 2005" will be eligible for the preferential rates set forth by the Michigan Public Service Commission ("MPSC") for the contract year beginning in 2006.  It is anticipated that the MPSC will publish the preferential rates in late November 2005, and that eligible customers must

elect such rates within fifteen calendar days thereafter.  The preferential rates may not be available following the close of the fifteen-day period.  CEC is not obligated to provide preferential power rates to the Debtors, and CEC has made clear through numerous contacts and correspondence that it will not do so if the Power Contracts are not assumed prior to their expiration.  Thus, unless DAS LLC assumes the Power Contracts, it will not be entitled to receive the preferential rates provided to "current customers."

6.    As indicated above, the negotiations are complicated by the fact that the MPSC will not publish its new rates until late November, which prevents DAS LLC from entering into a New Power Contract at this time.  Nor can DAS LLC simply assume the Power Contracts and pay the Cure Amount until we have received and analyzed the rates to be published by the MPSC and determined that it is prudent to do so. Nevertheless, the Debtors have  determined, in their business judgment, that preserving their eligibility for CEC's preferential rates in 2006 and beyond by assuming the Power Contracts is in the best interests of the estates, the Debtors' creditors, and all parties-in-interest.

Savings Under The Preferential Rates

7.    DAS LLC anticipates that entering into a New Power Contract under the preferential rates will result in substantial savings for DAS LLC.  The preferred Transitional Primary Rate will result in an annual savings of approximately $5 million compared to the standard bundled tariff rates.  Moreover, participation in the Transitional Primary Rate will enable DAS LLC to obtain additional power at a 60% discount, for an additional $5 million in annual savings.  If DAS LLC is not allowed to negotiate with CEC with respect to the preferential rates, the power allotted to the Debtors at this discounted rate might be furnished to another large, industrial power consumer.  Because

CEC can only offer a certain amount of electricity at the preferential rate, in the event

DAS LLC's allotment is provided to another customer, DAS LLC may not be able to

obtain electricity at the preferential rate in the future from CEC.

8.      As a result of DAS LLC's negotiations with CEC, the assumption

of the Power Contracts will be rendered null and void, and the Cure Amount will not be

paid, if DAS LLC determines, not to enter into a New Power Contract, or a New Power

Contract is not entered into by January 31, 2006.

9.      Accordingly, I believe that the relief requested in this Motion –

assumption of the Power Contracts on the negotiated terms described in the Motion –

allows the Debtors to obtain valuable, low-cost electricity at significantly discounted

rates for the duration of such contracts.  Of greater significance is that assuming the

Power Contracts is a necessary condition to entering into the New Power Contract at a

preferential rate on a going forward basis.  It is anticipated that these preferential rates

will save the Debtors more than $10 million each year over a two to four year period.

10.     I believe that the rates available to the Debtors under the Power

Contracts, and the rates to be made available to the Debtors beginning in January 2006 on

a going forward basis, would be very difficult, if not impossible, to obtain from other

providers.  In my experience, the assumption of the Power Contracts represents a proper

exercise of the Debtors' business judgment and is in the best interests of the estates, the

Debtors' creditors, and all parties-in-interest.


_s/ Donald S. Poole_____
DONALD S. POOLE

Sworn to before
me this 9th day
of November 2005

s/ Susan Wade
Notary Public