| | |
|---|---|
| BARNES & THORNBURG LLP<br>Attorneys for Bank of America, N.A.<br>300 Ottawa Avenue, NW, Suite 500<br>Grand Rapids, Michigan  49503<br>Telephone:  (616) 742-3930<br>Facsimile:  (616) 742-3999<br><br>Patrick E. Mears (PM-6473)<br>Telephone:  (616) 742-3936<br>Email:  pmears@btlaw.com | Hearing Date and Time:<br>November 29, 2005 at 10:00 a.m.<br><br>Objection Deadline:<br>November 26, 2005 at 4:00 p.m. |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 Case |
| DELPHI CORPORATION, *et al*. | ) | No. 05-44481 |
| Debtors. | ) | (Jointly Administered) |

**MOTION OF BANK OF AMERICA, N.A. (I) TO PROVIDE ADEQUATE PROTECTION OF SECURITY INTERESTS IN COLLATERAL; AND (II) TO TERMINATE THE AUTOMATIC STAY WITH RESPECT TO CASH COLLATERAL**

Bank of America, N.A. ("Bank of America"), by and through its undersigned counsel, for its Motion for the entry of an Order (i) granting adequate protection of Bank of America's interests in collateral relating to two aircraft being leased by Bank of America to Delphi Automotive Systems Human Resources, LLC ("Delphi HR"), including the grant of replacement liens to Bank of America in any similar, after-acquired collateral, including cash collateral; (ii) terminating the automatic stay and directing the immediate turnover of this cash collateral by the Chapter 11 debtors to Bank of America immediately upon receipt; and (iii) granting such other relief as may be proper in the circumstances.

**A.    THE CHAPTER 11 FILINGS**

1.    The Chapter 11 debtors herein, Delphi Corporation and a number of its subsidiaries and affiliates including Delphi HR (collectively, the "Debtors"), commenced these

related Chapter 11 cases by filing separate voluntary petitions with this Court on October 8, 2005. These Chapter 11 cases are being jointly administered pursuant to an order entered by this Court on October 8, 2005.

2. The Debtors are currently operating their businesses as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

3. To date, no trustee or examiner has been appointed in these Chapter 11 cases.

4. On October 17, 2005, the United States Trustee appointed a creditors committee and that committee has since retained counsel.

5. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

6. The statutory predicates for this Motion are sections 361, 362(d) and 363 of the Federal Bankruptcy Code.

**B.    THE LEARJET LEASE AND RELATED CASH COLLATERAL**

7. On or about March 30, 2001, Bank of America's predecessor-in-interest, Fleet National Bank ("Fleet") entered into a certain Aircraft Lease dated such date with Delphi HR's predecessor-in-interest, SM 5105 LLC, a Delaware limited liability company ("SMLLC"), as lessee (the "Learjet Lease").

8. The following personal property is the subject of the Learjet Lease:

(a) a certain Learjet 60 aircraft bearing U.S. Registration Mark N699DA and manufacturer's serial number 237 (the "Learjet Aircraft");

(b) two (2) Pratt & Whitney Canada model number PW305A aircraft engines respectively bearing manufacturer's serial numbers PCE-CA0319 and PCE-CA 0318 (collectively, the "Learjet Engines"); and

2

(c) all present and future parts, avionics, accessories, accessions and attachments related to the Learjet Aircraft, the Learjet Engines and any related goods, and all present and future replacements, substitutions and exchanges for the Learjet Aircraft, the Learjet Engines, any related goods (the "Learjet Accessories and Avionics").

9. Title to the Learjet Aircraft, the Learjet Engines and the Learjet Accessories and Avionics (collectively referred to herein as the "Learjet") is held by Bank of America, as successor-in-interest to Fleet. The lessor's cost of the Learjet amounted to $11,125,200.00.

10. Pursuant to the Learjet Lease, the lease term is 144 months beginning on December 20, 2001 and expiring on December 19, 2013.

11. Pursuant to Section 3 of the Learjet Lease, the lessee is required to pay to Bank of America "Basic Rent" and "Supplemental Rent." Basic Rent must be paid on the twentieth (20th) day of each calendar month with the last such payment being due on November 20, 2013. The amount of each monthly installment of Base Rent under the Learjet Lease is $64,202.53 for months 1 through 72 of the Learjet Lease and $78,470.93 for months 73 through 144 of such lease subject, however, to a "Rate Reset" at the 96th Month of the lease.

12. All of the lessee's obligations under the Learjet Lease are unconditionally guaranteed by Delphi Corporation, formerly known as "Delphi Automotive Systems Corporation", a Delaware corporation, and Delphi Automotive Systems LLC, a Delaware limited liability company, pursuant to the terms of four separate guaranties, all of which are dated March 30, 2001, and which were thereafter amended in writing on or about December 16, 2003.

13. On January 29, 2002, the Learjet Lease was recorded with the FAA.

14. On November 30, 2001, Fleet filed a UCC financing statement with the Delaware Secretary of State listing the Learjet and related property.

15. On May 1, 2001, Fleet filed a UCC financing statement with the Michigan Secretary of State listing this same property and thereafter filed an in lieu financing statement with respect to SMLLC and this property.

16. On or about December 16, 2003, SMLLC assigned its rights and obligations under the Learjet Lease and related documents to Delphi HR pursuant to the terms of a certain Aircraft Lease Assignment, Assumption and Amendment Agreement dated such date and recorded with the FAA on February 18, 2004. On March 9, 2004, Fleet filed a new UCC financing statement reflecting this assignment with the Delaware Secretary of State and listing Delphi HR as the debtor. A copy of results of a UCC search conducted by the Delaware Secretary of State under the name of Delphi HR is attached hereto as <u>Exhibit A</u>.[1]

17. On or about November 26, 2001, lessee and Automotive Air Charter, Inc. ("Charter"), a Delaware corporation, executed a certain Charter Agreement concerning the Learjet, which agreement is dated such date (the "Learjet Charter Agreement"). The Learjet Charter Agreement was thereafter extended/renewed by lessee and Charter on or about January 2, 2002.

18. On November 26, 2001, lessee and Pentastar Aviation, LLC ("Pentastar") executed a certain Aircraft Management Agreement under FAR Part 91, concerning the Learjet, which agreement is dated such date, and was thereafter extended/renewed on June 1, 2002 and on May 5, 2003 (the "Management Agreement").

19. Pursuant to the terms of the Learjet Lease and two separate Consents to Aircraft Management Agreement and Charter Agreement and Assignment executed by Fleet, the lessee, Pentastar and Charter and dated November 27, 2001 and December 16, 2003 (collectively, the

---

[1] Other documents referred to in this Motion have been previously filed by Bank of America with this Court as exhibits to Bank of America's Objection to Debtor's Motion for Postpetition Financing and for Adequate Protection dated October 24, 2005 (Docket No. 565).

4

"Assignments of Related Collateral"), SMLLC/Delphi HR granted to Fleet a first priority security interest in, *inter alia*, all of lessee's rights under the Management Agreement and the Learjet Charter Agreement (and any extensions and renewals thereof) and any subleases of the Learjet aircraft, including any sums paid and payable to the lessee thereunder.  Copies of the Assignments of Related Collateral are attached hereto as <u>Exhibit B</u>.  This security interest was perfected under applicable nonbankruptcy law.

20. Upon information and belief, the Learjet is being chartered on a frequent basis to third parties and, as a result of these charters, cash revenues are being paid to the Debtors.  These cash revenues constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code in which Bank of America holds a first priority security interest (the "Learjet Cash Collateral").

21. Upon information and belief, neither the Learjet Charter Agreement nor the Management Agreement have been rejected or terminated.

**C.    THE CHALLENGER LEASE**

22. On or about March 30, 2001, Fleet entered into a certain Aircraft Lease dated such date with SMLLC, as lessee (the "Challenger Lease").

23. The following personal property is the subject of the Challenger Lease:

(a) a certain Bombardier Inc. CL-600-2B16 (Variant 604) aircraft bearing U.S. Registration Mark N599DA and manufacturer's serial number 5498 (the "Challenger Aircraft");

(b) two (2) General Electric CF 34-3B aircraft engines respectively bearing manufacturer's serial numbers 873033 and 873034 (collectively, the "Challenger Engines"); and

(c) all present and future parts, avionics, accessories, accessions and attachments related to the Challenger Aircraft, the Challenger Engines and any related goods,

5

and all present and future replacements, substitutions and exchanges for the Challenger Aircraft, the Challenger Engines and any related goods (the "Challenger Accessories and Avionics").

24. Title to the Challenger Aircraft, the Challenger Engines and the Challenger Accessories and Avionics (collectively referred to herein as the "Challenger") is held by Bank of America, as successor-in-interest to Fleet. The lessor's cost of the Challenger was $24,149,760.00.

25. Pursuant to the Challenger Lease, the lease term is 144 months beginning on December 20, 2001 and expiring on December 19, 2013.

26. Pursuant to Section 3 of the Challenger Lease, the lessee is required to pay to Bank of America "Base Rent" and "Supplemental Rent." Base Rent must be paid on the twentieth (20th) day of each calendar month with the last such payment being due on November 20, 2013. The amount of each monthly installment of Base Rent is $130,476.08 for months 1 through 72 of the Challenger Lease and $159,480.43 for the months 73 through 144 of such lease subject, however, to a "Rate Reset" at the 96th month of the lease.

27. All of the lessee's obligations under the Challenger Lease are unconditionally guaranteed by Delphi Corporation and Delphi Automotive Systems LLC pursuant to the terms of four (4) separate guaranties, all of which are dated as of March 30, 2001, and which were thereafter amended in writing on or about December 16, 2003.

28. On January 25, 2002, the Challenger Lease was recorded with the FAA.

29. On November 30, 2001, Fleet filed a UCC financing statement with the Delaware Secretary of State listing the Challenger and related property.

6

30. On May 1, 2001, Fleet filed a UCC financing statement with the Michigan Secretary of State listing this same property and thereafter filed an in lieu financing statement with respect to SMLLC and this property.

31. On or about December 16, 2003, SMLLC assigned all of its rights in the Challenger Lease and related documents to Delphi HR pursuant to the terms of a certain Aircraft Lease Assignment, Assumption and Amendment Agreement dated such date and recorded with the FAA on February 18, 2004.  On March 9, 2004, Fleet filed a new UCC financing statement reflecting this assignment with the Delaware Secretary of State.

32. On or about November 26, 2001, lessee and Charter executed a certain Charter Agreement concerning the Challenger, which agreement is dated such date (the "Challenger Charter Agreement").  The Challenger Charter Agreement was thereafter extended/renewed by lessee on or about January 2, 2002.

33. On November 26, 2001, lessee and Pentastar Aviation, LLC executed the Management Agreement which also concerns the Challenger, which agreement is dated such date and was thereafter extended/renewed on June 1, 2002 and on May 5, 2003.

34. Pursuant to the terms of the Challenger Lease and the Assignments of Related Collateral, SMLLC/Delphi HR granted to Fleet a first priority security interest in, *inter alia*, all of SMLLC's rights under the Management Agreement and the Challenger Charter Agreement (and any extensions and renewals thereof) and in any subleases of the Challenger aircraft including any sums paid and payable to the lessee thereunder.  This security interest has been perfected under applicable nonbankruptcy law.

35. Upon information and belief, the Challenger is being chartered on a frequent basis to third parties and, as a result of these charters, cash revenues are being paid to the Debtors.

7

These cash revenues constitute "cash collateral" within the meaning of section 363(a) of the Bankruptcy Code in which Bank of America holds a first priority security interest (the "Challenger Cash Collateral").

36.     Upon information and belief, neither the Challenger Charter Agreement nor the Management Agreement have been rejected or terminated.

**D.    REQUEST FOR ADEQUATE PROTECTION**

37.     The Learjet Cash Collateral and the Challenger Cash Collateral (collectively, the "Cash Collateral") serve as security for the repayment of all obligations due by Delphi HR under the Learjet Lease and the Challenger Lease.

38.     As the holder of a security interest in the Cash Collateral, Bank of America is entitled to receive adequate protection of those interests as protection against any depreciation in value of Bank of America's collateral during the pendency of these Chapter 11 cases. *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc.*, 484 U.S. 365 (1988).

39.     Pursuant to the terms of this Court's Final Order dated October 28, 2005 authorizing postpetition financing, all administrative expenses due by the Debtors to Bank of America related to the Learjet Lease and the Challenger Lease have been subordinated in priority to administrative expenses due to the "DIP Lenders." As a result, in the event of a conversion of these Chapter 11 cases to Chapter 7, it is possible that Bank of America's claim for administrative expenses will not be paid in its entirety.

40.     To date, Delphi HR has failed to pay postpetition rent due on October 20, 2005 and November 20, 2005 under the Learjet Lease and the Challenger Lease. The rent arrearage resulting from these missed postpetition payments presently amounts to $389,357.22 (the "Postpetition Rent Arrearage").

8

41. Section 361 of the Bankruptcy Code contains certain examples of adequate protection that may be granted to creditor's security interest in property of the estate. One example is requiring a trustee or debtor in possession to make periodic cash payments to the creditor to the extent that the imposition of the automatic stay or a proposed use of collateral "results in a decrease in value of such [creditor's] interest in such property." 11 U.S.C. § 361(1). Another example of adequate protection is granting to the creditor replacement liens in property of the estate to the extent that the imposition of the automatic stay or a projected use of collateral "results in a decrease in the value of such [creditor's] interest in such property." 11 U.S.C. § 361(2). The examples of adequate protection contained in this Bankruptcy Code provision are intended to be illustrative and not exclusive. *In re Swedeland Dev. Group, Inc.*, 16 F.3d 552, 564 (3d Cir. 1994); *In re Mosello*, 195 B.R. 277, 288 (Bankr. S.D.N.Y. 1996); *In re O.P. Held, Inc.*, 74 B.R. 777, 782 (Bankr. N.D.N.Y. 1987).

42. Bank of America does not consent to any use by the Debtors of Cash Collateral during the pendency of these Chapter 11 cases.

43. As a measure of adequate protection, this Court should, at a minimum, enter an order granting to Bank of America replacement liens in all after-acquired property of the estate of the same kind or nature as the property serving as collateral for the obligations due to Bank of America under the Learjet Lease and the Challenger Lease, including Cash Collateral. In addition, this Order should require the Chapter 11 debtors to transmit to Bank of America periodic accountings of all Cash Collateral generated after October 8, 2005, including all revenues and proceeds of the Management Agreement, the Learjet Charter Agreement, the Challenger Charter Agreement and any subleases of the Challenger or the Learjet. *See*, *e.g.*, *In re Elmira Litho, Inc.*, 174 B.R. 892, 902-03 (Bankr. S.D.N.Y. 1994) (adequate protection

9

through automatic payments, equity cushion, additional or replacement liens, or prospects for successful reorganization).

E.     **REQUEST FOR RELIEF FROM AUTOMATIC STAY**

44.     A creditor holding a security interest in property of the estate will be granted relief from the automatic stay to realize upon its collateral in the circumstances described in section 362(d) of the Bankruptcy Code.

45.     Under section 362(d)(1) of the Bankruptcy Code, a bankruptcy court will enter an order granting relief from the stay if sufficient "cause" exists for such relief including, but not limited to, "the lack of adequate protection of an interest in property" of the moving party. *See*, *e.g.*, *LNC Investments, Inc. v. First Fidelity Bank*, 247 B.R. 38, 45 (S.D.N.Y. 2000).

46.     Sufficient cause exists here to terminate the automatic stay and to require the payment of all Cash Collateral to Bank of America upon the Debtors' receipt of these sums. See *In re James River Assocs.*, 148 B.R. 790, 797 (E.D. Va. 1992) (failure to make payments under loan documents constitutes cause). The Debtors have failed to pay the Postpetition Rent Arrearage, which sum totals $389,357.22 and have made no proposal to Bank of America concerning payment of this sum. The Cash Collateral should be turned over to Bank of America to reduce this arrearage and to provide a fund to pay all future lease obligations.

47.     Under section 362(d)(2) of the Bankruptcy Code, a bankruptcy court will grant relief from the automatic stay when the trustee or debtor in possession lacks equity in collateral and that property is not necessary to an effective reorganization. *In re Kaplan Breslaw Ash, LLC*, 264 B.R. 309, 322 (Bankr. S.D.N.Y. 2001).

48.     Upon information and belief, the amount of the Cash Collateral in the possession of the Debtors is less than the amount of the Postpetition Rent Arrearage and the accelerated amount of all lease obligations. Consequently, the Debtors lack any equity in this property

within the meaning of section 362(d)(2)(A) of the Bankruptcy Code. *See Elmira Litho*, 174 B.R. at 901 (equity means difference between value of property and total amount of claims it secures).

49.     Upon information and belief, the Cash Collateral is not necessary to an effective reorganization of the Debtors.  Upon further information and belief, this property constitutes an extremely small portion of the Debtors' assets and is not subject to any liens or security interests other than those held by Bank of America. *See Tornheim v. Source One Mortgage Serv. Corp.*, 1996 WL 374177 *1, 2 (S.D.N.Y. July 1, 1996) (discussing proof required).

## RESERVATION OF RIGHTS

50.     Bank of America hereby reserves all of its rights under the Bankruptcy Code, applicable nonbankruptcy law and the aircraft lease documents including, but not limited to, its rights (i) to seek additional adequate protection; (ii) to request additional relief from the automatic stay; (iii) to request allowance and payment of administrative expenses; and (iv) to move to compel the assumption or rejection of the Learjet Lease and the Challenger Lease by a fixed date.

## NOTICE

51.     Notice of this Motion has been provided by facsimile, electronic transmission, overnight delivery or hand delivery to (a) the Office of the United States Trustee; (b) counsel for the agent under the Debtors' prepetition credit facility; (c) counsel for the agent under the Debtors' postpetition credit financing; (d) counsel to the Debtors; and (e) all other entities entitled to notice pursuant to this Court's Case Management Order entered in these Chapter 11 cases on October 14, 2005.  In light of the nature of the relief requested, Bank of America submits that no other or further notice is necessary.

11

## **MEMORANDUM OF LAW**

52. Because of the legal points and authorities upon which this Motion relies are incorporated herein, Bank of America respectfully requests that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, Bank of America respectfully requests that this Court enter an order (a) granting adequate protection of Bank of America's security in Cash Collateral including, but not limited to, replacement liens in after-acquired property and directing the Chapter 11 debtors to provide periodic accountings of all postpetition Cash Collateral; (b) terminating the automatic stay and requiring the Debtors to pay to Bank of America all Cash Collateral related to the aircraft leases immediately upon receipt; and (c) granting such other and further relief as may be just and proper under the circumstances.

Dated:  November 11, 2005
      Grand Rapids, Michigan

BARNES & THORNBURG LLP
Counsel to Bank of America, N.A.

By:   /s/Patrick E. Mears
     Patrick E. Mears (PM-6473)
Business Address:
300 Ottawa Avenue, NW
Suite 500
Grand Rapids, Michigan  49503
Telephone:  (616) 742-3936
Facsimile:  (616) 742-3999
Email:  pmears@btlaw.com

GRDS01 PMEARS 324793v3