# EXHIBIT B

<u>CONSENT TO AIRCRAFT MANAGEMENT AGREEMENT AND CHARTER AGREEMENT AND ASSIGNMENT</u>

This Consent to Aircraft Management Agreement and Charter Agreement and Assignment dated as of November 27, 2001 (the "<u>Consent</u>"), by and among Fleet National Bank ("<u>Lessor</u>"), SM 5105 LLC ("<u>Lessee</u>"), a Delaware limited liability company, Pentastar Aviation, LLC, ("<u>Manager</u>"), a Michigan limited liability company, and Automotive Air Charter, Inc., a Delaware corporation (''<u>Certificate Holder</u>'').

RECITALS

WHEREAS, Lessor and Lessee have entered into a certain Aircraft Lease (N599DA) dated March 30, 2001, regarding a certain Bombardier Inc. CL-600-2B16 Aircraft, manufacturer serial number 5498, United States Registration and Nationality Number N599DA and a certain Aircraft Lease (N699DA) dated March 30, 2001, regarding a certain Learjet 60 Aircraft, manufacturer serial number 237, United States Registration and Nationality Number N699DA (hereinafter collectively referred to as the "Lease" and the "<u>Aircraft</u>", respectively) pursuant to which, among other things, the Lessor financed the Aircraft for the Lessee (terms not otherwise defined herein being assigned the meanings set forth therefor in the Agreement); and

WHEREAS, the Lessee desires to engage the Manager to provide certain services to the Lessee regarding the Aircraft pursuant to a certain Aircraft Management Agreement dated November 26, 2001 (the "<u>Management Agreement</u>") a copy of which is attached hereto as <u>Schedule 1</u>; and

WHEREAS, to facilitate the charter of the Aircraft to third parties, the Lessee desires to enter into a certain Agreement For FAR 135 Operations with Certificate Holder dated November 26, 2001 (the ''<u>Charter Agreement</u>'') a copy of which is attached hereto as <u>Schedule 2</u>; and

WHEREAS, the Lessor is willing to consent to the Management Agreement and the Charter Agreement, subject to the terms and conditions hereafter set forth.

NOW THEREFORE, in consideration of the agreements and covenants contained herein, and intending to be legally bound hereby, the Lessor, Lessee and Manager mutually agree as follows:

1.  The Management Agreement shall be in substantially the form attached hereto as <u>Schedule 1</u> and shall not be amended, modified, waived, supplemented or otherwise changed in any way whatsoever without the prior written consent of the Lessor, which consent will not be unreasonably withheld.

2.  The Charter Agreement shall be in substantially the form attached hereto as <u>Schedule 2</u> and shall not be amended, modified, waived, supplemented or otherwise changed in any way whatsoever without the prior written consent of the Lessor, which consent will not be unreasonably withheld.

3.  Lessee hereby acknowledges to Lessor that it is now and continues to be primarily and fully obligated by the terms and conditions of the Lease notwithstanding any delegation of duties under or any other term of any kind whatsoever of the Management Agreement or the Charter Agreement. Any such delegation shall be effective only as between Lessee and Manager or Certificate Holder, as the case may be.

4.  Lessee, Manager and Certificate Holder each, as the context may require and with respect to itself only, hereby represents, agrees and covenants, as the case may be, that:

   (a) Lessee's, Manager's and/or Certificate Holder's interest, and the interest of any third party claiming by through or under any such party (including any charterer or lienholder, any, a ''Third Party Interest Holder''), if any, in or under the Management Agreement, the Charter Agreement or any charter or other agreement entered into pursuant thereto (a ''Related Agreement''), and the Aircraft, shall be expressly subject and subordinate in all respects to all of the Lessor's rights, powers and remedies under the Lease (a true and complete copy of the Lease is attached hereto and made part hereof as <u>Schedule 3</u>).

   (b) Upon the occurrence of an Event of Default (as defined in the Lease) and during the continuance thereof, Manager and Certificate Holder hereby agree, upon the request or

demand by the Lessor, to make all payments and other sums due under the Management Agreement and/or the Charter Agreement directly to the Lessor, subject to any abatement, deduction, set-off, defense, counterclaim, recoupment, or other right of Manager or Certificate Holder against Lessee under the Management Agreement and/or the Charter Agreement, as applicable, if and so long as determined to be valid by a court of competent jurisdiction (any of the same, an ''Abatement'').

(c) Lessor shall have no obligation of any kind whatsoever to perform any of the obligations or duties under the Management Agreement or the Charter Agreement or any other agreement entered into in connection therewith, including, without limitation, payment of any fees, taxes or other sums, furnishing of maintenance, repairs, replacement aircraft, service, insurance or otherwise (except that the amounts payable to Lessor pursuant to Section 4(b) may be reduced by any Abatements).

(d) The Aircraft shall be principally based at 7310 Highland Road, Oakland County International Airport, Waterford, MI 48327.

(e) Manager and Certificate Holder agree that the Lessor or its designated employee(s) or agent(s) may inspect the Aircraft at its location during normal business hours (provided that the Aircraft is not-in-flight at the time of such inspections).

(f) Lessee agrees that, notwithstanding any provision of the Management Agreement and/or the Charter Agreement to the contrary, (i) except as expressly permitted in the Lease, (A) the Aircraft shall not be used, chartered, operated, located, leased, subleased, assigned, interchanged or otherwise disposed, conveyed, encumbered or transferred in any way whatsoever, and (B) none of Lessee, the Manager, or the Certificate Holder shall use the Aircraft outside the continental United States; and (ii) none of Lessee, the Manager, or the Certificate Holder shall have any other rights, interests, powers or remedies in or with respect to the Aircraft under the Management Agreement and/or the Charter Agreement, except to the extent consistent with the Lease.

(g) The Management Agreement and the Charter Agreement shall terminate and control of the Aircraft will be returned to Lessee (or, if applicable, to the Lessor) on or before the expiration or earlier termination or cancellation of the term of Lease with respect to the Aircraft.

(h) Any notice of termination required to be given by the Manager or the Lessee under the Management Agreement or by the Certificate Holder or the Lessee under the Charter Agreement shall be sent concurrently to the Lessor.

(i) [Reserved]

(j) Upon the written request of the Lessor (or in the case of Lessee, as and when required under the Lease), any or all of the Manager, Certificate Holder and Lessee, as applicable, shall provide Lessor with evidence of insurance as required under the Lease (and of the continuing authority of the Manager, Certificate Holder and Lessee to operate the Aircraft).

(k) Upon the execution of the Management Agreement and the Charter Agreement, the Management Agreement and the Charter Agreement will have been duly authorized, executed and delivered by Lessee, the Manager and the Certificate Holder, as applicable; the Management Agreement and the Charter Agreement will be legal, valid, binding and enforceable agreements against Manager, Certificate Holder and Lessee in accordance with their terms.

(l) Each of the Lessee, the Manager and /or the Certificate Holder, as the case may be, is a citizen of the United States within the meaning of the Subtitle VII of Title 49 of the United States Code, as amended and recodified.

(m) Lessee assumes liability for, and hereby agrees to indemnify, protect, save, defend and keep harmless Lessor, its agents, employees, officers, directors, shareholders, subsidiaries, affiliates, successors, and assigns (the Lessor and all of such parties are sometimes individually or collectively, as the contest requires, referred to as the "Indemnified Party"), on a net after-tax basis, from and against any and all liabilities, obligations, losses, damages, penalties, claims (including, without limitation, claims involving or alleging product liability or strict or absolute liability in tort), actions, suits, demands, costs, expenses and disbursements (including, without limitation, legal

fees and expenses) of any kind and nature whatsoever ("Claims") which may be imposed on, incurred by or asserted against the Indemnified Party, whether or not the Indemnified Party shall have the right to be indemnified as to any such Claim by any other person, in any way relating to or arising out of the Management Agreement, the Charter Agreement or any documents contemplated thereby, or the performance or enforcement of any of the terms hereof or thereof, or in any way relating to or arising out of the manufacture, inspection, construction, purchase, acceptance, rejection, ownership, titling or re-titling, delivery, lease, sublease, possession, use, operation, maintenance, condition, registration or re-registration, sale, return, removal, repossession, storage or other disposition of the Aircraft or any part thereof or any accident in connection therewith (including, without limitation, latent and other defects, whether or not discoverable, and any Claim for patent, trademark or copyright infringement); provided, however, that Lessee shall not be required to indemnify the Indemnified Party for (a) any Claim caused by the gross negligence or willful misconduct of the Indemnified Party or (b) any Claim in respect of the Aircraft arising from acts or events which occur after (x) possession of the Aircraft has been redelivered to Lessor (which return and delivery shall be in full and complete compliance with the terms of the Lease), and (y) any and all other obligations of any kind whatsoever of the Manager under the Management Agreement, of the Certificate Holder under the Charter Agreement and of Lessee under the Lease have been fully paid and/or performed, as the case may be, unless any such Claims were caused by Lessee (or any stockholder, director, officer, employee, successor, assignee, agent or servant, as the case may be of the Lessee) or resulted or arose, directly or indirectly, from any acts, events or omissions of any kind whatsoever during the term of the Management Agreement, the Charter Agreement and/or the Lease. The foregoing indemnification shall be subject to the same reduction and subrogation provisions set forth in the Lease with respect to the general indemnity provided in Section 11 of the Lease. If any Claim is made against Manager, Certificate Holder, Lessee or an Indemnified Party, the party receiving notice of such Claim shall promptly notify the others, but the failure of the party receiving notice to so notify the other shall not relieve Lessee of any obligation hereunder. WITHOUT LIMITING THE GENERALITY OF THE TERMS HEREOF, EACH OF LESSEE, MANAGER AND CERTIFICATE HOLDER AGREES THAT INDEMNIFIED PARTY SHALL NOT BE LIABLE TO ANY OF LESSEE, MANAGER OR CERTIFICATE HOLDER FOR ANY CLAIM CAUSED DIRECTLY OR INDIRECTLY BY THE INADEQUACY OF THE AIRCRAFT OR ANY PART THEREOF FOR ANY PURPOSE OR ANY DEFICIENCY OR DEFECT THEREIN OR THE USE OR MAINTENANCE THEREOF OR ANY REPAIRS, SERVICING OR ADJUSTMENTS THERETO OR ANY DELAY IN PROVIDING OR FAILURE TO PROVIDE ANY OF THE SAME OR ANY INTERRUPTION OR LOSS OF SERVICE OR USE THEREOF OR ANY LOSS OF BUSINESS, OR PROFITS ALL OF WHICH SHALL BE THE SOLE RISK AND RESPONSIBILITY OF LESSEE.

(n) Without limiting any term of this Consent or the Lease, upon the occurrence of an Event of Default and for so long as the same shall be continuing, Lessor shall be entitled to exercise any and all of its rights, powers and/or remedies under the Lease, including, without limitation, Lessor's rights of repossession thereunder, notwithstanding the Management Agreement, the Charter Agreement or any right of quiet enjoyment, or any other right to lease and use the Aircraft, thereunder, and Lessee, Manager and Certificate Holder (i) shall not interfere with, nor suffer or permit any Third Party Interest Holder to interfere with, any such rights, powers and/or remedies as a result of the Management Agreement or the Charter Agreement or any Related Agreement, or any of their respective interests arising thereunder, including, without limitation, any right of quiet enjoyment, or any other right to lease, charter, possess, operate and/or use the Aircraft, under the Management Agreement, Charter Agreement or any Related Agreement, and (ii) shall deliver the Aircraft to the Lessor upon a proper demand therefor.

5. In consideration of the Lessor entering into this Consent, to the extent that it has not already done so, Lessee hereby assigns, conveys, pledges, hypothecates and transfers to the Lessor a first security interest in all of its right, title and interest in, to and under (i) the Management Agreement and the Charter Agreement (and all extensions and renewals thereof), (ii) any and all rentals, payments and any other sums of any kind whatsoever due, now or hereafter, under the Management Agreement and any Charter Agreement, (iii) any and all proceeds of any insurance required or maintained under the Agreement and/or Charter Agreement, (iv) all products and proceeds of the foregoing and (v) true copies of all present and future books and records relating to any of the foregoing, including, without limitation, all tapes, cards, computer programs, computer runs and computer data in the possession or control of the Lessee, any computer service bureau or other third party; (but not any of Lessee's obligations, liabilities and/or duties of any kind whatsoever as lessee or otherwise under, or with respect to, the Management Agreement and/or the Charter Agreement and/or the Aircraft). Notwithstanding the foregoing assignment, (i) until the occurrence of an Event of Default, (ii) only while the same is continuing, and (iii) after notice to the Manager and Certificate Holder of the Event of

Default, Manager and Certificate Holder, as applicable, shall pay Lessor all rentals, payments and other sums payable under the Management Agreement or the Charter Agreement. Upon any such Event of Default and notice from the Lessor, and while the same is continuing, Lessee hereby authorizes and directs Manager and Certificate Holder to directly pay to Lessor, or as Lessor may otherwise direct, any and all payments and any other sums of any kind whatsoever payable and to become payable under the Management Agreement or the Charter Agreement (collectively, ''Agreement Payments''), and Manager and Certificate Holder agree to the foregoing. After the Lessor notifies Manager and/or Certificate Holder to pay it directly as provided herein, Lessee hereby agrees to hold in trust for Lessor any Agreement Payments it receives from Manager, Certificate Holder or any other party and to immediately upon receipt of any Agreement Payments to direct, pay and turn-over to Lessor any such Agreement Payments without any set-off, deduction, defense, counterclaim, recoupment or claim of any kind whatsoever.

6. The Lessee hereby irrevocably constitutes and appoints Lessor and any other officer of agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of Lessee and in the name of Lessee or in its own name, from time to time in Lessor's discretion, for the purpose of carrying out the terms of this Consent, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Consent; that the Lessee hereby ratifies all that said attorney shall lawfully do or cause to be done by virtue hereof, that this power of attorney is a power coupled with an interest and shall be irrevocable (to the extent permitted by law); and that, without limiting the generality of the foregoing, pursuant to such appointment, the Lessor shall have authority to endorse the Lessee's name on any checks, notes, drafts or any other payments or instruments constituting Agreement Payments which came into the Lessor's possession or control. Such power of attorney shall terminate upon the termination or expiration of the Management Agreement.

7. The Lessee agrees that the powers conferred on Lessor hereunder are solely to protect the Lessor's interest in the Management Agreement, the Charter Agreement and/or the Aircraft and shall not impose any duty upon Lessor to exercise any such powers, and that Lessor shall be accountable only for amounts that it actually receives as a result of the exercise of such powers and neither it nor any of its officers, directors, shareholders, employees or agents shall be responsible to the Manager, the Certificate Holder, the Lessee or otherwise for any act or failure to act.

8. Lessee agrees that at any time and from time to time, upon the written request of Lessor, Lessee will promptly and duly execute and deliver or cause to be duly executed and delivered any and all further instruments and documents as Lessor may deem desirable in order to perfect its security interest in the Management Agreement and the Charter Agreement, to deliver to Lessor that fully executed copy of the Management Agreement or the Charter Agreement, which is, and will be, the only copy marked "Secured Party's Original." To the extent, if any, the Management Agreement or the Charter Agreement constitutes chattel paper under the Uniform Commercial Code, no security interest in the Management Agreement or the Charter Agreement may be created through the transfer and/or possession of any counterpart other than the counterpart marked "Secured Party's Original." All other copies of the Management Agreement or the Charter Agreement shall be prominently marked "Not an Original. Only the counterpart marked 'Secured Party's Original' shall be sufficient to create a security interest herein."

9. Manager and Certificate Holder agree that at any time and from time to time, upon the written request of Lessor, Manager and/or Certificate Holder, as applicable, will promptly and duly execute and deliver or cause to be duly executed and delivered any and all further instruments and documents as Lessor may deem desirable or necessary in order to carry out more effectively the intent and purposes of this Consent and/or to establish and protect the rights and remedies created or intended to be created in favor of Lessor and/or to perfect its security interest in the Management Agreement and the Charter Agreement and in any other items or matters related thereto.

10. Notwithstanding anything to the contrary contained herewith or otherwise, the Lessor does not by virtue of this Consent or otherwise assume any obligations, liabilities and/or duties of any kind whatsoever of the Lessee, of the Manager, of the Certificate Holder and/or of any other party whatsoever under, or with respect to, the Management Agreement, the Charter Agreement and/or the Aircraft and the Lessor shall not be responsible in any way whatsoever for the performance by the Lessee, by the Manager, by the Certificate Holder and/or by any other party whatsoever in connection with, relating to, or arising under, the Management Agreement, the Charter Agreement and/or the Aircraft.

11. This Consent shall be binding upon each of the Lessor, the Lessee, the Manager,

and the Certificate Holder and their respective heirs, administrators, successors, transferees and assigns and the benefits hereof shall extend to and include the Lessor, the Lessee, the Manager, and the Certificate Holder and their respective heirs, administrators, successors, transferees and assigns. All of Lessor's, Lessee's, Manager's and Certificate Holder's rights and privileges contained herein shall survive the expiration or other termination of the Management Agreement, the Charter Agreement or this Consent.

12. THIS CONSENT SHALL NOT BE MODIFIED, ALTERED, AMENDED OR WAIVED IN WHOLE OR IN PART EXCEPT IN WRITING DULY SIGNED BY EACH PARTY OR BY EACH PARTIES' AUTHORIZED REPRESENTATIVE. ANY WAIVER SHALL BE EFFECTIVE ONLY IN THE SPECIFIC INSTANCE AND FOR THE SPECIFIC PURPOSE FOR WHICH IT IS GIVEN. NO FAILURE TO EXERCISE, OR DELAY IN EXERCISING, ANY RIGHT HEREUNDER SHALL OPERATE AS A WAIVER THEREOF; NOR SHALL ANY FAILURE TO EXERCISE, OR PARTIAL EXERCISE OF, ANY RIGHT HEREUNDER PRECLUDE ANY OTHER OR FURTHER EXERCISE THEREOF OR THE EXERCISE OF ANY OTHER RIGHT.

13. If any provision in this Consent or any part thereof is held invalid or unenforceable, such invalidity or unenforceability shall not affect or impair the validity or the enforceability of the remaining provisions, or any part thereof, of this Consent.

14. Subject to the foregoing terms and conditions, Lessor hereby consents to the execution and delivery of the Management Agreement and the Charter Agreement and, as required by the Lease, Lessee, Manager and Certificate Holder hereby consent to the assignment of the Management Agreement and the Charter Agreement, as set forth herein to Lessor.

15. Except as expressly modified or amended herein, the terms and conditions of the Lease shall remain in full force and effect in accordance with their respective original tenor. Without limiting the generality of the foregoing or any other terms of this Consent, nothing contained herein shall be interpreted or construed in any way whatsoever to limit the various provisions of the Lease except as otherwise expressly provided herein.

16. This Consent may be executed in any number of counterparts and by the different parties hereto on separate counterparts. Execution in counterpart shall have the same effect as if the signatures thereto and hereto were upon the same instrument.

[SIGNATURES ON NEXT PAGE]

*IN WITNESS WHEREOF*, the parties hereto have executed this Consent to Aircraft Management Agreement and Charter Agreement and Assignment by their respective duly authorized representatives as of the day and year first above written.

| LESSEE: | LESSOR: |
|---|---|
| SM 5105 LLC | FLEET NATIONAL BANK |
| By: _____ | By: _____ |
| Title: _____ | Title: _Banking Officer_ |
| Date: _____ | Date: 12/17/0_ |

| CERTIFICATE HOLDER: | MANAGER: |
|---|---|
| AUTOMOTIVE AIR CHARTER, INC. | PENTASTAR AVIATION, LLC |
| By: _____ | By: _____ |
| Title: _____ | Title: _____ |
| Date: _____ | Date: _____ |

Acknowledged and Agreed to by:

GUARANTOR:
DELPHI AUTOMOTIVE SYSTEMS LLC
   By: DELPHI AUTOMOTIVE SYSTEMS CORPORATION

By: _____

Title: _____

Date: _____

GUARANTOR:
DELPHI AUTOMOTIVE SYSTEMS CORPORATION

By: _____

Title: _____

Date: _____

EKG 402548 (Consent)

*IN WITNESS WHEREOF*, the parties hereto have executed this Consent to Aircraft Management Agreement and Charter Agreement and Assignment by their respective duly authorized representatives as of the day and year first above written.

| LESSEE: | LESSOR: |
|---|---|
| SM 5105 LLC | FLEET NATIONAL BANK |
| By: *[signature]* | By: _____ |
| Title: VICE PRESIDENT-OPERATIONS | Title: _____ |
| Date: 11-27-01 | Date: _____ |

| CERTIFICATE HOLDER: | MANAGER: |
|---|---|
| AUTOMOTIVE AIR CHARTER, INC. | PENTASTAR AVIATION, LLC |
| By: *[signature]* | By: *[signature]* |
| Title: President | Title: President |
| Date: 11/26/2001 | Date: 11/26/2001 |

Acknowledged and Agreed to by:

GUARANTOR:
DELPHI AUTOMOTIVE SYSTEMS LLC
    By: DELPHI AUTOMOTIVE SYSTEMS CORPORATION
By: *[signature]*
Title: VICE PRESIDENT-OPERATIONS
Date: 11-27-01

GUARANTOR:
DELPHI AUTOMOTIVE SYSTEMS CORPORATION
By: *[signature]*
Title: VICE PRESIDENT-OPERATIONS
Date: 11-27-01

## CONSENT TO AIRCRAFT MANAGEMENT AGREEMENT AND CHARTER AGREEMENT AND ASSIGNMENT

This Consent to Aircraft Management Agreement and Charter Agreement and Assignment dated as of December 16, 2003 (the "Consent"), by and among Fleet National Bank ("Lessor"), Delphi Automotive Systems Human Resources LLC ("Transferee"), a Delaware limited liability company, Pentastar Aviation, LLC, ("Manager"), a Michigan limited liability company, and Automotive Air Charter, Inc., a Delaware corporation ("Certificate Holder").

### RECITALS

WHEREAS, Lessor and SM 5105 LLC entered into a certain Aircraft Lease (N599DA) dated March 30, 2001, regarding a certain Bombardier Inc. CL-600-2B16 Aircraft, manufacturer serial number 5498, United States Registration and Nationality Number N599DA and a certain Aircraft Lease (N699DA) dated March 30, 2001, regarding a certain Learjet 60 Aircraft, manufacturer serial number 237, United States Registration and Nationality Number N699DA (hereinafter collectively referred to as the "Lease" and the "Aircraft", respectively) pursuant to which, among other things, the Lessor leased the Aircraft to SM 5105 LLC (terms not otherwise defined herein being assigned the meanings set forth therefor in the Lease); and

WHEREAS, SM 5105 LLC engaged the Manager to provide certain services to SM 5105 LLC regarding the Aircraft pursuant to a certain Aircraft Management Agreement Under FAR Part 91 dated June 1, 2002, as amended May 1, 2003 (the "Management Agreement") a signed copy of which is attached hereto as Schedule 1; and

WHEREAS, to facilitate the charter of the Aircraft to third parties, SM 5105 LLC entered into a certain Agreement For FAR 135 Operation with Certificate Holder dated November 26, 2001, as amended January 2, 2002 (the "Charter Agreement") a signed copy of which is attached hereto as Schedule 2; and

WHEREAS, SM 5105 LLC assigned to the Transferee, and the Transferee assumed, all of SM 5105 LLC's duties, agreements, obligations and liabilities of Transferor under, among other things, the Lease, the Management Agreement and the Charter Agreement; and

WHEREAS, the Transferee desires to continue to engage the Manager to provide certain services to the Transferee regarding the Aircraft pursuant to the Management Agreement; and

WHEREAS, to facilitate the charter of the Aircraft to third parties, the Transferee desires to continue the charter arrangement with Certificate Holder pursuant to the Charter Agreement; and

WHEREAS, the Lessor is willing to consent to the Management Agreement and the Charter Agreement as it relates to the Transferee, and the engagement by the Transferee of the Manager and the Certificate Holder thereunder, subject to the terms and conditions hereafter set forth.

NOW THEREFORE, in consideration of the agreements and covenants contained herein, and intending to be legally bound hereby, the Lessor, Transferee, Manager and Certificate Holder mutually agree as follows:

1. The Management Agreement shall be in substantially the form attached hereto as Schedule 1 and shall not be amended, modified, waived, supplemented or otherwise changed in any way whatsoever without the prior written consent of the Lessor, which consent will not be unreasonably withheld.

2. The Charter Agreement shall be in substantially the form attached hereto as Schedule 2 and shall not be amended, modified, waived, supplemented or otherwise changed in any way whatsoever without the prior written consent of the Lessor, which consent will not be unreasonably withheld.

3. Transferee hereby acknowledges to Lessor that it is now and continues to be primarily and fully obligated by the terms and conditions of the Lease notwithstanding any delegation of duties under or any other term of any kind whatsoever of the Management Agreement or the Charter Agreement. Any such delegation shall be effective only as between Transferee and Manager or Certificate Holder, as the case may be.

4. Transferee, Manager and Certificate Holder each, as the context may require and with respect to itself only, hereby represents, agrees and covenants, as the case may be, that:

   (a) Transferee's, Manager's and/or Certificate Holder's interest, and the interest of any third party claiming by through or under any such party (including any charterer or lienholder, any, a "Third Party Interest Holder"), if any, in or under the Management Agreement, the Charter Agreement or any charter or other agreement entered into pursuant thereto (a "Related Agreement"), and the Aircraft, shall be expressly subject and subordinate in all respects to all of the Lessor's rights, powers and remedies under the Lease (a true and complete copy of the Lease is attached hereto and made part hereof as Schedule 3).

   (b) Upon the occurrence of an Event of Default (as defined in the Lease) and during the

OCT-25-2005 13:52 401 278 8200 P.03
10/24/05 08:54 FAX 2033589582
05-44481-rdd Doc 1022-2 Filed 11/11/05 Entered 11/11/05 12:08:07 Exhibit B
Pg 10 of 15

continuance thereof, Manager and Certificate Holder hereby agree, upon the request or demand by the Lessor, to make all payments and other sums due under the Management Agreement and/or the Charter Agreement directly to the Lessor, subject to any abatement, deduction, set-off, defense, counterclaim, recoupment, or other right of Manager or Certificate Holder against Transferee under the Management Agreement and/or the Charter Agreement, as applicable, if and so long as determined to be valid by a court of competent jurisdiction (any of the same, an "Abatement").

(c) Lessor shall have no obligation of any kind whatsoever to perform any of the obligations or duties under the Management Agreement or the Charter Agreement or any other agreement entered into in connection therewith, including, without limitation, payment of any fees, taxes or other sums, furnishing of maintenance, repairs, replacement aircraft, service, insurance or otherwise (except that the amounts payable to Lessor pursuant to Section 4(b) may be reduced by any Abatements).

(d) The Aircraft shall be principally based at 7310 Highland Road, Oakland County International Airport, Waterford, MI 48327.

(e) Manager and Certificate Holder agree that the Lessor or its designated employee(s) or agent(s) may inspect the Aircraft at its location during normal business hours (provided that the Aircraft is not-in-flight at the time of such inspections).

(f) Transferee agrees that, notwithstanding any provision of the Management Agreement and/or the Charter Agreement to the contrary, (i) except as expressly permitted in the Lease, (A) the Aircraft shall not be used, chartered, operated, located, leased, subleased, assigned, interchanged or otherwise disposed, conveyed, encumbered or transferred in any way whatsoever, and (B) none of Transferee, the Manager, or the Certificate Holder shall use the Aircraft outside the continental United States; and (ii) none of Transferee, the Manager, or the Certificate Holder shall have any other rights, interests, powers or remedies in or with respect to the Aircraft under the Management Agreement and/or the Charter Agreement, except to the extent consistent with the Lease.

(g) The Management Agreement and the Charter Agreement shall terminate and control of the Aircraft will be returned to Transferee (or, if applicable, to the Lessor) on or before the expiration or earlier termination or cancellation of the term of Lease with respect to the Aircraft.

(h) Any notice of termination required to be given by the Manager or the Transferee under the Management Agreement or by the Certificate Holder or the Transferee under the Charter Agreement shall be sent concurrently to the Lessor.

(i) [Reserved]

(j) Upon the written request of the Lessor (or in the case of Transferee, as and when required under the Lease), any or all of the Manager, Certificate Holder and Transferee, as applicable, shall provide Lessor with evidence of insurance as required under the Lease (and of the continuing authority of the Manager, Certificate Holder and Transferee to operate the Aircraft).

(k) The Management Agreement and the Charter Agreement will have been duly authorized, executed and delivered by SM 5105 LLC, the Manager and the Certificate Holder, as applicable; the Management Agreement and the Charter Agreement will be legal, valid, binding and enforceable agreements against Manager, Certificate Holder and, upon consummation of the transactions contemplated in the Aircraft Lease Assignment, Assumption and Amendment Agreement dated as of even date herewith, Transferee in accordance with their terms.

(l) Each of the Transferee, the Manager and/or the Certificate Holder, as the case may be, is a citizen of the United States within the meaning of the Subtitle VII of Title 49 of the United States Code, as amended and recodified.

(m) Transferee assumes liability for, and hereby agrees to indemnify, protect, save, defend and keep harmless Lessor, its agents, employees, officers, directors, shareholders, subsidiaries, affiliates, successors, and assigns (the Lessor and all of such parties are sometimes individually or collectively, as the context requires, referred to as the "Indemnified Party"), on a net after-tax basis, from and against any and all liabilities, obligations, losses, damages, penalties, claims (including, without limitation, claims involving or alleging product liability or strict or absolute liability in tort), actions, suits, demands, costs, expenses and disbursements (including, without limitation, legal fees and expenses) of any kind and nature whatsoever ("Claims") which may be imposed on, incurred by or asserted against the Indemnified Party, whether or not the Indemnified Party shall have the right to be indemnified as to any such Claim by any other person, in any way relating to or arising out of the Management Agreement, the Charter Agreement or any documents contemplated thereby, or the performance or enforcement of any of the terms hereof or thereof, or in any way relating to or arising out of the manufacture, inspection, construction, purchase, acceptance, rejection, ownership, titling or re-titling, delivery, lease, sublease, possession, use, operation, maintenance, condition, registration or re-registration, sale, return, removal, repossession, storage or other disposition of the Aircraft or any part thereof or any accident in connection therewith (including, without limitation, latent and other defects, whether or not discoverable, and any Claim for patent, trademark or copyright infringement); provided, however, that

2

Transferee shall not be required to indemnify the Indemnified Party for (a) any Claim caused by the gross negligence or willful misconduct of the Indemnified Party or (b) any Claim in respect of the Aircraft arising from acts or events which occur after (x) possession of the Aircraft has been redelivered to Lessor (which return and delivery shall be in full and complete compliance with the terms of the Lease), and (y) any and all other obligations of any kind whatsoever of the Manager under the Management Agreement, of the Certificate Holder under the Charter Agreement and of Transferee under the Lease have been fully paid and/or performed, as the case may be, unless any such Claims were caused by Transferee (or any stockholder, director, officer, employee, successor, assignee, agent or servant, as the case may be of the Transferee) or resulted or arose, directly or indirectly, from any acts, events or omissions of any kind whatsoever during the term of the Management Agreement, the Charter Agreement and/or the Lease. The foregoing indemnification shall be subject to the same reduction and subrogation provisions set forth in the Lease with respect to the general indemnity provided in Section 11 of the Lease. If any Claim is made against Manager, Certificate Holder, Transferee or an Indemnified Party, the party receiving notice of such Claim shall promptly notify the others, but the failure of the party receiving notice to so notify the other shall not relieve Transferee of any obligation hereunder. WITHOUT LIMITING THE GENERALITY OF THE TERMS HEREOF, EACH OF TRANSFEREE, MANAGER AND CERTIFICATE HOLDER AGREES THAT INDEMNIFIED PARTY SHALL NOT BE LIABLE TO ANY OF TRANSFEREE, MANAGER OR CERTIFICATE HOLDER FOR ANY CLAIM CAUSED DIRECTLY OR INDIRECTLY BY THE INADEQUACY OF THE AIRCRAFT OR ANY PART THEREOF FOR ANY PURPOSE OR ANY DEFICIENCY OR DEFECT THEREIN OR THE USE OR MAINTENANCE THEREOF OR ANY REPAIRS, SERVICING OR ADJUSTMENTS THERETO OR ANY DELAY IN PROVIDING OR FAILURE TO PROVIDE ANY OF THE SAME OR ANY INTERRUPTION OR LOSS OF SERVICE OR USE THEREOF OR ANY LOSS OF BUSINESS, OR PROFITS ALL OF WHICH SHALL BE THE SOLE RISK AND RESPONSIBILITY OF TRANSFEREE.

(n) Without limiting any term of this Consent or the Lease, upon the occurrence of an Event of Default and for so long as the same shall be continuing, Lessor shall be entitled to exercise any and all of its rights, powers and/or remedies under the Lease, including, without limitation, Lessor's rights of repossession thereunder, notwithstanding the Management Agreement, the Charter Agreement or any right of quiet enjoyment, or any other right to lease and use the Aircraft, thereunder, and Transferee, Manager and Certificate Holder (i) shall not interfere with, nor suffer or permit any Third Party Interest Holder to interfere with, any such rights, powers and/or remedies as a result of the Management Agreement or the Charter Agreement or any Related Agreement, or any of their respective interests arising thereunder, including, without limitation, any right of quiet enjoyment, or any other right to lease, charter, possess, operate and/or use the Aircraft, under the Management Agreement, Charter Agreement or any Related Agreement, and (ii) shall deliver the Aircraft to the Lessor upon a proper demand therefor.

5.  In consideration of the Lessor entering into this Consent, to the extent that it has not already done so, Transferee hereby assigns, conveys, pledges, hypothecates and transfers to the Lessor a first security interest in all of its right, title and interest in, to and under (i) the Management Agreement and the Charter Agreement (and all extensions and renewals thereof), (ii) any and all rentals, payments and any other sums of any kind whatsoever due, now or hereafter, under the Management Agreement and any Charter Agreement, (iii) any and all proceeds of any insurance required or maintained under the Agreement and/or Charter Agreement, (iv) all products and proceeds of the foregoing and (v) true copies of all present and future books and records relating to any of the foregoing, including, without limitation, all tapes, cards, computer programs, computer runs and computer data in the possession or control of the Transferee, any computer service bureau or other third party; (but not any of Transferee's obligations, liabilities and/or duties of any kind whatsoever as Transferee or otherwise under, or with respect to, the Management Agreement and/or the Charter Agreement and/or the Aircraft). Notwithstanding the foregoing assignment, (i) until the occurrence of an Event of Default, (ii) only while the same is continuing, and (iii) after notice to the Manager and Certificate Holder of the Event of Default, Manager and Certificate Holder, as applicable, shall pay Lessor all rentals, payments and other sums payable under the Management Agreement or the Charter Agreement. Upon any such Event of Default and notice from the Lessor, and while the same is continuing, Transferee hereby authorizes and directs Manager and Certificate Holder to directly pay to Lessor, or as Lessor may otherwise direct, any and all payments and any other sums of any kind whatsoever payable and to become payable under the Management Agreement or the Charter Agreement (collectively, "Agreement Payments"), and Manager and Certificate Holder agree to the foregoing. After the Lessor notifies Manager and/or Certificate Holder to pay it directly as provided herein, Transferee hereby agrees to hold in trust for Lessor any Agreement Payments it receives from Manager, Certificate Holder or any other party and to immediately upon receipt of any Agreement Payments to direct, pay and turn-over to Lessor any such Agreement Payments without any set-off, deduction, defense, counterclaim, recoupment or claim of any kind whatsoever.

6.  The Transferee hereby irrevocably constitutes and appoints Lessor and any other officer or agent thereof, with full power of substitution, as its true and lawful attorney-in-fact with full irrevocable power and authority in the place and stead of Transferee and in the name of Transferee or in its own name, from time to time in Lessor's discretion, for the purpose of carrying out the terms of this Consent, to take any and all appropriate action and to execute any and all documents and instruments which may be necessary or desirable to accomplish the purposes of this Consent, that the Transferee hereby ratifies all that said attorney shall lawfully do or cause to be done by virtue hereof, that this power of attorney is a power coupled with an interest and shall be irrevocable (to the extent permitted by law); and that, without limiting the generality of the foregoing, pursuant to such appointment, the Lessor shall have authority to endorse the Transferee's name on any checks, notes, drafts or any other payments or instruments constituting Agreement Payments which came into the Lessor's possession or control.

3

Such power of attorney shall terminate upon the termination or expiration of the Management Agreement.

7. The Transferee agrees that the powers conferred on Lessor hereunder are solely to protect the Lessor's interest in the Management Agreement, the Charter Agreement and/or the Aircraft and shall not impose any duty upon Lessor to exercise any such powers, and that Lessor shall be accountable only for amounts that it actually receives as a result of the exercise of such powers and neither it nor any of its officers, directors, shareholders, employees or agents shall be responsible to the Manager, the Certificate Holder, the Transferee or otherwise for any act or failure to act.

8. Transferee agrees that at any time and from time to time, upon the written request of Lessor, Transferee will promptly and duly execute and deliver or cause to be duly executed and delivered any and all further instruments and documents as Lessor may deem desirable in order to perfect its security interest in the Management Agreement and the Charter Agreement, to deliver to Lessor that fully executed copy of the Management Agreement or the Charter Agreement, which is, and will be, the only copy marked "Secured Party's Original." To the extent, if any, the Management Agreement or the Charter Agreement constitutes chattel paper under the Uniform Commercial Code, no security interest in the Management Agreement or the Charter Agreement may be created through the transfer and/or possession of any counterpart other than the counterpart marked "Secured Party's Original." All other copies of the Management Agreement or the Charter Agreement shall be prominently marked "Not an Original. Only the counterpart marked 'Secured Party's Original' shall be sufficient to create a security interest herein."

9. Manager and Certificate Holder agree that at any time and from time to time, upon the written request of Lessor, Manager and/or Certificate Holder, as applicable, will promptly and duly execute and deliver or cause to be duly executed and delivered any and all further instruments and documents as Lessor may deem desirable or necessary in order to carry out more effectively the intent and purposes of this Consent and/or to establish and protect the rights and remedies created or intended to be created in favor of Lessor and/or to perfect its security interest in the Management Agreement and the Charter Agreement and in any other items or matters related thereto.

10. Notwithstanding anything to the contrary contained herewith or otherwise, the Lessor does not by virtue of this Consent or otherwise assume any obligations, liabilities and/or duties of any kind whatsoever of the Transferee, of the Manager, of the Certificate Holder and/or of any other party whatsoever under, or with respect to, the Management Agreement, the Charter Agreement and/or the Aircraft and the Lessor shall not be responsible in any way whatsoever for the performance by the Transferee, by the Manager, by the Certificate Holder and/or by any other party whatsoever in connection with, relating to, or arising under, the Management Agreement, the Charter Agreement and/or the Aircraft.

11. This Consent shall be binding upon each of the Lessor, the Transferee, the Manager, and the Certificate Holder and their respective heirs, administrators, successors, transferees and assigns and the benefits hereof shall extend to and include the Lessor, the Transferee, the Manager, and the Certificate Holder and their respective heirs, administrators, successors, transferees and assigns. All of Lessor's, Transferee's, Manager's and Certificate Holder's rights and privileges contained herein shall survive the expiration or other termination of the Management Agreement, the Charter Agreement or this Consent.

12. THIS CONSENT SHALL NOT BE MODIFIED, ALTERED, AMENDED OR WAIVED IN WHOLE OR IN PART EXCEPT IN WRITING DULY SIGNED BY EACH PARTY OR BY EACH PARTIES' AUTHORIZED REPRESENTATIVE. ANY WAIVER SHALL BE EFFECTIVE ONLY IN THE SPECIFIC INSTANCE AND FOR THE SPECIFIC PURPOSE FOR WHICH IT IS GIVEN. NO FAILURE TO EXERCISE, OR DELAY IN EXERCISING, ANY RIGHT HEREUNDER SHALL OPERATE AS A WAIVER THEREOF; NOR SHALL ANY FAILURE TO EXERCISE, OR PARTIAL EXERCISE OF, ANY RIGHT HEREUNDER PRECLUDE ANY OTHER OR FURTHER EXERCISE THEREOF OR THE EXERCISE OF ANY OTHER RIGHT.

13. If any provision in this Consent or any part thereof is held invalid or unenforceable, such invalidity or unenforceability shall not affect or impair the validity or the enforceability of the remaining provisions, or any part thereof, of this Consent.

14. Manager and Certificate Holder hereby consent to the assignment of the Management Agreement and the Charter Agreement to the Transferee. Subject to the foregoing terms and conditions, Lessor hereby consents to the execution, delivery and assignment of each of the Management Agreement and the Charter Agreement as it relates to the Transferee and, as required by the Lease, Transferee, Manager and Certificate Holder hereby consent to the assignment of the Management Agreement and the Charter Agreement, as set forth herein to Lessor.

15. Except as expressly modified or amended herein, the terms and conditions of the Lease shall remain in full force and effect in accordance with their respective original tenor. Without limiting the generality of the foregoing or any other terms of this Consent, nothing contained herein shall be interpreted or construed in any way whatsoever to limit the various provisions of the Lease except as otherwise expressly provided herein.

16. This Consent may be executed in any number of counterparts and by the different parties hereto on separate counterparts. Execution in counterpart shall have the same effect as if the signatures thereto and hereto were upon the same instrument.

[SIGNATURES ON NEXT PAGE]

4

IN WITNESS WHEREOF, the parties hereto have executed this Consent to Aircraft Management Agreement and Charter Agreement and Assignment by their respective duly authorized representatives as of the day and year first above written.

TRANSFEREE:

DELPHI AUTOMOTIVE SYSTEMS
HUMAN RESOURCES LLC

By: _____

Title: _____

Date: _____

LESSOR:

FLEET NATIONAL BANK

By: *[signature] Dooley*

Title: Asst. Vice President

Date: 12/16/03

CERTIFICATE HOLDER:

AUTOMOTIVE AIR CHARTER, INC.

By: _____

Title: _____

Date: _____

MANAGER:

PENTASTAR AVIATION, LLC

By: _____

Title: _____

Date: _____

Acknowledged and Agreed to by:

LLC GUARANTOR:
DELPHI AUTOMOTIVE SYSTEMS LLC

By: _____

Title: _____

Date: _____

CORPORATE GUARANTOR:
DELPHI CORPORATION

By: _____

Title: _____

Date: _____

5

IN WITNESS WHEREOF, the parties hereto have executed this Consent to Aircraft Management Agreement and Charter Agreement and Assignment by their respective duly authorized representatives as of the day and year first above written.

TRANSFEREE:

DELPHI AUTOMOTIVE SYSTEMS
HUMAN RESOURCES LLC

By: _____

Title: President

Date: 12-16-03

LESSOR:

FLEET NATIONAL BANK

By: _____

Title: _____

Date: _____

CERTIFICATE HOLDER:

AUTOMOTIVE AIR CHARTER, INC.

By: _____

Title: _____

Date: _____

MANAGER:

PENTASTAR AVIATION, LLC

By: _____

Title: _____

Date: _____

Acknowledged and Agreed to by:

LLC GUARANTOR:
DELPHI AUTOMOTIVE SYSTEMS LLC

By: _____

Title: Treasurer + Vice President

Date: 12.16.03

CORPORATE GUARANTOR:
DELPHI CORPORATION

By: _____

Title: Vice Chairman + Chief Financial Officer

Date: 12-16-03

IN WITNESS WHEREOF, the parties hereto have executed this Consent to Aircraft Management Agreement and Charter Agreement and Assignment by their respective duly authorized representatives as of the day and year first above written.

TRANSFEREE:　　　　　　　　　　　　　　　　LESSOR:

DELPHI AUTOMOTIVE SYSTEMS　　　　　　　FLEET NATIONAL BANK
HUMAN RESOURCES LLC

By: _____　　　　　By: _____

Title: _____　　　　　Title: _____

Date: _____　　　　　Date: _____


CERTIFICATE HOLDER:　　　　　　　　　　MANAGER:

AUTOMOTIVE AIR CHARTER, INC.　　　　PENTASTAR AVIATION, LLC

By: _[signature]_　　　　　　　　　　　By: _[signature]_

Title: _Treasurer_　　　　　　　　　　Title: _CFO_

Date: _12/17/03_　　　　　　　　　　　Date: _12/17/03_


Acknowledged and Agreed to by:

LLC GUARANTOR:
DELPHI AUTOMOTIVE SYSTEMS LLC

By: _____

Title: _____

Date: _____


CORPORATE GUARANTOR:
DELPHI CORPORATION

By: _____

Title: _____

Date: _____

5