Amendment One to Agreement on General
Terms and Conditions

**Material Commitment Authorization**

This Amendment No. 1 to Agreement on General Terms and Conditions (hereinafter referred to the "Amendment") is made by and between **Delphi Automotive Systems LLC** and its affiliate, **Delphi Electronics and Safety Division**, a division of Delphi Automotive Systems LLC, ("Buyer") and **Solectron Corporation**, a Delaware corporation, and **Solectron de Mexico S.A. de C.V.**, a wholly owned subsidiary of Solectron Corporation, ("Seller"), pursuant to and in accordance with the Agreement on General Terms and Conditions dated as of August 17, 2001 ("Agreement") by and between Buyer and Seller. Unless otherwise stated in this Amendment, it is agreed that the terms and conditions of this Amendment shall be subject and subordinate to the Agreement, and the terms and conditions of the Agreement are incorporated herein by reference.

1. **Intent and Term:** Buyer and Seller intend to modify the Agreement in accordance with Section 5 of the Agreement, and consistent with both Sections 2.3 and 29 as set forth in Exhibit A to the Agreement (hereinafter referred to "Exhibit A"). This Amendment provides the Material Commitment Authorization as referenced in Section 2.3 of Exhibit A. It is the intent of the parties that this Amendment shall have the same term as and run concurrent with the Agreement.

2. **Scope of Amendment.** Seller and Buyer agree that this Amendment shall apply to all current and future claims relating to Materials that are in a) raw form or b) converted into finished goods and which are either c) on hand at Seller or d) held at a third party warehouse location, and where such Materials have become excess and/or obsolete (as determined by Seller and Buyer in good faith) due to: (1) Buyer notifying Seller of a product discontinuance; (2) Buyer reducing forecast or demand for product to zero; or (3) Buyer directing Seller to suspend scheduled shipments as set forth in Section 2.3 of Exhibit A.

3. **Delphi Commitment.** Buyer agrees to accept liability, and make prompt payment in full, for all then outstanding Materials. The parties hereto agree that when calculating the payment sum owed by Buyer to Seller in accordance with this Section, the parties shall use the then current "finished goods price" as set forth in the most current pricing document in force between the parties, whichever price is greater ("Final Sale Price"). The Final Sale Price will be calculated from the date of cancellation, discontinuance or suspension of shipments (as referenced in Section 3 above and as confirmed in a writing between the parties, electronic mail to suffice) based on advanced written notice to Seller, as follows:

    a) The committed quantity of Materials shall be measured on the basis of the Buyer-delivered forecast as the total quantity of Products (as defined in Section 1 of the Agreement) requested by Buyer over the period of time between the most recent planning week (as mutually determined by the parties and as described in an exchange of written communications, electronic mail to suffice) and fourteen (14) consecutive, subsequent weeks, inclusive ("Liability Term"). In accordance with

040409b

1

DOC. CONTROL

NO 1205-072704

Section 2.3 of the Exhibit, Buyer reserves the right to update and change the forecast delivery schedule from time to time; and

b) Seller agrees that no more than two (2) weeks of Materials will be committed as finished goods during the Liability Term, and those Materials thereafter not incorporated into an actual finished good shall be valued at one hundred percent (100%) of the Final Sale Price, for liability and payment purposes. The remaining twelve (12) weeks of the Liability Term for Materials shall be considered as work in process or component pieces, to be valued for liability and payment purposes, as follows:

   i) The four (4) week period immediately succeeding the first two (2) week period (as set forth above in Section 4(b)), shall be compensated at no more than sixty-five percent (65%) of the Final Sale Price;
   ii) The four (4) week period immediately succeeding the time period set forth above in Section 4(b)(i), shall be compensated at no more than fifty-five percent (55%) of the Final Sale Price; and
   iii) The four (4) week period immediately succeeding the time period set forth above in Section 4(b)(ii) shall be compensated at no more than twenty percent (20%) of the Final Sale Price.

c) Seller expressly reserves the right to seek further rate adjustments, additional flexibility agreements, price changes, carrying charges, or other fees in accordance with the Agreement, Exhibit A and this Amendment as and when Buyer makes adjustments to its forecast and Product requirements or if material cost, including Materials, increase due to allocation and market forces.

**IN WITNESS WHEREOF**, the parties, through their duly authorized officers, have executed this Amendment

Agreed:

**Delphi Automotive Systems LLC**
By _____
Date 6/3/04
Name: J.L. Griffin
Title: Gen. Director
Global Supply Mgmt.

**Solectron Corporation**
By _____
Date 7/27/04
Name: Linda V. Moore
       Vice President
Title: WW Sales Operations

040409b                    2

| Delphi Electronics and Safety Division | Solectron de Mexico S.A. de C.V. |
|---|---|
| By *[signature]* | By *[signature]* *[second signature]* |
| Date 6/14/04 | Date 7/27/04  08/06/04 |
| Name: SHARON D. MONTGOMERY | Name: Linda V. Moore |
| Title: DIRECTOR CENTRAL PRODUCTION CONTROL & LOGISTICS | Title: Vice President WW Sales Operations |