November __, 2005

TO:   [Covered Supplier]
      [Name]
      [Address]

Dear Valued Supplier:

      As you are no doubt aware, on October 8, 2005 (the "Petition Date"), Delphi Corporation ("Delphi"), together with certain of its U.S. affiliates (collectively, the "Debtors"), filed voluntary petitions under chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101-1330, as amended) in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Cases" and the "Bankruptcy Court," respectively).  On November 18, 2005, we requested the Bankruptcy Court's authority to assume certain of our agreements with suppliers in recognition of the importance of continuity in our business operations and our desire that the Bankruptcy Cases have as little effect on our operations as possible.  On November __, 2005, the Bankruptcy Court entered an order (the "Order") authorizing us, under certain conditions, to assume certain agreements with suppliers that agree to the terms set forth below and to be bound by the terms of the Order.  A copy of the Order is enclosed.

      To have the agreements between you and the Debtors that are listed on Schedule A hereto (each an "Agreement" and, if more than one, collectively, the "Agreements") assumed pursuant to section 365 of the Bankruptcy Code and to receive payment on pre-bankruptcy claims, you must agree to each of the following terms and conditions:

      (a)   You will extend the term of the Agreement or Agreements, as appropriate, and continue supplying the Debtors with the goods provided under the Agreement or Agreements, as appropriate, for a period of two (2) years from the date of expiration of each Agreement, unless the Debtors earlier reject or otherwise terminate the Agreement (the "Extension").

      (b)   You acknowledge and agree that each Agreement, and all of the terms thereof including the Delphi's General Terms and Conditions (a copy of which is enclosed herewith), including, without limitation, the termination for convenience provisions contained in Section 11 thereof, are enforceable by the Debtors against you.

      (c)   You will supply goods to the Debtors on MNS-2 payment terms and those other terms and conditions as are embodied in the Agreement (including Delphi's General Terms and Conditions) or such other trade terms, practices, and programs (including, without limitation, pricing terms) in effect between you and the Debtors in the twelve months prior to October 8, 2005 (collectively, the "Customary Trade Terms"), or such other favorable trade terms as are agreed to by the Debtors and the Covered Supplier.

     (d) You are adequately assured of future performance for the term of the Extension and waive any right to seek further adequate assurance of future performance, whether pursuant to section 365(b)(1)(C) of the Bankruptcy Code or otherwise.

     (e) You agree that the Debtors will pay you __% of the outstanding prepetition liabilities of the Debtors under such Agreement(s) as of the effective date of assumption reflected in the Debtors' books and records (net of any setoffs, credits or discounts) or as otherwise reconciled between the Debtors and you (the "<u>Trade Claim</u>").  The Debtors will pay the amount of the Trade Claim to you in six equal payments on the last day of each of the next six calendar quarters (<u>i.e.</u>, December 31, 2005; March 31, 2006; June 30, 2006; September 30, 2006; December 31, 2006; and March 31, 2007).  Payment of such amount at the times provided in the preceding sentence will constitute cure of all defaults under the Agreement or Agreements, as appropriate, and compensation of all actual pecuniary losses to you resulting from any such defaults, and you waive any further rights that you may have under section 365(b) of the Bankruptcy Code; <u>provided</u>, <u>however</u>, that the Trade Claim shall not constitute an administrative expense pursuant to section 503 of the Bankruptcy Code and you waive any right to assert a claim under section 503 on account of the Trade Claim.

     (f) In the event of any termination of the Agreement(s), you will not receive any payments of Cure that are to be paid on or after the effective date of such termination (the "Remaining Cure"); <u>provided</u>, <u>however</u>, that, upon any termination of any Agreement, you will receive an allowed general unsecured claim against the relevant Debtor for the amount of the Remaining Cure, which general unsecured claim shall be addressed pursuant to the terms of the plan of reorganization which is confirmed and consummated in the Debtors' chapter 11 cases;

     (g) Upon any termination of any Agreement, you agree that the amount of damages which you may assert against the relevant Debtor on account of such termination shall not exceed the amount of damages arising upon a termination for convenience in accordance with the terms of Section 11 of Delphi's General Terms and Conditions.

     (h) You will receive an allowed general unsecured claim against the appropriate Debtor for the remaining balance of the amount of the outstanding prepetition liabilities of the Debtors under the Agreement(s) as of the effective date of assumption reflected in the Debtors' books and records or as otherwise reconciled between the Debtors and you, which general unsecured claim shall be addressed pursuant to the terms of the plan of reorganization which is confirmed and consummated in the Debtors' chapter 11 cases.

     (i) In consideration for the payment described herein, you agree not to file or otherwise assert against any or all of the Debtors, their estates, or any other person or entity or any of their respective assets or property (real or personal) any lien (regardless of the statute or other legal authority upon which such lien is asserted) related in any way to any remaining prepetition amounts allegedly owed to you by the Debtors arising from agreements entered into prior to the Petition Date, including, without limitation, the Agreement(s).  Furthermore, if you have taken steps to file or assert such a lien prior to entering into this letter agreement, you agree to take all necessary steps to remove such lien as soon as possible.

    (j) You represent and warrant to the Debtors that you have not sold, conveyed or otherwise transferred your Trade Claim to any other party.

    Assumption of the Agreement(s) and payment of your Trade Claim in the manner set forth in the Order may occur only upon execution of this letter by a duly authorized representative of your company and the return of this letter to the Debtors. Your execution of this letter agreement and return of the same to the Debtors constitutes an agreement by you and the Debtors:

    (a) to the Customary Trade Terms and to the amount of the Trade Claim reflected in the Debtors' books and records or as otherwise reconciled between the Debtors and you;

    (b) that, for the term of the Extension, you will continue to supply the Debtors with goods pursuant to the Customary Trade Terms, and that the Debtors will pay for such goods in accordance with Customary Trade Terms;

    (c) that you have reviewed the terms and provisions of the Order and that you consent to be bound by such terms;

    (d) that you will not separately seek payment for reclamation and similar claims outside the terms of the Order;

    (e) that if you breach your obligations under this letter agreement, you shall be liable to the Debtors for any and all consequential damages resulting from such breach;

    (f) that, upon written notice of a breach described in paragraph (e) above from the Debtors, you will not be entitled to further installment payments of Cure until further order of the Bankruptcy Court;

    (g) that, in the event that the Bankruptcy Court determines that you are in breach of this letter agreement, you will immediately disgorge all payments received on account of your Trade Claim and the Debtors' avoidance rights under chapter 5 of the Bankruptcy Code shall immediately be reinstated without further order of the Bankruptcy Court; and

    (h) that you irrevocably consent to the Debtors' ability to sue you for injunctive relief in this Court upon a breach under any Agreement or this letter agreement.

    The Debtors and you also hereby agree that any dispute with respect to this agreement, the Order, and/or any breach under any Agreement shall be determined by the Bankruptcy Court.

    You hereby agree that you will keep the terms of this letter agreement together with all related settlement discussions strictly confidential. You may disclose the terms of this letter agreement only to your management personnel that need to know such information to

implement the terms of this letter agreement and legal counsel and other advisors with whom you have a recognized legal privilege; provided that all such parties have been informed of the confidentiality restrictions contained herein. You further agree that you will be responsible and liable for any breach of the confidentiality provisions set forth in this letter agreement by your management personnel, legal counsel and other advisors. You acknowledge that failure to honor the confidentiality provisions contained herein would cause significant economic harm to the Debtors. Any discussions by you with any third parties, including the press or media or consultants, regarding this letter agreement and its terms are expressly prohibited.

The Debtors expressly reserve all of their rights at law and in equity, including, without limitation, all of their rights as debtors-in-possession under the United States Bankruptcy Code. Without limiting the generality of the foregoing sentence, this agreement, and any payment made hereunder, does not constitute a waiver of the Debtors' rights (i) to dispute any claim, or (ii) to take, or refrain from taking, any other action under any applicable section of the United States Bankruptcy Code or any other applicable law.

If you have any questions about this Agreement or our financial restructuring, please do not hesitate to call (866) 688-8679.

                Sincerely,

                [DELPHI CORPORATION]

                _____
                By:
                      Its:

Agreed and Accepted by:
[Name of Trade Vendor]


_____
By:
      Its:

Dated: _____, 2005