**Warner Norcross & Judd LLP**  Hearing Date: November 29, 2005
Stephen B. Grow  Hearing Time: 10:00 a.m.
900 Fifth Third Center
111 Lyon St. N.W.
Grand Rapids, Michigan 49546
(616) 752-2000

**Duane Morris LLP**
A Delaware Limited Liability Partnership
Joseph H. Lemkin (JL- 2490)
744 Broad Street, 12th Floor
Newark, New Jersey 07102
(973) 424-2000

## UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, et al., | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | Judge Robert D. Drain |
| | ) | |

### RESPONSE OF BEHR INDUSTRIES, INC. TO ORDER TO SHOW CAUSE

Behr Industries Corporation ("Behr") submits this response to the November 3, 2005, Order to Show Cause issued against Behr pursuant to Debtors' <u>Motion for Order Authorizing Continuation of Vendor Rescue Program and Payment of Prepetition Claims of Financially-Distressed Sole Source Suppliers and Vendors Without Contracts</u> (the "Critical Vendor Motion"). Behr respectfully represents as follows:

## Background

1. Behr and its principal competitor, Novem Car Interior Design ("Novem"), share production of the interior wood trim pieces for the Mercedes M-Class and R-Class sedans. Novem, a foreign manufacturer, produces the floor console, instrument panel and center finish panel wood trim in its plant in Honduras. Behr manufactures door wood trim panels.

2. Coordinating the just-in-time delivery of wood trim from two suppliers for a single vehicle is a complex process. Mercedes has contracted with Behr to color match, sequence, label, and release Novem's parts according to a production schedule broadcast by Mercedes. Behr releases the sets to Delphi on an hourly basis according to Mercedes' production schedule.

3. Behr does not produce any of the parts it delivers to Delphi. All of the parts sequenced and delivered by Behr are manufactured by Novem. The price of assembled kits of Novem parts ranges from $74 to $475, depending on the vehicle trim. For its part, Behr earns an average of $5.00 on each Novem set Behr matches and sequences.

4. As of the petition date, Delphi owed $1,196,392.28 for sets of Novem parts delivered to Delphi pre-petition. Of that amount, approximately $50,000 represents Behr's charges for sequencing Novem's parts.

5. In early October, shortly after Delphi filed for bankruptcy, Novem informed Behr that effective October 26, 2005, Novem would suspend delivery of parts to Behr unless Novem received payment in full of all pre-petition balances it was owed.

6. Behr immediately advised Delphi of Novem's demand. Behr also applied to participate in Delphi's Critical Vendor program. Over the course of the next several weeks, and

with Novem's October 26 deadline looming, Behr and Delphi negotiated the terms of Behr's participation in the Critical Vendor program.

7.      Throughout these discussions, Behr made clear that it would pay to Novem whatever funds Delphi earmarked for that purpose. When Delphi offered Behr $658,478 under the Critical Vendor program, Behr contacted Novem in an effort to get Novem's commitment to continue delivery of parts in consideration of that partial payment. Novem, however, refused to make any such commitment.

8.      On October 25, 2005, the day before Novem's deadline, Behr informed Delphi that Behr's attempts to secure the support of Mercedes, or a commitment by Novem to continue to deliver its parts, had proven unsuccessful. Behr again promised to remit to Novem whatever amount Delphi earmarked for payment to Novem.

9.      The following morning, on October 26, 2005, Delphi wired $1,061,692.89 to Behr. Behr, in turn, remitted all of the Delphi funds directly to Novem.

**Argument**

10.     Behr never threatened to stop shipping Novem parts to Delphi. On the contrary, Behr made every effort to assure the continued delivery of Novem's parts. Novem, however, made that task impossible by imposing conditions on the delivery of its parts that Behr could not meet without Delphi's support.

11.     Delphi recognized Behr's predicament and committed to give Behr $658,478 under its Critical Vendor program. For its part, Behr promised to remit those funds, or whatever other amount Delphi decided to advance, directly to Novem.

12.     Whether Delphi's partial payment would have been sufficient to continue the uninterrupted flow of Novem parts was left entirely up to Delphi. Simply put, calling Novem's

3

bluff was Delphi's prerogative, not Behr's. While it is true that Novem may have continued to ship in consideration of Delphi's partial payment – or no payment at all, for that matter – Behr did not violate the stay by leaving that decision to Delphi.

13. Delphi has acknowledged in pleadings filed with this Court that it has a limited ability to impact foreign suppliers like Novem. It is unreasonable to expect that Behr would have any greater influence over Novem.

### Reservation of Rights

14. It is unclear at this time whether the hearing scheduled for November 29, 2005, will be designated an evidentiary hearing. Behr submits that an evidentiary hearing will be necessary and reserves the right to present witnesses in support of this response.

15. In addition, Behr believes that the trial of this matter will require the disclosure of confidential financial, commercial, and otherwise non-public information by Behr. Behr has requested that Delphi's counsel stipulate to the entry of a protective order. Behr's proposed order is attached as <u>Exhibit A</u>. Behr further reserves the right to seek entry of the attached or similar protective order.

**WHEREFORE**, Behr Industries Corporation respectfully requests that the Court rule that Behr Industries, Inc. did not violate the automatic stay by willfully threatening to withhold goods from Delphi and grant Behr Industries Corporation such further relief as may be just and appropriate.

/s/ Stephen B. Grow
Stephen B. Grow (pro hac vice motion pending)
Warner Norcross & Judd LLP
900 Fifth Third Center
111 Lyon St. N.W.
Grand Rapids, Michigan 49546
(616) 752-2000

-and-

/s/ Joseph H. Lemkin
Duane Morris LLP
744 Broad Street, 12th Floor
Newark,  New Jersey 07102
(973) 424-2000


Attorneys  for Behr Industries Corporation

# EXHIBIT A

# UNITED STATES BANKRUPTCY COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, <u>et al</u>., | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | Judge Robert D. Drain |
| | ) | |

## STIPULATED PROTECTIVE ORDER

Delphi Corporation and certain of its subsidiaries and affiliates (collectively, the "Debtor") and Behr Industries Corporation ("Behr"), by and through their respective counsel, hereby stipulate to the entry of a Protective Order that shall be applicable to and govern the production and disclosure by Behr of confidential information in connection with the November 1, 2005 Order to Show Cause (the "Show Cause Order").

**IT IS HEREBY ORDERED**:

1. Behr may designate as confidential any financial, commercial, proprietary, or otherwise non-public information contained in any document, material, pleading, testimony, or affidavit (the "Confidential Material"). Use of Confidential Material shall be governed by the terms of this Stipulated Protective Order (the "Order").

2. Designation of Confidential Material shall be made by Behr based on a good faith belief that the designated Confidential Material includes or reflects confidential, proprietary, financial, competitive, or other non-public information. Nothing in this order, however, shall preclude the Debtor or its attorneys from disclosing or using in the proceedings or discussions concerning the Show Cause Order any information or documents lawfully obtained

from a third party having the right to disclose such information or from public sources, even though the same information or documents may have been designated as Confidential Material.

       3.      Confidential Material shall be so designated by stamping copies of each page of each document produced with the legend "CONFIDENTIAL" or similar legend.

       4.      Testimony given at any hearing or deposition in connection with the Show Cause Order may be designated as containing Confidential Material by making a statement to that effect on the record, in which case the court reporter taking and transcribing such proceeding will bind such portions of the transcript containing Confidential Material and label such portions appropriately as CONFIDENTIAL. The testimony and the transcript of that testimony are to be treated as CONFIDENTIAL.

       5.      Confidential Material designated under this Order, including any summaries, copies, abstracts, or other documents derived in whole or in part therefrom, shall be used only for the purpose of the prosecution, defense, or settlement of this Show Cause Order, and for no other purpose, and may be disclosed or made available only to the Court, to Debtor's counsel (including the paralegal, clerical, and secretarial staff employed by such outside trial counsel), and to such officers or employees of the Debtor as are deemed necessary by their counsel to aid in the prosecution, defense or settlement of this Show Cause Order.

       6.      Nothing herein shall be construed to affect in any manner the admissibility of any document, testimony or other evidence.

       7.      Notwithstanding anything in this Court's October 14, 2005, Case Management Order to the contrary, all pleadings, documents, information, or testimony designated by Behr as containing Confidential Material: a) shall be filed manually in sealed envelopes or other appropriate sealed containers prominently marked with the case caption, on

which shall be endorsed the following or similar legend "**CONFIDENTIAL – FILED UNDER SEAL PURSUANT TO PROTECTIVE ORDER"**; and b) shall not be filed electronically.

8. This Order shall survive the final resolution of any contested matter relating to the Show Cause Order, to the extent that the information contained in Confidential Material is not or does not become known to the public, and the Court shall retain jurisdiction to resolve any dispute concerning the use of information disclosed hereunder.

_____
United States Bankruptcy Judge

3