Hearing Date and Time: January 5, 2006 at 10:00 a.m.
Objection Deadline: December 29, 2005

Brent C. Strickland (BS 7811)
Whiteford, Taylor & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | ) |
| | ) |
| DELPHI CORPORATION, *et al*., | ) Chapter 11 Case No. 05-44481 (RDD) |
| | ) |
| | ) (Jointly Administered) |
| Debtors. | ) |
| | ) |
| | ) |

**MOTION FOR ORDER OF RELIEF FROM AUTOMATIC STAY TO PROVIDE
NOTICE OF DEFAULT AND TERMINATE SALES AGREEMENT BETWEEN PEPCO
ENERGY SERVICES, INC. AND DEBTORS, OR IN THE ALTERNATIVE, FOR
ORDER COMPELLING DEBTORS TO ASSUME OR REJECT SALES AGREEMENT**

Pepco Energy Services, Inc. ("PES"), by its undersigned counsel, requests the entry of an Order granting relief from the automatic stay to provide a default notice and terminate a sales agreement between PES and the Debtors, or in the alternative, for an order compelling the Debtors to assume or reject the sales agreement and respectfully represents:

**I.    JURISDICTION AND VENUE**

1. This Court has jurisdiction to hear this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157.

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The relief sought in the Motion is predicated on sections 362(d)(1) and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 et. seq. (the "Bankruptcy Code"), and rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## II.    BACKGROUND

4. PES is a party to a pre-petition Master Electric Sales Agreement, dated July 8, 2003, (including all amendments thereto) (the "Sales Agreement") with Debtor Delphi Corporation and its subsidiaries and affiliates (collectively, "Delphi").

5. The Sales Agreement provides that the terms of the applicable Addendum to Master Electric Sales Agreement are "strictly confidential." As a result, the terms are not set forth in this Motion and the Sales Agreement is not attached hereto. To the extent those terms are required for consideration of this Motion, PES will file the Sales Agreement under seal or provide them to the Court for *in camera* review.

6. Delphi has defaulted on the payment terms under the Sales Agreement during the post-petition period and has not cured said default as of the filing of this Motion. Accordingly, the Debtors are in breach of the Sales Agreement.

7. Further, on October 28, 2005, this Court entered a Final Order Under 11 U.S.C. §§ 105, 366, 503, and 507 (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Services on Account of Prepetition Invoices and (II) Establishing Procedures for Determining Requests for Additional Assurance (the "Utilities Order") [Docket No. 760]. By the Utilities Order, the Debtors and PES are required to continue performance on the pre-petition terms of the Sales Agreement. Specifically, the Utilities Order states:

> The Debtors shall pay on a timely basis in accordance with their prepetition practices all undisputed invoices for postpetition utility services provided by the Utility Companies to the Debtors.

Utilities Order at ¶ 2.

8. Therefore, in addition to breaching the Sales Agreement, Delphi has violated the terms of this Court's Utilities Order by failing to perform the Sales Agreement under its pre-petition terms. For the reasons set forth below, PES requests that the Court enter an Order lifting the automatic stay to allow for termination of the Sales Agreement or, alternatively, compel the Debtors to assume or reject the Sales Agreement.

### III.   DISCUSSION

#### A. The Stay should be Lifted to Allow for the Termination of the Sales Agreement

9. Section 362(d) of the Bankruptcy Code provides, in relevant part, that:

> (d)   On request of a party in interest after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -
>
> (1)   for cause, including the lack of adequate protection of an interest in property of such party interest[.]

11 U.S.C. § 362(d)(1).

10. Cause exists for granting PES relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code because Delphi has violated the Utilities Order and is in breach of the Sales Agreement. Pursuant to the terms of the Sales Agreement, PES is required to receive payment by a specific date. Timely payment is critical because if payment is not received by such date, and the payment default is not cured within a prescribed time period set forth in the Sales Agreement, PES is unable to provide a "drop" service notice to the public utility that ultimately delivers the power to the Debtors through its electric distribution system. As a result, PES

becomes liable to the public utility to deliver an additional month's worth of electricity or suffer such costs and additional potential exposure for failing to comply with the public utility's supplier tariff requirements. The "drop" notice is required by the public utility by a date certain which is approximately thirty days in advance of the proposed cut-off date. The payment requirement was bargained for by PES and required so that PES does not incur this risk. As a result of the Debtors' nonpayment, PES is now at risk for liability to the local utility.

11. If PES does not absorb the stated risk, it is exposed by a potential loss and/or default under the local distribution utility's supplier tariff that applies to PES' sales to the Debtors. PES' contract rights as embodied in its contract with the Debtors are important and integral to PES's business operations, in addition to its commercial interests. Accordingly, PES should not be forced to continue to perform the Sales Agreement without the assurance provided to PES by the terms of the pre-petition Sales Agreement. A "nondebtor party who is stayed from proceeding should not be denied valuable rights simply because of the stay." 3 Lawrence P. King, et al., Collier on Bankruptcy, ¶ 362.03[5][a] (15th rev. ed. 2005).

12. PES has the contractual right under the Sales Agreement to enforce its remedies, which include a termination procedure for non-payment. As stated previously, this termination procedure is critical to avoid additional payment exposure and possibly larger costs by PES to the local distribution utility serving the Debtors. Accordingly, PES requests that the stay be lifted effective as of the entry of an order granting this Motion to allow PES to provide a notice of nonpayment to the Debtors and terminate if such payment is not cured. To the extent that the Debtors cure the current default after the filing of this Motion, PES requests that this Court enter an Order whereby if a future payment under the Sales Agreement is untimely pursuant to the terms of the Sales Agreement, the stay shall be automatically lifted without further Order of this

Court to allow PES to send a notice of non-payment and to terminate the Sales Agreement per its terms. This will provide PES with its bargained-for contract right to protect itself against liability to Delphi's local utility provider and loss or damage to its business relationship with the local provider, which provides electric utility service to numerous other PES customers.

### B. Alternatively, the Debtors should be Compelled to Assume or Reject the Sales Agreement

13. Under Section 365(d)(2), in a Chapter 11 case, the Debtors may assume or reject an executory contract "at any time before the confirmation of a plan but the court, on request of any party to such contract or lease, may order the [debtor] to determine within a specified period of time whether to assume or reject such contract or lease." 11 U.S.C. § 365(d)(2).

14. The Sales Agreement is an executory contract and PES is entitled to the protections of section 365 of the Bankruptcy Code.

15. During the post-petition time period, the Debtors have failed to perform their payment obligations under the Sales Agreement while enjoying the benefit of the same. The Debtors have effectively altered the terms of the Sales Agreement by violating the Utilities Order and failing to perform their obligations.

16. Additionally, as mentioned previously, due to the monetary and non-monetary risks and exposure to PES resulting from nonpayment by Delphi, PES should be entitled to enforce the terms of the Sales Agreement against the Debtors. Having exhibited non-performance in both the pre-petition and post-petition periods, the Debtors should be compelled to assume or reject the Sales Agreement so that PES can either enforce the assumed agreement against the Debtors, or reduce its risk and mitigate any damages by having the Sales Agreement rejected and the electricity marketed to another customer. Continuing to require PES to perform where the

Debtors have breached post-petition payment terms would prejudice PES and further reduce the bargained for rights under the Sales Agreement.

17. Accordingly, the Debtors should be compelled to assume or reject the Sales Agreement within ten (10) days of an order granting this Motion and providing such relief.

**IV.    CONCLUSION**

18. For the foregoing reasons, this Court should: (i) enter an Order granting PES relief from the automatic stay so as to permit it to terminate the Sales Agreement pursuant to section 362(d)(1) of the Bankruptcy Code; or (ii) to the extent that the nonpayment has been cured subsequent to the filing of this Motion, enter an Order providing that any further non-payment by the Debtors pursuant to the terms of the Sales Agreement shall cause the automatic stay to be lifted without further order of this Court to allow PES (a) to send the Debtors a notice of nonpayment, and (b) if such nonpayment is not cured by the time period set forth in the Sales Agreement, to terminate the Sales Agreement; or (iii) alternatively, enter an Order compelling the Debtor to assume or reject the Sales Agreement with PES within ten (10) days from entry of said Order.

Dated: November 21, 2005

       /s/ Brent Strickland (BS 7811)
Brent C. Strickland, BS 7811
Whiteford, Taylor, & Preston L.L.P.
Seven Saint Paul Street
Baltimore, Maryland 21202
(410) 347-8700

Attorneys for Pepco Energy Services, Inc.

*1650671*