Kenneth S. Ziman (KZ-2486)
William T. Russell, Jr. (WR-0998)
Robert H. Trust (RT-6660)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Fax: (212) 455-2502

Attorneys for the Administrative Agent for the
Prepetition Secured Lenders

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | Chapter 11 |
| | Case No. 05-44481 (RDD) |
| | (Jointly Administered) |
| DELPHI CORPORATION., et al., | |
| Debtors. | |

**LIMITED OBJECTION OF THE PREPETITION AGENT TO THE DEBTORS'
MOTION FOR ORDER UNDER §§ 105 AND 363 AUTHORIZING THE DEBTORS
TO IMPLEMENT A KEY EMPLOYEE COMPENSATION PROGRAM**

JPMorgan Chase Bank, N.A., in its capacity as administrative agent (in such capacity, the "Prepetition Agent"), for itself and a syndicate of approximately 250 senior secured lenders (collectively, the "Prepetition Lenders") to the above-captioned debtors and debtors-in-possession herein (collectively, the "Debtors"), hereby submits this limited objection (this "Objection") to the Debtors' motion for an order under 11 U.S.C. §§ 105(a) and 363(b)(1) authorizing the Debtors to implement a key employee compensation program (the "KECP Motion"). In support hereof, the Prepetition Agent respectfully represents as follows:

509265-1038-08814-NY01.2530213

## BACKGROUND

**A.        The Prepetition Credit Agreement and Related Collateral**

1.        Prior to the Debtors' commencement of these Chapter 11 cases on October 8, 2005 (the "Petition Date"), Delphi Corporation (the "Borrower") entered into the 5-Year Third Amended and Restated Credit Agreement, dated as of June 14, 2005 (as amended, supplemented or otherwise modified, the "Prepetition Credit Agreement"), among the Borrower, the Prepetition Lenders and the Prepetition Agent.  As of the Petition Date, the Borrower was liable to the Prepetition Lenders in the aggregate principal amount of approximately $2.6 billion on account of loans, letters of credit that have been issued and are outstanding and other extensions of credit (the "Prepetition Obligations").  The Prepetition Obligations are held by more than 250 Prepetition Lenders, which include money-center commercial banks, hedge funds and other financial institutions.

2.        The Debtors have acknowledged and agreed that the value of the Prepetition Lenders' collateral substantially exceeds the Prepetition Obligations as of the Petition Date.  *See* Final DIP Financing Order ¶ 3.  In fact, the Debtors have estimated that the value of their assets securing the Prepetition Obligations is approximately $9 billion as of the Petition Date.

**B.        The KECP Motion**

3.        On the Petition Date, the Debtors filed the KECP Motion seeking *inter alia*, approval of the Annual Incentive Plan and the Emergence Bonus Plan.  The Annual Incentive Plan provides for the payment of annual bonuses if the Debtors reach their projected business plan EBITDAR levels over six-month performance periods.  The Debtors contemplate

that the EBITDAR levels for the first performance period, covering October 1, 2005 to June 30, 2006, will be set before December 31, 2005 by the Debtors' board of directors. Each participant's bonus opportunity for a performance period will equal one-half of such employee's current annual plan opportunity. KECP Motion ¶ 27. The Debtors estimate that the six month cost of the Annual Incentive Plan is $21.5 million. KECP Motion, Exhibit 1 at p. 10.

        4.       The Emergence Bonus Plan has two components: (i) a cash component and (ii) an equity component. The cash under the Emergence Bonus Plan becomes payable to U.S. executives upon either the effective date of a plan of reorganization or a sale of all or substantially all of the Debtors' assets (the "Effective Date"). Cash payments vary from 30% to 250% of a participant's salary based on the level of such participant's responsibility in the Debtors' organization. Payments under the cash component of the Emergence Bonus Plan will be paid in one lump sum payment shortly after the Effective Date. KECP Motion ¶¶ 28-29. The projected cost of the cash component is approximately $88 million. KECP Motion, Exhibit 1 at p. 12. This cash award is equal to approximately 1% of the Debtors' total enterprise value as of the Petition Date.

        5.       The equity component of the Emergence Bonus Plan covers the Debtors' U.S. and non-U.S. executives. The Debtors intend to set aside 10% of the equity in the reorganized Debtors for these executives to be awarded only if the Debtors confirm a Chapter 11 plan. The value of this equity award cannot be determined prior to confirmation of a Chapter 11 plan when a plan would detail a proposed emergence capital structure based upon the enterprise value of the Debtors as of such time.

        6.       Neither the cash component nor the equity component of the Emergence Bonus Plan is dependent on the success of the Debtors' Chapter 11 cases or the recoveries of

stakeholders. These awards will be made even if the Debtors' enterprise value has severely diminished during the course of these Chapter 11 cases.

## ARGUMENT

7.      The Prepetition Agent does not dispute the Debtors' need to motivate key employees for the duration of these Chapter 11 cases (and beyond) and agrees that appropriate incentive plans are essential tools in that effort. The Prepetition Agent appreciates that employees are confronted with new burdens, challenges and uncertainties as a result of the Debtors' filing of their Chapter 11 cases. Accordingly, the Prepetition Agent's objections are limited to certain aspects of the Debtors' Key Employee Compensation Program that fail to create effective incentives for senior management to maximize the value of the estates for the benefit of the stakeholders.

8.      In the Second Circuit, bankruptcy courts are to "sit as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the trustee or debtor-in-possession, and not, as it does in other circumstances, as the arbiter of disputes between creditors and the estate." *Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993). In determining whether the implementation of the proposed Key Employee Compensation Program would be a good business decision or a bad one, this Court should examine whether the program is "fair and reasonable". *In re Friedman's, Inc.*, Case No. 05-40129, at p. 9 (Bankr. S.D. Ga. April 4, 2005) (citing *In re Aerovox, Inc.*, 269 B.R. 74, 80 (Bankr. D. Mass. 2001) (citation omitted)); *see In re America West Airlines, Inc.*, 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) ("The Court, on this record, on the history and under the present posture of the case, must determine whether the proposed bonuses are reasonable and

fair under the circumstances.").[1] Based on the facts and circumstances existing at this time in these Chapter 11 cases, the Debtors' Key Employee Compensation Program is not fair and reasonable and, therefore, should not be approved absent the modifications described herein.[2]

*A. The Emergence Bonus Plan Does Not Provide an Effective Incentive for Participants to Maximize the Value of the Estates for the Benefit of the Stakeholders.*

9.  The Debtors' proposed Emergence Bonus Plan should not be approved as proposed – it is an example of a sound concept being implemented in an unsound manner. The wisdom of cash payments to encourage key personnel to remain with the Debtors during these Chapter 11 cases is self-evident. What is questionable, however, is the manner in which the Debtors' proposed Emergence Bonus Plan is structured. The fundamental flaw in the Emergence Bonus Plan is that the compensation of management should not be increased without consideration of the value created by members of management for the benefit of creditors of the estates. Because the Debtors' proposed Emergence Bonus Plan rewards attendance without regard to performance, it should not be approved.

---

[1] A copy of the memorandum and opinion rendered by the Bankruptcy Court in *In re Friedman's, Inc.* is attached hereto as Exhibit A. The Debtors' compensation consultants, Watson Wyatt Worldwide ("Watson"), and legal counsel, Skadden, Arps, Slate, Meagher & Flom LLP, were also involved in seeking approval of the key employee compensation program in *Friedman's, Inc.*, which, not surprisingly, has many similar components to the Key Employee Compensation Program in these Chapter 11 cases. In fact, the Friedman's, Inc. key employee compensation program is relied upon by Watson as a precedent for the Debtors' Key Employee Compensation Program. *See* KECP Motion, Exhibit 1 at p. 14. For this reason, a copy of the motion filed by Friedman's, Inc. seeking approval of its key employee compensation program is attached hereto as Exhibit B (the "Friedman's, Inc. KECP Motion").

[2] Despite repeated promises, the Debtors have failed to deliver any detail beyond Watson's report to the Prepetition Agent and its advisors regarding the proposed payouts to eligible employees under the Emergence Bonus Plan and the Annual Incentive Plan. The Prepetition Agent, therefore, reserves its right to supplement this Objection once that information is received if the Prepetition Agent believes that the proposed payouts to participants under the Emergence Bonus Plan and the Annual Incentive Plan are not reasonable or fair.

10. Accordingly, the Prepetition Agent believes that the cash component of the Emergence Bonus Plan should be tied in some manner to the value generated by the Debtors' management during these Chapter 11 cases in order to create an incentive for management to deliver value for the benefit of the stakeholders. By making the cash component dependent upon the value of the Debtors' businesses at the conclusion of these Chapter 11 cases, the interests of the Debtors' key employees and stakeholders would be aligned. Absent such a modification, many members of management would more than double their salary by doing what they are already paid to do – simply going to work.

11. In addition, the Emergence Bonus Plan is unreasonable insofar as the equity component of the Emergence Bonus Plan is a gift of indeterminate value to be awarded to certain key employees upon emergence from Chapter 11. It is premature to allocate any portion of the equity in the reorganized Debtors to any constituency – let alone certain employees – without any understanding of the Debtors' capital structure upon emergence. This issue should be deferred until the negotiation and formulation of a Chapter 11 plan.

12. Requiring that an emergence bonus be tied to value generation is common in Chapter 11 key employee compensation programs. Indeed, the performance of the debtor's business was a key factor in determining the amount of an emergence bonus to be awarded to the participants in several of the precedents relied upon by the Debtors in support of the proposed Emergence Bonus Plan. For example, in *In re Friedman's, Inc.*, a portion of the cash and equity to be awarded to key employees upon emergence was dependent upon the achievement of certain financial objectives that would result in an economic recovery to holders of existing equity in the debtor. *See* Friedman's, Inc. KECP Motion, Exhibit 2. In *In re Hayes Lemmerz International, Inc.*, key employees were eligible for bonuses of cash or equity upon the consummation of a

Chapter 11 plan based upon the total enterprise value of the debtors as of the plan effective date. *See In re Hayes Lemmerz Int'l, Inc.*, Case No. 01-11490 (MFW) (Bankr. D. Del. May 28, 2002).[3]

    13. Similarly, in *In re Interco Inc.*, the awards to be paid to the chief executive officer and the chief financial officer upon the confirmation of a Chapter 11 plan were to be reduced each month in the event that the Chapter 11 plan was not confirmed by a date certain, presumably in recognition of the fact that the value of the debtor's estate, and the concomitant recovery by stakeholders, would diminish if the debtor did not emerge from Chapter 11 within two years after the commencement of the case. *See In re Interco Inc.*, 128 B.R. 229, 232 (Bankr. E.D. Mo. 1991); *see also In re America West Airlines, Inc.*, 171 B.R. 674, 678 (Bankr. D. Ariz. 1994) (after confirmation, court approved award of confirmation bonuses to senior management because the debtor had "accomplished a major feat by its confirmed consensual plan.").

    14. Given the weight of authority – all cited by the Debtors in support of the Emergence Bonus Plan – it is reasonable and fair to condition the cash awards under the Emergence Bonus Plan on the achievement of certain performance targets, e.g., an agreed upon minimum level of total enterprise value of the Debtors (or minimum total consideration for the sale of all or substantially all of the Debtors' assets) at the time the Chapter 11 plan is confirmed. These modifications would ensure that the key employees' interests are aligned with those of the Debtors' stakeholders.

    15. Such a modification to the Emergence Bonus Plan is particularly appropriate in these Chapter 11 cases where the Debtors' turnaround plan is fraught with uncertainty and risk. Although the Debtors' businesses and assets had substantial value as of the Petition Date, the Debtors' enterprise value could quickly and severely erode if the Debtors are

---

[3] A copy of this order is attached hereto as <u>Exhibit C</u>.

unsuccessful in implementing their complex, multilateral turnaround plan. The Debtors were unable to extract any concessions from their unions or any financial support from General Motors Corporation (the Debtors' largest customer) prior to the Petition Date, and recent media reports have raised the specter of possible labor disruptions at several of the Debtors' facilities in light of the Debtors' proposed changes to their collective bargaining agreements and a potential Chapter 11 filing by General Motors. The extent to which these events would diminish the value of the Debtors' enterprise if they were to occur is unknown. In the worst case scenario, however, it would not be reasonable or fair to pay $88 million in cash and award 10% of the equity to key employees upon emergence where the Debtors' enterprise value has severely deteriorated as a result of these or other events.

*B. The Prepetition Agent Should Have an Opportunity to Evaluate the Performance Targets and Benchmarks for the Debtors' Annual Incentive Plan.*

16. The Prepetition Agent does not dispute that it is appropriate to promote the Debtors' turnaround by maintaining an Annual Incentive Plan in which performance will be measured by EBITDAR targets. The Debtors, however, have not yet proposed any EBITDAR targets, and have advised that such targets will not be set until sometime toward year-end. Thus, it is currently impossible to assess whether the Annual Incentive Plan will be a true performance-based incentive plan or whether the targets will be set so low that payouts are essentially guaranteed.

17. The Prepetition Agent objects to the Annual Incentive Plan only insofar as the Debtors do not propose to afford the Prepetition Agent and its advisors an opportunity to review the Debtors' new business plan in the context of these Chapter 11 cases generally and to determine whether the proposed performance targets and benchmarks for the Annual Incentive Plan are appropriate in light of its stated goals. If the Debtors and the Prepetition Agent are

509265-1038-08814-NY01.2530213

unable to resolve any differences in their views on the proposed EBITDAR targets, then such dispute should be heard by this Court before the estates become liable for millions of dollars in incentive payments. This oversight will help enhance the possibility that the Debtors' Annual Incentive Plan will be just that – an incentive for management to reach for meaningful targets and a reward for achieving those targets.

## CONCLUSION

18. For the foregoing reasons, the relief requested in the KECP Motion should be denied.

Dated: New York, New York
       November 22, 2005

                           SIMPSON THACHER & BARTLETT LLP

                           By: /s/ Kenneth S. Ziman
                           Kenneth S. Ziman (KZ-2486)
                           William T. Russell, Jr. (WR-0998)
                           Robert H. Trust (RT-6660)

                           425 Lexington Avenue
                           New York, New York 10017
                           Telephone:   (212) 455-2000
                           Facsimile:    (212) 455-2502

                           ATTORNEYS FOR THE PREPETITION AGENT