# Exhibit A

# In the United States Bankruptcy Court
## for the
## Southern District of Georgia
### Savannah Division

FILED
at 4 O'clock & 17 min P M.
Date 4/4/05

United States Bankruptcy Court
Savannah, Georgia

In the matter of:                                   )      Chapter 11
                                                    )      Jointly Administered
FRIEDMAN'S, INC., et. al.                           )
                                                    )      Number 05-40129
            *Debtors*                               )

## MEMORANDUM AND OPINION ON DEBTORS' MOTION TO IMPLEMENT A KEY EMPLOYEE COMPENSATION PROGRAM

Debtors' cases were filed on January 14, 2005. On March 11, 2005, the Debtors filed a Motion for Order Authorizing the Debtors to Implement a Key Employee Compensation Program ("KECP") (Doc. #358) pursuant to Sections 363(b)(1) and 105 of the Code. By implementation of the program the company hopes to stabilize its cadre of key personnel beginning with its CEO and extending through a total of 83 employees down to the store manager level. The KECP is intended to stabilize the workforce, reassure the employees that continuing to serve the company is in their economic self interest, and to provide incentive bonuses for performance if certain targets are reached.

Although it is similar in many respects to incentive programs established in other Chapter 11 cases which have been the subject of controversy and some criticism, the Debtors have structured this program to award performance and successful exit from Chapter 11 and not merely to reward employees' retention or merely remaining on the payroll. Debtors reviewed incentive programs established in other retail Chapter 11

AO 72A
(Rev. 8/82)

proceedings and received substantial input from its financial advisors, legal advisors, and compensation experts. It reviewed the existing compensation structure and existing employment contracts with certain employees. Debtors believe they incorporated the most effective incentive components that they found in other employee plans in order to align the interest of key employees with the Debtors' shareholders and creditors and to strike a balance between the retention and motivation of key employees and the fiduciary obligation to maximize creditor and shareholder recoveries.

The KECP contains three elements: (1) an annual incentive plan; (2) a severance plan; and (3) an exit plan. In the incentive portion of the plan the Debtors used as a starting point their pre-petition annual incentive program, but raised the performance targets to create greater incentives on the employees' part to create value in the company. The targets for eligibility for annual bonuses depend on whether the Debtors achieve their projected EBITDAIR (Earnings Before Interest Expense Taxes Depreciation Amortization Investigation and Restructuring Expenses). Under the plan no key employee will receive an annual bonus unless the company achieves 100% of EBITDAIR and even in that event the eight most highly paid employees, including the Chief Executive Officer, Mr. Cusano, will receive no annual bonus. If Debtors achieve 170% or 200% of EBITDAIR all key employees will receive an annual bonus and to the extent the Debtors exceed 100% of EBITDAIR, but fall short of 170%, the top eight employees will receive a pro-rata portion of the 170% bonus level.

The second component, severance pay, is payable to the key employees if any of them is involuntarily terminated as a result of the corporate restructuring process that takes place within this Chapter 11 proceeding. Finally, the exit plan component provides cash and in some instances stock to key employees in varying amounts if the company emerges from Chapter 11 with a confirmed plan. The maximum in equity that can be granted at a nominal price or purchased at a price approximating fair market value is 10% of all equity in the company. The plan is detailed and far more complex than this general outline and the full terms, of course, are contained in the record. However, with respect to the issues before the Court, this general outline should suffice.

A limited objection was filed by certain shareholders of Friedman's, Regis Special Situations Fund, LLP, and the Yacktman Funds, Inc., hereinafter referred to as "R&Y." The objection stated that R&Y did not oppose, in concept, an employee benefit plan to reasonably compensate employees for the extra burden of the Chapter 11 proceeding. The objection, however, argued that insufficient information was being provided to support the Motion, and that the Debtors had failed to demonstrate a reasoned business justification for changing their existing incentive program or for the granting of cash and equity to certain key employees following confirmation of a Chapter 11 plan.

The matter was heard by the Court on March 31, 2005, and testimony was offered by Sam Cusano, President and CEO of the Debtor; Ronald Tucker, co-chair of the

Creditors' Committee; Norman Deep, an independent director serving on the Board since May of 2004 and chair of the Compensation Committee; William Q. Derrough, Managing Director of Jeffries & Company, the financial advisors and investment bankers appointed to serve the Debtors; Justin Fossbender of Watson Wyatt Worldwide, an executive compensation consultant hired by the Compensation Committee of the Board of Directors; and Sal LoBiondo of Kroll Zolfo Cooper, financial advisors to the Debtors. These witnesses were subject to examination and thorough cross-examination, but no fact or expert evidence was offered by the objecting parties R&Y. Based on the testimony, I make the following Findings of Fact.

## FINDINGS OF FACT

It is customary and often necessary, in order to provide for continuity of leadership and effective management of a debtor in reorganization, for a meaningful compensation program to be created. These programs are common, wide-spread and ordinarily justified and justifiable. However, they have been subject to criticism in some quarters. *See, e.g.*, Official Comm. of Unsecured Creditors v. Henry Mayo Newhall Mem'l Hosp. (In re Henry Newhall Mem'l Hosp.), 282 B.R. 444 (B.A.P. 9th Cir. 2002). The Creditors' Committee has thoroughly reviewed the terms of the KECP and believes it is a necessity in order to improve the prospects of a successful reorganization. The Committee recognizes that this is a difficult area and one in which the balancing of interests is an extraordinarily fine art. The Committee has a fiduciary obligation to its creditors and reviewed this program in furtherance of its statutory obligations. The initial program

proposed during informal discussions was, in the opinion of the Committee, overly generous. Subsequent modifications to the program sought by the Committee which raised the incentive thresholds and substituted equity for some cash benefits were more acceptable to the Committee, and the Debtors' management was responsive to those suggestions. The Committee in general prefers performance-based programs and believes that this program, as presented, meets that classification. Because the thrust of the program is based on performance rather than mere retention of key employees, the Committee supports its approval. Stability and continuity in senior management are critical to the success of this company, and compared to other plans members of the Committee are familiar with, the plan is fair and reasonable, and calculated to maximize the value of the company.

In addition to the Committee's review, the Board of Directors of the company took a visible and pro-active role in the negotiation of the terms of this proposed program. Chair of the Board of Directors' Compensation Committee, Norman Deep, was unequivocal in stating that he supported the approval of this plan. Minutes of the various meetings and his testimony make it clear that the Board did not in any way rubber stamp management and the Committee's recommendations. In fact, while Mr. Deep, as chair of the Compensation Committee, listened to input from Debtors' management and the Committee, he stated emphatically that those opinions did not influence his review because he recognized the Board's responsibility as an independent fiduciary to the company. Based on questions and issues raised by the Compensation Committee, certain changes were made, but Deep continued to be less than completely satisfied with the package and

AO 72A
(Rev. 8/82)

required the Debtors to hire an independent analyst to review the compensation package, in addition to those professionals already serving the Debtors in this Chapter 11 proceeding. Watson Wyatt Worldwide was hired to conduct this review. As a result of its involvement and that of the Compensation Committee, the cash award components of the plan were reduced and the equity component was increased so that if value was generated by the reorganization process for the benefit of Class A and B shareholders, senior management would share in that value. When management agreed to those changes, the Compensation Committee was reassured of management's resolve to serve the company's long term interest and that of its creditors and shareholders. Further, the Compensation Committee concluded that the package is fair, reasonable and essential to the company's survival.

From the testimony presented, it is clear that experienced, qualified, and capable managers serving in retail jewelry chains are in limited supply and high demand. Without the implementation of a meaningful employment program, it is likely that key management employees, including, but not limited to Mr. Cusano, the CEO, might leave and certainly would consider leaving if more stable and secure opportunities were presented during the pendency of Debtors' case. It is noteworthy that not only were the KECP provisions negotiated in a manner which the Committee and the Board of Directors found more favorable and which resulted in a more performance based plan, but also resulted in modifications of the pre-petition employment contracts of some of senior management.

The use of EBITDAIR as the measuring stick against which cash bonuses are to be awarded is a typical feature in programs such as this, but in this case the targets which trigger bonuses were raised to higher than customary levels. Although it was argued that the EBITDAIR targets were set too low, it is clear from the testimony of William Q. Derrough that the business plan which set that 2005 target at $6.7 million was developed independently of the compensation package process and was not a result oriented figure.

R&Y object to the equity feature of the plan at least in part because the optioning of up to 10% of the company's equity is a benefit that cannot at this point be valued. At this point the current value of the company is unknown, much less what the value might be upon emergence from Chapter 11. Evidence was persuasive, however, that a 10% outright grant of equity upon emergence from Chapter 11 is a common feature of incentive programs in other retail Chapter 11 cases. The fact that this element was included in the program in conjunction with the adoption of less favorable cash bonus provisions than might otherwise have been considered or approved by the Court further evidences that reasonable business judgment was exercised in adopting this element of the plan. In the final analysis, the 10% equity interest may be of little if any value or it may be generous. If it is the latter, it will be so in large measure because the efforts of key employees and senior management have been extraordinarily successful in a case in which the future is quite uncertain.

## CONCLUSIONS OF LAW

Plans such as the one before the Court today are reviewed on a case-by-case basis. In re Montgomery Ward Holding Corp., 242 B.R. 147, 154 (D. Del. 1999). Debtors move for approval of their KECP plan pursuant to 11 U.S.C. § 363(b)(1) which provides that a debtor in possession, "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." Courts review a debtor's use of estate property outside of the ordinary course of business pursuant to a debtor's demonstration of sound business judgment. *See* In re Georgetown Steel Co., LLC, 306 B.R. 549, 555 (Bankr. D.S.C. 2004); In re Enron Corp., No. 01-16034, 2003 WL 1562202, at * 19 (Bankr. S.D.N.Y. Mar. 21, 2003)(citing In re Chateaugay Corp., 973 F.2d 141 (2nd Cir. 1992)).

The business judgment rule is a "policy of judicial restraint born of the recognition that directors are, in most cases, more qualified to make business decisions than are judges." Int'l Ins. Co. v. Johns, 874 F.2d 1447, 1458 n.20 (11th Cir. 1989). The rule is intended to protect directors and officers from liability when they make good faith decisions in an informed, deliberate manner. In re Munford, Inc., 98 F.3d 604, 611 (11th Cir. 1996). Courts should approve an exercise of a debtor's business judgment unless it is "so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice." Lubrizol Enterprises, Inc. v. Richmond Metal Finishers, Inc., 756 F.2d 1043, 1047 (4th Cir. 1985). It is the Debtors' burden to establish that its use of property outside of the ordinary course of business is an exercise of sound

business judgment. In re Aerovox, Inc., 269 B.R. 74, 80 (Bankr. D. Mass. 2001). Based on the foregoing, I find that Debtors exercised reasonable business judgment in developing and proposing the KECP plan before the Court today.

In addition to determining whether the proposed KECP plan is a proper exercise of Debtors' business judgment, this Court should also examine whether the plan is fair and reasonable. See In re Aerovox, Inc., 269 B.R. at 80 (citing In re Interco, Inc., 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991)).

Based on the undisputed testimony, I find that the plan is fair and reasonable. Even if there were doubt on that point, the evidence is overwhelming that the plan has been advanced after the application of sound business judgment. Its terms have been thoroughly reviewed, negotiated, and altered to satisfy the concerns of the Creditors' Committee and the Board of Directors. Those alterations have moved the plan in the direction that is more performance based than most such plans. However, even at its inception, the plan was consistent with the types of plans commonly employed to insure high-caliber, stable management of a troubled company. The changes bring the plan even more squarely in line with the interests of creditors and shareholders.

In short, the original program as presented was within the range of reasonableness of programs of this sort, particularly in light of this particular Debtors'

based nature of the program in a way that is calculated to create a greater return to creditors and increase shareholder value. The plan as adopted and for which approval of the Court is sought has been fully debated and due diligence by numerous parties has been brought to bear. The potential grant of an equity position should the Debtors successfully emerge from Chapter 11 is, under the facts and circumstances of this case, an essential element and the subject of tradeoffs between the interest of senior management, the interest of the Debtors and the Committee, and the interest of creditors and equity holders, which is reasonably calculated to result in the highest likelihood of a successful reorganization.

## ORDER

Pursuant to the foregoing, IT IS THE ORDER OF THIS COURT that Debtors' Motion to Implement a Key Employee Compensation Program is GRANTED. The Court will enter a separate order in accordance with this opinion.

_____
Lamar W. Davis, Jr.
United States Bankruptcy Judge

Dated at Savannah, Georgia

This 4th day of April, 2005.