Hearing Date: November 29, 2005 at 10:00 a.m.
Objection Deadline: November 25, 2005 at 4:00 p.m.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| DELPHI CORPORATION, et al., | : | Chapter 11 Case |
| Debtors. | : | 05-44481-RDD |
| | : | |
| _____ | : | (Jointly Administered) |

**OBJECTION OF SPS TECHNOLOGIES, LLC A/K/A SPS TECHNOLOGIES-CLEVELAND, NSS TECHNOLOGIES, INC. SPS TECHNOLOGIES WATERFORD COMPANY AND GREER STOP NUT, INC. TO DEBTOR'S MOTION FOR AN ORDER UNDER 11 U.S.C. §§ 363(b) AND 365(a) AND FED. R. BANKR.P. 9019 APPROVING PROCEDURES TO ASSUME CERTAIN AMENDED AND RESTATED SOLE SUPPLIER AGREEMENTS**

AND NOW COME, SPS Technologies, LLC a/k/a SPS Technologies-Cleveland, NSS Technologies, Inc. SPS Technologies Waterford Company and Greer Stop Nut, Inc. (collectively "SPS"), by and through their counsel Curtin & Heefner, LLP, and respond to DEBTOR'S MOTION FOR AN ORDER UNDER 11 U.S.C. §§ 363(b) AND 365(a) AND FED. R. BANKR. P. 9019 APPROVING PROCEDURES TO ASSUME CERTAIN AMENDED AND RESTATED SOLE SUPPLIER AGREEMENTS ("Motion") as follows:

1.      SPS received the following PURCHASE ORDERS from Delphi or one of its affiliates subsequent to the commencement of the bankruptcy cases, including the following:

Purchase Order SAG90I3807, alteration 30829, 30828, 29827, 12477
Issued 10/12/2005
NNS Technologies, Inc.
Vendor 433357
Part 3471
Delivery to: Delphi Saginaw Steering Systems
"Requirements Contract": effective 3/14/99 and new expiration date 12/31/10
Buyer's General Terms and Conditions are applicable

Purchase Order SAG90I5365, alteration 30841, 30840
Issued 10/12/05
NNS Technologies, Inc.
Vendor 433357

Part 3875/3876
Delivery to: Delphi Saginaw Steering Systems
"Requirements Contract": effective 8/02/04 and new expiration date 12/31/09
Buyer's General Terms and Conditions are applicable

Purchase Order SAG90I4536, alteration 30835, 30834, 09819
Issued  10/12/05
NNS Technologies, Inc.
Vendor 433357
Part 3688
Delivery to: Delphi Saginaw Steering Systems
"Requirements Contract": effective 3/13/01 and new expiration date 12/31/10
Buyer's General Terms and Conditions are applicable

Purchase Order SAG90I5152, alteration 30839, 30838, 19404
Issued 10/12/05
NNS Technologies, Inc.
Vendor 433357
Part 3850
Delivery to: Delphi Saginaw Steering Systems
"Requirements Contract": effective 7/28/03 and new expiration date 12/31/06
Buyer's General Terms and Conditions are applicable

Purchase Order SAG90I4495, alteration 30833, 30832, 09827
Issued 10/12/05
NNS Technologies, Inc.
Vendor 433357
Part 3655
Delivery to: Delphi Saginaw Steering Systems
"Requirements Contract": effective 1/23/01 and new expiration date 12/31/10
Buyer's General Terms and Conditions are applicable

Purchase Order SAG90I5008, alteration 30837, 30836, 94150, 94151, 94152
Issued 10/12/05
NNS Technologies, Inc.
Vendor 433357
Part 3842
Delivery to: Delphi Saginaw Steering Systems
"Requirements Contract": effective 10/14/02, new expiration date 12/31/06
Buyer's General Terms and Conditions are applicable

Purchase Order SAG90I4569, alteration 30842, 30827, 30843, 30826
Issued 10/12/05
SPS Technologies, Waterford Co.
Vendor 485942
Part Unidentified
Delivery to: Delphi Saginaw Steering Systems
"Requirements Contract": effective 11/07/01, new expiration date 12/31/10
Buyer's General Terms and Conditions are applicable

collectively "SPS Contracts".

2.       The Motion provides a procedure for the assumption of contracts between the Debtors, or

one of Debtors' affiliates, and "suppliers".

3.       The Motion provides at Section A. "The Procedures For The Debtors' Assumption Of

The Assumable Agreements", at page 11, footnote 5, that if a supplier does not comply with Debtors'

procedures, such refusal would constitute a full and final waiver of its rights to seek assumption of the

prebankruptcy agreement.

4.       The Motion provides at Section B. The Required Minimum Provisions provides that as a

condition precedent to the Debtors' assumption of a prebankruptcy agreement the supplier must:

a.       extend the prebankruptcy agreement for two years from the expiration date,

unless the Debtors earlier reject or otherwise terminate the Agreement, [paragraph 22 (a)];

b.       all cure amounts would be paid in six equal installments at the end of each of the

six calendar quarters ending on or after the Assumption Date [paragraph 22(b)];

c.       all of the Debtors' terms and conditions would be operative including termination

for convenience [paragraph 22(c)];

d.       payment would be under MNS-2 payment terms in effect 12 months prior to the

Petition Date or as agreed by the Debtors and the supplier; that is 60 day payment terms [paragraph

22(d)];

e.       suppliers agrees to waive adequate assurance of future payment [paragraph

22(e)];

f.       cure amount limited to 75% of the prebankruptcy payable to the supplier with the

balance treated as an unsecured claim [paragraph 22 (f)];

g.      in the event the Debtor terminate the prebankruptcy agreement no additional cure amount would be paid and the unpaid portion would be treated as an unsecured claim; with any termination damages be limited to damages under a termination for convenience [paragraph 22(g)]; and

h.      in the event the supplier breaches its obligations, the supplier would be liable for all consequential damages to the Debtors; the supplier would not be entitled to any cure amount balance; all paid cure amounts would be subject to disgorge; and the waiver of preference claim would be withdrawn; and the Debtors could sue for specific performance [paragraph 22(h)].

5.      The Motion, at paragraph 23, further provides that a supplier be deemed to conclusively deemed to consent to and be irrevocably bound by the Procedures and each of the Required Minimum Provisions, notwithstanding its failure to enter into an Assumption Agreement, upon its first shipments of Goods to the Debtor following the Assumption date for the Assumable Agreement and the first installment of the cure amount.

6.      The Motion, at paragraph 32, proposes that the suppliers maintain current prices for the period of contract extensions.

7.      The Motion, at paragraph 35, proposes that the Debtors be authorized, but not directed, to provide the suppliers with Preference Waivers in exchange for their entry into Assumption Agreements.

## OBJECTION

8.      SPS objects to the relief requested in the Motion for the following reasons:

a.      SPS asserts that the Debtors' reliance on Section 365(a) of the Bankruptcy Code, 11 U.S.C. § 365(a) is erroneous because:

1)      SPS does not agree to waive any right to seek, at SPS' sole discretion, the assumption of any SPS Contract.

2)      SPS does not agree to any extensions of SPS Contracts.

3)      The Debtors must cure the prebankruptcy arrearage in full upon assumption of any SPS Contract; delayed payments which do not equal the cure amount do not satisfy Section 365(a).  SPS is not agreeable to delayed payments or only partial payments of the cure amounts.

4)      The SPS Contracts are not "Requirement Contracts" and the assumption of the SPS Contracts does not convert the SPS Contracts to requirement contracts.

5)      The Debtors do not have the right to terminate any of the SPS Contracts for convenience.

6)      If any SPS Contract is assumed, it may only be thereafter rejected with any resulting claim becoming a cost of administration.

7)      If the SPS Contracts are assumed, and the Debtors later terminate or breach the assumed SPS Contract, the resulting damages would be a cost of administration claim and would not be waived or relegated to unsecured claim status.

8)      SPS is not agreeable to MNS-2 payment terms, that is, 60 day terms which would increase the risk of non-payment.  At the commencement of the bankruptcy cases, SPS required prior payment for additional parts.  SPS has now agreed to 7-day payment terms.   SPS is not agreeable to any further extension of credit or MNS-2 payment terms.

9)      SPS does not agree to waive adequate assurance of future payment.

10)     SPS is entitled to raw material surcharge recovery.  SPS is entitled to price increases under the SPS Contracts.  SPS is not agreeable to waiving contractual price increases.

b.      The Motion provides that a supplier, including SPS, would be conclusively deemed to consent and be irrevocably bound by the Procedures in the Motion.  SPS does not consent to the Procedures.

c.      If a SPS Contract is assumed, the waiver of any preference claim is irrevocable and any post-assumption damages against SPS would be merely limited to a claim for monetary damages.

d.      The Procedures violate the provisions of the Bankruptcy Code, especially Section 365 and the provisions of "due process".

e.      The Bankruptcy Court has no authority under the Bankruptcy Code to compel performance by SPS under the SPS Contracts as long as the Debtors have not assumed the SPS Contracts without any conditions.

f.      The assumption of a contract is not the approval of a compromise or settlement. The Debtors have the option of assuming and curing or rejecting the SPS Contracts.  The Debtors cannot unilaterally change the terms of the SPS Contracts.

g.      The Debtors may not alter contractual rights of SPS absent compliance with Section 365 and the provisions of Section 1129 of the Bankruptcy Code concerning confirmation of a plan of reorganization, which Debtors have failed to due; or with SPS' consent to the relief requested, which SPS does not agree to provide.

## RESERVATION OF RIGHTS

9.      SPS and the Debtors are parties to contracts which were negotiated at arms-length.  To date, SPS has not filed any motion for the assumption or rejection of the SPS Contracts.  SPS has granted the Debtor a payment concession of 7-days for continued shipments. SPS reserves all of its contract rights as if the bankruptcy cases were not commenced.

10.      SPS does not concede that the Bankruptcy Court has the authority to direct SPS to continue shipment without payment assurance satisfactory to SPS.  SPS is not agreeable to having a cost of administration claim for unpaid postpetition deliveries.  If the Debtors' secured lenders want to grant SPS a carveout and lien priority for any postpetition shipments, SPS might consider a further extension of credit.  Otherwise, SPS is not agreeable to assuming any additional risk of nonpayment when all of the Debtors' assets are subject to priority, postpetition liens.

11.      SPS and the Debtor have been involved in recent litigation concerning the operation of the SPS contracts.  SPS does not waive any of the contractual rights it had recognized in that litigation merely because of the Debtors' demand for additional unsecured extensions of credit by SPS.

## MEMORANDUM OF LAW

12.      The Debtors have presented the statutory authority for the Motion in the Motion.  SPS does not agree with the Debtor's interpretation of the cases cited or the arguments raised.  The language of Section 365 is clear and the cases cited by the Debtors do not support the relief requested in the Motion.  To the contrary, the statutory language and the cited cases support the position of SPS.  Therefore, SPS respectfully requests that the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

**PRAYER**

WHEREFORE, SPS prays that the Motion as to SPS be denied.

CURTIN & HEEFNER, LLP


By:    /s/ Robert Szwajkos
       Robert Szwajkos, Esquire (RS0742)
       Daniel P. Mazo, Esquire (DM5457)
       250 N. Pennsylvania Avenue
       Morrisville, PA 19067
       (215) 736-2521
       (215) 736-3647 (facsimile)

       Attorneys for SPS Technologies, LLC, NSS
       Technologies, Inc. SPS Technologies Waterford
       Company and Greer Stop Nut, Inc.

Dated: November 23, 2005