HONIGMAN MILLER SCHWARTZ AND
COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Donald F. Baty, Jr. (P38087)
E. Todd Sable (P54956)
(313) 465-7000
e-mail:   dbaty@honigman.com
          tsable@honigman.com


**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
                                                                :
    In re                                        :   Chapter 11
                                                                :
**DELPHI CORPORATION et al.,**                                  :   Case No. 05-44481 (RDD)
                                                                :
    Debtors.                                     :   (Jointly Administered)
                                                                :
---------------------------------------------------------------x

**LIMITED OBJECTION TO SUPPLIER AGREEMENT
ASSUMPTION PROCEDURES MOTION BY FOURTEEN SUPPLIERS**

Fujitsu Ten Corp. of America, GKN Sinter Metals, Inc., Saturn Electronics & Engineering, Inc., Saturn Electronics de Monterrey, S.A., de C.V., Kelsey-Hayes Company, TRW Vehicle Safety Systems Inc., TRW Canada Limited, TRW Electronica Ensambles S.A. de C.V., TRW Automotive U.S. LLC, and TRW Automotive Electronics & Components GmbH & Co. KG., Valeo Climate Control Corp., Valeo Electrical Systems, Inc., Wipers Division, Valeo Electrical Systems, Inc., Motors and Actuators Division, and Valeo Switches & Detection Systems, Inc. (collectively, "Suppliers") by their attorneys, Honigman Miller Schwartz and Cohn LLP, file this objection to the Debtor's Motion for an Order Under 11 U.S.C. §§363(b) and 365(a) and Fed. R. Bankr.

P. 9019 Approving Procedures to Assume Certain Amended and Restated Sole Source Supplier Agreements (the "Motion")[1]:

    1.    Suppliers each supply component parts and other goods to Delphi Corporation and its debtor affiliates (collectively, "Debtor").  Because Suppliers are represented by the same law firm, for efficiency purposes Suppliers are filing a joint objection to the Motion. The filing of a joint objection is not intended to suggest that Suppliers have entered into any agreements or have any understandings among themselves regarding this Objection or any other matters, and it is intended that this Objection be treated for all purposes as if a separate, identical Objection had been filed by each individual Supplier.

    2.    Suppliers do not object to the Motion to the extent the Debtor is seeking "pre-approval" of consensual arrangements to assume executory contracts that fall within the scope of the Required Minimum Provisions.  However, Suppliers object to the Motion to the extent it seeks to bind non-debtor contracting parties such as the Suppliers to unfavorable assumption agreements without the affirmative, knowing consent and signed agreement of the applicable Supplier.

    3.    The Motion seeks authority for Debtors to negotiate, or unilaterally impose in certain circumstances, Assumption Agreements with non-debtor contracting parties without further notice, hearing or court order.  The proposed Assumption Agreements violate the Bankruptcy Code to the extent they are imposed on non-consenting suppliers.  For example, under the Assumption Agreements:

---

[1] Capitalized terms not defined in this Objection have the meaning as defined in the Supplier Agreement Assumption Procedures Motion.

2

      a.    Debtor will cure only 75% of its pre-petition economic defaults, to be paid over six calendar quarters, with the cure payments terminating if Debtor later exercises its rights to terminate the assumed contracts "for convenience." These provisions violate the Bankruptcy Code.  Debtor is required to promptly cure or provide adequate assurances of a prompt cure of <u>all</u> defaults as a condition of assumption.  11 U.S.C. §365(b)(1)(A).

      b.    Debtor seeks to force suppliers to <u>extend</u> assumed contacts for two years beyond otherwise applicable expiration dates, and in many cases, with new extended payment terms and other terms not part of existing contracts. These provisions violate the Bankruptcy Code. Debtor's right to assume an executory contract is limited to the terms of the existing contract including stated expiration dates; additional terms may not be imposed without the agreement of the non-debtor party.  <u>In re Cellnet Data Systems, Inc.</u>, 327 F.3d 242, 249 (3rd Cir. 2003).

      c.    Debtor is attempting to require that suppliers (i) waive the right to seek additional adequate assurances of Debtor's performance in the future, and (ii) agree that any claim for a subsequent breach by Debtor of the assumed executory contract would be a pre-petition unsecured claim.  These terms violate the Bankruptcy Code.  A party to an assumed contract cannot be required to give up these rights and post-assumption breaches are entitled to administrative expense priority status.  <u>In re Klein Sleep Products, Inc.</u>, 78 F.3d 18, 27-28 (2d Cir. 1996).

3

      d.     Under Debtors' proposed terms, preference claims arising from pre-petition payments by Debtor under assumed contracts would not automatically be waived as a result of the assumption, but be waived only in Debtor's sole discretion. This provision violates the Bankruptcy Code. As a matter of law, upon assumption of an executory contract, preferential transfer claims cease to exist as the non-debtor party has not received an otherwise avoidable transfer because the subject payments would have been required as part of the cure. <u>In re Kiwi Int'l Air Lines, Inc.</u>, 344 F.3 311 (3d Cir. 2003).

      e.     Finally, Debtor proposes that if the non-debtor party breaches the contract after assumption, in addition to being liable for damages for the breach, the supplier would also be liable, as additional damages, to return the cure payments and lose any waiver of preference claims. These additional damage remedies are not in any existing executory contracts and nothing in the Bankruptcy Code authorizes the Debtor to impose these terms.

4.     It is axiomatic that a supplier can agree, with full notice, to the assumption and amendment of its executory contract(s) on Debtor's proposed terms. Debtor, however, seeks to bind suppliers to these unfavorable and illegal assumption terms <u>merely if the supplier ships goods or other component parts to Debtor and Debtor sends one quarterly cure payment to the supplier</u>, regardless of whether the supplier has actual notice of Debtor's intent to assume and the terms of the Assumption Agreement and affirmatively and expressly agrees to the new terms.

4

5.  The Motion provides in pertinent part:

> 23.  To ensure that the Covered Suppliers that have their Assumable Agreements assumed comply with the Procedures and the Required Minimum Provisions, the Debtors propose that a letter substantially in the form of the letter attached hereto as <u>Exhibit A</u> (each such letter, an "Assumption Agreement") be sent to such Covered Suppliers along with a copy of the order granting this Motion; <u>provided</u>, <u>however</u>, that the Debtors further propose that **such Covered Suppliers be conclusively deemed to consent to and be irrevocably bound by the Procedures and each of the Required Minimum Provisions, notwithstanding its failure to enter into an Assumption Agreement, upon its first shipment of Goods to the Debtors following the Assumption Date for the relevant assumed Assumable Agreement and payment of the first installment of Cure.**  The Debtors propose that the Assumption Agreements include, but not be limited to, the Required Minimum Provisions outlined above. (Emphasis added).

6.  The proposed Order attached to the Motion similarly provides in pertinent part:

> 10.  The Debtors are hereby authorized, but not directed to provide an Assumption Agreement substantially in the form of the letter attached hereto as <u>Exhibit 1</u> to each Covered Supplier whose Assumable Agreement(s) are being assumed pursuant to the terms hereof along with a copy of the order granting this Motion; <u>provided</u>, <u>however</u>, that **a Covered Supplier will be conclusively deemed to consent to and be irrevocably bound by the terms of this Order, notwithstanding its failure to enter into an Assumption Agreement, upon its first shipment of Goods to the Debtors following the Assumption Date for the relevant assumed Assumable Agreement and payment of the first installment of Cure.**  (Emphasis added).

7.  Thus, if the Motion is granted, a Covered Supplier would be bound by an Assumption Agreement solely by shipping goods pursuant to its executory contract with Debtor and Debtor's sending the Supplier a payment of 12.50% of the total cure amount

5

(one-sixth of 75% of the cure amount), regardless of whether Debtor actually served the Supplier with the proposed Assumption Agreement, regardless of whether the proposed notice and Assumption Agreement were received by the appropriate supplier representative, and regardless of whether the supplier actually agreed to the terms of the Assumption Agreement. The Debtors' proposal of implied consent to the Minimum Required Terms is especially troubling in the case of the Suppliers, which are large corporations with complex sales and accounting systems and which, due to their size, could release shipments of component parts and receive a single cure payment – and then be deemed to be bound by the Minimum Required Terms – without the knowledge of appropriate senior management.

8.   The proposed "deemed acceptance" by continued shipment of goods puts suppliers in an untenable position. Any applicable supplier, as a non-debtor contracting party, could potentially be liable in damages to the Debtor if it breached its executory contract(s) by refusing to ship goods pursuant to the contract(s).[2] Thus, to avoid a deemed acceptance of the Debtor's assumption terms, the supplier would be forced to breach the executory contract and/or obtain emergency relief from the automatic stay to terminate the contract. In re Charlie Auto Sales, Inc., 336 F.3d 34, 36 (1st Cir. 2003); In re Computer Communications, Inc., 824 F.2d 725 (9th Cir. 1987).

9.   Moreover, Debtors are impermissibly proposing to bind Suppliers even if they are not properly served with the appropriate notice and assumption terms. Under Fed. R. Bankr. P. 600(6)(a), a proceeding to assume an executory contract is governed

---

[2] Suppliers do not concede that any such damages would arise in the event of non-shipment of component parts or goods under their specific supply contracts with Debtor.

6

by Fed. R. Bankr. P. 9014.  Rule 9014(b) requires that a motion to assume an executory contract be served in the manner provided for service of a summons and complaint under Fed. R. Bankr. P. 7004.  While service by first class mail is allowed under Rule 7004(b), the service must be to the attention of an officer, managing or general agent, or agent authorized by law to accept service.  Rule 7004(b)(3) and (7).  Debtor's procedure does not satisfy this requitement.  Further, Debtors' proposed procedure fails to provide for service on the supplier's counsel of record.  This lack of appropriate notice and due process cannot be permitted.

✼✼✼

Based on the foregoing, Suppliers request that approval of the Motion be denied to the extent it seeks to have a "deemed acceptance" by any Supplier, and for such further relief as is proper and just.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By:  /s/ Donald F. Baty, Jr.
    Donald F. Baty, Jr. (P38087)
    E. Todd Sable (P54956)
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226-3506
(313) 465-7314
(313) 465-7548
e-mail:  dbaty@honigman.com
e-mail:  tsable@honigman.com

Dated:  November 23, 2005
DETROIT.2015564.1