PEPPER HAMILTON LLP
Anne M. Aaronson (AA 1679)
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

and

Henry D. Jaffe (DE Bar No. 2987)
James C. Carignan (DE Bar No. 4230)
Hercules Plaza, Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

*Counsel for SKF USA, Inc.*


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN  DISTRICT OF NEW YORK**


| | | |
|---|---|---|
| IN RE: | : | Chapter 11 |
| | : | Case No. 05-44481 (RDD) |
| DELPHI CORPORATION, et al., | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | **Re:  D.I. No. 1098** |
| _____ | : | |


**OBJECTION OF SKF USA, INC. TO DEBTORS' MOTION FOR AN ORDER UNDER**
**11 U.S.C. §§ 363(B) AND 365(A) AND FED. R. BANKR. P. 9019 APPROVING**
**PROCEDURES TO ASSUME CERTAIN AMENDED AND RESTATED SOLE SOURCE**
**SUPPLIER AGREEMENTS**

       SKF USA, Inc. ("SKF") hereby objects (the "Objection") to the Motion (the

"Motion") of the above-captioned debtors and debtors-in-possession (the "Debtors") under

sections 363(b) and 365(a) of title 11 of the United States Code (as amended, the "Bankruptcy

Code") and Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules")

approving procedures to assume certain amended and restated sole source supplier agreements, and in support hereof, respectfully states as follows:

I.    **Background**

1.    On October 8, 2005 (the "Petition Date") and on October 14, 2005, each of the Debtors filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2.    The Debtors are currently operating their businesses and managing their properties as debtors-in-possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee of examiner has been appointed. The Debtors cases are being jointly administered.

3.    Prior to the Petition Date, SKF and certain of the Debtors executed a contract (the "Contract"), pursuant to which SKF agreed to supply, and Debtors agreed to pay for, certain goods and services. As of the Petition Date, material obligations under the Contract remained unperformed by both SKF and Debtors.

4.    On November 18, 2005, the Debtors filed the Motion. Pursuant to the Motion, the Debtors seek authority, without further Court order, to assume certain executory contracts under Bankruptcy Code section 365, in accordance with the procedures described in the Motion (the "Proposed Procedures") and to modify the terms of such contracts in accordance with the "Required Minimum Procedures" as described in the Motion. (Motion, ¶ 15).

II.    **Objection**

5.    The Proposed Procedures set forth in the Motion cannot be implemented because, if approved, they would unjustifiably deprive non-debtor parties to executory contracts (the "Suppliers") of several of their substantive and procedural rights under the Bankruptcy Code, Bankruptcy Rules, and applicable non-bankruptcy law. Specifically, the Proposed Procedures are objectionable because they would permit Debtors to cherry-pick favorable terms of contracts in violation of the well-settled principle that Debtors must assume or reject

-2-

executory contracts *cum onere*. Secondly, approval of the Proposed Procedures would permit Debtors to assume contracts without satisfying their concomitant obligations imposed by Bankruptcy Code section 365, including the Debtors' obligations to cure all defaults under such contracts and to provide adequate assurance of the Debtors' future performance under such contracts. Lastly, approval of the Proposed Procedures would run afoul of interested parties' rights to receive notice of a proposed assumption.

III. **The Proposed Procedures would enable the Debtors to assume only portions of executory contracts rather than the entire contracts.**

      6.    The Proposed Procedures cannot be approved because they would permit the Debtors to assume favorable portions of executory contracts while excising those terms that the Debtors have deemed burdensome. It is well-settled that, where a debtor-in-possession elects to assume an executory contract under Bankruptcy Code section 365, it assumes the contract *cum onere*; that is, the Debtor may only assume the entire contract, with all of the benefits, burdens and obligations attendant thereto. N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 531-32 (1984) (holding that, "[s]hould the debtor-in-possession elect to assume the executory contract, however, it assumes the contract *cum onere* . . . and the expenses and liabilities incurred may be treated as administrative expenses, which are afforded the highest priority on the debtor's estate"); In re Klein Sleep Products, Inc., 78 F.3d 18, 24 (2d Cir. 1996) (same); AGV Prod., Inc. v. Metro-Goldwyn-Mayer, Inc., 115 F. Supp. 2d 378, 391 (S.D.N.Y. 2000) (holding that, "[i]f an executory contract is assumed, it is said to be assumed *cum onere*, with all of its benefits and burdens"); In re Leslie Fay Cos., Inc., 166 B.R. 802, 808 (S.D.N.Y. 1994) (holding that, "[a]n executory contract cannot be assumed in part and rejected in part"); In re Atlantic Computer Sys., Inc., 173 B.R. 844, 849 (S.D.N.Y. 1994) (holding that debtor may not "cherry pick" pieces of contract it wishes to assume or reject); In re Texaco Inc., 254 B.R. 536, 551 (Bankr. S.D.N.Y.

2000) (holding that, "[t]he law is clear that a debtor who assumes a lease or other executory contract assumes the contract *cum onere*, without any diminution in its obligations or impairment of the rights . . . in the present or the future"); In re Kopel, 232 B.R. 57, 63-63 (Bankr. E.D.N.Y. 1999) (holding that debtor cannot retain favorable terms of executory contracts and excise the burdensome provisions).

7.    Pursuant to the Motion, Debtors seek authority, without further Court Order, not only to assume Suppliers' contracts at a time and manner of their choosing, but also, through assumption, to encumber the Suppliers with additional burdens over and beyond the present obligations in such contracts.   Specifically, under the Proposed Procedures, as a condition to assumption of contracts, the Debtors would require Suppliers to enter into an 'assumption agreement' pursuant to which Suppliers would be deemed to agree "to comply with all of the Required Minimum Provisions".  (Motion, ¶ 21(b)).

8.    The effect of these 'Required Minimum Provisions' would be not only to broaden Suppliers' obligations under existing executory contracts, but also to limit Suppliers' rights under such contracts, the Bankruptcy Code and applicable state law.  Among other things, the length of the contracts would be extended for two years past the contracts' expiration date. (Motion, ¶ 22(a)).  Further, the unilaterally-composed "Delphi's General Terms and Conditions" would be incorporated into such contracts and enforceable by Debtors against Suppliers. (Motion, ¶ 22(c)).  Amazingly, the Proposed Procedures would also permit the Debtors to unilaterally determine the *payment* terms under assumed executory contracts.  (Motion, ¶ 22(d)) ("[t]he Covered Supplier would be required to supply the Debtors with the goods provided under the relevant Assumable Agreement during the term of the Extension on MNS-2 payment terms . . ."). Finally, under the Required Minimum Provisions, Suppliers would be liable for "any and all consequential damages" arising from a breach, not only of their particular executory contract, but

-4-

from a breach of the "assumption agreement" the Debtors would require to be executed in connection with assumption, and which provisions the Proposed Procedures would deem to have been accepted by Suppliers. (Motion, ¶ 22(h)).

9.      Thus, approval of the Proposed Procedures would impermissibly allow the Debtors to unilaterally assume executory contracts, but on modified terms that the Debtors deem more advantageous than those terms to which the Suppliers have actually agreed. The Debtors must not be permitted to utilize the Proposed Procedures to impose their view of fair terms upon the Suppliers, while at the same time disposing of or altering those provisions that the Debtors think inconvenient.

10.      Bankruptcy Code section 365 accommodates debtors by permitting them to assume executory contracts (and thereby maintain the enforceability of their rights thereunder) even where debtors have defaulted under such contracts and even where non-debtor parties are entitled, under state law, to terminate such contracts. Though the Bankruptcy Code blesses debtors with this benefit, it does not allow debtors to alter the terms of such contracts. Klein Sleep Products, 78 F.3d at 24. Because the Proposed Procedures would permit Debtors to violate this well-settled and binding principle, the Motion must be denied.

IV.      **The Proposed Procedures would permit Debtors to assume executory contracts without satisfying Bankruptcy Code section 365's requirements.**

11.      The Motion must be denied because the Proposed Procedures would permit Debtors to assume executory contracts without satisfying obligations requisite for assumption under Bankruptcy Code section 365(b)(1). Specifically, among other things, Debtors seek authority to limit (or eliminate) their obligations to: (i) cure all Debtors' defaults under such contracts, which cure must be paid with administrative expense priority; and (ii) provide

-5-

adequate assurance that Debtors will perform its going-forward obligations under such contracts. 11 U.S.C. § 365(b)(1).

12.     Bankruptcy Code section 365(b)(1)(A) provides that, where a debtor elects to assume an executory contract, the debtor must cure all of its defaults under such contract. 11 U.S.C. § 365(b)(1)(A). Where such defaults include pecuniary obligations of the debtor, the Bankruptcy Code requires the debtor to pay such obligations with administrative expense priority pursuant to Bankruptcy Code section 507(b)(1). N.L.R.B. v. Bildisco and Bildisco, 465 U.S. 513, 531-32 (1984); In re Bergt, 241 B.R. 17 (Bankr. D. Alaska 1999) (holding that if executory contract is assumed, the obligations of debtor become administrative expense of estate, as opposed to mere unsecured claim); In re Crystal Apparel, Inc., 220 B.R. 816 (Bankr. S.D.N.Y. 1998) (holding that assumed executory contract by debtor results in contractual obligations being treated as if it had been made by DIP post-petition, and all claims under contract, including those for breach, are administrative expenses); In re Leon's Casuals Co., Inc., 122 B.R. 768 (Bankr. S.D. Ala. 1990) (same); In re Mushroom Transp. Co., Inc., 78 B.R. 754 (Bankr. E.D. Pa. 1987) (holding that failure to cure pre-petition default in executory contract would represent post-petition breach of post-petition agreement leading to administrative claim).

13.     Through the Proposed Procedures, the Debtors seek to vitiate this important safeguard for non-debtor parties to executory contracts. First, the Debtors propose that their cure obligations would be paid only as general, unsecured claims, and the Debtors would not be required to pay such cure obligations with administrative priority. (Motion, ¶ 22(b)). Second, the Proposed Procedures request that the Debtors be required to satisfy only 75% of outstanding pre-petition cure obligations, rather than the 100% of such obligations as required by the Bankruptcy Code, and then only as a general unsecured claim. (Motion, ¶ 22(f)). Third, the Proposed Procedures provide that, where the Debtor elects to terminate an assumed agreement,

-6-

any cure obligations due subsequent to the termination date would not be paid at all. (Motion, ¶ 22(g)). The result would be that the Debtors would be free to assume an executory agreement with the knowledge that they could later about-face and terminate the agreement (despite the term under the agreement), and avoid its cure obligations.

14.    Fourth, the Debtors seek, through the Proposed Procedures, to avoid the requirement that a Debtor cure its defaults under assumed agreements "promptly". See Moody v. Amoco Oil Co., 734 F.2d 1200 (7th Cir. 1984) (holding that debtors may cure default at any time prior to assumption of executory contract); General Motors Acceptance Corp. v. Lawrence, 11 B.R. 44 (Bankr. N.D. Ga. 1981) (same); In re Valley View Shopping Center, L.P., 260 B.R. 10 (Bankr. D. Kan. 2001) (same); In re Bon Ton Restaurant and Pastry Shop, Inc., 53 B.R. 789 (Bankr. N.D. Ill. 1985) (holding that Court must be reasonably satisfied that if debtor is not going to cure default immediately, it will be able to do so promptly). Specifically, the Debtors seek authority to pay cure obligations (to be diminished in priority and amount) over a year and a half. (Motion, ¶ 22(b)). Thus, these provisions, among others, of the Proposed Procedures would plainly violate the cure requirements imposed by Bankruptcy Code section 365(b)(1).

15.    The Debtors seek, via the Proposed Procedures, not only to sidestep their cure obligations, but also to avoid the obligation to provide "adequate assurance of future performance under such contract" 11 U.S.C. § 365(b)(1)(C). It is well-settled that a prerequisite to assumption of an executory contract is that the debtor must provide adequate assurances to the non-debtor contract party that the debtor can and will meet its obligations under such contract going forward. See In re Texas Health E'prises Inc., 72 Fed. Appx. 122 (5th Cir. 2003); In re Jamesway Corp., 201 B.R. 73 (Bankr. S.D.N.Y. 1996) (holding that debtor must provide adequate assurance of future performance even where there has been no default under contract); Manhattan King David Restaurant Inc. v. Levine, 154 B.R. 423 (S.D.N.Y. 1993); In re Offices

-7-

and Services of White Plains Plaza, Inc., 56 B.R. 607 (Bankr. S.D.N.Y. 1996); In re Westview

74th Street Drug Corp., 59 B.R. 747 (Bankr. S.D.N.Y. 1986).

16.     The Debtors seek to ameliorate their 'adequate assurance' obligations in

the Proposed Procedures, pursuant to which, "[t]he Covered Supplier would be adequately

assured of future performance for the term of the Extension and waive any right to seek further

adequate assurance of future performance, whether pursuant to sections 365(b)(1)(C) of the

Bankruptcy Code or otherwise". Thus, the Debtors seek relief not only from their Bankruptcy

Code section 365(b)(1)(C) obligations, but also from any requirements of applicable state law

that entitle non-breaching parties to contracts to request adequate assurances upon a default or

repudiation of a contract.  Because the Proposed Procedures violate the Bankruptcy Code's

requirements pertaining to cure and adequate assurance, the Motion must be denied.

V.     **The Proposed Procedures would permit the Debtors to deprive interested parties of
       notice and the opportunity to object to proposed assumption of contracts.**

17.     The Proposed Procedures are also objectionable because, if approved, they

would permit the Debtors to circumvent the Constitutional requirement that, where the Debtors

seek to take actions that could detriment or impact the property rights other parties, such parties

must be provided with:   (i) adequate notice of the Debtors' requested relief; and (ii) an

opportunity to object to such request.   It is well-settled that the Fifth and Fourteenth

Amendments to the United States Constitution require that deprivation of property by

adjudication must be preceded by notice and an opportunity to object at a hearing "appropriate to

the nature of the case"  Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313

(1950).  In the bankruptcy context, the Constitution requires notice that is "reasonably calculated,

under all the circumstances, to apprise interested parties of the pendency of the action and afford

them an opportunity to present their objections." Id. at 314.  That is, the notice must be such that

WL: #179564 v3 (3%aj w03!.DOC)

it would "reasonably inform the interested parties that the matter is pending and would reasonably allow the parties to choose for [themselves] whether to appear or default, acquiesce or contest." In re The Grand Union Co., 204 B.R. 864, 871 (Bankr. D. Del. 1997). Thus, before the executory contracts referred to in the Motion can be finally assumed by the Debtors, the non-debtor parties to such contracts, as well as general stakeholders in these cases, must be afforded an opportunity to protest such assumption. Brancato v. City of New York, 244 F. Supp. 2d 239 (S.D.N.Y. 2003).

18.    The Motion seeks to avoid this notice requirement by seeking approval of procedures that would permit the Debtors to assume individual executory contracts without further approval of the Court. (Motion, 21(b)) (". . . the Debtors would be authorized to assume the relevant Assumable Agreement or Agreements without further notice or order of this Court"). Even where a hypothetical non-debtor party consented to assumption of an agreement (with the onerous, additional terms placed thereon via the Proposed Procedures) the lack of notice to be provided to other parties makes the Proposed Procedures unsustainable and violative of Bankruptcy Rules 9013 and 9014 (". . . relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded . . ."). That is, all parties with a financial stake in the outcome of the Debtors' bankruptcy proceedings should be entitled to challenge the Debtors' business judgment in assuming those executory contracts such parties determine to be improvident bargains. In the absence of such notice, the Debtors could effectively reduce the amount of an ultimate distribution to parties without such parties ever having an opportunity to be heard on a proposed assumption.

19.    Furthermore, though this section of the Motion is open to multiple interpretations, the Proposed Procedures appear to suggest that the Debtors will be able to assume executory contracts without further order of the Court, even where the relevant non-

-9-

debtor parties to such contracts refuse to consent to assumption, and/or to the Debtors' proposed 'Required Minimum Provisions'.  (Motion, ¶ 21(c)) (" . . . should a Covered Supplier not consent to entry into an Assumption Agreement or refuse to consent to any Required Minimum Provision . . . the Debtors shall not be authorized to assume such Supplier's Assumable Agreement or Agreements without prior approval of the Creditors' Committee . . .").  Thus, the Motion is unclear as to whether approval of the Proposed Procedures would enable the Debtors to impose the 'Required Minimum Provisions,' even upon a Supplier that refuses such terms, without giving such Supplier (and other parties-in-interest in these cases) an opportunity to object.  (See, e.g. Motion, ¶ 23) (" . . . the Debtors further propose that such Covered Suppliers be conclusively deemed to consent to and be irrevocably bound by the Procedures and each of the Required Minimum Provisions, notwithstanding its failure to enter into an Assumption Agreement . . .").  Indeed, it appears that the Suppliers will not even be served with the instant Motion until after an Order is entered approving the Proposed Procedures.  (Motion, ¶ 52).

20.    The Debtors' attempt to bind (or provide themselves the purported ability to bind) Suppliers to onerous obligations in addition to those found in the relevant contracts, without providing such Suppliers a reasonable opportunity to object to assumption on such terms is outrageous.  Because the Proposed Procedures would violate the Suppliers' Constitutional notice rights, the Motion cannot be approved.

VI.    **Request for Waiver of Memorandum of Law**

21.    Because the legal points and authorities upon which this Objection is based are incorporated herein, SKF respectfully requests that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WL: #179564 v3 (3%@jw03!.DOC)

WHEREFORE, SKF USA, Inc. respectfully requests that the Motion be denied, and that the Court grant such other and further relief in favor of SKF USA, Inc. as is just and proper.

Dated:  November 23, 2005

PEPPER HAMILTON LLP


s/ Anne M. Aaronson
Anne M. Aaronson (AA 1679)
3000 Two Logan Square
18th and Arch Streets
Philadelphia, PA  19103-2799
(215) 981-4000

and

Henry D. Jaffe (DE Bar No. 2987)
James C. Carignan (DE Bar No. 4230)
Hercules Plaza
Suite 5100
1313 Market Street
P.O. Box 1709
Wilmington, DE 19899-1709
(302) 777-6500

*Counsel for SKF USA, Inc.*

-11-

## CERTIFICATE OF SERVICE

I, James C. Carignan, hereby certify that on November 23, 2005, I caused to be served the Objection Of SKF USA, Inc. To Debtors' Motion For An Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements, upon the following entities via express mail for Friday, November 25, 2005 delivery.

The Honorable Robert D. Drain
United States Bankruptcy Judge
United States Bankruptcy Court for the Southern District of New York
Chambers of the Honorable Robert D. Drain
One Bowling Green
New York, NY 10004

Delphi Corporation
Attn: General Counsel
5725 Delphi Drive
Troy, MI 48098

John Wm Butler, Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive, Suite 2100
Chicago, IL 60606

Kenneth S. Zimar, Esq.
Simpson Thacher & Bartlett LLP
425 Lexington Ave.
New York, NY 10017

Marlane Melican, Esq.
Davis Polk & Wardell
450 Lexington Ave.
New York, NY 10017

Mark A. Broude, Esq.
Latham & Watkins
885 Third Ave.
New York, NY 10022

Alicia M. Leonard, Esq.
Office of the United States Trustee
33 Whitehall Street, Suite 2100
New York, NY 10004

WL #179605 v1 (3%a1.101!.DOC)

Dated:  November 23, 2005
Wilmington, DE

s/ James C. Carignan
James C. Carignan (Del Bar No. 4230)