Timothy A. Fusco (admitted pro hac vice)
MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.
150 West Jefferson, Suite 2500
Detroit, Michigan 48226
(313) 496-8435

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | Chapter 11 |
| Delphi Corporation, et al | Case No. 05-44481 |
| Debtors. | Hon. Robert D. Drain |

**OBJECTION OF NILES, USA., INC. AND WINTECH, INC. TO DEBTOR'S SUPPLIER ASSUMPTION PROCEDURES MOTION**

Niles, USA, Inc. and Wintech, Inc.. (collectively "Niles"), by their attorneys Miller, Canfield, Paddock & Stone, P.L.C., object to the Debtor's Supplier Assumption Procedures Motion as follows:

1.  Niles is party to a number of Purchase Orders with the Debtor pursuant to which Niles provides various component parts, consisting primarily of switch assemblies, to the Debtor. The primary Purchase Order, No. SAG90I3244 (this purchase order and the other executory purchase orders are collectively the "Purchase Order"), is dated December 17, 1997 and expires by its terms on January 10, 2006. As of the commencement of the Debtors' chapter 11 cases, the Debtors owed Niles approximately $3,800,000 under this executory Purchase Order.

2.  Niles has continued to supply component parts to the Debtor pursuant to the Purchase Order despite the failure of the Debtor to comply with the payment terms of this

contract including various postpetition failures of the Debtors to make timely payments for postpetition parts.

      3.    Niles has not agreed to any extension of the expiration date of the Purchase Order or modification of any of the other terms of the Purchase Order as it has been amended and modified from time to time.  Niles is willing to engage in negotiations with the Debtor with respect to the terms and conditions under which Niles will continue to provide component parts to the Debtors.

      4.    Debtors, in their Motion For An Order Under 11 U.S.C. §§363(b)and 365(a) and Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended and Restated Sole Supplier Agreements (the "Motion") seek approval of this Court for the Debtors to enter into assumptions of various supplier agreements without the need for further motions or other procedures.  Niles believes its Purchase Order is a supplier agreement of the type that would be subject to the provisions of the Motion.

      5.    Niles objects to the Motion to the extent it seeks to bind Niles to an extension of, or modification to, the Purchase Order without its express written consent to such terms.  Niles does not object to assumption of its Purchase Order to the extent such assumption does not modify the terms of the Purchase Order or bind Niles to any terms to which it has not expressly consented.

      6.    Section 365(a) of the Bankruptcy Code permits a Debtor to assume, with court approval, executory contracts subject to compliance with the conditions for assumption set forth in section 365(b).  These conditions include the prompt cure, or adequate assurance of prompt cure, of all defaults under the contract to be assumed.  In the case of Niles this would include, but not be limited to, payment of the prepetition obligation under the Purchase Order.

      7.    In addition, assumption of an executory contract such as the Purchase Order only provides the Debtor with such rights (and obligations) as exist under the contract at the time of assumption. Following assumption the contract becomes an obligation of the Debtor-

in-Possession and any claims arising under the assumed contract have priority as an administrative expense claim. Assuming the Debtors were to comply with the provisions of Section 365(b)(1)(A), (B) and (C) Niles would have no objection such assumption of the Purchase Order.

8. The Debtors, however, seek to compel suppliers such as Niles, as a condition to assumption, to terms and conditions that are not authorized by the Bankruptcy Code, have been agreed to by Niles and are universally favorable to the Debtors and highly unfavorable to Niles. These include:

A. Extension of the term of the Purchase Order for two (2) additional years with no modification of the payment and other terms permitted except, presumably, such modifications as Delphi may in its discretion find acceptable. With rising prices of labor and component parts, extension of the Purchase Order on the same price terms alone is economically impossible for Niles. The terms of any contract extension must be negotiated on an arms length basis by Niles and the Debtors if there is to be any extension beyond January 10, 2006.

B. The cure amount is only 75% of the prepetition obligation, contrary to the specific language of Section 365((b)(1)(A)—there is not authority for assumption at less than the entire cure amount and the Debtors have cited none in the Motion. Further, the so-called cure is to be paid, if at all, over 18 months, hardly prompt. To make matters even worse, there is absolutely no assurance that this 75% will even be paid. If the Debtors elects to subsequently terminate the assumed executory contract, any damages or unpaid cure amounts would be classified as unsecured claims. It is very clear that all claims arising from an assumed executory contract must be afforded priority as administrative expense claims under sections 503(b) and 507(a). See e.g. In re Monica Scott, Inc., 123 B.R. 990 (Bankr D. Minn 1991)(". .[it is] Congressional intent that post-assumption rejection by a debtor …results in administrative expense entitlement …"); In re Hall, 202 B.R. 929 (Bankr W.D. Tenn 1996).

C. The Debtors may, in their discretion, grant a waiver of a preference claim with respect to prepetition amounts paid to a supplier including any cure amounts. This is a complete abrogation of existing law that rejects the concept that a payment made pursuant to

05-44481-rdd    Doc 1215    Filed 11/23/05    Entered 11/23/05 16:13:37    Main Document
Pg 4 of 6

cure of a default can be a preference.  In re The IT Group, Inc., 331 B.R. 597 (D. Del 2005) and cases cited therein.

   9. In short, the Debtor cannot assume the Purchase Order, let alone modify its terms, under the procedures set forth in the Motion.  The Debtors may seek to assume the existing Purchase Order, without modification, upon compliance with Section 365(b), or it may seek to obtain the consent of suppliers such as Niles to the terms contained in the Assumption Agreement described in the Motion.  It cannot impose the latter as a condition of the former.

   10. To make matters even worse, the Debtors, obviously realizing that many of the suppliers (at least those that receive actual notice of the Motion) may elect to not subject themselves to the terms of the Assumption Agreement, create a wholly unknown and unauthorized provision in paragraph 23 of the Motion to bind unwilling suppliers to this Agreement.  Under this provision, a supplier that is unwilling to enter into the Assumption Agreement (which contains all of the offensive terms described above), will nonetheless be "deemed" to have consented to these terms if it ships even one part after the date selected for Assumption of the supplier's executory contract.  There is simply no authority, either in or out of bankruptcy, to bind an unwilling party to a contract by "deeming" an act that would not in under any circumstances constitute consent as consent.

   11. It is not unreasonable to assume that the Debtors will select an Assumption date that is prior to the expiration of an existing supply agreement, in the case of Niles a date prior to January 10, 2006.  If Niles has not agreed to the terms of the Assumption Agreement (and once again it has not), it will face the terrible dilemma of either breaching its existing contract (and subjecting itself to the huge damages outlined by the Debtors in the Motion) or having a new contract imposed upon it without its consent.  Such a result is not authorized by any provision of the Bankruptcy Code or applicable non-bankruptcy law.  Moreover it violated fundamental fairness, due process and the United States Constitution.

   12. The problem the Debtors fact with expiring sole source supply contracts is not insignificant and the failure to resolve the issue could have a material effect upon the outcome of this Chapter 11 case.  The answer is to have the Debtor do what they would be compelled to do outside of bankruptcy—sit down and negotiate terms for a new contract or an

extension of the existing contract that are acceptable to the non-debtor party. The draconian remedy of imposing a contract upon unwilling and perhaps unwitting parties is a dangerous precedent that is not only is inconsistent with existing law but offensive to fundamental principles of equity. If the Debtors cannot renegotiate their contracts they should face the same consequences that would arise outside of bankruptcy. Alternatively the Debtors could seek a change in law from Congress.

13. Finally, as other objecting parties have noted, the Motion does not establish any formal procedure by which parties such as Niles will be notified of the Debtors' decision to "Assume" their agreements. Notice of any such decision, along with the date of the Assumption, should be sent to counsel for the party, the managing officer of the party and the persons with whom the Debtors have traditionally conducted business.

14. In view of the discussion of the legal issues and citations to authority contained in this response, Niles respectfully requests that the filing of a separate memorandum of law under LBR 9013-1(b) be waived or deemed satisfied.

## CONCLUSION

For the reasons set forth in this Objection Niles prays that the Motion be denied o, alternatively, that the Debtors only be authorized to assume the Purchase Order of Niles upon its existing terms and following compliance with the provisions of Section 365(b) of the Bankruptcy Code.

Respectfully submitted,

MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

By: \s\ Timothy A. Fusco
      Timothy A. Fusco (P13768)
(Admitted Pro Hoc Vice)
Attorneys for Niles, USA, Inc. and Wintech, Inc.
150 West Jefferson, Suite 2500
Detroit, MI 48226
(313) 963-8435
fusco@millercanfield.com

Dated: November 23, 2005

DELIB:2681261.1\129141-00001