Hearing Date and Time: November 29, 2005 at 10:00 a.m.
Objection Deadline: November 25, 2005 at 4:00 p.m.

Seyfarth Shaw LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02110
(617) 946-4800
William J. Hanlon, Esq. (WH 8128)

*Attorneys for le Belier/LBQ Foundry S.A. de C.V.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| In re:<br><br>DELPHI CORPORATION<br><br>Debtors. | Chapter 11<br>Case No. 05-44481 (RDD) |
|---|---|

**LE BELIER/LBQ FOUNDRY S.A. DE C.V'S OBJECTION TO MOTION FOR AN ORDER UNDER 11 U.S.C. § 363(b) AND 365(a) AND FED. R. BANKR. P. 9019 APPROVING PROCEDURES TO ASSUME CERTAIN AMENDED AND RESTATED SOLE SOURCE SUPPLIER AGREEMENTS**

TO: HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY CODE

le Belier/LBQ Foundry S.A. de C.V. ("le Belier"), by and through its undersigned counsel, and hereby objects to the *Motion for an Order Under 11 U.S.C. §§363(b) and 365(a) and Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended and Restated Sole Source Supplier Agreement* (the "Motion") filed by the Debtors in the above-captioned bankruptcy proceeding on or about November 18, 2005. As grounds for its Objection, le Belier respectfully represents as follows:

**Background**

1. These cases were commenced by the Debtors herein (the "Debtors") under Chapter 11 of title 11, United States Code (the "Bankruptcy Code") on October 8, 2005 and October 14, 2005. The Debtors remain in possession. No trustee or examiner has been appointed in these matters.

2. le Belier is the recipient of numerous Purchase Orders from one or more of the Debtors, and is party with one or more of the Debtors to several "Requirement Contracts". le Belier is supplying goods to the Debtors on a postpetition basis. le Belier is due in excess of $1,000,000 for prepetition goods.

3. le Belier is generally supportive of the Debtors' efforts to continue to assure the supply of critical parts for their operations, and does not oppose the Debtors having the authority to enter into voluntary agreements with their suppliers along the lines proposed in the Motion. The Objection of le Belier to this Motion relates only to the potential involuntary imposition by the Debtors on suppliers of the relief sought.

**Limited Objection to Motion**

4. In certain parts of the Motion, the Debtors seem to be seeking authority to impose the "assumptions with modification" described in the Motion on suppliers on an involuntary basis. To the extent that is part of the relief requested, le Belier opposes that aspect of the Motion and believes it to be patently impermissible under Section 365 of the Bankruptcy Code and applicable case law.[1]

[1] Certain other parts of the Motion suggest that may not be the intention of the Debtors. For example, the Debtors' do seek authority to enter into agreements that are less favorable that the Required Minimum Provisions, subject to Creditors' Committee Objection (¶21(c)). This would seem to be unnecessary if the Debtors could impose those provisions on suppliers involuntarily.

5. In the Motion, the Debtors seek authority to "assume" purchase orders and other agreements (collectively, "Agreements") with certain of their suppliers, subject to certain required "modifications".

6. Although the Motion is styled as a motion to authorize the Debtors to "assume" the relevant Agreements, the Motion stops short in numerous ways of providing the nondebtor party to the associated Agreement with the benefits that would normally flow from assumption under Section 365 of the Bankruptcy Code. More particularly, the Debtors do not propose to fully and promptly cure all outstanding monetary defaults under the "assumed" Agreements (as required by Section 365(b) of the Bankruptcy Code), nor do their procedures permit the nondebtor party to the "assumed" Agreements to assert an administrative claim for the full amount of its damages should the "assumed" Agreements be later rejected or otherwise breached by the Debtors.

7. Instead, the Motion proposes to permit the Debtors to pay the nondebtor party seventy-five percent (75%) of its prepetition claim over six (6) quarters, with any cure that is unpaid at the time the Agreement is subsequently rejected by the Debtors constituting only a prepetition unsecured claim. Further, damages incurred by the third party arising from any subsequent rejection or other breach of the "assumed" Agreement would purportedly be limited to the "termination for convenience" damages described in the Debtors' General Terms and Conditions, which themselves may or may not otherwise be a part of the underlying Agreement. Finally, the absolute defense to preference claims under Section 547 of the Bankruptcy Code that would otherwise arise from the true assumption of the Agreement would apparently instead be the subject of negotiation with

the Debtors. This form of assumption, on an involuntary basis, is nowhere permitted in Section 365 of the Bankruptcy Code.

8. The Motion also requires numerous modifications to the Agreements being "assumed", including, without limitation, a two (2) year extension of the Agreement at the current price,[2] the required extension of credit terms without the ability at any point to seek adequate assurance, the incorporation of Delphi's General Terms and Conditions (even if those are not part of the associated Agreement), and an express assumption of liability for consequential damages. Although the nondebtor party is free to agree to modifications to its Agreements in connection with an assumption, absent actual agreement, it is black letter law that a contract must be assumed *cum onere*.

9. The Motion in several places suggests that the Debtors can impose this modified form of assumption, including the modified terms, on the nondebtor party whether or not the nondebtor party agrees to them. More particularly, on page 14, it states that a nondebtor party can be bound *simply by shipping* goods after its receipt of a proposed assumption agreement. This sort of deemed agreement should not be authorized or sanctioned, especially given that the nondebtor party may in certain circumstances be contractually bound to make such deliveries.

10. Because of the similarity of the objections set forth herein and therein, le Belier hereby incorporates by reference the arguments and citations set forth in the objections filed by Quasar Industries, Inc. [Docket No. 1195] and SKF USA, Inc. [Docket No. 1207], as if fully set forth herein.

---

[2] This is not explicitly stated in the required modifications, but the lower costs associated therewith are cited by the Debtors as a benefit to be obtained from the program (¶32).

**Notice**

11. Notice of this limited objection has been provided in accordance with the terms of the Notice of Motion for an Order Under 11 U.S.C. Sections 363(b) and 365(a) and Fed.R.Bankr.P.9019 Approving Procedures to Assume Certain Amended and Restated Sole Source Supplier Agreements.

**Memorandum of Law**

12. In light of the limited objection set forth above, Fujikura respectfully requests that it not be required to serve and file a separate memorandum of law under Local Rule 9013-1(b).

WHEREFORE, le Belier respectfully make its objection to the Motion, and requests that the Court (i) deny the relief requested to the extent the Debtors are requesting authority to require suppliers of the Debtors, including le Belier, to have any Agreements modified and partially assumed in the fashion outlined in the Motion without the actual and voluntary written agreement of those parties to such purported assumption and modification; (ii) provide for an express opt-out procedure for suppliers who do not wish to be bound without actual and voluntary written agreement; and (iii) provide le Belier with such other and further relief as is just and proper.

LE BELIER/LBQ FOUNDRY S.A. DE C.V.

By its attorneys,

/s/ William J. Hanlon

William J. Hanlon (WH 8128)
SEYFARTH SHAW LLP
World Trade Center East
Two Seaport Lane, Suite 300
Boston, MA 02210
Telephone: 617-946-4800
Telecopier: 617-946-4801
whanlon@seyfarth.com

DATED: November 23, 2005