Raymond J. Urbanik, Esq.
New York State Bar No. RU 1842
Joseph J. Wielebinski, Esq.
*Pro Hac Vice Pending*
Davor Rukavina, Esq.
*Pro Hac Vice Pending*
MUNSCH HARDT KOPF & HARR, P.C.
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

ATTORNEYS FOR TEXAS
INSTRUMENTS INCORPORATED

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------x

| | |
|---|---|
| In re: : | Chapter 11 Case No. |
| DELPHI CORPORATION, et. al., : | 05-44481 (RDD) |
| Debtors. : | (Jointly Administered) |

-----------------------------------------------------------x

## OBJECTION OF TEXAS INSTRUMENTS INCORPORATED TO DEBTORS' MOTION FOR AN ORDER UNDER 11 U.S.C. §§ 363(b) AND 365 (a) AND FED. R. BANKR. P. 9019 APPROVING PROCEDURES TO ASSUME CERTAIN ASSUMED AND RESTATED SOLE SOURCE SUPPLIER AGREEMENTS

COMES NOW Texas Instruments Incorporated ("TI"), a creditor and party-in-interest herein, and files this its Objection (the "Objection") to the *Motion for an Order Under 11 U.S.C. §§ 363(b) and 365 (a) And Fed. R. Bankr. P. 9019 Approving Procedures to Assume Certain Assumed and Restated Sole Source Supplier Agreements* (the "Motion"), filed by Delphi Corporation and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") in the above numbered and styled jointly administered bankruptcy case, respectfully stating as follows.

## I. INTRODUCTION

1. By the Motion, the Debtors request the Court's approval of certain procedures (collectively, the "Procedures"), which severely undercut the protections inherent in a typical contract assumption pursuant to section 365 and dispense with the requirements of service and notice required under the Federal Rules of Bankruptcy Procedure, related to their assumption of certain allegedly executory contracts defined in the Motion as "Assumable Agreements" (the "Subject Contracts"), conditioned on the counterparty's execution of an Assumption Agreement (as defined in the Motion) or the "deemed acceptance" of such provisions under certain questionable circumstances.

2. As part of an assumption of an Assumable Agreement, the Debtors request authority to, among other things: (i) extend the natural expiration dates of certain executory contracts for a period of two years, irrespective of the contract's terms; (ii) pay only seventy-five percent (75%) of the required cure claims, unless the Debtor elects to terminate the contract in the interim, in which event cure claims will not be paid; (iii) pay such amounts over one and one-half years; (iv) fix prices under the applicable contracts at their current rates; (v) require waivers of reclamation claims and the right to seek additional adequate assurance; (vi) limit or cap damages; and (v) deem counterparties to have accepted these conditions if they inadvertently ship to, or accept a "cure" payment from, the Debtors.

3. TI files this Objection to ensure that entry into any Assumption Agreement under the Procedures will, in fact, be voluntary and subject to appropriate notice and disclosure, and that TI will not inadvertently be deemed to have consented thereto. Additionally, TI files this Objection to ensure that, if it explicitly and voluntarily agrees to an Assumption Agreement, the benefits to TI will not be illusory.

## II.    OBJECTIONS

### A.    POTENTIAL FOR INADVERTENT "DEEMED ACCEPTANCE" IS UNACCEPTABLE

4.    Under the Procedures, a supplier would be "conclusively deemed to consent to and be irrevocably bound by the Procedures and each of the Required Minimum Provisions, notwithstanding its failure to enter into an Assumption Agreement, upon its first shipment of Goods to the Debtors following the Assumption Date for the relevant assumed Assumable Agreement and payment of the first installment of Cure." Motion at ¶23. The critical date for this deemed acceptance is the "Assumption Date." "Assumption Date" is defined in the Motion as simply the date that a Subject Contract is assumed which, presumably, is a date that the Debtors unilaterally select.

5.    The Procedures do not require the Debtors to give any notice to TI that any particular payment might be a "cure" payment and that the acceptance thereof would bind TI to an onerous Assumption Agreement without TI's consent. A low level employee, processing one payment among thousands of others in any given day, may therefore be able to bind TI to an otherwise unacceptable Assumption Agreement for doing nothing other than depositing a routine check from an entity with which TI does business. Given TI's size, number of employees, and breadth of global operations, it is impossible to establish effective internal controls to prevent this situation. Indeed, under the Procedures, the Debtors could simply wire funds into TI's account and thereby unilaterally trigger TI's deemed acceptance.

6.    TI requests that the Court refuse to approve the deemed acceptance portion of the Procedures as inherently too risky and unfair to suppliers, and because of the potentially irreversible problems it could create. Alternatively, if the Court approves the "deemed accepted" procedures, TI requests that the Debtors be required to send "cure" payments, together with a

---
OBJECTION OF TEXAS INSTRUMENTS INCORPORATED TO DEBTORS' MOTION FOR AN ORDER UNDER 11 U.S.C. §§ 363(b) AND 365 (a) AND FED. R. BANKR. P. 9019 APPROVING PROCEDURES TO ASSUME CERTAIN ASSUMED AND RESTATED SOLE SOURCE SUPPLIER AGREEMENTS – Page 3

conspicuous letter advising the recipient of the consequences thereof, to counsel listed on page 8 of this Objection and to a high level manager designated by TI who is familiar with the Debtors' undertakings with TI. Additionally, in the event of an inadvertent deposit of a "cure" payment, TI requests that it be afforded a reasonable period of time to return the "cure" funds and thereby free itself of any deemed acceptance.

### B.    ENFORCEABILITY OF PREFERENCE WAIVERS

7.    The Procedures request authority to grant preference waivers as an inducement to a supplier's entry into an Assumption Agreement *in the Debtors' discretion*. Under existing case law, the assumption of an executory contract should be a complete defense to a preference claim. Accordingly, preference waivers should be automatic in the case of assumption, and, to the extent that the Procedures do not provide for this and instead grant the Debtors the discretion to issue full or partial preference waivers, TI objects on that basis.

8.    Reliance on the preference waivers in exchange for accepting the Assumption Agreement under the Procedures may be misplaced since there is no guarantee that those waivers would be enforceable once issued. TI submits that any authority granted to the Debtors to issue preference waivers must be far more explicit and detailed than that proposed in the Motion, in order to prevent any third party in the future from attacking the enforceability of the waivers, or from moving to avoid the same, based either on ambiguity in the order, ambiguity in the Debtors' interpretation of the order, or on developments that cannot be predicted, including potential appeals.

9.    Therefore, any order granting the Debtors the authority to issue preference waivers should, at a minimum, provide that the waiver: (i) is binding on any subsequently appointed Chapter 11 or Chapter 7 trustee, or estate representative, including any Official

Committees; (ii) extends to the whole amount of a supplier's potential preference exposure; (iii) applies to all of the Debtors; and (iv) is irrevocable in the event that the Debtors subsequently terminate an Assumable Agreement for convenience or otherwise.

### C.     AMBIGUITY REGARDING KEY TERMS

10.     The Motion appears to request that the Procedures apply only to "those of the Debtors' suppliers which are the sole source from which the Debtors can currently obtain sufficient quantities of the Goods . . ." Motion, p. 2.  Similarly, the Procedures would apply to "Assumable Contracts," which are defined in the Motion simply as "certain agreements . . . pursuant to which the Debtors receive goods." Motion, p. 2.  The Motion includes no list of so-called sole source suppliers, "Covered Suppliers," or "Assumable Contracts."

11.     Assumption under section 365 of the Bankruptcy Code applies to "executory contracts," and then only to those that have not expired or been terminated prepetition. "Assumable Contracts" appears to go well past this definition for at least the following three reasons: (i) it may apply to contracts that are not otherwise executory; (ii) it may apply to contracts that were executory but that expired or were terminated prepetition, or that expired postpetition; and (iii) it may enable the assumption of a portion of an executory contract, or one executory contract among integrated executory contracts, while leaving the remainder unassumed or rejected.

12.     These ambiguities raise two potential problems.  First, employing the "deemed acceptance" provision of the Procedures, the Debtors could unilaterally determine which contract they believe is assumable, notwithstanding its potential expiration or lack of executory nature, and thereby force a supplier that has unwittingly received a "cure" payment into extending that

contract. This potential is minimized if the Court enters procedures governing against inadvertent "deemed acceptances" as requested above.

13. Second, these ambiguities raise the potential that the Debtors will provide the benefits of an Assumption Agreement, including "cure" payments and a preference waiver, to a supplier that technically does not fit within the operative definitions of "Assumable Agreement" and "Covered Supplier." Indeed, because of the definitional ambiguities, TI is not able to determine whether it may be a "Covered Supplier" or whether it holds "Assumable Agreements" with one or more of the Debtors.

14. If the Debtors are to be permitted to offer the benefits of an Assumption Agreement only to "Covered Suppliers" and only on account of "Assumable Agreements," then these terms must be defined with exacting particularity so that the Debtors, other parties-in-interest, and most importantly TI will be able to ascertain ahead of time that it fits within the protected and intended transactions under an order approving the Procedures. Alternatively, to remove uncertainty as much as possible, any order entered by the Court approving the Procedures should include lists of "Covered Suppliers" and "Assumable Agreements." Otherwise, the Procedures are lacking in transparency, ill-conceived and not designed to protect the interests of all parties.

### D.    INVOLUNTARY ASSUMPTION AGAINST NON-CONSENTING PARTY

15. The involuntary nature of the deemed acceptance problem is compounded by the Debtors' exception to their own Procedures. The Debtors assert that their Procedures only apply to those parties who enter into an Assumption Agreement acknowledging compliance with the Required Minimum Provisions, which are *conditions precedent* to the Debtors' exercise of the authority to assume an Assumable Agreement. Motion at ¶21(b). Nevertheless, the Debtors then

propose a procedure for the situation where a supplier <u>does not consent</u> to the Assumption Agreement or the Required Minimum Provisions. Motion at ¶21(c). In this scenario, the voluntary nature of the Procedures disappears because it is now up to the Creditors' Committee (or the Court if the Committee does not approve) to approve a <u>non-consensual</u> assumption under the Procedures rather than through a typical motion under section 365. This "procedure within the Procedures" is entirely outside the parameters and protections of contract assumption under the Bankruptcy Code and attempts to use the Procedures as a sword against a non-consenting supplier.

### III.    RESERVATION OF RIGHTS

16.    This Objection is without prejudice to TI's reclamation claim, other claims, rights under section 365 of the Bankruptcy Code, and any and all other rights and interests that TI may possess. By filing this Objection, TI is not admitting that it is a "Covered Supplier" or that it is the counterparty to any "Assumable Agreement," as those definitions are used in the Motion, and TI is not admitting that it is the counterparty to any executory contract with any of the Debtors. TI files this Objection out of an abundance of caution occasioned by the failure of the Motion to specify which parties could be subjected to the relief requested therein and the other deficiencies with the Motion as noted herein.

### IV.    MEMORANDUM OF LAW

17.    TI has presented its legal arguments in this Objection. Moreover, the objections contained herein are logical in nature and do not necessarily require a detailed analysis of the law, unless the Procedures are to be unilaterally imposed by the Debtors (which TI does not read the Motion as providing for). Therefore, TI respectfully requests that the requirement under

Local Rule 9013-1(b) for the filing of a separate memorandum of law be deemed satisfied or waived.

## V.    PRAYER

WHEREFORE, PREMISES CONSIDERED, TI respectfully requests that the Court sustain this Objection and deny the Motion or, alternatively, that the Court reform the Procedures in the manner requested herein so as to avoid the noted and potential harm and prejudice that will otherwise result as discussed herein, and for such other and further relief to which TI may show itself to be justly entitled.

Respectfully submitted on this 23rd day of November, 2005.

**MUNSCH HARDT KOPF & HARR, P.C.**

By: /s/ Raymond J. Urbanik
Raymond J. Urbanik, Esq.*
New York State Bar No. RU 1842
Joseph J. Wielebinski, Esq.
Texas Bar No. 214322400
*Pro Hac Vice Pending*
Davor Rukavina, Esq.
Texas Bar No. 24030781
*Pro Hac Vice Pending*
3800 Lincoln Plaza
500 N. Akard Street
Dallas, Texas 75201
Telephone: (214) 855-7500
Facsimile: (214) 855-7584

**ATTORNEYS FOR TEXAS
INSTRUMENTS INCORPORATED**

---

*Mr. Urbanik is licensed to practice in the State of New York as of July 2002, and is admitted in the United States District Court for the Southern District of New York.

---

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on this the 23rd day of November, 2005, he caused true and correct copies of this Objection to be served, by U.S. first class mail, postage prepaid, on the following parties:

Skadden, Arps, Slate, Meagher & Flom LLP
Attn: John W. Butler, Esquire
333 West Wacker Drive
Suite 2100
Chicago, Illinois 60606

Skadden, Arps, Slate, Meagher & Flom LLP
Attn: Kayalyn A. Marafioti, Esquire
Four Times Square
New York, New York 10036

Delphi Corporation
Attn. Karen J. Craft, Esquire
5725 Delphi Drive
Troy, Michigan 48098-2815

Latham & Watkins LLP
Attn. Robert J. Rosenberg, Esquire
885 Third Avenue, Suite 1000
New York, New York 19922-4068

Greensfelder, Hemker & Gale, P.C.
Attn: Cherie MacDonald, Esquire
12 Wolf Creek Drive, Suite 100
Swansea, Illinois 62226

Office of United States Trustee
Southern District of New York
Attn: Alicia M. Leohard
33 Whitehall Street, Suite 2100
New York, New York 10004

Halperin Battaglia Raicht, LLP
Christopher J. Battaglia, Esquire
Alan D. Halperin, Esquire
555 Madison Avenue, 9th Floor
New York, New York 10022

By: /s/ Raymond J. Urbanik
    Raymond J. Urbanik, Esq.
    New York State Bar No. RU 1842

OBJECTION OF TEXAS INSTRUMENTS INCORPORATED TO DEBTORS' MOTION FOR AN ORDER UNDER 11 U.S.C. §§ 363(b) AND 365 (a) AND FED. R. BANKR. P. 9019 APPROVING PROCEDURES TO ASSUME CERTAIN ASSUMED AND RESTATED SOLE SOURCE SUPPLIER AGREEMENTS – Page 9

DALLAS 1097667_2    587.64