**Hearing Date and Time: December 16, 2005 at 10:00 a.m.**
**Objection Deadline:  December 9, 2005 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
    In re                                     :    Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :    Case No. 05-44481 (RDD)
                                              :
                            Debtors.          :    (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER 11 U.S.C. § 363 AND FED. R.
BANKR. P. 2002, 6004, AND 9013 AUTHORIZING  DEBTORS
TO TRANSFER SHARES AND MERGE CERTAIN WHOLLY-
OWNED, NON-DEBTOR SUBSIDIARIES

("MOTION TO TRANSFER SHARES AND MERGE SUBSIDIARIES")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession (collectively, the "Debtors"), hereby submit this

motion (the "Motion") for an order under 11 U.S.C. § 363, And Fed. R. Bankr. P. 2002,

6004, And 9013 Authorizing Debtors To Transfer Shares And Merge Certain Wholly-

Owned, Non-Debtor Subsidiaries.  In support of this Motion, the Debtors submit the

Declaration of Robert H. Sparks, dated November 23, 2005.  In further support of the

Motion, the Debtors respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8, 2005, Delphi and certain of its U.S. subsidiaries filed

voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of

the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

On October 14, 2005, three additional U.S. subsidiaries of Delphi filed voluntary

petitions in this Court for reorganization relief under the Bankruptcy Code.  The Debtors

continue to operate their businesses and manage their properties as debtors-in-possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.    On October 17, 2005, the Office of the United States Trustee

appointed an official committee of unsecured creditors.  No trustee or examiner has been

appointed in the Debtors' cases.

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§

157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a

core proceeding pursuant to 28 U.S.C. § 157(b)(2).

4.      The statutory predicate for the relief requested herein is section 363 of the Bankruptcy Code and Rules 2002, 6004, and 9013 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

5.      With more than 180,000 employees worldwide, global 2004 revenues of approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1 billion,[1] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations without supervision from the Bankruptcy Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

6.      Over the past century, the operations which are now owned by Delphi have developed leading global technology innovations with significant engineering resources and technical competencies in a variety of disciplines.  Today, the Company (as defined below) is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company's technologies and products are present in more than 75 million vehicles on the road worldwide.  The Company supplies products to nearly every major global automotive original equipment manufacturer, with 2004 sales to its former parent, General Motors Corporation, equaling approximately $15.4 billion

---

[1]      The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

7.    As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world.  In the U.S., the Debtors employ approximately 50,600 people.  Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan.  Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions.  Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates (collectively, the "Company") in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.      Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base.  The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base.  The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.      Events Leading To Chapter 11 Filing

10.      In the first two years following Delphi's separation from GM, the Company generated more than $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005.  The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of

$13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[2]

11.    The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward looking revenue requirements.  Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve

---

[2]        Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

the Company's core businesses.  This will require negotiation with key stakeholders over

their respective contributions to the restructuring plan or, absent consensual participation,

the utilization of the chapter 11 process to achieve the necessary cost savings and

operational effectiveness envisioned in the Company's transformation plan.  The Debtors

believe that a substantial segment of Delphi's U.S. business operations must be divested,

consolidated, or wound-down through the chapter 11 process.

14.    Upon the conclusion of this process, the Debtors expect to emerge

from chapter 11 as a stronger, more financially sound business with viable U.S.

operations that are well-positioned to advance global enterprise objectives.  In the

meantime, Delphi will marshal all of its resources to continue to deliver value and high-

quality products to its customers globally.  Additionally, the Company will preserve and

continue the strategic growth of its non-U.S. operations and maintain its prominence as

the world's premier auto supplier.

Relief Requested

15.    By this Motion, the Debtors seek entry of an order under 11 U.S.C.

§ 363 authorizing Delphi Automotive Systems (Holding), Inc. (USA) ("DASHI") to (a)

transfer the shares of its direct, wholly-owned, non-Debtor subsidiary Delphi Automotive

Systems Holding GmbH ("DAS Holding") to another indirect, wholly-owned, non-

Debtor subsidiary Delphi Holding GmbH ("Delphi Holding"), and (b) to merge DAS

Holding into Delphi Holding (together, the "Transaction").  The Transaction will allow

the Debtors to eliminate an unnecessary legal entity in Austria, provide for tax

consolidation of Delphi's Austrian operations to make them more tax efficient, and create

a more tax efficient structure for future dividend repatriations to the Debtors.   The

7

Debtors respectfully submit that the decision to complete the Transaction represents a

proper exercise of the Debtors' business judgment.

Basis For Relief

A.  The Current Structure

16.    The Debtor DASHI currently has two indirect, wholly-owned, non-

Debtor operating subsidiaries in Austria: Delphi Packard Austria GmbH & Co KG

("Packard Austria") and Delphi Automotive Systems Vienna GmbH ("DAS Vienna").

The first operating company is DAS Vienna which is owned by DAS Holding.  DAS

Holding is owned directly by DASHI which is a Debtor and a corporation incorporated in

the state of Delaware.  Packard Austria is the second operating company, which is owned

by Delphi Holding.  Delphi Holding, in turn, is owned by Delphi Holdings Luxembourg

Sarl (Luxembourg), which is wholly-owned by Delphi International Holdings

Corporation Luxembourg SCS (Luxembourg) ("Delphi Holdings Luxembourg").  These

entities are not Debtors in the chapter 11 cases.  Delphi Holdings Luxembourg is directly

owned by DASHI.  The diagram below illustrates the current legal relationship of the

relevant entities:



17.    As shown in the chart above, the current corporate structure is

inefficient from a tax perspective.  Having two Austrian operating companies (Packard

Austria and Delphi Vienna) owned by separate holding companies that are owned by

separate non-Austrian entities prevents the two operating companies from entering into a

tax consolidation in Austria.  A tax consolidation would permit potential losses generated

by either DAS Vienna or Packard Austria in the future to offset the taxable income of the other.

B.      The Proposed Transaction

18.   By this Motion, the Debtors seek to simplify their corporate structure in Austria and achieve tax efficiencies through the consolidation reflected in the proposed Transaction.  To do so, the Debtors seek to modify the ownership of the two Austrian operating entities to align those operating entities under a single Austrian holding company.  In connection with the proposed Transaction:

(a)    DASHI will transfer all of its shares of DAS Holding to Delphi Holding for €1.00 prior to December 31, 2005, and

(b)    DAS Holding will be merged into Delphi Holding prior to June 30, 2006.

19.   The Transaction will not affect the operating subsidiaries.  Separate accounting, trial balances, and financial reporting will remain in place for Delphi Vienna and Packard Austria.  The only change is that Delphi Vienna will move from its position as a direct subsidiary of DAS Holding to a direct subsidiary of Delphi Holding.  Delphi Vienna will remain, however, an indirect wholly-owned subsidiary of the Debtor DASHI. In addition, although there will be additional holding companies between Delphi Vienna and DASHI, the value of the shares in the intermediary holding company owned by DASHI will be enhanced by at least the value of DAS Holding shares transferred to it.

20.   Upon consummation of the Transaction, the resulting corporate structure will be set forth in the following diagram:



<u>Applicable Authority</u>

21.    The Debtors submit that under section 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 9013, as well as 11 U.S.C. § 105, this Court should authorize the Debtors to enter into the Transaction.

22.    Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, courts in the Second Circuit and others, in applying this section, have required that it be based upon the sound business judgment of the debtor. See In re Chateaugay Corp., 973 F.2d 141 (2d Cir. 1992) (holding that a judge determining a § 363(b) application must find from the evidence presented before him a good business reason to grant such application); Committee of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (same); In re Delaware Hudson Ry. Co., 124 B.R. 169, 179 (Bankr. D. Del. 1991).

23.    Once the debtor articulates a valid business justification, "'[there is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)); see also In re RCN Corp., June 22, 2004 Hr'g Tr. ¶¶ 51:3–12 (approving exit financing commitments pursuant to 363(b) of the Bankruptcy Code).  Once a valid business judgment is made, the business judgment rule shields a debtor's management from judicial second-guessing. In re Farmland Indus., Inc., 294 B.R. at 913 (quoting In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986)) ("'[T]he Code favors the continued operation of a

business by a debtor and a presumption of reasonableness attaches to a debtor's management decisions.'"). Once the Debtors articulate a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'" In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

24.    Here, the Debtors submit that the Transaction is in the ordinary course of their businesses and arguably requires no Court authorization.  The Debtors have frequently engaged in restructurings of this type in the past, and such restructurings are common in multi-national corporations such as Delphi.  Moreover, the debtor-in-possession financing documents, approved by this Court on October 28, 2005, expressly refers to and authorizes the Debtors to carry out mergers similar to the restructuring contemplated in the Transaction.  In any event, even if not considered to be in the ordinary course, the approval of the Transaction is warranted under section 363 of the Bankruptcy Code.  The Transaction contemplates the "use" of estate assets by virtue of the transfer of shares and subsequent merger.  In addition, the Transaction also reflects a valid exercise of the Debtors' business judgment in light of the benefits that will accrue to the Debtors as a result of the Transaction.  See In re Baldwin United Corp., 43 B.R. 888, 890 n.1 (Bankr. S.D. Ohio 1984) (agreeing that the standard of section 363 of the Bankruptcy Code should govern the determination whether to agree to the dissolution of the partnership).

25.    Moreover, section 105(a) of the Bankruptcy Code also gives this
Court broad authority under its equitable powers to fashion any order or decree that
would preserve or protect the value of the debtor's assets.  See, e.g., Adelphia Communs.
Corp. v. Rigas, 2003 U.S. Dist. LEXIS 9349, at *12 (S.D.N.Y. 2003) ("Section 105 of
Title 11 provides the bankruptcy courts with a broad range of equitable powers over cases
within its jurisdiction"); Griffin v. Bonapfel (In re All American of Ashburn, Inc.), 805
F.2d 1515, 1517 (11th Cir. 1986) (per curiam) (noting that section 105(a) provides
authority for bankruptcy courts to protect estate property).

26.    In light of the benefits expected to accrue to the Debtors by
consummating the Transactions, this Court should grant the relief requested in this
Motion.  As noted above, the Transactions will bring tangible, important benefits to the
Debtors.  In particular, the transaction will allow the Debtors to eliminate an unnecessary
legal entity in Austria, provide for tax consolidation of Delphi's Austrian operations to
make them more tax efficient, and create a more tax efficient structure for future dividend
repatriations.  The transferred shares of Delphi Vienna will be held by Delphi Holding, an
indirect wholly-owned subsidiary of the Debtor DASHI.  Additionally, the value of the
shares in the intermediate holding company held by DASHI will be enhanced by at least
the value of the DAS Holding shares transferred to it.  Accordingly, consummating the
Transactions represents a valid exercise of the Debtors' business judgment, is in the best
interests of the estates, and should be granted.

## Notice

27.    Notice of this Motion has been provided in accordance with the
Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007,
And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case

Management, And Administrative Procedures, And (III) Scheduling An Initial Case

Conference In Accordance With Local Bankr. R. 1007-2(e), which was entered by this

Court on October 14, 2005 (Docket No. 245).  In light of the nature of the relief requested,

the Debtors submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

28.   Because the legal points and authorities upon which this Motion

relies are incorporated herein, the Debtors respectfully request that the requirement of the

service and filing of a separate memorandum of law under Local Rule 9013-1(b) be

deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a)

authorizing the Debtors to transfer shares and merge certain indirect, wholly-owned, non-

Debtor subsidiaries and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
　　　　November 23, 2005

　　　　　　　　　　SKADDEN, ARPS, SLATE, MEAGHER
　　　　　　　　　　　& FLOM LLP

　　　　　　　　　　By: s/　John Wm. Butler, Jr.　　　
　　　　　　　　　　　　John Wm. Butler, Jr. (JB 4711)
　　　　　　　　　　　　John K. Lyons (JL 4951)
　　　　　　　　　　　　Ron E. Meisler (RM 3026)
　　　　　　　　　　333 West Wacker Drive, Suite 2100
　　　　　　　　　　Chicago, Illinois  60606
　　　　　　　　　　(312) 407-0700

　　　　　　　　　　　　　　- and -

　　　　　　　　　　By: s/　Kayalyn A. Marafioti　　　
　　　　　　　　　　　　Kayalyn A. Marafioti (KM 9632)
　　　　　　　　　　　　Thomas J. Matz (TM 5986)
　　　　　　　　　　Four Times Square
　　　　　　　　　　New York, New York 10036
　　　　　　　　　　(212) 735-3000

　　　　　　　　　　Attorneys for Delphi Corporation, et al.,
　　　　　　　　　　　　Debtors and Debtors-in-Possession