TOGUT, SEGAL & SEGAL LLP
Co-Counsel for Delphi Corporation, *et al.*,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)
Anthony M. Vassallo (AV-3169)

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>------------------------------------------------------------x<br>In re:<br><br>DELPHI CORPORATION, *et al.*,<br><br>          Debtors.<br>------------------------------------------------------------x | HEARING DATE: 11/29/05<br>       AT: 10:00 A.M.<br><br>Chapter 11<br>Case No. 05-44481 [RDD]<br><br>Jointly Administered |

**DEBTORS' OBJECTION TO THE MOTION OF BANK OF
AMERICA N.A. FOR (I) ADEQUATE PROTECTION OF SECURITY
INTERESTS IN COLLATERAL; AND (II) TERMINATION OF
<u>THE AUTOMATIC STAY REGARDING CASH COLLATERAL</u>**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

      Delphi Corporation ("Delphi"), Delphi Automotive Systems, LLC and

Delphi Automotive Systems Human Resources, LLC ("Delphi HR"), debtors and

debtors in possession in the above-captioned cases (collectively, the "Debtors"), by their

undersigned counsel, as and for their objection to the motion dated November 11, 2005

(the "Motion") of Bank of America N.A. ("Bank of America") for an Order granting

adequate protection of its asserted interest in certain collateral relating to two aircraft

that are the subject of agreements between Delphi HR and Bank of America, including Bank of America's demand for (a) the grant of replacement liens to Bank of America in any similar, after-acquired collateral, including cash collateral; and (b) terminating the automatic stay and directing the Debtors to account for and immediately turn over all cash collateral immediately upon receipt, respectfully state:

**PRELIMINARY STATEMENT**

1.   The Debtors maintain manufacturing and business facilities throughout the United States, and many of those facilities are located in remote areas that are not serviced by major or regional air carriers.

2.   As part of their continuing efforts to achieve maximum profitability and to eliminate unnecessary cost and delay, the Debtors use two Aircraft (defined below) to transport personnel to the airstrips that are located closest to the Debtor's remote facilities.

3.   Moreover, to defray the costs associated with use of the Aircraft, the Debtors entered into charter agreements prior to the Filing Date pursuant to which the Debtors collect charter fees.[1]  Revenue that is generated by the charter agreements help to satisfy the monthly maintenance and operating expenses of the Aircraft. Bank of America consented to those Charter Agreements.

4.   The Debtors' use of the Aircraft is subject to, <u>inter</u> <u>alia</u>, the agreements with Bank of America, as successor to Fleet National Bank: the Learjet

---

[1]   The Aircraft are not subject to Bankruptcy Code section 1110. Section 1110 applies to "an aircraft, aircraft engine, propeller, appliance or spare part . . . that is subject to a security interest granted by, leased to, or conditionally sold to a debtor that, at the time such transaction is entered into, holds an air carrier operating certificate issued pursuant to chapter 44 of title 49 for aircraft capable of carrying 10 or more individuals or 6,000 pounds or more of cargo; . . . ." 11 U.S.C. § 1110(a)(3)(A)(i). The Debtors do not hold operating certificates to the Aircraft; the charter companies do. Therefore, section 1110 does not apply to the Aircraft and related collateral. Consequently, the Aircraft and other related Agreements are presently governed by section 365 of the Bankruptcy Code. <u>See</u> <u>In re UAL Corp.</u>, No. 02 B 48191, 2005 WL 3071261 at *3 (Bankr. N.D. Ill. Nov. 15, 2005) (section 365(d)(10) can apply to aircraft leases.)

agreement and the Challenger agreement (collectively, the "Agreements").  Pursuant to the Agreements, Bank of America, maintains title to each of the Aircraft and asserts first priority liens against the Aircraft, aircraft engines, parts accessories, replacements and substitutions (the "Collateral"), and all charter revenue (the "Cash Collateral").

       5.       Nothing in the October 28, 2005 Final Order (the "Final Order") of the Court authorizing the Debtors to, *inter alia*, obtain post-petition financing and to use cash collateral impaired the liens asserted by Bank of America:

> *Aircraft Leases*.  Notwithstanding anything to the contrary contained in this Order, no DIP Liens or any other liens or interests granted, authorized or contemplated herein shall attach to any interests of Delphi Automotive Systems Human Resources, LLC ("Delphi HR") in two leases of aircraft, both of which are dated March 30, 2001 between Bank of America, N.A. and Delphi HR (the "Aircraft Leases"), or in any personal property that is the subject of the Aircraft Leases.

Final Order, para. 25.

       6.       In fact, Bank of America objected to entry of the Final Order and sought the very relief that it now seeks, again, in the Motion:  replacement liens and delivery of the Cash Collateral as a form of periodic payments.   A copy of Bank of America's Objection (without exhibits) is annexed hereto as Exhibit "1".  The Court overruled that Objection, and paragraph 25 of the Final Order was included to confirm that the liens that were created by the Final Order in favor of the Debtors' post-petition lenders do not extend to the Collateral or the Cash Collateral.

       7.       Bank of America's present Motion is an improper request that the Court revisit an Objection that has already been overruled and addressed.  A copy of the pertinent portion of the October 27, 2005 hearing concerning the Final Order is annexed hereto as Exhibit "2".

8. The forms of protection that are already provided to Bank of America pursuant to the Agreements, and the others forms of protection proposed by the Debtors, but rejected by Bank of America, including: (i) monthly payments pursuant to the Agreements, which are paid on cash in advance terms on the 20th of each month; (ii) segregation of the net proceeds of the charter revenue in a separate account, from which the Debtors cannot disburse sums without either Bank of America's prior consent or Bankruptcy Court Order upon prior notice and a hearing; (iii) the payment over time for the use of the Aircraft during the first 60 days of these cases; (iv) advance prorated payment for the use of the Aircraft from December 7, 2005, the 61st day after the Filing Date, though December 19, 2005; and (v) preparation and submission to Bank of America of monthly reports regarding the expenses and income regarding the Aircraft and account activity in the segregated account – all provide Bank of America with the benefit of its pre-Filing Date bargain with the Debtors, and adequate protection as contemplated by Bankruptcy Code section 361.

9. Based on the foregoing, the Motion should be denied.

## STATEMENT OF FACTS

**The Chapter 11 Cases.**

10. On October 8, 2005 (the "Filing Date"), 39 of 42 Debtors, and on October 14, 2005, the remaining Debtors, filed voluntary petitions in this Court for reorganization relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered Orders directing the joint administration of the Debtors' chapter 11 cases (Docket Nos. 28 and 404).

11. On October 17, 2005, the United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors in these cases, which is represented by Latham & Watkins. No trustee or examiner has been appointed.

12. On October 28, 2005, the Court entered the Final Order, and in doing so, overruled Bank of America's Objection and demand for replacement liens and delivery of the Cash Collateral.

**The Debtors' Agreements with Bank of America**

13. Prior to the Filing Date, Delphi HR and Bank of America entered into Agreements concerning each of the Aircraft.

14. *The Learjet Agreement*. Pursuant to this Agreement (the "Learjet Agreement"), the Debtors use, and Bank of America asserts interests in, a Lear 60 aircraft, which includes: (i) a Lear 60 aircraft bearing U.S. Registration Mark N699DA and manufacturer's serial number 237; (ii) two Pratt & Whitney Canada model PW305A aircraft engines, bearing manufacturer's serial numbers PCE-CA0319 and PCE-CA 0318; (iii) all present and future parts, avionics, accessories, accessions and attachments to the aircraft. The Learjet Agreement, dated March 30, 2001, commenced on December 20, 2001 and will expire on December 19, 2013. The present monthly Base Rent (as defined by the Learjet Agreement) is $62,202.53 and it is payable monthly in advance.

15. On November 26, 2001, Delphi HR entered into a charter agreement with Automotive Air Charter, Inc., to charter the Learjet for use by third parties. On the same date, Delphi HR entered into an Aircraft Management Agreement with Pentastar Aviation, LLC with respect to the Learjet. All of the parties to those agreements, including Bank of America, executed a separate Consent to Aircraft

Management Agreement and Charter Agreement and Assignment, dated November 27, 2001 and December 16, 2003, pursuant to which Delphi HR granted Bank of America a first priority security interest in, among other things, all of Delphi HR's rights under the Management Agreement and Charter Agreements including any sums paid and payable to Delphi HR pursuant to those agreements.

16. *The Challenger Agreement.* Pursuant to this Agreement (the "Challenger Agreement"), the Debtors use, and Bank of America asserts interests in, a Bombardier CL-600-2B16 (Variant 604) aircraft, which includes: (i) a Bombardier CL-600-2B16 (Variant 604) aircraft bearing U.S. Registration Mark N599DA and manufacturer's serial number 5498; (ii) two General Electric CF 34-3B aircraft engines, bearing manufacturer's serial numbers 873033 and 873034; (iii) all present and future parts, avionics, accessories, accessions and attachments to the aircraft. The Challenger Agreement, dated March 30, 2001, commenced on December 20, 2001 and will expire on December 19, 2013. The present monthly Base Rent (as defined by the Challenger Agreement) is $130,476.08 and it is payable monthly in advance.

17. On November 26, 2001, Delphi HR entered into a charter agreement with Automotive Air Charter, Inc., to charter the Variant 604 for use by third parties. On the same date, Delphi HR entered into an Aircraft Management Agreement with Pentastar Aviation, LLC with respect to the Variant 604. All of the parties to those agreements, including Bank of America, executed a separate Consent to Aircraft Management Agreement and Charter Agreement and Assignment, dated November 27, 2001 and December 16, 2003, pursuant to which Delphi HR granted Bank of America a first priority security interest in, among other things, all of Delphi HR's rights under the Management Agreement and Charter Agreements including any sums paid and payable to Delphi HR pursuant to those agreements.

6

**Bank of America's Demand for Adequate Protection**

18. In its Motion, Bank of America has demanded: (a) adequate protection as to the Collateral in the form of replacement liens in after-acquired property similar in nature to the Collateral that is subject to the Agreements; (b) periodic accountings of all Cash Collateral; and (c) termination of the automatic stay and a requirement that the Debtors deliver to Bank of America all Cash Collateral related to the Aircraft upon receipt: "to reduce the [post-petition] arrearage and to provide a fund to pay all future lease obligations."[2] Motion at ¶46. These are same the forms of adequate protection that Bank of America sought in its Objection to the Final Order, and the Court rejected those demands -- just one month ago.

19. Bank of America has not asserted or provided any basis to conclude that the value of the Collateral is declining or that the protections in the Agreements and the Final Order are inadequate to protect its interests in the Collateral and Cash Collateral.

**The Debtors Have Provided and Will Provide Adequate Protection to Bank of America**

20. The interests and protections that are created in favor of Bank of America by the Agreements provide adequate protection. Nonetheless, the additional forms of adequate protection, which the Debtors are prepared to provide, but which have been rejected by Bank of America, are sufficient:

- The Debtors will deposit all post-Filing Date net proceeds of the revenue derived from the charter agreements, less operating expenses (the "Net Proceeds"), into a separate, segregated bank account (the "Segregated Bank Account");

---

[2] The "post-petition arrearage" referred to by Bank of America is comprised of 49 days of use after the Filing Date – 7 days of which will not have accrued as of the Hearing Date for the Motion – and pursuant to Bankruptcy Code section 365(d)(10), the Debtors are not required to make payment for the first 60 days use at this time.

7

- Provided that the Learjet and Challenger Agreements are still in effect, the Debtors will not use the funds in the Segregated Bank Account absent either prior Bankruptcy Court approval or the affirmative consent of Bank of America;

- Provided that the Learjet and Challenger Agreements are still in effect, the Debtors will pay, or cause to be paid, any unpaid amount of postpetition rent that accrued during the first 60 days of these Chapter 11 cases[3] in equal installments over the subsequent four calendar quarters, payable on the last date or each such quarter, provided that Bank of America does not (a) interfere with the Debtors' quiet enjoyment of the Aircraft, or (b) submit a motion to the Bankruptcy Court requesting a deadline for the Debtors to assume or reject the Agreements;

- The Debtors will provide Bank of America with monthly reports describing charter revenue generated, operating expenses incurred and cash activity in the Segregated Bank Account; and

- The Debtors will provide Bank of America with ten days' prior notice of its election to either assume or reject one or both of the Agreements.

## ARGUMENT

**A.    There Is No Evidence That The Value Of The Collateral Is Diminishing And Bank of America Is Not Entitled To Adequate Protection Payments Pursuant To Section 363(e).**

21.    Section 362(d)(1) permits, under circumstances not present here, relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest."  11 U.S.C. § 362(1).  "[T]he `interest in property' protected by § 362(d)(1) does not include a secured party's right to immediate foreclosure."  <u>United States Savings Ass'n v. Timbers of Inwood Forrest Assoc., Ltd.</u>, 484 U.S. 365, 371 (1988).  Under the circumstances described herein, Bank of America has not and cannot establish that it is not adequately protected.  Moreover, its demand for an immediate foreclosure against the Cash Collateral is premature and should be denied.

8

22.     Courts uniformly require a movant which is seeking relief from the automatic stay for lack of adequate protection to demonstrate a decline in value of its collateral.  See In re Continental Airlines, Inc., 146 B.R. 536, 539 (Bankr. D. Del. 1992);  In re Forest Ridge II, Ltd., 116 B.R. 937, 950 (Bankr. W.D.N.C. 1990) (undersecured creditor not entitled to adequate protection where collateral was not declining in value); In re The Answer, 115 B.R. 465, 470 (Bankr. S.D.N.Y. 1990) (secured creditor entitled to adequate protection where collateral declining in value).  Bank of America must satisfy the burden of establishing "cause" for relief from the automatic stay under section 362(d)(1).  See In re Morysville Body Works, Inc., 86 B.R. 51, 55 (Bankr. E.D. Pa. 1988); In re Metro Transp. Co., 82 B.R. 351, 353-54 (Bankr. E.D. Pa. 1988);  see also United States v. Northland Assocs. (In re Abrantes Constr. Corp.), 132 B.R. 234 (N.D.N.Y. 1991).

23.     Bank of America's Motion seems to indicate that it demands adequate protection of the Cash Collateral, which totals approximately $50,000 each month after satisfaction of maintenance and other operating expenses that the Debtors are required to satisfy under the Agreements.  To satisfy that request, which Bank of America already made in connection with its objection to the Final Order, the Debtors proposed to deposit the net charter revenue into a segregated bank account, but that proposal did not satisfy Bank of America.  Indeed, the argument that cash held in a segregated account  - subject to Bank of America's disbursement consent or Order of the Court  - would diminish in value is unsupported by any fact or legal authority.

24.     Bank of America has not satisfied its burden of demonstrating any decline in the Collateral or the Cash Collateral.  No showing whatsoever has been made by Bank of America that the value of the Collateral is declining.  In fact, as long as the

---

[3] The Debtors paid for use of the Aircraft for October 8 through October 19, 2005 as part of their pre-Filing Date advance monthly payment to Bank of America.

9

Debtors maintain the Aircraft and continue to make post-petition payments pursuant to section 365 of the Bankruptcy Code, Bank of America will be adequately protected and it will receive the benefit of its bargain – payments that total substantially the underlying price of each Aircraft.[4]

**B.**         **Bank of America is Not Entitled to Retroactive Adequate Protection Payments.**

25. Bank of America seeks adequate protection payments retroactive to the Filing Date pursuant to section 363(e) of the Bankruptcy Code.

26. Pursuant to section 363(e) of the Bankruptcy Code, Bank of America would only be entitled to adequate protection of the value of its interest in the Collateral. The value of Bank of America's interest in the Collateral is to be assessed in accordance with section 506(a) of the Bankruptcy Code at either an agreed upon rate, or at a rate fixed by the Court after an evidentiary hearing.[5] However, Bank of America has not submitted any evidence to demonstrate a decline in the value of its interest in the Collateral.

27. Finally, even assuming, <u>arguendo</u>, that the value of the Collateral was declining, Bank of America is entitled to adequate protection only from the date it made its request for adequate protection, *i.e.*, the date it filed the Motion (November 11, 2005), and not retroactive to the Filing Date. See <u>In re Best Products Co., Inc.</u>, 138 B.R. 155 (Bankr. S.D.N.Y. 1992), <u>aff'd</u>, 149 B.R. 346 (S.D.N.Y. 1992).

---

[4]     The aggregate amount of the payments under the Learjet Agreement total $10,272,489, which is an amount comparable to the original cost of the jet, $11,125,200. See Motion at ¶11. Similarly, the aggregate amount of the payments under the Challenger Agreement total $20,876,867.70, which is an amount comparable to the original cost of the jet, $21,149,760. See Motion at ¶26.

[5]     The Debtors reserve their rights to assert that: (a) Bank of America is entitled no more than the fair market value for the use of the Aircraft; (b) the Agreements should be recharacterized as financing agreements so that no use payments are appropriate; or (c) that the liens asserted by Bank of America are not perfected or are avoidable. See <u>In re UAL Corp.</u>, 2005 WL 3071261 (Bankr. N.D. Ill. Nov. 15, 2005); <u>United Airlines, Inc. v. HSBC Bank U.S.A., N.A.</u>, 416 F.3d 609 (7th Cir. 2005).

10

28. Bank of America requests not only an accounting of the Cash Collateral that the Debtors receive through the charter agreements, but also the turnover of all receipts which Bank of America will hold and then use to offset the Debtor's liabilities under the Agreements. See Motion at ¶46. Nowhere does Bank of America provide legal support for this branch of its Motion. Moreover, Bank of America's Motion is silent as to the disposition of the balance of those funds. See Motion at ¶48. The Debtors' proposal to establish the Segregated Accounts for the Cash Collateral further adequately protect Bank of America and obviates the need for any replacement liens.

29. Bank of America has failed to demonstrate that the value of the Collateral has declined in value since the date the Motion was filed and, therefore, Bank of America is not entitled to adequate protection at this time. Moreover, Bank of America is not entitled to periodic payments retroactively.

## C. Bank of America is Not Entitled to Relief from the Automatic Stay Pursuant to Bankruptcy Code Section 362(d)(2)

30. Bank of America erroneously asserts that it is entitled to relief from the automatic stay pursuant to Bankruptcy Code section 362(d)(2) when it asserts that the Debtors have no equity in the Collateral, and that neither the Cash Collateral nor the Aircraft are necessary for an effective reorganization. However, Bank of America's request for relief from the automatic stay is limited to enforcing its right to receive payment of Cash Collateral.

31. Generally, the termination of the automatic stay pursuant to section 362(d)(2) is not favored in "the early stages of bankruptcy." See In re 6200 Ridge, Inc., 69 B.R. 837, 843 (Bankr. E.D. Pa. 1987). In Timbers, the Supreme Court held that section 362(d)(2) requires a debtor to show only that "there must be 'a reasonable possibility of

11

a successful reorganization within a reasonable time.'"  <u>Timbers</u>, 484 U.S. at 376.  In the early stages of a chapter 11 case, a debtor must show only that a reorganization is plausible.  <u>In re Kent Terminal Corp.</u>, 166 B.R. 555, 561 (Bankr. S.D.N.Y. 1994); <u>see</u> also <u>Timbers</u>, 484 U.S. at 376.  That is present here.

        32.    Section 362(d)(2) of the Bankruptcy Code provides, in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay -- . . .
>
>     (2)    with respect to a stay of an act against property under subsection (a) of this section, if –
>
>         (A)    the debtor does not have an equity in such property; and
>
>         (B)    such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d).

        33.    Section 362(d)(2) provides a two-prong test that must be satisfied before a Court may terminate the automatic stay.  First, the debtor must not have any equity in the property.  <u>See</u> 11 U.S.C. § 362(d)(2)(A).  Bank of America, as the moving party, bears the burden of demonstrating that the Debtors have no equity in the Collateral.  <u>See</u> 11 U.S.C. § 362(g)(1).  Bank of America has made no such showing.  Accordingly, the first prong of section 362(d)(2) has not been satisfied.

        34.    Second, the debtor bears the burden of demonstrating that the property is necessary to an effective reorganization.  <u>See</u> 11 U.S.C. § 362(d)(2)(B).  On this point, Bank of America incorrectly asserts that the Aircraft are not important to the Debtors' reorganization because they constitute an "extremely small portion of the Debtors' assets, . . . "  <u>Motion</u> at ¶49.

35. Property is necessary if it will contribute to a plan of reorganization. See In re Jug End in the Berkshires, Inc., 46 B.R. 892, 902 (Bankr. D. Mass. 1985); In re Koopmans, 22 B.R. 395 (Bankr. D. Utah 1982). The Cash Collateral will enable the Debtors to operate the Aircraft and, consequently, assist in their businesses during these chapter 11 cases and, contribute to a plan of reorganization.

36. The Debtors use the Aircraft in the ordinary course of their businesses to transport personnel to their manufacturing and other business facilities throughout the United States. Because many of these facilities are located in areas that are not serviced by major or regional airlines, the Debtors achieve increased productivity and savings in time, convenience, and travel expense by having the Aircraft available for such transport.

37. Moreover, to help defray the costs of maintaining and operating these Aircraft, the Debtors also entered into charter agreements with third parties to operate the Aircraft. These charter agreements provide revenue to help offset the overall cost of the Aircraft. Bank of America is aware of the charter agreements and benefits generated by them, and it signed consent agreements, presumably because the monthly payments under the Agreements are supported, directly or indirectly, by the charter agreements. Consequently, the Collateral and the Cash Collateral are necessary and contribute to an effective reorganization.

## **CONCLUSION**

38. Based on the foregoing, Bank of America has failed to establish at this early stage of these cases any basis for relief from the automatic stay, and its second request for adequate protection should be denied.

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order denying the Motion, together with such other and further relief as may be just and proper.

Dated: New York, New York  
November 25, 2005

DELPHI CORPORATION, *et al.*  
By their attorneys,  
TOGUT, SEGAL & SEGAL LLP  
By:

/s/ Neil Berger  
ALBERT TOGUT (AT-9759)  
NEIL BERGER (NB-3599)  
Members of the Firm  
One Penn Plaza  
New York, New York 10119  
(212) 594-5000