```
 1                      UNITED STATES BANKRUPTCY COURT
                         SOUTHERN DISTRICT OF NEW YORK
 2

 3
                                            .
 4   IN RE:                                 .   Case No. 05-44481 (RDD)
                                            .
 5   DELPHI CORPORATION, et al,             .   New York, New York
                                            .   Thursday, October 27, 2005
 6                     Debtors.             .   10:35 a.m.
     . . . . . . . . . . . . . . . .
 7

 8
                       TRANSCRIPT OF OMNIBUS HEARING
 9             BEFORE THE HONORABLE ROBERT D. DRAIN
                    UNITED STATES BANKRUPTCY JUDGE
10

11   APPEARANCES:   (On the Record)

12   For the Debtors:              John Wm. Butler, Jr., Esq.
                                   SKADDEN, ARPS, SLATE, MEAGHER
13                                  & FLOM, LLP
                                   333 West Wacker Drive, Suite 2100
14                                 Chicago, Illinois 60606
                                   (312)407-0700
15
                                   Kayalyn A. Marafioti, Esq.
16                                 Thomas J. Matz, Esq.
                                   SKADDEN, ARPS, SLATE, MEAGHER
17                                  & FLOM, LLP
                                   Four Times Square
18                                 New York, New York, 10036
                                   (212)735-3000
19
     Court Recorder:               Electronically Recorded
20                                 by Maria E. Rodriguez

21   Transcription Company:       Rand Transcript Service, Inc.
                                   311 Cheyenne Road
22                                 Lafayette, New Jersey  07848
                                   (973) 383-6977
23
     Proceedings recorded by electronic sound recording, transcript
24   produced by transcription service.

25
```

1  least with General Motors, we will do it, and I'm quite sure
2  Delphi will have a counter-record.
3          THE COURT: Okay.
4          MR. BIENENSTOCK: Which hopefully will match up.
5          THE COURT: Okay.
6          MR. BIENENSTOCK: Thank you, Your Honor.
7          MR. BUTLER: And I'm not sure I followed exactly how
8  much Mr. Bienenstock got at the conclusion. I will confirm to
9  the Court on the record that the conclusion he reached is one
10 that the debtors concur with.
11         THE COURT: Okay.
12         MR. BUTLER: As the Court also stated.
13         Your Honor, moving now to some other issues, if we
14 may, I think we have resolved -- I don't know -- is Mr.
15 Somerstein still in the courtroom?
16              (Counsel confer)
17         MR. BUTLER: I believe he now resolved any issues that
18 the DIP lenders have, the prepetition agent has, the Goodwin
19 Procter Group has as part of the prepetition bank group, the
20 creditors' committee has, and General Motors has as to the
21 order that was filed as the Debtors' 4, with the changes that
22 we have thus far placed on the record.
23         That leaves us with a -- turning to Debtors' --
24 turning to Debtors' 28 and 29, in terms of the objections that
25 are left, that leaves us with objections from various set-off

Omnibus Hearing                                                   64

1   and lien claimants, the vast majority of which have been
2   resolved based on the treatment that we propose here, and
3   others who still want to address the Court. And I'm going to
4   ask us to get to those in a few moments, but I want to address
5   any other objections first.
6         And I think the only other objection that has not been
7   fully resolved, other than getting off into the set-off bucket,
8   if you will, or basket, is that of Bank of America, as it
9   relates to their interest as an aircraft lessor. And in that
10  respect, they had filed an objection that wanted to make it
11  clear that the interest being -- the interests that were being
12  given here today did not negatively implicate the aircraft
13  leases and certain personalty and other matters relating to
14  that.
15        And, in fact, there is language in Paragraph 25 of the
16  order, Page 54 of Debtors' 4, that is quite explicit in that
17  regard, and I think frankly stated -- Your Honor stated it at
18  the first day hearing, in terms of Your Honor's expectation
19  with aircraft leases and property that wasn't necessarily
20  property of the estate. But even beyond that, it is now
21  explicit as to personal property that's subject to aircraft
22  leases and so forth.
23        I believe that that language as it stands is
24  acceptable to Bank of America. But I believe Mr. Mears is on
25  the phone, and there were other things that they wanted the

1  debtors to do beyond this language that I believe Mr. Mears
2  still wanted to address the Court. We simply couldn't
3  accommodate the needs.
4          THE COURT: Okay.
5          MR. MEARS: (Via telephone) Your Honor, thank you very
6  much, this is Pat Mears.
7          We have had long conversations with the debtors
8  counsel. We've really narrowed the issues down to three:
9          Number one, there are -- there is some ancillary
10 property that includes cash collateral generated by the
11 aircraft that we are asking that it not be subject to a lien,
12 and I think that's the understanding. We have asked that --
13         THE COURT: How does the aircraft generate cash
14 collateral --
15         MR. MEARS: Your Honor, there are --
16         THE COURT: -- is it leased out?
17         MR. MEARS: There are charter agreements --
18         THE COURT: Okay.
19         MR. MEARS: -- and there are revenues payable under
20 the charter agreements. There potentially are subleases,
21 although I'm not sure that there are any in existence right
22 now, but the charter agreements are pledged to us as all of the
23 revenues therefrom.
24         THE COURT: Okay.
25         MR. MEARS: So what we'd ask is that -- and we

05-44481-rdd    Doc 1269-2    Filed 11/25/05    Entered 11/25/05 17:08:06    Exhibit 2
Pg 5 of 9

Omnibus Hearing                                                66

1  understand that the debtors are using whatever cash collateral
2  that is, generated by the -- that's generated by the charter
3  agreements.  We just want to make clear, we've asked for the
4  insertion of a phrase in Paragraph 25 that I've sent on to Mr.
5  Butler and also to Davis Polk, just to make sure that the liens
6  do not cover property that is subject to the lease agreements
7  or as security for.  I haven't heard them on that, but I --
8  based on what Mr. Butler says, I think that tells us that he's
9  willing to do that.
10         The second item is we are objecting to the
11 subordination of our 365(b)(10) claim.
12         THE COURT:  Can we take them one -- well, let's take
13 them one at a time, Mr. Mears.
14         MR. MEARS:  Okay.
15         MR. BUTLER:  I think the issue -- and I know counsel
16 for the DIP lenders has risen as well.  I think the issues that
17 the debtors have and we believe that this already is covered by
18 the order, is that as it relates to this particular issue --
19 and I think I have it right -- that if, in fact, there's a
20 valid lien in that particular property, then it is not
21 negatively impacted by this order.
22         THE COURT:  Right.  That's covered by the general
23 language granting the DIP lender a lien.
24         MR. BUTLER:  And therefore, we thought nothing else
25 was needed, and one of the things --

1    THE COURT:  What kind of existing liens are not primed
2  if they were -- as laid out in the graph?  I forget what it is?
3                      (Counsel confer)
4    MR. BUTLER:  There are about seventeen, I believe,
5  Your Honor.
6    UNIDENTIFIED ATTORNEY:  Seventeen.
7    MS. BEDELL:  Sixteen.
8    MR. BUTLER:  7(c), right?  Seven Charlie?
9    MR. MEARS:  Your Honor, on that point -- and, you
10 know, if it's necessary to file a motion for adequate
11 protection, we will, but we would just ask that continuing
12 liens granted on what I'm calling "ancillary property" --
13   THE COURT:  No, the debtors can't use -- can't use
14 collateral without your consent, so -- or showing of adequate
15 protection.  So you're stating to them now you don't consent.
16   MR. MEARS:  That's correct.
17   THE COURT:  So the ball is in your court now, at this
18 point.
19   MR. MEARS:  Okay.  That's fair enough, Your Honor.
20 Thank you.
21   THE COURT:  Okay.
22   MR. MEARS:  Then the only other point is that we are
23 getting to the subordination of our 365(d)(10) claims, any
24 other claims that might be granted pursuant to this order.  The
25 debtor is getting use of the planes during the Chapter 11 case.

1   There is an elevated test given to 3659(d)(10) claims, and we
2   wish to have that (indiscernible) --
3           THE COURT: Well, are these secured -- I thought these
4   were secured -- or are these true leases?
5           MR. MEARS: These are true leases. But as security
6   for the lease obligations, there is a small -- a small part of
7   what I call "collateral," the charter remnants, the
8   (indiscernible) agreements, subleases that are separately
9   pledged to secure the lease, the true lease obligations.
10          MR. BUTLER: Your Honor, the debtors' problem with the
11  language Mr. Mears client wanted him to pursue here is that it
12  really attempted to have the debtors agree with lots of things:
13  That these are true leases; that this part is secure; that this
14  -- and the relationships between them, and we weren't prepared,
15  simply, to do that. We understand Your Honor's admonition
16  about cash collateral, but I don't believe that this order is
17  drafted -- if Mr. Mears's client has that which he claims that
18  they have -- that they are negatively impacted.
19          MR. MEARS: No, I -- just to respond, Your Honor, I am
20  not asking for -- I understand Mr. Butler's point. I guess all
21  I'm asking is that, to the extent that we do have true
22  365(d)(10) claims, then those not be subordinated into any
23  other claims that are -- that would arise from this order.
24                    (Counsel confer)
25          THE COURT: You know, Mr. Mears, was that a part of

Omnibus Hearing 69

1  your objection? I have to confess, this is -- I have to rely
2  on -- because I didn't look at this issue until about ten
3  seconds ago.
4         MR. BUTLER: Well, I've never heard that raised by Mr.
5  Mears in your objection. Was it raised?
6         MR. MEARS: I think it was raised in discussions.
7         MR. BUTLER: Well --
8         MR. MEARS: If we had any objection, certainly in
9  discussions with Mr. (indiscernible) on this.
10        MR. BUTLER: Because I think what you're asking for is
11 not acceptable, probably, to anybody in the courtroom, in terms
12 of the lenders or anybody else. And, Your Honor, he didn't
13 raise it in any objection before the Court.
14        THE COURT: Well, I don't -- I guess I still don't
15 understand the objection. This isn't as to the specific
16 assignment that you've been given of a lease, because that
17 would be the debtors' -- that wouldn't be covered by 365(10) --
18        MR. MEARS: (Indiscernible.)
19        THE COURT: You're talking about in the event that
20 these leases are --
21        MR. MEARS: No, we are -- Your Honor, we believe these
22 are true leases, and the lease obligations are monthly lease
23 payments that are due the Bank of America by the debtor. And
24 under 365(d)(10), a performance of lease obligations, at least
25 as to the sixty-day grace period, are given such a priority.

1   The DIP order does provide for subordination of
2   administrative expenses.  We are asking that our 365(d)(10)
3   claims, and to the extent that they are made -- this is based
4   on a true lease, would not be subordinated.
5           MR. BUTLER:  Your Honor, I don't know if this is a
6   subordination.  Mr. Mears is saying as though we're giving a
7   super-priority claim to the DIP lenders, and the answer is:
8   You bet.  And it is a super-priority, it's intended to be;
9   they're not going to give it up for this or any other kind of
10  administrative claim outside of what's said in the order.  And
11  this, you know, objection is untimely, among other things, Your
12  Honor.
13          THE COURT:  Yeah.  I'm going to deny this objection
14  for that reason, unless you're prepared to have a whole trial
15  today on the 364(c), which I think highlights the untimeliness
16  of the objection.  This isn't an issue of adequate protection;
17  this is just whether the debtors could get financing on a
18  simple non-priming, non-super-priority basis.
19          MR. MEARS:  Other than that, all of our other
20  objections are withdrawn.
21          THE COURT:  Okay.  All right.
22          MR. BUTLER:  Well, I think -- and just so I ask in the
23  courtroom on the phone, to see if I have missed anyone.  Other
24  than set-off claimants, is there any other party who has an
25  objection to this matter?