Pg 1 of 6

FARBER, SEGALL & PAPPALARDO
200 East Post Road
White Plains, NY 10601
Eugene I. Farber, Esq.
(914) 761-9400
e-mail: efarber747@aol.com

HONIGMAN MILLER SCHWARTZ AND
COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
Judy B. Calton (P38733)
(313) 465-7344
e-mail: jcalton@honigman.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
---------------------------------------------------------------x
                                                            :
      In re                                          :        Chapter 11
                                                            :
**DELPHI CORPORATION et al.,**                              :        Case No. 05-44481 (RDD)
                                                            :
      Debtors.                                       :        (Jointly Administered)
                                                            :
---------------------------------------------------------------x

**OBJECTION OF DBM TECHNOLOGIES, LLC TO**
**SUPPLIER AGREEMENT ASSUMPTION PROCEDURES MOTION**

      DBM Technologies, LLC ("DBM"), by its attorneys Honigman Miller Schwartz and Cohn LLP and Farber, Segall & Pappalardo, for its Objection to Supplier Agreement Assumption Procedures Motion states:

      1.     DBM is a supplier to Debtor Delphi Corporation of ducts and resonators ("Component Parts"). As of the commencement of Debtor's bankruptcy case, Debtor owed

DBM $301,519.70 under executory purchase orders for its purchases of Component Parts. DBM has filed the pending Motion by DBM Technologies, LLC for Relief from Stay to Effect Setoff.

2. Debtors Delphi Corporation and its debtor affiliates ("Debtor") in their Motion For An Order Under 11 U.S.C. §§363(b) and 365(a) and Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (the "Supplier Agreement Assumption Procedures Motion")[1] to approve procedures whereby Delphi can negotiate and enter into assumptions of executory supplier agreements without further motions and court orders.

3. DBM objects to the Supplier Agreement Assumption Procedures Motion to the extent it seeks to bind nondebtor contracting parties (each a "Supplier") to unfavorable assumption agreements without the affirmative knowing consent of the Supplier.[2]

4. The Supplier Agreement Assumption Procedures Motion seeks authority for Debtors to negotiate Assumption Agreements with nondebtor contracting parties without further notice, hearing or court order, which Assumption Agreements are unfavorable to the nondebtor contracting parties compared to the rights granted them by the Bankruptcy Code. For example:

    a. Debtors' proposed cure would be only 75% of the default, to be paid over six calendar quarters, with the cure payments terminating if Debtors later exercise their rights to terminate the assumed contracts at will. This provision is unfavorable to the Supplier because a nondebtor contracting party is entitled, as a condition of assumption, to a cure or prompt cure of <u>all</u> defaults. 11 U.S.C. §365(b)(1)(A).

---

[1] Capitalized terms not defined in this Objection have the meaning as defined in the Supplier Agreement Assumption Procedures Motion.

[2] Supplier does not object to the Supplier Agreement Assumption Procedures Motion to the extent the Debtors are seeking "pre-approval" of consensual arrangements to assume executory contracts that fall within the terms specified in the motion.

2

      b.      The Supplier must agree to extend the purchase order for two years beyond its expiration on existing payment and other terms. Delphi's right to assume an executory contract is limited to the terms of the contract. In re Cellnet Data Systems, Inc., 327 F.3d 242, 249 (3rd Cir. 2003).

      c.      The Supplier waives the right to seek additional adequate assurance in the future and agrees that any claim for breach of the assumed executory contract would be an unsecured claim. Under applicable law, a party to an assumed contract cannot be required to give up these rights and post-assumption breaches are treated as administrative expense claims. In re Klein Sleep Products, Inc., 78 F.3d 18, 27-28 (2d Cir. 1996).

      d.      Preference claims would not automatically be waived as a result of the assumption, but be waived only in Debtors' sole discretion. As a matter of law, upon assumption of an executory contract, the Supplier has not received a preference because it would have received the prepetition payments as part of the cure. In re Kiwi Int'l Air Lines, Inc., 344 F.3d 311 (3d Cir. 2003).

      e.      In the event the Supplier breaches the contract after assumption, in addition to being liable for damages for the breach, the Supplier would be liable as additional damages to return the cure payments and lose the waiver of preference claims. These are additional damage remedies not in the existing executory contract.

5.      If a Supplier, with full notice, voluntarily chooses to agree to the assumption of its executory contract on Debtors' terms, that is acceptable. Debtors, however, seek to bind Suppliers to these unfavorable assumption terms merely if the Supplier ships goods to Debtors

3

and Debtors send the first quarterly cure payment to the Supplier, regardless of whether the Supplier has actual notice of the Assumption Agreement and actually consents to it.

6. The Supplier Agreement Assumption Procedures Motion provides in pertinent part:

> 23. To ensure that the Covered Suppliers that have their Assumable Agreements assumed comply with the Procedures and the Required Minimum Provisions, the Debtors propose that a letter substantially in the form of the letter attached hereto as <u>Exhibit A</u> (each such letter, an "Assumption Agreement") be sent to such Covered Suppliers along with a copy of the order granting this Motion; <u>provided</u>, <u>however</u>, that the Debtors further propose that **such Covered Suppliers be conclusively deemed to consent to and be irrevocably bound by the Procedures and each of the Required Minimum Provisions, notwithstanding its failure to enter into an Assumption Agreement, upon its first shipment of Goods to the Debtors following the Assumption Date for the relevant assumed Assumable Agreement and payment of the first installment of Cure.** The Debtors propose that the Assumption Agreements include, but not be limited to, the Required Minimum Provisions outlined above (emphasis added).

7. The proposed Order Under 11 U.S.C. §§363(d) and 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements similarly provides in pertinent part:

> 10. The Debtors are hereby authorized, but not directed to provide an Assumption Agreement substantially in the form of the letter attached hereto as <u>Exhibit 1</u> to each Covered Supplier whose Assumable Agreement(s) are being assumed pursuant to the terms hereof along with a copy of the order granting this Motion; <u>provided</u>, <u>however</u>, that **a Covered Supplier will be conclusively deemed to consent to and be irrevocably bound by the terms of this Order, notwithstanding its failure to enter into an Assumption Agreement, upon its first shipment of Goods to the Debtors following the Assumption Date for the relevant assumed Assumable Agreement and payment of the first installment of Cure.** (emphasis added)

8. Thus, if the Supplier Agreement Assumption Procedures Motion were granted, a Covered Supplier would be bound by an Assumption Agreement solely by shipping pursuant to

4

its executory contract with Debtor and Debtors' sending the Supplier a payment of 12.50% of the default (one-sixth of 75% of the default amount), regardless of whether Delphi actually served the Supplier with the proposed Assumption Agreement, regardless of whether the proposed Assumption Agreement was received by the person entitled to notice at the Supplier or whether the Supplier actually agreed to the Assumption Agreement.

9.      The proposed deemed acceptance by continued shipment of goods is unfair to the Supplier. The Supplier, as the nondebtor contracting party, could be liable in damages to the Debtors if it breached its executory contracts by refusing to ship pursuant to the contract. Thus, to avoid a deemed acceptance, the Supplier would have to breach the executory contract and/or obtain emergency relief from the automatic stay to terminate the executory contract. In re Charlie Auto Sales, Inc., 336 F.3d 34, 36 (1st Cir. 2003); In re Computer Communications, Inc., 824 F.2d 725 (9th Cir. 1987).

10.     The proposed deemed acceptance would be particularly unfair to DBM, which has the right to recover 100% of the default amount by reason of setoff regardless of whether its executory contract is assumed or rejected.

11.     Moreover, Debtors are impermissibly proposing to bind Suppliers to Assumption Agreements even if they are not served or not properly served. Under Fed. R. Bankr. P. 6006(a), a proceeding to assume an executory contract is governed by Fed. R. Bankr. P. 9014. Rule 9014(b) requires that a motion to assume be served in the manner proved for service of a summons and complaint by Fed.R. Bankr. P. 7004. While service by first class mail is provided by Rule 7004(b), the service must be to the attention of an officer, managing or general agent, or agent authorized by law to accept service. Rule 7004(b)(3), (7). Debtors are seeking to bind Suppliers who are not even mailed Assumption Agreements, and also to bind Suppliers to

5

Assumption Agreements mailed to the Supplier's sales staff with which Debtors normally deal as opposed to persons properly authorized to accept service. Moreover, Debtors' proposed procedure would totally avoid service on the Supplier's counsel of record.

Wherefore, DBM requests that approval of the Supplier Agreement Assumption Procedures Motion be denied to the extent it seeks to bind Suppliers who do not sign Assumption Agreements, and for such further relief as is proper and just.

Respectfully submitted,

HONIGMAN MILLER SCHWARTZ AND COHN LLP

By: /s/ Judy B. Calton _____
Judy B. Calton (P38733)
2290 First National Building
660 Woodward Avenue
Detroit, MI 48226-3506
(313) 465-7344
e-mail: jcalton@honigman.com

and

Eugene I. Farber, Esq.
FARBER, SEGALL & PAPPALARDO
200 East Post Road
White Plains, NY 10601
(914) 761-9400
e-mail: efarber747@aol.com

Dated: November 23, 2005

DETROIT.2015112.1