BARNES & THORNBURG LLP
Attorneys for Bank of America, N.A.
300 Ottawa Avenue, NW, Suite 500
Grand Rapids, Michigan 49503
Telephone: (616) 742-3930
Facsimile: (616) 742-3999

Patrick E. Mears (PM-6473)
Telephone: (616) 742-3936
Email: pmears@btlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re | ) | Chapter 11 Case |
| | ) | |
| DELPHI CORPORATION, *et al*. | ) | No. 05-44481 |
| | ) | |
| Debtors. | ) | |

**RESPONSE OF BANK OF AMERICA, N.A. TO LIMITED OBJECTION
OF PENTASTAR AVIATION, LLC TO MOTION FOR ADEQUATE
PROTECTION AND FOR RELIEF FROM AUTOMATIC STAY**

Bank of America, N.A. ("Bank of America"), by and through its undersigned counsel, for its Response to the Limited Objection of Pentastar Aviation, LLC (the "Pentastar Objection") to Bank of America's pending Motion for Adequate Protection of Security Interests in Cash Collateral and for Relief from the Automatic Stay with Respect to Cash Collateral dated November 11, 2005 (the "Adequate Protection Motion"), states as follows:

1. On November 11, 2005, Bank of America filed and served its Adequate Protection Motion, the preliminary hearing on which is scheduled for November 29, 2005, at 10:00 a.m. in these jointly administered Chapter 11 cases.

2. In the Adequate Protection Motion, Bank of America is requesting, *inter alia*, that this Court enter an order granting adequate protection to certain "ancillary" personal

property that serves as collateral for all obligations due and owing by one of the Chapter 11 debtors herein, Delphi Automotive Systems Human Resources, LLC ("Delphi HR") under two leases of aircraft presently being used by Delphi HR.  These obligations are unconditionally guaranteed by Delphi Corporation and by Delphi Automotive Systems, LLC (collectively, the "Delphi Guarantors").

3. As described in more detail in the Adequate Protection Motion, this ancillary property includes, but is not limited to, any management agreements, charter agreements and subleases involving the leased aircraft and all revenues generated therefrom.  These revenues constitute "cash collateral" within the meaning of section 361(a) of the Federal Bankruptcy Code (the "Aircraft Cash Collateral").

4. As also described in the Adequate Protection Motion, the leased aircraft are presently subject to (i) a management agreement (the "Management Agreement") between Delphi HR and Pentastar Aviation, LLC ("Pentastar"); and (ii) two charter agreements (the "Charter Agreements") between Delphi HR and Automotive Air Charter, Inc. ("Automotive Air").  Upon information and belief, Automotive Air is a legal entity separate and distinct from Pentastar.  Attached hereto as Exhibit A is a copy of the Management Agreement dated June 1, 2002, recently provided by Pentastar to Bank of America.  Attached hereto as Exhibit B are copies of the two Charter Agreements recently provided by Automotive Air to Bank of America.

5. Upon information and belief, in accordance with the terms of the Management Agreement, Pentastar manages, maintains and hangars the two leased aircraft under the Management Agreement and is paid by Delphi HR for these services.  Upon further informaton and belief, in accordance with the terms of the Charter Agreements, Automotive Air charters the leased aircraft to third parties and executives of the Chapter 11 debtors and collects revenue for

2

charter services from these parties, which Automotive Air is then obligated to remit to Delphi HR less a percentage of the charter fee.

6. As described in detail in the Adequate Protection Motion, Bank of America holds a valid, perfected, enforceable and first priority security interest in, *inter alia*, all revenues generated by the Charter Agreements, which constitute a portion of the Aircraft Cash Collateral. This security interest was granted pursuant to certain "Assignments of Related Collateral" described in Paragraphs 19 and 34 of the Adequate Protection Motion, copies of which assignments are attached as Exhibit B to the Adequate Protection Motion. These assignments were executed on behalf of Delphi HR, Bank of America, Pentastar, Automotive Air and the two Delphi Guarantors as parties thereto.

7. Paragraph 2 of the Assignments of Related Collateral prohibit the amendment, modification, waiver, supplement or other change to the Charter Agreements "in any way whatsoever without the prior written consent of [Bank of America], which consent will not be unreasonably withheld."

8. On or about August 25, 2005, less than two (2) months prior to the commencement of these Chapter 11 cases, Delphi HR, Delphi Corporation, and Pentastar (allegedly acting for itself and its "subsidiary," Automotive Air), executed a certain Agreement dated such date that purports to amend and modify, to the prejudice of Bank of America, the Management Agreement and the Charter Agreements (the "Unauthorized Agreement"). A copy of the Unauthorized Agreement is attached hereto as <u>Exhibit C</u>.

9. Specifically, the Unauthorized Agreement improperly purports to permit the offset and recoupment of amounts due by Delphi HR to Pentastar under the Management Agreement against sums due by Automotive Air, a separate entity, to Delphi HR under the

3

Charter Agreements notwithstanding a lack of mutuality and a single transaction. *See In re Genuity, Inc.*, 323 B.R. 79, 83 (Bankr. S.D.N.Y. 2005) (in order for setoff to be exercised, mutual obligations must exist); *In re Trace International Holdings, Inc.*, 289 B.R. 548, 562 (Bankr. S.D.N.Y. 2003) (recoupment limited to situations in which debts arise from single integrated transaction). Paragraph 3 of the Unauthorized Agreement, which seeks to expand Pentastar and Automotive Air setoff and recoupment rights to the detriment of Bank of America's security interests in the Aircraft Cash Collateral, reads as follows:

> 3. In addition to any right of setoff or recoupment provided by law, all amounts due Delphi (including without limitation [Delphi HR] and any other subsidiaries or affiliates shall be considered net of indebtedness of Delphi and/or any of its subsidiaries or affiliates to Company [defined collectively as Pentastar and Automotive Air] and its affiliates and/or subsidiaries and Company and/or its affiliates and subsidiaries may setoff against, or to recoup from, any amounts due to Delphi and/or its affiliates and subsidiaries from Company and/or its affiliates and subsidiaries whenever arising and however evidenced or arising. Company may defer payments due to Delphi if any obligation due to Delphi and/or its subsidiaries or affiliates is disputed, contingent or unliquidated until the amount due is resolved.

10. Bank of America had no prior notice or knowledge of the Unauthorized Agreement and did not consent to the execution of the Unauthorized Agreement in violation of the covenants of Delphi HR, Pentastar and Automotive Air under Paragraph 2 of the Assignments of Related Collateral executed by those parties. In fact, the confidentiality provision contained in Paragraph 4 of the Unauthorized Agreement appears aimed at keeping the terms of the Unauthorized Agreement secret from Bank of America, which learned of the existence of such agreement only after the Motion for Adequate Protection was filed and served. Needless to say, Bank of America objects to the Unauthorized Agreement.

11. The Pentastar Objection states that any order entered by this Court granting adequate protection to Bank of America should "not attempt to grant rights to Bank of America

senior to the rights of Pentastar," although it fails to detail any such alleged rights of Pentastar. In fact, the Pentastar Objection proposes certain language to be included in any such order that would subordinate, or attempt to subordinate, the rights of Bank of America to the improperly granted rights to Pentastar and Automotive Air under the Unauthorized Agreement, *viz.*, the granting of setoff and recoupment rights without mutuality and without the existence of a single transaction.

12.    In short, if this impermissible attempt by Pentastar and Automotive Air to expand any setoff or recoupment rights they currently have is permitted by this Court, Bank of America's security interests in the Aircraft Cash Collateral may be rendered valueless.

13.    The language proposed by Pentastar should not be incorporated in any order entered by this Court, and the Pentastar Objection, to the extent that it is founded upon the Unauthorized Agreement, should be disregarded in its entirety.

WHEREFORE, Bank of America, N.A. requests that this Court overrule the Pentastar Objection and grant such other and further relief as may be just and proper under the circumstances.

Dated:  November 27, 2005

BARNES & THORNBURG LLP
Counsel to Bank of America, N.A.


By:    /s/Patrick E. Mears
        Patrick E. Mears (PM-6473)
Business Address:
300 Ottawa Avenue, NW
Suite 500
Grand Rapids, Michigan  49503
Telephone:  (616) 742-3936
Facsimile:  (616) 742-3999
Email:  pmears@btlaw.com

GRDS01 PMEARS 325200v1

5