UNITED STATES BANKRUPTCY COURT                Hearing Date: November 29, 2005
SOUTHERN DISTRICT OF NEW YORK                 Hearing Time: 10:00 a.m.
------------------------------------------------------
In re:                                              :      Chapter 11
                                                    :
DELPHI CORP., *et al.*,                             :      Case No. 05-44481 (RDD)
                                                    :
                                       Debtors.     :      (jointly administrated)
------------------------------------------------------ x

### UNITED STATES TRUSTEE'S OBJECTION TO DEBTORS' MOTION FOR ORDER UNDER §§ 105 AND 363 AUTHORIZING THE DEBTORS TO IMPLEMENT A KEY EMPLOYEE COMPENSATION PROGRAM

Deirdre A. Martini, United States Trustee for the Southern District of New York (the "United States Trustee"), hereby files her objection (the "Objection") to the Debtors' Motion for Order under §§ 105 and 363 Authorizing the Debtors to Implement a Key Employee Compensation Program (the "KECP Motion") on the following grounds:

### FACTS

1.      The Debtors seek approval of its proposed "Key Employee Compensation Program" ("KECP"), which would apply to approximately 486 executives (the "Covered Employees"). (Motion, at 9, ¶ 20.)

2.      There are four components of the KECP: the Annual Incentive Plan, the Emergence Bonus Plan, the Pre-Petition Severance Program, and the CEO Compensation Program. (Motion, Exhibit "1," at 2.)

3.      Under the Annual Incentive Plan, Covered Employees would be eligible for bonuses, based on the Debtors' performance, every six months until the Debtors emerge from bankruptcy. (Motion, Exhibit "1," at 10.) The six month cost of the Annual Incentive Program would be $21.5 million. (*Id.*)

4.      Under the Emergence Bonus Plan, the Covered Employees would receive lump sum cash payments totaling approximately $88 million, (Motion, Exhibit "1," at 12), and restricted stock and stock options, of about 10% of the Debtors' equity, valued at approximately $300 million.  (*Id*. at 23.)

5.      The CEO, Steve Miller, would not participate in the KECP, but the Debtors' board of directors would reserve the right to "compensate Mr. Miller as it deems appropriate at the end of his period of service as CEO" under the CEO Compensation Program.  (Motion, Exhibit "1," at 27.)

6.      The Pre-Petition Severance Program provides severance packages for certain United States Executives if their employment is involuntarily terminated (except for cause) or terminated after a change in control.  (Motion, at 15, ¶ 36.)

7.      In 2004, the Debtors had net sales of $28.6 billion, and during the first half of 2005, the net sales were $13.9 billion, or $1 billion less than the same period in 2004.  (Motion, at 5, ¶ 10.)  The Debtors have suffered losses every year since the spin-off from GM in 1999, except for the year 2002.  (Affidavit of Robert S. Miller, Jr., at 11, ¶ 14.)

8.      The Debtors filed the cases to, among other reasons, "achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements . . . ."  (Affidavit of Robert S. Miller, Jr., at 18, ¶ 27.)  The Debtors state that their financial situation "raises substantial concerns for all employees, including downsizing and layoffs . . .," possibility of sale or merger, no equity-based long term incentive opportunity for executives, [and] potential reduction in retirement benefits." (Motion, Exhibit "1," at 4.)

9.      As business justification for the KECP, the Debtors allege that executive pay at the Debtors is substantially below market, executives are more likely to switch jobs due below market salaries, and executive turnover increased by 75% in the twelve months prior to bankruptcy. (Motion, Exhibit "1," at 6.)

## ARGUMENT

**A.      The Debtors Have Not Presented Sufficient Evidence that the KECP Is an Exercise of the Debtors' Sound Business Judgment.**

10.     The use of estate property outside of the ordinary course of business under § 363(b) "must be based upon the sound business judgment of the debtor." *In re G.S. Distribution*, 331 B.R. 552, 559 (Bankr. S.D.N.Y. 2005). The debtor must also show that the use outside the ordinary course is in the best interests of the estate. *Id*. at 560. When assessing whether the debtor used proper business judgment, the court "sits as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the trustee or debtor-in-possession, not . . . as the arbiter of disputes between creditors and the estate." *In re Orion Pictures*, 4 F.3d 1095, 1099 (2d Cir. 1993).

11.     "Bankruptcy courts will approve key employee retention plans if the debtor has used proper business judgment in formulating the plan and the court finds the program is fair and reasonable." *In re Aerovox, Inc.*, 269 B.R. 74, 80 (Bankr. D. Mass 2001) (citation omitted). "The determination of whether to approve such plans turns on the facts and circumstances of each particular case." *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 154 (D. Del. 1999). Factors in that determination include whether the retention plan will stabilize an unacceptable turnover rate, boost employee morale, and retain key employees essential to the reorganization. *Id*. at 155.

12.     The Debtors have presented insufficient evidence in support of their allegation that

the KECP is based on sound business judgment.  Exhibit "1" to the Motion, which purports to justify the KECP, is little more than a marketing tool.

13.    In Exhibit "1", the Debtors make a number of broad conclusions unsupported by evidence.  For example, they state that the "actual pay [of executives] for 2005 will be substantially less than market" and that the Debtors executives are more likely to switch jobs because of the shortfall.  However, they provide no statistics, reports or other figures to support these assertions.  (Exhibit "1," at 6.)  The Debtors also maintain that executive turnover increased by 75% in the twelve months before bankruptcy, but they do not reveal which executives left and why.  (Exhibit "1," at 6.)

14.    The Debtors cite KECPs in other chapter 11 cases without showing the relevance of those cases to the facts and circumstances of this case.  (*See* Exhibit "1," at 14-15&17.)

15.    In addition, the Debtors state that the proposed KECP "compares favorably with the cost incurred in prior years by Delphi to motivate and retain its executive group" but fail to point out the relevance of a  retention plan for executives who led a company that was unprofitable for most of the years of its independent existence.  (*See* Exhibit "1," at 16.)

## B.    The KECP Is Unfair, Unreasonable and Premature.

16.    The outcome of these cases will have a profound nationwide economic impact.  Because of the severe hardship that will inevitably fall on the rank and file workers in the factories, and the recent change in the law, it is patently unfair and unreasonable for the Debtors to seek to grant executives large bonuses and equity shares at the expense of the other employees.[1/]  At the very least, any success in reorganizing the Debtors should be shared by all employees.

---

[1/]    In this regard, the United States Trustee concurs with the points raised in paragraph 5 at page 3 and section B of the objection of Wilmington Trust Company, as indenture trustee.

17.    The Debtors filed the KECP Motion on the first day of the cases.  They have not filed schedules or statements of financial affairs.  The first Monthly Operating Reports are not due until December 31, 2005.  The § 341 meeting is scheduled for February 3, 2006.  At the very least, the Debtors should operate for several months in bankruptcy, implement proposed cost-cutting measures, assess the Debtors' financial future, and then determine what, if any, KECP is appropriate.

WHEREFORE, the United States Trustee requests that the Court sustain her objections, deny the KECP Motion, and grant other relief as is just.

Dated: New York, NY
       November 28, 2005

                                        Respectfully Submitted,

                                        DEIRDRE A. MARTINI
                                        UNITED STATES TRUSTEE

                            By:    /s/ Alicia M. Leonhard
                                   Alicia M. Leonhard (AML-6060)
                                   Attorney

                                   33 Whitehall Street
                                   21st Floor
                                   New York, New York 10004-2112
                                   Tel. No. (212) 510-0500
                                   Fax. No. (212) 668-2255