BARNES & THORNBURG LLP
Attorneys for Bank of America, N.A.
300 Ottawa Avenue, NW, Suite 500
Grand Rapids, Michigan  49503
Telephone:  (616) 742-3930
Facsimile:  (616) 742-3999

Patrick E. Mears (PM-6473)
Telephone:  (616) 742-3936
Email:  pmears@btlaw.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 Case |
| DELPHI CORPORATION, *et al*. | No. 05-44481 |
| Debtors. | |

### RESPONSE OF BANK OF AMERICA, N.A. TO OBJECTION OF CHAPTER 11 DEBTORS TO MOTION FOR ADEQUATE PROTECTION AND FOR RELIEF FROM THE AUTOMATIC STAY

Bank of America, N.A. ("Bank of America"), by and through its undersigned counsel, for its Response to the Objection of certain Chapter 11 Debtors (the "Debtors' Objection") to Bank of America's pending Motion for Adequate Protection of Security Interests in Cash Collateral and for Relief from the Automatic Stay with Respect to Cash Collateral dated November 11, 2005 (the "Adequate Protection Motion"), states as follows:

1.     On November 11, 2005, Bank of America filed and served its Adequate Protection Motion, the preliminary hearing on which is scheduled for November 29, 2005, at 10:00 a.m. in these jointly administered Chapter 11 cases.  Counsel to Debtors and counsel to Bank of America have agreed that the preliminary hearing will involve oral argument only.  See Exhibit A attached hereto which evidences this agreement.

2. In the Adequate Protection Motion, Bank of America is requesting, *inter alia*, that this Court enter an order granting adequate protection to Bank of America's security interests in certain "ancillary" personal property serving as collateral for all obligations due and owing by one of the Chapter 11 debtors herein, Delphi Automotive Systems Human Resources, LLC ("Delphi HR"), under two leases of aircraft. These obligations are unconditionally guaranteed by Delphi Corporation and by Delphi Automotive Systems, LLC (collectively, the "Delphi Guarantors"). Also in the Adequate Protection Motion, Bank of America is requesting relief from the automatic stay provisions of the Bankruptcy Code to permit the turnover to Bank of America of all revenues derived from charter and other agreements, which agreements and revenues are subject to the valid, perfected, enforceable and first priority security interest of Bank of America.

3. On November 25, 2005, Delphi HR and the Delphi Guarantors filed the Debtors' Objection. The following are Bank of America's responses thereto.

4. As a preliminary matter, the Debtors argue that the relief requested in the Adequate Motion was denied at the October 27, 2005 hearing on the Debtors' motion for approval of debtor in possession financing (the "DIP Financing Motion"), to which motion Bank of America objected on various grounds. At the hearing on the DIP Motion, this Court did not rule on whether Bank of America was entitled to replacement liens on its cash collateral but reserved decision for another day on a subsequent motion (which is presently before this Court). The Transcript of the October 27, 2005 hearing at page 67 contains the following relevant language:

> MR. MEARS: Your honor, on that point -- and you know, if its necessary to file a motion for adequate protection, we will, but we would just ask that continuing liens granted on what I'm calling 'ancillary property' --

>THE COURT:  No, the debtors can't -- can't use collateral without your consent, so -- or showing of adequate protection.  So you're stating to them now you don't consent.
>
>MR. MEARS:  That's correct.
>
>THE COURT:  *So the ball is in your court now, at this point.*
>
>MR. MEARS:  Okay.  That's fair enough, your Honor.  Thank you.

(Emphasis supplied).

5. A major dispute between the Debtors and Bank of America concerns Bank of America's request for the grant of replacement liens in (i) the various agreements that are the subject of Bank of America's security interests, viz., (x) the Management Agreement between Pentastar Aviation, LLC and Delphi HR; (y) the two Charter Agreements between Automotive Aviation, Inc.; and (z) any subleases of the aircraft; and (ii) any revenues generated by these agreements.  The Debtors have flatly refused to grant any such replacement liens to Bank of America, which refusal has caused Bank of America to proceed with the preliminary hearing.  This refusal was made even though, as the Debtors concede, neither the DIP lenders nor any other entity hold a security interest or other lien in this ancillary property.  (*See* Debtors' Objection at ¶ 5.)

6. It is evident that, because of the subordination of Bank of America's administrative expense claims, Bank of America may suffer losses in the event that these replacement liens are not granted by this Court.  If Delphi HR rejects the Charter Agreements and enters into similar agreements with another air carrier, then Bank of America's prepetition security interests may arguably not extend to the new agreements and charter revenues derived therefrom in the absence of replacement liens.  If Delphi HR thereafter rejects the leases and

Bank of America's disposition of the leased property results in a deficiency claim, these newly generated revenues might be deemed free and clear from Bank of America's security interests.

      7.     Bank of America believes that the value of its interests in the two aircraft and the ancillary property, including the charter revenue, is depreciating and will be subject to an additional decline in value in the event that replacement liens and the other relief requested in the Adequate Protection Motion are not ordered by this Court. In particular, the value of Bank of America's security interest in the charter revenue diminishes in value as time passes unless those revenues are turned over to Bank of America or otherwise preserved intact subject to Bank of America's perfected and first priority security interest. Bank of America estimates that, if the leases were rejected as of December 20, 2005 and the leased aircraft were thereafter disposed of, Bank of America would suffer a multimillion dollar shortfall before recourse to the ancillary property. If necessary, Bank of America will be prepared to present evidence of this decline in value at the final hearing on the Adequate Protection Motion if this Court does not grant the relief requested at the preliminary hearing.

      8.     The following is one illustration of how this decline in value might occur during the pendency of these Chapter 11 cases. If Delphi HR rejects the Charter Agreements and enters into new charter agreements without first giving notice to Bank of America, a party in interest in this case could assert that Bank of America, in the absence of replacement liens being granted, would not hold security interests in these new agreements or any revenue generated therefrom, i.e., that the new agreements and revenues do not constitute products or proceeds of Bank of America's collateral under section 552(b)(1) of the Bankruptcy Code. In the absence of replacement liens, the value of the ancillary property could, under the foregoing circumstances, equal zero and, upon a subsequent rejection of the aircraft leases, Bank of America could be left

4

with a larger deficiency claim than what would have otherwise been the case if the aircraft leases had been terminated and the ancillary property liquidated on October 8, 2005.

9. The Debtors also argue that Bank of America is entitled to adequate protection measured only from the date upon which it is first requested. Bank of America does not dispute the fact that adequate protection should be granted prospectively. Rather, Bank of America is simply requesting that the petition date be used to determine the appropriate adequate protection necessary to preserve its interests in the Aircraft Cash Collateral and Aircraft Collateral. *See*, *e.g.*, *In re Farmer*, 257 B.R. 556, 561 (Bankr. D. Mont. 2000) (amount adequate protection payments valued as of petition date); *In re Addison Properties Ltd. P'ship*, 185 B.R. 766, 769 (Bankr. N.D. Ill. 1995) (Wedoff, B.J.) (same).

10. Finally, Bank of America reasserts its claim that the automatic stay should be terminated to authorize a turnover of the charter and other revenues by the Debtors and to apply these monies against its claims against the Debtors. No other entity holds a security interest in these revenues, which the Debtors have advised amount to approximately $80,000 per month. Neither the DIP lenders nor the Creditors Committee have objected to the Adequate Protection Motion. As previously stated, with the subordination of Bank of America's administrative expense claims, it is conceivable that Bank of America will suffer a loss upon the rejection of the aircraft leases either during the Chapter 11 phase of these cases or in the event of their conversion to Chapter 7.[1]

11. At the very least, this Court should enter an order at the preliminary hearing requiring Delphi HR (i) to establish a separate account at a financial institution acceptable to Bank of America into which all revenues derived from ancillary property must be deposited

---

[1] Paragraph 34 of the Debtors' Objection misstates the allegations contained in Paragraph 49 of the Adequate Protection Motion. In Paragraph 49, Bank of America alleges that the <u>cash</u> <u>collateral</u> is not necessary to the Debtors' effective reorganization, not the aircraft.

5

subject to the continuing, perfected and first priority security interests of Bank of America[2]; and (ii) to require Delphi HR to submit accountings to Bank of America on a monthly basis in accordance with the form attached hereto as Exhibit B, the first such accounting to be due on December 1, 2005.

Dated:   November 28, 2005

BARNES & THORNBURG LLP
Counsel to Bank of America, N.A.


By:     /s/Patrick E. Mears
          Patrick E. Mears (PM-6473)
Business Address:
300 Ottawa Avenue, NW
Suite 500
Grand Rapids, Michigan  49503
Telephone:  (616) 742-3936
Facsimile:  (616) 742-3999
Email:  pmears@btlaw.com

---

[2]   Debtors' counsel has advised Bank of America's counsel on numerous occasions that Delphi HR has established such an account.  However, Bank of America has not yet received evidence that this account exists, despite many requests for this information.

6