**<u>EXHIBIT "A"</u>**

# LAVIN, O'NEIL, RICCI, CEDRONE & DISIPIO

## ATTORNEYS AT LAW

SUITE 500
190 NORTH INDEPENDENCE MALL WEST
6TH & RACE STREETS
PHILADELPHIA, PA 19106
(215) 627-0303

FAX: (215) 627-2551
WWW.LAVIN-LAW.COM

NEW YORK OFFICE
420 LEXINGTON AVENUE
GRAYBAR BUILDING
SUITE 2900
NEW YORK, NY 10170
(212) 319-6898

FAX: (212) 319-6932

WRITER'S DIRECT DIAL NUMBER
(215) 351-1907

NEW JERSEY OFFICE
1300 ROUTE 73
SUITE 307
MT. LAUREL, NJ 08054
(856) 778-5544

FAX: (856) 793-0237

WRITER'S E-MAIL ADDRESS
EHALE@LAVIN-LAW.COM

August 29, 2005

Timothy Corriston
Connell Foley LLP
85 Livingston Avenue
Roseland, NJ 07068-3702



RE:  Buttitta v. Allied Signal, Inc., et al.
Superior Court of New Jersey
Law Division - Bergen County
Docket No. BER-009592-02

Dear Mr. Corriston:

Enclosed, please find General Motors Corporation's Supplemental Responses to Plaintiffs' First Set of Interrogatories Regarding Delphi Automotive Systems and General Motors Corporation's Supplemental Responses to Plaintiffs' Request for Production of Documents Regarding Delphi Automotive Systems.

Please contact me with any concerns.

Very truly yours,

Eric M. Hale
Paralegal

emh

**Lavin, O'Neil, Ricci, Cedrone & Disipio**
Suite 500
190 North Independence Mall West
6th Race Streets
Philadelphia, PA  19106
(215) 627-0303

By:    Frank C.B. Friestedt, Esq.
       Edward T. Finch, Esq.
       Attorneys for Defendant, General Motors Corporation

---

SUSAN M. BUTTITTA, Individually and as the
Executrix of the ESTATE OF MARK BUTTITTA,

                     Plaintiffs,

                                    SUPERIOR COURT OF NEW JERSEY
                                    LAW DIVISION – BERGEN COUNTY

v.

                                    DOCKET NO. BER-009592-02

ALLIED SIGNAL, INC., et al.,

       Defendants.

---

## GENERAL MOTORS CORPORATION'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF <u>DOCUMENTS REGARDING DELPHI AUTOMOTIVE SYSTEMS</u>

### PRELIMINARY STATEMENT

General Motors Corporation ("GM") and Delphi Automotive Systems ("Delphi")

understands plaintiffs claim decedent Mark Buttitta was exposed to asbestos containing

products while employed as a parts picker at GM warehouses from 1970-1973 and from

the clothes of his father who was also employed as a parts picker at GM warehouses

from 1942-1977.

GM Manufactured asbestos-containing brake shoes at plants operated by Inland Division (later Delco Products and Delco Chassis and Delphi Chassis Divisions) in Dayton, Ohio from 1939-1964, and at Vandalia, Ohio from 1962-1998.  GM manufactured some of the band material it used for automatic transmissions from 1965-1979 at Delco Moraine Division in Dayton, Ohio.  In December of 1998, those divisions became part of Delphi Automotive Systems, a corporate entity separate from GM.  Most if not all of all the records relating thereto were transferred to Delphi and remain under the control and ownership of Delphi.   For all relevant time periods identified by plaintiffs, Delphi was a division of GM.  There is no existing list of the documents and records transferred to Delphi.

GM has already provided responses to Plaintiffs' Request For Production of Documents and has attached them to these requests.  GM's attached responses incorporate information and documents resulting from previous corporate searches conducted by GM in responding to plaintiffs' requests.  GM incorporates its attached responses in their entirety.

These responses serve to supplement plaintiffs' requests as they relate to Delphi. GM has contacted Delphi and requested a search for any additional information, if any,  relevant to plaintiffs' requests.  All responsive documents and information located by Delphi, if any, will be provided to plaintiffs.  GM and Delphi's responses to these requests are based on information that is currently available, that may include hearsay and other forms of information that are neither reliable nor admissible in evidence.  GM and Delphi's Discovery and investigation continue.  GM and Delphi reserve the right to (1) assert all objections relating to inadmissible evidence;

(2) introduce at trial evidence that is discovered after the date of these responses; and

(3) to amend these responses without motion at any time.

LAVIN, O'NEIL, RICCI, CEDRONE & DiSIPIO

BY:_____
        Frank C.B. Friestedt, Esquire
        Edward Finch, Esquire
        Attorneys for Defendant,
        General Motors Corporation

901345

# V E R I F I C A T I O N

STATE OF MICHIGAN  )
                              ) ss.
COUNTY OF WAYNE  )

Susan Moss says that she is authorized by General Motors Corporation under applicable law

and rules to verify and does verify this

## GENERAL MOTORS CORPORATION'S SUPPLEMENTAL RESPONSES TO PLAINTIFFS' REQUEST FOR PRODUCTION OF DOCUMENTS REGARDING DELPHI AUTOMOTIVE SYSTEMS

on behalf of General Motors Corporation.

_____
                          Susan Moss
                          Authorized Agent

Subscribed and sworn to before me

this 26th day of August 2005.

_____
(Notary Public)

          MARGUERITE J. LITTLE
       Notary Public, State of Michigan
           County of Macomb
     My Commission Expires Jul. 27, 2011
  Acting in the County of _Wayne_

                                                               BUTTITTA

LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY
307 Fellowship Road
Suite 103
Mount Laurel, New Jersey 08054
(856) 778-5544

By:    Frank Friestedt, Esquire
       Edward T. Finch, Esquire
       *Attorney for Defendant, General Motors Corporation*

| | |
|---|---|
| SUSAN M. BUTTITTA, individually and as the Executrix to the ESTATE OF MARK BUTTITTA,<br><br>Plaintiff<br><br>v.<br><br>ALLIED-SIGNAL, INC., et al.,<br><br>Defendants | SUPERIOR COURT OF NEW JERSEY LAW DIVISION – BERGEN COUNTY<br><br>DOCKET NO.: BER-009592-02<br><br>RESPONSES OF GENERAL MOTORS CORPORATION TO PLAINTIFF'S FIRST SET OF INTERROGATORIES |

PRELIMINARY STATEMENT

Although Plaintiff has not identified any particular product GM manufactured or distributed that she claims are defective, GM is informed that plaintiff's claims against GM may be based on decedent's alleged exposure to asbestos from brake linings or manual transmission clutch plates. To cooperate in discovery, GM makes these responses about brake linings and manual transmission clutch plates:

## RESPONSES OF DEFENDANT GENERAL MOTORS CORPORATION TO PLAINTIFF'S FIRST SET OF INTERROGATORIES

INTERROGATORY NO. 1:

State the name, address and job position of each and every individual signing these interrogatories on behalf of the defendant.

RESPONSE TO INTERROGATORY NO. 1:

These responses to plaintiffs' interrogatories were verified in accordance with the Rules of Civil Procedure by the person signing the verification form, who was specially appointed by General Motors to verify responses on its behalf. General Motors prepared these responses with the help of its lawyers, including Grace, Genson, Cosgrove & Schirm, 444 South Flower Street, Suite 1100, Los Angeles, California 90071, and Lavin, Coleman, O'Neill, Ricci, Finarelli & Gray, Suite 1000 – Penn Mutual Tower, 510 Walnut Street, Philadelphia, Psnnsylvania 19106. To the extent this interrogatory asks for more information, GM objects because it is overly broad, vague, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 2:

Identify your custodian of Business Records.

RESPONSE TO INTERROGATORY NO. 2:

General Motors Corporation cannot respond to this interrogatory as drafted by plaintiffs. There are different custodians of record depending upon the nature of the "business" records. To the extent this interrogatory asks for additional information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 3:

State the name, address and employer and job position of each person, whether defendant's employees or otherwise, who was consulted with or who assisted in the answering of these interrogatories.

RESPONSE TO INTERROGATORY NO. 3:

See Response to Interrogatory No. 1. To the extent this interrogatory asks for additional information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 4:

When did your company commence its business?

RESPONSE TO INTERROGATORY NO. 4:

GM was incorporated on October 13, 1916.

INTERROGATORY NO. 5:

State whether you have controlled, purchased, or in any way acquired any controlling interest in any corporation or business entity which has mined, manufactured, produced, processed, compounded, sold, supplied, distributed and/or otherwise placed asbestos or asbestos containing products in the stream of commerce. If so, state:

     a.    The name and address of said corporation or business entity;

     b.    The dates you controlled, purchased or acquired any interest; and

     c.    The nature of the business as it pertains to asbestos.

RESPONSE TO INTERROGATORY NO. 5:

The long and complex history of General Motors is the subject of many books and publications that are equally available to plaintiffs' lawyers. GM has manufactured, assembled or sold asbestos-containing products like disc pads, drum brake linings, manual clutches and automatic transmission bands for motor vehicles. With respect to brake linings, GM acquired the assets of the Bondall Company, 500 Bittner, St. Louis, Missouri, in 1939. Bondall designed and manufactured brake linings and clutch facings. Documents pertaining to this acquisition either no longer exist or are not relevant to any

-3-

claim plaintiffs have made in this case. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

## INTERROGATORY NO. 6:

If this defendant entered into any agreements for the rebranding of any asbestos containing products by this defendant for resale or distribution by another person or entity, describe each agreement's terms and the parties to said agreement, the duration of the agreement, and name of each product(s) and! or materials) covered by each such agreement.

## RESPONSE TO INTERROGATORY NO. 6:

GM has not found any agreements under which it relabeled asbestos-containing friction products that it manufactured so that another company could sell them.  To the extent this interrogatory asks for additional information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

## INTERROGATORY NO. 7:

If this defendant entered into any agreements for the rebranding of asbestos containing products manufactured, sold, supplied or distributed by another person or entity for resale or distribution by you, describe each of the agreements and the parties to said agreement, the terms, the duration, and the names of each product(s) and/or materials covered by each such agreement.

## RESPONSE TO INTERROGATORY NO. 7:

See Response to Interrogatory No. 6.

INTERROGATORY NO. 8:

Was this Defendant ever allowed to use the trademark or logo of any other company, including but not limited to, its predecessor or related company, on any asbestos or asbestos containing products Defendant sold, distributed or installed, and if so please state:

(a)     The trademark or logo used by you;

(b)     The company allowing such use of its trademark or logo;

(c)     The time period such use was allowed;

(d)     whether such use was by written, verbal or implied agreement;

(e)     Each and every product such trademark or logo was placed upon;

(f)     Identify all documents which refer to, relate to or reflect the use of such trademark or logo.

RESPONSE TO INTERROGATORY NO. 8:

GM has not found any information or documents of the type requested that relate to products containing asbestos.  GM objects to this interrogatory because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 9:

Has your company manufactured asbestos containing products and materials which were distributed by another entity or corporation under their name or trademark? If so, identify each such entity which sold or distributed these products, indicate which of your company's products this company marketed and indicate the inclusive dates that this particular commercial arrangement existed.

RESPONSE TO INTERROGATORY NO. 9:

See Responses to Interrogatory Nos. 6, 10, 12, 13 and 14.  To the extent this interrogatory asks for additional information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 10:

State whether this defendant, or any other entity as identified in Interrogatories 5 through 10, between 1950 and 1975, has ever engaged in the following activities with regard to asbestos, and if so, state the inclusive dates of such activity:

a.      Mining;

b.      Milling;

c.      Supply;

d.      Importing;

e.      Processing;

f.      Distribution;

g.      Marketing;

h.      Sale;

i.      Brokering.

RESPONSE TO INTERROGATORY NO. 10:

GM does not mine, process for sale or distribution, or sell raw asbestos.   See also Response to Interrogatory Nos. 12 and 13 regarding disc and drum brake linings and manual transmission clutch plates.  GM objects to this interrogatory because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 11:

If your answer to any of subparts of the preceding interrogatory regarding asbestos is in the affirmative, state:

-6-

a.   The trade, brand name, and/or generic name of such asbestos milled or marketed in any form or quantity between 1950 and 1975;

b.   The date(s) such asbestos was first placed on the market, including the date(s) such asbestos was first marketed;

   1.   On an experimental basis;

   2.   On a test basis;

   3.   For sale.

c.   The date(s) such asbestos:

   1.   Ceased to be produced; or

   2.   Was recalled from the market, if ever.

d.   A description of the chemical composition of such asbestos, including the type and/or grade of asbestos;

e.   A description of the physical appearance and nature of such asbestos, including any color coding, distinctive marking and/or logo on the packaging or container;

f.   A detailed description of the intended use of such asbestos;

g.   Identify to whom such asbestos has, at any time, been sold. As to each such, state:

   1.   The names of each such company, governmental agency or entity, distributor, supplier or manufacturer;

   2.   The inclusive dates of each such sale, and the amount (quantity) and the trade brand name of such asbestos sold;

   3.   The manner of shipment (e.g. boat, rail, etc.)

   4.   Whether you have any records indicating any such sale or shipment and, if so, the name, address and job classification of each person who currently has possession of such records.

   5.   Either (1) attach all documents evidencing the information sought in this Interrogatory and its subparts to your answers to these Interrogatories, or (2)

-7-

attach disks containing such data, or (3) describe such documents with sufficient particularity that they may be made the subject of a request for production of documents.

RESPONSE TO INTERROGATORY NO. 11:

See Response to Interrogatory No. 10, 12 and 13.  To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 12:

Between 1950 and 1975, did you, or any other entity as identified in Interrogatories 5 through 10, ever engage in any of the activities listed below with regard to asbestos containing products? If so, state the inclusive dates of such activity:

    a.    Supply;
    b.    Importing;
    c.    Distribution;
    d.    Marketing;
    e.    Sale;
    f.    Labeling;
    g.    Manufacturing;
    h.    Brokering.

RESPONSE TO INTERROGATORY NO. 12:

GM manufactured or distributed disc brake linings, drum brake linings and manual transmission clutch plates that contained encapsulated chrysotile asbestos fiber.

INTERROGATORY NO. 13:

If your answer to any subpart of the above interrogatory is in the affirmative, state for each product:

a.    The trade, brand name, and/or generic name of each such asbestos containing product marketed in any form or quantity between 1950 and 1975;

b.    The date(s) each such asbestos containing product was first placed on the market, including the date(s) each such asbestos containing product was first marketed;

    1.    On an experimental basis;

    2.    On a test basis; or

    3.    For sale.

c.    The date(s) each such asbestos containing product;

    1.    Ceased to be produced; or

    2.    Was recalled from the market, if ever.

d.    A detailed description of the chemical composition of each such asbestos containing product, including the type and/or grade of asbestos and/or asbestos fiber contained in each such product and the quantitative percentage of asbestos or asbestos fiber in each such product, and all non-asbestos components of the asbestos containing product, and if the chemical composition changed over time, the inclusive dates of each formulation;

e.    A description of the physical appearance and nature of each such asbestos containing product, including any color coding, distinctive marking and/or logo, either on the product or on the packaging;

f.    A detailed description of the intended use of each such asbestos containing product, including any temperature limits for each such use;

g. The name and address of the supplier of the asbestos used in each such product and the time period of such supply, broken down by year;

h. Either (1) attach all documents evidencing the information sought in this Interrogatory and its subparts to your answers to these Interrogatories, or (2) attach disks containing such data, or (3) describe such documents with sufficient particularity that they may be made the subject of a request for production of documents.

RESPONSE TO INTERROGATORY NO. 13:

**Drum Brake Linings:**

General Motors began to manufacture molded drum brake linings containing chrysotile in 1939. GM stopped manufacturing drum brake linings in December 1998, when Delphi Automotive Systems became a corporate entity separate from General Motors.

Trade Names used by GM: United Motors (1918-1961), United Delco (1961-1974), AC-Delco (1974-present), Delco Moraine (1942-present), GM Parts (unknown date before 1969-present), Goodwrench (1985-Present), Buick*, Cadillac*, Chevrolet*, GMC Truck*, Oldsmobile*, or Pontiac*. Dates are approximate. Names marked with an asterisk were used, if at all, for an unknown period of time before 1969.

GM drum brake linings have one or more grades of chrysotile asbestos, generally grades 5, 6 and 7, and the approximate percentage by weight has ranged between 50% to 75%.

Drum brake lining segments consist of a solid, curved, dense, grayish material. Typical arc lengths range from 90o to 130 o and are for drum diameters of 7, 8, 9-1/2, 11, 12 and 12-1/2 inches. Brake linings have contained an edge code and certification

-10-

number since about 1967. For drum brake linings manufactured by GM, the edge code is "DELCO" and the certification code begins with "2."

GM purchased drum brake linings that others manufactured to install on its automobiles and light duty trucks. GM no longer has documents regarding its purchases for the extensive time period set forth by plaintiffs because of its normal record retention policies. To the best of GM's knowledge right now, the following suppliers and approximate dates have been identified, but from information available, it is impossible to determine if all products supplied during the times indicated were asbestos-containing because the presence or absence of asbestos in linings is not reflected in the information from which the following data was obtained.

**Drum Brake Linings:**

Since the use of the certification codes began in 1967, these drum brake lining segments have used the name "DELCO." The following are color and certification codes for the years indicated:

| SUPPLIER | COLOR | CERTIFICATION | YEARS |
|---|---|---|---|
| Marshall Eclipse | ? | None | 1949, 1950 |
| Marshall Eclipse | Blue | None | 1949-53 |
| Marshall Eclipse | Gray | None | 1949-51 |
| Marshall Eclipse | Orange | None | 1951-53 |
| AMCO | Green | 501FF | 1951-65 |
| AMCO | Green | 502FF | 1951-65 |
| ABEX | White | 401FF | 1954-Present |
| ABEX | Blue | 408GG | 1954-61 |

-11-

| Marshall Eclipse | ? |       | 1955-63      |
|------------------|---|-------|--------------|
| Marshall Eclipse | ? | 308FF | 1955-62      |
| ABEX             | Red | 402GF | 1958-Present |
| Marshall Eclipse | ? | 309FF | 1961-63      |
| Bendix           | ? | 310GG | 1963         |
| Bendix           | ? | 311FE | 1963         |
| Bendix           |   | 301FF | 1964-Present |
| Bendix           |   | 302FF | 1964-Present |
| Bendix           |   | 327FF | 1970-74      |
| Bendix           |   | 324FF | 1970-Present |
| ABEX             |   | 416FF | 1971-81      |
| ABEX             |   | 417FF | 1971-81      |
| Bendix           |   | 325FF | 1974-Present |
| Bendix           |   | 336FE | 1980         |
| Bendix           |   | 337FE | 1980         |

? = Unknown

If used, the date code consists of the last digit of the year and three digits for the day of the year.


Other drum brake lining segments have been purchased from: Bendix (1946-1980), Raybestos-Manhattan (1946-1980) (Certification Code 910-GF for 1971-1975); Unibond (1980-1985); Thermoid Division of H.K. Porter (1974-1980); ITT AMCO (1978-1980); Ferodo (1950s); Multibestos (1950s); Universal Friction (1956-unknown).

Original equipment drum brake lining and shoe assemblies for medium and heavy duty

trucks and for buses are purchased either as part of a complete brake assembly or as part of an axle assembly. Engineering information is obtained with regard to these complete assemblies and usually not with regard to their hundreds of components. Therefore, information about the markings on brake linings that GM did not manufacture is generally not available.

Identification of the suppliers of the brake linings for particular trucks and years would involve an extensive search of engineering bills of materials, engineering parts lists, and purchasing records. There were 120-150 rolls of microfilm of engineering bills of materials, 50 boxes of microfiche of engineering parts lists, and 91 rolls of microfilm and 2091 microfiche or purchasing records. For a significant period of time, engineering parts lists were supplemented monthly and each supplement would have to be checked to find any new brake assemblies. The process is also complicated because the medium and heavy duty truck business is basically a "customized" business. Practically all heavy duty trucks and most medium duty trucks are ordered to precise customer specifications as to engine, transmission, axle (including brakes), and other equipment combinations the operator requires. This means that there are numerous regular production options as well as special equipment options created for particular customers.

On the basis of information available now, GM has identified the following outside suppliers of original equipment brake assemblies and shoe and lining assemblies for 1974 to 1985 (unless otherwise indicated):

| | |
|---|---|
| Rockwell Brake Division | Buses |
| Eaton Brake Division | Medium & Heavy Duty Trucks |
| Wagner Electric (1974-1982) | Heavy Duty Trucks |
| Bendix | Medium Duty Trucks |

| | |
|---|---|
| Dayton-Walther | Medium Duty Trucks |
| Unibond | Medium Duty Trucks |
| American Coleman | Medium & Heavy Duty Trucks |
| (Front Driving Axles) | |
| Dana Axle | Medium & Heavy Duty Trucks |
| (Rear Axle Assemblies) | |
| Rockwell Axle Division | Medium & Heavy Duty Trucks |
| (Axle Assemblies) | |
| Kelsey-Hayes | Medium & Heavy Duty Trucks |

The following suppliers of replacement brake shoes, linings, and pads for medium and heavy duty trucks and for buses were identified:

| | |
|---|---|
| Abex Corporation | 1937-1985 |
| Bendix | 1951-1985 |
| Dayton Walther | 1983-1985 |
| H.K. Porter | 1974-1985 |
| Kelsey Products Division | 1981-1985 |
| Rockwell International | 1954-1985 |
| Unibond Brake | 1973-1985 |
| Wagner Electric | 1955-1985 |
| Raybestos Manhattan | 1955-1971 |

The following have also been identified, but from information available, it is impossible to determine if all the products supplied during he times indicated are

-14-

asbestos-containing.

Friction Products Division

Abex Corporation                              1937 – 1988

Winchester, VA 22601-3601


American Coleman Co.              1978 – 1983

Littleton, CO 80120-1918


Bendix Automotive Aftermarket        1960 – 1969

Newport News, VA


The Bendix Corporation            1951 – 1986

Troy, NY 13283


C. Itoh & Co. (America) Inc.        1971 – 1986

Southfield, MI 48076


Carlisle Corporation              1955 – 1986

Ridgeway, PA 15853


Dayton Walther Corp.              1983 – 1985

Dayton Division

Dayton, OH 45408

| | |
|---|---|
| Eaton Corporation | 1979 – 1986 |
| Gallatin, TN 37066-0761 | |
| | |
| John Hassall, Inc. | 1966 – 1980 |
| Westbury, NY 11590-0698 | |
| | |
| ITT Aimco | 1948 – unknown |
| Mississauga, Ontario | |
| | |
| Kelsey Products Division | 1981 – 1986 |
| Brighton, MI | |
| | |
| Kelsey Hayes Company | 1967 – 1973 |
| Milford, MI | |
| | |
| Marshall Eclipse | 1948 – unknown |
| address unknown-out of business | |
| | |
| Multibestos | 1942 – unknown |
| address unknown-out of business | |
| | |
| H.K. Porter Company | 1974 – 1986 |
| Huntington, IN 46750 | |

Rockwell International               1954 – 1985

Oshkosh, WI 54903

Rockwell International               1972 – 1986

Florence, KY 42042-2754

Wagner Electric Corporation          1955 – 1985

McGraw – Edison

Tullahoma, TN

1955 – 1985

Raybestos Manhattan, Inc.            1955 – 1971

Chicago, Il 60693

Raymark                              1974 – 1980

Crawfordsville, In 47933-1958

Rockwell International               1954 – 1986

Ashtabula, OH 44004

Uni-Bond Brake, Inc.                 1973 – 1985

Ferndale, MI 48220-2011

| | |
|---|---|
| Universal Friction | 1956 – unknown |
| address unknown-out of business | |

| | |
|---|---|
| Johns-Manville | 1956 – 1969 |
| Dana-Axle | 1974 – 1985 |
| Ferodo | 1950s |
| AMCO | 1951 – 1965 |
| Akebono | 1985 – 1989 |

Identification markings on these parts can only be ascertained by first identifying part numbers for each brake lining part for each year and then retrieving engineering drawings for each part.  Such a search would be extremely time-consuming and the results of which would not be commensurate with the efforts involved.

Although GM would not have purchase documents for the time period in question because of normal record retention policies, the information GM has available to it now indicates chrysotile for drum brake linings was purchased from:

| | |
|---|---|
| Asbestos Fibre Corp. | 1939 - 1975 |

Asbestos Corporation, Ltd.

c/o C. L. Zimmerman Co.

N-303 Cincinnati Union Terminal

Cincinnati, Ohio 45203

| | |
|---|---|
| Asbestos Corp., Ltd. | **1967 - 1970** |

| | |
|---|---|
| Johns Manville Corp. | **1975 - 1984** |

Box 517

Toledo, Ohio

| | |
|---|---|
| Lake Asbestos of Quebec, Ltd. | 1977 - 1998 |

Box 608

Black Lake, Quebec

| | |
|---|---|
| JM Asbestos Sales, Inc. | 1984 - 1998 |

Asbestos, Quebec

**Disc Brake Linings:**

General Motors began to manufacture and sell disc brake linings in 1966.  GM stopped manufacturing disc linings containing asbestos in 1985 because of production priorities.

Trade names used by GM:  AC Delco, Delco Moraine, GM Parts, and Goodwrench.

GM disc brake linings have one or more grades of chrysotile asbestos, generally grades 5, 6, and 7, and the approximate percentage by weight has ranged between 30% and 60%.

Disc brake linings segments are a dense grayish or tan material.  Typical dimensions are height of 57-63 millimeters, width of 125-142 millimeters, and thickness of

11-13 millimeters. Disc brake linings have contained an edge code and certification number since about 1967. For disc brake linings, the edge code is "DM" and the certification code begins with "1" or "2."

GM has purchased disc brake linings that others manufactured to install on its automobiles and light duty trucks. To the best knowledge of GM right now, the following suppliers and approximate dates have been identified, but from information available, it is impossible to determine if all product supplied during the times indicated were asbestos-containing because the presence or absence of asbestos in linings is not reflected in the records from which the following data was obtained. The assembly consists of a lining and steel shoe. Markings on linings not manufactured by General Motors:

| EDGE CODES NAME CERTIFICATION | COLOR CODE | MFR. | YEARS |
|---|---|---|---|
| GM 333EE | Lavender | Bendix | 1974-90 |
| GM 328EE | | Bendix | 1971-78* |
| GM 331FE | | Bendix | 1972-78 |
| DELCO 418 | | ABEX | 1970-79 |
| DELCO 421FF | | ABEX | 1978-87 |
| DELCO 601FF | | Johns-Manville | 1965-69 |
| DELCO 602FF | | Johns-Manville | 1967-69 |
| DELCO 603FF | | Johns-Manville | 1969 |
| DELCO 604FF | | Friction Products Division | 1988-1990 |
| DELCO 903FF | | Raybestos-Manhattan | 1967 |
| DELCO 911FF | | Raybestos-Manhattan | 1971-1975 |

*Non-asbestos material with asbestos backing.

Although GM would not have purchase documents for the time period in question because of its normal record retention policies, the information GM has available to it now indicates chrysotile for disc brake linings was purchased from:

Asbestos Corp., Ltd.                    1967 - 1970

Lake Asbestos                           1967 - 1970

Canadian Johns-Manville      1967 - 1984
Asbestos, Quebec

National Gypsum Co.             1972
Cleveland, Ohio

C. L. Zimmerman Co.            1972 - 1977
3655 Central Parkway
Cincinnati, Ohio

Union Insulating Co.              1976
Parkersburg, W. Virginia

Chrysler Chemical Division     1978
Trenton, Michigan

**Clutch Plates and Bands for Manual Transmissions:**

Beginning around 1930, clutch driven plate assemblies for manual transmissions were assembled by GM with friction materials purchased from suppliers or purchased as assemblies from suppliers.

Trade names used by GM: GM Parts (1969 - present), Buick*, Cadillac*, Chevrolet*, Oldsmobile*, Pontiac*, and GMC Truck*.  Names marked with an asterisk were used, if at all, before 1969.

GM did not manufacture the clutch facing friction material.  GM does not know the precise asbestos content of facing materials that others manufactured.  It is known industry practice, however, to use chrysotile asbestos.

An example of a typical assembly for a passenger car includes a facing with an inside diameter of 2.3 millimeters, an outside diameter of 156 millimeters, and a thickness of 8 millimeters.  The facing is typically dark brown.

Suppliers of clutch plates for manual transmissions facings were (dates are approximate):

Raymark Industrial Division        1965 - 1985
Southfield, MI


H. K. Porter        1965 - 1971
Troy, Michigan


Sources of assemblies were (dates approximate):

Borg Warner Corporation        1930 - 1985
Chicago, Ill.

| | |
|---|---|
| Borg & Beck | 1974 - 1984 |
| Sterling Heights, MI | |
| LUK, Inc. | 1983 - 1985 |
| Southfield, MI | |
| Alma Products Co. | 1974-1985 |
| Alma, MI | |
| Daikin (Asahi facings) | Unknown |
| Troy, MI | |

GM purchased friction materials that it used on clutch plates discs from other companies that were not manufactured by GM. Some of these clutch plates or discs contained asbestos and others did not. GM's understanding of the industry practice is that chrysotile was best suited for and used in these applications. About 145 different replacement clutch plates or discs are currently distributed by the Service Parts Operations of GM.

To the extent this interrogatory asks for more information, GM objects because it is overly broad, vague, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 14:

Between the years 1950 to 1985, did this defendant sell any asbestos containing product line to another person or entity? If so, state for each such sale:

a.    Date of sale;

-23-

b.   Terms of sales agreement;

c.   Either (1) attach all documents evidencing said sale, or (2) attach disks containing such data, or (3) describe such documents with sufficient particularity that they may be made the subject of a request for production of documents.

d.   Trade, brand, and/or generic name of each such product line sold;

e.   Name of person or entity to whom you sold each such asbestos containing products line; and

f.   Location of any manufacturing facilities so sold, and the type of asbestos containing products manufactured therein.

RESPONSE TO INTERROGATORY NO. 14:

GM customarily sells its cars, trucks, and replacement parts to authorized dealers and distributors throughout the United States, who then resell them. They are not purchased by consumers directly from GM. Records related to GM's sales of replacement parts for most, if not all, of the relevant time periods are no longer available. GM does not have records of sales of parts by dealers or distributors.

GM cannot identify each and every entity to which it supplied any asbestos-containing friction products during the extensive period requested by plaintiffs. GM does not keep records that would allow it to determine the amount of asbestos-containing friction products it sold in the region, or any other geographic or chronological categorization. For the lengthy and historic period this request covers, GM supplied replacement parts, which may have included some asbestos-containing friction products, to authorized dealerships and distributors in existence during the relevant period.

For sales of replacement parts to GM dealers and warehouse-distributors the normal retention period for these invoices is six years. Sales of individual parts to dealers, warehouse distributors, and national accounts are recorded in invoices that General Motors service parts operations maintained. Over 18 million invoices were stored on

-24-

microfilm covering world-wide sales of over 356,000 different parts carried in the General Motors service parts operations distribution system. In addition, invoices concerning sales to distributors and original equipment manufacturers were available for this same period at the facilities related to automatic transmissions used on medium and heavy duty trucks and on coaches. All invoices at these locations were retained by invoice number in processing sequence and not by geographical location by customer. They were not otherwise indexed or summarized.

To obtain the information this interrogatory asks for, every part number for asbestos-containing parts would have to be identified from engineering drawings. Then, each customer's monthly statement would have to be reviewed to obtain all invoice numbers. Finally, the individual invoices would have to be found from microfilm records using equipment that is otherwise employed in General Motors routine business operations and a comparison made between the part numbers on the invoices and those part numbers identified for asbestos-containing parts.

For GM to identify the names of all authorized dealerships and distributors would be an incredibly time-consuming task the result of which would not be commensurate with the effort involved. GM cannot identify dealerships unless they are currently in operation because it does not track or keep a database on closed dealerships. However, if plaintiff provides the name and location of a particular dealer and approximate date(s) of operation, GM will attempt to determine if such an entity existed as an authorized dealership. Information about GM authorized dealerships is not indexed by the "county" where they might be doing business. In addition, GM's information about authorized dealerships and distributors does not provide data specific to sales of asbestos-containing friction products as defined in this request. To the extent this request asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 15:

Identify the person or persons most knowledgeable about:

a.   Your acquisition, distribution, sale, or resale of: (1) asbestos used in motor vehicle parts; and/or (2) asbestos containing motor vehicle parts;

b.   Your use of asbestos in motor vehicle parts;

c.   The supply, use, handling, sale or distribution of asbestos containing products motor vehicle parts to or at the former General Motors facilities in Englewood, New Jersey, Bloomfield, New Jersey and Multi-Chevrolet in Rahway, New Jersey; and

d.   The sale or supply of asbestos and/or asbestos containing motor vehicle parts from or to General Motors.

RESPONSE TO INTERROGATORY NO. 15:

GM has employed hundreds of thousands of people and there are far too many people to interview to determine their potential knowledge concerning the broad topics specified above. Various operating divisions have conducted such activities from time to time during the period from 1930 to present. During that time period, some of these divisions have employed literally hundreds of thousands of people. Depending upon the time period involved, there may be one or more persons with some knowledge of all or a part of the activities of such divisions, but defendant cannot determine which is "most knowledgeable." In addition, although GM operated plants in New Jersey, GM did not manufacture brake linings or manual transmission clutch facings in New Jersey. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

<u>INTERROGATORY NO. 16</u>:

Did any of the entities from whom you received asbestos or asbestos containing products ever inform you or your company's employees that asbestos was potentially hazardous to the health of individuals who were exposed to it?

<u>RESPONSE TO INTERROGATORY NO. 16</u>:

GM does not know of any study establishing that potential exposures to asbestos during brake or clutch repair operations constitutes a health hazard. GM has not retained the packaging in which it received chrysotile asbestos or the labels on the packaging. In addition, potential exposure that may occur during the manufacturing of friction materials is not similar or relevant to any claimed exposure that may occur during a brake repair operation. To the extent this interrogatory asks for more information, GM objects because it is overly broad, unduly burdensome and it will not lead to admissible evidence.

<u>INTERROGATORY NO. 17</u>:

Did defendant ever affix any warnings to any of the asbestos or asbestos-containing products it marketed and distributed? If so, for each such product that contained a warning set forth the following information:

a.   the brand and trade name of each such product that contained a warning;

b.   the date a warning was attached to each such product;

c.   the substance of each warning;

d.   annex hereto copies of each such warning.

<u>RESPONSE TO INTERROGATORY NO. 17</u>:

Although GM does not know of any medical, scientific or epidemiological study that establishes that mechanics who perform clutch or brake repairs have any increased incidence of disease and, to the contrary, the medical and scientific literature indicates

-27-

that mechanics who perform brake and clutch repairs do not have an increased risk of asbestos-related illness, GM placed directly on packaging for friction materials beginning in 1975.

Using language copied from the OSHA regulation, the caution read as follows: "CAUTION:  CONTAINS ASBESTOS FIBERS. AVOID CREATING DUST. BREATHING ASBESTOS DUST MAY CAUSE SERIOUS BODILY HARM."

The word "CAUTION" was in no smaller than 12 point type.  The rest of the words were in no smaller than 10 point type.

In 1989, the caution was changed to:
"Danger:  Contains asbestos fibers.  Avoid creating dust.  Cancer and Lung Disease hazard.  Do not grind.  Do not clean with compressed air."
* See Service Manual Instructions *

In 1977, GM began to include this statement in its service manuals:
"Caution:  When servicing wheel brake parts, do not create dust by grinding or sanding brake linings or by cleaning wheel brake parts with a dry brush or with compressed air.  (A water dampened cloth should be used.)  Many wheel brake parts contain asbestos fibers which can become airborne if dust is created during servicing.  Breathing dust containing asbestos fibers may cause serious bodily harm."

In 1981, the statement was changed to:
"CAUTION:  When servicing wheel brake parts, do not create dust by grinding, sanding brake linings, or by cleaning wheel brake parts with a dry brush or with compressed air. Many wheel brake parts contain asbestos fiber which can become airborne if dust is created during servicing.  Breathing dust containing asbestos fiber may cause serious bodily harm.  A water dampened cloth or water based solution should be used to remove

-28-

any dust on brake parts. Equipment is commercially available to perform this washing function. These wet methods will prevent asbestos fibers from becoming airborne."

GM's recommendations for maintaining and servicing brake linings and clutches are in many service manuals and it would be unduly burdensome for GM to attempt to locate and produce copies of all service manuals. GM provided service manuals to dealers and manuals were available to be purchased by customers. Representative copies of GM's warnings and manuals have been previously produced to counsel for plaintiffs but GM will provide copies again upon request.

To the extent this interrogatory asks for any more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence. GM also objects to the extent the interrogatory asks for information protected by the attorney-client privilege or the work product doctrine.

INTERROGATORY NO. 18:

Set forth the name, address and job position of each and every individual who took part in your company's decision to place a warning on its asbestos or asbestos-containing products.

RESPONSE TO INTERROGATORY NO. 18:

See Response to Interrogatory No. 17. To the extent this interrogatory asks for additional information, GM objects because it is vague, overly broad, burdensome and it will not lead to admissible evidence.

INTERROGATORY NO. 19:

Prior to 1980, did any employee of the defendant ever recommend that it utilize a warning on its asbestos-containing products? If so, identify each such employee, indicate when he made such a recommendation, indicate what the recommendation was, to whom it was given and what action was taken thereon.

RESPONSE TO INTERROGATORY NO. 19:

See Response to Interrogatory No. 17. There is also no reasonable or practical way for GM to respond to this interrogatory. GM could not begin to determine the names of each of its hundreds of thousands of past and present employees who may have participated in such a broadly and vaguely described activity for a period of more than 70 years. GM objects to this interrogatory because it is vague, overly broad, unduly burdensome, and will not lead to admissible evidence.

INTERROGATORY NO. 20:

When did this defendant first warn its employees that exposure to asbestos could be hazardous to human health? State:

a.      whether the first such warning was written or oral;

b.      whether copies of documents containing such warning exist;

c.      The identity of the custodian of such documents;

d.      The content of the warning.

RESPONSE TO INTERROGATORY NO. 20:

GM does not know of any study that establishes its products are hazardous. To the contrary, the medical and scientific literature establishes that intermittent and low exposures to short chrysotile asbestos fibers, such as those that might occur during some brake repairs, do not result in any increased incidence of disease. See also response to Interrogatory No. 17. To the extent this interrogatory ask for more information, GM objects because it is vague, overly broad, unduly  burdensome and will not lead to admissible evidence.

-30-

INTERROGATORY NO. 21:

Has defendant ever been a member of or affiliated with any trade groups, professional associations or organizations? If so, identify each such group, association or organization and set forth the inclusive dates of defendant's membership in each.

RESPONSE TO INTERROGATORY NO. 21:

GM has been a member of many organizations since 1925, but does not know all the activities those organizations have been involved in during the last seventy-eight years. If plaintiffs identify a specific organization, GM will attempt to determine if it was a member. There is no means for GM to identify the memberships of every one of its employees during the last seventy-eight years. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, burdensome, and it will not lead to admissible evidence.

INTERROGATORY NO. 22:

Has defendant ever been a member of or affiliated with the Asbestos Textile Institute? If so, indicate when your company was affiliated or was a member of this organization.

RESPONSE TO INTERROGATORY NO. 22:

GM has not found records showing it was a member of the organization listed.

INTERROGATORY NO. 23:

Has any employee or representative of your corporation ever attended a meeting of the Asbestos Textile Institute? If so, identify each such individual who attended these meetings and set forth the dates on which each such individual went to such a conference or meeting.

-31-

C:\WINDOWS\TEMP\CIWPRINT\ResponsetoRogs.rec.1.doc

RESPONSE TO INTERROGATORY NO. 23:

General Motors has not been a member of the Asbestos Textile Institute and has no reason to believe its employees or representatives would have attended its meetings. Because GM has had hundreds of thousands of past and present employees and this interrogatory is unlimited in time, there is no reasonable or practical way for GM to respond to this interrogatory.   See also Response to Interrogatory No. 22.  To the extent this interrogatory asks for more information, GM objects because this interrogatory is argumentative, misleading, overly broad, burdensome and it will not lead to admissible evidence.

INTERROGATORY NO. 24:

Has your company ever been a member of, affiliated with or provided funding for the industrial Hygiene Foundation? If so, indicate when your company was a member or affiliated with this organization and set forth the dates, if applicable, when you provided funding to this organization.

RESPONSE TO INTERROGATORY NO. 24:

GM was a member of the Industrial Hygiene Foundation from 1942 to the 1980s. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, burdensome, and it will not lead to admissible evidence.

INTERROGATORY NO. 25:

If so, for each such company that transmitted such information to you and your company, set forth the following information:

      a.      the name of each and every entity that informed your company that asbestos was potentially hazardous to health;

      b.      the dates you received this information from each such company;

      c.      indicate how this information was transmitted to you;

-32-

     d.    the substance of each warning;

     e.    annex hereto copies of each such writing.

## RESPONSE TO INTERROGATORY NO. 25:

     GM is unable to respond to this interrogatory because it is vague, ambiguous and unintelligible.

## INTERROGATORY NO. 26:

     Has defendant ever established or maintained a library or libraries which in any way dealt with industrial hygiene, medicine, safety and engineering? If so, state:

     a.    where the library was or is located?

     b.    the names of all journals which that library subscribed to;

     c.    for whom and for what purpose the library was established;

     d.    whether there is an inventory of the books and publications which are or were housed in this library, and if so, attach a copy hereto.

## RESPONSE TO INTERROGATORY NO. 26:

     GM's many facilities in the United States have or have had many formal and informal libraries and those libraries have received thousands of periodicals.   There is no central listing or catalog file for all of these libraries or collections that GM could review in order to respond to this interrogatory.  To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

## INTERROGATORY NO. 27:

     Did defendant or its agents or employees ever make any effort to keep abreast of medical literature concerning potential health hazards posed by the use of and/or

exposure to asbestos? Indicate the names, addresses and job positions of all your company's employees who reviewed this literature.

RESPONSE TO INTERROGATORY NO. 27:

Employees of General Motors Corporation who worked in the industrial hygiene department and in the engineering department, routinely reviewed literature, some of which included medical literature, to which GM subscribed. It would be unduly burdensome and largely impossible for GM to identify all that literature its employees reviewed for the indefinite period involved. See also Response to Interrogatory No. 26. To the extent that this interrogatory asks for more information, GM objects because it is vague, overly broad, burdensome, and it will not lead to admissible evidence.

INTERROGATORY NO. 28:

Has your company done any studies or tests or has your company participated in, been the subject of, or been aware of any studies or tests by others concerning the potential effects of inhalation of asbestos dust or fibers by one using, handling, or being exposed to asbestos or asbestos containing products? If so, state:

a.    the date each study or test was conducted and the date defendant became aware of said study or test;

b.    the names and addresses of the person conducting each test or study;

c.    the purpose of the study or test;

d.    the results of each study or test;

e.    if reduced to writing attach a copy hereto.

RESPONSE TO INTERROGATORY NO. 28:

GM has not performed inhalation studies of the nature plaintiffs describe. GM collected air samples during brake servicing at dealerships in 1975. W. H. Krebs conducted the air sampling at Circle Buick, New York, New York; West Side Pontiac, New

-34-

York, New York and Circle Buick - East, New York, New York. On February 13, 1984, W. H. Krebs took air samples to evaluate the nature and extent of operator exposures to airborne asbestos during brake lining resurfacing operations at Pekin Machine & Parts Company, Pekin, Illinois. GM has previously produced copies of the reports to plaintiffs' lawyers but will provide additional copies upon request.. GM has also previously produced to plaintiffs' lawyers copies of articles written by Muhlbaier & Williams about emissions from brakes, but will provide additional copies upon request. GM objects to this interrogatory because it is overly broad, vague, unduly burdensome and asks for information that will not lead to admissible evidence.

INTERROGATORY NO. 29:

Has defendant and/or its agents or employees ever gone out to any facilities, sites, factories, power houses, or warehouses where its asbestos or asbestos-containing products were being stored, distributed, handled or used to determine the levels of asbestos dust or fibers which were in the work environment? If so, for each such study or experiment which was conducted, set forth the following:

        a.     who conducted each measurement, study or test;

        b.     when and where each measurement, study or test was conducted;

        c.     what type of equipment was utilized to measure the levels of asbestos in the working environment;

        d.     what the results of each study, measurement or test were;

        e.     attach a copy of any report concerning each measurement, study or test.

RESPONSE TO INTERROGATORY NO. 29:

GM had/has no right to inspect work sites that others owned and operated. See also Response to Interrogatory No. 28. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

-35-

INTERROGATORY NO. 30:

Give a complete description of all programs implemented and precautions taken by the defendant at its plants, warehouses, and facilities where it manufacturers, distributes or stores asbestos or asbestos-containing products to reduce the levels of asbestos dust and fibers in the air. Include in this description all programs implemented and precautions taken since each plant was in operation. Include in this answer the date that each precaution was taken or procedure was implemented.

RESPONSE TO INTERROGATORY NO. 30:

This interrogatory is misleading and argumentative because it assumes with no foundation the presence of asbestos in the air. Also, because manufacturing involves different operations and a vastly different scale of operations than repair work, this interrogatory will not lead to admissible evidence. Potential exposures to asbestos during manufacturing operations are neither relevant nor similar to any possible exposures during brake or clutch repair. GM also objects to this interrogatory because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 31:

Did defendant at any time require its employees who worked in the manufacture, distribution, or handling of asbestos or asbestos-containing products to wear respirators, face masks or other protective devices? If so, set forth which employee (by type) was required to wear such protective devices, when the directive relative to same was issued for each type of employee and specify what type of devise was to be worn by each type of employee.

RESPONSE TO INTERROGATORY NO. 31:

GM does not know of any study that establishes that mechanics who perform brake or clutch repair are excessively exposed to asbestos and have an increased risk of disease. As such, GM has not recommended that mechanics use protective devices while performing routine brake maintenance and repair because any exposures are well below accepted levels and can be minimized by simple work practices. Potential exposure to asbestos during manufacturing operations is not similar or relevant to any potential exposure encountered during brake or clutch repair operations. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 32:

Give a complete explanation of why each and every employee set forth in the preceding answer was required to wear a respirator, face mask or other protective devise while working with asbestos.

RESPONSE TO INTERROGATORY NO. 32:

See Response to Interrogatory No. 31. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 33:

If any employee or officer of defendant has testified at trial or by deposition in any litigation involving an alleged -occupational exposure to asbestos, state:

      a.      name, address and title of each such person who testified;

      b.      date, location and form of testimony;

      c.      whether defendant has a copy of such testimony.

RESPONSE TO INTERROGATORY NO. 33:

To the best of GM's knowledge, the following present or former GM employees testified at trials involving alleged exposure to asbestos-containing automotive products:

1.   Robert L. Jones

Ina Friedman v. General Motors Corporation, et al., Superior Court, Bergen County, N.J., No. L-35859-78, April 10, 1985.

2.   William H. Krebs

Elizabeth R. Aumiller v. General Motors Corporation, et al., U.S. District Court, Baltimore, No. H81-585, 1983.

Joseph P. Giorgianni, et al. v. General Motors Corporation, et al., U.S.District Court, Eastern District, Pennsylvania, No. CA- 82-100, October 2, 1984, October 3, 1984.

Wilmer Nall v. General Motors Corporation, et al., 10th Circuit Court, Peoria, Illinois, No. 81L3550, February 5, 1985.

Ina Friedman v. General Motors Corporation, et al., Superior Court, Bergen County, N.J., No. L-35859-78, April 9, 1985.

Edith Becker v. General Motors Corporation, et al., Superior Court of New Jersey, Middlesex County, No. L-91267-95, June 15, 1990.

John Darden v. General Motors Corporation, et al., Superior Court, San Francisco, No. 933786, February 8, 1993.

Constance Stables, deceased, v. General Motors Corporation, et al., Circuit Court of the Nineteenth Judicial Circuit, St. Lucile County, Florida, No. 90-506-CA17, March 17, 1993.

Albert Allen v. General Motors Corporation, et al., U.S. District Court, Western Dist., Louisiana, February 16, 1989.

Theresa M. Schroeder, et al., vs. General Motors Corporation, et al., Court of Common Pleas, Cuyahoga County, Ohio, Case No. 96- 307151-CV.

To the best of GM's knowledge, the following present or former General Motors employees testified in depositions involving alleged exposure to asbestos-containing brakes or clutches in cars and trucks:

1.   Robert L. Jones

Mary E. Zitis, et al. v. General Motors Corporation, et al., Superior Court, Bergen County, N.J., No. L-11634-77, May 17, 1984.

Richard v. Hedblom v. General Motors Corporation, et al., Superior Court, Los Angeles, No. C496107, December 5, 1984.

2.   William H. Krebs

Elizabeth R. Aumiller v. General Motors Corporation, et al., U.S. District Court, Baltimore, No. H81-585, December 20, 1982.

Donald Lee Richardson v. General Motors Corporation, Superior Court, Los Angeles, No. SOC 51907, November 15, 1983.

Mary E. Zitis, et al. v. General Motors Corporation, et al., Superior Court, Bergen County, N.J., No. L-11634-77, May 16, 1984, September 5, 1984.

Donald L. Horn v. General Motors Corporation, et al., Superior Court, King County,

Washington, No. 80-09935-3, June 14, 1984.

Richard v. Hedblom v. General Motors Corporation, et al., Superior Court, Los Angeles, No. C496107, December 4, 1984.

Wilmer Nall v. General Motors Corporation, et al., Circuit Court, 10th Judicial District, Peoria, Illinois, No. 81L3550, February 5, 1985.

John W. Gregory v. General Motors Corporation, et al., U.S. District Court, New Jersey, PL033931, April 17, 1986.

Levy Cormick, et al. v. General Motors Corporation, et al., District Court for Orleans Parish, Louisiana, April 13, 1987.

Marshall Coates, et al. v. General Motors Corporation, et al., Superior Court, of New Jersey, Middlesex County, October 5, 1988.

Albert Allen v. General Motors Corporation, et al., U.S. District Court, Western Dist., Louisiana, February 16, 1989.

Russell Isbell, et al. v. General Motors Corporation, et al., Superior Court, San Francisco, No. 899072, June 23, 1989.

Estate of Robert L. Johnson v. General Motors Corporation, et al., U.S. District Court, Milwaukee, Wisconsin, No.88-C-009. March 1, 1990.

Edith Becker v. General Motors Corporation, et al., Superior Court of New Jersey, Middlesex County, No. L-91267-95, March 6, 1990.

Kenneth Siefker v. General Motors Corporation, et al., District Court, Missouri, No.
124864, June 20, 1991.

John Darden v. General Motors Corporation, et al., San Francisco Superior Court, No.
933786, January 18, 1993.

Solomon G. Gapusan v. General Motors Corporation, et al., First Circuit Court, State of
Hawaii, No. 91-2100-06, February 10, 1993.

Toshio Kunishige v. General Motors Corporation, et al., First Circuit Court, State of
Hawaii, No. 90-4074-12, February 10, 1993.

David Otholt v. General Motors Corporation, et al., First Circuit Court, State of Hawaii, No.
90-4072-12,  February 19, 1993.

Constance Stables, deceased, v. General Motors Corporation, et al., Circuit Court of the
Nineteenth Judicial Circuit, St. Lucie County, Florida, No. 90-506-CA17, March 17, 1993.

Malvin Rivenbark, et al. v. General Motors Corporation, et al., Superior Court, Alameda
County, No. 711462-9, August 26, 1993.

Verstraeten vs. General Motors Corporation, et al., Superior Court, County of San
Francisco, No. 946514.

Thomas Jones, et al., vs. Allied-Signal, Inc., et al., First Circuit Court, State of Hawaii,
Civil No. 95-2328-06

Elmer Meyer vs. General Motors Corporation, et al., San Francisco Superior Court, Case
No. 972663

Jelline Steed v. Borg-Warner Corp. et al., District Court, Wood County, Texas, No. 94-
141, July 25, 1995.

Theresa M. Schroeder, et al., vs. General Motors Corporation, Court of Common Pleas,
Cuyahoga County, Ohio, Case No. 96-2307151-CV.

3.    Daniel R. Stocker

Gloria Vaughn, et al. v. General Motors Corporation, et al., U.S. District Court, St. Louis,
No. 82-1655-1(a), December 8, 1983.

Kenneth Webb, et al. v. General Motors Corporation, et al., May 20, 1987.

George C. Schramm, Jr. v. General Motors Corporation, et al., Middlesex County Superior
Court, New Jersey, March 30, 1988.

Estate of Robert J. Johnson, et al. v. General Motors Corporation, et al., U.S. District
Court Eastern District of Wisconsin, No. 88-C-0009, March 1, 1990.

In Re: Asbestos Litigation, Lane Trial Group, et al., New Castle County Superior Court,
Delaware, C.A. No. 87C-04-17. May 24, 1995.

4.    John Froning

Jelline Steed v. Borg-Warner Corp. et al., District Court, Wood County, Texas, No. 94-
141, July 25, 1995.

5.   Joseph Ziembo

In Re Complex Asbestos Litigation, In The Superior Court of the State of California, City and County of San Francisco, Case Number 828684, Deposition by Telephone - 12/5/00.

6.   Thomas Jelenek

George Douglas, et al., vs. Allied-Signal, Inc., et al. Civil District Court For the Parish Of Orleans, State of Louisiana, Case No.: 93-9533

To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence. GM also objects to the extent the interrogatory asks for any information protected by the attorney-client privilege or the work product doctrine.

INTERROGATORY NO. 34:

Has defendant at any time since its inception, maintained any office or department dealing with medical research? If so, state:

a.   the name of each such department;

b.   the dates of each such department was in operation?

c.   the name, address and job position of each such person who has been in charge of said department or departments.

RESPONSE TO INTERROGATORY NO. 34:

GM does not know what plaintiffs mean by an office or department "dealing with medical research." GM is not like a hospital or medical school. GM has maintained an Industrial Hygiene Department and has employed corporate medical directors. There are medical departments at many GM plants and other units, some of which have been in operation since the incorporation of GM. These medical or industrial hygiene departments provide industrial health services to the employees of GM and do not

typically engage in research. There is no list of all of the directors of these many medical departments since the date of their organization. There are also safety departments or personnel at many plants and other facilities. GM's Research Laboratories, now Research & Development Center, is GM's central research facility and some of its work involves biomedical issues.

Physicians were employed at GM's many facilities and plants where GM's products were manufactured. They provided general industrial health services, including examinations, as part of asbestos screening programs performed in accordance with OSHA regulations and recommendations. Industrial hygienists have been employed at GM's many plants and facilities. There is no central listing for outside consultants who may have been retained by a GM plant or facility. The directors or senior advisors of the GM Industrial Hygiene Department were:

| | |
|---|---|
| L.B. Case | (1936 - 1945) |
| F.A. Patty | (1945 - 1960) |
| V.J. Castrop | (1960 - 1974) |
| Walter Konn | (1974 - 1975) |
| G.L. Kortsha | (1976 - 1989) |
| W.H. Krebs | (1990 - 1993) |
| W.B. Kilgore (Senior Advisor) | (1993 - Present) |

The corporate medical directors of General Motors Corporation were:

| | |
|---|---|
| Clarence Selby, M.D. | (1935- 1949) |
| Max Burnell, M.D. | (1949 - 1958) |
| S.D. Steiner, M.D. | (1958 - 1976) |
| R.G. Wieneck, M.D. | (1976 - 1980) |
| R.W. Prior, M.D. | (1980 - 1988) |
| D.B. Van Brocklin, M.D. | (1988 - 1999) |
| Marcus Wilson, M.D. | (1999 - 2002) |

-44-

Joel R. Bender, M.D.              (2002 - Present)

To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 35:

When was the first time the defendant became aware of or knowledgeable of any disease or illness associated with or causally related to the inhalation of asbestos, asbestos fibers of asbestos dust in any form whatsoever? Indicate which disease defendant became aware of and describe how defendant became aware of its alleged relationship to inhalation or exposure to asbestos.

RESPONSE TO INTERROGATORY NO. 35:

GM cannot reasonably or practically determine when one of its hundreds of thousands of past or present employees first learned of any alleged relationship between any type of asbestos exposure and any type of disease.  GM first learned of the erroneous and still unproven allegation that mechanics performing brake repairs were excessively exposed to asbestos in 1974 when a presentation was made at a meeting of the American Industrial Hygiene Association.

Asbestosis - Asbestosis is related to exposure to asbestos by definition.  Asbestosis can result from prolonged excessive exposure to respirable asbestos fibers.  The precise date or manner in which this was learned is unknown, but it was likely no later than 1940. Although GM cannot determine when or the manner in which any of its hundreds of thousands of current or past employees first heard of these consequences or effects, to the best of GM's knowledge, there is no recognized, scientific substantiation that asbestos from any of GM's products creates an increased risk of illness to consumers or people who do repairs.

Lung Cancer – There have been many general statements about asbestos exposure and lung cancer, but the precise role, if any, of exposure to various types of asbestos in the

development of lung cancer is not yet known and is the subject of controversy in the medical and scientific community. GM also does not know of any study that establishes mechanics who perform clutch or brake repairs have an increased incidence of lung cancer. GM cannot determine when or the manner in which any of its hundreds of thousands of current or past employees first heard of a report of a causal association between some form of lung cancer and some type of asbestos exposure.

Mesothelioma – Mesothelioma is found in people who have had prolonged, excessive exposure to respirable amphibole asbestos fibers and in people with no history or indications of asbestos exposure. GM cannot determine when or the manner in which any of its hundreds of thousands of current or past employees first heard of these consequences or effects. To the best of GM's knowledge, there is no recognized, scientific substantiation that brake linings create an increased risk of illness to consumers or people who perform brake repairs. To the contrary, there are numerous published epidemiological studies that indicate mechanics who perform brake and clutch repairs have no increased risk of mesothelioma.

Other Cancers - Gastrointestinal, laryngeal, pharyngeal, and lymphatic cancers have been theorized to have many different causes. GM cannot determine when or the manner in which any of its present or past employees may have first heard of a theory that one of these cancers was caused by or associated with some type of asbestos exposure. To the best of GM's knowledge, there is no recognized, scientific substantiation that brake linings create an increased risk of illness to consumers or people who do repairs.

To the extent this interrogatory asks for more information, GM objects because it is vague, ambiguous, overly broad, unduly burdensome and will not lead to admissible evidence. GM also objects to the extent the interrogatory asks for any information protected by the attorney-client privilege or the work product doctrine.

INTERROGATORY NO. 36:

Prior to 1975, were there any memoranda written by, distributed or circulated among defendant's employees, agents or representatives concerning the potential health hazards concerned with asbestos or asbestos-containing products? If so, state:

a.    dates of each memorandum;

b.    name, address and job position of each individual who wrote each memorandum;

c.    attach copies of each memorandum hereto.


RESPONSE TO INTERROGATORY NO. 36:

GM does not know of any medical, scientific or epidemiological study that establishes that mechanics who perform clutch or brake repair have any increased incidence of disease and, to the contrary, the medical and scientific literature indicates that mechanics who perform brake and clutch repair do not have an increased risk of asbestos-related illness.  See also Response to Interrogatory No. 35.   To the extent that this interrogatory asks for more information, GM objects because it is vague, overly broad, burdensome, and it will not lead to admissible evidence.


INTERROGATORY NO. 37:

Did defendant ever provide any of the employees who worked with, handled, stored, or distributed asbestos-containing materials with any respirators, facemasks or protective clothing? If so, indicate what types of protective clothing, respirators or face masks were provided, describe when each type was first provided to each employee and describe why they were provided to each type of employee.

RESPONSE TO INTERROGATORY NO. 37:

See Response to Interrogatory No. 31. To the extent this request asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 38:

State the full name, job title and present residences, business and professional addresses of any and all persons who have knowledge of any relevant facts relating to this case and the defense of your company.

RESPONSE TO INTERROGATORY NO. 38:

Various people or entities may have some knowledge about facts relevant to each case and to General Motors defense. These typically include the parties and their lawyers, plaintiff's employers, plaintiff's treating and consulting physicians, experts who are or will be retained by GM, and any person identified through pretrial discovery and investigation or any individual whose name may appear in response to any discovery in this matter, or any related matter. See also Response to Interrogatory No. 39. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, burdensome, and it will not lead to admissible evidence. GM also objects to the extent this interrogatory asks for information protected by the attorney-client privilege or work product doctrine.

INTERROGATORY NO. 39:

State the name, address and credentials of each and every expert witness you intend to utilize at the time of trial, and annex hereto a copy of their report.

RESPONSE TO INTERROGATORY NO. 39:

GM has not determined what experts, exhibits, documents or witnesses it will use at trial. When GM makes that determination, it will supplement its response. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence. GM also objects to the extent this interrogatory violates the work product doctrine.

INTERROGATORY NO. 40:

Do you contend that the plaintiff's illness is a consequence of the negligence or the fault of a third party or anyone who is not a party to this action? if so, state the name and address of each such party and set forth all facts which support your contention.

RESPONSE TO INTERROGATORY NO. 40:

GM contends that any illness of plaintiff was neither caused by GM nor was the consequence of the negligence or fault of GM. GM reserves the right to supplement this response as further information becomes available through investigation or discovery. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, burdensome, and it will not lead to admissible evidence. GM also objects to the extent this interrogatory asks for information protected by the attorney-client privilege or work product doctrine.

INTERROGATORY NO. 41:

Do you contend that the illness and/or death of the plaintiff in this action was not causally related to an occupational exposure to asbestos dust and fibers? If so, give a full and detailed description of your contentions.

RESPONSE TO INTERROGATORY NO. 41:

GM contends that "occupational exposure to asbestos dust and fibers" alleged by plaintiff was not related to or caused by GM. Investigation is continuing and GM reserves the right to supplement this response as further information becomes available through investigation or discovery. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, burdensome, and it will not lead to admissible evidence. GM also objects to the extent this interrogatory asks for information protected by the attorney-client privilege or work product doctrine.

INTERROGATORY NO. 42:

Do you contend that other agents and/or substances caused the illness and/or death of the plaintiff in this matter? If so, identify each such agent and/or substance and set forth all facts to support your contentions.

RESPONSE TO INTERROGATORY NO. 42:

At this point in time, the defendant has not yet determined what other agents and/or substances, if any, may have caused the illness and/or death of plaintiff. This information will be provided in the defendant's expert witness reports. See also Responses to Interrogatory Nos. 40 and 41. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, burdensome, and it will not lead to admissible evidence. GM also objects to the extent this interrogatory asks for information protected by the attorney-client privilege or work product doctrine.

INTERROGATORY NO. 43:

Has defendant and/or its agents or employees obtained any statements from anyone who has knowledge of the facts surrounding this cause of action? if so, set forth:

-50-

a.      name, address and job position of the person that obtained the statement.

b.      the name, address and job position of the person who gave the statement;

c.      the date the statement was given;

d.      whether the statement is in writing, and if so, who has custody of it.

## RESPONSE TO INTERROGATORY NO. 43:

GM objects to this Interrogatory to the extent it asks for the production of materials protected by virtue of the attorney-client privilege or the attorney work product doctrine. Without waiving these objections, GM refers plaintiffs to all discovery conducted in this matter. GM reserves the right to supplement this response as further information becomes available through investigation or discovery.

## INTERROGATORY NO. 44:

Does defendant contend that plaintiff's decedent suffered injuries and/or death due to his own negligence? If so, set forth all facts which support your contentions.

## RESPONSE TO INTERROGATORY NO. 44:

GM objects to this Interrogatory to the extent it asks for the production of materials protected by virtue of the attorney work product doctrine. Without waiving these objections, GM refers plaintiffs to all discovery conducted in this matter. GM reserves the right to supplement this response as further information becomes available through investigation or discovery.

## INTERROGATORY NO. 45:

Does defendant have or has it had any plants, warehouses, factories, distribution facilities, or production facilities located in the State of New Jersey which were or are engaged in the importation, manufacture, processing, converting, compounding, packaging, distribution, and/or sale of asbestos or asbestos containing products? If so, for

-51-

each such plant, factory or facility which is or has been located in New Jersey, set forth the following information:

a.   The name and address of each such plan, factory, warehouse, distribution facility, manufacturing facility or production facility;

b.   The inclusive dates that each plant, factory, warehouse, distribution facility, manufacturing facility or production facility existed; and

c.   A complete and detailed description of all asbestos containing products that each plant, factory or production facility was engaged in producing, manufacturing, storing or distributing (include in your description the type of product and its generic and trade name).

RESPONSE TO INTERROGATORY NO. 45:

Although GM has operated assembly plants in New Jersey, GM did not manufacture brake linings or manual transmission clutch facings in New Jersey. To the extent this interrogatory asks for more information, GM objects because it is overly broad, vague, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 46:

As to any asbestos containing products or asbestos mined, converted, fabricated, produced, compounded, manufactured, processed, sold or distributed by defendant, state whether any was shipped, distributed or sold to, either directly or through a third party to: (a) General Motors, including all divisions, affiliates, predecessors and successors; (b) any General Motors facility in New Jersey, including all divisions, affiliates, predecessors, and successors; and (c) Multi-Chevrolet, Rahway, New Jersey.

RESPONSE TO INTERROGATORY NO. 46:

GM has not mined, milled or sold raw asbestos. See also Responses to Interrogatory Nos. 13, 14 and 45.

-52-

INTERROGATORY NO. 47:

If the answer to 47 is in the affirmative, state as to each asbestos product, or raw asbestos:

a.     Exactly what product(s) or type(s) of asbestos was (were) shipped or sold to: (a) General Motors, including all divisions, affiliates, predecessors and successors; (b) General Motors facility in New Jersey, including all divisions, affiliates, predecessors, and successors; and (c) Multi-Chevrolet, Rahway, New Jersey;

b.     The dates and quantities of each such product shipped or sold;

c.     whether any warnings, cautions, caveats or directions accompanied the materials so shipped, the date these appeared and the exact wordings of the warnings, cautions, caveats or directions and where the warnings, cautions, caveats or directions appeared;

d.     The name and address of any intermediate supplier or distributor who sold this defendant's products to: (a) General Motors, including all divisions, affiliates, predecessors and successors; (b) General Motors facility in New Jersey, including all divisions, affiliates, predecessors, and successors; and (c) Multi-Chevrolet, Rahway, New Jersey during the period referred to above;

e.     Did your company affix its corporate logo or insignia on the packages of asbestos containing motor vehicle parts that it distributed and sold? If so, describe the type of log or insignia which was used, indicate which products it was affixed to, and set forth the inclusive dates that each insignia or logo was utilized. Annex hereto a photograph or copy of each such logo described in this matter; and

f.     Please describe in detail the type of packages in which defendant has sold, distributed or manufactured asbestos containing motor vehicle parts, listing

the dates each type of package was used, a physical description thereof and description of any printed material or trademark that appeared thereon.

## RESPONSE TO INTERROGATORY NO. 47:

See Responses to Interrogatory Nos. 13, 14, 45 and 46. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

## INTERROGATORY NO. 48:

Have you discontinued manufacturing and/or distributing and/or supplying or selling any asbestos or asbestos products identified in these interrogatories? If so, set forth the following information:

a.     what such product is;

b.     The reasons therefor; and

c.     when the discontinuance took place.

## RESPONSE TO INTERROGATORY NO. 48:

GM stopped manufacturing drum brake linings in December 1998, when Delphi Automotive Systems became a corporate entity separate from General Motors. GM stopped manufacturing disc linings containing asbestos in 1985 because of production priorities. See also Response to Interrogatory No. 13. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

## INTERROGATORY NO. 49:

Did your company and/or its affiliates or subsidiaries do business with General Motors pertaining to asbestos, asbestos-containing products or motor vehicle parts? If so,

-54-

identify each such entity, indicate and describe the nature of the business that you did with each such entity, and set forth the dates this business relationship existed and attach any and all contractual agreement.

RESPONSE TO INTERROGATORY NO. 49:

This interrogatory is unintelligible and not properly directed to GM.

INTERROGATORY NO. 50:

Have you ever employed any employees or salesmen whose responsibility it was to sell your company's asbestos containing products to a geographical area encompassing the State of New Jersey? If so, for each such employee or salesman who worked for your company, indicate the dates of his employment, his name and address.

RESPONSE TO INTERROGATORY NO. 50:

See Response to Interrogatory Nos. 14 and 45. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 51:

During the years that your company manufactured and/or sold asbestos containing materials, did your company prepare and/or publish any sales or promotional literature which depicted and described these products? If so, describe the particular literature which your company prepared and indicate the information the literature contained. Describe who has custody of this literature at the present time.

RESPONSE TO INTERROGATORY NO. 51:

GM has advertised replacement parts, including brake and clutch linings, but has not kept copies of all advertisements and details about their publication. GM's

-55-

recommendations for maintaining and servicing brake and clutch linings are contained in numerous service manuals. GM has made copies of representative advertising and relevant excerpts or manuals available for inspection to plaintiffs' at its lawyers' office in the past and will do so again at a time convenient for all. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 52:

Has this defendant conducted, or caused to be conducted, tests, and/or studies of ambient asbestos dust created during the manufacture, processing and/or assembling, handling or distributing for sale, use or removal of asbestos containing products? If so, state:

     a.     Each facility, including location and address, at which any such test and/or study was conducted;

     b.     The date of each such test and/or study;

     c.     The individuals or entity conducting each such test and/or study;

     d.     whether this defendant has any documents containing the results and/or conclusions of each such study;

     e.     The identity of the custodian of such documents.

     f.     Attach a copy of said studies.

RESPONSE TO INTERROGATORY NO. 52:

. GM collected air samples during brake servicing at dealerships in 1975. W. H. Krebs conducted the air sampling at Circle Buick, New York, New York; West Side Pontiac, New York, New York and Circle Buick - East, New York, New York. On February 13, 1984, W. H. Krebs took air samples to evaluate the nature and extent of operator exposures to airborne asbestos during brake lining resurfacing operations at Pekin Machine & Parts Company, Pekin, Illinois. GM has previously provided copies of these

documents to plaintiffs' attorneys, but will provide additional copies upon request. GM also previously provided copies of articles written by Muhlbaier & Williams about emissions from brakes, but will provide additional copies upon request. Potential exposure to asbestos during manufacturing operations is not relevant or similar to automotive brake or clutch repair procedures. GM objects to this interrogatory because it is overly broad, vague, unduly burdensome and asks for information that will not lead to admissible evidence.

## INTERROGATORY NO. 53:

Prior to 1975, did any person file a Workers Compensation claim for asbestos-related injury against this defendant or against any Workers' Compensation insurance carrier which provided coverage for this defendant? If so, state the total number of such claims and, for the first 20 such claims state:

a.    The date of such claim;

b.    The name of the claimant;

c.    The case number;

d.    The court in-which the claim was filed;

e.    The identity of this defendant's custodian of documents evidencing such claims.

## RESPONSE TO INTERROGATORY NO. 53:

GM's records of workers' compensation claims are all not indexed in a way that would enable GM to isolate all claims related to an exposure to a particular material, like asbestos. Historically, workers' compensation records were not maintained in one central location, but were kept at or near the facilities where the claimant worked. Therefore, there is no compilation from which information can be obtained to respond to the details required by this interrogatory. GM manufactured asbestos-containing brake shoes at plants operated by Inland Division (later Delco Products and Delco Chassis, and Delphi

Chassis Divisions) in Dayton, Ohio, from 1939 to 1964, and at Vandalia, Ohio, from 1962 to 1998.GM manufactured some of the band material it used for automatic transmissions from 1965 to 1979 at Delco Moraine Division in Dayton, Ohio. In December of 1998, those divisions became part of Delphi Automotive Systems, a separate corporate entity. Records regarding GM employees who became employees of Delphi Automotive Systems were transferred to Delphi Automotive Systems. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence. GM also objects to the extent the interrogatory asks for any information protected by the attorney-client privilege or the work product doctrine.

INTERROGATORY NO. 54:

Identify any and all present or former directors, officers, employees, or agents of the defendant, any predecessor or any related company, other than persons appearing as adverse parties, who have testified against the defendant, any predecessor, or any related company in the last 20 years, in any proceeding involving the subject of asbestos, including, but not limited to, workers' compensation hearings, or any hearing before any governmental body.

RESPONSE TO INTERROGATORY NO. 54:

GM does not now know of any former directors, officers, or employees that have "testified against" GM in a proceeding involving claims of personal injury arising from exposure to asbestos. GM objects to this interrogatory because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 55:

With respect to your answer to the above interrogatory, identify any and all documents, including, but not limited to, transcripts or notes of testimony, referring to, relating to or reflecting the testimony of such expert witnesses or employees, directors, officers, or agents.

RESPONSE TO INTERROGATORY NO. 55:

See Response to Interrogatory No. 54.

INTERROGATORY NO. 56:

Other than the policies of insurance, do there exist any agreements providing for the benefit of Defendant, any predecessor or any related company, complete or partial indemnification for any or all expenses incurred with respect to any or all of these cases, including, but not limited to, judgments, settlements, costs, experts' fees and/or attorneys' fees?

RESPONSE TO INTERROGATORY NO. 56:

GM objects to this interrogatory because its overly broad, vague, irrelevant, unduly burdensome and will not lead to admissible evidence.

INTERROGATORY NO. 57:

If your answer to the preceding interrogatory is "Yes," for each such agreement:

a.   Identify all parties to the agreement and state the capacity of each such party (i.e. indemniter, indemnitee, etc.);

b.   State the terms of the agreement, including the nature of the expenses covered and, if applicable, any limitations on payment, reimbursement or indemnification; and

c.     Identify any and all documents referring to, relating to or reflecting said agreement.

RESPONSE TO INTERROGATORY NO. 57:

See Response to Interrogatory No. 56.

**GENERAL MOTORS ONLY:**

INTERROGATORY NO. 58:

Did you possess, occupy, own, or lease any premises in Bloomfield and/or Englewood, New Jersey from which you sold, stored, distributed from, handled or sold motor vehicle parts or asbestos- containing products? If so:

a.     For each of the premises:

    1.     State the address:

    2.     State the nature of your ownership or possessory interest;

    3.     State the inclusive date of that interest;

    4.     Identify the party from whom that interest was acquired;

    5.     Identify the party, if any, to whom that interest was transferred;

    6.     The nature of the business conducted;

    7.     Attach copies of all photographs, plans, diagrams or other documents depicting the premises.

b.     Identify every contract to which you were a party or of which you have knowledge wherein the performance of such contract involved the installation, removal, disturbing or handling of any asbestos or asbestos containing products at the premises identified above. For each such contract:

    1.     Identify the parties to the contract;

05-44481-rdd    Doc 1307-3    Filed 11/28/05    Entered 11/28/05 17:18:54    Exhibit A
Pg 67 of 115

2.  Provide a general description and specific location of the work to be performed by each party to the contract;

3.  Identify and describe the nature of the raw asbestos or asbestos containing products installed, removed, disturbed or handled in the performance of the contract;

4.  State the dates of the contract and the dates of performance; and

5.  Attach a copy of each contract.

c.  Except as provided in response to subpart (c), has any work other than routine maintenance been done on or to the premises that involved the installation, removal, disturbing or handling of asbestos or asbestos containing products? If so, for each such instance:

1.  State the inclusive dates of the work;

2.  Provide a general description and specific location of the work;

3.  State whether the work was done by you and/or your employees;

4.  Identify and describe the nature of the asbestos or asbestos containing products installed, removed, handled or disturbed;

5.  Identify from whom the asbestos or asbestos containing products were acquired.

d.  Has any asbestos abatement effort been made at the premises? If so, for each such effort:

1.  Identify who did the work;

2.  State the inclusive dates thereof;

3.  State whether samples were taken, and, if the samples still exist,

4.  Identify the custodian of the samples;

5.  State whether any material was tested, and, if so, what were the results of each test;

6.   Identify each test result with sufficient particularity for purposes of request for production of documents, or, in the alternative, attach a copy to your answers to these interrogatories.

e.   Including claims for insurance coverage or reimbursement, have you filed suit against, made a claim, or otherwise sought to recover from any person or entity for some or all of the cost of asbestos abatement? If so:

1.   Identify the person or entity against whom you have filed suit or otherwise sought to recover;

2.   If you have filed suit, state the court and venue in which the action was filed, the date on which it was filed, the docket number, and identify all plaintiffs and defendants and their counsel of record;

3.   State whether or not the case has been resolved, and, if so, what was the status or disposition.

f.   Either (1) attach all documents evidencing the information sought in this Interrogatory and its subparts to your answers to these Interrogatories, or (2) attach disks containing such data, or (3) describe such documents with sufficient particularity that they may be made the subject of a request for production of documents.

g.   Identify the person(s) presently most knowledgeable about the information sought in this interrogatory and/or its subparts.

RESPONSE TO INTERROGATORY NO. 58:

Although GM has operated assembly plants in New Jersey, GM did not manufacture brake linings or manual transmission clutch facings in New Jersey. See also Response to Interrogatory No. 14. To the extent this interrogatory asks for more information, GM objects because it is overly broad, vague, unduly burdensome and will not lead to admissible evidence.

## MULTI-CHEVROLET ONLY:

INTERROGATORY NO. 59:

Did you possess, occupy, own, or lease any premises in the Rahway, New Jersey area from which you sold, stored, distributed from, handled or sold motor vehicle parts or asbestos- containing products? If so:

a.    For each of the premises:

    1.    State the address:

    2.    State the nature of your ownership or possessory interest;

    3.    State the inclusive date of that interest;

    4.    Identify the party from whom that interest was acquired;

    5.    Identify the party, if any, to whom that interest was transferred;

    6.    The nature of the business conducted; and

    7.    Attach copies of all photographs, plans, diagrams or other documents depicting the premises.

b.    Identify every contract to which you were a party or of which you have knowledge wherein the performance of such contract involved the installation, removal, disturbing or handling of any asbestos or asbestos containing products or the renovation, repairs, or clean up related to any fire damage at the premises identified above. For each such contract:

    1.    Identify the parties to the contract;

    2.    Provide a general description and specific location of the work to be performed by each party to the contract;

    3.    Identify and describe the nature of the raw asbestos or asbestos containing products installed, removed, disturbed or handled in the performance of the contract;

    4.    State the dates of the contract and the dates of performance; and

    5.    Identify the persons and entities that performed the work.

c.    Except as provided in response to subpart (c), has any work other than routine maintenance been done on or to the premises relating to any fire damage? If so, for each such instance:

1.    State the inclusive dates of the work;

2.    Provide a general description and specific location of the work;

3.    State whether the work was done by you and/or your employees;

4.    Identify and describe the nature of the asbestos or asbestos containing products installed, removed, handled or disturbed; and

5.    Identify the persons and entities that performed the work.

d.    Has any asbestos abatement effort been made at the premises? If so, for each such effort:

1.    Identify who did the work;

2.    State the inclusive dates thereof;

3.    State whether samples were taken, and, if the samples still exist,

4.    Identify the custodian of the samples;

5.    State whether any material was tested, and, if so, what were the results of each test;

6.    Identify each test result with sufficient particularity for purposes of request for production of documents, or, in the alternative, attach a copy to your answers to these interrogatories.

e.    Including claims for insurance coverage or reimbursement, have you filed suit against, made any claims, or otherwise sought to recover from any person or entity for some or all of the cost of asbestos abatement or for the property damage caused by a fire for any of the premises identified in response to this interrogatory? If so:

1.    Identify the person (?r entity against whom you have filed suit or otherwise sought to recover;

-64-

2. If you have filed suit, state the court and venue in which the action was filed, the date on which it was filed, the docket number, and identify all plaintiffs and defendants and their counsel of record;

3. State whether or not the case has been resolved, and, if so, what was the status or disposition;

4. Identify the insurance company name, policy number(s) and claim number(s) for any claims for fire property damage identified.

f. Has there been any fires at any of the premises? If so, please set forth:

1. The date;

2. Provide a general description and a specific location of the fire;

3. State the cause of the fire;

4. State whether clean-up work was done as a result of the fire;

5. Identify who performed the cleanup work;

6. Identify and describe the nature of the cleanup work;

7. Identify every contract to which you were a party which you have knowledge wherein the performance of such contract involved the cleanup, repair or renovation of the premises as a result of a fire;

8. Identify the parties to the contract;

9. Provide a general description and location of the work to be performed by each party to the contract;

10. Set forth the date of the contract and the dates of performance;

g. Either (1) attach all documents evidencing the information sought in this Interrogatory and its subparts to your answers to these Interrogatories, or (2) attach disks containing such data, or (3) describe such documents with sufficient particularity that they may be made the subject of a request for production of documents.

h. Identify the person(s) presently most knowledgeable about the information sought in this interrogatory and/or its subparts.

RESPONSE TO INTERROGATORY NO. 59:

See Response to Interrogatory No. 58.  To the extent this interrogatory asks for

more information, GM objects because it is vague, overly broad, unduly burdensome and

will not lead to admissible evidence.

# V E R I F I C A T I O N

STATE OF MICHIGAN  )
                   ) ss.
COUNTY OF WAYNE  )

Susan Moss says that she is authorized by General Motors Corporation under applicable law

and rules to verify and does verify these **RESPONSES OF GENERAL MOTORS**

**CORPORATION TO PLAINTIFF'S FIRST SET OF INTERROGATORIES** on behalf of

General Motors Corporation.

_____
Susan Moss
Authorized Agent

Subscribed and sworn to before me

this 12th day of September 2003.

_____
Notary Public

MARGUERITE J. LITTLE
NOTARY PUBLIC MACOMB CO., MI
MY COMMISSION EXPIRES Jul 27, 2008
ACTING IN WAYNE COUNTY, MI

BUTTITTA

LAVIN, COLEMAN, O'NEIL, RICCI, FINARELLI & GRAY
307 Fellowship Road
Suite 103
Mount Laurel, New Jersey 08054
(856) 778-5544

By:    Frank Friestedt, Esquire
       Edward T. Finch, Esquire
       *Attorney for Defendant, General Motors Corporation*

| | |
|---|---|
| SUSAN M. BUTTITTA, individually and as the Executrix to the ESTATE OF MARK BUTTITTA, | SUPERIOR COURT OF NEW JERSEY LAW DIVISION – BERGEN COUNTY |
| Plaintiff | DOCKET NO.: BER-009592-02 |
| v. | RESPONSES OF GENERAL MOTORS CORPORATION TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS |
| ALLIED-SIGNAL, INC., et al., | |
| Defendants | |

## GENERAL OBJECTION

General Motors Corporation (GM) objects to these Interrogatories because they are overly broad, unduly burdensome, and unlikely to lead to admissible evidence. Most are unlimited in time and scope and extend far beyond any possible connection with plaintiff.

## PRELIMINARY STATEMENT

Although Plaintiff has not identified any particular product GM manufactured or distributed that she claims is defective, GM is informed that plaintiff's claims against GM may be based on decedent's alleged exposure to asbestos from brake linings or manual transmission clutch plates. These responses related to brake linings and manual transmission clutch plates:

## RESPONSES OF DEFENDANT GENERAL MOTORS CORPORATION TO PLAINTIFF'S FIRST REQUEST FOR PRODUCTION OF DOCUMENTS

REQUEST NO. 1:

Any and all writings, or documents of any nature whatsoever, including but not limited to, any purchase orders, invoices, contracts, shipping records, employee files, accounting records, order books, account books, contract books, inventory records, specification standards, engineering standards or sales ledgers of the Defendant, any predecessor or related companies as identified in Interrogatories 5 through 10, which refer, reflect, concern or relate to in any way the sale, purchase, receipt, distribution, transfer, shipment, specification, application, installation, removal, storage, or disposal of any asbestos, or asbestos-containing product to General Motors or Multi-Chevrolet.

RESPONSE TO REQUEST NO. 1:

GM purchased drum brake linings that others manufactured to install on its automobiles and light duty trucks. GM no longer has documents regarding its purchases for the extensive time period set forth by plaintiffs because of its normal record retention policies. See Responses to Interrogatory Nos. 13, 14 and 15.

To the extent this request asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence. GM also objects to the extent the request asks for any information protected by the attorney-client privilege or the work product doctrine.

REQUEST NO. 2:

Any and all writings or documents of any nature whatsoever, including but not limited to, any purchase orders, invoices, contracts, shipping records, employee files, accounting records, order books, account books, contract books, inventory records, specification standards, engineering standards, or sales ledgers of the Defendant, any company or entity identified in Interrogatories 5 through 10, which refer, reflect, concern, or relate to in any way the sale, purchase, receipt, distribution, transfer, shipment, specification, application, installation, removal, storage, or disposal of any asbestos, or

-2-

asbestos-containing product from any of the other Defendants named in this action or any
other manufacturer, distributor, seller or provider of any such products to this Defendant,
any predecessor or related companies.

## RESPONSE TO REQUEST NO. 2:

See Response to Request No. 1. GM also cannot respond to this request because
it is unclear who the other defendants in this "action" are. Investigation and discovery
continues. To the extent this request asks for more information, GM objects because it is
vague, overly broad, unduly burdensome and will not lead to admissible evidence.

## REQUEST NO. 3:

Any and all documents which reflect the dissemination by this Defendant, any
predecessor or related companies as identified in interrogatories 5 through 10, of any and
all of the writings or documents referred to in the immediately preceding request, to
customers, suppliers, distributors, contractors, subcontractors, unions, employees of the
Defendants, or any other persons or entities to whom any such dissemination was made.

## RESPONSE TO REQUEST NO. 3:

See Response to Request No. 2. To the extent this request asks for more
information, GM objects because it is vague, overly broad, unduly burdensome and will
not lead to admissible evidence.

## REQUEST NO. 4:

Any and all writings or documents of any nature whatsoever disseminated by this
Defendant, any predecessor or related companies as identified in interrogatories 5
through 10 to its customers, suppliers, distributors, employees, contractors,
subcontractors, unions and their workers, relating, referring, reflecting or concerning any

warnings, cautions, recommendations, guidance, instructions or proposals concerning, relating, reflecting, or referring to the use, application, installation, storage, or removal or any asbestos or asbestos-containing product.

RESPONSE TO REQUEST NO. 4:

Representative copies of GM's warnings and manuals have been previously produced to counsel for Plaintiffs but GM will provide copies again upon request. See also Response to Interrogatory No. 17. To the extent this request asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

REQUEST NO. 5:

Any and all writings or documents of any nature whatsoever reflecting, referring, concerning or relating to any meetings of any health and safety committee, industrial hygiene committee, risk evaluation committee or any other safety or health-related committee within the organization of this Defendant, any predecessor or related companies as identified in interrogatories 5 through 10, wherein asbestos or asbestos-containing products and/or the potential health effects of asbestos were discussed, referred to, related or any way spoken about.

RESPONSE TO REQUEST NO. 5:

GM does not know of any study that establishes is products are hazardous. See also Responses to Interrogatory Nos. 17 and 20. To the extent this request asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

-4-

REQUEST NO. 6:

Any and all writings or documents of any nature whatsoever referring, reflecting, concerning or relating to asbestos and/or the potential health effects of asbestos authored by any officer, director, employee, agent, or consultant of this Defendant, any predecessor or related company as identified in interrogatories 5 through 10.

RESPONSE TO REQUEST NO. 6:

There is no list or catalogue of every written statement that may "relate" to asbestos that each of GM's hundreds of thousands of past and present employees may have ever made and there is no reasonable or practical way for GM to respond to such a broad and general request. See also Response to Request No. 7. To the extent this request asks for more information, GM objects because it is overly broad, vague, ambiguous, burdensome and it will not lead to admissible evidence.

REQUEST NO. 7:

Any and all writings or documents of any nature whatsoever in the possession of this Defendant, any predecessor or related company as identified in interrogatories 5 through 10 referring, reflecting, concerning or relating to asbestos and/or the potential health effects of asbestos regardless of whether the author or authors were employees, agents, officers, directors or consultants of the Defendant, any predecessor or related companies as identified in interrogatories 5 through 10.

RESPONSE TO REQUEST NO. 7:

GM does not know of any study that establishes that potential exposure to asbestos during brake or clutch repair operations constitutes a health hazard. GM's many facilities in the United States have or have had many formal and informal libraries and those libraries have received thousands of periodicals. There is no central listing or

catalogue file for all of these libraries or collections that GM or anyone else could review in order to respond to this request.

There are many published articles that establish that mechanics who perform brake or clutch repairs are not injuriously exposed to asbestos and that they do not have any increased risk of asbestos-related disease.   The list of articles, which are equally available to plaintiff's lawyers,  includes the following:

1.   Newhouse, M.L., Sullivan, K.R. - "A Mortality Study of Workers Manufacturing Friction Materials: 1941-86." September 19, 1988, British Journal of Industrial Medicine, Volume 49.

2.   Moore, L. Lamont - "Asbestos Exposure Associated With Automotive Brake Repair in Pennsylvania." American Industrial Hygiene Association Journal, Volume 49 (1988).

3.   Lippmann, Morton - "Asbestos Exposure Indices." Institute of Environmental Medicine, New York University Medical Center, July 18, 1987.

4.   Cheng, V.K. I., and O'Kelly, F.J. - "Asbestos Exposure in the Motor Vehicle Repair and Servicing Industry in Hong Kong." J. Soc. Occup. Med., Volume 36 (1986).

5.   Schiffman, Mark H., Pickle, Linda., et al. - "Case Control Study of Diet and Mesothelioma in Louisiana." Cancer Research, Volume 48, May 15, 1988.

6.    Wong, Otto - "Considerations of Specificity in Assessing the Relationship Between Asbestos and Cancer." American Journal of Industrial Medicine, Volume 23, (1993).

7.    Connelly, Roger R., Spirtas, Robert, et al., - "Demographic Patterns for Mesothelioma in the United States." JNCI. Vol. 78, No. 6, June 1987.

8.    Rushton, L., Alderson, M.R., and Nagarajah, C.R. - "Epidemiological Survey of Maintenance Workers in London Transport Executive Bus Garages and Chiswick Works." British Journal of Industrial Medicine, Volume 40 pp. 340-345 (1983).

9.    Fischbein, Alf; Rohl, Arthur; Suzuki, Yasunosuke; and Bigman, Oscar - "Interstitial Pulmonary Fibrosis in An Automobile Body Shop Worker." Toxicology Letters, 27 (1985).

10.    Gustavsson, Per; Plato, Nils; Lindstrom, Eva-Britta; and Hogstedt, Christer - "Lung Cancer and Exposure to Diesel Exhaust Among Bus Garage Workers." Scand. J. Work Environ Health 1990, Volume 16.

11.    Lerchen, Mary L.; Wiggins, Charles L.; and Samet, Jonathan M. - "Lung Cancer and Occupation in New Mexico." JNCI, Vol. 79, No. 4, October, 1987.

12.    McDonald, Alison and McDonald, J. Corbett - "Malignant Mesothelioma in North America." Cancer, Volume 46 (1980).

13.    Hansen, Eva. M.D. - "Mortality of Auto Mechanics, A Ten-Year Follow-Up." Scand J. Work Environ Health, Volume 15 pp. 43-46 (1989).

14.    Berry, G. and Newhouse, M.L. - "Mortality of Workers Manufacturing Friction Materials Using Asbestos." British Journal of Industrial Medicine, 1983 (Volume 40).

15.    Olsen, Jorgen H., and Jensen, Ole M. - "Occupation and Risk of Cancer in Denmark, An Analysis of 93,810 Cancer Cases, 1970-1979."Scand J. Work Environ Health, Volume 13 (1987).

16.    Lee, G. L. - "Removing Dusts from Brake Assemblies During Vehicle Servicing - Alternative Cleaning Methods." Ann. Occup. Hygiene, Volume 13 (1970).

17.    Hickish, D. E., and Knight, K. L. - "Exposure to Asbestos During Brake Maintenance" Ann. Occup. Hygiene, Volume 13, (1970).

18.    Knight, K.L. and Hickish, D. E. - "Investigations Into Alternative Forms of Control for Dust Generated During the Cleaning of Brake Assemblies and Drums" Ann. Occup. Hygiene, Volume 13 (1970).

19.    McDonald, A.D.; Harper, A; Arvar, O.A.; and McDonald, J.C. - "Epidemiology of Primary Malignant Mesothelial Tumors in Canada" Cancer, Volume 26, (1970).

20.    Oels, H.; Harrison, E. G.; Carr, D., etc. - "Diffuse Malignant Mesothelioma of the Pleura: A Review of 37 Cases" Official Pub. Of the American College of Chest Physicians, Volume 60, 1971.

21.    Castleman, Barry; Camarota, Lucille A.; Fritsch, Albert J.; Mazzocchi, Sam; and Crawley, Robert G. - "The Hazards of Asbestos for Brake Mechanics" Public Health Reports, Volume 90 (1975).

22.    Rohl, A.N.; Langer, A.M.; Klimentidis, R.; Wolff, M.S.; and Selikoff, I.J.; - "Asbestos Content of Dust Encountered in Brake Maintenance and Repair" Proc. Soc. Med., Volume 70 January, 1977.

23.    Bruckman, Leonard; Rubino, Robert; and Christine, Barbara - "Asbestos and Mesothelioma Incidence in Connecticut" Journal of the Air Pollution Control Assoc., Volume 27, (1977).

24.    Kannerstein, Milton; Churg, Jacob; and McCaughey, Elliott - "Asbestos and Mesothelioma: A Review" Pathology Annual, Part 1, Volume 13 (1978).

25.  McDonald, A.D.; Fry, J.S.; Woolley, A.J.; and McDonald, J.C. - "Dust Exposure and Mortality in an American Chrysotile Asbestos Friction Products Plant" British Journal of Industrial Medicine 1984, Volume 41.

26.  Greenberg, Morris, and Davies, Lloyd - "Mesothelioma Register 1967-1968" British Journal of Industrial Medicine, 1974, Volume 31.

27.  Lorimer, William V.; Rohl, Arthur N.; Miller, Albert; Nicholson, William I.; and Selikoff, Irving I. - "Asbestos Exposure of Brake Repair Workers in the United States" The Mount Sinai Journal of Medicine, Vol. 43, No. 3, May-June 1976.

28.  Kjell, Marcus; Jarvholm, Bengt; and Larson, Sven - "Asbestos-Associated Lung Effects in Car Mechanics" Scand J. Work Eviron Health, Volume 13 (1987).

29.  Brisman, J. and Jarvholm, Bengt - "Asbestos Associated Tumors in Car Mechanics" British Journal of Industrial Medicine, Volume 45, pp 645-646 (1988).

30.  Rodelsperger, K.; Jahn, H.; Bruckel, B.; Manke, J.; Paul R.; and Woltowitz, H.- "Asbestos Dust Exposure During Brake Repair" American Journal of Industrial Medicine, Volume 10 (1986).

31.  Kauppinen, Timo and Korhonen, Kari - "Exposure to Asbestos During Brake Maintenance of Automotive Vehicles by Different Methods" American Industrial Hygiene Society, Volume 48 (1987).

C:\WINDOWS\TEMP\GWPRINT\ResponsetoRP-res 1.doc

32.    Rohl, Arthur N.; Langer, Arthur M.; Wolff, Mary S.; and Weisman, Irving "Asbestos Exposure During Brake Lining Maintenance and Repair" Environmental Research, Volume 12 (1976).

33.    Lynch, Jeremiah R. - "Brake Lining Decomposition Products"   Air Pollution Control Assn., Volume 18 (1986).

34.    Enterline, Philip E. and McKiever, Margaret F. - "Differential Mortality from Lung Cancer by Occupation," J. Occup. Med. 5(6) pp. 283-290 (1963).

35.    Newhouse, Muriel L. and Thompson, Hilda - "Mesothelioma of Pleura and Peritoneum Following Exposure to Asbestos in the London Area," British Journal Industrial Medicine, Volume 22 (1965).

36.    The Annals of Occupational Hygiene, Volume 13, 1970, Papers from the Conference on Exposure to Asbestos During Brake and Clutch Maintenance, held at Ford's Central Office, Brentwood, Essex, England, March, 1969, including:

   a.    "Asbestos and Asbestosis," Smither, W.J.

   b.    "Hygiene Standards For Asbestos," Roach, S.A.

   c.    "Exposure to Asbestos During Brake Maintenance," Hickish, D.E., and Knight, K.L.

   d.    "Technical Implementation Of The New Asbestos Regulations," Luxon, S.

   e.    "Possible Alternatives To Asbestos As A Friction Material," Hatch, D.

-11-

f.   "Control of The Use of Asbestos-Containing Friction Materials," Bentley, M.L.

g.   "Removing Dusts From Brake Assemblies During Vehicle Servicing-Alternative Cleaning Methods," Lee, G.L.

h.   "Investigations Into Alternative Forms of Control For Dust Generated During The Cleaning of Brake Assemblies and Drums," Knight, K.L., and Hickish, D.E.

37.   Jacko, Michael G., DuCharme, Robert T., and Somers, Joseph H. - "Brake and Clutch Emissions Generated During Vehicle Operation." Society of Automotive Engineers, Inc., 1973.

38.   Davis, J.M., and Coniam, S.W. - "Experimental Studies on the Effects of Heated Chrysotile and Automobile Brake Lining Dust Injected Into the Body Cavities of Mice," Experimental and Molecular Pathology, Volume 19 (1973).

39.   "Asbestos and Brake Linings." Asbestos Information Association, Washington (1976).

40.   "Fabrication and Use of Asbestos Friction Materials." Asbestos Information Association, Washington (1976).

41.   Brenner, Joseph; Sordillo, Peter; Magill, Gordon; and Golbey, Robert. - "Malignant Mesothelioma of the Pleura" Cancer, Volume 49 (1982).

-12-

42.   Enterline, Philip E.; and Henderson, Vivian - "Type of Asbestos and Respiratory Cancer in the Asbestos Industry." Arch Environ Health/Volume 27 (1973).

43.   Peterson, J.T.; Greenberg, S.D.; and Buffler, P.A. - "Non-Asbestos-Related Malignant Mesothelioma" Cancer, Volume 54.

44.   Teta, Mary Jane; Lewinsohn, Hilton C.; Meigs, Wister; Vidone, Romeo; Moward, Linda; and Flannery, John - "Mesothelioma in Connecticut, 1955-1977." Journal of Occupational Medicine, Volume 25 (1983).

45.   Weill, Hans; Hughes, Janet and Waggenspack, Carmel - "Influence of Dose and Fiber Type On Respiratory Malignant Risk In Asbestos Cement Manufacturing." American Review of Respiratory Disease, Volume 120 (1979).

46.   Wong, Otto - "Chrysotile Asbestos, Mesothelioma and Garage Mechanics." American Journal of Industrial Medicine, Vol. 21 (1992).

47.   Wong, Otto -"Consideration of Specificity in Assessing the Relationship Between Asbestos and Cancer." American Journal Industrial Medicine, Volume 23 pp. 521-523 (1993).

48.   Wright, W.E.; Sherwin, R.P.; Dickson, Elizabeth A.; Bernstein, L.; Fromm, Janine; and Henderson, B.E. - Malignant Mesothelioma: Incidence, Asbestos Exposure

and Reclassification of Histopathology." British Journal Industrial Medicine, Volume 41 (1992).

49.    Plato, Nils; Tornling, Gorna; Hogstedt, Christer, and Krantz, Staffan - "An Index of Past Asbestos Exposure As Applied To Car and Bus Mechanics." British Occupational Hygiene Society, 1995.

50.    Yeung, Paul; Patience, Kim, Apthorpe, Linda, and Willcocks, Deborah. "An Australian Study to Evaluate Worker Exposure to Chrysotile In The Automotive Service Industry." Applied Occupational & Environmental Hygiene. Volume 14: 448-457, 1999.

51.    Williams, Ronald L. and Muhlbaier, Jean L. "Asbestos Brake Emissions." Environmental Science Department, General Motors Research Laboratories, Warren, Michigan, May 22, 1981.

52.    Williams, Ronald L. and Muhlbaier, Jean L.  "Characterization of Asbestos Emissions from Brakes," Environmental Science Department, General Motors Research Laboratories, Warren, Michigan, November 1980.

53.    Williams, Ronald L. and Muhlbaier, Jean L.  "Contribution of Brake Lining Wear to Urban Airborne Asbestos."  Environmental Science Department, General Motors Research Laboratories, Warren, Michigan, December 16, 1980.

54.    Williams, Ronald L. and Muhlbaier, Jean L. "Design and Construction of a

-14-

Test Facility to Characterize Brake-Wear Emissions." Environmental Science

Department, General Motors Research Laboratories, Warren, Michigan, November 24,

1980.

55.    Williams, Ronald L. and Muhlbaier, Jean L. "Gas and Particle Emission Rates

From Asbestos Brake Linings." Environmental Science Department, General Motors

Research Laboratories, November 6, 1980.


56.    Armstrong, Bruce, Musk, A. William , Baker, James E., Hunt, Jennifer M.,

Newall, Christopher C., Henzell, Helen R., Blunsdon, Betsy S., Clarke-Hundley, Denise,

Woodward, Stephen D. and Hobbs, Michael S. T. "Epidemiology of Malignant

Mesothelioma in Western Australia." The Medical Journal of Australia, July 21, 1984.


57.    Fitzpatrick, P. "A Different Perspective on Hazards of Braking." Abix –

Australasian Business Intelligence (West Australia) :12.


58.    Roggli, Victor and Sanders, Linda Asbestos "Asbestos Content of Lung

Tissue and Carcinoma of the Lung: a Clinicopathologic Correlation and Mineral Fiber

Analysis of 234 Cases." Ann Occup. Hg., Vol. 44, No. 2, pp. 109-117 (2000).


59.    Roggli, VL, Sharma, A, Butnor, KJ, Sporn, T, and Vollmer, RT, "Malignant

Mesothelioma and Occupational Exposure to Asbestos: A Clinicopathological Correlation

of 1445 Cases." Ultrastructural Pathology 26:55-65 (2002)

C:\WINDOWS\TEMP\GWPRINT\ResponsetoRP-res_1.doc

60.    Weir, John M. and Dunn, John E. "Smoking and Mortality: A Prospective Study" Cancer 25(1) 105-112

61.    Griffiths, D.J., Nicholson, A.G. and Weiss, R.A. "Detection of SV40 Sequences in Human Mesothlioma" Dev Biol Stand. Basel, Karger, Vol. 94 pp.127-136 (1998)

62.    Procopio, A., Marinacci, R., Marinetti, M.R., Strizzi, L., Paludi, D., Iessi, T., Tassi, G., Casalini, A., Modesti, A. "SV40 Expression in Human Neoplastic and Non-Neoplastic Tissues: Perspectives on Diagnosis, Prognosis and Therapy of Human Malignant Mesothelioma" Dev Biol Stand. Basel. Karger, Vol. 94 pp. 361-367 (1998)

63.    Braun, Daniel C., and Truan, T. David "An Epidemiological Study of Lung Cancer in Asbestos Miners" AMA Archives of Industrial Health 17 (6) pp. 634-653

64.    Wynder, Ernest L. and Graham, Evarts A "Tobacco Smoking as a Possible Etiologic Factor in Bronchiogenic Carcinoma – A Study of Six Hundred and Eighty-Four Proved Cases" The Journal of the American Medical Association, Vol. 143, No. 4, May 27, 1950

65.    Williams, Roger R. and Horm, John W. "Association of Cancer Cites With Tobacco and Alcohol Consumption and Socioeconomic Status of Patients: Interview Study From the Third National Cancer Survey" J Natl. Cancer Inst. Vol. 58, No. 3, March 1977

-16-

66.    McLaughlin, Joseph K., Hrubeck, Zdnek, Blot, William J., and Fraumeni, Joseph F. "Smoking and Cancer Mortality Among U.S. Veterans: A 26-Year Follow Up" Int. J. Cancer, 60 pp. 190-193 (1995)

67.    Siemiatycki, Jack, Krewski, Daniel, Franco, Eduardo and Kaiserman, Murray "Associations between Cigarette Smoking and Each of 21 Types of Cancer: A Multi-Site Case-Control Study" International Journal of Epidemiology Vol. 24, No. 3 (1995)

68.    McDonald, Alison D., and Fry, John S. "Mesothelioma and fiber type in three American asbestos factories – Preliminary report" Scand J Work Environ Health 8 (1982) Suppl 1, 53-58

69.    Cicioni, Carla, London, Stephanie J., Garabrant, David H., Bernstein, Leslie, Phillips, Karen and Peters, John M. "Occupational Asbestos Exposure and Mesothelioma Risk in Los Angeles County:  Application of an occupational Hazard Survey Job-Exposure Matrix" American Journal of Industrial Medicine 20 pp. 371-379 (1991)

70.    Fletcher, A.C., Engholm, G., and Englund, A. "The Risk of Lung Cancer from Asbestos among Swedish Construction Workers: Self-Reported Exposure and a Job Exposure Matrix Compared" International Journal of Epidemiology Vol. 22 No. 6 (Suppl. 2) © International Epidemiological Association (1993)

71.   Carbone, Michele, Pass, Harvey I., Rizzo, Paola, Marinetti, MariaRita, Di
Muzio, Marcello, Mew, Daphne J.Y., Levine, Arthur S. and Procopio, Antonio "Simian
virus 40-like DNA sequences in human pleural mesothelioma" Oncogene 9 pp. 1781-1970
(1994)

72.   Cristaudo, A., Vivaldi, A., Sensales, G., Guglielmi, G., Ciancia, E., Elisei, R.,
and Ottenga, F. "Molecular Biology Studies on Mesothelioma Tumor Samples:
Preliminary Data on H-Ras, P21, and SV40" Journal of Environmental Pathology,
Toxicology and Oncology, 14(1) 29-34 (1995)

73.   Strickler, H.D., Goedert, J.J., Fleming, M, Travis, W.D., Williams, A.E.,
Rabkin, C.S., Daniels R.W. and Shah, K.V. "Simian Virus 40 and Pleural Mesothelioma in
Humans" Cancer Epidemiology, Biomarkers & Prevention Vol. 5 473-475, June 1996

74.   De Luca, Antonio, Baldi, Alfonso, Esposito, Vincenzo, Howard, Candace M.,
Bagella, Luigi, Rizzo, Paola, Caputi, Mario, Pass, Harvey I., Giordano, Giovan Giacomo,
Baldi, Feliciano, Carbone, Michele and Giordano, Antonio "The retinoblastoma gene
family pRb/p105, p107, pRb2/p130 and simian virus-40 large T-antigen in human
mesotheliomas" Nature Medicine, Vol. 3 No. 8 August 1997

75.   Mutti, L., De Luca, A., Claudio, P.P., Convertino, G., Carbone, M., and
Giordano, A. "Simian Virus 40-like DNA Sequences and large-T Antigen-Retinoblastoma
Family Protein pRb2/p130 Interaction in Human Mesothelioma" Dev Biol Stand. Basel,

Karger, 199, vol. 94, pp 47-53

76.  Mutti, L., De Luca, A., Claudio, P.P., Convertino, G., Carbone, M., and
Giordano, A. "Simian Virus 40-like DNA Sequences and large-T Antigen-Retinoblastoma
Family Protein pRb2/p130 Interaction in Human Mesothelioma" Dev Biol Stand. Basel,
Karger, vol. 94, pp 47-53 (1998)


77.  Levresse, V., Moritz, S., Renier, A., Kheuang, L., Galateau-Salle, F., Mège,
J.P., Piedbois, P., Salmons, B., Guenzburg, W., and Jaurand M.C. "Effect of simian virus
large T antigen expression on cell cycle control and apoptosis in rat pleural mesothelial
cells exposed to DNA damaging agents" Oncogene 16, 1041-1053 (1998)


78.  Testa, Joseph R., Carbone, Michele, Hirvonen, Ari, Khalili, Kamel, Brynska,
Barbara, Linnainmaa, Kaija, Pooley, Frederick D., Rizzo, Paola, Rusch, Valerie, and Xiao,
Gung-Hui "A Multi-Institutional Study Confirms the Presence and Expression of Simian
Virus 40 in Human Malignant Mesotheliomas" Cancer Research 58 4505-4509, October
15, 1998


79.  Galateau-Salle, F., Bidet, Ph., Iwatsubo, Y., Gennetay, E., Reiner, A.,
Letourneux, M., Pairon, J.C., Moritz, S., Brochard, P., Jaurand, M.N., and Freymuth, F.
"SV40-Like DNA Sequences in Pleural Mesothelioma, Bronchopulmonary Carcinoma, an
Non-malignant Pulmonary Diseases" Journal of Pathology, Vol. 184 252-257 (1998)

80.    Pass, Harvey I., Donington, Jessica S., Wu, Peter, Rizzo, Paola, Nishimura, Michael, Kennedy, Ronald, Carbone, Michele "General Thoracic Surgery – Human Mesotheliomas Contain The Simian Virus-40 Regulatory region and Large Tumor Antigen DNA Sequences" The Journal of Thoracic and Cardiovascular Surgery Volume 116, Number 5, November 1998

81.    Strickler, Howard D., Rosenberg, Philip S., Devesa, Susan S., Hertel, Joan, Fraumeni, Joseph F., and Goedert, James J. "Contamination of Poliovirus Vaccines With Simian Virus 40 (1955-1963) and Subsequent Cancer Rates" JAMA 279: 292-295 (1998)

82.    Fisher, Susan G., Weber, Laura, and Carbone, Michele "Cancer Risk Associated with Simian Virus 40 Contaminated Polio Vaccine" Anticancer Research 19: 2173-2180 (1999)

83.    Mulatero, C., Surentheran, T., Breuer, J., and Rudd, R.M. "Simian virus 40 and human pleural Mesothelioma" Thorax 54: 60-61 (1999)

84.    Rizzo, Paola, Carbone, Michele, Fisher, Susan G., Matker, Christine, Swinnen, Lode J., Powers, Amy, Di Resta, Ilaria, Alkan, Serhan, Pass, Harvey I., and Fisher, Richard I. "Simian Virus 40 Is Present in Most United States Human Mesotheliomas, but It Is Rarely Present in Non-Hodgkin's Lymphoma" Chest 116: 470S-473S (1999) Multimodality Therapy of Chest Malignancies – Update '98

-20-

85.    Mayall, Frederick G., Jacobson, Gregory and Wilkins, Richard "Mutations of p53 gene and SV40 sequences in asbestos associated and non-asbestos-associated mesotheliomas" J Clin Pathol 52: 291-293 (1999)

86.    Shivapurkar, Narayan, Wiethege, Thorsten, Wistuba, Ignacio I., Salomon, Eli, Milchgrub, Sara, Muller, Klaus-Michael, Churg, Andrew, Pass, Harvey and Gazdar, Adi F. "Presence of Simian Virus 40 Sequences in Malignant mesotheliomas and Mesothelial Cell Proliferations" Journal of Cellular Biochemistry 76: 181-188 (1999)

87.    Hirvonen, Ari, Mattson, Karin, Karjalainen, Antti, Ollikainen, Tilna, Tammilehto, Lauri, Hovi, Tapani, Vainio, Harri, Pass, Harvey I., Di Resta, Ilaria, Carbone, Michele and Linnainmaa, Kaija  "Simian Virus 40 (SV40)-Like DBA Sequences Not Detectable in Finnish Mesothelioma Patients Not Exposed to SV40-Contaminated Polio Vaccines" Molecular Carcinogenesis 26: 93-99 (1999)

88.    Bocchetta, Maurizio, Di Resta, Ilaria, Powers, Amy, Fresco, Raoul, Tosolini, Alessandra, Testa, Joseph R., Pass, Harvey I., Rizzo, Paola, and Carbone, Michele "Human mesothelial cells are unusually susceptible to simian virus 40-mediated transformation and asbestos co carcinogenicity"  PNAS Vol. 97, No. 18 pp 10214-10219 (August 29, 2000)

89.    The International SV40 Working Group "A Multicenter Evaluation of Assays for Detection of SC40 DNA and Results in Masked Mesothelioma Specimens" Cancer Epidemiology, Biomarkers & Prevention Vol. 10 523-532 May 2001

-21-

90.    Cacciotti, Paola, Libener, Roberta, Piergiacomo, Betta, Martini, Fernanda, Porta, Camillo, Procopio, Antonio, Strizzi, Luigi, Penengo, Lorenza, Tognon, Mauro, Mutti, Luciano and Gaudino, Giovanni "SV40 replication in human mesothelial cells induces HGF/Met receptor activation:  A model for viral-related carcinogenesis of human malignant Mesothelioma" PNAS Vol. 96 No. 21 pp. 12032-12037, October 9, 2001

91.    Sandén, Å., Järvholm, B. Larsson, S., Thiringer, G. "The risk of lung cancer and Mesothelioma after cessation of asbestos exposure: a prospective, cohort study of shipyard workers" Eur Respir J 5, 281-283 (1992)

92.    Danielsen, Tor Erik, Langård, Sverre, Andersen, Aage  "Incidence of Cancer Among Welders and Other Shipyard Workers With Information on Previous Work History" JOEM Vol. 42, No. 1 January 2000

93.    Menck, Herman R., Henderson, Brian E. "Occupational Differences in Rates of Lung Cancer" Journal of Occupational Medicine Vol. 18 No. 12 December 1976

94.    Williams, Roger R., Stegens, Nancy L., and Goldsmith, John R. "Associations of Cancer Site and Type with Occupation and Industry From the Third National Cancer Survey

95.    NIOSH Research Report "Occupational Mortality in the State of California 1959-1961" U.S. Department of Health, Education, and Welfare, Public Health Service, Center for Disease Control, National Institute for Occupational Safety and Health

96.    Milne, K.L., Sandler, D.P., Everson, R.B., and Brown, Steven M. "Lung Cancer and Occupation in Alameda County: A Death Certificate Case-Control Study" American Journal of Industrial Medicine 4:565-575 (1983)

97.    NIOSH "Occupational Characteristics of Cancer Victims in Massachusetts 1971-1973" " U.S. Department of Health, Education, and Welfare, Public Health Service, Center for Disease Control, National Institute for Occupational Safety and Health

98.    Blair, Aaron, Walrath, Judy and Rogot, Eugene "Mortality Patterns Among U.S. Veterans by Occupation. I. Cancer" (JNCL Vol. 75. No. 6, December 1985)

99.    Schwartz, Eugene "Proportionate Mortality Radio Analysis of Automobile Mechanics and Gasoline Service Station Workers in New Hampshire" American journal of Industrial Medicine 12:91-99 (1987)

100.    Benhamou, Simone, Benhamou, Ellen, Flamant, R. "Occupational risk factors of lung cancer in a French case-control study" British Journal of Industrial Medicine 45:231-233 (1988)

101.   Vineis, Paolo, Thomas, Terry, Hayes, Richard B., Blot, William J., Mason, Thomas J., Williams Pickle, Linda, Correa, Pelayo, Fontham, Elizabeth T.H., and Schoenberg, Janet "Proportion of Lung Cancers in Males, Due to Occupation, in Different Areas of the USA" Int. J. Cancer: 42, 851-856 (1988)

102.   Brissette Burns, Patricia and Swanson, G. Marie "The Occupational Cancer Incidence Surveillance Study (OCISS): Risk of Lung Cancer by Usual Occupation and Industry in the Detroit Metropolitan Area"  American Journal of Industrial Medicine 19: 655-671 (1991)

103.   Morabia, A., Markowitz, S., Garibaldi, K., Wynder, E.L. "Lung cancer and occupation:  results of a multicentre case-control study" British Journal of Industrial Medicine, p.721-727 (1992)

104.   Leigh, J. Paul, "Occupations, Cigarette Smoking, and Lung Cancer in the Epidemiological Follow-up to the NHANES I and the California Occupational Morality Study" Bulletin of the New York Academy of Medicine, Vol. 73, No. 2 p.370 (Winter 1996)

105.   Milham, Samuel and Ossiander, Eric,  "Occupational Mortality in Washington State 1950-1999" Washington State Department of Labor and Industries (June 30, 2001)

106.   "Food, Nutrition and the Prevention of Cancer:a Global Perspective" World Cancer Research Fund in association with American Institute for Cancer Research

107.   Garfinkel, Lawrence and Stellman, Steven D., "Smoking and Lung Cancer in Women:  Findings in a Prospective Study" Cancer Research, 48, 6951-6955 (December 1, 1988)

108.   Teschke, Kay, Morgan, Michael S., Checkoway, Harvey, Franklin, Gary, Spinelli, John J., van Belle, Gerald, Weiss, Noel S., "Mesothelioma Surveillance to Locate Sources of Exposure to Asbestos" Canadian Journal of Public Health, p.163 (May-June 1997)

109.   Doll, Richard, "Mortality from Lung Cancer in Asbestos Workers," Statistical Research Unit, Medical Research Council, London (August 10, 1954)

110.   Elwood, P.C. and Cochrane, A.L., "A Follow-up Study of Workers from an Asbestos Factory," Epidemiological Research Unit (South Wales) (June 15, 1964)

111.   Spirtas, Robert, Heineman, Ellen F., Bernstein, Leslie, Beebe, Gilbert W., Keehn, Robert J., Starks, Alice, Harlow, Bernard L., and Benichou, Jacques, "Malignant mesothelioma:  attributable risk of asbestos exposure" Occupational and Environmental Medicine pp. 804-811 (1994)

112.   Woitowitz, J.H. and Rodelsperger, K., "Mesothelioma Among Car Mechanics," Ann. Occupational Hygiene" Vol. 38, No. __, pp.635-638 (February 1994)

113.   Coggon, David, Inskip, Hazel, Winter, Paul, Pannett, Brian "Differences in Occupational Mortality from Pleural Cancer, Peritoneal Cancer, and Asbestosis" Occupational and Environmental Medicine, p.775-777 (1995)

114.   Hodgson, J.T., Petro, J., Jones, J.R., and Matthews, F.E., "Mesothelioma mortality in Britain: Patterns by birth cohort and occupation" Ann. Occup. Hyg., Vol. 41, Supplement 1, pp.129-133 (1997)

115.   Agudo, Antonio, Gonzalez, Carlos A., Bleda, Maria J., Ramirez, Jose, Hernandez, Santos, Lopez, Francisca, Calleja, Asuncion, Panades, Rafael, Turuguet, Domenec, Escolar, Antonio, Beltran, Manuel and Gonzalez-Moya, Jose E., "Occupation and Risk of Malignant Pleural Mesothelioma: A Case-Control Study in Spain," American Journal of Industrial Medicine, 37:159-168 (2000)

116.   Wong, Otto, "Malignant Mesothelioma and Asbestos Exposure Among Auto Mechanics: Appraisal of Scientific Evidence," Regulatory Toxicology and Pharmacology 34, pp.170-177 (2001)

117.   "Airborne Asbestos Health Assessment Update," EPA/600/8-84/003F (June 1986)

118.    Hughes, Janet M., Weill, H., Hammad, Yehia Y., "Mortality of workers employed in two asbestos cement manufacturing plants," British Journal of Industrial Medicine, pp.161-174 (1987)

119.    Walker, Alexander M., Loughlin, Jeanne E., Friedlander, Emmy R., Rothman, Kenneth J., Dreyer, Nancy A., "Projections of asbestos-related disease 1980-2009," Journal of Occupational Medicine, Vol. 25, No. 5, p.409 (May 1983)

120.    McDonald, Corbett, J., "Health Implications of Environmental Exposure to Asbestos," Environmental Health Perspectives, Vol. 62, pp. 319-328 (1985)

121.    Gun, Richard T., "Mesothelioma: is asbestos exposure the only cause?" The Medical Journal of Australia, Vol. 162, p.429 (April 17, 1995)

122.    Hillerdal, Gunnar, "Mesothelioma: cases associated with non-occupational and low dose exposures," Occup. Environ. Med., pp.505-513 (1999)

123.    Wagner, J.C., Sleggs, C.A., and Marchand, Paul, "Diffuse pleural mesothelioma and asbestos exposure in the North Western Cape Province," Brit. J. Industr. Med, p.260 (1960)

124.    Lieben, Jan and Pistawka, Harry, "Mesothelioma and Asbestos Exposure," Arch Environ Health, Vol. 14, p.559 (April 1967)

125.   Godbey, Frank W., Cooper, Thomas C., Sheehy, John W., O'Brien, Dennis M., Van Wagenen, Harold D., McGlothlin, James D., and Todd, William F. "Evaluation of Brake Drum Service Controls at United States Postal Service Vehicle Maintenance Facility, Nashville, Tennessee," National Institute for Occupational Safety and Health, Report No.: ECTB 152-20b (August 1987)

126.   Dahlqvist, Monica, Alexandersson, Rolf and Hedenstierna, Goran, "Lung Function and Exposure to Asbestos Among Vehicle Mechanics," American Journal of Industrial Medicine 22:59-68 (1992)

127.   Weir, Francis W., Tolar, Glenn and Meraz, LeAnne B., "Characterization of Vehicular Brake Service Personnel Exposure to Airborne Asbestos and Particulate," Applied Occupational and Environmental Hygiene, Vol. 16(12), pp.1139-1146 (2001)

128.   NIOSH, "Cincinnati Municipal Garage, Automobile Brake Servicing Operation, January 28, 1972," National Inst. for Occupational Safety and Health (March 16, 1972)

129.   Johnson, Paul, Zumwalde, Ralph D., and Roberts, Dennis, "Industrial Hygiene Assessment of Seven Brake Servicing Facilities," NIOSH (January 29, 1979)

130.   NIOSH, "Industrial Hygiene Report Asbestos at Reading Brake and Alignment Service, Reading, Ohio," U.S. National Institute for Occupational Safety and Health Cincinnati, OH (March 1980)

C:\WINDOWS\TEMP\GWPRINT\ResponsetoPP.res_1.doc

131.   NIOSH, "Industrial Hygiene Report:  Asbestos at Allied Brake Shop, Cincinnati, OH" U.S. National Institute for Occupational Safety and Health Cincinnati, OH (June 1980)

132.   Roberts, Dennis R., Zumwalde, Ralph D., "Industrial Hygiene Summary Report of Asbestos Exposure Assessment for Brake Mechanics," NIOSH, Report No. 32.4 (November 22, 1982)

133.   Sheehy, John W., Cooper, Thomas C., O'Brien, Dennis M., McGlothlin, James D., and Froehlich, Phillip A. "Control of Asbestos Exposure During Brake Drum Service," NIOSH (August 1989)

134.   Martinez, Edward, "Chrysotile Asbestos:  Relationship of the Surface and Thermal Properties to the Crystal Structure," Transactions, Vol. LXIX, pp. 414-420 (1966)

135.   Gatrell, R.L. and Schreiber, T.P., "Chemical Changes at Brake Wear Surfaces," General Motors Research Laboratories, General Motors Corporation

136.   Governa, Mario, Durio, Giovanni, and Comai, Marcello "Changes in rat lung produced by olivine dust inhalation," Pathologica, 71, pp.745-753 (1979)

137.    Anderson, A.E., Gealer, R.L., and McCune, R.C., and Sprys, J.W., "Asbestos emissions from brake dynamometer tests," Scientific Research Staff Ford Motor Company

138.    "Brake Emissions: Emission Measurements from Brake and Clutch Linings from Selected Mobil Sources," NTIS, Bendix Research Labs, Southfield, Michigan (March 1973)

139.    Cha, Soyoung and Carte, Philip, "Simulation of automobile brake wear dynamics and estimation of emissions," SAE, The Engineering Resource for Advancing Mobility

140.    Rowson, D.M., "The Chrysotile Content of the Wear Debris of Brake Linings," Wear, No. 47 pp.315-321 (1978)

141.    Langer, Arthur M., "Reduction of the Biological Potential of Chrysotile Asbestos Arising from Conditions of Service on Brake Pads," AP, Regulatory Toxicology and Pharmacology No. 38 pp. 71-77 (2003)

GM does not know of any study that establishes that potential exposure to asbestos during brake or clutch repair operations constitutes a health hazard.   GM collected air samples during brake servicing at dealerships in 1975. W.H. Krebs conducted the air sampling at Circle Buick, New York, New York; West Side Pontiac, New York. On February 13, 1984, W. H. Krebs did air sampling to evaluate the nature and extent to which operators were exposed to airborne asbestos while they resurfaced brake linings at Pekin Machine & Parts Company, Pekin, Illinois.  GM also evaluated a brake

-30-

washing device proposed by a GM employee. Ronald Williams and Jean Muhlbaier prepared reports as part of their work in the Environmental Science Department of General Motors Research Laboratories entitled: "Asbestos Brake Emissions," "Characterization of Asbestos Emissions From Brakes," "Contribution of Brake Lining Wear To Urban Airborne Asbestos," "Design and Construction of a Test Facility to Characterize Brake-Wear Emissions," and "Gas and Particle Emission Rates From Asbestos Brake Linings." GM has previously provided copies of these documents to plaintiffs' attorneys, but will provide additional copies upon request. Potential exposure to asbestos during manufacturing operations is not similar or relevant to any potential exposure encountered during automotive repairs. To the extent this interrogatory asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence. GM also objects to the extent the interrogatory asks for any information protected by the attorney-client privilege or the work product doctrine.

REQUEST NO. 8:

Any and all writings or documents of any nature whatsoever, including but not limited to, any dust studies, industrial hygiene survey and/or test results, guidelines for conducting dust studies and/or industrial hygiene surveys or tests, studies and/or reports which refer, reflect, concern, or relate to any dust or particulate matter suspended in any breathable atmosphere at any of the Defendant's plants or work sites, or any other location where asbestos, asbestos-containing products were being added, applied, installed, stored, or removed.

RESPONSE TO REQUEST NO. 8:

GM had no right to inspect work sites that others owned and operated, but it did conduct air studies at its own facilities. See Response to Request No. 7. To the extent this request asks for more information, GM objects because it is vague, overly broad and

burdensome. It also asks for information that is not relevant and will not lead to admissible evidence.

## REQUEST NO. 9:

Any and all writings or documents of any nature whatsoever referring, reflecting, concerning or relating to in any way the effects of the absorption or inhalation of asbestos dust and/or airborne asbestos particles on humans and/or animals in the possession of this Defendant, any predecessor or related companies as identified in interrogatories 5 through 10, or which this Defendant, any predecessor or related companies ever received, conducted, participated in or funded in whole or part.

## RESPONSE TO REQUEST NO. 9:

GM has not found any record that it conducted or contributed to the type of research or studies described by plaintiff. However, GM does make unrestricted donations to educational and scientific institutions and it cannot exclude the possibility that some portion of the donations was used for such research at some time. See also Responses to Request Nos. 7 and 8. To the extent this request asks for more information, GM objects because it is overly broad, vague, unduly burdensome and will not lead to admissible evidence.

## REQUEST NO. 10:

Any and all writings or documents of any nature whatsoever reflecting any claim or claims made against this Defendant, any predecessor or related companies as identified in interrogatories 5 through 10, wherein it was alleged that any individual sustained an injury, impairment, disease or death caused by exposure to asbestos, including, but not limited to, all lawsuits or worker compensation claims filed against this Defendant, any predecessor company or related companies as identified in interrogatories 5 through 10. while the Plaintiff reserves its right to request any of the above noted documents in the

-32-

o:\WINDOWS\TEMP\GWPRINT\ResponsetoRR.res_1.doc

future, it is presently sufficient that the documents requested be produced for the first ten worker compensation claims filed and the first ten lawsuits filed.

RESPONSE TO REQUEST NO. 10:

GM was not served with any lawsuit alleging exposure to asbestos from brakes before it placed warnings on packaging in 1975. The first lawsuit claiming an alleged asbestos-related disease because of exposure to asbestos from brake or clutch linings was served on GM in 1977. [Mary E. Zitis, et al. v. General Motors Corporation, et al., Superior Court, Bergen County, N.J., No. L-11634-77]. Information about lawsuits are a matter of public record and are equally available to plaintiff.

Records about compensation claims are not all indexed in a way that would let GM isolate claims of a particular illness or among a particular occupation. Historically, GM did not maintain workers' compensation records in one central location, but rather, kept them at or near the plant or office where the claimant worked. Therefore, there is no compilation from which GM can obtain the information necessary to respond to this request  To the extent this request asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.  GM also objects to the extent the interrogatory asks for any information protected by the attorney-client privilege or the work product doctrine or that it violates its employees' right to privacy.

REQUEST NO. 11:

Any and all writings of any nature whatsoever sent to or received from any of the Defendant's insurance carriers and/or the carriers of the Defendant's predecessor or related companies, referring, reflecting, concerning or relating to any way the health effects of the absorption or inhalation of asbestos dust or asbestos particles suspended in the air, including but not limited to the health effects of the absorption or inhalation of asbestos dust and/or asbestos particles suspended in the air on employees of the

-33-

Defendant, any predecessor or related companies as identified in interrogatories 5 through 10, while working with or around asbestos or asbestos containing products, and the health effects of the inhalation of asbestos dust and/or asbestos fibers suspended, in the air by employees of contractors or subcontractors of the Defendants, any predecessor or related companies as identified in interrogatories 5 through 10, while working with or around asbestos or asbestos-containing products.

RESPONSE TO REQUEST NO. 11:

See Responses to Request Nos. 7 and 8. To the extent this request asks for additional information, GM objects because it is vague, overly broad, unduly burdensome, oppressive, and will not lead to admissible evidence. GM also objects because disclosure of some of these documents would violate employees' right to privacy or the physician-client privilege.

REQUEST NO. 12:

Any and all writings or documents of any nature whatsoever referring, reflecting, concerning or relating to any way the dollar amount spent annually on research generally and medical research specifically since 1930 by this Defendant, any predecessor or related companies as identified in interrogatories 5 through 10.

RESPONSE TO REQUEST NO. 12:

GM has not conducted or participated in medical research or studies relating to asbestos. However, GM does make unrestricted donations to educational and scientific institutions and it cannot exclude the possibility that some portion of the donations was used for such research at some time. To the extent this interrogatory asks for more information, GM objects because it is overly broad, vague, unduly burdensome and will not lead to admissible evidence.

-34-

| S.D. Steiner, M.D. | (1958 - 1976) |
| R.G. Wieneck, M.D. | (1976 - 1980) |
| R.W. Prior, M.D. | (1980 - 1988) |
| D.B. Van Brocklin, M.D. | (1988 - 1999) |
| Marcus Wilson, M.D. | (1999 - 2002) |
| Joel R. Bender, M.D. | (2002 - Present) |

To the extent this request asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence. GM also objects to the extent the request asks for any documents protected by the attorney-client privilege or the work product doctrine, and because disclosure of some of these documents would violate employees' right to privacy or the physician-client privilege.

REQUEST NO. 14:

A bibliography of any and all material contained in any and all libraries or other information depositories of this Defendant, any predecessor or related companies as identified in interrogatories 5 through 10, referring, reflecting, concerning or relating to in any way whatsoever to asbestos, asbestos-containing products, the health effects of the absorption or inhalation of asbestos by humans or animals and/or the application, removal, installation and disposal of asbestos and/or asbestos-containing products.

RESPONSE TO REQUEST NO. 14:

See Responses to Request Nos. 7, 8 and 9. To the extent this request asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

REQUEST NO. 15:

Any and all writings or documents of any nature whatsoever referring, reflecting, concerning or relating to in any way whatsoever to any instructions, advise, suggestions,

-36-

warnings, guidance, notification, training or education on any health effects on humans or animals of the absorption or inhalation of asbestos fibers, or other dusts in the possession of the Defendant, regardless of whether the writings or documents were authored by employees and/or consultants of the Defendant, provided to it by any of the companies from which it purchased or obtained asbestos or asbestos-containing products, or from any or other source whatsoever including but not limited to trade associations, manufacturing associations, or other professional entities or organizations.

RESPONSE TO REQUEST NO. 15:

Representative copies of GM's warnings and service manuals have been previously produced to counsel for Plaintiffs but GM will provide copies again upon request.

See also Responses to Interrogatory No. 17 and Request No. 4. To the extent this request asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

REQUEST NO. 16:

Any and all writings or documents of any nature whatsoever which refer, reflect, concern, or relate to in any way any seminars, symposiums, any meetings of any trade organizations, associations, or other professional entities attended by any officers, directors, employees, agents or consultants of the Defendant, any predecessor or related companies, wherein asbestos, asbestos-containing products, or the health effects of the absorption and/or inhalation of asbestos fibers or other dusts on humans and/or animals was discussed, referred to, related to or concerned in any way. Specifically included within the scope of this request are any minutes of any such meetings, committees or sub-committees of any trade organizations, associations or other professional entities or organizations.

-37-

RESPONSE TO REQUEST NO. 16:

GM has employed hundreds of thousands of people and it has no reasonable or practical way of determining which, if any, of its employees attended seminars, conferences, or meetings of the type generally described. If plaintiff specifies a particular seminar, symposium or meeting, GM will attempt to further respond. To the extent this request asks for more information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

REQUEST NO. 17:

Any and all writings or documents of any nature whatsoever in the possession of this Defendant, any predecessor or related companies, which refer, reflect, concern or relate to in any way the performance of dust respirators against fibrous dust.

RESPONSE TO REQUEST NO. 17:

GM objects to this request because information about the effectiveness of respiratory protection devices is readily and equally available from the U.S. Bureau of Mines, the suppliers of the devices, and other sources. GM also objects to this request because GM did not recommend that mechanics who perform brake or clutch repair wear dust respirators. GM also objects to this request because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

REQUEST NO. 18:

Any and all writings or documents of any nature whatsoever in the possession of this Defendant, any predecessor or related companies, which refer, reflect, concern or relate to in any way to any dust level counts, air sample reports or industrial hygiene surveys performed or conducted during the application, installation, or removal of any asbestos-containing and/or vermiculite-containing products.

-38-

RESPONSE TO REQUEST NO. 18:

See Responses to Request Nos. 7 and 8. To the extent this request asks for additional information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

REQUEST NO. 19:

Any and all writings or documents of any nature whatsoever referring, reflecting, concerning, or relating to in any way the subject of worker's safety including but not limited to, any safety manuals, employee handbooks, safety rules and instructions, or any writings or documents of a similar nature in the possession of this Defendant any predecessor or related companies as identified in interrogatories 5 through 10 from 1930 to date.

RESPONSE TO REQUEST NO. 19:

See Responses to Interrogatory No. 17 and Request Nos. 4 and 15. To the extent this request asks for additional information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

REQUEST NO. 20:

Any and all writings or documents of any nature whatsoever referring, reflecting, concerning or relating to in any way whatsoever any health surveillance program conducted by or on behalf of this Defendant, any predecessor or related companies as identified in interrogatories 5 through 10, or it's employees.

RESPONSE TO REQUEST NO. 20:

See Response to Request No. 13.  To the extent this request asks for additional information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evidence.

REQUEST NO. 21:

Any and all writings or documents of any nature whatsoever referred to, or identified in any answer to the Plaintiff's interrogatories directed to this Defendant. Please be advised that the Plaintiff will not accept as an answer to any interrogatory question or in response to any request for production a statement that documents are in the possession of the Defendant or any other entity and will be made available for inspection and copying upon request. Please be advised that such a statement is not deemed responsive to an interrogatory question or a request for production under the New Jersey Supreme Court Rules. Please produce copies of any and all documents or writings responsive to any request for production or referred to or identified in any answer to any interrogatory.

RESPONSE TO REQUEST NO. 21:

GM objects to the request because it is duplicative, vague, overly broad, unduly burdensome, oppressive and will not lead to admissible evidence.

REQUEST NO. 22:

Any and all writings or documents of any nature whatsoever, including but limited to, any blueprints, schematics, drawings, sketches, insulation specifications, engineering standards or other documents, in the possession of the Defendant, any predecessor or related companies, which refer, reflect, concern or relate to in any way the application, installation, storage or removal, of any asbestos, vermiculite, asbestos-containing product or vermiculite-containing product at General Motors, Englewood, New Jersey; General

-40-

Motors, Bloomfield, New Jersey; and Multi-Chevrolet premises in the Rahway, New Jersey area.

RESPONSE TO REQUEST NO. 22:

See Responses to Request Nos. 1 and 2. GM objects to this request because it is duplicative, vague, overly broad, unduly burdensome and will not lead to admissible evidence.

REQUEST NO. 23:

Any and all writings or documents of any nature whatsoever referring, reflecting, concerning or relating to in any way the use by this Defendant of any other company's name, trademark or logo on any asbestos-containing product sold, distributed, applied, installed or removed by this Defendant.

RESPONSE TO REQUEST NO. 23:

See Response to Interrogatory Nos. 8, 16 and 13. To the extent this request asks for additional information, GM objects because it is vague, overly broad, unduly burdensome and will not lead to admissible evicence.

REQUEST NO. 24:

Any and all writings or documents of any nature whatsoever referring, reflecting, concerning or relating to in any way whether any director, officer, employee, agent or consultant of the Defendant, any predecessor or related company, ever served as an officer, or on a committee or sub-committee of any trade organization, association or professional entity which refers, reflects, concerns or relates to in any way, the subject of asbestos or the effects of the absorption or inhalation of asbestos fibers or other dusts by humans and/or animals and/or the giving of any warnings, cautions or instructions concerning the use of asbestos and asbestos-containing products.

-41-

RESPONSE TO REQUEST NO. 24:

GM has been a member of a large number of trade associations and industry

organizations.   GM has also employed hundreds of thousands of people in the past and

has no reasonable or practical way of determining if any of its employees ever served as

an officer or on a committee or sub-committee of any trade organization.  See also

Response to Request No. 5.  To the extent this request asks for more information, GM

objects because it vague, overly broad, unduly burdensome and will not lead to

admissible evidence.

REQUEST NO. 25:

Any writings or documents of any nature whatsoever, including but not limited to,

any minutes, notes, memorandum, or electronic or stenographic recording of any formal

or informal meetings of any of the officers and/or board of directors of this Defendant, any

predecessor or related company, mentioning, referring, reflecting, concerning or relating

to asbestos, vermiculite, asbestos-containing products, or vermiculite-containing products,

the health effects of the inhalation of asbestos dust and/or asbestos fibers, on humans

and/or animals, and the health effects of the inhalation of any dust.

RESPONSE TO REQUEST NO. 25:

GM objects to this request because it is duplicative, vague, overly broad, unduly

burdensome and will not lead to admissible evidence.

## V E R I F I C A T I O N

STATE OF MICHIGAN  )
                     ) ss.
COUNTY OF WAYNE  )

Susan Moss says that she is authorized by General Motors Corporation under applicable law

and rules to verify and does verify these **RESPONSES OF GENERAL MOTORS**

**CORPORATION TO PLAINTIFF'S REQUEST FOR PRODUCTION OF DOCUMENTS**

on behalf of General Motors Corporation.

Susan Moss
Authorized Agent

Subscribed and sworn to before me

this 12th day of  September 2003.

Notary Public

MARGUERITE J. LITTLE
NOTARY PUBLIC MACOMB CO., MI
MY COMMISSION EXPIRES Jul 27, 2006
ACTING IN WAYNE COUNTY, MI

BUTTITTA