## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                      :

In re                       :    Chapter 11
                      :

DELPHI CORPORATION et al.,  :    Case No. 05-44481 (rdd)
                      :

            Debtors.    :    (Jointly Administered)
                      :

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AFFIDAVIT OF SERVICE

      I, Evan Gershbein, being duly sworn according to law, deposes and says that I am employed by Kurtzman Carson Consultants, LLC, proposed claims and noticing agent for the Debtors in the above-captioned cases.

      On November 28, 2005, I caused to be served, via overnight mail the documents listed in Section 1 on the parties attached hereto as Exhibit A, via electronic notification on the parties attached hereto as Exhibit B, and via US Mail on the parties attached hereto as Exhibit C:

### *Section 1*

**I.**   Debtors' Omnibus Response to Objections to Motion for an Order Under 11 U.S.C. §§363(b) and 365(a) and Fed. R. Bankr. P. 9019 Approving Procedures to Assume Certain Amended and Restated Sole Source Supplier Agreements **(Docket No. 1299) [Attached hereto as Exhibit D]**

**II.**  Application for Order Under 11 U.S.C. §§327(a), 328(a), And 1107(b) Authorizing Employment and Retention of Ernst & Young LLP as Sarbanes-Oxley, Valuation, and Tax Services Providers To Debtors, Effective Nunc Pro Tunc To October 8, 2005 **(Docket No. 1317) [Attached hereto as Exhibit E]**

**III.**  Notice of Presentment of Order Under 11 U.S.C. §§327(a), 328(a), and 1107 (b) Authorizing Employment and Retention of Ernst & Young LLP as Sarbanes-Oxley, Valuation, and Tax Services Providers to Debtors, Effective Nunc Pro Tunc to October 8, 2005 **(Docket No. 1321) [Attached hereto as Exhibit F]**

      On November 28, 2005, I caused to be served, via overnight mail the document listed in Section 2 on the parties attached hereto as Exhibit G:

### *Section 2*

**IV.**  Debtors' Omnibus Response to Objections to Motion for an Order Under 11 U.S.C. §§363(b) and 365(a) and Fed. R. Bankr. P. 9019 Approving Procedures to Assume

Certain Amended and Restated Sole Source Supplier Agreements **(Docket No. 1299)**
**[Attached hereto as Exhibit D]**

Dated: November 30, 2005

_/s/ Evan Gershbein_____
Evan Gershbein

Sworn to and subscribed before
me on November 30, 2005

_____/s/ _Amy Lee Huh_____
Notary Public

My Commission Expires: ____3/15/09_____

# EXHIBIT A

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Capital Research and Management Company | Michelle Robson | 11100 Santa Monica Blvd | 15th Floor | Los Angeles | CA | 90025 | 310-996-6140 | 310-996-6091 | mlfr@capgroup.com | Creditor Committee Member |
| Cohen Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | b.simon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel for Flextronics International USA, Inc. |
| Davis Polk & Wardwell | Donald Bernstein | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 | 212-450-3092 | donald.bernstein@dpw.com | Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2670 | sean.p.corcoran@delphi.com  karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 6328 Monarch Park Place | | Niwot | CO | 80503 | 303-652-4853 | 303-652-4716 | cshiff@flextronics.com | Counsel for Flextronics International |
| Flextronics International | Terry Zale | 6328 Monarch Park Place | | Niwot | CO | 80503 | 303-652-4853 | 303-652-4716 | terryzale@flextronics.com | Counsel for Flextronics International |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | One Plastics Avenue | | Pittsfield | MA | 01201 | 704-992-5075 | 866-585-2386 | | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel for Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel for Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department, Mario Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-298-2015 | 212-298-2016 | | IRS |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| IUE-CWA | Henry Reichard | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | hreichardiuecwa@aol.com | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.fmaher@chase.com  richard.duker@jpmorgan.com  gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | | 212-270-5484 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

11/30/2005 10:00 AM
MSL

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | James Le | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-751-1511 | 310-751-1561 | jle@kccllc.com | Noticing and Claims Agent: |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | UCC Professional |
| Law Debenture Trust of New York | Patrick J. Healy | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Daniel R. Fisher | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel for Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel for Recticel North America, Inc. |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Mesirow Financial | Melissa Knolls | 321 N. Clark St. | 13th Floor | Chicago | IL | 60601 | 800-453-0600 | 312-644-8927 | mknoll@mesirowfinancial.com | UCC Professional |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel for Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | | New York Attorney General's Office |
| O'Melveny & Meyer LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Meyer LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel for Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel for the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel for Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

11/30/2005 10:00 AM
MSL

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel for Murata Electroncs North |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Prepetition Administrative Agent |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel for Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| United States Trustee | Alicia M. Leonard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | United States Trustee |
| United States Trustee | Deirdre A. Martini | 33 Whitehall Street | Suite 2100 | New York | NY | 10004 | 212-510-0500 | 212-668-2256 | deirdre.martini@usdoj.gov | United States Trustee |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeffrey.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

# EXHIBIT B

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | 610-230-3064 | 310-687-1052 | david.boyle@airgas.com | Counsel for Airgas, Inc. |
| Ajamie LLP | Thomas A. Ajamie | 711 Louisiana | Suite 2150 | Houston | TX | 77002 | 713-860-1600 | 713-860-1699 | tajamie@ajamie.com | Counsel for SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Ajamie LLP | Wallace A. Showman | 1350 Avenue of the Americas | 29th Floor | New York | NY | 10019 | 212-246-6820 | 212-581-8958 | wshowman@ajamie.com | Counsel for SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel for Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel for Kilroy Realty, L.P. |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | 313-758-4888 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel for  ITW Mortgage Investments IV, Inc. |
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | 212-692-8251 | 212-867-6395 | lwalzer@angelogordon.com | |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel for Stanley Electric Sales of America, Inc. |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | Kimberly J. Robinson | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | 312-629-5170 | 312-984-3150 | kim.robinson@bfkpn.com | Counsel for Motion Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | William J. Barrett | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | 312-629-5170 | 312-984-3150 | william.barrett@bfkpn.com | Counsel for Motion Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel for Mays Chemical Company |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Priority Health |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel for Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Michael K. McCrory Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com michael.mccrory@btlaw.com | Counsel for Gibbs Die Casting Corporation |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | 212-554-1411 | 212-554-1444 | hannah@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 17

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| Bernstein Litowitz Berger & Grossman | Mark D. Debrowski | 1285 Avenue of the Americas | | New York | NY | 10019 | 212-554-1492 | 212-554-1444 | markd@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | 212-554-1409 | 212-554-1444 | sean@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to  Veritas Software Corporation |
| Blank Rome LLP | Bonnie Glantz Fatell | Chase Manhattan Centre | 1201 Market Street, Suite 800 | Wilmington | DE | 19801 | 302-425-6423 | 302-428-5110 | fatell@blankrome.com | Counsel for Special Devices, Inc. |
| Blank Rome LLP | Marc E. Richards | The Chrylser Building | 405 Lexington Avenue | New York | NY | 10174 | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel for DENSO International America, Inc. |
| Bolhouse, Vander Hulst, Risko & Baar P.C. | David S. Lefere | 3996 Chicago Drive SW | | Grandville | MI | 49418 | 616-531-7711 | 616-531-7757 | davidl@bolhouselaw.com | Counsel for Eclipse Tool and Die, Inc. |
| Bose McKinney & Evans LLP | Jeannette Eisan Hinshaw | 135 N. Pennslyvania Street | Suite 2700 | Indianapolis | IN | 46204 | 317-684-5296 | 317-684-5173 | jhinshaw@boselaw.com | Counsel for Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel for Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel for Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 17

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | 205-458-5367 | 205-244-5651 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | 212-701-3000 | 732-205-6777 | jonathan.greenberg@engelhard.com | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |
| Cahill, Gordon & Reindel, LLP | Jonathan Greenberg | Eighty Pine Street | | New York | NY | 10005-1702 | 212-701-3700 | 212-269-5420 | jonathan.greenberg@engelhard.com | Counsel for Engelhard Corporation |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel for STMicroelectronics, Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel for Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel for Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel for Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale | 330 West 42nd Street | | New York | NY | 10036 | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com | Counsel for International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | 203-862-8200 / 230-862-8231 | 203-629-1977 / 203-629-1977 | mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 17

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | 937-223-6705 | wachstein@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel for SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtin & Heefner, LLP | Robert Szwajkos | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel for SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-8898 | 917-368-8898 | athau@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-6065 | 212-697-1559 | dkarp@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-6065 | 212-697-1559 | sreisman@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | 248-576-5741 | | krk4@daimlerchrysler.com | Counsel for DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | 716-856-5500 | 716-856-5510 | wsavino@damonmorey.com | Counsel for Relco, Inc.; The Durham Companies, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 17

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Daniels & Kaplan, P.C. | Jay Selanders | 2405 Grand Boulevard | Suite 900 | Kansas City | MO | 64108-2519 | 816-221-3086 | 816-221-3006 | selanders@danielsandkaplan.com | Counsel for DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | 212-682-4940 | 212-682-4942 | gdiconza@dlawpc.com | Counsel to Tyz-All Plastics, Inc. |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel for The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel for Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representattive for Electronic Data Systems Corporation |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel for Doshi Prettl International, LLC |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | Earle I. Erman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | 248-827-4100 | 248-827-4106 | eerman@ermanteicher.com | Counsel for Doshi Prettl International, LLC |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | 312-346-7500 | 312-580-2201 | ggreen@fagelhaber.com | Counsel for Aluminum International, Inc. |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel for Aluminum International, Inc. |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel for Pillarhouse (U.S.A.) Inc. |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Gazes LLC | Ian J. Gazes | 32 Avenue of the Americas | | New York | NY | 10013 | 212-765-9000 | 212-765-9675 | ian@gazesllc.com | Counsel to Setech, Inc. |
| Gazes LLC | Eric Wainer | 32 Avenue of the Americas | Suite 1800 | New York | NY | 10013 | 212-765-9000 | 212-765-9675 | office@gazesllc.com | Counsel to Setech, Inc. |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | 305-349-2300 | 305-349-2310 | crieders@gjb-law.com | Counsel for Ryder Integrated Logistics, Inc. |
| Gibbons, Del Deo, Dolan, Griffinger & Vecchione | David N. Crapo | One Riverfront Plaza | | Newark | NJ | 07102-5497 | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel for Epcos, Inc. |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 17

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | 302-622-7000 | 302-622-7100 | gjarvis@gelaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | 414-271-4500 | 414-271-6308 | jh@previant.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663 |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | 513-621-6464 | 513-651-3836 | mdebbeler@graydon.com | Counsel for Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel for ARC Automotive, Inc. |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel for American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel for Canon U.S.A., Inc. |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Glen Dumont | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | 908-898-4750 | 908-898-4137 | glen.dumont@hp.com | Counsel for Hewlett-Packard Financial Services Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel for Hewlett-Packard Financial Services Company |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 17

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel for GW Plastics, Inc. |
| Hodgson Russ LLP | Cheryl R. Storie | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | 716-848-1275 | 716-849-0349 | cstorie@hodgsonruss.com | Counsel for Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | Carnegie Hall Tower | 152 West 57th Street, 35th Street | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel for XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel for CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel for Fujitsu Ten Corporation of America |
| Honigman, Miller, Schwartz and Cohn, LLP | Robert B. Weiss, Frank L. Gorman | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com fgorman@honigman.com | Counsel for General Motors Corporation |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | 419-255-9121 | jrhunter@hunterschank.com | Counsel for ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | 419-255-9121 | tomschank@hunterschank.com | Counsel for ZF Group North America Operations, Inc. |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel for RF Monolithics, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel for RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel for Jiffy-Tite Co., Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel for Trutron Corporation |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel for WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel for Solution Recovery Services |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | 212-808-7897 | mbane@kelleydrye.com | Counsel for the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | 212-808-7897 | msomerstein@kelleydrye.com | Counsel for the Pension Benefit Guaranty Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 7 of 17

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kieselstein Lawfirm PLLC | Steve Kieselstein | 43 British American Boulevard | | Latham | NY | 12110 | 518-785-7800 | 518-785-7851 | sk@kieselaw.com | Counsel to NEC Electronics America, Inc. |
| King & Spalding, LLP | Alexandra B. Feldman | 1185 Avenue of the Americas | | New York | NY | 10036 | 212-556-2100 | 212-556-2222 | afeldman@kslaw.com | Counsel for Martinrea International, Inc. |
| King & Spalding, LLP | George B. South, III | 1185 Avenue of the Americas | | New York | NY | 10036 | 212-556-2100 | 212-556-2222 | gsouth@kslaw.com | Counsel for Martinrea International, Inc. |
| King & Spalding, LLP | James A. Pardo, Jr. | 191 Peachtree Street | Suite 4900 | Atlanta | GA | 30303-1763 | 404-572-4600 | 404-572-5149 | jpardo@kslaw.com | Councel for Mitsubishi Electric Automobile America, Inc. |
| King & Spalding, LLP | Michelle Carter | 191 Peachtree Street | Suite 4900 | Atlanta | GA | 30303-1763 | 404-572-4600 | 404-572-5149 | mcarter@kslaw.com | Councel for Mitsubishi Electric Automobile America, Inc. |
| Kirkland & Ellis LLP | Geoffrey A. Richards | 200 East Randolph Drive | | Chicago | IL | 60601 | 312-861-2000 | 312-861-2200 | grichards@kirkland.com | Counsel for Lunt Manufacturing Company |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel to for Millwood, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel for Parlex Corporation |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | 989-893-3518 | | smcook@lambertleser.com | Counsel for Linamar Corporation |
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | 212-906-1200 | 212-751-4864 | john.weiss@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)
Page 8 of 17
11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | 1630 McCarthy Blvd. | | Milpitas | CA | 95035-7417 | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel for Dallas County and Tarrant County |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel for Industrial Ceramics Corporation |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel for Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel for Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Ira M. Levee | 65 Livingston Avenue | | Roseland | NJ | 07068 | 973-597-2500 | 973-597-2481 | ilevee@lowenstein.com | Counsel for Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel for Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Michael S. Etikin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel for Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Michael S. Etikin | 65 Livingston Avenue | | Roseland | NJ | 07068 | 973-597-2500 | 973-597-2481 | metkin@lowenstein.com | Counsel for Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 17

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel for Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel for AT&T Corporation |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel for Venture Plastics |
| McDermott Will & Emery LLP | James M. Sullivan | 50 Rockefeller Plaza | | New York | NY | 10020 | 212-547-5400 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 50 Rockefeller Plaza | | New York | NY | 10020 | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel for National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Jean R. Robertson, Esq. | 600 Superior Avenue, East | Suite 2100 | Cleveland | OH | 44114 | 216-348-5400 | 216-348-5474 | jrobertson@mcdonaldhopkins.com | Counsel for Brush Engineered materials |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuireWoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | 804-775-1178 | 804-698-2186 | egunn@mcguirewoods.com | Counsel for Siemens Logistics Assembly Systems, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | 616-831-1748 616-831-1726 | 616-988-1748 616-988-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel for Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel for Wells Operating Partnership, LP |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Michael L. Schein | 666 Third Avenue | | New York | NY | 10017 | 212-935-3000 | 212-983-3115 | mlschein@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 17

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Michael L. Schein | 666 Third Avenue | | New York | NY | 10017 | 212-935-3000 | 212-983-3115 | mlschein@mintz.com | Counsel for Conceria Pasubio |
| Mitsubishi Electric & Electronics USA, Inc. | John E. Cipriano | 500 Corporate Woods Parkway | | Vernon Hills | IL | 60061 | 847-478-2383 | 847-478-2281 | john.cipriano@meus.mea.com | Assistant General Counsel for Mitsubishi Electric & Electronics USA, Inc. |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel for Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel for ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel for Hitachi Chemical (Singapore) Pte, Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Morris, Nichols, Arsht and Tunnell | Michael G. Busenkell | PO Box 1347 | | Wilmington | DE | 19899-1347 | 302-658-9200 | 302-658-3989 | mbusenkell@mnat.com | Counsel for Chicago Miniature Optoelectronic Technologies, Inc. |
| Morris, Nichols, Arsht and Tunnell | Robert J. Dehney | PO Box 1347 | | Wilmington | DE | 19899-1347 | 302-658-9200 | 302-658-3989 | rdehney@mnat.com | Counsel for Chicago Miniature Optoelectronnic Technologies, Inc. |
| Morrison Cohen LLP | Joseph T. Moldovan Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | 212-735-8603 212-735-8757 | 917-522-3103 917-522-3157 | jmoldovan@morrisoncohen.com mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 4000 Fountain Place | 1445 Ross Avenue | Dallas | RX | 75202-2790 | 214-855-7590 214-855-7561 214-855-7587 | 214-978-4374 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel for Texas Instruments Incorporated |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel for National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel for Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 17

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | 908-722-0700 | 908-722-0755 | eabdelmasieh@nmmlaw.com | Counsel for Rotor Clip Company, Inc. |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel for WL. Ross & Co., LLC |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | 216-586-3939 | 216-579-0212 | mmharner@jonesday.com | Counsel for WL. Ross & Co., LLC |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Otterbourg, Steindler, Houston & Rosen, P.C. | Melissa A. Hager | 230 Park Avenue | | New York | NY | 10169 | 212-661-9100 | 212-682-6104 | mhager@oshr.com | Counsel for Sharp Electronics Corporation |
| Otterbourg, Steindler, Houston & Rosen, P.C. | Scott L. Hazan | 230 Park Avenue | | New York | NY | 10169 | 212-661-9100 | 212-682-6104 | shazan@oshr.com | Counsel for Sharp Electronics Corporation |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3157 | 212-373-2053 | cweidler@paulweiss.com | Counsel for Ambrake Corporation; Akebono Corporation |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel for Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel for Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel for Ambrake Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K. Street, N.W. | | Washington | DC | 20005-4026 | 202-326-4020 | 202-326-4112 | landy.ralph@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pepe & Hazard LLP | Charles J. Filardi, Jr., Esq. | 30 Jelliff Lane | | Southport | CT | 06890 | 203-319-4042 | 203-319-4034 | cfilardi@pepehazard.com | Federal Express Corporation |
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel for Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 17

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel for SKF USA, Inc. |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel for SKF USA, Inc. |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel for Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Phillips Nizer LLP | Sandra A. Riemer, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel for Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel for Clarion Corporation of America |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | 7th Floor | Costa Mesa | CA | 92626-7122 | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel for Clarion Corporation of America |
| Pitney Hardin LLP | Ronald S. Beacher | 7 Times Square | | New York | NY | 10036 | 212-297-5800 | 212-682-3485 | rbeacher@pitneyhardin.com | Counsel for IBJTC Business Credit Corporation |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| Pryor & Mandelup, LLP | A. Scott Mandelup, Kenneth A. Reynolds | 675 Old Country Road | | Westbury | NY | 11590 | 516-997-0999 | 516-333-7333 | asm@pryormandelup.com kar@pryormandelup.com | Counsel for National Molding Corporation; Security Plastics Division/NMC LLC |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadranglegroup.com | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup.com | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel for Semiconductor Components Industries, Inc. |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel for Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel for Semiconductor Components Industries, Inc. |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel for General Electric Capital Corporation, Stategic Asset Finance. |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | 330-670-3004 | 330-670-3020 | jlapinsky@republicengineered.com | Counsel to Republic Engineered Products, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 17

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel for Microsoft Corporation; Microsoft Licensing, GP |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel for ICX Corporation |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgarrd | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | 213-312-2000 | 213-312-2001 | cnorgaard@ropers.com | Counsel for Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | 212-825-9457 | 212-825-9414 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Charles S. Schulman, Arlene N. Gelman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | 312-207-1000 | 312-207-6400 | cschulman@sachnoff.com agelman@sachnoff.com | Counsel for Infineon Technologies North America Corporation |
| Schiff Hardin LLP | Michael Yetnikoff | 623 Fifth Avenue | 28th Floor | New York | NY | 10022 | 212-753-5000 | 212-753-5044 | myetnikoff@schiffhardin.com | Counsel for  Means Industries |
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | 312-258-5500 | 312-258-5600 | wkohn@schiffhardin.com | Counsel for  Means Industries |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel for Panasonic Automotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | 212-765-2000 | 212-595-5955 | michael.cook@srz.com | Counsel for Panasonic Automotive Systems Company of America |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk, Esq. | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel for  le Belier/LBQ Foundry S.A. de C.V. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel for Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel for Gulf Coast Bank & Trust Company |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | 860-251-5811 | 860-251-5218 | bankruptcy@goodwin.com | Counsel for Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 17

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel for Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel for Hewlett-Packard Financial Services Company |
| Simpson Thacher & Bartlett LLP | Kenneth S. Ziman, Esq. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | cfox@stblaw.com | Counsel to JPMorgan Chase Bank, N.A. |
| Simpson Thacher & Bartlett LLP | William T. Russell, Jr., Esq. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | cfox@stblaw.com | Counsel to JPMorgan Chase Bank, N.A. |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel for Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel for Airgas, Inc. |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | 201-930-7483 | | lloyd.sarakin@am.sony.com | Counsel to Sony Electronics, Inc. |
| Sotiroff & Abramczyk, P.C. | Robert M. Goldi | 30400 Telegraph Road | Suite 444 | Bingham Farms | MI | 48025 | 248-642-6000 | 248-642-9001 | rgoldi@sotablaw.com | Counsel for  Michigan Heritage Bank; MHB Leasing, Inc. |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel for Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel for Excel Global Logistics, Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | 248-352-4700 | 248-352-4488 | shapiro@steinbergshapiro.com | Counsel for Bing Metals Group, Inc.; Central Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | 609-3922100 | 609-392-7956 | jposta@sternslaw.com | Counsel for Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | 502-681-0448 | 502-779-8274 | wbeard@stites.com | Counsel to WAKO Electronics (USA), Inc. and Ambrake Corporation |
| Swidler Berlin LLP | Jonathan P. Guy | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | 202-424-7500 | 202-424-7645 | jpguy@swidlaw.com | Counsel for Westwood Associates, Inc.; Sanders Lead Co. |
| Swidler Berlin LLP | Matthew W. Cheney | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | 202-424-7500 | 202-424-7645 | mwcheney@swidlaw.com | Counsel for Westwood Associates, Inc.; Sanders Lead Co. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 17

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Swidler Berlin LLP | Roger Frankel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | 202-424-7500 | 202-424-7645 | rfrankel@swidlaw.com | Counsel for Sanders Lead Co. |
| Swidler Berlin LLP | Richard H. Wyron | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | 202-424-7737 | 202-424-7645 | rhwyron@swidlaw.com | Counsel for Westwood Associates, Inc. |
| Swidler Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | 202-424-7500 | 202-424-7645 | rnsteinwurtzel@swidlaw.com | Counsel for Sanders Lead Co. |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | 513-381-2838 | | ferrell@taftlaw.com | Counsel for Wren Industries, Inc. |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel for TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel for TT Electronics, Plc |
| Thelen Reid & Priest LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel for American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel for STMicroelectronics, Inc. |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 300 | Dallas | TX | 75201 | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel for Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel for Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Group |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | bmcdonough@teamtogut.com | Conflicts counsel to Debtors |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | 860-725-6200 | 860-278-3802 | jwilson@tylercooper.com | Counsel for Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel for McAlpin Industries, Inc. |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center | Suite 807 | Pittsburgh | PA | 15222 | 412-562-2549 | 412-562-2429 | djury@steelworkers-usw.org | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | 614-464-6422 | 614-719-8676 | rjsidman@vssp.com | |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel for Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel for Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel for Robert Bosch Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 17

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - Email

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| White & Case LLP | Margarita Mesones-Mori | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | 305-371-2700 | 305-358-5744 | mmesonesmori@whitecase.com | Counsel for Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel for Schunk Graphite Technology |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | 512-370-2800 | 512-370-2850 | bspears@winstead.com | Counsel for National Instruments Corporation |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel for National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel for Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel for Metal Surfaces, Inc. |
| WL Ross & Co., LLC | Oscar Iglesias | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | 212-826-1100 | 212-317-4893 | oiglesias@wlross.com | Counsel for WL. Ross & Co., LLC |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel for Toyota Tsusho America, Inc. |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel for Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 17

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

# EXHIBIT C

Delphi Corporation
2002 List - First Class Mail

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Akebono Corporation (North America) | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | 248-489-7406 | 866-609-0888 | aswiech@akebobo-usa.com | Vice President of Administration for Akebono Corporation |
| Ambrake Corporation | Ronald L. Jones | 300 Ring Road | | Elizabethtown | KY | 42701 | 270-765-0208 | 270-234-2395 | | Representative for Ambrake Corporation |
| Arnall Golden Gregory LLP | Heath J. Vicente | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | 404-873-8682 | 404-873-8683 | heath.vincente@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Bernstein Litowitz Berger & Grossman | Eileen McNerney | 1285 Avenue of the Americas | | New York | NY | 10019 | 212-554-1485 | 212-554-1444 | emcnerney@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | 313-393-7592 | 313-393-7579 | rcmcdowell@bodmanllp.com | Counsel for Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | 313-259-7777 | | rmcdowell@bodmanllp.com | Counsel for Lear Corporation |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | 313-259-7777 | | rmcdowell@bodmanllp.com | Counsel for American Axle & Manufacturing, Inc. |
| Frank D. Jones | | 158 New York Circle Cr. | | Whitesburg | KY | 41858-9122 | | | | |
| HAL/ERC-Legal | Tillie Lim, Esq. | 50 Prospect Avenue | | Tarrytown | NY | 10591 | | | | Counsel to Hitachi Automotive Products (USA), Inc. |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | 212-725-7338 | 212-244-6219 | | Counsel for Baker Hughes Incorporated; Baker Petrolite Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | 617-542-3000 | 617-542-3001 | knorthrup@kutchinrufo.com | Counsel for Parlex Corporation |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissel.com | Counsel for Methode Electronics, Inc. |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | 312-443-1832 | 312-443-896-6432 | tbrink@lordbissel.com | Counsel for Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | 212-947-8304 212-947-8340 | 212-947-1202 | kwalsh@lordbissel.com rcovino@lordbissel.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | 303-957-4254 | 303-957-2098 | | Representative for Madison Capital Management |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | 212-609-6800 | 212-609-6921 | | Counsel to Ward Products, LLC |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raternink | PO Box 30736 | | Lansing | MI | 48909-7717 | 517-373-1820 | 517-373-2129 | | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | 517-373-1820 | 517-373-2129 | | Attorney General for Worker's Compensation Agency |
| Morgan, Lewis & Bockius LLP | William C. Heuer, Esq. | 101 Park Avenue | | New York | NY | 10178-0060 | 212-309-6000 | 212-309-6001 | wheuer@morganlewis.com | Counsel to Sumitomo Corporation |
| Noma Company and General Chemical Performance Products LLC | James Imbriaco | 90 East Halsey Road | | Parsippany | NJ | 07054 | 973-884-6952 | 973-515-3244 | | |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | 207-791-1100 | 207-791-1350 | kcunningham@piercewood.com | Counsel for FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 2

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

Delphi Corporation
2002 List - First Class Mail

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| The Timken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706 | | | | Representative for Timken Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | 616-752-2158 | | | Counsel for Behr Industries Corp. |
| White & Case LLP | John K. Cunningham | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | 212-819-8200 | | | Counsel for Appaloosa Management, LP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 2

11/30/2005 11:30 AM
E&Y and Skadden 2002 email, US mail lists

# EXHIBIT D

**Hearing Date: November 29, 2005**
**Hearing Time:  10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
            In re                         :      Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :      Case No. 05-44481 (RDD)
                                          :
                          Debtors.        :      (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OMNIBUS RESPONSE TO OBJECTIONS TO
MOTION FOR AN ORDER UNDER 11 U.S.C. §§ 363(b) AND
365(a) AND FED. R. BANKR. P. 9019 APPROVING
PROCEDURES TO ASSUME CERTAIN AMENDED AND
RESTATED SOLE SOURCE SUPPLIER AGREEMENTS

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the

"Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively,

the "Debtors"), hereby submit this omnibus response (the "Response") to the objections

(collectively, the "Objections") to the Motion for an Order Under 11 U.S.C. §§ 363(b) and 365(a)

and Fed. R. Bankr. P. 9019 Approving Procedures to Assume Certain Amended and Restated

Sole Source Supplier Agreements, dated November 18, 2005 (the "Motion").  In support of this

Response, the Debtors respectfully represent as follows:[1]

Preliminary Statement

1.    The Debtors filed the Motion on November 18 to address the impending

threat to the continuity of the Debtors' supply chain posed by thousands of contracts that will

expire during the restructuring process, a great number of which are due to expire on or around

December 31, 2005.  Without a method in place to address the expiration of certain of these

agreements -- specifically, those agreements (the "Assumable Agreements") pursuant to which

the Debtors receive goods that the Debtors believe are critical to their on-going manufacturing

operations (collectively, the "Goods"), with those of the Debtors' suppliers which are the sole

source from which the Debtors can currently obtain sufficient quantities of the Goods to avoid

interruptions of the Debtors' manufacturing operations (the "Covered Suppliers") -- the Debtors'

manufacturing process, and the automotive industry as a whole, could face imminent shutdown.

---

[1]    Capitalized terms used but not defined herein have the meanings ascribed to them in the
Motion.

2

See Declaration of R. David Nelson in Support of Motion for an Order Under 11 U.S.C. §§

363(b) and 365(a) and Fed. R. Bankr. P. 9019 Approving Procedures to Assume Certain

Amended and Restated Sole Source Supplier Agreements, dated November 26, 2005 (the

"Nelson Declaration") at ¶7.

        2.      As of November 28, 2005 at 9:00 a.m. (Eastern Standard Time), the

Debtors had received 46 timely-filed objections and joinders (collectively, the "Objections") to

the Motion.[2]  Of such objections, 44 were filed by suppliers to the Debtors (collectively, the

"Supplier Objections").  The remaining two Objections were filed by the Official Committee of

Unsecured Creditors (the "Creditors' Committee") and Wilmington Trust Company ("WTC"), a

member of the Creditors' Committee and the indenture trustee with respect to certain senior notes

and debentures issued by Delphi.  For the Court's convenience, a chart summarizing the

Objections by objector is attached hereto as Exhibit A and a chart summarizing the Objections

by grounds for objection is attached hereto as Exhibit B.

        3.      Notably, many of the Debtors' significant constituencies have expressed,

publicly or privately, their support for the Motion.  Specifically, the Debtors' two largest labor

unions, the International Union, United Automobile, Aerospace and Agricultural Implement

Workers of America (the "UAW") and the International Union of Electronic, Electrical, Salaried,

Machine and Furniture Workers-Communications Workers of America (the "IUE-CWA"), and

the administrative agent for the Debtors' postpetition lenders, JPMorgan Chase Bank, N.A.

("JPMC"), each filed a statement in support of the relief requested by the Motion.  In addition,

---

[2]      In addition, the joint objection of Hydro Aluminum Adrian, Inc. and Hydro Aluminum
Rockledge, Inc. was entered on the docket twice, at Docket Nos. 1208 and 1211.

3

counsel for the administrative agent for the Debtors' prepetition lenders and counsel for General

Motors Corporation will appear at the November 29th omnibus hearing in support of the Motion.

      4.    Attached as <u>Exhibit C</u> is a proposed revised Order (the "Revised Order")

granting the relief sought by the Debtors in the Motion as modified by those acknowledgments,

limitations, and modifications to which the Debtors believe they can and should agree in the

exercise of their reasonable business judgment and fiduciary responsibilities as debtors-in-

possession in these cases.  In the Debtors' view, the Revised Order addresses and reasonably

disposes of all of the cognizable objections filed in opposition to the Motion.  The principal

acknowledgments, limitations and modifications include:

    -- For the avoidance of doubt, supply agreements that are not related to the
continuation of the supply chain at the Debtors' automotive manufacturing
facilities (except with respect to agreements related to the Debtors' obligations to
provide manufactured goods on account of direct and indirect government
contracts) are excluded from the scope of the Order.  (Paragraph 1)

    -- The Creditors' Committee is authorized to monitor the Debtors' conduct and
performance with respect to this Order by providing continuing access during
regular business hours to the global supply management group at the Company's
worldwide headquarters by a designated representative of Mesirow.  (Paragraph 1)

    -- The Prepetition Agent is afforded the same right of review as the Creditors
Committee.  In addition, the definition of Non-Conforming Assumption has been
expanded to include any Assumable Agreement or Agreements which include a
waiver under section 547 of the Bankruptcy Code pursuant to paragraph 12 of the
Order with respect to any later-expiring Assumable Contracts that are not part of
the proposed Assumption as well as any Assumable Agreement that is classified
by the Debtors as an indirect supply agreement.  These additional categories of
Agreements will now be subject the specific review and objection of the
Committee and the Prepetition Agent.  (Paragraph 6)

    -- The Required Minimum Provisions of an Assumable Agreement has been
further limited to require that Covered Suppliers grant the most favorable trade
terms, practices and programs in effect between such supplier and the Debtors in
the twelve months prior to the Petition Date consistent with and subject to current
market conditions as of the Assumption Date.  The Cure costs payment schedule
has been refined so that the first installment is paid as soon as reasonably
practicable following the Assumption Date of an Assumable Agreement and the

remaining five installments are paid at the end of the five calendar quarters beginning with the first calendar quarter following the calendar quarter in which the Assumption Date occurs.  (Paragraph 8)

-- A Covered Supplier will be conclusively deemed to consent to an be irrevocably bound by the terms of the Order <u>only</u> in the event that the Covered Supplier actually executes and delivers to the Debtors an Assumption Agreement or similar document.  (Paragraph 10)

-- The Committee (as well as the Prepetition Agent) are granted a reservation of rights to file a supplemental objection as to the prospective application of the Order on or after March 1, 2006 or at any other time prior to March 1, 2006 should the aggregate amount of Cure contractually committed to be paid by the Debtors pursuant to paragraph 8f of the Order exceed $150,000,000 exclusive of Cure amounts associated with Non-Conforming Assumptions (which Cure amounts are already subject to the review and objection process in paragraph 6 of the Order).  (Paragraph 14)

-- To the extent that the Court subsequently authorizes the Debtors to implement a Key Executive Compensation Program ("KECP") which includes any component that would exclude restructuring expenses from the calculation of incentive payments under such program, the Revised Order requires that the Debtors not classify any expenses under generally accepted accounting principles incurred by the Debtors as a result of the assumption of an Assumable Agreement under the Revised Order as restructuring expenses under a KECP.  (Paragraph 15)

5.      The primary objection to the Motion raised in the Supplier Objections is the concern of certain suppliers that they could become bound to the Required Minimum Provisions without their prior written consent.  As described above, the Debtors have modified the Revised Order to require suppliers to sign an Assumption Agreement to be bound by, and receive benefits under, the Procedures and, with that modification, the Debtors believe that most, if not all, of the Supplier Objections should be resolved.

6.      The Objections of the Creditors' Committee and WTC center around their assertions that the relief requested by the Motion is too expensive, provides creditors with little oversight, and is not supported by evidence.  With respect to the potential cost of the program, the Debtors first note that implementation of the relief requested in the Motion may generate

5

positive cash flow for the Debtors and other significant economic benefits which could

substantially offset the cost of curing prepetition defaults under the Assumable Agreements

which are actually assumed.  See Declaration of Randall S. Eisenberg in Support of Motion for

an Order Under 11 U.S.C. §§ 363(b) and 365(a) and Fed. R. Bankr. P. 9019 Approving

Procedures to Assume Certain Amended and Restated Sole Source Supplier Agreements, dated

November 26, 2005 (the "Eisenberg Declaration"), at ¶17.  More importantly, any cost that may

result from such program is far outweighed by the dire consequences if the program proposed by

the Motion is not implemented, which would likely include the interruption of the Debtors'

supply chain and then likely lead to the idling of their manufacturing facilities, the loss of

revenue from such production halts, the assertion of tens of millions of dollars in damage claims

by the Debtors' customers, and the loss of future business from such customers because of a loss

of goodwill and confidence in the Debtors' prospects for a successful restructuring.[3]

       7.     With respect to the remaining concerns expressed by the Creditors'

Committee and WTC, following the filing of the Motion, the Debtors have provided extensive

discovery to each such objector.  Specifically, following conferences between counsel for the

---

[3]    The Debtors have further limited the scope of the relief requested under the Motion to
exclude any agreements that are not related to the continuation of the supply chain at the
Debtors' automotive manufacturing facilities (except with respect to agreements related to the
Debtors' obligations to provide manufactured goods on account of direct and indirect
government contracts).  Additionally, the Debtors have modified the Revised Order so
that all (a) proposed assumptions including a grant of a Preference Waiver with respect to
any later-expiring Assumable Agreements that are not part of the proposed assumption or
(b) proposed assumptions of Assumable Agreements classified by the Debtors as indirect
supply agreements will constitute Non-Conforming Assumptions and will be subject to
scrutiny by the Creditors' Committee and Prepetition Agent or this Court on a contract-
by-contract basis.

Debtors and the Creditors' Committee and WTC, respectively,[4] beginning on Wednesday,

November 23, 2005 and continuing on Friday, November 25, 2005, the Debtors provided copies

of all reasonably-available documents supporting the relief requested in the Motion to counsel to

the Creditors' Committee and WTC.  In addition, on Saturday, November 26, 2005, counsel to

the Creditors' Committee and WTC were each provided with the Eisenberg Declaration, the

Nelson Declaration, and the Declaration of John D. Sheehan in Support of Motion for an Order

Under 11 U.S.C. §§ 363(b) and 365(a) and Fed. R. Bankr. P. 9019 Approving Procedures to

Assume Certain Amended and Restated Sole Source Supplier Agreements (the "Sheehan

Declaration").  Finally, on Monday, November 28, 2005, the Debtors made each of the

declarants available to be deposed by counsel to the Creditors' Committee and WTC.

Accordingly, the Debtors believe that the Creditors' Committee and WTC have each been

provided with more than adequate factual support for the relief requested and to demonstrate the

sound exercise of the Debtors' business judgment.  Therefore, in light of the exigent

circumstances underlying the Motion and the revisions made unilaterally by the Debtors in the

Revised Order, the Debtors assert that the Objections of the Creditors' Committee and WTC are

without merit and should be overruled.

---

[4]     At a "meet and confer" conference with counsel for WTC, WTC and the Debtors agreed
on the scope and parameters of the Debtors proposed production of documents and
witnesses.  The Debtors believe that they have fulfilled their discovery obligations in this
regard.  Unfortunately, the Creditors' Committee refused to limit the scope and
parameters of its discovery requests and, accordingly, the Debtors and the Creditors'
Committee were unable to reach an agreement on the proposed discovery.  Nonetheless,
the Debtors produced the same documents and made available the same witnesses to the
Creditors' Committee as they did to WTC.  On the other hand, the Creditors' Committee
provided limited document responses to the Debtors' discovery requests served on the
Committee following the filing of the Committee's objection and provided only one of
the three deponents requested by the Debtors for deposition testimony.

<u>Argument</u>

A.      <u>The Supplier Objections</u>

8.      Those of the Debtors suppliers that have objected to the Motion have
objected primarily on either or both of the following two bases: (a) certain provisions of
paragraph 10 of the proposed order attached to the Motion (the "November 18 Order") could be
construed as binding a supplier to the Required Minimum Provisions without its express consent;
and (b) the supplier requests that notice of any proposed assumption in accordance with the
Procedures be directed to specific individuals.  Notably, the Debtors' suppliers have not objected
to this Court's approval of the Motion, so long as any assumptions in accordance with the
Procedures are consensual (as was always the underlying premise of the Motion).

9.      With respect to the first base for many of the Supplier Objections, the
Revised Order provides that a supplier will only be bound to the terms of, and receive benefits
under, an Assumption Agreement upon execution thereof, and not through performance.[5]  To
avoid any confusion and to resolve the Supplier Objections to paragraph 10 of the November 18
Order, the Debtors propose that the order entered by this Court approving the Motion be revised
to read as follows:

> The Debtors are hereby authorized, but not directed, to provide an Assumption
> Agreement substantially in the form of the letter attached hereto as <u>Exhibit 1</u> to
> each Covered Supplier whose Assumable Agreement(s) are being assumed
> pursuant to the terms hereof along with a copy of the order granting this Motion;
> <u>provided</u>, <u>however</u>, that a Covered Supplier will be conclusively deemed to
> consent to and be irrevocably bound by the terms of this Order only in event that

---

[5]    Consistent with historical practice, the Debtors and their suppliers routinely enter into
agreements by performance as allowed under the Uniform Commercial Code.  To avoid
any misunderstanding, however, the Debtors will require execution of Assumption
Agreements before a supplier will become subject to the provisions of the Order.

8

the Covered Supplier actually executes and delivers to the Debtors an Assumption
Agreement or similar document.

10.     The Debtors believe that this revision eliminates any possibility that a

Covered Supplier's continued performance under an Assumable Agreement, alone, could cause

inadvertent acceptance of the Required Minimum Provisions -- notwithstanding that acceptance

through performance is customary in the automotive industry and in the context of the Debtors'

global supply management arrangements with the Debtors' suppliers  Instead, the Debtors would

only be authorized to assume an Assumable Agreement upon the relevant Covered Supplier's

entry into an Assumption Agreement containing the Required Minimum Provisions or, to the

extent that the Debtors and the relevant Covered Supplier agree to terms containing less than all

of the Required Minimum Provisions, with the review and absence of objection by the Creditors'

Committee and the administrative agent under the Debtors' prepetition credit facility (the

"Prepetition Agent") or, if the Creditors' Committee or the Prepetition Agent does object, this

Court.

11.     The second main objection raised in the Supplier Objections is that certain

suppliers request that a copy of a proposed Assumption Agreement be provided to such

supplier's counsel prior to execution thereof.  The Debtors believe that this concern is, for most

objecting suppliers, tied to their concern that such supplier could be deemed to consent to the

Required Minimum Provisions.  Therefore, the Debtors believe that the proposed change to

paragraph 10 of the Revised Order should resolve these concerns and the issue of whether and

how an individual supplier involves outside counsel in its principal-to-principal communications

should be decided by each supplier and not by the Court.  Thus, the Debtors respectfully request

that, to the extent any Supplier Objection seeks to require the Debtors to provide notice of a

9

proposed Assumption Agreement to anyone not normally responsible for a Covered Supplier's
Assumable Agreements with the Debtors, such Objection be overruled.

       12.    Several of the Supplier Objections raise minor additional issues.  Several
Supplier Objections request clarification as to whether any agreements between the Debtors and
such supplier may qualify for assumption under the Procedures.  The Debtors believe that this
request for clarification is likely related to such suppliers' concerns that they could be bound
without their prior written consent, which the Debtors have addressed as described above.
Therefore, all such suppliers will be given notice of the Debtors' proposed assumption when the
Debtors elect to assume the Assumable Agreement and seek entry into an Assumption
Agreement.

       13.    Certain suppliers have expressed concern that the Debtors intend by the
Procedures to limit the waiver of avoidance actions that is inherent in the assumption of an
executory contract.  The Debtors propose to add the following language to paragraph 12 of the
Revised Order to resolve this issue: "Upon the occurrence of the Assumption Date as to a
particular Assumable Agreement, the rights of the Debtors and their respective estates shall be
waived under chapter 5 of the Bankruptcy Code to avoid payments made to a Covered Supplier
with respect to the Assumable Agreement actually assumed on the Assumption Date."

       14.    Certain suppliers have objected to the Motion to the extent that certain
language contained in footnote 5 thereof could be deemed to restrict a Covered Supplier's right to
file a motion to compel the Debtors to assume or reject an executory contract by a date certain.
As provided in paragraph 5 of the November 18 Order, a Covered Supplier's right to seek to
compel assumption is limited solely with respect to Previously-Extended Agreements and solely
with respect to a Covered Supplier's right to seek to compel the Debtors to assume such an

10

Agreement under the Procedures if the Supplier has not complied with the proposed terms of

paragraphs 4 and 5 of the November 18 Order.

15.    Finally, a supplier has objected on the basis that the Procedures would not

allow a supplier to object to the assumption of the Assumable Agreements of other Covered

Suppliers in accordance with the Procedures.  Such concerns will be addressed by the ability of

the Creditors' Committee to object to any Non-Conforming Assumption, the definition of which

will be expanded to provide that all (a) proposed assumptions including a grant of a Preference

Waiver with respect to any later-expiring Assumable Agreements that are not part of the

proposed assumption or (b) proposed assumptions of Assumable Agreements classified by the

Debtors as indirect supply agreements will constitute Non-Conforming Assumptions.  To require

the Debtors to provide notice and an opportunity to object to the individual proposed

assumptions under the Procedures to every other supplier would be administratively impossible

in the required time frame.  Moreover, suppliers could inappropriately use this process to gain

undue negotiating leverage over the Debtors by enabling such suppliers to compare their

potential Assumption Agreements to those previously entered into by the Debtors.  As described

below in responding to the Objections of the Creditors' Committee and WTC, the Debtors assert

that they have made ample showings of the valid exercise of their business judgment and request

that this objection be overruled.

B.    The Creditors' Committee And WTC Objections

16.    Apart from the Supplier Objections, only two parties have objected to the

Motion -- the Creditors' Committee and WTC.  Because these Objections raise similar grounds,

the Debtors will respond to such Objections together.  The Creditors' Committee expressly

recognizes the "critical nature of the Debtors' supply chain" (see Creditors' Committee Objection

at p. 2) but then asserts that the procedures outlined by the Debtors will be too expensive.  WTC

makes similar assertions.  Neither the Creditors' Committee nor WTC, however, supports these

assertions with any concrete factual support or offers any other viable alternative to address the

critical issues facing the Debtors.  Thus, the Debtors respectfully assert that the Objections of the

Creditors' Committee and WTC are baseless and should be overruled.

17.    The Creditors' Committee and WTC each derides the Procedures as being

a disguised "critical vendor" program, which they clearly are not.  The Creditors' Committee's

description of the Procedures is particularly surprising given that one of the alternative methods

suggested by the Creditors' Committee's professionals for addressing the issue of expiring

contracts was to seek expanded "critical vendor" authority under the Essential Supplier Order.[6]

The Debtors declined to adopt this proposal because they did not believe that it would provide

sufficient protection of the continuity of their supply chain on a go-forward basis nor offer the

additional protections that the Procedures provide.  In reality, for the convenience of a

convenient legal argument, the objectors inappropriately seek to try to fit the "square peg" of

Section 365 contract assumption into the "round hole" of First Day supplier orders.

18.    As described in the Motion, the Debtors are faced with a watershed event

in these chapter 11 cases -- namely, the expiration of thousands of supply contracts by the end of

December.  In response to this event, the Debtors and their advisors explored numerous options

and ultimately determined that the Procedures were the most efficient and cost-effective method

of protecting their supply chain during the reorganization and, thereby, maintaining their going-

---

[6]    Order Under 11 U.S.C. §§ 105(a), 363, 364, 1107 and 1108 and Fed. R. Bankr. P. 6004
and 9019 Authorizing Continuation of Vendor Rescue Program and Payment of
Prepetition Claims of Financially Distressed Sole Source Suppliers and Vendors Without
Contracts (Docket No. 197).

concern value for the benefit of all constituencies.  <u>See</u> Eisenberg Decl. at ¶19; Nelson Decl. at

¶15; Sheehan Decl. at ¶7.  As described in the Motion, the Eisenberg Declaration, and the Nelson

Declaration, the Debtors have determined that implementation of the relief requested in the

Motion may even generate positive cash flow for the Debtors and other economic benefits which

could substantially offset the cost of curing prepetition defaults under the Assumable

Agreements which are actually assumed.  <u>See</u> Eisenberg Decl. at ¶17; Nelson Decl. at ¶13.

Implementation of the Procedures will provide the Debtors with a continuous supply of Goods

on favorable pricing and payment terms.  The Procedures will also give the Debtors potent legal

remedies to enforce the suppliers' obligations under such agreements.

19.      Nevertheless, the Creditors' Committee assails these benefits as being

illusory and unsupported.  This assertion is without merit.  As is clearly laid out in the Motion,

the Required Minimum Provisions require a return to customary trade terms, including MNS-2

payment terms and pricing terms.  Although the Creditors' Committee acknowledges the cash

flow impact of a return to MNS-2 payment terms, it asserts that the benefit is merely one of

timing and therefore inconsequential.  Contrary to its assertions, the Creditors' Committee

greatly underestimates the benefit of the Required Minimum Provisions.  As noted in the

Eisenberg Declaration, the Debtors will recognize a cumulative cash flow benefit that could

approximate $800 million by the first quarter of 2007, leading to projected net interest savings of

$35 million.  <u>See</u> Eisenberg Decl. at ¶17.  This benefit is much more significant than one of just

timing.  Furthermore, the Debtors expect to achieve significantly better pricing under assumed

Assumable Agreements than would be possible otherwise.  <u>See</u> Eisenberg Decl. at ¶¶13, 17;

Nelson Decl. at ¶13.  In this way, the Procedures provide a multiple benefit to unsecured

creditors -- more profitable operations with a smaller pool of unsecured claims.  Without the

13

Procedures, the Debtors would face a very real risk of significant operational disruption and a

higher cost structure as suppliers raise prices to recoup unpaid prepetition obligations. Id.

Because suppliers would attempt (as has been demonstrated by demands already made upon the

Debtors) to retain their prepetition claims in such instances, the Debtors could potentially pay

such suppliers' prepetition claims twice -- first, through higher pricing, and second, through

distributions under a plan of reorganization. See Eisenberg Decl. at ¶17.

        20.     The Creditors' Committee and WTC further argue that the Debtors have

not provided sufficient evidentiary support for the relief sought under the Motion to the

Creditors' Committee or WTC to allow them to independently review the Debtors' exercise of

their reasonable business judgment.  Over the past several days, however, the Debtors have

provided to the Creditors' Committee's and WTC's professionals hundreds of pages of

documentation, declarations in support of the Motion from John D. Sheehan, the Vice President

of Corporate Restructuring, Chief Accounting Officer and Controller for Delphi Corporation, R.

David Nelson, the Vice President of  Global Supply Management for Delphi Corporation, and

Randall S. Eisenberg, a Senior Managing Director at FTI Consulting, Inc., and made all three

declarants available to be deposed.  To the extent that the Debtors have not responded to all of

the requests for production of documents propounded by the Creditors' Committee and WTC it is

because the requests were hopelessly overbroad.  For example, each of the Creditors' Committee

and WTC requested all documents related to the Debtors' negotiations relating to each of the

over 11,000 expiring contracts.  As stated in the Eisenberg Declaration, the Debtors employ

hundreds of buyers, directors, and commodity directors in managing the purchase and supply of

products through their Global Supply Management process.  See Eisenberg Decl. at ¶18.  To

expect the Debtors to produce the entire files of hundreds of employees, many of whom are not

14

even centrally located at the Debtors' headquarters, is unreasonable and unnecessary to the Creditors' Committee's and WTC's reviewing the factual basis for the Motion.[7]

21.    Nevertheless, the Creditors' Committee and WTC each argue that the Debtors are required to provide a supplier-by-supplier or contract-by-contract analysis to support the relief requested in the Motion.    That assertion is both impractical and not in accordance with the practice of this Court in large chapter 11 cases.    First, if this Court were to accept this position, the Debtors would essentially be required to file thousands of individualized assumption motions and receive Court approval of each such motion within the next month. Quite clearly, such a process would be impossible and a gross waste of the Debtors' resources which could more appropriately be directed to other matters.    More importantly, such a process is completely unnecessary.    As described in the Nelson and Eisenberg Declarations, the damages arising from an interruption of the Debtors' supply chain will be significant.    If an interruption of the Debtors' supply chain disrupts the manufacturing operations of one of the Debtors' customers, such customer is likely to assert claims for damages exceeding $10 million per plant per day. See Eisenberg Decl. at ¶14; Nelson Decl. at ¶12.    Of the Debtors' approximately 2,000 suppliers that are implicated in the contemplated December, 2005 assumptions alone, the Debtors have fewer than ten suppliers holding prepetition trade claims in excess of $10 million.    A shut down of one plant of one customer for only one day is likely to lead to asserted damages far in excess of the potential cure payments (which would be paid at 75% or less of the prepetition trade claim

---

[7]    The Debtors believe that the Creditors' Committee recognizes this fact and that any remaining objections of the Creditors' Committee as to the factual support provided relate solely to the format in which such information was provided and not the substance. Specifically, the Debtors have been unable to provide certain of the information requested by the Creditors' Committee in the format requested.    Nevertheless, the substantive information requested has been provided in the format accessible by the Debtors.

over 18 months and only so long as the Debtors' estates benefited from the Assumed Agreement).

Furthermore, even the total maximum cure amount (approximately $30.6 million) for the

Debtors' largest prepetition trade claim (approximately $40.8 million) could quickly be dwarfed

by the potential asserted damages arising from a shutdown of a customer's manufacturing

facilities.  This comparison ignores the further damages borne by the Debtors because of the

shutdown of the Debtors' manufacturing facilities in the form of lost revenues, while continuing

to incur significant costs.  See Eisenberg Decl. at ¶14; Nelson Decl. at ¶12.

22.    Similarly, the damages would further include a particularly pernicious

additional cost of allowing a customer's operations to be interrupted -- the potential loss of future

programs from such customers, the lifeblood of any restructured business.  As the Debtors have

previously noted to this Court, new business programs are sourced by the Debtors' OEM

customers well in advance of the beginning of production because of the extensive planning and

approval necessary.  Many programs run for the life of a given platform, which is normally

several years at a minimum.  Therefore, the Debtors' failure to meet their current commitments to

their customers (or any perceived risk of the Debtors not being able to do so) may harm the

Debtors' businesses for years to come in the form of lost business.  See Eisenberg Decl. at ¶14.

This future business will be necessary to the viability of the Debtors' reorganization plan.

Putting the Debtors' supply chain and their relationships with their customers at risk at this early

stage of these chapter 11 cases is not in the best interests of any interested parties, including the

Debtors' unsecured creditors.

23.    As noted in the Motion and in the Eisenberg and Nelson Declarations, the

just-in-time and sole source nature of the Debtors' and the automotive industry's supply chains

make these justifications much more than "vague assertions about financial peril."  This is the

16

reality of the Debtors' industries and this is a reality which must be addressed to ensure a

successful reorganization of the Debtors.  See Eisenberg Decl. at ¶8; Nelson Decl. at ¶¶9-12.

This is a reality of which all of the Debtors' suppliers are well aware, despite the Creditors'

Committee's assertion that the Debtors have somehow brought this situation to the attention of

unwitting suppliers by filing the Motion.  The Creditors' Committee's further attempts to

compare this situation to the situation with "Non-Conforming Suppliers" under the Essential

Suppliers Order similarly misses the mark.  Non-Conforming Suppliers are under a contractual

obligation to continue supplying goods and services to the Debtors and refuse to provide such

goods or services in violation of such obligation.  By contrast, as of January 1, 2006, many of the

Covered Suppliers will be under no obligation to continue doing business with the Debtors and

will be free to walk away if they so choose.  The Debtors would have no recourse against such

Covered Suppliers for electing to walk away, even if such decision caused a shutdown of the

Debtors' and their customers' operations.[8]

24.     The Debtors have demonstrated, through the factual bases provided in the

Motion, the Eisenberg, Nelson and Sheehan Declarations and the additional documents produced

---

[8]     The Creditors' Committee and WTC also object to the Debtors' request for the authority
to assume the Previously Extended Agreements.  The Debtors assert that such provisions
are necessary to ensure that the Procedures are fair and equitable to the Debtors' Covered
Suppliers and, further, that the Debtors and their estates would receive significant
benefits from such assumptions.  Furthermore, absent application of the Procedures to the
Previously Extended Agreements, the Debtors will have to face these same suppliers
when the extended agreements are up for renewal and, in the case of suppliers with both
expiring and nonexpiring contracts, may even have to face them sooner to negotiate
contracts that expire in 2006.  If such suppliers believe that they have been treated
unfairly in this process, some will no doubt penalize the Debtors in future contract
negotiations through price increases or more onerous concessions.  Therefore, the
Debtors believe that all of the bases described herein are also applicable to the Previously
Extended Agreements and serve to justify the assumption thereof on the terms provided
in the Motion.

to the Creditors' Committee and WTC that this relief is necessary, beneficial and in the best

interests of the Debtors' estates on a macroeconomic level.  Given the great disparity between the

damages caused by a disruption of the Debtors' supply chain and the costs of assuming each

individual agreement (which will be spread over time), the virtual certainty that many Covered

Suppliers could shut down important parts of the Debtors' on-going operations, and the

significant financial benefits to the Debtors' estates from the terms of the Required Minimum

Provisions, it is facially evident that the assumption of any given Assumable Agreement in

accordance with the Procedures would constitute a valid exercise of the Debtors' business

judgment.  Although the objections attempt to characterize the Motion as seeking approval of a

blanket assumption, the Motion instead seeks this Court's approval of Procedures to allow the

Debtors to exercise their business judgment on a case-by-case basis in an efficient manner.

Indeed, the Revised Order now limits the Debtors to spending up to only $150,000,000 in Cure

costs related to the assumption of Assumable Contracts for which the Creditors' Committee and

Prepetition Agent do not have specific objection rights and the opportunity to bring either

individual contracts or the entire prospective authority under the Motion and Revised Order back

to this Court for further adjudication.  Where agreements are clearly necessary to the Debtors'

continuing operations and successful reorganization, courts in this District have routinely

allowed blanket assumptions of broad categories of executory contracts without undertaking a

contract-by-contract or vendor-by-vendor analysis -- in particular, pursuant to plans of

reorganization.  See, e.g., In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. July 15,

2004) (as part of confirmation of supplemental modified fifth amended joint plan of

reorganization, approving assumption of approximately 1,500 executory contracts and unexpired

leases); In re WorldCom, Inc., Case No. 02-13533 (JAG) (Bankr. S.D.N.Y. Oct. 21, 2003)

(approving assumption of all executory contracts not specifically listed on schedule of contracts

to be rejected as part of confirmation of the debtors' modified second amended joint plan of

reorganization); In re The Warnaco Group, Inc., Case No. 01-41643 (RLB) (Bankr. S.D.N.Y. Jan.

16, 2003) (approving, as part of confirmation of the first amended joint plan of reorganization,

assumption of hundreds of executory contracts); In re The Singer Company N.V., Case No. 99-

10578 (BRL) (Bankr. S.D.N.Y. Aug. 24, 2000) (as part of the confirmation of first amended joint

plan of reorganization, approving assumption of over 1,000 executory contracts and unexpired

leases).  Furthermore, nothing contained in the Orion decision requires a different result.  Orion

Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095 (2d. Cir.

1993).  Therein, the court noted that an assumption proceeding is "summary" in nature and

"intended to efficiently review the trustee's or debtor's decision . . .  in the course of the swift

administration of the bankruptcy estate."  Id at 1098.  Approval of the Procedures and

assumption of the Assumable Agreements is clearly a valid exercise of the Debtors' business

judgment and necessary for the swift administration of these estates for all f the reasons provided

in the Motion, in the Eisenberg, Nelson, and Sheehan Declarations, and herein.  The Orion

decision does not require this Court to undertake an individualized analysis of each particular

Assumable Agreement, particularly given the evidentiary showings already made by the Debtors.

The Creditors' Committee's assertion that the Court may not approve procedures allowing for

assumption of agreements under defined criteria is without support.

        25.    Each of the Creditors' Committee and WTC attempts to draw parallels

between the Motion and the critical vendor program proposed by Kmart Corporation and

ultimately rejected by the Seventh Circuit Court of Appeals.  See In re Kmart Corp., 359 F.3d

866 (7th Cir. 2004).  First and foremost, the proposed payment of prepetition claims under the

19

Procedures is made pursuant to the mandatory cure provisions of section 365 of the Bankruptcy

Code, not the less clearly defined provisions of sections 105 and 363 of Bankruptcy Code

involved in <u>Kmart</u>.

26.    Moreover, the factual basis for the relief requested in the Motion is much

more apparent.  Kmart, as an operator of retail stores selling to general consumers, did not face

the same critical supply chain issues that confront the Debtors.  A failure by one of Kmart's

suppliers to continue providing goods to Kmart would only have kept Kmart from stocking those

particular goods on its shelves; it would not have forced Kmart to close its stores.  In contrast,

the failure by one of the Debtors' suppliers to ship Goods may quickly shut down one or more of

the Debtors' manufacturing plants -- a drastically different outcome.  <u>See</u> Nelson Decl. at ¶12.

The damages resulting from a supplier's failure to ship to Kmart would only have been the

incremental lost profits on the sales of such goods.  The damages resulting from a supplier

failing to timely ship to the Debtors, however, would include not only lost profits, but also

potentially significant damages claims asserted by the Debtors' customers.  <u>Id</u>; <u>see</u> <u>also</u> Eisenberg

Decl. at ¶14.  Kmart could afford to depend upon its suppliers to act rationally and to deal with

those suppliers who chose to act irrationally on a one-off basis without causing significant harm

to its prospects for reorganization; the Debtors do not have that luxury.  On the other hand, the

objectors conveniently fail to acknowledge that Kmart assumed very early in its chapter 11 cases

virtually all of its executory contracts relating to its merchandising brands which involved the

payments of millions of dollars of cure costs and, unlike here, the imposition of very substantial

administrative liability on Kmart's chapter 11 estates.  Here, it is not mere speculation that

certain of the Debtors' suppliers will act irrationally -- one needs only consider the fact that this

Court has already entered multiple Orders to Show Cause with respect to suppliers which refused

20

to ship without receiving payment of prepetition claims, notwithstanding their contractual

obligations and the requirements of the automatic stay.  To assume that all suppliers will quietly

get into line and continue shipping on January 1, 2006 (when they no longer have a contractual

obligation to do so) would be reckless and inappropriate, particularly given the risks to the

Debtors' businesses that would be attendant with such a decision.[9]

27.     Further, although the Creditors' Committee in its objection recognizes an

important issue -- the Debtors' public statements regarding potential closure or divestiture of

certain of the Debtors' operations -- the Creditors' Committee ignores the full import of that issue

and misapprehends the means by which the Debtors' proposed Procedures proactively address

that issue.  The Creditors' Committee notes this issue in objecting that certain Assumable

Agreements may relate to businesses that the Debtors may divest or winddown over the next 24

months (the term of the extension) and argues that assumption of such Assumable Agreements

would therefore be inappropriate.  The Creditors' Committee, however, conveniently ignores the

further implications of this situation -- namely, the fact that certain businesses may be wound

down or divested puts the Debtors in the unique and unenviable position of attempting to

negotiate extensions of agreements that many Covered Suppliers realize may not be necessary to

the Debtors at confirmation of a plan of reorganization.  See Eisenberg Decl. at ¶11.  Normally, a

---

[9]     The Debtors also note that another of the "critical vendor" cases cited by WTC similarly
does not support its position.  In In re United American, Inc., 327 B.R. 776 (Bankr. E.D.
Va. 2005), the court denied approval of a "critical vendor" payment under the doctrine of
necessity, but allowed the debtor to assume the same contract when the services provided
under the contract were necessary to the debtor's on-going business operations and were
not able to be quickly or inexpensively replaced from an alternate source.  The United
American case demonstrates both that the Motion does not represent a "critical vendor"
program to which 11 U.S.C. § 363 and the Kmart line of cases would apply and that other
courts have viewed assumption as a reasonable alternative when presented with similar
issues.

debtor's suppliers will support the debtor during the course of its reorganization because such suppliers can recoup their prepetition losses over time.  Many of the Debtors' suppliers, however, have no such assurance in light of these disclosures.  The numerous other recent chapter 11 filings in the automotive supply industry have further exacerbated the anxiety and uncertainty of many of the Debtors' suppliers.  See Eisenberg Decl. at ¶¶11-12.  Therefore, the Creditors' Committee's blind faith that these Covered Suppliers will agree to continue performing and not attempt to utilize their leverage over the Debtors currently (when they realize that their leverage is potentially fleeting) is misplaced.[10]  Furthermore, in order for the Debtors to maximize the value of their estates with respect to those business lines that will be wound down or divested, the Debtors must be able to effectuate either an orderly winddown or a sale of the business as a going concern.  Absent a guarantee of continued supply of Goods during that period, there can be no assurance that the Debtors will be able to realize the maximum value of these businesses for the benefit of all constituencies.  Furthermore, the Procedures actively address this concern in a number of ways.  The Debtors have protected their flexibility to terminate agreements to the extent that they become unnecessary through the explicit agreement to the terms of their General Terms and Conditions, which include a Termination for Convenience provision.  The Debtors have also actively sought to limit the damages arising upon a termination and to limit payments

---

[10]     The Debtors do agree with the assertions of the Creditors' Committee and WTC that they have significant leverage over some of their suppliers whose businesses are particularly reliant upon the Debtors.  The Procedures already take this fact into account by providing the Debtors with the discretion to not elect to assume such Covered Suppliers' Assumable Agreements or to assume such Assumable Agreements only upon terms which are even more favorable to the Debtors.  However, the Debtors do not agree that the fact that some such suppliers exist can provide a basis for arguing that the Procedures are unnecessary for the Debtors to deal with the remaining Covered Suppliers that do not fall within this category.

on account of cure under assumed agreements to only those payments that come due while the

agreement continues to be necessary to the Debtors' on-going operations.

28.    There are two final objections raised solely by WTC -- that any payments

made pursuant to the relief requested in the Motion not be treated as "restructuring costs" in

calculating payments under a key employee compensation plan ("KECP") approved in these

chapter 11 cases and that the Debtors' request for confirmation that entry into new supply

contracts constitute transaction in the ordinary course of business constitutes a request for an

advisory opinion.  As to the first objection, the Debtors have modified the Revised Order to

provide that, to the extent that this Court subsequently authorizes the Debtors to implement a

KECP including a component excluding restructuring expenses from the calculation of incentive

payments, the Debtors will not classify any expenses under generally accepted accounting

principles incurred by the Debtors as a result of the assumption of Assumable Agreements under

an order granting the relief requested in the Motion as restructuring expenses under a KECP.  As

to the second issue raised by WTC, the Debtors note that such relief is necessitated by the oft-

stated concern of the Debtors' suppliers regarding the scope of the Debtors' authority to enter into

agreements without receiving further authority of this Court.  The Debtors believe, and WTC

apparently concurs, that entry into such agreements is clearly within the ordinary course of the

Debtors' businesses.  Thus, this provision constitutes little more than a comfort order such as has

previously been entered by this Court with respect to certain provisions of sections 362, 503, and

525 of the Bankruptcy Code.

29.    In essence, the objections of the Creditors' Committee and WTC amount

to the suggestion that the Debtors "play chicken" with their global supply chain and await on

pins and needles for January 1, 2006 to see which of their suppliers are willing to shut down the

Debtors' and their customers' operations and to then deal with such a situation once a supplier

has conclusively demonstrated that it will shut down the Debtors and cause the damages

described in the Motion -- recognizing that a hostile response by even as much as 1% of the

suppliers involved could irrevocably impair the prospects for the Debtors' reorganization and

related business enterprise value.  As fiduciaries of these Chapter 11 estates, the Debtors are

unwilling to adopt such a strategy; it would be a reckless exercise of business judgment which

would put at risk the Debtors' potential for a successful restructuring, their ability to successfully

win new business from their customers, and the interests of the Debtors' thousands of

stakeholders, including the jobs of thousands of employees and recoveries of all creditors.  As

the Debtors have repeatedly demonstrated to the Creditors' Committee (and which the Creditors'

Committee acknowledges), the continuity of the Debtors' supply chain is critical to there being a

viable business to restructure at the conclusion of these chapter 11 cases.  This fact is further

evidenced by the statements in support of the Motion filed by the Debtors' two largest labor

unions, the UAW and the IUE-CWA, and the administrative agent to their postpetition lender

group, JPMC -- and the commitment made to the Debtors by the Prepetition Agent and General

Motors Corporation to appear and support entry of the Revised Order at the November 29th

omnibus hearing.   The Debtors view the Creditors' Committee's failure to support a reasonable

solution to these risks (while offering no other proposal for addressing these concerns) to be

extremely disappointing and a disservice to their constituents.  Furthermore, the Creditors'

Committee's failure to offer a workable alternative (and to object to this Motion on the apparent

grounds that it is too similar to an alternative -- expanded relief under the Essential Supplier

Order -- previously suggested by the Creditors' Committee's own professionals) demonstrates the

difficulty of this situation and the minimal likelihood that another alternative can be agreed to

and implemented in the time frame necessary (fewer than 20 working days).

      30.    While the Debtors remain committed to working with the Creditors'

Committee and others in developing a process that at once serves the interests of the Debtors and

protects the value of their estates and also recognizes and addresses the legitimate concerns of

creditor constituencies, the Debtors must be able to begin addressing these critical issues

immediately and no other viable alternative to the Procedures has been proposed.  Specifically,

the Debtors have proposed that they will permit the Creditors' Committee to monitor the Debtors'

conduct and performance with respect to an order granting the relief requested in the Motion by

providing continuing access during regular business hours to the Global Supply Management

group at the Debtors' worldwide headquarters by a designated representative of the financial

advisor retained by the Creditors' Committee, subject to certain confidentiality protections.

Furthermore, the Debtors also propose that the Creditors' Committee be allowed to file a

supplemental objection as to the prospective application of an order granting the relief requested

in the Motion on or after March 1, 2006 or at any other time prior to March 1, 2006 should the

aggregate amount of Cure contractually committed to be paid by the Debtors exceed $150

million excluding payments made under Non-Conforming Assumptions to which the Creditors'

Committee has an independent ability to object.  The Debtors believe that these concessions will

provide the Creditors' Committee with meaningful oversight of the Debtors' implementation and

exercise of the authority sought.  Therefore, the Debtors respectfully request that the Court

overrule the Objections of the Creditors' Committee and WTC and grant the relief requested in

the Motion.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) overruling the Objections, except to the extent described herein, (b) granting the Motion, subject to the modifications described herein, and (c) granting the Debtors such other and further relief as is just.

Dated: New York, New York
      November 28, 2005

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

26

**Exhibit A**

*Chart of Objections to the Supplier Agreement Assumption Procedures Motion (the "Motion")*
*Organized by Objector[1]*

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 1. | Statement Directing Notice Regarding Debtors' Motion For An Order Approving Procedures To Assume Certain Sole Supplier Agreements (Docket No. 1127) | 1A) ARC requests that notice of any kind to ARC related to the Debtors' Motion be directed to their counsel. | <u>See</u> Response to the Bosch Objection, above. | |
| 2. | Limited Objection By Robert Bosch Corporation And Affiliates To Supplier Agreement Assumption Procedures Motion (Docket No. 1160) (the "Bosch Objection") | 2A) Bosch objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>2B) Bosch objects to the Motion because the Motion does not state on whom a proposed Assumption Agreement will be served (the "Service Procedure") and requests that any proposed Assumption Agreement be served upon its counsel. | 2A) The Debtors will revise the proposed order to be submitted to the Court at the hearing to remove certain language from paragraph 10 thereof<br><br>2B) The Debtors will direct all communications regarding a proposed Assumption Agreement, if any, upon the supplier's employees that are normally responsible for responding to issues relating to the Debtors' agreements with such supplier, as evidenced by the parties' prior course of business dealings | 2A) Paragraph 10 of the proposed order will be modified to read:<br><br>"The Debtors are hereby authorized, but not directed, to provide an Assumption Agreement substantially in the form of the letter attached hereto as <u>Exhibit 1</u> to each Covered Supplier whose Assumable Agreement(s) are being assumed pursuant to the terms hereof along with a copy of the order granting this Motion; <u>provided</u>, <u>however</u>, that a Covered Supplier will be conclusively deemed to consent to and be |

---

[1]  This chart reflects all objections entered on the docket as of 9:00 a.m. (Eastern Standard Time) on November 28, 2005.

1

2

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| | | | | irrevocably bound by the terms of this Order only in event that the Covered Supplier actually executes and delivers to the Debtors an Assumption Agreement or similar document." |
| 3. | Objection Of SPS Technologies, LLC A/K/A SPS Technologies-Cleveland, NSS Technologies, Inc. SPS Technologies Waterford Company And Greer Stop Nut, Inc. To Debtors Motion For An Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1178) | 3A)  SPS objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>3B) SPS also objects to the Motion's Service Procedure. | See Response to the Bosch Objection, above | See Response to the Bosch Objection, above |
| 4. | Quasar's Objection To Supplier Agreement Assumption Procedures Motion (Docket No. 1195) | 4A) Quasar objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>4B) Quasar objects to the Motion's Service Procedure. | See Response to the Bosch Objection, above | See Response to the Bosch Objection, above |

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 5. | Coaters' Objection To Supplier Agreement Assumption Procedures Motion (Docket No. 1197) | 5A) Coaters objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>5B) Coaters objects to the Service Procedure. | See Response to the Bosch Objection, above | See Response to the Bosch Objection, above |
| 6. | Limited Objection To Supplier Agreement Assumption Procedures Motion By Fourteen Suppliers (Docket No. 1199)<br><br>Objectors: Fujitsu Ten Corp. of America, GKN Sinter Metals, Inc., Saturn Electronics & Engineering, Inc., Saturn Electronics de Monterrey, S.A., de C.V., Kelsey-Hayes Company, TRW Vehicle Safety Systems Inc., TRW Canada Limited, TRW Electronica Ensambles S.A. de C.V., TRW Automotive U.S. LLC, and TRW Automotive Electronics & Components GmbH & Co. KG., Valeo Climate Control Corp., Valeo Electrical Systems, Inc., Wipers Division, Valeo Electrical Systems, Inc., Motors and Actuators Division, and Valeo Switches & Detection Systems, Inc. | 6A) The parties object to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>6B) The parties object to the Service Procedure. | See Response to the Bosch Objection, above | See Response to the Bosch Objection, above |

3

| | **OBJECTION** | **SUMMARY OF OBJECTION** | **RESOLUTION, RESPONSE OR PROPOSAL** | **ORDER MODIFICATION (IF ANY)** |
|---|---|---|---|---|
| 7. | Response And Objection Of Southwire Company To Debtors' Motion For An Order Under U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1200) | 7A) Southwire objects to the Motion because it asserts that it is impossible to determine whether the proposed procedures apply to the Debtors' agreement with Southwire<br><br>7B) Southwire objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier. | 7A) Southwire will be provided with a proposed Assumption Agreement if the Debtors determine that some or all of their agreements with Southwire constitute Assumable Agreements.<br><br>7B) <u>See</u> Response to the Bosch Objection, above | 7B) <u>See</u> Response to the Bosch Objection, above |
| 8. | Joinder Of Neuman Aluminum Automotive, Inc. And Neuman Aluminum Impact Extrusion, Inc. In Limited Objection To Supplier Agreement Assumption Procedures Motion (Docket No. 1205) | 8A) Neuman objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>8B) Neuman objects to the Service Procedure. | <u>See</u> Response to the Bosch Objection, above | <u>See</u> Response to the Bosch Objection, above |

4

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 9. | Objection Of SKF USA, Inc. To Debtors' Motion For An Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1207) | 9A) SKF objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>9B) SKF objects to the Service Procedure<br><br>9C) SKF objects to the Procedures on the basis that the Procedures will not provide suppliers with the opportunity to object to the assumption of individual agreements between the Debtors and other suppliers. | 9A) See Response to the Bosch Objection, above.<br><br>9B) See Response to the Bosch Objection, above.<br><br>9C) It is anticipated that the Creditors' Committee will provide meaningful oversight of the implementation and operation of the Procedures, such that all creditors' interests will be protected. In addition, the Debtors have demonstrated that the assumption of the Assumable Agreements is in the best interests of the Debtors, their creditors and their estates. | 9A) See Response to the Bosch Objection, above.<br><br>9C) Paragraph 2 of the proposed order will be modified to include the following additional language:<br><br>"The Debtors shall permit the Creditors' Committee to monitor the Debtors' conduct and performance with respect to this Order by providing continuing access during regular business hours to the global supply management group at the Company's worldwide headquarters by a designated representative of the financial advisor retained by the Creditors' Committee." |
| 10. | Limited Objection Of Hydro Aluminum Adrian, Inc. And Hydro Aluminum Rockledge, Inc., To Debtor's Supplier Agreement Assumption Procedures Motion (Docket Nos. 1208 and 1211) | 10A) Hydro objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier. | See Response to the Bosch Objection, above. | See Response to the Bosch Objection, above. |

5

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 11. | Limited Objection Of Engelhard Corporation To Debtors' Motion For An Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1210) | 11A) Engelhard objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier. | See Response to the Bosch Objection, above. | See Response to the Bosch Objection, above. |
| 12. | Objection Of Hayes Lemmerz International, Inc. (On Behalf Of Itself And Its Affiliates And Subsidiaries) To Debtors' Motion For Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1214) | 12A) Hayes objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>12B) Hayes objects to the Service Procedure.<br><br>12C) Hayes objects to footnote 5 of the Motion limiting a Covered Supplier's ability to compel assumption of a Previously-Extended Agreement. | 12A) See Response to the Bosch Objection, above<br><br>12B) See Response to the Bosch Objection, above<br><br>12C) As paragraph 5 of the Order makes clear, the limitation on such a Covered Supplier's ability to compel assumption applies only to limit its right to compel assumption under the order and not otherwise. | 12A) See Response to the Bosch Objection, above |
| 13. | Objection Of Niles, USA., Inc. And Wintech, Inc. To Debtor's Supplier Assumption Procedures Motion (Docket No. 1215) | 13A) Niles objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>13B) Niles objects to the Service Procedure. | See Response to the Bosch Objection, above | See Response to the Bosch Objection, above |

6

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 14. | Objection Of Lear Corporation (On Behalf Of Itself And Its Affiliates And Subsidiaries) To Debtors' Motion For Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1217) | 14A) Lear objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>14B) Lear objects to the Service Procedure.<br><br>14C) Lear objects to footnote 5 of the Motion limiting a Covered Supplier's ability to compel assumption of a Previously-Extended Agreement. | 14A) See Response to the Bosch Objection, above<br><br>14B) See Response to the Bosch Objection, above<br><br>14C) As paragraph 5 of the Order makes clear, the limitation on such a Covered Supplier's ability to compel assumption applies only to limit its right to compel assumption under the order and not otherwise. | 14A) See Response to the Bosch Objection, above |
| 15. | Objection Of American Axle & Machinery, Inc. (On Behalf Of Itself And Its Affiliates And Subsidiaries) To Debtor's Motion For Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1219) | 15A) American Axle objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>15B) American Axle objects to the Service Procedure.<br><br>15C) American Axle objects to footnote 5 of the Motion limiting a Covered Supplier's ability to compel assumption of a Previously-Extended Agreement. | 15A) See Response to the Bosch Objection, above<br><br>15B) See Response to the Bosch Objection, above<br><br>15C) As paragraph 5 of the Order makes clear, the limitation on such a Covered Supplier's ability to compel assumption applies only to limit its right to compel assumption under the order and not otherwise. | 15A) See Response to the Bosch Objection, above |

7

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 16. | Objection Of Freudenberg-NOK, General Partnership And Its Subsidiaries, Freudenberg-NOK, Inc., Flexitech, Inc. And Vibracoustic De Mexico, S.A. De C.V. To Debtors' Motion For Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1220) | 16A) Freudenberg objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>16B) Freudenberg objects to the Service Procedure.<br><br>16C) Freudenberg objects to footnote 5 of the Motion limiting a Covered Supplier's ability to compel assumption of a Previously-Extended Agreement. | 16A) See Response to the Bosch Objection, above<br><br>16B) See Response to the Bosch Objection, above<br><br>16C) As paragraph 5 of the Order makes clear, the limitation on such a Covered Supplier's ability to compel assumption applies only to limit its right to compel assumption under the order and not otherwise. | 16A) See Response to the Bosch Objection, above |
| 17. | Objection Of Pentastar Aviation, LLC (On Behalf Of Itself And Its Affiliates And Subsidiaries) To Debtors' Motion For Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1221) | 17A) Pentastar objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>17B) Pentastar objects to the Service Procedure.<br><br>17C) Pentastar objects to footnote 5 of the Motion limiting a Covered Supplier's ability to compel assumption of a Previously-Extended Agreement. | 17A) See Response to the Bosch Objection, above<br><br>17B) See Response to the Bosch Objection, above<br><br>17C) As paragraph 5 of the Order makes clear, the limitation on such a Covered Supplier's ability to compel assumption applies only to limit its right to compel assumption under the order and not otherwise. | 17A) See Response to the Bosch Objection, above |

8

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 18. | Limited Objection Of Rotor Clip Company Inc. To Debtors' Motion For An Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1223) | 18A) Rotor Clip objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>18B) Rotor Clip objects to the Service Procedure. | See Response to the Bosch Objection, above | See Response to the Bosch Objection, above |
| 19. | Objection Of Wilmington Trust Company, As Indenture Trustee, To Debtors' Motion For Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket Nos. 1114 and 1224) | 19A) Wilmington asserts that the relief requested in the Motion is inconsistent with the procedures and standards established by applicable law for the assumption of executory contracts and the approval of settlements.<br><br>19B) Wilmington objects to the potential costs associated with the relief requested in the Motion.<br><br>19C) Wilmington further asserts that the Procedures improperly limit judicial and creditor oversight.<br><br>19D) Wilmington asserts that the Debtors have not provided sufficient factual support for the Motion to be a reasonable exercise of their business | 19A) The Debtors assert that the relief requested in the Motion and the Debtors' evidentiary showings with respect thereto meet the requirements under section 365 of the Bankruptcy Code and Fed. R. Bankr. P. 9019.<br><br>19B) The Debtors assert that the potential costs associated with the relief requested may be offset by the benefits of the Required Minimum Provisions and are, in any regard, justified by the significant risks to their businesses and restructuring prospects from not implementing the Procedures.<br><br>19C) The Debtors have modified the proposed order | 19B&C) Paragraph 14 of the proposed order will be modified to provide that the Creditors' Committee and the Prepetition Agent may file a supplemental objection as to the prospective application of the order on or after March 1, 2006 or at any other time prior to March 1, 2006 should the aggregate amount of Cure contractually committed to be paid by the Debtors pursuant to paragraph 8f of the order exceed $150,000,000 exclusive of Cure amounts associated with Non-Conforming Assumptions.<br><br>19C) See Response to the SKF Objection, above. |

9

| OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|
| | judgment.<br><br>19E) Wilmington objects to the Motion to the extent it constitutes the Debtors' request for an advisory declaration concerning the ordinary course character of their contract negotiations.<br><br>19F) Wilmington requests clarification that any payments made pursuant to the relief requested in the Motion not be treated as "reorganization costs" in calculating payments under a key employee compensation plan ("KECP") approved in these chapter 11 cases. | to provide even greater oversight to creditors and the Court. However, the Debtors assert that the Procedures as presented are appropriate and no further oversight or intervention is necessary.<br><br>19D) The Debtors have provided extensive discovery to the Creditors' Committee and Wilmington Trust Company and have also filed additional declarations of Randall S. Eisenberg, R. David Nelson and John D. Sheehan. The Debtors assert that such documentation provides ample justification for the relief sought.<br><br>19E) This relief is necessitated by the oft-stated concern of the Debtors' suppliers regarding the scope of the Debtors' authority. The Debtors assert that entry into these agreements is clearly within the ordinary course of the Debtors' businesses. Thus, this provision constitutes | 19F) The following language will be added to the proposed order:<br><br>"To the extent that this Court subsequently authorizes the Debtors to implement a Key Executive Compensation Program ("KECP") which includes any component that would exclude restructuring expenses from the calculation of incentive payments under such program, the Debtors have stipulated and this Court shall require that the Debtors not classify any expenses under generally accepted accounting principles incurred by the Debtors as a result of the assumption of Assumable Contracts under this Order as restructuring expenses under a KECP." |

10

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| | | | little more than a comfort order such as has previously been entered by this Court with respect to certain provisions of sections 362, 503, and 525 of the Bankruptcy Code.<br><br>19F) The Debtors will stipulate that any such expenses will not be treated as restructuring expenses under a KECP. | |
| 20. | Objection Of The Official Committee Of Unsecured Creditors To Debtors' Motion For An Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1228) | 20A) The Creditors' Committee objects to the potential costs associated with the relief requested in the Motion.<br><br>20B) The Creditors' Committee asserts that the Procedures improperly limit judicial and creditor oversight.<br><br>20C) The Creditors' Committee asserts that the relief requested in the Motion is contrary to bankruptcy law.<br><br>20D) The Creditors' Committee asserts that the Debtors have not provided sufficient factual support for | 20A) The Debtors assert that the potential costs associated with the relief requested may be offset by the benefits of the Required Minimum Provisions and are, in any regard, justified by the significant risks to their businesses and restructuring prospects from not implementing the Procedures.<br><br>20B) The Debtors have modified the proposed order to provide even greater oversight to creditors and the Court. However, the Debtors assert that the Procedures as presented are appropriate and no further | 20A&B) Paragraph 14 of the proposed order will be modified to provide that the Creditors' Committee and the Prepetition Agent may file a supplemental objection as to the prospective application of the order on or after March 1, 2006 or at any other time prior to March 1, 2006 should the aggregate amount of Cure contractually committed to be paid by the Debtors pursuant to paragraph 8f of the order exceed $150,000,000 exclusive of Cure amounts associated with Non-Conforming Assumptions. |

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| | | the Motion to be a reasonable exercise of their business judgment. | oversight or intervention is necessary.<br><br>20C) The Debtors assert that the relief requested in the Motion and the Debtors' evidentiary showings with respect thereto meet the requirements under section 365 of the Bankruptcy Code and Fed. R. Bankr. P. 9019.<br><br>20D) The Debtors have provided extensive discovery to the Creditors' Committee and Wilmington Trust Company and have also filed additional declarations of Randall S. Eisenberg, R. David Nelson and John D. Sheehan. The Debtors assert that such documentation provides ample justification for the relief sought. | 20B) See Response to the SKF Objection, above. |
| 21. | Objection Of DENSO International America, Inc. And Affiliates To Supplier Agreement Assumption Procedures Motion (Docket No. 1229) | 21A) Denso objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier. | See Response to the Bosch Objection, above | See Response to the Bosch Objection, above |

12

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 22. | Le Belier/LBQ Foundry S.A. De C.V.'s Objection To Motion For An Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1234). | 22A) Le Belier objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>22B) Le Belier incorporates by reference the arguments and citations set forth in the objections filed by Quasar Industries, Inc. and SKF USA, Inc. | <u>See</u> Response to the Bosch, Quasar and SKF Objections, above. | <u>See</u> Response to the Bosch, Quasar and SKF Objections, above. |
| 23. | Joinder Of S&Z Tool & Die, Inc. And Robin Industries, Inc. In Limited Objection To Supplier Agreement Assumption Procedures Motion (Docket No. 1236) | 23A) The parties objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>23B) The parties object to the Service Procedure. | <u>See</u> Response to the Bosch Objection, above | <u>See</u> Response to the Bosch Objection, above |

13

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 24. | Limited Objection To Supplier Agreement Assumption Motion (Docket No. 1237) | 24A) Fujikura America, Inc. objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>24B) Fujikora incorporates by reference the arguments and citations set forth in the objections filed by Quasar Industries, Inc. and SKF USA, Inc. | See Response to the Bosch, Quasar and SKF Objections, above. | See Response to the Bosch, Quasar and SKF Objections, above. |
| 25. | Limited Objection To Supplier Agreement Assumption Motion (Docket No. 1238) | 25A) Murata objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>25B) Murata incorporates by reference the arguments and citations set forth in the objections filed by Quasar Industries, Inc. and SKF USA, Inc. | See Response to the Bosch, Quasar and SKF Objections, above. | See Response to the Bosch, Quasar and SKF Objections, above. |

14

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 26. | Objection Of Dott Industries, Inc., Alps Automotive, Inc., Pioneer Automotive Technologies, Inc., Lakeside Plastics Limited, BASF Corporation, And Sumitomo Corporation Of America, Et Al. To Debtors' Motion For An Order Under 11 U.S.C. § 363(b) And § 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1240) | 26A) Dott objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier. | See Response to the Bosch Objection, above. | See Response to the Bosch Objection, above. |
| 27. | Objection, Statement, Joinder Of Baker Hughes Incorporated And Baker Petrolite Corporation To Debtor's Motion For Order Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1242) | 27A) Baker joins in the objections of Robert Bosch Corporation, Quasar Industries, Inc., SPS Technologies,LLC, Hydro Aluminum Adrian, Inc., SKF USA, Inc, Southwire Company, and Hayes Lemmerz International, Inc. | See Response to such Objections, above. | See Response to such Objections, above |
| 28. | Objection Of Miniature Precision Components, Inc. To The Debtors' Motion For An Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1243) | 28A) Miniature objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>28B) Miniature objects to the Service Procedure. | See Response to the Bosch Objection, above | See Response to the Bosch Objection, above |

15

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 29. | Limited Objection To Debtors' Supplier Agreement Assumption Procedures Motion And Joinder In Separate Objections To Motion (Docket No. 1245) | 29A) NEC Electronics America ("NEC") objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>29B) NEC objects to the Service Procedure. | See Response to the Bosch Objection, above. | See Response to the Bosch Objection, above. |
| 30. | Objection Of Serigraph, Inc. To The Debtors' Motion For An Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1246) | 30A) Serigraph objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier. | See Response to the Bosch Objection, above. | See Response to the Bosch Objection, above. |
| 31. | Limited Objection To Debtors' Supplier Agreement Assumption Procedures Motion And Joinder In Separate Objections To Motion (Docket No. 1247) | 31A) JAE Electronics, Inc. ("JAE") objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>31B) JAE objects to the Service Procedure. | See Response to the Bosch Objection, above. | See Response to the Bosch Objection, above. |

16

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 32. | Response And Request For Clarification Of Wamco, Inc. To Motion For An Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1248) | 32A) Wamco asks for clarification regarding the extent the Motion seeks to bind nondebtor contracting parties to assumption agreements without the written agreement of Wamco. | 32A) The Debtors will revise the proposed order to be submitted to the Court at the hearing to remove certain language from paragraph 10 thereof | See Response to the Bosch Objection, above. |
| 33. | Objection Of Texas Instruments Incorporated To Debtors' Motion For An Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1249) | 33A) Texas Instruments ("TI") objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.  33B) TI objects to the Service Procedure.  33C) TI requests clarification regarding whether it qualifies as a Covered Supplier.  33D) TI objects to any limitation on the scope of the waiver of avoidance actions with respect to Assumable Agreements that are actually assumed. | 33A) See Response to the Bosch Objection, above  33B) See Response to the Bosch Objection, above  33C) TI will be provided with a proposed Assumption Agreement if the Debtors determine that some or all of their agreements with TI constitute Assumable Agreements.  33D) Nothing contained in the Motion limits the scope of the waiver of avoidance actions with respect to assumed agreements. | 33A) See Response to the Bosch Objection, above  33D) Paragraph 12 of the proposed order will be modified to include the following additional language:  "Upon the occurrence of the Assumption Date as to a particular Assumable Contract, the rights of the Debtors and their respective estates shall be waived under chapter 5 of the Bankruptcy Code to avoid payments made to a Covered Supplier with respect to the Assumable Contracts actually assumed on the Assumption Date." |

17

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 34. | Objection Of Wren Industries, Inc. And Koyo Corporation To Motion Of Debtors For Order Under 11 U.S.C. §§ 363(b) And 365(a) And Fed. R. Bankr. P. 9019 Approving Procedures To Assume Certain Sole Supplier Agreements (Docket No. 1253) | 34A) Wren objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>34B) Wren objects to the Service Procedure. | See Response to the Bosch Objection, above | See Response to the Bosch Objection, above |
| 35. | Limited Objection And Reservation Of Rights Of Textron Fastening Systems, Inc., Its Subsidiaries And Affiliates, And Detroit Heading LLC With Respect To Debtors' Motion For An Order Approving Procedures To Assume Certain Amended And Restated Sole Source Supplier Agreements (Docket No. 1254) | 35A) Textron and Detroit request clarification regarding whether they qualify as Covered Suppliers.<br><br>35B) Textron and Detroit object to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier. | 35A) Textron and Detroit will be provided with a proposed Assumption Agreement if the Debtors determine that some or all of their agreements with Textron and Detroit constitute Assumable Agreements.<br><br>35B) See Response to the Bosch Objection, above | 35B) See Response to the Bosch Objection, above |
| 36. | Objection And Joinder Of Datwyler Entities To Debtors' Supplier Agreement Assumption Procedures Motion (Docket No. 1255) | 36A) The parties join in the objection of Quasar Industries, Inc. and the other previously-filed objections and object to the extent that the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier. | See Response to the Bosch Objection, above. | See Response to the Bosch Objection, above. |

18

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 37. | Limited Objection Of INA USA Inc. To Motion For Order Approving Assumption Procedures (Docket No. 1256) | 37A) INA requests clarification regarding whether they qualify as Covered Suppliers.<br><br>37B) INA objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier. | 37A) INA will be provided with a proposed Assumption Agreement if the Debtors determine that some or all of their agreements with INA constitute Assumable Agreements.<br><br>37B) See Response to the Bosch Objection, above | 37B) See Response to the Bosch Objection, above |
| 38. | Limited Objection Of Molex, Inc. To Motion For Order Approving Assumption Procedures (Docket No. 1257) | 38A) Molex requests clarification regarding whether it qualify as a Covered Supplier.<br><br>38B) Molex objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier. | 38A) Molex will be provided with a proposed Assumption Agreement if the Debtors determine that some or all of their agreements with Molex constitute Assumable Agreements.<br><br>38B) See Response to the Bosch Objection, above | 38B) See Response to the Bosch Objection, above |
| 39. | Objection Of Hexcel Corporation To Supplier Agreement Assumption Procedures Motion (Docket No. 1258) | 39A) Hexcel objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier. | See Response to the Bosch Objection, above. | See Response to the Bosch Objection, above. |

19

| OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|
| 40. Objection By Alcan Rolled Products-Ravenswood, LLC To Supplier Agreement Assumption Procedures Motion (Docket No. 1264) | 40A) Alcan requests clarification regarding whether it qualify as a Covered Supplier.<br><br>40B) Alcan objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>40C) Alcan objects to the Service Procedure.<br><br>40D) Alcan objects to footnote 5 of the Motion limiting a Covered Supplier's ability to compel assumption of a Previously-Extended Agreement.<br><br>40E) Alcan objects to any limitation on the scope of the waiver of avoidance actions with respect to Assumable Agreements that are actually assumed. | 40A) Alcan will be provided with a proposed Assumption Agreement if the Debtors determine that some or all of their agreements with Alcan constitute Assumable Agreements.<br><br>40B) See Response to the Bosch Objection, above<br><br>40C) See Response to the Bosch Objection, above<br><br>40D) As paragraph 5 of the Order makes clear, the limitation on such a Covered Supplier's ability to compel assumption applies only to limit its right to compel assumption under the order and not otherwise.<br><br>40E) Nothing contained in the Motion limits the scope of the waiver of avoidance actions with respect to assumed agreements. | 40B) See Response to the Bosch Objection, above<br><br>40E) See Response to the Texas Instruments Objection, above |

20

| OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|
| 41. Objection By SPX Corporation (Contech Division) To Supplier Agreement Assumption Procedures Motion (Docket No. 1265) | 41A) SPX requests clarification regarding whether it qualifies as a Covered Supplier. | 41A) SPX will be provided with a proposed Assumption Agreement if the Debtors determine that some or all of their agreements with SPX constitute Assumable Agreements. | 41B) See Response to the Bosch Objection, above 41E) See Response to the Texas Instruments Objection, above |
| | 41B) SPX objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier. | 41B) See Response to the Bosch Objection, above | |
| | 41C) SPX objects to the Service Procedure. | 41C) See Response to the Bosch Objection, above | |
| | 41D) SPX objects to footnote 5 of the Motion limiting a Covered Supplier's ability to compel assumption of a Previously-Extended Agreement. | 41D) As paragraph 5 of the Order makes clear, the limitation on such a Covered Supplier's ability to compel assumption applies only to limit its right to compel assumption under the order and not otherwise. | |
| | 41E) SPX objects to any limitation on the scope of the waiver of avoidance actions with respect to Assumable Agreements that are actually assumed. | 41E) Nothing contained in the Motion limits the scope of the waiver of avoidance actions with respect to assumed agreements. | |

21

| OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|
| 42. Objection By Tenneco Inc. To Supplier Agreement Assumption Procedures Motion (Docket No. 1266) | 42A) Tenneco requests clarification regarding whether it qualifies as a Covered Supplier.<br><br>42B) Tenneco objects to the Motion to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier.<br><br>42C) Tenneco objects to the Service Procedure.<br><br>42D) Tenneco objects to footnote 5 of the Motion limiting a Covered Supplier's ability to compel assumption of a Previously-Extended Agreement.<br><br>42E) Tenneco objects to any limitation on the scope of the waiver of avoidance actions with respect to Assumable Agreements that are actually assumed. | 42A) Tenneco will be provided with a proposed Assumption Agreement if the Debtors determine that some or all of their agreements with Tenneco constitute Assumable Agreements.<br><br>42B) See Response to the Bosch Objection, above<br><br>42C) See Response to the Bosch Objection, above<br><br>42D) As paragraph 5 of the Order makes clear, the limitation on such a Covered Supplier's ability to compel assumption applies only to limit its right to compel assumption under the order and not otherwise.<br><br>42E) Nothing contained in the Motion limits the scope of the waiver of avoidance actions with respect to assumed agreements. | 42B) See Response to the Bosch Objection, above<br><br>42E) See Response to the Texas Instruments Objection, above |
| 43. Joinder Of Cascade Die Casting Group, Inc. To Objection Of Quasar Industries, Inc. To Debtors.Supplier Agreement Assumption Procedures Motion (Docket No. 1270) | 43A) Cascade joins in the objection to the Motion filed by Quasar Industries, Inc. | See Response to the Quasar Objection, above. | See Response to the Quasar Objection, above. |

22

| | OBJECTION | SUMMARY OF OBJECTION | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 44. | Joinder Of Hitachi Automotive Products (USA), Inc. To SPS Technologies And Quasar Objections To Debtors' Assumption Procedures Motion (Docket No. 1272) | 44A) Hitachi joins in the objections to the Motion filed by SPS Technologies and Quasar Industries, Inc. | See Response to the SPS and Quasar Objections, above. | See Response to the SPS and Quasar Objections, above. |
| 45. | Statement Of Position and Reservation of Rights Of Semiconductor Components Industries, LLC Regarding Supplier Agreement Assumption Procedures Motion (Docket No. 1273). | 45A) Semiconductor requests clarification regarding whether it qualifies as a Covered Supplier and how its rights under the Motion will be affected. | See Response to the Bosch Objection, above. | See Response to the Bosch Objection, above. |
| 46. | Joinder of Autocam Corporation to Objection of Quasar Industries, Inc. to Debtors' Supplier Agreement Assumption Procedures Motion (Docket No. 1274) | 46A) Autocam joins in the objection of Quasar Industries, Inc. and objects to the Motion to the extent that the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier. | See Response to the Bosch Objection, above. | See Response to the Bosch Objection, above. |

23

**Exhibit B**

*Chart of Objections to the Supplier Agreement Assumption Procedures Motion (the "Motion")*
*Organized by Objection[1]*

| | OBJECTION ASSERTED | OBJECTION DOCKET NUMBER | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 1. | Objection to the extent the Motion seeks to bind nondebtor contracting parties to Assumption Agreements without the written agreement of the supplier. | 1160, 1178, 1195, 1197, 1199, 1200, 1205, 1207, 1208, 1210, 1211, 1214, 1215, 1217, 1219, 1220, 1221, 1223, 1229, 1234, 1236, 1237, 1238, 1240, 1242, 1243, 1245, 1246, 1247, 1249, 1253, 1254, 1255, 1256, 1257, 1258, 1264, 1265, 1266, 1270, 1272, 1274 | The Debtors will revise the proposed order to be submitted to the Court at the hearing to remove certain language from paragraph 10 thereof. | Paragraph 10 of the proposed order will be modified to read: "The Debtors are hereby authorized, but not directed, to provide an Assumption Agreement substantially in the form of the letter attached hereto as Exhibit 1 to each Covered Supplier whose Assumable Agreement(s) are being assumed pursuant to the terms hereof along with a copy of the order granting this Motion; provided, however, that a Covered Supplier will be conclusively deemed to consent to and be irrevocably bound by the terms of this Order only in event that the Covered Supplier actually executes and delivers to the Debtors an Assumption Agreement or similar document." |

---

[1]  This chart reflects all objections entered on the docket as of 9:00 a.m. (Eastern Standard Time) on November 28, 2005.

1

| | OBJECTION ASSERTED | OBJECTION DOCKET NUMBER | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 2. | Objection because the Motion does not state on whom a proposed Assumption Agreement will be served. | 1127, 1160, 1178, 1195, 1197, 1199, 1205, 1207, 1214, 1215, 1217, 1219, 1220, 1221, 1223, 1234, 1236, 1237, 1238, 1242, 1243, 1245, 1247, 1249, 1253, 1255, 1264, 1265, 1266, 1270, 1272, 1274 | The Debtors will direct all communications regarding a proposed Assumption Agreement, if any, upon the supplier's employees that are normally responsible for responding to issues relating to the Debtors' agreements with such supplier, as evidenced by the parties' prior course of business dealings. | |
| 3. | Objection to the Motion based on the assertion that it is impossible to determine whether the proposed procedures apply to the Debtors' agreement with a particular objector/supplier. | 1200, 1242 | Objector will be provided with a proposed Assumption Agreement if the Debtors determine that some or all of their agreements with the objector constitute Assumable Agreements. | |

2

| | OBJECTION ASSERTED | OBJECTION DOCKET NUMBER | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 4. | Objection on the basis that the Procedures will not provide suppliers with the opportunity to object to the assumption of individual agreements between the Debtors and other suppliers. | 1207, 1234, 1237, 1238, 1242 | It is anticipated that the Creditors' Committee will provide meaningful oversight of the implementation and operation of the Procedures, such that all creditors' interests will be protected.  In addition, the Debtors have demonstrated that the assumption of the Assumable Agreements is in the best interests of the Debtors, their creditors and their estates. | Paragraph 2 of the proposed order will be modified to include the following additional language:<br><br>"The Debtors shall permit the Creditors' Committee to monitor the Debtors' conduct and performance with respect to this Order by providing continuing access during regular business hours to the global supply management group at the Company's worldwide headquarters by a designated representative of the financial advisor retained by the Creditors' Committee." |
| 5. | Objection asserting that the relief requested in the Motion is inconsistent with the procedures and standards established by applicable law for the assumption of executory contracts and the approval of settlements. | 1224, 1228 | The Debtors assert that the relief requested in the Motion and the Debtors' evidentiary showings with respect thereto meet the requirements under section 365 of the Bankruptcy Code and Fed. R. Bankr. P. 9019. | |

3

| | OBJECTION ASSERTED | OBJECTION DOCKET NUMBER | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 6. | Objection to the potential costs associated with the relief requested in the Motion. | 1224, 1228 | The Debtors assert that the potential costs associated with the relief requested may be offset by the benefits of the Required Minimum Provisions and are, in any regard, justified by the significant risks to their businesses and restructuring prospects from not implementing the Procedures. | Paragraph 14 of the proposed order will be modified to provide that the Creditors' Committee and the Prepetition Agent may file a supplemental objection as to the prospective application of the order on or after March 1, 2006 or at any other time prior to March 1, 2006 should the aggregate amount of Cure contractually committed to be paid by the Debtors pursuant to paragraph 8f of the order exceed $150,000,000 exclusive of Cure amounts associated with Non-Conforming Assumptions. |
| 7. | Objection asserting that the Procedures improperly limit judicial and creditor oversight. | 1224, 1228 | The Debtors have modified the proposed order to provide even greater oversight to creditors and the Court. However, the Debtors assert that the Procedures as presented are appropriate and no further oversight or intervention is necessary. | See Order modifications provided with respect to objection nos. 4 and 6 above. |

4

| | OBJECTION ASSERTED | OBJECTION DOCKET NUMBER | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 8. | Objection asserting that the Debtors have not provided sufficient factual support for the Motion to be a reasonable exercise of their business judgment. | 1224, 1228 | The Debtors have provided extensive discovery to the Creditors' Committee and Wilmington Trust Company and have also filed additional declarations of Randall S. Eisenberg, R. David Nelson and John D. Sheehan. The Debtors assert that such documentation provides ample justification for the relief sought. | |
| 9. | Objection to the Motion to the extent it constitutes the Debtors' request for an advisory declaration concerning the ordinary course character of their contract negotiations. | 1224 | This relief is necessitated by the oft-stated concern of the Debtors' suppliers regarding the scope of the Debtors' authority. The Debtors assert that entry into these agreements is clearly within the ordinary course of the Debtors' businesses. Thus, this provision constitutes little more than a comfort order such as has previously been entered by this Court with respect to certain provisions of sections 362, 503, and 525 of the Bankruptcy Code. | |

| | OBJECTION ASSERTED | OBJECTION DOCKET NUMBER | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 10. | Clarification that any payments made pursuant to the relief requested in the Motion not be treated as "reorganization costs" in calculating payments under a key employee compensation plan ("KECP") approved in these chapter 11 cases. | 1224 | The Debtors will stipulate that any such expenses will not be treated as restructuring expenses under a KECP. | The following language will be added to the proposed order:<br><br>"To the extent that this Court subsequently authorizes the Debtors to implement a Key Executive Compensation Program ("KECP") which includes any component that would exclude restructuring expenses from the calculation of incentive payments under such program, the Debtors have stipulated and this Court shall require that the Debtors not classify any expenses under generally accepted accounting principles incurred by the Debtors as a result of the assumption of Assumable Contracts under this Order as restructuring expenses under a KECP." |
| 11. | Objection to footnote 5 of the Motion limiting a Covered Supplier's ability to compel assumption of a Previously-Extended Agreement. | 1214, 1217, 1219, 1220, 1221, 1264, 1265, 1266 | As paragraph 5 of the Order makes clear, the limitation on such a Covered Supplier's ability to compel assumption applies only to limit its right to compel assumption under the Order and not otherwise. | |

6

| | OBJECTION ASSERTED | OBJECTION DOCKET NUMBER | RESOLUTION, RESPONSE OR PROPOSAL | ORDER MODIFICATION (IF ANY) |
|---|---|---|---|---|
| 12. | Clarification regarding the extent the Motion seeks to bind nondebtor contracting parties to assumption agreements without the written agreement of objector. | 1248 | The Debtors will revise the proposed order to be submitted to the Court at the hearing to remove certain language from paragraph 10 thereof. | See Order modifications provided with respect to objection no. 1 above. |
| 13. | Clarification regarding whether particular objectors qualify as Covered Suppliers. | 1249, 1254, 1256, 1257, 1264, 1265, 1266, 1273 | Objector will be provided with a proposed Assumption Agreement if the Debtors determine that some or all of their agreements with objectors constitute Assumable Agreements. | |
| 14. | Objection to any limitation on the scope of the waiver of avoidance actions with respect to Assumable Agreements that are actually assumed. | 1249, 1264, 1265, 1266 | Nothing contained in the Motion limits the scope of the waiver of avoidance action with respect to assumed agreements. | Paragraph 12 of the proposed order will be modified to include the following additional language:<br><br>"Upon the occurrence of the Assumption Date as to a particular Assumable Contract, the rights of the Debtors and their respective estates shall be waived under chapter 5 of the Bankruptcy Code to avoid payments made to a Covered Supplier with respect to the Assumable Contracts actually assumed on the Assumption Date." |

7

| DOCKET # | OBJECTING PARTY |
|---|---|
| 1127 | ARC Automotive, Inc. |
| 1160 | Robert Bosch Corporation and Affiliates |
| 1178 | SPS Technologies, LLC A/K/A SPS Technologies-Cleveland, NSS Technologies, Inc. SPS Technologies Waterford Company and Greer Stop Nut, Inc. |
| 1195 | Quasar Industries, Inc. |
| 1197 | March Coatings, Inc., Serma Coat Limited Liability Co., and Rotor Coaters International, Inc. |
| 1199 | Fujitsu Ten Corp. of America, GKN Sinter Metals, Inc., Saturn Electronics & Engineering, Inc., Saturn Electronics de Monterrey, S.A., de C.V., Kelsey-Hayes Company, TRW Vehicle Safety Systems Inc., TRW Canada Limited, TRW Electronica Ensambles S.A. de C.V., TRW Automotive U.S. LLC, and TRW Automotive Electronics & Components GmbH & Co. KG., Valeo Climate Control Corp, Valeo Electrical Systems, Inc., Wipers Division, Valeo Electrical Systems, Inc., Motors and Actuators Division, and Valeo Switches & Detection Systems, Inc. |
| 1200 | Southwire Company |
| 1205 | Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| 1207 | SKF USA, Inc. |
| 1208, 1211 | Hydro Aluminum Adrian, Inc. and Hydro Aluminum Rockledge, Inc. |
| 1210 | Engelhard Corporation |
| 1214 | Hayes Lemmerz International, Inc. |
| 1215 | Niles, USA., Inc. and Wintech, Inc. |
| 1217 | Lear Corporation |
| 1219 | American Axle & Machinery, Inc. |
| 1220 | Freudenberg-NOK, General Partnership and its Subsidiaries, Freudenberg-NOK, Inc., Flexitech, Inc. and Vibracoustic De Mexico, S.A. De C.V. |
| 1221 | Pentastar Aviation, LLC |
| 1223 | Rotor Clip Company Inc. |
| 1224 | Wilmington Trust Company, as Indenture Trustee |
| 1228 | The Official Committee of Unsecured Creditors |
| 1229 | DENSO International America, Inc. and Affiliates |
| 1234 | Le Belier/LBQ Foundry S.A. De C.V. |
| 1236 | S&Z Tool & Die, Inc. and Robin Industries, Inc. |
| 1237 | Fujikura America, Inc. |
| 1238 | Murata Electronics North America, Inc. |
| 1240 | Dott Industries, Inc., Alps Automotive, Inc.., Pioneer Automotive Technologies, Inc., Lakeside Plastics Limited, BASF Corporation, and Sumitomo Corporation Of America, et al. |

| DOCKET # | OBJECTING PARTY |
|---|---|
| 1242 | Baker Hughes Incorporated and Baker Petrolite Corporation |
| 1243 | Miniature Precision Components, Inc. |
| 1245 | NEC Electronics America, Inc. |
| 1246 | Serigraph, Inc. |
| 1247 | JAE Electronics, Inc. |
| 1248 | Wamco, Inc. |
| 1249 | Texas Instruments Incorporated |
| 1253 | Wren Industries, Inc. and Koyo Corporation |
| 1254 | Textron Fastening Systems, Inc., its Subsidiaries and Affiliates, and Detroit Heading LLC |
| 1255 | Datwyler Entities |
| 1256 | INA USA Inc. |
| 1257 | Molex, Inc. |
| 1258 | Hexcel Corporation |
| 1264 | Alcan Rolled Products-Ravenswood, LLC |
| 1265 | SPX Corporation (Contech Division) |
| 1266 | Tenneco Inc. |
| 1270 | Cascade Die Casting Group, Inc. |
| 1272 | Hitachi Automotive Products (USA), Inc. |
| 1273 | Semiconductor Components Industries, L.L.C. |
| 1274 | Autocam Corporation |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                            :
           In re                     :     Chapter 11
                            :
    DELPHI CORPORATION et al.,        :     Case No. 05-44481 (RDD)
                            :
                  Debtors.    :     (Jointly Administered)
                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 363(b) AND 365(a)
AND FED. R. BANKR. P. 9019 APPROVING
PROCEDURES TO ASSUME CERTAIN AMENDED AND RESTATED
SOLE SOURCE SUPPLIER AGREEMENTS

("SUPPLIER AGREEMENT ASSUMPTION PROCEDURES ORDER")

        Upon the motion, dated November 18, 2005 (the "Motion"), of Delphi

Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an

order (the "Order") under 11 U.S.C. §§ 363(b) and 365(a) and Fed. R. Bankr. P. 9019

approving procedures to assume, in connection with an extension and certain other contract

provisions, certain agreements (the "Assumable Agreements"), pursuant to which the

Debtors receive goods which the Debtors believe are critical to their on-going

manufacturing operations (collectively, the "Goods"), with those of the Debtors' suppliers

that are the sole source from which the Debtors can currently obtain sufficient quantities of

the Goods to avoid interruptions of the Debtors' manufacturing operations (the "Covered

Suppliers"); and upon the record of the hearing held on the Motion; and after due

deliberation thereon,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.    The Debtors have demonstrated to the Court's satisfaction (and statements in support of the Motion filed with the Court or made at the hearing by various interested parties including the agent for the postpetition debtor-in-possession financing facility, the administrative agent under the Debtors' prepetition credit facility (the "Prepetition Agent"), and the Debtors' two largest union representing hourly workers also evidence) that continuation of the Debtors' supply chain without material interruption is of paramount importance to the prospective reorganization enterprise value of the Debtors and to the Debtors' prospects for eventual confirmation of a plan of reorganization in these Cases.  The Debtors have exercised reasonable business judgment in deciding to implement procedures by which the Debtors may assume the Assumable Agreements without need for further Court approval, but subject to the terms of this Order including the Required Minimum Provisions (as defined below)— and the Court finds that the business judgment requirements articulated in Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095 (2d Cir. 1993) have been satisfied by the Debtors.

B.    TheSubject to the execution of an Assumption Agreement or similar acknowledgment by a Covered Supplier in accordance with this Order, the Debtors' provision of Cure (as defined below) meets the requirements of section 365(b) of the Bankruptcy Code and the Covered Suppliers are not entitled to any other or further relief under such section.  Inasmuch as this Order requires a Covered Supplier to affirmatively execute and deliver to the Debtors an Assumption Agreement or similar acknowledgment in order for the Covered Supplier to both receive the benefits of and be subject to the terms of this Order, any cognizable interests of Covered Suppliers are fully protected and,

accordingly, all objections of suppliers filed in opposition to the Motion are overruled to
the extent not deemed otherwise settled or withdrawn.

C.      Each Covered Supplier is adequately assured of the Debtors' future
performance under the Agreements on account of, inter alia, this Court's approval on a final
basis of the Debtors' debtor-in-possession financing facility pursuant to that certain Final
Order Under 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and
364(e) and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors to Obtain
Postpetition Financing, (II) to Utilize Cash Collateral and (III) Granting Adequate
Protection to Prepetition Secured Parties (Docket No. 797) and the Debtors need not
provide any further assurance of future performance under section 365 of the Bankruptcy
Code, any other provision of the Bankruptcy Code or any applicable non-bankruptcy law.

D.      The relief requested in the Motion is in the best interests of the
Debtors, their estates, their creditors, and other parties-in-interest. taken as a whole and,
accordingly, all other objections filed in opposition to the Motion are overruled to the
extent not deemed otherwise settled or withdrawn.

E.      Proper and adequate notice of the Motion has been given and no
other or further notice is necessary.

F.      Good and sufficient cause has been shown for the entry of this
Order.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED subject to the provisions of this Order.

2.      The Debtors are hereby authorized, but not directed, to assume each
Assumable Agreement pursuant to section 365(a) within a reasonable time prior to the date

of expiration of such Assumable Agreement or as set forth in paragraph 4 below (the

"Assumption Date"), without further order of this Court; provided, however, that the

Debtors shall not assume (a) any agreements, or pay any prepetition claims related thereto,

under which a supplier sold all or some of its prepetition claims arising under such

otherwise Assumable Agreement to one or more third parties or (b) any agreements that are

not related to the continuation of the supply chain at the Debtors' automotive

manufacturing facilities (except with respect to agreements related to the Debtors'

obligations to provide manufactured goods on account of direct and indirect government

contracts). The Debtors shall permit the Creditors' Committee to monitor the Debtors'

conduct and performance with respect to this Order by providing continuing access during

regular business hours to the global supply management group at the Company's

worldwide headquarters by a designated representative of the financial advisor retained by

the Creditors' Committee. Such professional shall maintain all information obtained from

the Company for the financial advisors' "professional eyes only" but shall be authorized to

report the financial advisors' professional evaluation of the Debtors' conduct and

performance with respect to this Order to the Creditors Committee but without disclosing

information regarding any individual supplier to the Debtors or any individual supply

agreement.

        3.      The relevant Covered Supplier's entry into an agreement

substantially in the form attached hereto as Exhibit 1 (an "Assumption Agreement")

evidencing such Covered Supplier's agreement to comply with all of the Required

Minimum Provisions (as defined below) shall be a condition precedent to the Debtors'

exercise of the authority to assume an Assumable Agreement. Upon a Covered Supplier's

entry into such an Assumption Agreement and subject to the Debtors' compliance with paragraph 6 of this Order, the Debtors shall be authorized to assume the relevant Assumable Agreement or Agreements pursuant to this Order without further notice or further order of this Court.

4.     The Debtors are hereby authorized, but not directed, to assume each Assumable Agreement for which the relevant Covered Supplier counterparty thereto has accepted a new agreement or an extension of the term of their Assumable Agreement (either by written acknowledgement or through performance under the Assumable Agreement) (the "Previously Extended Agreements") after the Petition Date, pursuant to section 365(a), effective as of the Assumption Date; provided that the relevant Covered Supplier strictly comply with the notice provisions of paragraph 5, infra5 of this Order and execute an Assumption Agreement in accordance with the provisions of paragraph 10 of this Order.

5.     Covered Suppliers desiring to have their Previously Extended Agreements assumed in accordance with paragraph 4, supra,4 of this Order shall be eligible to request to have their Previously Extended Agreement assumed, which request shall be made in writing so as to be actually received not later than 4:00 p.m. (prevailing Eastern time) on the forty-fifth day following entry of this Order,January 17, 2006, or as otherwise agreed by the Debtors in their sole discretion, by each of the following parties: (a) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098-2815 (Att'n: Karen J. Craft, Esq. and Michael J. Orris); (b) Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., Esq. and John K. Lyons, Esq.); and (c) Latham & Watkins LLP, 885 Third Avenue, Suite 1000,

New York, New York 10022-4068 (Att'n: Robert J. Rosenberg, Esq.).; and (d) Simpson
Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n:
Kenneth S. Ziman, Esq.)  A Covered Supplier's failure to strictly comply with the
provisions of this paragraph 5 shall constitute a full and final waiver of its right to seek
assumption of the relevant Previously Extended Agreements pursuant to the terms of this
Order.

6.      Notwithstanding anything to the contrary contained herein, should
(a) a Covered Supplier not consent to entry into an Assumption Agreement or refuse to
consent to any Required Minimum Provision (each such Covered Supplier, a
"Non-Consenting Supplier"),Conforming Supplier"), (b) the Assumable Agreement or
Agreements include a waiver under section 547 of the Bankruptcy Code pursuant to
paragraph 12 of this Order with respect to any later-expiring Assumable Contracts that are
not part of the proposed Assumption, or (c) the Assumable Agreement be classified by the
Debtors as an indirect supply agreement, then the Debtors shall not be authorized to
assume such Non-Conforming Supplier's Assumable Agreement or Agreements (each, a
"Non-Conforming Assumption") without prior approval ofthe prior review and
opportunity to object to the Non-Conforming Assumption by the Creditors' Committee and
the Prepetition Agent or, absent Creditors' Committee approval, order of this Court.  Upon
the Debtors' election to assume one or more Assumable Agreements of a Non-Consenting
Supplier (each a "Non-Conforming Assumption")Assumptions, the Debtors shall provide
written notice of such Non-Conforming Assumption to the designated representatives
representative of the financial advisors for the Creditors'' Committee and the Prepetition
Agent; provided, however, that the Debtors shall be authorized to serve such written notice

~~on the designated representatives of the Creditors' Committee~~ by facsimile or electronic

mail.  The Creditors' Committee and the Prepetition Agent shall have ~~three~~five business

days from the date of receipt of the notice of Non-Conforming Assumption in which to file

with the Court and serve upon counsel to the Debtors any objection that it may have to such

Non-Conforming Assumption; provided, however, that if neither the Creditors' Committee

~~does not~~nor the Prepetition Agent timely files and serves an objection, the Creditors'

Committee and the Prepetition Agent shall be deemed not to object to the Non-Conforming

Assumption and such assumption shall become effective on the Assumption Date without

further notice or further Court order.  If a timely objection is filed and served upon the

Debtors' counsel, this Court would then schedule a hearing to consider the

Non-Conforming Assumption as soon as practicable solely as to the timely filed objection.

       7.     Nothing contained in this Order shall limit the Debtors' right to

separately move to assume an agreement.

       8.     The Debtors' authority to assume any Assumable Agreement shall

be predicated upon the relevant Covered Supplier's agreement to the following

modifications of the Assumable Agreement and other concessions (collectively, the

"Required Minimum Provisions"):

    a.   The term of the relevant Assumable Agreement shall be extended for a

       period of two years from the date of expiration of the Assumable

       Agreement, unless the Debtors earlier reject or otherwise terminate the

       Assumable Agreement (the "Extension").

    b.   The relevant Assumable Agreement, and all of the terms thereof including

       Delphi's General Terms and Conditions (a copy of which is attached hereto

as Exhibit 2), including, without limitation, the termination for convenience

provisions contained in Section 11 thereof, are enforceable by the Debtors

against such Covered Supplier.

c.    The Covered Supplier ~~will~~shall supply the Debtors with the goods provided

under the relevant Assumable Agreement during the term of the Extension

on MNS-2 payment terms and those other terms and conditions as are

embodied in the Assumable Agreement (including Delphi's General Terms

and Conditions) and ~~such other more~~the most favorable trade terms,

practices, and programs (including, without limitation, pricing terms) in

effect between such supplier and the Debtors in the twelve months prior to

the Petition Date consistent with and subject to current market conditions as

of the Assumption Date (collectively, the "Customary Trade Terms")~~, or~~

~~such other favorable trade terms as are agreed to by the Debtors and the~~

~~Covered Supplier~~.

d.    The Covered Supplier is adequately assured of future performance for the

term of the Extension and waives any right to seek further adequate

assurance of future performance, whether pursuant to section 365(b)(1)(C)

or otherwise.

e.    All costs payable under the terms of this Order related to cure of prepetition

defaults under the assumed Assumable Agreements pursuant to section

365(b) of the Bankruptcy Code ("Cure") ~~will~~shall be paid in cash in six

equal installments with the first installment paid as soon as reasonably

practicable by the Debtors following the Assumption Date of an Assumable

Agreement and the remaining five installments paid at the end of each of the six five calendar quarters (i.e., March 31, June 30, September 30 30, and December 31) ending on or after beginning with the first calendar quarter following the calendar quarter in which the Assumption Date occurs; provided, however, that Cure shall not constitute an administrative expense pursuant to section 503 of the Bankruptcy Code.

f.   Cure, with respect to each assumed Assumable Agreement, shall be in an amount up to 75% of the amount of the outstanding prepetition liabilities of the Debtors under such Assumable Agreement as of the Assumption Date reflected in the Debtors' books and records or as otherwise reconciled by the parties; provided, however, that the Covered Supplier will shall receive an allowed general unsecured claim against the relevant Debtor for the remaining balance of the amount of the outstanding prepetition liabilities of the Debtors under such Assumable Agreement as of the Assumption Date reflected in the Debtors' books and records or as otherwise reconciled between the parties, which general unsecured claim shall be addressed pursuant to the terms of the plan of reorganization which is confirmed and consummated in the Debtors' chapter 11 cases.

g.   In the event of any termination or subsequent rejection of any assumed Assumable Agreement, the Covered Supplier shall not receive any payments of Cure that are to be paid on or after the effective date of such termination (the "Remaining Cure"); provided, however, that, upon any termination of any assumed Assumable Agreement, the Covered Supplier

shall receive an allowed general unsecured claim against the relevant

Debtor for the amount of the Remaining Cure, which general unsecured

claim shall be addressed pursuant to the terms of the plan of reorganization

which is confirmed and consummated in the Debtors' chapter 11 cases;

provided further that, upon any termination or any subsequent rejection of

any assumed Assumable Agreement, the amount of damages which the

Covered Supplier may assert against the relevant Debtor on account of such

termination shall not exceed the amount of damages arising upon a

termination for convenience in accordance with the terms of Section 11 of

Delphi's General Terms and Conditions.

h.   The Covered Supplier shall consent to each and every provision of

paragraph 9, infra9 of this Order.

9.      Should a Covered Supplier breach its obligations under an

Assumption Agreement, such Covered Supplier shall be liable to the Debtors for any and

all consequential damages resulting from such breach.  Furthermore, upon written notice of

such breach from the Debtors, the Covered Supplier shall not be entitled to further

payments of Cure until further order of Court.  In addition, in the event the Court

determines the Covered Supplier is in breach of the Assumption Agreement or the terms

set forth in this Order, the Covered Supplier shall be required to immediately disgorge all

payments of Cure received and the Debtors' avoidance rights under chapter 5 of the

Bankruptcy Code shall immediately be reinstated without further order of this Court.

Finally, the assumption of a Covered Supplier's Assumable Agreement(s) pursuant to this

Order shall constitute irrevocable consent of such Covered Supplier to the Debtors' ability

to sue for injunctive relief in this Court to compel specific performance under the

Assumable Agreement upon a breach under any Assumable Agreement or Assumption

Agreement.

10.    The Debtors are hereby authorized, but not directed, to provide an

Assumption Agreement substantially in the form of the letter attached hereto as Exhibit 1

to each Covered Supplier whose Assumable Agreement(s) are being assumed pursuant to

the terms hereof along with a copy of the order granting this Motion; provided, however,

that a Covered Supplier ~~will~~shall be conclusively deemed to consent to and be irrevocably

bound by the terms of this Order~~, notwithstanding its failure to enter into an Assumption~~

~~Agreement, upon its first shipment of Goods to the Debtors following the Assumption Date~~

~~for the relevant assumed Assumable Agreement and payment of the first installment of~~

~~Cure~~ only in the event that the Covered Supplier actually executes and delivers to the

Debtors an Assumption Agreement or similar document.

11.    The Debtors are hereby authorized to negotiate and enter into new

postpetition agreements in the ordinary course of their businesses with their suppliers in

their sole discretion and the Debtors' entry into such new postpetition supply agreements in

the ordinary course of business shall not be subject to Court approval.

12.    ~~The~~Upon the occurrence of the Assumption Date as to a particular

Assumable Contract, the rights of the Debtors and their respective estates shall be waived

under chapter 5 of the Bankruptcy Code to avoid payments made to a Covered Supplier

with respect to the Assumable Contracts actually assumed on the Assumption Date.  In

addition, the Debtors are hereby authorized, but not directed, to waive and release their

rights, and the rights of their respective estates, under section 547 of the Bankruptcy Code

to avoid payments made to a Covered Supplier in the 90 days prior to the Petition Date under later-expiring Assumable Agreements with such Covered Supplier, if, and only if, such Covered Supplier enters into Assumption Agreements with respect to each Assumable Agreement that the Debtors have elected at that time to assume pursuant to the terms of this Order.  For the avoidance of doubt, nothing contained herein shall constitute a waiver or release of any of the Debtors' or their estates' rights under section 547 of the Bankruptcy Code with respect to any such amounts absent the Debtors' express written agreement to waive and release their rights and the rights of their estates under section 547 of the Bankruptcy Code, the Debtors' entry into which shall ~~only~~ be authorized only in accordance with the terms of the immediately-preceding sentence.

13.   Nothing in the Motion or this Order shall be construed as a waiver by any of the Debtors of their rights to contest any invoice of a Covered Supplier under applicable non-bankruptcy law.

14.   The entry of this Order is final~~; provided, however, that within ten days of the date of entry hereof, any Covered Supplier may object~~, except that the Committee or Prepetition Agent may file a supplemental objection as to the prospective application of this Order ~~from and after the date of such objection; provided further that if any such objection is timely made by a Covered Supplier, such~~on or after March 1, 2006 or at any other time prior to March 1, 2006 should the aggregate amount of Cure contractually committed to be paid by the Debtors pursuant to paragraph 8f of this Order exceed $150,000,000 exclusive of Cure amounts associated with Non-Conforming Assumptions (which Cure amounts are already subject to the review and objection process set forth in paragraph 6 of this Order).  In the event that the party filing the supplemental objection

seeks an emergency hearing, the Court shall schedule a hearing on the supplemental objection as soon as reasonably practicable for the Court but in no event fewer than three business days after the filing of the supplemental objection; otherwise, the supplemental objection shall be heard at the ~~next regularly-scheduled omnibus hearing in these cases and, pending such hearing, this Order shall remain in full force and effect~~first omnibus hearing that is scheduled by the Court which is at least 20 days after the date of filing of the supplemental objection.  The Debtors shall continue to be authorized to assume supply agreements pursuant to the terms of this Order following the filing of a supplemental objection until the Court disposes of the supplemental objection after notice and a hearing.

15.    To the extent that this Court subsequently authorizes the Debtors to implement a Key Executive Compensation Program ("KECP") which includes any component that would exclude restructuring expenses from the calculation of incentive payments under such program, the Debtors have stipulated and this Court shall require that the Debtors not classify any expenses under generally accepted accounting principles incurred by the Debtors as a result of the assumption of Assumable Contracts under this Order as restructuring expenses under a KECP.

16.    ~~15.~~ This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

17.    ~~16.~~ The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:    New York, New York
          November __, 2005


                              _____
                              UNITED STATES BANKRUPTCY JUDGE

November __, 2005

TO:     [Covered Supplier]
        [Name]
        [Address]

Dear Valued Supplier:

        As you are no doubt aware, on October 8, 2005 (the "Petition Date"), Delphi
Corporation ("Delphi"), together with certain of its U.S. affiliates (collectively, the "Debtors"),
filed voluntary petitions under chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§
101-1330, as amended) in the United States Bankruptcy Court for the Southern District of New
York (the "Bankruptcy Cases" and the "Bankruptcy Court," respectively).  On November 18, 2005,
we requested the Bankruptcy Court's authority to assume certain of our agreements with suppliers
in recognition of the importance of continuity in our business operations and our desire that the
Bankruptcy Cases have as little effect on our operations as possible.  On November __, 2005, the
Bankruptcy Court entered an order (the "Order") authorizing us, under certain conditions, to
assume certain agreements with suppliers that agree to the terms set forth below and to be bound
by the terms of the Order.  A copy of the Order is enclosed.

        To have the agreements between you and the Debtors that are listed on Schedule A
hereto (each an "Agreement" and, if more than one, collectively, the "Agreements") assumed
pursuant to section 365 of the Bankruptcy Code and to receive payment on pre-bankruptcy claims,
you must agree to each of the following terms and conditions:

        (a)     You will extend the term of the Agreement or Agreements, as
appropriate, and continue supplying the Debtors with the goods provided under the Agreement or
Agreements, as appropriate, for a period of two (2) years from the date of expiration of each
Agreement, unless the Debtors earlier reject or otherwise terminate the Agreement (the
"Extension").

        (b)     You acknowledge and agree that each Agreement, and all of the
terms thereof including the Delphi's General Terms and Conditions (a copy of which is enclosed
herewith), including, without limitation, the termination for convenience provisions contained in
Section 11 thereof, are enforceable by the Debtors against you.

        (c)     You will supply goods to the Debtors on MNS-2 payment terms and
those other terms and conditions as are embodied in the Agreement (including Delphi's General
Terms and Conditions) ~~or such other~~ and the most favorable trade terms, practices, and programs
(including, without limitation, pricing terms) in effect between you and the Debtors in the twelve
months prior to ~~October 8, 2005~~ the Petition Date consistent with and subject to current market
conditions as of the effective date of assumption of the Agreement (collectively, the "Customary
Trade Terms")~~, or such other favorable trade terms as are agreed to by the Debtors and the Covered
Supplier~~.

(d)    You are adequately assured of future performance for the term of the Extension and waive any right to seek further adequate assurance of future performance, whether pursuant to section 365(b)(1)(C) of the Bankruptcy Code or otherwise.

(e)    You agree that the Debtors will pay you __% of the outstanding prepetition liabilities of the Debtors under such Agreement(s) as of the effective date of assumption reflected in the Debtors' books and records (net of any setoffs, credits or discounts) or as otherwise reconciled between the Debtors and you (the "Trade Claim").  The Debtors will pay the amount of the Trade Claim to you in six equal payments installments with the first installment paid as soon as reasonably practicable by the Debtors following the effective date of assumption of such Agreement(s) and the remaining five installments paid on the last day of each of the next six five calendar quarters (i.e., December 31, 2005; March 31, 2006; June 30, 2006; September 30, 2006; December 31, 2006; and March 31, 2007) beginning with the first calendar quarter following the calendar quarter in which the effective date of assumption occurs.  Payment of such amount at the times provided in the preceding sentence will constitute cure of all defaults under the Agreement or Agreements, as appropriate, and compensation of all actual pecuniary losses to you resulting from any such defaults, and you waive any further rights that you may have under section 365(b) of the Bankruptcy Code; provided, however, that the Trade Claim shall not constitute an administrative expense pursuant to section 503 of the Bankruptcy Code and you waive any right to assert a claim under section 503 on account of the Trade Claim.

(f)    In the event of any termination or subsequent rejection of the Agreement(s), you will not receive any payments of Cure that are to be paid on or after the effective date of such termination (the "Remaining Cure"); provided, however, that, upon any termination of any Agreement, you will receive an allowed general unsecured claim against the relevant Debtor for the amount of the Remaining Cure, which general unsecured claim shall be addressed pursuant to the terms of the plan of reorganization which is confirmed and consummated in the Debtors' chapter 11 cases;.

(g) Upon any termination or any subsequent rejection of any Agreement, you agree that the amount of damages which you may assert against the relevant Debtor on account of such termination shall not exceed the amount of damages arising upon a termination for convenience in accordance with the terms of Section 11 of Delphi's General Terms and Conditions.

(h)    You will receive an allowed general unsecured claim against the appropriate Debtor for the remaining balance of the amount of the outstanding prepetition liabilities of the Debtors under the Agreement(s) as of the effective date of assumption reflected in the Debtors' books and records or as otherwise reconciled between the Debtors and you, which general unsecured claim shall be addressed pursuant to the terms of the plan of reorganization which is confirmed and consummated in the Debtors' chapter 11 cases.

(i)    In consideration for the payment described herein, you agree not to file or otherwise assert against any or all of the Debtors, their estates, or any other person or entity or any of their respective assets or property (real or personal) any lien (regardless of the statute or other legal authority upon which such lien is asserted) related in any way to any remaining

prepetition amounts allegedly owed to you by the Debtors arising from agreements entered into prior to the Petition Date, including, without limitation, the Agreement(s).  Furthermore, if you have taken steps to file or assert such a lien prior to entering into this letter agreement, you agree to take all necessary steps to remove such lien as soon as possible.

       (j)    You represent and warrant to the Debtors that you have not sold, conveyed or otherwise transferred your Trade Claim to any other party.

       Assumption of the Agreement(s) and payment of your Trade Claim in the manner set forth in the Order may occur only upon execution of this letter by a duly authorized representative of your company and the return of this letter to the Debtors.  Your execution of this letter agreement and return of the same to the Debtors constitutes an agreement by you and the Debtors:

       (a)    to the Customary Trade Terms and to the amount of the Trade Claim reflected in the Debtors' books and records or as otherwise reconciled between the Debtors and you;

       (b)    that, for the term of the Extension, you will continue to supply the Debtors with goods pursuant to the Customary Trade Terms, and that the Debtors will pay for such goods in accordance with Customary Trade Terms;

       (c)    that you have reviewed the terms and provisions of the Order and that you consent to be bound by such terms;

       (d)    that you will not separately seek payment for reclamation and similar claims outside the terms of the Order;

       (e)    that if you breach your obligations under this letter agreement, you shall be liable to the Debtors for any and all consequential damages resulting from such breach;

       (f)    that, upon written notice of a breach described in paragraph (e) above from the Debtors, you will not be entitled to further installment payments of Cure until further order of the Bankruptcy Court;

       (g)    that, in the event that the Bankruptcy Court determines that you are in breach of this letter agreement, you will immediately disgorge all payments received on account of your Trade Claim and the Debtors' avoidance rights under chapter 5 of the Bankruptcy Code shall immediately be reinstated without further order of the Bankruptcy Court; and

       (h)    that you irrevocably consent to the Debtors' ability to sue you for injunctive relief in this Court upon a breach under any Agreement or this letter agreement.

       The Debtors and you also hereby agree that any dispute with respect to this agreement, the Order, and/or any breach under any Agreement shall be determined by the Bankruptcy Court.

3      DeltaView comparison of pcdocs://chisr02a/541039/5 and pcdocs://chisr02a/541039/6. Performed on 11/28/2005.

You hereby agree that you will keep the terms of this letter agreement together with all related settlement discussions strictly confidential.  You may disclose the terms of this letter agreement only to your management personnel that need to know such information to implement the terms of this letter agreement and legal counsel and other advisors with whom you have a recognized legal privilege; provided that all such parties have been informed of the confidentiality restrictions contained herein.  You further agree that you will be responsible and liable for any breach of the confidentiality provisions set forth in this letter agreement by your management personnel, legal counsel and other advisors.  You acknowledge that failure to honor the confidentiality provisions contained herein would cause significant economic harm to the Debtors. Any discussions by you with any third parties, including the press or media or consultants, regarding this letter agreement and its terms are expressly prohibited.

The Debtors expressly reserve all of their rights at law and in equity, including, without limitation, all of their rights as debtors-in-possession under the United States Bankruptcy Code.  Without limiting the generality of the foregoing sentence, this agreement, and any payment made hereunder, does not constitute a waiver of the Debtors' rights (i) to dispute any claim, or (ii) to take, or refrain from taking, any other action under any applicable section of the United States Bankruptcy Code or any other applicable law.

If you have any questions about this Agreement or our financial restructuring, please do not hesitate to call (866) 688-8679.

Sincerely,

[DELPHI CORPORATION]

_____
By:
      Its:

Agreed and Accepted by:
[Name of Trade Vendor]

_____
By:
      Its:

Dated: _____, 2005

**Effective  March 2004**

# DELPHI CORPORATION

# <u>GENERAL TERMS AND CONDITIONS</u>

## 1.  ACCEPTANCE

Seller acknowledges and agrees that these General Terms and Conditions are incorporated in, and a part of, this contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document, whether expressed in written form, by electronic data interchange or other tangible format, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively referred to as this "Contract").  Seller acknowledges and agrees that it has read and understands these General Terms and Conditions.  If Seller accepts this Contract in writing or commences any of the work or services which are the subject of this Contract, Seller will be deemed to have accepted this Contract and these General Terms and Conditions in their entirety without modification.  Any additions to, changes in, modifications of, or revisions of this Contract (including these General Terms and Conditions) which Seller proposes will be deemed to be rejected by Buyer except to the extent that an authorized employee of Buyer expressly agrees to accept any such proposals in writing.

## 2.  SHIPPING AND BILLING

2.1  <u>Shipping</u>.  Seller will (a) properly pack, mark and, ship goods as instructed by Buyer or any carriers and in accordance with any applicable laws or regulations, (b) route shipments as Buyer instructs, (c) not charge for costs relating to handling, packaging, storage or transportation (including duties, taxes, fees, etc.) unless otherwise expressly stated in this Contract, (d) provide packing slips with each shipment that identify Buyer's contract and release number and the date of the shipment, and (e) promptly forward the original bill of lading or other shipping receipt with respect to each shipment as Buyer instructs.  Seller will include on bills of lading or other shipping receipts the correct classification identification of the goods shipped as Buyer or the carrier requires.  The marks on each package and identification of the goods on packing slips, bills of lading and invoices must enable Buyer to easily identify the goods.

2.2  <u>Billing</u>.  Seller will (a) accept payment based upon Buyer's Evaluated Receipt Record/Self-Billed Invoice unless Buyer requests that Seller issue and deliver an invoice and (b) accept payment by electronic funds transfer.  If the payment due date is not otherwise specified in this Contract, the payment due date will be the due date established by the Multilateral Netting System (MNS-2) used by Buyer, which provides, on average, that payment will be due on the second day of the second month following the date Buyer receives the goods or services.  Buyer may withhold payment for any goods or services until Buyer receives evidence, in such form and detail as Buyer requires, of the absence of any liens, encumbrances and claims on such goods or services.

2.3  <u>Taxes</u>.  Unless otherwise stated in this Contract, the price includes all applicable federal, state, provincial, and local taxes other than sales, value added, or similar turnover taxes or charges.  Seller will separately invoice Buyer for any sales, value added, or similar turnover taxes or charges that Seller is required by law to collect from Buyer.   Seller will provide Buyer with whatever information and documentation that is required under local law in order to enable Buyer to recover any sales, value added, or similar turnover taxes or charges.  Invoices shall also be in the appropriate form as required by local law to permit deduction of payments for income tax purposes by the Buyer.

2.4  <u>Withholding of Taxes by Buyer</u>.  If Buyer is required by law to make any deduction or withholding from any sum otherwise payable to Seller under this Contract, Buyer shall be entitled to deduct or withhold such amount and effect payment thereof to the applicable tax authority.  Buyer will, upon request from Seller, provide Seller official tax receipts or other evidence issued by the applicable tax authorities sufficient to establish that any taxes which are withheld have been paid.

**Effective  March 2004**

2.5  <u>Delivery Schedules</u>.  Deliveries will be made in the quantities, on the dates, and at the times specified by Buyer in this Contract or any subsequent releases or instructions Buyer issues under this Contract.  Time is of the essence with respect to all delivery schedules Buyer establishes.  Buyer will not be required to pay for any goods that exceed the quantities specified in Buyer's delivery schedules or to accept goods that are delivered in advance of the delivery date specified in Buyer's delivery schedules.  Seller bears the risk of loss of all goods delivered in advance of the delivery date specified in Buyer's delivery schedules.  If the requirements of Buyer's customers or market, economic or other conditions require changes in delivery schedules, Buyer may change the rate of scheduled shipments or direct temporary suspension of scheduled shipments without entitling Seller to a price adjustment or other compensation.

2.6  <u>Premium Shipments</u>.  If Seller fails to have goods ready for shipment in time to meet Buyer's delivery schedules using the method of transportation originally specified by Buyer and, as a result, Buyer requires Seller to ship the goods using a premium (more expeditious) method of transportation, Seller will ship the goods as expeditiously as possible.  Seller will pay, and be responsible for, the entire cost of such premium shipment, unless Buyer's actions caused Seller to fail to meet Buyer's delivery schedules, in which case Buyer will pay any costs for premium shipment.

2.7  <u>Volume Forecasts</u>.  Buyer may provide Seller with estimates, forecasts or projections of its future anticipated volume or quantity requirements for goods.  Seller acknowledges that any such forecasts are provided for informational purposes only and, like any other forward looking projections, are based on a number of economic and business factors, variables and assumptions, some or all of which may change over time.  Buyer makes no representation, warranty, guaranty or commitment of any kind or nature, express or implied, regarding any such forecasts provided to Seller, including with respect to the accuracy or completeness of such forecasts.

## 3.  SPECIFICATION, DESIGN AND SCOPE CHANGES

Buyer may at any time require Seller to implement changes to the specifications or design of the goods or to the scope of any services or work covered by this Contract, including work related to inspection, testing or quality control.  While Buyer will endeavor to discuss any such changes with Seller as early as practical, Seller will promptly implement such changes.  Buyer will equitably determine any adjustment in price or delivery schedules resulting from such changes, including Buyer's payment of reasonable costs of modifications to Seller's Equipment (as defined in Article 16) necessary to implement such changes.  In order to assist in the determination of any equitable adjustment in price or delivery schedules, Seller will, as requested, provide information to Buyer, including documentation of changes in Seller's cost of production and the time to implement such changes.  In the event of any disagreement arising out of such changes, Buyer and Seller will work to resolve the disagreement in good faith, provided, however, that Seller will continue performing under this Contract, including the manufacture and delivery of goods and prompt implementation of changes required by Buyer, while Buyer and Seller resolve any disagreement arising out of such changes.

## 4.  QUALITY AND INSPECTION

Seller will participate in Buyer's supplier quality and development program(s) and comply with all engineering release and validation requirements and procedures, including Buyer's production part approval processes, which Buyer specifies from time to time.  Seller will permit Buyer and its representatives and consultants to enter Seller's facilities at reasonable times to inspect such facilities and any goods, inventories, work-in-process, materials, machinery, equipment, tooling, fixtures, gauges and other items and processes related to Seller's performance of this Contract.  No such inspection by Buyer will constitute acceptance by Buyer of any work-in-process or finished goods.

## 5.  NON-CONFORMING GOODS

Buyer is not required to perform incoming inspections of any goods, and Seller waives any right to require Buyer to conduct any such inspections.  Seller will not substitute any goods for the goods covered by this Contract unless Buyer consents in writing.  If Buyer rejects any goods as non-conforming, Buyer may, at its option, (a) reduce the quantities of goods ordered under this Contract by the quantity of non-conforming goods, (b) require Seller to replace the non-conforming goods, and/or (c) exercise any other applicable rights or remedies.  If Seller fails to inform Buyer in writing of the manner in which Seller desires that Buyer dispose of non-conforming goods within forty-eight (48) hours of notice of Buyer's rejection of non-conforming goods (or such shorter period as is reasonable under the circumstances), Buyer will be entitled to dispose of the non-conforming goods without liability to Seller, provided, however, that in any event Buyer may elect to arrange for the shipment of any non-conforming goods back to Seller at Seller's expense.  Seller will bear all risk of loss with respect to all non-conforming goods and will promptly pay or reimburse all costs incurred by Buyer to return, store or dispose any non-conforming goods.  Buyer's payment for any non-conforming goods will not constitute acceptance by Buyer, limit or impair Buyer's right to exercise any rights or remedies, or relieve Seller of responsibility for the non-conforming goods.

## 6. FORCE MAJEURE

If Seller is unable to produce, sell or deliver any goods or services covered by this Contract, or Buyer is unable to accept delivery, buy or use any goods or services covered by this Contract, as a result of an event or occurrence beyond the reasonable control of the affected party and without such party's fault or negligence, then any delay or failure to perform under this Contract that results from such event or occurrence will be excused for only so long as such event or occurrence continues, provided, however, that the affected party gives written notice of each such delay (including the anticipated duration of the delay) to the other party as soon as possible after the event or occurrence (but in no event more than three (3) days thereafter).  Such events and occurrences may include, by way of example and not limitation, natural disasters, fires, floods, windstorms, severe weather, explosions, riots, wars, sabotage, labor problems (including lockouts, strikes and slowdowns), equipment breakdowns and power failures.  During any delay or failure to perform by Seller, Buyer may (i) purchase substitute goods from other available sources, in which case the quantities under this Contract will be reduced by the quantities of such substitute goods and Seller will reimburse Buyer for any additional costs to Buyer of obtaining the substitute goods compared to the prices set forth in this Contract and/or (ii) have Seller provide substitute goods from other available sources in quantities and at times Buyer requests and at the prices set forth in this Contract.  If Seller fails to provide adequate assurances that any delay will not exceed thirty (30) days or if any delay lasts more than thirty (30) days, Buyer may terminate this Contract without any liability to Seller or obligation to purchase raw materials, work-in-process or finished goods under Section 11.  Before any of Seller's labor contracts expire and as soon as Seller anticipates or learns of any impending strike, labor dispute, work stoppage or other disruption at Seller's facilities that might affect the delivery of goods to Buyer, Seller will produce (and locate in an area that will not be affected by any such disruption) a finished inventory of goods in quantities sufficient to ensure the supply of goods to Buyer for at least thirty (30) days after such disruption commences.

## 7. WARRANTY

7.1  <u>General</u>.  Seller warrants and guarantees to Buyer, its successors, assigns and customers that the goods and services covered by this Contract will (a) conform to the then current release/revision level (based on date Buyer's release is issued to Seller) of Buyer's applicable specifications and drawings, (b) conform to all samples, descriptions, brochures and manuals furnished by Seller or Buyer, (c) be merchantable, (d) be of good material and workmanship, (e) be free from defect, and (f) be fit and sufficient for the particular purposes intended by Buyer and any customer of Buyer.  If requested by Buyer, Seller will enter into a separate agreement for the administration or processing of warranty chargebacks for nonconforming goods.

7.2  <u>Warranty Period</u>.  In the case of goods supplied for use as, or incorporation into, parts, components or systems for automotive vehicles or other finished products, the period for each of the foregoing warranties will commence upon delivery of the goods to Buyer and, except as provided in Section 7.4 or as otherwise

expressly agreed in writing by an authorized employee of Buyer, end forty-eight (48) months following the date the vehicle or other finished product on which such parts, components or systems are installed is first sold and delivered or otherwise utilized for consumer or commercial purposes, provided, however, that if Buyer offers and provides a longer warranty to its customers with respect to any such parts, components or systems, then such longer warranty period will apply to the goods.  In the case of goods supplied for other uses, the period for each of the foregoing warranties will be that provided by applicable law unless otherwise expressly agreed in writing by an authorized employee of Buyer.

7.3  Remedies and Damages.  If any goods are reasonably determined (including by use of statistical analysis or other sampling methodology) to fail to conform to the warranties set forth in this Contract, Seller shall reimburse Buyer for all reasonable losses, costs and damages caused by such nonconforming goods.  Such costs and damages may include, without limitation, costs, expenses and losses of Buyer and/or its customers arising from (i) inspection, sorting, repair or replacement of any nonconforming goods or any system or component that incorporates such nonconforming goods, (ii) production interruptions or slowdowns, (iii) offlining of vehicles or component systems, and (iv) field service campaigns and other corrective service actions, including, without limitation, the amounts paid to distributors and/or dealers for materials and replacement parts (including reasonable markup to recover administrative costs or other capital expenses) and the labor costs to perform such work.

7.4  Recalls.  Notwithstanding the expiration of the warranty period set forth in Section 7.2, if Buyer and/or the manufacturer of the vehicles (or other finished product) on which the goods, or any parts, components or systems incorporating the goods, are installed, voluntarily or pursuant to a government mandate, makes an offer to owners of such vehicles to provide remedial action to address a defect that relates to motor vehicle safety or the failure of the vehicle to comply with any applicable law, safety standard or guideline (a so-called "recall"), Seller will nonetheless be liable for costs and damages associated with the conduct of such recall to the extent that such recall is based upon a reasonable determination (including by use of statistical analysis or other sampling methodology) that the goods fail to conform to the warranties set forth in this Contract.

## 8.  INGREDIENTS AND HAZARDOUS  MATERIALS

If Buyer requests, Seller will promptly furnish to Buyer, in such form and detail as Buyer directs: (a) a list of all ingredients in the goods, (b) the amount of all ingredients, and (c) information concerning any changes in or additions to the ingredients.  Prior to, and together with, the shipment of the goods, Seller will furnish to Buyer and all carriers sufficient written warning and notice (including appropriate labels on the goods, containers and packing) of any hazardous material that is an ingredient or a part of any of the goods, together with all special handling instructions, safety measures and precautions as may be necessary to comply with applicable law, to inform Buyer and all carriers of any applicable legal requirements and to best allow Buyer and all carriers to prevent bodily injury or property damage in the handling, transportation, processing, use or disposal of the goods, containers and packing.

## 9.  INSOLVENCY OF SELLER

In any of the following or any similar events Buyer may immediately terminate this Contract without any liability to Seller or obligation to purchase raw materials, work-in-process or finished goods under Section 11:  (a) insolvency or financial difficulties of Seller, (b) filing of a voluntary petition in bankruptcy by Seller, (c) filing of any involuntary petition in bankruptcy against Seller, (d) appointment of a receiver or trustee for Seller, (e) execution of an assignment for the benefit of creditors by Seller, or (f) any accommodation by Buyer, financial or otherwise, not contemplated by this Contract, that are necessary for Seller to meet its obligations under this Contract.  Seller will reimburse Buyer for all costs Buyer incurs in connection with any of the foregoing whether or not this Contract is terminated, including, but not limited to, all attorney or other professional fees.

## 10.  TERMINATION FOR BREACH

Buyer may terminate all or any part of this Contract without any liability to Seller or obligation to purchase raw materials, work-in-process or finished goods under Section 11 if Seller (a) repudiates, breaches, or threatens to breach any of the terms of this Contract, including Seller's warranties, (b) fails to perform or threatens not to perform services or deliver goods in accordance with this Contract or (c) fails to assure timely and proper completion of services or delivery of goods.

## 11.  TERMINATION FOR CONVENIENCE

In addition to any other rights of Buyer to terminate this Contract, Buyer may immediately terminate all or any part of this Contract, at any time and for any reason, by notifying Seller in writing.  Upon such termination, Buyer may, at its option, purchase from Seller any or all raw materials, work-in-process and finished goods inventory related to the goods under this Contract which are useable and in a merchantable condition.  The purchase price for such finished goods, raw materials and work-in-process, and Seller's sole and exclusive recovery from Buyer (without regard to the legal theory which is the basis for any claim by Seller) on account of such termination, will be (a) the contract price for all goods or services that have been completed in accordance with this Contract as of termination date and delivered and accepted by Buyer and not previously paid for, plus (b) the actual costs of work-in-process and raw materials incurred by Seller in furnishing the goods or services under this Contract to the extent such costs are reasonable in amount and are properly allocable or apportionable under generally accepted accounting principles to the terminated portion of this Contract less (c) the reasonable value or cost (whichever is higher) of any goods or materials used or sold by Seller with Buyer's written consent.  In no event will Buyer be required to pay for finished goods, work-in-process or raw materials which Seller fabricates or procures in amounts that exceed those Buyer authorizes in delivery releases nor will Buyer be required to pay for any goods or materials that are in Seller's standard stock or that are readily marketable.  Payments made under this Article will not exceed the aggregate price for finished goods that would be produced by Seller under delivery or release schedules outstanding at the date of termination.  Within sixty (60) days after the effective date of termination, Seller will submit a comprehensive termination claim to Buyer, with sufficient supporting data to permit an audit by Buyer, and will thereafter promptly furnish any supplemental and supporting information Buyer requests.

## 12.  TECHNICAL INFORMATION

12.1  Information Disclosed by Seller.  Seller will create, maintain, update, and provide to Buyer, in compliance with Buyer's drafting and math data standards, all technical information about the goods and their manufacture which is reasonably necessary or requested by Buyer in connection with its use of the goods, including, without limitation, the engineering validation and qualification of the goods for automotive production and other applications and compliance with any legal or regulatory requirements.  Such technical information will not be subject to any use or disclosure restrictions, except as provided in Section 12.2 below.

12.2  Waiver of Claims.  Seller agrees not to assert any claim (other than a claim for patent infringement) against Buyer, Buyer's customers or their respective suppliers with respect to any technical information that Seller shall have disclosed, or may hereafter disclose, in connection with the goods or services covered by this Contract.

12.3  Repair and Rebuild.  Seller authorizes Buyer, its affiliates, agents and subcontractors, and Buyer's customers and their subcontractors to repair, reconstruct or rebuild the goods and products delivered under this Contract without payment of any royalty or other compensation to Seller.

12.4  Software and Written Works.  Seller grants to Buyer a permanent, paid-up license to use, repair, modify and sell any operating software incorporated in the goods in conjunction with the use or sale of the goods.  In addition, all works of authorship, including without limitation, software, computer programs and databases (including object code, micro code, source code and data structures), and all enhancements, modifications and updates thereof and all other written work products or materials, which are created in the course of performing

5

**Effective  March 2004**

this Contract, separately or as part of any goods and components, are "works made for hire" and the sole property of Buyer.  To the extent that such works of authorship do not qualify under applicable law as works made for hire, Seller hereby assigns to Buyer all right, title and interest in any intellectual property rights in such works of authorship.  If such assignment is not possible under any applicable law, Seller hereby grants an exclusive, royalty-free license to Buyer with respect to such works of authorship.

12.5  Development, Engineering And Consulting Services.  Engineering, consulting or development services ("Development Services") funded under this Contract that result in any idea, invention, concept, discovery, work of authorship, patent, copyright, trademark, trade secret, know-how or other intellectual property ("IP") shall be the sole property of Buyer.  Seller agrees to assign all right, title and interest in and to IP that results from Development Services ("Developed IP") to Buyer.  Seller shall notify Buyer of the existence of Developed IP and assist Buyer in every reasonable way to perfect its right, title and interest in Developed IP, such as by executing and delivering all additional documents reasonably requested by Buyer in order to perfect, register, and/or enforce the same, and Buyer shall reimburse Seller for reasonable costs incurred by Seller in providing such assistance.

## 13.  INDEMNIFICATION

13.1   Infringement.  Seller will defend, hold harmless and indemnify Buyer and its customers, and their respective successors and assigns, against any claims of infringement (including patent, trademark, copyright, moral, industrial design or other proprietary rights, or misuse or misappropriation of trade secret) and resulting damages and expenses (including, without limitation, attorney and other professional fees and disbursements) relating to the goods or services covered by this Contract, including any claims in circumstances where Seller has provided only part of the goods or services.    Seller waives any claim against Buyer that any such infringement arose out of compliance with Buyer's specifications.

13.2  Activities on Buyer's Premises.  Seller will defend, hold harmless, and indemnify Buyer from and against any liability, claims, demands, damages, costs or expenses (including, without limitation, reasonable attorney and other professional fees and disbursements) arising from or in connection with the performance of any service or work by Seller or its employees, agents, representatives and subcontractors on Buyer's or Buyer's customer's premises or the use of the property of Buyer or any customer of Buyer, except to the extent such liability arises out of the negligence or willful misconduct of Buyer or Buyer's customer.

13.3  Product Liability .  Seller will defend, hold harmless, and indemnify Buyer from and against any liability and expenses (including, without limitation, attorney and other professional fees and disbursements) arising from or in connection with any third party claims or demands to recover for personal injury or death, property damage or economic loss caused by any of the goods or services supplied by Seller (regardless of whether such claim or demand arises under tort, negligence, contract, warranty, strict liability or any other legal theories), except to the extent such injury, damage or loss results from Buyer's specifications as to design or materials or from alteration or improper repair, maintenance or installation by any party other than Seller.

## 14.  COMPLIANCE WITH LAWS

Seller, and any goods or services supplied by Seller, will comply with all applicable laws, rules, regulations, orders, conventions, ordinances and standards of the country(ies) of origin and destination or that relate to the manufacture, labeling, transportation, importation, exportation, licensing, approval, performance and/or certification of the goods or services, including, but not limited to, those relating to environmental matters, wages, hours and conditions of employment, subcontractor selection, discrimination, occupational health/safety and motor vehicle safety.  Neither Seller nor any of its subcontractors will utilize slave, prisoner or any other form of forced or involuntary labor in the supply of goods or services under this Contract.   Upon Buyer's request, Seller will certify in writing its compliance with the foregoing.  Seller will defend, hold harmless and indemnify Buyer from and against any liability, claims, demands, damages or expenses (including reasonable attorney or other professional fees and disbursements) arising from or relating to Seller's noncompliance with this Article.

**Effective  March 2004**

## 15.  INSURANCE

Seller will maintain insurance coverage as required by applicable law or as reasonably requested by Buyer with carriers reasonably acceptable to Buyer.   With respect to any such insurance coverage, Seller will furnish to Buyer either a certificate evidencing satisfaction of the above-mentioned insurance requirements under this Contract or certified copies of all insurance policies within ten (10) days after Buyer requests.   The certificate must provide that Buyer will receive thirty (30) days prior written notice from the insurer of any termination or reduction in the amount or scope of coverage.   The furnishing of certificates of insurance and purchase of insurance will not limit or release Seller from Seller's obligations or liabilities under this Contract.

## 16.  SELLER'S EQUIPMENT

Seller, at its expense, will furnish, keep in good condition, and replace when necessary all of its machinery and equipment, including related tooling, jigs, dies, gauges, fixtures, molds, patterns, fixtures and other accessories, required for the production of goods covered by this Contract (collectively, "Seller's Equipment"). Seller will insure Seller's Equipment with fire and extended coverage insurance for its full replacement value. Seller grants Buyer an irrevocable option  to take possession of, and title to, all or part of Seller's Equipment that is specially designed or outfitted for the production of the goods covered by this Contract, in which event Buyer will, within 45 days following delivery of such Seller's Equipment to Buyer, pay to Seller of the lower of (i) the net book value of such Seller's Equipment (i.e., actual cost less amortization) or (ii) then current fair market value of such Seller's Equipment, in each case less any amounts that Buyer has previously paid to Seller on account of such Seller's Equipment.   The foregoing option will not apply to the extent that Seller's Equipment is used to produce goods that are the standard stock of Seller and are then being sold by Seller to other customers.   Buyer's right to exercise the foregoing option is not conditioned on Seller's breach or Buyer's termination of this Contract or upon payment of any other amounts due under this Contract.

## 17.  BUYER'S PROPERTY AND INFORMATION

17.1  Acquisition of Tooling and Materials.  To the extent that this Contract covers Buyer's purchase of, or reimbursement to Seller for, any tooling, jigs, dies, gauges, fixtures, molds, patterns, equipment, supplies, materials and other items (collectively, "Tooling and Materials") to be used in connection with Seller's actual or anticipated supply of goods to Buyer, Seller will acquire such Tooling and Materials as agent of Buyer and Buyer shall pay to or reimburse Seller the lower of (i) the amount specified in this Contract for such Tooling and Materials or (ii) Seller's actual out-of-pocket cost to acquire the Tooling or Materials from an unrelated third party or, if the Tooling and Materials are constructed or fabricated by Seller or any affiliate of Seller, the actual direct costs for materials, labor and overhead associated with such construction and fabrication.   Seller shall assign to Buyer any contract rights or claims in which Seller has an interest with respect to such Tooling and Materials. Seller shall establish a reasonable accounting system that readily enables the identification of Seller's costs as described above.  Buyer or its agents shall have the right to audit and examine all books, records, facilities, work, material, inventories and other items relating to any such Tooling and Materials.  Upon Seller's acquisition of such Tooling and Materials, title thereto shall vest immediately in Buyer and such Tooling and Materials shall be held as "Buyer's Property" by Seller in accordance with this Article 17.

17.2   Bailment of Buyer's Property.   All Tooling and Materials which Buyer furnishes, either directly or indirectly, to Seller or which Buyer buys from, or gives reimbursement to, Seller in whole or in part (collectively, "Buyer's Property") will be and remain the property of Buyer and be held by Seller on a bailment basis.  Title to all replacement parts, additions, improvements and accessories purchased by Seller will vest in Buyer immediately upon attachment to or incorporation into Buyer's Property.  When permitted by law, Seller waives any lien or other rights that Seller might otherwise have on or in any of Buyer's Property for work performed on, or utilizing, such property or otherwise.

17.3   Seller's Duties with Respect to Buyer's Property.  While Buyer's Property is in Seller's possession and until Seller delivers Buyer's Property back to Buyer, Seller bears the risk of loss, theft and damage to Buyer's

Property.   Seller will be responsible for the cost of repairing or replacing Buyer's Property if it is stolen, damaged or destroyed regardless of cause or fault.  Seller will at all times: (a) regularly inspect, maintain in good condition, and repair Buyer's Property at Seller's own expense, (b) use Buyer's Property only for the performance of this Contract, (c) deem Buyer's Property to be personal property, (d) conspicuously mark Buyer's Property as the property of Buyer and maintain such markings, (e) not commingle Buyer's Property with the property of Seller or with that of a third person, (f) not move Buyer's Property from Seller's applicable shipping location (as shown by the shipping address of Seller) without prior written approval from an authorized employee of Buyer, and (g) use Buyer's Property in compliance with Buyer's or the manufacturer's instructions and in compliance with all federal, state and local laws, ordinances and regulations.  Buyer will have the right to enter Seller's premises at all reasonable times to inspect Buyer's Property and Seller's records with respect thereto. Seller will not sell, lend, rent, encumber, pledge, lease, transfer or otherwise dispose of Buyer's Property.  Furthermore, Seller will not assert, or permit any person claiming an interest through Seller to assert any claims of ownership to or any other interest in Buyer's Property.

17.4   Return of Buyer's Property.  Seller agrees that Buyer has the right, at any time and from time to time, with or without reason and without payment of any kind, to retake possession of or request the return of Buyer's Property.  Without further notice or court hearings, which rights, if any, are hereby waived, Buyer or its designee(s) will have the right to enter Seller's premises and take possession of any and all of Buyer's Property.   Upon Buyer's request and in accordance with Buyer's instructions, Buyer's Property will be immediately released to Buyer or delivered to Buyer by Seller, either (i) Ex Works (IncoTerms 2000) at Seller's plant properly packed and marked in accordance with the requirements of the carrier selected by Buyer to transport such Buyer's Property or (ii) to any location Buyer designates, in which event Buyer will pay Seller the reasonable costs of delivering Buyer's Property to the location Buyer designates. If Seller does not release and deliver any Buyer's Property in accordance with this Article, Buyer may obtain an immediate writ of possession without notice and without the posting of any bond and/or enter Seller's premises, with or without legal process, and take immediate possession of Buyer's Property.

17.5   Disclaimer of Warranties.  Seller acknowledges and agrees that (i) Buyer is not the manufacturer of Buyer's Property nor the manufacturer's agent nor a dealer therein, (ii) Buyer is bailing Buyer's Property to Seller for Seller's benefit, (iii) Seller is satisfied that Buyer's Property is suitable and fit for its purposes, and (iv) BUYER HAS NOT MADE AND DOES NOT MAKE ANY WARRANTY OR REPRESENTATION WHATSOEVER, EITHER EXPRESS OR IMPLIED, AS TO THE FITNESS, CONDITION, MERCHANTABILITY, DESIGN OR OPERATION OF BUYER'S PROPERTY OR ITS FITNESS FOR ANY PARTICULAR PURPOSE. Buyer will not be liable to Seller for any loss, damage, injury or expense of any kind or nature caused, directly or indirectly, by Buyer's Property, including, without limitation, the use or maintenance thereof, or the repair, service or adjustment thereof, or by any interruption of service or for any loss of business whatsoever or howsoever caused, including, without limitation, any loss of anticipatory damages, profits or any other indirect, special or consequential damages and/or personal injury or death.

17.6   Use of Buyer's Information.  Seller will (i) keep all Buyer's Information (as defined below) confidential and disclose it only to its employees who need to know such Buyer's Information in order for Seller to supply goods and services to Buyer under this Contract and (ii) use the Buyer's Information solely for the purpose of supplying goods and services to Buyer.  Goods manufactured based on Buyer's Information may not be used for Seller's own use or sold by Seller to third parties without prior express written consent from an authorized employee of Buyer.   "Buyer's Information" means all information provided to Seller by Buyer or its representatives or subcontractors in connection with the business, programs, goods and services covered by this Contract, including, without limitation, pricing and other terms of this Contract, specifications, data, formulas, compositions, designs, sketches, photographs, samples, prototypes, test vehicles, manufacturing, packaging or shipping methods and processes and computer software and programs (including object code and source code). Buyer's Information also includes any materials or information that contain, or are based on, any Buyer's Information, whether prepared by Buyer, Seller or any other person.

## 18.  SERVICE AND REPLACEMENT PARTS

During the term of  this Contract, Seller will sell to Buyer goods necessary to fulfill Buyer's service and replacement parts requirements to Buyer's customers at the then current production price(s) under this Contract.  If the goods are systems or modules, Seller will sell the components or parts that comprise the system or module at price(s) that will not, in the aggregate, exceed the price of the system or module less assembly costs.  If this Contract is in effect at the end of the vehicle production program into which the goods covered by the Contract are incorporated, Seller will also sell goods to Buyer to fulfill Buyer's and its customers' service and replacement parts requirements during the fifteen (15) year period following the end of such vehicle production program (the "Post-Production Period"), and this Contract will automatically remain in effect during the entire Post-Production Period.  During the initial five (5) years of the Post-Production Period, the price(s) for such goods will be the production price(s) which were in effect at the commencement of the Post-Production Period.  For the remainder of the Post-Production Period, the price(s) for such service goods will be as reasonably agreed to by the parties.  If requested by Buyer, Seller will also make service literature and other materials available at no additional charge to support Buyer's service activities.

## 19.  REMEDIES AND INJUNCTIVE RELIEF

The rights and remedies reserved to Buyer in this Contract are cumulative with, and in addition to, all other or further remedies provided in law or equity.  To the extent that this Contract is for the supply of goods for use as, or fabrication into, parts, components or systems, Seller acknowledges and agrees that money damages would not be a sufficient remedy for any actual, anticipatory or threatened breach of this Contract by Seller with respect to its delivery of goods to Buyer and that, in addition to all other rights and remedies which Buyer may have, Buyer shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach.

## 20.  CUSTOMS AND EXPORT CONTROLS

20.1  Credits and Refunds.  Transferable credits or benefits associated with or arising from goods purchased under this Contract, including trade credits, export credits or rights to the refund of duties, taxes or fees, belong to Buyer.  Seller will, at its expense, provide all information necessary (including written documentation and electronic transaction records in Buyer-approved formats) to permit Buyer to receive these benefits, credits, or rights.  Seller will furthermore, at its expense, provide Buyer with all information, documentation, and electronic transaction records relating to the goods necessary for Buyer to fulfill any customs -related obligations, origin marking or labeling requirements and certification or local content reporting requirements, to enable Buyer to claim preferential duty treatment for goods eligible under applicable trade preference regimes, and to make all arrangements that are necessary for the goods to be covered by any duty deferral or free trade zone program(s) of the country of import.  Seller will, at its expense, provide Buyer or Buyer's nominated service provider with export documentation to enable the goods to be exported, and obtain all export licenses or authorizations necessary for the export of the goods unless otherwise indicated in this Contract, in which event Seller will provide all information as may be necessary to enable Buyer to obtain such licensees or authorization(s).

20.2  Customs-Trade Partnership Against Terrorism.  To the extent any good covered by this Contract are to be imported into the United States of America, Seller shall comply with all applicable recommendations or requirements of the Bureau of Customs and Border Protection's Customs-Trade Partnership Against Terrorism ("C-TPAT") initiative.  Upon request, Seller shall certify in writing its compliance with the C-TPAT initiative.

## 21.  BUYER'S RECOVERY RIGHT

With respect to any monetary obligations of Seller or Seller's affiliates to Buyer or Buyer's affiliates, including, without limitation, direct and indirect losses, costs and damages resulting from Seller's failure to timely delivery goods or services, the failure of any goods or service to conform to applicable warranties or other breach by Seller of this Contract, Buyer may at any time, as applicable, recover, recoup or setoff such amounts by

deducting such amounts from any sums that are, or will become, owing, due or payable to Seller or Seller's affiliates by Buyer or Buyer's affiliates.

## 22.  NO ADVERTISING

Seller will not, in any manner, advertise or publish that Seller has contracted to furnish Buyer the goods or services covered by this Contract or use any trademarks or trade names of Buyer in Seller's goods, advertising or promotional materials unless Buyer consents in writing.

## 23.  NO IMPLIED WAIVER

The failure of either party at any time to require performance by the other party of any provision of this Contract will not affect the right to require such performance at any later time, nor will the waiver by either party of a breach of any provision of this Contract constitute a waiver of any succeeding breach of the same or any other provision.  No failure or delay in exercising any right or remedy will operate as a waiver thereof nor will any single or partial exercise thereof preclude other or further exercise thereof.  No course of dealing or course of performance may be used to evidence a waiver or limitation of Seller's obligations under this Contract.

## 24.  ASSIGNMENT AND CHANGE IN CONTROL

Buyer may assign its rights and obligations under this Contract without Seller's prior written consent.  Seller may not assign or delegate its rights or obligations under this Contract without prior written consent from an authorized employee of Buyer. In addition, Buyer may terminate this Contract upon giving at least 60 days notice to Seller, without any liability to Seller or obligation to purchase raw materials, work-in-process or finished goods under Section 11, if Seller (i) sells, or offers to sell, a material portion of its assets or (ii) sells or exchanges, or offers to sell or exchange, or causes to be sold or exchanged, a sufficient amount of its stock or other equity interests that effects a change in the control of Seller or (iii) executes, or otherwise becomes subject to, a voting or other agreement or trust that effects a change in the control of Seller.

## 25.  RELATIONSHIP OF PARTIES

Seller and Buyer are independent contracting parties.  Nothing in this Contract makes either party the agent or legal representative of the other for any purpose whatsoever, nor grants either party any authority to assume or create any obligation on behalf of or in the name of the other party.

## 26.  GOVERNING LAW AND JURISDICTION

**26.1  U.S. Contracts**.  If either (i) this Contract is issued by Buyer from a location within the United States of America or its territories (as shown by the issuing address of Buyer), (ii) this Contract is issued, in whole or part, for goods to be shipped to a Buyer location within the United States of America or its territories (as shown by the ship to or receiving address of Buyer) or (iii) Seller's applicable shipping location is within the United States of America or its territories (as shown by the shipping address of Seller), then: (a) this Contract is to be construed according to the laws of the United States of America and the State of Michigan, excluding the provisions of the United Nations Convention on Contracts for the International Sale of Goods and any choice of law provisions that require application of any other law, and (b) each party hereby agrees that the forum and venue for any legal or equitable action or proceeding arising out of, or in connection with, this Contract will lie in the appropriate federal or state courts in the State of Michigan and specifically waives any and all objections to such jurisdiction and venue.

**26.2  Non-U.S. Contracts.**  In all cases not covered by Section 26.1 above, (a) this Contract is to be construed according to the laws of the country (and state or province, if applicable) where Buyer's receiving location is located (as shown by the ship to or receiving address of Buyer), excluding the provisions of the United Nations Convention on Contracts for the International Sale of Goods and any choice of law provisions that require application of any other law; (b) any legal or equitable action or proceedings by Buyer against Seller arising out

**Effective  March 2004**

of, or in connection with, this Contract may be brought by Buyer in any court(s) having jurisdiction over Seller or, at Buyer's option, in any court(s) having jurisdiction over Buyer's receiving location, in which event Seller consents to such jurisdiction and venue, including service of process in accordance with applicable procedures; and (c) any legal or equitable actions or proceedings by Seller against Buyer arising out of, or in connection with, this Contract may be brought by Seller only in the court(s) having jurisdiction over the Buyer's receiving location.

## 27.  SEVERABILITY

If any provision of this Contract is invalid or unenforceable under any statute, regulation, ordinance, executive order or other rule of law, such provision will be deemed reformed or deleted*,* as the case may be*,* but only to the extent necessary to comply with such statute, regulation, ordinance, order or rule*,* and the remaining provisions of this Contract will remain in full force and effect.

## 28.  RIGHT TO AUDIT AND INSPECT

Buyer, at its expense, has the right to audit and review all relevant books, records, income statements, balance sheets, cash flow statements, payroll data, receipts and other related supporting data, including Seller's administrative and accounting policies, guidelines, practices and procedures, in order to (i) substantiate any charges and other matters under this Contract and (ii) assess Seller's ongoing ability to perform its obligations under the Production Purchase Order.  Seller will maintain and preserve all such documents for a period of four (4) years following final payment under this Contract.  Seller will provide Buyer with reasonable access to its facilities and otherwise cooperate and facilitate any such audits by Buyer.

## 29.  ENTIRE AGREEMENT

This Contract, together with the attachments, exhibits, supplements or other terms of Buyer specifically referenced in this Contract, constitutes the entire agreement between Seller and Buyer with respect to the matters contained in this Contract and supersedes all prior oral or written representations and agreements. This Contract may only be modified by a written contract amendment issued by Buyer.  Notwithstanding anything to the contrary contained herein, Buyer explicitly reserves, and this Contract will not constitute a waiver or release of, any rights and claims against Seller arising out of, or relating to, any fraud or duress in connection with the formation of this Contract or any breach or anticipatory breach of any previously existing contract between Buyer and Seller (whether or not such previously existing contract related to the same or similar goods or subject matter as this Contract).  All payments by Buyer to Seller under this Contract are without prejudice to Buyer's claims, rights, or remedies.

## 30.  TRANSLATIONS

Buyer may provide various translated versions of these General Terms and Conditions for informational purposes only.  However, the original English language version of these General Terms and Conditions will apply in the event of any disagreement over the meaning or construction of any provisions of these General Terms and Conditions.

# EXHIBIT E

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                          :
          In re                                           :     Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :     Case No. 05-44481 (RDD)
                                                          :
                                  Debtors.                :     (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(a), 328(a), AND 1107(b)
AUTHORIZING EMPLOYMENT AND RETENTION OF ERNST & YOUNG LLP
AS SARBANES-OXLEY, VALUATION, AND TAX SERVICES PROVIDERS
TO DEBTORS, EFFECTIVE NUNC PRO TUNC TO OCTOBER 8, 2005

("ERNST & YOUNG RETENTION APPLICATION")

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this application (the "Application") for entry of an order under 11 U.S.C.

§§ 327(a), 328(a), and 1107(b) and Fed. R. Bankr. P. 2014 authorizing the employment and

retention of Ernst & Young LLP ("E&Y") as Sarbanes-Oxley, valuation, and tax services

providers to the Debtors, effective nunc pro tunc to October 8, 2005.  In support of this

Application, the Debtors submit the Affidavit of Randall J. Miller, sworn to November 28, 2005

(the "Miller Affidavit").  In further support of this Application, the Debtors respectfully represent

as follows:

<u>Background</u>

A.      <u>The Chapter 11 Filings</u>

      1.      On October 8, 2005 (the "Petition Date"), Delphi and certain of its U.S.

subsidiaries filed voluntary petitions in this Court for reorganization relief under chapter 11 of

title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

On October 14, 2005, three additional U.S. subsidiaries of Delphi filed voluntary petitions in this

Court for reorganization relief under the Bankruptcy Code.  The Debtors continue to operate

their businesses and manage their properties as debtors-in-possession pursuant to sections

1107(a) and 1108 of the Bankruptcy Code.  Also on the Petition Date, this Court entered an order

directing the joint administration of the Debtors' chapter 11 cases (Docket No. 28).

      2.      On October 17, 2005, the Office of the United States Trustee (the "U.S.

Trustee") appointed an official committee of unsecured creditors.  No trustee or examiner has

been appointed in the Debtors' cases.

      3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

      4.      The statutory predicates for the relief requested herein are sections 327(a),

328(a), and 1107(b) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").

B.      <u>Current Business Operations Of The Debtors</u>

      5.      With more than 180,000 employees worldwide, global 2004 revenues of

approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1

2

billion,[1] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations without supervision from the Bankruptcy Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

6.    Over the past century, the operations which are now owned by Delphi have developed leading global technology innovations with significant engineering resources and technical competencies in a variety of disciplines.  Today, the Company (as defined below) is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company's technologies and products are present in more than 75 million vehicles on the road worldwide.  The Company supplies products to nearly every major global automotive original equipment manufacturer with 2004 sales to its former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

7.    As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world.  In the U.S., the Debtors employ approximately 50,600 people.  Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan.  Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and

---

[1]    The aggregated financial data used in this Application generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

local unions. Outside the United States, the Company's foreign entities employ more than

134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40

countries worldwide.

8.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary

of GM. Prior to January 1, 1999, GM conducted the Company's business through various

divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions

and subsidiaries were transferred to Delphi and its subsidiaries and affiliates (collectively, the

"Company") in accordance with the terms of a Master Separation Agreement between Delphi

and GM. In connection with these transactions, Delphi accelerated its evolution from a North

American-based, captive automotive supplier to a global supplier of components, integrated

systems, and modules for a wide range of customers and applications. Although GM is still the

Company's single largest customer, today more than half of Delphi's revenue is generated from

non-GM sources.

9.    Due to the significant planning that goes into each vehicle model, Delphi's

efforts to generate new business do not immediately affect its financial results, because supplier

selection in the auto industry is generally finalized several years prior to the start of production

of the vehicle. When awarding new business, which is the foundation for the Company's

forward revenue base, customers are increasingly concerned with the financial stability of their

supply base. The Debtors believe that they will maximize stakeholder value and the Company's

future prospects if they stabilize their businesses and continue to diversify their customer base.

The Debtors also believe that this must be accomplished in advance of the expiration of certain

benefit guarantees between GM and certain of Delphi's unions representing most of its U.S.

4

hourly employees which coincides with the expiration of the Company's U.S. collective

bargaining agreements in the fall of 2007.

C.    Events Leading To Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the Company

generated more than $2 billion in net income.  Every year thereafter, however, with the exception

of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net

operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the

marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005.

The Company experienced net operating losses of $608 million for the first six months of

calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion

less in sales than during the same time period in calendar year 2004.[2]

11.    The Debtors believe that three significant issues have largely contributed to

the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S.

legacy liabilities and operational restrictions driven by collectively bargained agreements,

including restrictions preventing the Debtors from exiting non-strategic, non-profitable

operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive

U.S. vehicle production environment for domestic OEMs resulting in the reduced number of

motor vehicles that GM produces annually in the United States and related pricing pressures, and

(c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward looking revenue requirements.  Having concluded that

---

[2]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily
related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

pre-filing discussions with its unions and GM were not leading to the implementation of a plan

sufficient to address the Debtors' issues on a timely basis, the Company determined to commence

these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and

preserve value.

13.    Through the reorganization process, the Debtors intend to achieve

competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive

legacy liabilities and burdensome restrictions under current labor agreements and realigning

Delphi's global product portfolio and manufacturing footprint to preserve the Company's core

businesses.  This will require negotiation with key stakeholders over their respective

contributions to the restructuring plan or, absent consensual participation, the utilization of the

chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned

in the Company's transformation plan.  The Debtors believe that a substantial segment of

Delphi's U.S. business operations must be divested, consolidated, or wound-down through the

chapter 11 process.

14.    Upon the conclusion of this process, the Debtors expect to emerge from

chapter 11 as a stronger, more financially sound business with viable U.S. operations that are

well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all

of its resources to continue to deliver value and high-quality products to its customers globally.

Additionally, the Company will preserve and continue the strategic growth of its non-U.S.

operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.    By this Application, the Debtors request authorization to employ and retain

E&Y as one of their Sarbanes-Oxley, valuation, and tax services providers in these chapter 11

6

cases, effective <u>nunc</u> <u>pro</u> <u>tunc</u> to October 8, 2005.  Specifically, the Debtors respectfully request

entry of an order under sections 327(a), 328(a), and 1107(b) of the Bankruptcy Code and

Bankruptcy Rule 2014 authorizing E&Y to perform Sarbanes-Oxley, valuation, and tax services

that will be necessary during these chapter 11 cases, as described below and in accordance with

the terms set forth in (i) the engagement letter attached hereto as <u>Exhibit A</u> (the "Sarbanes-Oxley

Engagement Letter"), (ii) the engagement letter attached hereto as <u>Exhibit B</u> (the "Valuation

Engagement Letter"), (iii) the engagement letter attached hereto as <u>Exhibit C</u> (the "Skadden Tax

Engagement Letter"), and (iv) the engagement letter attached hereto as <u>Exhibit D</u> (the "Delphi

Tax Engagement Letter", and together with the Sarbanes-Oxley Engagement Letter, the

Valuation Engagement Letter, and the Skadden Tax Engagement Letter, the "Engagement

Letters").  The Debtors had retained E&Y as an ordinary course professional according to the

Order Under 11 U.S.C. §§ 327, 330, And 331 Authorizing Retention Of Professionals Utilized

By Debtors In Ordinary Course Of Business (Docket No. 883) (the "Ordinary Course

Professionals Order").  The Debtors, however, are concerned that E&Y likely will exceed the fee

cap established in the Ordinary Course Professionals Order.  Therefore, the Debtors request that

E&Y be retained formally as one of their Sarbanes-Oxley, valuation, and tax services providers

in these chapter 11 cases.

Scope Of Services

16.    As set forth in further detail in the Engagement Letters and in the Miller

Affidavit, subject to approval of this Court, E&Y has agreed to provide certain Sarbanes-Oxley,

valuation, and tax services to the Debtors, including the following:

>    (a)    **Functional Testing.**  Assisting the Debtors' management in the planning
>    and execution of its functional testing of internal controls over financial
>    reporting for the Debtors' significant accounts and processes and reporting
>    any findings and recommendations for improvements.

7

(b) **IT Sarbanes-Oxley Section 404 Support And Segregation Of Duties ("IT SOX 404 And SOD").** (i) Assisting Delphi IT in assessing, testing, and remediating the IT General Computer Controls environment for applications supporting financial processes in accordance with compliance to Section 404 of the Sarbanes-Oxley Act of 2002; (ii) assisting in the remediation of segregation of duties, which includes organizing and analyzing relevant end user security data against defined business conflicts, providing subject matter expertise on the required user access/profile clean-up, and supporting the design and implementation of preventive and detective processes/tools; and (iii) providing resources to support the Debtors with certain deliverables as required.

(c) **Assistance With Delphi Corporate Accounting Policies.** Assisting in the development of the organization, format, and content update of the Delphi Corporate Accounting Policies manual.

(d) **Certus Implementation Assistance.** (i) Assisting the Debtors in the implementation of the Certus Sarbanes Compliance Tool; (ii) assisting in the completion of the following activities: (a) general project management responsibilities with direction from the Debtors; (b) documenting the functional, technical, and system requirements; (c) designing the tool functionality according to the company's specifications; (d) design and execution of integrated testing; and (e) development and deployment of user training; and (iii) providing resources to support the Debtors with developing deliverables deemed appropriate for the project.

(e) **Loan Staff.** Assisting the Debtors by providing certain professional personnel of E&Y for the purpose of assisting the Debtors with special project work as mutually agreed by E&Y and the Debtors. E&Y will provide the personnel to perform the following services and such other related services as requested by appropriate members of the Debtors' management and agreed to by E&Y: (i) supporting the Debtors' management in its Sarbanes-Oxley Section 404 remediation activities related to contract administration, including assistance under the direction of the Debtors in documentation of the contract administration process; (ii) interviews with stakeholders; and (iii) related administrative processes and documentation.

(f) **Valuation Services.** Providing services relating to the Debtors' Financial Accounting Standard Board's ("FASB") Statement No. 142 ("SFAS 142") Goodwill and Other Intangible Assets analysis, including: (i) assessing the fair value of two Delphi divisions, with the overall goal being to assist Debtors' management in assessing the total value of the divisions for the purpose of adhering to SFAS 142 for financial reporting purposes; and (ii) estimating the fair value of certain assets identified by the Debtors to assist in the goodwill impairment tests for the purpose of restating goodwill according to FASB's fair value standards.

8

(g)     **Tax Services.**  Providing research, compilation of data, and analysis with respect to the application of Section 382 of the Internal Revenue Code. During the term of this engagement, E&Y and the Company may mutually agree that E&Y shall provide certain additional tax services to the Company, in accordance with past practices; underline(provided), that any such additional tax services do not give rise to any auditor independence issues.

17.     The services to be provided by E&Y to the Debtors will not be unnecessarily duplicative of those provided by any other of the Debtors' professionals, and E&Y will coordinate any services performed at the Debtors' request with the Debtors' other professionals, including financial advisors and counsel, as appropriate, to avoid duplication of effort.

18.     Subject to this Court's approval of the Application, E&Y is willing to serve as the Debtors' Sarbanes-Oxley, valuation, and tax services providers and to perform the services described in the Engagement Letters on the terms set forth therein.

Qualifications Of Professionals

19.     The Debtors are familiar with the professional standing and reputation of E&Y.  The Debtors understand that E&Y is well-experienced in providing Sarbanes-Oxley, valuation, and tax services in restructurings and reorganizations, and that E&Y is well-respected for services it has rendered in large, complex chapter 11 cases on behalf of debtors and creditors throughout the United States.

20.     Prior to the Petition Date, on or about February 23, 2005, the Debtors engaged E&Y to provide Sarbanes-Oxley, valuation, and tax advisory services.  During this engagement, E&Y has developed a significant amount of institutional knowledge regarding the Debtors' businesses, operations, finances, and systems.  Such experience and knowledge will be valuable to the Debtors in their efforts to reorganize.  Accordingly, the Debtors wish to retain E&Y to provide assistance during these chapter 11 cases.

9

21.    As set forth in the Miller Affidavit, Randall J. Miller, the coordinating partner for E&Y's engagement in these cases, has more than 17 years of experience serving clients in the manufacturing, automotive, and other industries.  He is E&Y's North Central area practice leader for Business Risk Services (BRS), which provides risk-oriented services, including internal audit co-sourcing and outsourcing, Sarbanes-Oxley compliance support, and special projects, and includes practices in Ohio, Michigan, Pennsylvania, Kentucky, and New York.  He has a Bachelor of Business Administration from the University of Michigan and is a member of the Institute of Internal Auditors.

22.    The services of E&Y are deemed necessary to enable the Debtors to maximize the value of their estates and to reorganize successfully.  The Debtors submit that E&Y is well-qualified and able to represent the Debtors in a cost-effective, efficient, and timely manner.

## Disinterestedness Of Professionals

23.    The Miller Affidavit filed in support of this Application contains information available to date on E&Y's connections with other parties-in-interest, as required by Bankruptcy Rule 2014(a).  Based on the information in the Miller Affidavit, which is incorporated herein by reference, the Debtors submit that E&Y and the professionals in the firm are "disinterested persons," as that term is used in section 101(14) of the Bankruptcy Code, and are otherwise eligible to be retained under section 327(a) of the Bankruptcy Code.

## Professional Compensation

24.    Subject to this Court's approval and pursuant to the terms and conditions of the Engagement Letters, E&Y intends to charge the Debtors for services rendered based on its hourly rates for such services, as set forth below, plus reimbursement of actual expenses.

**Functional Testing And Assistance With The Delphi Corporate Accounting Policies:**

| Level | Hourly Rate |
|---|---|
| Partner/Principal | $330 |
| Senior Manager | $285 |
| Manager | $260 |
| Senior | $145 |
| Staff | $116 |
| International Rates | See Appendix A-1 to the Sarbanes-Oxley Engagement Letter. |

**IT SOX 404 And SOD Support And Certus Implementation Assistance:**

| Level | Hourly Rate |
|---|---|
| Partner/Principal | $330 |
| Senior Manager | $285 |
| Manager | $260 |
| Senior | $215 |
| Staff | $155 |
| International Rates | 10% above the listed rates. |

**Loan Staffing Services:**

| Level | Hourly Rate |
|---|---|
| Partner | $330 |
| Senior Manager | $285 |

| | |
|---|---|
| BRS Manager | $260 |
| Core Assurance Senior | $180 |
| BRS Senior | $145 |
| Staff | $116 |

**Valuation Services:**

| Level | Hourly Rate |
|---|---|
| Partner/Principal | $425 |
| Senior Manager | $350 |
| Manager | $275 |
| Senior | $225 |
| Staff | $175 |

**Tax Services:**

| Level | Hourly Rate |
|---|---|
| Partner/Principal | $650 – 750 |
| Senior Manager | $550 – 650 |
| Manager | $500 – 600 |
| Senior | $400 – 500 |
| Staff | $200 – 300 |

25.    E&Y's hourly rates are revised periodically in the ordinary course of E&Y's

business, generally on May 1st of each year.  E&Y will advise the Debtors, the U.S. Trustee, and

the committee designated to review fee applications (if any) of its new rates once they are established if a rate change is effective during the course of this engagement.

26.    E&Y intends to invoice the Debtors on a monthly basis and to apply to this Court for compensation and reimbursement of expenses in accordance with section 330(a) of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), the guidelines established by the U.S. Trustee, and orders of this Court.  E&Y acknowledges that all compensation will be subject to this Court's review and approval after notice and a hearing.

27.    Exhibits B to the Sarbanes-Oxley Engagement Letter and Valuation Engagement Letter provide that, in rendering services to the Debtors under those engagement letters, E&Y may subcontract a portion of its responsibilities to certain other member firms of Ernst & Young Global Limited ("EYGL"), as described in greater detail in the Miller Affidavit. Prior to the Petition Date, E&Y provided Sarbanes-Oxley services to the Debtors under the same subcontracting arrangement with the EYGL member firms and, at the Debtors' request, have continued this arrangement under the Sarbanes-Oxley and Valuation Engagement Letters.

28.    E&Y shall be solely responsible for all of its liabilities and obligations under the Engagement Letters, whether or not performed, in whole or part, by E&Y (or an affiliate thereof) or any EYGL member firm (or an affiliate, a subcontractor, or personnel thereof), and the Debtors shall have no recourse, and shall bring no claim, against any EYGL member firm other than E&Y, or against any of their subcontractors, members, shareholders, directors, officers, managers, partners, agents, representatives or employees (or any of their respective successors or permitted assigns), or any of their respective assets, with respect to the services provided pursuant to the Engagement Letters or otherwise under the Engagement Letters.

13

29.    EYGL member firms will assist E&Y in the provision of services under the Engagement Letters, an arrangement that is beneficial to the estate for the following reasons: (i) through an integrated approach to the provision of professional services, E&Y and the other EYGL member firms providing services under the Engagement Letters are able to provide a cohesive network worldwide of quality and efficiency to the Debtors; and (ii) having E&Y act as the clearinghouse for invoices submitted by the EYGL member firms will be more convenient to the Debtors by allowing billing to be centralized through a single invoice that settles budgeting and foreign currency issues.  This subcontracting arrangement is far more beneficial to the estates and conservative of their resources than would be the case if each EYGL member firm were required to seek separate retention by the Debtors.  Although the EYGL member firms are not undertaking full-fledged conflicts and connections checks under this arrangement, no bankruptcy policies should be offended because their work has little or no relationship to the administration of these chapter 11 cases.

30.    In the event that other EYGL member firms assist E&Y in the rendering of services under the Engagement Letters, E&Y intends to pay such EYGL member firms directly for their services, and to apply to this Court for reimbursement by the Debtors of any such payments made by E&Y to the EYGL member firms.  This Application therefore requests approval of an exception for the EYGL member firms (other than E&Y), providing services to the Debtors under the Engagement Letters, to use category codes to describe the services rendered, rather than the more detailed descriptions usually required for fee applications.

31.    In the 90 days leading up to the Petition Date, the Debtors paid E&Y approximately $6,272,138 in fees and expenses for Sarbanes-Oxley, valuation, and tax services provided to the Debtors, and in the 12 months immediately preceding the Petition Date, the

14

Debtors paid E&Y approximately $8,907,968 for such services.  As of the Petition Date, E&Y

had an outstanding balance of $72,302 due from the Debtors for prepetition Sarbanes-Oxley,

valuation, and tax services rendered and expenses incurred by E&Y (the "Prepetition Balance").

This Application proposes that $66,746 in overpayments made by the Debtors to E&Y on or

before July 1, 2005 be applied toward the Prepetition Balance, which would result in an adjusted

outstanding balance of $5,556 due from the Debtors for prepetition services and expenses

rendered (the "Adjusted Prepetition Balance").  As a condition of its retention by the Debtors,

E&Y will waive and not have a claim for the Adjusted Prepetition Balance.

    32.    At the Debtors' request, on November 1, 2005, E&Y provided the Debtors

with an invoice for postpetition fees and expenses in the amount of $649,714 for the Sarbanes-

Oxley and valuation services rendered to the Debtors between October 8, 2005 and October 31,

2005.  E&Y has not received this or any other postpetition payments from the Debtors.

    33.    The Debtors believe that E&Y's fees are fair and reasonable in light of

industry practice, market rates both inside and outside of chapter 11 proceedings, E&Y's

experience in reorganizations, and E&Y's importance to these cases.

<u>Dispute Resolution</u>

    34.    Pursuant to the Engagement Letters, the Debtors and E&Y (collectively, the

"Parties") have agreed that any controversy or claim with respect to, in connection with, arising

out of, or in any way related to the Engagement Letters or the services provided thereunder

(including any such matter involving a parent, subsidiary, affiliate, successor-in-interest, or agent

of any member of the Parties) shall be brought in this Court, or in the District Court if such

District Court withdraws the reference, and the Parties, and any and all successors and assigns

thereof, consent to the jurisdiction and venue of such court as the sole and exclusive forum

(unless such court does not have jurisdiction and venue of such claims or controversies) for the

resolution of such claims, causes of action, or lawsuits. The Parties, and any and all successors

and assigns thereof, also have agreed to waive trial by jury, such waiver being informed and

freely made. If this Court, or the District Court upon withdrawal of the reference, does not have

or retain jurisdiction over the foregoing claims or controversies, the Parties, and any and all

successors and assigns thereof, agree to submit first to non-binding mediation and, if mediation

is not successful, then to binding arbitration, in accordance with the dispute resolution

procedures set forth in Exhibits B, C, and D to the Delphi Tax, Sarbanes-Oxley, and Valuation

Engagement Letters, respectively, and attached to the Skadden Tax Engagement Letter.

Judgment on any arbitration award may be entered in any court having proper jurisdiction. The

foregoing is binding upon the Parties and any and all successors and assigns thereof.

Indemnification

35.    Pursuant to the Sarbanes-Oxley, Valuation, and Delphi Tax Engagement

Letters, to the fullest extent permitted by applicable law, the Debtors shall indemnify, defend,

and hold harmless E&Y from and against all (a) claims and causes of action, pending or

threatened, of any kind (whether based on contract, tort, or otherwise) by third parties, including

any affiliate of the Debtors, related to or arising out of (i) the use, disclosure of, or reliance on

any reports, materials, presentations, or other communications, written or otherwise, in draft or

final form, provided by E&Y (the "Reports"), or any portion, abstract, or summary thereof by

any person or entity that obtains access to such Reports, directly or indirectly, from, through, or

at the request of the Debtors, (ii) the performance of any services under the Sarbanes-Oxley,

Valuation, and Delphi Tax Engagement Letters, or (iii) the Debtors' failure to provide timely,

accurate, and complete information and resources as necessary for E&Y to perform services in

16

accordance with the Sarbanes-Oxley, Valuation, and Delphi Tax Engagement Letters

(collectively, the "Claims") and (b) liabilities, losses, damages, costs, and expenses (including,

without limitation, reasonable outside attorneys' fees and the allocable costs of in-house counsel)

suffered or incurred by E&Y in connection with any Claims; provided, however, that the Debtors

shall have no indemnification obligation under the Sarbanes-Oxley, Valuation, and Delphi Tax

Engagement Letters to the extent that a court of competent jurisdiction finally determines that a

Claim by the Debtors or a representative of the Debtors' estates has arisen out of E&Y's bad

faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

      36.   Additionally, pursuant to the Sarbanes-Oxley and Delphi Tax Engagement

Letters, E&Y shall indemnify, defend, and hold harmless the Debtors, including their directors,

officers, employees, agents, and representatives, from any and all claims, demands, actions,

damages, liabilities, costs, and expenses, including reasonable attorney fees and expenses, to the

extent arising out of or resulting from the negligence, illegal acts or willful misconduct of E&Y

and/or E&Y Personnel (as defined below) in connection with the performance of services under

the Sarbanes-Oxley and Delphi Tax Engagement Letters; provided, however, that E&Y will have

no obligation to indemnify Delphi to the extent that any such claims or damages arise out of or

result from third party claims (other than claims by governmental authorities) against the Debtors

based on any of E&Y's written or verbal work product prepared pursuant to the Sarbanes-Oxley

and Delphi Tax Engagement Letters (such as reports, analyses, projections, advice,

recommendations, and other data).  With respect to the indemnifications described in this and the

previous paragraphs, the indemnifying party shall also pay to the indemnified party any and all

costs and expenses incurred in connection with the enforcement of these indemnification

provisions.

<u>Limitation On Liability</u>

37.    Pursuant to the Sarbanes-Oxley, Valuation, and Delphi Tax Engagement Letters, the total aggregate liability of E&Y in connection with the services to be provided thereunder shall be limited to three times the professional fees paid by the Debtors to E&Y in respect of those services.  Also, neither the Debtors nor E&Y, its partners, principals, directors, officers, employees, agents, subcontractors, and/or independent contractors who are performing services on behalf of E&Y under the Sarbanes-Oxley, Valuation, and Delphi Tax Engagement Letters (collectively, the "E&Y Personnel") will be liable for consequential, punitive, or special damages (including loss of profits, data, business, or goodwill), even if advised of the likelihood of such damages.  Notwithstanding anything to the contrary otherwise set forth in the Sarbanes-Oxley, Valuation, and Delphi Tax Engagement Letters, the preceding limitations will not apply (a) in the event of any breach of the terms concerning the non-disclosure of Delphi Proprietary Information (as such term is defined in the Sarbanes-Oxley, Valuation, and Delphi Tax Engagement Letters) set forth in the Sarbanes-Oxley, Valuation, and Delphi Tax Engagement Letters, or (b) if E&Y is found to be grossly negligent, to have acted in bad faith, willfully or fraudulently, or to have engaged in self-dealing or a breach of fiduciary duty (if any). Delphi's recourse with respect to any liability or obligation of E&Y under the Sarbanes-Oxley, Valuation, and Delphi Tax Engagement Letters will be limited to the assets of E&Y, and Delphi shall have no recourse against, and shall bring no claim against, any individual partner of E&Y or any of the assets of such individuals.  The limitations of liability described in this paragraph will operate for the benefit of, and will be enforceable by, any member or affiliated firm of Ernst & Young International or any E&Y Personnel that is, together with E&Y, providing the services under the Sarbanes-Oxley, Valuation, and Delphi Tax Engagement Letters.

18

38.     Pursuant to the Skadden Tax Engagement Letter, except in cases of bad
faith, willful misconduct, or gross negligence by E&Y or where E&Y has engaged in
self-dealing or breach of fiduciary duty (if any), the total aggregate liability of E&Y to the
Debtors in connection with the performance of services or otherwise thereunder shall be limited
to the professional fees actually paid to E&Y in respect of those services.  In addition, except in
cases of bad faith, willful misconduct, or gross negligence by E&Y, or where E&Y has engaged
in self-dealing or breach of fiduciary duty (if any), neither E&Y nor its subcontractors will be
liable to the Debtors for any consequential, incidental, indirect, or special damages (including
loss of profits, data, business, or goodwill), even if E&Y is advised of the likelihood of such
damages.  In no event will E&Y or its subcontractors be liable to the Debtors for any punitive
damages in connection with the performance of services under the Skadden Tax Engagement
Letter.  E&Y will be solely responsible for the performance of the services and all other
liabilities and obligations of E&Y under the Skadden Tax Engagement Letter, whether or not
performed, in whole or in part, by E&Y, any affiliate of E&Y, or any subcontractor or personnel
of any E&Y entity.  The Debtors shall have no recourse against any E&Y entity other than E&Y,
or against any subcontractors, members, shareholders, directors, officers, managers, partners, or
employees of E&Y or any other E&Y entity, or any of the assets of any thereof, with respect to
any liability or obligations in connection with the performance of the services or otherwise under
the Skadden Tax Engagement Letter.

39.     E&Y's indemnification of the Debtors and its limitation of liability, as set
forth in the above paragraphs, are substantially the same as provisions previously agreed to by
the Debtors and E&Y under the prepetition engagement letters for Sarbanes-Oxley and valuation
services (with the exception that the Engagement Letters now provide that E&Y's limitation of

19

liability will not apply to bad faith, self-dealing or a breach of fiduciary duty, if any).  The

Application seeks an order approving the terms of these provisions, along with the Engagement

Letters.

Conclusion

40.    For the foregoing reasons, the Debtors submit that the relief requested

herein is in the best interests of the Debtors and their estates and creditors and should be

approved.

Notice

41.    Notice of this Application has been provided in accordance with the Order

Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And

Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance

With Local Bankr. R. 1007-2(e) entered by this Court on October 14, 2005 (Docket No. 245).  In

light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

Memorandum Of Law

42.    Because the legal points and authorities upon which this Application relies

are incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

20

WHEREFORE, the Debtors respectfully request that this Court enter an order

(a) authorizing the Debtors to employ and retain E&Y to provide Sarbanes-Oxley, valuation, and

tax advisory services pursuant to the terms and conditions set forth in the Engagement Letters,

effective <u>nunc</u> <u>pro</u> <u>tunc</u> to October 8, 2005, and (b) granting such other and further relief as is

just.

Dated:    New York, New York
          November 28, 2005

DELPHI CORPORATION, on behalf of itself and
certain of its subsidiaries and affiliates, as Debtors
and Debtors-in-possession

By:   /s John D. Sheehan _____
        Name: John D. Sheehan
        Title: Vice President and Chief Restructuring
            Officer

Exhibit A

**☰ɪ ERNST & YOUNG**

■

101 West Big Beaver Road
Suite 1200
Troy, Michigan  48084

**Ernst & Young LLP**  ■
Phone: (248) 457-3800
www.ey.com

November 23, 2005

Ms. Jennifer Williams
Director of Technical Accounting & Reporting
Delphi Corporation
5725 Delphi Drive
Troy, MI 48098

Dear Ms. Williams:

This letter, together with the attached Exhibits (collectively, this "Agreement"), sets forth the terms and conditions on which Ernst & Young LLP ("E&Y") will provide project assistance to Delphi Corporation and its affiliates (the "Company," "Delphi" or "Debtor") related to the requirements of Section 404 of the Sarbanes-Oxley Act of 2002 ("Section 404") as described in Project Exhibits A-1 through A-5 attached hereto (collectively, the "Services") subsequent to the Company's filing of a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

We have agreed to provide such services, contingent upon the Bankruptcy Court approving our retention in accordance with the terms and conditions which are set forth in this Agreement.

The Services are advisory in nature. E&Y will perform the Services in accordance with the applicable standards of the U.S. Public Company Accounting Oversight Board ("PCAOB").

With respect to the scope of the Services, management of the Company acknowledges that it is solely responsible for the sufficiency of the Services for its purposes and for the sufficiency of the documentation, and testing and evaluation of the Company's controls for purposes of its assessment under Section 404.   Accordingly, E&Y makes no representations or warranties regarding the sufficiency of the Services for the purposes for which this assistance was requested

A Member Practice of Ernst & Young Global

**≡∬ ERNST & YOUNG**                    ■ Ernst & Young LLP

or for any other purpose. The Company will designate one or more management-level individuals to oversee the Services being provided. Throughout performance of the Services, as well as upon completion of the Services, E&Y will meet with the Company's management to discuss E&Y's findings and recommendations resulting from the Services.

Management of the Company is responsible for (a) establishing and maintaining effective internal controls, including monitoring ongoing activities, (b) ensuring the adequacy of its internal control documentation and the maintenance thereof and (c) identifying all laws and regulations applicable to the Company's activities and ensuring the Company's compliance therewith.

The Services and the information, records, data, advice or recommendations contained in any reports, materials, presentations or other communications, written or otherwise, in draft or final form, provided by E&Y are referred to herein, collectively,  as "Reports". Except where compelled by legal process (of which the Company shall promptly inform E&Y and tender to E&Y, if E&Y so elects, the defense) the Company may not disclose, orally or in writing, any Report or any portion, abstract or summary thereof, or make any reference to E&Y in connection therewith, to any third party without obtaining the prior written consent of E&Y (which is hereby deemed given in the case of disclosure to the Company's external auditors) . Notwithstanding the foregoing, the Company shall not be required to obtain E&Y's consent in order to disclose without limitation the flowcharts, narrative descriptions or other similar documentation ("Factual Documentation") prepared by E&Y reflecting factual representations of the Company's internal control systems (including, without limitation, the risks and controls identified by the Company pertaining to those systems) when such Factual Documentation (a) does not identify or reference E&Y in any way, (b) does not contain any observations, advice, findings or recommendations of E&Y, and (c) is (i) approved by the Company as a true, complete and accurate representation of its internal control systems which are the subject of such documentation and (ii) adopted by the Company as if it were prepared by the Company in the first instance.

The restrictions in the last three sentences of the preceding paragraph shall not apply to any Report or other materials provided by E&Y containing any tax advice. The Company and its officers, directors, employees, agents and advisors may freely disclose any tax advice provided to the Company by E&Y, including with respect to the U.S. tax treatment of any transaction, together with all facts that may be relevant to understanding such tax advice.  In any event, because all such advice is provided solely for the benefit of the Company, the Company shall inform those to which it discloses such information that they may not rely upon any such advice for any purpose without E&Y's prior written consent.

**ΞII ERNST & YOUNG**                     ■ Ernst & Young LLP

E&Y shall be solely responsible for all of the liabilities and obligations of E&Y under this Agreement, whether or not performed, in whole or part, by E&Y, any affiliate of E&Y, any other member of the global Ernst & Young network or any of their respective affiliates (collectively, the "E&Y Entities," and any of them, an "E&Y Entity"), or any subcontractor or personnel of any E&Y Entity. The Company shall have no recourse, and shall bring no claim, against any E&Y Entity other than E&Y, or against any subcontractors, members, shareholders, directors, officers, managers, partners, agents, representatives or employees of any E&Y Entity (or any of their respective successors or permitted assigns), or any of their respective assets, with respect to the Services or otherwise under this Agreement.

In the event E&Y is requested or authorized by the Company or is required by government regulation, subpoena, or other legal process to produce its documents or its personnel as witnesses with respect to the Services, the Company will, so long as E&Y is not a party to the proceeding in which the information is sought, reimburse E&Y for its professional time and expenses, as well as the fees and expenses of its counsel (including the allocable cost of in-house counsel), incurred in responding to such requests. These requests will be documented with the appropriate receipts or supporting data provided.

The fees for our Services are as set forth in the respective Project Exhibits. The Services will be provided in accordance with the Terms and Conditions set forth in Exhibit B, which are incorporated herein by reference. E&Y acknowledges that payment of its fees and expenses hereunder is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 328(a), 330 and 331 of the Bankruptcy Code and any order of the Bankruptcy Court approving the retention of E&Y, (ii) any applicable fee and expense guidelines and/or orders, including the U.S. Trustee Guidelines, and (iii) any requirements governing interim and final fee applications.

We will request payment of our fees in accordance with the Bankruptcy Code, the Bankruptcy Rules, local bankruptcy rules for the Southern District of New York, the guidelines of the U.S. Trustee, and any relevant administrative orders. In addition, we will request reimbursement of our actual expenses related to this engagement, as well as fees for any time (including any time or reasonable expenses of legal counsel) we may incur in considering or responding to discovery requests or participating as a witness or otherwise in any legal, regulatory, or other proceeding as a result of our performance of these services. These requests will follow normal Delphi payment approvals as well as above.

Any controversy or claim with respect to, in connection with arising out of, or in any way related to this Agreement or the Services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of the Company or of E & Y) shall be brought in the Bankruptcy Court, or the District Court if such District Court withdraws the reference and the parties to this Agreement, and any and all successors and assigns thereof,

**Ξ‖ ERNST & YOUNG**                    ■ Ernst & Young LLP

consent to the jurisdiction and venue of such court as the sole exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits.  The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made.  If the Bankruptcy Court, or the District Court upon withdrawal of the reference does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Exhibit C to this Agreement.  Judgment on any arbitration award may be entered in any court having proper jurisdiction.  The foregoing is binding upon the Company, E & Y and any all successors and assigns thereof.

By agreement to the provision of the Services set forth in the Agreement, E & Y is not providing a guarantee to the Company that E & Y's performance of those services pursuant to the terms and conditions set forth in the Agreement will guarantee the Company's successful reorganization under Chapter 11 of Title 11 of the United States Code.

The benefits of this Agreement shall inure to the respective successors and assigns of the parties hereto and the obligations and liabilities assumed in this Agreement by the parties hereto shall be binding upon their respective successors and assigns.

Yours very truly,

*Ernst & Young LLP*

AGREED TO AND ACCEPTED BY:

DELPHI CORPORATION


By: _____
Mr. John D. Sheehan
Vice President &
Chief Restructuring Officer,
Chief Accounting Officer & Controller


Date: ____11/25/05____

**Project Exhibit A-1**

**Functional Testing**

## Scope of Services

The objective of Project A-1 is to assist management of the Company in the planning and execution of its functional testing of internal controls over financial reporting for the Company's significant accounts and processes, as identified by the Company, and to report any findings and recommendations for improvements in the controls we may identify as a result of this assistance.

The Services will include the following:

- Assistance with the planning and execution of testing of certain specific controls. We will provide you our findings and recommendations for those transaction flows and controls assigned to E&Y. E&Y will assist with the scoping of the project and integration with D&T's audit approach. E&Y will assist in conducting "404 plus one" planning sessions to help Delphi confirm the scope of testing and identify opportunities to reduce the overall scope of testing.

- E&Y will also assist management in (1) prioritizing the findings and recommendations from testing as necessary to enable management to perform its due diligence, and (2) any retesting efforts, and provide management with an additional report outlining areas for improvement at the business unit and entity level. The Services will not result in an opinion or any form of assurance on internal controls and will not constitute an audit or examination made in accordance with generally accepted auditing or attestation standards, the objective of which is the expression of an opinion on the elements, accounts, or items of a financial statement. However, E&Y will provide management of the Company with our findings and recommendations in those areas where we observe internal controls that, in our view, could be improved. The Company will designate a management-level individual or individuals to be responsible for overseeing the Services being provide. Upon completion of the Services, E&Y will meet with the Company to discuss the findings and recommendations resulting from the Services.

## Timing

- The work associated with Project A-1 will begin upon mutual agreement of the parties. E&Y will issue its report(s) periodically Or within 3 weeks of completion if appropriate.

- The summary of estimated hours by country and location within countries is as set forth in a testing plan (the "Testing Plan") to be agreed between E&Y and the Company. Any estimated hours set forth in the Testing Plan will be based upon, wants to delete those words, E&Y's preliminary discussions with the Company as to the state of the

Company's records and also will be dependent upon the Company's personnel providing adequate and timely assistance. Should E&Y's assumptions with respect to these matters be incorrect or should the condition of the current documentation, degree of cooperation, or other matters beyond E&Y's reasonable control require additional commitments by E&Y beyond those upon which the estimates are based, E&Y may be required to adjust its fees and planned completion dates. These changes would be subject to Delphi business contact approval as needed.

## Deliverables

- The product of E&Y's Services under this Project A-1 will be written status reports (the "Reports") to the Company resulting from the performance of the Services. It is the responsibility of management of the Company to review and approve the Reports and to design and implement the recommendations contained therein at its discretion.

## Management's Responsibilities and Assumptions

- E&Y assumes that the scope of this Project A-1 is primarily coordination and execution of testing as determined by Delphi.

- A sponsor at Delphi should be identified and readily available to assist with scheduling meetings, and to promptly provide us with any necessary documentation. David Bayles, Director of Sarbanes-Oxley Compliance & Internal Control will serve in this role for this project.

- E&Y will have access and provide periodic reporting regarding testing progress and results to Derek Kolano, Acting Director of Corporate Audit Services.

- Delphi team members required for meetings should be available when scheduled.

- Testing strategy will be developed by Delphi, testing work programs will be in the appropriate format to execute prior to starting the testing, testing requirements in terms of sample sizes, evidence required, etc will be developed by Delphi.

- Field level reviews only will be conducted by E&Y seniors and staff as part of executing test plans. Delphi project management will be responsible for overall reviews of testing results to verify that testing meets management's requirements.

**Project Team**

Randy Miller will be the Coordinating Partner, responsible for the provision of Sarbanes Oxley related work. Advisory partners including Sam Johnson, and others as determined by E&Y and Delphi will be included as required. John Enright, Senior Manager, will work closely with management in performing the Sarbanes Oxley services. If one or more of these individuals ceases to provide services pursuant to this agreement, Ernst & Young will so advise the Company and, if that professional is replaced, provide the Company with the name of that professional's replacement. Other staff, not identified herein, may be utilized as required to conduct our work in most efficient manner. Key personnel would be replaced by like skills and competency where appropriate.

**Fees and Billings**

E&Y's fees for the services described in this Project Exhibit A-1 will be on a time and materials basis at the rate per hour outlined below.

| Level | |
|---|---|
| Partner | $330 |
| Senior Manager | $285 |
| Manager | $260 |
| Senior | $145 |
| Staff | $116 |
| International Rates | See Appendix A1 |

- Estimated EY executive time (partner and senior (site) manager) for coordination of testing is estimated to be an additional 8% of total hours estimated in the timing section above. Fees for this time will be applied at the hourly rates outlined in the table in Appendix A1 for the US team.

- E&Y will submit invoices monthly. Expenses such as travel, meals, and accommodations will be charged as incurred according to the Exhibit D.

- License fees for use of third party software technology and software and costs associated with hardware needed by the Company for purposes of complying with Section 404 will be borne by the Company.

- E&Y is responsible for travel reservations, hotel/motel accommodations and rental cars. E&Y should make reasonable efforts to make all travel arrangements originating in U.S., Mexico or Canada through Global Experts in Travel (GET), using a special account set up for such purposes.

## Appendix A 1

## Functional Testing Global Rates

| Country | Staff | Senior | Staff | Senior | Applied Exchange Rate (Euro/Dollar Local Currency) | Local Currency |
|---------|-------|--------|-------|--------|--------------------------------------------------|----------------|
|         | Dollars | | Local Currency | | | |
| Argentina | $60 | $98 | 73 | 119 | 0.344 | Peso (ARS) |
| Australia | $140 | $190 | 183 | 248 | 0.760 | Dollar (AUD) |
| Austria | $140 | $195 | 108 | 150 | 1.300 | EURO |
| Brazil | $60 | $98 | 161 | 263 | 0.372 | Real (BRL) |
| China | $95 | $192 | 786 | 1,589 | 0.121 | Yuan (CNY) |
| Czech Republic | $111 | $209 | 2,555 | 4,840 | 30.0636 (EURO) | Koruny (CZK) |
| France | $115 | $162 | 88 | 125 | 1.300 | EURO |
| Germany | $148 | $195 | 114 | 150 | 1.300 | EURO |
| India | $64 | $119 | 2,800 | 5,200 | 0.023 | Rupee (INR) |
| Italy | $76 | $148 | 58 | 114 | 1.300 | EURO |
| Japan | $108 | $179 | 12,000 | 20,000 | 0.009 | Yen (JPY) |
| Korea | $80 | $120 | 82,474 | 123,711 | 0.001 | Won (KRW) |
| Mexico | $70 | $100 | 791 | 1,130 | 0.089 | Peso (MXP) |
| Morocco | $74 | $115 | 671 | 952 | 0.111 | Dirham (MAD) |
| Netherlands | $148 | $195 | 114 | 150 | 1.300 | EURO |
| Poland | $104 | $208 | 325 | 650 | 4.06189 (EURO) | Zlotych (PLN) |
| Portugal | $75 | $115 | 58 | 88 | 1.300 | EURO |
| Romania | $65 | $111 | 1,915,605 | 3,256,529 | 38312.1 (EURO) | Lei (ROL) |
| Singapore | $100 | $165 | 164 | 271 | 0.610 | Dollar (SGD) |
| Spain | $74 | $115 | 57 | 81 | 1.300 | EURO |
| Turkey | $66 | $120 | 90 | 164 | 1.3408 | New Lira (TRY) |
| UK | $145 | $190 | 78 | 102 | 1.860 | Pound (GBP) |
| USA | $116 | $145 | $116 | $145 | 1.000 | USD |

**US Project Management Rates**

| | |
|---|---|
| Partner | $330 |
| Site Manager | $260 |

AGREED TO AND ACCEPTED BY:

DELPHI CORPORATION

By: _____

Mr. John D. Sheehan
Vice President & Chief Restructuring Officer,
Chief Accounting Officer & Controller

Date: _____


By: _____

Mr. Derek Kolano
Acting Director
Corporate Audit Services

Date: _____11/28/05_____

**Project Exhibit A-2**

## IT SOX 404 Support and SOD

### Project Identification & Specific Description of Services

E&Y will assist Delphi IT in assessing, testing and remediating the IT General Computer Controls environment for applications supporting financial process in accordance with compliance to Sarbanes Oxley Section 404 legislation. Application controls will be considered as required throughout the process. Additionally, E&Y will assist Delphi with their remediation effort of the Segregation of Duties (SOD) issue raised during the 2004 404 assessment. The work associated with this Project Exhibit A- 2 ("Project 2") will begin subsequent to the Company's filing of a Chapter 11 petition in the Bankruptcy Court.

E&Y will also assist in the remediation of Segregation of Duties, which includes organizing and analyzing relevant end user security data against defined business conflicts, providing subject matter expertise on the required user access/profile clean-up, and supporting the design and implementation of preventive and detective processes/tools.

E&Y will provide resources to support Delphi with the following deliverables and others as required by the teams:

Pertaining to the 2005 SOX IT 404 management testing:

- Project approach and plan to ensure adequate preparation to meet Sarbanes-Oxley Section 404 compliance requirements and project milestone dates.
- Training the IT organization to complete self assessment documents and conduct testing
- Validation of controls through testing of assigned critical sites (which includes retesting of remediate sites)
- Report on identification of control gaps and remediation recommendations

Pertaining to the 2005 SOD issue resolution:

- Project guidance and subject matter expertise to support the SOD remediation requirements and project milestone dates
- Report of structured analysis of SOD conflict data to support remediation tracking and management reporting
- Training the organization on new processes to prevent/detect SOD conflicts
- Report on validation of SOD IT controls through testing and analysis

The deliverables, other than the templates, described in this Project Exhibit A-2 shall be deemed to be "works made for hire" under the federal copyright laws. However, the Deliverables include data, modules, components, designs, utilities, subsets, objects, program listings, tools, models,

methodologies, programs, systems, analysis frameworks, leading practices, and specifications ("Technical Elements") owned or developed by E&Y prior to, or independently from, its engagement hereunder and E&Y retains all rights thereto. Accordingly, to the extent that any Technical Elements are integrated into any Deliverables, E&Y hereby grants to the Company a license to use, copy and modify such Technical Elements as integrated into such Deliverables for internal purposes only. Notwithstanding anything to the contrary in this section, the Reports shall be subject to the limitations on distribution set forth in the Agreement to which this Exhibit is attached.

## Timeline and Work Plans

- E&Y and the Company shall mutually agree upon a time frame for Project A-2.

## Management Responsibilities and Assumptions

- A sponsor at Delphi should be identified and readily available to assist with scheduling meetings, and to promptly provide us with any necessary documentation. Mr. Lynn Eady, Director of Global Process - IT will serve this role for this project.
- E&Y will have access and provide periodic reporting regarding testing progress and results to Derek Kolano, Acting Director of Corporate Audit Services.
- Delphi team members required for meetings should be available when scheduled;
- Requests for changes in the project scope, timing and/or approach will be communicated between the parties on a timely basis. These changes would be subject to Delphi business contact approval as needed.

Tammy Izzo will be the engagement Partner, responsible for the provision of the IT Sarbanes Oxley related work. Advisory partners as determined by E&Y will be included as required. Andrew Tanner, Senior Manager, will work closely with management in performing the IT Sarbanes Oxley services. If one or more of these individuals ceases to provide services pursuant to this agreement, Ernst & Young will so advise the Company and, if that professional is replaced, provide the Company with the name of that professional's replacement. Other staff, not identified herein, may be utilized as required to conduct our work in most efficient manner. Key personnel would be replaced by like skills and competency where appropriate.

## Fee Arrangements

The services set forth in this Project Exhibit A-2 shall be provided at hourly rates for the US E&Y resources staffing this project. International rates will be 10% above the listed rates. The currently applicable US rates are set forth below.

| RESOURCE LEVEL | Currently Applicable US Hourly Rates |
|---|---|
| Partner/Principal | $330 |
| Senior Manager | $285 |
| Manager | $260 |
| Senior | $215 |
| Staff | $155 |

The domestic and international resources will be agreed upon with Delphi and E&Y as required and as resources are available. The total fees will be billed based upon the hours incurred at this discounted rate, plus expenses.  Travel expenses to Detroit and other locations may be required.

E&Y will provide Delphi with monthly billing information of its fees and expenses and forecasted fees for the following month.

AGREED TO AND ACCEPTED BY:

DELPHI CORPORATION

By: _____
Mr. John D. Sheehan

Vice President &
Chief Restructuring Officer,
Chief Accounting Officer &
Controller

Date: ___11/25/05___

By: _____
Ms. Bette Walker

Chief Information Officer

Date: ___11/28/05___

By: _____
Mr. Derek Kolano

Acting Director
Corporate Audit Services

Date: ___11/28/05___

**Project Exhibit A-3**

**Assistance in connection with Delphi Corporate Accounting Policies ("DCAP")**

<u>**Scope of Services**</u>

The objectives of this Project A-3 are to assist management of Delphi in the development of the organization, format and content update of its Delphi Corporate Accounting Policies manual. The primary emphasis of this Project A-3 will involve providing the Company with recommended updates to the DCAP to reflect references to and or descriptions of current US Generally Accepted Accounting Principles that may be applicable to the Company.

The Services will include the following:

- Assistance with the development of the overall organization of the policies within the DCAP, and the content and format of the policies with the objective of improving the functionality of the DCAP for Delphi users.

- Recommendations as to references to and/or descriptions and examples of US GAAP that should be considered by management for inclusion in the DCAP.

- Recommendations relative to the means of distributing the DCAP to Delphi personnel on a global basis, for training and development programs using the DCAP and ongoing maintenance of the DCAP.

<u>**Timing**</u>

- E&Y and the Company shall mutually agree upon a time frame for Project A-3. E&Y and the Company will co-develop the taxonomy of the DCAP as well as the standard policy content and layout and work on the policies designated by the Company.

<u>**Deliverables**</u>

The product of the Project A-3 services will be written recommendations as to proposed revisions to the DCAP. The proposed revisions will provide references to or descriptions of US GAAP that may be applicable to the Company. E&Y will also provide recommended examples illustrating the US GAAP principles in those policies where we jointly agree it will be of benefit to the DCAP users. It is the responsibility of management of the Company to review and approve the proposed DCAP revisions. E&Y will not render an attestation or assurance report or opinion under this Project A-3, nor will the services constitute (1) an audit, review or examination of financial statements in accordance with generally accepted auditing standards, (2) an engagement to issue a report or reports in accordance with Statement on Auditing Standards (SAS) No. 50, "Reports on the Application of Accounting Principles" as amended by SAS No. 97, (3) an

examination of prospective financial statements in accordance with standards established by the AICPA or (4) a review to detect fraud or illegal acts. The services will not include preparation of Reports relating to the effectiveness of internal controls over financial reporting under Section 404 of the Sarbanes-Oxley Act. The Services will not include any procedures to test compliance with the laws or regulations of any jurisdiction. None of the Services or any Reports will constitute any legal opinion or advice.

## Management's Responsibilities, Assumptions and Other Matters

- A sponsor at Delphi should be identified and readily available to assist with scheduling meetings, and to promptly provide us with any necessary documentation. Jennifer Williams, Director of Technical Accounting & Reporting, will serve in this role for this project.

- Delphi will review and approve the overall organization and content of the DCAP and all proposed DCAP revisions. Delphi will also assume sole responsibility for the conclusions as to the interpretation and applicability of US GAAP to its transactions and financial reporting. Jennifer Williams, Director of Technical Accounting & Reporting, will serve as the project lead for coordinating both Delphi's process for the review and approval of all DCAP revisions proposed as part of this scope of work, and for the determination of the applicability and interpretation of US GAAP.

- Delphi project team members will take responsibility for the evaluation of the completeness and accuracy of any internal controls documentation, business policy documentation, closing schedule information, inter company allocations, charges and other transfers, or chart of account references included in the DCAP.

- Delphi project team members will assess the need for clarification of or additions to its existing DCAP based on inputs from internal sources including but not limited to, the results of its external integrated audit, the results of internal audits, new business or transaction activities that were not previously contemplated in the DCAP, documented inquiries of or interviews with DCAP users, and other sources as appropriate.

- Delphi team members required for meetings should be available when scheduled.

Jeff Henning will be the engagement Partner, responsible for the provision of the services. Advisory partners as determined by E&Y will be included as required. Matt Pagac, manager, will work closely with management in performing the services. If one or more of these individuals ceases to provide services pursuant to this agreement, Ernst & Young will so advise the Company and, if that professional is replaced, provide the Company with the name of that professional's replacement. Other staff, not identified herein, may be utilized as required to conduct our work in most efficient manner. Key personnel would be replaced by like skills and competency where appropriate.

**Fees and Billings**

- Our fees for these services will be on a time and materials basis, at the rate per hour outlined below.

  | Level | |
  |---|---|
  | Partner | $330 |
  | Senior Manager | $285 |
  | Manager | $260 |
  | Senior | $145 |
  | Staff | $116 |

- E&Y will conduct the initial planning, including the co-development of the design of standard policy content, the overall organization of the DCAP and the mutual agreement as to the approach, priorities and timing at our cost.

- E&Y will submit our invoices monthly. Expenses such as travel, meals, and accommodations will be charged as incurred according to the Agreement, including Exhibit D.

AGREED TO AND ACCEPTED BY:

DELPHI CORPORATION

By: _____

Mr. John D. Sheehan
Vice President &
Chief Restructuring Officer,
Chief Accounting Officer & Controller

Date: _____

**Project Exhibit A-4**

**Certus Implementation Assistance**

<u>**Project Identification & Specific Description of Services**</u>

E&Y will assist the Company in the implementation of the Certus Sarbanes Compliance Tool. The Company requires assistance in identifying functional / technical requirements, and working with Certus and Management of the Company to implement the application in accordance with those requirements. E&Y will provide two resources for assisting in this effort; these resources will be allocated according to the project plan developed by the Company not to exceed two full-time equivalents. The Company will provide executive oversight for this project.

E&Y will assist in the completion of the following activities:

- General project management responsibilities with direction from the Company
- Assist in documenting the functional, technical, and system requirements
- Assist in designing the tool functionality according to the company's specifications
- Assist in the design and execution of integrated testing
- Assist in the development and deployment of user training

E&Y will provide resources to support the Company with developing the deliverables the Company deems appropriate for the project. The engagement is based on time and materials, not deliverables. The deliverables are a guide to the overall project.

<u>**Timeline and Resources**</u>

E&Y and the Company shall mutually agree upon a time frame for Project A-4.

<u>**Management Responsibilities, Assumptions and Other Matters**</u>

- A sponsor at the Company should be identified and readily available to assist with scheduling meetings, and to promptly provide us with any necessary documentation.
- The Company team members required for meetings should be available when scheduled;
- Requests for changes in the project scope, timing and/or approach will be communicated between the parties on a timely basis.
- The person signing this scope change has the appropriate authority to sign this scope change.

Tammy Izzo will be the engagement Partner, responsible for the provision of the IT Sarbanes Oxley related work. Advisory partners as determined by E&Y will be included as required. Andrew Tanner, Senior Manager, will work closely with management in performing the IT Sarbanes Oxley services. If one or more of these individuals ceases to provide services pursuant

to this agreement, Ernst & Young will so advise the Company and, if that professional is replaced, provide the Company with the name of that professional's replacement. Other staff, not identified herein, may be utilized as required to conduct our work in most efficient manner. Key personnel would be replaced by like skills and competency where appropriate.

**Fee Arrangements**

The fees for the approved services set forth in this Project Exhibit A-4 will be at the hourly rates set forth below, plus expenses. Travel expenses to Detroit and other locations may be required. Travel is subject to the terms and conditions set forth in Exhibit D.

Such hourly rates may be increased after December 31, 2005.

| RESOURCE LEVEL | Current US Hourly Rates |
|---|---|
| Partner/Principal | $330 |
| Senior Manager | $285 |
| Manager | $260 |
| Senior | $215 |
| Staff | $155 |

E&Y will provide Delphi with monthly billing information of our fees and expenses and forecasted fees for the following month.

AGREED TO AND ACCEPTED BY:

DELPHI CORPORATION

By: _____

Mr. John D. SheehanVice President &
Chief Restructuring Officer,
Chief Accounting Officer & Controller

Date: _____

**Project Exhibit A-5**

## Loan Staffing

<u>Scope of Services</u>

E&Y will provide certain professional personnel of E&Y (the "Personnel") for the purpose of assisting the Company with the documentation process related to specific projects as mutually agreed by E&Y and the Company (collectively, such activities hereinafter referred to as "Project A-5"). With respect to Project A-5, E&Y will provide the Personnel to perform the services described below and such other related services as requested by appropriate members of the Company's management and agreed to by E&Y.

For its initial project under Project A-5, E&Y will provide Personnel to Delphi to support Delphi's management in its SOX 404 remediation activities related to contract administration. This support will include assistance under the direction of Delphi in documentation of the contract administration process, interviews with stakeholders, and related administrative processes and documentation.   The timing of this project will be from the date of approval by the Bankruptcy Court of the retention of E&Y for approximately six weeks with the option to extend this timing based on mutual concurrence from E&Y and Delphi.

The Personnel will support the activities of the Company's employees in connection with the Project A-5, on a "loaned staff" basis.  Accordingly, the Company will designate a management-level employee to be responsible for providing general directions to, and supervising the work of, the Personnel in connection with each project.  In providing the Services, the Personnel will not perform any management functions or undertake any managerial responsibilities for the Company, including (without limitation) establishing and maintaining an effective internal control system, record keeping, supervising Company personnel or making decisions on behalf of the Company. Documents and other work product produced by the Personnel in connection with the Services will constitute the internal work product of the Company, and the Company shall not reference E&Y (including, without limitation, by using E&Y's name or the names of any global E&Y-associated firm) in any way with respect to such work product.  Given the loaned staff nature of the Services, E&Y will not subject the work product to its normal practices of partner level review and quality control, and E&Y assumes no responsibility with respect to the final work product.  To the extent that any of the Personnel signs or initials any work product (including, without limitation, work papers), it will be deemed to be for identification purposes only.  No Reports will be provided under this Project A-5.

**Fees and Expenses**

The Company shall pay E&Y's fees for the Services, which are based on the hourly rates set forth below.

| Hourly Rates | |
|---|---|
| Partner | $330 |
| Senior Manager | $285 |
| BRS Manager | $260 |
| Core Assurance Senior | $180 |
| BRS Senior | $145 |
| Staff | $116 |

AGREED TO AND ACCEPTED BY:

DELPHI CORPORATION

By: _____

John D. Sheehan Vice President &
Chief Restructuring Officer,
Chief Accounting Officer & Controller

Date: ___11/25/05_____

**Exhibit B**
**Revised Delphi/EY Previously Agreed to Terms and Conditions on file with**
**Delphi General Auditor**

GENERAL TERMS AND CONDITIONS

1.      Agreement.

Upon approval by the Bankruptcy Court of the retention of E&Y by the Company and the terms and conditions of this Agreement, this Agreement will supersede any and all prior agreements or arrangements between the Company and E&Y with respect to the Services or other matters contemplated by this Agreement, including, specifically, the engagement letters dated February 23, 2005,_April 18, 2005, and April 20, 2005. It is agreed that Ernst & Young LLP ("E&Y") will provide to the Company the services (the "Services") described in the Project Exhibits as defined in the accompanying engagement letter (the "Engagement Letter") to which this Exhibit B is attached (the Engagement Letter, the Project Exhibits, this Exhibit B and Exhibits C and D are collectively referred to as this "Agreement"). For purposes of this Agreement, the terms "E&Y" include any affiliates of E&Y identified in any Project Exhibit as performing any of the Services, and the term "Delphi" includes any subsidiaries and affiliates of Delphi for which the Services are performed. This Agreement constitutes the entire and sole agreement between Delphi and E&Y (and merges all prior and contemporaneous communications) with respect to the subject matter of this Agreement.

2.      Conduct of E&Y Personnel.

E&Y will take all reasonable steps to assure that all of its partners, principals, directors, officers, employees, agents, subcontractors and/or independent contractors who are performing Services on behalf of E&Y (collectively, "E&Y Personnel") are competent to perform the Services. E&Y will require all E&Y Personnel who are performing any work on Delphi's premises to comply with all of Delphi's regulations and policies that have been provided to E&Y in writing. Delphi, in its sole discretion, has the right to: (a) bar any of E&Y Personnel from Delphi's premises for failure to observe Delphi's regulations or policies, (b) require that E&Y promptly remove from Delphi's premises any of E&Y Personnel who violate any of Delphi's regulations or policies, and (c) require that E&Y cease using any of E&Y Personnel to perform the Services who are reasonably unacceptable to Delphi. Delphi will confer with E&Y to discuss Delphi's concerns prior to requiring removal of any E&Y Personnel. E&Y will replace any barred or removed E&Y Personnel with E&Y Personnel reasonably acceptable to Delphi.

3.      Right to Employ.

Either party is free, at any time after prior discussions and consultation with the other party, without compensation to the other, to offer employment to or to employ the employees of the other party; provided, however, that if any E&Y Personnel that are performing Services under this Agreement accept employment with Delphi during the term of this Agreement, the schedule

for E&Y's performance of the Services will be equitably adjusted to the extent necessary to address any resulting material adverse impact on E&Y's ability to continue to perform Services in accordance with this Agreement.

4.    E&Y Personnel.

E&Y Personnel furnished by E&Y to perform the Services are and will remain E&Y's employees and/or independent contractors and, under no circumstances, will any E&Y Personnel furnished by E&Y be deemed to be Delphi's employees or agents.  E&Y is solely responsible, at E&Y's sole cost and expense, for (i) the fulfillment of all obligations to E&Y Personnel and (ii) the compliance by E&Y and E&Y Personnel with all laws, regulations, orders and other governmental requirements applicable to performance of the Services.

5.    Professional Fees.

Subject to Bankruptcy Court approval, Delphi will compensate E&Y for actual Services performed as set forth in the Agreement and the respective Project Exhibits.

6.    Expenses.

Subject to Bankruptcy Court approval, Delphi will reimburse E&Y for all reasonable costs and expenses E&Y incurs in connection with the Services as set forth in the Agreement and the respective Project Exhibits; provided, however, that E&Y must obtain prior approval of Delphi for any individual reimbursable expenses in excess of $2,500 or for reimbursable expenses which exceed or are anticipated to exceed an aggregate of $10,000 during any calendar month.  E&Y will not charge any markup, overhead, profit or other fees on the reimbursable expenses.  The provisions of Exhibit D will govern Delphi's reimbursement obligations.

7.    Taxes.

Unless otherwise agreed in a Project Exhibit, any applicable taxes imposed on E&Y in connection with the performance of the Services (except for taxes imposed on income) will be invoiced to, and paid by, Delphi in addition to fees and expenses.

8.    Standard of Performance.

E&Y will exercise due professional care and competence in the performance of the Services, and all of the Services will be performed in accordance with applicable professional standards.

EXCEPT AS STATED ABOVE, E&Y MAKES NO WARRANTIES OF ANY KIND OR NATURE, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE, OR WARRANTIES OF ANY PRODUCTS OR SERVICES PROVIDED BY A THIRD PARTY VENDOR.

9.            Limitation of Liability.

The total aggregate liability of E&Y in connection with the Services or otherwise arising out of this Agreement, regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranty, failure of essential purpose or otherwise, shall be limited to three (3) times the professional fees paid by Delphi to E&Y in respect of the Services.  Also, E&Y, E&Y Personnel, or Delphi will not be liable for consequential, punitive or special damages (including loss of profits, data, business or goodwill), regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranties, failure of essential purpose or otherwise, and even if advised of the likelihood of such damages.  Notwithstanding anything to the contrary otherwise set forth herein, the preceding limitations shall not apply (i) in the event of any breach of Section 11 below relating to Delphi Proprietary Information or (ii) if E&Y is found to be grossly negligent or to have acted in bad faith, willfully or fraudulently, or to have engaged in self-dealing or breach of fiduciary duty (if any).  Delphi's recourse with respect to any liability or obligation of E&Y hereunder shall be limited to the assets of E&Y, and Delphi shall have no recourse against, and shall bring no claim against, any individual partner of E&Y or any of the assets of such individuals. The provisions of this Section 9 shall operate for the benefit of, and shall be enforceable by, any Ernst & Young International member or affiliated firm or any E&Y Personnel that is, together with E&Y, providing the Services hereunder.

To the fullest extent permitted by applicable law, the Company shall indemnify, defend and hold harmless E&Y, from and against all (A) claims and causes of action, pending or threatened, of any kind (whether based on contract, tort or otherwise) by third parties, including any affiliate of the Company, related to or arising out of (i) the use, disclosure of or reliance on, any Report or any portion, abstract or summary thereof by any person or entity that obtains access to it, directly or indirectly, from, through or at the request of the Company, (ii) the performance of any services under this Agreement, or (iii) the Company's failure to provide timely, accurate and complete information and resources as necessary for E&Y to perform services in accordance herewith (collectively, "Claims") and (B) liabilities, losses, damages, costs and expenses (including, without limitation, reasonable outside attorneys' fees and the allocable costs of in-house counsel) suffered or incurred by E&Y in connection with any Claims, provided, however, that the Company shall have no indemnification obligation hereunder to the extent that a court of competent jurisdiction finally determines that a Claim by the Company or a representative of the Debtors' estate has arisen out of E&Y's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

E&Y shall indemnify, defend and hold harmless Delphi, including its directors, officers, employees, agents and representatives, from any and all claims, demands, actions, damages, liabilities, costs and expenses, including reasonable attorney fees and expenses, to the extent arising out of or resulting from the negligence, illegal acts or willful misconduct of E&Y and/or E&Y Personnel in connection with the performance of Services under this Agreement, provided, however, that E&Y will have no obligation to indemnify Delphi to the extent that any such claims or damages arise out of or result from third party claims (other than claims by governmental authorities) against Delphi based on any of E&Y's written or verbal work product

prepared pursuant to this Agreement (such as reports, analyses, projections, advice, recommendations and other data).

In each case, the indemnifying party shall also pay to the indemnified party any and all costs and expenses incurred in connection with the enforcement of these indemnification provisions.

10.    Federal Confidential Communications Privilege.

A confidentiality privilege under Internal Revenue Code Section 7525 may pertain to certain communications between E&Y personnel and Delphi regarding federal tax advice provided pursuant to this engagement.  By retaining E&Y, Delphi agrees that E&Y is instructed to claim the privilege on Delphi's behalf, with respect to any applicable communications, up to and until such time as Delphi may waive any such privilege in writing.  As disclosure of any such confidential communications to the Internal Revenue Service or other third party may cause any confidentiality privilege to be waived, each party shall notify the other party if the Internal Revenue Service or other third party requests information about any tax advice or tax advice documents provided by E&Y.

Delphi understands that E&Y makes no representation, warranty, or promise, and offers no opinion with respect to the applicability of such confidentiality privilege to any communication. Delphi agrees to indemnify E&Y for any attorney's fees and other costs and expenses incurred by E&Y in defending the confidentiality privilege on Delphi's behalf. E&Y agrees to promptly notify Delphi of any claim for which E&Y seeks indemnification and Delphi shall have the right to conduct the defense or settlement of any such claim at Delphi's sole expense, and E&Y shall cooperate with Delphi.  E&Y shall nonetheless have the right to participate in such defense at its own expense and to approve the settlement of any claim hereunder that imposes liability or obligation.

11.    Non-Disclosure of Proprietary Information.

"Delphi Proprietary Information" means any information concerning the business and affairs of Delphi which is not publicly available at the time disclosed to or learned by E&Y or any of E&Y Personnel and which is identified by Delphi as "Confidential" and/or "Proprietary" or which is known, or under all of the facts and circumstances should reasonably have been known, by E&Y to be considered by Delphi as confidential and/or proprietary.  Delphi Proprietary Information includes, without limitation, this Agreement, trade secrets, product specifications, data, know-how, formulas, compositions, processes, designs, sketches, photographs, samples, inventions, concepts, ideas, information, past, current and planned research and development, past, current and planned manufacturing or distribution methods and processes, price lists, business plans, reports, computer software and programs (including object code and source code), databases, notes, analyses, compilations, studies and other materials or intangibles.  Delphi Proprietary Information also includes any materials or information that contain or are based on any other Delphi Proprietary Information, whether prepared by E&Y, Delphi, E&Y Personnel or any other person.

In connection with E&Y's performance of Services, Delphi may disclose Delphi Proprietary Information to E&Y. All Delphi Proprietary Information disclosed, furnished or made available to E&Y or to E&Y Personnel and all Delphi Proprietary Information generated or developed by E&Y or E&Y Personnel will be treated as confidential by E&Y and E&Y Personnel, and E&Y and E&Y Personnel will use reasonable efforts to avoid and prevent disclosure of Delphi Proprietary Information to third parties, either in whole or in part, except upon Delphi's prior written authorization. E&Y will be responsible and liable to Delphi for the violation by any of E&Y Personnel of these confidentiality obligations.

E&Y retains the right to use its knowledge, experience, and know-how, including processes, ideas, concepts and techniques developed in the course of performing the Services. If, during the course of performing the Services, E&Y discloses to Delphi any proprietary algorithms, formulae, tools, techniques, methods, processes, computer software or programs of E&Y ("E&Y Proprietary Information"), Delphi agrees to treat such E&Y Proprietary Information as confidential and use reasonable efforts to avoid and prevent disclosure of such E&Y Proprietary Information to third parties, provided that (i) E&Y informs Delphi of the proprietary nature of such E&Y Proprietary Information in advance of any such disclosure, (ii) E&Y marks all documents or other physical media containing E&Y Proprietary Information as "Confidential" or "Proprietary", (iii) E&Y discloses such information only to those personnel of Delphi which have a reasonable need to know such E&Y Proprietary Information and (iv) does not include such E&Y Proprietary Information (as opposed to the results generated by use or application of the E&Y Proprietary Information) in any work product delivered to Delphi under this Agreement.

If this engagement relates to a strategy offered by E&Y to Delphi that is designed to reduce or defer federal income tax for a direct or indirect corporate participant, pursuant to Treasury Regulation section 301.6111-2(c), Delphi (and each employee, representative, or other agent of Delphi) is expressly authorized to disclose the structure and tax aspects of the strategy with any and all persons, without limitation of any kind.

Written advice provided by E&Y to Delphi is for the information and use of Delphi only and may not be relied upon by any third party without the express written permission of E&Y.

The foregoing obligations under this Section 11 shall not apply to the extent that any information (i) is at the time of disclosure, or thereafter becomes, part of the public domain through a source other than the receiving party, (ii) is subsequently learned by the receiving party from a third party that has a legal right to make such disclosure and does not impose an obligation of confidentiality on the receiving party, (iii) was known to the receiving party at the time of disclosure by the disclosing party, (iv) was generated independently by the receiving party before disclosure by the disclosing party, or (v) is required to be disclosed by the receiving party by law, regulation, subpoena or other process, or applicable professional regulations.

12.    Subcontracting.

E&Y may subcontract a portion of its responsibilities under this Agreement without Delphi's prior written approval to any of the E&Y Entities; provided, however, that E&Y shall remain fully and solely responsible for all liabilities and obligations, including fiduciary duty (if any),  of E&Y under this Agreement.

13.    Changes and Delays.

In the event that (i) Delphi requires a change in the scope of the Services, (ii) any change of applicable law or regulation affects the timing or performance of the Services or (iii) any action by Delphi or a third party (other than E&Y Personnel) affects the timing or performance of the Services, the fees and/or schedule for performance for the Services will be equitably adjusted by the parties subject to receipt of all necessary Bankruptcy Court approvals and notification to the U.S. Trustee's office and any committee designated to review fee applications (the "Fee Review Committee").

If either party is unable to perform its obligations in accordance with this Agreement as a result of an event or occurrence beyond the reasonable control of the affected party and without the affected party's fault or negligence, then any delay or failure to perform under this Agreement that results from such event or occurrence will be excused for so long as such event or occurrence continues, provided, however, that the affected party gives written notice of such delay (including the anticipated duration of the delay) to the other party as soon as possible after the event or occurrence (but in no event more than three (3) days thereafter).  Such events and occurrences may include, by way of example and not limitation, natural disasters, fires, floods, windstorms, severe weather, explosions, riots, wars, sabotage, labor problems (including lockouts, strikes and slowdowns), equipment breakdowns and power failures.  If the affected party fails to provide adequate assurances that any delay will not exceed thirty (30) days or if any delay lasts more than thirty (30) days, the other party may terminate this Agreement without further liability.

To the extent that any Project Exhibit provides that E&Y's performance under this Agreement is contingent upon specific action or cooperation of Delphi, including the supply to E&Y of specific resources, approvals, and information, any delays in E&Y's performance which occur as a result of the failure or untimely performance by Delphi shall be excused to the extent of any such delay or untimely performance by Delphi and E&Y shall not incur any liability to Delphi as a result of any such delay or untimely performance by Delphi.  If any such delay or untimely performance by Delphi lasts for thirty (30) days or more, E&Y shall be entitled to terminate this Agreement by giving written notice to Delphi, such termination to be effective on the date indicated in said notice.

14.    Term and Termination.

This Agreement may be terminated at any time by the Company or E&Y, but in any event this Agreement will expire upon the earlier of (i) completion of the Services or (ii) the effective date of the Company's confirmed plan of reorganization, or liquidation of the Company's assets under Chapter 11 or 7 of Title 11 of the United States Code, or otherwise. If either party terminates this Agreement, in addition to notice to the other party, the terminating party shall provide not less than three (3) days' prior written notice to the Bankruptcy Court, the U.S. Trustee's office, the Creditor's Committee and the Fee Review Committee (if any). The provisions of this Agreement relating to indemnification, limitation of liability, fees and expenses and alternative dispute resolution will remain operative and in full force and effect regardless of any termination or expiration of this Agreement and shall survive completion of the Company's bankruptcy whether through a confirmed plan of reorganization, liquidation of the Company's assets under Chapter 11 or 7 of Title 11 of the United States Code, or otherwise. If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable, in whole or in part, the remaining portions of this Agreement shall remain in full force and effect.

15.    Conflict.

In the event of any conflict, ambiguity or inconsistency between this Agreement and any other agreement relating to the Services, including any preprinted terms and conditions on Delphi's purchase orders, the terms and conditions of this Agreement shall govern.

16.    Survival.

The provisions of this Agreement which give the parties rights beyond termination of this Agreement will survive any termination of this Agreement.

17.    Severability.

If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable, in whole or part, the remaining portions of this Agreement shall remain in effect.

# EXHIBIT C

## Dispute Resolution Procedures

### *Mediation*

A party shall submit a dispute to mediation by written notice to the other party or parties. The mediator shall be selected by the parties. If the parties cannot agree on a mediator, the CPR Institute for Dispute Resolution ("CPR") shall designate a mediator at the request of a party. Any mediator must be acceptable to all parties.

The mediator shall conduct the mediation as he/she determines, with the agreement of the parties. The parties shall discuss their differences in good faith and attempt, with the mediator's assistance, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and shall therefore be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. The mediation proceedings shall not be recorded or transcribed.

Each party shall bear its own costs in the mediation. The parties shall share equally the fees and expenses of the mediator.

If the parties have not resolved a dispute within 90 days after written notice beginning mediation (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. In addition, if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the meditation requirement to have been waived and may proceed with arbitration.

### *Arbitration*

The arbitration will be conducted in accordance with the procedures in this document and the CPR Rules for Non-Administered Arbitration ("Rules") as in effect on the date of the Agreement, or such other rules and procedures as the parties may agree. In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, to be selected in accordance with the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may be appointed unless he or she has agreed in writing to these procedures.

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. Damages that are inconsistent with any applicable agreement, that are punitive in nature, or that are not measured by the prevailing party's actual damages, shall be unavailable in arbitration or any other forum. The parties expressly waive the right to such damages, and the arbitrators shall

have no power to award them unless the foregoing waiver is invalid or unenforceable. The arbitration panel shall have no power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only in accordance with the Rules or applicable professional standards. Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary to comply with applicable law, regulatory requirements or professional standards.

The result of the arbitration shall be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

**Exhibit D**

**Travel and Per Diem Reimbursement**

A.     If E&Y Personnel are required by Delphi to travel as an incidental requirement in performing services for Delphi, then such travel and per diem expenses, subject to prior written approval of Delphi, and subject to any guidelines established by the Bankruptcy Court or the U.S. Trustee, will be reimbursable as follows:

1. Air Travel - Economy/Coach class only for U.S. travel.  Business class is permitted for international travel.

2. Hotel - E&Y will exercise good, sound business judgment and discretion in choosing hotels, such as a moderately priced chain hotels or hotels that offer discounted corporate rates.  Where extended travel is involved, reduced rates may be available and should be requested.

3. Rental cars - Compact or intermediate class only.  The cost of collision damage waiver and personal accident insurance is the responsibility of E&Y.

4. Mileage Allowance - Reimbursement will be at $0.405 per mile for the miles which are in excess of his or her normal commute from home to work and back.  When permanently assigned to another location, even if the new location is temporary, E&Y will not be reimbursed for excess miles, additional driving time, etc.

5. Expense Reports - Customarily available receipts must be attached to expense reports E&Y submits.  Detailed receipts, other than restaurant tabs, are required for all meals and other expenditures of $25.00 or more.

6. Meals - Meals will not be reimbursed for non-overnight trips, except in the case of late return occasioned by travel outside normal working hours.  Reimbursement for meals will be the actual and reasonable expenses paid by E&Y.

7. Extended Travel - E&Y should review the home visit policy prior to a trip.  Generally, the following provisions apply:

   - If the travel expense is less than the living expense in the temporary location, E&Y will be reimbursed for travel to the permanent location every week.

   - If the travel expense is more than the living expense in the temporary location, E&Y will be reimbursed for travel to the permanent location every two weeks.

   - Excess expenses due to frequent travel or stays will not be reimbursed by Delphi without its prior written approval.

8.  Miscellaneous - When E&Y chooses an alternative method of transportation, e.g., to drive instead of fly, reimbursement, including meals and lodging, will not exceed the lesser of the two costs.  Documentation to support the lesser cost must be attached to expense report.  Travel time must also be limited if on working hours.

The employee, his or her immediate supervisor, and an authorized Delphi representative must sign the expense report form.

E&Y is responsible for travel reservations, hotel/motel accommodations and rental cars. If directed by Delphi, E&Y will make all travel arrangements through Global Experts in Travel, using a special account set up for such purposes.

Any cash advance by E&Y to its employee is the responsibility of E&Y.

9.  Per Diem. - In certain instances, a per diem will be paid to E&Y in accordance with Delphi's standard per diem policy.

B.   All travel and per diem for which E&Y seeks reimbursement will be submitted to Delphi on standard vouchers, with substantiating documentation, and will accompany the monthly invoices.

Exhibit B

**ΞΙΙ ERNST & YOUNG**

■ Ernst & Young LLP
Global Automotive Center
Suite 1200
101 West Big Beaver Road
Troy, Michigan 48084

■ Phone: (248) 457-38 00
www.ey.com

November 23, 2005

Ms. Laura Marion
Executive Director, Financial Results
Delphi Corporation
5725 Delphi Drive
Troy, Michigan  48098

### SFAS 142 Valuation of Saginaw Steering Systems and Thermal & Interior Reporting Units

Dear Ms. Marion:

This letter shall constitute an engagement agreement (the "Agreement") between Delphi Corporation ("Delphi" or the "Company") and Ernst & Young LLP ("Ernst & Young" or "E&Y").  You have requested that Ernst & Young provide services relating to Delphi's Financial Accounting Standard Board's ("FASB") Statement No. 142 ("SFAS 142") Goodwill and Other Intangible Assets analysis to be performed as of a current date to be determined by Delphi management (the "Date of Valuation"), subsequent to Delphi's filing of a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court").

We have agreed to provide such services, contingent upon the Bankruptcy Court approving our retention in accordance with the terms and conditions which are set forth in this Agreement.

**Purpose and Scope**

Ernst & Young will assess the fair value of two Delphi divisions each with manufacturing facilities in North America, Europe, Asia Pacific and South America.  Emphasis will be on the valuation of fixed assets (Land Buildings, Improvements, and Equipment); however, the overall goal is to assist Delphi management in assessing the total value of the divisions for the purpose of adhering to SFAS 142.  The fixed asset valuation will be at the plant level.  We understand that our valuation analysis will be used solely for financial reporting purposes under the standard of fair value, which is defined as:

> *... the amount at which an entity could be bought or sold in a current transaction between willing parties, that is, other than in a forced or liquidation sale[1].*

---

[1] Financial Accounting Standards Board, Statement of Financial Accounting Standards No. 142, Goodwill and Other Intangible Assets, June 2001:  page 117.

**≡Ǝ ERNST & YOUNG**                                    ■ Ernst & Young LLP

Page 2
November 23, 2005

Ernst & Young will estimate the fair value of certain assets identified by the Company to assist in the goodwill impairment tests for the purpose of restating goodwill according to FASB's fair value[2] standards.

## Presentation of Results

Our analysis and recommendations will be documented in a summary narrative report ("Report") discussing our methodologies and recommendations and that will include supporting exhibits. The recommendations expressed in our Report will be based on methods and techniques that Ernst & Young considers appropriate under the circumstances.

We will provide you with three copies of the final report. Our proposed service and fee anticipates that we will receive your editorial comments within 10 business days of your receipt of the draft. Any subsequent changes in the report beyond those required to address the initial comments or any additional copies of the final report are outside the scope of our proposed service and fee.

Any summary of, or reference to, the Report or any oral presentation with respect thereto, any submission of the Report, in whole or in part, to the shareholders of Delphi or to any third party, or any reference to Ernst & Young will be subject in each instance to our prior review and written approval. Neither our recommendations nor the Report will be used for any purpose other than as stated herein. You agree that all services hereunder and the Report shall be solely for Delphi's informational purposes and internal use, and are not intended to be and should not be used by any person or entity other than Delphi. Delphi further agrees that such services and the Report shall not be circulated, quoted, disclosed, or distributed to, nor shall reference to such services or Report be made to, any other person or entity other than Delphi.

Furthermore, it is understood and agreed that Ernst & Young's services may include advice or recommendations, but all decisions in connection with the implementation of such advice or recommendations shall be the responsibility of, and made by, Delphi. Additionally, you acknowledge that the analysis should not be construed as a fairness opinion or investment advice and should not be used as the sole basis to set a transaction price.

You acknowledge that no reliance shall be placed on draft reports, draft conclusions, or advice, whether oral or written, issued by us as the same may be subject to further work, revision, and other factors which may mean that such drafts are substantially different from any final Report or advice issued.

---

[2] FASB Statement of Financial Concepts 7, "Using Cash Flow Information and Present Value in Accounting Measurements."

**ᴫ** *ERNST & YOUNG*                                    ■ Ernst & Young LLP

It should be noted that our Report will include a statement of limiting conditions.    Exhibit C details the limiting conditions that we are aware of currently.  If, during our engagement, we determine that changes to these limiting conditions will be required, we will notify you of those changes.

## Information and Timing

E&Y began work on this project on or about June 3, 2005, and has completed a preliminary analysis and provided preliminary conclusions to Delphi.  Remaining services to be provided include verification of several locations' fixed asset data, reconciliation of this data to balance sheet information, quality review and drafting of a narrative report.

You agree that all information required by Ernst & Young regarding Delphi will be provided to Ernst & Young within a mutually agreeable period of time, and shall be accurate and complete in all material respects.  The recommendations rendered in the Report shall only represent the recommendations of Ernst & Young based upon the information furnished by Delphi management and other sources, and said recommendations shall be considered as advisory in nature. .  Furthermore, unless otherwise directed, at the conclusion of this engagement, we may disclose our role as financial advisors in future marketing documents and materials.

You recognize and acknowledge that in rendering services hereunder, Ernst & Young has been and will be, using and relying on and assuming, the accuracy of, without independent verification, data, material and other information (including, without limitation, financial forecasts and projections), with respect to Delphi, furnished to Ernst & Young by or on behalf of Delphi and its agents, counsel, employees and representatives (the "Information").  Ernst & Young does not assume responsibility for the accuracy and completeness of the Information, including, but not limited to, the disclosure materials related to the Transaction, and Ernst & Young shall not be obligated to conduct any independent study or investigation as to the accuracy or completeness of the Information.

Delphi represents that the Information will not contain any untrue statement of a material fact nor omit to state any material fact necessary to make the statements therein, in light of the circumstances in which they were made, not false or misleading, and that the Information will be true, complete and correct in all material respects.

## Professional Fees

Our professional fees will be based on the actual time incurred at the hourly rates in Exhibit A.  Ernst & Young will request payment of its fees in accordance with the Bankruptcy Code, the Bankruptcy Rules, local bankruptcy rules for the Southern District of New York, any relevant administrative orders and the U.S. Trustee Guidelines. In addition, Ernst & Young will request

**≡IJ** *ERNST & YOUNG*                    ■ Ernst & Young LLP

Page 4
November 23, 2005

reimbursement of its actual expenses related to this engagement, as well as fees for any time (including any time or reasonable expenses of legal counsel) it may incur in considering or responding to discovery requests or participating as a witness or otherwise in any legal, regulatory, or other proceeding as a result of its performance of these services.

Ernst & Young acknowledges that payment of its fees and expenses hereunder is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 328(a), 330 and 331 of the Bankruptcy Code, any order of the Bankruptcy Court approving the retention of Ernst & Young and the U.S. Trustee Guidelines, (ii) any applicable fee and expense guidelines and/or orders, and (iii) any requirements governing interim and final fee applications.

**Engagement Team**

Ted Keuchel, Partner; Jon Mason, Principal; and Loren Garruto, Senior Manager; will lead E&Y's team in providing valuation services and will work closely with management in providing such valuation services. If any of these individuals ceases to provide valuation services to the Company pursuant to this Agreement, Ernst & Young will so advise the Company and, if that person is replaced, provide the Company with the name of that professional's replacement. Other staff, not identified herein, may be utilized as required to conduct our work in the most efficient manner possible.

**Other Matters**

The Company represents and warrants to Ernst & Young that the person signing this Agreement is expressly authorized to execute it on behalf of the Company. The performance of the Services and the parties' obligations in connection therewith are subject to the additional terms and conditions set forth in Exhibit B which are an integral part of this Agreement and are incorporated herein by this reference.

E&Y shall be solely responsible for all of the liabilities and obligations of E&Y under this Agreement, whether or not performed, in whole or part, by E&Y, any affiliate of E&Y, any other member of the global Ernst & Young network or any of their respective affiliates (collectively, the "E&Y Entities," and any of them, an "E&Y Entity"), or any subcontractor or personnel of any E&Y Entity. The Company shall have no recourse, and shall bring no claim, against any E&Y Entity other than E&Y, or against any subcontractors, members, shareholders, directors, officers, managers, partners, agents, representatives or employees of any E&Y Entity (or any of their respective successors or permitted assigns), or any of their respective assets, with respect to the Services or otherwise under this Agreement.

In the event E&Y is requested or authorized by the Company or is required by government regulation, subpoena, or other legal process to produce its documents or its personnel as witnesses with respect to the Services, the Company will, so long as E&Y is not a party to the

**ЗII ERNST & YOUNG**                    ■ Ernst & Young LLP

Page 5
November 23, 2005

proceeding in which the information is sought, reimburse E&Y for its professional time and expenses, as well as the fees and expenses of its counsel (including the allocable cost of in-house counsel), incurred in responding to such requests.

To the fullest extent permitted by applicable law, the Company shall indemnify, defend and hold harmless E&Y, from and against all (A) claims and causes of action, pending or threatened, of any kind (whether based on contract, tort or otherwise) by third parties, including any affiliate of the Company, related to or arising out of (i) the use, disclosure of or reliance on, any Report or any portion, abstract or summary thereof by any person or entity that obtains access to it, directly or indirectly, from, through or at the request of the Company, (ii) the performance of any services under this Agreement, or (iii) the Company's failure to provide timely, accurate and complete information and resources as necessary for E&Y to perform services in accordance herewith (collectively, "Claims") and (B) liabilities, losses, damages, costs and expenses (including, without limitation, reasonable outside attorneys' fees and the allocable costs of in-house counsel) suffered or incurred by E&Y in connection with any Claims, provided, however, that the Company shall have no indemnification obligation hereunder to the extent that a court of competent jurisdiction finally determines that a Claim by the Company or a representative of the Debtors' estate has arisen out of E&Y's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

Any controversy or claim with respect to, in connection with arising out of, or in any way related to this Agreement or the services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of the Company or of Ernst & Young) shall be brought in Bankruptcy Court, or the District Court if such District Court withdraws the reference and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. The parties to this agreement, and any and all successors and assigns thereof, hereby waive a trial by jury, such waiver being informed and freely made. If the Bankruptcy Court, or the District Court upon withdrawal of the reference does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Exhibit D to this Agreement. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding on the Company, Ernst & Young and any and all successors and assigns thereof.

**EJ** *ERNST & YOUNG*                              ■ Ernst & Young LLP

Page 6
November 23, 2005

By agreement to the provision of the services set forth in the Agreement, Ernst & Young is not
providing a guarantee to the Company that Ernst & Young's performance of those services
pursuant to the terms and conditions set forth in the Agreement will guarantee the Company's
successful reorganization under Chapter 11 of Title 11 of the United States Code.

The benefits of this Agreement shall inure to the respective successors and assigns of the parties
hereto and the obligations and liabilities assumed in this Agreement by the parties hereto shall be
binding upon their respective successors and assigns.

*     *     *     *     *

We trust that the foregoing terms and provisions are agreeable to you, and request that you sign
and return the enclosed copy of this Agreement to Ted Keuchel of Ernst & Young LLP at the
address on the first page of this letter.  We look forward to working with you on this engagement.

Very truly yours,

*Ernst & Young LLP*

**Delphi Corporation**
The foregoing has been read, understood and approved, and the undersigned does hereby agree to
retain Ernst & Young LLP upon the terms and provisions contained herein.

By: _____

John D. Sheehan
Vice President &
Chief Restructuring Officer, Chief Accounting Officer & Controller

Date: __11/25/05_____

**EXHIBIT A**

**Valuation Services Fee Schedule**

| Hourly Rates | |
| --- | --- |
| Partner/Principal | $425 |
| Senior Manager | $350 |
| Manager | $275 |
| Senior | $225 |
| Staff | $175 |

**EXHIBIT B**
VALUATION SERVICES
TERMS & CONDITIONS

1.    Agreement.

Upon approval by the Bankruptcy Court of the retention of E&Y by the Company and the terms and conditions of this Agreement, this Agreement will supersede any and all prior agreements or arrangements between the Company and E&Y with respect to the Services or other matters contemplated by this Agreement, including, specifically, the engagement letter dated June 3, 2005.  It is agreed that E&Y will provide to Delphi the services (the "Services") described the accompanying engagement letter (the "Engagement Letter") to which this Exhibit B is attached (the Engagement Letter, this Exhibit B, Exhibits A, B2, C and D are collectively referred to as this "Agreement").

2.    Conduct of E&Y Personnel.

E&Y will take all reasonable steps to assure that all of its partners, principals and employees who are providing Services (the "Personnel") are competent to perform the Services.  E&Y will require the Personnel who are performing any work on Delphi's premises to comply with all of Delphi's regulations and policies that have been provided to E&Y in writing.  Delphi, in its sole discretion, has the right to: (a) bar any of the Personnel from Delphi's premises for failure to observe Delphi's regulations or policies, (b) require that E&Y promptly remove from Delphi's premises any of the Personnel who violate any of Delphi's regulations or policies, and (c) require that E&Y cease using any of the Personnel to perform the Services who are reasonably unacceptable to Delphi.  Delphi will confer with E&Y to discuss Delphi's concerns prior to requiring removal of any of the Personnel.  E&Y will replace any barred or removed  Personnel with  Personnel reasonably acceptable to Delphi.

3.      Non-Solicitation of Personnel.

Delphi shall not, during the term of this Agreement and for 12 months following its termination for any reason, solicit for employment, or hire, any of the Personnel involved in the performance of the Services, except as otherwise agreed in writing by E&Y.

4.      The Personnel.

The Personnel furnished by E&Y to perform the Services are and will remain E&Y's employees and/or independent contractors and, under no circumstances, will any of the Personnel furnished by E&Y be deemed to be Delphi's employees or agents. E&Y is solely responsible, at E&Y's sole cost and expense, for (i) the fulfillment of all obligations to the Personnel and (ii) the compliance by E&Y and the Personnel with all laws, regulations, orders and other governmental requirements applicable to performance of the Services.

5.      Professional Fees.

Subject to Bankruptcy Court approval, Delphi will compensate E&Y for actual Services performed in accordance with the terms of the Engagement Letter.

6.      Expenses.

Subject to Bankruptcy Court approval, Delphi will reimburse E&Y for all reasonable costs and expenses E&Y incurs in connection with the Services; provided, however, that E&Y must obtain prior approval of Delphi for any individual reimbursable expenses in excess of $2,500 or for reimbursable expenses which exceed or are anticipated to exceed an aggregate of $10,000 during any calendar month. E&Y will not charge any markup, overhead, profit or other fees on the reimbursable expenses. The provisions of Exhibit B2 will govern Delphi's reimbursement obligations.

7.    Taxes.

Unless otherwise agreed in this Agreement, any applicable taxes imposed on E&Y in connection with the performance of the Services (except for taxes imposed on income) will be invoiced to, and paid by, Delphi in addition to fees and expenses.

8.    Standard of Performance

E&Y will exercise due professional care and competence in the performance of the Services, and all of the Services will be performed in accordance with applicable professional standards.

EXCEPT AS STATED ABOVE, E&Y MAKES NO WARRANTIES OF ANY KIND OR NATURE, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE, OR WARRANTIES OF ANY PRODUCTS OR SERVICES PROVIDED BY A THIRD PARTY VENDOR.

9.    Limitation of Liability

The total aggregate liability of E&Y in connection with the Services or otherwise arising out of this Agreement, regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranty, failure of essential purpose or otherwise, shall be limited to three (3) times the professional fees paid by Delphi to E&Y in respect of the Services. Also, E&Y, E&Y Personnel, or Delphi will not be liable for consequential, punitive or special damages (including loss of profits, data, business or goodwill), regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranties, failure of essential purpose or otherwise, and even if advised of the likelihood of such damages. Notwithstanding anything to the contrary otherwise set forth herein, the preceding limitations shall not apply (i) in the event of any breach of Section 11 below relating to Delphi Proprietary Information or (ii) if E&Y is found to be grossly negligent or to have acted in bad faith, willfully or fraudulently, or to have engaged in self-dealing or breach of fiduciary duty, if any.

Delphi's recourse with respect to any liability or obligation of E&Y hereunder shall be limited to the assets of E&Y, and Delphi shall have no recourse against, and shall bring no claim against, any individual partner of E&Y or any of the assets of such individuals. The provisions of this Section 9 shall operate for the benefit of, and shall be enforceable by, any Ernst & Young International member or affiliated firm or any E&Y Personnel that is, together with E&Y, providing the Services hereunder.

10.    Federal Confidential Communications Privilege

A confidentiality privilege under Internal Revenue Code Section 7525 may pertain to certain communications between E&Y personnel and Delphi regarding federal tax advice provided pursuant to this engagement.  By retaining E&Y, Delphi agrees that E&Y is instructed to claim the privilege on Delphi's behalf, with respect to any applicable communications, up to and until such time as Delphi may waive any such privilege in writing.  As disclosure of any such confidential communications to the Internal Revenue Service or other third party may cause any confidentiality privilege to be waived, each party shall notify the other party if the Internal Revenue Service or other third party requests information about any tax advice or tax advice documents provided by E&Y.

Delphi understands that E&Y makes no representation, warranty, or promise, and offers no opinion with respect to the applicability of such confidentiality privilege to any communication. Delphi agrees to indemnify E&Y for any attorney's fees and other costs and expenses incurred by E&Y in defending the confidentiality privilege on Delphi's behalf. E&Y agrees to promptly notify Delphi of any claim for which E&Y seeks indemnification and Delphi shall have the right to conduct the defense or settlement of any such claim at Delphi's sole expense, and E&Y shall cooperate with Delphi.  E&Y shall nonetheless have the right to participate in such defense at its own expense and to approve the settlement of any claim hereunder that imposes liability or obligation.

11.    Non-Disclosure of Proprietary Information

"Delphi Proprietary Information" means any information concerning the business and affairs of Delphi which is not publicly available at the time disclosed to or learned by E&Y or any of the Personnel and which is identified by Delphi as "Confidential" and/or "Proprietary" or which is known, or under all of the facts and circumstances should reasonably have been known, by E&Y to be considered by Delphi as confidential and/or proprietary.  Delphi Proprietary Information includes, without limitation, this Agreement, trade secrets, product specifications, data, know-how, formulas, compositions, processes, designs, sketches, photographs, samples, inventions, concepts, ideas, information, past, current and planned research and development, past, current and planned manufacturing or distribution methods and processes, price lists, business plans, reports, computer software and programs (including object code and source code), databases, notes, analyses, compilations, studies and other materials or intangibles.  Delphi Proprietary Information also includes any materials or information that contain or are based on any other Delphi Proprietary Information, whether prepared by E&Y, Delphi, the Personnel or any other person.

In connection with E&Y's performance of Services, Delphi may disclose Delphi Proprietary Information to E&Y.  All Delphi Proprietary Information disclosed, furnished or made available to E&Y or to the Personnel and all Delphi Proprietary Information generated or developed by E&Y or the Personnel will be treated as confidential by E&Y and the Personnel, and E&Y and the Personnel will use reasonable efforts to avoid and prevent disclosure of Delphi Proprietary Information to third parties, either in whole or in part, except upon Delphi's prior written authorization.  E&Y will be responsible and liable to Delphi for the violation by any of the Personnel of these confidentiality obligations.

E&Y retains the right to use its knowledge, experience, and know-how, including processes, ideas, concepts and techniques developed in the course of performing the Services.  If, during the course of performing the Services, E&Y discloses to Delphi any proprietary algorithms, formulae, tools, techniques, methods, processes, computer software or programs of E&Y ("E&Y Proprietary Information"), Delphi agrees to treat such E&Y Proprietary Information as confidential and use reasonable efforts to avoid and prevent disclosure of such E&Y Proprietary Information to third parties, provided that (i) E&Y informs Delphi of the proprietary nature of such E&Y Proprietary Information in advance of any such disclosure, (ii) E&Y marks all documents or other physical media containing E&Y Proprietary Information as "Confidential" or "Proprietary", (iii) E&Y discloses such information only to those personnel of Delphi which have a reasonable need to know such E&Y Proprietary Information and (iv) does not include such E&Y Proprietary Information (as opposed to the results generated by use or application of the E&Y Proprietary Information) in any work product delivered to Delphi under this Agreement.

If this engagement relates to a strategy offered by E&Y to Delphi that is designed to reduce or defer federal income tax for a direct or indirect corporate participant, pursuant to Treasury Regulation section 301.6111-2(c), Delphi (and each employee, representative, or other agent of Delphi) is expressly authorized to disclose the structure and tax aspects of the strategy with any and all persons, without limitation of any kind.

Written advice provided by E&Y to Delphi is for the information and use of Delphi only and may not be relied upon by any third party without the express written permission of E&Y.

The foregoing obligations under this Section 11 shall not apply to the extent that any information (i) is at the time of disclosure, or thereafter becomes, part of the public domain through a source other than the receiving party, (ii) is subsequently learned by the receiving party from a third party that has a legal right to make such disclosure and does not impose an obligation of confidentiality on the receiving party, (iii) was known to the receiving party at the time of disclosure by the disclosing party, (iv) was generated independently by the receiving party before disclosure by the disclosing party, or (v) is required to be disclosed by the receiving party by law, regulation, subpoena or other process, or applicable professional regulations.

12.    Subcontracting

E&Y may subcontract a portion of its responsibilities under this Agreement without Delphi's prior written approval to any of the E&Y Entities; provided, however, that E&Y shall remain fully and solely responsible for all liabilities and obligations, including fiduciary duty (if any), of E&Y under this Agreement.

13.    Changes and Delays

In the event that (i) Delphi requires a change in the scope of the Services, (ii) any change of applicable law or regulation affects the timing or performance of the Services or (iii) any action by Delphi or a third party (other than the Personnel) affects the timing or performance of the Services, the fees and/or schedule for performance for the Services will be equitably adjusted by the parties, subject to receipt of all necessary Bankruptcy Court approvals and notification to the U.S. Trustee's office and any committee designated to review fee applications (the "Fee Review Committee").

If either party is unable to perform its obligations in accordance with this Agreement as a result of an event or occurrence beyond the reasonable control of the affected party and without the affected party's fault or gross negligence, then any delay or failure to perform under this Agreement that results from such event or occurrence will be excused for so long as such event or occurrence continues, provided, however, that the affected party gives written notice of such delay (including the anticipated duration of the delay) to the other party as soon as possible after the event or occurrence (but in no event more than three (3) days thereafter). Such events and occurrences may include, by way of example and not limitation, natural disasters, fires, floods, windstorms, severe weather, explosions, riots, wars, sabotage, labor problems (including lockouts, strikes and slowdowns), equipment breakdowns and power failures. If the affected party fails to provide adequate assurances that any delay will not exceed thirty (30) days or if any delay lasts more than thirty (30) days, the other party may terminate this Agreement without further liability.

To the extent that this Agreement provides that E&Y's performance is contingent upon specific action or cooperation of Delphi, including the supply to E&Y of specific resources, approvals, and information, any delays in E&Y's performance which occur as a result of the failure or untimely performance by Delphi shall be excused to the extent of any such delay or untimely performance by Delphi and E&Y shall not incur any liability to Delphi as a result of any such delay or untimely performance by Delphi. If any such delay or untimely performance by Delphi lasts for thirty (30) days or more, E&Y shall be entitled to terminate this Agreement by giving written notice to Delphi, such termination to be effective on the date indicated in said notice.

14.    Term and Termination

This Agreement may be terminated at any time by the Company or E&Y, but in any event this Agreement will expire upon the effective date of the Company's confirmed plan of reorganization, or liquidation of the Company's assets under Chapter 11 or 7 of Title 11 of the United States Code, or otherwise. . If either party terminates this Agreement, in addition to notice to the other party, the terminating party shall provide not less than three (3) days' prior written notice to the Bankruptcy Court, the U.S. Trustee's office, the Creditor's Committee and the Fee Review Committee (if any). The provisions of this Agreement relating to indemnification, limitation of liability, fees and expenses and alternative dispute resolution will remain operative and in full force and effect regardless of any termination or expiration of this Agreement and shall survive completion of the Company's bankruptcy whether through a confirmed plan of reorganization, liquidation of the Company's assets under Chapter 11 or 7 of Title 11 of the United States Code, or otherwise. If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable, in whole or in part, the remaining portions of this Agreement shall remain in full force and effect.

15.    Conflict

In the event of any conflict, ambiguity or inconsistency between this Agreement and any other agreement relating to the Services, including any preprinted terms and conditions on Delphi's purchase orders, the terms and conditions of this Agreement shall govern.

16.    Severability

If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable, in whole or part, the remaining portions of this Agreement shall remain in effect.

# EXHIBIT B2

## Travel and Per Diem Reimbursement

A.    If the Personnel are required by Delphi to travel as an incidental requirement in performing services for Delphi, and subject to any guidelines established by the Bankruptcy Court or the U.S. Trustee, then such travel and per diem expenses, subject to prior written approval of Delphi, will be reimbursable as follows:

1. Air Travel - Economy/Coach class only for U.S. travel.  Business class is permitted for international travel.

2. Hotel - E&Y will exercise good, sound business judgment and discretion in choosing hotels, such as a moderately priced chain hotels or hotels that offer discounted corporate rates.  Where extended travel is involved, reduced rates may be available and should be requested.

3. Rental cars - Compact or intermediate class only.  The cost of collision damage waiver and personal accident insurance is the responsibility of E&Y.

4. Mileage Allowance - Reimbursement will be at $0.405 per mile for the miles which are in excess of his or her normal commute from home to work and back.  When permanently assigned to another location, even if the new location is temporary, E&Y will not be reimbursed for excess miles, additional driving time, etc.

5. Expense Reports - Customarily available receipts must be attached to expense reports E&Y submits.  Detailed receipts, other than restaurant tabs, are required for all meals and other expenditures of $25.00 or more.

6. Meals - Meals will not be reimbursed for non-overnight trips, except in the case of late return occasioned by travel outside normal working hours.  Reimbursement for meals will be the actual and reasonable expenses paid by E&Y.

7. Extended Travel - E&Y should review the home visit policy prior to a trip.  Generally, the following provisions apply:

- If the travel expense is less than the living expense in the temporary location, E&Y will be reimbursed for travel to the permanent location every week.

- If the travel expense is more than the living expense in the temporary location, E&Y will be reimbursed for travel to the permanent location every two weeks.

- Excess expenses due to frequent travel or stays will not be reimbursed by Delphi without its prior written approval.

8.   Miscellaneous - When E&Y chooses an alternative method of transportation, e.g., to drive instead of fly, reimbursement, including meals and lodging, will not exceed the lesser of the two costs.  Documentation to support the lesser cost must be attached to expense report.  Travel time must also be limited if on working hours.

The employee, his or her immediate supervisor, and an authorized Delphi representative must sign the expense report form.

E&Y is responsible for travel reservations, hotel/motel accommodations and rental cars.  E&Y will make all travel arrangements through Delphi's travel agency Global Experts in Travel, using a special account set up for such purposes unless there are extenuating circumstances.

Any cash advance by E&Y to its employee is the responsibility of E&Y.

9.   Per Diem. - In certain instances, a per diem will be paid to E&Y in accordance with Delphi's standard per diem policy.

B.      All travel and per diem for which E&Y seeks reimbursement will be submitted to Delphi on standard vouchers, with substantiating documentation, and will accompany the monthly invoices.

C.      Eligibility is based on direct reimbursement from Delphi Corporation for qualifying travel expenditures verification of eligibility will be confirmed through the Delphi Corporation purchasing contact and PO Number information required for enrollment. Contract suppliers will be reimbursed for travel expenses at the Delphi Corporation rate only and shall be billed at actual cost (no mark-up allowed). To obtain Delphi Corporation rates, contractors must be properly enrolled in the Delphi Corporation travel program, and all travel (air, hotel, and car) on behalf of and paid for by Delphi Corporation must be arranged through Global Experts in Travel (GET) via Cliqbook, GET's on-line booking tool. Click the Cliqbook link on this site for instructions on how to get started with Cliqbook: http://www.globalconnected.net/delphi/index2.asp.  Go to supplier enrollment then documentation and finally profile.

# Exhibit C:
## Statement of Limiting Conditions

1.    Nothing has come to our attention to cause us to believe that the facts and data set forth in this report are not correct.

2.    Provision of valuation recommendations and considerations of the issues described herein are areas of regular valuation practice for which we believe that we have, and hold ourselves out to the public as having, substantial knowledge and experience.   The services provided are limited to such knowledge and experience and do not represent audit, advisory or tax-related services that may otherwise be provided by Ernst & Young LLP.

3.    No investigation of the title to the subject assets has been made, and the owner's claim to the subject assets are assumed to be valid.   To the extent that Ernst & Young LLP's services include assets, properties or business interests, Ernst & Young LLP shall assume no responsibility for matters of legal description or title, and Ernst & Young LLP shall be entitled to make the following assumptions: (i) title is good and marketable, (ii) there exist no liens or encumbrances, (iii) there is full compliance with all applicable Federal, state, local and national regulations and laws (including, without limitation, zoning regulations), and (iv) all required licenses, certificates of occupancy, consents, or legislative or administrative authority from any Federal, state, local, or national government, private entity or organization have been or can be obtained or renewed for any use on which Ernst & Young LLP services are to be based.

4.    This report has been prepared solely for the purpose stated, and should not be used for any other purpose.   Neither this report nor any portions thereof shall be copied or disseminated through advertising, public relations, news, sales, Securities and Exchange Commission disclosure documents or any other public (or private) media without the express written approval of Ernst & Young LLP.

5.    The recommendations of value contained herein are not intended to represent the values of the subject assets at any time other than the effective date that is specifically stated in this report.   Changes in market conditions could result in recommendations of value substantially different than those presented at the stated effective date.   We assume no responsibility for changes in market conditions or for the inability of the owner to locate a purchaser of the subject assets at the values stated herein.

6.    No responsibility is assumed for information furnished by others (including management), and such information is believed to be reliable.

7.    In the course of our analysis, we were provided with written information, oral information, and/or data in electronic form (e.g., computer diskettes), related to the structure, operation, and financial performance of the subject assets. We have relied upon

EXHIBIT C:
Statement of Limiting Conditions
November 23, 2005
Page 2 of 2

this information in our analyses and in the preparation of this report, and have not independently verified its accuracy or completeness.

8.   Certain historical financial data used in our valuation engagement were derived from audited financial statements and are the responsibility of management. The financial statements include disclosures required by generally accepted accounting principles. Those disclosures required are not repeated herein, and those who are not informed about such matters should refer to the audited financial statements. In addition, certain historical financial data used in our valuation engagement were provided by management and are unaudited. We have not independently verified the accuracy or completeness of the data provided and do not express an opinion or offer any form of assurance regarding its accuracy or completeness.

9.   The estimates of cash flow data provided by the subject company, and included herein, are solely for use in the valuation analysis and are not intended for use as forecasts or projections of future operations. We have not performed an examination or compilation of the accompanying cash flow data in accordance with standards prescribed by the American Institute of Certified Public Accountants, and, accordingly, do not express an opinion or offer any form of assurance on the accompanying cash flow data or their underlying assumptions. Furthermore, there will usually be differences between estimated and actual results because events and circumstances frequently do not occur as expected, and those differences may be material.

10.  Our report assumes full compliance with all applicable federal, state and local zoning, usage, environmental and similar laws and regulations, unless otherwise stated.

11.  We assume no responsibility for any financial and tax reporting judgments, which are appropriately those of management. It is our understanding that management accepts the responsibility for any financial statement and tax reporting issues with respect to the assets covered by our analysis, and for the ultimate use of our analysis and report.

12.  Ernst & Young LLP, by reason of its services hereunder, is not required to furnish additional work or services, or to give testimony, or be in attendance in court with reference to the assets, properties, or business interest in question or to update any report, recommendation, analysis, conclusion or other document relating to its services for any events or circumstances unless arrangements acceptable to Ernst & Young LLP have been separately agreed upon with Delphi Corporation.

## EXHIBIT D
### Dispute Resolution Procedures

### *Mediation*

A party shall submit a dispute to mediation by written notice to the other party or parties. The mediator shall be selected by the parties. If the parties cannot agree on a mediator, the CPR Institute for Dispute Resolution ("CPR") shall designate a mediator at the request of a party. Any mediator must be acceptable to all parties.

The mediator shall conduct the mediation as he/she determines, with the agreement of the parties. The parties shall discuss their differences in good faith and attempt, with the mediator's assistance, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and shall therefore be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. The mediation proceedings shall not be recorded or transcribed.

Each party shall bear its own costs in the mediation. The parties shall share equally the fees and expenses of the mediator.

If the parties have not resolved a dispute within 90 days after written notice beginning mediation (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. In addition, if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the mediation requirement to have been waived and may proceed with arbitration.

### *Arbitration*

The arbitration will be conducted in accordance with the procedures in this document and the CPR Rules for Non-Administered Arbitration ("Rules") as in effect on the date of the Agreement, or such other rules and procedures as the parties may agree. In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, to be selected in accordance with the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may be appointed unless he or she has agreed in writing to these procedures.

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. Damages that are inconsistent with any applicable agreement, that are punitive in nature, or that are not measured by the prevailing party's actual damages, shall be unavailable in arbitration or any other forum. The parties expressly waive the right to such damages, and the arbitrators shall have no power to award them unless

**EXHIBIT D:**
**Dispute Resolution Procedures**
November 23 2005
Page 2 of 2

the foregoing waiver is invalid or unenforceable. The arbitration panel shall have no power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only in accordance with the Rules or applicable professional standards. Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary to comply with applicable law, regulatory requirements or professional standards.

The result of the arbitration shall be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

Exhibit C



**ΞΙΙ ERNST & YOUNG**

■ Ernst & Young LLP     ■ Phone: (248) 457-3800
101 West Big Beaver Road     www.ey.com
Suite 1200
Troy, Michigan 48084

November 28, 2005

Mr. Cliff Gross
Skadden, Arps, Slate, Meagher & Flom LLP
1440 New York Ave., N.W.
Washington, DC 20005

Dear Cliff:

This letter will confirm the engagement of Ernst & Young LLP ("E&Y") by Skadden, Arps,
Slate, Meagher & Flom LLP ("Skadden") and Delphi Corporation (together with its subsidiaries,
"Delphi") to provide the services set forth in Section I below (the "Services") to assist Skadden in
its provision of legal advice to Delphi subject to the terms provided herein, including the
Supplemental Terms and Conditions attached to this letter (collectively, the "Agreement"). The
Services will also be subject to the terms of a separate engagement letter between E&Y and
Delphi dated November 28, 2005 (the "Delphi Agreement")..  This Agreement shall supersede
the prior agreement between E&Y and Skadden dated October 17, 2005, and such prior
agreement shall be terminated as of the date hereof.

## I.     RESPONSIBILITIES AND AUTHORIZED SCOPE OF SERVICES

E&Y's services pursuant to this engagement are limited to providing research, compilation of
data, and analysis with respect to the application of Section 382 of the Internal Revenue Code.
During the term of this engagement, E&Y and Delphi may mutually agree that E&Y shall provide
certain additional tax services to Delphi, in accordance with past practices; provided that any such
additional tax services do not give rise to any auditor independence issues.. Pursuant to this
engagement, E&Y will not make any accounting determinations or judgments with respect to the
tax matters that are within the scope of this engagement.  E&Y, in its sole professional judgment,
reserves the right to refuse to undertake any procedure or take any action that could be construed
as making management decisions or performing management functions.  E&Y will not perform
management functions or make management decisions on behalf of Skadden or Delphi.  In
connection with E&Y's provision of the Services hereunder, Delphi agrees to make all

Mr. Cliff Gross                                                    Page 2
November 28, 2005

management decisions and perform all management functions and maintain internal controls over
the related processes of Delphi.

**Any activities whose performance is not authorized by Skadden will be considered outside
the scope of this Agreement.**

E&Y will perform the Services in accordance with applicable professional standards, including the
Statements on Standards for Tax Services issued by the American Institute of Certified Public
Accountants.

## II.    FEE

E&Y shall bill Delphi for the Services in accordance with terms of the Delphi Agreement.

## III. OTHER TERMS AND CONDITIONS

None of the work that we will perform under this engagement will constitute an attest
engagement in accordance with generally accepted auditing standards or advice and/or
documentation related to the effectiveness of internal controls over financial reporting under
Section 404 of the Sarbanes-Oxley Act. We assume no responsibility to keep Skadden apprised
of developments in the tax law relative to this engagement after it has been completed.

In the event we are requested or authorized by Skadden or are required by government
regulation, summons, subpoena or other legal process to produce our documents or personnel as
witnesses with respect to our engagement by Skadden pursuant to this Agreement, Delphi will, so
long as we are not a subject of the investigation or proceeding in which the information is sought,
reimburse us, at our standard billing rates for our professional time and expenses, as well as the
reasonable and documented fees and expenses of our counsel, incurred in responding to such
requests.

Any controversy or claim with respect to, in connection with arising out of, or in any way related
to this Agreement or the Services provided hereunder (including any such matter involving any
parent, subsidiary, affiliate, successor in interest or agent of Skadden or of E & Y) shall be
brought in the Bankruptcy Court, or the District Court if such District Court withdraws the
reference and the parties to this Agreement, and any and all successors and assigns thereof,
consent to the jurisdiction and venue of such court as the sole exclusive forum (unless such court
does not have jurisdiction and venue of such claims or controversies) for the resolution of such
claims, causes of action or lawsuits. The parties to this Agreement, and any and all successors
and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If
the Bankruptcy Court, or the District Court upon withdrawal of the reference does not have or

Mr. Cliff Gross                                                                                          Page 3
November 28, 2005

retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and
any and all successors and assigns thereof, agree to submit first to non-binding mediation; and, if
mediation is not successful, then to binding arbitration, in accordance with the dispute resolution
procedures set forth in the attachment to this Agreement. Judgment on any arbitration award may
be entered in any court having proper jurisdiction. The foregoing is binding upon Skadden, E&Y
and any all successors and assigns thereof.

Except as expressly provided herein, this engagement letter does not modify the terms or
provisions of any engagement letter for other professional services that were agreed to prior to
the date noted below.

This agreement shall be governed by, and construed in accordance with, the laws of the State of
New York applicable to agreements made and fully to be performed therein by residents thereof.

If these arrangements are acceptable, please sign one copy of this letter and return it to Jacob
Blank.

If you have any questions concerning our engagement, please call Mr. Blank at 212-773-1589.

We very much appreciate the opportunity to perform these tax services for Skadden.

                                        Very truly yours,

                                        Ernst & Young LLP

Skadden, Arps, Slate, Meagher & Flom LLP

By: _____Cliff Gross_____          11/28/2005
        Cliff Gross, Partner              Date

Delphi Corporation

By: _____        28 Nov 2005
                                            Date

Attachments                        JAMES P. WHITSON
                                   CHIEF TAX OFFICER

## SUPPLEMENTAL TERMS AND CONDITIONS

I.    Certain Services.

E&Y will not, in connection with the performance of the Services or otherwise, (i) act as a broker of the sale of any securities, (ii) solicit either Skadden or potential buyers to engage in any transaction, or (iii) act as a negotiator of a transaction. E&Y will not render any opinion as to the fairness of any transaction or whether the parties ought to enter into any transaction.

II.    Changes and Delays. Changes in the type or extent of the Services requested by Skadden or that are required for any other reason, including any change in applicable law or professional standards, schedule delays or other events beyond a party's reasonable control, but without its fault or negligence (collectively, "Unexpected Events"), may affect the fees for, and/or timing of performance of, the Services, revisions to which must be agreed by both parties, and, if applicable, approved by Delphi's Audit Committee subject to receipt of all necessary Bankruptcy Court approvals and notification to the U.S. Trustee's office and any committee designated to review fee applications (the "Fee Review Committee"). If either party's performance is delayed or suspended as a result of Unexpected Events, then the period during which the Services are to be performed shall be extended by such delay. Neither party shall incur any liability to the other party as a result of such delay or suspension.

III.    Information. Skadden acknowledges and agrees that it will timely provide, or cause to be provided timely, to E&Y all data, information and resources in its possession reasonably required by E&Y in connection with the performance of the Services. E&Y's advice and services shall be based solely upon such data and information furnished by or on behalf of Skadden, and E&Y will not evaluate, nor will it have any responsibility to verify independently, the accuracy or completeness thereof or the sufficiency of such data and information for Skadden's purposes.

IV.    Limitation of Liability.

A. Except in cases of bad faith, willful misconduct or gross negligence by E&Y or where E&Y has engaged in self-dealing or breach of fiduciary duty (if any), to the fullest extent permitted by applicable law, the total aggregate liability of E&Y (and its subcontractors) to Skadden and to Delphi (and to any affiliate thereof for or in respect of which the Services may be performed), regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranty, failure of essential purpose or otherwise, in connection with the performance of the Services or otherwise under this Agreement, shall be limited to three (3) times  the professional fees actually paid to E&Y in respect of such Services. In the event E&Y becomes Delphi's external auditor at any time while the Services are being performed, or within the time during which any claim relating thereto must be brought against E&Y by Delphi, this Agreement shall automatically be deemed to be amended, as of the date hereof, to eliminate this Section IV.A. If so amended, all of the other terms and conditions of this Agreement shall remain in full force and effect.

B. Except in cases of bad faith, willful misconduct or gross negligence by E&Y or where E&Y has engaged in self-dealing or breach of fiduciary duty (if any), in no event will E&Y (or its subcontractors) be liable to Skadden (or to any affiliate thereof for or in respect of which the Services may be performed or to Delphi) for any consequential, incidental, indirect, or special damages (including loss of profits, data, business or good will) in connection with the performance of the Services or otherwise under this Agreement, whether or not liability is based on breach of contract, tort, strict liability, breach of warranty, failure of essential purpose or otherwise, and even if E&Y is advised of the likelihood of such damages. In no event will E&Y (or its subcontractors) be liable to Delphi or to Skadden  or to any affiliate thereof for or in respect of which the Services may be performed) for any punitive damages  in connection with the performance of the Services or otherwise under this Agreement

C. E&Y shall be solely responsible for the performance of the Services and all of the other liabilities and obligations of E&Y under this Agreement including fiduciary duty (if any), whether or not performed, in whole or part, by E&Y, any affiliate of E&Y, any other member of the global Ernst & Young network or any of their respective affiliates (all such members, including E&Y and its affiliates, collectively, the "E&Y Entities," and any

4

of them, an "E&Y Entity"), or any subcontractor or personnel of any E&Y Entity. Skadden and its affiliates for or in respect of which any of the Services are provided and Delphi shall have no recourse, and shall bring no claim, against any E&Y Entity other than E&Y, or against any subcontractors, members, shareholders, directors, officers, managers, partners or employees of any of E&Y or any other E&Y Entity, or any of the assets of any thereof, with respect to any liability or obligations in connection with the performance of the Services or otherwise under this Agreement.

V.     Technical Elements; Tools.

A. In connection with performing the Services, E&Y may use certain data, modules, components, designs, utilities, subsets, objects, program listings, tools, models, methodologies, programs, systems, analysis frameworks, leading practices, and specifications developed or used by E&Y or its licensors, or to which E&Y otherwise has rights, including enhancements or improvements developed in the course of performing the Services (collectively, "Technical Elements"). Skadden shall have no rights in or to the Technical Elements, except that Skadden may use the Technical Elements owned by E&Y solely to the extent necessary for Skadden to use the opinions, reports or other documents resulting from these services as permitted by this Agreement. E&Y retains the right to use its knowledge, experience and know-how, including the Technical Elements in providing services to other clients.

B. In connection with the performance of the Services, E&Y may utilize, and may, subject to additional terms and conditions, including license agreements, to be agreed by the parties, permit authorized representatives of Skadden to utilize, certain software and collaborative tools, including PM Toolkit and QuickPlace® (collectively, the "Engagement Tools"). In no event shall Skadden copy or modify, or permit others to copy or modify, any Engagement Tools, nor shall it decompile, reverse engineer, or in any way derive any source code from, or create any derivative work of, any Engagement Tools. Skadden's use of QuickPlace shall be subject to and governed by the terms and conditions of the applicable license agreement, the terms and conditions of which are required to be agreed to by an authorized representative of Skadden prior to Skadden's access to QuickPlace. A copy of the license agreement can be provided to you upon request.

THE ENGAGEMENT TOOLS ARE PROVIDED "AS IS," AND NONE OF E&Y OR ANY OTHER PARTY INVOLVED IN THE CREATION, PRODUCTION OR DELIVERY OF ANY ENGAGEMENT TOOL MAKES ANY WARRANTIES, EXPRESS OR IMPLIED, WITH RESPECT TO ANY ENGAGEMENT TOOL OR TITLE THERETO, INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE OR USE, OR ANY WARRANTY THAT THE OPERATION OF ANY ENGAGEMENT TOOL WILL BE UNINTERRUPTED, ERROR FREE OR THAT IT WILL BE COMPATIBLE WITH ANY HARDWARE OR SOFTWARE USED BY SKADDEN. E&Y MAKES NO COMMITMENT TO SUPPORT, MAINTAIN OR UPGRADE ANY ENGAGEMENT TOOL. SKADDEN ASSUMES SOLE RESPONSIBILITY FOR THE USE OF, AND RESULTS OBTAINED FROM, ANY ENGAGEMENT TOOL.

C. To the extent that Skadden or its authorized representatives are permitted to use any Engagement Tool, Skadden acknowledges and agrees that such use is not a substitute for any documentation or system of records created or maintained pursuant to law, including, without limitation, Internal Revenue Code Section 6001. Skadden shall be solely responsible for maintaining separate copies of any documentation it inputs into any Engagement Tool.

D. E&Y's research and preparation of all work papers, exhibits, schedules, written memoranda, and other papers and writings will be solely for the benefit of and at the direction of Skadden, will be a part of Skadden's privileged attorney work product, and will be owned by Skadden.

VI.     Confidentiality.

A. Except as otherwise provided in this Agreement, without the prior written consent of Skadden, E&Y shall not disclose Confidential Information (as defined below) of Skadden or Delphi received in connection with

5

the performance of the Services. E&Y shall use the same degree of care that it uses to protect its own confidential information of like nature, but no less than a reasonable degree of care, to maintain in confidence the Confidential Information of the disclosing party. All documents and other materials generated or prepared by E&Y or its affiliates in connection with the Services shall be marked "Privileged and Confidential". The foregoing provisions shall not apply to any information that (i) is, at the time of disclosure, or thereafter becomes, available to the general public through a source other than E&Y, (ii) is subsequently learned from a third party that, to the knowledge of E&Y after reasonable inquiry, is not under an obligation of confidentiality to the disclosing party, (iii) was known to E&Y at the time of disclosure (from a third party that, to the knowledge of E&Y after reasonable inquiry, was not under an obligation of confidentiality to the disclosing party), as can be demonstrated by contemporaneous written evidence (iv) is generated independently by E&Y, as can be demonstrated by contemporaneous written evidence; or (iv) is disclosed as required by applicable professional obligations. In the event that the E&Y receives a request to disclose all or any part of Skadden's or Delphi's Confidential Information under the terms of a subpoena or order issued by a court or governmental body of competent jurisdiction, or E&Y is otherwise required by law or regulation to disclose all or any part of Skadden's or Delphi's Confidential Information, E&Y may, notwithstanding any provision of this Agreement to the contrary, disclose such information; however, E&Y agrees, unless it is prohibited by law from doing so to (i) promptly notify Skadden and Delphi of the existence, terms and circumstances surrounding such a request, so that Skadden and/or Delphi may seek an appropriate protective order before the due date of any such disclosure by E&Y (and, if Skadden and/or Delphi seeks such an order, to provide such cooperation as Skadden and/or Delphi shall reasonably request at Delphi's expense) and (ii) if disclosure of such information is required in the opinion of E&Y's counsel, exercise its reasonable best efforts to obtain an order or other reliable assurance that confidential treatment will be accorded to such of the disclosed information which Skadden or Delphi so designates.

B.  For purposes of this Section VI, Confidential Information shall mean any proprietary information relating to the business, operations, methodologies or procedures of Skadden or Delphi that is not generally known to the public and which is identified by Skadden of Delphi as "Confidential" and/or "Proprietary," or which, under all of the circumstances, ought reasonably to be treated as confidential and/or proprietary, including material subject to the attorney-client privilege and/or work product protection. E&Y confirms that it has been informed by Skadden that material subject to the attorney-client privilege and/or work product protection includes E&Y's research and preparation of all work papers, exhibits, schedules, written memoranda, and other papers and writings pursuant to this Agreement.

C.  To the extent any information obtained from Skadden or Delphi constitutes protected health information under the Health Insurance Portability and Accountability Act (including any amendments or successor litigation) and any regulations promulgated thereunder (together, "HIPAA"), this Agreement shall be deemed to incorporate all terms that HIPAA requires to be included in a business associate contract pertaining to such information. E&Y shall use such information in compliance with applicable law.

D.  Notwithstanding anything contained herein to the contrary, E&Y may disclose Skadden's or Delphi's Confidential Information, including, without limitation, tax return information, to E&Y Entities for the purpose of rendering the Services and any other services heretofore or hereafter requested by Skadden or Delphi. It is E&Y's policy not to disclose client information to unaffiliated third parties or persons other than E&Y Entities, except as required by law, without Skadden's or Delphi's consent. E&Y personnel and contractors working under E&Y's supervision are required to observe E&Y's policies concerning confidential client information, and E&Y employs security systems designed to protect against unauthorized access and use of confidential information.

E.  Notwithstanding anything contained herein to the contrary, E&Y may transmit information to Skadden or Delphi or their respective representatives by e-mail over the Internet. Skadden and Delphi agree that, unless it specifically instructs E&Y in writing not to use such transmissions, any breach of confidentiality that occurs thereby shall not be deemed a breach of E&Y's obligations under this Section VI.

F.  Our advice and services are only applicable to the specific facts and circumstances presented to us. Notwithstanding anything contained herein to the contrary, Skadden and Delphi and their respective officers, partners, directors, employees, agents and advisors may disclose to any person or entity, without limitation, the

6

U.S. tax treatment and tax structure or any other tax position with respect to which E&Y provides advice pursuant to this Agreement.

VII.     Term; Termination; Survival.  This Agreement will commence on the date hereof and shall terminate upon completion of the Services, unless earlier terminated as set forth below.  Either party may terminate this Agreement and its obligations hereunder upon written notice, if the other party breaches any of its material obligations hereunder and such breach is not cured within 15 days following receipt of written notice thereof.  E&Y may terminate this Agreement, upon written notice to Skadden, if (A) delays due to Unexpected Events aggregate more than 30 days or (B) E&Y reasonably determines that it can no longer provide the Services in accordance with applicable professional obligations.  Skadden may terminate this Agreement at any time upon written notice to E&Y..  If either party terminates this Agreement, in addition to notice to the other party, the terminating party shall provide not less than three (3) days' prior written notice to the Bankruptcy Court, the U.S. Trustee's office, the Creditor's Committee and the Fee Review Committee (if any).  Skadden shall pay for work-in-progress, completed Services and expenses incurred by E&Y through the effective date of any termination upon payment of those amounts by Delphi as set forth above.  The provisions of this Agreement that give the parties rights beyond termination hereof will survive any such termination.

VIII.     Non-Solicitation of Personnel.  Skadden shall not, during the term of this Agreement and for 12 months following its termination for any reason, solicit for employment, or hire, any E&Y personnel involved in the performance of the Services, except as otherwise agreed in writing by E&Y.

IX.     Use of Names.  Except as expressly permitted by this Agreement, neither party shall use or publicize the other party's name, trademark, service mark or logo in connection with the Services or any reports without the prior written consent of such other party.

X.     Entire Agreement; Severability; Assignability.

        A. This Agreement constitutes the entire agreement between Skadden and E&Y, and merges all prior and contemporaneous communications, with respect to the Services and the other matters contemplated hereby.  This Agreement may not be modified except in a writing signed by both parties.  If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable, in whole or part, the remainder shall not be affected thereby.

        B. None of a party's rights or obligations under this Agreement may be assigned, in whole or in part, by either party without the prior written consent of the other party, provided, that E&Y may assign any of its rights or obligations under this Agreement to, and may perform the Services together with, an affiliate of E&Y or any other E&Y Entity.  The provisions of this Agreement shall operate for the benefit of, and may be enforced by, any assignee or subcontractor that is providing any of the Services in accordance herewith.

Dispute Resolution Procedures

## *Mediation*

A party shall submit a dispute to mediation by written notice to the other party or parties. The mediator shall be selected by the parties. If the parties cannot agree on a mediator, the CPR Institute for Dispute Resolution ("CPR") shall designate a mediator at the request of a party. Any mediator must be acceptable to all parties.

The mediator shall conduct the mediation as he/she determines, with the agreement of the parties. The parties shall discuss their differences in good faith and attempt, with the mediator's assistance, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and shall therefore be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. The mediation proceedings shall not be recorded or transcribed.

Each party shall bear its own costs in the mediation. The parties shall share equally the fees and expenses of the mediator.

If the parties have not resolved a dispute within 90 days after written notice beginning mediation (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. In addition, if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the meditation requirement to have been waived and may proceed with arbitration.

## *Arbitration*

The arbitration will be conducted in accordance with the procedures in this document and the CPR Rules for Non-Administered Arbitration ("Rules") as in effect on the date of the Agreement, or such other rules and procedures as the parties may agree. In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, to be selected in accordance with the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may be appointed unless he or she has agreed in writing to these procedures.

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. Damages that are inconsistent with any applicable agreement, that are punitive in nature, or that are not measured by the prevailing party's actual damages, shall be unavailable in arbitration or any other forum. The parties expressly waive the right to such damages, and the arbitrators shall have no power to award them unless the foregoing waiver is invalid or unenforceable. The arbitration panel shall have no power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only in accordance with the Rules or applicable professional standards. Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary to comply with applicable law, regulatory requirements or professional standards.

8

The result of the arbitration shall be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

Exhibit D

**≣ӏӏ ERNST & YOUNG**

■ Ernst & Young LLP
  101 West Big Beaver Road
  Suite 1200
  Troy, Michigan 48084

■ Phone: (248) 457-3800
  www.ey.com

November 28, 2005

Mr. James P. Whitson
Chief Tax Officer
Delphi Corporation
5725 Delphi Drive
Troy, MI 48098

Dear Mr. Whitson:

This letter, together with the attached Exhibits (collectively, this "Agreement"), sets forth the terms and conditions pursuant to which Ernst & Young LLP ("E&Y") will provide the tax services described herein (the "Services") to Delphi Corporation and its affiliates (the "Company," "Delphi" or "Debtor") to assist Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden") in its provision of legal advice to the Company subsequent to the Company's filing of a Chapter 11 petition in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). The Services will be performed under the direction of Skadden, and will also be subject to the terms of a separate engagement letter between E&Y and Skadden dated November 28, 2005 (the "Skadden Letter"). Any activities whose performance is not authorized by Skadden will be considered outside the scope of this Agreement.

We have agreed to provide such Services, contingent upon the Bankruptcy Court approving our retention in accordance with the terms and conditions that are set forth in this Agreement.

The Services are limited to research, compilation of data, and analysis with respect to the application of Section 382 of the Internal Revenue Code. During the term of this engagement, E&Y and the Company may mutually agree that E&Y shall provide certain additional tax services to the Company, in accordance with past practices; provided that any such additional tax services do not give rise to any auditor independence issues. Pursuant to this engagement, E&Y will not make any accounting determinations or judgments with respect to the tax matters that are within the scope of this engagement. E&Y, in its sole professional judgment, reserves the right to refuse to undertake any procedure or take any action that could be construed as making

management decisions or performing management functions on behalf of Delphi. In connection with E&Y's provision of the Services, Delphi agrees to perform the following functions:

- Make all management decisions and perform all management functions, including determining account codings and approving all proposed journal entries;
- Assign a competent employee to oversee the tax services and evaluate the adequacy and results of the services;
- Accept responsibility for the results of the tax services; and
- Establish and maintain internal controls over the Company's tax processes.

E&Y will perform the Services in accordance with applicable professional standards, including the Statements on Standards for Tax Services issued by the American Institute of Certified Public Accountants.

None of the work that we will perform under this engagement will constitute an attest engagement in accordance with generally accepted auditing standards or advice and/or documentation related to the effectiveness of internal controls over financial reporting under Section 404 of the Sarbanes-Oxley Act. We assume no responsibility to keep Skadden or the Company apprised of developments in the tax law relative to this engagement after it has been completed.

E&Y shall be solely responsible for all of the liabilities and obligations of E&Y under this Agreement, whether or not performed, in whole or part, by E&Y, any affiliate of E&Y, any other member of the global E & Y network or any of their respective affiliates (collectively, the "E&Y Entities," and any of them, an "E&Y Entity"), or any subcontractor or personnel of any E&Y Entity. The Company shall have no recourse, and shall bring no claim, against any E&Y Entity other than E&Y, or against any subcontractors, members, shareholders, directors, officers, managers, partners, agents, representatives or employees of any E&Y Entity (or any of their respective successors or permitted assigns), or any of their respective assets, with respect to the Services or otherwise under this Agreement.

In the event E&Y is requested or authorized by Skadden or the Company or is required by government regulation, subpoena, or other legal process to produce its documents or its personnel as witnesses with respect to the Services, the Company will, so long as E&Y is not a party to the proceeding in which the information is sought, reimburse E&Y for its professional time and expenses, as well as the fees and expenses of its counsel (including the allocable cost of in-house counsel), incurred in responding to such requests. These requests will be documented with the appropriate receipts or supporting data provided.

E&Y shall bill Delphi for the Services based on the time of E&Y professionals expended in performing the Services. E&Y shall also bill Delphi for all applicable taxes incurred in connection with the delivery of the Services or any reports thereon (except for taxes imposed on E&Y's income).

E&Y's fees for the services described in this Agreement will be on a time and materials basis at the rates per hour outlined below.

| Level | Hourly rate |
|---|---|
| Partner / Principal | $650 - $750 |
| Senior Manager | $550 - $650 |
| Manager | $500 - $600 |
| Senior | $400 - $500 |
| Staff | $200 - $300 |

In addition, E&Y shall bill Delphi for reasonable and documented direct expenses incurred in connection with the performance of the Services. Direct expenses include reasonable and customary out-of-pocket expenses for items such as travel, meals, accommodations and other expenses specifically related to this engagement and in accordance with Exhibit A.7. and Exhibit C. E&Y may receive rebates from various vendors in connection with such expenses that it incurs, which rebates shall be used (on a full dollar-for-dollar basis) to reduce the amount that is billed pursuant to this Agreement.

The Services will be provided in accordance with the Terms and Conditions set forth in Exhibit A, which are incorporated herein by reference. E&Y acknowledges that payment of its fees and expenses hereunder is subject to (i) the jurisdiction and approval of the Bankruptcy Court under Sections 328(a), 330 and 331 of the Bankruptcy Code and any order of the Bankruptcy Court approving the retention of E&Y, (ii) any applicable fee and expense guidelines and/or orders, including the U.S. Trustee Guidelines, and (iii) any requirements governing interim and final fee applications.

We will request payment of our fees in accordance with the Bankruptcy Code, the Bankruptcy Rules, local bankruptcy rules for the Southern District of New York, the guidelines of the U.S. Trustee, and any relevant administrative orders. In addition, we will request reimbursement of our actual expenses related to this engagement, as well as fees for any time (including any time or reasonable expenses of legal counsel) we may incur in considering or responding to discovery requests or participating as a witness or otherwise in any legal, regulatory, or other proceeding as a result of our performance of these services. These requests will follow normal Delphi payment approvals as well as above.

Howard Tucker will be the Engagement Partner, responsible for the provision of Services provided hereunder. Jacob Blank, Partner, Richard Ward, Principal, and Molly Ericson, Senior, will also work closely with Skadden in performing the Services. If one or more of these individuals ceases to provide Services pursuant to this agreement, E & Y will so advise Skadden and, if that professional is replaced, provide Skadden with the name of that professional's replacement. Other staff, not identified herein, may be utilized as required to conduct our work in most efficient manner. Key personnel would be replaced by personnel with like skills and competency where appropriate.

Any controversy or claim with respect to, in connection with arising out of, or in any way related to this Agreement or the Services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of the Company or of E & Y) shall be brought in the Bankruptcy Court, or the District Court if such District Court withdraws the reference and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court, or the District Court upon withdrawal of the reference does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in Exhibit B to this Agreement. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon the Company, E & Y and any all successors and assigns thereof.

By agreement to the provision of the Services set forth in the Agreement, E & Y is not providing a guarantee to Skadden or the Company that E & Y's performance of those services pursuant to the terms and conditions set forth in the Agreement will guarantee the Company's successful reorganization under Chapter 11 of Title 11 of the United States Code.

The benefits of this Agreement shall inure to the respective successors and assigns of the parties hereto and the obligations and liabilities assumed in this Agreement by the parties hereto shall be binding upon their respective successors and assigns.

Yours very truly,

Ernst & Young LLP

AGREED TO AND ACCEPTED BY:

DELPHI CORPORATION

By: _____

JAMES P. WHITSON
CHIEF TAX OFFICER

Name:    JAMES P. WHITSON
Title:    CHIEF TAX OFFICER

Date: _28 Nov 2005_

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By: _____ 11/28/2005
    Cliff Gross, Partner    Date

**Exhibit A**
**Revised Delphi/EY Previously Agreed to Terms and Conditions on file with**
**Delphi General Auditor**

GENERAL TERMS AND CONDITIONS

1.    Agreement.

Upon approval by the Bankruptcy Court of the retention of E&Y by the Company and the terms and conditions of this Agreement, this Agreement will supersede any and all prior agreements or arrangements between the Company and E&Y with respect to the Services or other matters contemplated by this Agreement, including the agreement between E&Y and Skadden dated October 17, 2005. It is agreed that Ernst & Young LLP ("E&Y") will provide the Services described in the accompanying engagement letter (the "Engagement Letter") to which this Exhibit A is attached (the Engagement Letter, this Exhibit A and Exhibits B and C are collectively referred to as this "Agreement"). For purposes of this Agreement, the terms "E&Y" include any affiliates of E&Y identified in the Agreement as performing any of the Services, and the term "Delphi" includes any subsidiaries and affiliates of Delphi for which the Services are performed.

2.    Conduct of E&Y Personnel.

E&Y will take all reasonable steps to assure that all of its partners, principals, directors, officers, employees, agents, subcontractors and/or independent contractors who are performing Services on behalf of E&Y (collectively, "E&Y Personnel") are competent to perform the Services. E&Y will require all E&Y Personnel who are performing any work on Delphi's premises to comply with all of Delphi's regulations and policies that have been provided to E&Y in writing. Delphi, in its sole discretion, has the right to: (a) bar any of E&Y Personnel from Delphi's premises for failure to observe Delphi's regulations or policies, (b) require that E&Y promptly remove from Delphi's premises any of E&Y Personnel who violate any of Delphi's regulations or policies, and (c) require that E&Y cease using any of E&Y Personnel to perform the Services who are reasonably unacceptable to Delphi. Delphi will confer with E&Y to discuss Delphi's concerns prior to requiring removal of any E&Y Personnel. E&Y will replace any barred or removed E&Y Personnel with E&Y Personnel reasonably acceptable to Delphi.

3.    Non-Solicitation of Personnel.

The Company shall not, during the term of this Agreement and for 12 months following its termination for any reason, solicit for employment, or hire, any E&Y personnel involved in the performance of the Services, except as otherwise agreed in writing by E&Y; provided that the Company shall not breach its obligation hereunder by generally advertising available positions or hiring E&Y personnel who either respond to such advertisements or come to the Company on

their own initiative without direct or indirect encouragement from the Company. In addition, without the prior written consent of E&Y, the Company will not solicit for a position on its Board of Directors, nor hire, any current or former partner or professional employee of E&Y or any other E&Y Entity, if such solicitation, hiring or employment may impair the independence of E&Y under the Sarbanes-Oxley Act or under any other law, regulation, rule, listing requirement or professional standard governing the independence of accountants. Without limiting the foregoing, the Company agrees not to solicit, hire or employ, without the prior written consent of E&Y, any current or former partner or professional employee of E&Y or any E&Y Entity: (a) in a financial reporting oversight role, if such partner or professional employee has been involved in the performance of more than ten (10) hours of (or, in the case of the lead and concurring partner, any) audit, review, or attest service for or relating to the Company since the date of filing of the Company's most recent periodic annual report with the SEC or during the one year period preceding that date; or (b) in an accounting role, unless such partner or professional employee does not influence E&Y's operations or financial policies and has no capital balances or other financial arrangements with E&Y; or (c) if such partner or employee has not been retired from E&Y in the 36 months preceding the date of this agreement and that person will become a member of the board of directors. In order to effectuate this provision, the Company agrees to give E&Y written notice prior to soliciting or hiring any such person in order to allow E&Y to assess and advise the Company whether, in E&Y's judgment, such solicitation or hiring may impair E&Y's independence under the Act or under any other law, regulation, rule, listing requirement or professional standard governing the independence of accountants. The Company shall not hire any such person in the event E&Y has advised the Company, within 30 days of receiving such notice, of its determination that independence may be impaired

4.    E&Y Personnel.

E&Y Personnel furnished by E&Y to perform the Services are and will remain E&Y's employees and/or independent contractors and, under no circumstances, will any E&Y Personnel furnished by E&Y be deemed to be Delphi's employees or agents. E&Y is solely responsible, at E&Y's sole cost and expense, for (a) the fulfillment of all obligations to E&Y Personnel and (b) the compliance by E&Y and E&Y Personnel with all laws, regulations, orders and other governmental requirements applicable to performance of the Services.

5.    Professional Fees.

Subject to Bankruptcy Court approval, Delphi will compensate E&Y for actual Services performed as set forth in the Agreement.

6.    Expenses.

Subject to Bankruptcy Court approval, Delphi will reimburse E&Y for all reasonable costs and expenses E&Y incurs in connection with the Services as set forth in the Agreement; provided, however, that E&Y must obtain prior approval of Delphi for any individual reimbursable expenses in excess of $2,500 or for reimbursable expenses which exceed or are anticipated to exceed an aggregate of $10,000 during any calendar month. E&Y will not charge any markup, overhead,

profit or other fees on the reimbursable expenses. The provisions of Exhibit C will govern Delphi's reimbursement obligations.

7.    Taxes.

Unless otherwise agreed by the parties, any applicable taxes imposed on E&Y in connection with the performance of the Services (except for taxes imposed on income) will be invoiced to, and paid by, Delphi in addition to fees and expenses.

8.    Standard of Performance.

E&Y will exercise due professional care and competence in the performance of the Services, and all of the Services will be performed in accordance with applicable professional standards.

EXCEPT AS STATED ABOVE, E&Y MAKES NO WARRANTIES OF ANY KIND OR NATURE, WHETHER EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE OR USE, OR WARRANTIES OF ANY PRODUCTS OR SERVICES PROVIDED BY A THIRD PARTY VENDOR.

9.    Limitation of Liability.

The total aggregate liability of E&Y in connection with the Services or otherwise arising out of this Agreement, regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranty, failure of essential purpose or otherwise, shall be limited to three (3) times the professional fees paid by Delphi to E&Y in respect of the Services. Also, E&Y, E&Y Personnel, or Delphi will not be liable for consequential, punitive or special damages (including loss of profits, data, business or goodwill), regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranties, failure of essential purpose or otherwise, and even if advised of the likelihood of such damages. Notwithstanding anything to the contrary otherwise set forth herein, the preceding limitations shall not apply (a) in the event of any breach of Section 11 below relating to Delphi Proprietary Information or (b) if E&Y is found to be grossly negligent or to have acted in bad faith, willfully or fraudulently, or to have engaged in self-dealing or breach of fiduciary duty (if any).   Delphi's recourse with respect to any liability or obligation of E&Y hereunder shall be limited to the assets of E&Y, and Delphi shall have no recourse against, and shall bring no claim against, any individual partner of E&Y or any of the assets of such individuals. The provisions of this Section 9 shall operate for the benefit of, and shall be enforceable by, any Ernst & Young International member or affiliated firm or any E&Y Personnel that is, together with E&Y, providing the Services hereunder.

To the fullest extent permitted by applicable law, the Company shall indemnify, defend and hold harmless E&Y, from and against all (i) claims and causes of action, pending or threatened, of any kind (whether based on contract, tort or otherwise) by third parties, including any affiliate of the Company, related to or arising out of (A) the use, disclosure of or reliance on, any E&Y report or any portion, abstract or summary thereof by any person or entity that obtains access to it, directly or indirectly, from, through or at the request of the Company, (B) the performance of any services

under this Agreement, or (C) the Company's failure to provide timely, accurate and complete information and resources as necessary for E&Y to perform services in accordance herewith (collectively, "Claims") and (ii liabilities, losses, damages, costs and expenses (including, without limitation, reasonable outside attorneys' fees and the allocable costs of in-house counsel) suffered or incurred by E&Y in connection with any Claims, provided, however, that the Company shall have no indemnification obligation hereunder to the extent that a court of competent jurisdiction finally determines that a Claim by the Company or a representative of the Debtors' estate has arisen out of E&Y's bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

E&Y shall indemnify, defend and hold harmless Delphi, including its directors, officers, employees, agents and representatives, from any and all claims, demands, actions, damages, liabilities, costs and expenses, including reasonable attorney fees and expenses, to the extent arising out of or resulting from the negligence, illegal acts or willful misconduct of E&Y and/or E&Y Personnel in connection with the performance of Services under this Agreement, provided, however, that E&Y will have no obligation to indemnify Delphi to the extent that any such claims or damages arise out of or result from third party claims (other than claims by governmental authorities) against Delphi based on any of E&Y's written or verbal work product prepared pursuant to this Agreement (such as reports, analyses, projections, advice, recommendations and other data).

In each case, the indemnifying party shall also pay to the indemnified party any and all costs and expenses incurred in connection with the enforcement of these indemnification provisions.

In the event E&Y becomes Delphi's external auditor at any time while the Services are being performed, or within the time during which any claim relating thereto must be brought against E&Y by Delphi, this Agreement shall automatically be deemed to be amended, as of the date hereof, to eliminate this Section 9. If so amended, all of the other terms and conditions of this Agreement shall remain in full force and effect.

10.    Federal Confidential Communications Privilege.

A confidentiality privilege under Internal Revenue Code Section 7525 may pertain to certain communications between E&Y personnel and Delphi regarding federal tax advice provided pursuant to this engagement. By retaining E&Y, Delphi agrees that E&Y is instructed to claim the privilege on Delphi's behalf, with respect to any applicable communications, up to and until such time as Delphi may waive any such privilege in writing. As disclosure of any such confidential communications to the Internal Revenue Service or other third party may cause any confidentiality privilege to be waived, each party shall notify the other party if the Internal Revenue Service or other third party requests information about any tax advice or tax advice documents provided by E&Y.

Delphi understands that E&Y makes no representation, warranty, or promise, and offers no opinion with respect to the applicability of such confidentiality privilege to any communication. Delphi agrees to indemnify E&Y for any attorney's fees and other costs and expenses incurred by

E&Y in defending the confidentiality privilege on Delphi's behalf. E&Y agrees to promptly notify Delphi of any claim for which E&Y seeks indemnification and Delphi shall have the right to conduct the defense or settlement of any such claim at Delphi's sole expense, and E&Y shall cooperate with Delphi. E&Y shall nonetheless have the right to participate in such defense at its own expense and to approve the settlement of any claim hereunder that imposes liability or obligation.

11.    Non-Disclosure of Proprietary Information.

"Delphi Proprietary Information" means any information concerning the business and affairs of Delphi which is not publicly available at the time disclosed to or learned by E&Y or any of E&Y Personnel and which is identified by Delphi as "Confidential" and/or "Proprietary" or which is known, or under all of the facts and circumstances should reasonably have been known, by E&Y to be considered by Delphi as confidential and/or proprietary. Delphi Proprietary Information includes, without limitation, this Agreement, trade secrets, product specifications, data, know-how, formulas, compositions, processes, designs, sketches, photographs, samples, inventions, concepts, ideas, information, past, current and planned research and development, past, current and planned manufacturing or distribution methods and processes, price lists, business plans, reports, computer software and programs (including object code and source code), databases, notes, analyses, compilations, studies and other materials or intangibles. Delphi Proprietary Information also includes any materials or information that contain or are based on any other Delphi Proprietary Information, whether prepared by E&Y, Delphi, E&Y Personnel or any other person.

In connection with E&Y's performance of Services, Delphi may disclose Delphi Proprietary Information to E&Y. All Delphi Proprietary Information disclosed, furnished or made available to E&Y or to E&Y Personnel and all Delphi Proprietary Information generated or developed by E&Y or E&Y Personnel will be treated as confidential by E&Y and E&Y Personnel, and E&Y and E&Y Personnel will use reasonable efforts to avoid and prevent disclosure of Delphi Proprietary Information to third parties, either in whole or in part, except upon Delphi's prior written authorization. E&Y will be responsible and liable to Delphi for the violation by any of E&Y Personnel of these confidentiality obligations.

E&Y retains the right to use its knowledge, experience, and know-how, including processes, ideas, concepts and techniques developed in the course of performing the Services. If, during the course of performing the Services, E&Y discloses to Delphi any proprietary algorithms, formulae, tools, techniques, methods, processes, computer software or programs of E&Y ("E&Y Proprietary Information"), Delphi agrees to treat such E&Y Proprietary Information as confidential and use reasonable efforts to avoid and prevent disclosure of such E&Y Proprietary Information to third parties, provided that (a) E&Y informs Delphi of the proprietary nature of such E&Y Proprietary Information in advance of any such disclosure, (b) E&Y marks all documents or other physical media containing E&Y Proprietary Information as "Confidential" or "Proprietary", (c) E&Y discloses such information only to those personnel of Delphi which have a reasonable need to know such E&Y Proprietary Information and (d) does not include such E&Y Proprietary Information (as opposed to the results generated by use or application of the E&Y Proprietary Information) in any work product delivered to Delphi under this Agreement.

If this engagement relates to a strategy offered by E&Y to Delphi that is designed to reduce or defer federal income tax for a direct or indirect corporate participant, pursuant to Treasury Regulation section 301.6111-2(c), Delphi (and each employee, representative, or other agent of Delphi) is expressly authorized to disclose the structure and tax aspects of the strategy with any and all persons, without limitation of any kind.

Written advice provided by E&Y to Delphi is for the information and use of Delphi only and may not be relied upon by any third party without the express written permission of E&Y.

The foregoing obligations under this Section 11 shall not apply to the extent that any information (i) is at the time of disclosure, or thereafter becomes, part of the public domain through a source other than the receiving party, (ii) is subsequently learned by the receiving party from a third party that has a legal right to make such disclosure and does not impose an obligation of confidentiality on the receiving party, (iii) was known to the receiving party at the time of disclosure by the disclosing party, (iv) was generated independently by the receiving party before disclosure by the disclosing party, or (v) is required to be disclosed by the receiving party by law, regulation, subpoena or other process, or applicable professional regulations.

12.     Subcontracting.

E&Y may subcontract a portion of its responsibilities under this Agreement without Delphi's prior written approval to any of the E&Y Entities; provided, however, that E&Y shall remain fully and solely responsible for all liabilities and obligations, including fiduciary duty (if any), of E&Y under this Agreement.

13.     Changes and Delays.

In the event that (i) Delphi requires a change in the scope of the Services, (ii) any change of applicable law or regulation affects the timing or performance of the Services or (iii) any action by Delphi or a third party (other than E&Y Personnel) affects the timing or performance of the Services, the fees and/or schedule for performance for the Services will be equitably adjusted by the parties subject to receipt of all necessary Bankruptcy Court approvals and notification to the U.S. Trustee's office and any committee designated to review fee applications (the "Fee Review Committee").If either party is unable to perform its obligations in accordance with this Agreement as a result of an event or occurrence beyond the reasonable control of the affected party and without the affected party's fault or negligence, then any delay or failure to perform under this Agreement that results from such event or occurrence will be excused for so long as such event or occurrence continues, provided, however, that the affected party gives written notice of such delay (including the anticipated duration of the delay) to the other party as soon as possible after the event or occurrence (but in no event more than three (3) days thereafter). Such events and occurrences may include, by way of example and not limitation, natural disasters, fires, floods, windstorms, severe weather, explosions, riots, wars, sabotage, labor problems (including lockouts, strikes and slowdowns), equipment breakdowns and power failures. If the affected party fails to provide adequate assurances that any delay will not exceed thirty (30) days or if any delay lasts more than thirty (30) days, the other party may terminate this Agreement without further liability.

To the extent this Agreement provides that E&Y's performance under this Agreement is contingent upon specific action or cooperation of Delphi, including the supply to E&Y of specific resources, approvals, and information, any delays in E&Y's performance which occur as a result of the failure or untimely performance by Delphi shall be excused to the extent of any such delay or untimely performance by Delphi and E&Y shall not incur any liability to Delphi as a result of

any such delay or untimely performance by Delphi. If any such delay or untimely performance by Delphi lasts for thirty (30) days or more, E&Y shall be entitled to terminate this Agreement by giving written notice to Delphi, such termination to be effective on the date indicated in said notice.

14.    Term and Termination.

This Agreement may be terminated at any time by the Company or E&Y, but in any event this Agreement will expire upon the earlier of (a) the completion of the Services or (b) the effective date of the Company's confirmed plan of reorganization, or liquidation of the Company's assets under Chapter 11 or 7 of Title 11 of the United States Code, or otherwise. If either party terminates this Agreement, in addition to notice to the other party, the terminating party shall provide not less than three (3) days' prior written notice to the Bankruptcy Court, the U.S. Trustee's office, the Creditor's Committee and the Fee Review Committee (if any). The provisions of this Agreement relating to indemnification, limitation of liability, fees and expenses and alternative dispute resolution will remain operative and in full force and effect regardless of any termination or expiration of this Agreement and shall survive completion of the Company's bankruptcy whether through a confirmed plan of reorganization, liquidation of the Company's assets under Chapter 11 or 7 of Title 11 of the United States Code, or otherwise. If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable, in whole or in part, the remaining portions of this Agreement shall remain in full force and effect.

15.    Conflict.

In the event of any conflict, ambiguity or inconsistency between this Agreement and any other agreement relating to the Services, including any preprinted terms and conditions on Delphi's purchase orders, the terms and conditions of this Agreement shall govern.

16.    Survival.

The provisions of this Agreement which give the parties rights beyond termination of this Agreement will survive any termination of this Agreement.

17.    Severability.

If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable, in whole or part, the remaining portions of this Agreement shall remain in effect.

Nov-28-2005 04:49pm From-SAShwat LLP 05-44481-rdd Doc 1358 Filed 11/30/05 Entered 11/30/05 15:55:01 Main Document T-143 P.070/080 F-580

Pg 214 of 349

## EXHIBIT B

### Dispute Resolution Procedures

*Mediation*

A party shall submit a dispute to mediation by written notice to the other party or parties. The mediator shall be selected by the parties. If the parties cannot agree on a mediator, the CPR Institute for Dispute Resolution ("CPR") shall designate a mediator at the request of a party. Any mediator must be acceptable to all parties.

The mediator shall conduct the mediation as he/she determines, with the agreement of the parties. The parties shall discuss their differences in good faith and attempt, with the mediator's assistance, to reach an amicable resolution of the dispute. The mediation shall be treated as a settlement discussion and shall therefore be confidential. The mediator may not testify for either party in any later proceeding relating to the dispute. The mediation proceedings shall not be recorded or transcribed.

Each party shall bear its own costs in the mediation. The parties shall share equally the fees and expenses of the mediator.

If the parties have not resolved a dispute within 90 days after written notice beginning mediation (or a longer period, if the parties agree to extend the mediation), the mediation shall terminate and the dispute shall be settled by arbitration. In addition, if a party initiates litigation, arbitration, or other binding dispute resolution process without initiating mediation, or before the mediation process has terminated, an opposing party may deem the mediation requirement to have been waived and may proceed with arbitration.

*Arbitration*

The arbitration will be conducted in accordance with the procedures in this document and the CPR Rules for Non-Administered Arbitration ("Rules") as in effect on the date of the Agreement, or such other rules and procedures as the parties may agree. In the event of a conflict, the provisions of this document will control.

The arbitration will be conducted before a panel of three arbitrators, to be selected in accordance with the screened selection process provided in the Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or concerning the applicability, interpretation, or enforceability of any of these procedures, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator may be appointed unless he or she has agreed in writing to these procedures.

The arbitration panel shall have no power to award non-monetary or equitable relief of any sort. Damages that are inconsistent with any applicable agreement, that are punitive in nature, or that are not measured by the prevailing party's actual damages, shall be unavailable in arbitration or any other forum. The parties expressly waive the right to such damages, and the arbitrators shall

have no power to award them unless the foregoing waiver is invalid or unenforceable. The arbitration panel shall have no power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only in accordance with the Rules or applicable professional standards. Before making any such disclosure, a party shall give written notice to all other parties and shall afford them a reasonable opportunity to protect their interests, except to the extent such disclosure is necessary to comply with applicable law, regulatory requirements or professional standards.

The result of the arbitration shall be binding on the parties, and judgment on the arbitration award may be entered in any court having jurisdiction.

**Exhibit C**

**Travel and Per Diem Reimbursement**

A.    If E&Y Personnel are required by Delphi to travel as an incidental requirement in performing services for Delphi, then such travel and per diem expenses, subject to prior written approval of Delphi, and subject to any guidelines established by the Bankruptcy Court or the U.S. Trustee, will be reimbursable as follows:

1.  Air Travel - Economy/Coach class only for U.S. travel.  Business class is permitted for international travel.

2.  Hotel - E&Y will exercise good, sound business judgment and discretion in choosing hotels, such as a moderately priced chain hotels or hotels that offer discounted corporate rates.  Where extended travel is involved, reduced rates may be available and should be requested.

3.  Rental cars - Compact or intermediate class only.  The cost of collision damage waiver and personal accident insurance is the responsibility of E&Y.

4.  Mileage Allowance - Reimbursement will be at $0.405 per mile for the miles which are in excess of his or her normal commute from home to work and back.  When permanently assigned to another location, even if the new location is temporary, E&Y will not be reimbursed for excess miles, additional driving time, etc.

5.  Expense Reports - Customarily available receipts must be attached to expense reports E&Y submits.  Detailed receipts, other than restaurant tabs, are required for all meals and other expenditures of $25.00 or more.

6.  Meals - Meals will not be reimbursed for non-overnight trips, except in the case of late return occasioned by travel outside normal working hours.  Reimbursement for meals will be the actual and reasonable expenses paid by E&Y.

7.  Extended Travel - E&Y should review the home visit policy prior to a trip.  Generally, the following provisions apply:

    •  If the travel expense is less than the living expense in the temporary location, E&Y will be reimbursed for travel to the permanent location every week.

    •  If the travel expense is more than the living expense in the temporary location, E&Y will be reimbursed for travel to the permanent location every two weeks.

    •  Excess expenses due to frequent travel or stays will not be reimbursed by Delphi without its prior written approval.

8.  Miscellaneous - When E&Y chooses an alternative method of transportation, e.g., to drive instead of fly, reimbursement, including meals and lodging, will not exceed the lesser of

the two costs. Documentation to support the lesser cost must be attached to expense report. Travel time must also be limited if on working hours.

The employee, his or her immediate supervisor, and an authorized Delphi representative must sign the expense report form.

E&Y is responsible for travel reservations, hotel/motel accommodations and rental cars. If directed by Delphi, E&Y will make all travel arrangements through Global Experts in Travel, using a special account set up for such purposes.

Any cash advance by E&Y to its employee is the responsibility of E&Y.

9. Per Diem. - In certain instances, a per diem will be paid to E&Y in accordance with Delphi's standard per diem policy.

B.   All travel and per diem for which E&Y seeks reimbursement will be submitted to Delphi on standard vouchers, with substantiating documentation, and will accompany the monthly invoices.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------ X

In re:

    DELPHI CORPORATION., *et al.*,

                  Debtors.

------------------------------------------------------------------ X

: Chapter 11
:
:
: Case No. 05-44481 (RDD)
:
: (Jointly Administered)
:

AFFIDAVIT OF RANDALL J. MILLER IN SUPPORT OF APPLICATION
FOR ORDER UNDER 11 U.S.C. §§ 327(a), 328(a), AND 1107(b)
AUTHORIZING EMPLOYMENT AND RETENTION OF ERNST & YOUNG LLP AS
SARBANES-OXLEY, VALUATION AND TAX SERVICES PROVIDERS TO DEBTORS,
<u>EFFECTIVE NUNC PRO TUNC TO OCTOBER 8, 2005</u>

        Randall J. Miller, being duly sworn, deposes and states as follows:

       1.      I am a partner in the firm of Ernst & Young LLP (*"E&Y LLP"*).  I submit this

Affidavit on behalf of E&Y LLP in support of the application (the *"Application"*) of Delphi

Corporation (*"Delphi"*) and certain of its subsidiaries and affiliates, debtors and debtors-in-

possession in the above-captioned cases (collectively with Delphi, the *"Debtors"*), for an order

pursuant to sections 327(a), 328(a) and 1107(b) of title 11 of the United States Code (the

*"Bankruptcy Code"*) and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the

*"Bankruptcy Rules"*) authorizing the Debtors to retain and employ E&Y LLP to provide

Sarbanes-Oxley, valuation, and tax services, *nunc pro tunc* to October 8, 2005, pursuant to the

terms and conditions set forth in the engagement letters attached as **Exhibits A, B, C and D to**

**the Application** for Sarbanes-Oxley services dated as of November 23, 2005 (the *"SOX*

*Engagement Letter"*), for certain valuation services dated as of November 23, 2005 (the

*"Valuation Engagement Letter"*), for tax services with Skadden, Arps, Slate, Meagher & Flom

LLP (*"Skadden"*) dated as of November 28, 2005  (*"Skadden Tax Engagement Letter"*), and for

tax services with Delphi dated as of November 28, 2005 (the *"Delphi Tax Engagement Letter,"*

and together with the SOX Engagement Letter, the Valuation Engagement Letter, and the Skadden Tax Engagement Letter, the *"Engagement Letters"*).[1]

2.      Except as otherwise indicated, all facts set forth in this Affidavit are based upon my personal knowledge, information and belief; information supplied to me by other employees of E&Y LLP; information learned from client-matter records kept in the ordinary course of business that were reviewed by me or other employees of E&Y LLP under my supervision and direction; my experience and knowledge of the Debtors' operations and financial condition; and/or my experience from working on matters similar to this engagement.[2]  If called as a witness, I would testify competently to the matters set forth herein.

<u>QUALIFICATION OF PROFESSIONALS</u>

3.      E&Y LLP and the professionals that it employs are qualified to represent the Debtors in the matters for which E&Y LLP is proposed to be employed.

4.      As of February 23, 2005, E&Y LLP has been engaged by the Debtors to provide Sarbanes-Oxley, valuation and/or tax services pursuant to certain engagement letters and amendments thereto between Delphi and E&Y LLP dated as of February 23, 2005, April 18, 2005, April 20, 2005, and June 3, 2005 (collectively, the *"Pre-Petition Engagement Letters"*). Subject to the Court's approval, the Engagement Letters, under which the Debtors are seeking to retain and employ E&Y LLP, supersede the Pre-Petition Engagement Letters.

---

[1]      Unless otherwise defined, all capitalized terms used herein have the meanings given to them in the Application.

[2]      In particular, the procedure pursuant to which E&Y LLP determined whether there were any connections between E&Y LLP and any party-in-interest is described in paragraphs 24 through 49 below.  The results of that investigation are set forth as **Exhibits B through D** appended hereto.

5.      E&Y LLP believes that it has assembled a highly qualified, dedicated team of professionals  to support the Debtors during their reorganization efforts pursuant to the terms and conditions of the Engagement Letters.

6.      I am the coordinating partner for E&Y LLP's engagement with the Debtors.  I am E&Y LLP's North Central area practice leader for Business Risk Services (BRS). E&Y LLP's North Central BRS practice includes practices in Cleveland, OH; Columbus, OH; Detroit, MI; Pittsburgh, PA; Cincinnati, OH; Louisville, KY and Upstate NY.  I have over 17 years of experience serving clients in the manufacturing, automotive, and other industries.  E&Y LLP's North Central area BRS practice provides risk-oriented services including internal audit co-sourcing and outsourcing, Sarbanes Oxley compliance support, and special projects.  I have a Bachelor of Business Administration from the University of Michigan and am a member of the Institute of Internal Auditors.

7.      I believe that the retention of E&Y LLP offers numerous benefits to the Debtors and their ability to reorganize based on E&Y LLP's extensive work with the Debtors over the past nine months, during which it has obtained an in-depth understanding of the Debtors and their businesses.

SERVICES TO BE RENDERED

8.      The Debtors have requested that E&Y LLP render certain Sarbanes-Oxley, valuation and tax services during the pendency of these Chapter 11 cases.  E&Y LLP has agreed to provide the following Sarbanes-Oxley, valuation and tax services, as set forth in further detail in the Engagement Letters (the *"Services"*), to the Debtors during the pendency of these Chapter 11 cases, subject to this Court's approval of the Application:

3

## I.  Functional Testing

    a.  Assist management of the Company in the planning and execution of its functional testing of internal controls over financial reporting for the Company's significant accounts and processes, as identified by the Company, and to report any findings and recommendations for improvements in the controls E&Y LLP may identify as a result of this assistance.

## II.  IT SOX 404 Support and Segregation of Duties (SOD)

    b.  Assist Delphi IT in assessing, testing and remediating the IT General Computer Controls environment for applications supporting financial processes in accordance with compliance to Sarbanes Oxley Section 404 legislation. Application controls will be considered as required throughout the process.

    c.  Assist Delphi with their remediation effort of the Segregation of Duties (SOD) issue raised during the 2004 404 assessment.

    d.  Assist in the remediation of Segregation of Duties, which includes organizing and analyzing relevant end user security data against defined business conflicts, providing subject matter expertise on the required user access/profile clean-up, and supporting the design and implementation of preventive and detective processes/tools.

    e.  Provide resources to support Delphi with certain deliverables as required.

## III.  Assistance with Delphi Corporate Accounting Policies (DCAP)

    f.  Assist management of the Debtors in the development of the organization, format and content update of its Delphi Corporate Accounting Policies manual, with primary emphasis on providing the Company with recommended updates to the DCAP to reflect references to, and/or descriptions of, current US Generally Accepted Accounting Principles that may be applicable to the Debtors.

## IV.  Certus Implementation Assistance

    g.  Assist the Debtors in the implementation of the Certus Sarbanes Compliance Tool, including assistance in identifying functional / technical requirements, and working with Certus and Management of the Debtors to implement the application in accordance with those requirements.

    h.  Assist in the completion of the following activities: (i) general project management responsibilities with direction from the Company; (ii) assistance in documenting the functional, technical, and system requirements; (iii) assistance in designing the tool functionality according to the company's specifications; (iv)

assistance in the design and execution of integrated testing; and (v) assistance in the development and deployment of user training.

i.   Provide resources to support the Debtors with developing deliverables which the Debtors deem appropriate for the project.

## V.   Loan Staff Assistance

j.   Provide certain professional personnel of E&Y LLP for the purpose of assisting the Debtors with the documentation process related to specific projects as mutually agreed by E&Y and the Debtors. With respect to this project, E&Y LLP will provide the personnel to perform the following services and such other related services as requested by appropriate members of the Debtors' management and agreed to by E&Y LLP:  (i) support Delphi's management in its SOX 404 remediation activities related to contract administration, including assistance under the direction of Delphi in documentation of the contract administration process; (ii) interviews with stakeholders; (iii) and related administrative processes and documentation.

## VI.   Valuation Services

k.   Provide services relating to the Debtors' Financial Accounting Standard Board's (FASB) Statement No. 142 (SFAS 142) Goodwill and Other Intangible Assets analysis, including (i) assessing the fair value of two Delphi divisions, each with manufacturing facilities in North America, Europe, Asia Pacific and South America, with the overall goal being to assist Debtors' management in assessing the total value of the divisions for the purpose of adhering to SFAS 142 for financial reporting purposes; and (ii) estimating the fair value of certain assets identified by the Debtors to assist in the goodwill impairment tests for the purpose of restating goodwill according to FASB's fair value standards.

## VII.   Tax Services

l.   Provide research, compilation of data, and analysis with respect to the application of Section 382 of the Internal Revenue Code.   During the term of this engagement, E&Y LLP and the Debtors may mutually agree that E&Y LLP shall provide certain additional tax services to the Debtors, in accordance with past practices; provided, however, that any such additional tax services do not give rise to any auditor independence issues.

### PROFESSIONAL COMPENSATION

9.   Subject to the Court's approval and pursuant to the terms and conditions of the

Engagement Letters, E&Y LLP intends to bill the Debtors for the Services rendered to the

Debtors based on its hourly rates for such services as set forth in **Exhibit A** to this Affidavit, in addition to reimbursement of actual expenses.  E&Y LLP's hourly rates are subject to periodic adjustment in accordance with E&Y LLP's standard policies in the ordinary course of E&Y LLP's business; generally, periodic revisions to E&Y LLP's hourly rates are made on May 1st of each year.  E&Y LLP will advise the Debtors, the United States Trustee's Office and the committee (if any) designated to review fee applications (the *"Fee Review Committee"*) of our new rates once they are established if a rate change is effective during the course of this engagement.

10.    E&Y LLP intends to apply to the Court for allowance and payment of compensation for professional services rendered and reimbursement of expenses in accordance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules for the Southern District of New York, the United States Trustee Guidelines and the Engagement Letters, and pursuant to any additional procedures that may be established by the Court in these cases.[3]

OTHER TERMS AND CONDITIONS OF THE ENGAGEMENT LETTERS

11.    Copies of the Engagement Letters are attached to the Application and were submitted for approval therewith.  E&Y LLP's provision of services to the Debtors is contingent upon the Court's approval of each term and condition set forth in the Engagement Letters.

Termination

12.    The Debtors or E&Y LLP may terminate the Engagement Letters at any time, provided, however, that the terminating party shall notify the other, and shall provide the Court, the United States Trustee's Office, the Creditors' Committee and the Fee Review Committee (if

---

[3]    The Application requests approval of an exception that any EYGL Member Firms (as defined below at paragraph 19) providing Services under the Engagement Letters will be permitted to use category codes to describe the time spent, rather than the more detailed descriptions usually required for fee applications.

6

any) with three (3) business days' notice of termination. In any event the Engagement Letters

will expire upon the earlier of the completion of the services to be rendered by E&Y LLP

thereunder or the effective date of the Debtors' confirmed plan of reorganization, or liquidation

of the Debtors' assets under Chapter 11 or 7 of the Bankruptcy Code, or otherwise. The

provisions of the Engagement Letters relating to indemnification, limitation of liability, fees and

expenses, and alternative dispute resolution will remain operative and in full force and effect

regardless of any termination or expiration of this Agreement and shall survive completion of the

Debtors' bankruptcy whether through a confirmed plan of reorganization, liquidation of the

Debtors' assets under Chapter 11 or 7 of the Bankruptcy Code, or otherwise.

<u>Dispute Resolution, Indemnification and Limitations of Liability</u>

13.    Included among the terms and conditions set forth in the Engagement Letters is

language substantially similar to the following:

> Any controversy or claim with respect to, in connection with, arising out of, or in any way related to this Agreement or the Services provided hereunder (including any such matter involving any parent, subsidiary, affiliate, successor in interest or agent of [the Company/Skadden] or of E&Y [LLP]) shall be brought in the Bankruptcy Court, or the District Court if such District Court withdraws the reference and the parties to this Agreement, and any and all successors and assigns thereof, consent to the jurisdiction and venue of such court as the sole exclusive forum (unless such court does not have jurisdiction and venue of such claims or controversies) for the resolution of such claims, causes of action or lawsuits. The parties to this Agreement, and any and all successors and assigns thereof, hereby waive trial by jury, such waiver being informed and freely made. If the Bankruptcy Court, or the District Court upon withdrawal of the reference does not have or retain jurisdiction over the foregoing claims or controversies, the parties to this Agreement and any and all successors and assigns thereof, agree to submit first to non-binding mediation; and, if mediation is not successful, then to binding arbitration, in accordance with the dispute resolution procedures set forth in [Exhibit C to the SOX Engagement Letter, Exhibit D to the Valuation Engagement Letter, Exhibit B to the Delphi Tax Engagement Letter, and the attachment to the Skadden Tax Engagement Letter] to this Agreement. Judgment on any arbitration award may be entered in any court having proper jurisdiction. The foregoing is binding upon [the Company/Skadden], E&Y [LLP] and any all successors and assigns thereof.

7

14.     The SOX Engagement Letter, Valuation Engagement Letter and Delphi Tax

Engagement Letter provide for the following indemnification by Delphi:

> To the fullest extent permitted by applicable law, the Company shall indemnify, defend and hold harmless E&Y [LLP], from and against all (A) claims and causes of action, pending or threatened, of any kind (whether based on contract, tort or otherwise) by third parties, including any affiliate of the Company, related to or arising out of (i) the use, disclosure of or reliance on, any Report or any portion, abstract or summary thereof by any person or entity that obtains access to it, directly or indirectly, from, through or at the request of the Company, (ii) the performance of any services under this Agreement, or (iii) the Company's failure to provide timely, accurate and complete information and resources as necessary for E&Y [LLP] to perform services in accordance herewith (collectively, "Claims") and (B) liabilities, losses, damages, costs and expenses (including, without limitation, reasonable outside attorneys' fees and the allocable costs of in-house counsel) suffered or incurred by E&Y [LLP] in connection with any Claims, provided, however, that the Company shall have no indemnification obligation hereunder to the extent that a court of competent jurisdiction finally determines that a Claim by the Company or a representative of the Debtors' estate has arisen out of E&Y [LLP]'s bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

15.     In addition, the SOX Engagement Letter, and Delphi Tax Engagement Letter

provide for the following indemnification by E&Y LLP:[4]

> E&Y [LLP] shall indemnify, defend and hold harmless Delphi, including its directors, officers, employees, agents and representatives, from any and all claims, demands, actions, damages, liabilities, costs and expenses, including reasonable attorney fees and expenses, to the extent arising out of or resulting from the negligence, illegal acts or willful misconduct of E&Y [LLP] and/or E&Y Personnel in connection with the performance of Services under this Agreement, provided, however, that E&Y [LLP] will have no obligation to indemnify Delphi to the extent that any such claims or damages arise out of or result from third party claims (other than claims by governmental authorities) against Delphi based on any of E&Y [LLP]'s written or verbal work product prepared pursuant to this Agreement (such as reports, analyses, projections, advice, recommendations and other data).
>
> In each case, the indemnifying party shall also pay to the indemnified party any and all costs and expenses incurred in connection with the enforcement of these indemnification provisions.

---

[4]     With respect to the SOX Engagement Letter and Delphi Tax Engagement Letter, E&Y LLP's indemnification of Delphi, as set forth in the above paragraph, is substantially the same as provisions previously agreed to by Delphi and E&Y LLP under the Pre-Petition Engagement Letter for Sarbanes-Oxley services.

16.    Furthermore, the SOX Engagement Letter, Valuation Engagement Letter and

Delphi Tax Engagement Letter provide for the following limitation of liability:[5]

The total aggregate liability of E&Y [LLP] in connection with the Services or otherwise arising out of this Agreement, regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranty, failure of essential purpose or otherwise, shall be limited to three (3) times the professional fees paid by Delphi to E&Y [LLP] in respect of the Services.  Also, E&Y [LLP], E&Y Personnel, or Delphi will not be liable for consequential, punitive or special damages (including loss of profits, data, business or goodwill), regardless of whether such liability is based on breach of contract, tort, strict liability, breach of warranties, failure of essential purpose or otherwise, and even if advised of the likelihood of such damages.  Notwithstanding anything to the contrary otherwise set forth herein, the preceding limitations shall not apply (i) in the event of any breach of Section 11 below relating to Delphi Proprietary Information or (ii) if E&Y [LLP] is found to be grossly negligent, to have acted in bad faith, willfully or fraudulently, or to have engaged in self-dealing or a breach of fiduciary duty (if any).  Delphi's recourse with respect to any liability or obligation of E&Y [LLP] hereunder shall be limited to the assets of E&Y [LLP], and Delphi shall have no recourse against, and shall bring no claim against, any individual partner of E&Y [LLP] or any of the assets of such individuals. The provisions of this Section 9 shall operate for the benefit of, and shall be enforceable by, any Ernst & Young International member or affiliated firm or any E&Y Personnel that is, together with E&Y [LLP], providing the Services hereunder.

17.    The Skadden Tax Engagement Letter provides for the following limitation of

liability:[6]

a.    Except in cases of bad faith, willful misconduct or gross negligence by E&Y [LLP] or where E&Y [LLP] has engaged in self-dealing or breach of fiduciary duty (if any), to the fullest extent permitted by applicable law, the total aggregate liability of E&Y [LLP] (and its subcontractors) to Skadden and to Delphi (and to any affiliate thereof for or in respect of which the Services may be performed), regardless of whether such liability is based on breach of contract, tort, strict

---

[5]    With respect to the SOX Engagement Letter, Valuation Engagement Letter and Delphi Tax Engagement Letter, E&Y LLP's limitation of liability, as set forth in the above paragraph, is substantially the same as provisions previously agreed to by Delphi and E&Y LLP under the Pre-Petition Engagement Letters for Sarbanes Oxley and valuation services (except the SOX Engagement Letter, Valuation Engagement Letter and Delphi Tax Engagement Letter now provide that E&Y LLP's limitation of liability will not apply to bad faith, self-dealing or a breach of fiduciary duty, if any).

[6]    The Skadden Tax Engagement Letter's limitation of liability provisions, as set forth in the above paragraph, were separately negotiated and agreed to between the parties.

liability, breach of warranty, failure of essential purpose or otherwise, in connection with the performance of the Services or otherwise under this Agreement, shall be limited to the fees actually paid to E&Y [LLP] in respect of such Services. In the event E&Y [LLP] becomes Delphi's external auditor at any time while the Services are being performed, or within the time during which any claim relating thereto must be brought against E&Y [LLP] by Delphi, this Agreement shall automatically be deemed to be amended, as of the date hereof, to eliminate this Section IV.A. If so amended, all of the other terms and conditions of this Agreement shall remain in full force and effect.

b. Except in cases of bad faith, willful misconduct or gross negligence by E&Y [LLP] or where E&Y [LLP] has engaged in self-dealing or breach of fiduciary duty (if any), in no event will E&Y [LLP] (or its subcontractors) be liable to Skadden (or to any affiliate thereof for or in respect of which the Services may be performed or to Delphi) for any consequential, incidental, indirect, or special damages (including loss of profits, data, business or good will) in connection with the performance of the Services or otherwise under this Agreement, whether or not liability is based on breach of contract, tort, strict liability, breach of warranty, failure of essential purpose or otherwise, and even if E&Y [LLP] is advised of the likelihood of such damages.  In no event will E&Y [LLP] (or its subcontractors) be liable to Skadden  or to Delphi (or to any affiliate thereof for or in respect of which the Services may be performed) for any punitive damages in connection with the performance of the Services or otherwise under this Agreement.

18.    The Application seeks an order approving the retention and employment of E&Y LLP in accordance with the terms and conditions of the Engagement Letters, which include the above indemnification and limitation of liability provisions.

Sub-Contracting Services to EYGL Member Firms

19.    Prior to the Petition Date, E&Y LLP subcontracted with certain other member firms of Ernst & Young Global Limited (*"EYGL"*) to provide services to the Debtors under the Pre-Petition Engagement Letters for Sarbanes Oxley services.  At the Debtors' request, E&Y LLP will continue to subcontract with member firms of EYGL (*"EYGL Member Firms,"* referred to in the SOX Engagement Letters as *"E&Y Entities"*) to provide the services set forth in the SOX Engagement Letter.  As set forth more fully below, E&Y LLP shall remain fully and solely responsible for all of its liabilities and obligations under the SOX Engagement Letter.

20.     Accordingly, Exhibit B to the SOX Engagement Letter provides the following:

E&Y [LLP] may subcontract a portion of its responsibilities under this Agreement without Delphi's prior written approval to any of the E&Y Entities; provided, however, that E&Y [LLP] shall remain fully and solely responsible for all liabilities and obligations of E&Y [LLP] under this Agreement.

21.     The SOX Engagement Letter further provides:

E&Y [LLP] shall be solely responsible for all of the liabilities and obligations of E&Y [LLP] under this Agreement, whether or not performed, in whole or part, by E&Y [LLP], any affiliate of E&Y [LLP], any other member of the global Ernst & Young network or any of their respective affiliates (collectively, the "E&Y Entities," and any of them, an "E&Y Entity"), or any subcontractor or personnel of any E&Y Entity. The Company shall have no recourse, and shall bring no claim, against any E&Y Entity other than E&Y [LLP], or against any subcontractors, members, shareholders, directors, officers, managers, partners, agents, representatives or employees of any E&Y Entity (or any of their respective successors or permitted assigns), or any of their respective assets, with respect to the Services or otherwise under this Agreement.

22.     EYGL Member Firms will assist E&Y LLP in the provision of services under the SOX Engagement Letter, an arrangement that is beneficial to the estate for the following reasons. Through an integrated approach to the provision of professional services, E&Y LLP and the other EYGL Member Firm(s) providing services under the SOX Engagement Letter (the *"Engagement Member Firms"*) are able to provide a cohesive network of quality and efficiency to the Debtors.

23.     Furthermore, having E&Y LLP act as the clearinghouse for invoices submitted by the Engagement Member Firms will be more convenient to the Debtors by allowing billing to be centralized through a single invoice that settles budgeting and foreign currency issues. E&Y LLP will pay such Engagement Member Firms directly for their services, and will apply to the Court for reimbursement by the Debtors of any such payments made by E&Y LLP to the Engagement Member Firms.

## DISINTERESTEDNESS OF E&Y LLP

24.    In connection with E&Y LLP's proposed retention by the Debtors, E&Y LLP requested the names of all of potential parties in interest in these chapter 11 cases from Shearman & Sterling LLP, special counsel to the Debtors (*"Shearman"*).  Except to the extent described in paragraph 25 of this Affidavit, Shearman provided E&Y LLP with a suggested list of the names of all parties-in-interest, supplemented from time to time thereafter, identified under the following categories:

(a)    Debtors;

(b)    Attorneys for Debtors (general counsel and special bankruptcy counsel);

(c)    Other professionals of the Debtors retained in connection with the Chapter 11 proceeding;

(d)    Debtors' affiliates;

(e)    Attorneys for Debtors' affiliates, if different from above;

(f)    Other professionals of Debtors' affiliates retained in connection with the Chapter 11 proceeding if different from above;

(g)    Debtors' officers;

(h)    Attorneys for Debtors' officers retained in connection with the Chapter 11 proceeding, if different from above;

(i)    Other business affiliations of Debtors' officers;

(j)    Debtors' directors;

(k)    Attorneys for Debtors' directors retained in connection with the Chapter 11 proceeding;

(l)    Other business affiliations of Debtors' directors;

(m)    Debtors' major shareholders (5% or more);

(n)    Attorneys for Debtors' major shareholders retained in connection with the Chapter 11 proceeding;

(o)    Secured lenders, including DIP lenders;

(p)    Attorneys for secured lenders retained in connection with the Chapter 11 proceeding;

(q)    Record noteholders holding 5% or more of any outstanding issuance of notes of the company;

(r)     Attorneys for record noteholders holding 5% or more of any outstanding issuance of notes of the company retained in connection with the Chapter 11 proceeding;

(s)     Indenture trustees;

(t)     Attorneys for indenture trustees retained in connection with the Chapter 11 proceeding;

(u)     Official Statutory Committees Members (all committees);

(v)     Official Statutory Committees Attorneys (for each Official Committee);

(w)     Other professionals retained by each official committee;

(x)     Other professionals retained by members of each official committee retained in connection with the Chapter 11 proceeding;

(y)     Fifty largest unsecured creditors as of the date of filing;

(z)     Attorneys for the fifty largest unsecured creditors retained in connection with the Chapter 11 proceeding;

(aa)    Parties to the Debtor's Significant Executory Contracts and Leases;

(ab)    Attorneys retained in connection with Chapter 11 by parties to the Debtor's Significant Executory Contracts and Leases;

(ac)    Other significant Parties-in-Interest;

(ad)    Attorneys retained in connection with Chapter 11 by Other Significant Parties-in-Interest.

(ae)    Miscellaneous

25.     The names of all of the suggested parties-in-interest received from Shearman are set forth in **Exhibit B** to this Affidavit.  For the following above-listed categories, no parties-in-interest were identified in the suggested lists provided by Shearman: (e), (f), (h), (i), (k), (l), (p), (r), (u)-(x), (z), (ab).  As to those persons or entities identified in the remaining categories above, as well as the persons or entities under categories (u) and (v) appointed since the Petition Date, E&Y LLP searched certain databases of E&Y LLP to determine whether E&Y LLP has provided in the recent past or is currently providing services to the parties-in-interest listed in Exhibit B attached hereto.  To the extent that E&Y LLP's research of relationships with the interested parties indicated that E&Y LLP has provided in the recent past or is currently providing services

to any of these entities in matters unrelated to these cases, E&Y LLP has so indicated in Exhibit
B attached to this Affidavit.  Should additional relationships with parties in interest become
known to E&Y LLP, E&Y LLP shall file supplemental affidavits disclosing such connections
with the Court.

26.     E&Y LLP, a Delaware limited liability partnership, and Ernst & Young LLP, an
Ontario limited liability partnership (*"E&Y (Canada)"*), are separate legal entities.  While they
have, through various agreements, a close operational relationship, that, *inter alia*, provides for
certain shared costs and services and mutual financial support, the two firms do not share their
profits or their fees on professional engagements.

27.     E&Y LLP has searched a database to determine if E&Y (Canada) has provided
within the last year or is currently providing services to the parties-in-interest identified by the
Debtors pursuant to paragraph 24 hereto.   To the extent that E&Y LLP's research of
relationships with the interested parties indicated that E&Y (Canada) has provided in the recent
past or is currently providing services to any of these entities in matters unrelated to these
chapter 11 cases, E&Y LLP has so indicated in the attached Exhibit B to this Affidavit.

28.     The Ernst & Young global network encompasses independent professional
services practices conducted by separate legal entities throughout the world.  All of these
practice entities join the Ernst & Young network by becoming members of Ernst & Young
Global Limited (*"EYGL"*), a company incorporated under the laws of England and Wales and
limited by guarantee, with no shareholders and no capital. EYGL is the principal governance
entity of the Ernst & Young network.  Each EYGL Member Firm is a separate legal entity that is
separately owned and managed.  Through their membership in EYGL, the EYGL Member Firms
undertake to operate certain of their professional practices in accordance with agreed standards

14

and the guidance of EYGL.  In addition, EYGL Member Firms share access to certain intellectual property and centrally licensed materials, including the Ernst & Young name.  E&Y LLP and E&Y (Canada) are members of EYGL.

29.     As set forth above, under the proposed subcontracting arrangement whereby Engagement Member Firms may provide services for certain foreign affiliates of Delphi under the SOX Engagement Letter, E&Y LLP will pay such Engagement Member Firms directly for their services, and will apply to the Court for reimbursement by the Debtors of any such payments made by E&Y LLP to the Engagement Member Firms.  In connection with pre-petition Sarbanes Oxley services rendered for the Debtors under the Pre-Petition Engagement Letters for Sarbanes Oxley services, E&Y LLP has previously made payments to certain EYGL Member Firms which it anticipates may be engaged as Engagement Member Firms in the Debtors' chapter 11 cases.  This subcontracting arrangement is far more beneficial to and conservative of estate resources than would be the case if each EYGL Member Firm were required to seek separate retention by the Debtors.  Although the EYGL Member Firms are not undertaking full-fledged connections checks under this arrangement, no bankruptcy policies should be offended because their work has little or no relationship to the administration of the chapter 11 cases.

30.     On November 30, 2004, Ernst & Young U.S. LLP (an affiliate of E&Y LLP) transferred all of its equity ownership in Ernst & Young Corporate Finance LLC (*"EYCF"*) to Giuliani Partners LLC (the *"Transaction"*).  As a result, EYCF became a subsidiary of Giuliani Partners LLC and changed its name to Giuliani Capital Advisors LLC (*"GCA"*). As a consequence of the Transaction, Ernst & Young U.S. LLP no longer has any direct or indirect ownership interest in EYCF, nor in GCA.  Given the absence of an ownership relationship, E&Y

15

LLP believes that it is not necessary, in performing connections checks for work performed by E&Y LLP on and after December 1, 2004, to review connections that either EYCF or GCA may have or have had, nor to search either of those entities' databases for like information, and E&Y LLP has in fact not undertaken such a research.  To the best of my knowledge, neither EYCF nor GCA have been engaged to provide professional services to the Debtors in these chapter 11 cases.

31.     Prior to the Petition Date, E&Y LLP and the Engagement Member Firms performed certain professional services for the Debtors or their affiliates.  At the Debtors' request, E&Y LLP and the Engagement Member Firms have continued to provide services to Debtors after the Petition Date.  A summary of the prepetition services is as follows:

a.  E&Y LLP performed services related to the Debtors Sarbanes-Oxley function under the Pre-Petition Engagement Letters dated February 23, 2005, April 18, 2005 and April 20, 2005 as well as services that fell under amendments to the February 23, 2005 Pre-Petition Engagement Letter.

b.  E&Y LLP provided valuation services in connection with Debtors' fixed assets under SFAS 142 as detailed in the Pre-Petition Engagement Letter dated June 3, 2005.

c.  E&Y LLP provided tax-related services as detailed in the engagement letter between E&Y LLP and Skadden dated October 17, 2005.

32.     E&Y LLP has an outstanding balance of $72,302 due from the Debtors as of the Petition Date for the pre-petition services rendered and expenses incurred by E&Y LLP with respect to the services described in the preceding paragraph (the *"Prepetition Balance"*).  The Application proposes that $66,746 in overpayments made by the Debtors to E&Y LLP on or before July 1, 2005 be applied toward to the Prepetition Balance, which would result in an adjusted outstanding balance of $5,556 due from the Debtors for pre-petition services and expenses rendered (the *"Adjusted Prepetition Balance"*).  As a condition of its retention by the

16

Debtors, E&Y LLP shall waive the Adjusted Prepetition Balance and will not have a claim for the Adjusted Prepetition Balance.

33.    As part of their practice, E&Y LLP appears in cases, proceedings and transactions involving many different attorneys, financial advisors and creditors, some of which may represent or be claimants and/or parties in interest in these cases.  To the best of my knowledge, as set forth in **Exhibit C** hereto, no professionals involved in these cases have in the past and/or are currently providing services to E&Y LLP with respect to matters related to these chapter 11 cases except as described in paragraph 34 below, and E&Y LLP does not have any relationship with any such entity, attorney or financial advisor that is materially adverse to the Debtors.

34.    Latham & Watkins (*"Latham"*) represented E&Y LLP in connection with E&Y LLP's attempts to be retained in these chapter 11 cases prior to Latham's appointment as counsel to the Official Committee of Unsecured Creditors.  Latham does not currently represent E&Y LLP in any matters related to these chapter 11 cases, and E&Y LLP has retained other counsel (Mayer, Brown, Rowe & Maw LLP) to represent it in connection with this retention. Accordingly, E&Y LLP believes that this prior relationship does not render E&Y LLP's interests adverse to the Debtors.

35.    Parties in interest which are parties in litigation wherein E&Y LLP is a party are set forth in **Exhibit D** appended hereto.   To the best of my knowledge, none of these matters are related to these chapter 11 cases.

36.    Certain entities that are parties in interest herein are lenders to or 401(k) service providers for E&Y LLP: Citigroup (Citibank, N.A.) and Sun Trust Bank participate in E&Y's Revolving Credit Program; E&Y LLP has borrowed long-term debt from Metropolitan Life

17

Insurance Company; and Fidelity Investment Institutional Operations Company, Inc. is the provider of E&Y LLP's 401(k) program.

37.    E&Y LLP has thousands of professional employees.  It is possible that certain employees of E&Y LLP have business associations with parties in interest in these cases or hold securities of the Debtors or interests in mutual funds or other investment vehicles that may own securities of the Debtors.  To the best of my knowledge, none of the E&Y LLP personnel presently providing Services to Delphi under this engagement own securities of Delphi.  Furthermore, E&Y LLP has implemented measures to prevent any personnel with stock-ownership from being engaged in the future in these engagements.

38.    To the best of my knowledge, information and belief formed after reasonable inquiry, but for services provided to the Debtors prior to the Petition Date as set forth above in paragraph 31, none of the services rendered by E&Y LLP to the entities as set forth in Exhibit B hereto and herein, have been in connection with Debtors or these cases.  E&Y LLP believes that these relationships will not impair E&Y LLP's ability to objectively perform professional services on behalf of the Debtors.  E&Y LLP will not accept any engagement that would require E&Y LLP to represent an interest materially adverse to the Debtors.

39.    Both prior to and following the Petition Date, E&Y LLP and certain EYGL Member Firms have been approached by certain entities interested in engaging E&Y LLP or another EYGL Member Firm to provide financial and/or tax due diligence in connection with possible acquisitions of certain domestic or foreign affiliates of Delphi (*"Due Diligence Services"*).  After learning this, I followed up with inquiries to members of these teams regarding the status of these potential engagements.  To the best of my knowledge, after making these inquiries, except to the extent described below, no EYGL Member Firm, including E&Y LLP,

18

has or have provided Due Diligence Services and I do not believe that E&Y LLP has any

interests adverse to the Debtors.

a. Prior to the Petition Date, E&Y LLP provided certain Due Diligence Services to an entity (*"Purchaser A"*) regarding the possible acquisition of a non-Debtor affiliate of Delphi.  The work for this project was completed prior to the Petition Date, and the project has been closed.

b. Prior to the Petition Date, E&Y LLP provided certain Due Diligence Services to an entity (*"Purchaser B"*) regarding the potential acquisition of a business segment of Delphi.  Prior to the Petition Date, this work was put on hold by Purchaser B and E&Y LLP has not provided any services on this engagement since then.  The engagement is not closed and E&Y LLP may be requested to provide further Due Diligence Services to Purchaser B.

c. Prior to the Petition Date, E&Y LLP provided certain Due Diligence Services to an entity (*"Purchaser C"*) regarding a possible transaction involving a division of Delphi.  Since prior to the Petition Date, E&Y LLP has not provided any services under this engagement.  The engagement is not closed and E&Y LLP may be requested to provide further Due Diligence Services to Purchaser C.

d. After the Petition Date, the EYGL member firm in Germany provided certain Due Diligence Services to an entity (*"Purchaser D"*) regarding a potential acquisition of a non-Debtor affiliate of Delphi.  The due diligence work has been completed and a report is being prepared.

e. The EYGL member firm in Belgium is currently providing certain Due Diligence Services to an entity (*"Purchaser E"*) regarding a possible acquisition of a business segment of Delphi.

40.     I further believe that the engagements described above do not render E&Y LLP's

provision of Sarbanes-Oxley, valuation or tax-related services adverse to the Debtors based on

the following: (1) none of the E&Y LLP personnel who have or are expected to provide the

Services for which E&Y LLP now seeks approval have been involved in any of the engagements

for Due Diligence Services; (2) in accordance with firm policies, E&Y LLP will implement

precautions to create an "information barrier" to prevent any overlap of team members between

these engagements to occur in the future, to maintain strict confidentiality among the members of

the team under this engagement and to secure the work product in this engagement; (3) Due

19

Diligence Services are generally handled by separate practice groups within E&Y LLP from the

Sarbanes-Oxley, valuation and tax services under the Engagement Letters, with little, if any,

commingling of team members or sharing of information; for the most part these groups work

independently of one another, and do not share personnel or information with one another,

except to the extent that certain subject matter experts, e.g. tax, are occasionally consulted to

provide advice; and (4) E&Y LLP will not accept any other engagements to provide Due

Diligence Services related to the Debtors in the future during the pendency of their engagement

by Delphi in the Debtors' chapter 11 cases; and additionally, notification will be sent to

appropriate partners at relevant EYGL Member Firms advising them that Due Diligence Services

related to the Debtors should not be accepted during the pendency of the Debtors' chapter 11

cases.

41.     For the forty-two entities indicated in **Exhibit E** attached hereto, E&Y LLP

continues to follow up with various E&Y LLP personnel in order to confirm that the work that

E&Y LLP is doing for or has done for such entities has no connection with the Debtors or these

chapter 11 cases.  E&Y LLP also continues to follow up with various E&Y LLP personnel in

order to confirm that legal advisory services provided to potential parties-in-interest have no

connection to the Debtors or these chapter 11 cases.  To the best of my knowledge, information

and belief as of the date of this Affidavit, I am not aware of any information indicating that the

work that E&Y LLP has performed and/or is performing for these entities is connected with the

Debtors or these cases.  E&Y LLP recognizes its legal obligation to continue these follow-up

efforts, and in the event that E&Y LLP's continuing follow-up efforts with regard to these

entities reveals that work that E&Y LLP performed or is performing for any of these entities is

related to the Debtors or these chapter 11 cases, E&Y LLP will promptly file a supplemental affidavit with this Court so disclosing.

42.     To the best of my knowledge, information and belief, neither the undersigned nor the professionals anticipated to assist the Debtors in these matters are connected to the judge, U.S. Trustee or assistant U.S. Trustee assigned to this matter.

43.     Despite the efforts described above to identify and disclose connections with parties in interest in these chapter 11 cases, because the Debtors are a large enterprise with numerous creditors and other relationships, E&Y LLP is unable to state with certainty that every client representation or other connection of E&Y LLP has been disclosed.  In this regard, if E&Y LLP discovers additional information that requires disclosure, E&Y LLP will file supplemental disclosures with the Court as promptly as possible.

44.     To the best of my knowledge, information and belief formed after reasonable inquiry, E&Y LLP does not hold nor represent any interest materially adverse to the Debtors in the matters for which E&Y LLP is proposed to be retained.  The proposed employment of E&Y LLP is not prohibited by or improper under Bankruptcy Rule 5002.  Accordingly, I believe that E&Y LLP is eligible for retention by the Debtors under the Bankruptcy Code.

45.     During the ninety days immediately preceding the Petition Date, the Debtors paid fees totaling $6,272,138 to E&Y LLP.  During the twelve months immediately preceding the Petition Date, the Debtors paid fees totaling $8,907,968 to E&Y LLP.

46.     At the Debtors' request, on November 1, 2005, E&Y LLP provided the Debtors with an invoice for post-petition fees and expenses in the amount of $649,714 for the Sarbanes-Oxley and valuation services provided to the Debtors between October 8, 2005 and October 31, 2005.  E&Y LLP has not received this or any other post-petition payments from the Debtors.

21

47.     E&Y LLP and the Debtors have been engaged in discussions regarding the potential engagement of E&Y LLP to provide external auditing services for the Debtors.  As of the date of this Affidavit, no formal agreements have been entered between the parties regarding such external auditing services and E&Y LLP has not provided any such services for the Debtors. In connection with this potential engagement, E&Y LLP will submit a formal proposal to the Debtors on or about November 18, 2005.  In the event that the Debtors choose to retain E&Y LLP to provide such services, E&Y LLP anticipates that it will have completed all Services under the Engagement Letters prior to the date when such engagement would begin.  Any such retention and employment of E&Y LLP as external auditors will be subject to supplemental filings by the Debtors and E&Y LLP and the approval of the Court.

48.     None of the parties in interest accounted for more than one percent (1%) of E&Y LLP's revenues in 2005.

49.     Except as otherwise disclosed herein, E&Y LLP has not shared or agreed to share any of its compensation above in connection with this matter with any other person.


                                              By:     /s/ Randall J. Miller
                                                      Name:  Randall J. Miller
                                                      Title:  Partner

[Seal]

Sworn to before me on
this 22nd day of November, 2005


  /s/ Brenda J. Miller
Notary Public

Brenda J. Miller
Notary Public, State of Ohio
My Commission Expires 12/05/2009

22

## EXHIBIT A

**Hourly Rates for the Services by type of service, as set forth in the Engagement Letters**

**Functional Testing And Assistance With The Delphi Corporate Accounting Policies:**

| Level | Hourly Rate ($) |
|---|---|
| Partner/Principal | 330 |
| Senior Manager | 285 |
| Manager | 260 |
| Senior | 145 |
| Staff | 116 |
| International Rates | See Appendix A-1 to the SOX Engagement Letter |

**IT SOX 404 And SOD Support And Certus Implementation Assistance**

| Level | Hourly Rate ($) |
|---|---|
| Partner/Principal | 330 |
| Senior Manager | 285 |
| Manager | 260 |
| Senior | 215 |
| Staff | 155 |
| International Rates | 10% above the listed rates. |

**Loan Staffing Services**:

| Level | Hourly Rate ($) |
|---|---|
| Partner | 330 |
| Senior Manager | 285 |
| BRS Manager | 260 |
| Core Assurance Senior | 180 |
| BRS Senior | 145 |
| Staff | 116 |

**Valuation Services:**

| Level | Hourly Rate ($) |
|---|---|
| Partner/Principal | 425 |
| Senior Manager | 350 |
| Manager | 275 |
| Senior | 225 |
| Staff | 175 |

**<u>Tax Services</u>**:

| Level | Hourly Rate ($) |
|-------|-----------------|
| Partner/Principal | 650 – 750 |
| Senior Manager | 550 – 650 |
| Manager | 500 – 600 |
| Senior | 400 - 500 |
| Staff | 200 - 300 |

**EXHIBIT B**

i

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| a  Debtors | Delphi Automotive Systems (Holding), Inc. | | | X | X | | |
| b  Debtor's Attorneys | Shearman & Sterling LLP | | | X | X | | |
| | Skadden, Arps, Slate, Meagher & Flom LLP | | | X | | X | |
| c  Debtor's Other Professionals retained in connection with Chp. 11 | FTI Consulting, Inc. | | | X | X | | |
| | O'Melveny & Myers LLP | | X | | X | | |
| | Groom Law Group, Chartered | | X | | X | | |
| d  Debtor's Affiliates | Watson Wyatt & Company | | | X | | | X |
| | AMBRAKE Corporation | X | | | X | | |
| | Aurelian Cir Inc. | X | | | X | | |
| | Ambrake Manufacturing, Ltd. | X | | | X | | |
| | ASEC Manufacturing General Partnership | X | | | X | | |
| | ASEC Sales General Partnership | X | | | X | | |
| | Aspire, Inc. | X | | | X | | |
| | CII Co., Ltd. | X | | | X | | |
| | Delco Electronics LLC | X | | | X | | |
| | Delco Electronics Overseas Corporation | X | | | X | | |
| | Delphi Automotive Systems (Holding), Inc. | | | X | X | | |
| | Delphi Automotive Systems - Ashmore LLC | X | | | X | | |
| | Delphi Automotive Systems Global (Holding), Inc. | X | | | X | | |
| | Delphi Automotive Systems Human Resources LLC | X | | | X | | |
| | Delphi Automotive Systems International, Inc. | X | | | X | | |
| | Delphi Automotive Systems Korea, Inc. | X | | | X | | |
| | Delphi Automotive Systems LLC | X | | | X | | |
| | Delphi Automotive Systems Overseas Corporation | X | | | X | | |
| | Delphi Automotive Systems Risk Management Corp. | X | | | X | | |
| | Delphi Automotive Systems Services LLC | X | | | X | | |
| | Delphi Automotive Systems Tennessee, Inc. | X | | | X | | |
| | Delphi Automotive Systems Thailand, Inc. | X | | | X | | |
| | Delphi China LLC | X | | | X | | |
| | Delphi Connection Systems | X | | | X | | |
| | Delphi Corporation | | | X | X | | |
| | Delphi Diesel Systems Corp. | X | | | X | | |
| | Delphi Electronics (Holding) LLC | X | | | X | | |
| | Delphi Foreign Sales Corporation | X | | | X | | |
| | Delphi Foundation, Inc. | X | | | X | | |
| | Delphi Furukawa Wiring Systems LLC | X | | | X | | |
| | Delphi Integrated Service Solutions, Inc. | X | | | X | | |
| | Delphi International Holdings Corp. | X | | | X | | |
| | Delphi International Services, Inc. | X | | | X | | |
| | Delphi Liquidation Holding Company | X | | | X | | |
| | Delphi LLC | X | | | X | | |
| | Delphi Mechatronic Systems, Inc. | X | | | X | | |
| | Delphi Medical Systems Colorado Corporation | X | | | X | | |
| | Delphi Medical Systems Corporation | X | | | X | | |
| | Delphi Medical Systems Texas Corporation | X | | | X | | |
| | Delphi NY Holding Corporation | X | | | X | | |
| | Delphi Receivables LLC | X | | | X | | |
| | Delphi Services Holding Corporation | X | | | X | | |
| | Delphi Technologies, Inc. | X | | | X | | |
| | Delphi Trust I | X | | | X | | |
| | Delphi Trust II | X | | | X | | |
| | Delphi Trust III | X | | | X | | |
| | Delphi Trust IV | X | | | X | | |
| | DREAL, Inc. | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connection Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | EnerDel, Inc. | X | | | X | | |
| | Environmental Catalysts, LLC | X | | | X | | |
| | Exhaust Systems Corporation | X | | | X | | |
| | HE Microwave LLC | X | | | X | | |
| | InPlay Technologies, Inc. | X | | | X | | |
| | MobileAria, Inc. | X | | | X | | |
| | Packard Hughes Interconnect Company | X | | | X | | |
| | PBR Knoxville L.L.C. | X | | | X | | |
| | Specialty Electronics International Ltd. | X | | | X | | |
| | Specialty Electronics, Inc. | X | | | X | | |
| Foreign Subsidiaries | | | | | | | |
| | Alambrados y Circuitos Electricos, S.A. de C.V. | X | | | X | | |
| | Aircoms S.A. de C.V. | X | | | X | | |
| | Arneces Electricos Automotrices, S.A. de C.V. | X | | | X | | |
| | AS Colectoradores Automotrices, S.A. de C.V. | X | | | X | | |
| | ASEC Manufacturing (Thailand) Ltd. | X | | | X | | |
| | ASEC Private Limited | X | | | X | | |
| | Ashmoret Industry Co., Ltd. | X | | | X | | |
| | Autocomodidy Logistics, S.A. de C.V. | X | | | X | | |
| | Beijing Delphi Technology Development Company, Ltd. | X | | | X | | |
| | Beijing Delphi Wan Yuan Engine Management Systems Company, Ltd. | X | | | X | | |
| | BOMD Services Automotivos Ltda. | X | | | X | | |
| | BlueStar Battery Systems International Corp. | X | | | X | | |
| | Bujias Mexicanas, S.A. de C.V. | X | | | X | | |
| | Calsonic, S.L. | X | | | X | | |
| | Calsonic Harrison Co., Ltd. | X | | | X | | |
| | Centro Tecnico Herramental, S.A. de C.V. | X | | | X | | |
| | Cloud Management Holding — Cloud Stock Company PES-SCC | X | | | X | | |
| | Condura, S. de R.L. | X | | | X | | |
| | Controladora Chihuahuense, S. de R.L. de C.V. | X | | | X | | |
| | Controladora de Manufacturas y Circuitos, S. de R.L. de C.V. | X | | | X | | |
| | Controladora de Partes, S. de R.L. de C.V. | X | | | X | | |
| | Controladora Vixtion, S. de R.L. de C.V. | X | | | X | | |
| | Cordaflex Espana, S.A. | X | | | X | | |
| | Cordaflex, S.A. de C.V. | X | | | X | | |
| | Daihan Electronics Yantai Co., Ltd. | X | | | X | | |
| | Daesung Electric Co., Ltd. | X | | | X | | |
| | Daewoo Motor Co., Ltd. | X | | | X | | |
| | Del Teide Co., Ltd. | X | | | X | | |
| | Delphi (China) Technical Center Co. Ltd. | X | | | X | | |
| | Delphi Administracion, S.A. de C.V. | X | | | X | | |
| | Delphi Aluminados Automotrices, S.A. de C.V. | X | | | X | | |
| | Delphi Automotive Systems (China) Holding Company Limited | X | | | X | | |
| | Delphi Automotive Systems (Netherlands) B.V. | X | | | X | | |
| | Delphi Automotive Systems (Thailand) Ltd. | X | | | X | | |
| | Delphi Automotive Systems - Portugal S.A. | X | | | X | | |
| | Delphi Automotive Systems Australia Ltd. | X | | | X | | |
| | Delphi Automotive Systems Craiq SAS | X | | | X | | |
| | Delphi Automotive Systems Deutschland Verwaltungs GmbH | X | | | X | | |
| | Delphi Automotive Systems do Brasil Ltda. | X | | | X | | |
| | Delphi Automotive Systems Espana S.L. | X | | | X | | |
| | Delphi Automotive Systems Holding GmbH | X | | | X | | |
| | Delphi Automotive Systems Italia S.S. | X | | | X | | |
| | Delphi Automotive Systems Japan, Ltd. | X | | | X | | |
| | Delphi Automotive Systems Limited Sirketi | X | | | X | | |
| | Delphi Automotive Systems Luxembourg S.A. | X | | | X | | |
| | Delphi Automotive Systems Maroc | X | | | X | | |
| | Delphi Automotive Systems Nouf SAS | X | | | X | | |
| | Delphi Automotive Systems Philippines, Inc. | X | | | X | | |

Work Sheet - In Court

| | | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| Category | Name | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Delphi Automotive Systems Private Ltd. | X | | | X | | |
| | Delphi Automotive Systems Singapore Investments Pte Ltd. | X | | | X | | |
| | Delphi Automotive Systems Singapore Pte Ltd. | X | | | X | | |
| | Delphi Automotive Systems Sweden AB | X | | | X | | |
| | Delphi Automotive Systems UK Limited | X | | | X | | |
| | Delphi Automotive Systems Verna GmbH | X | | | X | | |
| | Delphi Automotive Sistemas, S.A. de C.V. | X | | | X | | |
| | Delphi Automotive Systems/Ashimori de Mexico, S.A. de C.V. | X | | | X | | |
| | Delphi Belgium N.V. | X | | | X | | |
| | Delphi Cableados, S.A. de C.V. | X | | | X | | |
| | Delphi Calsonic Compressors, S.A.S. | X | | | X | | |
| | Delphi Canada Inc. | X | | | X | | |
| | Delphi Catalyst South Africa (Proprietary) Limited | X | | | X | | |
| | Delphi Connection Systems - Tijuana, S.A. de C.V. | X | | | X | | |
| | Delphi Controladora, S.A. de C.V. | X | | | X | | |
| | Delphi Czech Republic s.r.o. | X | | | X | | |
| | Delphi Diavia West Electronics Co., Ltd. | X | | | X | | |
| | Delphi de Mexico, S.A. de C.V. | X | | | X | | |
| | Delphi Delco Electronics Systems Suzhou Co., Ltd. | X | | | X | | |
| | Delphi Delco Electronics de Mexico, S.A. de C.V. | X | | | X | | |
| | Delphi Delco Electronics Europe GmbH | X | | | X | | |
| | Delphi Deutschland GmbH | X | | | X | | |
| | Delphi Deutschland Technologies GmbH | X | | | X | | |
| | Delphi Holding GmbH | X | | | X | | |
| | Delphi Diesel Body Systems Mexico, S.A. de C.V. | X | | | X | | |
| | Delphi Diesel Systems Pakistan (Private) Limited | X | | | X | | |
| | Delphi Diesel Systems Pension Trustees Limited | X | | | X | | |
| | Delphi Diesel Systems S.r.l. | X | | | X | | |
| | Delphi Diesel Systems Service Mexico, S.A. de C.V. | X | | | X | | |
| | Delphi Diesel Systems, S.A. de C.V. | X | | | X | | |
| | Delphi Diesel Systems France SAS | X | | | X | | |
| | Delphi Diesel Systems Korea Ltd. | X | | | X | | |
| | Delphi Diesel Systems Limited | X | | | X | | |
| | Delphi Ensamble de Cables y Componentes, S. de R.L. de C.V. | X | | | X | | |
| | Delphi Foreign Sales Corporation | X | | | X | | |
| | Delphi France Holdings SAS | X | | | X | | |
| | Delphi France SAS | X | | | X | | |
| | Delphi Harrison Calsonic, S.A. | X | | | X | | |
| | Delphi Holding GmbH | X | | | X | | |
| | Delphi Holding Hungary Asset Management Limited Liability Company | X | | | X | | |
| | Delphi Holdings Luxembourg S.a r.l. | X | | | X | | |
| | Delphi Insurance Limited | X | | | X | | |
| | Delphi Interior Systems de Mexico, S.A. de C.V. | X | | | X | | |
| | Delphi International Holdings Corporation Luxembourg S.C.S. | X | | | X | | |
| | Delphi Italia Automotive Systems S.r.l. | X | | | X | | |
| | Delphi Korea Corporation | X | | | X | | |
| | Delphi Lockheed Automotive Limited | X | | | X | | |
| | Delphi Lockheed Automotive Pension Trustees Limited | X | | | X | | |
| | Delphi Domestic Subsidiary Sanayi ve Ticaret Anonim Sirket | X | | | X | | |
| | Delphi Packard Austria GmbH & Co. KG | X | | | X | | |
| | Delphi Packard Electric Odolovdalua Sdn. Bhd. | X | | | X | | |
| | Delphi Packard Electric Ceska Republika, s.r.o. | X | | | X | | |
| | Delphi Packard Electric Sistie Argentina S.A. | X | | | X | | |
| | Delphi Packard Electric Systems Company Ltd. | X | | | X | | |
| | Delphi Packard Hungary Kft | X | | | X | | |
| | Delphi Packard Romania SRL | X | | | X | | |
| | Delphi Packard S.A. | X | | | X | | |
| | Delphi Pekka Automotive Systems Sp z.o.o. | X | | | X | | |
| | Delphi Saginaw Lingyun Drive Shaft Co., Ltd. | X | | | X | | |
| | Delphi Saginaw Steering Systems UK Limited | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Delphi Shangai Dynamics and Propulsion Systems Co., Ltd. | X | | | X | | |
| | Delphi Sistemas de Energia, S.A. de C.V. | X | | | X | | |
| | Delphi Slovensko s.r.o. | X | | | X | | |
| | Delphi Tychy Sp. z.o.o. | X | | | X | | |
| | Delphi-Calsonic Hungary Manufacturing Limited Liability Company | X | | | X | | |
| | Delphi-TVS Diesel Systems Ltd | X | | | X | | |
| | DESK Pension Trustees Limited | X | | | X | | |
| | Davsa Kmt, S.A. | X | | | X | | |
| | Electroniczna Famar S.A.C.I.I.E | X | | | X | | |
| | Famar Electronica Brasil Comercio e Representacao Ltda. | X | | | X | | |
| | Famar Fueguina, S.A. | X | | | X | | |
| | FUBA Automotive GmbH & Co. KG | X | | | X | | |
| | Gabriel de Mexico, S.A. de C.V. | X | | | X | | |
| | Grundig Car InterMedia System GmbH | X | | | X | | |
| | Grundig Sistemas de Electronica, Lda. Portugal | X | | | X | | |
| | Holistor S.A. | X | | | X | | |
| | Immobiliaria Marlin, S.A. | X | | | X | | |
| | Immobilien Wagen, S.A. | X | | | X | | |
| | Interessengemeinschaft fur Rundfunkschutzrechte GmbH | X | | | X | | |
| | Interessengemeinschaft fur Rundfunkschutzrechte GMBH Schutzrechtsverwertung & Co. | X | | | X | | |
| | Kateon, S.A. de C.V. | X | | | X | | |
| | KDAC (Thailand) Company Limited | X | | | X | | |
| | KDS company Ltd. | X | | | X | | |
| | Korea Delphi Automotive Systems Corporation | X | | | X | | |
| | Kostal Technology Bank Network | X | | | X | | |
| | Mexel AB | X | | | X | | |
| | Noteon Connexion Participacoes Ltda. | X | | | X | | |
| | NSK Ltd. | X | | | X | | |
| | On Se Telecom Co., Ltd. | X | | | X | | |
| | P.T. Delphi Automotive Systems Indonesia | X | | | X | | |
| | Packard Korea Incorporated | X | | | X | | |
| | Productos Delco de Chihuahua, S.A. de C.V. | X | | | X | | |
| | Promotora de Partes Electricas Automotrices S.A. de C.V. | X | | | X | | |
| | PROTEP AG | X | | | X | | |
| | Provecdora de Electricidad de Occidente, S.A. de C.V. | | | X | X | | |
| | Qingdao Daisung Electronic | X | | | X | | |
| | Rio Bravo Electricos, S.A. de C.V. | X | | | X | | |
| | Shanghai Delco Electronics & Instrumentation Co., Ltd. | X | | | X | | |
| | Shanghai Delphi Automotive Air-conditioning Systems Co., Ltd. | X | | | X | | |
| | Shanghai Delphi Emission Control Systems Company, Ltd. | X | | | X | | |
| | Shanghai-Delphi Automotive Door Systems Co., Ltd. | X | | | X | | |
| | Shengyang Bault Automotive Airconditioning Co. Ltd | X | | | X | | |
| | Sistema Electricos e Conmutadores, S.A. de C.V. | X | | | X | | |
| | Specialty Electronics Singapore Pte Ltd | X | | | X | | |
| | Specialty Electronics International Ltd. | X | | | X | | |
| | TELCOM GmbH | X | | | X | | |
| | TecDoc Information System GmbH | X | | | X | | |
| | Termoelectrica del Golfo, S. de R.L. de C.V. | X | | | X | | |
| | Untersuchungsgesellschaft der Katelwerke Reinshagen GmbH | X | | | X | | |
| | Wuhan Shenlong Automotive Airconditioning Co. Ltd. | X | | | X | | |
| | Yeon Kyung Electronics Co., Ltd. | X | | | X | | |
| Debtor's Affiliates Attorneys | NA | | | | | | |
| Debtor's Affiliates Other Professional retained in connection with the Chapter 11 proceeding | NA | | | | | | |
| Debtor's Officers | NA | | | | | | |
| | A.L. Billis | X | | | X | | |
| | A.N. Gardner | X | | | X | | |
| | Alan S. Dawes | X | | | X | | |
| | Allen D. Flowers | X | | | X | | |
| | Arthur Russell Jackson | X | | | X | | |
| | Atul Pasricha | X | | | X | | |
| | Bette M. Walker | X | | | X | | |
| | Brian Eichenlaub | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Duson T. Chen | X | | | X | | |
| | Duo Lin Lee | X | | | X | | |
| | David Allen Burgner | X | | | X | | |
| | David B. Wohleen | X | | | X | | |
| | Derrick M. Williams | X | | | X | | |
| | Diane L. Kay Esq. | X | | | X | | |
| | Diane L. Kaye Esq. | X | | | X | | |
| | Donald L. Runkle | X | | | X | | |
| | Elizabeth M. Schnuring | X | | | X | | |
| | F. Timothy Richards | X | | | X | | |
| | Faris Alsagoff | X | | | X | | |
| | Frank A. Ordonez | X | | | X | | |
| | Gabriel Jamie Dick | X | | | X | | |
| | Gail K. Miller | X | | | X | | |
| | Gurbor Janos Dink | X | | | X | | |
| | Guy C. Hachey | X | | | X | | |
| | Hatm Feigenbaum | X | | | X | | |
| | J.E. Jackson | X | | | X | | |
| | J.L. Williamson | X | | | X | | |
| | J.T. Battenberg III | X | | | X | | |
| | James A. Bertrand | X | | | X | | |
| | James A. Spencer | X | | | X | | |
| | James P. Whitson | X | | | X | | |
| | James W. Barts | X | | | X | | |
| | James Whitson | X | | | X | | |
| | Jeffrey J. Owens | X | | | X | | |
| | Jeffrey M. Kramac | X | | | X | | |
| | Jeffrey Parsons | X | | | X | | |
| | Jerm Sommerline | X | | | X | | |
| | Jimmy C. Chen | X | | | X | | |
| | Jimmy C. Franks Esq. | X | | | X | | |
| | Joyce Chen Esq. | X | | | X | | |
| | John D. Sheehan | X | | | X | | |
| | John G. Hidnick | X | | | X | | |
| | John M. Dunn | X | | | X | | |
| | John P. Arle | X | | | X | | |
| | John Pelose | X | | | X | | |
| | John Short | X | | | X | | |
| | José Maria Alapont | X | | | X | | |
| | Joseph P. Gianmia | X | | | X | | |
| | Karen L. Healy | X | | | X | | |
| | Karen McClain | X | | | X | | |
| | Kevin M. Butler | X | | | X | | |
| | Kevin R. Heigel | X | | | X | | |
| | Laura Marion | X | | | X | | |
| | Logan G. Robinson Esq. | X | | | X | | |
| | Lothar Vreiter | X | | | X | | |
| | Marc C. McGuire Esq. | X | | | X | | |
| | Marjorie Harris Loeb | X | | | X | | |
| | Mark C. Lorenz | X | | | X | | |
| | Mark R. Weber | X | | | X | | |
| | Martin Conlon | X | | | X | | |
| | Mary A. Gray | X | | | X | | |
| | Michael Beckett | X | | | X | | |
| | Michael T. Reagan | X | | | X | | |
| | Mike Rayne | X | | | X | | |
| | Milan J. Belans II | X | | | X | | |
| | Myung Hwan Yoon | X | | | X | | |
| | Nick Hotchkis | X | | | X | | |
| | Pamela M. Geller | X | | | X | | |
| | Paul S. Milhem | X | | | X | | |
| | Peter H. Janak | X | | | X | | |
| | Philippe Dessus | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | R. David Nelson | X | | | X | | |
| | R.A. Young | | X | | X | | |
| | R.E. Hathaway | X | | | X | | |
| | Rainer Herrnring | X | | | X | | |
| | Richard A. Franz | X | | | X | | |
| | Richard J. Zoblocki | X | | | X | | |
| | Richard Jek | X | | | X | | |
| | Robert J. Sparks | X | | | X | | |
| | Robert J. Remenar | X | | | X | | |
| | Robert Kotz Esq. | X | | | X | | |
| | Robert S. Miller | X | | | X | | |
| | Roberto Edwin Berry | X | | | X | | |
| | Rodney O'Neal | X | | | X | | |
| | Ronald M. Jobe | X | | | X | | |
| | Ronald M. Pirtle | X | | | X | | |
| | Russell W.H. Bailey | X | | | X | | |
| | Sarah J. Salton | X | | | X | | |
| | Sean P. Corcoran | X | | | X | | |
| | Shuo Hiyoshida | X | | | X | | |
| | Stephen L. Davey | X | | | X | | |
| | Steve D. Clemons | X | | | X | | |
| | Theodore H. Lewis | X | | | X | | |
| | Thomas D. Goodman | X | | | X | | |
| | Timothy J. Knutson | X | | | X | | |
| | Todd J. Tilton | X | | | X | | |
| | Volker J. Barth | X | | | X | | |
| | William D. Cornwell | X | | | X | | |
| | Wolfgang Hambsch | X | | | X | | |
| Attorneys retained in connection with Chp. 11 by Debtor | NA | | | | | | |
| Other Business Affiliations of Debtor's Officers | NA | | | | | | |
| Debtor's Directors | A.E. Bilhu | X | | | X | | |
| | Alan S. Dawes | X | | | X | | |
| | Atul Pasricha | X | | | X | | |
| | Bernd Gottschalk | X | | | X | | |
| | Brian P. O'Neill | X | | | X | | |
| | Bruno J. Vidaity | X | | | X | | |
| | Chanu Manocha | X | | | X | | |
| | Choon T. Chon | X | | | X | | |
| | Craig G. Naylor | X | | | X | | |
| | Cynthia A. Niekamp | X | | | X | | |
| | David Alan Burgner | X | | | X | | |
| | David J. Jonas | X | | | X | | |
| | David N. Farr | X | | | X | | |
| | Derwek M. Williams | X | | | X | | |
| | Diane L. Kent Esq. | X | | | X | | |
| | Donald L. Runkle | X | | | X | | |
| | Douglas Gruber | X | | | X | | |
| | Elizabeth M. Schwarting | X | | | X | | |
| | F.J. Cocke | X | | | X | | |
| | Frank L. Ordonez | X | | | X | | |
| | Frank Guispo | X | | | X | | |
| | Guy C. Hachey | X | | | X | | |
| | J.H. Jackson | X | | | X | | |
| | J.T. Battenberg III | X | | | X | | |
| | James A. Spencer | X | | | X | | |
| | James P. Whitson | X | | | X | | |
| | Jeffrey J. Owens | X | | | X | | |
| | Jeffrey M. Krause | X | | | X | | |
| | Jinyu Chen Esq. | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connection Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | John A. Passante | X | | | X | | |
| | John D. Opie | X | | | X | | |
| | John D. Sheehan | X | | | X | | |
| | John G. Blahnik | X | | | X | | |
| | John M. Fuerst | X | | | X | | |
| | John P. Arle | X | | | X | | |
| | John Poirier | X | | | X | | |
| | John Short | X | | | X | | |
| | John D. Sheehan | X | | | X | | |
| | Joseph C. Cantu | X | | | X | | |
| | Karen McClain | X | | | X | | |
| | Kevin M. Butler | X | | | X | | |
| | Kevin R. Hegel | X | | | X | | |
| | Laura Marion | X | | | X | | |
| | Lothar Voyer | X | | | X | | |
| | Marci McKenzie Esq. | X | | | X | | |
| | Maria Cosor-Freeman | X | | | X | | |
| | Marjorie Harris Loeb | X | | | X | | |
| | Mark C. Lorenz | X | | | X | | |
| | Michael A. Shader | X | | | X | | |
| | Mike Reese | X | | | X | | |
| | Nick Hotsilak | X | | | X | | |
| | Oscar de Paula Hernandez | X | | | X | | |
| | Pamela M. Geller | X | | | X | | |
| | Patricia C. Saulie | X | | | X | | |
| | Paul S. Milburn | X | | | X | | |
| | Philippe Desnos | X | | | X | | |
| | R. Scott Bailey | X | | | X | | |
| | | | | | | | |
| | Richard Brown | X | | | X | | |
| | Richard E. Erwin | | X | | X | | |
| | Richard Jok | X | | | X | | |
| | Robert H. Brust | X | | | X | | |
| | Robert E. Sparks | X | | | X | | |
| | Robert S. Miller | X | | | X | | |
| | Rodney O'Neal | X | | | X | | |
| | Roger S. Penske | X | | | X | | |
| | Russell W.H. Bailey | X | | | X | | |
| | Sandeep Manocha | X | | | X | | |
| | Sarah J. Shiffler | X | | | X | | |
| | Shoubhro Irimajiri | X | | | X | | |
| | Stephen L. Davey | X | | | X | | |
| | Susan A. McLaughlin | X | | | X | | |
| | Theodore H. Lewis | X | | | X | | |
| | Timothy J. Knutson | X | | | X | | |
| | Virgis W. Colbert | X | | | X | | |
| | William D. Cornwell | X | | | X | | |
| | William Jensen | X | | | X | | |
| | William Steven Bowers | X | | | X | | |
| k Attorneys retained in connection with Chp. 11 by Debtor's Directors | NA | | | | | | |
| l Debtor Directors Other Business Affiliations | NA | | | | | | |
| m Debtor's Major Shareholders (5% or more) | Dodge & Cox | X | | | X | | |
| | Capital Research & Management Company | X | | | X | | |
| | State Street Global Advisors | | | X | X | | |
| | Capital Group International, Inc. | | X | | | X | |
| | State Street Bank and Trust Company, in various fiduciary capacities | | | X | X | | |
| | Brandes Investment Partners, LLC | | | X | | | X |
| n Attorneys retained in connection with Chp. 11 by Debtor's Major Shareholders | NA | | | | | | |

Work Sheet - In Court

| | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|
| **Name** | **No Connection** | **Prior Connection** | **Current Connection** | **No Connection** | **Prior Connection** | **Current Connection** |
| A3 Funding LP | X | | | X | | |
| Abbaco Finance LLC | X | | | X | | |
| ABN AMRO Bank N.V. | | | X | | | X |
| ACA CLO 2005-1 Ltd | X | | | X | | |
| Access Institutional Loan Fund | X | | | X | | |
| ADAR Investment Fund Ltd | X | | | X | | |
| AG Alpha Credit Master Ltd | X | | | X | | |
| Agricultural Bank of China | X | | | X | | |
| Aladi Partners, L.P. | X | | | X | | |
| Arctic Opportunity Master Fund, Ltd | X | | | X | | |
| Amaranth Partners LLC - Trading | | | X | X | | |
| American Express Certificate Company | | | X | X | | |
| AMMC CLO III, Limited | X | | | X | | |
| AMMC CLO IV, Limited | X | | | X | | |
| Apollo Distressed Investment Fund | | X | | X | | |
| Apollo Distressed Investment Offshore | X | | | X | | |
| Appaloosa Bound Ltd. Partnership | X | | | X | | |
| Archimedes Funding IV, Ltd. | X | | | X | | |
| ARX Global High Yield Securities | | | X | X | | |
| Aston Capital Master Fund, LP | | | X | X | | |
| Atlas Capital Funding, Ltd. | X | | | X | | |
| Atrium IV | | X | | X | | |
| Atrium IV | | X | | X | | |
| Aurum CLO 2002-1 Ltd. | X | | | X | | |
| Australia and New Zealand Bank Group | | X | | X | | |
| Avenue CLO Fund, Ltd. | X | | | X | | |
| Avenue CLO II, Ltd. | X | | | X | | |
| Avenue Point CLO, Ltd. | X | | | X | | |
| Balboa CDO I, Limited | X | | | X | | |
| Banco Nazionale Del Lavoro SpA | | X | | X | | |
| Banco Bilbao Vizcaya Argentaria, S.A. | X | | | X | | |
| Banco Santander Central Hispano S.A | X | | | X | | |
| Bank of America, N.A. | X | | | X | | |
| Bank of China Luxembourg SA | X | | | X | | |
| Bank of New York | | | X | | | X |
| Bank of Nova Scotia | | | X | | | X |
| Bank of Tokyo Mitsubishi Trust Co | | | X | X | | |
| Barclays Bank PLC | | | X | X | | |
| BDC Finance LLC | X | | | X | | |
| Bear Stearns Investment Products, 1 | | X | | X | | |
| Black Diamond Offshore Limited | X | | | X | | |
| Blue Square Funding Ltd. Series 3 | X | | | X | | |
| BNP Paribas | X | | | | X | |
| Boldwater CBNA Loan Funding LLC | X | | | X | | |
| Boldwater Credit Opportunities | X | | | X | | |
| Boston Harbor CLO 2004-1, Ltd | X | | | X | | |

| Category |
|---|
| All Secured Lenders, including DIP lenders |

**Delphi Automotive Systems (Holding), Inc.**

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Boston Income Portfolio | X | | | X | | |
| | Braincourt Distressed Securities | X | | | X | | |
| | Brookville Capital Master Fund, L.P. | X | | | X | | |
| | Bryn Mawr CLO I, Ltd. | | X | | X | | |
| | Callidus Debt Partners CDO Fund I | X | | | X | | |
| | Canyon New York Branch | X | | | X | | |
| | Candlewood Capital Partners LLC | X | | | X | | |
| | Canpartners Investments IV LLC | X | | | X | | |
| | Canyon Capital CDO 2002 1 Ltd | X | | | X | | |
| | Canyon Capital CDO 2004 1 Ltd | X | | | X | | |
| | Capitalsource Finance LLC | | | X | X | | |
| | Cargill Financial Services Int'l Inc | | X | | X | | |
| | Castle Garden Funding | X | | | X | | |
| | Castle Hill I Ingram, Ltd. | X | | | X | | |
| | Castle Hill II Ingram, Ltd. | X | | | X | | |
| | Castle Hill III CLO, Limited | X | | | X | | |
| | CDL Loan Funding LLC | X | | | X | | |
| | Cedarview Opportunities Master Fund | X | | | X | | |
| | Celerity CLO Ltd f/k/a Lightspeed CLO | | X | | X | | |
| | Centurion CDO 8, Limited | | X | | X | | |
| | Centurion CDO 9, Limited | | X | | X | | |
| | Centurion CDO II, Ltd. | | X | | X | | |
| | Centurion CDO VI LTD | | X | | X | | |
| | Centurion CDO VII Limited | | X | | X | | |
| | Charter Light I CLO Limited | X | | | X | | |
| | Citadel Hill 2000 Ltd. | X | | | X | | |
| | Citibank N.A. | X | | | X | | |
| | Citcorp USA Inc. | | | X | X | | |
| | Citigroup Financial Products Inc | | | X | X | | |
| | Colonial Funding LLC | X | | | X | | |
| | Comerica Bank Michigan | | | X | X | | |
| | Commerzbank Aktiengesellschaft | X | | | X | | |
| | Credit Industriel et Commercial | X | | | X | | |
| | Credit Suisse Asset Management | X | | | X | | |
| | Credit Suisse, New York & Cayman | X | | | X | | |
| | Credit Suisse, New York & Cayman Islands | X | | | X | | |
| | CSAM Funding IV | X | | | X | | |
| | C-Squared CDO Ltd | X | | | X | | |
| | Cumberland I CLO Ltd | X | | | X | | |
| | Cypresstree Chief Funding LLC | X | | | X | | |
| | D.K. Acquisition Partners, L.P. | X | | | X | | |
| | Dark Mortgages Fund Inc. | X | | | X | | |
| | Delaware Corp Bond Fund, a Series | X | | | X | | |
| | Delaware Delchester Fund, a series | X | | | X | | |
| | Desjardins Financial Security Life | X | | | X | | |
| | Deutsche Bank AG | | | X | X | | |
| | Deutsche Bank Trust Company America | X | | | X | | |

Work Sheet - In Court

| Category | Name | U.S. Connections Check (Nov-05) | | | Canada Connections Check (Nov-05) | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Diversified Income Strategies | X | | | X | | |
| | Diversified Investors High Yield | X | | | X | | |
| | Double Black Diamond offshore LDC | X | | | X | | |
| | Dryden III-Leveraged Loan CDO 2002 | X | | | X | | |
| | Dryden IV Leveraged Loans CDO 2003 | X | | | X | | |
| | Dryden Leveraged Loan CDO 2002 II | X | | | X | | |
| | Dryden VIII - Leveraged Loan CDO | X | | | X | | |
| | Duane Street CLO 1, Ltd. | X | | | X | | |
| | Duma Master Fund LP | X | | | X | | |
| | Duncy Funding LLC | X | | | X | | |
| | Dymas Funding Company LLC | | | X | X | | |
| | ELF Funding Trust I | X | | | X | | |
| | Employees Insurance Of Wausau | | | X | X | | |
| | Emporium Investments, LLC | X | | | X | | |
| | Endurance CLO 1 Ltd. | | | X | X | | |
| | Event Partners DnM Acquisition, LLC | X | | | X | | |
| | Excess Bank | X | | | X | | |
| | Feingold O'Keeffe Credit Fund CBNA | X | | | X | | |
| | Fifth Third Bank, Eastern Michigan | | | X | X | | |
| | First Trust Highland Capital | | X | | | X | |
| | Flagship CLO 2001 I | | | X | X | | |
| | Flagship CLO II | | | X | X | | |
| | Flagship CLO III | | | X | X | | |
| | Flagship CLO IV | | | X | X | | |
| | Forest Creek CLO Ltd. | X | | | X | | |
| | Fortis Bank SA/NV Cayman Island | X | | | X | | |
| | Fortress Credit Funding I LP | X | | | X | | |
| | Fortress Credit Funding II LP | X | | | X | | |
| | Galaxy CLO 2003 1, Ltd. | X | | | X | | |
| | Galaxy III CLO, Ltd. | X | | | X | | |
| | Galaxy IV CLO, Ltd. | X | | | X | | |
| | Galaxy V CLO, Ltd. | X | | | X | | |
| | General Electric Capital Corporation | | | X | | | X |
| | Gleneagles CLO Ltd. | X | | | X | | |
| | Global Enhanced Loan Fund S.A. | X | | | X | | |
| | Global StockPLUS Income Fund | X | | | X | | |
| | Goldman Sachs Credit Partners L.P. | | | X | | | X |
| | Gracie Capital L.P. | X | | | X | | |
| | Grand Central Asset Trust, Gaia | | X | | X | | |
| | Grand Central Asset Trust, SIL | | X | | X | | |
| | Grand Central Asset Trust, SIL | | X | | X | | |
| | Grand Central Asset Trust, Single | X | | | X | | |
| | Greywolf Loan Participation LLC | X | | | X | | |
| | Guggenheim Portfolio Company XXI | | | X | X | | |
| | Gulf Stream - Compass CLO 2004-1, Ltd. | X | | | X | | |
| | Gulf Stream - Compass CLO 2005 I | X | | | X | | |
| | Gulf Stream - Compass CLO 2005-1 | X | | | X | | |
| | Gulf Stream - Compass CLO 2002 I | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holdings), Inc. — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holdings), Inc. — Canada Connections Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Gulf Streams Compass CLO 2004-1, Ltd | X | | | X | | |
| | Hammerman Capital Master Fund LP | | | | | | |
| | Hammerman Counterpoint Master Fund | | | | | | |
| | Harbour Town Funding LLC | X | | | X | | |
| | HBK Master Fund L.P. | | | X | X | | |
| | High Income Portfolio | X | | | X | | |
| | Highland Floating Rate Advantage | | | X | X | | |
| | Highland Floating Rate LLC | | | X | X | | |
| | Highland Offshore Partners, L.P. | | | X | X | | |
| | Horizon Income Fund, Ltd. | | | | X | | |
| | HSBC Bank USA, National Association | | X | X | X | | |
| | IBS Life Insurance Company | X | | | X | | |
| | ING Capital LLC | X | | | X | | |
| | ING Investment Management CLO I | | X | | X | | |
| | ING Prime Rate Trust | | X | | X | | |
| | ING Senior Income Fund | X | | | X | | |
| | Investment CBNA Loan Funding LLC | X | | | X | | |
| | Investors Bank and Trust Co | X | | | X | | |
| | Jasper CLO Ltd | X | | | X | | |
| | JPMorgan Chase Bank, N.A. | X | | | X | | |
| | Katonah II Ltd | X | | | X | | |
| | Katonah III Ltd | X | | | X | | |
| | Katonah IV Ltd | X | | | X | | |
| | KeyBank National Association | X | | | X | | |
| | KIL Loan Funding LLC | X | | | X | | |
| | Kingsland I Ltd | X | | | X | | |
| | KKR Financial CLO 2005 1, Ltd. | X | | | X | | |
| | KZH Pondview LLC | X | | | X | | |
| | KZH Soleil LLC | X | | | X | | |
| | KZH Soleil-2 LLC | X | | | X | | |
| | Lehman Commercial Paper Inc. | X | | | X | | |
| | Liberty CLO Ltd | X | | | X | | |
| | Liberty Mutual Fire Insurance Company | X | X | | X | | |
| | Liberty Mutual Ins Company | | | X | | | X |
| | LibertyView Loan Fund, LLC | X | | | X | | |
| | Lincoln National Life Insurance Co. | X | | | X | | |
| | Lincoln Natl Life Insur Co. Sep Acc | X | | | X | | |
| | Linden Capital LP | X | | | X | | |
| | Longenard Street Credit (Master) LT | X | | | X | | |
| | Loan Funding I LLC | X | | | X | | |
| | Loan Funding III LLC | X | | | X | | |
| | Loan Funding V LLC | X | | | X | | |
| | Loan Funding XI LLC | X | | | X | | |
| | Lone Star Trust | X | | | X | | |
| | Long Grove CLO, Limited | X | | | X | | |
| | Madison Park Funding I, Ltd. | X | | | X | | |
| | Marathon CLO I Ltd | | | X | X | | X |
| | Marathon Special Opportunity Master | | | X | | | X |
| | Market Square CLO Ltd. | X | | | X | | |
| | Marquette Park CLO Ltd | X | | | X | | |
| | McDonnell Loan Opportunity Ltd | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Metropolitan West High Yield Bond | | | | X | | |
| | Metropolitan West Strategic Income | | X | | X | | |
| | Michou Corporate Bank Ltd fka DKB | X | | | X | | |
| | ML Global Investment Series Income | X | | | X | | |
| | Morgan Stanley Senior Funding, Inc. | | | X | | | X |
| | Mountain Capital CLO II Ltd | X | | | X | | |
| | Mountain Capital CLO V Ltd | X | | | X | | |
| | Muirfield Trading LLC | X | | | X | | |
| | National City Bank | X | | | | | X |
| | Newport CLO Ltd | X | | | X | | |
| | Oak Hill Credit Alpha Fund (Offshore) | X | | | X | | |
| | Oak Hill Credit Alpha Fund LP | X | | | X | | |
| | Oak Hill Credit Partners I, Limited | X | | | X | | |
| | Oak Hill Credit Partners II, Limited | X | | | X | | |
| | Oak Hill Credit Partners III, Limited | X | | | X | | |
| | Oak Hill Credit Partners IV, Limited | X | | | X | | |
| | Oak Hill Securities Fund II, LP | X | | | X | | |
| | Oak Hill Securities Fund, L.P. | X | | | X | | |
| | Ocean High Yield Plus Fund LP | X | | | X | | |
| | Octagon Investment Partners V, Ltd | X | | | | X | |
| | Octagon Investment Partners V, Ltd | X | | | | X | |
| | Octagon Investment Partners VI, Ltd | X | | | | X | |
| | Octagon Investment Partners VII, Ltd | X | | | | X | |
| | Patton Master Fund LP | X | | | X | | |
| | Peak Avenue Loan Trust | X | | | X | | |
| | PIMCO Floating Income Fund | X | | | X | | |
| | PIMCO Floating Rate Income Fund | X | | | X | | |
| | PIMCO Floating Rate Strategy Fund | X | | | X | | |
| | PIMCO High Yield Fund | X | | | X | | |
| | Pinewood Credit Markets Master Fund | X | | | X | | |
| | Pioneer Floating Rate Trust | X | | | X | | |
| | PNC Bank, NA | X | | | X | | |
| | Post Leveraged Loan Master Fund, LP | X | | | X | | |
| | Post Opportunity Fund LP | X | | | X | | |
| | Post Total Return Fund, L.P. | X | | | X | | |
| | Principal Life Insurance Company | X | | | X | | |
| | Prospect Funding I, LLC | X | | | X | | |
| | Protective Life Insurance Company | | | X | X | | |
| | Putnam Floating Rate Income Fund | | | X | | X | |
| | Putnam High Yield Advantage Fund | | | X | | X | |
| | Putnam High Yield Trust | | | X | | X | |
| | Putnam Variable Trust High Yield Fu | | | X | | X | |
| | Q Funding III LP | X | | | X | | |
| | Quadrangle Master Funding Ltd | | | | X | | |
| | Quattro Distressed Opportunity Fund | | X | | X | | |
| | Quattro Fund Ltd | | | X | X | | |
| | Quattro Multi-Strategy Master Fund | | | X | X | | |
| | R2 Top Hat Ltd. | X | | | X | | |
| | Race Point CLO, Limited | X | | | X | | |
| | Race Point II CLO, Limited | X | | | X | | |
| | Race Point III CLO, Limited | X | | | X | | |
| | Red Fox Funding LLC | X | | | X | | |
| | Redwood Master Fund, Ltd. | X | | | X | | |
| | Riviera Funding LLC | X | | | X | | |
| | Robson Trust | X | | | | X | |
| | Rockwall CDO Ltd | X | | | X | | |
| | Rosemont CLO Ltd. | X | | | X | | |
| | Salomon Brothers Variable Rate | | X | | X | | |
| | Stanley High Yield Partners II | X | | | X | | |

Work Sheet - In Court

| | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|
| Category / Name | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| Sankaty High Yield Partners III, LP | X | | | X | | |
| Satellite Senior Income Fund II | X | | | X | | |
| Satellite Senior Income Fund, LLC | X | | | X | | |
| Saturn Trust | X | | | X | | |
| Scoggin Worldwide Fund Ltd | X | | | X | | |
| Scottwood Partners LP | X | | | X | | |
| Sea Pines Funding LLC | X | | | X | | |
| Secondary Loan and Distressed Credit | X | | | X | | |
| SEI Institutional Managed TSI High | X | | | X | | |
| Seneca Capital, L.P. | | X | | X | | |
| SEQUILS Centurion V, Ltd. | X | | | X | | |
| Sequila-ING (HBDM), Ltd. | X | | | X | | |
| SEQUILS-Magnum, Ltd. | X | | | X | | |
| Seven River Master Fund Ltd | X | | | X | | |
| Serra CLO I Ltd. | X | | | X | | |
| Silverado CLO 2006 I Ltd | X | | | X | | |
| Sky CBNA Loan Funding LLC | X | | | X | | |
| SMBC MVI SPC | | X | | X | | |
| Societe Generale SA New York | | | X | | | X |
| SOF Investment, LP | X | | | X | | |
| Southpeak CLO I Limited | X | | | X | | |
| Special Situations Investing Group, | X | | | X | | |
| SRI Fund LP | X | | | X | | |
| Stanfield Arbitrage CDO, Ltd | | X | | X | | |
| Stanfield Bristol CLO, LTD | | X | | X | | |
| Stanfield Carrera CLO, Ltd. | | X | | X | | |
| Stanfield Vantage CLO Ltd. | | X | | X | | |
| Sumitomo Mitsui Banking Corporation | | | X | X | | |
| Sun Trust Bank Atlanta | | | X | X | | |
| TCW Select Loan Fund, Limited | | | X | X | | |
| TCW Senior Secured Loan Fund LP | | | X | X | | |
| Enron Corp/wts Master Fund, Ltd. | | X | | X | | |
| The Drake Offshore Master Fund, Ltd | | | X | X | | |
| The Foothill Group/Incorporated | | X | | X | | |
| The Hartford Floating Rate Fund | | | X | X | | |
| The Royal Bank of Scotland PLC | | | X | X | | |
| Thrivent High Yield Fund | | | X | X | | |
| Thrivent High Yield Fund II | | | X | X | | |
| Thrivent High Yield Portfolio | | | X | X | | |
| Thrivent High Yield Portfolio II | | | X | X | | |
| Trilogy Portfolio Company, LLC | | | X | X | | |
| TRS Callisto LLC | X | | | X | | |
| TRS Leda LLC | X | | | X | | |
| TRS Thebe LLC | X | | | X | | |
| TRS THEBE LLC | X | | | X | | |
| UBS AG, Stamford Branch | | | X | | | X |
| UBS Loan Finance LLC | X | | | X | | |
| UFJ Bank Limited | X | | | X | | |
| Venture CDO 2002, Limited | X | | | X | | |
| Venture II CDO 2002, Limited | X | | | X | | |
| Venture III CDO Limited | X | | | X | | |
| Venture IV CDO, Limited | X | | | X | | |
| Vista Leverage Income Fund | X | | | X | | |
| Vulcan Ventures, Inc. | X | | | X | | |
| Wachovia Bank National Association | | | X | | X | |
| Watershed Capital Institutional | X | | | X | | |
| Watershed Capital Partners (Offshore) | X | | | X | | |
| Watershed Capital Partners, L.P. | X | | | X | | |
| Waterville Funding LLC | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connection Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Waveland Ingots, Ltd. | X | | | X | | |
| | Wells Capital Management-12831400 | X | | | X | | |
| | Wells Capital Management-13762900 | X | | | X | | |
| | Wells Capital Management-13823100 | X | | | X | | |
| | Wells Capital Management-13925602 | X | | | X | | |
| | Wells Capital Management-16045000 | X | | | X | | |
| | Wells Capital Management-16017000 | X | | | X | | |
| | Wells Capital Management-16463700 | X | | | X | | |
| | Wells Capital Management-16889700 | X | | | X | | |
| | Wells Capital Management-16959700 | X | | | X | | |
| | Wells Capital Management-17299500 | X | | | X | | |
| | Western Asset Floating Rate High | | X | | X | | |
| | Whitney Private Debt Fund LP | X | | | X | | |
| | Wind River CLO I Ltd. | X | | | X | | |
| | Windmill Master Fund LP | X | | | X | | |
| | Wrigley CDO I Ltd. | X | | | X | | |
| | ACA CLO 2005-1, Ltd. | X | | | X | | |
| | Access Institutional Loan Fund | X | | | X | | |
| | ADAR Investment Fund Ltd. | X | | | X | | |
| | Addison CDO I, Limited | X | | | X | | |
| | AG Alpha Credit Master, Ltd. | X | | | X | | |
| | Ahab Partners, L.P. | X | | | X | | |
| | Airlie Opportunity Master Fund, Ltd. | X | | | X | | |
| | American Express Certificate Company | | | X | X | | |
| | AMMC CLO III Limited | X | | | X | | |
| | AMMC CLO IV, Limited | X | | | X | | |
| | Archimedes Funding IV, Ltd. | X | | | X | | |
| | ARX Global High Yield Securities | X | | | X | | X |
| | Aristeia International Fund, LP | X | | | X | | X |
| | Atlas Capital Funding, Ltd. | X | | | X | | |
| | Atrium IV | | X | | X | | |
| | Atrium CLO 2002-1 Ltd. | X | | | X | | |
| | Avenue CLO Fund, Ltd. | X | | | X | | |
| | Avenue CLO II Ltd. | X | | | X | | |
| | Avery Point CLO Ltd. | X | | | X | | |
| | Bilboa CDO I, Limited | X | | | X | | |
| | BRC Finance LLC | X | | | X | | |
| | Bear Stearns Investment Products | | X | | X | | |
| | Black Diamond Offshore Limited | X | | | X | | |
| | Blue Square Funding Ltd. Series 3 | X | | | X | | |
| | Boldwater GNMA Loan Funding LLC | X | | | X | | |
| | Boldwater Credit Opportunities | X | | | X | | |
| | Boston Harbor CLO 2004-1, Ltd. | X | | | X | | |
| | Boston Income Portfolio | X | | | X | | |
| | Brookville Capital Master Fund, L.P. | X | | | X | | |
| | Bryn Mawr CLO Ltd. | | X | | X | | |
| | Callidus Debt Partners CDO Fund I | X | | | X | | |
| | Candlewood Capital Partners LLC | X | | | X | | |
| | Carpenters Investments IV LLC | X | | | X | | |
| | Canyon Capital CDO 2001-1 Ltd. | X | | | X | | |
| | Canyon Capital CLO 2004-1 Ltd. | X | | | X | | |
| | Castle Garden Funding | X | | | X | | |
| | Castle Hill I CLO, Limited | X | | | X | | |
| | Castle Hill II CLO, Ltd. | X | | | X | | |
| | Castle Hill I Ingots, Ltd. | X | | | X | | |
| | CDL Loan Funding LLC | X | | | X | | |
| | Cedarview Opportunities Master Fund | | X | | X | | |
| | Celerity CLO Ltd. | X | | | X | | |
| | Lightspeed CLO | X | | | X | | |
| | Centurion CDO 6 Limited | | X | | X | | |
| | Centurion CDO 8 Limited | | X | | X | | |
| | Centurion CDO II, Ltd. | | X | | X | | |
| | Centurion CDO VI, LTD | | X | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Centurion CDO VII Limited | | X | | X | | |
| | Chatham Light II CLO Limited | X | | | X | | |
| | Citadel Hill 2000 Ltd. | X | | | X | | |
| | Citicorp USA, Inc. | | | X | X | | |
| | Colonial Funding LLC | X | | | X | | |
| | Commerzbank Aktiengesellschaft | X | | | X | | |
| | CSAM Funding IV | X | | | X | | |
| | C-Squared CDO Ltd. | X | | | X | | |
| | Cumberland II CLO LTD | X | | | X | | |
| | Cypresstree Claif Funding LLC | X | | | X | | |
| | D.K. Acquisition Partners, L.P. | X | | | X | | |
| | Debt Strategies Fund, Inc. | X | | | X | | |
| | Delaware Open-End Fund | X | | | X | | |
| | Delaware Delchester Fund | X | | | X | | |
| | Desjardins Financial Security Life | X | | | X | | |
| | Diversified Income Strategies | X | | | X | | |
| | Diversified Investors High Yield | X | | | X | | |
| | Double Black Diamond Offshore LDC | X | | | X | | |
| | Dryden III Leveraged Loan CDO 2002 | X | | | X | | |
| | Dryden IV Leveraged Loan CDO 2003 | X | | | X | | |
| | Dryden Leveraged Loan CDO 2002-II | X | | | X | | |
| | Dryden VIII - Leveraged Loan CDO | X | | | X | | |
| | Duane Street CLO I, LTD | X | | | X | | |
| | Duma Master Fund LP | X | | | X | | |
| | Dunco Funding LLC | X | | | X | | |
| | ELF Funding Trust I | X | | | X | | |
| | Employers Insurance of Wausau | | | X | X | | |
| | Emporium Investments, LLC | X | | | X | | |
| | Endurance CLO I Ltd. | | | X | X | | |
| | Excess Book | X | | | X | | |
| | Foregin/Offce Credit Fund CBNA | | X | | X | | |
| | First Trust/Highland Capital | X | | | X | | |
| | Flagship CLO 2001-1 | X | | | X | | |
| | Flagship CLO II | X | | | X | | |
| | Flagship CLO III | | | X | X | | |
| | Flagship CLO IV | | | X | X | | |
| | Flagship CLO V | | | X | X | | |
| | Forest Creek CLO Ltd. | X | | | X | | |
| | Extra Bank NA NY, Cayman Island Branch | X | | | X | | |
| | Fortress Credit Funding I LLP | X | | | X | | |
| | Fortress Credit Funding II LP | X | | | X | | |
| | Fortress Credit Funding II LP | X | | | X | | |
| | Galaxy CLO 2003-1 Ltd. | X | | | X | | |
| | Galaxy III CLO Ltd. | X | | | X | | |
| | Galaxy IV CLO Ltd. | X | | | X | | |
| | Galaxy V CLO Ltd. | X | | | X | | |
| | Geneagles CLO Ltd. | X | | | X | | |
| | Global Enhanced Loan Fund S.A. | | X | | X | | |
| | Global Dock-US Income Fund | | X | | X | | |
| | Gracie Capital L.P. | X | | | X | | |
| | Grand Central Asset Trust, Gaia | X | | | X | | |
| | Grand Central Asset Trust, SIL | X | | | X | | |
| | Grand Central Asset Trust, Single | X | | | X | | |
| | Greywolf Loan Participation LLC | | | X | X | | |
| | Guggenheim Portfolio Company XII | X | | | X | | |
| | Gulf Stream - Compass CLO 2005-1 | X | | | X | | |
| | Gulf Stream - Compass CLO 2003-1 | X | | | X | | |
| | Gulf Stream - Compass CLO 2005-1 | X | | | X | | |
| | Gulf Stream Compass CLO 2002-1 | X | | | X | | |
| | Gulf Stream-Compass CLO 2004-1 Ltd | X | | | X | | |
| | Hanmesman Capital Master Fund LP | X | | | X | | |
| | Hanmesman Counterpoint Master Fund | X | | | X | | |
| | Harbour Town Funding LLC | X | | | X | | |
| | High Income Portfolio | | | X | X | | |
| | Highland Floating Rate Advantage | | | X | X | | X |
| | Highland Floating Rate LLC | | | X | X | | X |

Work Sheet - In Court

| | Delphi Automotive Systems (Holding), Inc. | | | | Delphi Automotive Systems (Holding), Inc. | | |
| | U.S. Connections Check | | | | Canada Connections Check | | |
| | Nov-05 | | | | Nov-05 | | |
| Category | Name | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|---|---|---|
| | Highland/Offshore Partners, L.P. | | | X | X | | |
| | Horizon Income Fund, Ltd. | | X | | X | | |
| | IDS Life Insurance Company | | | | X | | |
| | ING Capital LLC | X | | | X | | |
| | ING Investment Management CLO I, Ltd | X | | | X | | |
| | ING Prime Rate Trust | | X | | X | | |
| | ING Senior Income Fund | | X | | X | | |
| | Investment CBNA Loan Funding LLC | X | | | X | | |
| | Invesco Bank and Trust Co | X | | | X | | |
| | Jasper CLO Ltd. | X | | | X | | |
| | Katonah II, Ltd. | X | | | X | | |
| | Katonah III, Ltd. | X | | | X | | |
| | Katonah IV, Ltd. | X | | | X | | |
| | KBL Loan Funding LLC | X | | | X | | |
| | Kingsland II, Ltd. | X | | | X | | |
| | KKR Financial CLO 2005-1, Ltd. | X | | | X | | |
| | KZH Pondview LLC | X | | | X | | |
| | KZH Soleil LLC | X | | | X | | |
| | KZH Soleil-2 LLC | X | | | X | | |
| | Liberty CLO Ltd. | X | | | X | | |
| | Liberty Mutual Ins Company | X | | X | X | | X |
| | LibertyView Loan Fund, LLC | | | X | X | | |
| | Lincoln National Life Insurance Co. | | | X | X | | |
| | Lindley Capital LP | X | | | X | | |
| | Longhorn Senior Credit (Master) | X | | | X | | |
| | Loan Funding I LLC | X | | | X | | |
| | Loan Funding III LLC | X | | | X | | |
| | Loan Funding X LLC | X | | | X | | |
| | Loan Funding XI LLC | X | | | X | | |
| | Lone Star State Trust | X | | | X | | |
| | Long Grove CDO, Limited | X | | | X | | |
| | Madison Park Funding I, Ltd. | X | | X | X | | |
| | Marathon CLO I Ltd. | | | X | | | |
| | Marathon Special Opportunity | | | X | | | |
| | Market Square CLO Ltd. | X | | | X | | |
| | Marquette Park CLO Ltd. | X | | | X | | |
| | McDonnell Loan Opportunity Ltd. | X | | | X | | |
| | Metropolitan West High Yield Bond | | X | | X | | |
| | Metropolitan West Strategic Income | | X | | X | | |
| | Mizuho Corporate Bank Ltd. | X | | | X | | |
| | ML Global Investment Series Income | X | | | X | | |
| | Mountain Capital CLO II Ltd. | X | | | X | | |
| | Mountain Capital CLO III Ltd. | X | | | X | | |
| | Mountain Capital CLO IV, Ltd. | X | | | X | | |
| | Muirfield Trading LLC | X | | | X | | |
| | National City Bank | X | | | X | | |
| | Nemean CLO Ltd. | X | | | X | | |
| | Oak Hill Credit Alpha Fund (Offshore) | X | | | X | | |
| | Oak Hill Credit Alpha Fund,LP | X | | | X | | |
| | Oak Hill Credit Partners I, Limited | X | | | X | | |
| | Oak Hill Credit Partners II, Limited | X | | | X | | |
| | Oak Hill Credit Partners III, Limited | X | | | X | | |
| | Oak Hill Credit Partners IV, Limited | X | | | X | | |
| | Oak Hill Securities Fund II, L.P. | X | | | X | | X |
| | Oak Hill Securities Fund, L.P. | X | | | X | | |
| | OCM High Yield Plus Fund LP | X | | | X | | |
| | Octagon Investment Partners IV, Ltd | X | | | | X | |
| | Octagon Investment Partners V, Ltd | X | | | | X | |
| | Octagon Investment Partners VI, Ltd | X | | | | X | |
| | Octagon Investment Partners VII, Ltd | X | | | | X | |
| | Partners Master Fund II LP | X | | | X | | |
| | Park Avenue Loan Trust | X | | | X | | X |
| | PIMCO Floating Income Fund | X | | | X | | X |
| | PIMCO Floating Rate Income Fund | X | | | X | | X |

Work Sheet - In Court

**Delphi Automotive Systems (Holding), Inc.**

| Category | Name | Delphi Automotive Systems (Holding), Inc. — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connections Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | PIMCO Floating Rate Strategy Fund | X | | | X | | |
| | PIMCO High Yield Fund | X | | | X | | |
| | Pinewood Credit Markets Master Fund | X | | | X | | |
| | Pioneer Floating Rate Trust | X | | | X | | |
| | PNC Bank, N.A. | X | | | X | | |
| | Post Leveraged Loan Master Fund, LP | X | | | X | | |
| | Post Opportunity Fund L.P. | X | | | X | | |
| | Post Total Return Fund, L.P. | X | | | X | | |
| | Principal Life Insurance Company | X | | | X | | |
| | Prospect Funding LLC | X | | | X | | |
| | Protective Life Insurance Company | X | | | X | | |
| | Putnam Floating Rate Income Fund | | | X | | X | |
| | Putnam High Yield Advantage Fund | | | X | | X | |
| | Putnam High Yield Trust | | | X | | X | |
| | Putnam Variable Trust High Yield Fund | | | X | | X | |
| | Q Funding III LP | X | | | X | | |
| | Quadrangle Master Funding Ltd | | X | | X | | |
| | Quattro Distressed Opportunity Fund | | | X | X | | |
| | Quattro Fund Ltd | | | X | X | | |
| | Quattro Multi-Strategy Master Fund | | | X | X | | |
| | R2 Top Hat Ltd. | X | | | X | | |
| | Race Point CLO, Limited | X | | | X | | |
| | Race Point II CLO Limited | X | | | X | | |
| | Race Point III CLO, Limited | X | | | X | | |
| | Red Fox Funding LLC | X | | | X | | |
| | Redwood Master Fund, Ltd. | X | | | X | | |
| | Riviera Funding LLC | X | | | X | | |
| | Robust Trust | X | | | X | | |
| | Rockwall CDO Ltd. | X | | | X | | |
| | Rosemont CLO Ltd. | X | | | X | | |
| | Salomon Brothers Variable Rate | X | | | X | | |
| | Sankaty High Yield Partners II | | X | | X | | |
| | Sankaty High Yield Partners III, LP | X | | | X | | |
| | Satellite Senior Income Fund II | X | | | X | | |
| | Satellite Senior Income Fund, LLC | X | | | X | | |
| | Saturn Trust | X | | | X | | |
| | Scoggin Worldwide Fund Ltd | X | | | X | | |
| | Seabord Partners II Fund Ltd | X | | | X | | |
| | SEI Institutional Managed TST | X | | | X | | |
| | Senecal Capital, LP | X | | | X | | |
| | SEQUILS-Centurion V, Ltd | | X | | X | | |
| | SEQUILS-ING I (HBDGM), Ltd. | X | | | X | | |
| | SEQUILS-Magnum, Ltd. | X | | | X | | |
| | Serve CLO I Ltd | X | | | X | | |
| | Silverado CLO 2006-I LTD | X | | | X | | |
| | Sky CBNA Loan Funding LLC | X | | | X | | |
| | SMBC MVI SPC | X | | | X | | |
| | SOF Investment, LP | | X | | X | | |
| | Southport CLO Limited | X | | | X | | |
| | SRI Fund LP | X | | | X | | |
| | Stanfield Arbitrage CDO, Ltd. | | X | | X | | |
| | Stanfield Bristol CLO, LTD | | X | | X | | |
| | Stanfield Carrera CLO, Ltd. | | X | | X | | |
| | Stanfield Vantage CLO Ltd. | | | X | X | | |
| | SunTrust Bank, Atlanta | | | X | X | | |
| | TCW Select Loan Fund, Limited | | | X | X | | |
| | TCW Senior Secured Loan Fund, LP | | X | | X | | |
| | The Drake Offshore Master Fund, Ltd | | X | | X | | |
| | The Foothill Group Incorporated | X | | | X | | |
| | The Hartford Floating Rate Fund | | | X | X | | |
| | Thrivent High Yield Fund | | | X | X | | |
| | Thrivent High Yield Fund II | | | X | X | | |
| | Thrivent High Yield Portfolio | | | X | X | | |

Work Sheet - In Court

| | | Delphi Automotive Systems (Holding), Inc. — U.S. Connections Check (Nov-05) | | | Delphi Automotive Systems (Holding), Inc. — Canada Connections Check (Nov-05) | | |
|---|---|---|---|---|---|---|---|
| Category | Name | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Thrivent High Yield Portfolio II | | | X | X | | |
| | UFJ Bank Limited | | | X | X | | |
| | Velocity CLO Ltd. | X | | | X | | |
| | Venture CDO 2002, Limited | X | | | X | | X |
| | Venture II CDO 2002, Limited | X | | | X | | |
| | Venture III CDO Limited | X | | | X | | X |
| | Venture IV CDO Limited | X | | | X | | |
| | Vista Leverage Income Fund | X | | | X | | X |
| | Vulcan Ventures, Inc. | X | | | X | | |
| | Watershed Capital Institutional | X | | | X | | |
| | Watershed Capital Partners (Offshore) | X | | | X | | |
| | Watershed Capital Partners, LP | X | | | X | | |
| | Waterside Funding LLC | X | | | X | | |
| | Waveland-Ingots, Ltd. | X | | | X | | |
| | Wells Capital Management-12931400 | X | | | X | | |
| | Wells Capital Management-13762900 | X | | | X | | |
| | Wells Capital Management-13821100 | X | | | X | | |
| | Wells Capital Management-13923602 | X | | | X | | |
| | Wells Capital management-14045000 | X | | | X | | |
| | Wells Capital Management-16017000 | X | | | X | | |
| | Wells Capital Management-16467700 | X | | | X | | |
| | Wells Capital Management-16966700 | X | | | X | | |
| | Wells Capital Management-16959700 | X | | | X | | |
| | Wells Capital Management-17299500 | X | | | X | | |
| | Western Asset Floating Rate | | X | | X | | |
| | Wind River CLO I Ltd. | X | | | X | | |
| | Wrigley CDO I Ltd. | X | | | X | | |
| p | All Secured Lenders Attorneys retained in connection with the Chapter 11 proceeding | | | | | | |
| | NA | | | | | | |
| q | Record Noteholders Holding 5% of more of any outstanding issuance of notes of the company | | | | | | |
| | Bear Stearns | X | | | X | | |
| | Citigroup | | | X | | | X |
| | First Clare | | | | | | |
| | Goldman Sachs | | | X | | | X |
| | Investors Bank | X | | | X | | |
| | Lehman Brothers | | | X | | | X |
| | Mellon Trust | X | | | X | | |
| | ML Silkiqig | X | | | X | | |
| | MSSTW Inc. | X | | | X | | |
| | NFS LLC | X | | | X | | |
| | Pershing | X | | | X | | |
| | SSB | X | | | X | | |
| f | Attorneys for record noteholders holding 5% or more of any outstanding issuance of notes of the company retained in connection with the Chapter 11 proceeding | | | | | | |
| | NA | | | | | | |
| | JP Morgan Chase (Agent) | X | | | X | | |
| | Citibank (Agent) | X | | | X | | |
| | JP Morgan Trust Company, N.A. | X | | | X | | |
| | Bank One Trust Company N.A. | X | | | X | | |
| | Bank One Trust Company | X | | | X | | |
| | First National Bank of Chicago | | X | | X | | |
| | All Indenture Trustees | | | | | | |
| | NA | | | | | | |
| | All Indenture Trustees Attorneys retained in connection with the Chapter 11 proceeding | | | | | | |
| | Simpson Thacher & Bartlett LLP | | X | | X | | |
| a | Official Statutory Committees Members (All Committees) | | | | | | |
| | Electronic Data Systems Corp. (EDS) | | X | | X | | |
| | General Electric Capital Corporation | | | X | | | X |
| | Flextronics International Asia Pacific, Ltd | | | | X | | |
| | IUE-CWA | | | | X | | |
| | Capital Research & Management Company | X | | | X | | |
| | Wilmington Trust Company, as Indenture Trustee | | X | | X | | X |
| | Freescale Semiconductor Inc | | | X | | | X |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| Official Statutory Committees Attorneys (for each Official Committee) | Latham & Watkins | | | X | X | | |
| Official Statutory Committees Other Professionals by each Official Committee | NA | | | | | | |
| Official Statutory Committees Members Attorneys retained in connection with the Chapter 11 proceeding | NA | | | | | | |
| Fifty Largest Unsecured Creditors (as of the date of filing) | Tyco International LTD | | | X | X | | |
| | General Motors Corp | | | X | X | | |
| | Motorola Inc | | | X | X | | |
| | Pacific Group Ltd | | X | | | | |
| | Engelhard Corp | | | X | | | X |
| | Bosch Robert Stiftung GmbH | | | X | X | | |
| | Siemens AG | | | X | | | X |
| | Blackstone Capital Partners LLP | | | X | | | X |
| | Matsushita Electric Industrial | | | X | X | | |
| | Vansystems Group Inc | X | | | X | | |
| | Hitachi Ltd | | | X | | | X |
| | Molex Inc | | | X | X | | |
| | Progressive Moulded Product | X | | X | X | | |
| | Texas Instruments Inc | | | X | X | | |
| | Simiconductronics NV | X | | X | X | | X |
| | Bectrolief Ag | X | | | X | | |
| | Solectron Corp | | | X | X | | |
| | Akebono Brake Industry Co Ltd | | X | | X | | |
| | Koninklijke Philips Electronics | X | | X | X | | |
| | Eon AG | X | | X | X | | |
| | Calsonic Kansei Corp | | | X | | | X |
| | General Electric Co Inc | | | X | X | | X |
| | Infineon Technologies AG | | | X | X | | X |
| | Abs Group Inc | X | | | X | | |
| | Worthington Industries Inc | | | X | X | | |
| | Alcoa Inc | | | X | X | | |
| | Corning Inc | | | X | X | | |
| | Dana Automotive Systems Inc | | | X | X | | |
| | Internet Corp | X | | X | X | | |
| | Impala Platinum Holdings ltd | | | X | X | | |
| | Thyssenkrupp AG | | | X | X | | |
| | Autoliv Inc | | | X | X | | X |
| | Linamar Corp | X | | | X | | |
| | Illinois Tool Works Inc | X | | | X | | |
| | Sumitomo Sa, The | | | X | | | X |
| | Timken Co.The Inc | | | X | | | X |
| | Alps Electric Co Ltd | | X | | | | |
| | Leopold Kostal GmbH & Co KG | X | | | X | | |
| | Dana Corp | X | | X | X | | |
| | Fatata Corp | X | | | X | | |
| | Norsk Hydro ASA | | | X | X | | |
| | Segsa Corp | | | X | X | | |
| | Valeq SA | X | | | X | | |
| | Toyota Motor Corp | | | X | X | | |
| | TT Electronics PLC | X | | | X | | |

Page 19 of 85

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Textron Inc | X | | | | | X |
| | El Dupont de Nemours & Co Inc | | | X | | | |
| | Quexco Inc | | | | X | | |
| | 3M Co | | | X | X | | |
| | Freudenberg & Co KG | | | X | X | | |
| | Dupin Chiefs Co Ltd | X | | | X | | |
| | Commissariat a l'Energie Stomic | X | | | X | | |
| | Dana Holding NV | X | | | X | | |
| | Quexco Co Ltd | X | | | X | | |
| | Industrial Molding Corp | X | | | X | | |
| | Johnson Electric Holdings Ltd | X | | | X | | |
| | American Axle & Mfg Holdings Inc | | | X | X | | |
| | Metaldyne Corp | | | X | X | | |
| | NEC Corp | X | | | X | | |
| | Nan Ya Plastics Corp | X | | | X | | |
| Fifty Largest Unsecured Creditors Attorneys retained in connection with the Chapter 11 proceeding | NA | | | | | | |
| aa Parties to the Debtor's Significant Executory Contracts and Leases | Counterparties to major leases | | | | | | |
| | Real Property Lease and Sub-Lease Counterparties | | | | | | |
| | 1401 Troy Associates Limited Partnership | X | | | X | | |
| | 2574 E River Rd Bldg 10 LLC | X | | | X | | |
| | 500 Commerce LLC | X | | | X | | |
| | Anthony Commerce Park | X | | | X | | |
| | Aspire Building, LLC | X | | | X | | |
| | Barmint Executive Series, Inc. | X | | | X | | |
| | Chemung-North Battan City, LLC | X | | | X | | |
| | Cinergy Corp | | | X | | | X |
| | City of Laurel, Mississippi | X | | | X | | |
| | City of Tulsa, Oklahoma | X | | | X | | |
| | County of Marquette, Michigan | X | | | X | | |
| | Crown Enterprises, Inc. | X | | | X | | |
| | D/C North, LLC | X | | | X | | |
| | DCR Properties IA, LLC | X | | | X | | |
| | Donald R. Sweeton and Sarah E. Sweeton | X | | | X | | |
| | EnerDel, Inc | X | | | X | | |
| | First Industrial LP | X | | | X | | |
| | First Industrial, L.P. | X | | | X | | |
| | Ford Motor Land Development Corporation | X | | | X | | |
| | Fortune Avenue Partnership LLP | X | | | X | | |
| | GAR Properties, LLC | X | | | X | | |
| | GBUZ, LLP | X | | | X | | |
| | General Motors Corporation | | | X | | | |
| | German's Technology Group Custom Coating and Enhancements, Inc. d/b/a German's Technology Group (f/k/a Xecel Systems, Inc.) | X | | | X | | |
| | HW Mortgage Investments IV, Inc. | X | | | X | | |
| | JCB Investments, LLC | X | | | X | | |
| | John E Beer & Co | X | | | X | | |
| | Killam Industrial Development Partnership | | X | | | | |
| | Killam Industrial Development Partnership, Ltd | | X | | | | |
| | Kiltoy Realty Company, L.P. (successor in interest to Lamar Realty Corp. #19) | X | | | X | | |
| | LaSalle National Bank, as Trustee under Trust No. 115697 | X | | | X | | |
| | Laurence Tippmann, Sr. Family Limited Partnership | X | | | X | | |
| | Liberty Property Limited Partnership | X | | | X | | |
| | Mason Hangar Real Estate Limited | X | | | X | | |
| | Nissan Technical Center North America, Inc | X | | | X | | |
| | North Renaissance Development LLC | X | | | X | | |
| | Oci Wolf LLC | X | | | X | | |
| | ORIX Warren, LLC - Orix GF Warren Venture | X | X | | X | | |
| | Dupuy, S.A., Ltd. | | | | | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connection Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Raytheon Company | | | X | | | X |
| | Rialto Investment II | | X | | X | | |
| | Regan Business Centre Service Agreement | | X | | X | | |
| | Regan Business Centres Corp | | X | | X | | |
| | Research Properties LLC | X | | | X | | |
| | River Road Investments, Inc. | | X | | X | | |
| | Saginaw Centre Development Company, LLC | X | | | X | | |
| | Scdy Rit Valley Buildings, L.P. | X | | | X | | |
| | Shelby Industrial Investors II, LLC | X | | | X | | |
| | Tawas Industries | X | | | X | | |
| | The Industrial Development Board of the City of Athens, Alabama | X | | | X | | |
| | The Industrial Development Board of the City of Athens, Alabama | X | | | X | | |
| | The Industrial Development Board of the City of Tuscaloosa, Alabama | X | | | X | | |
| | TR Butterfield Trail Corp. | X | | | X | | |
| | Universal Tool and Engineering Company, Inc. | X | | | X | | |
| | Universal Tool and Engineering Company, Inc. | X | | | X | | |
| | Universal Tool and Engineering, Inc. | X | | | X | | |
| | Vitatoe Corporation | | | X | X | | |
| | Wingarden Realty Investors | X | | | X | | |
| | Wells Operating Partnership, L.P. | X | | | X | | |
| | **Counterparties to Leases of Equipment and Other Personal Property.** | | | | | | |
| | Access | X | | | X | | |
| | American Finance Group | X | | | X | | |
| | ATEL Capital Group | | | | X | | |
| | Avaya | | | X | | | |
| | Concep | | | X | | | |
| | Cooladse | | | X | | | |
| | CrownCredit | X | | | X | | |
| | CSA Financial Corp | X | | | X | | |
| | GSI | | | X | | | |
| | Dell Financial | X | | | X | | |
| | Elcer | X | | | X | | |
| | First American Capital | X | | | X | | |
| | First American Capital | X | | | X | | |
| | First American Capital Mgmt | X | | | X | | |
| | General Electric Capital Corp | | | X | | | X |
| | HP Finance | X | | | X | | |
| | ICON Capital Corp | X | | | X | | |
| | **Counterparties to major contracts over $100,000** | | | | | | |
| | Kensington Capital Corp | X | | | X | | |
| | LGR Group/CIT | X | | | X | | |
| | Arnold | X | | | X | | |
| | Pac Rim | X | | | X | | |
| | QEK Global Solutions | X | | | X | | |
| | RCA | X | | | X | | |
| | Reprex, Inc. | X | | | X | | |
| | DMG Technologies, Inc. | X | | | X | | |
| | Alexander Long III | X | | | X | | |
| | Ameritech Mobile Services, Inc. | X | | | X | | |
| | Annatechnos Corp. | X | | | X | | |
| | AXNet | X | | | X | | |
| | Bluetooth | X | | | X | | |
| | Celestica North America, Inc. | X | | | X | | |
| | Carotools Inc. | X | | | X | | |
| | Clifford Electronics, Inc. | X | | | | | X |
| | Compuware | | | | X | | |
| | Culthuren GmbH | X | | | X | | |
| | Delsotech S.A | X | | | X | | |
| | Dolby Digital | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connection Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | DSSCSC China | X | | | X | | |
| | DSSI | X | | | X | | |
| | Embedded Technology | X | | | X | | |
| | Ericsson AB | X | | | X | | |
| | Firma Carl Freudenberg KG | X | | | X | | |
| | HTC | X | | | X | | |
| | IBM Corporation | X | | | X | | |
| | Intel Technology Solutions U.S. Inc | X | | | X | | |
| | Invivo Medical, Inc | X | | | X | | |
| | Integrated Therapeutics Group, Inc. | X | | | X | | |
| | Intel Corporation | | | X | X | | |
| | JSP America, Inc. | X | | | X | | |
| | JSP International Ltd | X | | | X | | |
| | JSP International s.a.r.l. | X | | | X | | |
| | JSP Trading, Inc. | X | | | X | | |
| | LeoDevices Inc | X | | | X | | |
| | Logikos | X | | | X | | |
| | Magnavox Government and Industrial Electronics Company | | | | | | |
| | Matsushita Electric Corporation of America | | | X | X | | |
| | MCT Worldcom Communications, Inc. | | | X | X | | |
| | Miller Engineering Services, Incorporated | X | | | X | | |
| | MMFSA | X | | | X | | |
| | Moving Magnet Technologies SA | X | | X | X | | X |
| | MPEG LA | X | | | X | | |
| | NCMS | X | | X | X | | |
| | Nextel West Corp. | X | | | X | | |
| | North American Philips Corporation | X | | | X | | |
| | Premcaire | X | | | X | | |
| | Sundstt Corporation | X | | | X | | |
| | Satyam | X | | | X | | |
| | Scott Laboratories, Inc | X | | | X | | |
| | Sonochev SA | X | | | X | | |
| | Sprint Spectrum, L.P. | | | X | X | | |
| | SRI International | X | | | X | | |
| | TCS | X | | | X | | |
| | The Whitaker Corporation | X | | | X | | |
| | Thomas Gramalli | X | | | X | | |
| | Tom Gramalli Inc., dba Controls, Inc | X | | | X | | |
| | Toshiba Corporation | | X | | X | | |
| | UHI Industries (America), Inc | | | X | X | | |
| | UHI Industries, Ltd | | | X | X | | |
| | UGC | X | | | X | | |
| | Valence Technology Cayman Islands Inc. | | X | | X | | |
| | Bell South | | | X | X | | |
| | Lucent Technologies Inc | | | X | X | | X |
| | Nokia Corporation | | | X | X | | |
| | Third Party IP Contracts | | | | | | |
| | KOAC/ Daewoo Motor Company | X | | X | X | | |
| | 3M | | | | | | |
| | ACG Components | X | | | X | | |
| | Advanced Casting Technologies | X | | | X | | |
| | Aladdin Industries | | X | | | | |
| | Alena Products | X | | | X | | |
| | Alpine Electronics | | | X | X | | |
| | Antholze Corporation | X | | | X | | |
| | Aztec Electric System Co. Ltd | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding) — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connections Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | ABC Automotive | X | | | X | | |
| | ASEC Exhaust Systems | X | | | X | | |
| | Autostyle | | | | X | | |
| | Beijing Delphi Wanyuan Engine Management Systems Company, Ltd | X | | | X | | |
| | Beijing WYGM Automotive Electric | X | | | X | | |
| | Blue Jets - Atlanta | X | | | X | | |
| | Beta Retreat | X | | | X | | |
| | Bridgestone T.G. Australia Pty. Ltd | X | | | X | | |
| | BSH Industries (agreement with FURA) | X | | | X | | |
| | Burns Mechanical (BUMA) | X | | | X | | |
| | CADPO | X | | | | | |
| | Calsonic (formed CFI) | | | X | | | |
| | Calsonic Kansei Corporation | | | X | X | | |
| | Calsonic Kansei Hungary | | | X | | | |
| | Calsonic Kansei | | | X | X | | |
| | Componentes Delta | X | | | X | | |
| | Componentes Delta, C.A. | X | X | | X | | |
| | Compressor Works, Inc. | | | | X | | |
| | Ductang Electric | | | | X | | |
| | Daewoo Automotive Corporation | X | | | X | | |
| | Daewoo Motor Company | X | | | X | | |
| | Daewoo Motor Company | X | | | X | | |
| | DAS Deutschland GmbH | X | | | X | | |
| | DAS Poland Spolka z.o.o | X | | | X | X | |
| | Delco Remy International, Inc (Remy International, Inc.-new name) | X | X | | X | | |
| | Delkor Corporation | X | | | X | | |
| | Delphi Lockheed Automotive S.A. | X | | | X | | |
| | Delphi Aftermarket France | X | | | X | | |
| | Delphi Auto Brasil - E&C | X | | | X | | |
| | Delphi Auto Systems Australia | X | | | X | | |
| | Delphi Auto Systems Brasil - Harrison | X | | | X | | |
| | Delphi Auto Systems India Private Limited (DASPL) | X | | | X | | |
| | Delphi Automotive Systems | X | | | X | | |
| | Delphi Automotive Systems (Thailand) | X | | | X | | |
| | Delphi Automotive Systems Australia | X | | | X | | |
| | Delphi Automotive Systems Deutschland (Aftermarket) | X | | | X | | |
| | Delphi Automotive Systems do Brasil (E&C) | X | | | X | | |
| | Delphi Automotive Systems de Brasil (E&C) | X | | | X | | |
| | Delphi Automotive Systems Espana (Legrenos) | X | | | X | | |
| | Delphi Automotive Systems Espana Cadiz | X | | | X | | |
| | Delphi Automotive Systems France | X | | | X | | |
| | Delphi Automotive Systems Italia Srl (Oleria) | X | | | X | | |
| | Delphi Automotive Systems Japan (Aftermarket) | X | | | X | | |
| | Delphi Automotive Systems Lockheed UK (Aftermarket) | X | | | X | | |
| | Delphi Automotive Systems Netherlands (Aftermarket) | X | | | X | | |
| | Delphi Automotive Systems Poland Sp. Z.o.o | X | | | X | | |
| | Delphi Automotive Systems Portugal (Ponte de Sor) | X | | | X | | |
| | Delphi Automotive Systems Spain | X | | | X | | |
| | Delphi Automotive Systems Singapore | X | | | X | | |
| | Delphi Automotive Systems Vienna (Aspern) | X | | | X | | |
| | Delphi Calsonic Compressors | X | | | X | | |
| | Delphi Delco Electronics Europe, GmbH | X | | | X | | |
| | Delphi Delco Electronics Scotboc | X | | | X | | |
| | Delphi Diesel Liverpool | X | | | X | | |
| | Delphi Diesel Systems England | X | | | X | | |
| | Delphi Diesel Systems France | X | | | X | | |
| | Delphi Diesel Systems Korea | X | | | X | | |
| | Delphi Diesel Systems Ltd | X | | | X | | |
| | Delphi Diesel Systems Ltd England | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Delphi Diesel Systems Spain | X | | | X | | |
| | Delphi Diesel Systems Turkey | X | | | X | | |
| | Delphi Diesel Systems UK | X | | | X | | |
| | Delphi Diesel Systems, S. L. Spain | X | | | X | | |
| | Delphi Harrison Calsonic (France) | X | | | X | | |
| | Delphi India Automotive Systems Sr.l | X | | | X | | |
| | Delphi Lockheed Automotive France (Aftermarket) | X | | | X | | |
| | Delphi Mechatronic Systems | X | | | X | | |
| | Delphi Domestic Somerset Sanayi ve Ticaret | X | | | X | | |
| | Delphi Packard Balcheng Limited | X | | | X | | |
| | Delphi Packard Electric Co Ltd (Shanghai) | X | | | X | | |
| | Delphi Packard Electric Malaysia Sdn Bhd | X | | | X | | |
| | Delphi Packard Systems | X | | | X | | |
| | Delphi Polkia Automotive Systems | X | | | X | | |
| | Delphi Polkia Automotive Systems | X | | | X | | |
| | Delphi Saginaw Langxin Brilliance and Palno | X | | | X | | |
| | Delphi Saginaw Lingnan Jinbei | X | | | X | | |
| | Delphi Sistemas de Energia (Portugal) | X | | | X | | |
| | Delphi TVS Diesel Systems Ltd India (Lucas) | | X | | X | | |
| | Delphi-TVS Diesel Systems Ltd (India) | | X | | X | | |
| | Delta Cinc | X | | | X | | |
| | Deltek | X | | | X | | |
| | Denso | | | X | X | | |
| | Design Solutions | | | | X | | |
| | Directed Electronics (formerly Clifford) | | X | | X | | X |
| | DuraSwitch | X | | | X | | |
| | East Penn Manufacturing Company | X | | X | X | | |
| | Eaton | | | | | | |
| | EBI Ventures (Savage Enterprise) | X | | | X | | |
| | Electromotive | X | | | X | | |
| | Empresa Car Lte de Tuxtela | X | | | X | | |
| | Esscto (Perfection Spring) | X | | | X | | |
| | Fabrica De Apantos De Air Acondicionado (FAACA) | X | | X | X | | |
| | Faucar | X | | | X | | |
| | Fitel USA Corp. (assigned to Item by Lucent) | X | | | X | | |
| | Flip Chip Technologies | X | | | X | | |
| | Four Seasons License (Division of Standard Motor) | X | | X | X | | |
| | FrankInabe USA, LP | X | | | X | | |
| | Freudenberg | X | | | X | | |
| | Goshorn Products | X | | | X | | |
| | Gatewal Industries | X | | | X | | |
| | General Bearings Corporation | X | | | X | | |
| | General Motors | | | X | X | | |
| | Gelock -- Delphi Technologies Intellectual Property License | X | | | X | | |
| | GM do Brasil | X | | | X | | |
| | GM France | X | | | X | | |
| | GM License Exchange | X | | | X | | |
| | Hobci Auton Motor Factory | X | | | X | | |
| | Hobci Delphi Automotive Generator | X | | | X | | |
| | Hyundai Motor Company | | X | | | | |
| | Intellectual Property Mining (IPM) | X | | | X | | |
| | Jabo Block & Associates | X | | | X | | |
| | JSP Affiliates | X | | | X | | |
| | Kaiser Aluminum and Chemical | | X | | | | |
| | Kelco Radiator | X | | | X | | |
| | KA TUON | X | | | X | | |
| | KDAC Omigina steel | X | | | X | | |
| | KDAC (Subhicumn)/Shyu Shyang Mechanical Industrial | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | KDS Company Limited | X | | | X | | |
| | Kikco Fiber Optics | X | | | X | | |
| | Korea Delphi Auto Systems (KDAC) | X | | | X | | |
| | Korea Delphi Automotive Systems | X | | | X | | |
| | Korea Delphi Automotive Systems Corp. (KDAC) | X | | | X | | |
| | Kum Yu Hsing Enterprise Co. Ltd (KYH) | X | | | X | | |
| | Kyungshin Industrial Company Ltd and Beltm | X | | | X | | |
| | Lear Corporation | | | X | | | X |
| | Level 1 | | | | | | |
| | Lockheed Martin Energy Systems (Oak Ridge Lab) | | | X | X | | X |
| | Lord Corporation Supply and Development Agreement | X | | | X | | |
| | Magnetoelastic Devices | X | | | X | | |
| | Maruni (a sub-licensee of KDAC) | X | | | X | | |
| | Matsushita Electrical Industrial Company | | | X | X | | |
| | Mobile East Battery Company | X | | | X | | |
| | Mikuni | X | | | X | | |
| | Mobiltron Corporation | | | X | X | | |
| | Motorex o Aparatos Electricos de Durango S.A. de C.V. (f/k/a UA Industrial Arma) | X | | | X | | |
| | Moving Magnet Technologies SA (MMT) (France) | X | | | X | | |
| | Navigation Technologies | X | | | X | | |
| | NCC Lireflex Donations (National Composite Center) | X | | | X | | |
| | NGNS Kinetic Spray | X | | | X | | |
| | NGNS LAV | X | | | X | | |
| | NSK Limited | X | | | X | | |
| | Orbital Fluid Technologies | X | | | X | | |
| | Penn Fan Settlement | X | | | X | | |
| | P&L Enterprises | X | | | X | | |
| | Renlos ASA | | X | | X | | |
| | Raytheon Company | X | | | X | | |
| | Saginaw Deutschland | X | | | X | | |
| | Saginaw Nemco Lingtem Drive Shaft | X | | | X | | |
| | Saginaw Zhijiang Vane Shen Steering | X | | | X | | |
| | Sanhip Industrial Company | X | | | X | | |
| | Sandoz Corporation | | | | X | | |
| | Sandoz International | | | | X | | |
| | SDACC | | | X | X | | |
| | Shanghai Automotive Brake Systems | X | | | X | | |
| | Shanghai Delco Electronics and Instrumentation Company Ltd | X | | | X | | |
| | Shanghai Delco International Battery Company Ltd | X | | | X | | |
| | Shanghai Delphi Auto Air Conditioning Systems | X | | | X | | |
| | Shanghai Delphi Automotive Air Conditioning Systems Co. Ltd. | X | | | X | | |
| | Shanghai Delphi Automotive Door Latch | X | | | X | | |
| | Shanghai Ek Char General Machinery | X | X | | X | | |
| | Shanghai Hurhong Automobile Company (Export & Import) | X | X | | X | | |
| | Shanghai Hurhong Automotive Mfg. Co. | X | | | X | | |
| | Shanghai Saginaw Dongling Steering Gear | X | | | X | | |
| | Shanghai Saginaw Dongfeng Steering Gear | X | | | X | | |
| | Secure Francaise Des Amevicromaurs (DeCarbon) | X | X | | X | | |
| | Stant Manufacturing (Lance) | X | | | X | | |
| | Steward Inc | X | | | X | | |
| | Tai Yac | X | | | X | | |
| | Takata | X | | | X | | |
| | Tekin | X | | | X | | |
| | Teri Products, Inc. | | X | | | | |
| | TI Group | | X | | X | | |
| | TI Group (Walbom) | | X | | X | | |
| | Toyota Motor Company | X | X | | | | |
| | Trilogy Plastics | | | | | | |
| | Trimo International | X | X | | X | | |
| | UBE Machinery Sales | X | X | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Unista Jecs Corporation | X | | | X | | |
| | Valence Technology Inc | | X | | | | |
| | VDO Control Systems | X | | | X | | |
| | VDO North America | X | | | X | | |
| | Wayne State University | X | | | X | | |
| | Whitaker Electronic Specialty Electronics | X | | | X | | |
| | Yubei Machinery Factory | X | | | X | | |
| | Zenith Fuel Systems | X | | | X | | |
| | Zhejiang Delphi Asia Pacific Brake (Yubai) | X | | | X | | |
| **IT Contracts** | | | | | | | |
| | Alltel | | | X | X | | |
| | Ameritech | | X | | X | | |
| | ANXe | X | | | X | | |
| | AT&T | | | X | X | | |
| | ATT | | | X | X | | |
| | ATT Wireless | | | X | X | | | X |
| | Avaya | | | X | X | | |
| | Avaya World Services | | | X | X | | |
| | Covad | | X | | X | | |
| | EDS | | X | | X | | | X |
| | Insight Internet Services | X | | | X | | |
| | Intermail | X | | | | | |
| **IT Contracts Over $1M** | | | | | | | |
| | UDMH Telecommunication/Idtel Technology | X | | | X | | |
| | MCI | | | X | X | | |
| | Nextel | | | X | X | | |
| | Qwest | | | X | X | | |
| | SBC | | | X | X | | |
| | SBC Ameritech | | | X | X | | |
| | SBC Pagers | | | | X | | |
| | SkyTel | X | | | X | | |
| | Sprint | | | X | | | | X |
| | Sprint United | | | X | X | | | X |
| | Time Warner | | | X | X | | | X |
| | T-Mobile | | | X | X | | |
| | Verizon | | | X | X | | |
| | Verizon Wireless | | | X | X | | |
| | Verizon Wireless Messaging | | | X | X | | |
| **Health Care Contracts** | | | | | | | |
| | Blue Cross Blue Shield | X | | | X | | |
| | C.C. Communications | X | | | X | | |
| | CIGNA Behavioral Health | X | | | X | | |
| | CIGNA Healthcare | | | X | X | | |
| | CIGNA Healthcare | | | | X | | |
| | Cost Managed Vision | X | | | X | | |
| | Connecticut General Life Insurance Company | | X | | X | | |
| | Davis Vision | X | | | X | | |
| | Delta Dental | | | X | X | | |
| | Green Shield Canada | | | | X | | | X |
| | Health Solutions Inc | X | | | X | | |
| | Health Plus Options Inc | X | | | X | | |
| | Hewitt Associates LLC | X | | | X | | |
| | ILT Services Corporation | X | | | X | | |
| | Medco Health Solutions Inc | | | X | X | | | X |
| | Median Group, Inc | | | X | X | | | X |

Work Sheet - In Court

**Delphi Automotive Systems (Holding), Inc.**

| Category | Name | Delphi Automotive Systems (Holding), U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Medlife | | X | | X | | |
| | Medlife (Dental) | | X | | X | | |
| | M-Plan | X | | | X | | |
| | National Foot Care Program, Inc | X | | | X | | |
| | NCQA (National Committee for Quality Assurance) | X | | | X | | |
| | SHPS/Health International, Inc. | X | | | X | | |
| | TGI Direct | X | | | X | | |
| | Towers Perrin | X | | | X | | |
| | United Health Care Insurance Company | X | | | X | | |
| | The Regents of the University of Michigan | X | | | X | | |
| | Value Options, Inc. (Value Behavioral Health) | X | | X | X | | |
| | Metropolitan Life Insurance Company | | | X | X | | |
| | Receivables Purchase Agreement Parties | | | | | | |
| | ABN Amro Bank N.V. | X | | X | X | | |
| | Amsterdam Funding Corporation | X | | | X | | |
| | Bank One, NA (Main Office Chicago) | X | | | X | | |
| | Blue Ridge Asset Funding Corporation | X | | | X | | |
| | Falcon Asset Securitization Corporation | X | | | X | | |
| | Gotham Funding Corporation | X | | | X | | |
| | JPMorgan Chase Bank | X | | | X | | |
| | Jupiter Securitization Corporation | X | | | X | | |
| | The Bank of Tokyo-Mitsubishi, Ltd., New York Branch | | X | | | | |
| | Wachovia Bank, National Association | | | X | X | | |
| | ISDA Master Agreements | | | | | | |
| | Citibank, N.A. | X | | | X | | |
| | Deutsche Bank AG | | | X | X | | |
| | Utility Providers (Open) | | | | | | |
| | Adrian (City of) MI | X | | | X | | |
| | AEP (Public Svc Co Oklahoma) OK | X | | | X | | |
| | Alabama Gas Corporation | X | | | X | | |
| | Alabama Power Co | X | | | X | | |
| | Amherst Commerce Park   NY | X | | | X | | |
| | Anderson City Utilities  IN | X | | | X | | |
| | Brookhaven (City of) MS | X | | | X | | |
| | Buena Vista Wtr & Swr Dept MI | X | | | X | | |
| | Burton (City of) MI | X | | | X | | |
| | CenterPoint Energy Entex MS | | | X | X | | |
| | CenterPoint Energy Houston TX | | | X | X | | |
| | Central Power & Light Co. TX | X | | | X | | |
| | Chemical Reclamation Svcs Inc USA | X | | | X | | |
| | Cinergy PSI IN | | | X | X | | X |
| | Citizens Gas & Coke Utility IN | X | | | X | | |
| | Citizens Gas of Westfield IN | X | | | X | | |
| | Clinton City of MS | X | | | X | | |
| | Colliers Turley Martin Tele MO | X | | | X | | |
| | Columbia Pwr & Wtr Systems TN | X | | | X | | |
| | Columbus (City of) OH | X | | | X | | |
| | Columbus Southern Power CO OH | X | | | X | | |
| | Commonwealth Edison IL | X | | | X | | |
| | Constellation NewEnergy TX | | | | X | | |
| | Constellation NewEnergy WI | | | X | X | | |
| | Constellation NewEnergy-Gas KY | | | X | X | | |
| | Constelltn NewEngy Rt 042299 PA | | | X | X | | |
| | Consumers Energy MI (Detroit) | | | X | X | | |
| | Consumers Energy MI (Lansing) | | | X | X | | |
| | Consumers Power MI | X | | | X | | |
| | Coopersville (City of) MI | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connections Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Cortland (City of) OH | X | | | X | | |
| | Dayton Power & Light Co. OH | X | | | X | | |
| | Dayton Power & Light OH | X | | | X | | |
| | Dayton Water Dept (City of) OH | X | | | X | | |
| | Detroit Edison Co. MI | | | X | X | | |
| | Dominion East Ohio OH | X | | | X | | |
| | Downers Grove (Village of) IL | X | | | X | | |
| | Downers Grove Sanitary Dist IL | X | | | X | | |
| | DPL Energy Resources OH | | | X | X | | |
| | DTE Energy MI | | | X | X | | |
| | East Ohio Gas | X | | | X | | |
| | El Paso Electric Co. TX | X | | | X | | |
| | El Paso Water Utils Pub Svc TX | X | | | X | | |
| | Entergy (MS Power & Light) USA | | | X | X | | |
| | EQ Heritage USA | X | | | X | | |
| | Erie City Dept Environ Serv OH | X | | | X | | |
| | Erie City Water Authority NY | | X | | X | | |
| | Fitzgerald Wtr Light Bond Comn | X | | | X | | |
| | Flint (City of) MI | X | | | X | | |
| | General Motors (Delphi Brokered Gas) | | | X | X | | |
| | General Oil Company Inc USA | X | | | X | | |
| | Genesee County Drain Comm. | X | | | X | | |
| | Georgia Power Company | X | | | X | | |
| | Heartland (Town of) NY | X | | | X | | |
| | Henry County REMC IN | X | | | X | | |
| | Heritage Interactive Services USA | X | | | X | | |
| | Heritage-Crystal Clean LLC USA | X | | | X | | |
| | HESCO Houston Energy Svcs Co | X | | | X | | |
| | Indiana Michigan Power Comp IN | X | | | X | | |
| | Indiana-American Water Comp | X | | | X | | |
| | Indianapolis Power & Light Co | X | | | X | | |
| | Indianapolis Water Company | X | | | X | | |
| | Irvine Ranch Water District CA USA | | X | | X | | |
| | Iowa Electric Membership Corp USA | X | | | X | | |
| | Kokomo Gas & Fuel Company IN | X | | | X | | |
| | Kokomo Wastewater (City of) IN | X | | | X | | |
| | KPL (Western Resources) KS | X | | | X | | |
| | Laredo Utilities (City of) TX | X | | | X | | |
| | Laurel Park Util (City of) MS | X | | | X | | |
| | Leni Land Inc USA | X | | | X | | |
| | Limestone County Commission AL | X | | | X | | |
| | Lockport (City of) NY USA | X | | | X | | |
| | Lockport (Town of) NY | X | | | X | | |
| | Lockport Energy Associates NY | X | | | X | | |
| | Mega Valley Electric Coop USA | X | | | X | | |
| | Marquette (County of) MI | X | | | X | | |
| | Michigan Gas Company MI | X | | | X | | |
| | Military Highway WSC TX | X | | | X | | |
| | Mississippi Power Company | X | | | X | | |
| | Mississippi Valley Gas Co MS | X | | | X | | |
| | Monroe City Water Authority NY | | | X | X | | |
| | Montgomery City San Eng Dept OH | X | | | X | | |
| | NACM North American Oper USA | X | | | X | | |
| | National Fuel Resources Inc NY | X | | | X | | |
| | New Brunswick (City of) NJ | X | | | X | | |
| | New Castle (City of) NY | X | | | X | | |
| | New York Power Authority | X | | | X | | |
| | New York State Elec & Gas NY | | | X | X | | |
| | Niagara Mohawk NY | X | | | X | | |
| | NICOR Gas IL | X | | | X | | |
| | North Alabama Gas District AL | X | | | X | | |
| | NY State Elec & Gas | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), U.S. Connections Check, Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check, Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Oak Creek (City of) WI | X | | | X | | |
| | Ohio Edison Company | | X | | | X | |
| | Oil Chem Inc USA | X | | | X | | |
| | Oklahoma Natural Gas Co USA | X | | | | X | |
| | Olathe (City of) KS | X | | | X | | |
| | OneOK Energy Marketing OK USA | | | X | X | | |
| | Onyx Environmental Svcs LLC USA | X | | | X | | |
| | Orion (Charter Township) MI | X | | | X | | |
| | Pepco Energy Services VA | X | | | X | | |
| | Portage County Wtr Resources OH | X | | | X | | |
| | PSE&G NJ | X | | | X | | |
| | Ravena (City of) OH | X | | | X | | |
| | Rineco Chemical Industries USA | X | | | X | | |
| | Rochester (City of) NY USA | X | | | X | | |
| | Rochester Gas & Electric NY | X | | | X | | |
| | Rochester Water Service Co OH | X | | | X | | |
| | Safety Kleen Oil Services USA | X | | | X | | |
| | Saginaw (City of) Wtr & Swr MI | X | | | X | | |
| | SemcoEnergy Gas Company | X | | | X | | |
| | Shelby Twp Dept of Pub Wks MI | X | | | X | | |
| | Southern California Edison | X | | | X | | |
| | Tennessee Valley Authority | | | X | X | | |
| | Teris LLC - dba Ensco USA | | | X | X | | |
| | Texas Gas Service TX | X | | | X | | |
| | The Water Works & Sewer Brd | X | | | X | | |
| | Troy (City of) MI | X | | | X | | |
| | Trumbull County Wtr & Swr OH | X | | | X | | |
| | Tulsa Utility Svc City of OK | X | | | X | | |
| | Tuscaloosa (City of) AL | X | | | X | | |
| | TXU Energy TX | | | X | X | | |
| | TXU Energy Retail Company TX | | | X | X | | |
| | United Cities Gas Company TN | X | | | X | | |
| | United Water TX USA | X | | | X | | |
| | Upper Peninsula Power Co MI USA | X | | | X | | |
| | Vandalia (City of) OH | X | | | X | | |
| | Vectren Delivery IN | | | X | X | | |
| | Vectren Energy Delivery IN | | | X | X | | |
| | Vectren Energy Delivery OH USA | X | | | X | | |
| | Warren City (of) Svcs OH | X | | | X | | |
| | Warren City of Pollution Control | X | | | X | | |
| | Waste Mgmt of Orange County AZ | X | | | X | | |
| | Wester Energy KS | | X | | X | | |
| | Westfield Public Works IN | X | | | X | | |
| | Wichita Falls (City of) TX | X | | | X | | |
| | Wisconsin Electric Power Co WI | | | X | X | | |
| | Wyoming (City of) MI | X | | | X | | |
| Delphi Major Manufacturing Electric Contracts | | | | | | | |
| | Constellation NewEnergy, Inc. | X | | | X | | |
| | Consumers Power Company | | | X | X | | |
| | DPL Energy Resources, Inc. dba DPL Energy | X | | | X | | |
| | Industrial Energy Users - Ohio | | X | | X | | |
| | Pepco Energy Services, Inc. (PES) | X | | | X | | |
| | TXU Energy Retail Company LP | | | X | X | | |
| Counterparties to R&D Contracts over $500,000 | | | | | | | |
| | AFOSR | X | | | X | | |
| | ORL | X | | | X | | |
| | DOT Volpe Center | X | | | X | | |
| | DOC/NIST | | | X | X | | |
| | DOD | | | X | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | DOD TACOM | | | X | X | | |
| | DOJ | | X | | X | | |
| | DOD/NETL | | X | | X | | |
| | DOT NHTSA | X | | X | X | | |
| | NASA | | | | X | | |
| | State of Indiana | X | | X | X | | |
| | USAF/AFRL | | | X | X | | |
| | | | | | | | |
| | Intercompany under R&D contracts over $500,000 | X | | | X | | |
| | Electronic Data | X | | | X | | |
| | Electronic Arts/Government | X | | | X | | |
| | Emtech | X | | | | | |
| | Honeywell | | | X | | | X |
| | | | | | | | |
| | LLP IU | | X | | X | | |
| | Johns Hopkins University | | | | X | | |
| | MRI | X | | | X | | |
| | NCMS | X | | | X | | |
| | Purdue | X | | | X | | |
| | Purdue University | X | | | X | | |
| | TechSolve | X | | | X | | |
| | Miscellaneous Contracts | | | | | | |
| | Ameritech Information Systems, Inc. | X | | | X | | |
| | Appitex Corporation | | | X | X | | |
| | AT&T Corp. | | | X | X | | |
| | AT&T Solutions, Inc. | X | | | X | | |
| | Avaya World Services, Inc. | | | X | X | | |
| | Cardinal Health 200, Inc. | X | | X | X | | |
| | Cardotech, Inc. | | | | X | | X |
| | Celico Partnership d/b/a Verizon Wireless | | | X | X | | |
| | Ferrand Racing (Indianapolis, IN) | X | | | X | | |
| | General Motors Investment Management Corporation | X | | | X | | |
| | Hendrick Motorsports (Charlotte, NC) | | X | | X | | |
| | Lord Corporation | | X | | X | | |
| | PriceWaterhouseCoopers | | X | | X | | |
| | SBC Global Services, Inc. | X | | | X | | |
| | Scansoft | X | | | X | | |
| | Sprint | | | X | X | | |
| | State Street Bank and Trust Company | X | | | X | | |
| | Technetrni LLC | X | | | X | | |
| | Thomas Giannulli | X | | | X | | |
| | Tom Kelley | X | | | X | | |
| | Watson Wyatt | | | X | | | |
| | XM Satellite Radio, Inc. | | | X | | | X |
| | Zoe Medical, Inc. | X | | | X | | |
| | Managers | | | | | | |
| | Douglas Gruber | X | | | X | | |
| | Ian Scott | X | | | X | | |
| | James P. Whitson | X | | | X | | |
| | Jeffrey J. Owens | X | | | X | | |
| | Kevin M. Butler | X | | | X | | |
| | Mark C. Lorenz | X | | | X | | |
| | Max Rogers | X | | | X | | |
| ab | Parties to the Debtor's Significant Executory Contracts and Leases Attorneys (retained in connection with the Chapter 11 proceeding) | | | | | | |
| ac | Other Significant Parties-in-Interest (any party that has a substantial economic stake in the debtor, other parties-in-interest include parties in material litigation against the Debtor, public utility commissions of regulated entities, potential parties to M&A or asset transactions with the Debtor, etc. | | | | | | |
| | NA | | | | | | |

Work Sheet - In Court

| | | Delphi Automotive Systems (Holding), U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| Category | Name | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Mike Bielec | X | | | X | | |
| | Russell W.H. Blaley | X | | | X | | |
| | Shiu Hayashida | X | | | X | | |
| | Oing | | | | | | |
| | Atul Pasricha | X | | | X | | |
| | Delphi Corporation | | | X | X | | |
| | Denise Olbrecht | X | | | X | | |
| | Derek Kolano | X | | | X | | |
| | David L. Kist Esq. | X | | | X | | |
| | Donald J. Butler | X | | | X | | |
| | Douglas Greber | X | | | X | | |
| | Guy C. Hachey | X | | | X | | |
| | Ian Storr | X | | | X | | |
| | James A. Spencer | X | | | X | | |
| | James P. Whitson | X | | | X | | |
| | Jeffrey J. Owens | X | | | X | | |
| | John D. Sheehan | X | | | X | | |
| | John G. Blahnik | X | | | X | | |
| | John P. Arle | X | | | X | | |
| | John Shearr | X | | | X | | |
| | Karen McClain | X | | | X | | |
| | Kevin R. Hegel | X | | | X | | |
| | Richard J. Zoblocki | X | | | X | | |
| | Stephen L. Davey | X | | | X | | |
| | Thomas N. Twomey | X | | | X | | |
| | William D. Conwell | X | | | X | | |
| | Insurers: | | | | | | |
| | ACE American Insurance Company | X | | | X | | |
| | ACE Insurance Company | X | | | X | | |
| | ACE USA | | X | | X | | |
| | ACE Excess Casualty North America (Lexington) | X | | | X | | |
| | ACE WorldSource | X | | | X | | |
| | AIU Inc. | X | | | X | | |
| | Allianz | | | X | X | | |
| | Allied World Assurance Co. Ltd (AWAC) | X | | | X | | |
| | Allied World Assurance Company, Ltd | X | | | X | | |
| | American Home Assurance Co. (AHAC) | X | | | X | | |
| | American International Specialty Lines Insurance Company | X | | | X | | |
| | Arch | X | | | X | X | |
| | Arch Insurance (Bermuda) Limited | X | | | X | | |
| | AWAC | X | | | X | | |
| | AXIS | | X | | X | | |
| | Bermuda Markets | X | | | X | | |
| | CAN | X | | | X | | |
| | | | | | | | |
| | Chubb Custom Insurance | X | | | X | | |
| | Columbia Casualty Company (CNA) | | X | X | X | | |
| | Continental Casualty (C.N.A.) | | X | | X | | |
| | Endurance Specialty | | | X | X | | |
| | Federal Ins. Co. (Chubb) | X | | | X | | |
| | General Star Indemnity Company | X | | | X | | |
| | GEP | | | | X | | |
| | Great American | | | X | X | | |
| | Gulf Underwriters Insurance Company | X | | | X | | |
| | Hannover Re | X | | | X | | |
| | Hartford Insurance | X | | | X | | |
| | atlantic Insurance Company (Bermuda) Ltd | X | | | X | | |
| | HDI | X | | | X | | |
| | Ins. Co. of the State of Pennsylvania (AIG) | X | | | X | | |
| | IRI | X | | | X | | |
| | Lexington | X | | | X | | |
| | Lexington Insurance Company (AIG American International Companies) | X | | | X | | X |

Work Sheet - In Court

| | | Delphi Automotive Systems (Holding), U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| Category | Name | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Liberty Mutual | | | X | | | X |
| | Lloyds of London | X | | | X | | |
| | National Union (AIG) | X | | | X | | |
| | National Union Fire Ins. Co. (AIG) | X | | | X | | |
| | National Union Fire Insurance Company of Pitts., PA (AIG, American International Companies) | X | | | X | | |
| | Pacific Employers Ins. Co. (ACE USA) | X | | | X | | |
| | SR International Business Insurance Company Ltd. [London, UK (Zurich Branch)] | X | | | X | | |
| | St. Paul | | | X | | | X |
| | St. Paul (Bermuda) Ltd. | X | | | X | | |
| | St. Paul Fire & Marine | | | X | | | X |
| | St. Paul Fire & Marine Insurance Company | | | X | | | X |
| | St. Paul Mercury | X | | | X | | |
| | St. Paul Surplus Lines Ins Co. | X | | | X | | |
| | Starr Excess Liability Insurance International Limited | X | | | X | | |
| | Steadfast Insurance Company (Zurich) | X | | | X | | |
| | Swiss Re Insurance Company Ltd. | | | X | X | | |
| | Tokio Marine | X | | | X | | |
| | Twin City Fire (Hartford) | X | | | X | | |
| | United States Aviation Insurance Group (USAIG) and others | X | | | X | | |
| | US Specialty HCC | X | | | X | | |
| | USAIG | X | | | X | | |
| | XL U.S. | X | | | X | | |
| | Zurich American Insurance Company | X | | X | X | | |
| | CNA Financial Insurance | | | X | X | | |
| | CNA Insurance Companies | | | X | X | | |
| | Seaport Energy Services | | X | | X | | |
| | | | | | | | |
| | Premium Financing Agents | | | | | | |
| | Conseco, Inc. | X | | | X | | |
| | Amerada Hess Corporation | | | X | X | | X |
| | American International Insurance | | | X | X | | |
| | ANP Pipeline Company | X | | | X | | |
| | Arch Insurance Group | | X | | X | | |
| | Axis Reinsurance Company | X | | X | X | | |
| | Chubb Specialty Insurance | X | | | X | | |
| | Columbia Gas of Ohio | X | | | X | | |
| | Columbia Gas Transmission | X | | | X | | X |
| | Cool Energy Resources, L.P. | X | | | X | | |
| | East Ohio Gas Co. | X | | | X | | |
| | Hartford | X | | | X | | |
| | Indiana Gas Company | X | | | X | | |
| | Panhandle Eastern Pipeline Company | X | X | | X | | |
| | | | | | | | |
| | Seminole Energy Services | X | | | X | | |
| | U.S. Specialty Insurance Company | X | | | X | | |
| | UGI Energy Services | X | | | X | | |
| | Union Gas System, Inc. | X | | | X | | |
| | Vectren Energy | X | | | X | | |
| | | | | | | | |
| | Insurance Brokers | | | | | | |
| | Aon | | | X | | | X |
| | Aon Bermuda | X | | | X | | |
| | Aon UK | X | | | X | | |
| | Marsh/Sedgwick | X | | | X | | |
| | Marsh USA, Inc. (Brokers) | X | | X | X | | |
| | | | | | | | |
| | Defines Litigation and those Counsel (for claims of at least $500,000) | | | | | | |
| | A&O Mold & Engineering, Inc. | X | | | X | | |
| | Adams Oil | X | | | X | | |
| | Airgas | X | | | X | | |
| | Airtomatics Corporation | X | | | X | | |
| | Allied, Jen C | X | | | X | | |
| | Allegheny Rodney | X | | | X | | |
| | Allegra Doug All | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Alumalsa | X | | | X | | |
| | AM General Steering Gear | | | | X | | |
| | American Axle | X | | | X | | |
| | American Electronics Components a/k/a AEC | | | X | X | | |
| | Ann Harris Childs | | X | | X | | |
| | Anson, Juan | X | | | X | | |
| | APC and Standram | X | | | X | | |
| | Arbogast, Michael A | X | | | X | | |
| | ARC (Air Bag Ignition Issue) | X | | | X | | |
| | Asbestraunce, Jennifer T | X | | | X | | |
| | Associated Springs & Barnes Group, Inc | X | | | X | | |
| | Automotive Technologies International | X | | | X | | |
| | Automotive Technologies International, Inc | X | | | X | | |
| | Ayasa | X | | | X | | |
| | B & F Enterprises | X | | | X | | |
| | Baldwin, Sandra L. | X | | | X | | |
| | Bannester | X | | | X | | |
| | Barnes, Chirys | X | | | X | | |
| | Bartell, Greg | X | | | X | | |
| | Batson, Benjamin | X | | | X | | |
| | Beck, Bobby | X | | | X | | |
| | Bendix ABS Fires | X | | | X | | |
| | Becke, Robert L. | X | | | X | | |
| | Bex, Russell | X | | | X | | |
| | Bishop, Sr., James Denson | X | | | X | | |
| | Blea, Cassandra E. | X | | | X | | |
| | Bourdon, Cristal | X | | | X | | |
| | Bradley, Phyllis Jean | X | | | X | | |
| | Brady, Billy W. | X | | | X | | |
| | Brown, Mary M. | X | | | X | | |
| | Brown, James Lee | X | | | X | | |
| | Brown, Jonathan | X | | | X | | |
| | Buts, James | X | | | X | | |
| | Cadillac | X | | | X | | |
| | Campbell, Robert R. | | | X | X | | |
| | Carter, Richard | X | | | X | | |
| | Ceelos Alberto Nogueira Marques | X | | | X | | |
| | Celso GencLeves Viana | X | | | X | | |
| | Central Bank of Brazil Fine | X | | | X | | |
| | Chant, Daniel | X | | | X | | |
| | Chase-Orr, Kimberly | X | | | X | | |
| | Chemetco | X | | | X | | |
| | Chrétien Cortest Services | X | | | X | | |
| | City of DelRays Beach Police and Firefighters Retirement System | X | | | X | | |
| | Clones, Donald | X | | | X | | |
| | Cloves | X | | | X | | |
| | Cloves S.A. | X | | | X | | |
| | Cooldrich | X | | | X | | |
| | Cook, Silvia | X | | | X | | |
| | Cotus S.R.C.S. P | X | | | X | | X |
| | Corvette Steering Column Lock (Steering Column Lock '90-'04 Corvette) | X | | | X | | |
| | Custom Energy, S.L.C. | X | | | X | | |
| | DICOM | X | | | X | | |
| | Daewoon Cam Sensor | X | | | X | | |
| | Daimler Chrysler | | | X | X | | |
| | Daniel Laquerra | | | | X | | |
| | Dasgede, Inc. | | | | X | | |
| | Davis, Robert E., II | X | | | X | | X |
| | Delphia | X | | | X | | |
| | Delphia Produtos EL troon Ltda. | X | | | X | | |
| | Demet | X | | | X | | |
| | DHH-CA | X | | | X | | |

Work Sheet - In Court

| Category / Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|
| | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| Dawas Belgium Distributor | X | | | X | | |
| Deboon, W. Douglas | X | | | X | | |
| DSI | X | | | X | | |
| DuraSwitch | X | | | X | | |
| Eaton Hi-State Valve Claim | X | | | X | | |
| Eaton Corporation (Defendant) | | | X | X | | |
| Eihn North America, LLC | X | | | X | | |
| Electrical Systems | X | | | X | | |
| Electronic Environmental Engineering | X | | | X | | |
| Electronics Cost Recovery | X | | | X | | |
| Elfes, Peter | X | | | X | | |
| Elmore, Jr. Arlis M. | X | | | X | | |
| Energy Conversion Systems (ECS) formally known as Mergente | X | | | X | | |
| Entin, Donald | X | | | X | | |
| Estate of Lennon | X | | | X | | |
| Ethanol Coolant | X | | | X | | |
| Ethylene Propylene Diene - Axis Trust Litigation | X | | | X | | |
| Exon Corporation (Defendant) | X | | | X | | |
| FAE | X | | | X | | |
| FAG Bearing Limited (a/k/a FAG Automotive Inc.) | X | | | X | | |
| Flow Systems International Inc. (Ernie Gonzalez) | X | | | X | | |
| Financial Services of America, L.L.C. | X | | | X | | |
| First Technology | X | | | X | | |
| Flasher Module (2004 Envoy) | X | | | X | | |
| Flex-Tech | X | | | X | | |
| Folds, Neal C. | X | | | X | | |
| Ford | X | | X | X | | X |
| Fractured Pitman Shaft (Humvee) | X | | | X | | |
| Full Circle Services | X | | | X | | |
| Furukawa Electric North America APD, Inc (Defendant) | X | | | X | | |
| Galvatek v Delphi Catalyst France | X | | | X | | |
| Gabrielli, Carl J. | X | | | X | | |
| Gianco, Ira | X | | | X | | |
| Gillette, Edward A. | X | | | X | | |
| Glaso, Garvin | X | | | X | | |
| Global Minerals and Metals Corporation | X | | | X | | |
| GM & International | X | | | X | | |
| GMT 800 | X | | | X | | |
| GMT 900 | X | | | X | | |
| Greystone | X | | | X | | |
| Groce, Kelly R. | X | | | X | | |
| Guidanti, Kevin | X | | | X | | |
| Gulf Coast Bank & Trust Company | X | | | X | | |
| H.E. Services Company | X | | | X | | |
| Hahn Elastomer | X | | | X | | |
| Hammer, Edward | X | | | X | | |
| Harco Industries, Inc. | X | | | X | | |
| Hillman, Robert | X | | | X | | |
| Hirschmann Electronics GmbH & Co. | X | | | X | | |
| Horst, Arthur C. | X | | | X | | |
| Hubbard, Clarence E. | X | | | X | | |
| Hummer | X | | | X | | |
| Hunter, Clinise | X | | | X | | |
| Hurley Packaging of Texas, Inc. | X | | | X | | |
| ICMS | X | | | X | | |
| Ignition Relay | X | | | X | | |
| Indensor | X | | | X | | |
| INSS | X | | | X | | |
| Indemin Plant (IFAM) | X | | | X | | |
| Intermetals Philip | X | | | X | | |
| Jevticks, Teresa | X | | | X | | |
| Jones, Leland | X | | | X | | |
| Jones, Rodger | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | JV Products | X | | | X | | |
| | Kehlen Leather, Inc. | X | | | X | | |
| | Kistler of America, Inc. | X | | | X | | |
| | Kramer, Steven | X | | | X | | |
| | Kraus, Jessica | X | | | X | | |
| | Kremer, William C. | X | | | X | | |
| | L&W Stamping, Inc. | X | | | X | | |
| | Latorko | X | | | X | | |
| | Lemon Bay Partners | X | | | X | | |
| | Lienhard Antitrust Class Action | X | | | X | | |
| | Litex Inc. | X | | | X | | |
| | LN Nagoya Systems Automotives Ltda | X | | | X | | |
| | Luiz Alberto Moreira | X | | | X | | |
| | Lunn Manufacturing Co. Inc. | X | | | X | | |
| | MacDonald Industrial Products | X | | | X | | |
| | Magnesium Aluminum Corporation | X | | | X | | |
| | Manns, Debra A. | X | | | X | | |
| | Manufactured Products Corporation (MPC) | X | | | X | | |
| | Marana En Valle Souza | X | | | X | | |
| | Marsh & McLennan Cos. | | | X | X | | |
| | Martinez, Javier | X | | | X | | |
| | Martinez, Jose Angel Mata | X | | | X | | |
| | Mauro Lico Ortiz | X | | | X | | |
| | McPhall, Amber | X | | | X | | |
| | Metalodor | | | X | X | | X |
| | MetroCut, Inc. | X | | | X | | |
| | MG Rover | X | | | X | | |
| | Miranda Pubisco | X | | | X | | |
| | Misarsh, Ralph D. | X | | | X | | |
| | Missing Press Parts | X | | | X | | |
| | Mitchell, Margaret B. | X | | | X | | |
| | Mochia, Ronald J. | X | | | X | | |
| | Modine | | | X | X | | |
| | Morganita Incorporated Class Action | X | | | X | | |
| | Morrison, Thomas | X | | | X | | |
| | Mortensen, Philip Bradley | X | | | X | | |
| | Motorgil Distribuidora de Auto Pcjas, Ltda | X | | | X | | |
| | MTD Technologies | X | | | X | | |
| | NBR | X | | | X | | |
| | Newton, David | X | | | X | | |
| | NIGC | X | | | X | | |
| | Novakovic | X | | | X | | |
| | Novo Rio Baterias Ltda | X | | | X | | |
| | NuTech Plastics Engineering, Inc. | X | | | X | | |
| | Olfecen, Michael L. | X | | | X | | |
| | ONeill, Mary P. | X | | | X | | |
| | Onsalne | X | | | X | | |
| | Opel Hungary GMPT | X | | | X | | |
| | Parqueot OE | X | | | X | | |
| | Parkview Metal Products | X | X | | X | | |
| | Partridge, Steve | X | | | X | | |
| | Patent Holding Company | X | | | X | | |
| | Pennington, Jeff | X | | | X | | |
| | Phelps, John W. | X | | | X | | |
| | Phillips, Robert | X | | | X | | |
| | Power Outage | X | | | X | | |
| | Preco, Aaron | X | | | X | | |
| | Proud, Douglas | X | | | X | | |
| | Quake Global, Inc. | X | | | X | | |
| | Quinn, Larry | X | | | X | | |
| | Raphael, Naomi | X | | | X | | |
| | RHK Brenren Bearing, Inc. | X | | | X | | |
| | Rachly Jr. Thomas A. | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding) U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Reliable Castings | X | | | X | | |
| | Rhodia | | | | | | |
| | Rio Bravo Occupnal Worker Housing | X | | | X | | |
| | Roberto Magride de Abreu | X | | | X | | |
| | Roos, Marcus | X | | | X | | |
| | Rossley, Donald | | X | | X | | |
| | Royal Freight L.L.P | X | | | X | | |
| | Russell, Thomas | X | | | X | | |
| | S'na Aurecula da Silva | X | | | X | | |
| | Saturn | X | | | X | | |
| | Schunk Graphite Technology, Inc. | X | | | X | | |
| | SCRC | X | | | X | | |
| | SEC (OTS Contract) | X | | | X | | |
| | SEC (MSC Software Corporation) | X | | | X | | |
| | SEC (COPEB) | X | | | X | | |
| | Sedberry, Joyce | X | | | X | | |
| | Segway | X | | | X | | |
| | Sharp, Daniel | X | | | X | | |
| | Shaw, Martin L | X | | | X | | |
| | Siemens GEN III | X | | | X | | |
| | Siemens VDO | X | | | X | | |
| | Siemens VDO Automotive (SVDO) | | | X | | | X |
| | Smith, James O | | | X | | | X |
| | Smith, Louis | X | | | X | | |
| | Smolki, Leslie | X | | | X | | |
| | Smith Trust Bank | X | | | X | | |
| | Snell | X | | | X | | |
| | Stansbury R. Robert L | X | | | X | | |
| | Straloveski, Dennis | X | | | X | | |
| | Stone, Caydena | X | | | X | | |
| | Stonehouse Rentals, Inc. (Teresa G. Boed) | X | | | X | | |
| | Strategic Distribution Marketing De Mexico, S.A. de C.V. | X | | | X | | |
| | Stuck, Ronald P | X | | | X | | |
| | Takata-Petri AG | X | | | X | | |
| | Tatum, Jeffrey | X | | | X | | |
| | TCFA | X | | | X | | |
| | Teraxion Hydrochloride | X | | | X | | |
| | Textron (Exatec) | | | X | | | |
| | Thailand-E&C-Sinko Claim | X | | | X | | |
| | Timken (Brazil) | | | X | | | X |
| | Trevon | X | | | X | | |
| | TRW | X | | | X | | |
| | Tuthill, Rusty | | | X | X | | |
| | U.S. Automation, Inc. | X | | | X | | |
| | Valeo Switches and Detection Systems, Inc. | X | | | X | | |
| | Vasquez, Jose R. d/b/a Farmers' Marketing Service | | X | | X | | |
| | Velvo | X | | | X | | |
| | Waldo, Richard L | X | | | X | | |
| | Weber, Herman | X | | | X | | |
| | Weger, Frank | X | | | X | | |
| | Wheeler, Bruce C. | X | | | X | | |
| | Whitehead, Anthony | X | | | X | | |
| | Whitmore, Steven Lee | X | | | X | | |
| | Williams, Medina | X | | | X | | |
| | Willis, Steven | X | | | X | | |
| | Wilson, Steven E | X | | | X | | |
| | Woodard Diesel Pump | X | | | X | | |
| | Wright, Eugene A. | X | | | X | | |
| | Yates, Dale A. | X | | | X | | |
| | Young, Loretta | | | X | X | | |
| | Zwick | X | | | X | | |
| | Adams, Thomas E. | X | | | X | | |
| | Autonomous Corporation | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding) U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Alternative Resource, Inc. | X | | | X | | |
| | Ann Panda | X | | | X | | |
| | Anuzec, Juan | X | | | X | | |
| | Apple | | | X | | | |
| | ASEC France | X | | | X | | |
| | Atay, Salman | X | | | X | | |
| | Bernstein, Sidney | X | | | X | | |
| | Brown, Jonathan | X | | | X | | |
| | CDA Consulting, Inc. | X | | | X | | |
| | Cefceti Carlos Viana | X | | | X | | |
| | Chilton, Alfred | X | | | X | | |
| | Citibank Texas, National Association | X | | | X | | |
| | Cruz, Charles | X | | | X | | |
| | DACTEM | X | | | X | | |
| | Dangerfield, Shawn | X | | | X | | |
| | Daniel Lapointe | X | | | X | | |
| | Donald M. Lyon, Esq. | X | | | X | | |
| | Dynamic Sciences International | X | | | X | | |
| | Effos North America, LLC | X | | | X | | |
| | Electrisal Systems Motors | X | | | X | | |
| | Electronic Environmental Engineering | X | | | X | | |
| | Electrospect Cost Recovery | X | | | X | | |
| | Ellis, Peter | X | | | X | | |
| | Fabricated Metals | X | | | X | | |
| | Financial Services of America, LLC | X | | | X | | |
| | Focher, Frank J. Jr | X | | | X | | |
| | Fromm, Pamela | X | | | X | | |
| | Gabowski, Len J. | X | | | X | | |
| | General Motors Daewoo Auto and Technology | X | | | X | | |
| | Glass, Garvin | X | | | X | | |
| | H.P. Hawkins, Esq. | X | | | X | | |
| | Hahn Hammer | X | | | X | | |
| | Hamers, Carolyn | X | | | X | | |
| | Hatley Boltex | X | | | X | | |
| | Hassell & Donnelly, PC | X | | | X | | |
| | Howey LLP | X | | | X | | |
| | Howey Simon Arnold & White LLP | | X | | | | |
| | In re Tetracom Hydrochloride Antitrust Litigation | X | | | X | | |
| | INSS | X | | | X | | |
| | Invensys | | | X | | | X |
| | Isabella Plant | X | | | X | | |
| | Jan Strohmaid | X | | | X | | |
| | Janet E. Moser, Esq. | X | | | X | | |
| | Jarzvniecki, Philip | X | | | X | | |
| | Jeanrumd | X | | | X | | |
| | Jeff C. Spahn, Jr., Esq. | X | | | X | | |
| | Joe Vivano | X | | | X | | |
| | Jon E. McDermott, Esq. | X | | | X | | |
| | Jon R. Sudbert, Esq. | X | | | X | | |
| | Jonathan B. Taylor, Esq. | X | | | X | | |
| | Jones, Leland | X | | | X | | |
| | Jones, Rodger | X | | | X | | |
| | Jones, Vanessa | X | | | X | | |
| | Joshua A. Shebin, Esq. | X | | | X | | |
| | Joyol Products, Inc. | X | | | X | | |
| | Junkin, Harrison & Junkin, PC | X | | | X | | |
| | JV Products | X | | | X | | |
| | Kenra Technical Services | X | | | X | | |
| | Kenra, William | X | | | X | | |
| | Kessler, Thomas | X | | | X | | |
| | Krosiger, William C. | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Krupp Hoesch | X | | | X | | |
| | Laborsource 2000, Inc. | X | | | X | | |
| | Lazes, Daniel | X | | | X | | |
| | LK Nagano Sistemas Automotivos Ltda | X | | | X | | |
| | Luer, Alberto Moreira | X | | | X | | |
| | Marina, Dora A | X | | | X | | |
| | Matamoros | X | | | X | | |
| | Matthew G. Lindberg, Esq. | X | | | X | | |
| | Moore Lucca Diniz | X | | | X | | |
| | McAffee, Adam | X | | | X | | |
| | MetroCal, Inc. | X | | | X | | |
| | Ministerio Publico | X | | | X | | |
| | Missing Press Parts | X | | | X | | |
| | Molex Cost Recovery Disputes | X | | | X | | |
| | Moltex, Inc. | X | | | X | | |
| | Moll Barera Fires | X | | | X | | |
| | Nesco | | | X | | | |
| | Novo Rio Bancrias Ltda | X | | | X | | |
| | Nu-Tech Plastics Engineering, Inc. | X | | | X | | |
| | Olsen Tooling | X | | | X | | |
| | Omaltos | X | | | X | | |
| | Palmer, Carole I. | X | | | X | | |
| | Patent Holding Company | X | | | X | | |
| | Paul Rosen, Esq. | X | | | X | | |
| | Pennington, Jeff | X | | | X | | |
| | PODS | X | | | X | | |
| | Power Outage | X | | | X | | |
| | Public Lighting Authorities | X | | | X | | |
| | Reynosa | X | | | X | | |
| | Richard Vance, Esq. | X | | | X | | |
| | Rio Bravo Occupied Worker Housing | X | | | X | | |
| | Roca Alberto | X | | | X | | |
| | Royal Freight, L.P. | X | | | X | | |
| | S-vua Aparecida da Silva | X | | | X | | |
| | Samuel W. Hadek, Esq. | X | | | X | | |
| | Satko | X | | | X | | |
| | SEC-MSC Software Corporation | X | | | X | | |
| | Seskin, Lauren | X | | | X | | |
| | Smith, Erisha | X | | | X | | |
| | Smith, Louis | X | | | X | | |
| | Sobol, Jonathan F | X | | | X | | |
| | State of Minas Gerais | X | | | X | | |
| | Stewart, Andrew | X | | | X | | |
| | Stites & Harbison, PLLC | X | | | X | | |
| | Tom Van Dusen | X | | | X | | |
| | Valeo North American Corporate | X | | | X | | |
| | Watkins Motor Lines | X | | | X | | |
| | Weber, Herman | X | | | X | | |
| | Whitehead, Anthony | X | | | X | | |
| | William L. Sekelsky, Esq. | X | | | X | | |
| | Williams, Marlina | | | | X | | |
| | Xerdex, Inc. | | X | | | | |
| | Young, Loretta | | | | | | |
| | Arnold & Porter | | | X | | | |
| | Invensys | | | | | | X |
| | | | | | | | |
| | Miscellaneous | | | | | | |
| | | | | | | | |
| | Alan Tonelli | | | | X | | |
| | Alice Aparecida Lima dos Santos | | | | X | | |
| | Allegheny Coatings | | | | X | | |
| | Alternate Resource, Inc. | | | | X | | |
| | Amy C. Baskton | | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Braun, Greyson | X | | | X | | |
| | MCI Telecommunications Corporation | | | X | | | X |
| | Austin Group, LTD | | | | | | |
| | Bedrin, John | X | | | X | | |
| | Bermudez Peace | X | | | X | | |
| | Bodnar, J. | X | | | X | | |
| | Betty J. Fuqua | X | | | X | | |
| | Braun Makle | X | | | X | | |
| | Bridget A. Neufbauer | X | | | X | | |
| | BMC Holding Corporation d/b/a BMC West and BMC West | X | | | X | | |
| | Building Material Holding Corporation | X | | | X | | |
| | Bulk Terminals, Inc. | X | | | X | | |
| | George M. O'Bryan | X | | | X | | |
| | Infloret Services, Inc. | X | | | X | | |
| | CDA Consulting, Inc. | X | | | X | | |
| | CED, Inc. dba All-Phase Electric Supply | | X | | X | | |
| | Charles Francis Kulinec Jr. | X | | | X | | |
| | Chris Wong | X | | | X | | |
| | Cindy Lee Schleicher a/k/a Cindy Lee Berthold | X | | | X | | |
| | Circle Plastic Products, Inc. | X | | | X | | |
| | Groupe | X | | | X | | |
| | MatterGuns | X | | | X | | |
| | VEHVAC | X | | | X | | |
| | Clonon, Donald | X | | | X | | |
| | Conrad, Dean F. | X | | | X | | |
| | Toyota Motor North America, Inc. | | | X | X | | |
| | Cox, Joe L. | X | | | X | | |
| | Crown City Plating Company | X | | | X | | |
| | CK1 Industries | X | | | X | | |
| | Daniel A. Meiler | X | | | X | | |
| | Vasquez, Jose R d/b/a Farmers' Marketing Service | X | | | X | | |
| | Republic Waste Industries, Inc. | X | | | X | | |
| | Shiver Electric | X | | | X | | |
| | Materturers | X | | | X | | |
| | Infomistl | X | | | X | | |
| | Reynosa | | X | | X | | |
| | Kelly Koszewski | X | | | X | | |
| | Irvine | X | | | X | | |
| | Adrian | X | | | X | | |
| | State of New York | | | X | X | | |
| | Solvent Chemicals | X | | | X | | |
| | Public Lighting Authorities | X | | | X | | |
| | IMSS | X | | | X | | |
| | Logistics Solution Group S.A.de C.V. | X | | | X | | |
| | Dennis Sharp | X | | | X | | |
| | Desec Corporation | X | | | X | | |
| | DevTeq Boulevard II, Inc. | X | | | X | | |
| | Dialma Pereira da Silva | X | | | X | | |
| | Discrete Manufacturing Systems | X | | | X | | |
| | Eli cruz Aparecido de Souza | X | | | X | | |
| | ABATE - CO Co | X | | | X | | |
| | Erica Maria Martins Ribeiro | X | | | X | | |
| | Essdras | X | | | X | | |
| | Executive Lease Program - MI | X | | | X | | |
| | Faraj Mohamed | X | | | X | | |
| | Federal Mogul | | | X | | | X |
| | Fleming, Joseph A. | X | | | X | | |
| | Ford Motor Company | | | X | | | X |
| | FANA Investigation, Kettering | X | | | X | | |
| | Freudenberg - Purge Valve Patent Litigation | X | | | X | | |
| | Gunn, Robert Edwin | X | | | X | | |
| | General Motors' Discovery | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | GHI | X | | | X | | |
| | Gerben, Mirella | X | | | X | | |
| | Gulube, Michael | X | | | X | | |
| | Hama, Terry | X | | | X | | |
| | Hasco Industries, Inc. | X | | | X | | |
| | Hein Tratin, Inc. | X | | | X | | |
| | Hayes Brake | | X | | X | | |
| | Hayes Lemmerz International, Inc. | X | | | X | | |
| | Hoover Precision Plastics | X | | | X | | |
| | HPI | X | | | X | | |
| | Hutchinson Seal | X | | | X | | |
| | H.L. Services Company | X | | | X | | |
| | ICG Holdings Shortfalls | X | | | X | | |
| | II.E Moraine Umpire Appeal | X | | | X | | |
| | ILE | X | | | X | | |
| | OSA | X | | | X | | |
| | James Truscio | X | | | X | | |
| | Jeaun Mills | X | | | X | | |
| | Jeanurahd | X | | | X | | |
| | Jeff Stoughton | X | | | X | | |
| | John Guevera | X | | | X | | |
| | John Pence | X | | | X | | |
| | Johnson, Jana C | X | | | X | | |
| | Katlin, Lawrence | X | | | X | | |
| | Key Plastics | | X | | X | | |
| | Kim Fouche | X | | | X | | |
| | Ken N. Khan | X | | | X | | |
| | Leon Simmons | X | | | X | | |
| | Linda Zentai-Ki | X | | | X | | |
| | Lexx | X | | | X | | |
| | Lockheed Martin | | | X | X | | |
| | Luciana E.C. Celpin Leite | X | | | X | | |
| | L&W Stamping, Inc. | X | | | X | | |
| | Marcel Hogan | X | | | X | | |
| | Michael Jay Jr | X | | | X | | |
| | Maria Angela da Rocha | X | | | X | | |
| | Maria Aparecida Silva | X | | | X | | |
| | Maria Jose. Costa dos Santos | X | | | X | | |
| | Mark Heathco | X | | | X | | |
| | Marina J. Jordan | X | | | X | | |
| | Marissa Clark | X | | | X | | |
| | Means Industrial, Inc. | X | | | X | | |
| | Merritt, James and Bonnie | X | | | X | | |
| | Michael K. Snider | X | | | X | | |
| | Michael S. Young | X | | | X | | |
| | Mike Bialydskaw | X | | | X | | |
| | Mike Leslie | X | | | X | | |
| | Milwaukee Design Center | X | | | X | | |
| | MJ OSH No. 125123360 | X | | | X | | |
| | Motor Cost Recovery Disputes | X | | | X | | |
| | Lucia V. Moretti | X | | | X | | |
| | Connie Fournier | X | | | X | | |
| | Eugene Wright | X | | | X | | |
| | Motorola Quadriazer | | | X | X | | |
| | Nessoa | X | | | X | | |
| | Norma Jean Tuncky | X | | | X | | |
| | Odrick Industries, LTD | X | | | X | | |
| | OSHA Recordables | X | | | X | | |
| | P.K. Tool & Manufacturing | X | | | X | | |
| | Palmer, Carla L | X | | | X | | |
| | Harold Aubert | X | | | X | | |
| | Pamela K. Dotson | X | | | X | | |
| | AYF | | | X | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Automotive Applied Technologies Limited | X | | | X | | |
| | Peter Yung | X | | | X | | |
| | Petra Household Goods Claim | X | | | X | | |
| | Phelps, John W. | X | | | X | | |
| | Pietra, Tammie | X | | | X | | |
| | Plastech Decator Corporation, et al. | | | X | | | X |
| | Praxair/Surface Technologies | | | X | | | X |
| | Praxair (Flamerail) Italian Litigation | X | | | X | | |
| | Pridham, Deborah Brown | X | | | X | | |
| | Productivity Point International, Inc. | X | | | X | | |
| | Radiation Issue | X | | | X | | |
| | Rebecca Lea Miles | X | | | X | | |
| | Rebecca Roda | X | | | X | | |
| | Automotive Technologies Inc. | X | | | X | | |
| | Richard Burior | X | | | X | | |
| | Richard J. Jalaspa | X | | | X | | |
| | Richard Kowalski | X | | | X | | |
| | Richard W. Kessler, II | X | | | X | | |
| | Robin McCree | X | | | X | | |
| | Robinson Cartage Company | X | | | X | | |
| | Ross Leza da Silva | X | | | X | | |
| | Sharon Kelley (Estate of) Charles Kelley | X | | | X | | |
| | Shaw's Van Iceberg | X | | | X | | |
| | Shomra Jenkins | X | | | X | | |
| | Sistema H Lerecios y Communidores - Instituto Mexicano del Seguro Social | X | X | | X | | |
| | Steven Williams | X | | | X | | |
| | Stratec Security Corporation | X | | | X | | |
| | SumiWood of Protenaor | X | | X | X | | |
| | SuperBond - Anglo Metals, Inc. | X | | | X | | |
| | TRW Automotive Products, | X | | X | X | | |
| | Talbot Case | | | | | | |
| | Tammy A. Vandale | X | | | X | | |
| | Tasha Kelely | X | | | X | | |
| | Demeco Automotive | X | | X | X | | |
| | The Chamberlain Group, Inc. | X | | | X | | |
| | | | | | | | |
| | Lear Corporation | | | X | | | X |
| | Thomas York Jr. | X | | | X | | |
| | Teceha | X | | | X | | |
| | Timken (Brazil) | | | X | | | X |
| | Grundig Multimedia B.V. | X | | | X | | |
| | Trico | | X | | X | | |
| | TRW Automotive | | X | X | X | | |
| | TRW | | X | X | X | | |
| | USS Inc. | | X | X | X | | |
| | Delco Remy America (DRA) | | | | | X | |
| | Naboo | X | | | X | | |
| | United States - DSMG Purchase Order Overpayment | X | | | X | | |
| | United States - Infertrate Care Desim - Breach of Warranty | X | | | X | | |
| | Valeo Electrical Systems, Inc. | X | | | X | | |
| | Ventra - Tech | X | | | X | | |
| | Vincent A. Celeta | X | | | X | | |
| | Watkins Motor Lines | X | | | X | | |
| | William Ashburn | X | | | X | | |
| | William Blazes | X | | | X | | |
| | William Jones | X | | | X | | |
| | William P. Edwards | X | | | X | | |
| | Wood, Ralph | X | | | X | | |
| | | | | | | | |
| | Employment Litigation as of August 18, 2005 | | | | | | |
| | Allstate Insurance | X | | X | X | | X |
| | Brenda Aldridge | | | | | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. — U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Brian Dickerson | X | | | X | | |
| | Byron and Teresa Hurst | X | | | X | | |
| | Carl Alkison | X | | | X | | |
| | Chad Daugherty | X | | | X | | |
| | Darrin Savage | X | | | X | | |
| | Donna R. Wilson | X | | | X | | |
| | Edith C James | X | | | X | | |
| | Eva M. Orlik | X | | | X | | |
| | Felipe Garza, Sr. | X | | | X | | |
| | Freddie L Johnson | X | | | X | | |
| | Gary Whitney | X | | | X | | |
| | Gwendolyn J.M. McCallum, fiduciary of the Estate of David B. McCallum | X | | | X | | |
| | Harold Woodson | X | | | X | | |
| | James Bastiste | X | | | X | | |
| | James H Nguyen | X | | | X | | |
| | Joel Lynn Short | X | | | X | | |
| | Joseph Reno | X | | | X | | |
| | Judith Myers-Goff | X | | | X | | |
| | Julie Brittingham and David Brittingham | X | | | X | | |
| | Kenneth J. Kuzniega | X | | | X | | |
| | Kimberly Foster | X | | | X | | |
| | Lori Smith | X | | | X | | |
| | Lynn Reinel | X | | | X | | |
| | Mary Smith | X | | | X | | |
| | Michael A. Dudzio | X | | | X | | |
| | Michael Coleman | X | | | X | | |
| | Michelle Hysler | X | | | X | | |
| | Neal C Hokk | X | | | X | | |
| | Norman Jones | X | | | X | | |
| | Paul C. Kirsch | X | | | X | | |
| | Paul J. Yurinsky | X | | | X | | |
| | R. Nicholas Simmons | X | | | X | | |
| | Ralph Wood | X | | | X | | |
| | Robert Givens | X | | | X | | |
| | Rosabel Mulgy | X | | | X | | |
| | Ruben J. Rosen | X | | | X | | |
| | Russell Anderson, Jr | X | | | X | | |
| | Sheryl Carter | X | | | X | | |
| | Sonja Abernathy | X | | | X | | |
| | Stacey Prudlock | X | | | X | | |
| | Stephen M. McKee | X | | | X | | |
| | Terrence Evans | X | | | X | | |
| | The Estate of Charles Kelley, by the executrix Sharon Kelley and Sharon Kelley | X | | | X | | |
| | Thomas J. Spencer | X | | | X | | |
| | Tina Newman | X | | | X | | |
| | Vicki Lynn Marion, as Personal Representative of the Estate of Mark Marion | X | | | X | | |
| | Walter Keith Lawson | X | | | X | | |
| | Miscellaneous Litigants | | | | | | |
| | Chemical Waste Management, Inc. | X | | | X | | |
| | CSX Realty Development | X | | | X | | |
| | Danis Environmental Industries, Inc. | X | | | X | | |
| | Diversified Environmental Management Company | X | | | X | | |
| | Fluor Corporation | | | X | | | X |
| | The Danis Companies | | X | | X | | |
| | Tremont Landfill Company | X | | | X | | |

Page 42 of 85

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Waste Management, Inc. | | | X | | | X |
| | Pending NLRB Charges | | | | | | |
| | Gregory James Knighton | X | | | X | | |
| | Industrial Div. of the Communications | X | | | X | | |
| | International Brotherhood of Electrical Workers | | | | | | |
| | IUE-CWA Local 755 | | X | | X | | |
| | IUE - CWQ | X | | | X | | |
| | Joyce Walker | X | | | X | | |
| | Kevin B. Walker | X | | | X | | |
| | Larry Brady | X | | | X | | |
| | Larry C. Peters | X | | | X | | |
| | Leo Young | X | | | X | | |
| | Linda Hudson | X | | | X | | |
| | Lou Gross | X | | | X | | |
| | Local 1097 | X | | | X | | |
| | Local 663 | X | | | X | | |
| | Local 663 Electrical Workers | X | | | X | | |
| | Lonnie James | X | | | X | | |
| | Philip Gonzalez | X | | | X | | |
| | Randal A. Middleton | X | | | X | | |
| | Robert Lewis | X | | | X | | |
| | Wayne Connell | X | | | X | | |
| | William D. Hanline | X | | | X | | |
| | Workers of America | X | | | X | | |
| | Delphi Administrative Charges (Active) | | | | | | |
| | Arnold, James P. | X | | | X | | |
| | Averette, Hessie | X | | | X | | |
| | Baxter, Daniel | X | | | X | | |
| | Berry, Berta | X | | | X | | |
| | Blevins, Diane | X | | | X | | |
| | Brantley, Shakonda J. | X | | | X | | |
| | Britt, Stephanie | X | | | X | | |
| | Brooks, Diane | X | | | X | | |
| | Brooks, Marvin | X | | | X | | |
| | Brooks, Shamella | X | | | X | | |
| | Brown, Celestia | X | | | X | | |
| | Buchanan, Rufus O. | X | | | X | | |
| | Burch, Amy R. | X | | | X | | |
| | Butler, Daisy J. | X | | | X | | |
| | Campbell, John E. | X | | | X | | |
| | Chivers, Kathy I. | X | | | X | | |
| | Cochran, Amanda | X | | | X | | |
| | Colbert, John E. | X | | | X | | |
| | Copeland, Tracy G. | X | | | X | | |
| | Davis, Harriett | X | | | X | | |
| | Deeman, Rick | X | | | X | | |
| | Dukarski, Katherine | X | | | X | | |
| | Dutton, William Boyd | X | | | X | | |
| | Eisaman, Joel G. | X | | | X | | |
| | Fields, Charlotte | X | | | X | | |
| | Foster, Kim L. | X | | | X | | |
| | Geddis, Tracy | X | | | X | | |
| | Garcia, Jessie L. | X | | | X | | |
| | Gelvard, Jennie | X | | | X | | |
| | Glass, Cloy | X | | | X | | |
| | Glynn, Marcus | X | | | X | | |
| | Gonzalez, Phillip | X | | | X | | |
| | Gordon, Patricia | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Hanley, John W | X | | | X | | |
| | Hardy, William | | | | | | |
| | Hessel, Claudette M | X | | X | X | | |
| | Hernandez, Gloria | X | | | X | | |
| | Herndon, Laura V | X | | | X | | |
| | Herndon, Laura V. | X | | | X | | |
| | Hills, Donald L. Sr | X | | | X | | |
| | Hood, Lawrence | X | | | X | | |
| | Hood, Kelli | X | | | | | X |
| | Howard, Mark | X | | | | | |
| | Johnson, Ruth | X | | | | | |
| | Johnson, Shandie | X | | | X | | |
| | Jones, David | X | | | X | | |
| | Jones, Lonnie | X | | | X | | |
| | Jones, Anita | X | | | X | | |
| | Julius, Steven | X | | | X | | |
| | Kowalski, Daniel E. | X | | | X | | |
| | Larimore, John L. | X | | | X | | |
| | Little, Robert W. | X | | | X | | |
| | Lumpkin, Robert J. | X | | | X | | |
| | Lunn, Richard | X | | | X | | |
| | Massey, Patricia | X | | | X | | |
| | Matter, Phillip | X | | | X | | |
| | McCullough, Amy M. | X | | | X | | |
| | McDonald, Wilfred A. | X | | | X | | |
| | McMillion, Anna | X | | | X | | |
| | Multhaup, Charles D. | X | | | X | | |
| | Ondo, Anthony C. | X | | | X | | |
| | Owens, Donna | X | | | X | | |
| | Peters, Jerry | X | | | X | | |
| | Pickett, Mary | X | | | X | | |
| | Powell, Charlene | X | | | X | | |
| | Qualls, Debbie L. | X | | | X | | |
| | Reyes, Daniel | X | | | X | | |
| | Samuels, Rachel | X | | | X | | |
| | Shanks, Carol | X | | | X | | |
| | Steehen, Daniel | X | | | X | | |
| | Suttes, Brenda | X | | | X | | |
| | Swain, Andrew | X | | | X | | |
| | Taylor, Kenneth | X | X | | X | | |
| | Thomas, Demetrios | X | | | X | | |
| | Thompson, Maria N | X | | | X | | |
| | Todd, William N. | X | | | X | | |
| | Turletsky, Paul J | X | | | X | | |
| | Vincent, Leo J | X | | | X | | |
| | Walker, Joyce | X | | | X | | |
| | Warner, Eno, Leslie A. | X | | | X | | |
| | West, Rhonda | X | | | X | | |
| | Whitaker, Samuel F. | X | | | X | | |
| | Williams, Lester | X | | | X | | |
| | Williams, Loretta | X | | | X | | |
| | Wojtanik, Marsha | X | | | X | | |
| | Woodard, Rhonda | X | | | X | | |
| | Wolen, Leo | X | | | X | | |
| | Woodard, Anthony | X | | | X | | |
| | Young, Karl L. | X | | | X | | |
| | Young, Michael | X | | | X | | |
| | Sedgwick CMS Claims Report | | | | | | |
| | Brittingham, Julie & David | X | | | X | | |
| | Estate of Stella Dementia | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Grimes, Rita | X | | | X | | |
| | O'Neill, Mary P. | X | | | X | | |
| | Quinn, Larry | X | | | X | | |
| | Shannon Shaw, Martin L. | X | | | X | | |
| List of former and current employees Delphi has agreed to indemnify: | | | | | | | |
| | Atul Pasricha | X | | | X | | |
| | Bisbrik, John | X | | | X | | |
| | Catherine Rozanski | X | | | X | | |
| | Downs, Alan | X | | | X | | |
| | Donald Runkle | X | | | X | | |
| | Fritz, Paul | X | | | X | | |
| | Gonzalez / Ernesto (Ernie) | X | | | X | | |
| | Isabelle Sepike | X | | | X | | |
| | J.T. Battenberg | X | | | X | | |
| | John Harris | X | | | X | | |
| | John Sheehan | X | | | X | | |
| | Katherine Bellis | X | | | X | | |
| | Kerd Le Prete | X | | | X | | |
| | Laura Marion | X | | | X | | |
| | Mantese, Joseph Vito / Lease Plan USA | X | | | X | | |
| | Margaret Fukuda | X | | | X | | |
| | Michael Flagstein | X | | | X | | |
| | Milan Belans | X | | | X | | |
| | Novak, Barbara Griffin | X | | | X | | |
| | Peter Janak | X | | | X | | |
| | Rachel Baxter | X | | | X | | |
| | Steven Merrick | X | | | X | | |
| | Tisch, Frankie | X | | | X | | |
| | William Harper | X | | | | | X |
| Actual/Contingent Warranty Claimants: | | | | | | | |
| | Allied Material | X | | | X | | |
| | Amak Brake LLC | X | | | X | | |
| | American Axle & Mfg Inc | | | X | X | | |
| | ArvinMeritor | | | X | X | | |
| | Bentley-Rolls Royce | | | X | X | X | |
| | BMW | | | X | X | | |
| | Borg-Warner | | | X | X | | |
| | BorgWarner Turbo Systems | | | X | X | | |
| | Bosch | X | | | X | | |
| | Bruce Woodward | X | | | X | X | |
| | Calsonics | X | | | X | | |
| | Collins & Aikman | | | X | | | X |
| | Custom Energy | X | | | X | | |
| | CWI | X | | | X | | |
| | Daesung Relay | X | | | X | | |
| | Daewoo International | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Daimler Chrysler | | | X | | | X |
| | Dana Corp Global Production WHS | | | X | X | | |
| | Dana Corp Sealing Division | | | X | X | | |
| | DCX | | | X | | | X |
| | DMX Eur | X | | | X | | |
| | DMX NA | X | | | X | | |
| | Englehard Corporation | | | X | | | X |
| | Englehard/NGK | | | | X | | |
| | Enterprise Automotive Systems | | | | X | | |
| | Epsilon | | | | X | | |
| | Faurecia | | X | | X | | |
| | Faurecia Exhaust Sys Inc | | X | | X | | |
| | Ferm Electronics Material Systems | | | X | X | | |
| | Ford | | | X | | | X |
| | Ford Australia | X | | | X | | |
| | Freightliner | X | | | X | | |
| | General Motors | | | X | X | | |
| | GM | | | X | X | | |
| | GM Daewoo | X | | | X | | |
| | GM DAT | X | | | X | | |
| | GM DAT Daewoo | X | | | X | | |
| | GM DRC | X | | | X | | |
| | GM do Brasil | X | | | X | | |
| | GM Epsilon | X | | | X | | |
| | GM Europe Opel | X | | | X | | |
| | GM Holden | X | | | X | | |
| | GM Shanghai | X | | | X | | |
| | GM SPO | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | GMDAT | X | | | X | | |
| | GMNA | X | | | X | | |
| | GMPT | X | | | X | | |
| | GMSPO | X | | | X | | |
| | GMSPO-CWI | X | | | X | | |
| | GMT 201 | X | | | X | | |
| | Hitachi Industrial Supply Inc | X | | | X | | |
| | Hitachi High Technologies | | | X | | | |
| | Honda | | | X | | | X |
| | Honeywell ACS Sensing & Control | | | X | | | X |
| | Hubert Stueken GmbH & Co KG | X | | | X | | |
| | Hyundai | | X | | X | | |
| | International | X | | | X | | |
| | International Truck | X | | | X | | |
| | Kostex | X | | | X | | |
| | KIA | X | | | X | | |
| | Korean Tech Center | X | | | X | | |
| | Land Rover | X | | | X | | |
| | Lineateur Performance Center | X | | | X | | |
| | Maha Sistemas de Filtracion de Mex | X | | | X | | |
| | MBUSI | X | | | X | | |
| | Miniature Precision Components | X | | | X | | |
| | Motorola | | | X | X | | |
| | Nissan | X | | | X | | |
| | Opel | X | X | | X | | |
| | PBR Automotive Pty Ltd | X | | | X | | |
| | PBR Columbia LLC | X | | | X | | |
| | Philips / Selectron | | | X | X | | |
| | Pixley Richards Inc | | X | | X | | |
| | PSA | | X | | X | | |
| | Saginaw | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Siemens | | | X | | | X |
| | Siemens VDO Automotive Inc | | | X | | | X |
| | Siemens VDO SA de CV | | | X | | | X |
| | Swriac | X | | | X | | |
| | Tawas Industries | X | | | X | | |
| | TI Automotive | X | | | X | | |
| | Toyota | | | X | X | | |
| | Toyota Motor Manufacturing NA Inc | | | X | X | | |
| | Trelleborg Automotive | X | | | X | | |
| | Triumph/ Whitkway | X | | | X | | |
| | Volvo | | X | | X | | |
| | Wabash Technologies Inc | X | | | X | | |
| | Underwriters of Securities Issued by the Company during the past three years | | | | | | |
| | Third Preferred Securities | | | | | | |
| | A.G. Edwards & Sons, Inc. | X | | | X | | |
| | ABN AMRO Incorporated | | | X | X | | |
| | Advest, Inc. | | | | | | |
| | Banc of America Securities LLC | | X | | X | | |
| | BB&T Capital Markets, a Division of Scott and Stringfellow, Inc. | X | | | X | | |
| | C.L. King & Associated, Inc. | X | | | X | | |
| | Comerica Securities | | | | | | |
| | D.A. Davidson & Co. | X | | X | X | | |
| | Deutsche Bank Securities Inc. | X | | | X | | |
| | Ferris, Baker Watts, Incorporated | | X | | X | | |
| | Janney Montgomery Scott LLC | X | | | X | | |
| | McDonald Investments Inc., a KeyCorp Company | | | X | X | | |
| | Merrill Lynch, Pierce, Fenner & Smith Incorporated | X | | | X | | |
| | Mesirow Financial, Inc. | | X | | X | | |
| | Morgan Stanley & Co. Incorporated | | | X | | | X |

Work Sheet - In Court

| Name | Delphi Automotive Systems (Holding), Inc. U.S. Connection Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|
| | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| Oppenheimer & Co. Inc. | | | X | X | | |
| Quick & Reilly, Inc. | | X | | X | | |
| RBC Dain Rauscher Inc. | X | | | X | | |
| RBC/RBC & Co. | X | | | X | | |
| Samuel A. Ramirez & Company, Inc. | X | | | X | | |
| Scotia Capital (USA) Inc. | X | | | X | | |
| Southwest Securities, Inc. | | X | | X | | |
| Stifel, Nicolaus & Company, Incorporated | X | | | X | | |
| U.S. Bancorp Piper Jaffray Inc. | | | X | | | X |
| UBS Securities LLC | X | | | X | | |
| Utendahl Capital Partners, L.P. | X | | | X | | |
| Wachovia Capital Markets, LLC | X | | | X | | |
| Wells Fargo Van Kasper LLC | | | X | X | | |
| Trust II Preferred Securities | | | | | | |
| Banc of America Securities LLC | X | | | X | | |
| Barclays Capital Inc. | | | X | X | | |
| BNP Paribas Securities Corp | X | | | X | | X |
| Citigroup Global Markets Inc. | | | X | X | | |
| Comerica Securities, Inc. | | | X | | | |
| Credit Suisse First Boston LLC | | | X | X | | X |
| Deutsche Bank Securities Inc. | X | | | X | | |
| HSBC Securities (USA) Inc. | | X | | X | | |
| J.P. Morgan Securities Inc. | X | | | X | | |
| McDonald Investments Inc., a KeyCorp Company | X | | | X | | |
| Merrill Lynch, Pierce, Fenner & Smith Incorporated | | | | X | | |
| Morgan Stanley & Co. Incorporated | | | X | X | | X |
| SG Cowen Securities Corporation | X | | | X | | |
| The Royal Bank of Scotland plc | | | X | X | | |
| UBS Securities LLC | X | | | X | | |
| Williams Capital Group, L.P. | X | | | X | | |
| 6.50% Notes due 2013 | | | | | | |
| Banc of America Securities LLC | X | | | X | | |
| Barclays Capital Inc. | | | X | | X | |
| BNP Paribas Securities Corp | X | | | X | | |
| Citigroup Global Markets Inc. | | | X | X | | |
| Credit Suisse First Boston LLC | | | X | X | | |
| Deutsche Bank Securities Inc. | X | | | X | | |

Work Sheet - In Court

| | | Delphi Automotive Systems (Holdings), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holdings), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| Category | Name | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | HSBC Securities (USA) Inc. | | X | | X | | |
| | J.P. Morgan Securities Inc | X | | | X | | |
| | Morgan Stanley & Co. Incorporated | | | X | | | X |
| | Ramirez & Co., Inc. | | | | | | |
| | The Royal Bank of Scotland plc | X | | X | X | | |
| | Tokyo-Mitsubishi International plc | X | | | X | | |
| | UBS Securities LLC | X | | | X | | |
| | Lienholders and other significant lenders | | | | | | |
| | AGFA Corp. | X | | | X | | |
| | Air Liquide Industrial U.S.LP | | | | | | |
| | American Equipment Leasing, a division of EAB Leasing Corp. | X | | X | X | | |
| | Ameritech Credit Corporation | X | | | X | | |
| | Applied Industrial Technologies, Inc. | | | X | X | | |
| | Applied Industrial Technologies-AMC, Inc. | | | X | X | | |
| | Applied Industrial Technologies-DBIH, Inc. | | | X | X | | |
| | Applied Industrial Technologies-Dixie, Inc. | | | X | X | | |
| | Applied Michigan, Ltd | X | | | X | | |
| | Assemblison America Inc. | X | | | X | | |
| | Associion Leasing, Inc. | X | | | X | | |
| | AW Miller Technical Sales, Inc. | X | | | X | | |
| | Bank of Lincolnwood | X | | | | | |
| | Bank One | X | | | X | | |
| | Bank One Michigan | X | | | X | | |
| | Bank One, NA | X | | | X | | |
| | Bank One, NA (Main Office Chicago) | | | X | X | | |
| | Bell Microproducts, Inc. | X | | | X | | |
| | Canon Financial Services Inc. | X | | | X | | |
| | Cardinal Machine Company | X | | | X | | |
| | Cashcode Company, Inc. | X | | | X | | |
| | Centum Bank | X | | | X | | |
| | Charmilles Technologies | X | | X | X | | |
| | CIT Communications Finance Corporation | X | | | X | | |
| | CIT Technologies Corporation | | | X | | X | |
| | CIT Technologies Corporation dba CIT Systems Leasing | | | X | | X | |

Work Sheet - In Court

**Delphi Automotive Systems (Holding), Inc.**

| Name | U.S. Connections Check Nov-05 | | | Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|
| | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| Incep Vendor Finance, Inc. | | | | | | |
| Citicorp Vendor Finance, Inc. | | | | | | |
| Commercial Food & Die Inc. | X | | X | X | | X |
| Compaq Financial Services Corp. | | X | | X | | |
| Computer Sales International | | | X | X | | |
| Computer Sales International Inc. | | | X | X | | |
| Credit Lyonnais, S.A., Cayman Islands Branch | X | | | X | | |
| Crown Credit Co. | X | | | X | | |
| Crown Credit Company | X | | | X | | |
| Cupertino National Bank c/o Greater Bay Capital | X | | | X | | |
| Daewoo Heavy Industries America Corporation | | X | | X | | |
| Dell Financial Services LP | X | | | X | | |
| Delphi Automotive Systems Corp. | | | X | X | | |
| Delphi Automotive Systems Corporation | | | X | X | | |
| Delphi Holdings Luxembourg S.A.R.L. | X | | | X | | |
| DRI Depositor Corp. | X | | | X | | |
| Fifth Third Bank (Western Michigan) | | X | | X | | |
| First Bank of Highland Park | X | | | X | | |
| First Bank of Highland Trust | X | | | X | | |
| GE Polymerland, Inc. | X | | | X | | |
| General Electric Capital Asset Funding | X | | | X | | |
| General Electric Capital Corp. | | | X | | | X |
| General Electric Capital Corporation | | | X | | | X |
| Hitachi Credit America Corp. | X | | | X | | |
| Hubbard Supply Company | X | | | X | | |
| Huskey Injection Molding Systems, Inc. | | X | | | | X |
| Icon SPE 2003-A LLC | X | | | X | | |
| ICX Corporation | X | | | X | | |
| ICX Corporation | X | | | X | | |
| In re Bobby's Kitchen | X | | | X | | |
| Information Leasing Corp. | X | | | X | | |
| IOS Capital LLC | X | | | X | | |
| Iski Automation Systems, Inc. | X | | | X | | |
| Kensington Capital Corporation | X | | | X | | |
| Kyocera Mita America, Inc. | X | | | X | | |
| LaSalle Bank National Association | | | X | X | | |
| LaSalle National Leasing Corporation | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holdings), Inc. — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holdings), Inc. — Canada Connections Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Lease Plan USA, Inc. | X | | | | | |
| | Leasenet Group, Inc. | X | | | | | |
| | Magid Glove & Safety Mfg. Co. LLC | X | | | | | |
| | Makino Inc. | | | | | | |
| | Merlin Capital LP | | X | | X | | |
| | Miami Industrial Trucks Inc. | X | | | X | | |
| | Michele D'Andrea | X | | | X | | |
| | Minacom Marketing Company | X | | | X | | |
| | Minolta Business Solutions, Inc. (fka Minolta Business Systems, Inc.) | | X | | X | | |
| | Mori Seiki USA Inc. | X | | | X | | |
| | Motion Industries Inc. | | | X | X | | |
| | Motorola Credit Corp. | X | | | X | | |
| | Motorola Credit Corp., et al. | X | | | X | | |
| | Motorola Credit Corporation | X | | | X | | |
| | Motorola Inc. | | | X | X | | |
| | Motorola Inc., et al | | | X | X | | |
| | Motorola, Inc. | | | | X | | |
| | Murata Wiedemann Inc. | X | | | X | | |
| | Northern Michigan Tool Company | X | | | X | | |
| | OCE Financial Services, Inc. | X | | | X | | |
| | OCE North America, Inc. | X | | | X | | |
| | OCE-USA Inc. | | X | | X | | |
| | Oce-USA, Inc. | | X | | X | | |
| | Okuma America Corporation | X | | | X | | |
| | Omega Tool Corporation | X | | | X | | |
| | Pacific Rim Capital, Inc. | X | | | X | | |
| | Pullman Bank & Trust | X | | | X | | |
| | Pullman Bank & Trust Company | X | | | X | | |
| | Roco Financial Services Inc. | X | | | X | | |
| | Relational Funding Corporation | X | | | X | | |
| | Renaissance Capital Alliance, LLC | X | | | X | | |
| | Rutherford Cooke et al | X | | | X | | |
| | Sentry Financial Corp. | X | | | X | | |
| | Sentry Financial Corporation | X | | | X | | |
| | Sentry Financial, Inc. | X | | | X | | |
| | Shirley Baird Power | X | | | X | | |
| | Southern Pacific Bancapital | X | | | X | | |
| | Southern Pacific Bancapital A Division of Southern Pacific Bank "SPBC" Varilease | X | | | X | | |
| | Southern Pacific BankCapital | X | | | X | | |
| | TCF Leasing Inc. | X | | | X | | |
| | Tennant Financial Services | X | | | X | | |
| | Tennessee Valley Authority | | X | | X | | |
| | The Huntington National Bank | X | | | X | | |
| | The Pefer Group, Inc. | X | | | X | | |
| | Toshiba American Information Systems Inc. | | X | | X | | |
| | Toyota Motor Credit Corporation | | | X | X | | |
| | Toyota Motor credit Corporation | | | X | X | | |
| | DMB Bank Colorado Downtown Banking Center | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | UMB Bank Colorado, N.A. | X | | | X | | |
| | Van Dorn Demag Corporation | | | X | | | X |
| | Varilease Corp. | X | | | X | | |
| | Varilease Corporations | X | | | X | | |
| | Wells Fargo Bank Northwest, Trustee | X | | | X | | |
| | Windsor Mold Inc. | X | | | X | | |
| | Xel Communications, Inc | X | | | X | | |
| | XPEDX | X | | | X | | |
| | Major Customers | | | | | | |
| | AASP - PA | X | | | X | | |
| | Aftermarket | | | | | | |
| | AGFA | | | X | X | | |
| | Aqtek Corporation | X | | | X | | |
| | Aqfa-Gevaert N.V. | X | | | X | | |
| | Agilent Tech. (M) SDN BHD | | X | | X | | |
| | Aksys, Ltd | X | | | X | | |
| | American Axle | | | X | X | | |
| | American Discount Supply, Inc | X | | | X | | |
| | Applied Biosystems | X | | | X | | |
| | ArvinMeritor | | | X | X | | |
| | Autoliv | | | X | | | X |
| | Automotive Training Schools | X | | | X | | |
| | AZ Automotive | X | | | X | | |
| | Benteler | X | | | X | | |
| | Best Buy Co, Inc. | | X | | | X | |
| | BMW | | | X | X | | |
| | BMW Group | | | X | X | | |
| | Bosch | X | | | X | | |
| | Brite Smile | X | | | X | | |
| | Brite Smile - Chicago | X | | | X | | |
| | Brite Smile Center | X | | | X | | |
| | BriteSmile - Denver | X | | | X | | |
| | BriteSmile - Phoenix | X | | | X | | |
| | BriteSmile - San Diego | X | | | X | | |
| | Calsonic Kansei | | | X | | | X |
| | Cambren Bio Science | X | | | X | | |
| | Cam | X | | | X | | |
| | Cardinal | X | | | X | | |
| | Cardinal Health | | | X | X | | |
| | Cardinal Health Canada 301, Inc | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connection Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Caterpillar | | | X | | | X |
| | Caterpillar Engine Systems | X | | | X | | |
| | Circuit City Stores Inc | | | | X | | |
| | Coinstar | | X | | X | | |
| | Collins & Aikman | | | X | | | X |
| | Cummins | | | X | X | | X |
| | Daewoo Motor | X | | | X | | |
| | Daihatsu | X | | | X | | |
| | Daimler Chrysler | | | X | | | X |
| | Daimler Chrysler | | | X | | | X |
| | DaimlerChrysler Corp. US | | | X | X | | X |
| | BRM Tech. | | X | | | | |
| | Delphi - Allied Sales | X | | | X | | |
| | Denso | X | | | X | | |
| | Elgin Industries | X | | | X | | |
| | Everest Biomedical Instruments | X | | | X | | |
| | Federal-Mogul Corp D.I.P. | X | | X | X | | X |
| | Fiat Group | | | | | | |
| | Ford | X | | X | X | | X |
| | Ford Group | X | | | X | | |
| | Forhealth Technologies, Inc. | X | X | | X | | |
| | Fuji Heavy Industries | X | | | X | | |
| | GE Medical Systems | X | | | X | | |
| | General Motors | X | | X | X | | |
| | GM - AC Delco | X | | | X | | |
| | GM Powertrain | X | | | X | | |
| | GM SPO | X | | | X | | |
| | GMIO | X | | | X | | |
| | GMNAO | X | | | X | | |
| | Harmoscope Corporation | X | | | X | | |
| | Harley Davidson | X | | | | X | |
| | Helwie, Inc. | X | | X | X | | |
| | Hewlett-Packard | | | | | | |
| | Hewlett-Packard Co.-Roseville | X | | X | X | | X |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Hewlett-Packard Company | | | X | | | X |
| | Hewlett-Packard GmbH | X | | | X | | |
| | Hewlett-Packard Singapore | X | | | X | | |
| | Hewlett-Packard/San Jose | X | | | X | | |
| | Honda | | | X | | | X |
| | H-P Asia Pacific Pte Ltd. | X | | | X | | |
| | HP Financial Services Cntr. | X | | | X | | |
| | HP International-SAIL (France) | X | | | X | | |
| | HP Smartbuy | X | | | X | | |
| | HP-Colorado Springs | X | | | X | | |
| | HP-FORT COLLINS | X | | | X | | |
| | HP-San Diego HID | X | | | X | | |
| | Hyundai | X | | | X | | |
| | IAPA | X | | | X | | |
| | Inogen | X | | | X | | |
| | Inotherapeutics | | | | X | | |
| | Intramicron Trade Corp | | | X | X | | |
| | International Truck & Engine | | | X | X | | |
| | Iogen Group | X | | | X | | |
| | J | X | X | | | X | |
| | John Deere - Engine Works | X | | X | X | | |
| | Johnson Controls | | | | X | | |
| | Keatex | X | | | X | | |
| | Key Safety | X | | | X | | |
| | KLA - Tencor | X | | | X | | |
| | KLA Tencor Corp | | | X | X | | |
| | KLA-Tencor | | | X | X | | |
| | KLA-Tencor Integrate Metrology | | | X | X | | |
| | KS Centoco | X | | | X | | |
| | L-3 Communications | | | | | | |
| | Lear | | X | | | | X |
| | LeftHand Networks | X | | | | | |
| | Magna Inter | | | | X | | |
| | Metro Tools | X | | | X | | |
| | Medical Simulation Corporation | X | | | X | | |
| | Medtel | | | X | X | | |
| | Medtrome Navigation | X | | | X | | |
| | Melling Tool Company | X | | | X | | |
| | Mercedes-Benz U.S. International, Inc. | X | | X | X | | X |
| | Michael Baker Inc. | | | | | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Mitsubishi | | X | | | X | |
| | Modtech | X | | | X | | |
| | Napa Dist Center | X | | | X | | |
| | National Auto Radiator | X | | | X | | |
| | Navistar | | | X | | | X |
| | Navistar International | | | X | | | X |
| | Nissan | | X | | | | |
| | Nitex Corporation | X | | | X | | |
| | NuVasive, Inc. | | | X | | | X |
| | Orthonic, Inc. | X | | | X | | |
| | Paccar | | | X | | | X |
| | Particle Measuring Systems Inc | X | | | X | | |
| | Penn 5 Technologies | X | | | X | | |
| | Power & Signal Group | X | | | X | | |
| | Precision Turbo & Engine Reb. | X | | | X | | |
| | Promotions | X | | | X | | |
| | PSA Group | X | | | X | | |
| | Renault | | | X | | | X |
| | Rescue Technology | X | | | X | | |
| | Reviva | X | | | X | | |
| | Rover | X | | | X | X | |
| | S.E. Power Systems Orlando | X | | | X | | |
| | Saturn | X | | | X | | |
| | Standard Motor Products Inc | X | | | X | | |
| | Storage Tek | | | X | | | |
| | Sun Refining & Marketing | X | | | X | | |
| | Sunrise Medical | | X | | | | |
| | Sunrise Medical HHG, Inc. | | X | | | | |
| | Sunrise Medical Ltd | | X | | | | |
| | Suzuki Group | X | | | X | | |
| | Takata | X | | | X | | |
| | Tamaco Inc. (US Geo's) | X | | | X | | |
| | Technologia Modificada SA de Caterpillar | X | | | X | | |
| | Tenneco | | | X | | | |
| | Tire Industry Foundation | X | | | X | | |
| | Toyota | | | X | | | |
| | TRW | | | X | X | | |
| | USA Technologies, Inc. | | | X | X | | |
| | Verilink Corporation | X | | | X | | |
| | Venteon | | | X | X | | |
| | Volkswagen AG | | | X | X | | |
| | Volvo Do Brasil Veiculos LTDA. | X | | | X | | |
| | Volvo Parts North America, Inc. | X | | | X | | |
| | Volvo Truck | | | X | | | X |
| | VW Group | | | X | X | | |
| | Wal-Mart Stores CE | X | | | X | | |
| | Wheeler Brothers Inc | X | | | X | | |
| | XM Email LLC | X | | | X | | |
| | Venoto | X | | | X | | |
| | Zoe Medical, Inc. | X | | | X | | |
| | Adam Opel AG | X | | | X | | |
| | Alcoa Parts/Dist/DeTel/Caterpillar | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connection Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Afico-Jackson Operation | X | | | X | | |
| | Cnemen Group Ltd | X | | | X | | |
| | Caterpillar Inhel | X | | | X | | |
| | DK Packaging | X | | | X | | |
| | Espackako SA | X | | | X | | |
| | Fiat Automotives SA | X | | | X | | |
| | General Motors de Mexico S.de RI | X | | | X | | |
| | General Motors do Mexico S Diefsposn | X | | | X | | |
| | General Motors do Brasil Ltda | X | | | X | | |
| | General Motors Powertrain | X | | | X | | |
| | General Motors S Africa (Pty) Ltd | X | | | X | | |
| | GM de Argentina SA | X | | | X | | |
| | GM Espana SA | X | | | X | | |
| | GM Holden Ltd | X | | | X | | |
| | HMB Group | X | | | X | | |
| | Isuzu Motors Europe Ltd | X | | | X | | |
| | Isuzu Motors Polska Sp Zo O | X | | | X | | |
| | Koltec BV | X | | | X | | |
| | New Venture Enterprises (Belgium) NV | | X | | X | | |
| | Perkins Engines Company Ltd | X | | | X | | |
| | Vauxhall Motors Ltd | | | | | | |
| | Saab Automobile AB | | X | | X | | |
| | Saab Automobile Parts | X | | | X | | |
| | Major Suppliers | | | | | | |
| | Amphenol Corp | X | | | X | | |
| | Littlefuse | X | | | X | | |
| | Spirent Plc | | | | | | |
| | 3M | X | | X | X | | |
| | A Agrati SPA | X | | X | X | | X |
| | AB SKF | X | | X | X | | |
| | Abc Group Inc | X | | | X | | |
| | Acerinda Tubos S | X | | | X | | |
| | Acemo Secoroc Corporativo Do Produc | | | X | X | | |
| | Advanced Micro Devices | X | | | X | | |
| | Affinia Group Holdings Inc | | X | | X | | |
| | Akcan Inc | | | X | X | | |
| | Alcoa Inc | | | X | X | | X |
| | Alleward Springs Ltd | X | | | X | | |
| | Alpine Group Inc, The | | X | | X | | |
| | Alps Electric Co Ltd | | X | | X | | |
| | Aluminum Co OF America | X | | | X | | |
| | Aluminum Co of America | X | | | X | | |
| | Amtek Weld LLC | X | | | X | | |
| | Amtruliac Corp | X | | | X | | |
| | American Axle & Mfg Holdings Inc | | | X | X | | |
| | American President Lines Ltd | X | | | X | | |
| | Amtek Engineering Ltd | | | | | X | |
| | Analog Devices Inc | | | X | X | | |
| | Andorsd Industries LLC | X | | | X | | |
| | Aplicaciones De Metales Sinterizado | X | | | X | | |
| | ARC Automotive Inc | X | | | X | | |
| | Arnold Transportation | X | | | X | | |
| | ASEK Manufacturing Sales | X | | | X | | X |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding) — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connection Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Assemblon America Inc | X | | | X | | |
| | Austria Microsystems AG | | | X | | | |
| | Autocam Corp | X | | | X | | |
| | Autoliv ASP Inc | | | X | | | X |
| | Automatizacion Y Disenos | X | | | X | | |
| | Badin Oax NA | X | | | X | | |
| | BAX Global | X | | | X | | |
| | BBK Ltd | X | | | X | | |
| | Beiersdorf AG | X | | | X | | |
| | Benteler Automotive | X | | | X | | |
| | Berger GmbH & Co Holding KG | X | | | X | | |
| | Binz Mobile Group Inc | X | | | X | | |
| | Binter SA | X | | | X | | |
| | Blue Cross Blue Shield of | X | | | X | | |
| | Beco Pty Ltd | X | | | X | | |
| | Bosch Automotive Systems Corp | X | | | X | | |
| | Bosch, Robert Stiftung GmbH | | | X | | | X |
| | Bosch, Robert Stiftung GmbH | | | X | | | X |
| | Braseway Inc | X | X | | X | | |
| | Calsonic Corp | | | | | | |
| | Calsonic Kansei Corp | | | X | X | | |
| | Campbell Marshall E Co | X | | | X | | |
| | Carlisle Companies Inc | | | X | X | | |
| | Carragworth Ltd | X | | | X | | |
| | Carter Group Canada Inc | X | | | X | | |
| | Centra Inc | X | | X | X | | |
| | CF Gomma SPA | X | X | | X | | |
| | CIE Automotive SA | | | | X | | |
| | Clarion Corp Of America | | | | X | | |
| | Commissariat a l'Energie Atomique | | | | X | | |
| | Compagnie Industrielle de Delle | | | | X | | |
| | Contech | | | | X | | |
| | Continental Gummi-Werke AG | | | | X | | |
| | Cooludflex SA de CV | X | | | X | | |
| | Corning Inc | | | X | X | | |
| | Corsa LP | X | X | | X | | |
| | CTS Corp | X | | | X | | X |
| | Curiel Estrada Jorge | | | | X | | |
| | Cyro Industries | X | | X | X | | |
| | DMR Technology LLC | X | | | X | | |
| | Dawoco Heavy Industry America | X | | | X | | |
| | Dayco Products LLC | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | BBG Tool & Machine | X | | | X | | |
| | Deloitte & Touche | | | | | X | X |
| | Delphi Corp | | | X | | | X |
| | Delphi de Mexico SA de CV | X | | | X | | |
| | Denso Corp | X | | | X | | |
| | Denso International America | X | | | X | | |
| | BBL Dustin Air & Ocean | | X | | X | | |
| | Direct Sourcing Solutions | X | | | X | | |
| | DMC 2 Canada Corporation | X | | | X | | |
| | Dove Equipment Co Inc | X | | | X | | |
| | DTE Coal Services | X | | | X | | |
| | Duluth Services | X | | | X | | |
| | Dura Automotive Systems | | | X | X | | |
| | Dura Automotive Systems Inc | | | X | X | | |
| | E I Dupont de Nemours & Co Inc | X | | | X | | |
| | Eco-Bat America LLC | X | | | X | | |
| | EDS | | X | | X | | |
| | Egelhof SA | X | | | X | | |
| | E I Dupont de Nemours & Co Inc | X | | | X | | |
| | Elro-Knobloch GmbH | X | | | X | | |
| | Engelhard Corp | | | X | X | | |
| | Engelhard Corporation | | | X | X | | |
| | Enricos Cesar Veaechos Industries | | | | | | |
| | Essex Group Inc | | | X | X | | |
| | Federal Express Corporation | | | X | | X | |
| | Federal Mogul Corp | | | X | X | | |
| | Fedex Trade Networks | X | | | X | | |
| | Fennrod International Holding | X | | | X | | |
| | Fernandez Racing LLC | X | | | X | | |
| | Fleux Ltd | X | | | X | | |
| | Folkertygdfindei | X | | | X | | |
| | Fountain Construction Co | X | | | X | | |
| | Freescale Semiconductor | | | X | X | | |
| | Freescale Semiconductor Inc | | | X | X | | |
| | Freudenberg & Co KG | X | | | X | | |
| | The Furukawa Electric Co Ltd | X | | | X | | |
| | Furukawa Electric North | X | | | X | | |
| | Futaba Corp | X | | | X | | |
| | Gainbau International | X | | | X | | |

Work Sheet - In Court

| Category | Name | U.S. Connections Check (Nov-05) | | | Canada Connections Check (Nov-05) | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | General Electric Capital | | | X | | | X |
| | General Electric Co Inc | | | X | | | X |
| | General Motors Corp | | | X | X | | |
| | General Motors Corporation | | | X | | | |
| | Georg Fischer AG | X | | | X | | |
| | Giovanni Agnelli EC SAPA | X | | | X | | |
| | GKN PLC | | X | | X | | |
| | GM Daewoo Auto & Technology Co | X | | | X | | |
| | Great Lakes Tape Corp | X | | | X | | |
| | Green-Trend Industries Inc | X | | | X | | |
| | Groupe Renault | X | | | X | | |
| | Handy & Harman | X | | | X | | |
| | Hayes Lemmerz International Inc | X | | | X | | |
| | Hella Kgaa Hueck & Co | X | | | X | | |
| | Henkel KGAA | X | | | X | | |
| | Hennessey Capital Solutions | X | | | X | | |
| | Hinojosa Ramos Jesus Alfredo | X | | | X | | |
| | Hitachi Automotive | | X | | X | | |
| | Hitachi Chemical Asia Pacific | X | | | X | | |
| | Hitachi Ltd | | | X | | | X |
| | Holden Ltd | X | | | X | | |
| | HPC Engineering PLC | X | | | X | | |
| | HSS LLC | X | | | X | | |
| | Hub Group Associates Inc | X | | | X | | |
| | Hubert Stueken GmbH | X | | | X | | |
| | Hyo Seong Electric Co Ltd | X | | | X | | |
| | Illinois Tool Works Inc | X | | | X | | |
| | Impala Platinum Holdings ITD | X | | | X | | |
| | Ina-Schaeffler KG | X | | | X | | |
| | Infineon Technologies | | | X | | | X |
| | Infineon Technologies AG | | | X | | | X |
| | Internet Corp | | | X | X | | |
| | Internet Corporate | X | | | X | | |
| | Inzi Controls Co Ltd | X | | | X | | |
| | ISI of Indiana Inc | X | | | X | | |
| | Ital International NV | X | | | X | | |
| | ITW Shakeproof Automotive | X | | | X | | |
| | ITW Tomco | | | X | | | X |
| | Johann Albert Freund | X | | | X | | |
| | Johnson Electric Holdings Ltd | X | | | X | | |
| | Johnson Matthey Plc | | | X | X | | |
| | Jvs Eaton P/Ashton Jndl Ltda | X | | | X | | |
| | Kataman Metals Inc | X | | | X | | |
| | Kataman Metals Inc | X | | | X | | |
| | Keller Group Inc | | | X | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), U.S. Connections Check, Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check, Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Kensington Capital | X | | | X | | |
| | Kux Speer Electronics Inc | X | | | X | | |
| | Koninklijke Philips Electronics NV | X | | | X | | |
| | Korea Delphi Automotive Sys Corp | X | | | X | | |
| | Koyo Seiko Co Ltd | | X | | | X | |
| | KPMG LLP | X | | | X | | |
| | Lancraw Transfer Pool | X | | | X | | |
| | Leoni AG | | | | | | |
| | Leopold Kostal GmbH & Co KG | X | | | X | | |
| | Lexington Connector Seals | | | | | | |
| | Lexington Precision Corp | | | X | X | | |
| | Linamar Corp | | | | | | |
| | Littelfuse Inc | | | X | X | | |
| | LS Cable Ltd | X | | | X | | |
| | Lunal | X | | | X | | |
| | M&Q Plastic Products Inc | | X | | | | |
| | Madison Kipp Corp | X | | | X | | |
| | Mecann Erickson Inc | | X | | X | | |
| | Meadowbrook Corp | | | X | | | X |
| | Metal Blanc SA | X | | | | | |
| | Metalform Corp | | | X | X | | |
| | Metaldyne Corporation | | | X | X | | |
| | Methode Electronics Inc | | | X | X | | |
| | Metropolitan Life Ins Co | | | X | X | | |
| | Metropolitan Life Ins Co | | | X | X | | |
| | Metropolitan Life Ins Co | | | X | X | | |
| | Microchip Technology Inc | | | X | X | | |
| | Microsoft Services | | | | | | |
| | Minebea Co Ltd | X | | | X | | |
| | Molex Inc | | | X | | | X |
| | Motorola Automotive | X | | | X | | |
| | Motorola Inc | | | X | X | | |
| | MSX International Inc | X | | | X | | |
| | Multi und Bender KG | X | | | X | | |
| | Multitronics Inc | X | | | X | | |
| | Murata Manufacturing Co Ltd | X | | | X | | |
| | Nabco Inc | | X | | | | |
| | National Logistics | X | | | X | | |
| | National Semiconductor | | | X | X | | |
| | NEC Corp | | | | | | |
| | NEC Electronics Inc | X | | | X | | |

Work Sheet - In Court

| | | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| Category | Name | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Nikn Co Ltd | X | | | X | | X |
| | Nisho Iwai American Corp | X | X | | X | | |
| | Numidall USA INC | | | | X | | |
| | Norsk Hydro ASA | X | | X | X | | |
| | North American Operations | | | | X | | |
| | NSK Ltd | X | | X | X | | |
| | Ogura Clutch Co Ltd | X | | | X | | |
| | Ogura Corp | | X | | X | | |
| | OKI Semiconductor | X | | | X | | |
| | Olin Corp | X | | X | X | | |
| | Omega Automation Inc | X | | | X | | |
| | Omron Corp | X | | | X | | |
| | Onex Corp. | | | X | | | X |
| | Pacific Group Ltd | | X | | X | | |
| | Paul Prescriptions LLC | X | | | X | | |
| | Pem Dedicated Inc | X | | | X | | |
| | Panasonic Automotive | X | | | X | | |
| | Parker Hannifin Corp | | | X | X | | |
| | PBR Automotive USA LLC | X | | | X | | |
| | PBR Columbus LLC | X | | | X | | |
| | PEK Co Ltd | X | | | X | | |
| | Philips Semiconductors | X | | | X | | |
| | Pioneer Corp | X | | | X | | |
| | Pixley Richards Holding Inc | X | X | | X | | |
| | PJAX | X | | | X | | |
| | Planex Holding AG | X | | | X | | |
| | Plexo Inc | X | | | X | | |
| | Plymouth Rubber Co Inc | X | | | X | | |
| | Point Dedicated Services | X | | | X | | |
| | Poltek Engineered Products | X | | | X | | |
| | Perd de Mexico SA de CV | X | | | X | | |
| | Pricewaterhousecoopers LLP | X | X | | X | | |
| | Progressive Molded Prods | X | | | X | | |
| | Progressive Moded Products Ltd | X | | | X | | |
| | Protrans International Inc | X | | | X | | |
| | PT Infineon Technologies Batam | X | | | X | | |
| | QEK Global Solutions | X | | | X | | |
| | Quenco Inc | X | | X | X | | |
| | Republic Engineered Products Inc | X | | X | X | | |
| | Robert Bosch Corporation | | | | X | | X |
| | Robin Industries Inc | X | | | X | | |
| | RSR Corporation | X | | | X | | |
| | Russell A Farrow Ltd | X | | | X | | |
| | Ryder Integrated Logistics | X | | | X | | |
| | SAA Detroit | X | | | X | | |
| | Sankei Giken Co Ltd | X | | | X | | |
| | SAS Centre | X | | | X | | |
| | Securitas Security | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Seiko-America Corporation | X | | | X | | |
| | Semco Precision Die Casting Inc | X | | | X | | |
| | Sepan Corp | | | X | | | |
| | Serigraph Inc | X | | | X | | |
| | Setech Inc | | X | | X | | |
| | Settergy | | | | X | | |
| | SGS Thomson | X | | | X | | |
| | Shanghai Ming Fang Autoparts Co Ltd | X | | | X | | |
| | Siemens AG | | | X | | | X |
| | Siemens Automotive Ltd | | | X | | | X |
| | Sivra Relocation | X | | | X | | |
| | Societe Industrielle de Sancehoz SA | | | X | X | | |
| | Solectron Corp | X | | | X | | |
| | Sony Ericsson Mobile | | | | X | | |
| | Spartech Corp | | | X | X | | |
| | SPX Corp | | | X | X | | |
| | Stmicroelectronics Holding NV | X | | | X | | |
| | Stotta Pharmazeutenschnik GmbH & Co | X | | | X | | |
| | Strattec Security Corp | | X | | X | | |
| | Synchron-Effekt Dayt Es Keszulekalttes | X | | | X | | |
| | Taigene Electric Machinery Co Ltd | | | | X | | |
| | Tata America Hotel Corp | | | | X | | |
| | Tavas Industries Inc | | | | X | | |
| | Tech Central | | | | X | | |
| | Teklas Kaucuk Sanayi Ve Ticaret AS | X | | | X | | |
| | Teknia Manufacturing Group SL | X | | | X | | |
| | Texas Instruments Inc | | | X | X | | |
| | Textron Inc | | | X | X | | |
| | Thesytran (Fonderie) | X | | | X | | |
| | Thyssenkrupp AG | | | X | X | | |
| | The Timken Co, Inc | | | X | X | | |
| | Tokico Ltd | | X | | X | | |
| | Tomkins PLC | X | | | X | | |
| | Torrington Co | X | | | X | | |
| | Total SA | | | X | X | | |
| | Toyot Clutch Co Inc | X | | | X | | |
| | Toyota Motor Corp | | | X | X | | |
| | Trelleborg AB | | X | | X | | |
| | Titanm Industries Corp | X | | | X | | |
| | TRW Automotive | | | X | X | | |
| | TRW Automotive Holdings Corp | | | X | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), U.S. Connections Check, Nov-05 | | | Delphi Automotive Systems (Holding), Inc., Canada Connection Check, Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | TRW Automotive Holdings Corp | | | X | X | | |
| | TT Electronics PLC | X | | | X | | |
| | Tyco Electronics Corp | | | X | X | | |
| | Tyco International Ltd | | | X | X | | |
| | UBS AG | | | X | X | | |
| | Unicore SA | X | | | X | | |
| | Unigraphics Solutions Inc | X | | | X | | |
| | US Steel Corporation | X | | | X | | |
| | UVA Machine Company | X | | | X | | |
| | Valeo Climatic Control USA | X | | | X | | |
| | Valon SA | X | | | X | | |
| | Valley Trucking Co Inc | X | | | X | | |
| | Vianco | | X | | X | | |
| | Vanguard Distributors Inc | | | | X | | |
| | Viasystems Canada Inc | X | | | X | | |
| | Viasystems Group Inc | X | | | X | | |
| | Victory Packaging Inc | | | | X | | |
| | Venison Automotive Systems | | | X | X | | |
| | Warepump Group Corp | X | | | X | | |
| | Wagepua Foundry Inc | X | | | X | | |
| | WHX Corp | X | | | X | | |
| | Wiederholt GmbH Vincenz | X | | | X | | |
| | Worthington Industries Inc | | | X | X | | |
| | Wren Industries Inc | X | | | X | | |
| | Yazaki Corp | | X | | X | | |
| | Zeppelin-Stiftung | X | | | X | | |
| | AKV | X | | | X | | |
| | Analog Devices GmbH | | | X | X | | X |
| | Asahi Glass Co | | | X | X | | |
| | B&A Enterprises | X | | | X | | |
| | Bitron Industrie SpA | X | | | X | | |
| | British Vita PLC | X | | | X | | |
| | BTV Holding GmbH | X | | | X | | |
| | Bex Electronik Gmbh | X | | | X | | |
| | Dr Johannes Heidenhain-Stiftung Gmbh | X | | | X | | |
| | Engineered Plastic Components Inc | X | | | X | | |
| | Epcos AG | | X | | X | | |
| | Fujitsu Ltd | X | | | X | | |
| | GM Daewoo Auto & Technology Co | X | | | X | | |
| | Hanwha Corp Pean Plt | X | | | X | | |
| | Intron Corp | X | | | X | | |
| | International Rectifier Corp | X | | | X | | |
| | Key Safety Systems Inc | X | | | X | | |
| | Littelfuse | X | | | X | | |
| | Metran, Inc | X | | | X | | |
| | Matsushita Electric Industrial Co | | | X | X | | |
| | Microplast | | | | X | | |
| | Mitsubishi Electric | | | X | X | | |
| | Ningbo Huaxiang Electronic Co Ltd | X | | | X | | |
| | Nuemak | X | | | X | | |
| | Ontario Holding International Bv | X | | | X | | |
| | Prestac | | | X | X | | |
| | Quenco Inc | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Robin Co Ltd | X | | | X | | |
| | Samtech | X | | | X | | |
| | Schulte & Co Gmbh | X | | | X | | |
| | Selectron Corp | X | | | X | | |
| | Stelco Gmbh Electronic Components | X | | | X | | |
| | Sumitomo Electric Industries Ltd | X | | X | X | | |
| | Taiho Corporation Of Europe KA | X | | X | X | | |
| | Technifoil Inc | X | | | X | | |
| | The Soyach Group | X | | | X | | |
| | Toyota Tsusho Corp | X | | | X | | X |
| | TPG Advisors Inc | X | | | X | | |
| | Vishay Intertechnology | X | | | X | | |
| | Wieland Werke AG | X | | | X | | |
| | Wilh Werthalm | X | | | X | | |
| | | | | | | | |
| | Letter of Credit Issuers and Beneficiaries | | | | | | |
| | | | | | | | |
| | ISSUERS | | | | | | |
| | JP Morgan Chase | X | | | X | | X |
| | BENEFICIARIES | | | | | | |
| | Beneficiaries under Standby Letters of Outstanding | | | | | | |
| | CNA | X | | | X | | |
| | Federal Environmental Protection Agency | X | | | X | | |
| | Finco/southern Industrial del Norte, S.A. de C.V. | X | | | X | | |
| | GMACCM Asset Management de Mexico | X | | | X | | |
| | | | | | | | |
| | Hub Group | | | X | X | | |
| | Michigan Department of Environmental Quality | X | | | X | | |
| | Multiple Beneficiaries – State and Federal EPA | X | | | X | | |
| | New Jersey Environmental Protection Agency | X | | | X | | |
| | Ohio Environmental Protection Agency | X | | | X | | |
| | Orange County Health Care Agency | X | | | X | | |
| | | | | | | | |
| | Pacific Employers Insurance Co. | X | | | X | | |
| | ProLogis-Juarez (2) Investment, LLC | X | | | X | | |
| | | | | | | | |
| | Reliance Insurance Company | | | X | X | | |
| | RLI Surety | X | | | X | | |
| | | | | | | | |
| | Safeco Insurance | X | | | X | | |
| | State of Alabama Dept of Industrial Relations | | X | | X | | |
| | State of Georgia, Workers' Compensation Board | X | | | X | | |
| | State of Kansas Workers' Compensation Board | X | | | X | | |
| | State of New York, Workers' Compensation Board | X | | | X | | |
| | Toronto Dominion Bank | | | X | X | | |
| | State Agencies | | | | | | |
| | Alabama Department of Environmental Management (ADEM) | X | | | X | | |
| | ADEM – Water Division – Compliance Unit of Ground Water Branch [Alabama] | X | | | X | | |
| | Arizona Department of Environmental Quality (ADEQ) | X | | | X | | |
| | ADEQ Tanks Program Division – Inspection and Compliance Unit [Arizona] | X | | | X | | |
| | California Environmental Protection Agency (Cal EPA) | X | | | X | | |
| | Air Resources Board (ARB) [California] | X | | | X | | |
| | State Water Resources Control Board (SWRCB) [California] | X | | | X | | |
| | State Regional Water Quality Control Boards [California] | X | | | X | | |
| | State Department of Health Services, Office of Drinking Water [California] | X | | | X | | |
| | Department of Toxic Substances Control [California] | X | | | X | | |
| | Certified Unified Program Agencies (CUPA) [California] | X | | | X | | |
| | Integrated Waste Management Board (CIWMB) [California] | X | | | X | | |
| | Office of Environmental Health Hazard Assessment (OEHHA – Prop 65) [California] | X | | | X | | |
| | Colorado Department of Public Health and Environment (DPHE) | X | | | X | | |
| | Georgia Department of Natural Resources – Environmental Protection Division | X | | | X | | |
| | Georgia DNR – Environmental Protection Division – Hazardous Waste Management | X | | | X | | |

Work Sheet - In Court

Delphi Automotive Systems (Holding), Inc.

| Category | Name | Delphi Automotive Systems (Holding), Inc. — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connections Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Illinois Environmental Protection Agency (Illinois EPA) | X | | | X | | |
| | Illinois EPA - Bureau of Land - Leaking Underground/Storage Tank Section | X | | | X | | |
| | Indiana Department of Environmental Management (IDEM) | X | | | X | | |
| | IDEM - Office of Land Quality [Indiana] | X | | | X | | |
| | Kansas Department of Health & Environment | X | | | X | | |
| | KDHE - Bureau of Environmental Remediation - Storage Tank Section [Kansas] | X | | | X | | |
| | Kentucky Environmental and Public Protection Cabinet | X | | | X | | |
| | Kentucky Environmental and Public Protection Cabinet - Division of Waste | X | | | X | | |
| | Michigan Department of Environmental Quality | X | | | X | | |
| | Michigan DEQ - Waste And Hazardous Materials - storage tanks | X | | | X | | |
| | Minnesota Pollution Control Agency | X | | | X | | |
| | Mississippi Department of Environmental Quality | X | | | X | | |
| | Missouri Department of Natural Resources | X | | | X | | |
| | Missouri Department of Natural Resources - Air and Land Protection Division | X | | | X | | |
| | New Jersey Department of Environmental Protection | X | | | X | | |
| | New York State Division of Environmental Conservation (NYSDEC) | X | | | X | | |
| | NYSDEC - Division of Environmental Remediation - Petroleum and Chemical Bulk | X | | | X | | |
| | Ohio Environmental Protection Agency | X | | | X | | |
| | Regional Air Pollution Control Agency (RAPCA) [Ohio] | X | | | X | | |
| | Ohio Department of Commerce - State Fire Marshal Division - Bureau of Storage Tank | X | | | X | | |
| | Oklahoma Department of Environmental Quality | X | | | X | | |
| | Oklahoma Corporate Commission: The Oklahoma DEQ | X | | | X | | |
| | Pennsylvania Department of Environmental Protection | X | | | X | | |
| | Pennsylvania Department of Environmental Protection - Bureau of Waste Management | X | | | X | | |
| | South Carolina Department of Health and Environmental Control | X | | | X | | |
| | South Carolina Department of Health and Environmental Control - Office of | X | | | X | | |
| | Tennessee Department of Environmental & Conservation | X | | | X | | |
| | Texas Commission on Environmental Quality | X | | | X | | |
| | Wisconsin Department of Natural Resources | X | | | X | | |
| | Federal Agencies | | | | | | |
| | U.S. Environmental Protection Agency | X | | | X | | |
| | U.S. Department of Transportation | X | | | X | | |
| | Internal Revenue Service | X | | | X | | |
| | Pension Benefit Guaranty Corporation | | X | | X | | |
| | Miscellaneous Agencies | | | | | | |
| | OSHA | X | | | X | | |
| | UNIONS REPRESENTING COMPANY EMPLOYEES | | | | | | |
| | AFL-CIO Local 755 | X | | | X | | |
| | AW Local 286 | X | | | X | | |
| | IUE - Electronic and Space Technicians | X | | | X | | |
| | Local 1155 | X | | | X | | |
| | Electronic and Space Technicians Local 1553 | X | | | X | | |
| | IAM & AW - International Association of Machinists and Aerospace Workers | | X | | X | | |
| | IAM Local 78 | X | | | X | | |
| | IBEW - International Brotherhood of Electrical Workers | X | | | X | | |
| | IBEW Local 663 | X | | | X | | |
| | International Association of Machinists, AFL-CIO Tool and Die Makers Lodge 78 | X | | | X | | |
| | International Brotherhood of Electrical Workers, AFL-CIO Local 663 | X | | | X | | |
| | International Union of Operating Engineers Local 101-S | X | | | X | | |
| | International Union of Operating Engineers Local 18-S | X | | | X | | |
| | International Union of Operating Engineers, Local No. 101 | X | | | X | | |
| | International Union, United Automobile, Aerospace and Agricultural Implement Workers | | X | | X | | |
| | IUE Local 1111 | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | IBE Local 416 | X | | | X | | |
| | IBE Local 608 | X | | | X | | |
| | IBE Local 709 | X | | | X | | |
| | IBE Local 711 | X | | | X | | |
| | IBE Local 717 | X | | | X | | |
| | IBE Local 718 | X | | | X | | |
| | IBE Local 755 | X | | | X | | |
| | IBE Local 801 | X | | | X | | |
| | IBE, AFL-CIO Local 698 | X | | | X | | |
| | IBE, AFL-CIO Local 711 | X | | | X | | |
| | IBE, AFL-CIO Local 718IUE | X | | | X | | |
| | IUE-CWA - International Union of Electronic, Electrical, Salaried, Machine & Furniture | X | | | X | | |
| | IUE-CWA Local 1111 | X | | | X | | |
| | IUE-CWA Local 416 | X | | | X | | |
| | IUE-CWA Local 709 | X | | | X | | |
| | IUE-CWA, AFL-CIO Local 801 | X | | | X | | |
| | IUE-CWA, AFL-CIO LLC Local 717 | X | | | X | | |
| | IUE-CWA, The Industrial Division of the Communications Workers of America, AFL- | X | | | X | | |
| | IUE-CWA, the Industrial Division of the Communications Workers of America, AFL- | X | | | X | | |
| | IUOE - International Union of Operating Engineers | X | | | X | | |
| | IUOE Local 832S | X | | | X | | |
| | UAW - United Automobile, Aerospace and Agricultural Implement Workers of America | X | | | X | | |
| | UAW Amalgamated Local 292 | X | | | X | | |
| | UAW Amalgamated Local 686 | X | | | X | | |
| | UAW Local 102 | X | | | X | | |
| | UAW Local 1097 | X | | | X | | |
| | UAW Local 167 | X | | | X | | |
| | UAW Local 1866 | X | | | X | | |
| | UAW Local 2031 | X | | | X | | |
| | UAW Local 2083 | X | | | X | | |
| | UAW Local 2151 | X | | | X | | |
| | UAW Local 2157 | X | | | X | | |
| | UAW Local 2188 | X | | | X | | |
| | UAW Local 2195 | X | | | X | | |
| | UAW Local 286 | X | | | X | | |
| | UAW Local 292 | X | | | X | | |
| | UAW Local 438 | X | | | X | | |
| | UAW Local 467 | X | | | X | | |
| | UAW Local 651 | X | | | X | | |
| | UAW Local 662 | X | | | X | | |
| | UAW Local 686 | X | | | X | | |
| | UAW Local 686 Unit 19 | X | | | X | | |
| | UAW Local 696 | X | | | X | | |
| | UAW Local 699 | X | | | X | | |
| | UAW Local 913 | X | | | X | | |
| | UAW Local 969 | X | | | X | | |
| | UAW International Union, United Automobile, Aerospace and Agricultural Implement | X | | | X | | |
| | United Steelworkers of America | X | | | X | | |
| | United Steelworkers of America AFL-CIO CLC, Local Union 87 | X | | | X | | |
| | USW Local 87 | X | | | X | | |
| | USW Local 87 | X | | | X | | |
| | USWA - United Steelworkers of America AFL-CIO CLC | X | | | X | | |
| | Professionals (Attorneys, Accountants, Investment Bankers, Consultants for the past three years) | | | | | | |
| | Persons | | | | | | |
| | SEIU | | | X | | | |
| | A.S.K. Services, Inc. (Canton, MI) | X | | | X | | |
| | Acteon Corporation | X | | | X | | |
| | Adam Opel | X | | | X | | |

Work Sheet - In Court

| Category | Name | U.S. Connections Check Nov-05 No Connection | Prior Connection | Current Connection | Canada Connection Check Nov-05 No Connection | Prior Connection | Current Connection |
|---|---|---|---|---|---|---|---|
| | Adams & Adams | X | | | X | | |
| | ADR Options, Inc. | X | | | X | | |
| | Abrams & Soper Co PNC | X | | | X | | |
| | Air Academy Associates | X | | | X | | |
| | Air Academy Press & Assoc | X | | | X | | |
| | Airway Research, Inc. | X | | | X | | |
| | Assoc United States Inc | X | | | X | | |
| | AIT Group | X | | | X | | |
| | | | | | | | |
| | Akin, Gump Strauss, Hauer & Feld, L.L.P. | X | | X | X | | |
| | Alix Partners, L.L.C. | X | | | X | | |
| | Allen J Orbhu Law Office of Allen J. Oh | X | | | X | | |
| | Alliance of Automobile | X | | | X | | |
| | Alvarez, Norton & Guierrez, L.L.P. (Laredo, TX) | X | | | X | | |
| | American Appraisal Associates | X | | | X | | |
| | American Red Cross | | X | | X | | |
| | American Supplier Institute | X | | | X | | |
| | AmeriClerk Inc.(the Contract Counsel) (Royal Oak, MI) (Contract Employees) | X | | | X | | |
| | Anderson Economic Group (East Lansing, MI) | X | | | X | | |
| | Anne Murphy Patent Services (Arlington, VA) | X | | | X | | |
| | Antonelli Terry Stout & Kraus, LLP | X | | | X | | |
| | | | | | | | |
| | Aon | | | X | | | X |
| | Arnett, Fox, Kintner, Plotkin & Kahn (Washington, DC) | | X | | X | | |
| | Argus | | X | | X | | |
| | Arjune Ingrneric | X | | | X | | |
| | | | | | | | |
| | Ariba | | | | | | |
| | ASI (American Supplier Institute) | X | | | X | | |
| | ASI Consulting Group LLC | X | | | X | | |
| | ASI LLC | X | | | X | | |
| | ASI Shimm (ICM) | X | | | X | | |
| | Asset Management Resources, Inc. | X | | | X | | |
| | Asset Mgt Resources Inc. | X | | | X | | |
| | Association of Business Advocating Tariff Equity (A.B.A.T.E.) | | X | | X | | |
| | AT Kearney | X | | | | | |
| | Audix | X | | | X | | |
| | AXA NORTH AMERICA/CAIN | X | | | X | | |
| | Ayco Company LP | X | | | X | | |
| | Baker & Daniels Indianapolis, IN) | X | | X | X | | |
| | Baker & McKenzie Abogados, S.C (MEXICO) | X | | | | | |
| | Baker & McKenzie LLP Chicago, Illinois) | X | | X | X | | |
| | | | | | | | |
| | Baker & McKenzie LLP (UK) | X | | | X | | |
| | Baker & McKenzie LLP (Washington, D.C.) | X | | | X | | |
| | Baker & McKenzie LLP (Washington, DC) | X | | | X | | |
| | | | | | | | |
| | Baker Botts LLP (Washington, DC) | | X | | X | | |
| | Balch & Bingham LLP - AL (Birmingham, AL) | X | | X | X | | |
| | Barnes & Wolscff, LTD (Chicago, IL) | X | | | | | |
| | Barnes & Thornburg (Indianapolis, IN) | X | | | X | | |
| | Barnett Associates, Inc. (Garden City, NY) | X | | | X | | |
| | | | | | | | |
| | BBK, Ltd | | | | | | |
| | | | | | | | |
| | BBK, Ltd. (Southfield, MI) | X | | | X | | |
| | BDO Seidman, LLP | X | | | X | | |
| | Bede & Associates | X | | | X | | |
| | Bell Anderson & Sanders LLC (Laguna Beach, CA) | X | | | X | | |
| | Bellinger Donald | | | | X | | |
| | Benson Engineering | X | | | X | | |
| | Besone, Brownlee, Welter, Metz & Marz, P.A. | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Bexco Solutions Strategies | X | | | X | | |
| | Bharat S. Rastand Co. | X | | | X | | |
| | Bhuttaji Approval (Advocacy) | X | | | X | | |
| | Bickerstaff, Heath, Smiley, Pollan, Kever & McDaniel, L.L.P (Austin, TX) | X | | | X | | |
| | Bion McGlynn P.C. (Troy, MI) | X | | | X | | |
| | BNP Paribas | X | | | | X | |
| | Boehl Stopher & Graves | X | | | X | | |
| | Booz-Allen Hamilton | | | X | X | | |
| | Bowman and Brooke LLP - Troy (Troy, MI) | X | | | X | | |
| | Brannen Raberery & Associates, Inc (El Paso, TX) | X | | | X | | |
| | Brian Kendrick Fish/honor | X | | | X | | |
| | Brian Pavlic PSSO Cobb son | X | | | X | | |
| | British Standards Institute (BSI) | X | | | X | | |
| | Britton & Associates | X | | | X | | |
| | Brooks Bros | X | | | X | | |
| | Brubaker & Associates, Inc (St. Louis, MO) | X | | | X | | |
| | Bruttini Grantham Grower & Howes PLLC | | X | | X | | |
| | BSI | | X | | X | | |
| | BSI America, Inc. | X | | | X | | |
| | BSI Americas | X | | | X | | |
| | BSI Management Systems | X | | | X | | |
| | Bugboy & Conkle | X | | | X | | |
| | Burkett Jones | X | | | X | | |
| | Burnside & Neuman Medical | X | | | X | | |
| | Busson-Manteller (Chicago, IL) | X | | | X | | |
| | Business Engine | X | | | X | | |
| | Butzel Long (Detroit, MI) | X | | | X | | |
| | C&S Patent and Law Office (Korea) | X | | | X | | |
| | Cabinet Michel Pougnet | X | | | X | | |
| | Cabinet Regimbeau | X | | | X | | |
| | Cadwalader Wickersham & Taft LLP (Washington, DC) | | X | | X | | |
| | Cambridge Consultants | X | | | X | | |
| | Cancel Osborn LP (Bloomfield, CT) | X | | | X | | |
| | CAPS Research | X | | | X | | |
| | Cardelli Hebert P.C | X | | | X | | |
| | Cardinal Law Group | X | | | X | | |
| | Carol F. Barry | X | | | X | | |
| | Carreira Muller | X | | | X | | |
| | Casalonga Josse D.A. (France) | X | | | X | | |
| | Cattel, Tyon & Buduence, PLLC (Bloomfield Hills, MI) | X | | | X | | |
| | CbRL Engineers | X | | | X | | |
| | Champion Roche Accounting, Firm | | | | X | | |
| | Charles K. Vicentra (Bloomfield Hills, MI) | X | | | X | | |
| | Chester Willson & Sadro LLP (Columbus, OH) | X | | | X | | |
| | Chivaz Abogados, S.C. (Mexico) | | | X | X | | |
| | China Patent Agent (H.K.) Ltd. | X | | | X | | |
| | Choicepoint Services | | | X | X | | |
| | Christie, Parker & Hale, LLP - Pasadena, CA | X | | | X | | |
| | Chuck Oedick | X | | | X | | |
| | Ciara Systems, Inc. (Huntington Woods, MI) | X | | | X | | |
| | City Vista Partners | | | | X | | |
| | Clark Consulting (Washington, D.C.) | | | X | X | | |
| | Clark Hill P.L.C. (Detroit, MI) | X | | | X | | |
| | Clark Patterson Associates | X | | | X | | |
| | Clark LInda, MD | | | | X | | |
| | Clark, Thomas & Winters, PC | X | | | X | | |
| | CM2 Inc., dba The Modleb Group | X | | | X | | |
| | Cobol Taylor & Jones | X | | | X | | |
| | Cochran Public Relations | X | | | X | | |
| | Common Point Graphics | | X | | X | | |
| | Communication Concepts | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding) U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Conceptual Systems | X | | | X | | |
| | Consortium Industriel Commercial & Maritime (Morocco) | X | | | X | | |
| | Consultores Asociados | X | | | X | | |
| | Conway Mackenzie & Dunleavy, Inc. (Birmingham, MI) | X | | | X | | |
| | Coolidge Wall Womsley & Lombard Co. LPA (Dayton, OH) | X | | | X | | |
| | Corporate Services | X | | | X | | |
| | CoreBrand Corporate Branding LLC (Stamford, CT) | X | | | X | | |
| | Corporate/ Executive Board | | | X | X | | |
| | Corporate Branding LLC | | | | X | | |
| | Couch, Blackie Li & Dockery, NY) | X | | | X | | |
| | Covington & Burling (Washington, DC) | | | X | X | | |
| | Cramer & Laws (Germany) | X | | | X | | |
| | Crane Consulting Services | X | | | X | | |
| | Creative Alliance | X | | | X | | |
| | Crew & Buchanan (Dayton, OH) | X | | | X | | |
| | Cross Buchanan & Crane | X | | | X | | |
| | Crowell & Moring LLP | | X | | X | | |
| | Crowley Stringer & Fenske LLP | X | | | X | | |
| | CSFB | X | | X | X | | |
| | cura worldwide | X | | | X | | |
| | CTA Consulting | X | | | X | | |
| | CTO Auditors | | | | X | | |
| | CT Safety Associates, LLC (Cary, NC) | X | X | | X | | |
| | Customs Network Ltd - (United Kingdom) | X | | | X | | |
| | Cyril & Crawley LLP | X | | | X | | |
| | D J Lee & Associates | X | | | X | | |
| | Dannenhauer Arch | X | | | X | | |
| | Davis L. Weston dba ExpertAlert | | | | X | | |
| | DASCO | | | X | X | | |
| | Dave Trella/Menlo Logistics | X | | | X | | |
| | Dave Trella/Menlo Logistics | X | | | X | | |
| | David Cunningham | X | | | X | | |
| | Dayton Water Systems | X | | | X | | |
| | Dechert LLP (New York, NY) | X | | X | X | | |
| | DecisionDec Corporation | | | | X | | |
| | Deloitte & Touche | X | | X | X | X | |
| | Deloitte Touche Tohmatsu | X | | | X | | |
| | Deloitte Touche Tohmatsu | X | | | X | | |
| | Delphi Corporate India | X | | | X | | |
| | Delphi Korea Phase 0 Tech Center | X | | | X | | |
| | Delta College | X | | | X | | |
| | Deneworth Dugan & Parfitt | X | | | X | | |
| | DePeuning & DePeuning | X | | | X | | |
| | Det Norske Veritas | X | | X | X | | |
| | Detroit Translation Bureau | X | | | X | | |
| | DeWitt Ross & Stevens | X | | | X | | |
| | DeVoe, Black & Vincent PLC (Detroit, MI) | X | | | X | | |
| | Diamond Associates | X | | | X | | |
| | The Dickerman Group, Ltd | X | | | X | | |
| | Dickinson Wright PLLC - (Detroit, MI) | X | | X | X | | |
| | Dietker & Associates, PC (Troy, MI) | X | | | X | | |
| | Dinsmore & Shohl LLP (Cincinnati, OH) | X | X | | X | | |

Work Sheet - In Court

| | | Delphi Automotive Systems (Holding), U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| Category | Name | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Delta Carlos O MD | X | | | X | | |
| | DJ Lee & Associates | X | | | X | | |
| | Donald B. Scott | X | | | X | | |
| | Donald Geber | X | | | X | | |
| | Douglas Fekete | X | | | X | | |
| | Drew & Napier (Singapore) | X | | | X | | |
| | Drew, Eckl & Farnham, LLP | X | | | X | | |
| | Driggers, Schultz & Herbst P.C. (Troy, MI) | X | | | X | | |
| | Drinker Biddle & Reath - PA (Philadelphia, PA) | | | X | | | |
| | Duce Michie Jamming Dutong & Metzger, LLP | | | | | | |
| | Dykema Gossett P.L.L.C. – DET (Detroit, MI) | | X | | | | |
| | Earnol Value | X | | | X | | |
| | Ernst & Young AG | | X | X | | | X |
| | Edsor Data Services | | | | | | |
| | | | | | | | |
| | EDS | X | | | | | |
| | ELCON (Washington, DC) | | X | | | | X |
| | Eldridge Cooper Steichen & Leach, PLLC (Tulsa, OK) | X | | | | | |
| | Electricard Inc | X | | | X | | |
| | Energy Engineering & Consulting Sc | X | | | X | | |
| | ENSR Corporation | | | X | | | X |
| | Ep-Tech | | | | | | |
| | Entech Utility Service Bureau Inc | X | | | X | | |
| | EQ Heritage | X | | | X | | |
| | Equon Corporation | X | | | X | | |
| | Ernst & Young | | | X | | | X |
| | Ernst & Young Consulting | | | X | | | X |
| | Ernst & Young Corporate | | | X | | | X |
| | Ernst & Young Tax Consultants | X | | | | | |
| | ESIS – Chicago | X | | | X | | |
| | Evans Prohaska & Rhodes, P.C | X | | | X | | |
| | Excel Connectors, Mexico | X | | | X | | |
| | Excise Consultant Associates | X | | | X | | |
| | Excise Department | X | | | X | | |
| | Exhibit Enterprises, Inc. (Rochester Hills, MI) | X | | | X | | |
| | Exilburn Consultoria em RH | X | | | X | | |
| | EY Law Luther Minzld | X | | | X | | |
| | Eyster, Key, Tubb, Weaver & Roth | X | | | X | | |
| | Falkowski PLLC (Novi, MI) | X | | | | | |
| | Fay Sharpe Fagan Minnich & McKee, LLP | X | | | X | | |
| | FedEx Trade Networks Transport and Brokerage, Inc. (Romulus, MI) | X | | | X | | |
| | Fidelity Employer Services Company, LLC | X | | | X | | |
| | Fidelity Institutional Retirement Services Company | X | | | X | | |
| | Fildes & Outland P.C. | X | | | X | | |
| | Finger Lakes Occupational | X | | | X | | |
| | Fish & Neave (New York, NY) | | X | | | | |
| | Fischman Harnd Japan, Inc. (Tokyo, Japan) | | X | | | | |
| | Focus Business Services (Trenton, MI) | | | X | | | |
| | Foley & Lardner WI | X | | | | | |
| | Ford Howard & Cornell, P.C. (Gadsden, AL) | X | | | X | | |
| | Foshee & Turner Inc, f/k/a Legalink Southeast Corp (Birmingham, AL) | X | | | X | | |
| | Foster, Swift, Collins & Smith, P.C. (Lansing, MI) | X | | | X | | |
| | Frank J. Nawalaniec | X | | | X | | |
| | | | | | | | |
| | Front Brown Todd LLC | | | | | | |
| | | | | | | | |
| | Fulbright & Jaworski LLP – NY | | X | | | | |
| | Funduclos Visnivlini | X | | | X | | |
| | Gable & Gotwals Law Firm (Tulsa, OK) | X | | | X | | |
| | Gartergates | X | | | X | | |
| | Gazzetta Fallent | X | | | X | | |
| | Generale Appraisal Company (Grand Rapids, MI) | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Gibson, Dunn & Crutcher CA | | X | | X | | |
| | Gold, Lowell & Napoli | X | | | X | | |
| | Gielowski & Steiner (Buffalo, NY) | X | | | X | | |
| | Global Policy Group (Washington, D.C.) | X | | | X | | |
| | Global Quality Institute | X | | | X | | |
| | Global Water Solutions | X | | | X | | |
| | Glover, John B | X | | | X | | |
| | Goldberg Segalla LLP | X | | | X | | |
| | Gooyaart Law Firm, P.C. (Bloomfield Hills, MI) | X | | | X | | |
| | Gordon and Gordon, Lawyers (Claremore, OK) | X | | | X | | |
| | Gowling Lafleur Henderson LLP | X | | | | X | |
| | Grace Gresson Cosgrove & Schirm P.C. (Los Angeles, CA) | X | | | X | | |
| | Graham, Curtin & Sheridan, P.A. (Morristown, NJ) | X | | | X | | |
| | Grand Lakes Safety | X | | | X | | |
| | Greenbaum, Rowe, Smith, Ravin, Davis & Himmel LLP (Iselin, NJ) | X | | | X | | |
| | Greenwood Group | X | | | X | | |
| | Grupo Fininversa Politica (Mexico DF) | X | | | X | | |
| | Gwinn & Roby (Dallas, TX) | X | | | X | | |
| | Hack, Piro, O'Day, Merklinger Wallace & McKenna, P.A. | X | | | X | | |
| | Haley & Aldrich Inc | X | | | X | | |
| | Haley & Aldrich of Michigan, Inc. (Plymouth, MI) | X | | | X | | |
| | Hamburger & Weiss | X | | | X | | |
| | Hana Accounting INC. | X | | | X | | |
| | Hao Do | X | | | X | | |
| | Hardy Lewis & Page P.C. | X | | | X | | |
| | Harris Beach LLP (Pittsford, NY) | X | | | X | | |
| | Hartey, Sexton & Emery LLP | X | | | X | | |
| | Hartman & Hartman P.C. | X | | | X | | |
| | Hayes, Dunn H. Cather | | | X | X | | |
| | Heller Ehrman White & McAuliffe - NY (San Francisco, CA) | | X | | X | | |
| | Helmet Counseling | X | | | X | | |
| | Herbert Herman | X | | | X | | |
| | Heritage Interactive | X | | | X | | |
| | Hewitt | X | | | X | | |
| | Hewitt & Associates | | X | | X | | |
| | Hickok Inc | | | | | | X |
| | Hill & Knowlton (Sydney, Australia) | | | | | | |
| | Hill & Knowlton, Mexico (Mexico, DF) | X | | | X | | |
| | Hill and Knowlton Brazil (Sao Paulo, Brazil) | X | | | X | | |
| | Hill Rivkins & Hayden LLP | X | | | X | | |
| | Hogan & Hartson, LLP (Washington, DC) | | X | | X | | |
| | Holloway, Dobson, Bachman | | | | | | |
| | Honigman Miller Schwartz and Cohn, LLP (Lansing, MI) | | X | | X | | |
| | Honigman, Miller, Schwartz & Cohn LLP (Detroit, MI) | | | | X | | |
| | Horwood, Marcus & Berk Chartered (Chicago, IL) | | X | | X | | |
| | Howard & Howard Attorneys, P.C. (Bloomfield Hills, MI) | X | | | X | | |
| | Howard Vernola Associates, Inc. | X | | | X | | |
| | Hudson, Potts & Bernstein | X | | | X | | |
| | Horton & Williams LLP | | | X | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Huron Consulting Services LLC (Chicago, IL) | | | | X | | |
| | I. Dovald Person, Shumaker, Loop & Kendrick, LLP (Columbus, OH) | | X | | X | | |
| | I3 Communications LLC (New York, NY) | X | | | X | | |
| | IBM | X | | | X | | |
| | IESI TX Corporation | X | | | X | | |
| | IM & C International | X | | | X | | |
| | Imagine Company | X | | | X | | |
| | IMAL | X | | | X | | |
| | Improvement Partnership | X | | | X | | |
| | INDIEC Indiana Industrial Energy Consumers, Inc. (Indianapolis, IN) | X | | | X | | |
| | Industrial Energy Users - Ohio (Columbus, OH) | X | | | X | | |
| | Information Specialists, Inc. | X | | | X | | |
| | Institute of Configuration | X | | | X | | |
| | Integrated Training Resources | X | | | X | | |
| | Interchange Europe (Chalfont-St-Peter, United Kingdom) | X | | | X | | |
| | Interim | X | | | X | | |
| | Interim Healthcare Inc | | | | X | | |
| | International Finacial Services Limited | | X | | X | | |
| | International Licensing Network (New York, NY) | X | | | X | | |
| | International Quality | X | | | X | | |
| | International SOS Assistance | X | | | | | X |
| | ISO Project - Lav Register | X | | | X | | |
| | ISO Project - Omnex | X | | | X | | |
| | Isuppli | | X | | X | | |
| | Ivins, Phillips & Barker Chartered (Washington, D.C.) | | X | | X | | |
| | J&J Attorneys at Law (Taiwan) | X | | | X | | |
| | J. Gordon Lewis d/b/a Gordon Lewis, PLLC (Bloomfield Hills, MI) | X | | | X | | |
| | J.M. Robertson Intellectual Property Services LLC | X | | | X | | |
| | Jack C. Summers dba J.C. Summers & Associates | X | | | X | | |
| | Jack Edward Tubbs dba Flint Patent Service | X | | | X | | |
| | Jack W. Hunt & Associates | X | | | X | | |
| | Jackson Walker LLP (San Antonio, TX) | X | | | X | | |
| | Jarckle Fleischmann & Mugel LLP | | X | | | | X |
| | Jaffe Raitt Heuer & Weiss P.C. (Southfield, MI) | X | | | X | | |
| | James Holahan, Esq (Rochester, NY) | X | | | X | | |
| | Jefferson Wells | X | | | X | | |
| | Jenner & Block | | X | | X | | |
| | JLJ Process Services, Inc | X | | | X | | |
| | John A. Artz P.C. (Southfield, MI) | X | | | X | | |
| | John Huntington Cruxier | X | | | X | | |
| | John J. Coogan | X | | | X | | |
| | John William Howell | X | | | X | | |
| | Johnston Barton Proctor & Powell LLP (Birmingham, AL) | X | | | X | | |
| | Jones Day - Cleveland, OH (Cleveland, OH) | | X | | X | | |
| | Jones Day - Washington (Washington, DC) | X | | | X | | |
| | Jones Lang LaSalle (Chicago, IL) | | X | | | | X |
| | Jones Lang LaSalle Americas Inc | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Joseph Sandor | X | | | X | | |
| | Judicial Arbiter Group, Inc. | X | | | X | | |
| | Julio Garcia (Mexico) | X | | | X | | |
| | Jung Moon Hwang law firm | X | | | X | | |
| | Jung Moon Hwang law firm | X | | | X | | |
| | K.K Anand | X | | | X | | |
| | Kairen | X | | | X | | |
| | Karen Feshbach | X | | | X | | |
| | Keating, Muething & Klekamp P.L.L. (Cincinnati, OH) | | X | | X | | |
| | Keele and Associates | X | | | X | | |
| | Kenneth Mason | X | | | X | | |
| | Kevin P. Hayes (Los Angeles, CA) | X | | | X | | |
| | Kevin P. Weldon (Alexandria, VA) | X | | | X | | |
| | Khanna & Khanna | X | | | X | | |
| | Kim & Chang (Seoul, South Korea) | X | | | X | | |
| | Kirton & McConkie | X | | | X | | |
| | Klenner Group, Ltd., The | X | | | X | | |
| | Koll & Lynch | X | | | X | | |
| | KPMG | | X | | | X | |
| | KPMG (Melbourne, Australia) | X | | | X | | |
| | KPMG LLP | | X | | | X | |
| | Kreindl Luth Weiner & Hoffman LLP (New York, NY) | | X | | X | | |
| | Ku Ja Hyeong | X | | | X | | |
| | Kuffler & Associates | X | | | X | | |
| | Kurzman Karelsen Bonner & Renshaw | X | | | X | | |
| | L.C. Begin & Associates, P.LLC | X | | | X | | |
| | LaFollette Godfroy & Kahn (Madison, WI) | X | | | X | | |
| | Lamothe & Hamilton, APLC | | X | | X | | |
| | Landau & Starck Associates | X | | | X | | |
| | Latham & Wise, P.C. | X | | | X | | |
| | Lathrop & Gage (Kansas City, MO) | X | | | X | | |
| | Laura D. Koesters Consulting, Inc. | X | | | X | | |
| | Laura K Grauds, Trustee of the Bankruptcy Estate of Chemetco, Inc. (Belleville, IL) | | X | | X | | |
| | Lavaco O'Neil Ricci Colonne & DiSpio - PA | X | | | X | | |
| | Law Offices of Brian C Paula | X | | | X | | |
| | Lawrence M. Elkus PLC | X | | | X | | |
| | Lean Business Solutions | X | | | X | | |
| | Lee Hoybi Harrison | X | | | X | | |
| | Leger Robic Richard, L.L.P. | X | | | X | | |
| | Lehr Middlebrooks Price & Proctor | X | | | X | | |
| | Leitner, Williams, Dooley & Napolitan, PLLC | X | | | X | | |
| | Lenox, Socey, Wilgus, Formidoni, Brown, Giordano & Csey | X | | | X | | |
| | Leto & Stralbach | X | | | X | | |
| | Letson, Griffith, Woodall, Lavelle & Rosenberg | X | | | X | | |
| | Levasseur & Levasseur | X | | | X | | |
| | Lewis & Kappes, P.C. (Indianapolis, IN) | X | | | X | | |
| | Lexbell Global Services | X | | | X | | |
| | Linda Ballus dba Linda Ballus & Associates (Toledo, OH) | X | | | X | | |
| | Linda S. Prather | X | | | X | | |
| | Linnihan, Foy & White | X | | | X | | |
| | Link Testing Laboratories | X | | | X | | |
| | Linkfares | X | | | X | | |
| | Lippert, Humphreys, Campbell, Dunn & Humphreys, P.C. (Saginaw, MI) | X | | | X | | |

Work Sheet - In Court

| Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|
| | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| LKF Associates | X | | | X | | |
| Locke Reynolds LLP (Indianapolis, IN) | X | | | X | | |
| Locker & Lee | X | | | X | | |
| Lord Bissell & Brook | | X | | X | | |
| Lori A. Sisk | X | | | X | | |
| Louis A. Zaefenga dba Louis A. Zaefenga & Associates (Canfield, OH) | X | | | X | | |
| Lubecda Mary E. | X | | | X | | |
| Lugibihl Jay A MD | X | | | X | | |
| Marianne Mock & Bowman | X | | | X | | |
| Makris Management Consulting (Prescott, AZ) | X | | | X | | |
| Mantz Fronterwald & Partner (Germany) | X | | | X | | |
| Mann Frankfort Stein & Lipp Advisors, Inc. (Houston, TX) | | X | | X | | |
| Manual Industrial Property B.V. | X | | | X | | |
| Maria Luisa Fauzo Guccunbergo | X | | | X | | |
| (MEXICO) | X | | | X | | |
| Marilyn M. Jones & Associates, Ltd | X | | | X | | |
| Mark A. Navarre (Urbana, OH) | X | | | X | | |
| Mark J. Kushner | X | | | X | | |
| Marsh USA Inc. | | | X | X | | |
| Marshall, Gerstein & Boran | X | | | X | | |
| Martin Brown & Sullivan Ltd. (Chicago, IL) | | X | | X | | |
| Marylou J. Lavine | X | | | X | | |
| Mason Griffin & Pierson PC | X | | | X | | |
| Massaroth & Sartor Consulting | X | | | X | | |
| MathWorks, Inc. | X | | | X | | |
| Meluo, Soloman, Madoff & Gunn (Chicago, IL) | X | | | X | | |
| McAndrews Held & Malloy, Ltd (Chicago, IL) | X | | | X | | |
| McCann-Erickson (Birmingham, MI) | | X | | X | | |
| McCarter & English (Philadelphia, PA) | | | | X | | |
| McCarthy Tetrault LLP (Canada) | X | | | X | | |
| McCarthy, Lebit, Crystal & Liffman Co., L.P.A. (Cleveland, OH) | X | | | | | X |
| McDermott Will & Emery LLP (Boston, MA) | | X | | X | | |
| McGlynn & Luther | X | | | X | | |
| McKenna Long & Aldridge LLP - LA | X | | | X | | |
| McKenna Long & Aldridge LLP - DC (Washington, DC) | | | X | X | | |
| McNees Wallace & Nurick LLC (Harrisburg, PA) | X | | | X | | |
| McTiernan & Turner PFR | X | | | X | | |
| MD Consulting Teleductonics | X | | | X | | |
| Mediation Group, LLC | X | | | X | | |
| Meridian Resources Associates | | X | | X | | |
| Merrill Corp. | | | X | X | | |
| Meritinn Consulting Services | | | | X | | |
| Meta IPVCS Benchmarking | X | | | X | | |
| Michael D. Schloff, PLLC (Bloomfield Hills, MI) | X | | | X | | |
| Michael Page | X | | | X | | |
| Michael Shaffer | X | | | X | | |
| Michael Best & Friedrich LLP (Milwaukee, WI) | X | | | X | | |
| Michigan State University | | X | | X | | |
| Micropatent dba 1790.COM | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Miller Canfield Paddock & Stone, PLC - Detroit (Detroit, MI) | | X | | X | | |
| | Miller Consulting Services | X | | | X | | |
| | Milwaukee Metro | X | | | X | | |
| | Mintz, Levin, Cohn, Ferris, Glovsky & Popeo, PC (Boston, MA) | | X | | X | | |
| | Miracle Software | X | | | X | | |
| | MIT | X | | | X | | |
| | MIT International Motor Vehicle Prog. | X | | | X | | |
| | Mitchell M. Mausil II, PLLC | X | | | X | | |
| | Molitor International | X | | | X | | |
| | Montini, Leydesdo & Cia | X | | | X | | |
| | Moore Hansen & Sumner | X | | | X | | |
| | Morgan, Lewis & Bockius LLP - New York (New York, NY) | | | X | X | | |
| | Morris, Nichols, Arsht & Tunnell | | X | | X | | |
| | Mounce, Green, Myers, Safi & Galatzan (El Paso, TX) | X | | | X | | |
| | Multiple Intervenors (Albany, NY) | X | | | X | | |
| | Munn & Associates | X | | | X | | |
| | MWH | X | | | X | | |
| | Nacet & Associates (Morocco) | X | | | X | | |
| | Nan Fung CPA Firm | X | | | X | | |
| | Nanfang CPA Firm | X | | | X | | |
| | Navazar Law Firm, P.A. | X | | | X | | |
| | Nationwide Advertising Service | X | | | X | | |
| | Neal Gerber & Eisenberg, LLP (Chicago, IL) | X | | | X | | |
| | Nelson Mullins Riley & Scarborough L.L.P. | | X | | X | | |
| | Nicholas Iwrey | X | | | X | | |
| | Nicholas Positano | X | | | X | | |
| | Noack & Associates, LLC (Washington, D.C.) | X | | | X | | |
| | Noory-Stefofour | X | | | X | | |
| | North American Turning | X | | | X | | |
| | O.P. Bhatia | X | | | X | | |
| | O.P. Tyagi | X | | | X | | |
| | O'Brien & Richey LLP | X | | | X | | |
| | Officers & Bailn (Kalamazoo, MI) | X | | | X | | |
| | Oppie, Alberts & Susan, P.C. (Troy, MI) | | X | | X | | |
| | Ohio State Univ. | X | | | X | | |
| | Okabe | | X | | X | | |
| | Omniture (Orem, UT) | X | | | X | | |
| | Open Ratings | X | | | X | | |
| | ORC Worldwide | X | | | X | | |
| | Oregon INTL INC | X | | | X | | |
| | Pandrom, Inc. (Elk Grove Village, IL) | | | X | X | | |
| | Perm & Perm Relaxes Governamentais S/C (Sao Bernardo do Campo, Brasil) | X | | | X | | |
| | Parsons & Maxon Incorporated (Saginaw, MI) | X | | | X | | |
| | Pam V. Lerding | X | | | X | | |
| | Paul D. Regier, Esq. | X | | | X | | |
| | Paul Elliott | X | | | X | | |
| | Paul, Hastings, Janofsky & Walker LLP (GA) (Atlanta, GA) | | | X | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | PIXORD (Redford, MI) | X | | | X | | |
| | Praxent Cynthia | X | | | X | | |
| | Pederson, Kerssens, King, Wachsberg & Andrzejak, P.C. (Commerce Township, MI) | X | | | X | | |
| | Pelaez Alonso, S.C. (Mexico) | X | | | X | | |
| | Pellow Engineering Services, Inc. | X | | | X | | |
| | Penn State/Dr. Joseph Dakerty | | | | | | |
| | Pepper Hamilton LLP (Wilmington, DE) | | X | | X | | |
| | Prescott-Goldey Consulting | X | | | X | | |
| | Personnel Decision Inc. | X | | | X | | |
| | Phelps Dunbar LLP - New Orleans (New Orleans, LA) | | X | | X | | |
| | Phifer & White, P.C. | X | | | X | | |
| | Phillips Ormonde and Fitzpatrick | X | | | X | | |
| | Pillsbury Winthrop Shaw Pittman LLP (Houston, TX) | X | | | X | | |
| | Pinheiro Neto Advogados (Brazil) | X | | | X | | |
| | Plews Shadley Racher & Braun (Indianapolis, IN) | X | | | X | | |
| | Plunkett & Cooney, P.C. | X | | | X | | |
| | Porter, Wright, Morris & Arthur (Columbus, OH) | | X | | X | | |
| | Porterfield, Harper & Mills, P.A. (Birmingham, AL) | X | | | X | | |
| | Potter Anderson & Corroon LLP (Wilmington, DE) | | X | | X | | |
| | Preppipe Associate | X | | | X | | |
| | Price, Heneveld, Cooper, DeWitt & Litton (Grand Rapids, MI) | X | | | X | | |
| | PricewaterhouseCoopers (Canada) | | X | | X | | |
| | PricewaterhouseCoopers (China) | | X | | X | | |
| | PricewaterhouseCoopers (Mexico) | | X | | X | | |
| | PricewaterhouseCoopers Washington, DC) | | X | | X | | |
| | PriceWaterhouseCoopers LLP | | X | | X | | |
| | Prichard, Hawkins, Davis & Young, LLP (San Antonio, TX) | X | | | X | | |
| | Prism Business War Games Inc. | X | | | X | | |
| | Problem Solving Ad Hoc | X | | | X | | |
| | Productivity Improvement | X | | | X | | |
| | Productivity Systems | X | | | X | | |
| | PSS Consulting E&Y | X | | | X | | |
| | PT TUV International Indonesia | X | | | X | | |
| | PWC Salomon Tax Consultants | X | | | X | | |
| | QADI China Limited | X | | | X | | |
| | Quicon Audit Firm | X | | | X | | |
| | QS Services Tecnico | X | | | X | | |
| | Quali-A Abroad | X | | | X | | |
| | Quarles & Brady LLP | X | | | X | | |
| | Quattlebaum, Grooms, Tull & Burrow PLLC | X | | | X | | |
| | Quinn Emanuel Urquhart Oliver & Hedges LLP (Los Angeles, CA) | | | X | X | | |
| | R.C. Simpson, Inc. | X | | | X | | |
| | R.L. Kalra | X | | | X | | |
| | R.L. Kalra | X | | | X | | |
| | Reder, Fishman & Grauer PLLC (Bloomfield Hills, MI) | X | | | X | | |
| | Redix Group International, Inc. | X | | | X | | |
| | a/k/a Dinexa AU Customs Brokerage Services a/k/a Dinexo AU Intercontinental (Southfield, | X | | | X | | |
| | Reichle Banting Weiss, PLLC | X | | | X | | |
| | Ralph L. Hensler (New York, NY) | X | | | X | | |
| | Racy, Vador, McCristian & Jeans, P.C. | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connection Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Realtime Consultants | X | | | X | | |
| | Recognition Resource Inc | X | | | X | | |
| | Reising, Ethington, Barnes Kisselle, P.C. (Troy, MI) | X | | | X | | |
| | Reynolds Mark L MD | X | | | X | | |
| | Rhodes Hieronymus Jones Tucker & Gable P.L.L.C | X | | | X | | |
| | Rhodia, L. McGee Plaza PLLC (Canton, MI) | X | | | X | | |
| | Rickner James S | X | | | X | | |
| | Riehl Heather Y Mueller, S.C. | X | | | X | | |
| | Riverfront Medical Services, P.C. (Liverpool, NY) | X | | | X | | |
| | Robbins GDIA | X | | | X | | |
| | Robert Half | X | | | X | | |
| | Robert Hughes Associates, Inc. | X | | | X | | |
| | Robert W Morgan (Detroit MI) | X | | | X | | |
| | Robertson & Mullins, LLC (Greenville, SC) | X | | | X | | |
| | Rochester Precision | X | | | X | | |
| | Rodriguez, Colvin & Chaney, L.L.P (Brownsville, TX) | X | | | X | | |
| | Rogstir & Associates | X | | | X | | |
| | Roger, Barbich & Abel | X | | | X | | |
| | Russell & Tanous Limited (Canada) | X | | | X | | |
| | Rutledge Tonya R | X | | | X | | |
| | S.P. Nagrath & Co. | X | | | X | | |
| | Saarikoski Enterprises | X | | | X | | |
| | Salomon-Smith Barney | X | | | X | | |
| | Sandler & Travis Trade Advisory Services, Inc (Farmington Hills, MI) | X | | | | X | |
| | Sapient | | | | | | |
| | Sarikalis Enterprises | X | | | X | | |
| | Saul J Tuerstein, M.D. (Beverly Hills, CA) | X | | | X | | |
| | Savely Innovations LTD | X | | | X | | |
| | Scheuer Mack & Brentlinger LLC | X | | | X | | |
| | Scheuble, Gass & Assoc, Co., L.P.A. | X | | | X | | |
| | Schreck Brignone (Las Vegas, NV) | X | | | X | | |
| | Scott T. Wakeman | X | | | X | | |
| | Secrest, Wardle, Lynch, Hampton, Turra and Morley P.C. - MI | X | | | X | | |
| | Sedgwick Claims Management Services, Inc. | X | | | X | | |
| | Seox Technologies | X | | | X | | |
| | SGS Control CO MBH | X | | | X | | |
| | Shaffer Environmental | X | | | X | | |
| | Shatnin | X | | | X | | |
| | Shainin LLC | X | | | X | | |
| | Shainin Services | X | | | X | | |
| | Shaw F & I | X | | | X | | |
| | Shawn Foster | X | | | X | | |
| | Sherin & Lodgen | X | | | X | | |
| | Shlesinger Arkwright & Garvey L.L.P | X | | | X | | |
| | Shusei | X | | | X | | |
| | Sidley Austin Brown & Wood LLP (Belgium) | | X | | | X | |
| | Sigma Learning LLC | X | | | X | | |
| | Sinn Language Connection | X | | | X | | |
| | Six Sigma Academy | X | | | X | | |
| | Slagle, Bernard & Gorman, P.C. (Kansas City, MO) | X | | | X | | |
| | SLG Consultants | X | | | X | | |
| | Smart Document Solutions | | | | | | X |
| | Smiley-Smith & Bright CPAs, LLC (Montgomery, AL) | X | | | X | | |
| | Smith, Gambrell & Russell, L.L.P. | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Smithers Scientific | | | | X | | |
| | Smithyman & Zakoura, Chartered (Overland Park, KS) | | X | | X | | |
| | Snell & Wilmer LLP - AZ | | | | | | |
| | Softpro Computer Consultants | X | | | X | | |
| | Software Systems / Sun System | X | | | X | | |
| | Solution Strategies, Inc. | X | | | X | | |
| | Sonnenschein Nath & Rosenthal LLP - DC (Washington, DC) | X | | | X | | |
| | Sonye Engineering LLC (Rochester Hills, MI) | | X | | | | |
| | Southcoast Research | | | | X | | |
| | Special Counsel LP (Troy, MI) (Contract Employees) | X | X | | X | | |
| | Specialized Topics | X | | | X | | |
| | Solution Corp | | | | X | | |
| | Sprata Saneo | | X | | X | | |
| | Squire, Sanders & Dempsey, L.L.P. - DC (Washington, DC) | | X | | X | | |
| | Star J | X | | | X | | |
| | Stanford D. Hannan dba Airbag Systems, Inc. (Farmington Hills, MI) | X | | | X | | |
| | Stanton Park Group, LLC (Washington, D.C.) | X | | | X | | |
| | Stephen J. Spurr (Grosse Pointe Park, MI) | X | | | X | | |
| | Startcycle | | | | | | |
| | Steve Johnson | X | | | X | | |
| | Storm consulting | X | | | X | | |
| | Storm Water Consultants | X | | | X | | |
| | Strait Orion Ross, Inc. | X | | | X | | |
| | Studio Torta, S.r.l. | X | | | X | | |
| | Summit Energy Services Inc. | X | X | | X | | |
| | Sutherland Asbill & Brennan LLP (Washington, DC) | X | | | X | | |
| | Suzuki Myers & Associates (Novi, MI) | X | | | X | | |
| | Swift Currie McGhee & Hiers, LLP | X | | | X | | |
| | Taiko-Malec Consulting | X | | | X | | |
| | Tate & Tate (Medford, NJ) | X | | | X | | |
| | Tatum Partners | X | | | X | | |
| | Tawas Industries Components Management Services LLC (Brighton, MI) | X | | | X | | |
| | Tax Consultancy Bureau | X | | | X | | |
| | TBM | X | | | X | | |
| | TCF Financial | X | | | X | | |
| | Tec Cube Inc | X | | | X | | |
| | Tech Caliber | X | | | X | | |
| | TechCentral | X | | | X | | |
| | Tenunt Co | X | | | X | | |
| | TGI Direct (Flint, MI) | X | | | X | | |
| | The Tax Veterans | X | | | X | | |
| | Think Inc | X | | | X | | |
| | Thomas A. Bender, M.D. | | | | X | | |
| | Thomas J. Knopf Mediation Services, Inc. (Louisville, KY) | | | X | X | | |
| | Thompson & Knight LLP (Dallas, TX) | | | X | X | | |
| | Thompson, Hine & Flory, LLP (Dayton, OH) | X | | | X | | |
| | Thorn Gershon Tymann and Bonanni, LLP (Albany, NY) | X | | | X | | |
| | Towers Perrin | X | | | X | | |
| | TPI | X | | | X | | |
| | Training Services | X | | | X | | |
| | Training Services & Solutions | X | | | X | | |
| | Transdev Sales of Ohio | X | | | X | | |
| | Trigon Sveregics P. Ltd. | X | | | X | | |
| | Trigeon Plus | X | | | X | | |
| | Trust and Trust | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connections Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | TSSC | X | | | X | | |
| | Turner Reid Duncan Loomer & Patton P.C. (Springfield, MO) | X | | | | | |
| | TUV Indutec | X | | | | | |
| | TUV Rheinland Group | X | | | | | |
| | TWI | X | | | | | |
| | TWI - Chuck Ward, Dave Myers | X | | | | | |
| | TWI - Sammy Okura | X | | | | | |
| | TWI Network | X | | | | | |
| | TWI Network Inc | X | | | | | |
| | TWI Servicing | X | | | | | |
| | UBS | X | | | | | |
| | UHY Mann Frankfort Stein & Lipp Advisors, Inc. (Houston, TX) | | X | | X | | |
| | Unigraphics Solutions Inc | X | | | X | | |
| | University health | X | | | X | | |
| | Urn & Menendes | X | | | X | | |
| | Urquhart-Dykes & Lord | X | | | X | | |
| | URS Corporation | X | | | X | | |
| | Value Analysis Corporation | X | | | X | | |
| | Value Analysis Inc. | X | | | X | | |
| | VCI Eng and Consultants | X | | | X | | |
| | Venable LLP | X | | | X | | |
| | Vercruysse Metz & Murray (Bingham Farms, MI) | X | | | X | | |
| | Vereenigde | X | | | X | | |
| | VK Wadhwan | X | | | X | | |
| | von Kreisler Selting Werner | X | | | X | | |
| | Voyes, Sater, Seymour & Pease LLP (Columbus, Ohio) | | | X | X | | |
| | VVV | X | | | X | | |
| | Wagner & Geyer | X | | | X | | |
| | Ward Norris Heller & Reidy, LLP (Rochester, NY) | X | | | X | | |
| | Washington Patent Services, Inc. (South Pasadena, FL) | X | | | X | | |
| | Watkins Ludlam Winter & Stennis, P.A. | X | | | X | | |
| | Wax Law Group | X | | | X | | |
| | Wayne State Univ. | X | | | X | | |
| | Webb Law Firm | X | | | X | | |
| | Webb Ziesenheim Logsdon Orkin & Hanson, P.C. (Pittsburgh, PA) | X | | | X | | |
| | Weingarten & Reid (Albany, NY) | X | | | X | | |
| | Welch Consulting, LTD (Santa Monica, CA) | X | | | X | | |
| | Wells, Anderson & Race, LLC (Denver, CO) | X | | | X | | |
| | Wesley D. Peck Jr. (Gilbert, AZ) | X | | | X | | |
| | White and Williams LLP | X | | | X | | |
| | Whiteside Communications Management (Southfield, MI) | X | | | X | | |
| | WIEG, Inc. (Madison, WI) | X | | | X | | |
| | William L. Froeb | X | | | X | | |
| | William R. Jentes P.C. (Chicago, IL | X | | | X | | |
| | William Mullen Clark & Dobbins (Richmond, VA) | X | | | X | | |
| | Wilmer Cutler Pickering Hale and Dorr, LLP (Washington, District of Columbia) | | | X | X | | |
| | Wilmer Law Offices, Inc. | X | | | X | | |
| | Wilson, Elser, Moskowitz, Edelman & Dicker L.L.P. | X | | | X | | |
| | Winslip Rehabilitation, Inc. (Cheektowaga, NY) | X | | | X | | |
| | Winston & Strawn LLP - NY | X | | | X | | |
| | Wise, Carter, Child & Caraway | X | | | X | | |
| | Wood, Herron & Evans, L.L.P. | X | | | X | | |
| | Wooden & McLaughlin, LLP (Indianapolis, IN) | X | | | X | | |
| | Woodward Bobson & Fulton (Louisville, KY) | X | | | X | | |
| | Woodcroft & Company | X | | | X | | |
| | Workers Health | X | | | X | | |
| | World Class Engineering | X | | | X | | |
| | Wright Lindsey & Jennings LLP | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Wyoming Public Schools | X | | | X | | |
| | Xavier Da Beck (France) | X | | | X | | |
| | Xpedex | X | | | X | | |
| | Young & Basile P.C. (Troy, MI) | X | | | X | | |
| | Young & Robinson, Inc. Benson Mercedtec (Chicago, IL) | | X | | X | | |
| | Yusak & Hauz (Japan) | X | | | X | | |
| | Yudkozci Yuldoi | X | | | X | | |
| | Zari Enterprises | X | | | X | | |
| | Zeintls, Hust & Summerford | X | | | X | | |
| | Zimmerman & Associates | | X | | X | | |
| | Baker Botts LLP | X | | | X | | |
| | Bieth & Bingham LLP | X | | | X | | |
| | Henen Consulting Services LLC | X | | | X | | X |
| | McCarthy Tetrault LLP | | X | | X | | |
| | Miller Canfield Paddock & Stone, PLC | X | | | X | | |
| | Moore Heaton & Somner | X | | | X | | |
| | Stout Risius Ross | | X | | X | | |
| | UHY Mann Frankfort Stein & Lipp Advisors, Inc. | X | | | X | | |
| | Ward Norris Heller & Reidy, LLP | X | | | X | | |
| | Wooden & McLaughlin, LLP | X | | | X | | |
| | AJM | X | | | X | | |
| | Boehl Strategies, Inc. | X | | | X | | |
| | Brenda Veit | X | | | X | | |
| | BSI Management Systems | X | | | X | | |
| | Calwest | X | | | X | | |
| | Carapanel | X | | | | | |
| | Chris Kunst & Assoc. | X | | | X | | |
| | Colby Taylor & Jones | X | | | X | | |
| | Coe & Associates | X | | | X | | |
| | Common Point Graphics | X | | | X | | |
| | Decision Allen | X | | | X | | |
| | Foley & Lardner LLP | | | X | X | | |
| | Frost Brown Todd LLC | X | | | X | | |
| | Honigman | | X | | X | | |
| | Homos & Williams LLP | | | X | X | | |
| | H.P Process Services, Inc. | X | | | X | | |
| | Kuehne & Sons Inc. | X | | | X | | |
| | Law Offices of Albert M. Gutierrez, P.C. | X | | | X | | |
| | Lee Hecht Harrison | X | | | X | | |
| | NA Williams Co. | X | | | X | | |
| | NAPA Sales | X | | | X | | |
| | Northeastern Marketing | X | | | X | | |
| | On-Mark Sales | X | | | X | | |
| | Orion Adv. Mktg. | X | | | X | | |
| | Paul Hastings Janofsky & Walker LLP | X | | | X | | |
| | Production Systems | X | | | X | | |
| | QS Services Teentoos | X | | | X | | |
| | Richards Spears Kibbe & Orbe LLP | X | | | X | | |
| | Russell Reynolds | X | | | X | | |
| | Rutledge Tonya R | X | | | X | | |
| | SAP Consulting | X | | | X | | |
| | Savely Innovations Ltd | X | | | X | | |
| | Shaw C & L | X | | | X | | |
| | Siskel Sales Company | X | | | X | | |
| | Solution Strategies | X | | | X | | |
| | Spears Serice | X | | | X | | |
| | SRS Marketing Co. | X | | | X | | |
| | Sub & Assoc. | X | | | X | | |
| | Surtek Company | X | | | X | | |
| | Tec Ease Inc | X | | | X | | |
| | Watkins Ludlam Winter & Stennis, P.A. | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connection Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| Other Significant Parties-in-interest Attorneys retained in connection with the Chapter 11 proceeding | **Counsel for Litigation Parties** | | | | | | |
| | Abbey Gardy, LLP | X | | | X | | |
| | Alfredo Z. Padilla, Esq. | X | | | X | | |
| | Mary A. Conrad, P.C. | X | | | X | | |
| | Alexander Leggio & Hunt | X | | | X | | |
| | Andrew P. Abood, Esq. | X | | | X | | |
| | Archer & Greiner | X | | | | X | |
| | Barry D. Adler, Esq., Adler & Associates | X | | | X | | |
| | Beck, Redden & Secrest | X | | | X | | |
| | Beers, Anderson, Jackson, Patty & Van Horst, P.C. | X | | | X | | |
| | Berg Hill Greenleaf & Ruscitti LLP | X | | | X | | |
| | Bleakley, Cypher, Parent, Warren & Quinn, P.C. | X | | | X | | |
| | Blecher & Collins, P.C. | X | | | X | | |
| | Bodman, Longley & Dahling, LLP | | X | | X | | |
| | Cady, Martommaro & John, P.C. | X | | | X | | |
| | Canata & Simonson, P.C. | X | | | X | | |
| | Carrigan, McCluKey & Roberson, LLP | X | | | X | | |
| | Casper & Casper | X | | | X | | |
| | Cellino & Barnes, P.C. | X | | | X | | |
| | Chadbourne & Parke LLP | X | | | X | | |
| | Chapman, Lewis & Swan | X | | X | X | | |
| | Chrch, Kerschuk, Reuch & Powers LLP | X | | | X | | |
| | Clifford Law Offices, P.C. | X | | | X | | |
| | Closer Dunn Hirsch LLP | X | | | X | | |
| | Cohen, Milstein, Hausfeld & Toll, P.L.L.C. | X | | | X | | |
| | Cole, Cole & Easley, P.C. | X | | | X | | |
| | Consumer and Elder Law Corporation | X | | | X | | |
| | Coolidge, Wall, Womsley & Lombard, LPA | X | | | X | | |
| | Couzens, Lansky, Frank, Ella & Lazar PC | X | | | X | | |
| | Covington & Burling | X | | | X | | |
| | David A. Hodges, Esq. | X | | | X | | |
| | Davis & Davis | X | | | X | | |
| | Dockins Turnage & Banks | X | | | X | | |
| | Donald W. Bond, Esq. | X | | | X | | |
| | Douglas J. Emerich, Esq. | X | | | X | | |
| | Dyer, Garofalo, Mann & Schultz | X | | | X | | |
| | Elwood S. Simon & Associates, P.C. | X | | | X | | |
| | Everado Abrego, Esq. | X | | | X | | |
| | Farrugi & Farrugi, LLP | X | | | X | | |
| | Finkelstein & Krinsk, LLP | X | | | X | | |
| | Foy, Arndt & Dunbavin PC | X | | | X | | |
| | Fitch, Evin, Tabin & Flannery | X | | | X | | |
| | Frank J. Dolce, Esquire | X | | | X | | |
| | Franklin & Greenfield LLC | X | | | X | | |
| | Gainey & McKenna | X | | | X | | |
| | Gainey & McKenna | X | | | X | | |
| | Gene T. Moore, Esq. | X | | | X | | |
| | Glancy & Co. Inc. | X | | | X | | |
| | Gilbert, Frank, Ollanik & Komyatte, P.C. | X | | | X | | |
| | Greak & Smith, P.C. | X | | | X | | |
| | Goel, Mills, Nims & Pylman LLP | X | | | X | | |
| | Hagens Berman Sobol Shapiro | X | | | X | | |
| | Hardwick & Knight | X | | | X | | |
| | Hertz, Schram & Saretsky, P.C. | X | | | X | | |
| | Hilary Kole | X | | | X | | |
| | Hoagland, Longo, Moran, Dunst & Doukas | X | | | X | | |
| | Holden, Kridwell, Hahn & Cripps, P.L.L.C. | X | | | X | | |
| | Howard Langer, Esquire, Asbach, Harris & Langer | X | | | X | | |
| | Jenner & Block | X | | | X | | |
| | Jennifer M. Stec, Intellectual Property Counsel, FGTL - Office of the General Counsel | X | | | X | | |
| | Johnson, Rasmussen, Robinson & Allen, P.L.C. | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connection Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Kaplan Fox & Kilsheimer LLP | X | | | X | | |
| | Karl Kochelman | X | | | X | | |
| | Keller Rohrback, L.L.P | X | | | X | | |
| | Ker, Russell & Weber | X | | | X | | |
| | Kimberley & Miles, P.C. | X | | | X | | |
| | Langsam Sweet & Freese | X | | | X | | |
| | Langston Sweet & Freese | X | | | X | | |
| | Law Office of Carlos E. Hernandez, Jr. | X | | | X | | |
| | Law Office of Kurt Neuwelt | X | | | X | | |
| | Law Offices of Guy Sheetz, P.C. | X | | | X | | |
| | Law Offices of Brian M. Felgoise, PC | X | | | X | | |
| | Law Offices of Charles J. Piven, P.A. | X | | | X | | |
| | Law Offices of Lynn Shermans | X | | | X | | |
| | Law Offices of Malonzy & Campolo | X | | | X | | |
| | Lerach Coughlin Stoia Geller Rudman & Robbins LLP | X | | | X | | |
| | Lester, Schwab, Katz & Dwyer | X | | | X | | |
| | Levin Simes & Kaiser LLP | X | | | X | | |
| | Lewis & Lewis, P.C. | X | | | X | | |
| | Lewis Brisbois Bisgaard & Smith LLP | X | | X | X | | |
| | Lieff, Cabraser, Heiman & Bernstein, LLP | X | | | X | | |
| | Linda Driftlock, Esq. | X | | | X | | |
| | Linda J. Lenhart (Pro Hac vice) | X | | | X | | |
| | Liss & Shapiro | X | | | X | | |
| | Leslie Luttrell & Sapp, LLP | X | | X | X | | |
| | Lowey Dannenberg Bemporad & Selinger, P.C. | X | | | X | | |
| | M. Beth Sax | X | | | X | | |
| | Marian P. Rosner Esq., Robert C. Finkel Esq., Carl L. Stine, Esq. | X | | | X | | |
| | Mark Willis Esq., Attorney At Law | X | | | X | | |
| | Maurimarco & Jule, PC | X | | | X | | |
| | McTiger Law Firm | X | | | X | | |
| | METLIFE, Michelle Commander, Esq. | X | | | X | | |
| | Miller Faucher and Cafferty LLP | X | | | X | | |
| | Miller Shea P.C. | X | | | X | | |
| | Moss, Wiener & Kramer | X | | | X | | |
| | Montero, Thompson, Thomas, Papillion & Cullens | X | | | X | | |
| | Morgan & Meyers P.C. | X | | | X | | |
| | Morris, Cantor, Lukasik, Dolce, Panepinto, P.C. | X | | | X | | |
| | Mory's Shneid Froyd Dorenberg Ameruk & Rubinstein, P.C. | X | | | X | | |
| | NHK Antitrust Litigation (Crompton), c/o Girardi & Co., LLC | X | | | X | | |
| | Norman Jeffry, Esq. | X | | | X | | |
| | O'Neill, Wallace & Doyle, P.C. | X | | | X | | |
| | Parmenter O'Toole | X | | | X | | |
| | Peter D. Fischbein, Esq. | X | | | X | | |
| | Poland Sheldon Werler Southrou, PC | X | | | X | | |
| | Price Potter Jackson & Mellowitz PC | X | | | X | | |
| | Primary an Edmiston Harris y/o John Sheffield | X | | | X | | |
| | Quinn Emanuel Urquhart Oliver & Hedges LLP | X | | | X | | |
| | Richard Hawkins & Young, LLP | X | | | X | | |
| | Robert F. Garvey, Esq., Daniel F. Beck, Esq. | X | | | X | | |
| | Robins, Kaplan, Miller & Ciresi LLP | | | | X | X | |
| | Reetzel & Andress | | | | X | X | |
| | Rogers County District Attorney, Assistant D.A. Patrick Abitbol | X | | | X | | |
| | Sabir Law Firm | X | | | X | | |
| | Schultz & Nobel, P.C. | X | | | X | | |
| | Schwartz Law Firm, P.C. | X | | | X | | |
| | Scott & Scott, LLC | X | | | X | | |
| | Sheik M. Hassan PLLC | X | | | X | | |
| | Shee Gomer Cahill Richter Klein & Hilbert, L.L.C | X | | | X | | |
| | Sherrie Savett, Esq. | X | | | X | | |
| | Simmons Cooper, LLC | X | | | X | | |
| | Smith, Spires & Peddy, P.C. | X | | | X | | |
| | Spector Roseman & Kodroff, PC | X | | | X | | |
| | Squitieri & Fearon, LLP | X | | | X | | |

Work Sheet - In Court

| | | Delphi Automotive Systems (Holding), Inc. U.S. Connections Check Nov-05 | | | Delphi Automotive Systems (Holding), Inc. Canada Connections Check Nov-05 | | |
|---|---|---|---|---|---|---|---|
| Category | Name | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Stanley J. Walter, Esq. | X | | | X | | |
| | Statman Harris Siegel & Eyrich LLC | X | | | X | | |
| | Stephen D. Wheninger P.L.C. | X | | | X | | |
| | Stewart & Stewart | X | | | X | | |
| | Terence L. Fague, Esq., Nicole M. Rubenkamp, Esq. | X | | | X | | |
| | Thacher Proffitt & Wood | X | | | X | | |
| | The Anderson Group | X | | | X | | |
| | The Padberg & Corrigan Law Firm | X | | | X | | |
| | The Roth Firm | X | | | X | | |
| | Thomas, Garvey, Garvey & Sciotti, P.C. | X | | | X | | |
| | Thompson & Knight | X | | | X | | |
| | United States Attorney's Office, Southern District of Texas | X | | | X | | |
| | Vorona Tinucci Parks Consonei | X | | | X | | |
| | Varnum Riddering Schmidt Howlett | X | | | X | | |
| | Warren M. Palner – Atny at Law | X | | | X | | |
| | Weaver & Young | X | | | X | | |
| | Wechsler Harwood LLP | X | | | X | | |
| | Weir & Luxenberg, P.C. | X | | | X | | |
| | Williams Alcona TLLC | X | | | X | | |
| | William S. Weiler, Esq. | X | | | X | | |
| | Wolf Halenstein Adler Freeman & Herz LLP | X | | | X | | |
| | Yablon & Domestico, P.L.L.C. | X | | | X | | |
| | Young & Susser, P.C. | X | | | X | | |
| | Yrusurere & Chapu | X | | | X | | |
| | Zelle, Hofmann, Voelbein, Mason & Getie LLP | X | | | X | | |
| | Counsel for Miscellaneous Litigants | | | | | | |
| Miscellaneous | Bailey Cavalieri LLC | X | | | X | | |
| | McCaslin, Imbus & McCaslin | X | | | X | | |
| | McGuire Woods | | X | | X | | |
| | Tucker Ellis & West | X | | | X | | |
| | Counsel for each of the Sedgwick CMS Claimants | | | | | | |
| | Chapman, Lewis and Swan | X | | | X | | |
| | Clifford Law Offices | X | | | X | | |
| | Fager, Fagor, Kenney and Johnson | X | | | X | | |
| | Johnson, Rasmussen, Robinson & Allen | X | | | X | | |
| | Meyer and Williams | X | | | X | | |
| | Thomas, Garvey, Garvey and Sciotti | X | | | X | | |
| | Former Officers and Directors (in the past three years) | | | | | | |
| | Andrew Brown, Jr. | X | | | X | | |
| | Arthur Russell Jackson | X | | | X | | |
| | Carrie Anderson | X | | | X | | |
| | Christopher P. Arkwright | X | | | X | | |
| | David Kull | X | | | X | | |
| | David Maschoff | X | | | X | | |
| | F. Thomas Springer | X | | | X | | |
| | J. Thomas Springer | X | | | X | | |
| | Fred J. Bielat III | X | | | X | | |
| | Gregory R. Richards | X | | | X | | |
| | Henry A. Sullivan | X | | | X | | |
| | James H. Hinckle | X | | | X | | |
| | Jeffrey M. Oxerly | X | | | X | | |
| | Jeffrey Owens | X | | | X | | |
| | Jeffrey C. Chadwick | X | | | X | | |
| | John A. Jeffers | X | | | X | | |
| | John Robert Roland, Jr. | X | | | X | | |
| | Luis Jaraudez | X | | | X | | |
| | Mark S. Kaminchke | X | | | X | | |
| | Mark Thariot | X | | | X | | |
| | Michael L. Schappe | X | | | X | | |

Work Sheet - In Court

| Category | Name | Delphi Automotive Systems (Holding), Inc. — U.S. Connections Check — Nov-05 | | | Delphi Automotive Systems (Holding), Inc. — Canada Connection Check — Nov-05 | | |
|---|---|---|---|---|---|---|---|
| | | No Connection | Prior Connection | Current Connection | No Connection | Prior Connection | Current Connection |
| | Milton R. Scheffler | X | | | X | | |
| | Pam Pfuenberger | X | | | X | | |
| | Patrick Griffin | X | | | X | | |
| | Robert C. Walker | X | | | X | | |
| | Samuel H. Hall Jr. | X | | | X | | |
| | Timothy G. Forbes | X | | | X | | |
| | Top 50 Creditors | | | | | | |
| | Asm Sekisui Co Ltd | | X | | X | | |
| | Semiconductor Components | | X | | X | | |
| | State of Ohio | | X | | X | | |
| | TDK Corporation of America | | | X | X | | |
| | Alps Automotive Inc. | X | | | X | | |
| | AW Transmission Engineering | X | | | X | | |
| | Bosch Braking Systems Corp | X | | | X | | |
| | Buena Vista Township Michigan | X | | | X | | |
| | Caris Capital Advisors LLC | X | | | X | | |
| | Carlisle Engineered Prods | X | | | X | | |
| | OGIXA Corporation | | | X | X | | |
| | City of Flint, Michigan | X | | | X | | |
| | Delta | X | | | X | | |
| | Electronica Intl Asia Pacific | X | | | X | | |
| | Fujitsu Ten Corporation | X | | | X | | |
| | Howard County, Indiana | X | | | X | | |
| | ISSRC Bank USA | | | X | X | | |
| | International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers – Communications Workers of America | X | | | X | | |
| | Lunar Realty Corp | X | | | X | | |
| | Madison County, Indiana | X | | | X | | |
| | Merk Mexico | X | | | X | | |
| | Montgomery County, Ohio | X | | | X | | |
| | National Fire Insurance | X | | | X | | |
| | Company of Hartford | X | | | X | | |
| | Osprey, S.A. Ltd | X | | | X | | |
| | Pioneer INDE Components | X | | | X | | |
| | Robert Bosch Corporation Automotive Group | | | X | X | | |
| | Sharp Electronics Corp | X | | | X | | |
| | State of Michigan | X | | | X | | |
| | State of Wisconsin | | X | | X | | |
| | Texde Mfg Ltd | X | | | X | | |
| | UHC | X | | | X | | |
| | United Auto Workers | X | | | X | | |
| | Other Miscellaneous Interested Parties | | | | | | |
| | Consumer Electronic Product Line | | | | | X | |
| | Vehicle Electronic Product Line | | | | | | X |

* Other category may include connections of the following types: Other AABS Services, Litigation, Line of Credit Providers, 401(k) Providers, Long Term Debt Holders, Professionals Retained by EY, Firmwide Legal Proceedings, or International (Debtor or Debtor's affiliates only)

## EXHIBIT C

**Professionals involved in the Debtors' chapter 11 cases which have in the past and/or are currently providing services to E&Y LLP:**

1.  Shearman & Sterling LLP:  has provided services in the past.

2.  Skadden, Arps, Slate, Meagher & Flom LLP:  has provided in the past, and is presently providing services.

3.  FTI Consulting, Inc.:  has provided in the past, and is presently providing, services.

4.  O'Melveny & Myers LLP:  has provided services in the past.

5.  Watson Wyatt and/or Watson Wyatt & Company:  have provided in the past, and are presently providing services.

6.  ADR Options, Inc.;  has provided services in the past.

7.  Akin, Gump Strauss, Hauer & Feld, L.L.P.:  has provided in the past, and is presently providing, services.

8.  Alix Partners, L.L.C.:  has provided in the past, and is presently providing, services.

9.  American Appraisal Associates:  has provided services in the past.

10.  Argo:  has provided services in the past.

11.  Ariba:  has provided services in the past.

12.  Baker & Daniels:  has provided services in the past.

13.  Baker & McKensie (all affiliates as listed): have provided services in the past

14.  Barnes & Thornburg:  has provided services in the past.

15.  Barnett Associates, Inc.:  has provided services in the past.

16.  BDO Seidman, LLP:  has provided services in the past.

17.  Bickerstaff, Heath, Smiley, Pollan, Kever & McDaniel, L.L.P.: has provided services in the past.

18.  BNP Paribas and BNP Paribas Securities Corp:  have provided services in the past.

19.  Bowman and Brooke LLP:  has provided services in the past.

20.  Business Engine:  has provided services in the past.

21.  Butzel, Long:  has provided services in the past.

22.  Choicepoint Services:  has provided in the past, and is presently providing, services.

23.  Clark Consulting:  has provided services in the past.

24.  Corporate Executive Board:  has provided services in the past.

25.  Corporate Branding LLC:  has provided services in the past.

26.  Covington & Burling:  has provided in the past, and is presently providing, services.

27.  Dechert LLP:  has provided services in the past.

28.  Deloitte &Touche and/or Deloitte Touche Tohmatsu:  have provided services in the past.

29.    Dickinson Wright P.L.L.C.:  has provided services in the past.

30.    Dinsmore & Shohl LLP:  has provided services in the past.

31.    Drinker Biddle & Herbst P.C.:  has provided in the past, and is presently providing, services.

32.    Dykema Gossett P.L.L.C.:  has provided services in the past.

33.    EDS:  has provided services in the past.

34.    Equis Corporation:  has provided services in the past.

35.    EY Law Luther Menold:  has provided services in the past.

36.    Fleishman Hillard Japan Inc.:  has provided services in the past.

37.    Foley & Lardner LLP and/or Foley & Lardner WI:  have provided in the past, and are presently providing, services.

38.    Fulbright & Jaworski LLP:  has provided in the past, and is presently providing, services.

39.    Gibson, Dunn & Crutcher CA:  has provided services in the past.

40.    Heller Ehrman White & McAuliffe:  has provided in the past, and is presently providing, services.

41.    Hewitt, Hewitt & Associates, and/or Hewitt Associates LLC:  have provided in the past, and are presently providing services.

42.    Hill & Knowlton:  has provided services in the past

43.    Hogan & Hartson, LLP:  has provided in the past, and is presently providing, services.

44.    Honigman, Miller, Schwartz and Cohn, LLP:  has provided services in the past

45.    Hunton & Williams LLP:  has provided in the past, and is presently providing, services.

46.    Huron Consulting Services LLC:  has provided services in the past.

47.    IBM and/or IBM Corporation:  has provided services in the past.

48.    Interim:  has provided services in the past.

49.    International SOS Assistance:  has provided services in the past.

50.    Jackson Walker LLP:  has provided services in the past.

51.    Jaeckle Fleischmann & Mugel, LLP:  has provided services in the past.

52.    Jefferson Wells:  has provided services in the past.

53.    Jones Day:  have provided in the past, and are presently providing, services.

54.    Jones Lang LaSalle and/or Jones Lang LaSalle Americas Inc:  have provided services in the past.

55.    Kaizen:  has provided services in the past.

56.    Kim & Chang:  has provided services in the past.

57.    Klausner Group, Ltd.:  has provided services in the past.

58.    KPMG and/or KPMG LLP:  have provided in the past, and are presently providing services.

ii

59.     Kronish Lieb Weiner & Hellman LLP:  has provided services in the past.

60.     Lathrop & Gage:  has provided services in the past.

61.     Lee Hecht Harrison:  has provided services in the past

62.     Liebert Global Services:  has provided services in the past

63.     Linklaters:  has provided services to Ernst & Young Global Services in the past.

64.     Marsh USA Inc.:  have provided services in the past

65.     Math Works, Inc.:  has provided services in the past.

66.     McCarter & English:  has provided in the past, and is presently providing, services.

67.     McCarthy Tetrault LLP:  has provided services in the past.

68.     McDermott Will & Emery LLP:  has provided services in the past.

69.     McNees Wallace & Nurick LLC:  has provided services in the past.

70.     McTurnan & Turner PTR:  has provided services in the past.

71.     Merrill Corp and/or Merrill Lynch, Pierce, Fenner & Smith Incorporated:  have provided in the past, and are presently providing, services.

72.     Michael Page:  has provided services in the past.

73.     Morgan Lewis & Bockius LLP:  has provided services in the past

74.     Morris, Nichols, Arsht & Tunnell:  has provided services in the past.

75.     Nationwide Advertising Service:  has provided services in the past.

76.     Neal Gerber & Eisenberg, LLP:  has provided services in the past.

77.     Nelson Mullins Riley & Searborough L.L.P.:  has provided services in the past.

78.     Pillsbury Winthrop Shaw Pittman LLP:  has provided in the past, and is presently providing, services.

79.     Potter Anderson & Corroon LLP:  has provided services in the past.

80.     Productivity Systems:  has provided services in the past.

81.     Quarles & Brady LLP:  has provided in the past, and is presently providing, services.

82.     Realtime Consultants:  has provided services in the past.

83.     Robert Half:  has provided services in the past.

84.     Salomon Smith Barney:  has provided services in the past.

85.     Sapient:  has provided in the past, and is presently  providing, services.

86.     Squire, Sanders & Dempsey, L.L.P.:  has provided in the past, and is presently providing, services

87.     Towers Perrin:  has provided services in the past

88.     TPI:  has provided services in the past.

89.     Wilmer Cutler Pickering Hale and Dorr, LLP:  has provided in the past, and is presently providing, services.

iii

90.     Wilson, Elser, Moskowitz, Edelman & Dicker L.L.P.:  has provided services in the past.

91.     Winston & Strawn LLP:  has provided in the past, and is presently providing, services.

92.     Wright Lindsay & Jennings LLP:  has provided services in the past.

93.     Zimmerman & Associates:  has provided services in the past.

94.     Chadbourne & Parke LLP:  has provided services in the past

95.     Fitch, Even, Tabin & Flannery:  has provided services in the past.

96.     Metlife, and/or Metlife Capital LP:  have provided in the past, and are presently providing, services.

97.     Polsinelli Shalton Welte Suelthaus, PC:  has provided in the past, and is presently providing, services.

98.     Varnum Ridderind Schmidt Howlett:  has provided services in the past.

99.     Baker Botts LLP and/or Baker Botts:  have provided in the past, and are presently providing services.

100.    Paul Hastings Janofsky & Walker LLP:  has provided in the past, and is presently providing services.

101.    Richards Spears Kibbe & Orbe LLP:  has provided services in the past.

102.    Russell Reynolds:  has provided services in the past.

103.    PWC/Sistomo Tax Consultants:  has provided in the past, and is presently providing services.

104.    SGS Controll CO MBH:  has provided services in the past.

105.    Sidley Austin Brown & Wood LLP:  has provided services in the past.

106.    Smith, Gambrell & Russell, L.L.P.:  has provided services in the past.

107.    Sonnenchein Nath & Rosenthal LLP:  has provided in the past, and is presently providing, services.

107.    Special Counsel:  has provided services in the past.

108.    Spherion Corp:  has provided in the past, and is presently providing, services.

109.    TWI, TWI Network Inc., and/or TWI Networking:  have provided in the past, and are presently providing, services

110.    UBS, and/or UBS AG, Stamford Branch:  have provided services in the past.

111.    University Health Care Insurance Company:  has provided services in the past.

112.    Venable LLP:  has provided in the past, and is presently providing services.

113.    Vorys, Sater, Seymour & Pease LLP:  has provided in the past, and is presently providing services.

114.    Pepper Hamilton LLP:  has provided in the past, and is presently providing services.

115.    Latham & Watkins LLP:  has provided in the past, and is presently providing services.

## EXHIBIT D

**Matters wherein parties in interest are parties in litigation wherein E&Y is also a party:**

| | **Party In Interest** | **Matter** |
|---|---|---|
| 1 | Oak Hill Credit Partners and Oak Hill Securities Fund | Oak Hill Savings & Loan is a co-defendant with E&Y LLP in an action pending in the U.S. District Court, Southern District of Ohio Western Division at Cincinnati (Civil Action No. C-1-02-613) |
| 2 | Pepper Hamilton LLP | Pepper Hamilton LLP is a co-defendant with E&Y LLP in an action pending in U.S. District Court, Delaware (Civil Action No. 05-249) |
| 3 | Phillips, Robert | Robert J. Phillips is a third-party co-defendant with E&Y LLP in an action pending in the District Court, Tarrant County, Texas 67th Judicial District (Cause No. 067 202574 03) |
| 4 | Price Waterhouse Coopers and Price Waterhouse Coopers LLP | Price Waterhouse Coopers is a co-defendant with E&Y LLP in actions pending in (a) the Circuit Court of Montgomery County, Alabama (CV-2004-1172) and (b) Court of Chancery of the State of Delaware in and for New Castle County (CA No: 1571-N) |
| 5 | Reilly, Jr. Thomas A. | Thomas Reilly is a plaintiff in actions pending against E&Y LLP in (a) the Superior Court of New Jersey Atlantic County--Law Division (Docket No. TL-L-680-04) and (b) the Court of Common Pleas of Butler County, Pennsylvania (Case No.: 97-10022) |
| 6 | Scotia Capital (USA) Inc. | Scotia Capital is a co-defendant with E&Y LLP in an action pending in U.S. District Court, Northern District of Alabama, Southern Division (CV-03-BE-1496-S). |
| 7 | Time Warner | Time Warner is a co-defendant with E&Y LLP in a group of complaints arising from services provided to AOL-Time Warner which are pending in the following courts: Superior Court of the State of California County of Los Angeles (Case No. BC 293848), Civil Court of the City of New York, the Common Pleas court of Franklin County Ohio (Case No.: 03 CVH077932), Circuit Court of Kanawha County West Virginia, Kanawha County (WV 25238), U.S. District Court, Eastern District of Texas, Texarkana Division (Civ. No. 502 cv 197), U.S. District Court for the Southern District of New York (Case No: 03 CV 4934), Superior Court of the State of California, County of Sacramento (CA 95814), Superior Court of California County of San Francisco (03-422609), and Superior Court of New Jersey Law Division: Mercer County Courthouse (L 1349 03). |
| 8 | U.S. Bancorp Piper Jaffray Inc. | US Bancorp Piper Jaffray Inc. is a co-defendant with E&Y LLP, among others, in an action pending in U.S. District Court, Middle District of Tennessee, Nashville Division |
| 9 | UBS AG | UBS AG Financial Services is a co-defendant with E&Y LLP in an action pending in the U.S. District Court, Northern District of Alabama, Southern Division (CV-03-BE-1496-S). |
| 10 | Bear Stearns and Bear Stearns Investment Products | Bear Stearns & Co. Inc. is a co-defendant with E&Y LLP in U.S. District Court, Northern District of Alabama, Southern Division (CV-03-BE-1496-S) |

| | **Party In Interest** | **Matter** |
|---|---|---|
| 11 | KZH Pondview LLC, KZH Soleil and KZH Soleil LLC | Highland Capital Management, LP, KZH Highland-2 LLC, Highland Loan Funding V Ltd., Emerald Orchard Limited, KZH Pamco LLC and Pamco Cayman, Ltd are plaintiffs in an action against E&Y LLP pending in the District Court of Dallas County, Texas K-192nd Judicial District (Cause No. 03-04530) |
| 12 | PNC Bank, NA | PNC Financial Services is a co-defendant with E&Y LLP in a case pending in U.S. District Court, Western District of Pennsylvania (Case No: 02-0271) |
| 13 | Salomon Brothers Variable Rate | Salomon Brothers is a co-defendant with E&Y LLP, in a case pending in Superior Court of the State of California for the County of Santa Barbara (Case No: 01110873) |
| 14 | Keating, Muething & Klekamp, P.L.L. | Keating, Muething & Klekamp is a co-defendant with E&Y LLP in a case pending in the U.S. District Court, Western District of Ohio, Western Division at Cincinnati (C-1-02-613) |
| 15 | KPMG and KPMG LLP | KPMG LLP is a co-defendant with, among others, E&Y LLP in an a) action pending in State of Indiana County of Marion in the Marion Superior Court (Cause No: 120211CT001926); (b) U.S. Court of Appeals for the Second Circuit (Case number 04-0392); (c) U.S. District Court, Eastern District of New York Civil Action No. 04-2697; (d) Superior Court of the State of California for the County of Los Angeles (Case No. B 337956) |
| 16 | McDonald Investments, Inc., a KeyCorp Company | McDonald Investments, Inc. is a co-defendant in a Trustees litigation in U.S. District Court, Northern District of Georgia, Atlanta Division (Case No: 1:03 CV 3475) |
| 17 | McGuire Woods | McGuire Woods is a co-defendant with, among others, E&Y LLP in an action pending in Superior Court of the State of California, County of Alameda Northern Division Unlimited Jurisdiction (Case No.: 2002-043995) |
| 18 | Merrill Lynch Corp. and Merrill Lynch Pierce, Fenner & Smith Incorporated | Merrill Lynch Pierce Fenner & Smith is a co-defendant with E&Y LLP actions pending in (1) the U.S. District Court Northern District of Alabama Southern Division (CV-03-BE-1496-S); and (2) the Superior Court of the State of California County of Alameda Northern Division Unlimited Jurisdiction (Case No.: 2002-043995). |
| 19 | Citigroup, Citigroup Global Markets Inc., and Citigroup Financial Products Inc. | Citibank/ Citigroup Global Markets is a co-defendant with E&Y LLP in an action pending in Superior Court of the State of California For the County of Santa Barbara (Case No.: 01110873).  Citigroup is a co-defendant with E&Y in  litigations pending in (a) the Superior Court of New Jersey Law Division:  Mercer County Courthouse (L 1349 03); (b) the Common Please Court of Franklin County Ohio (Case No.:  03 CVH07 7932);  (c) Circuit Court of Kanawha County West Virginia, Kanawha County (WV 25238);  (d) Civil Court of the City of New York (no docket number assigned); and (e) Superior Court of the State of California County of Los Angeles  (Case No.:  BC 293848). Citigroup Global Markets Inc./Salomon is a co-defendant in actions pending in (a) U.S. District Court Northern District of Alabama Southern Division (CV-03-BE-1496-S); (b) Superior Court of the State of California County of Los Angeles (Case No.:  BC 293848); and  (c) The Common Pleas Court of Franklin County Ohio (Case No.:  03 CVH07 7932). |

| **Party In Interest** | **Matter** |
|---|---|
| 20  Credit Suisse Asset Management, Credit Suisse First Boston LLC, Credit Suisse, New York & Cayman, Credit Suisse First Boston London Branch | Credit Suisse First Boston is a co-defendant with E&Y LLP in a litigation pending in the U.S. District Court in the Northern District of Alabama Southern Division (CV-03-BE-1496-S) |
| 21  Deloitte & Touche and Deloitte Touche Tohmatsu | Deloitte & Touche is a co-defendant with E&Y LLP in a matter pending in the State of Indiana County of Marion in the Marion Superior Court (Cause No: 120211CT001926) |
| 22  Deutsche Bank Trust Company Americas/Deutsche Bank Securities Inc. | Deutsche Bank/Deutsche Bank Securities is a co-defendant with E&Y LLP in an action pending in a) U.S. District Court Northern District of Alabama Southern Division  (CV-03-BE-1496-S). b) County Court of Dallas, Texas (Cause No. 03-06291) Circuit Court of Cook County Illinois (05-CH10430); c) District Court of Harris County Texas 113 th Judicial District (No: 2004-14400). |
| 23  Dinsmore & Shohl LLP | Dinsmore & Shohl LLP is a co-defendant with EY in a litigation pending in the U.S. District Court of Southern District of Ohio Western Division at Cincinnati (Civil Action No. C-1-02-613) |
| 24  JP Morgan Chase Bank, N.A., JP Morgan Securities, Morgan Stanley & Co. | JP Morgan, Morgan Stanley Senior Funding, Inc., Morgan Stanley Dean Witter:  Morgan Stanley & Co. and J.P. Morgan Securities Inc. are  codefendants with E&Y LLP in an action brought by the Houston Firefighters' Relief and Retirement Fund, individually and on behalf of all others similarly situated in a case pending in the U.S. District Court of the Northern District of Alabama Southern Division (CV-03-BE-1496-S).  Morgan Stanley & Co is a  codefendant with E&Y LLP in a group of complaints arising from services provided to AOL-Time Warner which are pending in Superior Court of the State of California County of Los Angeles (Case No. BC 293848), Civil Court of the City of New York,  the Common Pleas court of Franklin County Ohio (Case No.:  03 CVH077932), Circuit Court of Kanawha County West Virginia, Kanawha County (WV 25238) and Superior Court of New Jersey Law Division:  Mercer County Courthouse (L 1349 03).   JP Morgan Chase & Co. is a co-defendant with E&Y LLP in a complaint arising from services provided to AOL-Time Warner which is pending in Superior Court of New Jersey Law Division:  Mercer County Courthouse (L 1349 03). JP Morgan Chase & Company is a co-defendant with E&Y LLP and EYCF in an unrelated action pending in Supreme Court of the State of New York County of New York (Index No.: 04114728); U.S. District Court of Delaware (Civil Action No. 05-249). |
| 25  Jackson Walker LLP | Jackson Walker LLP are co-defendants with E&Y LLP in an action brought by the trustee in the US Bankruptcy Court for the Northern District of Texas (Case No. 01-31351) |
| 26  AT&T, AT&T Corp, and AT&T Soutions, Inc.. | Citibank NV/AT&T is a co-defendant with E&Y LLP, among others,  in a case pending in Superior Court of the State of California for the County of Santa Barbara (Case No.:  01110873). |
| 27  Baker & McKenzie LLP | Baker & McKenzie LLP is a co-defendant with EY in a case pending in the Court of Chancery of the State of Delaware in and for New Castle County (CA No. |

| **Party In Interest** | **Matter** |
|---|---|
| | 1571-N) |
| 28  Bank of America Securities LLC | Banc of America Securities LLC is a co-defendant with E&Y LLP in actions pending in  (a)  Superior Court of New Jersey Law Division:  Mercer County Courthouse (L 1349 03) and (b) U.S. District court Northern District of Alabama Southern Division (CV-03-BE-1496-S) |

## EXHIBIT E

1.    AB SKF
2.    Akebono Brake Industry Co. Ltd.
3.    Alcoa Inc.
4.    American President Lines Ltd.
5.    Asahi Glass Co.
6.    Banca Nazionale Del Lavaro Spa
7.    Bryn Mawr CLO, Ltd.
8.    CED, Inc. dba All-Phase Electric Supply
9.    Chubb Specialty Insurance
10.   Cigna Corporation
11.   Deutsche Bank AG
12.   EDS
13.   ESS
14.   Hitachi High Technologies
15.   Invensys
16.   Irvine Ranch Water District CA USA
17.   JCI
18.   Johnson Controls
19.   L-3
20.   Latham & Watkins
21.   Lear
22.   Mercedes-Benz U.S. International, Inc.
23.   Metropolitan Life Insurance Company
24.   Minolta Business Solutions, Inc. (fka Minolta Business Systems, Inc.)
25.   Mitsubishi
26.   Mitsubishi Electric
27.   Nabco Inc.
28.   Nokia Corporation
29.   Norsk Hydro
30.   Paccar
31.   Panhandle Eastern Pipeline Company
32.   Quick & Reilly, Inc.
33.   Semiconductor Components
34.   Sequent Energy Services
35.   Sharp Electronics Corp.
36.   Spirent Plc
37.   State of Ohio
38.   TDK Corporation of America
39.   Textron Inc.
40.   USA Technologies, Inc.
41.   Volvo Truck
42.   Wilmington Trust Company, as Indenture Trustee

i

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :

In re                            :     Chapter 11
                             :

DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                             :

               Debtors.    :     (Jointly Administered)
                             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER UNDER 11 U.S.C. §§ 327(a), 328(a), AND 1107(b) AUTHORIZING EMPLOYMENT AND RETENTION OF ERNST & YOUNG LLP AS SARBANES-OXLEY, VALUATION, AND TAX SERVICES PROVIDERS TO DEBTORS, EFFECTIVE NUNC PRO TUNC TO OCTOBER 8, 2005

### ("ERNST & YOUNG RETENTION ORDER")

Upon the application dated November 28, 2005 (the "Application") of Delphi

Corporation and certain of its domestic subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order (the

"Order") under 11 U.S.C. §§ 327(a), 328(a), and 1107(b) and Fed. R. Bankr. P. 2014 authorizing

the employment and retention of Ernst & Young LLP ("E&Y") as Sarbanes-Oxley, valuation,

and tax services providers to the Debtors, effective nunc pro tunc to October 8, 2005; and upon

the Affidavit of Randall J. Miller, sworn to November 28, 2005, in support of the Application;

and upon the record of the hearing held on the Application; and this Court having determined

that the relief requested in the Application is in the best interests of the Debtors, their estates,

their creditors, and other parties-in-interest; and it appearing that proper and adequate notice of

the Application has been given and that no other or further notice is necessary; and after due

deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Application is GRANTED on a final basis.

1

2.    Subject to the terms of this Order, the Debtors' employment of E&Y as one of

their Sarbanes-Oxley, valuation, and tax services providers pursuant to the terms and conditions

of the Application is approved pursuant to sections 327(a), 328(a), and 1107(b) of title 11 of the

United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code") and Rule

2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), effective <u>nunc pro</u>

<u>tunc</u> to October 8, 2005.

3.    E&Y shall be compensated in accordance with the standards and procedures

set forth in sections 330 and 331 of the Bankruptcy Code and all applicable Bankruptcy Rules,

Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New

York (the "Local Rules"), guidelines established by the Office of the United States Trustee, and

further orders of this Court.

4.    All requests of E&Y for payment of indemnity pursuant to the engagement

letter attached to the Application as <u>Exhibit A</u> (the "Sarbanes-Oxley Engagement Letter"), the

engagement letter attached to the Application as <u>Exhibit B</u> (the "Valuation Engagement Letter"),

and the engagement letter attached to the Application as <u>Exhibit D</u> (the "Delphi Tax Engagement

Letter," and together with the Sarbanes-Oxley Engagement Letter, the Valuation Engagement

Letter, and the Skadden tax engagement letter attached to the Application as <u>Exhibit C</u>, the

"Engagement Letters") shall be made by means of an application (interim or final as the case

may be) and shall be subject to review by the Court to ensure that payment of such indemnity

conforms to the terms of the Sarbanes-Oxley, Valuation, and Delphi Tax Engagement Letters

and is reasonable based upon the circumstances of the litigation or settlement in respect of which

indemnity is sought, <u>provided</u>, <u>however</u>, that in no event shall E&Y be indemnified for its own

bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

5.     That in no event shall E&Y be indemnified for a claim that a court determines by final order to have arisen out of E&Y's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

6.     That in the event that E&Y seeks reimbursement for attorneys' fees from the Debtors pursuant to the Sarbanes-Oxley, Valuation, or Delphi Tax Engagement Letters, the invoices and supporting time records from such attorneys shall be included in E&Y's own applications (both interim and final) and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy Court under the standards of sections 330 and 331 of the Bankruptcy Code without regard to whether such attorney has been retained under section 327 of the Bankruptcy Code and without regard to whether such attorneys' services satisfy section 330(a)(3)(C) of the Bankruptcy Code.

7.     To the extent this Order is inconsistent with the Engagement Letters, this Order shall govern.

8.     With the exception of E&Y, the Ernst & Young Global Limited member firms providing services under the Engagement Letters shall be permitted to use category codes to describe the time spent on services rendered, rather than the more detailed descriptions usually required for fee applications.

9.     Any outstanding balance or balances owed by the Debtors to E&Y for prepetition services rendered and expenses incurred by E&Y that are not satisfied by overpayments made by the Debtors to E&Y, on or before July 1, 2005, hereby are deemed waived, and E&Y shall not have a claim for any such outstanding balance or balances.

10.    Any fees and expenses incurred by E&Y in the course of its retention will be compensated in accordance with the fee guidelines established by this Court and the Office of the United States Trustee.

11.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

12.    The requirement under Local Rule 9013-1(b) for the service and filing of a separate memorandum of law is deemed satisfied by the Application.

Dated:    New York, New York
          December __, 2005


_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT F

**Objections Due: December 8, 2005 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
            In re                                         :      Chapter 11
                                                          :
    DELPHI CORPORATION, et al.,                           :      Case No. 05- 44481 (RDD)
                                                          :
                               Debtors.                   :      (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF PRESENTMENT OF ORDER UNDER 11 U.S.C. §§ 327(a), 328(a),
AND 1107 (b) AUTHORIZING EMPLOYMENT AND RETENTION OF ERNST &
YOUNG LLP AS SARBANES-OXLEY, VALUATION, AND TAX SERVICES
<u>PROVIDERS TO DEBTORS, EFFECTIVE NUNC PRO TUNC TO OCTOBER 8, 2005</u>

PLEASE TAKE NOTICE that on November 28, 2005, Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in

the above-captioned cases filed the application (the "Application") for an order (the

"Order") under 11 U.S.C. §§ 327(a), 328(a), and 1107(b) and Fed. R. Bankr. P. 2014

authorizing the employment and retention of Ernst & Young LLP ("E&Y") as

Sarbanes-Oxley, valuation, and tax services providers to the Debtors, effective <u>nunc</u> <u>pro</u>

<u>tunc</u> to October 8, 2005.

PLEASE TAKE FURTHER NOTICE that if timely written objections are

filed, served, and received in accordance with this notice, a hearing to consider approval of

the Application will be held on January 5, 2006, at 10:00 a.m. (Prevailing Eastern Time)

(the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for

the Southern District of New York, One Bowling Green, Room 610, New York, New York,

10004.

PLEASE TAKE FURTHER NOTICE that if no written objections to the

Application are timely filed, served, and received, the Order filed with the Application and

attached to this notice as <u>Exhibit A</u> will be submitted for signature to the Honorable Robert

D. Drain, United States Bankruptcy Court for the Southern District of New York, One

Bowling Green, Room 610, New York New York 10004 on December 8, 2005.

PLEASE TAKE FURTHER NOTICE that objections, if any, to approval of

the Application (a) must be in writing, (b) must conform to the Federal Rules of Bank-

2

ruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and

the Order Under 11 U.S.C. §§ 102 (1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case

Management, And Administrative Procedures, And (III) Scheduling An Initial Case

Conference In Accordance With Local Bankr. R. 1007-2(e) (the "Case Management

Order") (Docket No. 245), (c) must be filed with the Bankruptcy Court in accordance with

General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing

system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk

(preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-

based word processing format), (d) must be submitted in hard-copy form directly to the

chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) and

must be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

(Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher &

Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm.

Butler, Jr.), (iii) counsel for the agent under the Debtors' prepetition credit facility,

Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017

(Att'n: Kenneth S. Ziman), (iv) counsel for the agent under the postpetition credit facility,

Davis Polk & Wardell, 450 Lexington Avenue, New York, New York 10017 (Att'n:

Marlane Melican), (v) counsel for the Official Committee of Unsecured Creditors, Latham

& Watkins, 885 Third Avenue, New York, New York 10022 (Att'n: Mark A. Broude), and

(vi) the Office of the United States Trustee for the Southern District of New York, 33

Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard), in

each case so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time)** on

**December 8, 2005** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made in writing, in accordance with the Case Management Order, and timely filed and received by the Objection Deadline will be considered by the Bankruptcy Court at the Hearing, and that if no objections to the Application are timely filed and served the Bankruptcy Court may enter an order granting the Application **without further notice**.

Dated: New York, New York
      November 28, 2005

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: /s Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

5

# EXHIBIT G

Special Parties - Overnight Mail

| Company | Contact | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| Akin Gump Strauss Hauer and Feld | Peter J Gurfein Pg 5770 | 2029 Century Pk East Ste 2400 | | Los Angeles | CA | 90067-3012 |
| Barnes and Thornburg Llp | John T Gregg | 300 Ottawa Ave Nw Ste 500 | | Grand Rapids | MI | 49503 |
| Blank Rome Llp | Marc E Richards Mer 9465 | The Chrysler Building | | New York | NY | 10174 |
| Bodman Llp | Ralph E Mcdowell | 100 Renaissance Ctr 34th Fl | | Detroit | MI | 48243 |
| Cahill Gordon and Reindel Llp | Kevin J Burke Kb4560 | 80 Pine St | | New York | NY | 10005 |
| Calinoff And Katz Llp | | Two Grand Central Tower | 140 East 45th St 17th Fl | New York | NY | 10017 |
| Curtin and Heefner Llp | Robert Szwajkos And Daniel P Mazo | 250 N Pennsylvania Ave | | Morrisville | PA | 19067 |
| Godfrey and Kahn Sc | Marie L Nienhuis Mn 2145 | 780 N Water St | | Milwaukee | WI | 53202 |
| Greensfelder Hemker and Gale Pc | Cherie Macdonald Esq | 12 Wolf Creek Dr Ste 100 | | Swansea | IL | 62226 |
| Hahn Loeser and Parks Llp | Daniel A Demarco Michael Shuster | 3300 Bp Tower | 200 Public Square | Cleveland | OH | 44114-2301 |
| Harris D Leinwand Hl 4419 | | 350 Fifth Ave Ste 2418 | | New York | NY | 10118 |
| Hodgsen Ross Llp | Stephen H Gross Stephen L Yonaty | Carnegie Hall Tower | 152 W 157th St 35th Fl | New York | NY | 10019 |
| Honigman Miller Schwartz And Cohn | Donald F Baty Jr And E Todd Sable | 2290 First National Building | 660 Woodward Ave | Detroit | MI | 48226-3506 |
| Honigman Miller Schwartz And Cohn | Judy B Calton P38733 | 2290 First National Building | 660 Woodward Ave | Detroit | MI | 48226-3506 |
| Jenner and Block Llp | Ronald R Peterson Andrew S Nicoll | One Ibm Plaza | | Chicago | IL | 60611 |
| Kieselstein Lawfirm Pllc | Steve Kieselstein Sk 3658 | 43 British American Blvd | | Latham | NY | 12110 |
| Kirkpatrick Lockhart Nicholson Grah | Edward M Fox Ef1619 | 599 Lexington Ave | | New York | NY | 10022 |
| Klestadt and Winters Llp | Tracy L Klestadt Sean C Southard | 292 Madison Ave 17th Fl | | New York | NY | 10017-6314 |
| Latham and Watkins Llp | Robert Rosenberg M Seider M Broude | 885 Third Ave Ste 1000 | | New York | NY | 10022 |
| Miles and Stockbridge Pc | Thomas D Renda | 10 Light St | | Baltimore | MD | 21202 |
| Miller Canfield Paddock And Stone | Timothy A Fusco | 150 West Jefferson Ste 2500 | | Detroit | MI | 48226 |
| Mintz Levin Cohn Ferris Glovsky | Michael L Schein Esq Ms 0241 | 666 Third Ave | | New York | NY | 10017 |
| Moritt Hock Hamroff and Horowitz | Leslie A Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 |
| Munsch Hardt Kopf And Harr Pc | R Urbanik J Wielebinski D Rukavina | 3800 Lincoln Plaza | 500 N Akard St | Dallas | TX | 75201 |
| Nelson Mullins Riley Scarborough | George B Cauthen | Meridian Bldg 17th Fl 1320 Main St | Post Office Box 11070 29211 | Columbia | SC | 29201 |
| Norris Mclaughlin and Marcus Pa | Elizabeth L Abdelmasieh | 721 Route 202 206 | PO Box 1018 | Somerville | NJ | 08876-1018 |
| Pepper Hamilton Llp | Henry D Jaffe James C Carignan | Hercules Plaza 1313 Market St | Ste 5100 PO Box 1709 | Wilmington | DE | 19899-1709 |
| Pepper Hamilton Llp | Anne M Aaranson | 3000 Two Logan Square | 18th And Arch Sts | Philadelphia | PA | 19103 |
| Plunkett and Cooney Pc | Douglas C Bernstein Mi P 33833 | 38505 Woodward Ave | Ste 2000 | Bloomfield Hills | MI | 48304 |
| Porzio Bromberg and Newman Pc | John S Mairo Jm 0670 Brett S Moore | 100 Southgate Pkwy | | Morristown | NJ | 07960 |
| Porzio Bromberg and Newman Pc | John S Mairo Jm 0670 Brett S Moore | 156 West 56th St | | New York | NY | 10019 |
| Quarles and Brady Streich Lang Llp | John Dawson John Harris S Goldberg | Renaissance One | 2 North Central | Phoenix | AZ | 85004-2391 |
| Sanford P Rosen and Associates Pc | Sanford P Rosen Kenneth M Lewis | 747 Third Ave | | New York | NY | 10017-2803 |
| Schafer And Weiner Pllc | Daniel J Weiner Ryan D Heilman | 40950 Woodward Ave Ste 100 | | Bloomfield Hills | MI | 48304 |
| Seyfarth Shaw Llp | Robert W Dremluk | 1270 Ave Of The Americas Ste 2500 | | New York | NY | 10020 |
| Seyfarth Shaw Llp | Paul M Baisier | 1545 Peachtree St Ste 700 | | Atlanta | GA | 30309 |
| Seyfarth Shaw Llp | William J Hanlon Esq Wh 8128 | World Trade Ctr East | Two Seaport Ln Ste 300 | Boston | MA | 02110 |
| Smith Gambrell and Russell Llp | | Ste 3100 Promenade Ii | 1230 Peachtree St Ne | Atlanta | GA | 30308 |
| Sonnenschein Nath and Rosenthal Llp | D F Yates Jo Christine Reed | 1221 Ave Of The Americas | 24th Fl | New York | NY | 10020 |
| Sonnenschein Nath and Rosenthal Llp | Robert E Richards | 8000 Sears Tower | 233 South Wacker Dr | Chicago | IL | 60606 |
| Taft Stettinius and Hollister Llp | William Stavole Richard L Ferrell | 425 Walnut St Ste 1800 | | Cincinnati | OH | 45240 |
| Warner Norcross and Judd Llp | | 900 Fifth Third Ctr | 111 Lyon St Nw | Grand Rapids | MI | 49503-2487 |