**Hearing Date: November 29, 2005**
**Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :
    In re                          :        Chapter 11
                                :
DELPHI CORPORATION, et al.,    :        Case No. 05-44481 (RDD)
                                :
              Debtors.      :        (Jointly Administered)
                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

<u>DEBTORS' OMNIBUS OBJECTION TO MOTIONS SEEKING DEADLINE
FOR DEBTORS TO ASSUME OR REJECT CERTAIN EXECUTORY CONTRACTS</u>

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the

"Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively,

the "Debtors"), hereby submit this objection (the "Omnibus Objection") to the following motions: (i) Motion for Order Fixing a Deadline for the Debtors to Assume or Reject an Executory Contract with Pillarhouse (U.S.A.), Inc. (the "Pillarhouse Motion" filed by "Pillarhouse"), (ii) Motion for Order Fixing Deadline for Debtors to Assume or Reject Executory Contract with Russell Reynolds Associates, Inc. (the "RRA Motion" filed by "RRA"), (iii) Amended Motion for Order under 11 U.S.C. § 365(d)(2) Directing the Debtors to Determine within 30 Days Whether to Assume or Reject Their Executory Contracts with Sensus Precision Die Casting, Inc. (the "Sensus Motion" filed by "Sensus"), and (iv) Motion for Order Fixing a Deadline for the Debtors to Assume or Reject an Executory Contract with Solectron Manufactura De Mexico, S.A. (the "Solectron Motion" filed by "Solectron," and the Solectron Motion, together with the Sensus Motion, the Pillarhouse Motion, and the RRA Motion, collectively, the "Motions"). In support of this Objection, the Debtors respectfully represent as follows:[1]

Preliminary Statement

1.    Pillarhouse, RRA, Sensus, and Solectron (the "Movants") wish to compel the Debtors to make an immediate decision regarding the assumption or rejection of their respective contracts because the Movants want their prepetition claims converted into postpetition claims. The relief requested by the Movants, coming merely six weeks after the commencement of one of the largest manufacturing chapter 11 cases in history, is prematurely sought because one of the contracts at issue is non-core and the remaining contracts have terms that extend well into or past calendar year 2006. It is unreasonable for the Debtors to make such important decisions this early in their chapter 11 cases. Indeed, absent extraordinary

---

[1]    Capitalized terms used but not defined herein have the meanings ascribed to them in the Motions.

circumstances, forcing the Debtors to decide now —or even six months from now— whether to assume or reject the Movants' non-expiring executory contracts could force the Debtors to assume substantial, long-term liabilities under the executory contracts or forfeit benefits associated with such contracts to the detriment of the Debtors' ability to operate and preserve the going-concern value of their business for the benefit of all creditors and other parties-in-interest.

2. Indeed, the Debtors have only recently commenced a restructuring effort that they anticipate will take approximately 18 months to complete. They are parties to tens of thousands of executory contracts and unexpired leases which collectively involve billions of dollars of liabilities and which will take many months to examine. The Debtors are currently reviewing 11,000 contracts that are expiring in the near term, many of which are necessary to the continued supply of product to the Debtors customers. Indeed, to protect the Debtors' supply chain, the Debtors recently filed a Motion for an Order under 11 U.S.C. §§ 363(b) and 365(a) and Fed. R. Bankr. P. 9019 Approving Procedures to Assume Certain Amended and Restated Sole Source Supplier Agreements (the "Assumption Motion"). By the Assumption Motion, the Debtors are seeking to assume certain expiring contracts of sole source suppliers. There are numerous issues associated with the expiring supply agreements that could have an adverse effect on the Debtors businesses if not addressed. Accordingly, in furtherance of their efforts to stabilize their businesses, the Debtors are negotiating with these suppliers and analyzing the propriety of assuming such contracts.[2]

---

[2] In this context, the Debtors do not believe that the Movants' contracts fit within the parameters of the Assumption Motion. The Debtors need to focus their attention on the expiring contracts and the Movants' contracts will be reviewed with all other non-expiring executory contracts in these chapter 11 cases in an attempt to determine if they fit within the Debtors' reorganization strategy. In the future, if any of the Movants'

*(cont'd)*

3

3. In addition, the Debtors are currently in the midst of negotiations with their unions to address numerous issues regarding increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations. Finally, the Debtors intend to use the chapter 11 process to achieve competitiveness for Delphi's core U.S. operations by realigning Delphi's global product portfolio and manufacturing footprint to preserve the Debtors' core businesses. The Debtors need to focus on these significant tasks and develop a comprehensive restructuring plan for their business and the several hundred thousand creditors in these cases. The Debtors simply cannot and should not be forced into preemptory contract or lease assumption or rejection decisions by the Movants.

4. After review of each motion, however, the Debtors assert that there is no basis to force assumption or rejection of the Movants' contracts at this time. The following is a summary of each of the four motions and the rationale asserted by each of the Movants:

  a. <u>The Pillarhouse Motion</u>. Pillarhouse seeks an order fixing an early deadline for the Debtors to assume or reject a purchase order for the fabrication and installation of two pieces of equipment. This equipment was delivered to the Debtors on October 5, 2005. Pillarhouse must now install the equipment, for which the underlying contract provides that it will be compensated. Nevertheless, Pillarhouse is refusing to perform the installation absent assumption of its contract.

  b. <u>The RRA Motion</u>. RRA seeks an order fixing the deadline within which Delphi must assume or reject an employment recruiting contract with Delphi. Pursuant to the agreement, RRA was to receive one-third of the total compensation paid to the candidate hired. Regardless of outcome, however, RRA was to receive a minimum fee of $106,300 to be paid in three monthly retainers, all of which were billed to Delphi and earned by RRA prepetition. Although postpetition fees for successful placement of an employee postpetition may warrant an administrative expense, RRA is seeking to be paid its minimum fee today despite the fact that such sum was earned prior to the Petition Date.

_____
*(cont'd from previous page)*
    contracts comes within the bounds of the Assumption Motion, the Debtors will consider whether such contracts merit assumption.

    c.    <u>The Sensus Motion</u>.  Sensus seeks an order requiring the Debtors to assume or reject the contracts with Sensus within 30 days.  There are several contracts at issue between Sensus and Delphi related to various long term obligations by which Sensus is required to provide goods to the Debtors.  Sensus argues that the relief should be granted because Sensus will be seriously harmed without assumption, despite the fact that the Debtors continue to make payments on account of their postpetition obligations under the contract.  Sensus also argues that its agreements should be assumed because they are of vital importance to the Debtors.  Despite Sensus' assertions, such decisions should be left to the Debtors' business judgment after an assessment of all executory contracts.

    d.    <u>The Solectron Motion</u>.  Solectron seeks an order setting an early deadline fixing the time by which the Debtors must assume or reject the executory contract between Solectron and the Debtors.  The contract at issue is a long term supply and manufacturing contract pursuant to which the Debtors purchase certain goods, components, and products.  Solectron's sole argument is that without assumption or rejection now, it will be forced to purchase additional materials and reserve manufacturing space to comply with the terms of the contract.

5.    None of the contracts above is expiring in the near term.  The Debtors are current on their postpetition obligations under the contracts set forth in the Motions.  Assumption of those contracts now will only impose an unnecessary financial burden on the estates.  Movants will not be harmed by continuation of the status quo, especially given the Debtors' significant financial and operating resources as well as various orders by this Court protecting creditors rights on a postpetition basis.  The Motions lack merit and thus should be denied.

Argument

6.    The Bankruptcy Code does not require a debtor to decide whether to assume or reject an executory contract until the time of plan confirmation.  <u>See</u> 11 U.S.C. § 365(d)(2). A non-debtor party to an executory contract can attempt to compel the debtor into assuming or rejecting before plan confirmation upon motion to the court.  <u>See id</u>.  In considering such a motion, however, courts must balance the interests of the debtor against those of the non-debtor party.  <u>See</u>, <u>e.g.</u>, <u>In re Midtown Skating Corp.</u>, 3 B.R. 194, 198 (Bankr. S.D.N.Y. 1980);

5

In re Resource Tech. Corp., 254 B.R. 215, 227 (Bankr. N.D. Ill. 2000); In re Dunes Casino Hotel, 63 B.R. 939 (D.N.J. 1986); In re GHR Energy Corp., 41 B.R. 668, 676 (Bankr. D. Mass. 1984).

       7.      Courts considering such demands by non-debtor parties rarely force a debtor into prematurely assuming or rejecting a contract. The reason for courts' reluctance to force early assumption or rejection is that the "interests of the creditors collectively and the bankrupt estate as a whole will not yield easily to the convenience or advantage of one creditor." See Public Svc. Co. of New Hampshire v. New Hampshire Elec. Coop., Inc. (In re Public Svc. Co. of New Hampshire ), 884 F.2d 11, 14-15 (1st Cir. 1989).

> Permitting the debtor to make its decision as late as the plan confirmation date enables the debtor to carefully evaluate the possible benefits and burdens of an [executory contract]. It is vitally important to all interested parties that the debtor make a prudent assumption or rejection decision . . .

In re Wheeling-Pittsburgh Steel Corp., 54 B.R. 385, 388 (Bankr. W.D.Pa. 1985). See also In re Physician Health Corporation, et al., 262 B.R. 290, 295 (D. Del. 2001) (denying motion to compel assumption or rejection of executory contract when bankruptcy case was only five months old); Hiser v. Blue Cross of Greater Philadelphia (In re St. Mary Hosp.), 89 B.R. 503, 513-14 (Bankr. E.D.Pa. 1988) ("the interests of the Debtor here in denying a precipitous assumption or rejection appear to us much greater than the interests of HHS in forcing a prompt resolution"). Accordingly, under most circumstances, it is the clear policy of the Bankruptcy Code to provide the debtor with breathing space following the filing of a bankruptcy petition, continuing until the confirmation of a plan, in which to decide whether to assume or reject an executory contract. In re Enron Corp., 279 B.R. 695, 702 (Bankr. S.D.N.Y. 2002) (citation omitted).

8.      Although the breathing space afforded a debtor is not without limits, Enron, 279 B.R. at 702, the law requires, in all circumstances, that a debtor be given a "reasonable time" to decide whether to assume or reject. See Philadelphia Co. v. Dipple, 312 U.S. 168, 174 (1941); Enron, 279 B.R. at 702. The determination of what is a reasonable time is within the Bankruptcy Court's discretion in light of the circumstances of each case. In determining what constitutes a reasonable time, courts in this circuit have considered several factors, including: (1) the nature of the interests at stake; (2) the balance of hurt to the litigants; (3) the good to be achieved; (4) the safeguards afforded to the litigants; (5) whether the debtor's bankruptcy case is complex; (6) the debtor's failure or ability to satisfy post-petition obligations; (7) the damage that the non-debtor will suffer beyond the compensation available under the Bankruptcy Code; (8) the importance of the contract to the debtor's business and reorganization; (9) whether the debtor has sufficient time to appraise its financial situation and formulate a plan; (10) whether there is a need for judicial determination as to whether an executory contract exists; (11) whether the period in which the debtor has the exclusive right to file a plan of reorganization has expired; and (12) whether the time afforded is consistent with the rehabilitative purpose of chapter 11. See, e.g., In re Burger Boys, Inc., 94 F.3d 755, 761 (2d Cir. 1982); Theatre Holding Corp. v. Mauro, 681 F.2d at 102, 106 (2d Cir. 1982); In re Adelphia Communications Corp., 291 B.R. 283, 293 (Bankr. S.D.N.Y. 2003); In re Enron Corp., 279 B.R. 695, 702-03 (Bankr. S.D.N.Y. 2002); In re Teligent, Inc., 268 B.R. 723, 738-39 (Bankr. S.D.N.Y. 2001); In re Beker Indus. Corp., 64 B.R. 890, 896 (Bankr. S.D.N.Y. 1986).

9.      It is clear from the holdings in these cases that the moving parties must clear a high hurdle to establish an entitlement to compel the Debtors to assume a non-expiring executory contract now. The Movants fall well short of the mark.

7

A. The Purpose Of Chapter 11 Warrants Denial Of The Motions.

10. Courts have held that a determination of what is a reasonable time within which a debtor should assume or reject an executory contract should be interpreted "with the broad purpose of chapter 11, which is 'to permit the rehabilitation of debtors.'" In re Teligent Inc., 268 B.R. at 738-39 (citing NLRB v. Bildisco & Bildisco, 465 U.S. 513, 527 (1984)); see also In re Midtown Skating Corp., 3 B.R. 194, 198 (Bankr. S.D.N.Y. 1980). The Court of Appeals for the Second Circuit has recognized that a court may delay the decision on whether to assume or reject a lease until confirmation as a matter of course because the debtor's rehabilitation efforts will be clear at confirmation. See Nostas Assocs. v. Costich (In re Klein Sleep Products, Inc.), 78 F.3d 18, 29 (2d Cir. 1996); see also In re Crystal Apparel, Inc., 220 B.R. 816, 834 (Bankr. S.D.N.Y. 1998). ("[t]he assumption of an executory contract early in a Chapter 11 case is particularly disfavored as it is difficult to predict the course the reorganization will take." (citing Klein Sleep, 78 F.3d at 29)).

11. The decision whether to assume or reject executory contracts, such as those covered in the Motions, is important to the Debtors reorganization efforts. The Debtors intend to use the chapter 11 process to achieve competitiveness for Delphi's core U.S. operations by realigning Delphi's global product portfolio and manufacturing footprint to preserve the Debtors' core businesses. This process will have an impact on the executory contracts that the Debtors ultimately decide to assume or reject. Additionally, if any or all of the Motions were granted, the Debtors and their estates will be significantly and pointlessly harmed because they would be forced to decide now whether to assume the various non-expiring contracts. Assumption not only means payment of the moving parties' prepetition unsecured claims, it also means elevation to administrative expense priority status of all other obligations that may arise

8

under the contracts postpetition. More importantly, an order granting the Motions would force the Debtors into devoting resources to analyzing these few non-expiring contracts in a hurried fashion at a time when the Debtors' resources are already stretched as they examine numerous other aspects of their business while attempting to restructure their affairs. Requiring the Debtors to make determinations on assuming or rejecting non-expiring executory contracts at this time is not in keeping with the protections that chapter 11 affords.

B.   The Moving Parties Will Not Suffer Any Harm Beyond Compensation Available Under The Bankruptcy Code.

12.   There is no harm that will befall the moving parties if the Debtors are allowed to retain their statutory right to wait until plan confirmation to decide whether to assume or reject the contracts. The Debtors are performing all of their postpetition obligations under the contracts which are the subject of the Motions. Moreover, the Debtors have significant resources, including access to a substantial DIP credit facility, which provide adequate assurance to all of their postpetition suppliers and vendors that such suppliers and vendors will be paid their postpetition bills in a timely fashion. See, e.g., Transcript of Oct. 11, 2005 Hearing at p. 107 ("I am now convinced that the facility adequately satisfies the debtors' needs and provides them with sufficient and abundant availability to conduct their bankruptcy case; and, more importantly, to conduct their businesses in the ordinary course."). Granting any or all of the Motions will result in countless motions for the same relief by all similarly situated creditors, which could cost the Debtors hundreds of millions of dollars in cure costs and jeopardize the Debtors' reorganization efforts.

13.   Indeed, Sensus is the only moving party to assert that the Debtors have not paid in full on a postpetition basis. This argument is not supported by the facts. The alleged underpayment relates to the price index used by the parties for pricing adjustments. In its motion,

9

Sensus claims that the purchase orders in question all provide that the price adjustments will be made in accordance with a standard known as "'Metals Week,' under 'Daily Prices'" and that the Debtors have been improperly using the LME NASSAC index to determine price adjustments. These assertions, however, directly contradict the purchase orders to which Sensus refers and has attached as Exhibits D, E, and F to its amended motion. The face of each purchase order clearly states that "Oct 2005 Price Changes Per Monthly Aluminum Escalation /De-Escalation Index used is LME NASSAC." Thus Sensus' argument is without merit and should be denied. Moreover, to the extent that the Debtors are mistaken as to the use of the LME NASSAC pricing index, despite the clear statement on the face of the purchase orders, such a mistake would constitute a bona fide business dispute, not justification for the debtors to assume millions of dollars of liabilities on an expedited basis.

C.  <u>The Debtors Have Not Had Sufficient Time To Appraise Their Financial Situation And Formulate A Plan.</u>

14.  Prior to making critical assumption or rejection decisions, a debtor must be permitted "the leeway needed to appraise its financial situation and the potential value of its assets in terms of the formulation of a plan." <u>Theatre Holding</u>, 681 F.2d at 104; <u>see</u> <u>also</u> <u>Teligent</u>, 268 B.R. at 739. As stated above, the Debtors are only six weeks into a restructuring effort that they anticipate will take approximately 18 months to complete. At this point, however, the Debtors energies are focused on stabilizing their business and reviewing expiring executory contracts. The Debtors have not had time to make critical decisions regarding the assumption or rejection of their numerous executory contracts. The Debtors need to focus on developing a comprehensive restructuring plan for their business and the several hundred thousand creditors in these cases. They simply cannot and should not be forced into preemptory contract or lease assumption and rejection decisions for non-expiring contracts.

05-44481-rdd    Doc 1484    Filed 12/12/05    Entered 12/12/05 10:12:19    Main Document
                                 Pg 11 of 13

D.  **The Complexity And Size Of The Debtors' Chapter 11 Filings Warrant A Considerable Period In Which To Evaluate The Consequences Associated With Assumption Or Rejection Of Executory Contracts.**

15. The complexity and size of these cases also warrants denial of the Motions at this early stage. The complexity of the issues that the Debtors face in stabilizing their businesses and attempting to restructure their affairs is magnified by the size of these cases, currently among the largest pending before any bankruptcy court in the United States. In summary:

   (a) Forty-two affiliated entities sought chapter 11 relief.

   (b) The Debtors employ approximately 50,600 people in the U.S. at approximately 44 manufacturing sites and 13 technical centers. Ninety-six percent of the company's 34,750 hourly employees are represented by approximately 49 different international and local unions under various CBAs. The company's foreign entities employ more than 134,000 people supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

   (c) The Debtors' global 2004 revenues were approximately $28.6 billion, and global assets as of August 31, 2005 were approximately $17.1 billion.

   (d) The Debtors supply products to nearly every major global automotive original equipment manufacturer, with 2004 sales to the Debtors' former parent, General Motors Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

16. Courts have recognized that complex cases require a more careful and extended consideration by the debtor of whether to assume or reject executory contracts. See Dallas-Fort Worth Reg'l Airport Bd. v. Braniff Airways, Inc., 26 B.R. 628, 636 (N.D. Tex. 1982) ("[i]t would have been quite unreasonable, in this highly complex bankruptcy proceeding, to have required such a decision within two months of the date the petition in bankruptcy was filed.").

11

Conclusion

17.   Based upon the foregoing, the interests clearly weigh in favor of denying the Motions and allowing the status quo to continue so that the Debtors can use the time between now and plan confirmation to determine whether to assume or reject their non-expiring executory contracts.  The Debtors and the estates should be afforded the breathing space needed to formulate a plan of reorganization.  The Motions should therefore be denied.

Notice

18.   Notice of this Objection has been provided in accordance with the Order under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing (i) Omnibus Hearing Dates, (ii) Certain Notice, Case Management, and Administrative Procedures, and (iii) Scheduling an Initial Case Conference in Accordance with Local Bankr. R. 1007-2(e), which was entered by this Court on October 14, 2005 (Docket No. 245).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

19.   Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, the Debtors respectfully request that the court enter an order (i) denying the Motions and (ii) granting the Debtors such other and further relief as is just.

Dated: New York, New York
November 22, 2005

        SKADDEN, ARPS, SLATE, MEAGHER
         & FLOM LLP

        By: /s/ John Wm. Butler, Jr.
           John Wm. Butler, Jr. (JB 4711)
           John K. Lyons (JL 4951)
           Ron E. Meisler (RM 3026)
        333 West Wacker Drive, Suite 2100
        Chicago, Illinois  60606
        (312) 407-0700

        - and -

        By: /s/ Kayalyn A. Marafioti
           Kayalyn A. Marafioti (KM 9632)
           Thomas J. Matz (TM 5986)
        Four Times Square
        New York, New York  10036
        (212) 735-3000

        Attorneys for Delphi Corporation, et al.,
        Debtors and Debtors-in-Possession