UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                                :
    In re                        :    Chapter 11
                                                :
DELPHI CORPORATION et al.,                      :    Case No. 05-44481 (RDD)
                                                :
                            Debtors.    :    (Jointly Administered)
                                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER UNDER 11 U.S.C. §§ 363(b) AND 365(a)
AND FED. R. BANKR. P. 9019 APPROVING
PROCEDURES TO ASSUME CERTAIN AMENDED AND
RESTATED SOLE SOURCE SUPPLIER AGREEMENTS

("SUPPLIER AGREEMENT ASSUMPTION PROCEDURES ORDER")

Upon the motion, dated November 18, 2005 (the "Motion"), of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. §§ 363(b) and 365(a) and Fed. R. Bankr. P. 9019 approving procedures to assume, in connection with an extension and certain other contract provisions, certain agreements (the "Assumable Agreements"), pursuant to which the Debtors receive goods which the Debtors believe are critical to their on-going manufacturing operations (collectively, the "Goods"), with those of the Debtors' suppliers that are the sole source from which the Debtors can currently obtain sufficient quantities of the Goods to avoid interruptions of the Debtors' manufacturing operations (the "Covered Suppliers"); and upon the statements in open Court of the Official Committee of Unsecured Creditors (the "Creditors' Committee") and Wilmington Trust Company, as indenture trustee ("WTC") for certain of the Debtors' senior notes and debentures that

their original objections to the Motion are satisfied and resolved by the terms of this Order; and upon the record of the hearing held on the Motion; and after due deliberation thereon,

IT IS HEREBY FOUND AND DETERMINED THAT:

The Debtors have demonstrated to the Court's satisfaction (and statements in support of the Motion filed with the Court or made at the hearing by various interested parties including the agent for the postpetition debtor-in-possession financing facility, the administrative agent under the Debtors' prepetition credit facility (the "Prepetition Agent"), and the Debtors' two largest union representing hourly workers also evidence) that continuation of the Debtors' supply chain without material interruption is of critical importance to the prospective reorganization enterprise value of the Debtors and to the Debtors' prospects for eventual confirmation of a plan of reorganization in these Cases. Based on the evidence introduced at the hearing, the Debtors have exercised reasonable business judgment in deciding to implement procedures by which the Debtors may, to the net benefit of all unsecured creditors and in the best interests of their estates, (i) assume the Assumable Agreements subject to the terms of this Order including the Required Minimum Provisions (as defined below) and (ii) negotiate new agreements; <u>provided</u> that the Debtors implement the procedures set forth herein conservatively in the light of a reasonable assessment of the Debtors' rights, including their rights under the automatic stay under section 362(a) of the Bankruptcy Code (<u>see</u> <u>e.g.</u>, <u>Sportfame of Ohio, Inc. v. Wilson Sporting Goods Co.</u>, 40 B.R. 47 (Bankr. N.D. Ohio 1984)) and their rights under chapter 5 of the Bankruptcy Code.

A. Subject to the execution of an Assumption Agreement (as defined below) or an agreement authorized under, and subject to, paragraph 6 hereof by a Covered Supplier in accordance with this Order, the Debtors' provision of Cure (as defined below) meets the requirements of section 365(b) of the Bankruptcy Code, and the Covered Suppliers are not entitled to any other or further relief under such section. Inasmuch as this Order requires a Covered Supplier to affirmatively execute and deliver to the Debtors an Assumption Agreement or an agreement authorized under, and subject to, paragraph 6 hereof in order for the Covered Supplier to both receive the benefits of and be subject to the terms of this Order, any cognizable interests of Covered Suppliers are fully protected and, accordingly, all objections of suppliers filed in opposition to the Motion, including as to Cure, are overruled to the extent not deemed otherwise settled or withdrawn.

B. Each Covered Supplier is adequately assured of the Debtors' future performance under the Agreements on account of, inter alia, this Court's approval on a final basis of the Debtors' debtor-in-possession financing facility pursuant to that certain Final Order Under 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing Debtors to Obtain Postpetition Financing, (II) to Utilize Cash Collateral, and (III) Granting Adequate Protection to Prepetition Secured Parties (Docket No. 797) and the Debtors need not provide any further assurance of future performance under section 365 of the Bankruptcy Code, any other provision of the Bankruptcy Code or any applicable non-bankruptcy law.

C. The relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest taken as a whole and,

3

accordingly, all other objections filed in opposition to the Motion are overruled to the extent not deemed otherwise settled or withdrawn.

      D.      Proper and adequate notice of the Motion has been given and no other or further notice is necessary.

      E.      Good and sufficient cause has been shown for the entry of this Order.

      THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

      1.    The Motion is GRANTED subject to the provisions of this Order.

      2.    The Debtors are hereby authorized, but not directed, to assume each Assumable Agreement pursuant to section 365(a) within a reasonable time prior to the date of expiration of such Assumable Agreement or as set forth in paragraph 4 below (the "Assumption Date"), without further order of this Court; <u>provided</u>, <u>however</u>, that the Debtors shall not assume (a) any agreements, or pay any prepetition claims related thereto, under which a supplier sold all or some of its prepetition claims arising under such otherwise Assumable Agreement to one or more third parties or (b) any agreements that are not related to the continuation of the supply chain at the Debtors' automotive manufacturing facilities (except with respect to agreements related to the Debtors' obligations to provide manufactured goods on account of direct and indirect government contracts).  The Debtors shall permit the Creditors' Committee to monitor the Debtors' conduct and performance with respect to this Order by providing continuing access to the global supply management group at the Company's worldwide headquarters, during regular

4

business hours and at all times when the global supply management group is addressing the contract assumption process, by a designated senior representative of the financial advisor retained by the Creditors' Committee (the "Designated Representative").  The Designated Representative shall maintain all information obtained from the Company for the Designated Representative's "professional eyes only" but shall be authorized to (i) discuss the details of such information with counsel to the Creditors' Committee and (ii) report the Designated Representative's professional evaluation of the Debtors' conduct and performance with respect to this Order to the Creditors' Committee but without disclosing information regarding any individual supplier to the Debtors or any individual supply agreement; provided, however, that in the event that the Designated Representative recommends to the Creditors' Committee that the Creditors' Committee should object to a "Non-Conforming Assumption" under paragraph 6 of this Order, the Creditors' Committee shall be authorized to review sufficient information about the individual supply agreement (but redacted so as not to disclose or make identifiable the identity of the individual supplier) as is reasonably necessary to permit the Creditors' Committee to make an informed decision regarding such recommendation.  In addition, the Creditors' Committee shall be entitled to receive periodic reports containing aggregate summary information without any individual supplier data.  The Debtors' financial advisors and the Creditors' Committee's financial advisors shall develop a methodology for the sharing of information that is reasonably acceptable to the Creditors' Committee's financial advisors, subject to the practical limitations of the Debtors' global supply management operations, in

5

accordance with the following general guidelines: (y) solely with respect to the assumption under this Order of Assumable Agreements of a Covered Supplier holding aggregate prepetition unsecured trade claims of $1 million or more according to the Debtors' books and records as of the date of commencement of these Chapter 11 Cases, the Debtors shall provide detailed factual information to the Designated Representative, who shall be provided the opportunity to attend meetings of the Debtors' global supply management approval panel with respect to such Assumable Agreements, and (z) with respect to all other Assumable Agreements that have been assumed by the Debtors pursuant to this Order, the Debtors shall provide the Designated Representative with summary information. Should the Creditors' Committee reasonably determine that the Debtors are not providing information required to be provided under this paragraph at the request of the Creditors' Committee, this Court shall conduct a chambers conference under section 105 of the Bankruptcy Code regarding such matters at the earliest opportunity available to this Court with representatives of the Debtors and the Creditors' Committee. If the information sharing issues presented by the Creditors' Committee cannot be reasonably resolved at the Chambers' conference and the Creditors' Committee so requests, the Court shall conduct an emergency hearing on at least three business days' notice to further consider such concerns and determine what relief, if any, should be granted.

       3.    Except as set forth in paragraph 6 hereof, the relevant Covered Supplier's entry into an agreement substantially in the form attached hereto as Exhibit 1 (an "Assumption Agreement") evidencing such Covered Supplier's

agreement to comply with all of the Required Minimum Provisions (as defined below) shall be a condition precedent to the Debtors' exercise of the authority to assume an Assumable Agreement. Upon a Covered Supplier's entry into such an Assumption Agreement and subject to the Debtors' compliance with paragraph 6 of this Order, the Debtors shall be authorized to assume the relevant Assumable Agreement or Agreements pursuant to this Order without further notice or further order of this Court.

    4. The Debtors are hereby authorized, but not directed, to assume each Assumable Agreement for which the relevant Covered Supplier counterparty thereto has accepted a new agreement or an extension of the term of its Assumable Agreement (either by written acknowledgement or through performance under the Assumable Agreement) (the "Previously Extended Agreements") since the Petition Date, pursuant to section 365(a) of the Bankruptcy Code; <u>provided</u> that the relevant Covered Supplier strictly complies with the notice provisions of paragraph 5 of this Order and executes an Assumption Agreement in accordance with the provisions of paragraph 10 of this Order.

    5. Covered Suppliers desiring to have their Previously Extended Agreements assumed in accordance with paragraph 4 of this Order shall be eligible to request to have their Previously Extended Agreement assumed, which request shall be made in writing so as to be actually received not later than 4:00 p.m. (prevailing Eastern time) on January 17, 2006, or as otherwise agreed by the Debtors in their sole discretion, by each of the following parties: (a) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098-2815 (Att'n: Karen J. Craft,

7

Esq. and Michael J. Orris); (b) Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., Esq. and John K. Lyons, Esq.); (c) Latham & Watkins LLP, 885 Third Avenue, Suite 1000, New York, New York 10022-4068 (Att'n: Robert J. Rosenberg, Esq.); and (d) Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n: Kenneth S. Ziman, Esq.). A Covered Supplier's failure to strictly comply with the provisions of this paragraph 5 shall constitute a full and final waiver of its right to seek assumption of the relevant Previously Extended Agreements pursuant to the terms of this Order.

6. Notwithstanding anything to the contrary contained herein, but subject to paragraph 10 hereof, should (a) a Covered Supplier and the Debtors agree to an agreement that deviates from any Required Minimum Provision (each such Covered Supplier, a "Non-Conforming Supplier"), (b) the Assumable Agreement or Agreements, as modified, include a waiver under section 547 of the Bankruptcy Code pursuant to paragraph 12 of this Order with respect to any payments made other than on account of the Assumable Agreement(s) that is or are part of the proposed Assumption, (c) the Assumable Agreement be classified by the Debtors as an indirect supply agreement under the Debtors' global supply management system, or (d) any Assumable Agreement with any affiliate or insider of the Debtors, then the Debtors shall not be authorized to assume such Non-Conforming Supplier's Assumable Agreement or Agreements (each, a "Non-Conforming Assumption") without the prior review and opportunity to object to the Non-Conforming Assumption by the Creditors' Committee, the Prepetition Agent, or order of this

8

Court.  Upon the Debtors' election to assume one or more Non-Conforming Assumptions, the Debtors shall provide written notice of such Non-Conforming Assumption to the Designated Representative and the Prepetition Agent; <u>provided</u>, <u>however</u>, that the Debtors shall be authorized to serve such written notice by facsimile or electronic mail.  The Creditors' Committee and the Prepetition Agent shall have five business days from the date of receipt of the notice of Non-Conforming Assumption in which to file with the Court and serve upon counsel to the Debtors any objection that it may have to such Non-Conforming Assumption; <u>provided</u>, <u>however</u>, that if neither the Creditors' Committee nor the Prepetition Agent timely files and serves an objection, the Creditors' Committee or the Prepetition Agent shall be deemed not to object to the Non-Conforming Assumption and such assumption shall become effective on the Assumption Date without further notice or further Court order.  If a timely objection is filed and served upon the Debtors' counsel, this Court would then schedule a hearing to consider the Non-Conforming Assumption as soon as practicable solely as to the timely filed objection.

      7.  Nothing contained in this Order shall limit the Debtors' right to separately move to assume an agreement.

      8.  The Debtors' authority to assume any Assumable Agreement shall be predicated upon the relevant Covered Supplier's agreement to the following modifications of the Assumable Agreement and other concessions (collectively, the "Required Minimum Provisions"):

a. The term of the relevant Assumable Agreement shall be extended for a period of two years from the date of expiration of the Assumable Agreement, unless the Debtors earlier reject or otherwise terminate the Assumable Agreement (the "Extension").

b. The relevant Assumable Agreement, and all of the terms thereof including Delphi's General Terms and Conditions (a copy of which is attached hereto as Exhibit 2), including, without limitation, the termination for convenience provisions contained in Section 11 thereof, are enforceable by the Debtors against such Covered Supplier.

c. The Covered Supplier shall supply the Debtors with the goods provided under the relevant Assumable Agreement during the term of the Extension on MNS-2 payment terms and those other terms and conditions as are embodied in the Assumable Agreement (including Delphi's General Terms and Conditions) and the most favorable trade terms, practices, and programs (including, without limitation, pricing terms) in effect between such supplier and the Debtors in the twelve months prior to the Petition Date consistent with and subject to current market conditions as of the Assumption Date (collectively, the "Customary Trade Terms").

d. The Covered Supplier is adequately assured of future performance for the term of the Extension and waives any right to seek further adequate assurance of future performance, whether pursuant to section 365(b)(1)(C) or otherwise.

  e. All costs payable under the terms of this Order related to cure of prepetition defaults under the assumed Assumable Agreements pursuant to section 365(b) of the Bankruptcy Code ("Cure") shall be paid in cash in six equal installments with the first installment paid as soon as reasonably practicable by the Debtors following the Assumption Date of an Assumable Agreement and the remaining five installments paid at the end of each of the five calendar quarters (<u>i.e.</u>, March 31, June 30, September 30, and December 31) beginning with the first calendar quarter following the calendar quarter in which the Assumption Date occurs; <u>provided</u>, <u>however</u>, that Cure shall not constitute an administrative expense pursuant to section 503 of the Bankruptcy Code.

  f. Cure, with respect to each assumed Assumable Agreement, shall be in an amount up to 75% of the amount of the outstanding prepetition liabilities of the Debtors under such Assumable Agreement as of the Assumption Date reflected in the Debtors' books and records or as otherwise reconciled by the parties; <u>provided</u>, <u>however</u>, that the Covered Supplier shall receive an allowed general unsecured claim against the relevant Debtor for the remaining percentage of the amount of the outstanding prepetition liabilities of the Debtors under such Assumable Agreement as of the Assumption Date reflected in the Debtors' books and records or as otherwise reconciled between the parties, which general unsecured claim shall be addressed pursuant to the terms of the plan of reorganization which is confirmed and consummated in the Debtors' chapter 11 cases.

g. In the event of any termination or subsequent rejection of any assumed Assumable Agreement, the Covered Supplier shall not receive any payments of Cure that are to be paid on or after the effective date of such termination or subsequent rejection (the "Remaining Cure"); <u>provided, however</u>, that, upon any termination or subsequent rejection of any assumed Assumable Agreement, the Covered Supplier shall receive an allowed general unsecured claim against the relevant Debtor for the amount of the Remaining Cure, which general unsecured claim shall be addressed pursuant to the terms of the plan of reorganization which is confirmed and consummated in the Debtors' chapter 11 cases; <u>provided further</u> that, upon any termination or any subsequent rejection of any assumed Assumable Agreement, the amount of damages which the Covered Supplier may assert against the relevant Debtor on account of such termination shall not exceed the amount of damages arising upon a termination for convenience in accordance with the terms of Section 11 of Delphi's General Terms and Conditions.

h. The Covered Supplier shall consent to each and every provision of paragraph 9 of this Order.

9. Should a Covered Supplier breach its obligations under an Assumption Agreement, such Covered Supplier shall be liable to the Debtors for any and all consequential damages resulting from such breach. Furthermore, upon written notice of such breach from the Debtors, the Covered Supplier shall not be entitled to further payments of Cure until further order of Court. In addition, in the

event the Court determines the Covered Supplier is in breach of the Assumption Agreement or the terms set forth in this Order, the Covered Supplier shall be required to immediately disgorge all payments of Cure received and the Debtors' avoidance rights under chapter 5 of the Bankruptcy Code and any related rights under section 502(d) of the Bankruptcy Code, to the extent waived in connection with the assumption of an Assumable Agreement, shall immediately be reinstated without further order of this Court. Finally, the assumption of a Covered Supplier's Assumable Agreement(s) pursuant to this Order shall constitute irrevocable consent of such Covered Supplier to the Debtors' ability to sue for injunctive relief in this Court to compel specific performance under the Assumable Agreement upon a breach under any Assumable Agreement or Assumption Agreement.

10. The Debtors are hereby authorized, but not directed, to provide an Assumption Agreement substantially in the form of the letter attached hereto as Exhibit 1 to each Covered Supplier whose Assumable Agreement(s) are sought to be assumed pursuant to the terms hereof along with a copy of the order granting this Motion; provided, however, that, notwithstanding anything to the contrary contained herein, a Covered Supplier shall be conclusively deemed to consent to and be irrevocably bound by the terms of this Order only in the event that the Covered Supplier actually executes and delivers to the Debtors an Assumption Agreement or an agreement authorized under, and subject to, paragraph 6 hereof.

11. The Debtors are hereby authorized to negotiate and enter into new postpetition agreements in the ordinary course of their businesses with their suppliers in their sole discretion, and the Debtors' entry into such new postpetition

supply agreements in the ordinary course of business shall not be subject to Court approval.  Nothing in this Order changes applicable non-bankruptcy law regarding contract formation.

    12.  To the extent that the Debtors reasonably determine, subject to the practical limitations of the Debtors' global supply management operations and in light of applicable time constraints, that such a waiver is necessary, among other factors, to obtain the agreement of a Covered Supplier to the Required Minimum Provisions or to any agreement pursuant to paragraph 6 of this Order, the Debtors are authorized but not directed to waive and release their rights, and the rights of their respective estates, under chapter 5 of the Bankruptcy Code (to the fullest extent that such waiver would otherwise have occurred by operation of law upon such assumption) to avoid payments made to a Covered Supplier with respect to the Assumable Agreements actually assumed on the Assumption Date.  In addition, the Debtors are hereby authorized but not directed, subject to the provisions of paragraph 6 hereof, to waive and release their rights, and the rights of their respective estates, under section 547 of the Bankruptcy Code to avoid payments made to a Covered Supplier in the 90 days prior to the Petition Date under later-expiring Assumable Agreements with such Covered Supplier, if, and only if, such Covered Supplier enters into Assumption Agreements with respect to each Assumable Agreement that the Debtors have elected at that time to assume pursuant to the terms of this Order.  For the avoidance of doubt, nothing contained in this Order shall constitute or authorize a waiver or release of any of the Debtors' or their estates' rights under section 547 of the Bankruptcy Code with respect to any such

amounts absent the Debtors' express written agreement to waive and release their rights and the rights of their estates under section 547 of the Bankruptcy Code, the Debtors' entry into which shall be authorized only in accordance with the terms of the immediately-preceding sentence.

13. Nothing in the Motion or this Order shall be construed as a waiver by any of the Debtors of their rights to contest any invoice of a Covered Supplier under applicable non-bankruptcy law.

14. The entry of this Order is final, except that the Creditors' Committee or the Prepetition Agent may file a supplemental objection as to the prospective application of this Order (a) on or after March 1, 2006 or (b) at any time prior to March 1, 2006 should the aggregate amount of Cure contractually committed to be paid by the Debtors pursuant to this Order exceed $100,000,000 exclusive of Cure amounts associated with Non-Conforming Assumptions (other than Non-Conforming Assumptions to which the Creditors' Committee or the Prepetition Agent objects in accordance with the review and objection process set forth in paragraph 6 of this Order and where the Court does not sustain the objection). In the event that the Creditors' Committee or Prepetition Agent intends to file a supplemental objection, such party shall be required to provide the Debtors with two business days' prior notice (which notice may be sent by facsimile or e-mail) (the "Objection Notice") of such intention and to meet and confer with the Debtors prior to the filing of such supplemental objection. Should a party file a supplemental objection, the Court shall schedule an emergency hearing on the supplemental objection as soon as reasonably practicable for the Court. From the

time that the Debtors receive the Objection Notice until the earlier of (x) the parties' consensual resolution of such supplemental objection or (y) the Court's disposition of the supplemental objection after notice and a hearing, the Debtors' authority to enter into binding commitments to pay additional Cure amounts under this Order shall be limited to an additional $25 million in the aggregate, exclusive of Cure amounts under this Order associated with any Conforming or Non-Conforming Assumptions which the Debtors, the Creditors' Committee, and the Prepetition Agent agree to exclude from this limitation.

15. To the extent that this Court subsequently authorizes the Debtors to implement a Key Executive Compensation Program ("KECP"), the KECP shall not incentivize its participants to agree to the payment of prepetition debt pursuant to this Order.

16. For the avoidance of doubt, the Debtors shall have the burden of proof at any hearing on an objection to a Non-Conforming Assumption filed in accordance with paragraph 6 of this Order or a supplemental objection filed in accordance with paragraph 14 of this Order, and no finding of fact or conclusion of law contained herein shall have res judicata or collateral estoppel effect as to the Creditors' Committee or the Prepetition Agent in any hearing on any such objection or any other hearing in these cases.

17. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

18. The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York

16

for the service and filing of a separate memorandum of law is deemed satisfied by

the Motion.

Dated:  New York, New York
December 12, 2005

    /s/ ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE