**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | **Chapter 11** |
| | : | |
| | : | **Case No. 05-44481 (RDD)** |
| **DELPHI CORPORATION, et al.** | : | |
| | : | **(Jointly Administered)** |
| **Debtors.** | : | |

------------------------------------------------------x

**SUPPLEMENTAL DECLARATION OF STEPHEN B. DARR IN SUPPORT OF**
**APPLICATION OF THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS OF DELPHI CORPORATION. ET AL. TO RETAIN**
**MESIROW FINANCIAL CONSULTING, LLC, AS**
**FINANCIAL ADVISOR, NUNC PRO TUNC TO OCTOBER 19, 2005**

I, Stephen B. Darr of Mesirow Financial Consulting, LLC ("MFC") hereby declare the

following;

1.       I am a Senior Managing Director and Chief Risk Officer of MFC and I am

authorized to make this declaration.  I submit this declaration pursuant to sections 328(a)

and 1103(a) of Title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (as amended,

the "Bankruptcy Code") and Rules 2014(a) and 5002 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules") in support of the Application (the "Application")[1] of

the Official Committee of Unsecured Creditors appointed in the above-referenced chapter

11 cases (the "Committee") to employ and retain MFC as financial advisor pursuant to

the terms set forth in the Application.  Except as otherwise indicated, I have personal

knowledge of the matters set forth herein and, if called as a witness, would testify

competently thereto.

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the
Application.

2.      I am submitting this Declaration on behalf of MFC pursuant to the request

of the United States Trustee for the Southern District of New York for information

supplemental to the Affidavit of Larry Lattig (the "Lattig Affidavit") in Support the

Application of the Official Committee of Unsecured Creditors of Delphi Corporation, et

al. to Retain Mesirow Financial Consulting, LLC, as Financial Advisor, Nunc Pro Tunc

to October 19, 2005, relating to issues concerning the organizational structure of MFC

and its affiliated companies, as well as those steps taken by MFC and its affiliated

companies to (i) prevent the trading personnel and the investment advisory personnel

who are employed by certain of MFC's affiliated companies from receiving any non-

public information concerning the chapter 11 cases of the above captioned debtors (the

"Debtors") through MFC's personnel, representatives or agents ("MFC Personnel")

performing activities related to the Committee and to (ii) prevent MFC Personnel from

receiving information regarding trading in Securities[2] of the Debtors by such affiliates in

advance of trading.  I am also submitting this Declaration to provide supplemental

information regarding certain information disclosed in the Lattig Affidavit.

## Organizational Structure and General Trading Activities

3.      MFC is a wholly-owned subsidiary of Mesirow Financial Holdings, Inc.,

which is a diversified financial services holding firm that also offers services in

investment management, insurance services, investment services, investment banking and

real estate (collectively "Mesirow Financial").

---

[2] The term "Securities" is used as such term is defined in Section 2(a)(l) of the Securities Act of 1933, including the following, but only to the extent they constitute securities thereunder: stocks; notes; bonds; debentures; participations in, or derivatives based upon or relating to, any of the Debtors' debt obligations or equity interests.

2

4.      MFC is a limited liability corporation and Mesirow Financial Holdings,

Inc. is its sole member.  MFC's Board consists of:

| Name | Principal Position |
|------|-------------------|
| James C. Tyree | Director, Chairman, and Chief Executive Officer of Mesirow Financial. |
| Richard S. Price | Director and Vice-Chairman of Mesirow Financial; President of Mesirow Insurance Services, Inc. |
| A. Brad Busscher | General Counsel and Secretary of Mesirow Financial; |

In addition, MFC's Chief Financial Officer is also Chief Financial Officer of Mesirow

Financial.  These individuals have no day-to-day operational duties with regard to MFC.

5.      MFC's operations are managed on a day-to-day basis by

- Ralph S. Tuliano - President of MFC
- Larry Lattig - Executive Vice-President of MFC-Restructuring
- Michael Emmert - Executive Vice-President of MFC-Litigation Support
- Stephen B. Darr - Senior Managing Director of MFC-Chief Risk Officer

6.      Under the applicable provisions of the securities laws and regulations,

including the Investment Advisors Act of 1940 and various rules and regulations

promulgated by the Securities and Exchange Commission  as well as applicable self

regulatory organizations (e.g., National Association of Securities Dealers and New York

Stock Exchange), Mesirow Financial's affiliated investment advisor and broker/dealer

subsidiaries (the "BD/IA Subsidiaries") owe certain duties to their clients including a

duty of good faith and fair dealing and, for investment advisory clients, a fiduciary duty

to act solely in a client's best interests. The BD/IA Subsidiaries have specific

obligations, *inter alia*, to have a reasonable, independent basis for its advice; to obtain

the best execution for clients' securities transactions; to ensure that its investment advice

is suitable to the client's objectives, needs, and circumstances; to refrain from effecting

personal securities transactions inconsistent with client interests and be loyal to clients.

7.    Accordingly, pursuant to these obligations, clients of the BD/IA

Subsidiaries may receive information and advice as well as execution of trades in the

Debtors' securities from the BD/IA Subsidiaries' employees.  It is the view of Mesirow

that the proper exercise of these fiduciary and other obligations require that the BD/IA

Subsidiary employees fully and fairly respond to inquiries from their clients regarding

the Debtors' securities, and that any limitation in their ability to do so could result in a

breach of these obligations.  Consistent with the fiduciary and other obligations of the

BD/IA Subsidiaries, their employees, are subject to the provisions of the Trading Wall

(as described below) and will have no any access to confidential information obtained by

the MFC personnel working on this engagement; similarly the MFC personnel working

on this engagement will have no knowledge of information, advice or securities

executions provided by the BD/IA Subsidiaries to any client.  At the request of the

Office of the United States Trustee, in addition to those parties who will receive notice

of the Application, MFC will direct that notice of the Application be served upon the

Securities and Exchange Commission and the New York Stock Exchange.

8.    Because of the organizational structure of Mesirow Financial, the

compensation of employees of MFC is not dependent upon or related to the performance

of the Mesirow BD/IA Subsidiaries.  Accordingly, the compensation of those employees

of MFC that will be employed on the Delphi engagement will not be impacted in any way

by any Securities transactions by the Mesirow BD/IA Subsidiaries, either on a principal

4

or agency basis.  Moreover, those employees of MFC retained on the Delphi engagement

do not own or otherwise have an interest, directly or indirectly, in the Securities of the

Debtors.  Thus, those employees of MFC that are retained on behalf of the Committee

cannot profit in any manner by any trading activities conducted by the BD/IA

Subsidiaries.

9.    Mesirow Financial Holding, Inc.'s Corporate Organization Chart is

attached as Exhibit 1.

10.    MFC's offices are located in New York, NY; Boston, MA; Charlotte, NC;

Chicago, IL; Dallas, TX; Los Angeles, CA; Miami, Fl; Phoenix, AZ; and San Francisco,

CA.  The Mesirow BD/IA Subsidiaries offices are located in  Chicago, IL; Birmingham,

MI; Carmel, IN; Ft Lauderdale, FL; Tampa, FL; Highland Park, IL; Oakbrook Terrace, Il;

New York, NY; Los Angeles, CA; San Juan, Puerto Rico; Pittsburgh, PA; Lawrence,

KA; Durham, Maine; Vonore, TN.  Each of these offices (with the exception of Chicago)

is physically separate, located in different buildings and has restrictions on access to

authorized personnel.  MFC's Chicago office, although located within Mesirow

Financial's office complex, is physically segregated from all other Mesirow Financial

offices and access is restricted to MFC personnel.

## Trading Wall Procedures

11.    Mesirow Financial has implemented certain "Trading Wall" procedures that preclude the flow of information concerning transactions by the Mesirow BD/IA Subsidiaries in the Debtors' Securities, as well as other Securities transactions by the Mesirow BD/IA Subsidiaries, to MFC Personnel.  A description of these Trading Wall procedures is contained in the memorandum attached as Exhibit 2.  In addition to this memorandum which was distributed to the employees of the Mesirow BD/IA Subsidiaries and MFC, all employees have been required to execute an acknowledgement that have received and reviewed these procedures and agree to be bound by them.  A copy of this acknowledgement is attached as Exhibit 3.  The Mesirow Financial entities whose operations are behind the Trading Wall are highlighted in boldface type on the Organization Chart attached as Exhibit 1.  These Trading Wall procedures also permit the Mesirow BD/IA Subsidiaries to fulfill their fiduciary or other duties owed to their clients in accordance with the securities laws.  The Mesirow BD/IA Subsidiaries are operated as separate and distinct subsidiaries from MFC with separate and distinct management. Mesirow Financial has informed the employees of the Mesirow BD/IA Subsidiaries and MFC Personnel of the Trading Wall procedures.

12.    In conjunction with MFC's Trading Wall procedures and this Declaration, MFC has established and will maintain the following internal procedures:

      a.    Offices of MFC Personnel assigned to this engagement will remain physically separate from those of the Mesirow BD/IA Subsidiaries' employees;

    b.   Subject to paragraph 14 hereof, MFC Personnel will not directly or indirectly share any non-public information generated by, received from or relating to Committee activities (the "Information") with any other employees, representatives or agents of the Mesirow BD/IA Subsidiaries, including the Mesirow BD/IA Subsidiaries' investments advisory personnel;[3]

    c.   MFC Personnel will maintain all files containing Information received in connection with or generated from Committee activities in secured cabinets inaccessible to other employees of MFC and the Mesirow BD/IA Subsidiaries;

    d.   MFC Personnel will not receive any information regarding any trade made by the Mesirow BD/IA Subsidiaries in the Debtors' Securities;

    e.   Mesirow BD/IA Subsidiaries' compliance personnel shall review Mesirow BD/IA Subsidiaries' trades of the Debtors' Securities to determine if there is any reason to believe that such trades were not made in compliance with the information blocking procedures and shall keep records of such review; and

    f.   MFC shall take those steps necessary to restrict the exchange of Information through electronic means between MFC Personnel and all other Mesirow BD/IA Subsidiaries' personnel in a manner consistent with the foregoing procedures.

---

[3] A good faith communication of publicly available information shall not be presumed to be a breach of the obligations of MFC or the Mesirow BD/IA Subsidiaries or their respective personnel.

7

13.    At the request of the Office of the United States Trustee, I have requested information regarding any interest in securities of the Debtors that the Mesirow BD/IA Subsidiaries may hold as a principal. I have been informed that no Mesirow BD/IA Subsidiaries had a principal position in securities of the Debtors as of December 9, 2005. Moreover, the Mesirow BD/IA Subsidiaries will not hold a principal position in securities of these Debtors during the pendency of these chapter 11 cases.

14.    Notwithstanding any of the above, MFC Personnel may share Information with:

a.    senior management of MFC who, due to their duties and responsibilities, have a legitimate need to know such Information provided that such individuals otherwise comply with the procedures herein and use such Information only in connection with their senior managerial responsibilities;

b.    regulators, auditors, designated legal and compliance personnel for the purpose of rendering legal advice to MFC or providing surveillance;

c.    MFC administrative personnel who service and maintain internal computer systems, to the extent that such information is available to such personnel, such personnel agree not to share Information with other employees and to keep such Information in files inaccessible to other employees; and

d.    other MFC employees, representatives and agents who are not involved with trading or investment advisory activities with respect to the Debtors' Securities upon the execution of a confidentiality letter.

8

## Delphi's Cummulative Trust Securities

15.    In the Lattig Affidavit, MFC disclosed that Mesirow Financial had participated in the sale of 8.25% Cummulative Preferred Trust Securities of Delphi Trust 1 in 2003 (the "Trust Securities").    As disclosed in the Lattig Affidavit, Mesirow Financial did not act as an investment banker in any capacity for the Trust Securities, including, but not limited to, the issuance, offer or sale of a security of the Trust Securities.

16.    Subsequent to the execution of the Lattig Affidavit, I have learned that Merrill, Lynch, Pierce, Fenner & Smith, Inc., Morgan Stanley & Co., Inc. UBS Securities LLC and Wachovia Capital Market, LLC (the "Underwriters"), the lead underwriters in the offering of the Trust Securities, were sued in two putative class action proceedings in New York and Florida relating to the issuance of the Trust Securities.    While Mesirow Financial was not named as a party in either action, pursuant to certain documents executed at the time of the issuance of the Trust Securities, all participants in the Trust Securities, including Mesirow Financial, are entitled to be indemnified by Delphi Corp..    Mesirow Financial has informed counsel to the Underwriters that it is waiving any rights that it would have to indemnification from Delphi Corp.

CHI-1511036v1

Executed this _15_ day of December, 2005 at Boston, MA.

_Stephen B Darr_

Stephen B. Darr
Chief Risk Officer
Senior Managing Director
Mesirow Financial Consulting, LLC
99 High Street
Boston, MA. 02110

**EXHIBIT 1**

CHI-1511036v1

**Exhibit 1**

## Organizational Structure as of July 1, 2005

Mesirow Financial Holdings, Inc.

- Mesirow Financial, Inc.
- Mesirow Advanced Strategies, Inc.
- Mesirow Financial Private Equity, Inc.
- Mesirow Financial Investment Management, Inc.
- Mesirow Financial Services, Inc.
  - Mesirow Insurance Services, Inc.
  - Mesirow Real Estate Investments, Inc.
  - Mesirow Realty Management, Inc.
  - Mesirow Realty Services, Inc.
  - Mesirow Financial Private Equity Advisors, Inc.
    - Mesirow Stein Real Estate, Inc.
      - Mesirow Stein Development Services, Inc.
    - Mesirow Realty Sale-Leaseback, Inc.
- Mesirow Financial Administrative Corporation.
- Mesirow Financial Consulting, LLC
- Mesirow Financial Interim Management, LLC

**Mesirow Financial Holdings, Inc.  ("MFH")**
The holding company for all of the various subsidiaries.

> **Mesirow Financial, Inc. ("MFI")** is a broker/dealer which provides services to affluent individuals, middle market public and private businesses, select institutions and broker/dealers. The entity is a NYSE member firm and a registered investment adviser.

> **Mesirow Advanced Strategies, Inc. ("MAS")** is a registered investment adviser, commodity trading adviser and commodity pool operator which provides investment management to institutions and affluent individuals in the area of alternative, non-traditional investment strategies.

> **Mesirow Financial Private Equity, Inc. ("MFPE")** provides direct investments in closely held and midsize companies through its five partnerships; Mesirow Capital Partners V - IX.  It also offers fund investments in private equity limited partnerships through its three fund of funds partnerships; Mesirow Partnership Fund I, Mesirow Partnership Fund II and Mesirow Financial Private Equity Fund III.

> **Mesirow Financial Consulting, LLC ("MFC")** provides corporate recovery, litigation support, forensic investigations, valuation services, expert testimony and other consulting services to organizations.

> **Mesirow Financial Interim Management, LLC ("MFIML")** provides assistance to trouble or underperforming companies by assuming key management positions.

**Mesirow Financial Administrative Corporation ("MFAC")**
Provides administrative and management services to the various subsidiaries.

**Mesirow Financial Services, Inc. ("MFS")**
The holding company for the financial services business.

> **Mesirow Financial Investment Management, Inc.  ("MFIM")** is a registered investment adviser which provides investment management and advisory services to institutions, public sector entities and affluent individuals.

> **Mesirow Insurance Services, Inc. ("MIS")** is an insurance brokerage operation which provides property and casualty, employee benefits, risk management and life insurance services to affluent individuals and businesses.

> **Mesirow Financial Private Equity Advisors, Inc. ("MFPEA")** a registered investment adviser that is the adviser to private equity fund of funds.

2

**Mesirow Realty Services, Inc.  ("MRS")**
The holding company for the real estate businesses.

>**Mesirow Realty Sale-Leaseback, Inc. ("MRSL")** structures sale-leaseback transactions for corporate sole tenant/owners of existing properties, arranges long-term and interim financing for the purchase of such properties, purchases such properties for resale and resells such properties to institutional and individual investors.

>**Mesirow Real Estate Investments, Inc.  ("MREI")** is the general partner of investment partnerships which own established properties.

>**Mesirow Realty Management, Inc.  ("MRM")** provides realty management services for properties owned by investment partnerships created by Mesirow Real Estate Investments, Inc.

>**Mesirow Stein Real Estate, Inc.  ("MSRE")** provides comprehensive real estate solutions, including corporate services, program management, and project development services to private and public sector clients.

>>**Mesirow Stein Development Services, Inc.  ("MSDS")** provides project management and development services to private and public sector clients.

**EXHIBIT 2**

CHI-1511036v1

# Mesirow
# Financial®
## Inter-Office Memorandum

|  |  |
|---|---|
| **TO:** | All Employees |
| **FROM:** | Steve Darr |
| **CC:** | Brad Busscher |
| **DATE:** | November 4, 2004 |
| **SUBJECT:** | Reading and Ethical Walls |

### Applicability

These procedures apply to all engagements of Mesirow Financial Consulting, LLC and Mesirow Financial Interim Management, LLC (collectively "MFC"). These procedures must be followed by all MFC personnel.

The procedures should also be followed with respect to **potential** MFC engagements to avoid client acceptance issues.

The ethical wall and trading wall procedures are disclosed in our engagement letters and Court-retention documents and are an integral part of maintenance of disinterestedness required by all of our Bankruptcy Court authorized engagements.

Issues should be first discussed with either Steve Darr or Brad Busscher and not with other members of the practice.

### Ethical Wall

As part of our engagements, MFC personnel receive confidential and non-public information that must be protected from disclosure to non-MFC personnel. Similarly, Mesirow Financial's other affiliates, divisions and business units may have confidential and non-public information which should not be disclosed to MFC personnel. As a result, an "Ethical Wall" has been established to prevent the flow of confidential and non-public information both in and out of MFC.

**MFC employees must not share any confidential or non-public information with any non-MFC employee concerning any engagement in which MFC has been retained and must refrain from discussing any MFC engagement with personnel from other Mesirow Financial subsidiaries, divisions and business units**

### Trading Wall

In addition to the Ethical Wall, a "Trading Wall" has been established to allow MFC to render services to our clients, while permitting Mesirow Financial's other affiliates, divisions and business units to conduct their business affairs.

The Trading Wall restricts any flow of information from our Investment Management, Investment Services and Investment Banking Divisions (the "BD/IA") to MFC employees regarding their clients or transactions.  The provisions of the Trading wall also require that:

- Offices of MFC personnel will be physically separate from those of Mesirow BD/IA employees;
- E-mail and Interoffice main containing confidential information should be prominently labeled "Confidential".
- All files containing confidential and non-public information must be maintained in secured cabinets or in a manner otherwise inaccessible to other employees of Mesirow BD/IA Subsidiaries;

The provisions of the ethical wall above prohibit MFC employees from discussing clients or engagements with employees of the BD/IA.

### Summary
- Remember that Mesirow Financial Consulting, LLC and Mesirow Financial Interim Management, LLC are separate legal entities.
- You cannot share confidential or non-public information with employees of Mesirow Financial's other affiliates, divisions and business units;
- You must safeguard engagement files, proposals etc. from access by non-authorized personnel
- Do not allow unrestricted access to your offices by visitors from Mesirow Financial's other affiliates, divisions and business units visit your office.
- Report all issues regarding possible violations of these procedures to Steve Darr or Brad Busscher.

**EXHIBIT 3**

13

 **Mesirow Financial®**

## Inter-Office Memorandum

| | |
|---|---|
| TO: | Mesirow Financial, Inc.<br>Mesirow Financial Investment Management, Inc.<br>Mesirow Advanced Strategies, Inc.<br>Mesirow Private Equity Investments, Inc. |
| FROM: | A. Brad Busscher, Esq. |

CC:

| | |
|---|---|
| Jim Tyree | Karen Shook |
| Executive Committee | Peter Nagle |
| Stephen Darr | Joanne Rohn |
| Debbie Krieps | Patrick Muldowney, Esq.<br>Mesirow Financial Consulting, LLC. |

DATE:       November 17, 2004

RE:         Trading Wall Requirements

As you may know, many of our new Consulting Division's engagements involve the bankruptcy courts. In order for us to offer our services and be engaged in a bankruptcy proceeding, the Consulting Division must represent to the court that it is a "disinterested party" in the proceeding and ensure that it does not have a conflict of interest with respect to the engagement. In the event a conflict of interest were to arise, the firm may be assessed substantial monetary and/or other penalties.

As a result, we have implemented a separate trading wall (apart from our existing Chinese Wall) effective immediately to restrict any flow of information from our Investment Management, Investment Services and Investment Banking Divisions to our Consulting Division.

Under no circumstances should you discuss any trading activity, investment ideas and/or recommendations, security holdings or any other confidential aspect of your business with employees of the Consulting Division. In addition, Corporate Investment Banking is precluded from disclosing confidential information concerning any engagements pursuant to our existing Chinese Wall. To the extent such information does need to be provided to the Consulting Division, please contact me at ext. 6077 or Patrick Muldowney at ext. 6290 to evaluate the necessity of piercing the trading wall.

Please note that this trading wall is in addition to the insider trading provisions included in our firm's Code of Conduct located in your Employee Handbook. In the event that you service or manage a personal investment account for one of the employees in the Consulting Division, the trading wall does not necessarily apply. However, employees in the Consulting Division may be precluded from purchasing or holding certain securities related to their engagements. Questions concerning such personal restrictions should be directed to Patrick Muldowney or me.

Thank you for your attention to this matter. Please acknowledge your receipt of this memorandum and your agreement to abide by the terms herein by executing the attached acknowledgement and returning it to my attention no later than Wednesday, November 24, 2004.



## Inter-Office Memorandum

TO:        A. Brad Busscher, Esq.

FROM    _____

DATE:     November 17, 2004

RE:        Receipt and Acknowledgement of Trading Wall Requirements

I hereby, acknowledge that: 1) I received the above-captioned memorandum dated November 17, 2004; 2) I have read and understand the provisions specified therein; and 3) I will abide by all requirements described in the memorandum.

_____

Signature

_____

Printed Name

_____

Date