```
```

**Hearing Date and Time: January 5, 2006, 10:00 a.m.**
**Objection Deadline: December 29, 2005, 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                             :
      In re                                :   Chapter 11
                                             :
DELPHI CORPORATION, et al.,         :   Case No. 05-44481 (RDD)
                                             :
                                             :   (Jointly Administered)
           Debtors.                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION TO EXTEND TIME PERIOD WITHIN
WHICH DEBTORS MAY REMOVE ACTIONS UNDER
28 U.S.C. § 1452 AND FED. R. BANKR. P. 9006 AND 9027

("REMOVAL DEADLINE EXTENSION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order pursuant to 28 U.S.C. § 1452 and Rules 9006 and 9027 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to extend the time period within which the Debtors may remove pending proceedings. In support of this Motion, the Debtors respectfully represent as follows:

Background

A.   The Chapter 11 Filings

1.   On October 8, 2005, Delphi and certain of its U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") filed voluntary petitions in this Court for reorganization relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtors' chapter 11 cases (Dockets Nos. 28 and 404).

2.   On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). No trustee or examiner has been appointed in the Debtors' cases.

3. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4. The statutory predicates for the relief requested herein are 28 U.S.C. section 1452 and Bankruptcy Rules 9006(b) and 9027.

B.   Current Business Operations Of The Debtors

5. With more than 180,000 employees worldwide, global 2004 revenues of approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1 billion,[1] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations without supervision from the Bankruptcy Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

6. Over the past century, the operations which are now owned by Delphi have developed leading global technology innovations with significant engineering resources and technical competencies in a variety of disciplines. Today, the Company (as defined below) is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide. The Company supplies products to nearly every major global automotive original equipment manufacturer, with 2004 sales to its former parent, General Motors Corporation ("General Motors" or "GM"), equaling approximately $15.4 billion, and sales to each of Ford Motor Company,

---

[1]  The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

7. As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world. In the U.S., the Debtors employ approximately 50,600 people. Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan. Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions. Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8. Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates (collectively, the "Company") in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9. Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle. When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base. The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.      Events Leading To Chapter 11 Filing

10. In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales. Reflective of a downturn in the marketplace, Delphi's financial condition deteriorated further in the first six months of 2005. The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[2]

11. Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy

---

[2] Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12. In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward looking revenue requirements. Having concluded that pre-filing discussions with its unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13. Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses. This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan. The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down through the chapter 11 process.

14.     Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

### Relief Requested

15.     By this Motion, the Debtors request entry of an order pursuant to Bankruptcy Rule 9006(b) extending by an additional 90 days the period during which the Debtors may remove actions pursuant to 28 U.S.C. § 1452 and Bankruptcy Rule 9027.  The Debtors propose that the time by which they may file notices of removal with respect to any actions pending on the Petition Date be extended to the later to occur of (a) April 6, 2006, or (b) 30 days after entry of a order terminating the automatic stay with respect to any particular action sought to be removed without prejudice to the Debtors' rights to seek further extensions of the period during which the Debtors may remove actions.

### Basis For Relief

A.     Applicable Authority

16.     28 U.S.C. § 1452 and Bankruptcy Rule 9027 govern the removal of pending civil actions.  Section 1452(a) provides:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).  Bankruptcy Rule 9027(a)(2) further provides, in pertinent part:

7

> If the claim or cause of action in a civil action is pending when a case under the [Bankruptcy] Code is commenced, a notice of removal may be filed [in the bankruptcy court] only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under § 362 of the Code, or (C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.

Fed. R. Bankr. P. 9027(a)(2).

17. Bankruptcy Rule 9006(b) provides that the Court can extend unexpired time periods:

> [W]hen an act is required or allowed to be done at or within a specified period by these rules or by a notice given thereunder or by order of court, the court for cause shown may at any time in its discretion with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as extended by a previous order . . . .

18. Fed. R. Bankr. P. 9006(b)(1). It is well settled that this Court is authorized to expand the removal period as requested herein. See Jandous Elec. Constr. Corp. v. City of New York (In re Jandous Electric Construction Corp.), 106 B.R. 48, 50 (Bankr. S.D.N.Y. 1989) (implying that timely filing motion for enlargement of time period for removal is often granted); Stamm v. Rapco Foam, Inc., 21 B.R. 715, 718 (Bankr. W.D. Pa. 1982) (court may enlarge time limit for filing of application for removal in appropriate circumstances); Circle Litho, Inc., v. Ryder Truck Lines, Inc. (In re Circle Litho, Inc.), 12 B.R. 752, 756 (Bankr. D. Conn. 1981) ("All time limitations in the rules are subject to Bankruptcy Rule 9006 which generally permits time limits set by the rules to be enlarged or reduced"). This Court has granted extensions of the removal period on numerous occasions. See, e.g., In re Tower Automotive, Inc. et al., Case No. 05-10578 (Bankr. S.D.N.Y. Oct. 12, 2005) (extending removal deadline six months without prejudice for further requests); In re WorldCom, Inc., et al., Case No. 02-13533 (Bankr. S.D.N.Y. Oct. 8, 2002) (extending debtors' removal deadline through confirmation of plan of

reorganization); In re Enron Corp., et al., Case No. 01-16034 (Bankr. S.D.N.Y. Feb. 28, 2002, May 30, 2002) (extending debtors' removal deadline for three months without prejudice to further requests); In re Northwest Airlines Corporation, et al., Case No. 05-17930 (Bankr. S.D.N.Y. Nov. 29, 2005) (extending debtors' removal deadline for six months without prejudice to further requests); In re Global Crossing Ltd., et al., Case Nos. 02-40187 through 02-40241, 02-11982 (Bankr. S.D.N.Y. May 1, 2002) (extending debtors' removal deadline through confirmation of plan of reorganization); In re The Singer Company N.V., et al., Case Nos. 99-10578 through 99-10607, 99-10613, and 99-10616 through 99-10629 and 00-10423 (Bankr. S.D.N.Y. Nov. 18, 1999, Feb. 24, 2000, June 22, 2000) (granting numerous extensions of 90-day time period in which to seek removal without prejudice to further requests).

B.  The Debtors Require Additional Time To Determine Which
    Of The State Court Actions, If Any, They Will Remove

19.  The Debtors are parties to numerous judicial and administrative proceedings currently pending in various courts or administrative agencies throughout the United States (collectively, the "Actions"). The Actions involve a wide variety of claims. The period during which the Debtors may remove Actions expires on the later of (a) January 6, 2006, (b) 30 days after entry of an order terminating the automatic stay with respect to the particular action sought to be removed, or (c) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief. Because of the number of Actions involved and the wide variety of claims, the Debtors would like to ensure that they have additional time to determine which, if any, of the Actions should be removed and, if appropriate, transferred to this district.

20.  The Debtors submit that the relief requested is in the best interests of their estates and creditors. The extension sought will afford the Debtors a sufficient opportunity to

9

make fully informed decisions concerning the possible removal of the Actions, protecting the Debtors' valuable right to adjudicate lawsuits economically pursuant to 28 U.S.C. § 1452 if the circumstances warrant removal.  Moreover, the Debtors' adversaries will not be prejudiced by such an extension because such adversaries may not prosecute the Actions absent relief from the automatic stay.  Furthermore, nothing herein will prejudice any adversary whose proceeding is removed from pursuing remand pursuant to 11 U.S.C. § 1452(b).  Accordingly, the proposed extension requested herein will not prejudice the rights of other parties to any of the Actions.

## Notice

21.    Notice of this Motion has been provided to parties on the Master Service List and 2002 List Parties in accordance with the Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance With Local Bankr. R. 1007-2(e) entered by this Court on October 14, 2005 (Docket No. 245).  In part because the Debtors were parties to more than 200 Actions as of the Petition Date, the Debtors have not given notice of this Motion to each adversary.  Moreover, the Debtors do not believe such notice is necessary because no substantive rights of any adversary are being affected by the requested extensions.  Accordingly, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

22.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) extending the period set forth in Bankruptcy Rule 9027(a)(2)(A) during which they may remove Actions through and including the later to occur of (i) April 6, 2006 or (ii) 30 days after entry of a order terminating the automatic stay with respect to any particular action sought to be removed, without prejudice to the Debtors' rights to seek further extensions of the period during which the Debtors may remove actions and (b) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
        December 16, 2005

        SKADDEN, ARPS, SLATE, MEAGHER
         & FLOM LLP

        By: s/ John Wm. Butler, Jr.
           John Wm. Butler, Jr. (JB 4711)
           John K. Lyons (JL 4951)
           Ron E. Meisler (RM 3026)
        333 West Wacker Drive, Suite 2100
        Chicago, Illinois  60606
        (312) 407-0700

            - and -

        By: s/ Kayalyn A. Marafioti
           Kayalyn A. Marafioti (KM 9632)
           Thomas J. Matz (TM 5986)
        Four Times Square
        New York, New York 10036
        (212) 735-3000

        Attorneys for Delphi Corporation, et al.,
          Debtors and Debtors-in-Possession