Amendment 1, effective as of September 30, 2005 ("Amendment")
by and between
ACE American Insurance Company
(hereinafter with Pacific Employers Insurance Company and their affiliates, the "Company")
and
Delphi Corporation, formerly known as Delphi Automotive Systems Corporation
(hereinafter the "Insured")
to
MULTI-LINE DEDUCTIBLE PROGRAM AGREEMENT
effective the 1st day of October, 2000, by and between the Company and the Insured, as amended or supplemented pursuant to various amendments or addendums
(hereinafter the "Agreement")

WHEREAS, the Insured has requested that the Company issue or renew certain policies and to amend Article IV of the Agreement to specifically reference cash collateral.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, and intending to be legally bound hereby, the parties hereto agree as follows:

1. **Amendments**. Article IV of the Agreement is hereby amended by adding and inserting the following new provisions at the end of Article IV:

> "The Insured shall deliver to the Company the amount of $5,388,967 ("Cash Collateral") by wire transfer of immediately available funds, which shall be received by the Company by September 30, 2005. As security for the payment and performance of the Insured's Obligation (as such term is defined in the Agreement), the Insured hereby grants to the Company a security interest in and lien on all of its right, title and interest, whether now existing or hereafter arising, in and to the Cash Collateral and all proceeds thereof. Cash Collateral shall include, without limitation, any and all Paid Loss Deposit Funds. The Company may hold the Cash Collateral as part of the collateral securing the Insured's Obligation in any account in the Company's name and with any financial institution as the Company determines in its sole discretion. The Company may commingle the Cash Collateral with the Company's own funds or the funds of other insureds.
>
> The Company is authorized to use the Cash Collateral to pay any and all of the Insured's Obligation owing under the Agreement without further notice to, or demand of, the Insured.

The Company shall have no duty to invest the Cash Collateral, and may hold the Cash Collateral in an interest bearing or non-interest bearing account as the Company determines in its sole discretion."

2.  Renewal. Any proposed future renewal of the Policies will be subject to terms and conditions acceptable to the Company, in its sole discretion, which shall include, without limitation, the following terms and conditions to be satisfied prior to the proposed effective date of any such future renewal ("Renewal Date"):

2.1  Order. If a petition for relief under the United States Bankruptcy Code ("Bankruptcy Code") is filed by or against the Insured prior to the Renewal Date, then the Bankruptcy Court that has jurisdiction over the Insured ("Bankruptcy Court") shall have entered an Order, in form and substance satisfactory to the Company and its counsel, which provides the following:

A.  the Insured is authorized to, and upon entry of the Order shall, assume the Agreement, all policies listed in the Addenda to the Agreement, the binder, and the claims administration agreement related thereto (collectively, the "Program") pursuant to Section 365 of the Bankruptcy Code;

B.  the Insured is authorized to renew or enter into insurance policies and to execute all related documents and agreements between the Insured and the Company or any of its affiliates as part of the Program pursuant to Section 363 of the Bankruptcy Code;

C.  the Insured is authorized to provide the collateral and security pursuant to the Program;

D.  the Insured may agree to future renewals of the Program without further Order of the Court;

E.  the Company shall have the right to draw against the Cash Collateral, apply the Cash Collateral to the Insured's Obligation, and take other actions permitted under applicable non-bankruptcy law and the Program without further order of the Court (upon prior written notice, not to exceed 5 business days, to the Insured and any statutorily appointed committee of creditors of the Insured, if and to the extent that prior notice is required by the applicable rules of the Bankruptcy Court), and for this purpose, the automatic stay is deemed lifted pursuant to Section 362(d) of the Bankruptcy Code;

F.  all payment and reimbursement obligations owing to the Company under the Program shall be entitled to priority under Section 503(b)(1)(A) of the Bankruptcy Code;

G.  the Company's claims with respect to the Program, including the renewal shall be paid in the ordinary course; and

H.  the Program and the Order shall not be altered by any plan of reorganization or subsequent order of the Court.

2.2.  The Insured shall deliver to the Company the full collateral and security requirement in a Letter of Credit in form, amount and substance and issued by a financial

2

institution acceptable to the Company, in its sole discretion, to replace any unused Cash Collateral and to provide any additional required security to the Company.

    2.3. All premiums must be received by the Company.

    2.4. The fully executed program agreements must be received by the Company.

3.     <u>Representation and Warranty</u>. The Insured represents and warrants to the Company, after consultation with its counsel, that it has the power and authority to execute and enter into this Amendment and deliver the Cash Collateral to the Company.

4.     <u>Miscellaneous</u>.

    4.1 Except as expressly set forth in this Amendment, all terms and conditions of the Agreement remain in full force and effect.

    4.2 All capitalized terms used without being defined herein shall have the meanings given to such terms in the Agreement.

    4.3 All notices, demands, requests, consents, approvals and other communications required or permitted hereunder must be in writing and be delivered in accordance with the notice provisions of the Agreement.

    4.4 No delay or omission on the part of the Company to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of any such right or power or any acquiescence therein, nor will the action or inaction of the Company impair any right or power arising hereunder. The Company's rights and remedies hereunder are cumulative and not exclusive of any other rights or remedies which the Company may have under other agreements, at law or in equity.

    4.5 If any one or more of the provisions contained in this Amendment should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

    4.6 No modification, amendment or waiver of any provision of this Amendment nor consent to any departure by the Insured therefrom, will in any event be effective unless the same is in writing and signed by the Company, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.

    4.7 This Amendment may be signed in any number of counterpart copies transmitted by facsimile and by the parties hereto on separate counterparts transmitted by facsimile, but all such copies shall constitute one and the same Amendment.

    4.8 This Amendment shall be binding upon and inure the benefit of and be enforceable by the parties hereto and their respective successors and assigns.

4.9     This Amendment shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

**IN WITNESS WHEREOF**, this Amendment to the Agreement has been executed by the parties hereto, and shall be effective on the date first written above.

Delphi Corporation
f/k/a Delphi Automotive Systems Corporation

By: _____ 9/30/05

Name: WILLIAM D. TELGEN

Title: RISK MANAGER - DELPHI CORP.

ACE American Insurance Company
on behalf of the Company

By: _____

Name: _____

Title: 9-30-05

4