<u>**MULTI-LINE DEDUCTIBLE PROGRAM AGREEMENT**</u>
(hereinafter "<u>this Agreement</u>")

effective the **1st day of October, 2000**

by and between
**Pacific Employers Insurance Company**

(hereinafter the "<u>Company</u>")

and

# Delphi Automotive Systems Corporation,
(hereinafter the "<u>Insured</u>")

**WHEREAS,** the Insured is the Named Insured under the policy(ies) of General Liability, Automobile Liability, and/or Workers' Compensation insurance listed on the respective Addenda hereto (including Addenda that may be added after the effective date hereof) issued by the Company (which together with all extensions thereof and endorsements thereto, are hereinafter collectively referred to as the "Policies" or as the "General Liability Policies," "Automobile Liability Policies," and "Workers' Compensation Policies," respectively), which Policies each include a Deductible Endorsement; and

**WHEREAS,** the Company is willing to issue such Policies only if the Insured provides collateral security to the Company; and

**WHEREAS,** the Company has entered and may in the future enter into one or more contracts with the Insured's preferred claims administrator (hereinafter, the "Claims Adjusting Service") to provide claims adjusting and related services for claims arising under the Policies;

**NOW, THEREFORE,** in consideration of the mutual promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in accordance with the terms and conditions of the Policies, the Company and the Insured agree as follows:

## ARTICLE I
**<u>INSURED'S PAYMENTS</u>**

The Insured agrees to pay or reimburse the Company for:

a) all premiums payable to the Company under the Policies, including audit of the Policies and any recalculation of premium as provided therein, as described in greater detail in the respective Addenda hereto;

b) Paid Loss Deposit Funds as provided in Article III of this Agreement;

c) all other amounts the Insured is or may in the future be required to pay or reimburse to the Company in accordance with the terms and conditions of the Policies or this Agreement, including without limitation the Insured's share of Paid Losses and Allocated Loss Adjustment Expense;

d) Claim Administration Expense as provided in the respective Addenda hereto;

e) all amounts the Insured is or may be obligated to pay to other parties but which are paid by the Company;

and to provide collateral to the Company to secure the Insured's Obligation as provided herein.

The Company will bill the Insured monthly for Company Expenses and any amounts described above in b), c) or d), which are payable or reimbursable to the Company pursuant to the Workers' Compensation Policies. The Company will also bill the Insured for any amounts described above which are payable or reimbursable to the Company pursuant to the General Liability Policies and Automobile Liability Policies if and when such payment obligations arise. Insured's payment of each such bill shall be due and payable no later than the Required Payment Date. If the Insured does not pay an amount billed by the Required Payment Date,

(i) the Company shall have the right to bill the Insured for, and to collect, the Interest Charge applied to any such unpaid amount; and

(ii) the Company shall have the right to increase the amount of any Paid Loss Deposit Fund to an amount determined by the Company, which amount may exceed the required amount as specified in Article III of this Agreement.

All payments made by the Insured under this Agreement and the Policies shall be allocated first to collateral security, then to other amounts owed to the Company other than premiums, then finally to premiums for the Policies, regardless of the designation of the payment.

All terms and conditions of each Addendum hereto are a part of this Agreement and are here incorporated by reference in their entirety.

The Insured and the Company agree that this Agreement is not intended to, and does not, amend or alter any of the terms and conditions of any of the Policies. In the event of any inconsistencies between this Agreement and any Policy, the terms and conditions of the Policy shall control.

## ARTICLE II

## DEFINITIONS

"<u>Allocated Loss Adjustment Expense</u>" shall mean such claim expenses, costs and any interest incurred in connection with the investigation, administration, adjustment, settlement or defense of any claim or lawsuit that the Company, under its accounting practices, directly allocates to a particular claim, whether or not a payment indemnifying the claimant(s) is made. Such expenses include, but are not limited to, subrogation, all court costs, fees and expenses; fees for service of process; fees and expenses to attorneys for legal services; the cost of services of undercover operations and detectives; fees to obtain medical cost containment services; the cost of employing experts for the purpose of preparing maps, photographs, diagrams, and chemical or physical analysis, or for expert advice or opinion; the cost of obtaining copies of any public records; and the cost of depositions and court reporters or recorded statements, <u>provided, however,</u> that Allocated Loss Adjustment Expense shall not include the salaries and traveling expenses of the Company's employees (except for amounts allocated to a specific claim by any of the Company's Field Litigation Offices or Legal Services Offices), or the Company's overhead and adjusters' fees.

"<u>Claim Administration Expense</u>" shall mean the amounts the Company and the Claims Adjusting Service determine are needed to cover expenses of administering claims under the Policies.

"<u>Company Expenses</u>" shall mean that amount the Company determines it needs to cover its expenses to administer the Insured's casualty insurance program pursuant to the Policies, including but not limited to the following:
  a. general and administrative expense;
  b. insurance charges;
  c. premium taxes;
  d. variable expenses, including but not limited to residual market assessments, boards and bureaus, non-subject state surcharges and assessments and other related fees; and
  e. other services provided by the Company.

"<u>Deductible Premium</u>" shall mean the premium after the application of the deductible credit factor, as shown on the Workers' Compensation Deductible Policies.

"<u>Insured's Obligation</u>" shall mean all amounts the Insured is or may in the future be required to pay or to reimburse to the Company pursuant to this Agreement or the Policies. The amount of the Insured's Obligation shall be calculated by the Company based on Ultimate Losses.

"<u>Interest Charge</u>" shall mean the amount of interest for which the Insured is liable to the Company, payable at the monthly rate of one and one-half percent (1.5%) (or, if such rate is impermissible under applicable law, the maximum lawful, non-usurious rate that may be charged) on any amount payable by the Insured to the Company under this Agreement, but not paid by the Insured by the Required Payment Date, said charge to commence on the day next following the Required Payment Date for any such unpaid amount.

"Paid Losses" shall mean all amounts paid for losses (exclusive of Allocated Loss Adjustment Expense) under the Policies; provided, however, that the amount payable or reimbursable by the Insured for each Paid Loss shall be subject to the amount of the deductible as provided in the respective Policies.

"Required Payment Date" shall mean a date not later than ten (10) calendar days after the date of the Company's invoice for any amount billed by the Company to the Insured under this Agreement.

"Ultimate Losses" shall mean losses incurred under the Policies within the respective deductibles plus future loss development and the amount of losses incurred but not reported, as estimated by the Company. Ultimate Losses may include Allocated Loss Adjustment Expense as estimated by the Company.

## ARTICLE III

### PAID LOSS DEPOSIT FUND

As of the effective date of this Agreement, and of each Addendum hereto, the Insured will be required to pay the Company, on or before the Required Payment Date therefor, the amount specified as "Initial Paid Loss Deposit Fund" in each respective Addendum. Such payments will establish and initially fund, for the Policies listed on each of the respective Addenda, a Paid Loss Deposit Fund. Each of such "Initial Paid Loss Deposit Fund" amounts shall represent the Company's estimate of the average amount the Company will pay under the Policies listed on the respective Addenda during a sixty (60) day period for the amount of the Insured's share of (a) Paid Losses (b) Allocated Loss Adjustment Expense, and (c) Claim Administration Expense.

In the event of any single payment of a large Paid Loss and/or Allocated Loss Adjustment Expense under any Policy in an amount equal to or greater than the amount specified as "Single Payment of Paid Loss and/or Allocated Loss Expense" on the Addendum on which such Policy is listed, the Company shall have the right to require the Insured to pay immediately the amount of such single payment into the Paid Loss Deposit Fund.

The Company may from time to time recalculate the required amount of any Paid Loss Deposit Fund, based upon the Company's revised estimate of the average of the amounts it will pay as described above, and require the Insured to adjust the amount of such Paid Loss Deposit Fund accordingly, provided, that the minimum required amount of each Paid Loss Deposit Fund shall be $1,000.

## ARTICLE IV

### SECURITY FOR INSURED'S OBLIGATION

As security for payment of the Insured's Obligation under this Agreement, the Insured will provide to the Company, as beneficiary thereof, a clean irrevocable evergreen letter of credit (hereinafter, the "LOC") issued by a bank or other financial institution, and in an amount and form, acceptable to the Company; and/or such other forms of collateral as the Insured and the Company may agree in writing from time to time.

The Insured will continue to provide the Company with an LOC (and/or other collateral) as security for payment of the Insured's Obligation, until the Company determines that there is no longer any need for security. If there shall be a material deterioration in the financial condition of the bank or other financial institution which has issued the LOC, the Company shall have the right to require the Insured to replace the LOC with a new LOC issued by a bank or other financial institution then acceptable to the Company.

The Company shall have the right to draw against the LOC and/or other collateral in each instance where the Insured's Obligation, or any portion thereof, for any reason is not fulfilled.

Not less than thirty days prior to any termination or expiration of the LOC, the Insured will deliver to the Company a replacement LOC in an amount and form acceptable to the Company, issued by a bank or other financial institution acceptable to the Company.

Annually, the Company shall review and redetermine the amount of the Insured's Obligation and the amount of collateral security required pursuant to this article. At such time, the Insured will provide audited financial statements, interim financial statements, and any other financial information requested by the Company for the purpose of evaluating the financial condition of the Insured. The Insured will provide any needed increases in the amount of the LOC (and/or other collateral if acceptable to the Company) within thirty days of the Company's request for any additional required amount of the LOC. The Company will effect any decreases in the amount of the LOC (and/or other collateral) promptly, provided that the Insured is not in breach of any of its obligations under this Agreement or any of the Policies.

If the Insured fails to provide the Company with a replacement LOC or to provide the Company with any additional required amount of the LOC (and/or other collateral if acceptable to the Company), the Company will have the right to draw the full amount of the existing LOC and/or other collateral. The Insured recognizes that the Company may continue to require collateral as security for the payment of the Insured's Obligation after any cancellation, non-renewal, conversion or replacement of the Policies.

The Insured agrees that the Company shall have no obligation to remit to the Insured or to apply in reduction of the Insured's Obligation any increase or profits (including without limitation any interest or money) received by the Company from the proceeds of any LOC or from any other collateral provided by the Insured.

The Insured and the Company agree that nothing in this Agreement will constitute or be construed as a waiver of any rights the Company may have in each instance in which the Insured's Obligation for any reason is not fulfilled.

## ARTICLE V

## CANCELLATION/TERMINATION OF THE POLICIES

Cancellation of the Policies or any Policy by either the Insured or the Company will not terminate this Agreement. The parties' rights, duties and obligations under this Agreement will continue after any cancellation, non-renewal or replacement of the Policies.

This Agreement shall continue in full force and effect until the Company and the Insured mutually agree that it shall terminate.

## DIVIDEND CONSIDERATION

The Board of Directors for one or more of the companies that are parties to this Agreement may declare dividends in accordance with the provisions for participating companies on some of the policies under this agreement. The applicability of any and all dividends will be described in greater detail in the respective Addendum hereto.

## ARTICLE VI

1. **Applicable Law.** This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania. No amendments or modification of this Agreement shall have any force or effect unless in writing and signed by the parties hereto.

2. **Successors and Assigns.** All the terms of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors and assigns, whether so expressed or not; provided, however, that no party hereto shall assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the other parties hereto.

3. **Severability.** Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or enforceability without invalidating the remaining provisions and without affecting the validity or enforceability of such provision in any other jurisdiction.

4.  **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall constitute but one and the same instrument.

5.  **Arbitration.** Any controversy, dispute, claim or question arising out of or relating to this Agreement, including without limitation its interpretation, performance or non-performance by any party, or any breach thereof (hereinafter, collectively, "Controversy") shall be referred to and resolved exclusively by three arbitrators through private, confidential arbitration conducted in Philadelphia, PA. Such arbitrators shall be disinterested, neutral individuals who have experience and qualifications in the subject matter of the Controversy. One arbitrator shall be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within thirty (30) days after receipt of written notice from the other party requesting it to do so, the requesting party may choose a total of two arbitrators who shall choose the third. If the arbitrators fail to select the third arbitrator within ten (10) days after both have been named, each arbitrator shall name three candidates, of whom the other shall decline two, and the decision shall be made by drawing lots. In the event of the death, disability or incapacity of any arbitrator, a replacement shall be named pursuant to the process, which resulted in the selection of the arbitrator to be replaced. The arbitrators may abstain from following the strict rules of law, and shall make their decision with regard to the custom and usage of the insurance business as at the effective date of this Agreement. The majority decision of the panel shall be final and binding upon the parties to this Agreement. Judgment may be entered upon the award of the arbitrators in any court of competent jurisdiction. Except as otherwise specifically provided in this paragraph, the arbitration of any controversy shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

**IN WITNESS WHEREOF,** this Multi-Line Deductible Agreement has been executed by the parties hereto, to be effective on the date first written above.

| Delphi Automotive Systems, Inc. | Pacific Employers Insurance Company |
|---|---|
| THE INSURED | THE COMPANY |
| Name: *[signature]* | Name: *[signature]* Ric Pena |
| Title: RISK MANAGER | Title: Senior Vice President |
| Date: 06/19/2002 | Date: 6/24/02 |

## 2000 ADDENDUM TO
## MULTI-LINE DEDUCTIBLE PROGRAM AGREEMENT
### (the "Addendum")

### for Delphi Automotive Systems Corporation

### Effective **October 1, 2000**

The terms and conditions stated in this **2000** Addendum apply only to the Policies listed below. All other terms and conditions of the Agreement are here incorporated by reference in their entirety.

### Policy Listing

**DEDUCTIBLE POLICIES**

| Policy Number | Policy Period | Deductible Limit | Issuing Company |
|---|---|---|---|
| GENERAL LIABILITY HDOG20307043 | 10/01/2000 to 10/01/2001 | $1,000,000 | *Pacific Employers Insurance Company |
| AUTOMOBILE LIABILITY ISAHO7682360 | 10/01/2000 to 10/01/2001 | $1,000,000 | *Pacific Employers Insurance Company |
| WORKERS' COMPENSATION WLRC43013191 WLRC4301299A WLRC43013038 | 10/01/2000 to 10/01/2001 | $2,000,000 Workers' Compensation ($1,240,000 in Minnesota) $1,000,000 Employers Liability | *Pacific Employers Insurance Company |
| | | | * denotes Participating Compan |

## WORKERS' COMPENSATION DEDUCTIBLE POLICIES

**1. Company Expenses:** Commencing on the effective date of this Addendum and for five months thereafter, the Insured will make a monthly payment to the Company by the Required Payment Date related to the above listed Workers' Compensation Deductible Policies. The first such payment shall be $24,213.13 and the five subsequent payments shall be $20,095.97 each. The total of all payments shall be the initial Company Expenses.

**2. Recalculation of Company Expenses:** At the time of audit, the Company will recalculate and the Insured will pay Company Expenses related to the Workers' Compensation Deductible Policies based on the following components:

   a.  $80,000 flat charge – not subject to adjustment; plus
   b.  $30,000 flat charge.

**3. Allocated Loss Adjustment Expense:** For the Workers' Compensation Policies listed on this Addendum, the Insured will pay or will reimburse the Company for all Allocated Loss Adjustment Expense related to Claims under the Policies.

## GENERAL LIABILITY DEDUCTIBLE POLICIES/ AUTOMOBILE LIABILITY DEDUCTIBLE POLICIES

**1. General Liability Premium and Automobile Liability Premium:** Commencing on the effective date of this Addendum and for five months thereafter, the Insured will make a monthly payment to the Company by the Required Payment Date related to the above listed General Liability Policies and Automobile Liability Policies. The first such] payment shall be $44,000 and the five subsequent payments shall be $13,200 each.

**2. Adjustment of General Liability and Automobile Liability Premium:** The General Liability and Automobile Liability premiums are flat charges and not subject to adjustment.

**3. Allocated Loss Adjustment Expense:** For General Liability and Automobile Liability, the Insured's share of the Allocated Loss Adjustment Expense is stated on the respective Policies listed in this Addendum.

## CLAIM ADMINISTRATION EXPENSE:

The Company will engage **Sedgwick CMS** (the "Claims Adjusting Service") to investigate, adjust, settle and provide for the defense of claims in all states, except the Designated Adjuster states listed below and Texas, arising under the Policies listed on this Addendum. The Insured and the Claims Adjusting Service will separately contract to effectuate recovery dollars for any appropriate claim.

The Company will provide such claims adjusting services for claims arising in the Designated Adjuster States.

The Insured will pay to the Company the Claim Administration Expense, comprised of:
   (i) Claim Handling Fee incurred according to actual claims count, at prices set forth in fee schedules, below;
   (ii) Claim Supervision Fee.

Claim Handling Fees are set forth in the following fee schedules:

(1) For Designated Adjuster States ( Idaho, Maryland, Oregon and Virginia) and Texas:

| TYPE OF CLAIMS | FEE PER CLAIM |
|---|---|
| Workers' Compensation - Medical Only | $135 |
| Workers' Compensation - Indemnity | $945 – first two years claim is open<br>$900 annual charge thereafter |
| Workers' Compensation - Managed Medical Only | $445 |

(2) For all states other than Designated Adjuster States listed above: (As outlined in Claim Service Agreement with ~~Crawford~~ Sedgwick – Exhibit A attached)   [initials] R.P.

As used in this Addendum, the following terms shall be defined as set forth below:

"Indemnity" shall mean any claim for which benefits may be payable under a Policy (I) to repay all or a portion of wages lost due to a compensable injury or disease and/or (ii) to compensate for disfigurement.

"Medical Only" shall mean any claim other than Indemnity, including claims for which the claimant did not receive lost wage payments from the Company.

"Managed Medical Only'" shall mean any claim other than Indemnity, including claims for which the claimant did not receive lost wage payments from the Company, for which the total accumulated amount of medical payments by the Company exceeded $1,000.

MULTTPA
12/18/98

10

**IN WITNESS WHEREOF,** this **2000** Addendum to the Multi-line Deductible Program Agreement dated **October 1, 2000** has been duly executed by the parties hereto, each of which intends by its execution hereof to be legally bound by the terms of this Addendum and of the Agreement.

| **Delphi Automotive Systems Corporation** | **Pacific Employers Insurance Company** |
|---|---|
| THE INSURED | THE COMPANY |
| By: _____ | By: _____ <br> Ric Pena |
| Title: _____ | Title: <u>Senior Vice President</u> |
| Date: _____ | Date: 6/24/02 |

# 2001 ADDENDUM TO
# MULTI-LINE DEDUCTIBLE PROGRAM AGREEMENT
(the "Addendum")

for **Delphi Automotive Systems Corporation**

Effective **October 1, 2001**

The terms and conditions stated in this 2001 Addendum apply only to the Policies listed below. All other terms and conditions of the Agreement are here incorporated by reference in their entirety.

Policy Listing

| DEDUCTIBLE POLICIES | | | |
|---|---|---|---|
| Policy Number | Policy Period | Deductible Limit | Issuing Company |
| GENERAL LIABILITY HDOG20307043 | 10/01/2001 to 10/01/2002 | $1,000,000 | *Pacific Employers Insurance Company |
| AUTOMOBILE LIABILITY ISAHO7682360 | 10/01/2001 to 10/01/2002 | $1,000,000 | *Pacific Employers Insurance Company |
| WORKERS' COMPENSATION WLRC43111322 WLRC43111449 WLRC4311136A | 10/01/2001 to 10/01/2002 | $2,000,000 Workers' Compensation ($1,240,000 in Minnesota) $1,000,000 Employers Liability | *Pacific Employers Insurance Company  * denotes Participating Company |

## WORKERS' COMPENSATION DEDUCTIBLE POLICIES

**1. Company Expenses:** Commencing on the effective date of this Addendum and for five months thereafter, the Insured will make a monthly payment to the Company by the Required Payment Date related to the above listed Workers' Compensation Deductible Policies. The first such payment shall be **$27,245** and the five subsequent payments shall be **$21,793** each. The total of all payments shall be the initial Company Expenses.

MULTTPA
12/18/98

1

**2. Recalculation of Company Expenses:** At the time of audit, the Company will recalculate and the Insured will pay Company Expenses related to the Workers' Compensation Deductible Policies based on the following components:

   a. $92,000 flat charge – not subject to adjustment; plus
   b. $30,000 flat charge.

**3. Allocated Loss Adjustment Expense:** For the Workers' Compensation Policies listed on this Addendum, the Insured will pay or will reimburse the Company for all Allocated Loss Adjustment Expense related to Claims under the Policies.

## GENERAL LIABILITY DEDUCTIBLE POLICIES/ AUTOMOBILE LIABILITY DEDUCTIBLE POLICIES

**1. General Liability Premium and Automobile Liability Premium:** Commencing on the effective date of this Addendum and for five months thereafter, the Insured will make a monthly payment to the Company by the Required Payment Date related to the above listed General Liability Policies and Automobile Liability Policies. The first such payment shall be $44,000 and the five subsequent payments shall be $13,200 each.

**2. Adjustment of General Liability and Automobile Liability Premium:** The General Liability and Automobile Liability premiums are flat charges and not subject to adjustment.

**3. Allocated Loss Adjustment Expense:** For General Liability and Automobile Liability, the Insured's share of the Allocated Loss Adjustment Expense is stated on the respective Policies listed in this Addendum.

## CLAIM ADMINISTRATION EXPENSE:

The Company will engage **Sedgwick CMS** (the "Claims Adjusting Service") to investigate, adjust, settle and provide for the defense of claims in all states, except the Designated Adjuster states listed below and Texas, arising under the Policies listed on this Addendum. The Insured and the Claims Adjusting Service will separately contract to effectuate recovery dollars for any appropriate claim.

The Company will provide such claims adjusting services for claims arising in the Designated Adjuster States.

The Insured will pay to the Company the Claim Administration Expense, comprised of:
   (i) Claim Handling Fee incurred according to actual claims count, at prices set forth in fee schedules, below;

MULTTPA
12/18/98

2

(ii) Claim Supervision Fee.

Claim Handling Fees are set forth in the following fee schedules:

(1) For Designated Adjuster States (Idaho, Maryland, Oregon and Virginia) and Texas:

| TYPE OF CLAIMS | FEE PER CLAIM |
|---|---|
| Workers' Compensation - Medical Only | $135 |
| Workers' Compensation - Indemnity | $1,000 |
| Workers' Compensation - Managed Medical Only | $500 |

(2) For all states other than Designated Adjuster States listed above: (As outlined in Claim Service Agreement with ~~Crawford~~ *Sedgwick* Exhibit A attached)

As used in this Addendum, the following terms shall be defined as set forth below:

"Indemnity" shall mean any claim for which benefits may be payable under a Policy (I) to repay all or a portion of wages lost due to a compensable injury or disease and/or (ii) to compensate for disfigurement.

"Medical Only" shall mean any claim other than Indemnity, including claims for which the claimant did not receive lost wage payments from the Company.

"Managed Medical Only'" shall mean any claim other than Indemnity, including claims for which the claimant did not receive lost wage payments from the Company, for which the total accumulated amount of medical payments by the Company exceeded $1,000.

MULTTPA
12/18/98

3

**IN WITNESS WHEREOF,** this **2001** Addendum to the Multi-line Deductible Program Agreement dated **October 1, 2000** has been duly executed by the parties hereto, each of which intends by its execution hereof to be legally bound by the terms of this Addendum and of the Agreement.

| **Delphi Automotive Systems Corporation** | **Pacific Employers Insurance Company** |
|---|---|
| THE INSURED | THE COMPANY |
| By: *[signature]* | By *[signature]* |
| | Ric Pena |
| Title: _Risk Manager_ | Title: Senior Vice President |
| Date: 06/19/2002 | Date: 6/24/02 |