RUSSELL & SHIVER, L.L.P.
Attorneys for Jon C. Cox
3102 Oak Lawn, Suite 600
Dallas, TX 75219
(214) 443-0800
Leon R. Russell

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------
In re:                                          :    Chapter 11
                                                :
DELPHI CORP., *et al.*,                         :    Case No. 05-44481 (RDD)
                                                :
                              Debtors.          :    (jointly administrated)
-------------------------------------------------------------  x

## MOTION FOR RELIEF FROM AUTOMATIC STAY

TO THE HONORABLE U.S. BANKRUPTCY COURT JUDGE:

Movant JON C. COX files this Motion For Relief From Automatic Bankruptcy Stay and respectfully requests that the enter an Order lifting the automatic stay now in effect, and in support shows the Court:

### FACTS

1. Debtors Delphi Corp., *et al.* ("Delphi") filed this case under Chapter 11 of Title 11 of the United States Code in the United States Bankruptcy Court for the Southern District of New York.

2. This Court has jurisdiction over this matter under 11 U.S.C. Section 362, 28 U.S.C. 1334 and 28 U.S.C. Section 157.

3. On or about September 21, 2004, Movant filed a lawsuit styled *Jon Cox v. General Motors Corporation*, Cause No. 2-04CV-332, in the United States District Court of the Eastern

District of Texas. On April 25, 2005, Defendants Cable Manufacturing & Assembly Co., Inc., and **Delphi Automotive Systems, LLC,** were added to the case. In this action, Movant seeks recovery of monetary damages against all Defendants, including Delphi, for their alleged negligence, as set forth more fully in Plaintiff's Second Amended Complaint attached as Exhibit "A" and incorporated by reference herein.

## MOTION TO LIFT STAY

4.  Movant does not, and will not, seek to recover any assets generally distributed to creditors. Movant's interest is solely in the proceeds, if any, of any applicable policies of insurance maintained by the Debtor which might provide coverage in this case. Movant's claim only an interest in the proceeds of any such insurance liability policies, which interest is contingent upon a finding of Debtor's liability to Movant by jury or other trier of fact. Good cause exists for the granting of this Motion, since no property of the bankruptcy estate which could be distributed to any other creditors is in any way affected, and because the Movant has no other means of recovery in connection with his suit for damages.

5.  With the exception of General Motors Corporation, Delphi's co-Defendants in the underlying case (Cable Manufacturing & Assembly Co., Inc., Teknor Apex Company, and Brown & Perkins, Inc.) do not oppose the stay being lifted.

## REQUEST FOR HEARING

6.  In accordance with the Case Management Procedures, Movant requests a hearing of this motion to lift stay at the next omnibus hearing date set before this Court.

## PRAYER

Movant prays that Court enter an Order lifting the automatic bankruptcy stay with respect to Movant's suit for damages so that Movant may proceed with the above-described suit and that

Movant may recover any damages awarded in said suit but limited solely to proceeds of any applicable liability insurance which the Debtor might have.

Dated: _DECEMBER 7th, 2005_    RUSSELL & SHIVER, L.L.P.
Counsel to Jon C. Cox

Leon R. Russell (*pro hac vice pending*)
**RUSSELL & SHIVER, LLP**
3102 Oak Lawn
Suite 600, LB 164
Dallas, Texas 75219
Phone: 214-443-0800
Fax:    214-443-0898
E-Mail: leon@rs-attorneys.com

# EXHIBIT "A"

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| JON C. COX § § Plaintiff, § § vs. § § GENERAL MOTORS CORPORATION § CABLE MANUFACTURING & § ASSEMBLY CO., INC., and § DELPHI AUTOMOTIVE SYSTEMS, LLC, § § Defendants, § § vs. § § TEKNOR APEX COMPANY and § BROWN & PERKINS, INC., § § Third-Party Defendants. § | CIVIL ACTION NO.: 2-04CV-332-TJW |

## PLAINTIFF'S SECOND AMENDED COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

COMES NOW, JON C. COX, complaining of GENERAL MOTORS CORPORATION, CABLE MANUFACTURING & ASSEMBLY CO., INC., and DELPHI AUTOMOTIVE SYSTEMS, LLC, and would show as follows:

### PARTIES

1. Plaintiff, Jon C. Cox is a citizen of the State of Texas and was a resident of Paris, Lamar County, Texas at the time of the incident in question.

2.     Defendant GENERAL MOTORS CORPORATION ("GM") is a Delaware corporation which has appeared and answered herein and is before the Court for all purposes.

3.     Defendant CABLE MANUFACTURING & ASSEMBLY CO., INC. ("CMAC") is an Ohio corporation which has appeared and answered herein and is before the Court for all purposes.

4.     Defendant DELPHI AUTOMOTIVE SYSTEMS LLC ("Delphi") is a Delaware corporation which has appeared and answered herein and is before the Court for all purposes.

## JURISDICTION

5.     This Court has diversity jurisdiction under 28 U.S.C. §1332 because complete diversity of citizenship exists between the parties, and the matter in controversy exceeds the sum of Seventy-Five Thousand Dollars ($75,000), exclusive of interest and costs.

## FACTS

6.     At the time of the incident in question, 44-year old Jon Cox was driving a dark grey 2002 Chevy Silverado Model C2500 4x4 Crew Cab pickup VIN: 1GCHK23162F162079, License Number: Texas 6YW-P41, which was designed, manufactured and distributed for sale by the Defendant General Motors Corporation.

7.     The subject vehicle contained tailgate support cables designed, manufactured and distributed by Defendant Cable Manufacturing & Assembly Co., Inc. or Shanghai Delphi Automotive Door and Security Systems Company Ltd., Inc. ("Shanghai Delphi") (a joint venture between Defendant Delphi Automotive and a Chinese company, Shanghai SIIC Transportation Electric Co. Ltd.)

8.     On or about 10:00 a.m. on February 28, 2004, Mr. Cox was standing on the tailgate of the pickup at his place of employment unloading materials in the pickup bed when the

tail gate cables broke, dropping Mr. Cox to the ground on his tailbone. As a result, Mr. Cox sustained a ruptured spinal disk. He continues to experience numbness and pain in his legs and back.

## CLAIMS

**General Motors - Product Liability**

9. At all times material hereto, GM was in the business of designing, manufacturing, marketing and distributing automobiles, including the 2002 Chevrolet Silverado in question. GM is thus the "manufacturer" of the 2002 Chevrolet Silverado in question within the meaning of TEX. CIV. PRAC. & REM. CODE ANN. § 82.001(4).

10. At the time the 2002 Chevrolet Silverado in question was introduced into the stream of commerce, it contained defective tailgate cables that permitted the Plaintiff to be dropped from the tailgate unexpectedly and without warning and seriously injured when he would not otherwise have been injured had the tailgate cables not broken. This tailgate cable defect, created either by design or manufacturing, rendered the Silverado unreasonably dangerous as designed, taking into consideration the utility of the tailgate cables design and the injury risks involved with their failure to provide adequate tailgate support during normal usage. Said tailgate cable design defect was a producing cause of the injuries and damages in question.

11. Safer alternative tailgate cable designs existed which, in all reasonable probability, would have prevented or significantly reduced the risk of failure and/or serious injury, without substantially impairing the vehicle's utility. These designs were economically and technologically feasible at the time the subject vehicle left the control of GM by the application of existing or reasonably achievable scientific knowledge.

12. Furthermore, there was a complete failure by GM to provide any warning of the possibility that the Chevy Silverado tailgate cables might not function as intended in circumstances such as the subject incident or might suddenly collapse, which risk was known or by the application of reasonably developed human skill and foresight should have been known to GM. This failure rendered the Chevy Silverado unreasonably dangerous as marketed.

13. There is no mandatory safety standard or regulation adopted or promulgated by the federal government or an agency of the federal government which was applicable to the product at issue at the time of its manufacture which governed the product risk that the Plaintiff alleges caused harm. Alternatively, any such standard or regulation was inadequate to protect the public from unreasonable risk of injury or damage, and/or the manufacturer either before or after marketing the product withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue.

**General Motors - Negligence**

14. Plaintiff alleges that GM committed acts of omission and commission in designing, testing, evaluating, manufacturing, marketing, and in failing to warn with regard to the Chevy Silverado tailgate cables, which acts, taken separately or together, constitute negligence. Such acts include, but are not limited to, failure to design it tailgate cables to withstand the foreseeable environments of usage; failure to test its tailgate cables to determine whether they provided reasonably adequate tailgate support; and, failure to warn that the tailgate cables might not support foreseeable loads on the tailgate and could suddenly fail. Such negligent acts or omissions were, in whole or in part, a proximate cause of the occurrence and injuries in question.

**Cable Manufacturing & Assembly Co., Inc. - Product Liability**

15.  At all times material hereto, CMAC was in the business of designing, manufacturing, marketing and distributing tailgate support cables, including the ones installed on the 2002 Chevrolet Silverado in question. CMAC is thus the "manufacturer" of the 2002 Chevrolet Silverado tailgate support cables in question within the meaning of TEX. CIV. PRAC. & REM. CODE ANN. § 82.001(4).

16.  At the time the tailgate support cables in question were introduced into the stream of commerce, they contained a defect which permitted them to snap, causing Plaintiff to be dropped from the tailgate unexpectedly and without warning and seriously injured when he would not otherwise have been injured had the tailgate cables not broken. This tailgate cable defect, created either by design or manufacturing, rendered the cables unreasonably dangerous as designed, taking into consideration the utility of the tailgate cables design and the injury risks involved with their failure to provide adequate tailgate support during normal usage. Said tailgate cable design defect was a producing cause of the injuries and damages in question.

17.  Safer alternative tailgate cable designs existed which, in all reasonable probability, would have prevented or significantly reduced the risk of failure and/or serious injury, without substantially impairing the vehicle's utility. These designs were economically and technologically feasible at the time the cables the control of CMAC by the application of existing or reasonably achievable scientific knowledge.

18.  Furthermore, there was a complete failure by CMAC to provide any warning of the possibility that the subject tailgate cables might not function as intended in circumstances such as the subject incident or might suddenly collapse, which risk was known or by the

application of reasonably developed human skill and foresight should have been known to CMAC. This failure rendered the Chevy Silverado unreasonably dangerous as marketed.

19.    There is no mandatory safety standard or regulation adopted or promulgated by the federal government or an agency of the federal government which was applicable to the product at issue at the time of its manufacture which governed the product risk that the Plaintiff alleges caused harm. Alternatively, any such standard or regulation was inadequate to protect the public from unreasonable risk of injury or damage, and/or the manufacturer either before or after marketing the product withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue.

**Cable Manufacturing & Assembly Co., Inc. - Negligence**

20.    Plaintiff alleges that CMAC committed acts of omission and commission in designing, testing, evaluating, manufacturing, marketing, and in failing to warn with regard to the Chevy Silverado tailgate cables, which acts, taken separately or together, constitute negligence. Such acts include, but are not limited to, failure to design it tailgate cables to withstand the foreseeable environments of usage; failure to test its tailgate cables to determine whether they provided reasonably adequate tailgate support; and, failure to warn that the tailgate cables might not support foreseeable loads on the tailgate and could suddenly fail. Such negligent acts or omissions were, in whole or in part, a proximate cause of the occurrence and injuries in question.

**Delphi Automotive - Product Liability**

21.    At all times material hereto, Delphi (through its joint venture subsidiary, Shanghai Delphi) was in the business of designing, manufacturing, marketing and distributing tailgate

support cables, including the ones installed on the 2002 Chevrolet Silverado in question. Delphi is thus the "manufacturer" of the 2002 Chevrolet Silverado tailgate support cables in question within the meaning of TEX. CIV. PRAC. & REM. CODE ANN. § 82.001(4).

22. At the time the tailgate support cables in question were introduced into the stream of commerce, they contained a defect which permitted them to snap, causing Plaintiff to be dropped from the tailgate unexpectedly and without warning and seriously injured when he would not otherwise have been injured had the tailgate cables not broken. This tailgate cable defect, created either by design or manufacturing, rendered the cables unreasonably dangerous as designed, taking into consideration the utility of the tailgate cables design and the injury risks involved with their failure to provide adequate tailgate support during normal usage. Said tailgate cable design defect was a producing cause of the injuries and damages in question.

23. Safer alternative tailgate cable designs existed which, in all reasonable probability, would have prevented or significantly reduced the risk of failure and/or serious injury, without substantially impairing the vehicle's utility. These designs were economically and technologically feasible at the time the cables the control of Delphi by the application of existing or reasonably achievable scientific knowledge.

24. Furthermore, there was a complete failure by Delphi to provide any warning of the possibility that the subject tailgate cables might not function as intended in circumstances such as the subject incident or might suddenly collapse, which risk was known or by the application of reasonably developed human skill and foresight should have been known to Delphi. This failure rendered the Chevy Silverado unreasonably dangerous as marketed.

25. There is no mandatory safety standard or regulation adopted or promulgated by the federal government or an agency of the federal government which was applicable to the

product at issue at the time of its manufacture which governed the product risk that the Plaintiff alleges caused harm. Alternatively, any such standard or regulation was inadequate to protect the public from unreasonable risk of injury or damage, and/or the manufacturer either before or after marketing the product withheld or misrepresented information or material relevant to the federal government's or agency's determination of adequacy of the safety standards or regulations at issue.

**Delphi Automotive - Negligence**

26. Plaintiff alleges that Delphi (through its joint venture subsidiary, Shanghai Delphi) committed acts of omission and commission in designing, testing, evaluating, manufacturing, marketing, and in failing to warn with regard to the Chevy Silverado tailgate cables, which acts, taken separately or together, constitute negligence. Such acts include, but are not limited to, failure to design it tailgate cables to withstand the foreseeable environments of usage; failure to test its tailgate cables to determine whether they provided reasonably adequate tailgate support; and, failure to warn that the tailgate cables might not support foreseeable loads on the tailgate and could suddenly fail. Such negligent acts or omissions were, in whole or in part, a proximate cause of the occurrence and injuries in question.

## DAMAGES

27. Jon Cox claims damages for past mental anguish and physical pain and suffering due to the injuries he sustained in this incident, which losses will, in all reasonable probability, be sustained in the future.

28. Jon Cox claims past pecuniary losses, including but not limited to past lost earnings. In all likelihood, he will sustain a loss of earning capacity in the future as well as other future pecuniary losses as well.

29. Jon Cox incurred reasonable expenses for the cost of necessary medical care. In all reasonable probability, he will continue to incur these expenses for necessary medical care in the future.

30. Jon Cox claims damages for past physical impairment, which impairment will, in all reasonable probability, be sustained in the future.

## EXEMPLARY DAMAGES

31. Defendant General Motor's acts and omissions were grossly negligent, reckless, and involved an entire want of care. These damages resulted from an objective and subjective conscious indifference to the rights, welfare and safety of the Plaintiff. Plaintiff suffered harm to which the Plaintiff seeks recovery of exemplary damages resulting from Defendants' fraud, malice, willful acts, omissions or gross neglect which, when viewed objectively from the standpoint of the Plaintiffs at the time of this incident, involves an extreme degree of risk considering the probability and magnitude of the potential harm to Plaintiff. The Defendants had actual, subjective awareness of the risks involved but nevertheless proceeded with conscious indifference to the rights, safety, or welfare to Plaintiff. Plaintiff therefore seeks exemplary damages. TEX. CIV. PRAC. & REM. CODE § 41.003; and Article XVI, Texas Constitution § 26.

## PRAYER

32. Plaintiff prays that the Defendants be cited to appear and answer herein, that this cause be set for trial before a jury, and that the Plaintiff recovers judgment of and from the Defendants, jointly and severally, for his actual damages together with the costs of suit, pre-judgment and post-judgment interest, and such other and further relief to which the Plaintiff may show himself justly entitled.

Respectfully submitted,

_____
Leon R. Russell
SBN: 17418500
Law Offices of Leon Russell, P.C.
3102 Oak Lawn Avenue, Suite 600, LB 164
Dallas, Texas 75219
Phone: (214) 443-0800
Fax: (214) 443-0898

Carl Roth
SBN: 17312000
Michael Smith
SBN: 18650410
The Roth Firm
P. O. Box 876
Marshall, Texas 75671
Phone: (903) 935-1665
Fax: (903) 935-1797

ATTORNEYS FOR PLAINTIFF

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3) this 20th day of OCTOBER, 2005. Any other counsel of record will be served by facsimile transmission and/or first class mail.

_____
Leon R. Russell