# EXHIBIT "A"

Table of Contents

---

# UNITED STATES
# SECURITIES AND EXCHANGE COMMISSION
## WASHINGTON, DC 20549

# FORM 8-K

## CURRENT REPORT
## PURSUANT TO SECTION 13 OR 15(D) OF
## THE SECURITIES EXCHANGE ACT OF 1934

Date of report (Date of earliest event reported) __December 19, 2005__

# Delphi Corporation
(Exact Name of Registrant as Specified in Its Charter)

| Delaware | 1-14787 | 38-3430473 |
|---|---|---|
| (State or Other Jurisdiction of Incorporation) | (Commission File Number) | (IRS Employer Identification No.) |

| 5725 Delphi Drive, Troy, MI | 48098 |
|---|---|
| (Address of Principal Executive Offices) | (Zip Code) |

(248) 813-2000
(Registrant's Telephone Number, Including Area Code)

(Former Name or Former Address, if Changed Since Last Report)

Check the appropriate box below if the Form 8-K filing is intended to simultaneously satisfy the filing obligation of the registrant under any of the following provisions (*see* General Instruction A.2. below):

☐ Written communications pursuant to Rule 425 under the Securities Act (17 CFR 230.425)

☐ Soliciting material pursuant to Rule 14a-12 under the Exchange Act (17 CFR 240.14a-12)

☐ Pre-commencement communications pursuant to Rule 14d-2(b) under the Exchange Act (17 CFR 240.14d-2(b))

☐ Pre-commencement communications pursuant to Rule 13e-4(c) under the Exchange Act (17 CFR 240.13e-4(c))

# TABLE OF CONTENTS

ITEM 8.01 OTHER EVENTS
ITEM 9.01 FINANCIAL STATEMENTS AND EXHIBITS
SIGNATURE
EXHIBIT INDEX
Text of the letter to the United States Trustee

**Table of Contents**

**ITEM 8.01 OTHER EVENTS**

On December 19, 2005, Delphi Corporation ("Delphi" or the "Company") responded in writing to the request for comment from the United States Trustee on a shareholder request for the appointment of a statutory equity committee to represent holders of Delphi's common stock in the chapter 11 cases filed with the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") of Delphi and its affiliated debtors and debtors in possession (collectively, the "Debtors"). The text of Delphi's letter to the United States Trustee is included as Exhibit 99(a). The request for appointment of such a committee was made by Appaloosa Management L.P., a shareholder of Delphi, pursuant to Section 1102 (a) of the United States Bankruptcy Code (the "Bankruptcy Code").

In its response, Delphi requested that the United States Trustee determine that it is premature to appoint an equity committee at this time and defer further consideration of the request at least until the Debtors file their statements of financial affairs and schedules of assets and liabilities in January 2006 and the United States Trustee has completed her conduct of the formal meeting of creditors required by Section 341 of the Bankruptcy Code (which is presently scheduled to take place in February 2006). Delphi also said that should the United States Trustee determine that a binding decision is required to be made at this early point in the Debtors' chapter 11 cases — even before the Debtors' first monthly operating report is filed later in December 2005 — the Debtors request that the United States Trustee determine not to exercise her statutory prerogative to form an equity committee.

Delphi noted that (i) official equity committees are rarely appointed in chapter 11 cases, (ii) Delphi's Board of Directors (10 of the 12 of which are independent directors) will adequately represent all stakeholders in their role to maximize the enterprise value of the Debtors, and (iii) it is highly unlikely that common equity holders will receive any value in the chapter 11 cases on account of the equity securities of Delphi Corporation, the parent holding company, which interests the Debtors believe are "hopelessly insolvent." Delphi noted that this observation is in stark contrast with the value of Delphi's non-United States ("U.S.") subsidiaries, which are not chapter 11 debtors, are continuing their business operations in the ordinary course of business without supervision from the Bankruptcy Court, and are not subject to the chapter 11 requirements of the Bankruptcy Code.

In light of the matters described in its response, Delphi considers the value of its common stock to be highly speculative and strongly cautions equity holders that the stock may ultimately be determined to have no value. Accordingly, the Company urges that appropriate caution be exercised with respect to existing and future investments in its common stock or other equity securities, or any claims relating to pre-petition liabilities.

The Company reiterated its commitment to use the chapter 11 process to address the competitiveness of Delphi's core U.S. operations and to negotiate with its key stakeholders over their respective contributions to the restructuring plan, as well as its expectation to emerge from chapter 11 as a stronger, more financially sound business with viable operations that are well-positioned to advance global enterprise objectives. Delphi further emphasized that its response to the United States Trustee regarding pre-petition equity interests should have no impact on its current operations or liquidity.

Additional information regarding Delphi's filing under the Bankruptcy Code, including access to court documents and other general information about the chapter 11 cases, is also available online at www.delphidocket.com.

This Current Report on Form 8-K, including the exhibits being filed as part of this report, as well as other statements made by Delphi may contain forward-looking statements within the "safe harbor" provisions of the Private Securities Litigation Reform Act of 1995, that reflect, when made, the Company's current views with respect to current events and financial performance. Such forward-looking statements are and will be, as the case may be, subject to many risks, uncertainties and factors relating to the Company's operations and business environment which may cause the actual results of the Company to be materially different from any future results, express or implied, by such forward-looking statements. Factors that could cause actual results to differ materially from these forward-looking statements include, but are not limited to, the following: the ability of the Company to continue as a going concern; the ability of the Company to operate pursuant to the terms of the debtor-in-possession ("DIP") facility; the Company's ability to obtain court approval with respect to motions in the chapter 11 proceeding prosecuted by it from time to time; the ability of the Company to develop, prosecute, confirm and consummate one or more plans of reorganization with respect to the chapter 11 cases; risks associated with third parties seeking and obtaining court approval to terminate or shorten the exclusivity period for the Company to propose and confirm one or more plans of reorganization, for the appointment of a chapter 11 trustee or to convert the cases to chapter 7 cases; the ability of the Company to obtain and maintain normal terms with vendors and service providers; the Company's ability to maintain contracts that are critical to its operations; the potential adverse impact of the chapter 11 cases on the Company's liquidity or results of operations; the ability of the Company to fund and execute its business plan; the ability of the Company to attract, motivate and/or retain key executives and associates; and the ability of the Company to attract and retain customers. Other risk factors are listed from time to time in the Company's United States Securities and Exchange Commission reports,

Table of Contents

including, but not limited to the Annual Report on Form 10-K for the year ended December 31, 2004 and its most recent Quarterly Report on Form 10-Q for the quarter ended September 30, 2005 and current reports on Form 8-K. Delphi disclaims any intention or obligation to update or revise any forward-looking statements, whether as a result of new information, future events and/or otherwise.

Similarly, these and other factors, including the terms of any reorganization plan ultimately confirmed, can affect the value of the Company's various pre-petition liabilities, common stock and/or other equity securities. Additionally, no assurance can be given as to what values, if any, will be ascribed in the bankruptcy proceedings to each of these constituencies. A plan of reorganization could result in holders of Delphi's common stock receiving no distribution on account of their interest and cancellation of their interests. As described in the Company's public statements in response to the request submitted to the United States Trustee for the appointment of a statutory equity committee, holders of Delphi's common stock and other equity interests (such as options) should assume that they will not receive value as part of a plan of reorganization. In addition, under certain conditions specified in the Bankruptcy Code, a plan of reorganization may be confirmed notwithstanding its rejection by an impaired class of creditors or equity holders and notwithstanding the fact that equity holders do not receive or retain property on account of their equity interests under the plan. In light of the foregoing and as stated in its October 8, 2005 press release announcing the filing of its chapter 11 reorganization cases, the Company considers the value of the common stock to be highly speculative and cautions equity holders that the stock may ultimately be determined to have no value. Accordingly, the Company urges that appropriate caution be exercised with respect to existing and future investments in Delphi's common stock or other equity interests or any claims relating to prepetition liabilities.

## ITEM 9.01 FINANCIAL STATEMENTS AND EXHIBITS

(c)  Exhibits. The following exhibit is being filed as part of this report.

| Exhibit Number | Description |
|---|---|
| 99 (a) | Text of the letter to the United States Trustee |

### SIGNATURE

Pursuant to the requirements of the Securities Exchange Act of 1934, the registrant has duly caused this report to be signed on its behalf by the undersigned hereunto duly authorized.

DELPHI CORPORATION

(Registrant)

Date: December 20, 2005

By: /s/ JOHN D. SHEEHAN
(John D. Sheehan,
Vice President and Chief Restructuring Officer,
Chief Accounting Officer and Controller)

**Table of Contents**

## EXHIBIT INDEX

| Exhibit Number | Description |
| --- | --- |
| 99 (a) | Text of the letter to the United States Trustee |

Exhibit 99(a)

[SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP LETTERHEAD]

December 19, 2005

Alicia M. Leonhard, Esq.
Trial Attorney
U.S. Department of Justice
Office of the United States Trustee
Region 2/Southern District of New York
33 Whitehall Street, Suite 2100
New York, New York 10004

Re: Request for Formation of Statutory Equity Committee
in *In re Delphi Corporation, et al.*, Lead Case
No. 05-44481 (RDD) (Jointly Administered)

Dear Alicia:

We are writing on behalf of Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") to respond to a letter dated November 7, 2005, from White & Case LLP, submitted on behalf of its client, Appaloosa Management L.P. ("Appaloosa"), requesting that the United States Trustee for Region 2 (the "UST") exercise her discretionary authority under Section 1102(a)(1) of the Bankruptcy Code to form an official statutory committee of equityholders in the Debtor's chapter 11 cases. We have reviewed the November 7 letter with the Board of Directors and executive management of the Debtors, as well as with the Debtors' Official Committee of Unsecured Creditors (the "Creditors'

Alicia M. Leonhard, Esq.
December 19, 2005
Page 2

Committee"), and we appreciate the opportunity to share with you the Debtors' position regarding Appaloosa's request to form a statutory equity committee.[1]

    In summary, the Debtors request that the UST determine that it is premature to appoint an equity committee at this time and defer further consideration of the request at least until the Debtors file their statements of financial affairs and schedules of assets and liabilities in January, 2006 and the UST has completed her conduct of the formal meeting of creditors required by Section 341 of the Bankruptcy Code (which is presently scheduled to take place in February, 2006). Should your office determine that a binding decision is required to be made at this early point in the Debtors' chapter 11 cases — even before the Debtors' first monthly operating report is filed later this month — the Debtors respectfully request that the UST decline to exercise her statutory prerogative to form an equity committee.

    As is discussed in greater detail below, official equity committees are rarely appointed in chapter 11 cases, Delphi's Board of Directors (10 of the 12 of which are independent directors) will adequately represent all stakeholders in their role to maximize the enterprise value of the Debtors, and it is highly unlikely that common equityholders will receive any value in the chapter 11 cases on account of the equity securities of Delphi Corporation, the parent holding company, which interests the Debtors believe are "hopelessly insolvent." This observation is in stark contrast with the value of Delphi's non-U.S. subsidiaries, which are not chapter 11 debtors, are continuing their business operations in the ordinary course of business without supervision from the Bankruptcy Court, and are not subject to the chapter 11 requirements of the U.S. Bankruptcy Code. Notwithstanding the inherent value that the Debtors believe is associated with Delphi's global business operations outside of the United States, the Debtors do not believe that such value can overcome the direct and indirect claims against the parent holding company on account of the non-competitive legacy liabilities and burdensome restrictions under current U.S. labor agreements as well as the realignment of Delphi's global product portfolio and manufacturing footprint that must be achieved to preserve the Debtors' core businesses.

### Background

    On October 8, 2005, Delphi Corporation and certain of its U.S. subsidiaries filed chapter 11 cases in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"). We refer you to the Affidavit of Robert S. Miller, Jr. filed in support of the First Day Motions in the Debtors' chapter 11 cases (Docket No. 7) for general background regarding the

---

[1]    A copy of this response will be filed on Form 8-K with the Securities and Exchange Commission.

Alicia M. Leonhard, Esq.
December 19, 2005
Page 3

Debtors' prepetition affairs and events leading up to the commencement of the chapter 11 cases. Also on October 8, 2005, the Debtors issued a press release reporting on the commencement of the chapter 11 cases which included the following cautionary paragraph:

> "Delphi also noted that the execution of its transformation plan through the chapter 11 process may give rise to the incurrence of additional prepetition claims as collective bargaining agreements, executory contracts, retiree health benefits and pension plans, and other liabilities of the company are addressed and resolved to maximize stakeholder value going forward. There is no assurance as to what values, if any, will be ascribed in the chapter 11 cases as to the value of Delphi's existing common stock and/or any other equity securities. Accordingly, the company urges that the appropriate caution be exercised with respect to existing and future investments in any of these securities as the value and prospects are highly speculative."[2]

On or about November 7, 2005, without prior substantive discussion with the Debtors, White & Case LLP delivered to the undersigned a copy of the November 7 letter to the UST. On November 28, 2005, White & Case LLP delivered to the undersigned a letter of even date from Appaloosa addressed to the Debtors' Board of Directors. (See Exhibit 1.) The November 7 and November 28 letters were discussed with the Board of Directors and the subject of a potential equity committee was discussed with the Creditors' Committee at meetings in Troy, Michigan on December 7 and December 9, respectively. On December 13, the Debtors were informed by the Creditors' Committee that the Creditors' Committee had voted to oppose the formation of an equity committee and had submitted its December 12 letter to your office.[**]

---

[2] Additional cautionary language has been included in the safe harbor statement used in the company's subsequent restructuring-related press releases cautioning current stakeholders and potential investors that "[n]o assurance can be given as to what values, if any, will be ascribed in the bankruptcy proceedings to each of these constituencies [the Company's various prepetition liabilities, common stock and/or other equity securities]. Accordingly, the Company urges that the appropriate caution be exercised with respect to existing and future investments in any of these liabilities and/or securities."

[**] While not agreeing with every statement in the Creditors' Committee submission, the Debtors concur with the Creditors' Committee conclusion that the appointment of an equity committee is not warranted in the Debtors' chapter 11 cases.

Alicia M. Leonhard, Esq.
December 19, 2005
Page 4

### Request for Formation of Equity Committee

As summarized above, the Debtors respectfully request that you determine not to exercise your statutory prerogative to appoint an equity committee at this time. At best, appointment of an equity committee would be premature and, at worst, futile and an unnecessary burden to the Debtors' estates and its reorganization prospects.

Among the factors that are examined by the United States Trustee when considering the appointment of a statutory equity committee are whether the Company's shares are widely held and publicly traded; the size and complexity of the chapter 11 cases; the delay and additional cost that would result if an equity committee were appointed; the likelihood of whether the debtor is insolvent; the timing of the request relative to the status of the chapter 11 cases; and whether the interests are otherwise adequately represented. In re Kalvar Microfilm, Inc., 195 B.R. 599, 600 (Bankr. D. Del. 1996).

The Debtors believe that the reported decision of Judge Lifland in the Bankruptcy Court rendered on July 24, 2002 in In re Williams Communs. Group, Inc., 281 B.R. 216 (Bankr. S.D.N.Y. 2002) provides helpful guidance to the UST in this District. Among many of the salient conclusions reached by Judge Lifland that have applicability to the request here is Judge Lifland's penultimate conclusion:

> "The appointment of official equity committees should be the rare exception. Such committees should not be appointed unless equity holders establish that (i) there is a substantial likelihood that they will receive a meaningful distribution in the case under a strict application of the absolute priority rule, and (ii) they are unable to represent their interests in the bankruptcy case without an official committee. The second factor is critical because, in most cases, even those equity holders who do expect a distribution in the case can adequately represent their interest without an official committee and can seek compensation if they make a substantial contribution in the case." (Id., at p. 222).

While the Debtors would fervently wish otherwise, Appaloosa has not demonstrated — and the Debtors cannot construct — a scenario in which these factors can be satisfied. This is largely because the claims associated with the Debtors' non-competitive U.S. legacy liabilities and burdensome U.S. labor agreements are direct claims against the U.S. parent holding company and are superior in priority to the interests of that entity's common shareholders.

Alicia M. Leonhard, Esq.
December 19, 2005
Page 5

    The conclusion that there is no meaningful distribution available for the common shareholders of the U.S. parent holding company is also shared by the capital markets. As shown in the attached capitalization summary, all four tranches of Delphi Corporation's publicly traded debt securities were trading as of December 16, 2005 at an implied recovery of between 49.8% and 51.0% of face value and Delphi Corporation's publicly traded trust preferred securities were trading at an implied recovery of 23.0% of face value. (See <u>Exhibit 2</u>.) Applying the absolute priority rule, there can be no recovery for interests when claims are not satisfied at full value. The capitalization summary also reflects that the balance sheet account for shareholders' equity as of September 30, 2005 reflected a <u>deficit</u> of $5.314 billion and that the common stock was trading on December 16, 2006 at $0.35, which the Debtors believe reflects a combination of option value and market inefficiencies.

    Accordingly, based on all of the relevant information available to the Debtors, the Debtors believe that if the Bankruptcy Court were required to make a determination today, there is a substantial likelihood that the Bankruptcy Court would determine that the Debtors are not solvent and meet the "appearance of hopeless insolvency" standard developed in applicable case law. The Debtors further believe that the Bankruptcy Court would therefore also conclude that any plan of reorganization capable of confirmation in accordance with the statutory priority rules of the Bankruptcy Code would result in holders of Delphi's common stock receiving no distribution on account of their interests and cancellation of their interests.[3] With respect to the issue of adequate representation, the Debtors believe that the Board of Directors, which is presently composed of twelve members (ten of which are independent directors including two new directors elected to the Board earlier this month), adequately represents its stakeholders in its fiduciary mission in the chapter 11 cases to maximize business enterprise value for all of the Debtors' stakeholders.

---

[3]     The safe harbor and risk factors language in the Company's Form 8-K filed in connection with this response and future restructuring related press releases will include the following language: "As described in the Company's public statements in response to the request submitted to the United States Trustee for the appointment of a statutory equity committee, holders of Delphi's common stock and other equity interests (such as options) should assume that they will not receive value as part of a plan of reorganization. In addition, under certain conditions specified in the Bankruptcy Code, a plan of reorganization may be confirmed notwithstanding its rejection by an impaired class of creditors or equity holders and notwithstanding the fact that equity holders do not receive or retain property on account of their equity interests under the plan. In light of the foregoing and as stated in its October 8, 2005 press release announcing the filing of its chapter 11 reorganization cases, the Company considers the value of the common stock to be highly speculative and cautions equity holders that the stock may ultimately be determined to have no value. Accordingly, the Company urges that appropriate caution be exercised with respect to existing and future investments in Delphi's common stock or other equity interests or any claims relating to prepetition liabilities."

Alicia M. Leonhard, Esq.
December 19, 2005
Page 6

    Moreover, <u>Williams</u> requires that, as a prerequisite to the formation of a statutory equity committee, equity holders must first establish that "they are unable to represent their interests in the bankruptcy case without an official committee. . . .[this] factor is critical because, in most cases, even those equity holders who do expect a distribution in the case can adequately represent their interest without an official committee and can seek compensation if they make a substantial contribution in the case." (<u>Id.</u>, at p. 222). This is particularly true here where Appaloosa is a highly sophisticated entity that has only recently invested in the Company at levels requiring public disclosure and has retained highly sophisticated professionals to represent it in the Debtors' chapter 11 cases.

    While the Debtors believe that the above two issues should be dispositive of the request pending before the United States Trustee, the Debtors also believe that the request does not satisfy many of the other factors traditionally relied upon by United States Trustees and the Bankruptcy Courts that have been called upon to review such requests. For example, the Debtors are very concerned about the additional costs and burdens that will be placed on the Debtors' estates by the appointment of a statutory equity committee. Similarly, the Debtors reserve their rights in all respects with respect to various statements and suggestions in the November 7 and November 28 letters from or on behalf of Appaloosa. The determination of the Debtors not to specifically address each and every statement in the November 7 and November 28 letters is not an admission against interest or an agreement with such statements, at least some of which the Debtors believe are materially inaccurate.

    In closing, on behalf of the Debtors, we want to again express our appreciation for your willingness to consider input from the Debtors with respect to this request for appointment of an additional statutory committee in the Debtors' chapter 11 cases as well as for your patience while the Debtors considered this matter both internally as a matter of prudent corporate governance and with the Creditors' Committee. Should you have any questions regarding these matters or would like further information from the Debtors, we would be happy to make ourselves available at your convenience.

                                      Sincerely yours,

                                      /s/ John Wm. Butler, Jr.

                                      John Wm. Butler, Jr.

Attachments

Alicia M. Leonhard, Esq.
December 19, 2005
Page 7

cc:  Mr. Robert S. Miller
     David M. Sherbin, Esq.
     Thomas E. Lauria, Esq.
     Robert J. Rosenberg, Esq.

---

# Delphi Corporation

## Capitalization summary

| | 2004A | Q2 '05 | Q3 '05 | 12/16/2005 Market Price | Market Value |
|---|---|---|---|---|---|
| Cash and Cash Equivalents | $964 | $988 | $1,652 | 100.0% | $2,488 |
| **Debt** | | | | | |
| DIP Revolver | -- | -- | -- | 99.5% | -- |
| DIP Term Loan B | -- | -- | -- | 101.6% | -- |
| Securitization & Factoring | $769 | $752 | $482 | 100.0% | $482 |
| Senior Secured Revolver | -- | -- | 1,500 | 102.3% | 1,534 |
| Senior Secured Term Loan B | -- | 995 | 988 | 104.1% | 1,028 |
| Other Secured Debt | 78 | 72 | 57 | 100.0% | 57 |
| Total Secured Debt | $847 | $1,819 | $3,027 | | $3,101 |
| 6.55% Sr. Unsec. Notes due 2006 | 500 | 500 | 500 | 50.5% | 253 |
| 6 1/2% Sr. Unsec. Notes due 2009 | 500 | 500 | 500 | 51.0% | 255 |
| 6 1/2% Sr. Unsec. Notes due 2013 | 500 | 500 | 500 | 49.8% | 249 |
| 7 1/8% Sr. Unsec. Debentures due 2029 | 500 | 500 | 500 | 51.0% | 255 |
| Other Unsecured Debt | 435 | 100 | 122 | 54.3% | 66 |
| Total Unsecured Debt | $2,435 | $2,100 | $2,122 | | $1,077 |
| Total Debt | $3,282 | $3,919 | $5,149 | | $4,178 |
| Trust Preferred | 412 | 412 | 412 | 23.0% | 95 |
| Total Debt incl. Trust Preferred | $3,694 | $4,331 | $5,561 | | $4,273 |
| Minority Interest | 198 | 165 | 161 | 100.0% | 161 |
| Stockholders' Equity | (3,555) | (4,557) | (5,314) | $0.35 | 194 |
| Total Capitalization | $338 | ($61) | $408 | | $4,628 |

Source: LoanX and Thomson 12/16/05

# Delphi Corporation

*Recent debt pricing*



Year-to-date historical pricing

— 6.55% Notes Due 2006  — 6.5% Notes Due 2009  — 6.5% Notes Due 2013
— 7.125% Notes Due 2029  — Trust Preferred Notes

Source: LeanX 12/16/05

# Delphi Corporation

*Recent stock pricing and market capitalization*




Source: Thomson 12/15/05