EXHIBIT "H"

FROM LATHAM & WATKINS LLP    (212) 751-4864    (MON) 12. 12' 05 17:56/ST. 17:53/NO. 4862163175 P 2

# LATHAM & WATKINS LLP

53rd at Third
885 Third Avenue
New York, New York 10022-4834
Tel: (212) 906-1200 Fax: (212) 751-4864
www.lw.com

FIRM / AFFILIATE OFFICES

| | |
|---|---|
| Boston | New York |
| Brussels | Northern Virginia |
| Chicago | Orange County |
| Frankfurt | Paris |
| Hamburg | San Diego |
| Hong Kong | San Francisco |
| London | Shanghai |
| Los Angeles | Silicon Valley |
| Milan | Singapore |
| Moscow | Tokyo |
| New Jersey | Washington, D.C. |

December 12, 2005

**Via Facsimile & Federal Express**

Deirdre A. Martini, Esq.
Alicia M. Leonhard, Esq.
Tracy H. Davis, Esq.
United States Trustee
33 Whitehall Street, Suite 2100
New York, NY 10004

Re:   In re Delphi Corporation, et al., Case No. 05-44481 (RDD):
      Opposition of Official Committee of Unsecured Creditors to request of
      Appaloosa Management L.P. for Appointment of Official Committee of
      Equity Security Holders.

Dear Ms. Martini, Ms. Leonard and Ms. Davis:

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases (the "Cases") of Delphi Corporation ("Delphi") and its debtor affiliates (collectively with Delphi, the "Debtors") opposes the request made by letter (the "Letter") of Appaloosa Management L.P. ("Appaloosa") for the appointment of an official committee of equity interest holders. As set forth below, Appaloosa's request should be denied in these Cases because (i) the interests of equity holders will be adequately represented, (ii) Appaloosa is highly sophisticated and capable of representing its own interests without burdening the Debtors' estates with the substantial additional administrative costs that would be incurred were an equity committee to be appointed, and (iii) Appaloosa has not satisfied its burden to show that the Debtors are solvent and that value is likely to exist for distribution to equity holders such as Appaloosa at the conclusion of these Cases. Accordingly, the Committee respectfully requests that the Office of the United States Trustee deny Appaloosa's request that an equity committee be appointed.

## Official Equity Committees are Rarely Appointed

Section 1102(a)(1) of the Bankruptcy Code provides that the United States Trustee may appoint an equity committee when it deems such an appointment to be appropriate. "The permissive language ('may') of the statute indicates that the [United States Trustee's] authority to appoint such a committee is discretionary." In re Williams Communications Group, Inc., 281 B.R. 216, 219 (Bankr. S.D.N.Y. 2002). In chapter 11 cases that have been filed in this and other districts, the Office of the United States Trustee has only rarely appointed official equity committees. In fact, it is rare that the appointment of an official equity committee is even sought

NY\1086791.3

December 12, 2005

Page 2

## LATHAM&WATKINS LLP

because of the well-recognized assumption that "[t]he appointment of official equity committees should be the rare exception." Id. at 223; Collier on Bankruptcy, 15th Ed. ¶ 1102.03[2] (stating that "appointment of committees of equity security holders is the exception rather than the rule in chapter 11 cases"). As discussed below, these Cases do not present circumstances compelling an exception to the general rule.

### Congress did not Mandate the Appointment of Official Equity Committees

"Congress' desire to protect shareholders in reorganization proceedings was not strong enough . . . to mandate the creation of equity committees." In re Johns-Manville Corporation, 68 B.R. 155, 160 (S.D.N.Y. 1986). Importantly, Congress recognized that appointing an equity committee would not always be appropriate: as the Court in Johns-Manville noted, "[w]hile Section 1102(b) states that a court *may* appoint an equity committee, Section 1102(a) *requires* the court to appoint an official committee to represent unsecured creditors. Thus, when Congress intended to mandate the appointment of a committee, it made its intention clear." Id. at 157, 159 (emphasis in original). These Cases clearly show why no such mandate was issued in the case of equity committees: because, as discussed below, appointment of an official equity committee is unnecessary and would be overly burdensome and costly to the Debtors' estates.

### The Interests of Existing Equity Holders Will be Adequately Represented

The legal standard for appointment of an official equity committee is that it must be "necessary to assure adequate representation . . . of equity security holders." 11 U.S.C. § 1102(a)(2). The Bankruptcy Code does not define "adequate representation," thereby leaving it within the discretion of bankruptcy courts to examine the facts of each case and determine if an additional committee is warranted. In re Beker Industries Corp., 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985); Johns-Manville, 68 B.R. at 159. In general, equity committees "should not be appointed unless equity holders establish that "they are unable to represent their interests . . . without an official committee." Williams, 281 B.R. at 223. "It is instructive to note that the statutory focus of section 1102(a)(2) is not whether the shareholders are 'exclusively' represented, but whether they are 'adequately' represented." Williams, 281 B.R. at 223; accord Polak v. Edison Bros. Stores (In re Edison Bros. Stores, Inc.), 1996 WL 534853, *4 (D. Del. Sept. 17, 1996).

Invariably, courts first look to the debtor's officers and directors to exercise their fiduciary duties on behalf of all stakeholders, including shareholders. Appaloosa acknowledges in its Letter that "Delphi's directors and managers have a fiduciary responsibility to look after shareholders' interests," going on to argue that "conflicting concerns often arise which make it difficult for such directors and management to follow the best course for non-insider public shareholders." Letter at 3. However, as one district court has noted in response to an argument similar to that made by Appaloosa in its Letter:

> [While it may be correct that in an insolvency context] management cannot exclusively advocate for the interests of shareholders, the statutory focus of § 1102(a)(2) is not whether shareholders are "exclusively" represented, but whether they are

NY\1086791.3

December 12, 2005
Page 3

## LATHAM&WATKINS LLP

> "adequately" represented. Until Congress recognizes that inherent conflicts of interest exist between management and public shareholders in the bankruptcy context that warrant the mandatory appointment of an equity committee, the statutory test remains "adequacy of representation" to be determined on the facts of each case. [citation omitted]. [Parties requesting the appointment of a committee] have the initial burden of developing a factual record to demonstrate the need for adequate representation. [citation omitted].

Edison 1996 WL 534853 at *4 (D. Del. 1996)(denying request on appeal for the appointment of an official equity committee).

The facts in these Cases satisfy the test of "adequacy of representation," and Appaloosa's request for the appointment of an equity committee should be denied because equity holders have been, and will continue to be, adequately represented in these Cases. Appaloosa's request should be viewed for what it is: an attempt by Appaloosa to advance its parochial interests at great expense to the Debtors' estates.

Appaloosa admits in its Letter that "unsecured creditors and shareholders possess a general identity of interest in seeing that the unsecured creditors are paid because of the 'absolute priority' rule mandates that junior interests retain nothing unless senior debt is paid in full." Letter at 2. Nevertheless, Appaloosa then questions the alignment of unsecured creditors' and equity holders' interests because the Committee "has neither a duty nor an incentive in these cases to maximize value for equity."

Appaloosa misses the point. While it is true that the Committee has no duty to represent equity holders' interests in these Cases, such interests are not inconsistent with the Committee's interest in maximizing the value of the Debtors' estates. Moreover, equity holders have been, and will continue to be, adequately represented and protected by (i) Debtors' management (which has a fiduciary obligation to safeguard such interests), and (ii) the equity holders themselves (including Appaloosa).

As noted above, courts first look to the debtor's officers and directors to exercise their fiduciary duties on behalf of all stakeholders, including shareholders. Regardless of whether the Debtors' management alone provides adequate representation of the interests of equity holders, such interests are also being indirectly furthered by the efforts of the Committee. Both unsecured Creditors and equity benefit from maximizing the value of the Debtors' estates. Williams, 281 B.R. at 222; In re Leap Wireless International, Inc., 295 B.R. 135, 139-40 (Bankr. S.D. Ca. 2003)(finding that the economic interests of bondholders and shareholders appear to be the same, to find the highest realistic value for the company). Courts have recognized such an alignment of interests in similar situations and deemed it relevant in determining whether equity holders' interests are adequately represented. Williams, 281 B.R. at 222; In re Baldwin-United Corp., 45 B.R. 375, 376 (Bankr. S.D. Ohio 1983). Here, as the Court in Williams found, "the Creditors' Committee has sufficiently aligned or parallel interests with the Shareholders to preclude the need for an additional committee." Williams, 281 B.R. at 223.

December 12, 2005
Page 4

**LATHAM&WATKINS**

Equity holders themselves are not voiceless in these Cases. Any party in interest has standing to be heard pursuant to 11 U.S.C. § 1109(b). Indeed, equity security holders could assert a collective voice through an unofficial committee, and seek reimbursement of their costs and attorneys fees under 11 U.S.C. § 503(b)(3) if their actions result in a substantial contribution to these Cases. Williams, 281 B.R. at 224. However, the right to be heard is not synonymous with the right to charge the Debtors' estates for the cost of professionals. In re Hills Stores Co., 137 B.R. 4, 7 (Bankr. S.D.N.Y. 1992). In the event that Appaloosa determines that the Debtors' Management has overlooked an opportunity to preserve value in these Cases that could provide a recovery for the Debtors' equity holders, Appaloosa certainly has the knowledge and resources to raise any such issues during the course of these cases:

- Appaloosa is a sophisticated investor, and has in the past been involved in complex chapter 11 proceedings.

- Appaloosa has already retained experienced counsel to represent its interests in these Cases.

- Appaloosa is currently the holder of approximately 9.3% of the Debtors' total issued and outstanding equity shares.

These Cases have been widely publicized. The Debtors have issued numerous press releases describing material developments, and various articles have been published regarding the Debtors' reorganization efforts. Despite the foregoing publicity, the Committee is not aware of any party but Appaloosa requesting the formation of an official equity committee. Notably, Appaloosa acquired its interests in the Debtors on or about October 10, 2005, after the commencement of these Cases. In short, Appaloosa voluntarily sought to involve itself in the Debtors' chapter 11 process. Appaloosa should not be allowed to burden the estates and unsecured creditors with the potentially huge additional costs associated with an official equity committee, all in an effort to further its junior interests and shift the burden of paying its own professionals.

### Appaloosa has Failed to Show that the Debtors' are Solvent

In addition to the foregoing factors, Appaloosa has failed to provide any meaningful evidence that the Debtors' estates are solvent. Despite speculation and innuendo in its Letter, Appaloosa has failed to meet its burden of proof with respect to this critical issue. Its failure compels denial of its request for the appointment of an official equity committee. See Williams, 281 B.R. at 220 ("the debtor's solvency is a major factor when considering the cost of appointing an equity committee.").

Various courts have recognized that "[w]hen a debtor appears to be hopelessly insolvent, an equity committee is not generally warranted.... As a result of the absolute priority rule, equity holders of a hopelessly insolvent debtor will receive no distribution. As such, the shareholders have no economic interest left to protect...." Williams, 281 B.R. at 220; see also In re Emons Indus., 50 B.R. 692, 694 (Bankr. S.D.N.Y. 1985) ("no equity committee should be appointed when it appears that a debtor is hopelessly insolvent"). Moreover, a debtor need not

December 12, 2005
Page 5

## LATHAM&WATKINS LLP

be hopelessly insolvent in order for courts to deny the appointment of an equity committee. The correct inquiry is whether the debtor "appears to be hopelessly insolvent." Williams, 281 B.R. at 221 (emphasis added). The Court in Williams made clear that equity holders bear the burden of proof with respect to solvency: "[Official equity] committees should not be appointed unless equity holders establish that (i) there is a substantial likelihood that they will receive a meaningful distribution in the case under a strict application of the absolute priority rule, and (ii) they are unable to represent their interests in the bankruptcy case without an official committee." Id at 223; see also In re Leap Wireless International, Inc., 295 B.R. 135, 140 (Bankr. S.D. Ca. 2003) ("[s]hareholders committees should be appointed when equity holders establish there is a substantial likelihood that they will receive a meaningful distribution in the case and that the existing committee(s) do not adequately represent their interests").

In its Letter, Appaloosa acknowledges that "According to the Debtors' petitions and the [Affidavit of Robert S. Miller, Jr. Under Local Bankruptcy Rule 1007-2 and in Support of Chapter 11 Petitions and Various First Day Applications and Motions (the "Miller Affidavit")], the Debtors and their non-debtor subsidiaries and affiliates collectively possess $17.1 billion in total assets and $22.1 billion in total liabilities." Letter at 5. See also Miller Affidavit at 7. While the Committee has not conducted a valuation of the Debtors, all current indications from the Debtors are that on a consolidated balance sheet basis, the Debtors' liabilities exceed their assets by approximately $5 billion. All senior liabilities must be satisfied in full before equity holders of Delphi Corporation can receive any distributions. While Appaloosa speculates in its Letter that value exists for equity holders in these Cases because "substantial unencumbered assets or assets with substantial residual value exist within legal entities with relatively little debt," it provides no evidence supporting this bald assertion.

Furthermore, Appaloosa's position that Delphi's payment of a $0.015 dividend to equity holders in June 2005 is evidence of the Debtors' solvency is inadequate to warrant the appointment of an official equity committee for several reasons. See Letter at 3. The Debtors' financial condition over 5 months ago is irrelevant here. The Debtors have stated that as recently as August 31, 2005, they were insolvent on a consolidated basis by approximately $5 billion. While the dividend referenced in Appaloosa's Letter was apparently made by Delphi in June 2005, Delphi Corporation's Board of Directors announced the elimination of such quarterly dividends in September 2005. Finally, the June 2005 dividend may have been made in violation of Delaware or other law.[1]

---

[1] The Miller Affidavit also indicates that "In the first two years following the Spin-Off [of the Debtors by General Motors Corporation in 1999], the Company generated more than $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales. Indeed, the [Debtors] experienced net operating losses of $608 million for the first six months of calendar year 2005 on six month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same period in calendar year 2004." Miller Affidavit at 11. The Debtors' poor financial performance, and the costs incurred in preparing for and commencing these Cases, further calls into question the allegations of solvency made by Appaloosa.

NY\1086791.3

December 12, 2005

Page 8

## LATHAM & WATKINS LLP

Appaloosa cannot satisfy its burden to show that the Debtors' are solvent simply by saying as much. Appaloosa has failed to identify and present evidentiary proof of solvency. For this reason, Appaloosa's request should be denied, and the Debtors' estates should be spared the significant costs that would result from the appointment of an official equity committee.

### The Appointment of an Official Equity Committee Will Result in Significant Costs to the Estates

Undoubtedly, significant additional costs would result from the appointment of an official equity committee because the equity committee would certainly seek to retain lawyers and financial advisors. In re Saxon Indus., Inc., 39 B.R. 945, 947 (Bankr. S.D.N.Y. 1984) (recognizing that the appointment of a committee raises cost concerns because it is "closely followed by applications to retain attorneys and accountants."). In addition to the financial costs of an official equity committee, there are also intangible "costs," such as the delay and disruption of the reorganization process that results from the appointment of an official equity committee. Johns-Manville, 68 B.R. at 160. These intangible costs should carefully be considered by your Office on the facts in these Cases. Although the expense factor alone should not prohibit the appointment of an official equity committee, when coupled with the facts set forth above, there is no reason for the Debtors' estates to be burdened with the potentially huge additional administrative costs that would result if such a committee is appointed. See Williams, 281 B.R. at 220.

Accordingly, we respectfully request that your Office deny Appaloosa's request for the appointment of an official equity committee.

Very truly yours,

Robert J. Rosenberg
of LATHAM & WATKINS LLP

cc: Thomas E. Lauria, Esq. (via facsimile)
John Wm. Butler, Esq. (via facsimile)
Members of the Official Committee of Unsecured Creditors (via electronic mail)