*6800093500*
*Indenture*

# AMENDED AND RESTATED DECLARATION OF TRUST

## AMONG

**DELPHI CORPORATION**
as Sponsor,

**BANK ONE TRUST COMPANY, N.A.**
as Property Trustee,

**BANK ONE DELAWARE, INC.**
as Delaware Trustee,

## AND

**THE ADMINISTRATIVE TRUSTEES NAMED HEREIN**
Dated as of October 28, 2003

**DELPHI TRUST I**

18

## TABLE OF CONTENTS

Page(s)

ARTICLE I DEFINED TERMS ...................................................................................2
    Section 1.01   Definitions ............................................................................2

ARTICLE II ESTABLISHMENT OF THE TRUST.....................................................10
    Section 2.01   Name ..................................................................................10
    Section 2.02   Office of the Delaware Trustee; Principal Place of Business..10
    Section 2.03   Organizational Expenses ..................................................11
    Section 2.04   Issuance of the Preferred Securities...................................11
    Section 2.05   Subscription and Purchase of Notes; Issuance of the Common
                    Securities............................................................................11
    Section 2.06   Declaration of Trust...........................................................12
    Section 2.07   Authorization to Enter into Certain Transactions...............12
    Section 2.08   Assets of the Trust .............................................................16
    Section 2.09   Title to Trust Property .......................................................16
    Section 2.10   Responsibilities of the Sponsor .........................................17
    Section 2.11   Certain Covenants of the Sponsor .....................................17
    Section 2.12   Guarantee of Payment of Trust Obligations ......................18
    Section 2.13   Execution of Documents.....................................................18

ARTICLE III PAYMENT ACCOUNT............................................................................18
    Section 3.01   Payment Account ...............................................................18

ARTICLE IV DISTRIBUTIONS; REDEMPTION; EXCHANGE ................................19
    Section 4.01   Distributions .....................................................................19
    Section 4.02   Optional Redemption, Mandatory Redemption and Special
                    Event Redemption ..............................................................20
    Section 4.03   Record Date for Redemption Price......................................22
    Section 4.04   Subordination of Common Securities..................................22
    Section 4.05   Payment Procedures..........................................................22
    Section 4.06   Tax Returns and Reports ...................................................22
    Section 4.07   Payment of Taxes, Duties, Etc. of the Trust .......................23
    Section 4.08   Payments under Indenture .................................................23

ARTICLE V TRUST SECURITIES CERTIFICATES ..................................................23
    Section 5.01   Initial Ownership ..............................................................23
    Section 5.02   The Trust Securities Certificates .......................................24
    Section 5.03   Delivery of Trust Securities Certificates ............................24
    Section 5.04   Registration of Transfer and Exchange of Preferred Securities;
                    Restrictions on Transfer.....................................................25

i

Section 5.05   Mutilated, Destroyed, Lost or Stolen Trust Securities
               Certificates ..................................................................27
Section 5.06   Persons Deemed Securityholders ....................................27
Section 5.07   Access to List of Securityholders' Names and Addresses.........27
Section 5.08   Maintenance of Office or Agency ...................................28
Section 5.09   Appointment of Paying Agent .......................................28
Section 5.10   Ownership of Common Securities by Sponsor.......................29
Section 5.11   Global Certificates; Non-Global Certificates; Common
               Securities Certificate..............................................29
Section 5.12   Notices to Clearing Agency..........................................30
Section 5.13   Definitive Preferred Securities Certificates .....................31
Section 5.14   Rights of Securityholders ...........................................31

ARTICLE VI ACT OF SECURITYHOLDERS; MEETINGS; VOTING.....................32

Section 6.01   Limitations on Voting Rights .......................................32
Section 6.02   Notice of Meetings ....................................................33
Section 6.03   Meetings of Preferred Securityholders .............................33
Section 6.04   Voting Rights ..........................................................33
Section 6.05   Proxies, Etc. ...........................................................33
Section 6.06   Securityholder Action by Written Consent .........................34
Section 6.07   Record Date for Voting and Other Purposes .......................34
Section 6.08   Acts of Securityholders..............................................34
Section 6.09   Inspection of Records ................................................36

ARTICLE VII REPRESENTATIONS AND WARRANTIES ...............................36

Section 7.01   Representations and Warranties of the Property Trustee and the
               Delaware Trustee ....................................................36
Section 7.02   Representations and Warranties of Sponsor .......................37

ARTICLE VIII THE TRUSTEES ..........................................................38

Section 8.01   Certain Duties and Responsibilities ..............................38
Section 8.02   Notice of Defaults....................................................39
Section 8.03   Certain Rights of Property Trustee ...............................41
Section 8.04   Not Responsible for Recitals or Issuance of Securities ..........44
Section 8.05   May Hold Securities ..................................................44
Section 8.06   Compensation; Indemnity; Fees.....................................44
Section 8.07   Property Trustee Required; Eligibility of Trustees...............45
Section 8.08   Conflicting Interests; Guarantee Described........................45
Section 8.09   Resignation and Removal; Appointment of Successor ..............46
Section 8.10   Acceptance of Appointment by Successor .........................47
Section 8.11   Merger, Conversion, Consolidation or Succession to Business .........48
Section 8.12   Preferential Collection of Claims Against Sponsor or Trust ..............48
Section 8.13   Reports by Property Trustee .......................................48
Section 8.14   Reports to the Property Trustee ...................................49
Section 8.15   Evidence of Compliance with Conditions Precedent ...............49

ii

Section 8.16     Number of Trustees ................................................................50
Section 8.17     Delegation of Power .............................................................50
Section 8.18     Appointment of Administrative Trustees ..............................50
Section 8.19     Administrative Trustee Meetings .........................................51
Section 8.20     Outside Businesses ...............................................................51

**ARTICLE IX TERMINATION, LIQUIDATION AND MERGER** .........................52

Section 9.01     Dissolution upon Expiration Date .........................................52
Section 9.02     Early Termination .................................................................52
Section 9.03     Termination ...........................................................................52
Section 9.04     Liquidation ............................................................................53
Section 9.05     Mergers, Consolidations, Amalgamations or Replacements of
                the Trust ................................................................................54

**ARTICLE X MISCELLANEOUS PROVISIONS** ...............................................55

Section 10.01    Limitation of Rights of Securityholders ...............................55
Section 10.02    Amendment ............................................................................55
Section 10.03    Separability ...........................................................................57
Section 10.04    Governing Law ......................................................................57
Section 10.05    Payments Due on Non-Business Day .....................................58
Section 10.06    Successors .............................................................................58
Section 10.07    Headings ...............................................................................58
Section 10.08    Reports, Notices and Demands .............................................58
Section 10.09    Trust Indenture Act; Conflict with Trust Indenture Act .......59
Section 10.10    Acceptance of Terms of Declaration, Guarantee and Indenture ..........59
Section 10.11    Counterparts ..........................................................................59

<u>EXHIBITS</u>

Exhibit A — Common Securities Certificate

Exhibit B — Preferred Securities Certificate

iii

# DELPHI TRUST I

Certain Sections of this Declaration
relating to Sections 310 through 318
of the Trust Indenture Act of 1939:

| TRUST INDENTURE ACT SECTION | | DECLARATION SECTION |
|---|---|---|
| Section 310 | (a)(1) | 8.7 |
| | (a)(2) | 8.7 |
| | (a)(4) | 2.7(a)(ii) |
| | (b) | 8.8 |
| Section 311 | (a) | 8.12 |
| | (b) | 8.12 |
| Section 312 | (a) | 5.7 |
| | (b) | 5.7 |
| | (c) | 5.7 |
| Section 313 | (a) | 8.13(a) |
| | (c) | 10.8 |
| | (d) | 8.13(c) |
| | (a)(4) | 8.13(b) |
| | (b) | 8.13(b) |
| Section 314 | (a) | 8.14 |
| | (b) | Not Applicable |
| | (c)(1) | 8.15 |

iv

| | | |
|---|---|---|
| | (c)(2) | 8.15 |
| | (c)(3) | Not Applicable |
| | (d) | Not Applicable |
| | (e) | 1.1, 8.15 |
| Section 315 | (a) | 8.1(a), 8.3(a) |
| | (b) | 8.2, 10.8 |
| | (c) | 8.1(a) |
| | (d) | 8.1, 8.3 |
| | (e) | Not Applicable |
| Section 316 | (a) | Not Applicable |
| | (a)(1)(A) | Not Applicable |
| | (a)(1)(B) | Not Applicable |
| | (a)(2) | Not Applicable |
| | (b) | Not Applicable |
| | (c) | 6.7 |
| Section 317 | (a)(1) | Not Applicable |
| | (b) | 5.9 |
| Section 318 | (a) | 10.10 |

*Note: This reconciliation and tie sheet shall not, for any purpose, be deemed to be a part of the Declaration.

v

**AMENDED AND RESTATED DECLARATION OF TRUST**, dated as of October 28, 2003 among (i) Delphi Corporation, a Delaware corporation (including any successors or assigns, the "Sponsor"), (ii) Bank One Trust Company, N.A., a national banking association, as property trustee (in such capacity, the "Property Trustee" and, in its personal capacity and not in its capacity as Property Trustee, the "Bank"), (iii) Bank One Delaware, Inc., a Delaware corporation, as Delaware trustee (in such capacity, the "Delaware Trustee") and (iv) J.T. Battenberg III, an individual, and Alan S. Dawes, an individual, each of whose address is c/o Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098, (each, an "Administrative Trustee" and, collectively, the "Administrative Trustees" and, collectively with the Property Trustee and Delaware Trustee, the "Trustees"). The Sponsor and the Trustees hereby agree as follows:

## WITNESSETH:

WHEREAS, the Sponsor, the Delaware Trustee and J.T. Battenberg III and Alan S. Dawes, as administrative trustees, have heretofore duly declared and established a statutory trust pursuant to the Delaware Statutory Trust Act by the entering into a Declaration of Trust, dated as of August 25, 2003 (the "Original Declaration"), and by the execution and filing by the Delaware Trustee and J.T. Battenberg III and Alan S. Dawes, as administrative trustees, with the Secretary of State of the State of Delaware of a certificate of trust, filed on August 25, 2003, for the sole purpose of issuing and selling certain securities representing undivided beneficial interests in the assets of the Trust (as defined herein) and investing the proceeds thereof in the Notes (as defined herein);

WHEREAS, as of the date hereof, no interests in the Trust have been issued; and

WHEREAS, the Sponsor and the Trustees desire to amend and restate the Original Declaration in its entirety as set forth herein to provide for, among other things, (i) the issuance and sale of the Common Securities (as defined herein) by the Trust to the Sponsor, (ii) the issuance and sale of the Preferred Securities (as defined herein) by the Trust pursuant to the Underwriting Agreement (as defined herein) and (iii) the acquisition by the Trust from the Sponsor of all of the right, title and interest in the Notes;

NOW, THEREFORE, in consideration of the agreements and obligations set forth herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, each party, for the benefit of the other party and for the benefit of the Holders (as defined herein) of the Preferred Securities, hereby amends and restates the Original Declaration in its entirety and agrees as follows:

# ARTICLE 1

# DEFINED TERMS

Section 1.01   _Definitions_

For all purposes of this Declaration, except as otherwise expressly provided or unless the context otherwise requires:

(a)   the terms defined in this Article have the meanings assigned to them in this Article and include the plural as well as the singular;

(b)   all other terms used herein that are defined in the Trust Indenture Act, either directly or by reference therein, have the meanings assigned to them therein;

(c)   unless the context otherwise requires, any reference to an "Article", "Section" or an "Exhibit" refers to an Article, Section or an Exhibit, as the case may be, of this Declaration; and

(d)   the words "herein", "hereof" and "hereunder" and other words of similar import refer to this Declaration as a whole and not to any particular Article, Section or other subdivision.

"Act" has the meaning specified in Section 6.08.

"Additional Amount" means, with respect to Trust Securities of a given Liquidation Amount and a given period, the amount of Compounded Interest (as defined in the Notes) paid by the Sponsor on a Like Amount of Notes for such period.

"Additional Sums" means, with respect to the Trust Securities, the amount of Additional Sums (as defined in the Notes) paid by the Sponsor on the Notes.

"Administrative Trustee" means each of J.T. Battenberg III and Alan S. Dawes, each solely in his capacity as Administrative Trustee of the Trust continued hereunder and not in her individual capacity, or such Administrative Trustee's successor in interest in such capacity, or any successor in interest in such capacity, or any successor administrative trustee appointed as herein provided.

"Affiliate" of any specified Person means any other Person directly or indirectly controlling or controlled by or under direct or indirect common control with such specified Person, provided, however that an Affiliate of the Sponsor shall not be deemed to include the Trust. For the purposes of this definition, "control" when used with respect to any specified Person means the power to direct the management and policies of such Person, directly or

2

indirectly, whether through the ownership of voting securities, by contract or otherwise; and the terms "controlling" and "controlled" have meanings correlative to the foregoing.

"Applicable Procedures" means, with respect to any transfer or transaction involving a Global Certificate or beneficial interest therein, the rules and procedures of the Clearing Agency for such security, in each case to the extent applicable to such transaction and as in effect from time to time.

"Authorized Officer" of a Person means any Person that is authorized to bind such Person.

"Bank" has the meaning specified in the preamble to this Declaration.

"Bankruptcy Event" means, with respect to any Person:

(a)     the entry of a decree or order by a court having jurisdiction in the premises judging such Person as bankrupt or insolvent, or approving as properly filed a petition seeking reorganization, arrangement, adjudication or composition of or in respect of such Person under any applicable federal or state bankruptcy, insolvency, reorganization or other similar law, or appointing a receiver, liquidator, assignee, trustee, sequestrator (or other similar official) of such Person or of any substantial part of its property or ordering the winding-up or liquidation of its affairs, and the continuance of any such decree or order unstayed and in effect for a period of 60 consecutive days; or

(b)     the institution by such Person of proceedings to be adjudicated as bankrupt or insolvent, or the consent by it to the institution of bankruptcy or insolvency proceedings against it, or the filing by it of a petition or answer or consent seeking reorganization or relief under any applicable federal or state bankruptcy, insolvency, reorganization or other similar law, or the consent by it to the filing of any such petition or to the appointment of a receiver, liquidator, assignee, trustee, sequestrator (or similar official) of such Person or of any substantial part of its property, or the making by it of an assignment for the benefit of creditors, or the admission by it in writing of its inability to pay its debts generally as they become due and its willingness to be adjudicated a bankrupt, or the taking of corporate action by such Person in furtherance of any such action.

"Board of Directors" means either the board of directors of the Sponsor or any committee of that board duly authorized to act hereunder.

"Business Day" means each Monday, Tuesday, Wednesday, Thursday and Friday which is not (1) a day on which banking institutions in the City of New York are authorized or obligated by law or executive order to remain closed or (2) a day on which the Corporate Trust

3

Office of the Property Trustee or the corporate trust office of the Note Trustee is closed for business.

"Certificate Depository Agreement" means the Letter of Representations by the Trust and accepted by The Depository Trust Company, as the initial Clearing Agency, dated as of the Closing Date, relating to the Preferred Securities Certificates, as the same may be amended and supplemented from time to time.

"Clearing Agency" means an organization registered as a "clearing agency" pursuant to Section 17A of the Securities Exchange Act of 1934, as amended, that has been designated to act as depositary for the Preferred Securities pursuant to the Certificate Depository Agreement. The Depository Trust Company will be the initial Clearing Agency.

"Clearing Agency Participant" means a broker, dealer, bank, other financial institution or other Person for whom from time to time a Clearing Agency effects book-entry transfers and pledges of securities deposited with the Clearing Agency.

"Closing Date" means the date on which the Preferred Securities are issued and delivered under the Underwriting Agreement.

"Code" means the Internal Revenue Code of 1986, as amended from time to time, or any successor legislation.

"Commission" means the Securities and Exchange Commission, as from time to time constituted, created under the Securities Exchange Act of 1934, as amended, or, if at any time after the execution of this instrument such Commission is not existing and performing the duties now assigned to it under the Trust Indenture Act, then the body performing such duties at such time.

"Common Securities Certificate" means a certificate evidencing ownership of Common Securities, substantially in the form attached as Exhibit A.

"Common Securities Purchase Agreement" means the Common Securities Purchase Agreement, dated as of October 28, 2003, between the Trust and the Sponsor.

"Common Security" means an undivided beneficial interest in the assets of the Trust, having a Liquidation Amount with respect to the assets of the Trust of $25 and having the rights provided therefor in this Declaration, including the right to receive Distributions and a Liquidation Distribution as provided herein.

"Corporate Trust Office" means the corporate trust office of the Property Trustee at which at any particular time its corporate trust business shall be administered, which office at the date hereof is located at 1111 Polaris Parkway, Mail Suite OH1-0181, Columbus, Ohio 43240, Attention: Global Corporate Trust Services.

"Covered Person" means (a) any officer, director, trustee, shareholder, partner, member, representative, employee or agent of (i) the Trust or (ii) the Trust's Affiliates; and (b)

4

any Holder of Trust Securities.

"Declaration" means this Amended and Restated Declaration of Trust, as the same may be modified, amended or supplemented in accordance with the applicable provisions hereof, including all exhibits hereto, including, for all purposes of this Declaration any such modification, amendment or supplement, the provisions of the Trust Indenture Act that are deemed to be a part of and govern this Declaration and any such modification, amendment or supplement, respectively.

"Definitive Preferred Securities Certificates" means either or both (as the context requires) of (a) Preferred Securities Certificates that are not Global Certificates issued in certificated, fully registered form as provided in Section 5.11(b) and (b) Preferred Securities Certificates that are not Global Certificates issued in certificated, fully registered form as provided in Section 5.13.

"Delaware Statutory Trust Act" means Chapter 38 of Title 12 of the Delaware Code, 12 Del. C. §§ 3801 et seq., as it may be amended from time to time.

"Delaware Trustee" means the Person identified as the "Delaware Trustee" in the preamble to this Declaration solely in its capacity as Delaware Trustee of the Trust continued hereunder and not in its individual capacity, or its successor in interest in such capacity, or any successor Delaware trustee appointed as herein provided.

"Direct Action" has the meaning specified in Section 6.08(e).

"Distribution Date" has the meaning specified in Section 4.01(a).

"Distributions" means amounts payable in respect of the Trust Securities as provided in Section 4.01.

"Early Termination Event" has the meaning specified in Section 9.02.

"Event of Default" means the occurrence of a Note Event of Default, whatever the reason for such Note Event of Default and whether it shall be voluntary or involuntary or be effected by operation of law or pursuant to any judgment, decree or order of any court or any order, rule or regulation of any administrative or governmental body.

"Expiration Date" has the meaning specified in Section 9.01.

"Global Certificate" means a Preferred Security Certificate that is registered in the Security Register in the name of a Clearing Agency or a nominee thereof.

"Guarantee" means the Guarantee Agreement executed and delivered by the Sponsor and Bank One Trust Company, N.A., a national banking association, as guarantee trustee, contemporaneously with the execution and delivery of this Declaration, for the benefit of the Holders of the Preferred Securities, as amended from time to time.

5

"Holder" means a Person in whose name a Trust Securities Certificate representing a Trust Security is registered, such Person being a beneficial owner within the meaning of the Delaware Statutory Trust Act.

"Indemnified Person" has the meaning specified in Section 8.06(c).

"Indenture" means the Indenture, dated as of October 28, 2003 between the Sponsor and the Note Trustee, as amended or supplemented from time to time.

"Lien" means any lien, pledge, charge, encumbrance, mortgage, deed of trust, adverse ownership interest, hypothecation, assignment, security interest or preference, priority or other security agreement or preferential arrangement of any kind or nature whatsoever.

"Like Amount" means (a) with respect to a redemption of any Trust Securities, Trust Securities having an aggregate Liquidation Amount equal to the principal amount of Notes to be contemporaneously redeemed in accordance with the Indenture, the proceeds of which will be used to pay the applicable Redemption Price of such Trust Securities, (b) with respect to a distribution of Notes to Holders of Trust Securities in connection with a dissolution or liquidation of the Trust, Notes having a principal amount equal to the aggregate Liquidation Amount of the Trust Securities of the Holder to whom such Notes are distributed, and (c) with respect to any distribution of Additional Amounts to Holders of Trust Securities, Notes having a principal amount equal to the aggregate Liquidation Amount of the Trust Securities in respect of which such distribution is made.

"Liquidation Amount" means an amount with respect to the assets of the Trust equal to $25 per Trust Security.

"Liquidation Date" means each date on which Notes or cash are to be distributed to Holders of Trust Securities in connection with a dissolution and liquidation of the Trust pursuant to Section 9.04(a).

"Liquidation Distribution" has the meaning specified in Section 9.04(d).

"1940 Act" means the Investment Company Act of 1940, as amended.

"Note Event of Default" means an "Event of Default" as defined in the Indenture.

"Note Purchase Agreement" means the Note Purchase Agreement, dated as of October 28, 2003, between the Trust and the Sponsor.

"Note Redemption Date" means, with respect to any Notes to be redeemed under the Indenture, the date fixed for redemption thereof under the Indenture.

"Note Trustee" means the Person identified as the "Trustee" in the Indenture, solely in its capacity as Trustee pursuant to the Indenture and not in its individual capacity, or its successor in interest in such capacity, or successor Trustee appointed as provided in the Indenture.

6

"Notes" means up to $257,731,975 aggregate principal amount of the Sponsor's 8.25% junior subordinated Notes due 2033 issued pursuant to the Indenture.

"Officers' Certificate" means, with respect to any Person, a certificate signed by two Authorized Officers of such Person or, if such Person is an individual, signed by such Person. Any Officers' Certificate delivered with respect to compliance with a condition or covenant provided for in this Declaration shall include:

(a)     a statement that each officer signing the Officers' Certificate has read the covenant or condition and the definitions relating thereto;

(b)     a brief statement of the nature and scope of the examination or investigation undertaken by each officer in rendering the Officers' Certificate;

(c)     a statement that each officer has made such examination or investigation as, in such officer's opinion, is necessary to enable such officer to express an informed opinion as to whether or not such covenant or condition has been complied with; and

(d)     a statement as to whether, in the opinion of each such officer, such condition or covenant has been complied with.

"Opinion of Counsel" means a written opinion of counsel, who may be counsel for the Trust, the Property Trustee or the Sponsor, and who may be an employee of any thereof and who shall be reasonably acceptable to the Property Trustee. Any Opinion of Counsel delivered with respect to compliance with a condition or covenant provided for in this Declaration shall include:

(a)     a statement that each individual signing the Opinion of Counsel has read the covenant or condition and the definitions relating thereto;

(b)     a brief statement of the nature and scope of the examination or investigation undertaken by each individual in rendering the Opinion of Counsel;

(c)     a statement that each individual has made such examination or investigation as is necessary to enable such individual to express an informed opinion as to whether or not such covenant or condition has been complied with; and

(d)     a statement as to whether, in the opinion of each such individual, such condition or covenant has been complied with.

"Original Declaration" has the meaning specified in the recitals to this Declaration.

7

"Outstanding", when used with respect to Trust Securities, means, as of the date of determination, all Trust Securities theretofore executed and delivered under this Declaration, except:

    (a)    Trust Securities theretofore canceled by the Security Registrar or delivered to the Security Registrar for cancellation;

    (b)    Trust Securities for whose payment or redemption money in the necessary amount has been theretofore deposited with the Property Trustee or any Paying Agent for the Holders of such Trust Securities; provided that, if such Trust Securities are to be redeemed, notice of such redemption has been duly given pursuant to this Declaration; and

    (c)    Trust Securities which have been paid or in exchange for or in lieu of which other Trust Securities have been executed and delivered pursuant to Section 5.05;

provided, however, that in determining whether the Holders of the requisite Liquidation Amount of the Outstanding Trust Securities have given any request, demand, authorization, direction, notice, consent or waiver hereunder, Trust Securities owned by the Sponsor, any Administrative Trustee or any Affiliate of the Sponsor or any Administrative Trustee shall be disregarded and deemed not to be Outstanding, except that (a) in determining whether any Trustee shall be protected in relying upon any such request, demand, authorization, direction, notice, consent or waiver, only Trust Securities that an officer of such Trustee involved in the administration of this Declaration actually knows to be so owned shall be so disregarded and (b) the foregoing shall not apply at any time when all of the Outstanding Trust Securities are owned by the Sponsor, one or more of the Administrative Trustees and/or any such Affiliate. Trust Securities so owned which have been pledged in good faith may be regarded as Outstanding if the pledgee establishes to the satisfaction of the Security Registrar the pledgee's right so to act with respect to such Trust Securities and that the pledgee is not the Sponsor, any Administrative Trustee or any Affiliate of the Sponsor or any Administrative Trustee.

"Owner" means each Person who is the beneficial owner of Preferred Securities as reflected in the records of the Clearing Agency or, if a Clearing Agency Participant is not the Owner, then as reflected in the records of a Person maintaining an account with such Clearing Agency (directly or indirectly, in accordance with the rules of such Clearing Agency).

"Paying Agent" means any paying agent or co-paying agent appointed pursuant to Section 5.09.

"Payment Account" means a segregated non-interest bearing trust account maintained by the Property Trustee with the Bank in its trust department for the benefit of the Securityholders in which all amounts paid in respect of the Notes will be held and from which the Property Trustee shall make payments to the Securityholders in accordance with Section 4.01. The Payment Account shall be an account that is maintained with a banking institution (which may be the Property Trustee) the rating on whose long-term unsecured indebtedness is at

8

least equal to the rating assigned to the Preferred Securities by a "nationally recognized statistical rating organization," as that term is defined for purposes of Rule 436(g)(2) under the Securities Act.

"Person" means any individual, corporation, partnership, joint venture, trust, limited liability company, unincorporated organization or government or any agency or political subdivision thereof or any other entity.

"Preferred Securities Certificate" means a certificate evidencing ownership of Preferred Securities, substantially in the form attached as Exhibit B.

"Preferred Security" means an undivided beneficial interest in the assets of the Trust, having a Liquidation Amount with respect to the assets of the Trust of $25 and having the rights provided therefor in this Declaration, including the right to receive Distributions and a Liquidation Distribution as provided herein.

"Property Trustee" means the commercial bank or trust company identified as the "Property Trustee" in the preamble to this Declaration solely in its capacity as Property Trustee of the Trust heretofore formed and continued hereunder and not in its individual capacity, or its successor in interest in such capacity, or any successor property trustee appointed as herein provided.

"Redemption Date" means, with respect to any Trust Security to be redeemed, each Note Redemption Date.

"Redemption Price" means, with respect to any Trust Security, $25 per Trust Security, plus accumulated and unpaid Distributions (including any Additional Amounts) to the Redemption Date.

"Relevant Trustee" has the meaning specified in Section 8.09(a).

"Securities Act" means the Securities Act of 1933, as amended.

"Security Register" and "Security Registrar" have the respective meanings specified in Section 5.04.

"Securityholder" has the same meaning as "Holder."

"Special Event" means a Tax Event or an Investment Company Event (each as defined in the Notes).

"Sponsor" has the meaning specified in the preamble to this Declaration.

"Successor Delaware Trustee" has the meaning specified in Section 8.09(c).

"Successor Property Trustee" has the meaning specified in Section 8.09(b).

9

"Successor Securities" has the meaning specified in Section 9.05.

"Successor Trustee" means either the Successor Delaware Trustee or the Successor Property Trustee."

"Trust" means the Delaware statutory trust continued hereby and identified on the cover page of this Declaration.

"Trust Indenture Act" means the Trust Indenture Act of 1939 as amended and in force at the date as of which this instrument was executed; provided, however, that in the event the Trust Indenture Act of 1939 is amended after such date, "Trust Indenture Act" means, to the extent required by any such amendment, the Trust Indenture Act of 1939 as so amended.

"Trust Property" means (a) the Notes, (b) any cash on deposit in, or owing to, the Payment Account and (c) all proceeds and rights in respect of the foregoing to be held by the Property Trustee pursuant to the terms of this Declaration for the benefit of the Securityholders.

"Trust Securities Certificate" means any one of the Common Securities Certificates, the Global Certificates or the Preferred Securities Certificates.

"Trust Security" means any one of the Common Securities or the Preferred Securities.

"Trustees" has the meaning specified in the preamble to this Declaration.

"Underwriting Agreement" means the Underwriting Agreement dated as of October 21, 2003 for the offering and sale of the Preferred Securities.

# ARTICLE II

## ESTABLISHMENT OF THE TRUST

### Section 2.01    Name

The Trust continued by this Declaration shall be known as "Delphi Trust I" as such name may be modified from time to time by the Administrative Trustees following written notice to the Holders of Trust Securities and the other Trustees. The Trust's activities may be conducted under the name of the Trust or any other name deemed advisable by the Administrative Trustees.

### Section 2.02    Office of the Delaware Trustee; Principal Place of Business

The address of the Delaware Trustee in the State of Delaware is c/o Bank One Delaware, Inc., Three Christina Centre, 201 Walnut Street, Wilmington, Delaware 19801, Attention: Global Corporate Trust Services, or such other address in the State of Delaware as the Delaware Trustee may designate by written notice to the Securityholders and the Sponsor. The

10

principal executive office of the Trust is c/o Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098.

### Section 2.03    Organizational Expenses

The Sponsor shall pay organizational expenses of the Trust as they arise or shall, upon request of any Trustee, promptly reimburse such Trustee for any such expenses paid by such Trustee. The Sponsor shall make no claim upon the Trust Property for the payment of such expenses.

### Section 2.04    Issuance of the Preferred Securities

On October 21, 2003, the Sponsor, both on its own behalf and on behalf of the Trust, pursuant to the Original Declaration, executed and delivered the Underwriting Agreement, which action is hereby ratified and confirmed on behalf of the Trust.  The Administrative Trustees shall, on behalf of the Trust, issue Preferred Securities having such terms as are set forth in this Declaration.  On the Closing Date, an Administrative Trustee, on behalf of the Trust, shall execute in accordance with Section 5.02 one or more permanent Global Certificates in definitive, fully registered form which shall be delivered to the Clearing Agency or a nominee thereof or a custodian therefor and registered in the name of the Clearing Agency or a nominee thereof, in an aggregate amount sold as provided in the Underwriting Agreement, against receipt of the purchase price of such Preferred Securities of $25 per Preferred Security, which amount the Administrative Trustees shall promptly deliver to the Property Trustee. The number of Preferred Securities represented by a Global Certificate may from time to time be increased or decreased by adjustments made on the records of the Property Trustee, as Security Registrar, whereupon the Property Trustee, in accordance with Applicable Procedures, shall instruct the Clearing Agency or its authorized representative to make a corresponding adjustment to its records as hereinafter provided.

### Section 2.05    Subscription and Purchase of Notes; Issuance of the Common Securities

On the Closing Date, an Administrative Trustee, on behalf of the Trust, shall execute in accordance with Section 5.02 and deliver to the Sponsor a single Common Securities Certificate registered in the name of the Sponsor, in the aggregate amount acquired by the Sponsor on the Closing Date pursuant to the Common Securities Purchase Agreement against receipt of the purchase price of such Common Securities from the Sponsor in the amount of $25 per Common Security, which amount the Administrative Trustees shall promptly deliver to the Property Trustee.  In the event the purchase price for the Common Securities acquired by the Sponsor on the Closing Date as herein provided is not an integral multiple of $25, a fractional Common Security will be issued. Contemporaneously therewith, the Administrative Trustees, on behalf of the Trust, shall on the Closing Date subscribe to and purchase from the Sponsor the Notes, registered in the name of the Property Trustee (in its capacity as such) and having an aggregate principal amount equal to the aggregate Liquidation Amount of Preferred Securities and Common Securities acquired on the Closing Date and, in satisfaction of the purchase price for such Notes, the Property Trustee, on behalf of the Trust, shall deliver to the Sponsor the sum

11

of the amounts delivered on the Closing Date to the Property Trustee pursuant to (i) the second sentence of Section 2.04, and (ii) the first sentence of this Section 2.05.

Section 2.06    Declaration of Trust

The exclusive purposes and functions of the Trust are (a) to issue and sell Trust Securities and use the proceeds from such sale to acquire the Notes, (b) to distribute the Trust's income as provided in this Declaration and (c) to engage in only those other activities necessary or incidental thereto. The Trust shall not borrow money, issue debt or reinvest proceeds derived from investments, pledge any of its assets or otherwise undertake (or permit to be undertaken) any activity that would cause the Trust not to be classified for United States federal income tax purposes as a grantor trust. The Sponsor hereby appoints the Trustees as trustees of the Trust, to have all the rights, powers and duties to the extent expressly set forth herein, and the Trustees hereby accept such appointment. The Property Trustee hereby declares that it will hold the Trust Property in trust upon and subject to the conditions set forth herein for the benefit of the Trust and the Securityholders. The Administrative Trustees shall have all rights, powers and duties set forth herein and in accordance with applicable law with respect to accomplishing the purposes of the Trust. The Delaware Trustee shall not be entitled to exercise any powers, nor shall the Delaware Trustee have any of the duties and responsibilities, of the Property Trustee or the Administrative Trustees set forth herein. The Delaware Trustee shall be one of the Trustees of the Trust for the sole and limited purpose of fulfilling the requirements of Section 3807(a) of the Delaware Statutory Trust Act and for taking such actions as are required to be taken by a Delaware trustee under the Delaware Statutory Trust Act, and shall not be entitled to exercise any powers or have any of the duties and responsibilities of the Administrative Trustees or the Property Trustee described in this Declaration.

Section 2.07    Authorization to Enter into Certain Transactions.

(a) The Trustees shall conduct the affairs of the Trust in accordance with the terms of this Declaration. Subject to the limitations set forth in Section 2.06 and paragraph (b) of this Section, and in accordance with the following provisions (i) and (ii), the Trustees shall have the exclusive power, duty and the authority to cause the Trust to engage in the following activities:

(i)    As among the Trustees, each Administrative Trustee (and no other Trustee) shall have the power and authority to act on behalf of the Trust, acting alone or jointly, with respect to the following matters:

(A) to issue and sell the Trust Securities, provided, however, that the Trust may issue no more than one series of Preferred Securities and no more than one series of Common Securities, and, provided, further, that there shall be no interests in the Trust other than the Trust Securities, and the issuance of Trust Securities shall be limited to simultaneous issuances of both Preferred Securities and Common Securities on the Closing Date in accordance with the provisions of the Underwriting Agreement and the Common Securities Purchase Agreement

12

subject to the issuance of Trust Securities pursuant to Sections 5.04 and 5.05 and Successor Securities pursuant to Section 9.05;

(B) to cause the Trust to enter into, and to execute, deliver and perform on behalf of the Trust, the Common Securities Purchase Agreement, the Certificate Depository Agreement and the Note Purchase Agreement;

(C) to assist in the registration of the Preferred Securities under the Securities Act, and under state securities or blue sky laws, and the qualification of this Declaration as a trust indenture under the Trust Indenture Act;

(D) to assist in the listing of the Preferred Securities upon such securities exchange or exchanges as shall be determined by the Sponsor and the registration of the Preferred Securities under the Securities Exchange Act of 1934, as amended, and the preparation and filing of all periodic and other reports and other documents pursuant to the foregoing (only to the extent that such listing or registration is requested by the Sponsor);

(E) to appoint a Paying Agent, a Security Registrar and an authenticating agent in accordance with this Declaration;

(F) to the extent provided in this Declaration, to wind up the affairs of and liquidate the Trust and prepare, execute and file the certificate of cancellation with the Secretary of State of the State of Delaware;

(G) to execute and deliver letters, documents or instruments with the Clearing Agency relating to the Preferred Securities;

(H) to obtain a CUSIP number for the Preferred Securities;

(I) to establish a record date with respect to all actions to be taken hereunder that require a record date be established, including and with respect to, for the purposes of Section 316(c) of the Trust Indenture Act, Distributions, voting rights, and redemptions and to issue relevant notices to the Holders of Preferred Securities and Holders of Common Securities as to such actions and applicable record dates;

(J) to bring or defend, pay, collect, compromise, arbitrate, resort to legal action, or otherwise adjust claims or demands of or against the Trust, unless pursuant to the terms of this Declaration, the Property Trustee has the exclusive power to take such action;

(K) to employ or otherwise engage employees and agents (who may be designated as officers with titles) and managers, contractors, advisors, and consultants and pay reasonable compensation for such services;

13

(L) to give the certificate required by Section 314(a)(4) of the Trust Indenture Act to the Property Trustee, which certificate may be executed by any Administrative Trustee;

(M)   to incur expenses that are necessary or incidental to carry out any of the purposes of the Trust;

(N) to execute all documents or instruments, perform all duties and powers, and do all things for and on behalf of the Trust in all matters necessary or incidental to the foregoing; and

(O) to take any action incidental to the foregoing as the Trustees may from time to time determine is necessary or advisable to give effect to the terms of this Declaration including, but not limited to:

(I)   causing the Trust not to be deemed to be an "investment company" required to be registered under the 1940 Act;

(II)   causing the Trust to be classified for United States federal income tax purposes as a grantor trust; and

(III)   cooperating with the Sponsor to ensure that the Notes will be treated as indebtedness of the Sponsor for United States federal income tax purposes; provided that such action does not adversely affect in any material respect the interests of Securityholders except as otherwise provided in Section 10.02(a).

(ii)   As among the Trustees, the Property Trustee shall have the power, duty and authority to act on behalf of the Trust only with respect to the following matters:

(A) the establishment and maintenance of the Payment Account;

(B) the receipt of and taking legal title to the Notes;

(C) the collection of interest, principal and any other payments made in respect of the Notes in the Payment Account;

(D) the distribution from the Trust Property of amounts owed to the Securityholders in respect of the Trust Securities;

(E) the exercise of all of the rights, powers and privileges of a holder of the Notes;

(F) the sending of notices of default, other notices and other information regarding the Trust Securities and the Notes to the Securityholders in accordance with this Declaration;

14

(G) the distribution of the Trust Property in accordance with the terms of this Declaration;

(H) to the extent provided in this Declaration, the winding up of the affairs of and liquidation of the Trust and the preparation, execution and filing of the certificate of cancellation with the Secretary of State of the State of Delaware;

(I) after an Event of Default, the taking of any action incidental to the foregoing as is necessary or advisable or as the Property Trustee may from time to time determine is necessary or advisable to give effect to the terms of this Declaration and protect and conserve the Trust Property for the benefit of the Securityholders (without consideration of the effect of any such action on any particular Securityholder);

(J) to act as Paying Agent and/or Security Registrar to the extent appointed as such hereunder; and

(K) subject to this Section 2.07(a)(ii), the Property Trustee shall have none of the duties, liabilities, powers or the authority of the Administrative Trustees set forth in Section 2.07(a)(i).

(b) So long as this Declaration remains in effect, the Trust (or the Trustees acting on behalf of the Trust) shall not undertake any business, activities or transaction except as expressly provided herein or contemplated hereby. In particular, the Trust shall not, and the Trustees shall not and shall cause the Trust not to (i) invest any proceeds received by the Trust from holding the Notes (rather, the Trustees shall distribute all such proceeds to the Securityholders pursuant to the terms of this Declaration and the Trust Securities), acquire any investments or engage in any activities not authorized by this Declaration, (ii) sell, assign, transfer, exchange, mortgage, pledge, set-off or otherwise dispose of any of the Trust Property or interests therein, including to Securityholders, except as expressly provided herein, (iii) take any action that would cause the Trust to fail or cease to qualify as a "grantor trust" for United States federal income tax purposes, (iv) make any loans or incur any indebtedness for borrowed money or issue any other debt, (v) take or consent to any action that would result in the placement of a Lien on any of the Trust Property, (vi) possess any power or otherwise act in such a way as to vary the Trust Property or the terms of the Trust Securities in any way whatsoever except as permitted by the terms of this Declaration, or (vii) issue any securities or other evidences of beneficial ownership of, or beneficial interest in, the Trust other than the Trust Securities. The Administrative Trustees shall defend all claims and demands of all Persons at any time claiming any Lien on any of the Trust Property adverse to the interest of the Trust or the Securityholders in their capacity as Securityholders.

(c) In connection with the issue and sale of the Preferred Securities, the Sponsor shall have the right and responsibility to assist the Trust with respect to, or effect on behalf of the Trust, the following actions (and any actions taken by the Sponsor in furtherance of the following prior to the date of this Declaration are hereby ratified and confirmed in all respects):

15

(i)     to file with the Commission and to execute on behalf of the Trust a registration statement on the appropriate form in relation to the Preferred Securities, including any amendments thereto;

(ii)    to determine the states and foreign jurisdictions in which to take appropriate action to qualify or register for sale all or part of the Preferred Securities and to do any and all such acts, other than actions which must be taken by or on behalf of the Trust, and advise the Trustees of actions they must take on behalf of the Trust, and prepare for execution and filing any documents to be executed and filed by the Trust or on behalf of the Trust, as the Sponsor deems necessary or advisable in order to comply with the applicable laws of any such states and foreign jurisdictions;

(iii)   to the extent necessary, to prepare for filing by the Trust with the Commission and to execute on behalf of the Trust a registration statement on Form 8-A relating to the registration of the Preferred Securities under Section 12(b) or 12(g) of the Securities Exchange Act of 1934, as amended, including any amendments thereto;

(iv)    to prepare for filing by the Trust an application to the New York Stock Exchange for listing upon notice of issuance of any Preferred Securities; and

(v)     engage in the activities set forth under Section 2.10(a) and any other actions necessary or incidental to carry out any of the foregoing activities.

(d) Notwithstanding anything herein to the contrary, the Administrative Trustees are authorized and directed to conduct the affairs of the Trust and to operate the Trust so that the Trust will not be deemed to be an "investment company" required to be registered under the 1940 Act, or taxed as a corporation for United States federal income tax purposes and so that the Notes will be treated as indebtedness of the Sponsor for United States federal income tax purposes. In this connection, the Sponsor and the Administrative Trustees are authorized to take any action, not inconsistent with applicable law, the certificate of trust or this Declaration, that each of the Sponsor and the Administrative Trustees determines in their discretion to be necessary or desirable for such purposes, so long as such action does not adversely affect in any material respect the interests of he Holders of the Preferred Securities except as otherwise provided in Section 10.02(a).

Section 2.08    Assets of the Trust

The assets of the Trust shall consist of only the Trust Property.

Section 2.09    Title to Trust Property

Legal title to all Trust Property shall be vested at all times in the Property Trustee and shall be held and administered by the Property Trustee for the benefit of the Trust and the Securityholders in accordance with this Declaration. Each Securityholder shall not have legal

16

title to any part of the assets of the Trust, but shall have an undivided beneficial interest in the assets of the Trust.

Section 2.10    Responsibilities of the Sponsor

(a) In connection with the issue and sale of the Preferred Securities, the Sponsor is hereby appointed an agent of the Trust pursuant to Section 3806(b)(7) of the Delaware Statutory Trust Act and in such capacity shall have the exclusive right and responsibility to engage in the following activities:

(i)    to prepare a prospectus relating to the offering of Preferred Securities by the Trust and to prepare for filing by the Trust with the Commission, and execute on behalf of the Trust, a registration statement on Form S-3 or on another appropriate form (including, if appropriate, a registration statement under Rule 462(b) of the Securities Act) and any pre-effective or post-effective amendments thereto, relating to the registration under the Securities Act of the Preferred Securities;

(ii)    to determine the states in which to take appropriate action to qualify or register for sale all or part of the Preferred Securities and to do any and all such acts, other than actions which must be taken by the Trust, and advise the Trust of actions it must take, and prepare for execution and filing any documents to be executed and filed by the Trust, as the Sponsor deems necessary or advisable in order to comply with the applicable laws of any such states;

(iii)    to negotiate the terms of, and execute on behalf of the Trust, the Underwriting Agreement providing for the sale of the Preferred Securities; and

(iv)    to execute and deliver letters, documents or instruments on behalf of the Trust with any Clearing Agency.

(b) The Sponsor must exercise the powers set forth in this Section 2.10 in a manner that is consistent with the purposes and functions of the Trust set out in Section 2.06, and the Sponsor shall not take any action that is inconsistent with the purposes and functions of the Trust set forth in Section 2.06.

(c) Subject to this Section 2.10, the Sponsor shall have none of the powers or the authority of the Property Trustee set forth in Article VIII.

Section 2.11    Certain Covenants of the Sponsor

(a) On the Closing Date, the Sponsor will purchase all of the Common Securities issued by the Trust that shall represent an aggregate Liquidation Amount of no less than 3% of the aggregate Liquidation Amount of the Trust Securities being purchased on the Closing Date;

(b) The Sponsor shall maintain directly or indirectly 100% ownership of the Common Securities, provided that certain successors that are permitted by the Indenture may succeed to the Sponsor's ownership of the Common Securities; and

17

(c) The Sponsor will use its reasonable efforts, consistent with the terms and provisions of this Declaration, to cause the Trust to remain classified as a grantor trust and not as an association taxable as a corporation for United States federal income tax purposes.

Section 2.12    Guarantee of Payment of Trust Obligations

(a) Subject to the terms and conditions of this Section 2.12 and the Guarantee Agreement, the Sponsor, in its capacity as Sponsor and not as a Holder, hereby irrevocably and unconditionally guarantees to each Person to whom the Trust is now or hereafter becomes indebted or liable (the "Beneficiaries") the full payment, when and as due, of any and all costs, expenses or liabilities of the Trust (other than obligations of the Trust to make payments to holders of a Trust Security pursuant to the terms thereof) ("Obligations") to such Beneficiaries. The Sponsor, in its capacity as Sponsor and not as a Holder, shall pay any and all taxes (other than United States withholding taxes attributable to the Trust or its assets) and all liabilities, costs and expenses with respect to such taxes of the Trust.

(b) The agreement of the Sponsor in Section 2.12(a) is intended to be for the benefit of, and to be enforceable by, all such Beneficiaries, whether or not such Beneficiaries have received notice hereof.

(c) The agreement of the Sponsor set forth in Section 2.12(a) shall terminate and be of no further force and effect upon the later of (i) the date on which full payment has been made of all amounts payable to all Holders of all the Preferred Securities (whether upon redemption, liquidation, exchange or otherwise) and (ii) the date on which there are no Beneficiaries remaining; provided, however, that such agreement shall continue to be effective or shall be reinstated, as the case may be, if at any time any Holder of Preferred Securities or any Beneficiary must restore payment of any sums paid under the Preferred Securities, under any Obligation, under the Guarantee or under this Declaration for any reason whatsoever. Such agreement is continuing, irrevocable, unconditional and absolute.

Section 2.13    Execution of Documents

Unless otherwise determined by the Sponsor or the Administrative Trustees, and except as otherwise required by the Delaware Statutory Trust Act, the Trust Indenture Act or this Declaration, any Administrative Trustee is authorized to execute on behalf of the Trust any documents that the Administrative Trustees have the power and authority to execute pursuant to this Declaration.

# ARTICLE III

# PAYMENT ACCOUNT

Section 3.01    Payment Account

(a) On or prior to the Closing Date, the Property Trustee shall establish the Payment Account. Except as set forth in Section 5.09 hereof, the Property Trustee and any agent

18

of the Property Trustee shall have exclusive control and sole right of withdrawal with respect to the Payment Account for the purpose of making deposits in and withdrawals from the Payment Account in accordance with this Declaration. All monies and other property deposited or held from time to time in the Payment Account shall be held by the Property Trustee in the Payment Account for the exclusive benefit of the Securityholders and for distribution as herein provided, including (and subject to) any priority of payments provided for herein.

(b) The Property Trustee shall deposit in the Payment Account, promptly upon receipt, all payments of principal of or interest on, and any other payments or proceeds with respect to, the Notes. Amounts held in the Payment Account shall not be invested by the Property Trustee pending distribution thereof.

## ARTICLE IV

## DISTRIBUTIONS; REDEMPTION; EXCHANGE

Section 4.01    Distributions

(a) Distributions on the Trust Securities shall be cumulative and shall accrue from the date of original issuance, or the most recent Distribution Date (as defined herein) and, except in the event that the Sponsor exercises its right to defer the payment of interest on the Notes pursuant to the Notes, shall be payable quarterly in arrears on January 15, April 15, July 15 and October 15 of each year, commencing on January 15, 2004 (which dates correspond to the interest payment dates on the Notes), when, as and if available for payment by the Property Trustee, as further described in Section 4.01(c). In the event that the Sponsor exercises its right to defer the payment of interest on the Notes pursuant to the Notes, Distributions on the Trust Securities shall be deferred for a corresponding period and shall be payable in arrears on the date of the corresponding interest payment on the Notes, when, as and if available for payment by the Property Trustee, as further described in Section 4.01(c). If any date on which Distributions are otherwise payable on the Trust Securities is not a Business Day, then the payment of such Distributions shall be made on the next succeeding day which is a Business Day (and no interest shall accrue for the period from and after such date until the next succeeding Business Day) with the same force and effect as if made on such date (each date on which Distributions are payable in accordance with this Section 4.01(a), a "Distribution Date").

(b) The Trust Securities represent undivided beneficial interests in the Trust Property, and the Distributions on the Trust Securities shall be payable at a rate of 8.25% per annum of the Liquidation Amount of the Trust Securities, such rate being the rate of interest payable on the Notes to be held by the Property Trustee. The amount of Distributions payable for any period shall be computed on the basis of a 360-day year of twelve 30-day months. For periods less than a full month, Distributions shall reflect interest on Notes computed on the basis of the actual number of elapsed days based on a 360-day year. The amount of Distributions payable for any period shall include the Additional Amounts, if any.

(c) Distributions on the Trust Securities shall be made by the Property Trustee from the Payment Account and shall be payable on each Distribution Date only to the extent that

19

the Trust has funds then on hand and available in the Payment Account for the payment of such Distributions.

(d) Distributions on the Trust Securities with respect to a Distribution Date shall be payable to the Holders thereof as they appear on the Security Register for the Trust Securities on the relevant record date, which shall be the date which is the fifteenth day (whether or not a Business Day) next preceding such Distribution Date.

Section 4.02    Optional Redemption, Mandatory Redemption and Special Event Redemption

(a) Other than in the case of a redemption of the Notes upon the occurrence of a Special Event, the Trust may not redeem the Trust Securities on or before October 15, 2008. Upon an optional redemption, Special Event redemption or a mandatory redemption (whether at maturity or upon acceleration of the Notes) of Notes, the proceeds from such redemption shall be applied to redeem a Like Amount of Trust Securities at the Redemption Price.

(b) Notice of redemption (which notice will be irrevocable) shall be given by the Property Trustee by first-class mail, postage prepaid, mailed not less than 30 nor more than 60 days prior to the Redemption Date to the Sponsor and each Holder of Trust Securities to be redeemed, at such Holder's address as it appears in the Security Register. All notices of redemption shall state:

(i)    the provisions of such Trust Securities under which such redemption is made and that the conditions precedent, if any, to such redemption have occurred;

(ii)    the Redemption Date;

(iii)    the Redemption Price;

(iv)    the CUSIP number;

(v)    if less than all of the Outstanding Trust Securities are to be redeemed, the identification and the aggregate Liquidation Amount of the particular Trust Securities to be redeemed;

(vi)    that, on the Redemption Date, the Redemption Price will become due and payable upon each such Trust Security to be redeemed and that Distributions thereon will cease to accrue on and after said date; and

(vii)    the place or places where such Trust Securities are to be surrendered for payment of the Redemption Price.

(c) The Trust Securities redeemed on each Redemption Date shall be redeemed at the Redemption Price with the proceeds from the contemporaneous redemption of Notes. Redemptions of the Trust Securities shall be made and the Redemption Price shall be payable on

20

each Redemption Date only to the extent that the Trust has funds then on hand and available in the Payment Account for the payment thereof.

(d) If the Property Trustee gives a notice of redemption pursuant to Section 4.02(b) in respect of any Preferred Securities, then, by 12:00 noon, New York City time, on the Redemption Date, subject to Section 4.02(c), the Property Trustee will irrevocably deposit with the Paying Agent for the Preferred Securities funds sufficient to pay the Redemption Price on such Preferred Securities and will give the Paying Agent irrevocable instructions and authority to pay the Redemption Price in accordance with Section 4.05 to the Clearing Agency or, if the Preferred Securities are no longer in book-entry only form, to the Holders thereof upon surrender of their Preferred Securities Certificates. Notwithstanding the foregoing, Distributions payable on or prior to the Redemption Date for any Trust Securities called for redemption shall be payable to the Holders of such Trust Securities as they appear on the Security Register for the Trust Securities on the relevant record dates for the related Distribution Dates. If notice of redemption shall have been given and funds deposited as required, then, upon the date of such deposit, all rights of Securityholders holding Trust Securities so called for redemption will cease, except the right of such Securityholders to receive the Redemption Price but without interest thereon, and such Trust Securities will cease to be Outstanding. In the event that any date on which any Redemption Price is payable is not a Business Day, then payment of the Redemption Price payable on such date will be made on the next succeeding day which is a Business Day (and without any interest or other payment in respect of any such delay), with the same force and effect as if made on such date. If payment of the Redemption Price in respect of any Preferred Securities is improperly withheld or refused and not paid either by the Trust or by the Sponsor as guarantor pursuant to the Guarantee, Distributions on such Preferred Securities will continue to accrue at the rate of 8.25% per annum from the Redemption Date to the actual date of payment, such that the actual payment date will be considered the Redemption Date for purposes of calculating the Redemption Price.

(e) If less than all the Outstanding Trust Securities are to be redeemed on a Redemption Date, then the aggregate Liquidation Amount of Trust Securities to be redeemed shall be allocated on a pro rata basis (based on Liquidation Amounts) among the Common Securities and the Preferred Securities that are to be redeemed. The particular Preferred Securities to be redeemed shall be selected not more than 45 days prior to the Redemption Date by the Property Trustee from the Outstanding Preferred Securities not previously called for redemption, by lot or by such other method as the Property Trustee shall deem fair and appropriate and which may provide for the selection for redemption of portions (equal to $25 or an integral multiple of $25 in excess thereof) of the Liquidation Amount of the Preferred Securities. The Property Trustee shall promptly notify the Security Registrar in writing of the Preferred Securities selected for redemption and, in the case of any Preferred Securities selected for partial redemption, the Liquidation Amount thereof to be redeemed; it being understood that, in the case of Preferred Securities registered in the name of and held of record by the Clearing Agency (or any successor) or any nominee of the Clearing Agency or any successor, the distribution of the proceeds of such redemption will be made in accordance with the procedures of the Clearing Agency or its nominee. For all purposes of this Declaration, unless the context otherwise requires, all provisions relating to the redemption of Preferred Securities shall relate, in the case of any Preferred Securities redeemed or to be redeemed only in part, to the portion of

21

the aggregate Liquidation Amount of Preferred Securities which has been or is to be redeemed. In the event of any redemption in part, the Trust shall not be required to (i) issue, register the transfer of or exchange any Preferred Security during a period beginning at the opening of business 15 days before any selection for redemption of Preferred Securities and ending at the close of business on the earliest date on which the relevant notice of redemption is deemed to have been given to all holders of Preferred Securities to be so redeemed or (ii) register the transfer of or exchange any Preferred Securities so selected for redemption, in whole or in part, except for the unredeemed portion of any Preferred Securities being redeemed in part.

Section 4.03   Record Date for Redemption Price

Payment of the Redemption Price with respect to a Redemption Date shall be payable to the Holders as they appear on the Security Register for the Trust Securities on the relevant record date, which shall be the date which is the fifteenth day (whether or not a Business Day) preceding such Redemption Date.

Section 4.04   Subordination of Common Securities

Payment of Distributions (including Additional Amounts, if applicable) on, and the Redemption Price of, the Trust Securities, as applicable, shall be made pro rata based on the Liquidation Amount of such Trust Securities; provided, however, that if on any Distribution Date or Redemption Date an Event of Default shall have occurred and be continuing, (i) no payment of any Distribution (including Additional Amounts, if applicable) on, or the Redemption Price of, any Common Security, and no other payment on account of the redemption, liquidation or other acquisition of Common Securities, shall be made unless payment in full in cash of all accumulated and unpaid Distributions (including Additional Amounts, if applicable) on all Outstanding Preferred Securities for all Distribution periods terminating on or prior thereto, or in the case of payment of the Redemption Price the full amount of such Redemption Price on all Outstanding Preferred Securities then called for redemption, shall have been made or provided for, and (ii) all funds immediately available to the Property Trustee shall first be applied to the payment in full in cash of all Distributions (or the applicable Additional Amounts, if applicable) on, or the Redemption Price of, Preferred Securities then due and payable.

Section 4.05   Payment Procedures

Payments in respect of the Preferred Securities shall be made by (i) check mailed to the address of the Person entitled thereto as such address shall appear on the Security Register, (ii) wire transfer of immediately available funds to an account maintained by the Person entitled thereto as specified in the Security Register or (iii), if the Preferred Securities are held by a Clearing Agency, to the Clearing Agency in immediately available funds, in accordance with the Certificate Depository Agreement, on the applicable Distribution Dates or the Redemption Date. Payments in respect of the Common Securities shall be made in such manner as shall be mutually agreed between the Property Trustee and the Holder of the Common Securities.

Section 4.06   Tax Returns and Reports

22

The Administrative Trustees shall prepare (or cause to be prepared), at the Sponsor's expense, and file (or cause to be filed) all United States federal, state and local tax and information returns and reports required to be filed by or in respect of the Trust. In this regard, the Administrative Trustees shall (a) prepare and file (or cause to be prepared or filed) Form 1041 or the appropriate Internal Revenue Service form required to be filed in respect of the Trust in each taxable year of the Trust and (b) prepare and furnish (or cause to be prepared and furnished) to each Securityholder a Form 1099 or the appropriate Internal Revenue Service form required to be furnished to such Securityholder or the information required to be provided on such form. The Administrative Trustees shall provide (or cause to be provided) the Sponsor and the Property Trustee with a copy of all such returns, reports and schedules promptly after such filing or furnishing. The Trustees shall comply with United States federal withholding and backup withholding tax laws and information reporting requirements with respect to any payments to Securityholders under the Trust Securities. To the extent that the Trust is required to withhold and pay over any amounts to any authority with respect to Distributions or allocations to any Holder, the amount withheld shall be deemed to be a distribution in the amount of the withholding to the Holder. In the event of any claimed over-withholding, Holders shall be limited to an action against the applicable jurisdiction. If the amount required to be withheld was not withheld from actual Distributions made, the Trust may reduce subsequent Distributions by the amount of such withholding (but not by the amount of any liability imposed on the Trust as withholding agent).

Section 4.07    Payment of Taxes, Duties, Etc. of the Trust

Upon receipt under the Notes of Additional Sums, the Property Trustee, upon receipt of written notice and direction from the Sponsor or the Administrative Trustees, shall promptly pay from such Additional Sums any taxes, duties or governmental charges of whatsoever nature (other than withholding taxes), as indicated in such notice, imposed on the Trust by the United States or any other taxing authority.

Section 4.08    Payments under Indenture

Any amount payable hereunder to any Holder of Preferred Securities (and any Owner with respect thereto) shall be reduced by the amount of any corresponding payment such Holder (or Owner) has directly received pursuant to the Indenture in accordance with the terms of Section 6.08 hereof.

# ARTICLE V

# TRUST SECURITIES CERTIFICATES

Section 5.01    Initial Ownership

Upon the formation of the Trust and until the issuance of the Trust Securities, and at any time during which no Trust Securities are Outstanding, the Sponsor shall be the sole beneficial owner of the Trust.

23

Section 5.02    The Trust Securities Certificates

The Preferred Securities Certificates shall be issued in minimum denominations of $25 Liquidation Amount and, to the extent practicable, any integral multiple thereof, substantially in the form of Exhibit B hereto, and the Common Securities Certificates shall be issued in denominations of $25 Liquidation Amount and integral multiples thereof (provided that if a fractional Common Security is issued pursuant to Section 2.05, a Common Securities Certificate will be issued that will represent such fractional Common Security), substantially in the form of Exhibit A hereto. The consideration received by the Trust for the issuance of the Trust Securities shall constitute a contribution to the capital of the Trust and shall not constitute a loan to the Trust. The Trust Securities Certificates shall be executed on behalf of the Trust by manual or facsimile signature of at least one Administrative Trustee and the Preferred Securities Certificates shall be authenticated by the Property Trustee. Trust Securities Certificates bearing the manual or facsimile signatures of individuals who were, at the time when such signatures shall have been affixed, authorized to sign on behalf of the Trust, shall be validly issued and entitled to the benefit of this Declaration, notwithstanding that such individuals or any of them shall have ceased to be so authorized prior to the delivery of such Trust Securities Certificates or did not hold such offices at the date of delivery of such Trust Securities Certificates. A transferee of a Trust Securities Certificate shall become a Securityholder, and shall be entitled to the rights and subject to the obligations of a Securityholder hereunder, upon due registration of such Trust Securities Certificate in such transferee's name pursuant to Section 5.04.

Section 5.03    Delivery of Trust Securities Certificates

(a) On the Closing Date, the Administrative Trustees shall cause Trust Securities Certificates, in an aggregate Liquidation Amount as provided in Sections 2.04 and 2.05, to be executed on behalf of the Trust and delivered, without further corporate action by the Sponsor, in authorized denominations. A Common Securities Certificate shall not be valid until executed by at least one Administrative Trustee. A Preferred Securities Certificate shall not be valid until executed by at least one Administrative Trustee and authenticated by the manual signature of an authorized signatory of the Property Trustee. The manual signature of the Property Trustee shall be conclusive evidence that the Preferred Securities Certificate has been authenticated under this Declaration. Upon a written order of the Trust signed by one Administrative Trustee, the Property Trustee shall authenticate the Preferred Securities Certificates for original issue. The signature of any Administrative Trustee on the Trust Securities Certificates may be manual or facsimile.

(b) The Property Trustee may appoint an authenticating agent reasonably acceptable to the Administrative Trustees to authenticate Preferred Securities Certificates. An authenticating agent may authenticate Preferred Securities Certificates whenever the Property Trustee may do so. Each reference in this Declaration to authentication by the Property Trustee includes authentication by such agent. An authenticating agent has the same rights as the Property Trustee to deal with the Sponsor or an Affiliate with respect to the authentication of Preferred Securities.

24

(c) Every Person, by virtue of having become a Holder in accordance with the terms of this Declaration, shall be deemed to have expressly assented and agreed to the terms of, and shall be bound by, this Declaration and the Guarantee.

Section 5.04    Registration of Transfer and Exchange of Preferred Securities; Restrictions on Transfer

(a)    The Administrative Trustees shall keep or cause to be kept, at the office or agency maintained pursuant to Section 5.08, a register or registers for the purpose of registering Trust Securities Certificates and transfers and exchanges of Preferred Securities Certificates (herein referred to as the "Securities Register") in which the registrar designated by the Administrative Trustees (the "Securities Registrar"), subject to such reasonable regulations as they may prescribe, shall provide for the registration of Preferred Securities Certificates and Common Securities Certificates (subject to Section 5.10 in the case of the Common Securities Certificates) and registration of transfers and exchanges of Preferred Securities Certificates as herein provided. Bank One Trust Company, N.A. shall be the initial Security Registrar. Subject to the other provisions of this Declaration regarding restrictions on transfer, upon surrender for registration of transfer of any Preferred Security Certificate at an office or agency of the Security Registrar designated pursuant to Section 5.08 for such purpose, an Administrative Trustee shall execute, and the Property Trustee shall authenticate and deliver, in the name of the designated transferee or transferees, one or more new Preferred Securities Certificates of any authorized denominations and of a like aggregate principal amount. At the option of the Holder, and subject to the other provisions of this Section 5.04, Preferred Securities Certificates may be exchanged for other Preferred Securities Certificates of any authorized denomination and of a like Liquidation Amount, upon surrender of the Preferred Securities Certificates to be exchanged at any such office or agency. Whenever any Preferred Securities Certificates are so surrendered for exchange, an Administrative Trustee shall execute, and the Property Trustee shall authenticate and deliver, the Preferred Securities Certificates which the Holder making the exchange is entitled to receive.

All Preferred Securities Certificates issued upon any registration of transfer or exchange of Preferred Securities Certificates shall be the valid obligations of the Trust, evidencing the same rights, and entitled to the same benefits under this Declaration, as the Preferred Securities Certificates surrendered upon such registration of transfer or exchange.

Every Preferred Security Certificate presented or surrendered for registration of transfer or for exchange shall (if so requested by the Administrative Trustees or the Security Registrar) be duly endorsed, or be accompanied by a written instrument of transfer in form satisfactory to the Administrative Trustees and the Security Registrar duly executed, by the Holder thereof or such Holder's attorney duly authorized in writing. No service charge shall be made for any registration of transfer or exchange of Preferred Securities Certificates, but the Security Registrar may require payment of a sum sufficient to cover any tax or governmental charge that may be imposed in connection with any transfer or exchange of Preferred Securities Certificates.

25

The Property Trustee shall only authenticate Preferred Security Certificates delivered to it by authorized officers of the Security Registrar or an Administrative Trustee specifically for authentication at such time or upon the written order of an Administrative Trustee. The Property Trustee shall be fully protected and shall incur no liability for authenticating any Preferred Security Certificate delivered to it for authentication as aforesaid or in accordance with a written order of an Administrative Trustee.

The Property Trustee shall have no obligation to register the transfer of any Preferred Securities after such Preferred Securities have been called for redemption.

(b)    Notwithstanding any other provision of this Declaration or the Preferred Securities, transfers and exchanges of Preferred Securities Certificates and beneficial interests in a Global Certificate of the kinds specified in this Section 5.04(b) shall be made only in accordance with this Section 5.04(b).

(i)    Non-Global Certificate to Global Certificate. If the Holder of a Preferred Securities Certificate (other than a Global Certificate) wishes at any time to transfer all or any portion of such Preferred Securities Certificate to a Person who wishes to take delivery thereof in the form of a beneficial interest in a Global Certificate, such transfer may be effected only in accordance with the provisions of this Section 5.04(b)(i) and Section 5.13 and subject to the Applicable Procedures. Upon receipt by the Security Registrar of (A) such Preferred Securities Certificate and instructions satisfactory to the Security Registrar directing that a beneficial interest in the Global Certificate of a specified number of Preferred Securities not greater than the number of Preferred Securities represented by such Preferred Securities Certificate be credited to a specified Clearing Agency Participant's account, then the Security Registrar shall cancel such Preferred Securities Certificate (and issue a new Preferred Securities Certificate in respect of any untransferred portion thereof) and increase the aggregate Liquidation Amount of the Global Certificate by the Liquidation Amount represented by such Preferred Securities so transferred as provided in Section 5.11; provided that if a Global Certificate is not then outstanding, an Administrative Trustee on behalf of the Trust may issue and the Property Trustee may authenticate a new Global Certificate equal to the principal amount of such Definitive Preferred Securities Certificates to be so exchanged as provided in Section 5.11.

(ii)    Non-Global Certificate to Non-Global Certificate. A Preferred Securities Certificate that is not a Global Certificate may be transferred, in whole or in part, to a Person who takes delivery in the form of another Preferred Securities Certificate that is not a Global Certificate as provided in Section 5.04(a).

(iii)    Global Certificate to Non-Global Certificate. A beneficial interest in a Global Certificate may be exchanged for a Preferred Securities Certificate that is not a Global Certificate only as provided in Section 5.11.

26

### Section 5.05    Mutilated, Destroyed, Lost or Stolen Trust Securities Certificates

If (a) any mutilated Trust Securities Certificate shall be surrendered to the Security Registrar, or if the Security Registrar shall receive evidence to its satisfaction of the destruction, loss or theft of any Trust Securities Certificate and (b) there shall be delivered to the Security Registrar and the Administrative Trustees such security or indemnity as may be required by them to hold each of them harmless, then in the absence of notice that such Trust Securities Certificate shall have been acquired by a bona fide purchaser, the Administrative Trustees, or any one of them, on behalf of the Trust shall execute and make available for authentication, where applicable, and delivery, in exchange for or in lieu of any such mutilated, destroyed, lost or stolen Trust Securities Certificate, a new Trust Securities Certificate of like denomination. In connection with the issuance of any new Trust Securities Certificate under this Section, the Security Registrar may require the payment of a sum sufficient to cover any tax or other governmental charge that may be imposed in connection therewith. Any duplicative Trust Securities Certificate issued pursuant to this Section shall constitute conclusive evidence of an undivided beneficial interest in the assets of the Trust, as if originally issued, whether or not the lost, stolen or destroyed Trust Securities Certificate shall be found at any time.

### Section 5.06    Persons Deemed Securityholders

The Property Trustee and the Security Registrar shall treat the Person in whose name any Trust Securities Certificate shall be registered in the Security Register as the owner of such Trust Securities Certificate for the purpose of receiving Distributions and for all other purposes whatsoever, and neither the Property Trustee nor the Security Registrar shall be bound by any notice to the contrary.

### Section 5.07    Access to List of Securityholders' Names and Addresses

The Administrative Trustees or the Sponsor shall furnish or cause to be furnished (unless the Property Trustee is acting as Security Registrar with respect to the Trust Securities under the Declaration) a list, in such form as the Property Trustee may reasonably require, of the names and addresses of the Securityholders as of the most recent record date (a) to the Property Trustee, quarterly at least five Business Days before each Distribution Date, and (b) to the Property Trustee, within 30 days after receipt by the Sponsor of a request therefor from the Property Trustee in order to enable the Property Trustee to discharge its obligations under this Declaration, in each case to the extent such information is in the possession or control of the Administrative Trustees or the Sponsor and is not identical to a previously supplied list or has not otherwise been received by the Property Trustee in its capacity as Security Registrar. The rights of Securityholders to communicate with other Securityholders with respect to their rights under this Declaration or under the Trust Securities, and the corresponding rights of the Trustee shall be as provided in the Trust Indenture Act, except to the extent Section 3819 of the Delaware Statutory Trust Act would require greater access to such information, in which case the latter shall apply. Each Holder, by receiving and holding a Trust Securities Certificate, and each Owner shall be deemed to have agreed not to hold the Sponsor, the Property Trustee or the Administrative Trustees accountable by reason of the disclosure of its name and address, regardless of the source from which such information was derived.

27

Section 5.08    Maintenance of Office or Agency

The Security Registrar shall maintain in Columbus, Ohio an office or offices or agency or agencies where Preferred Securities Certificates may be surrendered for registration of transfer or exchange and where notices and demands to or upon the Trustees in respect of the Trust Securities Certificates may be served. The Security Registrar initially designates 1111 Polaris Parkway, Suite 1K-Mail Code OH1-0181, Columbus, Ohio 43440, Attention: Global Corporate Trust Services, as its corporate trust office for such purposes. The Security Registrar shall give prompt written notice to the Sponsor and to the Securityholders of any change in the location of the Security Register or any such office or agency.

Section 5.09    Appointment of Paying Agent

The Trust shall maintain an office or agency (the "Paying Agent") where the Preferred Securities may be presented for payment, which shall initially be in Columbus, Ohio. The Paying Agent shall make Distributions to Securityholders from the Payment Account and shall report the amounts of such Distributions to the Property Trustee and the Administrative Trustees. Any Paying Agent shall have the revocable power to withdraw funds from the Payment Account for the purpose of making the Distributions referred to above. The Administrative Trustees may revoke such power and remove the Paying Agent for any reason, including if such Trustees determine in their sole discretion that the Paying Agent shall have failed to perform its obligations under this Declaration in any material respect. The Property Trustee shall have no duty to monitor or oversee any of the activities of any Paying Agent (other than itself), including but not limited to any withdrawals from the Payment Account, and the Property Trustee shall be fully protected and shall incur no liability in connection with any action or omission of any such Paying Agent. The Paying Agent shall initially be Bank One Trust Company, N.A., and any co-paying agent chosen by the Property Trustee and acceptable to the Administrative Trustees and the Sponsor in their sole discretion. Any Person acting as Paying Agent shall be permitted to resign as Paying Agent upon 30 days' written notice to the Property Trustee and the Sponsor. In the event that Bank One Trust Company, N.A., shall no longer be the Paying Agent or a successor Paying Agent shall resign or its authority to act be revoked, the Administrative Trustees shall appoint a successor that is reasonably acceptable to the Administrative Trustees and the Sponsor to act as Paying Agent (which shall be a bank or trust company). Each successor Paying Agent or any additional Paying Agent shall agree with the Trustees that, as Paying Agent, such successor Paying Agent or additional Paying Agent will hold all sums, if any, held by it for payment to the Securityholders in trust for the benefit of the Securityholders entitled thereto until such sums shall be paid to each Securityholder. The Paying Agent shall return all unclaimed funds to the Property Trustee and upon removal of a Paying Agent such Paying Agent shall also return all funds in its possession to the Property Trustee. The provisions of Sections 8.01, 8.03 and 8.06 shall apply to the Property Trustee also in its role as Paying Agent, for so long as the Property Trustee shall act as Paying Agent and, to the extent applicable, to any other paying agent appointed hereunder. Any reference in this Agreement to the Paying Agent shall include any co-paying agent unless the context requires otherwise.

28

### Section 5.10     Ownership of Common Securities by Sponsor

On the Closing Date, the Sponsor shall acquire beneficial and record ownership of the Common Securities. The Sponsor agrees at all times to maintain direct or indirect beneficial ownership of the Common Securities, including through beneficial ownership of the Common Securities by an Affiliate of the Sponsor. To the fullest extent permitted by law, any attempted transfer of the Common Securities, other than a transfer to an Affiliate of the Sponsor or a transfer to certain successors that are permitted by the Indenture to succeed to the Sponsor's ownership of the Common Securities, shall be void. The Administrative Trustees shall cause each Common Securities Certificate issued to the Sponsor to contain a legend stating "THIS CERTIFICATE IS NOT TRANSFERABLE EXCEPT AS PROVIDED UNDER APPLICABLE LAW AND THE AMENDED AND RESTATED DECLARATION OF TRUST."

### Section 5.11     Global Certificates; Non-Global Certificates; Common Securities Certificate

(a) Pursuant to Section 2.04, on the Closing Date Preferred Securities will be issued in book-entry form through the execution of one or more permanent Global Certificates in definitive fully registered form delivered to the Clearing Agency or nominee thereof or a custodian therefor and registered in the name of the Clearing Agency or nominee thereof and no Owner will receive a Definitive Preferred Securities Certificate except as provided in Section 5.13. Each Global Certificate authenticated under this Declaration shall be registered in the name of the Clearing Agency designated by the Sponsor for such Global Certificate or a nominee thereof and delivered to such Clearing Agency or a nominee thereof or custodian therefor, and each such Global Certificate shall constitute a Preferred Security Certificate for all purposes of this Declaration.

(b) If a Global Certificate is to be exchanged for one or more Definitive Preferred Securities Certificates or canceled in whole, it shall be surrendered by or on behalf of the Clearing Agency, its nominee or custodian to the Security Registrar, for exchange or cancellation as provided in this Article V. If any Global Certificate is to be exchanged for Definitive Preferred Securities Certificates or canceled in part, or if a Definitive Preferred Securities Certificate is to be exchanged in whole or in part for a beneficial interest in any Global Certificate, in each case, as provided in Section 5.04, then either (i) such Global Certificate shall be so surrendered for exchange or cancellation as provided in this Article V or (ii) the Liquidation Amount thereof shall be reduced or increased by an amount equal to the portion thereof to be so exchanged or canceled, or equal to the principal amount of such Definitive Preferred Security Certificates to be so exchanged for a beneficial interest therein, as the case may be, by means of an appropriate adjustment made on the records of the Security Registrar, whereupon the Property Trustee, in accordance with the Applicable Procedures, shall instruct the Clearing Agency or its authorized representative to make a corresponding adjustment to its records. If at any time the Holder of a Definitive Preferred Securities Certificate wishes to transfer all or any portion of such Definitive Preferred Securities Certificate to a Person who wishes to take delivery thereof in the form of a beneficial interest in a Global Certificate, as provided in Section 5.04, a Global Certificate is not then outstanding, an Administrative Trustee on behalf of the Trust may issue and the Property Trustee may authenticate a new Global

29

Certificate equal to the principal amount of such Definitive Preferred Securities Certificates to be so exchanged. Upon any such surrender or adjustment of a Global Certificate, the Property Trustee shall, subject to Section 5.04 and as otherwise provided in this Article V, authenticate and deliver any Definitive Preferred Securities Certificates issuable in exchange for such Global Certificate (or any portion thereof) to or upon the order of, and registered in such names as may be directed by, the Clearing Agency or its authorized representative.

(c) Upon the request of the Property Trustee in connection with the occurrence of any of the events specified in Section 5.11(b), the Sponsor shall cause as promptly as practicable to be made available to the Property Trustee a reasonable supply of Definitive Preferred Securities Certificates. The Property Trustee shall be entitled to conclusively rely upon any order, direction or request of the Clearing Agency or its authorized representative which is given or made pursuant to this Article V if such order, direction or request is given or made in accordance with the Applicable Procedures.

(d) Every Preferred Security Certificate authenticated and delivered upon registration of transfer of, or in exchange for or in lieu of, a Global Certificate or any portion thereof, whether pursuant to this Article V or otherwise, shall be authenticated and delivered in the form of, and shall be, a Global Certificate, unless such Preferred Security Certificate is registered in the name of a Person other than the Clearing Agency for such Global Certificate or a nominee thereof.

(e) The Clearing Agency or its nominee, as registered owner of a Global Certificate, shall be the Holder of such Global Certificate for all purposes under the Declaration and the Preferred Securities, and owners of beneficial interests in a Global Certificate shall hold such interests pursuant to the Applicable Procedures. Accordingly, any such owner's beneficial interest in a Global Certificate will be shown only on, and the transfer of such interest shall be effected only through, records maintained by the Clearing Agency or its nominee or its participants and such owners of beneficial interests in a Global Certificate will not be considered the owner or holders of such Global Certificate for any purpose of this Declaration or the Preferred Securities.

(f) On the Closing Date, a single Common Securities Certificate representing the Common Securities shall be issued to the Sponsor in the form of a definitive Common Securities Certificate.

Section 5.12   Notices to Clearing Agency

To the extent that a notice or other communication to the Owners is required under this Declaration, unless and until Definitive Preferred Securities Certificates shall have been issued to Owners pursuant to Section 5.13, the Trustees shall give all such notices and communications specified herein to be given to Owners to the Clearing Agency, and shall have no obligations to provide notices directly to the Owners.

30