# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

333 WEST WACKER DRIVE
CHICAGO, ILLINOIS 60606-1285
———
(312) 407-0700
FAX: (312) 407-0411
http://www.skadden.com

DIRECT DIAL
(312) 407-0730
DIRECT FAX
(312) 407-8501
EMAIL ADDRESS
JBUTLER@SKADDEN.COM

AFFILIATE OFFICES
———
BOSTON
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

December 2, 2005

Alicia M. Leonhard, Esq.
Trial Attorney
U.S. Department of Justice
Office of the United States Trustee
Region 2/Southern District of New York
33 Whitehall Street, Suite 2100
New York, New York 10004

      Re: Creditors' Committee Composition in *In re Delphi Corporation, et al.,* Case No. 05-44481 (RDD) (Jointly Administered)

Dear Alicia:

    We are writing on behalf of Delphi Corporation and its affiliated debtors and debtors-in-possession (the "Debtors") in response to your letter dated November 2, 2005, requesting input from the Debtors regarding issues raised in four letters received from creditors in the Debtors' chapter 11 cases regarding the composition and membership of the Official Committee of Unsecured Creditors (the "Creditors' Committee"). The four letters were submitted on behalf of Law Debenture Trust Company of New York ("Law Debenture"), the Pension Benefit Guaranty Corporation ("PBGC"), Tyco Electronics Corporation ("Tyco"), and the International Union, UAW ("UAW") (collectively, "Creditors").

    On October 17, 2005, the United States Trustee for Region 2 (the "UST") conducted an organizational meeting of the Debtors' general unsecured creditors holding larger claims against one or more of the Debtors and thereafter appointed seven creditors to the Creditors' Committee. In their letters, the

Alicia M. Leonhard, Esq.
December 2, 2005
Page 2

Creditors assert that the Creditors' Committee, as currently composed, does not adequately represent the interests of creditors as Section 1102(b)(1) of the Bankruptcy Code requires.

Each of the Creditors also implicitly suggests that any alleged defect in the present composition of the Creditors' Committee would be remedied if only that particular entity were appointed by the UST to membership on the Creditors' Committee. Law Debenture would represent the interests of subordinated noteholders; PBGC would represent the interests of "all classes of unsecured claims" that may be affected by the Debtors' actions including with respect to legacy costs (such as its underfunded pension plans) and is explicitly eligible to serve on the Creditors' Committee pursuant to Section 101(41)(B) of the Bankruptcy Code; Tyco Electronics would represent the interests of component trade creditors; and UAW would represent employee and retiree interests as the exclusive collective bargaining representative of approximately 24,000 employees of the Debtors and as the "authorized representative" of approximately 9,800 retirees receiving collectively bargained retiree health insurance benefits. Each of Law Debenture, PBGC, and UAW (but not Tyco) are also listed among the top seven general unsecured creditors on the consolidated list of unsecured creditors filed by the Debtors with their chapter 11 petitions and at least two of the Creditors point to the language of Section 1102(b)(1) of the Bankruptcy Code which provides that the Creditors' Committee "shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on the committee."

The Debtors' review of the Creditors' letters, the composition of the Debtors' unsecured creditors' claims generally, the circumstances of these chapter 11 cases and applicable law does not support the conclusion that the UST abused her discretion when she formed the Creditors' Committee either in terms of the procedure that she followed or the decision that she made. As with virtually all larger chapter 11 cases filed across the federal bankruptcy system, creditors' committees are seldom comprised of the seven largest claims holders but are instead formed with a view toward being generally representative of the kinds of claims included in the general creditor body. The Debtors believe that the UST achieved this objective when she formed the current Creditors' Committee.

Alicia M. Leonhard, Esq.
December 2, 2005
Page 3

       The four trade creditors currently appointed to the Creditors' Committee should be able to adequately represent all trade creditors even though they may not hold component trade claims; the IUE-CWA is the Debtors' second largest collective bargaining representative and should be able to adequately represent the interests of employee and retiree interests; the interests of subordinated noteholders should be adequately represented through Capital Research and Management Company which, upon information and belief, holds between 5% and 10% of the interests in the subordinated notes and Wilmington Trust Company, which is the Delaware Trustee for the statutory trusts in which the subordinated notes are held until the distribution of the notes to beneficial interests is completed as required by the commencement of the Debtors' chapter 11 cases; and all seven members of the Creditors' Committee should be able to adequately represent all classes of unsecured claims with respect to the multi-billion dollar legacy costs, the resolution of which is, as PBGC correctly observes, central to the Debtors' reorganization.

       Accordingly, the Debtors believe that the UST did not abuse her discretion when she formed the Creditors' Committee and that the Creditors' Committee that she organized is adequately representative of, and should be able to adequately represent, the interests of general unsecured creditors. However, the Debtors also believe that the analysis does not end with that conclusion. There is a second level of inquiry which the Debtors believe must be explored and which is absolutely critical to the particular and unique circumstances of the Debtors' chapter 11 cases: would the addition of any of the Creditors facilitate and promote the successful reorganization of the Debtors' estates and be in the interests of justice?

       This second level of inquiry has been explored by the Debtors' executive management, including Mr. Miller, and discussed with the Debtors' Board of Directors. The Debtors believe that the answer to the question is emphatically "yes" with respect to two of the Creditors and respectfully request that the UST exercise her discretion to expand the Creditors' Committee from seven to nine members by appointing PBGC and UAW to the Creditors' Committee.

       Delphi has more than 180,000 employees worldwide, global 2004 revenues of approximately $28.6 billion and global assets as of August 31, 2005

Alicia M. Leonhard, Esq.
December 2, 2005
Page 4

of approximately $17.1 billion (based on aggregated consolidated financial data). The Debtors' chapter 11 cases represent the largest manufacturing and technology filing in the history of the federal bankruptcy system and ranked on the petition date as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company reorganization in terms of assets. Today, Delphi is the first or second largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Debtors' principal objective in their chapter 11 reorganization is to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve Delphi's core businesses. The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated or wound-down through the chapter 11 process.

       PBGC asserts that the Debtors commenced their chapter 11 cases with one of the largest levels of pension underfunding – if not the largest – in history. While fully reserving their rights in all respects, the Debtors' acknowledged the general scope of PBGC's contingent claims when PBGC was included in the top seven creditors in the consolidated list of creditors. Irrespective of whether the Debtors can preserve their pension plans as part of the Debtors' ultimate reorganization, PBGC also has broad powers to affect the Debtors' pension scheme on an involuntary basis should PBGC determine it is in its interests to do so and can meet the statutory requirements. PBGC can also attempt to impact Delphi's global business activities through its alleged joint and several control group liability claims against Delphi's debtor and non-debtor affiliates.

       The Debtors believe that the range of outcomes between the Debtors and PBGC (and therefore the prospects of a successful chapter 11 reorganization) will be substantially enhanced if PBGC is permitted to serve on the Creditors' Committee and be fundamentally involved in weaving the fabric of debtor-Creditors' Committee relationships and negotiated outcomes throughout the chapter 11 cases. Based on the past experience of the Debtors' professionals, the Debtors are also completely satisfied that PBGC can appropriately discharge its fiduciary duties as a member of the Creditors' Committee to

Alicia M. Leonhard, Esq.
December 2, 2005
Page 5

represent the interests of all creditors and, importantly, contribute its expertise in employee benefits and other substantive areas to the Creditors' Committee.

As for UAW, it has justifiably expressed to the UST its very legitimate concern that its failure to be appointed to the Creditors' Committee could be viewed by the Debtors' 24,000 employees represented by the UAW as an indication that the participation of the UAW in the reorganization is not valued to the same extent as other employee groups or segments of the Debtors' business. Rather than simply the "distraction" characterized by UAW in its letter, the Debtors believe that UAW's continuing isolation would make it far more difficult to obtain either a negotiated resolution with the UAW leadership or employee ratification of a negotiated resolution. As with PBGC, the Debtors believe that the range of consensual outcomes between the Debtors and UAW (and therefore the prospects of a successful chapter 11 reorganization) will be substantially enhanced if UAW is also permitted to participate on the Creditors' Committee. There are few, if any, comparable chapter 11 cases where "social contract" issues have been so clearly at the fulcrum of the reorganization and, to the Debtors' knowledge, none where the Debtors' principal union or unions have been unable to participate on the creditors' committee.

The Debtors are thoroughly convinced that the prospects for their successful reorganization would be enhanced and the interests of justice would be served by the UST exercising her discretion to appoint both PBGC and UAW to membership on the Creditors' Committee. While the Debtors supported both entities for appointment to the Creditors' Committee at the organizational meeting, the passage of time and the evolving circumstances and events in the Debtors' chapter 11 cases have starkly underscored the compelling and justified rationale for their appointment at this important juncture in the reorganization. The UST need only consider the docket to date in the Debtors' chapter 11 cases and the publicly reported discourse among the Debtors' stakeholders to find additional support for this conclusion.

On a separate but perhaps related matter, the Debtors believe that it is appropriate to disclose to the UST in connection with this response that a current member of the Creditors' Committee that holds a Delphi non-debtor guaranty of prepetition indebtedness owed by one or more of the Debtors has very recently made demand upon the non-debtor entity for payment. Upon the

05-44481-rdd    Doc 1607-13    Filed 12/22/05    Entered 12/22/05 21:10:06    Exhibit K
Pg 6 of 6

Alicia M. Leonhard, Esq.
December 2, 2005
Page 6

non-debtor entity's performance of its guaranty obligations, which is in process, the Debtors anticipate that the creditor receiving payment and satisfaction of its prepetition claims should voluntarily resign from the Creditors' Committee.

       In closing, the Debtors appreciate having been given the opportunity to consider the Creditors' letters and submit this letter to you as Trial Attorney for the UST. The Debtors further appreciate the extension of time afforded to the Debtors beyond the initial November 15, 2005 response date to complete their analysis and this response.

       Please let the undersigned know whether you believe any further information from the Debtors is required or desirable.

       With kind regards,

                                Sincerely yours,

                                John Wm. Butler, Jr.

cc:    Mr. Robert S. Miller
       David Sherbin, Esq.
       Robert J. Rosenberg, Esq.
       Jeffrey B. Cohen, Esq.
       Robert J. Stark, Esq.
       Bruce H. Simon, Esq.
       Richard J. Suminski, Esq.