**Hearing Date and Time: January 5, 2006, 10:00 a.m.**
**Objection Deadline: January 2, 2006, 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DELPHI CORPORATION, et al., | Case No. 05-44481 (RDD) |
| | (Jointly Administered) |
| Debtors. | |

MOTION FOR ORDER EXTENDING DEADLINE FOR DEBTORS TO SUBMIT
STATEMENTS OF RECLAMATION UNDER FED. R. BANKR. P. 9006(b)

("RECLAMATION DEADLINE EXTENSION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under Rule 9006(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") extending the deadline for the Debtors to submit statements of reclamation. In support of this Motion, the Debtors respectfully represent as follows:

Background

A.   The Chapter 11 Filings

1.   On October 8, 2005, Delphi and certain of its U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") filed voluntary petitions in this Court for reorganization relief under the Bankruptcy Code. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtors' chapter 11 cases (Dockets Nos. 28 and 404).

2.   On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee"). No trustee or examiner has been appointed in the Debtors' cases.

3.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.  The statutory predicate for the relief requested herein is Bankruptcy Rule 9006(b).

B.  Current Business Operations Of The Debtors

5.  With more than 180,000 employees worldwide, global 2004 revenues of approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1 billion,[1] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations without supervision from the Bankruptcy Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

6.  Over the past century, the operations which are now owned by Delphi have developed leading global technology innovations with significant engineering resources and technical competencies in a variety of disciplines.  Today, the Company (as defined below) is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company's technologies and products are present in more than 75 million vehicles on the road worldwide.  The Company supplies products to nearly every major global automotive original equipment manufacturer, with 2004 sales to its former parent, General Motors Corporation ("General Motors" or "GM"), equaling approximately $15.4 billion, and sales to each of Ford Motor Company,

---

[1] The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

7.      As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world.  In the U.S., the Debtors employ approximately 50,600 people.  Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan.  Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions.  Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8.      Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates (collectively, the "Company") in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.      Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle. When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base. The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.      Events Leading To Chapter 11 Filing

10.     In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales. Reflective of a downturn in the marketplace, Delphi's financial condition deteriorated further in the first six months of 2005. The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[2]

11.     Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy

---

[2] Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

          12.     In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward looking revenue requirements.  Having concluded that pre-filing discussions with its unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

          13.     Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses.  This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan.  The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down through the chapter 11 process.

6

14.     Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

Relief Requested

15.     By this Motion, the Debtors request entry of an order under Bankruptcy Rule 9006(b) extending the deadline for the Debtors to submit statements of reclamation as set forth in the Amended Final Order Under 11 U.S.C. §§ 362, 503, and Fed. R. Bankr. P. 9019 Establishing Procedures for the Treatment of Reclamation Claims (the "Amended Final Order"). The Debtors propose that the time by which they are required to submit statements of reclamation (the "Statements of Reclamation") as set forth in paragraph 2(b)(i) of the Amended Final Order be extended by an additional 45 days.

Basis For Relief

16.     To date the Debtors have received 884 non-duplicative reclamation demands which contain nearly 100,000 lines of data. The Debtors believe that the reclamation process that they must undertake may be one of the largest in history. By way of example, Kmart Corporation (Case No. 02-02474, Bankr. N.D. Ill. (SPS)), the largest retail bankruptcy, received approximately 550 unique demands; Federal-Mogul Global Inc. (Case No. 01-10578, Bankr. D. Del. (AMW)), a large auto parts supplier bankruptcy, received nearly 230 unique demands; and Ames Department Stores, Inc. (Case No. 01-42217, Bankr. S.D.N.Y. (REG)), another large retail bankruptcy, received approximately 110 unique demands.

17.     Pursuant to paragraph 2(b)(i) of the Amended Final Order, "within 90 days after the Petition Date or receipt of a timely Reclamation Demand, whichever is later, the Debtors shall provide the Seller with a copy of the Reclamation Order and a statement of reclamation . . . ."  Thus, the Debtors' deadline to send Statements of Reclamation is a sliding timeline with the deadlines relating back to the date when a reclamation demand was submitted.  Absent the extension requested herein, the first deadline by which the Debtors must send Statements of Reclamation would be January 6, 2006 for those demands received on or before the filing date.  The deadline for all other reclamation demands filed after the chapter 11 filing date would be 90 days after the demand was made.  If the 45-day extension is granted, the first deadline by which the Debtors must send Statements of Reclamation would be February 20, 2006, for those demands received on or before the filing date, and the deadline for all other reclamation demands filed after the filing date would be 135 days after the reclamation demand was submitted.

18.     Paragraph 2(b)(ii) of the Amended Final Order provides that the "Statement of Reclamation shall set forth the extent and basis, if any, upon which the Debtors believe the underlying Reclamation Claim is not legally valid . . . ."  To comply with the terms of the Amended Final Order and accommodate the massive quantity of demands received, the Debtors created a database of reclamation claims.  The database was used to analyze each reclamation claim to determine its legal validity based on the following: form and timing of the demand, the inventory on hand as of demand date, and whether the Debtors already paid for the goods being reclaimed.

19.     During creation of the database and the actual testing of claims, the Debtors contacted several hundred suppliers at least once to request additional data regarding

8

their reclamation claim. The Debtors contacted suppliers to expedite the reconciliation of their claims because certain information provided by suppliers was insufficient to process the claim through the database. Contacting the suppliers in this manner was time consuming, but necessary to properly analyze each claim and implement a fair, reasonable, and accurate process.

20. Due to the volume of the reclamation demands received and the extra measures taken by the Debtors to ensure a fair, reasonable, and accurate process, the Debtors have experienced delays in finalizing claims. Despite the delays, the Debtors are working diligently to meet the deadlines set forth in the Amended Final Order. The Debtors, however, are requesting this extension to ensure that they have sufficient time to verify the accuracy of the summaries generated by the process and update the database to include additional clarifying data received from suppliers.

21. Moreover, the extension will enable the Debtors to vet the conclusions reached for each reclamation claim with the Creditors' Committee prior to transmittal of the Statements of Reclamation to the claimants. Pursuant to paragraph 3 of the Amended Final Order, the Debtors are required to provide a report to the Creditors' Committee regarding the proposed treatment of each reclamation claim. Thereafter, the Creditors' Committee has the opportunity to object to the proposed treatment set forth in the reclamation report. The extension requested herein will ensure that the Creditors' Committee has reviewed and has had the right to object to the proposed treatment of each claim before the Debtors send the Statements of Reclamation. The Debtors believe that this will ultimately expedite the resolution of the reclamation process.

22. Finally, the relief requested herein will not prejudice the rights of any suppliers. The 45-day extension will not alter the analysis of the claims or the facts that are

9

being analyzed such as: the form and timing of the demand, the inventory on hand as of demand date, and whether the Debtors already paid for the goods being reclaimed. Further, paragraph 2(d)(ii) of the Amended Final Order states that if the Debtors do not make goods available for pick-up on account of a valid reclamation claim then such claim shall, "subject to the review procedures with the Creditors' Committee set forth below, be paid in full as an administrative expense at any time during these chapter 11 cases in the sole discretion of the Debtors or pursuant to a confirmed plan of reorganization . . . ." Because decisions related to the timing of payment of the reclamation claims are left to the sole discretion of the Debtors, subject to review by the Creditors' Committee, no reclamation claimant will be prejudiced by the short extension requested herein.

23.     The Debtors have discussed the relief requested herein with the Creditors' Committee, and believe the Creditors' Committee will support this Motion and the relief requested herein.

### Applicable Authority

24.     Bankruptcy Rule 9006(b) provides that the Court can extend unexpired time periods:

> [W]hen an act is required or allowed to be done at or within a specified period . . . by order of court, the court for cause shown may at any time in its discretion with or without motion or notice order the period enlarged if the request therefore is made before the expiration of the period originally prescribed or as extended by a previous order . . . .

Fed. R. Bankr. P. 9006(b)(1). Pursuant to 9006(b), this Court is authorized to extend the deadline by which the Debtors are required to submit Statements of Reclamation. See Circle Litho, Inc., v. Ryder Truck Lines, Inc. (In re Circle Litho, Inc.), 12 B.R. 752, 756 (Bankr. D. Conn. 1981) ("All time limitations in the rules are subject to Bankruptcy Rule 9006 which generally permits time limits set by the rules to be enlarged or reduced").

10

      25.    Cause clearly exists in the present circumstances to grant the time extension. This reclamation process –including nearly 900 non-duplicative claims and 100,000 lines of data– is one of the largest in history. The relief requested herein will not prejudice the reclamation claimants' substantive rights because the amount and quantity of the goods to be afforded administrative treatment will not change based on this extension. The extension will also allow the Debtors a reasonable amount of time to finalize the administration of the enormous number of reclamation demands made upon them and ensure the accuracy of the information contained in the summaries generated by the analysis of the reclamation demands. Finally, the extension will provide the Creditors' Committee sufficient time to review and object, if necessary, before Statements of Reclamation are sent to suppliers.

      26.    Indeed, the Debtors submit that the extension is necessary and appropriate to carry out the provisions of section 546(c) and the Amended Final Order. The extension is therefore in the best interests of the Debtors, and their respective estates, and creditors.

Notice

      27.    Notice of this Motion has been provided in accordance with the Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance With Local Bankr. R. 1007-2(e), entered by this Court on October 14, 2005 (Docket No. 245). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

      28.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and

11

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) extending, by 45 days, the time by which the Debtors are required to submit Statements of Reclamation as set forth in paragraph 2(b)(i) of the Amended Final Order and (b) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
    December 23, 2005

>           SKADDEN, ARPS, SLATE, MEAGHER
>             & FLOM LLP
>
>           By: /s/ John Wm. Butler, Jr.
>               John Wm. Butler, Jr. (JB 4711)
>               John K. Lyons (JL 4951)
>               Ron E. Meisler (RM 3026)
>           333 West Wacker Drive, Suite 2100
>           Chicago, Illinois  60606
>           (312) 407-0700
>
>                   - and -
>
>           By: /s/ Kayalyn A. Marafioti
>               Kayalyn A. Marafioti (KM 9632)
>               Thomas J. Matz (TM 5986)
>           Four Times Square
>           New York, New York 10036
>           (212) 735-3000
>
>           Attorneys for Delphi Corporation, et al.,
>             Debtors and Debtors-in-Possession