Hearing Date: January 5, 2006 at 10:00 a.m.
Objection Deadline: December 29, 2005 at 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>DELPHI CORPORATION, *et al.*,<br>                              Debtors. | Chapter 11<br><br>Case No. 05-44481-RDD<br><br>(Jointly Administered) |

**LEAD PLAINTIFFS' MOTION TO COMPEL DISCOVERY
RELATED TO DEBTORS' MOTION FOR ORDER UNDER
§§ 105 AND 363 AUTHORIZING DEBTORS TO IMPLEMENT
A KEY EMPLOYEE COMPENSATION PROGRAM**

**TO THE HONORABLE ROBERT D. DRAIN**
**UNITED STATES BANKRUPTCY JUDGE**

The Teachers' Retirement System Of Oklahoma, the Public Employees' Retirement System Of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H. and Stichting Pensioenfonds ABP (collectively, "Lead Plaintiffs"), the Court-appointed Lead Plaintiffs in the consolidated securities class action entitled *In re Delphi Corp. Securities Litigation*, Master File No. 1:05-CV-2637 (NRB)(SDNY), hereby move for entry of an order under Federal Rules of Bankruptcy Procedure ("Bankruptcy Rule") 7034 and 7037, made applicable hereto by Bankruptcy Rule 9014(c), compelling discovery related to Debtors' Motion for an Order under 11 U.S.C. §§ 105(a) and 363(b)(1) Authorizing Debtors to Implement a Key Employee Compensation Program. In support of their Motion, Lead Plaintiffs represent as follows:

## JURISDICTION AND VENUE

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicates for the relief sought herein are Bankruptcy Rules 7034, 7037 and 9014(c).

## PRELIMINARY STATEMENT

3. On October 8, 2005, Delphi Corporation ("Debtors" or the "Company") moved for an Order under 11 U.S.C. §§ 105(a) and 363(b)(1) Authorizing Debtors to Implement a Key Employee Compensation Program (the "KECP") (the motion is hereinafter referred to as the "KECP Motion"). On October 14, 2005, Debtors re-filed the KECP Motion seeking substantially similar relief. At issue on the KECP Motion is whether Debtors have met their burden to show that it is fair and reasonable and not contrary to the exercise of sound business judgment to award certain executives substantial cash payments and/or equity in the Company after it emerges from bankruptcy protection.

4. Investors trusted the Company's executives with their investment dollars, and in many instances, their life savings. Tragically, some of the Company's executives violated this trust and were derelict in their duties. Some knowingly and/or recklessly participated in the civil fraud that drove the Company into bankruptcy, while it appears that others, given the ongoing Department of Justice investigation, may have engaged in criminal fraud.

5.      Incredibly, the Company's top executives devised a KECP that will continue to enrich many of the same executives whose fraudulent conduct or willful blindness precipitated the Debtors' collapse into bankruptcy. On October 8, 2005, the same day Debtors filed for bankruptcy protection, Debtors filed their KECP Motion.

6.      The KECP Motion is defective for at least two reasons. First, the KECP Motion is devoid of any facts establishing that the KECP is fair and reasonable or the result of sound business judgment. Second, the KECP Motion attempts to further enrich several executives who either participated in and/or failed to stop the massive accounting fraud that led to the monumental losses suffered by the unsuspecting shareholders. Additionally, some executives seriously jeopardized the significant debt investment in the Company.

7.      Lead Plaintiffs are large institutional investors that are creditors, equity holders and parties in interest in this bankruptcy proceeding.[1] They are the voice for thousands of other investors who, like Lead Plaintiffs, have suffered devastating losses at the hands of some of the very same executives Debtors now seek to reward through the KECP. Lead Plaintiffs have an interest – and by virtue of their appointment, indeed a duty – to ensure that the persons responsible for running the Company into bankruptcy

---

[1] Lead Plaintiffs and the prospective class lost over a billion dollars as a result of their purchases of the Company's common stock and debt securities. On June 27, 2005, the Honorable Naomi Reice Buchwald, United States District Judge for the Southern District of New York, appointed the aforementioned institutional investors as Lead Plaintiffs and subsequently, on September 23, 2005, consolidated the pending putative securities class action as *In re Delphi Corp. Securities Litigation*, Master File No. 1:05-CV-2637 (NRB) (SDNY) (the "Securities Litigation"). Subsequently, by order dated December 12, 2005, the Judicial Panel on Multidistrict Litigation transferred the Securities Litigation to the Eastern District of Michigan and assigned it to the Honorable Gerald E. Rosen for coordinated or consolidated pretrial proceedings with the actions already pending in that district.

are not further enriched to the detriment of the Company and its stakeholders. Consequently, on November 22, 2005, Lead Plaintiffs filed their Objection to Debtor's Motion for an Order Under §§ 105 and 363 Authorizing Debtors to Implement a Key Employee Compensation Program (the "Objection").[2] Among other things, the Objection identified by name <u>nineteen current executives</u> of the Company and various departments of the Company that had been involved in, knew of, or recklessly ignored the pervasive accounting fraud.

8.      Lead Plaintiffs' Objection is simple: the KECP Motion falls well short of meeting Debtors' burden of establishing that the KECP is fair and reasonable and the result of sound business judgment. The KECP Motion fails to offer any explanation as to why those who occupied the executive suite during one of the largest corporate frauds of our era should be allowed to keep their positions – let alone be rewarded to stay – as tens of thousands of honest Delphi workers face the loss of their jobs and shareholders and debtholders face massive losses of their investments. Indeed, Lead Plaintiffs contend the KECP Motion actually seeks to reward executives – not only with cash but (collectively) with <u>ten percent</u> of the equity in the Company after it emerges from bankruptcy – when many of those same executives knowingly participated in Debtors' massive accounting

---

[2] Lead Plaintiffs were not alone in objecting to the KECP Motion. Indeed, numerous other interested parties filed timely objections to the KECP Motion, including: the United States Trustee; the United Steel, Paper and Forestry, Rubber Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO; the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America; Wilmington Trust Company, as Indenture Trustee; the International Brotherhood of Electrical Workers Local Union No. 663; the Association of Machinists, AFL-CIO Tool and Die Makers Local Lodge 78, District 10; the International Union of Operating Engineers Local Unions Nos. 18, 101 & 832; and JP Morgan Chase Bank, N.A.

fraud, or inexcusably tolerated or ignored that fraud as it impelled the Company's slide toward bankruptcy.

9. In that regard, Lead Plaintiffs have diligently sought to obtain information from Debtors relevant to and probative of a determination whether Debtors carried their burden to establish that the KECP Motion is fair and reasonable and not contrary to the exercise of sound business judgment. Lead Plaintiffs' requests for information, documents and depositions from Debtors are concise, narrowly tailored and – as Debtors concede by virtue of their discovery requests to Lead Plaintiffs – entirely germane to this issue. Debtors, however, have stonewalled Lead Plaintiffs' attempts to obtain this information.

10. Simply put, Debtors are entrenched in a campaign designed to keep the truth about the opaque workings of the KECP from ever seeing the light of day. Debtors have unilaterally and arbitrarily blocked Lead Plaintiffs from vital information regarding the KECP and what, if any, steps have been taken to ensure that those who knew of, tolerated, or recklessly ignored the Company's accounting chicanery do not benefit from the KECP. Lead Plaintiffs have done everything they can reasonably do in an effort to reach a compromise with Debtors. *See* Declaration of John P. Coffey in Support of Lead Plaintiffs' Motion to Compel Discovery Related to Debtors' Motion for Order Under §§ 105 and 363 Authorizing Debtors to Implement A Key Employee Compensation Program at ¶¶6-21 ("Coffey Decl."; all references to the Coffey Declaration are hereafter cited as "Coffey Decl. at ____"). Unfortunately, Debtors have flatly refused to comply with Lead Plaintiffs' requests or to act reasonably in reaching a compromise regarding these

requests. *Id*. Accordingly, Lead Plaintiffs now must request appropriate relief from this Court.

## BACKGROUND

11.     A detailed analysis of the factual background relevant to this Motion is set forth in the Coffey Declaration, which is submitted simultaneously herewith and is respectfully incorporated by reference as if set forth fully herein. In the interest of brevity, Lead Plaintiffs will not recite all facts set forth therein but, rather, will provide a summary of certain key facts.

12.     On December 5, 2005, Debtors sent Lead Plaintiffs a letter, which, among other things, contained Debtors' First Set of Interrogatories and Document Requests to Lead Plaintiffs ("Debtors' Discovery Requests") regarding Lead Plaintiffs' Objection to the KECP Motion. Coffey Decl. Ex. A, B. Among other things, Debtors requested documents relating to allegations of misconduct by Delphi executives. Coffey Decl. Ex. B. Debtors' December 5, 2005 letter also informed Lead Plaintiffs that Debtors had scheduled a "meet and confer" between Debtors and all parties who had objected to the KECP Motion for December 6, 2005.

13.     On December 6, 2005, counsel for Lead Plaintiffs participated in a telephonic meet and confer between counsel for Debtors and all parties who had objected to the KECP Motion. *See* Coffey Decl. ¶6. During the meet and confer, Debtors proposed a discovery schedule, which provided, among other things, that: (i) Lead Plaintiffs would submit all discovery requests to Debtors by December 8, 2005; (ii) Debtors would provide written objections to Lead Plaintiffs' discovery requests by

December 10, 2005; and (iii) Lead Plaintiffs would provide written objections to Debtors' discovery requests by December 12, 2005. *See* Coffey Decl. Ex. C.

14. Lead Plaintiffs submitted their discovery requests to Debtors ("Lead Plaintiffs' Discovery Requests") on December 8, 2005, as requested by Debtors during the December 6, 2005 meet and confer. Coffey Decl. ¶7 & Ex. D. In that letter, Lead Plaintiffs also requested the deposition of John D. Sheehan and informed Debtors that Lead Plaintiffs would provide Debtors with names of additional deponents as soon as practicable. *Id.*

15. On December 9, 2005, at Debtors' request, Lead Plaintiffs executed, without requesting any modifications, Debtors' proposed Stipulation and Agreed Protective Order Governing Production and Use of Confidential and Highly Confidential Information in Connection With the Debtor's Motion for an Order Under §§ 105 and 363 Authorizing Debtors to Implement a Key Employee Compensation Program and Objections Filed Thereto ("Stipulation and Agreed Protective Order"). Coffey Decl. ¶8 & Ex. E.

16. By letter dated December 12, 2005, Lead Plaintiffs informed Debtors that they would produce all non-privileged documents responsive to Debtors' Discovery Requests, including documents relating to the allegations of misconduct by Delphi executives, no later than December 21, 2005 (the date then proposed by Debtors). Lead Plaintiffs suggested that the parties have a further meet and confer on Thursday, December 15, 2005 to discuss, among other things, their respective discovery requests and objections. Coffey Decl. ¶8 & Ex. F.

17.  Debtors' self-imposed deadline for objecting to Lead Plaintiffs' Discovery Requests was December 10, 2005. Coffey Decl. ¶10. Debtors failed to timely object to Lead Plaintiffs' Discovery Requests. *Id.* On December 12, 2005, two days after the deadline for serving their objections, Debtors tardily provided Lead Plaintiffs with Debtors' written objections to Lead Plaintiffs' Discovery Requests. Coffey Decl. Ex. G.

18.  Debtors and Lead Plaintiffs held a meet and confer on December 15, 2005 to discuss, among other things, discovery issues related to the KECP Motion. Coffey Decl. ¶12. The details of the meet and confer, including Lead Plaintiffs' contentions in support of their discovery requests and Debtors' refusal to compromise on any of their objections are set forth in detail in paragraph 21 of the Coffey Declaration. Ultimately, despite Lead Plaintiffs' best efforts to resolve these discovery disputes, the parties were unable to reach a compromise. As such, Lead Plaintiffs have been compelled to file this Motion.

## RELIEF REQUESTED

19.  By this Motion, Lead Plaintiffs seek entry of an order directing the Debtors to provide complete responses, including all requested documentation, to Lead Plaintiffs' Discovery Requests and to make John Sheehan, Laura Marion, Dan Renick, and John Rotko available for deposition at a reasonable time and place prior to the January 27, 2006 hearing on the KECP Motion.

## BASIS FOR RELIEF

20.  Lead Plaintiffs' Discovery Requests are relevant and narrowly tailored to the KECP Motion. These requests seek basic information fundamentally necessary to determine whether Debtors have carried their burden to establish that the KECP Motion

is fair and reasonable and not contrary to the exercise of sound business judgment. Further, Debtors opened the door to these requests by first serving Lead Plaintiffs with interrogatories and requests for production that are identical to many of Lead Plaintiffs' requests for documents from Debtors.

21.    In the interest of brevity, Lead Plaintiffs will not restate each and every discovery request served upon Debtors. Instead, Lead Plaintiffs respectfully incorporate their discovery requests by reference as if set forth fully herein. Coffey Decl. Ex. D (Lead Plaintiffs' Discovery Requests).

22.    Debtors objected to Lead Plaintiffs' Discovery Requests 1-5, 15, and 17-29. Coffey Decl. Ex. F (Debtors' Objections). Debtors raise three objections to these requests. First, Debtors claim that certain responses to Lead Plaintiffs' Discovery Requests would contain personal information that could invade the privacy rights of certain executives. Second, Debtors claim that Lead Plaintiffs' Discovery Requests are unduly burdensome and beyond the scope of the KECP Motion. Finally, Debtors claim that Lead Plaintiffs' Discovery Requests are an improper attempt to circumvent the Section 362(a) stay and the discovery stay imposed by the Private Securities Litigation Reform Act. *See id.*

Debtors' Objections Were Untimely

23.    As a threshold matter, Debtors failed to make timely objections to Lead Plaintiffs' Discovery Requests. The Debtors and all objectors to the KECP Motion have been moving at an accelerated pace in order to fully prepare for the hearing on the KECP Motion. *See* Coffey Decl. ¶6. Debtors promulgated a rigorous schedule by which the parties were required to submit discovery requests, objections and responses. Lead

Plaintiffs complied with the deadlines imposed by this schedule, both in timely serving their discovery requests and in timely objecting to and responding to Debtors' Discovery Requests. *See* Coffey Decl. ¶¶6-12. Debtors, however, did not.

24. Debtors have taken the position that a failure to adhere to the discovery deadlines set forth by them is "inexcusable." *See* Electronic Mail Correspondence dated December 21, 2005, from Mr. David Springer, Esq., Counsel for Debtors, attached to the Coffey Decl. as Exhibit I. *Id*. In responding to Lead Plaintiffs' Discovery Requests, Debtors failed to meet their own deadline for filing their objections. As such, Debtors objections should be overruled as untimely.[3]

<u>Debtors' Objections Are Unavailing</u>

25. In addition to being barred as untimely, Debtors' objections are wholly without merit.

26. In Lead Plaintiffs' Discovery Requests 1-3, Lead Plaintiffs request certain information regarding the identities of executives who: (a) would benefit under the KECP; (b) may have participated in the underlying accounting improprieties outlined in Lead Plaintiffs' Objection; and/or (c) were determined by Debtors to have acted improperly, fraudulently, or criminally. Coffey Decl. Ex. D (Lead Plaintiffs' Discovery Requests 1-3). Debtors objected to these requests on the basis that "such personal identifying information invades the individuals' privacy rights and is not within the scope

---

[3] Debtors themselves have insisted that, in order to ensure the fair and orderly consideration of the KECP Motion, a party that fails to timely comply with Debtors' schedule merits the sanction of preclusion. Lead Plaintiffs respectfully submit that Debtors' failure to object in a timely manner requires rejection of their objections. *See Eldaghar v. City of New York Dep't of Citywide Admin. Serv.,* No. 02Civ.9151, 2003 WL 22455224, at *1 (S.D.N.Y. Oct. 28, 2003) (holding that failure to provide objections to discovery requests in a timely manner operates as a waiver), attached the Coffey Decl. as Exhibit G.

of permissible discovery on the KECP Motion." *Id*. at Exhibit G (Debtors' Objections 1-3). This objection is unfounded.

27.   On December 9, 2005, Lead Plaintiffs executed a stipulation and agreed protective order agreement that was <u>written by Debtors</u> specifically for the purpose of dealing with discovery related to the KECP Motion. Coffey Decl. ¶8 & Ex. E (Stipulation and Agreed Protective Order). Lead Plaintiffs signed this document one day <u>before</u> Debtors' objections were due and three days <u>before</u> Debtors' actually filed their objections. *Id.*

28.   Any privacy concerns raised by Lead Plaintiffs' Discovery Requests are obviously resolved by the execution of the Stipulation and Agreed Protective Order. During the December 15, 2005 meet and confer, Lead Plaintiffs offered to consider any revision of the Agreed Protective Order that would give Debtors comfort on the privacy issue. Debtors have provided none.[4] Accordingly, Debtors' objections on this basis are devoid of merit and should be overruled.

29.   Debtors next object to Lead Plaintiffs' Discovery Requests 1-3, 15, and 17-29 on the basis that the matters sought are "beyond the scope of permissible discovery on the KECP Motion, and the requests are unduly burdensome, especially in light of the marginal relevance of the information, at best, to the Motion and the Objections." *See Id*. at Exhibit G (Debtors' Objections 1-3, 15, and 17-29). This objection also is without merit.

---

[4] Curiously, however, Debtors were able to craft a revised confidentiality order minutes prior to the beginning of Lead Plaintiffs' deposition of Debtors' Chief Financial Officer, Robert Dellinger on December 20, 2005, regarding Lead Plaintiffs' objection to the retention of Deloitte & Touche as auditor for the Company.

-11-

30.     Lead Plaintiffs' Discovery Requests go to the heart of the KECP Motion. At the core of Lead Plaintiffs' Discovery Requests is the need for Lead Plaintiffs and this Court to determine whether the KECP is the result of sound business judgment and whether the proposal is fair and reasonable. Such is Debtors' burden in seeking approval of the KECP Motion. Thus, this information is a necessary predicate to any determination of whether to approve or reject the proposed KECP. Further, as stakeholders in the Company, Lead Plaintiffs have standing to acquire vital information regarding fundamental aspects of the program, including the identities of executives benefiting from the KECP and the methodology used to screen these executives for possible taint in the accounting scandal. This is especially true where, as here, Debtors seek to give cash and substantial equity to executives who not only were at the helm of the Company on its voyage into bankruptcy, but who also participated in or tolerated civil and possibly criminal fraud.

31.     Therefore, in requests 1 and 2, Lead Plaintiffs specifically requested that Debtors provide the identification of each executive covered under the KECP Motion and, for those so identified, a list of each such executive who participated in any manner in the accounting improprieties at the Company. *See id.* at Exhibit D (Lead Plaintiffs' Discovery Requests).

32.     Even more specifically, in item numbers 3-5, Lead Plaintiffs requested the following information:

> 3.      For each person identified in response to item number 2 (and/or each discrete subpart thereof), please state whether Debtors employed any investigation, processes and/or procedures to determine whether each such person's involvement in each transaction listed therein constituted:

-12-

          a.      A failure to exercise reasonable care;
          b.      A failure to exercise sound business judgment;
          c.      A dereliction of job duties;
          d.      Fraud (either civil or criminal in nature);
          e.      Mismanagement; and/or
          f.      Improper and/or undesirable conduct.

4.    If Debtors answered "Yes" in response to item number 3 (and/or any discrete subpart thereof), please list and describe the results and/or conclusions reached by Debtors regarding each such person so identified.

5.    If Debtors answered "Yes" in response to item number 3 (and/or any discrete subpart thereof), please identify each person who participated in any such investigation, processes and/or procedures.

*See id.*

33.    These requests are relevant, precise and germane to the required determination of whether the KECP is contrary to the exercise of sound business judgment and whether the proposal is fair and reasonable. To determine whether the KECP meets the fundamental requirements of the Bankruptcy Code and Rules, Lead Plaintiffs and this Court must, at a minimum, have access to the above-requested information.

34.    The highly probative nature of these requests is further underscored by Debtors' response to Lead Plaintiffs' Discovery Request 12. In request 12, Lead Plaintiffs inquired:

> Do Debtors contend that the exercise of sound business judgment does not preclude Debtors from offering any form of key employee compensation to an employee who has:
>
>     a.    Failed to exercise reasonable care;
>     b.    Failed to exercise sound business judgment;
>     c.    Been derelict in their job duties;
>     d.    Engaged in fraud (either civil or criminal in nature);
>     e.    Engaged in mismanagement; and/or
>     f.    Engaged in improper and/or undesirable conduct.

*Id*. Debtors answered "No." Coffey Decl. Ex. G (Debtors' Objections). In light of this response, Debtors also responded "no" to related requests 14 and 15. *Id*.

35. Accordingly, Debtors <u>concede</u> that the KECP would be contrary to the exercise of sound business judgment if it allows the participation of any employee who falls into categories a. through f. set forth above in request 12. *Id*. If Debtors failed to adopt and implement minimum safeguarding procedures in formulating the KECP, then they failed to take even the most basic step in determining whether executives who perpetrated the Debtors' massive accounting fraud through dereliction of job duties and/or criminal fraud will be rewarded under the KECP. If Debtors in fact failed to take such precautionary measures, and if in fact such individuals are rewarded under the KECP, Debtors concede that the KECP is necessarily <u>not</u> the product of sound business judgment.

36. Moreover, if Debtors did undertake to determine the identities of any such persons, Lead Plaintiffs are entitled to know: (a) what these procedures are (so a determination can be made as to whether such procedures were adequate); (b) the results of these procedures; (c) whether any people identified pursuant to these procedures were excluded from participation in the KECP; and (d) if any persons so identified were not excluded from participation in the KECP, Debtors' reasons for allowing them to participate in the KECP. Given the nature of the KECP Motion, Lead Plaintiffs' Objection, and Debtors' apparent position that the exercise of sound business judgment would not allow Debtors to include in the KECP any persons falling into the categories

above, it is hard to imagine any information more relevant to and probative of the matters at hand.[5]

37.     In addition to the requests discussed above, Lead Plaintiffs' Discovery Requests 17 through 28 are virtually identical to Debtors' document requests to Lead Plaintiffs. That is, Lead Plaintiffs took the <u>exact same requests</u> Debtors asked of Lead Plaintiffs on December 5, 2005 and requested the same documents from Debtors on December 8, 2005. For example, Debtors requested the following documents from Lead Plaintiffs: "All documents concerning your allegation in Paragraph 2 of the Objection that Delphi's massive accounting fraud . . . impelled the Company's slide towards bankruptcy." *See* Coffey Decl. at Exhibit B (Debtors' Discovery Requests to Lead Plaintiffs at 4) (ellipses in original). Lead Plaintiffs similarly requested that Debtors produce the following documents: "All documents relating to Lead Plaintiff's allegation in Paragraph 2 of the Objection that Delphi's massive accounting fraud . . . impelled the Company's slide towards bankruptcy." *See* Coffey Decl. at Exhibit D (Lead Plaintiffs' Discovery Requests to Debtors at 17) (ellipses in original). Thus, Debtors have no basis to object to the very document requests they crafted. The same holds true for Lead Plaintiffs' Discovery Requests 17-27, which are identical to Debtors' requests 3-13. Now, remarkably, Debtors take the incongruous position that while they acted appropriately in asking Lead Plaintiffs for such documents, Lead Plaintiffs are overreacting in asking Debtors for the very same discovery.

---

[5] Lead Plaintiffs' request 15 seeks documents responsive to requests 1-14. Debtors objected to request 15 on the same basis as their objections to Lead Plaintiffs' other requests. As such, Debtors' objection to request 15 also should be rejected.

38. Moreover, Lead Plaintiffs have agreed to produce all such non-privileged documents requested by Debtors and will have completed the production of all such documents by December 23, 2005. Therefore, any objection by Debtors that these requests are unduly broad and beyond the scope of permissible discovery is baseless. Further, any such objection is made with unclean hands, given that Debtors sought and obtained the same information from Lead Plaintiffs. Moreover, these discovery requests are relevant, highly probative and narrowly tailored to the determination of the KECP Motion for the same reasons as described above.

39. Debtors lastly object to Lead Plaintiffs' Discovery Requests 2-5, 10, 15, and 17-29 as "an apparent, but improper attempt to obtain discovery of the Debtors for purposes of *In re Delphi Corp. Securities Litigation*, which action has been stayed against the Debtors by operation of Section 362(a) of the Bankruptcy Code and which discovery has been stayed generally by operation of the Private Securities Litigation Reform Act." *Id*. This too is a meritless objection.

40. Lead Plaintiffs are and represent creditors, equity holders and parties-in interest in this proceeding. As such, Lead Plaintiffs have standing to object to the KECP Motion and to obtain information about that Motion. Debtors bear the burden to establish that the KECP Motion should be granted. Lead Plaintiffs contend that Debtors have not and cannot meet this burden. Lead Plaintiffs' standing to challenge Debtors' proposed KECP is not, and cannot be, extinguished or disregarded merely because the securities litigation is pending in another court. Accordingly, this objection should also be overruled.

41.     Finally, Lead Plaintiffs have requested that Debtors make Sheehan, Marion, Renick and Rotko available for deposition prior to the January 27, 2006 hearing on the KECP Motion. Debtors have refused to comply with this request or even confirm they are intended beneficiaries of the KECP. These individuals are relevant to the KECP Motion because, as executives of the Company for the last several years, they are presumably beneficiaries of the KECP, are familiar with other beneficiaries of the KECP and are knowledgeable about Debtors' accounting improprieties and inventory manipulations, including, but not limited to, the executives involved in those improper practices. A detailed discussion of the reasons Lead Plaintiffs need to depose these witnesses and the subject matter of these depositions is set forth in paragraphs 24 through 27 of the Coffey Declaration. Accordingly, Debtors' objections to Lead Plaintiffs' requests to depose these witnesses should also be overruled.

## APPLICABLE AUTHORITY

42.     Bankruptcy Rules 7034, 7037 and 9014(c) invoke the requirements of Federal Rules of Civil Procedure 34 and 37 in both adversary proceedings and contested matters. *See In re Ambotiene*, 316 B.R. 25, 34 (E.D.N.Y. 2004). The purpose of these rules is two-fold: (1) to discourage unnecessary discovery disputes, and (2) to encourage the resolution of discovery disputes outside of court proceedings when they do arise. *Id.* at 35.

43.     Bankruptcy Rule 7034 states that Federal Rule of Civil Procedure 34 "applies in adversary proceedings," while Bankruptcy Rule 9014(c) extends the application of Rule 34 to "all contested matters." FED. R. BANKR. P. 7034, 9014(c).

Bankruptcy Rule 7037, together with Bankruptcy Rule 9014(c), provides for similar incorporation of Federal Rule of Civil Procedure 37. FED. R. BANKR. P. 7037, 9014(c).

44. Federal Rule of Civil Procedure 34 provides in pertinent part, that "any party may serve on any other party a request…to produce and permit the party making the request, or someone acting on the requestor's behalf, to inspect and copy, any designated documents…or to inspect and copy, test, or sample any tangible things which constitute or contain matters within the scope of Rule 26(b) and which are in the possession, custody or control of the party upon whom the request is served…" FED. R. CIV. P. 34.

45. Rule 34 further provides that "the party submitting the request may move for an order under Rule 37(a) with respect to any objection to or other failure to respond to the request or any part thereof, or any failure to permit inspection as requested." *Id*.

46. Federal Rule of Civil Procedure 37 provides that "a party, upon reasonable notice to other parties and all persons affected thereby, may apply for an order compelling disclosure or discovery…" FED. R. CIV. P. 37.

## WAIVER OF MEMORANDUM OF LAW

47. The legal points and authorities upon which this Motion relies are set forth and incorporated herein. Accordingly, Lead Plaintiffs respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

## CONCLUSION

WHEREFORE, Lead Plaintiffs respectfully request that this Court deny the KECP Motion or, in the alternative, require the Debtors to produce evidence sufficient for Lead Plaintiffs to evaluate the reasonableness of the proposed KECP, and grant Lead Plaintiffs such other and further relief as is just.

Dated: December 23, 2005                    Respectfully submitted,

**LOWENSTEIN SANDLER, PC**

By: /s/Michael S. Etkin
Michael S. Etkin, Esq. (ME 0570)
Ira M. Levee, Esq. (IL 9958)
1251 Avenue of the Americas, 18th Floor
New York, New York 10019
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)
            and
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2400 (Facsimile)

*Bankruptcy Counsel for Lead Plaintiffs and the Prospective Class*

**NIX, PATTERSON & ROACH, L.L.P.**
Jeffrey J. Angelovich, Esq.
Bradley E. Beckworth, Esq.
Susan Whatley, Esq.
205 Linda Drive
Daingerfield, Texas 75638
(903) 645-7333 (Telephone)
(903) 645-4415 (Facsimile)

**BERNSTEIN LITOWITZ BERGER & GROSSMAN, LLP**
John P. Coffey, Esq. (JC 3832)
Hannah E. Greenwald, Esq. (HG 5180)
Mark D. Debrowski, Esq. (MD 3968)
1285 Avenue of the Americas
New York, New York 10019
(212) 554-1400 (Telephone)
(212) 554-1444 (Facsimile)

**GRANT & EISENHOFER, P.A.**
Jay W. Eisenhofer, Esq. (JE 5503)
Stuart M. Grant, Esq. (SG 8157)
45 Rockefeller Center
650 Fifth Avenue
New York, New York 10111
(212) 755-6501 (Telephone)
(212) 755-6503 (Facsimile)
and
Geoffrey C. Jarvis, Esq.
Sharan Nirmul, Esq.
Benjamin J. Hinerfeld, Esq.
1201 North Market Street, Suite 2100
Wilmington, Delaware 19801
(302) 622-7000 (Telephone)
(302) 622-7100 (Facsimile)

**SCHIFFRIN & BARROWAY, L.L.P.**
Michael Yarnoff, Esq.
Sean M. Handler, Esq.
Jodi Murland, Esq.
280 King of Prussia Road
Radnor, Pennsylvania 19087
(610) 667-7056 (Telephone)
(610) 667-7706 (Facsimile)

*Co-Lead Counsel for Lead Plaintiffs and the Prospective Class*