**LOWENSTEIN SANDLER PC**
Michael S. Etkin, (ME 0570)
Ira M. Levee (IL 9958)
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
(212) 262-6700  (Telephone)
(212) 262-7402  (Facsimile)
                  and
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2481 (Facsimile)

Hearing Date: January 5, 2006 at 10:00 a.m.

*Bankruptcy Counsel to Lead Plaintiffs and the Prospective Class*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

———————————————————————

|   |   |   |
|---|---|---|
| In re: | : |  |
| DELPHI CORPORATION, et al., | : |  |
|  | : | Chapter 11 |
| Debtors. | : | Case No. 05-44481 (RDD) |
|  | : | (Jointly Administered) |

———————————————————————

**DECLARATION OF JOHN P. COFFEY IN SUPPORT OF LEAD
PLAINTIFFS' MOTION TO COMPEL DISCOVERY RELATED TO DEBTORS'
MOTION FOR ORDER UNDER §§ 105 AND 363 AUTHORIZING DEBTORS
TO IMPLEMENT A KEY EMPLOYEE COMPENSATION PROGRAM**

Pursuant to 28 U.S.C. § 1746, JOHN P. COFFEY, hereby declares as follows:

1.      I am a member in good standing of the bar of this Court and a partner with

Bernstein Litowitz Berger and Grossmann LLP ("Bernstein Litowitz"), one of the Court-

appointed Lead Counsel for the Teachers' Retirement System of Oklahoma, the Public

Employees' Retirement System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft

m.b.H. and Stitching Pensioenfonds ABP (collectively, "Lead Plaintiffs"), the court-

appointed Lead Plaintiffs in the securities class action entitled *In re Delphi Corp.*

*Securities Litigation.* I submit this declaration in support of Lead Plaintiffs' Motion to

Compel Discovery Related to Debtors' Motion for Order Under §§ 105 and 363

Authorizing Debtors to Implement a Key Employee Compensation Program (the "Motion

to Compel").  The facts set forth below are known to me personally or based on reports

made to me by other counsel for Lead Plaintiffs.

Procedural and Factual Background

2.    On June 27, 2005, the four large institutional investors identified above

were appointed by the Honorable Naomi Reice Buchwald of the United States District

Court of the Southern District of New York to serve as Lead Plaintiffs to represent all

Delphi securities purchasers in the class action entitled *In re Delphi Corp. Securities*

*Litigation*.  *See* Docket No. 32.  In their consolidated complaint filed on September 30,

2005 (attached as Exhibit 1 to Lead Plaintiffs' Objection to Debtor's Motion for an Order

Under §§ 105 and 363 Authorizing Debtors to Implement a Key Employee Compensation

Program (the "Complaint")) Lead Plaintiffs alleged that Delphi Corp. ("Delphi" or the

"Company"), various of its officers, and its auditor Deloitte & Touche, did, between

March 7, 2000 and March 3, 2005 (the "Class Period"), commit a host of accounting

improprieties that violated federal securities laws and resulted in the material

misstatement of virtually every financial statement filed by the Company since it became

a publicly-traded company in 1999.  Based on Lead Plaintiffs' pre-filing investigation,

and on Delphi's own admissions of its past improprieties in its June 30, 2005 restatement

(the "Restatement") and related press releases, the Complaint describes a widespread,

indeed pervasive, tolerance of accounting and financial chicanery among numerous

Delphi executives. *See* Complaint Sect. VI, ¶¶ 117-204 (describing fraudulent activity at

Delphi).    Indeed, the Complaint identified by name no fewer than fifteen current

company executives who either were directly involved in, knew of, or turned a blind eye

to alleged (or in many cases, admitted) accounting improprieties.    See, e.g., Complaint

¶¶123, 130, 132, 139, 193-4, 198 relating to Mark R. Weber; Executive Vice President,

Operations, Human Resource Management & Corporate Affairs; Rick Birch, Delphi's

Global Director of Production, Control and Logistics; Guy C. Hatchey, Vice President of

Delphi and President of the Energy and Chassis Division; and Mark Lorenz, Delphi's

Vice President of Operations and Logistics.

3.    After Debtors filed for bankruptcy protection, Lead Plaintiffs authorized

the retention of Lowenstein Sandler, P.C. to assist in the representation of Lead Plaintiffs

and the prospective Class in the Chapter 11 proceeding.

4.    On October 8, 2005, Debtors moved for an Order Under §§ 105 and 363

Authorizing Debtors to Implement a Key Employee Compensation Program (the

"KECP") (the motion is hereinafter referred to as the "KECP Motion").    *See* Docket No.

0013.    On October 14, 2005, Debtors re-filed the KECP Motion seeking substantially

similar relief.    *See* Docket No. 0213.    Although the KECP Motion purported to describe

the Debtors' financial history, it made no mention of the billion dollar-plus Restatement

that had been filed just months before this bankruptcy filing, or of the underlying

accounting scandal widely considered a substantial cause of that filing.    The KECP

Motion was likewise silent as to what measures, if any, had been taken to ensure that any

executives who participated in, were aware of, or recklessly ignored the past financial

improprieties would benefit from the proposed KECP.    Nothing was said as to whether

3

there had been any scrutiny whatever of the fifteen executives who were named in the Complaint who remained with the Company as of October 8, 2005.  As to those executives named in the Complaint who are no longer with the Company because they had been terminated for cause or urged to resign as a result of the accounting scandal, the KECP misleadingly lumps them within the twenty-five executives Debtors claim to have "lost" since January 1, 2005, KECP ¶ 17, a statistic cited as a ground for approving the KECP.

5.    On November 22, 2005, Lead Plaintiffs timely filed an Objection to Debtor's KECP Motion (the "Objection").  *See* Docket No. 1161.   Lead Plaintiffs objected to the KECP Motion on the grounds that the Motion fails to provide evidence demonstrating that the proposed KECP is the result of sound business judgment. Specifically, Lead Plaintiffs asserted that Debtor's proposed KECP is (i) not supported by sufficient facts; (ii) unconscionable because many of the senior executives who were involved in the admitted accounting improprieties are still managing the Company and stand to profit under the KECP; and (iii) not specific regarding key details of the plan, including the identity of the executives covered under the KECP and the specific performance levels that trigger the KECP.

6.    In response to Lead Plaintiffs' Objection, Debtors served their First Set of Interrogatories and Document Requests on Lead Plaintiffs ("Debtors' Discovery Requests").  A copy of Debtors' December 5, 2005 cover letter and Debtors' Discovery Requests are attached hereto as Exhibits A and B, respectively.  Among other things, Debtors demanded that Lead Plaintiffs produce documents relating to the alleged accounting improprieties, inventory manipulation, and sham transactions that Lead

Plaintiffs contend should disqualify tainted executives from participating in the KECP.
*See* Ex. B, *e.g.,* Requests No. 3, 6-8.

7.    On December 6, 2005, several of my co-counsel, including Ira M. Levee of Lowenstein Sandler PC and Hannah E. Greenwald of my firm, participated in a telephonic meet and confer between Debtors and other parties who had objected to the KECP Motion, including counsel for the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO (the "USW") and the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communications Workers of America (the "IUE-CWA").  During the meet and confer, Debtors proposed a discovery schedule that provided for, among other things, (i) Lead Plaintiffs to submit discovery requests to Debtors by December 8, 2005; (ii) Debtors to provide written objections to Lead Plaintiffs' discovery requests by December 10, 2005; and (iii) Lead Plaintiffs to provide written objections to Debtors' Discovery Requests by December 12, 2005.  A copy of Debtors' proposed schedule is attached hereto as Exhibit C.

8.    In accordance with Debtors' schedule, Lead Plaintiffs submitted their discovery requests to Debtors ("Lead Plaintiffs' Discovery Requests") on December 8, 2005.  A copy of those requests is attached hereto as Exhibit D.  Among other things, we informed Debtors that we had already identified at least one current executive that we intended to depose in connection with the KECP Motion (John D. Sheehan, former head of accounting during much of the period when the accounting improprieties occurred and now, notwithstanding the accounting improprieties that occurred on his watch, chief of

Delphi's restructuring effort), and that Lead Plaintiffs would provide the names of additional witnesses as soon as reasonably practicable.

9.      On December 9, 2005, Debtors began producing documents responsive to requests propounded by the Committee of Unsecured Creditors, the USW and the IUE-CWA by posting such documents on an electronic database.   Before allowing Lead Plaintiffs access to the electronic database, Debtors required that Lead Counsel execute their proposed Stipulation and Agreed Protective Order Governing Production and Use of Confidential and Highly Confidential Information in Connection With the Debtor's Motion for an Order Under §§ 105 and 363 Authorizing Debtors to Implement a Key Employee Compensation Program and Objections Filed Thereto (the "Confidentiality Stipulation and Order").  We did so, without any modification, on December 9, 2005.  A copy of the Confidentiality Stipulation and Order is attached hereto as Exhibit E.

10.      Pursuant to Debtors' schedule, Debtors' objections to Lead Plaintiffs' Discovery Requests were due to be served on December 10, 2005.  Debtors did not serve their objections on that date; nor did they alert Lead Plaintiffs to any difficulties in complying with their own proposed schedule or ask that Lead Plaintiff consent to an extension of Debtors' time to object to Lead Plaintiffs' Discovery Requests. Furthermore, Debtors flatly denied a request by the unions to get an extension on their deadline for discovery responses.  A copy of the Debtors' transmittal email is attached hereto as Exhibit F.  Debtors stated that if the unions failed to produce their discovery responses by December 23, they will have breached their agreement and be precluded from offering evidence in support of their objections.[1]

---

[1]   Debtors themselves have insisted that, in order to ensure the fair and orderly consideration of the KECP Motion, a party that fails to timely comply with Debtors' schedule merits the sanction

11.    Notwithstanding Debtors' failure to abide by their own schedule, Lead Plaintiffs timely informed Debtors on December 12, 2005 that they would produce all non-privileged documents responsive to Debtors' Discovery Requests by December 21, 2005, the date proposed by Debtors.  A copy of Lead Plaintiffs' December 12, 2005 letter to Debtors is attached hereto as Exhibit H.  Having further considered the KECP Motion and the discovery sought by Debtors in the Debtors' Discovery Requests, Lead Plaintiffs also informed Debtors of their intention to call Sheehan, Laura Marion ("Marion"), Dan Renick ("Renick") and John Rotko ("Rotko") to testify at the hearing on the KECP Motion.

12.    On December 12, 2005, without explanation as to their failure to abide by their own schedule, Debtors tardily provided Lead Plaintiffs with their written objections to Lead Plaintiffs' Discovery Requests.  A copy of Debtors' December 12, 2005 letter is attached hereto as Exhibit I.  Debtors objected to sixteen of the twenty-nine requests, claiming that the requests were (i) not relevant to the KECP motion and (ii) an improper attempt to obtain discovery for the underlying securities action in violation of the litigation stay imposed by Section 362(a) of the Bankruptcy Code and the discovery stay imposed by the Private Securities Litigation Reform Act (the "PSLRA").  Debtors also objected to Lead Plaintiffs' Discovery Requests to the extent the requests sought information on the identities of the executives covered under the KECP, contending that such information was an invasion of privacy.  For this reason, Debtors stated that they would only provide identifying information for the five most highly-compensated

---

of preclusion.  Lead Plaintiffs respectfully submit that Debtors' failure to object in a timely manner requires rejection of their objections. *See Eldaghar v. City of New York Dep't of Citywide Admin. Serv.*, No. 02Civ.9151, 2003 WL 22455224, at *1 (S.D.N.Y. Oct. 28, 2003) (holding that failure to provide objections to discovery requests in a timely manner operates as a waiver), attached hereto as Exhibit G.

participants of the program.  In addition, Debtors objected to Lead Plaintiffs' request to depose Sheehan in connection with the KECP Motion, stating that they would not produce him for deposition "at least not without a satisfactory explanation by the requesting party as to the relevance of his testimony and the identification of areas of potential inquiry."

13.    On December 13, 2005, the hearing on the KECP was adjourned from January 5, 2006 to January 27, 2006.  Thereafter, Debtors circulated a revised discovery schedule for the KECP Motion hearing.  A copy of the Debtors' transmittal e-mail and revised schedule is attached hereto as Exhibit J.  Among other things, the date by which Lead Plaintiffs are to produce documents sought by Debtors – including those relating to the allegations of misconduct – has been moved to December 23, 2005.

The December 15, 2005 Meet and Confer

14.    On December 15, 2005, I, other Co-Lead Counsel, and Bankruptcy Counsel participated in a telephonic meet and confer with Debtors' Counsel in an attempt, among other things, to resolve the discovery issues relating to Lead Plaintiffs' Discovery Requests in connection with the KECP Motion and Debtors' objections thereto.   As set forth in greater detail below, the meet and confer focused on Debtors' four primary objections to Lead Plaintiffs' Discovery Requests, which include (i) the relevance of Lead Plaintiffs' Discovery Requests; (ii) the purpose of Lead Plaintiffs' Discovery Requests; (iii) the confidentiality and treatment of information related to certain beneficiaries of the KECP; and (iv) the individuals whom Lead Plaintiffs intend to depose and call as witnesses in connection with the hearing on the KECP Motion.

15.     First, Lead Plaintiffs explained that our discovery requests seek documents which are relevant to the KECP Motion, namely, whether the KECP will reward executives who were involved in Delphi's accounting improprieties.  We explained that, because Lead Plaintiffs' Discovery Requests relate directly to determining (i) what the intended beneficiaries of the KECP did or did not do with respect to Delphi's improper accounting practices and inventory manipulations, and (ii) what Delphi did to ensure that the executives who were involved in the accounting improprieties would not benefit under the KECP, our discovery requests are highly relevant to evaluating the appropriateness of and the business judgment behind Debtors' KECP Motion.  We also pointed out that Debtors' own actions demonstrate that they believe that this information is relevant to the motion.  Indeed, Debtors' Discovery Requests to Lead Plaintiffs, which were served *prior* to Lead Plaintiffs' Discovery Requests to Debtors, seek the production of almost identical information and documents.  *See* Exhibit B.

16.     In response, Debtors stated, in substance, that the requested discovery is not relevant.

17.     Second, Lead Plaintiffs addressed Debtors' contention that Lead Plaintiffs' Discovery Requests were an attempt to improperly obtain discovery in the underlying securities case in violation of the stays imposed by the Bankruptcy Code and the PSLRA.   We explained that, regardless of whether the requested information is relevant to the underlying securities case, the requested information is highly relevant to the particular issues raised by the KECP Motion filed by Debtors and that, as creditors and parties-in-interest in the bankruptcy proceeding, Lead Plaintiffs are entitled to that information irrespective of the underlying securities case and the related stays.   In

addition, we explained that Lead Plaintiffs' Discovery Requests were narrowly tailored to address the specific issues raised by the KECP Motion and Lead Plaintiffs' Objection thereto.

18.    In response, Debtors stated, in substance, that the requested discovery was an improper attempt to obtain discovery for the underlying securities case and thus grounds to refuse to produce such discovery in connection with the KECP Motion.

19.    Third, Lead Plaintiffs addressed Debtors' contention that providing identifying information for executives covered under the KECP, other than information about the five most highly-compensated beneficiaries of the KECP, constituted an "invasion of privacy."   We noted that concerns of privacy should not be an issue since Lead Counsel and Bankruptcy Counsel had duly executed the Confidentiality Stipulation and Order proposed by Debtors.  In response, Debtors stated (without elaboration) that the Confidentiality Stipulation and Order was insufficient to protect against invasions of privacy.  I then offered to consider any revised confidentiality order that Debtors believed would be sufficient to protect the privacy of the KECP beneficiaries.  Debtors' Counsel stated that they would "think about it."  As of this date, Debtors have not circulated any revision to the existing confidentiality order on this point.

20.    Fourth, we addressed Debtors' refusal to produce Sheehan for deposition. In doing so, we explained Lead Plaintiffs' rationale for seeking to depose Sheehan, including the reasons why Sheehan is a relevant and necessary witness.  We also explained Lead Plaintiffs' rationale for seeking to depose additional Delphi witnesses, including Marion, Renick and Rotko.  *See infra*, ¶¶ 27-30.  Notwithstanding our explanation, Debtors would not reconsider their refusal to produce the witnesses for

deposition, and would not even confirm whether these individuals are intended beneficiaries of the KECP.

21.     At the end of the meet and confer, in a final attempt to narrow the disputed discovery issues and refine the issues that may require the Court's intervention,  Lead Counsel inquired whether any documents sought in Lead Plaintiffs' Discovery Requests existed.  Specifically, we asked if Delphi had scrutinized whether any of the intended beneficiaries of the KECP were involved in the accounting improprieties and, if so, whether there were documents memorializing such consideration.  Debtors refused to answer these questions.  Debtors also refused to identify a witness knowledgeable regarding what the Company did or did not do to ensure that the wrongdoers did not benefit under the KECP.

22.     At no point during the December 15, 2005 meet and confer did Debtors' counsel claim that the discovery sought by Lead Plaintiff was burdensome to the estate.

23.     On December 15, 2005, Debtors provided Lead Plaintiffs with further objections and partial responses to Lead Plaintiffs' Discovery Requests.  Debtors, in large part, restated their objections by incorporating the objections set forth in their December 12, 2005 letter.  *See* Exhibit I.  A copy of Debtors' December 15, 2005 letter setting forth Debtors' further objections and partial responses to Lead Plaintiffs' Discovery Requests is attached hereto as Exhibit K.

The Need For Judicial Intervention

24.     Despite Lead Plaintiffs' best efforts to resolve the discovery disputes raised by Debtors in their untimely objections to Lead Plaintiffs' Discovery Requests, the parties have been unable to reach a resolution concerning the issues raised above.

Accordingly, Lead Plaintiffs seek the Court's assistance in resolving the parties' discovery dispute.

25.    Specifically, Lead Plaintiffs respectfully request that the Court order Debtors to produce all documents and information responsive to Lead Plaintiffs' Discovery Requests.  As discussed above, the requested discovery is critical and necessary to evaluate whether Debtors' KECP constitutes the exercise of sound business judgment.  The requested discovery seeks information that goes directly to the heart of the KECP Motion, including, (i) the identities of the executives covered under the KECP; (ii) whether the executives covered under the KECP were involved in Delphi's improper accounting practices and inventory manipulations; and (iii) what, if anything, Delphi did do to ensure that the executives covered under the KECP were not involved in Delphi's accounting improprieties.

26.    Lead Plaintiffs also respectfully request that the Court order Debtors to produce Sheehan, Marion, Rotko and Renick for deposition reasonably in advance of the January 27, 2006 hearing on the KECP Motion.  These individuals are relevant to the KECP Motion because, as executives of Delphi for the last several years, these four individuals are presumably beneficiaries of the KECP, are familiar with other beneficiaries of the KECP and, as set forth in more detail below, are knowledgeable about Delphi's accounting improprieties and inventory manipulations.  Lead Plaintiffs note that these four individuals are a modest fraction of the nineteen current executives whom Lead Plaintiffs believe are tainted by the accounting scandal.  We summarize below the basis for requesting these four depositions.

27.    Sheehan was Delphi's Chief Accounting Officer and Controller from July 2002 until March 2005.  As such, he had a top-down view of Delphi's accounting practices and was in a position to know about Delphi's accounting improprieties, including who participated in various fraudulent accounting practices.  Sheehan would provide relevant testimony relating to his knowledge of the accounting improprieties, including, but not limited to his knowledge of the individuals involved in the particular transactions and whether the individuals involved are covered under the KECP.  *See* Complaint at ¶¶ 31, 195, 198, 605.

28.    Marion is the current and former Director of Delphi's Financial Reporting and Accounting Division.  As such, she was intimately familiar with and had access to all details relating to Delphi's financial reporting and accounting practices during the time period in which Delphi's accounting improprieties took place.  In particular, Marion was responsible for closing Delphi's books, including during the 2000 fiscal year, when, upon information and belief, Delphi re-opened its books after the close to record a $200 million financing transaction with Bank One as a "sale" of precious metals.  Marion would provide relevant testimony relating to her knowledge of Delphi's accounting improprieties, including, but not limited to, her knowledge regarding the $200 million Bank One transaction, including the individuals involved in the transaction and whether the individuals involved are covered under the KECP. *See* Complaint at ¶¶ 152-154.[2]

---

[2]   We note that, in the course of Lead Plaintiffs' investigation, we have learned important details regarding Delphi's fraudulent transaction with Bank One.  Specifically, in December 2000, Delphi disguised a loan for $200 million from Bank One as a sale of precious metals from its inventory.  To make this $200 million loan appear as a sale of inventory on its books, Delphi re-opened its books for the year ended December 31, 2000 and made new journal entries.  It is our understanding that, because of her end-of-year financial duties, Laura Marion is knowledgeable about who was involved in re-opening

29.    Renick is a Director of Plant Production, Control, and Logistics for Delphi's Electronics Safety Division.  In this position, Renick is intimately familiar with Delphi's schemes to understate its inventory.  Renick would provide relevant testimony relating to his knowledge of Delphi's accounting improprieties, including, but not limited to, Delphi's schemes to understate its inventory, including the individuals involved in these practices and whether the individuals involved are covered under the KECP. *See* Complaint at ¶¶ 193-94.

30.    Rotko is the Head of Indirect Materials in Mexico for Delphi's Electronics and Safety Division.  In this position, Rotko is intimately familiar with Delphi's schemes to understate its inventory as well as Delphi's improper financing transactions with Setech.  Rotko would provide relevant testimony regarding his knowledge of individuals and accounting methods involved in understating inventory at Delphi's facilities in Mexico.  ¶¶136-38.

31.    Clearly, these four executives – even though they are just a sampling of the executives covered under Debtor's KECP – possess firsthand knowledge of Delphi's accounting fraud and the executives who either participated in or willfully ignored the fraud.  For this reason, these executives are highly relevant to determining whether the KECP serves to further enrich executive wrongdoers and constitutes the exercise of sound business judgment.

32.    In sum, Lead Plaintiffs submit that discovery is necessary to evaluate whether the proposed KECP is the product of sound business judgment and, as set forth in the accompanying Motion to Compel, respectfully ask the Court to order Debtors to

---

Delphi's books and recording journal entries to make the financing transaction look like a "sale."

produce (i) Sheehan, Marion, Renick and Rotko for deposition and (ii) the requested documents and information.

       I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 23rd day of December, 2005.

                                          ____*/s/  John P. Coffey*____
                                           John P. Coffey

# EXHIBIT A

# SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

### 333 WEST WACKER DRIVE
### CHICAGO, ILLINOIS 60606-1285

TEL: (312) 407-0700
FAX: (312) 407-0411
www.skadden.com

FIRM/AFFILIATE OFFICES
BOSTON
HOUSTON
LOS ANGELES
NEWARK
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON

BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

DIRECT DIAL
312-407-0536
DIRECT FAX
312-407-0411
EMAIL ADDRESS
DSPRINGE@SKADDEN.COM

December 5, 2005

_**By Facsimile, Email, and First-Class Mail**_

Michael S. Etkin
LOWENSTEIN SANDLER PC
1251 Avenue of the Americas
18th Floor
New York, New York 10019
(212) 262-7402 - Facsimile

Re:    <u>In re Delphi Corporation, No. 05–44481 (RDD)</u>

Dear Mr. Etkin:

On behalf of the Debtors in the above-referenced matter, I write concerning the objection you filed to (the "Objection") to the Debtors' Motion for an Order under § 105 and 363 Authorizing the Debtors to Implement a Key Employee Compensation Program (Docket No. 213, filed October 15, 2005) (the "KECP Motion"). I will be supervising the litigation over the Motion for the Debtor.

As you know, the Court has scheduled a hearing on the KECP Motion to be held on January 5, 2006. In that connection, please find the Debtors' Interrogatories and Requests for Production designed to elicit the evidence supporting your client's Objection and to delimit the scope of the parties' dispute by asking your client to particularize its contentions and to disclose the evidence underlying them. We have requested that your respond to these discovery requests within fourteen days. Of course, we are prepared to discuss those discovery requests with you upon reasonable notice.

The Debtors are also prepared to commence document discovery to you upon your execution of an appropriate confidentiality stipulation and agreed order (a copy of which we'll send you tomorrow). In that connection, the Debtors propose first to produce those documents responsive to the information requests propounded by the Official Committee of Unsecured Creditors (a copy of which is attached). We also intend to make available to all Objectors whatever discovery has been requested by other Objectors.

Michael S. Etkin
December 5, 2005
Page 2


  Finally, pursuant to Paragraphs 5and 6 of the Case Management Order, we
have scheduled a "meet and confer" between the Debtors and the Objectors to the
KECP motion for Tuesday, December 6, 2005, at 3:00 p.m. Eastern Time. The call-
in information is 1-888-453-4408 Code 144771. We will be circulating a proposed
agenda tomorrow. If you could email me (dspringe@skadden.com) with the email
address of the person(s) at your firm who should receive the agenda, that would be
much appreciated.

  We look forward to speaking with you tomorrow.


         Very truly yours,

         David E. Springer

# EXHIBIT B

SKADDEN, ARPS SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05–44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' FIRST SET OF INTERROGATORIES AND DOCUMENT
REQUESTS TO THE SECURITIES CLASS ACTION LEAD PLAINTIFFS

The Debtors and Debtors-in-Possession (the "Debtors") hereby request that the Teachers' Retirement System of Oklahoma, the Public Employees' Retirement System of Mississippi, Raiffeisen Kapitalanlage m.b.H, and Stichting Pensionfonds ABP (collectively, the "Lead Plaintiffs" or "you"), within fourteen days of receipt hereof, answer the following interrogatories under oath and produce for inspection and copying all documents responsive to the following requests for production.

<u>DEFINITIONS AND INSTRUCTIONS</u>

1.    The Uniform Definitions in Discovery Requests set forth in Civil Rule 26.3 of the Local Rules of the United States District Courts for the Southern District of New York, incorporated by reference in Rule 7026–1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), shall apply to these interrogatories and requests for production.

2.    The requirements of Rules 7033-1 and 7034-1 of the Local Rules are incorporated herein.

3.    If no documents responsive to a particular request exist or are within your possession, custody, or control, your response shall so state.

4.    The "Motion" means the Motion for an Order under § § 105 and 363 Authorizing the Debtors to Implement a Key Employee Compensation Program (Docket No. 213, filed October 15, 2005), and all amendments thereto.

5.    "Covered Employees" means the Delphi employees as defined and described in Paragraphs 20 and 24 of the Debtors' KECP Motion, and in Exhibit 1 attached thereto, filed on October 13, 2005, in the above-captioned matter.

2

6.      The "Objection" means the objection you filed to the Motion and all amendments

thereto.

### INTERROGATORIES

1.      Identify every person you intend to call to testify at the hearing on the Motion and

describe the subject matters about which they will testify.

2.      Identify all documents you intend to offer in evidence or otherwise use at the hearing

on the Motion.

3.      Identify all witnesses you intend to call to testify at the hearing on the Motion

concerning your contention in Paragraph 2 of the Objection that "Delphi's massive accounting fraud

. . . impelled the Company's slide towards bankruptcy," and state with particularity the bases of this

contention, including the identification of all facts, opinions, and documents that support this

contention.

4.      Identify all witnesses you intend to call to testify at the hearing on the Motion

concerning your contention in Paragraph 4 of the Objection that "many of the Delphi employees who

would presumably profit from the KECP were directly involved in the sham transactions, inventory

manipulating, and book-cooking" referenced in the Objection, and state with particularity the bases

of this contention, including the identification of all facts, opinions, and documents that support this

contention.

5.      Identify all witnesses you intend to call to testify at the hearing on the Motion

concerning your contention in Paragraph 8(c) of the Objection that "Delphi and its senior executives

routinely set inventory target levels, instructed subordinates not to record high-dollar supplies as

inventory and directed subordinates to delay delivery of inventory," and state with particularity the

bases of this contention, including the identification of all facts, opinions, and documents that

3

support this contention.

6.    Identify all witnesses you intend to call to testify at the hearing on the Motion concerning your contention in Paragraphs 24(a) through 24(c) of the Objection that Delphi employees Rodney O'Neal, David Wohleen, and Mark R. Weber were "involved in Delphi's fraudulent accounting practices," and state with particularity the bases of this contention, including the identification of all facts, opinions, and documents that support this contention.

7.    Identify all witnesses you intend to call to testify at the hearing on the Motion concerning your contention in Paragraphs 25(a) through 25(n) of the Objection that any of the persons identified therein were "involve[d] in Delphi's accounting fraud," and state with particularity the bases of this contention, including the identification of all facts, opinions, and documents that support this contention.

8.    Identify all witnesses you intend to call to testify at the hearing on the Motion concerning your contention in Paragraph 26 of the Objection that "executives at all levels and in all business sectors of the Company either participated in or willfully ignored the Debtors' massive accounting fraud," and state with particularity the bases of this contention, including the identification of all facts, opinions, and documents that support this contention.

9.    Do you contend that the exercise of sound business judgment precludes the Debtors from offering any form of key employee compensation program during the course of these Chapter 11 proceedings?

a.    If so, state with particularity the bases of your contention, including the identification of all facts, opinions, and documents that support your contention.

b.    If not, do you contend that the exercise of sound business judgment precludes the Debtors from including, as a component of a key employee compensation

4

program:

    i.    a pre-emergence incentive plan? State with particularity the bases of your contention, including the identification of all facts, opinions, and *documents that support your contention.*

    ii.    pre-emergence employment severance protection? State with particularity the bases of your contention, including the identification of all facts, opinions, and documents that support your contention.

    iii.    an emergence bonus plan? State with particularity the bases of your contention, including the identification of all facts, opinions, and documents that support your contention.

    iv.    equity in the post-emergence company as a component of an emergence bonus plan? State with particularity the bases of your contention, including the identification of all facts, opinions, and documents that support your contention.

## DOCUMENT REQUESTS

1.    All documents identified in response to the foregoing interrogatories.

2.    A copy of the direct testimony, declaration, or affidavit, including all exhibits, of each witness identified in response to the foregoing interrogatories.

3.    All documents concerning your allegation in Paragraph 2 of the Objection that any Delphi executive or former Delphi executive "knowingly participated in Delphi's massive accounting fraud, or . . . inexcusably tolerated or ignored that fraud" which is the subject of the consolidated securities class action, entitled *In re Delphi Corp. Securities Litigation*, Master File No. 1:05–CV 2637 (NRB) (S.D.N.Y.) (the "Consolidated Securities Litigation").

4.    All documents concerning your allegation in Paragraph 2 of the Objection that "Delphi's massive accounting fraud . . . impelled the Company's slide towards bankruptcy."

5.    All documents concerning your allegation in Paragraph 2 of the Objection that Delphi's June 30, 2005, restatement of prior period earnings involves "one of the largest corporate frauds of our era."

6.    All documents concerning your contention in Paragraph 4 of the Objection that any of the Delphi employees "who would presumably profit from the KECP were directly involved in the sham transactions, inventory manipulating, and book-cooking" referenced in the Objection and alleged in the Consolidated Securities Litigation.

7.    All documents concerning your allegation in Paragraph 4 of the Objection that any "sham transactions, inventory manipulating, and book-cooking . . . triggered Delphi's bankruptcy."

8.    All documents concerning your allegation in Paragraph 8(e) of the Objection that "Delphi and its senior executives routinely set inventory target levels, instructed subordinates not to record high-dollar supplies as inventory and directed subordinates to delay delivery of inventory."

9.    All documents concerning your allegation in Paragraph 16 of the Objection that any purported "fraudulent conduct or willfull blindness" by any Delphi employee or former Delphi employee "precipitated the Debtors' collapse and necessitated this bankruptcy proceeding."

10.    All documents concerning your allegation in Paragraph 23 of the Objection that "the very executives who had fostered the Company's fraudulent culture and accounting practices, or had blithely ignored them in the face of mysteriously increasing earnings," remain "at the helm of the Company."

6

11.    All documents concerning your allegation in Paragraphs 24(a) through 24(c) of the Objection that Delphi employees Rodney O'Neal, David Wohleen, and Mark R. Weber were "involved in Delphi's fraudulent accounting practices."

12.    All documents concerning your allegations in Paragraphs 25(a) through 25(n) of the Objection that any of the persons identified therein were "involve[d] in Delphi's accounting fraud."

13.    All documents concerning your allegation in Paragraph 26 of the Objection that "executives at all levels and in all business sectors of the Company either participated in or willfully ignored the Debtors' massive accounting fraud."

7

DATED:    New York, New York
          December 5, 2005

                         SKADDEN, ARPS, SLATE, MEAGHER
                         & FLOM LLP

                         By: _____
                             John Wm. Butler, Jr. (pro hac vice)
                             David E. Springer
                             John K. Lyons
                             Ron E. Meisler
                         333 West Wacker Drive, Suite 2100
                         Chicago, Illinois 60606
                         *(312) 407-0700*

                                  - and -

                         By: _____
                             Kayalyn A. Marafioti (KM 9632)
                             Thomas J. Matz (TM 9866)
                         Four Times Square
                         New York, New York 10036
                         (212) 735-3000

                         Attorneys for Delphi Corporation, et al.,
                             Debtors and Debtors-in-Possession

8

# EXHIBIT C

12/8:   Debtors' written objections to  questions or requests in the IUE-CWA and USW
letter discovery requests will be issued.
          Submission of non-duplicative discovery requests  to the Debtors by those Objectors who
have not yet submitted requests;

12/9:   Debtors expect to begin posting all documents on E-Database

12/10   Debtors' written objections , if any, to the new, non-duplicative discovery requests
rec eived on 12/8).

12/12   Objectors' written objections to the Debtors' discovery requests

12/15   Debtors' written responses to all Objectors' Discovery Requests
          Debtors respond to all remaining discovery

12/21   All Objectors' responses and document productions to Debtors' discovery requests

12/23   Debtors submit testifying witnesses' declarations

12/30   Objectors submit testifying witnesses' declarations

1/2   Final cut-off date date for all  disclosure of hearing evidence, exhibits,  supplemental
declarations, witnesses, etc.

1/2 -3   Beginning at Noon on 1/2: Debtors' testifying witnesses produced at SASM&F for
deposition

1/3-1/4   Objectors' testifying witnesses available for deposition

1/5       Hearing date

# EXHIBIT D



Bradley E. Beckworth
Attorney at Law
Direct Dial: 903-645-7333 ext. 221
Direct Fax: 903-645-4415
E-mail: bbeckworth@nixlawfirm.com

December 8, 2005

**Via Electronic Mail and Facsimile**
Mr. David Springer
Skadden, Arps, Slate, Meagher & Flom L.L.P.
333 West Wacker Drive
Chicago, Illinois 60606-1285

Re:    **Lead Plaintiffs' Discovery Requests Pursuant to their Objection to Debtors'
Motion for Order Under §§ 105 and 363 Authorizing Debtors to Implement a
Key Employee Compensation Program**

Dear Mr. Springer:

We represent the Teachers' Retirement System of Oklahoma, the Public Employees'
Retirement System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H. and Stichting
Pensioenfonds ABP (collectively, "Lead Plaintiffs"), the Court appointed Lead Plaintiffs in the
consolidated securities class action entitled *In re Delphi Corp. Securities Litigation*, Master File
No. 1:05-CV-2637 (NRB)(SDNY).

During the "meet and confer" telephone call on December 6, 2005, Debtors (for purposes
of this letter, "Debtors" refers to Debtors and Debtors-in-Possession) requested that Lead
Plaintiffs submit their discovery requests to Debtors by letter, in lieu of a formal set of
interrogatories and/or requests for production. Pursuant to Debtors' request, Lead Plaintiffs
hereby request that Debtors provide the information and documents detailed below.

For purposes of Debtors' response to this letter, the Uniform Definitions in Discovery
Requests set forth in Civil Rule 26.3 of the Local Rules of the United States District Courts for
the Southern District of New York, incorporated by reference in Rule 7026-1 of the Local Rules
of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules")
shall apply to this request for information and documents. Further, the requirements of Rules
7033-1 and 7034-1 of the Local Rules are incorporated herein.

Reference to the "KECP Motion" means the Motion for an Order under §§105 and 363
Authorizing the Debtors to Implement a Key Employee Compensation Program, and all
amendments thereto. "Covered Employees" means the Delphi employees as defined and
described in Paragraphs 20 and 24 of the Debtor's KECP Motion, and in Exhibit 1 attached
thereto. The "Objection" means Lead Plaintiffs' Objection to Debtors' Motion for Order Under

§§ 105 and 136 Authorizing the Debtors to Implement a Key Employee Compensation Program, and all amendments thereto.  In this regard, Lead Plaintiffs request the following:

1.    Please identify each executive covered under the KECP Motion.

2.    For each person identified in response to item number 1, please identify each person(s) so listed who participated in any manner in one or more of the following:

     a.    Financing transactions totaling approximately $441 million reported by Debtors as sales of inventory or indirect materials, as described in detail in Lead Plaintiffs' Consolidated Class Action Complaint (hereinafter the "Complaint") at ¶¶122-54 (attached as Exhibit 1 to Lead Plaintiffs' Objection).  Specifically:

        (i) $145 million in financing transactions with, Setech, Inc. ("Setech") as income from sales of indirect materials;

        (ii) $89 million in financing transactions with BBK, Ltd. ("BBK") as income from sales of inventory; and

        (iii) $200 million in financing transactions with Bank One Corporation ("Bank One") as income from sales of  precious metals;

     b.    Transactions totaling more than $240 million between Debtors and General Motors Corporation ("GM"), as described in detail in the Complaint at ¶¶155-68;

     c.    Transactions between Debtors and various service providers, including $68 million in transactions with Electronic Data Systems ("EDS"), one of Debtors' information technology service providers, as described in detail in the Complaint at ¶¶173-84;

     d.    Debtors' identification of obligations that were not properly accrued for at the end of an accounting period that resulted in an overstatement of Debtors' pre-tax income by $14 million in 2002 and by $34 million in 2003, as described in detail in the Complaint at ¶¶185-87, as well as in Debtors' restated financial results for Fiscal Years 2002 and 2003, and selected financial data for Fiscal Years 2000 and 2001, in its Form 10K for the year ended December 31, 2004 (the "Restatement"), Item 7, Subparagraph (f);

    e.    Debtors' accounting for Debtors' direct materials by understating the value of its direct materials inventory on a monthly, quarterly and yearly basis, as described in detail in the Complaint at ¶¶190-99; and

    f.    All transactions not heretofore listed, which are listed in Debtors' restated financial results for Fiscal Years 2002 and 2003, and selected financial data for Fiscal Years 2000 and 2001, in its Form 10K for the year ended December 31, 2004 (the "Restatement"), Item 7, Subparagraphs (a) through (g) (pages 21-23).

3.    For each person identified in response to item number 2 (and/or each discrete subpart thereof), please state whether Debtors employed any investigation, processes and/or procedures to determine whether each such person's involvement in each transaction listed therein constituted:

    a.    A failure to exercise reasonable care;
    b.    A failure to exercise sound business judgment;
    c.    A dereliction of job duties;
    d.    Fraud (either civil or criminal in nature);
    e.    Mismanagement; and/or
    f.    Improper and/or undesirable conduct.

4.    If Debtors answered "Yes" in response to item number 3 (and/or any discrete subpart thereof), please list and describe the results and/or conclusions reached by Debtors regarding each such person so identified.

5.    If Debtors answered "Yes" in response to item number 3 (and/or any discrete subpart thereof), please identify each person who participated in any such investigation, processes and/or procedures.

6.    Please identify the twenty-five executives referenced in the KECP Motion, who have departed Debtors' employ since January 1, 2005.

7.    For each person identified in response to item number 6, please state the reason(s) for each such person's departure.

8.    Please identify and describe the performance goals used to trigger the bonuses offered under the KECP's annual incentive plan, including the methodology used in setting the performance goals.

9.    Please identify and describe the methodology underlying the allocation of the cash component of the KECP's emergence bonus plan.

*Mr. David Springer*
*December 8, 2005*
*Page 4 of 7*

10. Please list and provide a copy of any application for employment submitted to Debtors on behalf of a person who sought (or seeks) one or more of the positions presently held by the 486 executives who would be covered under the KECP.

11. Please identify every person you intend to call to testify at the hearing on the KECP Motion and describe the subject matters about which they will testify.

12. Do Debtors contend that the exercise of sound business judgment does not preclude Debtors from offering any form of key employee compensation to an employee who has:

    a.    Failed to exercise reasonable care;
    b.    Failed to exercise sound business judgment;
    c.    Been derelict in their job duties;
    d.    Engaged in fraud (either civil or criminal in nature);
    e.    Engaged in mismanagement; or
    f.    Engaged in improper and/or undesirable conduct.

13. Do Debtors contend that a failure to exercise sound business judgment does not preclude the Debtors from offering any form of key employee compensation program during the course of these Chapter 11 proceedings?

    a.    If so, state with particularity the bases of Debtors' contention, including the identification of all facts, opinions, and documents that support your contention.

    b.    Do Debtors contend that the failure to exercise sound business judgment does not preclude the Debtors from including, as a component of the key employee compensation program:

        i.    a pre-emergence incentive plan? State with particularity the bases of your contention, including the identification of all facts, opinions, and documents that Debtors contend support this contention.

        ii.    pre-emergence employment severance protection? State with particularity the bases of Debtors' contention, including the identification of all facts, opinions, and documents that Debtors contend support this contention.

        iii.    an emergence bonus plan? State with particularity the bases of Debtors' contention, including the identification of all facts, opinions, and documents that Debtors contend support this contention.

iv.    equity in the post-emergence company as a component of an emergence bonus plan? State with particularity the bases of Debtors' contention, including the identification of all facts, opinions, and documents that Debtors contend support this contention.

14.    Please identify all documents you intend to offer into evidence or for any other purpose at the hearing on the KECP Motion.

15.    Please produce all documents regarding any matter responsive to item numbers 1-14.

16.    Please produce a true and correct copy of the direct testimony, declaration, or affidavit, including exhibits, of each witness identified in response to item number 11.

17.    Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 2 of the Objection that any Delphi executive or former Delphi executive "knowingly participated in Delphi's massive accounting fraud, or . . . inexcusably tolerated or ignored that fraud" which is the subject of the consolidated securities class action, entitled *In re Delphi Corp. Securities Litigation*, Master File No. 1:05-CV-2637 (NRB) (S.D.N.Y.) (the "Consolidated Securities Litigation.").

18.    Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 2 of the Objection that "Delphi's massive accounting fraud . . . impelled the Company's slide towards bankruptcy."

19.    Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 2 of the Objection that Delphi's June 30, 2005, restatement of prior period earnings involves "one of the largest corporate frauds of our era."

20.    Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 4 of the Objection that any of the Delphi employees "who would presumably profit from the KCEP were directly involved in the sham transactions, inventory manipulating, and book-cooking" referenced in the Objection and alleged in the Consolidated Securities Litigation.

21.    Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 4 of the Objection that any "sham transactions, inventory manipulating, and book-cooking . . . triggered Delphi's bankruptcy."

22. Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 8(e) of the Objection that "Delphi and its senior executives routinely set inventory target levels, instructed subordinates not to record high-dollar supplies as inventory and directed subordinates to delay delivery of inventory."

23. Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 16 of the Objection that any purported "fraudulent conduct or willfull blindness" by any Delphi employee or former Delphi employee "precipitated the Debtor's collapse and necessitated this bankruptcy proceeding."

24. Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 23 of the Objection that "the very executives who had fostered the Company's fraudulent culture and accounting practices, or had blithely ignored them in the face of mysteriously increasing earnings," remain "at the helm of the Company."

25. Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraphs 24(a) through 24(c) of the Objection that Delphi employees Rodney O'Neal, David Wohleen, and Mark R. Weber were "involved in Delphi's fraudulent accounting practices."

26. Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraphs 25(a) through 25(n) of the Objection that any of the persons identified therein were "involve[d] in Delphi's accounting fraud."

27. Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 26 of the Objection that "executives at all levels and in all business sectors of the Company either participated in or willfully ignored the Debtors' massive accounting fraud."

28. To the extent that the Debtors deny the allegations in the Objection as referenced in requests 17 through 27 above, please produce any and all documents that support Debtors' denial thereof.

29. Lead Plaintiffs hereby incorporate all discovery requests submitted to Debtors by each Objector to the KECP Motion as if same are set forth fully herein.

We look forward to receiving Debtors' Response in a timely manner as we fully expect to proceed with this hearing on January 5, 2006.

*Mr. David Springer*
*December 8, 2005*
*Page 7 of 7*

We reserve the right to serve additional requests as our investigation continues and after we have had an opportunity to review Debtors' responses to the discovery requests set forth above.

We will give you a full list of all persons we intend to depose as soon as possible. At this time, we intend to depose John D. Sheehan. Specifically, we are requesting dates and times for Mr. Sheehan's deposition in advance of your proposed January 2, 2006, starting date for depositions. We will provide you with the names of any additional person(s) we intend to depose as soon as reasonably practicable after we have had an opportunity to review Debtors' responses to the discovery requests set forth above.

Sincerely,

Bradley E. Beckworth

BEB/sc
cc:    Mr. Sean Coffee
       Mr. Michael Yarnoff
       Mr. Geoffrey Jarvis
       Mr. Michael Etkin

# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------x
                                :
                                :
     In re                      :     Chapter 11
                                :
DELPHI CORPORATION, et al.,     :     Case No. 05–44481 (RDD)
                                :
            Debtors.            :     (Jointly Administered)
                                :
                                :
-------------------------------x

**STIPULATION AND AGREED PROTECTIVE ORDER GOVERNING PRODUCTION
AND USE OF CONFIDENTIAL AND HIGHLY CONFIDENTIAL INFORMATION IN
CONNECTION WITH THE DEBTORS' MOTION FOR AN ORDER UNDER §§ 105
AND 363 AUTHORIZING THE DEBTORS TO IMPLEMENT A KEY EMPLOYEE
COMPENSATION PROGRAM AND OBJECTIONS FILED THERETO**

This Stipulation and Agreed Protective Order is entered into and submitted to the Court in

accordance with the agreement of counsel for Delphi Corporation ("Delphi") and certain of its

subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (the

"Debtors"), on the one hand, and the undersigned parties in interest, on the other hand (the Debtors

and the signatories to this Stipulation and Agreed Protective Order being collectively the "Parties"),

that discovery requested and other information provided in connection with the Debtors' Motion for

an Order under §§ 105 and 363 Authorizing the Debtors to Implement a Key Employee

Compensation Program (Docket No. 213) and objections filed thereto (the "KECP Motion") may

involve the production of information considered sensitive, confidential, personal, proprietary,

and/or protected by statutory or other legal privilege, and it appearing to the Court that there is good

and sufficient cause that the relief should be granted,

     IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED:

          1.    The terms of this stipulation and agreed protective order (the "Stipulation and

Protective Order") shall take full force and effect upon execution by the Parties.

2.    Pursuant to Federal Rules of Civil Procedure 26(c), made applicable here through Federal Rules of Bankruptcy Procedure 7026 and Local Rule 7026-1, Rule 9018 of the Federal Rules of Bankruptcy Procedure, and sections 105 and 107 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330, as amended (the "Bankruptcy Code"), this Stipulation and Protective Order shall govern all discovery relating to the KECP Motion.

3.    Any signatory to this Stipulation and Protective Order may designate as "Highly Confidential" any document, deposition testimony, or other information given by or on behalf of the Parties, and all information derived therefrom that a Party reasonably believes reflects non-public trade secrets, competitively sensitive business or development plans, forward-looking financial information, or personal information (the "Highly Confidential Information"). In addition, any signatory may designate as "Confidential" any other non-public information in any document, deposition testimony, or other information given by or on behalf of the Parties (the "Confidential Information") that the Party reasonably believes contains confidential information the distribution and use of which should be restricted in accordance with the terms of this Stipulation and Protective Order. Documents shall be designated as Confidential or Highly Confidential (a) by placing or affixing the words "Confidential" or "Highly Confidential" on each such document, (b) by written notice to other Parties, or (c) by virtue of the fact that any such document is otherwise already labeled as Confidential or Highly Confidential. Deposition testimony or deposition exhibits may be designated as Confidential or Highly Confidential either on the record during the deposition itself or by written notice (which may be by email) delivered within two (2) business days following receipt of the transcript by the Party who seeks to designate such deposition testimony as Confidential or Highly Confidential. Where deposition testimony or exhibits are designated as Confidential or Highly Confidential, the deposition transcript or deposition exhibits shall be so marked as Confidential or Highly Confidential, as appropriate.

2

4.    Inadvertent failure to designate materials as Confidential or Highly Confidential at the time of production or at the time of a deposition may be remedied at any time thereafter by supplemental written notice (which may be by email) delivered within two (2) business days after the production of such materials.  Upon the service of such notice, the identified materials shall be fully subject to this Stipulation and Protective Order as if the materials had been initially designated as Confidential or Highly Confidential.

5.    Material designated as Confidential pursuant to this Stipulation and Protective Order shall only be inspected by and disseminated to the following persons:

a.    the Court and its staff;

b.    the Parties and counsel of record to the Parties, and clerical, secretarial, and paralegal staff employed by such counsel;

d.    the Parties' retained professional advisors in the above-captioned cases;

e.    any deponent, counsel for the deponent, and clerical, secretarial, and paralegal staff employed by such counsel; and

f.    court reporters and videographers engaged for recording testimony of a deposition relating to the KECP Motion.

6.    Material designated as Highly Confidential pursuant to this Stipulation and Protective Order shall only be inspected by and disseminated to the following persons:

a.    the Court and its staff;

b.    those counsel of record to the Parties, and clerical, secretarial, and paralegal staff employed by such counsel, who are involved in the litigation or negotiation of the KECP Motion;

d.    the Parties' retained professional advisors in the above-captioned cases, to the extent they are involved in the litigation or negotiation of the KECP Motion;

3

e.    any deponent, counsel for the deponent, and clerical, secretarial, and paralegal staff employed by such counsel, to the extent such deponent is actually shown Highly Confidential Information in connection with a deposition taken in connection with the KECP Motion; and

f.    court reporters and videographers engaged for recording testimony of a deposition relating to the KECP Motion.

7.    Confidential Information and Highly Confidential Information, or any information derived therefrom, shall be used or disclosed by a receiving Party solely for the purpose of the KECP Motion, including litigation or negotiation of any objections thereto, and not for any other purpose whatsoever. Any person receiving Confidential Information or Highly Confidential Information shall not reveal or discuss such information to or with any person who is not entitled to receive such information.

8.    The inadvertent production of any Confidential or Highly Confidential document, material, or other information subject to a claim of attorney-client privilege, attorney work product, or any other privilege or discovery exemption shall not be deemed to be a waiver of any claim of privilege, confidentiality, or other protection with respect to that or any other document, material, or information. In the event that any document or material that is subject to a claim that it is confidential, privileged, or protected from discovery on any other ground is inadvertently produced, the Party who received the inadvertently produced document or material shall return it and all copies of it to the producing Party within three (3) business days after it receives written notice (by letter or email) from the producing Party that the document or material was inadvertently produced. In the case of Confidential or Highly Confidential documents or materials that were inadvertently produced without the appropriate designation but that were otherwise intended to be produced, the producing Party shall return to the Party to whom the documents or materials were inadvertently produced copies of the documents and materials

4

containing the appropriate designation within three (3) business days of receipt of the returned documents or materials.

9.    If at any time a Party objects to the designation of documents or information produced or testimony given as Confidential or Highly Confidential under this Stipulation and Protective Order, the objecting Party shall notify the designating Party in writing (which may be by email). The objecting Party shall identify the documents or information in question and shall specify in reasonable detail the reasons for the objection. Within two (2) business days of the receipt of such notice, the disclosing and objecting Parties shall meet and confer in an effort to resolve their differences. If the Parties cannot resolve their differences, the disclosing Party may apply within two (2) days thereafter, or such longer time as the Parties may agree, for a ruling from the Court on the propriety of the designation. While any such application is pending, the documents or information that are subject to the application shall remain Confidential or Highly Confidential, as the case may be, until the Court rules. If the disclosing Party does not apply to the Court for a ruling on the propriety of the designation within two (2) days after the conclusion of the meet and confer, or within such time as the Parties may agree, the documents or information that are subject of the dispute will no longer be deemed Confidential or Highly Confidential. The disclosing Party shall have the burden of proving, to the Court's satisfaction and by a preponderance of the evidence, that the document or information qualifies as sufficiently confidential, under Rule 26(c) of the Federal Rules of Civil Procedure and/or Rule 9018 of the Federal Rules of Bankruptcy Procedure, that its dissemination and use should be restricted in accordance with the terms of this Stipulation and Protective Order.

10.    Nothing in this Stipulation and Protective Order shall be construed as preventing any Party from objecting to the designation of any document or information as

5

Confidential or Highly Confidential or preventing any Party from seeking further protection from the Court for any materials or information it produces in discovery.

11.   Within thirty (30) days after the entry of an order by this Court confirming a plan of reorganization or dismissing the cases, whichever first occurs, all documents and other material designated as Confidential or Highly Confidential pursuant to this Stipulation and Protective Order, and all copies thereof, including but not limited to any notes or other transcriptions made therefrom, shall either be (a) returned to the producing Party or Party creating such information, or (b) destroyed. If the receiving Party chooses to destroy any such documents or materials, then that Party shall deliver a certificate attesting to that destruction to the Party who produced the Confidential or Highly Confidential documents or materials within thirty (30) days after the entry of an order by this Court confirming a plan of reorganization or dismissal of the cases, as the case may be.

12.   If documents, materials or information (including portions of deposition transcripts) designated as Highly Confidential are to be included in any papers to be filed in this Court or any other court, counsel filing such documents shall file with such documents, and include on any copies it serves on other Parties, a notice that the documents are, or are claimed to be, subject to this Stipulation and Protective Order, identifying this Stipulation and Protective Order by date. Such papers shall be filed in a sealed envelope bearing a label which contains the case caption, docket number, title of paper being filed, and a legend that reads: "HIGHLY CONFIDENTIAL: FILED UNDER SEAL."

13.   This Stipulation and Protective Order shall not be construed to affect in any way the admissibility of any document, testimony, or other evidence at a hearing on the KECP Motion.

14.   Nothing in this Stipulation and Protective Order shall be construed to limit any disclosing Party's use or disclosure of its own documents, materials, or information. In addition,

6

nothing in this Stipulation and Protective Order shall prevent or in any way limit disclosure, use, or dissemination of any information or documents that are in the public domain. This Stipulation and Order shall not prejudice in any way the rights of any Party to introduce into evidence or use at a hearing on the KECP Motion any document, testimony, or other information that is subject to this Stipulation and Protective Order.

       15.   Any non-party producing discovery materials in connection with the KECP Motion may be included in this Stipulation and Protective Order by endorsing a copy of this Stipulation and Protective Order and delivering it to the requesting Party who, in turn, will serve it upon counsel for the other Parties and file it with the Court. The Parties to the KECP Motion may designate discovery materials produced by a non-Party to the KECP Motion as Confidential or Highly Confidential in accordance and consistent with the terms and provisions of this Stipulation and Protective Order.

       16.   This Stipulation and Protective Order shall not prevent any Party from applying to the Court for further or additional protective orders, for the modification of this Stipulation and Protective Order, or from agreeing with other Parties to modify this Stipulation and Protective Order, subject to the approval of the Court.

       17.   This Court retains exclusive jurisdiction to enforce, modify, or vacate all or any portion of this Stipulation and Protective Order upon appropriate motion by a party in interest.

       So Ordered in New York, New York, this ___ day of _____, 2005

                              _____

                              Honorable Robert D. Drain
                              United States Bankruptcy Judge

AGREED TO AND
APPROVED FOR ENTRY:

_____

John Wm. Butler, Jr.
David E. Springer
John K. Lyons
Ron E. Meisler
Mark A. McDermott
SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606-1285
(312) 407-0700

Attorneys for Delphi Corporation, et al.,
and Debtors and Debtors-in-Possession

_____

[Insert Name of Counsel and Party Name]

# EXHIBIT F

**Subject:** FW: Delphi --KCEP Revised Discovery Schedule

------ Forwarded Message
**From:** "Springer, David" <DSPRINGE@skadden.com>
**Date:** Wed, 21 Dec 2005 12:32:23 -0500
**To:** Babette Ceccotti <bceccotti@cwsny.com>
**Cc:** <lpeterson@msek.com>, <landy.ralph@pbgc.gov>, <rtrust@stblaw.com>,
<JH@previant.com>, <lmagarik@kjmlabor.com>, <tkennedy@kjmlabor.com>,
<HKolko@msek.com>, <kziman@stblaw.com>, "Fox, Edward M." <efox@klng.com>,
<metkin@lowenstein.com>, <nganatra@uaw.net>, <djury@steelworkers-usw.org>,
<mbane@kelleydrye.com>, <bmehlsack@gkllaw.com>, <mrr@previant.com>,
<rschumacher@kelleydrye.com>, <msomerstein@kelleydrye.com>, <emoser@klng.com>,
<sean@blbglaw.com>, <sgrant@gelaw.com>, Brad Beckworth
<bbeckworth@nixlawfirm.com>
**Conversation:** Delphi --KCEP Revised Discovery Schedule
**Subject:** RE: Delphi --KCEP Revised Discovery Schedule

At the first meet and confer on 12/6, the unions agreed to produce their discovery
responses on 12/21. In light of the adjournment of the hearing, we agreed to give
them until 12/23, all the while adhering to our responses deadlines.

If the unions fail to produce their discovery responses by 12/23, they will have
breached their agreement and will be precluded, under paragraphs 5 and 6 of the
Case Management Order, from offering evidence in support of their objections.

The unions will proceed otherwise at their own peril.

David E. Springer
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive
Suite 2100
Chicago, IL 60606
312/407-0536
312/407-0411 (preferred fax)
312/407-8524 (direct fax)
773/490-5592 (mobile)
dspringe@skadden.com

12/22/2005

**From:** Babette Ceccotti [mailto:bceccotti@cwsny.com]
**Sent:** Wednesday, December 21, 2005 9:44 AM
**To:** Springer, David
**Subject:** RE: Delphi --KCEP Revised Discovery Schedule

David: Although not specifically covered in the message sent to you by IUE's counsel on behalf of the Union Objectors, UAW also believes that Friday's deadline for discovery responses is unrealistic and premature. Using the revised schedule proposed by the Union Objections, we suggest a date between January 6 and January 18 for discovery responses.

Babette Ceccotti
Cohen, Weiss and Simon LLP
330 West 42nd Street
New York, NY 10036-6976
direct dial (212) 356-0227
direct fax (646) 473-8227
bceccotti@cwsny.com

**From:** Springer, David [mailto:DSPRINGE@skadden.com]
**Sent:** Tuesday, December 13, 2005 6:28 PM
**To:** lpeterson@msek.com; landy.ralph@pbgc.gov; rtrust@stblaw.com; JH@previant.com; lmagarik@kjmlabor.com; tkennedy@kjmlabor.com; HKolko@msek.com; kziman@stblaw.com; Fox, Edward M.; metkin@lowenstein.com; Babette Ceccotti; nganatra@uaw.net; djury@steelworkers-usw.org; mbane@kelleydrye.com; bmehlsack@gkllaw.com; mrr@previant.com; rschumacher@kelleydrye.com; msomerstein@kelleydrye.com; emoser@klng.com; Brad Beckworth; sean@blbglaw.com; sgrant@gelaw.com
**Cc:** MacDonald, Neil; Campanario, Nick
**Subject:** Delphi --KCEP Revised Discovery Schedule

Dear Counsel,

Attached is a revised discovery schedule on the KCEP Motion, which takes into account the adjournment of the hearing on the Motion as well as the fact that the Creditors' Commitee has been given until January 9 to file an objection, if any. It comports with the discussions we had concerning the Objectors' desire for an adjournment at our meet at confer last week

David E. Springer
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive
Suite 2100
Chicago, IL 60606
312/407-0536
312/407-0411 (preferred fax)
312/407-8524 (direct fax)
773/490-5592 (mobile)
dspringe@skadden.com

--------------------------------------------------------------------------

To ensure compliance with Treasury Department regulations, we advise you that, unless otherwise expressly indicated, any federal tax advice contained in this message was not intended or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting, marketing or recommending to another party any tax-related matters addressed herein.

*****************************************************

This e-mail and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any e-mail, and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
*****************************************************

Under applicable Treasury Regulations, we are required to inform you that no U.S. tax advice in this email or an attachment to this email is intended or written to be used, nor can it be used, to avoid a penalty under the Internal Revenue Code, or to promote, market or recommend to another party a transaction or matter addressed in this email or attachment.

This e-mail and any attachments may contain material that is protected by an attorney-client privilege or that is otherwise confidential. Please do not permit anyone other than an addressee or an employee or other authorized agent of an addressee to read this e-mail or any of its attachments without the consent of Cohen, Weiss and Simon LLP. If you are not

one of the people specified in the previous sentence, please delete this e-mail and its attachments and notify me.


------ End of Forwarded Message

12/22/2005

# EXHIBIT G

Westlaw.

Not Reported in F.Supp.2d                                                      Page 1

Not Reported in F.Supp.2d, 2003 WL 22455224 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Asem ELDAGHAR, Plaintiff,
v.
CITY OF NEW YORK DEPARTMENT OF
CITYWIDE ADMINISTRATIVE SERVICES,
Defendant.
**No. 02Civ.9151(KMW)(HBP).**

Oct. 28, 2003.

The District Court, Pitman, United States
Magistrate Judge, held that party waived its
objections to request for production of documents.

Ordered accordingly.

West Headnotes

**Federal Civil Procedure 170A ⬦1558.1**

170A Federal Civil Procedure
  170AX Depositions and Discovery
    170AX(E) Discovery and Production of
Documents and Other Tangible Things
      170AX(E)1 In General
        170Ak1558 Objections and Grounds
for Refusal
          170Ak1558.1 k. In General. Most
Cited Cases
Party waived its objections to request for
production of documents, for its unexcused and
unexplained failure to assert objections in timely
manner, although literal application of requirements
caused some hardship to party. Fed.Rules
Civ.Proc.Rule 34(b), 28 U.S.C.A.

MEMORANDUM OPINION AND ORDER

PITMAN, Magistrate J.
**\*1** I write to supplement the reasons given on the

record on October 2, 2003 for my finding that
defendant has waived its objections to plaintiff's
request for production of documents.

The relevant facts are simple and can be briefly
stated. Plaintiff served his document request by mail
on July 10, 2003. Pursuant to Fed.R.Civ.P. 34(b)
and Fed.R.Civ.P. 6(e), defendant's response was
due 33 days thereafter, or August 12, 2003.
Defendant did not, however, serve its response until
August 22, 2003. At the conference held on October
2, 2003, defendant could offer no explanation at all
for its failure to serve its response in a timely
manner (*see* Transcript of Proceedings held on
October 2, 2003 at 11). Since there was an
unexcused and unexplained failure to assert
objections in a timely manner, I concluded that all
of defendant's objections were waived.

The law is well settled that a failure to assert
objections to a discovery request in a timely manner
operates as a waiver. As explained in *Krewson v.
City of Quincy,* 120 F.R.D. 6, 7 (D.Mass.1988):
If a party fails to file timely objections to document
requests, such a failure constitutes a waiver of any
objections which a party might have to the requests.
*Slauenwhite v. Bekum Maschinenfabriken, GMBH,*
35 F.R.Serv.2d 975 (D.Mass., 1983) citing *Perry v.
Golub,* 74 F.R.D. 360, 363 (N.D.Ala., 1976) and
cases cited therein, i.e. *United States v. 58.16 Acres
of Land,* 66 F.R.D. 570 (E.D.Ill., 1975); *Davis v.
Romney,* 53 F.R.D. 247 (E.D.Pa., 1971); *American
President Lines v. Hartford Fire Insurance Co.,* 55
F.R.D. 61 (E.D.Pa., 1971). "Any other result
would completely frustrate the time limits
contained in the Federal Rules and give a license to
litigants to ignore the time limits for discovery
without any adverse consequences." *Slauenwhite v.
Bekum Maschinenfabriken, GMBH, supra.*

Additional authorities to the same effect include
*Kolenc v. Bellizzi,* 95 Civ. 4494(LMM)(KNF),
1999 WL 92604 at \*3 (S.D.N.Y. Feb. 22, 1999);
*Techsearch Servs., Inc. v. Gorman,* 97 Civ.

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 2

Not Reported in F.Supp.2d, 2003 WL 22455224 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

7641(JSM)(KNF), 1999 WL 33024 at *2 (S.D.N.Y. Jan. 21, 1999); *Concord Boat Corp. v. Brunswick Corp.,* 169 F.R.D. 44, 48 (S.D.N.Y.1996); *United States v. International Bus. Mach. Corp.,* 70 F.R.D. 700, 701-02 (S.D.N.Y.1976). *See generally Yakus v. United States,* 321 U.S. 414, 444, 64 S.Ct. 660, 88 L.Ed. 834 (1944) ("No procedural principle is more familiar to this court than that a ... right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right before the tribunal having jurisdiction to determine it.").

Given the absence of an valid explanation for defendant's failure to serve its objections in a timely manner, the foregoing authorities teach that a finding of waiver is appropriate. Any other result would ignore the time limits set forth in the Federal Rules of Civil Procedure, contribute further to the delay in resolving cases and effectively transform Article V of the Federal Rules of Civil Procedure from a structure of well-defined rights and obligations to a system of suggested, but non-binding, guidelines.

**\*2** I appreciate that the literal application of the requirements here will cause some hardship to defendants. Nevertheless, the Supreme Court has repeatedly stated that "in the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law," *Mohasco Corp. v. Silver,* 447 U.S. 807, 826, 100 S.Ct. 2486, 65 L.Ed.2d 532 (1980); *accord McNeil v. United States,* 508 U.S. 106, 113, 113 S.Ct. 1980, 124 L.Ed.2d 21 (1993); *Halstrom v. Tillamook County,* 493 U.S. 20, 31, 110 S.Ct. 304, 107 L.Ed.2d 237 (1990), and that "[p]rocedural requirements ... are not to be disregarded by courts out of a vague sympathy for particular litigants." *Baldwin County Welcome Center v. Brown,* 466 U.S. 147, 152, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). In light of these admonitions, a finding of waiver is appropriate.

For all the foregoing reasons, Paragraph 1 of my Order dated October 8, 2003 is adhered to.

S.D.N.Y.,2003.
Eldaghar v. City of New York Dept. of Citywide

Administrative Services
Not Reported in F.Supp.2d, 2003 WL 22455224 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:02cv09151 (Docket) (Nov. 15, 2002)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# EXHIBIT H

# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

### ATTORNEYS AT LAW

#### NEW YORK • CALIFORNIA • NEW JERSEY • LOUISIANA

John P. Coffey
sean@blbglaw.com
212-554-1409

December 12, 2005

**Via Electronic Mail and Facsimile**

David Springer, Esq.
Skadden, Arps, Slate, Meagher & Flom L.L.P.
333 West Wacker Drive
Chicago, Illinois 60606-1285

     Re:   *In re Delphi Corporation, et al. Chapter 11 Case No. 05-44481 (RDD)*

Dear Mr. Springer:

On behalf of the Teachers' Retirement System of Oklahoma, the Public Employees' Retirement System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H. and Stichting Pensioenfonds ABP, the Court appointed lead plaintiffs in the consolidated securities class action entitled *In re Delphi Corp. Securities Litigation,* Master File No. 1:05-CV-2637 (NRB) (collectively, "Lead Plaintiffs"), we write concerning discovery related to Debtors' Motion for an Order under §§ 105 and 363 Authorizing the Debtors to Implement a Key Employee Compensation Program (the "KECP Motion").

First, with regard to Debtors' First Set of Interrogatories and Document Requests to the Securities Class Action Lead Plaintiffs, dated December 5, 2005 (the "Debtors' Discovery Requests"), Lead Plaintiffs intend to produce all non-privileged documents responsive to Debtors' Discovery Requests by your proposed deadline (that is, December 21, 2005). We agree to do so in anticipation of your reciprocal cooperation in producing documents sought by Lead Plaintiffs in our discovery requests served by letter on December 8 ("Lead Plaintiffs' Discovery Requests").

Second, we have not yet received Debtors' written objections to Lead Plaintiffs' Discovery Requests, which, according to the schedule you circulated last week, were due to us on December 10. We would like to schedule a meet and confer to discuss our respective discovery requests and objections as soon as possible. Please let us know your availability for the meet and confer on these document requests. Assuming we get your promised response today or tomorrow, we would be available for a conference call on Thursday afternoon.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

David Springer, Esq.
December 12, 2005
Page 2


      Finally, Lead Plaintiffs presently intend to call John D. Sheehan, Laura Marion, Dan Renick and John Rotko to testify at the January 5, 2006 hearing on the KECP Motion. Please let us know their availability for deposition as soon as possible. Once we have had an opportunity to review your witness list and the documents that Debtors produce in response to Lead Plaintiffs' Discovery Requests, we will be able to provide you with more information regarding any additional witnesses we intend to call at the hearing.

                  Sincerely,

                  John P. Coffey

cc:    Michael Etkin, Esq.
       Brad Beckworth, Esq.
       Stuart Grant, Esq.
       Michael Yarnoff, Esq.

# EXHIBIT I

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

333 WEST WACKER DRIVE

CHICAGO, ILLINOIS  60606-1285
———

(312) 407-0700

Fax: (312) 407-0411

http://www.skadden.com

DIRECT DIAL
312-407-0536
DIRECT FAX
312-407-8524
EMAIL ADDRESS
DSPRINGE@SKADDEN.COM

AFFILIATE OFFICES
BOSTON
HOUSTON
LOS ANGELES
NEW YORK
PALO ALTO
SAN FRANCISCO
WASHINGTON, D.C.
WILMINGTON
———
BEIJING
BRUSSELS
FRANKFURT
HONG KONG
LONDON
MOSCOW
MUNICH
PARIS
SINGAPORE
SYDNEY
TOKYO
TORONTO
VIENNA

December 12, 2005

*By email and first-class mail*

Bradley E. Beckworth, Esq.
Nix Patterson & Roach, LLP
205 Linda Drive
Daingerfield, TX 75638

Re:    The Debtors' Objections to Lead Plaintiffs' Discovery
Requests re KECP Motion

Dear Mr. Beckworth:

The following sets forth the Debtors' objections to Lead Plaintiffs'
Discovery Requests Pursuant to their Objections to Debtors' Motion for Order
Under §§ 105 and 363 Authorizing Debtors to Implement a Key Employee
Compensation Program (the "KECP Motion"), which were received late in the
day on Thursday, December 10, 2005.

1.    The Debtors have identified the five most highly-compensated partici-
pants in the program, and they will provide the titles of the various
recipients by "Band." Beyond that, no further personal identifying
information will be provided because such personal identifying informa-
tion invades the individuals' privacy rights and is not within the scope of
permissible discovery on the KECP Motion.

2.    The objections to request no. 1 are incorporated herein. Moreover, the
Debtors object to providing the information sought in specification no. 2
as an apparent, but improper attempt to obtain discovery of the Debtors
for purposes of *In re Delphi Corp. Securities Litigation*, which action

Bradley E. Beckworth, Esq.
December 12, 2005
Page 2

has been stayed against the Debtors by operation of Section 362(a) of the
Code and which discovery has been stayed generally by operation of the
Private Securities Litigation Reform Act. The matters sought are also
beyond the scope of permissible discovery on the KECP Motion, and the
requests are unduly burdensome, especially in light of the marginal
relevance of the information, at best, to the Motion and the Objections.

3.      The objections to request nos. 1 and 2 are incorporated herein.

4.      Not applicable.

5.      Not applicable.

6.      Responsive information already has been or will, at the appropriate time,
be provided.

7.      Responsive information already has been or will, at the appropriate time,
be provided.

8.      Responsive information already has been or will, at the appropriate time,
be provided.

9.      Responsive information already has been or will, at the appropriate time,
be provided.

10.     As phrased, the request is unduly broad and to that extent beyond the
scope of permissible discovery for purposes of the KECP Motion.
However, subject to the requesting parties' entry of an appropriate
protective order and redaction of personal identifying information,
responsive information for the year 2005 will be provided.

11.     Responsive information already has been or will, at the appropriate time,
be provided.

12.     Responsive information already has been or will, at the appropriate time,
be provided.

Bradley E. Beckworth, Esq.
December 12, 2005
Page 3

13.     Responsive information already has been or will, at the appropriate time, be provided.

14.     Responsive information already has been or will, at the appropriate time, be provided.

15.     The objections and responses to request nos. 1-14 are incorporated herein.

16.     Responsive information already has been or will, at the appropriate time, be provided.

17.     The objections to request nos. 1 and 2 are incorporated herein.

18.     The objections to request nos. 1 and 2 are incorporated herein.

19.     The objections to request nos. 1 and 2 are incorporated herein.

20.     The objections to request nos. 1 and 2 are incorporated herein.

21.     The objections to request nos. 1 and 2 are incorporated herein.

22.     The objections to request nos. 1 and 2 are incorporated herein.

23.     The objections to request nos. 1 and 2 are incorporated herein.

24.     The objections to request nos. 1 and 2 are incorporated herein.

25.     The objections to request nos. 1 and 2 are incorporated herein.

26.     The objections to request nos. 1 and 2 are incorporated herein.

27.     The objections to request nos. 1 and 2 are incorporated herein.

28.     The objections to request nos. 1 and 2 are incorporated herein.

Bradley E. Beckworth, Esq.
December 12, 2005
Page 4


29.    The Debtors hereby incorporate their objections to the discovery requests
submitted to Debtors by each Objector as if the same were set forth fully
herein.

The Debtors reserve the right to object to any purported discovery
requests subsequently served upon the Debtors, including on the grounds that
such requests are untimely and, in light of the scheduled hearing date, oppres-
sive and burdensome.

In light of the Debtors' commitment to produce for deposition their
witnesses in support of the Motion and the burden on the Debtors and Mr.
Sheehan, the Debtors object also to providing their Chief Restructuring Officer,
John Sheehan, for deposition—at least not without a satisfactory explanation by
the requesting party as to the relevance of his testimony and the identification of
areas of potential inquiry. The Debtors also object to providing any witnesses
for deposition before January 2, 2006.

Very truly yours,

/s/ David E. Springer

David E. Springer


545476.02-Chicago S2A

# EXHIBIT J



"Springer, David"
<DSPRINGE@skadden.
com>

12/13/2005 06:28 PM

To: lpeterson@msek.com, landy.ralph@pbgc.gov, rtrust@stblaw.com,
JH@previant.com, lmagarik@kjmlabor.com, tkennedy@kjmlabor.com,
HKolko@msek.com, kziman@stblaw.com, "Fox, Edward M."
<efox@king.com>, metkin@lowenstein.com, bceccotti@cwsny.com,
nganatra@uaw.net, djury@steelworkers-usw.org,
mbane@kelleydrye.com, bmehlsack@gkllaw.com, mrn@previant.com,
rschumacher@kelleydrye.com, msomerstein@kelleydrye.com,
emoser@king.com, "Brad Beckworth" <bbeckworth@nixlawfirm.com>,
sean@bibglaw.com, sgrant@gelaw.com
cc: "MacDonald, Neil" <FMACDONA@skadden.com>, "Campanario, Nick"
<NCAMPANA@skadden.com>
Subject: Delphi --KCEP Revised Discovery Schedule

Dear Counsel,

Attached is a revised discovery schedule on the KCEP Motion, which takes into account the adjournment
of the hearing on the Motion as well as the fact that the Creditors' Commitee has been given until January
9 to file an objection, if any. It comports with the discussions we had concerning the Objectors' desire for
an adjournment at our meet at confer last week

David E. Springer
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive
Suite 2100
Chicago, IL 60606
312/407-0536
312/407-0411 (preferred fax)
312/407-8524 (direct fax)
773/490-5592 (mobile)
dspringe@skadden.com

--------------------------------------------------------------------------
To ensure compliance with Treasury Department regulations, we advise you that, unless
otherwise expressly indicated, any federal tax advice contained in this message was not intended
or written to be used, and cannot be used, for the purpose of (i) avoiding tax-related penalties
under the Internal Revenue Code or applicable state or local tax law provisions or (ii) promoting,
marketing or recommending to another party any tax-related matters addressed herein.

*******************************************************

This e-mail and any attachments thereto, is intended only for use by the addressee(s) named
herein and may contain legally privileged and/or confidential information. If you are not the
intended recipient of this e-mail, you are hereby notified any dissemination, distribution or
copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email
in error please immediately notify me at (212) 735-3000 and permanently delete the original copy
and any copy of any e-mail, and any printout thereof.

*In re Delphi Corp., et al.* – KCEP Motion Discovery Schedule (Revised):

| | |
|---|---|
| 12/15 (Thursday): | Debtors' written responses to all Objectors' Discovery Requests<br>Debtors respond to all remaining discovery |
| 12/23 (Friday): | All Objectors' responses and document productions to Debtors'<br>discovery requests |
| 1/6 (Friday): | Debtors submit testifying witnesses' declarations |
| 1/13 (Friday): | Objectors submit testifying witnesses' declarations |
| 1/16 (Monday): | Final cut-off date for all disclosure of hearing evidence,<br>exhibits (except demonstratives) supplemental declarations,<br>witnesses, etc. |
| 1/17 (Tuesday): | Beginning Tuesday, 1/17/06, Debtors' testifying witnesses will be<br>made available for deposition at SASM&F |
| 1/20 (Friday): | Beginning Friday, 1/20/06, Objectors' testifying witnesses will be<br>made available for deposition (preferably at SASM&F) |
| 1/25 (Wednesday) | Completion of all depositions |
| 1/28 (Thursday) | Exchange of demonstrative exhibits |
| 1/27 (Friday) | Hearing date |

# EXHIBIT K

**EXHIBITS SUBJECT TO PROTECTIVE ORDER**

# EXHIBIT K

**EXHIBIT   SUBJECT TO PROTECTIVE ORDER**