**IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
     In re                        :    Chapter 11
                                                          :
DELPHI CORPORATION et al.,                                :    Case No. 05-44481 (rdd)
                                                          :
             Debtors.    :    (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AFFIDAVIT OF SERVICE

       I, Amber M. Cerveny, being duly sworn according to law, deposes and says that I am employed by Kurtzman Carson Consultants, LLC, court appointed claims and noticing agent for the Debtors in the above-captioned cases.

       On December 16, 2005, I caused to be served, via overnight mail the documents listed in Section 1 on the parties attached hereto as Exhibit A, via electronic notification on the parties attached hereto as Exhibit B and via first class US mail on the parties attached hereto as Exhibit C:

### *Section 1*

**I.**  Notice of Motion for an Order Under 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods Within Which to File and Solicit Acceptances of Plan of Reorganization **(Docket No. 1549) [Attached hereto as Exhibit D]**

**II.**  Motion for an Order Under 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods Within Which to File and Solicit Acceptances of Plan of Reorganization **(Docket No. 1549) [Attached hereto as Exhibit D]**

**III.**  Notice of Motion for Order Under Under 11 U.S.C. §§ 362, 363, 365, 1107, and 1108 Authorizing Renewal of Insurance Coverage and Certain Related Relief **(Docket No. 1559) [Attached hereto as Exhibit E]**

**IV.**  Motion for Order Under 11 U.S.C. §§ 362, 363, 365, 1107, and 1108 Authorizing Renewal of Insurance Coverage and Certain Related Relief **(Docket No. 1559) [Attached hereto as Exhibit E]**

**V.**  Notice of Motion for Order Under 11 U.S.C. §§ 363, 1107, and 1108 Approving Procedures to Enter Into or Renew Real Property Leases Without Further Court Approval **(Docket No. 1555) [Attached hereto as Exhibit F]**

**VI.**  Motion for Order Under 11 U.S.C. §§ 363, 1107, and 1108 Approving Procedures to Enter Into or Renew Real Property Leases Without Further Court Approval **(Docket No. 1555) [Attached hereto as Exhibit F]**

**VII.** Notice of Motion for Order Under 11 U.S.C. §§ 365(a) and 554 and Fed.R.Bankr.P. 6006 Approving Procedures for Rejecting Unexpired Real Property Leases and Authorizing Debtors to Abandon Certain Furniture, Fixtures, and Equipment **(Docket No. 1551) [Attached hereto as Exhibit G]**

**VIII.** Motion for Order Under 11 U.S.C. §§ 365(a) and 554 and Fed.R.Bankr.P. 6006 Approving Procedures for Rejecting Unexpired Real Property Leases and Authorizing Debtors to Abandon Certain Furniture, Fixtures, and Equipment **(Docket No. 1551) [Attached hereto as Exhibit G]**

**IX.** Notice of Motion for Order Under 11 U.S.C. § 365(a) Authorizing Debtors to Assume Executory Contract with Pillarhouse (U.S.A.), Inc. **(Docket No. 1553) [Attached hereto as Exhibit H]**

**X.** Motion for Order Under 11 U.S.C. § 365(a) Authorizing Debtors to Assume Executory Contract with Pillarhouse (U.S.A.), Inc**. (Docket No. 1553) [Attached hereto as Exhibit H]**

**XI.** Notice of Motion to Extend Time Period Within Which Debtors May Remove Actions Under 28 U.S.C. § 1452 and Fed.R.Bankr.P. 9006 and 9027 **(Docket No. 1554) [Attached hereto as Exhibit I]**

**XII.** Motion to Extend Time Period Within Which Debtors May Remove Actions Under 28 U.S.C. § 1452 and Fed.R.Bankr.P. 9006 and 9027 **(Docket No. 1554) [Attached hereto as Exhibit I]**

Dated:  December 27, 2005

_/s/ Amber M. Cerveny_
Amber M. Cerveny

Sworn to and subscribed before
me on December 27, 2005

_/s/ Evan Gershbein_
Notary Public

My Commission Expires:      _1/19/07_

# EXHIBIT A

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Capital Research and Management Company | Michelle Robson | 11100 Santa Monica Blvd | 15th Floor | Los Angeles | CA | 90025 | 310-996-6140 | 310-996-6091 | mlfr@capgroup.com | Creditor Committee Member |
| Cohen Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | b.simon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel for Flextronics International USA, Inc. |
| Davis Polk & Wardwell | Donald Bernstein | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 | 212-450-3092 | donald.bernstein@dpw.com | Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2670 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 6328 Monarch Park Place | | Niwot | CO | 80503 | 303-652-4853 | 303-652-4716 | cshiff@flextronics.com | Counsel for Flextronics International |
| Flextronics International | Terry Zale | 6328 Monarch Park Place | | Niwot | CO | 80503 | 303-652-4853 | 303-652-4716 | terryzale@flextronics.com | Counsel for Flextronics International |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | richard.chambers@freescale.com | Creditor Committee Member |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel for Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel for Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department, Mario Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-298-2015 | 212-298-2016 | | IRS |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| IUE-CWA | Henry Reichard | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | hreichardiuecwa@aol.com | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.fmaher@chase.com richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | James Le | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-751-1511 | 310-751-1561 | jle@kccllc.com | Noticing and Claims Agent; |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | UCC Professional |
| Law Debenture Trust of New York | Patrick J. Healy | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Daniel R. Fisher | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel for Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel for Recticel North America, Inc. |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Mesirow Financial | Melissa Knolls | 321 N. Clark St. | 13th Floor | Chicago | IL | 60601 | 800-453-0600 | 312-644-8927 | mknoll@mesirowfinancial.com | UCC Professional |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel for Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | | New York Attorney General's Office |
| O'Melveny & Meyer LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Meyer LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel for Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel for the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel for Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel for Murata Electroncs North |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Prepetition Administrative Agent |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel for Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| United States Trustee | Alicia M. Leonard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | United States Trustee |
| United States Trustee | Deirdre A. Martini | 33 Whitehall Street | Suite 2100 | New York | NY | 10004 | 212-510-0500 | 212-668-2256 | deirdre.martini@usdoj.gov | United States Trustee |
| **Warner Stevens, L.L.P.** | **Michael D. Warner** | **1700 City Center Tower II** | **301 Commerce Street** | **Fort Worth** | **TX** | **76102** | **817-810-5250** | **817-810-5255** | | **Proposed Conflicts Counsel for the Official Committee of Unsecured Creditors** |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeffrey.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

12/27/2005 11:19 AM
Master 051216

# **<u>EXHIBIT B</u>**

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel for Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel for Jiffy-Tite Co., Inc. |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| King & Spalding, LLP | Alexandra B. Feldman | 1185 Avenue of the Americas | | New York | NY | 10036 | 212-556-2100 | 212-556-2222 | afeldman@kslaw.com | Counsel for Martinrea International, Inc. |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel for ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel for Mays Chemical Company |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel for Blue Cross Blue Shield of South Carolina |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel for Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | 202-637-5677 | 202-637-5910 | amoog@hhlaw.com | Counsel for Umicore Autocat Canada Corp. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadranglegroup.com | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | 310-203-9393 | 310-203-8110 | aordubegian@weineisen.com | Counsel for Orbotech, Inc. |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel for Hewlett-Packard Financial Services Company |
| Pryor & Mandelup, LLP | A. Scott Mandelup, Kenneth A. Reynolds | 675 Old Country Road | | Westbury | NY | 11590 | 516-997-0999 | 516-333-7333 | asm@pryormandelup.com kar@pryormandelup.com | Counsel for National Molding Corporation; Security Plastics Division/NMC LLC |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-8898 | 917-368-8898 | athau@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel for Cameron County, Brownsville ISD |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representative for Electronic Data Systems Corporation |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | 860-251-5811 | 860-251-5218 | bankruptcy@goodwin.com | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co., |
| **Michael D. Warner** | **Warner Stevens, L.L.P.** | **301 Commerce Street** | **Suite 1700** | **Fort Worth** | **TX** | **76102** | **817-810-5250** | **817-810-5255** | **bankruptcy@warnerstevens.com** | **Counsel for Electronic Data Systems Corp. and EDS Information Services, L.L.C.** |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel for Schunk Graphite Technology |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 17

12/27/2005 11:22 AM
2002 051215

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employees's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel for Southwire Company |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel for Sumco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | bmcdonough@teamtogut.com | Conflicts counsel to Debtors |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel for International Brotheroof of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, (District 10 |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel for Daewoo International (America) Corp. |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | 512-370-2800 | 512-370-2850 | bspears@winstead.com | Counsel for National Instruments Corporation |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel for STMicroelectronics, Inc. |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel for SKF USA, Inc. |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation |
| **Satterlee Stephens Burke & Burke LLP** | **Christopher R. Belmonte** | **230 Park Avenue** | | **New York** | **NY** | **10169** | **212-818-9200** | **212-818-9606** | cbelmonte@ssbb.com | **Counsel to Moody's Investors Service** |
| Pepe & Hazard LLP | Charles J. Filardi, Jr., Esq. | 30 Jelliff Lane | | Southport | CT | 06890 | 203-319-4042 | 203-319-4034 | cfilardi@pepehazard.com | Federal Express Corporation |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel for Silver Point Capital, L.P. |
| Simpson Thacher & Bartlett LLP | Kenneth S. Ziman, Esq. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | cfox@stblaw.com | Counsel to JPMorgan Chase Bank, N.A. |
| Simpson Thacher & Bartlett LLP | William T. Russell, Jr., Esq. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | cfox@stblaw.com | Counsel to JPMorgan Chase Bank, N.A. |
| **ATS Automation Tooling Systems Inc.** | **Carl Galloway** | **250 Royal Oak Road** | | **Cambridge** | **Ontario** | **N3H 4R6** | **519-653-4483** | **519-650-6520** | cgalloway@atsautomation.com | **Company** |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel for Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel for ARC Automotive, Inc. |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | 213-312-2000 | 213-312-2001 | cnorgaard@ropers.com | Counsel for Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| **Arent Fox PLLC** | **Mitchell D. Cohen** | **1675 Broadway** | | **New York** | **NY** | **10019** | **212-484-3900** | **212-484-3990** | Cohen.Mitchell@arentfox.com | **Counsel for Pullman Bank and Trust Company** |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | 305-349-2300 | 305-349-2310 | crieders@gjb-law.com | Counsel for Ryder Integrated Logistics, Inc. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; VJ Technologies, Inc. and V.J. ElectroniX, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 17

12/27/2005 11:22 AM
2002 051215

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Sachnoff & Weaver, Ltd | Charles S. Schulman, Arlene N. Gelman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | 312-207-1000 | 312-207-6400 | cschulman@sachnoff.com agelman@sachnoff.com | Counsel for Infineon Technologies North America Corporation |
| Hodgson Russ LLP | Cheryl R. Storie | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | 716-848-1275 | 716-849-0349 | cstorie@hodgsonruss.com | Counsel for Hexcel Corporation |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel for Diemolding Corporation |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3157 | 212-373-2053 | cweidler@paulweiss.com | Counsel for Ambrake Corporation; Akebono Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel for Dallas County and Tarrant County |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | 610-230-3064 | 310-687-1052 | david.boyle@airgas.com | Counsel for Airgas, Inc. |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Bolhouse, Vander Hulst, Risko & Baar P.C. | David S. Lefere | 3996 Chicago Drive SW | | Grandville | MI | 49418 | 616-531-7711 | 616-531-7757 | davidl@bolhouselaw.com | Counsel for Eclipse Tool and Die, Inc. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel for Fujitsu Ten Corporation of America |
| Gibbons, Del Deo, Dolan, Griffinger & Vecchione | David N. Crapo | One Riverfront Plaza | | Newark | NJ | 07102-5497 | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel for Epcos, Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel for Noma Company and General Chemical Performance Products LLC |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel for Doshi Prettl International, LLC |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel for WL. Ross & Co., LLC |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center | Suite 807 | Pittsburgh | PA | 15222 | 412-562-2549 | 412-562-2429 | djury@steelworkers-usw.org | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-6065 | 212-697-1559 | dkarp@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co. |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel for Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Thelen Reid & Priest LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel for American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| **Brown & Connery, LLP** | **Donald K. Ludman** | **6 North Broad Street** | | **Woodbury** | **NJ** | **08096** | **856-812-8900** | **856-853-9933** | dludman@brownconnery.com | **Counsel for SAP America, Inc.** |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 17

12/27/2005 11:22 AM
2002 051215

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Ambrake Corporation | Ronald L. Jones | 300 Ring Road | | Elizabethtown | KY | 42701 | 270-765-0208 | 270-234-2395 | Does not wish to receive electronic mailings | Representative for Ambrake Corporation |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel for SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | 908-722-0700 | 908-722-0755 | eabdelmasieh@nmmlaw.com | Counsel for Rotor Clip Company, Inc. |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel for Capital Research and Management Company |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel for Umicore Autocat Canada Corp. |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel for GW Plastics, Inc. |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | Earle I. Erman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | 248-827-4100 | 248-827-4106 | eerman@ermanteicher.com | Counsel for Doshi Prettl International, LLC |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| McGuirewoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | 804-775-1178 | 804-698-2186 | egunn@mcguirewoods.com | Counsel for Siemens Logistics Assembly Systems, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel for Parlex Corporation |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel for General Electric Capital Corporation, Stategic Asset Finance. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel for CoorsTek, Inc.; Corus, L.P. |
| **Conlin, McKenney & Philbrick, P.C.** | **Bruce N. Elliott** | **350 South Main Street** | **Suite 400** | **Ann Arbor** | **MI** | **48104** | **734-971-9000** | **734-971-9001** | Elliott@cmplaw.com | **Counsel to Brazeway, Inc.** |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | 415-393-9887 | emarcks@ssd.com | Counsel for Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel for Noma Company and General Chemical Performance Products LLC |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel for Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Group |
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |
| Blank Rome LLP | Bonnie Glantz Fatell | Chase Manhattan Centre | 1201 Market Street, Suite 800 | Wilmington | DE | 19801 | 302-425-6423 | 302-428-5110 | fatell@blankrome.com | Counsel for Special Devices, Inc. |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | 513-381-2838 | | ferrell@taftlaw.com | Counsel for Wren Industries, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | 608-848-6350 | 608-848-6357 | ftrikkers@rikkerslaw.com | Counsel for Southwest Metal Finishing, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel for Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | 212-682-4940 | 212-682-4942 | gdiconza@dlawpc.com | Counsel to Tyz-All Plastics, Inc. |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel for Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 17

12/27/2005 11:22 AM
2002 051215

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | 312-346-7500 | 312-580-2201 | ggreen@fagelhaber.com | Counsel for Aluminum International, Inc. |
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | 302-622-7000 | 302-622-7100 | gjarvis@gelaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Hewlett-Packard Company | Glen Dumont | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | 908-898-4750 | 908-898-4137 | glen.dumont@hp.com | Counsel for Hewlett-Packard Financial Services Company |
| **Weltman, Weinberg & Reis Co., L.P.A.** | **Geoffrey J. Peters** | **175 South Third Street** | **Suite 900** | **Columbus** | **OH** | **43215** | **614-857-4326** | **614-222-2193** | gpeters@weltman.com | **Counsel to Seven Seventeen Credit Union** |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | 313-496-8452 | 313-496-7997 | greeni@millercanfield.com | Counsel for Wells Operating Partnership, LP |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Kirkland & Ellis LLP | Geoffrey A. Richards | 200 East Randolph Drive | | Chicago | IL | 60601 | 312-861-2000 | 312-861-2200 | grichards@kirkland.com | Counsel for Lunt Mannufacturing Company |
| King & Spalding, LLP | George B. South, III | 1185 Avenue of the Americas | | New York | NY | 10036 | 212-556-2100 | 212-556-2222 | gsouth@kslaw.com | Counsel for Martinrea International, Inc. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel for Robert Bosch Corporation |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel for American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| **Arent Fox PLLC** | **Robert M. Hirsh** | **1675 Broadway** | | **New York** | **NY** | **10019** | **212-484-3900** | **212-484-3990** | Hirsh.Robert@arentfox.com | **Counsel for Pullman Bank and Trust Company** |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel for McAlpin Industries, Inc. |
| Gazes LLC | Ian J. Gazes | 32 Avenue of the Americas | | New York | NY | 10013 | 212-765-9000 | 212-765-9675 | ian@gazesllc.com | Counsel for Setech, Inc. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel for SKF USA, Inc. |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel for Panasonic Autommotive Systems Company of America |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 17

12/27/2005 11:22 AM
2002 051215

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel for Molex Connector Corp |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Linear Technology Corporation | John England, Esq. | 1630 McCarthy Blvd. | | Milpitas | CA | 95035-7417 | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel for TT Electronics, Plc |
| Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | 414-271-4500 | 414-271-6308 | jh@previant.com | **Counsel for International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10** |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel for Semiconductor Components Industries, Inc. |
| Bose McKinney & Evans LLP | Jeannette Eisan Hinshaw | 135 N. Pennslyvania Street | Suite 2700 | Indianapolis | IN | 46204 | 317-684-5296 | 317-684-5173 | jhinshaw@boselaw.com | Counsel for Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | 330-670-3004 | 330-670-3020 | jlapinsky@republicengineered.com | Counsel for Republic Engineered Products, Inc. |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel for FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel for Steel Technologies, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 17

12/27/2005 11:22 AM
2002 051215

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | 212-806-5400 | 212-806-6006 | jminias@stroock.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel for Venture Plastics |
| Morrison Cohen LLP | Joseph T. Moldovan Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | 212-735-8603 212-735-8757 | 917-522-3103 917-522-3157 | jmoldovan@morrisoncohen.com mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| McDermott Will & Emery LLP | James M. Sullivan | 50 Rockefeller Plaza | | New York | NY | 10020 | 212-547-5400 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel for Kuss Corporation |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel for CSX Transportation, Inc. |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 300 | Dallas | TX | 75201 | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel for Victory Packaging |
| Mitsubishi Electric & Electronics USA, Inc. | John E. Cipriano | 500 Corporate Woods Parkway | | Vernon Hills | IL | 60061 | 847-478-2383 | 847-478-2281 | john.cipriano@meus.mea.com | Assistant General Counsel for Mitsubishi Electric & Electronics USA, Inc. |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Priority Health |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel for The Procter & Gamble Company |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | 212-906-1200 | 212-751-4864 | john.weiss@lw.com | UCC Professional |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | 212-701-3000 | 732-205-6777 | jonathan.greenberg@engelhard.com | Counsel to Engelhard Corporation |
| King & Spalding, LLP | James A. Pardo, Jr. | 191 Peachtree Street | Suite 4900 | Atlanta | GA | 30303-1763 | 404-572-4600 | 404-572-5149 | jpardo@kslaw.com | Counsel for Mitsubishi Electric Automobile America, Inc. |
| Swidler Berlin LLP | Jonathan P. Guy | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | 202-424-7500 | 202-424-7645 | jpguy@swidlaw.com | Counsel for Westwood Associates, Inc.; Sanders Lead Co. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | 609-3922100 | 609-392-7956 | jposta@sternslaw.com | Counsel for Doosan Infracore America Corp. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | 419-255-9121 | jhunter@hunterschank.com | Counsel for ZF Group North America Operations, Inc. |
| McDonald Hopkins Co., LPA | Jean R. Robertson, Esq. | 600 Superior Avenue, East | Suite 2100 | Cleveland | OH | 44114 | 216-348-5400 | 216-348-5474 | jrobertson@mcdonaldhopkins.com | Counsel to Brush Engineered materials |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel for Microsoft Corporation; Microsoft Licensing, GP |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale | 330 West 42nd Street | | New York | NY | 10036 | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com | Counsel for International Union, United Automobile, Areospace and Agriculture Implement Works of America (UAW) |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | 860-725-6200 | 860-278-3802 | jwilson@tylercooper.com | Counsel for Barnes Group, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 7 of 17

12/27/2005 11:22 AM
2002 051215

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel for Hewlett-Packard Financial Services Company |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel for Clarion Corporation of America |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel for Solution Recovery Services |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | 212-806-5400 | 212-806-6006 | khansen@stroock.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | Kimberly J. Robinson | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | 312-629-5170 | 312-984-3150 | kim.robinson@bfkpn.com | Counsel for Motion Industries, Inc. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc. |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel for Airgas, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel for Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | 248-576-5741 | | krk4@daimlerchrysler.com | Counsel for DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel for Cerberus Capital Management, L.P. |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K. Street, N.W. | | Washington | DC | 20005-4026 | 202-326-4020 | 202-326-4112 | landy.ralph@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel for Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel for Milwaukee Investment Company |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel for TT Electronics, Plc |
| **Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP** | **Lei Lei Wang Ekvall** | **650 Town Center Drive** | **Suite 950** | **Costa Mesa** | **CA** | **92626** | **714-966-1000** | **714-966-1002** | lekvall@wgllp.com | **Counsel for Toshiba America Electronic Components, Inc.** |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel for National City Commercial Capital |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 17

12/27/2005 11:22 AM
2002 051215

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | 201-930-7483 | | lloyd.sarakin@am.sony.com | Counsel to Sony Electronics, Inc. |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel for Aluminum International, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | 336-574-8058 | 336-574-4528 | lpinto@wcsr.com | Counsel for Armacell |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | 212-692-8251 | 212-867-6395 | lwalzer@angelogordon.com | |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel for Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel for Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel for MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | 7th Floor | Costa Mesa | CA | 92626-7122 | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel for Clarion Corporation of America |
| Bernstein Litowitz Berger & Grossman | Mark D. Debrowski | 1285 Avenue of the Americas | | New York | NY | 10019 | 212-554-1492 | 2125541444 | markd@bltglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | 212-808-7897 | mbane@kelleydrye.com | Counsel for the Pension Benefit Guaranty Corporation |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel for  ITW Mortgage Investments IV, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 17

12/27/2005 11:22 AM
2002 051215

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Morris, Nichols, Arsht and Tunnell | Michael G. Busenkell | PO Box 1347 | | Wilmington | DE | 19899-1347 | 302-658-9200 | 302-658-3989 | mbusenkell@mnat.com | Counsel for Chicago Miniature Optoelectronic Technologies, Inc. |
| King & Spalding, LLP | Michelle Carter | 191 Peachtree Street | Suite 4900 | Atlanta | GA | 30303-1763 | 404-572-4600 | 404-572-5149 | mcarter@kslaw.com | Counsel for Mitsubishi Electric Automobile America, Inc. |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel for Compuware Corporation |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | 513-621-6464 | 513-651-3836 | mdebbeler@graydon.com | Counsel for Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel for National Instruments Corporation |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel for Kilroy Realty, L.P. |
| Otterbourg, Steindler, Houston & Rosen, P.C. | Melissa A. Hager | 230 Park Avenue | | New York | NY | 10169 | 212-661-9100 | 212-682-6104 | mhager@oshr.com | Counsel for Sharp Electronics Corporation |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel to Mercedes-Benz U.S. International, Inc. |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | 212-765-2000 | 212-595-5955 | michael.cook@srz.com | Counsel for Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | 203-862-8200 (230) 862-8231 | 203-629-1977 203-629-1977 | mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Michael L. Schein | 666 Third Avenue | | New York | NY | 10017 | 212-935-3000 | 212-983-3115 | mlschein@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc.; Conceria Pasubio |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel for RF Monolithics, Inc. |
| White & Case LLP | Margarita Mesones-Mori | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | 305-371-2700 | 305-358-5744 | mmesonesmori@whitecase.com | Counsel for Appaloosa Management, LP |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | 216-586-3939 | 216-579-0212 | mharner@jonesday.com | Counsel for WL. Ross & Co., LLC |
| Blank Rome LLP | Marc E. Richards | The Chrylser Building | 405 Lexington Avenue | New York | NY | 10174 | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel for DENSO International America, Inc. |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel for International Brotherood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel for ICX Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 17

12/27/2005 11:22 AM
2002 051215

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | 816-842-8600 | 816-691-3495 | mshaiken@stinsonhceck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | 212-808-7800 | 212-808-7897 | msomerstein@kelleydrye.com | Counsel for the Pension Benefit Guaranty Corporation |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel for Stanley Electric Sales of America, Inc. |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | 313-496-1200 | 313-496-1300 | murph@berrymoorman.com | Counsel for Kamax L.P.; Optrex America, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&Q Plastic Products, Inc. |
| Swidler Berlin LLP | Matthew W. Cheney | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | 202-424-7500 | 202-424-7645 | mwcheney@swidlaw.com | Counsel for Westwood Associates, Inc.; Sanders Lead Co. |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel for Metal Surfaces, Inc. |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel for Teachers Retirement System of America; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiff Hardin LLP | Michael Yetnikoff | 623 Fifth Avenue | 28th Floor | New York | NY | 10022 | 212-753-5000 | 212-753-5044 | myetnikoff@schiffhardin.com | Counsel for  Means Industries |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel for Hitachi Chemical (Singapore) Pte, Ltd. |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | 81-3-3286-3919 | niizeki.tetsuhiro@furukawa.co.jp | Legal Department of The Furukawa Electric Co., Ltd. |
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | 607-255-5124 | 607-254-3556 | nlph4@cornell.edu | Paralegal/Counsel for Cornell University |
| Gazes LLC | Eric Wainer | 32 Avenue of the Americas | Suite 1800 | New York | NY | 10013 | 212-765-9000 | 212-765-9675 | office@gazesllc.com | Counsel to Setech, Inc. |
| WL Ross & Co., LLC | Oscar Iglesias | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | 212-826-1100 | 212-317-4893 | oiglesias@wlross.com | Counsel for WL. Ross & Co., LLC |
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel for Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup.com | Counsel to Quadrangle Group LLC |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel for Trutron Corporation |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| **Satterlee Stephens Burke & Burke LLP** | **Pamela A. Bosswick** | **230 Park Avenue** | | **New York** | **NY** | **10169** | **212-818-9200** | **212-818-9606** | pbosswick@ssbb.com | **Counsel to Moody's Investors Service** |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel for Wamco, Inc. |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel for Toyota Tsusho America, Inc. |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 17

12/27/2005 11:22 AM
2002 051215

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel for Canon U.S.A., Inc. |
| Pitney Hardin LLP | Ronald S. Beacher | 7 Times Square | | New York | NY | 10036 | 212-297-5800 | 212-682-3485 | rbeacher@pitneyhardin.com | Counsel for IBJTC Business Credit Corporation |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Morris, Nichols, Arsht and Tunnell | Robert J. Dehney | PO Box 1347 | | Wilmington | DE | 19899-1347 | 302-658-9200 | 302-658-3989 | rdehney@mnat.com | Counsel for Chicago Miniature Optoelectronnic Technologies, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk, Esq. | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Swidler Berlin LLP | Roger Frankel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | 202-424-7500 | 202-424-7645 | rfrankel@swidlaw.com | Counsel for Sanders Lead Co. |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel for Capital Research and Management Company |
| Sotiroff & Abramczyk, P.C. | Robert M. Goldi | 30400 Telegraph Road | Suite 444 | Bingham Farms | MI | 48025 | 248-642-6000 | 248-642-9001 | rgoldi@sotablaw.com | Counsel for  Michigan Heritage Bank; MHB Leasing, Inc. |
| **Clark Hill PLLC** | **Robert D. Gordon** | **500 Woodward Avenue** | **Suite 3500** | **Detroit** | **MI** | **48226-3435** | **313-965-8572** | **313-965-8252** | rgordon@clarkhill.com | **Counsel for ATS Automation Tooling Systems Inc.** |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel for International Brotherod of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 11 |
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel for STMicroelectronics, Inc. |
| Swidler Berlin LLP | Richard H. Wyron | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | 202-424-7737 | 202-424-7645 | rhwyron@swidlaw.com | Counsel for Westwood Associates, Inc. |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel for MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel for Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel for Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | 614-464-6422 | 614-719-8676 | rjsidman@vssp.com | Counsel for |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel for Excel Global Logistics, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 12 of 17

12/27/2005 11:22 AM
2002 051215

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | 313-393-7592 | 313-393-7579 | rmcdowell@bodmanllp.com | Counsel for Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Pitney Hardin LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | 973-966-6300 | 973-966-1015 | rmeth@pitneyhardin.com | Counsel for Marshall E. Campbell Company |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel for MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel for SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC and Tenneco Inc. |
| Curtin & Heefner, LLP | Robert  Szwajkos | 250 N. Pennslyvania Avenue | | Morrisville | PA | 19067 | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel for SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel for Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel for Gulf Coast Bank & Trust Company |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | 212-825-9457 | 212-825-9414 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 4000 Fountain Place | 1445 Ross Avenue | Dallas | RX | 75202-2790 | 214-855-7590 214-855-7561 214-855-7587 | 214-978-4374 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com rusadi@cahill.com | Counsel for Texas Instruments Incorporated |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | 212-701-3000 | 212-269-5420 | | Counsel to Engelhard Corporation |
| Honigman, Miller, Schwartz and Cohn, LLP | Robert B. Weiss, Frank L. Gorman | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com fgorman@honigman.com | Counsel for General Motors Corporation |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel for XM Satellite Radio Inc. |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | 616-831-1748 616-831-1726 | 616-988-1748 616-988-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Nathan, Neuman & Nathan, P.C. | Susanna C. Brennan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | 248-351-0099 | 248-351-0487 | sbrennan@nathanneuman.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel for Cerberus Capital Management, L.P.; AT&T Corporation |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel for Oracle USA, Inc.; Oracle Credit Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 17

12/27/2005 11:22 AM
2002 051215

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel for Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Daniels & Kaplan, P.C. | Jay Selanders | 2405 Grand Boulevard | Suite 900 | Kansas City | MO | 64108-2519 | 816-221-3086 | 816-221-3006 | selanders@danielsandkaplan.com | Counsel for DaimlerChrysler Corporation; DaimlerChrylser Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel for Semiconductor Components Industries, Inc. |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | Carnegie Hall Tower | 152 West 57th Street, 35th Street | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel to Hexcel Corporation |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | 248-352-4700 | 248-352-4488 | shapiro@steinbergshapiro.com | Counsel for Bing Metals Group, Inc.; Central Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel for Hewlett-Packard Financial Services Company |
| Otterbourg, Steindler, Houston & Rosen, P.C. | Scott L. Hazan | 230 Park Avenue | | New York | NY | 10169 | 212-661-9100 | 212-682-6104 | shazan@oshr.com | Counsel for Sharp Electronics Corporation |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel for RF Monolithics, Inc. |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel for WL. Ross & Co., LLC |
| Kieselstein Lawfirm PLLC | Steve Kieselstein | 43 British American Boulevard | | Latham | NY | 12110 | 518-785-7800 | 518-785-7851 | sk@kieselaw.com | Counsel to NEC Electronics America, Inc. |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel for Toyota Tsusho America, Inc. |
| Lambert. Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | 989-893-3518 | | smcook@lambertleser.com | Counsel for Linamar Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 17

12/27/2005 11:22 AM
2002 051215

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel for Metal Surfaces, Inc. |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| Krugliak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel to for Millwood, Inc. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 212-696-6065 | 212-697-1559 | sreisman@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Phillips Nizer LLP | Sandra A. Riemer, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| McDermott Will & Emery LLP | Stephen M. Selbst | 50 Rockefeller Plaza | | New York | NY | 10020 | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel for National Semiconductor Corporation |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Ajamie LLP | Thomas A. Ajamie | 711 Louisiana | Suite 2150 | Houston | TX | 77002 | 713-860-1600 | 713-860-1699 | tajamie@ajamie.com | Counsel for SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel for International Brotherod of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel for Pillarhouse (U.S.A.) Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to Veritas Software Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 17

12/27/2005 11:22 AM
2002 051215

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | 212-358-1500 | 212-358-0207 | tkennedy@kimlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel for Nova Chemicals, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | 419-255-4300 | 419-255-9121 | tomschank@hunterschank.com | Counsel for ZF Group North America Operations, Inc. |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel for AT&T Corporation |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | 937-223-8177 | 937-223-6705 | wachstein@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | 502-681-0448 | 502-779-8274 | wbeard@stites.com | Counsel to WAKO Electronics (USA), Inc. and Ambrake Corporation |
| Barnes & Thornburg LLP | Michael K. McCrory Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com michael.mccrory@btlaw.com | Counsel for Gibbs Die Casting Corporation |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel for  le Belier/LBQ Foundry S.A. de C.V. |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel for Industrial Ceramics Corporation |
| Morgan, Lewis & Bockius LLP | William C. Heuer, Esq. | 101 Park Avenue | | New York | NY | 10178-0060 | 212-309-6000 | 212-309-6001 | wheuer@morganlewis.com | Counsel to Sumitomo Corporation |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | William J. Barrett | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | 312-629-5170 | 312-984-3150 | william.barrett@bfkpn.com | Counsel for Motion Industries, Inc. |
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | 312-258-5500 | 312-258-5600 | wkohn@schiffhardin.com | Counsel for  Means Industries |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | 716-856-5500 | 716-856-5510 | wsavino@damonmorey.com | Counsel for Relco, Inc.; The Durham Companies, Inc. |
| Ajamie LLP | Wallace A. Showman | 1350 Avenue of the Americas | 29th Floor | New York | NY | 10019 | 212-246-6820 | 212-581-8958 | wshowman@ajamie.com | Counsel for SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | 214-659-4400 | 214-659-4401 | | Counsel for ITW Mortgage Investments IV, Inc. |
| **Calinoff & Katz, LLp** | **Dorothy H. Marinis-Riggio** | **140 East 45th Street** | **17th Floor** | **New York** | **NY** | **10017** | **212-826-8800** | **212-644-5123** | | **Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc.** |
| Frank D. Jones | | 158 New York Circle Cr. | | Whitesburg | KY | 41858-9122 | | | | |
| HAL/ERC-Legal | Tillie Lim, Esq. | 50 Prospect Avenue | | Tarrytown | NY | 10591 | | | | Counsel to Hitachi Automotive Products (USA), Inc. |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | 212-725-7338 | 212-244-6219 | | Counsel for Baker Hughes Incorporated; Baker Petrolite Corporation |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | 303-957-4254 | 303-957-2098 | | Representative for Madison Capital Management |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 17

12/27/2005 11:22 AM
2002 051215

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| **Mayer, Brown, Rowe & Maw LLP** | **Raniero D'Aversa, Jr.** | **1675 Broadway** | | **New York** | **NY** | **10019** | **212-262-1910** | **212-506-2500** | | **Counsel for Bank of America, N.A.** |
| **Mayer, Brown, Rowe & Maw LLP** | **Jeffrey G. Tougas** | **1675 Broadway** | | **New York** | **NY** | **10019** | **212-262-1910** | **212-506-2500** | | **Counsel for Bank of America, N.A.** |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | 212-609-6800 | 212-609-6921 | | Counsel to Ward Products, LLC |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | 301-699-5800 | | | Counsel for Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | 301-699-5800 | | | Counsel for Prince George County, Maryland |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | 313-456-0140 | | | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raternink | PO Box 30736 | | Lansing | MI | 48909-7717 | 517-373-1820 | 517-373-2129 | | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | 517-373-1820 | 517-373-2129 | | Attorney General for Worker's Compensation Agency |
| **Miles & Stockbridge, P.C.** | **Thomas D. Renda** | **10 Light Street** | | **Baltimore** | **MD** | **21202** | **410-385-3418** | **410-385-3700** | | **Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc.** |
| **Miles & Stockbridge, P.C.** | **Kerry Hopkins** | **10 Light Street** | | **Baltimore** | **MD** | **21202** | **410-385-3418** | **410-385-3700** | | **Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc.** |
| Noma Company and General Chemical Performance Products LLC | James Imbriaco | 90 East Halsey Road | | Parsippanny | NJ | 07054 | 973-884-6952 | 973-515-3244 | | |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | 478-742-8706 | 478-746-4488 | | Office of the Chapter 13 Trustee |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | 313-456-0140 | | | Assistant Attorney General for State of Michigan, Department of Treasury |
| Schulte Roth & Sabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | 212-756-2000 | 212-595-5955 | | Counsel for D.C. Capital Partners, L.P. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | 212-768-6700 | 212-768-6800 | | Counsel for Molex, Inc. and INA USA, Inc. |
| Sonnenschein Nath & Rosenthal LLP | Jo Christine Reed | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | 212-768-6700 | 212-768-6800 | | Counsel for Molex, Inc. and INA USA, Inc. |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | 312-876-8000 | 312-876-7934 | | Counsel for Molex, Inc. and INA USA, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 17 of 17

12/27/2005 11:22 AM
2002 051215

# **<u>EXHIBIT C</u>**

2002 Service List
US Mail

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Akebono Corporation (North America) | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | | 248-489-7406 | 866-609-0888 | aswiech@akebono-usa.com | Vice President of Administration for Akebono Corporation |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | | Counsel for ITW Mortgage Investments IV, Inc. |
| **April Burch** | **Miami-Dade County, FL** | **140 West Flagler Street** | **Suite 1403** | **Miami** | **FL** | **33130** | | **305-375-5314** | **305-375-1142** | **aburch@miamidade.gove** | **Paralegal Collection Specialist for Miami-Dade County** |
| Arnall Golden Gregory LLP | Heath J. Vicente | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8682 | 404-8738683 heath.vicente@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Bernstein Litowitz Berger & Grossman | Eileen McNerney | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1485 | 212-554-1444 emcnerney@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| **Calinoff & Katz, LLp** | **Dorothy H. Marinis-Riggio** | **140 East 45th Street** | **17th Floor** | **New York** | **NY** | **10017** | | **212-826-8800** | **212-644-5123** | | **Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunin Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc.** |
| Frank D. Jones | | 158 New York Circle Cr. | | Whitesburg | KY | 41858-9122 | | | | | |
| **Gary Ettelman** | **Ettelman & Hochheiser, P.C.** | **c/o Pelham Tennis** | **77 Main Street** | **New Rochelle** | **NY** | **10801** | | **516-227-6300** | **516-227-6307** | **gettleman@e-hlaw.com** | **Counsel for Jon Bathis** |
| HAL/ERC-Legal | Tillie Lim, Esq. | 50 Prospect Avenue | | Tarrytown | NY | 10591 | | | | | Counsel to Hitachi Automotive Products (USA), Inc. |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | | Counsel for Baker Hughes Incorporated; Baker Petrolite Corporation |
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 tsable@honingman.com | Counsel for Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division; Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| **John V. Gorman** | **Professional Technologies Services** | **P.O. Box #304** | | **Frankenmuth** | **MI** | **48734** | | **989-385-3230** | **989-754-7690** | | **Corporate Secretary for Professional Technologies Services** |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 knorthrup@kutchinrufo.com | Counsel for Parlex Corporation |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-1832 | 312-443-896-6432 tbrink@lordbissel.com | Counsel for Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-0370 | 312-896-6394 tmcfadden@lordbissel.com | Counsel for Methode Electronics, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-947-8304 212-947-8340 | 212-947-1202 kwalsh@lordbissel.com rcovino@lordbissel.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | | Representative for Madison Capital Management |
| **Mayer, Brown, Rowe & Maw LLP** | **Raniero D'Aversa, Jr.** | **1675 Broadway** | | **New York** | **NY** | **10019** | | **212-262-1910** | **212-506-2500** | | **Counsel for Bank of America, N.A.** |
| **Mayer, Brown, Rowe & Maw LLP** | **Jeffrey G. Tougas** | **1675 Broadway** | | **New York** | **NY** | **10019** | | **212-262-1910** | **212-506-2500** | | **Counsel for Bank of America, N.A.** |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | | Counsel to Ward Products, LLC |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | | Counsel for Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | | Counsel for Prince George County, Maryland |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raternink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | | Attorney General for Worker's Compensation Agency |

In re Delphi Corporation et al.
Case No. 05-44481 (RDD)

1 of 2

12/27/200511:22 AM

2002 Service List
US Mail

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | | Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Aluminum Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | | Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Aluminum Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Noma Company and General Chemical Performance Products LLC | James Imbriaco | 90 East Halsey Road | | Parsippanny | NJ | 07054 | | 973-884-6952 | 973-515-3244 | | |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | | Office of the Chapter 13 Trustee |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@piercewood.com | Counsel for FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p. A. |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferweiner.com | Counsel for Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferweiner.com | Counsel for Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferweiner.com | Counsel for Dott Industries, Inc. |
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | mnewman@schaferweiner.com | Counsel for Dott Industries, Inc. |
| Schulte Roth & Sabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | | Counsel for D.C. Capital Partners, L.P. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | | Counsel for Molex, Inc. and INA USA, Inc. |
| Sonnenschein Nath & Rosenthal LLP | Jo Christine Reed | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | | Counsel for Molex, Inc. and INA USA, Inc. |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | | Counsel for Molex, Inc. and INA USA, Inc. |
| The Timpken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706 | | | | | Representative for Timken Corporation |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | | Counsel for Behr Industries Corp. |
| White & Case LLP | John K. Cunningham | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | | Counsel for Appaloosa Management, LP |

In re Delphi Corporation et al.
Case No. 05-44481 (RDD)

2 of 2

12/27/200511:22 AM

# **EXHIBIT D**

**Hearing Date and Time: January 5, 2006, 10:00 a.m.**
**Objection Deadline: December 29, 2005, 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                               :
      In re                    :     Chapter 11
                                 :
DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                               :
                  Debtors.   :     (Jointly Administered)
                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF MOTION FOR ORDER UNDER 11 U.S.C. § 1121(d)
EXTENDING DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE
AND SOLICIT ACCEPTANCES OF PLAN OF REORGANIZATION

PLEASE TAKE NOTICE that on December 16, 2005, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed a Motion For Order Under 11 U.S.C. § 1121(d) Extending Debtors' Exclusive Periods Within Which To File And Solicit Acceptances Of Plan Of Reorganization (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Motion will be held on January 5, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance With Local Bankr. R. 1007-2(e) (the "Case Management Order") (Docket No. 245), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

2

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the

Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue,

New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for the agent under the

postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New

York 10017 (Att'n:  Marlane Melican), (v) counsel for the Official Committee of Unsecured

Creditors, Latham & Watkins, 885 Third Avenue, New York, New York 10022 (Att'n: Mark A.

Broude), and (vi) the Office of the United States Trustee for the Southern District of New York,

33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard), in

each case so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time) on December

29, 2005** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Case Management Order will be considered by the Bankruptcy

Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance

with the procedures set forth herein and in the Case Management Order, the Bankruptcy Court

may enter an order granting the Motion without further notice.


Dated:  New York, New York
        December 16, 2005


                         SKADDEN, ARPS, SLATE, MEAGHER
                           & FLOM LLP

                         By: s/ John Wm. Butler, Jr.
                            John Wm. Butler, Jr.
                            John K. Lyons
                            Ron E. Meisler
                         333 West Wacker Drive, Suite 2100
                         Chicago, Illinois  60606
                         (312) 407-0700

                            - and -

                         By: s/ Kayalyn A. Marafioti
                            Kayalyn A. Marafioti (KM 9632)
                            Thomas J. Matz (TM 5986)
                         Four Times Square
                         New York, New York 10036
                         (212) 735-3000

                         Attorneys for Delphi Corporation, et al.,
                            Debtors and Debtors-in-Possession

4

**Hearing Date and Time: January 5, 2006 at 10:00 a.m.**
**Objection Deadline: December 29, 2005 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                               :
         In re                     :    Chapter 11
                               :
DELPHI CORPORATION, et al.,      :    Case No. 05-44481 (RDD)
                               :
                               :    (Jointly Administered)
           Debtors.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER 11 U.S.C. § 1121(d) EXTENDING
DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE
AND SOLICIT ACCEPTANCES OF PLAN OF REORGANIZATION

("1121(d) EXCLUSIVITY EXTENSION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates

(the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), with the support of their committee of unsecured creditors

and pre-and postpetition bank agents, hereby submit this motion (the "Motion") for an

order under 11 U.S.C. § 1121(d) extending the Debtors' exclusive periods within which to

file and solicit acceptances of a plan of reorganization.  In support of this Motion, the

Debtors respectfully represent as follows:

Background

A.      The Chapter 11 Filings

1.      On October 8, 2005, Delphi and certain of its U.S. subsidiaries (the

"Initial Filers") filed voluntary petitions in this Court for reorganization relief under

chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the

"Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of Delphi

(together with the Initial Filers, collectively, the "Debtors") filed voluntary petitions in this

Court for reorganization relief under the Bankruptcy Code.  The Debtors continue to

operate their businesses and manage their properties as debtors-in-possession pursuant to

sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing

the joint administration of the Debtors' chapter 11 cases (Dockets Nos. 28 and 404).

2

2.      On October 17, 2005, the Office of the United States Trustee (the

"U.S. Trustee") appointed an official committee of unsecured creditors (the "Creditors'

Committee").  No trustee or examiner has been appointed in the Debtors' cases.

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§

157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a

core proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicate for the relief requested herein is section

1121(d) of the Bankruptcy Code.

B.      Current Business Operations Of The Debtors

5.      With more than 180,000 employees worldwide, global 2004

revenues of approximately $28.6 billion, and global assets as of August 31, 2005 of

approximately $17.1 billion,[1] Delphi ranks as the fifth largest public company business

reorganization in terms of revenues, and the thirteenth largest public company business

reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11

debtors, will continue their business operations without supervision from the Bankruptcy

Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

6.      Over the past century, the operations which are now owned by

Delphi have developed leading global technology innovations with significant engineering

resources and technical competencies in a variety of disciplines.  Today, the Company (as

defined below) is arguably the single largest global supplier of vehicle electronics,

transportation components, integrated systems and modules, and other electronic

_____

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from
Delphi and its worldwide subsidiaries and affiliates.

3

technology. The Company's technologies and products are present in more than 75 million

vehicles on the road worldwide. The Company supplies products to nearly every major

global automotive original equipment manufacturer, with 2004 sales to its former parent,

General Motors Corporation ("General Motors" or "GM"), equaling approximately $15.4

billion, and sales to each of Ford Motor Company, DaimlerChrysler Corporation,

Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

       7.     As part of its growth strategy, Delphi has established an expansive

global presence with a network of manufacturing sites, technical centers, sales offices, and

joint ventures located in every major region of the world. In the U.S., the Debtors employ

approximately 50,600 people. These employees work in approximately 44 manufacturing

sites and 13 technical centers across the country, and in Delphi's worldwide headquarters

and customer center located in Troy, Michigan. Approximately 34,750 of these

individuals are hourly employees, 96% of whom are represented by approximately 49

different international and local unions. Outside the United States, the Company's foreign

entities employ more than 134,000 people, supporting 120 manufacturing sites and 20

technical centers across nearly 40 countries worldwide.

       8.     Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business

through various divisions and subsidiaries. Effective January 1, 1999, the assets and

liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries

and affiliates (collectively, the "Company") in accordance with the terms of a Master

Separation Agreement between Delphi and GM. In connection with these transactions,

4

Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.      Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base.  The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base.  The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.      Events Leading To Chapter 11 Filing

10.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the marketplace, Delphi's financial condition

5

deteriorated further in the first six months of 2005. The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[2]

11.    The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward looking revenue requirements. Having concluded that pre-filing discussions with its unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

---

[2]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

6

13.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses.  This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan.  The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down through the chapter 11 process.

14.    Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.    Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the date of the order for relief during which a debtor has the exclusive right to file a plan of reorganization.  Section 1121(c) of the Bankruptcy Code also provides that if the debtor files a plan within the 120-day exclusive period, it has the

7

balance of 180 days after the date of the order for relief to solicit and obtain acceptances of

such plan.  In these cases, the Debtors' exclusive period to file a plan expires on February

6, 2006, and the attendant solicitation period expires on April 7, 2006 (collectively, the

"Exclusive Periods").[3]  As the Debtors  have stated repeatedly -- in the October 8, 2005

affidavit of Robert S. Miller, Jr. in support of the Debtors' chapter 11 petitions, at the

earliest hearings held before the Court in these cases, at the organizational meeting of

creditors, and in Delphi's November 9, 2005 Quarterly Report (Form 10-Q) -- the Debtors'

strategic reorganization timetable targets emergence from reorganization in the first half of

2007, approximately 14-16 months beyond the current expiration of the plan exclusivity

period.

          16.     Accordingly, the Debtors believe that a 14-month or longer

extension of their exclusivity period is appropriate and warranted in these cases.

Nonetheless, the Debtors have reached an agreement with the Creditors' Committee that

their initial exclusivity request will be limited to 180 days beyond the current scheduled

expiry dates in February and April, 2006.  The administrative agent under the Debtors'

prepetition credit facility, the administrative agent to the Debtors' postpetition lending

group, and the Creditors' Committee have each informed the Debtors that they support this

requested 180-day extension.  Pursuant to section 1121(d) of the Bankruptcy Code, the

Debtors thus seek entry of an order extending the Debtors' Exclusive Periods to file and

solicit acceptances of a plan until August 5, 2006 and October 4, 2006, respectively,

without prejudice to the Debtors' right to seek further extensions.  Granting such an

---

[3]     Although the stated Exclusive Periods apply only to the Initial Filers, the requested relief is sought for all
        of the Debtors.

8

extension will allow the Debtors to focus substantially all of their energy on operating and

transforming their business, including stabilizing their supply chain, addressing legacy

issues, and reaching agreements with GM.

<u>Basis For Relief</u>

17.    The Exclusive Periods are intended to afford chapter 11 debtors a

full and fair opportunity to rehabilitate their business and to negotiate and propose a

reorganization plan without the deterioration and disruption of their business that might be

caused by the filing of competing reorganization plans by nondebtor parties.

18.    As discussed above, the Debtors' operations are extensive and

complex.  The sheer size and complexity of the Debtors' cases alone justifies an extension

of the Exclusive Periods.  The Debtors' cases, however, have been further complicated by

other factors including their long history with GM, their former parent and still their largest

customer, and the disadvantageous labor contracts the Debtors inherited from GM upon

separation in 1999.  In addition to navigating through this complicated framework, during

the first two months of these cases the Debtors have expended much time and many

resources to stabilize their supply base.  Given the Debtors' use of sole source suppliers

and just-in-time inventory that is common in the automotive industry, the Debtors'

suppliers have the ability to significantly affect the operations of the Debtors and their

customers.  Thus, the Debtors have focused significant attention on their suppliers to

ensure that the Debtors' businesses continue to run smoothly in the postpetition period.

19.    A credible long-term business plan is essential to the assessment of a

reasonable range of values for the Debtors' reorganized businesses and the determination

of how much debt and equity those businesses will be able to support. The Debtors are in the midst of formulating their business plans. Before the Debtors may propose a plan of reorganization, the Debtors must negotiate with their unions to address numerous issues, including increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements that prevent the Debtors from exiting non-strategic, non-profitable operations. Such negotiations are ongoing but, depending on how negotiations proceed, it is possible that resolution of these difficult issues may be achieved only through a process under section 1113 of the Bankruptcy Code.

20.     After gaining flexibility under their labor contracts, the Debtors must then realign Delphi's global product portfolio and manufacturing footprint to preserve Delphi's core U.S. operations. This may involve closing certain unprofitable facilities or selling certain segments of Delphi's businesses to permit the Debtors to emerge from chapter 11 with a stronger, more financially sound business.

21.     To ensure that realizing these objectives is possible, the Debtors require more time than the initial exclusive period allowed under the Bankruptcy Code to position their businesses and formulate, promulgate, and build consensus for a plan. Once the Debtors have formulated a long-term business plan, the Debtors anticipate testing the business plan and engaging in discussions with all of the Debtors' constituents regarding a plan of reorganization. Certainly, however, given the size and complexity of these cases, the Debtors will not have time to complete this process prior to the end of the Exclusive Periods. The requested extension will not prejudice other parties, but will allow the

10

Debtors to concentrate their efforts on systematically working towards a viable business

and reorganization plan.

22.     The Debtors submit that under these circumstances the Debtors'

requested extension of the Exclusive Periods through August 5, 2006 and October 4, 2006

is justified.

<u>Applicable Authority</u>

23.     Section 1121(d) of the Bankruptcy Code permits the court to extend

a debtor's Exclusive Periods upon a demonstration of cause:

> On request of a party in interest made within the respective
> periods specified in subsections (b) and (c) of this section
> and after notice and a hearing, the court may for cause
> reduce or increase the 120-day period or the 180-day period
> referred to in this section.

11 U.S.C. § 1121(d).  Although the term "cause" is not defined in the statute, the

legislative history indicates that it is intended to be a flexible standard to balance the

competing interests of a debtor and its creditors.  <u>See</u> H.R. Rep. No. 95-595 at 232 (1977),

<u>reprinted in</u> 1978 U.S.C.C.A.N. 5963, 6191 (bankruptcy courts are given flexibility to

increase the 120-day period depending on the circumstances of the case).  Moreover,

whether "cause" exists to extend a debtors' exclusive periods to file and solicit acceptances

of a plan is a decision committed to the sound discretion of the bankruptcy court based

upon the facts and circumstances of each particular case.  <u>See</u> <u>In re Texaco, Inc.</u>, 76 B.R.

322, 325 (Bankr. S.D.N.Y. 1987).  In determining whether a debtor has had an adequate

opportunity to negotiate a plan of reorganization and solicit acceptances thereof, a court

should consider a variety of factors to assess the totality of circumstances.  <u>See</u> <u>In re Ames</u>

11

Dep't Stores, Inc., 1991 WL 259036, at *2 (S.D.N.Y. Nov. 25, 1991); In re McLean Indus.,

Inc., 87 B.R. 830, 833-34 (Bankr. S.D.N.Y. 1987).

       24.      The court in McLean Indus. identified the following factors as

relevant to the determination of "cause" to extend a debtor's Exclusive Periods:

     (a)     the size and complexity of the debtor's case;

     (b)     the existence of good faith progress towards reorganization;

     (c)     a finding that the debtor is not seeking to extend exclusivity
to pressure creditors "to accede to [the Debtor's]
reorganization demands";

     (d)     existence of an unresolved contingency; and

     (e)     the fact that the debtor is paying its bills as they come due.

In re McLean Indus., 87 B.R. at 834; accord In re Hoffinger Indus., Inc., 292 B.R. 639, 644

(B.A.P. 8th Cir. 2003) (stating that not all factors "are relevant in every case" and court has

discretion to "decide which factors are relevant and give the appropriate weight to each").

When evaluating these factors, the goal is to determine whether a debtor has had a

reasonable opportunity to negotiate an acceptable plan with various interested parties and

to prepare adequate financial and non-financial information concerning the ramifications of

any proposed plan for disclosure to creditors.  See, e.g., In re UNR Industries, Inc., 72 B.R.

789, 792 (Bankr. N.D. Ill 1987) (court granted UNR's second request for extension of

exclusivity deadline to file plan of reorganization over objections of committee and other

parties in interest to leave open possibility of filing consensual plan);  In re McLean, 87

B.R. at 833-34; In re Texaco, 76 B.R. at 326.

       25.      In other cases of similar size and complexity to the Debtors' cases,

courts extended debtors' exclusivity rights to propose a plan of reorganization for periods

similar to those requested by the Debtors.  See, e.g., In re Delaco Co., Case No. 04-10899

(PCB) (Bankr. S.D.N.Y. 2004) (granting initial extension of five months and total

extensions of approximately 16 months);  In re Enron, Case. No. 01-16034 (AJG) (Bankr.

S.D.N.Y. 2001) (granting initial extension of six months and total extensions of

approximately 15 months); In re Bethlehem Steel, Case No. 01-15288 (BRL) (Bankr.

S.D.N.Y. 2001) (granting initial extension of five and a half months and total extensions of

more than 17 months); In re Kmart Corporation, Case No. 02-02474 (Bankr. N.D. Ill.

2002) (granting initial extension of nine months and aggregate exclusivity for more than 17

months);  In re Kaiser Aluminum Corp., Case No. 02-10429 (Bankr. D. Del. 2002)

(granting initial extension of six months and total extensions of approximately 43 months);

In re Service Merchandise Co., Inc., Case. No. 399-02649 (Bankr. M.D. Tenn. 1999)

(granting initial extension of seven months and total extensions of approximately 43

months, including one extension of 14 months).  In this case, based upon the preceding

factors and in line with other cases of similar size and complexity, sufficient cause exists

for the extension of the Exclusive Periods as requested by the Debtors in this Motion.

A.    These Cases Are Large And Complex

        26.    The size and complexity of the Debtors' chapter 11 cases alone

constitute sufficient cause to extend the Exclusive Periods.  See, e.g., In re Express One

Int'l, Inc., 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996) ("The traditional ground for cause is

the large size of the debtor and the concomitant difficulty in formulating a plan of

reorganization"); In re Texaco Inc., 76 B.R. 322, 326 (Bankr. S.D.N.Y. 1987); see also

H.R. Rep. No. 595, 95th Cong., 1st Sess. 231, 232, 406 (1978), reprinted in 1978

U.S.C.C.A.N. 5787, 6191, 6362 ("[I]f an unusually large company were to seek

13

reorganization under Chapter 11, the Court would probably need to extend the time in order to allow the debtor to reach an agreement."). These and other authorities show that in large, complex chapter 11 cases courts consistently extend the debtor's exclusive periods to afford the debtor time to stabilize its business, analyze reliable information to diagnose problems, and formulate a long-term business plan before commencing the plan of reorganization process.

27. Here, the Debtors' cases are certainly large and complex. In fact, the cases are currently among the largest pending before any bankruptcy court in the United States. At the time the Debtors filed these cases:

(a) Forty-two affiliated entities sought chapter 11 relief.

(b) The Debtors employed approximately 50,600 people in the U.S. at approximately 44 manufacturing sites and 13 technical centers. Ninety-six percent of the company's 34,750 hourly employees were represented by approximately 49 different international and local unions under various collective bargaining agreements. The company's foreign entities employed more than 134,000 people supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

(c) The Debtors' global 2004 revenues were approximately $28.6 billion, and global assets as of August 31, 2005 were approximately $17.1 billion.

(d) The Debtors supplied products to nearly every major global automotive original equipment manufacturer, with 2004 sales to the Debtors' former parent, General Motors Corporation, equaling approximately $15.4 billion, and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

28. A debtor's chapter 11 case need not even approach the size of these cases to justify an extension of the exclusive periods based on size and complexity. See,

14

e.g., In re United Press Int'l, 60 B.R. 265, 270 (Bankr. D.D.C. 1986) ($40 million company

granted extension of exclusive periods based on size and complexity of case; "In many

much smaller cases, involving far less complications, two or three years go by before the

debtor is in a position to file a plan").  Thus, by any measure, the Debtors' chapter 11 cases

are sufficiently large and complex to warrant an extension of the Exclusive Periods under

the foregoing authorities.  Moreover, in addition to the typical issues that can be

anticipated to arise in a large chapter 11 case, the Debtors will face numerous very

significant issues that are unique to the automobile industry, an industry which, as a whole,

is experiencing instability that will affect the Debtors' ability to formulate and execute a

viable business plan.

B.       The Debtors Have Made Good Faith Progress Toward Reorganization

29.      An extension of a debtor's exclusive periods also is justified by a

debtor's progress in resolving issues facing its creditors and estates. In re Amko Plastics,

Inc., 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996).  The Debtors' progress in these cases thus

far is significant and compels an extension of the Exclusive Periods.

30.      Since the Petition Date, the Debtors' management has expended

enormous efforts responding to the many exigencies and other matters which are incidental

to the commencement of any chapter 11 case, but which are compounded given the size

and complexity of these cases.  The Debtors have been consumed with the task of

responding to a multitude of inquiries and information requests made by the Creditors'

Committee, the postpetition lenders, vendors, customers, bondholders, shareholders, and

other parties in interest.  As the Court is aware, in particular, the Debtors have spent a great

deal of time and energy stabilizing their supplier base.  With numerous suppliers and

15

nearly 11,000 contracts expiring at the end of 2005, the Debtors have been in constant

negotiations with suppliers to ensure that the Debtors' operations continue to run, a

difficult task given the Debtors' use of sole-source suppliers and just-in-time inventory and

the sophistication of their suppliers.

       31.     Further, the Debtors must modify or eliminate non-competitive

legacy liabilities and burdensome restrictions under current labor agreements.  The Debtors

are currently negotiating certain terms of their collective bargaining agreements, including,

without limitation, operational restrictions, which prevent the Debtors from exiting non-

strategic, non-profitable operations and restrict the Debtors' ability to permanently lay off

idled workers for whom the Debtors must provide space during working hours.  Before

being able to restructure the Debtors' businesses and thus envision a feasible plan of

reorganization, the Debtors must address these obstacles.  Consequently, in the first days

of these cases the Debtors filed a Motion For Scheduling Order To Establish Notice

Procedures, Briefing Schedule, And Hearing Date Regarding Debtors' Conditional

Applications For Relief Under 11 U.S.C. § 1113 If Voluntary Modifications To Collective

Bargaining Agreements Cannot Be Reached (Docket #14).  An order establishing

December 16, 2005 as the date that the Debtors would file a motion to reject their

collective bargaining agreements was entered and a related hearing date was set for

January 22, 2006.

       32.     Subsequently, on November 28, 2005, the Debtors announced that

they had reached an agreement with GM to accelerate discussions regarding the Debtors'

restructuring efforts.  Moreover, the Debtors announced that they would suspend their

16

previously contemplated December 16, 2006 deadline to file a motion to reject their

collective bargaining agreements and modify retiree health care benefits under sections

1113 and 1114 of the Bankruptcy Code at least until January 20, 2006.

      33.    In addition to the foregoing and among other things, since the filing

of these chapter 11 cases, the Debtors have accomplished the following:

      (a)    obtained court approval of the Debtors' postpetition financing package, which is comprised of $4.5 billion in debt facilities, including $2.5 billion borrowed from the Debtors' prepetition revolver and term loan facilities and $2 billion in senior secured debtor-in-possession (DIP) financing from a group of lenders led by JPMorgan Chase Bank and Citigroup Global Markets, Inc.;

      (b)    made meaningful progress in the preparation of their schedules and statements of financial affairs which they expect to file timely on or before the January 22, 2006 deadline established by order of this Court;

      (c)    held frequent meetings and conference calls with the Creditors' Committee;

      (d)    implemented the many forms of relief granted by this Court during the first days of these cases to preserve the Debtors' relationships with their employees, customers, suppliers, lenders and others; and

      (e)    negotiated terms for implementation of supplier agreement assumption procedures.

      34.    Thus, the Debtors are clearly making good faith progress towards

their reorganization during the first two months of these cases.  Nevertheless, given the

size and the complexity of these cases, there is still significant progress to be made.

C.      The Debtors Are Using Exclusivity For A Proper Purpose

      35.    Courts have denied extensions of exclusive periods when plan

negotiations among parties in interest have broken down and the continuation of

17

exclusivity would merely give the debtor unfair bargaining leverage over the other parties

in interest.  See Lake in the Woods, 10 B.R. 338, 345 (Bankr. E.D. Mich. 1981).  Here, the

Debtors' request for an extension of the Exclusive Periods is not a negotiation tactic, but

instead, merely a reflection of the fact that these cases still are not yet ripe for the

formulation and confirmation of a viable plan of reorganization.  The most important goal

to be achieved in the launch phase of this case is operational and financial stability, the

groundwork for which the Debtors have just begun to lay.

36.     Furthermore, the Debtors have kept sight of the need to deal with all

parties in interest in these cases.  The Debtors and their professionals have consistently

conferred with their constituencies on all major substantive and administrative matters in

these cases, often altering their positions in deference to the views of the Creditors'

Committee, the U.S. Trustee, or the postpetition lenders.  The Debtors will, of course,

continue to do so.

D.     Resolution Of An Important Contingency

37.     Courts also have cited the need to resolve an important contingency

as justification for extending a debtor's exclusivity periods.  In this case, as described in

detail above, such a contingency exists because the success of the Debtors' reorganization

efforts will depend heavily on the Debtors' ability to address and resolve their U.S. legacy

liabilities, product portfolio, and operational issues.  Only after the Debtors address their

union and legacy issues through the use of sections 1113 and 1114 of the Bankruptcy

Code, if necessary, may the Debtors truly focus on developing the framework for the post-

chapter 11 global footprint of Delphi.  After that process, Delphi must have adequate time

to develop its plan, including, without limitation, determining which operations must be

18

sold, deciding which contracts to assume or reject, and evaluating and classifying the
universe of claims that have been and will be asserted against these Debtors.

E.      The Debtors Are Paying Their Bills As They Come Due

38.      Courts considering an extension of exclusivity may also assess a
debtor's liquidity and solvency.  See In re Ravenna Indus., 20 B.R. 886, 890 (Bankr. N.D.
Ohio 1982).  Clearly, these Debtors have sufficient liquidity because this court has
approved for use by the Debtors a $4.5 billion financing package.  In addition, the Debtors
are paying their bills as they come due.

39.      As described above, cause exists to extend the Exclusive Periods
without prejudice to the Debtors' rights to seek a further extension of the Exclusive
Periods.  Further, there is no harm in granting the requested extensions now because they
will be without prejudice to the right of any party to request a termination of exclusivity at
any time.  Moreover, three of the Debtors' primary parties-in-interest in these cases, the
Creditors' Committee, the administrative agent under the Debtors' prepetition credit
facility, and the administrative agent to the Debtors' postpetition lending group, support
this relief.  Accordingly, the Debtors submit that the relief requested herein in the best
interests of the Debtors, their estates, and other parties-in-interest.

Notice

40.      Notice of this Motion has been provided in accordance with the
Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007,
And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management,
And Administrative Procedures, And (III) Scheduling An Initial Case Conference In

19

Accordance With Local Bankr. R. 1007-2(e), entered by this Court on October 14, 2005

(Docket No. 245).  In light of the nature of the relief requested, the Debtors submit that no

other or further notice is necessary.

Memorandum Of Law

41.    Because the legal points and authorities upon which this Motion

relies are incorporated herein, the Debtors respectfully request that the requirement of the

service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the

Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District

of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an

order (i) extending the Debtors' exclusive periods to file and solicit acceptance of a plan of

reorganization through and including August 5, 2006 and October 4, 2006, respectively,

and (ii) granting the Debtors such other further relief as is just.

Dated: New York, New York
   December 16, 2005

       SKADDEN, ARPS, SLATE, MEAGHER
       & FLOM LLP

      By: s/ John Wm. Butler, Jr.
        John Wm. Butler, Jr. (JB 4711)
        John K. Lyons (JL 4951)
        Ron E. Meisler (RM 3026)
      333 West Wacker Drive, Suite 2100
      Chicago, Illinois  60606
      (312) 407-0700

         - and -

      By: s/ Kayalyn A. Marafioti
        Kayalyn A. Marafioti (KM 9632)
        Thomas J. Matz (TM 5986)
      Four Times Square
      New York, New York 10036
      (212) 735-3000

      Attorneys for Delphi Corporation, et al.,
       Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                      :
          In re                       :        Chapter 11
                                      :
DELPHI CORPORATION, et al.,           :        Case No. 05-44481 (RDD)
                                      :
                    Debtors.          :        (Jointly Administered)
                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


ORDER UNDER 11 U.S.C. § 1121(d) EXTENDING
DEBTORS' EXCLUSIVE PERIODS WITHIN WHICH TO FILE
AND SOLICIT ACCEPTANCES OF PLAN OF REORGANIZATION

("1121(d) EXCLUSIVITY EXTENSION ORDER")

Upon the motion, dated December 16, 2005 (the "Motion"), of Delphi

Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under section

1121(d) of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 - 1330, as amended,

extending the Debtors' exclusive periods within which to file and solicit acceptances of a plan of

reorganization (collectively, the "Exclusive Periods"); and upon the record of the hearing held on

the Motion; and this Court having determined that the relief requested in the Motion is in the best

interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it

appearing that proper and adequate notice of the Motion has been given and that no other or

further notice is necessary; and after due deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED.

2.      The Exclusive Periods for filing and soliciting acceptances of a plan of

reorganization are extended until August 5, 2006 and October 4, 2006, respectively.

3.      Entry of this Order is without prejudice to (i) the Debtors' right to seek

such additional and further extensions of the Exclusive Periods as may be necessary or

appropriate or (ii) any party-in-interest's right to seek to reduce the Exclusive Periods for cause

in accordance with 11 U.S.C. § 1121(d).

4.      This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this Order.

5.      The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
        January ___, 2006


_____
        UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT E**

**Hearing Date and Time: January 5, 2006, 10:00 a.m.**
**Objection Deadline: December 29, 2005, 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                   :
      In re                        :     Chapter 11
                                   :
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                                   :
                  Debtors.    :     (Jointly Administered)
                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF MOTION FOR ORDER UNDER 11 U.S.C. §§ 362, 363, 365,
1107, AND 1108 AUTHORIZING RENEWAL OF INSURANCE
COVERAGE AND CERTAIN RELATED RELIEF

PLEASE TAKE NOTICE that on December 16, 2005, Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), filed a Motion For Order Under 11 U.S.C.

§§ 362, 363, 365, 1107, And 1108 Authorizing Renewal Of Insurance Coverage And Certain

Related Relief (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the

Motion will be held on January 5, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing")

before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District

of New York, One Bowling Green, Room 610, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must

(a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local

Bankruptcy Rules for the Southern District of New York, and the Order Under 11 U.S.C. §§ 102

(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I) Omnibus

Hearing Dates, (II) Certain Notice, Case Management, And Administrative Procedures, And (III)

Scheduling An Initial Case Conference In Accordance With Local Bankr. R. 1007-2(e) (the

"Case Management Order") (Docket No. 245), (c) be filed with the Bankruptcy Court in

accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's

case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch

disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based

word processing format), (d) be submitted in hard-copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) be served upon (i) Delphi

Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to

the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

2

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the

Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue,

New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for the agent under the

postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New

York 10017 (Att'n: Marlane Melican), (v) counsel for the Official Committee of Unsecured

Creditors, Latham & Watkins, 885 Third Avenue, New York, New York 10022 (Att'n: Mark A.

Broude), and (vi) the Office of the United States Trustee for the Southern District of New York,

33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard), in

each case so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time) on December

29, 2005** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Case Management Order will be considered by the Bankruptcy

Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance

with the procedures set forth herein and in the Case Management Order, the Bankruptcy Court

may enter an order granting the Motion without further notice.


Dated: New York, New York
       December 16, 2005

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:  _s/ John Wm. Butler, Jr._____
      John Wm. Butler, Jr. (JB 4711)
      John K. Lyons (JL 4951)
      Ron E. Meisler (RM 3026)
     333 West Wacker Drive, Suite 2100
     Chicago, Illinois  60606
     (312) 407-0700

              - and -

By:  _s/ Kayalyn A. Marafioti_____
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
     Four Times Square
     New York, New York 10036
     (212) 735-3000

     Attorneys for Delphi Corporation, et al.,
       Debtors and Debtors-in-Possession

4

**Hearing Date and Time: January 5, 2006, 10:00 a.m.**
**Objection Deadline: December 29, 2005, 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
        In re                                             :    Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :    Case No. 05-44481 (RDD)
                                                          :
                              Debtors.                    :    (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


MOTION FOR ORDER UNDER 11 U.S.C. §§ 362,
363, 365,1107, AND 1108 AUTHORIZING RENEWAL OF INSURANCE
COVERAGE AND CERTAIN RELATED RELIEF

("INSURANCE AGREEMENT MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. §§ 362, 363, 365, 1107, and 1108 authorizing renewal of insurance coverage provided by ACE American Insurance Company and its affiliates (collectively, the "Insurers") and certain related relief.  In support of this Motion, the Debtors respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8, 2005, Delphi and certain of its U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") filed voluntary petitions in this Court for reorganization relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases (Dockets Nos. 28 and 404).

2.    On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner has been appointed in the Debtors' cases.

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2

4.    The statutory predicate for the relief requested herein are sections

362, 363, 365, 1107, and 1108 of the Bankruptcy Code.

B.    <u>Current Business Operations Of The Debtors</u>

5.    With more than 180,000 employees worldwide, global 2004

revenues of approximately $28.6 billion, and global assets as of August 31, 2005 of

approximately $17.1 billion,[1] Delphi ranks as the fifth largest public company business

reorganization in terms of revenues, and the thirteenth largest public company business

reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11

debtors, will continue their business operations without supervision from the Bankruptcy

Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy

Code.

6.    Over the past century, the operations which are now owned by

Delphi have developed leading global technology innovations with significant

engineering resources and technical competencies in a variety of disciplines.  Today, the

Company (as defined below) is arguably the single largest global supplier of vehicle

electronics, transportation components, integrated systems and modules, and other

electronic technology.  The Company's technologies and products are present in more

than 75 million vehicles on the road worldwide.  The Company supplies products to

nearly every major global automotive original equipment manufacturer, with 2004 sales

to its former parent, General Motors Corporation ("General Motors" or "GM"), equaling

approximately $15.4 billion, and sales to each of Ford Motor Company, DaimlerChrysler

---

[1]    The aggregated financial data used in this Motion generally consists of
consolidated information from Delphi and its worldwide subsidiaries and
affiliates.

3

Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding
$850 million.

       7.     As part of its growth strategy, Delphi has established an expansive
global presence with a network of manufacturing sites, technical centers, sales offices,
and joint ventures located in every major region of the world.  In the U.S., the Debtors
employ approximately 50,600 people.  These employees work in approximately 44
manufacturing sites and 13 technical centers across the country, and in Delphi's
worldwide headquarters and customer center located in Troy, Michigan.  Approximately
34,750 of these individuals are hourly employees, 96% of whom are represented by
approximately 49 different international and local unions.  Outside the United States, the
Company's foreign entities employ more than 134,000 people, supporting 120
manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

       8.     Delphi was incorporated in Delaware in 1998 as a wholly-owned
subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business
through various divisions and subsidiaries.  Effective January 1, 1999, the assets and
liabilities of these divisions and subsidiaries were transferred to Delphi and its
subsidiaries and affiliates (collectively, the "Company") in accordance with the terms of a
Master Separation Agreement between Delphi and GM.  In connection with these
transactions, Delphi accelerated its evolution from a North American-based, captive
automotive supplier to a global supplier of components, integrated systems, and modules
for a wide range of customers and applications.  Although GM is still the Company's
single largest customer, today more than half of Delphi's revenue is generated from non-
GM sources.

9.        Due to the significant planning that goes into each vehicle model,

Delphi's efforts to generate new business do not immediately affect its financial results,

because supplier selection in the auto industry is generally finalized several years prior to

the start of production of the vehicle.  When awarding new business, which is the

foundation for the Company's forward revenue base, customers are increasingly

concerned with the financial stability of their supply base.  The Debtors believe that they

will maximize stakeholder value and the Company's future prospects if they stabilize

their businesses and continue to diversify their customer base.  The Debtors also believe

that this must be accomplished in advance of the expiration of certain benefit guarantees

between GM and certain of Delphi's unions representing most of its U.S. hourly

employees which coincides with the expiration of the Company's U.S. collective

bargaining agreements in the fall of 2007.

C.        Events Leading To Chapter 11 Filing

10.        In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter,

however, with the exception of 2002, the Company has suffered losses.  In calendar year

2004, the Company reported a net operating loss of $482 million on $28.6 billion in net

sales.  Reflective of a downturn in the marketplace, Delphi's financial condition

deteriorated further in the first six months of 2005.  The Company experienced net

operating losses of $608 million for the first six months of calendar year 2005 on six-

month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[2]

11.    The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward looking revenue requirements.  Having concluded that pre-filing discussions with its unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve

---

[2]        Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

6

the Company's core businesses.  This will require negotiation with key stakeholders over

their respective contributions to the restructuring plan or, absent consensual participation,

the utilization of the chapter 11 process to achieve the necessary cost savings and

operational effectiveness envisioned in the Company's transformation plan.  The Debtors

believe that a substantial segment of Delphi's U.S. business operations must be divested,

consolidated, or wound-down through the chapter 11 process.

14.     Upon the conclusion of this process, the Debtors expect to emerge

from chapter 11 as a stronger, more financially sound business with viable U.S.

operations that are well-positioned to advance global enterprise objectives.  In the

meantime, Delphi will marshal all of its resources to continue to deliver value and high-

quality products to its customers globally.  Additionally, the Company will preserve and

continue the strategic growth of its non-U.S. operations and maintain its prominence as

the world's premier auto supplier.

Relief Requested

15.     By this Motion, the Debtors seek entry of an Order pursuant to

U.S.C. § 363(b) authorizing, but not directing, the Debtors to renew or enter into new

insurance policies with the Insurers and to execute and deliver all related documents and

agreements.

16.     The Debtors request that the Court authorize, but not direct, the

Debtors, pursuant to 11 U.S.C §§ 365 to assume insurance policies and related

agreements between Delphi and the Insurers (collectively, the "Agreements") including,

but not limited to the following:

(a)     that certain Multi-Line Deductible Program Agreement
        effective as of October 1, 2000 by and between Pacific
        Employers Insurance Company and Delphi (formerly

7

known as Delphi Automotive Systems Corporation) and all
amendments and addenda thereto (collectively, the " Multi-
Line Deductible Program Agreement");

(b)    All General Liability Policies issued to Delphi or the other
Debtors by one or more of the Insurers and all renewals,
extensions, and endorsements thereto (collectively, the
"General Liability Policy");

(c)    All Automobile Liability Policies issued to Delphi or the
other Debtors by one or more of the Insurers and all
renewals, extensions, and endorsements thereto (the
"Automobile Liability Policy");

(d)    All Workers' Compensation Policies issued to Delphi or the
other Debtors by one or more of the Insurers and all
renewals, extensions, and endorsements thereto (the
"Workers' Compensation Policy" and, collectively with the
General Liability Policy and the Automobile Liability
Policy, the "Insurance Policies");

(e)    the binder related to the Insurance Policies; and

(f)    the claims administration agreements related to the
Insurance Policies.

17.    In addition, the Debtors seek entry of an Order pursuant to 11

U.S.C. § 363(b) authorizing, but not directing, the Debtors to replace the existing Cash

Collateral (as defined below) with an irrevocable letter of credit in an amount equal to the

Cash Collateral.

18.    Finally, the Debtors request that this Court grant the Insurers relief

from the automatic stay provisions of 11 U.S.C. § 362, conditioned on the Debtors'

assumption of the Agreements, to allow the Insurers to draw against the Collateral (as

defined below) in accordance with the Agreements and to take other actions permitted

under applicable non-bankruptcy law and in accordance with the Agreements without

further order of this Court.

<u>Basis For Relief</u>

19.     Shortly prior to the Petition Date, the Debtors were faced with the

expiration of the policy period of certain insurance policies provided by the Insurers,

which policies expired by their terms on October 1, 2005.  The Insurance Policies provide

the Debtors with the first tier of a layered insurance program.  The failure by the Debtors

to renew such policies or to enter into replacement policies would have left the Debtors

and their estates exposed to significant potential liabilities.  To avoid this exposure, the

Debtors explored their options with respect to such renewal or replacement policies and

determined that entry into the Insurance Policies represented the Debtors' best option and,

therefore, that it was in their best interests to renew the Insurance Policies and enter into

that certain Amendment 1 to the Multi-Line Deductible Program Agreement (the

"Amendment").

20.     The Insurers were willing to provide a term continuing only

through January 1, 2006 under each Insurance Policy, however, and insisted upon

Delphi's agreement to the terms of the Amendment as a condition to their willingness to

provide the Debtors with the insurance coverage embodied in the Insurance Policies.  (A

copy of the Amendment is attached hereto as Exhibit A.)[3]  In addition to extending the

insurance coverage under substantially the same terms that had previously existed, the

Amendment, among other terms, requires that the Debtors seek approval of the relief

---

[3]     The Debtors and the Insurers entered into a 90-day extension of the Amendment
        that currently extends coverage from January 1, 2006, through April 1, 2006 (the
        "Extension") to allow time for the Insurers to complete their binding offer for
        coverage through September 30, 2006.  The parties intend to cancel the Extension
        upon the renewal or entry into new insurance policies.

sought herein as a condition precedent to the Insurers' agreement to provide any renewal

of the Insurance Policies beyond January 1, 2006.  (Exhibit A ¶ 2.1.)

21.     Subsequent to the Petition Date, the Debtors have actively sought

competitive bids for replacement of the Insurance Policies on January 1, 2006.

Unfortunately, because of the size and breadth of the Debtors' needs, the Debtors have

determined that only a limited number of insurance companies have the ability and/or

willingness to provide policies which would be suitable to replace the Insurance Policies.

The Debtors have evaluated their options and selected the Insurers' proposal as the best

option.  Among other terms, the Insurers' proposal for insurance coverage for the period

January 1, 2006 through September 30, 2006 requires that the Debtors pay an additional

premium of approximately $1.98 million and post approximately $9.31 million of

collateral, in addition to the collateral posted prepetition.

22.     If the Debtors were to assume the Agreements, as is required under

the Insurers' proposal, then section 365(b) of the Bankruptcy Code requires the Debtors

to cure or provide adequate assurance that they will promptly cure any defaults under the

Agreements.  Article I of the Multi-Line Deductible Program Agreement requires the

Debtors to pay the Insurers "all amounts the Insured is or may be obligated to pay to

other parties but which are paid by the [Insurers]."  (A copy of the Multi-Line Deductible

Program Agreement is attached hereto as Exhibit B.)  Thus, the Debtors' cost to cure the

Insurers' claim is predicated on an unknown amount, which is the amount that the

Insurers pay out in the future pursuant to the terms of the Agreements that otherwise the

Debtors were obligated to pay.  As of the date of this Motion, the Debtors submit that

there are no defaults under the Agreements.

10

23.    The Debtors have sought the professional advice of their insurance broker, Aon Risk Services ("Aon"), to provide, among other things, an estimate of the Debtors' liability under the Agreements, which subsequently can be used to estimate the value of the Insurers' potential cure claim.[4]  Significantly, the calculations provided by Aon are based on a snap-shot of the data at the time this Motion is filed.  Moreover, the estimates contain a high level of variance.  Nevertheless, this information is the best information that is available to the Debtors at this time, and the uncertainty in these estimates factored into the Debtors' analysis and evaluation of the Debtors' options for insurance coverage.  A copy of the table summarizing estimates of the Debtors' liability under the Agreements is attached hereto as Exhibit C.

24.    As part of this analysis, it also is important to note that the Insurers currently hold $19.1 million in collateral and security posted by the Debtors (the "Collateral"), which is comprised of an irrevocable letter of credit in the amount of approximately $13.7 million (the "Letter of Credit") and cash collateral of $5,388,967 (the "Cash Collateral").  The Collateral was provided to the Insurers prior to the Petition Date.  In analyzing the size of the Insurers' potential cure claim, the Debtors' analyzed the likelihood that the claim exceeds the value of theCollateral.  In addition, the Debtors took the estimated cure amount into account when comparing the Insurers' bid against the Debtors' other options.

25.    If the Debtors continue paying the prepetition workers' compensation claims, the estimated liability to the Insurers arising from the Agreements

---

[4]    Aon's estimate of the Insurers' potential cure claim is for information purposes only, and the Debtors do not request an order estimating the Insurers' claim. Aon's estimate has not been reviewed, approved, or accepted by, and is not binding on, the Insurers or any other parties in interest.

11

(as described above in paragraph 22) would be approximately $16.6 million.[5]  This

estimate falls between the 55 and 60 percent confidence interval.[6]  Aon's estimate is more

conservative than the median liability, which by definition, would be represented by the

50 percent confidence interval.   Because that estimated liability to the Insurers is less

than the value of the Collateral, the Debtors estimate that Insurers' cure claim would be

zero.

26.     Under this Court's October 13, 2005 order authorizing the Debtors

to pay prepetition wages, salaries, and benefits (Docket No. 198) (the "Human Capital

Obligations Order"), however, the Debtors are "authorized, but not directed" to pay or

otherwise honor their workers' compensation program.  Thus, the Debtors are not

required under the Human Capital Obligations Order to continue paying their prepetition

workers' compensation liability claims.  If the Debtors were to stop paying prepetition

workers' compensation claims, then according to Aon, the estimated liability arising from

the indemnification provision would increase by $3.3 million, to approximately $19.8

---

[5]     The Debtors' workers compensation liability under the Agreements represents a
small percentage of the Debtors' total workers' compensation liability.  The
Debtors maintained first dollar workers' compensation insurance coverage only in
the states where they do not have a high concentration of employees.  In the states
where the Debtors have a high concentration of employees, such as Michigan, the
Debtors are self-insured for workers' compensation claims.  In the self-insured
states, the Debtors maintain excess workers' compensation insurance coverage
with the Insurers for claims in excess of the respective state's self-insured
retention.  By this Motion, he Debtors also seek to assume and renew their excess
workers' compensation insurance coverage.

[6]     Confidence interval is a statistical range with a specified probability that a given
parameter lies within that range.  Applied in this context, the confidence interval
provides the probability that the estimated liability to the Insurers is less than or
equal to $X.

million.  With $19.1 million of prepetition collateral posted, the estimated amount of the

Insurers' potential cure claim would therefore be approximately $700,000.

27.    Because this calculation has a high rate of variance, the Debtors

project that their liability under the Agreements ranges from $8.2 million to $22.2 million

if the Debtors' were to continue paying workers' compensation claims and from $9.7

million to $27.2 million if they were to stop paying such claims.  Under the worst case

scenario projected by these estimates (i.e., the 99 percent confidence interval that liability

will not exceed these amounts), the Insurers could apply all of the collateral posted and

have a remaining cure claim of approximately $8.1 million, again assuming that the

Debtors stop paying prepetition workers' compensation claims. [7]  If the Debtors were to

continue paying workers' compensation claims, the liability to the Insurers would fall by

approximately $5.0 million, and the Debtors' estimated liability to the Insurers would be

approximately $22.2 million, resulting in a 1% chance (under the 99% confidence

interval) that the cure claim would exceed the Collateral by approximately $3.1 million.

28.    The Debtors have attempted to negotiate a waiver of the

requirements of the Amendment, so as to obviate the need for the assumption of the

Agreements.  The Insurers, however, have refused to waive the assumption requirement

in the Amendment.  Nevertheless, the Debtors have determined that the relief sought

herein is necessary because the proposal from the Insurers, even including the estimated

costs associated with assuming the Agreements, is a more attractive proposal than the

Debtors' other options.  Without the relief sought by this Motion, the Insurers stated that

---

[7]    Aon's estimate of the worst case scenario is based on data available at the time of
this Motion.  Data not currently available may arise subsequent to the filing of
this Motion, which could positively or negatively affect this estimate.

they would not be willing to renew the Insurance Policies. This would severely limit the

Debtors' potential sources of insurance in the future, and without a viable source of

alternative insurance, the Debtors anticipate that their insurance costs would increase

substantially following expiration of the Insurance Policies.

29.    The Debtors also have considered the possibility of self-insuring

the first-tier layer of insurance coverage offered by the Insurers, thus foregoing any need

to replace insurance policies as of January 1, 2006. The Debtors have determined,

however, that such action would impose too much risk upon their estates. The Debtors'

failure to secure a renewal of the Insurance Policies or replacement policies would

expose the Debtors' estates to the risk of violating statutory and contractual insurance

requirements in certain states where the Debtors have on-going operations. Therefore,

the Debtors have determined that renewal of the Insurance Policies or entry into

replacement insurance policies is necessary and in their best interests.

30.    The Debtors have also agreed, as a condition of the Insurers'

willingness to provide renewals of the Insurance Policies, that they will seek to replace

the Cash Collateral with an irrevocable letter of credit in the same amount as the Cash

Collateral, in form and substance acceptable to the Insurers, and issued by a financial

institution acceptable to the Insurers (the "New Letter of Credit").[8] Although the Debtors

recognize that issuance of a New Letter of Credit involves the use of assets of the estate

to secure a prepetition claim of the Insurers against the Debtors under the Agreements,

the Debtors believe that the issuance of the New Letter of Credit would be significantly

---

[8]    As previously stated, the Debtors will also post a letter of credit of approximately
$9.31 million for the new insurance coverage for the policy period January 1,
2006 through September 30, 2006.

cheaper for the Debtors than continuing to maintain the Cash Collateral.  In addition,

upon assumption of the Agreements, the Insurers' prepetition claim against the Debtors

under the Agreements will become an administrative expense claim.  Thus, the issuance

of a New Letter of Credit will not change the priority of the Insurers' prepetition claim.

31.    Furthermore, pursuant to the Amendment, as a condition of the

Insurers' willingness to provide renewals of the Insurance Policies, the Debtors seek

certain additional relief.  Specifically, the Debtors request that the Court: (a) authorize,

but not direct, the Debtors to renew or enter into insurance policies and to execute all

related documents and agreements between the Debtors and the Insurers pursuant to

section 363 of the Bankruptcy Code; (b) authorize, but not direct, the Debtors to agree to

future renewals of the insurance programs and to provide collateral and security pursuant

to any such programs without further order of this Court;[9] (c) authorize the Insurers to

draw against the Collateral, apply the Collateral to the Debtors' obligations under the

Agreements, and take other actions permitted under applicable non-bankruptcy law and

in accordance with the Agreements without further order of this Court (upon prior written

notice, not to exceed five business days, to the Debtors and counsel for the Creditors'

Committee, if and to the extent that prior notice is required by the applicable rules of this

Court; provided that no notice shall be required for draws under letters of credit due to

the expiration or non-renewal thereof); (d) authorize relief from the automatic stay

pursuant to section 362(d) of the Bankruptcy Code, conditioned on the assumption of the

Agreements, for the sole and limited purpose of effectuating the relief described in

---

[9]    The Debtors believe that entering into new insurance programs and posting
collateral as a prerequisite for such programs are ordinary course transactions.
Because this condition, however, was listed in the Amendment, the Debtors have
agreed to seek authorization for such actions.

subparagraph (c) above; (e) confirm, conditioned upon the assumption of the Agreements, administrative priority treatment for all payment and reimbursement obligations owing to the Insurers under the Agreements; (f) confirm, conditioned on the assumption of the Agreements, that the Insurers' claims with respect to the Agreements will be paid by the Debtors in the ordinary course of their businesses; and (g) confirm that the Agreements and an order of this Court approving this Motion shall not be altered by any plan of reorganization confirmed in these chapter 11 cases or by subsequent order of this Court.

32.    Aside from the assumption of the Agreements and the rights conditioned upon such assumption and the replacement of the Cash Collateral with the New Letter of Credit, the Debtors believe that the transactions described in this Motion constitute ordinary course transactions by the Debtors that do not require approval of this Court pursuant to sections 363(c), 1107, and 1108 of the Bankruptcy Code. Nevertheless, out of an abundance of caution and to ensure full compliance with the terms of the Amendment, the Debtors respectfully request that an order approving this Motion be granted.

<u>Applicable Authority</u>

33.    The Debtors believe that the Agreements may be assumed pursuant to section 365 of the Bankruptcy Code. Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the Court's approval, may . . . assume any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

34.    The standard to be applied by a court in determining whether an executory contract or unexpired lease should be assumed is the "business judgment" test, which is premised upon the debtor's business judgment that assumption would be beneficial to its estate. <u>See</u> <u>Orion Pictures Corp. v. Showtime Networks, Inc.</u> (In re Orion

16

Pictures Corp.), 4 F.3d 1095, 1098-99 (2d Cir. 1993); <u>see also</u> <u>In re Child World, Inc.</u>,

142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992) (a debtor may assume or reject an unexpired

lease under § 365(a) in the exercise of its "business judgment"); <u>In re Roman Crest Fruit,</u>

<u>Inc.</u>, 35 B.R. 939, 949 (S.D.N.Y. 1983); <u>Control Data Corp. v. Zelman</u>, 602 F.2d 38, 42

(2d Cir. 1979). "More exacting scrutiny would slow the administration of the debtor's

estate and increase its cost, interfere with the Bankruptcy Code's provision for private

control of administration of the estate, and threaten the court's ability to control a case

impartially." <u>Richmond Leasing Co. v. Capital Bank, N.A.</u>, 762 F.2d 1303, 1311 (5th Cir.

1985).

   35. If the debtor's business judgment has been exercised reasonably, a

court should approve the assumption of an executory contact. <u>See</u>, <u>e.g.</u>, <u>NLRB v.</u>

<u>Bildisco and Bildisco</u>, 465 U.S. 513, 523 (1984); <u>Group of Inst'l Investors v. Chicago,</u>

<u>Milwaukee, St. Paul & Pacific R.R. Co.</u>, 318 U.S. 523 (1943); <u>Cleveland Hotel Protective</u>

<u>Comm. v. Nat'l City Bank of Cleveland</u> (In re Van Sweringen Corp.), 155 F.2d 1009,

1013 (6th Cir.), <u>cert. denied</u>, 329 U.S. 766 (1946); <u>In re Child World, Inc.</u>, 142 B.R. at 89;

<u>In re Ionosphere Clubs, Inc.</u>, 100 B.R. 670, 673 (Bankr. S.D.N.Y 1989); <u>see also</u> <u>In re</u>

<u>Orion Pictures Corp.</u>, 4 F.3d at 1098-99; <u>In re RCN Corp.</u>, Case No. 04-13638 (RDD),

June 22, 2004 Hr'g Tr. ¶¶ 50:24–50:2, at 46. Once the debtor has satisfied the business

judgment standard by showing that assumption will benefit the estate, the court "should

not interfere 'except upon a finding of bad faith or gross abuse of [the debtor's] business

discretion.'" <u>Id.</u> at 465 (citing <u>Lubrizol Enters., Inc. v. Richmond Metal Finishers Inc.</u>,

756 F.2d 1043, 1047 (4th Cir. 1985).

36.    The business judgment rule shields a debtor's management from
judicial second-guessing.  In re Farmland Indus., Inc., 294 B.R. 903, 913 (Bankr. W.D.
Mo. 2003) (quoting In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y.
1986)) ("'[T]he Code favors the continued operation of a business by a debtor and a
presumption of reasonableness attaches to a debtor's management decisions.'").  Once the
Debtors articulate a valid business justification, "[t]he business judgment rule 'is a
presumption that in making a business decision the directors of a corporation acted on an
informed basis, in good faith and in the honest belief that the action was in the best
interests of the company.'"  In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992)
(quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

37.    Upon finding that the Debtors have exercised their sound business
judgment in determining that assumption of the Agreements is in the best interests of
their estates, this Court should approve assumption under section 365(a) of the
Bankruptcy Code.  In re Gucci, 193 B.R. 411, 415-17 (S.D.N.Y. 1996) (affirming
bankruptcy court's approval of assumption of executory contract upon determining that
assumption "was in the best interest of the estate"); Blue Cross Blue Shield of Conn. v.
Gurski (In re Gurski), Nos. 94-51202 & 3:95CV1883, 1996 WL 684397, at *2 (D. Conn.
Jan. 25, 1996) (affirming bankruptcy court's determination that executory contracts were
beneficial to debtor such that debtor could assume them under section 365(a)).

38.    The Debtors assert that the Agreements may be assumed pursuant
to section 365 of the Bankruptcy Code given the Debtors' need to maintain appropriate
insurance coverage.  As described above, the Debtors have considered all potential
options short of assumption of the Agreements and have determined that all such options

18

are either not viable or are less favorable to the Debtors' estates.  Therefore, the Debtors

have determined, in the exercise of sound business judgment, that the relief sought herein

is necessary and appropriate to the maintenance of their businesses and to preserve and

enhance the value of their estates to the benefit of all creditors.

        39.    As noted above, the monetary payments necessary upon

assumption of the Agreements have an estimated value of zero.[10]  Bankruptcy Code

section 365(b)(1) codifies the requirements for assuming an unexpired lease or executory

contract of a debtor.  That subsection provides:

> (b)(1)  If there has been a default in an executory contract or unexpired lease
> of the debtor, the trustee may not assume such contract or lease
> unless, at the time of assumption of such contract or lease, the trustee-
>
>   (A)    cures, or provides adequate assurance that the trustee will
> promptly cure, such default;
>
>   (B)    compensates, or provides adequate assurance that the trustee  will
> promptly compensate, a party other than the debtor to such
> contract or lease, for any actual pecuniary loss to such party
> resulting from such default; and
>
>   (C)    provides adequate assurance of future performance under such
> contract or lease.

11 U.S.C. § 365(b)(1).

        40.    The Debtors submit that the statutory requirements of section

365(b)(1) of the Bankruptcy Code have been satisfied because the Insurers are secured up

to $19.1 million by the Letter of Credit and the Cash Collateral[11] for potential monetary

defaults or future obligations of the Debtors under the Agreements.  If the Insurance

---

[10]    As noted above, the estimate falls between the 55 and 60 percent confidence
interval.

[11]    As previously stated, the Debtors seek to replace the Cash Collateral with the
New Letter of Credit.

Policies are assumed, the Insurers also would be permitted to file an administrative

expense priority claim, although the Debtors currently estimate that the liability will not

exceed the posted collateral.  The value of any potential administrative expense claim

would be the difference between the Debtors' liability under the assumed Agreements and

the Collateral.

        41.      The Debtors, operating their businesses as debtors-in-possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding

the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors

and (if the value justifies) equity owners."  In re CoServ, L.L.C., 273 B.R 487, 497

(Bankr. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 debtor-in-possession is

the duty "to protect and preserve the estate, including an operating business's going-

concern value."  Id.

        42.      Courts have noted that there are instances in which a debtor-in-

possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a

prepetition claim."  Id.  The CoServ court specifically noted that preplan satisfaction of

prepetition claims would be a valid exercise of a debtor's fiduciary duty when the

payment "is the only means to effect a substantial enhancement of the estate."  Id. at 497-

98.  The court provided a three-pronged test for determining whether a preplan payment

on account of a prepetition claim was a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant.  Second,
> unless it deals with the claimant, the debtor risks the probability of harm,
> or, alternatively, loss of economic advantage to the estate or the debtor's
> going concern value, which is disproportionate to the amount of the
> claimant's prepetition claim.  Third, there is no practical or legal
> alternative by which the debtor can deal with the claimant other than by
> payment of the claim.

Id. at 498.

20

43.     Here, because of the size and breadth of the Debtors' needs, only a limited number of insurance companies have the ability to provide the Debtors with insurance coverage.  If the Debtors do not continue their long-standing relationship with the Insurers, it is quite possible that the Insurers will not offer coverage to the Debtors in the future, leaving the Debtors with even fewer potential insurers.  The harm to the estate under this scenario far outweighs the cost of assuming the Insurance Policies.  As previously stated, assuming the Debtors continue paying their workers' compensation claims, the estimated value of the Insurers' cure claim is zero.  Finally, the Insurers' requirement, as memorialized in the Amendment, that the Debtors assume the Insurance Policies as a condition of renewal coverage was bargained for by the Insurers prior the Petition Date.  The Insurers have stated that they are not willing to waive this requirement.  Because of the long-term effect of rejecting the Insurers' proposal, the Debtors believe that they have no option but to accept this requirement.  Therefore, the Debtors can meet their fiduciary duties as debtors-in-possession under sections 1107(a) and 1108 of the Bankruptcy Code only by assuming the Insurance Policies as a condition of renewing insurance coverage with the Insurers.

44.     Furthermore, pursuant to the Amendment, the Debtors have also agreed to seek authorization to lift the automatic stay pursuant to section 362(d) of the Bankruptcy Code for the purpose of allowing the Insurers to draw against the Collateral, apply the Collateral to the Debtors' obligations under the Agreements, and take other actions permitted under applicable non-bankruptcy law and the Agreements without further order of this Court.  This relief is conditioned on the Debtors' assumption of the Agreements.

21

45.    Section 362(d) of the Bankruptcy Code provides that the Court

shall grant relief from the automatic stay of section 362(a) in the following situations:

(1)    for cause, including the lack of adequate protection of an interest in
property of such party in interest; [or]

(2)    with respect to a stay of an act against property under subsection (a) of this
section, if – (A) the debtor does not have an equity in such property; and (B) such
property is not necessary to an effective reorganization[.]

11 U.S.C. § 362(d).  Courts in this circuit have noted that, "the grounds for relief from

stay are presented in subsections (1), (2) and (3) in the disjunctive; thus, if any one

subsection applies, the Court must grant a motion for relief from stay."  In re Zeoli, 249

B.R. 61, 63 (Bankr. S.D.N.Y. 2000).  The Debtors have agreed to consent to conditional

relief from the automatic stay being granted to the Insurers with respect to the Collateral

in this instance because the claims of the Insurers that will be satisfied thereby would

otherwise constitute either cure claims or administrative priority claims against the

Debtors, either of which would have to be paid in full.  As such, the relief from the

automatic stay is economically neutral to the Debtors.  Additionally, the Insurers

probably could obtain relief from the stay anyway or otherwise would get the Collateral

upon emergence.

46.    The Debtors are required, pursuant to the terms of the Amendment,

to seek authority from this Court to renew or enter into insurance policies and to execute

all related documents and agreements between the Debtors and the Insurers pursuant to

section 363 of the Bankruptcy Code.  Similar to the analysis under section 365, courts in

this district and elsewhere consistently have held that transactions pursuant to 363(b)

should be approved if there is a sound business justification for implementing them.  See

In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); In re Delaware Hudson Ry. Co.,

22

124 B.R. 169, 179 (Bankr. D. Del. 1991).  Once the debtor articulates a valid business

justification, "'[there is a presumption that in making a business decision the directors of a

corporation acted on an informed basis, in good faith and in the honest belief that the

action taken was in the best interests of the company.'"  In re Integrated Resources, Inc.,

147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872

(Del. 1985)); see also In re RCN Corp., June 22, 2004 Hr'g Tr. ¶¶ 51:3–12 (approving

exit financing commitments pursuant to 363(b) of the Bankruptcy Code).

        47.     Although the Debtors believe that no authority is necessary under

section 363 of the Bankruptcy Code to renew or enter into insurance policies, to execute

all related documents and agreements between the Debtors and the Insurers and to post

collateral as a prerequisite for the issuance of the new insurance coverage, as such actions

constitute ordinary course transactions for the Debtors, such relief, to the extent outside

the ordinary course, is clearly appropriate pursuant to 11 U.S.C. § 363.  As noted above,

the Debtors would subject their estates to significant potential costs absent renewal of the

Insurance Policies or entry into new replacement policies covering the period following

expiration of the Insurance Policies.

        48.     Furthermore, the Debtors' failure to renew or replace the Insurance

Policies would potentially result in a violation of applicable non-bankruptcy laws

specifying mandatory minimum insurance coverages in certain jurisdictions where the

Debtors operate.  The Debtors respectfully assert that the renewal or replacement of the

Insurance Policies constitutes an exercise of sound business judgment on the part of the

Debtors and therefore should be approved pursuant to section 363 of the Bankruptcy

Code.

49.     For the foregoing reasons, the Debtors believe that the relief

requested herein is in the best interests of the estates and should be granted.

<u>Notice</u>

50.     Notice of this Motion has been provided in accordance with the

Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007,

and 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management,

and Administrative Procedures, and (III) Scheduling an Initial Case Conference in

Accordance with Local Bankr. R. 1007-2(e) entered by this Court on October 14, 2005

(Docket No. 245).  In light of the nature of the relief requested, the Debtors submit that

no other or further notice is necessary.

<u>Memorandum Of Law</u>

51.     Because the legal points and authorities upon which this Motion

relies are incorporated herein, the Debtors respectfully request that the requirement of the

service and filing of a separate memorandum of law under Local Rule 9013-1(b) be

deemed satisfied.

WHEREFORE, the Debtors respectfully request that the Court enter an

order (a) approving the Debtors' assumption of Agreements, (b) lifting the automatic stay

pursuant to section 362(d) of the Bankruptcy Code for the purpose of allowing the

Insurers to draw against the Collateral, apply the Collateral to the Debtors' obligations

under the Agreements, and take other actions permitted under applicable non-bankruptcy

law and the Agreements without further order of this Court, (c) authorizing the Debtors to

renew or enter into insurance policies and to execute all related documents and

agreements pursuant to section 363 of the Bankruptcy Code without further order of this

Court, and (d) granting such other relief as is described in paragraphs 30 and 31 hereof,

and (e) granting the Debtors such other and further relief as is just.

Dated: New York, New York
       December 16, 2005

                      SKADDEN, ARPS, SLATE, MEAGHER
                        & FLOM LLP

                    By:  s/ John Wm. Butler, Jr.
                        John Wm. Butler, Jr. (JB 4711)
                        John K. Lyons (JL 4951)
                        Ron E. Meisler (RM 3026)
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois  60606
                    (312) 407-0700

                        - and -

                    By:  s/ Kayalyn A. Marafioti
                        Kayalyn A. Marafioti (KM 9632)
                        Thomas J. Matz (TM 5986)
                    Four Times Square
                    New York, New York 10036
                    (212) 735-3000

                    Attorneys for Delphi Corporation, et al.,
                      Debtors and Debtors-in-Possession

# EXHIBIT A

# THE AMENDMENT

Amendment 1, effective as of September 30, 2005 ("Amendment")
by and between
ACE American Insurance Company
(hereinafter with Pacific Employers Insurance Company and their affiliates, the
"Company")
and
Delphi Corporation, formerly known as Delphi Automotive Systems Corporation
(hereinafter the "Insured")
to
## MULTI-LINE DEDUCTIBLE PROGRAM AGREEMENT
effective the 1st day of October, 2000, by and between the Company and the
Insured, as amended or supplemented pursuant to various amendments or
addendums
(hereinafter the "Agreement")

WHEREAS, the Insured has requested that the Company issue or renew certain policies
and to amend Article IV of the Agreement to specifically reference cash collateral.

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of
which are hereby acknowledged, and intending to be legally bound hereby, the parties
hereto agree as follows:

1.      Amendments. Article IV of the Agreement is hereby amended by adding and
inserting the following new provisions at the end of Article IV:

>       "The Insured shall deliver to the Company the amount of $5,388,967 ("Cash
>       Collateral") by wire transfer of immediately available funds, which shall be
>       received by the Company by September 30, 2005. As security for the payment
>       and performance of the Insured's Obligation (as such term is defined in the
>       Agreement), the Insured hereby grants to the Company a security interest in and
>       lien on all of its right, title and interest, whether now existing or hereafter arising,
>       in and to the Cash Collateral and all proceeds thereof. Cash Collateral shall
>       include, without limitation, any and all Paid Loss Deposit Funds. The Company
>       may hold the Cash Collateral as part of the collateral securing the Insured's
>       Obligation in any account in the Company's name and with any financial
>       institution as the Company determines in its sole discretion. The Company may
>       commingle the Cash Collateral with the Company's own funds or the funds of
>       other insureds.
>
>       The Company is authorized to use the Cash Collateral to pay any and all of the
>       Insured's Obligation owing under the Agreement without further notice to, or
>       demand of, the Insured.

1

The Company shall have no duty to invest the Cash Collateral, and may hold the Cash Collateral in an interest bearing or non-interest bearing account as the Company determines in its sole discretion."

2.    Renewal. Any proposed future renewal of the Policies will be subject to terms and conditions acceptable to the Company, in its sole discretion, which shall include, without limitation, the following terms and conditions to be satisfied prior to the proposed effective date of any such future renewal ("Renewal Date"):

2.1    Order. If a petition for relief under the United States Bankruptcy Code ("Bankruptcy Code") is filed by or against the Insured prior to the Renewal Date, then the Bankruptcy Court that has jurisdiction over the Insured ("Bankruptcy Court") shall have entered an Order, in form and substance satisfactory to the Company and its counsel, which provides the following:

A.    the Insured is authorized to, and upon entry of the Order shall, assume the Agreement, all policies listed in the Addenda to the Agreement, the binder, and the claims administration agreement related thereto (collectively, the "Program") pursuant to Section 365 of the Bankruptcy Code;

B.    the Insured is authorized to renew or enter into insurance policies and to execute all related documents and agreements between the Insured and the Company or any of its affiliates as part of the Program pursuant to Section 363 of the Bankruptcy Code;

C.    the Insured is authorized to provide the collateral and security pursuant to the Program;

D.    the Insured may agree to future renewals of the Program without further Order of the Court;

E.    the Company shall have the right to draw against the Cash Collateral, apply the Cash Collateral to the Insured's Obligation, and take other actions permitted under applicable non-bankruptcy law and the Program without further order of the Court (upon prior written notice, not to exceed 5 business days, to the Insured and any statutorily appointed committee of creditors of the Insured, if and to the extent that prior notice is required by the applicable rules of the Bankruptcy Court), and for this purpose, the automatic stay is deemed lifted pursuant to Section 362(d) of the Bankruptcy Code;

F.    all payment and reimbursement obligations owing to the Company under the Program shall be entitled to priority under Section 503(b)(1)(A) of the Bankruptcy Code;

G.    the Company's claims with respect to the Program, including the renewal shall be paid in the ordinary course; and

H.    the Program and the Order shall not be altered by any plan of reorganization or subsequent order of the Court.

2.2    The Insured shall deliver to the Company the full collateral and security requirement in a Letter of Credit in form, amount and substance and issued by a financial

institution acceptable to the Company, in its sole discretion, to replace any unused Cash Collateral and to provide any additional required security to the Company.

    2.3.    All premiums must be received by the Company.

    2.4.    The fully executed program agreements must be received by the Company.

3.    <u>Representation and Warranty</u>. The Insured represents and warrants to the Company, after consultation with its counsel, that it has the power and authority to execute and enter into this Amendment and deliver the Cash Collateral to the Company.

4.    <u>Miscellaneous</u>.

    4.1    Except as expressly set forth in this Amendment, all terms and conditions of the Agreement remain in full force and effect.

    4.2    All capitalized terms used without being defined herein shall have the meanings given to such terms in the Agreement.

    4.3    All notices, demands, requests, consents, approvals and other communications required or permitted hereunder must be in writing and be delivered in accordance with the notice provisions of the Agreement.

    4.4    No delay or omission on the part of the Company to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of any such right or power or any acquiescence therein, nor will the action or inaction of the Company impair any right or power arising hereunder. The Company's rights and remedies hereunder are cumulative and not exclusive of any other rights or remedies which the Company may have under other agreements, at law or in equity.

    4.5    If any one or more of the provisions contained in this Amendment should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

    4.6    No modification, amendment or waiver of any provision of this Amendment nor consent to any departure by the Insured therefrom, will in any event be effective unless the same is in writing and signed by the Company, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given.

    4.7    This Amendment may be signed in any number of counterpart copies transmitted by facsimile and by the parties hereto on separate counterparts transmitted by facsimile, but all such copies shall constitute one and the same Amendment.

    4.8    This Amendment shall be binding upon and inure the benefit of and be enforceable by the parties hereto and their respective successors and assigns.

4.9    This Amendment shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.

**IN WITNESS WHEREOF,** this Amendment to the Agreement has been executed by the parties hereto, and shall be effective on the date first written above.

Delphi Corporation
f/k/a Delphi Automotive Systems Corporation

By: _____ 9/30/05

Name: WILLIAM D. TELGEN

Title: RISK MANAGER - DELPHI CORP.

ACE American Insurance Company
on behalf of the Company

By: _____

Name: _____

Title: 9.30.05

4

# EXHIBIT B

# MULTI-LINE DEDUCTIBLE
# PROGRAM AGREEMENT

## MULTI-LINE DEDUCTIBLE PROGRAM AGREEMENT
(hereinafter "this Agreement")

effective the **1st day of October, 2000**

by and between
**Pacific Employers Insurance Company**

(hereinafter the "Company")

and

# Delphi Automotive Systems Corporation,
(hereinafter the "Insured")

**WHEREAS,** the Insured is the Named Insured under the policy(ies) of General Liability, Automobile Liability, and/or Workers' Compensation insurance listed on the respective Addenda hereto (including Addenda that may be added after the effective date hereof) issued by the Company (which together with all extensions thereof and endorsements thereto, are hereinafter collectively referred to as the "Policies" or as the "General Liability Policies," "Automobile Liability Policies," and "Workers' Compensation Policies," respectively), which Policies each include a Deductible Endorsement; and

**WHEREAS,** the Company is willing to issue such Policies only if the Insured provides collateral security to the Company; and

**WHEREAS,** the Company has entered and may in the future enter into one or more contracts with the Insured's preferred claims administrator (hereinafter, the "Claims Adjusting Service") to provide claims adjusting and related services for claims arising under the Policies;

**NOW, THEREFORE,** in consideration of the mutual promises contained herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, and in accordance with the terms and conditions of the Policies, the Company and the Insured agree as follows:

## ARTICLE I

## INSURED'S PAYMENTS

The Insured agrees to pay or reimburse the Company for:

a) all premiums payable to the Company under the Policies, including audit of the Policies and any recalculation of premium as provided therein, as described in greater detail in the respective Addenda hereto;

b) Paid Loss Deposit Funds as provided in Article III of this Agreement;

c) all other amounts the Insured is or may in the future be required to pay or reimburse to the Company in accordance with the terms and conditions of the Policies or this Agreement, including without limitation the Insured's share of Paid Losses and Allocated Loss Adjustment Expense;

d) Claim Administration Expense as provided in the respective Addenda hereto;

e) all amounts the Insured is or may be obligated to pay to other parties but which are paid by the Company;

and to provide collateral to the Company to secure the Insured's Obligation as provided herein.

The Company will bill the Insured monthly for Company Expenses and any amounts described above in b), c) or d), which are payable or reimbursable to the Company pursuant to the Workers' Compensation Policies. The Company will also bill the Insured for any amounts described above which are payable or reimbursable to the Company pursuant to the General Liability Policies and Automobile Liability Policies if and when such payment obligations arise. Insured's payment of each such bill shall be due and payable no later than the Required Payment Date. If the Insured does not pay an amount billed by the Required Payment Date,

(i) the Company shall have the right to bill the Insured for, and to collect, the Interest Charge applied to any such unpaid amount; and

(ii) the Company shall have the right to increase the amount of any Paid Loss Deposit Fund to an amount determined by the Company, which amount may exceed the required amount as specified in Article III of this Agreement.

All payments made by the Insured under this Agreement and the Policies shall be allocated first to collateral security, then to other amounts owed to the Company other than premiums, then finally to premiums for the Policies, regardless of the designation of the payment.

All terms and conditions of each Addendum hereto are a part of this Agreement and are here incorporated by reference in their entirety.

The Insured and the Company agree that this Agreement is not intended to, and does not, amend or alter any of the terms and conditions of any of the Policies. In the event of any inconsistencies between this Agreement and any Policy, the terms and conditions of the Policy shall control.

## ARTICLE II

## DEFINITIONS

"Allocated Loss Adjustment Expense" shall mean such claim expenses, costs and any interest incurred in connection with the investigation, administration, adjustment, settlement or defense of any claim or lawsuit that the Company, under its accounting practices, directly allocates to a particular claim, whether or not a payment indemnifying the claimant(s) is made. Such expenses include, but are not limited to, subrogation, all court costs, fees and expenses; fees for service of process; fees and expenses to attorneys for legal services; the cost of services of undercover operations and detectives; fees to obtain medical cost containment services; the cost of employing experts for the purpose of preparing maps, photographs, diagrams, and chemical or physical analysis, or for expert advice or opinion; the cost of obtaining copies of any public records; and the cost of depositions and court reporters or recorded statements, provided, however, that Allocated Loss Adjustment Expense shall not include the salaries and traveling expenses of the Company's employees (except for amounts allocated to a specific claim by any of the Company's Field Litigation Offices or Legal Services Offices), or the Company's overhead and adjusters' fees.

"Claim Administration Expense" shall mean the amounts the Company and the Claims Adjusting Service determine are needed to cover expenses of administering claims under the Policies.

"Company Expenses" shall mean that amount the Company determines it needs to cover its expenses to administer the Insured's casualty insurance program pursuant to the Policies, including but not limited to the following:
    a.  general and administrative expense;
    b.  insurance charges;
    c.  premium taxes;
    d.  variable expenses, including but not limited to residual market assessments, boards and bureaus, non-subject state surcharges and assessments and other related fees; and
    e.  other services provided by the Company.

"Deductible Premium" shall mean the premium after the application of the deductible credit factor, as shown on the Workers' Compensation Deductible Policies.

"Insured's Obligation" shall mean all amounts the Insured is or may in the future be required to pay or to reimburse to the Company pursuant to this Agreement or the Policies. The amount of the Insured's Obligation shall be calculated by the Company based on Ultimate Losses.

"Interest Charge" shall mean the amount of interest for which the Insured is liable to the Company, payable at the monthly rate of one and one-half percent (1.5%) (or, if such rate is impermissible under applicable law, the maximum lawful, non-usurious rate that may be charged) on any amount payable by the Insured to the Company under this Agreement, but not paid by the Insured by the Required Payment Date, said charge to commence on the day next following the Required Payment Date for any such unpaid amount.

MULTTPA
12/18/98

3

"Paid Losses" shall mean all amounts paid for losses (exclusive of Allocated Loss Adjustment Expense) under the Policies; provided, however, that the amount payable or reimbursable by the Insured for each Paid Loss shall be subject to the amount of the deductible as provided in the respective Policies.

"Required Payment Date" shall mean a date not later than ten (10) calendar days after the date of the Company's invoice for any amount billed by the Company to the Insured under this Agreement.

"Ultimate Losses" shall mean losses incurred under the Policies within the respective deductibles plus future loss development and the amount of losses incurred but not reported, as estimated by the Company. Ultimate Losses may include Allocated Loss Adjustment Expense as estimated by the Company.

## ARTICLE III

## PAID LOSS DEPOSIT FUND

As of the effective date of this Agreement, and of each Addendum hereto, the Insured will be required to pay the Company, on or before the Required Payment Date therefor, the amount specified as "Initial Paid Loss Deposit Fund" in each respective Addendum. Such payments will establish and initially fund, for the Policies listed on each of the respective Addenda, a Paid Loss Deposit Fund. Each of such "Initial Paid Loss Deposit Fund" amounts shall represent the Company's estimate of the average amount the Company will pay under the Policies listed on the respective Addenda during a sixty (60) day period for the amount of the Insured's share of (a) Paid Losses (b) Allocated Loss Adjustment Expense, and (c) Claim Administration Expense.

In the event of any single payment of a large Paid Loss and/or Allocated Loss Adjustment Expense under any Policy in an amount equal to or greater than the amount specified as "Single Payment of Paid Loss and/or Allocated Loss Expense" on the Addendum on which such Policy is listed, the Company shall have the right to require the Insured to pay immediately the amount of such single payment into the Paid Loss Deposit Fund.

The Company may from time to time recalculate the required amount of any Paid Loss Deposit Fund, based upon the Company's revised estimate of the average of the amounts it will pay as described above, and require the Insured to adjust the amount of such Paid Loss Deposit Fund accordingly, provided, that the minimum required amount of each Paid Loss Deposit Fund shall be $1,000.

## ARTICLE IV

## SECURITY FOR INSURED'S OBLIGATION

MULTTPA
12/18/98

4

As security for payment of the Insured's Obligation under this Agreement, the Insured will provide to the Company, as beneficiary thereof, a clean irrevocable evergreen letter of credit (hereinafter, the "LOC") issued by a bank or other financial institution, and in an amount and form, acceptable to the Company; and/or such other forms of collateral as the Insured and the Company may agree in writing from time to time.

The Insured will continue to provide the Company with an LOC (and/or other collateral) as security for payment of the Insured's Obligation, until the Company determines that there is no longer any need for security. If there shall be a material deterioration in the financial condition of the bank or other financial institution which has issued the LOC, the Company shall have the right to require the Insured to replace the LOC with a new LOC issued by a bank or other financial institution then acceptable to the Company.

The Company shall have the right to draw against the LOC and/or other collateral in each instance where the Insured's Obligation, or any portion thereof, for any reason is not fulfilled.

Not less than thirty days prior to any termination or expiration of the LOC, the Insured will deliver to the Company a replacement LOC in an amount and form acceptable to the Company, issued by a bank or other financial institution acceptable to the Company.

Annually, the Company shall review and redetermine the amount of the Insured's Obligation and the amount of collateral security required pursuant to this article. At such time, the Insured will provide audited financial statements, interim financial statements, and any other financial information requested by the Company for the purpose of evaluating the financial condition of the Insured. The Insured will provide any needed increases in the amount of the LOC (and/or other collateral if acceptable to the Company) within thirty days of the Company's request for any additional required amount of the LOC. The Company will effect any decreases in the amount of the LOC (and/or other collateral) promptly, provided that the Insured is not in breach of any of its obligations under this Agreement or any of the Policies.

If the Insured fails to provide the Company with a replacement LOC or to provide the Company with any additional required amount of the LOC (and/or other collateral if acceptable to the Company), the Company will have the right to draw the full amount of the existing LOC and/or other collateral. The Insured recognizes that the Company may continue to require collateral as security for the payment of the Insured's Obligation after any cancellation, non-renewal, conversion or replacement of the Policies.

The Insured agrees that the Company shall have no obligation to remit to the Insured or to apply in reduction of the Insured's Obligation any increase or profits (including without limitation any interest or money) received by the Company from the proceeds of any LOC or from any other collateral provided by the Insured.

The Insured and the Company agree that nothing in this Agreement will constitute or be construed as a waiver of any rights the Company may have in each instance in which the Insured's Obligation for any reason is not fulfilled.

## ARTICLE V

## CANCELLATION/TERMINATION OF THE POLICIES

Cancellation of the Policies or any Policy by either the Insured or the Company will not terminate this Agreement. The parties' rights, duties and obligations under this Agreement will continue after any cancellation, non-renewal or replacement of the Policies.

This Agreement shall continue in full force and effect until the Company and the Insured mutually agree that it shall terminate.

## DIVIDEND CONSIDERATION

The Board of Directors for one or more of the companies that are parties to this Agreement may declare dividends in accordance with the provisions for participating companies on some of the policies under this agreement. The applicability of any and all dividends will be described in greater detail in the respective Addendum hereto.

## ARTICLE VI

1.    **Applicable Law.**  This Agreement shall be governed by and construed in accordance with the laws of the Commonwealth of Pennsylvania.  No amendments or modification of this Agreement shall have any force or effect unless in writing and signed by the parties hereto.

2.    **Successors and Assigns.**  All the terms of this Agreement shall be binding upon and inure to the benefit of and be enforceable by the parties hereto and their respective successors and assigns, whether so expressed or not; provided, however, that no party hereto shall assign or otherwise transfer any of its rights or obligations hereunder without the prior written consent of the other parties hereto.

3.    **Severability.**  Any provision hereof which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or enforceability without invalidating the remaining provisions and without affecting the validity or enforceability of such provision in any other jurisdiction.

4.    **Counterparts.** This Agreement may be executed in any number of counterparts, each of which shall be deemed to be an original, and all of which together shall constitute but one and the same instrument.

5.    **Arbitration.** Any controversy, dispute, claim or question arising out of or relating to this Agreement, including without limitation its interpretation, performance or non-performance by any party, or any breach thereof (hereinafter, collectively, "Controversy") shall be referred to and resolved exclusively by three arbitrators through private, confidential arbitration conducted in Philadelphia, PA. Such arbitrators shall be disinterested, neutral individuals who have experience and qualifications in the subject matter of the Controversy. One arbitrator shall be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within thirty (30) days after receipt of written notice from the other party requesting it to do so, the requesting party may choose a total of two arbitrators who shall choose the third. If the arbitrators fail to select the third arbitrator within ten (10) days after both have been named, each arbitrator shall name three candidates, of whom the other shall decline two, and the decision shall be made by drawing lots. In the event of the death, disability or incapacity of any arbitrator, a replacement shall be named pursuant to the process, which resulted in the selection of the arbitrator to be replaced. The arbitrators may abstain from following the strict rules of law, and shall make their decision with regard to the custom and usage of the insurance business as at the effective date of this Agreement. The majority decision of the panel shall be final and binding upon the parties to this Agreement. Judgment may be entered upon the award of the arbitrators in any court of competent jurisdiction. Except as otherwise specifically provided in this paragraph, the arbitration of any controversy shall be conducted in accordance with the Commercial Arbitration Rules of the American Arbitration Association.

**IN WITNESS WHEREOF,** this Multi-Line Deductible Agreement has been executed by the parties hereto, to be effective on the date first written above.

Delphi Automotive Systems, Inc.                  Pacific Employers Insurance Company
THE INSURED                                      THE COMPANY

Name:  _____                  Name: _____
                                                        Ric Pena

Title:  RISK MANAGER                             Title: Senior Vice President

Date:  06/19/2002                                Date:  6 24 02

# 2000 ADDENDUM TO
## MULTI-LINE DEDUCTIBLE PROGRAM AGREEMENT
### (the "Addendum")

### for Delphi Automotive Systems Corporation

### Effective October 1, 2000

The terms and conditions stated in this **2000** Addendum apply only to the Policies listed below.  All other terms and conditions of the Agreement are here incorporated by reference in their entirety.

### Policy Listing

**DEDUCTIBLE POLICIES**

| Policy Number | Policy Period | Deductible Limit | Issuing Company |
|---|---|---|---|
| GENERAL LIABILITY HDOG20307043 | 10/01/2000 to 10/01/2001 | $1,000,000 | *Pacific Employers Insurance Company |
| AUTOMOBILE LIABILITY ISAHO7682360 | 10/01/2000 to 10/01/2001 | $1,000,000 | *Pacific Employers Insurance Company |
| WORKERS' COMPENSATION WLRC43013191 WLRC4301299A WLRC43013038 | 10/01/2000 to 10/01/2001 | $2,000,000 Workers' Compensation ($1,240,000 in Minnesota) $1,000,000 Employers Liability | *Pacific Employers Insurance Company |
| | | | * denotes Participating Compan |

## WORKERS' COMPENSATION DEDUCTIBLE POLICIES

**1. Company Expenses:**  Commencing on the effective date of this Addendum and for five months thereafter, the Insured will make a monthly payment to the Company by the Required Payment Date related to the above listed Workers' Compensation Deductible Policies.  The first such payment shall be **$24,213.13**  and the five subsequent payments shall be **$20,095.97**  each. The total of all payments shall be the initial Company Expenses.

**2. Recalculation of Company Expenses:** At the time of audit, the Company will recalculate and the Insured will pay Company Expenses related to the Workers' Compensation Deductible Policies based on the following components:

    a.   **$80,000** flat charge – not subject to adjustment; plus
    b.   **$30,000** flat charge.

**3. Allocated Loss Adjustment Expense:**  For the Workers' Compensation Policies listed on this Addendum, the Insured will pay or will reimburse the Company for all Allocated Loss Adjustment Expense related to Claims under the Policies.

## GENERAL LIABILITY DEDUCTIBLE POLICIES/ AUTOMOBILE LIABILITY DEDUCTIBLE POLICIES

**1.  General Liability Premium and Automobile Liability Premium:**  Commencing on the effective date of this Addendum and for five months thereafter, the Insured will make a monthly payment to the Company by the Required Payment Date related to the above listed General Liability Policies and Automobile Liability Policies.  The first such] payment shall be **$44,000** and the five subsequent payments shall be **$13,200** each.

**2.  Adjustment of General Liability and Automobile Liability Premium:**   The General Liability and Automobile Liability premiums are flat charges and not subject to adjustment.

**3.  Allocated Loss Adjustment Expense**: For General Liability and Automobile Liability, the Insured's share of the Allocated Loss Adjustment Expense is stated on the respective Policies listed in this Addendum.

## CLAIM ADMINISTRATION EXPENSE:

The Company will engage **Sedgwick CMS**  (the "Claims Adjusting Service") to investigate, adjust, settle and provide for the defense of claims in all states, except the Designated Adjuster states listed below and Texas, arising under the Policies listed on this Addendum.  The Insured and the Claims Adjusting Service will separately contract to effectuate recovery dollars for any appropriate claim.

MULTTPA
12/18/98

9

The Company will provide such claims adjusting services for claims arising in the Designated Adjuster States.

The Insured will pay to the Company the Claim Administration Expense, comprised of:
  (i)   Claim Handling Fee incurred according to actual claims count, at prices set forth in fee schedules, below;
  (ii)  Claim Supervision Fee.

Claim Handling Fees are set forth in the following fee schedules:

  (1)  For Designated Adjuster States ( Idaho, Maryland, Oregon and Virginia) and Texas:

| TYPE OF CLAIMS | FEE PER CLAIM |
|---|---|
| Workers' Compensation - Medical Only | $135 |
| Workers' Compensation - Indemnity | $945 – first two years claim is open $900 annual charge thereafter |
| Workers' Compensation - Managed Medical Only | $445 |

  (2)  For all states other than Designated Adjuster States listed above: (As outlined in Claim Service Agreement with ~~Crawford~~ Sedgwick – Exhibit A attached) (nwg) R.P.

As used in this Addendum, the following terms shall be defined as set forth below:

"Indemnity" shall mean any claim for which benefits may be payable under a Policy (I) to repay all or a portion of wages lost due to a compensable injury or disease and/or (ii) to compensate for disfigurement.

"Medical Only" shall mean any claim other than Indemnity, including claims for which the claimant did not receive lost wage payments from the Company.

"Managed Medical Only'" shall mean any claim other than Indemnity, including claims for which the claimant did not receive lost wage payments from the Company, for which the total accumulated amount of medical payments by the Company exceeded $1,000.

MULTTPA
12/18/98

10

**IN WITNESS WHEREOF,** this **2000** Addendum to the Multi-line Deductible Program Agreement dated **October 1, 2000** has been duly executed by the parties hereto, each of which intends by its execution hereof to be legally bound by the terms of this Addendum and of the Agreement.

<u>**Delphi Automotive Systems Corporation**</u>    <u>**Pacific Employers Insurance Company**</u>

THE INSURED                    THE COMPANY

By ; _____    By _____

                                   Ric Pena

Title: _____    Title: <u>Senior Vice President</u>

Date: _____    Date: 6/24/02

**2001 ADDENDUM TO**
**MULTI-LINE DEDUCTIBLE PROGRAM AGREEMENT**
**(the "Addendum")**

for **Delphi Automotive Systems Corporation**

Effective <u>October 1, 2001</u>

The terms and conditions stated in this **2001** Addendum apply only to the Policies listed below.  All
other terms and conditions of the Agreement are here incorporated by reference in their entirety.

**Policy Listing**

| DEDUCTIBLE POLICIES | | | |
|---|---|---|---|
| **Policy Number** | **Policy Period** | **Deductible Limit** | **Issuing Company** |
| GENERAL LIABILITY HDOG20307043 | 10/01/2001 to 10/01/2002 | $1,000,000 | *Pacific Employers Insurance Company |
| AUTOMOBILE LIABILITY ISAHO7682360 | 10/01/2001 to 10/01/2002 | $1,000,000 | *Pacific Employers Insurance Company |
| WORKERS' COMPENSATION WLRC43111322 WLRC43111449 WLRC4311136A | 10/01/2001 to 10/01/2002 | $2,000,000 Workers' Compensation ($1,240,000 in Minnesota) $1,000,000 Employers Liability | *Pacific Employers Insurance Company |
| | | | **\* denotes Participating Company** |

## WORKERS' COMPENSATION DEDUCTIBLE POLICIES

**1. Company Expenses:**  Commencing on the effective date of this Addendum and for five
months thereafter, the Insured will make a monthly payment to the Company by the Required
Payment Date related to the above listed Workers' Compensation Deductible Policies.  The first
such payment shall be **$27,245**  and the five subsequent payments shall be **$21,793**  each.  The
total of all payments shall be the initial Company Expenses.

**2. Recalculation of Company Expenses:** At the time of audit, the Company will recalculate and the Insured will pay Company Expenses related to the Workers' Compensation Deductible Policies based on the following components:

    a. **$92,000 flat charge** – not subject to adjustment; plus
    b. **$30,000 flat charge.**

**3. Allocated Loss Adjustment Expense:** For the Workers' Compensation Policies listed on this Addendum, the Insured will pay or will reimburse the Company for all Allocated Loss Adjustment Expense related to Claims under the Policies.

## GENERAL LIABILITY DEDUCTIBLE POLICIES/ AUTOMOBILE LIABILITY DEDUCTIBLE POLICIES

**1. General Liability Premium and Automobile Liability Premium:** Commencing on the effective date of this Addendum and for five months thereafter, the Insured will make a monthly payment to the Company by the Required Payment Date related to the above listed General Liability Policies and Automobile Liability Policies. The first such payment shall be **$44,000** and the five subsequent payments shall be **$13,200** each.

**2. Adjustment of General Liability and Automobile Liability Premium:** The General Liability and Automobile Liability premiums are flat charges and not subject to adjustment.

**3. Allocated Loss Adjustment Expense:** For General Liability and Automobile Liability, the Insured's share of the Allocated Loss Adjustment Expense is stated on the respective Policies listed in this Addendum.

## CLAIM ADMINISTRATION EXPENSE:

The Company will engage **Sedgwick CMS** (the "Claims Adjusting Service") to investigate, adjust, settle and provide for the defense of claims in all states, except the Designated Adjuster states listed below and Texas, arising under the Policies listed on this Addendum. The Insured and the Claims Adjusting Service will separately contract to effectuate recovery dollars for any appropriate claim.

The Company will provide such claims adjusting services for claims arising in the Designated Adjuster States.

The Insured will pay to the Company the Claim Administration Expense, comprised of:
    (i) Claim Handling Fee incurred according to actual claims count, at prices set forth in fee schedules, below;

2

(ii)  Claim Supervision Fee.

Claim Handling Fees are set forth in the following fee schedules:

(1)  For Designated Adjuster States (Idaho, Maryland, Oregon and Virginia) and Texas:

| TYPE OF CLAIMS | FEE PER CLAIM |
|---|---|
| Workers' Compensation - Medical Only | $135 |
| Workers' Compensation - Indemnity | $1,000 |
| Workers' Compensation - Managed Medical Only | $500 |

(2)  For all states other than Designated Adjuster States listed above: (As outlined in Claim Service Agreement with ~~Crawford~~ Sedgwick Exhibit A attached)  ~~_(illegible initials)_~~  R.P.

As used in this Addendum, the following terms shall be defined as set forth below:

"Indemnity" shall mean any claim for which benefits may be payable under a Policy (I) to repay all or a portion of wages lost due to a compensable injury or disease and/or (ii) to compensate for disfigurement.

"Medical Only" shall mean any claim other than Indemnity, including claims for which the claimant did not receive lost wage payments from the Company.

"Managed Medical Only'" shall mean any claim other than Indemnity, including claims for which the claimant did not receive lost wage payments from the Company, for which the total accumulated amount of medical payments by the Company exceeded $1,000.

**IN WITNESS WHEREOF,** this **2001** Addendum to the Multi-line Deductible Program Agreement dated **October 1, 2000** has been duly executed by the parties hereto, each of which intends by its execution hereof to be legally bound by the terms of this Addendum and of the Agreement.

**Delphi Automotive Systems Corporation**
THE INSURED

By ; _Mike W. Bol_

Title: _Risk Manager_

Date: _06/19/2002_

**Pacific Employers Insurance Company**
THE COMPANY

By _Ric Pena_
Ric Pena

Title: Senior Vice President

Date: _6/24/02_

MULTTPA
12/18/98

4

**EXHIBIT C**

# ESTIMATED LIABILITY UNDER
# ASSUMED AGREEMENTS

**Table Of The Debtors' Estimated Liability
Under The Assumed Agreements (12/16/05)**

| Confidence Interval | Workers' Compensation ("WC") Liability | General Liability | Products Liability | Automobile Liability | Total Liability | Cure Claim (Debtors paying WC Liability)* | Cure Claim (Debtors not paying WC Liability)* |
|---|---|---|---|---|---|---|---|
| 5% | $1,485,079 | $2,973,547 | $4,979,140 | $229,002 | $9,666,768 | $0 | $0 |
| 10% | $1,794,771 | $3,529,913 | $5,904,383 | $295,208 | $11,524,275 | $0 | $0 |
| 15% | $2,028,288 | $3,909,658 | $6,590,136 | $343,950 | $12,872,032 | $0 | $0 |
| 20% | $2,221,683 | $4,213,186 | $7,119,137 | $387,312 | $13,941,318 | $0 | $0 |
| 25% | $2,387,475 | $4,501,997 | $7,554,118 | $428,105 | $14,871,695 | $0 | $0 |
| 30% | $2,557,075 | $4,772,246 | $7,940,131 | $464,789 | $15,734,241 | $0 | $0 |
| 35% | $2,695,285 | $5,002,833 | $8,303,871 | $498,493 | $16,500,482 | $0 | $0 |
| 40% | $2,837,116 | $5,228,215 | $8,647,565 | $533,505 | $17,246,401 | $0 | $0 |
| 45% | $2,968,482 | $5,441,121 | $8,972,499 | $567,024 | $17,949,126 | $0 | $0 |
| 50% | $3,105,979 | $5,653,289 | $9,303,754 | $600,160 | $18,663,182 | $0 | $0 |
| 55% | $3,229,015 | $5,857,427 | $9,601,748 | $634,658 | $19,322,848 | $0 | $222,848 |
| 60% | $3,372,778 | $6,060,624 | $9,923,111 | $671,602 | $20,028,115 | $0 | $928,115 |
| 65% | $3,512,633 | $6,265,443 | $10,212,688 | $709,550 | $20,700,314 | $0 | $1,600,314 |
| 70% | $3,648,083 | $6,482,903 | $10,513,144 | $744,820 | $21,388,950 | $0 | $2,288,950 |
| 75% | $3,794,438 | $6,711,761 | $10,797,688 | $788,040 | $22,091,927 | $0 | $2,991,927 |
| 80% | $3,954,709 | $6,937,001 | $11,087,255 | $832,177 | $22,811,142 | $0 | $3,711,142 |
| 85% | $4,128,936 | $7,179,454 | $11,424,918 | $883,412 | $23,616,720 | $387,784 | $4,516,720 |
| 90% | $4,349,517 | $7,457,922 | $11,785,575 | $942,083 | $24,535,097 | $1,085,580 | $5,435,097 |
| 95% | $4,598,217 | $7,796,325 | $12,244,125 | $1,023,081 | $25,661,748 | $1,963,531 | $6,561,748 |
| 99% | $4,981,411 | $8,260,582 | $12,761,989 | $1,157,244 | $27,161,226 | $3,079,815 | $8,061,226 |

| *Selected Estimate*** | *$3,163,311* | *$5,924,382* | *$10,141,789* | *$580,337* | *$19,809,819* | *$0* | *$709,819* |
|---|---|---|---|---|---|---|---|

*  The Debtors currently have $19.1 million in collateral posted with the Insurers.

** The selected estimates are based on a review performed by Aon's Actuarial and Analytics Practice.
   The estimated liability is approximately at the 58th percentile for the total of all coverages.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                        :
        In re                           :    Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :    Case No. 05-44481 (RDD)
                                        :
                         Debtors.       :    (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

AFFIDAVIT OF WILLIAM D. TELGEN IN SUPPORT OF MOTION
FOR ORDER UNDER 11 U.S.C. §§ 362, 363, 365, 1107, AND 1108
AUTHORIZING RENEWAL OF INSURANCE COVERAGE
AND CERTAIN RELATED RELIEF

State of Michigan       )
                        )  s.s.:
County of Oakland       )

William D. Telgen, being duly sworn, deposes and says:

1.      I am the Risk Manager for Delphi Corporation ("Delphi"), debtor

and debtor-in-possession in the above-captioned chapter 11 cases.  I am familiar with the

Debtors' operations, their insurance policies generally, their relationship and agreements

with ACE American Insurance Company and its affiliates (collectively, the "Insurers"),

the Agreements (as defined below), and the market for insurance of the types provided by

the Insurers pursuant to the Insurance Policies (as defined below).  I have held this

position with Delphi since September 1, 2005 and have worked in the automotive

industry on insurance and risk management issues for more than 11 years.  I have a

Masters of Business Administration from University of Detroit-Mercy, and a Bachelors

Degree in Chemical Engineering from the University of Michigan.

2.      I submit this affidavit in support of Delphi's Motion For An Order

Under 11 U.S.C. §§ 362, 363, 365, 1107, And 1108 Authorizing Renewal of Insurance

Coverage And Certain Related Relief, dated December 16, 2005 (the "Motion").

Capitalized terms not otherwise defined herein have the meanings ascribed to them in the

Motion.  Except as otherwise indicated, I have personal knowledge of the matters set

forth herein and, if called as a witness, would testify competently thereto.  I am

authorized to submit this affidavit.

3.      Relief Sought.  Pursuant to the Motion, the Debtors seek entry of

an Order authorizing, but not directing, the Debtors to renew or enter into new insurance

policies with the Insurers and to execute and deliver all related documents and

agreements.  The Debtors also request authority to assume the agreements and policies

2

between Delphi and the Insurers (collectively, the "Agreements"), including but not

limited to the following:

    (a)    that certain Multi-Line Deductible Program Agreement effective as of October 1, 2000 by and between Pacific Employers Insurance Company and Delphi (formerly known as Delphi Automotive Systems Corporation) and all amendments and addenda thereto (collectively, the " Multi-Line Deductible Program Agreement");

    (b)    All General Liability Policies issued to Delphi or the other Debtors by one or more of the Insurers and all renewals, extensions, and endorsements thereto (collectively, the "General Liability Policy");

    (c)    All Automobile Liability Policies issued to Delphi or the other Debtors by one or more of the Insurers and all renewals, extensions, and endorsements thereto (the "Automobile Liability Policy");

    (d)    All Workers' Compensation Policies issued to Delphi or the other Debtors by one or more of the Insurers and all renewals, extensions, and endorsements thereto (the "Workers' Compensation Policy" and, collectively with the General Liability Policy and the Automobile Liability Policy, the "Insurance Policies");

    (e)    the binder related to the Insurance Policies; and

    (f)    the claims administration agreements related to the Insurance Policies.

    4.    The Debtors also have agreed, as a condition of the Insurers'

willingness to provide renewals of the Insurance Policies, that they will seek to replace

the Cash Collateral with the New Letter of Credit.

    5.    As a condition of the Insurers' willingness to provide renewals of

the Insurance Policies, the Debtors seek certain additional relief.  Specifically, the

Debtors request that the Court: (a) authorize, but not direct, the Debtors to renew or enter

into insurance policies and to execute all related documents and agreements between the

Debtors and the Insurers pursuant to section 363 of the Bankruptcy Code; (b) authorize,

3

but not direct, the Debtors to agree to future renewals of the insurance programs and to provide collateral and security pursuant to any such programs without further order of this Court; (c) authorize the Insurers to draw against the Collateral, apply the Collateral to the Debtors' obligations under the Agreements, and take other actions permitted under applicable non-bankruptcy law and in accordance with the Agreements without further order of this Court (upon prior written notice, not to exceed five business days, to the Debtors and counsel for the official committee of unsecured creditors (the "Creditors' Committee"), if and to the extent that prior notice is required by the applicable rules of this Court; provided that no notice shall be required for draws under letters of credit due to the expiration or non-renewal thereof); (d) authorize relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code, conditioned on the assumption of the Agreements, for the sole and limited purpose of effectuating the relief described in subparagraph (c) above; (e) confirm, conditioned upon the assumption of the Agreements, administrative priority treatment for all payment and reimbursement obligations owing to the Insurers under the Agreements; (f) confirm, conditioned on the assumption of the Agreements, that the Insurers' claims with respect to the Agreements will be paid by the Debtors in the ordinary course of their businesses; and (g) confirm that the Agreements and an order of this Court approving this Motion shall not be altered by any plan of reorganization confirmed in these chapter 11 cases or by subsequent order of this Court.

       6.      <u>Expiration of policies; efforts to replace</u>.  Prior to the Petition Date, the Debtors were faced with the expiration of the policy period of certain insurance policies provided by the Insurers, which expired by their terms on September 30, 2005. The Insurance Policies provided the Debtors with the first tier of a layered insurance program.  The failure by the Debtors to renew such policies or to enter into replacement

policies would have left the Debtors and their estates exposed to significant potential

liabilities.  To avoid this exposure, the Debtors explored their options with respect to such

renewal or replacement policies and determined that entry into the Insurance Policies

represented the Debtors' best option and, therefore, that it was in their best interests to

renew the Insurance Policies and enter into that certain Amendment 1 to the Multi-Line

Deductible Program Agreement (the "Amendment").

     7.  The Insurers were willing to provide a term continuing only

through January 1, 2006 under each Insurance Policy, however, and insisted upon

Delphi's agreement to the terms of the Amendment as a condition to their willingness to

provide the Debtors with the insurance coverage embodied in the Insurance Policies.  In

addition to extending the insurance coverage under substantially the same terms as had

previously existed, the Amendment, among other terms, requires that the Debtors seek

approval of the relief sought in the Motion as a condition precedent to the Insurers'

agreement to provide any renewal of the Insurance Policies beyond January 1, 2006.

Because of the need to obtain the relief requested in the Motion, the Debtors and the

Insurers agreed to enter into a 90-day extension of the Amendment that currently extends

coverage from January 1, 2006, through April 1, 2006 (the "Extension") to allow time for

the Insurers to complete their binding offer for coverage through September 30, 2006.

The parties intend to cancel the Extension upon the renewal or entry into new insurance

policies.

     8.  Subsequent to the Petition Date, the Debtors have actively sought

competitive bids for replacement of the Insurance Policies covering the nine-month

period beginning January 1, 2006.  Unfortunately, because of the size and breadth of the

Debtors' needs, only a limited number of insurance companies have the ability and/or

willingness to provide policies that would be suitable to replace the Insurance Policies.

        9.    <u>Analysis of options</u>.  The Debtors have evaluated their options and

selected the Insurers' proposal as the best option.  Among other terms, the Insurers'

proposal for insurance coverage for the period January 1, 2006 through September 30,

2006 requires that the Debtors pay a premium of approximately $1.98 million and post

approximately $9.31 million of collateral, in addition to the collateral previously posted

prepetition.

        10.    The Debtors have sought the professional advice of their insurance

broker, Aon Risk Services ("Aon"), to provide, among other things, an estimate of the

Debtors' liability under the Agreements, which subsequently can be used to estimate the

value of the Insurers' potential cure claim stemming from the Debtors' assumption of the

Agreements.  As of the date of the Motion, the Debtors submit that there are no defaults

under the Agreements.  The calculations provided by Aon are based on a snap-shot of the

data at the time the Motion was filed.  In addition, the estimates contain a high level of

variance.  Nevertheless, Aon's calculations are the best information available to the

Debtors at this time, and the Debtors factored the uncertainty of these estimates into their

analysis and evaluation of the Debtors' options for insurance coverage.

        11.    The Insurers currently hold $19.1 million in collateral and security

posted by the Debtors (the "Collateral"), which is comprised of an irrevocable letter of

credit in the amount of approximately $13.7 million (the "Letter of Credit") and cash

collateral of $5,388,967 (the "Cash Collateral").  The Collateral was provided to the

Insurers prior to the Petition Date.  In analyzing the size of the Insurers' potential cure

claim, the Debtors analyzed the likelihood that the cure claim exceeds the Collateral.  In

6

addition, the Debtors took the potential cure amount into account when comparing the
Insurers' bid against the Debtors' other options.

12.    If the Debtors were to continue paying the prepetition workers'
compensation claims, the estimated liability to the Insurers arising from the Agreements
(as described in paragraph 22 of the Motion) would be approximately $16.6 million.  This
estimate falls between the 55 and 60 percent confidence interval.[1]  Aon's estimate is more
conservative than the median liability, which by definition, would be represented by the
50 percent confidence interval.  Because that estimated liability to the Insurers is less
than the value of the Collateral, the Debtors estimate that Insurers' cure claim would be
zero.

13.    Under the Human Capital Obligations Order, however, the Debtors
are not required to continue paying their prepetition workers' compensation liability
claims.  If the Debtors were to stop paying these claims, Aon estimates that the liability
arising from the indemnification provision would increase by $3.3 million, to
approximately $19.8 million.  With $19.1 million of prepetition collateral posted, the
estimated amount of the Insurers' potential cure claim would therefore be approximately
$700,000.

14.    Because this calculation has a high rate of variance, the Debtors
project that their liability under the Agreements ranges from $8.2 million to $22.2 million
if the Debtors were to continue paying workers' compensation claims and from $9.7
million to $27.2 million if they were to stop paying workers' compensation claims.

---

[1]    Confidence interval is a statistical range with a specified probability that a given
parameter lies within that range.  Applied in this context, the confidence interval
provides the probability that the estimated liability to the Insurers is less than or
equal to $X.

7

Under the worst case scenario projected by these estimates (i.e., the 99 % confidence interval that liability will not exceed these amounts), the Insurers could draw on all of the collateral posted and still have a cure claim of approximately $8.1 million, again assuming that the Debtors were to stop paying prepetition workers' compensation claims. If the Debtors continue paying workers' compensation claims, the liability to the Insurers would fall by approximately $5.0 million, and the Debtors' estimated liability to the Insurers would be approximately $22.2 million, resulting in a 1% chance that the cure claim would equal or exceed approximately $3.1 million.

15.    The Debtors have attempted to negotiate a waiver of the requirements of the Amendment, so as to obviate the need for the assumption of the Agreements.  The Insurers, however, have refused to waive the assumption requirement in the Amendment.  Therefore, I believe that the relief sought in the Motion is necessary because the Insurers' proposal, even including the estimated costs associated with assuming the Agreements, is more attractive than the Debtors' other options.  Without the relief sought by the Motion, the Insurers stated that they would not be willing to renew the Insurance Policies.  This failure to renew would severely limit the Debtors' potential sources of insurance, and without a viable source of alternative insurance, the Debtors anticipate that their insurance costs would substantially increase following the expiration of the Insurance Policies.

16.    The Debtors also have considered the possibility of self-insuring this layer of liability and thus foregoing any replacement insurance policies as of January 1, 2006.  The Debtors have determined, however, that such action would impose too much risk upon the estates.  The Debtors' failure to secure a renewal of the Insurance Policies or replacement policies would expose the Debtors' estates to the risk of putting

8

the Debtors in violation of statutory and contractual insurance requirements in certain

states where the Debtors have on-going operations.  Therefore, I believe that renewal of

the Insurance Policies or entry into replacement insurance policies is necessary and in the

Debtors' best interests.

        17.    <u>Replacement of cash collateral with new letter of credit</u>.  The

Debtors have also agreed, as a condition of the Insurers' willingness to provide renewals

of the Insurance Policies, that they will seek to replace the Cash Collateral with an

irrevocable letter of credit in the same amount as the Cash Collateral, in form and

substance acceptable to the Insurers, and issued by a financial institution acceptable to the

Insurers (the "New Letter of Credit").  Although the Debtors recognize that this

transaction involves the use of assets of the estate to secure a prepetition claim, the

Debtors believe that the issuance of the New Letter of Credit is in the best interest of the

Debtors and their estates because a draw on a letter of credit is significantly cheaper for

the Debtors than continuing to maintain the Cash Collateral.

        18.    <u>Additional requirements under the Amendment</u>.  Furthermore,

pursuant to the Amendment, the Debtors have also agreed, as a condition of the Insurers'

willingness to provide renewals of the Insurance Policies, that they will seek the

following additional relief, and hereby request that the Court: (a) authorize, but not direct,

the Debtors to renew or enter into insurance policies and to execute all related documents

and agreements between the Debtors and the Insurers pursuant to section 363 of the

Bankruptcy Code; (b) authorize, but not direct, the Debtors to agree to future renewals of

the insurance programs and to provide collateral and security pursuant to any such

programs without further order of this Court;[2] (c) authorize the Insurers to draw against the Collateral, apply the Collateral to the Debtors' obligations under the Agreements, and take other actions permitted under applicable non-bankruptcy law and in accordance with the Agreements without further order of this Court (upon prior written notice, not to exceed five business days, to the Debtors and counsel for the Creditors' Committee, if and to the extent that prior notice is required by the applicable rules of this Court; provided that no notice shall be required for draws under letters of credit due to the expiration or non-renewal thereof); (d) authorize relief from the automatic stay pursuant to section 362(d) of the Bankruptcy Code, conditioned on the assumption of the Agreements, for the sole and limited purpose of effectuating the relief described in subparagraph (c) above; (e) confirm, conditioned upon the assumption of the Agreements, administrative priority treatment for all payment and reimbursement obligations owing to the Insurers under the Agreements; (f) confirm, conditioned on the assumption of the Agreements, that the Insurers' claims with respect to the Agreements will be paid by the Debtors in the ordinary course of their businesses; and (g) confirm that the Agreements and an order of this Court approving the Motion will not be altered by any plan of reorganization confirmed in these chapter 11 cases or by subsequent order of this Court.

19.    In the ordinary course of business, the Debtors routinely enter into new insurance policies and post collateral as a condition precedent to binding the Insurers to the terms of such insurance policies.

---

[2]    The Debtors believe that entering into new insurance programs and posting collateral as a prerequisite for such programs are ordinary course transactions. Because this condition, however, was listed in the Amendment, the Debtors have agreed to seek authorization for such actions.

20.    I believe that the benefits to the Debtors from the relief sought in

the Motion far outweigh any costs associated with the Motion.


                                        s/ William D. Telgen
                                         WILLIAM D. TELGEN

Sworn to before
me this 16th day
of December 2005

s/ *Barbara L. Rybinski*
Notary Public
State of Michigan
County of Macomb
Commission Expires 12/05/11
Acting in County of Oakland

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                            :
          In re                             :     Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :     Case No. 05-44481 (RDD)
                                            :
                      Debtors.              :     (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

ORDER UNDER 11 U.S.C. §§ 362, 363, 365, 1107, AND 1108
AUTHORIZING RENEWAL OF INSURANCE COVERAGE
AND CERTAIN RELATED RELIEF

("INSURANCE AGREEMENT ORDER")

Upon the motion, dated December 16, 2005 (the "Motion")[1], of Delphi

Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-

in-possession in the above-captioned cases (collectively, the "Debtors"), for an order (the

"Order") under 11 U.S.C. §§ 362, 363, 365, 1107, and 1108 authorizing renewal of

insurance agreements with ACE American Insurance Company and its affiliates

(collectively, the "Insurers") and certain related relief; and upon the Affidavit of William

D. Telgen in Support of the Motion, sworn to December 16, 2005; and upon the record of

the hearing held on the Motion; and after due deliberation thereon, and sufficient cause

appearing therefor,

---

[1]     Capitalized terms not otherwise defined herein shall have the meanings ascribed
        to them in the Motion.

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The Debtors have exercised reasonable business judgment in

seeking authorization to assume the agreements and policies between Delphi and the

Insurers (collectively, the "Agreements") including, but not limited to the following:

(a)     that certain Multi-Line Deductible Program Agreement
effective as of October 1, 2000 by and between Pacific
Employers Insurance Company and Delphi (formerly
known as Delphi Automotive Systems Corporation) and all
amendments and addenda thereto (collectively, the " Multi-
Line Deductible Program Agreement");

(b)     All General Liability Policies issued to Delphi or the other
Debtors by one or more of the Insurers and all renewals,
extensions, and endorsements thereto (collectively, the
"General Liability Policy");

(c)     All Automobile Liability Policies issued to Delphi or the
other Debtors by one or more of the Insurers and all
renewals, extensions, and endorsements thereto (the
"Automobile Liability Policy");

(d)     All Workers' Compensation Policies issued to Delphi or the
other Debtors by one or more of the Insurers and all
renewals, extensions, and endorsements thereto (the
"Workers' Compensation Policy" and, collectively with the
General Liability Policy and the Automobile Liability
Policy, the "Insurance Policies");

(e)     the binder related to the Insurance Policies; and

(f)     the claims administration agreements related to the
Insurance Policies.

B.      The Debtors have also exercised reasonable business judgment in

seeking the additional relief required to enable them to renew their Insurance Policies.

C.      The relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors, and other parties-in-interest.

2

D.     The notice given by the Debtors of the Motion and the hearing thereon constitutes due and sufficient notice thereof.

E.     Good and sufficient cause has been shown for the entry of this Order.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.     The Motion is GRANTED.

2.     The Debtors are hereby authorized, but not directed, to assume the Agreements pursuant to section 365(a) of the Bankruptcy Code, effective as of the date hereof.  The assumption of the Agreements shall be evidenced by written notice from the Debtors to the Insurers.

3.     The Debtors are hereby authorized, but not directed, to renew or enter into insurance policies and to execute all related documents and agreements between the Debtors and the Insurers and to perform their obligations in connection therewith pursuant to section 363 of the Bankruptcy Code.

4.     The Debtors are hereby authorized, but not directed, to replace the $5,388,967 of existing cash collateral (the "Cash Collateral") with a new, irrevocable letter of credit in the same amount as the Cash Collateral, in form and substance acceptable to the Insurers, and issued by a financial institution acceptable to the Insurers (the "New Letter of Credit").  Upon the Insurers' receipt of the New Letter of Credit, the Insurers are directed to return the Cash Collateral to the Debtors promptly thereafter by wire transfer to the Debtors pursuant to the Debtors' written instructions.

5.      The Debtors are hereby authorized, but not directed, to agree to future renewals of the insurance programs and to provide collateral and security pursuant to any such programs without further order of this Court.

6.      The Insurers are hereby authorized, conditioned on the Debtors' assumption of the Agreements, to draw against the collateral, apply the collateral to the Debtors' obligations under the Agreements, and take other actions permitted under applicable non-bankruptcy law and in accordance with the Agreements without further order of this Court (upon prior written notice, not to exceed five business days, to the Debtors and counsel for the official committee of unsecured creditors, if and to the extent that prior notice is required by the applicable rules of this Court; provided that no notice shall be required for draws under letters of credit due to the expiration or non-renewal thereof).

7.      Conditioned on the Debtors' assumption of the Agreements, the automatic stay is hereby lifted pursuant to section 362(d) of the Bankruptcy Code solely for the purpose of effectuating the relief described in paragraph 6 hereof.

8.      Conditioned on the Debtors' assumption of the Agreements, all payment and reimbursement obligations owing to the Insurers from the Debtors under the Agreements are hereby accorded administrative priority status pursuant to section 503(b)(1)(A) of the Bankruptcy Code.

9.      Conditioned on the Debtors' assumption of the Agreements, the Debtors are hereby authorized to pay the Insurers' claims with respect to the Agreements in the ordinary course of their businesses.

10.     Neither the terms of this Order, nor the Agreements, shall be altered by any plan of reorganization confirmed in these chapter 11 cases or by subsequent order of this Court.

11.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

12.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:    New York, New York
          January  __, 2006


_____
UNITED STATES BANKRUPTCY JUDGE

**EXHIBIT F**

**Hearing Date: January 5, 2006 at 10:00 a.m.**
**Objection Deadline: December 29, 2005 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
            In re                                           :    Chapter 11
                                                            :
    DELPHI CORPORATION, et al.,                             :    Case No. 05- 44481 (RDD)
                                                            :
                                Debtors.                    :    (Jointly Administered)
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF MOTION FOR ORDER UNDER 11 U.S.C. §§ 363, 1107, AND 1108
APPROVING PROCEDURES TO ENTER INTO OR RENEW REAL PROPERTY
LEASES WITHOUT FURTHER COURT APPROVAL

PLEASE TAKE NOTICE that on December 16, 2005, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases, filed a motion for an order under 11 U.S.C. §§ 363, 1107, and 1108 approving procedures to enter into new leases or renew existing leases of real property without further Court approval (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Motion will be held on January 5, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing"), before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York, 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance With Local Bankr. R. 1007-2(e) (the "Case Management Order") (Docket No. 245), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format

2

(PDF), WordPerfect, or any other Windows-based word processing format), (d) be

submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain,

United States Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725

Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors,

Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the

Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington

Avenue, New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for the agent

under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New

York, New York 10017 (Att'n:  Marlane Melican), (v) counsel for the Official Committee

of Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York

10022 (Att'n: Mark A. Broude), and (vi) the Office of the United States Trustee for the

Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York

10004 (Att'n:  Alicia M. Leonhard), in each case so as to be **received** no later than **4:00**

**p.m. (Prevailing Eastern Time)** on **December 29, 2005** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth herein and in accordance with the Case Management Order will be considered by the Bankruptcy Court at the Hearing. If no objections to the Motion are timely filed and served in accordance with the procedures set forth herein and in the Case Management Order, the Bankruptcy Court may enter a final order granting the Motion **without further notice.**

Dated: New York, New York
      December 16, 2005

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

4

Hearing Date and Time: January 5, 2006 at 10:00 a.m.
Objection Deadline: December 29, 2005 at 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

　　　- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
　　Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
　　　　　　　　　　　　　　　　　　　　:
　　　　In re　　　　　　　　　　　　　:　　Chapter 11
　　　　　　　　　　　　　　　　　　　　:
DELPHI CORPORATION et al.,　　　　　　:　　Case No. 05-44481 (RDD)
　　　　　　　　　　　　　　　　　　　　:
　　　　　　　　　　　　　Debtors.　　:　　(Jointly Administered)
　　　　　　　　　　　　　　　　　　　　:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER 11 U.S.C. §§ 363, 1107, AND 1108
APPROVING PROCEDURES TO ENTER INTO OR RENEW REAL PROPERTY
LEASES WITHOUT FURTHER COURT APPROVAL

("LEASE PROCEDURES MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. §§ 363, 1107, and 1108 approving procedures to enter into new or renew existing non-residential leases or subleases of real property (each a "Lease," or collectively, the "Leases") without further Court approval.  In support of this Motion, the Debtors respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8, 2005 (the "Petition Date"), 39 of 42 Debtors, and on October 14, 2005, the remaining Debtors, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases (Dockets Nos. 28 and 404).

2.    On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee") in these cases.  No trustee or examiner has been appointed in the Debtors' cases.

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are sections 363, 1107, and 1108 of the Bankruptcy Code.

2

B.       Current Business Operations Of The Debtors

            5.        With more than 180,000 employees worldwide, global 2004

revenues of approximately $28.6 billion, and global assets as of August 31, 2005 of

approximately $17.1 billion,[1] Delphi ranks as the fifth largest public company business

reorganization in terms of revenues, and the thirteenth largest public company business

reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11

debtors, will continue their business operations without supervision from the Bankruptcy

Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy

Code.

            6.        Over the past century, the operations which are now owned by

Delphi have developed leading global technology innovations with significant

engineering resources and technical competencies in a variety of disciplines.  Today, the

Company (as defined below) is arguably the single largest global supplier of vehicle

electronics, transportation components, integrated systems and modules, and other

electronic technology. The Company's technologies and products are present in more

than 75 million vehicles on the road worldwide.  The Company supplies products to

nearly every major global automotive original equipment manufacturer with 2004 sales to

its former parent, General Motors Corporation ("General Motors" or "GM"), equaling

approximately $15.4 billion, and sales to each of Ford Motor Company, DaimlerChrysler

Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding

$850 million.

---

[1]        The aggregated financial data used in this Motion generally consists of
        consolidated information from Delphi and its worldwide subsidiaries and
        affiliates.

3

7.      As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world.  In the U.S., the Debtors employ approximately 50,600 people.  Those employees work in approximately 44 manufacturing sites and 13 technical centers across the country, and in Delphi's worldwide headquarters and customer center located in Troy, Michigan.  Approximately 34,750 of these individuals are hourly employees, 96% of whom are represented by approximately 49 different international and local unions.  Outside the United States, the Company's foreign entities employ more than 134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8.      Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates (collectively, the "Company") in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.      Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results,

4

because supplier selection in the auto industry is generally finalized several years prior to

the start of production of the vehicle.  When awarding new business, which is the

foundation for the Company's forward revenue base, customers are increasingly

concerned with the financial stability of their supply base.  The Debtors believe that they

will maximize stakeholder value and the Company's future prospects if they stabilize

their businesses and continue to diversify their customer base.  The Debtors also believe

that this must be accomplished in advance of  the expiration of certain benefit guarantees

between GM and certain of Delphi's unions representing most of its U.S. hourly

employees which coincides with the expiration of the Company's U.S. collective

bargaining agreements in the fall of 2007.

C.    Events Leading To Chapter 11 Filing

        10.    In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter,

however, with the exception of 2002, the Company has suffered losses.  In calendar year

2004, the Company reported a net operating loss of $482 million on $28.6 billion in net

sales.  Reflective of a downturn in the marketplace, Delphi's financial condition

deteriorated further in the first six months of 2005.  The Company experienced net

operating losses of $608 million for the first six months of calendar year 2005 on six-

month net sales of $13.9 billion, which is approximately $1 billion less in sales than

during the same time period in calendar year 2004.[2]

---

[2]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1
billion tax charge, primarily related to the recording of a valuation allowance on
the U.S. deferred tax assets as of December 31, 2004.

5

11.    The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward looking revenue requirements.  Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses.  This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan.  The Debtors

6

believe that a substantial segment of Delphi's U.S. business operations must be divested,

consolidated, or wound-down through the chapter 11 process.

14.     Upon the conclusion of this process, the Debtors expect to emerge

from chapter 11 as a stronger, more financially sound business with viable U.S.

operations that are well-positioned to advance global enterprise objectives.  In the

meantime, Delphi will marshal all of its resources to continue to deliver value and high-

quality products to its customers globally.  Additionally, the Company will preserve and

continue the strategic growth of its non-U.S. operations and maintain its prominence as

the world's premier auto supplier.

## Relief Requested

15.     Prior to the filing of their chapter 11 cases, the Debtors routinely

entered into non-residential real property Leases and renewed existing Leases. Although

the Debtors believe their entering into or renewing the Leases is within the ordinary

course of their business and that therefore no court approval to continue doing so is

required, out of an abundance of caution, by this Motion, the Debtors request authority

under Bankruptcy Code sections 363(c), 1107, and 1108, to implement procedures by

which the Debtors may enter into or renew the Leases without the need for further Court

approval.

## Basis For Relief

16.     The Debtors are parties to approximately 90 Leases of non-

residential real property.  As a part of the Debtors' ongoing restructuring efforts, the

Debtors are undertaking a comprehensive evaluation of all leased real property locations

in an effort to reduce overall occupancy costs and maximize the efficient utilization of the

7

Debtors' real property assets.  This process will require renewing certain leases that are

necessary for the Debtors' reorganization, including Leases that provide for less or

differently configured space, while exiting other Leases that no long fit the Debtors'

needs.  The Debtors estimate that they will enter into approximately ten new Leases and

renew approximately ten Leases annually for the next two years based on the number of

current Leases up for renewal and the anticipated needs of future projects.

       17.     To ensure that all Leases are at or below market rates, the Debtors'

real estate advisor, Jones Lang LaSalle, will conduct a market valuation for each Lease.

The market valuation will include, among other information, an analysis of the Lease

obligations, a determination as to whether the terms of the Lease are standard, and a

market assessment of other similarly situated leased locations.

       18.     In making their business decision to enter into or renew a Lease,

the Debtors will analyze and consider the economics underlying each Lease and the

Debtors' corresponding need for space to ensure the Lease will be beneficial to the

Debtors' operations.

       19.     As noted above, the Debtors believe that they may enter into Leases

in the ordinary course of business and that no court approval to do so is required pursuant

to Bankruptcy Code sections 363(c), 1107, and 1108.  To the extent that Bankruptcy

Court approval is necessary, however, the Debtors believe that the costs associated with

the administrative process of drafting, filing, and serving pleadings and sending notice to

all parties-in-interest to seek Court approval to enter into or renew each Lease will

become burdensome to the Debtors and their estates.  Out of an abundance of caution, the

Debtors request approval of the procedures set forth below which will expedite this

8

process by eliminating the necessity for a hearing on the Debtors' undisputed decisions to

enter into or renew Leases.

Proposed Procedures For Entering Into And Renewing Leases

20.    The Debtors seek approval of an orderly process to enter into or

renew Leases according to the following procedures (the "Procedures"):

(a)    For a Lease with average lease obligations of $200,000 or less per annum or Lease obligations of $1 million or less in the aggregate, the Debtors would be authorized but not directed to enter into or renew the Lease without further notice to any Notice Party (as defined below) or Bankruptcy Court approval.

(b)    For a Lease with average lease obligations of $200,001 or more per annum or Lease obligations in excess of $1 million up to and including $5 million in the aggregate, the Debtors would give notice of the proposed Lease (the "Lease Notice") to (i) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), (ii) counsel to the Creditors' Committee, (iii) counsel for the agent under the Debtors' prepetition credit facility, and (iv) counsel for the agent under the Debtors' postpetition credit facility (collectively, the "Notice Parties").  The Lease Notice would be served by facsimile, overnight delivery, or hand delivery.  The Lease Notice would include the following information:  (i) the proposed Lease to be entered into or renewed, (ii) the identity of the lessor (including a statement that the proposed lessor is not an "insider" as defined in section 101(31) of the Bankruptcy Code ), and (iii) a description of the terms of the proposed Lease.  The Notice Parties would have five business days following initial receipt of the Lease Notice to object to or request additional time to evaluate the proposed Lease.  If counsel to the Debtors receives no written objection or written request for additional time prior to the expiration of such five business day period, the Debtors would be authorized to enter into or renew the Lease.  If a Notice Party objects to the proposed Lease within five business days after the Lease Notice is received, the Debtors and such objecting Notice Party would meet and confer in an attempt to negotiate a consensual resolution.  Should either party determine that an impasse exists, then the Debtors would move the Bankruptcy Court for authority to enter into or renew the Lease, as the case may be, upon notice to the objecting party and other parties-in-interest in accordance with the Court's Case Management Order  entered on October 14, 2005 ("Case Management Order").

(c)    For a Lease with lease obligations in excess of $5 million in the aggregate, the Debtors would be authorized to enter into such a Lease only after obtaining Bankruptcy Court approval of the proposed Lease after notice and a hearing.

9

<u>Applicable Authority</u>

21.    Sections 1107(a) and 1108 of the Bankruptcy Code vest debtors-in-possession with authority to continue operating their businesses.  The Debtors, operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners."  <u>In re CoServ, L.L.C.</u>, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including an operating business's going-concern value."  <u>Id</u>.

22.    Section 1107(a) of the Bankruptcy Code provides that the debtor-in-possession shall have the duties of a trustee in a chapter 11 case with all the rights and powers of a trustee.  11 U.S.C. § 1107.  Accordingly, to understand the rights and powers of the debtor-in-possession, section 1107 of the Bankruptcy Code must be read in conjunction with those provisions of chapters 3, 5, and 11 of the Bankruptcy Code which confer certain rights and powers on trustees.  7 Collier, <u>Bankruptcy</u> ¶ 1107.03 (15th rev. ed. 2003).  Section 363(c) of the Bankruptcy Code provides in pertinent part: "[T]he [debtor-in-possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

23.    Through the Procedures, the Debtors seek to enter into or renew the Leases which are typical of those which the Debtors regularly enter into in the course of their business.  The Debtors intend to enter into or renew Leases which are standard,

10

non-residential real property Leases that will enable the Debtors to continue operating in

currently leased locations and other locations beneficial to the Debtors' ongoing business

operations.  The Debtors do not anticipate that any of the terms of the new or renewed

Leases will differ materially from their other 90 or so non-residential real property leases.

24.    To the extent that the Debtors' decision to enter into or renew

Leases constitutes a transaction outside of the ordinary course of business, section

363(b)(1) of the Bankruptcy Code requires that "there must be some articulated business

justification for using, selling, or leasing the property outside the ordinary course of

business."  Institutional Creditors of Continental Airlines, Inc. v. Continental Airlines,

Inc. (In re Continental Airlines, Inc.), citing In re Lionel Corp., 722 F.2d 1063, 1071 (2d

Cir. 1983); accord Stephens Indus., Inc. v. McClung (In re McClung), 789 F.2d 386, 390

(6th Cir. 1986); Fulton State Bank v. Schipper (In re Schipper), 109 B.R. 832, 836 (Bankr.

N.D. Ill. 1989); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1988).

25.    Sound business reasons exist to justify allowing the Debtors to

enter into or renew Leases using the procedures set forth herein.  The Debtors need to

enter into or renew Leases both to continue their operations and to reduce the costs of

their real property assets.  The Debtors are in the process of evaluating their real estate

portfolio and they need the flexibility to enter into or renew Leases to accomplish their

goal of overall cost reduction for leased space.

26.    Although the Debtors believe that all proposed Leases will be

entered into or renewed in the ordinary course of business, the Debtors' internal practices

require approval from the Debtors' treasury department for Leases with Lease obligations

exceeding $1 million in the aggregate.  For these Leases, the Notice Parties would receive

11

notice and have an opportunity to object.  For each Lease with average lease obligations of $200,000 or less per annum or lease obligations of $1 million or less in the aggregate, the Debtors would be authorized to enter into or renew the Lease without further notice to any Notice Party or Bankruptcy Court approval.  Obtaining Court approval of each such new or renewed Lease would result in administrative expenses for drafting, serving, and filing pleadings, as well as time incurred by attorneys for appearing at Court hearings. The Debtors believe that the Court should approve these procedures to acknowledge the Debtors' ability to enter into or renew the Leases pursuant to the Procedures set forth herein.

27.     The Procedures will provide the Debtors with both flexibility and a framework in which to enter into and renew Leases, while still providing for a review of the Leases requiring approval from the Debtors' treasury department by some of the major constituents of these cases.  Without a process for entering into or renewing Leases, the Debtors and their estates would incur added and unnecessary expenses and delay in entering into Leases for space that is needed to operate the Debtors' business.

28.     The Debtors seek this Court's authority to enter into and renew Leases pursuant to the Procedures set forth herein to reduce the costs associated with seeking Court approval of each individual Lease and to reduce the time required to obtain that approval.  The Debtors respectfully submit that entering into and renewing the Leases is necessary for the operation of their business.

29.     For the foregoing reasons, the Debtors believe that the relief requested herein is in the best interests of the estates and should be granted.

12

<u>Notice</u>

30.     Notice of this Motion has been provided in accordance with the

Case Management Order.  In light of the nature of the relief requested, the Debtors

submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

31.     Because the legal points and authorities upon which this Motion

relies are incorporated herein, the Debtors respectfully request that the requirement of the

service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the

Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District

of New York be deemed satisfied.

WHEREFORE, the Debtors respectfully request that the Court enter an

order (a) authorizing the Debtors to enter into Leases without further Court approval,

subject to the Procedures set forth herein, and (b) granting the Debtors such other and

further relief as is just.

Dated: New York, New York
       December 16, 2005

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By: s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

            - and -

By: s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

14

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
    In re                                 :     Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :     Case No. 05-44481 (RDD)
                                          :
                  Debtors.              :     (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 363, 1107, AND 1108 APPROVING
PROCEDURES TO ENTER INTO OR RENEW REAL PROPERTY
LEASES WITHOUT FURTHER COURT APPROVAL

("LEASE PROCEDURES ORDER")

       Upon the motion, dated December 16, 2005 (the "Motion"), of Delphi Corporation

and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. §§

365, 1107, and 1108 approving procedures to enter into new or renew existing non-residential leases

or subleases of real property (the " Leases") without further Court approval; and upon the record of

the hearing held on the Motion; and this Court having determined that the relief requested in the

Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-

interest; and it appearing that proper and adequate notice of the Motion has been given and that no

other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause

appearing therefore it is hereby

       ORDERED, ADJUDGED, AND DECREED THAT:

     1.  The Motion is GRANTED.

2.    The Debtors are hereby authorized but not directed to enter into or renew the Leases without further Court approval, subject to the procedures set forth below.

3.    For a Lease with average Lease obligations of $200,000 or less per annum or lease obligations of $1 million or less in the aggregate, the Debtors shall be authorized but not directed to enter into or renew the Lease without further Bankruptcy Court approval.

4.    For a Lease with average lease obligations of $200,001 or more per annum or Lease obligations in excess of $1 million up to and including $5 million in the aggregate, the Debtors shall give notice of their intention to enter into or renew the Lease (the "Lease Notice") to (a) the Office of the United States Trustee for the Southern District of New York, (b) counsel for the Official Committee of Unsecured Creditors, (c) counsel for the agent under the Debtors' prepetition credit facility, and (d) counsel for the agent under the Debtors' postpetition facility (collectively, the "Notice Parties").  The Debtors shall serve the Lease Notice by facsimile, overnight delivery, or hand delivery.  The Lease Notice shall include the following information: (a) the proposed Lease to be entered into or renewed, (b) the identity of the lessor (including a statement that the proposed lessor is not an "insider" as defined in section 101(31) of the Bankruptcy Code ), and (c) a description of the terms of the proposed Lease.  The Notice Parties shall have five business days following initial receipt of the Lease Notice to object to or request additional time to evaluate the proposed Lease.  If counsel to the Debtors receives no written objection or written request for additional time prior to the expiration of such five business day period, the Debtors shall be authorized to enter into or renew the Lease.  If a Notice Party objects to the proposed Lease within five business days after the Lease Notice is received, the Debtors and such objecting Notice Party shall meet and confer in an attempt to negotiate a consensual resolution.  Should either party determine that an impasse exists, then the Debtors shall move the

2

Bankruptcy Court for authority to enter into or renew the Lease, as the case may be, upon notice

to the objecting party and other parties-in-interest in accordance with the Court's Case

Management Order  entered on October 14, 2005 ("Case Management Order").

       5.   For a Lease with Lease obligations in excess of $5 million in the aggregate,

the Debtors will be authorized to enter into the Lease only after obtaining Bankruptcy Court

approval of the proposed Lease after notice and a hearing.

       6.   This Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Order.

       7.   The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the

United States Bankruptcy Court for the Southern District of New York for the service and filing

of a separate memorandum of law is deemed satisfied by the Motion.

Dated:      New York, New York
            January __, 2005

_____
     UNITED STATES BANKRUPTCY JUDGE

# **EXHIBIT G**

Hearing Date: January 5, 2006 at 10:00 a.m.
Objection Deadline: December 29, 2005 at 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
     Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
             In re                                          :    Chapter 11
                                                            :
     DELPHI CORPORATION, et al.,                            :    Case No. 05- 44481 (RDD)
                                                            :
                              Debtors.    :    (Jointly Administered)
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF MOTION FOR ORDER UNDER 11 U.S.C. §§ 365(a) AND 554 AND
FED. R. BANKR. P. 6006 APPROVING PROCEDURES FOR REJECTING
UNEXPIRED REAL PROPERTY LEASES AND AUTHORIZING DEBTORS TO
<u>ABANDON CERTAIN FURNITURE, FIXTURES, AND EQUIPMENT</u>

PLEASE TAKE NOTICE that on December 16, 2005, Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in

the above-captioned cases, filed a Motion For Order Under 11 U.S.C. §§ 365(a) And 554

And Fed. R. Bankr. P. 6006 Approving Procedures For Rejecting Unexpired Real Property

Leases And Authorizing Debtors To Abandon Certain Furniture, Fixtures, And Equipment

(the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of

the Motion will be held on January 5, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the

"Hearing"), before the Honorable Robert D. Drain, United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, Room 610, New York, New York,

10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion

must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local

Bankruptcy Rules for the Southern District of New York, and the Order Under 11 U.S.C.

§§ 102 (1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I)

Omnibus Hearing Dates, (II) Certain Notice, Case Management, And Administrative

Procedures, And (III) Scheduling An Initial Case Conference In Accordance With Local

Bankr. R. 1007-2(e) (the "Case Management Order") (Docket No. 245), (c) be filed with

the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered

users of the Bankruptcy Court's case filing system must file electronically, and all other

2

parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Marlane Melican), (v) counsel for the Official Committee of Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Mark A. Broude), and (vi) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard), in each case so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time)** on **December 29, 2005** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as

set forth herein and in accordance with the Case Management Order will be considered by

the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely filed and

served in accordance with the procedures set forth herein and in the Case Management

Order, the Bankruptcy Court may enter a final order granting the Motion **without further**

**notice.**

Dated: New York, New York
       December 16, 2005

                    SKADDEN, ARPS, SLATE, MEAGHER
                       & FLOM LLP

                    By:  s/ John Wm. Butler, Jr.
                         John Wm. Butler, Jr. (JB 4711)
                         John K. Lyons (JL 4951)
                         Ron E. Meisler (RM 3026)
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois  60606
                    (312) 407-0700

                              - and -

                    By:  s/ Kayalyn A. Marafioti
                         Kayalyn A. Marafioti (KM 9632)
                         Thomas J. Matz (TM 5986)
                    Four Times Square
                    New York, New York  10036
                    (212) 735-3000

                    Attorneys for Delphi Corporation, et al.,
                         Debtors and Debtors-in-Possession

4

**Hearing Date and Time: January 5, 2006 at 10:00 a.m.**
**Objection Deadline: December 29, 2005 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
        In re                                 :    Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :    Case No. 05-44481 (RDD)
                                              :
                        Debtors.              :    (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER 11 U.S.C. §§ 365(a) AND 554 AND
FED. R. BANKR. P. 6006 APPROVING PROCEDURES FOR
REJECTING UNEXPIRED REAL PROPERTY LEASES AND AUTHORIZING
DEBTORS TO ABANDON CERTAIN FURNITURE, FIXTURES, AND EQUIPMENT

("LEASE REJECTION PROCEDURES MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. §§ 365(a) and 554 and Fed. R. Bankr. P. 6006 approving procedures for the future rejection of certain nonresidential unexpired real property leases or subleases (the "Leases") and authorizing the Debtors to abandon certain personal property including, without limitation, furniture, fixtures, and equipment (the "Expendable Property"), without further Court approval. In support of this Motion, the Debtors respectfully represent as follows:

Background

A.      The Chapter 11 Filings

1.      On October 8, 2005 (the "Petition Date"), 39 of 42 Debtors, and on October 14, 2005, the remaining Debtors, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases (Dockets Nos. 28 and 404).

2.      On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee") in these cases.  No trustee or examiner has been appointed in the Debtors' cases.

2

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are sections 365 and

554 of the Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

B.      <u>Current Business Operations Of The Debtors</u>

5.      With more than 180,000 employees worldwide, global 2004 revenues of

approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1

billion,[1] Delphi ranks as the fifth largest public company business reorganization in terms of

revenues, and the thirteenth largest public company business reorganization in terms of assets.

Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations

without supervision from the Bankruptcy Court, and will not be subject to the chapter 11

requirements of the U.S. Bankruptcy Code.

6.      Over the past century, the operations which are now owned by Delphi

have developed leading global technology innovations with significant engineering resources and

technical competencies in a variety of disciplines.  Today, the Company (as defined below) is

arguably the single largest global supplier of vehicle electronics, transportation components,

integrated systems and modules, and other electronic technology. The Company's technologies

and products are present in more than 75 million vehicles on the road worldwide.  The Company

supplies products to nearly every major global automotive original equipment manufacturer, with

---

[1]      The aggregated financial data used in this Motion generally consists of consolidated information from
Delphi and its worldwide subsidiaries and affiliates.

3

2004 sales to its former parent, General Motors Corporation ("General Motors" or "GM"),

equaling approximately $15.4 billion, and sales to each of Ford Motor Company,

DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group

exceeding $850 million.

       7.     As part of its growth strategy, Delphi has established an expansive global

presence with a network of manufacturing sites, technical centers, sales offices, and joint

ventures located in every major region of the world.  In the U.S., the Debtors employ

approximately 50,600 people.  Those employees work in approximately 44 manufacturing sites

and 13 technical centers across the country, and in Delphi's worldwide headquarters and

customer center located in Troy, Michigan.  Approximately 34,750 of these individuals are

hourly employees, 96% of whom are represented by approximately 49 different international and

local unions.  Outside the United States, the Company's foreign entities employ more than

134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40

countries worldwide.

       8.     Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through

various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these

divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates

(collectively, the "Company") in accordance with the terms of a Master Separation Agreement

between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution

from a North American-based, captive automotive supplier to a global supplier of components,

integrated systems, and modules for a wide range of customers and applications.  Although GM

is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.      Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base.  The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of  the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.      Events Leading To Chapter 11 Filing

10.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the marketplace, Delphi's financial condition deteriorated further in the first six months of 2005.  The Company experienced net operating losses of $608 million for the first six

5

months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1

billion less in sales than during the same time period in calendar year 2004.[2]

11.    The Debtors believe that three significant issues have largely contributed

to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S.

legacy liabilities and operational restrictions driven by collectively bargained agreements,

including restrictions preventing the Debtors from exiting non-strategic, non-profitable

operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive

U.S. vehicle production environment for domestic OEMs resulting in the reduced number of

motor vehicles that GM produces annually in the United States and related pricing pressures, and

(c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward looking revenue requirements.  Having concluded that

pre-filing discussions with its Unions and GM were not leading to the implementation of a plan

sufficient to address the Debtors' issues on a timely basis, the Company determined to commence

these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and

preserve value.

13.    Through the reorganization process, the Debtors intend to achieve

competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive

legacy liabilities and burdensome restrictions under current labor agreements and realigning

Delphi's global product portfolio and manufacturing footprint to preserve the Company's core

---

[2]        Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily
related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

businesses.  This will require negotiation with key stakeholders over their respective

contributions to the restructuring plan or, absent consensual participation, the utilization of the

chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned

in the Company's transformation plan.  The Debtors believe that a substantial segment of

Delphi's U.S. business operations must be divested, consolidated, or wound-down through the

chapter 11 process.

        14.      Upon the conclusion of this process, the Debtors expect to emerge from

chapter 11 as a stronger, more financially sound business with viable U.S. operations that are

well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all

of its resources to continue to deliver value and high-quality products to its customers globally.

Additionally, the Company will preserve and continue the strategic growth of its non-U.S.

operations and maintain its prominence as the world's premier auto supplier.

Relief Requested

        15.    By this Motion, the Debtors seek an order under sections 365(a) and 554 of

the Bankruptcy Code and Bankruptcy Rule 6006 approving procedures for rejecting certain

Leases and authorizing the Debtors to abandon any Expendable Property associated with the

Leases, without further Court approval.

Basis For Relief

        16.    The Debtors are party to approximately 90 Leases.  As part of the Debtors'

ongoing restructuring efforts, the Debtors are undertaking a comprehensive evaluation of the

economic value of the Leases.  In connection with the Debtors' transformation plan, the Debtors

intend to achieve competitiveness by realigning Delphi's global product portfolio and

manufacturing footprint.  In so doing, the Debtors may reject certain Leases.  Accordingly, the

7

Debtors seek approval of an orderly process to reject the Leases and abandon any Expendable

Property associated with the Leases, without further Court approval.

17.    The Debtors believe that the costs associated with the administrative

process of drafting, filing, and serving pleadings and sending required notice to all parties-in-

interest to reject a Lease and abandon Expendable Property will, in many cases, reduce the

benefit that the Debtors and their estates would otherwise gain by rejecting such Lease.  The

procedures set forth below will expedite the rejection process by eliminating the necessity for a

hearing on uncontested rejections of Leases and abandonment of Expendable Property while still

protecting the rights of the parties-in-interest.  Moreover, the Debtors will consult with their

advisors -- including, without limitation, Jones Lang LaSalle, the Debtors' retained real estate

advisors -- to assist in the evaluations of the marketability and value of unwanted Leases.  Those

unwanted Leases that have insufficient economic value may be rejected pursuant to the

procedures described below.

<u>Proposed Procedures For Rejection Of Leases And
Abandonment Of Expendable Property</u>

18.    The Debtors seek approval of an orderly process to reject Leases and to

abandon Expendable Property which the Debtors determine to be burdensome or of

inconsequential value or benefit to their estates without further court approval.  The proposed

procedures are as follows:

> a.    The Debtors would be authorized but not directed to reject any Lease determined by the Debtors, in the exercise of their business judgment, to be unnecessary or burdensome to their ongoing business operations.  The Debtors would be authorized but not directed to abandon any Expendable Property determined to be burdensome or of inconsequential value and benefit to the Debtors.

8

b.    The rejection, if any, of a Lease would become effective (the "Rejection Date") as of ten calendar days following the issuance by the Debtors of a notice of rejection, substantially in the form attached hereto as <u>Exhibit A</u> (a "Rejection Notice").  The Rejection Notice would include a copy of the order granting this Motion.

c.    The Debtors would serve the Rejection Notice by e-mail, facsimile, overnight delivery, or hand delivery, along with a copy of the order approving this Motion, on (i) each lessor of the Lease (each, a "Lessor") to be rejected (and, to the extent that the Debtor is the sublessor, on the sublessee), (ii) any additional parties entitled to notice pursuant to the terms of the rejected Lease, (iii) all parties known to the Debtors as having a direct interest in any Expendable Property proposed to be abandoned; (iv) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), (v) counsel for the Creditors' Committee, (vi) counsel for the agent under the Debtors' prepetition credit facility, and (vii) counsel for the agent under the postpetition credit facility (collectively, the "Notice Parties").

d.    The rejection of a Lease and abandonment of Expendable Property would become effective on the Rejection Date without further court order unless an objection (the "Objection") and request for hearing is served by one of the Notice Parties so as to be <u>received</u> within the ten-day period referenced in subparagraph "b" above. The objecting party would serve the Objection on (i) the Debtors, (ii) the undersigned counsel for the Debtors, (iii) counsel for the agent under the Debtors' prepetition credit facility, (iv) counsel for the agent under the Debtors' post petition credit facility, (v) counsel for the Creditors' Committee, and (vi) the U.S. Trustee.  In the event that a proper and timely Objection is served in accordance with this paragraph, the Debtors and the objecting party would meet and confer in an attempt to negotiate a consensual resolution.  Should either party determine that an impasse exists, then the Debtors would schedule a hearing on the Objection with the Court and provide notice of the hearing to the objecting party and other parties-in-interest.  In the event the Court overrules the Objection or the Objection relates only to rejection damages or Expendable Property, such Lease would still be deemed rejected as of the Rejection Date.

e.    The Debtors would have until the later of the Rejection Date or the date provided in each Lease to remove property from the leased premises.  To the extent any Expendable Property remains in the leased premises after the Rejection Date or such later date as provided for in the Lease, the Expendable Property would be

9

deemed abandoned to the landlord of the Lease, which landlord would be entitled to remove or dispose of such property in its sole discretion without liability to any party which might claim an interest in the Expendable Property and which was served with a copy of the Rejection Notice.

f.      A Lessor would be deemed to have consented to the abandonment of any Expendable Property if a Lessor does not file with the Court and serve an Objection to such abandonment prior to the Rejection Date.

g.      Unless a party files and serves an Objection in accordance with the procedures set forth above, any expense incurred by a Lessor in the removal or disposal of Expendable Property would not be treated as an administrative expense under section 503(b)(1) of the Bankruptcy Code.  If a party properly serves an Objection, then the nature and priority of any claim asserted in the Objection would be agreed to consensually by the parties or determined by a subsequent order of this Court.  Notwithstanding the foregoing, the effectiveness of the Rejection Date as stated in the applicable Rejection Notice would not be effected by the Debtors attempt to resolve any disputes relating to such Expendable Property.

h.      Parties would have until the later of the general bar date for filing prepetition general unsecured claims as may be established in these cases or 30 days from the Rejection Date to file a proof of claim for damages arising from such rejection for each respective Lease. Any claims not timely filed would be forever barred.

i.      The Debtors would pay rent on a per diem basis as charges accrue under the Lease for the month in which the Rejection Date of a Lease occurs.

j.      If any Debtor has deposited monies with a Lessor as a security or other kind of deposit or pursuant to another similar arrangement, such Lessor would not be permitted to set off or otherwise use the monies from such deposit or other arrangement without the prior order of the Court unless such amounts can be set off pursuant to paragraph 18 of the Order Under 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), And 364(e) and Fed.R.Bankr.P. 2002, 4001 And 9014 (I) Authorizing Debtors To Obtain Postpetition Financing, (II) To Utilize Cash Collateral And (III) Granting Adequate Protection to Prepetition Secured Parties (Docket No. 797).

10

<u>Applicable Authority</u>

19.    Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). The assumption or rejection of an executory contract or unexpired lease by a debtor is subject to review under the business judgment standard. <u>See</u> <u>Orion Pictures Corp. v. Showtime Networks, Inc.</u>, 4 F.3d 1095, 1099 (2d Cir. 1993); <u>In re The Penn Traffic Co.</u>, 322 B.R. 63, 68 (Bankr. S.D.N.Y. 2005) (stating "[i]t is well established that the decision whether to assume or reject an executory contract under section 365(a) is a matter of business judgment to be exercised in the best interests of the debtor in possession and its creditors"); <u>In re Stable Mews Assocs., Inc.</u>, 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984).

20.    The business judgment standard is satisfied when a debtor determines that rejection will benefit the estate. <u>See</u> <u>In re Child World, Inc.</u>, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992); <u>In re Ionosphere Clubs, Inc.</u>, 100 B.R. 670, 673 (Bankr. S.D.N.Y. 1989). In applying this standard, courts show great deference to a debtor's decision to reject an unexpired lease or executory contract. <u>See</u> <u>In re G Survivor Corp.</u>, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) ("Generally, absent a showing of bad faith, or an abuse of business discretion, the debtor's business judgment will not be altered." (citing, <u>inter</u> <u>alia</u>, <u>In re Bildisco</u>, 682 F.2d 72, 79 (3d Cir. 1982), <u>aff'd sub nom.</u> <u>NLRB v. Bildisco & Bildisco</u>, 465 U.S. 513 (1984), <u>aff'd sub nom.</u> <u>John Forsyth Co. v. G Licensing, Ltd.</u>, 187 B.R. 111 (S.D.N.Y. 1996))).

21.    If a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease or executory contract. <u>See,</u> <u>e.g.</u>, <u>NLRB v. Bildisco & Bildisco</u>, 465 U.S. 513, 523 (1984); <u>Group of Institutional Investors v. Chicago, Milwaukee, St. Paul & Pac. R.R. Co.</u>, 318 U.S. 523, 550 (1943); <u>Johnson v. Fairco</u>

11

Corp., 61 B.R. 317, 320 (Bankr. N.D. Ill. 1986). Thus, to reject a contract or lease, a debtor

would have to get court approval, which would ordinarily be granted if the decision to reject has

satisfied the business judgment test.

22.     The Debtors seek approval of the procedures to reject the Leases to

facilitate the reduction in their obligations under such Leases that are not benefiting the estates

and that cannot be assumed and assigned to a third party.  The Debtors submit that the immediate

reduction in the estates' administrative costs that will result from the implementation of the

proposed procedures reflects the Debtors' exercise of sound business judgment.  Additionally, in

determining which Leases will be rejected the Debtors will exercise their business judgment.

The Debtors' financial and real estate advisors will be involved and will advise the Debtors as to

the marketability and value of their Leases.  As part of such process, the Debtors will evaluate

whether a Lease might be assumed and assigned to a third party to maximize value for the

estates.

23.     Furthermore, the Lessors will not be prejudiced by these procedures

because they will have the opportunity to object to the proposed rejection upon receipt of notice.

24.     Section 554(a) of the Bankruptcy Code provides that a debtor-in-possession

may abandon, subject to Court approval, "property  of the estate that is burdensome to the estate

or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  The Debtors

submit that they will abandon only (i) property that is burdensome to the estate or (ii) property

that is both of inconsequential value and inconsequential benefit to the estate.  The Debtors

believe that the proposed abandonment procedures also provide for an efficient process for

disposing of the Expendable Property at the leased locations that are subject to this Motion while

at the same time affording interested parties with an opportunity to object.

12

25.     In addition, the notice requirements under the procedures satisfy Bankruptcy Rule 6006 by providing Lessors with notice and an opportunity to object and be heard.  See, e.g., In re Drexel Burnham Lambert, 160 B.R. 729, 733 (S.D.N.Y. 1993) (indicating that providing interested parties an opportunity to present objections satisfies due process).  In light of the foregoing, the Debtors submit that the procedures balance the Debtors' need for expeditious reduction of burdensome costs with providing due notice of the proposed rejection and abandonment to the affected Lessors.

26.     Finally, the proposed procedures for rejection of Leases and abandonment of Expendable Property are fair and equitable and consistent with recent decisions in this circuit. See, e.g., In re Delta Air Lines, Inc., Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Nov. 10, 2005); In re WorldCom, Inc., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Sept. 25, 2002); In re Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Jan. 9, 2002).

Notice

27.     Notice of this Motion has been provided in accordance with the Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance With Local Bankr. R. 1007-2(e) entered by this Court on October 14, 2005 (Docket No. 245).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

28.     Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) a

approving procedures for rejecting the Real Property Leases and (b) granting the Debtors such

other and further relief as is just.

Dated: New York, New York
       December 16, 2005

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By: s/ John Wm. Butler, Jr. _____
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

     - and -

By: s/ Kayalyn A. Marafioti _____
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

14

<u>Exhibit A</u>

**Rejection Date: [●]**
**Objection Deadline: [●]**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, <u>et al.</u>, | : | Case No.  05–44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF REJECTION OF UNEXPIRED LEASES AND
<u>ABANDONMENT OF PERSONAL PROPERTY</u>

1.    <u>ORDER APPROVING REJECTION OF LEASES</u>

PLEASE TAKE NOTICE that on January [●], 2006, the United States
Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")
entered an Order Under 11 U.S.C. §§  365(a) And 554 And Fed. R. Bankr. P. 6006
Approving Procedures For Rejecting Unexpired Real Property Leases And Authorizing
Debtors To Abandon Certain Furniture, Fixtures, And Equipment (the "Order," a copy of
which is attached hereto as <u>Exhibit 1</u>).  The Order authorized the above-captioned debtors
and debtors-in-possession (the "Debtors") to reject the following unexpired real property
lease or sublease (the "Lease") and abandon the following furniture, fixtures, and
equipment (the "Expendable Property") without further Court approval:

**Location Of Lease And Expendable Property (if any):**

2.    <u>LEASE REJECTION DATE</u>

PLEASE TAKE FURTHER NOTICE that the rejection of the Lease shall become
effective upon [●] (the "Rejection Date"), unless an objection to the rejection is served in
the manner described herein.

3.      EXPENDABLE PROPERTY

        PLEASE TAKE FURTHER NOTICE that the Debtors will have until the later of the
Rejection Date or the date provided in each Lease to remove property from the leased premises.
To the extent any Expendable Property remains in the leased premises after the Rejection Date or
such later date as provided for in the Lease, the Expendable Property will be deemed abandoned
to the landlord of the Lease, which landlord will be entitled to remove or dispose of such property
in its sole discretion without liability to any party which might claim an interest in the
Expendable Property and which was served with a copy of the Rejection Notice.

        PLEASE TAKE FURTHER NOTICE that any expense incurred by a Lessor in
the removal or disposal of Expendable Property will not be treated as an administrative
expense under section 503(b)(1) of the Bankruptcy Code.

4.      OBJECTIONS

        PLEASE TAKE FURTHER NOTICE that objections, if any, to rejection of the
Lease or abandonment of Expendable Property (a) must be in writing and (b) must be
served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n:
General Counsel), (ii) counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom
LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm.
Butler, Jr. and Ron E. Meisler), (iii) counsel for the agent under the Debtors' prepetition
credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New
York 10017 (Att'n:  Kenneth S. Ziman), (iv) counsel for the agent under the Debtors'
postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York,
New York 10017 (Att'n:  Marlane Melican), (v) counsel for the Official Committee of
Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York
10022 (Att'n: Mark A. Broude), and (vi) the Office of the United States Trustee for the
Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York
10004 (Att'n:  Alicia M. Leonhard), in each case so as to be **received on or before [●]**.

5.      RENT

        PLEASE TAKE FURTHER NOTICE that the Debtors will pay rent on a per diem
basis as charges accrue under the Lease for the month in which the Rejection Date of a
Lease occurs.

6.      SETOFF

        PLEASE TAKE FURTHER NOTICE that if any Debtor has deposited monies
with a Lessor as a security or other kind of deposit or pursuant to another similar
arrangement, such Lessor will not be permitted to set off or otherwise use the monies
from such deposit or other arrangement without the prior order of the Court unless such
amounts can be set off pursuant to paragraph 18 of the Order Under 11 U.S.C. §§ 105,

361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), And 364(e) and Fed. R. Bankr. P. 2002, 4001, And 9014 (I) Authorizing Debtors To Obtain Postpetition Financing, (II) To Utilize Cash Collateral, And (III) Granting Adequate Protection to Prepetition Secured Parties (Docket No. 797).

7.    <u>DEADLINE TO FILE PROOFS OF CLAIM</u>

PLEASE TAKE FURTHER NOTICE that if the Lease is rejected, parties will have until the later of the general bar date as will be established in these cases for filing prepetition general unsecured claims or 30 days from the Rejection Date to file a proof of claim for damages arising from such rejection for each respective Lease.  Any claims not timely filed will be forever barred.

Dated: New York, New York
        [●]

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By:    _____
        John Wm. Butler, Jr. (JB 4711)
        John K. Lyons (JL 4951)
        Ron E. Meisler (RM 3026)
    333 West Wacker Drive, Suite 2100
    Chicago, Illinois  60606
    (312) 407-0700

            - and -

By:    _____
        Kayalyn A. Marafioti (KM 9632)
        Thomas J. Matz (TM 5986)
    Four Times Square
    New York, New York 10036
    (212) 735-3000

Attorneys for Delphi Corporation, <u>et al.</u>,
        Debtors and Debtors-in-Possession

Exhibit 1 - Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
     In re                    :     Chapter 11
:
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
:
             Debtors.    :     (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 365(a) AND 554 AND
FED. R. BANKR. P. 6006 APPROVING PROCEDURES FOR
REJECTING UNEXPIRED REAL PROPERTY LEASES AND AUTHORIZING
DEBTORS TO ABANDON CERTAIN FURNITURE, FIXTURE, AND EQUIPMENT

("LEASE REJECTION PROCEDURES ORDER")

        Upon the motion, dated December 16, 2005 (the "Motion"), of Delphi Corporation

and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. §§

365(a) and 554 and Fed. R. Bankr. P. 6006 approving procedures for rejecting unexpired

nonresidential real property leases and subleases (the " Leases") and authorizing the Debtors to

abandon certain furniture, fixtures, and equipment (the "Expendable Property") without further court

approval; and upon the record of the hearing held on the Motion; and this Court having determined

that the relief requested in the Motion is in the best interests of the Debtors, their estates, their

creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the

Motion has been given and that no other or further notice is necessary; and after due deliberation

thereon; and good and sufficient cause appearing therefor, it is hereby

        ORDERED, ADJUDGED, AND DECREED THAT:

        1.  The Motion is GRANTED.

2.    Subject to the provisions of this Order, the Debtors are hereby authorized but not directed to reject any or all of the Leases and to abandon the Expendable Property without further Court approval.

3.    The form of notice attached hereto as <u>Exhibit A</u> (the "Rejection Notice") is hereby approved.

4.    The rejection of a Lease, if any, shall become effective as of ten calendar days following the issuance by the Debtors of a Rejection Notice (the "Rejection Date").

5.    The Debtors shall serve the Rejection Notice by e-mail, facsimile, overnight delivery, or hand delivery, along with a copy of this Order, on (a) the lessor under the particular Lease (each, a "Lessor") to be rejected (and, to the extent that the Debtor is the sublessor, on the sublessee), (b) any additional parties entitled to notice pursuant to the terms of the rejected Leases, (c) all parties known to the Debtors as having a direct interest in any Expendable Property proposed to be abandoned, (d) the Office of the United States Trustee for the Southern District of New York, (e) counsel for the Official Committee of Unsecured Creditors, (f) counsel for the agent under the Debtors' prepetition credit facility, and (g) counsel for the agent under the postpetition credit facility.

6.    The rejection of the Lease and abandonment of Expendable Property shall become effective on the Rejection Date without further Court order unless an objection (the "Objection") thereto and request for hearing is sent so as to be <u>received</u> by the Debtors and their undersigned counsel within the ten-day period referenced in paragraph 4 hereof.  In the event that a proper and timely Objection is served in accordance with this paragraph, and the Debtors and the objecting party are not able to reach a consensual resolution of the Objection, the Debtors shall schedule a hearing on the Objection with this Court and provide notice of the

2

hearing to the objecting party and other parties-in-interest.  In the event that this Court overrules

the Objection or the Objection relates only to rejection damages or Expendable Property, such

Lease shall still be deemed rejected as of the Rejection Date.

        7.    The Debtors shall have until the later of the Rejection Date or the date

provided in each Lease to remove property from the leased premises.  To the extent that any

Expendable Property remains in the leased premises after the Rejection Date or such later date as

provided for in the Lease, the Expendable Property shall be deemed abandoned to the landlord of

the Lease, which landlord shall be entitled to remove or dispose of such property in its sole

discretion without liability to any party which might claim an interest in the Expendable Property

and which was served with a copy of the Rejection Notice.

        8.    Unless a party serves an Objection in accordance with the procedures set forth

above, any expense incurred by a Lessor in the removal or disposal of Expendable Property shall

not be treated as an administrative expense under section 503(b)(1) of the Bankruptcy Code.  If a

party properly serves an Objection, then the nature and priority of any claim asserted by such

Objection shall be agreed to consensually by the parties or determined by a subsequent order of

this Court.  Notwithstanding the foregoing, the Debtors request that the time necessary to resolve

any disputes relating to such Expendable Property not alter the effectiveness of the Rejection

Date as stated in the applicable Rejection Notice.

        9.    Parties shall have until the later of the general bar date for filing prepetition

general unsecured claims as may be established in these cases or 30 days from the Rejection

Date to file a proof of claim for damages arising from such rejection.  Any claims not timely

filed shall be forever barred.

3

10. The Debtors shall pay rent on a per diem basis as charges accrue under the Lease for the month in which the Rejection Date of a Lease occurs.

11. If any Debtor has deposited monies with a Lessor as a security or other kind of deposit or pursuant to another similar arrangement, such Lessor shall not be permitted to set off or otherwise use the monies from such deposit or other arrangement without the prior order of this Court unless such amounts can be set off pursuant to paragraph 18 of the Order Under 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), And 364(e) and Fed. R. Bankr. P. 2002, 4001, And 9014 (I) Authorizing Debtors To Obtain Postpetition Financing, (II) To Utilize Cash Collateral, And (III) Granting Adequate Protection to Prepetition Secured Parties (Docket No. 797).

12. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

13. The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:    New York, New York
          January __, 2005

_____
UNITED STATES BANKRUPTCY JUDGE

# **<u>EXHIBIT H</u>**

**Hearing Date and Time: January 5, 2006 at 10:00 a.m.**
**Objection Deadline:  December 29, 2005 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

       - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                              :
         In re                                :    Chapter 11
                                              :
    DELPHI CORPORATION, et al.,               :    Case No. 05-44481 (RDD)
                                              :
                              Debtors.         :    (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

NOTICE OF MOTION FOR ORDER UNDER
11 U.S.C. § 365(a) AUTHORIZING DEBTORS TO ASSUME
EXECUTORY CONTRACT WITH PILLARHOUSE (U.S.A.), INC.

PLEASE TAKE NOTICE that on December 16, 2005, Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in

the above-captioned cases, filed the Motion For Order Under 11 U.S.C. § 365(a)

Authorizing Debtors To Assume Executory Contract With Pillarhouse (U.S.A.), Inc. (the

"Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of

the Motion will be held on January 5, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the

"Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, Room 610, New York, New York,

10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion

must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the Southern District of New York and the Order Under 11

U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And

Administrative Procedures, And (III) Scheduling An Initial Case Conference In

Accordance With Local Bankr. R. 1007-2(e) (the "Case Management Order") (Docket No.

245), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as

amended) – registered users of the Bankruptcy Court's case filing system must file

electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in

2

Portable Document Format (PDF), WordPerfect, or any other Windows-based word

processing format), (d) be submitted in hard-copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) be served upon

(i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel),

(ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker

Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for

the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP,

425 Lexington Avenue, New York, New York 10017 (Att'n:  Kenneth S. Ziman), (iv)

counsel for the agent under the Debtors' postpetition credit facility, Davis Polk & Wardwell,

450 Lexington Avenue, New York, New York 10017 (Att'n:  Marlane Melican), (v)

counsel for the official committee of unsecured creditors, Latham & Watkins, 885 Third

Avenue, New York, New York, 10022 (Att'n:  Robert J. Rosenberg and Mark A. Broude),

and (vi) the Office of the United States Trustee for the Southern District of New York, 33

Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard), in

each case so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time)** on

**December 29, 2005** (the "Objection Deadline").

3

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Case Management Order will be considered by the Bankruptcy

Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance

with the procedures set forth herein and the Case Management Order, the Bankruptcy Court may

enter an order granting the Motion **without further notice.**

Dated: New York, New York
       December 16, 2005

                        SKADDEN, ARPS, SLATE, MEAGHER
                           & FLOM LLP

                        By:  s/ John Wm. Butler, Jr._____
                            John Wm. Butler, Jr. (JB 4711)
                            John K. Lyons (JL 4951)
                            Ron E. Meisler (RM 3026)
                        333 West Wacker Drive, Suite 2100
                        Chicago, Illinois  60606
                        (312) 407-0700

                              - and -

                        By:  s/ Kayalyn A. Marafioti_____
                            Kayalyn A. Marafioti (KM 9632)
                            Thomas J. Matz (TM 5986)
                        Four Times Square
                        New York, New York  10036
                        (212) 735-3000

                        Attorneys for Delphi Corporation, et al.,
                          Debtors and Debtors-in-Possession

**Hearing Date and Time: January 5, 2006 at 10:00 a.m.**
**Objection Deadline: December 29, 2005 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
        In re                                           :   Chapter 11
                                                        :
DELPHI CORPORATION, et al.,                             :   Case No. 05-44481 (RDD)
                                                        :
                                                        :   (Jointly Administered)
                Debtors.                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER
11 U.S.C. § 365(a) AUTHORIZING DEBTORS TO ASSUME
EXECUTORY CONTRACT WITH PILLARHOUSE (U.S.A.), INC.

("PILLARHOUSE ASSUMPTION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the

"Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order pursuant to

11 U.S.C. § 365(a) authorizing the debtors to assume an executory contract with Pillarhouse

(U.S.A.), Inc. ("Pillarhouse").  In support of this Motion, the Debtors respectfully represent as

follows:

<u>Background</u>

A.     <u>The Chapter 11 Filings</u>

1.     On October 8, 2005, Delphi and certain of its U.S. subsidiaries (the "Initial

Filers") filed voluntary petitions in this Court for reorganization relief under chapter 11 of title

11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  On

October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers,

collectively, the "Debtors") filed voluntary petitions in this Court for reorganization relief under

the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their

properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11

cases (Dockets Nos. 28 and 404).

2.     On October 17, 2005, the Office of the United States Trustee appointed an

official committee of unsecured creditors.  No trustee or examiner has been appointed in the

Debtors' cases.

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicate for the relief requested herein is section 365(a) of

the Bankruptcy Code.

B.      Current Business Operations Of The Debtors

5.      With more than 180,000 employees worldwide, global 2004 revenues of

approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1

billion,[1] Delphi ranks as the fifth largest public company business reorganization in terms of

revenues, and the thirteenth largest public company business reorganization in terms of assets.

Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations

without supervision from the Bankruptcy Court, and will not be subject to the chapter 11

requirements of the U.S. Bankruptcy Code.

6.      Over the past century, the operations which are now owned by Delphi

have developed leading global technology innovations with significant engineering resources and

technical competencies in a variety of disciplines.  Today, the Company (as defined below) is

arguably the single largest global supplier of vehicle electronics, transportation components,

integrated systems and modules, and other electronic technology.  The Company's technologies

and products are present in more than 75 million vehicles on the road worldwide.  The Company

supplies products to nearly every major global automotive original equipment manufacturer, with

2004 sales to its former parent, General Motors Corporation ("General Motors" or "GM"),

---

[1]      The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates.

3

equaling approximately $15.4 billion, and sales to each of Ford Motor Company,

DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group

exceeding $850 million.

      7.    As part of its growth strategy, Delphi has established an expansive global

presence with a network of manufacturing sites, technical centers, sales offices, and joint

ventures located in every major region of the world.  In the U.S., the Debtors employ

approximately 50,600 people.  These employees work in approximately 44 manufacturing sites

and 13 technical centers across the country, and in Delphi's worldwide headquarters and

customer center located in Troy, Michigan.  Approximately 34,750 of these individuals are

hourly employees, 96% of whom are represented by approximately 49 different international and

local unions.  Outside the United States, the Company's foreign entities employ more than

134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40

countries worldwide.

      8.    Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through

various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these

divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates

(collectively, the "Company") in accordance with the terms of a Master Separation Agreement

between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution

from a North American-based, captive automotive supplier to a global supplier of components,

integrated systems, and modules for a wide range of customers and applications.  Although GM

is still the Company's single largest customer, today more than half of Delphi's revenue is

generated from non-GM sources.

9.      Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base.  The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.      Events Leading To Chapter 11 Filing

10.     In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the marketplace, Delphi's financial condition deteriorated further in the first six months of 2005.  The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[2]

--------

[2]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

11.    The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward looking revenue requirements.  Having concluded that pre-filing discussions with its unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses.  This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan.  The Debtors believe that a substantial segment of

6

Delphi's U.S. business operations must be divested, consolidated, or wound-down through the

chapter 11 process.

14.     Upon the conclusion of this process, the Debtors expect to emerge from

chapter 11 as a stronger, more financially sound business with viable U.S. operations that are

well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all

of its resources to continue to deliver value and high-quality products to its customers globally.

Additionally, the Company will preserve and continue the strategic growth of its non-U.S.

operations and maintain its prominence as the world's premier auto supplier.

Relief Requested

15.     By this Motion, the Debtors seek authority to assume the Purchase Order

Number 450104879, between Delphi and Pillarhouse (U.S.A.), Inc., dated as of May 19, 2005

(the "Contract"), a copy of which is attached hereto as Exhibit A.

Basis For Relief

A.     Summary Of The Contract

16.     Pursuant to the Contract, on May 19, 2005 Delphi, through Delphi

Electronics and Safety, purchased two pieces of equipment from Pillarhouse: an in-line module

pre-heater and an in-line module fluxer.  Pillarhouse agreed to fabricate the equipment and

delivered the equipment to Delphi's plant in Mexico pre-bankruptcy.  The Contract also requires

Pillarhouse to install the equipment in Delphi's plant.  The total Contract price is $77,535.60,

including $27,465.00 for the in-line module pre-heater, $46,129.60 for the in-line module fluxer,

and $3,950.00 for the installation charges.

B.     Assumption Of The Contract

17.     On November 7, 2005, Pillarhouse filed a Motion for Order Fixing a

Deadline for the Debtors to Assume or Reject an Executory Contract with Pillarhouse (U.S.A.),

7

Inc. (Docket No. 917).  On December 1, 2005, this Court entered the Order Under 11 U.S.C. §

365(d)(2) Fixing Deadline For Debtors To Assume Or Reject Executory Contract With

Pillarhouse (U.S.A.) Inc. (Docket No. 1377), which required the Debtors to determine, within ten

days, whether to assume or reject the Contract.  Thereafter, the Debtors evaluated the Contract

and any available alternatives to the Contract, and on December 9, 2005, the Debtors notified

Pillarhouse that they intended to assume the Contract.

18.    Currently there are amounts outstanding under the Contract that must be

cured in connection with the proposed assumption.  The Debtors owe Pillarhouse the sum of

$73,594.60, which represents the Contract price for the equipment, which was delivered to the

Debtors prior to the filing of the chapter 11 petition.  Accordingly, the total cure cost associated

with the assumption of the Contract is $73,594.60 (the "Cure Amount").  Moreover, upon

installation of the equipment the Debtors will pay Pillarhouse the sum of $3,950 for installation

charges.

19.    The equipment covered by the Contract is used in the production of certain

electronic components at one of Delphi's plants in Mexico and is necessary for production of

those components.  At the time the Contract was issued, Delphi bargained for Pillarhouse to

install the equipment, which was an important aspect of the Contract for Delphi.  If the Debtors

were to find another party to install the equipment at a similar price, installation by anyone other

than Pillarhouse could subject the Debtors and their estates to unnecessary risks because any

delay caused by improper installation of the equipment could result in disrupted production of

goods.  Due to the relatively small amounts necessary to cure all defaults under the Contract, the

Debtors have determined that the costs that could be incurred on account of improperly installed

equipment might quickly exceed the total cure costs under the Contract.

20.      Moreover, the Debtors also bargained for a warranty on the equipment in connection with the Contract.  That warranty could, however, be rendered void if anyone other than Pillarhouse were to perform the installation, thus subjecting the Debtors and their estates to additional administrative costs in the event of future equipment failures.  Finally, assumption of the Contract will not impose upon the Debtors additional administrative risks.  After assumption of the Contract and installation of the equipment, Delphi will have performed all of its obligations to Pillarhouse under the Contract, therefore, the likelihood of a breach or rejection by the Debtors after assumption is minimal.

21.      The Debtors believe that rejection of the Contract could pose greater administrative risks than assumption.  Assumption of the Contract would ensure that the equipment is installed properly, allowing for uninterrupted production of goods.  For the foregoing reasons, the Debtors believe that assumption of the Contract is in the best interests of the estates because it will ensure continued production and minimize risks to the Debtors and their estates.

<u>Applicable Authority</u>

22.      Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the Court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  The standard to be applied by a court in determining whether an executory contract or unexpired lease should be assumed is the "business judgment" test, which is premised upon the debtor's business judgment that assumption would be beneficial to its estate.  <u>See</u> <u>Orion Pictures Corp. v. Showtime Networks, Inc.</u> (In re Orion Pictures Corp.), 4 F.3d 1095, 1098-99 (2d Cir. 1993); <u>see also</u> <u>In re Child World, Inc.</u>, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992) (debtor may assume or reject an unexpired lease under § 365(a) in the exercise of its "business judgment"); <u>In re Roman Crest Fruit, Inc.</u>, 35 B.R. 939, 949

9

(S.D.N.Y. 1983); Control Data Corp. v. Zelman, 602 F.2d 38, 42 (2d Cir. 1979). "More exacting

scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with

the Bankruptcy Code's provision for private control of administration of the estate, and threaten

the court's ability to control a case impartially." Richmond Leasing Co. v. Capital Bank, N.A.,

762 F.2d 1303, 1311 (5th Cir. 1985).

23.    If the debtor's business judgment has been exercised reasonably, a court

should approve the assumption of an executory contact. See, e.g., NLRB v. Bildisco and

Bildisco, 465 U.S. 513, 523 (1984); Group of Inst'l. Investors v. Chicago, Milwaukee, St. Paul &

Pacific R.R. Co., 318 U.S. 523 (1943); Cleveland Hotel Protective Comm. v. Nat'l City Bank of

Cleveland (In re Van Sweringen Corp.), 155 F.2d 1009, 1013 (6th Cir.), cert. denied, 329 U.S.

766 (1946); In re Child World, Inc., 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992); In re Ionosphere

Clubs, Inc., 100 B.R. 670, 673 (Bankr. S.D.N.Y. 1989); see also In re Orion Pictures Corp., 4

F.3d at 1098-99; In re RCN Corp., Case No. 04-13638 (RDD), June 22, 2004 Hr'g Tr. ¶¶ 50:24–

50:2, at 46. Once the debtor has satisfied the business judgment standard by showing that

assumption will benefit the estate, the court "should not interfere 'except upon a finding of bad

faith or gross abuse of [the debtor's] business discretion.'" Id. at 465 (citing Lubrizol Enters.,

Inc. v. Richmond Metal Finishers Inc., 756 F.2d 1043, 1047 (4th Cir. 1985).

24.    The business judgment rule shields a debtor's management from judicial

second-guessing. In re Farmland Indus., Inc., 294 B.R. at 913 (quoting In re Johns-Manville

Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986)) ("'[T]he Code favors the continued

operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's

management decisions.'"). Once the Debtors articulate a valid business justification, "[t]he

business judgment rule 'is a presumption that in making a business decision the directors of a

10

corporation acted on an informed basis, in good faith and in the honest belief that the action was

in the best interests of the company.'"  In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y.

1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

        25.      Upon finding that the Debtors have exercised their sound business

judgment in determining that assumption of the Contract is in the best interests of their estates,

this Court should approve assumption under section 365(a) of the Bankruptcy Code.  In re Gucci,

193 B.R. 411, 415-17 (S.D.N.Y. 1996) (affirming bankruptcy court's approval of assumption of

executory contract upon determining that assumption "was in the best interest of the estate");

Blue Cross Blue Shield of Conn. v. Gurski (In re Gurski), Nos. 94-51202 & 3:95CV1883, 1996

WL 684397, at *2 (D. Conn. Jan. 25, 1996) (affirming bankruptcy court's determination that

executory contracts were beneficial to debtor such that debtor could assume them under section

365(a)).

        26.      In determining to assume the Contract, the Debtors clearly have satisfied

the requisite "business judgment" standard.  As stated above, the Debtors have determined that

rejection of the Contract could pose greater administrative risks than assumption.  Moreover,

although the Debtors will have to pay a nominal amount to cure the defaults under the Contract,

doing so will ensure that the equipment is installed properly, allowing for uninterrupted

production of goods.   For all of the foregoing reasons, the Debtors have determined to assume

the Contract.

        27.      The Debtors submit that the statutory requirements of section 365(b)(1) of

the Bankruptcy Code have been satisfied because there are no monetary defaults existing under

the Contract to be assumed other than payment of the Cure Amount.  Based on the foregoing,

the Debtors believe that the requirements of 365 have been satisfied and that this Court should grant the relief requested in the Motion.

Notice

28.    Notice of this Motion has been provided in accordance with the Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance With Local Bankr. R. 1007-2(e), entered by this Court on October 14, 2005 (Docket No. 245). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

29.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

12

WHEREFORE the Debtors respectfully request that the Court enter an order (a) authorizing the assumption of the Contract, and (b) granting the Debtors such other further relief as is just.

Dated:  New York, New York
        December 16, 2005

                    SKADDEN, ARPS, SLATE, MEAGHER
                       & FLOM LLP

                    By: s/ John Wm. Butler, Jr.
                        John Wm. Butler, Jr. (JB 4711)
                        John K. Lyons (JL 4951)
                        Ron E. Meisler (RM 3026)
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois  60606
                    (312) 407-0700

                            - and -

                    By: s/ Kayalyn A. Marafioti
                        Kayalyn A. Marafioti (KM 9632)
                        Thomas J. Matz (TM 5986)
                    Four Times Square
                    New York, New York 10036
                    (212) 735-3000

                    Attorneys for Delphi Corporation, et al.,
                      Debtors and Debtors-in-Possession

13

# DELPHI   847-5~~~~~~

**Buyer:**

DELPHI
ELECTRONICS & SAFETY
P.O. Box 9005
KOKOMO IN 46904-9005

**Purchase Order**

| PO Number | |
|---|---|
| 450104679 | Date Issued |
| Version | 05/19/2005 |
| 05/20/2005 02:52:02 EST | |

**Deliver to:**

DELPHI E& S DELNOSA Plant 5-6
LIDC Receiving Warehouse
ATTN: VINCENT HALFACRE
956-228-7825
702 Joaquin Cavazos Rd
LOS INDIOS TX 78567

Delivery date:  06/15/2005

PILLARHOUSE INC
635 TOUHY AVE
ELK GROVE VILLAGE IL 60007

Vendor No:  1011619
DUNS No:  877956292

**Payment Terms:** ZMN2        **Currency:** USD

Payment settled on 2nd, 2nd Month

**Incoterms:** FOB Freight Collect

| Item No | Material No/Item Identifier No   Description | Total Order Quantity | Plant Requester | | | |
|---|---|---|---|---|---|---|
| 00010 | PR10168810 00010 | 1.000 | DAHQ DELPHI D HEADQUARTERS | | | |
| | IN-LINE MODULE PRE-HEATER | | SMITLEY, B | | | |
| | SMITLEY, B 765-451-1055 PR458510 IND-006856 Warranty: 1 year parts and labor | | | | | |

| Delivery Date | Scheduled Quantity | Price | Price Unit | UOM | Value |
|---|---|---|---|---|---|
| 06/15/2005 | 1.000 | 27,456.00 | 1 | PC | 27,456.00 |
| Net Line Item Value | | | | USD | 27,456.00 |

| Item No | Material No/Item Identifier No | Total Order Quantity | Plant Requester | | | |
|---|---|---|---|---|---|---|
| 00020 | PR10168810 00020 | 1.000 | DAEQ DELPHI D HEADQUARTERS | | | |
| | IN-LINE MODULE FLUXER | | SMITLEY, B | | | |

| Delivery Date | Scheduled Quantity | Price | Price Unit | UOM | Value |
|---|---|---|---|---|---|
| 06/15/2005 | 1.000 | 46,129.60 | 1 | PC | 46,129.60 |
| Net Line Item Value | | | | USD | 46,129.60 |

Purchasing Contact: Drake, Greg

Phone: 765-451-2019

Fax:  765-451-5750

Contact Address:

Delphi E & S
One Corporate Center MS:CTLLM,
KOKOMO IN 46902

EST

**DELPHI**

PILLARHOUSE INC
635 TOUHY AVE
ELK GROVE VILLAGE IL 60007

## Purchase Order

| PO Number | Date Issued |
|---|---|
| 450104879 | 05/19/2005 |
| Version | |
| 05/20/2005 02:52:02 EST | |

| Item No. | Material No/Item Identifier No | Total Order Quantity | Plant |
|---|---|---|---|
| | Description | | Requester |
| 00030 | PR10168810 00030 | 3,950 | DAHQ DELPHI D HEADQUARTERS |
| | INSTALLATION CHARGES | | SMITLEY, B |

| Delivery Date | Scheduled Quantity | Price | Price Unit | UOM | Value |
|---|---|---|---|---|---|
| 06/15/2005 | 3,950.000 | 1.00 | 1 | DOL | 3,950.00 |
| Net Line Item Value | | | | USD | 3,950.00 |

| Total net value | USD | 77,535.60 |
|---|---|---|

### Notes:

Seller acknowledges and agrees that Buyer's General Terms and Conditions are incorporated in, and a part of, this contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document issued by Buyer or accepted in writing by Buyer, whether expressed in written form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively referred to as this "Contract"). A copy of Buyer's General Terms and Conditions is available upon written request to Buyer or via the internet at Delphi's website, delphi.com. Seller acknowledges and agrees that it has read and understands Buyer's General Terms and Conditions. If Seller accepts this Contract in writing or commences any of the work or services which are the subject of this Contract, Seller will be deemed to have accepted this Contract and Buyer's General Terms and Conditions in their entirety without modification. Any additions to, changes in, modifications of, or revisions of this Contract (including Buyer's General Terms and Conditions) which Seller proposes will be deemed to be rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals in writing.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
* PAYMENT ISSUES AND QUESTIONS REGARDING SHIPPED *
* MATERIAL SHOULD BE DIRECTED TO:                        *
* DISBURSEMENT SERVICES AT (248)874-4636.  (A2) *
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
DO NOT INVOICE FOR SHIPPED MATERIAL, DELPHI-D IS
'PAY ON RECEIPT' AND INVOICES ARE NOT REQUIRED.
-------------------------------------
INVOICES ARE REQUIRED AND MUST BE SUBMITTED FOR
SERVICES AND ITEMS WHICH ARE NOT SHIPPED.
-------------------------------------
PLEASE SUBMIT THESE TO:
DELPHI DELCO ELECTRONICS CORP
ATTN: MANUAL RECEIPTS PROCESSING MS-9A241
P O BOX 9005
KOKOMO, IN  46904-9005
-------------------------------------
\*\*\*CALIFORNIA SHIPMENTS\*\*\*  . DELPHI-D DOES NOT

PILLARHOUSE INC
635 TOUHY AVE
ELK GROVE VILLAGE IL 60007

## Purchase Order

PO Number
450104879
Version
05/20/2005 02:52:02 EST

Date Issued
05/19/2005

| Item No. Material No/Item Identifier No | Total Order Quantity | Plant |
| Description | | Requester |

### Notes Continued:

HAVE A DIRECT PAYMENT PERMIT IN CALIFORNIA.
DELCO DOES HAVE DIRECT PAY PERMITS IN INDIANA,
MICHIGAN, TEXAS AND WISCONSIN.
--------------
YOU MUST PLACE THE FOLLOWING ON YOUR PACKING SLIP:
- PURCHASE ORDER (ONLY ONE PURCHASE ORDER NUMBER
PER PACKING SLIP)
- DELPHI-D "ITEM IDENTIFICATION NUMBER (ID)" FROM
PURCHASE ORDER FOR EACH DELIVERED ITEM
- LIST DELPHI-D DESCRIPTION PER PURCHASE ORDER FOR
EACH LINE ITEM DELIVERED FOLLOWED BY YOUR
DESCRIPTION IF DESIRED.
- EQUIPMENT SERIAL NUMBER(S)
--------------
ADDITIONAL PACKING SLIP INFORMATION:
- EACH BOX/CRATE MUST CONTAIN A COMPLETE PACKING
SLIP FOR THE ENTIRE DELIVERY
- HIGHLIGHT ON THE PACKING SLIP THE APPLICABLE
PURCHASE ORDER ITEM IDENTIFICATION NUMBER FOR
EACH ITEM LOCATED IN THE BOX/CRATE
- PACKING SLIP MUST BE ENCLOSED IN A CLEAR PLASTIC
ENVELOPE AND AFFIXED TO THE OUTSIDE (WITH A COPY
INSIDE) OF EACH BOX/CRATE.
--------------
ROUTING: REFER TO ROUTING LETTER DATED 02/13/03 FOR
INSTRUCTIONS. CALL DELPHI-D TRANSPORATION AT
(765)451-4078 OR -4079 FOR ADDITIONAL INFORMATION.
FREIGHT TERMS ARE 'FOB ORIGIN,FREIGHT COLLECT'.
BUYER WILL ONLY PAY FREIGHT CHARGES IF THE SELLER
USES THE BUYER SELECTED CARRIER AND SHIPS COLLECT.
THE SELLER AGREES TO PAY ALL FREIGHT INVOICES WHEN
SELLER DEVIATES FROM BUYER SPECIFIED CARRIER WITHOUT
PRIOR APPROVAL FROM DELPHI-D TRANSPORTATION.
--------------

Delphi requires 100% on time delivery performance from suppliers. If you anticipate problems in delivering materials and/or completing services by the date specified on the Buyer's purchase order, the Delphi Buyer should be notified immediately.
--------------
CHANGES IN SPECIFICATIONS AFFECTING PRICE AND/OR
LEADTIME, WHETHER INITIATED BY SUPPLIER OR DELPHI
DELCO ELECTRONICS CORP MUST NOT BE MADE WITHOUT

**DELPHI**                                                                Delphi Electronics and Safety

| PILLARHOUSE INC<br>635 TOUHY AVE<br>ELK GROVE VILLAGE IL 60007 | **Purchase Order** | |
|---|---|---|
| | PO Number<br>450104879<br>Version<br>05/30/2005 02:52:02 EST | Date Issued<br>05/19/2005 |

| Item No. | Material No/Item Identifier No. | Total Order Quantity | Plant |
|---|---|---|---|
| | Description | | Requester |

**Notes Continued**

PRIOR APPROVAL BY DELPHI PURCHASING VIA A PURCHASE
ORDER AMENDMENT. ANY CHANGES IN DELIVERY DATE FOR
ANY REASON WHATSOEVER WILL BE REPORTED PROMPTLY IN
WRITING TO THE BUYER WITH DETAILED EXPLANATION.
**********************************************

***********************************************
IN ADDITION TO THE REQUIREMENTS SPECIFIED, THE
EQUIPMENT MUST COMPLY WITH DELPHI DELCO ELECTRONICS
CORP'S EQUIPMENT APPROVALS PROCEDURE AND ONE OF THE
FOLLOWING STANDARDS ASSIGNED BY THE DELPHI-D
EQUIPMENT APPROVALS OFFICE: A) STANDARD INDUSTRIAL
EQUIPMENT SPECIFICATIONS,OR, B) CUSTOM INDUSTRIAL
EQUIPMENT SPECIFICATION.
**********************************************

***********************************************
IF THIS SHIPMENT REQUIRES AN AIR-RIDE OR PADDED VAN
TO INSURE ITS SAFETY, ROUTE VIA NORTH AMERICAN VAN
LINES. ARRANGE ALL DETAILS THROUGH GUYER THE MOVER
(765) 457-6197 OR 800-783-8268.
**********************

******************
Calibration Service Requirements:
1. QS9000 registration requires Delphi to use inspection / test laboratory suppliers that have ISO/IEC Guide 25 (or ISO/IEC 17025) accreditation. The OEM
may be used whenever an accredited source cannot be found.
2. Calibration Services on Delphi equipment shall be performed to original manufacturer's specification. If such specification is not available, equivalent
reference standards (e.g. BS, ISO, JIS, and DIN) shall be used.
3. All test/measurement instruments used to calibrate Delphi equipment shall be traceable to National/International Standards (e.g. NIST, NML, NPT, ETL, and
NRC).
4. If calibration standard is found to be out of tolerance, upon re-calibration of the standard, the supplier shall determine validity of previous measurements made
on Delphi equipment and shall provide for immediate re-calibration of all affected equipment when necessary.
5. The supplier shall provide calibration report for every piece of equipment calibrated. The report shall include the following:
A) Type of Equipment
B) Identification number of equipment
C) Identification number of calibration standard
D) Traceability information of calibration standard
E) Check method of calibration activity (e.g. reference
manual description of equipment or equivalent)
F) Calibration results stating:
F1. Test Items
F2. Measured values as received
F3. Measured values after adjustment (If adjustment were

DELPHI

05-44481-rdd   Doc 1627   Filed 12/27/05   Entered 12/27/05 14:41:48   Main Document
Pg 196 of 219
Delphi Electronics and Safety

Page  5  of 7

PILLARHOUSE INC
635 TOUHY AVE
ELK GROVE VILLAGE IL 60007

## Purchase Order

| | |
|---|---|
| PO Number | Date Issued |
| 450104879 | 05/19/2005 |
| Version | |
| 05/30/2005 02:52:02 EST | |

| Item No. | Material No/Item Identifier No. Description | Total Order Quantity | Plant Requester |
|---|---|---|---|

### Notes Continued:

inade)
F4. Acceptance Criteria
G) Statement of conformance to specification after

calibrations
H) Name of person responsible for the calibration
I) Date of the calibration
6. Calibration sticker shall be affixed on all Delphi's equipment that is calibrated. The information shall contain the date of calibration, identification number of equipment or calibration reference number.
7. Any variation from the above requirements for approval to repair equipment, which cannot be calibrated, must have written approval from the buyer.
***********************

***************************************************
A PROPERLY COMPLETED CERTIFICATE OF ORIGIN,
NAFTA CERTIFICATE WHERE APPLICABLE (CUSTOMS FORM 434)
AND A MANUFACTURERS AFFIDAVIT STATING THE COUNTRY OF
ORIGIN BE INCLUDED WITH THE SHIPPING DOCUMENTS FOR
THE MATERIAL ON THIS PURCHASE ORDER.          (NT)
************************************************

***************************************************
WARRANTY AND SPARE PARTS INSTRUCTIONS
*********
PRIOR TO THE SHIPPING OF EQUIPMENT TO DELPHI DELCO
ELECTRONICS SYSTEMS YOU MUST "ELECTRONICALLY" PROVIDE
THE FOLLOWING INFORMATION FOR EACH PIECE OF EQUIPMENT
TO THE INDIVIDUALS LISTED:
-PURCHASE ORDER NUMBER
-EQUIPMENT DESCRIPTION (S) & MODEL NUMBER (S),
IF APPLICABLE
-EQUIPMENT SERIAL NUMBER (S)
-LIST OF RECOMMENDED SPARE PARTS INCLUDING:
SPARE PARTS DESCRIPTIONS, OEM SPARE PART NUMBERS
OIM SPARE PART NUMBERS, SPARE PART PRICES, AND
SPARE PART PRICING EXPIRATION DATE
-DESIGNATE WHICH PARTS ARE CONSIDERED "CONSUMABLE" VERSUS
THOSE COVERED UNDER WARRANTY

-EQUIPMENT WARRANTY PERIOD
-EQUIPMENT WARRANTY START DATE
ELECTRONICALLY TRANSMIT THIS INFORMATION TO THE FOLLOWING INDIVIDUALS:
THOMAS.D.RIGLE@DELPHI.COM
MIKE.SALYERS@SETECHUSA.COM

**DELPHI**

PILLARHOUSE INC
635 TOUHY AVE
ELK GROVE VILLAGE IL 60007

**Purchase Order**

PO Number                                    Date Issued
450104879                                    05/13/2005
Version
05/20/2005 02:52:02 EST

| Item No. | Material No/Item Identifier No. Description | Total Order Quantity | Plant Requester |
|----------|---------------------------------------------|----------------------|-----------------|

**Notes Continued**

REQUESTOR (WHO ORDERED), AS IDENTIFIED ON THE PURCHASE ORDER.
FAILURE TO PROVIDE THIS INFORMATION AT TIME OF SHIPMENT MAY NEGATIVELY IMPACT PAYMENT PROCESSING.
*****************************************************************

***************************************************************THE ULTIMATE DESTINATION OF THE MATERIAL ON THIS PURCHASE
ORDER IS MEXICO.
***************************************************************

***************************************************************
IMPORTANT NOTICE TO SUPPLIERS:
PLEASE COMPLY STRICTLY TO DELPHI'S SAFETY, HEALTH AND ENVIRONMENTAL PRACTICES WHILE WORKING IN DELPHI'S PREMISES.

***************************************************************
Delphi requires 100% on time delivery performance from suppliers. If you anticipate problems in delivering materials and/or completing services by the date
specified on the Buyer's purchase order, the Delphi Buyer should be notified immediately.
***************************************************************
Restricted, toxic, and hazardous materials - Suppliers are required to comply with current governmental and safety constraints on restricted, toxic and hazardous
materials; as well as environmental, electrical and electromagnetic considerations applicable to the country of manufacture and sale. This relates to both the
saleable product and the manufacturing processes. (Refer also to Terms and Conditions No. 8 "Ingredients Disclosure and Special Warnings Instructions").
Commencement of any work or service under this order shall constitute seller's acceptance of these responsibilities. If you do not accept these responsibilities,
please contact the appropriate Delphi's Buyer.


***************************************************************
Seller acknowledges and agrees that Buyer's General Terms and Conditions are incorporated in, and a part of, this contract and each purchase order, release,
requisition, work order, shipping instruction, specification and other document issued by Buyer or accepted in writing by Buyer, whether expressed in written
form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively
referred to as this "Contract"). A copy of Buyer's General Terms and Conditions is available upon written request to Buyer or via the internet at Delphi's website,
delphi.com. Seller acknowledges and agrees that it has read and understands Buyer's General Terms and Conditions. If Seller accepts this Contract in writing or
commences any of the work or services which are the subject of this Contract, Seller will be deemed to have accepted this Contract and Buyer's General Terms
and Conditions in their entirety without modification. Any additions to, changes in, modifications of, or revisions of this Contract (including Buyer's General
Terms and Conditions) which Seller proposeswill be deemed to be rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals
in writing.
***************************************************************
Supplier agrees to make deliveries according to the agreed upon delivery date(s), and to pay to Buyer liquidated damages amounting to 1.00% of the contract
price per week, for each week (or part thereof) of any delay. Additional charges incurred by the supplier to achieve agreed upon delivery date are the supplier's
responsibility and will not be reimbursed by Delphi.
***************************************************************

***************************************************************
IN ACCORDANCE WITH THE PROVISIONS OF ARTICLE #17,
ON THE T&C, SELLER AGREES TO

**DELPHI**                                                Delphi Electronics and Safety

PILLARHOUSE INC
635 TOUHY AVE
ELK GROVE VILLAGE IL 60007

### Purchase Order

PO Number                                    Date Issued
450104879                                    05/19/2005
Version
05/20/2005 02:52:02 EST

---

**Item No.  Material No/Item Identifier No  Total Order Quantity  Plant
Description                                         Requester**

---

**Notes:Continued:**

CARRY AND TO FURNISH CERTIFICATES FROM ITS INSURANCE

CARRIERS SHOWING THAT IT CARRIES INSURANCE IN THE
MINIMUM LIMITS:

1. WORKER'S COMPENSATION - STATUATORY LIMITS FOR

STATE OR STATES IN WHICH THE WORK IS TO BE PERFORMED.
2. EMPLOYER'S LIABILITY - $250,000.
3. COMPREHENSIVE GENERAL LIABILITY (INCLUDING
PRODUCTS/COMPLETED, OPERATIONS, AND BLANKET

CONTRACTUAL LIABILITY) $1,000,000 PER PERSON.

$1,000,000 PER OCCURRENCE PERSONAL INJURY;

$1,000,000 PER OCCURRENCE PROPERTY DAMAGE,

COMBINED SINGLE LIMIT.
4. AUTOMOBILE LIABILITY (INCLUDING OWNED, NON-

OWNED, AND HIRED VEHICLES) - $1,000,000 PER PERSON.

$1,000,000 PER OCCURRENCE PERSONAL INJURY AND

PROPERTY DAMAGE COMBINED, SINGLE LIMIT.

MAIL ABOVE TO DELPHI-D, PURCHASING, M/S CTLLM  OR
FAX#: 765-451-5750, (REV 8.15.03)
CONTRACTORS ARE ADVISED THAT THEIR EMPLOYEES MAY HAVE
THE POTENTIAL OF EXPOSURE TO WORKPLACE CHEMICALS.
CONCERNS REGARDING THIS MATTER CAN BE DIRECTED TO
DELPHI DELCO ELECTRONICS CORP ENGINEERING DEPT.

AT (765) 451-5109.

**Pillarhouse (U.S.A) Inc.**
635 Touhy Ave
ELK GROVE VILLAGE, IL  60007



Customer No.:  DELPHI-INDIO
Invoice No.:  20768

Bill To:  **Delphi Electronics & Safety**
          * Do Not Invoice *

Ship to:  **DELPHI/E & Delnosa**
          LIDC Receiving Warehouse
          601 JOAQUIN CAVAZOS RD.
          LOS INDIOS, TX  78567

| Date | Ship Via | F.O.B. | Terms |
|---|---|---|---|
| 09/19/05 | Panalpina | | 30 days from invoice date |

| Purchase Order Number | Order Date | Sales Person | Our Order Number |
|---|---|---|---|
| 450104879 | 05/31/05 | | 13692 |

| Quantity Required | Shipped | B.O. | Item Number | Description | Unit Price | Amount |
|---|---|---|---|---|---|---|
| 1 | 1 | | | Pillarhouse InLine Module Preheater - Line Item #00010 Delphi ID # PR10168810 00010 | 27456.00 | 27456.00 |
| | | | | Machine Serial # IH071 | | |
| 1 | 1 | | | Pillarhouse InLine Module Fluxer - Line Item#00020 Delphi ID# PR10168810 00020 | 46129.60 | 46129.60 |
| | | | | Machine Serial # IF158 | | |
| 1 | 1 | | | Installation Charge Line Item # 00030 Delphi ID#PR10168810 00030 | 3950.00 | 3950.00 |
| | | | | All freight and customs charges to be forwarded to customer per quotation~ | | |
| | | | | Re: Delphi PO# 450104879 Attn: B. Smitley Purchaser : Greg Drake | | |

Invoice subtotal    77535.60

Invoice total    77535.60

Thank You

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                :
In re                         :     Chapter 11
                                :
DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                                :
                Debtors.    :     (Jointly Administered)
                                :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER UNDER 11 U.S.C. § 365(a)
AUTHORIZING DEBTORS TO ASSUME
EXECUTORY CONTRACT WITH PILLARHOUSE (U.S.A.), INC.

("PILLARHOUSE ASSUMPTION ORDER")

Upon the motion, dated December 16, 2005 (the "Motion"), of Delphi

Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order") pursuant to 11

U.S.C. § 365(a) authorizing the debtors to assume an executory contract with Pillarhouse

(U.S.A.), Inc. ("Pillarhouse"); and upon the record of the hearing held on the Motion; and this

Court having determined that the relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors, and other parties-in-interest; and it appearing that proper

and adequate notice of the Motion has been given and that no other or further notice is necessary;

and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.        The Motion is GRANTED.

2.        The Debtors' decision to assume the Contract is reasonable and

appropriate under the circumstances and the assumption of the Contract is hereby approved.

3.      The Debtors are authorized to take any and all actions necessary or

desirable to perform the Debtors' obligations and transactions contemplated by the Contract.

4.      Delphi shall pay Pillarhouse the sum of $73,594.60 as a cure amount.

Such payment shall be in full and complete satisfaction of all of Delphi's outstanding obligations

under the Contract.

5.      The charge for installation of the equipment in the amount of $3,950 shall

be granted administrative priority status under sections 503(b) and 507(a)(1) of the Bankruptcy

Code and the Debtors shall pay such amount in accordance with the terms of the Contract.

6.      This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this Order.

7.      The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
        January ___, 2006


_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT I

**Hearing Date and Time: January 5, 2006, 10:00 a.m.**
**Objection Deadline: December 29, 2005, 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
        In re                             :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05-44481 (RDD)
                                          :
                          Debtors.        :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF MOTION TO EXTEND TIME PERIOD WITHIN
WHICH DEBTORS MAY REMOVE ACTIONS UNDER
28 U.S.C. § 1452 AND FED. R. BANKR. P. 9006 AND 9027

PLEASE TAKE NOTICE that on December 16, 2005, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed a Motion To Extend The Time Period Within Which Debtors May Remove Actions Under 28 U.S.C. § 1452 And Fed. R. Bankr. P. 9006 And 9027 (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Motion will be held on January 5, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance With Local Bankr. R. 1007-2(e) (the "Case Management Order") (Docket No. 245), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

2

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the

Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue,

New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for the agent under the

postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New

York 10017 (Att'n:  Marlane Melican), (v) counsel for the Official Committee of Unsecured

Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n:

Mark A. Broude), and (vi) the Office of the United States Trustee for the Southern District of

New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M.

Leonhard), in each case so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time)**

**on December 29, 2005** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Case Management Order will be considered by the Bankruptcy

Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance

with the procedures set forth herein and in the Case Management Order, the Bankruptcy Court

may enter an order granting the Motion without further notice.

Dated:  New York, New York
      December 16, 2005

                    SKADDEN, ARPS, SLATE, MEAGHER
                      & FLOM LLP

                    By: s/ John Wm. Butler, Jr.
                      John Wm. Butler, Jr.
                      John K. Lyons
                      Ron E. Meisler
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois  60606
                    (312) 407-0700

                      - and -

                    By: s/ Kayalyn A. Marafioti
                      Kayalyn A. Marafioti (KM 9632)
                      Thomas J. Matz (TM 5986)
                    Four Times Square
                    New York, New York 10036
                    (212) 735-3000

                    Attorneys for Delphi Corporation, et al.,
                      Debtors and Debtors-in-Possession

**Hearing Date and Time: January 5, 2006, 10:00 a.m.**
**Objection Deadline: December 29, 2005, 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                               :
        In re                     :     Chapter 11
                                 :
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                                 :
                                 :     (Jointly Administered)
            Debtors.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION TO EXTEND TIME PERIOD WITHIN
WHICH DEBTORS MAY REMOVE ACTIONS UNDER
<u>28 U.S.C. § 1452 AND FED. R. BANKR. P. 9006 AND 9027</u>

("REMOVAL DEADLINE EXTENSION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the

"Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order pursuant to

28 U.S.C. § 1452 and Rules 9006 and 9027 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") to extend the time period within which the Debtors may remove pending

proceedings.  In support of this Motion, the Debtors respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8, 2005, Delphi and certain of its U.S. subsidiaries (the "Initial

Filers") filed voluntary petitions in this Court for reorganization relief under chapter 11 of title

11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  On

October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers,

collectively, the "Debtors") filed voluntary petitions in this Court for reorganization relief under

the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their

properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy

Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11

cases (Dockets Nos. 28 and 404).

2.    On October 17, 2005, the Office of the United States Trustee (the "U.S.

Trustee") appointed an official committee of unsecured creditors (the "Creditors' Committee").

No trustee or examiner has been appointed in the Debtors' cases.

2

3.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.        The statutory predicates for the relief requested herein are 28 U.S.C.

section 1452 and Bankruptcy Rules 9006(b) and 9027.

B.        Current Business Operations Of The Debtors

5.        With more than 180,000 employees worldwide, global 2004 revenues of

approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1

billion,[1] Delphi ranks as the fifth largest public company business reorganization in terms of

revenues, and the thirteenth largest public company business reorganization in terms of assets.

Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations

without supervision from the Bankruptcy Court, and will not be subject to the chapter 11

requirements of the U.S. Bankruptcy Code.

6.        Over the past century, the operations which are now owned by Delphi

have developed leading global technology innovations with significant engineering resources and

technical competencies in a variety of disciplines.  Today, the Company (as defined below) is

arguably the single largest global supplier of vehicle electronics, transportation components,

integrated systems and modules, and other electronic technology.  The Company's technologies

and products are present in more than 75 million vehicles on the road worldwide.  The Company

supplies products to nearly every major global automotive original equipment manufacturer, with

2004 sales to its former parent, General Motors Corporation ("General Motors" or "GM"),

equaling approximately $15.4 billion, and sales to each of Ford Motor Company,

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates.

3

DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group

exceeding $850 million.

      7.    As part of its growth strategy, Delphi has established an expansive global

presence with a network of manufacturing sites, technical centers, sales offices, and joint

ventures located in every major region of the world.  In the U.S., the Debtors employ

approximately 50,600 people.  Those employees work in approximately 44 manufacturing sites

and 13 technical centers across the country, and in Delphi's worldwide headquarters and

customer center located in Troy, Michigan.  Approximately 34,750 of these individuals are

hourly employees, 96% of whom are represented by approximately 49 different international and

local unions.  Outside the United States, the Company's foreign entities employ more than

134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40

countries worldwide.

      8.    Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through

various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these

divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates

(collectively, the "Company") in accordance with the terms of a Master Separation Agreement

between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution

from a North American-based, captive automotive supplier to a global supplier of components,

integrated systems, and modules for a wide range of customers and applications.  Although GM

is still the Company's single largest customer, today more than half of Delphi's revenue is

generated from non-GM sources.

9.    Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base.  The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.    Events Leading To Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the marketplace, Delphi's financial condition deteriorated further in the first six months of 2005.  The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[2]

11.    Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy

_____

[2]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

liabilities and operational restrictions driven by collectively bargained agreements, including

restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of

which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle

production environment for domestic OEMs resulting in the reduced number of motor vehicles

that GM produces annually in the United States and related pricing pressures, and (c) increasing

commodity prices.

12.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward looking revenue requirements.  Having concluded that

pre-filing discussions with its unions and GM were not leading to the implementation of a plan

sufficient to address the Debtors' issues on a timely basis, the Company determined to commence

these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and

preserve value.

13.    Through the reorganization process, the Debtors intend to achieve

competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive

legacy liabilities and burdensome restrictions under current labor agreements and realigning

Delphi's global product portfolio and manufacturing footprint to preserve the Company's core

businesses.  This will require negotiation with key stakeholders over their respective

contributions to the restructuring plan or, absent consensual participation, the utilization of the

chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned

in the Company's transformation plan.  The Debtors believe that a substantial segment of

Delphi's U.S. business operations must be divested, consolidated, or wound-down through the

chapter 11 process.

6

14.     Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

Relief Requested

15.     By this Motion, the Debtors request entry of an order pursuant to Bankruptcy Rule 9006(b) extending by an additional 90 days the period during which the Debtors may remove actions pursuant to 28 U.S.C. § 1452 and Bankruptcy Rule 9027.  The Debtors propose that the time by which they may file notices of removal with respect to any actions pending on the Petition Date be extended to the later to occur of (a) April 6, 2006, or (b) 30 days after entry of a order terminating the automatic stay with respect to any particular action sought to be removed without prejudice to the Debtors' rights to seek further extensions of the period during which the Debtors may remove actions.

Basis For Relief

A.     Applicable Authority

16.     28 U.S.C. § 1452 and Bankruptcy Rule 9027 govern the removal of pending civil actions.  Section 1452(a) provides:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).  Bankruptcy Rule 9027(a)(2) further provides, in pertinent part:

7

> If the claim or cause of action in a civil action is pending when a case under the
> [Bankruptcy] Code is commenced, a notice of removal may be filed [in the bankruptcy
> court] only within the longest of (A) 90 days after the order for relief in the case under
> the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of
> action in a civil action has been stayed under § 362 of the Code, or (C) 30 days after a
> trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the
> order for relief.

Fed. R. Bankr. P. 9027(a)(2).

17.    Bankruptcy Rule 9006(b) provides that the Court can extend unexpired

time periods:

> [W]hen an act is required or allowed to be done at or within a specified period by these
> rules or by a notice given thereunder or by order of court, the court for cause shown may
> at any time in its discretion with or without motion or notice order the period
> enlarged if the request therefore is made before the expiration of the period originally
> prescribed or as extended by a previous order . . . .

18.    Fed. R. Bankr. P. 9006(b)(1).  It is well settled that this Court is authorized

to expand the removal period as requested herein.  See Jandous Elec. Constr. Corp. v. City of

New York (In re Jandous Electric Construction Corp.), 106 B.R. 48, 50 (Bankr. S.D.N.Y. 1989)

(implying that timely filing motion for enlargement of time period for removal is often granted);

Stamm v. Rapco Foam, Inc., 21 B.R. 715, 718 (Bankr. W.D. Pa. 1982) (court may enlarge time

limit for filing of application for removal in appropriate circumstances); Circle Litho, Inc., v.

Ryder Truck Lines, Inc. (In re Circle Litho, Inc.), 12 B.R. 752, 756 (Bankr. D. Conn. 1981) ("All

time limitations in the rules are subject to Bankruptcy Rule 9006 which generally permits time

limits set by the rules to be enlarged or reduced").  This Court has granted extensions of the

removal period on numerous occasions.  See, e.g., In re Tower Automotive, Inc. et al., Case No.

05-10578 (Bankr. S.D.N.Y. Oct. 12, 2005) (extending removal deadline six months without

prejudice for further requests); In re WorldCom, Inc., et al., Case No. 02-13533 (Bankr. S.D.N.Y.

Oct. 8, 2002) (extending debtors' removal deadline through confirmation of plan of

8

reorganization); <u>In re Enron Corp., et al.</u>, Case No. 01-16034 (Bankr. S.D.N.Y. Feb. 28, 2002,

May 30, 2002) (extending debtors' removal deadline for three months without prejudice to

further requests); <u>In re Northwest Airlines Corporation, et al.</u>, Case No. 05-17930 (Bankr.

S.D.N.Y. Nov. 29, 2005) (extending debtors' removal deadline for six months without prejudice

to further requests); <u>In re Global Crossing Ltd., et al.</u>, Case Nos. 02-40187 through 02-40241,

02-11982 (Bankr. S.D.N.Y. May 1, 2002) (extending debtors' removal deadline through

confirmation of plan of reorganization); <u>In re The Singer Company N.V., et al.</u>, Case Nos. 99-

10578 through 99-10607, 99-10613, and 99-10616 through 99-10629 and 00-10423 (Bankr.

S.D.N.Y. Nov. 18, 1999, Feb. 24, 2000, June 22, 2000) (granting numerous extensions of 90-day

time period in which to seek removal without prejudice to further requests).

B.    The Debtors Require Additional Time To Determine Which
      <u>Of The State Court Actions, If Any, They Will Remove</u>

            19.    The Debtors are parties to numerous judicial and administrative

proceedings currently pending in various courts or administrative agencies throughout the United

States (collectively, the "Actions").  The Actions involve a wide variety of claims.  The period

during which the Debtors may remove Actions expires on the later of (a) January 6, 2006, (b) 30

days after entry of an order terminating the automatic stay with respect to the particular action

sought to be removed, or (c) 30 days after a trustee qualifies in a chapter 11 reorganization case

but not later than 180 days after the order for relief.  Because of the number of Actions involved

and the wide variety of claims, the Debtors would like to ensure that they have additional time to

determine which, if any, of the Actions should be removed and, if appropriate, transferred to this

district.

            20.    The Debtors submit that the relief requested is in the best interests of their

estates and creditors.  The extension sought will afford the Debtors a sufficient opportunity to

make fully informed decisions concerning the possible removal of the Actions, protecting the

Debtors' valuable right to adjudicate lawsuits economically pursuant to 28 U.S.C. § 1452 if the

circumstances warrant removal.  Moreover, the Debtors' adversaries will not be prejudiced by

such an extension because such adversaries may not prosecute the Actions absent relief from the

automatic stay.  Furthermore, nothing herein will prejudice any adversary whose  proceeding is

removed from pursuing remand pursuant to 11 U.S.C. § 1452(b).  Accordingly, the proposed

extension requested herein will not prejudice the rights of other parties to any of the Actions.

<u>Notice</u>

21.    Notice of this Motion has been provided to parties on the Master Service

List and 2002 List Parties in accordance with the Order Under 11 U.S.C. §§ 102(1) And 105 And

Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I) Omnibus Hearing Dates, (II)

Certain Notice, Case Management, And Administrative Procedures, And (III) Scheduling An

Initial Case Conference In Accordance With Local Bankr. R. 1007-2(e) entered by this Court on

October 14, 2005 (Docket No. 245).  In part because the Debtors were parties to more than 200

Actions as of the Petition Date, the Debtors have not given notice of this Motion to each

adversary.  Moreover, the Debtors do not believe such notice is necessary because no substantive

rights of any adversary are being affected by the requested extensions.  Accordingly, the Debtors

submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

22.    Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a)

extending the period set forth in Bankruptcy Rule 9027(a)(2)(A) during which they may remove

Actions through and including the later to occur of (i) April 6, 2006 or (ii) 30 days after entry of

a order terminating the automatic stay with respect to any particular action sought to be removed,

without prejudice to the Debtors' rights to seek further extensions of the period during which the

Debtors may remove actions and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
        December 16, 2005

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: s/ John Wm. Butler, Jr.
     John Wm. Butler, Jr. (JB 4711)
     John K. Lyons (JL 4951)
     Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

              - and -

By: s/ Kayalyn A. Marafioti
     Kayalyn A. Marafioti (KM 9632)
     Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

11

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
      In re                         :      Chapter 11
                                    :
DELPHI CORPORATION, <u>et al.</u>,         :      Case No. 05-44481 (RDD)
                                    :
                    Debtors.        :      (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


ORDER TO EXTEND TIME PERIOD WITHIN WHICH
DEBTORS MAY REMOVE ACTIONS UNDER 28 U.S.C. § 1452
<u>AND FED. R. BANKR. P. 9006 AND 9027</u>

("REMOVAL DEADLINE EXTENSION ORDER")

Upon the motion, dated December 16, 2005, (the "Motion"), of Delphi

Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under 28 U.S.C. §

1452 and Fed. R. Bankr. P. 9006 and 9027 extending the period within which the Debtors may

remove actions; and this Court having determined that the relief requested in the Motion is in the

best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it

appearing that proper and adequate notice of the Motion has been given and that no other or

further notice is necessary; and after due deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED.

2.      Pursuant to Bankruptcy Rule 9006(b), the period within which the Debtors

may seek to remove civil actions pending on the date of the commencement of their chapter 11

cases, pursuant to 28 U.S.C. § 1452 and Fed. R. Bankr. P. 9027(a)(2), is enlarged and extended

to and including the later to occur of (a) April 6, 2006 or (b) 30 days after entry of an order

terminating the automatic stay with respect to the particular action sought to be removed.

       3.      This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this Order.

       4.      The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.


Dated: New York, New York
      January [     ], 2006


                        _____
                        UNITED STATES BANKRUPTCY JUDGE