**IN THE UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
          :

In re                  :     Chapter 11
          :

DELPHI CORPORATION et al.,     :     Case No. 05-44481 (rdd)
          :

          Debtors.   :     (Jointly Administered)
          :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## AFFIDAVIT OF SERVICE

       I, Amber M. Cerveny, being duly sworn according to law, deposes and says that I am employed by Kurtzman Carson Consultants, LLC, court appointed claims and noticing agent for the Debtors in the above-captioned cases.

       On December 16, 2005, I caused to be served, via overnight mail the documents listed in Section 1 on the parties attached hereto as Exhibit A:

### *Section 1*

  **I.**  Notice of Motion for Order Under 11 U.S.C. §§ 363, 1107, and 1108 Approving Procedures to Enter Into or Renew Real Property Leases Without Further Court Approval **(Docket No. 1555) [Attached hereto as Exhibit B]**

  **II.**  Motion for Order Under 11 U.S.C. §§ 363, 1107, and 1108 Approving Procedures to Enter Into or Renew Real Property Leases Without Further Court Approval **(Docket No. 1555) [Attached hereto as Exhibit B]**

 **III.**  Notice of Motion for Order Under 11 U.S.C. §§ 365(a) and 554 and Fed.R.Bankr.P. 6006 Approving Procedures for Rejecting Unexpired Real Property Leases and Authorizing Debtors to Abandon Certain Furniture, Fixtures, and Equipment **(Docket No. 1551) [Attached hereto as Exhibit C]**

 **IV.**  Motion for Order Under 11 U.S.C. §§ 365(a) and 554 and Fed.R.Bankr.P. 6006 Approving Procedures for Rejecting Unexpired Real Property Leases and Authorizing Debtors to Abandon Certain Furniture, Fixtures, and Equipment **(Docket No. 1551) [Attached hereto as Exhibit C]**

Dated: December 27, 2005

                        */s/ Amber M. Cerveny*
                        Amber M. Cerveny

Sworn to and subscribed before
me on December 27, 2005

 */s/ Evan Gershbein*

Notary Public

My Commission Expires: ___*1/19/07*___

# EXHIBIT A

Delphi Automotive Systems
Notice Addresses for Leases/Subleases

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| 1401 Troy Associates Limited Partnership | Douglas M Etkin | 200 Franklin Ctr 29100 Northwestern Hwy | | Southfield | MI | 48034 |
| 500 Commerce Llc | C o Viking Industries Llc | 30505 Bainbridge Rd | Ste 100 | Solon | OH | 44139 |
| Amherst Commerce Park | | 4508 Main St | | Buffalo | NY | 14226 |
| Amherst Commerce Park | Amherst Commerce Pk | 4508 Main St | | Amherst | NY | 14226 |
| Aspire Building Llc | Aspire Building Llc | 31000 Northwestern Hwy Ste 200 | Attn Andrew Milia | Farmington Hills | MI | 48334 |
| Aspire Building Llc | Cox Hodgman and Giarmarco | 10th Fl Columbia Ctr 101 W Big Beaver Rd | Attn Basil M Briggs | Troy | MI | 48084 |
| Aspire Building Llc | | 31000 Northwestern Hwy | Ste 220 | Farmington Hills | MI | 48334 |
| Avi Foodsystems Inc | | 2590 Elm St Ne | Attn John Payiavlas President | Warren | OH | 44483 |
| Barrister Executive Suites Inc | Lease Termination Dept | 9841 Airport Blvd | Ste 1200 | Los Angeles | CA | 90045 |
| Camp Chase Industrail Railroad | C o Omega Rail Management | PO Box 916519 | | Longwood | FL | 32791-6519 |
| Cherokee North Kansas City Llc | | 5445 Dtc Pkwy | Ste 900 | Englewood | CO | 80111 |
| Cherokee North Kansas City Llc | Cherokee North Kansas City Llc | 5445 Dtc Pkwy Ste 900 | | Englewood | CO | 80111 |
| Cinergy Corp | Cinergy Corp | 139 E Fourth St Room 2604at | Attn Debbie Plummer | Cincinnati | OH | 45202 |
| Cinergy Corp | Attn Debbie Plummer | 139 E Forth St | Room 2604at | Cincinnati | OH | 45202 |
| Cit Of Tulsa Rogers County Port Authority | | 5350 Cimarron Rd | | Catoosa | OK | 74015 |
| City Of Laurel | City Of Laurel | Laurel Airport Authority PO Box 2335 | | Laurel | MS | 39442-2335 |
| City Of Laurel Ms | Laurel Airport Authority | PO Box 2335 | | Laurel | MS | 39442-2335 |
| City Of Tulsa Oklahoma | City Of Tulsa Oklahoma | City Of Tulsa Rogers Co Port Authority 5350 Cimarron Rd | | Catoosa | OK | 74015 |
| City Of Warren Ohio | City Of Warren Ohio | C o Clerk City Engineers 3901 Mahoning Ave Nw | | Warren | OH | 44483 |
| Consumers Power Company | Consumers Power Company | 212 W Michigan Ave | | Jackson | MI | 49201 |
| Coopersville and Marne Railway Company | Coopersville and Marne Railway Company | PO Box 55 | | Coopersville | MI | 49404 |
| County Of Marquette | Sawyer International Airport | 225 Airport Ave | Attn Airport Manager | Gwinn | MI | 49841 |
| County Of Marquette | County Of Marquette | Marquette County Courthouse Complex | | Marquette | MI | 49855 |
| Crown Enterprises Inc | Crown Enterprises Inc | 12225 Stephens Rd | | Warren | MI | 48089 |
| Csx Transportation | Csx Transportation | 500 Water St J180 | | Jacksonville | FL | 32202 |
| Dc North Llc | Dc North Llc | 3811 Palisades Dr | | Tuscaloosa | AL | 35405 |
| Dcr Properties Ia Llc | Dcr Properties Ia Llc | PO Box 299 | | St Petersburg | FL | 33731-0299 |
| Donald R and Sarah E Sweeton | Dasco Inc | 214 Admiral Circle | | Lawrenceburg | TN | 33464 |
| Economic Development Rail Ii Corp | Economic Development Rail Ii Corp | 4319 Belmont Ave | | Youngstown | OH | 44505 |
| Enerdel | | 500 W Cypress Creek Rd Ste 100 | Attn Kevin P Fitzgerald | Ft Lauderdale | FL | 33309 |
| First Industrial Lp | Barack Ferrazzano Kirschbaum Perlman and Nagelberg | 333 West Wacker Dr Ste 2700 | Attn Suzanne Bessette Smith | Chicago | IL | 60606 |
| First Industrial Lp | First Industrial Lp | 311 South Wacker Dr Ste 4000 | Attn Vice President Portfolio Management | Chicago | IL | 60606 |
| First Industrial Lp | | 311 S Wacker Dr | Ste 4000 | Chicago | IL | 60606 |
| First Industrial Lp | First Industrial Realty Trust Inc | 24800 Denso Dr Ste 175 | | Southfield | MI | 48034 |
| First Industrial Lp | First Industrial Realty Trust Inc | 24800 Denso Dr Ste 175 | | Southfield | MI | 48034 |
| Ford Motor Land Development Corp | Ford Motor Land Development Corp | Ste 1500 East One Pkland Blvd | Attn Property Manager Fairlane North | Dearborn | MI | 48126 |
| Ford Motor Land Development Corporation | Attn Property Manager Fairlane North | One Pklane Blvd | Ste 1500 East | Dearborn | MI | 48126 |
| Fortune Avenue Partners | Fortune Avenue Partners | 110 N Washington St | | Kokomo | IN | 46901 |
| Fortune Avenue Partners | Fortune Ave Partners | 110 N Washington St | | Kokomo | IN | 46901 |
| Gar Properties Llc | Gar Properties Llc | 205 St Paul St Ste 400 | Attn Fred J Rainaldi | Rochester | NY | 14604 |
| Gar Properties Llc | Mangione and Roinman | 205 St Paul St Ste 400 | Attn Sal Mangione Esq | Rochester | NY | 14604 |
| Gbg2 Llp | Gbg2 Llp | C o Gibbons White Inc | 4730 Walnut St 206 | Boulder | CO | 80301 |
| Gbg2 Llp | C o Gibbons White Inc | 4730 Walnut St | Ste 206 | Boulder | CO | 80301 |
| Gbg2 Llp | Henry Braly | 1800 Pike Rd | | Longmont | CO | 80501 |
| Gbg2 Llp | Wallace H Grant and Douglas Grant Grant Bernard Lyons and Gaddis | | PO Box 948 | Longmont | CO | 80502 |
| General Motors Corporation | | 200 Renaissance Ctr | Mc 482 B38 C96 | Detroit | MI | 48265-2000 |
| General Motors Corporation | General Motors Corporation Office Of The General Counsel | | New Ctr One Building 3031 W Grand Blvd PO Box 33122 | Detroit | MI | 48226 |
| General Motors Corporation | General Motors Corporation | 200 Renaissance Ctr Mc 482 B38 C96 | | Detroit | MI | 48265-2000 |

Delphi Automotive Systems
Notice Addresses for Leases/Subleases

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| Germains Technology Group Custom Coating And Enhancements Inc | | 8333 Swanston Ln | | Gilroy | CA | 95020 |
| Grand Trunk Western Railroad Inc | Grand Trunk Western Railroad Inc | 2800 Livernois | | Troy | MI | 48007-5025 |
| Green Road Associates Limited Partnership | Green Rd Associates Limited Partnership | C o First Martin Corporation 115 Depot St | | Ann Arbor | MI | 48104 |
| Industrial Development Board Of The City Of Athens | C o Pattan Lathom Legge and Cole | Attn Mike Kohl Esq | PO Box 470 | Athens | AL | 35612 |
| Industrial Development Board Of The City Of Athens | C o City Hall | | | Athens | AL | |
| Industrial Development Board Of The City Of Tuscaloosa | | PO Box 1939 | | Tuscaloosa | AL | 35403 |
| Itw Mortgage Investments Iv Inc | C o Ge Capital Realy Group Inc | 16479 Dallas Pkwy Ste 400 | | Dallas | TX | 75248 |
| Itw Mortgage Investments Iv Inc | Attn Asset Management and Legal Department | C o Ge Capital Realty Corp Inc | 16479 Dallas Pkwy Ste 400 | Dallas | TX | 75248 |
| Jcr Investments Llc | | 17401 Tiller Court | | Westfield | IN | 46074 |
| Jcr Investments Llc | Dann Pecar Newman Kleiman Pc | Attn Jeffrey A Abrams | One American Square Ste 2300 PO Box 82008 | Indianapolis | IN | 46282 |
| Jcr Investments Llc | Jcr Investments Llc | 17401 Tiller Ct | | Westfield | IN | 46074 |
| John E Benz | | 3017 Exchange Court | Ste A | West Palm Beach | FL | 33409 |
| John E Benz | John E Benz | C o John E Benz and Co 3017 Exchange Ct Ste A | | West Palm Beach | FL | 33409 |
| Killam Industrial Development Partnership | Killam Industrial Development Partnership | PO Box 499 | | Laredo | TX | 78042-0499 |
| Kilroy Realty Lp | Kilroy Realty Lp | | 111 Pacifica Ste 300 | Irvine | CA | 92618 |
| Kilroy Realty Lp | Mcdaniel and Mcdaniel | 12200 W Olympic Blvd Ste 200 | Attn Marshall L Mcdaniel | Los Angeles | CA | 90064 |
| Lasalle National Bank As Trustee | C o Nicholson | Porter and List Inc | 1300 West Higgins Rd | Park Ridge | IL | 60068 |
| Laurence Tippman Sr Family Limited Partnership | | 9009 Coldwater Rd | | Fort Wayne | IN | 46825 |
| Liberty Property Limited Partnership | Liberty Property Limited Partnership | 26911 Northwestern Hwy Ste 205 | | Southfield | MI | 48034 |
| Limar Realty Corp | Kilroy Realty Lp | 111 Pacifica | Ste 300 | Irvine | CA | 92618 |
| Mid States Industrial Complex Ltd | | 2574 E River Rd Bldg 10 Llc | PO Box 744 | Dayton | OH | 45401-0744 |
| Mike Hales Real Estate Ltd | Mike Hales Real Estate Ltd | 804 Meadowbrook Dr Ste 102 | | Olathe | KS | 66062 |
| Miller Valentine Group | Miller Valentine Group | 4000 Miller Valentine Court PO Box 744 | | Dayton | OH | 45439-1487 |
| Milwaukee Investment Company | Milwaukee Investment Company | C o Signature Associates One Towne Sq Ste 1200 | Attn Property Management | Southfield | MI | 48076 |
| Mosser Construction Inc | | 122 South Wilson Ave | | Freemont | OH | 43420 |
| Nissan Technical Center North America Inc | Nissan North America | Attn Sue Derian Assistant General Counsel | 990 West 190 St | Torrance | CA | 90502 |
| Nissan Technical Center North America Inc | Attn John Calandro | 39001 Sunrise Dr | | Farmington Hills | MI | 48098 |
| Norfolk Southern Corporation | Norfolk Southern Corporation | 185 Spring St Sw | | Atlanta | GA | 30303 |
| Norfolk Southern Corporation | Norfolk Southern Corporation | 110 Franklin Rd Se | | Roanoke | VA | 24042-0044 |
| North Renaissance Development Llc | North Renaissance Development Llc | 909 Washington Ave PO Box 348 | | Bay City | MI | 48708 |
| Oil Well Llc | | 1800 Pike Rd | | Longmont | CO | 80501 |
| Oil Well Llc | Frontier Companies Llc | | 1800 Pike Rd | Longmont | CO | 80501 |
| Oil Well Llc | Moss and Odell Pc | 1675 Larimer St Ste 650 | Attn Chris Odell | Denver | CO | 80202 |
| Oil Well Llc | Oil Well Llc | 1800 Pike St | | Longmont | CO | 80501 |
| Orix Gf Warren Venture | | 100 N Riverside Plaza | Ste 1400 | Chicago | IL | 60606 |
| Orix Gf Warren Venture | Orix Gf Warren Venture | C o Jim Purinton 100 N Riverside Plaza Ste 1400 | | Chicago | IL | 60606 |
| Orix Gf Warren Venture | Orix Gf Warren Venture | C o Orix Warrenincorix Real Estate Equities 100 N Riverside Plaza Ste 1400 | | Chicago | IL | 60606 |
| Osprey Sa Ltd | Osprey Sa Ltd | 305 E Main St | | Brighton | MI | 48116 |
| Raytheon Company | | 1520 Hughes Way Bldg A01 M s A162 PO Box 9399 | Attn Corporate Real Estate Dept | Long Beach | CA | 90810 |
| Raytheon Company | | 870 Winter St | Attn Corporate Real Estate Dept | Waltham | MA | 02451 |
| Realty Investment Ii | C o Timothy L Taylor General Manager | PO Box 785 | | Kokomo | IN | 46901 |
| Realty Investment Ii | Realty Investment Ii | C o Timothy L Taylor General Partner | PO Box 785 | Kokomo | IN | 46901 |
| Regus Business Centres Corp | Regus Business Centres Corp | One Tower Ln Ste 1700 | Attn Mr John Rudakas | Oakbrook Terrace | IL | 60181 |
| Regus Business Centres Corp | Regus Business Centres Corp | 100 Manhattanville Rd | Ste 412 | Purchase | NY | 10577 |
| Research Properties Llc | Research Properties Llc | 1425 Sagamore Pkwy North | | Lafayette | IN | 47904 |
| River Road Investments Inc | River Rd Investments Inc | 1155 Meadowbrook Ave | | Youngstown | OH | 44512 |
| Saginaw Centre Development Company Llc | | 804 S Hamilton St | | Saginaw | MI | 48602 |
| Sealy Rg Valley Buildings Lp | Sealy Rg Valley Buildings Lp | C o Sealy and Company Inc 333 Texas St Ste 1050 | Attn Mark P Sealy | Shreveport | LA | 71101 |
| Sealy Rg Valley Buildings Lp | C o Sealy and Company Inc | 333 Texas St | Ste 1050 | Shreveport | LA | 71101 |

Delphi Automotive Systems
Notice Addresses for Leases/Subleases

| CREDITORNAME | CREDITORNOTICENAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---|---|---|---|---|---|---|
| Shelby Industrial Investors | C o Kojaian Mgmt Corp | 1400 N Woodward | Ste 250 | Bloomfield Hills | MI | 48304 |
| Tawas Industries | | 905 Cedar St | | Tawas City | MI | 48763 |
| Tr Butterfield Trail Corp | Tr Butterfield Trail Corp | C o Capri Capital Advisors Llc    875 N Michigan Ave Ste 3430 | Attn Asset Manager | Chicago | IL | 60611 |
| Tr Butterfield Trail Corp | Holland and Knight Llp | 131 S Dearborn 30th Fl | Attn James T Mayer | Chicago | IL | 60603 |
| Tr Butterfield Trail Corp | c o Capri Capital Advisors LLC | 1201 N Clark St | Ste 300 | Chicago | IL | 60610 |
| Transwestern Great Lakes Lp | Transwestern Great Lakes Lp | 1301 W Long Lake Rd Ste 330 | | Troy | MI | 48098 |
| Universal Tool And Engineering Inc | | 7601 E 88th Pl | | Indianapolis | IN | 45256 |
| Visteon Services | | 1 Village Ctr Dr | Attn Global Real Estate Services | Belleville | MI | 48111-5711 |
| Weingarten Realty Investors | Weingarten Realty Investors | 2600 Citadel Plaza Dr Ste 300 | | Houston | TX | 77216 |
| Weingarten Realty Investors | | PO Box 200518 | | Houston | TX | 77216 |
| Wells Management Company | Wells Management Company | 6200 The Corners Pkwy Ste 250 | | Norcross | GA | 30092 |
| Wells Operating Partnership Lp | | PO Box 926040 | | Norcross | GA | 30010-6040 |

# **<u>EXHIBIT B</u>**

**Hearing Date: January 5, 2006 at 10:00 a.m.**
**Objection Deadline: December 29, 2005 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :

        In re                        :     Chapter 11

                                    :

     DELPHI CORPORATION, et al.,       :     Case No. 05- 44481 (RDD)

                                    :

                       Debtors.    :     (Jointly Administered)

                                    :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF MOTION FOR ORDER UNDER 11 U.S.C. §§ 363, 1107, AND 1108
APPROVING PROCEDURES TO ENTER INTO OR RENEW REAL PROPERTY
LEASES WITHOUT FURTHER COURT APPROVAL

PLEASE TAKE NOTICE that on December 16, 2005, Delphi Corporation
("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in
the above-captioned cases, filed a motion for an order under 11 U.S.C. §§ 363, 1107, and
1108 approving procedures to enter into new leases or renew existing leases of real
property without further Court approval (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of
the Motion will be held on January 5, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the
"Hearing"), before the Honorable Robert D. Drain, United States Bankruptcy Court for the
Southern District of New York, One Bowling Green, Room 610, New York, New York,
10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion
must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local
Bankruptcy Rules for the Southern District of New York, and the Order Under 11 U.S.C.
§§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I)
Omnibus Hearing Dates, (II) Certain Notice, Case Management, And Administrative
Procedures, And (III) Scheduling An Initial Case Conference In Accordance With Local
Bankr. R. 1007-2(e) (the "Case Management Order") (Docket No. 245), (c) be filed with
the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered
users of the Bankruptcy Court's case filing system must file electronically, and all other
parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format

2

(PDF), WordPerfect, or any other Windows-based word processing format), (d) be

submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain,

United States Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725

Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors,

Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the

Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington

Avenue, New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for the agent

under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New

York, New York 10017 (Att'n:  Marlane Melican), (v) counsel for the Official Committee

of Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York

10022 (Att'n: Mark A. Broude), and (vi) the Office of the United States Trustee for the

Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York

10004 (Att'n:  Alicia M. Leonhard), in each case so as to be **received** no later than **4:00**

**p.m. (Prevailing Eastern Time)** on **December 29, 2005** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE  that only those objections made as set forth herein and in accordance with the Case Management Order will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance with the procedures set forth herein and in the Case Management Order, the Bankruptcy Court may enter a final order granting the Motion **without further notice.**

Dated: New York, New York
       December 16, 2005

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

4

**Hearing Date and Time: January 5, 2006 at 10:00 a.m.**
**Objection Deadline: December 29, 2005 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)


Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                  :
      In re                         :    Chapter 11
                                    :
DELPHI CORPORATION et al.,     :    Case No. 05-44481 (RDD)
                                    :
                  Debtors.   :    (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


MOTION FOR ORDER UNDER 11 U.S.C. §§ 363, 1107, AND 1108
APPROVING PROCEDURES TO ENTER INTO OR RENEW REAL PROPERTY
LEASES WITHOUT FURTHER COURT APPROVAL

("LEASE PROCEDURES MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. §§ 363, 1107, and 1108 approving procedures to enter into new or renew existing non-residential leases or subleases of real property (each a "Lease," or collectively, the "Leases") without further Court approval.  In support of this Motion, the Debtors respectfully represent as follows:

<div align="center">Background</div>

A.      The Chapter 11 Filings

1.      On October 8, 2005 (the "Petition Date"), 39 of 42 Debtors, and on October 14, 2005, the remaining Debtors, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases (Dockets Nos. 28 and 404).

2.      On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee") in these cases.  No trustee or examiner has been appointed in the Debtors' cases.

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are sections 363, 1107, and 1108 of the Bankruptcy Code.

<div align="center">2</div>

B.      Current Business Operations Of The Debtors

5.      With more than 180,000 employees worldwide, global 2004 revenues of approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1 billion,[1] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations without supervision from the Bankruptcy Court, and will not be subject to the chapter 11 requirements of the U.S. Bankruptcy Code.

6.      Over the past century, the operations which are now owned by Delphi have developed leading global technology innovations with significant engineering resources and technical competencies in a variety of disciplines.  Today, the Company (as defined below) is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide.  The Company supplies products to nearly every major global automotive original equipment manufacturer with 2004 sales to its former parent, General Motors Corporation ("General Motors" or "GM"), equaling approximately $15.4 billion, and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

---

[1]      The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

7.      As part of its growth strategy, Delphi has established an expansive

global presence with a network of manufacturing sites, technical centers, sales offices,

and joint ventures located in every major region of the world.  In the U.S., the Debtors

employ approximately 50,600 people.  Those employees work in approximately 44

manufacturing sites and 13 technical centers across the country, and in Delphi's

worldwide headquarters and customer center located in Troy, Michigan.  Approximately

34,750 of these individuals are hourly employees, 96% of whom are represented by

approximately 49 different international and local unions.  Outside the United States, the

Company's foreign entities employ more than 134,000 people, supporting 120

manufacturing sites and 20 technical centers across nearly 40 countries worldwide.

8.      Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business

through various divisions and subsidiaries.  Effective January 1, 1999, the assets and

liabilities of these divisions and subsidiaries were transferred to Delphi and its

subsidiaries and affiliates (collectively, the "Company") in accordance with the terms of a

Master Separation Agreement between Delphi and GM.  In connection with these

transactions, Delphi accelerated its evolution from a North American-based, captive

automotive supplier to a global supplier of components, integrated systems, and modules

for a wide range of customers and applications.  Although GM is still the Company's

single largest customer, today more than half of Delphi's revenue is generated from non-

GM sources.

9.      Due to the significant planning that goes into each vehicle model,

Delphi's efforts to generate new business do not immediately affect its financial results,

because supplier selection in the auto industry is generally finalized several years prior to
the start of production of the vehicle.  When awarding new business, which is the
foundation for the Company's forward revenue base, customers are increasingly
concerned with the financial stability of their supply base.  The Debtors believe that they
will maximize stakeholder value and the Company's future prospects if they stabilize
their businesses and continue to diversify their customer base.  The Debtors also believe
that this must be accomplished in advance of  the expiration of certain benefit guarantees
between GM and certain of Delphi's unions representing most of its U.S. hourly
employees which coincides with the expiration of the Company's U.S. collective
bargaining agreements in the fall of 2007.

C.    Events Leading To Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the
Company generated approximately $2 billion in net income.  Every year thereafter,
however, with the exception of 2002, the Company has suffered losses.  In calendar year
2004, the Company reported a net operating loss of $482 million on $28.6 billion in net
sales.  Reflective of a downturn in the marketplace, Delphi's financial condition
deteriorated further in the first six months of 2005.  The Company experienced net
operating losses of $608 million for the first six months of calendar year 2005 on six-
month net sales of $13.9 billion, which is approximately $1 billion less in sales than
during the same time period in calendar year 2004.[2]

---

[2]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1
billion tax charge, primarily related to the recording of a valuation allowance on
the U.S. deferred tax assets as of December 31, 2004.

5

11.    The Debtors believe that three significant issues have largely

contributed to the deterioration of the Company's financial performance: (a) increasingly

unsustainable U.S. legacy liabilities and operational restrictions driven by collectively

bargained agreements, including restrictions preventing the Debtors from exiting non-

strategic, non-profitable operations, all of which have the effect of creating largely fixed

labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs

resulting in the reduced number of motor vehicles that GM produces annually in the

United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities,

product portfolio, operational issues, and forward looking revenue requirements.  Having

concluded that pre-filing discussions with its Unions and GM were not leading to the

implementation of a plan sufficient to address the Debtors' issues on a timely basis, the

Company determined to commence these chapter 11 cases for its U.S. businesses to

complete the Debtors' transformation plan and preserve value.

13.    Through the reorganization process, the Debtors intend to achieve

competitiveness for Delphi's core U.S. operations by modifying or eliminating non-

competitive legacy liabilities and burdensome restrictions under current labor agreements

and realigning Delphi's global product portfolio and manufacturing footprint to preserve

the Company's core businesses.  This will require negotiation with key stakeholders over

their respective contributions to the restructuring plan or, absent consensual participation,

the utilization of the chapter 11 process to achieve the necessary cost savings and

operational effectiveness envisioned in the Company's transformation plan.  The Debtors

6

believe that a substantial segment of Delphi's U.S. business operations must be divested,

consolidated, or wound-down through the chapter 11 process.

14.      Upon the conclusion of this process, the Debtors expect to emerge

from chapter 11 as a stronger, more financially sound business with viable U.S.

operations that are well-positioned to advance global enterprise objectives.  In the

meantime, Delphi will marshal all of its resources to continue to deliver value and high-

quality products to its customers globally.  Additionally, the Company will preserve and

continue the strategic growth of its non-U.S. operations and maintain its prominence as

the world's premier auto supplier.

<div align="center">Relief Requested</div>

15.      Prior to the filing of their chapter 11 cases, the Debtors routinely

entered into non-residential real property Leases and renewed existing Leases. Although

the Debtors believe their entering into or renewing the Leases is within the ordinary

course of their business and that therefore no court approval to continue doing so is

required, out of an abundance of caution, by this Motion, the Debtors request authority

under Bankruptcy Code sections 363(c), 1107, and 1108, to implement procedures by

which the Debtors may enter into or renew the Leases without the need for further Court

approval.

<div align="center">Basis For Relief</div>

16.      The Debtors are parties to approximately 90 Leases of non-

residential real property.  As a part of the Debtors' ongoing restructuring efforts, the

Debtors are undertaking a comprehensive evaluation of all leased real property locations

in an effort to reduce overall occupancy costs and maximize the efficient utilization of the

<div align="center">7</div>

Debtors' real property assets.  This process will require renewing certain leases that are

necessary for the Debtors' reorganization, including Leases that provide for less or

differently configured space, while exiting other Leases that no long fit the Debtors'

needs.  The Debtors estimate that they will enter into approximately ten new Leases and

renew approximately ten Leases annually for the next two years based on the number of

current Leases up for renewal and the anticipated needs of future projects.

17.    To ensure that all Leases are at or below market rates, the Debtors'

real estate advisor, Jones Lang LaSalle, will conduct a market valuation for each Lease.

The market valuation will include, among other information, an analysis of the Lease

obligations, a determination as to whether the terms of the Lease are standard, and a

market assessment of other similarly situated leased locations.

18.    In making their business decision to enter into or renew a Lease,

the Debtors will analyze and consider the economics underlying each Lease and the

Debtors' corresponding need for space to ensure the Lease will be beneficial to the

Debtors' operations.

19.    As noted above, the Debtors believe that they may enter into Leases

in the ordinary course of business and that no court approval to do so is required pursuant

to Bankruptcy Code sections 363(c), 1107, and 1108.  To the extent that Bankruptcy

Court approval is necessary, however, the Debtors believe that the costs associated with

the administrative process of drafting, filing, and serving pleadings and sending notice to

all parties-in-interest to seek Court approval to enter into or renew each Lease will

become burdensome to the Debtors and their estates.  Out of an abundance of caution, the

Debtors request approval of the procedures set forth below which will expedite this

8

process by eliminating the necessity for a hearing on the Debtors' undisputed decisions to

enter into or renew Leases.

<div align="center">Proposed Procedures For Entering Into And Renewing Leases</div>

20.     The Debtors seek approval of an orderly process to enter into or

renew Leases according to the following procedures (the "Procedures"):

(a)     For a Lease with average lease obligations of $200,000 or less per annum or Lease obligations of $1 million or less in the aggregate, the Debtors would be authorized but not directed to enter into or renew the Lease without further notice to any Notice Party (as defined below) or Bankruptcy Court approval.

(b)     For a Lease with average lease obligations of $200,001 or more per annum or Lease obligations in excess of $1 million up to and including $5 million in the aggregate, the Debtors would give notice of the proposed Lease (the "Lease Notice") to (i) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), (ii) counsel to the Creditors' Committee, (iii) counsel for the agent under the Debtors' prepetition credit facility, and (iv) counsel for the agent under the Debtors' postpetition credit facility (collectively, the "Notice Parties").  The Lease Notice would be served by facsimile, overnight delivery, or hand delivery.  The Lease Notice would include the following information:  (i) the proposed Lease to be entered into or renewed, (ii) the identity of the lessor (including a statement that the proposed lessor is not an "insider" as defined in section 101(31) of the Bankruptcy Code ), and (iii) a description of the terms of the proposed Lease.  The Notice Parties would have five business days following initial receipt of the Lease Notice to object to or request additional time to evaluate the proposed Lease.  If counsel to the Debtors receives no written objection or written request for additional time prior to the expiration of such five business day period, the Debtors would be authorized to enter into or renew the Lease.  If a Notice Party objects to the proposed Lease within five business days after the Lease Notice is received, the Debtors and such objecting Notice Party would meet and confer in an attempt to negotiate a consensual resolution.  Should either party determine that an impasse exists, then the Debtors would move the Bankruptcy Court for authority to enter into or renew the Lease, as the case may be, upon notice to the objecting party and other parties-in-interest in accordance with the Court's Case Management Order  entered on October 14, 2005 ("Case Management Order").

(c)     For a Lease with lease obligations in excess of $5 million in the aggregate, the Debtors would be authorized to enter into such a Lease only after obtaining Bankruptcy Court approval of the proposed Lease after notice and a hearing.

<div align="center">9</div>

## Applicable Authority

21.    Sections 1107(a) and 1108 of the Bankruptcy Code vest debtors-in-possession with authority to continue operating their businesses.  The Debtors, operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners."  In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including an operating business's going-concern value."  Id.

22.    Section 1107(a) of the Bankruptcy Code provides that the debtor-in-possession shall have the duties of a trustee in a chapter 11 case with all the rights and powers of a trustee.  11 U.S.C. § 1107.  Accordingly, to understand the rights and powers of the debtor-in-possession, section 1107 of the Bankruptcy Code must be read in conjunction with those provisions of chapters 3, 5, and 11 of the Bankruptcy Code which confer certain rights and powers on trustees.  7 Collier, Bankruptcy ¶ 1107.03 (15th rev. ed. 2003).  Section 363(c) of the Bankruptcy Code provides in pertinent part: "[T]he [debtor-in-possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

23.    Through the Procedures, the Debtors seek to enter into or renew the Leases which are typical of those which the Debtors regularly enter into in the course of their business.  The Debtors intend to enter into or renew Leases which are standard,

10

non-residential real property Leases that will enable the Debtors to continue operating in

currently leased locations and other locations beneficial to the Debtors' ongoing business

operations.  The Debtors do not anticipate that any of the terms of the new or renewed

Leases will differ materially from their other 90 or so non-residential real property leases.

   24.  To the extent that the Debtors' decision to enter into or renew

Leases constitutes a transaction outside of the ordinary course of business, section

363(b)(1) of the Bankruptcy Code requires that "there must be some articulated business

justification for using, selling, or leasing the property outside the ordinary course of

business."  Institutional Creditors of Continental Airlines, Inc. v. Continental Airlines,

Inc. (In re Continental Airlines, Inc.), citing In re Lionel Corp., 722 F.2d 1063, 1071 (2d

Cir. 1983); accord Stephens Indus., Inc. v. McClung (In re McClung), 789 F.2d 386, 390

(6th Cir. 1986); Fulton State Bank v. Schipper (In re Schipper), 109 B.R. 832, 836 (Bankr.

N.D. Ill. 1989); In re Ionosphere Clubs, Inc., 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1988).

   25.  Sound business reasons exist to justify allowing the Debtors to

enter into or renew Leases using the procedures set forth herein.  The Debtors need to

enter into or renew Leases both to continue their operations and to reduce the costs of

their real property assets.  The Debtors are in the process of evaluating their real estate

portfolio and they need the flexibility to enter into or renew Leases to accomplish their

goal of overall cost reduction for leased space.

   26.  Although the Debtors believe that all proposed Leases will be

entered into or renewed in the ordinary course of business, the Debtors' internal practices

require approval from the Debtors' treasury department for Leases with Lease obligations

exceeding $1 million in the aggregate.  For these Leases, the Notice Parties would receive

notice and have an opportunity to object.  For each Lease with average lease obligations

of $200,000 or less per annum or lease obligations of $1 million or less in the aggregate,

the Debtors would be authorized to enter into or renew the Lease without further notice to

any Notice Party or Bankruptcy Court approval.  Obtaining Court approval of each such

new or renewed Lease would result in administrative expenses for drafting, serving, and

filing pleadings, as well as time incurred by attorneys for appearing at Court hearings.

The Debtors believe that the Court should approve these procedures to acknowledge the

Debtors' ability to enter into or renew the Leases pursuant to the Procedures set forth

herein.

27.    The Procedures will provide the Debtors with both flexibility and a

framework in which to enter into and renew Leases, while still providing for a review of

the Leases requiring approval from the Debtors' treasury department by some of the

major constituents of these cases.  Without a process for entering into or renewing Leases,

the Debtors and their estates would incur added and unnecessary expenses and delay in

entering into Leases for space that is needed to operate the Debtors' business.

28.    The Debtors seek this Court's authority to enter into and renew

Leases pursuant to the Procedures set forth herein to reduce the costs associated with

seeking Court approval of each individual Lease and to reduce the time required to obtain

that approval.  The Debtors respectfully submit that entering into and renewing the

Leases is necessary for the operation of their business.

29.    For the foregoing reasons, the Debtors believe that the relief

requested herein is in the best interests of the estates and should be granted.

<u>Notice</u>

30.      Notice of this Motion has been provided in accordance with the
Case Management Order.  In light of the nature of the relief requested, the Debtors
submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

31.      Because the legal points and authorities upon which this Motion
relies are incorporated herein, the Debtors respectfully request that the requirement of the
service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the
Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District
of New York be deemed satisfied.

WHEREFORE, the Debtors respectfully request that the Court enter an

order (a) authorizing the Debtors to enter into Leases without further Court approval,

subject to the Procedures set forth herein, and (b) granting the Debtors such other and

further relief as is just.

Dated: New York, New York
       December 16, 2005

                    SKADDEN, ARPS, SLATE, MEAGHER
                       & FLOM LLP

                    By: s/ John Wm. Butler, Jr.
                        John Wm. Butler, Jr. (JB 4711)
                        John K. Lyons (JL 4951)
                        Ron E. Meisler (RM 3026)
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois  60606
                    (312) 407-0700

                             - and -

                    By: s/ Kayalyn A. Marafioti
                        Kayalyn A. Marafioti (KM 9632)
                        Thomas J. Matz (TM 5986)
                    Four Times Square
                    New York, New York 10036
                    (212) 735-3000

                    Attorneys for Delphi Corporation, et al.,
                        Debtors and Debtors-in-Possession

14

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :
      In re                        :      Chapter 11
                             :
DELPHI CORPORATION, et al.,      :      Case No. 05-44481 (RDD)
                             :
                Debtors.    :      (Jointly Administered)
                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 363, 1107, AND 1108 APPROVING
PROCEDURES TO ENTER INTO OR RENEW REAL PROPERTY
LEASES WITHOUT FURTHER COURT APPROVAL

("LEASE PROCEDURES ORDER")

        Upon the motion, dated December 16, 2005 (the "Motion"), of Delphi Corporation

and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. §§

365, 1107, and 1108 approving procedures to enter into new or renew existing non-residential leases

or subleases of real property (the " Leases") without further Court approval; and upon the record of

the hearing held on the Motion; and this Court having determined that the relief requested in the

Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-

interest; and it appearing that proper and adequate notice of the Motion has been given and that no

other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause

appearing therefore it is hereby

        ORDERED, ADJUDGED, AND DECREED THAT:

        1.   The Motion is GRANTED.

2.    The Debtors are hereby authorized but not directed to enter into or renew the Leases without further Court approval, subject to the procedures set forth below.

3.    For a Lease with average Lease obligations of $200,000 or less per annum or lease obligations of $1 million or less in the aggregate, the Debtors shall be authorized but not directed to enter into or renew the Lease without further Bankruptcy Court approval.

4.    For a Lease with average lease obligations of $200,001 or more per annum or Lease obligations in excess of $1 million up to and including $5 million in the aggregate, the Debtors shall give notice of their intention to enter into or renew the Lease (the "Lease Notice") to (a) the Office of the United States Trustee for the Southern District of New York, (b) counsel for the Official Committee of Unsecured Creditors, (c) counsel for the agent under the Debtors' prepetition credit facility, and (d) counsel for the agent under the Debtors' postpetition facility (collectively, the "Notice Parties").  The Debtors shall serve the Lease Notice by facsimile, overnight delivery, or hand delivery.  The Lease Notice shall include the following information: (a) the proposed Lease to be entered into or renewed, (b) the identity of the lessor (including a statement that the proposed lessor is not an "insider" as defined in section 101(31) of the Bankruptcy Code ), and (c) a description of the terms of the proposed Lease.  The Notice Parties shall have five business days following initial receipt of the Lease Notice to object to or request additional time to evaluate the proposed Lease.  If counsel to the Debtors receives no written objection or written request for additional time prior to the expiration of such five business day period, the Debtors shall be authorized to enter into or renew the Lease.  If a Notice Party objects to the proposed Lease within five business days after the Lease Notice is received, the Debtors and such objecting Notice Party shall meet and confer in an attempt to negotiate a consensual resolution.  Should either party determine that an impasse exists, then the Debtors shall move the

2

Bankruptcy Court for authority to enter into or renew the Lease, as the case may be, upon notice

to the objecting party and other parties-in-interest in accordance with the Court's Case

Management Order  entered on October 14, 2005 ("Case Management Order").

       5.   For a Lease with Lease obligations in excess of $5 million in the aggregate,

the Debtors will be authorized to enter into the Lease only after obtaining Bankruptcy Court

approval of the proposed Lease after notice and a hearing.

       6.   This Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Order.

       7.   The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the

United States Bankruptcy Court for the Southern District of New York for the service and filing

of a separate memorandum of law is deemed satisfied by the Motion.

Dated:     New York, New York
            January __, 2005

                                      _____
                                      UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT C

**Hearing Date: January 5, 2006 at 10:00 a.m.**
**Objection Deadline: December 29, 2005 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                       :
         In re                         :   Chapter 11
                                                      :
   DELPHI CORPORATION, et al.,       :   Case No. 05- 44481 (RDD)
                                                      :
                        Debtors.   :   (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF MOTION FOR ORDER UNDER 11 U.S.C. §§ 365(a) AND 554 AND
FED. R. BANKR. P. 6006 APPROVING PROCEDURES FOR REJECTING
UNEXPIRED REAL PROPERTY LEASES AND AUTHORIZING DEBTORS TO
ABANDON CERTAIN FURNITURE, FIXTURES, AND EQUIPMENT

PLEASE TAKE NOTICE that on December 16, 2005, Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in

the above-captioned cases, filed a Motion For Order Under 11 U.S.C. §§ 365(a) And 554

And Fed. R. Bankr. P. 6006 Approving Procedures For Rejecting Unexpired Real Property

Leases And Authorizing Debtors To Abandon Certain Furniture, Fixtures, And Equipment

(the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of

the Motion will be held on January 5, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the

"Hearing"), before the Honorable Robert D. Drain, United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, Room 610, New York, New York,

10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion

must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local

Bankruptcy Rules for the Southern District of New York, and the Order Under 11 U.S.C.

§§ 102 (1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I)

Omnibus Hearing Dates, (II) Certain Notice, Case Management, And Administrative

Procedures, And (III) Scheduling An Initial Case Conference In Accordance With Local

Bankr. R. 1007-2(e) (the "Case Management Order") (Docket No. 245), (c) be filed with

the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered

users of the Bankruptcy Court's case filing system must file electronically, and all other

2

parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format

(PDF), WordPerfect, or any other Windows-based word processing format), (d) be

submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain,

United States Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725

Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors,

Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the

Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington

Avenue, New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for the agent

under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New

York, New York 10017 (Att'n:  Marlane Melican), (v) counsel for the Official Committee

of Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York

10022 (Att'n: Mark A. Broude), and (vi) the Office of the United States Trustee for the

Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York

10004 (Att'n:  Alicia M. Leonhard), in each case so as to be **received** no later than **4:00**

**p.m. (Prevailing Eastern Time)** on **December 29, 2005** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth herein and in accordance with the Case Management Order will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance with the procedures set forth herein and in the Case Management Order, the Bankruptcy Court may enter a final order granting the Motion **without further notice.**

Dated: New York, New York
        December 16, 2005

> SKADDEN, ARPS, SLATE, MEAGHER
> & FLOM LLP
>
> By:  s/ John Wm. Butler, Jr.
>     John Wm. Butler, Jr. (JB 4711)
>     John K. Lyons (JL 4951)
>     Ron E. Meisler (RM 3026)
> 333 West Wacker Drive, Suite 2100
> Chicago, Illinois  60606
> (312) 407-0700
>
> - and -
>
> By:  s/ Kayalyn A. Marafioti
>     Kayalyn A. Marafioti (KM 9632)
>     Thomas J. Matz (TM 5986)
> Four Times Square
> New York, New York  10036
> (212) 735-3000
>
> Attorneys for Delphi Corporation, et al.,
>     Debtors and Debtors-in-Possession

4

**Hearing Date and Time: January 5, 2006 at 10:00 a.m.**
**Objection Deadline: December 29, 2005 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)


Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                   :
        In re                                      :      Chapter 11
                                                   :
DELPHI CORPORATION, et al.,                         :      Case No. 05-44481 (RDD)
                                                   :
                            Debtors.     :      (Jointly Administered)
                                                   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

MOTION FOR ORDER UNDER 11 U.S.C. §§ 365(a) AND 554 AND
FED. R. BANKR. P. 6006 APPROVING PROCEDURES FOR
REJECTING UNEXPIRED REAL PROPERTY LEASES AND AUTHORIZING
DEBTORS TO ABANDON CERTAIN FURNITURE, FIXTURES, AND EQUIPMENT

("LEASE REJECTION PROCEDURES MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. §§ 365(a) and 554 and Fed. R. Bankr. P. 6006 approving procedures for the future rejection of certain nonresidential unexpired real property leases or subleases (the "Leases") and authorizing the Debtors to abandon certain personal property including, without limitation, furniture, fixtures, and equipment (the "Expendable Property"), without further Court approval. In support of this Motion, the Debtors respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8, 2005 (the "Petition Date"), 39 of 42 Debtors, and on October 14, 2005, the remaining Debtors, filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtors' chapter 11 cases (Dockets Nos. 28 and 404).

2.    On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee") in these cases. No trustee or examiner has been appointed in the Debtors' cases.

2

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are sections 365 and

554 of the Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

5.      With more than 180,000 employees worldwide, global 2004 revenues of

approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1

billion,[1] Delphi ranks as the fifth largest public company business reorganization in terms of

revenues, and the thirteenth largest public company business reorganization in terms of assets.

Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations

without supervision from the Bankruptcy Court, and will not be subject to the chapter 11

requirements of the U.S. Bankruptcy Code.

6.      Over the past century, the operations which are now owned by Delphi

have developed leading global technology innovations with significant engineering resources and

technical competencies in a variety of disciplines.  Today, the Company (as defined below) is

arguably the single largest global supplier of vehicle electronics, transportation components,

integrated systems and modules, and other electronic technology. The Company's technologies

and products are present in more than 75 million vehicles on the road worldwide.  The Company

supplies products to nearly every major global automotive original equipment manufacturer, with

---

[1]      The aggregated financial data used in this Motion generally consists of consolidated information from
Delphi and its worldwide subsidiaries and affiliates.

3

2004 sales to its former parent, General Motors Corporation ("General Motors" or "GM"),

equaling approximately $15.4 billion, and sales to each of Ford Motor Company,

DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group

exceeding $850 million.

       7.      As part of its growth strategy, Delphi has established an expansive global

presence with a network of manufacturing sites, technical centers, sales offices, and joint

ventures located in every major region of the world.  In the U.S., the Debtors employ

approximately 50,600 people.  Those employees work in approximately 44 manufacturing sites

and 13 technical centers across the country, and in Delphi's worldwide headquarters and

customer center located in Troy, Michigan.  Approximately 34,750 of these individuals are

hourly employees, 96% of whom are represented by approximately 49 different international and

local unions.  Outside the United States, the Company's foreign entities employ more than

134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40

countries worldwide.

       8.      Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through

various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these

divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates

(collectively, the "Company") in accordance with the terms of a Master Separation Agreement

between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution

from a North American-based, captive automotive supplier to a global supplier of components,

integrated systems, and modules for a wide range of customers and applications.  Although GM

is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.      Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base.  The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of  the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.      Events Leading To Chapter 11 Filing

10.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the marketplace, Delphi's financial condition deteriorated further in the first six months of 2005.  The Company experienced net operating losses of $608 million for the first six

5

months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[2]

11.    The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward looking revenue requirements.  Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core

---

[2]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

6

businesses.  This will require negotiation with key stakeholders over their respective

contributions to the restructuring plan or, absent consensual participation, the utilization of the

chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned

in the Company's transformation plan.  The Debtors believe that a substantial segment of

Delphi's U.S. business operations must be divested, consolidated, or wound-down through the

chapter 11 process.

        14.      Upon the conclusion of this process, the Debtors expect to emerge from

chapter 11 as a stronger, more financially sound business with viable U.S. operations that are

well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all

of its resources to continue to deliver value and high-quality products to its customers globally.

Additionally, the Company will preserve and continue the strategic growth of its non-U.S.

operations and maintain its prominence as the world's premier auto supplier.

<div align="center">Relief Requested</div>

        15.    By this Motion, the Debtors seek an order under sections 365(a) and 554 of

the Bankruptcy Code and Bankruptcy Rule 6006 approving procedures for rejecting certain

Leases and authorizing the Debtors to abandon any Expendable Property associated with the

Leases, without further Court approval.

<div align="center">Basis For Relief</div>

        16.    The Debtors are party to approximately 90 Leases.  As part of the Debtors'

ongoing restructuring efforts, the Debtors are undertaking a comprehensive evaluation of the

economic value of the Leases.  In connection with the Debtors' transformation plan, the Debtors

intend to achieve competitiveness by realigning Delphi's global product portfolio and

manufacturing footprint.  In so doing, the Debtors may reject certain Leases.  Accordingly, the

<div align="center">7</div>

Debtors seek approval of an orderly process to reject the Leases and abandon any Expendable Property associated with the Leases, without further Court approval.

17. The Debtors believe that the costs associated with the administrative process of drafting, filing, and serving pleadings and sending required notice to all parties-in-interest to reject a Lease and abandon Expendable Property will, in many cases, reduce the benefit that the Debtors and their estates would otherwise gain by rejecting such Lease. The procedures set forth below will expedite the rejection process by eliminating the necessity for a hearing on uncontested rejections of Leases and abandonment of Expendable Property while still protecting the rights of the parties-in-interest. Moreover, the Debtors will consult with their advisors -- including, without limitation, Jones Lang LaSalle, the Debtors' retained real estate advisors -- to assist in the evaluations of the marketability and value of unwanted Leases. Those unwanted Leases that have insufficient economic value may be rejected pursuant to the procedures described below.

Proposed Procedures For Rejection Of Leases And Abandonment Of Expendable Property

18. The Debtors seek approval of an orderly process to reject Leases and to abandon Expendable Property which the Debtors determine to be burdensome or of inconsequential value or benefit to their estates without further court approval. The proposed procedures are as follows:

a. The Debtors would be authorized but not directed to reject any Lease determined by the Debtors, in the exercise of their business judgment, to be unnecessary or burdensome to their ongoing business operations. The Debtors would be authorized but not directed to abandon any Expendable Property determined to be burdensome or of inconsequential value and benefit to the Debtors.

b.  The rejection, if any, of a Lease would become effective (the "Rejection Date") as of ten calendar days following the issuance by the Debtors of a notice of rejection, substantially in the form attached hereto as Exhibit A (a "Rejection Notice").  The Rejection Notice would include a copy of the order granting this Motion.

c.  The Debtors would serve the Rejection Notice by e-mail, facsimile, overnight delivery, or hand delivery, along with a copy of the order approving this Motion, on (i) each lessor of the Lease (each, a "Lessor") to be rejected (and, to the extent that the Debtor is the sublessor, on the sublessee), (ii) any additional parties entitled to notice pursuant to the terms of the rejected Lease, (iii) all parties known to the Debtors as having a direct interest in any Expendable Property proposed to be abandoned; (iv) the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), (v) counsel for the Creditors' Committee, (vi) counsel for the agent under the Debtors' prepetition credit facility, and (vii) counsel for the agent under the postpetition credit facility (collectively, the "Notice Parties").

d.  The rejection of a Lease and abandonment of Expendable Property would become effective on the Rejection Date without further court order unless an objection (the "Objection") and request for hearing is served by one of the Notice Parties so as to be received within the ten-day period referenced in subparagraph "b" above. The objecting party would serve the Objection on (i) the Debtors, (ii) the undersigned counsel for the Debtors, (iii) counsel for the agent under the Debtors' prepetition credit facility, (iv) counsel for the agent under the Debtors' post petition credit facility, (v) counsel for the Creditors' Committee, and (vi) the U.S. Trustee.  In the event that a proper and timely Objection is served in accordance with this paragraph, the Debtors and the objecting party would meet and confer in an attempt to negotiate a consensual resolution.  Should either party determine that an impasse exists, then the Debtors would schedule a hearing on the Objection with the Court and provide notice of the hearing to the objecting party and other parties-in-interest.  In the event the Court overrules the Objection or the Objection relates only to rejection damages or Expendable Property, such Lease would still be deemed rejected as of the Rejection Date.

e.  The Debtors would have until the later of the Rejection Date or the date provided in each Lease to remove property from the leased premises.  To the extent any Expendable Property remains in the leased premises after the Rejection Date or such later date as provided for in the Lease, the Expendable Property would be

9

deemed abandoned to the landlord of the Lease, which landlord would be entitled to remove or dispose of such property in its sole discretion without liability to any party which might claim an interest in the Expendable Property and which was served with a copy of the Rejection Notice.

f.      A Lessor would be deemed to have consented to the abandonment of any Expendable Property if a Lessor does not file with the Court and serve an Objection to such abandonment prior to the Rejection Date.

g.      Unless a party files and serves an Objection in accordance with the procedures set forth above, any expense incurred by a Lessor in the removal or disposal of Expendable Property would not be treated as an administrative expense under section 503(b)(1) of the Bankruptcy Code.  If a party properly serves an Objection, then the nature and priority of any claim asserted in the Objection would be agreed to consensually by the parties or determined by a subsequent order of this Court.  Notwithstanding the foregoing, the effectiveness of the Rejection Date as stated in the applicable Rejection Notice would not be effected by the Debtors attempt to resolve any disputes relating to such Expendable Property.

h.      Parties would have until the later of the general bar date for filing prepetition general unsecured claims as may be established in these cases or 30 days from the Rejection Date to file a proof of claim for damages arising from such rejection for each respective Lease. Any claims not timely filed would be forever barred.

i.      The Debtors would pay rent on a per diem basis as charges accrue under the Lease for the month in which the Rejection Date of a Lease occurs.

j.      If any Debtor has deposited monies with a Lessor as a security or other kind of deposit or pursuant to another similar arrangement, such Lessor would not be permitted to set off or otherwise use the monies from such deposit or other arrangement without the prior order of the Court unless such amounts can be set off pursuant to paragraph 18 of the Order Under 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), And 364(e) and Fed.R.Bankr.P. 2002, 4001 And 9014 (I) Authorizing Debtors To Obtain Postpetition Financing, (II) To Utilize Cash Collateral And (III) Granting Adequate Protection to Prepetition Secured Parties (Docket No. 797).

10

<u>Applicable Authority</u>

19.    Section 365(a) of the Bankruptcy Code provides that a debtor, "subject to

the court's approval, may assume or reject any executory contract or unexpired lease of the

debtor." 11 U.S.C. § 365(a).  The assumption or rejection of an executory contract or unexpired

lease by a debtor is subject to review under the business judgment standard.  <u>See</u> <u>Orion Pictures</u>

<u>Corp. v. Showtime Networks, Inc.</u>, 4 F.3d 1095, 1099 (2d Cir. 1993); <u>In re The Penn Traffic Co.</u>,

322 B.R. 63, 68 (Bankr. S.D.N.Y. 2005) (stating "[i]t is well established that the decision

whether to assume or reject an executory contract under section 365(a) is a matter of business

judgment to be exercised in the best interests of the debtor in possession and its creditors"); <u>In re</u>

<u>Stable Mews Assocs., Inc.</u>, 41 B.R. 594, 596 (Bankr. S.D.N.Y. 1984).

20.    The business judgment standard is satisfied when a debtor determines that

rejection will benefit the estate.  <u>See</u> <u>In re Child World, Inc.</u>, 142 B.R. 87, 89 (Bankr. S.D.N.Y.

1992); <u>In re Ionosphere Clubs, Inc.</u>, 100 B.R. 670, 673 (Bankr. S.D.N.Y. 1989).  In applying this

standard, courts show great deference to a debtor's decision to reject an unexpired lease or

executory contract.  <u>See</u> <u>In re G Survivor Corp.</u>, 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994)

("Generally, absent a showing of bad faith, or an abuse of business discretion, the debtor's

business judgment will not be altered." (citing <u>inter</u> <u>alia</u>, <u>In re Bildisco</u>, 682 F.2d 72, 79 (3d Cir.

1982), <u>aff'd sub nom.</u> <u>NLRB v. Bildisco & Bildisco</u>, 465 U.S. 513 (1984), <u>aff'd sub nom.</u> <u>John</u>

<u>Forsyth Co. v. G Licensing, Ltd.</u>, 187 B.R. 111 (S.D.N.Y. 1996))).

21.    If a debtor's business judgment has been reasonably exercised, a court

should approve the assumption or rejection of an unexpired lease or executory contract.  <u>See,</u>

<u>e.g.</u>, <u>NLRB v. Bildisco & Bildisco</u>, 465 U.S. 513, 523 (1984); <u>Group of Institutional Investors v.</u>

<u>Chicago, Milwaukee, St. Paul & Pac. R.R. Co.</u>, 318 U.S. 523, 550 (1943); <u>Johnson v. Fairco</u>

11

Corp., 61 B.R. 317, 320 (Bankr. N.D. Ill. 1986).  Thus, to reject a contract or lease, a debtor

would have to get court approval, which would ordinarily be granted if the decision to reject has

satisfied the business judgment test.

22.    The Debtors seek approval of the procedures to reject the Leases to

facilitate the reduction in their obligations under such Leases that are not benefiting the estates

and that cannot be assumed and assigned to a third party.  The Debtors submit that the immediate

reduction in the estates' administrative costs that will result from the implementation of the

proposed procedures reflects the Debtors' exercise of sound business judgment.  Additionally, in

determining which Leases will be rejected the Debtors will exercise their business judgment.

The Debtors' financial and real estate advisors will be involved and will advise the Debtors as to

the marketability and value of their Leases.  As part of such process, the Debtors will evaluate

whether a Lease might be assumed and assigned to a third party to maximize value for the

estates.

23.    Furthermore, the Lessors will not be prejudiced by these procedures

because they will have the opportunity to object to the proposed rejection upon receipt of notice.

24.    Section 554(a) of the Bankruptcy Code provides that a debtor-in-possession

may abandon, subject to Court approval, "property  of the estate that is burdensome to the estate

or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  The Debtors

submit that they will abandon only (i) property that is burdensome to the estate or (ii) property

that is both of inconsequential value and inconsequential benefit to the estate.  The Debtors

believe that the proposed abandonment procedures also provide for an efficient process for

disposing of the Expendable Property at the leased locations that are subject to this Motion while

at the same time affording interested parties with an opportunity to object.

25.    In addition, the notice requirements under the procedures satisfy

Bankruptcy Rule 6006 by providing Lessors with notice and an opportunity to object and be

heard.  See, e.g., In re Drexel Burnham Lambert, 160 B.R. 729, 733 (S.D.N.Y. 1993) (indicating

that providing interested parties an opportunity to present objections satisfies due process).  In

light of the foregoing, the Debtors submit that the procedures balance the Debtors' need for

expeditious reduction of burdensome costs with providing due notice of the proposed rejection

and abandonment to the affected Lessors.

26.    Finally, the proposed procedures for rejection of Leases and abandonment

of Expendable Property are fair and equitable and consistent with recent decisions in this circuit.

See, e.g., In re Delta Air Lines, Inc., Case No. 05-17923 (PCB) (Bankr. S.D.N.Y. Nov. 10,

2005); In re WorldCom, Inc., Case No. 02-13533 (AJG) (Bankr. S.D.N.Y. Sept. 25, 2002); In re

Enron Corp., Case No. 01-16034 (AJG) (Bankr. S.D.N.Y. Jan. 9, 2002).

<u>Notice</u>

27.    Notice of this Motion has been provided in accordance with the Order

Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And

Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance

With Local Bankr. R. 1007-2(e) entered by this Court on October 14, 2005 (Docket No. 245).  In

light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

<u>Memorandum Of Law</u>

28.    Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

        WHEREFORE the Debtors respectfully request that this Court enter an order (a) a

approving procedures for rejecting the Real Property Leases and (b) granting the Debtors such

other and further relief as is just.

Dated: New York, New York
       December 16, 2005

                    SKADDEN, ARPS, SLATE, MEAGHER
                     & FLOM LLP

                    By: s/ John Wm. Butler, Jr. _____
                      John Wm. Butler, Jr. (JB 4711)
                      John K. Lyons (JL 4951)
                      Ron E. Meisler (RM 3026)
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois  60606
                    (312) 407-0700

                     - and -

                    By: s/ Kayalyn A. Marafioti _____
                      Kayalyn A. Marafioti (KM 9632)
                      Thomas J. Matz (TM 5986)
                    Four Times Square
                    New York, New York 10036
                    (212) 735-3000

                    Attorneys for Delphi Corporation, et al.,
                      Debtors and Debtors-in-Possession

<u>Exhibit A</u>

**Rejection Date: [●]**
**Objection Deadline: [●]**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, <u>et al.</u>, | : | Case No.  05–44481 (RDD) |
|  | : |  |
| Debtors. | : | (Jointly Administered) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF REJECTION OF UNEXPIRED LEASES AND
<u>ABANDONMENT OF PERSONAL PROPERTY</u>

1.    <u>ORDER APPROVING REJECTION OF LEASES</u>

PLEASE TAKE NOTICE that on January [●], 2006, the United States
Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court")
entered an Order Under 11 U.S.C. §§  365(a) And 554 And Fed. R. Bankr. P. 6006
Approving Procedures For Rejecting Unexpired Real Property Leases And Authorizing
Debtors To Abandon Certain Furniture, Fixtures, And Equipment (the "Order," a copy of
which is attached hereto as <u>Exhibit 1</u>).  The Order authorized the above-captioned debtors
and debtors-in-possession (the "Debtors") to reject the following unexpired real property
lease or sublease (the "Lease") and abandon the following furniture, fixtures, and
equipment (the "Expendable Property") without further Court approval:

**Location Of Lease And Expendable Property (if any):**

2.    <u>LEASE REJECTION DATE</u>

PLEASE TAKE FURTHER NOTICE that the rejection of the Lease shall become
effective upon [●] (the "Rejection Date"), unless an objection to the rejection is served in
the manner described herein.

3.    <u>EXPENDABLE PROPERTY</u>

PLEASE TAKE FURTHER NOTICE that the Debtors will have until the later of the Rejection Date or the date provided in each Lease to remove property from the leased premises. To the extent any Expendable Property remains in the leased premises after the Rejection Date or such later date as provided for in the Lease, the Expendable Property will be deemed abandoned to the landlord of the Lease, which landlord will be entitled to remove or dispose of such property in its sole discretion without liability to any party which might claim an interest in the Expendable Property and which was served with a copy of the Rejection Notice.

PLEASE TAKE FURTHER NOTICE that any expense incurred by a Lessor in the removal or disposal of Expendable Property will not be treated as an administrative expense under section 503(b)(1) of the Bankruptcy Code.

4.    <u>OBJECTIONS</u>

PLEASE TAKE FURTHER NOTICE that objections, if any, to rejection of the Lease or abandonment of Expendable Property (a) must be in writing and (b) must be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr. and Ron E. Meisler), (iii) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n:  Kenneth S. Ziman), (iv) counsel for the agent under the Debtors' postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n:  Marlane Melican), (v) counsel for the Official Committee of Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Mark A. Broude), and (vi) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard), in each case so as to be **received on or before [●]**.

5.    <u>RENT</u>

PLEASE TAKE FURTHER NOTICE that the Debtors will pay rent on a per diem basis as charges accrue under the Lease for the month in which the Rejection Date of a Lease occurs.

6.    <u>SETOFF</u>

PLEASE TAKE FURTHER NOTICE that if any Debtor has deposited monies with a Lessor as a security or other kind of deposit or pursuant to another similar arrangement, such Lessor will not be permitted to set off or otherwise use the monies from such deposit or other arrangement without the prior order of the Court unless such amounts can be set off pursuant to paragraph 18 of the Order Under 11 U.S.C. §§ 105,

361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), And 364(e) and Fed. R. Bankr. P. 2002, 4001, And 9014 (I) Authorizing Debtors To Obtain Postpetition Financing, (II) To Utilize Cash Collateral, And (III) Granting Adequate Protection to Prepetition Secured Parties (Docket No. 797).

7.    <u>DEADLINE TO FILE PROOFS OF CLAIM</u>

PLEASE TAKE FURTHER NOTICE that if the Lease is rejected, parties will have until the later of the general bar date as will be established in these cases for filing prepetition general unsecured claims or 30 days from the Rejection Date to file a proof of claim for damages arising from such rejection for each respective Lease.  Any claims not timely filed will be forever barred.

Dated: New York, New York
       [●]

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: _____
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: _____
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, <u>et al.</u>,
    Debtors and Debtors-in-Possession

Exhibit 1 - Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
        In re                       :     Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :     Case No. 05-44481 (RDD)
                                          :
               Debtors.         :     (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 365(a) AND 554 AND
FED. R. BANKR. P. 6006 APPROVING PROCEDURES FOR
REJECTING UNEXPIRED REAL PROPERTY LEASES AND AUTHORIZING
DEBTORS TO ABANDON CERTAIN FURNITURE, FIXTURE, AND EQUIPMENT

("LEASE REJECTION PROCEDURES ORDER")

        Upon the motion, dated December 16, 2005 (the "Motion"), of Delphi Corporation

and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. §§

365(a) and 554 and Fed. R. Bankr. P. 6006 approving procedures for rejecting unexpired

nonresidential real property leases and subleases (the " Leases") and authorizing the Debtors to

abandon certain furniture, fixtures, and equipment (the "Expendable Property") without further court

approval; and upon the record of the hearing held on the Motion; and this Court having determined

that the relief requested in the Motion is in the best interests of the Debtors, their estates, their

creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the

Motion has been given and that no other or further notice is necessary; and after due deliberation

thereon; and good and sufficient cause appearing therefor, it is hereby

        ORDERED, ADJUDGED, AND DECREED THAT:

        1.   The Motion is GRANTED.

2.    Subject to the provisions of this Order, the Debtors are hereby authorized but not directed to reject any or all of the Leases and to abandon the Expendable Property without further Court approval.

3.    The form of notice attached hereto as <u>Exhibit A</u> (the "Rejection Notice") is hereby approved.

4.    The rejection of a Lease, if any, shall become effective as of ten calendar days following the issuance by the Debtors of a Rejection Notice (the "Rejection Date").

5.    The Debtors shall serve the Rejection Notice by e-mail, facsimile, overnight delivery, or hand delivery, along with a copy of this Order, on (a) the lessor under the particular Lease (each, a "Lessor") to be rejected (and, to the extent that the Debtor is the sublessor, on the sublessee), (b) any additional parties entitled to notice pursuant to the terms of the rejected Leases, (c) all parties known to the Debtors as having a direct interest in any Expendable Property proposed to be abandoned, (d) the Office of the United States Trustee for the Southern District of New York, (e) counsel for the Official Committee of Unsecured Creditors, (f) counsel for the agent under the Debtors' prepetition credit facility, and (g) counsel for the agent under the postpetition credit facility.

6.    The rejection of the Lease and abandonment of Expendable Property shall become effective on the Rejection Date without further Court order unless an objection (the "Objection") thereto and request for hearing is sent so as to be <u>received</u> by the Debtors and their undersigned counsel within the ten-day period referenced in paragraph 4 hereof.  In the event that a proper and timely Objection is served in accordance with this paragraph, and the Debtors and the objecting party are not able to reach a consensual resolution of the Objection, the Debtors shall schedule a hearing on the Objection with this Court and provide notice of the

2

hearing to the objecting party and other parties-in-interest.  In the event that this Court overrules

the Objection or the Objection relates only to rejection damages or Expendable Property, such

Lease shall still be deemed rejected as of the Rejection Date.

       7.    The Debtors shall have until the later of the Rejection Date or the date

provided in each Lease to remove property from the leased premises.  To the extent that any

Expendable Property remains in the leased premises after the Rejection Date or such later date as

provided for in the Lease, the Expendable Property shall be deemed abandoned to the landlord of

the Lease, which landlord shall be entitled to remove or dispose of such property in its sole

discretion without liability to any party which might claim an interest in the Expendable Property

and which was served with a copy of the Rejection Notice.

       8.    Unless a party serves an Objection in accordance with the procedures set forth

above, any expense incurred by a Lessor in the removal or disposal of Expendable Property shall

not be treated as an administrative expense under section 503(b)(1) of the Bankruptcy Code.  If a

party properly serves an Objection, then the nature and priority of any claim asserted by such

Objection shall be agreed to consensually by the parties or determined by a subsequent order of

this Court.  Notwithstanding the foregoing, the Debtors request that the time necessary to resolve

any disputes relating to such Expendable Property not alter the effectiveness of the Rejection

Date as stated in the applicable Rejection Notice.

       9.    Parties shall have until the later of the general bar date for filing prepetition

general unsecured claims as may be established in these cases or 30 days from the Rejection

Date to file a proof of claim for damages arising from such rejection.  Any claims not timely

filed shall be forever barred.

3

10. The Debtors shall pay rent on a per diem basis as charges accrue under the Lease for the month in which the Rejection Date of a Lease occurs.

11. If any Debtor has deposited monies with a Lessor as a security or other kind of deposit or pursuant to another similar arrangement, such Lessor shall not be permitted to set off or otherwise use the monies from such deposit or other arrangement without the prior order of this Court unless such amounts can be set off pursuant to paragraph 18 of the Order Under 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), And 364(e) and Fed. R. Bankr. P. 2002, 4001, And 9014 (I) Authorizing Debtors To Obtain Postpetition Financing, (II) To Utilize Cash Collateral, And (III) Granting Adequate Protection to Prepetition Secured Parties (Docket No. 797).

12. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

13. The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:    New York, New York
          January __, 2005


_____
UNITED STATES BANKRUPTCY JUDGE

4