## IN THE UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                      :

In re                        :    Chapter 11
                        :

DELPHI CORPORATION et al.,     :    Case No. 05-44481 (rdd)
                        :

               Debtors.   :    (Jointly Administered)
                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## <u>AFFIDAVIT OF SERVICE</u>

I, Amber M. Cerveny, being duly sworn according to law, deposes and says that I am employed by Kurtzman Carson Consultants, LLC, court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On December 16, 2005, I caused to be served, via overnight mail the documents listed in Section 1 on J. Ted Donovan, Finkel Goldstein Rosenbloom & Nash LLP, 26 Broadway, Suite 711, New York, NY 10004:

*Section 1*

I. Notice of Motion for Order Under 11 U.S.C. § 365(a) Authorizing Debtors to Assume Executory Contract with Pillarhouse (U.S.A.), Inc. **(Docket No. 1553) [Attached hereto as Exhibit A]**

II. Motion for Order Under 11 U.S.C. § 365(a) Authorizing Debtors to Assume Executory Contract with Pillarhouse (U.S.A.), Inc**. (Docket No. 1553) [Attached hereto as Exhibit A]**


Dated: December 27, 2005

                                   */s/ Amber M. Cerveny*
                                   Amber M. Cerveny

Sworn to and subscribed before
me on December 27, 2005

 */s/ Evan Gershbein*
Notary Public

My Commission Expires:    *1/19/07*

1

# EXHIBIT A

**Hearing Date and Time: January 5, 2006 at 10:00 a.m.**
**Objection Deadline:  December 29, 2005 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                         :
            In re                                        :    Chapter 11
                                                         :
    DELPHI CORPORATION, et al.,                          :    Case No. 05-44481 (RDD)
                                                         :
                                    Debtors.             :    (Jointly Administered)
                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

NOTICE OF MOTION FOR ORDER UNDER
11 U.S.C. § 365(a) AUTHORIZING DEBTORS TO ASSUME
EXECUTORY CONTRACT WITH PILLARHOUSE (U.S.A.), INC.

PLEASE TAKE NOTICE that on December 16, 2005, Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in

the above-captioned cases, filed the Motion For Order Under 11 U.S.C. § 365(a)

Authorizing Debtors To Assume Executory Contract With Pillarhouse (U.S.A.), Inc. (the

"Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of

the Motion will be held on January 5, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the

"Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, Room 610, New York, New York,

10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion

must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the Southern District of New York and the Order Under 11

U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And

Administrative Procedures, And (III) Scheduling An Initial Case Conference In

Accordance With Local Bankr. R. 1007-2(e) (the "Case Management Order") (Docket No.

245), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as

amended) – registered users of the Bankruptcy Court's case filing system must file

electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in

2

Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n:  Kenneth S. Ziman), (iv) counsel for the agent under the Debtors' postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n:  Marlane Melican), (v) counsel for the official committee of unsecured creditors, Latham & Watkins, 885 Third Avenue, New York, New York, 10022 (Att'n:  Robert J. Rosenberg and Mark A. Broude), and (vi) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard), in each case so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time)** on **December 29, 2005** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth herein and in accordance with the Case Management Order will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance with the procedures set forth herein and the Case Management Order, the Bankruptcy Court may enter an order granting the Motion **without further notice.**

Dated:  New York, New York
       December 16, 2005

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:  s/ John Wm. Butler, Jr._____
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By:  s/ Kayalyn A. Marafioti_____
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

**Hearing Date and Time: January 5, 2006 at 10:00 a.m.**
**Objection Deadline: December 29, 2005 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                               :
      In re                        :    Chapter 11
                               :
DELPHI CORPORATION, et al.,      :    Case No. 05-44481 (RDD)
                               :
                               :    (Jointly Administered)
             Debtors.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER
11 U.S.C. § 365(a) AUTHORIZING DEBTORS TO ASSUME
EXECUTORY CONTRACT WITH PILLARHOUSE (U.S.A.), INC.

("PILLARHOUSE ASSUMPTION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order pursuant to 11 U.S.C. § 365(a) authorizing the debtors to assume an executory contract with Pillarhouse (U.S.A.), Inc. ("Pillarhouse").  In support of this Motion, the Debtors respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8, 2005, Delphi and certain of its U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") filed voluntary petitions in this Court for reorganization relief under the Bankruptcy Code.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases (Dockets Nos. 28 and 404).

2.    On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors.  No trustee or examiner has been appointed in the Debtors' cases.

2

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicate for the relief requested herein is section 365(a) of

the Bankruptcy Code.

B.      Current Business Operations Of The Debtors

5.      With more than 180,000 employees worldwide, global 2004 revenues of

approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1

billion,[1] Delphi ranks as the fifth largest public company business reorganization in terms of

revenues, and the thirteenth largest public company business reorganization in terms of assets.

Delphi's non-U.S. subsidiaries are not chapter 11 debtors, will continue their business operations

without supervision from the Bankruptcy Court, and will not be subject to the chapter 11

requirements of the U.S. Bankruptcy Code.

6.      Over the past century, the operations which are now owned by Delphi

have developed leading global technology innovations with significant engineering resources and

technical competencies in a variety of disciplines.  Today, the Company (as defined below) is

arguably the single largest global supplier of vehicle electronics, transportation components,

integrated systems and modules, and other electronic technology.  The Company's technologies

and products are present in more than 75 million vehicles on the road worldwide.  The Company

supplies products to nearly every major global automotive original equipment manufacturer, with

2004 sales to its former parent, General Motors Corporation ("General Motors" or "GM"),

---

[1]     The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates.

equaling approximately $15.4 billion, and sales to each of Ford Motor Company,

DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group

exceeding $850 million.

       7.     As part of its growth strategy, Delphi has established an expansive global

presence with a network of manufacturing sites, technical centers, sales offices, and joint

ventures located in every major region of the world.  In the U.S., the Debtors employ

approximately 50,600 people.  These employees work in approximately 44 manufacturing sites

and 13 technical centers across the country, and in Delphi's worldwide headquarters and

customer center located in Troy, Michigan.  Approximately 34,750 of these individuals are

hourly employees, 96% of whom are represented by approximately 49 different international and

local unions.  Outside the United States, the Company's foreign entities employ more than

134,000 people, supporting 120 manufacturing sites and 20 technical centers across nearly 40

countries worldwide.

       8.     Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through

various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these

divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates

(collectively, the "Company") in accordance with the terms of a Master Separation Agreement

between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution

from a North American-based, captive automotive supplier to a global supplier of components,

integrated systems, and modules for a wide range of customers and applications.  Although GM

is still the Company's single largest customer, today more than half of Delphi's revenue is

generated from non-GM sources.

9.      Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base.  The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.      Events Leading To Chapter 11 Filing

10.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the marketplace, Delphi's financial condition deteriorated further in the first six months of 2005.  The Company experienced net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same time period in calendar year 2004.[2]

---

[2]      Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

11.     The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.     In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward looking revenue requirements.  Having concluded that pre-filing discussions with its unions and GM were not leading to the implementation of a plan sufficient to address the Debtors' issues on a timely basis, the Company determined to commence these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value.

13.     Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses.  This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness envisioned in the Company's transformation plan.  The Debtors believe that a substantial segment of

6

Delphi's U.S. business operations must be divested, consolidated, or wound-down through the chapter 11 process.

14.     Upon the conclusion of this process, the Debtors expect to emerge from chapter 11 as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.     By this Motion, the Debtors seek authority to assume the Purchase Order Number 450104879, between Delphi and Pillarhouse (U.S.A.), Inc., dated as of May 19, 2005 (the "Contract"), a copy of which is attached hereto as Exhibit A.

<u>Basis For Relief</u>

A.     <u>Summary Of The Contract</u>

16.     Pursuant to the Contract, on May 19, 2005 Delphi, through Delphi Electronics and Safety, purchased two pieces of equipment from Pillarhouse: an in-line module pre-heater and an in-line module fluxer.  Pillarhouse agreed to fabricate the equipment and delivered the equipment to Delphi's plant in Mexico pre-bankruptcy.  The Contract also requires Pillarhouse to install the equipment in Delphi's plant.  The total Contract price is $77,535.60, including $27,465.00 for the in-line module pre-heater, $46,129.60 for the in-line module fluxer, and $3,950.00 for the installation charges.

B.     <u>Assumption Of The Contract</u>

17.     On November 7, 2005, Pillarhouse filed a Motion for Order Fixing a Deadline for the Debtors to Assume or Reject an Executory Contract with Pillarhouse (U.S.A.),

7

Inc. (Docket No. 917).  On December 1, 2005, this Court entered the Order Under 11 U.S.C. §

365(d)(2) Fixing Deadline For Debtors To Assume Or Reject Executory Contract With

Pillarhouse (U.S.A.) Inc. (Docket No. 1377), which required the Debtors to determine, within ten

days, whether to assume or reject the Contract.  Thereafter, the Debtors evaluated the Contract

and any available alternatives to the Contract, and on December 9, 2005, the Debtors notified

Pillarhouse that they intended to assume the Contract.

       18.     Currently there are amounts outstanding under the Contract that must be

cured in connection with the proposed assumption.  The Debtors owe Pillarhouse the sum of

$73,594.60, which represents the Contract price for the equipment, which was delivered to the

Debtors prior to the filing of the chapter 11 petition.  Accordingly, the total cure cost associated

with the assumption of the Contract is $73,594.60 (the "Cure Amount").  Moreover, upon

installation of the equipment the Debtors will pay Pillarhouse the sum of $3,950 for installation

charges.

       19.     The equipment covered by the Contract is used in the production of certain

electronic components at one of Delphi's plants in Mexico and is necessary for production of

those components.  At the time the Contract was issued, Delphi bargained for Pillarhouse to

install the equipment, which was an important aspect of the Contract for Delphi.  If the Debtors

were to find another party to install the equipment at a similar price, installation by anyone other

than Pillarhouse could subject the Debtors and their estates to unnecessary risks because any

delay caused by improper installation of the equipment could result in disrupted production of

goods.  Due to the relatively small amounts necessary to cure all defaults under the Contract, the

Debtors have determined that the costs that could be incurred on account of improperly installed

equipment might quickly exceed the total cure costs under the Contract.

20.      Moreover, the Debtors also bargained for a warranty on the equipment in connection with the Contract.  That warranty could, however, be rendered void if anyone other than Pillarhouse were to perform the installation, thus subjecting the Debtors and their estates to additional administrative costs in the event of future equipment failures.  Finally, assumption of the Contract will not impose upon the Debtors additional administrative risks.  After assumption of the Contract and installation of the equipment, Delphi will have performed all of its obligations to Pillarhouse under the Contract, therefore, the likelihood of a breach or rejection by the Debtors after assumption is minimal.

21.      The Debtors believe that rejection of the Contract could pose greater administrative risks than assumption.  Assumption of the Contract would ensure that the equipment is installed properly, allowing for uninterrupted production of goods.  For the foregoing reasons, the Debtors believe that assumption of the Contract is in the best interests of the estates because it will ensure continued production and minimize risks to the Debtors and their estates.

<u>Applicable Authority</u>

22.      Section 365(a) of the Bankruptcy Code provides that a debtor in possession, "subject to the Court's approval, may assume or reject any executory contract or unexpired lease of the debtor."  11 U.S.C. § 365(a).  The standard to be applied by a court in determining whether an executory contract or unexpired lease should be assumed is the "business judgment" test, which is premised upon the debtor's business judgment that assumption would be beneficial to its estate.  <u>See Orion Pictures Corp. v. Showtime Networks, Inc.</u> (In re Orion Pictures Corp.), 4 F.3d 1095, 1098-99 (2d Cir. 1993); <u>see also</u> <u>In re Child World, Inc.</u>, 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992) (debtor may assume or reject an unexpired lease under § 365(a) in the exercise of its "business judgment"); <u>In re Roman Crest Fruit, Inc.</u>, 35 B.R. 939, 949

9

(S.D.N.Y. 1983); Control Data Corp. v. Zelman, 602 F.2d 38, 42 (2d Cir. 1979). "More exacting

scrutiny would slow the administration of the debtor's estate and increase its cost, interfere with

the Bankruptcy Code's provision for private control of administration of the estate, and threaten

the court's ability to control a case impartially."  Richmond Leasing Co. v. Capital Bank, N.A.,

762 F.2d 1303, 1311 (5th Cir. 1985).

23.     If the debtor's business judgment has been exercised reasonably, a court

should approve the assumption of an executory contact.  See, e.g., NLRB v. Bildisco and

Bildisco, 465 U.S. 513, 523 (1984); Group of Inst'l. Investors v. Chicago, Milwaukee, St. Paul &

Pacific R.R. Co., 318 U.S. 523 (1943); Cleveland Hotel Protective Comm. v. Nat'l City Bank of

Cleveland (In re Van Sweringen Corp.), 155 F.2d 1009, 1013 (6th Cir.), cert. denied, 329 U.S.

766 (1946); In re Child World, Inc., 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992); In re Ionosphere

Clubs, Inc., 100 B.R. 670, 673 (Bankr. S.D.N.Y. 1989); see also  In re Orion Pictures Corp., 4

F.3d at 1098-99; In re RCN Corp., Case No. 04-13638 (RDD), June 22, 2004 Hr'g Tr. ¶¶ 50:24–

50:2, at 46.  Once the debtor has satisfied the business judgment standard by showing that

assumption will benefit the estate, the court "should not interfere 'except upon a finding of bad

faith or gross abuse of [the debtor's] business discretion.'"  Id. at 465 (citing Lubrizol Enters.,

Inc. v. Richmond Metal Finishers Inc., 756 F.2d 1043, 1047 (4th Cir. 1985).

24.     The business judgment rule shields a debtor's management from judicial

second-guessing.  In re Farmland Indus., Inc., 294 B.R. at 913 (quoting In re Johns-Manville

Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986)) ("'[T]he Code favors the continued

operation of a business by a debtor and a presumption of reasonableness attaches to a debtor's

management decisions.'").  Once the Debtors articulate a valid business justification, "[t]he

business judgment rule 'is a presumption that in making a business decision the directors of a

corporation acted on an informed basis, in good faith and in the honest belief that the action was

in the best interests of the company.'" In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y.

1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

25.    Upon finding that the Debtors have exercised their sound business

judgment in determining that assumption of the Contract is in the best interests of their estates,

this Court should approve assumption under section 365(a) of the Bankruptcy Code.  In re Gucci,

193 B.R. 411, 415-17 (S.D.N.Y. 1996) (affirming bankruptcy court's approval of assumption of

executory contract upon determining that assumption "was in the best interest of the estate");

Blue Cross Blue Shield of Conn. v. Gurski (In re Gurski), Nos. 94-51202 & 3:95CV1883, 1996

WL 684397, at *2 (D. Conn. Jan. 25, 1996) (affirming bankruptcy court's determination that

executory contracts were beneficial to debtor such that debtor could assume them under section

365(a)).

26.    In determining to assume the Contract, the Debtors clearly have satisfied

the requisite "business judgment" standard.  As stated above, the Debtors have determined that

rejection of the Contract could pose greater administrative risks than assumption.  Moreover,

although the Debtors will have to pay a nominal amount to cure the defaults under the Contract,

doing so will ensure that the equipment is installed properly, allowing for uninterrupted

production of goods.   For all of the foregoing reasons, the Debtors have determined to assume

the Contract.

27.    The Debtors submit that the statutory requirements of section 365(b)(1) of

the Bankruptcy Code have been satisfied because there are no monetary defaults existing under

the Contract to be assumed other than payment of the Cure Amount.  Based on the foregoing,

11

the Debtors believe that the requirements of 365 have been satisfied and that this Court should

grant the relief requested in the Motion.

## Notice

28.     Notice of this Motion has been provided in accordance with the Order

Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And

Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance

With Local Bankr. R. 1007-2(e), entered by this Court on October 14, 2005 (Docket No. 245).

In light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

## Memorandum Of Law

29.     Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a)

authorizing the assumption of the Contract, and (b) granting the Debtors such other further relief

as is just.

Dated: New York, New York
      December 16, 2005

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

13

**DELPHI** 847-593 2070 [handwritten]

Delphi Electronics and Safety

Page 1 of 7

**Buyer:**

DELPHI
ELECTRONICS & SAFETY
P.O. Box 9005
KOKOMO IN 46904-9005

**Deliver to:**

DELPHI E& S DELNOSA Plant 5-6
LIDC Receiving Warehouse
ATTN: VINCENT HALFACRE
956-228-7825
702 Joaquin Cavazos Rd
LOS INDIOS TX 78567

PILLARHOUSE INC
635 TOUHY AVE
ELK GROVE VILLAGE IL 60007

**Purchase Order**

PO Number
450104879                          Date Issued
Version                             05/19/2005
05/20/2005 02:52:02 EST

Delivery date: 06/15/2005

Vendor No: 1011619
DUNS No: 877956292

**Payment Terms: ZMN2**          **Currency: USD**

Payment settled on 2nd, 2nd Month

**Incoterms: FOB-Freight Collect**

| Item No. | Material No/Item Identifier No | Total Order Quantity | Plant |
|---|---|---|---|
| | Description | | Requester |
| 00010 | PR10168810 00010 | 1.000 | DAHQ DELPHI D HEADQUARTERS |
| | IN-LINE MODULE PRE-HEATER | | SMITLEY, B |

SMITLEY, B 765-451-1055 PR458510
IND-006856
Warranty: 1 year parts and labor

| Delivery Date | Scheduled Quantity | Price | Price Unit | UOM | Value |
|---|---|---|---|---|---|
| 06/15/2005 | 1.000 | 27,456.00 | 1 | PC | 27,456.00 |
| Net Line Item Value | | | | USD | 27,456.00 |

| Item No. | Material No/Item Identifier No | Total Order Quantity | Plant |
|---|---|---|---|
| 00020 | PR10168810 00020 | 1.000 | DAEQ DELPHI D HEADQUARTERS |
| | IN-LINE MODULE FLUXER | | SMITLEY, B |

| Delivery Date | Scheduled Quantity | Price | Price Unit | UOM | Value |
|---|---|---|---|---|---|
| 06/15/2005 | 1.000 | 46,129.60 | 1 | PC | 46,129.60 |
| Net Line Item Value | | | | USD | 46,129.60 |

Purchasing Contact: Drake, Greg

Phone: 765-451-2019

Fax: 765-451-5750

Contact Address:

Delphi E & S
One Corporate Center MS:CTLLM,
KOKOMO IN 46902

EST

Date and Time Printed:   05/20/2005 02:52:02

**DELPHI**

PILLARHOUSE INC
635 TOUHY AVE
ELK GROVE VILLAGE IL 60007

| Purchase Order | |
|---|---|
| PO Number | Date Issued |
| 450104879 | 05/19/2005 |
| Version | |
| 05/20/2005 02:52:02 EST | |

| Item No. | Material No/Item Identifier No Description | Total Order Quantity | Plant Requester |
|---|---|---|---|
| 00030 | PR10168810  00030 | 3,950 | DAHQ DELPHI D HEADQUARTERS |
| | INSTALLATION CHARGES | | SMITLEY, B |

| Delivery Date | Scheduled Quantity | Price | Price Unit | UOM | Value |
|---|---|---|---|---|---|
| 06/15/2005 | 3,950.000 | 1.00 | 1 | DOL | 3,950.00 |
| Net Line Item Value | | | | USD | 3,950.00 |

| Total net value | USD | 77,535.60 |
|---|---|---|

**Notes:**

Seller acknowledges and agrees that Buyer's General Terms and Conditions are incorporated in, and a part of, this contract and each purchase order, release, requisition, work order, shipping instruction, specification and other document issued by Buyer or accepted in writing by Buyer, whether expressed in written form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively referred to as this "Contract"). A copy of Buyer's General Terms and Conditions is available upon written request to Buyer or via the internet at Delphi's website, delphi.com. Seller acknowledges and agrees that it has read and understands Buyer's General Terms and Conditions. If Seller accepts this Contract in writing or commences any of the work or services which are the subject of this Contract, Seller will be deemed to have accepted this Contract and Buyer's General Terms and Conditions in their entirety without modification. Any additions to, changes in, modifications of, or revisions of this Contract (including Buyer's General Terms and Conditions) which Seller proposes will be deemed to be rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals in writing.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
* PAYMENT ISSUES AND QUESTIONS REGARDING SHIPPED *
* MATERIAL SHOULD BE DIRECTED TO:            *
* DISBURSEMENT SERVICES AT (248)874-4636.  (A2) *
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
DO NOT INVOICE FOR SHIPPED MATERIAL. DELPHI-D IS
'PAY ON RECEIPT' AND INVOICES ARE NOT REQUIRED.
-----------------------------
INVOICES ARE REQUIRED AND MUST BE SUBMITTED FOR
SERVICES AND ITEMS WHICH ARE NOT SHIPPED.
-----------------------------
PLEASE SUBMIT THESE TO:
DELPHI DELCO ELECTRONICS CORP
ATTN: MANUAL RECEIPTS PROCESSING MS-9A241
P O BOX 9005
KOKOMO, IN  46904-9005
-----------------------------
***CALIFORNIA SHIPMENTS*** . DELPHI-D DOES NOT

PILLARHOUSE INC
635 TOUHY AVE
ELK GROVE VILLAGE IL 60007

## Purchase Order

PO Number
450104879
Version
05/20/2005 02:52:02 EST

Date Issued
05/19/2005

| Item No. Material No/Item Identifier No | Total Order Quantity | Plant |
|---|---|---|
| Description | | Requester |

### Notes Continued:

HAVE A DIRECT PAYMENT PERMIT IN CALIFORNIA.
DELCO DOES HAVE DIRECT PAY PERMITS IN INDIANA,
MICHIGAN, TEXAS AND WISCONSIN.
--------------------------------------
YOU MUST PLACE THE FOLLOWING ON YOUR PACKING SLIP:
- PURCHASE ORDER (ONLY ONE PURCHASE ORDER NUMBER
PER PACKING SLIP)
- DELPHI-D "ITEM IDENTIFICATION NUMBER (ID)" FROM
PURCHASE ORDER FOR EACH DELIVERED ITEM
- LIST DELPHI-D DESCRIPTION PER PURCHASE ORDER FOR
EACH LINE ITEM DELIVERED FOLLOWED BY YOUR
DESCRIPTION IF DESIRED.
- EQUIPMENT SERIAL NUMBER(S)
- - - - - - - - - - - - - - - -
ADDITIONAL PACKING SLIP INFORMATION:
- EACH BOX/CRATE MUST CONTAIN A COMPLETE PACKING
SLIP FOR THE ENTIRE DELIVERY
- HIGHLIGHT ON THE PACKING SLIP THE APPLICABLE
PURCHASE ORDER ITEM IDENTIFICATION NUMBER FOR
EACH ITEM LOCATED IN THE BOX/CRATE
- PACKING SLIP MUST BE ENCLOSED IN A CLEAR PLASTIC
ENVELOPE AND AFFIXED TO THE OUTSIDE (WITH A COPY
INSIDE) OF EACH BOX/CRATE.
*****************************************************
ROUTING: REFER TO ROUTING LETTER DATED 02/13/03 FOR
INSTRUCTIONS. CALL DELPHI-D TRANSPORATION AT
(765)451-4078 OR -4079 FOR ADDITIONAL INFORMATION.
FREIGHT TERMS ARE 'FOB ORIGIN,FREIGHT COLLECT'.
BUYER WILL ONLY PAY FREIGHT CHARGES IF THE SELLER
USES THE BUYER SELECTED CARRIER AND SHIPS COLLECT.
THE SELLER AGREES TO PAY ALL FREIGHT INVOICES WHEN
SELLER DEVIATES FROM BUYER SPECIFIED CARRIER WITHOUT
PRIOR APPROVAL FROM DELPHI-D TRANSPORTATION.
*****************************************************

***************************
Delphi requires 100% on time delivery performance from suppliers. If you anticipate problems in delivering materials and/or completing services by the date specified on the Buyer's purchase order, the Delphi Buyer should be notified immediately.
***************************

*****************************************************
CHANGES IN SPECIFICATIONS AFFECTING PRICE AND/OR
LEADTIME, WHETHER INITIATED BY SUPPLIER OR DELPHI
DELCO ELECTRONICS CORP MUST NOT BE MADE WITHOUT

**DELPHI** _____ Delphi Electronics and Safety

PILLARHOUSE INC
635 TOUHY AVE
ELK GROVE VILLAGE IL  60007

### Purchase Order

PO Number                                    Date Issued
450104879                                   05/19/2005
Version
05/30/2005 02:52:02 EST

| Item No. | Material No/Item Identifier No. | Total Order Quantity | Plant |
|----------|-------------------------------|----------------------|-------|
| | Description | | Requester |

### Notes Continued

PRIOR APPROVAL BY DELPHI PURCHASING VIA A PURCHASE
ORDER AMENDMENT. ANY CHANGES IN DELIVERY DATE FOR
ANY REASON WHATSOEVER WILL BE REPORTED PROMPTLY IN
WRITING TO THE BUYER WITH DETAILED EXPLANATION.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IN ADDITION TO THE REQUIREMENTS SPECIFIED, THE
EQUIPMENT MUST COMPLY WITH DELPHI DELCO ELECTRONICS
CORP'S EQUIPMENT APPROVALS PROCEDURE AND ONE OF THE
FOLLOWING STANDARDS ASSIGNED BY THE DELPHI-D
EQUIPMENT APPROVALS OFFICE: A) STANDARD INDUSTRIAL
EQUIPMENT SPECIFICATIONS,OR, B) CUSTOM INDUSTRIAL
EQUIPMENT SPECIFICATION.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
IF THIS SHIPMENT REQUIRES AN AIR-RIDE OR PADDED VAN
TO INSURE ITS SAFETY, ROUTE VIA NORTH AMERICAN VAN
LINES.  ARRANGE ALL DETAILS THROUGH GUYER THE MOVER
(765) 457-6197 OR 800-783-8268.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
Calibration Service Requirements:
1. QS9000 registration requires Delphi to use inspection / test laboratory suppliers that have ISO/IEC Guide 25 (or ISO/IEC 17025) accreditation.  The OEM
may be used whenever an accredited source cannot be found.
2. Calibration Services on Delphi equipment shall be performed to original manufacturer's specification  If such specification is not available, equivalent
reference standards (e.g. BS, ISO, JIS, and DIN) shall be used.
3. All test/measurement instruments used to calibrate Delphi equipment shall be traceable to National/International Standards (e.g. NIST, NML, NPT, ETL, and
NRC).
4. If calibration standard is found to be out of tolerance, upon re-calibration of the standard, the supplier shall determine validity of previous measurements made
on Delphi equipment and shall provide for immediate re-calibration of all affected equipment when necessary.
5. The supplier shall provide calibration report for every piece of equipment calibrated. The report shall include the following:
A) Type of Equipment
B) Identification number of equipment
C) Identification number of calibration standard
D) Traceability information of calibration standard
E) Check method of calibration activity (e.g. reference
manual description of equipment or equivalent)
F) Calibration results stating:
F1.  Test Items
F2.  Measured values as received
F3.  Measured values after adjustment (If adjustment were

DELPHI

PILLARHOUSE INC
635 TOUHY AVE
ELK GROVE VILLAGE  IL  60007

## Purchase Order

PO Number                                  Date Issued
450104879                                  05/19/2005
Version
05/30/2005 02:52:02 EST

| Item No. | Material No/Item Identifier No. | Total Order Quantity | Plant |
| --- | --- | --- | --- |
| | Description | | Requester |

### Notes Continued

made)
F4, Acceptance Criteria
G) Statement of conformance to specification after

calibrations
H) Name of person responsible for the calibration
I) Date of the calibration
6. Calibration sticker shall be affixed on all Delphi's equipment that is calibrated. The information shall contain the date of calibration, identification number of
equipment or calibration reference number.
7. Any variation from the above requirements for approval to repair equipment, which cannot be calibrated, must have written approval from the buyer.
*********************


***************************************************
A PROPERLY COMPLETED CERTIFICATE OF ORIGIN,
NAFTA CERTIFICATE WHERE APPLICABLE (CUSTOMS FORM 434)
AND A MANUFACTURERS AFFIDAVIT STATING THE COUNTRY OF
ORIGIN BE INCLUDED WITH THE SHIPPING DOCUMENTS FOR
THE MATERIAL ON THIS PURCHASE ORDER.          (NT)
*************************************************


***************************************************
WARRANTY AND SPARE PARTS INSTRUCTIONS
*********
PRIOR TO THE SHIPPING OF EQUIPMENT TO DELPHI DELCO
ELECTRONICS SYSTEMS YOU MUST "ELECTRONICALLY" PROVIDE
THE FOLLOWING INFORMATION FOR EACH PIECE OF EQUIPMENT
TO THE INDIVIDUALS LISTED:
-PURCHASE ORDER NUMBER
-EQUIPMENT DESCRIPTION (S) & MODEL NUMBER (S),
IF APPLICABLE
-EQUIPMENT SERIAL NUMBER (S)
-LIST OF RECOMMENDED SPARE PARTS INCLUDING:
SPARE PARTS DESCRIPTIONS, OEM SPARE PART NUMBERS
OIM SPARE PART NUMBERS, SPARE PART PRICES, AND
SPARE PART PRICING EXPIRATION DATE
-DESIGNATE WHICH PARTS ARE CONSIDERED "CONSUMABLE" VERSUS
THOSE COVERED UNDER WARRANTY

-EQUIPMENT WARRANTY PERIOD
-EQUIPMENT WARRANTY START DATE
ELECTRONICALLY TRANSMIT THIS INFORMATION TO THE FOLLOWING INDIVIDUALS:
THOMAS.D.RIGLE@DELPHI.COM
MIKE.SALYERS@SETECHUSA.COM

# DELPHI

Delphi Electronics and Safety

Page 6 of 7

**PILLARHOUSE INC**
635 TOUHY AVE
ELK GROVE VILLAGE IL 60007

## Purchase Order

| PO Number | Date Issued |
|---|---|
| 450104879 | 05/13/2005 |
| Version | |
| 05/20/2005 02:52:02 EST | |

| Item No. | Material No/Item Identifier No. | Total Order Quantity | Plant |
|---|---|---|---|
| | Description | | Requester |

## Notes Continued

REQUESTOR (WHO ORDERED), AS IDENTIFIED ON THE PURCHASE ORDER,
FAILURE TO PROVIDE THIS INFORMATION AT TIME OF SHIPMENT MAY NEGATIVELY IMPACT PAYMENT PROCESSING.
*************************************************************************************

************************************************************THE ULTIMATE DESTINATION OF THE MATERIAL ON THIS PURCHASE
ORDER IS MEXICO.
*************************************************************************

*************************************************************************
IMPORTANT NOTICE TO SUPPLIERS:
PLEASE COMPLY STRICTLY TO DELPHI'S SAFETY, HEALTH AND ENVIRONMENTAL PRACTICES WHILE WORKING IN DELPHI'S PREMISES.

*************************************************************************
Delphi requires 100% on time delivery performance from suppliers. If you anticipate problems in delivering materials and/or completing services by the date
specified on the Buyer's purchase order, the Delphi Buyer should be notified immediately.
*************************************************************************
Restricted, toxic, and hazardous materials - Suppliers are required to comply with current governmental and safety constraints on restricted, toxic and hazardous
materials; as well as environmental, electrical and electromagnetic considerations applicable to the country of manufacture and sale. This relates to both the
salable product and the manufacturing processes. (Refer also to Terms and Conditions No. 8 "Ingredients Disclosure and Special Warnings Instructions").
Commencement of any work or service under this order shall constitute seller's acceptance of these responsibilities. If you do not accept these responsibilities,
please contact the appropriate Delphi's Buyer.

*************************************************************************
Seller acknowledges and agrees that Buyer's General Terms and Conditions are incorporated in, and a part of, this contract and each purchase order, release,
requisition, work order, shipping instruction, specification and other document issued by Buyer or accepted in writing by Buyer, whether expressed in written
form or by electronic data interchange, relating to the goods and/or services to be provided by Seller pursuant to this contract (such documents are collectively
referred to as this "Contract"). A copy of Buyer's General Terms and Conditions is available upon written request to Buyer or via the internet at Delphi's website,
delphi.com. Seller acknowledges and agrees that it has read and understands Buyer's General Terms and Conditions. If Seller accepts this Contract in writing or
commences any of the work or services which are the subject of this Contract, Seller will be deemed to have accepted this Contract and Buyer's General Terms
and Conditions in their entirety without modification. Any additions to, changes in, modifications of, or revisions of this Contract (including Buyer's General
Terms and Conditions) which Seller proposes will be deemed to be rejected by Buyer except to the extent that Buyer expressly agrees to accept any such proposals
in writing.
*************************************************************************
Supplier agrees to make deliveries according to the agreed upon delivery date(s), and to pay to Buyer liquidated damages amounting to 1.00% of the contract
price per week, for each week (or part thereof) of any delay. Additional charges incurred by the supplier to achieve agreed upon delivery date are the supplier's
responsibility and will not be reimbursed by Delphi.
*************************************************************************

*************************************************************************
IN ACCORDANCE WITH THE PROVISIONS OF ARTICLE #17,
ON THE T&C, SELLER AGREES TO

**DELPHI**                                                      Delphi Electronics and Safety

PILLARHOUSE INC
635 TOUHY AVE
ELK GROVE VILLAGE IL  60007

**Purchase Order**

PO Number                                    Date Issued
450104879                                    05/19/2005
Version
05/20/2005 02:52:02 EST

| Item No. | Material No/Item Identifier No | Total Order Quantity | Plant |
| Description | | Requester | |

**Notes Continued:**

CARRIER AND TO FURNISH CERTIFICATES FROM ITS INSURANCE

CARRIERS SHOWING THAT IT CARRIES INSURANCE IN THE
MINIMUM LIMITS:

1. WORKER'S COMPENSATION - STATUATORY LIMITS FOR

STATE OR STATES IN WHICH THE WORK IS TO BE PERFORMED.
2. EMPLOYER'S LIABILITY - $250,000.
3. COMPREHENSIVE GENERAL LIABILITY (INCLUDING
PRODUCTS/COMPLETED, OPERATIONS, AND BLANKET

CONTRACTUAL LIABILITY) $1,000,000 PER PERSON.

$1,000,000 PER OCCURRENCE PERSONAL INJURY;

$1,000,000 PER OCCURRENCE PROPERTY DAMAGE,

COMBINED SINGLE LIMIT.
4. AUTOMOBILE LIABILITY (INCLUDING OWNED, NON-

OWNED, AND HIRED VEHICLES) - $1,000,000 PER PERSON.

$1,000,000 PER OCCURRENCE PERSONAL INJURY AND

PROPERTY DAMAGE COMBINED, SINGLE LIMIT.

MAIL ABOVE TO DELPHI-D, PURCHASING, M/S CTLLM  OR
FAX#: 765-451-5750. (REV 8.15.03)
CONTRACTORS ARE ADVISED THAT THEIR EMPLOYEES MAY HAVE
THE POTENTIAL OF EXPOSURE TO WORKPLACE CHEMICALS.
CONCERNS REGARDING THIS MATTER CAN BE DIRECTED TO
DELPHI DELCO ELECTRONICS CORP ENGINEERING DEPT.

AT (765) 451-5109.
*************************************************************

**Pillarhouse (U.S.A) Inc.**
635 Touhy Ave
ELK GROVE VILLAGE, IL  60007



Customer No.:  DELPHI-INDIO

Invoice No.:  20768

Bill To:  **Delphi Electronics & Safety**
          * Do Not Invoice *

Ship to:  **DELPHI/E & Delnosa**
          LIDC Receiving Warehouse
          601 JOAQUIN CAVAZOS RD.
          LOS INDIOS, TX  78567

| Date | Ship Via | F.O.B. | Terms |
|------|----------|--------|-------|
| 09/19/05 | Panalpina | | 30 days from invoice date |

| Purchase Order Number | Order Date | Sales Person | Our Order Number |
|-----------------------|-----------|--------------|------------------|
| 450104879 | 05/31/05 | | 13692 |

| Quantity | | | Item Number | Description | Unit Price | Amount |
|----------|---------|------|-------------|-------------|-----------|--------|
| Required | Shipped | B.O. | | | | |
| 1 | 1 | | | Pillarhouse InLine Module Preheater - Line item #00010 Delphi ID # PR10168810 00010 <br><br> Machine Serial # IH071 | 27456.00 | 27456.00 |
| 1 | 1 | | | Pillarhouse InLine Module Fluxer - Line Item#00020 Delphi ID# PR10168810 00020 <br><br> Machine Serial # IF158 | 46129.60 | 46129.60 |
| 1 | 1 | | | Installation Charge Line Item # 00030 Delphi ID#PR10168810 00030 <br><br> All freight and customs charges to be forwarded to customer per quotation~ <br><br> Re: Delphi PO# 450104879 Attn: B. Smitley Purchaser : Greg Drake | 3950.00 | 3950.00 |

Invoice subtotal          77535.60

Invoice total          77535.60

Thank You

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
      In re                     :        Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :        Case No. 05-44481 (RDD)
                                    :
                Debtors.        :        (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


ORDER UNDER 11 U.S.C. § 365(a)
AUTHORIZING DEBTORS TO ASSUME
EXECUTORY CONTRACT WITH PILLARHOUSE (U.S.A.), INC.

("PILLARHOUSE ASSUMPTION ORDER")

Upon the motion, dated December 16, 2005 (the "Motion"), of Delphi

Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order") pursuant to 11

U.S.C. § 365(a) authorizing the debtors to assume an executory contract with Pillarhouse

(U.S.A.), Inc. ("Pillarhouse"); and upon the record of the hearing held on the Motion; and this

Court having determined that the relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors, and other parties-in-interest; and it appearing that proper

and adequate notice of the Motion has been given and that no other or further notice is necessary;

and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.        The Motion is GRANTED.


2.        The Debtors' decision to assume the Contract is reasonable and

appropriate under the circumstances and the assumption of the Contract is hereby approved.

3.      The Debtors are authorized to take any and all actions necessary or

desirable to perform the Debtors' obligations and transactions contemplated by the Contract.

4.      Delphi shall pay Pillarhouse the sum of $73,594.60 as a cure amount.

Such payment shall be in full and complete satisfaction of all of Delphi's outstanding obligations

under the Contract.

5.      The charge for installation of the equipment in the amount of $3,950 shall

be granted administrative priority status under sections 503(b) and 507(a)(1) of the Bankruptcy

Code and the Debtors shall pay such amount in accordance with the terms of the Contract.

6.      This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this Order.

7.      The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
          January ____, 2006


_____
UNITED STATES BANKRUPTCY JUDGE