David B. Levant WSBA 20528
STOEL RIVES LLP
600 University Street
Suite 3600
Seattle, WA  98101
Telephone: (206) 624-0900
Fax: (206) 386-7500
dblevant@stoel.com
Attorneys for ENTEK International LLC

Hearing Date: February 9, 2006, 10:00 a.m.
Objection Deadline: February 2, 2006, 4:00 p.m.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, et al. | ) | Case No. 05-44481 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**MOTION OF ENTEK INTERNATIONAL LLC (i) TO ALLOW RECOUPMENT
AND/OR (ii) FOR RELIEF FROM THE AUTOMATIC STAY TO ALLOW SETOFF**

ENTEK International LLC ("ENTEK"), by its undersigned counsel, hereby moves this Court for entry of an order (i) allowing ENTEK to recoup certain amounts owed to it by Delphi Automotive Systems LLC ("Delphi") and/or (ii) modifying the automatic stay to allow ENTEK to effect a setoff of such amounts (this "Motion").  In support of this Motion, ENTEK respectfully states as follows:

## BACKGROUND

### Debtors' Cases

1.      On October 8, 2005 (the "Petition Date"), the above-captioned debtors, including Delphi (the "Debtors"), filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Bankruptcy Code, 11 U.S.C. § 101, <u>et seq.</u> (the "Bankruptcy Code").

2.      The Debtors continue to operate their businesses and manage their property as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3.      The Debtors' cases are being jointly administered pursuant to an order of the Court.

4.      No trustee or examiner has been appointed in these Chapter 11 cases.

5.      An Official Committee of Unsecured Creditors was appointed on or about October 17, 2005.

## ENTEK

6.      ENTEK has supplied Delphi, or its predecessor, General Motors Corporation, with battery separator materials since 1987. In March 2005, Delphi announced that it intended to sell the majority of its global battery business to a third party, while it continues to operate two battery plants in the United States. Thereafter, ENTEK and Delphi entered into an Amendment to Battery Separator Supply Agreement Dated as of June 28, 2003 (the "Amended Agreement" or "Amendment"), which provided that ENTEK would continue to supply battery separators to Delphi's two remaining battery plants in the United States. Pursuant to the Amendment, Delphi owes ENTEK $618,591.15 on account of invoices for battery separators that were supplied by ENTEK before the Petition Date (the "Receivable Amount"). The Amendment also provided that ENTEK would make certain payments to Delphi, including a $1.3 million payment due on December 31, 2005 (the "Payable Amount").

7.      The Amendment also contains the following provision:

> Recoupment and Setoff. ENTEK (a) shall at all times have the right to recoup any amounts due to it under the Amended Agreement from any amounts due from it to Delphi under the Amended Agreement and (b) may at any time and from time to time set off amounts owing (whether or not then due) from ENTEK to DELPHI against any amounts due and owing from DELPHI to ENTEK (including, for avoidance of doubt, any amounts owing pursuant to DELPHI's guaranty in Section 4 of this Amendment).

**Final DIP Financing Order**

8.   On the Petition Date, Debtors filed a Motion for Order Under 11 U.S.C. §§ 361, 362, 363, 364(c), 364(d) and 364(e) and Fed.R.Bankr.P. 2002, 4001 and 9014 (I) Authorizing Debtors to Obtain Secured Postpetition Financing on Superpriority Secured and Priming Basis, (II) Authorizing Use of Cash Collateral, (III) Granting Adequate Protection to Prepetition Secured Lenders, (IV) Granting Interim Relief, and (V) Scheduling a Final Hearing Under Fed.R.Bankr.P. 4001 (b) and (c) (the "DIP Financing Motion") (Docket No. 42).

9.   On October 28, 2005, the Court entered the Final Order Under 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e), and Fed.R.Bankr.P. 2002, 4001 and 9014 (I) Authorizing Debtors to Obtain Post-Petition Financing, (II) to Utilize Cash Collateral and (III) Granting Adequate Protection to Pre-Petition Secured Parties (the "Final DIP Financing Order") (Docket No. 797).

10.   The Final DIP Financing Order provides, in relevant part:

> 18. *Setoff, Replacement Liens and Junior Adequate Protection Liens.* To the extent that a customer or supplier of the Debtors that has an allowable setoff claim under section 506 or 553 of the Bankruptcy Code in respect of its payables owed to any Debtor as of the Petition Date ("Pre-Petition Payables") or a valid right of recoupment that arose prior to the Petition Date (such setoff claim or right of recoupment, "Setoff"), such customer or supplier (a "Setoff Claimant") is hereby provided with certain rights and adequate protection as described below. For the avoidance of doubt, nothing herein shall be construed to be an admission or acknowledgement, or an increase or decrease in the monetary amount of the pre-petition setoff or recoupment rights of any person, under the Bankruptcy Code, applicable non-bankruptcy law or otherwise.
>
> (a) <u>Exercise of Set Off.</u> (1) Any exercise of a Setoff Right (as defined below) in accordance with this Order shall not be stayed by section 362 of the Bankruptcy Code. Any exercise of any right of Setoff other than in accordance with this Order is subject to section 362 of the Bankruptcy Code. Nothing in this Order shall

prevent any holder of a right of Setoff from seeking relief from the automatic stay with respect to such Setoff, or prevent the Debtors or any party in interest from objecting or being heard with respect to any such request. A Setoff Claimant shall, in accordance with this paragraph, be entitled to exercise its Setoff that arose in the ordinary course of business for any claims or recoupment defenses arising from or related to the claims for prepetition warranty and/or product recall claims, customer adjustments, customer rebates and allowances, overpricing claims, claims for short shipments and damaged goods, customer/supplier netting and other similar claims arising in the ordinary course of business of the relevant parties other than any such claims or recoupment defenses arising as a result of the filing of the cases (a "Setoff Right").

. . . .

(2) Any Setoff Claimant seeking to exercise a Setoff Right against payables during any month (whether against Pre-Petition Payables or post-petition payables) shall submit to the Debtors and the Creditors' Committee (with a copy to the Agent) a written request to exercise such Setoff Right, the basis for such Setoff Right and reasonably detailed documentation supporting such Setoff Right. If the Setoff Claimant, the Creditors' Committee and the Debtors fail to agree in writing that any amount is included in a Setoff Right within 10 business days after submission of such information to the Debtors and the Creditors' Committee (the "Agreement Deadline"), the Debtors and such Setoff Claimant shall (unless all such parties agree to extend such 10 business day period) seek resolution of such matter through a mediator agreed to by the Debtors and such Setoff Claimant or appointed by this Court. Such mediation shall end not later than 30 days after the Agreement Deadline unless such period is extended by agreement of the Debtors and such Setoff Claimant. If the Debtors and such Setoff Claimant cannot resolve the matter through such mediation, then such matter may be submitted to binding arbitration to a single arbitrator agreed to by all such parties or appointed by this Court, and such parties shall request that such arbitrator issue its ruling within 90 days after the Agreement Deadline. Notwithstanding any award in any such arbitration, in no event shall the Setoff Claimant be permitted to exercise its Setoff Right against any payables other than Pre-Petition Payables except as set forth in this paragraph 18.

11. The quoted provisions of the Final DIP Financing Order were not included in the proposed Final DIP Financing Order until the day before the final hearing on the DIP Financing Motion. Nevertheless, the Final DIP Financing Order purports to prohibit ENTEK and other

holders of both recoupment and setoff rights from recouping or setting off without first obtaining relief from the automatic stay or complying with the Final DIP Financing Order's provisions for obtaining permission to recoup or set off. Although ENTEK is continuing to investigate the matter, it currently has no evidence indicating that ENTEK was served with the DIP Financing Motion or any interim orders, let alone the proposed Final DIP Financing Order, pursuant to Federal Rule of Bankruptcy Procedure 7004 (the "Federal Rules"). Because the DIP Financing Motion was a contested matter under Federal Rule 9014 and directly affected ENTEK's rights, service should have been made on ENTEK's registered agent within sufficient time for ENTEK to respond.

## Recoupment Request

12.     Without waiving its objections to the applicability or enforceability of the Final DIP Financing Order, on December 9, 2005, ENTEK submitted a request for recoupment or setoff to Delphi, in compliance with the provisions of the Final DIP Financing Order (the "Request"). Pursuant to those provisions, Delphi had until December 23, 2005 to agree to the Request. As of the date of this Motion, ENTEK is continuing to work with the Debtors, but has been informed that review of the Request will not be completed before December 31, 2005, when the Payable Amount is due. Therefore, out of an abundance of caution and in order to protect its rights under the Amendment, ENTEK is forced to file this Motion. In connection herewith, ENTEK has wired to Delphi $681,408.85, representing the balance of the Payable Amount after deducting the Receivable Amount. ENTEK continues to hold the Receivable Amount pending resolution of this matter.

**RELIEF REQUESTED**

13.     By this Motion, and without waiving its objections to the applicability or enforceability of the Final DIP Financing Order, ENTEK seeks an Order of the Court (i) authorizing ENTEK to recoup the Receivable Amount from the Payable Amount and/or (ii) modifying the automatic stay to allow ENTEK to set off the Receivable Amount against the Payable Amount.

14.     Section 362(a)(7) of the Bankruptcy Code operates as an automatic stay of "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." However, the automatic stay "does not affect the right of" a creditor to setoff. H.R. Rep. No. 95-595, at 342 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6298. Instead, the Bankruptcy Code "simply stays its enforcement pending an orderly examination of the debtor's and creditors' rights." Id. Thus a party may still exercise its right to setoff in a bankruptcy proceeding, but must first obtain relief from the automatic stay. 5 Collier on Bankruptcy ¶ 553.06[1][a] (15th ed. 2005).

15.     A creditor may temporarily withhold payment of an amount due while it seeks relief from the automatic stay to allow a setoff. Citizens Bank of Md. v. Strumpf, 516 U.S. 16, 20 (1995). Furthermore, the turnover provisions of the Bankruptcy Code specifically exempt amounts that are subject to a right of set-off. 11 U.S.C. § 542(b). In contrast to setoff, the automatic stay does not "bar or restrain a legitimate right of recoupment." 5 Collier on Bankruptcy ¶ 553.10.

16.     Although the automatic stay does not bar recoupment, the Final DIP Financing Order purports to restrict that right. Additionally, although a creditor may withhold payment pending a determination of its setoff rights, it is not clear that this right is preserved for creditors

that are seeking permission to effect a setoff pursuant to the Final DIP Financing Order, as opposed to seeking formal relief from the automatic stay.

17. Therefore, out of an abundance of caution, and in order to protect its rights under the Amended Agreement, ENTEK has filed this Motion, while continuing to seek a consensual agreement with the Debtors.

## BASIS OF RELIEF REQUESTED

18. The Bankruptcy Code does not create any substantive right to recoupment or setoff. Rather, "'[r]ecoupment and setoff rights are determined by nonbankruptcy law, which ordinarily is state law.'" N.Y. State Elec. & Gas Corp. v. McMahon (In re McMahon), 123 F.3d 93, 96 (2d Cir. 1997) (citation omitted). In this case, the Amended Agreement is subject to the law of the State of Michigan.

### ENTEK Has the Right to Recoup the Receivable Amount from the Payable Amount

19. In Michigan, recoupment is a

> "right of defendant, in the same action, to claim damages from plaintiff, either because he has not complied with some cross-obligation of the contract upon which he sues, or because he has violated some duty which the law imposed upon him in the making or performance of that contract. It is an innovation on the strict rules of common law, and rests upon the principle that it is just and equitable to settle in one action all claims growing out of the same contract or transaction. In its original strict sense it was a mere reduction of the damages claimed by plaintiff, by proof, of mitigating circumstances connected with or growing out of the transaction upon which plaintiff's claim was based showing that it would be contrary to equity and good conscience to suffer plaintiff to recover the full amount of his claim, being considered in the nature of a doctrine of mere mitigation of damages, and was of very limited application. But in more recent practice the doctrine has been greatly extended in its application, and is spoken of as a liberal and beneficial improvement upon the old doctrine of failure of consideration, and is now generally regarded as in the nature of

> a cross-action, the right of plaintiff to sue being admitted, but defendant alleging that he has been injured by a breach of another branch of the same contract on which the action is founded and claiming to stop, cut off, or keep back so much of plaintiff's damages as will satisfy the damages which have been sustained by defendant."

Flynn v. Barry, 191 N.W. 215, 216 (Mich. 1922); accord Newbery Corp. v. Fireman's Fund Ins. Co., 95 F.3d 1392, 1403 (9th Cir. 1996) (bankruptcy courts should allow recoupment if "'it would . . . be inequitable for the debtor to enjoy the benefits of that transaction without meeting its obligations.'" (citation omitted)); In re Eyke, 246 B.R. 550 (Bankr. W.D. Mich. 2000) (allowing recoupment of amounts owed under noncompetition agreement from amounts owed pursuant to indemnification provisions of purchase agreement when it would be inequitable to allow otherwise). Recoupment is particularly appropriate if the parties to a contract "have provided expressly for application of the doctrine with respect to the relevant obligations." 5 Collier on Bankruptcy ¶ 553.10[1].

20. In this case, the Amended Agreement specifically provides that any amounts due from ENTEK under the Amendment may be recouped from any amounts owed to Delphi. This provision also complies with the common-law requirements of recoupment, as it simply allows the amount owed to Delphi to be reduced by the corresponding amount owed to ENTEK pursuant to the same contract or transaction. Furthermore, it would be inequitable to allow Delphi to seek the benefits of the Amended Agreement without first satisfying its responsibilities to ENTEK.

21. ENTEK is therefore entitled to recoup the Receivable Amount from the Payable Amount pursuant to the Amended Agreement.

**ENTEK Has the Right to Set Off the Receivable Amount Against the Payable Amount**

22.     ENTEK also has the right to set off the Receivable Amount against the Payable Amount. In Michigan, "[s]etoff is a legal or equitable remedy that may occur when two entities that owe money to each other apply their mutual debts against each other." Walker v. Farmers Ins. Exch., 572 N.W.2d 17, 19 (Mich. Ct. App. 1997). As the Court of Appeals of Michigan recently stated:

> Generally, the setoff and the action must be between the same parties and in the same capacity or right, and the court can look through the transactions and nominal parties to determine the real parties in interest. A setoff requires a mutuality of debt between the same real parties in interest, where the demands of the mutually indebted parties are set off against each other and only the balance recovered. However, setoff rests on opposing claims that are enforceable in their own right. A claim for setoff need not arise out of the same transaction as that sued on. If the parties are mutually indebted, there may be a setoff regardless of whether the debt arises out of the same contract or transaction.

Siciliano v. Mueller, No. 222258, 2001 WL 1699801, at *6 (Mich. Ct. App. Dec. 28, 2001) (citations omitted). The requirements of setoff are satisfied when the parties owe obligations to each other in their individual capacities, and not, for example, in a fiduciary capacity. In re New Haven Foundry, Inc., 285 B.R. 646, 648 (Bankr. E.D. Mich. 2002). The requirements of setoff under Michigan law are met in this case because ENTEK and Delphi owe obligations to each other in their individual capacities as contracting parties.

23.     Additionally, Section 553(a) of the Bankruptcy Code provides, with certain exceptions that are not relevant here, that "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . ." Thus, Section 553(a) preserves the common-law right of setoff when the following conditions are met: (i) the creditor holds a claim against the debtor that

arose before the commencement of the case; (ii) the creditor owes a debt to the debtor that also arose before the commencement of the case; (iii) the claim and debt are mutual; and (iv) the claim and debt are each valid and enforceable. 5 Collier on Bankruptcy ¶ 553.01[1]. In this case, each of the conditions is met.

24.    First, ENTEK has a prepetition claim against Delphi for the Receivable Amount on account of battery separators delivered to Delphi under the Amended Agreement. A claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

25.    Second, Delphi has a prepetition claim against ENTEK for the Payable Amount on account of the payment due to Delphi from ENTEK. A debt is simply "liability on a claim." 11 U.S.C. § 101(12). The fact that the Payable Amount is due to Delphi on December 31, 2005 does not change its character from a prepetition debt to a postpetition debt. Metco Mining & Minerals, Inc. v. PBS Coals, Inc. (In re MetCo Mining & Minerals, Inc.), 171 B.R. 210, 217 (Bankr. W.D. Pa. 1994). In MetCo, a creditor asserted the right to set off coal mining royalties and indemnity rights for environmental remediation against amounts due to the debtor for coal purchases. The debtor asserted that the creditor could not set off amounts due against the coal mining royalties and certain royalty payments, because they did not become due until after the bankruptcy was filed. The court disagreed. It held that the creditor had a right to payment on account of both its indemnity rights and the royalties from the time the contracts in question were signed, prepetition. Id. at 217-18. Similarly, in In re Telephone Warehouse, Inc., 259 B.R. 64, 69 (Bankr. D. Del. 2001), the bankruptcy court held that commissions earned prepetition but not due until postpetition were nonetheless prepetition obligations because the right to payment arose

prepetition. In this case, Delphi's right to payment from ENTEK arose at the time the Amended Agreement became effective, and was not conditioned on any other event. Therefore, Delphi's right to payment arose prepetition, although the amount was not due until after the Petition Date.

26. Third, as discussed above, the mutuality condition is met in this case because both ENTEK and Delphi owe each other obligations in their individual capacities as contracting parties.

27. Finally, the last condition for set off is met because ENTEK's right to setoff is valid and enforceable under applicable law.

28. ENTEK is therefore entitled to relief from the automatic stay to effect a setoff of the Receivable Amount from the Payable Amount.

## WAIVER OF MEMORANDUM OF LAW

29. This Motion does not raise any novel issues of law. Accordingly, ENTEK respectfully requests that this Court waive the requirement of a separate memorandum of law contained in Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York.

## NOTICE

30. No previous motion for the relief sought herein has been made to this Court or any other court. Notice of this Motion will be provided in accordance with this Court's Order dated October 14, 2005 establishing case management and notice procedures in these cases.

WHEREFORE, ENTEK respectfully requests that this Court enter an order: (i) granting the Motion; (ii) authorizing the immediate exercise of recoupment and/or setoff rights by ENTEK against Delphi; and (iii) granting such other and further relief as the Court deems appropriate.

DATED:  December 28, 2005.          STOEL RIVES LLP

    /s/ David B. Levant          .
David B. Levant WSBA # 20528
Brandy A. Sargent OBS No. 04571
Stoel Rives LLP
600 University Street
Suite 3600
Seattle, WA 98101
Telephone: (206) 624-0900
Fax: (206) 386-7500
dblevant@stoel.com

Attorneys For ENTEK International LLC