SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

333 West Wacker Drive, Suite 2100

Chicago, Illinois 60606

(312) 407-0700

John Wm. Butler, Jr. (JB 4711)

David E. Springer (DS 9331)

John K. Lyons (JL 4951)

Ron E. Meisler (RM 3026)


    - and -


SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

Four Times Square

New York, New York 10036

(212) 735-3000

Kayalyn A. Marafioti (KM 9632)

Thomas J. Matz (TM 5986)


Attorneys for Delphi Corporation, et al.,

   Debtors and Debtors-in-Possession


Delphi Legal Information Hotline:

Toll Free: (800) 718-5305

International: (248) 813-2698


Delphi Legal Information Website:

http://www.delphidocket.com


UNITED STATES BANKRUPTCY COURT

SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

|  |  |  |
|---|---|---|
| In re | : |  |
|  | : | Chapter 11 |
| DELPHI CORPORATION, et al., | : | (Jointly Administered) |
|  | : |  |
| Debtors. | : | Case No. 05-44481 (RDD) |
|  | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEBTORS' OBJECTION TO LEAD PLAINTIFFS' MOTION FOR
## LIMITED MODIFICATION OF AUTOMATIC STAY

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the

"Debtors"), hereby respectfully submit this objection to Lead Plaintiffs' Motion for a

Limited Modification to the Automatic Stay, dated November 15, 2005 (the "Mo-

tion"). In support of this Objection, the Debtors respectfully represent as follows:

### Preliminary Statement

1.     The Teachers' Retirement System of Oklahoma, Public Employ-

ees' Retirement System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H

and Stichting Pensioenfonds ABP, are lead plaintiffs of a putative class (the "Lead

Plaintiffs") in the securities class action entitled In re Delphi Corp. Securities

Litigation, Master File No. 1:05-CV-2637 (NRB)(S.D.N.Y.) (the "Securities Litiga-

tion").[1]

---

[1]    Lead Plaintiffs filed their Consolidated Amended Complaint in the Securities Litigation on
September 30, 2005. It names as defendants, among others, Delphi, John D. Sheehan,
Delphi's Chief Restructuring Officer, and seven of Delphi's current directors: Messrs. Brust,
Bernardes, Opie, Colbert, Farr, Gottschalk, and Irimajiri. On November 18, 2005, Judge
Buchwald, who was then presiding over the Securities Litigation, entered a revised schedul-
ing order calling for the filing of motions to dismiss on or before January 11, 2006. See
Order, In re Delphi Corp. Sec. Lit., Master File No. 1:05-CV-2637 (NRB) (S.D.N.Y. Nov.
18, 2005) (attached hereto under Tab-A). On December 12, 2005, the Judicial Panel on
Multidistrict Litigation ordered that all of the securities cases against Delphi, including the
Securities Litigation theretofore pending before Judge Buchwald, be transferred to the docket
of Hon. Gerald E. Rosen of the United States District Court for the Eastern District of
Michigan for consolidated or coordinated pretrial proceedings. See Order, In re Delphi Corp.
Securities, Derivative & ERISA Litigation, M.D.L. No. 1725 (J.P.M.L. Dec. 12, 2005)
(continued...)

2

2.      On November 30, 2005, Lead Plaintiffs filed the Motion seeking to modify the automatic stay to allow them to obtain (i) copies of all the documents gathered in connection with the internal investigation conducted by the Audit Committee of the Delphi Board of Directors, and (ii) copies of all documents Delphi produced to the government in conjunction with the SEC or FBI's investigations.

3.      The Motion should be denied because Lead Plaintiffs have failed to show sufficient "cause" to modify the automatic stay at this time. The only "cause" for modifying the stay that Lead Plaintiffs have advanced is their claimed need to obtain discovery of the Debtors for purposes of prosecuting the Securities Litigation. That "cause," however, is not one that the law considers valid— at least not now. The Private Securities Litigation Reform Act of 1995 (PSLRA) provides that, in securities class actions, "all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party." 15 U.S.C. § 78u-4(b)(3)(B).  Lead Plaintiffs' Consolidated Amended Complaint in the Securities Litigation is subject to

---

1          (...continued)
           (attached hereto under Tab-B).  The court advised the parties that Judge Rosen would issue a
           notice of a status conference in January 2006, and that counsel should consider the schedul-
           ing order issued by Judge Buchwald as suspended.  The Debtors will file their motion to
           dismiss in accordance with the new schedule that will be set by Judge Rosen at the status
           conference.

upcoming motions to dismiss.[2] Congress has legislatively determined that securities

class-action plaintiffs may not obtain discovery pending a motion to dismiss except

in narrow circumstances and upon specific findings by the District Court hearing

their case. Accordingly, unless and until they obtain permission to proceed with

discovery from the District Court, Lead Plaintiffs have no legitimate cause to seek

modification of the automatic stay here.

    4.    This Court should deny Lead Plaintiffs' motion without

prejudice and require them first to take up the question of discovery of the Debtors

with the District Court supervising the Securities Litigation. If the District Court

finds—after notice to and an opportunity to be heard by all the parties to the

Securities Litigation—that "particularized discovery" of the Debtors "is necessary to

preserve evidence or to prevent undue prejudice" to Lead Plaintiffs, as required by

the PSLRA, then Lead Plaintiffs may return here. If the Debtors do not agree to

participate in that discovery, in light of the facts and circumstances existing at that

time, then Lead Plaintiffs may renew their present application to this Court. They

---

[2]    The PSLRA Stay comes into effect whenever a defendant indicates that a motion to dismiss will be filed—as is the case in the Securities Litigation. See Faulkner v. Verizon Communications, Inc., 156 F. Supp. 2d 384, 402 (S.D.N.Y. 2001) (staying discovery pursuant to PSLRA based upon defendant's representation of intent to file motion to dismiss); Global Intellicom, Inc. v. Thomson Kernaghan & Co., No. 99 Civ 342, 1999 WL 223158 at *1 (S.D.N.Y. April 16, 1999) (noting discovery had been stayed because defendant had indicated that it would be filing motion to dismiss); In re Trump Hotel Shareholder Derivative Litig., No. 96 Civ. 7820, 1997 WL 442135, at *1-2 (S.D.N.Y. Aug. 5, 1997) (holding that stay under PSLRA applied when defendant had represented its intent to file motion to dismiss and delayed filing was on account of schedule that parties agreed to).

may then be able to demonstrate "cause" to modify the stay. It is only then that

Debtors should be called upon to meet their burden of proving that the stay should

remain unmodified. This approach gives effect to the policies underlying the PSLRA,

accords the defendants in the Securities Litigation meaningful notice and an opportu-

nity to be heard regarding Lead Plaintiff's efforts to lift the PSLRA stay, and leaves

the ultimate decision concerning a matter that bears upon the administration of the

Debtors' estates where it belongs–with this Court.

## Argument

5.      The automatic stay imposed by section 362 of the Bankruptcy

Code is one of the most fundamental and significant protections that the Bankruptcy

Code affords a debtor. See Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474

U.S. 494, 503 (1986); see also In re Drexel Burnham Lambert Group Inc., 113 B.R.

830, 837 (Bankr. S.D.N.Y. 1990) ("Automatic stay is key to the collective and

preservative nature of a bankruptcy proceeding."). The automatic stay is designed,

among other things, to give the debtor a breathing spell after the commencement of a

chapter 11 case, to shield debtors from creditor harassment, and to provide them a

refuge from hectoring litigants when their personnel should be focusing on restructur-

ing. See Taylor v. Slick, 178 F.3d 698, 702 (3d Cir. 1999).

5

6.    The automatic stay broadly extends to all matters that may have

an effect on a debtor's estate, enabling bankruptcy courts to ensure that debtors have

the opportunity to rehabilitate and reorganize their business. See Manville Corp. v.

Equity Sec. Holders Comm. (In re Johns-Manville Corp.), 801 F.2d 60, 62-64 (2d

Cir. 1986); see also Fid. Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47,

53 (2d Cir. 1976) ("Such jurisdiction is necessary to exclude any interference by the

acts of others or by proceedings in other courts where such activities or proceedings

tend to hinder the process of reorganization.'") (citation omitted); AP Indus., Inc. v.

SN Phelps & Co. (In re AP Indus., Inc.), 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990)

("The automatic stay prevents creditors from reaching the assets of the debtor's

estate piecemeal and preserves the debtor's estate so that all creditors and their claims

can be assembled in the bankruptcy court for a single organized proceeding.").

7.    In Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax

Indus.), 907 F.2d 1280, 1285 (2d Cir. 1990), the Court of Appeals explained the

burden-shifting regime that applies to a motion to modify the automatic stay:

> The burden of proof on a motion to lift or modify the automatic stay
> is a shifting one. Section 362(d)(1) requires an initial showing of cause
> by the movant, while Section 362(g) places the burden of proof on the
> debtor for all issues other than "the debtor's equity in property," 11
> U.S.C. § 362(g)(1). See 2 Collier on Bankruptcy para. 362.10, at
> 362-76. If the movant fails to make an initial showing of cause, how-
> ever, the court should deny relief without requiring any showing from
> the debtor that it is entitled to continued protection.

6

8.    Because Lead Plaintiffs have failed to make the required thresh-

old showing of a valid "cause" to modify the automatic stay, their motion should be

denied, without requiring any further showing by the Debtors. Even had Lead

Plaintiffs shown a valid cause, however, the pertinent considerations weigh in favor

of preserving the Debtors' continued protection of the automatic stay.

A.    <u>Lead Plaintiffs Have Not Shown Valid Cause To Modify The Automatic
      Stay.</u>

9.    In a tacit concession that they actually have no valid cause, Lead

Plaintiffs' Motion fails expressly to identify the cause they contend warrants

modification of the automatic stay. There is no doubt, however, about the <u>purpose</u>

behind their Motion: they want to obtain documents from the Debtors to use to

prosecute the Securities Litigation. What Lead Plaintiffs have not said—but which is

implicit in their Motion and incontrovertible—is that they want the Debtors'

documents *now* to enable them to resist the motions to dismiss they know are

coming in the Securities Litigation.

10.    Lead Plaintiffs' true purpose can also be seen in other steps they

have taken during this litigation, including, but not limited to, their efforts to obtain

document and deposition discovery purportedly in support of their objections to the

Debtors' application to retain Deloitte & Touche LLP and to the Debtors' KECP

Motion. Lead Plaintiffs have frankly acknowledged that such discovery is intended

to help them "get smart"—as they have said—on their case in the Securities Litiga-

tion.  Lead Plaintiffs' Motion and the other objections filed are clearly a coordinated

attempt to circumvent the mandates of the automatic stay and the PSLRA stay and

specifically tailored to further their interests in the Securities Litigation.  Moreover,

"getting smart" about claims about which they should have had sufficient basis before

they filed them—all in the course of evading the operations of an Act of Congress

designed to crack down on abusive securities class actions—should not be a "cause"

that bankruptcy courts recognize as sufficient for purposes of lifting the automatic

stay imposed by section 362.

        11.    Providing securities plaintiffs with evidence to use in resisting

motions to dismiss their class action complaint is not, however, a valid cause to

modify the automatic stay. In fact, Congress has declared that purpose invalid by

enacting 15 U.S.C. § 78u-4(b)(3)(B), the stay provision of the PSLRA. Congress

passed this law in response to testimony about two related abuses in securities class

action lawsuits. First, Congress heard testimony that "[t]he cost of discovery often

forces innocent parties to settle frivolous securities class actions." H.R. Conf. Rep.

No. 104-369, at 37 (1995), reprinted in 1995 U.S.C.C.A.N. 730, 736. Second,

Congress learned that "plaintiffs sometimes file frivolous lawsuits in order to conduct

discovery in hopes of finding a sustainable claim not alleged in the complaint." S.

8

Rep. No. 104-98, at 14 (1995), reprinted in 1995 U.S.C.C.A.N. 679, 693. The stay

provision in the PSLRA deters these so-called "strike suits" and "fishing expeditions"

by mandating that, aside from certain exceptional circumstances, "discovery . . . be

permitted . . . only after the court has sustained the sufficiency of the complaint." Id.


12.   Without more, a plaintiff's inability to muster facts sufficient to

survive motions to dismiss is not grounds for lifting the stay on discovery imposed

by the PSLRA. See SG Cowen Sec. Corp. v. United States Dist. Court for the N.

Dist. of Cal., 189 F.3d 909, 912-13 (9th Cir. 1999) ("[T]he district court granted

plaintiffs leave to conduct discovery so that they might uncover facts sufficient to

satisfy the Act's pleading requirements. This is not a permissible reason for lifting

the discovery stay under the Act."). See Medhekar v. United States Dist. Court for

the N. Dist. of Cali., 99 F.3d 325, 328 (9th Cir. 1996) ("Congress clearly intended

that complaints in these securities actions should stand or fall based on the actual

knowledge of the plaintiffs rather than information produced by the defendants after

the action has been filed."); In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,

MDL No. 1500, 02 Civ. 5575, at *6 (S.D.N.Y. July 21, 2003) (in denying motion to

lift PSLRA discovery stay, court notes: "Nor can it be assured that plaintiffs will not

attempt to use the discovery materials in opposition to the recently filed motion [to

9

dismiss].") This Court should not, therefore, recognize as "good cause" for modifying

the automatic stay in bankruptcy cases the very same cause that Congress had for

imposing a stay of discovery in securities class-action cases in the first place.

B.    Lead Plaintiffs Should First Obtain Relief From The District Court.

13.    In enacting the stay provision of the PSLRA, Congress also

stipulated the procedure, and standard, that should apply whenever securities class

action plaintiffs seek to obtain discovery pending motions to dismiss.  First, they

must file a "motion" in the District Court, which means that all the parties to the

securities class action receive notice and an opportunity to be heard (in contrast to

Lead Plaintiffs' approach here, under which the other defendants in the Securities

Litigation received neither). Second, plaintiffs' motion must identify the "particular-

ized" discovery that they seek, which means that they cannot simply make a general

request of a party to produce "all documents" relevant to their claims (as Lead

Plaintiffs have done here). Third, they must prove, to the District Court's satisfac-

tion, that the "particularized" discovery is "necessary to preserve evidence or to

prevent undue prejudice" to them (showings that Lead Plaintiffs do not even pretend

to meet here).

14.    Lead Plaintiffs should be required to follow that same procedure

in this case. Before they are heard here, they should first have satisfied the District

Court that the stay of discovery imposed by the PSLRA should be lifted. To do

otherwise would subvert the purpose of the PSLRA and enlist this Court in render-

ing a premature opinion based upon a hypothetical condition that may never come to

pass.

          15.    Relieving Lead Plaintiffs of their obligation to proceed first in

the District Court would also frustrate the purposes of the Bankruptcy Code, for it

would effectively result in surrender of this Court's ultimate authority to make

decisions concerning the administration of the Debtors' estates. Thus, Lead Plaintiffs

say that, once this Court modifies the automatic stay, "[t]he ultimate decision as to

whether the Debtor would be required to produce the requested documents would lie

with Judge Buchwald [now, Judge Rosen], who is presiding over the Securities

Litigation in the District Court." (Motion ¶ 15.)  Lead Plaintiffs have things back-

wards. The predicate decision of whether Lead Plaintiffs for the putative class should

be entitled to ask for discovery of the Debtors lies with the District Court. Under

title 11, the "ultimate decision" with regard to whether they should get that discov-

ery—given the facts and circumstances then existing—resides in this Court.

          16.    In fact, there should be no doubt but that, were this Court to

accede to Lead Plaintiffs' request, this Court's order modifying the automatic stay to

allow Lead Plaintiffs' proposed discovery to proceed will be used effectively to

render the stay of discovery under the PSLRA a dead letter in this case.  Should this

Court grant Lead Plaintiffs' requests here, plaintiffs in the ERISA and derivative

actions against Delphi and its fellow defendants in the Securities Litigation–actions in

which the PSLRA stay may not apply–will request similar relief from this Court.[3]

No principled basis for denying them such relief—while granting it to Lead Plain-

tiffs—is apparent. Lead Plaintiffs will then proceed to the District Court and argue

that this Court's orders bring them within the exception to the stay under the

PSLRA.

17.    Moreover, if this Court grants Lead Plaintiffs their request, one

can easily envision them saying, "Judge Drain has already ruled that there is no

cognizable burden on the Debtors in producing all the documents we have requested,

so no further particularization of our discovery requests need be made. And since

Judge Drain allowed the ERISA and derivative plaintiffs to get the same documents

we want from the Debtors, we will be 'prejudiced' in the prosecution of our cases,

relative to those other plaintiffs, if we don't get them too." Under this approach,

---

[3]        The Debtors reserve their right to argue that the PSLRA stay applies to discovery requests
made in ERISA litigation. See In re AOL Time Warner, Inc. Sec. and "ERISA" Litig.,
2003 WL 22227945, at *2 (S.D.N.Y. Sept. 26, 2003) (held in coordinated securities and
ERISA litigation, it is appropriate to stay discovery on plaintiffs' ERISA claims, given that
providing discovery to counsel for ERISA plaintiffs, who subsequently could share fruits of
their discovery with securities plaintiffs, "would render the PSLRA's stay provision a
nullity").

Lead Plaintiffs will have effectively bootstrapped themselves out of both the

automatic stay and the stay imposed by the PSLRA.[4]

C.    In All Events, The Sonnax Factors Weigh Against Modifying The Stay.

18.    Even assuming that Lead Plaintiffs had advanced a valid cause to

modify the automatic stay, the relevant considerations still weigh in favor of keeping

the stay intact to preclude the discovery of the Debtors in the Securities Litiga-

tion—at least for the time being.

19.    In Sonnax Industries, the Second Circuit sets forth twelve

factors the Court should consider in determining whether to keep the automatic stay

intact and in place:

> (1) whether relief would result in a partial or complete resolution of
> the issues; (2) lack of any connection with or interference with the
> bankruptcy case; (3) whether the other proceeding involves the debtor
> as a fiduciary; (4) whether a specialized tribunal with the necessary
> expertise has been established to hear the cause of action; (5) whether
> the debtor's insurer has assumed full responsibility for defending it;
> (6) whether the action primarily involves third parties; (7) whether

---

[4]    Lead Plaintiffs lay heavy emphasis on Judge Gonzalez's decisions in the Enron and
WorldCom cases. Those cases are readily distinguishable on their facts—including the fact
that guilty pleas by former executives made the securities defendants' motions to dismiss an
outside shot at best. The debtors in Enron and WorldCom also do not appear to have made
the same arguments that the Debtors have advanced here. In any event, Enron and
WorldCom are not binding. See EEOC v. Pan American World Airways, 576 F. Supp.
1530, 1535 (S.D.N.Y. 1984) (district court decisions are not binding even on other district
courts in same district); Daly v. Deptula (In re Carrozzella & Richardson), 255 B.R. 267,
271-272 (Bankr. D. Conn. 2000) (held, decisions of Second Circuit Bankruptcy Appellate
Panel (BAP), while highly persuasive, are not binding precedent for bankruptcy courts in
Second Circuit and judge of bankruptcy court—a unit of the district court—is not bound by
decision of single district court judge).

13

litigation in another forum would prejudice the interests of other
creditors; (8) whether the judgment claim arising from the other action
is subject to equitable subordination; (9) whether movant's success in
the other proceeding would result in a judicial lien avoidable by the
debtor; (10) the interests of judicial economy and the expeditious and
economical resolution of litigation; (11) whether the parties are ready
for trial in the other proceeding; and (12) impact of the stay on the
parties and the balance of harms.

In re Sonnax Indus., 907 F.2d at 1286. All twelve factors will not be relevant in every

case, Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999), nor must

the Court afford equal weight to each of the twelve factors.  See Burger Boys, Inc. v.

S. St. Seaport Ltd. P'ship (In re Burger Boys, Inc.), 183 B.R. 682, 688 (S.D.N.Y.

1994). Several of the twelve factors are relevant in this case and, as described below,

all weigh heavily in favor of denying the Motion.

        20.    Chief among the relevant considerations are "the interests of

judicial economy and the expeditious and economical resolution of litigation." This

Court simply should not engage in making decisions about modification of the

automatic stay unless and until the antecedent question of Lead Plaintiffs' entitlement

to obtain discovery from the Debtors is decided by the District Court. If the District

Court denies Lead Plaintiffs' request, then this Court will not have to resolve

anything. If Lead Plaintiffs' Consolidated Amended Complaint fails to withstand

motions to dismiss, this Court will not have to modify the stay. In those circum-

stances, not only will the Court's and the litigants' resources be conserved, but the

14

Debtors will not be put to the immense burden of producing a massive amount of documents.[5]

21.    Modification of the stay as requested by Lead Plaintiffs will not result in even a partial resolution of the Securities Litigation. If anything, it may protract the litigation as Lead Plaintiffs attempt to use the Debtors' documents to fashion a complaint that otherwise should be dismissed. In all events, even if this Court modifies the automatic stay now, Lead Plaintiffs will still have to seek permission from Judge Rosen to lift the PSLRA Stay.

22.    Forcing the Debtors, their management, and their counsel to focus now on the nascent Securities Litigation at this stage of these chapter 11 cases will also interfere with the Debtors' attention to more immediate matters, including their negotiations with their unions and the development and implementation of a plan to realign Delphi's global product portfolio and manufacturing footprint to preserve the Debtors' core businesses. The Debtors need to focus on these immediate

---

[5]    Lead Plaintiffs are incorrect that their discovery demands will impose only a trivial burden on the Debtors. All the documents within the categories that they seek will need to be reviewed again not only for privilege, but also to determine whether they contain confidential business information that should be subject to limiting protective orders. Moreover, providing copies of all the documents gathered in connection with the internal investigation conducted by the Audit Committee of the Delphi Board of Directors would be a massive undertaking that would be incredibly burdensome, involving the review of hundreds of thousands of pages, many of which may not be at all relevant. Nevertheless, to the extent this Court determines that an analysis of burden is critical to its adjudication of this matter, the Debtors reserve their right to supplement this objection and to provide evidence in support of the Debtors' burden of producing the requested documents.

significant tasks and develop a comprehensive restructuring plan for their business

and the several hundred thousand creditors and parties-in-interest in these cases. The

Debtors have a lot of work to do and, absent extraordinary circumstances which have

not been shown, they should not be required to spend the time and money entailed in

dealing with Lead Plaintiffs' discovery demands. See In re Pioneer Commercial

Funding Corp., 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990). It is, in a word, premature

for the Court to consider modification of the stay with respect to the Securities

Litigation at this time.

23.    The Debtors are parties to a multitude of proceedings in

numerous federal and state courts throughout the country. If the stay is lifted for

Lead Plaintiffs at this early stage of these chapter 11 cases, the inevitable result will

be numerous motions by other parties seeking to obtain relief from the automatic

stay, further diverting the Debtors' resources from their reorganization efforts. See,

e.g., LTV Steel Co. v. Bd. Of Education (In re Chateaugay Corp.), 93 B.R. 26, 30

(S.D.N.Y. 1988) (noting that the automatic stay is intended to prevent a "chaotic and

uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceed-

ings in different courts"). Moreover, if Lead Plaintiffs survive motions to dismiss the

Securities Litigation, they will doubtless be back before this Court seeking further

relief from the stay to obtain additional discovery.

16

24.    The parties in the Securities Litigation are nowhere close to being ready for trial. The Securities Litigation was filed approximately nine months ago. Lead Plaintiffs must first survive motions to dismiss before the Securities Litigation can continue. All of the securities cases against Delphi, including the Securities Litigation, were recently transferred to Judge Rosen to be coordinated or consolidated as the court deems appropriate. The putative class has not been certified – in fact, Lead Plaintiffs have not yet filed a motion for class certification. It is obvious that the Securities Litigation is in its infancy and there will be no prejudice in continuing the automatic stay in effect until Judge Rosen has ruled on all motions to dismiss. See Provincetown Boston Airline, Inc. v. Miller, 52 B.R. 620, 624 (Bankr. M.D. Fla. 1985) (denying request to lift automatic stay early in bankruptcy case when discovery had not started in class action at issue).

25.    The balance of the harms weighs squarely in favor of continuing the automatic stay intact. The Motion was filed only 38 days after, and will be heard by this Court less than 90 days after, the commencement of these cases. The Debtors are currently in the critical process of stabilizing their business and addressing the myriad of issues that normally occur at the beginning of a chapter 11 case. The relief requested herein is premature and will serve only to distract the Debtors from the reorganization process. The Securities Litigation, on the other hand, is currently

17

stayed, where discovery will remain stayed until the District Court rules otherwise or the final motions to dismiss are denied. Maintenance of the automatic stay will in no way prejudice Lead Plaintiffs by denying them discovery to which they would not otherwise be entitled.

Notice

26.    Notice of this Objection has been provided in accordance with the Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And Administrative Procedures, and (III) Scheduling An Initial Case Conference In Accordance With Local Bankr. R. 1007-2(e), entered by this Court on October 14, 2005 (Docket No. 245). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

27.    Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

18

<u>Conclusion</u>

WHEREFORE the Debtors respectfully request that the Court enter

an order (i) denying the Motion and (ii) granting such other relief as is just.

Dated:     New York, New York
           December 29, 2005


                    SKADDEN, ARPS, SLATE, MEAGHER
                    & FLOM LLP

               By: s/ John Wm. Butler, Jr.
                    John Wm. Butler, Jr. (JB 4711)
                    David E. Springer (DS 9331)
                    John K. Lyons (JL 4951)
                    Ron E. Meisler (RM 3026)
                   333 West Wacker Drive, Suite 2100
                   Chicago, Illinois 60606
                   (312) 407-0700

                              - and -

               By: s/ Kayalyn A. Marafioti
                    Kayalyn A. Marafioti (KM 9632)
                    Thomas J. Matz (TM 5986)
                   Four Times Square
                   New York, New York 10036
                   (212) 735-3000

                   Attorneys for Delphi Corporation, et al.,
                    Debtors and Debtors-in-Possession


                              19