**Hearing Date: January 5, 2006**
        **Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
    In re                          :    Chapter 11
                                    :
DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                                    :
                                    :    (Jointly Administered)
                Debtors.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## DEBTORS' OMNIBUS OBJECTION TO MOTIONS
## SEEKING RELIEF FROM AUTOMATIC STAY

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this omnibus objection (the "Objection") to the motions[1] for relief from the automatic stay. In support of this Objection, the Debtors respectfully represent as follows:

### Preliminary Statement

1. The Motions should be denied because neither Cox nor Clark (the "Claimants") has shown adequate cause for relief from the automatic stay to continue their respective personal injury litigation against Delphi, among other defendants. Both Claimants allege that they do not believe that the continuation of litigation will affect the Debtors or their estates. Neither Claimant, however, has provided evidence or case law in support of its respective position.

2. The Motions should also be denied because at this early stage of these highly complex chapter 11 cases, there is simply no plausible argument why the Debtors should be forced to divert their attention from the immense task at hand--steering these Debtors through the critical launch of the cases--to defend against prepetition personal injury litigation brought by the Claimants against certain of the Debtors. It is precisely this type of costly distraction that Congress intended to neutralize through the automatic stay. Forcing the Debtors to divert their attention from critical operational tasks

---

[1] The motion of (a) John C. Cox (the "Cox Motion") can be found at Docket No. 1563 and (b) Charles Clark (the "Clark Motion") can be found at Docket No. 1625 (collectively, the "Motions").

to defending prepetition creditors' unsecured claims at this stage of the Debtors' cases violates the very precept of the chapter 11 process: equality of treatment and distribution.

3.      The Debtors have only recently commenced a restructuring effort that they anticipate will take approximately 18 months to complete. The complexity of the issues that the Debtors face in stabilizing their businesses and attempting to restructure their affairs is magnified by the size of these cases. The Debtors are currently in the process of reviewing thousands of contracts that are expiring in the near term, many of which are necessary to the continued supply of product to the Debtors customers. The Debtors are also currently in the midst of negotiations with their unions to address numerous issues regarding increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations.

4.      The Debtors need to focus on these significant tasks and develop a comprehensive restructuring plan for their businesses that will benefit the several hundred thousand creditors in these cases. The Debtors simply cannot, and should not, be forced to litigate prepetition claims with the Claimants at this stage of the Debtors' cases.

5.      The Debtors are also currently renewing their insurance coverage and intend to develop procedures in the first half of 2006, in consultation with the Creditors' Committee, that will allow for an orderly process to address matters such as those underlying the Motions.

6.      As more fully discussed below, cause to lift the automatic stay for either Claimant does not exist simply because another party may be responsible for paying

3

the Debtors' liability. Ultimately, the Debtors likely retain the duty to defend and this in and of itself will cause an unnecessary distraction and expense at this time. Consequently, the Debtors should not be forced, at the early stages of these chapter 11 cases, to focus on litigation with these unsecured creditors. The automatic stay should remain in place, and the Motions should be denied.

7.  Finally, as discussed below, the Clark Motion should be denied because it was not served in accordance with this Court's order establishing omnibus hearing dates and certain notice, case management, and administrative procedures (the "Case Management Order").

Argument

8.  The automatic stay imposed by section 362 of the Bankruptcy Code is one of the most fundamental and significant protections that the Bankruptcy Code affords a debtor. Midlantic Nat'l Bank v. N.J. Dep't of Envt'l. Prot., 474 U.S. 494, 503 (1986); see also In re Drexel Burnham Lambert Group Inc., 113 B.R. 830, 837 (Bankr. S.D.N.Y. 1990) ("[A]utomatic stay is key to the collective and preservative nature of a bankruptcy proceeding."). The automatic stay is designed to, among other things, give the debtor a "breathing spell" after the commencement of a chapter 11 case, shielding debtors from creditor harassment and a multitude of litigation in a variety of forums at a time when the debtor's personnel should be focusing on restructuring. See Taylor v. Slick, 178 F.3d 698, 702 (3d Cir. 1999), cert. denied, 528 U.S. 1079 (2000).

9.  The automatic stay broadly extends to all matters which may have an effect on a debtor's estate, enabling bankruptcy courts to ensure that debtors have the

opportunity to rehabilitate and reorganize their operation.  See Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.), 801 F.2d 60, 62-64 (2d Cir. 1986); see also Fid. Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 53 (2d Cir. 1976) ("Such jurisdiction is necessary 'to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization.'") (citation omitted); AP Indus. Inc. v. SN Phelps & Co. (In re AP Indus., Inc.), 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990) ("The automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding.").

    10.  Section 362(d)(1) of the Bankruptcy Code provides that the court may grant relief from the automatic stay "for cause."  In the early stages of the chapter 11 case, while debtors still retain the exclusive right to formulate a plan of reorganization, "an unsecured, unliquidated claim holder should not be permitted to pursue litigation against the debtor in another court unless extraordinary circumstances are shown."  See In re Pioneer Commercial Funding Corp., 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).  As more fully described below, the Claimants have failed in showing sufficient, extraordinary cause to obtain relief from the automatic stay at this stage of the Debtors' cases.

    11.  The lifting of the stay is committed to the sound discretion of the Court.  In re Sonnax Indus., 907 F.2d 1280, 1288 (2d Cir. 1990).  Because of the unstructured nature of the issues that are often contemplated in lift stay proceedings, certain courts, including the Second Circuit, have used a list of twelve factors when

5

determining whether cause exists to modify or lift the automatic stay. The Second Circuit in Sonnax set forth the list of twelve factors that may be considered when deciding whether the stay should be lifted to allow litigation against a Debtor to continue in another forum:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

In re Sonnax Indus., 907 F.2d at 1286. See also In re Curtis, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984). All twelve factors will not be relevant in every case, Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999), nor must the Court afford equal weight to each of the twelve factors. See Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship (In re Burger Boys, Inc.), 183 B.R. 682, 688 (S.D.N.Y. 1994).

        12. As demonstrated below, the Claimants have not, and indeed cannot, carry the burden of establishing that sufficient cause exists to lift the automatic stay. "If the movants fail to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., 907 F. 2d at 1285; see also In re Metro Transp. Co., 82 B.R. 351, 353 (Bankr. E.D. Pa. 1988) (noting unsecured creditors face difficult task of producing

6

evidence to establish balance of hardships tips in their favor to obtain stay relief).
Accordingly, the Motions should be denied.

I. **The Competing Interests Of The Debtors Greatly Outweigh Claimants' Interest**

   A. **The Balance Of Harms Weighs In The Favor Of The Debtors**

   13. The Debtors and their estates would be prejudiced if the automatic stay were modified to permit either of the Claimants' litigations to proceed at this point in these chapter 11 cases. As noted above, the Debtors are currently faced with numerous critical operational issues. Distractions in responding to discovery requests and defending prepetition litigation brought by two unsecured creditors will force the Debtors to divert their attention from these critical matters. Moreover, allowing these two plaintiffs to go forward will undoubtedly open the floodgates for others to come forward for similar relief. Accordingly, the automatic stay should not be modified to permit the Claimants' litigation claims to continue at this time.

   14. The Debtors would suffer significant prejudice if either of the Motions were granted because of the distraction to and interference with the Debtors' reorganization efforts that would flow from allowing the litigation and discovery requests to proceed at this early stage of these chapter 11 cases. In re U.S. Brass Corp., 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994) ("When balancing the hardships in lifting the stay, the most important factor is the effect of such litigation on the administration of the estate; even slight interference with the administration may be enough to preclude relief.") (citing In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984)).

15.     Cox proposes that the stay should be lifted so that he can proceed against, and collect proceeds from, any insurance policies that might be applicable. Cox's proposal is an attractive solution to the Motion, and one that the Debtors may consider for all similarly-situated plaintiffs. The Debtors, however, must make sure that the opportunity for personal injury plaintiffs to proceed against the Debtors' insurers can be accomplished without interfering with the restructuring and without prejudicing any rights of any party-in-interest, including the Debtors' insurers. Because at this stage of the Debtors' cases the interference with the Debtors' restructuring likely will be significant, the Cox Motion should be denied.

16.     Clark alleges that his employer is contractually bound to hold the Debtors harmless. Clark's employer has not volunteered to take over the defense and accept responsibility for any liability attributed to the Debtors. Thus, the Debtors would be legally bound to defend and litigate Clark's claim. At this time, therefore, Clark's claim is similarly situated to Cox's claim because the Debtors may have insurance that covers Clark's claim. For the reasons stated above with regard to Cox's claim, the Clark Motion should be denied.

17.     In addition, the Debtors believe that the trial stage is not impending for either of the actions underlying the Motions. Delphi was added as a defendant to the action underlying the Cox Motion in April 2005. The action underlying the Clark Motion was commenced in April 2005, and Delphi was not added as a defendant until July 2005. Bankruptcy Courts have modified the stay to allow litigation to proceed in another forum if that litigation was at a very advanced stage and trial was imminent. <u>See</u> <u>In re Fernstrom</u>

8

Storage & Van Co., 938 F.2d 731, 737 (7th Cir. 1991) (finding that "where the stayed non-bankruptcy litigation has reached an advanced stage, courts have shown a willingness to lift the stay to allow the litigation to proceed"). Here, it does not appear that the Claimants will suffer any undue prejudice caused by the automatic stay because the Claimants were not on the eve of trial when the Debtors commenced their cases.

18.     In stark contrast to the substantial prejudice that the Debtors would suffer, the Claimants cannot show (and have not argued) that they would be prejudiced if the Motions were denied. The status quo will remain in place for both Claimants, and they will not be prejudiced by the delay. The Claimants will face only the ordinary delay that all creditors face in complex chapter 11 cases. Creditor delay is inherent in the bankruptcy process, and is an unavoidable--and intended--consequence of the automatic stay.

B.     Potential Insurance/Indemnification Coverage
       Does Not Constitute Cause Under 11 U.S.C. § 362

19.     As discussed above, the Claimants argue that because the Debtors are potentially insured or indemnified, relief from the stay should be granted. Although the Sonnax factors include "whether the debtor's insurer has assumed full responsibility for defending it," 907 F.2d at 1286, this factor is not easily applied or analyzed in the Debtors' cases. The fact that the Debtors may be insured or indemnified is not sufficient cause for relief from the automatic stay. A claim under the Debtors' insurance policy will almost certainly result in a claim that will result in the diminution of the Debtors' estates.

20.     Furthermore, simply because the Debtors may have insurance coverage the Debtors are not necessarily relieved of the obligation to participate in the defense of the action. Additionally, there is no guarantee at this time that any third parties

would honor, absent additional litigation, any indemnification provisions applicable to these claims.  Consequently, the Debtors, their management, and the Debtors' in-house legal staff would need to devote significant time and resources to analysis of insurance and indemnification issues, in addition to defending against the litigation.  Clearly, the purpose of the automatic stay is to allow the Debtors breathing space to avoid spending the Debtors and the estates time and resources on such activities.  See, e.g., In re U.S. Brass Corp., 173 B.R. 1000 (Bankr. E.D. Tex. 1994) (finding debtor would be prejudiced and denying motion to lift stay, reasoning that debtor's insurance coverage was in dispute and "even claims against Debtors' insurance impacts upon property of the estate and Debtor must expend its resources to some degree to defend even claims which are ultimately totally covered for payment by insurance.") (citing In re Metro Transp. Co., 82 B.R. 351, 354 (Bankr. E.D. Pa. 1988)).

        21.       Indeed, as this Court is aware, the Debtors are currently renewing their insurance coverage.  See Motion For Order Under 11 U.S.C. Sections 362, 363, 365, 1107, and 1108 Authorizing Renewal of Insurance Coverage and Certain Related Relief (Docket No. 1559).  To address Claimants that are similarly situated, including Cox and Clark, the Debtors, in consultation with the Creditors' Committee, intend to develop procedures in the first half of 2006 that will allow for an orderly process to address matters such as those underlying the Motions and provide for a mechanism that will allow them to go forward.

      C.    Relief From The Stay Will Interfere With The Debtors' Cases And
Will Not Allow For An Economical Resolution To The Litigation

      22.    As discussed above, the Debtors will be prejudiced if the stay is lifted and the Claimants are allowed to continue with litigation at this early stage of the Debtors' cases. The Debtors are parties to hundreds of lawsuits in state and federal courts across the country. Lifting the automatic stay for either of these Claimants presumably would encourage other parties with litigation claims against the Debtors to seek similar relief, forcing the Debtors to defend against numerous motions to modify the automatic stay. This result would be contrary to the fundamental principals set forth by Congress as a basis for the automatic stay. See, e.g., LTV Steel Co. v. Bd. Of Educ. (In re Chateaugay Corp.), 93 B.R. 26, 30 (S.D.N.Y. 1988) (noting that automatic stay is intended to prevent "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts"); Midlantic Nat'l Bank, 474 U.S. at 503; In re Drexel Burnham Lambert Group, Inc., 113 B.R. at 837.

II.    The Fundamental Purpose Of The Automatic Stay
Would Be Violated If The Stay Were Modified

      23.    The fundamental purpose of the stay imposed by section 362(a)(i) of the Bankruptcy Code is to provide a debtor with a breathing spell, by giving the debtor the time and an opportunity "to attempt a repayment or reorganization plan." Borman v. Raymark Indus., 946 F.2d 1031, 1033 (3d Cir. 1991) (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977)). Section 362(a)(i), therefore, stays pending prepetition litigation to "forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it," and "avoid interference with the . . . rehabilitation of the debtor."

11

Borman, 946 F.2d at 1036 (quoting Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982)).

24.     The Motions were filed within three months of the commencement of these cases, and the Claimants seek to force the Debtors to proceed with potentially time-consuming and costly litigation.  The Debtors' management and in-house legal team, in particular, are already taxed with the responsibility of managing and responding to inquiries from the Debtors' employees and thousands of creditors, vendors, and other parties-in-interest regarding these chapter 11 cases.  Modification of the automatic stay at this early stage would force the Debtors to divert their attention from the critical issues that require all of their time and energy in the early stages of these chapter 11 cases.

III.    The Clark Motion Was Procedurally Deficient
        Under This Court's Case Management Order

25.     The Clark Motion should be denied on procedural grounds as well. The Clark Motion was not served in accordance with the Case Management Order.  Aside from serving the Debtors, Clark failed to serve his Motion on parties on the Master Service List (as defined in the Case Management Order) including the Creditors' Committee and also failed to provide notice to the 2002 List Parties (as defined in the Case Management Order).  The Debtors have attempted to contact Clark regarding this deficiency, but were unable to do so before the filing of this Objection.  On the grounds of deficiency of service alone, the Clark Motion should be denied.

Conclusion

26.     For the reasons set forth above, the Motions should be denied.  A balancing of the competing interests of the Debtors and the Claimants demonstrates that

the automatic stay should not be modified to permit the Claimants to proceed at this early stage of these chapter 11 cases.

## Notice

27.     Notice of this Objection has been provided in accordance with the Case Management Order.  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

28.     Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) denying the Motions and (ii) granting such other and further relief as is just.

Dated: New York, New York
       December 29, 2005

                            SKADDEN, ARPS, SLATE, MEAGHER
                               & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession