| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: January 5, 2006<br>Hearing Time: 10:00 a.m. |

------------------------------------------------------
In re:                                               :     Chapter 11
                                                     :
DELPHI CORP., *et al.*,                              :     Case No. 05 B 44481 (RDD)
                                                     :
                                    Debtors.         :     (Jointly Administered)
------------------------------------------------------x

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF LAW DEBENTURE
TRUST COMPANY OF NEW YORK REQUESTING AN ORDER TO CHANGE THE
MEMBERSHIP OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

## I.  INTRODUCTION

Deirdre A. Martini, the United States Trustee for the Southern District of New York (the "United States Trustee"), hereby objects (the "Objection") to the Motion of Law Debenture Trust Company of New York (the "Law Debenture" or the "Movants") Requesting An Order To Change The Membership Of The Official Committee of Unsecured Creditors (the "Motion") on the following grounds:

(1)  The reconstitution of the Official Committee of Unsecured Creditors (the "Committee") is not warranted because the United States Trustee properly exercised her discretion in declining to reconstitute the Committee; and

(2)  The reconstitution of the Committee is not warranted because the United States Trustee's formation of the Committee was not arbitrary or capricious; moreover, the Subordinated Bondholders are adequately represented on the Committee.

- 1 -

## II.  FACTS

**A.  The Debtors**

1.      On October 8, 2005, Delphi Corporation, et al. ("Delphi" or the "Debtor") filed their chapter 11 cases.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of Bankruptcy Code.

2.      Delphi is a large public company with global operations in more than 40 countries in the Americas, Asia and Europe and more than 180,000 employees.  Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest pubic company business reorganization in terms of assets.  Delphi's foreign subsidiaries are not chapter 11 debtors.  Delphi is one of the largest, if not the single largest, global supplier of vehicle electronics, transportation components, integrated systems and modules and other electronic technology.  Delphi supplies products to nearly every major global automotive original equipment manufacturer.  Delphi's former parent is General Motors Corporation ("GM").  Effective January 1, 1999, the assets and liabilities of various divisions and subsidiaries of GM were transferred to Delphi.

3.      The factors that precipitated the Debtor's chapter 11 filing were summarized in the Debtor's "Motion for an Order Under 11 U.S.C. §§ 105 and 363 Authorizing the Debtor to Implement A Key Employee Compensation Program" (ECF Doc. No. 213), which states, in pertinent part, that

> [i]n the first two years following Delphi's separation from GM, [ ] [Delphi] generated more than $2 billion in net income.  Every year thereafter, however, with the exception of 2002, [ ] [Delphi] suffered losses.  In calendar year 2004, [ ] [Delphi] reported a net operating loss of $482 million on $28 billion in net sales.  Reflective of a downturn in the marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005. [ ] [Delphi] experienced net operating losses of $608 million for the first six months of calendar year 2005 on

>   six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same period in calendar year 2004. (footnote omitted).
>
>   The Debtors believe that three significant issues have largely contributed to the deterioration of the Company's financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.
>
>   In light of these factors, [ ] [Delphi] determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues and forward looking revenue requirements. Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtor['s] issues on a timely basis, [ ] [Delphi] determined to commence these cases for its U.S. businesses to complete the Debtor['s] transformation plan and preserve value.

ECF Doc. No. 213 @ 5, ¶¶ 10-12.

These objectives will require Delphi to divest, consolidate or wind-down a substantial segment of its United States business operations.

4.    On October 13, 2005, the Court entered an Order Under 11 U.S.C. § 521(l) and Rules 1007 and 9006(b) of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr.P.") granting an extension of time to the Debtor until January 22, 2006 to file schedules and statements. See ECF Doc. No. 223.

### B. Formation of the Official Committee of Unsecured Creditors

5.    In large or complex bankruptcy cases, the United States Trustee generally convenes an organizational meeting (the "Organizational Meeting") of the Debtor's largest unsecured creditors to form an official committee of unsecured creditors. In this case, the United States Trustee scheduled an Organization Meeting for October 17, 2005 at 11:00 a.m. at the

- 3 -

Marriott Marquis New York. On October 8, 2005, the United States Trustee posted the Notice of Organizational Meeting for Unsecured Creditors (the "Notice") on the Bankruptcy Court's electronic filing system (Docket, ECF No. 37) and caused the Notice to be served, through the Debtor's noticing agent, on the Debtor's top one hundred unsecured creditors. Included with the Notice was a questionnaire (the "Questionnaire") asking each creditor to provide, among other information, (a) the creditor's identity (b) the amount of unsecured claims; (c) the nature of the claim; and (d) any insider status of the creditor.

6. Prior to the Organizational Meeting, over 100 creditors submitted Questionnaires to the United States Trustee indicating an interest in serving on the Committee. Over 80 creditors attended the Organizational Meeting along with an even larger number of professionals attending who were seeking employment by the Committee. Patrick J. Healty, Vice President of Law Debenture, also was in attendance at the Organizational Meeting.

7. At the Organizational Meeting, the United States Trustee gave a brief introduction to the attendees and set forth the procedures for appointing the Committee. The United States Trustee advised the attendees of the fiduciary responsibilities of a committee and its committee members. Thereafter, a panel of representatives of the Debtor, including Delphi's CEO, Mr. Steve Miller, and their counsel, Jack Butler, Esq., gave presentations of the Debtor's goals in chapter 11. All creditors were given the opportunity to ask questions of the Debtor and the United States Trustee.

8. After the presentations, the United States Trustee and her staff adjourned to a private room to continue deliberations which had begun upon receipt of the Questionnaires. During the recess, the United States Trustee and her staff met with certain creditors and their counsel for the purpose of, among other things, clarifying information contained in creditor

committee acceptance forms submitted by such creditors which appeared to conflict with information supplied by the Debtor.

   9.  Following the deliberations and a review of all available information, the United States Trustee formed the seven-member Committee which consists of: 4 trade creditors, a union, an indenture trustee and an institutional investor. Following the Organizational Meeting, the United States Trustee again reminded the Committee members of their duty to act as fiduciaries. Each of the Committee members acknowledged their duty to act as fiduciaries and no one resigned based upon their unwillingness to serve in such capacity. In making her decision, the United States Trustee considered financial information filed with the Court, information obtained in meetings with the Debtor and various creditors, and information that came to light during the Organizational Meeting.

   10.  As evidenced by the Notice of Appointment of Creditors Committee filed by the United States Trustee on October 20, 2005, ( ECF Doc. No. 469), the United States Trustee appointed the following seven creditors to the Committee:

  (i) Electronic Data Systems, Corp., a trade creditor
  (ii) General Electric Company, a trade creditor
  (iii) Flextronics International Asia-Pacific, Ltd., a trade creditor
  (iv) Freescale Semiconductor, Inc., a trade creditor
  (v) IUE-CWA, a labor union representative
  (vi) Wilmington Trust Company, the Indenture Trustee for the Senior Notes
  (vii) Capital Research and Management Company ("Cap Re"), an institutional investor.

**C. Requests for Additional Committees or Reconstitution of the Committee**

   11.  The United States Trustee received four letters from various creditors, including the Movant, regarding the composition of the Committee in this case, that are annexed to the

Motion as Exhibits E and F and which are incorporated herein by reference.[1] On November 2, 2005 (the "November 2nd United States Trustee Letter") , the United States Trustee forwarded the letters to counsel to the Debtor and to counsel to the Committee inviting them to submit written comments to each creditor request on or before November 15, 2005. By letter dated November 15, 2005 (the "November 15th Latham Letter"), a copy of which is annexed to the Motion as Exhibit G and incorporated herein by referenced, counsel to the Committee submitted a written response to each of the creditors' letters. On November 22, 2005, Law Debenture sent a rebuttal letter to counsel to the Committee (the "November 22nd Law Debenture Letter"), a copy of which is annexed to the Motion as Exhibit I and incorporated herein by reference.

12. Between November 14th and December 2nd, Counsel to the Debtor requested additional time to respond to the November 2nd United States Trustee Letter and the United States Trustee responded accordingly. On November 29, 2005 (the "November 29th Law Debenture Letter"), the United States Trustee received a follow up letter reiterating its request for a response from the United States Trustee regarding the October 25th Law Debenture Letter and the November 22nd Law Debenture Letter. A copy of the November 29th Law Debenture Letter is annexed to the Motion as Exhibit K and incorporated herein by reference.

13. On December 2nd (the "December 2nd Skadden Letter") the United States Trustee received a response from Debtor's counsel to the November 2nd United States Trustee Letter. A

---

[1] (1) Letter, dated October 19, 2005, from Richard J. Siminski, Vice President, General Counsel and Secretary of Tyco Electronics ("Tyco"); (2) Letter, dated October 20, 2005, from Bruce H. Simon, of Cohen Weiss & Simon LLP, on behalf of the UAW ("UAW"); (3) Letter, dated October 21, 2005, from Jeffrey B. Cohen, Chief Counsel of the Pension Benefit Guaranty Corporation ("PBGC"); and (4) Letter, dated October 25, 2005 (the "October 25th Law Debenture Letter"), from Robert J. Stark, of Brown Rudnick, on behalf of Law Debenture Trust Company, as Indenture Trustee.

copy of the December 2nd Skadden Letter is annexed to the Motion as Exhibit K and incorporated herein by reference.  On December 5, 2005, Law Debenture sent a rebuttal letter to counsel to the Committee (the "December 5th Law Debenture Letter"), a copy of which is annexed to the Motion as Exhibit I and incorporated herein by reference.  In a follow up letter to the United States Trustee dated December 12, 2005 (the "December 12th Law Debenture Letter") a copy of which is annexed to the Motion as Exhibit M and incorporated herein by reference, Law Debenture reiterated its request to be added as a member to the Committee.

14.    By Letter dated December 14, 2005 (the "December 14th United States Trustee Letter"), the Office of the United States Trustee informed Tyco, UAW, PBGC that the United States Trustee had decided not to reconstitute the Committee to add them as creditors and also advised Law Debenture that the United States Trustee's decision regarding their October 25th Letter was under advisement.  By letter dated December 19, 2005 (the "December 19th Wachtell Letter"), the United States Trustee received the attached correspondence from Richard Mason, Esq., of Wachtell Lipton Rosen & Katz, counsel to Cap Re, clarifying that "Law Debenture [in its December 12th Letter] incorrectly allege[d] that Cap Re has sold (or is in the process of selling) its interests in the Delphi Subordinated Notes and that, accordingly, the Committee no longer will have any members who are Subordinated Noteholders."  A copy of the December 19th Wachtell Letter is annexed hereto as Exhibit A.

15.    On December 22, 2005, Law Debenture filed the instant Motion (ECF Doc. No. 1607) and on December 27, 2005 filed a supplement to the Motion (the "Supplement"). (ECF Doc. No. 1626).

- 7 -

### III. ARGUMENT

**A.    The United States Trustee Properly Exercised Her Discretion In Declining To Reconstitute The Committee**.

16.    As this case was filed on October 8, 2005, this matter is governed by section 1102(a)(1) of the Bankruptcy Code, rather than the BAPCPA. A review of the plain language of 11 U.S.C. § 1102, as well as the legislative history of that section, clearly indicates that the United States Trustee is entrusted with the appointment of committees and that the composition of any committees so appointed is fully within the discretion of the United States Trustee. Such discretion is not subject to review by the Court.

17.    Prior to 1986, 11 U.S.C. § 1102 of the Bankruptcy Code provided that the Court could appoint committees under 11 U.S.C. § 1102(a) and could change the composition of any such committee upon motion by a party in interest pursuant to 11 U.S.C. § 1102(c). Prior to 1986, 11 U.S.C. § 1102(c) stated clearly that

> [o]n request of a party in interest and after notice and a hearing, the court may change the membership or the size of a committee appointed under subsection (a) of this section if the membership of such committee is not representative of the different kinds of claims or interests to be represented.

11 U.S.C. § 1102(c)(1988). Thus, prior to 1986, the bankruptcy courts had the authority to make changes in membership and or size of any committee appointed under 11 U.S.C. § 1102.

18.    In 1986, the Bankruptcy Code was substantially amended by Congress to, <u>inter alia</u>, expand the United States Trustee program nationwide. In providing for the specific responsibilities of the United States Trustee, Congress made significant amendments to 11 U.S.C. § 1102. First, Congress amended 11 U.S.C. § 1102(a) to provide that the United States Trustee, rather than the Court, would be responsible for appointing committees. Additionally, Congress completely deleted 11 U.S.C. § 1102(c), thereby eliminating the power of the Court to

change the size and composition of committees appointed by the United States Trustee. In re Wheeler Technology, Inc., 139 B.R. 235, 239 (9th Cir. B.A.P. 1992); In re Drexel Burnham Lambert Group, Inc., 118 B.R. 209, 210-211 (Bankr. S.D.N.Y. 1990); In re Hills Stores Co., 137 B.R. 4, 8 (Bankr. S.D.N.Y. 1992); In re Victory Markets, Inc., 196 B.R. 1, 4 (Bankr. N.D.N.Y. 1995), appeal dismissed, 195 B.R. 9 (N.D.N.Y. 1996); Matter of Gates Engineering Co., 104 B.R. 653, 654 (Bankr. D. Del. 1989). Section 1102 of the Bankruptcy Code provides that

> as soon as practicable after the order for relief under chapter 11 of this title, the United States Trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or equity security holders as the United States Trustee deems appropriate.

11 U.S.C. § 1102(a)(1995). Section 1102(a)(2) of the Bankruptcy Code provides that the Court may order that additional committees be appointed after notice and hearing "if necessary to assure adequate representation of creditors." This power to order the appointment of additional committees is the court's sole remedy under the Bankruptcy Code for addressing claims of inadequate representation. In re Drexel Burnham Lambert Group, Inc., 118 B.R. 209, 211 (Bankr. S.D.N.Y. 1990). However, if the Court decides that an additional committee is indeed necessary in any particular case, the United States Trustee is still given the sole authority to appoint the committee. See 11 U.S.C. § 1102(a)(2)(1995) ("[t]he United States trustee shall appoint any such committee"); see also In re Dow Corning Corp., 212 BR 258, 264 (E.D. Mich. 1997))(holding that the United States Trustee has been given sole authority to appoint members of the various committees, the District Court reversed the Bankruptcy Court's decision directing the United States Trustee to appoint new members to the Tort Claimants' Committee); In re Hills Stores Co., 137 B.R. at 8.

19.     The Southern District of New York has concluded in a majority of cases

addressing this issue, that in light of the 1986 amendments to section 1102, the bankruptcy courts have no authority to change the membership of creditor committees. See In re Drexel Burnham Lambert, 118 B.R. at 210 (neither section 1102 nor section 105(a) authorize court to direct the United States Trustee to appoint a creditor to a committee); In re Hills Stores Co., 137 B.R. 4, 8 (Bankr. S.D.N.Y. 1992)("Courts may not direct a United States Trustee to investigate the qualifications of committee members nor may a court order the appointment of a creditor to a committee."); In re Texaco Inc., 79 B.R. 560, 565-66 (Bankr. S.D.N.Y. 1987)(after 1986 amendments, the United States Trustee, not the court, is assigned administrative task of appointing committees; any parties in interest that disagrees with the United States Trustee's decision may apply to the court for an order directing the United States Trustee appoint **additional** committees to assure adequate representation)(emphasis added); In re McLean Indus., Inc., 70 B.R. 852, 856 n.2 (Bankr. S.D.N.Y. 1987)("Thus, [based on Congress's repeal of section 1102(c),], the court no longer has the option to change committee membership"); but see In re Barney's Inc., 197 B.R. 431, 439 (Bankr. S.D.N.Y. 1996)(Notwithstanding repeal of § 1102(c), bankruptcy court can apply § 105(a) to review the United States Trustee's decisions regarding the size and/or composition of an official committee; the Barney's court then held that the United States Trustee did not act arbitrarily or capriciously, or otherwise abuse its discretion).

20.  In In re Drexel Burnham Lambert Group, Inc., 118 B.R. at 210, a creditor moved the court to compel the United States Trustee to add the creditor to the committee of unsecured creditors. The creditor had made a formal request to the United States Trustee to be added to the committee, but such request was refused. In resolving the matter, the late Judge Buschman noted "the absence of any indication in the statute that the court may add to or delete an unsecured creditor from a committee" Id. at 210. The court also was aware that Bankruptcy Code section

- 10 -

1102(c), which had previously provided the court with specific authority to alter the composition of creditors' committees, had been deleted by the 1986 amendments. Id. Properly following the statutory language strictly, the court concluded that Bankruptcy Code section 1102 does not authorize the court to add or delete creditors from committees appointed pursuant to Bankruptcy Code section 1102(a). Id. at 210-11. Furthermore, the court concluded that section 105 could not provide such authorization, stating that "[s]ection 105(a) states that a court may issue orders 'necessary and appropriate to carry out the provisions of this title,' not in ignorance of what Congress has wrought." Id. at 211. The court did recognize that it had the ability to address inadequate representation problems, but only through creation of other committees. Id.; see 11 U.S.C. § 1102(a)(2).

21. Similarly, Judge Brozman, in In re Hills Stores Co., 137 B.R. 4 (Bankr. S.D.N.Y. 1992), cited the Drexel decision with approval in concluding that "[w]hile [the court] may order the appointment of additional committees under § 1102(a)(2) of the Code, the statute no longer permits the addition or deletion of members of committees by the court." Id. at 8.

22. Movants argue that the Court apply section 1102(a) of the BAPCPA to this pre-BAPCA case to direct the United States Trustee to reconstitute the Committee to add Law Debenture as a member. However, given the well-reasoned analyses of Judge Buschman in Drexel and Judge Brozman in In re Hills Stores Co. and the inapplicability of the BAPCPA to this case, the Court should decline to follow In re Public Service Co. of New Hampshire, 89 B.R. 1014 (Bankr.D.N.H. 1988) and similar cases that Movants cite to the contrary, which are not binding on this Court. Under the law in the Southern District of New York, section 105(a) of the Bankruptcy Code should not be used to circumvent the plain meaning of Bankruptcy Code § 1102(a), which vests sole discretion in the United States Trustee as to the composition of

- 11 -

committees. Accordingly, this Court should deny the Motion.

### B. The Decision Of The United States Trustee Regarding The Composition Of The Committee Was Not Arbitrary And Capricious

23. In the event that the Court decides that it has the authority to exercise powers given expressly to the United States Trustee under 11 U.S.C. § 1102 to change the membership of the Committee, the standard for review of the United States Trustee's decision must be whether such decision was arbitrary or capricious or otherwise an abuse of its discretion. In re Barney's, Inc., 197 B.R. at 439 (Bankruptcy court will apply § 105(a) to review whether the decision of the United States Trustee in connection with a request to change the membership of a committee is arbitrary and capricious and an abuse of discretion.); In re Mercury Fin. Co., 240 B.R. 270, 276-278 (N.D. Ill. 1999)(same); In re Am.W.Airlines, 142 B.R. 901, 902 (Bankr. D. Ariz. 1992)(same); see also, In re Columbia Gas System, Inc., 133 B.R. 174 (Bankr. D. Del. 1991) (Bankruptcy court may review the decision of the United States Trustee regarding the committee composition under an abuse of discretion standard pursuant to section 105(a)). Under this standard of review, Law Debenture must present substantial evidence that the United States Trustee acted arbitrarily and capriciously in denying Law Debenture a seat on the Committee. "A decision is not 'arbitrary and capricious' unless it is based on an erroneous conclusion of law, a record devoid of evidence on which the decision maker could rationally have based its decision, or is otherwise patently unreasonable, arbitrary or fanciful." In re Barney's Inc. at 439. Law Debenture has provided no such evidence.

24. After reviewing the creditor committee acceptance forms, the 1007 Affidavit of the Debtor, correspondence from the parties, as well as the additional information provided by the parties, the United States Trustee concluded that the interests of Law Debenture are

adequately represented by the current composition of the Committee which includes Cap Re, a subordinated noteholder.

### III. The Subordinated Bondholders Interests' Are Adequately Represented By The Current Composition Of The Committee.

25. In the present case, the United States Trustee has formed a Committee that adequately represents the subordinated bondholders' interests. The term "adequate representation" is not defined in the Bankruptcy Code. The issue of "adequate representation" must be determined on a case by case basis. In re Hills Stores Co., 137 B.R. 4, 6 (Bankr. S.D.N.Y. 1992). Adequate representation has been defined as follows:

> Although the existence of adequate representation will always require a case-by-case determination, these comments can be synthesized into a statement that provides greater assistance to a court making this determination: For a particular group of creditors to be adequately represented by an existing committee, it is not necessary for the committee to be an exact reflection of that committee's designated constituents. Instead, adequate representation exists if the interests of that particular group of creditors have a meaningful voice on the committee in relation to their posture in the case.

In re Dow Corning, 194 B.R. 121, 141-42 (Bankr.E.D.Mich.1996), rev'd on other grounds, 212 B.R. 258 (E.D.Mich. 1997).

26. The determination of adequate representation is a two-step process. First, the Court must determine whether to ensure adequate representation, the committee should be reconstituted or whether the appointment of an additional committee is necessary. If the Court determines that certain creditors are not adequately represented, then the Court must decide whether to exercise its discretion to modify the committee in order to address claims of inadequate representation. In re Enron Corp., 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002). Criteria relevant to the Court's decision on the first prong include (1) whether the current committee is able to function; (2) whether conflicts of interest "disenfranchise particular groups

- 13 -

of creditors;" (3) the nature of the case; and (4) the standing and desire of the parties. Id. at 685-688.

27. Law Debenture alleges, among other things, that six of the seven members of the Committee have interests unrelated to the subordinated noteholders and that Cap Re has a conflict because they also hold senior notes and are, purportedly, holders of GM stock. Law Debenture, however, has not met their burden of proof on any of the Enron criteria. Further, Law Debenture's allegations are not supported by the facts of this case.

(A). The Committee is Able to Function.

28. A committee adequately represents creditors so long as "the diverse interests of particular creditor groups are represented on and have participated in that committee." In re Sharon Steel, 100 B.R. 767, 777-78 (Bankr. W.D.Pa.1989). The inclusion of disparate groups on committees facilitates, rather than hinders, the consensual resolution of conflicting priorities among the holders of unsecured claims and the formulation of a plan of reorganization. Potential conflicts among the committee members do not show that a committee cannot function. In re Hill Stores, 137 B.R. at 6-7. Any disabling conflict must be the result of "vastly conflicting aims and entitlement" and the members must be unable to work on a single committee." Id at 7.

29. In this case, it appears the Committee is functioning properly. The Committee is not dominated by any one constituent. Movant's allegations that the Committee as presently configured cannot function to adequately protect the interests of the subordinated noteholders because no current member of the Committee represents the interests of the subordinated holders are unfounded. The Committee has participated in every major aspect of the cases since its appointment. Moreover, in the November 15th Latham Letter, counsel to the Committee explicitly states that the Committee is "well balanced" and has "functioned extremely well to

date through its current members."

30.   Movants have not shown, and at this stage in the case, cannot show any disabling conflicts among members of the Committee.  While Movants aver in the Motion and the Supplement that Cap Re has a conflict because it is purportedly a holder of GM stock and holds senior notes, there is no evidence that notwithstanding the foregoing, the Committee cannot function or address the concerns of the subordinated note holders.  At the Organizational Meeting each of the Committee's members were advised by the United States Trustee that they owe a fiduciary duty to all unsecured creditors.  Thus, if Cap Re had to abstain on a vote with respect to an issue concerning GM, the Committee would could still function.  The other Committee members, who owe a fiduciary duty to the entire creditor body, would deliberate so that the entire Committee can reach decision.  Law Debenture has not shown that any member of the Committee has, or will during the course of this case, breach their fiduciary duty to the other unsecured creditors.

31.   Throughout the Movant's papers is the mistaken notion that they will be voiceless in this case unless appointed to the Committee. There can be no question that creditors' committees play a central role in Chapter 11 cases. But section 1109(b) of the Code enables all creditors to be heard on any issue. The Movants also enjoy the right to make motions, <u>see</u>, <u>e.g.</u>, 11 U.S.C. § 1112 and, most importantly, retain the right to vote and all of the other creditor protections contained in Chapter 11. "Committees are not designed to provide a speaker's platform for a particular creditor. They are designed to enable investigation and to provide a forum for negotiation on behalf of all of the claims or interests they represent." <u>In re Drexel Burnham Lambert Group, Inc.</u>, 118 B.R. at 212-13.

(B)   <u>The Subordinated Bondholders are Not Disenfranchised</u>.

- 15 -

32.     Disenfranchisement occurs "if the committee is so dominated by one group of creditors that a separate group has virtually no say in the decision-making process." In re Dow Corning, 194 B.R. at 142. The contentions of committee members that their positions are not considered is evidence of disenfranchisement. Enron, 279 B.R. at 686.

33.     Movants have not presented any evidence of disenfranchisement. Movant's claim is based, not on hard facts, but on speculation that there will be insoluble conflicts within the Committee over the resolution of issues with GM, the plan of reorganization and other issues. There is no evidence that the subordinated bondholders positions on the Committee are not considered, and no Committee member has ever advised the United States Trustee that this has happened. Moreover, Movants have not shown any qualitative difference between their claims and the claims of the other unsecured creditors on the Committee that would result in the failure of the Committee to represent the subordinated bondholder's interests. As this case is in its early stages, there is no evidence that the subordinated bondholders will be treated any differently than the other unsecured creditors of the Debtor under a plan or reorganization.

(C).    The Size and Complexity of the Case Do Not Warrant Modification of the Committee.

34.     Modification of the Committee or the appointment of an additional committee may be warranted in large or complex cases, but "the size of a case alone is not determinative." Enron, 279 B.R. at 688. Often the formation of a separate committee "will not eliminate the inherent tensions; indeed it will only weaken the impetus to compromise." In re Sharon Steel, 100 B.R. at 779. The relationship between the Debtor and the unsecured creditors is not out of the ordinary. The business relationships among the Debtor and the unsecured creditors who are currently serving on the Committee may differ in some respects but the treatment of the claims of

- 16 -

trade creditors under a plan should not differ. The allegation that Committee members have differing goals with respect to maximizing value and facilitating the Debtor's reorganization also is groundless.

(D.) <u>The Debtors and the Committee Oppose Modification of the Committee</u>.

35. The Court should also look to the positions of the various constituents in the case in determining whether there is adequate representation. <u>Enron</u>, 279 B.R. at 685. The Committee and the Debtor oppose formation of an additional committee. The Debtor's position is that current committee membership accurately and proportionately represents the Debtor's creditor body. Likewise, the Committee states that "altering its voting composition will not improve its ability to advance the interests of all unsecured creditors."

36. Based upon the foregoing, Movants are adequately represented by the Committee. Therefore, the United States Trustee respectfully requests that the Court deny the Motion of Law Debenture to reconstitute the Committee.

**IV. CONCLUSION**

37. Based on the foregoing, the United States Trustee requests that the Court sustain her objections, deny the request of Law Debenture, and grant such other relief as is just.

Dated: New York, NY
        December 30, 2005

                              DEIRDRE A. MARTINI
                              UNITED STATES TRUSTEE

                By:   /s/ Tracy Hope Davis
                      Tracy Hope Davis (THD-8154)
                      Attorney

                      33 Whitehall Street
                      21st Floor
                      New York, New York 10004-2112

Tel. No. (212) 510-0500
Fax. No. (212) 668-2255