# WACHTELL, LIPTON, ROSEN & KATZ

51 WEST 52ND STREET

NEW YORK, N.Y. 10019-6150

TELEPHONE: (212) 403-1000
FACSIMILE: (212) 403-2000

GEORGE A. KATZ (1965-1989)
JAMES H. FOGELSON (1967-1991)

OF COUNSEL

WILLIAM T. ALLEN · LEONARD M. ROSEN
THEODORE GEWERTZ · MICHAEL W. SCHWARTZ
THEODORE A. LEVINE · ELLIOTT V. STEIN
NORMAN REDLICH · J. BRYAN WHITWORTH
JOHN M. RICHMAN · AMY R. WOLF

COUNSEL

ADRIENNE ATKINSON · LAWRENCE A. PASINI
ANDREW J.H. CHEUNG · ADAM J. SHAPIRO
PAMELA EHRENKRANZ

November 30, 2005

Deirdre A. Martini
United States Trustee
33 Whitehall Street, Suite 2100
New York, NY 10004

Re:   Delphi Corporation

Dear Ms. Martini:

As a follow-up to the voicemail that I left for you this morning, attached is an acknowledgment signed by David Daigle of Capital Research and Management Company, as well as a copy of the related information wall policy established by Cap Re. As you may recall, Cap Re owns approximately $500 million in principal amount of Delphi bonds, was appointed by you to the Delphi Creditors' Committee, and is co-chair of the Committee. David is Cap Re's representative on the Committee.

Cap Re and its affiliates are, collectively, among the country's largest asset managers, with approximately $1.1 trillion under management. By virtue of its size, Cap Re has, and will continue to have, stock and bond positions in other automotive-industry companies, including General Motors. Accordingly, as the acknowledgment indicates, Cap Re has established an information wall for the Delphi matter, with David on the inside. Kristine Nishiyama, an internal counsel at Cap Re, has been appointed to assist in monitoring the information wall.

Given that Delphi and General Motors are closely intertwined, trading in General Motors' securities by Cap Re will take place on the other side of the wall, at the direction of Cap Re employees other than David, while Cap Re is on the Committee. Securities of other automotive companies will be added to this list and treated in the same way, if the need to do so becomes apparent to Cap Re. Lastly, Cap Re has confirmed to me that since its appointment to the

WACHTELL, LIPTON, ROSEN & KATZ

Deirdre A. Martini
November 30, 2005
Page 2

Committee, it has not traded in Delphi securities and will not do so while on the Committee, absent an order of the Court.

We took the liberty of modeling the attached acknowledgment based on the one that you have proposed in the Delta Air Lines case. If you have any questions on the attached, or if you would otherwise like to speak to me about this matter, please do not hesitate to call me.

Best regards.

Sincerely,

Richard G. Mason

cc    David Daigle
      Kristine Nishiyama, Esq.
      Robert Rosenberg, Esq.

## ACKNOWLEDGMENT OF INFORMATION WALL AND APPLICABLE POLICIES AND PROCEDURES

I am representing Capital Research and Management Company ("CRMC") on the Official Unsecured Creditors Committee ("Creditors Committee") that was formed as part of the bankruptcy case for Delphi Corporation ("Delphi"). I understand that as a member of the Creditors Committee, I may receive material non-public information about Delphi and other public companies integral to Delphi, including General Motors Corporation ("GM"). In order to protect CRMC, its affiliates, employees, officers and directors from receiving material non-public information about Delphi, GM or other public companies integral to Delphi, I understand that I will be subject to an Information Wall and agree to:

1) Not directly or indirectly disclose any information about Delphi, GM or other companies that CG attorneys may later determine should be covered by this Information Wall (collectively "Covered Companies"), to any Capital Group ("CG")[1] associate, except CG in-house attorneys. This includes all forms of written and oral communication, including memos, internal research publications, e-mail, instant messaging, and all discussions, whether in person, by phone or on conference calls. This also includes not directly or indirectly disclosing any information about the Covered Companies to any CG associate during any CG investment calls or meetings where these companies are discussed. I may communicate with other members of the Creditors Committee, legal counsel and advisors for the Creditors Committee, and outside legal counsel or advisors retained by CRMC to assist in the Delphi bankruptcy case. I may communicate with other CG associates, if and when they also become subject to this Information Wall and sign a similar Acknowledgment.

2) Maintain all information obtained as a result of serving on the Creditors Committee in a secure location inaccessible by other CG associates. This includes keeping written materials in a locked file drawer, not allowing any other CG associate to access my e-mail or voicemail and maintaining any electronic files in a location inaccessible by other CG associates (i.e., not on a shared drive).

3) Not purchase or sell securities issued by the Covered Companies, for my professional portfolio for as long as I am serving on the Creditors Committee or in possession of material non-public information. I will turn over all investment discretion over any securities that I may currently hold in my professional portfolio that were issued by the Covered Companies, to another CG investment associate for as long as I am serving on the Creditors Committee or in possession of material non-public information. The securities will be kept under my manager number, but I will have no investment discretion over the securities. I understand that I am prohibited from transacting in other companies if in serving on the

---

[1] The Capital Group Companies, Inc. ("CG") is the parent company to CRMC and other investment management subsidiaries. Under normal circumstances, associates of CRMC may share certain investment research with associates of other investment management subsidiaries.

Creditors Committee I am in possession material non-public information regarding those companies.

4) Not personally transact in any security issued by the Covered Companies for as long as I am serving on the Creditors Committee or in possession of material non-public information. I understand that this prohibition also applies to my immediate family members living in my same household. I understand that I am also prohibited from transacting in other companies if from my service on the Creditors Committee I am in possession of material non-public information regarding those companies.

5) Report any breach of CG's Information Wall Policy and Procedures or this Acknowledgment immediately to a CG attorney.

I have read and understand this Acknowledgment, as well as CG's Policies and Procedures Regarding Information Walls, and understand that by signing this I am subject to both for as long as the Information Wall is in place.

Date: November 30, 2005

David A. Daigle

2

# THE CAPITAL GROUP COMPANIES, INC.
# INFORMATION WALLS

## Policies and Procedures

I.  Information Walls – General

These Information Wall ("Wall") Policies and Procedures apply only to situations where a Capital Group ("CG") associate is representing a CG company on an Official Unsecured Creditors Committee appointed as part of an unaffiliated company's bankruptcy case ("Subject Company"). In all other situations, CG's Insider Trading Policy will apply.

These Policies and Procedures apply to all CG investment management companies or groups, including Capital Group International, Inc., Capital Research Global Investors, and Capital World Investors.

    A.    Establishing a Wall

        Before an associate goes on an Official Unsecured Creditors Committee, the appropriate associates will determine whether a Wall can be erected. If a Wall can be established, other associates not covered by the Wall will be informed of the existence of the Wall, as appropriate.

    B.    Covered Companies

        When a Wall has been established, these policies and procedures will apply to the Subject Company, as well as to other companies designated by CG attorneys as "Covered Companies" under the applicable Wall. If the associate serving on the committee receives material non-public information regarding a company other than the Subject Company as a result of committee activities, that company will automatically be deemed to be a Covered Company under the Wall. Covered Companies may be designated by CG attorneys in advance of receipt of material non-public information as a result of committee activities, if it is determined that there is a high likelihood of receiving material non-public information in the future as a result of committee activities.

    C.    Oral and Written Communications

        Except as specifically permitted by these procedures, associates covered by the Wall shall not communicate, either orally or in writing, any information about Covered Companies to any other CG associate, officer or director or persons affiliated with CG, including directors/trustees of funds managed by CG companies. At least one CG attorney will also be covered under the Wall in order to assist with the bankruptcy case; information may be disclosed to this

designated CG attorney. Information may be disclosed to other CG attorneys on a need-to-know basis and may be disclosed to outside counsel or advisors, as necessary. All confidential discussions regarding this information shall be conducted in places and in a manner where conversations may not be overheard or intercepted.

D. Meetings

The CG associate covered by the Wall may attend CG investment meetings and calls. However, the associate shall not directly or indirectly share or disclose information, opine or comment on any Covered Companies with any CG associate during such investment meeting or call.

E. Access to Material Non-Public Information

1. Documents containing material non-public information concerning a company shall be maintained in locked file cabinets or drawers inaccessible to other CG associates.

2. Notes, analyses or other written material shall be marked "CONFIDENTIAL."

3. Material non-public information shall not be stored in any medium (*i.e.*, e-mail, voicemail, computer files) that is shared. Any associate covered by the Wall will not grant associates not covered by the Wall access to any medium upon which they have stored material non-public information. To the extent information about the Covered Companies may be accessible by internal computer systems, information technology associates who service and maintain such systems, will be informed to not share such information with other associates and will keep such information in files inaccessible to other associates. If the information technology associate needs a personal password in order to service the covered associate's computer, the password shall be changed after servicing is complete.

4. Documents containing material non-public information should be shredded before being discarded.

F. Breaches in the Wall

Any CG associate who becomes aware of the unauthorized disclosure of information to anyone outside the Wall shall advise a CG attorney so that it may be determined whether the company must be added to the CG Trade Freeze List.

II. Crossing Over the Wall

There may be occasions where other CG associates, including investment professionals, attorneys and compliance associates, are brought over the Wall and their activities and communication regarding Covered Companies is restricted.

A. If a CG associate not currently covered by the Wall receives material non-public information about a Covered Company, a determination by the appropriate CG attorneys will made as to whether the Covered Company must be put on CG's Trade Freeze List or whether the associate can be brought over the Wall. There must be a valid business purpose for an associate already covered by the Wall to communicate information about a Covered Company to a CG associate not currently covered. In all situations, the appropriate attorneys must be consulted before any communication takes place or another associate is brought over the Wall.

B. Any associate brought over the Wall will be advised of the confidential nature of the information and the limits on its further dissemination.

C. Once an associate is brought over the Wall, he/she will be subject to all provisions of these policies and procedures, as applicable.

D. An attorney or senior compliance associate will maintain a record of all instances in which an associate is brought over the Wall. At a minimum the record will reflect the:

1. name of the associate brought over the Wall
2. department the associate works in
3. date the associate was brought over the Wall
4. name of the issuer of the securities involved
5. name of the person requesting that the Wall be crossed

III. Securities Transactions

In general, investment associates not covered by the Wall will not be prohibited from transacting in securities of Covered Companies. In some situations, however, it may be desirable to prohibit transactions to avoid any appearance of trading on the basis of material non-public information.

Associates covered by the Wall will be subject to the following trading restrictions for as long as the Wall is in place or they are in possession of material and non-public information.

A. Professional Securities Transactions

1. Any investment associate covered by the Wall shall be prohibited from purchasing or selling any securities issued by Covered Companies, for any account in which he/she has management responsibility.

2. For as long as the Wall is in place or the associate possesses material non-public information about Covered Companies, any existing positions of Covered Companies held by the investment associate in an account in which he/she manages shall either be:

    a. turned over to another investment associate for purposes of making investment decisions (*i.e.*, the securities will be kept under the manager number of the associate covered by the Wall, but the associate will not have investment discretion over the securities);
    b. transferred in whole to another investment associate to be placed under his/her manager number; or
    c. frozen so that there is no trading whatsoever.

3. The associate covered by the Wall shall not receive and will not access any information regarding trading in Covered Companies' securities prior to execution of such trades. The associate covered by the Wall may receive customary internal reports normally prepared that may show activity of Covered Companies' securities as long as the report is not specifically prepared with respect to Covered Companies.

4. If the associate covered by the Wall is a coordinator for a research portfolio, such associate shall divide cash amongst other analysts in the research portfolio without regard to the industry covered by a particular analyst (*i.e.*, analyst covering Subject Company's industry shall not receive disproportionately more or less cash to manage than another analyst because of the analyst's industry coverage).

B. Personal Securities Transactions

1. Any associate covered by the Wall shall be prohibited from personally trading in any securities issued by Covered Companies. This prohibition shall apply to the associate, as well as the associate's immediate family members living in the same household.

2. An associate may continue to hold existing securities of Covered Companies in his/her personal account; however, the associate and his/her immediate family may not buy or sell securities of Covered Companies as long as the associate is covered by the Wall or is in possession of material non-public information.

      3.    CG's Personal Investing Policy shall apply in all other respects.

IV    Compliance

Designated CG attorneys and senior compliance associates shall be responsible for monitoring compliance with these policies and procedures.

    A.    Review of Trading

          1.    Following the erection of a Wall, appropriate compliance associates shall monitor trading in both professional and personal accounts of all securities issued by Covered Companies for as long as the Wall is in place. The compliance associates will maintain a report of all trading activity.

          2.    Review of Possible Misuse of Material Nonpublic Information

              If a compliance associate has concerns about trading activity that may suggest a breach of the Wall, the compliance associate shall immediately contact a CG attorney. The attorney and compliance associate shall conduct an immediate review the trades and take any remedial action, including informing other attorneys and senior associates, as necessary. In reviewing the trades in question, the attorney and compliance associate may consider:

              a.    relationship, if any, between the associate who placed the trade order and the associate(s) who are covered by the Wall
              b.    size of the account
              c.    prior trading activity in the account
              d.    size of the trade in question
              e.    type of transaction
              f.    timing of the trade in relation to receipt of material non-public information
              g.    any pattern of trading
              h.    explanation for the transaction provided by the associate who placed the trade

              The compliance associate shall maintain a record of any review. Such record shall at a minimum, include: the name of the security, the date on which the review was commenced, the identification of the accounts and associates involved, and a summary of the review disposition.

    B.    Review of Communications

          1.    As part of any review conducted under Section IV.A.2 above, a CG attorney or compliance associate may review oral and written communications to and from associates covered by the Wall. Among

        other things this may include, reviewing research reports, listening to investment calls and checking e-mails.

    2.    If an attorney or compliance associate determines there has been an unauthorized communication the associate shall immediately contact the appropriate CG attorneys and senior associates, as necessary. Associates involved shall review the nature of the communication and determine whether there has been a breach of the Wall.

    3.    A record of any review of a possible breach shall be maintained and include: the date of the communication, to whom the information was communicated, a summary of the communication and the nature of the disposition.

C.    Acknowledgment of Policy and Procedures

Before a Wall is erected, all associates to be covered by the Wall will be required to sign an Acknowledgment that they have read and understood CG's Policies and Procedures regarding Information Walls and will follow all guidelines outlined in the document.

D.    Records, in general

    1.    A designated CG attorney or compliance associate shall maintain records of the establishment of a wall for 6 years.

    2.    Records shall include:

        a.    date the Wall was established
        b.    name of the Subject Company
        c.    names of other Covered Companies, if any
        d.    name of CG associate(s) covered by the Wall or associates brought over the Wall
        e.    other non-CG associates privy to the material non-public information
        f.    date the Wall is taken down