SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr.
David E. Springer
John K. Lyons
Ron E. Meisler

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
     In re                                      :         Chapter 11
                                                      :
DELPHI CORPORATION, et al.,         :         Case No. 05–44481 (RDD)
                                                      :
                      Debtors.      :         (Jointly Administered)
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' OBJECTIONS TO LEAD PLAINTIFFS' MOTION
TO COMPEL DISCOVERY RELATED TO DEBTORS' MOTION FOR
ORDER UNDER §§ 105 AND 363 AUTHORIZING DEBTORS TO
<u>IMPLEMENT KEY EMPLOYEE COMPENSATION PROGRAM</u>

Delphi Corporation and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit these Objections to Lead Plaintiffs' Motion to Compel Discovery Related to Debtors' Motion for Order Under §§ 105 and 363 Authorizing Debtors to Implement a Key Employee Compensation Program. In support of their objections, the Debtors respectfully represent as follows:

<u>Background</u>

1.  On October 8, 2005, the Debtors filed a Motion for Order Under §§ 105 and 363 of the Bankruptcy Code, 11 U.S.C. §§ 101–1330, as amended (the "Bankruptcy Code") Authorizing Debtors to Implement a Key Employee Compensation Program (the "KECP Motion"). Ten parties in interest objected to the KECP Motion, including the Teachers' Retirement System of Oklahoma, the Public Employees' Retirement System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H, and Stichting Pensioenfonds ABP (collectively, "Lead Plaintiffs"). Lead Plaintiffs have also filed a consolidated securities class action against Delphi, certain members of its current and former management, and others in federal district court, with the caption <u>In re Delphi Corp. Securities Litigation</u>. The Judicial Panel on Multidistrict Litigation consolidated Lead Plaintiffs' securities action with several other actions and transferred it from the United States District Court for the Southern District of New York to the Eastern District of Michigan on December 12, 2005.

2.  On December 8, 2005, the Debtors received Lead Plaintiffs' discovery requests related to the KECP Motion. In addition to Lead Plaintiffs' discovery requests, the

2

Debtors have responded to extensive discovery requests from three other objectors to the KECP Motion, as well as from the Official Committee of Unsecured Creditors (the "Committee"), which has not yet taken a formal position on the KECP Motion. To date, the Debtors have produced more than 4,500 pages of materials related to the KECP, and have answered or objected to more than 100 separate requests for information.

3.      The Debtors objected to several of Lead Plaintiffs' discovery requests, primarily because the requests plainly seek information unrelated to the KECP Motion. Instead, the requests address the claims asserted by Lead Plaintiffs in their consolidated securities class action. As such, it is clear that Lead Plaintiffs are using this bankruptcy litigation as a tool to obtain discovery that is not available to them in the securities case. Lead Plaintiffs now move the Court to compel the Debtors to respond to these improper requests.

## Argument

### I.
### LEAD PLAINTIFFS' DISCOVERY REQUESTS VIOLATE THE AUTOMATIC STAY IMPOSED BY THE BANKRUPTCY CODE AND THE DISCOVERY STAY IMPOSED BY THE PRIVATE SECURITIES LITIGATION REFORM ACT OF 1995

4.      In September 2005, Lead Plaintiffs sued Delphi and others in the United States District Court for the Southern District of New York, alleging violations of the federal securities laws. A copy of Lead Plaintiffs Consolidated Class Action Complaint in the securities action (the "Complaint") is attached to Lead Plaintiffs' KECP Motion Objections as Exhibit 1. (Docket No. 1161 Ex. 1.) The gist of Lead Plaintiffs' claims is that Delphi and the other defendants participated in an accounting fraud that artificially inflated the market price of Delphi's securities.

5.      Discovery in the securities action has been stayed by operation of the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. §§ 77z-1(b)

3

(establishing discovery stay in actions under the Securities Act of 1933), 78u-4(b)(3)(B) (Securities Exchange Act of 1934). As a result of the discovery stay, Lead Plaintiffs are barred from requesting documents, propounding interrogatories, or taking depositions related to their securities claims. When Delphi filed its Chapter 11 petition in this case, on October 8, 2005, there arose a second obstacle to obtaining discovery related to their securities action—the automatic stay imposed by section 362(a) of the Bankruptcy Code, 11 U.S.C. § 362(a).

6.   The automatic stay is "one of the fundamental debtor protections provided by the bankruptcy laws." Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot., 474 U.S. 494, 503 (1986) (internal quotation marks omitted). "The general policy behind [section 362(a)] is to grant complete, immediate, albeit temporary relief to the debtor from creditors, and also to prevent dissipation of the debtor's assets before orderly distribution to creditors can be effected." SEC v. Brennan, 230 F.3d 65, 70 (2d Cir. 2000). Section 362(a) of the Bankruptcy Code is designed to "to allow the bankruptcy court to centralize all disputes concerning property of the debtor's estate so that reorganization can proceed efficiently, unimpeded by uncoordinated proceedings in other arenas," id. (quoting In re United States Lines, Inc., 197 F.3d 631, 640 (2d Cir. 1999)), and to "give a debtor a short respite from creditors' demands, during which a debtor will have the opportunity to develop and implement plans to right [its] financial affairs," In re Bogdanovich, 292 F.3d 104, 110 (2d Cir. 2002) (internal quotation marks omitted). Lead Plaintiffs' instant motion represents just another attempt to avoid the automatic stay and is one of three motions filed in an effort to obtain securities-related discovery.[1]

---

[1] In addition to the instant motion, Lead Plaintiffs' have also filed a Motion for a Limited Modification of the Automatic Stay (Docket No. 1063), and a Motion to Compel Deposition Testimony and the Production of Documents in Connection with the Debtors' Application for Order Under 11 U.S.C. §§ 327(a), 328(a), and 1107(b) Authorizing Employment and Retention of Deloitte & Touche LLP as Independent Auditors and Accountants to Debtors, Effective Nunc Pro Tunc to October 8, 2005 and Objections Filed Thereto (Docket No. 1618), pursuant to which Lead Plaintiffs are seeking similar discovery. Indeed, all of the written

*(cont'd)*

4

7.   Lead Plaintiffs are using their KECP Motion Objections as cover for their attempt to frustrate the purposes of the PSLRA's discovery stay as well as Bankruptcy Code section 362(a) by requesting discovery that relates <u>solely</u> to their securities claims, and has <u>nothing</u> to do with whether the Debtors exercised sound business judgment in adopting the KECP. Rather than grant the Debtors the complete, immediate respite the automatic stay is supposed to afford, Lead Plaintiffs would force the Debtors to engage in discovery on their securities claims within the Chapter 11 motion practice regarding the use of estate property under section 363 of the Bankruptcy Code.

8.   The link between Lead Plaintiffs' discovery requests and the securities action is evident from the face of the requests themselves, because they closely track the allegations in Lead Plaintiffs' Complaint in the securities case.

9.   Request No. 2, for example, explicitly asks for information about specific allegations in the Complaint, including information about:

- "Financing transactions totaling approximately $441 million reported by Debtors as sales of inventory or indirect materials, <u>as described in detail in Lead Plaintiffs' Consolidated Class Action Complaint (hereinafter the 'Complaint') at ¶¶ 122–54</u> (attached as Exhibit 1 to Lead Plaintiffs' Objection)" (Coffey Decl. Ex. D ¶ 2(a) (emphasis added));

---

*(cont'd from previous page)*

discovery requests and requests for depositions at issue here seek information concerning their claims in the securities action that are separate from the issues in these Chapter 11 cases.

Just the fact that Lead Plaintiffs' have asked the Court to lift the automatic stay to allow them to pursue discovery of documents relating to "accounting improprieties" shows they are aware that the discovery they seek is subject to the automatic stay. (See Docket No. 1063 at 2.) Lead Plaintiffs did not, however, make a similar motion with respect to the discovery requests at issue here. Nor have they made any effort to demonstrate "cause," which is required under section 362(d)(1) of the Bankruptcy Code in order to lift the stay. See <u>Bogdanovich</u>, 292 F.3d at 110 (explaining that party seeking relief from automatic stay must "make an initial showing of cause"); <u>In re Mazzeo</u>, 167 F.3d 139, 142 (2d Cir. 1999) (same). As set forth more fully in the Debtors' Objection to Lead Plaintiffs' Motion for Limited Modification of Automatic Stay (Docket No. 1667), under these circumstances, the Court should enforce the automatic stay and deny Lead Plaintiffs' discovery related to their securities claims.

5

- "Transactions totaling more than $240 million between Debtors and General Motors Corporation ('GM'), <u>as described in detail in the Complaint at ¶¶ 155–68</u>" (Coffey Decl. Ex. D ¶ 2(b) (emphasis added));

- "Transactions between Debtors and various service providers, including $68 million in transactions with Electronic Data Systems ('EDS'), one of Debtors' information technology service providers, <u>as described in detail in the Complaint at ¶¶ 173–84</u>" (Coffey Decl. Ex. D ¶ 2(c) (emphasis added));

- "Debtors' identification of obligations that were not properly accrued for at the end of an accounting period that resulted in an overstatement of Debtors' pre-tax income by $14 million in 2002 and by $34 million in 2003, <u>as described in detail in the Complaint at ¶¶ 185–87</u>" (Coffey Decl. Ex. D ¶ 2(d) (emphasis added)); and

- "Debtors' accounting for Debtors' direct materials by understating the value of its direct materials inventory on a monthly, quarterly and yearly basis, <u>as described in detail in the Complaint at ¶¶ 190–99</u>" (Coffey Decl. Ex. D ¶ 2(e) (emphasis added)).

10. Similarly, Request No. 17 openly seeks discovery in the securities action, stating:

> Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegations in Paragraph 2 of the Objection that any Delphi executive or former Delphi executive "knowingly participated in Delphi's massive accounting fraud, or . . . inexcusably tolerated or ignored that fraud" <u>which is the subject of the consolidated securities class action, entitled In re Delphi Corp. Securities Litigation, Master File No. 1:05-CV-2637 (NRB) (S.D.N.Y.) (the "Consolidated Securities Litigation.")</u>. (Coffey Decl. Ex. D ¶ 17 (emphasis added).)

11. Several other requests are directed toward specific paragraphs in Lead Plaintiffs' objections to the KECP Motion which, in turn, cite to allegations of securities violations in the Complaint. For instance:

- Request No. 22 refers to Paragraph 8(e) of the objections, which in turn is based on Paragraphs 190–199 of the Complaint. (Coffey Decl. Ex. D ¶ 22; Docket No. 1161 ¶ 8(e).)

6

- Request No. 25 asks for documents related to Paragraph 24 of the objections, cite Paragraphs 123–143 and 195–198 of the Complaint. (Coffey Decl. Ex. D ¶ 25; Docket No. 1161 ¶ 24.)

- Request No. 26 is a request for documents related to Paragraph 25 of Lead Plaintiffs' objections. (Coffey Decl. Ex. D ¶ 26.) That paragraph is drawn directly from several paragraphs in the Complaint, including Paragraphs 31, 123–143, 193–198, 219, and 605. (Docket No. 1161 ¶ 25.)

12. In addition to propounding written discovery requests related to their securities claims, Lead Plaintiffs also desire to take the depositions of John Sheehan, Laura Marion, Dan Renick, and John Rotko. These depositions would not shed any light on whether the Debtors exercised sound business judgment in adopting the KECP; indeed, Marion, Resnick, and Rotko had not role whatsoever in designing, reviewing, or approving the KECP. Instead, their only purpose would be to allow Lead Plaintiffs to further investigate their securities claims, as Lead Plaintiffs' objections to the KECP Motion and Lead Plaintiffs' counsel's affidavit demonstrate.

13. In their objections, Lead Plaintiffs assert they have conducted an "extensive investigation" that has allowed them to identify several executives who were involved in alleged "accounting fraud" at Delphi. (Docket No. 1161 ¶ 25.) According to Lead Plaintiffs, this list includes Mr. Sheehan, Delphi's Vice President, Chief Restructuring Officer, Chief Accounting Officer, and Controller; Ms. Marion, Director of Financial Reporting and Accounting; Mr. Renick, Director of Plant Production, Control, and Logistics for Delphi's Electronics Safety Division; and Mr. Rotko, the Head of Indirect Materials in Mexico for Delphi's Electronics and Safety Division. (Id. ¶¶ 25(a), (j), and (l)–(m).)

14. In his declaration in support of Lead Plaintiffs' motion to compel, Lead Plaintiffs' counsel concedes that, if allowed to take depositions, Lead Plaintiffs would seek testimony about their securities claims. Mr. Sheehan, the affidavit states, would be asked about

7

"his knowledge of accounting improprieties," as would Ms. Marion and Messrs. Renick and Rotko. (Coffey Decl. ¶¶ 26–30.) "Clearly," the affidavit continues, "these four executives—even though they are just a sampling of the executives covered under Debtor's KECP—possess firsthand knowledge of Delphi's accounting fraud and the executives who either participated in or willfully ignored the fraud." (Id. ¶ 31.)

       15.     Based on these statements, it is clear that Lead Plaintiffs plan to use the depositions as an opportunity to obtain information related to the securities action, information that it is otherwise blocked from obtaining because of the discovery stay in the securities case and the automatic stay in place here.

## II.
## LEAD PLAINTIFFS' DISCOVERY REQUESTS SEEK INFORMATION OUTSIDE THE SCOPE OF DISCOVERY PERMITTED BY FED. R. CIV. P. 26(b)

       16.     The second fundamental problem with Lead Plaintiffs' discovery requests is that they address issues that are wholly outside of the scope of discovery established by Fed. R. Civ. P. 26(b), made applicable here by Fed. R. Bankr. P. 7026 and 9014(c). Rule 26(b)(1) restricts discovery to matters that are "relevant to the claim or defense of any party." And under Rule 26(b)(2)(iii), the Court has the authority to limit discovery when "the burden or expense of the proposed discovery outweighs its likely benefit." These provisions provide ample grounds for denying Lead Plaintiffs' motion to compel.

       17.     The issue presented by the KECP Motion is whether the Debtors exercised sound business judgment in adopting the KECP. None of the discovery requests at issue here bears any logical relationship to this issue. Instead, all of them either are directed toward allegedly improper transactions and accounting restatements that occurred in 1999–2004, or seek the depositions of employees who did not participate in any manner in shaping, reviewing, or approving the KECP.

18. The benefit of Lead Plaintiffs' proposed discovery, if any, is greatly outweighed by the burden and expense it would impose on the Debtors. Just responding to the multiple discovery requests Lead Plaintiffs have filed in these cases alone has been a burden on the estates. In essence, Lead Plaintiffs ask the Debtors to shift their efforts away from the reorganization process and focus instead on supplying Lead Plaintiffs with information they can use in their securities action, even though discovery in that action is barred by two stays. And they ask the Debtors to perform this shift and complete what amounts to full-blown discovery in the securities action before the hearing on the KECP Motion, which is scheduled for January 27, 2006.[2]

19. Lead Plaintiffs' only response is that they deserve to know whether any of the employees covered by the KECP were involved in the misconduct alleged in their Complaint in the securities action. This argument wrongly assumes that Lead Plaintiffs and their counsel have the authority to issue passing or failing grades to the employees covered by the KECP, and to act as the final arbiters as to whether any of them engaged in fraud. (Given that allegations seem to equal guilt for Lead Plaintiffs, one can only guess how they would exercise that power.)

20. Unlike Lead Plaintiffs, whose production of responsive documents consisted largely of Delphi's SEC filings and news articles pulled from the Internet, complying with Lead Plaintiffs' requests would require a substantial investment of the Debtors' time and money, both of which are precious resources in the context of a Chapter 11 case. When these

---

[2] Moreover, the Debtors and the Creditors' Committee—which are actively engaged in consensual negotiations regarding the structure and scope of the KECP program—have recently agreed that the January 27th hearing should be limited to a very narrow subject: the design and implementation of an annual incentive program for the nine months ended June 30, 2006. The Debtors and the Committee have agreed to adjourn the balance of the relief sought in the KECP Motion (i.e., annual incentive plans beyond June 30, 2006, and proposed cash and equity incentive emergence awards) to the July 2006 omnibus hearing. While Lead Plaintiffs would not have been aware of this agreement when they filed the instant motion, the very narrow focus of the January 27th KECP hearing constitutes additional grounds for this Court to deny Lead Plaintiffs' intrusive and inappropriate discovery motion.

9

burdens and expenses are compared to the benefits of allowing Lead Plaintiffs to obtain discovery on their securities claims, the balance weighs clearly in favor of limiting discovery and denying Lead Plaintiffs' motion to compel.

## III.
### THE DEBTORS' PRIVACY OBJECTION IS VALID, AND IS LIMITED TO LEAD PLAINTIFFS' REQUESTS FOR PERSONAL INFORMATION REGARDING THE EXECUTIVES COVERED BY THE KECP

21. In their Request No. 1, Lead Plaintiffs asked the Debtors to "identify each executive covered under the KECP Motion." (Coffey Decl. Ex. D ¶ 1.) In response to this and similar requests from the Committee and other parties that objected to the KECP Motion, the Debtors agreed to disclose the names, titles, and bands of the five highest-paid employees covered by the KECP.[3] With respect to the remaining Covered Employees, the Debtors agreed to provide a listing of their titles and bands, as well as the compensation of the employees by band, but not their names or other information that would allow one to determine the compensation earned by each individual employee. The Debtors objected to providing this information because disclosing it would invade the privacy rights of the Debtors' employees.

22. This privacy objection is implicated only insofar as Lead Plaintiffs are seeking the names of the remaining Covered Employees or other information regarding the compensation of particular employees. It is not a blanket objection to Lead Plaintiffs' discovery requests as a whole.

23. The Debtors' limited privacy objection is reasonable and is supported by the purposes of the KECP itself. Unlike Delphi's five highest-paid executives, whose

---

[3] The Debtors' executives are grouped by bands. The most junior executives comprise Band A, and Rodney O'Neal—Delphi's President and Chief Operating Officer, and the highest-ranking executive covered by the KECP—is the lone member of Band H. The remaining executives fall within the bands between these two points. Robert S. "Steve" Miller—Delphi's Chairman and Chief Executive Officer—is not a participant in the KECP.

10

compensation information is already publicly available as part of Delphi's filings with the Securities and Exchange Commission, the compensation earned by the remaining Covered Employees has not been disclosed to the public or to the Debtors' own employees. If the Debtors produce this information now, the results would be a violation of privacy. Among other things, the Debtors' employees would be able to view the compensation of their colleagues for the first time. This is inherently wrong. Moreover, to the extent there are differences in compensation between employees in like positions, the disclosure of this information could foment discord and have a negative effect on employee morale, thereby undercutting one of the central purposes of the KECP.

24. In light of these concerns, the Debtors' privacy objection should be sustained. Indeed, Lead Plaintiffs have not provided the Court with any reason why employees' names and data tying compensation information to particular employees would be of any use to them in litigating the KECP Motion. To the extent Lead Plaintiffs seek this information, their motion to compel should be denied.

IV.
THERE IS NO BASIS FOR OVERRULING THE DEBTORS' OBJECTIONS AS UNTIMELY

25. In addition to their arguments on the merits, Lead Plaintiffs raise a technical point, contending that the Court should overrule the Debtors' discovery objections because they were allegedly untimely. There is no justification, however, for disregarding the Debtors' valid objections on this basis.

26. The Debtors received Lead Plaintiffs' discovery requests on Thursday, December 8. Under the procedures established by the parties at the December 5 meet-and-confer, the Debtors were to provide their objections to these requests within two days. The Debtors did so, serving their objections two business days later, on Monday, December 12, rather than two

11

calendar days later, on Saturday, December 10. Any delay in serving the objections was caused by a difference in view between the parties regarding how days would be counted.[4] Furthermore, Lead Plaintiffs cannot claim they have suffered any prejudice or hardship as a result of receiving the objection on a Monday instead of a Saturday, particularly because the hearing date on the KECP Motion—which was scheduled for January 5 at the time of the meet-and-confer—has now been pushed back three weeks, to January 27.

---

[4] The authority cited by Lead Plaintiffs, Eldaghar v. City of N.Y. Dep't of Citywide Admin. Servs., No. 02 CIV. 9151, 2003 WL 22455224 (S.D.N.Y. Oct. 8, 2003), does not apply here. In that case, the objecting party served its objections 10 days late and offered "no explanation at all for its failure to serve its response in a timely manner." Id. at *1. Moreover, Lead Plaintiffs' technical argument not only lacks merit, it is also too clever by half. According to Lead Plaintiffs, the Court should disregard all tardy objections, without regard to questions of timing, excuse, or prejudice. Under this principle, Lead Plaintiffs' own objections to the KECP Motion—the very objections it claims give it the right to the discovery at issue here—must be rejected out of hand, for they were filed on November 23, one day after the objection deadline expired. Thus, if the Court adopts Lead Plaintiffs' position, the first step it should take is to bar Lead Plaintiffs' objections to the KECP Motion, a ruling that would render moot their discovery requests and this motion to compel.

12

Conclusion

For the reasons set forth above, the Debtors respectfully request that the Court enter an order denying Lead Plaintiffs' Motion to Compel Discovery Related to Debtors' Motion for Order Under §§ 105 and 363 Authorizing Debtors to Implement a Key Employee Compensation Program, and granting the Debtors such other and further relief as is just.

Dated: New York, New York
December 30, 2005

SKADDEN, ARPS, SLATE, MEAGHER
 & FLOM LLP


By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    David E. Springer (DS 9331)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -


By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession