Kenneth S. Ziman (KZ-2486)
Robert H. Trust (RT-6660)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, New York 10017
Telephone: (212) 455-2000
Fax: (212) 455-2502

Attorneys for the Administrative Agent for the
Prepetition Secured Lenders

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>DELPHI CORPORATION., et al.,<br>Debtors. | Chapter 11<br>Case No. 05-44481 (RDD)<br>(Jointly Administered) |

## OBJECTION OF THE PREPETITION AGENT TO THE MOTION OF APPALOOSA MANAGEMENT L.P. PURSUANT TO 11 U.S.C. § 1102(a)(2) FOR AN ORDER DIRECTING THE UNITED STATES TRUSTEE TO APPOINT AN EQUITY COMMITTEE IN THESE CHAPTER 11 CASES

JPMorgan Chase Bank, N.A., in its capacity as administrative agent (in such capacity, the "Prepetition Agent"), for itself and a syndicate of approximately 250 senior secured lenders (collectively, the "Prepetition Lenders") to the above-captioned debtors and debtors-in-possession herein (collectively, the "Debtors"), hereby submits this objection (this "Objection") to the motion of Appaloosa Management L.P. pursuant to 11 U.S.C. § 1102(a)(2) for an order directing the United States Trustee to appoint an equity committee in these Chapter 11 cases (the "Motion"). In support hereof, the Prepetition Agent respectfully represents as follows:

509265-1038-08814-NY01.2539575

## BACKGROUND

**A.        The Prepetition Credit Agreement and Related Collateral**

1.        Prior to the Debtors' commencement of these Chapter 11 cases on October 8, 2005 (the "Petition Date"), Delphi Corporation (the "Delphi") entered into the 5-Year Third Amended and Restated Credit Agreement, dated as of June 14, 2005 (as amended, supplemented or otherwise modified, the "Prepetition Credit Agreement"), among Delphi, the Prepetition Lenders and the Prepetition Agent. As of the Petition Date, Delphi was liable to the Prepetition Lenders in the aggregate principal amount of approximately $2.6 billion on account of loans, letters of credit that have been issued and are outstanding and other extensions of credit (the "Prepetition Obligations"). The Prepetition Obligations are secured by liens on substantially all of the Debtors' assets and are guaranteed by the other Debtors. The Prepetition Agent has also been granted first priority liens on, and security interests in, assets of certain foreign subsidiaries of Delphi. The Prepetition Obligations are held by more than 250 Prepetition Lenders.

**B.        The Debtors' Deteriorating Financial Performance**

2.        On November 9, 2005, Delphi filed its Form 10-Q for the period ending September 30, 2005 with the Securities and Exchange Commission (the "Quarterly Report") reporting on, among other things, Delphi's financial performance for the first three quarters of the 2005 fiscal year. An excerpt from the Quarterly Report is attached hereto as Exhibit A. Delphi reported that its financial condition deteriorated further in the first nine months of 2005, incurring an operating loss of $1.3 billion, of which $693 million was incurred in the third quarter (just prior to the Petition Date). Comparatively, in the first nine months of 2004, Delphi reported operating income of $245 million. Quarterly Report at page 24.

3.  Delphi attributes its deteriorating financial performance to three factors: (i) the shrinking market share of General Motors Corporation ("General Motors") in North America, (ii) increasing commodity prices and (iii) increasing U.S. legacy liabilities, wage and benefit levels and operational restrictions driven by the collectively bargained agreements with Delphi's unions. *Id.* Delphi explained that an increasing proportion of Delphi's U.S. hourly workforce is, and is expected to continue to be, a fixed cost, which is independent of volume and revenue due to declining business conditions. As a result of General Motors' lower production volumes, the opportunities for Delphi employees to flowback to General Motors have been limited and may be further limited in the future. Delphi stated that this situation is placing, and will increasingly place, financial burdens on Delphi of a scope and magnitude that, unless addressed, threaten Delphi's long-term viability. *Id.* at 25.

## THE MOTION

4.  On or about November 7, 2005, Appaloosa Management L.P. ("Appaloosa") requested that the United States Trustee (the "US Trustee") appoint an equity committee to represent holders of common stock in Delphi (the "Existing Equityholders"). Shortly thereafter, the Debtors and the official committee of unsecured creditors (the "Committee") submitted letters to the US Trustee opposing the appointment of an equity committee in these Chapter 11 cases.[1] Although the US Trustee has not responded formally to Appaloosa's request, Appaloosa filed the Motion. Motion ¶ 18.[2]

---

[1] A copy of the letters submitted by the Debtors (the "Debtors' Opposition Letter") and the Committee are attached to the Motion as Exhibits A and H, respectively.

[2] The Court should defer decision on the Motion to afford the US Trustee an opportunity to determine whether to appoint an equity committee.

5.     Appaloosa asserts in the Motion that this Court should order the appointment of an equity committee because (i) the Existing Equityholders will not be adequately represented without an official committee, (ii) Delphi is not hopelessly insolvent, (iii) the cases are large and complex, (iv) the shares are widely held, (v) the request is timely and (vi) the cost is *de minimis* given the compelling need for adequate representation of the Existing Equityholders. For the reasons set forth herein, the Prepetition Agent opposes the Motion.

## ARGUMENT

6.     Appaloosa has failed to demonstrate that the appointment of an equity committee is warranted under the circumstances of these Chapter 11 cases. Given the economics of these Chapter 11 cases, an equity committee would be little more than an estate funded vehicle for out-of-the-money equity designed to extract value through the threat of litigation and the risks, costs and delays associated therewith.

7.     Section 1102(a)(2) of the Bankruptcy Code provides:

> On request of a party in interest, the court may order the appointment of additional committees of … equity security holders if necessary to assure adequate representation of … equity security holders.

11 U.S.C. § 1102(a)(2). Thus, the express language of Section 1102(a)(2) grants this Court discretion to order the appointment of an equity committee in these Chapter 11 cases. *See Albero v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 68 B.R. 155, 160 (S.D.N.Y. 1986), *appeal dismissed*, 824 F.2d 176 (2d Cir. 1987) ("Congress' desire to protect shareholders in reorganization proceedings was not strong enough, however, to mandate the creation of equity committees"); *In re Enron Corp.*, 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002) ("[o]rdering the appointment of additional committees, particularly given that the matter is often first reviewed and addressed by the U.S. Trustee, is an extraordinary remedy."). *In re Williams Commc'ns*

05-44481-rdd    Doc 1693    Filed 01/02/06    Entered 01/02/06 15:27:35    Main Document
                                    Pg 5 of 12
                                                                                        5

*Group, Inc.*, 281 B.R. 216, 223 (Bankr. S.D.N.Y. 2002) (the "appointment of official equity committees should be the rare exception.").

8.  In evaluating whether to appoint an equity committee, courts have divided their analysis into two components. *In re Enron Corp.*, 279 B.R. at 685; *In re Wang Laboratories, Inc.*, 149 B.R. 1, 2 (Bankr. E.D. Mass. 1992). First, Appaloosa must satisfy the statutory requirement of demonstrating that the Existing Equityholders are not adequately represented. *In re Enron Corp.*, 279 B.R. at 685. The Bankruptcy Code does not define what constitutes "adequate representation", leaving the court with discretion to examine the facts of each case to determine if an equity committee is warranted. *See In re Beker Indus. Corp.*, 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985).

9.  Second, if this Court determines that Appaloosa has demonstrated that the Existing Equityholders are not adequately represented, then the court must decide whether it should exercise its discretion and order the appointment of an equity committee. *In re Enron Corp.*, 279 B.R. at 685. This analysis requires the consideration of several factors, including (i) the number of shareholders, (ii) the complexity of the case and (iii) whether the cost of the additional committee significantly outweighs the concern for adequate representation. *In re Williams Commc'ns Group, Inc.*, 281 B.R. at 220 (citations omitted); *see In re Kalvar Microfilm, Inc.*, 195 B.R. 599, 600 (Bankr. D. Del 1996) (the court will consider several factors, none of which is dispositive, including (1) whether the shares are widely held and publicly traded, (2) the size and complexity of the Chapter 11 case, (3) the delay and additional cost that would result if the court grants the motion, (4) the likelihood of whether the debtors are insolvent; (5) the timing of the motion relative to the status of the Chapter 11 case and (6) other factors relative to the adequate representation issue). The court may also consider intangible costs, such as delay, and

the debtor's solvency. *In re Williams Commc'ns Group, Inc.*, 281 B.R. at 220 (citations omitted). Here, Appaloosa has failed to satisfy its burden.

A.             **The Existing Equityholders Are Adequately Represented.**

10.    As stated in the Debtors' Opposition Letter, Delphi's Board of Directors adequately represents all of its stakeholders, including the Existing Equityholders, in its "fiduciary mission in the chapter 11 cases to maximize business enterprise value for all of the Debtors' stakeholders." Debtors' Opposition Letter at page 5. The Prepetition Agent believes that management thus far has sought to maximize value during these Chapter 11 cases through its negotiations with General Motors and the unions in an effort to obtain financial support and address its legacy liabilities and fixed labor costs. In fact, given the Debtors' efforts to date, Appaloosa can only make generalized statements about potential conflicts between directors and shareholders because it has no evidence of an actual conflict in the Debtors' Chapter 11 cases between the Debtors' Board of Directors (ten members of which are independent) and the Existing Equityholders. *See* Motion ¶ 25-26. Appaloosa cannot satisfy this statutory requirement with generalized statements, conclusory allegations and rumors.

11.    In addition, the Committee has been an active watchdog in these cases. *See In re Williams Commc'ns Group, Inc.*, 281 B.R. at 220 (courts must examine whether the equity holders' interests are already being represented by other committees). Most notably, the Committee has objected, or indicated potential opposition, to much of the substantive relief sought by the Debtors during the first two months of these cases, including several of the "first day" orders seeking authority to pay certain prepetition claims, the Debtors' proposed key employee compensation program and the supplier agreement assumption procedures order.

12. Indeed, any role to be played by an equity committee would be redundant of the role that the Committee is already playing. The Committee has an enormous economic incentive to ensure that the Debtors are not catering to any single creditor constituency, including General Motors, at the expense of other stakeholders. Like the Existing Equityholders, the creditors of these estates do not want General Motors to have undue influence on the Debtors' restructuring strategy or the ability to assert substantial claims against the estates arising from General Motor's purported right to be indemnified by Delphi for amounts paid by General Motors under the various benefit guarantees. Thus, the interests of the Committee are aligned with those of the Existing Equityholders.

13. Appaloosa states that the Committee has no duty or incentive to choose strategic alternatives that maximize value for equity, including opposing substantive consolidation. *See* Motion ¶ 24. No constituency, including the Prepetition Agent or the Committee, is in a position now to support or oppose the substantive consolidation of the estates given the lack of information at this early stage of these Chapter 11 cases about each Debtor's assets and liabilities. Nevertheless, Appaloosa's opposition to the potential substantive consolidation of the estates is not sufficient to warrant the appointment of an equity committee. *See In re Enron Corp.*, 279 B.R. at 691 (the appointment of an additional committee is not warranted just by virtue of a potential issue over substantive consolidation). In fact, Appaloosa would have standing under Section 1109 of the Bankruptcy Code to oppose any substantive consolidation of the estates if the Debtors choose that strategy to confirm a Chapter 11 plan. *See In re Williams Commc'ns Group, Inc.*, 281 B.R. at 223 (equity committees should not be appointed unless "they are unable to represent their interests in the bankruptcy case without an

509265-1038-08814-NY01.2539575

official committee."). In the meantime, the estates should not be burdened by the additional costs of having another statutory committee in these Chapter 11 cases.

**B.      The Debtors Appear to Be Hopelessly Insolvent as of the Petition Date.**

14. Assuming *arguendo* that Appaloosa has demonstrated that it is not adequately represented, this Court should not exercise its discretion to appoint an equity committee based on the circumstances of these Chapter 11 cases. The available evidence supports the Debtors' contentions that they appear to be hopelessly insolvent as of the Petition Date. As stated in the Debtors' Opposition Letter, this Court has reliable market indicia of the Debtors' insolvency based on the trading value of the Debtors' publicly traded bonds. All four tranches of Delphi's publicly traded debt securities were trading as of December 16, 2005 at an implied recovery of between 49.8% and 51.0% of face value and Delphi's publicly traded preferred trust securities were trading at an implied recovery of 23% of face value. Debtors' Opposition Letter at page 5; s*ee In re Williams Commc'ns Group, Inc.*, 281 B.R. at 221 (whether publicly held bonds are trading at a discount on the market is a useful indicator of insolvency).

15. Furthermore, the Debtors' balance sheet as of September 30, 2005 reflected that the Debtors' liabilities substantially exceeded their assets by more than $5.3 billion. Debtors' Opposition Letter at page 5; s*ee In re Williams Commc'ns Group, Inc.*, 281 B.R. at 221 (the Debtors' balance sheet is another factor for a court to consider in evaluating whether a debtor appears to be hopelessly insolvent). Accordingly, there is no cognizable economic interest to be protected by an equity committee.

16. Contrary to Appaloosa's assertions, the Debtors are not required to provide a valuation on an entity-by-entity basis. Motion ¶ 29. Imposing that burden on the Debtors would render opposition to this Motion and future motions to appoint equity committees

in other Chapter 11 cases prohibitively expensive and distract management. *See In re Northwestern Corp.*, 2004 WL 1077913, at *3 (Bankr. D. Del. 2004) (court determined that it was in the best interests of the estate that the party moving for the appointment of an equity committee bear the cost of an enterprise valuation).

17.    Furthermore, any valuation would be premature in light of the substantial uncertainty regarding the Debtors' reorganization, including the Debtors' ability to compromise their legacy liabilities and otherwise reduce their fixed labor costs. Regardless of the outcome of the Debtors' reorganization efforts, however, the Committee has similar economic incentives to those of the Existing Equityholders, and a fiduciary duty, to examine critically any valuation proposed by the Debtors and to find the highest realistic valuation to obtain the largest recovery possible for unsecured creditors under the circumstances. *In re Williams Commc'ns Group, Inc.*, 281 B.R. at 221-22. Nevertheless, based on the information presently available, there is not a substantial likelihood that Existing Equityholders will receive any distribution in these cases under a strict application of the absolute priority rule. *Id.* at 223.

C.    **The Cost and Delay are Too Burdensome.**

18.    The Motion leaves no doubt that Appaloosa's strategy if an equity committee were appointed would be to seek to delay the progress of these Chapter 11 cases in the hope that they could become entitled to a recovery in eighteen months. Appaloosa states that "it is in the best interests of the shareholders to wait until *after* the Benefit Guarantees expire [in 2007] before any major actions are taken with respect to the legacy employee obligations. Only an official equity committee can meaningfully advance these concerns." Motion ¶ 33. In essence, Appaloosa seeks the imprimatur of being a member of a statutory committee to elevate its interests ahead of all other stakeholders through litigation and the risks, costs and delays

associated therewith. This Court should not further Appaloosa's attempts to derail the Debtors' reorganization strategy.

19. As reported in the Quarterly Report, the Debtors are incurring operating losses in the magnitude of hundreds of millions of dollars each quarter due to General Motors' diminishing market share in North America, increasing commodity prices and increasing U.S. legacy liabilities. Quarterly Report at pages 24-25. The Debtors commenced these Chapter 11 cases to transform their U.S. operations by using the tools provided by the Bankruptcy Code to compromise their U.S. legacy liabilities and obtain modifications to their collective bargaining agreements. Absent changes to the collective bargaining agreements on the timeframe proposed by the Debtors, the Debtors cannot effectively respond to these increasingly challenging industry and market conditions, thereby threatening their long-term viability. *Id.* at 25.

20. Any delay in addressing these issues would put the entire risk of these Chapter 11 cases and the Debtors' deteriorating financial performance (including the ongoing operating losses) on the backs of the Prepetition Lenders and all of the other creditor constituencies. Furthermore, any such delay would undermine any progress already achieved by the Debtors in their ongoing negotiations with General Motors to obtain financial support and the unions regarding modifications to the collective bargaining agreements. *See In re Williams Commc'ns Group, Inc.*, 281 B.R. at 223 ("Further delay is antithetical to an overarching need to preserve or enhance asset value."). In such circumstances, the costs of an equity committee certainly outweigh any concerns about adequate representation.

**D.        The Other Factors Do Not Warrant the Appointment of an Equity Committee.**

21. Appaloosa relies on the fact that the shares are publicly traded and widely held and that these Chapter 11 cases are large and complex. While these factors are often cited

by courts in analyzing a request to appoint an equity committee, they are certainly not dispositive. *See Kalvar Microfilm, Inc.*, 195 B.R. at 600 (no one factor in analysis is dispositive). First, it is undisputed that there are a large number of shareholders, but not every case with such a large number of equity holders will require an official equity committee. As the bankruptcy court stated in *In re Williams Commc'ns Group, Inc.*, "Indeed if Congress' intent was otherwise, it would have mandated the appointment of equity committees instead of leaving it within the discretion of the UST and the Court." 281 B.R. at 223.

22.    Second, although these Chapter 11 cases are undoubtedly large and complex, "adding additional committees would likely intensify conflict and lead to further complication." *In re Enron Corp.*, 279 B.R. at 688. Therefore, this factor militates against the appointment of an equity committee.

23.    Finally, Appaloosa is not without other avenues to participate in these cases. As evidenced by this Motion, Appaloosa has the resources to pursue its agenda at its own expense. Furthermore, Appaloosa has standing to be heard pursuant to Section 1109(b) of the Bankruptcy Code on issues related to the Debtors' compromise of their legacy liabilities, the potential substantive consolidation of the estates, the rejection of collective bargaining agreements and General Motors' claims against the estates. Appaloosa and other Existing Equityholders may also form an unofficial ad hoc committee, which would also have standing to be heard under Section 1109(b). Depending on the ultimate outcome of these cases, Appaloosa may seek an award of its expenses under Section 503(b) of the Bankruptcy Code. Under such circumstances, the estates will not be required to bear the corresponding cost unless the Court so determines at a later time. For these reasons, the appointment of an equity committee is not warranted in these Chapter 11 cases.

WHEREFORE, the Prepetition Agent respectfully request that this Court deny the Motion and grant the Prepetition Agent such other and further relief as the Court deems just and proper.

Dated: New York, New York
January 2, 2006

        SIMPSON THACHER & BARTLETT LLP

        By: /s/ Kenneth S. Ziman
        Kenneth S. Ziman (KZ-2486)
        Robert H. Trust (RT-6660)

        425 Lexington Avenue
        New York, New York 10017
        Telephone:   (212) 455-2000
        Facsimile:   (212) 455-2502

        ATTORNEYS FOR THE PREPETITION AGENT