Martin J. Bienenstock, Esq. (MB 3001)
Michael P. Kessler, Esq. (MK 7134)
Jeffrey L. Tanenbaum, Esq. (JT 9797)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

– and –

Robert B. Weiss, Esq.
Frank L. Gorman, Esq.
HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226-3506
Telephone: (313) 465-7000
Facsimile: (313) 465-8000

Attorneys for General Motors Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | | |
|---|---|---|
| **In re** | : | |
| | : | **Chapter 11 Case No.** |
| | : | |
| **DELPHI CORPORATION, et al.,** | : | **05-44481 (RDD)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

**RESPONSE OF GENERAL MOTORS CORPORATION TO**
**MOTION OF APPALOOSA MANAGEMENT L.P. PURSUANT TO 11 U.S.C.**
**§ 1102(a)(2) FOR AN ORDER DIRECTING THE UNITED STATES TRUSTEE**
**TO APPOINT AN EQUITY COMMITTEE IN THESE CHAPTER 11 CASES**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

General Motors Corporation ("General Motors"), as and for its response

(the "Response") to the motion (the "Motion") of Appaloosa Management L.P. and

certain of its affiliates (collectively, "Appaloosa") pursuant to section 1102(a)(2) of title

11 of the United States Code (the "Bankruptcy Code") for an entry of an order directing

the United States Trustee for the Southern District of New York (the "U.S. Trustee") to

appoint an equity committee in the chapter 11 cases of Delphi Corporation ("Delphi")

and its affiliated debtors and debtors in possession (collectively, the "Debtors"),

respectfully represents:

## Response

1.     The Motion contains numerous misstatements and inaccurate

innuendoes regarding General Motors.  None of these claims are supported by any

evidence and, as discussed with specificity below, all are cloaked in vague terms like

"apparent," "rumored" and "appears."  General Motors submits this Response neither to

oppose nor support the relief requested in the Motion; however, it is compelled to correct

Appaloosa's principal misstatements relating to General Motors' involvement in these

chapter 11 cases to the extent such allegations are relied on to support the Motion.

2.     First, Appaloosa claims that General Motors is able to exercise

undue influence over Delphi, to the detriment of Delphi's shareholders.  Specifically,

Appaloosa states:

> [B]ecause GM is also the Debtors' primary US based customer and self-
> proclaimed largest creditor, with *apparent* substantial influence over the
> Debtors' operations and decision making, a central issue in these cases
> will be the validity, enforceability and appropriate treatment of GM's
> claims, if any, against the Debtors.  Simply put, GM has been historically
> and continues to be in a position of substantial influence to improve its
> own position to the detriment of shareholders.

Motion ¶ 7 (emphasis added).  The facts, however, do not support this naked contention.

Following Delphi's formation and spin-off from General Motors in 1999, Delphi has

NY2:\1601996\05\YC3W05!.DOC\72240.5726                  2

remained a wholly separate and independent corporation with its own management and an autonomous board of directors.  General Motors has not held any seats on Delphi's board of directors since General Motors' complete divestiture of Delphi stock in May 1999, and General Motors has had no influence over any employment decisions relating to Delphi's management.  Accordingly, all dealings between General Motors and Delphi are and have been on an arm's-length basis, and negotiations between the parties have historically been vigorous and, at times, contentious.

3.        Second, Appaloosa claims that General Motors "is publicly *rumored* to have urged Delphi into filing these Cases so that GM would gain leverage over the UAW in its own labor negotiations…." Motion ¶ 26 (emphasis added).  General Motors is unaware of the existence or source (other than Appaloosa) of these alleged public rumors.  More importantly, there is no substance to any such rumors.  At no point did General Motors publicly or privately recommend, advise, advocate, urge or support the filing of Delphi's chapter 11 cases.  As noted above, Delphi has its own management and board of directors, which presumably decided to commence the chapter 11 cases for the reasons publicly stated by Delphi (as an independent third party, General Motors has no first-hand knowledge of the deliberations by Delphi's management and board of directors).

4.        Finally, Appaloosa claims that "it *appears* that GM is controlling or at least possesses substantial influence over the Debtors' union negotiations…" and that General Motors "alone is in the position to compromise Delphi's equity to improve its own position not only against Delphi, but more importantly, with respect to its own relationship with organized labor." Motion ¶ 34 (emphasis added).  Once again,

Appaloosa's statement is unsupported by any facts and is shrouded in a nebulous term

(*i.e.*, "it appears"). Contrary to how things may "appear" to Appaloosa, however,

General Motors is not controlling and, in fact, *cannot* control Delphi's negotiations with

its unions. Delphi's management and its board of directors have a fiduciary duty to

negotiate and ultimately approve any agreement with Delphi's unions. Additionally, any

such agreement will be subject to Court approval and the attendant scrutiny by all parties

in interest. General Motors simply does not have the ability to control the negotiation,

entry into or approval of any agreements between Delphi and its unions. Delphi's

successful reorganization is, however, important to General Motors in its capacity as a

creditor and customer of Delphi. Delphi has publicly stated that renegotiation of

collective bargaining agreements with its unions is a key to Delphi's ability to reorganize.

See Motion For Order Under 11 U.S.C. Section 1121(d) Extending Debtors' Exclusive

Periods Within Which To File And Solicit Acceptances Of Plan Of Reorganization, Dec.

16, 2005 at ¶¶ 19-20 [Docket No. 1549]; see also Delphi Corporation, Current Report

(Form 8-K), at 2 (November 28, 2005). To that end, General Motors, through its own

connections with the UAW, has attempted to encourage and facilitate ongoing

negotiations *between Delphi and the UAW*. While General Motors hopes to help foster

negotiations, it does not control the outcome of (or, in fact willingness of Delphi or the

UAW to ultimately participate in) any negotiations.

        5.       General Motors respectfully suggests that to the extent Appaloosa

desires the appointment of an "equity committee," it concentrate on meeting its burden of

satisfying the need for "adequate representation" through the presentation of accurate and

substantiated facts, and not through "rumor and innuendo."

6.      Notice of this Response has been provided pursuant to this Court's

Order, dated October 14, 2005, establishing notice procedures in the se chapter 11 cases.

General Motors submits that no other or further notice need be provided.

Dated:  January 3, 2006
        New York, New York

/s/ Jeffrey L. Tanenbaum
Martin J. Bienenstock, Esq. (MB 3001)
Michael P. Kessler, Esq. (MK 7134)
Jeffrey L. Tanenbaum, Esq. (JT 9797)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

– and –

Robert B. Weiss, Esq.
Frank L. Gorman, Esq.
HONIGMAN MILLER SCHWARTZ
AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226-3506
Telephone: (313) 465-7000
Facsimile: (313) 465-8000

Attorneys for General Motors Corporation