SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
Douglas P. Bartner (DB-2301)
William J.F. Roll, III (WR-8996)
Andrew V. Tenzer (AT-2263)
Lynette C. Kelly (LK-7971)

Special Counsel for Delphi Corporation, et al.,
    Debtors and Debtors in Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
      In re                         :    Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :    Case No. 05-44481 (RDD)
                                    :
                       Debtors.     :    (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' RESPONSE TO LEAD PLAINTIFFS' OBJECTION TO DEBTORS'
APPLICATION FOR ORDER UNDER 11 U.S.C.§327(a), 328(a), AND 1107(b)
AUTHORIZING EMPLOYMENT AND RETENTION OF DELOITTE & TOUCHE LLP AS
INDEPENDENT AUDITORS AND ACCOUNTANTS TO DEBTORS,
EFFECTIVE _NUNC PRO TUNC_ TO OCTOBER 8, 2005

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this response (the "Response") to the Lead Plaintiffs' Objection (the "Objection")

to the Debtors' Application For Order Under 11 U.S.C.§327(a), 328(a), And 1107(b) Authorizing

Employment And Retention Of Deloitte & Touche LLP As Independent Auditors And Accountants To Debtors, Effective *Nunc Pro Tunc* To October 8, 2005 (the "Application"). In support of this Response, the Debtors respectfully represent as follows:

Preliminary Statement

1. The first sentence of the Objection is also the most enlightening. In it, the objectors identify themselves not as creditors or interest holders of the Debtors' estates but as "the Court-appointed Lead Plaintiffs in the consolidated securities class action entitled *In re Delphi Corp. Securities Litigation*, Master File No. 1:05-CV-2637 (NRB) (SDNY)" (the "Securities Litigation"). Objection, p. 1. This statement confirms what all of the Lead Plaintiffs' recent activity in these chapter 11 cases demonstrates: that the Objection is not aimed at protecting the estates or their creditors but is part of a multi-pronged effort by the Lead Plaintiffs to obtain discovery and testimony in these chapter 11 cases to assist them in the Securities Litigation. Discovery in connection with that litigation, however, is twice stayed, first by section 362 of the Bankruptcy Code, and again by express provisions of the Private Securities Litigation Reform Act, 15 U.S.C.§77z-1(b) (1995) ("PSLRA"). Both Deloitte & Touche LLP ("Deloitte & Touche") and eight of the Debtors' current officers and directors are defendants in that lawsuit,[1] which is premised on allegations of fraud in connection with the Debtors' 2005 restatement of certain transactions originally reported in their financial statements for 2003 and prior years (the "Restatement"). No party has admitted any wrongdoing or liability in connection with the Securities Litigation. The Lead Plaintiffs nevertheless argue that these allegations warrant a denial of the Application and have sought extensive discovery, which they claim is

---

[1] Lead Plaintiffs filed their Consolidated Amended Complaint (the "Complaint") in the Securities Litigation on September 30, 2005. It names as defendants, among others, Delphi, Deloitte & Touche, John D. Sheehan, Delphi's Chief Restructuring Officer, and seven of Delphi's current directors: Messrs. Brust, Bernardes, Opie, Colbert, Farr, Gottschalk, and Irimajiri.

2

necessary to help them prove these allegations, purportedly in connection with the Deloitte & Touche Application.

2. Contrary to the Lead Plaintiffs' arguments, the discovery and testimony sought does not relate to the "disinterestedness" of Deloitte & Touche. This requirement is amply shown in the Affidavit of Brock E. Plumb (the "Plumb Affidavit") filed with the Application and the Supplemental Declaration of Brock E. Plumb, attached hereto as Exhibit A (the "Supplemental Plumb Declaration"; together with the Plumb Affidavit, "Plumb Affidavits"). Tellingly, the official committee of unsecured creditors appointed in these cases has filed an objection to the Application that is limited to isolated issues, not to the Application as a whole, and no other individual creditor, shareholder, employee or other stakeholder has filed an objection to the Application. The Debtors have discussed the Application with the Office of the United States Trustee (the "U.S. Trustee") and, based on those discussions and certain additional information the Debtors have provided, believe that the U.S. Trustee, a party acting on behalf of the estates and their creditors, does not oppose the Application. Similarly, Lead Plaintiffs' argument that their objection and the discovery they seek go to Deloitte & Touche's competence is disingenuous. The Plumb Affidavits and the Declaration of Robert J. Dellinger (the "Dellinger Declaration"), attached hereto as Exhibit B, filed in support of the Application demonstrate that Deloitte & Touche is competent to perform an audit of the Debtors, that the retention of Deloitte & Touche is in the best interests of the Debtors' estates and that denial of the application will result in harm to the Debtors' estates. As described below, the Debtors have narrowed the relief they are seeking and will retain Deloitte & Touche only to perform the 2005 audit – a task that Deloitte & Touche has been working on all year.

3

3. The Lead Plaintiffs' theory – that they should be entitled to discover information relating to Deloitte & Touche's work for the Debtors over a number of years and to attempt to prove in this Court the allegations of their 257-page Complaint in order to test the competence of Deloitte & Touche to complete this year's audit – simply makes no sense. The Court should reject this thinly-veiled attempt to circumvent section 362 and the PSLRA. As demonstrated below, the pendency of the Securities Litigation and the Lead Plaintiffs' allegations are insufficient to defeat the retention of professionals selected by the Debtors. Moreover, extensive discovery with respect to such speculative assertions is unwarranted under section 327. A section 327 application may not be used in a backdoor attempt to obtain information in support of other litigation. This is particularly true in these cases, where efforts to obtain the information are stayed by two statutes.

4. As is demonstrated in the Dellinger Declaration and discussed below, the Debtors will suffer immediate and substantial harm if the Application is not granted, including increased costs and the inability to meet filing deadlines imposed by the Securities & Exchange Commission ("SEC") and debtor in possession financing covenants. Moreover, the purported risks asserted by the Lead Plaintiffs are substantially addressed by the short duration of the retention and the fact that the senior members of the audit team are entirely different from those involved prior to the Restatement. In view of all these circumstances, this Court should exercise its discretion to deny the Objection and grant the Application.

<u>Argument</u>

**A.     Deloitte & Touche Does Not Hold An Interest Adverse To The Estate And Is Disinterested**

5. Despite the Lead Plaintiffs' attempt to obfuscate the legal standards governing the Application by focusing their Objection on irrelevant facts and unproven

4

allegations, the standard that the Debtors must meet – and have met – in order to retain Deloitte & Touche in these chapter 11 cases is clear: that Deloitte & Touche is a "disinterested person" as that term is defined in title 11 of the United States Code, 11 U.S.C. §101-1330, as amended (the "Bankruptcy Code"). Section 327 of the Bankruptcy Code allows a debtor in possession, with the court's approval, to employ professionals that do not "hold or represent an interest adverse to the estate, and that are disinterested persons, to represent or assist the trustee in carrying out the debtor's duties." 11 U.S.C. § 327(a).

6. Section 101(14) of the Bankruptcy Code defines a "disinterested person," in pertinent part, as one that:

> (A) is not a creditor, an equity security holder, or an insider; . . .
>
> (D) is not and was not, within two years before the date of the filing of the petition, a director, officer, or employee of the debtor . . . ; and
>
> (E) does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with, or interest in, the debtor . . . or for any other reason.

11 U.S.C. §101(14).

7. Because the Bankruptcy Code does not define the term "interest adverse to the estate," courts determine the existence of an adverse interest on a case by case basis. *In re Caldor, Inc.*, 193 B.R. 165, 171 (Bankr. S.D.N.Y. 1996). The Second Circuit has held that to hold or represent an interest adverse to the estate means "(1) to possess or assert any economic interest that would tend to lessen the value of the bankruptcy estate or that would create either an actual or potential dispute in which the estate is a rival claimant; or (2) to possess a predisposition under circumstances that render such a bias against the estate." *In re AroChem Corp.*, 176 F.3d 610, 623 (2d Cir. 1999); *In re WorldCom, Inc.*, 311 B.R. 151, 163 (Bankr. S.D.N.Y. 2004). Courts in this district have made clear, however, that "interests are not

5

considered 'adverse' merely because it is possible to conceive a set of circumstances under which they might clash." *In re Leslie Fay Cos., Inc.*, 175 B.R. 525, 532 (Bankr. S.D.N.Y. 1994) (citing *TWI Int'l v. Vanguard Oil & Serv. Co.*, 162 B.R. 672, 675 (S.D.N.Y. 1994)).

8.  Courts have construed the "disinterested person" and the "no interest adverse to the estate" requirements of section 327(a) of the Bankruptcy Code as a single test. *In re WorldCom*, 311 B.R. at 164 (noting that the "interest adverse to the estate" language in section 327(a) overlaps with the "materially adverse interest" standard under the definition of disinterested person to form a "single test to judge conflicts"); *In re Caldor*, 193 B.R. at 171 ("[b]ecause §101(14) and 327(a) overlap, the two prongs of §327(a) are satisfied when the professional to be retained is found to be a 'disinterested person'"); *In re Leslie Fay*, 175 B.R. at 532 (quoting *In re Martin*, 817 F.2d 175, 180 (1st Cir. 1987) to state that the "twin requirements of disinterestedness and lack of adversity telescope into a single hallmark").  In applying this test, courts generally look to the totality of the circumstances and exercise their discretion in determining whether a party is disinterested and does not hold or represent an interest adverse to the estate. *See, e.g.*, *In re Caldor*, 193 B.R. at 172.

9.  In this case, the Application and supporting Plumb Affidavit, as well as the Supplemental Plumb Declaration and the Dellinger Declaration filed with this Response, amply demonstrate that Deloitte & Touche is not an "interested" party under section 101(14) of the Bankruptcy Code, that it holds no interest adverse to the Debtors, and that the totality of the circumstances warrant this Court's exercise of its discretion to grant the Application.

    a.    **Deloitte & Touche Is A Disinterested Person**

10.  Deloitte & Touche is a disinterested person as that term applies under each prong of section 101(14).  First, Deloitte & Touche is a disinterested person pursuant to section 101(14)(A) of the Bankruptcy Code in that it is neither a creditor, an equity security holder, nor

6

an insider of the Debtors.  Although Deloitte & Touche could otherwise assert a prepetition claim against the Debtors, Deloitte & Touche has agreed to waive that claim upon this Court's approval of the Application.  The case cited by the Lead Plaintiffs, *In re Andover Togs*, 2001 WL 262605 (S.D.N.Y. 2001), is plainly distinguishable in that it concerns an accounting firm that *refused* to waive its prepetition claim.  Because Deloitte & Touche has agreed to waive its prepetition claim upon approval of the Application, it would not be a creditor of the Debtors.

    11. Second, Deloitte & Touche is a disinterested person pursuant to section 101(14)(D) of the Bankruptcy Code in that it is not, and was not within the two years prior to the petition date, a director, officer, or employee of the Debtors.  The Lead Plaintiffs do not dispute this fact.

    12. Third, Deloitte & Touche is a disinterested person under section 101(14)(E) of the Bankruptcy Code in that it does not hold an interest materially adverse to the interest of the estate or any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors.  The purported conflicts of interest alleged by the Lead Plaintiffs with respect to Deloitte & Touche are based not on facts, but on mere allegations in litigation brought by the Lead Plaintiffs.  The case law in this district establishes that such allegations and speculation simply do not create a conflict or otherwise undermine Deloitte & Touche's status as a disinterested person under section 327(a) of the Bankruptcy Code.

    13. As noted above, in determining whether a professional has an interest adverse to the debtor, it is not enough that it is "possible to conceive of a situation where interests might clash."  *In re WorldCom*, 311 B.R. at 168 (citing *In re Leslie Fay*, 175 B.R. at 532).  *See also In re Caldor*, 193 B.R. at 172 (quoting *In re Leslie Fay*, 175 B.R. at 532 to state

7

that "interests are not considered 'adverse' merely because it is possible to conceive a set of circumstances under which they might clash"); *TWI Int'l*, 162 B.R. at 675 (holding that hypothesizing the emergence of conflicts is not enough to merit the disqualification of a professional); *In re O.P.M. Leasing Servs., Inc.*, 16 B.R. 932, 939 (Bankr. S.D.N.Y. 1982) (adopting a "wait and see" approach to a potential conflict, asserting that acting in a preemptive manner would interrupt the efficient administration of the bankruptcy).

    14. A recent case in this district is instructive. In *In re WorldCom*, KPMG, the debtors' auditors and tax advisors, devised for WorldCom prepetition a tax minimization strategy. Subsequent to WorldCom's chapter 11 filing, several states challenged the tax minimization strategy as illegitimate, giving rise to the possibility that the debtors would be liable to the states for additional taxes, interest, and penalties. The states also filed a motion in the bankruptcy court to disqualify KPMG as the debtors' auditors and tax advisors, arguing that the debtors' potential cause of action against KPMG arising out of the challenged strategy rendered KPMG a holder of an interest adverse to the estate. Judge Gonzalez rejected this argument and denied the motion, holding that "KPMG does *not* have an interest adverse to the interests of the estate or any class of creditors or equity holders, by reason of any direct or indirect relationship to, connection with, or interest in, the Debtors *simply because there is a speculative possibility that in the future, some events may render KPMG and the Debtors adverse*." *In re WorldCom*, 311 B.R. at 168-69 (emphasis added).

    15. The Lead Plaintiffs' Objection is founded on similar, if not identical, speculation and likewise should be overruled. The Lead Plaintiffs argue, for example, that Deloitte & Touche cannot be retained in these cases because the *potential* for cross-claims between Deloitte & Touche and the Debtors' officers and directors "preclude disinterestedness."

8

Objection at ¶44. However, as Judge Gonzalez made clear in *WorldCom*, such speculation regarding hypothetical future events is insufficient to render the professional "interested." *Id.* Contrary to the Lead Plaintiffs' assertions, the allegations of the Complaint with respect to Deloitte & Touche and the Debtors' officers and directors are unproven. As is clear from the Debtors' public filings, Delphi has not "admitted" these allegations, despite Lead Plaintiffs' false statement that there are "fraudulent accounting transactions and practices in which Delphi has admitted engaging." Objection at ¶6. Similarly, Deloitte & Touche has denied the allegations against it. These are allegations, nothing more, and do not form the basis for a finding of "interest" that would preclude Deloitte & Touche from completing the Debtors' 2005 audit.

16. The Lead Plaintiffs' other arguments regarding disinterestedness are all variations on the same theme and must fail for the same reason. Indeed, the Lead Plaintiffs' argument that the post-Restatement Deloitte & Touche team that will be completing the 2005 audit may have significant incentives to conceal Deloitte & Touche's purported fraudulent activities in prior years is premised on several layers of unproven allegations and baseless assumptions. In deciding whether a professional is eligible for retention under section 327, "horrible imaginings alone cannot be allowed to carry the day. Not every conceivable conflict must result in sending [the professional] away to lick his wounds." *In re Martin*, 817 F.2d at 183 (vacating and remanding a judgment based on the bankruptcy court's erroneous finding of adverse interest). As the case law makes clear, a finding of an adverse interest on the part of a professional chosen by the debtor requires much firmer grounding. The Objection, which is based solely on speculation, should be overruled.

17. The cases cited by the Lead Plaintiffs regarding material adverse interests do not support a contrary view. For example, *In re Angelika Films*, 246 B.R. 176 (S.D.N.Y. 2000),

9

concerned the disinterestedness of debtor's counsel after debtor's counsel filed a motion that placed the economic interest of another party over the interest of the debtor, causing a direct and tangible economic harm to the debtor's estate.  Similarly, *In re Vebeliunas*, 231 B.R. 181 (Bankr. S.D.N.Y. 1999), concerned the disqualification of counsel to the chapter 7 trustee after counsel's unequivocal statements expressing prejudice against and negative opinions about the debtor.  In this case, there is no evidence of any such actions by Deloitte & Touche against the Debtors' interests.  These cases are simply inapposite.

    18. Perhaps realizing the shaky legal ground on which their Objection rests, the Lead Plaintiffs attempt to bolster their argument by asserting that "[e]ven the appearance of conflict or impropriety must be avoided when retaining professionals in bankruptcy."  Objection at ¶ 33.  Not only is there no appearance of impropriety in this case, for the reasons discussed above, but also the cases cited by the Lead Plaintiffs make clear that mere speculation and hypothesis are insufficient to give rise to such a perception.  For example, in *In re Martin*, 817 F.2d 175, a law firm that had taken a security interest in a piece of the debtor's property to safeguard the payment of its fees appealed from the bankruptcy court's order disqualifying the firm.  The First Circuit held that this interest was not impermissible *per se*, and remanded the case to the bankruptcy court for reconsideration.  *Id.* at 183.  Contrary to the Lead Plaintiffs' argument, the case does not reverse the award of compensation to an interested attorney to avoid the appearance of conflict or impropriety.  Rather, the case calls for the bankruptcy court to use its discretion in determining whether a conflict exists and to evaluate each case in its own context.  Similarly, in *In the Matter of Codesco, Inc.*, 18 B.R. 997, 999 (Bankr. S.D.N.Y. 1982), the court approved a trustee's retention of a law firm that previously had represented the creditors' committee.  Although the court stated in *dicta* that the disinterestedness requirement in

10

section 327 also operates to prevent the appearance of a conflict, its holding makes clear that a more concrete standard is being applied.

**b.    The Immediate And Real Harm To Debtors If The Application Is Denied Outweighs The Hypothetical Risks Argued By Lead Plaintiffs**

19.    The considerable harm the Debtors would suffer should Deloitte & Touche not be retained in these chapter 11 cases weighs strongly in favor of this Court's overruling the objection and granting the Application. When evaluating proposed retentions or disqualifications under section 327, bankruptcy courts must consider not only the protection of the interests of the bankruptcy estate and its creditors, but also "the efficient, expeditious, and economical resolution of the bankruptcy proceeding." *In re AroChem*, 176 F.3d at 621 (citation omitted). This consideration is accorded such weight that, in *In re Leslie Fay*, the bankruptcy court declined to disqualify counsel, even after finding that debtor's counsel had failed to disclose a material interest adverse to the estate, on the basis of the burden that would be placed on the debtor by "the great delay and cost occasioned by the departure of the counsel with whom it has worked so long [(20 months.)]" *Id.* at 538-39.

20.    As set forth in the Dellinger Declaration, the denial of Deloitte & Touche's retention would delay publication of Delphi's 2005 financial statements until the second half of 2006, causing (i) many of Delphi's key constituencies to lose confidence in the Debtors and to reduce their business exposure to the Debtors, (ii) the Debtors' violation of a covenant in their debtor in possession financing facility, and (iii) the Debtors' non-compliance with SEC reporting requirements. Dellinger Declaration at ¶ 4, 7, 8. Denial of Deloitte & Touche's retention also would force Delphi's financial management team to divert to new auditors significant support and time that otherwise would be spent operating the business and formulating the Debtors' business plan for reorganization. *Id.* at ¶ 9. Although the Debtors have decided to change

11

auditors for 2006, which change will require a certain amount of management time and attention, this change will occur in the ordinary course of business at the start of the fiscal year and will not affect the timeliness of the Debtors' filings or require the concentrated efforts of management at year-end when the Debtors' financial statements are due. *Id.* at ¶ 12. As Mr. Dellinger states in his Declaration, the audit process for the Debtors, like that of most large corporations, is an ongoing process throughout the year that involves a large number of personnel in several countries. *Id.* at ¶ 3. Deloitte & Touche has been working on the 2005 audit all year, is familiar with the Debtors' worldwide operations, and has been paid substantial sums for the work performed thus far. *Id.* at ¶ 4, 10. It would be impossible for a new auditor to begin now and finish the 2005 audit in a timely fashion. *Id.* at ¶ 4. Moreover, such a change would be extremely costly given the amounts already paid to Deloitte & Touche. *Id.* at ¶ 10. Realistically, the only time to undergo a successful auditor transition is at the beginning of the fiscal year. *Id.* at ¶ 5.

    21. Indeed, it might well be impossible for Delphi to identify another accounting firm that would be capable of performing a complex global audit and of meeting the independence requirements for 2005. *Id.* at ¶ 6. The Debtors believe that only one of the "big four" accounting firms would have the global capabilities to audit a company the size and scope of Delphi, and therefore the only firms that could perform such an audit for 2005, should Deloitte & Touche not be retained, would be KPMG, E&Y, or PricewaterhouseCoopers. *Id.* All of these firms have performed various work for the Debtors during the course of 2005, which would make it unlikely that they could be retained under applicable regulations. *Id.* In order to meet their debtor in possession financing covenants, the Debtors must timely file an audit opinion from an independent audit firm. If Deloitte & Touche is not retained to perform the 2005 audit, the Debtors are highly unlikely to meet their SEC filing requirements and will be in violation of

12

their debtor in possession financing covenants. In this event, the Debtors may suffer a liquidity crisis and will not have access to cost-effective financing. *Id.* at ¶ 8. Thus, it is clear that a change at this time would be inefficient, slow and costly, if not outright disastrous to the Debtors given the risks associated with failing to meet SEC filing requirements. Any balance of interests thus weighs in favor of overruling the Objection.

22. Against this real and immediate harm to the Debtors absent Deloitte & Touche's retention, the Lead Plaintiffs' purported concerns about potential conflicts and the appearance of impropriety ring hollow. Moreover, any lingering concern regarding Deloitte & Touche's disinterestedness should be allayed by the brief duration of their proposed engagement. On December 7, 2005, Delphi's board of directors endorsed the recommendation of the audit committee to retain Ernst & Young LLP to audit Delphi's consolidated financial statements for 2006. *Id*. at ¶ 12. Deloitte & Touche's retention, therefore, would last only until the issuance of its audit report for the year ended December 31, 2005, an abbreviated retention period that renders unlikely the realization of any potential conflicts.

**B.      Lead Plaintiffs' Argument That Deloitte & Touche Is Not Competent To Serve As Independent Auditors And Accountants Is Disingenuous**

23. The Debtors have amply shown that Deloitte & Touche is competent to serve as independent auditors and accountants to the Debtors in these chapter 11 cases. It is undisputed that Deloitte & Touche is a national professional services firm of qualified professionals properly certified to do the type of work contemplated by the Application. With more than 1,200 partners and principals and thousands of professional staff, Deloitte & Touche is a firm that has been in the past and will be in the future competent and qualified to perform auditing and accounting services. The Debtors, in the Application, and Deloitte & Touche, in the Plumb Affidavits, have demonstrated that Deloitte & Touche is competent and disinterested. In

13

addition, due to Deloitte & Touche's prior work with and knowledge of the Debtors, it would be economically efficient to continue to retain the accounting firm to perform the 2005 audit. Dellinger Declaration at ¶10.

24.     The Lead Plaintiffs do not dispute these facts, but rather purport to question Deloitte & Touche's competence based on unproven allegations in a pending lawsuit to which both are party. Even if those allegations were relevant here – which they are not – Deloitte & Touche has taken internal measures that ensure that there is no conflict or competency issue. Prior to the issuance of its audit report for the year ended December 31, 2004 and the re-issuance of its reports of restated financial statements as of December 31, 2003 and 2002, Deloitte & Touche replaced senior members of its Delphi audit team. Supplemental Plumb Declaration at ¶3. As a result, only two current members of the audit team were involved in the audit of past transactions included in the restatements, and neither of the two was involved in audit work regarding material transactions. *Id.* Accordingly, even if the unproven allegations of the Complaint were relevant to Deloitte & Touche's competence, the audit team is free from conflicts of interest and fully competent to continue in its capacity as independent auditors and accountants to the Debtors.

25.     With respect to competence, the Lead Plaintiffs cite *In re Seeburg Prods. Corp.*, 215 B.R. 175 (Bankr. N.D. Ill. 1997), and *In re Doors and More Inc.*, 126 B.R. 43 (Bankr. E.D. Mich. 1991), two cases wholly inapplicable to the Deloitte & Touche retention. In both cases, an attorney whose undisputed conduct demonstrated gross negligence was denied retention. *In re Seeburg* concerned an attorney whose conduct was so incompetent that it "not only obstructed the judicial process, but also resulted in a sanction detrimental to his client." *Id.* at 179. In *In re Doors and More*, the attorney's lack of knowledge of bankruptcy law and his

14

failures resulting therefrom jeopardized the debtor's chances of success in its chapter 11 case. Deloitte & Touche, which is recognized worldwide as competent to perform auditing work and has been retained in numerous chapter 11 cases, cannot be compared to the incompetent and unqualified attorneys in these cases.

### C. The Objection Should Be Overruled Because It Is A Blatant Attempt By The Lead Plaintiffs To Gain Discovery Through Improper Means

26. The Lead Plaintiffs' transparent motive in pursuing the Objection is not to protect the estate and its creditors but rather to gain a tactical advantage in the Securities Litigation by obtaining discovery and testimony that otherwise is stayed both by the automatic stay under section 362 and by the PSLRA.

27. The context and timing of the Lead Plaintiffs' Objection, and their actions in pursuing discovery in these chapter 11 cases, demonstrate this improper motive. On November 15, 2005, the Lead Plaintiffs moved this Court for a modification of the automatic stay in these chapter 11 cases in order to obtain from Delphi documents relating to the Securities Litigation. As stated in detail in the Debtors' Objection To Lead Plaintiffs' Motion For Limited Modification Of Automatic Stay (the "Lift Stay Response"), filed on December 29, 2005, the Lead Plaintiffs sought a lifting of the stay in this Court before seeking such relief in the Securities Litigation in order to assist them in persuading the court in the Securities Litigation to lift the stay in effect in that action pursuant to the PSLRA. Lift Stay Response, ¶¶2-3, 13-17. On November 21, 2005, the Lead Plaintiffs agreed to adjourn that motion from November 29, 2005 until January 5, 2006, purportedly to discuss a consensual resolution with the Debtors. However, on November 23, 2005, the Lead Plaintiffs filed an objection to the Debtors' motion for authority to implement a key employee compensation program (the "KECP Objection") and, through that objection, attempted to obtain broad discovery far beyond the scope of the KECP Objection and

15

directly relating to the transactions and events underlying the Securities Litigation. Shortly thereafter, on December 2, 2005, the Lead Plaintiffs filed the Objection to the Application and again requested broad discovery relating to the Securities Litigation. As described in greater detail in the Lift Stay Response and the Debtors' objection to the Lead Plaintiffs' motion to compel deposition testimony and the production of documents, the Lead Plaintiffs' discovery requests go far beyond the scope of these matters. For example, it is difficult to determine how "[a]ll minutes of meetings of the Audit Committee from January 1, 1999 to date" or "[a]ll documents relied upon by the Company in reaching the conclusion expressed in the Company's Form 10-K . . . that "Delphi had not maintained effective internal controls over financial reporting at December 31, 2004" and "Delphi's disclosure controls and procedures were also ineffective," are narrowly tailored requests or go to the heart of retaining Deloitte for the year 2005 audit. *See* December 15, 2005 Letter from James G. Sabella to John Wm Butler, Jr., et al., ¶3(e), 3(c), attached hereto as Exhibit C. In any event, such requests are unduly burdensome. Nevertheless, the Debtors made Mr. Dellinger, the CFO of Delphi, available for deposition on December 20, 2005 regarding matters pertaining to the Application.

        28. Despite their tortured attempts to link these requests to the matters pending before this Court, the Lead Plaintiffs' orchestrated motions and objections reveal a determination to obtain discovery and testimony relating to the Securities Litigation. This motive is particularly obvious with respect to the discovery sought in connection with the Application. In the Objection, the Lead Plaintiffs request the denial of the Application or, in the alternative, that no senior member of the audit team have had involvement in prepetition audits of the Debtors. Objection, p. 2. Subsequent to the filing of the Application, the Debtors made the business decision to replace Deloitte as their auditors on a going forward basis; thus, the relief sought in

16

the Application is now limited to Deloitte's retention for 2005. Moreover, as set forth in the Supplemental Plumb Declaration, and as Mr. Dellinger testified in his deposition, the senior members of the audit team are entirely different from those who were in place prior to the Restatement. Notwithstanding the narrow scope of the Application, as well as the information provided to the Lead Plaintiffs in Mr. Dellinger's deposition, which should address the Lead Plaintiffs' professed concerns, the Lead Plaintiffs have continued to press for broad discovery that has no legitimate relation to the Application. Although the Lead Plaintiffs argue that the requested discovery relates to past work of Deloitte & Touche and thus goes to that entity's disinterestedness or competence, this argument goes too far; if this type of discovery were permitted, the Lead Plaintiffs would be entitled to prove their entire litigation in this Court in order to support their arguments on the Application. This approach would undermine the protections of the automatic stay and is contrary to the law in this district regarding the proper scope of discovery on applications for the retention of professionals. *In re WorldCom, Inc.*, 311 B.R. at 171-72 (denying a party's discovery requests in connection with a disqualification motion where the requests were "extremely broad and primarily focused on" underlying litigation with the Debtors rather than on the disqualification motion). The Objection is a thinly veiled and improper attempt to obtain discovery to assist the Lead Plaintiffs in the Securities Litigation in circumvention of the automatic stay and the PSLRA.[2]

        29.    As the Second Circuit has consistently stated in the context of motions to disqualify professionals under section 327, attempts to deprive debtors of the professionals of their choosing must be viewed with some skepticism because "disqualification has an immediate

---

[2] The Lead Plaintiffs' statement in their motion to compel that they have signed a confidentiality agreement with the Debtors is irrelevant. Although the designation of information by the Debtors as confidential would prevent its direct use in the Securities Litigation, the disclosure of such facts at this time would obviously provide an advantage to Lead Plaintiffs in obtaining discovery – an advantage that is improper given the stays imposed by the PSLRA and section 362.

adverse effect on the client by separating him from counsel of his choice . . ., disqualification motions are often interposed for tactical reasons . . ., [a]nd even when made in the best of faith, such motions inevitably cause delay." *Armstrong v. McAlpin*, 625 F.2d 433, 444 (2d Cir. 1980), *vacated by* 449 U.S. 1106.  *See also*, *Harker v. Comm'r of Internal Revenue*, 82 F.3d 806, 808 (8th Cir. 1996) ("Because of the potential for abuse by opposing counsel, 'disqualification motions should be subjected to 'particularly strict judicial scrutiny''") (citing cases).  Such disguised litigation tactics are clearly inappropriate, abusive of the Debtors, and disrespectful to this Court, and should not be suffered; the Objection should be overruled.

   WHEREFORE, the Debtors respectfully request that this Court overrule the Objection and approve the Application.

Dated:  New York, New York
        January 3, 2006

                    SHEARMAN & STERLING LLP

                    By: /s/ Andrew V. Tenzer
                        Douglas P. Bartner (DB-2301)
                        William J.F. Roll, III (WR-8996)
                        Andrew V. Tenzer (AT-2263)
                        Lynette C. Kelly (LK-7971)
                    599 Lexington Avenue
                    New York, NY 10022-6069
                    Telephone:  (212) 848-4000
                    Facsimile:  (212) 848-7179

                    Special Counsel for Delphi Corporation, et al.,
                        Debtors and Debtors in Possession