# EXHIBIT B

DELLINGER DECLARATION

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------x
: 
**In re:** : **Chapter 11**
: **Case No. 05-44481 (RDD)**
**DELPHI CORP., et al.,** :
: **Jointly Administered**
    **Debtors.** :
:
:
:
------------------------------------x

DECLARATION OF ROBERT DELLINGER IN SUPPORT OF APPLICATION FOR
ORDER UNDER 11 U.S.C. §§ 327(a), 328(a), AND 1107(b) AUTHORIZING EMPLOYMENT
AND RETENTION OF DELOITTE & TOUCHE LLP AS INDEPENDENT AUDITORS AND
ACCOUNTANTS TO DEBTORS, EFFECTIVE *NUNC PRO TUNC* TO OCTOBER 8, 2005

Robert Dellinger hereby declares under penalty of perjury, pursuant to 28 U.S.C. § 1746, as follows:

1. I am the Chief Financial Officer of Delphi Corporation ("Delphi," and together with certain of its subsidiaries and affiliates, debtors and debtors in possession in the above-captioned cases, the "Debtors"), which has an office located at 5725 Delphi Drive, Troy, Michigan. I submit this declaration (this "Declaration") based upon inquiries made by me or on my behalf in support of the Application For Order Under 11 U.S.C. §§ 327(a), 328(a) And § 1107(b) Authorizing Employment And Retention Of Deloitte & Touche LLP As Independent Auditors And Accountants To Debtors, Effective *Nunc Pro Tunc* To October 8, 2005 (the "Retention Application"). The Debtors seek to retain and employ Deloitte & Touche as their independent auditors and accountants so that Deloitte & Touche can continue to provide auditing and accounting services as described herein and consistent with the terms and conditions of the engagement letters attached as Exhibits A and B to the Retention Application and incorporated herein by reference. Except as otherwise indicated, I have personal knowledge of the matters set forth herein and, if called as a witness, would testify competently thereto.

1

2. To my knowledge based on reasonable inquiry, the Debtors would suffer significant negative ramifications should the retention of Deloitte & Touche not be allowed in these chapter 11 cases.

**Significant Time Delays**

3. If the Debtors are not permitted to retain Deloitte & Touche to complete their 2005 audit, there would be considerable time delays in publishing Delphi's 2005 financial statements, which in turn would cause significant problems for Delphi's business operations. Delphi would be obliged to retain another independent auditor to audit the company's 2005 consolidated financial statements. Although I believe that Delphi would be able to identify another independent auditing firm willing to perform Delphi's audit, there is uncertainty as to when such an audit could be performed and how long it would take. Delphi is a global business enterprise with 2004 revenues of approximately $28 billion, operating in every major industrialized country in the world. As a result, Deloitte & Touche conducts its global auditing of Delphi on a continuous, year-round basis, involving a large number of personnel in several countries. If the Debtors were forced to suspend this ongoing audit and hire a new auditor to begin a 2005 audit, I do not believe any assurances would be given by the new auditing firm as to when they would be able to complete a 2005 audit.

4. A large international corporation like Delphi normally would change auditors at or near the beginning of its fiscal year. Specifically, the timing on an auditor transition is typically in the first quarter, and it is very difficult, if not impossible, to change audit firms late in the year. To bring in a new audit firm in December would result in the firm operating under an extremely compressed time period in which it would be impossible to complete an audit within the time frame required for Securities & Exchange Commission ("SEC") reporting. An

audit firm starts its work in the first quarter and continues through the second, third, and fourth, with a large focus on the year-end audit. In respect of Deloitte & Touche specifically, the firm has been working with Delphi for 10-11 months, and all of that time and effort is part of the 2005 audit.

5. Because it is the end of 2005, I believe it would take another auditing firm months to understand the scope and nature of Delphi's global operations and then months thereafter to conduct detailed audit testing. An attempt to bring another firm up to speed in this way would take at least six months and would be extremely disruptive. Afterwards, the auditing firm would then need time to consolidate the results of its global audit work and reach a conclusion as to Delphi's consolidated financial statements. Realistically, the only time to undergo a successful auditor transition is at the beginning of the fiscal year.

6. In addition, it would be particularly difficult in Delphi's case to clear the independence requirements with any of the other large accounting firms because Delphi has used those firms to do other things such as tax work. The Debtors believe that only one of the "big four" accounting firms would have the global capabilities to audit a company the size and scope of Delphi; therefore, the three possible candidates would be KPMG, E&Y, or PricewaterhouseCoopers. Each of these firms has performed work for Delphi during 2005 and would likely not be qualified as independent auditors for that year under applicable regulations.

7. Accordingly, I believe that if forced to hire new auditors, Delphi would not be in a position to publish audited 2005 consolidated financial statements before the second half of 2006. A lack of audited financial statements would cause many of the company's key constituencies, including banks, customers, suppliers, labor unions, and state and local

governments to lose confidence in the Debtors and take actions to reduce their business exposure to the Debtors.

8. Furthermore, Delphi is required under the rules and regulations of the SEC to file audited financial statements within 75 days after the end of its fiscal year, subject to an extension of 15 days upon application to the SEC. Delphi's debtor in possession financing facility approved by this Court, the 5-Year Third Amended and Restated Credit Agreement among Delphi Corporation, as Borrower, the Several Lenders from Time to Time Parties Thereto, and JPMorgan Chase Bank, N.A., as Administrative Agent (the "DIP Facility"), requires that Delphi deliver audited financial statements to the administrative agent no later than the 90-day period allowed by the SEC.[1] Without Deloitte & Touche to complete the 2005 audit, I do not believe that Delphi would be able to comply with this requirement. As a result, the Debtors would be in violation of the terms of their debtor in possession financing and may face a liquidity crisis. This situation would be disastrous for Delphi as it would, among other things, lose its access to cost-efficient financing.

**Diversion of Management Attention Away From Business and Reorganization**

9. Another consequence of not retaining Deloitte & Touche and having to hire new auditors is that those new auditors would not be familiar with the business of the company, the financial processes, the internal controls, or the individuals responsible for recording transactions. Thus, the Delphi financial management team would be obligated to divert significant support and time to new auditors that otherwise would be spent operating the business and formulating a business plan for the reorganization of the Debtors.

---

[1] Section 6.1(a) of the DIP Facility provides that Delphi must deliver audited financial statements to the administrative agent within 110 days after the end of its fiscal year or such shorter term as required by the SEC.

4

**Significant Additional Cost**

10.     Engaging an auditor other than Deloitte & Touche would result in Delphi incurring millions of dollars of additional cost.  Prepetition, Delphi has already paid Deloitte & Touche a significant portion of the 2005 audit fee.  Delphi need only pay to Deloitte & Touche the incremental costs and expenses associated with finishing the 2005 audit (i.e., October 2005 through completion).  The cost of retaining new auditors would involve essentially paying those amounts already paid to Deloitte & Touche a second time, in addition to the incremental cost to complete the 2005 audit.  Roughly $15 to $20 million is budgeted to be paid to Deloitte & Touche for the 2005 audit, with two-thirds or three-quarters of that amount having already been paid prepetition.  Accordingly, it would be exorbitantly expensive to have to pay a new accounting and auditing firm to do the work already done by Deloitte & Touche and already paid for by Delphi.  Due to Deloitte & Touche's prior work with and knowledge of the Debtors, it would be economically efficient to continue to retain the accounting firm to perform the 2005 audit.

**Internal Changes at Deloitte & Touche Remove Risk**

11.     Prior to the issuance of its audit report for the year ended December 31, 2004 and the re-issuance of its reports of restated financial statements as of December 31, 2003 and 2002, Deloitte & Touche replaced senior members of its audit team.  These personnel changes are discussed in more detail in the Supplemental Affidavit of Brock E. Plumb.  As a result, I believe that no current members of the audit team were involved in the audit of those past transactions which were included within the scope of the audit committee's investigation and Delphi's restatement of its financial statements.

5

**2006 Audit**

12.     Finally, on December 7, 2005, after reviewing proposals from four accounting firms, including Deloitte & Touche, the audit committee of the Delphi Board of Directors selected Ernst & Young LLP to serve as independent public accountants, effective January 1, 2006, for the fiscal year ended December 31, 2006.  The Board of Directors concurred with the audit committee's selection.  This change, while it will require a certain amount of management time and attention, will occur in the ordinary course of business at the start of the fiscal year.  Accordingly, it will not affect the timeliness of the Debtors' filings or require the concentrated efforts of management at year-end when the Debtors' financial statements are due.  Thus, the Debtors seek to retain Deloitte & Touche to finish their audit of the fiscal year ended December 31, 2005 and not beyond.

13.     I declare under penalty of perjury that the foregoing is true and correct.

Dated:  Troy, Michigan
        January 3, 2005

                                By:  /s/ Robert J. Dellinger
                                    Robert J. Dellinger