# EXHIBIT C

S<small>ABELLA</small> L<small>ETTER</small>



**Grant & Eisenhofer P.A.**

Joy W. Eisenhofer
Stuart M. Grant
Megan D. McIntyre
Geoffrey C. Jarvis
Sidney S. Liebesman
John C. Kairis
Michael J. Barry
James J. Sabella*
David E. Sollinger**
─────────────
Stephen G. Grygiel†
Diane T. Zilka

Chase Manhattan Centre
1201 North Market Street
Wilmington, DE 19801
Tel: 302-622-7000 • Fax: 302-622-7100

45 Rockefeller Center, 15th Floor
630 Fifth Avenue
New York, NY 10111
Tel: 646-722-8500 • Fax: 646-722-8501

www.gelaw.com

Direct Dial: 646-722-8520
Email: jsabella@gelaw.com

Jill Agro
Jeff A. Almeida°
Noumon A. Amjed
Peter B. Andrews
James R. Banko
Jacqueline Bryks*
Cynthia A. Calder
P. Bradford deLeeuw
Lydia Ferrarese*
Benjamin J. Hinerfeld°
Gregg S. Levin†
Christine Mackintosh°
James P. McEvilly, III°

Sharon Nirmul
Russell D. Paul
Catherine Pratsinakis°
Brian M. Rostocki
Lauren E. Wagner
Marc D. Weinberg°
Kimberly L. Wierzel
Michelle T. Wirtner

° Admitted in NJ & PA Only
I Admitted in MA & DC Only
† Admitted in ME & MA Only
• Admitted in NY Only
• • Admitted in MD, NY & DC Only
)( Admitted in NY & Italy Only
* Admitted in PA Only

December 15, 2005

Via Facsimile Transmission
and First Class Mail

John Wm. Butler, Jr., Esq.
John K. Lyons, Esq.
Ron E. Meisler, Esq.
David E. Springer, Esq.
Matthew J. Micheli, Esq.
Skadden Arps Slate Meagher & Flom LLP
333 West Wacker Drive, Suite 2100
Chicago, IL 60606

Stuart J. Baskin, Esq.
Brian H. Polovoy, Esq.
Shearman & Sterling LLP
599 Lexington Avenue
New York, New York 10022-6069

Re:  Discovery Request Relating to Lead Plaintiffs' Objection to Debtors'
     Application for Order Under 11 U.S.C. §§ 327(A), 328(A) And 1107(B)
     Authorizing Employment And Retention, Nunc Pro Tunc to October 8, 2005, of
     Deloitte & Touche LLP As Independent Auditors and Accountants To Debtors
     ("Lead Plaintiff's Deloitte Objection")

Dear Counsel:

We represent the Teachers' Retirement System of Oklahoma, the Public Employees' Retirement System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H. and Stichting Pensioenfonds ABP (collectively, "Lead Plaintiffs"), the Court appointed Lead

John Wm. Butler, Jr. Esq. *et al.*
December 15, 2005
Page 2

Plaintiffs in the consolidated securities class action entitled *In re Delphi Corp. Securities Litigation*, Master File No. 1:05-CV-2637 (NRB)(SDNY).

This confirms your agreement to make Robert J. Dellinger available for deposition on Tuesday, December 20, 2005 from 1pm to 5pm at the offices of Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York in connection with the Objection.[1] In anticipation of Mr Dellinger's deposition and in connection with the Objection, we request that you produce the following documents and answer the following interrogatories by no later than noon on Monday, December 19, 2005:[2]

1. Please identify each witness that you intend to call at the hearing in support of the Deloitte Application and a summary of each such witness's expected testimony;

2. Please identify the following persons:

    (a) Deloitte professional personnel who worked on Deloitte's pre-petition Delphi engagements;

    (b) Deloitte professional personnel who it is anticipated will work on Deloitte's engagements for the Debtor;

3. Please produce the following documents:

    (a) All documents relied on by Delphi's Audit Committee in reaching its conclusions, as reported in the Form 8-K filed with the SEC on or about March 4, 2005 ("March 4, 2005 8-K") that the Company "did not have effective controls related to the administration and accounting for contracts" and that it "does not have adequate controls to identify and analyze the terms and conditions, both written and unwritten, of new contracts;"

    (b) All documents relied on by the Company in reaching its conclusion, as reported in the March 4, 2005 Form 8-K that "the audited financial statements

---

[1] The term "Objection" means Lead Plaintiffs' Objection to Debtors' Application for Order Under 11 U.S.C. §§ 327(A), 328(A) And 1107(B) Authorizing Employment And Retention, Nunc Pro Tunc to October 8, 2005, of Deloitte & Touche LLP As Independent Auditors and Accountants To Debtors.

[2] For purposes of Debtors' response to this letter, the Uniform Definitions in Discovery Requests set forth in Civil Rule 26.3 of the Local Rules of the United States District Courts for the Southern District of New York, incorporated by reference in Rule 7026-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") shall apply to this request for information and documents. Further, the requirements of Rules 7033-1 and 7034-1 of the Local Rules are incorporated herein. The term "Delphi" or the "Company" shall refer to Delphi Corporation. The term "Deloitte" shall refer to Deloitte & Touche LLP. Reference to the "Deloitte Application" means the Application for an Order Under 11 U.S.C. §§ 327(A), 328(A) And 1107(B) Authorizing Employment And Retention, Nunc Pro Tunc to October 8, 2005, of Deloitte & Touche LLP As Independent Auditors and Accountants To Debtors.

John Wm. Butler, Jr. Esq. et al
December 15, 2005
Page 3

and related independent auditors' reports for 2001 and subsequent periods . . . should no longer be relied upon and a restatement will be required;"

(c) All documents relied upon by the Company in reaching the conclusion expressed in the Company's Form 10-K for the year ended December 31, 2004, filed with the SEC on June 30, 2005 (the "Restatement"), that "Delphi had not maintained effective internal controls over financial reporting at December 31, 2004" and "Delphi's disclosure controls and procedures were also ineffective;"

(d) All memoranda on internal controls, management letters and similar documents submitted by Deloitte to the Company or its Audit Committee from January 1, 1999 to date;

(e) All minutes of meetings of the Audit Committee from January 1, 1999 to date;

(f) All memoranda and reports submitted by Deloitte to the Audit Committee from January 1, 1999 to date;

(g) All memoranda and reports submitted by Deloitte to the Company relating to problems encountered during any of Deloitte's audits of the Company's financial statements;

(h) All documents relied on by the Company in preparing the Restatement including all documents supporting the following statements set forth in the Restatement:

  i. Delphi did not recognize certain liabilities or appropriately defer recognition of payments and credits that were received in conjunction with agreements for future information technology services. In addition, the investigation identified other rebate transactions occurring between 1999 and 2004 in which the payments and credits received by Delphi from suppliers were tied to agreements for the provision of future services or products, and for which Delphi recognized the payment or credit when received rather than as the services were performed or products were purchased. In addition, in certain of these transactions, credits were accrued without sufficient certainty of the collectibility of the amount recorded. The impact of these adjustments on originally reported retained earnings at December 31, 2001 and on 2002 and 2003 pre-tax income is $(86) million, $15 million and $8 million, respectively;

  ii. Delphi improperly deferred recognition of approximately $22 million of payments made for system implementation services in 2002. These payments should have been recorded as expense when services were rendered, rather than deferred and recorded as an expense in later periods;

John Wm. Butler, Jr. Esq. *et al.*
December 15, 2005
Page 4

    iii. In 1999 and 2000, Delphi improperly recorded asset dispositions, in a series of transactions, amounting to approximately $145 million of indirect materials to an indirect material management company. Delphi recorded pre-tax income of approximately $60 million in 1999 and an additional $16 million in 2000 from the transactions. The transactions should not have been accounted for as asset dispositions but rather as financing transactions, principally because Delphi had an obligation to repurchase such materials. The gain recognized at the time of sale and subsequent expense recognized in periods when materials were repurchased has been eliminated. The pre-tax operating income effect primarily reflects earlier recognition of valuation allowances related to this material resulting in a decrease in retained earnings at December 31, 2001 of $50 million and a reduction of $45 million in the pre-tax loss for 2003. The cash flow effect of accounting for these transactions as financings is to reclassify approximately $138 million and $33 million of cash flow from operations to cash flow from financing activities in 1999 and 2000, respectively. In 2002 and 2003, Delphi repurchased certain indirect materials from the indirect material management company, recording a portion of the material repurchased as assets and writing-off the remainder;

    iv. In 2000 and 2001, Delphi entered into several transactions, in each case improperly recording the transaction as a disposal of inventory to a third party and repurchasing the same inventories in subsequent periods. Each of these transactions should have been accounted for as a financing transaction, not a disposal. Specifically, in the fourth quarter of 2000, Delphi entered into transactions, one for approximately $70 million, a second to a different third party for approximately $200 million, and a third, also with a different third party, for approximately $7 million. In the first transaction, Delphi recorded a disposal of inventory at book value; in the second, which involved precious metals, Delphi recorded a disposal of inventory at a gain of approximately $6 million, and in the third, Delphi recorded a disposal of inventory of a gain of approximately $1 million. In the first and fourth quarters of 2001, Delphi disposed of $10 million and $9 million, respectively of inventory at book value. Recording the fourth quarter transactions as inventory disposals resulted in the recognition of LIFO inventory gains that increased pre-tax income for the year ended December 31, 2000 by approximately $100 million. Finally, in the case of the $70 million transaction in 2000 and each of the transactions in 2001, Delphi recorded an account receivable for the purchase price, and then allowed the third party to settle the account receivable using cash received through financing arranged by Delphi. As a result, Delphi received no increased cash flow in the quarter the inventory was sold. Because Delphi changed its accounting for inventories from the LIFO method to the first-in-first-out method

John Wm. Butler, Jr. Esq. *et al*
December 15, 2005
Page 5

> (FIFO) in 2003, and generally accepted accounting principles required the restatement of its historical financial statements to give retroactive effect to the accounting change, the transactions' impact on LIFO reserves had been previously eliminated. Accordingly, the impact of these transactions on originally reported pre-tax income was to reduce 2000 pre-tax income by approximately $7 million and increase 2001 pre-tax income by approximately $6 million. The cash flow statement impact on originally reported results is to reclassify approximately $200 million included in 2000 cash flow from operations to cash provided by financing activities and to conversely increase 2001 cash flow from operations and cash used for financing activities each by approximately $200 million;

v. Delphi improperly accounted for $202 million in cash payments made to its former parent in calendar year 2000 as a pension settlement agreement. The payment should have been accounted for as a settlement of warranty claims and should have been expensed or charged against the warranty accrual in 2000 rather than reflected as an adjustment to post retirement obligations and amortized over future periods. Furthermore, with respect to $85 million in credits received in 2001 from its former parent, Delphi determined that $30 million of such credits were improperly recorded as a reduction to expense in 2001 and 2002. The credits should have been recognized as a reduction to warranty obligations when utilized. The net effect of these changes is to reduce 2001 pre-tax income by $30 million, reduce 2002 pre-tax income by $20 million and increase 2003 pre-tax income by $20 million. In addition, in conjunction with a separate agreement, Delphi should have recognized a $10 million warranty obligation to its former parent in the first quarter of 2003. This adjustment has the effect of reducing 2003 pre-tax earnings by $10 million. The income impact of the warranty settlement adjustments is partially offset by the reversal of a portion of pension expense being recognized in conjunction with the original accounting treatment, $7 million, $0 and $18 million in 2001, 2002 and 2003 respectively;

vi. Delphi identified obligations that were not properly accrued for at the end of an accounting period. Delphi also identified other accounting adjustments that were not recorded in the proper period. These out of period adjustments were not material to the financial statements as originally reported; however, as part of the restatement, are being recognized in the period in which the underlying transaction occurred. The impact of these adjustments on originally reported pre-tax income for 2002 and 2003 is $(14) million and $(34) million, respectively;

John Wm. Butler, Jr. Esq. *et al.*
December 15, 2005
Page 6

(i) All documents supporting any additional adjustments to the financial statements that were included in the Restatement, not specifically identified in question 2(i) above;

(j) All internal accounting papers reviewed by or provided to Deloitte relating to the transactions that are the subject of the Restatement;

(k) All documents evidencing any compensation paid to Deloitte or affiliate of Deloitte, including Deloitte FAS, Deloitte Consulting, or Deloitte Tax, for fiscal year ended December 31, 2004 for audit and/or non-audit related services;

(l) All engagement letters relating to the retention of Deloitte or affiliates of Deloitte, including Deloitte FAS, Deloitte Consulting, or Deloitte Tax, for audit or non-audit related services;

(m) Any and all documents evidencing Deloitte's consideration during the period covered by the Restatement of the following "red flags" of potential accounting misfeasance:

  i. Management compensation incentives specifically tied to the Company' financial metrics and huge annual bonuses for achieving these measures of success;

  ii. Delphi's adoption of an "aggressive inventory management" program in 2000 and other cost-cutting initiatives;

  iii. Delphi's management's display and/or communication of an appropriate attitude regarding internal controls and the financial reporting process;

  iv. The competency and/or qualifications of Delphi's accounting, information technology, or internal auditing staff;

  v. Large transactions not in the ordinary course of business, such as Delphi's inventory and asset disposal transactions with Setech, BBK and Bank One;

  vi. Delphi's accounting for transactions with GM, including the accounting for pension benefits and warranty obligations;

(n) All documents concerning Deloitte's retention to design and implement SAP or any other financial information system in 1999 and 2000;

(o) All documents reflecting Deloitte's review of the Company's financial reporting systems in connection with its development and/or design of a financial reporting system for the Company in 1999 and 2000;

John Wm. Butler, Jr. Esq. *et al.*
December 15, 2005
Page 7

    (p) All documents constituting the Company's assessment of Deloitte's performance of its audit and/or non-audit related services pre-petition including all communications by the Audit Committee to management concerning any assessment of Deloitte's performance;

    (q) All documents relating to any inquiry or investigation conducted by the Company into the transactions that were restated in the Restatement;

    (r) All documents constituting communications between the Company and Deloitte relating to the Restatement;

    (s) All documents reflecting any measures taken by Deloitte to modify its audit plan in response to the Restatement; and

    (t) All documents evidencing any discussions between Deloitte and the Company prior to and following the filing of the Company's Chapter 11 petition, relating to the retention of Deloitte for any post-petition services.

4. All documents relating to the Company's decision not to engage Deloitte for the audit of the Company's financial statements for the year ending December 31, 2006;

5. All documents relating to the Company's decision to hire Ernst & Young LLP as its outside auditor for year ending December 31, 2006.

In addition, as you agreed in today's meet and confer in connection with the Objection, we look forward to your informing us on Monday whether you have authority to accept trial subpoenas for the members of Delphi's audit committee, including the following individuals: Robert H. Brust, Oscar De Paula Bernardes Neto, Cynthia A. Niekamp, John D. Opie, and Thomas H. Wyman.

                                                Sincerely,

                                                James G. Sabella

cc:    Michael Elkin, Esq. (Via Facsimile)
       Brad Beckworth, Esq. (Via Facsimile)
       Michael Yarnoff, Esq. (Via Facsimile)
       John P. Coffey, Esq. (Via Facsimile)