UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------x
                                                       :
        In re                                          :
                                                       :  Chapter 11
DELPHI CORPORATION, et al.,                            :
                                                       :  Case No.  05–44481 (RDD)
                        Debtors.                       :
                                                       :  (Jointly Administered)
                                                       :
------------------------------------------------------x

FINAL ORDER UNDER 11 U.S.C. §§ 105, 362, AND 541 AND FED. R.
BANKR. P. 3001 (A) ESTABLISHING NOTIFICATION PROCEDURES
APPLICABLE TO SUBSTANTIAL HOLDERS OF CLAIMS AND EQUITY
SECURITIES AND (B) ESTABLISHING NOTIFICATION AND HEARING
PROCEDURES FOR TRADING IN CLAIMS AND EQUITY SECURITIES
("FINAL TRADING ORDER")

Upon the motion, dated October 8, 2005 (the "Motion"), of Delphi Corporation ("Delphi")

and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above

captioned cases (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 105, 362, and 541

and Fed. R. Bankr. P. 3001(e) establishing notice and hearing procedures for trading in claims

against, and equity securities in, the Debtors; and upon the Affidavit Of Robert S. Miller, Jr. In

Support Of Chapter 11 Petitions And First Day Orders, sworn to October 8, 2005; and upon the

record of the hearing held on the Motion; and this Court having determined that the relief

requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and

other parties-in-interest, while at the same time preserving, to the greatest extent possible, a

liquid trading market in the claims against the Debtor; and it appearing that proper and adequate

notice of the Motion has been given and that no other or further notice is necessary; and after due

deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion is GRANTED and approved in accordance with the terms set forth below on

a final basis.

2.      This final order (the "Final Order") shall supersede the Interim Order Under 11 U.S.C. §§

105, 362, And 541 And Bankruptcy Rule 3001 (A) Establishing Notification Procedures

Applicable To Substantial Holders Of Claims And Equity Securities And (B) Establishing

Notification And Hearing Procedures For Trading In Claims And Equity Securities entered by

this Court on October 12, 2005 (the "Interim Order") from the time of entry of this Final Order

(the "Order Time").  There shall be no sanction for any violation of the Interim Order that would

not have been a violation of this Final Order.

3.      All objections to the Motion not previously withdrawn are overruled.

4.      <u>Notice of Status as a Substantial Equityholder</u>.  This order does not extend the time for

serving on the Debtors and their counsel a notice as required by paragraph 3(a) of the Interim

Order (a "Notice of Status as a Substantial Equityholder").  Any Entity that is currently a

Substantial Equityholder (as defined herein) should have already served such a notice on the

Debtors and their counsel.  Failure to comply with this obligation may result in the imposition of

sanctions. Attached hereto as Exhibit 1A is a form for filing a Notice of Status as a Substantial

Equityholder.  No Entity may become a Substantial Equityholder without following the

procedures set forth in paragraph 5 of this Final Order.

5.      <u>Restrictions and Procedures for Trading in Stock</u>.  Any Entity that, after the Order Time,

2

(a)      is not a Substantial Equityholder and wishes to purchase or otherwise acquire Tax Ownership of an amount of Stock that would cause the Entity to become a Substantial Equityholder;

(b)      is a Substantial Equityholder and wishes to purchase or otherwise acquire Tax Ownership of any additional Stock; or

(c)      is a Substantial Equityholder and wishes to sell or otherwise dispose of Tax Ownership of any Stock,

must, prior to the consummation of any such transaction, file with the Court (at the Entity's

election, in a redacted form that does not include such Entity's taxpayer identification number

and the aggregate principal amount of Stock that such Entity beneficially owns), and serve on the

Debtors, their counsel, and counsel for the Creditors' Committee, an unredacted notice in the

form attached hereto as Exhibit 1B, in the case of a proposed acquisition of Stock, or Exhibit 1C,

in the case of a proposed disposition of Stock (either such notice, a "Proposed Stock Transaction

Notice" and such notices together with the Notice of Status as a Substantial Equityholder, the

"Notices").  The Debtors shall consult with counsel for the Creditors' Committee prior to

responding to any Proposed Stock Transaction Notice.  The Debtors shall have 15 calendar days

after receipt of a Proposed Stock Transaction Notice to file with this Court and serve on such

Substantial Equityholder an objection to any proposed transfer of equity securities described in

the Proposed Stock Transaction Notice and seek an order of this Court prohibiting such proposed

transfer on the grounds that such transfer may adversely affect the Debtors' ability to utilize their

Tax Attributes.  If the Debtors file an objection and seek an order of this Court prohibiting such

proposed transfer, this Court shall hold a hearing on such order no later than the earlier of the

next omnibus hearing date (provided that service of the objection and request for a hearing

thereon is made in accordance with the service and notice requirements of the case management

3

order) or 30 calendar days after the Debtors file such objection, and the transaction will not be

effective unless and until either this Court issues a final and nonappealable order denying the

order sought by the Debtors or the objection is withdrawn.  If the Debtors do not object within

such 15 calendar day period, such transaction may proceed solely as set forth in the Proposed

Stock Transaction Notice.  Further transactions within the scope of this paragraph must be the

subject of additional notices as set forth herein, with an additional 15 calendar day waiting period.

6.      Restrictions and Procedures for Trading in Covered Claims.

     (a)      Any Entity that, after the Order Time,

       (i)      is not a Substantial Claimholder and purchases or otherwise acquires Tax Ownership of an amount of Covered Claims that causes the Entity to become a Substantial Claimholder; or

       (ii)      is a Substantial Claimholder and purchases or otherwise acquires Tax Ownership of any additional Covered Claims,

will have an obligation, in the event that the Court issues a Sell Down Order at the request of the

Debtors pursuant to paragraph 7, to sell or otherwise transfer Tax Ownership of an aggregate

amount of Covered Claims sufficient to prevent such Entity from having Tax Ownership of an

amount of the reorganized Debtors' stock as a result of the implementation of the 382(l)(5) Plan

that exceeds the greater of (A) the Applicable Percentage or (B) the percentage specified in the

Sell Down Notice applicable to such Entity pursuant to paragraph 7; provided, however, that

such Entity shall not be required to make any sale or other transfer of Tax Ownership of Covered

Claims that would result in such Entity having Tax Ownership of an aggregate amount of

Covered Claims that is less than the greater of (A) the Threshold Amount, as revised from time

to time; and (B) such Entity's Protected Amount.

4

(b)        In order to permit reliance by the Debtors upon Treasury Regulation section

1.382-9(d)(3), any Entity that participates in formulating any chapter 11 plan of reorganization of

or on behalf of the Debtors (which shall include, without limitation, making any suggestions or

proposals to the Debtors or their advisers with regard to such a plan), shall not, and shall not be

asked to, disclose (or otherwise make evident) to the Debtors that any Covered Claims of which

such Entity has Tax Ownership are Newly Traded Covered Claims (the "Participation

Restriction").  For this purpose, the Debtors acknowledge and agree that the following activities

shall not, where in pursuing such activities the relevant Entity does not disclose (or otherwise

make evident) to the Debtors that such Entity has Tax Ownership of  Newly Traded Covered

Claims, constitute a violation of the Participation Restriction: filing an objection to a proposed

disclosure statement or to confirmation of a proposed plan of reorganization, negotiating the

terms of, or voting to accept or reject, a proposed plan of reorganization, reviewing or

commenting on a proposed business plan, membership on a Creditors' Committee or an ad hoc

committee, providing information to the Debtors' counsel on a confidential basis, or taking any

action required by the Interim Order or this Final Order.  Any Entity found by the Court to have

willfully violated the Participation Restriction, and who, as a result, would prevent the Debtors

from implementing a 382(l)(5) Plan, shall be required to dispose of Newly Traded Covered

Claims of which such Entity has Tax Ownership (subject to the Equity Forfeiture Provision

described in paragraph 9) to the extent necessary to protect the Debtors' ability to effect

successful implementation of the 382(l)(5) Plan.  For the avoidance of doubt, but subject to the

proviso in paragraph 6(a) above, (i) such Entity shall not be permitted to retain Tax Ownership

of any Newly Traded Covered Claims if a Sell Down Order has been or is subsequently issued

5

pursuant to paragraph 7(b), and (ii) if a Claims Trading Notice Order has been issued pursuant to

paragraph 7(e), such Entity shall only be permitted to retain Tax Ownership of Newly Traded

Covered Claims to the extent that such retention would not impair the reasonable "cushions"

referred to in paragraph 7(c).  Prior to taking any action to enforce the foregoing two sentences,

the Debtors shall consult with counsel for the Creditors' Committee.

(c)    Any Entity that for the first time enters into a transaction described in

subparagraphs (a)(i) or (a)(ii) of this paragraph 6 shall, not later than the later of (i) 15 calendar

days following the transaction and (ii) 15 calendar days following the date of entry of this Final

Order, serve on the Debtors, counsel for the Debtors, and counsel for the Creditors' Committee a

notice in the form attached hereto as Exhibit 2A (a "Notice of Consent" and such Entity a

"Consenting Claimholder"); provided, however, that if the transaction occurs after the Debtors

have moved the Court for entry of a Sell Down Order pursuant to paragraph 7(b) or a Claims

Trading Notice Order pursuant to paragraph 7(e), the Consenting Claimholder shall serve the

Notice of Consent on the Debtors, their counsel, and counsel for the Creditors' Committee no

later than five (5) calendar days following the transaction.  An Entity may file a Notice of

Consent at any time prior to entering into any transaction described in subparagraphs (a)(i) or

(a)(ii).  Any Entity that does not wish to file a Notice of Consent may not enter into a transaction

described in subparagraphs (a)(i) or (a)(ii).  For the avoidance of doubt, an Entity shall be

required to file only one Notice of Consent.

7.    Sell Down Procedures.

(a)    Reporting of Substantial Claimholder Status.  If necessary to assess the feasibility

of implementing a 382(l)(5) Plan and the need for petitioning the Court for a Sell Down Order

6

(as defined below), the Debtors, after consultation with and provision of such information as is

reasonably requested by counsel for the Creditors' Committee, may file with the Court and

further publish and serve in the manner specified in paragraph 12 a notice (the "Reporting

Notice") requiring each Substantial Claimholder, within 30 calendar days of the Debtors' filing

of the Reporting Notice with the Court, to serve on the Debtors, their counsel, and counsel for

the Creditors' Committee, a notice in the form attached hereto as Exhibit 2B (a "Substantial

Claimholder Notice").  Additionally, the Debtors shall serve the Reporting Notice on each

Consenting Claimholder on the day of the Debtors' filing of the Reporting Notice with the Court.

An Entity that is uncertain whether or not it is a Substantial Claimholder may serve a Substantial

Claimholder Notice in the manner described above in order to preserve its rights under this Final

Order.  An Entity serving a Substantial Claimholder Notice in the manner described above shall

not be required to file the Substantial Claimholder Notice with the Court.  For the avoidance of

doubt, the Debtors will not be precluded from filing more than one Reporting Notice pursuant to

this subparagraph (a).

(b)      Petition for Sell Down Order and Notification Procedures.  After filing a 382(l)(5)

Plan and Disclosure Statement with respect thereto with the Court, but no later than the

expiration of the 75-day period beginning with the date on which the Debtors file a Reporting

Notice with the Court, the Debtors may, in consultation with counsel for the Creditors'

Committee, file a motion with the Court for the issuance of an order (the "Sell Down Order")

that, subject to the proviso in paragraph 6(a), (i) authorizes the Debtors to issue Sell Down

Notices to each Entity that has timely filed a Substantial Claimholder Notice showing Tax

Ownership of Covered Claims that, pursuant to the terms of the 382(l)(5) Plan (and prior to

7

giving effect to the Sell Down Order), would entitle such Entity to acquire Tax Ownership of more than the Applicable Percentage of the equity of the reorganized Debtors (a "Potentially Substantial New Equityholder") and (ii) provides that any Entity other than a Potentially Substantial New Equityholder shall not be entitled to acquire Tax Ownership of more than the Applicable Percentage of the equity of the reorganized Debtors (or consideration in lieu thereof) if the 382(l)(5) Plan is consummated.  The motion for a Sell Down Order shall be published and served in the manner described in paragraph 12.  Each Potentially Substantial New Equityholder shall be served with a copy of the motion and the Sell Down Notice applicable to such Entity. Counsel for the Creditors' Committee shall be served with a copy of the motion and all Sell Down Notices.  For the avoidance of doubt, the Debtors will not be precluded from filing more than one motion for the issuance of a Sell Down Order pursuant to this subparagraph (b).

Each Sell Down Notice shall indicate (i) the Debtors' calculation of the percentage of the equity of the reorganized Debtors of which the Potentially Substantial New Equityholder would otherwise acquire Tax Ownership under the terms of the 382(l)(5) Plan, based on the Substantial Claimholder Notice filed by such person (such person's "Preliminary Percentage"), and (ii) the percentage of equity of the reorganized Debtors of which such person will be permitted to acquire Tax Ownership under the 382(l)(5) Plan, based on a proportionate reduction to the Preliminary Percentage of each Potentially Substantial New Equityholder (except to the extent that the Debtors determine that such a reduction would result in the requirement that a Potentially Substantial New Equityholder sell or otherwise transfer Covered Claims that are not Newly Traded Covered Claims).  For instance, if Potentially Substantial New Equityholders are required to reduce their Preliminary Percentage by 20%, a Potentially Substantial New

8

Equityholder whose Preliminary Percentage was 15% generally would be required to sell

Covered Claims such that the Substantial Equityholder would be entitled to receive no more than

12% of the equity of the reorganized Debtors under the 382(l)(5) Plan.  If a Potentially

Substantial New Equityholder holds more than one category of Covered Claims, the category or

categories of Covered Claims to be sold in order to comply with the Proposed Sell Down Notice

will be left to the discretion of the Potentially Substantial New Equityholder.

       (c)       Procedures for Objection to a Sell Down Notice.  A Potentially Substantial New

Equityholder in receipt of a Sell Down Notice will be permitted to object on any one or more of

the following grounds: (i) the Sell Down Notice applicable to it contains a mathematical error, (ii)

compliance with the Sell Down Notice applicable to it would require the Potentially Substantial

New Equityholder to reduce its Tax Ownership of Covered Claims below its Protected Amount

or would require it to transfer Tax Ownership of Covered Claims that are not Newly Traded

Covered Claims, and (iii) the Debtors' decision to protect the ability to implement a plan utilizing

section 382(l)(5) of the Internal Revenue Code through the issuance of the Sell Down Notices is

not a reasonable exercise of the Debtors' business judgment.  If an objection described in clause

(i) or (ii) is filed, the Debtors shall be permitted to serve new Sell Down Notices to any

Potentially Substantial New Equityholder (including the objecting Potentially Substantial New

Equityholder) and such new Sell Down Notices shall also be subject to the procedures of this

paragraph 6(c).  If an objection described in clause (iii) is raised by a Potentially Substantial New

Equityholder or by the Creditors' Committee, the Debtors will be required to present to the Court

evidence regarding:

9

(A)    the reasonably expected range of tax attributes available to be carried over under the 382(l)(5) Plan to reduce the future U.S. federal income tax liabilities of the Debtors, taking into account, among other things, anticipated reductions in tax attributes under section 108(b) of the Internal Revenue Code that will occur as a result of the implementation of the 382(l)(5) Plan, anticipated deductions arising from payments made under the 382(l)(5) Plan, the extent to which the Debtors anticipate future U.S. federal income tax liability that could be reduced by such tax attributes, and the reasonable likelihood that such tax attributes could be used prior to expiration;

(B)    the basis for the Debtors' belief that the reduction in holdings required by the Sell Down Order (and implemented by the Sell Down Notices) are reasonably necessary and appropriate to ensure that the ownership requirements of section 382(l)(5) of the Internal Revenue Code will be satisfied in connection with the 382(l)(5) Plan; and

(C)    the basis for the Debtors' belief that there is a reasonable possibility that utilization of section 382(l)(5) of the Internal Revenue Code will be more beneficial to the Debtors and their estates than utilizing section 382(l)(6) of the Internal Revenue Code.

In evaluating the evidence presented by the Debtors with respect to the appropriateness of the reductions in holdings required by the Sell Down Order, substantial deference will be given to the Debtors' determination that reasonable "cushions" are appropriate in making determinations regarding satisfaction of the ownership requirements of section 382(l)(5) of the Internal Revenue Code.  For instance, in order reasonably to ensure that a particular Substantial Claimholder will acquire Tax Ownership of less than 5% of the equity of the reorganized Debtors under the terms of the 382(l)(5) Plan, an Applicable Percentage of 4.75% will be presumed reasonable if the 382(l)(5) Plan provides for the issuance of only one class of equity of the reorganized Debtors, and substantial deference will be given to the Debtors' determinations regarding the Applicable Percentage if the 382(l)(5) Plan contemplates the issuance of more than one class of equity of the reorganized Debtors.  In addition, in order reasonably to ensure that

10

more than 50% of the equity of the reorganized Debtors will be held by holders of "pre-change"

equity interests or "qualified creditors" in respect of their holdings of "pre-change" equity

interests or "qualified indebtedness" (within the meaning of Treasury Regulations section

1.382-9(d)), it will be presumed reasonable if the Sell Down Notices are intended to ensure that

55% of the equity of the reorganized Debtors would be expected to be held by a combination of

(i) holders with Tax Ownership of less than the Applicable Percentage of such equity and (ii)

holders whose receipt of such equity is clearly in respect of "qualified claims" or "pre-change"

equity interests.

   In evaluating the evidence presented by the Debtors with respect to the relative benefits

of utilization of section 382(l)(5) of the Internal Revenue Code, it shall be the Debtors' burden of

proof to demonstrate to the satisfaction of this Court that the Debtors' determination should be

upheld by this Court.

   Unless the Court determines otherwise for good cause shown, a Sell Down Order and the

related Sell Down Notices will remain effective notwithstanding amendments to the 382(l)(5)

Plan; provided, however, that if the Debtors withdraw the 382(l)(5) Plan or if there is no longer a

reasonable possibility that Section 382(l)(5) of the Internal Revenue Code will be utilized, the

Sell Down Notices will have no further effect.  In the event that the Debtors withdraw the

382(l)(5) Plan or determine that there is no longer a reasonable possibility that Section 382(l)(5)

of the Internal Revenue Code will be utilized, the Debtors shall promptly post a notice of such

withdrawal or determination on the Case Information Website.

11

(d)    <u>Procedures for Implementing a Sell Down Order</u>.  Each transfer of Covered

Claims required by a final Sell Down Notice shall occur prior to the later of (i) the date that is ten

calendar days after the date of confirmation of the 382(l)(5) Plan, (ii) the date that is 60 calendar

days after receipt of the Sell Down Notice and (iii) the date specified in all of the Sell Down

Notices.

Once a Potentially Substantial New Equityholder has transferred its Covered Claims in

accordance with the preceding paragraph, such Entity (i) shall, no later than five calendar days

following the latest date for completing such transfer in accordance with the preceding paragraph,

serve on the Debtors, their counsel, and counsel for the Creditors' Committee a notice in the form

attached hereto as Exhibit 2C (a "Notice of Completed Sell Down") and (ii) under no

circumstances shall acquire additional Covered Claims in a manner that would increase the

amount of the reorganized Debtors' equity to which such Entity would be entitled, pursuant to

the implementation of the 382(l)(5) Plan, above the percentage specified in the Sell Down Notice

applicable to such Entity.

(e)    <u>Procedure if no Sell Down Notices are Required</u>.  If the Debtors determine, based

on the Substantial Claimholder Notices filed in response to the Reporting Notice, that no Sell

Down Notices appear necessary in order to implement the 382(l)(5) Plan, the Debtors may move

the Court for an order requiring advance notice of certain acquisitions of Covered Claims (the

"Claims Trading Notice Order"). Under the Claims Trading Notice Order,

(i)    any Potentially Substantial New Equityholder proposing to acquire
Covered Claims in a transaction following which such Entity would have Tax Ownership of
Covered Claims that, pursuant to the terms of the 382(l)(5) Plan, would entitle such Entity to
receive equity of the reorganized Debtors in excess of the amount of equity to which such Entity

12

would have been entitled based on the holdings reported on such Entity's Substantial Claimholder Notice, and

             (ii)     any Entity that would become a Potentially Substantial New Equityholder by virtue of a proposed acquisition of Covered Claims

will be required, prior to the consummation of any such transaction, to serve on the Debtors, their counsel, and counsel for the Creditors' Committee, a notice in the form attached hereto as Exhibit 2D (a "Proposed Covered Claim Transaction Notice"). The same procedures applicable to a Proposed Stock Transaction Notice will apply with respect to a Proposed Covered Claim Transaction Notice. If the Debtors do not give written consent to the proposed transaction and the Entity that has delivered the Proposed Covered Claim Transaction Notice requests a hearing, the procedures and standards of proof described in subparagraph (c) of this paragraph 7 will apply.

In addition, the Claims Trading Notice Order will require any Entity that has acquired Tax Ownership of Covered Claims as to which a notice would have been required under the preceding paragraph, but for the fact that such acquisition occurred prior to the entry of the Claims Trading Notice Order, to serve notice of such fact on the Debtors, their counsel, and counsel for the Creditors' Committee within fifteen (15) calendar days of the entry of the Claims Trading Notice Order. If the Debtors determine that the retention by such Entity of such Covered Claims could jeopardize the implementation of the 382(l)(5) Plan, they will serve a Sell Down Notice on such Entity, in which case the procedures and standards of proof described in subparagraph (c) of this paragraph 7 will apply.

8.     <u>Confidentiality</u>.

The Debtors, their counsel, and counsel for the Creditors' Committee shall keep all information provided in Notices delivered pursuant to this Final Order strictly confidential and shall not disclose the contents thereof to any person (including any member of any Creditors' Committee), except (i) to the extent necessary to respond to a petition or objection filed with the Court, (ii) to the extent otherwise required by law, or (iii) to the extent that the information contained therein is already public; provided, however, that the Debtors may disclose the contents thereof to their financial advisers who shall keep all such notices strictly confidential and shall not disclose the contents thereof to any other person subject to further Court order. To the extent information subject to the confidentiality provisions of this paragraph 8 is necessary to respond to a petition or objection filed with the Court, such confidential information shall be filed under seal or in redacted form. For the avoidance of doubt, the foregoing provisions shall not preclude the Debtors or the Creditors Committee from including in their unredacted, unsealed filings with the Court summary information regarding the amount of equity of the reorganized Debtors that Potentially Substantial New Equityholders (not identified by name or otherwise) would be expected to receive under the terms of the 382(l)(5) Plan before and after the implementation of the Sell Down Order.

9.      Sanctions for Noncompliance.

        (a)      Noncompliance Relating to Stock. Acquisitions and dispositions of Tax Ownership of Stock in violation of the restrictions and procedures set forth in paragraph 5 shall be void ab initio, and the sanction for violating paragraph 5 shall be reversal of the noncompliant transaction or such other (or additional) measures as the Court may consider appropriate.

14

(b)      Noncompliance Relating to a Sell Down Notice or a Claims Trading Notice Order.

In the event that any Entity fails to comply with a final Sell Down Notice applicable to it, such

Entity shall not be entitled to acquire Tax Ownership of any equity of the reorganized Debtors

(or consideration in lieu thereof) in connection with the implementation of the 382(l)(5) Plan in

excess of the percent specified on such Sell Down Notice.  Any Entity that did not file a

Substantial Claimholder Notice shall not be entitled to acquire Tax Ownership of any equity of

the reorganized Debtors (or consideration in lieu thereof) in excess of the Applicable Percentage

in connection with the implementation of the 382(l)(5) Plan.  Any Entity that acquires Covered

Claims in violation of a Sell Down Order or a Claims Trading Notice Order shall not be entitled

to acquire Tax Ownership of any equity of the reorganized Debtors (or consideration in lieu

thereof) in connection with the implementation of the 382(l)(5) Plan in excess of the percentage

of equity to which such Entity would have been entitled had it not acquired such Covered Claims.

Prior to the time the foregoing sanctions (the "Equity Forfeiture Provisions") are made effective,

the Debtors shall give notice to the Entity upon whom such sanctions are to be imposed.  Such

Entity will then have ten days to obtain an injunction by this Court to prevent the imposition of

such sanctions.  If an injunction is not obtained within such ten day period, then the sanctions

shall be effective without further order of the Court.  If such injunction is obtained, then the

matter shall be disposed of as determined by the Court.  Any purported acquisition of Tax

Ownership of stock of the reorganized Debtors pursuant to the implementation of the 382(l)(5)

Plan that is precluded by the Equity Forfeiture Provisions (such stock the "Forfeited Equity")

shall be void ab initio.  Any Entity that receives Forfeited Equity shall, immediately upon

becoming aware of such fact, return the Forfeited Equity to the Debtors or, if all of the shares

15

properly issued to such Entity and all or any portion of such Forfeited Equity have been sold

prior to the time such Entity becomes aware of such fact, such Entity shall return to the Debtors

(i) any Forfeited Equity still held by such Entity and (ii) the proceeds attributable to the sale of

Forfeited Equity, calculated by treating the most recently sold shares as Forfeited Equity.  Any

Entity that receives Forfeited Equity and deliberately fails to comply with the preceding sentence

shall be subject to such additional sanctions as the Court may determine.  In no event, however,

shall an acquisition or disposition of Tax Ownership of Covered Claims be rendered void or

unenforceable by reason of this Final Order.  The Debtors shall distribute any Forfeited Equity in

accordance with the 382(l)(5) Plan.

10.      Special Rule.  An Entity acquiring or disposing of Tax Ownership of Stock or Covered

Claims in the capacity of Agent of another Entity shall not be treated as a Substantial

Equityholder or Substantial Claimholder solely to the extent acting in the capacity of Agent, and

shall not have an affirmative duty to inquire whether the account, customer, investment fund,

principal, trust, or beneficiary is subject to any restrictions or requirements under this Final Order;

provided, however, that the account, customer, fund, principal, trust, or beneficiary shall not be

excluded from this Final Order by reason of this paragraph.  Specifically and for the avoidance

of doubt, the trustee of any trust, any indenture trustee, owner trustee, pass-through trustee,

subordination agent, registrar, paying agent or transfer agent, in each case for any ownership

interests, bonds, debentures, or other debt securities (collectively, "Debt Securities") (a) issued

by any of the Debtors, (b) issued by any governmental or quasi-governmental authority for the

benefit of any of the Debtors, or (c) secured by assets of any of the Debtors or agreements with

respect to such assets (any such person, an "Indenture Trustee"), shall not be treated as a

16

"Substantial Claimholder" solely to the extent acting in the capacity described above; provided, however, that neither any transferee of Claims nor any Entity for whom an Indenture Trustee acts shall be excluded solely by reason of this provision.

11.    Other Available Remedies.  Nothing in this Final Order shall be interpreted to prevent a secured party or Indenture Trustee from exercising the remedies available to it (whether arising under law or contract and including the exercise by such secured party or Indenture Trustee, as the case may be, of any foreclosure rights), to the extent such remedies are not otherwise prohibited by law.

12.    Notice of this Final Order. Within 24 hours of the entry of this Final Order, the Debtors shall (i) submit a notice of the entry of this Final Order (substantially in the form attached hereto as Exhibit 3) (the "Notice of Entry") for publication on the Bloomberg newswire service and the Depository Trust Company Legal Notice System (also known as LENS); (ii) post the Notice of Entry together with a copy of this Final Order on the Case Information Website, as described in the Case Management Order, for posting of documents in the Debtors' cases; (iii) serve the Notice of Entry on (1) the Office of the United States Trustee for the Southern District of New York; (2) all indenture trustees for the Covered Claims; (3) counsel for the Creditors' Committee; (4) any identified Substantial Equityholders and Substantial Claimholders; (5) the Internal Revenue Service; and (6) the Master Service List and the 2002 List (each, as defined in the Case Management Order); and (iv) file a copy of such Final Order as an exhibit to a Report on Form 8-K filed with the Securities and Exchange Commission.  In addition, as soon as practicable after the entry of this Final Order, the Debtors shall cause the Notice of Entry to be published in the national edition of either the New York Times or the Wall Street Journal.

17

13.    Any notice required by this Final Order to be served by Substantial Claimholders, if

effected prior to the filing of a proof of claim by a Substantial Claimholder, shall not limit the

right of a creditor to assert any and all claims, whether or not such claims are in addition to or

differ from those listed on the notice, in a proof of claim filed in accordance with any future

orders of this Court.

14.    The Debtors may waive, in writing and in their sole and absolute discretion, any and all

restrictions, stays, and notification procedures contained in this Final Order.

15.    The requirements set forth in this Final Order are in addition to the requirements of Rule

3001(e) of the Federal Rules of Bankruptcy Procedure and applicable securities, corporate and

other laws, and do not excuse compliance therewith.

16.    The Court shall retain jurisdiction with respect to any matters, claims, rights or disputes

arising from or related to the implementation of this Final Order.

17.    The requirement under Rule 9013 1(b) of the Local Bankruptcy Rules for the Southern

District of New York for the filing of a memorandum of law is waived.

18.    <u>Definitions</u>.  For purposes of this Final Order, the following definitions shall apply:

"**382(l)(5) Plan**" means a plan of reorganization for the Debtors under

chapter 11 of the Bankruptcy Code pursuant to which there is a reasonable

possibility that section 382(l)(5) of the Internal Revenue Code will be utilized and

which provides that transfers of Tax Ownership of the reorganized Debtors' equity

will be subject to reasonable restrictions for not less than two years after the

reorganization.

18

"**Agent**" means a broker, account manager, agent, custodian, nominee, prime broker, clearinghouse, or trustee (including an Indenture Trustee but not including a trustee qualified under section 401(a) of the Internal Revenue Code).

"**Applicable Percentage**" means, if only one class of common equity of the reorganized Debtors is to be issued pursuant to the terms of a 382(l)(5) Plan, 4.75% of the number of such shares that the Debtors reasonably estimate will be issued at the effective time of such 382(l)(5) Plan.  If more than one class of equity of the reorganized Debtors is to be distributed pursuant to the terms of a 382(l)(5) Plan, the Applicable Percentage shall be determined by the Debtors in their reasonable judgment in a manner consistent with the estimated range of values for the equity to be distributed reflected in the valuation analysis set forth in the Disclosure Statement, and shall be expressed in a manner that makes clear how many shares of common equity would constitute the Applicable Percentage.

"**Bankruptcy Code**" means title 11 of the United States Code.

"**Claims Trading Notice Order**" has the meaning given in paragraph 7(e).

"**Consenting Claimholder**" has the meaning given in paragraph 6(c).

"**Covered Claims**" means any claims within the meaning of section 101(5) of the Bankruptcy Code against one or more Debtors that is not a first priority claim, provided that, that solely for purposes of this Final Order, Covered Claims shall not include any (a) claims pursuant to the 5-Year Third Amended and Restated Credit Agreement among, inter alia, Delphi Corporation, as Borrower, and JPMorgan Chase Bank, N.A. as Administrative Agent, dated as of June 14,

19

2005, or the Revolving Credit, Term Loan and Guaranty Agreement among <u>inter</u> <u>alia</u>, Delphi Corporation, a Debtor and a Debtor-in-Possession under chapter 11 of the Bankruptcy Code, as Borrower, and JPMorgan Chase Bank, N.A., as Administrative Agent, dated as of October 14, 2005, and as amended as of October 27, 2005.

"**Creditors' Committee**" means the official committee of unsecured creditors that has been appointed in these cases.

"**Debtors**" has the meaning given in the first paragraph hereof.

"**Debt Securities**" has the meaning given in paragraph 11.

"**Disclosure Statement**" means a disclosure statement filed with the Court relating to a proposed plan of reorganization for the Debtors under chapter 11.

"**Effective Time**" means the time of effectiveness of the Interim Order.

"**Entity**" means a person or entity for purposes of the rules under section 382 of the Internal Revenue Code.

"**Equity Forfeiture Provision**" has the meaning given in paragraph 9(b).

"**Forfeited Equity**" has the meaning given in paragraph 9(b).

"**Indenture Trustee**" has the meaning given in paragraph 11.

"**Internal Revenue Code**" means the Internal Revenue Code of 1986, as amended.

"**Interim Order**" has the meaning given in paragraph 2.

"**Final Order**" has the meaning given in paragraph 2.

"**Motion**" has the meaning given in the first paragraph hereof.

20

"**Newly Traded Covered Claims**" means Covered Claims (a) of which an Entity acquired Tax Ownership after the date that was 18 months before the Petition Date; and (b) that are not "ordinary course" claims, within the meaning of Treasury regulations section 1.382-9(d)(2)(iv), of which the same Entity has always had Tax Ownership.

"**Notice**" has the meaning given in paragraph 5.

"**Notice of Completed Sell Down**" has the meaning given in paragraph 7(d).

"**Notice of Consent**" has the meaning given in paragraph 6(c).

"**Notice of Status as a Substantial Equityholder**" has the meaning given in paragraph 4.

"**Order Time**" has the meaning given in paragraph 2.

"**Participation Restriction**" has the meaning given in paragraph 6(b).

"**Petition Date**" means October 8, 2005.

"**Potentially Substantial New Equityholder**" has the meaning given in paragraph 7(b).

"**Preliminary Percentage**" has the meaning given in paragraph 7(b).

"**Proposed Covered Claim Transaction Notice**" has the meaning given in paragraph 8(e).

"**Proposed Stock Transaction Notice**" has the meaning given in paragraph 5.

21

"**Protected Amount**" means the amount of Covered Claims of which an

Entity has Tax Ownership at the Effective Time,

(i)    *increased by* (A) the amount of Covered Claims of which such Entity acquires Tax Ownership pursuant to contracts entered into before the Effective Time and (B) the amount of Covered Claims of which such Entity acquires Tax Ownership after the Effective Time pursuant to the exercise of rights under a secured debt instrument (including a voluntary foreclosure) of which such Entity has Tax Ownership before the Effective Time, *minus* the amount of Covered Claims of which such Entity disposes pursuant to contracts entered into before the Effective Time;

(ii)    *increased* by an amount of Covered Claims (the "**Acquired Covered Claims**") of which such Entity ("**Acquiror**") acquires Tax Ownership from another Entity ("**Transferor**") if and only to the extent that Acquiror establishes by clear and convincing evidence, following the receipt of a Sell Down Notice, that:

(A)    Transferor is bound by a written agreement to reduce its Protected Amount by an amount equal to the increase in Acquiror's Protected Amount pursuant to this clause (ii) (the "**Additional Protected Amount**") and

(B)    if Transferor had retained Tax Ownership of the Acquired Covered Claims and any other Covered Claims of which it had Tax Ownership as of the date of transfer of the Acquired Covered Claims, (x) its Protected Amount would have been equal to or greater than the Additional Protected Amount, (y) the Acquired Covered Claims would have been Newly Traded Covered Claims as to Transferor, and (z) it would have been entitled under the terms of the 382(l)(5) Plan (after compliance with a Sell Down Notice properly applicable to it) to acquire Tax Ownership of five  percent or more of the equity of the reorganized Debtors;

(iii)    *decreased by* (A) the amount of Covered Claims held by such Entity as of the Effective Time that are not Newly Traded Covered Claims in the hands of such Entity and that are subsequently disposed of by such Entity and (B) the amount of Covered Claims of which the Entity had Tax Ownership at the Effective Time (as adjusted under (i) and (iii)(A) above), if such Entity acquires Acquired Covered Claims (and meets the requirements set forth in (ii) above) such that the Entity's aggregate Tax Ownership of Covered Claims would (absent the application of this (iii)(B)) entitle the Entity under the terms of the 382(l)(5) Plan to acquire Tax Ownership of five percent or more of the equity of the reorganized Debtors and such Entity would not have otherwise have been entitled under the terms of the 382(l)(5) Plan to five percent or more of the equity of the reorganized Debtors but for the acquisition of the Acquired Covered Claims.

22

"**Reporting Notice**" has the meaning given in paragraph 7(a).

"**Sell Down Notice**" means a notice to a Potentially Substantial New Equityholder requiring the Potentially Substantial New Equityholder to transfer Covered Claims in accordance with paragraphs 6 and 7.

"**Sell Down Order**" has the meaning given in paragraph 7(b).

"**Stock**" means the common stock of Delphi Corporation.

"**Substantial Claimholder**" means an Entity that has Tax Ownership of an aggregate amount of Covered Claims measured where applicable by principal and accrued interest as of the Petition Date, that equals or exceeds the Threshold Amount (as determined from time to time).

"**Substantial Claimholder Notice**" has the meaning given in paragraph 7(a).

"**Substantial Equityholder**" means an Entity that has Tax Ownership of at least 26.5 million shares of Stock (representing approximately 4.75% of the outstanding Stock).

"**Substantial Equityholder Notice**" has the meaning given in paragraph 4.

"**Tax Ownership**" means beneficial ownership of a Covered Claim or of Stock as determined in accordance with applicable rules under section 382 and, to the extent provided in those rules shall include, but not be limited to, direct and indirect ownership (e.g., a holding company would be considered to have Tax Ownership of all shares owned or acquired by its 100% owned subsidiaries), ownership by members of a person's family and persons acting in concert and, in

23

certain cases, the creation or issuance of an option (in any form).  Any variation

of the term Tax Ownership shall have the same meaning and an "option" to

acquire stock or claims shall include any contingent purchase, warrant,

convertible debt, put, stock subject to risk of forfeiture, contract to acquire stock

or similar interest, regardless of whether it is contingent or otherwise not currently

exercisable.  Tax Ownership of Covered Claims shall be determined as if such

Covered Claims were stock of the Debtors.

     "**Threshold Amount**" means, as an initial matter, $190 million. The

Debtors will periodically review the definition of the Threshold Amount, in

consultation with the Creditors' Committee, to ensure the reasonableness thereof,

but in no event shall the Threshold Amount be decreased with retroactive effect.

Any proposed changes to the definition of the term Threshold Amount will be

filed with the Court and served and published in the manner described in

paragraph 12.  Any such proposed changes to the definition of the term Threshold

Amount will become effective ten days following the filing of such proposed

change with this Court; provided, however, that if any objection is filed with

respect to such proposed change the matter will be disposed of as determined by

the Court at the next omnibus hearing.

Dated: New York, New York
       January 6, 2006

                               _____/s/ Robert D. Drain_____
                               UNITED STATES BANKRUPTCY JUDGE