SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
David E. Springer (DS 9331)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
        In re                             :        Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :        Case No. 05–44481 (RDD)
                                          :
                        Debtors.          :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF THOMAS J. MATZ IN SUPPORT OF
MOTION UNDER FED. R. BANKR. P. 9016 AND FED. R. CIV. P. 45 TO
QUASH SUBPOENAS SERVED BY LEAD PLAINTIFFS ON JOHN SHEEHAN,
LAURA MARION, DAN RENICK, AND JOHN ROTKO

STATE OF NEW YORK        )
                         )        ss.
NEW YORK CITY            )

Thomas J. Matz, being duly sworn, deposes and says:

1.        I am an attorney in the New York office of Skadden, Arps, Slate, Meagher

& Flom LLP ("Skadden"), and I am one of the attorneys representing Delphi Corporation and

certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned

cases (collectively, the "Debtors").  I submit this affidavit and the attached exhibits in support of

the  Motion Under Fed. R. Bankr. P. 9016 And Fed. R. Civ. P. 45 To Quash Subpoenas Served

By Lead Plaintiffs On John Sheehan, Laura Marion, Dan Renick, And John Rotko (the

"Motion").

2.        Exhibit 1 to this affidavit is a copy of a letter from Bradley E. Beckworth,

counsel for the Teachers' Retirement System of Oklahoma, the Public Employees' Retirement

System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H, and Stichting

Pensioenfonds ABP (collectively, "Lead Plaintiffs") to David E. Springer of Skadden dated

December 8, 2005.

3.        Exhibit 2 to this affidavit is a copy of a letter from John P. Coffey, Lead

Plaintiffs' counsel, to Mr. Springer dated December 12, 2005.

4.        Exhibits 3–6 to this affidavit are copies of subpoenas issued by Lead

Plaintiffs' counsel commanding John Sheehan, Laura Marion, Dan Renick, and John Rotko to

appear at the hearing scheduled for January 27, 2006, at 10:00 a.m.

5.       <u>Exhibit 7</u> to this affidavit is a copy of the Declaration of John P. Coffey In
Support Of Lead Plaintiffs' Motion To Compel Discovery Related To Debtors' Motion For Order
Under §§ 105 And 363 Authorizing Debtors To Implement A Key Employee Compensation
Program, which was filed by Lead Plaintiffs as an attachment to their Motion To Compel
Discovery Related To Debtors' Motion for Order Under §§ 105 And 363 Authorizing Debtors to
Implement A Key Employee Compensation Program (Docket No. 1619).

6.       <u>Exhibits 8–10</u> to this affidavit are copies of the unpublished decisions
cited in the Motion:  <u>Dodson v. CBS Broad. Inc.</u>, No. 02 Civ. 9270 (KMW), 2005 WL 3177723
(S.D.N.Y. Nov. 29, 2005), <u>Costomar Shipping Co. v. Kim-Sail, Ltd.</u>, No. 95 Civ. 3349 (KTD),
1995 WL 736907 (S.D.N.Y. Dec. 12, 1995), and <u>Song v. Dreamtouch, Inc.</u>, No. 01 Civ. 0386
(AGS), 2001 WL 487413 (S.D.N.Y. May 8, 2001).


/s/ Thomas J. Matz_____
Thomas J. Matz

Sworn to before me this 11 day
of January, 2006.


/s/ Adriana G. Salazar_____
Notary Public

# Exhibit 1

# NIX, PATTERSON, & ROACH, L.L.P.

HAROLD W. NIX
C. CARY PATTERSON
NELSON J. ROACH
EDWARD L. HOHN
JEFFREY J. ANGELOVICH
MICHAEL B. ANGELOVICH
D. NEIL SMITH
BRADLEY E. BECKWORTH
BRADY PADDOCK
KEITH LANGSTON

205 LINDA DRIVE
DAINGERFIELD, TEXAS 75638
(903) 645-7333
FAX: (903) 645-4415

ANTHONY BRUSTER
R. BRANDON MOORE
M. CHAD TRAMMEL
R. DANIEL SOREY
KIMBERLY A. RAMSEY*
SHAUNA R. KINNEY
SUSAN WHATLEY
CHRISTOPHER R. JOHNSON*
ROSE FRAGOSO†
R. BENJAMIN KING
* Licensed only in Louisiana
† Licensed only in New Mexico

## FACSIMILE COVER SHEET

| | | |
|---|---|---|
| TO: | MR. DAVID SPRINGER; | FAX NO. 312.407.0411 |
| | MR. MICHAEL ETKIN; | FAX NO. 212.262.7402 |
| | MR. GEOFFREY JARVIS; | FAX NO. 302.622.7100 |
| | MR. MICHAEL YARNOFF; | FAX NO. 610.667.7706 |
| | MR. SEAN COFFEE; | FAX NO. 212.554.1444 |

DATE:      DECEMBER 8, 2005

FROM:      BRADLEY E. BECKWORTH

RE:        LEAD PLAINTIFFS' DISCOVERY REQUESTS PURSUANT TO THEIR OBJECTION TO DEBTORS' MOTION FOR ORDER UNDER §§105 AND 363 AUTHORIZING DEBTORS TO IMPLEMENT A KEY EMPLOYEE COMPENSATION PROGRAM

TOTAL PAGES: __8__ (INCLUDING COVER)

## *MESSAGE:*

PLEASE SEE ATTACHED. THANK YOU.

**PRIVILEGED and CONFIDENTIAL.** This transmittal covers information intended for the use of the named addressee(s). If the reader of this message is not the named addressee or an employee or agent responsible for delivering the message to the intended recipient(s), please do not read the accompanying information, and note that any dissemination, distribution or copying of this communication is strictly prohibited. Anyone receiving the message in error should notify (903) 645-7333 immediately by telephone and return the original message to said sender at the address indicated above by U.S. Mail. Thank you for your cooperation.

# NIX PATTERSON & ROACH, LLP

Bradley E. Beckworth
Attorney at Law
Direct Dial: 903-645-7333 ext. 221
Direct Fax: 903-645-4415
E-mail: bbeckworth@nixlawfirm.com

December 8, 2005

**Via Electronic Mail and Facsimile**
Mr. David Springer
Skadden, Arps, Slate, Meagher & Flom L.L.P.
333 West Wacker Drive
Chicago, Illinois 60606-1285

Re:    **Lead Plaintiffs' Discovery Requests Pursuant to their Objection to Debtors'
Motion for Order Under §§ 105 and 363 Authorizing Debtors to Implement a
Key Employee Compensation Program**

Dear Mr. Springer:

We represent the Teachers' Retirement System of Oklahoma, the Public Employees'
Retirement System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H. and Stichting
Pensioenfonds ABP (collectively, "Lead Plaintiffs"), the Court appointed Lead Plaintiffs in the
consolidated securities class action entitled *In re Delphi Corp. Securities Litigation*, Master File
No. 1:05-CV-2637 (NRB)(SDNY).

During the "meet and confer" telephone call on December 6, 2005, Debtors (for purposes
of this letter, "Debtors" refers to Debtors and Debtors-in-Possession) requested that Lead
Plaintiffs submit their discovery requests to Debtors by letter, in lieu of a formal set of
interrogatories and/or requests for production. Pursuant to Debtors' request, Lead Plaintiffs
hereby request that Debtors provide the information and documents detailed below.

For purposes of Debtors' response to this letter, the Uniform Definitions in Discovery
Requests set forth in Civil Rule 26.3 of the Local Rules of the United States District Courts for
the Southern District of New York, incorporated by reference in Rule 7026-1 of the Local Rules
of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules")
shall apply to this request for information and documents. Further, the requirements of Rules
7033-1 and 7034-1 of the Local Rules are incorporated herein.

Reference to the "KECP Motion" means the Motion for an Order under §§ 105 and 363
Authorizing the Debtors to Implement a Key Employee Compensation Program, and all
amendments thereto. "Covered Employees" means the Delphi employees as defined and
described in Paragraphs 20 and 24 of the Debtor's KECP Motion, and in Exhibit 1 attached
thereto. The "Objection" means Lead Plaintiffs' Objection to Debtors' Motion for Order Under

*Mr. David Springer*
*December 8, 2005*
*Page 2 of 7*

§§ 105 and 136 Authorizing the Debtors to Implement a Key Employee Compensation Program, and all amendments thereto. In this regard, Lead Plaintiffs request the following:

1.   Please identify each executive covered under the KECP Motion.

2.   For each person identified in response to item number 1, please identify each person(s) so listed who participated in any manner in one or more of the following:

    a.   Financing transactions totaling approximately $441 million reported by Debtors as sales of inventory or indirect materials, as described in detail in Lead Plaintiffs' Consolidated Class Action Complaint (hereinafter the "Complaint") at ¶¶122-54 (attached as Exhibit 1 to Lead Plaintiffs' Objection). Specifically:

        (i) $145 million in financing transactions with, Setech, Inc. ("Setech") as income from sales of indirect materials;

        (ii) $89 million in financing transactions with BBK, Ltd. ("BBK") as income from sales of inventory; and

        (iii) $200 million in financing transactions with Bank One Corporation ("Bank One") as income from sales of precious metals;

    b.   Transactions totaling more than $240 million between Debtors and General Motors Corporation ("GM"), as described in detail in the Complaint at ¶¶155-68;

    c.   Transactions between Debtors and various service providers, including $68 million in transactions with Electronic Data Systems ("EDS"), one of Debtors' information technology service providers, as described in detail in the Complaint at ¶¶173-84;

    d.   Debtors' identification of obligations that were not properly accrued for at the end of an accounting period that resulted in an overstatement of Debtors' pre-tax income by $14 million in 2002 and by $34 million in 2003, as described in detail in the Complaint at ¶¶185-87, as well as in Debtors' restated financial results for Fiscal Years 2002 and 2003, and selected financial data for Fiscal Years 2000 and 2001, in its Form 10K for the year ended December 31, 2004 (the "Restatement"), Item 7, Subparagraph (f);

*Mr. David Springer*
*December 8, 2005*
*Page 3 of 7*

       e.    Debtors' accounting for Debtors' direct materials by understating the value of its direct materials inventory on a monthly, quarterly and yearly basis, as described in detail in the Complaint at ¶¶190-99; and

       f.    All transactions not heretofore listed, which are listed in Debtors' restated financial results for Fiscal Years 2002 and 2003, and selected financial data for Fiscal Years 2000 and 2001, in its Form 10K for the year ended December 31, 2004 (the "Restatement"), Item 7, Subparagraphs (a) through (g) (pages 21-23).

3.    For each person identified in response to item number 2 (and/or each discrete subpart thereof), please state whether Debtors employed any investigation, processes and/or procedures to determine whether each such person's involvement in each transaction listed therein constituted:

       a.    A failure to exercise reasonable care;
       b.    A failure to exercise sound business judgment;
       c.    A dereliction of job duties;
       d.    Fraud (either civil or criminal in nature);
       e.    Mismanagement; and/or
       f.    Improper and/or undesirable conduct.

4.    If Debtors answered "Yes" in response to item number 3 (and/or any discrete subpart thereof), please list and describe the results and/or conclusions reached by Debtors regarding each such person so identified.

5.    If Debtors answered "Yes" in response to item number 3 (and/or any discrete subpart thereof), please identify each person who participated in any such investigation, processes and/or procedures.

6.    Please identify the twenty-five executives referenced in the KECP Motion, who have departed Debtors' employ since January 1, 2005.

7.    For each person identified in response to item number 6, please state the reason(s) for each such person's departure.

8.    Please identify and describe the performance goals used to trigger the bonuses offered under the KECP's annual incentive plan, including the methodology used in setting the performance goals.

9.    Please identify and describe the methodology underlying the allocation of the cash component of the KECP's emergence bonus plan.

*Mr. David Springer*
*December 8, 2005*
*Page 4 of 7*

10.    Please list and provide a copy of any application for employment submitted to
Debtors on behalf of a person who sought (or seeks) one or more of the positions
presently held by the 486 executives who would be covered under the KECP.

11.    Please identify every person you intend to call to testify at the hearing on the
KECP Motion and describe the subject matters about which they will testify.

12.    Do Debtors contend that the exercise of sound business judgment does not
preclude Debtors from offering any form of key employee compensation to an
employee who has:

   a.    Failed to exercise reasonable care;
   b.    Failed to exercise sound business judgment;
   c.    Been derelict in their job duties;
   d.    Engaged in fraud (either civil or criminal in nature);
   e.    Engaged in mismanagement; or
   f.    Engaged in improper and/or undesirable conduct.

13.    Do Debtors contend that a failure to exercise sound business judgment does not
preclude the Debtors from offering any form of key employee compensation
program during the course of these Chapter 11 proceedings?

   a.    If so, state with particularity the bases of Debtors' contention, including
   the identification of all facts, opinions, and documents that support your
   contention.

   b.    Do Debtors contend that the failure to exercise sound business judgment
   does not preclude the Debtors from including, as a component of the key
   employee compensation program:

      i.    a pre-emergence incentive plan?  State with particularity the bases
      of your contention, including the identification of all facts,
      opinions, and documents that Debtors contend support this
      contention.

      ii.    pre-emergence employment severance protection?  State with
      particularity the bases of Debtors' contention, including the
      identification of all facts, opinions, and documents that Debtors
      contend support this contention.

      iii.    an emergence bonus plan?  State with particularity the bases of
      Debtors' contention, including the identification of all facts,
      opinions, and documents that Debtors contend support this
      contention.

*Mr. David Springer*
*December 8, 2005*
*Page 5 of 7*

      iv.   equity in the post-emergence company as a component of an emergence bonus plan?  State with particularity the bases of Debtors' contention, including the identification of all facts, opinions, and documents that Debtors contend support this contention.

14.    Please identify all documents you intend to offer into evidence or for any other purpose at the hearing on the KECP Motion.

15.    Please produce all documents regarding any matter responsive to item numbers 1-14.

16.    Please produce a true and correct copy of the direct testimony, declaration, or affidavit, including exhibits, of each witness identified in response to item number 11.

17.    Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 2 of the Objection that any Delphi executive or former Delphi executive "knowingly participated in Delphi's massive accounting fraud, or . . . inexcusably tolerated or ignored that fraud" which is the subject of the consolidated securities class action, entitled *In re Delphi Corp. Securities Litigation*, Master File No. 1:05-CV-2637 (NRB) (S.D.N.Y.) (the "Consolidated Securities Litigation.").

18.    Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 2 of the Objection that "Delphi's massive accounting fraud . . . impelled the Company's slide towards bankruptcy."

19.    Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 2 of the Objection that Delphi's June 30, 2005, restatement of prior period earnings involves "one of the largest corporate frauds of our era."

20.    Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 4 of the Objection that any of the Delphi employees "who would presumably profit from the KCEP were directly involved in the sham transactions, inventory manipulating, and book-cooking" referenced in the Objection and alleged in the Consolidated Securities Litigation.

21.    Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 4 of the Objection that any "sham transactions, inventory manipulating, and book-cooking . . . triggered Delphi's bankruptcy."

*Mr. David Springer*
*December 8, 2005*
*Page 6 of 7*

22. Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 8(e) of the Objection that "Delphi and its senior executives routinely set inventory target levels, instructed subordinates not to record high-dollar supplies as inventory and directed subordinates to delay delivery of inventory."

23. Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 16 of the Objection that any purported "fraudulent conduct or willfull blindness" by any Delphi employee or former Delphi employee "precipitated the Debtor's collapse and necessitated this bankruptcy proceeding."

24. Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 23 of the Objection that "the very executives who had fostered the Company's fraudulent culture and accounting practices, or had blithely ignored them in the face of mysteriously increasing earnings," remain "at the helm of the Company."

25. Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraphs 24(a) through 24(c) of the Objection that Delphi employees Rodney O'Neal, David Wohleen, and Mark R. Weber were "involved in Delphi's fraudulent accounting practices."

26. Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraphs 25(a) through 25(n) of the Objection that any of the persons identified therein were "involve[d] in Delphi's accounting fraud."

27. Please produce a true and correct copy of all documents relating to Lead Plaintiffs' allegation in Paragraph 26 of the Objection that "executives at all levels and in all business sectors of the Company either participated in or willfully ignored the Debtors' massive accounting fraud."

28. To the extent that the Debtors deny the allegations in the Objection as referenced in requests 17 through 27 above, please produce any and all documents that support Debtors' denial thereof.

29. Lead Plaintiffs hereby incorporate all discovery requests submitted to Debtors by each Objector to the KECP Motion as if same are set forth fully herein.

We look forward to receiving Debtors' Response in a timely manner as we fully expect to proceed with this hearing on January 5, 2006.

*Mr. David Springer*
*December 8, 2005*
*Page 7 of 7*


We reserve the right to serve additional requests as our investigation continues and after we have had an opportunity to review Debtors' responses to the discovery requests set forth above.

We will give you a full list of all persons we intend to depose as soon as possible. At this time, we intend to depose John D. Sheehan. Specifically, we are requesting dates and times for Mr. Sheehan's deposition in advance of your proposed January 2, 2006, starting date for depositions. We will provide you with the names of any additional person(s) we intend to depose as soon as reasonably practicable after we have had an opportunity to review Debtors' responses to the discovery requests set forth above.

Sincerely,

Bradley E. Beckworth

BEB/sc
cc:     Mr. Sean Coffee
        Mr. Michael Yarnoff
        Mr. Geoffrey Jarvis
        Mr. Michael Etkin

**Exhibit 2**

# BERNSTEIN LITOWITZ BERGER & GROSSMANN

1285 Avenue of the Americas
New York, New York 10019
(212) 554-1400
Telecopier (212) 554-1444

## TELECOPY TRANSMITTAL SHEET

**FROM:**   **John P. Coffey**                    **DATE:**  **December 12, 2005**

**RE:**     **In re Delphi Corp.**              **PGS:**   **3**   (Including cover sheet)

| TO:  David Springer | 312-407-8524 [Fax] |
|---|---|
| FIRM: SKADDEN, ARPS, SLATE, MEAGHER & FLOM L.L.P. | |
| TO:   Michael S. Etkin, Esq. | 973-597-2313 [Fax] |
| FIRM: LOWENSTEIN SANDLER PC | |
| TO:   Bradley Beckworth | 903-645-4415 [Fax] |
| FIRM: NIX, PATTERSON & ROACH, LLP | |
| TO:   Stuart Grant | 302-622-7100 [Fax] |
| FIRM: GRANT & EISENHOFER, P.A. | |
| TO:   Michael Yarnoff | 610-667-7056 [Fax] |
| FIRM: SCHIFFRIN & BARROWAY LLP | |

MESSAGE:

WARNING: The information contained in this facsimile is attorney privileged and confidential information intended only for the use of the individual or entity named above. If the reader of this message is not the intended recipient, or the employee or agent responsible to deliver it to the intended recipient, you are hereby notified that any distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us immediately by telephone and return the original to us at the above address by mail. Thank you.                                                                    1016

# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

### ATTORNEYS AT LAW

### NEW YORK • CALIFORNIA • NEW JERSEY • LOUISIANA

John P. Coffey
sean@blbglaw.com
212-554-1409

December 12, 2005

**Via Electronic Mail and Facsimile**

David Springer, Esq.
Skadden, Arps, Slate, Meagher & Flom L.L.P.
333 West Wacker Drive
Chicago, Illinois 60606-1285

Re:   *In re Delphi Corporation, et al, Chapter 11 Case No. 05-44481 (RDD)*

Dear Mr. Springer:

On behalf of the Teachers' Retirement System of Oklahoma, the Public Employees' Retirement System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H. and Stichting Pensioenfonds ABP, the Court appointed lead plaintiffs in the consolidated securities class action entitled *In re Delphi Corp. Securities Litigation*, Master File No. 1:05-CV-2637 (NRB) (collectively, "Lead Plaintiffs"), we write concerning discovery related to Debtors' Motion for an Order under §§ 105 and 363 Authorizing the Debtors to Implement a Key Employee Compensation Program (the "KECP Motion").

First, with regard to Debtors' First Set of Interrogatories and Document Requests to the Securities Class Action Lead Plaintiffs, dated December 5, 2005 (the "Debtors' Discovery Requests"), Lead Plaintiffs intend to produce all non-privileged documents responsive to Debtors' Discovery Requests by your proposed deadline (that is, December 21, 2005). We agree to do so in anticipation of your reciprocal cooperation in producing documents sought by Lead Plaintiffs in our discovery requests served by letter on December 8 ("Lead Plaintiffs' Discovery Requests").

Second, we have not yet received Debtors' written objections to Lead Plaintiffs' Discovery Requests, which, according to the schedule you circulated last week, were due to us on December 10. We would like to schedule a meet and confer to discuss our respective discovery requests and objections as soon as possible. Please let us know your availability for the meet and confer on these document requests. Assuming we get your promised response today or tomorrow, we would be available for a conference call on Thursday afternoon.

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

David Springer, Esq.
December 12, 2005
Page 2


Finally, Lead Plaintiffs presently intend to call John D. Sheehan, Laura Marion, Dan Renick and John Rotko to testify at the January 5, 2006 hearing on the KECP Motion. Please let us know their availability for deposition as soon as possible. Once we have had an opportunity to review your witness list and the documents that Debtors produce in response to Lead Plaintiffs' Discovery Requests, we will be able to provide you with more information regarding any additional witnesses we intend to call at the hearing.

Sincerely,

John P. Coffey

cc: Michael Etkin, Esq.
Brad Beckworth, Esq.
Stuart Grant, Esq.
Michael Yarnoff, Esq.

**Exhibit 3**

## UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEW YORK

In re:

DELPHI CORPORATION,
                 **Debtor.**

**TRIAL SUBPOENA**

**CASE NO.: 05-44481 (RDD)**
**(JOINTLY ADMINISTERED)**

**CHAPTER 11**

To:

# John D. Sheehan

☒ **YOU ARE COMMANDED** to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE | DATE AND TIME |
|---|---|
| United States Bankruptcy Court for the Southern District of New York<br>United States Bankruptcy Court – Court of Honorable Robert D. Drain<br>One Bowling Green<br>New York, New York 10004 | January 27, 2006 at 10:00 a.m. |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| *Matthew C. Moehlman* , attorney-at-law | December **23**, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Matthew C. Moehlman
Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1472

**Exhibit 4**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>**DELPHI CORPORATION,**<br>                  **Debtor.** | **TRIAL SUBPOENA**<br><br>**CASE NO.: 05-44481 (RDD)**<br>**(JOINTLY ADMINISTERED)**<br><br>**CHAPTER 11** |

To:

# Laura Marion

☒ **YOU ARE COMMANDED** to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE<br>United States Bankruptcy Court for the Southern District of<br> New York<br>United States Bankruptcy Court – Court of Honorable Robert D.<br>Drain<br>One Bowling Green<br>New York, New York 10004 | DATE AND TIME<br>January 27, 2006 at 10:00 a.m. |
|---|---|

| ISSUING OFFICER SIGNATURE AND TITLE<br><br>_Matthew C. Moehlman_ , attorney-at-law | DATE<br><br>December **23**, 2005 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Matthew C. Moehlman
Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1472

18692/2
12/23/05 1826147.01

**Exhibit 5**

# UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF NEW YORK

In re:

DELPHI CORPORATION,
                    Debtor.

**TRIAL SUBPOENA**

CASE NO.: 05-44481 (RDD)
(JOINTLY ADMINISTERED)

CHAPTER 11

To:

# Dan Renick

☒ **YOU ARE COMMANDED** to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE | DATE AND TIME |
|---|---|
| United States Bankruptcy Court for the Southern District of New York<br>United States Bankruptcy Court – Court of Honorable Robert D. Drain<br>One Bowling Green<br>New York, New York 10004 | January 27, 2006 at 10:00 a.m. |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| *Matthew C. Moehlman* , attorney-at-law | December 23, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Matthew C. Moehlman
Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1472

**Exhibit 6**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re: | |
| | **TRIAL SUBPOENA** |
| **DELPHI CORPORATION,** | |
| **Debtor.** | **CASE NO.: 05-44481 (RDD)** |
| | **(JOINTLY ADMINISTERED)** |
| | **CHAPTER 11** |

To:

# John Rotko

☒ **YOU ARE COMMANDED** to appear in the United States Bankruptcy Court at the place, date, and time specified below to testify in the above case.

| PLACE | DATE AND TIME |
|---|---|
| United States Bankruptcy Court for the Southern District of New York | January 27, 2006 at 10:00 a.m. |
| United States Bankruptcy Court – Court of Honorable Robert D. Drain | |
| One Bowling Green | |
| New York, New York 10004 | |

| ISSUING OFFICER SIGNATURE AND TITLE | DATE |
|---|---|
| *Matthew C. Moehlman*, attorney-at-law | December 23, 2005 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

Matthew C. Moehlman
Bernstein Litowitz Berger & Grossmann LLP
1285 Avenue of the Americas
New York, NY 10019
(212) 554-1472

**Exhibit 7**

**LOWENSTEIN SANDLER PC**                      Hearing Date: January 5, 2006 at 10:00 a.m.
Michael S. Etkin, (ME 0570)
Ira M. Levee (IL 9958)
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
(212) 262-6700  (Telephone)
(212) 262-7402  (Facsimile)
                and
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2481 (Facsimile)

*Bankruptcy Counsel to Lead Plaintiffs and the Prospective Class*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

_____
                                      :
In re:                                :        Chapter 11
DELPHI CORPORATION, et al.,           :
                                      :        Case No. 05-44481 (RDD)
            Debtors.                  :
                                      :        (Jointly Administered)
_____:


**DECLARATION OF JOHN P. COFFEY IN SUPPORT OF LEAD
PLAINTIFFS' MOTION TO COMPEL DISCOVERY RELATED TO DEBTORS'
MOTION FOR ORDER UNDER §§ 105 AND 363 AUTHORIZING DEBTORS
TO IMPLEMENT A KEY EMPLOYEE COMPENSATION PROGRAM**


Pursuant to 28 U.S.C. § 1746, JOHN P. COFFEY, hereby declares as follows:

1.      I am a member in good standing of the bar of this Court and a partner with

Bernstein Litowitz Berger and Grossmann LLP ("Bernstein Litowitz"), one of the Court-

appointed Lead Counsel for the Teachers' Retirement System of Oklahoma, the Public

Employees' Retirement System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft

m.b.H. and Stitching Pensioenfonds ABP (collectively, "Lead Plaintiffs"), the court-

appointed Lead Plaintiffs in the securities class action entitled *In re Delphi Corp.*
*Securities Litigation.* I submit this declaration in support of Lead Plaintiffs' Motion to
Compel Discovery Related to Debtors' Motion for Order Under §§ 105 and 363
Authorizing Debtors to Implement a Key Employee Compensation Program (the "Motion
to Compel"). The facts set forth below are known to me personally or based on reports
made to me by other counsel for Lead Plaintiffs.

Procedural and Factual Background

2.      On June 27, 2005, the four large institutional investors identified above
were appointed by the Honorable Naomi Reice Buchwald of the United States District
Court of the Southern District of New York to serve as Lead Plaintiffs to represent all
Delphi securities purchasers in the class action entitled *In re Delphi Corp. Securities*
*Litigation*. *See* Docket No. 32. In their consolidated complaint filed on September 30,
2005 (attached as Exhibit 1 to Lead Plaintiffs' Objection to Debtor's Motion for an Order
Under §§ 105 and 363 Authorizing Debtors to Implement a Key Employee Compensation
Program (the "Complaint")) Lead Plaintiffs alleged that Delphi Corp. ("Delphi" or the
"Company"), various of its officers, and its auditor Deloitte & Touche, did, between
March 7, 2000 and March 3, 2005 (the "Class Period"), commit a host of accounting
improprieties that violated federal securities laws and resulted in the material
misstatement of virtually every financial statement filed by the Company since it became
a publicly-traded company in 1999. Based on Lead Plaintiffs' pre-filing investigation,
and on Delphi's own admissions of its past improprieties in its June 30, 2005 restatement
(the "Restatement") and related press releases, the Complaint describes a widespread,
indeed pervasive, tolerance of accounting and financial chicanery among numerous

Delphi executives.  *See* Complaint Sect. VI, ¶¶ 117-204 (describing fraudulent activity at

Delphi).    Indeed, the Complaint identified by name no fewer than fifteen current

company executives who either were directly involved in, knew of, or turned a blind eye

to alleged (or in many cases, admitted) accounting improprieties.  See, e.g., Complaint

¶¶123, 130, 132, 139, 193-4, 198 relating to Mark R. Weber; Executive Vice President,

Operations, Human Resource Management & Corporate Affairs; Rick Birch, Delphi's

Global Director of Production, Control and Logistics; Guy C. Hatchey, Vice President of

Delphi and President of the Energy and Chassis Division; and Mark Lorenz, Delphi's

Vice President of Operations and Logistics.

3.    After Debtors filed for bankruptcy protection, Lead Plaintiffs authorized

the retention of Lowenstein Sandler, P.C. to assist in the representation of Lead Plaintiffs

and the prospective Class in the Chapter 11 proceeding.

4.    On October 8, 2005, Debtors moved for an Order Under §§ 105 and 363

Authorizing Debtors to Implement a Key Employee Compensation Program (the

"KECP") (the motion is hereinafter referred to as the "KECP Motion").  *See* Docket No.

0013.    On October 14, 2005, Debtors re-filed the KECP Motion seeking substantially

similar relief.  *See* Docket No. 0213.  Although the KECP Motion purported to describe

the Debtors' financial history, it made no mention of the billion dollar-plus Restatement

that had been filed just months before this bankruptcy filing, or of the underlying

accounting scandal widely considered a substantial cause of that filing.  The KECP

Motion was likewise silent as to what measures, if any, had been taken to ensure that any

executives who participated in, were aware of, or recklessly ignored the past financial

improprieties would benefit from the proposed KECP.  Nothing was said as to whether

there had been any scrutiny whatever of the fifteen executives who were named in the Complaint who remained with the Company as of October 8, 2005. As to those executives named in the Complaint who are no longer with the Company because they had been terminated for cause or urged to resign as a result of the accounting scandal, the KECP misleadingly lumps them within the twenty-five executives Debtors claim to have "lost" since January 1, 2005, KECP ¶ 17, a statistic cited as a ground for approving the KECP.

5.    On November 22, 2005, Lead Plaintiffs timely filed an Objection to Debtor's KECP Motion (the "Objection"). *See* Docket No. 1161. Lead Plaintiffs objected to the KECP Motion on the grounds that the Motion fails to provide evidence demonstrating that the proposed KECP is the result of sound business judgment. Specifically, Lead Plaintiffs asserted that Debtor's proposed KECP is (i) not supported by sufficient facts; (ii) unconscionable because many of the senior executives who were involved in the admitted accounting improprieties are still managing the Company and stand to profit under the KECP; and (iii) not specific regarding key details of the plan, including the identity of the executives covered under the KECP and the specific performance levels that trigger the KECP.

6.    In response to Lead Plaintiffs' Objection, Debtors served their First Set of Interrogatories and Document Requests on Lead Plaintiffs ("Debtors' Discovery Requests"). A copy of Debtors' December 5, 2005 cover letter and Debtors' Discovery Requests are attached hereto as Exhibits A and B, respectively. Among other things, Debtors demanded that Lead Plaintiffs produce documents relating to the alleged accounting improprieties, inventory manipulation, and sham transactions that Lead

Plaintiffs contend should disqualify tainted executives from participating in the KECP.
*See* Ex. B, *e.g.,* Requests No. 3, 6-8.

7.      On December 6, 2005, several of my co-counsel, including Ira M. Levee
of Lowenstein Sandler PC and Hannah E. Greenwald of my firm, participated in a
telephonic meet and confer between Debtors and other parties who had objected to the
KECP Motion, including counsel for the United Steel, Paper and Forestry, Rubber,
Manufacturing, Energy, Allied Industrial and Service Workers, International Union
(USW), AFL-CIO (the "USW") and the International Union of Electronic, Electrical,
Salaried, Machine and Furniture Workers-Communications Workers of America (the
"IUE-CWA").  During the meet and confer, Debtors proposed a discovery schedule that
provided for, among other things, (i) Lead Plaintiffs to submit discovery requests to
Debtors by December 8, 2005; (ii) Debtors to provide written objections to Lead
Plaintiffs' discovery requests by December 10, 2005; and (iii) Lead Plaintiffs to provide
written objections to Debtors' Discovery Requests by December 12, 2005.  A copy of
Debtors' proposed schedule is attached hereto as Exhibit C.

8.      In accordance with Debtors' schedule, Lead Plaintiffs submitted their
discovery requests to Debtors ("Lead Plaintiffs' Discovery Requests") on December 8,
2005.  A copy of those requests is attached hereto as Exhibit D.  Among other things, we
informed Debtors that we had already identified at least one current executive that we
intended to depose in connection with the KECP Motion (John D. Sheehan, former head
of accounting during much of the period when the accounting improprieties occurred and
now, notwithstanding the accounting improprieties that occurred on his watch, chief of

5

Delphi's restructuring effort), and that Lead Plaintiffs would provide the names of additional witnesses as soon as reasonably practicable.

9.      On December 9, 2005, Debtors began producing documents responsive to requests propounded by the Committee of Unsecured Creditors, the USW and the IUE-CWA by posting such documents on an electronic database.  Before allowing Lead Plaintiffs access to the electronic database, Debtors required that Lead Counsel execute their proposed Stipulation and Agreed Protective Order Governing Production and Use of Confidential and Highly Confidential Information in Connection With the Debtor's Motion for an Order Under §§ 105 and 363 Authorizing Debtors to Implement a Key Employee Compensation Program and Objections Filed Thereto (the "Confidentiality Stipulation and Order").  We did so, without any modification, on December 9, 2005.  A copy of the Confidentiality Stipulation and Order is attached hereto as Exhibit E.

10.      Pursuant to Debtors' schedule, Debtors' objections to Lead Plaintiffs' Discovery Requests were due to be served on December 10, 2005.  Debtors did not serve their objections on that date; nor did they alert Lead Plaintiffs to any difficulties in complying with their own proposed schedule or ask that Lead Plaintiff consent to an extension of Debtors' time to object to Lead Plaintiffs' Discovery Requests. Furthermore, Debtors flatly denied a request by the unions to get an extension on their deadline for discovery responses.  A copy of the Debtors' transmittal email is attached hereto as Exhibit F.  Debtors stated that if the unions failed to produce their discovery responses by December 23, they will have breached their agreement and be precluded from offering evidence in support of their objections.[1]

---

[1]   Debtors themselves have insisted that, in order to ensure the fair and orderly consideration of the KECP Motion, a party that fails to timely comply with Debtors' schedule merits the sanction

11.    Notwithstanding Debtors' failure to abide by their own schedule, Lead
Plaintiffs timely informed Debtors on December 12, 2005 that they would produce all
non-privileged documents responsive to Debtors' Discovery Requests by December 21,
2005, the date proposed by Debtors.  A copy of Lead Plaintiffs' December 12, 2005 letter
to Debtors is attached hereto as Exhibit H.  Having further considered the KECP Motion
and the discovery sought by Debtors in the Debtors' Discovery Requests, Lead Plaintiffs
also informed Debtors of their intention to call Sheehan, Laura Marion ("Marion"), Dan
Renick ("Renick") and John Rotko ("Rotko") to testify at the hearing on the KECP
Motion.

12.    On December 12, 2005, without explanation as to their failure to abide by
their own schedule, Debtors tardily provided Lead Plaintiffs with their written objections
to Lead Plaintiffs' Discovery Requests.  A copy of Debtors' December 12, 2005 letter is
attached hereto as Exhibit I.  Debtors objected to sixteen of the twenty-nine requests,
claiming that the requests were (i) not relevant to the KECP motion and (ii) an improper
attempt to obtain discovery for the underlying securities action in violation of the
litigation stay imposed by Section 362(a) of the Bankruptcy Code and the discovery stay
imposed by the Private Securities Litigation Reform Act (the "PSLRA").  Debtors also
objected to Lead Plaintiffs' Discovery Requests to the extent the requests sought
information on the identities of the executives covered under the KECP, contending that
such information was an invasion of privacy.  For this reason, Debtors stated that they
would only provide identifying information for the five most highly-compensated

---

of preclusion.  Lead Plaintiffs respectfully submit that Debtors' failure to object in a timely
manner requires rejection of their objections. *See Eldaghar v. City of New York Dep't of Citywide
Admin. Serv.,* No. 02Civ.9151, 2003 WL 22455224, at *1 (S.D.N.Y. Oct. 28, 2003) (holding that
failure to provide objections to discovery requests in a timely manner operates as a waiver),
attached hereto as Exhibit G.

participants of the program.  In addition, Debtors objected to Lead Plaintiffs' request to depose Sheehan in connection with the KECP Motion, stating that they would not produce him for deposition "at least not without a satisfactory explanation by the requesting party as to the relevance of his testimony and the identification of areas of potential inquiry."

13.    On December 13, 2005, the hearing on the KECP was adjourned from January 5, 2006 to January 27, 2006.  Thereafter, Debtors circulated a revised discovery schedule for the KECP Motion hearing.  A copy of the Debtors' transmittal e-mail and revised schedule is attached hereto as Exhibit J.  Among other things, the date by which Lead Plaintiffs are to produce documents sought by Debtors – including those relating to the allegations of misconduct – has been moved to December 23, 2005.

The December 15, 2005 Meet and Confer

14.    On December 15, 2005, I, other Co-Lead Counsel, and Bankruptcy Counsel participated in a telephonic meet and confer with Debtors' Counsel in an attempt, among other things, to resolve the discovery issues relating to Lead Plaintiffs' Discovery Requests in connection with the KECP Motion and Debtors' objections thereto.   As set forth in greater detail below, the meet and confer focused on Debtors' four primary objections to Lead Plaintiffs' Discovery Requests, which include (i) the relevance of Lead Plaintiffs' Discovery Requests; (ii) the purpose of Lead Plaintiffs' Discovery Requests; (iii) the confidentiality and treatment of information related to certain beneficiaries of the KECP; and (iv) the individuals whom Lead Plaintiffs intend to depose and call as witnesses in connection with the hearing on the KECP Motion.

15.    First, Lead Plaintiffs explained that our discovery requests seek documents
which are relevant to the KECP Motion, namely, whether the KECP will reward
executives who were involved in Delphi's accounting improprieties.  We explained that,
because Lead Plaintiffs' Discovery Requests relate directly to determining (i) what the
intended beneficiaries of the KECP did or did not do with respect to Delphi's improper
accounting practices and inventory manipulations, and (ii) what Delphi did to ensure that
the executives who were involved in the accounting improprieties would not benefit
under the KECP, our discovery requests are highly relevant to evaluating the
appropriateness of and the business judgment behind Debtors' KECP Motion.  We also
pointed out that Debtors' own actions demonstrate that they believe that this information
is relevant to the motion.  Indeed, Debtors' Discovery Requests to Lead Plaintiffs, which
were served *prior* to Lead Plaintiffs' Discovery Requests to Debtors, seek the production
of almost identical information and documents.  *See* Exhibit B.

16.    In response, Debtors stated, in substance, that the requested discovery is
not relevant.

17.    Second, Lead Plaintiffs addressed Debtors' contention that Lead
Plaintiffs' Discovery Requests were an attempt to improperly obtain discovery in the
underlying securities case in violation of the stays imposed by the Bankruptcy Code and
the PSLRA.    We explained that, regardless of whether the requested information is
relevant to the underlying securities case, the requested information is highly relevant to
the particular issues raised by the KECP Motion filed by Debtors and that, as creditors
and parties-in-interest in the bankruptcy proceeding, Lead Plaintiffs are entitled to that
information irrespective of the underlying securities case and the related stays.    In

addition, we explained that Lead Plaintiffs' Discovery Requests were narrowly tailored to address the specific issues raised by the KECP Motion and Lead Plaintiffs' Objection thereto.

18.    In response, Debtors stated, in substance, that the requested discovery was an improper attempt to obtain discovery for the underlying securities case and thus grounds to refuse to produce such discovery in connection with the KECP Motion.

19.    Third, Lead Plaintiffs addressed Debtors' contention that providing identifying information for executives covered under the KECP, other than information about the five most highly-compensated beneficiaries of the KECP, constituted an "invasion of privacy."   We noted that concerns of privacy should not be an issue since Lead Counsel and Bankruptcy Counsel had duly executed the Confidentiality Stipulation and Order proposed by Debtors.  In response, Debtors stated (without elaboration) that the Confidentiality Stipulation and Order was insufficient to protect against invasions of privacy.  I then offered to consider any revised confidentiality order that Debtors believed would be sufficient to protect the privacy of the KECP beneficiaries.  Debtors' Counsel stated that they would "think about it."  As of this date, Debtors have not circulated any revision to the existing confidentiality order on this point.

20.    Fourth, we addressed Debtors' refusal to produce Sheehan for deposition. In doing so, we explained Lead Plaintiffs' rationale for seeking to depose Sheehan, including the reasons why Sheehan is a relevant and necessary witness.   We also explained Lead Plaintiffs' rationale for seeking to depose additional Delphi witnesses, including Marion, Renick and Rotko.  *See infra*, ¶¶ 27-30.  Notwithstanding our explanation, Debtors would not reconsider their refusal to produce the witnesses for

deposition, and would not even confirm whether these individuals are intended beneficiaries of the KECP.

21.     At the end of the meet and confer, in a final attempt to narrow the disputed discovery issues and refine the issues that may require the Court's intervention, Lead Counsel inquired whether any documents sought in Lead Plaintiffs' Discovery Requests existed. Specifically, we asked if Delphi had scrutinized whether any of the intended beneficiaries of the KECP were involved in the accounting improprieties and, if so, whether there were documents memorializing such consideration. Debtors refused to answer these questions. Debtors also refused to identify a witness knowledgeable regarding what the Company did or did not do to ensure that the wrongdoers did not benefit under the KECP.

22.     At no point during the December 15, 2005 meet and confer did Debtors' counsel claim that the discovery sought by Lead Plaintiff was burdensome to the estate.

23.     On December 15, 2005, Debtors provided Lead Plaintiffs with further objections and partial responses to Lead Plaintiffs' Discovery Requests. Debtors, in large part, restated their objections by incorporating the objections set forth in their December 12, 2005 letter. *See* Exhibit I. A copy of Debtors' December 15, 2005 letter setting forth Debtors' further objections and partial responses to Lead Plaintiffs' Discovery Requests is attached hereto as Exhibit K.

The Need For Judicial Intervention

24.     Despite Lead Plaintiffs' best efforts to resolve the discovery disputes raised by Debtors in their untimely objections to Lead Plaintiffs' Discovery Requests, the parties have been unable to reach a resolution concerning the issues raised above.

Accordingly, Lead Plaintiffs seek the Court's assistance in resolving the parties' discovery dispute.

25.    Specifically, Lead Plaintiffs respectfully request that the Court order Debtors to produce all documents and information responsive to Lead Plaintiffs' Discovery Requests.  As discussed above, the requested discovery is critical and necessary to evaluate whether Debtors' KECP constitutes the exercise of sound business judgment.  The requested discovery seeks information that goes directly to the heart of the KECP Motion, including, (i) the identities of the executives covered under the KECP; (ii) whether the executives covered under the KECP were involved in Delphi's improper accounting practices and inventory manipulations; and (iii) what, if anything, Delphi did do to ensure that the executives covered under the KECP were not involved in Delphi's accounting improprieties.

26.    Lead Plaintiffs also respectfully request that the Court order Debtors to produce Sheehan, Marion, Rotko and Renick for deposition reasonably in advance of the January 27, 2006 hearing on the KECP Motion.  These individuals are relevant to the KECP Motion because, as executives of Delphi for the last several years, these four individuals are presumably beneficiaries of the KECP, are familiar with other beneficiaries of the KECP and, as set forth in more detail below, are knowledgeable about Delphi's accounting improprieties and inventory manipulations.  Lead Plaintiffs note that these four individuals are a modest fraction of the nineteen current executives whom Lead Plaintiffs believe are tainted by the accounting scandal.  We summarize below the basis for requesting these four depositions.

27.    Sheehan was Delphi's Chief Accounting Officer and Controller from July 2002 until March 2005.  As such, he had a top-down view of Delphi's accounting practices and was in a position to know about Delphi's accounting improprieties, including who participated in various fraudulent accounting practices.  Sheehan would provide relevant testimony relating to his knowledge of the accounting improprieties, including, but not limited to his knowledge of the individuals involved in the particular transactions and whether the individuals involved are covered under the KECP.  *See* Complaint at ¶¶ 31, 195, 198, 605.

28.    Marion is the current and former Director of Delphi's Financial Reporting and Accounting Division.  As such, she was intimately familiar with and had access to all details relating to Delphi's financial reporting and accounting practices during the time period in which Delphi's accounting improprieties took place.  In particular, Marion was responsible for closing Delphi's books, including during the 2000 fiscal year, when, upon information and belief, Delphi re-opened its books after the close to record a $200 million financing transaction with Bank One as a "sale" of precious metals.  Marion would provide relevant testimony relating to her knowledge of Delphi's accounting improprieties, including, but not limited to, her knowledge regarding the $200 million Bank One transaction, including the individuals involved in the transaction and whether the individuals involved are covered under the KECP. *See* Complaint at ¶¶ 152-154.[2]

_____

[2]    We note that, in the course of Lead Plaintiffs' investigation, we have learned important details regarding Delphi's fraudulent transaction with Bank One.  Specifically, in December 2000, Delphi disguised a loan for $200 million from Bank One as a sale of precious metals from its inventory.  To make this $200 million loan appear as a sale of inventory on its books, Delphi re-opened its books for the year ended December 31, 2000 and made new journal entries.  It is our understanding that, because of her end-of-year financial duties, Laura Marion is knowledgeable about who was involved in re-opening

29.     Renick is a Director of Plant Production, Control, and Logistics for Delphi's Electronics Safety Division.  In this position, Renick is intimately familiar with Delphi's schemes to understate its inventory.  Renick would provide relevant testimony relating to his knowledge of Delphi's accounting improprieties, including, but not limited to, Delphi's schemes to understate its inventory, including the individuals involved in these practices and whether the individuals involved are covered under the KECP. *See* Complaint at ¶¶ 193-94.

30.     Rotko is the Head of Indirect Materials in Mexico for Delphi's Electronics and Safety Division.  In this position, Rotko is intimately familiar with Delphi's schemes to understate its inventory as well as Delphi's improper financing transactions with Setech.  Rotko would provide relevant testimony regarding his knowledge of individuals and accounting methods involved in understating inventory at Delphi's facilities in Mexico.  ¶¶136-38.

31.     Clearly, these four executives – even though they are just a sampling of the executives covered under Debtor's KECP – possess firsthand knowledge of Delphi's accounting fraud and the executives who either participated in or willfully ignored the fraud.  For this reason, these executives are highly relevant to determining whether the KECP serves to further enrich executive wrongdoers and constitutes the exercise of sound business judgment.

32.     In sum, Lead Plaintiffs submit that discovery is necessary to evaluate whether the proposed KECP is the product of sound business judgment and, as set forth in the accompanying Motion to Compel, respectfully ask the Court to order Debtors to

---

Delphi's books and recording journal entries to make the financing transaction look like a "sale."

produce (i) Sheehan, Marion, Renick and Rotko for deposition and (ii) the requested
documents and information.


I declare under penalty of perjury that the foregoing is true and correct.  Executed
on this 23rd day of December, 2005.


    ___ */s/ John P. Coffey*___
        John P. Coffey

**Exhibit 8**

Slip Copy                                                                                    Page 1
Slip Copy, 2005 WL 3177723 (S.D.N.Y.)
**(Cite as: Slip Copy)**

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,S.D. New York.
Gary W. DODSON, Plaintiff,
v.
CBS BROADCASTING INC., et al., Defendants.
**No. 02 Civ. 9270(KMW)(AJ.**

Nov. 29, 2005.

OPINION AND ORDER

PECK, Chief Magistrate J.
**\*1** Presently before the Court is plaintiff Dodson's
"Motion for Contempt & Court Order to Enforce
Court Issued Subpoena." (Dkt. No. 82.) The
motion is *DENIED* in all respects.

FACTS

Discovery in this case ended in late 2003, and in
June 2004 I recommended that defendants'
summary judgment motion should be granted in
part and denied in part. *Dodson v. CBS,* 02 Civ.
9270, 2004 WL 1336231 (S.D.N.Y. June 15,
2004) (Peck, M.J.). Judge Wood affirmed my
Report and Recommendation on August 31, 2004.
(Dkt. No. 55.) The parties thereafter were to file
their Pretrial Order, and the case is trial ready,
although no trial date has yet been set.

On or about October 5, 2005, Dodson served a
subpoena *duces tecum* on Bettina Plevan, counsel
of record for defendants, returnable at Dodson's
home in New Jersey, seeking 10 categories of
documents.

On or about October 18, 2005, defendants
objected to the subpoena.

On or about November 7, 2005, Dodson filed the
instant motion for contempt and to enforce the
subpoena (Dkt. No. 82), and on November 22,
2005, defendants filed their opposition papers
(Dkt.Nos.84-85).

ANALYSIS

Dodson's motion is procedurally defective in at
least two ways: (a) He did not request a
pre-motion conference, as required by Judge
Wood's rules (Judge Wood's Individual Practices
¶ 2.A; *see also* S.D.N.Y. Local Civil Rule 37.2);
and (b) The motion is not accompanied by a
Memorandum of Law, as required by S.D.N.Y.
Local Civil Rule 7.1.

Furthermore, even aside from the procedural
defects, Dodson's motion lacks merit.

Contempt is not available since defendants
responded to the subpoena by serving objections.
*See* Fed.R.Civ.P. 45(c)(2)(B). When objections to
a subpoena have been made, the correct procedure
is a motion to compel, not a motion for contempt.
*Id.*

As to the portion of Dodson's motion that seeks to
compel compliance with the subpoena: Discovery
closed long ago. Dodson's subpoena clearly seeks
discovery, as is apparent from his having the
subpoena returnable to his address in New Jersey
at the present time, instead of to Judge Wood's
courtroom at the time of trial. Moreover, the
scope of the request is broad and clearly is
designed for discovery, not last-minute trial needs
(such as for originals of documents where copies
were produced in discovery and there is a need for
the original at trial). While Rule 45 can be used to
subpoena documents to be introduced at trial as
trial exhibits, the need to do so should be limited
because of the liberal federal pretrial discovery
rules. Dodson here had ample discovery.

Rule 45 "[t]rial subpoenas [*duces tecum* ] may not
be used, however, as means to engage in
discovery after the discovery deadline has
passed." *Puritan Inv. Corp. v. ASLL Corp.,* No.
Civ. A. 97-1580, 1997 WL 793569 at \*1 (E.D.Pa.
Dec. 9, 1997) ( & cases cited therein); *accord,
e.g.,* 9 *Moore's Federal Practice,* § 45.02

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Slip Copy                                                                                               Page 2
Slip Copy, 2005 WL 3177723 (S.D.N.Y.)
**(Cite as: Slip Copy)**

(Matthew Bender 3d ed. 2005) ("Several courts have concluded that after the discovery deadline a party may not use a subpoena to obtain materials from third parties that could have been produced during discovery.") (citing cases); *Playboy Enter. Int'l Inc. v. OnLine Entm't, Inc.,* No. 00-Civ.-6618, 2003 WL 1567120 at *1-2 (E.D.N.Y. Mar. 13, 2003); *Mortgage Info. Servs., Inc. v. Kitchens,* 210 F.R.D. 562, 566-68 & n. 2 (W.D.N.C.2002) ("After reviewing the relevant case law on both sides of this issue, the Court adopts the rule followed by the majority of jurisdictions and holds that a Rule 45 subpoena does in fact constitute discovery.") (citing cases & authorities); *Dreyer v. GACS Inc.,* 204 F.R.D. 120, 122-23 (N.D.Ind.2001) ("Rule 45 subpoenas constitute 'discovery' within the meaning of Rules 26 and 34.... [T]his Court, like *Rice,* does not believe 'that a party should be allowed to employ a subpoena after a discovery deadline to obtain materials from third parties that could have been produced during discovery.'"); *Grant v. Otis Elevator Co.,* 199 F.R.D. 673, 675 (N.D.Okla.2001) ("Litigants may not use the subpoena power of the court to conduct discovery after the discovery deadline ."); *Alper v. United States,* 190 F.R.D. 281, 283-84 (D.Mass.2000); *Rice v. United States,* 164 F.R.D. 556, 558 & n. 1 (N.D.Okla.1995); *BASF Corp. v. Old World Trading Co.,* No. 86 C 5602, 1992 WL 24076 at *2 (N.D.Ill. Feb. 4, 1992) (Trial subpoenas "may not be used as a means to engage in further discovery.... Here, discovery has been closed for almost eleven months, and the court will not allow the parties to engage in discovery through trial subpoenas. Furthermore, the court's policy of requiring parties to submit a pretrial order detailing those documents which it may use at trial is rendered nugatory if a trial subpoena may issue demanding documents not previously produced or identified."); *Stockwell v. Am. Allsafe Co.,* No. CIV-84-1179, 1986 WL 13941 at *1 (W.D.N.Y. Dec. 9, 1986); *Windsor Commc'ns Group, Inc. v. Price Waterhouse,* No. Civ. A

85-4119, 1986 WL 9888 at *1 (E.D.Pa. Sept. 8, 1986); *Pitter v. American Express Co.,* 82 Civ. 7451, 1984 WL 1272 at *6 (S.D.N.Y. Nov. 27, 1984); *United States v. Watchmakers of Switzerland Info. Ctr. Inc.,* 27 F.R.D. 513, 515 (S.D.N.Y.1961).

**\*2** Here, it is clear from the scope of Dodson's subpoena (and its return time and place) that it is for discovery purposes. As such, it is quashed and Dodson's motion is *DENIED.*

CONCLUSION

For the reasons set forth above, Dodson's motion for contempt and to enforce the subpoena *duces tecum* (Dkt. No. 82) is *DENIED.*

SO ORDERED.

S.D.N.Y.,2005.
Dodson v. CBS Broadcasting, Inc.
Slip Copy, 2005 WL 3177723 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:02cv09270 (Docket) (Nov. 20, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit 9**

Not Reported in F.Supp.                                                          Page 1
Not Reported in F.Supp., 1995 WL 736907 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

C
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
COSTAMAR SHIPPING CO., LTD., Petitioner,
v.
KIM-SAIL, LTD., Respondent.
**No. 95 CIV. 3349 (KTD).**

Dec. 12, 1995.

Edward P. Flood, Chalos & Brown, P.C., New York City.
Terry L. Stoltz, New York City.

MEMORANDUM AND ORDER

FRANCIS, United States Magistrate Judge.
**\*1** The plaintiff in this action, Costamar Shipping Co., Ltd. ("Costamar") seeks to compel non-party Kersten Shipping Agency, Inc. ("Kersten") to produce for inspection certain documents identified in a subpoena. In addition, Costamar seeks attorneys' fees and costs incurred in connection with bringing this motion. For the reasons that follow, Costamar's motion is denied.

*Background*

On June 27, 1995, this Court confirmed an arbitration award of $358,028.13 payable to Costamar by Kim-Sail, Ltd. ("Kim-Sail"). This arbitration arose from a dispute between Costamar, FN1 owner of the shipping vessel M/V Adventure in 1991 and 1992, and Kim-Sail, FN2 which chartered the M/V Adventure. To date, Kim-Sail has not paid any portion of the judgment.

To aid in satisfying the judgment, Costamar served Kim-Sail with a subpoena pursuant to Rule 69(a) of the Federal Rules of Civil Procedure. It personally served Philip Gardner, Kim-Sail's Corporate Secretary, on July 6, 1995. The subpoena demanded that Kim-Sail produce records that would assist Costamar in identifying

assets belonging to Kim-Sail.

On that same day, Costamar personally served Mr. Gardner with a subpoena addressed to Kersten Shipping (the "First Kersten Subpoena"). Mr. Gardner has been the President of Kersten Shipping since August 1994 and was Chartering Manager of Kersten in 1991. Deposition of Philip C. Gardner, dated July 19, 1995 ("Gardner Dep.") at 41. Kersten Shipping is a New York corporation that serves as Kim-Sail's general agent in the United States, and it acted in this capacity in 1991 when it chartered the M/V Adventure from Costamar. Kersten has acted as agent for a number of other companies engaged in commercial shipping in addition to Kim-Sail. Gardner Aff. at ¶ 2.

The First Kersten Subpoena required the production of: (1) all Kersten financial and property records related to Kim-Sail, (2) Kersten's most recent bank ledger sheets with respect to accounts owned by Kim-Sail, and (3) real property deeds owned by Kim-Sail in Kersten's possession. It also sought to depose Mr. Gardner. The required statutory fees were tendered at the time of service. Fed.R.Civ.P. 45(b)(1).

In response to the subpoena, Mr. Gardner produced copies of four time charters involving other vessels Kim-Sail had chartered between 1993 and 1995, as well as check stubs from Kim-Sail's New York checking account which had been closed in 1993. Flood Aff. at ¶ 22. During his deposition, Mr. Gardner noted that he had not attended any of Kim-Sail's Board of Directors meetings and did not know the names of its president, vice-president, and treasurer. Gardner Dep. at 8-10, 16, 89. In addition, although he was Kim-Sail's Corporate Secretary, he did not know any of Kim-Sail's personnel in Grand Cayman where it is incorporated, but only corresponded with a post office box address there. Gardner Dep. at 11-12, 15. Responding to the plaintiff's query concerning Kim-Sail's assets, Mr.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.                                                                    Page 2
Not Reported in F.Supp., 1995 WL 736907 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

Gardner testified that Kim-Sail was an inactive company and had no assets to satisfy the judgment. Gardner Aff. at ¶ 11.

**\*2** Subsequent to the deposition, Kersten produced bank statements from Kim-Sail's money market account from July 1993 through June 1995, an insurance cover note, and the agency agreement between Kersten Shipping and Kim-Sail which had been executed in July 1979. Flood Aff. at ¶ 24. Mr. Gardner asserted that because of limited time, he had not been able to gather these documents by the deposition date. Gardner Aff. at ¶ 5. In addition, Kersten advised Costamar that it possessed a June 30, 1993 Accounts Receivable Report that covered activities as far back as 1991 and was still trying to determine if it could obtain any voyage files prior to August 1993. Gardner Aff. at ¶ 8.

On the basis of Mr. Gardner's testimony that revenue derived from Kim-Sail had been placed directly in Kersten's general bank account, [FN3] Costamar alleged that Kersten had commingled its assets with Kim-Sail's. Flood Aff. at ¶ 27. Recognizing that some of Kim-Sail's income had been deposited in Kersten's bank account and that Kersten had not produced its bank records in response to its initial subpoena, Costamar personally served Ben Bradburn of Kersten with a second subpoena (the "Second Kersten Subpoena"). No witness fee was tendered at this time.

The subject of this motion, the Second Kersten Subpoena, requested the production of: (1) all financial and business records maintained by Kersten pertaining to Kim-Sail's activities, (2) a copy of all charter parties in which Kersten acted as the general agent between 1991 and the present, (3) Kersten's bank records for the years 1991-1995, (4) all documents relating to corporate securities owned by Kersten, (5) all financial records of businesses in which Kersten has a ownership interest, (6) the names and addresses of

enterprises currently indebted to Kersten, (7) copies of Kersten's income tax returns for the last five years, and (8) all titles to property owned by Kersten. Kersten objected to this subpoena. It stated that Costamar had all pertinent Kim-Sail documents, apart from the charter documents which Costamar had agreed to view in Kersten's office. With regard to the other documents, Kersten objected to their production because they referred to operations of Kersten and not of Kim-Sail.

*Discussion*

A. *Service of the Second Kersten Subpoena*

Kersten asserts that the Second Kersten Subpoena was improperly served because of Costamar's failure to tender statutory fees at the time of service. Where no fee is tendered with the service of a subpoena requiring a witness' attendance, the service is invalid. *CF & I Steel Corp. v. Mitsui & Co. (USA),* 713 F.2d 494, 496 (9th Cir.1983). Rule 45(b)(1) of the Federal Rules of Civil Procedure states that "service of a subpoena ... shall be made by delivering a copy [of the subpoena] ... and, *if the person's attendance is commanded,* by tendering to that person the fees for one day's attendance and the mileage allowed by law." Fed.R.Civ.P. 45(b)(1) (emphasis added). Since the Second Kersten Subpoena only required the production of documents and not the attendance of a witness, service was valid.

B. *Entitlement to Discovery*

**\*3** Rule 69 of the Federal Rules of Civil Procedure provides that "[i]n aid of the judgment or execution, the judgment creditor ... may obtain discovery from any person, including the judgment debtor, in the manner provided in these rules or in the manner provided by the practice of the state in which the district court is held." Fed.R.Civ.P. 69(a). Under this rule, discovery may be "permitted against a non-party where the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

Not Reported in F.Supp.                                                          Page 3
Not Reported in F.Supp., 1995 WL 736907 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.)

relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them". *Magnaleasing, Inc. v. Staten Island Mall,* 76 F.R.D. 559, 562 (S.D.N.Y.1977) (citing *Caisson Corp. v. County West Building Corp.,* 62 F.R.D. 331, 335 (E.D.Pa.1974)). Pursuant to Rule 69(a), "the judgment creditor must be given the freedom to make a broad inquiry to discover hidden or concealed assets of the judgment debtor." *Caisson,* 62 F.R.D. at 334 (citations omitted); 12 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3014 at 72 (1973).

Generally, non-parties may only be examined about the assets of a judgment debtor and cannot be required to disclose their own assets. *Magnaleasing,* 76 F.R.D. at 561-62; *Caisson,* 62 F.R.D. at 334; *Burak v. Scott,* 29 F.Supp. 775, 776 (D.D.C.1939) (quashing Rule 69 subpoena requiring non-parties to disclose their individual assets); 12 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 3014 at 72 (1973). Thus, under Rule 69(a) and existing case law, the general rule is that non-party discovery is limited to a search for the defendant's hidden assets. *Magnaleasing,* 76 F.R.D. at 561-62 (citing *Burak,* 29 F.Supp. at 776). Applying this rule here, discovery must therefore be restricted to the alleged transfer of Kim-Sail's assets to Kersten. With regard to the Second Kersten Subpoena, only Kersten records relating to activities conducted on behalf of Kim-Sail are discoverable. However, this category of documents has purportedly been produced pursuant to the First Kersten Subpoena.

In the alternative, Costamar alleges that an alter ego relationship exists between Kim-Sail, the judgment debtor, and Kersten. If such a relationship were established, Costamar could pierce the corporate veil and obtain discovery of Kersten's assets. In *Trustees of North Florida*

*Operating Engineers Health & Welfare Fund v. Lane Crane Service, Inc.,* 148 F.R.D. 662, 664 (M.D.Fla.1993), the court held that evidence that a non-party was an alter ego of the judgment debtor was adequate to warrant discovery from the non-party in aid of execution. However, the mere allegation of an alter ego relationship is insufficient; it must be supported by facts showing the basis for the assertion. *Strick Corp. v. Thai Teak Products Co.,* 493 F.Supp. 1210, 1218 (E.D.Pa.1980).

In New York, courts "disregard the corporate form reluctantly." *Itel Containers Int'l. Corp. v. Atlanttrafik Express Service Ltd.,* 909 F.2d 698, 703 (2d Cir.1990). The corporate veil will be pierced only when the corporate "form has been used to achieve fraud, or when the corporation has been so dominated by an individual or another corporation ... and its separate identity so disregarded, that it primarily transacted the dominator's business rather than its own and can be called the other's alter ego.' " *Gartner v. Snyder,* 607 F.2d 582, 586 (2d Cir.1979) (citation omitted). The factors that courts consider in determining whether to pierce the corporate veil include the intermingling of corporate and personal funds, undercapitalization of the corporation, failure to observe corporate formalities including the maintenance of separate books and records, failure to pay dividends, insolvency at the time of a transaction, siphoning off of funds by the dominant shareholder, and the inactivity of other officers and directors. *William Wrigley Jr. Co. v. Waters,* 890 F.2d 594, 600-01 (2d Cir.1989) (collecting cases). Although there is no set rule as to how many of these factors must be present to pierce the corporate veil, the "general principle followed by the courts has been that liability is imposed when doing so would achieve an equitable result." *Id.* at 601 (citation omitted).

**\*4** An inference can be drawn from Kersten's

Not Reported in F.Supp.                                                                          Page 4
Not Reported in F.Supp., 1995 WL 736907 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**

commingling of its funds with those of Kim-Sail that there may have been a transfer of assets between the two corporations. The general rule is that an agent must segregate its principal's funds from its own:

[u]nless otherwise agreed, an agent receiving or holding things on behalf of the principal is subject to a duty to the principal not to receive or deal with them so that they will appear to be his own, and not so to mingle them with his own things as to destroy their identity.

*Restatement (Second) of Agency* § 398 (1957). However, the mere fact that there is co-mingling of assets is not enough to establish a prima facie case of alter ego. *See William Wrigley,* 890 F.2d at 600-01 (alter ego analysis requires consideration of totality of circumstances). In addition, there has been no evidence that Kersten used Kim-Sail for its own private ends, another element important to demonstrating an alter ego relationship. On the contrary, Kim-Sail was indebted to Kersten for $420,000. Gardner Aff. at ¶ 11. Furthermore, there has been no evidence of fraud or unjust enrichment. Thus, Costamar has not demonstrated that the corporate veil should be pierced.

Nevertheless, further discovery of Kersten's relationship with Kim-Sail may be appropriate. If, through such discovery, Costamar can provide evidence of fraud or unjust enrichment, additional discovery into Kersten's assets may be warranted on the basis of an alter ego theory.

### C. *Attorney's Fees*

Pursuant to rule 37(a)(4) of the Federal Rules of Civil Procedure, Costamar seeks reasonable expenses incurred in bringing this motion, including attorneys' fees. Because its motion is denied, Costamar's request for attorneys' fees is also denied.

### *Conclusion*

For the reasons set forth above, Costamar's motion to compel Kersten to produce documents in response to the Second Kersten Subpoena is denied.

SO ORDERED.

FN1. Costamar is a foreign corporation with an office and principal place of business in Piraeus, Greece. Affidavit of Edward P. Flood dated August 23, 1995 ("Flood Aff.") at ¶ 3.

FN2. Kim-Sail is a foreign corporation incorporated in the Cayman Islands. Affidavit of Philip Gardner, dated August 28, 1995 ("Gardner Aff.") at ¶ 1.

FN3. The following exchange occurred between Mr. Gardner and Costamar's lawyers:

Q: Pursuant to the charter parties that Kim-Sail had worked out with its shippers and/or subcharterers, they were required to pay freight by paying into Kim-Sail account; is that correct?

A: No, they would be instructed to pay into Kersten's account at least since I have been president. We have taken the freight money, any freight money into Kersten's account and paid expenses out of that account. What was done before that, I really don't know.

Q: So the money is put into Kersten's account?

A: Since I have been president, that is the way I have handled it.

Gardner Dep. at 39-40.

S.D.N.Y.,1995.
Costomar Shipping Co., Ltd. v. Kim-Sail, Ltd.
Not Reported in F.Supp., 1995 WL 736907 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

Westlaw.

Not Reported in F.Supp.                                                                                      Page 5
Not Reported in F.Supp., 1995 WL 736907 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.)**


• 1:95cv03349 (Docket) (May. 08, 1995)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

**Exhibit 10**

Not Reported in F.Supp.2d                                                    Page 1
Not Reported in F.Supp.2d, 2001 WL 487413 (S.D.N.Y.)
(Cite as: Not Reported in F.Supp.2d)

H
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court, S.D. New York.
Han-Mo SONG, Plaintiff,
v.
DREAMTOUCH, INC., Chol-Ho Chong, Young
Sook Chong, Defendants.
No. 01 Civ. 0386(AGS).

May 8, 2001.

MEMORANDUM ORDER

SCHWARTZ, J.

I. Factual Background and Instant Motions

**\*1** Familiarity with the facts of this action is presumed here; for a description of such facts, the parties are referred to the Court's decision on plaintiff's motion for preliminary injunction issued on March 1, 2001. In sum, the case centers on a Technology Transfer Agreement (the "Agreement"), entered into by the parties in August 2000, by which plaintiff transferred certain rights to defendants in an invention known as the One-Touch Automatic Dialer. Plaintiff was to receive certain payments and was to satisfy certain duties as chief technical officer of defendant Dreamtouch. As a result of disagreements between the parties as to whether plaintiff satisfied his duties under the Agreement, plaintiff's employment with defendants was terminated on January 4, 2001.

This diversity action followed. In the Amended Complaint, plaintiff asserts claims under New York law for: (i) fraudulent inducement to contract; (ii) breach of contract; and (iii) breach of fiduciary duty. He requests certain declaratory relief, damages and recission of the contract. (First Amend. Verified Compl. ¶¶ 39-52.) Defendants have asserted counterclaims for: (i) breach of contract; (ii) breach of the implied

covenant of good faith and fair dealing; and (iii) tortious interference with prospective economic advantage. Defendants request monetary damages based on payments made by defendants to plaintiff (and/or his sister-in-law) for delivery of equipment for the One-Touch Automatic Dialer system, and defendants' expenses incurred in support of Dreamtouch's efforts to develop and market the relevant technology.

Two previous applications by plaintiff for preliminary relief, namely, for a temporary restraining order and a preliminary injunction, were respectively denied by the Court by orders dated January 31, 2001 and March 1, 2001.

Presently pending before the Court are (i) plaintiff's motion to dismiss defendants' counterclaims and strike defendants' affirmative defenses, pursuant to Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)") and Fed.R.Civ.P. 12(f) ( "Rule 12(f)"); (ii) plaintiff's motion to compel discovery and for sanctions under Fed.R.Civ.P. 37 ("Rule 37") and for disqualification of defense counsel; and (iii) plaintiff's motion, made by order to show cause, for appointment of a temporary receiver under New York Civil Practice Law and Rules 6401 ("CPLR 6401").

Two other applications, by Dreamtouch to compel plaintiff to appear at a deposition and by third party SK Telink to quash a deposition subpoena, are also considered *infra.*

II. Motion to Strike Affirmative Defenses and
Dismiss Counterclaims

Plaintiff moves to dismiss defendants' affirmative defenses and counterclaims.

A. Legal Standard

In deciding a Rule 12 motion to dismiss counterclaims, the Court must read the pleading as a whole, view the counterclaims in the light most favorable to the claimant, and accept the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                    Page 2
Not Reported in F.Supp.2d, 2001 WL 487413 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

claimant's factual allegations as true. *See Twinlab Corp. v. Signature Media Servs., Inc.,* No. 99 Civ. 169, 1999 WL 1115237(AGS), at 3 (S.D.N.Y. Dec. 7, 1999) (citing *Gant v. Wallingford Bd. of Educ.,* 69 F.3d 669, 673 (2d Cir.1995)); *Yoder v. Orthomolecular Nutrition Institute,* 751 F.2d 555, 562 (2d Cir.1985) (citing *Conley v. Gibson,* 355 U.S. 41, 47-48 (1957)); *see also Meridien Int'l Bank Ltd. v. Government of the Republic of Liberia,* 23 F.Supp.2d 439, 445 (S.D.N.Y.1998). The Court's function is not to weigh the evidence that might be presented at trial, but merely to determine whether the pleading itself is legally sufficient. *See Festa v. Local 3 Int'l Brotherhood of Electrical Workers,* 905 F.2d 35, 37 (2d Cir.1990). Under Rule 12(b)(6) specifically, dismissal is inappropriate unless "it appears beyond doubt that the [non-movant] can prove no set of facts in support of the claim which would entitle him to relief." *Staron v. McDonald's Corp.,* 51 F.3d 353, 355 (2d Cir.1995) (quoting *Conley,* 355 U.S. at 45-46).

**\*2** "[T]he principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable [that party] to answer and prepare for trial." *Levisohn, Lerner, Berger & Langsam v. Med. Taping Sys., Inc.,* 10 F.Supp.2d 334, 344 (S.D.N.Y.1998) (quoting *Salahuddin v. Cuomo,* 861 F.2d 40, 42 (2d Cir.1988)). Although the pleading requirements under Fed.R.Civ.P. 8(a) ("Rule 8(a)") are construed liberally, "[l]iberal construction has its limits, for the pleading must at least set forth sufficient information for the court to determine whether some recognized legal theory exists upon which relief could be accorded the pleader. If it fails to do so, a motion under Rule 12(b)(6) will be granted." *Id.* (quoting 2 *Moore's Federal Practice* § 12.34[1][b] at 12-60 (3d ed.)).

In addition, pursuant to Rule 12(f), a court may strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Rule 12(f). A motion to strike will not be granted unless three prerequisites have been satisfied: (i) it must appear certain that the plaintiff would succeed despite any facts which could be proved in support of the defense; (ii) even where the facts are undisputed, the motion may not implicate disputed and substantial questions of law, particularly when there has been no significant discovery; and (iii) plaintiff must show that it is prejudiced by the inclusion of the defense. *See Estee Lauder, Inc. v. Fragrance Counter, Inc.,* 189 F.R.D. 269, 271-72 (S.D.N.Y.1999) (citations omitted).

## B. Affirmative Defenses

The Court dismisses defendants' third affirmative defense (asserting that the Complaint "does not hold a valid claim") as duplicative of their first affirmative defense (stating that the Complaint fails to state a claim upon which relief can be granted). The Court dismisses defendants' fourth affirmative defense with leave to replead within 21 days from the date of its Order, on the ground that the statement asserting such defense (namely, that "defendants were not to mitigate its damages") is confusing and ambiguous. FN1

> FN1. Defendants' memorandum of law reflects that this defense asserts that *plaintiff* failed to mitigate his damages. (Memorandum of Law in Opposition to Plaintiff's Motions to Strike Defendants' Affirmative Defenses and to Dismiss Defendants' Counterclaims at 17.)

The Court denies plaintiff's motion to dismiss with respect to the remainder of the affirmative defenses. On the current record, there are disputed issues of fact that implicate whether plaintiff has stated a claim, whether waiver, estoppel, or laches may apply, whether plaintiff's claim would be barred by the doctrine of unclean hands, and whether defendants have made a profit from sales

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                        Page 3
Not Reported in F.Supp.2d, 2001 WL 487413 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

of the One-Touch devices or have been unjustly enriched. Moreover, plaintiff has not demonstrated why it would be prejudiced by the maintenance of such defenses, particularly at this early stage of the litigation.

### C. Counterclaims

Defendants' first three counterclaims assert claims for breach of contract; their fourth counterclaim, for breach of the covenant of good faith and fair dealing, is derivative of the contract claims. In order to assert a breach of contract claim, a plaintiff must establish the existence of an agreement, adequate performance by plaintiff, a breach by defendants, and consequent damages. *Harsco Corp. v. Segui,* 91 F.3d 337, 348 (2d Cir.1996). Each of the three causes of action, read liberally and in the context of the defendants' pleading, adequately asserts a breach of contract claim. Each arises out of the parties' Agreement, and the damages allegedly incurred by defendants arising out of plaintiff's nonperformance of the Agreement. Nevertheless, the Court dismisses these claims with leave to replead within 21 days from the date of its Order, because the claims arise out of the same Agreement and are not properly pled as separate causes of action. *See Salahuddin v. Cuomo,* 861 F .2d 40, 42 (stating that where a pleading does not contain short and plain statement of the claim, the court may dismiss the claim with leave to replead, as "[u]nnecessary prolixity in a pleading places an unjustified burden on the court and the party who must respond to it because they are forced to select the relevant material from a mass of verbiage.") (citation omitted).

**\*3** Plaintiff is incorrect in asserting that the actions of plaintiff which are implicated by defendants' counterclaims are clearly "extrinsic to the Agreement." (Plaintiff's Memorandum of Law in Support of His Motion under Federal Civil Rules 12(b)(6) and 12(f) ("Pl.Mem.Dis.") at 13-16.) The Agreement is far from clear as to

plaintiff's obligations thereunder as Chief Technical Officer of Dreamtouch. (Agreement ¶¶ 4.3, 4.4.)

Finally, plaintiff asserts that the Court should dismiss defendants' "exemplary damages" request as part of their fifth counterclaim for tortious interference with prospective economic advantage. Although no public harm is explicitly alleged in defendants' pleading, the Court declines to dismiss this damages request pursuant to Rule 12(b)(6) because, as plaintiff acknowledges, the existence of such damages will be based on defendants' offer of proof, which goes beyond the pleadings. (Pl. Mem. Dis. at 18 (asserting that "defendants will be unable to tender objective proof" of such damages).)

### D. Allegations Related to Plaintiff's Criminal Conviction

Plaintiff requests the Court to strike defendants' allegations in their counterclaims, specifically paragraph 34 thereto, concerning plaintiff's alleged criminal conviction for rape in Korea. (Pl. Mem. Dis. at 18-20.) The Court grants this request and strikes the material as irrelevant to the claims in this action and unduly prejudicial to plaintiff under Fed.R.Evid. 403.

### III. Motion to Compel Discovery, For Sanctions, and to Disqualify Defense Counsel

### A. Motion to Compel

Plaintiff moves, pursuant to Rule 37, to compel discovery and for sanctions on the ground that (i) defendants have failed to comply with two separate orders of this Court to provide discovery, (ii) have failed to respond to plaintiff's first request for documents and, (iii) have failed to appear for depositions.

The record reflects that defendants have not provided an adequate response to plaintiff's document request, pursuant to Fed.R.Civ.P. 34,

FN2 failed to adequately comply with plaintiff's notice of deposition pursuant to Fed.R.Civ.P. 30, and have failed to respond to plaintiff's demand for the address and telephone number of a potential witness, Jun Kim, in violation of Fed.R.Civ.P. 33. (Kimm Decl. Disq. ¶¶ 6-23.) The Court also finds that defendants have disregarded the Court's order, issued at a conference on March 1, 2001, to provide a response to plaintiff's document request by March 8, 2001 in accordance with the Federal Rules of Civil Procedure. Accordingly, the Court orders the production of all documents requested by plaintiff, or an adequate objection thereto, by May 14, 2001. The Court orders that the depositions of defendants Chol-Ho Chong and Young Sook Chong shall commence on May 30, 2001, at 10 a.m.

> FN2. The record reflects that defendants simply provided a list of exhibits as their "written response" to the document request, referencing certain documents provided in opposition to plaintiff's preliminary injunction motion and attaching certain other documents. This response was inadequate in form, and, as plaintiff points out, in substance, as it omitted information (or an appropriate objection) concerning Dreamtouch and the One-Touch Dialing System, specifically, documents related to manufacturing, sales or accounting. (Kimm Decl. Disq., Exs. 3, 10.) The fact that defendants' counsel produced "all of defendants' documents that I had in my possession," or that "settlement discussions [ ] led me to believe that discovery may ultimately not be necessary" does not cure the deficiency. (Declaration of Sukjin Henry Cho in Opposition to Plaintiff's Rule 37 Motion and Motion to Disqualify Defense Counsel ("Cho Decl. Disq.") ¶¶ 8, 17.) And although it is unfortunate that the parties were not able to agree on a discovery schedule, the fact that defendants' counsel attempted to negotiate one, unsuccessfully, does not cure defendants' failure to respond. (*Id.* ¶ 4.)

Further, the Court finds that defendants' failure to comply with plaintiff's initial discovery requests does not warrant the extreme sanctions requested by plaintiff, which include striking defendants' pleadings or precluding defendants from offering evidence "related to the categories of documents they have withheld." FN3 (Plaintiff's Reply Memorandum of Law in Further Support of His Motions for Rule 37 Relief and Disqualification of Counsel ("Pl.Rep.Disq.") at 11-12.) However, the failure to respond as directed by the Court, *supra, will* result in sanctions against defendants' counsel and/or defendants.

> FN3. The Court notes that an award of costs in making the motion to plaintiff is unnecessary here, pursuant to Rules 37(a)(4)(A) and 37(c), both because plaintiff's Rule 37 motion is granted in part and denied in part, and because an award of fees would be otherwise unjust.
> The Court also notes in this regard that defendants' failure to comply with discovery was not aggravated by the presence of an expedited discovery order. The Court's order for expedited discovery was issued in the context of plaintiff's motion for preliminary injunction, which was denied on March 1, 2001. And no discovery schedule was ever set. The Court disagrees with plaintiff's counsel's characterization of this case, at this stage, as an "expedited action." (Reply Declaration of Michael S. Kimm, Esq. in Further Support of Plaintiff's Motion for (1) Civil Rule 37 Relief and (2) Disqualification of Defense Counsel ¶ 5.)

**\*4** The Court will also set a discovery schedule governing the remainder of discovery in this

action. The Court warns defendants that failure to provide documents or to serve papers on time, which plaintiff alleges has been defendants' counsel's habit, in disregard of Court orders, may result in sanctions.

### B. Disqualification of Counsel

Plaintiff also moves to disqualify defense counsel, Sukjin Henry Cho ("Cho"), on the grounds that Cho has "failed to comply with basic rules of practice" and "his prior actions have tainted the integrity and fairness of the adversarial process." (Declaration of Michael S. Kimm in Support of Plaintiff's Motion for (1) Civil Rule 37 Relief and (2) Disqualification of Defense Counsel ("Kimm Decl. Disq.") ¶¶ 1, 2.) In particular, plaintiff claims that Cho has (i) "repeatedly failed to review the requirements of the Local Rules and Federal Civil Rules," in particular by serving papers late, failing to properly notice his change of address, and attending a Second Circuit hearing without being admitted to that court, and (ii) has falsely accused plaintiff of being convicted and serving time in jail in Korea. (Song Decl. Disq. ¶¶ 6-7; Plaintiff's Memorandum of Law in Support of His Motions for Rule 37 Relief and Disqualification of Counsel at 6-8.)

This Circuit has recognized New York's Code of Professional Responsibility (the "Code"), as promulgated by the American Bar Association, as prescribing appropriate guidelines for the professional conduct of the Bar, and this district requires that attorneys adhere to the Code. See NCK Org. Ltd. v. Bregman, 542 F.2d 128, 129 n. 2 (2d Cir.1976). Moreover, this district requires that attorneys adhere to the Code as adopted by the Appellate Division of the New York State Supreme Court. Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, Local Civil Rules 1.3, 1.5 (1997).

A motion to disqualify is within the Court's

discretion. Sumitomo Corp. v. J.P. Morgan & Co., Inc., Nos. 99 Civ. 8780, 99 Civ. 4004, 2000 WL 145747, at *3 (S.D.N.Y. Feb. 8, 2000) (citing Cheng v. GAF Corp., 631 F.2d 1052, 1055 (2d Cir.1980), vacated on other grounds, 450 U.S. 903 (1981)). In this Circuit, motions for disqualification are generally viewed with disfavor because disqualification of counsel impinges on a party's right to employ counsel of choice, and such motions are often interposed for tactical purposes. See Evans v. Artek Sys. Corp., 715 F.2d 788, 791-92 (2d Cir.1983). Although doubts should be resolved in favor of disqualification, a party seeking disqualification must meet a high standard of proof before disqualification will be granted. See Sumitomo, 2000 WL 145747, at *3. The Second Circuit has made clear that disqualification is appropriate only if there is a significant risk that an attorney's conduct will taint the trial, such as where his unethical conduct will prejudice his adversary. Id. (citing Armstrong v. McAlpin, 625 F.2d 433, 444-46 (2d Cir.1980) (en banc), vacated on other grounds and remanded sub nom, McAlpin v. Armstrong, 449 U.S. 1106 (1981)); Gentner v. Shulman, 55 F.3d 87, 89 (2d Cir.1995). Such risk arises essentially in cases where there is an irreconcilable conflict of interest or where an attorney may use privileged information concerning his adversary to gain an unfair advantage. See Board of Educ. of the City of New York v. Nyquist, 590 F .2d 1241, 1246 (2d Cir.1979)); ABA Com. on Ethics and Professional Responsibility, Code of Professional Responsibility, Canons 4 and 5.

**\*5** Here, the Court reiterates that defendants' reference to plaintiff's alleged rape conviction in Korea, in their pleadings and letters to the Court, is wholly improper. However, it also finds that plaintiff has not shown that Cho has violated any of the Code's ethical canons or, more generally, engaged in unethical conduct that would taint the trial of this matter. Accordingly, plaintiff's motion

Westlaw.

Not Reported in F.Supp.2d                                                                    Page 6
Not Reported in F.Supp.2d, 2001 WL 487413 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

to disqualify counsel is denied. However, the Court directs Cho to file a notice of change of address with the Court which specifies his proper address, and to specify an address for all mailings, in order to facilitate future communication between the parties, and between the Court and defendants.

### IV. Motion for Appointment of a Temporary Receiver

Plaintiff moves, by order to show cause and pursuant to CPLR 6401, for the appointment of a temporary receiver to manage the affairs of Dreamtouch during the pendency of this action.

"[T]he appointment of a receiver is an extraordinary remedy, which 'should be employed with the utmost caution and granted only in cases of clear necessity to protect plaintiff's interests in [certain] property." ' *Haggiag v. Brown,* 728 F.Supp. 286, 294 (S.D.N.Y.1990) (quoting *Republic of the Philippines v. New York Land Co.,* 852 F.2d 33, 36 (2d Cir.1988)); CPLR 6401. It "is an extreme remedy resulting in the taking and withholding of possession of property from a party without adjudication on the merits." *Schachner v. Sikowitz,* 462 N.Y.S.2d 49, 49 (2d Dep't 1983). Such relief may only be granted under CPLR 6401 "where the applicant makes 'a clear evidentiary showing of the necessity for the conservation of property and the protection of the interests of the litigant." ' *Id.* (quoting *Glassner v. Kaufman,* 244 N.Y.S.2d 449 (1st Dep't 1963)).

As plaintiff points out, New York courts have appointed receivers in cases where (i) the plaintiff offered "clear and convincing proof" of a danger of irreparable loss, where defendant was on the verge of insolvency and might well dissipate proceeds due plaintiff, *see Somerville House Management v. Am. Television Syndication Co., Inc.,* 474 N.Y.S.2d 756, 757 (1st Dep't 1984), or (ii) the actions of various antagonists, e.g., corporate stockholders, with interdependent rights

in certain property threaten the well-being or continued viability of the corporation, *see Modern Telecommunications, Inc. v. Dalessandro,* 587 N.Y.S.2d 315, 318 (1st Dep't 1992). New York courts have declined to appoint receivers where the applicant makes an insufficient demonstration of waste or mismanagement of the property in question, even where, as here, an ownership interest is present. *See, e.g., B.D. & F Realty Corp. v. Lerner,* 648 N.Y.S.2d 596, 597 (1st Dep't 1996); *Groh v. Halloran,* 448 N.Y.S.2d 680, 682 (1982); *Hahn v. Garay,* 387 N.Y .S.2d 430, 430 (1st Dep't 1976).

In this case, the Court finds that plaintiff has not made the requisite showing. Plaintiff's grounds for requesting the appoint of a receiver are as follows: (i) defendants' alleged failure to comply with this Court's orders to provide certain discovery to plaintiff, which is also the focus of plaintiff's Rule 37 motion, *supra;* (ii) defendants' failure to pay plaintiff a percentage of Dreamtouch's profits or to provide an accounting of Dreamtouch's finances; (iii) defendant Chol-Ho Chong's ("Chong's") purported threats, made to "at least two third-parties" that he will put "the company in bankruptcy"; (iv) Chong's purported statement to plaintiff that plaintiff's name would be removed as a shareholder of Dreamtouch in order to sell the company to a third party, and that plaintiff would have nothing if he does not drop the instant lawsuit; (v) Chong's purported statement that he will delay this case so that plaintiff will be unable to obtain any meaningful relief; and (vi) defendants' refusal to provide plaintiff access to the company's books and records in order to ascertain the company's sales and revenue figures. (Pl. Mem. Rec. at 1-2; Plaintiff's Declaration in Support of his Motion for a Temporary Receivership over Dreamtouch, Inc. ("Song Decl.") ¶¶ 3-10.)

**\*6** While the case involves, in part, certain property rights, namely the shareholder rights of

plaintiff and monies purportedly due to him under the Agreement, plaintiff has not demonstrated that such rights are in danger of being extinguished. Defendants' failure to pay plaintiff money he believes he is owed, or to provide plaintiff with certain documents, an accounting, or access to books and records are not elements of proof concerning Dreamtouch's financial affairs or short or long term stability. Moreover, the record reflects that defendants have recently provided an accounting through certain financial documents (some of which indicate that the company did not make a profit in 2000), [FN4] and defendants state that they will be turning over additional financial records. (Def. Mem. Rec. at 5-6; Declaration of Chol-Ho Chong in Opposition to Plaintiff's Motion for a Temporary Receiver ("Chong Decl. Rec.") ¶ 17.) The allegations concerning Chong's threats to plaintiff or other Dreamtouch employees are merely conclusory, and insufficient to justify the drastic remedy of a temporary receiver. *See Modern Collection Associates, Inc. v. Capital Group*, 528 N.Y.S.2d 649, 649 (2d Dep't 1988) (finding that "plaintiff's conclusory allegations are inadequate" to establish claim that its assets were in danger of being removed from the state); *Schachner*, 462 N.Y.S.2d at 49 (finding "general accusations set forth by the plaintiffs have not sufficiently established by clear and convincing evidence the need for such a drastic remedy"). The record reflects that Dreamtouch has not been sold, nor plaintiff's interest in the company eliminated; defendants acknowledge that Chong had attempted to sell the company, but such sale was not effectuated in part because of plaintiff's objection thereto. (Def. Mem. at 7; Chong Decl. ¶ 15.); *see Secured Capital Corp. v. Dansker*, 694 N.Y.S.2d 409, 409 (2d Dep't 1999) ("While the defendants demonstrated their apparent interest in the specific fund and properties which are the subject of this action, they failed to demonstrate that those funds or properties are in danger of being materially injured or destroyed.").

FN4. Plaintiff asserts that defendants represented to him that their gross revenue, as of December 2000, was over $1.5 million, and that their margin was 38 percent, indicating a profit of approximately $19,000 per month due to plaintiff. (Song Decl. Rec. ¶¶ 4-6 (alleging that defendants fabricated their tax returns to omit certain revenue).) Notwithstanding the fact that such numbers contrast with defendants' YR 2000 tax returns, (Chong Decl. Rec., Ex. A), the mere fact of nonpayment does not warrant the appointment of a temporary receiver. Nor does defendants' claim of an approximately $300,000 loss for YR 2000 "effectively concede that they did indeed threaten to put the company into bankruptcy." (Reply Declaration of Han-Mo Song in Further Support of Plaintiff's Motion for a Temporary Receivership ¶ 3).

Accordingly, the Court denies plaintiff's motion for appointment of a temporary receiver. The Court also declines to reconsider its denial of plaintiff's request for an evidentiary hearing on this motion; for the purposes of this motion, the essential facts are not in dispute.

V. Deposition of Plaintiff Song

According to defense counsel Anthony Ferrara, plaintiff's counsel has refused to cooperate in scheduling the deposition of plaintiff, Han Mo Song. (Letter from Anthony Ferrara to the Court dated April 30, 2001.) The Court orders that plaintiff's deposition go forward on May 23, 2001, at 10 a.m., and that plaintiff produce the documents specified in the deposition notice provided by defendants, or provide a written objection to those items that he cannot produce, in accordance with Rule 34, by May 21, 2001.

**\*7** The Court also notes that, contrary to plaintiff's

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

suggestion, the Court did not set March 8, 2001 as either the close of discovery, or the time limit for service of defendants' notices of deposition. (Letter from Michael S. Kimm to the Court dated May 2, 2001.) March 8, 2001 was merely the date by which defendants' initial discovery requests should have been served.

## VI. Motion to Quash Subpoena for SK Telink's Deposition

On April 19, 2001, plaintiff served a deposition subpoena on third-party SK Telink America, Inc. ("Telink"), requesting the production of documents and a deposition at the offices of plaintiff's counsel on May 4, 2001, with respect to the instant action. On May 4, 2001, Telink served a motion to quash the subpoena, on the grounds that (i) it was issued from the wrong court and did not include attendance or mileage fees, in violation of Fed.R.Civ.P. 45(a) and (b); and (ii) the information plaintiff seeks is confidential business information, which is retrievable from defendants in this action without undue hardship, and (iii) the document request suggests that plaintiff is attempting to obtain discovery from Telink concerning the other case that plaintiff has filed before this Court, *Han Mo Song v. SK Telink America, Inc.,* 01 Civ. 716(AGS), in which discovery has not yet commenced. Opposition papers are due by May 10, 2001 (4 business days after service) and reply papers by May 11, 2001 (1 day after service of the opposition papers).

While the motion is not fully submitted, the Court quashes the subpoena and orders plaintiff to re-serve it. The record reflects that the deposition subpoena was issued from the wrong court, as Rule 45(a)(2) states that a subpoena commanding attendance at a deposition must issue from the court for the district where the deposition is to be held. Plaintiff's deposition subpoena is issued from this Court but calls for SK Telink's attendance at plaintiff's counsel's office in New Jersey. The fact that the subpoena was served less

than 100 miles from the site of the deposition is irrelevant. (Letter from Michael S. Kimm to the Court dated May 2, 2001 at 2.) Further, plaintiff concedes that the attendance and mileage fees were not provided concurrently with the subpoena. Where no fee is tendered with the service of a subpoena requiring a witness' attendance, the service is invalid. *Costamar Shipping Co. Ltd. v. Kim-Sail Ltd.,* No. 95 Civ. 3349, 1995 WL 736907, at *2 (S.D.N.Y. Dec. 12, 1995) (citing *CF & I Steel Corp. v. Mitsui & Co .(USA),* 713 F.2d 494, 496 (9th Cir.1983)). Such improper service warrants quashing the subpoena.

Further, the Court finds that, to the extent it seeks discovery in *Han Mo Song v. SK Telink America, Inc.,* 01 Civ. 716(AGS), the deposition subpoena is currently improper under Fed.R.Civ.P. 26(d), because the parties have not conferred as required under Fed.R.Civ.P. 26(f); nor has their been a Rule 16(b) pretrial conference. However, it would be inadvisable to order that the deposition be adjourned on such ground, as Telink suggests. Moreover, the fact that certain confidential business information is implicated by the document request does not render the deposition itself improper. Telink may simply decline to provide certain information on the grounds of confidentiality or privilege.

## VII. Conclusion

**\*8** For the foregoing reasons:

A. Plaintiff's motions are granted in part and denied in part, as follows:

(i) Motion to Strike Affirmative Defenses and Dismiss Counterclaims: Granted in part and denied in part

The Court dismisses defendants' third and fourth affirmative defenses, the latter with leave to replead, and declines to dismiss the remainder of the affirmative defenses. The Court dismisses

Not Reported in F.Supp.2d                                                                Page 9
Not Reported in F.Supp.2d, 2001 WL 487413 (S.D.N.Y.)
**(Cite as: Not Reported in F.Supp.2d)**

defendants' first three counterclaims with leave to replead, and declines to dismiss the remaining counterclaims.

The Court grants plaintiff's motion to strike defendants' allegations in the counterclaims concerning plaintiff's alleged criminal conviction for rape in Korea as irrelevant to the instant action and unduly prejudicial to plaintiff.

(ii) Motion to Compel Discovery, for Sanctions, and to Disqualify Defense Counsel: Granted in part and denied in part

The Court orders defendants to produce the documents requested by plaintiff in his first document request, or present an adequate objection, by May 14, 2001, and orders that the depositions of the individual defendants shall commence on May 30, 2001, at 10 a.m. However, the Court declines to sanction defendants for heretofore failing to provide an adequate response.

The Court declines to disqualify defense counsel.

(iii) Motion for Appointment of Temporary Receiver: Denied

The Court declines to reconsider its decision to deny plaintiff an evidentiary hearing on the motion for temporary receiver, and denies plaintiff's motion.

B. The motion by defendant Dreamtouch to so-order its notice of plaintiff's deposition is granted. The deposition is noticed for May 23, 2001, at 10 a.m.

C. The motion by SK Telink America, Inc., defendant in *Han Mo Song v. SK Telink America, Inc.,* to quash a deposition subpoena previously served on Telink by plaintiff is granted.

SO ORDERED.

S.D.N.Y.,2001.
Song v. Dreamtouch, Inc.
Not Reported in F.Supp.2d, 2001 WL 487413 (S.D.N.Y.)

Briefs and Other Related Documents (Back to top)

• 1:01cv00386 (Docket) (Jan. 18, 2001)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.