**LOWENSTEIN SANDLER PC**   Hearing Date: January 13, 2006 at 10:00 a.m.
Michael S. Etkin, (ME 0570)
Ira M. Levee (IL 9958)
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
(212) 262-6700  (Telephone)
(212) 262-7402  (Facsimile)
       and
65 Livingston Avenue
Roseland, New Jersey 07068
(973) 597-2500 (Telephone)
(973) 597-2481 (Facsimile)

*Bankruptcy Counsel to Lead Plaintiffs and the Prospective Class*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| DELPHI CORPORATION, et al., | |
| | Case No. 05-44481 (RDD) |
| Debtors. | |
| | (Jointly Administered) |

**SUPPLEMENTAL DECLARATION OF JOHN P. COFFEY IN SUPPORT
OF LEAD PLAINTIFFS' MOTION TO COMPEL DISCOVERY RELATED
TO DEBTORS' MOTION FOR ORDER UNDER §§ 105 AND 363
AUTHORIZING DEBTORS TO IMPLEMENT A
<u>KEY EMPLOYEE COMPENSATION PROGRAM</u>**

Pursuant to 28 U.S.C. § 1746, JOHN P. COFFEY, hereby declares as follows:

1. I am a member in good standing of the bar of this Court and a partner with Bernstein Litowitz Berger and Grossmann LLP ("Bernstein Litowitz"), one of the Court-appointed Lead Counsel for the Teachers' Retirement System of Oklahoma, the Public Employees' Retirement System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H. and Stitching Pensioenfonds ABP (collectively, "Lead Plaintiffs"), in the

securities class action entitled *In re Delphi Corp. Securities Litigation.* I submit this declaration to supplement my declaration filed December 23, 2005, which was filed in support of Lead Plaintiffs' Motion to Compel Discovery Related to Debtors' Motion for Order Under §§ 105 and 363 Authorizing Debtors to Implement a Key Employee Compensation Program (the "Motion to Compel"). This declaration is based on my first-hand knowledge.

Correspondence relating to the Meet and Confer

2.       At the Court's direction during the January 5, 2006 Omnibus hearing (the "Hearing"), resolution of the Motion to Compel was adjourned until January 13, 2006 in order to permit Debtors and Lead Plaintiffs to meet and confer with regard to the latter's requests for discovery concerning the pending Debtors' Motion for Order Under §§ 105 and 363 Authorizing Debtors to Implement a Key Employee Compensation Program ("KECP Motion").

3.       On January 9, 2006, I sent counsel for Debtors a short letter (attached at Exhibit A hereto) reducing to six basic categories the areas in which Lead Plaintiffs seek discovery, incorporating what we believe to be the Court's guidance at the Hearing as to the appropriate scope of discovery. In addition, given the Court's observation that Lead Plaintiffs would be entitled to additional discovery if Debtors were to proffer evidence in opposition to the allegations set forth in Lead Plaintiffs' Objection to the KECP Motion at the January 27, 2006 hearing, we requested that Debtors confirm that they would not, in fact, present such evidence at the hearing, and reserved the right to request additional discovery should such a commitment not be forthcoming. Ex. A at ¶ 2.

4.      Late on January 10, 2006, we received a letter from Debtors (attached at Exhibit B hereto). The Debtors have finally agreed to identify the intended KECP beneficiaries, as well as the 25 departing executives cited in the KECP Motion. Ex. B at ¶¶ A, D. Unfortunately, the Debtors' responses were less forthcoming regarding the processes purportedly used to screen from the KECP those employees who participated in, tolerated, or turned a blind eye to the billion-dollar plus accounting improprieties that, at the least, significantly contributed to the company's bankruptcy filing. Rather than produce documents that would permit Lead Plaintiffs, and ultimately the Court, to determine whether Debtors reasonably evaluated eligibility for the KECP, Debtors stated that they would provide a declaration describing the process whereby Delphi's Audit Committee supposedly ensured that individuals who engaged in "illegal behavior" would be barred from KECP benefits. Ex. B at ¶ B. Debtors agreed to produce that declarant for a deposition of no more than three hours. Id. The Debtors also stated they would provide a declaration describing the procedures they intend to employ prospectively to recover benefits paid where "it is ultimately determined that [the beneficiaries] engaged in illegal conduct relating to the accounting matters" alleged in Lead Plaintiffs' complaint. Ex. B at ¶ D.

5.      The Debtors' January 10, 2006 letter said nothing in response to our January 9, 2006 request that Debtors confirm that they would not proffer evidence in opposition to Lead Plaintiffs' allegations at the January 27, 2006 hearing.

The January 11, 2006 Meet and Confer

6.      On January 11, 2006, I, other Co-Lead Counsel, Lead Plaintiffs' bankruptcy counsel, Debtors' Counsel, and counsel for the Unsecured Creditors

Committee participated in a telephonic meet and confer. While little progress was made in resolving the discovery disputes, several facts pertinent to the Motion to Compel and the KECP Motion did come to light.

### *Debtors Have Refused to Rule Out Presenting Evidence In Opposition to Lead Plaintiffs' Allegations*

7. When asked for an answer to the question posed in our January 9, 2006 letter, Debtors' counsel refused to confirm that they will abstain from presenting evidence in opposition to the allegations raised in our Objection to the KECP Motion. Based on the colloquy during the meet and confer, it appears that Debtors will now attempt to deny Lead Plaintiffs the right to present evidence in support of their Objection at the January 27 hearing.[1]

8. In light of Debtors' refusal, the Court should order additional discovery relating to Lead Plaintiffs' substantive allegations. Hearing Tr. at 185-87 (The Court: "I mean if you're going to put on a case in opposition to them why shouldn't they take discovery on it?").

### *Debtors' Inability to Articulate The Standard Purportedly Used to Screen KECP Beneficiaries Underscores the Need for More Complete Discovery*

9. When asked what Debtors meant by the "illegal behavior" standard purportedly used by the Audit Committee to disqualify potential KECP beneficiaries (Ex. B at ¶ B), counsel was unable to articulate what precisely that standard was, other than to

---

[1] Pursuant to this new tack, late last night the Debtors filed a motion to quash Lead Plaintiffs' trial subpoenas for four current employees whom Lead Plaintiffs intend to call on January 27 to demonstrate conclusively that the KECP cannot be approved because it would benefit employees who engaged in misconduct. The motion to quash the subpoenas (which were served December 23, 2005) was served on one day's notice for tomorrow's hearing and thus does not comply with the Case Management Order or the rules of this Court. Lead Plaintiffs should be given the opportunity to respond to this motion in due course, and we reserve our rights to oppose the motion at the January 13 hearing if need be.

-4-

confirm it included criminal behavior, and perhaps "something less" than criminal behavior.

10. Given the importance of this issue, and given counsel's representation during the call that the Audit Committee had performed its evaluation months ago (before June 30, 2005), the inability to articulate just what standard was used to evaluate alleged misconduct provides no comfort that adequate care was brought to bear on this issue. As noted in previous papers, whatever process was brought to bear failed to disqualify at least a dozen employees we have a basis to believe participated in, tolerated, or turned a blind eye to the accounting improprieties at Delphi.

11. Lead Plaintiffs requested that the Debtors produce documents regarding the process utilized by the Audit Committee to ensure that individuals who engaged in "illegal behavior" would not be eligible for KECP payments. Debtors' Counsel stated that documents relating to the alleged misconduct of various employees had been gathered and reviewed months ago (and thus are presumably readily accessible despite recent claims of burden), but refused to provide more than a copy of some undated ethical guidelines and a one page description of the Audit Committee process. In order to permit Lead Plaintiffs, and ultimately the Court, to properly assess whether this "process" was applied reasonably, the Court should compel production of those underlying documents without further delay.

*<u>Debtors' Failure to Re-Visit KECP Eligibility In Light of the Serious Allegations Lodged in Lead Plaintiffs' Complaint Underscores the Need for More Complete Discovery</u>*

12. Regardless of what the Audit Committee might have done before June 30, 2005, additional discovery is required because it appears that Debtors did nothing to re-

evaluate any prior conclusions after receiving Lead Plaintiffs' complaint on or about September 30, 2005, or at any time thereafter.

13.   If the representation of Debtors' counsel during yesterday's meet and confer is accurate – that the decisions as to the eligibility of KECP beneficiaries were all completed before June 30, 2005 and remain unchanged as of today – then the lack of a meaningful inquiry into what the Court has observed are "serious" allegations in Lead Plaintiffs' complaint since it was filed over three months ago is yet another troubling sign that the business judgment rendered in this matter was not reasonable.

The PSLRA Stay

14.   Debtors continue to insist that, notwithstanding Lead Plaintiffs' extensive interest in this bankruptcy as stakeholders and fiduciaries for a prospective class with enormous securities law damages, Lead Plaintiffs' challenges to Debtors' motions should somehow be discredited or discounted because they are also litigants in another proceeding.  We believe the Court resolved that issue last week and will permit the discovery needed to ensure that important issues in this Court are decided after full and fair illumination of the facts.  However, given Debtors' continued reference to the interplay between bankruptcy proceedings and the PSLRA, and mindful of the Court's interest in what precisely occurred in the similar circumstances of the WorldCom proceedings, we attach at Exhibit C hereto a copy of the relevant pages of the transcript of the October 29, 2002 hearing before Judge Gonzales.

The Need For Judicial Intervention

15.   Despite Lead Plaintiffs' best efforts to resolve the discovery disputes, the parties have been unable to reach a resolution concerning the issues raised above.

Judicial assistance is required in order to ensure that the KECP Motion, even as abbreviated for the January 27 hearing, is decided on a full and fair record.

16.     Where, as here, a debtor files a KECP motion that fails even to acknowledge that misconduct had occurred in the past; purports to recount the recent financial record of the company without mentioning its billion-dollar plus restatement; fails to acknowledge that there are extensive criminal and regulatory investigations of what its employees did with regard to the company's accounting; and, while purporting to describe the material elements of the KECP, says nothing about what, if any, steps were taken to make sure that the estate is not rewarding past wrongdoers, the Court should be especially skeptical of *post hoc* assurances that adequate care had been taken to screen intended KECP beneficiaries.  This is particularly so where, as here, several large institutional investors (and current stakeholders) have, in the course of an extensive investigation, raised serious, specific allegations that, if true, utterly undermine those assurances.

17.     Accordingly, Lead Plaintiffs respectfully request that the Court order Debtors to produce all documents and information responsive to the requests in Lead Plaintiffs' January 9, 2006 letter, and to make the four witnesses (John Sheehan, Laura Marion, Dan Renick and John Rotko) available for deposition before the January 27, 2006 hearing.  In addition, if Debtors persist in retaining the option of presenting a case in opposition to Lead Plaintiffs' Objection on January 27, 2006, Lead Plaintiffs should be given all of the discovery sought in our December 8, 2005 discovery requests (attached at Exhibit D to my December 23, 2005 declaration previously submitted in support of the

Motion to Compel).  The requested discovery is critical and necessary to evaluate whether Debtors' KECP constitutes the exercise of sound business judgment.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on this 12th day of January, 2006.

                                                  ___*/s/  John P. Coffey*___
                                                      John P. Coffey