Hearing Date: February 9, 2006 at 10:00 a.m.

Eric Lopez Schnabel (ES5553)
KLETT ROONEY LIEBER & SCHORLING
A Professional Corporation
The Brandywine Building
1000 West Street, Suite 1410
Wilmington, DE 19801
Phone: (302) 552-4200
Email: elschnabel@klettrooney.com
Counsel to Entergy Mississippi, Inc.

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| DELPHI CORPORATION., et al., | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

**ENTERGY'S REPLY TO THE DEBTORS' OBJECTION TO
THE MOTION OF ENTERGY FOR (I) RELIEF FROM STAY TO
EXERCISE RECOUPMENT AND/OR SETOFF RIGHTS PURSUANT TO
SECTION 553 OF THE BANKRUPTCY CODE AND (II) OTHER RELATED RELIEF**

Entergy Mississippi, Inc. ("Entergy"), by its undersigned counsel, hereby submits this Reply to the Debtors' Objection to Entergy's Motion For (I) Relief From Stay to Exercise Recoupment and/or Setoff Rights Pursuant to Section 553 of the Bankruptcy Code and (II) Other Related Relief (the "Reply"). In support of the Reply, Entergy respectfully states as follows:

**PROCEDURAL HISTORY**

1.     On October 8, 2005 (the "Petition Date"), the above-captioned debtors and debtors-in-possession (the "Debtors") filed voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York.

2.     The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

497754

3. No trustee or examiner has been appointed in these Chapter 11 cases.

4. An Official Committee of Unsecured Creditors (the "Committee") was appointed on or about October 17, 2005.

5. On the Petition Date, the Debtors filed a motion (the "Utility Motion") which requests, among other things: (i) that the Debtors' utility providers, including Entergy (collectively, the "Utility Companies") be enjoined from altering, refusing, or discontinuing services to, or discriminating against, the Debtors on the basis of the commencement of the Debtors' bankruptcy cases or on account of any unpaid pre-petition invoices and (ii) that Utility Companies be required to follow certain procedures to obtain adequate assurance of future performance. Entergy filed an objection the Utility Motion on October 24, 2005.

6. Entergy and the Debtors, through the Debtors' bankruptcy counsel, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"), negotiated a resolution of Entergy's objection to the Utility Motion and memorialized the resolution by way of that certain letter agreement dated November 23, 2005 (the "Utility Motion Settlement").

7. On October 28, 2005, the Court entered the Final Order Under 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and Fed.R.Bankr.P. 2002, 4001 and 9014 (I) Authorizing Debtors to Obtain Post-Petition Financing, (II) to Utilize Cash Collateral and (III) Granting Adequate Protection to Pre-Petition Secured Parties (the "Final DIP Financing Order").

8. The Final DIP Financing Order provides in relevant part as follows:

> To the extent that a customer or supplier of the Debtors that has an allowable setoff claim under section 506 or 553 of the Bankruptcy Code in respect of its payables owed to any Debtor as of the Petition Date ("Pre-Petition Payables") or a valid right of recoupment that arose prior to the Petition Date (such setoff claim or right of recoupment, "Setoff"), such customer (a "Setoff Claimant") is hereby provided with certain rights and adequate protection as described below... Any exercise of any right of Setoff other than in accordance with this Order is subject to section 362 of the Bankruptcy Code.

See Final DIP Financing Order, ¶ 18.

9. Thus, the Final DIP Financing Order arguably requires holders of recoupment rights to seek relief from the automatic stay, along with holders of setoff rights, prior to exercising such rights.

10. On November 10, 2005, Entergy filed its Motion For (I) Relief From Stay to Exercise Recoupment and/or Setoff Rights Pursuant to Section 553 of the Bankruptcy Code and (II) Other Related Relief (the "Recoupment Motion"). By the Recoupment Motion, Entergy seeks authority to recoup a pre-petition utility deposit against pre-petition unpaid invoices. In the alternative, Entergy seeks relief from the automatic stay to setoff.

11. As set forth more fully below, the recoupment Entergy seeks to effect would not ordinarily require Bankruptcy Court approval but for paragraph 18 of the Final DIP Financing Order.

12. A hearing on the Recoupment Motion was originally scheduled for November 29, 2005. During the Utility Motion Settlement negotiations between Entergy's counsel and Skadden, the Debtors' attorneys requested that issues related to the Recoupment Motion be bifurcated from the issues related to the Utility Motion and that Entergy agree to continue the hearing on the Recoupment Motion until January 5, 2006.

3

13. Thus, the Debtors and their attorneys were well aware of the relief Entergy sought by the Recoupment Motion prior to entering into the Utility Motion Settlement.

14. On December 29, 2005, the Debtors, represented by the law firm of Togut Segal & Segal, LLP ("Togut"), filed an objection to the Recoupment Motion (the "Recoupment Objection").

15. By the Recoupment Objection, the Debtors misstate the law and make irrelevant insinuations about Entergy's veracity that are entirely without merit, as are discussed *ad seriatim* below.

## THE ENTERGY ACCOUNTS

16. Entergy supplies electricity services to the Debtors under at least two open accounts with Entergy (the "Entergy Accounts") governed by those certain electric service contracts dated December 17, 1976 and September 12, 1997 (as amended and modified, the "Service Agreements"). Pursuant to Mississippi electric service regulations, incorporated by reference into the Service Agreements, Entergy has always had the right to demand a deposit as security for the payment of balances due under the Entergy Accounts.

17. In August, 2005, Entergy exercised its right to demand a deposit from the Debtors and entered into that certain Addendum to Electric Service Agreement dated August 15th, 2005 (the "Addendum"). Pursuant to the Addendum, Entergy received from the Debtors a $600,000 deposit (the "Deposit") as a guaranty of payment for pre-petition utility services provided by Entergy under the supply contracts and the Addendum.[1]

---

[1] The Debtors filed a copy of the Addendum as an attachment to its Recoupment Objection in violation of the confidentiality requirements set forth at paragraph 6 of the Addendum. Entergy reserves all of its rights with respect to the Debtors' breach of the confidentiality provisions of the Addendum.

4

18.     Pursuant to the applicable regulations, such Deposit was placed into Entergy's general operating account and a book entry in the amount of the Deposit was made in favor of the Debtors. Entergy is not required to and does not segregate or otherwise hold any deposits separate from Entergy's general operating funds.

19.     The Debtors' monthly charges on the Entergy Accounts at times exceed $755,471 per month. The Deposit did not adequately protect Entergy because, as of the Petition Date, the Entergy Accounts had an aggregate unpaid balance of at least $963,099.68 (the "Entergy Claim").

20.     On or about November 8, 2005, Entergy filed a proof of claim asserting a pre-petition claim in the amount of $963,099.68 ("Entergy's POC"). The invoices attached to the proof of claim demonstrate that, after application of the Debtors' pre-petition Deposit, Entergy is left with a general unsecured claim in the amount of $363,099.68.

21.     In the Recoupment Objection, the Debtors assert that Entergy "seized" the Deposit in violation of the automatic stay. The Debtors' accusation is based solely upon a notation made by Entergy on the invoices attached to Entergy's POC. Recoupment Objection, ¶ 14. The Debtors miss the mark because the invoices attached to Entergy's POC reflect nothing more than a book entry. The Deposit was never segregated and therefore could not have been "seized" by Entergy after the Petition Date. Indeed, the Debtors' right to the Deposit is currently no greater and no less than prior to the issuance of the invoices attached to Entergy's POC or prior to the Petition Date.

22.     Entergy was not stayed from exercising its right of recoupment until October 28, 2005 upon the entry of the Final DIP Financing Order. The Final DIP Financing Order was not docketed until 6:17 p.m. (Eastern) on Friday, October 28. Although Entergy did

5

not finalize and print the pre-petition account statements until Monday, October 31, 2005, for Entergy's POC, the internal process of truing up the Debtors' accounts began well before the entry of the Final DIP Financing Order. Thus, to the extent the Court determines that Entergy has recouped already, such recoupment largely occurred during a time in which recoupment was not stayed.

23. The Debtors further assert that "When [Entergy] demanded the post-petition deposit, Entergy failed to advise the Debtors that it had already setoff against the prepetition deposit." Recoupment Objection, p.5, fn. 1. To the contrary, Entergy did not setoff against the pre-petition Deposit. Rather, Entergy simply made a book notation and in an abundance of caution sought Court approval of Entergy's valid exercise of its recoupment rights even though such approval is not required by the Bankruptcy Code.

24. Moreover, to the extent that the Debtors assert that Entergy acted in a less than truthful or deceptive manner when negotiating the payment of the post-petition deposit pursuant to 11 U.S.C. §366, the Debtors' statements are irresponsible and reflect an utter lack of due diligence. The Skadden attorneys responsible for negotiating the Utility Motion Settlement were well aware that Entergy held the Deposit and that Entergy would seek recoupment. First, the Recoupment Motion was filed well before any negotiations began in earnest on the Utility Motion. More importantly, the Debtors' counsel specifically requested that the Recoupment Motion negotiations be bifurcated from the Utility Motion Settlement negotiations and Entergy agreed to honor the Debtors' request. It is untenable that the Debtors would now question Entergy's honesty and insinuate that Entergy was deceitful when the Debtors specifically

6

requested that issues relating to the post-petition section 366 deposit be dealt with separately from the Recoupment Motion.[2]

## RELIEF REQUESTED

25. By the Recoupment Motion, Entergy seeks an order of the Court granting it relief from the automatic stay and any stay imposed by the Final DIP Financing Order to allow the immediate exercise of recoupment and/or setoff rights by Entergy of the Entergy Claim against the Deposit.

## BASIS FOR RELIEF

### Entergy is Entitled to Relief From the Stay Imposed by the Final DIP Financing Order to Exercise Its Right of Recoupment

26. Utility companies are not ordinarily required to seek relief from the automatic stay before applying a pre-petition deposit to a debtor's pre-petition utility obligation. In re McMahon, 129 F.3d 93, 98 (2d Cir. 1997). Although a creditor must obtain relief from the automatic stay to exercise a right of setoff, recoupment constitutes "a non-statutory, equitable exception to the automatic stay." In re University Medical Ctr., 973 F.2d 1065, 1080 (3d Cir. 1992); accord In re Rooster, Inc., 127 B.R. 560, 570 (Bankr. E.D. Pa. 1991).

27. "[S]o long as the creditor's claim arises out of the identical transaction as the debtor's, that claim may be offset against the debt owed to the debtor, without concern for the limitations put on the doctrine of setoff by Code § 553." In re University Medical Ctr., 973 F.2d at 1080.

---

[2] The Debtors' accusations of deceitful behavior are not addressed in the Poole Affidavit attached to the Recoupment Objection. While Togut's attorneys may not have the benefit of the information Entergy shared with the Debtors' attorneys at Skadden, Entergy is confident that any discovery taken of Skadden attorneys involved in the negotiation of the Utility Motion Settlement would debunk the implication that Entergy was deceitful regarding Entergy's intentions with respect to the Deposit.

7

28. The Entergy Claim and the Deposit arise out of the same transaction, namely Entergy's pre-petition provision of electricity services to the Debtors under the Entergy Accounts pursuant to the terms of the Addendum. In addition, Entergy does not know of any substantial dispute as to the amounts due and owing between the parties. Thus, under broadly accepted principles of recoupment, Entergy has a valid right of recoupment.

29. Indeed, as a utility company, Entergy has an even greater right to recoup against a customer's deposit than would a non-utility company. See McMahon, 129 F.3d at 98-99 ("[A] utility's post-petition application of a pre-petition utility deposit to a debtor's pre-petition utility obligation is a recoupment not subject to the automatic stay of 11 U.S.C. § 362. We note that public policy supports our interpretation of the recoupment doctrine in the utility context.")

30. In McMahon,[3] the United States Court of Appeals for the Second Circuit addressed a scenario that is nearly identical to the scenario currently before this court. Namely, a utility company made a post-petition application of a debtor's pre-petition utility deposit to the debtor's unpaid pre-petition obligations. Id. The bankruptcy court erroneously held that the utility company violated the automatic stay and the district court affirmed; both courts were reversed by the Second Circuit. Id. at 95.

31. On appeal, the Second Circuit noted that "[t]he deposit plainly arose out of a single electricity contract between the debtor and the [utility]." Id. at 97. Thus, the "[utility's] claim is 'essentially a defense to the debtor's claim against [the utility] rather than a mutual obligation, and application of the limitations on setoff would be inequitable.'" McMahon, 129 F.3d at 97 (quoting Lee v. Schweiker, 79 F.2d 870, 875 (3d. Cir. 1984)).

---

[3] Curiously, the Debtors rely on McMahon in their objection even thought the case squarely supports Entergy's position.

8

32. Categorizing the application of a pre-petition deposit against a pre-petition obligation as a setoff would be particularly inequitable in the utility context because "utilities typically do not choose or negotiate with their customers. They are ordinarily required by law to provide service to all persons who request it in terms that are generally fixed." Id.

33. Thus, "[l]ike a creditor who mistakenly overpays a debtor or a creditor who contracts to overpay a debtor, the utility company that is obligated to offer utility service to a debtor should be able to effect a recoupment when the debtor fails to fulfill its part of the contract." Id. The McMahon court went on to bolster the utility's position by noting that a "utility deposit is 'virtually indistinguishable from the debtor's having paid in advance for its telephone service.'" McMahon, 129 F.3d at 98 (quoting Brooks Shoe Mfg. Co. v. United Tel. Co., 39 B.R. 980, 982 (Bankr. E.D. Pa. 1984)).

34. In holding that a utility's post-petition application of a pre-petition utility deposit to a debtor's pre-petition utility obligation is a recoupment not subject to the automatic stay, the Second Circuit distinguished non-utility cases by noting that "[b]ecause of the strict regulation of utilities, the special law of utility deposit ownership, and the unique public policy implications of the recoupment/setoff issue in bankruptcy in the utility context, nothing in this opinion should be interpreted to apply to non-utility customers." McMahon, 129 F.3d at 99.

35. Accordingly, if not for the entry of the Final DIP Financing Order, Entergy would clearly have the right to recoup $600,000 of the Entergy Claim from the Deposit without seeking approval of the Court.

36. Recognizing that Entergy is clearly entitled to recoupment, the Debtors assert that Entergy's exercise of recoupment is premature because the Debtors have not asserted any claim. The Debtors' argument is obviously without merit because the cases cited by the

9

Debtors do not support the proposition that Entergy cannot be authorized to recoup in the absence of a filed lawsuit or claim by the Debtors. Neither the McMahon case nor the Joseph case require such a result.

   37. The courts in McMahon and Joseph both authorized recoupment. McMahon, 129 F.3d at 95; National Cash Register Co. v. Joseph, 299 N.Y. 200, 86 N.E.2d 561, 562 (1949). Thus the language quoted by the Debtors in support of its argument that recoupment be denied cannot be considered anything more than dicta. In fact, the outcome of McMahon and the McMahon opinion strongly favor Entergy's position.

   38. In McMahon, the court noted that utility companies may apply deposits to unpaid bills as of right. See McMahon, 129 F.3d at 97. Thus, under McMahon, there is no requirement that a Debtor file suit or assert a claim to recover a deposit before a creditor's right to apply a deposit accrues.

   39. Other courts have also authorized the use of recoupment by a creditor on the offensive. See In re Flagstaff Realty Assocs., 60 F.3d 1031, 1035 (3d Cir. 1995)("Although the usual posture of recoupment cases involves a defensive invocation of recoupment in response to a landlord or trustee filing suit to recover sums owing to the estate, the creditor may take the 'offensive' as in this case."); In re Public Service Company of New Hampshire, 107 B.R. 441, 445 (Bankr. D.N.H. 1989)("The debtor suggests a third limitation that should apply to this case: that recoupment can only be used as a defense. This argument is misplaced."); In re B & L Oil Co., 782 F.2d 155 (10th Cir. 1986). Thus, Entergy's right to recoup the Entergy Claim against the Deposit matured when the Debtors' failed to pay the invoices attached to Entergy's POC and it became clear, and mandated by law, that the Entergy Claim would not be paid in full.

10

40.   Therefore, Entergy is entitled to relief from the stay imposed by the Final DIP Financing Order, so that it may immediately recoup $600,000 of the Entergy Claim against the Deposit.

### Entergy is Entitled to Relief From the Automatic Stay to Exercise Its Right of Setoff

41.   Entergy included an alternative request for relief from the automatic stay to exercise its setoff rights in the Recoupment Motion solely out of abundance of caution. Entergy's right to exercise recoupment is clear and setoff is nothing more than an additional way in which the Court may authorize Entergy's application of the Deposit to the Debtors' pre-petition obligations. To the extent that the Court does not grant Entergy authority to exercise its recoupment rights, setoff remains a valid alternative.

42.   The Debtors incorrectly assert that 11 U.S.C. § 553(a)(3) bars Entergy's exercise of its setoff rights. Section 553(a)(3) provides that an otherwise valid setoff is subject to avoidance whenever "the debt owed to the debtor by such creditor was incurred by such creditor – (A) after 90 days before the date of the filing of the petition; (B) while the Debtor was insolvent; and (C) for the purpose of obtaining a right of setoff."

43.   The types of setoff that may be avoided by Section 553(a)(3) are those in which the creditor "was attempting to gain an advantage over other unsecured creditors with respect to *existing debts* owed to the [creditor] by the debtor." Brooks Shoe Mfg. Co. v. United Tel. Co., 39 B.R. 980, 982 (Bankr. E.D. Pa. 1984)(emphasis added). "Section 553 of the Bankruptcy Code, read in conjunction with § 547 and in light of the legislative history, proscribes only preferential setoffs." Id. Here, the setoff would not be preferential because the Deposit secured future obligations rather than antecedent debt.

11

44. The cases cited by the Debtors are consistent with Brooks Shoe. Indeed, both Bennett and Multiponics refer to prohibited setoffs as voidable preferential transfers. See Multiponics, Inc., 622 F.2d 725, 730 (5th Cir. 1980); In re Bennett Funding Group, Inc. (Official Committee of Unsecured Creditors v. Manufacturers and Traders Trust Company), 146 F.3d 136, 139 (2nd Cir. 1998). Nothing in Multiponics or Bennett suggests that the setoff of a deposit obtained for purposes of securing future obligations is avoidable.

45. Here, the setoff Entergy seeks to effect is not preferential as Entergy requested the Deposit to secure payment of obligations to be incurred in the future rather than to secure payment of antecedent debts. Indeed, the documents attached to Entergy's POC demonstrate that the obligations Entergy seeks to setoff against were incurred by the Debtors *after* Entergy obtained the Deposit.

46. Thus, Entergy's right of setoff is not barred by 11 U.S.C. § 553(a)(3) and Entergy should be granted relief from the automatic stay to setoff.

## RESERVATION OF RIGHTS

47. The Entergy Claim is approximately $363,099.68 greater than the amount of the Deposit. Accordingly, after Entergy exercises its recoupment and/or setoff rights, Entergy will be left with a substantial deficiency claim against the Debtors (the "Deficiency Claim"). Entergy reserves all of its rights and or causes of action with respect to the unsatisfied portion of the Entergy Claim, including without limitation, the right to file an amended proof of claim in the Debtors' chapter 11 cases. Entergy further reserves all of its rights with respect to the Debtors' breach of the confidentiality provisions of the Addendum.

## WAIVER OF MEMORANDUM OF LAW

48. The Recoupment Motion and this Reply do not raise any novel issues of law and, accordingly, Entergy respectfully requests that this Court waive the requirement

contained in Rule 9013-1(b) of the local Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be submitted in support hereof.

## NOTICE

49. Notice of this Reply will be provided in accordance with this Court's Order dated October 14, 2005 establishing case management and notice procedures in these chapter 11 cases. No further or other notice need be provided. No previous motion for the relief sought in the Recoupment Motion has been made to this or any other Court.

WHEREFORE, Entergy respectfully requests that this Court enter an order, substantially in the form attached to the Recoupment Motion: (i) granting the Recoupment Motion; (ii) authorizing the immediate exercise of recoupment and/or setoff rights by Entergy of the Entergy Claim against the Deposit; and (iii) granting such further relief as is appropriate.

**KLETT ROONEY LIEBER & SCHORLING**
**A Professional Corporation**


By: _/s/ Eric Lopez Schnabel_
      Eric Lopez Schnabel (ES5553)
      The Brandywine Building
      1000 West Street, Suite 1410
      Wilmington, DE 19801
      Phone: (302) 552-4200
      Email: elschnabel@klettrooney.com

Dated: January 17, 2006      Counsel to Entergy Mississippi, Inc.