**EXHIBIT B**

# FIRST AMENDMENT TO LEASE OF INDUSTRIAL OR WAREHOUSE FACILITIES

THIS FIRST AMENDMENT TO LEASE ("*First Amendment*") is made and entered into effective this **9th** day of July, 2003, by and between CHEROKEE NORTH KANSAS CITY, LLC, a Delaware limited liability company ("*Landlord*") and DELPHI AUTOMOTIVE SYSTEMS LLC, a Delaware limited liability company ("*Tenant*").

## RECITALS:

WHEREAS, Tenant and Landlord entered into that certain lease dated July 9, 2002, as supplemented by a Letter Agreement Confirming Lease Commencement Date dated November 5, 2002 (collectively the "*Lease*") for certain premises consisting of approximately 79,200 square feet (the "*Original Premises*") situated in that certain building located at 144 West 23rd Street, North Kansas City, Missouri ("*Building*").

WHEREAS, Tenant desires to expand its Original Premises to include 6,785 rentable square feet ("*Expansion Premises*") effective July 1, 2003 (the "*Expansion Premises Commencement Date*").

WHEREAS, Landlord and Tenant desire to amend the Lease to set forth the terms of the leasing of the Expansion Premises.

NOW, THEREFORE, in consideration of the mutual promises and other good and valuable consideration, the receipt and adequacy of which are hereby acknowledged, Landlord and Tenant agree to amend the Lease as follows:

1. <u>Definitions</u>. All defined terms in the Lease are incorporated herein by reference.

2. <u>Annual Rent</u>. Tenant hereby agrees that in addition to the Annual Rent set forth in Section 1.3 of the Lease, as of the Expansion Premises Commencement Date, Tenant agrees to pay the following amounts together with the Annual Rent set forth in Section 1.3 of the Lease and in accordance with Article 4 of the Lease:

| PERIOD | ANNUAL RENT RATE | MONTHLY INSTALLMENTS |
|---|---|---|
| July 1, 2003 -- January 31, 2004 | $0.00 | $0.00 |
| February 1, 2004 -- May 31, 2009 | $20,355.00 | $1,696.25 |

3. <u>Term</u>. The term for the Expansion Premises will be coterminus with the Term of the Lease for the Original Premises.

6466\71\795194.2

4. <u>Tenant's Proportionate Share</u>. As of the Expansion Premises Commencement Date, Section 1.7 B of the Lease is hereby deleted in its entirety and the following paragraph is substituted in lieu thereof:

"Tenant's Proportionate Share is 33.3 percent, which is the percentage obtained when the number of square feet of floor area in the Premises is divided by the number of square feet of floor area in the Building, and the resulting quotient is multiplied by one hundred percent (100%)."

5. <u>Landlord's Work</u>. Tenant hereby agrees that it shall take the Expansion Premises in its "as is, where is" condition, provided that Landlord shall cause the improvements to the Expansion Premises to be completed in accordance with Exhibit N-1 to this First Amendment.

6. <u>Miscellaneous</u>.

(a) The parties specifically agree that no modification of this First Amendment shall be effective unless embodied in a written instrument, executed by the parties hereto. If any provision of this First Amendment shall be deemed to be void or invalid at law, then only that provision shall be stricken from this First Amendment, and in all other respects this First Amendment shall be valid and continue in full force and effect.

(b) This First Amendment constitutes the entire understanding between the parties hereto with respect to the expansion of the Premises, and there are no terms, covenants, conditions, representations, warranties or agreements, expressed or implied, oral or written, of any nature whatsoever other than contained herein.

(c) Landlord and Tenant hereby acknowledge and agree that the exclusive agent with respect to this First Amendment is Equis Corp. Within thirty (30) days following the execution of this First Amendment by Landlord and Tenant, Landlord shall pay to Equis Corp. a leasing commission equal to five percent (5%) of Annual Rent for the Expansion Premises for the remainder of the Term.

(d) Except as set forth above, all terms and conditions of the Lease are hereby affirmed and remain in full force and effect.

(e) The terms of this First Amendment shall be governed by and construed in accordance with the laws of the State of Missouri.

(f) Tenant hereby represents that it has not assigned, transferred or sublet any interest in the Lease and that it has full power and authority to enter into this First Amendment to the Lease.

(g) In the event of any conflict between the Lease and this First Amendment, this First Amendment shall control.

[Signature Page Follows]

IN WITNESS WHEREOF, the undersigned have executed this First Amendment as of the day and year first above written.

**LANDLORD:**

CHEROKEE NORTH KANSAS CITY, LLC,
a Delaware limited liability company

By: _____

Name: Guy Arnold
Its: Vice President

**TENANT:**

DELPHI AUTOMOTIVE SYSTEMS LLC,
a Delaware limited liability company

By:    Delphi Corporation,
       a Delaware corporation

Its:   Managing Member

By: _____

Its:   Authorized Signatory
       Milton Scheffler
       Director, Delphi Facilities Services Group

6466\71\795194.2

## EXHIBIT N-1

## LANDLORD'S WORK

This Exhibit N-1 is attached to and made a part of the First Amendment to Lease of Industrial or Warehouse Facilities, dated ___July 9___, 2003, between CHEROKEE NORTH KANSAS CITY, LLC, a Delaware limited liability company, as Landlord, and DELPHI AUTOMOTIVE SYSTEMS LLC, a Delaware limited liability company, as Tenant (the "Lease"). Terms used with initial capital letters and not otherwise defined in this Exhibit N-1 have the meaning ascribed to them in the Lease.

### I. DESCRIPTION OF EXPANSION IMPROVEMENTS

Landlord's Work consists of the "Expansion Improvements." The "Expansion Improvements" consist of the improvements and installations identified in the Scope of Work which is attached as Exhibit N-2 (the "Scope of Work"), and include all work which is reasonably inferable from the Scope of Work. The Expansion Improvements shall be paid for by Tenant, as set forth below. Landlord shall Substantially Complete Landlord's Work in accordance with the requirements of this Exhibit N-1 and shall achieve such Substantial Completion no later than the earlier of (x) the date which is twenty-one (21) calendar days after Landlord's lead abatement contractor commences remediation work and (y) August 11, 2003 (the earlier of such date is referred to as the "Outside Completion Date" in this Exhibit N-1), provided that the date on which Landlord is obligated to Substantially Complete Landlord's Work may be postponed by the number of days of delay in the Substantial Completion of Landlord's Work which are directly attributable to Tenant Delay or Force Majeure Events. Landlord shall perform Landlord's Work in a good and workmanlike manner, in accordance with all laws, ordinances, rules, regulations, orders, codes, restrictions and other requirements of all governmental authorities that have jurisdiction over the Project and in accordance with the other requirements of this Exhibit N-1 and the Lease. In addition, Landlord shall cooperate with Tenant in scheduling Landlord's Work in a manner that permits Tenant to install Tenant's trade fixtures, equipment, machinery, furnishings and other personal property at such time as will not materially interfere with the performance of Landlord's Work. The phrases "Substantially Complete" and "Substantial Completion" mean that (i) Landlord's Work has been completed to the extent necessary to permit Tenant to install, set-up and initially operate Tenant's equipment and machinery without material interference from the completion of Landlord's Work, and (ii) only minor items of Landlord's Work, the completion of which will not interfere with Tenant's ability to use the Expansion Premises, remain to be completed.

### II. REIMBURSEMENT OF APPROVED COST OF LANDLORD'S WORK

All "Approved Costs" (as defined below) shall be paid by Tenant within ten (10) days after Tenant receives evidence of the Approved Costs which satisfies the requirements of Section III.E of this Exhibit N-1. Tenant hereby acknowledges and agrees that it shall be solely responsible for all Approved Costs and Tenant shall pay same promptly to Landlord when due.

Failure to pay shall be a default under the Lease after the expiration of applicable notice and cure periods.

III. SELECTION OF SUBCONTRACTORS AND ESTABLISHMENT OF COST OF EXPANSION IMPROVEMENTS

A. Selection of Subcontractors.

Landlord shall cause Pinnacle Contracting, Inc. ("Landlord's Contractor") to invite a minimum of three (3) qualified contractors and materialmen, at least two (2) of which shall be reasonably selected by Tenant to bid on each of the categories (e.g., mechanical, electrical, fabrication, painting, carpentry, etc.) of the Expansion Improvements. No contracts or subcontracts for the Expansion Improvements shall be awarded without the prior written approval of Tenant, which shall not be unreasonably withheld, conditioned or delayed. If Tenant fails to respond to Landlord's request for approval of a bid within the greater of (x) five (5) business days or (y) the number of days specified in Landlord's request for approval after Tenant receives a copy of the bid and all supporting documentation reasonably required by Tenant, then any delay in Substantial Completion of the Expansion Improvements which results from Tenant's failure to respond shall constitute a "Tenant Delay" (as defined below). Notwithstanding the foregoing, Landlord and Tenant have agreed to pricing, scope and subcontractors to be used as shown in Exhibits N-2 and N-3.

B. Cost Records.

Landlord shall cause Landlord's Contractor to have an open book approach for all costs related to each component of the Expansion Improvements, including design costs, material costs, and installation costs. Tenant shall have the right to review Landlord's Contractor's books and records regarding Landlord's Work.

C. Statement of Proposed Cost.

The maximum cost of constructing the Expansion Improvements is set forth on the spreadsheet which is attached as Exhibit N-3. The lesser of (i) the cost for each component of the Expansion Improvements as set forth in Exhibit N-3 and (ii) the actual cost of completing the applicable component of the Expansion Improvements as established in accordance with Sections III.E and F below is referred to in this Exhibit N-1 as an "Approved Cost."

D. [INTENTIONALLY OMITTED].

E. Evidence of Costs.

The cost to complete the Expansion Improvements shall be established by Waivers of Liens and a Sworn Statement itemizing the work done, the contractor or subcontractor performing each item of work, the cost to complete each item, and the total cost, certified by Landlord, Landlord's Contractor and the Architect (if any), and supported by evidence that the Expansion Improvements have been paid for in full. Upon Tenant's written

request and at reasonable times during normal business hours, Tenant shall have the right to examine and audit Landlord's and Landlord's Contractor's books and records with respect to the cost to complete the Expansion Improvements, in order to substantiate the information contained in the Sworn Statement and Waivers of Liens.

F. <u>Confirmation of Costs</u>.

Upon Substantial Completion of the Expansion Improvements, Landlord and Tenant will review, finalize, and fully agree to the total Approved Costs of the Expansion Improvements, to the extent the Approved Costs can be determined at that time, it being understood and agreed that if the total Approved Costs cannot be confirmed upon Substantial Completion, Landlord and Tenant shall confirm the total Approved Costs as soon as possible following Substantial Completion. Once this is completed and agreed upon by both parties, Tenant shall pay any Approved Costs which have not previously been paid by Tenant.

IV. CHANGE ORDERS

Tenant shall have the right to require (i) that Landlord construct improvements at the Expansion Premises in addition to or different than those required under the Scope of Work (provided that Landlord approves the additional or different improvements, which approval shall not be unreasonably withheld or delayed and shall be deemed granted if Landlord does not notify Tenant of the specific reasonable grounds upon which Landlord is denying or conditioning its approval, within five (5) business days of Tenant's request) and (ii) changes to the Expansion Improvements, by issuing a change order ("Change Order") to Landlord. Any delay in Substantial Completion resulting from a Change Order shall constitute a Tenant Delay. Tenant shall have the right to require that Change Orders be competitively bid, and to approve the final bids before Change Orders are implemented. Landlord agrees to cause Landlord's Contractor to promptly bid any Change Orders which Tenant requests be bid, with at least three (3) bidders selected in accordance with Section III.A), if Tenant requires. The costs of Change Orders shall be determined based on one of the following methods as selected by Tenant: (a) a lump sum properly itemized and supported by sufficient substantiating data to permit evaluation, (b) unit prices stated in the contract documents or subsequently agreed upon, or (c) such other manner as is agreed upon by the parties and a mutually acceptable fixed or percentage fee. Landlord's Contractor's fee on Change Orders shall be no more than ten percent (10%) of the net increase in cost of the Expansion Improvements due to the Change Order. No Change Order shall be implemented unless and until Tenant approves, in writing, the cost of the Change Order. The net increase in cost of constructing the Expansion Improvements which results from any Change Order that is approved by Tenant shall constitute an Approved Cost.

V. <u>Inspections by Tenant; Progress</u>

A. Until completion of the construction of the Expansion Improvements, Tenant shall have the right to inspect or have a consultant retained and paid for solely by Tenant inspect and observe the performance of all components of Landlord's Work during normal business hours (or such other hours as Landlord's Work is being performed) but only to the extent same does not interfere with Landlord's Work. Any delay in Substantial Completion which results from Tenant's exercise of its rights under this Section V.A shall be deemed a Tenant Delay.

Tenant shall also have the right to attend and permit its retained consultants to attend all job site meetings between Landlord and Landlord's Contractor and between Landlord's Contractor and its subcontractors. Landlord shall provide Tenant with reasonable advance notice of such meetings which may be given by email or telephone. Tenant's observation of construction and approval of plans and other matters shall not waive or limit any of Landlord's obligations to complete Landlord's Work in accordance with the requirements of the Lease.

B. Landlord will also facilitate direct communications between Tenant and Landlord's Contractor and subcontractors in order to permit Tenant to fully monitor the progress of and all other matters relating to Landlord's Work.

C. Except for delays caused by Tenant Delay and Force Majeure Events, if any of the Expansion Improvements are not completed by the Outside Completion Date, then, at Tenant's election, either (i) Tenant and Landlord shall promptly meet with Landlord's Contractor and any affected subcontractors to establish the means by which the completion of the Expansion Improvements can be expedited, and Landlord shall, at Landlord's sole cost and expense (except in the case of delays which result from Force Majeure Events or Tenant Delay), cause Landlord's Contractor and the applicable subcontractors to expedite their construction work as necessary to complete the Expansion Improvements as promptly as soon as possible or (ii) Landlord shall cause Tenant to have the right to direct the activities of all subcontractors so that the Expansion Improvements can be completed as soon as possible (and delays reduced to the greatest extent possible). Except for delays caused by Tenant Delay and Force Majeure Events, all costs of expediting construction activities pursuant to this section shall be paid by Landlord.

## VI. WARRANTIES

Landlord shall cause Tenant to be a third party beneficiary of Landlord's agreements with Landlord's Contractor and materialmen, and Landlord shall assign to Tenant or otherwise permit Tenant to have the benefit of all warranties by Landlord's Contractor and its subcontractors, as well as all manufacturers' warranties with respect to materials that are incorporated into the Expansion Improvements. Landlord further guarantees the Landlord's Work against defects in workmanship and materials for a period of one (1) year following the date of Substantial Completion.

## VII. TENANT DELAY

The term "Tenant Delay" means any delay in the completion of the Landlord's Work caused by (a) any of the causes specifically identified as Tenant Delay elsewhere in this Exhibit N-1; (b) Tenant's failure to act or provide the responses described in this Exhibit N-1 within the time specified; (c) the nonavailability or excess procurement time for materials or equipment that are not required under the Scope of Work; (d) delay in making payment to Landlord of any Approved Cost; (e) any delay in Landlord's completion of the Expansion Improvements through any negligence, gross negligence, or willful misconduct of Tenant, its employees, agents, contractors or representatives, or (f) any other delay caused by Tenant, its employees, agents, contractors or representatives.

## VIII. CONSTRUCTION REPRESENTATIVES

Landlord and Tenant shall each designate a representative who shall be responsible for coordinating requirements, consents, approvals, disapprovals and other communications regarding the matters addressed by this Exhibit N-1. Landlord's and Tenant's initial construction representatives are as follows:

| **LANDLORD** | **TENANT** |
|---|---|
| Tom McLaughlin, CEO | Edward J. Hnida, Senior Project Engineer |
| TITLE | TITLE |
| Pinnacle Contracting, Inc.<br>7701 Forsyth Boulevard, Suite 1140<br>St. Louis, MO 63105 | 408 Dana Street NE<br>Warren, OH 44486 |
| ADDRESS | ADDRESS |
| (314) 783-8000 | (330) 373-5675 |
| TELEPHONE | TELEPHONE |
| (314) 783-8001 | (330) 373-2430 |
| FAX | FAX |

## IX. FAILURE TO COMPLETE

If the Expansion Improvements are not Substantially Complete by the Outside Completion Date, Tenant shall be entitled to one (1) day's rent abatement for the Expansion Premises rent (which is otherwise scheduled to commence on February 1, 2004) for each day following the Outside Completion Date until the Expansion Improvements are Substantially Complete.

## EXHIBIT N-2

### EXPANSION IMPROVEMENTS SCOPE OF WORK

1. Environmental
    a. Lead abatement per Eric Wenger report dated June 6, 2003.
    b. Encapsulate and remove asbestos where friable.

2. Architectural/Civil
    a. Install panic hardware on exit mandoor leading to stairwell.
    b. Fill in existing trench drain with concrete.
    c. Paint walls and ceiling deck.
    d. Install security screens on exterior windows.

3. Mechanical/HVAC
    a. Remove abandoned piping from existing columns.

4. Electrical
    a. Remove all existing exposed wiring to the nearest existing workbox at ceiling level.
    b. Remove all existing conduits/wiring on the existing and columns.
    c. Remove existing fluorescent light fixtures, circuits to remain.
    d. Install new low bay metal halide light fixtures using existing circuitry to maintain 30 footcandles.
    e. Install (4) 120VAC, 20A circuits from existing power panel (refer to layout drawing)
    f. Install new LCD exit signs with emergency lighting units at each egress door.
    g. Install battery powered emergency light fixtures on the interior of the space in compliance with life safety codes and local municipal codes.
    h. Install and integrate (2) new fire protection riser flow switches into existing Delphi security system.
    i. Install and integrate egress door alarms into existing Delphi security system.
    j. Install flexible 120V, 20A wiring from new overhead circuits (refer to item e) to (8) customer provided inspection tables. These tables will have an 8ft fluorescent light fixture, light switch and a duplex receptacle.

EXHIBIT N-3

## NKC COCKPIT ADDITIONAL SPACE CONSTRUCTION COSTS
### ESTIMATES FROM 6/11 SCOPE OF WORK

| ITEM NO. | DELPHI SCOPE OF WORK | LABOR | MATERIAL | |
|---|---|---|---|---|
| 1 | LEAD CLEANUP - See Note 1 | $0 | $19,500 | |
| 2 | LEAD AIR/WIPE SAMPLING - See Note 1 | $0 | $1,615 | |
| 3 | PANIC HARDWARE ON EXIT DOOR | $112 | $442 | |
| 4 | NEW EGRESS MANDOOR WEST WALL | $0 | $0 | |
| 5 | FILL IN TRENCH DRAIN W/CONCRETE | $720 | $525 | |
| 6 | PAINT WALLS AND CEILING DECK | $0 | $6,898 | |
| 7 | SECURITY SCREENS ON WINDOWS | $0 | $2,000 | |
| 8 | REPLACE DAMAGED EXIT DOOR & FRAME | $0 | $0 | |
| 9 | REMOVE ABANDONED PIPING FROM COLS | $1,920 | | |
| 10 | REMOVE EXISTING ROUND DUCTWORK | $0 | | |
| 11 | REVIEW EXISTING HEATER/RETURN TO OPER | $0 | | |
| 12 | DEMO EXPOSED WIRE/CONDUITS/LIGHTS | $2,736 | | |
| 13 | INSTALL LOW BAY METAL HALIDE LIGHTS | $863 | $1,380 | |
| 14 | FOUR 120V CIRCUITS | $0 | | |
| 15 | LCD EXIT SIGNS W/EMERGENCY LIGHTS | $0 | | |
| 16 | BATTERY POWERED EMERGENCY LIGHTS | $0 | | |
| 17 | FIRE PROTECTION RISERS FLOW ALARMS | $0 | | |
| 18 | EGRESS DOOR ALARMS | $0 | | |
| 19 | 120 V CIRCUITS FOR TABLES | $0 | $8,521 | |
| 20 | 40 YD. DUMPSTER | $0 | $375 | |
| 21 | VERTI LIFT | $0 | $0 | |
| 22 | GENERAL CONDITIONS | $1,000 | | |
| 23 | | $0 | | |
| 24 | | $0 | | |
| | TOTAL | $7,351 | $41,256 | $48,607 |
| | GENERAL CONTRACTOR FEE ITEMS 1&2 | $1,267 | | |
| | GENERAL CONTRACTOR FEE ITEMS 3-20 | $2,749 | | |
| | **GRAND TOTAL** | **$52,623** | | |

Note 1: Not to Exceed Price from Environmental Operations Inc. Delphi pays lower price if applies.

```
                                                                                    P.01
                              TRANSACTION REPORT
                                                              JUL-11-2003 FRI 11:42 AM
    FOR: CHEROKEE INVEST PARTNERS    3037719270

   DATE  START    RECEIVER       TX TIME  PAGES TYPE      NOTE              M# DP
   JUL-11 11:38 AM 18168425382    3'45"    12   SEND      OK                152

                                          TOTAL :   3M 45S  PAGES:  12
```

# Cherokee Investment Partners, LLC



4600 S. Ulster Street
Suite 500
Denver, CO 80237
(303) 689-1460
(303) 689-1461 (Fax)
www.cherokeefund.com

SION

Handwritten notes:
Make 3 copies
① Send one to Tom McLaughlin at Pinnacle Contracting
② Send one to Kelly Poscl (Also, Fax Tom?)
③ Send one to Nelson Gaulding
④ File original in "Delphi Large"

TO: _____

COMPANY _____

PHONE #  _____   816-842-5382

FROM: _____

DATE:   July 11, 2003    # OF PAGES (including cover):  12

# Cherokee Investment Partners, LLC

---



4600 S. Ulster Street
Suite 500
Denver, CO 80237
(303) 689-1460
(303) 689-1461 (Fax)
www.cherokeefund.com

## FACSIMILE TRANSMISSION

TO: __Kelly Rose__

COMPANY: __Colliers Turley Martin Tucker__

PHONE #: __816-329-6688__    FAX#: __816-842-5382__

FROM: __Margaret Huston for Guy Arnold__

DATE: __July 11, 2003__    # OF PAGES (including cover): __12__

SUBJECT: _____

**Important Notice**

CAUTION: This facsimile message contains private or other sensitive information of the sender and is intended solely for the recipient(s) named above. If you are not the intended recipient: (1) You should hold this message in confidence and be aware that any disclosure, copying, distribution, or use of this information is prohibited. (2) Please notify the sender by telephone (collect). (3) Please return this



**Consultants for Workplace Innovation**

**VIA FEDERAL EXPRESS**

July 10, 2003

Mr. Guy Arnold, Managing Director
Cherokee Investment Partners LLC
4600 South Ulster Street, Suite 500
Denver, CO 80237
(303) 689-1460

> Re: First Amendment To Lease
> Cherokee North Kansas City LLC, Landlord
> Delphi Automotive Systems LLC, Tenant
> 144 W. 23rd Street
> North Kansas City, MO
> **Project No. PRJ653**

Dear Mr. Arnold:

Enclosed is one (1) fully executed Amendment Agreement for your file.

Your help in this matter has been appreciated. If you have any questions, please do not hesitate to write or call me at (248) 813-1437.

Sincerely,

Dennis Lukasik, CCIM MCR
Transaction Manager
Equis Corp – Delphi Account

Enclosures/DL
cc:  Ed Hnida – Warren, OH (VIA FAX)
     Dan Yeater – Columbus, OH (VIA FAX)
     Sean Corcoran – Troy, MI

Equis
5825 Delphi Drive
MC 480-410-174
Troy, MI 48098
248-813-1437
Fax: 248-813-1444
http://www.equiscorp.com