## CATERING AGREEMENT

CATERING AGREEMENT made on June 1, 1989, between General Motors Corporation (Delco Products Division), a Delaware corporation, hereinafter referred to as the "Company", and

ARA Services, Inc., a Delaware corporation, with it principal offices located at ARA Tower, 1101 Market St. Street, in the City of Philadelphia, State of Pennsylvania, hereinafter referred to as "Caterer".

### WITNESSETH

The parties hereto agree as follows:

FIRST: The Company, in consideration of the covenants hereinafter agreed upon by the Caterer, grants unto Caterer the right to operate a general catering service within the premises of the Company located in

Dayton, Ohio, at 2000 Forrer Blvd., known as
   (City)              (Street)
Delco Products Division, General Motors
   (Plant and Division)

Corporation, and to offer for sale and to sell to employes and to visitors of the Company, food and food products, candies, tobacco, cigarettes, non-alcoholic beverages and other articles customarily sold in plant cafeterias and vending machines. The catering operations of Caterer hereunder shall include cafeteria and dining room services and the installation and operation of a limited number of vending machines at locations designated by the Company.

SECOND: The Company shall provide Caterer with space, to be determined and designated solely by the Company, for the general catering service to be operated by Caterer hereunder and shall furnish all heat, hot and cold water, steam, gas, lights and electric current, and local telephone service necessary for the efficient operation of said general catering service.

The Company shall also provide space to Caterer for the installation of vending machines, provided that the amount of space provided by the Company for this purpose, and the location and number of pieces of such equipment shall be determined solely by the Company.

THIRD: The Company shall furnish equipment exclusive of vending machines which, in the opinion of the Company, is essential to the general catering service operations of the Caterer. ~~xxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxxx~~ All equipment furnished by the Company to Caterer is and shall remain the sole property of the Company. Such equipment shall be used by Caterer only upon the premises of the Company and shall not be removed from the premises of the Company.

The Company will maintain and repair all equipment furnished to Caterer, and, except as hereinafter in paragraph FIFTH otherwise provided, will replace all items of such equipment which, in the opinion of the Company,

become unusable or require replacement by virtue of ordinary wear and tear.

FOURTH: Caterer agrees, at its own expense and upon its own credit, to operate a general catering service upon the premises of the Company in the space or spaces provided by the Company. Caterer further agrees to provide efficient catering service and to arrange a schedule of cafeteria, dining room and vending machine operations to correspond with the meal periods scheduled for the employes of the Company, and to supply catering service at other locations at other hours when requested to do so by the Company.

FIFTH: Caterer shall use reasonable care in the use, handling and maintenance of all equipment furnished by the Company hereunder, and agrees to replace, or, if preferred by the Company, to pay to the Company the cost of replacement of any such equipment when the need for replacement is caused by careless or negligent use, handling or maintenance of such equipment by Caterer, its agents, servants or employes. Any equipment replaced by Caterer as herein provided shall be of a quality at least equal to that originally furnished by the Company, and shall automatically then become the property of the Company.

SIXTH: Caterer shall be solely responsible for maintaining conditions of good sanitation and cleanliness in its catering operations and shall be solely responsible for all cleaning in the kitchen and serving areas, for the

cleaning of tables and chairs in the dining areas, and for the collection and disposal of all refuse, waste and garbage resulting from Caterer's catering and vending operations. It is understood, however, that Caterer shall not be responsible for any decorating or redecorating, or for the cleaning of dining room floors, walls, windows and light fixtures and that the Company shall provide such services.

SEVENTH: The Caterer shall carry employer's liability insurance upon its employes while on or about the premises of the Company and shall cause the Company to be indemnified by insurance in amounts and with an insurer or insurers satisfactory to the Company, against all liability arising from injuries to or loss by the employes of Caterer however caused while on or about the premises of the Company. Caterer shall also carry in a company or companies, and in amounts satisfactory to the Company insurance fully indemnifying and protecting the Company against all liability to members of the public (not employes of the Company or the Caterer), caused directly or indirectly by any act or omission of Caterer, its employes, agents or representatives, while on the said premises of the Company, and fully indemnifying and protecting the Company against all liability arising from injuries to or loss by any of the employes of the Company caused directly or indirectly from any act or omission of Caterer, its agents, employes or representatives while on said premises. Caterer agrees to furnish to the Company certificates of the

insurance herein specified, and will upon demand by the Company at any time, furnish evidence that any and all of the policies of insurance are in full force and effect.

EIGHTH: Caterer agrees to indemnify and save harmless the Company and its agents, representatives, and employes from any and all charges, claims and causes of action by third persons, including, but not limited to, agents, representatives and employes of the Caterer and the Company, based upon or arising out of any damages, losses, expenses, charges, costs, injuries or illness sustained or incurred by such person or persons resulting from or in any way, directly or indirectly, connected with the performance or nonperformance of this Agreement, or the catering services provided for hereunder, or the performance of or any failure to perform any work or other activity related to such catering services; provided, however, that notwithstanding the foregoing, Caterer does not agree to indemnify and save harmless the Company, its agents, representatives, and employes from any charges, claims or actions based upon or arising out of any damages, losses, claims, expenses, charges, costs, injuries or illness sustained or incurred as the sole result of the negligence of the Company, its agents, representatives or employes. In the event a claim is filed against the Company for which Caterer is to be held liable under the terms of this Agreement, the Company will promptly notify Caterer of such

claim and will not settle such claim without the prior written consent of Caterer.

NINTH: Caterer shall be solely responsible to comply with all federal, state and local laws governing the preparation, handling and serving of foods and agrees to obtain and keep in effect any licenses, permits and food handler's cards required by law; and Caterer further agrees to post in a prominent place such permits and/or notices as are required by law. Caterer shall also be responsible for complying with all requirements of federal and state social security, unemployment compensation and tax withholding laws, and all applicable federal, state and local laws and regulations pertaining to (1) wages and hours of employment of its employes and (2) equal employment opportunities and fair employment practices, and in this connection, Caterer agrees that it will not discriminate in its employment practices due to age, sex, race, color, creed, or national origin. Caterer further agrees to hold the Company harmless from any and all claims of its employes for wages and salaries.

TENTH: Caterer shall pay all federal, state and local taxes and assessments which may be levied against its equipment or merchandise while in or upon the premises of the Company, as well as all federal, state and local taxes, assessments and fines which may be levied against it in connection with the operation of its business upon the premises of the Company..

ELEVENTH: It is mutually understood and it is the intent of the parties that an independent contractor relationship be and is established under this Agreement; and that all persons working for Caterer in the performance of this Agreement are employes of Caterer and are not employes of the Company.

TWELFTH: Caterer agrees that all of its employes while on the premises of the Company will obey and comply with all rules and regulations established by the Company.

THIRTEENTH: Automatic vending machines installed upon the Company's premises pursuant to this Agreement may be owned, maintained and serviced by a reputable third party vending machine operator under contract with Caterer and under Caterer's general supervision; provided that such vending machine operator shall be satisfactory in all respects to the Company, which shall have the right of approval and of withdrawal of approval, on sixty (60) days notice, of any operator at any time. The third party vending machine operator must agree to carry and furnish evidence to the Company of insurance similar to that required of the Caterer under paragraph SEVENTH herein; and shall further agree to indemnify and hold harmless the Company, and its agents, employes and representatives, from any and all claims, actions and causes of action based upon or arising directly or indirectly out of any losses, charges, costs, damages, expenses, injuries and illness sustained or incurred by any person, including but not

limited to, employes of the Caterer, the Company and said third party, arising out of or resulting in any way from any acts or omissions of such third party, its employes, agents and representatives, while in or about the premises of the Company or arising out of or resulting from or in consequence of the use, maintenance and servicing of automatic vending machines upon the Company's premises.

FOURTEENTH: All automatic vending machines installed upon the premises of the Company and all merchandise contained therein shall remain the property of the party who originally installed such machines, and shall be maintained by the owner thereof at the owner's expense. The Company shall not be responsible for any damage to or loss of any parts, machines, merchandise or monies from said vending machines while on the premises of the Company, resulting from fire, theft or any other cause.

FIFTEENTH: Caterer hereby guarantees and agrees that the vending equipment installed upon the Company's premises and the use thereof are and shall be free and clear of infringement of any valid patent or trademark and that Caterer will, at its own expense, defend any and all actions or suits charging such infringement.

SIXTEENTH: Notwithstanding the rights granted to the Caterer by the provisions of this Agreement, if at any time while this Agreement is in force the Caterer fails or is unable, for any cause in the opinion of the Company, to perform the catering services herein agreed upon, the

Company shall have the right to effect such other arrangements as may, in the Company's discretion, be deemed necessary or desirable for the continuation of catering services during the period of the Caterer's inability or failure to perform.

SEVENTEENTH: It is mutually agreed that this contract will remain in force until it is terminated by either party in the manner hereinafter set forth. The Company shall have the right to terminate this contract at any time without advance notice to Caterer if a labor dispute between the Caterer and its employes, or between a third party vending operator and his employes, results in the picketing of, or a work stoppage by any Company employes on, the premises hereinabove described, or any other premises of the Company. Either party shall have the absolute and discretionary right to terminate and cancel this contract for any other reason upon giving to the other party sixty (60) days' prior written notice of cancellation. Service of such notice shall be made personally or by registered mail sent to the last known address of the party being served. If this Agreement is terminated or cancelled by either party, the Company shall have the right, at its option, to purchase from the Caterer (a) all or any portion of the inventory or merchandise which the Caterer may have on hand on the date of termination, at its cost to the Caterer, and (b) all or any portion of the Caterer owned equipment other than vending machines, installed or used on

the premises of the Company, at its cost to the Caterer less one percent (1%) per month for depreciation.

EIGHTEENTH: Upon termination of this Agreement, the Caterer and any vending operator, at the direction of the Company, shall vacate all parts of the premises of the Company, and shall restore the same to the Company, together with all equipment furnished by the company to the Caterer, in the same condition as when originally made available by the Company, reasonable wear and tear excepted, and without in any manner interfering with the continuous operation of said catering service by the Company or by any other party selected by the Company. If such property and effects are not removed promptly upon the termination of this Agreement for any cause, the Company shall have the right to remove and store all of said property and effects at the expense of the Caterer.

NINETEENTH: Upon being requested by the Company, the Caterer, or any third party vending operator, shall at any time during the life of this Agreement, promptly vacate any parts of the premises of the Company occupied by vending machines, remove promptly any and all items of its vending equipment, merchandise and related property from such designated premises, and restore said premises to the Company, together with all fixtures, equipment and other property of the Company in the same condition as when originally made available by the Company, reasonable wear and tear excepted. If the Caterer or a vending operator

fails to remove its vending machines, property and effects upon being requested to do so by the Company, the Company shall have the right to remove and store all of said machines, property and effects at the expense of the Caterer.

TWENTIETH: The Caterer shall not assign or transfer this Agreement, or any part thereof, or any rights of the Caterer hereunder, or remove, encumber or alienate any equipment furnished by the Company, except as otherwise expressly provided herein or consented to in writing in advance by the Company.

TWENTY-FIRST: The waiver by the Company of any breach or breaches of this Agreement by the Caterer shall not be forfeiture of any rights or remedies which the Company may have for any subsequent breach of the Agreement.

TWENTY-SECOND: This Agreement constitutes the entire agreement between the parties with respect to the matters covered herein and there are no other or further written or oral understandings or agreements with respect thereto, except as expressly provided for herein. No variation or modification of this Agreement and no waiver of its provisions shall be valid unless in writing and signed by the duly authorized officers of the Caterer and the Company.

TWENTY-THIRD: This Agreement shall be effective as of the date first above written, and supersedes any and all prior Agreements between the parties as of that date.

## ATTACHMENT A

### PRICE AND PORTION CHANGES

The licensee shall not change prices or portions, once established, in either manual or vended products, without prior approval of the licensor.

IN WITNESS WHEREOF, the parties have caused their hands and seals to be affixed.

WITNESS:

_/s/ A. E. Silman_  5/18/89

GENERAL MOTORS CORPORATION
(Delco Product Division)
By _/s/ F. M. Dutton_  5/18/89
(Title) PURCH. MANAGER

WITNESS:

_____

ARA SERVICES, INC.

By _/s/ James L. Miller_
(Title)

James L. Miller
Area Vice President,
Business Dining Services,
a division of ARA Services, Inc.

OA-CAF/jl
01/30/89

ARAMARK CORPORATION

**ARAMARK**

JIM RISACHER
DISTRICT MANAGER
BUSINESS SERVICES

Mr. Jim Thompson
Director of Facilities
Delphi Chassis Systems
2000 Forrer Blvd
Kettering, Ohio 45420

April 28, 2004

Dear Jim,

As a follow up to our conversation yesterday, I would like to summarize our agreements as it relates to the ARAMARK Foodservice Agreement.

Effective May 1, 2004, the current contractual language will be modified to reflect a payment of $3500 per month from the ARAMARK Vending operations to Delphi Chassis. This has been modified from the current $5500 per month payment to Delphi. The Vending operations will transfer to ARAMARK Café operations the difference, $2000, to help offset the current Café operating costs.

With this change in the contract, ARAMARK will maintain this contractual language unless there is a 10% change in any employment populations. If there is a change in employment, either positive or negative, ARAMARK would sit down with Delphi Chassis to review the financial impact of such changes as would affect the current financial arrangement.

Thank you for your help and guidance in working with ARAMARK to make these changes to allow us to make a fair return for our services.

Sincerely,

Jim Risacher
District Manager/ ARAMARK

Cc: Lester Price/ GM ARAMARK Refreshment Services
    Gretchen Speidel/ Aramark FSD

702 SOUTH BLUFF DR.
WESTERVILLE, OH 43082-8603
614 794 3192