IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                       :

In re                       :    Chapter 11
                       :

DELPHI CORPORATION, et al.,   :    Case No. 05-44481 (RDD)
                       :

            Debtors.    :    (Jointly Administered)
                       :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF SERVICE

        I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

        On January 23, 2006, I caused to be served the document listed below (i) upon the parties listed on Exhibit A hereto via facsimile and (ii) upon the parties listed on Exhibit B hereto via overnight delivery:

        Notice of Proposed Sale of Assets Pursuant to Order Under 11 U.S.C. §363
        Approving Procedures to Sell Certain De Minimis Assets Free and Clear of Liens,
        Claims, and Encumbrances and to Pay Market Rate Broker Commissions in
        Connection with Such Sales Without Further Court Approval [a copy of which is
        attached hereto as Exhibit C]

Dated: January 26, 2006

                           */s/ Evan Gershbein*
                           Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 26th day of January, 2006, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature : *Amy Lee Huh*

Commission Expires: *3/15/09*

# EXHIBIT A

Delphi Corporation
Special Parties - Facsimile

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Davis Polk & Wardwell | Donald Bernstein | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 | 212-450-3092 | donald.bernstein@dpw.com | Postpetition Administrative Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | UCC Professional |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Prepetition Administrative Agent |
| United States Trustee | Deirdre A. Martini | 33 Whitehall Street | Suite 2100 | New York | NY | 10004 | 212-510-0500 | 212-668-2256 | deirdre.martini@usdoj.gov | United States Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

1/26/2006 9:46 AM
De Mnimis Sale Notice Service Lists

# EXHIBIT B

Delphi Corporation
Special Parties - Overnight Mail

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| Davis Polk & Wardwell | Donald Bernstein | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 | 212-450-3092 | donald.bernstein@dpw.com | Postpetition Administrative Agent |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | UCC Professional |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Prepetition Administrative Agent |
| United States Trustee | Alicia M. Leonard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | United States Trustee |
| United States Trustee | Deirdre A. Martini | 33 Whitehall Street | Suite 2100 | New York | NY | 10004 | 212-510-0500 | 212-668-2256 | deirdre.martini@usdoj.gov | United States Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

1/26/2006 9:47 AM
De Mnimis Sale Notice Service Lists

# EXHIBIT C

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
     In re                              :      Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :      Case No. 05-44481 (RDD)
                                        :
                 Debtors.      :      (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF PROPOSED SALE OF ASSETS PURSUANT TO ORDER UNDER
11 U.S.C. §363 APPROVING PROCEDURES TO SELL CERTAIN DE MINIMIS ASSETS
FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES AND TO PAY
MARKET RATE BROKER COMMISSIONS IN CONNECTION WITH SUCH SALES
WITHOUT FURTHER COURT APPROVAL

       1.   In accordance with the Order Under 11 U.S.C. § 363 Approving

Procedures To Sell Certain De Minimis Assets Free And Clear of Liens, Claims, And

Encumbrances And To Pay Market Rate Broker Commissions In Connection With Such

Sales Without Further Court Approval (Docket No. 766) (the "De Minimis Asset Sale

Order"), Delphi Technologies, Inc., a Delaware corporation (the "Debtor"), hereby gives

notice of its intention to sell certain assets, as described more fully below (the "Assets"), to

First Line Limited, a company organized under the laws of England (the "Purchaser") for the

price of 250,000 GBP (approximately $442,697).

       2.   The Assets to be sold to the Purchaser include the trademarks and

copyrights subsisting in the name "Borg & Beck" pursuant to the agreement attached hereto

as Exhibit A.  The Purchaser has agreed to license the Assets back to the Debtor pursuant to

the agreement attached hereto as Exhibit B.

3.    The Purchaser is not an insider of the Debtor as such term is defined in section 101(31) of the Bankruptcy Code and has no other connections to the Debtor.

4.    No broker was used in the sale of the Assets.

5.    Pursuant to the <u>De Minimis</u> Assets Sale Order, the Debtor shall consummate the sale of the Assets, free and clear of liens, claims, and encumbrances, and take such actions as are necessary to close the transaction, including but not limited to collection of proceeds of the sale of Assets, provided that counsel to the Debtor does not receive from a party that receives this Notice (a "Notice Party") a written objection or written request for additional time to evaluate the proposed sale within five business days from the date following the Notice Party's initial receipt of this Notice.

2

Dated: New York, New York
     January 23, 2006

                     SKADDEN, ARPS, SLATE, MEAGHER
                      & FLOM LLP

By: /s/   John Wm. Butler, Jr.
     John Wm. Butler, Jr. (JB 4711)
     John K. Lyons
     Ron E. Meisler
 333 West Wacker Drive, Suite 2100
 Chicago, Illinois  60606
 (312) 407-0700

    - and -

By: /s/  Kayalyn A. Marafioti
     Kayalyn A. Marafioti (KM 9632)
     Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

**<u>Exhibit A</u>**

TRADEMARK ASSIGNMENT

THIS ASSIGNMENT, effective this _30_ day of _December_ , 2005, between

DELPHI TECHNOLOGIES, INC. a Delaware corporation whose principal office is at

P.O. Box 5052, Troy, Michigan 48007-5052 USA ("the Assignor"); and FIRST LINE

LIMITED a company incorporated in England with registered number 03972437 having

a place of business at Bessemer Close, Bicester, Oxon, OX26 6QE ("the Assignee");

     WHEREAS, the Assignor is the registered owner of the trademarks identified in

Schedule A ("the Trademarks") and copyrights (if any) subsisting in the name "Borg &

Beck" ("the Name"); and,

     WHEREAS, the Assignor has agreed to assign to the Assignee its right, title and

interest in and to the Trademarks; the Name; pending applications (if any) for trademarks

in the Name and the right to make such applications in the jurisdiction in which the

Trademarks are registered (the "Territories"); the goodwill attaching to the Name and

Trademarks in the Territories; (all of which are hereinafter referred to as "the Rights")

under the terms and conditions set forth herein:

     NOW THEREFORE, the parties agree as follows:

1.     Subject to Assignee's grant-back of a Trademark License Agreement, executed

concurrently herewith, and in consideration of the sum of 250,000 GBP to be

paid by Assignee to Assignor within 30 (thirty) days after the date hereof,

Assignor hereby assigns to the Assignee all of its right, title and interest in and

to the Rights, subject to rights previously granted, together with the goodwill of

the business associated therewith.

1

2.    Assignor further grants to Assignee the right to sue for and recover damages in
respect of all past infringement, threatened infringement, dilution and any other
violation of the Rights.  The costs of such suits shall be borne by the Assignee,
and any and all recoveries from any suit or settlement shall go to the Assignee.

3.    Assignor warrants that:

3.1    It owns the Trademarks;

3.2    It is not at present involved in litigation arbitration or proceedings of any
kind concerning the Rights or any of them and that no such litigation
arbitration or proceedings are being threatened;

3.3    Assignor is not engaged in threatening or contemplating litigation
arbitration or other proceedings against a third party in any way
concerning the Rights or any or them;

3.4    Assignor has not consented and will not consent to any assignment
pursuant to Clause 10.2 of the 2000 Agreement, as hereinafter defined.

4.    Assignor represents that to its knowledge:

4.1    No licenses concerning the Rights have been granted to any third party
except:

4.1.1    The terms of the agreement made on 1 January 1973 between
Borg-Warner Corporation and Borg-Warner International
Corporation (1) and Automotive Products Limited (2) (the "1973
Agreement"); and

2

4.1.2   The agreement made on 28 February 2000 between Delphi

Technologies Inc (1) and Automotive Products Group Limited (2)

(the "2000 Agreement")

4.2   No valid claim has been made which would affect the validity of the

Rights;

4.3   The Trademarks comprise all trademarks registered in respect of the Name

by Assignor in the Territories;

4.4   Assignor has not knowingly done anything which may endanger the

registration of the Trademarks;

4.5   No third party currently has any valid legal challenge to the existence or

use of the Rights in the Territories; and

4.6   The use of the Name does not infringe any trademark or copyright of any

third party in the Territories.


5.   For a period of 1 (one) year after the date hereof, Assignor agrees to pay

Assignee, by way of a reduction in the consideration paid to Assignor

hereunder, actual damages limited to a sum in the aggregate of 100,000 GBP, as

a result of any breach of any of the warranties or representations, based upon

facts which if substantiated would constitute such a breach.

6.   To the extent that Assignor is able and where a claim is made by a third party

against Assignee relating to the Rights granted herein, Assignor agrees to

provide assistance required by Assignee in dealing with the claim, including the

furnishing of documentation and information relevant to the claim and the

3

execution of such documents as may required by Assignee, provided that
Assignee shall be responsible for all reasonable out of pocket expenses incurred
by Assignor in connection therewith.

7.    Assignor shall do all such things and shall sign and execute all such documents
and deeds as Assignee may reasonably require in order perfect any of the Rights
assigned to Assignee pursuant to this Assignment in the Territories, including
without limitation a separate instrument of assignment of each of the
Trademarks in due legal form conforming to the requirements of the country in
which the Trademark is registered.

8.    This Assignment shall be binding upon and shall inure to the benefit of the
parties and their respective officers, directors, employees, agents, affiliates,
attorneys, legal representatives, creditors, successors and assigns.

9.    Assignor represents and warrants as follows:

    9.1    Assignor is a corporation duly established and existing under the laws of
Delaware with the power and authority to own its own properties and
assets and carry on business as the same is now being conducted, and with
the power to enter into this Assignment;

10.    The governing law of this Assignment shall be the substantive law of Michigan.
Any dispute arising out of or in connection with this Assignment, including any
question regarding its existence, validity or termination, shall be referred to and
finally resolved by arbitration under the Rules of the London Court of
International Arbitration and applying the substantive law of the State of

4

Michigan, U.S.A. The Rules are deemed to be incorporated by reference into this clause. The number of arbitrators shall be 3 (three). The place of arbitration shall be London. The language to be used in the arbitral proceedings shall be English.

11. Bankruptcy

11.1    Within thirty (30) days of execution hereof, as the sole remedy, either party may declare this Agreement null and void, if the making, performance and execution of this Assignment is not within the powers of Assignor due to its Chapter 11 bankruptcy status; or that the necessary authorizations, court orders or decrees have not been obtained by Assignor; or that there is a mortgage, indenture, trust deed, contract, security interest or other agreement binding on the Assignor or affecting its property which would prevent the Assignor from assigning the Rights or which would prevent the Assignor from entering into or observing any of its obligations contained in this Assignment; or that Assignor is unable to transfer marketable title to the Trademarks free and clear of all claims and liens. The parties agree to extend the above and the time for payment in clause 1 hereof by a period not exceeding 30 days if the Assignor is required to obtain authorization for transfer free of claims and liens through a Bankruptcy Court hearing.

11.2    Upon a declaration of nullity of this agreement, all consideration received by Assignor shall be returned to Assignee and all

5

consideration received by Assignee shall be returned to Assignor.

Assignee shall execute a quitclaim assignment signifying the return of

the Rights to Assignor and, to the extent necessary, shall further do all

such things and shall sign and execute all such documents and deeds as

Assignor may reasonably require in order recapture the Rights being

returned, including without limitation a separate instrument of

assignment of each of the Trademarks in due legal form conforming to

the requirements of the country in which the Trademark is registered.

11.  This Assignment may be executed in two or more counterparts which shall

together form one and the same document.

IN WITNESS WHEREOF the parties hereto have executed this Trademark Assignment

on the day and year first above written.

DELPHI TECHNOLOGIES, INC.                    FIRST LINE LIMITED

_7 Torben_____                     _Joy~_____
Name                                         Name

_VICE PRESIDENT_____                       _DIRECTOR_____
Title                                        Title

_12/31/05_

## SCHEDULE A

| TrademarkName | Country | CountryName | AppNumber | FilDate | RegNumber | RegDate | TrademarkStatus | Class |
|---|---|---|---|---|---|---|---|---|
| BORG & BECK | AE | United Arab Emirates | 33148 | 28-Sep-1999 | 28960 | 20-Oct-2001 | Registered | 12 Int. |
| BORG & BECK | AL | Albania | 153-1973 | 22-Jan-1973 | 17-1596-4 | 27-Apr-1973 | Registered | 07 Int. |
| BORG & BECK | AR | Argentina | 2213376 | 13-Apr-1999 | 1797121 | 22-Jun-2000 | Registered | 12 Int. |
| BORG & BECK | AT | Austria | AM1260 | 19-May-1978 | 89119 | 12-Sep-1978 | Registered | 12 Int., 17 Int., 07 Int. |
| BORG & BECK | BD | Bangladesh | 2011 | 31-May-1973 | 2011 | 31-May-1973 | Registered | 12 Int. |
| BORG & BECK | BD | Bangladesh | 7348 | 16-Aug-1951 | 7348 | 16-Aug-1951 | Registered | 12 Int. |
| BORG & BECK | BG | Bulgaria | 1413 | 09-Dec-1981 | 13662 | 10-Jan-1983 | Registered | 07 Int., 12 Int. |
| BORG & BECK | BX | Benelux | 568869 | 24-Dec-1971 | 102625 | 24-Dec-1971 | Registered | 07 Int., 12 Int. |
| BORG & BECK | CH | Switzerland | 8013/1989 | 31-Oct-1989 | 378943 | 17-Oct-1990 | Registered | 12 Int., 07 Int. |
| BORG & BECK | CZ | Czech Republic | 52488 | 17-Dec-1981 | 165225 | 04-Nov-1982 | Registered | 12 Int. |
| BORG & BECK | DE | Germany | B00678 VA5519 | 07-Jan-1950 | 611404 VR3984 | 11-Sep-1951 | Registered | 12 Int., 07 Int. |
| BORG & BECK | DK | Denmark | 1981 | 23-Dec-1981 | 1985 | 22-Nov-1985 | Registered | 12 Int. |
| BORG & BECK | DZ | Algeria | 1435 | 09-Dec-1992 | 45805 | 09-Dec-1992 | Registered | 07 Int. |
| BORG & BECK | EG | Egypt | NA | 30-Dec-1972 | 48431 | 30-Dec-1982 | Registered | 07 Int. |
| BORG & BECK | ES | Spain | 193362M | 10-Oct-1946 | 193362 | 14-Mar-1947 | Registered | 12 Int. |
| BORG & BECK | FI | Finland | T198104890 | 04-Nov-1981 | 88654 | 24-Apr-1984 | Registered | 07 Int., 12 Int. |
| BORG & BECK | FR | France | 746100 | 08-Aug-1960 | 1311554 | 13-Oct-1995 | Registered | 01 Int., 07 Int., 12 Int., 17 Int. |
| BORG & BECK | FR | France | 95/592351 | 13-Oct-1995 | 95592351 | 13-Oct-1995 | Registered | 07 Int., 12 Int. |
| BORG & BECK | GB | United Kingdom | 1323365 | 07-Oct-1987 | 1323365 | 12-May-1989 | Registered | 12 Int. |

Page 1 of 3

| Owner | Code | Country | Number | Application | Registration | Status |
|---|---|---|---|---|---|---|
| BORG & BECK | GB | United Kingdom | 682896 | 03-Oct-1949 682896 | 03-Oct-1949 Registered | 12 Int. |
| BORG & BECK | GB | United Kingdom | 739770 | 25-Feb-1955 739770 | 25-Feb-1955 Registered | 12 Int. |
| BORG & BECK | GB | United Kingdom | 1323366 | 07-Oct-1987 1323366 | 28-Apr-1989 Registered | 37 Int. |
| BORG & BECK | GB | United Kingdom | 1164408 | 10-Nov-1981 1164408 | 10-Nov-1981 Registered | 07 Int. |
| BORG & BECK | GB | United Kingdom | 1043617 | 13-Mar-1975 1043617 | 16-Mar-1975 Registered | 12 Int. |
| BORG & BECK | GB | United Kingdom | 739769 | 25-Feb-1955 739769 | 25-Feb-1955 Registered | 07 Int. |
| BORG & BECK | GH | Ghana | NA | 20-Nov-1951 5710 | 20-Nov-1951 Registered | 06 Int. |
| BORG & BECK | GR | Greece | 16694 | 14-Jan-1950 16694 | 14-Jun-1950 Registered | 16 Int. |
| BORG & BECK | HK | Hong Kong | 479/51 | 10-Aug-1951 610/52 | 10-Aug-1951 Registered | 12 Int. |
|  |  |  |  |  |  | 12 Int., 07 Int. |
| BORG & BECK | HU | Hungary | 4108/91 | 24-Nov-1981 123229 | 30-Jun-1982 Registered | 12 Int. |
| BORG & BECK | ID | Indonesia | NA | 19-Dec-1995 417294 | 27-Jul-1998 Registered | 12 Int. |
| BORG & BECK | IE | Ireland | 2092/74 | 22-Jul-1974 86078 | 22-Jul-1974 Registered | 12 Int. |
| BORG & BECK | IN | India | 141964 | 11-Jan-1950 141964 | 11-Jan-1950 Registered | 12 Int. |
| BORG & BECK | IT | Italy | 26 MI94C0003 | 17-Jan-1994 692086 | 19-Nov-1996 Registered | 12 Int. |
| BORG & BECK | IT | Italy, Korea. | MI2000C00 0137 | 11-Jan-2000 581169 | 08-Jan-1990 Registered | 07 Int. |
| BORG & BECK | KR | Republic of Korea | 2191/98 | 27-Apr-1998 169294 | 10-Jul-1998 Registered | 12 Int. |
| BORG & BECK | LK | Sri Lanka | 13563 | 27-Feb-1952 13563 | 28-Jan-1954 Registered | 12 Int. |
| BORG & BECK | LY | Libya | 6868/8151 | 22-Apr-1973 6868/8151 | 22-Apr-1973 Registered | 12 Int. |
| BORG & BECK | MA | Morocco | 23899 | 26-Dec-1972 50198 | 18-Dec-1992 Registered | 07 Int. |
| BORG & BECK | MW | Malawi | NA | 21-Feb-1980 41/80 | 21-Feb-1980 Registered | 12 Int. |
| BORG & BECK | MY | Malaysia | M671/87 | 19-Feb-1987 87/00671 | 19-Feb-1987 Registered | 12 Int. |
| BORG & BECK | MYMA | Malaya | M/20723 | 05-Feb-1952 20723 | 05-Feb-1952 Registered | 12 Int. |
| BORG & BECK | NG | Nigeria | 6895 | 12-Oct-1951 6895 | 17-Oct-1952 Registered | 06 Int. |
| BORG & BECK | NO | Norway | 46502 | 04-Jan-1950 39013 | 10-Oct-1951 Registered | 11 Int. |
| BORG & BECK | PK | Pakistan | 16905 | 16-Aug-1951 16905 | 16-Aug-1951 Registered | 12 Int. |
| BORG & BECK | PL | Poland | Z 80250 | 09-Dec-1981 59754 | 09-Dec-1981 Registered | 12 Int. |
| BORG & BECK | PT | Portugal | 162031 | 05-Jan-1950 162031 | 19-Sep-1950 Registered | 12 Int. |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| BORG & BECK | RO | Romania | 12167 | 06-Mar-1982 R 12824 | 15-Dec-1983 | Registered | 07 Int., 12 Int. |
| BORG & BECK | RU | Russian Federation | 92843 | 25-Dec-1981 71040 | 25-Dec-1981 | Registered | 12 Int., 07 Int. |
| BORG & BECK | SE | Sweden | 71446 | 24-Nov-1948 71446 | 08-Feb-1952 | Registered | 12 Int., 07 Int. |
| BORG & BECK | SG | Singapore | S/46547 | 02-Jun-1969 46547 | 02-Jun-1969 | Registered | 12 Int. |
| BORG & BECK | TR | Turkey | NA | 13-Jan-1950 115653 | 13-Jan-1980 | Registered | 12 Int. |
| BORG & BECK | TT | Trinidad and Tobago | 11452 | 18-Jul-1979 B11452 | 24-May-1983 | Registered | 06 Int. |
| BORG & BECK | TW | Taiwan | (70) 19588 | 23-Jun-1981 169186 | 16-Jan-1982 | Registered | 57 Int. |
| BORG & BECK | TW | Taiwan | (65) 05982 | 09-Jul-1976 86938 | 01-Jan-1977 | Registered | 90 |
| BORG & BECK | UG | Uganda | 15913 | 29-Nov-1982 15913 | 29-Nov-1982 | Registered | 12 Int. |
| BORG & BECK | ZA | South Africa | 1950/00018 | 05-Jan-1950 1950/00018 | 07-Apr-1955 | Registered | 07 Int. |
| BORG & BECK | ZM | Zambia | 323079 | 01-Nov-1979 323079 | 10-Jan-1983 | Registered | 12 Int. |

**Exhibit B**

# TRADEMARK LICENSE AGREEMENT

THIS AGREEMENT is effective this _30_ day of _December_, 2005, between FIRST LINE LIMITED, a company organized under the laws of England with registered number 03972437 having a place of business at Bessemer Close, Bicester, Oxon, OX26 6QE ("Licensor"); and DELPHI TECHNOLOGIES, INC, a Delaware corporation whose principal office is at 5725 Delphi Drive, Troy, Michigan 48098 USA (the "Licensee").

WHEREAS, Licensee has agreed to sell to Licensor the Rights (as defined below) by entering into a Trademark Assignment, executed concurrently herewith (the "Assignment"), and has assigned to the Licensor the Rights;

WHEREAS, Licensee desires to use the Rights (as defined below) on or in connection with Products (as defined below) in a manner approved by Licensor; and,

WHEREAS, the Licensor has agreed to grant a license of the Rights to the Licensee, and to its affiliates and subsidiaries, upon the terms and conditions of this Agreement.

NOW THEREFORE, the parties agree as follows:

1. Definitions

　　1.1. "Agreement" means this license agreement;

　　1.2. "Commencement Date" means the date of this Agreement;

1

1.3. "Products" means clutch kits, clutch piece parts, clutch components, brake
cables, and clutch cables for passenger cars, commercial vehicles, and tractors, or
any other product approved by Licensor for sale by Licensee;

1.4. "Rights" has the meaning attributed to it in the Assignment;

1.5. "Territory" means in respect of each Trademark each of those territories in which
the relevant Trademark is registered in the name of Delphi Technologies Inc. or
in the name of the Licensee at the date of this Agreement

2. License

2.1. In consideration of good and valuable consideration, the receipt and sufficiency
of which is hereby acknowledged, the Licensor grants to the Licensee and its
affiliates and subsidiaries a non-exclusive, royalty free license to use the Rights
in the Territory on or in connection with the Products, subject to and on the terms
and conditions of this Agreement.

2.2. Licensee agrees that the Products shall only include products manufactured by
the Licensee or manufactured by suppliers to the Licensee and shall be used for
the purposes of the sale of stock and inventory existing at the Commencement
Date and not in connection with the manufacture of further Products bearing the
Trademarks.

3. Term

3.1. This Agreement shall commence on the Commencement Date and shall continue
for a period of two years. Upon expiry or termination of this Agreement,

2

Licensee shall cease use of the Rights and shall destroy all printed and other material in its possession to which the Rights have been applied.

4.  Use of the Trade Marks

    4.1. The Licensee shall only use the Rights in the form, style, color, method or context, and in such position and size as are approved in writing by the Licensor, such approval not to be unreasonably withheld.  The Licensor hereby consents to the continued use by the Licensee and its affiliates and subsidiaries of the Rights on or in connection with the Products in the form, style, color, method and context used immediately prior to the Commencement Date.

    4.2. The Licensee shall use the Rights only on or in connection with the Products; such use shall include use in publications, advertising and other material for the purpose of the sale of the Products.

    4.3. Licensor hereby acknowledges that the Licensee has used all reasonable efforts to ensure that all products and related materials to which the Rights are applied are manufactured in accordance with the standards of quality of specifications provided by the Licensor.

5.  Intellectual Property

    5.1. The Licensee acknowledges and agrees that the Rights remain the property of the Licensor at all times and that all goodwill generated by or in relation to the use of the Rights will at all times be the property of and inure to the benefit of the Licensor.

3

5.2. Licensee agrees that it will not register or attempt to register the Rights or any
names or marks or other rights similar thereto, either alone or in combination
with any other term or symbol for the Products.

6. Infringement

6.1. Licensee to notify Licensor of the adoption, use, or registration in the Territory of
any mark, trade name, trading style, or company name coming to its attention that
would infringe or impair, or tend to impair, the Rights.

6.2. The Licensor shall have the sole responsibility to conduct any proceedings
relating to the Rights and shall decide in its sole discretion what action, if any, to
take in respect of any infringement or alleged infringement proceedings of the
Rights or any other claim or counterclaim brought or threatened in respect of the
use of the Rights in the Territory.

7. Assignment

7.1. Licensee may not assign, sub-license or otherwise transfer any or all of its rights
under this Agreement without the prior written consent of the Licensor, except
that Licensee shall be entitled to grant a sub-license under this Agreement,
without the Licensor's consent, to its subsidiaries and affiliates.

8. Notices

Any notice required or permitted to be given hereunder shall be by registered mail
and addressed to the party to be notified at the address set forth below or at such other

4

address as such party shall have last designated by a writing delivered to and received
by the party giving notice:


If to LICENSOR:

First Line Limited, Bessemer Close, Bicester, Oxfordshire, OX26 6QE

For the attention of: John Madden

Facsimile: 01869 240472


If to LICENSEE:

Delphi Product and Services Solutions Division of Delphi Automotive
Systems LLC

C/o Delphi Lockheed Automotive Ltd.
Spartan Close
Warwick
Warwickshire
CV34 6ZQ
United Kingdom

Attn: Mr. Ian Voce

Fax: +44 (0)1926 472008

With a copy to:

Delphi Technologies, Inc.

P.O. BOX 5052

Troy, Michigan 48007, U.S.A.


Attn:    Assistant General Counsel, Intellectual Property

Facsimile: 248-813-1211

5

Either party may notify the other party pursuant to this paragraph of an address change.

9. Entire Agreement

   9.1. This Agreement constitutes the entire agreement and understanding between the parties and supercedes all prior oral or written understandings, arrangements, representations or agreements between them relating to the subject matter of this Agreement.

10. Governing Law and Jurisdiction

   10.1 The governing law of this Assignment shall be the substantive law of Michigan. Any dispute arising out of or in connection with this Assignment, including any question regarding its existence, validity or termination, shall be referred to and finally resolved by arbitration under the Rules of the London Court of International Arbitration, and applying the substantive law of the State of Michigan, U.S.A. The Rules are deemed to be incorporated by reference into this clause.

   10.2    The number of arbitrators shall be 3 (three).

   10.3    The place of arbitration shall be London.

   10.4    The language to be used in the arbitral proceedings shall be English.

IN WITNESS WHEREOF the parties hereto have executed this document as an agreement the day and year first above written.

6

FIRST LINE LIMITED                     DELPHI TECHNOLOGIES, INC

By: _____           By: _____

Title: _____          Title: _____
_____ Director _____              _____ VICE-PRESIDENT _____

                                       12/31/05

7