TRANSITION AGREEMENT

TRANSITION AGREEMENT (this "<u>Agreement</u>"), dated as of June 6, 2005 (the "Agreement Date"), between Applera Corporation, a Delaware corporation ("<u>Applera</u>") and Delphi Medical Systems Texas Corporation, a <u>Delaware</u> corporation ("<u>Delphi</u>").

WHEREAS, Applera is assigning the lease to the facility at 13215 North Pomenade Boulevard, Stafford, Texas 77477, and selling to Delphi the machinery, furniture, equipment, fixtures, tooling, inventory and other personal property (the "Transaction") located at such facility so that Delphi can commence manufacturing and supplying certain products to Applera (collectively, the "Houston Operations"); and

WHEREAS, the parties wish to provide for up to a 30 day transition period for employees and for up to a 60 day transition period for certain purchasing and administrative services related to the Houston Operations.

NOW THEREFORE, it is agreed as follows:

AGREEMENT

ARTICLE I
NATURE OF SERVICES AND CHARGES; BILLING; RECORDS

1.1    Scope of Services. It is the intent of the parties that Applera continue to employ the employees at the Houston Operations for a period of up to thirty (30) days from the Agreement Date (the "Employee Transition Period") and provide the necessary administrative services with respect to such employees as well as information systems, purchasing and sales processing services (collectively, "Administrative and IT Services") for a period of up to sixty (60) days from the Agreement Date (the "IT Transition Period"). If, following the Agreement Date, the parties determine that a service provided in connection the Houston Operations was inadvertently omitted from the services hereunder, then the parties shall negotiate in good faith to attempt to agree to the terms and conditions upon which such services can be added to this Agreement.

1.2    Provision of Services. (a) Except to the extent, if any, otherwise expressly provided herein, Applera shall provide the Administrative and IT Services in substantially the same manner, with the same degree of care, diligence and priority as existed with respect to the provision of such services prior to the Agreement Date.

(b)    Applera shall not be required to provide Delphi with extraordinary levels of services, or the advantage of systems, equipment, facilities, training or improvements procured, obtained or made after the Agreement Date. Applera shall use reasonable efforts to cooperate with and assist, in connection with the transfer, at the end of the Employee Transition Period, of the employees and, at the end of the IT Transition Period, the Administrative and IT Services from Applera to Delphi.

1

(c) In connection with the provision of services by Applera, Delphi shall (i) maintain all equipment, software and operational features in such fashion as is adequate to permit the provision of services by Applera, (ii) comply with any reasonable instructions of Applera that are necessary or appropriate to adequately provide the services, (iii) comply with all applicable standards and procedures applicable to the Houston Operations and (iv) promptly report any operational or system problems to Applera.

(d) Applera shall not be in default of its obligations hereunder for any delays or failure in performance resulting from any cause or circumstance beyond the reasonable control of Applera, provided that Applera exercises commercially reasonable efforts to perform its obligations in a timely manner. If any such occurrence prevents Applera from providing any of the services, Applera shall cooperate with the Delphi in obtaining, at Delphi's sole expense, an alternative source for the affected services.

1.3   Reimbursement of Expenses.

(a) Delphi shall reimburse Applera for Administrative and IT Services provided hereunder, and facility rent and operational expenses, during the IT Transition Period based on Applera's actual out-of-pocket costs, without mark-up.

(b) With respect to employees provided hereunder during the Employee Transition Period, Delphi shall reimburse Applera as follows:

(i) Delphi shall reimburse Applera for all employee (listed in Exhibit A) costs at the Houston Operations incurred by Applera during the Employee Transition Period, including, without limitation, wages, benefit costs, and taxes. However, Applera shall pay for all severance paid to any employee terminated by Applera before the end of the Employee Transition Period.

(ii) During the Employee Transition Period employees at the Houston Operations shall continue to accrue vacation time under Applera's Paid Time Off (PTO) policy, and all accrued vacation time shall be paid to such employees within 10 days after the end of the Employee Transition Period. Such accrued PTO costs during the Employee Transition Period shall be reimbursed by Delphi to Applera under the terms hereof.

(iii) Applera will payout to the employees at the Houston Operations the full fiscal year 2005 (which ends June 30, 2005) incentive bonus in accordance with terms of Applera's Incentive Compensation Plan (ICP) when, as, and under the same terms as, paid to other employees of Applera. The portion of the FY 2005 ICP payout covered by the Employee Transition Period shall be reimbursed by Delphi to Applera under the terms hereof.

(c) Delphi shall pay or reimburse Applera for any tax or charge imposed by any government or government authority on Applera or Delphi with respect to the services provided or the performance of this Agreement by Applera, during the applicable Transition

2

Period.

1.4   Terms of Payment. Applera shall invoice Delphi monthly for the services provided under this Agreement, such invoicing to be in such detail as Delphi may reasonably request. Payment shall be made within 45 days following receipt of any invoice. Any payments not made within such 45-day period shall bear interest at a rate equal to six percent (6%) per annum, but in no event to exceed the highest rate of interest permitted by applicable law, calculated from the date such payment was due until the date payment is received by Applera.

1.5   Records. Applera will preserve all records supporting the amounts charged to Delphi pursuant to this Agreement for a period of 6 years following the invoicing of such amounts. Applera shall (a) afford Delphi reasonable access during normal business hours upon reasonable prior notice to all such records and (b) provide copies of such records as Delphi reasonably may request for any proper purpose (including in connection with any judicial, administrative, tax, audit or arbitration proceeding).

1.6   Commitment to Employ. Delphi will offer to employ all employees at the Houston Operations listed in Exhibit A upon completion of the Employee Transition Period. Such employees will be offered employment by Delphi on an "at will" basis at base salaries at least equal to their current base salaries paid by Applera. After the Employee Transition Period, Delphi shall provide the employees at the Houston Operations benefits which, in the aggregate, are comparable to those provided by Applera, including without limitation for medical/dental coverage and qualified savings plan participation. In the event Delphi does not make offers of such employment within the 30 day Employee Transition Period, Applera shall have the right to rescind the Transaction without further liability to Delphi other than to return the $250,000 paid by Delphi to Applera with respect to the Transaction.

1.7   Term. Applera shall not be obligated to provide Delphi the services after the end of the respective Employee and IT Transition Periods, at which times Applera's obligations hereunder shall cease. At any time during the applicable Transition Period, Delphi may, upon five (5) days prior written notice, terminate this Agreement with respect to certain employees or any of the Administrative and IT Services. Early termination by Delphi will not affect Delphi's obligations with respect to any such employees, including the obligation to reimburse Applera for any severance or similar obligation, or for Administrative and IT Services provided prior to the effective date of such termination.

### ARTICLE II
### INDEMNIFICATION

Each party (an "Indemnifying Party") agrees to indemnify the other party and such other party's officers, directors, employees, shareholders and Affiliates (the "Indemnified Persons") in respect of all claims, costs, expenses, damages and liabilities (including, without liability, attorney's fees and expenses) arising from the negligence or willful misconduct of the Indemnifying Party or its employees, agents or other representatives from the date hereof or from the breach by the Indemnifying Party of its obligations hereunder. In no event shall either party

3

have any liability to the other party for any claims, losses, damages, judgments, costs or expenses that the other party may suffer or incur as a result of injuries to personnel of such other party or loss or theft or damage to any property of such other party, except as provided in the preceding sentence. Delphi shall indemnify and hold harmless Applera for any severance or similar obligation that arises by reason of the termination of employment at Delphi's direction or the transfer of employment of employees at the Houston Operations from Applera to Delphi, and for the cost of any worker's compensation or disability or similar claims arising during the Transition Period.

## ARTICLE III
## DISCLAIMER AND LIMITATION OF LIABILITY

3.1 DISCLAIMER. EXCEPT AS EXPRESSLY SET FORTH HEREIN, APPLERA MAKES NO REPRESENTATIONS OR WARRANTIES IN RESPECT OF THE SERVICES, EXPRESS OR IMPLIED, INCLUDING ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

3.2 Limitation of Liability. Delphi acknowledges that the services are provided by Applera (a) at the request of Delphi in order to accommodate the transaction between the parties, (b) at Applera's cost, without profit, and (c) with the expectation that Applera is not assuming any financial or operational risks other than as expressly set forth herein, including any such risks that customarily would be assumed by an unaffiliated third party. Accordingly, Delphi agrees that Applera shall not be liable for any direct, indirect, special, incidental or consequential damages, including lost profits or savings, whether or not such damages are foreseeable, or for any third party claims relating to the services or Applera's performance under this Agreement, unless due to willful misconduct or gross negligence.

## ARTICLE IV
## MISCELLANEOUS PROVISIONS

4.1 Representations. Each party hereby represents and warrants to the other party that: (a) such party is duly organized and validly existing under the laws of the jurisdiction of its organization and has the requisite power and authority to own, lease and operate its property and to conduct its business as now conducted by it; (b) such party has all requisite power and authority to enter into this Agreement and to perform its obligations hereunder; (c) the execution, delivery and performance by such party of this Agreement and the consummation by such party of the transactions contemplated hereby have been duly authorized by all requisite action on the part of such party; and (d) this Agreement has been duly executed and delivered by such party and constitutes a valid and legally binding obligation of such party, enforceable against it in accordance with its terms, subject to (i) the effects of bankruptcy, insolvency, fraudulent conveyance, reorganization, moratorium and other similar laws relating to or affecting the enforcement of creditors' rights generally, (ii) general equitable principles (whether considered in a proceeding in equity or at law) and (iii) an implied covenant of good faith and fair dealing.

4

    4.2    <u>No Waivers</u>. No waiver by either party of any of the provisions hereof shall be effective unless explicitly set forth in writing and executed by the party so waiving. Except as provided in the preceding sentence, no action taken pursuant to this Agreement, including, without limitation, any investigation by or on behalf of any party, shall be deemed to constitute a waiver by the party taking such action of compliance with any representations, warranties, covenants or agreements contained herein. The waiver by any party hereto of a breach of any provision of this Agreement shall not operate or be construed as a waiver of any subsequent breach.

    4.3    <u>Consents, Approval and Requests</u>. Unless otherwise specified in this Agreement, all consents and approvals, acceptances or similar actions to be given by either party under this Agreement shall not be unreasonably withheld or delayed and each party shall make only reasonable requests under this Agreement.

    4.4    <u>Severability</u>. If any provision of this Agreement shall be declared by any court of competent jurisdiction to be illegal, void or unenforceable, all other provisions of the Agreement shall not be affected and shall remain in full force and effect.

    4.5    <u>Notices</u>. All notices, requests, demands and other communications which are required or may be given under this Agreement shall be in writing and shall be deemed to have been duly given if delivered personally, if telecopied or mailed, first class mail, postage prepaid, return receipt requested, or by overnight courier as follows:

    If to Applera:

    William F. Gibbs
    Applied Biosytems
    850 Lincoln Center Drive
    Foster City, CA  94404-1128

    If to Delphi:
    Christophe J-P. Sevrain
    Delphi Medical Systems
    5725 Delphi Drive
    Troy, MI  48098-2815
    United States of America

or to such other address as either party shall have specified by notice in writing to the other party. All such notices, requests, demands and communications shall be deemed to have been received on the date of personal delivery or telecopy, on the third business day after the mailing thereof or on the first day after delivery by overnight courier.

    4.6    <u>Relationship</u>. (a) The performance by Applera of its duties and obligations under this Agreement shall be that of an independent contractor and nothing herein contained

5



shall create or imply an agency relationship between the parties, nor shall this Agreement be deemed to constitute a joint venture or partnership between the parties.

(b) The performance by the parties of their respective obligations hereunder shall in no way impair the absolute control of such parties' businesses and operations by their respective managements.

4.7 <u>Applicable Law</u>. This Agreement shall be governed by, and construed in accordance with, the laws of the State of California. Venue for all disputes or actions arising from this Agreement, whether at law or in equity, shall be the state and federal courts located in the counties of Santa Clara or San Mateo, California.

4.8 <u>Covenant of Further Assurances</u>. The parties covenant and agree that, subsequent to the execution and delivery of this Agreement and without any additional consideration, each of the parties will execute and deliver any further legal instruments and perform any acts which are or may become reasonably necessary to effectuate this Agreement.

4.9 <u>Assignability</u>. This Agreement shall not be assignable by either party.

4.10 <u>Entire Agreement</u>. This Agreement constitutes the entire agreement between the parties hereto and supersedes all prior agreements and understandings, oral and written, between the parties hereto with respect to the subject matter hereof.

4.11 <u>Successors</u>. This Agreement shall be binding upon and inure to the benefit of and be enforceable against the Parties hereto and their respective successors and assigns.

4.12 <u>Amendments</u>. This Agreement may be amended, supplemented or otherwise modified only by a written instrument executed by the parties hereto.

IN WITNESS WHEREOF, the parties herein have caused this Agreement to be executed by their duly authorized officers as of the day and year first above written.

Approved for Signature
by _____ (CB)
date  6/6/05
Applied Biosystems Group
Legal Department

APPLERA CORPORATION
By: _Catherine M. Burzik_
Name: Catherine M. Burzik
Title: President Applied Biosystems Group

DELPHI MEDICAL SYSTEMS TEXAS CORPORATION
By: _____
Name: Robert C. Saurain
Title: Managing Director

tm16967
6-6-05, 9:20 AM

6

Transition Agreement

# EXHIBIT A

# Houston Manufacturing Plant Headcount

## Applied Biosystems Employees to be hired by Delphi Medical Systems

| Pers.no. | Last name | First name | Position | Annual salary (USD) | Grade | Hire Date | Count |
|---|---|---|---|---|---|---|---|
| 101041 | Kirchner | Sara | Supv, Document Control | 59,000 | 5 | 11/1/1999 | 1 |
| 100313 | Gingles | Mary | Analyst 2, Document Control | 40,200 | 4 | 5/3/1999 | 2 |
| 52113 | Adair | Michael | Mgr, Manufacturing Engineering | 92,000 | 6 | 11/2/1998 | 3 |
| 100158 | Heinrich | Kenneth | Staff Engineer, Test | 92,500 | 6 | 3/1/1999 | 4 |
| 51725 | Choong | Mel | Sr Engineer, Mechanical | 70,000 | 5 | 3/30/1998 | 5 |
| 101228 | Greenfield | Erik | Sr Engineer, Electronic | 87,000 | 5 | 12/20/1999 | 6 |
| 101638 | Sumabat | Gerardo | Sr Engineer, Electronic | 81,800 | 5 | 3/6/2000 | 7 |
| 101774 | Drahem | Douglas | Sr Engineer, Electronic | 72,500 | 5 | 3/20/2000 | 8 |
| 103447 | Veazie | James | Sr Engineer, Mechanical | 74,300 | 5 | 4/2/2001 | 9 |
| 105337 | Roque Jr. | Gilbert | Sr Engineer, Compliance | 77,500 | 5 | 11/4/2002 | 10 |
| 106248 | Ali | Fatma | Product Quality Assurance Eng. | 90,000 | 6 | 5/17/2004 | 11 |
| 100093 | Hinkle | Gary | Mgr, Manufacturing | 80,000 | 6 | 1/27/1999 | 12 |
| 51675 | Neal | Joseph | Engineer 2, Test | 52,300 | 4 | 5/21/1997 | 13 |
| 51718 | Cajilig | Ezekel | Sr Technician, Manufacturing | 42,000 | 4 | 6/30/1997 | 14 |
| 51768 | Garcia | Eleazar | Sr Technician, Manufacturing | 41,700 | 4 | 7/1/1995 | 15 |
| 51797 | Jarquin | Luis | Sr Technician, Manufacturing | 44,000 | 4 | 3/16/1998 | 16 |
| 51824 | Ly | Michael | Engineer 2, Test | 59,000 | 4 | 9/1/1995 | 17 |
| 51837 | Phung | Sang | Sr Technician, Manufacturing | 39,400 | 4 | 12/1/1997 | 18 |
| 100118 | Doan | Thai | Sr Technician, Manufacturing | 39,700 | 4 | 2/11/1999 | 19 |
| 100119 | Young | Bill | Sr Technician, Manufacturing | 39,500 | 4 | 2/8/1999 | 20 |
| 100161 | Glendenning | Dennis | Sr Technician, Manufacturing | 39,500 | 4 | 3/1/1999 | 21 |
| 100632 | Calvo | Paulo | Sr Technician, Manufacturing | 44,800 | 4 | 8/2/1999 | 22 |
| 101160 | Bandalan | Josephus | Sr Technician, Manufacturing | 39,500 | 4 | 11/22/1999 | 23 |
| 51681 | Padilla | Tom | Engineer 1, Test | 46,700 | 3 | 10/13/1997 | 24 |
| 51872 | Spain | Connie | Sr Associate, Manufacturing | 38,700 | 3 | 2/21/1994 | 25 |
| 100094 | Glendenning | Dana | Sr Associate, Manufacturing | 35,200 | 3 | 2/1/1999 | 26 |
| 51677 | Nguyen | Loc | Associate, Manufacturing | 36,000 | 2 | 9/17/1985 | 27 |
| 100095 | Phu | Phat | Associate, Manufacturing | 31,800 | 2 | 2/1/1999 | 28 |
| 102534 | Parker | Patrick | Associate, Manufacturing | 31,500 | 2 | 7/31/2000 | 29 |
| 103212 | Veazie | Jennifer | Associate, Manufacturing | 27,800 | 2 | 1/8/2001 | 30 |
| 16199 | Finley | Dennis | Manager, Procurement | 87,000 | 6 | 5/21/1985 | 31 |
| 51765 | Freeman | Terry | Sr Buyer/Planner | 57,750 | 5 | 3/9/1998 | 32 |
| 51883 | Tarney | Dale | Sr Buyer/Planner | 61,200 | 5 | 9/12/1994 | 33 |
| 100973 | Silva | Roger | Buyer/Planner 2 | 46,600 | 4 | 10/4/1999 | 34 |
| 103326 | Hart | Thomas | Supervisor, Production Planning | 77,108 | 5 | 2/12/2001 | 35 |
| 51678 | Nickelson | JoAnn | Production Planner, 2 | 42,800 | 4 | 7/28/1988 | 36 |
| 103210 | Filipp | Misty | Global Planner | 45,000 | 4 | 1/22/2001 | 37 |
| 51789 | Hogan | Francis | Supv, Inspection/QC | 71,289 | 5 | 12/3/1990 | 38 |
| 43951 | Hermoso | Eduardo | Sr Inspector, Quality Compliance | 44,357 | 4 | 2/6/1995 | 39 |

| ID | Last Name | First Name | Title | Salary | | Date | # |
|---|---|---|---|---|---|---|---|
| 102026 | Jamison | Larry | Supv, Logistics Warehouse | 68,925 | 5 | 5/1/2000 | 40 |
| 105166 | Kirchner | Jason | Analyst 1, Inventory Control | 34,550 | 3 | 8/19/2002 | 41 |
| 102327 | McKnight | Phillip | Handler 2, Material | 32,000 | 2 | 6/19/2000 | 42 |
| 102930 | Crear | Mary | Handler 2, Material | 32,000 | 2 | 10/30/2000 | 43 |
| 103843 | Kisinger | Mitchell | Handler 1, Material | 29,325 | 1 | 6/11/2001 | 44 |
| 105165 | Chan | Brian | Handler 1, Material | 29,500 | 1 | 8/19/2002 | 45 |
| 51845 | Ramananarive | Theresa | Planner/Scheduler 1, Production | 42,100 | 3 | 6/19/1995 | 46 |
| 105823 | Vargas | Angelina | Senior Staff Assistant | 36,000 | 3 | 9/2/2003 | 47 |
| 100721 | Stubblefield | Brian | Sr Specialist, Desktop Systems | 68,523 | 4 | 8/16/1999 | 48 |