**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

**Hearing Date: March 9, 2006**
**Hearing Time: 10:00 a.m.**
**Objection Deadline: March 6, 2006**

**In re**

**DELPHI CORPORATION, et al.,**

**Debtors.**

**Chapter 11 Case No.**

**05-44481 (RDD)**

**(Jointly Administered)**

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR AN ORDER GRANTING APPLERA CORPORATION (I) AUTHORIZATION TO RECOUP AMOUNTS OWED TO IT BY DELPHI MEDICAL SYSTEMS TEXAS CORPORATION FROM AMOUNTS OWED TO DELPHI MEDICAL SYSTEMS TEXAS CORPORATION BY APPLERA CORPORATION, AND/OR (II) RELIEF FROM THE AUTOMATIC STAY PURSUANT TO SECTION 362(d) OF THE BANKRUPTCY CODE TO EXERCISE RIGHTS OF SETOFF PRESERVED BY SECTION 553 OF THE BANKRUPTCY CODE WITH RESPECT TO PREPETITION AMOUNTS OWING BETWEEN APPLERA CORPORATION AND DELPHI MEDICAL SYSTEMS TEXAS CORPORATION**

**Robert N. Michaelson, Esquire (RM-5925)**
**Kirkpatrick & Lockhart Nicholson Graham LLP**
**599 Lexington Avenue**
**New York, NY 10022-6030**
**Telephone: (212) 536-3900**
**Facsimile: (212) 536-3901**

**-and-**

**John C. Hutchins, Esquire (BBO #246060)**
**Kirkpatrick & Lockhart Nicholson Graham LLP**
**75 State Street**
**Boston, MA 02109-1808**
**Telephone: (617) 261-3100**
**Facsimile: (617) 261-3175**

# TABLE OF CONTENTS

**PRELIMINARY STATEMENT** ........................................ 1

**FACTS** ........................................ 2

**ARGUMENT** ........................................ 3

**I. APPLERA HAS A VALID RIGHT TO RECOUP THE ACCOUNTS RECEIVABLE OWED TO IT BY DMSTC FROM THE PRE-PREPETITION AND POST-PETITION ACCOUNTS PAYABLE IT OWES TO DMSTC** ........................................ 3

**A. The Doctrine of Recoupment in Bankruptcy.** ........................................ 3

**B. Applera Has Rights of Recoupment.** ........................................ 4

1. A Right of Recoupment is Explicitly Provided in the Transaction Agreements. ........................................ 4

2. Recoupment is Permitted Under Applicable Non-Bankruptcy Law ........................................ 4

3. It is Appropriate for Applera to Exercise its Right of Recoupment at this Time. ........................................ 7

**II. APPLERA HAS RIGHTS OF SETOFF, IS A SECURED CREDITOR BECAUSE OF SUCH RIGHTS AND IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY** ........................................ 8

**A. The Doctrine of Setoff.** ........................................ 8

**B. Applera has a Right of Setoff Under Applicable Non-Bankruptcy Law.** ........................................ 8

**C. Applera is Entitled to Relief from the Automatic Stay to Exercise its Rights of Setoff.** ........................................ 10

**CONCLUSION** ........................................ 12

# TABLE OF AUTHORITIES

## Cases

*In re Alibrandi*, No. 87-00384, 1990 Bankr. LEXIS 1002 (Bankr N.D.N.Y. Apr. 25, 1990)...... 11

*Ashland Petroleum Co. v. Appel (In re B & L Oil Co.)*, 782 F.2d 155 (10th Cir. 1986)............ 3, 4

*Bank of N.Y. v. Treco (In re Treco)*, 240 F.3d 148 (2d. Cir. 2001).............................................. 10

*Beeche Sys. Corp. v. D.A. Elia Constr. Corp. (In re Beeche Sys. Corp.)*, 164 B.R. 12 (Bankr. N.D.N.Y. 1994)........................................................................................................................ 3

*Birman v Loeb*, 64 Cal. App. 4th 502 (Cal. Ct. App. 1998) .......................................................... 9

*Bohack Corp. v. Borden, Inc. (In re Bohack Corp.)*, 599 F.2d 1160 (2d Cir. 1979).................... 11

*Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030 (5th Cir. 1987) .................................. 9

*Braun v. Bouma (In re Coast Grain Co.)*, 317 B.R. 796 (Bankr. E.D. Cal. 2004)......................... 5

*Chicago Title Ins. Co. v. Seko Inv., Inc. (In re Seko Inv., Inc.)*, 156 F.3d 1005 (9th Cir. 1998) .... 5

*Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995) .................................................... 8, 11

*In re County of Orange*, 219 B.R. 543 (Bankr. C.D. Cal. 1997) ............................................... 5, 9

*In re Davis*, No. 90A-0079, 1995 Cal. Tax LEXIS 34 (Cal. Bd. Equalization June 29, 1995)...... 5

*In re Eyke*, 246 B.R. 550 (Bankr. W.D. Mich. 2000) ................................................................ 3, 7

*Fisher v. Outlet Co. (In re Denby Stores, Inc.)*, 86 B.R. 768 (Bankr. S.D.N.Y. 1988) .................. 6

*In Re Flanagan Bros., Inc.*, 47 B.R. 299 (Bankr. D. N.J. 1985)................................................... 11

*Krause, Inc. v. Home Depot U.S.A., Inc. (In re Krause)*, No. 00 B 71919, 2005 Bankr. LEXIS 1404 (Bankr. N.D. Ga July 11, 2005)........................................................................................ 4

*Kruger v. Wells Fargo Bank*, 11 Cal. 3d 352 (Cal. 1974) ............................................................ 9

*Lain v. ZC Specialty Ins. Co. (In re Senior Living Prop.)*, 309 B.R. 223 (Bankr. N.D. Tex 2004) 4

*Malinowski v. N.Y. State Dept. of Labor (In re Malinowski)*, 156 F.3d 131 (2d Cir 1998)............ 5

*MBNA Am. Bank, N.A. v. TransWorld Airlines, Inc. (In re TransWorld Airlines)*, 275 B.R. 712 (Bankr. D. Del. 2002) ............................................................................................................. 3

*New York State Electric & Gas Co. v. McMahon (In re McMahon)*, 129 F.3d 93 (2d Cir. 1997). 3

*Newberry v. Fireman's Fund Ins. Co.*, 95 F.3d 1399 (9th Cir. 1996) ........................................... 3

*In re Nickerson & Nickerson, Inc.*, 62 B.R. 83 (Bankr. D. Neb. 1986)......................................... 9

*In re Norsal Indus., Inc.*, 147 B.R. 85 (Bankr. E.D.N.Y. 1992) .................................................... 4

*In re Reeves*, 265 B.R. 766 (Bankr. N.D. Ohio 2001) .................................................................. 7

*Schacter v. Tolassi (In re 105 E. Second St. Assoc.)*, 207 B.R. 64 (Bankr. S.D.N.Y. 1977)..... 4, 7

*Scherling v. Hellman Elec. Corp., (In re Westchester Structures, Inc.)*, 181 B.R. 730 (Bankr. S.D.N.Y. 1995) ...................................................................................................................... 9

*Sigman v. Aetna Life Ins. Co. (In re Sigman)*, 270 B.R. 858 (Bankr. S.D. Ohio 2001) ................. 7

*In re Silicon Valley Telecom Exch., LLC*, 284 B.R. 700 (Bankr. N.D. Cal. 2002)..................... 5, 6

*Sprint Commc'n Co. v. State Bd. of Equalization*, 40 Cal. App. 4th 1254 (Cal. Ct. App. 1995) ... 5

*Stern v. Sunset Road Oil Co.*, 190 P. 651 (Cal. Ct. App. 1920)..................................................... 5

*In re Ter Bush*, 273 B.R. 625 (Bankr. S.D. Cal. 2002).................................................................. 9

*United States v. Gerth*, 991 F.2d 1428 (8th Cir. 1993).................................................................. 9

*United States v. Orlinski (In re Orlinski)*, 140 B.R. 600 (Bankr. S.D. Ga. 1991) ........................ 11

*In re University Medical Ctr.*, 973 F.2d 1065 (3d Cir. 1992)........................................................ 3

*In re Vaughter*, 109 B.R. 229 (Bankr. W.D. Tex. 1989) ............................................................... 4

*Waldschmidt v. CBS, Inc.*, 14 B.R. 309 (M.D. Tenn. 1981) .......................................................... 4

*Warren Oil v. Conoco*, No. 89-799-A, 1990 U.S. Dist. LEXIS 20017 (S.D. Iowa June 27, 1990) 6

*Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138 (2d Cir. 2002).................................... 3, 4, 5

*In re Woldcom, Inc.*, 304 B.R. 611 (Bankr. S.D.N.Y. 2004) ......................................................... 5

**Statutes**

11 U.S.C. § 362............................................................................................................................ 1

11 U.S.C. § 362(a)(7)......................................................................................... 10

11 U.S.C. § 362(d) ......................................................................................... 1, 11

11 U.S.C. § 362(d)(1) ......................................................................................... 12

11 U.S.C. § 362(d)(2) ........................................................................................ 12

11 U.S.C. § 506(a) ........................................................................................ 2, 10

11 U.S.C. § 542........................................................................................ 11

11 U.S.C. § 542(b) ........................................................................................ 11

11 U.S.C. § 553........................................................................................ 2, 3, 8, 9, 10

11 U.S.C. § 553(a) ........................................................................................ 8, 10, 12

**Other Authorities**

*Collier on Bankruptcy* ¶553.10 (Resnick, Sommer and King, eds., 15th ed, Vol. 5, 2005)........... 3

*Collier on Bankruptcy* ¶553.10[1] ........................................................................................ 4

Applera Corporation (“Applera”) respectfully submits this Memorandum of Law (the “Memorandum”) in support of its Motion (the “Motion”) for entry of an order granting Applera (i) authorization to recoup immediately amounts owed to it by Delphi Medical Systems Texas Corporation (“DMSTC” or the “Debtor”) from amounts owed to DMSTC by Applera and (ii) if such authorization is not granted in full, relief from the automatic stay pursuant to § 362(d) of the Bankruptcy Code to set off pre-petition amounts owing between Applera and DMSTC.

Capitalized terms used but not otherwise defined in this Memorandum shall have the meanings ascribed to such terms in the Motion.

## PRELIMINARY STATEMENT

In June of 2005 Applera and DMSTC, a debtor in these Chapter 11 cases, entered into a transaction pursuant to which DMSTC manufactures and sells certain medical, analytical and testing devices (the “Products”) to Applera (the “Transaction”). As part of the Transaction, Applera provides raw materials, parts, components (“Inventory”) and work in progress (“WIP”), and has provided various services, to make it possible for DMSTC to manufacture the Products. Although Applera and DMSTC executed multiple agreements as parts of the Transaction, the agreements were all executed with the single purpose of enabling the Transaction. The agreements evidence this intent of the parties by (1) stating this intent, (2) cross-referencing one another, (3) providing for rights of recoupment arising out of the different agreements; and (4) providing for Applera to furnish goods and services necessary to DMSTC’s performance of its obligations under the Manufacturing Agreement. Because the agreements were all executed in furtherance of the Transaction, they are so closely intertwined that none of them would have been executed without the others. Accordingly, the Transaction, and the agreements executed in connection with it, are all part of a single integrated transaction. As a result Applera has a right to recoup the accounts receivable owed to it by DMSTC arising out of the Transaction from both pre-petition and post-petition accounts payable arising out of the manufacture and sale of the Products to Applera. DMSTC has neither assumed nor rejected any of the agreements executed in connection with the Transaction.

Because the accounts receivable and accounts payable arise out of a single integrated transaction, Applera is entitled to recoup the accounts receivable owed to it from the

accounts payable owed by it up to the full amount of such accounts payable. The components of the transaction are so inextricably combined that it would be inequitable to try to sever one part of the Transaction from the others. To do so would frustrate the parties' intent and make it impossible to perform the other agreements as intended. Any excess accounts payable above the amount necessary to recoup the accounts receivable owed to Applera are being paid and will be paid in accordance with the terms of the applicable agreements.

Although exercise of the right of recoupment is not subject to the automatic stay in effect with respect to the Debtor under § 362 of the Bankruptcy Code, Applera has not exercised any right of recoupment, but rather has placed an administrative freeze on an amount of the accounts payable to DMSTC equal to the accounts receivable owing to Applera. This administrative freeze is in place pending clarification by the Court of Applera's right to recoup and/or set off with respect to such accounts payable, including obtaining a determination that such actions would not violate the terms of the final DIP Financing Order described in the Motion.

In accordance with applicable law and § 553 of the Bankruptcy Code, subject to the automatic stay Applera also has a right to offset its pre-petition payables against allowable pre-petition claims. Pursuant to § 506(a) of the Bankruptcy Code, the pre-petition claims of Applera against DMSTC are secured by the pre-petition accounts payable owed by Applera. If Applera's rights of recoupment are not recognized by the Court, Applera seeks relief from the automatic stay pursuant to § 362(d) of the Bankruptcy Code to offset the pre-petition obligations owing between the parties.

## FACTS

Except to the extent supplemented below, the pertinent facts underlying this Memorandum are set forth in the Motion and are incorporated by reference herein as if fully set forth at length.

# ARGUMENT

## I. APPLERA HAS A VALID RIGHT TO RECOUP THE ACCOUNTS RECEIVABLE OWED TO IT BY DMSTC FROM THE PRE-PREPETITION AND POST-PETITION ACCOUNTS PAYABLE IT OWES TO DMSTC

### A. The Doctrine of Recoupment in Bankruptcy.

Recoupment allows a defendant to defend a claim made against it by asserting a countervailing claim arising out of the same transaction or occurrence. *Beeche Sys. Corp. v. D.A. Elia Constr. Corp. (In re Beeche Sys. Corp.)*, 164 B.R. 12, 18 (Bankr. N.D.N.Y. 1994). Although the right of recoupment does not appear anywhere in the Code, it is an equitable remedy that has long been recognized and allowed in the bankruptcy context. *In re Eyke*, 246 B.R. 550, 557 (Bankr. W.D. Mich. 2000). Because the Code does not create any substantive right of recoupment, courts must look to non-bankruptcy law, which ordinarily is state law, to determine whether the right of recoupment may be exercised and if so, to what extent. *See New York State Electric & Gas Co. v. McMahon (In re McMahon)*, 129 F.3d 93, 96 (2d Cir. 1997); *Westinghouse Credit Corp. v. D'Urso*, 278 F.3d 138, 146 (2d Cir. 2002).

Recoupment is viewed as a defense to payment of a claim, a mechanism for determining the proper amount owed to a debtor, rather than affirmative assertion of a claim against the debtor. *See Collier on Bankruptcy* ¶553.10 (Resnick, Sommer and King, eds., 15th ed, Vol. 5, 2005). As such, the funds found to be subject to recoupment are not considered to be part of the property of the debtor, and recoupment is not subject to the automatic stay. *In re McMahon*, 129 F.3d at 96; *Newberry v. Fireman's Fund Ins. Co.*, 95 F.3d 1399, 1403 (9th Cir. 1996); *MBNA Am. Bank, N.A. v. TransWorld Airlines, Inc. (In re TransWorld Airlines)*, 275 B.R. 712, 720 (Bankr. D. Del. 2002). Because recoupment is a defensive remedy, it is limited by the amount of the debtor's claim.

The common law doctrine of recoupment provides an exception to set off in bankruptcy cases. *In re University Medical Ctr.*, 973 F.2d 1065, 1079 (3d Cir. 1992). It is not subject to the limitations on set off contained in § 553 of the Code. *In re University Medical Ctr.*, 973 F.2d. at 1080. As a result, recoupment has been allowed in a variety of situations without regard to whether the debts involved arose pre-petition or post-petition. *See Ashland Petroleum Co. v. Appel (In re B & L Oil Co.)*, 782 F.2d 155 (10th Cir. 1986) (allowing creditor

to recoup overpayments made pre-petition pursuant to an oil division order, by withholding money owed for purchases made post-petition.); *Waldschmidt v. CBS, Inc.*, 14 B.R. 309 (M.D. Tenn. 1981) (allowing record company to recoup the advances paid to a musician from post-petition record sales); *In re Norsal Indus., Inc.*, 147 B.R. 85 (Bankr. E.D.N.Y. 1992) (allowing electric utility to recoup the debtor's pre-petition security deposit to reduce its claim against the debtor for post-petition electrical services); *In re Vaughter*, 109 B.R. 229 (Bankr. W.D. Tex. 1989) (allowing employer to recoup pre-petition advances paid to the debtor against post-petition commissions); *Schacter v. Tolassi (In re 105 E. Second St. Assoc.)*, 207 B.R. 64, 68 (Bankr. S.D.N.Y. 1977) (allowing creditor to recoup pre-petition rent overcharge award against post-petition rents).

**B. Applera Has Rights of Recoupment.**

1. A Right of Recoupment is Explicitly Provided in the Transaction Agreements.

The provisions of the Manufacturing Agreement and the Inventory/WIP Agreement, quoted in paragraphs 13 and 14 of the Motion, explicitly provide, in fact require, that obligations of DMSTC to Applera be netted against Applera's obligations to DMSTC. Recoupment is particularly appropriate if the contract at issue expressly permits it. *In re B & L Oil Co.*, 782 F.2d 155, 157 (10th Cir. 1986); *Collier on Bankruptcy* ¶553.10[1].

2. Recoupment is Permitted Under Applicable Non-Bankruptcy Law.

Applera has the right to recoup the amount owed to it from the accounts payable it owes to DMSTC, whether pre-petition or post-petition. As noted above, both the Manufacturing Agreement and the Transaction Agreement state that they are governed by California law. Bankruptcy courts will apply a contractual choice of law clause in determining which state's recoupment law applies. *See Westinghouse Credit Corp.*, 278 F.3d at 146 n.3; *Krause, Inc. v. Home Depot U.S.A., Inc. (In re Krause)*, No. 00 B 71919, 2005 Bankr. LEXIS 1404, at *8 (Bankr. N.D. Ga July 11, 2005); *Lain v. ZC Specialty Ins. Co. (In re Senior Living Prop.)*, 309

B.R. 223, 233, (Bankr. N.D. Tex 2004). Accordingly California law should be applied to determine Applera's recoupment rights.[1]

Under California law, recoupment is a defense to payment where the obligation of the defending party to pay is offset by an obligation owing to the defending party arising out of the same transaction.[2] *See Stern v. Sunset Road Oil Co.*, 190 P. 651, 653 (Cal. Ct. App. 1920). A right of recoupment is exercisable if the obligations at issue are not "divisible." *See id.* at 654. Where it appears that the obligations of the transaction would not have been entered into except upon the clear understanding that the full object of the transaction will be performed, the transaction is not divisible and a party may exercise a right of recoupment arising out to that transaction. *See id.* Therefore, under California law, if the claims at issue have arisen out of the same transaction, as determined by the parties' intent and the object of the transaction, recoupment is available as a defense to the plaintiff's claims.

After examining applicable state law to determine whether such law recognizes the right of recoupment, courts in the Second Circuit then have applied bankruptcy law to determine whether a particular creditor is entitled to exercise the right in bankruptcy. *See e.g., Malinowski v. N.Y. State Dept. of Labor (In re Malinowski)*, 156 F.3d 131, 133 (2d Cir 1998). Courts in the Second Circuit have generally applied the "single integrated transaction" test, requiring that the debts involved arise out of a single integrated transaction such that it would be inequitable to allow the debtor to enjoy the benefits of a transaction without also fulfilling its obligations. *Id.* at 133-34; *Westinghouse Credit Corp.*, 278 F.3d at 147.

---

1 In the event the Court determines that the choice of law clauses are not controlling, Texas law should be applied because the relevant actions in this case occurred in Texas. *See In re Woldcom, Inc.*, 304 B.R. 611, 619 (Bankr. S.D.N.Y. 2004). If Texas law is applied, it does not change Applera's right to recoupment, however, because Texas law recognizes that when debts arise out of the same transaction they give rise to a right of recoupment. *Id.*

2 Recoupment is the historic precursor to the compulsory counterclaim. *See In re County of Orange*, 219 B.R. 543, 559 (Bankr. C.D. Cal. 1997). The move to modern pleading rules, including the compulsory counterclaim, has diminished the need for the common law of recoupment in California. Accordingly, the common law right of recoupment is asserted very rarely outside the bankruptcy context today, but is still recognized by bankruptcy courts in California. *See e.g., Chicago Title Ins. Co. v. Seko Inv., Inc.* (*In re Seko Inv., Inc.*), 156 F.3d 1005 (9th Cir. 1998); *Braun v. Bouma (In re Coast Grain Co.)*, 317 B.R. 796 (Bankr. E.D. Cal. 2004); *In re Silicon Valley Telecom Exch., LLC*, 284 B.R. 700, 709 (Bankr. N.D. Cal. 2002). Additionally, the doctrine of equitable recoupment is regularly applied by the California State Board of Equalization (the "Board of Equalization") to allow taxpayers to recoup taxes paid against taxes owed with respect to a single transaction or taxable event. *E.g., Sprint Commc'n Co. v. State Bd. of Equalization*, 40 Cal. App. 4th 1254. 1264 n. 5 (Cal. Ct. App. 1995); *In re Davis*, No. 90A-0079, 1995 Cal. Tax LEXIS 34, at *8 (Cal. Bd. Equalization June 29, 1995).

There is no precise definition of a "single integrated transaction," and determination of whether the test is met is fact specific. In this case the test is met. As stated in the Motion, the purpose of all the Transaction agreements and the associated documents referenced in the Motion, evidenced by a recital in the Transition Agreement, was to transfer designated assets to DMSTC and provide transitional assistance in operating the facility, so that DMSTC could manufacture and sell Products back to Applera. As stated in the Declaration of William F. Gibbs Affidavit, attached as Appendix H to the Motion (the "Gibbs Affidavit"), no one of the agreements would have been entered into without the others. Under the terms of the escrow letter attached as an Annex to the Gibbs Affidavit, none of the agreements was to become effective unless all became effective. Additionally, the agreements themselves expressly provide for recoupment. The Manufacturing Agreement not only deals with the manufacture, sale and delivery of Products to Applera but also requires DMSTC to purchase Inventory and WIP on hand at the Houston Facility on the date of the Agreement. The agreements cross reference each other and are mutually dependent upon and supportive of each other. As noted in the Gibbs Affidavit, these agreements are so closely interconnected that they cannot realistically be separated. Without the Inventory and WIP transferred under the Inventory/WIP Agreement and the services provided by Applera under the Transition Agreement, DMSTC could not have manufactured and delivered the Products as required by the Manufacturing Agreement.

The fact that some of the obligations at issue arise under separate contracts does not bar a finding that the contracts are part of a single integrated transaction. *See Fisher v. Outlet Co. (In re Denby Stores, Inc.)*, 86 B.R. 768, 783 n.18 (Bankr. S.D.N.Y. 1988) (indicating in dictum that obligations arising under various documents executed appurtenant to a sale transaction may constitute a single integrated transaction). The Second Circuit has not addressed this issue directly, but courts in other jurisdictions have found that obligations arising under different contracts can be part of a single integrated transaction where, for example, the purpose of the documents was to facilitate the purpose of the overall transaction. *See Warren Oil v. Conoco*, No. 89-799-A, 1990 U.S. Dist. LEXIS 20017, at *5 (S.D. Iowa June 27, 1990) (finding that the multiple agreements could not be rationally and realistically severed and were thus part of the same transaction); *In re Silicon Valley Telecom Exch., LLC*, 284 B.R. at 709 (stating that "the two obligations still might be logically related to each other despite having originated from separate contracts, if, for example, [one agreement] was made for the purpose of permitting

Debtor to meet Debtor's obligations under the [other agreement]"); *Sigman v. Aetna Life Ins. Co. (In re Sigman)*, 270 B.R. 858, 862 (Bankr. S.D. Ohio 2001) (finding that although the obligations at issue arose under two separate documents, the obligations were dependant on each other, and therefore part of a single transaction); *In re Eyke*, 246 B.R at 558 (holding that because the agreements at issue were "necessarily intertwined," they constituted a single integrated transaction for recoupment purposes). The separate contracts involved in *Eyke* were executed in connection with an asset sale transaction. 246 B.R. at 558.

Because the obligations at issue arose in such a closely integrated transaction, it would be inequitable to allow DMSTC to enjoy the favorable aspects of the Transaction while avoiding the unfavorable aspects of the same Transaction. *See In re Reeves*, 265 B.R. 766, 772 (Bankr. N.D. Ohio 2001) (stating that the application of the doctrine of recoupment prevents the debtor from assuming the favorable aspects of a transaction while avoiding the unfavorable aspects of the same transaction, and that, as such, it is consistent with the bankruptcy policy of requiring an executory contract to be either assumed or rejected as a whole). Applera sold the Houston Facility to DMSTC so that DMSTC could manufacture Products for it in that Facility using the Inventory and WIP already located there. To deny recoupment would allow DMSTC to receive a windfall profit from the sale of that Inventory and WIP back to Applera in the form of finished Products without having to meet its obligations to pay for the WIP and Inventory. *See e.g., In re 105 E. Second St. Assoc.*, 207 B.R. at 69; *In re Eyke*, 246 B.R. at 558. As such, the equities favor requiring DMSTC to meet its obligations to pay both the transitional operating costs of the Houston Facility and the price of the Inventory and WIP it used to manufacture Products for Applera. The elements of the Transaction are so inextricably connected that it would be unjust to try to sever one part of the Transaction from the others. Therefore, Applera should be allowed to recoup the obligations owed to it by DMSTC from the accounts payable.

3. <u>It is Appropriate for Applera to Exercise its Right of Recoupment at this Time.</u>

DMSTC demanded payment of the accounts payable owed by Applera by a letter delivered to William Gibbs, Senior Director, Business Operations of Applera, on January 10, 2006, a copy of which is attached as Appendix F to the Motion. The time is now ripe for

Applera to defend against such demand by recouping the amounts owed to it from the amount claimed by DMSTC.

## II. APPLERA HAS RIGHTS OF SETOFF, IS A SECURED CREDITOR BECAUSE OF SUCH RIGHTS AND IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY

For the reasons set forth above, Applera believes it is entitled to recoupment in this case. However, in the event the Court does not authorize Applera to exercise recoupment to the full extent requested in the Motion, Applera has rights of setoff with respect to the pre-petition obligations owed by each party to the other, and is entitled to relief from the automatic stay to exercise those rights.

### A. The Doctrine of Setoff.

Section 553 of the Bankruptcy Code governs setoffs in a bankruptcy context. In relevant part § 553 provides:

> Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement date . . . against a claim of such creditor against the debtor that arose before the commencement date of the case . . .

11 U.S.C. § 553(a). Essentially the right of setoff

> allows entities that owe each other money to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A'… Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. §553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy.

*Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18 (1995).

### B. Applera has a Right of Setoff Under Applicable Non-Bankruptcy Law.

To determine whether a right of setoff exists, the courts must look to applicable state law. As noted in the discussion of Applera's rights of recoupment, the Manufacturing Agreement and the Transaction Agreement provide that they are governed by California law.

The right of setoff is a common law equitable right under California law. *Kruger v. Wells Fargo Bank*, 11 Cal. 3d 352, 363 (Cal. 1974); *Birman v. Loeb*, 64 Cal. App. 4th 502, 519 (Cal. Ct. App. 1998). "The right of setoff while recognized by the statute, was not created by it. 'The right is grounded in general principles of equity.'" *Kruger*, 11 Cal. 3d at 363 (quoting *Jojola v. Wells Fargo Bank*, No. C-71 900 SAW, 1973 U.S. Dist. LEXIS 15609, at *6-7 (N.D. Cal. 1973)).

Under California law, "[i]n order to assert a setoff, cross-demands for money must exist between the parties. The right of setoff arises when two parties are mutually debtor and creditor to each other . . . The [California] Supreme Court has held: '[I]t is well settled that a court of equity will compel a setoff when mutual demands are held under such circumstances that one of them should be applied against the other and only the balance recovered.'" *Birman*, 64 Cal. App. 4th at 519. Bankruptcy courts have found that the right of setoff exists under California law and have applied it in the context of Bankruptcy Code § 553. *E.g.*, *In re County of Orange*, 183 B.R. at 559; *In re Ter Bush*, 273 B.R. 625, 629 (Bankr. S.D. Cal. 2002) (stating that "California law recognizes the equitable right to setoff.").

In order for a creditor to be allowed to exercise its state law right of setoff in bankruptcy, it must establish the following:

(1) A debt exists from the creditor to the debtor and that debt arose prior to the commencement of the case;

(2) The creditor has a claim against the debtor that arose prior to the commencement of the bankruptcy case; and

(3) The debt and the claim are mutual obligations.

*United States v. Gerth*, 991 F.2d 1428, 1431 (8th Cir. 1993); *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1035 (5th Cir. 1987); *In re Nickerson & Nickerson, Inc.*, 62 B.R. 83, 85 (Bankr. D. Neb. 1986). Debts are mutual when the obligations are in the same right and are between the same parties, standing in the same capacity. *Scherling v. Hellman Elec. Corp., (In re Westchester Structures, Inc.)*, 181 B.R. 730, 738-39 (Bankr. S.D.N.Y. 1995). While "mutuality" is not defined in the Bankruptcy Code, courts have interpreted it to mean debts

which are owed between the same parties, acting in the same capacity. *See id.* (stating that "[d]ebts are mutual when the debts and credits are in the same right and are between the same parties, standing in the same capacity.").

The requirements for a valid right of setoff are present here. Both sets of obligations arose prior to the commencement of these bankruptcy cases. The mutuality requirement is met because (1) the debts are held exclusively between Applera and DMSTC and (2) the debts and credits are held in the same "capacity" because neither Applera nor DMSTC was acting in a fiduciary capacity or as a trustee. Further Applera is not aware of any material dispute as to the pre-petition amounts due and owing between the parties as set forth in Appendix E to the Motion. In addition to having common law rights of setoff, Applera also has a contractual right of setoff evidenced by the provisions in the Manufacturing Agreement and Inventory/WIP Agreement described in paragraphs 13 and 14 of the Motion. These contractual rights of setoff are an independent basis for a determination that Applera has valid rights of setoff. Pursuant to the provisions of § 506(a) of the Bankruptcy Code, Applera's claim against DMSTC for the pre-petition receivables is a secured claim to the extent of the right of setoff. *Bank of N.Y. v. Treco (In re Treco),* 240 F.3d 148, 162 (2d. Cir. 2001).

### C. Applera is Entitled to Relief from the Automatic Stay to Exercise its Rights of Setoff.

While § 553(a) preserves a creditor's right of setoff, exercise of such rights after a bankruptcy petition is filed is barred by the automatic stay, unlike a creditor's rights of recoupment. Section 362(a)(7) of the Bankruptcy Code provides that the filing of a debtors' voluntary petition operates as an automatic stay, applicable to all parties, against "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). However, § 362(a)(7) simply stays enforcement of a creditor's setoff rights, and the creditor may still exercise its right of setoff in a bankruptcy proceeding if it obtains relief from the automatic stay or obtains an order allowing setoff prior to exercising any right to set off.

As stated previously, Applera has not exercised any rights of either setoff or recoupment. To preserve its rights while it seeks relief from the automatic stay, it has temporarily placed an administrative freeze on the amounts it owes to DMSTC up to the amount

owed to Applera. A temporary withholding of payment of an account payable owed to a debtor, if necessary to protect a right of setoff, does not violate the automatic stay. *Strumpf*, 516 U.S. at 18. Furthermore, the turnover provisions in § 542 of the Bankruptcy Code expressly exempt amounts that are subject to a right of setoff. 11 U.S.C. § 542(b). Accordingly the freeze placed on the accounts payable pending a decision on Applera's Motion does not constitute a violation of the automatic stay.

Section 362(d) of the Bankruptcy Code provides that relief from automatic stay shall be granted:

> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if –
>
> > (A) the debtor does not have an equity in such property; and
> >
> > (B) such property is not necessary to an effective reorganization; . . .

11 U.S.C. § 362(d). Applera should be granted relief from stay because (1) it has demonstrated that "cause" exists, and (2) the property is not necessary to an effective reorganization in this case.

Allowance or disallowance of a setoff is a decision that is within the discretion of the bankruptcy court. *Bohack Corp. v. Borden, Inc. (In re Bohack Corp.)*, 599 F.2d 1160, 1165 (2d Cir. 1979). The Second Circuit has stated that setoff should be allowed absent compelling circumstances and that "set off should be enforced unless the court finds after due reflection that allowance would not be consistent with the provisions and purposes of the Bankruptcy Act as a whole." *Id*. Therefore, absent compelling circumstances, once a party establishes a right to set off, such party also demonstrates "cause" for lifting the automatic stay. *In re Alibrandi*, No. 87-00384, 1990 Bankr. LEXIS 1002, at *8 (Bankr N.D.N.Y. Apr. 25, 1990). In other jurisdictions the demonstration of a right of setoff has been found to make "a prima facie showing of 'cause' for relief from stay." *See United States v. Orlinski (In re Orlinski)*, 140 B.R. 600, 603 (Bankr. S.D. Ga. 1991); *In Re Flanagan Bros., Inc.*, 47 B.R. 299, 303 (Bankr. D. N.J. 1985). Applera

has established that it has a right of setoff, and accordingly, “cause” exists for granting the relief from the stay sought by Applera.

The amount that Applera seeks to offset is small in the context of the Debtors’ cases and the overall cash resources of the Debtors. Because of Applera’s rights to setoff the pre-petition accounts payable against the pre-petition receivables, DMSTC has no equity in those payables. Additionally, these obligations represent a relatively small amount in comparison to the overall assets of the Debtors, so that allowing the setoff will not adversely affect the Debtors’ ability to reorganize. Accordingly, Applera is also entitled to relief under § 362(d)(2).

## CONCLUSION

Applera has a valid right to recoup the amounts owed to it by DMSTC from the accounts payable which Applera owes to DMSTC. Although the exercise of recoupment is not subject to the automatic stay, Applera seeks authorization by the Court of exercise of such recoupment first to make sure the Court does not disagree with Applera’s interpretation of the factual premises for Applera’s conclusion that recoupment may be exercised, and second because of uncertainty over whether the Final DIP Financing Order requires approval of the Court for any recoupment.

If the Court approves less than the full recoupment requested by Applera, Applera seeks an order granting relief from the automatic stay to exercise the rights of setoff preserved by § 553(a) of the Bankruptcy Code, first for cause under § 362(d)(1), and second, under § 362(d)(2), because DMSTC has no equity in the accounts payable to be offset, and such payables are not necessary to an effective reorganization of the Debtors.

Accordingly, Applera requests the Court to enter an order granting the relief requested in the Motion and such other and further relief as is just.

Dated: New York, NY
February 1, 2006

KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP

/s/
Robert N. Michaelson (RM-5925)
A Member of the Firm
599 Lexington Avenue
New York, NY 10022-6030
Telephone: (212) 536-3900
Facsimile: (212) 536-3901