TOGUT, SEGAL & SEGAL LLP
Bankruptcy Conflicts/Co-Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-----------------------------------------------------------x<br>In re:<br><br>DELPHI CORPORATION, *et al.*,<br><br>                              Debtors.<br>-----------------------------------------------------------x | HEARING DATE: 2/9/06<br>                AT: 10:00 a.m.<br><br>Chapter 11<br>Case No. 05-44481 [RDD]<br><br>Jointly Administered |

## DEBTORS' OBJECTION TO MOTION
## BY FURUKAWA ELECTRIC NORTH AMERICA APD FOR
## RELIEF FROM AUTOMATIC STAY TO PERMIT SETOFF OF CLAIMS

**TO THE HONORABLE ROBERT D. DRAIN,**
**UNITED STATES BANKRUPTCY JUDGE:**

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), by their undersigned counsel, as and for their objection to the motion dated December 15, 2005 (the "Motion") of Furukawa Electric North America APD ("Furukawa") for an Order for relief from the automatic stay to permit a setoff of claims, respectfully state:

**PRELIMINARY STATEMENT**

1. On October 4, 2005, just four days prior to the Initial Filing Date (defined below), the Debtors mistakenly made a payment to Furukawa in the amount of $2,826,506.66 (the "Double Payment") on account of invoices (the "Invoices") that the Debtors had already satisfied on September 14, 2005.

2. Furukawa readily admits that the Double Payment was erroneous, and that it was mistakenly made on account of the Invoices.

3. Rather than return the Double Payment, Furukawa placed the funds in a "suspension account", and Furukawa now seeks relief from the automatic stay to setoff and satisfy pre-petition general unsecured claims that pre-date the Double Payment and which are completely unrelated to the Double Payment.

4. The Double Payment was not made on account of an antecedent debt, and the Debtors did not receive any adequate consideration in exchange for that transfer. Consequently, the Double Payment is avoidable and recoverable by the Debtors as a constructive fraudulent conveyance pursuant to Title 11, U.S.C. (the "Bankruptcy Code"), section 548(a)(1)(B).

5. "It is well established that a party will be unable to assert a setoff while that party is being sued for fraudulent transfers . . . [t]his is because . . . there is no mutuality of obligations, which is required under Code Section 553(a)." *In re O.P.M. Leasing Services, Inc.*, 35 B.R. 854, 868 (Bankr. S.D.N.Y. 1983).

6. Furukawa is an entity from which property is recoverable and a transferee of a transfer that is avoidable under Chapter 5 of the Bankruptcy Code. Pursuant to Bankruptcy Code section 502(d), Furukawa's pre-petition claims against the Debtors "shall" be disallowed unless and until it returns the Double Payment to the Debtors. *See* 11 U.S.C. § 502(d). Consequently, Furukawa does not have allowable

2

claims with which to exercise a setoff. Mutuality does not exist. Moreover, Furakawa does not have a claim or right which is entitled to adequate protection or an account of which relief from the automatic stay may be granted.

7. Allowing the relief sought by Furukawa will serve only to perpetuate an improper depletion of the Debtors' estate. That result is contrary to the policies of Bankruptcy Code sections 502(d), 548, and 553.

8. Based upon the foregoing, and the authorities set forth below, Furukawa's Motion should be denied.

## STATEMENT OF FACTS

### The Chapter 11 Cases

9. On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its subsidiaries (the "Initial Filers") each filed voluntary petitions in this Court for reorganization relief under Chapter 11 of the Bankruptcy Code. On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") filed voluntary petitions in this Court for reorganization relief under Chapter 11 of the Bankruptcy Code.

10. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered Orders directing the joint administration of the Debtors' chapter 11 cases (Docket Nos. 28 and 404).

11. On October 17, 2005, the United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors in these

3

cases, which is represented by Latham & Watkins. No trustee or examiner has been appointed.

**The Debtors' Pre-Petition Transactions with Furukawa**

12. Furukawa supplies the Debtors with SIR coils and connection systems pursuant to various purchase orders and supply contracts. *See* Affirmation of Dana F. Fidler, dated February 1, 2006, annexed hereto as Exhibit A ("Fidler Affirmation") ¶ 5.

13. In response to demands by Furukawa, on or about September 14, 2005, the Debtors made a wire payment of $2,832,045.42 to Furukawa, noting in the Wire Request Form: "Vendor refusing to ship due to press release" (the "September 14 Payment"). *See* Fidler Affirmation ¶ 6 and Exhibit 1.

14. The September 14 Payment represented a gross payment of $2,860,651.94, less a 1% early payment discount, and it satisfied payment for the Invoices for goods that were just previously shipped to the Debtors. *See* Fidler Affirmation ¶ 7.

15. As a result of an oversight, on or about October 4, 2005, the Debtors made an electronic funds transfer payment to Furukawa in the amount of $2,826,506.66, *i.e.* the Double Payment. *See* Fidler Affirmation ¶ 8.

16. The Double Payment was remitted by the Debtors against the same Invoices that had already been satisfied by the September 14 Payment. *See* Fidler Affirmation ¶ 9.

17. The September 14 Payment and the Double Payment were in slightly different amounts only because one invoice for approximately $34,000 was not included in the Double Payment, and the Double Payment did not take credit for a prompt-payment discount. *See* Motion, at 2-3; *see also* Fidler Affirmation ¶ 10.

4

18. Furukawa placed the Double Payment into a "suspension account". *See* Motion, at 3.

19. Four days later, on October 8, the Debtors filed their petitions in this Court. The Debtors never provided any instructions to Furukawa regarding application of the Double Payment. *See* Fidler Affirmation ¶ 11.

20. Furukawa does not dispute any of these facts.

**Relief Sought By Furukawa**

21. Furukawa requests an Order pursuant to Bankruptcy Code section 362(d) modifying the automatic stay so that it can apply the Double Payment to an equivalent amount of pre-petition invoices that are completely unrelated to the Double Payment.

22. However, Furukawa cannot assert or provide any basis to conclude that cause exists for modification of the automatic stay because the Double Payment constitutes an avoidable constructive fraudulent transfer under Bankruptcy Code section 548(a)(1)(B)[1], and Furukawa's demand lacks the mutuality that is required by Bankruptcy Code section 553(a).

23. Furukawa is an entity from which property of the Debtors' estate is recoverable and a transferee of a transfer avoidable under Chapter 5 of the Bankruptcy Code. Consequently, its pre-petition claims must be disallowed unless and until it returns the Double Payment to the Debtors. By operation of Bankruptcy Code section

---

[1] Alternatively, the Double Payment could be argued to be avoidable as a preferential transfer made while the Debtors were presumed insolvent. *See In re Computrex International, Inc.*, 334 B.R. 229, 232 (Bankr. W.D. Ky. 2005) ("in a § 547 preference action, [o]verpayments . . . *are* subject to recovery by the trustee") (emphasis in original). The Debtors may also conclude that the September 14 Payment was preferential.

5

502(d), Furukawa does not have an allowable claim with which to exercise a setoff, and it has no right or claim that is entitled to adequate protection.

## ARGUMENT

### A.  Furukawa Has Failed to Show Cause to Modify the Automatic Stay Pursuant to Section 362(d)(1)

24.  The Second Circuit has described the automatic stay as a "crucial provision of bankruptcy law" intended to "prevent disparate actions against debtors . . . [and] ensur[e] that no creditor receives more than an equitable share of the bankrupt's estate." *Lincoln Savings Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Assoc., Inc.*, 880 F.2d 1540, 1545 (2d Cir. 1989) (internal citations omitted).

25.  Pursuant to Bankruptcy Code section 362(d)(1), the Court may grant relief from the automatic stay "for cause." The Bankruptcy Code does not define the term "cause" and the determination of whether sufficient cause exists to modify the stay is determined on a case by case analysis. *See In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 748-49 (Bankr. S.D.N.Y. 2004).

26.  Furukawa erroneously argues that it has established a right to setoff and a *prima facie* showing of "cause" for relief from the automatic stay. *See* Motion, at 5-6. However, as demonstrated below, Furukawa has neither an allowable claim with which to execute a setoff nor a claim or right which is entitled to adequate protection. Therefore, Furukawa's request for relief from the automatic stay fails as a matter of law.

**The Double Payment is a Not Subject to Setoff Because it is a Constructive Fraudulent Transfer**

27.     The Double Payment constitutes a constructive fraudulent conveyance. *See In re Rand Energy Co.*, 256 B.R. 712 (Bankr. N.D. Tex. 2000).  This Court has held that it is "well established" that fraudulent conveyance claims may not be defeated or diminished by a setoff. *O.P.M.*, 35 B.R. at 868.

28.     In *Rand*, the reorganized debtor mistakenly overpaid a creditor pre-petition for drilling services provided by the creditor.  The overpayments were made on account of invoices that the debtor had previously paid.  The creditor did not return the overpayments to the debtor and instead applied the overpayments to pay three invoices covering unrelated pre-petition services that it provided, and three invoices covering post-petition services by the creditor.  In response to the reorganized debtor's action to obtain turnover of the overpayments, the creditor sought retroactive relief from the automatic stay to permit a setoff of the pre-petition and post-petition invoices against the overpayments.  The *Rand* Court held that the debtor did not receive reasonably equivalent value in exchange for its overpayments to the creditor, reasoning that "Rand made the transfer to pay for services that had already been paid . . . not . . . as a deposit for drilling services to be provided to [another oil well]", and it concluded that the overpayment constituted a fraudulent conveyance. *Id.* at 716.  The Court also rejected the creditor's request for retroactive approval of a setoff, holding that the creditor "may not, however, invoke the setoff doctrine to a fraudulent transfer." *Id.* at 716-17 (citing *Mack v. Newton*, 737 F.2d 1343, 1366 (5th Cir. 1984) & *In re J.R. McConnell, Jr.*, 934 F.2d 662, 667 (5th Cir. 1991)).

29.     The holding in *Rand* is applicable to Furukawa's demand, and it is consistent with the plain language of the constructive fraudulent transfer provisions of

7

Bankruptcy Code section 548, which enable a debtor in possession to "avoid any transfer of an interest of the debtor in property . . . that was made . . . on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily . . . received less than a reasonably equivalent value **in exchange for** such transfer. . . ." 11 U.S.C. § 548(a)(1)(B)(i) (emphasis added). As *Collier on Bankruptcy* explains:

> The statute has two components to the reasonably equivalent value analysis. The first is whether sufficient value was received. The second is whether the value was received "in exchange for" the transfer that was made or obligation that was incurred.

5 Collier on Bankruptcy ¶ 548.05[1][b] (15th ed. rev. 2005).

30. The Double Payment to Furukawa satisfies neither of the criteria: (a) the Debtors did not receive any adequate value in exchange for the Double Payment; and (b) no value was received by the Debtors *in exchange for* the Double Payment because the Double Payment was made on account of Invoices which had previously been satisfied by the September 14 Payment.

31. The Debtors surrendered and transferred approximately $2.8 million to Furukawa, depleted their estate, and received nothing in exchange. Bankruptcy Code section 548 was enacted to address this occurrence and to preserve the assets of the estate. *See In re Butcher*, 58 B.R. 128, 130 (Bankr. E.D. Tenn. 1986).

32. Furukawa disregards the requirement that a debtor must receive value *in exchange for* its transfer, and mistakenly argues that Michigan law governs the underlying agreements and provides that "a creditor has the absolute right 'to apply the unappropriated monies of his debtor, in his hands, in extinguishment of the debts due to him.'" Motion, at 4 (citing *Whispering Pines AFC Homes, Inc. v. Department of Treasury*. 212 Mich. App. 545; 538 N.W.2d 452 (Mich. App. 1995) (citing *United States v. Munsey Trust Co.*, 332 U.S. 234, 239 (1947) and *Brown v. Lobdell*, 36 Or. App. 397; 585 P.2d 4, 7

8

(1978)). Furukawa's argument misses the mark and the cases that it cites in support, principally *Whispering Pines*, are inapposite.

33. The *Whispering Pines* state court was not asked to address a request to setoff pre-bankruptcy claims against an overpayment or a fraudulent conveyance that was subject to avoidance. The *Whispering Pines* court denied an adult foster care home operator's request for a restraining order to prevent the Department of the Treasury from continuing to withhold government benefits. In reaching its conclusion, the court recognized the "common law right" of the Department of the Treasury to withhold sums otherwise payable to the foster care home to recover an overpayment by applying "the unappropriated monies of [its] Debtor, in [its] hands, in extinguishment of the debts due to [it]." *Id.* at 456.[2]

34. The *Whispering Pines* Court defined parties' rights under state law principles, and it was not asked to address a proposed set-off of pre-bankruptcy claims against a fraudulent conveyance to a creditor or any other bankruptcy principles. While Furukawa may have had setoff rights under Michigan state law, those state law rights fail to satisfy the "mutuality" requirement found in Bankruptcy Code section 553. *See O.P.M.,* 35 B.R. at 868.

35. The inability of parties to use pre-petition claims and state law setoff rights to defeat or diminish chapter 5 avoidance causes of action against them is a fundamental and widely recognized principle:

> The general rule is that, in an action by a trustee to recover money paid or property transferred to a creditor under the preference provisions of the Code, the creditor cannot offset

---

[2]   *Knisley v. Bowman*, 656 F. Supp. 1540 (W.D. Mich. 1987), on which the *Whispering Pines* Court relied, also involved the power of the Michigan Department of Treasury to set off funds owed to taxpayers against debts owed by the taxpayers to other state agencies.

>  its liability against either a separate debt owed to it by the
>  debtor or the original liability on account of which the
>  preferential transfer was made. The reasoning for this rule is
>  that allowing the creditor to offset the amount of the transfer
>  would merely continue the preference, thereby rendering
>  the preference statute useless because the preference would
>  not become available for *pro rata* distribution to all creditors.
>  *Applying similar logic, a liability owed to the debtor by reason of a
>  fraudulent conveyance cannot be offset against a creditor's claim
>  against the debtor.*

5 Collier on Bankruptcy ¶ 553.03[3][e][v] (emphasis added).

**The Double Payment is a Not Subject to Setoff Because
The Obligations Sought to be Setoff are Not Mutual**

36. Furukawa may not use pre-petition claims against the Debtors to defeat the Debtors' right to seek a recovery of the Double Payment because there is no mutuality of obligations, which is a fundamental predicate to the allowance of a setoff pursuant to Bankruptcy Code section 553(a).

37. A pre-petition debtor and a debtor in possession are separate and distinct entities, which act in different capacities before and after a bankruptcy filing. *See, e.g., In re Genuity, Inc.*, 323 B.R. 79, 82 (Bankr. S.D.N.Y. 2005) (citing *Shopmen's Local 455 v. Kevin Steel Products, Inc.*, 519 F.2d 698, 704 (2d Cir. 1975)). As the Court explained in *Matter of Johnson*, 552 F.2d 1072, 1078 (4th Cir. 1977), "set-off is not allowed where the trustee's claim is founded on his extraordinary power to avoid transactions otherwise binding on the bankrupt himself, *e.g.* where the creditor seeking set-off was the recipient of a preferential or fraudulent transfer from the bankrupt." Put a different way, there can be no mutuality of obligations between a debtor in possession and transferee of fraudulent transfers because the liability of such transferee to the estate is not a "debt." *O.P.M.*, 35 B.R. at 868.

10

38.     "Creditors who have received voidable transfers to the detriment of the pool should not be entitled to make additional demands on the assets of the estate." 5 Collier on Bankruptcy ¶ 502.05[2][a].[3]

39.     The Double Payment was not made on account of an antecedent debt, and the Debtors did not receive any adequate consideration in exchange for that transfer.  Consequently, the Double Payment is avoidable and recoverable as a constructive fraudulent conveyance pursuant to Bankruptcy Code, section 548(a)(1)(B).

40.     "It is well established that a party will be unable to assert a setoff while that party is being sued for fraudulent transfers . . . [t]his is because . . . there is no mutuality of obligations, which is required under Code Section 553(a)." *OPM*, 35 B.R. at 868.  This well established principle operates to defeat the Motion.

## CONCLUSION

41.     Based on the foregoing, Furukawa has not and cannot establish cause for relief from the automatic stay to allow it to permit a setoff against the Double Payment, and the Motion should be denied in its entirety.

## Notice

42.     Notice of this Objection has been provided in accordance with the Order under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing (i) Omnibus Hearing Dates, (ii) Certain Notice, Case Management, and Administrative Procedures, and (iii) Scheduling an Initial Case Conference in Accordance with Local Bankr. R. 1007-2(e), which was entered by this Court on

---

[3]     The commencement or pendency of an adversary proceeding against a creditor is not a condition precedent to the disallowance, at least temporarily, of that creditor's claims pursuant to Bankruptcy Code
*(footnote continued on the following page)*

11

October 14, 2005 (Docket No. 245). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

### Memorandum Of Law

43. Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order denying the Motion, together with such other and further relief as may be just and proper.

Dated:  New York, New York
February 2, 2006

        DELPHI CORPORATION, *et al.*
        By their attorneys,
        TOGUT, SEGAL & SEGAL LLP
        By:

        /s/Neil Berger
        ALBERT TOGUT (AT-9759)
        NEIL BERGER (NB-3599)
        Members of the Firm
        One Penn Plaza
        New York, New York 10119
        (212) 594-5000

---

section 502(d). *See In re Mid Atlantic Fund, Inc.*, 60 B.R. 604, 609-11 (Bankr. S.D.N.Y. 1986), *see also In re KF Dairies, Inc.*, 143 B.R. 734, 735-38 (B.A.P. 9th Cir. 1992).