UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK        X

In re:

**DELPHI CORPORATION, et al.**
**DELPHI AUTOMOTIVE SYSTEMS, LLC**    X          Chapter 11
                                    Debtor          Case No. 05-44481 & 05-44640

NOTICE OF TRANSER OF CLAIM PURSUANT TO
F.R.B.P. RULE 3001(E) (1)

Transferor:     **Lake Erie Products, Inc.**
                **PO Box 67000 – Dept 248901**
                **Detroit, MI  48267**

   Your claim in the amount of **$895.56** against the Debtors has been transferred to:

Transferee:     **Sierra Liquidity Fund**
                **2699 White Road,  Suite 255**
                **Irvine, CA  92614**

No action is required if you do not object to the transfer of your claim. However, IF YOU OBJECT TO THE TRANSFER OF YOUR CLAIM, WITHIN 20 DAYS OF THE DATE OF THIS NOTICE, YOU MUST:

- **FILE A WRITTEN OBJECTION TO THE TRANSFER with:**

    United States Bankruptcy Court
    Alexander Hamilton Custom House
    Attn:  Bankruptcy Clerk
    One Bowling Green
    New York, NY  10004-1408

- **SEND A COPY OF YOUR OBJECTION TO THE TRANSFEREE:**
    Refer to INTERNAL CONTROL No. _____ in your objection.
    If you file an objection, a hearing will be scheduled.

IF YOUR OBJECTION IS NOT TIMELY FILED, THE TRANSFEREE WILL BE SUBSTITUTED ON OUR RECORDS AS THE CLAIMANT.

FOR CLERK'S OFFICE ONLY:

This notice was mailed to the first party, by first mail, postage prepaid on _____, 2003.
INTERNAL CONTROL NO._____
Copy: (check) Claims Agent _____ Transferee_____ Debtor's Attorney_____

                                            _____
                                                  Deputy Clerk

Transfer of Claim

# Delphi Corporation, Delphi Automotive Systems, LLC, et al.

This agreement (the "Agreement") is entered into between **Lake Erie Products** ("Assignor") and Sierra Liquidity Fund, LLC or assignee ("Assignee") with regard to the following matters:

1. Assignor in consideration of the sum of ⟨_____⟩ he current amount outstanding on the **Assignor's trade Claim (as defined below)** (the "Purchase Price"), does hereby transfer to Assignee all of the Assignor's right, title and interest in and to all of the claims of Assignor, including the right to amounts owed under any executory contract and any respective cure amount related to the potential assumption and cure of such a contract (the "Claim"), against Delphi Corporation, Delphi Automotive Systems, LLC, et al. (and certain of their affiliates, subsidiaries and other related debtors and debtors-in-possession) (collectively, the "Debtors"), each of which are in proceedings for reorganization (the "Proceedings") in the United States Bankruptcy Court for the Southern District of New York, jointly administered under case number 05-44481, in the current amount of not less than **$123,022.00 [the "Claim Amount"]**, and all rights and benefits of the Assignor relating to the Claim including, without limitation, Assignor's rights to receive interest, penalties and fees, if any, which may be paid with respect to the Claim, and all cash, securities, instruments, cure payments, and other property which may be paid or issued by the Debtors in satisfaction of the Claim. The Claim is based on amounts owed to Assignor by the Debtors as set forth below and this assignment is an absolute and unconditional assignment of ownership of the Claim, and shall not be deemed to create a security interest. **Assignee shall pay Assignor an amount equal to** ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮") within 3 **business days of receipt of a signed copy of this Transfer, which re**▮▮▮▮▮▮▮▮▮▮▮▮▮▮ **amount acknowledged by the Debtors on the Covisint/E-Dacor system (the "Debtors acknowledged amount as of December 14th, 2005"). The balance of the claim equ**▮▮▮▮▮▮▮▮▮▮**ents pre-petition amounts due to Assignor from Debtors for agreed upon Steel Surcharges (the "Steel Surcharges"). Assignee agrees to make a subsequent payment to Assignor within 10 business days from receipt of purchase orders evidencing the Steel Surcharges as valid – or for a valid amount less tha**▮▮▮▮▮▮▮▮▮▮ **rchase orders will be authorized by the Debtor and provided to the Assignee from the Assignor. The subsequent payment will be at the same rate of** ▮▮▮▮▮▮ **(the "Subsequent Payment"). The Subsequent Payment is conditional upon the Assignee performing due diligence on the evidenced Steel Surcharges and accepting the "Steel Surcharges" as a valid pre-petition claim. Such acceptance is at the option of the Assignee and should Assignee not accept the assignment of the Steel Surcharges, then Assignor will retain title on the amount of the Claim applicable to the Steel Surcharges.**

2. Assignee shall be entitled to all distributions made by the Debtors on account of the Claim, even distributions made and attributable to the Claim being allowed in the Debtors' cases, in an amount in excess of the Claim Amount. Assignor represents and warrants that the amount of the Claim is not less than the Claim Amount, that this amount is the true and correct amount owed by the Debtors to the Assignor, and that no valid defense or right of set-off to the Claim exists.

3. Assignor further represents and warrants that no payment has been received by Assignor or by any third party claiming through Assignor, in full or partial satisfaction of the Claim, that Assignor has not previously assigned, sold or pledged the Claim, in whole or in part, to any third party, that Assignor owns and has title to the Claim free and clear of any and all liens, security interests or encumbrances of any kind or nature whatsoever, and that there are no offsets or defenses that have been or may be asserted by or on behalf of the Debtors or any other party to reduce the amount of the Claim or to impair its value.

4. Should it be determined pursuant to the entry of a final court judgment or order that any transfer by the Debtors to the Assignor, which transfer constitutes a portion of the Claim, is avoidable as a preferential payment (an "**Avoidable Transfer**"), Assignor shall repay the amount of such Avoidable Transfer to the Debtors in a timely manner. Should

Assignor fail to repay such Avoidable Transfer to the Debtors, then Assignee, solely at its own option, shall be entitled to make said payment on account of the Avoidable Transfer, and the Assignor shall indemnify the Assignee for any amounts paid to the Debtors. If, as of the date of this Agreement, the Bar Date for filing a Proof of Claim has passed, Assignee reserves the right, but not the obligation, to purchase the Claim for the amount published in the Debtors' Schedule F.

5.    Assignor is aware that the Purchase Price may differ from the amount ultimately distributed in the Proceedings with respect to the Claim and that such amount may not be absolutely determined until entry of a final order confirming the Debtors' plan or plans of reorganization. Assignor acknowledges that, except as set forth in this Agreement, neither Assignee nor any agent or representative of Assignee has made any representation whatsoever to Assignor regarding the status of the Proceedings, the condition of the Debtors (financial or otherwise), any other matter relating to the Proceedings, the Debtors, or the likelihood of recovery of the Claim. Assignor represents that it has adequate information concerning the business and financial condition of the Debtors and the status of the Proceedings to make an informed decision regarding its sale of the Claim.

6. In the event that the Claim is disallowed, reduced, subordinated, or impaired for any reason whatsoever pursuant to a final court order, Assignor agrees to immediately refund and pay to Assignee, a pro-rata share of the Purchase Price equal to the ratio of the amount of the Claim disallowed divided by the Claim, plus 8% interest per annum from the date of this Agreement. The Assignee, as set forth below, shall have no obligation to otherwise defend the Claim, and the refund obligation of the Assignor pursuant to this section shall be absolutely payable to Assignee without regard to whether Assignee defends the Claim. The Assignor, and to the extent that the Assignor fails to do so, the Assignee shall each have the right to defend the Claim, only at its own expense and shall not look to the counterparty for any reimbursement for legal expenses.

7. To the extent that it may be required by applicable law, Assignor hereby irrevocably appoints Assignee as its true and lawful attorney and authorizes Assignee to act in Assignor's stead, to demand, sue for, compromise and recover all such amounts as now are, or may hereafter become, due and payable for or on account of the Claim. Assignor grants unto Assignee full authority to do all things necessary to enforce the Claim and Assignor's rights thereunder. Assignor agrees that the powers granted by this paragraph are discretionary in nature and that the Assignee may exercise or decline to exercise such powers at Assignee's sole option. Assignee shall have no obligation to take any action to prove or defend the Claim's validity or amount in the Proceedings or in any other dispute arising out of or relating to the Claim, whether or not suit or other proceedings are commenced, and whether in mediation, arbitration, at trial, on appeal, or in administrative proceedings. Assignor agrees to take such reasonable further action, as may be necessary or desirable to effect the Assignment of the Claim and any payments or distributions on account of the Claim to Assignee including, without limitation, the execution of appropriate transfer powers, corporate resolutions and consents.

8. Assignor shall forward to Assignee all notices received from the Debtors, the court or any third party with respect to the Claim, including any ballot with regard to voting the Claim in the Proceeding, and shall take such action with respect to the Claim in the Proceedings, as Assignee may reasonably request from time to time. Assignor acknowledges that any distribution received by Assignor on account of the Claim from any source, whether in form of cash, securities, instrument or any other property or right, is the property of and absolutely owned by the Assignee, that Assignor holds and will hold such property in trust for the benefit of Assignee and will, at its own expense, promptly deliver to Assignee any such property in the same form received, together with any endorsements or documents necessary to transfer such property to Assignee.

9. In the event of any dispute arising out of or relating to this Agreement, whether or not suit or other proceedings is commenced, and whether in mediation, arbitration, at trial, on appeal, in administrative proceedings, or in bankruptcy (including, without limitation, any adversary proceeding or contested matter in any bankruptcy case filed on account of the Assignor), the prevailing party shall be entitled to its costs and expenses incurred, including reasonable attorney fees.

10. The terms of this Agreement shall be binding upon, and shall inure to the benefit of Assignor, Assignee and their respective successors and assigns.

11. Assignor hereby acknowledges that Assignee may at any time further assign the Claim together with all rights, title and interests of Assignee under this Agreement. All representations and warranties of the Assignor and Assignee made herein shall survive the execution and delivery of this Agreement. This Agreement may be executed in counterparts and all such counterparts taken together shall be deemed to constitute a single agreement.

12. This Agreement is not valid and enforceable without acceptance of this Agreement with all necessary supporting documents by the Assignee, as evidenced by a countersignature of this Agreement. The Assignee may reject the proffer of this contract for any reason whatsoever.

13. This Agreement is not valid and enforceable, and shall be of no effect, unless Assignee pays the Initial Payment to Assignor within 3 (3) business days of the date that Assignee signs and dates this Agreement below.

14. This Agreement shall be governed by and construed in accordance with the laws of the State of Michigan. Any action arising under or relating to this Agreement may be brought in any state or federal court located in Michigan, and Assignor consents to and confers personal jurisdiction over Assignor by such court or courts and agrees that service of process may be upon Assignor by mailing a copy of said process to Assignor at the address set forth in this Agreement (or such other address as specified by prior written notice to Assignee by the Assignor), and in any action hereunder, Assignor and Assignee waive any right to demand a trial by jury.

**If you have filed a Proof of Claim please check here:** _____

**Please include invoices, purchase orders, and/or proofs of delivery that relate to the claim.**

Assignor and Assignee each hereby acknowledges and consents to all of the terms set forth in this Agreement.

IN WITNESS WHEREOF, the undersigned Assignor hereto sets his hand this 15TH day of November, 2005.

**ATTEST**

Mr. Robert R. Dow
Controller
Lake Erie Products
12955 Inkster Road
Livonia, MI 48150-2212
Ph: 734-266-6958
F:  734-266-6946
Email: bdow@lepinc.com

By _____

**Agreed and Acknowledged**

Mr. James S. Riley, Managing Member
Sierra Liquidity Fund, LLC
2699 White Road, Ste. 255
Irvine, CA 92614
949-660-1144

By _____ Date 12-15-05

TOTAL P.04