**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (admitted *pro hac vice*)
Mark A. Broude (MB-1902)
Email: robert.rosenberg@lw.com
       mitchell.seider@lw.com
       mark.broude@lw.com

Counsel for The Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Delphi Corp., et al., | ) | Case No. 05-44481 (RDD) |
| | ) | |
|       Debtors. | ) | |
| | ) | Jointly Administered |
| | ) | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS TO APPROVAL OF ANNUAL
INCENTIVE PLAN PURSUANT TO THE DEBTORS' MOTION FOR
ORDER UNDER §§ 105 AND 363 AUTHORIZING THE DEBTORS TO
IMPLEMENT A KEY EMPLOYEE COMPENSATION PROGRAM**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of Delphi Corporation, *et al.* (the "Debtors"), by and through its undersigned counsel, hereby objects (the "Objection") to the Debtors' request for this Court's approval of an annual incentive plan (the "AIP") pursuant to the Debtors' Motion (the "Motion")[1] for Order under §§ 105 and 363 Authorizing the Debtors to Implement a Key Employee Compensation

---

[1] Capitalized terms used but not otherwise defined in this Statement shall have the meanings ascribed to them in the Motion.

NY\1102069.6

Program (the "KECP").[2]  In support of its Objection, the Committee respectfully states as follows:

## PRELIMINARY STATEMENT

The Committee does not believe that any AIP should be approved before labor negotiations have been successfully concluded; the decision to seek approval of executive bonuses within one week of seeking historic and life-changing sacrifices from rank and file employees is simply not a reasonable or justifiable exercise of business judgment.

Notwithstanding that critical and over-arching objection, the Committee and the Debtors have been involved in good faith in-depth discussions regarding the conceptual form and substance of a proper performance-based incentive plan.  Based on these discussions, the Debtors have made substantial adjustments to the AIP.  As a result, to the extent a performance incentive plan is approved by this Court over the Committee's objection as to timing, the Committee does not object to the form and substance of the current AIP.[3]

## BACKGROUND

1.      On October 8, 2005 (the "Petition Date"), thirty-nine of the Debtors filed with this Court voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code").  On October 14, 2005, the three remaining Debtors filed petitions for relief in the same court.

---

[2]     The Committee reserves all of its rights with respect to all other portions of the KECP.

[3]     It should be noted, however, this form and substance may no longer be appropriate at a different stage in these cases.  As such, the Committee's decision to not object to the form and substance of the AIP presently (as opposed to the timing of such AIP) does not suggest and should not be deemed consent to the form and substance of any future AIP.

2. The Committee was appointed nine days after the Petition Date, on October 17, 2005.[4] Shortly thereafter, the Committee selected Latham & Watkins LLP as its counsel, Mesirow Financial Consulting LLC as its financial advisor, Jefferies & Company, Inc. as its investment banker, and Steven Hall & Associates as its compensation consultants.

## THE KECP, PAP, AND SEVERANCE PLANS

3. At the outset of these cases, the Debtors proposed immediate approval of, among other things, (1) a "Key Employee Compensation Program," (2) the post-petition payment of certain pre-petition performance bonuses (the "PAP"), and (3) the post-petition assumption of severance plans that were amended immediately prior to the Petition Date to provide for significantly greater severance for certain top executives. After appropriate diligence, and in an effort to offer appropriate and reasonable incentives and compensation to existing executives, the Committee did not object to the proposed severance ratification and PAP payments.

4. The KECP, however, has not been considered or approved by this Court, and has been, as this Court put it, a "lightning rod." In addition to a proposed AIP, the proposed KECP includes an emergence cash bonus for select executives (the "Cash Emergence Bonus"), and an emergence equity bonus for these and other select executives (the "Equity Emergence Bonus," and together with the Cash Emergence Bonus, the "Emergence Bonuses"). The Debtors have adjourned consideration of the KECP several times, most recently adjourning consideration of the Emergence Bonuses until July of this year. As of the filing of this Objection, however, some form of a proposed AIP is still scheduled to be considered on February 10, 2006.

---

[4] The members of the Committee are: (a) Capital Research and Management Company; (b) Electronic Data Systems Corp.; (c) Flextronics International Asia-Pacific, Ltd.; (d) Freescale Semiconductor, Inc.; (e) General Electric Company; (f) IUE-CWA and (g) Wilmington Trust Company, as Indenture Trustee.

3

NY\1102069.6

5.  Throughout this process, the Committee has discussed with the Debtors how an appropriate AIP should be structured. There were three fundamental flaws to the originally proposed AIP. First, the AIP as proposed was a purported performance incentive plan that did not in fact incentivize performance; the targets for payment accruals were entirely unrelated to the individual performance of those executives the Debtors claimed to seek to motivate. Second, there was no mechanism to ensure that payments would not be made to executives that had participated in any accounting fraud, or that any payments eventually made could be recovered if appropriate. Finally, the timing of proposing any bonus plan for executives was critical; it could not be done in any way that would threaten the on-going negotiations with unions, or the ultimate well being or morale of their employee base.

6.  Through significant on-going discussions with the Committee, the Debtors have now resolved two of those issues as they relate to the current AIP, but the third remains unresolved and critical.

## **OBJECTION**

7.  The Committee objects to the AIP on the grounds that such plan would endanger critical negotiations with the Debtors' unions, and therefore the ultimate success of these cases.[5]

8.  The legal standard for consideration of a post-petition compensation plan has been set forth in detail by the various objections to the KECP filed by other parties, and does not need to be set forth again in great detail herein. In short, if the debtor can demonstrate that

---

[5] In light of the timing of the original Motion, the on-going labor negotiations, the expected timing of motions under Sections 1113 and 1114, and the very recent identification by the Debtors of the current form of the proposed AIP, the Committee believes that once a consensual labor deal is achieved the Debtors should re-file a motion seeking approval of the revised AIP to allow all parties to evaluate the AIP in the context of the restructured labor environment.

4

the relevant decisions were made by disinterested individuals, bankruptcy courts ordinarily apply the business judgment standard when considering employee retention and compensation programs under section 363 of the Bankruptcy Code. In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992)(holding that "[t]he business judgment rule is available when a majority of a corporation's independent and outside directors have approved a transaction."). If the business judgment rule is applicable, bankruptcy courts will examine the proposed plan to decide whether it is justified by a sound business reason and would aid the process of reorganization. See In Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983) (holding that "[t]he rule we adopt requires that a judge determining a § 363 application expressly find from the evidence presented before him at the hearing a good business reason to grant such an application," and stating that a debtor must show that a use, sale or lease under section 363 will aid the debtor's reorganization). "[T]he debtor carries the burden of demonstrating that a use, sale or lease out of the ordinary course of business will assist the debtor's reorganization." Id; see also In re Montgomery Ward Holding Corp., 242 B.R. 147, 155 (D. Del. 1999) (applying the standard in Lionel to an application for approval of an employee retention plan). In evaluating whether a sound business reason exists for the granting of an application under section 363, a bankruptcy judge should consider "all salient factors pertaining to the proceeding." Id; see also In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992) (finding that the bankruptcy court was within its discretion to approve a sale of assets "based on its consideration of all the factors." Id. at 145); see also In re Georgetown Steel Co., LLC, 306 B.R. 549, 555 (Bankr. D.S.C. 2004) (stating that "retention plans are reviewed on a case-by-case basis, depending on each debtor's particular facts and circumstances.").

5

9.      Even by this relatively lenient standard, the AIP should not be approved at this time.  The Debtors have publicly and repeatedly stated that, absent an agreement with their various labor constituencies, they intend to file motions to reject their various collective bargaining agreements and to amend retiree benefits by February 17, 2006 – <u>only one week</u> after the currently scheduled hearing on the AIP.  It is simply not a reasonable business decision to seek up to $38.4 million in potential bonuses for senior executives <u>one week</u> before filing motions for authority to reject collective bargaining agreements and cut retiree benefits.

10.     Aside from the timing of the hearing, implementation of the AIP at this point in these cases would further, and possibly irrevocably, poison the highly complex on-going negotiations with critical labor representatives.  Implementing the proposed AIP over the objections of all other constituencies in these cases, and at this stage of the negotiations with the Debtors' unions, could be taken as an insult to all of those parties upon whom the Debtors are relying for substantial concessions and compromises.[6]  Considering the substantial negative publicity that the mere proposal of these plans have created, <u>see</u>, <u>e.g.</u>, Gretchen Morgenson, *Oohs and Ahs At Delphi's Circus*, **N.Y. Times**, November 13, 2005, at Section 3, page 1, the Debtors cannot reasonably believe that the implementation of such plans (again, only one week before filing a motion to reject their collective bargaining agreements) at this point is reasonable or appropriate.

11.     It is worth noting that, notwithstanding any complaints by the Debtors to the contrary, these bonuses are likely not necessary to retain employees throughout these cases.  The Debtors have been under-performing and, according to the Debtors, have been paying below-market compensation for years, and the employees in question have not left.  The

---

[6]    As emphasized in the numerous objections filed by the Debtors' unions.

6

NY\1102069.6

Debtors' assertion that these employees will leave <u>now</u> – when the Debtors have finally begun the process of reorganizing and restructuring their capital structure – is a very dubious assertion. Considering the turmoil, turnover, and down-sizing in the Debtors' industry, it is difficult to imagine a healthy job market for these executives to turn to for alternative employment. In fact, the attrition rate identified by the Debtors is not unexpected and does not appear to actually be a significant attrition rate – only 25 out of approximately 500 "key" executives in a year.

## **CONCLUSION**

12.    Approval of the AIP at this point in these cases is not the result of sound business judgment, will not facilitate the Debtors' reorganization efforts, and is not in the best interests of the estates.

**WHEREFORE,** the Committee respectfully requests that this Court (a) deny the requested implementation of the AIP, and (b) grant the Committee such other relief as is just and proper.

Dated:  February 6, 2006
        New York, New York

**LATHAM & WATKINS LLP**

By: /s/ Robert J. Rosenberg
    Robert J. Rosenberg (RR-9585)
    Mitchell A. Seider
    Mark A. Broude (MB-1902)
    885 Third Avenue, Suite 1000
    New York, New York 10022
    Telephone:  (212) 906-1200

Attorneys for the Official Committee
of Unsecured Creditors