UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ x
                               :
    In re                      :    Chapter 11
                               :
DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                               :
                     Debtors.    :    (Jointly Administered)
                               :
------------------------------ x

AFFIDAVIT OF GERALD E. HAWXHURST IN SUPPORT OF
APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b) AND FED. R.
BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF
QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
AS SPECIAL LITIGATION COUNSEL TO DEBTORS

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

GERALD E. HAWXHURST, being duly sworn, deposes and states as follows:

1.    I am counsel in the law firm of Quinn Emanuel Urquhart Oliver & Hedges, LLP ("Quinn Emanuel"), proposed special litigation counsel for Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors").

2.    I submit this affidavit (the "Affidavit")[1] in support of the Application For Order Under 11 U.S.C. §§ 327(e) and 1107(b) And Fed. R. Bankr. P. 2014 Authorizing Employment And Retention Of Quinn Emanuel Urquhart Oliver & Hedges, LLP As Special Litigation Counsel To Debtors (the "Application") nunc pro tunc to October 8, 2005, filed concurrently herewith.

---

[1]    Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Application.

3. The address and telephone number of Quinn Emanuel Urquhart Oliver & Hedges, LLP are as follows:

865 South Figueroa Street, 10th Floor

Los Angeles, California  90017-2543

Telephone: (213) 443-3000

Facsimile: (213) 443-3100

4. Quinn Emanuel is well qualified to assist the Debtors in the manner described in the Application.  Most importantly for present purposes, several members of Quinn Emanuel have extensive experience in litigation, including patent, antitrust, and employment litigation, and its interplay with restructuring and bankruptcy law.  Accordingly, the Debtors believe that Quinn Emanuel is well qualified to serve as special litigation counsel in these chapter 11 cases in an efficient and effective manner.

5. Quinn Emanuel is currently advising the Debtors regarding several litigation matters.  Based on the services that Quinn Emanuel has rendered to the Debtors, Quinn Emanuel is thoroughly familiar with the Debtors' corporate structure, the nature of their financial status, and certain legal matters relating to the Debtors.

6. Generally, in connection with the Debtors' cases, Quinn Emanuel intends to provide to the Debtors the following types of professional services:

(a) <u>Whitney v. Delphi Corporation</u>, Case No. BC337315

Plaintiff sued Delphi Corp. and Delphi Product and Service Solutions, Inc. in Los Angeles Superior Court for Age Discrimination, Wrongful Termination in Violation of Public Policy, Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress.  Plaintiff alleges both disparate treatment and disparate impact age discrimination.  Plaintiff alleges he was wrongfully terminated in June 2003 and was told he he was being

terminated because he did not have the "fit and finish" for the new team.  Plaintiff also alleges that Delphi engaged in a pattern and practice of systematically reducing the average age of its workforce by terminating the employment of and/or otherwise pressuring older workers to cease working for Delphi by hiring younger workers.  Delphi denies Plaintiff's allegations and will defend vigorously the claims against it.

(b) <u>Patent Holding Company v. Delphi Automotive Systems Corporation</u>, Civil Action No. 99-76013, E.D. Mich.

Plaintiff sued Delphi, alleging infringement of three patents directed to various aspects of air bag cover design, and is seeking compensatory damage and an injunction.  Plaintiff further alleges willful infringement and seeks treble damages based on their allegations.  Delphi denies plaintiff's infringement allegations and has asserted counterclaims in which it seeks a declaratory judgment that the patents-in-suit are not infringed and are invalid.  Delphi denies Plaintiff's allegations and will defend vigorously the claims against it.

(c) <u>Quinn v. Delphi Automotive Systems Corporation</u>, No. 1 CACV 05-0063.

Quinn Emanuel is currently representing Delphi in the Arizona Court of Appeals in the above-mentioned case.  The seven named plaintiffs seek to bring a class action on behalf of all Arizona residents with Delphi batteries installed in their cars.  They assert products liability, fraud, and unjust enrichment claims based upon an alleged defect in Delphi batteries that causes them to leak acid in warm climates such as Arizona and fail prematurely.  On September 27, 2004, the Superior Court for Maricopa County (Katz, J.) denied the plaintiffs' motion for class certification, granted Delphi's motion for summary judgment, and dismissed the case.  Quinn Emanuel was retained to conduct the appeal.  The briefing on appeal has been

completed, and oral argument was scheduled to take place in November 2005 before the action was stayed in light of Delphi's bankruptcy filing.

       (d)  <u>Crown City Plating Co. v. Delphi Corporation</u>

This matter involves disputes between Delphi Automotive Systems, LLC and Crown City Plating Co., in which Crown City has threatened to sue Delphi Corporation if Delphi Automotive sues Crown City.

Delphi Automotive Systems, LLC ("Delphi") loaned Crown City $1 million, which is evidenced by a promissory note. Crown City defaulted on its note in January 2004. Crown City claims that it made investments in equipment based on assurances of a long-term relationship by Delphi. Crown City also claims it based its pricing on the assumption of a long-term relationship.  Further, it claims that Delphi was late delivering certain visual testing equipment that was needed to produce the parts and that the testing equipment malfunctioned, which Crown City contends increased Crown City's costs of production. Further, Crown City alleged that Delphi and its predecessors breached non-disclosure agreements by giving its proprietary information to Crown City's competitors. Crown City has threatened to sue Delphi Corporation and Does 1 through 50, for $4.5 million for fraud, negligent misrepresentation and breach of the implied covenant of good faith and fair dealing.

The parties have attempted to resolve this dispute.  In that regard, they have entered into a Tolling Agreement, which was extended through December 31, 2005, prior to Delphi's bankruptcy filing.  Delphi denies Plaintiff's allegations and will defend vigorously the claims against it.  The Tolling Agreement may be terminated by either party on thirty days written notice.

(e) <u>Quake Global Inc. v. Orbcomm, LLC, et al.</u>, Case No. CV 051410 (C.D. Cal. Feb. 24, 2005)

Quinn Emanuel is currently representing Delphi in this matter in which Plaintiff alleges that Delphi and other defendants violated federal antitrust laws. Specifically, Plaintiff alleges that Delphi's agreement to manufacture satellite modems for Stellar Satellite Communications, Ltd., constitutes a "de facto exclusive dealing" arrangement in violation of the Sherman Act. Delphi denies the allegations and intends to defend vigorously the claims against it.

7. In light of certain existing client representations on unrelated matters, the engagement of Skadden, Arps, Slate, Meagher, & Flom LLP ("Skadden") as the Debtors' bankruptcy counsel, the engagement of Shearman & Sterling LLP ("Shearman") as the Debtors' special counsel, the engagement of Togut, Segal & Segal LLP ("Togut") as the Debtors' conflicts counsel, and the engagement of other counsel for the Debtors, Quinn Emanuel will not be responsible for or undertake any representation with respect to (a) advising the Debtors concerning specific contracts and claims of certain of Quinn Emanuel's existing clients and (b) reviewing, interpreting, or commenting on the specific contracts and claims of certain of Quinn Emanuel's existing clients. These existing client relationships, and the scope of the carve-out from Quinn Emanuel's retention, are discussed more fully below.

8. It is Quinn Emanuel's understanding that the Debtors may request that Quinn Emanuel undertake specific matters beyond the limited scope of the responsibilities set forth above. Should Quinn Emanuel agree in its discretion to undertake any such matter, it is Quinn Emanuel's understanding that the Debtors will seek further order of this Court.

9. Quinn Emanuel is making efforts, together with the Debtors' other counsel, to ensure that there is no duplication of effort or work between such firms and Quinn Emanuel. It is Quinn Emanuel's intention that the estates should receive the best value possible from the efficient coordination of work among its counsel. Quinn Emanuel believes that its lawyers and the rest of the lawyers retained in these chapter 11 cases have to date delineated clearly, and will continue to delineate clearly, the division of work between them, so as to avoid any duplication of effort and to maximize the efficiencies of the proposed arrangement.

10. With regard to Patent Holding Company v. Delphi Automotive Systems Corporation, Civil Action No. 99-76013, E.D. Mich., Quinn Emanuel was retained on or about December 20, 2001. The following attorneys were approved to work on this matter at the following rates: Steve Hansen = $355; Bruce Chapman = $355; Eric Bjorgum = $275; Tigran Guledjian = $225; and Radhika Tandon = $215.

11. With regard to Whitney v. Delphi Corporation, Quinn Emanuel was retained on or about August 18, 2005. The following attorneys were approved to work on this matter at the following rates: Randa Osman = $510.00; and Allison Burkholder = $300.00.

12. With regard to Quake Global Inc. v. Orbcomm, LLC, et al., Case No. CV 051410 (C.D. Cal. Feb. 24, 2005), Quinn Emanuel was retained on or about April 20, 2005. The following attorneys were approved to work on this matter at the following rates: A. William Urquhart = $600.00; Gerald E. Hawxhurst = $475.00; Kevin Y. Teruya = $355.00; and Heidi Frahm = $290.00.

13. With regard to Crown City Plating Co. v. Delphi Corporation, Quinn Emanuel was retained on or about August 10, 2004. The following attorney was approved to work on this matter at the following rate: Jack Hart = $475.00.

14. With regard to Quinn v. Delphi Automotive Systems Corporation, No. 1 CACV 05-0063, Quinn Emanuel was retained on or about March 14, 2005. The following attorneys were approved to work on this matter at the following rates: Shon Morgan = $525.00; Dan Bromberg = $525.00; Margret Caruso = $515.00; Kent Bullard = $490.00; Shahin Rezvani = $385.00; Tim Pennington = $280.00; Tara Gellman = $280.00; and T.J. Chiang = $280.00.

15. Quinn Emanuel has agreed to accept as compensation for the services rendered in connection with its representation of the Debtors the rates described in Paragraphs 10-14 of this Affidavit.

16. Quinn Emanuel acknowledges that all amounts paid to Quinn Emanuel during these chapter 11 cases are subject to final allowance by this Court. In the event that any fees or expenses paid to Quinn Emanuel during these cases are disallowed by this Court, the fees and expenses will be disgorged by Quinn Emanuel and returned to the Debtors or as otherwise ordered by this Court.

17. Quinn Emanuel categorizes its billings by subject matter, in compliance with the applicable guidelines of the Office of the United States Trustee (the "U.S. Trustee Guidelines"). Quinn Emanuel acknowledges its compensation in the Debtors' cases is subject to approval of this Court in accordance with section 330 of the Bankruptcy Code, Bankruptcy Rule 2016, and the U.S. Trustee Guidelines.

18. Quinn Emanuel has conducted a check for conflicts of interest and other conflicts and connections with respect to the Debtors' bankruptcy cases. Quinn Emanuel maintains a database containing the names of current, former, and potential clients and other principal parties related to such clients. I caused Quinn Emanuel to review and analyze the conflict database to determine whether Quinn Emanuel has any connection with the principal

parties-in-interest in these chapter 11 cases, using information provided to Quinn Emanuel by the Debtors and Skadden, Arps and information contained in the database, including (a) the names of the Debtors' prepetition lenders, (b) the names of significant creditors of the Debtors, and (c) the names of firms that the Debtors intend to or may employ during their chapter 11 cases.

19. Based upon this research, I have determined that Quinn Emanuel has in the past represented, currently represents, and will likely in the future represent certain of the Debtors' creditors and other parties-in-interest in matters unrelated to the Debtors or these chapter 11 cases. I do not believe that the foregoing raises any actual or potential conflicts of interest of Quinn Emanuel relating to the representation of the Debtors in these chapter 11 cases, but such relationships are disclosed out of an abundance of caution.

20. It is my intention that if Quinn Emanuel becomes aware of any other connections of which it presently is unaware, Quinn Emanuel will bring them to the attention of this Court and the U.S. Trustee.

Dated:   Los Angeles, CA
           February 6, 2006

                                            By:  /s/ Gerald E. Hawxhurst
                                                   Gerald E. Hawxhurst

Sworn to before me
this 6th day of February, 2006

 /s Lorraine Rivera
Notary Public