## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION et al., | ) | NO. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Honorable Robert D. Drain |
| | ) | |
| | ) | Hearing Date:  March 9, 2006 |
| | ) | Objection Deadline:  March 2, 2006 4:00 p.m. |
| | ) | |

### NOTICE OF MOTION FOR CERTIFICATION UNDER
### FED. R. BANKR. P. 7023 AND TO APPOINT COUNSEL

PLEASE TAKE NOTICE that on February 7, 2006, the Claimants Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler ("Claimants"), by and through undersigned counsel, filed a Motion for Certification Under Fed. R. Bankr. P. 7023 And To Appoint Counsel and Memorandum in Support (the "Motion).  Claimants, by and through undersigned counsel, respectfully moved the Court to:  (i) apply Bankruptcy Rule 7023 in this matter, pursuant to Bankruptcy Rule 9014, and certify Claimants' proposed class, as described in the ERISA Class Proof of Claim, under Fed. R. Civ. P. 23(b)(1) and (b)(3), and (ii) appoint Lynn Lincoln Sarko and Gary Gotto, both of Keller Rohrback, as class counsel.  A Memorandum in support of this Motion is filed concurrently herewith.

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Motion will be held on March 9, 2006 at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing") before the Honorable Robert D. Drain, U.S.B.J. for the United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that responses or objections to the Motion, if any, must be in writing, shall conform to the Federal Rules of Bankruptcy and shall be filed with this Court electronically in accordance with General Order M-242, by registered users of the filing system and by all other parties in interest, on a 3.5 inch disk, Document Format ("PDG"), Word Perfect or any other Windows-based system (along with a hard copy delivered directly to Chambers), and shall be served in accordance with General Order M-242 and with the October 14, 2005 Case Management Order entered in this case.

PLEASE TAKE FURTHER NOTICE that only those objections made in writing and timely filed and received by the Objection Deadline will be considered by the Bankruptcy Court at the Hearing. If no objections to the Motion are timely filed and served in accordance with the procedures set for herein, the Bankruptcy Court may enter a final order granting the Motion **without further notice**.

DATED this __7th__ day of February, 2006.

Respectfully submitted,

**KELLER ROHRBACK, LLP**

By ___/s/  Gary A. Gotto_____
Lynn Lincoln Sarko
Erin M. Riley
Cari Campen Laufenberg
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
(206) 623-1200 (Telephone)
(206) 623-3384 (Facsimile)

and

**KELLER ROHRBACK P.L.C.**
Gary A. Gotto
National Bank Plaza
3101 North Central Avenue, Suite 900
Phoenix, AZ  85012
(602) 248-0088 (Telephone)
(602) 248-2822 (Facsimilie)

*Counsel for Claimant Bartell*

Richard A. Lockridge
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401
(612) 339-6900

*Counsel for Claimant Kessler*

Jane B. Stranch
**BRANSTETTER, KILGORE, STRANCH
& JENNINGS**
227 Second Avenue North, Fourth Floor
Nashville, TN  37201-1631
(615) 254-8801

*Counsel for Claimants Folck, McEvoy and Polito*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION et al., | ) | NO. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Honorable Robert D. Drain |
| | ) | |
| | ) | Hearing Date: March 9, 2006 |
| | ) | Objection Deadline: March 2, 2006 4:00 p.m. |
| | ) | |

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

## MOTION FOR CERTIFICATION UNDER FED. R. BANKR. P. 7023 AND TO APPOINT COUNSEL

### Background

1.  On October 8, 2005 (the "Commencement Date"), each of the Debtors commenced a case under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.  On February 6, 2006, Claimants Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito and Thomas Kessler (hereinafter the "Claimants") filed a proof of claim on behalf of themselves and a class of similarly situated individuals, relating to their claims against the Debtor for losses in the Debtor's 401(k) plans and other matters (the "ERISA Class Proof of Claim"). A copy of the ERISA Class Proof of Claim is attached hereto as Exhibit 1.

## JURISDICTION

3.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157

and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is

proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## THE RELIEF REQUESTED

4.    Claimants, by and through undersigned counsel, respectfully move this Court to:

(i) apply Bankruptcy Rule 7023 in this matter, pursuant to Bankruptcy Rule 9014,

and certify Claimants' proposed class, as described in the ERISA Class Proof of

Claim, under Fed.R.Civ.P. 23(b)(1) and (b)(3), and (ii) appoint Lynn Lincoln

Sarko and Gary Gotto, both of Keller Rohrback, as class counsel.    A

Memorandum in support of this Motion is filed concurrently herewith.

5.    Notice of this Motion and the accompanying Memorandum has been provided to

the Debtor, the Official Committee of Unsecured Creditors, and the Office of the

United States Trustee for the Southern District of New York.  Claimants submit

that no other notice need be provided.

6.    No previous motion for the relief sought herein has been made to this or any other

court.

WHEREFORE Claimants respectfully request that the Court certify the class of claims at

issue and appoint counsel as provided for herein and in the accompanying Memorandum.

2

DATED this __7th__ day of February, 2006.


Respectfully submitted,

**KELLER ROHRBACK, LLP**


By ____/s/ Gary A. Gotto_____
Lynn Lincoln Sarko
Erin M. Riley
Cari Campen Laufenberg
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052

and

**KELLER ROHRBACK P.L.C.**
Gary A. Gotto
National Bank Plaza
3101 North Central Avenue, Suite 900
Phoenix, AZ 85012
(602) 248-0088 (Telephone)
(602) 248-2822 (Facsimile)

*Counsel for Claimant Bartell*

Richard A. Lockridge
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN 55401
(612) 339-6900

*Counsel for Claimant Kessler*

Jane B. Stranch
**BRANSTETTER, KILGORE, STRANCH
& JENNINGS**
227 Second Avenue North, Fourth Floor
Nashville, TN 37201-1631
(615) 254-8801

*Counsel for Claimants Folck, McEvoy and Kessler*

3

# Exhibit 1

FORM B10 (Official Form 10) (04/05)

| UNITED STATES BANKRUPTCY COURT Southern | DISTRICT OF New York | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor<br>see addendum | Case Number<br>05-44481 (RDD) | |
|---|---|---|

NOTE: This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A "request" for payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| | |
|---|---|
| Name of Creditor (The person or other entity to whom the debtor owes money or property):<br><br>see addendum | ☐ Check box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars. |
| Name and address where notices should be sent:<br><br>see addendum | ☐ Check box if you have never received any notices from the bankruptcy court in this case. |
| Telephone number:  see addendum | ☐ Check box if the address differs from the address on the envelope sent to you by the court. |

THIS SPACE IS FOR COURT USE ONLY

| Account or other number by which creditor identifies debtor: | Check here ☐ replaces   a previously filed claim, dated:_____<br>if this claim ☐ amends |
|---|---|

**1. Basis for Claim**
- ☐ Goods sold
- ☐ Services performed
- ☐ Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☑ Other  see Exhibit A

- ☐ Retiree benefits as defined in 11 U.S.C. § 1114(a)
- ☐ Wages, salaries, and compensation (fill out below)
  Last four digits of SS #:_____
  Unpaid compensation for services performed
  from _____ to _____
  (date)              (date)

**2. Date debt was incurred:**
see addendum

**3. If court judgment, date obtained:**

**4. Total Amount of Claim at Time Case Filed:**  $ see addendum
_____ (unsecured)    _____ (secured)    _____ (priority)    _____ (Total)

If all or part of your claim is secured or entitled to priority, also complete Item 5 or 7 below.
☐ Check this box if claim includes interest or other charges in addition to the principal amount of the claim. Attach itemized statement of all interest or additional charges.

**5. Secured Claim.**
☐ Check this box if your claim is secured by collateral (including a right of setoff).

Brief Description of Collateral:
- ☐ Real Estate   ☐ Motor Vehicle
- ☐ Other_____

Value of Collateral:  $_____

Amount of arrearage and other charges at time case filed included in secured claim, if any:  $_____

**6. Unsecured Nonpriority Claim** $_____
☐ Check this box if: a) there is no collateral or lien securing your claim, or b) your claim exceeds the value of the property securing it, or if c) none or only part of your claim is entitled to priority.

**7. Unsecured Priority Claim.**
☐ Check this box if you have an unsecured priority claim
Amount entitled to priority  $_____
Specify the priority of the claim:
- ☐ Wages, salaries, or commissions (up to $10,000),* earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. § 507(a)(3).
- ☐ Contributions to an employee benefit plan - 11 U.S.C. § 507(a)(4).
- ☐ Up to $2,225* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. § 507(a)(6).
- ☐ Alimony, maintenance, or support owed to a spouse, former spouse, or child - 11 U.S.C. § 507(a)(7).
- ☐ Taxes or penalties owed to governmental units-11 U.S.C. § 507(a)(8).
- ☐ Other - Specify applicable paragraph of 11 U.S.C. § 507(a)(___).
*Amounts are subject to adjustment on 4/1/07 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment. $10,000 and 180-day limits apply to cases filed on or after 4/20/05. Pub. L. 109-8.

**8. Credits:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.

**9. Supporting Documents:** *Attach copies of supporting documents,* such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, mortgages, security agreements, and evidence of perfection of lien. DO NOT SEND ORIGINAL DOCUMENTS. If the documents are voluminous, attach a summary.

**10. Date-Stamped Copy:** To receive an acknowledgment of the filing of your claim, enclose a stamped, self-addressed envelope and copy of this proof of claim

THIS SPACE IS FOR COURT USE ONLY

| Date<br>2/3/2006 | Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any):<br><br>_____, LYNN SARKO |
|---|---|

*Penalty for presenting fraudulent claim:* Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

## ADDENDUM TO PROOF OF CLAIM

1.    **Claimants.**  This Proof of Claim is filed by Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito and Thomas Kessler, on behalf of themselves and, pursuant to Fed. R. Bankr. Pro. 7023, a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States (the "Salaried Plan") and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States (the "Hourly Plan").  Claimants were appointed Interim Lead Plaintiffs in *In re Delphi ERISA Litigation*, a proposed class action against Delphi Corp. and others, pending in the United States District Court for the Eastern District of Michigan, 05-CV-70882, and consolidated cases.  The class of persons on whose behalf this Proof of Claim is filed is described in the ERISA Class Proof of Claim.

2.    **Address.**  Claimants' address is c/o Lynn Lincoln Sarko, Esq, 1201 Third Avenue, Suite 3200, Seattle, WA  98101, or c/o Gary A. Gotto, National Bank Plaza, 3101 North Central Avenue, Suite 900, Phoenix, AZ  85012.

3.    **Telephone.**  Claimants' telephone numbers are c/o Lynn Lincoln Sarko, Esq, 206-623-1900, or c/o Gary A. Gotto, 608-248-0088.

4.    **Debtor(s).**  This Proof of Claim is filed with respect to all Debtors who are ultimately determined to have any liability with respect to the claims asserted in the Complaint or in any amendment to the Complaint.

5.    **Basis of Claim.**  The basis of the claim is set forth in the ERISA Class Proof of Claim.  The Consolidated Complaint to be filed in the *Delphi ERISA Litigation*, and any amendment thereto, shall be deemed automatically to amend this Proof of Claim.

6.    **Date Debt was Incurred.**  See the ERISA Class Proof of Claim.

7.    **Amount of the Claim.**  The amount of the claim is unliquidated at this time.

8.    **Supporting Documents.**  The supporting documents include all plan documents and summary plan descriptions pertaining to the subject plans, as well as all benefits statements and similar materials pertaining to the interests of participants in and beneficiaries of the subject plans.  Such documents are voluminous and are not attached hereto.  It is believed copies of all such documents are in the possession of the Debtor.

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION et al., | ) | NO. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

## EXHIBIT A TO ERISA CLASS PROOF OF CLAIM
## AGAINST DEBTOR DELPHI CORP.
### I. NATURE OF THE CLAIM

1.    This ERISA Class Proof of Claim is submitted by Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler (the "Claimants") on behalf of themselves and a class of persons similarly situated. This ERISA Class Proof of Claim is submitted against debtor Delphi Corporation (hereinafter "Delphi," the "Company" or "Debtor").

2.    This is a claim brought pursuant to Section 502 of the Employee Retirement Income Security Act ("ERISA") (29 U.S.C. § 1132).

3.    The claim concerns the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States (the "Salaried Plan") and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States (the "Hourly Plan"), collectively (the "Plans"), 401(k) Retirement Plans operated and administered by Delphi as a benefit to Delphi's employees to permit tax-advantaged savings for retirement and other long-term goals.

4.    Claimants are current and former employees of Delphi, and are past and current participants in the Plans. They claim that the Debtor is a fiduciary of the Plans, and that the Debtor breached its fiduciary duty to Claimants, the Plans and the other participants and beneficiaries of the Plans in violation of ERISA § 409 (29 U.S.C. § 1109) in a variety of ways,

Page - 1

especially in connection with the Plans' holdings of company stock. Claimants also assert that the Debtor is required, under ERISA, to make good to the Plans the losses they have suffered as a result of Debtor's fiduciary breaches. These losses have yet to be calculated, but they will run to hundreds of millions of dollars.

5.      Because their claims apply to the participants and beneficiaries as a whole, and because ERISA authorizes participants such as Claimants to sue for plan-wide relief for breaches of fiduciary duty, they seek to bring this action on behalf of themselves and the class of all the participants and beneficiaries of the Plans during the relevant period.

## II. THE PLANS

6.      The Salaried and Hourly Plans, are "employee pension benefit plan[s]" within the meaning of ERISA  § 3(2) (A) (29 U.S.C. § 1002(2)(A)). Further, they are "eligible individual account plan[s]" within the meaning of ERISA § 407(d)(3) (29 U.S.C. § 1107(d)(3)) and are also "qualified cash or deferred arrangements[s]" within the meaning of I.R.C. § 401(k) (26 U.S.C. § 401(k)). The Plans are not parties to this action. Pursuant to ERISA, however, the claims are asserted for the benefit of the Plans.

7.      The participants of the Plans were permitted to contribute certain percentages of their eligible base pay to the Plans.

8.      The majority of these investment options were mutual funds.  However, the options also included Delphi stock.

9.      The Debtor was obligated under the Plans to match the participants' contributions at certain specified percentages, and made such matching contributions to the Plans.  During the Class Period, the match in the Salaried and Hourly Plans was in Delphi Stock.

10.     Claimants Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito and Thomas

Page - 2

Kessler were all "participants" in the Plans pursuant to ERISA §3(7) (29 U.S.C. § 1002(7)).

11.    Through investment in Delphi stock, the Plans have suffered losses.

### III. APPROPRIATENESS OF CLASS ACTION

12.    Claimants bring this claim pursuant to Rule 23 of the Federal Rules of Civil Procedure (applicable pursuant to Rule 7023 of the Bankr. R. Civ. Pro.) on behalf of themselves and a class (the "Class") of all persons similarly situated. The Class consists of all Plan participants and their beneficiaries, excluding the Defendants and their immediate family members, for whose accounts the Plans' fiduciaries made or maintained investments in Delphi common stock for the Plans at any time between May 28, 1999, through November 3, 2005, (the "Class Period").

13.    The Claimants meet the following prerequisites to bring this action on behalf of the Class:

- **Numerosity.** The Class consists of thousands of individuals and is so numerous that joinder of all members as individual Claimants is impracticable.

- **Commonality.** There are questions of law and fact common to the Class.

- **Typicality.** Claimants' claims are typical of the claims of the Class.

- **Adequacy.** Claimants will fairly and adequately protect the interests of the Class. They have no interests that are antagonistic to or in conflict with the interest of the Class as a whole, and they have engaged competent counsel, highly experienced in ERISA class actions concerning employer securities in 401(k) plans, as well as in other class and complex litigation, to ensure protection of the interests of the Class as a whole.

14.    As an ERISA breach of fiduciary duty action for plan-wide relief, this is a classic

Page - 3

Rule 23(b)(1)(B) class action claim. The prosecution of separate claims by the members of the Class would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests. However, this claim is also maintainable as a class action under subsection (b) of Rule 23:

- Rule 23(b)(1)(A). The prosecution of separate actions by the members of the Class would create a risk of inconsistent or varying adjudications with respect to the individual members of the Class, which would establish incompatible standards of conduct for Debtor.

- Rule 23(b)(3). Questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, and the class action is superior to other available methods for the fair and efficient adjudication of the controversy.

### IV. DEBTOR'S FIDUCIARY STATUS

15.    During the Class Period, the Debtor had discretionary authority respecting management of the Plans and/or the management or disposition of the Plans' assets and had discretionary authority or responsibility for appointment of named fiduciaries of the Plans.

16.    During the Class Period, the Debtor acted as a fiduciary of the Plans pursuant to ERISA § 3(21)(A) (29 U.S.C. §1002 (21)(A)) and the law interpreting that section.

17.    ERISA requires every plan to provide for one or more named fiduciaries, who will have "authority to control and manage the operation and administration of the plan." ERISA §402(a)(1) (29 U.S.C. § 1102 (a)(1)). Instead of delegating fiduciary responsibility for the Plans to external service providers, Delphi chose to comply with the requirement of section 402 (a)(1)

Page - 4

by internalizing the fiduciary function in various ways.

18.    ERISA also treats as fiduciaries not only persons explicitly named as fiduciaries under ERISA 402(a)(1), but also any other persons who in fact act as fiduciaries, perform fiduciary functions, or hold fiduciary authority.  ERISA makes a person (including a juridical person such as Debtor) a fiduciary

> to the extent…he exercises any discretionary authority or
> discretionary control respecting management of such Plan or
> exercises any authority or control respecting management or
> disposition of its assets…or…has any discretionary authority or
> discretionary responsibility in the administration of such Plan.

ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A).

19.    The Debtor is a fiduciary within the meaning of ERISA § 3(21)(A)(i), 29 U.S.C. § 1002(21)(A)(i), in that in its capacity as Administrator of the Salaried and the Hourly Plans, Debtor possessed and exercised discretionary authority and control with respect to the management and administration of the Plans.  Among other things, as Administrator of the Salaried Plan and the Hourly Plan, Debtor, acting through its officers, directors and employees, possessed and exercised the fiduciary responsibility for communicating to other fiduciaries of the Plans, including the Executive Committee of Delphi's Board of Directors, General Motors Investment Management Corporation ("GMIMCo") and the trustees of the Plans, information which such fiduciaries reasonably needed to know to fulfill their fiduciary duties to participants and beneficiaries, including their duties to disclose and to inform the participants and beneficiaries of the Plans of all information material to the suitability of investments under the Plans.

20.    Debtor, as Administrator of the Salaried and Hourly Plans, and acting through its officers, directors and employees also possessed and exercised fiduciary responsibility for

Page - 5

communicating to participants and beneficiaries of the Plans complete and accurate information material to their circumstances, including information sufficient to apprise the participants of the risks associated with investing in any investment options offered by the Plans, including the Delphi Common Stock Fund.

21.    Debtor is also a *de facto* fiduciary of the Plans to the extent that the Debtor suspended investments in the Delphi Common Stock Fund thereby exercising authority to do so and exercising authority and control respecting the management or disposition of assets of the Plans within the meaning of ERISA §3(21)(A)(i), 29 U.S.C. § 1002 (21)(A)(i).

## V. SUBSTANTIVE ALLEGATIONS

22.    Throughout the Class Period, Delphi common stock was an imprudent investment due to the stock's artificial inflation resulting from Debtor's promulgation of misleading financial statements that included sham sales of assets as well as other accounting irregularities.

### A.    Background

23.    Debtor was incorporated in late 1998 as a subsidiary of General Motors Corporation ("GM"). During 1998, GM announced its intention to create and divest itself of a separate company consisting of the GM businesses and operations that now comprise Debtor and the associated assets and liabilities of such businesses and operations. As part of that divestiture GM made an initial offering to the public in February 1999 of approximately 20% of the common stock of the newly created company. In about May, 1999, GM completed the separation from Debtor through the approval of a spin-off to holders of GM common stock of the remaining 80% of the Delphi common stock still held by GM (the "Spin-Off").

### B. Debtor's Accounting Irregularities

24.    In connection with the Spin-Off, Debtor agreed to make $237 million in payments

Page - 6

to GM in 2000 to settle warranty claims arising out of a dispute with GM over which company was responsible for warranty or recall costs for Delphi-produced parts. Debtor should have accounted for these payments at the time as warranty claims which would have been expensed or charged against the warranty accrual. Instead Debtor reflected these payments as an adjustment to post retirement obligations and improperly amortized the payments over future periods. As a result of these accounting maneuvers Debtor inflated its earnings and caused Delphi common stock to be artificially inflated in value and an imprudent Plan investment during the Class Period.

25. Beginning in 2000, Debtor also improperly accounted for rebate transactions between Debtor and information technology service providers by failing to recognize certain liabilities associated with the rebate transactions and not appropriately deferring over time the recognition of the payments and credits that were received in conjunction with these agreements for future information technology services until the services were performed. The impact of these actions which affected rebated transactions occurring between 1999 and 2004 was to decrease expenses and increase the Company's earnings in those years thereby artificially inflating the value of Delphi common stock during the Class Period.

26. In 2002 and 2003, the Debtor also improperly deferred recognition of approximately $40 million in expenses for payments made for system implementation services. Approximately $23 million of this amount should have been recorded as an expense when services were rendered, rather than deferred and then expensed in later periods. By failing to properly recognize expenses Debtor overstated its income in 2002 and 2003.

27. In 1999, Debtor improperly recorded $135 million in asset dispositions and recorded pre-tax income of approximately $76 million in 1999 and 2000 from the transactions.

Because Debtor had an obligation to repurchase such materials, under GAAP the transactions should not have been accounted for as asset dispositions and Debtor should not have recognized operating income of $76 million from the dispositions.

28.    In 2000 and 2001, the Debtor entered into a series of $200 million in wash transactions with third parties for the disposal of inventory, precious metals and other assets which it improperly recorded as sales. In each transaction the Debtor booked an account for the purchase price, and then allowed the third party to settle the account receivable using cash received through financing arranged by the Debtor. The impact of these transactions was to improperly increase cash flow from Delphi's operation by approximately $200 million.

## C. Debtor Misrepresented the True Financial Condition to Investors and Plan Participants

29.    As a result of these and other accounting irregularities engaged in by the Debtor during the Class Period, Debtor's financial statements were materially false and misleading and did not fairly present in all material respects the financial condition, results of operation, and cash flows of Debtor during the Class Period. Debtor included these misleading results in press releases as well as in SEC filings, including Forms 10-Q for quarterly results and Forms 10-K for annual results (the "SEC Filings").

30.    As the Plan Administrator for the Salaried and Hourly Plans, Debtor periodically disseminated information to the participants of the Plans including Summary Plan Descriptions ("SPD") for the Plans. On information and belief, the SPDs and other information disseminated by the Debtor to the participants of the Plans incorporated by reference the SEC Filings, which contained misleading information regarding the financial condition of the Debtor and its results of operations.

Page - 8

**D.  The Truth Begins to Emerge**

31.    On December 8, 2004, the Debtor's Audit Committee of the Board of Directors announced in its 8-K filing with the SEC that it was directing an independent review of certain accounting practices engaged in by Debtor during 2000 through 2003.  The Audit Committee also announced that it had engaged outside counsel to advise it regarding the review and a related investigation by the SEC into possible accounting irregularities within Debtor's operations. Current Report (Form 8-K) (December 8, 2004).

32.    While the Audit Committee stated that their review was not complete and their conclusions might change upon completion of their work, the Committee preliminarily concluded, among other things, that improper accounting for certain rebate transactions between Debtor and information technology service providers had resulted in an understatement of Debtor's expenses during 2000 through 2003.  *Id.*  On December 7, 2004, the day of the Audit Committee 8-K SEC filing, Delphi common stock closed at $8.78 per share.

**E.  Delphi Issues a Restatement and then Shortly Thereafter Files for Bankruptcy**

33.    On March 4, 2005, Delphi announced information related to the Audit Committee's review.  The 8-K SEC filing in part stated as follows:

> . . . the findings made to date by the Audit Committee of the Board of Directors of Delphi Corporation (the "Company"), as a result of its ongoing internal investigation, indicate that certain prior transactions involving the receipt of rebates, credits or other lump-sum payments from suppliers ("Rebate Transactions") and off-balance sheet financing of certain indirect materials and inventory were accounted for improperly. Based upon information to date, *the Company believes that the improper accounting for off-balance sheet financing transactions in 2000 resulted in the Company overstating cash flow from operations, determined in accordance with generally accepted accounting principles (GAAP), for that year by approximately $200 million and that the improper accounting for Rebate Transactions in 2001 resulted in the Company overstating pre-tax income under GAAP for that year by approximately*

*$61 million.* In addition the Company is still evaluating the impact of adjustments to the Company's financial statements for other periods that will be required to be reflected as the Company unwinds the improper accounting of the transactions identified below.

Although the Company is still evaluating additional transactions, the magnitude of the errors and the preliminary conclusions reached to date with respect to the transactions under review led the Audit Committee to conclude that *the audited financial statements and related independent auditors' reports for 2001 and subsequent periods as a result of the unwinding of the improperly recorded transactions, should no longer be relied upon and a restatement will be required.* As emphasized below, the internal investigation is not complete and although the findings described below have been preliminary discussed with the Company's auditors, Deloitte & Touche LLP, the findings have not been the subject of a review or audit by Deloitte & Touche LLP. Moreover, additional transactions are under examination, and it is possible that the review will determine that they were not properly recorded and that previously issued financial statements for other periods may require additional corrections. (Emphasis added)

Current Report (Form 8-K) (March 4, 2005).

34.    The March 4, 2005, SEC filing further stated that the Audit Committee accepted the resignation, effective March 4, 2005, of the Company's Vice Chairman and Chief Financial Officer, Alan S. Dawes. Following the announcement of Delphi's intention to restate it audited financial statements for 2001 and subsequent periods because of improper accounting, and the resignation of Defendant Dawes, the price of Delphi stock closed on March 4, 2005 at $5.46 per share. *Id.*

35.    On March 11, 2005, Delphi suspended purchases of its shares by participants of the Plans until such time as all of the restatements are filed with the SEC. Current Report (Form 8-K) (March 11, 2005).

36.    On March 22, 2005, Delphi announced that the Audit Committee's internal accounting investigation was substantially complete. Delphi confirmed that the conclusions expressed by the Committee in the March 4, 2005, SEC filing and stated the Company expects to

Page - 10

complete the restatement and also provide audited financial statements for 2004 on or before

June 30, 2005. Current Report (Form 8-K), at Exhibit 99(a) (March 11, 2005) (News Release

dated March 11, 2005).

37.     On June 30, 2005, Delphi restated its reported financial results for Fiscal Years

2002 and 2003, and selected financial data for Fiscal Years 2000 and 2001 (including retained

earnings at December 31, 2001), in its Form 10-K for year ended December 31, 2004. Current

Report (Form 8-K), at Exhibit 99(a) (June 30, 2005) (Press Release dated June 30, 2005).

38.     On July 1, 2005, Robert S. Miller took over as Delphi's Chairman and Chief

Executive Officer.

39.     On August 5, 2005, all three major ratings agencies slashed Delphi's credit ratings

to highly speculative levels, citing an increased likelihood of a bankruptcy filing. Stephen Taub,

*Chapter 11 Threatens Delphi*, CFO.com, August 5, 2005.

40.     On August 8, 2005, the Debtor reported a $338 million second-quarter net loss

and warned that it needed to reach a cost-cutting agreement with GM and its unionized workers

or it would consider filing for bankruptcy protection. Current Report (Form 8-K), at Exhibit

99(a) (August 8, 2005) (Press Release dated August 8, 2005).

41.     On October 8, 2005, the Debtor filed for bankruptcy protection, the largest-ever in

the U.S. auto industry. Current Report (Form 8-K), at Exhibit 99(d) (October 14, 2005) (News

Release dated October 8, 2005).

**F. The Debtor Knew or Should Have Known that Delphi Common Stock Was Not a
Suitable Investment for the Plans**

42.     Throughout the Class Period the Debtor knew or should have known that because

of the accounting irregularities engaged in by Debtor and Debtor's senior management, Delphi's

financial statements were materially false and misleading and did not fairly present in all

Page - 11

material respects the financial condition, results of operation, and cash flows of Delphi during the Class Period. Debtor further knew or should have known that as a result of these accounting irregularities Delphi common stock was inflated in price and not a suitable investment for the Plans.

43.    As a fiduciary responsible for the Administration of the Salaried and Hourly Plans, the Debtor had an obligation to communicate the information known to the Debtor regarding the true financial condition of Delphi to other Plan fiduciaries including the Executive Committee and its members, the Trustees of the Plans, GMIMCo, and any other Plan fiduciaries who were responsible for reviewing the investment options offered by the Plans, including the Delphi Common Stock Fund, for the investment of the Plans' assets. The disclosure of such information to other fiduciaries of the Plans was necessary in order to apprise such fiduciaries of the risks associated with investing in Delphi common stock so that such fiduciaries, to the extent they had a fiduciary obligations to do so, could make an informed decision as to the suitability of Delphi common stock as an investment option for the Plans.

44.    Despite these obligations, Debtor failed to communicate to other fiduciaries of the Plans complete and accurate information regarding the financial condition of the Company and the fiduciaries of the Plans continued to offer the Delphi Common Stock Fund as an investment option throughout the Class Period even though Delphi stock was artificially inflated in price and no longer a suitable investment for the Plans.

45.    As the fiduciaries responsible for the Administration of the Salaried and Hourly Plans, Defendants had a further obligation to the participants and beneficiaries of the Plans to communicate complete and accurate information to the participants of the Plans regarding the true financial condition of Delphi. The disclosure of such information was necessary in order to

Page - 12

apprise the participants of the risks associated with investing in Delphi common stock so that participants could make an informed decision as to whether to invest assets held in their Plan accounts in the Delphi Common Stock Fund.

46.    Despite these obligations Defendants failed to communicate to participants of the Plans complete and accurate information regarding the financial condition of the Company.

47.    As the Administrator of the Salaried and Hourly Plans, Delphi had an obligation to furnish an SPD to participants of each of the Plans which did not contain any untruthful representations with respect to employer stock as a Plan investment.

48.    Despite this obligation, on information and belief, Debtor disseminated SPDs to the participants of the Plans which incorporated and adopted by reference the information contained within the SEC Filings made by the Company which were materially false and misleading and did not fairly present in all material respects the financial condition, results of operation, and cash flows of Delphi during the Class Period.

49.    As a result of the Debtor's failure to communicate complete and accurate information, the Plans' fiduciaries, who were responsible for reviewing the suitability of the investment options offered by the Plans, were unable to make informed decisions regarding whether Delphi common stock was a suitable investment for the Plans and their participants. As a consequence, during the Class Period the Plans continued to offer the Delphi Common Stock Fund as an investment option and the Plans continued to acquire and retain Delphi common stock despite the fact that the stock was artificially inflated in price and no longer a suitable investment for the Plans and their participants.

## VI. BREACHES OF FIDUCIARY DUTY

### COUNT I:
### BREACH OF DUTY TO DISCLOSE AND INFORM OTHER FIDUCIARIES OF THE PLANS INCIDENTAL TO THE DEBTOR'S FIDUCIARY OBLIGATIONS AS ADMINISTRATOR OF THE PLANS

50.     Claimants reallege and incorporate by reference herein the foregoing paragraphs.

51.     ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes on a plan fiduciary a duty of loyalty – that is, a duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and its beneficiaries.

52.     ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), imposes on a plan fiduciary a duty of prudence – that is, a duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

53.     Debtor when acting in the capacity as Administrator to the Salaried and Hourly Plans and providing for the day-to-day operations and administration of the Plans had a duty pursuant to the aforementioned sections of ERISA to disclose to and inform the other fiduciaries of the Plans, including the Delphi Board's Executive Committee and its members, the Trustees of the Plans, GMIMCo, and any other fiduciaries to the Plans, of information which such fiduciaries reasonably needed to know to fulfill their fiduciary duties to the participants and beneficiaries, including their duties to determine the suitability of the investment funds offered by the Plans, and their duty to disclose and to inform the participants and beneficiaries of the Plans of all information material to the suitability of investments under the Plans.

54.     Debtor breached its duty to inform and disclose by failing to provide to the other fiduciaries of the Plans complete and accurate information regarding the true financial condition

Page - 14

of the company and the risks of investing Delphi stock, when Debtor knew or should have known the Company was engaging in accounting irregularities which artificially inflated the value of Delphi stock and rendered the stock an unsuitable retirement investment for the Plans.

## COUNT II:
### BREACH OF DUTY TO DISCLOSE AND INFORM PARTICIPANTS OF THE PLANS INCIDENTAL TO THE DEBTOR'S FIDUCIARY OBLIGATIONS AS ADMINISTRATOR OF THE PLANS

55.    Claimants reallege and incorporate by reference herein the foregoing paragraphs.

56.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes on a plan fiduciary a duty of loyalty – that is, a duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and its beneficiaries.

57.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), imposes on a plan fiduciary a duty of prudence – that is, a duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

58.    A plan fiduciary's duties of loyalty and prudence include a duty to disclose and inform complete and accurate information to participants and beneficiaries. This duty entails: (1) an affirmative duty to inform when the fiduciary knows or should know that silence might be harmful; and (2) a duty to convey complete and accurate information material to the circumstances of participants and beneficiaries. This duty to disclose and inform recognizes the disparity that may exist, and in this case did exist, between the training and knowledge of the Debtor and other fiduciaries of the Plans, on the one hand, and the participants and the beneficiaries, on the other. In a plan with various funds available for investment, this duty to inform and disclose includes: (1) the duty to impart to plan participants material information of

Page - 15

which the fiduciary has or should have knowledge in the exercise of statutorily required care, skill, prudence and diligence that is sufficient to apprise the average plan participant of the risks associated with investing in any particular fund; and (2) the duty to correct material representations made to the market about a plan investment about which the fiduciary knows or should know, in the exercise of statutorily required care, skill, prudence and diligence.

59.    The duties to disclose and inform owed by the Debtor arose out of the duties which the Debtor assumed and exercised as Administrator with respect to the day-to-day operations and administrations of the Salaried and Hourly Plans.

60.    The Debtor breached its fiduciary obligations to disclose and inform participants of the Plans with respect to employer stock as an investment for the Plans by failing to provide complete and accurate information to the Plans' participants and beneficiaries regarding the risks of investing in company stock in the Plans, when the Debtor knew or should have known the Company was engaging in accounting irregularities which artificially inflated the value of Delphi stock and rendered the stock an unsuitable retirement investment for the participants and beneficiaries of the Plans.

**COUNT III:**
**BREACH OF DUTY NOT TO MAKE AFFIRMATIVE MATERIAL**
**MISREPRESENTATIONS TO THE PARTICIPANTS OF THE PLANS**

61.    Claimants reallege and incorporate by reference herein the foregoing paragraphs.

62.    ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A), imposes on a plan fiduciary a duty of loyalty – that is, a duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and for the exclusive purpose of providing benefits to participants and its beneficiaries.

63.    ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B), imposes on a plan fiduciary a duty of prudence – that is, a duty to discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man, acting in a like capacity and familiar

Page - 16

with such matters would use in the conduct of an enterprise of a like character and with like aims.

64.    A plan fiduciary's duties of loyalty and prudence include a duty not to make "affirmative, material, untruthful" representations to a plan participant or beneficiary. This duty not to misinform recognizes that making such misrepresentations are inconsistent with the duty of loyalty owed by all fiduciaries and codified in section 404(a)(1), and a fiduciary must exercise the appropriate degree of care, skill, prudence and diligence to avoid such misrepresentations.

65.    The duties only to make truthful representations to the participants and beneficiaries of the Plans about the suitability of the investment in Company stock arose out of the Debtor's duties as Administrator and their obligation to provide for the day-to-day operations and administration of the Salaried and Hourly Plans. Among other things, their responsibilities as Administrator of the Plans, included a duty pursuant to ERISA §§ 101(a), 102(a)(1), and 104(b)(1), 29 U.S.C. §§ 1021(a), 1022(a), and 1024(a), to furnish an SPD including the information required by those Sections of ERISA to the participants and beneficiaries in the Delphi Plans. Accordingly, when the Debtor disseminated an SPD and the information contained therein, the Debtor acted in and made representations in their capacity as the Administrator of the Plans, and acted as a fiduciary in exercising discretionary authority or discretionary control respecting the management of the Plans, and/or discretionary authority or discretionary responsibility in the administration of the Plans.

66.    Rather than providing truthful information to the Plans' participants and beneficiaries regarding the risks of investing in company stock in the Plans, Debtor, in breach of its fiduciary duty, made affirmative, material misrepresentations to the participants and beneficiaries of the Plans about the appropriateness of investing in Company stock and about Delphi's financial condition, as detailed herein, through incorporation of the material, untruthful information contained in the Company's SEC filings into the SPD, which it knew or should have

know were untruthful, thereby encouraging participants of the Plans to make substantial investments in Delphi stock in the Plans.

**COUNT IV:**
**BREACH OF DUTY OF PRUDENCE AND CARE WITH RESPECT TO THE**
**EXERCISE OF AUTHORITY AND CONTROL OVER THE ASSET OF THE PLANS**

67.    Under ERISA, fiduciaries who exercise discretionary authority or control over management of a plan or the disposition of a plan's assets are responsible for ensuring that the assets of a plan are prudently invested. Furthermore, such fiduciaries have an obligation to suspend or terminate the investment of plan assets in investments options which the fiduciaries know or, through the exercise of due diligence, should know are no longer suitable investments for the plan.

68.    Moreover, a fiduciary's duty of loyalty and prudence require it to disregard plan documents or directives that it knows harm plan participants or beneficiaries. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D). Thus, a fiduciary may not blindly follow plan documents or directives that would lead to an imprudent result or that would harm plan participants or beneficiaries, nor allow others, including those whom they direct or who are directed by the plan, including plan trustees, to do so.

69.    Debtor knew or should have known that, as a consequence of accounting irregularities engaged in by the Debtor and other fiduciaries as alleged herein, Delphi stock was inflated in value. Despite this knowledge the Debtor failed to suspend exchanges involving the Delphi Common Stock Fund offered under the Plans' Documents or to limit in any way the purchase or acquisition of Delphi stock by the Plans. Instead, Delphi waited until March 11, 2005, before it exercised control or authority over the investment decisions of the Plans and suspended the purchase of Delphi shares by participants of the Plans.

70.    By failing to take action sooner to suspend purchases of Delphi shares by the participants in the Plans when Delphi knew or should have known that Delphi stock was no longer a prudent investment, Delphi breached its fiduciary duty to the participants by failing to

take adequate steps to prevent the Plans, and indirectly the Plans' participants and beneficiaries, from suffering losses as a result of the Plans' investment in Delphi stock.

## VII. CAUSATION

71.    The Plans suffered losses, and the Claimants and the other Class members were damaged because substantial assets in the Plans were invested in Delphi stock during the Class Period in violation of the Debtor's fiduciary duties.

72.    The Plans were substantially invested in Delphi stock at various times during the Class Period even though Delphi stock was not a prudent investment for the Plans for the reasons alleged herein. As a result of Debtor's actions, a substantial portion of the value of the Plans' assets, to the extent the Plans' assets consisted of Delphi stock, has been destroyed and Debtor is liable for all losses suffered by the Plans and the Participants.

73.    The Plans' fiduciaries were responsible for the prudence of investments in the Plans during the Class Period unless participants in the Plans themselves exercised effective and informed control over the assets in the Plans in their individual accounts pursuant to ERISA § 404(c), 29 U.S.C. § 1104(c), and the regulations promulgated under it. Those provisions were not complied with here. Instead of taking the necessary steps to ensure effective participant control by complete and accurate disclosure and regulatory compliance, the Debtor did exactly the opposite. As a consequence, the participants of the Plans did not control the Plans' assets that were invested in Delphi stock, and the Debtor remained entirely responsible for ensuring that such investments were and remained prudent. The Debtor's liability to Claimants for damages stemming from imprudent investments of the Plans' assets in Delphi stock is therefore established upon proof that such investments were or became imprudent and resulted in losses in the value of the assets in the Plans during the Class Period, without regard to whether or not the

Page - 19

participants relied upon statements, acts, or omissions of the Debtor.

74.    Had the Debtor properly discharged its fiduciary duty to inform and disclose, the Plans' fiduciaries would have known that Delphi common stock was an imprudent investment for the Plans and, in all likelihood, taken appropriate steps to prevent future purchases of Delphi stock as long as it remained artificially inflated in value and an unsuitable investment for the Plans.

75.    Claimants further contend that the Plans suffered losses, and Claimants and the other Class members were damaged, by the Debtor's affirmative, material misrepresentations to the participants and beneficiaries of the Plans about the appropriateness of investing in company stock.    Where a breach of fiduciary duty consists of, or includes, misrepresentations and omissions material to a decision by a reasonable participant that results in harm to the participant, the participant is presumed, as a matter of law, to have relied upon such misrepresentations and omissions to his or her detriment.    Here, Debtor's above described statements, acts, and omissions constituted misrepresentations and omissions that further caused Claimants' losses.

## VIII. REMEDY FOR BREACHES OF FIDUCIARY DUTY

76.    ERISA § 502(a)(2), 29 U.S.C. § 1132 (a)(2) authorizes a plan participant to bring a civil action for appropriate relief under section 409, 29 U.S.C. § 1109.  Section 409 requires "any person who is a fiduciary . . . who breaches any of the . . . duties imposed upon fiduciaries. . . to make good to such plan any losses to the plan. . . ." Section 409 also authorizes "such other equitable or remedial relief as the court may deem appropriate...."

77.    With respect to the calculation of the losses to the Plans, breaches of fiduciary duty result in a presumption that, but for the breaches of fiduciary duty, the participants and

Page - 20

beneficiaries of the Plans would not have made or maintained their investments in the challenged investment and, where alternative investments were available, that the investments made or maintained in the challenged investment would have instead been made in the most profitable alternative investment available. In this way, the remedy restores the values of the Plans' assets to what they would have been if the Plans had been properly administered.

78.    The Debtor imprudently selected, offered, and continued to offer company stock as an investment choice for the Plans' participants, acquired and continued to hold such stock, and/or permitted or ratified such conduct, and/or failed to remedy such conduct:

     (a)    Without adequate investigation and monitoring of the risks associated with the investment in company stock throughout the Class Period; and/or

     (b)    Without ensuring that the Plans' fiduciaries acted solely in the interest of the participants and beneficiaries; and/or

     (c)    By failing to communicate to the Plans' participants true, correct and sufficient information about the company stock to enable participants and beneficiaries to exercise control over their accounts containing company stock.

79.    On information and belief, the Debtor is liable for the breaches by other Plan fiduciaries in that: it knowingly participated in or undertook to conceal a breach or breaches of fiduciary duty as outlined in the Proof of Claim by other fiduciaries, knowing such act or omission was a breach; failed to comply with their duties under ERISA § 404(a)(1), 29 U.S.C. § 1104 (a) (1) in the administration of their responsibilities as a fiduciary, which enabled another fiduciary to commit one or more of the breaches outlined in this pleading; and/or had knowledge of a breach or breaches of another fiduciary and failed to make reasonable efforts to remedy the

breach.

80.    Debtor is directly liable for the breaches described above because it was at all times material hereto a fiduciary of the Plans. Debtor is also vicariously liable for the breaches of some or all of the other fiduciaries to the extent that those fiduciaries acted in the course and scope of their employment with Debtor, at the direction of Debtor, or as actual or apparent agents of the Debtor.

81.    Claimants and the Class are therefore entitled to relief from Debtor in the form of: (1) a monetary payment to the Plans to make good to the Plans the losses the Plans suffered as a result of the breaches of fiduciary duties alleged above in an amount to be proven at trial based on the principles described above, as required by ERISA § 409(a), 29 U.S.C. § 1109 (a); (2) injunctive and other appropriate equitable relief to remedy the breaches alleged above, as provided by ERISA §§ 409(a) and 502(a) (2) & (3), 29 U.S.C. §§ 1109 (a) and 1132 (a) (2) &(3); (3) reasonable attorney fees and expenses as provided by ERISA § 502(g), 29 U.S.C. § 1132(g), the common fund doctrine, and other applicable law; (4) taxable costs; and (5) interest on some or all of these amounts as provided by law.

82.    In view of all of this, Claimants and the Class assert claims against the Debtor in an amount which is unliquidated at this time, but is in excess of $500 million. Claimants respectfully request that the claims be allowed in an amount to be determined by a court of competent jurisdiction.

DATED this 3rd day of February, 2006.

**KELLER ROHRBACK L.L.P.**

By _____
Lynn Lincoln Sarko
Gary A. Gotto
Erin M. Riley
Cari Campen Laufenberg

*Counsel for Claimant Bartell*


Richard A. Lockridge
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401
(612) 339-6900

*Counsel for Claimant Kessler*

Jane B. Stranch
**BRANSTETTER, KILGORE, STRANCH
& JENNINGS**
227 Second Avenue North, Fourth Floor
Nashville, TN  37201-1631

*Counsel for Claimants Folck, McEvoy and Polito*

Page - 23