## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In Re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION et al., | ) | NO. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | Honorable Robert D. Drain |
| | ) | |
| | ) | Hearing Date:  March 9, 2006 |
| | ) | Objection Deadline:  March 2, 2006 4:00 p.m. |
| | ) | |

## MEMORANDUM IN SUPPORT OF ERISA CLAIMANTS' MOTION FOR CERTIFICATION UNDER FED. R. BANKR. P. 7023 AND TO APPOINT COUNSEL

Claimants Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler ("Claimants"), by and through undersigned counsel, hereby file this Memorandum in Support of Claimants' Motion for Certification Under Fed. R. Bankr. P. 7023 and to Appoint Counsel (the "Motion").

On February 6, 2006, Claimants filed their Proof of Claim in this case, on behalf of themselves and a class of persons similarly situated (the "ERISA Class Proof of Claim"). The Class consists of all Plan participants and their beneficiaries, excluding the Defendants and their immediate family members, for whose accounts the Plans' fiduciaries made or maintained investments in Delphi common stock for the Plans at any time between May 28, 1999, through November 3, 2005, (the "Class Period"). A copy of the ERISA Class Proof of Claim is attached to the Motion. The claims concern the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States (the "Salaried Plan") and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States (the "Hourly Plan") collectively (the "Plans"), 401(k) Plans operated and administered by Delphi Corporation ("Delphi" or the "Debtor"). The

Plans suffered devastating losses as a result of the imprudent and unlawful investment of the substantial portions of its assets in Debtor's common stock. Claimants seek recovery on behalf of the Plans for losses suffered as the result of Debtor's violation of its fiduciary duties owed to the Plans as the result of Debtor's multiple breaches of its fiduciary duties in violation of section 404 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1104, especially in connection with the Plans' acquisition and holding of Delphi common stock. Because of the nature of this Claim, it is appropriate that it be treated as a class action under Fed. R. Bankr. P. 7023, and Claimants hereby seek the Court's certification of that treatment.

"[T]he court must–at an early practicable time–determine by order whether to certify [an] action as a class action." Fed. R. Civ. P. 23(c)(1)(A). The importance of prompt certification in a Chapter 11 setting has been emphasized in this District. *In re Woodward & Lothrop Holdings, Inc.*, 205 B.R. 365, 370 (Bankr. S.D.N.Y. 1997) (in bankruptcy, delay in class certification may affect entire case, not just the subject claim).

In this case, prompt decision on class certification is particularly important. The losses suffered by the Plans are well in excess of $500 million and affect the retirement accounts of tens of thousands of current and former employees. There is a strong public interest in permitting the Plans and their participants to ascertain the scope of their legal rights against the Debtor arising out of the disastrous investment of retirement assets in worthless stock. For the reasons explained below, Claimants ask the Court to determine at this time that Fed. R. Bankr. P. 7023 should apply to their Claim, and to certify that Claim now under Fed. R. Civ. P. 23(b)(1) and (b)(3).

# I.    BACKGROUND

A.    Nature of the Case.

Of course, the merits of the ERISA Class Proof of Claim are not before the Court at this

point. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177 (1974) ("[W]e find nothing in either the

language or history of Rule 23 that gives a court any authority to conduct a preliminary inquiry

into the merits of a suit in order to determine whether it may be maintained as a class action").

To assist the Court in understanding the large number of common issues presented, however, this

memorandum provides a brief summary of the facts giving rise to the Claim.[1]

The Claimants are participants in the Plans. The Plans are ERISA 401(k) plans under

which participants were able to invest deferred portions of their salaries. Employees who chose

to participate in the Plans also received matching contributions from Debtor. Tragically, an

enormous portion of the participants' deferrals and matching contributions, were invested in

Delphi common stock, which is now essentially worthless.

B.    Proposed Class Representatives.

The five proposed class representatives used the Plans as savings vehicles for retirement.

The proposed class representatives know of no other ERISA breach of fiduciary duty litigation of

this nature currently pending in any District Court against Debtor.

The proposed class representatives had substantial account balances invested in Delphi

common stock. As a result of their contributions and/or matching contributions, the proposed

---

[1] These substantive allegations of the proof of claim should be accepted as true for the purpose of this class motion. *E.g., Shelter Realty Corp. v. Allied Maint. Corp.,* 574 F.2d 656, 661 n.15 (2d Cir. 1978); *Blackie v. Barrack,* 524 F.2d 891, 901 n.17 (9th Cir. 1975), *cert. denied,* 429 U.S. 816 (1976). *See generally* 1 AlbaConte & Herbert B. Newberg, Newberg on Class Actions § 3:29 (4th ed. 2002)(plaintiff need not show probability of success on the merits).

class representatives acquired and held substantial amounts of shares of Delphi common stock in their retirement investment portfolio during the proposed Class Period.

Claimant Neal Folck is a resident of the State of Ohio. Claimant Folck is an employee of Delphi and a participant in the Salaried Plan.

Claimant Greg Bartell is a resident of the State of Texas. Claimant Bartell is a former employee of Delphi and a participant in the Salaried Plan.

Claimant Donald McEvoy is a resident of the State of New York. Claimant McEvoy is a former employee of Delphi and a participant in the Salaried Plan.

Claimant Irene Polito is a resident of the State of New York. Claimant Polito is a current employee of Delphi and a participant in the Hourly Plan.

Claimant Thomas Kessler is a resident of the State of Ohio. Claimant Kessler is a former employee of Delphi and a participant in the Hourly Plan.

The remedy for an ERISA § 502(a)(2) breach of fiduciary duty claim runs to the plan. *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134 (1985). Consequently, under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), the Claimants have the right to bring their claims and recover relief for breach of fiduciary for Plans in whole, independent of formal class certification under Bankruptcy Rule 7023. Thus, while the class mechanism is not necessary to permit prosecution of these claims by Claimants, they believe that class certification provides a convenient procedural mechanism to assure that the ERISA 401(k) claims will be adjudicated promptly and efficiently in a unified proceeding.

C.    The Claim.

The claim is one for breach of fiduciary duty arising under ERISA. The allegations are set out in detail in the ERISA Class Proof of Claim. The ERISA allegations revolve around the

4

conduct of the Debtor as a fiduciary for the Plan who was responsible for the welfare of the participants and beneficiaries. Debtor breached its fiduciary duty in a variety of ways, including:

- continuing to invest in Delphi common stock notwithstanding its actual or imputed knowledge of the improper accounting practices that made it an unsound investment;

- paying more than adequate consideration for Delphi common stock;

- failing to provide the participants with accurate information about Delphi common stock and instead misleading them about the risks of investing in Delphi common stock and their own attempts to inflate its value; and

- failing to take any steps to recover for the participants their substantial losses as a result of their own and other insiders' improper practices.

Under ERISA, fiduciaries who breach their fiduciary duties, as Claimants allege here, are liable to the participants pursuant to ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), and are obliged to "make good to such plan any losses to the plan resulting from each such breach" pursuant to ERISA § 409(a), 29 U.S.C. § 1109(a). In addition, the Court may enjoin breaches in the future or grant "other appropriate equitable relief." ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

## II.    THE CLASS SHOULD BE CERTIFIED

The class action is a tool for resolving claims involving large numbers of people. Since the federal rules were adopted in 1937, the class action rule has steadily gained in importance, especially after its extensive amendment in 1966, in the litigation of complex disputes:

> It now is apparent that the increasing complexity and urbanization of modern American society has magnified tremendously the importance of the class action as a procedural device for resolving disputes affecting numerous people. .

7A Charles Alan Wright, Arthur R. Miller, & Mary Kay Kane, Federal Practice and Procedure § 1751 at 17 (3d e. 2005) (footnotes omitted). This case illustrates perfectly the "importance of the class action as a procedural device." Without class treatment, a dispute like this would likely

result in numerous proceedings, inconsistent decisions, and excessive expenses and delays; with it, the parties' claims and defenses can be resolved in an efficient manner in one proceeding, once and for all.

Indeed, claims involving alleged breach of fiduciary duty are the very model of proper class certification. *See* Fed. R. Civ. P. 23(b)(1)(B) advisory committee's note (1966 Amendment) (stating that certification under 23(b)(1) is appropriate in cases charging breach of trust by a fiduciary to a large class of beneficiaries); *Mass. Mut. Life Ins. Co.*, 473 U.S. at 142 n.9 (noting Congress' intent that ERISA "actions for breach of fiduciary duty be brought in a representative capacity on behalf of the plan as a whole"). The reported decisions considering alleged violations of fiduciary duties under ERISA overwhelmingly have held that class certification is appropriate under Rule 23(a) and at least one subsection of Rule 23(b), usually subsection (b)(1).[2]

---

[2] *See, e.g., In re Williams Cos. ERISA Litig.*, 231 F.R.D. 416, (N.D. Okla. Aug. 19, 2005) (certifying class under Rule 23(b)(1)(B) & 23(b)(2)); *In re Syncor ERISA Litig.*, 227 F.R.D. 338(C.D. Cal. 2005) (certifying class under Rule 23(b)(1)); *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539 (E.D. Mich. 2004 (certifying class under Rule 23(b)(1)(A) & (B)); *In re WorldCom, Inc. ERISA Litig.*, No. 02-4816, 2004 U.S. Dist. LEXIS 19786 (S.D.N.Y. Oct. 4, 2004)(certifying class under Rule 23(b)(1)(B)); *Rankin v. Rots*, 220 F.R.D. 511(E.D. Mich. 2004) (certifying class under Rule 23(b)(1)); *Furstenau v. AT&T Corp.*, No. 02-5409, 2004 U.S. Dist. LEXIS 27042 (D.N.J. Sept. 2, 2004) (certifying class under Rule 23(b)(1)); *Kolar v. Rite Aid Corp.*, No. 01-1229, 2003 U.S. Dist. LEXIS 3646 (E.D. Pa. Mar. 11, 2003) (confirming certification of class under Rule 23(b)(1)); *McDaniel v. N. Am. Indem., N.V.*, No. 02-0422, 2003 U.S. Dist LEXIS 1663 (S.D. Ind. Jan. 27, 2003) (certifying class under Rule (b)(1), (b)(2) & (b)(3)); *Babcock v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. 126 (E.D.N.Y. 2003) (certifying class under Rule 23(b)(1) & (b)(3)); *Koch v. Dwyer*, No. 98-5519, 2001 U.S. Dist. LEXIS 4085, at *15 (S.D.N.Y. Mar. 23, 2001) (certifying class under Rule 23(b)(1)(B)); *Thomas v. SmithKline Beecham Corp.*, 201 F.R.D. 386, 397-98 (E.D. Pa. 2001) (certifying class under Rule 23(b)(1) & (b)(2)); *In re Ikon Office Solutions, Inc Sec. Litig.*, 191 F.R.D. 457, 466 (E.D. Pa. 2000) (certifying class under Rule 23(b)(1)); *Clauser v. Newell Rubbermaid, Inc.*, No. 99-5753, 2000 U.S. Dist. LEXIS 10631, at *18 (E.D. Pa. July 31, 2000) (certifying class under Rule 23(b)(1)); *Bunnion v. Consol. Rail Corp.*, No. 97-4877, 1998 U.S. Dist. LEXIS 7727, at *43 (E.D. Pa. May 14, 1998) (certifying class under Rule 23(b)(1) & (b)(2)); *Kane v. United Indep. Union Welfare Fund*, No. 97-1505, 1998 U.S. Dist. LEXIS 1965, at *25 (E.D. Pa. Feb. 24, 1998) (certifying class under Rule 23(b)(1)); *Feret v. CoreStates Fin. Corp.*, No. 97-6759, 1998 U.S. Dist. LEXIS 12734, at *43 (E.D. Pa. Aug. 18, 1998) (certifying class under Rule 23(b)(1)); *Atwood v. Burlington Indus. Equity, Inc.*, 164 F.R.D. 177, 179 (M.D.N.C. 1995) (certifying class under Rule 23(b)(1)); *Schutte v. Maleski*, No. 93-0961, 1993 U.S. Dist. LEXIS 8332, at *29 (E.D. Pa. Jun. 18, 1993) (certifying class under Rule 23(b)(1)(B)); *Gruby v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993) (certifying class under Rule 23(b)(1)); *Specialty Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.*, 140 F.R.D. 474, 479 (S.D. Ga. 1991) (certifying class under Rule 23(b)(1)(B)).

The drafters' analytical framework for class certification is relatively simple. If the four threshold requirements of Rule 23(a) are met and one of the three requirements of Rule 23(b) is met, then certification is appropriate. Wright, Miller, & Kane, *supra*, § 1759 at 118. Here, as will be seen, all the requirements are easily met. Before turning to these requirements, we first briefly discuss the application of Rule 23 in bankruptcy.

A.     The Court Should Apply Fed. R. Civ. P. 23 in This Bankruptcy Case.

Courts have described the interplay between Bankruptcy Rules 7023 and 9014, with respect to a class proof of claim and certification, as presenting a classic "chicken and the egg" problem. Courts have grappled with this issue over the years and use of the class action vehicle has gained acceptance in mass tort cases against bankruptcy debtors. *See, e.g., In re Joint E.&S. Dist. Asbestos Litig.*, 982 F.2d 721 (2nd Cir. 1992).

Initially, it was unclear whether class proofs of claim were permissible under the Bankruptcy Code of 1978. In *In re Chateagay Corp.*, 104 B.R. 626 (Bankr. S.D.N.Y. 1989), the district court reversed the bankruptcy court, which had held that class proofs of claim were impermissible. The District Court stated that the question was an issue of first impression in the Second Circuit, and noted that the Seventh and Eleventh Circuit permitted such filings. *Id.* at 629, *citing In re Am. Reserve Corp.*, 840 F.2d 487, 488 (7th Cir. 1988); *In re Charter Co.*, 876 F.2d 866, 873 (11th Cir. 1989). Following those cases, the District Court held that filing of class proofs of claim were permissible and "consistent with the broad goals of the Bankruptcy Code of 1978." *Id.* at 632.

In *Woodward*, 205 B.R. 365 (Bankr. S.D.N.Y. 1997), the Court explained the application of Rule 23 in bankruptcy as follows:

> The initial decision to apply Rule 23 in a contested matter raises a "chicken and egg" paradox. The claim cannot be allowed as a class claim

> until the bankruptcy court directs that Rule 23 apply. It can only make
> this direction in a pending contested matter which the mere filing of the
> claim does not initiate. In the absence of an objection, however, the claim
> is deemed allowed [under Chateaugay].

Analyzing the "paradox," the Court found the answer to lie in Rule 23 itself, and explained that

certification of the class can be raised either (i) by the debtor, via objection to the class proof of

claim, (ii) by the court, *sua sponte*, or (iii) by a class representative via a motion to certify. *Id.* at

370. After the issue is brought before the Court, the Court has discretion whether to certify the

class under Rule 23.

B.    The Requirements of Rule 23(a) Are Clearly Met.

Rule 23(a) states four threshold requirements for class actions: "(1) the class is so

numerous that joinder of all members is impracticable, (2) there are questions of law or fact

common to the class, (3) the claims or defenses of the representative parties are typical of the

claims or defenses of the class, and (4) the representative parties will fairly and adequately

protect the interests of the class." Fed. R. Civ. P. 23(a). Each is analyzed below.

1.    The Class is so Numerous that Joinder is Impracticable.

There is no bright line rule regarding the number of class members that will satisfy the

numerosity requirement of Rule 23, but a class numbering in the tens of thousands is not a close

call. *See generally* Wright, Miller, & Kane, *supra*, § 1762. Claimants understand, and have

alleged, that during any given year in the Class Period, the number of the Plans' participants was

in the tens of thousands. Although the precise number can only be determined from Debtor's

records, which have not yet been produced, it is obvious that the proposed class is far too large to

make joinder practicable.

2.      There Are Many Common Questions of Law and Fact

Rule 23(a) requires that there be some common factual or legal questions.  It does not

require that *all* issues be common, and there is no specific "qualitative or quantitative test."

Wright, Miller, & Kane, *supra*, § 1763.  This is easily satisfied, where there is a "common

nucleus of operative fact," regardless of whether the underlying facts fluctuate to some extent

over the class.  *In re VMS Sec. Lit.*, 136 F.R.D. 466, 473-74 (N.D. Ill. 1991).  *See also Scholes v.*

*Stone, McGuire & Benjamin,* 143 F.R.D. 181, 185 (N.D. Ill. 1992) (noting that this requirement

is a "low hurdle" which is, in most cases, "easily surmounted").

In this case, the factual background is, in nearly every way, identical for each member of

the class.  Indeed, the bulk of the case has very little to do with the class members themselves;

rather, the focus, as outlined above, is on the conduct of Debtor itself.  These underlying facts –

the absence of adequate investigation and monitoring of the risks associated with the investment

in employer stock, the failure to ensure that the fiduciaries acted independently in managing the

Plans, the failure to warn participants of various conflicts of interest, the Debtor's actual or

constructive knowledge of the improper practices in question, the payment of excessive

consideration for the stock, the false and misleading statements and omissions, and so on – are

all independent of any particular Plans' participant.  By definition, they are common issues.

Given this common background, it is not surprising to find an abundance of common

factual and legal issues.  For example:

(1)      What steps, if any, did the Debtor take to investigate and monitor the risks
         associated with the investment in Delphi common stock?

(2)      What steps, if any, did the Debtor take to ensure independent management of the
         Plans?

(3)      What steps, if any, did the Debtor take to communicate with participants of the

Plans about Delphi common stock?

(4)     Under the circumstances, did the decision to select, offer, and continue to offer Delphi common stock as an investment choice violate ERISA § 404(a)?

(5)     Under the circumstances, did the decision to require or continue to require that matching funds be invested in Delphi common stock violate ERISA § 404(a)?

(6)     Under the circumstances, did the decision to acquire and continue to hold Delphi common stock violate ERISA § 404(a)?

(7)     Was Delphi common stock acquired for more than adequate consideration, in violation of ERISA §§ 404 and 406?

(8)     Did the Debtor take adequate steps to protect the Plans and recover the Plans' damages?

(9)     How are the Plans' documents to be interpreted?

(10)    Did the securities filings and summary plan descriptions provide incomplete and inaccurate information to participants of the Plans?

(11)    Was the Debtor unjustly enriched by its activities vis-à-vis the Plans?

All of these issues are common to the Class. *See, e.g., In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 452 (S.D.N.Y. 2004) (allegations that the ERISA defendants breached their fiduciary duty in connection with the administration of the employee benefit plan "certainly involve common questions of fact or law"); *In re WorldCom Inc. ERISA Litig., No. 02-4816,* 2004 U.S. Dist. LEXIS 19786, at *7-8 (S.D.N.Y. Oct. 4, 2004) (common questions of law and fact include whether defendants were ERISA fiduciaries, whether they breached their fiduciary duties, and whether those breaches injured class members). Commonality is, in fact, something of a foregone conclusion in this context, as "the question of defendants' liability for ERISA violations is common to all class members because a breach of a fiduciary duty affects all participants and beneficiaries." *Banyai v. Mazur,* 205 F.R.D. 160, 163 (S.D.N.Y. 2002). Thus, commonality clearly is established here.

3.    The Typicality Requirement is Met

"A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983) (citation omitted). *See generally* Wright, Miller, & Kane, *supra*, § 1764.

The factual background of each named proposed class representative's claim need not be identical to that of all the class members if: (1) the claims of the representative class member arise from the same course of conduct that gives rise to the claims of other class members; (2) the claims are based on the same legal theory; and (3) the class members have allegedly been injured by the same course of conduct as the class representatives. *Global Crossing*, 225 F.R.D. at 452, *citing In re Oxford Health Plans, Inc.*, 191 F.R.D. 369, 375 (S.D.N.Y. 2000). "When it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of minor variations in the fact patterns underlying individual claims." *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993).

The claims of the proposed class representatives stem from the Debtors' alleged fiduciary breaches, and are completely in line with the claims of the other class members. *Koch* v. *Dwyer*, No. 98-5519, 2001 U.S. Dist. LEXIS 4085 (S.D.N.Y. Mar. 23, 2001) (finding typicality of claims where the named plaintiff was an ERISA plan participant during the class period and the plan's fiduciaries treated all participants alike); *In re Ikon Office Solutions, Inc. Sec. Litig.*, 191 F.R.D. 457, 465 (E.D. Pa. 2000) (finding typicality of claims; "the named plaintiffs and the putative class would necessarily allege a similar course of conduct: that Ikon and the individual defendants failed to provide accurate information in violation of ERISA obligations"); *Specialty*

*Cabinets & Fixtures, Inc. v. Am. Equitable Life Ins. Co.*, 140 F.R.D. 474, 476 (S.D. Ga. 1991) ("Plaintiffs have brought this action in part to remedy a breach of fiduciary duty, and any recovery on this claim belongs to the ERISA fund. These claims of the Plaintiffs' are identical to those of other class members").

An additional factor that buttresses a conclusion that Claimants' claims are typical is the unique standing and remedial provisions in ERISA, under which a participant who sues for breach of a fiduciary's duties is entitled to obtain plan-wide relief. *See* ERISA § 409(a), 29 U.S.C. § 1109(a) (liability for breach of fiduciary duty is "to the plan"); ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2) (authorizing plan participant to sue for breach of fiduciary duty under § 409(a)); *In re Schering-Plough Corp. ERISA Litig.*, 420 F.3d 231 (3d Cir. 2005), *amended by* 2005 U.S. App. LEXIS 19826 (3d. Cir. Sept. 15, 2005) (plan participants may properly bring suit on behalf of an ERISA employee benefits plan where the fiduciaries' alleged breach affects the assets of the plan as a whole); *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539, 543) (E.D.Mich. 2004) ("recovery for a breach of fiduciary duty goes to the Plan"); *In re Syncor ERISA Litig.*, 227 F.R.D. 338, 342-43 (C.D.Cal. 2005) (individual ERISA claims on behalf of the Plan may be brought as a class action); *Rankin v. Rots*, 220 F.R.D. 511, 519 (E..D. Mich. 2004) ("Kmart") (noting representative nature of action under ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2)). With each Class member stating the same claim concerning the same conduct and seeking the same relief, the claims asserted here are typical for purposes of Rule 23(a)(3).

4.    Claimants Will Adequately Protect the Interests of the Class

Adequate representation has two components: (1) the representatives' interests must not be antagonistic to those of other class members; and (2) class counsel must be qualified, experienced, and generally able to conduct the litigation. Wright, Miller, & Kane, *supra*, §§

1768 and 1769.1. Claimants here have no interests in conflict with those of other class members and propose the appointment of Keller Rohrback as class counsel.[3]  Judge Borman appointed Keller Rohrback as Interim Lead Counsel for the Plaintiffs in the Delphi ERISA Litigation. *See In re Delphi ERISA Litigation*, 230 F.R.D. 496, 498 (E.D. Mich. 2005).

Keller Rohrback brings to bear substantial ERISA, class action and bankruptcy experience and expertise, as well as the more general resources necessary to prosecute litigation of this magnitude.  The firm and its attorneys have been appointed to serve as lead or co-lead counsel in many ERISA 401(k) breach of fiduciary duty cases, including those involving WorldCom, Enron, Marsh & McLennan Companies, Polaroid, Global Crossing, Lucent Technologies, Ikon Office Solutions, Dynegy, Williams Companies, Providian Financial, Xerox, CMS Energy, and Household International.

Mr. Lynn Sarko is the Managing Partner of Keller Rohrback L.L.P. and is head of Keller Rohrback's nationally recognized complex litigation group.  He is a former Assistant U.S. Attorney and has been actively engaged in the prosecution of complex litigation for two decades. With a master's degree in accounting, Mr. Sarko's practice has focused on litigating complex class actions involving accounting fraud, including actions against several of the big five accounting firms in the United States.

Gary Gotto, also of Keller Rohrback, has also been heavily involved in ERISA 401(k) breach of fiduciary duty litigation, and has more than ten years' experience handling complex bankruptcy matters, both for creditors and debtors.

The class members' interests will be well protected and vigorously litigated by the Claimants and their lawyers.  At an early stage of any complex litigation the court should seek to

---

[3] The resume of Keller Rohrback L.L.P.'s ERISA Group is attached hereto as Exhibit A.

13

eliminate duplication of effort and to avoid unnecessary expense. *Manual for Complex Litigation* (Fourth) § 10.22 (2004). To this end, Claimants urge that Lynn Sarko and Gary Gotto of Keller Rohrback, L.L.P., be appointed to act as Claimants' Counsel to represent the contemplated class of claimants in the prosecution of the claim in this action.

C.   The Requirements of Rule 23(b) Are Also Clearly Met.

It has long been noted that the additional requirements of Rule 23(b) overlap considerably with those of Rule 23(a) and with each other. 2 AlbaConte & Hurbert B. Newberg, Newberg on Class Actions, § 4:22 (4th ed. 2002). Thus, the discussion of these factors can be very brief. Claimants satisfy the requirements of both Rule 23(b)(1) and 23(b)(3), even though a party seeking class certification need satisfy only one of those criteria.

1.   An Adjudication of Claimants' Claims Will Effectively Determine the Rights of All Class Members.

Under Rule 23(b)(1), a class may be certified if:

> (1) the prosecution of separate actions by or against individual members of the class would create a risk of
>
> > (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or
> >
> > (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests[.]

Fed. R. Civ. P. 23(b)(1). Rule 23(b)(1)(A) "considers possible prejudice to the defendants, while 23(b)(1)(B) looks to possible prejudice to the putative class members." *Global Crossing*, 225 F.R.D. at 453, *quoting Ikon*, 191 F.R.D. at 466.

(a)   Subsection (b)(1)(B).

Subsection (b)(1)(B) is the provision upon which many courts have relied in certifying a class in similar cases, and it is appropriate for allegations of a breach of defendants' fiduciary obligations to Claimants.  As stated in the Advisory Committee Notes accompanying the 1966 amendments to Rule 23:

> This [(b)(1)(B)] clause takes in situations where the judgment in a nonclass action by or against an individual member of the class, while not technically concluding the other members, might do so as a practical matter. The vice of an individual action would lie in the fact that the other members of the class, thus practically concluded, would have had no representation in the lawsuit . . . [This] reasoning applies to an action which charges a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or other beneficiaries, and which requires an accounting or like measures to restore the subject of the trust.

Fed. R. Civ. P. 23(b)(1)(B) advisory committee's note (1966 Amendment).  Indeed, most courts have accepted this reasoning in deciding to certify a class in ERISA cases alleging a breach of defendants' fiduciary obligations.  As one court explained:

> Under 29 U.S.C. § 1132(a)(2), participants or beneficiaries of an ERISA plan have standing to sue for appropriate relief under 29 U.S.C. § 1109 (1988), imposing liability for breaches of fiduciary duty.  An action to enforce fiduciary duties is "brought in a representative capacity on behalf of the plan as a whole." *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142 n.9 (1985).  Any relief granted by a court to remedy a breach of fiduciary duty "inures to the benefit of the plan as a whole" rather than to the individual plaintiffs.  *Id.* at 140.  "Because a plan participant or beneficiary may bring an action to remedy breaches of fiduciary duty only in a representative capacity, such an action affects all participants and beneficiaries, albeit indirectly." *Specialty Cabinets & Fixtures, Inc. v. American Equitable Life Ins. Co.*, 140 F.R.D. 474, 478 (S.D. Ga. 1991).  Since Counts X and XI are brought by [plaintiffs] in their representative capacity, the Court finds that class certification for these claims is proper under Rule 23(b)(1)(B).

*Kane v. United Indep. Union Welfare Fund*, No. 97-1505, 1998 U.S. Dist. LEXIS 1965, at *24-25 (E.D. Pa. Feb. 24, 1998) (internal parallel cite omitted).

In *Koch*, the court made exactly the same point, namely, that "prosecution of separate actions by individual members would create a risk of adjudications which would be dispositive of the interests of the other members not parties to such adjudications." *Koch*, 2001 U.S. Dist. LEXIS 4085, at *14; *see also WorldCom*, 2004 U.S. Dist. LEXIS 19786, at *8 (certifying class under Rule 23(b)(1)(B) because "any adjudication with respect to individual members of the class will as a practical matter be dispositive of the interests of the other members of the class"); *Banyai*, 205 F.R.D. at 165 (same). Because of ERISA's distinctive "representative capacity" and remedial provisions, this is a paradigmatic case for class treatment under Rule 23(b)(1)(B). *See Specialty*, 140 F.R.D. at 479 (holding that "[b]ecause an individual ERISA action to remedy breaches of fiduciary duty would 'substantially impair or impede' the ability of absent beneficiaries and participants to protect their interests, courts should certify these actions pursuant to Rule 23(b)(1)(B)").

  (b)  Subsection (b)(1)(A).

After determining that a class of participants and beneficiaries seeking recovery from an ERISA fiduciary satisfies subsection (b)(1)(B) of Rule 23, some courts deem it unnecessary to reach the other potentially-applicable subsections of Rule 23(b). *E.g., Koch*, 2001 U.S. Dist. LEXIS 4085, at *15 n.2; *Gruby v. Brady*, 838 F. Supp. 820, 828 (S.D.N.Y. 1993).

However, other courts certify ERISA class actions under both subsections (b)(1)(B) and (b)(1)(A). *See, e.g., Kmart*, 220 F.R.D. at 522-23; *Kolar v. Rite Aid Corp.*, No. 01-1229, 2003 U.S. Dist. LEXIS 3646, at *9 (E.D. Pa. Mar. 11, 2003) (finding that "a (b)(1) class is a perfect vehicle for resolving complex ERISA issues such as these involved here"). Again, the nature of the case, which challenges Defendants' Plan-wide conduct, makes this result particularly appropriate. As the court in *Bunnion* noted with regard to certification under (b)(1)(A),

16

"[m]oreover, we see a high likelihood of similar lawsuits against defendants should this class be denied. Inconsistent judgments concerning how the Plans should have been interpreted or applied would result in prejudice." *Bunnion v. Consol. Rail Corp.*, No. 97-4877, 1998 U.S. Dist. LEXIS 7727, at *43 (E.D. Pa. May 14, 1998); *see also Ikon*, 191 F.R.D. at 466 (finding that "[t]here is also risk of inconsistent dispositions that would prejudice the defendants: contradictory rulings as to whether Ikon had itself acted as a fiduciary, whether the individual defendants had, in this context, acted as fiduciaries, or whether the alleged misrepresentations were material would create difficulties in implementing such decisions."). "[A] failure to certify a class could expose defendants to multiple lawsuits and risk inconsistent decisions," *Kmart*, 220 F.R.D. at 523, making certification here appropriate under subsection (b)(1)(A), as well as (b)(1)(B). *See also Fursenau v. AT&T Corp. No. 02-5409*, 2004 U.S. Dist. LEXIS 27042, at *13-14 (D.N.J. Sept. 2, 2004) (certifying ERISA company stock case as Fed. R. Civ. P. 23(b)(1) class because "[p]laintiff seeks plan-wide relief, where success necessarily results in plan-wide relief and failure to prove breach of fiduciary duty would necessarily preclude actions by other plan participants. If this Court did not certify the class, then defendants would be exposed to multiple lawsuits and risk inconsistent decisions."). Thus, as in the above cases, the class satisfies the requirements of 23(b)(1)(A).

> 2.    Alternatively, Claimants Satisfy the Requirements of Subsection (b)(3).

For the reasons discussed above, certification is appropriate in this case under Rule 23(b)(1). In addition, the case also satisfies the requirements of Rule 23(b)(3). Rule 23(b)(3) permits class certification if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of

the controversy." Fed. R. Civ. P. 23(b)(3).   Here, the common issues are numerous and dominant: the Debtor's conduct is the single overarching question of fact.   Likewise, dominant questions of law are presented, including whether Debtor is a Plan fiduciary, and whether Debtor breached its fiduciary duties under ERISA.   These common issues plainly predominate over individual issues.

To satisfy Rule 23(b)(3), a class action must also be superior to other case management tools.   Here, the Class is comprised of tens of thousands of members, whose ERISA claims can be resolved in this single proceeding.   Given the vigorous defense anticipated, and the burdens of potentially thousands of actions all presenting the same common issues, class certification offers the only practical way to assert claims for Plan-wide relief.   In this case, class certification is superior to all other alternatives. *See Bledsoe v. Emery Worldwide Airlines*, 258 F. Supp. 2d 780 (S.D. Ohio 2003) (certifying class under (b)(3)); *Babcock v. Computer Assocs. Int'l, Inc.*, 212 F.R.D. 126, 131-32 (E.D.N.Y. 2003) (certifying ERISA class under subsections (b)(3) and (b)(1)).

Finally, where, as here, certification is possible under both Rule 23(b)(1) and 23(b)(3), certification under Rule 23(b)(1) is preferable. *See, e.g., Reynolds v. Nat'l Football League*, 584 F.2d 280, 284 (8th Cir. 1978) (noting that "when the choice exists between (b)(1) and (b)(3) certification, generally it is proper to proceed under (b)(1) exclusively in order to avoid inconsistent adjudication or a compromise of class interests").   Accordingly, Claimants seek certification under Rule 23(b)(3) only in the alternative.

### III. CONCLUSION

For all of the foregoing reasons, Claimants respectfully request that the Court apply Fed. R. Bankr. P. 7023 in this matter and certify Claimants proposed class under Fed. R. Civ. P.

23(b)(1) and (b)(3), and appoint Lynn Sarko and Gary Gotto of Keller Rohrback, L.L.P. as class counsel.

DATED this  7th  day of February, 2006.

Respectfully submitted,

**KELLER ROHRBACK, LLP**

By ___/s/ Gary A. Gotto_____
Lynn Lincoln Sarko
Erin M. Riley
Cari Campen Laufenberg
1201 Third Avenue, Suite 3200
Seattle, WA  98101-3052
(206) 623-1200 (Telephone)
(206) 623-3384 (Facsimile)

and

**KELLER ROHRBACK P.L.C.**
Gary A. Gotto
National Bank Plaza
3101 North Central Avenue, Suite 900
Phoenix, AZ  85012
(602) 248-0088 (Telephone)
(602) 248-2822 (Facsimilie)

*Counsel for Claimant Bartell*

Richard A. Lockridge
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Avenue South, Suite 2200
Minneapolis, MN  55401
(612) 339-6900

*Counsel for Claimant Kessler*

Jane B. Stranch
**BRANSTETTER, KILGORE, STRANCH
& JENNINGS**
227 Second Avenue North, Fourth Floor
Nashville, TN  37201-1631
(615) 254-8801

*Counsel for Claimants Folck, McEvoy and Polito*

# EXHIBIT A



## KELLER·ROHRBACK
### L A W   O F F I C E S

## ERISA LITIGATION GROUP



Keller Rohrback L.L.P.   1201 Third Avenue   Suite 3200   Seattle, WA 98101 | 206.623.1900

Keller Rohrback P.L.C.   3101 North Central Avenue   Suite 900   Phoenix, AZ 85012 | 602.248.0088

www.ERISAfraud.com

www.SeattleClassAction.com

  **KELLER·ROHRBACK** L A W   O F F I C E S    **ERISA LITIGATION GROUP**

# LEADERS IN ERISA CLASS ACTION LITIGATION

KELLER ROHRBACK is America's leading law firm handling plaintiffs-ERISA retirement plan litigation. Our ERISA Litigation Group helped pioneer this field of law in the *IKON, Lucent* and *Enron* ERISA cases, the first large-scale ERISA 401(k) breach of fiduciary duty cases of their kind. Since then, Keller Rohrback has played a major role in developing the law and establishing that ERISA's strict fiduciary duties apply to companies' investment of employees' retirement savings in the stock of the employers. Our efforts have resulted in numerous published decisions upholding plaintiffs' ERISA claims, granting class certification, and approving several multi-million dollar settlements. In all, to date, Keller Rohrback has recovered over $426 million for employees on behalf of their retirement savings plans.

Federal courts throughout the country have recognized Keller Rohrback 's qualifications to vigorously pursue ERISA class action claims. Thus, Keller Rohrback serves as lead or co-lead counsel in almost every major ERISA breach of fiduciary duty case involving 401(k) and ESOP plans, including the *Enron ERISA Litigation, WorldCom, Inc. ERISA Litigation, Global Crossing, Ltd. ERISA Litigation, Lucent Technologies, Inc. ERISA Litigation, Providian ERISA Litigation, Dynegy, Inc. ERISA Litigation, Williams Companies ERISA Litigation, CMS Energy Corp. ERISA Litigation, Xerox Corporation ERISA Litigation, Household International, Inc. ERISA Litigation, CIGNA Corp. ERISA Litigation, BellSouth Corporation ERISA Litigation, Syncor ERISA Litigation, HealthSouth ERISA Litigation In re Polaroid ERISA Litigation, Mirant Corporation ERISA Litigation, Southern Companies ERISA Litigation, The Goodyear Tire & Rubber Company ERISA Litigation, Marsh ERISA Litigation* and the *Merck ERISA Litigation.*

*Founded in 1919, today Keller Rohrback has 58 attorneys and 90 staff members who provide expert legal services to clients nationwide. We use cutting-edge technology and case management techniques in the preparation and trial of complex cases. Our excellent support staff includes in-house programming personnel and experienced paralegals who contribute significantly to our ability to effectively and efficiently litigate complex class action cases nationwide. The firm's ERISA Litigation Group regularly calls on firm attorneys in other practice areas for expertise in bankruptcy, contracts, employment law, executive compensation, corporate transactions, financial institutions, insurance coverage, mergers and acquisitions, professional malpractice, and securities transactions. The firm's in-house access to these resources distinguishes Keller Rohrback from other plaintiffs' class action firms and also contributes to the firm's success.*

 

# KELLER·ROHRBACK
LAW OFFICES

# ERISA LITIGATION GROUP

## ERISA 401(k) and ESOP Cases

From the first ever reported 401(k) company stock breach of fiduciary duty case, *Whetman v. IKON Office Solutions, Inc.*, No. MDL 1318 (E.D. Pa.), Keller Rohrback attorneys have successfully guided clients through the exceptionally complex ERISA field. Indeed, since *Whetman v. IKON Office Solutions, Inc.*, Keller Rohrback has continued to act as a trailblazer by serving as lead or co-lead counsel in numerous ERISA breach of fiduciary duty cases – including the landmark cases listed below – in which the claims now routinely alleged in other complaints including: (1) failure to prudently and loyally manage the plan and plan assets; (2) failure to provide complete and accurate information regarding company stock to Plan participants; and (3) failure to prudently monitor Plan fiduciaries have been validated. Courts have again and again praised Keller Rohrback's leadership and successful results in this highly complex and rapidly developing area of law.

"*[Keller Rohrback] has performed an important public service in this action and has done so efficiently and with integrity . . . [Keller Rohrback] has also worked creatively and diligently to obtain a settlement from WorldCom in the context of complex and difficult legal questions . . . [Keller Rohrback] should be appropriately rewarded as an incentive for the further protection of employees and their pension plans not only in this litigation but in all ERISA actions.*" In re WorldCom, Inc. ERISA Litig., 59 Fed.R.Serv. 3d 1170, 33 Employee Benefits Cas. 2291 (S.D.N.Y. Oct. 18, 2004).

"*The Court finds that [Keller Rohrback] is experienced and qualified counsel who is generally able to conduct the litigation as lead counsel on behalf of the putative class. Keller Rohrback has significant experience in ERISA litigation, serving as co-lead counsel in the Enron ERISA litigation, the Lucent ERISA litigation, and the Providian ERISA litigation, and experience in complex class action litigation in other areas of the law. Mr. Sarko's presentation at the August 26, 2002 hearing before the Court evidences Keller Rohrback's ability to adequately represent the class.*" In re Williams Cos. ERISA Litigation, No. 02-CV-153 (H) (N.D. Okla. Oct. 18, 2002) (order appointing lead counsel).

 

**KELLER·ROHRBACK**
L A W   O F F I C E S

**ERISA LITIGATION GROUP**

*First Of Its Kind ERISA 401(k) And ESOP Cases:*

***Whetman v. IKON Office Solutions, Inc.***, No. MDL 1318 (E.D. Pa.) (Also cited as "*In re IKON Office Solutions, Inc. Securities Litigation.*"). The current wave of 401(k) company stock cases began with *Whetman v. IKON Office Solutions, Inc.*, No. 2-98-CV-89 (D. Utah). In a first of its kind complaint, we alleged that company stock was an imprudent investment for the plan, that the fiduciaries of the plan failed to provide complete and accurate information concerning company stock to the participants, and that they failed to address their conflicts of interest. This case resulted in ground-breaking opinions in the ERISA 401(k) area of law on motions to dismiss, *Whetman v. IKON Office Solutions, Inc.*, 86 F. Supp. 2d 481 (E.D. Pa. 2000); class certification, *Whetman v. IKON Office Solutions, Inc.*, 191 F.R.D. 457 (E.D. Pa. 2000); approval of securities settlements with a carve-out for ERISA claims, *In re IKON Office Solutions Sec. Litig.*, 194 F.R.D. 166 (E.D. Pa. 2000); and approval of ERISA settlements, *Whetman v. IKON Office Solutions, Inc.*, 209 F.R.D. 94 (E.D. Pa. 2002).

***In re Lucent Technologies, Inc. ERISA Litigation***, No. 01-CV-3491 (D.N.J.). Keller Rohrback was appointed co-lead counsel in this class action brought on behalf of participants and beneficiaries of the Lucent defined contribution plans that invested in Lucent stock. The complaint alleged that the defendants withheld and concealed material information from participants, thereby encouraging participants and beneficiaries to continue to make and to maintain substantial investments in Company stock and the Plans. The Lucent ERISA Litigation settlement provided for, among other relief, the payment of $69 million in cash and stock to the Plan. Judge Joel Pisano approved the settlement on December 12, 2003.

***In re Enron Corp. ERISA Litigation***, No. H 01-CV-3913 (S.D. Tex.). Keller Rohrback serves as co-lead counsel in this class action filed in the Southern District of Texas on behalf of participants and beneficiaries of the Enron Corporation Savings Plan, a 401 (k) plan and ESOP plan. On September 30, 2003, Judge Melinda Harmon denied defendants' numerous motions to dismiss in a landmark decision that addressed in detail defendants' obligations as ERISA fiduciaries, and upheld plaintiffs' core ERISA claims. *See Tittle v. Enron Corp.*, 284 F. Supp. 2d 511 (S.D. Tex 2003). Plaintiffs reached a partial settlement providing $85 million in cash to the Enron Plans, which was approved on May 24, 2005.

***In re WorldCom, Inc. ERISA Litigation***, No. 02 Civ. 4816 (DLC) (S.D.N.Y.). Keller Rohrback serves as lead counsel in this class action filed in the Southern District of New York on behalf of participants and beneficiaries of the WorldCom 401(k) Salary Savings Plan. On June 17, 2003, Judge Denise Cote denied in part defendants' motions to dismiss. *See In re WorldCom ERISA Litig.*, 263 F. Supp. 2d 745 (S.D.N.Y.

 

**KELLER·ROHRBACK**
L A W   O F F I C E S                           **ERISA LITIGATION GROUP**

2003), and on October 4, 2004, granted plaintiffs' motion for class certification. *See In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2211664 (S.D.N.Y. Oct. 4, 2004). Plaintiffs recently obtained a partial settlement in the *WorldCom, Inc. ERISA Litigation* providing, among other relief, payment of $47.15 to the Plan. The court adopted and gave final approval to the Settlement Agreement on October 26, 2004.

**Ground Breaking ERISA 401(k) and ESOP Settlements:**

Keller Rohrback's qualifications to lead ERISA 401(k) and ESOP class actions is nowhere more evident than in the highly favorable settlements it has achieved for the benefit of employees in several of its nationally prominent cases. In addition to the Enron, WorldCom, Global Crossing, and Lucent settlements discussed above, these settlements include:

*In re Dynegy, Inc. ERISA Litigation*, No. H-02-3076 (S.D. Tex.). On March 5, 2004, the court denied, in part, defendants' motions to dismiss. *See In re Dynegy ERISA Litig.*, 309 F. Supp. 2d 861 (S.D. Tex. 2004). Subsequently, the parties reached a settlement that provided for the payment of $30.75 million in cash to the Plan. On October 29, 2004, Judge Sim Lake preliminarily approved the settlement.

*In re Global Crossing, Ltd. ERISA Litigation*, 02 Civ. 7453 (GEL) (S.D.N.Y.). The *Global Crossing ERISA Litigation* settlement provided for, among other relief, the payment of $79 million to the Plan. Judge Gerald Lynch approved the settlement on November 10, 2004. *See In re Global Crossing ERISA Litigation*, No. 02 Civ. 7453, 2004 WL 3019763, *1 (S.D.N.Y. Dec. 29, 2004).

*In re Household International, Inc., ERISA Litigation*, No. 02 C 7921 (N.D. Ill.). On March 31, 2004, Judge Samuel Der-Yeghiayan denied, in part, defendants' motions to dismiss. *See Cokenour v. Household Int'l Inc.*, No. 02-7921, 2004 WL 725973 (N.D. Ill. Mar. 31, 2004). The case subsequently settled for $46.5 million in cash to the Plan. The court approved the settlement on November 22, 2004. *See In re Household International, Inc., ERISA Litigation*, No. 02 C 7921 (N.D. Ill. Nov. 22, 2004).

*In re Providian ERISA Litigation*, No. C-01-5027-CRB (N.D. Cal.). The Providian ERISA Litigation settlement provided for structural changes to the Plan, as well as the payment of $8.6 million in cash to the Plan. The court approved the settlement on June 30, 2003. *See In re Providian ERISA Litigation*, No. C-02-1001 (CRB), 2003 WL 22005019, *1 (N.D. Cal. June 30, 2003).

  **ERISA LITIGATION GROUP**

*Pending ERISA Cases*

In addition to the cases listed above, Keller Rohrback has been appointed lead or co-lead counsel in numerous other ERISA 401(k) and ESOP breach of fiduciary duty class actions. Through these cases, Keller Rohrback has again and again demonstrated its expertise in ERISA law, and its ability to vigorously, creatively, and successfully pursue employees' rights under ERISA. Based on our success in these and the other cases cited above, there is now a well-established body of law that validates the central claims in ERISA breach of fiduciary duty company stock cases. Keller Rohrback's leading role in the development of this law is unique and distinguishes the firm from any other in the country. Notable pending cases include:

*In re BellSouth Corporation ERISA Litigation*, No. 02CV2440 (N.D. Ga.). On March 4, 2004, Judge Forrester denied defendants' motion to dismiss. *See Hill v. BellSouth Corp.*, 313 F. Supp. 2d 1361.

*In re CIGNA Corp. ERISA Litigation*, No. 03-CV-714 (E.D. Pa.).

*In re CMS Energy ERISA Litigation*, No. 02-72834 (E.D. Mich.). On March 31, 2004, Judge Steeh denied defendants' motions to dismiss. *See In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898 (E.D. Mich. 2004). On December 27, 2004, granted plantiffs' motion for class certification. See *In re CMS Energy ERISA Litig.*, 225 F.R.D. 539 (E.D. Mich. 2004).

*In re Electronic Data Systems Corp. Securities and "ERISA" Litigation*, No. MDL-1512 (E.D. Tex.). On February 2, 2004, Judge Davis denied defendants' motions to dismiss. *See In re Elec. Data Sys. Corp. ERISA Litig.*, 305 F. Supp. 2d 658 (E.D. Tex. 2004).

*In re Goodyear Tire & Rubber Company ERISA Litigation*, No. 5:03CV02180 (N.D. Ohio).

*In re HealthSouth ERISA Litigation*, No. CV-03-BE-1700-S (N.D. Ala.).

*In re Marsh ERISA Litigation*, No. 04-CV-8157 (S.D.N.Y.).

*In re Merck & Co., Inc., Securities, Derivative & "ERISA" Litigation*, No. 30:05-CV-01151 (D.N.J.).

*In re Mirant Corporation ERISA Litigation*, No. 1:03-CV-1027 (N.D. Ga.).

*In re Polaroid ERISA Litigation*, No. 03-CV-8335 (S.D.N.Y.).



 

**KELLER·ROHRBACK**
L A W   O F F I C E S

**ERISA LITIGATION GROUP**

*In re Southern Company ERISA Litigation*, No. 1:04-CV-1912-RWS (N.D. Ga.).

*In re Syncor ERISA Litigation*, No. 03 CV 2446 (LGB) (C.D. Cal.). On August 23, 2004, Judge Baird denied, in part, defendants' motions to dismiss. *See In re Syncor ERISA Litig.*, No. 03 CV 2446 (LGB) (C.D. Cal. Aug. 23, 2004).

*In re Williams Companies ERISA Litigation*, No. 02-CV-153-H (M) (N.D. Okla.). On July 14, 2003, Judge Holmes denied, in part, defendants' motions to dismiss. *See In re Williams Companies ERISA Litig.*, 271 F. Supp. 2d 1328 (N.D. Okla. 2003).

*In re WorldCom, Inc. ERISA Litigation*, No. 02 Civ. 4816 (DLC) (S.D.N.Y.). Keller Rohrback is pursuing claims against the WorldCom Plan Trustee and Scott Sullivan in connection with the enormous losses suffered by Plan participants resulting from the Plan fiduciaries' failure to prudently and loyally manage the Plans' investment in WorldCom Stock. On October 4, 2004, Judge Cote granted plaintiffs' motion for class certification. *See In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2211664 (S.D.N.Y. Oct. 4, 2004). Trial is set for May 2, 2005.

*In re Xerox ERISA Litigation*, No. 02-CV-1138 (AWT) (D. Conn.).

*Marvin Overby, et al. v. Tyco International Ltd., et al.*, No. 02-CV-1357-B (D.N.H.).

*Zafarano, Jr., et al. v. Nortel Networks*, No. 3:01-1593 (M.D. Tenn.)

# Representative Securities Fraud Cases

In addition to its work in the ERISA arena, Keller Rohrback also has served as lead or co-lead counsel in a number of securities fraud class action cases where it has represented purchasers of securities.

*Getty v. Harmon, et al.*, No. C98-0178 (W.D. Wash.). This securities class action was brought on behalf of all people who purchased unregistered securities from defendants. The suit was settled in favor of the plaintiffs in the amount of $7 million.

*IKON Securities Litigation*, No. 98 CV-5483 (E.D. Pa.). Keller Rohrback served as co-lead counsel representing the City of Philadelphia and eight other lead plaintiffs. Class Counsel achieved the highest securities fraud settlement in the history of the Court by settling with defendant IKON Office Solutions, Inc. for $111 million.

*In re 2TheMart.Com Inc. Securities Litigation*, No. 99-1127 DOC (ANx) (S.D. Cal.). Keller Rohrback was appointed co-lead counsel in this securities fraud class action and achieved a settlement of $2.7 million.

 

**KELLER·ROHRBACK**
L A W   O F F I C E S                                   **ERISA LITIGATION GROUP**

*In re Amedisys Securities Litigation*, No. 01-703 (M.D. La.).

*In re Anicom Inc. Securities Litigation*, No. 00 C 4391 (N.D. Ill.). Keller Rohrback was one of three counsel representing the State of Wisconsin Investment Board in this securities fraud class action. Counsel achieved settlements on behalf of the class and other parties in excess of $39 million.

*In re Scientific-Atlanta, Inc. Securities Litigation*, No. 1:01-CV-1950-RWS (N.D. Ga.).

*In re WorldPort Communications, Inc.*, No. 1-99-CV-1817 (N.D. Ga.). Keller Rohrback played an active role in the prosecution of this securities fraud class action and secured settlements totaling $5,100,000.

*Lasky v. Brown (United Companies Securities Litigation)*, No. CV99-1035-B-M2 (M.D. La.). Keller Rohrback served as co-lead counsel in this securities fraud class action, and secured a $20.5 million settlement in this case.

## Other Representative Cases

*Erickson, et al. v. Bartell Drug Co.*, No. C00-1213L (W.D. Wash.). This landmark case, won on summary judgment, established that a private employer excluding prescription contraception services from an otherwise extensive health insurance plan commits discrimination under Title VII of the Civil Rights Act of 1964, as amended by the Pregnancy Discrimination Act.

*Ferko, et al v. NASCAR*, No. 4:02-CV-50 (E.D. Tx). Keller Rohrback was counsel for plaintiff in a lawsuit that charged NASCAR with breach of contract and unlawful monopolization. The suit also claims that NASCAR and another defendant, International Speedway Corporation ("ISC"), have engaged in a conspiracy to restrain trade in violation of the antitrust laws. Keller Rohrback represented the shareholders of Speedway Motorsports, Inc. ("SMI"), a publicly traded company that owns six motorsports facilities, including Texas Motor Speedway ("TMS"). In May 2004, the parties reached a settlement agreement, pursuant to which, among other things, SMI agreed to purchase North Carolina Speedway from ISC for $100.4 million. The settlement was approved by the United States District Court for the Eastern District of Texas.

*In re Carpet Antitrust Litigation*, No. 1:95-CV-1494 (N.D. Ga.). This antitrust class action alleged a nationwide price-fixing conspiracy among the manufacturers and sellers of polypropylene carpet and was brought on behalf of purchasers of such carpet. Plaintiffs negotiated a successful settlement.

 

# KELLER·ROHRBACK
### L A W   O F F I C E S

# ERISA LITIGATION GROUP

*In re Commercial Tissue Products Antitrust Litigation*, MDL Docket No. 97 MDL 1189 (N.D. Fla.). This antitrust case involved allegations of a nationwide price-fixing conspiracy among the major manufacturers of facial tissue, toilet paper, paper towels, and related paper products used in "away from home" settings, such as office buildings, hotels, restaurants, and schools. Parties entered into a settlement agreement valued at $56.2 million in cash and coupons.

*In re Diet Drugs (Phentermine/ Fenfluramine/Dexfenfluramine) Products Liability_Litigation*, MDL 1203 (E.D. Pa.). These cases involve numerous plaintiffs in Washington and other states who seek medical monitoring and/or personal injury compensation in relation to their ingestion of the prescription diet drugs Pondimin and Phentermine (i.e. Fen-Phen) or Redux. Keller Rohrback serves as Class Counsel for a certified medical monitoring class of Washington patients who ingested these diet drugs. In addition, the federal court Judge in Philadelphia who supervised the national settlement and litigation appointed Lynn Lincoln Sarko, Keller Rohrback's managing partner, to serve as a member of the MDL 1203 Plaintiffs' State Liaison Counsel Committee. Keller Rohrback has represented, and continues to represent numerous plaintiffs in pursuing individual personal injury claims through the American Home Products' Nationwide Class Action Diet Drug Settlement or through individual lawsuits brought in state or federal courts.

*In re the Exxon Valdez*, No. A89-095 (D. Alaska). Keller Rohrback represents fishermen, Alaska natives, municipalities, and other injured plaintiffs in this mass tort lawsuit arising out of the March 24, 1989, oil spill in Prince William Sound, Alaska. After a three-month jury trial, plaintiffs obtained $5 billion in punitive damages – the largest punitive damages verdict in U.S. history. Keller Rohrback played a leadership role during discovery and at trial, and was chosen to serve as Administrator of both the Alyeska and Exxon Qualified Settlement Funds. Litigation, including an appeal, continues.

*In re First USA Bank*, No. C97-1482D 9 (W.D. Wash.). This class action was filed on behalf of owners of credit cards issued by First USA Bank who signed up for "introductory rate" credit cards that were subject to false and deceptive "repricing." A settlement in this class action resulted in an automatic depricing benefit of over $50 million, plus over $36 million in benefits from other settlement-related offers.

*In Re Linerboard Antitrust Litigation*, MDL Docket No. 1261 (E.D. Pa). The class actions in this litigation recently were resolved with the recovery of more than $202 million for the benefit of a class of businesses that purchased corrugated boxes and sheets. The combined settlements are the largest ever obtained in a price fixing class

 

**KELLER·ROHRBACK**
L A W   O F F I C E S

# ERISA LITIGATION GROUP

action in the Eastern District of Pennsylvania and among the largest obtained in such a case nationally.

***In Re Monosodium Glutamate Antitrust Litigation***, MDL No. 00-1328 (D. Md.). Keller Rohrback represents the Plaintiff Class in this case pending in the United States District Court for the District of Minnesota. So far, $124 million has been recovered for the benefit of a class of businesses which purchased food flavor enhancers from suppliers in the U.S., Japan, Korea, and Taiwan. Businesses which participated in the recovery received nearly 200% of the amounts they were overcharged.

***In Re Microsoft Corp. Antitrust Litigation***, MDL 1332 (D. of Maryland). Keller Rohrback served on the Executive Committee of plaintiffs' counsel in this class action challenging Microsoft's monopolistic practices. A class of direct purchasers of operating system software achieved a settlement of $10.5 million in the United States District Court for the District of Maryland.

***In re Phillip Morris Securities Litigation***, No. 94 Civ. 1494 (TCP) (E.D.N.Y.). This shareholder derivative class action alleged misrepresentations regarding various inventory and trade loading practices used to distort the timing of sales. The plaintiff class in this and a related case received in excess of $100 million in settlement.

***Salloway v. Malt-O-Meal Company***, No. PI-98-008931 (State of Minnesota, Hennepin County District Court). This nationwide product liability class action was brought on behalf of all people who consumed defendant's salmonella-contaminated cereal. Plaintiffs negotiated a successful settlement.

***Wholesale Vitamins Price Fixing***, Case No. 00-631-CIV (S.D. Fla.). Keller Rohrback played an extensive role in trial preparation in this case, one of the largest and most successful antitrust cases in history. Chief Judge Thomas Hogan of the United States District Court for the District of Columbia certified two classes of businesses who directly purchased bulk vitamins were overcharged as a result of a ten year global price-fixing and market allocation conspiracy. Through settlement and verdict, recoveries were achieved, including four major settlements between certain vitamin defendants and Class Plaintiffs, including a landmark partial settlement of $1.1 billion.

 

**KELLER·ROHRBACK**
L A W   O F F I C E S

# BIOGRAPHIES

## *Lynn Lincoln Sarko*



Lynn Lincoln Sarko, the managing partner of Keller Rohrback L.L.P. since 1991, leads the firm's nationally recognized Complex Litigation Group. An accomplished trial lawyer, he regularly serves as lead counsel in multi-party and class actions involving ERISA, antitrust, securities, and environmental issues. Mr. Sarko first came to Seattle for a federal clerkship. He returned after serving as an Assistant U.S. Attorney in Washington D.C. Courts and professional organizations have honored him for his work in high profile public cases. After serving as trial counsel in the Exxon Valdez Oil Spill case, which resulted in a $5 billion punitive damages verdict, he was appointed by the court as Administrator for all funds recovered. Currently, Mr. Sarko serves as lead or co-lead counsel in several leading ERISA cases, including the largest and most complex – the *Enron*, *WorldCom*, and *Global Crossing* cases, and numerous other 401(k) and ESOP cases including: *In re Lucent Technologies, Inc. ERISA Litigation*; *In re Xerox ERISA Litigation*; *In re Dynegy, Inc. ERISA Litigation*; *In re Williams Cos. ERISA Litigation*; *In re BellSouth Corp. ERISA Litigation*; *In re Household International, Inc. ERISA Litigation*; *In re Polaroid ERISA Litigation*; and *In re Marsh ERISA Litigation*.

Mr. Sarko's ERISA litigation practice has focused on prosecuting matters raising sophisticated 401(k) and ESOP plan issues; preemption issues; fiduciary breach issues; fiduciary misrepresentation claims; imprudent investment claims; blackout period and mapping violations; plan asset diversification issues; prohibited transaction allegations; cash balance litigation; directed trustee litigation; Section 404(c) defenses; and ERISA class action issues. He regularly appears in federal courts from coast to coast, maintaining an active national ERISA litigation practice.

In addition to his work as lead or co-lead counsel in leading ERISA cases, Mr. Sarko has previously prosecuted a variety of class actions involving high profile matters including the Exxon Valdez Oil Spill, the Microsoft civil antitrust case, Vitamins price-fixing cases, the MDL *Fen/Phen Diet Drug Litigation*, as well as notable public service lawsuits such as *Erickson v. Bartell Drug Co.*, establishing a woman's right to prescription contraceptive health coverage. Aided in part by his M.B.A. in accounting, Mr. Sarko has also litigated numerous complex cases involving financial and accounting fraud, including actions against several of the nation's largest accounting and investment firms.

*Continued on next page*

*All other bios listed alphabetically*



www.ERISAfraud.com                    www.SeattleClassAction.com

**KR**

 

**KELLER·ROHRBACK**
LAW OFFICES

# BIOGRAPHIES

## Lynn Lincoln Sarko *(continued)*

### Education and Admissions
Mr. Sarko received his undergraduate, M.B.A. and law degrees at the University of Wisconsin, where he served as the editor-in-chief of the law review and was selected by the faculty as the outstanding graduate of his class. He is admitted to practice in Washington State; Wisconsin; the District of Columbia; United States District Courts in Arizona, Colorado, D.C., Washington and Wisconsin; United States Courts of Appeal for the Fourth, Seventh, Ninth, and Tenth Circuits, and for the District of Columbia; as well as the United States Supreme Court.

### Memberships
He is a member of the King County Bar Association, the Washington State Bar Association, and the American Bar Association.

## Laurie Ashton
Laurie Ashton is a member of Keller Rohrback P.L.C., based in Phoenix, Arizona. She currently serves in a leadership positions in the *Xerox Corporation ERISA Litigation*, *Household International, Inc. ERISA Litigation*, and the *Williams Companies ERISA Litigation*. Her practice emphasizes bankruptcy, commercial, ERISA, and environmental litigation. Ms. Ashton has been very active in the Arizona State Bar, having served on the Ethics Committee for six years, and frequently lectures on bankruptcy issues and other matters. Additionally, Ms. Ashton has taught semester courses in Advanced Chapter 11 Bankruptcy and Lawyering Theory and Practice at the ASU College of Law, and for several years running, has been a guest lecturer on Chapter 11 at Harvard Law School. She is 
the co-author of *Arizona Legal Forms: Limited Liability Companies and Partnerships*, 1996-2002. Following law school Ms. Ashton served as law clerk for the Honorable Charles G. Case, U.S. Bankruptcy Court, for the District of Arizona for two years. Ms. Ashton graduated from Arizona State University College of Law in 1990, where she has twice returned as an Adjunct Professor to teach semester courses in Lawyering Theory and Practice and Advanced Chapter 11. Ms. Ashton is admitted to practice in Arizona and Colorado.

 

**BIOGRAPHIES**

### Gretchen Freeman Cappio

Gretchen Freeman Cappio is a member of Keller Rohrback's Complex Litigation Group practicing in the areas of class action & complex litigation, consumer protection, and employment litigation. She and her co-counsel have represented the plaintiff class in several cutting-edge complex cases, including *Erickson v. Bartell Drug Co.*, 141 F.Supp.2d 1266 (W.D. Wash. 2001), in which the Honorable Robert S. Lasnik ruled that an employer violated Title VII of the Civil Rights Act when its coverage failed to cover prescription contraceptives on an equal basis as other prescription drugs. Ms. Cappio graduated from the University of Washington School of Law in 1999 where she served as the Executive Comments Editor of *The Pacific Rim Law & Policy Journal.*  She earned her B.A. degree *magna cum laude* from Dartmouth College, where she graduated Phi Beta Kappa and with honors in Religion. Ms. Cappio is an active member of the Washington State Bar Association.

### T. David Copley

T. David Copley's practice is focused on class action and other complex litigation, including mass tort, antitrust, breach of fiduciary duty, securities, employment and consumer protection cases. Mr. Copley was one of those named 1995 Trial Lawyer of the Year for his successful work in the Exxon Valdez Oil Spill Litigation. He graduated from Northwestern University School of Law in 1984, where he served as an editor of the *Northwestern University Law Review*. He earned his B.A. at the University of Iowa in 1981, taking his degree with Distinction and Honors in political science and English and as a member of Phi Beta Kappa. Mr. Copley is admitted to practice in the states of Washington and Arizona, in the United States District Courts of Western Washington, Eastern Washington, Arizona, the Northern District of California, the  United States Court of Appeals for the Ninth Circuit, and the United States Supreme Court.

 

**KELLER·ROHRBACK**
L A W   O F F I C E S

## BIOGRAPHIES

### Juli Farris Desper

Juli Desper is a member of Keller Rohrback L.L.P.'s complex litigation group. Her practice focuses on securities fraud, breach of fiduciary duty, and antitrust litigation in state and federal courts. She has made significant contributions in cases such as *In Re Catfish Antitrust Litigation*, *IKON Securities Litigation*, *Anicom Securities Litigation*, *United Companies Securities Litigation* and *In re Worldcom ERISA Fraud Litigation*. Prior to joining Keller Rohrback in 1991, Ms. Desper clerked for Judge E. Grady Jolly of the Fifth Circuit of the United States Court of Appeals and practiced law at the Washington, D.C. office of Sidley & Austin (now Sidley, Austin, Brown & Wood). She earned her B.A. in English and J.D. from Stanford University, where she was a Note Editor of the *Stanford Law Review*. Ms. Desper is admitted to practice in the states of Washington and California and the District of Columbia.



### Raymond J. Farrow

Ray Farrow's practice focuses on complex litigation with an emphasis on antitrust, securities law, and ERISA litigation. Mr. Farrow graduated with high honors from the University of Washington School of Law in 2001 where he was Articles Editor of the *Washington Law Review*. Prior to law school, Mr. Farrow was a member of the Economics faculty at Seattle University, the University of Washington, and Queen's University in Canada. He earned his B.A. in Economics from the University of Manchester in the U.K. and M.A. degrees in Economics from the University of Essex (U.K.) and Princeton University. Mr. Farrow is licensed to practice in Washington State.



www.ERISAfraud.com    www.SeattleClassAction.com

KR

 

**BIOGRAPHIES**

## Gary Gotto



Gary Gotto is a member of Keller Rohrback P.L.C., based in Phoenix, Arizona. Mr. Gotto currently serves in leadership positions in the *Enron ERISA Litigation, CMS Energy Corp. ERISA Litigation, Dynegy ERISA Litigation, Global Crossing ERISA Litigation,* and the *WorldCom ERISA Litigation* and has held a leadership and management positions in both *Whetman v. IKON Office Solutions, Inc. Securities and ERISA Litigation.* In addition to his ERISA 401(k) class action expertise, Mr. Gotto has expertise in complex Chapter 11 bankruptcy litigation and issues, which has proved invaluable in cases in which defendants in ERISA 401(k) litigation are also debtors in bankruptcy, including the *Enron ERISA Litigation, WorldCom ERISA Litigation,* and *Global Crossing, Ltd. ERISA Litigation.* He chaired the Arizona State Bar Subcommittee on Revising the Limited Partnership Act and co-authored *Arizona Legal Forms: Limited Liability Companies and Partnerships.* Mr. Gotto speaks and teaches regularly on a number of topics, including an annual real estate bankruptcy case study presented at Harvard Law School. He earned his J.D. from Arizona State University *summa cum laude,* where he was a member of the Order of the Coif. and the Special Projects Editor of the *Arizona State Law Journal* from 1981-1982. Mr. Gotto received his B.A. from the University of Pennsylvania *cum laude.* He is admitted to practice in the state of Arizona.

## Tobias J. Kammer



Tobias Kammer's practice focuses on class action ERISA and consumer protection litigation. Prior to joining the firm, Mr. Kammer clerked for the Honorable Marlin Appelwick at the Washington State Court of Appeals. Mr. Kammer graduated from the University of Washington School of Law in 2003. While in law school, he served as the Executive Notes and Comments Editor of the *Washington Law Review* and was a member of the Moot Court Honor Board. He earned a B.A. in Near Eastern Languages and Civilizations, with College Honors, and a B.A. in English, with College Honors, from the University of Washington in 1999. He graduated *cum laude* in both degrees and is a member of Phi Beta Kappa. Mr. Kammer is admitted to practice in the state of Washington.



 

**BIOGRAPHIES**

## Ron Kilgard

Ron Kilgard is of member of Keller Rohrback P.L.C., based in Phoenix, Arizona. Most notable among the many cases he has litigated is the *Whetman v. IKON Office Solutions, Inc. ERISA Litigation*, MDL No. 1318 (E.D. Pa.), in which Mr. Kilgard served as one of the lead attorneys. The *IKON ERISA Litigation* was one of the leading ERISA 401(k) breach of fiduciary duty class actions in the country, providing landmark published decisions on class certification and other central issues pertaining to ERISA 401(k) breach of fiduciary duty class action litigation. The ERISA issues in the *IKON Securities Litigation*, which were actively litigated for more than three years in the United States District Court for the Eastern District of Pennsylvania, were fundamentally the same as those presented in subsequent ERISA 401(k)  litigation against IKON, involving the alleged imprudence of investments in employer securities in the same company's 401(k) plan and materially misleading communications with plan participants related thereto. Mr. Kilgard currently serves in leadership positions in the *Enron ERISA Litigation* and *BellSouth ERISA Litigation*. In addition to his ERISA 401(k) class action expertise, Mr. Kilgard has expertise in complex Chapter 11 bankruptcy litigation and issues, which has proved invaluable in ERISA cases in which defendants also are debtors in bankruptcy.

Mr. Kilgard is a Phoenix native. He received an undergraduate degree from Harvard College and a Master's degree from Harvard Divinity School, concentrating in Hebrew Bible and other ancient Near Eastern languages and literatures (Babylonian-Assyrian, Egyptian, etc.), before returning home to Arizona for law school. Mr. Kilgard graduated from Arizona State in 1979 as the Editor-In-Chief of the law review and was selected by faculty as the outstanding graduate of his class. Upon earning his law degree, Mr. Kilgard clerked for the Hon. Mary Schroeder on the Ninth Circuit Court of Appeals before entering private practice. In over twenty years of practice, Mr. Kilgard has litigated a broad array of commercial and personal injury/wrongful death cases for both plaintiffs and defendants, including construction cases for Bechtel Corporation, personal injury/wrongful death cases involving AIDS-tainted blood, insurance bad faith cases, and insurance receivership cases. Mr. Kilgard is asked by courts to serve as a special master in complex or contentious cases requiring individualized management. In recent years he has been extensively involved in litigating ERISA breach of fiduciary duty class action cases, especially those involving issues of company stock. Mr. Kilgard is a frequent speaker at seminars, both for lawyers and judges.



  **BIOGRAPHIES**

## Cari Campen Laufenberg

Cari Campen Laufenberg's practice focuses on ERISA, breach of fiduciary duty litigation, and consumer fraud litigation. She graduated from the University of Washington School of Law in 2003. Prior to law school Ms. Laufenberg earned a Masters of Public Administration from the University of Washington. She received her B.A. from the University of California, San Diego. Ms. Laufenberg is a member of the King County Bar Association, the American Bar Association, Washington Women Lawyers, and is a member of the Board of Directors of King County Washington Women Lawyers. She is licensed to practice in Washington State.



## Elizabeth A. Leland

Beth Leland's practice focuses on ERISA, securities fraud, and antitrust litigation. She is actively involved in, among other cases, the *Dynegy, Inc. ERISA Litigation*, *Syncor ERISA Litigation*, *BellSouth Corporation ERISA Litigation*, *Electronic Data Systems Corp. ERISA Litigation* and the *CIGNA Corp. ERISA Litigation*. Ms. Leland is an active member of the King County, Washington State, and American Bar Associations, including the American Bar Association's Section of Labor & Employment Law. She earned her B.A. in Business Administration with concentrations in Finance and Business Economics from the University of Washington and graduated *cum laude* from the University of Puget Sound School of Law in 1993. Ms. Leland is admitted to practice in Washington State and Federal Courts, as well as the Ninth and other Circuits across the country.



KR

 

# BIOGRAPHIES

## *Tana Lin*

Tana Lin's practice focuses on employment and ERISA litigation. Prior to joining Keller Rohrback's class action and complex litigation group, Ms. Lin practiced as a civil rights attorney and criminal defense lawyer. She began her legal career as a trial attorney with the Public Defender Service for the District of Columbia. She later became a senior trial attorney with the Employment Litigation Section of the Civil Rights Division of the United States Department of Justice and, subsequently, the Chicago District Office of the United States Equal Employment Opportunity Commission. Ms. Lin has prosecuted employment discrimination cases against governmental entities such as the Louisiana State Police and private corporations such as Wal-Mart. Ms. Lin was also the litigation coordinator for the Michigan Poverty Law Program  where she developed and implemented impact projects to address systemic problems affecting the poor on issues such as access to public benefits and appropriate educational services. She also served as a co-mediator for federal agency employee disputes through the Interagency Project on Sharing Neutrals. Ms. Lin received her A.B. with Distinction in Government from Cornell University in 1988; she earned her J.D. from New York University School of Law in 1991, where she was a Root-Tilden-Snow Scholar. She is admitted to practice in the District of Columbia, Illinois, Michigan, and Washington.

 

**BIOGRAPHIES**

## Derek W. Loeser

Derek Loeser practices in the firm's class action litigation group with an emphasis on ERISA and breach of fiduciary duty litigation. He is actively involved in, among other ERISA cases, *Enron*, *WorldCom*, and *Marsh & McLennan*, and has a leadership role in the *CMS Energy Corp. ERISA Litigation*, the *HealthSouth Corp. ERISA Litigation*, the *Polaroid ERISA Litigation*, and the *Mirant Corp. ERISA Litigation*. Following law school, Mr. Loeser was a trial attorney in the Employment Litigation Section of the Civil Rights Division of the United States Department of Justice in Washington, D.C. He also clerked for the Hon. Michael R. Hogan, United States District Court, District of Oregon. Mr. Loeser received his B.A. in American Literature from Middlebury College in 1989, graduating *summa cum laude*, with highest departmental  honors, and as a member of Phi Beta Kappa. He earned his J.D. in 1994 with honors from the University of Washington School of Law. Mr. Loeser is admitted to practice in Washington, the United States District Courts for the Western and Eastern Districts of Washington, the Ninth Circuit Court of Appeals, and is a member of American Bar Association's Section of Labor & Employment Law and the Employee Benefits Committee as a Plaintiff Attorney.

## Jennefer A. Pucylowski

Jennefer Pucylowski's practice focuses on antitrust, ERISA fraud, products liability, and personal injury litigation. Prior to joining Keller Rohrback Ms. Pucylowski prosecuted criminal cases at the Johnson County Attorney's office and engaged in extensive litigation and trial work for the state of Florida. She received her law degree with honors in 1997 from the University of Iowa College of Law. Ms. Pucylowski earned her B.A., *cum laude*, from Florida State University. She is admitted to practice in the States of Washington and Florida.



 

**KELLER·ROHRBACK**
L A W   O F F I C E S

# BIOGRAPHIES

## Erin M. Riley

Erin Riley's practice focuses on ERISA and breach of fiduciary duty litigation. Ms. Riley graduated *cum laude* from the University of Wisconsin School of Law in 2000, where she was a managing editor of the *Wisconsin Law Review*. She received her B.A. in French and History from Gonzaga University, where she graduated *cum laude* in 1992. Ms. Riley is licensed to practice in both Washington and Wisconsin, and is a member of the American Bar Association's Section of Labor & Employment Law and the Employee Benefits Committee as a Plaintiff Attorney.



## Britt L. Tinglum

Britt Tinglum is a partner at Keller Rohrback L.L.P. and has held a leadership role in several nation-wide class actions, including *In re Ikon Office Solutions, Inc.* and *Lucent Technologies, Inc. ERISA Litigation*, in which her firm was appointed Co-Lead Counsel. Ms. Tinglum is also actively engaged in the prosecution of a variety of other complex class actions, including antitrust and consumer fraud and accounting fraud. She received both her undergraduate and J.D. from the University of Wisconsin.



KR

 **KELLER·ROHRBACK** 
L A W   O F F I C E S

## BIOGRAPHIES

### *Margaret E. Wetherald*

Margie Wetherald is a partner of Keller Rohrback L.L.P. and serves on the firm's executive committee. Throughout her practice, Margie has handled complex litigation in multiple state and federal jurisdictions with a concentration on commercial insurance coverage, breach of fiduciary duty, and class action litigation. Margie has also handled mass tort litigation involving transmission of AIDS to hemophiliacs through blood products, exposure to contaminated groundwater and hepatitis. She graduated from Cornell Law School in 1983. Ms. Wetherald taught at the Columbus School of Law at Catholic University in Washington, D.C. from 1983 to 1985. She received her undergraduate degree from Mount Holyoke College *cum laude* in 1980 and as a member of Phi Beta Kappa. Margie has practiced in Seattle since 1985 with two years in Washington, D.C. from 1992–1994. She is admitted to practice in the United States Supreme Court, the United States Court of Appeals for the Ninth Circuit, the United States District Courts for Eastern and Western Washington and in the State Courts in Washington and Oregon.




www.ERISAfraud.com                www.SeattleClassAction.com

KR

 

**BIOGRAPHIES**

## *Amy Williams-Derry*

Amy Williams-Derry joined Keller Rohrback's class action and complex litigation group in 2005 with several years of litigation experience. This experience includes intellectual property, employment, securities, consumer, real property, and corporate disputes, as well as federal court litigation on resource issues involving water quality and water rights, forest practices, endangered species, and toxic substances. Amy has litigated cases at both the trial and appellate levels, and has successfully represented clients in mediation and arbitration settings, including before the National Labor Relations Board, National Association of Securities Dealers, and New York Stock Exchange.



 

# BIOGRAPHIES

**Additional Keller Rohrback attorneys working with the ERISA Litigation Group:**

| | | |
|---|---|---|
| Ian S. Birk | Daniel S. Friedberg | Amy Phillips |
| Stephen R. Boatwright* | Glen P. Garrison | Lorraine Lewis Phillips |
| Karen E. Boxx | Mark A. Griffin | David J. Russell |
| John H. Bright | Amy N. L. Hanson | Mark D. Samson* |
| Jason P. Chukas | Irene M. Hecht | Frederick W. Schoepflin |
| Kathleen Kim Coghlan | Scott C. Henderson | William C. Smart |
| Alicia Corbett* | Stephen J. Henderson | Thomas A. Sterken |
| Claire Cordon | Benjamin J. Lantz | Benjamin J. Stone |
| Rob J. Crichton | Heidi Lantz | Laurence R. Weatherly |
| Maureen M. Falecki | David R. Major | Michael Woerner |
| Harold Fardal | John Mellen | Benson D. Wong |

*Admitted to practice in the State of Arizona only.

