**Hearing Date and Time: February 9, 2006 at 10:00 a.m.**

VARNUM, RIDDERING, SCHMIDT
 & HOWLETT LLP
333 Bridge Street, N.W., Ste. 1700
Grand Rapids, MI 49504
Telephone: (616) 336-6827
Michael S. McElwee (P36088)

DICONZA LAW, P.C.
630 Third Avenue – Seventh Floor
New York, New York 10017
Telephone: (212) 682-4940
Gerard DiConza (GD 0890)

*Co-counsel for Furukawa Electric North America ADP*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------------x
In re                                                                   :
                                                                        :    Chapter 11
DELPHI CORPORATION, *et al.*,                                           :
                                                                        :    Case No. 05-44481 RDD
                        Debtors.                                        :
                                                                        :    (Jointly Administered)
                                                                        :
------------------------------------------------------------------------x


**REPLY OF FURUKAWA ELECTRIC NORTH AMERICA APD**
**TO DEBTORS' OBJECTION TO MOTION FOR RELIEF**
**FROM AUTOMATIC STAY TO PERMIT SETOFF OF CLAIMS**


TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

      Furukawa Electric North America ADP ("Furukawa"), by and through its counsel, submits this reply to the Objection of Delphi Corporation and its affiliated debtors and debtors in possession (collectively, the "Debtors") to Furukawa's Motion dated December 15, 2005 for an order granting it relief from the automatic stay to permit Furukawa to setoff certain mutual pre-petition claims.

**Preliminary Statement**

1.  Furukawa seeks relief from the automatic stay to permit it to setoff a $2.8 million pre-petition payment (the "October 4 Payment") against its pre-petition invoices (all of which were open and outstanding at the time the October 4 Payment was made).  The Debtors object to the relief requested by Furukawa on the basis that the October 4 Payment was a fraudulent transfer and, accordingly, Furukawa is precluded from applying the October 4 Payment to its outstanding pre-petition invoices.

2.  The Debtors' argument should be rejected.  The Rand Energy Co. v. Del Mar Drilling Co., Inc. (In re Rand Energy Co.), 256 B.R. 712 (Bankr. N.D. Tex. 2000) decision, which is heavily relied upon by the Debtors, is inapposite.  In Rand Energy, the trade vendor did not have any outstanding or open invoices at the time it received the overpayment from the debtor.  Here, by contrast, the October 4 Payment was made at a time when Furukawa's outstanding invoices far exceeded the amount of the October 4 Payment and, accordingly, was made on account of antecedent debt and for value.

3.  Based on the foregoing, and for the reasons below, Furukawa's Motion should be granted and Furukawa should be allowed to setoff the October 4 Payment against its outstanding pre-petition claims against the Debtors.

**Reply**

*The October 4 Payment Was Made On Account Of Antecedent Debt*

4.  The Debtors' argument that Furukawa's receipt of the October 4 Payment is a fraudulent transfer is wrong.  The Debtors claim that they did not receive value on account of the October 4 Payment and rely on Rand Energy for the proposition that the October 4 Payment constitutes a constructive fraudulent transfer and fraudulent transfer claims may not be defeated

2

by setoff claims. The supplier in Rand Energy, however, had no pre-petition invoices to which to apply the overpayment when it was received. Instead, the supplier applied the overpayment to six post-petition invoices issued by the supplier to the debtor. See Rand Energy, 256 B.R. at 714. The court held that the overpayment was made at a time when the vendor was owed no money by the debtor and, accordingly, the debtor did not receive reasonably equivalent value. Id. at 716. Had there been sufficient pre-petition invoices, it would not have been a fraudulent transfer. The transfer of the October 4 Payment by the Debtors to Furukawa, by contrast, was made when pre-existing but unpaid invoices exceeded the October 4 Payment and were outstanding.

5. The starting point in determining whether the Debtors received "value" in exchange for the October 4 Payment is to examine the meaning of the term "value" as defined in section 548(d)(2)(A). "Value" is defined for purposes of section 548 of the Bankruptcy Code as "property, or satisfaction or securing of a present or *antecedent debt* of the debtor…." 11 U.S.C. § 548(d)(2)(A) (emphasis added).[1]

6. In In re United Energy Corp., 944 F.2d 589 (9th Cir. 1991), the court held that payments in satisfaction of past or present debts are "for value" for fraudulent transfer

---

[1] The term "antecedent debt" is not defined in the Bankruptcy Code. "Debt," however, is defined in the general definition section of the Bankruptcy Code as "liability on a claim." 11 U.S.C. § 101(12). "Claim" is defined as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or
> (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

11 U.S.C. § 101(5). The legislative history of the Bankruptcy Code evidences Congress' desire to provide an expansive definition of "claim". See H.R.Rep. No. 595, 95th Cong., 1st Sess. 309 (1977); see also Pennsylvania Dep't of Pub Welfare v. Davenport, 495 U.S. 552 (1990). The term "debt" should be read as being coextensive with the term "claim", Davenport, 495 U.S. at 558. Thus, it is plain that Congress intended "debt" and, therefore, "antecedent debt," to be construed broadly. See id.

3

purposes. Id. at 596; see also Telefest, Inc. v. VU-TV, Inc., 591 F. Supp. 1368, 1377 (D.C.N.J. 1984) (holding that where a transfer is supported by antecedent debt, the transferee may defend the transfer by merely pointing to the antecedent debt as consideration).

       7.      Here, upon transferring the October 4 Payment, the Debtors received value in the form of a reduction of the amount owed to Furukawa. The Debtors actually recognized the value when they applied the October 4 Payment to their books, reducing the amount owed to Furukawa. The Schedules of Assets and Liabilities filed by Delphi Automotive Systems LLC confirms that the Debtors applied the October 4 Payment to Furukawa's outstanding invoices. The pertinent section of the Debtors' Schedules of Assets and Liabilities reflecting Furukawa's reduced claim amount is annexed hereto as Exhibit "A".[2] Even if the Debtors did not apply the October 4 Payment on their books, the "securing" of an antecedent debt also constitutes "value" for purposes of section 548 of the Bankruptcy Code.

       8.      Based on the foregoing, it is clear that open and outstanding Furukawa invoices at the time the October 4 Payment was received constitute antecedent debt and receipt of the October 4 Payment by Furukawa cannot be considered a fraudulent transfer. Accordingly, the Debtors' argument that Furukawa cannot setoff the October 4 Payment because it is a fraudulent transfer should be rejected.

*The October 4 Payment Is Not Subject To Avoidance As A Preference*

       9.      Not only are the Debtors wrong that the October 4 Payment may be a fraudulent transfer, they are also wrong in their argument that the October 4 Payment could

---

[2] The Delphi Automotive Systems Schedule list Furukawa's claim at $2,519,727. If the Debtors had not applied the October 4 Payment, Delphi Automotive would have listed Furukawa's claim at approximately $5.35 million. Without application of the October 4 Payment, Furukawa's books and records reflect that $5,523,742 is due from Delphi Automotive.

4

arguably be a preferential transfer. The Debtors make this argument in a footnote to the Objection.

10. In King v. Fulbright & Jaworski, LLP (In re Koch), 224 B.R. 572 (Bankr. E.D. Va. 1998), during the ninety-day preference window, the debtor transferred to Fulbright & Jaworski, LLP his partnership interest in the law firm in partial satisfaction of the amounts owed to Fulbright. After the debtor filed his chapter 7 petition, his trustee brought suit against Fulbright seeking to avoid the transfer and recover the value of the debtor's partnership interest transferred. Fulbright argued that even if the transfer were preferential, the trustee could not recover because the transfer was subject to setoff. Analyzing Virginia law, the court concluded that Fulbright was entitled to setoff under that state's laws and, accordingly, Fulbright was allowed to setoff its claim and defeat the preference action asserted by the trustee.

11. Similarly, in U.S. Aeroteam Inc. v. Delphi Automotive Systems LLC (In re U.S. Aeroteam Inc.), 327 B.R. 852 (Bankr. S.D. Ohio 2005), Delphi (the non-chapter 11 debtor party in this case), argued that its setoff rights under Michigan law trumped the chapter 11 debtor's argument that Delphi's accounts payable owing to the debtor were preferential transfers. Id. at 861. The U.S. Aeroteam debtor argued that during the ninety days prior to its bankruptcy, Delphi accrued $444,214.36 in amounts owing to the debtor for the purpose of increasing its setoff rights and such increase was a preference. Furthermore, the debtor alleged that it was insolvent at the time Delphi accumulated its accounts payable. The Bankruptcy Court concluded that Delphi could setoff the accounts payable it received during the preference period as long as the requirements of section 553(a)(3) of the Bankruptcy Code were satisfied. Id. at 861.

12. Section 553(a)(3) of the Bankruptcy Code provides that a setoff is prohibited to the extent that:

5

      (3)    the debt owed to the debtor by such creditor was incurred by such creditor-

          (A)    after 90 days before the date of the filing of the petition;

          (B)    while the debtor was insolvent; and

          (C)    for the purpose of obtaining a right of setoff against the debtor.

11 U.S.C. § 553(a)(3).

      13.    Delphi did not dispute the build up of its accounts payable during the ninety days prior to the bankruptcy filing nor that it had the effect of increasing its setoff rights. Instead, Delphi disputed the debtor's insolvency. The court concluded that Delphi raised a valid triable issue of fact as to U.S. Aeroteam's insolvency and, accordingly, it could not determine whether section 553(a)(3) precluded Delphi's setoff until a trial on that issue. Id. at 869.

      14.    As in U.S. Aeroteam, the analysis of whether Furukawa may setoff the October 4 Payment should focus on section 553, not section 547 or 548 of the Bankruptcy Code. Similar to U.S. Aeroteam, both parties here had accounts payable owing to each other at the time the Debtors filed their chapter 11 petitions. Similar to Delphi in the U.S. Aeroteam case, Furukawa acquired its accounts payable (the October 4 Payment) during the ninety-day period prior to the Debtors' filing for bankruptcy. Unlike Delphi in U.S. Aeroteam, however, Furukawa did not acquire its accounts payable for the purpose of obtaining a right of setoff against the Debtors. The Debtors do not allege that Furukawa acquired the October 4 Payment for the purpose of obtaining a right of setoff and, in fact, the Debtors acknowledge that Furukawa obtained the October 4 Payment through oversight. See Objection ¶ 15.[3] Thus, Furukawa's valid setoff rights are not barred by section 553(a)(3) of the Bankruptcy Code.

---

[3] In addition to not being able to show that the debt was acquired for the purpose of effectuating a setoff, it is far from certain that the Debtors made the October 4 Payment to Furukawa while they were "insolvent".

6

*Furukawa Has A State Law Right To Setoff And Accordingly May Setoff Under Section 553*

15. The Debtors also seem to suggest that Furukawa does not have valid setoff rights under applicable Michigan law (Michigan law applies under the agreements between the Debtors and Furukawa). It is indisputable that under Michigan law, a valid right of setoff exists when two parties owe mutual debts to each other under either the same contract or different contracts. See U.S. Aeroteam, 327 B.R. at 862; Whispering Pines AFC Homes, Inc. v. Department of Treasury, 212 Mich. App. 545, 538 N.W.2d 452 (Mich. App. 1995); Siciliano v. Mueller, 2001 WL 1699801 *6 (Mich. App. Dec. 28, 2001) ("Generally, the setoff and the action must be between the same parties and in the same capacity or right, and the court can look through the transactions and nominal parties to determine the real parties in interest.").

16. Thus, Furukawa has the right under Michigan law to setoff the October 4 Payment against its open pre-petition claims against the Debtors.

17. The Debtors' argument that there is no mutuality hinges on their fraudulent transfer argument. As noted above, the transfer of the October 4 Payment to Furukawa is not a fraudulent transfer. The debts between the Debtors and Furukawa are "mutual," as they are owed by and between the same parties, and they are owed by the parties in their own right, not as fiduciaries or in some other capacity. See Packaging Ind. Group v. Dennison Mfg Co., Inc. (In re Sentinel Prods.), 192 B.R. 41, 45 (N.D.N.Y. 1996) (debts are "mutual" if "due to and from the same person in the same capacity").

*Section 502(d) Does Not Prohibit The Setoff And Furukawa Should Be Allowed To Setoff*

18. The Debtors argue that section 502(d) of the Bankruptcy Code disallows Furukawa's claims and, accordingly, Furukawa may not setoff the October 4 Payment against disallowed claims. Section 502(d) of the Bankruptcy Code provides:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee or a transfer avoidable under section 522(f), 522 (h), 544, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d).

19. As noted above, the Debtors do not have valid avoidance claims against Furukawa and, accordingly, section 502(d) does not apply. Moreover, even assuming, <u>arguendo</u>, that the Debtors may bring an avoidance action, section 502(d) may not be used offensively by the Debtors to bar application of the October 4 Payment. Although there is a split of authority on this issue, the majority view is that section 502(d) cannot be used to disallow a claim until preference or fraudulent transfer liability is first established and the defendant transferee fails and refuses to pay the preferential or fraudulent transfer judgment to the estate. If the defendant fails and refuses to pay the judgment, then a plaintiff could use section 502(d) to prevent a distribution on account of the defendant's claim against the estate. <u>See</u> <u>In re Southern Air Transport, Inc.</u>, 294 B.R. 293, 296 (Bankr. S.D. Ohio 2003); <u>In re Marketing Assocs. of America, Inc.</u>, 122 B.R. 367, 369 (Bankr. E.D. Mo. 1991). The minority view permits a plaintiff to allege preference liability and then use section 502(d) offensively to bar a distribution on account of the defendant's underlying claim.

8

20. Noteworthy, all of the cases relied on by the Debtors in the Objection involve situations where the debtors' estates had already commenced avoidance actions against the transferees. See Rand Energy Co. v. Del Mar Drilling Co., Inc. (In re Rand Energy Co.), 256 B.R. 712 (Bankr. N.D. Tex. 2000) (in context of fraudulent transfer action); In re O.P.M. Leasing Services, Inc., 35 B.R. 854, 868 (Bankr. S.D.N.Y. 1983) ("It is well established that a party will be unable to assert a setoff *where that party is being sued for fraudulent transfers*.") (emphasis added)[4]; In re Computrex Int'l, Inc., 334 B.R. 229 (Bankr. W.D. Ky. 2005) (finding that payment was not made in the ordinary course in the context of preference action brought against transferee).

21. Here, the Debtors have not commenced an avoidance action against Furukawa (and, as discussed above, have no valid basis to pursue an avoidance action against Furukawa). Since the Debtors have not commenced an avoidance action, the Debtors may not use section 502(d) to preclude Furukawa from applying the October 4 Payment to its pre-petition open invoices.

**[continued on the following page]**

---

[4] The O.P.M. Leasing decision stands for the proposition that one cannot setoff fraudulent transfer dollars against general unsecured debts. But, as the court in In re United Energy Corp., 944 F.2d 589, 596 (9th Cir. 1991) explained, if the dollars were not fraudulently transferred in the first place, a setoff is not a fraudulent transfer.

9

**WHEREFORE,** Furukawa respectfully requests that the Court deny the Objection, grant its Motion and grant it any other or additional relief the Court deems just and equitable.

Respectfully submitted,

Dated: February 8, 2006
New York, New York

DICONZA LAW, P.C.

By:  /s/ Gerard DiConza
Gerard DiConza (GD 0890)
630 Third Avenue, 7th Floor
New York, NY 10017
(212) 682-4940

VARNUM, RIDDERING, SCHMIDT
  & HOWLETT LLP
333 Bridge Street, N.W., Ste. 1700
Grand Rapids, MI 49504
(616) 336-6827
Michael S. McElwee (P36088)

*Co-counsel for Furukawa Electric North America ADP*

10

# **EXHIBIT A**