**EXHIBIT B**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                     :
         In re                          :         Chapter 11
                                       :
DELPHI CORPORATION, et al.,         :         Case No. 05-44481 (RDD)
                                       :
                    Debtors.      :         (Jointly Administered)
                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 105 AND 363 AUTHORIZING THE DEBTORS TO
IMPLEMENT A SHORT-TERM ANNUAL INCENTIVE PROGRAM AS PART OF A
KEY EMPLOYEE COMPENSATION PROGRAM

("KECP-AIP ORDER")

Upon the motion, dated October 13, 2005 (Docket No. 213), of Delphi

Corporation and certain of its domestic subsidiaries and affiliates, debtors and

debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order

under 11 U.S.C. §§ 105(a) and 363(b)(1) authorizing the Debtors to implement a key employee

compensation program (the "KECP Motion"), outstanding for 120 days, and the hearing of

which was adjourned from November 29, 2005, to January 5, 2006, to January 27, 2006, and to

February 10, 2006, to address issues raised by the Official Committee of Unsecured Creditors

(the "Creditors' Committee"); and upon the Declarations of Mark R. Weber, Nick Bubnovich,

and John D. Opie, sworn to February 1, 2006; and upon the Supplemental Declaration of Mark R.

Weber, sworn to February 7, 2006; and upon the Debtors' agreement with the Creditors'

Committee that the February 10, 2006 omnibus hearing be limited to the portion of the revised

annual incentive plan (the "Revised AIP") commencing on January 1, 2006, and continuing

through June 30, 2006 (the "Performance Period"); and upon the Debtors' agreement with the

Creditors' Committee to defer until the July 27, 2006, omnibus hearing all portions of the KECP

relating to future periods of the Revised AIP and the cash and equity components of the

emergence incentive compensation plan; and upon the Creditors' Committee's statement that all

of its objections to the Revised AIP currently before the Court have been consensually resolved

with the Debtors except as to timing of the relief requested; and upon no objector to the KECP

Motion presenting evidence questioning the form and substance of the Revised AIP currently

before the Court; and after consideration of the objections filed by Wilmington Trust Company

(as Indenture Trustee) (Docket No. 1133); the United Steel, Paper and Forestry, Rubber,

Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW),

AFL-CIO (Docket No. 1134); the International Union, United Automobile, Aerospace and

Agricultural Implement Workers of America (Docket No. 1135); the Pension Benefit Guaranty

Corporation (Docket No. 1141); the International Brotherhood of Electrical Workers Local

Union No. 663 and the International Association of Machinists, AFL-CIO Tool and Die Makers

Local Lodge 78, District 10 (Docket No. 1156); JPMorgan Chase Bank, N.A., as administrative

agent, for itself and a syndicate of approximately 250 senior secured lenders (Limited Objection

of Prepetition Lenders) (Docket No. 1157); the International Union of Operating Engineers

Local Union Nos. 18, 101, and 832 (Docket No. 1159); The Teachers Retirement System of

Oklahoma, the Public Employees' Retirement System of Mississippi, Raiffeisen Kapitalanage-

Gesellschaft m.b.H and Stichting Pensioenfonds ABP (Lead Plaintiffs in *In re Delphi Corp.*

*Securities Litigation*) (Docket No. 1161); the International Union of Electronic, Electrical,

Salaried, Machine and Furniture Workers-Communications Workers of America (Docket No.

1164); the United States Trustee (Docket No. 1288); and the Official Committee of Unsecured

Creditors (Limited Objection) (Docket No. 2099) (collectively, the "Objections"); and the

declarations of Henry Reichard (in support of the objection by the IUE-CWA) (Docket No.

1168), Steve A. Grandstaff (in support of the objection by the UAW) (Docket No. 1135), and

Mark Shaw (in support of the objection by the USW) (Docket No. 2054); and upon the record of

the hearing held on the Motion; and this Court having determined that the relief requested in the

Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-

interest; and it appearing that proper and adequate notice of the Motion has been given and that

no other or further notice is necessary; and after due deliberation thereon; and good and

sufficient cause appearing therefor,

<p style="text-align:center">IT IS HEREBY FOUND AND DETERMINED THAT:</p>

A.      Implementation of the portion of the Revised AIP currently before the

Court covering the Performance Period is, as a matter of fact, a transaction in the ordinary course

of business, within the meaning of 11 U.S.C. § 363(c);

B.      In addition to and in the alternative to its finding in the immediately

preceding paragraph, it is the Court's business judgment, in reviewing the manner in which the

Debtors seek to manage the Debtors' estates, that the Debtors have exercised a reasonable

business judgment in seeking to implement at this time the portion of the Revised AIP covering

the Performance Period;

C.      The portion of the Revised AIP currently before the Court, including the

Debtors' proposal to implement it now, was proposed in good faith and is in all respects fair and

reasonable, including its allowance of incentive compensation payments, at target, to all

executives under the program totaling approximately $20.6 million, $5.7 million of which

amount may represent incentive compensation payments, at target, to members of Delphi's

Strategy Board;

<p style="text-align:center">3</p>

D.      The Court finds that the safe harbor or prophylactic measures agreed to by the Debtors and the Creditors' Committee as set forth in paragraph 11 of this Order are reasonably adequate to protect the property of the Debtors' Estates; and

E.      The implementation at this time of the Revised AIP covering the Performance Period is in the best interest of the Debtors, their estates, creditors, and parties-in-interest and is necessary to the Debtors' reorganization efforts.

ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion, solely as it relates to the implementation of a revised Annual Incentive Program for the period ending June 30, 2006, is GRANTED; the objections thereto are OVERRULED; and the remainder of the KECP relating to future periods of the Revised AIP and the cash and equity components of the Emergence Incentive Plan in the Motion and any objections thereto are ADJOURNED to the July 27, 2006, omnibus hearing .

2.      Implementation of the Revised AIP covering the Performance Period is, as a matter of law, a transaction in the ordinary course of business, within the meaning of 11 U.S.C. § 363(b)(1), for which Court approval is not required.

3.      In addition to and in the alternative to the decree and conclusion of law set forth in the immediately preceding paragraph, and mindful that this Court sits as an "overseer of the wisdom with which the bankruptcy estate's property is being managed by the . . . debtor-in-possession," that the Court must resist becoming the "arbiter of disputes between creditors and the estate," and that consideration of a debtor's Section 363(b) motion is a summary proceeding, intended merely as a means to "efficiently review the . . . debtor's decision[s] . . . in the course of the swift administration of the bankruptcy estate" and "not the time or place for prolonged discovery or a lengthy trial with disputed issues," Orion Pictures Corp. v. Showtime Pictures

4

Corp. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098–99 (2d Cir. 1993), the Court approves in

all respects the implementation at this time of the Revised AIP covering the Performance Period,

and the Debtors are authorized, pursuant to 11 U.S.C. §§ 105(a) and 363(b)(1), to forthwith take

all actions necessary to implement the Revised AIP on the terms and conditions set forth in the

following paragraphs of this Order.

4.    The Revised AIP shall apply to the individuals holding executive positions

with the Debtors in the United States during the Performance Period (the "Covered Employees"),

excluding, by his voluntary agreement, the current Chairman and CEO, Robert S. ("Steve")

Miller.  A Covered Employee who quits or is terminated for cause will not be eligible for any

incentive compensation payment.  If a Covered Employee is terminated involuntarily and not for

cause, he or she is eligible to receive a pro rata payment, which the Debtors may pay as soon as

reasonably practicable following the end of the Performance Period. The same principle shall

apply with respect to a Covered Employee whose employment is terminated because of death or

disability. Covered Employees hired during the Performance Period may receive incentive

compensation payments on a prorated basis.

5.    Performance at the corporate level shall be measured using an

"EBITDAR-UG" performance metric.  EBITDAR-UG means earnings before interest, taxes,

depreciation, amortization, and restructuring costs, but excluding earnings resulting from the on-

going negotiations with the Debtors' labor unions (the "U") or General Motors Corporation (the

"G").  Performance at the division level shall be measured using an OIBITDAR-UG performance

metric, where the "OI" represents operating income.

6.    The EBITDAR-UG target for the Revised AIP covering the Performance

Period shall be set at a negative $80 million.  The OIBITDAR-UG targets for the Revised AIP

covering the Performance Period shall be, as follows:  (i) Energy and Chassis = - $44.2 million;
(ii) Steering = - $92.8 million; (iii) Thermal and Interior = - $79.2 million; (iv) Electronics and
Safety = $193.0 million; (v) Packard = $83.4 million; (vi) Product and Service Solution = $23.1
million; (vii) Automotive Holdings Group = - $583.9 million; and (viii) Medical = $0.3 million.

7.    At the corporate level, 100% of Covered Employees' incentive
compensation payment opportunities shall be based on the corporate level target.  At the division
level (except the Medical division), 50% of a Covered Employee's incentive compensation
payment opportunity shall be based on the corporate level target and 50% shall be based on the
applicable division level target.  In the Medical division, 30% of a Covered Employee's incentive
compensation payment opportunity shall be based on the corporate level target and 70% is based
on the Medical division target.  Covered Employees who transfer between entities or across
divisions within the same entity shall have their opportunities prorated based upon the time at
each entity during the Performance Period.  The corporate and division targets shall independent
of one another, and achievement of one target may result in the funding of one even if the other
target is not achieved.

8.    Target incentive compensation payment opportunities for Covered
Employees, by Band, shall be in accordance with the spreadsheet attached hereto as Exhibit 1,
and the range of incentive compensation payment opportunities for Covered Employees shall be
based on the payout curves attached hereto as Exhibit 2.

9.    The Debtors shall be and hereby are authorized to make individual
performance adjustments to incentive compensation payments earned by Covered Employees.
Covered Employees designated as poor performers or otherwise not meeting expectations, as
determined by their supervisors, shall receive no incentive compensation payment.  Participants

6

may have their incentive payments adjusted by any amount up to as much as 200% of target,

provided however, that the incentive payments of members of the Delphi Strategy Board (the

"DSB") shall be capped at 150% of target.  The net effect to the Debtors of these individual

adjustments must be zero, i.e., a positive individual achievement adjustment for one executive

must be counterbalanced by negative individual achievement adjustments for one or more other

executives.  Additionally, a DSB-level incentive-compensation payment adjustment cannot be

funded by (or fund) an adjustment to a non-DSB-level incentive compensation payment, and vice

versa.

      10.     The following safe harbor (or prophylactic) provisions shall apply to all

participants of the Debtors' KECP including the Revised AIP:

      (a)     A KECP participant's unpaid KECP payments shall be escrowed by

the Debtors pending a final determination whether those payments should be forfeited pursuant

to the forfeiture/clawback procedures and standards set forth below (which determination shall

be made in no event later than the effective date of a plan of reorganization unless, for good

cause shown with respect to that individual participant, this Court extends the period of the

escrow), in the event that the Debtors assert a claim (or the Creditors' Committee notifies the

Debtors that the Creditors' Committee intends to obtain from the Court authority to file a

complaint against that participant; provided that the escrow payments shall be released if the

Creditors' Committee does not obtain such authority within 45 days of the notice to the Debtors

or does not file such complaint within ten days after obtaining such authority) for relief under the

Bankruptcy Code or other applicable law in connection with conduct or transactions relating to

the participant's employment or affiliation with the Debtors.

(b)      As a further safe harbor and while the Debtors have no present

information or belief that such events are reasonably likely to occur, KECP payments shall be

escrowed by the Debtors in the event that a KECP participant, with respect to conduct or

transactions relating to the participant's employment or affiliation with the Debtors: (i) is given

notice of the participant's right to make a Wells submission by the Securities and Exchange

Commission; (ii) is sued or is informed, or the Debtors are informed, that the participant will, in

the near future, be sued by the Securities and Exchange Commission;  (iii) is notified, or the

Debtors are notified, that the participant is a target of a criminal investigation; (iv) is indicted or

agrees to the filing of a criminal information against the participant; or (v) declines to answer

questions on grounds of the participant's Fifth Amendment rights against self-incrimination.

(c)      A KECP participant's KECP escrow payment shall be forfeited (or if

the KECP payment was not escrowed the participant shall be required to repay to the Debtors

whatever the participant received under the KECP) and the participant will not be entitled to

receive any further KECP benefits if it is ultimately determined that, with respect to conduct or

transactions relating to the participant's employment or affiliation with the Debtors, the

participant failed to act in good faith and in a manner the Debtors reasonably believe to have

been in or not opposed to the best interests of the Debtors.  The Debtors' clawback claim against

a KECP participant may be offset without further order of this Court against any claim of any

kind that the KECP participant may have against the Debtors including (but not limited to) any

claim for indemnification.

(d)      Any determination under the immediately preceding paragraph shall

be made by the Board of Directors of Delphi Corporation, after notice to the Creditors'

Committee and the participant and an opportunity to be heard by the participant, pursuant to the

procedures set forth in the Debtors' bylaws, subject to the Creditors' Committee right to object to (based on the Creditors' Committee's review of the record) and, upon such objection, this Court's de novo review of the Debtors' determination with respect to any particular individual.

11.     Any payments to which a Covered Employee is entitled under the Revised AIP shall be accorded administrative expense status and priority under 11 U.S.C. §§ 503(b)(1)(A) and 507(a)(1).

12.     This Court shall retain jurisdiction over the Debtors and the Covered Employees participating in the Revised AIP covering the Performance Period, including without limitation for the purposes of interpreting, implementing, and enforcing the terms and conditions of the Revised AIP.

13.     The requirement under Rule 9013-1(b) of the Local Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion and the Omnibus Reply.

Dated:      New York, New York
            February __, 2006

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT 1

**RANGE OF BONUS OPPORTUNITIES FOR AIP PROGRAM PARTICIPANTS (Jan. 1, 2006, through June 30, 2006).**

| | HC | Avg. Salary | Targets thru 6/30/06 | Individual Performance Ranges (threshold) | | | Individual Performance Ranges (target) | | | Individual Performance Ranges (maximum) | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | Min | Mid Point | Max | Min | Mid Point | Max | Min | Mid Point | Max |
| *DSB* | | | | | | | | | | | | |
| Miller | | $1 | *Not Participating* | | | | | | | | | |
| Other DSB | | $514,255 | $256,933 | $0 | $102,773 | $154,160 | $0 | $256,933 | $385,399 | $0 | $385,399 | $385,399 |
| *Sum* | 23 | | **$5,652,522** | * | **$2,261,009** | ** | * | **$5,652,522** | ** | $0 | **$8,478,783** | **$8,478,783** |
| | | | | | | | | | | | | |
| *Band F* | | $427,500 | $122,500 | $0 | $49,000 | $98,000 | $0 | $122,500 | $245,000 | $0 | $245,000 | $245,000 |
| *Sum* | 2 | | **$245,000** | * | **$98,000** | ** | * | **$245,000** | ** | $0 | **$490,000** | **$490,000** |
| | | | | | | | | | | | | |
| Band E | 21 | $292,808 | $85,500 | $0 | $34,200 | $68,400 | $0 | $85,500 | $171,000 | $0 | $171,000 | $171,000 |
| Band D | 65 | $240,799 | $67,500 | $0 | $27,000 | $54,000 | $0 | $67,500 | $135,000 | $0 | $135,000 | $135,000 |
| | | | | | | | | | | | | |
| Band C | 88 | $199,856 | $33,500 | $0 | $13,400 | $26,800 | $0 | $33,500 | $67,000 | $0 | $67,000 | $67,000 |
| Band B | 130 | $165,312 | $23,500 | $0 | $9,400 | $18,800 | $0 | $23,500 | $47,000 | $0 | $47,000 | $47,000 |
| Band A | 138 | $141,300 | $18,500 | $0 | $7,400 | $14,800 | $0 | $18,500 | $37,000 | $0 | $37,000 | $37,000 |
| *Sum* | 442 | | **$14,739,000** | * | **$5,895,600** | ** | * | **$14,739,000** | ** | $0 | **$29,478,000** | **$29,478,000** |
| **TOTAL COST** | 467 | | **$20,636,522** | * | **$8,254,609** | ** | * | **$20,636,522** | ** | $0 | **$38,446,783** | **$38,446,783** |

| $ Fund Summary | Threshold | Target | Maximum |
|---|---|---|---|
| | *$M* | *$M* | *$M* |
| **Original Proposal** | $12.4 | $31.0 | $62.0 |
| **Revised Proposal** | $8.3 | $20.6 | $38.4 |
| **DSB Original** | $3.4 | $8.5 | $17.0 |
| **DSB Revised** | $2.3 | $5.7 | $8.5 |

\* Individual bonuses may be reduced to as low as zero based on performance.
\*\* While individuals can receive up to 200% of their target bonus (150% for DSB) based on individual performance, the total pool cannot exceed the aggregate midpoint amount.

**EXHIBIT 2**

DELPHI CORPORATION
Revised Proposed AIP Payout Curve



| % Performance | $ Performance (in millions) | Current | DSB Payout % Payout | Non-DSB % Payout |
|---|---|---|---|---|
| 69% | $0 | 0 | 0 | 0 |
| 70% | ($207) | 40% | 20% | 20% |
| 75% | ($186) | 50% | 25% | 25% |
| 80% | ($165) | 60% | 35% | 35% |
| 85% | ($144) | 70% | 45% | 45% |
| 90% | ($123) | 80% | 55% | 55% |
| 95% | ($102) | 90% | 75% | 75% |
| 100% | ($81) | 100% | 100% | 100% |
| 101% | ($77) | 101% | 102% | 103% |
| 110% | ($39) | 110% | 115% | 125% |
| 120% | $3 | 120% | 125% | 145% |
| 130% | $45 | 130% | 135% | 165% |
| 131% | $49 | 131% | 136% | 166% |
| 140% | $87 | 140% | 145% | 170% |
| 150% | $129 | 150% | 150% | 175% |
| 151% | $133 | 151% | 150% | 177% |
| 160% | $171 | 160% | 150% | 180% |
| 170% | $213 | 170% | 150% | 185% |
| 180% | $255 | 180% | 150% | 190% |
| 190% | $297 | 190% | 150% | 195% |
| 200% | $340 | 200% | 150% | 200% |

|  | Minimum | Target | Maximum |
|---|---|---|---|
| EBITDAR * | ($207) | ($81) | $340 |
| Performance % | 70% | 100% | 200% |
| Payout % | 20% | 100% | 200%/ 150% DSB |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

DELPHI 005168.1
CONFIDENTIAL

Revised Proposal



**Revised Proposed E&C AIP Payout Curve**

| $ Performance (in millions) | % Performance | Non-DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| ($72.7) | 69% | 0 | 0 |
| ($72.8) | 70% | 20% | 20% |
| ($68.0) | 75% | 25% | 25% |
| ($63.3) | 80% | 35% | 35% |
| ($58.5) | 85% | 45% | 45% |
| ($53.7) | 90% | 55% | 55% |
| ($49.0) | 95% | 75% | 75% |
| ($44.2) | 100% | 100% | 100% |
| ($43.2) | 101% | 103% | 103% |
| ($34.4) | 110% | 125% | 125% |
| ($24.5) | 120% | 145% | 145% |
| ($14.7) | 130% | 165% | 165% |
| ($13.7) | 131% | 166% | 166% |
| ($4.8) | 140% | 170% | 170% |
| $5.0 | 150% | 175% | 175% |
| $6.0 | 151% | 177% | 177% |
| $14.9 | 160% | 180% | 180% |
| $24.7 | 170% | 185% | 185% |
| $34.6 | 180% | 190% | 190% |
| $44.4 | 190% | 195% | 195% |
| $54.3 | 200% | 200% | 200% |

| | Minimum | Target | Maximum |
|---|---|---|---|
| OIBITDAR (000s)* | ($72.8) | ($44.2) | $54.3 |
| Payout % | 20% | 100% | 200% |
| Performance % | 70% | 100% | 200% |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

E&C

DELPHI 005169
CONFIDENTIAL



## Revised Proposed Steering AIP Payout Curve

| $ Performance (in millions) | % Performance | Non-DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| ($102.7) | 69% | 0 | 0 |
| ($102.8) | 70% | 20% | 20% |
| ($101.1) | 75% | 25% | 25% |
| ($99.4) | 80% | 35% | 35% |
| ($97.8) | 85% | 45% | 45% |
| ($96.1) | 90% | 55% | 55% |
| ($94.4) | 95% | 75% | 75% |
| ($92.8) | 100% | 100% | 100% |
| ($92.4) | 101% | 103% | 103% |
| ($89.3) | 110% | 125% | 125% |
| ($85.9) | 120% | 145% | 145% |
| ($82.4) | 130% | 165% | 165% |
| ($82.1) | 131% | 166% | 166% |
| ($79.0) | 140% | 170% | 170% |
| ($75.5) | 150% | 175% | 175% |
| ($75.2) | 151% | 177% | 177% |
| ($72.1) | 160% | 180% | 180% |
| ($68.6) | 170% | 185% | 185% |
| ($65.2) | 180% | 190% | 190% |
| ($61.7) | 190% | 195% | 195% |
| ($58.3) | 200% | 200% | 200% |

|  | Minimum | Target | Maximum |
|---|---|---|---|
| OIBITDAR (000s)* | ($102.8) | ($92.8) | ($58.3) |
| Payout % | 20% | 100% | 200% |
| Performance % | 70% | 100% | 200% |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

Steering

DELPHI 005170
CONFIDENTIAL



## Revised Proposed T&I AIP Payout Curve

| OIBITDAR (000s)* | Minimum ($94.8) | Target ($79.2) | Maximum ($25.3) |
|---|---|---|---|
| Payout % | 20% | 100% | 200% |
| Performance % | 70% | 100% | 200% |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

| $ Performance (in millions) | % Performance | Non-DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| ($94.7) | 69% | 0 | 0 |
| ($94.8) | 70% | 20% | 20% |
| ($92.2) | 75% | 25% | 25% |
| ($89.6) | 80% | 35% | 35% |
| ($87.0) | 85% | 45% | 45% |
| ($84.4) | 90% | 55% | 55% |
| ($81.8) | 95% | 75% | 75% |
| ($79.2) | 100% | 100% | 100% |
| ($78.7) | 101% | 103% | 103% |
| ($73.8) | 110% | 125% | 125% |
| ($68.4) | 120% | 145% | 145% |
| ($63.0) | 130% | 165% | 165% |
| ($62.5) | 131% | 166% | 166% |
| ($57.7) | 140% | 170% | 170% |
| ($52.3) | 150% | 175% | 175% |
| ($51.7) | 151% | 177% | 177% |
| ($46.9) | 160% | 180% | 180% |
| ($41.5) | 170% | 185% | 185% |
| ($36.1) | 180% | 190% | 190% |
| ($30.7) | 190% | 195% | 195% |
| ($25.3) | 200% | 200% | 200% |



T&I

DELPHI 005171
CONFIDENTIAL



**Revised Proposed E&S AIP Payout Curve**

| $ Performance (in millions) | % Performance | Non-DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| $167.8 | 69% | 0 | 0 |
| $167.9 | 70% | 20% | 20% |
| $172.1 | 75% | 25% | 25% |
| $176.3 | 80% | 35% | 35% |
| $180.5 | 85% | 45% | 45% |
| $184.6 | 90% | 55% | 55% |
| $188.8 | 95% | 75% | 75% |
| $193.0 | 100% | 100% | 100% |
| $193.9 | 101% | 103% | 103% |
| $201.6 | 110% | 125% | 125% |
| $210.3 | 120% | 145% | 145% |
| $218.9 | 130% | 165% | 165% |
| $219.8 | 131% | 166% | 166% |
| $227.6 | 140% | 170% | 170% |
| $236.2 | 150% | 175% | 175% |
| $237.1 | 151% | 177% | 177% |
| $244.9 | 160% | 180% | 180% |
| $253.5 | 170% | 185% | 185% |
| $262.1 | 180% | 190% | 190% |
| $270.8 | 190% | 195% | 195% |
| $279.4 | 200% | 200% | 200% |

| | Minimum | Target | Maximum |
|---|---|---|---|
| OIBITDAR (000s)* | $167.9 | $193.0 | $279.4 |
| Payout % | 20% | 100% | 200% |
| Performance % | 70% | 100% | 200% |

\* Targets do not include any possible GM contribution or results of modifications of labor agreements.

E&S

DELPHI 005172
CONFIDENTIAL

**Revised Proposed P AIP Payout Curve**

| $ Performance (in millions) | % Performance | Non-DSB Payout % Payout | Non-DSB % Payout |
|---|---|---|---|
| $57.0 | 69% | 0 | 0 |
| $57.1 | 70% | 20% | 20% |
| $61.5 | 75% | 25% | 25% |
| $65.9 | 80% | 35% | 35% |
| $70.2 | 85% | 45% | 45% |
| $74.6 | 90% | 55% | 55% |
| $79.0 | 95% | 75% | 75% |
| $83.4 | 100% | 100% | 100% |
| $84.3 | 101% | 103% | 103% |
| $92.5 | 110% | 125% | 125% |
| $101.5 | 120% | 145% | 145% |
| $110.6 | 130% | 165% | 165% |
| $111.5 | 131% | 166% | 166% |
| $119.7 | 140% | 170% | 170% |
| $128.7 | 150% | 175% | 175% |
| $129.6 | 151% | 177% | 177% |
| $137.8 | 160% | 180% | 180% |
| $146.9 | 170% | 185% | 185% |
| $155.9 | 180% | 190% | 190% |
| $165.0 | 190% | 195% | 195% |
| $174.1 | 200% | 200% | 200% |

| | Minimum | Target | Maximum |
|---|---|---|---|
| OIBITDAR (000s)* | $57.1 | $83.4 | $174.1 |
| Payout % | 20% | 100% | 200% |
| Performance % | 70% | 100% | 200% |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

Packard

DELPHI 005173
CONFIDENTIAL



**Revised Proposed PSS AIP Payout Curve**

| $ Performance (in millions) | % Performance | Non-DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| $14.3 | 69% | 0 | 0 |
| $14.4 | 70% | 20% | 20% |
| $15.9 | 75% | 25% | 25% |
| $17.3 | 80% | 35% | 35% |
| $18.8 | 85% | 45% | 45% |
| $20.2 | 90% | 55% | 55% |
| $21.7 | 95% | 75% | 75% |
| $23.1 | 100% | 100% | 100% |
| $23.4 | 101% | 103% | 103% |
| $26.1 | 110% | 125% | 125% |
| $29.1 | 120% | 145% | 145% |
| $32.1 | 130% | 165% | 165% |
| $32.4 | 131% | 166% | 166% |
| $35.1 | 140% | 170% | 170% |
| $38.0 | 150% | 175% | 175% |
| $38.3 | 151% | 177% | 177% |
| $41.0 | 160% | 180% | 180% |
| $44.0 | 170% | 185% | 185% |
| $47.0 | 180% | 190% | 190% |
| $50.0 | 190% | 195% | 195% |
| $53.0 | 200% | 200% | 200% |

| | Minimum | Target | Maximum |
|---|---|---|---|
| OIBITDAR (000s)* | $14.4 | $23.1 | $53.0 |
| Payout % | 20% | 100% | 200% |
| Performance % | 70% | 100% | 200% |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

DELPHI 005174
CONFIDENTIAL



DPSS



| $ Performance (in millions) | % Performance | Non-DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| ($592.0) | 69% | 0 | 0 |
| ($592.1) | 70% | 20% | 20% |
| ($590.8) | 75% | 25% | 25% |
| ($589.4) | 80% | 35% | 35% |
| ($588.0) | 85% | 45% | 45% |
| ($586.6) | 90% | 55% | 55% |
| ($585.3) | 95% | 75% | 75% |
| ($583.9) | 100% | 100% | 100% |
| ($583.6) | 101% | 103% | 103% |
| ($581.1) | 110% | 125% | 125% |
| ($578.2) | 120% | 145% | 145% |
| ($575.4) | 130% | 165% | 165% |
| ($575.1) | 131% | 166% | 166% |
| ($572.6) | 140% | 170% | 170% |
| ($569.7) | 150% | 175% | 175% |
| ($569.5) | 151% | 177% | 177% |
| ($566.9) | 160% | 180% | 180% |
| ($564.1) | 170% | 185% | 185% |
| ($561.2) | 180% | 190% | 190% |
| ($558.4) | 190% | 195% | 195% |
| ($555.6) | 200% | 200% | 200% |

## Revised Proposed AHG AIP Payout Curve

| | Minimum | Target | Maximum |
|---|---|---|---|
| OIBITDAR (000s)* | ($592.1) | ($583.9) | ($555.6) |
| Payout % | 20% | 100% | 200% |
| Performance % | 70% | 100% | 200% |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

DELPHI 005175
CONFIDENTIAL



Revised Proposed Medical AIP Payout Curve

|  | Minimum | Target | Maximum |
|---|---|---|---|
| OIBITDAR (000s)* | $0.2 | $0.3 | $0.6 |
| Payout % | 20% | 100% | 200% |
| Performance % | 70% | 100% | 200% |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

| $ Performance (in millions) | % Performance | Non-DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| $0.2 | 69% | 0 | 0 |
| $0.2 | 70% | 20% | 20% |
| $0.2 | 75% | 25% | 25% |
| $0.2 | 80% | 35% | 35% |
| $0.3 | 85% | 45% | 45% |
| $0.3 | 90% | 55% | 55% |
| $0.3 | 95% | 75% | 75% |
| $0.3 | 100% | 100% | 100% |
| $0.3 | 101% | 103% | 103% |
| $0.3 | 110% | 125% | 125% |
| $0.4 | 120% | 145% | 145% |
| $0.4 | 130% | 165% | 165% |
| $0.4 | 131% | 166% | 166% |
| $0.4 | 140% | 170% | 170% |
| $0.5 | 150% | 175% | 175% |
| $0.5 | 151% | 177% | 177% |
| $0.5 | 160% | 180% | 180% |
| $0.5 | 170% | 185% | 185% |
| $0.5 | 180% | 190% | 190% |
| $0.6 | 190% | 195% | 195% |
| $0.6 | 200% | 200% | 200% |

DELPHI 005176
CONFIDENTIAL

Medical