SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
David E. Springer (DS 9331)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                           :
    In re                                        :        Chapter 11
                                               :
DELPHI CORPORATION, et al.,       :        Case No. 05–44481 (RDD)
                                               :
                  Debtors.     :        (Jointly Administered)
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SUPPLEMENTAL DECLARATION OF MARK R. WEBER IN SUPPORT OF THE
DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C. §§ 105 AND 363 AUTHORIZING
THE DEBTORS TO IMPLEMENT A KEY EMPLOYEE COMPENSATION PROGRAM

Mark R. Weber declares, as follows:

1. I submit this supplemental declaration (the "Supplemental Declaration") in support of the Debtors' Motion For Order Under §§ 105 And 363 Authorizing The Debtors To Implement A Key Employee Compensation Program (Docket No. 213) (the "KECP Motion"), and any modifications thereto. Capitalized terms not otherwise defined in this Supplemental Declaration shall have the meanings ascribed to them in my original Declaration. I have personal knowledge of the matters stated herein.

2. Since the Petition Date, the Debtors and the Official Committee of Unsecured Creditors (the "Committee") have engaged in significant and ongoing discussions about a variety of matters related to the KECP. On November 14, 2005, and then again on December 13, 2005, January 19, 2006, January 31, 2006, and February 3, 2006, the Debtors agreed to adjourn the deadline for the Committee to file their objections, if any, to the KECP Motion. At the suggestion of the Committee, the Debtors agreed to the adjournment and a rescheduling of the KECP hearing so that the Committee could continue its due diligence, and to provide the Debtors and the Committee an opportunity to continue discussions about various provisions of the KECP. This included consideration of the terms and particulars of the Revised Annual Incentive Plan for the performance cycle beginning January 1, 2006, and ending June 30, 2006.

3. This is the only component of the KECP now before the Court. Also at the request of the Committee, the Debtors agreed to adjourn consideration of all other aspects of the KECP, including those provisions of the Revised Annual Incentive Plan relating to any period after June 30, 2006, as well as the cash and equity provisions of the Emergence Bonus Plan, until the July 2006 omnibus hearing now scheduled for July 27, 2006.

4. On February 2, 2006, the Debtors, the Committee, and their respective advisors reached agreement on suitable prophylactic measures designed to insure that that KECP benefits are not paid to, or retained by, individuals who committed wrongs against the Company. A copy of the KECP Safe Harbor Provisions, as agreed by the Debtors and the Committee on February 2, 2006, is attached hereto as Exhibit 1.

5. During a teleconference held late in the day on Friday, February 3, 2006, involving senior officers of the Debtors and representatives of the Committee, and their respective advisors, the Committee advanced a proposal concerning matters still outstanding related to the Revised Annual Incentive Plan.

6. Under the terms of the analytical framework proposed by the Committee, the Debtors' pre-petition annual incentive bonus thresholds, targets, and ceilings would remain largely fixed, based on the information previously provided by Watson Wyatt. The Committee suggested, however, that the payout curves between these points be modified, such that a steeper payout curve (essentially an "S" curve) between the three fixed points be created. The practical effect of the proposed payment curve adjustments would be a reduction of incentive bonus payouts in the range between the earnings threshold and the earnings target, and increased payout levels in the range between the earnings target and the ceiling.

7. After discussion between the Debtors and their advisors, on the one hand, and the Committee and its compensation advisor, Pearl Meyer of Steven Hall & Partners ("Steven Hall"), on the other, the Debtors agreed in principle to the Committee's proposal. Thereafter, the Debtors and the Committee began to work out the details of the proposal.

8. Further work by the Debtors, the Committee, and their advisors continued for the remainder of the day on Friday, and throughout the day on Saturday, February 4, 2006.

Representatives of Steven Hall circulated to the Debtors proposed payment curves for the Debtors' executives.  Based on a review of this data, and after further discussions with their advisors, the Debtors agreed to these refinements, and began to calculate and apply the payout curve data to the Debtors' various divisions in order to arrive at specific targets and ranges.  Throughout the day on Saturday, the Debtors, the Committee, and their respective advisors exchanged additional information to ensure that all parties remained apprised of the work and progress that each was making.

          9.       Late on Saturday, February 4, 2006, the Debtors forwarded to Steven Hall the Debtors' "final package" based on their most current calculations.  Following a review of these materials, representatives of Steven Hall concurred with the Debtors' calculations and assessments.  Representatives of Steven Hall further indicated that the Debtors' "final package" successfully addressed all remaining open issues related to the form and substance of the Revised Annual Incentive Plan, and requested that specific information be put on the Debtors' demonstrative charts, for consistency of presentation and clarity of analysis.  Finally, representatives of Steven Hall requested, and subsequently received, additional collateral information from Watson Wyatt in support of the "final package." The final payout curves adopted by the Debtors are attached to this Supplemental Declaration as Exhibit 2.

          10.      On Monday morning, February 6, 2006, the Debtors contacted representatives of Steven Hall to confirm their receipt of all outstanding data and support materials, and to confirm that no additional issues remained unresolved.  The Debtors thereafter forwarded to Steven Hall an updated copy of the enterprise-level EBITDAR-UG chart, receipt of which also was confirmed.  After representatives of Steven Hall requested additional collateral information, and receiving assurances from the Debtors that the requested information would be

4

forthcoming, a representative of Steven Hall confirmed that the Committee had all the information they needed in connection with the Revised Annual Incentive Plan.

        11.    The Debtors have incorporated in the Revised Annual Incentive Plan those provisions of the Debtors' pre-petition annual incentive plan (the "AIP") pertaining to treatment of awards, if any, upon the Covered Employee's death or termination. Under the Revised Annual Incentive Plan, an employee who quits or is terminated for cause will not eligible for any bonus. If an employee is terminated involuntarily and not for cause, he or she becomes eligible to receive a pro rata payment, which would be paid as soon as practicable following the end of the six-month period. The same is true of an employee who is terminated because of death or disability.

        I declare, under penalty of perjury, that the foregoing statements are true and correct.

        Executed at Troy, Michigan, on February __7__, 2006

*[signature]*
_____
Mark R. Weber

5

# Exhibit 1

In re Delphi Corporation, et al., Debtors

<u>KECP Safe Harbor Provisions</u>

(As Agreed by Debtors and Creditors' Committee on February 2, 2006)

A KECP participant's KECP payments would be escrowed pending a final determination whether those payments should be forfeited pursuant to the forfeiture/clawback procedures and standards set forth below (which determination would be made in no event later than the effective date of a plan of reorganization unless, for good cause shown with respect to that individual participant, the Court extends the period of the escrow), in the event that the Debtors assert a claim (or the Official Committee of Unsecured Creditors notifies the Debtors that the Committee intends to obtain from the Court authority to file a complaint against that participant; provided that the escrow payments shall be released if the Committee does not obtain such authority within 45 days of the notice to the Debtors or does not file such complaint within ten days after obtaining such authority) for relief under the Bankruptcy Code or other applicable law in connection with conduct or transactions relating to the participant's employment or affiliation with the Debtors.

As a further safe harbor and while the Debtors have no present information or belief that such events are reasonably likely to occur, KECP payments would be similarly escrowed in the event that a KECP participant, with respect to conduct or transactions relating to the participant's employment or affiliation with the Debtors: (i) is given notice of the participant's right to make a Wells submission by the Securities and Exchange Commission; (ii) is sued or is informed, or the Company is informed, that the participant will, in the near future, be sued by the Securities and Exchange Commission; (iii) is notified, or the Company is notified, that the participant is a target of a criminal investigation; (iv) is indicted or agrees to the filing of a criminal information against him; or (v) declines to answer questions on grounds of the participant's Fifth Amendment rights against self-incrimination.

A KECP participant's KECP escrow payment shall be forfeited (or if the KECP payment was not escrowed the participant shall be required to repay to the Company whatever the participant received under the KECP) and the participant will not be entitled to receive any further KECP benefits if it is ultimately determined that, with respect to conduct or transactions relating to the participant's employment or affiliation with the Debtors, the participant failed to act in good faith and in a manner the Company reasonably believes to have been in or not opposed to the best interests of the Company. The Debtors' clawback claim against a KECP participant may be offset without further order of the Bankruptcy Court against any claim of any kind that the KECP participant may have against the Debtors including (but not limited to) any claim for indemnification.

Any such determination would be made by the Board of Directors, after notice to the Creditors' Committee and the participant and an opportunity to be heard by the participant, pursuant to the procedures set forth in the Company's bylaws, subject to the Creditors' Committee right to object to (based on the Committee's review of the record) and the Bankruptcy Court's de novo review of the Debtors' determination with respect to any particular individual.

# Exhibit 2



DELPHI CORPORATION
Revised Proposed AIP Payout Curve

| EBITDAR * | Minimum | Target | Maximum |
|---|---|---|---|
| | ($207) | ($81) | $340 |
| Performance % | 70% | 100% | 200% |
| Payout % | 20% | 100% | 200%/ 150% DSB |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

| % Performance | $ Performance (in millions) | Current | DSB % Payout | Non-DSB % Payout |
|---|---|---|---|---|
| 69% | $0 | 0 | 0 | 0 |
| 70% | ($207) | 40% | 20% | 20% |
| 75% | ($186) | 50% | 25% | 25% |
| 80% | ($165) | 60% | 35% | 35% |
| 85% | ($144) | 70% | 45% | 45% |
| 90% | ($123) | 80% | 55% | 55% |
| 95% | ($102) | 90% | 75% | 75% |
| 100% | ($81) | 100% | 100% | 100% |
| 101% | ($77) | 101% | 102% | 103% |
| 110% | ($39) | 110% | 115% | 125% |
| 120% | $3 | 120% | 125% | 145% |
| 130% | $45 | 130% | 135% | 165% |
| 131% | $49 | 131% | 136% | 166% |
| 140% | $87 | 140% | 145% | 170% |
| 150% | $129 | 150% | 150% | 175% |
| 151% | $133 | 151% | 150% | 177% |
| 160% | $171 | 160% | 150% | 180% |
| 170% | $213 | 170% | 150% | 185% |
| 180% | $255 | 180% | 150% | 190% |
| 190% | $297 | 190% | 150% | 195% |
| 200% | $340 | 200% | 150% | 200% |

Revised Proposal

DELPHI 005168.1
CONFIDENTIAL



Revised Proposed E&C AIP Payout Curve

| $ Performance (in millions) | % Performance | Non-DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| ($72.7) | 69% | 0 | 0 |
| ($72.8) | 70% | 20% | 20% |
| ($68.0) | 75% | 25% | 25% |
| ($63.3) | 80% | 35% | 35% |
| ($58.5) | 85% | 45% | 45% |
| ($53.7) | 90% | 55% | 55% |
| ($49.0) | 95% | 75% | 75% |
| ($44.2) | 100% | 100% | 100% |
| ($43.2) | 101% | 103% | 103% |
| ($34.4) | 110% | 125% | 125% |
| ($24.5) | 120% | 145% | 145% |
| ($14.7) | 130% | 165% | 165% |
| ($13.7) | 131% | 166% | 166% |
| ($4.8) | 140% | 170% | 170% |
| $5.0 | 150% | 175% | 175% |
| $6.0 | 151% | 177% | 177% |
| $14.9 | 160% | 180% | 180% |
| $24.7 | 170% | 185% | 185% |
| $34.6 | 180% | 190% | 190% |
| $44.4 | 190% | 195% | 195% |
| $54.3 | 200% | 200% | 200% |

|  | Minimum | Target | Maximum |
|---|---|---|---|
| OIBITDAR (000s)* | ($72.8) | ($44.2) | $54.3 |
| Payout % | 20% | 100% | 200% |
| Performance % | 70% | 100% | 200% |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

E&C

DELPHI 005169
CONFIDENTIAL



**Revised Proposed Steering AIP Payout Curve**

| $ Performance (in millions) | % Performance | Non-DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| ($102.7) | 69% | 0 | 0 |
| ($102.8) | 70% | 20% | 20% |
| ($101.1) | 75% | 25% | 25% |
| ($99.4) | 80% | 35% | 35% |
| ($97.8) | 85% | 45% | 45% |
| ($96.1) | 90% | 55% | 55% |
| ($94.4) | 95% | 75% | 75% |
| ($92.8) | 100% | 100% | 100% |
| ($92.4) | 101% | 103% | 103% |
| ($89.3) | 110% | 125% | 125% |
| ($85.9) | 120% | 145% | 145% |
| ($82.4) | 130% | 165% | 165% |
| ($82.1) | 131% | 166% | 166% |
| ($79.0) | 140% | 170% | 170% |
| ($75.5) | 150% | 175% | 175% |
| ($75.2) | 151% | 177% | 177% |
| ($72.1) | 160% | 180% | 180% |
| ($68.6) | 170% | 185% | 185% |
| ($65.2) | 180% | 190% | 190% |
| ($61.7) | 190% | 195% | 195% |
| ($58.3) | 200% | 200% | 200% |

| | Minimum | Target | Maximum |
|---|---|---|---|
| OIBITDAR (000s)* | ($102.8) | ($92.8) | ($58.3) |
| Payout % | 20% | 100% | 200% |
| Performance % | 70% | 100% | 200% |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

Steering

DELPHI 005170
CONFIDENTIAL



### Revised Proposed T&I AIP Payout Curve

| $ Performance (in millions) | % Performance | Non-DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| ($94.7) | 69% | 0 | 0 |
| ($94.8) | 70% | 20% | 20% |
| ($92.2) | 75% | 25% | 25% |
| ($89.6) | 80% | 35% | 35% |
| ($87.0) | 85% | 45% | 45% |
| ($84.4) | 90% | 55% | 55% |
| ($81.8) | 95% | 75% | 75% |
| ($79.2) | 100% | 100% | 100% |
| ($78.7) | 101% | 103% | 103% |
| ($73.8) | 110% | 125% | 125% |
| ($68.4) | 120% | 145% | 145% |
| ($63.0) | 130% | 165% | 165% |
| ($62.5) | 131% | 166% | 166% |
| ($57.7) | 140% | 170% | 170% |
| ($52.3) | 150% | 175% | 175% |
| ($51.7) | 151% | 177% | 177% |
| ($46.9) | 160% | 180% | 180% |
| ($41.5) | 170% | 185% | 185% |
| ($36.1) | 180% | 190% | 190% |
| ($30.7) | 190% | 195% | 195% |
| ($25.3) | 200% | 200% | 200% |

|  | Minimum | Target | Maximum |
|---|---|---|---|
| OIBITDAR (000s)* | ($94.8) | ($79.2) | ($25.3) |
| Payout % | 20% | 100% | 200% |
| Performance % | 70% | 100% | 200% |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

T&I

DELPHI 005171
CONFIDENTIAL



Revised Proposed E&S AIP Payout Curve

| $ Performance (in millions) | % Performance | Non-DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| $167.8 | 69% | 0 | 0 |
| $167.9 | 70% | 20% | 20% |
| $172.1 | 75% | 25% | 25% |
| $176.3 | 80% | 35% | 35% |
| $180.5 | 85% | 45% | 45% |
| $184.6 | 90% | 55% | 55% |
| $188.8 | 95% | 75% | 75% |
| $193.0 | 100% | 100% | 100% |
| $193.9 | 101% | 103% | 103% |
| $201.6 | 110% | 125% | 125% |
| $210.3 | 120% | 145% | 145% |
| $218.9 | 130% | 165% | 165% |
| $219.8 | 131% | 166% | 166% |
| $227.6 | 140% | 170% | 170% |
| $236.2 | 150% | 175% | 175% |
| $237.1 | 151% | 177% | 177% |
| $244.9 | 160% | 180% | 180% |
| $253.5 | 170% | 185% | 185% |
| $262.1 | 180% | 190% | 190% |
| $270.8 | 190% | 195% | 195% |
| $279.4 | 200% | 200% | 200% |

|  | Minimum | Target | Maximum |
|---|---|---|---|
| OIBITDAR (000s)* | $167.9 | $193.0 | $279.4 |
| Payout % | 20% | 100% | 200% |
| Performance % | 70% | 100% | 200% |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

E&S

DELPHI 005172
CONFIDENTIAL



## Revised Proposed P AIP Payout Curve

| $ Performance (in millions) | % Performance | Non-DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| $57.0 | 69% | 0 | 0 |
| $57.1 | 70% | 20% | 20% |
| $61.5 | 75% | 25% | 25% |
| $65.9 | 80% | 35% | 35% |
| $70.2 | 85% | 45% | 45% |
| $74.6 | 90% | 55% | 55% |
| $79.0 | 95% | 75% | 75% |
| $83.4 | 100% | 100% | 100% |
| $84.3 | 101% | 103% | 103% |
| $92.5 | 110% | 125% | 125% |
| $101.5 | 120% | 145% | 145% |
| $110.6 | 130% | 165% | 165% |
| $111.5 | 131% | 166% | 166% |
| $119.7 | 140% | 170% | 170% |
| $128.7 | 150% | 175% | 175% |
| $129.6 | 151% | 177% | 177% |
| $137.8 | 160% | 180% | 180% |
| $146.9 | 170% | 185% | 185% |
| $155.9 | 180% | 190% | 190% |
| $165.0 | 190% | 195% | 195% |
| $174.1 | 200% | 200% | 200% |

|  | Minimum | Target | Maximum |
|---|---|---|---|
| OIBITDAR (000s)* | $57.1 | $83.4 | $174.1 |
| Payout % | 20% | 100% | 200% |
| Performance % | 70% | 100% | 200% |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

Packard

DELPHI 005173
CONFIDENTIAL

# Revised Proposed PSS AIP Payout Curve



| $ Performance (in millions) | % Performance | Non-DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| $14.3 | 69% | 0 | 0 |
| $14.4 | 70% | 20% | 20% |
| $15.9 | 75% | 25% | 25% |
| $17.3 | 80% | 35% | 35% |
| $18.8 | 85% | 45% | 45% |
| $20.2 | 90% | 55% | 55% |
| $21.7 | 95% | 75% | 75% |
| $23.1 | 100% | 100% | 100% |
| $23.4 | 101% | 103% | 103% |
| $26.1 | 110% | 125% | 125% |
| $29.1 | 120% | 145% | 145% |
| $32.1 | 130% | 165% | 165% |
| $32.4 | 131% | 166% | 166% |
| $35.1 | 140% | 170% | 170% |
| $38.0 | 150% | 175% | 175% |
| $38.3 | 151% | 177% | 177% |
| $41.0 | 160% | 180% | 180% |
| $44.0 | 170% | 185% | 185% |
| $47.0 | 180% | 190% | 190% |
| $50.0 | 190% | 195% | 195% |
| $53.0 | 200% | 200% | 200% |

|  | Minimum | Target | Maximum |
|---|---|---|---|
| OIBITDAR (000s)* | $14.4 | $23.1 | $53.0 |
| Payout % | 20% | 100% | 200% |
| Performance % | 70% | 100% | 200% |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

DPSS

DELPHI 005174
CONFIDENTIAL



| $ Performance (in millions) | % Performance | Non-DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| ($592.0) | 69% | 0 | 0 |
| ($592.1) | 70% | 20% | 20% |
| ($590.8) | 75% | 25% | 25% |
| ($589.4) | 80% | 35% | 35% |
| ($588.0) | 85% | 45% | 45% |
| ($586.6) | 90% | 55% | 55% |
| ($585.3) | 95% | 75% | 75% |
| ($583.9) | 100% | 100% | 100% |
| ($583.6) | 101% | 103% | 103% |
| ($581.1) | 110% | 125% | 125% |
| ($578.2) | 120% | 145% | 145% |
| ($575.4) | 130% | 165% | 165% |
| ($575.1) | 131% | 166% | 166% |
| ($572.6) | 140% | 170% | 170% |
| ($569.7) | 150% | 175% | 175% |
| ($569.5) | 151% | 177% | 177% |
| ($566.9) | 160% | 180% | 180% |
| ($564.1) | 170% | 185% | 185% |
| ($561.2) | 180% | 190% | 190% |
| ($558.4) | 190% | 195% | 195% |
| ($555.6) | 200% | 200% | 200% |

## Revised Proposed AHG AIP Payout Curve

| | Minimum | Target | Maximum |
|---|---|---|---|
| OIBITDAR (000s)* | ($592.1) | ($583.9) | ($555.6) |
| Payout % | 20% | 100% | 200% |
| Performance % | 70% | 100% | 200% |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

DELPHI 005175
CONFIDENTIAL



| $ Performance (in millions) | % Performance | Non-DSB % Payout | Non-DSB % Payout |
|---|---|---|---|
| $0.2 | 69% | 0 | 0 |
| $0.2 | 70% | 20% | 20% |
| $0.2 | 75% | 25% | 25% |
| $0.2 | 80% | 35% | 35% |
| $0.3 | 85% | 45% | 45% |
| $0.3 | 90% | 55% | 55% |
| $0.3 | 95% | 75% | 75% |
| $0.3 | 100% | 100% | 100% |
| $0.3 | 101% | 103% | 103% |
| $0.3 | 110% | 125% | 125% |
| $0.4 | 120% | 145% | 145% |
| $0.4 | 130% | 165% | 165% |
| $0.4 | 131% | 166% | 166% |
| $0.4 | 140% | 170% | 170% |
| $0.4 | 150% | 175% | 175% |
| $0.5 | 151% | 177% | 177% |
| $0.5 | 160% | 180% | 180% |
| $0.5 | 170% | 185% | 185% |
| $0.5 | 180% | 190% | 190% |
| $0.6 | 190% | 195% | 195% |
| $0.6 | 200% | 200% | 200% |

|  | Minimum | Target | Maximum |
|---|---|---|---|
| OIBITDAR (000s)* | $0.2 | $0.3 | $0.6 |
| Payout % | 20% | 100% | 200% |
| Performance % | 70% | 100% | 200% |

* Targets do not include any possible GM contribution or results of modifications of labor agreements.

Medical

DELPHI 005176
CONFIDENTIAL