UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------ x
                             :

In re                           :     Chapter 11
                             :
DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                             :
               Debtors.   :     (Jointly Administered)
                             :
------------------------------ x

**AFFIDAVIT OF PATRICK N. KARPEN IN SUPPORT OF APPLICATION FOR
ORDER UNDER 11 U.S.C. §§ 327(a), 328(a) AND 1107(b) AUTHORIZING
EMPLOYMENT AND RETENTION OF KPMG LLP AS TAX AND
TRANSACTION SERVICES ADVISORS TO DEBTORS,
EFFECTIVE NUNC PRO TUNC TO OCTOBER 8, 2005**

State of Michigan    )
                        ) ss:
City of Detroit       )

Patrick N. Karpen, being duly sworn, deposes and states as follows:

1.    I am a Certified Public Accountant and a partner of KPMG LLP, a professional services firm. I submit this affidavit on behalf of KPMG LLP in support of the application (the "Application")[1] of Delphi Corporation, and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for entry of an order, pursuant to sections 327(a), 328(a) and 1107(b) of the United States Bankruptcy Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), authorizing the retention and employment of KPMG LLP as tax and transaction services advisors to the Debtors, *nunc pro tunc* to October 8, 2005 (the "Petition Date"), pursuant to the terms and conditions set forth in the engagement letters, attached as **Exhibits A, B, C, D and E to the Application**, for international tax process improvement project assistance dated May 24, 2005 (the "International Project

Engagement Letter"), as revised by an engagement letter dated August 31, 2005 and amended on September 12, 2005 (the "Revised International Project Engagement Letter"), for certain tax consulting services dated March 1, 2005 and amended by letter dated May 23, 2005 (the "Tax Consulting Engagement Letter"), for international executive services dated October 5, 2004 and amended on November 3, 2004 (the "IES Engagement Letter") and for acquisition and due diligence services dated January 23, 2006 (the "Master Services Engagement Letter" and, together with the International Project Engagement letter, the Revised International Project Engagement Letter, the Tax Consulting Engagement Letter, and the IES Engagement Letter, the "Engagement Letters"). I have personal knowledge of the matters set forth herein, and, if called as a witness, would testify competently thereto.[2]

## QUALIFICATIONS OF PROFESSIONALS

2. KPMG LLP is a firm of independent public accountants as defined under the Code of Professional Conduct of the American Institute of Certified Public Accountants.

3. The Debtors have selected KPMG LLP as one of their tax and transaction services advisors because of the firm's diverse experience and extensive knowledge in the fields of accounting, taxation and bankruptcy.

4. The Debtors have employed KPMG LLP as tax and transaction services advisors since 1999. By virtue of its prior engagements, KPMG LLP is familiar with the books, records, financial information and other data maintained by the Debtors as relevant to the services hereunder and is qualified to continue to provide tax and financial advisory services to the Debtors. As such,

---

[1] Capitalized terms used herein but not otherwise defined shall have those meanings set forth in the Application.

[2] Certain of the disclosures herein relate to matters within the knowledge of other professionals at KPMG LLP.

-2-

retaining KPMG LLP is an efficient and cost effective manner in which the Debtors may obtain the requisite services.

## SERVICES TO BE RENDERED

5. KPMG LLP anticipates that it may render to the Debtors the following services in this case:

   (a) **Tax Advisory and Consulting Services**

   i. review of and assistance in the preparation and filing of any tax returns;

   ii. advice and assistance to the Debtors regarding tax planning issues, including, but not limited to, assistance in estimating net operating loss carryforwards, international taxes, and state and local taxes;

   iii. assistance regarding transaction taxes and state and local sales and use taxes;

   iv. assistance regarding tax matters related to the Debtors' pension plans;

   v. assistance regarding real and personal property tax matters, including but not limited to review of real and personal property tax matters, negotiation of values with appraisal authorities, preparation and presentation of appeals to local taxing jurisdictions, and assistance in litigation of property tax appeals;

   vi. assistance regarding any existing or future Internal Revenue Service ("IRS"), state and/or local tax examinations;

   vii. a dvice and assistance on the tax consequences of proposed plans of reorganization, including, but not limited to, assistance in the preparation of IRS ruling requests regarding the future tax consequences of alternative reorganization structures;

   viii. assistance to the Debtors in modifying the Debtors' tools and processes for collecting data from the Debtors' foreign operations in support of the computation of an income tax provision;

   ix. serve as the Debtors' VAT representative in certain foreign jurisdictions; and

   x. other consulting, advice, research, planning or analysis regarding tax issues as may be requested from time to time.

-3-

(b) **International Executive Services provided to the Debtors and their Expatriates assigned to and from the United States, Expatriates assigned to and from non-U.S. countries, employees assigned to the Mexican Border and Trainees/J Visa holders**

  i. collect tax data;

  ii. calculate annual hypothetical tax withholding;

  iii. prepare required home and host country individual income tax returns during assignment, one year after assignment, and any additional years after assignment impacted by expatriate allowances and credits, as agreed upon between Delphi and KPMG LLP;

  iv. prepare requests for extension of time to file tax return(s) where required;

  v. prepare U.S. estimated tax vouchers, if required;

  vi. prepare year end withholding calculations;

  vii. reconcile tax advance accounts;

  viii. prepare tax equalization calculations;

  ix. conduct pre-departure and/or post-arrival tax consultation, as requested;

  x. determine and arrange for timely payment of local taxes in the host countries, where applicable;

  xi. conduct repatriation tax consultation sessions for expatriates;

  xii. handle routine correspondence with the IRS and foreign tax authorities, including review of tax assessments; and

  xiii. additional services as requested by the Debtors or its counsel to assist the Debtors regarding its expatriate employees.

(c) **Transaction Advisory & Other Services**

  i. provide sell-side due diligence services associated with the potential sale of certain businesses or assets of the Debtors;

        ii. provide buy-side due diligence services associated with the potential acquisition of certain businesses or assets by the Debtors;

        iii. provide accounting advice and assistance in conjunction with the preparation of financial information for the Debtors' business operations, as specified by the Debtors; and

        iv. other such functions as requested by the Debtors or its counsel to assist the Debtors in their businesses and reorganization.

6.    The services to be provided by KPMG LLP to the Debtors will not be unnecessarily duplicative of those provided by any of the Debtors' other professionals, and KPMG LLP will coordinate any services performed at the Debtors' request with such professionals, including financial advisors, accountants and counsel, as appropriate, to avoid duplication of effort.

7.    Subject to this Court's approval of the Application, KPMG LLP is willing to serve as one of the Debtors' tax and transaction services advisors and to perform the services described above on the terms set forth in the Engagement Letters and as set forth herein.

<u>OTHER TERMS AND CONDITIONS OF THE ENGAGEMENT LETTERS</u>

8.    Copies of the Engagement Letters are attached to the Application and were submitted for approval therewith. KPMG LLP's provision of services to the Debtors is contingent upon the Court's approval of each term and condition set forth in the Engagement Letters, as modified by the proposed order.

<u>Termination</u>

9.    Except for the Master Services Engagement Letter, the Debtors or KPMG LLP may terminate the Engagement Letters in the event of breach by the other party, which breach is not cured within thirty (30) days after notice by the non-breaching party, provided, however, that the terminating party shall notify the other. The Debtors or KPMG LLP may terminate the Master Services Engagement Letter at any time by giving written notice to the other party not less than thirty (30) calendar days before the effective date of termination. In addition, the terminating party

shall provide the Court, the Office of the United States (the "U.S. Trustee"), the Creditors' Committee and the Fee Review Committee (if any) with ten (10) business days' notice of termination. The provisions of the Engagement Letters relating to indemnification, limitation of liability, fees and expenses, and alternative dispute resolution will remain operative and in full force and effect regardless of any termination or expiration of the Engagement Letters and shall survive completion of the Debtors' bankruptcy, whether through a confirmed plan of reorganization, liquidation of the Debtors' assets under chapter 11 or 7 of the Bankruptcy Code, or otherwise.

Dispute Resolution

10.     Pursuant to the Engagement Letters, the Debtors and KPMG LLP have agreed that any dispute or claim between KPMG LLP and the Debtors arising out of or relating to the Engagement Letters or any other services provided by or on behalf of KPMG LLP to the Debtors or at the Debtors' request (including any dispute or claim involving any person or entity for whose benefit the services in question are or were provided) will be resolved in accordance with the dispute resolution procedures as set forth in the Engagement Letters (the "Dispute Resolution Procedures"). Notwithstanding the Dispute Resolution Procedures provided for in the Engagement Letters, KPMG LLP acknowledges that any dispute or claim relating to their engagement also may be brought before this Court.

11.     Pursuant to the Dispute Resolution Procedures, any party may request mediation of a dispute by a written request to the other party for mediation. KPMG LLP and the Debtors may use arbitration for (a) any dispute not resolved by mediation 90 days after the issuance of a written request for mediation, or (b) any dispute in which a party declares, more than 30 days after receipt of a written request for mediation, that mediation is an inappropriate means to resolve such dispute

and such party initiates a request for arbitration. The arbitration will be conducted before a panel of three arbitrators, which will issue its final award in writing and have no power to award non-monetary or equitable relief of any sort. Discovery will be permitted in connection with the arbitration only to the extent expressly authorized by the arbitration panel upon a showing of substantial need. The award reached at the end of arbitration will be binding on the parties, and confirmation of the arbitration award may be sought in any court having jurisdiction.

Indemnification

12.     Pursuant to the Tax Consulting Engagement Letter, the International Project Engagement Letter, the Revised International Project Engagement Letter, and the IES Engagement Letter, subject to the terms of the proposed order, the Debtors shall indemnify, defend, and hold harmless KPMG LLP, including its directors, officers, employees, agents, and representatives, from and against any and all claims, demands, actions, damages, liabilities, costs, and expenses, including reasonable attorney fees and expenses, to the extent arising out of or resulting from third party claims against KPMG LLP based on any of KPMG LLP's written or verbal work product prepared pursuant to the Tax Consulting Engagement Letter, the International Project Engagement Letter, the Revised International Project Engagement Letter, and the IES Engagement Letter and furnished by KPMG LLP to the Debtors for internal use (collectively, the "Internal Work Product Claims"). In addition, the Debtors shall indemnify, defend, and hold harmless KPMG LLP, including its directors, officers, employees, agents, and representatives, from and against any and all claims, demands, actions, damages, liabilities, costs, and expenses, including reasonable attorney fees and expenses, to the extent arising out of or resulting from third party claims against KPMG LLP based on any activities of KPMG LLP in connection with the performance of services under the Tax Consulting Engagement Letter, the International Project

Engagement Letter, the Revised International Project Engagement Letter, and the IES Engagement Letter (collectively, the "Non-Work Product Claims"); provided, however, that the Debtors will have no obligation to indemnify KPMG LLP to the extent that any Non-Work Product Claims arise out of or result from the negligence, illegal acts, or willful misconduct of KPMG LLP and/or its directors, officers, employees, agents, or representatives.

13.    Pursuant to the Tax Consulting Engagement Letter, the International Project Engagement Letter, the Revised International Project Engagement Letter, and the IES Engagement Letter, subject to the terms of the proposed order, KPMG LLP shall indemnify, defend, and hold harmless the Debtors, including their directors, officers, employees, agents, and representatives, from any and all claims, demands, actions, damages, liabilities, costs, and expenses, including reasonable attorney fees and expenses, to the extent arising out of or resulting from the negligence, illegal acts, or willful misconduct of KPMG LLP and/or its directors, officers, employees, agents, or representatives in connection with the performance of services under the Tax Consulting Engagement Letter, the International Project Engagement Letter, the Revised International Project Engagement Letter, and the IES Engagement Letter; provided, however, that KPMG LLP will have no obligation to indemnify the Debtors to the extent that any such claims or damages arise out of or result from Internal Work Product Claims.

14.    Pursuant to the Master Services Engagement Letter, subject to the terms of the proposed order, the Debtors on the one hand, and KPMG LLP on the other hand, each agrees to indemnify, hold harmless, and defend the other from and against any and all liabilities for physical injury to, or illness or death of, any person or persons regardless of status, and damage to or destruction of any tangible property, which the other party may sustain or incur, to the extent such liabilities result from the negligence or willful misconduct of the indemnifying party. Also

pursuant to the Master Services Engagement Letter, subject to the terms of the proposed order, the Debtors will indemnify, defend, and hold harmless KPMG LLP from and against any and all liabilities suffered by or asserted against KPMG LLP in connection with a third party claim to the extent resulting from such party's use or possession of or reliance upon KPMG LLP's advice, recommendations, information, or work product as a result of the Debtors' use or disclosure of such advice, recommendations, information, or work product.

15.    The Debtors and KPMG LLP seek, through the proposed order, to modify and amend the Engagement Letters to the extent that KPMG LLP will not be indemnified for claims arising out of KPMG LLP's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

Limitation on Liability

16.    Pursuant to the Engagement Letters, KPMG LLP's liability will be limited to (a) $500,000 with respect to services performed under the Tax Consulting Engagement Letter, (b) three times the professional fees paid under the International Project Engagement Letter and the Revised International Project Engagement Letter with respect to services performed thereunder, and (c) two times the professional fees paid under the IES Engagement Letter and the Master Services Engagement Letter with respect to services performed thereunder; provided, however, that with respect to services provided under the Tax Consulting Engagement Letter, the International Project Engagement Letter, the Revised International Project Engagement Letter, and the IES Engagement Letter, this limitation shall not apply (i) in the event of any breach relating to proprietary information of the Debtors, or (ii) if KPMG LLP is found to be grossly negligent or to have acted willfully or fraudulently. In no event will KPMG LLP or the Debtors be liable for consequential, special, indirect, incidental, punitive, or exemplary damages, costs,

expenses, or losses (including loss of profits, data, business, or goodwill), even if advised of the likelihood of such damages.

17. The Debtors and KPMG LLP seek, through the proposed order, to modify and amend the Engagement Letters to the extent that KPMG LLP's limitation of liability will not apply to claims arising out of KPMG LLP's own bad-faith, self-dealing, breach of fiduciary duty (if any), gross negligence, or willful misconduct.

18. The Application seeks an order approving the retention and employment of KPMG LLP in accordance with the terms and conditions of the Engagement Letters, which include the above dispute resolution, indemnification and limitation of liability provisions.

<u>Sub-Contracting Services to KPMG Member Firms</u>

19. KPMG LLP is the United States member firm of KPMG International. The KPMG global network encompasses independent professional services practices conducted by separate legal entities throughout the world. KPMG International, a Swiss cooperative, serves as a coordinating entity for a network of member firms operating under the KPMG name. KPMG International is a member-based entity with no shareholders and no permanent capital. Each of the member firms of KPMG International ("KPMG Member Firms") is separate and legally distinct.

20. Prior to the Petition Date, KPMG LLP subcontracted with certain other KPMG Member Firms to provide services to the Debtors under the Engagement Letters. At the Debtors' request, and subject to this Court's order, KPMG LLP will continue to subcontract with KPMG Member Firms to provide the services set forth in the Engagement Letters. KPMG LLP shall remain fully and solely responsible for all of its liabilities and obligations under the Engagement Letters.

21.     Accordingly, the Revised International Project Engagement Letter and the IES Engagement Letter contain the following or substantially similar language:

> Our services covered by this engagement letter may also necessitate the assistance of a member firm of KPMG International. To the extent that our services under this engagement letter require such assistance, the services will be provided under the direction of KPMG LLP, the U.S. member firm of KPMG International, and will include the participation of other member firms of KPMG International ("KPMG member firms"). KPMG LLP is a separate legal entity from other member firms of KPMG International. Advice relative to tax matters outside the United States will be based on tax advice provided by the KPMG member firm in the particular country and on the relevant tax authorities in that country. In rendering such advice, we may also consider U.S. tax treaties, their technical explanations, and judicial and administration interpretations thereof.

22.     KPMG Member Firms will assist KPMG LLP in the provision of services under the Engagement Letters, an arrangement that is beneficial to the estate for the following reasons. Through a coordinated approach to the provision of professional services, KPMG LLP and the other KPMG Member Firm(s) providing services under the Engagement Letters (the "Engagement Member Firms") are able to provide quality and efficiency to the Debtors.

23.     Furthermore, having KPMG LLP act as the clearinghouse for invoices submitted by the Engagement Member Firms will be more convenient to the Debtors by allowing billing to be centralized through a single invoice that settles budgeting and foreign currency issues. KPMG LLP will pay such Engagement Member Firms directly for their services, and will apply to the Court for reimbursement by the Debtors of any such payments made by KPMG LLP to the Engagement Member Firms. In light of the foregoing, the proposed order approving the Application provides the following:

> Notwithstanding anything to the contrary set forth in the engagement letters attached to the Application (the "Engagement Letters"), KPMG, without the Debtors' prior written approval, may subcontract a portion of its responsibilities under the Engagement Letters to any of the member firms of KPMG International (the "KPMG Member Firms"); provided, however, that KPMG shall remain fully

and solely responsible for all of KPMG's liabilities and obligations under the Engagement Letters.

Notwithstanding anything to the contrary set forth in the Engagement Letters, KPMG shall be solely responsible for all of KPMG's liabilities and obligations under the Engagement Letters, whether or not incurred or performed, in whole or part, by KPMG, any affiliate of KPMG, any KPMG Member Firm, or any of their respective affiliates. The Debtors shall have no recourse, and shall bring no claim, against any KPMG Member Firm other than KPMG, or against any subcontractors, members, shareholders, directors, officers, managers, partners, agents, representatives, or employees of any KPMG Member Firm (or any of their respective successors or permitted assigns), or any of their respective assets, with respect to the services or otherwise under the Engagement Letters.

## **DISINTERESTEDNESS OF PROFESSIONALS**

24.     Based upon a suggested interested parties list supplied by Debtors' counsel, KPMG LLP searched its client database from January 1, 2002 and forward to identify any connection or relationship with the following:

       a. the Debtors and its affiliates;

       b. the Debtors' officers and directors;

       c. the significant equity shareholders;

       d. the Debtors' major secured creditors;

       e. the Debtors' largest unsecured creditors;

       f. counsel to the Debtors;

       g. financial advisors and counsel to certain other parties-in-interest; and

       h. other parties-in-interest.

The suggested names provided to KPMG LLP by Debtors' counsel are set forth in Exhibit A hereto.

25. KPMG LLP does not hold or represent an interest adverse to the estate that would impair KPMG LLP's ability to objectively perform professional services for the Debtors, in accordance with section 327 of the Bankruptcy Code.

26. KPMG LLP is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code, as modified by section 1107(b) of the Bankruptcy Code, in that, to the best of my information and belief, KPMG LLP:

   a. is not a creditor, an equity security holder, or an insider of the Debtors;

   b. is not and was not an investment banker for any outstanding security of the Debtors;

   c. has not been within three years before the commencement of these chapter 11 cases, an investment banker for a security of the Debtors, or an attorney for such investment banker in connection with the offer, sale or issuance of a security of the Debtors;

   d. is not and was not, within two years before the commencement of these chapter 11 cases, a director, officer or employee of the Debtors or of an investment banker of the Debtors; and

   e. does not have an interest materially adverse to the interest of the estate or of any class of creditors or equity security holders, by reason of any direct or indirect relationship to, connection with or interest in the Debtors or an investment banker of the Debtors or for any other reason.

27. To the best of my knowledge, except as set forth herein and in <u>Exhibit B</u> attached hereto and incorporated herein by reference, (a) KPMG LLP has no connections with the Debtors' creditors, any other party-in-interest, or their respective attorneys and accountants, and (b) the KPMG LLP partners and professionals working on this matter are not relatives of the U.S. Trustee

of the Southern District of New York or of any known employee in the office thereof, or any United States Bankruptcy Judge of the Southern District of New York.

28. KPMG LLP has in the past been retained by, and presently and likely in the future will provide services for, certain creditors of the Debtors, other parties-in-interest, and their respective attorneys and accountants in matters unrelated to such parties' claims against the Debtors or interests in these chapter 11 cases. KPMG LLP currently performs or has previously performed such services for the entities listed in Exhibit B.

29. KPMG LLP has not provided, and will not provide, any professional services to any of the creditors, other parties-in-interest, or their respective attorneys and accountants with regard to any matter related to these chapter 11 cases.

30. As disclosed on Exhibit B, KPMG LLP provides services to General Motors Corporation, directly or on behalf of its counsel ("GM"). Among these services, KPMG LLP has assisted GM in its analysis of supplier credits, in assembling the relevant documents pertaining to such credits and in analyzing the facts and circumstances surrounding such credits. The Debtors are suppliers of GM and have issued credits which are included in the scope of these services. Out of an abundance of caution, KPMG LLP has instituted procedures (the "Screen Procedures") so that professionals who provide services to the Debtors will not provide services to GM, or share information concerning the Debtors with professionals providing services to GM. KPMG LLP has not, however, instituted the Screen Procedures to segregate by client those persons working in firm-wide functions (sometimes referred to as the "national office"), such as its Department of Professional Practice. Typically, such persons are not considered members of the engagement teams of either client, but act as specialists available for consultation when and if a particular need arises.

31. In addition, the Debtors have requested that certain KPMG LLP professionals, who also may be providing tax consulting services to GM, provide international tax consulting services to the Debtors. Specifically, with respect to the Debtors, these services are in the nature of advising the Debtors on various international tax planning and compliance matters, including opportunities for achieving a more tax-efficient worldwide structure, foreign subsidiary tax loss utilization, cross border financings, cash repatriation, foreign tax credit minimization/utilization, and internal restructurings. Such advice will be limited to technical tax analysis of facts and transactions, as requested by the Debtors, and will not involve negotiating with third parties on the Debtors' behalf. Because these services are not adversarial to any entity but, rather, are provided in the context of KPMG LLP separately and independently advising the Debtors (or GM) on their respective tax liabilities, KPMG LLP submits that it will not represent any interest adverse to the Debtors' estates as a result of having one or more of the KPMG LLP professionals that are providing services to GM also provide the services discussed above to the Debtors. KPMG LLP will not agree to have the same KPMG LLP professional provide services to both the Debtors and GM unless KPMG LLP has received waivers from both the Debtors and GM. Any KPMG LLP professionals who are authorized to provide such services to the Debtors and GM will not be included in the Screen Procedures.

32. KPMG LLP has not performed a comprehensive global search for potential relationships between the other KPMG International member firms and the Debtors, other parties-in-interest, and their respective attorneys and accountants. KPMG LLP cannot assure than an engagement will not be accepted by a foreign member firm of KPMG International for another party with respect to these chapter 11 cases. If KPMG LLP becomes aware of such an engagement, it will file with the Court a supplementary affidavit describing such engagement.

33. As set forth above, under the proposed subcontracting arrangement whereby Engagement Member Firms may provide services to certain foreign affiliates of the Debtors under the International Project Engagement Letter, the Revised International Project Engagement Letter and the IES Engagement Letter, KPMG LLP will pay such Engagement Member Firms directly for their services, and will apply to the Court for reimbursement by the Debtors of any such payments made by KPMG LLP to the Engagement Member Firms.[3]

34. In connection with pre-petition services rendered for the Debtors under the Engagement Letters, KPMG LLP has previously made payments to certain KPMG Member Firms that it anticipates may be engaged as Engagement Member Firms in the Debtors' chapter 11 cases. KPMG LLP submits that this subcontracting arrangement is far more beneficial to and conservative of estate resources than would be the case if each KPMG Member Firm were required to seek separate retention by the Debtors. Although the KPMG Member Firms are not undertaking full-fledged connections checks under this arrangement, no bankruptcy policies should be offended because their work has little or no relationship to the administration of these chapter 11 cases.

35. As part of its practice, KPMG LLP appears in many cases, proceedings, and transactions involving many different law firms, financial consultants, and investment bankers in matters unrelated to this bankruptcy. KPMG LLP has not identified any material relationships or connections with any law firm, financial consultant or investment banker involved in these chapter 11 cases that would cause it to be adverse to the Debtors, the Debtors' estate, any creditor or any other party-in-interest.

---

[3] The Application requests approval of an exception that any KPMG Member Firm providing services under the Engagement Letters will be permitted to use category codes to describe the time spent, rather than the more detailed descriptions usually required for fee applications.

36.  KPMG LLP's identification of material relationships is ongoing. If and when additional information becomes available with respect to any other relationships which may exist between KPMG LLP, foreign member firms of KPMG International, or their partners and professionals and the Debtor, creditors, or any other parties-in-interest which may affect these chapter 11 cases, supplemental affidavits describing such information shall be filed with this Court.

## PROFESSIONAL COMPENSATION

37.  Subject to this Court's approval and pursuant to the terms and conditions of the Engagement Letters, except as otherwise set forth below, KPMG LLP's requested compensation for professional services rendered to the Debtors will be based upon the hours actually expended by each assigned staff member at each staff member's hourly billing rate. Except as otherwise set forth below, the Debtors have agreed to compensate KPMG LLP for professional services rendered at its normal and customary hourly rates.

38.  In the normal course of business, KPMG LLP revises its hourly rates on October 1 of each year. KPMG LLP requests that the rates listed below be revised to the hourly rates that will be in effect at such time. The customary hourly rates for tax advisory and consulting services to be rendered by KPMG LLP are as follows:

| *Tax Advisory and Consulting Services:* | *Current Standard Rates:* |
| --- | --- |
| Partners | $625 - $725 |
| Senior Managers | $475 - $550 |
| Managers | $350 - $450 |
| Senior Staff | $275 - $325 |
| Staff | $250 - $300 |

With respect to the tax advisory and consulting services engagements, KPMG LLP has agreed to apply a voluntary discount as set forth in the International Project Engagement Letter, the Revised International Project Engagement Letter and the Tax Consulting Engagement Letter as follows:

| *Tax Advisory and Consulting Services:* | *Discounted Rates:* |
|---|---|
| Partners | $350-$425 |
| Senior Managers | $325-$375 |
| Managers | $300-$325 |
| Senior Staff | $225 |
| Staff | $175 |

The current customary rates for international executive services to be rendered by KPMG LLP are as follows:

*Flat rate charges for services rendered per Debtor employee*:

| Expatriates Assigned to the U.S. | $1,750 |
|---|---|
| Expatriates Assigned from the U.S. | $2,700 |
| Expatriates Assigned to/from non-US countries | $2,100 |
| Employees assigned to the Mexican Border | $750 |
| Trainees/J Visa Holders | $375 |

*Additional hourly rates (as applicable):*

| Partners | $760 |
|---|---|
| Senior Managers | $520 |
| Managers | $405 |
| Senior Staff | $320 |
| Staff | $260 |

The additional hourly rates set forth above are KPMG LLP's current standard hourly rates for such services, effective October 1, 2005. KPMG LLP has agreed to apply a voluntary discount (of at least 30%) as set forth in the IES Engagement Letter. With respect to the international executive services engagement, fees for monthly payroll assistance, amended returns, and the clearance

-18-

certificates have varying rates and have been set forth in the IES Engagement Letter. Unlike the standard hourly rates set forth above, these rates are not being discounted.

The range of current customary hourly rates for transaction services to be provided by KPMG LLP are as follows:

*Transaction Services:*

| | |
|---|---|
| Partners | $340 - $925 |
| Directors | $270 - $630 |
| Managers | $220 - $575 |

39. The rates included in this affidavit (exclusive of discounts) are KPMG LLP's normal and customary rates for matters of this sort.

40. KPMG LLP will also seek reimbursement for necessary expenses incurred, in accordance with guidelines established by the U.S. Trustee, which shall include travel, photocopying, delivery service, postage, vendor charges and other out-of-pocket expenses incurred in providing professional services.

41. KPMG LLP intends to apply to this Court for the allowance of compensation for professional services rendered and reimbursement of expenses incurred in accordance with the applicable provisions of the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), guidelines established by the U.S. Trustee, and the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York. KPMG LLP has agreed to accept as compensation such sums as may be allowed by this Court. KPMG LLP understands that interim and final fee awards are subject to approval by this Court.

42. KPMG LLP has received a retainer in connection with the services to be performed under the Engagement Letters. KPMG LLP intends to request that the unapplied residual retainer, which is estimated to total $79,962.50, be applied to the amount that KPMG LLP seeks in its first

interim fee application. During the 90 days prior to the Petition Date, KPMG LLP received approximately $3,871,117 from the Debtors, which KPMG LLP does not believe were preferential payments.

43.  In accordance with section 504 of the Bankruptcy Code, I hereby state that there is no agreement or understanding between KPMG LLP and any other entity, other than a member, partner or regular associate of KPMG LLP, for the sharing of compensation received or to be received for services rendered in connection with these proceedings.

44.  This affidavit is provided in accordance with section 327 of the Bankruptcy Code and Bankruptcy Rule 2014.

45.  I have read the Application, and, to the best of my knowledge, information and belief, the contents of said Application are true and correct.

Dated:      Detroit, Michigan
            February 9, 2006

By: _____
    Name: Patrick N. Karpen
    Title:

Sworn to before me on
this 9 day of February, 2006

_____
Notary Public

CHANDRA RENEE WALKER
NOTARY PUBLIC, STATE OF MI
COUNTY OF OAKLAND
MY COMMISSION EXPIRES May 29, 2012
ACTING IN COUNTY OF Wayne

-20-