**BROWN RUDNICK BERLACK ISRAELS LLP**

Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile:  (212) 209-4801
Robert Stark (RS 3575)

- and -

**BROWN RUDNICK BERLACK ISRAELS LLP**

One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Facsimile:  (617)  856-8201
Peter J. Antoszyk (motion for admission *pro hac vice* pending)

Counsel for Law Debenture Trust Company of New York,
As successor Indenture Trustee and Property Trustee
for the 8.25% Junior Subordinated Note Due 2033
and the Adjustable Rate Junior Subordinated Note Due 2033

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| | ) | Case No. 05-44481 (RDD) |
| DELPHI CORPORATION, et al., | ) | (Jointly Administered) |
| | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

**MEMORANDUM OF LAW DEBENTURE TRUST COMPANY OF NEW YORK**
**IN SUPPORT OF ITS MOTION**
**FOR LEAVE TO APPEAL**
**PURSUANT TO 28 U.S.C. §§ 158(a)(3) AND 1292(b)**
**AND THE COLLATERAL ORDER DOCTRINE**

# TABLE OF CONTENTS

I. PRELIMINARY STATEMENT ................................................................................................. 1

II. JURISDICTION AND VENUE .............................................................................................. 3

III. STATEMENT OF UNDISPUTED FACTS ........................................................................... 3

    A.     The Subordinated Notes. ......................................................................................... 3

    B.     The Chapter 11 Cases. ............................................................................................ 4

    C.     The Official Committee. .......................................................................................... 5

    D.     Law Debenture's Requests To Participate On The Committee And Its First
           Motion ..................................................................................................................... 7

    E.     The Bankruptcy Court Denies Law Debenture's First Motion. ............................. 9

IV. ISSUES TO BE APPEALED ................................................................................................ 10

V. ARGUMENT ........................................................................................................................... 10

    A.     Every Creditor Is Entitled To Adequate Representation On The Committee. ...... 10

    B.     Law Debenture's Motion For Leave To Appeal The Bankruptcy Court's
           Interlocutory Order Should Be Granted ............................................................... 11

          1.     The Bankruptcy Court Issued An Interlocutory Order. ............................. 11

          2.     Law Debenture's Interlocutory Appeal Should Be Permitted Pursuant To
               28 U.S.C. § 158(a)(3). .............................................................................. 12

          3.     This Interlocutory Appeal Should Be Permitted Pursuant To The Collateral
               Order Doctrine. ......................................................................................... 19

    C.     The Subordinated Noteholders Are Not Adequately Represented On The
           Committee ............................................................................................................. 22

          1.     The Bankruptcy Court Should Have Reviewed The United States Trustee's
               Refusal To Allow Law Debenture To Join The Committee De Novo ...... 22

          2.     The Bankruptcy Court's Findings Of Fact Regarding Capital Research
               And Wilmington Trust Were Clearly Erroneous. ..................................... 28

VI. CONCLUSION ...................................................................................................................... 33

# TABLE OF AUTHORITIES

## Cases

Cohen v. Beneficial Indus. Loan Corp.,
    337 U.S. 541 (1949) ........................................................................................................... 20

Coopers & Lybrand v. Livesay,
    437 U.S. 463 (1978) ........................................................................................................... 20

Klinghoffer v. S.N.C. Achille Lauro,
    921 F.2d 21 (2d Cir. 1990) ................................................................................................ 13

In re Pan Am Corp.,
    16 F.3d 513 (2d Cir. 1994) ................................................................................................ 20

Escondido Mission Vill. L.P. v. Best Products Co., Inc.,
    137 B.R. 114 (S.D.N.Y. 1992) .......................................................................................... 18

In re Adelphia Comms. Corp.,
    333 B.R. 649 (S.D.N.Y. 2005) ................................................................................... 12, 16

In re Edison Brothers Stores, Inc.,
    No. Civ. A 96-177, 1996 WL 363806 (D. Del. June 27, 1996) .......................................... 21

In re Ionosphere Clubs, Inc.,
    179 B.R. 24 (S.D.N.Y. 1995) ............................................................................................ 12

In re Lykes Bros. Steamship Co., Inc.,
    200 B.R. 933 (M.D. Fla. 1996) ................................................................................... 18, 24

In re Neuman,
    1990 WL 67704 (S.D.N.Y. May 15, 1990) ........................................................................ 17

In re Orlan,
    138 B.R. 374 (E.D.N.Y. 1992) .......................................................................................... 19

In re Value Merchants, Inc.,
    202 B.R. 280 (E.D. Wis. 1996) ................................................................... 15, 23, 25, 31

In re Victory Markets, Inc.,
    195 B.R. 9 (N.D.N.Y. 1996) ............................................................... 11, 12, 17, 19

In re WorldCom, Inc.,
    2003 WL 21498904 (S.D.N.Y. 2003) ................................................................................ 13

Mirant Americas Energy Marketing, L.P. v. The Official Committee of Unsecured Creditors of
    Enron Corp. (Enron II),
    No. Civ. 02-6274, 2003 WL 22327118 (S.D.N.Y. Oct. 10, 2003) .. 11, 12, 16, 19, 28, 30, 31

North Fork Bank v. Abelson,
    207 B.R. 382 (E.D.N.Y. 1997) ................................................................................ 13, 16

Robinson v. Johns-Manville Corp., (In re Johns-Manville Corp.),
    45 B.R. 833 (S.D.N.Y. 1984) ........................................................................................ 18

In re Barney's, Inc.,
    97 B.R. 431 (Bankr. S.D.N.Y. 1996) ............................................................ 15, 23, 26, 27

In re Columbia Gas System,
    133 B.R. 174 (Bankr. D.Del. 1991).......................................................................... 15, 23, 27

In re Dow Corning Corp.,
    194 B.R. 121 (Bankr. E.D.Mich. 1996) ........................................................... 15, 17, 24, 25

In re Drexel Burnham Lambert Group, Inc.,
    118 B.R. 209 (Bankr. S.D.N.Y. 1990) ................................................................................ 16

In re Enron Corp.,
    279 B.R. 671 (Bankr. S.D.N.Y. 2002) ........................................... 11, 13, 15, 17, 23, 25, 30

In re Fas Mart Convenience Stores, Inc.,
    265 B.R. 427 (Bankr. E.D. Va. 2001) ........................................................................... 15, 27

In re First RepublicBank Corp.,
    95 B.R. 58 (Bankr. N.D. Tex 1988) ....................................................................... 15, 25, 27

In re Garden Ridge Corp.,
    No. 04-10324, 2005 WL 523129 (Bankr. D. Del. 2005) ................................................... 11

In re Hills Stores Co.,
    137 B.R. 4 (Bankr. S.D.N.Y. 1992) ............................................................................... 15, 30

In re Mercury Finance Co.,
    240 B.R. 270 (Bankr. N.D. Ill. 1999).......................................................................... 23, 27

In re Northeast Dairy Coop. Fed'n, Inc.,
    59 B.R. 531 (Bankr. N.D.N.Y. 1986)................................................................................ 11

In re Pierce,
    237 B.R. 748 (Bankr. E.D. Cal. 1999) ......................................................................... 15, 27

In re Plabell Rubber Products,
    140 B.R. 179 (Bankr. N.D. Ohio 1992) ............................................................................ 23

In re Public Service Co. of New Hampshire,
    89 B.R. 1014 (Bankr. D.N.H. 1988).................................................................................. 24

In re Sharon Steel Corp.,
    100 B.R. 767 (Bankr. W.D.Pa. 1989).............................................................................. 30

## Statutes, Rules and Other

11 U.S.C § 105 ............................................................................................................... 23, 24

11 U.S.C. §1102 ..................................................................................................... 10, 23, 24, 25

11 U.S.C § 1104 ...................................................................................................................... 10

11 U.S.C § 1107 .................................................................................................................. 4, 10

11 U.S.C § 1108 ........................................................................................................................ 4

28 U.S.C. § 158 ......................................................................................................... 1, 3, 12, 22

28 U.S.C. § 1292 ..................................................................................................... 12, 18, 19

28 U.S.C. § 1334 ...................................................................................................................... 3

28 U.S.C. § 1408 ...................................................................................................................... 3

28 U.S.C. § 1409 ...................................................................................................................... 3

Fed. R. Bankr. P. 2007 ........................................................................................................... 24

Fed. R. Bankr. P. 7001 ........................................................................................................... 10

Fed. R. Bankr. P. 8013 ........................................................................................................... 22

Fed. R. Bankr. P. 9014 ........................................................................................................... 10

H.R.Rep. No. 99-764, 99th Cong., 2nd Sess. 18 (1986) ......................................................... 26

7 Collier on Bankruptcy, ¶ 1103.05 (15th ed. Rev. 2005)....................................................... 11

Law Debenture Trust Company of New York ("<u>Law Debenture</u>"), by and through

its undersigned counsel, hereby submits this Memorandum in Support of its Motion, pursuant

to 28 U.S.C. §§ 158(a)(3) and 1292(b), for Leave to Appeal an interlocutory order by the

United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy</u>

<u>Court</u>") entered on February 8, 2006.

## I. PRELIMINARY STATEMENT

1.      On October 8, 2005 (the "<u>Petition Date</u>"), Delphi Corporation ("<u>Delphi</u>")

and certain of its affiliates and subsidiaries (collectively, "<u>Debtors</u>") each filed with the

Bankruptcy Court voluntary petitions for relief under Chapter 11 of Title 11 of the United

States Code (the "<u>Bankruptcy Code</u>"), commencing the within cases (the "<u>Cases</u>").  At that

time, Debtors had more than 180,000 employees worldwide, global annual revenues of

approximately $28.6 billion, and global assets worth approximately $17.1 billion.

2.      The Cases represent the largest manufacturing and technology filing in the

history of the federal bankruptcy system and ranked on the Petition Date as (1) the fifth

largest public company business reorganization in terms of revenues and (2) the thirteenth

largest public company reorganization in terms of assets.  According to the Debtors, the

Cases will involve substantial restructuring, including divestiture, consolidation and wind-

down of a substantial segment of the Debtors' U.S. business operations.

3.      Law Debenture is the successor Indenture Trustee and Property Trustee for

the holders of the (a) 8.25% Junior Subordinated Note Due 2033 and (b) adjustable Rate

Junior Subordinated Note Due 2033 (together, the "<u>Subordinated Notes</u>") issued pre-petition

by Delphi.  The Subordinated Notes have an aggregate principal amount of $412,371,975.

The Subordinated Notes are either contractually or structurally subordinate to <u>all</u> other

1

unsecured debt.[1] The Subordinated Noteholders[2] thus have the singular distinction of being in the most tenuous position in the capital structure – junior in all respects to <u>all</u> other creditor classes and senior <u>only</u> to equity.

4.      Notwithstanding this unique position, the Subordinated Noteholders are not represented on the Official Committee of Unsecured Creditors (the "<u>Committee</u>").  The Committee consists only of representatives of general unsecured debt other than the Subordinated Noteholders, all of whom are senior in right of payment to the those of the Subordinated Noteholders.  Efforts of Law Debenture to be appointed to the Committee were rejected by the United State Trustee and opposed by the Debtors and the Committee.

5.      Consequently, Law Debenture sought relief from the Bankruptcy Court by means of a motion seeking inclusion on the Committee (the "<u>First Motion</u>"[3]).  On February 8, 2006, following an Omnibus Hearing (the "<u>Hearing</u>") held on January 6, 2006, at which it considered a variety of motions and issues, including the First Motion, the Bankruptcy Court entered an interlocutory order denying Law Debenture's request.[4]  It denied Law Debenture's First Motion because it found that the U.S. Trustee did not abuse her discretion in its formulation of the Committee.

6.      Law Debenture respectfully submits that the Bankruptcy Court applied an erroneous legal standard – abuse of discretion – for review of the U.S. Trustee's actions.  As

---

[1]   Law Debenture does not waive any right it may have or any right of any holder of the Subordinated Notes to challenge the subordination provisions of the Indenture.  However, as the Bankruptcy Court noted, until challenged, it is fair to assume the effectiveness of the subordination provisions.  <u>See</u> Tr. 167:21-25.

[2]   For convenience, the term "<u>Subordinated Noteholders</u>" is used herein to refer to the ultimate beneficiaries of the Subordinated Notes, notwithstanding the technical fact that Law Debenture, as Property Trustee, is currently the sole holder of the Subordinated Notes.

[3]   A true and correct copy of that motion (the "<u>First Motion</u>") is attached hereto as <u>Exhibit 1</u>.

[4]   A true and correct copy of the transcript from the Hearing is attached hereto as <u>Exhibit 2</u>.  The relevant portion of the transcript begins on page 115 and continues thru page 171.

will be demonstrated, the Bankruptcy Court should have reviewed the U.S. Trustee's actions *de novo*, and, had the Bankruptcy Court applied the correct legal standard of review, Law Debenture's First Motion would have been granted.    Consequently, Law Debenture respectfully submits that the Bankruptcy Court's denial of its motion should be reversed and that this Court either (i) appoint Law Debenture to the Committee or (ii) remand the matter for further consideration by the Bankruptcy Court consistent with the law.

## II.  JURISDICTION AND VENUE

7.    This   Court   has   jurisdiction   over   this   Motion   pursuant   to 28 U.S.C. §§ 158(a)(3)   and   1334.    Venue   is   proper   in   this   District   pursuant   to 28 U.S.C. §§ 1408 and 1409.

## III.  STATEMENT OF UNDISPUTED FACTS

A.        **The Subordinated Notes.**[5]

8.    As noted above, Law Debenture is the successor Indenture Trustee and Property Trustee for the Subordinated Notes issued by Delphi.  The Subordinated Notes have an aggregate principal amount of $412,371,975.  The beneficiaries of these notes represent, as a class, one of the seven largest unsecured claims against the Debtors.

9.    The Subordinated Notes were issued by Delphi, the parent corporation, pursuant to an indenture, dated as of October 28, 2003 (the "Indenture").[6]  Law Debenture serves as successor Indenture Trustee under the Indenture.

10.    The Subordinated Notes are presently held by two Delaware statutory

---

[5]        The facts and circumstances surrounding Law Debenture's request were not disputed in the record before the Bankruptcy Court.

[6]        A true and correct copy of the Indenture is attached as Exhibit 3.

3

trusts: Delphi Trust I and Delphi Trust II (together, the "Statutory Trusts").[7]  Law Debenture

serves as successor Property Trustee for both of the Statutory Trusts and, as such, is currently

the sole holder of the Subordinated Notes.

11.     The Statutory Trusts in turn issued publicly-held trust preferred securities

(sometimes colloquially referred to as "Topper" securities, they are referred to herein as the

"TPRS"), which are backed by the Subordinated Notes.  Pursuant to the Declarations of

Trust, Law Debenture is obligated to deliver distributions with respect to the Subordinated

Notes to holders of the TPRS.

12.     For the purposes of this Motion, there is no dispute, and the Bankruptcy

Court so determined for the limited purposes of the First Motion, that the Subordinated Notes

are either structurally or contractually subordinate to all other classes of unsecured creditors.

Tr. 167:21-25. As such, the Subordinated Noteholders will be paid only after all other

creditors, whether at a subsidiary level or parent level, are paid in full.

**B.     The Chapter 11 Cases.**

13.     On  the Petition Date, the Debtors each filed with the Court voluntary

petitions for relief under Chapter 11 of Title 11 of the Bankruptcy Code.  The Debtors have

continued to manage and operate their businesses and property as debtors-in-possession

pursuant to Bankruptcy Code Sections 1107 and 1108.  Neither a trustee nor an examiner has

been appointed in any of the Cases.

14.     The Debtors have more than 180,000 employees worldwide, global 2004

---

[7]     A true and correct copy of the *Amended and Restated Declaration of Trust*, dated as of October 28, 2003, establishing Delphi Trust I (the "Declaration of Trust I"), is attached as Exhibit B to Law Debenture's First Motion and is incorporated herein by reference.  A true and correct copy of the *Amended and Restated Declaration of Trust*, dated as of November 21, 2003, establishing Delphi Trust II (the "Declaration of Trust II" and, together with Declaration of Trust I, the "Declarations of Trust"), is attached as Exhibit C to Law Debenture's First Motion and is incorporated herein by reference.

revenues of approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1 billion (based upon aggregated consolidated financial data). The Cases represent the largest manufacturing and technology filing in the history of the federal bankruptcy system and ranked on the Petition Date as (1) the fifth largest public company business reorganization in terms of revenues and (2) the thirteenth largest public company reorganization in terms of assets. According to the Debtors, the Cases will involve substantial restructuring, including divestiture, consolidation and wind-down of a substantial segment of the Debtors' U.S. business operations.

15.    The Debtors' unsecured debt can generally be categorized as follows: (1) $2 billion in senior notes (the "Senior Notes"), issued by Delphi; (2) general unsecured claims arising from operations, consisting of such claims as trade claims, employee and pension claims, and other general unsecured claims; and (3) Subordinated Notes issued by Delphi.

C.    **The Official Committee.**

16.    Shortly after the Petition Date, on or about October 20, 2005, the United States Trustee conducted an organizational meeting of the Debtors' general unsecured creditors. Prior to and during the organizational meeting, the U.S. Trustee solicited creditors' expressions of interest in serving as members of the Committee. Law Debenture submitted a request to serve on the Committee at that time.

17.    Thereafter, the U.S. Trustee appointed a seven-member committee. The Committee, as constituted by the U.S. Trustee, presently consists of four trade creditors, one labor union, the Indenture Trustee for the Senior Notes, and an institutional investor in the Debtors' bond debt. The members are:

Electronic Data Systems Corp., a trade creditor;

5

General Electric Company, a trade creditor;
Flextronics International Asia-Pacific, Ltd., a trade creditor;
Freescale Semiconductor, Inc., a trade creditor;
IUE-CWA, a labor union representative;
Wilmington Trust Company, the Indenture Trustee for the Senior Notes; and
Capital Research and Management Company, an institutional investor.

18.     The four trade creditors represent unsecured trade debt claims that are contractually or structurally senior to the Subordinated Notes.  The labor union represents employee claims and interests, which are also structurally senior to the Subordinated Notes.

19.     The fifth member of the Committee, Wilmington Trust Company ("Wilmington Trust"), is the Delaware Statutory Trustee for the two Statutory Trusts, but is not positioned to represent the interests of the Subordinated Noteholders.   Under the Declarations of Trust, Wilmington Trust's role is only administrative (i.e., it is a "statutory" trustee, with only ministerial rights and responsibilities, such as receiving service of process in Delaware), meaning that it has absolutely no authority under those documents to act for or protect the interests of the Subordinated Noteholders (i.e., it is not the Indenture Trustee or the Property Trustee, with substantive rights to act for its constituency).  See Tr. 161:13-15, 23-25,  162:1-3.  Also, the Statutory Trusts likely soon will be dissolved and liquidated and, thereafter, Wilmington Trust will not have any connection with the Subordinated Notes or the Subordinated Noteholders.[8]   Perhaps most importantly, Wilmington Trust is the Indenture Trustee for the $2 billion in Senior Notes.  Pursuant to the Trust Indenture Act, Wilmington Trust cannot meaningfully advocate the interests of the Subordinated Noteholders while, at the same time, serving as Indenture Trustee for the Senior Notes, other than in a manner

---

[8]     Pursuant to the Declarations of Trust, the Delphi's Chapter 11 filing constitutes an "early termination event."  As a result, it is likely that both Statutory Trusts will soon be liquidated and dissolved in accordance with the Declarations of Trust.  Upon liquidation and dissolution of the Statutory Trusts, the holders of the TPRS will be allocated pro rata interests in the Subordinated Notes.  Thereafter, Law Debenture will continue to represent the individual holders of the Subordinated Notes as Indenture Trustee.

consistent with its general fiduciary duty to creditors as a member of the Committee, a point

that Wilmington Trust does not dispute.  See Tr. 161:13-15, 23-25,  162:1-3.

20.    The final member of the Committee, Capital Research and Management

Company ("Capital Research"), holds $500 million in Senior Notes and $30 million of the

Subordinated Notes.  Capital Research, accordingly, has a far greater interest in advocating

the interests of the Senior Noteholders and is, at best, inherently conflicted.

**D.    Law Debenture's Requests To Participate On The Committee And Its First Motion.**

21.    Law Debenture, upon learning that it was not appointed to the Committee

as initially formulated, made repeated and timely requests to be appointed to the Committee.

Among other things, promptly following the formation meeting, Law Debenture requested

that the U.S. Trustee reconsider her decision not to appoint it to the Committee.  To that end,

on October 25, 2005 (i.e., only a few days after the formation meeting), Law Debenture's

counsel sent a letter to the U.S. Trustee specifying the reasons why she should appoint Law

Debenture to the Committee.[9]

22.    On November 2, 2005, the U.S. Trustee invited the Debtors and the

Committee to comment on Law Debenture's request.[10]    Both responded opposing Law

Debenture's request.

23.    By December 14, 2005, the U.S. Trustee had not acted on Law

Debenture's request to be added to the Committee.  On December 19, 2005, the Debtors

issued a press release strongly suggesting that they were moving forward with in-depth

---

[9]    A true and correct copy of Law Debenture's October 25, 2005 letter is attached as Exhibit 4.

[10]    A true and correct copy of the United States Trustee's November 2, 2005 letter to the Debtors and the
Official Committee is attached as Exhibit 5.

negotiations with their labor representatives and with General Motors Corporation.[11]  Law

Debenture has a vital interest in participating in such negotiations as a member of the

Committee, as this issue will likely be the single most important factor in determining

affecting the amount of estate value available for distribution to all creditors, particularly the

Subordinated Noteholders who are "last out."   The U.S. Trustee's delay in reaching a

decision on Law Debenture's appointment request left Law Debenture in an untenable

situation.    Law Debenture therefore filed its First Motion seeking an order from the

Bankruptcy Court appointing it to the Committee.[12]  See Exhibit 1.

24.    The Debtors, the United States Trustee, and the Committee, each objected

to the First Motion.  A true and correct copy of the Debtor's objection is attached hereto as

Exhibit 7; a true and correct copy of the United States Trustee's objection is attached hereto

as Exhibit 8; a true and correct copy of the Committee's objection is attached hereto as

Exhibit 9.

25.    Capital Research submitted a Statement in response to the First Motion.  A

true and correct copy of that Statement is attached hereto as Exhibit 10.[13]

26.    Wilmington Trust also submitted a Statement in response to the First

Motion.  A true and correct copy of that Statement is attached hereto as Exhibit 11.

---

[11]    A true and correct copy of this press release is attached as Exhibit 6.

[12]    While the United States Trustee is entrusted with the administrative task of appointing official committees, a party in interest who claims that it is not adequately represented on an official committee may apply directly to the court for relief.   See In re Texaco, Inc., 79 B.R. 560, 566 (Bankr. S.D.N.Y. 1987). Moreover, an interested party is not required to first submit its request for relief to the United States Trustee.  Id.   Thus, Law Debenture's First Motion was appropriate and submitted in a timely fashion.

[13]    In its Statement, Capital Research stressed the creation of an "information wall" that allegedly prevents the improper transmission of non-public  information gained as a result of its membership on the Committee to Debtors' competitors.  However, the existence of that "wall" does nothing to prevent the conflict of interest inherent in Capital Research' alleged representation of both Senior Notes and sub-debt on the Committee.

**E.**    **The Bankruptcy Court Denies Law Debenture's First Motion.**

27.    On January 5, 2006, the Bankruptcy Court conducted an Omnibus Hearing regarding a variety of issues, including the First Motion.  The Bankruptcy Court issued its decision denying Law Debenture's First Motion from the bench.  In that interlocutory order, the Bankruptcy Court held that "at least as to whether a particular member should be appointed to a committee, the trustee's decision should be reviewed on an abuse-of-discretion basis, given the [United States] Trustee's administrative function in deciding which individual member should serve on a committee."  Tr. 166:21-25.

28.    In that interlocutory order, the Bankruptcy Court also noted that:

[T]he committee needs to be diversely representative to properly function, so that it is giving meaningful voice to all classes. However, the objectants also appropriately note that there are limitations to that principle.  I believe those limitations apply here for a number of reasons.

First, there is a significant sub-debt holder serving on the committee … Cap[ital] Re[search], which holds, through one or more of its funds, approximately ten percent of the subordinated debt claims.

Second, because both Cap[ital] Re[sources] and Wilmington Trust, which represents at least a voice on the committee [for] senior debt holders, are both representatives of indebtedness at the parent-company level.  And when considering many, perhaps the majority, of the decisions made by the committee in this particular case, it appears to me that the need to have a voice that the movant here is asserting is, more importantly, one that represents the interests of the parent company in considering all of the difficult business issues that these debtors need to evaluate and consider with the committee's help, rather than inter-creditor issues at the parent level.

So I believe that, in light of those two facts and my conclusion that the trustee was not confused into a belief that Wilmington Trust might be speaking for the sub-debt class . . . I think that the trustee acted appropriately in forming the committee and that the committee does adequately represent the interests of all the unsecured creditors, including the sub-debt.

Tr. 168:3-169:5.

29.     On February 8, 2006, an order was entered denying Law Debenture's First

Motion.  A true and correct copy of that Order is attached hereto as <u>Exhibit 12</u>.

**IV.  ISSUES TO BE APPEALED**

30.     Did the Bankruptcy Court commit an error of law when it reviewed the

U.S. Trustee's refusal to appoint Law Debenture to the Committee for abuse of discretion

instead of *de novo*?

31.     Did the Bankruptcy Court commit clear error when it determined that the

Committee adequately represented the interests of the Subordinated Noteholders?

**V.  ARGUMENT**

**A.     <u>Every Creditor Is Entitled To Adequate Representation On The Committee.</u>**

32.     In 1978, Congress enacted the Bankruptcy Code, which provides a guide

to the reorganization of companies in the United States.   The Chapter 11 process has

developed through the years to be both an adversarial and a conciliatory process.  <u>See</u> Fed. R.

Bankr. P. 7001, 9014.  A representative of the debtor (the "debtor-in-possession" or Chapter

11 Trustee) sits on one side of the aisle for purposes of litigation and/or negotiation in a

Chapter 11 case.  <u>See</u> 11 U.S.C §§ 1104, 1107.  An official committee of unsecured creditors

sits on the other side of the aisle.  <u>See</u> 11 U.S.C. § 1102.

33.     It is the official creditors' committee that is responsible for petitioning the

Bankruptcy Court to modify, control, or curtail the debtor's stewardship of estate assets if

circumstances dictate.  <u>See</u> 7 <u>Collier on Bankruptcy</u>, ¶ 1103.05 [1][b] at 1103-23 (15th ed.

Rev. 2005) ("A committee should also not hesitate to oppose actions of the debtor in court.").

34.     Given the central role of the committee, it is not surprising that, as the

10

Bankruptcy Court recognized, in connection with the formation of a committee in any bankruptcy, there is a "requirement of adequate representation under the law." Tr. 168:2. Regarding what constitutes adequate representation, "the analysis is without question to be determined on a case-by-case basis." Enron II, 2003 WL 22327118, at *6. However, if "interests critical to the formulation of a successful plan are unrepresented," then the Committee is clearly not representative. In re Northeast Dairy Coop. Fed'n, Inc., 59 B.R. 531, 534 (Bankr. N.D.N.Y. 1986). Moreover, there is no doubt that adequate representation includes ensuring each major group of creditors has a "meaningful voice" on the committee so that no group is disenfranchised. In re Enron Corp., 279 B.R. 671, 688 (Bankr. S.D.N.Y. 2002) ("Enron I"); see also Enron II, 2003 WL 22327118, at *6; In re Garden Ridge Corp., No. 04-10324, 2005 WL 523129, at *3 (Bankr. D. Del. 2005) (gathering cases).

35.    In this case, while the Bankruptcy Court clearly recognized the important principles of adequate representation, it erroneously reached the conclusion, applying an erroneous legal standard of review, that Wilmington Trust and Capital Research can adequately represent the interests of the Subordinated Notes notwithstanding the fact that both parties are inherently conflicted from representing the interests of the Subordinated Notes in an independent fashion. As more fully set forth below in Section C, there are ample grounds for the reversal of the Bankruptcy Court's decision. As a threshold matter, however, this Court must first grant leave for Law Debenture to appeal these important issues.

**B.    Law Debenture's Motion For Leave To Appeal The Bankruptcy Court's Interlocutory Order Should Be Granted.**

**1.    The Bankruptcy Court Issued An Interlocutory Order.**

36.    A bankruptcy court's denial of a request for appointment to an official committee is an interlocutory order. See Enron II, 2003 WL 22327118, at *2; In re Victory

11

Markets, Inc., 195 B.R. 9, 13 (N.D.N.Y. 1996).  District courts in the Second Circuit will permit appeals from interlocutory orders pursuant to either 28 U.S.C. §158(a)(3) or the collateral order doctrine.  In re Adelphia Comms. Corp., 333 B.R. 649, 657 (S.D.N.Y. 2005).

37.    As such, Law Debenture can prosecute this appeal with leave of this Court which this Court may grant pursuant to 28 U.S.C. § 158(a)(3), or if the appeal is permitted pursuant to the collateral order doctrine.  This appeal meets either criteria.

**2.    Law Debenture's Interlocutory Appeal Should Be Permitted Pursuant To 28 U.S.C. § 158(a)(3).**

38.    Section 158(a)(3) provides, in pertinent part, that "[t]he district courts of the United States shall have jurisdiction to have appeals . . . with leave of the court, from . . . interlocutory orders and decrees."  Although 28 U.S.C. § 158(a)(3) provides no statutory criteria for determining whether to grant leave to appeal an interlocutory order, courts in this Circuit have granted appeals of interlocutory orders when a proponent of an interlocutory appeal meets the three-pronged test set forth in 28 U.S.C. § 1292(b) or there are other "exceptional circumstances."  Enron II, 2003 WL 22327118, at *2.

**(i)    This Appeal Meets the Three-Pronged Test of 11 U.S.C. § 1292(b).**

39.    Under the three-pronged test of § 1292(b), a district court will grant leave to appeal in its discretion if the interlocutory order "(1) involves a controlling question of law (2) over which there is a substantial ground for difference of opinion and (3) if an immediate appeal would materially advance the ultimate termination of the litigation."  Id. (quoting In re Ionosphere Clubs, Inc., 179 B.R. 24, 28 (S.D.N.Y. 1995)).  Each of these requirements is met here.

(1)    *This Appeal Involves A Controlling Question Of Law*.

40.    An interlocutory appeal involves a "question of law" if the issue can be

12

decided "quickly and cleanly without having to study the record." In re WorldCom, Inc.,
2003 WL 21498904, at *10 (S.D.N.Y. June 30, 2003). A question of law is "controlling" if
its resolution on appeal will terminate the action or, at a minimum, materially affect the
outcome of the litigation. Klinghoffer v. S.N.C. Achille Lauro, 921 F.2d 21, 25 (2d Cir.
1990); North Fork Bank v. Abelson, 207 B.R. 382, 390 (E.D.N.Y. 1997).

41.     The question on appeal in this case – whether the Bankruptcy Court
applied the correct standard in reviewing the U.S. Trustee's decision to exclude Law
Debenture from membership on the Committee because it found that the existing members of
the Committee adequately represented the interests of the Subordinated Noteholders – is a
purely legal one. This Court's review of which standard – de novo or abuse of discretion – is
the appropriate standard does not require a factual review of the record. It is purely a
question of law involving statutory interpretation and review of conflicting case law.

42.     Moreover, determination of the issue will materially affect the litigation,
here the Chapter 11 proceeding. There is no question that the Committee plays a central role
in the reorganization proceedings – it is meant to be representative of the interests of all
creditors. As such, it is critically important that it be representative of the interests of the
divergent classes of creditors of the Debtors. If it is not representative of the divergent
classes of creditors, it cannot function properly as a representative body. See Enron I, 279
B.R. at 685. If it is later determined that a committee has not functioned properly during the
Chapter 11 proceedings, it will throw into question and render invalid all of the acts of the
committee. As more fully set forth below, it could, at a minimum, result in substantial delay
and materially increase the cost of the Chapter 11 proceedings. Resolution of the issue on
appeal at this junction will resolve the issue before the case proceeds too far. See In re

13

<u>McLean Industries, Inc.</u>, 70 B.R. 852, 862-63 (Bankr. S.D.N.Y. 1987) (noting that adequate

representation should be decided expeditiously and "before significant bridges are crossed").

> 2.    *There Is A Genuine Dispute As To The Applicable Standard Of Review Of The U.S. Trustee's Actions.*

43.    Moreover, there is substantial controversy as to the applicable legal

standard.  The briefs filed by the parties in the proceeding below and the transcript of the

hearing reflects that counsel for the various parties had divergent opinions as to the applicable

legal standard.  Counsel for Law Debenture expressly recognized the split of authority during

the hearing,  <u>See</u> Tr. 129:15-25 ("there has been in the past a split of authority…with regard

to the standard of review"), and advocated for a *de novo* review.  <u>See</u> Tr. 130:1-5 ("the issue

of adequate representation…is a de novo determination").  The U.S. Trustee and the Debtors

advocated the abuse of discretion standard.  <u>See</u> Tr. 143:3-3 ("we <u>think</u> the standard that the

Court should entertain would be that [] articulated in the <u>Barney's</u> case"); Tr. 151:25-152:1

("It really is sort of an abuse of discretion, arbitrary and capricious, and we would add a third

element, interest of justice, [which] approaches and considerations for the Court

are…reasonable to consider").[14]

44.    One bankruptcy court, which reviewed the confused state of the law in this

area quoted the following passage in its 1996 decision from a law review article:

> "No issue involving creditors' committees has been the subject of as much concern as the ability to alter the composition of a committee.  Unfortunately, no other body of law governing creditors' committees appears to be in such a current state of disarray.  With almost no guidance from Congress or the appellate courts, the bankruptcy courts have been left to fashion rules regarding the removal and addition of committee members.  As a consequence, the case law does not represent a seamless web, but

---

[14]    Committee counsel demurred on the issue entirely.  <u>See</u> Tr. 149:9-15 ("Your Honor, I am not going to address the underlying issue here of whether this Court has the power to grant the motion or, if so, pursuant to what standard…").

14

rather more of a disjointed patchwork of decisions that cannot be reconciled easily."

In re Dow Corning Corp., 194 B.R. 121, 130 (Bankr. E.D. Mich. 1996) (quoting Klee & Shaffer, Creditors' Committees under Chapter 11 of the Bankruptcy Code, 44 S.C.L.Rev. 995, 1032 (Summer 1993)).

45.    Little has changed since 1996, as there remains tremendous confusion as to the applicable standard of review and no guidance from appellate courts.    Compare In re Fas Mart Convenience Stores, Inc., 265 B.R. 427, 431 (Bankr. E.D. Va. 2001) (Trustee's decisions reviewed for abuse of discretion); In re Pierce, 237 B.R. 748, 754 (Bankr. E.D. Cal. 1999) (same); In re Barney's, Inc., 197 B.R. 431 (Bankr. S.D.N.Y. 1996) (same); In re Columbia Gas System, 133 B.R. 174, 176 (Bankr. D. Del. 1991) (same) with Enron I, 279 B.R. at 684 (adequacy of representation is a legal question that must be determined by the courts *de novo*); In re Value Merchants, Inc., 202 B.R. 280, 284 (E.D. Wis. 1996) (same); In re First RepublicBank Corp., 95 B.R. 58, 59 (Bankr. N.D. Tex 1988) (same); McLean, 70 B.R. at 859 (same); In re Texaco Inc., 79 B.R. 560, 566 (Bankr. S.D.N.Y. 1987) (same).  A few older cases have even held that the courts are powerless to affect the makeup of a committee appointed by the United States trustee.  See, e.g., In re Hills Stores Co., 137 B.R. 4, 8 (Bankr. S.D.N.Y. 1992); In re Drexel Burnham Lambert Group, Inc., 118 B.R. 209, 210-11 (Bankr. S.D.N.Y. 1990).

46.    Even the Bankruptcy Court in rendering its decision below expressed uncertainty as the applicable legal standard.  "Given the statutory charge to the U.S. Trustee to appoint the [C]ommittee, I believe that the Barney's line of cases, and that's In re Barney's, Inc., 197 B.R. 431 (Bankr. S.D.N.Y. 1996) is probably the right line to follow as to the standard by which the court should review the issue."  Tr. 166:17-20 (emphasis added).

15

47.    Consequently the second prong of the test is satisfied as there is genuine doubt as to the correct applicable legal standard.  See Adelphia, 333 B.R. at 658 (citing North Fork, 207 B.R. at 390).

3.    Resolution Of The Appeal Will Materially Advance The Chapter 11 Cases.

48.    The third prong of this test looks to whether an appeal will materially advance the ultimate termination of the litigation.  See Enron II, 2003 WL 22327118, at *2. The litigation in this case – the administration of the Chapter 11 proceedings – involves the largest manufacturing and technology filing in the history of the federal bankruptcy system and ranked on the Petition Date as (1) the fifth largest public company business reorganization in terms of revenues and (2) the thirteenth largest public company reorganization in terms of assets.  The Cases, according to the Debtors, will involve substantial restructuring, including divestiture, consolidation and wind-down of a substantial segment of the Debtors' U.S. business operations.  In this context, the Committee will, together with the Debtors, play a central role.  Consequently, its decisions will have a material and direct impact upon the recovery of all creditors and, most particularly, upon the recovery on account of the Subordinated Notes.  Given the Committee's central role as the representative body of unsecured creditors, it is critical that it function properly.  The present Committee may be functioning, in the sense that it holds meetings, votes, and reaches consensus on matters and is otherwise operating in the normal course of these Cases. However, a proper functioning committee goes beyond such issues:

The problem is that a committee may function just fine, reaching consensus on all issues, and still not adequately represent a particular group. This can occur, for instance, if the committee is so dominated by one group of creditors that a separate group has virtually no say in the decision-making process.  Consequently, courts look to see whether conflicts of interest on the committee effectively disenfranchise particular

16

groups of creditors.

Enron I, 279 B.R. at 686 (quoting Dow Corning, 194 B.R. at 142 (citations omitted)).

49.    If it is later determined that the Committee is not representative of the interests of the Subordinated Noteholders, i.e., was not functioning properly, it could result in substantial delay and considerable uncertainty surrounding the validity of its past actions. This becomes particularly acute at the plan negotiation stage, when a plan of reorganization is formulated.  The Committee's actions leading up to and including support for any plan could potentially be rendered invalid at the conclusion of the Cases if it is later determined that the Committee was not properly functioning as a representative body of all of the classes of unsecured creditors, including the Subordinated Notes. See Victory Markets, 195 B.R. at 14 (Committee's actions could be considered invalidated if the committee is not considered representative of all classes of creditors).  Such a result could cause substantial disruption and delay (with the concomitant costs) in the reorganization of the Debtors.

50.    Consequently, it makes little sense to delay resolution of this issue until after confirmation of a plan of reorganization – a plan that will be negotiated by a potentially infirm Committee.  As recognized by one court, the legal question of adequate representation should be resolved expeditiously "so that adequate representation can be afforded before significant bridges are crossed."   McLean, 70 B.R. at 862-63.  Certainly, on this issue, immediate appeal of this case will materially advance the ultimate case and terminate the potential for any future challenges to the Committee's actions on these grounds.  See In re Neuman, 1990 WL 67704, at *1 (S.D.N.Y. May 15, 1990) (District Court granted leave to appeal two interlocutory orders authorizing the trustee to retain special counsel and approving counsel's interim fee application to avoid questioning later whether appointment was

17

unauthorized as a matter of law); Robinson v. Johns-Manville Corp., (In re Johns-Manville Corp.), 45 B.R. 833, 836 (S.D.N.Y. 1984) (District Court granted leave to appeal from an interlocutory order appointing a future claims representative so as to resolve uncertain situation, "before time and expense have gone into a possible illegal configuration of the parties").

51. Moreover, determination of this appeal will establish a much needed standard of review of the U.S. Trustee's formulation of committees. The issue has arisen in many of the major cases, such as Enron, Adelphia, Dow Corning, and remains unresolved. Resolution of the issue will bring more predictability to the process by which committees are formed and the standard to which the U.S. Trustee's office will be held. See In re Lykes Bros. Steamship Co., Inc., 200 B.R. 933, 938 (M.D. Fla. 1996) ("A decision on the authority of the Bankruptcy Court to review actions of the Trustee will clarify the methods of review available to the parties in bankruptcy proceedings, and preclude the need for further appeals of this type which delay the bankruptcy proceedings.").

### (ii) This Interlocutory Appeal Should Be Permitted Because It Involves "Exceptional Circumstances."

52. Not only should this interlocutory appeal be granted under the standards of Section 1292(b), but also on the grounds, that it constitutes "exceptional circumstances." Enron II, 2003 WL 22327118, at *2; Escondido Mission Vill. L.P. v. Best Products Co., Inc., 137 B.R. 114, 117 (S.D.N.Y. 1992). Courts have justified immediate review in cases of "exceptional circumstance," even where the three-pronged test of Section 1292(b) has not been met, where the order on appeal failed to weigh specific factors set forth in case law to the detriment of the appellant and where all parties in interest supported immediate resolution of a particular issue before the underlying case progressed any further. See id.

53.     Recently, in <u>Enron II</u>, this Court granted leave to an ad hoc committee appealing a bankruptcy court order denying their request for appointment of an additional creditors' committee due to inadequate representation.    2003 WL 22327118, at *13. Although failing to find "substantial ground for difference of opinion" under Section 1292(b), the Court nonetheless granted appeal due to "exceptional circumstances."    <u>See id.</u> at *2. Specifically, it found that "it would be inefficient to have the parties proceed under the status quo and await a final order before this Court reviewed the appellant's motion."    <u>Id.</u>

54.     This interlocutory appeal meets the "exceptional circumstances" test. Unlike orders pertaining to routine or procedural issues, this appeal raises the fundamental right of the Subordinated Notes to be adequately represented on the Committee.    Absent immediate review, the Subordinated Notes will remain inadequately represented on the Committee and effectively shut out of the reorganization process.    As in <u>Enron II</u>, it would be inefficient for the parties to proceed under the status quo only to determine at the close of the Case that the Committee was not functioning properly.    <u>Id.</u>; <u>see</u> <u>also</u> <u>Victory Markets</u>, 195 B.R. at 14.     Deferring the issue of whether the Subordinated Notes are adequately represented can only lead to additional costs, disruption and delay in the Cases.    Therefore, "exceptional circumstances" justify immediate resolution of this issue on appeal.

**3.      This Interlocutory Appeal Should Be Permitted Pursuant To The Collateral Order Doctrine.**

55.     Appeals from interlocutory orders may also be granted pursuant to the collateral order doctrine.    <u>See</u> <u>In re Orlan</u>, 138 B.R. 374, 377 (E.D.N.Y. 1992).    An interlocutory order may be appealed pursuant to the collateral order doctrine where the decision would (1) conclusively determine the disputed question, (2) resolve an important issue completely separate from the merits of the action and (3) be effectively unreviewable on

appeal from a final judgment.  See id. (citing Coopers & Lybrand v. Livesay, 437 U.S. 463,

468 (1978)); see also Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546-47 (1949).

56.     First delineated in Cohen, the collateral order doctrine permits immediate

review of orders which "finally determine claims of right separable from, and collateral to,

rights asserted in the action, too important to be denied review and too independent of the

cause itself to require that appellate consideration be deferred until the whole case is

adjudicated."  Cohen, 337 U.S. at 546.  The analysis is driven by "practical" considerations.

Id.  With respect to the third prong of the doctrine, for example, even though an appellant

"could" get review of the order after final judgment is entered, the court may consider

whether efficiency and fairness warrant immediate review.  In re Pan Am Corp., 16 F.3d 513,

516 (2d Cir. 1994).

57.     Law Debenture meets all three criteria of this alternative ground for

granting its Motion.  First, the Bankruptcy Court's interlocutory order purports to have

conclusively resolved two issues: (1) the proper standard for reviewing the Trustee's actions;

and (2) the adequacy of the representation allegedly provided by Capital Research and/or

Wilmington Trust on behalf of the Subordinated Notes.

58.     Second, the Bankruptcy Court's interlocutory order resolved two important

issues completely separate from the merits of the bankruptcy itself, i.e., the proper standard of

review for a U.S. Trustee's determinations as to the composition of Committee, and the

adequacy of representation on the Committee.

59.     Third, at some point in the near future, it will no longer be possible for

Law Debenture to participate to any meaningful extent in the work of the Committee.  As

noted above, the Debtors issued a press release roughly one month ago, strongly suggesting

that they were moving forward with in-depth negotiations with their labor representatives and

with General Motors Corporation.  See Exhibit 6. Law Debenture has a direct and vital

interest in participating in such negotiations as a member of the Committee, as a

representative of the subordinated debt holders, as this issue will likely be the single most

important determinant affecting the amount of estate value available for distribution to all

creditors, including the Subordinated Noteholders.  Moreover, Law Debenture has a direct

and vital interest in participating in negotiations of the Committee when a plan of

reorganization is being negotiated.  At this crucial stage, not only are issues concerning the

restructuring of debt as between the parent and subsidiary become relevant, but also as among

the creditors of the parent.

60.    In re Edison Brothers Stores, Inc., No. Civ. A 96-177, 1996 WL 363806

(D. Del. June 27, 1996), is on all fours with the present case.  The Edison court determined

that the collateral order doctrine warranted granting leave to appeal where, in an interlocutory

order,  "the bankruptcy court ha[d] conclusively determined that, under the facts of record, it

is not necessary to appoint an official equity committee to ensure adequate representation" to

certain  shareholders.    Id. at *3.    The Edison court held that the issue of adequate

representation is an important issue, completely separate from the merits of the

reorganization, and noted that, "at some point in the proceedings, the opportunity to

effectively participate in the reorganization will be lost, thereby mooting the question of

official committee status."  Id.

61.    Law Debenture respectfully submits that this Court should grant Law

Debenture's Motion pursuant to the collateral order doctrine.

*    *    *

62.    In sum, Law Debenture should be granted leave to appeal the Bankruptcy Court's interlocutory order on the basis of both 28 U.S.C. § 158 or, alternatively, the collateral order doctrine.

**C.    The Subordinated Noteholders Are Not Adequately Represented On The Committee.**

**1.    The Bankruptcy Court Should Have Reviewed The United States Trustee's Refusal To Allow Law Debenture To Join The Committee De Novo.**

63.    If this Court grants the requested interlocutory appeal, it will find that the Bankruptcy Court applied the erroneous legal standard in reviewing whether the Committee formulated by the U.S. Trustee adequately represent the interests of the Subordinated Notes.[15] The Bankruptcy Court reviewed the U.S. Trustee's actions for an abuse of discretion. However, it should have applied a *de novo* standard.  Had the Bankruptcy Court applied the correct standard, it would have determined that the Committee, as presently configured, does not adequately represent the interests of the Subordinated Notes.[16]

64.    Section 1102 of the Bankruptcy Code governs the appointment of official committees in Chapter 11 proceedings.  Section 1102(a)(1) provides in pertinent part that "as soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims."  11 U.S.C. §1102(a)(1).  Section 1102(b)(1) states that "[a] committee appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented by the committee."  11 U.S.C. §

---

[15]    A bankruptcy court's conclusions of law are subject to *de novo* review on appeal, while its findings of fact are binding on the reviewing court unless clearly erroneous.  See Mirant Americas Energy Marketing, L.P. v. The Official Committee of Unsecured Creditors of Enron Corp., No. Civ. 02-6274, 2003 WL 22327118, at *2 (S.D.N.Y. Oct. 10, 2003) ("Enron II"); see also Fed. R. Bankr. P. 8013.

[16]    If this Court grants the appeal, Law Debenture will more fully brief the issues that will be the subject of this appeal.

1102(b)(1).

65.     Thus, the United States Trustee is, in the first instance, vested with the administrative authority to form and appoint creditors to committees.  However, courts, including Bankruptcy Courts in this Circuit, have almost uniformly found that courts have the authority, upon motion of a party-in-interest, to review the composition of committees.

66.     Courts have found that they have such authority pursuant to Section 1102(a)(2) of the Bankruptcy Code, as well as pursuant to Section 105(a) of the Bankruptcy Code, and as a consequence of their inherent equitable authority.  See, e.g., Enron I, 279 B.R. at 684 (Section 1102(a)(2) of the Bankruptcy Code mandates that courts conduct an "independent" review of the adequacy of committee representation); Barney's, 197 B.R. at 439 (Section 105(b) authorizes review of United States Trustee's committee appointment decisions); Texaco, 79 B.R. at 566 (Section 1102(a)(2) of the Bankruptcy Court afforded the court authority to order the expansion of a committee); In re Mercury Finance Co., 240 B.R. 270, 277 (Bankr. N.D. Ill. 1999) (adopting "majority view" that court has inherent authority under Section 105 of the Bankruptcy Code to conduct such a review); In re Dow Corning Corp., 194 B.R. 121 (Bankr. E.D. Mich. 1996), rev'd on other grounds, 212 B.R. 258 (E.D. Mich 1997) (court has inherent power to review committee appointments); Value Merchants, 202 B.R. at 285 (Section 1102 authorizes courts to review United State Trustee's "administrative function" to assure adequacy of committee representation); Lykes Bros., 200 B.R. at 939-40 (Section 105(b) can be invoked to review composition of creditor committees); In re Plabell Rubber Products, 140 B.R. 179, 180-81 (Bankr. N.D. Ohio 1992) (Section 1102(a) and Section 105(a) of the Bankruptcy Code allows courts to review the adequacy of committee representation); Columbia Gas, 133 B.R. at 175-76 (Court may

review the United States Trustee's refusal to appoint creditor to official committee and may

order "necessary or appropriate relief" under Section 105(b)); <u>In re Public Service Co. of</u>

<u>New Hampshire</u>, 89 B.R. 1014, 1020-21 (Bankr. D. N.H. 1988) (in ordering the expansion of

a committee, court noted that "the Court necessarily has the inherent power to provide 'a

lesser included remedy' of simply directing the expansion of the existing committee.");[17] <u>see</u>

<u>also</u> Fed. R. Bankr. P. 2007(c).[18]

67.    The exercise of this judicial review is consistent with sound public policy

which strongly favors judicial review of the United States Trustee's appointment of

committee members.   As one court observed, absent judicial review, the United States

Trustee would have "unbridled discretion over the appointment of creditor committees."

<u>Lykes Bros.</u>, 200 B.R. at 940.

68.    In exercising their power of review of committee composition, Bankruptcy

Courts in this Circuit have adopted the majority view that such a review should be conducted

*de novo*.   <u>See</u> <u>Enron I</u>, 279 B.R. at 684 (court reviews adequacy of representation *de novo*);

<u>Texaco</u>, 79 B.R. at 566 (applying *de novo* standard after the administrative task of appointing

---

[17]    Prior to 1986, Section 1102(c) expressly authorized the courts to, on request of a party in interest, change the size or membership of a creditors' or equity security holders' committee if the committee was not sufficiently representative.  In 1986, Section 1102(c) was repealed.  Section 1102(a)(2) provides that "[o]n request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to ensure adequate representation of creditors or of equity security holders. The United States Trustee shall appoint any such committee."  Thus, the repeal of Section 1102(c) coupled with the language of Section 1102(a)(2) created a question as to whether Congress intended to deprive courts of the power to review the composition of committees and only allow courts to order the appointment of additional committees.   This question has almost uniformly been resolved in favor of court review of committee membership.  <u>See</u> <u>McLean</u>, 70 B.R. at 856 (noting power to alter committee membership was taken from courts and given to the U.S. trustee by the 1986 amendments).  Congress recently enacted Section 1102(a)(4) of the Bankruptcy Code, which expressly authorizes court review of the committee composition.  <u>See</u> 11 U.S.C. §1102(a)(4). While not applicable to the case at hand (because the Cases were commenced prior to October 17, 2005, the effective date of the amendment), this new section reinforces the conclusion that Congress intends courts to oversee committee formation.

[18]    This rule empowers a court to vacate the appointment of a pre-petition committee.  However the Advisory Committee noted that the rule does not preclude judicial review under Rule 2020 regarding the appointment of other committees.  <u>See</u> Advisory Committee Note to Rule 2007 (1991); <u>Dow Corning Corp.</u>, 194 B.R. at 133 (Advisory Note supports view that court has authority to review committee composition).

the committee is performed); <u>McLean</u>, 70 B.R. at 860-863 (an abuse of discretion standard does not apply with respect to the United States Trustee's initial exercise of discretion because the concept of adequate representation is a legal issue that must be judicially resolved); <u>see also</u> <u>Dow Corning</u>, 194 B.R. at 131 (court has *de novo* authority to alter an existing committee); <u>First RepublicBank</u>, 95 B.R. at 59 (stating that *de novo* review applies to the issue of adequacy of representation but applying abuse of discretion standard to motion to <u>remove</u> creditor from committee because issue of adequacy of representation was not raised); <u>Value Merchants</u>, 202 B.R. at 284 (applying *de novo* standard of review).

69.    Judge Gonzalez recently addressed this standard of review in a well-reasoned opinion in the <u>Enron I</u> case.  In <u>Enron I</u>, Judge Gonzalez, reviewing the adequacy of representation of an existing committee, stated that "this Court must necessarily conduct an independent review of whether there is adequate representation by an existing committee by the mandate of 11 U.S.C. §1102(a)(2).  It stands to reason that the determination of adequate representation is thus a legal determination, and the U.S. Trustee's decision is subject to *de novo* review."  <u>Enron I</u>, 279 B.R. at 684 (<u>citing</u> <u>Texaco</u>, 79 B.R. at 566 (noting that whether request for additional committee is made to United States Trustee or not, the Court must arrive on its own judgment)).

70.    The new Section 1102(a)(4) reinforces the fact that the review of the adequacy of committee representation should be *de novo*.  The express language of Section 1102(a)(4) imposes no restriction on the ability of courts to review the composition of committees on the motion of any party in interest and validates the *de novo* standard of review previously adopted by Cankruptcy Courts in this Circuit. Accordingly, this Court should review the U.S. Trustee's refusal to appoint Law Debenture to the Committee *de novo.*

71.    The Bankruptcy Court rejected the *de novo* standard of review in favor of an abuse of discretion, consistent with "the Barney's line of cases."  Tr. 166:21-25.  This line of cases is inapplicable to the issue at hand or should be rejected by this Court .

72.    In Barney's, the Bankruptcy Court was faced with the issue of whether to remove a member of the committee on the grounds of conflict of interest.  The Bankruptcy Court determined that while it was authorized to change the membership of a committee if it determined that the existing committee was not representative, see 11 U.S.C. § 1102(c) (*now repealed*), it determined that the repeal of Section 1102(c) was to "transfer the authority to appoint the chapter 11 committee of unsecured creditors from the court to the United States trustee as it is an administrative task."  Barney's, 197 B.R. at 439 (quoting H.R.Rep. No. 99-764, 99th Cong., 2nd Sess. 18 (1986) *reprinted in* 1986 U.S.C.C.A.N. 5241).   Given this transfer of administrative authority, the Barney's court concluded that the Court retained the power to review the United States trustee's determination of the size and/or composition of a committee pursuant to Section 105 of the Bankruptcy Code for an abuse of discretion.  197 B.R. at 439.

73.    However, the Bankruptcy Court in Barney's was not faced with the issue of the adequacy of representation.  Rather, it was faced with the issue of whether a party should be removed from the committee.  The standards for removal, e.g., conflict of interest or breach of fiduciary duty, are very different than the issue of adequacy of representation. See id. at 443. In Barney's, the movant sought the removal of a committee member on the grounds that the committee member would disclose confidential information as a consequence of its relationship with other creditors.  Id. at 436.  The Bankruptcy Court, applying an abuse of discretion standard, found that the United States Trustee was justified in

26

not removing the committee member as there was no "specific evidence" that supported a breach of fiduciary duty or conflict of interest finding. Id. at 443.

74.    Similarly, all the other "Barney's line of cases," except one, involve removal of a committee member and the determination of whether the United States trustee abused her discretion in removing or failing to remove a committee member. See Mercury Finance, 240 B.R. at 280 (concluding bankruptcy court correctly applied abuse of discretion standard to motion for reconstitution of blended creditor and equity committee through removal of ineligible committee members); Fas Mart, 265 B.R. at 431 (applying abuse of discretion standard of review to official committee's motion for removal of creditor appointed by U.S. Trustee); Pierce, 237 B.R. at 754 (applying abuse of discretion to official committee's motion for determination as to the qualification of newly appointed members of the committee); In re Am. West Airlines, 142 B.R. 901, 902-03 (Bankr. D. Ariz. 1992) (abuse of discretion standard applied to challenge of U.S. Trustee's removal of creditor from unsecured creditors' committee after creditor became a post-petition financier with priority status and was no longer qualified to serve on the committee); First RepublicBank, 95 B.R. at 60 (applying abuse of discretion to official committee's motion for removal of a creditor but noting that "if raised, the issue of adequate representation must be determined by the court de novo").

75.    The only case in the Barney's line of cases that applied an abuse of discretion standard to appointment of a commitment member was Columbia Gas, 133 B.R. 174 (Bankr. D. Del. 1991).  However, since that case was decided the great weight of case law has held that a de novo standard is applicable when reviewing the adequacy of representation.

27

2.      **The Bankruptcy Court's Findings Of Fact Regarding Capital Research And
Wilmington Trust Were Clearly Erroneous.**

76.      In reviewing the adequacy of representation *de novo*, the Bankruptcy Court

was obliged to examine three factors *de novo*, namely: (1) the ability of the Committee to

function; (2) the nature of the case; and (3) the desires of other constituents.   See Enron II,

2003 WL 22327118, at *3; McLean, 70 B.R. at 860-63.   Application of these factors,

demonstrates that the decision of the Bankruptcy Court that Capital Research and/or

Wilmington Trust adequately represent the Subordinated Noteholders on the Committee was

clearly erroneous.

77.      As Law Debenture's counsel stressed at the Hearing, "all of the

[C]ommittee members, all seven of them, hold or represent claims that are purportedly senior

to the interests of the subordinated note holders."   Tr. 123:6-9.   Moreover, "[n]one of the

current members of the [C]ommittee hold interests that are first and foremost aligned with

[those of] the subordinated note holders."   Id. 123:14-16.

78.      Wilmington Trust, as Indenture Trustee for the Senior Notes, cannot

meaningfully represent the interests of the Subordinated Noteholders because it cannot

legally represent the interests of the Subordinated Noteholders.   Significantly, Wilmington

Trust, both in its Statement filed with the Bankruptcy Court and during oral argument, did not

dispute this self-evident fact.   See Tr. 160:22-161:4

79.      Similarly, Capital Research could not and cannot meaningfully represent

the interests of the Subordinated Noteholders.   The evidence before the Bankruptcy Court

was that Capital Research holds $500 million in Senior Notes and $30 million of the

Subordinated Notes.   Tr. 135:4-15, 159:25-160:2.   Accordingly, Capital Research's

investment in the Senior Notes is approximately 6% of their total holdings of Senior Notes

28

and Subordinated Notes.  Capital Research's relatively small investment in Subordinated Notes, which it probably holds as merely a "hedge" for its Senior Notes, gives it little incentive to protect the interests of the Subordinated Noteholders at the expense of its much more significant interest in the Senior Notes.

80.    More importantly, notwithstanding the best and most professional intentions of Capital Research, Capital Research is, as a matter of law, inherently conflicted in its representation of the Senior Notes and Subordinated Notes.  Pursuant to the terms of the Indenture, the Subordinated Notes are junior in right to the prior payment of Senior Notes. Therefore, any action, result, or position that benefits the Senior Notes necessarily harms and reduces the return to the holders of the Subordinated Notes.  Capital Research cannot meaningfully represent the interests of the Subordinated Noteholders while also representing the opposing interests of the Senior Noteholders.  As such, Capital Research is inherently conflicted and this conflict manifests itself in virtually every decision of the Committee because the maximization of return to subordinated indebtedness is fundamentally contrary to the maximization of recovery of senior indebtedness.  See McLean, 70 B.R. at 861 (noting the conflicting goals of maximizing recovery for senior and subordinate lenders).  Moreover, there was no effort by Capital Research to cure this inherent conflict, nor does it have the ability to do so.  As noted by counsel for Capital Research, "there was one representative on the committee, that's David [Daigle], who acts on behalf of all of them."  Id. 159:9-13. (emphasis added.).

81.    While Bankruptcy Code does not "mandate a committee must faithfully reproduce the exact complexion of the creditor body,"  Hills Stores, 137 B.R. at 7,  the Bankruptcy Code does require that "conflicting groups of creditors have a voice through

adequate representation on a committee." <u>Hills Stores</u>, 137 B.R. at 7.  As one court stated, "adequate representation exists through a single committee <u>as long as the diverse interests of the various creditor groups are represented on and have participated in that committee</u>."  <u>In re Sharon Steel Corp.</u>, 100 B.R. 767, 777-78 (Bankr. W.D. Pa. 1989) (emphasis added).

82.    The adequacy of representation is not a bright line test; rather it is determined on a case-by-case basis.  <u>See</u> <u>Enron II</u>, 2003 WL 22327118, at *6.  Courts look to whether creditors have unique and separate interests which are impair the adequacy of representation.  <u>Id.</u>  Ultimately courts must strike a proper balance of the parties' interests so that an effective reorganization of the debtor may be accomplished.  <u>Id.</u>

83.    In <u>Enron II</u>, the District Court affirmed Judge Gonzoles' holding in <u>Enron I</u> that a single creditors' committee adequately represented the interests of conflicting creditor constituencies.   In <u>Enron I</u>, the estates of various debtor entities were subject to joint administration and a single creditors' committee was appointed to represent creditors of all the estates.  Certain trade creditors sought the appointment of a separate committee.  In affirming the Bankruptcy Court's holding that the existing committee was adequate, the District Court found that a single committee often represents different "classes" of creditors. <u>Id.</u> at *7.  The District Court found that so long as the committee is representative of the diverse interest of the various creditor groups and the diversity does not hinder representation, a conflict of interest among different "classes" of creditors does not necessitate the appointment of a separate committee.   <u>Id.</u> at *7-8.  The fundamental underpinning of the District Court's decision in <u>Enron II</u> was the fact that the objecting creditors interests were adequately represented by members of the committee holding claims of like "kind."

84.     In this case, the Subordinated Noteholders did not and do not seek the appointment of separate committee.  Rather, they made a more fundamental challenge:  The members of the Committee do not have sufficient diversity of membership to represent adequately the interests of the Subordinated Noteholders.  The Bankruptcy Court's holding that Wilmington Trust and Capital Research can adequately represent the interests of the Subordinated Noteholders ignores the economic and contractual realities, and wrongfully gives short shrift to the interests of the Subordinated Noteholders.  Unlike the objecting trade creditors in <u>Enron II</u> who were <u>independently</u> represented by creditors holding like "kind" claims on a diversely populated committee, under the Bankruptcy Court's ruling in the case at hand, the Subordinated Noteholders must rely upon parties that are inherently conflicted in order to protect and advocate their interests on the Committee.  Representation of the Subordinated Noteholders' interests by those whose interests do not hold unconflicted claims of like "kind" is not, in the legal sense, adequate.

85.     Moreover, the notion that a committee represents and owes a fiduciary duty to all creditors does not overcome the legal necessity of adequate representation.  Only by having their own, non-conflicted and independent representative on the Committee can the Subordinated Noteholders be assured that the Committee will functionally and adequately represent the interests of the Subordinated Noteholders.  <u>See</u>, <u>e.g.</u>, <u>Value Merchants</u>, 202 B.R. 280 (affirming Bankruptcy Court ruling that the United States Trustee abused its discretion in failing to appoint indenture trustee for subordinated debentures as voting member of the official creditors' committee where official committee comprised only of trade creditors and equipment financiers was not representative of a large segment of the debtor's unsecured debt).

31

86.     At its core, the Bankruptcy Court's finding erroneously ignores, or fails to sufficiently account for, the fact that the Subordinated Noteholders are in the unique position of being <u>junior</u> to <u>all</u> other unsecured creditors.[19]    At the end of the day, the ultimate restructuring of the Debtors will involve intercreditor issues at the parent level where the vast majority of the debt resides.    Resolution of these issues will come in the context of negotiation of a plan of reorganization, which will be the culmination of many other decisions made during the Case.    As noted by the Debtors, these Cases will involve the divestiture of assets, the consolidation of operations and wind-down of a substantial segment of the Debtors' U.S. business operations and resolution of negotiations by and among the Committee, the unions and the Debtors, which are currently ongoing.    <u>See</u> Exhibit 6.    These restructuring decisions and negotiations, individually and collectively, will be the foundation for a plan of reorganization.    These discussions and many other developments in the Cases are not a matter of public record and will not become a matter of public record until substantially, if not wholly, resolved by the Debtors with direct input from the Committee. Yet the results will have a direct economic impact upon the Subordinated Noteholders, who are not represented on the Committee and who are one of the largest creditor constituents in the Cases.    As such, it is imperative that the interests of the Subordinated Noteholders be adequately represented on the Committee so that their views on these crucial issues can be adequately voiced.    While Law Debenture may have other, far more limited, means to participate in the Chapter 11 proceedings, the only way that the Subordinated Noteholders

---

[19]     The Bankruptcy Court failed to address the inherent conflict because it found that the interests of  the Subordinated Noteholders, whose claims are against the parent company, are, to that extent, aligned with, and therefore can be represented by, Wilmington Trust and Capital Research, both of whom represent the claims of the Senior Notes against the parent company.  Since the Bankruptcy Court found that "many, perhaps the majority" of the decisions of the Committee involve considerations of the interests of the parent company, Delphi, versus Delphi's subsidiaries, it gave little weight to the vital intercreditor issues at the parent level.  Tr. at 168:12-22.

can be effectively heard on each and every one of these issues considered by the Committee, and to be adequately represented by the Committee, is to be a member of the Committee.[20]

## VI. CONCLUSION

87.     Based upon the foregoing, this Court: (1) should permit the interlocutory appeal of the Bankruptcy Court's order denying Law Debenture's First Motion; (2) should find that the Bankruptcy Court committed an error of law in that it applied an erroneous legal standard to the review of the U.S. Trustee's denial of Law Debenture's request to be appointed to the Committee; and (3) should find that the Bankruptcy Court was clearly erroneous in its finding that the Committee adequately represented the interests of Law Debenture.

**WHEREFORE,** Law Debenture respectfully requests that this Court enter an Order: (i) granting this Motion for Leave to Appeal the Interlocutory Order entered by the United States Bankruptcy Court for the Southern District of New York on February 8, 2006; (ii) reversing the Bankruptcy Court's order denying Law Debenture's First Motion; and (iii) granting such other relief as is just and proper.

Dated:  February 17, 2006

---

[20]     In this regard, the Bankruptcy Court mistakenly observed that it would have reservations appointing Law Debenture to the Committee because Law Debenture would represent solely the interests of the Subordinated Noteholders. See Tr. 170:11-171:2.  However, by virtue of its position junior to *all* other creditors, Law Debenture, *a fortiori*, would, consistent with its fiduciary duty to creditors as a committee member, advocate the interests of all creditors because the Subordinated Noteholders receive payment only *after* all other creditors are *paid in full*.

33

Respectfully submitted,

**BROWN RUDNICK BERLACK ISRAELS LLP**


By:  ___/s/ Robert J. Stark, Esq._____
      Robert Stark (RS 3575)

Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile:  (212) 209-4801

- and -

Peter J. Antoszyk, Esq.
(motion for admission *pro hac vice* pending)
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Facsimile:  (617)  856-8201

Counsel for Law Debenture Trust Company of New York,
as successor Indenture Trustee and Property Trustee for the
8.25% Junior Subordinated Note Due 2033

# 8123722 v6

34