

U.S. Department of Justice

Office of the United States Trustee

*Region 2/Southern District of New York*

| 33 Whitehall Street, Suite 2100 | Phone: 212-510-0500 |
|---|---|
| New York, NY 10004 | Fax:  212-668-2255 |

November 2, 2005

Jack Butler, Esq     **VIA EMAIL: jbutler@skadden.com**
Kayalyn Marafioti, Esq.     **VIA EMAIL: kmarafio@skadden.com**
Skadden, Slate, Meagher
& Flom, LLP
**Four Times Square**
New York, NY 10036

Robert Rosenberg, Esq.     **VIA EMAIL: robert.rosenberg@lw.com**
Latham & Watkins LLP
885 Third Avenue
New York, NY 10022

Re:  Creditors Committee in *In re Delphi Corporation, et al.*,
Case No. 0544481 (RDD) (jointly administered)

Dear Mr. Butler, Ms. Marafioti, and Mr. Rosenberg:

Enclosed are the following letters from creditors raising concerns about the composition of the creditors' committee in the Delphi case:

1. Letter, dated October 19, 2005, from Richard J. Siminski, Vice President, General Counsel and Secretary of Tyco Electronics;

2. Letter, dated October 20, 2005, from Bruce H. Simon, of Cohen Weiss & Simon LLP, on behalf of the UAW;

3. Letter, dated October 21, 2005, from Jeffrey B. Cohen, Chief Counsel of the Pension Benefit Guaranty Corporation; and

4. Letter, dated October 25, 2005, from Robert J. Stark, of Brown Rudnick, on behalf of Law Debenture Trust Company of New York, as Indenture Trustee.

  The United States Trustee hereby requests your input on the issues raised in the letters. Please respond in writing to me no later than November 15, 2005.

  If you have any questions, please call me at 212.510.0508. I look forward to hearing from you soon.

Very truly yours,

DEIRDRE A. MARTINI
UNITED STATES TRUSTEE

By: *Alicia M. Leonhard*

Alicia M. Leonhard
Trial Attorney

Enclosures (4)

cc: Robert J. Stark (via email: rstark@brownrudnick.com)
  Jeffrey B. Cohen (via facsimile: 202.326.4112)
  Bruce H. Simon (via facsimile: 212.695.5436)
  Richard J. Suminski (via email: rsuminski@tycoelectronics.com)



*Electronics*

Tyco Electronics Corporation
P.O. Box 3608
Harrisburg, PA 17105-3608
USA

Phone: 717-564-0100
www.tycoelectronics.com

October 19, 2005

**VIA FAX & FEDERAL EXPRESS**

Elizabeth Austin
Assistant United States Trustee
Office of the US Trustee for the
Southern District of New York
33 Whitehall Street, 21st Floor
New York, NY 10004
Fax: 212-668-2255

Re:  Delphi Corp., et a., Case No.:  05-44481 (jointly administered)

Dear Ms. Austin:

On October 10, 2005, Tyco Electronics Corporation ("Tyco Electronics") timely submitted the Creditor's Committee Acceptance Form to the Office of the United States Trustee with respect to the above referenced bankruptcy case. On October 17th I attended the organizational meeting for unsecured creditors together with several business representatives from Tyco Electronics. Much to our surprise, Tyco Electronics was not chosen to be a member of the committee of unsecured creditors despite the fact that as of the date of filing of the Debtor's chapter 11 petition, Tyco Electronics held an unsecured claim of $13,193,769.80. Tyco Electronics' believes that the seven member committee does not adequately represent the interests of component trade creditors such as Tyco Electronics and respectfully requests that you reconsider your decision not to include Tyco Electronics on the Official Committee of Unsecured Creditors of Delphi Corp. Thank you.

Sincerely,

*Richard Suminski*

Richard J. Suminski
Vice President, General Counsel
and Secretary

Doc 33774

# COHEN, WEISS AND SIMON LLP

SAMUEL J. COHEN (1908-1991)
HENRY WEISS (1910-2004)

BRUCE H. SIMON
ROBERT S. SAVELSON
STEPHEN B. MOLDOF
MICHAEL E. ABRAM
KEITH E. SECULAR
PETER HERMAN
RICHARD M. SELTZER
JAMES L. LINSEY*
JANI K. RACHELSON
BABETTE CECCOTTI*
SUSAN DAVIS*
MICHAEL L. WINSTON
THOMAS N. CIANTRA
JOSEPH J. VITALE*
PETER D. DeCHIARA
LISA M. GOMEZ*
BRUCE S. LEVINE
JAMES R. GRISI*

COUNSELLORS AT LAW
330 WEST 42ND STREET
NEW YORK, N.Y. 10036-6976

(212) 563-4100
TELECOPIER (212) 695-5436

WRITER'S DIRECT DIAL
212-356-0238

COUNSEL
STANLEY M. BERMAN
MANLIO DiPRETA

ELIZABETH O'LEARY
EYAD ASAD
ROBIN H. GISE
TRAVIS M. MASTRODDI
ORIANA VIGLIOTTI
DAVID R. HOCK*
AVI BERNSTEIN*
ZACHARY N. LEEDS
MOLLY BROOKS**

NEW JERSEY OFFICE
206 CLAREMONT AVENUE
MONTCLAIR, N.J. 07042
(973) 509-0011
* ALSO ADMITTED IN NJ
** ADMITTED IN MA ONLY

October 20, 2005

By Hand Delivery and Facsimile

Elizabeth Austin
Assistant U.S. Trustee
Office of the United States Trustee
33 Whitehall Street, Suite 2100
New York, New York 10004

Re: In re Delphi Corporation, et al.; Case No. 05-44481 (RDD)

Dear Ms. Austin:

This office represents the International Union, UAW ("UAW") in the above-referenced Chapter 11 case. I write to request that the U.S. Trustee reconsider the decision declining to appoint the UAW to the official committee of unsecured creditors appointed on October 17, 2005.

The UAW is the exclusive collective bargaining representative of approximately 24,000 employees of Delphi, nearly half of the debtors' total workforce. In addition, UAW is the "authorized representative" of approximately 9,800 retirees receiving collectively bargained retiree health insurance benefits. With claims estimated at $30.25 million in accrued vacation and other paid time off, and $4.6 billion in retiree health insurance benefits, the UAW is one of the largest unsecured creditors in the case, a position confirmed by Delphi's consolidated list of its largest creditors.[1]

---

[1] While the U.S. Trustee may have been influenced by the existence of the UAW-negotiated Benefit Guarantee with General Motors concerning certain pension and retiree healthcare obligations of Delphi, it is important to clarify that the Guarantee is not a complete backstop to Delphi's Accumulated Post-employment Benefit Obligations. By its terms, the Guarantee does not cover benefit obligations to UAW-represented Delphi hourly employees hired after May 28, 1999 (currently numbering approximately 4,185 employees).

00081511 DOC 1

COHEN, WEISS AND SIMON LLP

Elizabeth Austin
October 20, 2005
Page 2

      The UAW's claim falls squarely within the statutory description set forth at Section 1102(b)(1) of the Bankruptcy Code that the Committee "shall ordinarily consist" of the persons holding the "seven largest claims" against the debtor. The UAW holds one of the seven largest claims in the case. *See also In re Altair Airlines, Inc.*, 727 F.3d 88, 91 (3d Cir. 1984) (noting that creditors' committee should include a union creditor holding the second largest unsecured claim).

      As has been widely reported, and is disclosed the initial court filings, the debtors have been engaged in discussions with the UAW and have made known their intention to pursue labor cost restructuring as one of their early initiatives in the bankruptcy. In other, prominent Chapter 11 cases where labor costs have been a significant early focus, the creditors' committees have reflected the anticipated engagement of and participation by the unions through the appointment of multiple unions (including the union representing the largest contingent of the workforce) to the committees. *E.g., In re Northwest Airlines Corporation*, No. 05-17930 (S.D.N.Y.) (unions representing pilots and fleet and passenger service employees appointed to a 9-member committee); *In re UAL Corp.*, No. 02-48191 (N.D. Ill.) (three labor unions appointed to a 13-member committee); *In re Collins & Aikman*, No. 05-55927 (E.D. Mich.) (UAW and United Steelworkers appointed to a 9-member committee); *In re US Airways, I* No. 02-83984 (E.D. Va.) (three labor unions appointed to a 14-member committee); *In re US Airways II*, No. 04-13819 (E.D. Va.) (four labor unions appointed to a 13-member committee); *see also In re Bethlehem Steel Co.*, No. 01-15288 (S.D.N.Y.) (steelworkers union, representing the largest contingent of hourly employees, appointed to a 9-member committee).

      The appointment of IUE-CWA alone, therefore, is not sufficient to adequately represent the employee and retiree interests. The debtors have announced a broadly aimed effort to restructure their labor costs, including wage rates, work rules, retiree costs, and the elimination of plants now employing thousands of employees. As further clarified and demonstrated herein, appointment of the UAW, the union representing the largest constituent group, assures adequate representation of the kinds of claims in this case. The UAW represents employees in 21 facilities that manufacture and produce products ranging from automotive steering components, fuel systems, climate control systems, instrument panels, batteries and related battery components, valvetrains, and electronic devices such as audio systems and ignition and steering electronics.[2] Because labor costs are heavily targeted by the debtor and the debtor has made known its desire to reconfigure its core non-electronics automotive parts operations, the UAW's appointment is necessary to assure that the committee fairly represents the claims in the case.

      Moreover, for the 24,000 employees represented by UAW, the failure to include the union on the creditors' committee may be viewed as an indication that their participation in the reorganization is not valued to the same extent as other employee groups or segments of the

---

    [2] By contrast, the membership of IUE-CWA is concentrated in the debtors' electric and electronics sector.

COHEN, WEISS AND SIMON LLP

Elizabeth Austin
October 20, 2005
Page 3

debtors' business. This unfortunate consequence, particularly given the UAW's unquestionably large claim, presents a needless distraction at a time when the employees are facing the difficult challenges that this case poses.

For the foregoing reasons, and based on these clarifications, the UAW respectfully requests that the U.S. Trustee reconsider its appointment decision and appoint the UAW to the creditors' committee. In light of the importance of full participation in the organizational phase of a creditors' committee, the UAW respectfully requests that the U.S. Trustee consider this request as promptly as possible. To that end, we are prepared to meet with your office if such a meeting would assist in the resolution of this matter.

Please contact us if you require any additional information or wish to schedule a meeting.[3]

Thank you for your consideration.

Very truly yours,

Bruce H. Simon

Bruce H. Simon

cc: N. Ganatra, Esq.

---

[3] UAW was not informed of the reason that the U.S. Trustee declined to name the union to the committee. During the interview with the Trustee, we believe that the information requested by the Trustee was provided and no deficiencies in that regard were noted. As expressed during the interview on Monday, UAW is prepared to implement any restrictions that may apply regarding information flow in connection with other automotive supplier committee appointments.



**Pension Benefit Guaranty Corporation**
1200 K Street, N.W., Washington, D.C. 20005-4026

**BY FACSIMILE TRANSMISSION – (646) 458-1015**

Elizabeth Austin, Esq.
Assistant United States Trustee
33 Whitehall Street, Suite 2200
New York, New York 10004

OCT 2 1 2005

    Re:    <u>In re Delphi Corp., et al.</u> (Bankr. S.D.N.Y. No. 05-44481(RDD))

Dear Ms. Austin:

    I write to request reconsideration of your office's decision not to appoint the Pension Benefit Guaranty Corporation ("PBGC") to the Official Committee of Unsecured Creditors of Delphi Corporation (the "Delphi Creditors' Committee").

    As with the domestic airline industry, and before that the steel industry, the automotive sector of the U.S. economy is financially troubled. The bankruptcy of Delphi Corporation and its filed subsidiaries is the largest automotive sector bankruptcy filed to date, preceded by the filings of Collins & Aikman, Tower Automotive, and Meridian Automotive, among others. The Delphi case has broad implications for the reorganizations of other automotive companies, as the bankruptcies of US Airways and United Airlines will no doubt have for the recently filed Northwest and Delta Airlines cases. Debtor sponsorship of deeply underfunded pension plans is a significant common thread in all of these cases.

    Delphi and most of its domestic subsidiaries entered bankruptcy on October 8, 2005, with one of the largest levels of pension underfunding -- if not the largest -- in history. The Delphi Creditors' Committee appointed by your office consists of four trade creditors, two representatives of bondholders, and one labor union that represents only a minority of Delphi's unionized workforce. Delphi representatives have repeatedly said that resolution of Delphi's so-called "legacy costs," including its obligations to its pension plans, is central to its reorganization. But as currently composed, the Delphi Creditors' Committee does not adequately represent unsecured creditors who will be affected by the outcome of any actions Delphi may take with respect to its pension plans. As you know, Congress amended the Bankruptcy Code in 1994 explicitly to permit PBGC to serve on creditors' committees. 11 U.S.C. § 101(41)(B). Without such representation, the Delphi Creditors' Committee does not truly represent all classes of unsecured claims, as 11 U.S.C. § 1102(b)(1) requires.

    Under 11 U.S.C. § 1102(b)(1), an unsecured creditors' committee "shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on the committee." It is undisputed that if Delphi's pension plans terminate, PBGC's claims against Delphi for unfunded benefit liabilities would be among the

seven largest claims against the estate. In fact, on Delphi's filed list of its fifty largest unsecured creditors, PBGC is listed as holding one of the seven largest claims. The contingent nature of PBGC's claim is not relevant, as a contingent claim is nevertheless a "claim" within the meaning of the Bankruptcy Code. 11 U.S.C. § 101(5)(A) (defining "claim" as a "right to payment, whether or not such right is . . . liquidated, unliquidated, fixed, contingent, matured, unmatured . . . ."); *see also, In re Barney's, Inc.*, 197 B.R. 431 (Bankr. S.D.N.Y. 1996). Moreover, as Delphi's CEO has stated in the press, when Delphi is required to make minimum funding payments to its pension plans, it intends to make only a small portion of such payments. Failure to make these payments will also give rise to a PBGC claim on behalf of the pension plans.

During the interview of PBGC on October 17, 2005, the U.S. Trustee inquired about PBGC's ability to represent the interests of all general unsecured creditors in this case. PBGC's interests in the Delphi case are no different from its interests in Delta Air Lines, Northwest Airlines, Bethlehem Steel, St. Vincent's Hospital, Tower Automotive, Solutia, and every other bankruptcy case in which your office has appointed PBGC to the creditors' committee. In all of these cases, and in numerous cases throughout the country, PBGC has appropriately discharged its fiduciary duties, as a committee member, to represent the interests of all creditors, and has shared its expertise in employee benefits, bankruptcy, finance, and other substantive areas with the committee. Like all other creditors, PBGC has recused itself when its claims were at issue. PBGC would act the same way if appointed to the Delphi Creditors' Committee, respecting its fiduciary obligations to the unsecured creditor body and recusing itself whenever pension plan termination issues are discussed or on any other issues in which PBGC's position could uniquely conflict with that of unsecured creditors as a whole.

Any apparent concerns about a "triangular" relationship among PBGC, General Motors ("GM"), and Delphi are also unfounded. PBGC did not learn of GM's 1999 agreement to guarantee certain benefits of union members who went to work for Delphi, or Delphi's indemnification of GM for any payment on those guarantees, until July 2005, when the agreements were mentioned in press reports about Delphi. PBGC is not a party to any of these agreements. Moreover, we understand that the benefit guarantees are not intended to cover benefits that PBGC would be required to pay to participants and beneficiaries under Title IV of ERISA, if the plans were to terminate.

Further, while GM and the unions can negotiate settlements of obligations based on their respective contracts with Delphi and each other, PBGC's obligations in this case are imposed and measured by statute. If any of Delphi's pension plans are terminated, PBGC is legally obligated to pay statutorily guaranteed benefits to eligible participants under that plan as of the date of plan termination. 29 U.S.C. §§ 1322(a); 1361. Although PBGC's ultimate recovery on its claims in the bankruptcy may be subject to negotiation, PBGC cannot negotiate its statutory obligations to the participants of a terminated insured plan.

2

I hope that this letter addresses the concerns of your office. PBGC respectfully requests that the United States Trustee reconsider her decision not to appoint the agency to the Delphi Creditors' Committee and exercise her discretion to add PBGC to the Delphi Creditors' Committee at this time. Please call me at (202) 326-4020, extension 3688, with any further questions or concerns that you may have.

Sincerely,

Jeffrey B. Cohen
Chief Counsel

**BROWNRUDNICK**

ROBERT J. STARK
direct dial: 212-209-4862
rstark@brownrudnick.com

Seven
Times
Square
New York
New York
10036
tel 212.209.4800
fax 212.209.4801

October 25, 2005

**BY HAND COURIER**

The Honorable Deirdre Martini
United States Trustee
Office of the United States Trustee
33 Whitehall Street, Suite 2100
New York, New York 10004

    RE:   **In re Delphi Corporation, et al.,**
             **Chapter 11 Case No. 05-44481 (Bankr. S.D.N.Y.)**

Dear Deirdre:

    This firm is counsel to Law Debenture Trust Company of New York ("Law Debenture"), successor Indenture Trustee for two notes issued by Delphi Corporation (the "Debtor" and, together with its Chapter 11 affiliates, the "Debtors"): (a) the 8.25% Junior Subordinated Note due 2033 in the aggregate principal amount of $257,731,975; and (b) the Adjustable Rate Junior Subordinated Note due 2033 in the aggregate principal amount of $154,640,000 (together, the "Subordinated Notes"). As described further herein, the Subordinated Notes purportedly are contractually or structurally subordinated to the claims asserted or represented by each member of the Official Committee of Unsecured Creditors appointed in the Debtors' Chapter 11 cases (the "Official Committee"). Because the Official Committee does not represent the interests of Subordinated Noteholders, we write to request that Law Debenture be added to the Official Committee.

    As a preliminary matter, we note that the Subordinated Notes are presently held by two Delaware trusts (the "Statutory Trusts"), which were created by the Debtor and which issued publicly-held trust preferred securities (sometimes colloquially referred to as "Topper" securities; herein, the "TPRS"). Law Debenture also serves as successor Property Trustee for both of the Statutory Trusts and is, therefore, responsible for delivering distributions with respect to the Subordinated Notes to holders of the TPRS. That said, the Debtor's Chapter 11 filing constitutes an "early termination event" under the Statutory Trusts' organization documents, meaning that both Statutory Trusts likely will be, in the near term, liquidated and holders of the TPRS will be allocated pro rata interests in the Subordinated Notes. Thereafter, Law Debenture will continue to represent the individual holders of the $412 million in Subordinated Notes as Indenture Trustee.

    It is critically important that Law Debenture, as Indenture Trustee, be afforded a seat on the Official Committee to protect the interests of the holders of the Subordinated Notes. The Subordinated Notes constitute a very significant percentage of the Debtors' unsecured



The Honorable Deirdre Martini
October 25, 2005
Page 2

debt obligations. Again, the Subordinated Notes represent indebtedness owed by the Debtor of more than $412 million. As Indenture Trustee, Law Debenture owes its holders a fiduciary duty to protect their interests in the Chapter 11 cases. It will be significantly hindered in its ability to acquit this fiduciary duty without a seat on the Official Committee.

This is particularly true in light of the fact that holders of the Subordinated Notes arguably occupy a particularly disadvantaged position in the Debtors' capital structure. The Subordinated Notes are purportedly contractually subordinate to all senior indebtedness, including $2 billion in Senior Notes issued by the Debtor. They are also purportedly structurally subordinate to all trade debt owed by operating companies in the Debtor-conglomerate. That is because the Subordinated Notes were issued by the Debtor parent holding-company and purportedly were not guaranteed by any of the subsidiaries in the conglomerate.

On information and belief, none of the entities presently appointed to the Official Committee represent holders of the Subordinated Notes or hold a significant position in the Subordinate Notes. Rather, on information and belief, such entities hold claims or represent claimants that purportedly are contractually or structurally senior to the Subordinated Notes.[1] Such creditors are economically incentivized to (i) protect the interests of contractually or structurally senior debt and (ii) ensure that any plan confirmed in the Debtors' cases does not provide any distributions to holders of Subordinated Notes. As such, the Official Committee is simply not representative of the Debtors' entire unsecured creditor constituency and, therefore, cannot be relied upon to protect the interests of the holders of Subordinated Notes.

Under the circumstances, applicable law strongly suggests that Law Debenture should be afforded a seat on the Official Committee. See, e.g., In re Value Merchants, Inc., 202 B.R.

---

[1] Although one member of the Official Committee, Wilmington Trust Company ("Wilmington Trust"), is the Delaware Trustee for the two Statutory Trusts, it is not positioned to represent the holders of the Subordinated Notes. First, under the Statutory Trusts' organization documents, Wilmington Trust's role is only administrative (i.e., it is a "statutory" trustee, with only ministerial rights and responsibilities, like receiving service of process in Delaware), meaning that it has absolutely no authority under those documents to act for or protect the interests of the Subordinated Noteholders (i.e., it is not the indenture or property trustee, with substantive rights to act for its constituency). Second, as stated above, the Statutory Trusts likely soon will be dissolved and, thereafter, Wilmington Trust will not have any further connection to the Subordinated Notes or its holders. Third and perhaps most important, Wilmington Trust is the Indenture Trustee for $2 billion in Senior Notes. Pursuant to the Trust Indenture Act, Wilmington Trust cannot, as a matter of law, protect the interests of the Subordinated Notes while, at the same time, serving as Indenture Trustee for the Senior Notes, as such dual role would create an illegal conflict of interest requiring Wilmington Trust to resign one such role. See 15 U.S.C. § 77jjj(b).



The Honorable Deirdre Martini
October 25, 2005
Page 3

280 (E.D. Wis. 1996)(affirming Bankruptcy Court ruling that the United States Trustee abused its discretion in failing to appoint indenture trustees for subordinated debentures as voting member of the official creditors' committee, where official committee comprised only of trade creditors and equipment financiers was not representative of a large segment of the debtor's unsecured debt).

    Thank you for your consideration of this request. Please feel free to contact me if you would like to meet with Law Debenture to discuss this request and/or if you should have any questions. We anxiously await your response.

Very truly yours,

Robert J. Stark

Enclosure
(Law Debenture's Rule 2019 Statement)

Copies: John Wm. Butler, Jr., Esq. (by facsimile w/out enclosure)
        Robert Rosenberg, Esq. (by facsimile w/out enclosure)
        Daniel R. Fisher
        Patrick J. Healy