**Hearing Date: January 5, 2006**
**Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
        In re                           :    Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :    Case No. 05-44481 (RDD)
                                        :
                                        :    (Jointly Administered)
            Debtors.                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

### DEBTORS' OBJECTION TO MOTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK REQUESTING CHANGE IN MEMBERSHIP OF OFFICIAL COMMITTEE OF UNSECURED CREDITORS

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this objection (the "Objection") to the Motion of Law Debenture Trust Company of New York ("Law Debenture") Requesting An Order To Change The Membership Of The Official Committee Of Unsecured Creditors (the "Motion"). In support of this Objection, Delphi respectfully represents as follows:

### Preliminary Statement

1.       The interests of Law Debenture are adequately represented by the current composition of the Official Committee of Unsecured Creditors (the "Creditors' Committee"). As with virtually all larger chapter 11 cases filed across the federal bankruptcy system, creditors' committees are seldom comprised of the seven largest claims holders but are instead formed to be representative of the kinds of claims included in the general creditor body. The purpose of the Creditors' Committee is not to advocate any particular creditor's agenda, but rather to strike a proper balance between the creditor parties such that an effective and viable reorganization of the Debtors may be accomplished. See Mirant Americas Energy Mktg., L.P. v. The Official Comm. of Unsecured Creditors of Enron Corp., 2003 U.S. Dist. LEXIS 18149, at *22 (S.D.N.Y. Oct. 10, 2003). The Debtors believe that the U.S. Trustee achieved this objective when she formed the current Creditors' Committee. Accordingly, because the interests of unsecured creditors, including Law Debenture, are adequately represented by the Creditors' Committee, the Motion should be denied.

2

## Background

2.      On October 17, 2005, the Office of the United States Trustee appointed the Creditors' Committee. On November 2, 2005, the U.S. Trustee sent a letter to the Debtors requesting input regarding issues raised in four separate letters received from different creditors in the Debtors' chapter 11 cases regarding the composition and membership of the Creditors' Committee. In addition to the letter of Law Debenture, letters were received from the Pension Benefit Guaranty Corporation ("PBGC"), Tyco Electronics Corporation ("Tyco"), and the International Union, UAW ("UAW," and collectively with Law Debenture, PBGC, and Tyco, the "Creditors"). The letters from the Creditors asserted that the Creditors' Committee, as currently composed, does not adequately represent the interests of the Creditors under section 1102(b)(1) of the Bankruptcy Code. Each of the Creditors implicitly suggested that any alleged defect in the composition of the Creditors' Committee would be remedied if only that particular entity were appointed by the U.S. Trustee to membership on the Creditors' Committee.

3.      On December 2, 2005, the Debtors responded by letter to the request of the U.S. Trustee (the "Letter Response"). In their Letter Response, the Debtors stated their belief that the U.S. Trustee exercised her discretion appropriately when she formed the Creditors' Committee and that the Creditors' Committee adequately represents, and should be able to adequately represent, the interests of general unsecured creditors. The Debtors also examined whether the addition of Law Debenture, PBGC, Tyco, or the UAW to the Creditors' Committee would facilitate and promote the successful reorganization of the Debtors' estates and be in the interests of justice.

3

4.       After exploring the above question with the Debtors' executive management and Board of Directors, the Debtors advised the U.S. Trustee that the addition of the PBGC and the UAW to the Creditors' Committee would facilitate and promote the successful reorganization of the Debtors' estates.  As the Debtors stated in their Letter Response, the PBGC could have a significant impact on the Debtors' chapter 11 cases and ability to reorganize.  The Debtors asserted their belief that the range of outcomes would be substantially enhanced if the PBGC were permitted to serve on the Creditors' Committee.  The Debtors also stated that they were satisfied that the PBGC could appropriately discharge its fiduciary duties as a member of the Creditors' Committee to represent the interests of all creditors.  As with the PBGC, the Debtors also stated their belief that the range of consensual outcomes and the prospects of a successful chapter 11 reorganization would be substantially enhanced if the UAW were also permitted to participate as a member of the Creditors' Committee.  The Debtors stated their view that the interests of Tyco and Law Debenture were already adequately represented by the Creditors' Committee and that appointing either party to the Creditors' Committee was therefore unwarranted.

5.       On December 14, 2005, the Office of the U.S. Trustee responded to the requests of Tyco, the PBGC, and the UAW, notifying them that the U.S. Trustee had determined not to reconstitute the Creditors' Committee.  The U.S. Trustee determined that the interests of Tyco, the PBGC, and the UAW are adequately represented by the Creditors' Committee as constituted.  As of the date of the U.S. Trustee's December 14 letter, the request of Law Debenture was still under advisement.  Apparently unwilling to

4

wait for the U.S. Trustee's decision on its request, Law Debenture filed its Motion

requesting to be appointed to the Creditors' Committee.

<u>Argument</u>

6.      Section 1102 of the Bankruptcy Code governs the appointment of

committees in chapter 11 cases.  11 U.S.C. § 1102.  In this jurisdiction, the Bankruptcy

Code is generally interpreted to provide the U.S. Trustee with sole authority to appoint

members to the Creditors' Committee.  <u>See</u> <u>In re Hills Stores Co.</u>, 137 B.R. 4, 8 (Bankr.

S.D.N.Y. 1992) (noting that Bankruptcy Code no longer permits a bankruptcy court to add

or delete members of committees); <u>In re Drexel Burnham Lambert Group, Inc.</u>, 118 B.R.

209, 210-11 (Bankr. S.D.N.Y. 1990) (same).  Therefore, adding a member to the Creditors'

Committee should be left to the U.S. Trustee's discretion.  Instead, Law Debenture has

turned to this Court to circumvent the U.S. Trustee, presumably in an attempt to apply the

concepts found in section 1102(a)(4) of the amended Bankruptcy Code, even though the

Debtors cases were commenced on October 8, 2005, prior to the effective date of the

Bankruptcy Abuse Prevention and  Consumer Protection Act of 2005.

7.      Furthermore, the Debtors' believe that the U.S. Trustee did not abuse

her discretion when appointing the Creditors' Committee, and her decision should not be

reviewed *de novo* as Law Debenture argues.  <u>See</u> <u>In re Barney's, Inc.</u> 197 B.R. 431, 439

(S.D.N.Y. 1996) ("Many view § 105(a) of the Bankruptcy Code as a means of ensuring

that the trustee has not acted arbitrarily or capriciously, or otherwise abused its discretion,

in appointing the committee.").  Law Debenture has presented no evidence that the U.S.

Trustee has acted arbitrarily or capriciously in appointing the Creditors' Committee.

8.      The U.S. Trustee has formed a Creditors' Committee that adequately represents the interests of unsecured creditors, including the subordinated noteholders. The U.S. Trustee determined that the interests of the PBGC and the UAW were adequately represented on the Creditors' Committee.  If the interests of Debtors' principal union (which represents 24,000 of the Debtors' employees) and the PBGC (despite no overlapping creditor) are adequately represented by the current composition of the Creditors' Committee, the interests of Law Debenture must certainly be adequately represented by the current members of the Creditors' Committee.

9.      The Bankruptcy Code does not define "adequate representation" or provide a framework for determining "adequate representation."  Instead, courts determine adequate representation on a case-by-case basis.  See In re Hills Stores, 137 B.R. at 8.  In conducting their examination of adequate representation, courts usually consider a set of factors consisting of:  (i) the ability of the committee to function; (ii) the nature of the case; and (iii) the standing and desires of the various constituencies.  See In re Enron Corp., 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002).

A.      The Current Creditors' Committee Is Functioning Properly

10.     The first factor to consider in the analysis of adequate representation is the functionality of the current Creditors' Committee.  "[A] strong indicator of whether a committee is able to adequately represent its constituents is its ability to function."  Enron, 279 B.R. at 686.  Law Debenture would have the Court believe that when the Creditors' Committee "holds productive meetings, votes and reaches consensus on matters and is otherwise operating in the normal course of these cases," the Creditors' Committee is somehow not performing its duties.  Motion at ¶ 39.

6

11.    Although the Debtors' chapter 11 cases are only a few months old, the Creditors' Committee has shown an ability to adequately and properly perform its duties. It is the responsibility of all members of the Creditors' Committee to act as fiduciaries for all the creditors represented by the Creditors' Committee. Based on the proceedings in the Debtors' cases to date, it is clear that the Creditors' Committee has actively and zealously represented the interests of all of its constituents. For example, the Creditors' Committee was actively involved in, among other things, reviewing the First Day Orders, reviewing every motion that is filed on the docket, providing the Debtors with hundreds of information requests on virtually every material subject area in these chapter 11 cases, negotiating a resolution to the Debtors' supply chain issues (which includes daily onsite oversight by Committee professionals at the Debtors' worldwide headquarters in Michigan), and is currently negotiating the KECP with the Debtors. In the matters that have come before the Court, there is no evidence that there is any conflict on the Creditors' Committee with respect to maximizing value or that the representatives of the interests of the subordinated notes have not had a meaningful voice. Here, the functioning and composition of the current Creditors' Committee lends support for denying the Motion of Law Debenture.

12.    Law Debenture, however, argues that the composition of the Creditors' Committee makes it impossible for the Creditors' Committee to function properly. Although the movant may not like the fact that it is not a member of the Creditors' Committee, the purpose of a creditors' committee is not to represent the interests of only one creditor class. As Judge Daniels from the Southern District of New York noted:

> The principal purpose of creditors' committees is not to advocate any particular creditor class's agenda, but rather to strike a proper balance between the parties such that an effective and viable reorganization of the debtor may be accomplished. The committee is an advocate for the interests of the creditors it represents and it owes a fiduciary duty to those creditors. However, those creditors will necessarily have varying and frequently conflicting interests. As one court has explained: Creditors committees often contain creditors having a variety of viewpoints. Some members may favor liquidation; others may favor continuation of the business in order to preserve jobs or the viability of an important customer. Some debt may be contractually subordinated to other debt. Such conflicts are not unusual in reorganization. Indeed, they are inherent in all bankruptcy cases, and inevitable in complex cases . . .

Mirant Americas Energy Mktg., 2003 U.S. Dist. LEXIS 18149, at *22 (internal citation and quotations omitted).

13.    Law Debenture makes much of the alleged potential conflicts that may limit that ability of current members of the Creditors' Committee to adequately represent the interests of the subordinated notes, whether as a holder of senior notes or of common stock issued by General Motors. The discussion of potential conflicts is a red herring, however, and Law Debenture's concern should be allayed by the "fundamental notion that a committee represents all unsecured creditors whether or not a member of a particular group is included in its membership." In re McLean, 70 B.R. 852, 862 (Bankr. S.D.N.Y 1987).

14.    It is often the case in large, chapter 11 cases that not every unsecured creditor is proportionately represented on the creditors' committee, but the Code does not require the U.S. Trustee to appoint a committee of such composition. "Nowhere does the Code mandate a committee must faithfully reproduce the exact complexion of the creditor body." In re Hills Stores, 137 B.R. at 7. As a representative of the entire unsecured creditor body, however, the Creditors' Committee in this case is charged as a

8

fiduciary to represent all such interests. Law Debenture seems to argue that unless it is

appointed to the Creditors' Committee, the Creditors' Committee will be unable to fulfill its

fiduciary duties, but Law Debenture cannot point to any breach of the Creditors'

Committee's fiduciary duty to general unsecured creditors. Consequently, the Motion

should be denied, and the composition of the Creditors' Committee should not be altered to

include Law Debenture.

B.    The Nature Of The Case Does Not Require Expansion Of The Creditors'
      Committee

15.    The second factor to consider is the nature of the case. As this Court

is aware, the Debtors' chapter 11 cases represent the largest manufacturing and technology

filing in the history of the federal bankruptcy system. Obviously, the Debtors have

thousands of creditors, and not every creditor will be appointed to serve on the Creditors'

Committee. Indeed, more than 100 creditors submitted applications to serve on the

Creditors' Committee, but only seven were appointed by the U.S. Trustee. As the U.S.

Trustee noted when she announced the composition of the Creditors' Committee, "I am

confident of one thing. I will disappoint most of you today." See Daily Bankruptcy

Review, Oct. 19, 2005, at 9.

16.    Law Debenture seems to argue that size and complexity of the

Debtors' chapter 11 cases mandate that it be added to the Creditors' Committee. Motion at

¶ 51. The position advanced by Law Debenture is not unique. Indeed, at least three other

general unsecured creditors felt that the U.S. Trustee should have included them on the

Creditors' Committee. Tyco, the UAW, and the PBGC each argued that the unique nature

of the Debtors' chapter 11 cases, and the composition of the Creditors' Committee, ought to

impress upon the U.S. Trustee the importance of their inclusion on the Creditors'

Committee.  The arguments advanced by the Creditors simply demonstrate that the

Debtors have a complex and diverse creditor body, with competing, and sometimes

conflicting, interests.

17.    As one court has noted upon the request of bondholders to form a

separate committee:  "The fact that the Bondholders may not be able to protect all their

interests and achieve all their goals is not paramount, as the ultimate aim is to strike a

proper balance between the parties such that an effective an viable reorganization of the

debtor may be accomplished. . ."  In re Hills Stores, 137 B.R. at 7.  A similar statement

could be made in the Debtors' chapter 11 cases regarding the entire unsecured creditor

body.  The Debtors', and the Creditors' Committee's, duty is to maximize value for their

constituents.  The Debtors do not believe that adding Law Debenture to the Creditors'

Committee is necessary for the Debtors or the Creditors' Committee to perform their

duties.

18.    The nature of the Debtors' chapter 11 cases are complex, with

multiple creditors vying for appointment to the Creditors' Committee.  Simply because

Law Debenture was not appointed in this large, complex case does not mean the movant's

interests will not be adequately represented.

C.    Neither The Debtors Nor The Creditors' Committee Support Expansion Or
      Modification of Committee Membership to Include Law Debenture

19.    The third factor to consider is the standing and desires of various

constituencies.  Law Debenture encourages the Court to pay no regard to the desires of the

Debtors or the Creditors' Committee.  Motion at ¶ 52.  As they have conveyed to the U.S.

Trustee, however, neither the Creditors' Committee nor the Debtors support the reconstitution or the expansion of the current Creditors' Committee to include Law Debenture. As Judge Gonzalez stated in his Enron opinion, "The issue is not whether the Creditors' Committee is an exact replica of the creditor body, but whether representation of various creditor types is adequate." Enron, 279 B.R. at 690.

20.    The Creditors' Committee has noted that it is able to perform its fiduciary duties without the inclusion of Law Debenture on the Creditors' Committee. ("We are pleased to report that the Committee is well balanced and has functioned extremely well to date through its current seven members. The Committee believes that altering its voting composition will not improve its ability to advance the interests of all unsecured creditors." Creditors' Committee Letter to United States Trustee, dated Nov. 15, 2005). Accordingly, the Motion should be denied. See In re Enron, 279 B.R. at 693 ("The question before the Court is whether the current Creditors' Committee is providing adequate representation to all unsecured creditors. Whether a particular party is successful on all of its positions is not the test, and does not necessarily mean that it is not being provided adequate representation.").

21.    The Court need not consider only whether the subordinated notes are represented by the Creditors' Committee, however. "Nothing in the Bankruptcy Code limits a court's analysis of adequacy of representation solely to an examination of a creditor's involvement with the Official Committee. Indeed, in some cases adequacy of representation may be found even when a particular creditor has little or no involvement with the Official Committee." Mirant Americas Energy Mktg., 2003 U.S. Dist. LEXIS 18149, at *41. Clearly, Law Debenture is a sophisticated entity represented by highly

11

sophisticated counsel, and can certainly bring independent motions before this Court.
Consequently, the Motion should be denied.

### Conclusion

22.    For the reasons stated above, the Motion should be denied.  The
interests of Law Debenture are adequately represented by the current composition of the
Creditors' Committee, and the Creditors' Committee should not be expanded or
reconstituted to include Law Debenture.

### Notice

23.    Notice of this Objection has been provided in accordance with the
Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007,
And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management,
And Administrative Procedures, And (III) Scheduling An Initial Case Conference In
Accordance With Local Bankr. R. 1007-2(e), entered by this Court on October 14, 2005
(Docket No. 245).  In light of the nature of the relief requested, the Debtors submit that no
other or further notice is necessary.

### Memorandum Of Law

24.    Because the legal points and authorities upon which this Objection
relies are incorporated herein, the Debtors respectfully request that the requirement of the
service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the
Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District
of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an

order (i) denying the Motion and (ii) granting such other and further relief as is just.

Dated: New York, New York
       December 30, 2005

                     SKADDEN, ARPS, SLATE, MEAGHER
                      & FLOM LLP

                     By: /s/   John Wm. Butler, Jr.
                         John Wm. Butler, Jr. (JB 4711)
                         John K. Lyons (JL 4951)
                         Ron E. Meisler (RM 3026)
                     333 West Wacker Drive, Suite 2100
                     Chicago, Illinois  60606
                     (312) 407-0700

                     - and -

                     By: /s/  Kayalyn A. Marafioti
                         Kayalyn A. Marafioti (KM 9632)
                         Thomas J. Matz (TM 5986)
                     Four Times Square
                     New York, New York 10036
                     (212) 735-3000

                     Attorneys for Delphi Corporation, et al.,
                         Debtors and Debtors-in-Possession