| UNITED STATES BANKRUPTCY COURT | | Hearing Date: January 5, 2006 |
| SOUTHERN DISTRICT OF NEW YORK | | Hearing Time: 10:00 a.m. |

| ------------------------------------------------------ | | |
| In re: | : | Chapter 11 |
| | : | |
| DELPHI CORP., *et al.*, | : | Case No. 05 B 44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| ------------------------------------------------------ | x | |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF LAW DEBENTURE TRUST COMPANY OF NEW YORK REQUESTING AN ORDER TO CHANGE THE MEMBERSHIP OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

## I. INTRODUCTION

Deirdre A. Martini, the United States Trustee for the Southern District of New York (the ˜United States Trustee™), hereby objects (the ˜Objection™) to the Motion of Law Debenture Trust Company of New York (the ˜Law Debenture™ or the ˜Movants™) Requesting An Order To Change The Membership Of The Official Committee of Unsecured Creditors (the ˜Motion™) on the following grounds:

(1) The reconstitution of the Official Committee of Unsecured Creditors (the ˜Committee™) is not warranted because the United States Trustee properly exercised her discretion in declining to reconstitute the Committee; and

(2) The reconstitution of the Committee is not warranted because the United States Trustee—s formation of the Committee was not arbitrary or capricious; moreover the Subordinated Bondholders are adequately represented on the Committee.

- 1 -

## II. FACTS

### A. <u>The Debtors</u>

1.      On October 8, 2005, Delphi Corporation, <u>et al</u>. (˜Delphi™ or the ˜Debtor™) filed

their chapter 11 cases.  The Debtors continue to operate their businesses and manage their

properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of Bankruptcy Code.

2.      Delphi is a large public company with global operations in more than 40 countries

in the Americas, Asia and Europe and more than 180,000 employees.  Delphi ranks as the fifth

largest public company business reorganization in terms of revenues, and the thirteenth largest

pubic company business reorganization in terms of assets.  Delphi—s foreign subsidiaries are not

chapter 11 debtors.  Delphi is one of the largest, if not the single largest, global supplier of

vehicle electronics, transportation components, integrated systems and modules and other

electronic technology.  Delphi supplies products to nearly every major global automotive original

equipment manufacturer.  Delphi—s former parent is General Motors Corporation (˜GM™).

Effective January 1, 1999, the assets and liabilities of various divisions and subsidiaries of GM

were transferred to Delphi.

3.      The factors that precipitated the Debtor-s-chapter 11 filing were summarized in

the Debtor-s-˜Motion for an Order Under 11 U.S.C. ⎯ 105 and 363 Authorizing the Debtor to

Implement A Key Employee Compensation Program™(ECF Doc.  No. 213), which states, in

pertinent part, that

> [i]n the first two years following Delphi-s-separation from GM, [ ] [Delphi]
> generated more than $2 billion in net income.  Every year thereafter, however,
> with the exception of 2002, [ ] [Delphi] suffered losses.  In calendar year 2004, [ ]
> [Delphi] reported a net operating loss of $482 million on $28 billion in net sales.
> Reflective of a downturn in the marketplace, Delphi—s financial condition has
> deteriorated further in the first six months of 2005.  [ ] [Delphi] experienced net
> operating losses of $608 million for the first six months of calendar year 2005 on

six-month net sales of $13.9 billion, which is approximately $1 billion less in sales than during the same period in calendar year 2004. (footnote omitted).

The Debtors believe that three significant issues have largely contributed to the deterioration of the Company-s-financial performance: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

In light of these factors, [ ] [Delphi] determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues and forward looking revenue requirements. Having concluded that pre-filing discussions with its Unions and GM were not leading to the implementation of a plan sufficient to address the Debtor[−s] issues on a timely basis, [ ] [Delphi] determined to commence these cases for its U.S. businesses to complete the Debtor[−s] transformation plan and preserve value.

ECF Doc. No. 213 @ 5, ¾¾ 10-12.

These objectives will require Delphi to divest, consolidate or wind-down a substantial segment of its United States business operations.

4.    On October 13, 2005, the Court entered an Order Under 11 U.S.C. ⁻ 521(l) and Rules 1007 and 9006(b) of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr.P.™) granting an extension of time to the Debtor until January 22, 2006 to file schedules and statements. See ECF Doc. No. 223.

**B.** **Formation of the Official Committee of Unsecured Creditors**

5.    In large or complex bankruptcy cases, the United States Trustee generally convenes an organizational meeting (the "Organizational Meeting")of the Debtor-s-largest unsecured creditors to form an official committee of unsecured creditors. In this case, the United States Trustee scheduled an Organization Meeting for October 17, 2005 at 11:00 a.m. at the

Marriott Marquis New York. On October 8, 2005, the United States Trustee posted the Notice of

Organizational Meeting for Unsecured Creditors (the "Notice™) on the Bakruptcy Court—s

electronic filing system (Docket, ECF No. 37) and caused the Notice to be served, through the

Debtor—s noticing agent, on the Debtor—s top one hundred unsecured creditors. Included with the

Notice was a questionnaire (the "Questionnaire™) asking each creditor to provide, among other

information, (a) the creditor—s identity (b) the amount of unsecured claims; (c) the nature of the

claim; and (d) any insider status of the creditor.

6.        Prior to the Organizational Meeting, over 100 creditors submitted Questionnaires

to the United States Trustee indicating an interest in serving on the Committee. Over 80

creditors attended the Organizational Meeting along with an even larger number of professionals

attending who were seeking employment by the Committee. Patrick J. Healty, Vice President of

Law Debenture, also was in attendance at the Organizational Meeting.

7.        At the Organizational Meeting, the United States Trustee gave a brief introduction

to the attendees and set forth the procedures for appointing the Committee. The United States

Trustee advised the attendees of the fiduciary responsibilities of a committee and its committee

members. Thereafter, a panel of representatives of the Debtor, including Delphi—s CEO, Mr.

Steve Miller, and their counsel, Jack Butler, Esq., gave presentations of the Debtor-s-goals in

chapter 11. All creditors were given the opportunity to ask questions of the Debtor and the

United States Trustee.

8.        After the presentations, the United States Trustee and her staff adjourned to a

private room to continue deliberations which had begun upon receipt of the Questionnaires.

During the recess, the United States Trustee and her staff met with certain creditors and their

counsel for the purpose of, among other things, clarifying information contained in creditor

- 4 -

committee acceptance forms submitted by such creditors which appeared to conflict with information supplied by the Debtor.

9.        Following the deliberations and a review of all available information, the United States Trustee formed the seven-member Committee which consists of: 4 trade creditors, a union, an indenture trustee and an institutional investor. Following the Organizational Meeting, the United States Trustee again reminded the Committee members of their duty to act as fiduciaries. Each of the Committee members acknowledged their duty to act as fiduciaries and no one resigned based upon their unwillingness to serve in such capacity. In making her decision, the United States Trustee considered financial information filed with the Court, information obtained in meetings with the Debtor and various creditors, and information that came to light during the Organizational Meeting.

10.       As evidenced by the Notice of Appointment of Creditors Committee filed by the United States Trustee on October 20, 2005, ( ECF Doc. No. 469), the United States Trustee appointed the following seven creditors to the Committee:

(i) Electronic Data Systems, Corp., a trade creditor
(ii) General Electric Company, a trade creditor
(iii) Flextronics International Asia-Pacific, Ltd., a trade creditor
(iv) Freescale Semiconductor, Inc., a trade creditor
(v) IUE-CWA, a labor union representative
(vi) Wilmington Trust Company, the Indenture Trustee for the Senior Notes
(vii) Capital Research and Management Company ("Cap Re™)an institutional investor.

## C. Requests for Additional Committees or Reconstitution of the Committee

11.       The United States Trustee received four letters from various creditors, including the Movant, regarding the composition of the Committee in this case, that are annexed to the

Motion as Exhibits E and F and which are incorporated herein by reference.[1] On November 2,

2005 (the "November 2nd United States Trustee Letter™) , the United States Trustee forwarded the

letters to counsel to the Debtor and to counsel to the Committee inviting them to submit written

comments to each creditor request on or before November 15, 2005. By letter dated November

15, 2005 (the "November 15th Latham Letter™), a copy of which is annexed to the Motion as

Exhibit G and incorporated herein by referenced, counsel to the Committee submitted a written

response to each of the creditors— letters. On November 22, 2005, Law Debenture sent a rebuttal

letter to counsel to the Committee (the "November 22nd Law Debenture Letter™), a copy of which

is annexed to the Motion as Exhibit I and incorporated herein by reference.

      12.     Between November 14th and December 2nd, Counsel to the Debtor requested

additional time to respond to the November 2nd United States Trustee Letter and the United

States Trustee responded accordingly. On November 29, 2005 (the "November 29th Law

Debenture Letter™), the United States Trustee received a follow up letter reiterating its request for

a response from the United States Trustee regarding the October 25th Law Debenture Letter and

the November 22nd Law Debenture Letter. A copy of the November 29th Law Debenture Letter is

annexed to the Motion as Exhibit K and incorporated herein by reference.

      13.     On December 2nd (the "December 2nd Skadden Letter™) the United States Trustee

received a response from Debtor—s counsel to the November 2nd United States Trustee Letter. A

---

[1] (1) Letter, dated October 19, 2005, from Richard J. Siminski, Vice President, General Counsel
and Secretary of Tyco Electronics ("Tyco™); (2) Letter, dated October 20, 2005, from Bruce H.
Simon, of Cohen Weiss & Simon LLP, on behalf of the UAW ("UAW™); (3) Letter, dated
October 21, 2005, from Jeffrey B. Cohen, Chief Counsel of the Pension Benefit Guaranty
Corporation ("PBGC™); and (4) Letter, dated October 25, 2005 (the "October 25th Law Debenture
Letter™), from Robert J. Stark, of Brown Rudnick, on behalf of Law Debenture Trust Company,
as Indenture Trustee.

copy of the December 2nd Skadden Letter is annexed to the Motion as Exhibit K and incorporated herein by reference. On December 5, 2005, Law Debenture sent a rebuttal letter to counsel to the Committee (the "December 5th Law Debenture Letter™), a copy of which is annexed to the Motion as Exhibit I and incorporated herein by reference. In a follow up letter to the United States Trustee dated December 12, 2005 (the "December 12th Law Debenture Letter™) a copy of which is annexed to the Motion as Exhibit M and incorporated herein by reference, Law Debenture reiterated its request to be added as a member to the Committee.

14.    By Letter dated December 14, 2005 (the "December 14th United States Trustee Letter™), the Office of the United States Trustee informed Tgo, UAW, PBGC that the United States Trustee had decided not to reconstitute the Committee to add them as creditors and also advised Law Debenture that the United States Trustee—s decision regarding their October 25th Letter was under advisement. By letter dated December 19, 2005 (the "December 19th Wachtell Letter™), the United States Trustee received the attached correspondence from Richard Mason, Esq., of Wachtell Lipton Rosen & Katz, counsel to Cap Re, clarifying that "Law Debenture [in its December 12th Letter] incorrectly allege[d] that Cap Re has sold (or is in the process of selling) its interests in the Delphi Subordinated Notes and that, accordingly, the Committee no longer will have any members who are Subordinated Noteholders.™ A copy of the December 19 Wachtell Letter is annexed hereto as Exhibit A.

15.    On December 22, 2005, Law Debenture filed the instant Motion (ECF Doc. No. 1607) and on December 27, 2005 filed a supplement to the Motion (the "Supplement™) (ECF Doc. No. 1626).

### III. ARGUMENT

**A.    The United States Trustee Properly Exercised Her Discretion In Declining To Reconstitute The Committee.**

16.    As this case was filed on October 8, 2005, this matter is governed by section 1102(a)(1) of the Bankruptcy Code, rather than the BAPCPA. A review of the plain language of 11 U.S.C. ⁻ 1102, as well as the legislative history of that section, clearly indicates that the United States Trustee is entrusted with the appointment of committees and that the composition of any committees so appointed is fully within the discretion of the United States Trustee. Such discretion is not subject to review by the Court.

17.    Prior to 1986, 11 U.S.C. ⁻ 1102 of the Bankruptcy Code provided that the Court could appoint committees under 11 U.S.C. ⁻ 1102(a) and could change the composition of any such committee upon motion by a party in interest pursuant to 11 U.S.C. ⁻ 1102(c). Prior to 1986, 11 U.S.C. ⁻ 1102(c) stated clearly that

> [o]n request of a party in interest and after notice and a hearing, the court may change the membership or the size of a committee appointed under subsection (a) of this section if the membership of such committee is not representative of the different kinds of claims or interests to be represented.

11 U.S.C. ⁻ 1102(c)(1988). Thus, prior to 1986, the bankruptcy courts had the authority to make changes in membership and or size of any committee appointed under 11 U.S.C. ⁻ 1102.

18.    In 1986, the Bankruptcy Code was substantially amended by Congress to, <u>inter alia</u>, expand the United States Trustee program nationwide. In providing for the specific responsibilities of the United States Trustee, Congress made significant amendments to 11 U.S.C. ⁻ 1102. First, Congress amended 11 U.S.C. ⁻ 1102(a) to provide that the United States Trustee, rather than the Court, would be responsible for appointing committees. Additionally, Congress completely deleted 11 U.S.C. ⁻ 1102(c), thereby eliminating the power of the Court to

change the size and composition of committees appointed by the United States Trustee. <u>In re</u> <u>Wheeler Technology, Inc.</u>, 139 B.R. 235, 239 (9th Cir. B.A.P. 1992); <u>In re Drexel Burnham</u> <u>Lambert Group, Inc.</u>, 118 B.R. 209, 210-211 (Bankr. S.D.N.Y. 1990); <u>In re Hills Stores Co.</u>, 137 B.R. 4, 8 (Bankr. S.D.N.Y. 1992); <u>In re Victory Markets, Inc.</u>, 196 B.R. 1, 4 (Bankr. N.D.N.Y. 1995), <u>appeal</u> <u>dismissed</u>, 195 B.R. 9 (N.D.N.Y. 1996); <u>Matter of Gates Engineering Co.</u>, 104 B.R. 653, 654 (Bankr. D. Del. 1989). Section 1102 of the Bankruptcy Code provides that

> as soon as practicable after the order for relief under chapter 11 of this title, the United States Trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or equity security holders as the United States Trustee deems appropriate.

11 U.S.C. ˜ 1102(a)(1995). Section 1102(a)(2) of the Bankruptcy Code provides that the Court may order that additional committees be appointed after notice and hearing ˜if necessary to assure adequate representation of creditors.™ This power to order the appointment of <u>additional</u> committees is the court—s sole remedy under the Bankruptcy Code for addressing claims of inadequate representation. <u>In re Drexel Burnham Lambert Group, Inc.</u>, 118 B.R. 209, 211 (Bankr. S.D.N.Y. 1990). However, if the Court decides that an additional committee is indeed necessary in any particular case, the United States Trustee is still given the sole authority to appoint the committee. <u>See</u> 11 U.S.C. ˜ 1102(a)(2)(1995) (˜[t]he United States trustee shall appoint any such committee™); <u>see also</u> <u>In re Dow Corning Corp.</u>, 212 BR 258, 264 (E.D. Mich. 1997))(holding that the United States Trustee has been given sole authority to appoint members of the various committees, the District Court reversed the Bankruptcy Court—s decision directing the United States Trustee to appoint new members to the Tort Claimants' Committee); <u>In re Hills</u> <u>Stores Co.</u>, 137 B.R. at 8.

      19.    The Southern District of New York has concluded in a majority of cases

addressing this issue, that in light of the 1986 amendments to section 1102, the bankruptcy courts

have no authority to change the membership of creditor committees.  See In re Drexel Burnham

Lambert, 118 B.R. at 210 (neither section 1102 nor section 105(a) authorize court to direct the

United States Trustee to appoint a creditor to a committee); In re Hills Stores Co., 137 B.R. 4, 8

(Bankr. S.D.N.Y. 1992)("Courts may not direct a United States Trustee to investigate the

qualifications of committee members nor may a court order the appointment of a creditor to a

committee."); In re Texaco Inc., 79 B.R. 560, 565-66 (Bankr. S.D.N.Y. 1987)(after 1986

amendments, the United States Trustee, not the court, is assigned administrative task of

appointing committees; any parties in interest that disagrees with the United States Trustee—s

decision may apply to the court for an order directing the United States Trustee appoint

**additional** committees to assure adequate representation)(emphasis added); In re McLean Indus.,

Inc., 70 B.R. 852, 856 n.2 (Bankr. S.D.N.Y. 1987)("Thus, [based on Congress—s repeal of section

1102(c),], the court no longer has the option to change committee membership"); but see In re

Barney—s Inc.197 B.R. 431, 439 (Bankr. S.D.N.Y. 1996)(Notwithstanding repeal of ¯1102(c),

bankruptcy court can apply ¯105(a) to review the United States Trustee—s decisions regarding the

size and/or composition of an official committee; the Barney—s court then held that the United

States Trustee did not act arbitrarily or capriciously, or otherwise abuse its discretion).

20.   In In re Drexel Burnham Lambert Group, Inc., 118 B.R. at 210, a creditor moved

the court to compel the United States Trustee to add the creditor to the committee of unsecured

creditors.  The creditor had made a formal request to the United States Trustee to be added to the

committee, but such request was refused.  In resolving the matter, the late Judge Buschman noted

"the absence of any indication in the statute that the court may add to or delete an unsecured

creditor from a committee"Id. at 210.  The court also was aware that Bankruptcy Code section

1102(c), which had previously provided the court with specific authority to alter the composition

of creditors— committees, had been deleted by the 1986 amendments. Id. Properly following the

statutory language strictly, the court concluded that Bankruptcy Code section 1102 does not

authorize the court to add or delete creditors from committees appointed pursuant to Bankruptcy

Code section 1102(a). Id. at 210-11. Furthermore, the court concluded that section 105 could not

provide such authorization, stating that ˜[s]ection 105(a) states that a court may issue orders

‒necessary and appropriate to carryout the provisions of this title,— not in ignorance of what

Congress has wrought.™ Id. at 211. The court did recognize that it had the ability to address

inadequate representation problems, but only through creation of other committees. Id.; see 11

U.S.C. ¯ 1102(a)(2).

     21.    Similarly, Judge Brozman, in In re Hills Stores Co., 137 B.R. 4 (Bankr. S.D.N.Y.

1992), cited the Drexel decision with approval in concluding that ˜[w]hile [the court] may order

the appointment of additional committees under ¯ 1102(a)(2) of the Code, the statute no longer

permits the addition or deletion of members of committees by the court.™ Id. at 8.

     22.    Movants argue that the Court apply section 1102(a) of the BAPCPA to this pre-

BAPCA case to direct the United States Trustee to reconstitute the Committee to add Law

Debenture as a member. However, given the well-reasoned analyses of Judge Buschman in

Drexel and Judge Brozman in In re Hills Stores Co. and the inapplicability of the BAPCPA to

this case, the Court should decline to follow In re Public Service Co. of New Hampshire, 89 B.R.

1014 (Bankr.D.N.H. 1988) and similar cases that Movants cite to the contrary, which are not

binding on this Court. Under the law in the Southern District of New York, section 105(a) of the

Bankruptcy Code should not be used to circumvent the plain meaning of Bankruptcy Code ¯

1102(a), which vests sole discretion in the United States Trustee as to the composition of

committees. Accordingly, this Court should deny the Motion.

**B.    The Decision Of The United States Trustee Regarding The Composition Of The Committee Was Not Arbitrary And Capricious**

23.    In the event that the Court decides that it has the authority to exercise powers given expressly to the United States Trustee under 11 U.S.C. ¯ 1102 to change the membership of the Committee, the standard for review of the United States Trustee—s decision must be whether such decision was arbitrary or capricious or otherwise an abuse of its discretion. In re Barney—s, Inc. 197 B.R. at 439 (Bankruptcy court will apply ¯ 105(a) to review whether the decision of the United States Trustee in connection with a request to change the membership of a committee is arbitrary and capricious and an abuse of discretion.); In re Mercury Fin. Co., 240 B.R. 270, 276-278 (N.D. Ill. 1999)(same); In re Am. W. Airlines, 142 B.R. 901, 902 (Bankr. D. Ariz. 1992)(same); see also, In re Columbia Gas System, Inc., 133 B.R. 174 (Bankr. D. Del. 1991) (Bankruptcy court may review the decision of the United States Trustee regarding the committee composition under an abuse of discretion standard pursuant to section 105(a)).  Under this standard of review, Law Debenture must present substantial evidence that the United States Trustee acted arbitrarily and capriciously in denying Law Debenture a seat on the Committee. ˜A decision is not —arbitrary and capricious— unless it is based on an erroneous conclusion of law, a record devoid of evidence on which the decision maker could rationally have based its decision, or is otherwise patently unreasonable, arbitrary or fanciful.™ In re Barney—s nt. at 439.  Law Debenture has provided no such evidence.

24.    After reviewing the creditor committee acceptance forms, the 1007 Affidavit of the Debtor, correspondence from the parties, as well as the additional information provided by the parties, the United States Trustee concluded that the interests of Law Debenture are

adequately represented by the current composition of the Committee which includes Cap Re, a subordinated noteholder.

**III.    The Subordinated Bondholders Interests' Are Adequately Represented By The Current Composition Of The Committee.**

25.    In the present case, the United States Trustee has formed a Committee that adequately represents the subordinated bondholders–interests. The term ˝adequate representation™ is not defined in the Bankruptcy Code. The issue of ˝dequate representation™ must be determined on a case by case basis. In re Hills Stores Co., 137 B.R. 4, 6 (Bankr. S.D.N.Y. 1992). Adequate representation has been defined as follows:

> Although the existence of adequate representation will always require a case-by-case determination, these comments can be synthesized into a statement that provides greater assistance to a court making this determination: For a particular group of creditors to be adequately represented by an existing committee, it is not necessary for the committee to be an exact reflection of that committee—s designated constituents. Instead, adequate representation exists if the interests of that particular group of creditors have a meaningful voice on the committee in relation to their posture in the case.

In re Dow Corning, 194 B.R. 121, 141-42 (Bankr.E.D.Mich.1996), rev—d on other grounds212 B.R. 258 (E.D.Mich. 1997).

26.    The determination of adequate representation is a two-step process. First, the Court must determine whether to ensure adequate representation, the committee should be reconstituted or whether the appointment of an additional committee is necessary. If the Court determines that certain creditors are not adequately represented, then the Court must decide whether to exercise its discretion to modify the committee in order to address claims of inadequate representation. In re Enron Corp., 279 B.R. 671, 685 (Bankr. S.D.N.Y. 2002). Criteria relevant to the Court—s decision on the first prong include (1) whether the current committee is able to function; (2) whether conflicts of interest ˝disenfranchise particular groups

of creditors;™ (3) the nature of the case; and (4) the standing and desire of the parties. Id. at 685-688.

27.     Law Debenture alleges, among other things, that six of the seven members of the Committee have interests unrelated to the subordinated noteholders and that Cap Re has a conflict because they also hold senior notes and are, purportedly, holders of GM stock.  Law Debenture, however, has not met their burden of proof on any of the Enron criteria.  Further, Law Debenture—s allegations are not supported by the facts of this case.

(A).  The Committee is Able to Function.

28.     A committee adequately represents creditors so long as "the diverse interests of particular creditor groups are represented on and have participated in that committee.™In re Sharon Steel, 100 B.R. 767, 777-78 (Bankr. W.D.Pa.1989).  The inclusion of disparate groups on committees facilitates, rather than hinders, the consensual resolution of conflicting priorities among the holders of unsecured claims and the formulation of a plan of reorganization.  Potential conflicts among the committee members do not show that a committee cannot function.  In re Hill Stores, 137 B.R. at 6-7.  Any disabling conflict must be the result of "vastly conflicting aims and entitlement™ and the members must be unable to work on a single committee."Id at 7.

29.     In this case, it appears the Committee is functioning properly.  The Committee is not dominated by any one constituent.  Movant-s-allegations that the Committee as presently configured cannot function to adequately protect the interests of the subordinated noteholders because no current member of the Committee represents the interests of the subordinated holders are unfounded.  The Committee has participated in every major aspect of the cases since its appointment.  Moreover, in the November 15th Latham Letter, counsel to the Committee explicitly states that the Committee is "well balanced™and has "functioned extremely well to

- 14 -

date through its current members.™

30.     Movants have not shown, and at this stage in the case, cannot show any disabling

conflicts among members of the Committee.  While Movants aver in the Motion and the

Supplement that Cap Re has a conflict because it is purportedly a holder of GM stock and holds

senior notes, there is no evidence that notwithstanding the foregoing, the Committee cannot

function or address the concerns of the subordinated note holders.  At the Organizational Meeting

each of the Committee—s members were advised by the United States Trustee that theywe a

fiduciary duty to all unsecured creditors.  Thus, if Cap Re had to abstain on a vote with respect to

an issue concerning GM, the Committee would could still function.  The other Committee

members, who owe a fiduciary duty to the entire creditor body, would deliberate so that the entire

Committee can reach decision.  Law Debenture has not shown that any member of the

Committee has, or will during the course of this case, breach their fiduciary duty to the other

unsecured creditors.

31.     Throughout the Movant—s—papers is the mistaken notion that they will be voiceless

in this case unless appointed to the Committee. There can be no question that creditors'

committees play a central role in Chapter 11 cases. But section 1109(b) of the Code enables all

creditors to be heard on any issue. The Movants also enjoy the right to make motions, see, e.g.,

11 U.S.C. ¯ 1112 and, most importantly, retain the right to vote and all of the other creditor

protections contained in Chapter 11. ˜Committees are not designed to provide a speaker's

platform for a particular creditor. They are designed to enable investigation and to provide a

forum for negotiation on behalf of all of the claims or interests they represent.™In re Drexel

Burnham Lambert Group, Inc., 118 B.R. at 212-13.

(B)  The Subordinated Bondholders are Not Disenfranchised.

32.     Disenfranchisement occurs "if the committee is so dominated by one group of creditors that a separate group has virtually no say in the decision-making process."TMIn re Dow Corning, 194 B.R. at 142. The contentions of committee members that their positions are not considered is evidence of disenfranchisement. Enron, 279 B.R. at 686.

33.     Movants have not presented any evidence of disenfranchisement. Movant-s-claim is based, not on hard facts, but on speculation that there will be insoluble conflicts within the Committee over the resolution of issues with GM, the plan of reorganization and other issues. There is no evidence that the subordinated bondholders positions on the Committee are not considered, and no Committee member has ever advised the United States Trustee that this has happened. Moreover, Movants have not shown any qualitative difference between their claims and the claims of the other unsecured creditors on the Committee that would result in the failure of the Committee to represent the subordinated bondholder-s-interests. As this case is in its early stages, there is no evidence that the subordinated bondholders will be treated any differently than the other unsecured creditors of the Debtor under a plan or reorganization.

(C).     The Size and Complexity of the Case Do Not Warrant Modification of the Committee.

34.     Modification of the Committee or the appointment of an additional committee may be warranted in large or complex cases, but "the size of a case alone is not determinative."TM Enron, 279 B.R. at 688. Often the formation of a separate committee "will not eliminate the inherent tensions; indeed it will only weaken the impetus to compromise."TMIn re Sharon Steel, 100 B.R. at 779. The relationship between the Debtor and the unsecured creditors is not out of the ordinary. The business relationships among the Debtor and the unsecured creditors who are currently serving on the Committee may differ in some respects but the treatment of the claims of

- 16 -

trade creditors under a plan should not differ. The allegation that Committee members have differing goals with respect to maximizing value and facilitating the Debtor-s-reorganization also is groundless.

(D.) The Debtors and the Committee Oppose Modification of the Committee.

35.    The Court should also look to the positions of the various constituents in the case in determining whether there is adequate representation. Enron, 279 B.R. at 685. The Committee and the Debtor oppose formation of an additional committee. The Debtor—s position is that current committee membership accurately and proportionately represents the Debtor—s creditor body. Likewise, the Committee states that ˜altering its voting composition will not improve its ability to advance the interests of all unsecured creditors.™

36.    Based upon the foregoing, Movants are adequately represented by the Committee. Therefore, the United States Trustee respectfully requests that the Court deny the Motion of Law Debenture to reconstitute the Committee.

## IV. CONCLUSION

37.    Based on the foregoing, the United States Trustee requests that the Court sustain her objections, deny the request of Law Debenture, and grant such other relief as is just.

Dated: New York, NY
          December 30, 2005

                                        DEIRDRE A. MARTINI
                                        UNITED STATES TRUSTEE

                        By:      /s/ Tracy Hope Davis
                                 Tracy Hope Davis (THD-8154)
                                 Attorney

                                 33 Whitehall Street
                                 21st Floor
                                 New York, New York 10004-2112

- 17 -

Tel. No. (212) 510-0500
Fax. No. (212) 668-2255

# EXHIBIT A

FROM LATHAM & WATKINS LLP   (212) 751-4864          (TUE)12. 27' 05 15:44/ST. 15:44/NO. 4861943306 P  2

# WACHTELL, LIPTON, ROSEN & KATZ

MARTIN LIPTON
HERBERT M. WACHTELL
WILLIAM W. HUSSBAUM
RICHARD D. KATENER
PETER C. CANELLOS
ALLAN A. MARTIN
LAWRENCE B. PEDOWITZ
ROBERT B. MAZUR
PAUL VIZCARROMDOO, JR.
PETER C. HEIN
HAROLD S. NOVIKOFF
DAVID M. EINHORN
KENNETH B. FORREST
MEYER G. KOPLOW
THEODORE N. MIRVIS
EDWARD D. HERLIHY
DANIEL A. NEFF
ERIC M. ROTH
WARREN R. STERN
ANDREW R. BRUINSTEIN
MICHAEL H. BYOWITZ
PAUL K. ROWE
MICHAEL G. DEKFER
MARC WOLINSKY
DAVID GRUENSTEIN
PATRICIA A. VLAHAKIS
STEPHEN G. SELLMAN
STEVEN A. ROSENBLUM
PAMELA S. SEYMON
STEPHANIE J. SELIGMAN
ERIC S. ROBINSON
JOHN F. SAVARESE
SCOTT K. CHARLES
ANDREW C. HOUSTON
PHILIP MINDLIN
DAVID S. NEILL
JODI J. SCHWARTZ
ADAM O. EMMERICH

CRAIG M. WASSERMAN
ADAM D. CHINN
GEORGE T. CONWAY III
RALPH M. LEVENE
RICHARD G. MASON
KAREN G. KRUEGER
DOUGLAS K. MAYER
DAVID M. SILK
ROBIN PANOVKA
MITCHELL S. PRESSER
ILENE KNABLE GOTTS
JEFFREY B. BOFFA
DAVID M. MURPHY
JEFFREY M. WINTNER
TREVOR S. NORWITZ
BEN M. GERMANA
ANDREW J. NUSSBAUM
MICHAEL A. KATZKE
RACHELLE SAVERBERG
DAVID C. BRYAN
STEVEN A. COHEN
GAVIN D. SOLOTAR
DEBORAH L. PAUL
DAVID C. KARP
RICHARD K. KIM
JOSHUA R. CAMMAKER
MARK GORDON
JOSEPH D. LARSON
LAWRENCE S. MAKOW
JARED M. RUSMAN
JEANNEMARIE O'BRIEN
WAYNE M. CARLIN
JAMES COLE, JR.
STEPHEN R. DIPRIMA
NICHOLAS G. DEMMO
IGOR KIRMAN
JONATHAN M. MOSES

81 WEST 52ND STREET

NEW YORK, N.Y. 10019-6150

TELEPHONE: (212) 403-1000
FACSIMILE: (212) 403-2000

GEORGE A. KATZ (1965-1989)
JAMES H. FOGELSON (1967-1991)

OF COUNSEL

WILLIAM T. ALLEN        LEONARD M. ROSEN
THEODORE GEWERTZ       MICHAEL W. SCHWARTZ
THEODORE A. LEVINE     ELLIOTT V. STEIN
NORMAN REDLICH        J. BRYAN WHITWORTH
JOHN M. RICHMAN       ANT R. WOLF

COUNSEL

ADRIENNE ATKINSON      LAWRENCE A. PASINI
ANDREW J.H. CHEUNG     ADAM J. SHAPIRO
PAMELA EHRENKRANZ

JAMES B. LEVINE
GORDON N. MEAD
DANYELL J. MASCOFF
DANIELLE L. ROSE
BENJAMIN M. ROTH
ROBIN N. HALL
DAVID N. ADLERSTEIN
SHIN SHIN-ISHAI
ANATOLY BRINGA
JOSHUA D. BLANK
JOSHUA A. FELTMAN
MARTIN J.E. ARMS
BENJAMIN D. FACKLER
ISRAEL FRIEDMAN
DIMITRY JOFFE
ROY J. KATZOVICZ
ROBERT J. LIURANIC
GREGORY E. OSTLING
JONATHAN E. PICKHARDT
GREGORY M. RACZ
EDWARD J.W. BLATNIK
BENJAMIN S. BURMAN
NELSON O. FITTS
JEFFREY R. FOURMAUX
MICHAEL GAT
JEREMY L. GOLDSTEIN
MAURA N. GROSSMAN
JOSHUA N. HOLMES
JOSHUA A. MUNN
DAVID E. SHAPIRO
ANTE VUCIC
IAN BOCCIO
MATTHEW M. GUEST
WILLIAM H. HARKER
DAVID E. KAHAN
MARK A. KOENIG
DAVID B. LAT
BENJAMIN S. LEE
LAURA E. MUÑOZ
MICHAEL O. WINOGRAD
FORREST G. ALOGNA

JAMES E. LEVINE
GORDON N. MEAD
DANYELL J. MASCOFF
DANIELLE L. ROSE
BENJAMIN M. ROTH
ROBIN N. HALL
DAVID N. ADLERSTEIN
SHIN SHIN-ISHAI
ANATOLY BRINGA
JOSHUA D. BLANK
JOSHUA A. FELTMAN
MARTIN J.E. ARMS
CHETAN GULATI
ADAM HICKEY
MARGARET ISA
ANDREW G. JACOBS
ERIN A. KLEINDAUS
CHI S. STEVE KWOK
JASON M. LYNCH
HEATHER L. MANAR
DEBORAH MARTINEZ
WILLIAM S. SCHEFFER
DAVID B. SILVA
KRISTINA VEERANCHAVAN
ADIR G. WALDMAN
B. UMUT ERGUN
KRISTELNA A. GARCIA
ANNIE M. JEONG
SARAH B. JOHNSON
MICHAEL KRASNOVSKY
SARAH A. LEWIS
YELENA LUNKIN
SARAH FERN NEIL
BARRETT B. MOKRIA
ALISON L. PLESSMAN
ADAM H. ROGOLAK
DANIEL E. MENU
SCOTT B. LUFTGLASS
PAUL B. NOVIKIN
KEVIN OYONS

December 19, 2005

Alicia M. Leonhard, Esq.
Office of United States Trustee
33 Whitehall Street, Suite 2100
New York, NY 10004

    Re:    <u>Delphi Corporation</u>

Dear Ms. Leonhard:

        As you may be aware, we represent Capital Research and Management Company in the Chapter 11 cases of Delphi Corporation and its affiliates. Cap Re is co-chair of the Delphi Unsecured Creditors' Committee and, to our knowledge, is Delphi's largest funded debt creditor.

        I am writing in response to correspondence you received at the end of last week from the Brown Rudnick firm on behalf of Law Debenture Trust Company of New York, wherein Law Debenture incorrectly alleges that Cap Re has sold (or is in the process of selling) its interests in the Delphi Subordinated Notes and that, accordingly, the Committee no longer will have any members who are Subordinated Noteholders.

        Attached for your reference is the Notice of Status as a Substantial Claimholder that Cap Re filed with the Bankruptcy Court on or about November 11, 2005. Cap Re advises me that it has not sold any of the $529,931,045 in principal amount of securities reflected in such Notice (including the preferred securities and associated Subordinated Notes) and is not in the process of doing so.

WACHTELL, LIPTON, ROSEN & KATZ

Alicia M. Leonhard, Esq.
December 19, 2005
Page 2

In the future, we hope that Law Debenture and its counsel will contact us to ascertain the facts before making baseless assertions about Cap Re in letters to your office. This would certainly save the other parties a lot of otherwise-wasted time and energy.

If you have any questions about this letter or the attachment, please do not hesitate to call me.

Best regards.

Sincerely,

Richard G. Mason

cc:   Robert J. Stark, Esq.
      John Wm. Butler, Jr., Esq.
      Mitchell Seider, Esq.
      David Daigle
      Kristine Nishiyama, Esq.
      Emil Kleinhaus, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x
                                        :
    In re                               :
                                        :    Chapter 11
DELPHI CORPORATION, et al.,              :
                                        :    Case No. 05–44481 (RDD)
                    Debtors.            :
                                        :    (Jointly Administered)
                                        :
                                        :
———————————————————————— x

## NOTICE OF STATUS AS A SUBSTANTIAL CLAIMHOLDER[1]

    PLEASE TAKE NOTICE that certain mutual funds advised by Capital
Research and Management Company is or may be a Substantial Claimholder with respect
to claims against Delphi Corporation ("Delphi") or any of the 38 subsidiaries[2], and
affiliates of Delphi ("Affiliate Debtors"), debtors and debtors-in-possession in Case No.
05-44481 (RDD), pending in the United States Bankruptcy Court for the Southern
District of New York.

---

[1]    For purposes of this Notice: (i) a "Substantial Claimholder" is any person or entity that
beneficially owns an aggregate principal amount of claims against the debtors equal to or
exceeding $100,000,000 or any controlled entity through which a Substantial Claimholder
beneficially owns an indirect interest in claims against the Debtors, (ii) "beneficial
ownership" of claims includes direct and indirect ownership (e.g., a holding company would
be considered to beneficially own all shares owned or acquired by its subsidiaries),
ownership by family members and any group of persons acting pursuant to a formal or
informal understanding to make a coordinated acquisition of claims, and ownership of claims
which such holder has an option to acquire, and (iii) an "option to acquire claims includes
any contingent purchase, put, contract to acquire a claim(s) or similar interest, regardless of
whether it is contingent or otherwise not currently exercisable.

[2]    The 38 subsidiaries are: ASEC Manufacturing General Partnership, ASEC Sales General
Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive
Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi
Automotive Systems Human Resources LLC, Delphi Automotive Systems International,
Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi
Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management
Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee,
Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection
Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign
Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings
Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi
LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation,
Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi
NY Holdings Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc.,
DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard
Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics
International Ltd.

PLEASE TAKE FURTHER NOTICE that, as of October 12, 2005, certain mutual funds advised by Capital Research and Management Company (the "funds") as described in attached Exhibit A, beneficially own claims in the aggregate principal amount of $529,931,045 against the Debtors. The following table sets forth the name of the Debtor issuer, a summary of the terms, and the date on which the funds acquired or otherwise became the beneficial owner of each such Claim:

| Debtor Issuer | Terms | Date Acquired |
|---|---|---|
| Delphi Corporation | Bonds – 6.5% 08-15-13 (cusip 247126AE5) | With the exception $12,000,000, all acquired within the last 18 months |
| Delphi Corporation | Bonds – 7.125% 05-01-29 (cusip 247126AC9) | All acquired within the last 18 months |
| Delphi Corporation | Notes – 6.55% 06-15-06 (cusip 247126AD7) | All acquired within the last 18 months |
| Delphi Corporation | Notes – 6.5% 05-01-09 (cusip 247126AB1) | All acquired within the last 18 months |
| Delphi Corporation | Preferred Securities Series A 8.25% 10-15-33 (cusip 247177207) | All acquired within the last 18 months |

(Attach additional page if necessary)

PLEASE TAKE FURTHER NOTICE that the taxpayer identification number of the funds is disclosed in attached Exhibit A.

PLEASE TAKE FURTHER NOTICE that, under penalties of perjury, Capital Research and Management Company, for and on behalf of certain mutual funds it advises, hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct, and complete.

PLEASE TAKE FURTHER NOTICE that, pursuant to that certain Order Under 11 U.S.C. §§ 105, 362, And 541 And Bankruptcy Rule 3001 (A) Establishing Notification Procedures Applicable To Substantial Holders Of Claims And Equity Securities And (B) Establishing Notification And Hearing Procedures For Trading In Claims And Equity Securities, this Notice is being (a) filed with the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, and (b) served upon (i) the Debtors, Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098-2815, Att'n General Counsel and Chief Tax Officer and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606-1285, Att'n John K. Lyons and Randall G. Reese.

2

FROM LATHAM & WATKINS LLP   (212) 751-4864        (TUE) 12 27' 05 15:45/ST. 15:44/NO. 4861943306 P  6

This Notice is given in addition to, and not as a substitute for, any requisite notice under Rule 3001 of the Federal Rules of Bankruptcy Procedure.

Respectfully submitted,

Capital Research and Management
Company, for and on behalf of
certain mutual funds it advises
(Name of Claimholder)

By: _____

Name: Paul G. Haaga, Jr.
Title:  Executive Vice President

Address:  333 South Hope Street, 55th floor
Los Angeles, CA 90071
Attn: Kristine Nishiyama
Telephone:  (213) 486-9652
Facsimile:  (213) 615-0430

Date: November 11, 2005

3

FROM LATHAM & WATKINS LLP   (212) 751-4864    (TUE) 12. 27' 05 15:45/ST. 15:44/NO. 4861943306 P  7

## Exhibit A

## Claims Beneficially Owned by Mutual Funds Advised by
## Capital Research and Management Company

| Fund | Total Principal Claim Amount | Tax I.D. |
|------|------------------------------|----------|
| American Funds Insurance Series - Asset Allocation Fund | $985,000 | 95-6992331 |
| American Funds Insurance Series - Bond Fund | $10,230,000 | 95-6994555 |
| American Funds Insurance Series - High-Income Bond Fund | $5,055,000 | 95-3980825 |
| American High-Income Trust | $78,998,800 | 95-6872063 |
| The Bond Fund of America, Inc. | $14,870,000 | 95-2884957 |
| Capital Income Builder, Inc. | $1,200,000 | 95-4148404 |
| Capital World Bond Fund, Inc. | $240,000 | 95-6864454 |
| Capital World Growth and Income Fund, Inc. | $14,955,000 | 95-4402570 |
| The Growth Fund of America, Inc. | $153,690,000 | 52-0792143 |
| The Income Fund of America, Inc. | $249,707,245 | 06-5857264 |
| **TOTAL** | $529,931,045 | |