WACHTELL, LIPTON, ROSEN & KATZ
51 West 52nd Street
New York, New York 10019-6150
Telephone: (212) 403-1000
Richard G. Mason (RM 0698)
Amy R. Wolf (AW 6646)
Emil A. Kleinhaus (EK 6731)

Attorneys for Capital Research and Management Company

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------x

| | | |
|---|---|---|
| **In re:** | : | **Chapter 11** |
| | : | |
| **DELPHI CORPORATION, et al.,** | : | **Case No. 05-44481 (RDD)** |
| | : | |
| **Debtors.** | : | **(Jointly Administered)** |

-------------------------------------------------x

**STATEMENT OF CAPITAL RESEARCH AND MANAGEMENT COMPANY IN
RESPONSE TO MOTION OF LAW DEBENTURE TRUST COMPANY OF
NEW YORK REQUESTING AN ORDER TO CHANGE THE MEMBERSHIP
OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

In response to the Motion of Law Debenture Trust Company of New York

Requesting an Order to Change the Membership of the Official Committee of Unsecured Creditors

and the Supplement thereto (collectively, the "Motion"), Capital Research and Management

Company and associated funds (collectively, "Cap Re") respectfully state as follows:

1.      Cap Re is co-chair of the Debtors' Official Committee of Unsecured

Creditors (the "Committee") and the holder of approximately $530 million in principal amount

of Delphi Senior and Subordinated Notes.[1] Cap Re fully concurs with the objection to the

---

[1] Capitalized terms have the same meaning as in the Motion. As in the Motion, "Subordinated
Noteholders" is used to refer to the ultimate beneficiaries of the Subordinated Notes, even
though the Subordinated Notes will be held in trust by Law Debenture until such time as the
Statutory Trusts are dissolved.

Motion filed by the Committee.  This Statement is filed for the limited purpose of correcting and supplementing the factual record presented to the Court by Law Debenture.

2.    In the Motion, Law Debenture asserts that it "made due inquiry into Capital Research's holdings, but Capital Research has refused to make this information available." Motion ¶ 17 n.6.  Law Debenture also stated in two letters to the United States Trustee that, according to a "reasonably reliable" source, Cap Re sold its position in the Subordinated Notes.  See Ex. A (letter dated December 16, 2005); Ex. B (letter dated December 17, 2005).  For the record, the facts regarding Cap Re's communications with Law Debenture and its holdings in the Subordinated Notes are as follows:

3.    Law Debenture has never communicated directly with Cap Re concerning Cap Re's holdings in the Subordinated Notes.  Its communications on that subject were made only in its two letters to the United States Trustee, which suggested that Cap Re had sold or was in the process of selling its holdings in the Subordinated Notes.  On December 19, 2005, Cap Re confirmed to the United States Trustee that it had not sold, and was not in the process of selling, any of the Subordinated Notes that it held when it filed its Notice of Status as a Substantial Claimholder on November 11, 2005.  See Ex. C (letter dated December 19, 2005).

4.    Cap Re's total holdings of Delphi subordinated debt are as follows:  Cap Re holds 1,380,045 original par of the securities delineated as 8.25% Cumulative Trust Preferred Securities due 10/15/33 (cusip 24717P207).  Cap Re therefore holds over 10% of the interests in Delphi Trust I and over 7% of the total value of the Statutory Trusts.  Upon dissolution of the Statutory Trusts, Cap Re will hold approximately $30 million in Subordinated Notes.

5.    In the Supplement to its Motion filed on December 27, 2005, Law Debenture argues that Cap Re's position in General Motors common stock requires rejection of

"any lingering notion that [Cap Re] can serve as the 'voice' for Subordinated Noteholder interests." For the reasons stated in the Committee's objection, including the substantial authority for the proposition that each Committee member is presumed to fulfill its fiduciary duties notwithstanding potential conflicts of interest, this argument is meritless. To ensure that the factual record is complete, Cap Re adds the following:

6.      Cap Re and its affiliates are, collectively, among the largest asset managers in the United States. By virtue of its size, Cap Re holds, and will continue to hold, substantial positions in an array of automotive-industry companies, including Delphi and General Motors. Inasmuch as it is coming into possession of non-public information in its capacity as member and co-chair of the Committee, Cap Re has established an "information wall" for the Delphi matter (the "Information Wall"). The rules governing adherence to and enforcement of the Information Wall are laid out in Cap Re's Policies and Procedures Regarding Information Walls (the "Procedures"). On November 30, 2005, Cap Re delivered to the United States Trustee an Acknowledgment signed by David Daigle, Cap Re's representative on the Committee. By signing the Acknowledgment, David Daigle indicated that he is subject to the requirements set forth in the Acknowledgment and the Procedures. See Ex. D (letter from Cap Re to United States Trustee and attachments).

Dated: December 30, 2005
New York, New York

Respectfully submitted,
Capital Research and Management Company

By: WACHTELL, LIPTON, ROSEN & KATZ

/s/ Richard G. Mason
Richard G. Mason (RM 0698)
Amy R. Wolf (AW 6646)
Emil A. Kleinhaus (EK 6731)
51 West 52nd Street
New York, New York  10019-6150
Telephone: (212) 403-1000
Facsimile:  (212) 403-2000

**BROWNRUDNICK**

ROBERT J. STARK
direct dial: 212-209-4862
rstark@brownrudnick.com

Seven
Times
Square
New York
New York
10036
tel 212.209.4800
fax 212.209.4801

December 16, 2005

## BY ELECTRONIC MAIL AND FACSIMILE

Alicia M. Leonhard, Esq.
Office of the United States Trustee
33 Whitehall Street, Suite 2100
New York, New York 10004

   RE: <u>In re Delphi Corporation, et al.</u>,
       **Chapter 11 Case No. 05-44481 (Bankr. S.D.N.Y.)**

Dear Alicia:

   As you know, this firm is counsel to Law Debenture Trust Company of New York ("<u>Law Debenture</u>"), successor Indenture Trustee and Property Trustee respecting two notes issued by Delphi Corporation: (a) the 8.25% Junior Subordinated Note due 2033 in the aggregate principal amount of $257,731,975; and (b) the Adjustable Rate Junior Subordinated Note due 2033 in the aggregate principal amount of $154,640,000 (together, the "<u>Subordinated Notes</u>").

   I am in receipt of your December 14, 2005 letter reporting, among other things, that Law Debenture's request for appointment to the Official Creditors' Committee (the "<u>Official Committee</u>") remains under advisement by the United States Trustee. We thank you for your letter, and for the Trustee's continued consideration of Law Debenture's request.

   Yesterday, we learned an additional piece of information that may assist the Trustee in her evaluation of our request. It was reported to us that Capital Research and Management Company ("<u>Capital Research</u>") has sold its entire interest in Subordinated Notes, but still retains its interest in purportedly senior bond indebtedness. Thus, to the extent the United States Trustee has viewed Capital Research as a voice for Subordinated Noteholders on the Official Committee, no such voice remains.



Alicia M. Leonhard, Esq.
December 16, 2005
Page 2

Since not one single member of the Official Committee is positioned to represent the interests of Subordinated Noteholders, Law Debenture again renews its request to be appointed to the Official Committee. We also respectfully urge the United States Trustee to act quickly in this regard. As always, we are ready, willing, and able to meet with the Trustee to discuss this matter further. We otherwise anxiously await her decision.

Very truly yours,

Robert J. Stark

Copies:  John Wm. Butler, Jr., Esq. (by electronic mail and facsimile)
Robert Rosenberg, Esq. (by electronic mail and facsimile)
Daniel R. Fisher, Esq. (by electronic mail)
Patrick J. Healy (by electronic mail)

**BROWN**RUDNICK

ROBERT J. STARK
direct dial: 212-209-4862
rstark@brownrudnick.com

Seven
Times
Square
New York
New York
10036
tel 212.209.4800
fax 212.209.4801

December 17, 2005

## BY ELECTRONIC MAIL

Alicia M. Leonhard, Esq.
Office of the United States Trustee
33 Whitehall Street, Suite 2100
New York, New York 10004

RE:   In re Delphi Corporation, *et al.* (the "Debtors"),
      Chapter 11 Case No. 05-44481 (Bankr. S.D.N.Y.)

Dear Alicia:

Yesterday afternoon, I received an electronic mail message from Mitchell Seider, counsel to the Official Creditors' Committee, which email message was followed yesterday evening by a telephone conversation with Mr. Seider. In the email message and during our conversation, Mr. Seider informed me that, in response to my letter to you yesterday, he contacted Capital Research and Management Company ("Capital Research") inquiring as to whether Capital Research did, as asserted in my letter, sell its interest in the Debtors' Subordinated Notes. Mr. Seider advised me that, as reported to him, Capital Research has not sold its position in the Subordinated Notes.

Law Debenture Trust Company of New York ("Law Debenture") received news of the Capital Research sale transaction from what it believes to be a reasonably reliable source. It is not, however, in a position to confirm the accuracy of the report. Obviously, only Capital Research can do so. As there appears to be conflicting news regarding this matter, Law Debenture respectfully submits that Capital Research (and not counsel to the Official Creditors' Committee) is the proper party to clarify the record. Such clarification should be in the form of a writing delivered on Monday to all relevant parties stating with particularity Capital Research's position in Senior Notes and Subordinated Notes, as of Monday. Axiomatic, any sales of Subordinated Notes that are in progress would not, in our view, constitute present holdings of Subordinated Notes, even if such sales have not closed as of Monday.



Alicia M. Leonhard, Esq.
December 17, 2005
Page 2

.

All this being said, Law Debenture maintains that, so long as Capital Research holds a position in the Debtors' Senior Notes, it is hopelessly conflicted and cannot be relied upon as a voice for the Subordinated Noteholders.    Accordingly, Law Debenture should be appointed to the Official Creditors' Committee and, again, renews its request for such appointment.

Very truly yours,

Robert J. Stark

Copies:    John Wm. Butler, Jr., Esq. (by electronic mail)
Michell Seider (by electronic mail)
Richard G. Mason (by electronic mail)
Daniel R. Fisher, Esq. (by electronic mail)
Patrick J. Healy (by electronic mail)

# WACHTELL, LIPTON, ROSEN & KATZ

MARTIN LIPTON
HERBERT M. WACHTELL
BERNARD W. NUSSBAUM
RICHARD D. KATCHER
PETER C. CANELLOS
ALLAN A. MARTIN
LAWRENCE B. PEDOWITZ
ROBERT B. MAZUR
PAUL VIZCARRONDO, JR.
PETER C. HEIN
HAROLD S. NOVIKOFF
DAVID M. EINHORN
KENNETH B. FORREST
MEYER G. KOPLOW
THEODORE N. MIRVIS
EDWARD D. HERLIHY
DANIEL A. NEFF
ERIC M. ROTH
WARREN R. STERN
ANDREW R. BROWNSTEIN
MICHAEL H. BYOWITZ
PAUL K. ROWE
MICHAEL B. BENNER
MARC WOLINSKY
DAVID GRUENSTEIN
PATRICIA A. VLAHAKIS
STEPHEN G. GELLMAN
STEVEN A. ROSENBLUM
PAMELA S. SEYMON
STEPHANIE J. SELIGMAN
ERIC S. ROBINSON
JOHN F. SAVARESE
SCOTT K. CHARLES
ANDREW C. HOUSTON
PHILIP MINDLIN
DAVID S. NEILL
JODI J. SCHWARTZ
ADAM O. EMMERICH

CRAIG M. WASSERMAN
ADAM D. CHINN
GEORGE T. CONWAY III
RALPH M. LEVENE
RICHARD G. MASON
KAREN G. KRUEGER
DOUGLAS K. MAYER
DAVID M. SILK
ROBIN PANOVKA
DAVID A. KATZ
MITCHELL S. PRESSER
ILENE KNABLE GOTTS
JEFFREY R. BOFFA
DAVID M. MURPHY
JEFFREY M. WINTNER
TREVOR S. NORWITZ
BEN M. GERMANA
ANDREW J. NUSSBAUM
MICHAEL S. KATZKE
RACHELLE SILVERBERG
DAVID C. BRYAN
STEVEN A. COHEN
GAVIN D. SOLOTAR
DEBORAH L. PAUL
DAVID C. KARP
RICHARD K. KIM
JOSHUA R. CAMMAKER
MARK GORDON
JOSEPH D. LARSON
LAWRENCE S. MAKOW
JARED M. RUSMAN
JEANNEMARIE O'BRIEN
WAYNE M. CARLIN
JAMES COLE, JR.
STEPHEN R. DiPRIMA
NICHOLAS G. DEMMO
IGOR KIRMAN
JONATHAN M. MOSES

51 WEST 52ND STREET

NEW YORK, N.Y. 10019-6150

TELEPHONE: (212) 403-1000

FACSIMILE: (212) 403-2000

———

GEORGE A. KATZ (1965-1989)
JAMES H. FOGELSON (1967-1991)

OF COUNSEL

WILLIAM T. ALLEN       LEONARD M. ROSEN
THEODORE GEWERTZ       MICHAEL W. SCHWARTZ
THEODORE A. LEVINE     ELLIOTT V. STEIN
NORMAN REDLICH        J. BRYAN WHITWORTH
JOHN M. RICHMAN       AMY R. WOLF

COUNSEL

ADRIENNE ATKINSON     LAWRENCE A. PASINI
ANDREW J.H. CHEUNG    ADAM J. SHAPIRO
PAMELA EHRENKRANZ

J. AUSTIN LYONS
LORI S. SHERMAN
PAULA N. GORDON
T. EIKO STANGE
DAVID A. SCHWARTZ
JED I. BERGMAN
MICHAEL A. CHARISH
DAMIAN G. DIDDEN
JOHN F. LYNCH
ERIC M. ROSOF
WILLIAM SAVITT
MARTIN J.E. ARMS
BENJAMIN D. FACKLER
ISRAEL FRIEDMAN
DIMITRY JOFFE
ROY J. KATZOVICZ
ROBERT J. LIUBICIC
GREGORY E. OSTLING
JONATHAN E. PICKHARDT
GREGORY N. RACZ
EDWARD J.W. BLAYNIK
BENJAMIN S. BURMAN
NELSON O. FITTS
JEFFREY C. FOURMAUX
MICHAEL GAT
JEREMY L. GOLDSTEIN
MAURA R. GROSSMAN
JOSHUA M. HOLMES
JOSHUA A. MUNN
DAVID E. SHAPIRO
ANTE VUCIC
IAN BOCZKO
MATTHEW M. GUEST
WILLIAM R. HARKER
DAVID E. KAHAN
MARK A. KOENIG
DAVID K. LAM
KENNETH K. LEE
LAURA E. MUÑOZ
MICHAEL S. WINOGRAD
FORREST G. ALOGNA

JAMES R. LEVINE
GORDON M. MEAD
SAMUEL J. RASCOFF
DANIELLE L. ROSE
BENJAMIN M. ROTH
ROBIN M. WALL
DAVID M. ADLERSTEIN
SHIRI BEN-YISHAI
ANATOLIY BIZHKO
JOSHUA D. BLANK
JOSHUA A. FELTMAN
JONATHAN H. GORDON
CHETAN GULATI
ADAM MICKEY
MARGARET IBA
ANDREW S. JACOBS
EMIL A. KLEINHAUS
CHI T. STEVE KWOK
JASON M. LYNCH
HEATHER L. MAHAR
DEBORAH MARTINEZ
WILLIAM E. SCHEFFER
DAVID B. SILVA
KRISHNA VEERARAGHAVAN
AGIR G. WALDMAN
B. UMUT ERGUN
KRISTELIA A. GARCÍA
ANNIE H. JEONG
SARAH B. JOHNSON
MICHAEL KRASNOVSKY
SARAH A. LEWIS
YELENA LUNGIN
SARAH FERN HEIL
GARRETT B. MORITZ
ALISON L. PLESSMAN
ADAM N. GOGOLAK
DANIEL E. HEMLI
SCOTT B. LUFTGLASS
PAUL S. MISHKIN
KEVIN OTERO

December 19, 2005

Alicia M. Leonhard, Esq.
Office of United States Trustee
33 Whitehall Street, Suite 2100
New York, NY 10004

Re:   Delphi Corporation

Dear Ms. Leonhard:

As you may be aware, we represent Capital Research and Management Company in the Chapter 11 cases of Delphi Corporation and its affiliates. Cap Re is co-chair of the Delphi Unsecured Creditors' Committee and, to our knowledge, is Delphi's largest funded debt creditor.

I am writing in response to correspondence you received at the end of last week from the Brown Rudnick firm on behalf of Law Debenture Trust Company of New York, wherein Law Debenture incorrectly alleges that Cap Re has sold (or is in the process of selling) its interests in the Delphi Subordinated Notes and that, accordingly, the Committee no longer will have any members who are Subordinated Noteholders.

Attached for your reference is the Notice of Status as a Substantial Claimholder that Cap Re filed with the Bankruptcy Court on or about November 11, 2005. Cap Re advises me that it has not sold any of the $529,931,045 in principal amount of securities reflected in such Notice (including the preferred securities and associated Subordinated Notes) and is not in the process of doing so.

WACHTELL, LIPTON, ROSEN & KATZ

Alicia M. Leonhard, Esq.
December 19, 2005
Page 2

In the future, we hope that Law Debenture and its counsel will contact us to ascertain the facts before making baseless assertions about Cap Re in letters to your office. This would certainly save the other parties a lot of otherwise-wasted time and energy.

If you have any questions about this letter or the attachment, please do not hesitate to call me.

Best regards.

Sincerely,

Richard G. Mason

cc:    Robert J. Stark, Esq.
       John Wm. Butler, Jr., Esq.
       Mitchell Seider, Esq.
       David Daigle
       Kristine Nishiyama, Esq.
       Emil Kleinhaus, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------ x
                                                             :
            In re                                            :
                                                             :    Chapter 11
DELPHI CORPORATION, et al.,                                  :
                                                             :    Case No.  05–44481 (RDD)
                              Debtors.                       :
                                                             :    (Jointly Administered)
                                                             :
------------------------------------------------------------ x

## NOTICE OF STATUS AS A SUBSTANTIAL CLAIMHOLDER[1]

            PLEASE TAKE NOTICE that certain mutual funds advised by Capital
Research and Management Company is or may be a Substantial Claimholder with respect
to claims against Delphi Corporation ("Delphi") or any of the 38 subsidiaries[2], and
affiliates of Delphi ("Affiliate Debtors"), debtors and debtors-in-possession in Case No.
05-44481 (RDD), pending in the United States Bankruptcy Court for the Southern
District of New York.

---

[1]    For purposes of this Notice:  (i) a "Substantial Claimholder" is any person or entity that
beneficially owns an aggregate principal amount of claims against the debtors equal to or
exceeding $100,000,000 or any controlled entity through which a Substantial Claimholder
beneficially owns an indirect interest in claims against the Debtors, (ii) "beneficial
ownership" of claims includes direct and indirect ownership (e.g., a holding company would
be considered to beneficially own all shares owned or  acquired by its subsidiaries),
ownership by family members and any group of persons acting pursuant to a formal or
informal understanding to make a coordinated acquisition of claims, and ownership of claims
which such holder has an option to acquire, and (iii) an "option to acquire claims includes
any contingent purchase, put, contract to acquire a claim(s) or similar interest, regardless of
whether it is contingent or otherwise not currently exercisable.

[2]    The 38 subsidiaries are: ASEC Manufacturing General Partnership, ASEC Sales General
Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive
Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi
Automotive Systems Human Resources LLC, Delphi Automotive Systems International,
Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi
Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management
Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee,
Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection
Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign
Sales Corporation, Delphi Integrated Service Solutions, Inc., Delphi International Holdings
Corp., Delphi International Services, Inc., Delphi Liquidation Holding Company, Delphi
LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation,
Delphi Medical Systems Corporation, Delphi Medical Systems Texas Corporation, Delphi
NY Holdings Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc.,
DREAL, Inc., Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard
Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics
International Ltd.

PLEASE TAKE FURTHER NOTICE that, as of October 12, 2005, certain mutual funds advised by Capital Research and Management Company (the "funds") as described in attached Exhibit A, beneficially own claims in the aggregate principal amount of $529,931,045 against the Debtors. The following table sets forth the name of the Debtor issuer, a summary of the terms, and the date on which the funds acquired or otherwise became the beneficial owner of each such Claim:

| Debtor Issuer | Terms | Date Acquired |
|---|---|---|
| Delphi Corporation | Bonds – 6.5% 08-15-13 (cusip 247126AE5) | With the exception $12,000,000, all acquired within the last 18 months |
| Delphi Corporation | Bonds – 7.125% 05-01-29 (cusip 247126AC9) | All acquired within the last 18 months |
| Delphi Corporation | Notes – 6.55% 06-15-06 (cusip 247126AD7) | All acquired within the last 18 months |
| Delphi Corporation | Notes – 6.5% 05-01-09 (cusip 247126AB1) | All acquired within the last 18 months |
| Delphi Corporation | Preferred Securities Series A 8.25% 10-15-33 (cusip 24717P207) | All acquired within the last 18 months |

(Attach additional page if necessary)


PLEASE TAKE FURTHER NOTICE that the taxpayer identification number of the funds is disclosed in attached Exhibit A.

PLEASE TAKE FURTHER NOTICE that, under penalties of perjury, Capital Research and Management Company, for and on behalf of certain mutual funds it advises, hereby declares that it has examined this Notice and accompanying attachments (if any), and, to the best of its knowledge and belief, this Notice and any attachments which purport to be part of this Notice are true, correct, and complete.

PLEASE TAKE FURTHER NOTICE that, pursuant to that certain Order Under 11 U.S.C. §§ 105, 362, And 541 And Bankruptcy Rule 3001 (A) Establishing Notification Procedures Applicable To Substantial Holders Of Claims And Equity Securities And (B) Establishing Notification And Hearing Procedures For Trading In Claims And Equity Securities, this Notice is being (a) filed with the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004-1408, and (b) served upon (i) the Debtors, Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098-2815, Att'n General Counsel and Chief Tax Officer and (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606-1285, Att'n John K. Lyons and Randall G. Reese.

2

This Notice is given in addition to, and not as a substitute for, any requisite notice under Rule 3001 of the Federal Rules of Bankruptcy Procedure.

Respectfully submitted,

<u>Capital Research and Management</u>
<u>Company, for and on behalf of</u>
<u>certain mutual funds it advises</u>
(Name of Claimholder)

By: _____

Name: <u>Paul G. Haaga, Jr.</u>
Title: <u> Executive Vice President</u>

Address: <u>333 South Hope Street, 55th floor</u>
<u>Los Angeles, CA 90071</u>
<u>Attn: Kristine Nishiyama</u>
Telephone: <u>(213) 486-9652</u>
Facsimile: <u>(213) 615-0430</u>

Date: November 11, 2005

3

**Exhibit A**

**Claims Beneficially Owned by Mutual Funds Advised by
Capital Research and Management Company**

| Fund | Total Principal Claim Amount | Tax I.D. |
|---|---|---|
| American Funds Insurance Series - Asset Allocation Fund | $985,000 | 95-6892381 |
| American Funds Insurance Series - Bond Fund | $10,230,000 | 95-6994555 |
| American Funds Insurance Series - High-Income Bond Fund | $5,055,000 | 95-3960625 |
| American High-Income Trust | $78,998,800 | 95-6872063 |
| The Bond Fund of America, Inc. | $14,870,000 | 95-2884967 |
| Capital Income Builder, Inc. | $1,200,000 | 95-4149404 |
| Capital World Bond Fund, Inc. | $240,000 | 95-6864454 |
| Capital World Growth and Income Fund, Inc. | $14,955,000 | 95-4402570 |
| The Growth Fund of America, Inc. | $153,690,000 | 52-0792143 |
| The Income Fund of America, Inc. | $249,707,245 | 06-6867264 |
| TOTAL | $529,931,045 | |

# WACHTELL, LIPTON, ROSEN & KATZ

MARTIN LIPTON
HERBERT M. WACHTELL
BERNARD W. NUSSBAUM
RICHARD D. KATCHER
PETER C. CANELLOS
ALLAN A. MARTIN
LAWRENCE B. PEDOWITZ
ROBERT B. MAZUR
PAUL VIZCARRONDO, JR.
PETER C. HEIN
HAROLD S. NOVIKOFF
DAVID M. EINHORN
KENNETH B. FORREST
MEYER G. KOPLOW
THEODORE N. MIRVIS
EDWARD D. HERLIHY
DANIEL A. NEFF
ERIC M. ROTH
WARREN R. STERN
ANDREW R. BROWNSTEIN
MICHAEL H. BYOWITZ
PAUL K. ROWE
MICHAEL B. BENNER
MARC WOLINSKY
DAVID GRUENSTEIN
PATRICIA A. VLAHAKIS
STEPHEN G. GELLMAN
STEVEN A. ROSENBLUM
PAMELA S. SEYMON
STEPHANIE J. SELIGMAN
ERIC S. ROBINSON
JOHN F. SAVARESE
SCOTT K. CHARLES
ANDREW C. HOUSTON
PHILIP MINDLIN
DAVID S. NEILL
JODI J. SCHWARTZ
ADAM O. EMMERICH

CRAIG M. WASSERMAN
ADAM D. CHINN
GEORGE T. CONWAY III
RALPH M. LEVENE
RICHARD G. MASON
KAREN G. KRUEGER
DOUGLAS K. MAYER
DAVID A. SILK
ROBIN PANOVKA
DAVID A. KATZ
MITCHELL S. PRESSER
ILENE KNABLE GOTTS
JEFFREY R. BOFFA
DAVID M. MURPHY
JEFFREY M. WINTNER
TREVOR S. NORWITZ
BEN M. GERMANA
ANDREW J. NUSSBAUM
RACHELLE B. KATZE
RACHELLE SILVERBERG
DAVID C. BRYAN
STEVEN A. COHEN
GAVIN D. SOLOTAR
DEBORAH L. PAUL
DAVID C. KARP
RICHARD K. KIM
JOSHUA R. CAMMAKER
MARK GORDON
JOSEPH D. LARSON
LAWRENCE B. MAKOW
JARED M. RUSMAN
JEANNEMARIE O'BRIEN
WAYNE M. CARLIN
JAMES COLE, JR.
STEPHEN R. DIPRIMA
NICHOLAS G. DEMMO
IGOR KIRMAN
JONATHAN M. MOSES

OF COUNSEL

WILLIAM T. ALLEN          LEONARD M. ROSEN
THEODORE GEWERTZ          MICHAEL W. SCHWARTZ
THEODORE A. LEVINE        ELLIOTT V. STEIN
NORMAN REDLICH           J. BRYAN WHITWORTH
JOHN M. RICHMAN           AMY R. WOLF

COUNSEL

ADRIENNE ATKINSON         LAWRENCE A. PASINI
ANDREW J.H. CHEUNG        ADAM J. SHAPIRO
PAMELA EHRENKRANZ

J. AUSTIN LYONS
LORI S. SHERMAN
PAULA M. GORDON
T. EIKO STANGE
DAVID A. SCHWARTZ
JED I. BERGMAN
MICHAEL A. CHARISH
DAMIAN G. DIDDEN
JOHN F. LYNCH
ERIC M. ROSOF
WILLIAM SAVITT
MARTIN J.E. ARMS
BENJAMIN M. FACKLER
ISRAEL FRIEDMAN
DIMITRY JOFFE
ROY J. KATZOVICZ
ROBERT J. LIUBICIC
GREGORY E. OSTLING
JONATHAN E. PICKHARDT
GREGORY N. RACZ
EDWARD J.W. BLATNIK
BENJAMIN S. BURMAN
NELSON O. FITTS
JEFFREY C. FOURMAUX
MICHAEL GAT
JEREMY L. GOLDSTEIN
NAURA R. GROSSMAN
JOSHUA M. HOLMES
JOSHUA A. MUNN
DAVID E. SHAPIRO
ANTE VUCIC
IAN BOCZKO
MATTHEW M. GUEST
WILLIAM R. HARKER
DAVID E. KAHAN
MARK A. KOENIG
DAVID K. LAM
KENNETH K. LEE
LAURA E. MUÑOZ
MICHAEL S. WINOGRAD
FORREST G. ALOGNA

JAMES R. LEVINE
GORDON M. MEAD
MAEANL I. RANCOFF
DANIELLE L. ROSE
BENJAMIN M. ROTH
ROBIN M. WALL
DAVID M. ADLERSTEIN
SHIRI BEN-YISHAI
ANATOLIY BIZHKO
JOSHUA D. BLANK
JOSHUA A. FELTMAN
JONATHAN M. GORDON
CHETAN GULATI
ADAM HICKEY
MARGARET ISA
ANDREW S. JACOBS
EMIL A. KLEINHAUS
CHI T. STEVE KWOK
JASON M. LYNCH
HEATHER L. MAHAR
DEBORAH MARTINEZ
WILLIAM K. SCHEFFER
DAVID B. SILVA
KRISHNA VEERARAGHAVAN
ADIR G. WALDMAN
G. UMUT ERGUN
KRISTELIA A. GARCIA
ANNIE H. JEONG
SARAH B. JOHNSON
MICHAEL KRASNOVSKY
SARAH A. LEWIS
YELENA LUNGIN
SARAH FERN HEIL
GARRETT B. MORITZ
ALISON L. PLESSMAN
ADAM H. GOGOLAK
DANIEL E. HEMLI
SCOTT B. LUFTGLASS
PAUL B. MISHKIN
KEVIN OTERO

51 WEST 52ND STREET

NEW YORK, N.Y. 10019-6150

TELEPHONE: (212) 403-1000

FACSIMILE: (212) 403-2000

GEORGE A. KATZ (1965-1989)
JAMES H. FOGELSON (1967-1991)

November 30, 2005

Deirdre A. Martini
United States Trustee
33 Whitehall Street, Suite 2100
New York, NY 10004

Re:    <u>Delphi Corporation</u>

Dear Ms. Martini:

     As a follow-up to the voicemail that I left for you this morning, attached is an acknowledgment signed by David Daigle of Capital Research and Management Company, as well as a copy of the related information wall policy established by Cap Re. As you may recall, Cap Re owns approximately $500 million in principal amount of Delphi bonds, was appointed by you to the Delphi Creditors' Committee, and is co-chair of the Committee. David is Cap Re's representative on the Committee.

     Cap Re and its affiliates are, collectively, among the country's largest asset managers, with approximately $1.1 trillion under management. By virtue of its size, Cap Re has, and will continue to have, stock and bond positions in other automotive-industry companies, including General Motors. Accordingly, as the acknowledgment indicates, Cap Re has established an information wall for the Delphi matter, with David on the inside. Kristine Nishiyama, an internal counsel at Cap Re, has been appointed to assist in monitoring the information wall.

     Given that Delphi and General Motors are closely intertwined, trading in General Motors' securities by Cap Re will take place on the other side of the wall, at the direction of Cap Re employees other than David, while Cap Re is on the Committee. Securities of other automotive companies will be added to this list and treated in the same way, if the need to do so becomes apparent to Cap Re. Lastly, Cap Re has confirmed to me that since its appointment to the

WACHTELL, LIPTON, ROSEN & KATZ

Deirdre A. Martini
November 30, 2005
Page 2

Committee, it has not traded in Delphi securities and will not do so while on the Committee, absent an order of the Court.

We took the liberty of modeling the attached acknowledgment based on the one that you have proposed in the Delta Air Lines case. If you have any questions on the attached, or if you would otherwise like to speak to me about this matter, please do not hesitate to call me.

Best regards.

Sincerely,

Richard G. Mason

cc    David Daigle
      Kristine Nishiyama, Esq.
      Robert Rosenberg, Esq.

## ACKNOWLEDGMENT OF INFORMATION WALL AND
## APPLICABLE POLICIES AND PROCEDURES

I am representing Capital Research and Management Company ("CRMC") on the Official Unsecured Creditors Committee ("Creditors Committee") that was formed as part of the bankruptcy case for Delphi Corporation ("Delphi"). I understand that as a member of the Creditors Committee, I may receive material non-public information about Delphi and other public companies integral to Delphi, including General Motors Corporation ("GM"). In order to protect CRMC, its affiliates, employees, officers and directors from receiving material non-public information about Delphi, GM or other public companies integral to Delphi, I understand that I will be subject to an Information Wall and agree to:

1)  Not directly or indirectly disclose any information about Delphi, GM or other companies that CG attorneys may later determine should be covered by this Information Wall (collectively "Covered Companies"), to any Capital Group ("CG")[1] associate, except CG in-house attorneys. This includes all forms of written and oral communication, including memos, internal research publications, e-mail, instant messaging, and all discussions, whether in person, by phone or on conference calls. This also includes not directly or indirectly disclosing any information about the Covered Companies to any CG associate during any CG investment calls or meetings where these companies are discussed. I may communicate with other members of the Creditors Committee, legal counsel and advisors for the Creditors Committee, and outside legal counsel or advisors retained by CRMC to assist in the Delphi bankruptcy case. I may communicate with other CG associates, if and when they also become subject to this Information Wall and sign a similar Acknowledgment.

2)  Maintain all information obtained as a result of serving on the Creditors Committee in a secure location inaccessible by other CG associates. This includes keeping written materials in a locked file drawer, not allowing any other CG associate to access my e-mail or voicemail and maintaining any electronic files in a location inaccessible by other CG associates (i.e., not on a shared drive).

3)  Not purchase or sell securities issued by the Covered Companies, for my professional portfolio for as long as I am serving on the Creditors Committee or in possession of material non-public information. I will turn over all investment discretion over any securities that I may currently hold in my professional portfolio that were issued by the Covered Companies, to another CG investment associate for as long as I am serving on the Creditors Committee or in possession of material non-public information. The securities will be kept under my manager number, but I will have no investment discretion over the securities. I understand that I am prohibited from transacting in other companies if in serving on the

---

[1] The Capital Group Companies, Inc. ("CG") is the parent company to CRMC and other investment management subsidiaries. Under normal circumstances, associates of CRMC may share certain investment research with associates of other investment management subsidiaries.

Creditors Committee I am in possession material non-public information regarding those companies.

4)    Not personally transact in any security issued by the Covered Companies for as long as I am serving on the Creditors Committee or in possession of material non-public information.  I understand that this prohibition also applies to my immediate family members living in my same household.  I understand that I am also prohibited from transacting in other companies if from my service on the Creditors Committee I am in possession of material non-public information regarding those companies.

5)    Report any breach of CG's Information Wall Policy and Procedures or this Acknowledgment immediately to a CG attorney.

I have read and understand this Acknowledgment, as well as CG's Policies and Procedures Regarding Information Walls, and understand that by signing this I am subject to both for as long as the Information Wall is in place.

Date:  November 33 2005

David A. Daigle

2

**THE CAPITAL GROUP COMPANIES, INC.**
**INFORMATION WALLS**

**Policies and Procedures**

I.    Information Walls – General

These Information Wall ("Wall") Policies and Procedures apply only to situations where a Capital Group ("CG") associate is representing a CG company on an Official Unsecured Creditors Committee appointed as part of an unaffiliated company's bankruptcy case ("Subject Company"). In all other situations, CG's Insider Trading Policy will apply.

These Policies and Procedures apply to all CG investment management companies or groups, including Capital Group International, Inc., Capital Research Global Investors, and Capital World Investors.

A.    Establishing a Wall

Before an associate goes on an Official Unsecured Creditors Committee, the appropriate associates will determine whether a Wall can be erected. If a Wall can be established, other associates not covered by the Wall will be informed of the existence of the Wall, as appropriate.

B.    Covered Companies

When a Wall has been established, these policies and procedures will apply to the Subject Company, as well as to other companies designated by CG attorneys as "Covered Companies" under the applicable Wall. If the associate serving on the committee receives material non-public information regarding a company other than the Subject Company as a result of committee activities, that company will automatically be deemed to be a Covered Company under the Wall. Covered Companies may be designated by CG attorneys in advance of receipt of material non-public information as a result of committee activities, if it is determined that there is a high likelihood of receiving material non-public information in the future as a result of committee activities.

C.    Oral and Written Communications

Except as specifically permitted by these procedures, associates covered by the Wall shall not communicate, either orally or in writing, any information about Covered Companies to any other CG associate, officer or director or persons affiliated with CG, including directors/trustees of funds managed by CG companies. At least one CG attorney will also be covered under the Wall in order to assist with the bankruptcy case; information may be disclosed to this

designated CG attorney.  Information may be disclosed to other CG attorneys on a need-to-know basis and may be disclosed to outside counsel or advisors, as necessary.  All confidential discussions regarding this information shall be conducted in places and in a manner where conversations may not be overheard or intercepted.

D.    Meetings

The CG associate covered by the Wall may attend CG investment meetings and calls.  However, the associate shall not directly or indirectly share or disclose information, opine or comment on any Covered Companies with any CG associate during such investment meeting or call.

E.    Access to Material Non-Public Information

1.    Documents containing material non-public information concerning a company shall be maintained in locked file cabinets or drawers inaccessible to other CG associates.

2.    Notes, analyses or other written material shall be marked "CONFIDENTIAL."

3.    Material non-public information shall not be stored in any medium (*i.e.*, e-mail, voicemail, computer files) that is shared.  Any associate covered by the Wall will not grant associates not covered by the Wall access to any medium upon which they have stored material non-public information.  To the extent information about the Covered Companies may be accessible by internal computer systems, information technology associates who service and maintain such systems, will be informed to not share such information with other associates and will keep such information in files inaccessible to other associates.  If the information technology associate needs a personal password in order to service the covered associate's computer, the password shall be changed after servicing is complete.

4.    Documents containing material non-public information should be shredded before being discarded.

F.    Breaches in the Wall

Any CG associate who becomes aware of the unauthorized disclosure of information to anyone outside the Wall shall advise a CG attorney so that it may be determined whether the company must be added to the CG Trade Freeze List.

II.     Crossing Over the Wall

There may be occasions where other CG associates, including investment professionals, attorneys and compliance associates, are brought over the Wall and their activities and communication regarding Covered Companies is restricted.

A.      If a CG associate not currently covered by the Wall receives material non-public information about a Covered Company, a determination by the appropriate CG attorneys will made as to whether the Covered Company must be put on CG's Trade Freeze List or whether the associate can be brought over the Wall. There must be a valid business purpose for an associate already covered by the Wall to communicate information about a Covered Company to a CG associate not currently covered. In all situations, the appropriate attorneys must be consulted before any communication takes place or another associate is brought over the Wall.

B.      Any associate brought over the Wall will be advised of the confidential nature of the information and the limits on its further dissemination.

C.      Once an associate is brought over the Wall, he/she will be subject to all provisions of these policies and procedures, as applicable.

D.      An attorney or senior compliance associate will maintain a record of all instances in which an associate is brought over the Wall. At a minimum the record will reflect the:

1.      name of the associate brought over the Wall
2.      department the associate works in
3.      date the associate was brought over the Wall
4.      name of the issuer of the securities involved
5.      name of the person requesting that the Wall be crossed

III.    Securities Transactions

In general, investment associates not covered by the Wall will not be prohibited from transacting in securities of Covered Companies. In some situations, however, it may be desirable to prohibit transactions to avoid any appearance of trading on the basis of material non-public information.

Associates covered by the Wall will be subject to the following trading restrictions for as long as the Wall is in place or they are in possession of material and non-public information.

A.  **Professional Securities Transactions**

   1.  Any investment associate covered by the Wall shall be prohibited from purchasing or selling any securities issued by Covered Companies, for any account in which he/she has management responsibility.

   2.  For as long as the Wall is in place or the associate possesses material non-public information about Covered Companies, any existing positions of Covered Companies held by the investment associate in an account in which he/she manages shall either be:

      a.  turned over to another investment associate for purposes of making investment decisions (*i.e.*, the securities will be kept under the manager number of the associate covered by the Wall, but the associate will not have investment discretion over the securities);

      b.  transferred in whole to another investment associate to be placed under his/her manager number; or

      c.  frozen so that there is no trading whatsoever.

   3.  The associate covered by the Wall shall not receive and will not access any information regarding trading in Covered Companies' securities prior to execution of such trades. The associate covered by the Wall may receive customary internal reports normally prepared that may show activity of Covered Companies' securities as long as the report is not specifically prepared with respect to Covered Companies.

   4.  If the associate covered by the Wall is a coordinator for a research portfolio, such associate shall divide cash amongst other analysts in the research portfolio without regard to the industry covered by a particular analyst (*i.e.*, analyst covering Subject Company's industry shall not receive disproportionately more or less cash to manage than another analyst because of the analyst's industry coverage).

B.  **Personal Securities Transactions**

   1.  Any associate covered by the Wall shall be prohibited from personally trading in any securities issued by Covered Companies. This prohibition shall apply to the associate, as well as the associate's immediate family members living in the same household.

   2.  An associate may continue to hold existing securities of Covered Companies in his/her personal account; however, the associate and his/her immediate family may not buy or sell securities of Covered Companies as long as the associate is covered by the Wall or is in possession of material non-public information.

3.   CG's Personal Investing Policy shall apply in all other respects.

IV   Compliance

Designated CG attorneys and senior compliance associates shall be responsible for monitoring compliance with these policies and procedures.

A.   Review of Trading

1.   Following the erection of a Wall, appropriate compliance associates shall monitor trading in both professional and personal accounts of all securities issued by Covered Companies for as long as the Wall is in place. The compliance associates will maintain a report of all trading activity.

2.   Review of Possible Misuse of Material Nonpublic Information

If a compliance associate has concerns about trading activity that may suggest a breach of the Wall, the compliance associate shall immediately contact a CG attorney. The attorney and compliance associate shall conduct an immediate review the trades and take any remedial action, including informing other attorneys and senior associates, as necessary. In reviewing the trades in question, the attorney and compliance associate may consider:

a.   relationship, if any, between the associate who placed the trade order and the associate(s) who are covered by the Wall
b.   size of the account
c.   prior trading activity in the account
d.   size of the trade in question
e.   type of transaction
f.   timing of the trade in relation to receipt of material non-public information
g.   any pattern of trading
h.   explanation for the transaction provided by the associate who placed the trade

The compliance associate shall maintain a record of any review. Such record shall at a minimum, include: the name of the security, the date on which the review was commenced, the identification of the accounts and associates involved, and a summary of the review disposition.

B.   Review of Communications

1.   As part of any review conducted under Section IV.A.2 above, a CG attorney or compliance associate may review oral and written communications to and from associates covered by the Wall. Among

11/30/05

5

other things this may include, reviewing research reports, listening to investment calls and checking e-mails.

2.  If an attorney or compliance associate determines there has been an unauthorized communication the associate shall immediately contact the appropriate CG attorneys and senior associates, as necessary. Associates involved shall review the nature of the communication and determine whether there has been a breach of the Wall.

3.  A record of any review of a possible breach shall be maintained and include: the date of the communication, to whom the information was communicated, a summary of the communication and the nature of the disposition.

C.  Acknowledgment of Policy and Procedures

Before a Wall is erected, all associates to be covered by the Wall will be required to sign an Acknowledgment that they have read and understood CG's Policies and Procedures regarding Information Walls and will follow all guidelines outlined in the document.

D.  Records, in general

1.  A designated CG attorney or compliance associate shall maintain records of the establishment of a wall for 6 years.

2.  Records shall include:

    a.  date the Wall was established
    b.  name of the Subject Company
    c.  names of other Covered Companies, if any
    d.  name of CG associate(s) covered by the Wall or associates brought over the Wall
    e.  other non-CG associates privy to the material non-public information
    f.  date the Wall is taken down