**BROWN RUDNICK BERLACK ISRAELS LLP**
Seven Times Square
New York, New York 10036
Telephone: (212) 209-4800
Facsimile: (212) 209-4801
Robert Stark (#3575)

- and -

**BROWN RUDNICK BERLACK ISRAELS LLP**
One Financial Center
Boston, Massachusetts 02111
Telephone: (617) 856-8200
Facsimile: (617) 856-8201
Peter J. Antoszyk

Counsel for Law Debenture Trust Company of New York,
As successor Indenture Trustee and Property Trustee
for the 8.25% Junior Subordinated Note Due 2033
and the Adjustable Rate Junior Subordinated Note Due 2033

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | Chapter 11 |
| DELPHI CORPORATION, et al., | Case No. 05-44481 (RDD) (Jointly Administered) |
| Debtors. | |

## "APPENDUM PURSUANT TO FED. R. BANKR. P. 8010 (b), CONTAINING STATUTORY AND SIMILAR MATERIALS"

812595

| **STATUTES** | **TAB #** |
|---|---|
| 11 U.S.C. § 105 | 1 |
| 11 U.S.C. § 1102 | 2 |
| 11 U.S.C. § 1104 | 3 |
| 11 U.S.C. § 1107 | 4 |
| 11 U.S.C. § 1108 | 5 |
| 28 U.S.C. § 158 | 6 |
| 28 U.S.C. § 1292 | 7 |
| 28 U.S.C. § 1334 | 8 |
| 28 U.S.C. § 1408 | 9 |
| 28 U.S.C. § 1409 | 10 |
| H.R. Rep. No. 99-764, 99th Cong., 2nd Sess. 18 (1986) (reprinted in 1986 U.S.C.C.A.N. 5241) | 11 |
| 7 Collier On Bankruptcy 1103.05 (15th ed. Rev. 2005) | 12 |
| Fed. R. Bankr. P. 2007 | 13 |
| Fed. R. Bankr. P. 7001 | 14 |
| Fed. R. Bankr. P. 8013 | 15 |
| Fed. R. Bankr. P.9014 | 16 |

Westlaw.

11 U.S.C.A. § 105

C

Effective: [See Notes]

UNITED STATES CODE ANNOTATED
TITLE 11. BANKRUPTCY
**CHAPTER 1--GENERAL PROVISIONS**
➔ **§ 105. Power of court**

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

(b) Notwithstanding subsection (a) of this section, a court may not appoint a receiver in a case under this title.

(c) The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28. This subsection shall not be interpreted to exclude bankruptcy judges and other officers or employees appointed pursuant to chapter 6 of title 28 from its operation.

(d) The court, on its own motion or on the request of a party in interest--

(1) shall hold such status conferences as are necessary to further the expeditious and economical resolution of the case; and

(2) unless inconsistent with another provision of this title or with applicable Federal Rules of Bankruptcy Procedure, issue an order at any such conference prescribing such limitations and conditions as the court deems appropriate to ensure that the case is handled expeditiously and economically, including an order that--

(A) sets the date by which the trustee must assume or reject an executory contract or unexpired lease; or

(B) in a case under chapter 11 of this title--

(i) sets a date by which the debtor, or trustee if one has been appointed, shall file a disclosure statement and plan;

(ii) sets a date by which the debtor, or trustee if one has been appointed, shall solicit acceptances of a plan;

(iii) sets the date by which a party in interest other than a debtor may file a plan;

(iv) sets a date by which a proponent of a plan, other than the debtor, shall solicit acceptances of such plan;

(v) fixes the scope and format of the notice to be provided regarding the hearing on approval of the disclosure statement; or

(vi) provides that the hearing on approval of the disclosure statement may be combined with the hearing on confirmation of the plan.

Current through P.L. 109-169 (excluding P.L. 109-163) approved 01-11-06

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 U.S.C.A. § 105

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

**END OF DOCUMENT**

11 U.S.C.A. § 1102

C

**Effective: [See Notes]**

UNITED STATES CODE ANNOTATED
TITLE 11. BANKRUPTCY
**CHAPTER 11--REORGANIZATION**
SUBCHAPTER I--OFFICERS AND ADMINISTRATION
→**§ 1102. Creditors' and equity security holders' committees**

(a)(1) Except as provided in paragraph (3), as soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.

(2) On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.

(3) On request of a party in interest in a case in which the debtor is a small business debtor and for cause, the court may order that a committee of creditors not be appointed.

<(4) On request of a party in interest and after notice and a hearing, the court may order the United States trustee to change the membership of a committee appointed under this subsection, if the court determines that the change is necessary to ensure adequate representation of creditors or equity security holders. The court may order the United States trustee to increase the number of members of a committee to include a creditor that is a small business concern (as described in section 3(a)(1) of the Small Business Act), if the court determines that the creditor holds claims (of the kind represented by the committee) the aggregate amount of which, in comparison to the annual gross revenue of that creditor, is disproportionately large.>

(b)(1) A committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee, or of the members of a committee organized by creditors before the commencement of the case under this chapter, if such committee was fairly chosen and is representative of the different kinds of claims to be represented.

(2) A committee of equity security holders appointed under subsection (a)(2) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest amounts of equity securities of the debtor of the kinds represented on such committee.

(3) A committee appointed under subsection (a) shall--

(A) provide access to information for creditors who--

(i) hold claims of the kind represented by that committee; and

(ii) are not appointed to the committee;

(B) solicit and receive comments from the creditors described in subparagraph (A); and

(C) be subject to a court order that compels any additional report or disclosure to be made to the creditors described in subparagraph (A).

Current through P.L. 109-169 (excluding P.L. 109-163)approved 01-11-06

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 U.S.C.A. § 1102

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

SUBCHAPTER IV—RAILROAD REORGANIZATION

Sec.
1161. Inapplicability of other sections.
1162. Definition.
1163. Appointment of trustee.
1164. Right to be heard.
1165. Protection of the public interest.
1166. Effect of Interstate Commerce Act and of Federal, State, or local regulations.
1167. Collective bargaining agreements.
1168. Rolling stock equipment.
1169. Effect of rejection of lease of railroad line.
1170. Abandonment of railroad line.
1171. Priority claims.
1172. Contents of plan.
1173. Confirmation of plan.
1174. Liquidation.

## SUBCHAPTER I—OFFICERS AND ADMINISTRATION

11 USC 1101.

### § 1101. Definitions for this chapter

In this chapter—

*Ante,* p. 2562.

(1) "debtor in possession" means debtor except when a person that has qualified under section 322 of this title is serving as trustee in the case;

(2) "substantial consummation" means—

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

11 USC 1102.

### § 1102. Creditors' and equity security holders' committees

(a)(1) As soon as practicable after the order for relief under this chapter, the court shall appoint a committee of creditors holding unsecured claims.

(2) On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The court shall appoint any such committee.

(b)(1) A committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee, or of the members of a committee organized by creditors before the order for relief under this chapter, if such committee was fairly chosen and is representative of the different kinds of claims to be represented.

(2) A committee of equity security holders appointed under subsection (a)(2) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest amounts of equity securities of the debtor of the kinds represented on such committee.

(c) On request of a party in interest and after notice and a hearing, the court may change the membership or the size of a committee appointed under subsection (a) of this section if the membership of such committee is not representative of the different kinds of claims or interests to be represented.

Robert J. Brink, Esq.
Executive Director



**SOCIAL LAW**
**L I B R A R Y**

NOTICE
WARNING CONCERNING
COPYRIGHT REGISTRATIONS

The copyright law of the United States (Title 17, United States Code) governs the making of reproductions of copyrighted material.

Under certain conditions specified in the law, libraries and archives are authorized to furnish a photocopy or other reproduction. One of these specified conditions is that the photocopy or reproduction is not to be "used for any purpose other than private study, scholarship, or research." If a user makes a request for, or later uses a photocopy or reproduction for purposes in excess of "fair use," that user may be liable for copyright infringement.

THIS INSTITUTION RESERVES THE RIGHT TO REFUSE TO ACCEPT A COPYING ORDER IF, IN ITS JUDGMENT, FULFILLMENT OF THE ORDER WOULD INVOLVE VIOLATION OF COPYRIGHT LAW.

Social Law Library, John Adams Courthouse, 1 Pemberton Square, Suite 4100, Boston, MA 02108-1792
Phone: 617-226-1510 Fax: 617-523-2458 Email:copycenter@socialaw.com

LES OF
TATES CODE
AND
CODE ANNOTATED

29. Labor.
30. Mineral Lands and Mining.
31. Money and Finance.
32. National Guard.
33. Navigation and Navigable
    Waters.
34. Navy (*See Title 10, Armed
    Forces*).
35. Patents.
36. Patriotic Societies and Ob-
    servances.
37. Pay and Allowances of the
    Uniformed Services.
38. Veterans' Benefits.
39. Postal Service.
40. Public Buildings, Property,
    and Works.
41. Public Contracts.
42. The Public Health and
    Welfare.
43. Public Lands.
44. Public Printing and Docu-
    ments.
45. Railroads.
46. Shipping.
47. Telegraphs, Telephones, and
    Radiotelegraphs.
48. Territories and Insular Pos-
    sessions.
49. Transportation.
50. War and National Defense.

0-

II

# UNITED
# STATES
# CODE
# ANNOTATED

## TITLE 11

## Bankruptcy

## §§ 701 to 1140

Official Revision and Codification
of the Laws Relating to Bankruptcy
Under Arrangement of Official Code of
the Laws of the United States
with
Annotations from Federal and State Courts

**WEST PUBLISHING CO.**
ST. PAUL, MINN.

COPYRIGHT© 1993
By
WEST PUBLISHING CO.



PRINTED ON 10% POST CONSUMER RECYCLED PAPER

UNITED STATES CODE ANNOTATED, U.S.C.A. AND USCA
are registered trademarks of West Publishing Co.
Registered in U.S. Patent and Trademark Office.

These volumes, con
United States Code, co
relating to Bankruptcy
May 7, 1993.

In 1978, after yea
overhauled the federal
Reform Act of 1978, t
profound impact on ou
of ensuing years chall
interpretation and scru
were created by crow
volatile economy, and
ture of business and
volumes, more than a
and updated the laws
the interests of debtor

Early amendment
rected technical err
securities and commo
drastic measures, how
Court decision in No
Line Co., 1982, 102
held unconstitutional
judges. The Bankru
1984 corrected this c
court arrangement.
surrounding the rejec
nesses attempting to
provisions relating v
repurchase agreemen

As bankruptcy fi
responded with the
Family Farmer Ban
established fifty-two
expanded and finaliz
new chapter for ha
enactments such as
1988 and the Stude
exemplified congres

Maine, Inc., Bkrtcy.D.Me.1985, 56 B.R. 55.

**8. —— Miscellaneous plans substantially consummated**

Evidence presented by creditors and two-year time lag between confirmation of Chapter 11 case and creditor's motion to dismiss or convert established that "substantial consummation" of confirmed plans had occurred, thus precluding conversion of case to Chapter 7 on ground of inability to effectuate substantial consummation of confirmed plans.

In re T.S. Note Co., Bkrtcy.D.Kan.1992, 140 B.R. 812.

Chapter 11 plan, under which all transfers to be made by debtors at or near confirmation of plan had been made, was "substantially consummated," thus precluding modification of plan; debtors had commenced distribution or payment of long-term debts and had resumed management of their business. In re Burlingame, Bkrtcy.N.D.Okl.1991, 123 B.R. 409.

## § 1102. Creditors' and equity security holders' committees

**(a)(1)** As soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and may appoint additional committees of creditors or of equity security holders as the United States trustee deems appropriate.

**(2)** On request of a party in interest, the court may order the appointment of additional committees of creditors or of equity security holders if necessary to assure adequate representation of creditors or of equity security holders. The United States trustee shall appoint any such committee.

**(b)(1)** A committee of creditors appointed under subsection (a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest claims against the debtor of the kinds represented on such committee, or of the members of a committee organized by creditors before the commencement of the case under this chapter, if such committee was fairly chosen and is representative of the different kinds of claims to be represented.

**(2)** A committee of equity security holders appointed under subsection (a)(2) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven largest amounts of equity securities of the debtor of the kinds represented on such committee.

(Pub.L. 95–598, Nov. 6, 1978, 92 Stat. 2626; Pub.L. 98–353, Title III, § 499, July 10, 1984, 98 Stat. 384; Pub.L. 99–554, Title II, § 221, Oct. 27, 1986, 100 Stat. 3101.)

### HISTORICAL AND STATUTORY NOTES

**Revision Notes and Legislative Reports 1978 Acts.** This section provides for the election and appointment of committees. Subsection (c) provides that this section does not apply in case of a public company, as to which a trustee, appointed under section 1104(a) will have responsibility to administer the estate and to formulate a plan as provided in section 1106(a).

There is no need for the election or appointment of committees for which the appointment of a trustee is mandato-

Westlaw.

11 U.S.C.A. § 1104

**C**

Effective: [See Notes]

UNITED STATES CODE ANNOTATED
TITLE 11. BANKRUPTCY
**CHAPTER 11—REORGANIZATION**
SUBCHAPTER I--OFFICERS AND ADMINISTRATION
➡**§ 1104. Appointment of trustee or examiner**

(a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee-
-

(1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor;

(2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or

(3) if grounds exist to convert or dismiss the case under section 1112, but the court determines that the appointment of a trustee or an examiner is in the best interests of creditors and the estate.

(b)(1) Except as provided in section 1163 of this title, on the request of a party in interest made not later than 30 days after the court orders the appointment of a trustee under subsection (a), the United States trustee shall convene a meeting of creditors for the purpose of electing one disinterested person to serve as trustee in the case. The election of a trustee shall be conducted in the manner provided in subsections (a), (b), and (c) of section 702 of this title.

(2)(A) If an eligible, disinterested trustee is elected at a meeting of creditors under paragraph (1), the United States trustee shall file a report certifying that election.

(B) Upon the filing of a report under subparagraph (A)--

(i) the trustee elected under paragraph (1) shall be considered to have been selected and appointed for purposes of this section; and

(ii) the service of any trustee appointed under subsection (d) shall terminate.

(C) The court shall resolve any dispute arising out of an election described in subparagraph (A).

(c) If the court does not order the appointment of a trustee under this section, then at any time before the confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of an examiner to conduct such an investigation of the debtor as is appropriate, including an investigation of any allegations of fraud, dishonesty, incompetence, misconduct, mismanagement, or irregularity in the management of the affairs of the debtor of or by current or former management of the debtor, if--

(1) such appointment is in the interests of creditors, any equity security holders, and other interests of the estate; or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

11 U.S.C.A. § 1104

(2) the debtor's fixed, liquidated, unsecured debts, other than debts for goods, services, or taxes, or owing to an insider, exceed $5,000,000.

(d) If the court orders the appointment of a trustee or an examiner, if a trustee or an examiner dies or resigns during the case or is removed under section 324 of this title, or if a trustee fails to qualify under section 322 of this title, then the United States trustee, after consultation with parties in interest, shall appoint, subject to the court's approval, one disinterested person other than the United States trustee to serve as trustee or examiner, as the case may be, in the case.

(e) The United States trustee shall move for the appointment of a trustee under subsection (a) if there are reasonable grounds to suspect that current members of the governing body of the debtor, the debtor's chief executive or chief financial officer, or members of the governing body who selected the debtor's chief executive or chief financial officer, participated in actual fraud, dishonesty, or criminal conduct in the management of the debtor or the debtor's public financial reporting.

Current through P.L. 109-169 (excluding P.L. 109-163)approved 01-11-06

Copr. © 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

11 U.S.C.A. § 1107

C

**Effective: [See Text Amendments]**

UNITED STATES CODE ANNOTATED
TITLE 11. BANKRUPTCY
**CHAPTER 11--REORGANIZATION**
SUBCHAPTER I--OFFICERS AND ADMINISTRATION
→ **§ 1107. Rights, powers, and duties of debtor in possession**

 **(a)** Subject to any limitations on a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.

**(b)** Notwithstanding section 327(a) of this title, a person is not disqualified for employment under section 327 of this title by a debtor in possession solely because of such person's employment by or representation of the debtor before the commencement of the case.

Current through P.L. 109-169 (excluding P.L. 109-163)approved 01-11-06

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works.

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

11 U.S.C.A. § 1108

C

**Effective: [See Text Amendments]**

UNITED STATES CODE ANNOTATED
TITLE 11. BANKRUPTCY
**CHAPTER 11--REORGANIZATION**
SUBCHAPTER I--OFFICERS AND ADMINISTRATION
&rarr;**§ 1108. Authorization to operate business**

Unless the court, on request of a party in interest and after notice and a hearing, orders otherwise, the trustee may operate the debtor's business.

Current through P.L. 109-169 (excluding P.L. 109-163)approved 01-11-06

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

28 U.S.C.A. § 158

C

**Effective: [See Notes]**

UNITED STATES CODE ANNOTATED
TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE
PART I--ORGANIZATION OF COURTS
**CHAPTER 6--BANKRUPTCY JUDGES**
→ **§ 158. Appeals**

**(a)** The district courts of the United States shall have jurisdiction to hear appeals  [FN1]

   **(1)** from final judgments, orders, and decrees;

   **(2)** from interlocutory orders and decrees issued under section 1121(d) of title 11 increasing or reducing the time periods referred to in section 1121 of such title;  and

   **(3)** with leave of the court, from other interlocutory orders and decrees;

and, with leave of the court, from interlocutory orders and decrees, of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under section 157 of this title.  An appeal under this subsection shall be taken only to the district court for the judicial district in which the bankruptcy judge is serving.

**(b)(1)** The judicial council of a circuit shall establish a bankruptcy appellate panel service composed of bankruptcy judges of the districts in the circuit who are appointed by the judicial council in accordance with paragraph (3), to hear and determine, with the consent of all the parties, appeals under subsection (a) unless the judicial council finds that--

   **(A)** there are insufficient judicial resources available in the circuit;  or

   **(B)** establishment of such service would result in undue delay or increased cost to parties in cases under title 11.

Not later than 90 days after making the finding, the judicial council shall submit to the Judicial Conference of the United States a report containing the factual basis of such finding.

**(2)(A)** A judicial council may reconsider, at any time, the finding described in paragraph (1).

**(B)** On the request of a majority of the district judges in a circuit for which a bankruptcy appellate panel service is established under paragraph (1), made after the expiration of the 1-year period beginning on the date such service is established, the judicial council of the circuit shall determine whether a circumstance specified in subparagraph (A) or (B) of such paragraph exists.

**(C)** On its own motion, after the expiration of the 3-year period beginning on the date a bankruptcy appellate panel service is established under paragraph (1), the judicial council of the circuit may determine whether a circumstance specified in subparagraph (A) or (B) of such paragraph exists.

**(D)** If the judicial council finds that either of such circumstances exists, the judicial council may provide for the completion of the appeals then pending before such service and the orderly termination of such service.

**(3)** Bankruptcy judges appointed under paragraph (1) shall be appointed and may be reappointed under such paragraph.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 U.S.C.A. § 158

(4) If authorized by the Judicial Conference of the United States, the judicial councils of 2 or more circuits may establish a joint bankruptcy appellate panel comprised of bankruptcy judges from the districts within the circuits for which such panel is established, to hear and determine, upon the consent of all the parties, appeals under subsection (a) of this section.

(5) An appeal to be heard under this subsection shall be heard by a panel of 3 members of the bankruptcy appellate panel service, except that a member of such service may not hear an appeal originating in the district for which such member is appointed or designated under section 152 of this title.

(6) Appeals may not be heard under this subsection by a panel of the bankruptcy appellate panel service unless the district judges for the district in which the appeals occur, by majority vote, have authorized such service to hear and determine appeals originating in such district.

(c)(1) Subject to subsections (b) and (d)(2), each appeal under subsection (a) shall be heard by a 3-judge panel of the bankruptcy appellate panel service established under subsection (b)(1) unless--

(A) the appellant elects at the time of filing the appeal;  or

(B) any other party elects, not later than 30 days after service of notice of the appeal;

to have such appeal heard by the district court.

(2) An appeal under subsections (a) and (b) of this section shall be taken in the same manner as appeals in civil proceedings generally are taken to the courts of appeals from the district courts and in the time provided by Rule 8002 of the Bankruptcy Rules.

(d)(1) The courts of appeals shall have jurisdiction of appeals from all final decisions, judgments, orders, and decrees entered under subsections (a) and (b) of this section.

(2)(A) The appropriate court of appeals shall have jurisdiction of appeals described in the first sentence of subsection (a) if the bankruptcy court, the district court, or the bankruptcy appellate panel involved, acting on its own motion or on the request of a party to the judgment, order, or decree described in such first sentence, or all the appellants and appellees (if any) acting jointly, certify that--

(i) the judgment, order, or decree involves a question of law as to which there is no controlling decision of the court of appeals for the circuit or of the Supreme Court of the United States, or involves a matter of public importance;

(ii) the judgment, order, or decree involves a question of law requiring resolution of conflicting decisions;  or

(iii) an immediate appeal from the judgment, order, or decree may materially advance the progress of the case or proceeding in which the appeal is taken;

and if the court of appeals authorizes the direct appeal of the judgment, order, or decree.

(B) If the bankruptcy court, the district court, or the bankruptcy appellate panel--

(i) on its own motion or on the request of a party, determines that a circumstance specified in clause (i), (ii), or (iii) of subparagraph (A) exists;  or

(ii) receives a request made by a majority of the appellants and a majority of appellees (if any) to make the certification described in subparagraph (A);

then the bankruptcy court, the district court, or the bankruptcy appellate panel shall make the certification described in subparagraph (A).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 U.S.C.A. § 158

**(C)** The parties may supplement the certification with a short statement of the basis for the certification.

**(D)** An appeal under this paragraph does not stay any proceeding of the bankruptcy court, the district court, or the bankruptcy appellate panel from which the appeal is taken, unless the respective bankruptcy court, district court, or bankruptcy appellate panel, or the court of appeals in which the appeal in pending, issues a stay of such proceeding pending the appeal.

**(E)** Any request under subparagraph (B) for certification shall be made not later than 60 days after the entry of the judgment, order, or decree.

[FN1]  So in original.

Current through P.L. 109-169 (excluding P.L. 109-163)approved 01-11-06

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

28 U.S.C.A. § 1292

▷

**Effective: [See Text Amendments]**

UNITED STATES CODE ANNOTATED
TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE
PART IV--JURISDICTION AND VENUE
**CHAPTER 83--COURTS OF APPEALS**
➡**§ 1292. Interlocutory decisions**

 (a) Except as provided in subsections (c) and (d) of this section, the courts of appeals shall have jurisdiction of appeals from:

   (1) Interlocutory orders of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions, except where a direct review may be had in the Supreme Court;

   (2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property;

   (3) Interlocutory decrees of such district courts or the judges thereof determining the rights and liabilities of the parties to admiralty cases in which appeals from final decrees are allowed.

 (b) When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made to it within ten days after the entry of the order: *Provided, however,* That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

 (c) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction--

   (1) of an appeal from an interlocutory order or decree described in subsection (a) or (b) of this section in any case over which the court would have jurisdiction of an appeal under section 1295 of this title; and

   (2) of an appeal from a judgment in a civil action for patent infringement which would otherwise be appealable to the United States Court of Appeals for the Federal Circuit and is final except for an accounting.

 (d)(1) When the chief judge of the Court of International Trade issues an order under the provisions of section 256(b) of this title, or when any judge of the Court of International Trade, in issuing any other interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

 (2) When the chief judge of the United States Court of Federal Claims issues an order under section 798(b) of this title, or when any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

28 U.S.C.A. § 1292

ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

(3) Neither the application for nor the granting of an appeal under this subsection shall stay proceedings in the Court of International Trade or in the Court of Federal Claims, as the case may be, unless a stay is ordered by a judge of the Court of International Trade or of the Court of Federal Claims or by the United States Court of Appeals for the Federal Circuit or a judge of that court.

(4)(A) The United States Court of Appeals for the Federal Circuit shall have exclusive jurisdiction of an appeal from an interlocutory order of a district court of the United States, the District Court of Guam, the District Court of the Virgin Islands, or the District Court for the Northern Mariana Islands, granting or denying, in whole or in part, a motion to transfer an action to the United States Court of Federal Claims under section 1631 of this title.

(B) When a motion to transfer an action to the Court of Federal Claims is filed in a district court, no further proceedings shall be taken in the district court until 60 days after the court has ruled upon the motion. If an appeal is taken from the district court's grant or denial of the motion, proceedings shall be further stayed until the appeal has been decided by the Court of Appeals for the Federal Circuit. The stay of proceedings in the district court shall not bar the granting of preliminary or injunctive relief, where appropriate and where expedition is reasonably necessary. However, during the period in which proceedings are stayed as provided in this subparagraph, no transfer to the Court of Federal Claims pursuant to the motion shall be carried out.

(e) The Supreme Court may prescribe rules, in accordance with section 2072 of this title, to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for under subsection (a), (b), (c), or (d).

Current through P.L. 109-169 (excluding P.L. 109-163)approved 01-11-06

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

Westlaw.

28 U.S.C.A. § 1334

C

Effective: [See Notes]

UNITED STATES CODE ANNOTATED
TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE
PART IV--JURISDICTION AND VENUE
CHAPTER 85--DISTRICT COURTS; JURISDICTION
→§ 1334. Bankruptcy cases and proceedings

 (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

(c)(1) Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

(2) Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

(d) Any decision to abstain or not to abstain made under subsection (c) (other than a decision not to abstain in a proceeding described in subsection (c)(2)) is not reviewable by appeal or otherwise by the court of appeals under section 158(d), 1291, or 1292 of this title or by the Supreme Court of the United States under section 1254 of this title. Subsection (c) and this subsection shall not be construed to limit the applicability of the stay provided for by section 362 of title 11, United States Code, as such section applies to an action affecting the property of the estate in bankruptcy.

(e) The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction—

(1) of all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate; and

(2) over all claims or causes of action that involve construction of section 327 of title 11, United States Code, or rules relating to disclosure requirements under section 327.

Current through P.L. 109-169 (excluding P.L. 109-163)approved 01-11-06

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

28 U.S.C.A. § 1334

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

28 U.S.C.A. § 1408

▷

**Effective: [See Text Amendments]**

UNITED STATES CODE ANNOTATED
TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE
PART IV--JURISDICTION AND VENUE
**CHAPTER 87--DISTRICT COURTS; VENUE**
　→**§ 1408. Venue of cases under title 11**

Except as provided in section 1410 of this title, a case under title 11 may be commenced in the district court for the district--

  **(1)** in which the domicile, residence, principal place of business in the United States, or principal assets in the United States, of the person or entity that is the subject of such case have been located for the one hundred and eighty days immediately preceding such commencement, or for a longer portion of such one-hundred-and-eighty-day period than the domicile, residence, or principal place of business, in the United States, or principal assets in the United States, of such person were located in any other district; or

  **(2)** in which there is pending a case under title 11 concerning such person's affiliate, general partner, or partnership.

Current through P.L. 109-169 (excluding P.L. 109-163)approved 01-11-06

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

Westlaw.

28 U.S.C.A. § 1409

▷

Effective: [See Notes]

UNITED STATES CODE ANNOTATED
TITLE 28. JUDICIARY AND JUDICIAL PROCEDURE
PART IV--JURISDICTION AND VENUE
**CHAPTER 87--DISTRICT COURTS;  VENUE**
→**§ 1409. Venue of proceedings arising under title 11 or arising in or related to cases under title 11**

 **(a)** Except as otherwise provided in subsections (b) and (d), a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending.

**(b)** Except as provided in subsection (d) of this section, a trustee in a case under title 11 may commence a proceeding arising in or related to such case to recover a money judgment of or property worth less than $1,000 or a consumer debt of less than $15,000, or a debt (excluding a consumer debt) against a noninsider of less than $10,000, only in the district court for the district in which the defendant resides.

**(c)** Except as provided in subsection (b) of this section, a trustee in a case under title 11 may commence a proceeding arising in or related to such case as statutory successor to the debtor or creditors under <u>section 541</u> or <u>544(b) of title 11</u> in the district court for the district where the State or Federal court sits in which, under applicable nonbankruptcy venue provisions, the debtor or creditors, as the case may be, may have commenced an action on which such proceeding is based if the case under title 11 had not been commenced.

**(d)** A trustee may commence a proceeding arising under title 11 or arising in or related to a case under title 11 based on a claim arising after the commencement of such case from the operation of the business of the debtor only in the district court for the district where a State or Federal court sits in which, under applicable nonbankruptcy venue provisions, an action on such claim may have been brought.

**(e)** A proceeding arising under title 11 or arising in or related to a case under title 11, based on a claim arising after the commencement of such case from the operation of the business of the debtor, may be commenced against the representative of the estate in such case in the district court for the district where the State or Federal court sits in which the party commencing such proceeding may, under applicable nonbankruptcy venue provisions, have brought an action on such claim, or in the district court in which such case is pending.

Current through P.L. 109-169 (excluding P.L. 109-163)approved 01-11-06

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

Westlaw.

H.R. REP. 99-764                                                                                              Page 1
H.R. REP. 99-764, H.R. Rep. No. 764, 99TH Cong., 2ND Sess. 1986, 1986 U.S.C.C.A.N. 5227, 1986 WL 31936
(Leg.Hist.)
**(Cite as: H.R. REP. 99-764, 1986 U.S.C.C.A.N. 5227)**

P.L. 99-554, **5227 BANKRUPTCY JUDGES, UNITED STATES TRUSTEES, AND
FAMILY FARMER BANKRUPTCY ACT OF 1986
DATES OF CONSIDERATION AND PASSAGE
House August 12, October 2, 1986
Senate August 15, October 3, 1986
House Report (Judiciary Committee) No. 99-764,
Aug. 7, 1986 [To accompany H.R. 5316]
House Conference Report No. 99-958,
Oct. 2, 1986 [To accompany H.R. 5316]
Cong. Record Vol. 132 (1986)
Related Reports:
House Report (Judiciary Committee) No. 99-178,
June 20, 1985 [To accompany H.R. 2211]
Senate Report (Judiciary Committee) No. 99-269,
Mar. 26, 1986 [To accompany S. 1923]
No Senate Report was submitted with this legislation. The House Report is set
out below and the House Conference Report follows.

HOUSE REPORT NO. 99-764
August 7, 1986

The Committee on the Judiciary, to whom was referred the bill (H.R. 5316) to amend title 28 of the United States Code to
provide for the appointment of additional bankruptcy judges, to provide for the appointment of United States trustees to serve
in bankruptcy cases in judicial districts throughout the United States, to make certain changes with respect to the role of
United States trustees in such cases, and for other purposes, having considered the same, report favorably thereon with an
amendment and recommend that the bill as amended do pass.

* * * * *

*15 PROCEDURAL BACKGROUND OF H.R. 5316

On June 4, 1985, Chairman Rodino introduced H.R. 2660, [FN1] legislation to implement the United States Trustee
Program of bankruptcy administration on a nationwide, self-funding basis. On October 31, 1985, Mr. Fish introduced H.R.
3664 to achieve this same purpose. On July 31, 1985 and March 19, 1986, the Subcommittee on Monopolies and
Commercial Law held hearings on H.R. 2660 and H.R. 3664.

On February 5, 1986, Chairman Rodino introduced H.R. 4128, [FN2] legislation to authorize additional bankruptcy
judgeships across the country. Mr. Fish introduced similar legislation, H.R. 4140, on February 6, 1986. The Subcommittee on
Monoplies and Commercial Law held a hearing on these two bills on July 23, 1986.

**5228 On August 1, 1986, Chairman Rodino introduced H.R. 5265 to combine the two matters of bankruptcy
administration--bankruptcy judgeships and the U.S. Trustee Program--in one bill. The measure took into account the
testimony and comments received on the earlier bills.

On July 31, 1986, the Subcommittee favorably reported H.R. 5265, as amended, by voice vote. Five amendments were
adopted by the Subcommittee: (1) an amendment offered by Mr. Edwards to add 2 additional judgeships instead of 1 in the
Northern District of *16 California; (2) an amendment offered by Mr. Dannemeyer to add 7 additional judgeships instead of
6 in the Central District of California; (3) an amendment offered by Mr. Fish to add 1 additional judgeship in the District of
Oregon, Northern District of Indian, Eastern District of Virginia, and Western District of Washington, and 2 additional
judgeships instead of 1 in Northern District of Georgia; (4) an amendment offered by Mr. Synar to permit a U.S. Trustee to
file a motion to request the court to review whether a debtor is substantially abusing the chapter 7 provisions of the
bankruptcy laws; and (5) an amendment offered by Mr. Glickman to direct the Executive Office for United States Trustees to
set up an electronic case management demonstration project on a pilot basis for 2 years in 3 judicial districts.

On August 1, 1986, the legislation favorably reported by the Subcommittee was introduced by Chairman Rodino as a clean

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 99-764                                                                                    Page 2
H.R. REP. 99-764, H.R. Rep. No. 764, 99TH Cong., 2ND Sess. 1986, 1986 U.S.C.C.A.N. 5227, 1986 WL 31936
(Leg.Hist.)
(Cite as: H.R. REP. 99-764, 1986 U.S.C.C.A.N. 5227)

bill, H.R. 5316.

On August 5, 1986, H.R. 5316, as amended, was ordered favorably reported, by voice vote, by the Committee on the Judiciary. The Committee adopted four amendments: (1) an amendment offered by Mr. Mazzoli adding a bankruptcy judgeship in the Western District of Kentucky instead of in the Eastern District of Kentucky; (2) an amendment offered by Mr. Moorhead on behalf of Mr. Fish stating that starting on November 1, 1989, when 10% more money is contained in the U.S. Trustee System Fund than is needed to fund the Program, the excess money shall be deposited in the general fund of the U.S. Treasury; (3) an amendment offered by Mr. Moorhead on behalf of Mr. Fish making the additional fee to be paid to fund the U.S Trustee Program by a chapter 11 debtor dependent upon the amount of money disbursed each quarter by the debtor; and (4) an amendment offered by Mr. Edwards of California on behalf of Mr. Brooks to make clear that the contract award and procurement in connection with the electronic case management demonstration project is subject to the Brooks Act (P.L. 89-306) and the Competition in Contracting Act (P.L. 98-369).

## BACKGROUND AND SUMMARY OF H.R. 5316

### A. BANKRUPTCY JUDGESHIPS

The bankruptcy caseload has increased in many judicial districts to the point where the existing number of bankruptcy judges can **5229 no longer handle the caseload on a timely basis. Additional bankruptcy judges are urgently needed in these districts to serve the interests of debtors, creditors, and the economy as a whole. The sooner a bankruptcy case can be terminated, the sooner the debtor can get a fresh start towards making a meaningful contribution to our nation's economy, and the sooner creditors can receive payment of debts owed them.

Because of concerns with budget deficits, new judgeships are authorized in H.R. 5316 only in those districts with the most severe need.

H.R. 5316 authorizes the creation of 52 new bankruptcy judgeship positions across the country. This number of judgeships reflects the recommendations in H.R. 4128 and H.R. 4140, as well as *17 the recommendations for additional bankruptcy judgeships submitted to Congress by the Judicial Conference of the United States. [FN3] These additional positions were recommended after analyzing the workload of judges in every judicial district in the country. Among the factors considered were: total cases pending, the number of new cases filed, the number of pending chapter 11 reorganization cases (which take up the most judicial time), the number of new chapter 11 reorganization cases filed, the number of new adverary proceedings (which also take up substantial judicial time), and the time a judge spends in court. In larger, rural districts (e.g. South Dakota), travel time from one place of court to another was taken into account. The nature and complexity of the cases pending before the judges in a district was also considered.

H.R. 5316 authorizes additional judgeships positions in those districts where the workload factors mentioned above were most significantly higher than the national average.

H.R. 5316 also makes one technical change. Under current law, in order to qualify to be a bankruptcy judge, an individual must be a member of the bar of one of the 50 states or the District of Columbia. There are two bankruptcy judges serving in Puerto Rico, however. Under current law, membership in the bar of Puerto Rico would not qualify one to serve as a bankruptcy judge in Puerto Rico. This is an error and H.R. 5265 corrects it by making membership in the bar of Puerto Rico a suitable qualification for a bankruptcy judge. This change is supported by the Judicial Conference of the United States.

### B. UNITED STATES TRUSTEE PROGRAM

Prior to the Bankruptcy Reform Act of 1978 (P.L. 95-598), all administrative as well as judicial functions in bankruptcy were handled by the bankruptcy courts. The administrative functions in bankruptcy cases include the following: ensuring payment of withholding and other taxes by bankrupt debtors, organizing and scheduling meetings of creditors, organizing creditors committees, appointing private trustees in Chapter 7 liquidation and Chapter 13 wage-earner cases, monitoring the filing of reports and schedules required by the Bankruptcy Code, and monitoring cases for signs of fraud or abuse. Judicial functions are generally limited to rulings by judges on disputed matters in adversary proceedings and on **5230 other filings for which court approval is required by the Bankruptcy Code.

The handling of both administrative and judicial functions by the bankruptcy courts had eroded the public confidence in the bankruptcy system. An example of this could be seen in the appointment by the bankruptcy court of private trustees to administer *18 bankrupt debtors' estates. In many cases, these trustees appeared in bankruptcy court before the very same judges who appointed them to make recommendations regarding matters of the estate. In such circumstances, a trustee would often be reluctant to take positions contrary to the judges who appointed the trustee, even though a trustee was supposed to be

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 99-764, H.R. Rep. No. 764, 99TH Cong., 2ND Sess. 1986, 1986 U.S.C.C.A.N. 5227, 1986 WL 31936
(Leg.Hist.)
(Cite as: H.R. REP. 99-764, 1986 U.S.C.C.A.N. 5227)

an impartial administrator of the estate. This awkward relationship between trustees and judges created an improper
appearance of favoritism, cronyism, and bias, and generated great disrespect for the bankruptcy system.

   To correct this, the Bankruptcy Reform Act of 1978 sought to separate the administrative duties in bankruptcy from the
judicial tasks, leaving the bankruptcy judges free to resolve disputes untained by knowledge of administrative matters
unnecessary and perhpas prejudicial to an impartial judicial determination. To accomplish these goals, the Bankruptcy
Reform Act of 1978 created the U.S. Trustee Pilot Program, originally to run through 1984 (P.L. 95-598) but later extended
to 1986 (P.L. 98-353).

   Ten U.S. Trustee positions were created encompassing 18 federal judicial districts (out of the total of 94 federal judicial
districts in the United States). The U.S. Trustees were given responsibility for many of the administrative functions that had
previously been handled by the bankruptcy courts (such as appointing individuals to serve as private trustees to handle
administrative duties in chaptger 7 and chapter 13 cases, monitoring the performance of these private trustees, maintaing
panels of private trustees qualified to serve in chapter 7 and chapter 13 cases, appointing a standing chapter 13 private trustee
where appropriate, and appointing a trustee in Chapter 11 reorganization proceedings when ordered by the court).

   To further ensure the separation of administrative from judicial functions, as well as the independence of the U.S. Trustees,
Congress housed the Pilot Program in the Department of Justice. Congress carefully considered several alternatives for
placement of the Pilot Program--including placing the program in the judicial branch under the supervision of the
Administrative Office for U.S. Courts--and decided that the Department of Justice, was the best placement for the Program
given the functions, powers, and duties of the U.S. Trustees.

   **5231 'It is the soundest approach to the management of the bankruptcy system, because it renders the separation of
administrative and judicial functions complete, and places the administrative duties in bankruptcy in the Branch of
Government most capable of executing the laws.' (House Report No. 95-595, p. 115, 95th Cong.)

   The U.S. Trustees were given important oversight and watchdog responsibilities to ensure honesty and fairness in the
administration of bankruptcy cases and to prevent and ferret out fraud. Given the law enforcement orientation of the
Department of Justice, it was especially beneficial to the accomplishment of these tasks to house the Pilot Program in the
Department.

   As part of the legislation establishing the Pilot Program in 1978, Congress mandated that a formal evaluation of the Program
be conducted. The Attorney General was directed to:

   *19 conduct such studies and surveys as necessary to evaluate the needs, feasibility, and effectiveness of the United States
trustee system, and . . . report the result of such studies and surveys to the Congress, the President, and the Judicial
Conference of the United States.

(Sec. 408(a), P.L. 95-598, 95th Cong.). Congress also required that the Attorney General make a formal recommendation
concerning the desirability of implementing the U.S. Trustee Program on a nationwide basis. (Sec. 408(b), P.L. 95-598, 95th
Cong.).

   Abt Associates, an independent consulting firm based in Cambridge, Massachusetts, was selected by the Attorney General
to design and conduct the statutorily mandated study and evaluation of the Pilot Program for the Department of Justice. The
report of Abt Associates, forwarded to Congress by the Attorney General (entitled 'An Evaluation of the U.S. Trustee Pilot
Program for Bankruptcy Administration: Findings and Recommendations' (April, 1983)), strongly supported the Pilot
Program. The Abt Associates study compared bankruptcy administration in pilot U.S. Trustee districts to bankruptcy
administration in distrcts that did not have U.S. Trustees and concluded that the U.S. Trustee Program 'is sound in theory and
has demonstrated its effectiveness empirically.' (1983 Abt Report Update at p. 280). This conclusion was reaffirmed by Abt
Associates in an August 1985 update of its original study (1985 Abt Report, at p. 21).

   The 1983 Abt Associates study recommended that the U.S. Trustee Program be expanded and implemented on a nationwide
basis. The study further recommended that the Program remain in the Department of Justice. The study expressly
recommended that the Program not be placed within the judiciary, either as a U.S. Trusteee program or an estate
administrator program. Placing the Program in the judiciary, under the control of the Administrative Office of the U.S.
Courts would:

   in many ways threaten the independence from the judiciary that was originally sought in creating the U.S. Trustee Program
. . . An association between the court and the U.S. trustee's office, even if loosely structured, would hinder both the
independent operation of each and the public perception of independence.

   **5232 (1983 Abt Report at p. 258-259). It would also blur the distinction between administrative and judicial functions.
Abt Associates repeated this conclusion in its 1985 update:

   Giving the estate administrators more authority, independent standing, or staff would not free them of their ties with the
court. The goal of separating administrative and adjudicative functions can only be accomplished by placing the
administrative functions totally outside the control of the court.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 99-764                                                                    Page 4
H.R. REP. 99-764, H.R. Rep. No. 764, 99TH Cong., 2ND Sess. 1986, 1986 U.S.C.C.A.N. 5227, 1986 WL 31936
(Leg.Hist.)
(Cite as: H.R. REP. 99-764, 1986 U.S.C.C.A.N. 5227)

(1985 Abt Report Update at p. 16).

When the pilot program was originally placed in the Department of Justice in 1978, some opposed this placement, fearing that conflicts of interest would arise. The Abt Associates study found that this did not occur, noting that 'initial fears that there would be *20 conflicts of interest between DOJ as an advocate for the U.S. Government and the U.S. Trustee as impartial case administrator have not materialized.' (1983 Abt Report at p. 257).

Similarly, comments from past and present U.S. Trustees have confirmed that no disabling conflicts of interest problems have arisen in practice. Thomas J. Stanton, Executive Director of the U.S. Trustee Program in the Department of Justice, testified before the Subcommittee in July 1985 that since the inception of the pilot U.S. Trustee Program in 1978, 'there have been almost no conflicts in reality.' This was echoed in a March 10, 1986 letter to Chairman Rodino from Assistant Attorney General John R. Bolton: 'There have been no real or even preceived conflicts in the operation of the program which has now supervised more than 600,000 cases.'

The Department of Justice also issued an in-house evaluation of the Pilot Program 'Report of the Attorney General on the United States Trustee System' (January 3, 1984) which highlighted many of the Program's successes. In particular, the Department emphasized the program's success in carrying out critical watchdog responsibilities, such as preventing fraud and other abuses and in monitoring debtors-in-possession in Chapter 11 reorganization cases to ensure full and timely remittance of employees' social security deductions and withholding tax. The U.S. Trustees have prevented incidents such as one that occurred in a non-pilot district where a Chapter 11 debtor ran up a withholding tax liability in excess of $1 million.

Both in its evaluation and in its July 1985 testimony before the Subcommittee, the Department of Justice emphasized the close working relationship between U.S. Trustees and law enforcement authorities within the Department in the detection and prosecution of white collar crimes related to bankruptcy, such as embezzlement, fraud, theft, and concealment of assets. At the instigation of the U.S. Trustee serving in the districts of Delaware and New Jersey, the U.S. Trustee has worked with the U.S. Attorney in New Jersey to establish a bankruptcy fraud unit in the U.S. Attorney's office that works with the U.S. Trustee to ferret out debtors who are criminally abusing the federal bankruptcy system in New Jersey.

**5233 Placement of Program.--H.R. 5316 houses the nationwide U.S. Trustee program in the Department of Justice. The Department strongly supports this placement. Quite simply, as reflected in the conclusions of the Abt Associates study, housing the Program outside the judicial branch is the single most essential requirement to a successful program.

An alternative suggested by the Judicial Conference of the United States to placing the Program in the Department of Justice is to house a bankruptcy administration program (either as a U.S. Trustee Program or an estate administrator program--in non-pilot districts, some of the administrative functions of bankruptcy are currently performed by court employees called 'estate administrators') in the judicial branch, under direct or indirect control of the Administrative Office for U.S. Courts.

Placing any such program in the judicial branch, however, flies in the face of the goals of the 1978 Act. Such placement could *21 foster the same appearances of favoritism and impropriety in the bankruptcy system that the 1978 Bankruptcy Code sought to eliminate. The Report of the Committee on the Judiciary accompanying the Bankruptcy Reform Act of 1978 stated that:

Granting the Administrative Office appointment or supervisory power with respect to the United States trustees would be a significant departure from the traditional role of Judicial Branch agencies . . . Appointment or supervision of United States trustees by the Administrative Office would . . . make it an active participant in bankruptcy litigation. It is a wholly inappropriate role for a body that is responsible ultimately only to the Chief Justice and the Judicial Conference. Moreover, it would place the responsibility for execution of the bankruptcy laws in the wrong Branch of the Government.
(Report of the Committee on the Judiciary, No. 95-595, p. 112, 95th Cong.)

The 1985 Abt Associates Update also emphasized the need to house the Program outside the judiciary:

We believe that the U.S. trustee program should remain where it is now, in the U.S. Department of Justice (DOJ). Housing the program in the Administrative Office of the U.S. Courts (AO) would likely ensure judicial support, enhance coordination with the courts, and reduce possible duplication of effort. Yet, under such an arrangement it would be nearly impossible to guarantee the true separation of judicial and administrative functions. Moreover, the AO is not viewed as a policy-making body, nor has it traditionally acted as such. The executive office for a nationwide bankruptcy administration program must be able to set national policies and procedures, participate in precedent-setting cases, and provide legal advice and assistance to the U.S. trustees. Under its current structure, the AO could not fulfill these expectations.

**5234 (1985 Abt Report Update, p. 17).

The Update also emphasized the need to house the Program in the Department of Justice:

We strongly believe that keeping the program in DOJ is preferable to any of the other options considered for several reasons. First, to do so would enhance the program's continuity and reap the most benefit from its achievements. Moving the program could disrupt management, overall policy direction, staff, and budgetary planning, and would not take advantage of what has been learned thus far. Second, potential problems of conflict of interest between DOJ as an advocate for the U.S.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 99-764                                                                                    Page 5
H.R. REP. 99-764, H.R. Rep. No. 764, 99TH Cong., 2ND Sess. 1986, 1986 U.S.C.C.A.N. 5227, 1986 WL 31936
(Leg.Hist.)
(Cite as: H.R. REP. 99-764, 1986 U.S.C.C.A.N. 5227)

government, and the U.S. trustee as impartial case administrator have not materialized. Third, the U.S. trustee program has demonstrated its effectiveness in this location. Finally, the initial reasons for placing the program in DOJ, as cited by the drafters of the legislation, still apply.

**\*22** (1985 Abt Report Update, p. 17).

If a U.S. Trustee or estate administrator with standing to raise matters before the court is placed under the control of the judicial branch, it would result in the court's own employee appearing before it to raise a matter. This may be no different than the court itself raising a matter and acting on it on its own--something Congress specifically acted to prevent by enacting the 1978 Bankruptcy Code (see, e.g., statement of Honorable Don Edwards in connection with the 1978 Bankruptcy Code legislation, 124 Cong. Rec. 32,393 (1978)).

Self-Funding for U.S. Trustee Program.--H.R. 5316 provides that the Program will be self-funding and will be paid for by the users of the bankruptcy system--not by the taxpayer.

H.R. 5316 establishes a separate fund in the U.S. Treasury for the Program. Money would be generated by raising the Chapter 7 and Chapter 13 filing fee from $60 to $90, with the extra $30 going to the U.S. Trustee Fund. The general Chapter filing fee would be increased from $200 to $700, with that increase also going to the U.S. Trustee Fund.

Further, Chapter 11 debtors would pay an additional fee, on a quarterly basis, based upon their disbursements during the quarter. Only debtors who have made disbursements would pay this additiona fee. The fee is levied on a sliding scale, ranging from $150 per quarter for a debtor with disbursements less than $15,000, to $3,000 per quarter for a debtor with disbursements greater than or equal to $3,000,000. Smaller debtors will therefore pay a lower fee than larger debtors.

The self-funding mechanism is designed just to fund the U.S. Trustee Program--not to make money for the government. If the self-funding mechanism in the bill generates much more money than is needed to fund the Program, Attorney General is directed to transmit to Congress specific recommendations on how the fee structure should be changed.

All fees must either be paid by the time the chapter 11 plan is confirmed, or else be paid through the plan.

**\*\*5235** The U.S. Trustee Program should not have to be self-funding. It provides a great service to our country's bankruptcy system. However, in this time of budget deficit concerns, self-funding becomes a necessity.

Number of Trustee Districts.--H.R. 5316 would establish 18 U.S. Trustee districts. This is a compromise between the 12 districts established in H.R. 2660 and the 24 districts in H.R. 3664--a compromise that permits some consolidation of functions (e.g., library, staff, office space, equipment, and training) and to keep costs down, while still permitting each Trustee more hands-on involvement in individual cases. The 18 regions are organized within existing judicial circuits to preserve the integrity of intra-circuit law and to limit the duties of a U.S. Trustee to one circuit (except for the U.S. Trustee serving the District of Columbia). The 18-region plan also keeps to a minimum the number of states split between regions.

Term of Office.--The bill provides for a five-year term of office. H.R. 2660 and H.R. 3664 both proposed a four-year term of office. Testimony at the hearings, however, argued strongly that the term of office should be longer than four years to avoid politicizing the **\*23** office and the Program as a whole. The Program should not be politicized. It is simply meant to administer bankruptcy cases.

Removal From Office of U.S. Trustee or Assistant U.S. Trustee.--H.R. 5316 retains the provisions in effect during the operation of the Pilot Program which permit the Attorney General to remove a U.S. Trustee or Assistant U.S. Trustee only 'for cause.' If the Attorney General was permitted to remove and replace a U.S. Trustee without regard to cause, it could politicize the Program and thus negate the purpose behind a five-year term of office. U.S. Trustee would potentially be subject to removal whenever a new Administration took office.

Duties of U.S. Trustee.--H.R. 5316 maintains the list of duties from the Pilot Program that sets forth the duties of the U.S. Trustee in very general terms, but also identifies eight specific functions that fall within the general statement of duties. The bill makes clear that these duties are permissive, not mandatory. The duties need not be performed in every case, but only when the U.S. Trustee deems it appropriate.

Salaries.--H.R. 5316 directs the Attorney General to fix salaries of U.S. Trustee and Assistant U.S. Trustee at a rate not greater than that set forth in Executive Level IV of the Executive Schedule. In response to comments on H.R. 2660 and H.R. 3664, and to make sure U.S. Trustees do not earn more than the bankruptcy judges they appear before, H.R. 5316 adds the stipulation that the salary of the U.S. Trustee cannot be in excess of $2,000 less than the salary of the bankruptcy judges.

Status of U.S. Trustee.--H.R. 5316 gives the U.S. Trustee standing to raise, appear and be heard on any issue in a bankruptcy case. The U.S. Trustee is not permitted to file a plan of reorganization in chapter 11 cases on behalf of the debtor or creditors, however, only a party in interest has this right. If the U.S. Trustee could file a plan, it would be difficult for the U.S. Trustee to impartially take a position on confirmation of it.

**\*\*5236** Removal of Private Trustees.--H.R. 5316 retains current law and provides that a private trustee can only by removed by the bankruptcy court, for cause. However, H.R. 5316, adds that, unless the court orders otherwise, removal of a private trustee for cause in one case constitutes removal of that trustee in all other cases in which the trustee is serving.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 99-764, H.R. Rep. No. 764, 99TH Cong., 2ND Sess. 1986, 1986 U.S.C.C.A.N. 5227, 1986 WL 31936
(Leg.Hist.)
**(Cite as: H.R. REP. 99-764, 1986 U.S.C.C.A.N. 5227)**

It is the sense of the Committee that the primary resources of a nationwide U.S. Trustee Program, as has been the case with the pilot program, will be the individual serving in the Program in districts across the country. Although centrally based administration of the Program is important to a degree, its function is to support the efforts of individuals serving in the field. Care should be taken by the Attorney General to ensure that the operation and staffing of the central Executive Office for U.S. Trustee does not become oversized and overshadow the responsibilities of the individuals in the field.

The staffing of the U.S. Trustee Program should be at a level adequate to permit the U.S. Trustees to properly fulfill their responsibilities. If there are substantial increases or decreases in the bankruptcy caseload, it is anticipated that the staffing level of the **\*24** program will be correspondingly adjusted, within the reasonable level allowed by the self-funding mechanism.

## SECTION-BY-SECTION ANALYSIS

Section 101 amends 28 U.S.C. 152(a)(2) to authorize the creation of 52 additional bankruptcy judgeships across the country. The positions are created in the districts where the need is the most severe. The Committee recognizes the importance of a smoothly functioning bankruptcy system to the national economy. In such a system, there must be enough judges to properly and timely handle the caseload.

Section 102 is a technical amendment that makes membership in the bar of the Commonwealth of Puerto Rico a qualification for becoming a United States Bankruptcy Judge. This amendment has been endorsed by the Judicial Conference of the United States.

Section 111 establishes 18 U.S. Trustee regions, or groups of districts, across the country. In every instance except one (District of Columbia), a region is made up only of judicial districts that lie within the same federal circuit. In this manner, integrity of intra-circuit law and procedure will be preserved. By limiting the number of U.S. Trustee regions to 18, costs can be kept down. Further, the prestige of the office of U.S. Trustee is enhanced. At the same time, there will be enough U.S. Trustees for each U.S. Trustee to have a meaningful presence in each district within the U.S. Trustee's region.

The section also sets the term of office of the U.S. Trustee at five years. This will help keep the Program from becoming politicized. If the term of office was four years, a U.S. Trustee's term of office could parallel a president's term in office, creating the appearance of making the U.S. Trustee a political appointment. Testimony at hearings indicated that persons qualified to serve as U.S. Trustee **\*\*5237** might not apply for positions if there were political overtones to the position.

Section 112, Section 113 and Section 114 conform the references to the U.S. Trustee districts in 28 U.S.C. 582(a), 28 U.S.C. 584, and 28 U.S.C. 585 to the 18 groups of districts for which U.S. Trustees are appointed.

Section 115 amends 28 U.S.C. 586(a), which set forth the duties of U.S. Trustees. 28 U.S.C. 586(a) enumerates several broad, general responsibilities of U.S. Trustees. H.R. 5316 sets several specific duties that fall within these broad, general tasks. These specific duties are: to monitor applications for compensation and reimbursement; to monitor plans and disclosure statements in chapter 11 cases; to monitor plans in chapter 13 cases; to make sure that all reports, schedules, and fees required to be filed by debtors (including the new filing fees due each quarter in chapter 11 cases) are in fact filed; to monitor the functioning of creditors' committees; to notify the U.S. Attorney of possible crimes uncovered and cooperate with the U.S. Attorney in subsequent prosecutions; to monitor progress of bankruptcies and keep cases moving; and, to monitor the employment of professional persons in bankruptcy cases. The U.S. Trustees may comment to the court through pleadings, motions, and other appropriate filings on any of the matters **\*25** listed above. These specific duties are permissive; the U.S. Trustee need only carry them out in cases where the U.S. Trustee deems it appropriate.

U.S. Trustees are encouraged to detect and uncover fraud where it exists in bankruptcy cases, and to forward evidence of fraud to the office of the appropriate U.S. Attorney. It is anticipated that U.S. Trustees will perform investigatory functions in cooperation with U.S. Attorneys to assist the U.S. Attorneys in prosecuting bankruptcy fraud.

Section 116 directs the Attorney General to set the salaries of U.S. Trustees and assistant U.S. Trustees. The salaries cannot exceed the rate of basic compensation provided for Executive Level IV of the Executive Schedule set forth in 5 U.S.C. 5315. To ensure that the U.S. Trustees and assistant U.S. Trustees do not make more than the bankruptcy judges before whom they appear, though, their salary cannot be in excess of $2,000 less than the salary of bankruptcy judges.

Within the limits set out in Section 116, the Attorney General can set the salary of a U.S. Trustee. But, once the salary of a U.S. Trustee is set, the Attorney General cannot reduce it during the U.S. Trustee's term of office. This will help keep the U.S. Trustee Program from being subject to undue political pressure.

Section 116 also contains technical amendments redesignating headings in title 28, U.S. Code.

Section 117 establishes a special fund in the U.S. Treasury, called the United States Trustee System Fund, from which the U.S. Trustee Program will be funded. The monies generated by the increase in filing fees and additional quarterly fees in chapter 11 cases that H.R. 5316 sets will be deposited into the U.S. Trustee System Fund. It is the intent of the Committee

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 99-764                                                                                                                Page 7
H.R. REP. 99-764, H.R. Rep. No. 764, 99TH Cong., 2ND Sess. 1986, 1986 U.S.C.C.A.N. 5227, 1986 WL 31936
(Leg.Hist.)
(Cite as: H.R. REP. 99-764, 1986 U.S.C.C.A.N. 5227)

that the monies generated from fees added by H.R. 5316 be at least equal to the **5238 money needed to fund the U.S. Trustee Program each year, so that the Program will be self-funded by the users of the bankruptcy system--at no cost to the taxpayer. The following monies will be deposited into the U.S. Trustee System Fund: the $30 increase in chapter 7 and 13 filing fees, the $500 increase in the chapter 11 filing fee, the $500 increase in the chapter 11 filing fee for a railroad, all of the monies generated by the additional chapter 11 fee based on quarterly disbursements, and any compensation received by the U.S. Trustees, serving as private trustees.

Starting on November 1, 1989, if the money in the U.S. Trustee System Fund is more than 10% above the amount needed to fund the Program, the excess over 10% shall be transferred into the general fund of the U.S. Treasury. If not enough money is generated by self-funding to fund the Program in a year, section 117 authorizes additional appropriations to be made.

Each fiscal year, the Attorney General must transmit an accounting of the receipts and expenditures of the Fund to Congress within 120 days after the end of the fiscal year. This will allow Congress to properly oversee the operation of the Fund and the self-funding mechanism. Additionally, if more than 10% too much or if too little money is raised to fund the Program for two years in a row, the Attorney General must include in this report a recommendation as to how the fees payable may be modified to have the *26 money generated by self-funding approximate the amount needed to fund the Program. It would then be for the Congress to determine how the fee structure should be modified.

This provision ensures that the self-funding mechanism cannot become a general fund raising method for the government.

Section 118 repeals 28 U.S.C. 604(f), which permitted the Director of the Administrative Office of the U.S. Courts to appoint the panel of trustees for each bankruptcy court. Under H.R. 5316, this task will be performed by the U.S. Trustees.

Section 119 increases the bankruptcy filing fees in 28 U.S.C. 1930(a) to make the U.S. Trustee Progam self-funding. The chapter 7 and 13 filing fees are increased from $60 to $90. The chapter 11 filing fee for a non-railroad is increased from $200 to $700; for a railroad, the fee is increased from $500 to $1,000.

In addition to these increased fees that must be paid to the clerk upon filing (unless they are paid in installments by an individual commencing a voluntary or joint case under 28 U.S.C. 1930(a)), a quarterly fee based on disbursements made must be paid by chapter 11 debtors to the U.S. Trustee in the case. This fee is as follows: $150 for each quarter in which disbursements made total less than $15,000; $300 for each quarter in which disbursements made total $15,000 or more but less than $150,000; $750 for each quarter in which disbursements made total $150,000 or more but less than $300,000; $2250 for each quarter in which disbursements made total $300,000 or more but less than $3,000,000; $3,000 for each quarter in which disbursements made total $3,000,000 or more. This fee is payable on the last day of the month following the calendar quarter for which the fee is owned.

The U.S. Trustee Program should not have to be self-funding. It provides a great service to our country's bankruptcy system. However, **5239 in this time of budget deficit concerns, self-funding becomes a necessity.

In addition to the fee mechanism adopted, the Committee considered many different possible mechanisms for making the Program self-funding, including fees based on a debtor's assets, fees based on a debtor's liabilities, and a flat fee for all debtors. Smaller chapter 11 debtors should pay smaller additional fees than larger debtors; the funding mechanism in H.R. 5316 ensures that this will be the case. With its oversight jurisdiction over the bankruptcy laws, the Committee will monitor the self-funding mechanism as it operates.

Section 201 amends 11 U.S.C. 101, the definitional section of the Bankruptcy Code. 11 U.S.C. 101(14) is amended to include the U.S. Trustee as an 'entity', and 11 U.S.C. (24) is amended to make it clear that the U.S. Trustee is not a governmental unit while serving as a private trustee.

Section 202 amends 11 U.S.C. 303(g) so that if the court after notice and a hearing orders the appointment of an interim trustee in an involuntary case, the U.S. Trustee (instead of the court) will appoint the interim trustee.

Section 203 amends 11 U.S.C. 321 to make the U.S. Trustee eligible to serve as a private trustee only if the U.S. Trustee certifies to the court that the U.S. Trustee is unable to locate a qualified disinterested person in the district where the case is pending willing to *27 serve as private trustee. The U.S. Trustee is not meant to take the place of the private trustees.

Section 204 amends 11 U.S.C. 322 to provide that a U.S. Trustee does not have to file a bond with the court in order to qualify to serve as a private trustee. Additionally, since the U.S. Trustees will maintain the panels of private trustees, the U.S. Trustees are given the responsibility (instead of the courts, as under existing law) for setting the amounts and sufficiency of the bonds required to be filed by private trustees.

Section 205 retains the exclusive power of the court in 11 U.S.C. 324 to remove a private trustee, expect for a U.S. Trustee, or an examiner for cause-- after notice and a hearing. The bill adds that if a private trustee or an examiner is removed by the court for cause in one case, the private trustee or examiner is thereby removed in all cases in which the private trustee or examiner is then serving, unless the court orders otherwise. This provision is designed so that if a trustee or examiner is functioning improperly, poorly or even illegally in cases, the trustee or examiner can be quickly removed from all of them with just one hearing--thereby not tying up court time while protecting debtors and creditors by removing the trustee or

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 99-764                                                                                    Page 8
H.R. REP. 99-764, H.R. Rep. No. 764, 99TH Cong., 2ND Sess. 1986, 1986 U.S.C.C.A.N. 5227, 1986 WL 31936
(Leg.Hist.)
(Cite as: H.R. REP. 99-764, 1986 U.S.C.C.A.N. 5227)

examiner from every case. The court can limit the removal to just the case before it if the reasons for removal are unique to that case and the trustee or examiner's ability to function properly in other cases is not in question.

Section 206 amends 11 U.S.C. 326(b) to provide that although a U.S. Trustee may be allowed compensation by the court for services rendered as a private trustee, a U.S. Trustee may not be allowed compensation if the U.S. Trustee serves as a standing trustee in chapter 13 cases under 11 U.S.C. 1302(d).

**5240 Section 207 amends 11 U.S.C. 330 to provide that any money allowed the U.S. Trustee for services as a private trustee be deposited into the U.S. Trustee System Fund.

Section 208 creates new section 11 U.S.C. 332 setting forth the authority of the U.S. Trustee. The U.S. Trustee is given standing to raise, appear, and be heard on any issue in any case or proceeding under title 11, U.S. Code-- except that the U.S. Trustee may not file a plan in a chapter 11 case. In this manner, the U.S. Trustee is given the same right to be heard as a party in interest, but retains the discretion to decide when a matter of concern to the proper administration of the bankruptcy laws should be raised. By not designating the U.S. Trustee as a party in interest, the legislation ensures that there is no confusion over the U.S. Trustee's role in a case. A party in interest normally has a pecuniary interest in a case; the U.S. Trustee has no pecuniary stake in any case, and functions only as an impartial administrator.

Section 209 amends 11 U.S.C. 341 to provide that the U.S. Trustee (and not the court) shall convene the meetings of creditors, and may convene meetings of equity security holders.

Section 210 amends 11 U.S.C. 343 to make it clear that the U.S. Trustee may examine the debtor at the meeting of creditors.

Section 211 amends 11 U.S.C. 345(b) to transfer authority to approve the corporate surety securing deposited or invested funds of an estate from the court to the U.S. Trustee. This is an administrative function.

*28 Section 212 amends 11 U.S.C. 701(a) to have the U.S. Trustee, instead of the court, appoint the interim trustee in a chapter 7 case. Only if no qualified, disinterested person is available and willing to serve as interim trustee in the district where the case is pending can the U.S. Trustee serve as the interim trustee--and the U.S. Trustee must certify this fact to the court. In this manner, the private trustees remain an important part of the bankruptcy system.

Section 213 amends 11 U.S.C. 703(b) and (c) so that the U.S. Trustee will appoint the interim trustee if the private trustee cannot serve. As is the case with the first interim trustee, the U.S. Trustee can only serve as an interim trustee under this section if no qualified, disinterested person is available and willing to serve in the district.

Section 214 amends the duties of a private trustee in 11 U.S.C. 704 to provide that the private trustee's final report and final account of the administration of the estate must be filed with the U.S. Trustee as well as with the court.

Section 215 amends 11 U.S.C. 705(b) to make clear that the creditors' committee may consult with and make recommendations to the U.S. Trustee concerning a bankruptcy case.

Section 216 amends 11 U.S.C. 707(b) to permit the U.S. Trustee to file a motion to request the court to review whether a chapter 7 consumer debtor is substantially abusing the provisions of that chapter. If the court finds that the granting of relief to the debtor would be a substantial abuse of the chapter 7 provisions, it may dismiss the case.

Section 217 amends 11 U.S.C. 727(c), (d) and (e) to make it clear that the U.S. Trustee may object to the granting of a discharge and **5241 may request the court to revoke a discharge. However, the court may only order the private trustee, and not the U.S. Trustee (unless the U.S. Trustee is serving as the private trustee in the case), to examine the acts and conduct of the debtor to determine whether a ground exists for denial of discharge.

Section 218 amends 11 U.S.C. 1102 to transfer the authority to appoint the chapter 11 committee of unsecured creditors from the court to the U.S. Trustee, as it is an administrative task. The court still retains the authority to order the appointment of such additional committees as are necessary, but the U.S. Trustee has the authority to actually appoint these committees once the court has ordered.

Section 219 amends 11 U.S.C. 1104 to make it clear that the U.S. Trustee can seek the appointment of a trustee or examiner in a chapter 11 case. If the court orders the appointment to be made, the U.S. Trustee makes the appointment, subject to the court's approval.

Section 220 adds a new prerequisite to confirmation of a chapter 11 plan under 11 U.S.C. 1129. In order for the court to confirm a plan, all of the filing fees due under 28 U.S.C. 1930, including the quarterly fees based upon cash disbursements, must either be paid by the time of confirmation or the plan must provide for these fees to be paid on or before the effective date of the plan.

Section 221 amends 11 U.S.C. 1163 to transfer authority to appoint a trustee in a railroad reorganization from the court to the U.S. Trustee, since this is an administrative task.

*29 Section 222 conforms 11 U.S.C. 1302(a) to the fact that it is the U.S. Trustee who will have appointed the standing trustee, and not the court. 11 U.S.C. 1302(d) and (e) are stricken for this reason. Appointment and compensation of a standing trustee will be governed by 11 U.S.C. 586.

Section 223 conforms 11 U.S.C. 1326(b) to the fact that 11 U.S.C. 586 will govern the appointment and compensation of a

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 99-764                                                                                                    Page 9
H.R. REP. 99-764, H.R. Rep. No. 764, 99TH Cong., 2ND Sess. 1986, 1986 U.S.C.C.A.N. 5227, 1986 WL 31936
(Leg.Hist.)
**(Cite as: H.R. REP. 99-764, 1986 U.S.C.C.A.N. 5227)**

standing trustee, and not 11 U.S.C. 1302.

Section 224 repeals chapter 15 of title 11, U.S. Code. Chapter 15 contained the provisions relating to the U.S. Trustee Program when it functioned as a pilot program.

Section 301 provides for any U.S. Trustee from the pilot program serving on the effective date of H.R. 5316 to remain in office until the earlier of two years after the expiration of that U.S. Trustee's current term, of four years after the effective date of H.R. 5316. The U.S. Trustee will serve as the U.S. Trustee for the region, or group of districts, that contains the districts the U.S. Trustee serves in on the effective date.

This provision ensures that the permanent U.S. Trustee Program will benefit from the experience of those individuals still serving as U.S. Trustees in the pilot program. The knowledge of these individuals will be very helpful as the Program expands nationwide.

Section 302 sets the effective dates of the amendments made by H.R. 5316. The general effective date will be 30 days after the date of enactment, with the following exceptions:

The provisions creating additional bankruptcy judgeships will become effective on the later of October 1, 1986 or the date of enactment of H.R. 5316.

**\*\*5242** The increased filing fees will not apply to cases commenced before the effective date of H.R. 5316 in districts that participated in the U.S. Trustee pilot program.

The increased filing fees and the amendments to title 11, U.S. Code will not apply to districts that will be grouped with districts that participated in the pilot program until the earlier of 270 days after the general effective date of the bill or 30 days after the Attorney General certifies the group of districts in which a district lies to be ready to participate in the U.S. Trustee Program. In these districts, then, Program will be phased in over a 270 day period after the general effective date of the bill. It is anticipated that it will not take as much time for the U.S. Trustee Program to begin permanent operations in these districts since at least one district in each of the affected group of districts here has had the U.S. Trustee Program in effect on a pilot basis since 1979.

For groups of districts where no district participated in the pilot program, the Program will be phased in over a two year period after the effective date. The increased filing fees and the amendments to title 11, U.S. Code will take effect by the earlier of 30 days after the Attorney General certifies the applicable group of districts, or two years after the bill's general effective date.

The provisions of the bill setting forth the duties of the U.S. Trustee and amending title 11, U.S. Code will not apply to pending cases in districts that did not participate in the pilot program until the earlier of three years after the effective date of the bill, or one year after the Attorney General certifies the applicable group of **\*30** districts. But if a plan is confirmed in a pending case in these districts in chapter 11 or 13, or if the chapter 7 trustees files the final report and account of administration of the estate, before the earlier of this three year period or one year after the Attorney General certifies the districts, these provisions will not apply to the case at all.

Section 303 sets forth the Attorney General's obligation to certify a group of districts when the U.S. Trustee Program is in place there. The Attorney General is given 270 days after the effective date to implement the Program in groups of districts that contain districts that participated in the pilot U.S. Trustee Program, and 2 years to implement the Program in the remaining groups of districts. It is anticipated that this will be ample time for the Attorney General to properly implement the Program. This time frame is taken from H.R. 3664, the bill prepared by the Department of Justice.

The Attorney General must transmit the certification to the appropriate court of appeals, so that the court of appeals may notify district and bankruptcy courts that the Program will be taking effect. Certification must also be transmitted to the House of Representatives and the Senate, and published in the Federal Register.

Section 304 states that the Attorney General and the Director of the Administrative Office of the U.S. Courts may enter into agreements to share resources in order to help implement the nationwide U.S. Trustee Program and to avoid a duplication of functions during the two year phase-in period for the Program.

**\*\*5243** The Director of the Administrative Office is also directed to provide the Attorney General, upon request of the Attorney General, with such records, reports, and data compilations relating to bankrupcy proceedings as may be necessary to help the U.S. Trustees carry out their responsibilities.

Section 305 provides that the portion of the Bankruptcy Rules dealing with the U.S. Trustee Program does not apply to a district that did not participate in the pilot program until the amendments to title 11, U.S. Code made by the bill become effective in the district.

Section 306 permits the Attorney General to set the salaries of U.S. Trustees continuing in office from the pilot program on the same scale as new U.S. Trustees.

Section 307 repeals section 408 of the Bankruptcy Reform Act of 1978, the section that set up the U.S. Trustee Program on a pilot basis.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 99-764, H.R. Rep. No. 764, 99TH Cong., 2ND Sess. 1986, 1986 U.S.C.C.A.N. 5227, 1986 WL 31936
(Leg.Hist.)
**(Cite as: H.R. REP. 99-764, 1986 U.S.C.C.A.N. 5227)**

Section 308 encourages U.S. Trustees to consider for appointment as chapter 7 and chapter 13 trustees qualified individuals who have served as trustees before this legislation. The expertise of these individuals will benefit the U.S. Trustee Program.

Section 309 similarly encourages the Attorney General to consider for appointments within the U.S. Trustee Program those qualified individuals who have served as estate administrators before this legislation. Their expertise will benefit the Program.

Section 310 sets up, on a pilot basis for two years in three judicial districts, an electronic case management demonstration project. The project will be supervised by the Director of the Executive Office for United States Trustees, in consultation with the Director *31 of the Administrative Office of the U.S. Courts. The project will computerize bankruptcy records and files, and generate notices to parties in interest. It will also provide the U.S. Trustees with a means to monitor and maintain financial reports and records required to be filed by debtors.

The computerized information will be made available at no charge to Congress, the U.S. Trustees, the courts, and private trustees. In addition, to the extent that the computerized information is a public record, it may be reviewed in the court clerk's office without charge by any person or entity, in accordance with 11 U.S.C. 107(a).

A contract to provide this electronic case management system shall be awarded by the Director of the Executive Office for U.S. Trustees to a non-governmental entity on the basis of competitive bids. The contract award must be made in accordance with the Federal Property and Administrative Services Act of 1949, the Office of Federal Procurement Policy Act, and title 31 of the U.S. Code (which incorporate the Brooks Act, P.L. 89-306, and the Competition in Contracting Act, P.L. 98-369).

The contract awarded may permit the entity to collect reasonable fees from assets of estates for providing notices and services to the court and trustee under the demonstration project. The entity may also be permitted to charge a reasonable fee for access to the information maintained in the electronic case outside of the clerk's **5244 office--such as if a law firm has a computer terminal in its office and is able to tie it in to the electronic case management system for viewing purposes.

### INFORMATION SUBMITTED PURSUANT TO RULES

#### A. INFLATIONARY IMPACT STATEMENT

Pursuant to Clause 2(l)(4) of Rule XI of the Rules of the House of Representatives, the Committee estimates that this bill will not have an inflationary impact on prices and costs in the operation of the national economy.

#### B. OVERSIGHT

This Committee exercises oversight responsibilities with respect to the bankruptcy laws of the United States. No findings or recommendations of the Committee on Government Operations were received as referred to in Rule XI, Clause 2(l)(3)(D).

#### C. COST

Pursuant to Clause 7 of Rule XIII of the Rules of the House of Representatives, the Committee states that it concurs with the estimate submitted by the Congressional Budget Office as set forth below.

#### D. BUDGET STATEMENT

Pursuant to Clause 2(l)(3)(B) and (C) of Rule XI of the Rules of the House of Representatives, the following estimate was prepared *32 by the Congressional Budget Office and submitted to the Committee.

U.S. CONGRESS,

CONGRESSIONAL BUDGET OFFICE,

Washington, DC, August 7, 1986.

Hon. PETER W. RODINO, Jr.,
Chairman, Committee on the Judiciary, U.S. House of Representatives, 2137
Rayburn House Office Building, Washington, DC.
 DEAR MR. CHAIRMAN: The Congressional Budget Office has reviewed H.R. 5316, the Bankruptcy Judges and United

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 99-764, H.R. Rep. No. 764, 99TH Cong., 2ND Sess. 1986, 1986 U.S.C.C.A.N. 5227, 1986 WL 31936
(Leg.Hist.)
**(Cite as: H.R. REP. 99-764, 1986 U.S.C.C.A.N. 5227)**

States Trustees Act of 1986, as ordered reported by the House Committee on the Judiciary, August 5, 1986.

This bill creates 52 additional United States bankruptcy judgeships, with judges to be appointed by the courts of appeals for 14-year terms. We estimate that the increased costs to the federal government for salaries and other operating expenses will be approximately $16 million in 1987, including non-recurring costs of $5 million. We expect salaries and operating expenses of about $12 million in 1988, $13 million in 1989, $14 million in 1990, and $15 million in 1991. In addition, the one-time cost of providing courtrooms and other facilities for these judgeships is estimated to be $18 million to $20 million, for the construction or acquisition of the necessary facilities.

**\*\*5245** The total recurring costs associated with each new bankruptcy judgeship, based on information provided by the Administrative Office of the U.S. Courts and analysis of current spending levels, are estimated to be approximately $270,000 per year (at 1987 prices). This includes higher judicial payroll, as well as additional support staff (one clerk and one secretary per judge), operations and maintenance expenses, and costs for space and facilities. The cost figures also assume that all first-year costs will be incurred in 1987. Estimates for salaries and benefits are based on the assumption of 3 percent payraises in January 1987 and in each subsequent year, based on the assumptions of the 1987 budget resolution.

H.R. 5316 also would authorize a new United States Trustee system to oversee the administration of bankruptcy cases filed under Chapters 7, 11, and 13 of the Bankruptcy Code. The new system would replace and make permanent the U.S. Pilot Program for Bankruptcy Administration; the current program is scheduled to expire on September 30, 1986. H.R. 5316 would authorize the Attorney General to appoint 18 trustees, an increase of eight over the Pilot Program. Each trustee would serve a group of judicial districts. Collectively, the new trustee program would cover the entire country. The new system would be phased in over a two-year period following the initial appropriation of funds.

To fund the activities of the trustee program, the bill would create the U.S. Trustee System Fund. It would increase filing fees for cases under Chapters 7, 11, or 13, and would establish quarterly charges to be paid into the Trustee System Fund in Chapter 11 cases. The quarterly payments would be based on disbursements by the litigants during the proceedings.

Based on information provided by the Department of Justice (DOJ), we estimate that outlays would be approximately $30 million **\*33** to $40 million annually during the first two years of the program and $50 million to $56 million once the program is fully established. We also estimate that the payments of fees to the Trustee System Fund would exceed the projected outlays for four or five years. Fee receipts are estimated to be about $40 million in 1987, rising to $55 million by 1989. The excess of receipts over outlays would be about $8 million in 1987, and would total about $25 million over the 1987-1991 period.

Additionally, the expanded trustee system would replace the current estate administrator function of the Judiciary. In the absence of new legislation, this function would be expanded to all judicial districts, with total costs estimated to be about $11 million annually, according to the Administrative Office of the U.S. Courts.

In sum, the new trustee system would result in net savings for the government. We estimate that receipts would exceed outlays by about $25 million over the first four years of the program. Furthermore, the system would replace the current estate administrator function of the courts, saving an additional $11 million.

If you wish further details on this estimate, we will be pleased to provide them.

With best wishes,


RUDOLPH G. PENNER, Director.


FN1   Thirteen Members of the Committee co-sponsored the bill: Messers. Fish, Edwards of California, Seiberling, Hughes, Smith of Florida, Conyers, Frank, Crockett, Berman, Staggers, Bryant, Kindness, and Hyde.

FN2   Eight Members of the Committee co-sponsored the bill: Messers. Brooks, Edwards of California, Hughes, Smith of Florida, Synar, Frank, Schumer and Berman.

FN3   The Judicial Conference has the obligation to submit from time to time recommendations to Congress regarding the number of bankruptcy judges needed and the districts in which such judges are needed (28 U.S.C. 152(b)(2)). The Congress, of course, determines whether or not to authorize additional judgeships. The Judicial Conference did submit recommendations to Congress on December 10, 1985.


The Judicial Conference is encouraged to develop a method or formula for assigning weights to the different types of bankruptcy proceedings and hearings, based on the amount of judicial time involved for each, so as to more accurately measure the workload of a court and the need for additional judges.


© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

H.R. REP. 99-764                                                              Page 12
H.R. REP. 99-764, H.R. Rep. No. 764, 99TH Cong., 2ND Sess. 1986, 1986 U.S.C.C.A.N. 5227, 1986 WL 31936
(Leg.Hist.)
**(Cite as: H.R. REP. 99-764,  1986 U.S.C.C.A.N. 5227)**


H.R. REP. 99-764, H.R. Rep. No. 764, 99TH Cong., 2ND Sess. 1986, 1986 U.S.C.C.A.N. 5227, 1986 WL 31936 (Leg.Hist.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

.

# COLLIER ON

# BANKRUPTCY®

## FIFTEENTH EDITION REVISED

## VOLUME 7

### ALAN N. RESNICK

*Benjamin Weintraub Distinguished Professor of Bankruptcy Law, Hofstra University School of Law;*
*Of Counsel, Fried, Frank, Harris, Shriver & Jacobson LLP, New York City*

### HENRY J. SOMMER

*Supervising Attorney, Consumer Bankruptcy Assistance Project, Philadelphia*

EDITORS-IN-CHIEF

### LAWRENCE P. KING

EDITOR-IN-CHIEF, 1974–2001

## BANKRUPTCY CODE §§ 1101–1129



### [b]—Consultation with the Debtor in Possession or Trustee.

The first duty of a committee under section 1103(c) is to consult with the trustee or the debtor in possession concerning the administration of the estate. The debtor and the committee have a common goal in the chapter 11 case — the confirmation of plan of reorganization generating the maximum return to creditors and, if possible, equity security holders. For the chapter 11 process to function as it supposed to, it is necessary for the debtor and the official committees, despite whatever disagreements they may have, to work together to accomplish this goal. Frequent and regular communication and consultation is essential to achieve the purposes of chapter 11. No major decision should be taken by the debtor in a chapter 11 case without prior consultation with the committee.[3]

The obligation of the debtor to meet and consult with the committee does not mean that management or the board of directors must abdicate

(Text continued on page 1103–23)

---

[3] See In re Structurlite Plastics Corp., 91 B.R. 813 (Bankr. S.D. Ohio 1988) (requiring debtor to provide creditors' committee with drafts of agreements pertaining to sale of debtor's assets).

(Rel.95—9/05  Pub.219)

their responsibilities or that the power to make decisions should be shifted to official committees.[4]

Committees appointed under the Code may make recommendations concerning the debtor's business, but a committee should not attempt to displace those persons legally responsible for the debtor's affairs.[5] For a corporate debtor, ultimate management authority resides with the officers and directors who must use their business judgment and fulfill what they believe to be their fiduciary duty in managing the debtor's affairs. If a committee believes that the officers and directors are not fulfilling their fiduciary duties or not acting in the best interests of creditors, the appropriate remedy is to seek the appointment of a chapter 11 trustee and not to seek to substitute its own business judgment for that of management.

A committee should not hesitate, however, to express its view to management of the debtor regarding the debtor's operation. Consultation is not control and a committee has the right to make its views known to management and management has a duty to consider those views. A committee should also not hesitate to oppose actions of the debtor in court. To the extent the debtor seeks authority from the court to implement strategic business decisions, such as selling or closing divisions, locations, on other nonessential assets, a committee's views should be expressed and given considerable weight by the courts. Similarly, if a committee objects to a debtor in possession's proposal to use cash collateral, obtain financing, assume or reject an executory contract or unexpired lease, or similar business decisions, the committee should not refrain from making its objections known to the court.

### [c]—Investigation of Financial Affairs of Debtor.

A committee appointed under section 1102 is also vested with the authority to investigate the acts, conduct, assets, liabilities, and financial condition of the debtor, the operation of the debtor's business, and any other matter relevant to the case or to the formulation of a plan.[6] The

---

[4] See ¶ 1103.06 infra.

[5] See In re After Six, Inc., 154 B.R. 876 (Bankr. E.D. Pa. 1993) (while creditors' committee's views on disposition of assets are given greater weight in liquidating chapter 11 case, these views cannot override debtor's exercise of business judgment).

[6] While the grant of authority is not limited to the creditors committee, it will be an unusual situation when circumstances justify an equity security holders committee undertaking an investigation in addition to that undertaken by the creditors committee. See ¶ 1103.05[1][f] infra.

(Matthew Bender & Co., Inc.)

Westlaw.

Federal Rules of Bankruptcy Procedure, Rule **2007**

**C**

United States Code Annotated Currentness
  Bankruptcy Rules (Refs & Annos)
    Part II. Officers and Administration; Notices; Meetings; Examinations; Elections; Attorneys and Accountants

    ➡**Rule 2007.** Review of Appointment of Creditors' Committee Organized Before Commencement of the Case

(a) Motion to review appointment

If a committee appointed by the United States trustee pursuant to § 1102(a) of the Code consists of the members of a committee organized by creditors before the commencement of a chapter 9 or chapter 11 case, on motion of a party in interest and after a hearing on notice to the United States trustee and other entities as the court may direct, the court may determine whether the appointment of the committee satisfies the requirements of § 1102(b)(1) of the Code.

(b) Selection of members of committee

The court may find that a committee organized by unsecured creditors before the commencement of a chapter 9 or chapter 11 case was fairly chosen if:

**(1)** it was selected by a majority in number and amount of claims of unsecured creditors who may vote under § 702(a) of the Code and were present in person or represented at a meeting of which all creditors having unsecured claims of over $1,000 or the 100 unsecured creditors having the largest claims had at least five days notice in writing, and of which meeting written minutes reporting the names of the creditors present or represented and voting and the amounts of their claims were kept and are available for inspection;

**(2)** all proxies voted at the meeting for the elected committee were solicited pursuant to Rule 2006 and the lists and statements required by subdivision (e) thereof have been transmitted to the United States trustee; and

**(3)** the organization of the committee was in all other respects fair and proper.

(c) Failure to comply with requirements for appointment

After a hearing on notice pursuant to subdivision (a) of this rule, the court shall direct the United States trustee to vacate the appointment of the committee and may order other appropriate action if the court finds that such appointment failed to satisfy the requirements of § 1102(b)(1) of the Code.

CREDIT(S)

(As amended Mar. 30, 1987, eff. Aug. 1, 1987; Apr. 30, 1991, eff. Aug. 1, 1991.)

ADVISORY COMMITTEE NOTES

Section 1102(b)(1) of the Code permits the court to appoint as the unsecured creditors' committee, the committee that was selected by creditors before the order for relief. This provision recognizes the propriety of continuing a "prepetition" committee in an official capacity. Such a committee, however, must be found to have been fairly chosen and representative of the different kinds of claims to be represented.

**Subdivision (a)** does not necessarily require a hearing but does require a party in interest to bring to the court's

Federal Rules of Bankruptcy Procedure, Rule 2007

attention the fact that a prepetition committee had been organized and should be appointed. An application would suffice for this purpose. Party in interest would include the committee, any member of the committee, or any of its agents acting for the committee. Whether or not notice of the application should be given to any other party is left to the discretion of the court.

**Subdivision (b)** implements § 1102(b)(1). The Code provision allows the court to appoint, as the official § 1102(a) committee, a "prepetition" committee if its members were fairly chosen and the committee is representative of the different kinds of claims. This subdivision of the rule indicates some of the factors the court may consider in determining whether the requirements of § 1102(b)(1) have been satisfied. In effect, the subdivision provides various factors which are similar to those set forth in Rule 2006 with respect to the solicitation and voting of proxies in a chapter 7 liquidation case.

1987 Amendments

The rule is amended to conform to the 1984 amendments to § 1102(b)(1) of the Code.

1991 Amendments

This rule is amended to conform to the 1986 amendments to § 1102(a). The United States trustee appoints committees pursuant to § 1102 in chapter 11 cases. Section 1102 is applicable in chapter 9 cases pursuant to § 901(a).

Although § 1102(b)(1) of the Code permits the United States trustee to appoint a prepetition committee as the statutory committee if its members were fairly chosen and it is representative of the different kinds of claims to be represented, the amendment to this rule provides a procedure for judicial review of the appointment. The factors that may be considered by the court in determining whether the committee was fairly chosen are not new. A finding that a prepetition committee has not been fairly chosen does not prohibit the appointment of some or all of its members to the creditors' committee. Although this rule deals only with judicial review of the appointment of prepetition committees, it does not preclude judicial review under Rule 2020 regarding the appointment of other committees.

CROSS REFERENCES

Representation of creditors and equity security holders in municipality debt adjustment and reorganization cases, see Fed.Rules Bankr.Proc. Rule 2019, 11 USCA.

LAW REVIEW COMMENTARIES

New Bankruptcy Rules for the New Decade. Anthony Michael Sabino, 1 Bankr.L.Rev. 22 (Winter 1990).

LIBRARY REFERENCES

American Digest System

Bankruptcy ☞3024.

Key Number System Topic No. 51.

Corpus Juris Secundum

CJS Bankruptcy § 372, Appointment of Creditors' and Equity Security Holders' Committees.

RESEARCH REFERENCES

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Federal Rules of Bankruptcy Procedure, Rule 2007

Encyclopedias

Am. Jur. 2d Bankruptcy § 966, Voting and Elections.

9 Am. Jur. 2d Bankruptcy § 506, Chapter 9 and 11 Committees; Appointment.

9 Am. Jur. 2d Bankruptcy § 508, Prepetition Committee.

Forms

4A Am. Jur. Pl. & Pr. Forms Bankruptcy § 266, Order-Disapproving Appointment of Trustee-Failure to Maintain Residence or Office in Judicial District.

4A Am. Jur. Pl. & Pr. Forms Bankruptcy § 267, Order-Disapproving Appointment of Trustee-Appointee Incompetent to Perform Duties.

Federal Procedural Forms § 9:313, Generally; Appointment.

Federal Procedural Forms § 9:315, Approval of Appointment of Prepetition Committee.

9 West's Legal Forms § 12,54, Motion to Review and Vacate U.S. Trustee's Appointment of Creditors' Committee.

Treatises and Practice Aids

Bankruptcy Law Manual § 9:6, Conditions Leading to a Chapter 11 Petition.

Bankruptcy Law Manual § 9:27, The Appointment of Committees.

Chapter 11: Reorganizations, Second Edition § 2:7, Out-Of-Court Workout.

Chapter 11: Reorganizations, Second Edition § 7:15, Appointment of Committees.

Federal Procedure, Lawyers Edition § 9:308, Counterclaims.

Federal Procedure, Lawyers Edition § 9:310, Government Agencies.

Norton Bankruptcy Law and Practice 2d § 78:3, Appointment of Committees -- Continuation of Prepetition Committees.

Norton Bankruptcy Law and Practice 2d § 86:20, In General; Rejection of Prepetition Workout Agreement.

Norton Bankruptcy Law and Practice 2d § 78:10.5, Dissolution of Committee.

Norton Creditor's Rights Handbook § 13:2, Types of Committees.

Norton Creditor's Rights Handbook § 13:3, Membership on a Committee.

Fed.Rules Bankr.Proc. Rule 2007, 11 U.S.C.A., FRBP Rule 2007

Amendments received to 10-12-05

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Federal Rules of Bankruptcy Procedure, Rule **2007**

Copr. © 2005 Thomson/West. No. Claim to Orig. U.S. Govt. Works

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Westlaw.

## C

An adversary proceeding is governed by the rules of this Part VII. The following are adversary proceedings:

(1) a proceeding to recover money or property, other than a proceeding to compel the debtor to deliver property to the trustee, or a proceeding under § 554(b) or § 725 of the Code, Rule 2017, or Rule 6002;

(2) a proceeding to determine the validity, priority, or extent of a lien or other interest in property, other than a proceeding under Rule 4003(d);

(3) a proceeding to obtain approval under § 363(h) for the sale of both the interest of the estate and of a co-owner in property;

(4) a proceeding to object to or revoke a discharge;

(5) a proceeding to revoke an order of confirmation of a chapter 11, chapter 12, or chapter 13 plan;

(6) a proceeding to determine the dischargeability of a debt;

(7) a proceeding to obtain an injunction or other equitable relief, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for the relief;

(8) a proceeding to subordinate any allowed claim or interest, except when a chapter 9, chapter 11, chapter 12, or chapter 13 plan provides for subordination;

(9) a proceeding to obtain a declaratory judgment relating to any of the foregoing; or

(10) a proceeding to determine a claim or cause of action removed under 28 U.S.C. § 1452.

| F.R.Civ.P. | Rule in Part V or IX |
| --- | --- |
| 6 | 9006 |
| 7(b) | 9013 |
| 10(a) | 9004(b) |
| 11 | 9011 |
| 38, 39 | 9015(a)-(e) |
| 47-51 | 9015(f) |
| 43, 44, 44.1 | 9017 |
| 45 | 9016 |
| 58 | 9021 |
| 59 | 9023 |
| 60 | 9024 |
| 61 | 9005 |
| 63 | 9028 |
| 77(a), (b), (c) | 5001 |
| 77(d) | 9022(d) |
| 79(a)-(d) | 5003 |
| 81(c) | 9027 |
| 83 | 9029 |
| 92 | 9030 |

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

.

Westlaw.

**c**

On an appeal the district court or bankruptcy appellate panel may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses.

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

## C

**(a) Motion.** In a contested matter not otherwise governed by these rules, relief shall be requested by motion, and reasonable notice and opportunity for hearing shall be afforded the party against whom relief is sought. No response is required under this rule unless the court directs otherwise.

**(b) Service.** The motion shall be served in the manner provided for service of a summons and complaint by Rule 7004. Any paper served after the motion shall be served in the manner provided by Rule 5(b) F. R. Civ. P.

**(c) Application of Part VII rules.** Except as otherwise provided in this rule, and unless the court directs otherwise, the following rules shall apply: 7009, 7017, 7021, 7025, 7026, 7028-7037, 7041, 7042, 7052, 7054-7056, 7064, 7069, and 7071. The following subdivisions of Fed. R. Civ. P. 26, as incorporated by Rule 7026, shall not apply in a contested matter unless the court directs otherwise: 26(a)(1) (mandatory disclosure), 26(a)(2) (disclosures regarding expert testimony) and 26(a)(3) (additional pre-trial disclosure), and 26(f) (mandatory meeting before scheduling conference/ discovery plan). An entity that desires to perpetuate testimony may proceed in the same manner as provided in Rule 7027 for the taking of a deposition before an adversary proceeding. The court may at any stage in a particular matter direct that one or more of the other rules in Part VII shall apply. The court shall give the parties notice of any order issued under this paragraph to afford them a reasonable opportunity to comply with the procedures prescribed by the order.

**(d) Testimony of witnesses.** Testimony of witnesses with respect to disputed material factual issues shall be taken in the same manner as testimony in an adversary proceeding.

**(e) Attendance of witnesses.** The court shall provide procedures that enable parties to ascertain at a reasonable time before any scheduled hearing whether the hearing will be an evidentiary hearing at which witnesses may testify.

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.