LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (admitted *pro hac vice*)
Mark A. Broude (MB-1902)
Email: robert.rosenberg@lw.com
          mitchell.seider@lw.com
          mark.broude@lw.com

Attorneys for the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------
In re:                                          )          Chapter 11
                                                )
DELPHI CORPORATION, et al.,                     )          Case No. 05-44481 (RDD)
                                                )              Jointly Administered
                                                )
            Debtors.                            )
                                                )
                                                )
                                                )
---------------------------------------------------------

**THE OFFICIAL COMMITTEE OF UNSECURED**
**CREDITORS' AMENDED APPLICATION FOR ORDER UNDER SECTIONS**
**328 AND 1103 OF THE BANKRUPTCY CODE AND BANKRUPTCY**
**RULE 2014 APPROVING RETENTION OF JEFFERIES & COMPANY, INC.**
**AS INVESTMENT BANKER TO THE COMMITTEE**

The duly-appointed official committee of unsecured creditors (the "Committee")

of the above-captioned debtors and debtors-in-possession (collectively, the "Debtors") hereby

applies (the "Amended Application")[1] for an order under 11 U.S.C. §§ 328(a) and 1103, and

---

[1] The Committee is amending its original Application to retain Jefferies to address certain concerns raised by the Office of the United States Trustee.

Rules 2014, 2016 and 5002 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and the Local Rules of the United States Bankruptcy Court for the Southern District of New York (the "Local Rules") authorizing the employment and retention of Jefferies & Company, Inc. ("Jefferies"), as investment banker to the Committee to perform specified services in connection with the above-captioned chapter 11 cases effective as of October 18, 2005. In support of the Amended Application, the Committee relies upon and incorporates by reference the Affidavit of William Q. Derrough (the "Derrough Affidavit"), a copy of which is attached hereto. In further support of the Amended Application, the Committee respectfully represents as follows:

## BACKGROUND

1. On October 8, 2005, the Debtors each filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to manage their property and operate their business as debtors-in-possession in accordance with sections 1107 and 1108 of the Bankruptcy Code. This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper in this district in accordance with 28 U.S.C. §§ 1408 and 1409. No trustee or examiner has been appointed in this case.

2. The statutory predicates for the relief sought herein are sections 328 and 1103 of the Bankruptcy Code.

3. On October 17, 2005, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee") held an organizational meeting and appointed the following members of the Committee: Electronic Date Systems Corp., General Electric Company, Flextronics International Asia-Pacific Ltd., IUE-CWA, Capital Research and Management Company, Wilmington Trust Company, as indenture trustee, and Freesscale

Semiconductor, Inc.. Thereafter, at a regularly scheduled meeting of the Committee held on October 18, 2005, the Committee voted, subject to this Court's approval, to retain Jefferies as its investment banker in this matter.

## RELIEF REQUESTED

4. By this Amended Application, the Committee requests that the Court enter interim and final orders pursuant to sections 328(a) and 1103 of the Bankruptcy Code and Bankruptcy Rule 2014, authorizing it to retain and employ Jefferies as its investment banker, effective as of October 18, 2005, pursuant to the terms of the Jefferies engagement as set forth in the letter agreement attached hereto as Exhibit A (the "Jefferies Engagement Letter"), as modified by this Amended Application.

## BASIS TO RETAIN JEFFERIES AS INVESTMENT BANKERS

### Jefferies' Qualifications

5. The Committee respectfully submits that the services of an investment banker are necessary and appropriate to enable it to evaluate the complex financial and economic issues raised by the Debtors' reorganization proceedings and to effectively fulfill its statutory duties. The Committee selected Jefferies because of its expertise in providing investment banking services to debtors and creditors in restructurings and distressed situations and its expertise in the automotive industry.

6. Jefferies is an investment banking firm with its principal office located at 520 Madison Avenue, 12th Floor, New York, New York 10022. Jefferies is a registered broker-dealer with the United States Securities and Exchange Commission, and is a member of the Boston Stock Exchange, the International Stock Exchange, the National Association of Securities Dealers, the Pacific Stock Exchange, the Philadelphia Stock Exchange, and the

Securities Investor Protection Corporation. Jefferies was founded in 1962 and is a wholly-owned subsidiary of Jefferies Group, Inc. Jefferies Group, Inc. ("Jefferies Group") is a public company and, together with its subsidiaries, has over $13 billion in assets and approximately 2,000 employees in 23 offices around the world.

7. Jefferies provides a broad range of corporate advisory services to its clients including, without limitation, services pertaining to: (i) general financial advice, (ii) mergers, acquisitions, and divestitures, (iii) special committee assignments, (iv) capital raising, and (v) corporate restructurings.

8. Jefferies and its senior professionals have extensive experience in the reorganization and restructuring of troubled companies, both out-of-court and in chapter 11 proceedings. The employees of Jefferies have advised debtors, creditors, equity constituencies, and purchasers in many reorganizations. Since 2000, these professionals have been involved in over 100 restructurings representing over $100 billion in restructured liabilities.

9. Jefferies has extensive experience in reorganization cases and has an excellent reputation for services it has rendered in large and complex chapter 11 cases on behalf of debtors, creditors and creditors' committees throughout the United States such as: In re AmeriServe Food Distribution, Inc., In re Ames Department Stores, Inc., In re Diamond Brands Operating Corp., In re Federal Mogul Corporation, In re Heartland Wireless Communications, In re ICO Global Communications Services Inc, et. al., In re International Wireless Communications. Inc., et. al., In re Kaiser Group International. Inc., In re Amerco, Inc., In re Budget Group, Inc., In re Exide Technologies Inc., In re Formica Corp., In re Atkins Nutritionals, Inc., In re WXH Corp., In re XO Communications Inc., and In re VF Brands International.

10. The Committee officially voted to retain Jefferies on October 18, 2005. At the request of the Committee, Jefferies had rendered services from October 18, 2005 through and including the date hereof. The Committee has requested that Jefferies continue to render such services and other investment banking services pending approval of the Amended Application by the Court. Accordingly, the Committee requests that the retention of Jefferies be authorized effective as of October 18, 2005.

## The Engagement

11. On October 18, 2005, the Committee selected Jefferies as its investment banker for the purpose of assisting and advising the Committee with respect to any potential strategy for restructuring the Debtors' outstanding indebtedness, labor costs or capital structure, whether pursuant to a plan or reorganization, a sale of assets pursuant to section 363 of the Bankruptcy Code, a liquidation, or otherwise (the "Restructuring").

12. In its capacity as the Committee's investment banker, Jefferies is prepared to provide certain postpetition services including, without limitation, the following:

   a)  valuation of the Debtors' enterprise value, on a consolidated and division basis;

   b)  pricing of any securities to be issued in the Restructuring, as well as evaluation of the terms of any such securities;

   c)  evaluation of any financing proposed as part of the Restructuring, including, without limitation, debtor in possession financing and exit financing;

   d)  assist and advise the Committee in examining and analyzing any potential or proposed strategy for restructuring or adjusting the Debtors' outstanding indebtedness, labor costs or capital structure, including, without limitation, assessment of leverage and capital structure of the reorganized entities, evaluation of business acquisitions/divestitures (including monitoring of any purchase/ sale process);

5

      e)      analysis of restructuring proposals from various constituencies, including, without limitation, labor concession proposals, pension and OPEB restructuring plans;

      f)      assist and advise the Committee in evaluating and analyzing the proposed implementation of a Restructuring; and

      g)      render such other investment banking services as may from time to time be agreed upon by the Committee and Jefferies, including, without limitation, providing expert testimony and other expert and investment banking support related to any threatened, expected, or initiated litigation.

13. In order to perform these services in a cost-effective manner, Jefferies has represented to the Committee that it will endeavor to coordinate all its services to the Committee with the other professionals retained in these cases so as to minimize (and, wherever possible, avoid) any unnecessary duplication of services and any potential burden on the Debtors and their professional advisors. Representatives of Jefferies have met with the representatives of Mesirow Financial Consulting, LLC ("Mesirow") the Committee's financial advisors and have worked out an appropriate and efficient division of responsibilities.

## Disclosures Concerning Conflicts of Interest[2]

14. To check and clear potential conflicts of interest in these cases, Jefferies has researched its client database to determine whether Jefferies had any connection with, among others, the following entities:

      a)      The Debtors and their affiliates;

      b)      The Debtors' officers and directors for the past 3 years;

      c)      The Debtors' principal shareholders;

      d)      The Debtors' secured lenders, including current and former agents under credit facilities and their professionals;

---

[2] The Committee's knowledge, information and belief regarding the matters set forth herein are based, and made in reliance, upon the Derrough Affidavit.

e) Record holders of 5% or more of the Debtors' debt securities;

f) Indenture trustees with respect to the Debtors' debt securities;

g) Underwriters of the Debtors' securities issued in the past 3 years;

h) The Debtors' largest unsecured creditors;

i) The Debtors' professionals;

j) The Debtors' insurers;

k) Counterparties to major contracts and leases with the Debtors;

l) Parties to significant litigation with the Debtors and their counsel;

m) The Debtors' major customers and suppliers;

n) Governmental authorities having jurisdiction over the Debtors;

o) Unions representing the Debtors' employees;

p) The members of the Committee;

q) The Committee's professionals;

r) The professionals retained by individual Committee members;

s) The staff of the Office of the United States Trustee for the Southern District of New York;

t) Bankruptcy Judge Robert D. Drain and members of his Staff; and

u) And certain other parties in interest Jefferies.

15. To the best of the Committee's knowledge, the principals and professionals of Jefferies do not have any connection with the Debtors, their creditors, or any other party in interest, except as set forth in the Derrough Affidavit. From time to time, Jefferies has provided investment banking, financial advisory and/or consulting services to certain creditors and other parties in interest in matters wholly unrelated to these cases. Jefferies has informed the Committee that, during its retention by the Committee in these cases, it will not provide services to any entity having an adverse interest, including, without limitation, those listed in the

7

Derrough Affidavit, in connection with any matters relating to these cases. However, given its diverse practice and client base, Jefferies may provide services to clients in matters unrelated to these chapter 11 cases, who are or become creditors of the Debtors or who may have interests adverse to the Debtors' creditors in unrelated matters.

16. Jefferies Group is a global investment banking firm with broad activities covering trading in equities, convertible securities and corporate bonds in addition to its investment banking and financial advisory practice. With more than 80,000 customer accounts around the world, it is possible that one of its clients or a counter-party to a security transaction may hold a claim or otherwise is a party-in-interest in these chapter 11 cases. Furthermore, as a major market maker in equity securities as well as a major trader of corporate bonds and convertible securities, Jefferies regularly enters into securities transactions with other registered broker-dealers as a part of its daily activities. Some of these counter-parties may be creditors of the Debtors. Jefferies believes none of these business relationships constitute interests materially adverse to the Committee herein in matters upon which Jefferies is to be employed, and none are in connection with these cases. Jefferies has informed the Committee that, during its engagement in these cases, it will not trade in any securities of the Debtors for or on its own account, and any such trading will be conducted only at clients' direction, with Jefferies acting solely as such clients' agent.

17. As set forth in the Jefferies Engagement Letter, Jefferies will be, subject to the Additional Procedures (as set forth in paragraph 24 of this Amended Application) and Court approval, entitled to receive, from the Debtors' estates, as compensation for its services in these cases: (a) a monthly fee (the "Monthly Fee") of $175,000 per month, and (b) a transaction fee (the "Transaction Fee") in an amount equal to (i) 0.5% of Total Consideration (as defined below)

8

greater than $0.50 up to and including $0.75 per $1.00 of allowed unsecured claim, and (ii) .75% of Total Consideration greater than $0.75 per $1.00 of allowed unsecured claim (such fee arrangement is hereinafter referred to as the "Fee Structure").[3] The Transaction Fee shall not be less than $2 million or greater than $10 million (the "Cap"), however Jefferies has reserved the right to request modification of the Cap.

18. For the purposes of this Amended Application and the Jefferies Engagement Letter, the "Total Consideration" is defined as the aggregate consideration, if any, paid by the Debtors on account of allowed unsecured claims pursuant to the Plan (including any amounts in escrow), but excluding any consideration paid on account of allowed claims of the Pension Benefit Guaranty Corporation, or any assignee thereof. The Transaction Fee shall be payable on the earlier of (a) the date of the receipt of initial distributions by the Debtors' unsecured creditors and (b) the effective date of the Plan. To the extent the Total Consideration is paid in cash, the Transaction Fee is also payable in cash. To the extent the Total Consideration will consist of non-cash consideration, in the Committee's sole discretion, the Transaction Fee may be payable in like consideration.

19. At any time during the time of Jefferies' engagement, the Committee may, in its sole discretion, on at least 15 days' prior notice to Jefferies, require Jefferies to cease to provide services in these cases for one or more consecutive months (not to exceed three months in the aggregate) (a "No-Service Period"). Jefferies shall not be entitled to the Monthly Fee with respect to the No-Service Period. One half (50%) of the Monthly Fees actually paid by the Debtors commencing with the 19th Monthly Fee shall be credited against the Transaction Fee.

---

[3] This summary is presented for convenience purposes only. The terms set forth in the Jefferies Engagement Letter are controlling in all respects.

9

20. The Debtors and their estates also will reimburse Jefferies, subject to approval of this Court, for all reasonable out-of-pocket expenses, including, without limitation, all reasonable travel expenses, duplicating charges, messenger services, long distance telephone calls and other customary expenditures incurred by Jefferies in performing its investment banking services.

21. As set forth more fully in the Jefferies Engagement Letter and paragraph 31 of this Amended Application, the Debtors and their estates are to indemnify and hold harmless Jefferies, its agents, principals and employees for all claims, damages, liabilities and expenses to which such parties may have been subject to as a result of their involvement with providing investment banking services, except to the extent that such claims, damages, liabilities and expenses resulted, in whole or in part, from gross negligence or willful misconduct.

22. The retention of Jefferies as investment banker to the Committee is necessary and in the best interest of the Debtors' estates.

### Fee Application and Compensation

23. Jefferies has indicated to the Committee that it is not the general practice of investment banking firms to keep detailed time records similar to those customarily kept by attorneys. Jefferies' restructuring professionals, when formally retained in chapter 11 cases, and when required by local rules, do, and in these chapter 11 cases will, keep time records in one-hour increments describing their daily activities and the identity of persons who performed such tasks. Also, Jefferies will supplement this information with a list of the non-restructuring professionals who assist the restructuring department on this matter but who do not, as a matter of general practice, keep the records in the same manner. In addition, apart from the time recording practices described above, Jefferies' restructuring personnel do not maintain their time

records on a "project category" basis. The Committee has been advised that to have Jefferies recreate the time entries for its restructuring personnel and require its non-restructuring personnel to record its time as prescribed by the Local Rules would be, in each case, unduly burdensome and time-consuming. As such, the Committee submits that the detailed time descriptions that Jefferies' restructuring personnel will provide should be sufficient for any review of the time entries in connection with a subsequent application for compensation.

24. Except as otherwise provided herein, Jefferies intends to apply to the Court for payment of compensation and reimbursement of expenses in accordance with applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the guidelines promulgated by the United States Trustee for and the Local Rules and orders of this Court, and pursuant to any additional procedures that may be or have already been established by the Court in these cases.

25. In the spirit of the foregoing, the Committee has asked for, and Jefferies has agreed to, additional conditions and procedures in connection with the allowance and payment of compensation and the reimbursement of expenses sought in connection with this Amended Application, in substantially the same form negotiated with, or otherwise agreeable to, the United States Trustee and recently approved by this Court in PSINet Inc., et al., Case No. 01-13213 (Bankr. S.D.N.Y. July 11, 2001), which provides for the following, notwithstanding anything to the contrary in the Jefferies Engagement Letter:

>    a. the fees and expenses described in the Jefferies Engagement Letter (including any amounts sought in connection with the Indemnity under, and subject to, paragraph 31) will in all cases be

11

subject to approval of the Court under Section 328(a)[4] of the Bankruptcy Code, as incorporated in Section 330 of the Bankruptcy Code, upon a proper application by Jefferies in accordance with Sections 328(a), 330 and 331 of the Bankruptcy Code, Bankruptcy Rule 2016, the fee and expense guidelines established by the U.S. Trustee, the Local Rules, and the orders of the Court, <u>provided</u>, <u>however</u>, that, in accordance with the Jefferies Engagement Letter, the U.S. Trustee retains all rights to object to Jefferies' interim and final fee applications (including expense reimbursement) on any grounds including, without limitation, the reasonableness standard provided for in section 330 of the Bankruptcy Code;

b. any and all fees will be paid to Jefferies on an interim basis only upon specific approval from the Court or in accordance with any other procedures for the compensation of professionals established by the Court in these cases, such as the procedures proposed in the Motion of the Debtors for an Administrative Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Professionals and Committee Members (the "Compensation Procedures Motion"); and

---

[4] <u>See</u>, <u>In re Int'l Gypsum Co.</u>, 123 F.2d 861 (5th Cir. 1997) (concerning pre-approval of professional fees pursuant to § 328(a) of the Bankruptcy Code).

c. any fees or expenses paid to Jefferies but disapproved by the Court will be promptly returned by Jefferies to the Debtors' estates.

Such additional procedures and conditions are hereinafter referred to as the "Additional Procedures".

26. The Fee Structure is comparable to those generally charged by financial advisory and investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of court, and reflect a balance between a fixed, monthly fee, and a contingency amount which are tied to the consummation of the services to be performed as contemplated in the Jefferies Engagement Letter.

27. The hours worked, the results achieved and the ultimate benefit to the Committee of the work performed by Jefferies in connection with this engagement may vary and the Committee and Jefferies have taken this into account in setting the above fees.

28. The Committee acknowledges and agrees that Jefferies' restructuring capabilities, mergers and acquisitions expertise as well as its capital markets knowledge, financing skills, and automotive industry knowledge, some or all of which may be required by the Committee during the term of Jefferies' engagement hereunder, were important factors in determining the Fee Structure and that the ultimate benefit to the Committee from Jefferies' services hereunder could not be measured merely by reference to the number of hours to be expended by Jefferies' professionals in the performance of such services.

29. The Committee also acknowledges and agrees that the Fee Structure has been agreed upon by the parties in anticipation that a substantial commitment of professional time and

effort will be required of Jefferies and its professionals hereunder, and in light of the fact that such commitment may foreclose other opportunities for Jefferies and that the actual time and commitment required of Jefferies and its professionals to perform its services hereunder may vary substantially from week to week or month to month, creating "peak load" issues for the firm.

30. In sum, in light of the foregoing and given the numerous issues which Jefferies may be required to address in the performance of its services hereunder, Jefferies' commitment to the variable level of time and effort necessary to address all such issues as they arise, and the market prices for Jefferies' services for engagements of this nature in an out-of-court context, the Committee acknowledges and agrees that the Fee Structure is both fair and reasonable under the standards set forth in 11 U.S.C. § 328(a). All compensation and expenses will be sought in accordance with section 328(a) of the Bankruptcy Code, as incorporated in sections 330 and 331 of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules and orders of the Court.

### **The Indemnity**

31. As mentioned above in paragraph 22 and as set forth the Jefferies Engagement Letter, the Committee believes that the Debtors and their estates should provide Jefferies and the other Indemnified Persons (as that term is defined therein) with an indemnity. The Committee has requested that the indemnification provisions of the Jefferies Engagement Letter be modified to reflect, in substantially the same form, indemnification provisions negotiated with, or otherwise agreeable to, the United States Trustee and approved by the Courts including in the following cases heard in this District: <u>In re Nextwave Personal Communications, Inc. et al</u>. Case No. 98-21529 (ASH) (Bank S.D.N.Y. Oct. 1, 2001) and <u>In re PSINet Inc., et al</u>, Case

No 01-013213 (REG) (Bankr. S.D.N.Y. July 11, 2001). Jefferies having so agreed, the Committee and Jefferies seek approval of the indemnification provisions in the Jefferies Engagement Letter, subject to the following:

> a. all requests of Indemnified Persons for payment of indemnity, contribution or otherwise pursuant to the indemnification provisions of the Jefferies Engagement Letter shall be made by means of an interim or final fee application and shall be subject to review by the Court to ensure that such payment conforms to the terms of the Jefferies Engagement Letter, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and the orders of this Court, and is reasonable based upon the circumstances of the litigation or settlement in respect of which indemnity is sought, subject to the condition that in no event shall an Indemnified Person be indemnified or receive contribution in the case of bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence or willful misconduct on the part of that or any other Indemnified Person;
>
> b. in no event shall an Indemnified Person be indemnified or receive contribution or other payment under the indemnification provisions of the Jefferies Engagement Letter if the Debtors, their estates, or the Committee assert a claim for, and the Court determines by final order that such claim arose out of, bad-faith, self-dealing, breach of fiduciary duty, if any, gross negligence, or

>willful misconduct on the part of that or any other Indemnified Person; and

>c. in the event an Indemnified Person seeks reimbursement for attorneys' fees from the Debtors pursuant to the Jefferies Engagement Letter, the invoices and supporting time records from such attorneys shall be included in Jefferies' own interim and final fee applications, and such invoices and time records shall be subject to the United States Trustee's guidelines for compensation and reimbursement of expenses and the approval of the Bankruptcy court under the standards of section 330 of the Bankruptcy Code without regard to whether such attorney has been retained under section 1103 of the Bankruptcy Code.

The indemnity set forth in full in the Jefferies Engagement Letter as modified by the subparagraphs in this paragraph 31 is hereinafter referred to as the "Indemnity".

32. The Indemnity is a reasonable term and condition of the Jefferies engagement. See, In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000); In re AI Realty Marketing of N.Y., Inc., (In re Sunbeam), No. 01-40291 (AJG) (Bankr. S.D.N.Y. April 17, 2001). While there are no standards of reasonableness in terms of retentions in bankruptcy, courts focus on who provides the services and the cost of comparable services in a non-bankruptcy context. See, In re Busy Beaver Building Ctrs., Inc., 19 F.3d 833, 848-849 (3rd Cir. 1994). Unlike the market for other professionals that a creditors' committee may retain, indemnification is a standard term of the market for investment bankers and financial advisors.

In fact, the Indemnity is comparable to those generally obtained by financial advisory and investment banking firms of similar stature to Jefferies and for comparable engagements, both in and out of court.

**Engagement Under Section 328 Is Reasonable and Appropriate Under the Circumstances**

33. Section 328 of the Bankruptcy Code provides, in relevant part, that a committee "with the court's approval, may employ or authorize the employment of a professional person under section 327 . . . on any reasonable terms and conditions of employment, including on a retainer, on an hourly basis, or on a contingent fee basis." 11 U.S.C. § 328(a). In other words, Congress intended to enable creditors' committees appointed in chapter 11 cases to retain professionals pursuant to agreed upon fee arrangements determined at the time of the court's approval of such professional's retention, subject to reversal only if the terms are found improvident in light of "developments not capable of being anticipated at the time of the fixing of" such fee arrangements. 11 U.S.C. § 328(a). See also Donaldson, Lufkin & Jenrette Corp. v. Nat'l Gypsum Co., 123 F.3d 861, 862-63 (5th Cir. 1997).

34. The Committee respectfully submits that the terms of the proposed retention are reasonable and based on the customary compensation charged by Jefferies and comparably skilled practitioners in matters outside and other than chapter 11 cases, as well as cases under chapter 11, and have been approved and implemented in not just this jurisdiction but also in chapter 11 cases elsewhere. Indeed, the entire engagement as set forth in the Jefferies Engagement Letter (as modified herein) is common within the industry and reflects what is considered to be "market" both in and out of chapter 11 proceedings, in each case, in light of Jefferies' experience in reorganizations and the scope of work to be performed pursuant to its retention. In particular, the Committee believes that the proposed fee structure creates a proper

17

balance between fixed Monthly Fees and the contingency Transaction Fee based on the success of the Restructuring. Accordingly, the Committee respectfully submits that the terms of the proposed engagement of Jefferies including, without limitation, the Fee Structure and the Indemnity should be approved.

35. For the reasons set forth in the Amended Application, section 328(a) therefore permits the Court to approve, on an interim basis, the terms of the proposed engagement of Jefferies as set forth in the Jefferies Letter Engagement (as modified herein) including the Monthly Fee portion of the Fee Structure and the Indemnity. Jefferies will seek approval on a final basis of the whole Fee Structure and the Indemnity on further notice to all known creditors of the Debtors.

## NOTICE

36. Notice of this Amended Application has been provided in accordance with the Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing (i) Omnibus Hearing Dates, (ii) Certain Notice, Case Management, and Administrative Procedures, and (iii) Scheduling an Initial Case Conference in Accordance with Local Bankr. R. 1007-2(e) entered by this Court on October 14, 2005 (Docket No. 245). In light of the nature of the relief requested, the Committee submits that no other or further notice need be given.

## NO NOVEL QUESTION OR PRIOR REQUEST

37. Because the legal points and authorities upon which this Amended Application relies are incorporated herein, the Committee respectfully request that the requirement of a memorandum of law, pursuant to Local Rule 9013-l(b), be deemed satisfied.

38. No prior request for the relief sought in this Amended Application (other than in the original application) has been made to this or any other Court.

[*Continued on Next Page*]

WHEREFORE, the Committee respectfully requests that the Court enter an order under sections 328(a) and 1103 of the Bankruptcy Code, substantially in the form attached hereto as Exhibit "B," approving, on an interim basis, the employment of Jefferies pursuant to the terms of the Jefferies Engagement Letter (as modified herein including, without limitation, the Additional Procedures) to perform the services described herein, and grant the Committee such other and further relief as is just.

Dated: New York, New York
February 17, 2006

THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF DELPHI CORPORATION ET AL.

By:/s/ Terry Zale
Flextronics International Asia-Pacific, Ltd.
Committee Co-Chairperson

By: /s/ David Daigle
Capital Research and Management Company
Committee Co-Chairperson