

Jefferies & Company, Inc.
520 Madison Avenue, 12th Floor
New York, NY 10022
*tel* 212.284.2300
www.jefco.com

**Engagement Letter**

December 19, 2005

**Official Committee of Unsecured Creditors
of Delphi Corporation, et al.**
c/o Latham & Watkins LLP
885 Third Avenue
New York, New York  10022

Attention: Robert J. Rosenberg, Esq.

Re: Financial Restructuring <u>Advisory Services</u>

      This agreement (the "<u>Agreement</u>") will confirm the arrangements under which Jefferies & Company, Inc. ("<u>Jefferies</u>") has been engaged by the Official Committee of Unsecured Creditors (the "<u>Committee</u>"), appointed in the bankruptcy cases (the "<u>Cases</u>") of Delphi Corporation and its debtor affiliates (collectively, the "<u>Debtors</u>"), which are now pending in the United States Bankruptcy Court for the Southern District of New York (the "<u>Bankruptcy Court</u>"), to act as financial restructuring advisor to the Committee in the Cases.

1.    <u>Services</u>.  In connection with the Cases, Jefferies will perform the following financial advisory services, among others, for the Committee: (a) become familiar, to the extent Jefferies deems appropriate, with and analyze the business, operations, assets, financial condition and prospects of the Debtors; (b) advise the Committee on the current state of the "restructuring market"; (c) assist and advise the Committee in examining and analyzing any potential or proposed strategy for restructuring or adjusting the Debtors' outstanding indebtedness, labor costs or capital structure, whether pursuant to a plan of reorganization, a sale of assets or equity under Section 363 of the Bankruptcy Code, a liquidation, or otherwise (the "<u>Restructuring</u>"), including, where appropriate, assisting the Committee in developing its own strategy for accomplishing a Restructuring; (d) assist and advise the Committee in evaluating and analyzing the proposed implementation of any Restructuring, including the value of the securities, if any, that may be issued under any plan of reorganization; and (e) render such other financial advisory services as may from time to time be agreed upon by the Committee and Jefferies, including but not limited to providing expert testimony, and other expert and financial advisory support related to any threatened, expected, or initiated litigation.  It is expressly agreed that,

NY\1094589.3

**Official Committee of Unsecured Creditors of Delphi Corporation, et al.**
December 19, 2005
Page 2

other than as set forth above, Jefferies will not evaluate or attest to the Debtors' internal controls, financial reporting, illegal acts or disclosure deficiencies.

2.   Cooperation.

(a)   The Committee will furnish or use its best effort to cause the Debtors to furnish Jefferies with all materials and information regarding the business and financial condition of the Debtors which the Committee and/or the Debtors believe are relevant to any Restructuring or which Jefferies requests (all such information gathered or furnished being the "Information"). The Committee will or will use its best effort to cause the Debtors to advise Jefferies promptly of the occurrence of any event or any other change in fact or circumstance prior to the closing of any Restructuring upon which Jefferies formed part or all of its opinions, advice, or conclusions, or which could reasonably be expected to result in some or all of the Information being incorrect, inaccurate, or misleading.

(b)   Jefferies (i) will be relying on the Information and on information available from generally recognized public sources, without having independently verified the accuracy or completeness of the same, (ii) does not assume responsibility for the accuracy or completeness of any such information and data, (iii) will not make an appraisal of any assets or liabilities of the Debtors (provided that Jefferies will, if requested by the Committee, conduct a going concern valuation of the Debtors in accordance with standard investment banking practices), and (iv) retains the right to perform due diligence during the course of this engagement.

3.   Use of Name, Advice, etc.

(a)   The Committee agrees and will use its best efforts to cause the Debtors to agree that any reference to Jefferies in any public release, communication, or other material by the Committee (other than pleadings or other documents filed with the Bankruptcy Court containing non-substantive references to Jefferies) is subject to Jefferies' prior written approval, which may be given or withheld in its sole discretion and, if given, will expire immediately upon the termination of Jefferies' services hereunder. If Jefferies resigns prior to the dissemination of any such public release, communication or material, no reference shall be made therein to Jefferies, despite any prior written approval that may have been given therefor. No statements made or advice rendered by Jefferies in connection with the services performed by Jefferies pursuant to this Agreement will be quoted by, nor will any such statements or advice be referred to in, any public communication, whether written or oral, prepared, issued or transmitted, directly or indirectly, by the Committee or the Debtors without the prior written authorization of Jefferies, which may be given or withheld in its sole discretion, except to the extent required by law (in which case the appropriate party shall so advise Jefferies in writing prior to such use and shall consult with Jefferies with respect to the form and timing of disclosure).

NY\1094589.3

**Official Committee of Unsecured Creditors of Delphi Corporation, et al.**
December 19, 2005
Page 3

(b)   Jefferies' advice is solely for the use and information of the Committee, and is only to be used in considering the matters to which this Agreement relates. Such advice may not be relied upon by any other entity including, but not limited to, any member of the Committee in its individual capacity, any other security holder, employee or creditor of the Debtors and may not be used or relied upon for any other purpose.

(c)   The Committee acknowledges that Jefferies will act as an independent contractor hereunder, and that Jefferies' responsibility to the Committee is solely contractual in nature and that Jefferies does not owe the Committee, or any other person or entity, any fiduciary or similar duty as a result of its engagement hereunder or otherwise. Jefferies and the Indemnified Persons (as defined in Schedule A hereto) shall not be deemed agents or fiduciaries of the Committee, any of its members, or the Debtors, and will not have, nor be held out to third parties as having, the authority to legally bind any of the foregoing.

4.   <u>Compensation</u>.   The Committee agrees to promptly seek approval of the following:

(a)   The Debtors' estates shall pay to Jefferies a monthly fee (the "<u>Monthly Fee</u>") equal to $175,000 per month. If this Agreement becomes effective on a day other than the first day of the month, Jefferies will be paid a Monthly Fee pro rated from the Effective Date (as defined below) of this Agreement to the end of the first month. Each Monthly Fee will be fully accrued, due and payable on the first day of each month (subject to Bankruptcy Court approval), provided, however, that the first Monthly Fee shall be payable on the date that this Agreement becomes effective. At any time during the term of this Agreement, the Committee may, in its sole discretion, require Jefferies to cease providing services in these cases for one or more consecutive calendar months, not to exceed three (3) months in the aggregate (a "<u>No Service Period</u>"). The Committee must provide Jefferies with at least 15 days' prior notice of the commencement of a No Service Period. Jefferies shall not be entitled to receive any Monthly Retainer with respect to a No Service Period. One-half (50%) of the aggregate Monthly Fees actually paid by the Debtors' estates commencing with the 19th Monthly Fee shall be credited against the Transaction Fee otherwise payable to Jefferies pursuant to Section 4(b).

(b)   In addition, in consideration of the services rendered by Jefferies hereunder, the Debtors' estates shall pay to Jefferies a transaction fee (the "<u>Transaction Fee</u>") in an amount equal to: (i) 0.50% of Total Consideration (as defined below), if any, received by unsecured creditors in the Cases greater than $0.50 up to and including $0.75 per $1.00 of allowed claim, and (ii) 0.75% of Total Consideration, if any, received by unsecured creditors in the Cases greater than $0.75 per $1.00 of allowed claim. The Transaction Fee shall not be less than $2 million or greater than $10 million (the "<u>Cap</u>"), however, Jefferies reserves the right to request a modification or waiver of the Cap. The Transaction Fee is fully earned and accrued upon approval of this Agreement by the Bankruptcy Court in accordance with Section 8 below, and is due and payable on the earliest of (i) the date of receipt of initial distributions by unsecured creditors in the

**Official Committee of Unsecured Creditors of Delphi Corporation, et al.**
December 19, 2005
Page 4

Cases, (ii) the effective date of the Plan, or (iii) solely with respect to the portion of the Transaction Fee payable in publicly traded securities, on the seventy-first trading day after the effective date of the Plan; provided, however, that any portion of the Transaction Fee arising from any contingent payments shall be due and payable on the date such contingent payment is made to unsecured creditors.

For the purposes hereof, "Total Consideration" shall mean the total aggregate consideration paid by the Debtors on account of allowed unsecured claims against the Debtors pursuant to a plan or plans of reorganization in the Cases (including any amounts in escrow), but excluding any unsecured claims of, and consideration paid by the Debtors on account of claims of, the Pension Benefit Guaranty Corporation (the "PBGC") or any assignee of the PBGC. Total Consideration shall include, without limitation: (i) cash; (ii) notes, securities and other property; (iii) payments made in installments; and (iv) contingent payments (whether or not related to future earnings or operations). For purposes of computing any fees payable to Jefferies hereunder, non-cash consideration shall be valued as follows: (x) publicly traded securities shall be valued at the ten day volume weighted average price (as reported in The Wall Street Journal) commencing on the sixty-first trading day after the closing of the transaction and (y) any other non-cash consideration shall be valued at the fair market value thereof on the day prior to closing as determined in good faith by the Committee and Jefferies. If the parties are unable to agree on the value of any other property, its value will be determined by arbitration in a manner consistent with any order entered by the Bankruptcy Court and in accordance with the provisions of paragraph 11 of this Engagement Letter. Each party will pay its own costs in connection with the arbitration, and the cost of the arbitration itself will be borne equally by the parties.

To the extent that the Total Consideration to unsecured creditors in the Cases consists of cash consideration, then the Transaction Fee shall be payable in cash. To the extent that the Total Consideration consists of non-cash consideration, then the Transaction Fee described herein may be paid in like consideration, at the Committee's sole discretion.

(c)    The Committee acknowledges that in light of Jefferies' substantial experience and knowledge in the restructuring market, the uncertain nature of the time and effort that may be expended by Jefferies in fulfilling its duties hereunder, the opportunity cost associated with undertaking this engagement, and the "market rate" for professionals of Jefferies' stature in the restructuring market generally, the fee arrangement hereunder is just, reasonable and fairly compensates Jefferies for its services.

5.    Expenses. In addition to any fees that may be paid to Jefferies hereunder, whether or not any Restructuring occurs, the Committee shall cause the Debtors' estates to reimburse Jefferies, in accordance with the terms of any applicable orders of the Bankruptcy Court, for all out-of-pocket expenses (including reasonable fees and expenses of its counsel, travel and lodging expenses, word processing charges, messenger and

NY\1094589.3

**Official Committee of Unsecured Creditors of Delphi Corporation, et al.**
December 19, 2005
Page 5

duplication services, facsimile expenses and other customary expenditures) incurred by Jefferies in connection with the engagement contemplated hereunder.

6.  Termination. Jefferies' engagement hereunder will run from the date of Jefferies' selection by the Committee, subject to approval by an order of the Bankruptcy Court that is acceptable to Jefferies in its sole and absolute discretion (the "Effective Date"), to the earlier of the date on which (A) each of the Cases is either (i) dismissed, (ii) converted to cases under chapter 7 of the Bankruptcy Code, or (iii) subject to the Plan that has been confirmed by the Bankruptcy Court and has become effective, or (B) Jefferies' services hereunder are terminated by written notice by either Jefferies or the Committee on fifteen days' notice to the other. Upon any termination of this Agreement, the Debtors' estates shall pay Jefferies any accrued but unpaid fees hereunder, and shall reimburse Jefferies for any unreimbursed expenses that are reimbursable hereunder. In the event Jefferies' services hereunder are terminated by the Committee pursuant to clause (B) above, and a Restructuring is completed within one year of such termination, then the Debtors' estates shall pay Jefferies in cash, the Transaction Fee. Upon termination of this Agreement for any reason, Schedule A to this Agreement, including the indemnity and contribution provisions therein, and the provisions of Sections 3-5, 6, 7, 9, and 11-15 of this Agreement shall remain operative and in full force and effect, and shall be binding upon, and shall inure to the benefit of, any successors, assigns, heirs and personal representatives of the Debtors, their estates, the Committee, Jefferies, and the Indemnified Persons, and any chapter 7 trustee appointed in the Cases.

7.  Indemnification, etc. As further consideration under this Agreement, the Debtors shall indemnify and hold harmless the Indemnified Persons (as defined in Schedule A) in accordance with Schedule A. The terms and provisions of Schedule A are incorporated by reference herein, constitute a part hereof and shall survive any termination or expiration of this Agreement.

8.  Bankruptcy Court Approval. The Committee shall use its reasonable best efforts to obtain prompt approval of this Agreement, pursuant to sections 328 and 1103 of the Bankruptcy Code, from the bankruptcy court or district court having jurisdiction and presiding over the Cases (the "Bankruptcy Court"). Such approval shall provide for retention of Jefferies effective as of October 18, 2005, shall incorporate all of the terms and conditions herein (explicitly including, but not limited to, the acknowledgements and obligations of the Debtors' estates set forth in Sections 2-5, 6, 7, 11-15, and Schedule A), shall bind the Debtors' estates to such terms and conditions as if the Debtors were a signatory hereto, and shall provide that Jefferies' compensation shall be subject to the standard of review provided for in section 328(a) of the Bankruptcy Code, and not subject to any other standard of review, including the standard of review under section 330 of the Bankruptcy Code. The Committee agrees that the application to retain Jefferies pursuant hereto, and the proposed interim and final orders in connection therewith, will be subject to the prior approval of Jefferies in its sole and absolute discretion, and agrees that this Agreement (except for obligations under Schedule A hereto) shall be null and void and Jefferies shall have no obligations hereunder unless a

NY\1094589.3

final order, no longer subject to appeal, rehearing, reconsideration or petition for certiorari, which is acceptable to Jefferies in its sole and absolute discretion, is entered by the Bankruptcy Court.

Notwithstanding the Debtors' obligations hereunder to pay the fees and expenses of Jefferies, to indemnify Jefferies and to provide Jefferies with information, it is understood and agreed that Jefferies' sole and exclusive client is the Committee, and Jefferies will in no circumstance be deemed to be an advisor to or have any obligation to any other party.

9. No Assurances; Other Transactions; Disclaimer.

(a) This Agreement does not constitute a commitment or obligation by Jefferies or any of its affiliates to provide any financing which may be required or advisable in connection with any Restructuring. By signing this Agreement, the Committee expressly acknowledges that Jefferies does not guarantee, warrant or otherwise provide assurance that the Debtors will be able to implement or consummate any Restructuring or achieve any other result.

(b) The Committee acknowledges that Jefferies Group, Inc. (the parent of Jefferies) and its subsidiaries, and affiliates (collectively, the "Jefferies Group") are involved in a wide range of investment banking and other activities (including investment management, corporate finance and securities issuing, trading and research) from which conflicting interests, or duties, may arise. In addition, the Committee acknowledges that certain entities within the Jefferies Group, including Jefferies, are registered as broker-dealers under the Securities Exchange Act of 1934, as amended, and, in the ordinary course of business, each such broker-dealer, including Jefferies, effects transactions for its own account or for the accounts of customers. In connection with these activities, such broker-dealers may, from time to time, effect transactions in securities, including securities of the Debtors, of the members of the Committee, of other creditors of the Debtors and of potential participants in any Restructuring, and may at any time hold a long or short position in such securities. The Committee further acknowledges that certain of these broker-dealers, including Jefferies, through their research departments, may from time to time publish research reports or other materials or provide research recommendations, the substance and/or timing of which may conflict with the views or advice of the members of Jefferies' investment banking department, and may have an adverse effect on the Committee's interests in connection with the Restructuring or otherwise. Jefferies' investment banking department is managed separately from its research department, and does not have the ability to prevent such occurrences.

Each entity which provides or will provide services to the Committee contemplated by this Agreement (the "Committee Personnel") maintains and will continue to maintain "information barriers" between the division containing Committee Personnel and the other departments of such entity. Without limiting the generality of the foregoing, Jefferies (which will primarily employ Committee Personnel) maintains and will continue to maintain "information barriers" between its investment banking

**Official Committee of Unsecured Creditors of Delphi Corporation, et al.**
December 19, 2005
Page 7

department (in which the Committee Personnel are employed) and each of its sales and trading and research department. As used herein, the term "information barrier" means policies and procedures maintained by such entity within the Jefferies Group to prevent the passage of communication of material non-public information concerning a client or the activities of such entity from the investment banking department to any other department within such entity, including, but not limited to, the sales, trading, and research department, and vice versa. Accordingly, information that is held elsewhere within the Jefferies Group, but of which none of the Committee Personnel actually has knowledge (or without breach of internal procedures could properly obtain knowledge), will not for any purpose be taken into account in determining Jefferies' responsibilities to the Committee under this Agreement. Information obtained by the Committee Personnel in the course of its performing its services to the Committee pursuant to this Agreement will not become available for any purposes to any other personnel within any entity within the Jefferies Group. Neither Jefferies nor any other part of the Jefferies Group will have any duty to disclose to the Committee or any other party, or utilize for the Committee's benefit, any non-public information acquired in the course of providing services to any other person, engaging in any transaction (for its own account or otherwise) or otherwise carrying on its business.

10. <u>Construction and Governing Law</u>. This Agreement, together with Schedule A attached hereto and made part hereof, incorporates the entire understanding of the parties and supersedes all previous agreements relating to the subject matter hereof should they exist. This Agreement and any issue arising out of or relating to the parties' relationship hereunder shall be governed by, and construed in accordance with, the laws of the State of New York, without regard to principles of conflicts of law.

11. <u>Arbitration</u>. Any dispute, claim or controversy directly or indirectly relating to or arising out of this Agreement, the termination or validity hereof, any alleged breach of this Agreement or the engagement contemplated hereby (any of the foregoing, a "<u>Claim</u>") shall be brought in the Bankruptcy Court. If the Bankruptcy Court declines jurisdiction over any such matter, or if the reference is withdrawn to the district court, the parties agree that any Claim shall be submitted to JAMS/ENDISPUTE, or its successor, in New York, New York, for mediation; and if the matter is not resolved through mediation, then it shall be submitted for final and binding arbitration in front of a panel of three arbitrators with JAMS/ENDISPUTE in New York, New York under the JAMS/ENDISPUTE Comprehensive Arbitration Rules and Procedures (with each of Jefferies and the plaintiff choosing one arbitrator, and the chosen arbitrators choosing the third arbitrator). The arbitrators shall, in their award, allocate all of the costs of the arbitration (and the mediation, if applicable), including the fees of the arbitrators and the reasonable attorneys' fees of the prevailing party, against the party who did not prevail. The award in the arbitration shall be final and binding. The arbitration shall be governed by the Federal Arbitration Act, 9 U.S.C. §§ 1–16, and judgment upon the award rendered by the arbitrators may be entered by any court having jurisdiction thereof. The Debtors and the Committee agree and consent to personal jurisdiction, service of process and

**Official Committee of Unsecured Creditors of Delphi Corporation, et al.**
December 19, 2005
Page 8

venue in any federal or state court within the State of New York in connection with any action brought to enforce an award in arbitration.

12.    Payments.  All payments to be made to Jefferies hereunder shall be the joint and several liability of each of the Debtors' estates in the Cases, and, unless otherwise agreed by Jefferies in its sole and absolute discretion, shall be made in cash by wire transfer of immediately available U.S. funds, without deduction for any tax, subject to any necessary Bankruptcy Court approval.  Except as expressly set forth herein, no fee payable to Jefferies hereunder shall be credited against any other fee due to Jefferies.  Subject to Bankruptcy Court approval, the obligation of the Debtors' estates to pay any fee or expense set forth herein shall be absolute and unconditional and shall not be subject to reduction by way of setoff, recoupment or counterclaim.

13.    Announcements.  The Committee and the Debtors agree that Jefferies may, following any Restructuring, place an announcement in such newspapers, electronic media and periodicals as it may choose, stating Jefferies' role and other material terms of the Restructuring.  Jefferies shall be entitled to identify the Committee and use the Debtors' name and logo, if any, in connection therewith.  The Committee agrees, and will use its reasonable best efforts to cause the Debtors to agree, that any press release it may issue announcing the Restructuring will, at Jefferies' request, contain a reference to Jefferies' role in the Restructuring.

14.    Notices.  Notice given pursuant to any of the provisions of this Agreement shall be in writing and shall be mailed or delivered (a) if to the Committee, at the address set forth above, and (b) if to Jefferies, at 520 Madison Avenue, 12th Floor, New York, New York 10022, Attention: General Counsel, with a copy to Milbank, Tweed, Hadley & McCloy LLP, One Chase Manhattan Plaza, New York, New York 10005, Attention: Susheel Kirpalani.

15.    Miscellaneous.  This Agreement incorporates the entire agreement between the parties with respect to the subject matter hereof, and may not be amended or modified except in writing signed by each party hereto, subject to any necessary Bankruptcy Court approval. If any provision hereof shall be determined to be invalid or unenforceable in any respect, such determination shall not affect such provision in any other respect nor any other provision hereof. Headings used herein are for convenience of reference only and shall not affect the interpretation or construction of this Agreement.  This Agreement may be executed in one or more facsimile counterparts, each of which will be deemed to be an original and all of which together will be deemed to be one and the same document.

16.    Patriot Act.  Jefferies hereby notifies the Debtors, the Committee, and the Committee's members that pursuant to the requirements of the USA PATRIOT Act (the "Patriot Act"), Jefferies may be required to obtain, verify and record information that identifies the Debtors, the Committee and the members of the Committee in a manner that satisfies the requirements of the Patriot Act. This notice is given in accordance with the requirements of the Patriot Act.

NY\1094589.3

Official Committee of Unsecured Creditors of Delphi Corporation, et al.
December 19, 2005
Page 9

Please sign and return an original and one copy of this letter to the undersigned to indicate your acceptance of the terms set forth herein.

                Sincerely,

                JEFFERIES & COMPANY, INC.

                By _____
                    Name: William Q. Derrough
                    Title: Managing Director

Accepted and Agreed:

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF DELPHI CORPORATION, ET AL.**

By _____
    Name: DAVID DAIGLE
    Title: Chairperson


By _____
    Name:
    Title: Chairperson

**Official Committee of Unsecured Creditors of Delphi Corporation, et al.**
December 19, 2005
Page 9

Please sign and return an original and one copy of this letter to the undersigned to indicate your acceptance of the terms set forth herein.

<div style="text-align: right;">
Sincerely,

**JEFFERIES & COMPANY, INC.**

By _____
Name: William Q. Derrough
Title: Managing Director
</div>

Accepted and Agreed:

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS
OF DELPHI CORPORATION, ET AL.**

By _____
    Name:
    Title: Chairperson

By _____
    Name: TERRY R. ZALE
    Title: Chairperson

NY\1094589.3

**SCHEDULE A**

Reference is hereby made to the engagement letter attached hereto (as amended from time to time in accordance with the terms thereof, the "Agreement") between Jefferies & Company, Inc. ("Jefferies") and the Official Committee of Unsecured Creditors (the "Committee") appointed in the bankruptcy cases (the "Cases") of Delphi Corporation and its debtor affiliates (collectively, the "Debtors"), which are now pending in the United States Bankruptcy Court for the Southern District of New York. Unless otherwise noted, all capitalized terms used herein shall have the meanings set forth in the Agreement.

Any and all obligations and agreements of the Debtors under this Schedule A shall be equally applicable to, and binding upon, each of the Debtors' bankruptcy estates and any chapter 7 trustee appointed in any of the Debtors' bankruptcy cases.

As further consideration under the Agreement, the Debtors agree to indemnify and hold harmless Jefferies and its affiliates, and each of their respective officers, directors, managers, members, partners, counsel, employees and agents, and any other persons controlling Jefferies or any of its affiliates (collectively, "Indemnified Persons"), to the fullest extent lawful, from and against, and the Debtors agree that no Indemnified Persons shall have any liability to the Debtors or any of its owners, parents, affiliates, security holders or creditors for, any claims, liabilities, losses, damages and expenses (or actions in respect thereof), as incurred (collectively, "Losses"), related to or arising out of or in connection with Jefferies' services under the Agreement, any Restructuring or any proposed transaction contemplated by the Agreement, or any Indemnified Person's role in connection therewith, provided, however, that the Debtors shall not be responsible for any Losses of any Indemnified Person that are determined, by a final, non-appealable judgment by a court, or arbitral tribunal, to have resulted solely from such Indemnified Person's gross negligence, bad faith or willful misconduct.

Neither the Debtors nor the Committee shall settle or compromise, or consent to the entry of any judgment in, or otherwise seek to terminate, any pending or threatened action, claim, suit or proceeding in which any Indemnified Person is or may be a party, unless such Indemnified Person has given its prior written consent, or the settlement, compromise, consent or termination includes an express unconditional release of such Indemnified Person from all Losses arising out of such action, claim, suit or proceeding.

If for any reason (other than the gross negligence or willful misconduct of an Indemnified Person as provided above) the foregoing indemnity is unavailable to an Indemnified Person or insufficient to hold an Indemnified Person harmless, then the Debtors, to the fullest extent permitted by law, shall contribute to the amount paid or payable by such Indemnified Person as a result of such Losses in such proportion as is appropriate to reflect the relative fault of the Debtors and the Committee, as applicable, on the one hand, and the relative fault of Jefferies on the other, as well as any relevant equitable considerations. Notwithstanding the provisions hereof, the aggregate contribution of all Indemnified Persons to all Losses shall not exceed the amount of fees actually received by Jefferies with respect to the services rendered pursuant to the Agreement. Relative benefits to the Debtors and the Committee, as applicable, on the one hand, and to Jefferies, on the other hand, shall be deemed to be in the same proportion as the total transaction value of any Restructuring (or the total transaction value of any proposed Restructuring) to all fees actually received by Jefferies in connection with the Agreement.

The Debtors agree to reimburse the Indemnified Persons for all expenses (including, without limitation, fees and expenses of counsel) as they are incurred in connection with investigating, preparing, defending or settling any action or claim for which indemnification or contribution has or is reasonably likely to be sought by the Indemnified Person, whether or not in connection with litigation in which any Indemnified Person is a named party. If any of Jefferies' personnel appear as witnesses, are deposed or are otherwise involved in the defense of any action against Jefferies, the Committee, the Debtors, or any such entity's affiliates, officers, managers, directors or employees, the Debtors will pay Jefferies (i) with respect to each day or part thereof that one of Jefferies' professional personnel appears as a witness or is deposed and/or (ii) with respect to each day or part thereof that one of Jefferies' professional personnel is involved in the preparation therefore, (a) a fee of $4,000 per day for each such person with respect to each appearance as a witness or a deponent and (b) at a rate of $400 per hour with respect to each hour of preparation for any such appearance, and the Debtors will reimburse Jefferies for all reasonable out-of-pocket expenses incurred by Jefferies by reason of any of its personnel being involved in any such action, including but not limited to $400 per hour per person with respect to each hour of time spent responding to or relating to any other or further discovery requests.

The indemnity, contribution and expense reimbursement obligations set forth herein (i) shall be in addition to any liability the Debtors may have to any Indemnified Person at common law or otherwise, (ii) shall survive the expiration or termination of the Agreement or Jefferies' services thereunder, (iii) shall apply to any modification of

NY\1094589.3

**SCHEDULE A**      (cont'd)

Jefferies' engagement, and shall remain in full force and effect following the completion or termination of the Agreement, (iv) shall remain operative and in full force and effect regardless of any investigation made by or on behalf of Jefferies or any other Indemnified Person, (v) shall be binding on any successor or assign of the Debtors, including any chapter 7 trustee appointed in any of the Debtors' bankruptcy cases, the Committee and each of its members, and any successors or assigns thereof and (vi) shall inure to the benefit of any successor or assign of any Indemnified Person.

NY\1094589.3