Martin J. Bienenstock, Esq. (MB 3001)
Michael P. Kessler, Esq. (MK 7134)
Jeffrey L. Tanenbaum, Esq. (JT 9797)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007
     – and –
Robert B. Weiss, Esq.
Frank L. Gorman, Esq.
HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226-3506
Telephone: (313) 465-7000
Facsimile: (313) 465-8000
Attorneys for General Motors Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

| | |
|---|---|
| **In re** : | |
| : | **Chapter 11 Case No.** |
| : | |
| **DELPHI CORPORATION, <u>et</u> <u>al</u>.,** : | **05-44481 (RDD)** |
| : | |
| **Debtors.** : | **(Jointly Administered)** |
| : | |

-------------------------------------------------------------x

**NOTICE OF MOTION FOR ORDER DIRECTING**
**APPOINTMENT OF GENERAL MOTORS**
<u>**CORPORATION TO STATUTORY CREDITORS' COMMITTEE**</u>

       PLEASE TAKE NOTICE that on February 17, 2006, General Motors Corporation

("<u>General Motors</u>") filed its motion (the "<u>Motion</u>") for entry of an order directing the Office of

the United States Trustee (the "<u>U.S. Trustee</u>") to appoint General Motors to the Delphi Official

Committee of Unsecured Creditors (the "<u>Committee</u>").

PLEASE TAKE NOTICE that a hearing to consider approval of the Motion will
be held on **March 9, 2006 at 10:00 a.m. (New York Time)** (the "Hearing") before the
Honorable Robert D. Drain, United States Bankruptcy Judge, in Room 610 of the United States
Bankruptcy Court for the Southern District of New York, One Bowling Green, New York, New
York 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the relief
requested in the Motion shall be in writing, shall conform to the Bankruptcy Rules and the Local
Rules of the Bankruptcy Court, shall set forth the basis for the objection and the specific grounds
therefor, and shall be filed with the Court electronically in accordance with General Order M-
242 (General Order M-242 and the User's Manual for the Electronic Case Filing System can be
found at http://www.nysb.uscourts.gov, the official website for the United States Bankruptcy
Court for the Southern District of New York) by registered users of the Court's case filing
system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable Document
Format (PDF), WordPerfect, or any other Windows-based word processing format (with a hard
copy delivered directly to Chambers), and served in accordance with General Order M-242 upon:
(i) Weil, Gotshal & Manges LLP, attorneys for General Motors, 767 Fifth Avenue, New York,
New York 10153, Attention: Martin J. Bienenstock, Esq., Michael P. Kessler, Esq. and Jeffrey L.
Tanennbaum, Esq.; (ii) Honigman Miller Schwartz and Cohn LLP, attorneys for General Motors,
2290 First National Building, 660 Woodward Avenue, Detroit, Michigan 48226, Attention:
Robert B. Weiss, Esq. and Frank L. Gorman, Esq.; (iii) Delphi Corporation, 5725 Delphi Drive,
Troy, Michigan 48098, Attention: General Counsel; (iv) Skadden, Arps, Slate, Meagher & Flom
LLP, attorneys for the Debtors, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606,
Attention: John Wm. Butler, Jr., Esq.; (v) Shearman & Sterling LLP, special counsel to the

Debtors, 599 Lexington Avenue, New York New York 10022, Attention: Douglas P. Bartner, Esq.; (vi) Simpson Thacher & Bartlett LLP, counsel for the agent under the Debtors' prepetition credit facility, 425 Lexington Avenue, New York, New York 10017, Attention: Marissa Wesley, Esq.; (vii) Davis Polk & Wardell, counsel for the agent under the Debtors' postpetition credit facility, 450 Lexington Avenue, New York, New York 10017, Attention: Marlane Melican, Esq.; (viii) counsel to the Committee, and (ix) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10044, Attention: Alicia M. Leonhard, Esq., so as to be received by no later than **March 6, 2006** at **4:00 p.m. (New York Time)** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made in writing and timely filed and received by the Objection Deadline will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance with the procedures set forth herein, the Bankruptcy Court may enter a final order granting the Motion without further notice.

Dated:  February 17, 2006
      New York, New York

/s/ Michael P. Kessler w/ permission GT
Martin J. Bienenstock, Esq. (MB 3001)
Michael P. Kessler, Esq. (MK 7134)
Jeffrey L. Tanenbaum, Esq. (JT 9797)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

– and –

Robert B. Weiss, Esq.
Frank L. Gorman, Esq.
HONIGMAN MILLER SCHWARTZ
AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226-3506
Telephone: (313) 465-7000
Facsimile: (313) 465-8000

Attorneys for General Motors Corporation

Martin J. Bienenstock, Esq. (MB 3001)
Michael P. Kessler, Esq. (MK 7134)
Jeffrey L. Tanenbaum, Esq. (JT 9797)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007


– and –


Robert B. Weiss, Esq.
Frank L. Gorman, Esq.
HONIGMAN MILLER SCHWARTZ AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226-3506
Telephone: (313) 465-7000
Facsimile: (313) 465-8000

Attorneys for General Motors Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x
**In re**                                  :
                                           :        **Chapter 11 Case No.**
                                           :
**DELPHI CORPORATION, et al.,**            :        **05-44481 (RDD)**
                                           :
              **Debtors.**                 :        **(Jointly Administered)**
                                           :
-------------------------------------------------------------x

## MOTION FOR ORDER DIRECTING
## APPOINTMENT OF GENERAL MOTORS
## CORPORATION TO STATUTORY CREDITORS' COMMITTEE

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

General Motors Corporation ("General Motors"), as and for its motion (the

"Motion") for entry of an order directing the Office of the United States Trustee (the "U.S.

Trustee") to appoint General Motors to the Delphi Official Committee of Unsecured Creditors

(the "<u>Committee</u>"), respectfully represents:

<b><u>Jurisdiction</u></b>

1.      This Court has subject matter jurisdiction to consider this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409.

<b><u>Factual Background</u></b>

2.      On October 8, 2005 (the "<u>Commencement Date</u>") or October 14, 2005, Delphi Corporation ("<u>Delphi</u>") and certain of its subsidiaries and affiliates (collectively, the "<u>Debtors</u>") each commenced a case under chapter 11 of the Bankruptcy Code.  As set forth in the Court's order dated October 8, 2005, the Debtors' chapter 11 cases are jointly administered pursuant to Bankruptcy Rule 1015, and pending as Case No. 05-44481(RDD).

3.      The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

4.      The Debtors assert they employ more than 180,000 employees worldwide and had global 2004 revenues of approximately $28.6 billion and global assets as of August 31, 2005 of approximately $17.1 billion (based on aggregated consolidated financial data).

**A.      General Motors's Relationship with the Debtors**

5.      During the early 1990's, General Motors organized into an internal business sector various units responsible for the manufacture and supply of automotive component parts and systems for the production of General Motors vehicles.  This internal business sector eventually became known as the "Delphi Automotive Systems Group."  Consistent with certain automotive industry trends and marketplace considerations, General

Motors determined in late 1998 to separate the Delphi Automotive Systems Group from General

Motors, and to transfer that business to Delphi.  Following the formation and spin-off of Delphi

in 1998, shares of common stock of Delphi were offered for sale to the public on February 4,

1999.  General Motors retained ownership of the remainder of Delphi's equity until it completely

divested its equity interest in Delphi on May 28, 1999.

6.      In connection with the spin-off, General Motors and Delphi entered into a

series of complex and integrated agreements, including, without limitation, the Component

Supply Agreement, dated as of January 1, 1999 (the "Component Supply Agreement").  The

Component Supply Agreement obligated Delphi and General Motors to honor all existing supply

agreements (the "Existing Purchase Agreements"), whether formal or informal, as if Delphi and

General Motors were separate legal entities at the time such agreements were made.  The

Component Supply Agreement also provided the terms governing Delphi's retention of General

Motors' business for product programs commencing in the following three year period.  Since

the formation and spin-off of Delphi, General Motors and Delphi have entered into other

purchase agreements pursuant to which Delphi sells automotive parts and systems to General

Motors (together with the Existing Purchase Agreements, the "Purchase Agreements").[1]  In

2004, Delphi sales to General Motors aggregated approximately $15.4 billion.  See Delphi

Corporation, Annual Report (Form 10-K), at 23 (June 30, 2005).

**B.      General Motors' Prepetition Claims Against Delphi**

---

[1] Purchase Agreements are often for the life of a model, which could be a period of five to eight years of production. Production may commence one to three years after the date of the Purchase Agreement.  For example, a Purchase Agreement dated in 1999 may govern supply from 2001-2006.

7.     Pursuant to the general terms and conditions incorporated in all Purchase Agreements, Delphi warrants/guarantees the automotive parts and systems it provides to General Motors, and sells such automotive parts and systems to General Motors in accordance with certain pricing mechanisms.  As of the Commencement Date, General Motors had asserted prepetition warranty/product recall claims against Delphi aggregating approximately $100 million (the "Asserted Warranty Claims").  General Motors also asserted prepetition overpricing claims against Delphi aggregating approximately $7.5 million (the "Overpricing Claims").  In addition to the Asserted Warranty Claims and Overpricing Claims, General Motors has asserted and will in the ordinary course assert further warranty/product recall claims against Delphi in connection with automotive parts and systems delivered prior to the Commencement Date (the "Additional Warranty Claims" and together with the Asserted Warranty Claims, the "Warranty Claims").

8.     Pursuant to the U.S. Employee Matters Agreement, dated as of December 22, 1998, and attachments and supplements thereto between Delphi and General Motors, which was entered into in connection with Delphi's spin-off from General Motors, Delphi is liable to General Motors for certain costs associated with post-employment benefits ("OPEB") for certain employees who worked at Delphi and subsequently returned to and retired from General Motors (the "Flowback Employees").  The total amount of such OPEB obligations, which are currently accrued and Delphi is obligated to pay to General Motors between 2006 and 2014, is approximately $1.228 billion (the "OPEB Flowback Claims").  Delphi is required to make certain annual true-up payments to partially reimburse General Motors for such OPEB Flowback Claims (the "Annual OPEB Flowback Payments").  The next Annual OPEB Flowback Payment

in the amount of approximately $64 million is due from Delphi to General Motors on June 10, 2006.[2]

9.      Pursuant to the Master Separation Agreement, dated as of December 22, 1998, among other things, Delphi and the Debtors, jointly and severally, indemnified General Motors and its affiliates for all losses, claims, damages, liabilities, and actions (i) relating to liabilities assumed by or transferred to Delphi in connection with the spin-off and/or (ii) the conduct of the Debtors' business.  In connection with such indemnification, General Motors holds claims against the Debtors, including prepetition contingent claims (the "Indemnification Claims").

10.      In connection with 1999 labor negotiations, General Motors and the United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW") entered into an agreement (the "Benefit Guarantee Agreement") pursuant to which General Motors agreed, subject to various conditions, to be secondarily liable for a portion of certain obligations if, under certain circumstances, Delphi were to reduce the scope and level of pension benefits, retiree health benefits, or retiree life insurance benefits provided to certain of its UAW-represented employees.  In connection with the Benefit Guarantee Agreement, Delphi and General Motors entered into an indemnity agreement pursuant to which, among other things, Delphi indemnified General Motors and its affiliates for any losses and liabilities relating to the Benefit Guarantee (the "Indemnity Agreement").  In connection with the Indemnity Agreement, General Motors holds claims against Delphi, including prepetition contingent claims (the "Benefit Guarantee Claims").

---

[2] The OPEB Flowback Claims and Annual OPEB Flowback Payments are subject to revision due to additional Flowback Employees and updates to actuarial assumptions.

11.     If, pursuant to section 365(a) of the Bankruptcy Code, Delphi is allowed to reject one or more Purchase Agreements,[3] or other executory contracts and/or leases to which General Motors is a party, General Motors may have, among other rights, prepetition rejection damage claims against Delphi pursuant to section 502(g) of the Bankruptcy Code (the "Rejection Damage Claims").

12.     General Motors also holds various other liquidated, unliquidated, and/or contingent prepetition claims against the Debtors' estates including, without limitation, unpaid obligations under certain legacy agreements, environmental and asbestos related claims, and product liability claims (the "Other Claims").

13.     As a result of prepetition shipment of goods from Delphi to GM for which the accounts payable were not yet due as of the Commencement Date, GM also holds setoff rights for a portion of its claims (against the Debtors and their affiliates) against GM's prepetition payable pursuant to sections 506 and 553 of the Bankruptcy Code and applicable non-bankruptcy law (the "Setoff Claims" and together with the Warranty Claims, the Overpricing Claims, the OPEB Flowback Claims, the Indemnification Claims, the Benefit Guarantee Claims, the Rejection Damage Claims, the Other Claims, the Setoff Claims, and any other prepetition claims of General Motors against the Debtors, the "General Motors Prepetition Claims").  As a result of the General Motors Prepetition Claims, General Motors holds the largest claim against the Debtors' estates.[4]

---

[3] For reasons outside the scope of this motion, Delphi should not obtain approval for such rejections, the rejections would not benefit the Delphi estate, and, in any event, the rejections would entail consideration of a series of integrated agreements.

[4] General Motors was listed by the Debtors as the creditor holding the largest claim against them on their "Consolidated List of Creditors Holding the Fifty Largest Unsecured Claims," which was annexed to the Debtors'

C.      **The Committee Appointment and Formation**

14.     On October 17, 2005, nine days after the Commencement Date, the U.S.

Trustee convened an organizational meeting (the "Organizational Meeting") of the Debtors'

unsecured claimholders holding the largest claims against the Debtors' estates to form a statutory

creditors' committee and the Committee was appointed.  The seven members of the Committee

are: (i) Capital Research and Management Company (an institutional investor); (ii) Electronic

Data Systems Corp. (a trade creditor); (iii) Flextronics International Asia-Pacific, Ltd. (a trade

creditor); (iv) Freescale Semiconductor, Inc. (a trade creditor); (v) General Electric Company (a

trade creditor); (vi) IUE-CWA (a labor union representative) and (vii) Wilmington Trust

Company, as indenture trustee (the indenture trustee for the senior notes).

15.     Prior to and during the Organizational Meeting, the U.S. Trustee solicited

creditors' expression of interest in serving as members of the Committee.  In connection

therewith, General Motors submitted a request to serve on the Committee.  General Motors was

not selected by the U.S. Trustee to serve on the Committee.  The UAW and the Pension Benefit

Guaranty Corp. (the "PBGC") also submitted requests to serve on the Committee and were also

not appointed.

16.     On October 20, 2005, the UAW wrote a letter to the U.S. Trustee seeking

reconsideration of the denial and requesting it be appointed as a Committee member.  On

October 21, 2005, the PBGC wrote a letter to the U.S. Trustee seeking the same relief as the

UAW.  In their respective letters, the UAW and PBGC each voiced concerns that the Committee

as configured did not adequately represent the creditor body.  On January 3, 2006, the UAW

---

chapter 11 petitions.  On November 21, 2005, General Motors filed its Notice of Status of Substantial Claimholder
setting forth the various General Motors Prepetition Claims.

filed a motion seeking appointment to the Committee. Thereafter, by agreement of the Debtors, the Committee, the UAW, the PBGC, and the U.S. Trustee, the UAW and PBGC were appointed as *ex officio* members of the Committee.

17.     As a result of the appointment of the UAW and the PBGC to the Committee, General Motors is the only major constituent in the chapter 11 cases not represented on the Committee. Accordingly, General Motors renewed its request to the U.S. Trustee requesting appointment to the Committee. Discussions in connection with the General Motors request were held among General Motors, the U.S. Trustee, the Debtors, and the Committee. Although General Motors was prepared to accept appointment to the Committee as an *ex officio* member and the U.S. Trustee and the Debtors did not oppose such an appointment, the Committee objected to any General Motors membership. As the U.S. Trustee was not prepared to appoint General Motors as a Committee member in any capacity without the consent of the Committee, General Motors is seeking relief from the Court.

## Relief Requested

18.     As set forth above, the debtor-creditor relationship between General Motors and Delphi is extensive. By this Motion, General Motors requests the Court enter an order directing the U.S. Trustee to appoint General Motors as a member of the Committee. The United Auto Workers have authorized General Motors to represent that the UAW supports GM's request to be added to the Committee.

## The Court is Authorized to Review
## Committee Appointments by the U.S. Trustee

19.     Section 1102 of the Bankruptcy Code governs the appointment of statutory committees in chapter 11 cases. Section 1102(a)(1) of the Bankruptcy Code provides

in relevant part that "as soon as practicable after the order for relief under chapter 11 of this title,

the United States trustee shall appoint a committee of creditors holding unsecured claims."  11

U.S.C. § 1102(a)(1).  Section 1102(b)(1) states that "[a] committee appointed under subsection

(a) of this section shall ordinarily consist of the persons, willing to serve, that hold the seven

largest claims against the debtor of the kinds represented on such committee."  11 U.S.C.

§ 1102(b)(1).

   20.  While the U.S. Trustee is vested with the initial administrative authority to

form and appoint creditors to committees,[5] pursuant to sections 1102(a)(2) and 105(a) of the

Bankruptcy Code, courts are vested with the authority, upon the motion of a party-in-interest, to

review the composition of committees.  See In re Enron, 279 B.R. 671, 684 (Bankr. S.D.N.Y.

2002) (section 1102(a)(2) of the Bankruptcy Code mandates that courts conduct an

"independent" review of the adequacy of committee representation); In re Barney's, Inc., 197

B.R. 431, 439 (Bankr. S.D.N.Y. 1996) (section 105(a) authorizes review of the U.S. Trustee's

committee appointment decisions); In re Texaco, Inc., 79 B.R. 560, 566 (Bankr. S.D.N.Y. 1987)

(section 1102(a)(2) of the Bankruptcy Code affords the court authority to order the expansion

---

[5] The 1986 amendments to the Bankruptcy Code transferred the administrative task of appointing creditors committees from the bankruptcy courts to the U.S. Trustee.  Prior to this statutory change, the courts appointed the creditors committee.  In transferring the appointment task to the U.S. Trustee, the 1986 Amendments also deleted the former section 1102(c) of the Bankruptcy Code, which provided that the court could change the composition of a committee if the membership did not adequately represent claims and interests in the case.  See In re Lykes Bros. Steamship Co., 200 B.R. 933, 939-40 (N.D. Fla. 1996) (describing the legislative changes to section 1102); see also In re Mercury Fin. Co., 240 B.R. 270, 275 (N.D. Ill. 1999) (quoting the repealed section 1102(c)).  While the legislative change caused some confusion regarding the court's authority to change the size of membership of a committee, the vast majority of courts considering the legislative change and current statutory provisions have concluded the 1986 Amendments did not vest sole and unreviewable appointment authority in the U.S. Trustee and did not eliminate the court's ability to change composition of a committee.  Notably, the transferring of an initial appointment authority to the U.S. Trustee is distinct from the issue of a court's authority to review the appointment. See Columbia Gas Sys., Inc., 133 B.R. 174, 175 (Bankr. D. Del. 1991) (the deletion of the former section 1102(c) was a "housekeeping matter" and "does not address" the issue of the court's power to review U.S. Trustee's selection process).

and elimination of a committee); see also In re Mercury Fin. Co. 240 B.R. 270, 277 (Bankr. N.D.

Ill. 1999) (adopting the "majority view" that courts have inherent authority under section 105 of

the Bankruptcy Code to conduct such a review); In re Dow Corning Corp., 194 B.R. 121, 132

(Bankr. E.D. Mich. 1996), rev'd on other grounds, 212 B.R. 258 (E.D. Mich. 1997) (courts have

the inherent power to review committee appointments); In re Value Merchants, Inc., 202 B.R.

280, 285 (E.D. Wis. 1996) (section 1102 authorizes courts to review the U.S. Trustee's

"administrative function" to assure adequacy of committee representation); In re Lykes Bros.,

200 B.R. at 939-40 (section 105(a) authorizes review of committee composition); In re Plabell

Rubber Prods., 140 B.R. 179, 180-81 (Bankr. N.D. Ohio 1992) (sections 1102(a) and 105(a) of

the Bankruptcy Code allow courts to review adequacy of committee representation); In re

Columbia Gas Sys., Inc., 133 B.R. 174, 175-76 (Bankr. D. Del. 1991) (courts may review U.S.

Trustee's refusal to appoint creditor to committee and may order "necessary or appropriate

relief" under section 105(a)); In re Public Serv. Co. of N.H., 89 B.R. 1014, 1020-21 (Bankr.

D.N.H. 1988) (orders expansion of committee and notes "the Court necessarily has the inherent

power to provide 'a lesser included remedy' of simply directing the expansion of the existing

committee").[6]

---

[6] While these chapter 11 cases are not governed by the Bankruptcy Abuse Prevention and Consumer Protection Act
of 2005 (the "Act"), the addition of section 1102(a)(4) under the Act provides further support that a court is
empowered to review the composition of a committee under a *de novo* standard.  In relevant part, section 1102(a)(4)
provides:

> On the request of a party in interest and after notice and a hearing, the court may
> order the United States trustee to change the membership of a committee
> appointed under this subsection, if the court determines that the change is
> necessary to ensure adequate representation of creditors or equity security
> holders.

11 U.S.C.§ 1102(a)(4).

21.      Rule 2007(c) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") provides further support for the court's authority to review the composition of a committee.[7]

### A Review of the Committee Composition
### Warrants General Motors' Inclusion on the Committee

22.      In exercising their power of review of committee composition, bankruptcy courts in this circuit have adopted the majority view that such review should be conducted *de novo*. See Enron, 279 B.R. at 684 (courts review adequacy of representation *de novo*); Texaco, 70 B.R. at 566 (applying a *de novo* standard of review after the administrative task of appointing the committee was performed); In re McLean Indus., Inc., 70 B.R. 852, 860-863 (Bankr. S.D.N.Y. 1987) (an abuse of discretion standard does not apply to U.S. Trustee's initial exercise of discretion because adequate representation is an issue of law that must be resolved judicially).

23.      Courts consider the following factors when reviewing the make-up of creditors' committee, and whether such composition constitutes adequate representation of the interests of the general unsecured claimholders of a debtor: (i) the nature of the case; (ii) the ability of the existing committee to function; and (iii) the standing and desires of the various constituencies. See Enron, 279 B.R. at 685; Dow Corning, 194 B.R. at 142. Courts consider

---

[7] Rule 2007(c) provides in relevant part that:

>      After a hearing on notice pursuant to subdivision (a) of this rule, the court shall direct the United States trustee to vacate the appointment of the committee and may order other appropriate action if the court finds that such appointment failed to satisfy the requirements of § 1102(b)(1) of the Code.

11 U.S.C. § 1102(b)(1).  Rule 2007(c) empowers a court to vacate the appointment of a pre-petition committee. However, the Advisory Committee noted that this rule does not preclude judicial review under Rule 2020 regarding the appointment of other committees.  See Advisory Committee Note to Rule 2007 (1991); Dow Corning Corp., 194 B.R. at 133 (noting that the Advisory Note supports the view that courts have the authority to review committee composition).

adequate representation on a case-by-case basis.  See Enron, 279 B.R. at 685.  All three factors

under these facts dictate the appointment of General Motors to the Committee.

**A.      The Nature of the Case Warrants
         General Motors' Appointment to the Committee**

24.      Courts consider the size and complexity of a case as a reason for multiple

committees if a single committee cannot adequately represent constituents' interest.  See Enron,

279 B.R. at 689.  Such factors are also relevant in the context of a single creditors' committee.

Especially in a large complex case, a single representative committee that adequately represents

all constituents is crucial to protect the interests of creditor constituencies and foster compromise

and resolution of creditor conflicts.  See id. at 689-90.  While Enron addressed this principle with

respect to the appointment of multiple committees, the principle remains the same: compromise

and resolution of creditor conflicts are beneficial to the debtor.

25.      These chapter 11 cases represent one of the largest public company

business reorganizations in terms of revenues and assets.  Moreover, these chapter 11 cases have

global reach as the Debtors contend they employ more than 180,000 employees worldwide and

have global 2004 revenues of approximately $28.6 billion and global assets as of August 31,

2005 of approximately $17.1 billion (based on aggregated consolidated financial data).  Given

the complexity and international reach of these chapter 11 cases, a single committee that

adequately represents all constituents will be beneficial as it will minimize unnecessary litigation

over issues that may be settled through compromise.

26.      Among the Debtors' creditors, the participation of General Motors, the

UAW, and the PBGC are essential and critical to any resolution of the Debtors' cases.  With the

appointment of the UAW and the PBGC to the Committee, General Motors is the only major

constituent without a seat at the Committee table.  Accordingly, the current configuration of the

Committee renders the Committee an adversary of General Motors rather than a statutory

representative of it.  Thus, the Committee does not provide General Motors adequate

representation.  Indeed, the Debtors provide the Committee with financial information the

Debtors refuse to provide General Motors, thereby creating the concomitant suspicions and

unlevel negotiating positions that only exacerbate the monumental problems that must be

resolved.  The Committee is aligned to work for unsecured claimholders, the PBGC, and the

unions, all of whom can benefit at the expense of General Motors.

27.     In addition to holding the largest claim, General Motors is by far the

Debtors' largest and most important customer.  Moreover, unlike the UAW and the PBGC,

which hold only contingent claims against the Debtors, General Motors, as set forth in detail

above, holds a myriad of large, fixed claims in addition to its contingent claims against Delphi.

Clearly the appointment of General Motors to the Committee and the presence of General

Motors on the Committee can help to facilitate a consensual resolution of these cases.  On the

other hand, the exclusion of the creditor holding the largest claim and most important customer

from the Committee can only impair the Committee's ability to function effectively and

negotiate with the Debtors and the other major constituents on behalf of all creditors.

**B.      The Committee as Constituted does not Adequately
         Represent General Motors' Claims and Interests in these
         Chapter 11 Cases or the Claims of the Debtors' Customers**

28.     A Committee can hold productive meetings, vote, and reach consensus on

matters, but this does not mean it is adequately representing a particular group.  See <u>Enron</u>, 279

B.R. at 686.

29.    The Committee as currently configured is inadequately representing the interests of General Motors and other customers of the Debtors. Following the appointments of the UAW and PBGC to the Committee, General Motors is the sole unrepresented major constituent. As do many other customers of the Debtors, General Motors holds various types of claims, including but not limited to, warranty claims, potential rejection damage claims, setoff claims, and other prepetition claims. These claims are not and cannot be adequately represented by the appointment of an institutional investor, four suppliers, a labor union representative, and an indenture trustee to the Committee. Neither is General Motors or the Debtors' customers represented by the two new *ex officio* members of the Committee, the UAW and the PBGC.

**C.    Inclusion of General Motors on the Committee would be Consistent with the Desires of the Current Committee to Represent all Unsecured Claimholders**

30.    The third and final factor is the standing and desires of the various constituencies. See Enron, 279 B.R. at 690. As it is critical that all impaired creditor constituents be represented on the Committee, the Committee cannot adequately represent the spectrum of its constituency where a critical and large group - in this case, General Motors and other of the Debtors' customers - is unrepresented while each creditor wanting to benefit at the expense of General Motors is on the Committee in some capacity.

**The Decision of the U.S. Trustee Excluding
General Motors from the Committee was Arbitrary and Capricious**

31.    Even if the Court were to determine abuse of discretion is the standard to be applied with respect to the U.S. Trustee's appointment of the Committee, General Motors should still be appointed to the Committee. A decision is arbitrary and capricious if it is based on an erroneous conclusion of law, a record devoid of evidence on which the decision maker

could rationally have based its decision or is otherwise patently unreasonable, arbitrary or fanciful.  See In re Barney's, Inc., 197 B.R. at 439.

32.    Adequate representation is a question of law, see In re McLean Indus., Inc., 70 B.R. at 860-863, and the U.S. Trustee erroneously concluded the Committee adequately represents its constituents.  As discussed in detail above, with the appointment of the UAW and the PBGC to the Committee, General Motors is the only important constituency without Committee membership while the PBGC and the UAW both have economic motivations to benefit at General Motors' expense.  In addition, the Committee has no customers and, in these cases, customers are a critical part of the Committee's constituency due to their warranty and similar claims.  The existing creditors appointed to the Committee consist of an institutional investor, four suppliers, a labor union representative, and an indenture trustee (plus the UAW and PBGC as *ex officio* members).  While the Committee need not "faithfully reproduce the exact complexion of the creditor body," it must still adequately represent such creditor body.  In re Hills Stores, 137 B.R. 4, 7-8 (Bankr. S.D.N.Y. 1992).  Here the Committee composition cannot adequately represent the size and nature of the creditor body absent the addition of General Motors, which is a necessary party to any resolution of these cases and holds the largest unsecured claim against the Debtors' estates.

33.    It is abundantly clear that a consensual resolution of these cases will require the participation of General Motors.  Adding General Motors to the Committee will foster a dialog towards such a consensual resolution.  For obvious reasons, leaving General Motors off the Committee impairs such a dialog.

34.    Accordingly, General Motors respectfully submits this Court direct the U.S. Trustee to appoint it to the Committee.

### Memorandum of Law

35.     In accordance with Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, no separate memorandum of law is necessary as all authorities relied on in support of this Motion are set forth herein.

### Notice

36.     Notice of this Motion has been provided pursuant to this Court's Order, dated October 14, 2005, establishing notice procedures in the chapter 11 cases.

37.     General Motors submits that no other or further notice need be provided.

38.     No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE General Motors respectfully requests the Court enter an order directing the U.S. Trustee to appoint General Motors as a member of the Committee, and such other and further relief as is just.

Dated:  February 17, 2006
         New York, New York

/s/ Michael P. Kessler w/ permission GT
Martin J. Bienenstock, Esq. (MB 3001)
Michael P. Kessler, Esq. (MK 7134)
Jeffrey L. Tanenbaum, Esq. (JT 9797)
WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, NY  10153-0119
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

– and –

Robert B. Weiss, Esq.
Frank L. Gorman, Esq.
HONIGMAN MILLER SCHWARTZ
AND COHN LLP
2290 First National Building
660 Woodward Avenue
Detroit, MI  48226-3506
Telephone: (313) 465-7000
Facsimile: (313) 465-8000

Attorneys for General Motors Corporation

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
--------------------------------------------------------------x
In re                                           :
                                                :         **Chapter 11 Case No.**
                                                :
**DELPHI CORPORATION, et al.,**                 :         **05-44481 (RDD)**
                                                :
                    Debtors.                    :         **(Jointly Administered)**
                                                :
--------------------------------------------------------------x

## ORDER DIRECTING
## APPOINTMENT OF GENERAL MOTORS
## CORPORATION TO STATUTORY CREDITORS' COMMITTEE

Upon the motion, dated February 17, 2006 (the "Motion"), of General Motors

Corporation ("General Motors") for entry of an order directing the Office of the United States

Trustee (the "U.S. Trustee") to appoint General Motors to the Delphi Official Committee of

Unsecured Creditors (the "Committee"), as more fully set forth in the Motion;[1] and the Court

having subject matter jurisdiction to consider the Motion pursuant to 28 U.S.C. § 1334 and the

Standing Order of Referral of Cases to Bankruptcy Court Judges of the District Court for the

Southern District of New York, dated July 19, 1984 (Ward, Acting C.J.); and consideration of

the Motion being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper

before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the

Motion having been provided, and no other or further notice need be provided; and the Court

having reviewed the Motion and having heard the statements in support of the relief requested at

a hearing before the Court (the "Hearing"); and the Court having determined that the factual and

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the
Motion.

legal bases set forth in the Motion and at the Hearing establish just cause for the relief granted

herein; and upon all of the proceedings had before the Court; and after due deliberation and

sufficient cause appearing therefor, it is

ORDERED that the Motion is granted to the extent set forth below; and it is

further

ORDERED that the U.S. Trustee is directed to appoint General Motors as a

member of the Committee.

Dated:    March___, 2006
          New York, New York

_____
UNITED STATES BANKRUPTCY JUDGE