SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                            :
    In re                        :    Chapter 11
                            :
DELPHI CORPORATION et al.,    :    Case No. 05-44481 (RDD)
                            :
                 Debtors.    :    (Jointly Administered)
                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DECLARATION OF MATTHEW J. ZARNOSKY IN SUPPORT OF MOTION FOR ORDER UNDER 11 U.S.C. §§ 362, 363, AND 365 AUTHORIZING DEBTORS TO (I) OBTAIN SUBSTANTIAL IMPROVEMENT IN ENERGY COSTS BY MODIFYING AGREEMENTS WITH LOCKPORT ENERGY ASSOCIATES L.P. AND NEW YORK STATE ELECTRIC AND GAS CORPORATION, (II) ASSUME MODIFIED AGREEMENT WITH LOCKPORT ENERGY ASSOCIATES L.P., AND (III) CONSENT TO RELIEF FROM AUTOMATIC STAY FOR LIMITED PURPOSE OF ALLOWING LOCKPORT ENERGY L.P. TO RECORD EASEMENTS

I, Matthew J. Zarnosky, declare that the following is true to the best of my knowledge, information, and belief:

1. I am a Facility Plant Engineer of Delphi Corporation ("Delphi"), debtor and debtor-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"). I have held this position for five years. I am familiar with the Debtors' operations, their process of obtaining electrical services, and the prices customarily charged for such services in the industry.

2. I submit this affidavit in support of this Motion For order under 11 U.S.C. §§ 362, 363, and 365 Authorizing Debtors To (i) Obtain Substantial Improvement in Energy Costs By Modifying Agreements With Lockport Energy Associates L.P. ("Lockport Energy"), the Power Authority of the State of New York ("NYPA"), and New York State Electric and Gas Corporation ("NYSEG"), (ii) Assume Modified Agreement with Lockport Energy, dated February 17, 2005, and (iii) Consent To Relief From Automatic Stay For Limited Purpose Of Allowing Lockport Energy L.P. To Record Easements (the "Motion"). Pursuant to the Motion, the Debtors seek to obtain substantial improvement in energy costs by (i) modifying (a) that certain Settlement Agreement, dated August 14, 1995, by and among General Motors Corporation ("GM"), NYPA, and NYSEG (the "Settlement Agreement"), (b) that certain Energy Sales Agreement, dated April 22, 1991, by and between GM and Lockport Energy, as amended (the "Energy Sales Agreement"), and (c) all amendments, supplements, exhibits, waivers, licenses, easements, side letters, and ancillary documents related thereto (collectively, the "Agreements"), (ii) assuming the modified Energy Sales Agreement, on the terms and conditions described in the Motion and in the proposed modified Settlement Agreement and Energy Sales Agreement, and (iii) consenting to relief from the automatic stay for the limited purpose of allowing Lockport Energy to record the easements existing under the Energy Sales Agreement and which will continue to

exist as modified under the modified Energy Sales Agreement (the "Easements"). I understand that the relief requested herein is subject to the execution of definitive documentation acceptable to the Debtors.

3. I believe that modification of the Agreements and assumption of the modified Energy Sales Agreement will allow the Debtors to obtain significant improvement in energy costs relating to the Debtors' Thermal & Interior Systems Facility, located at 200 Upper Mountain Road, Lockport, New York (the "Lockport Facility").

4. The Lockport Facility's power needs are supplied under the Agreements. Pursuant to the Service Agreement, dated April 12, 1989, by and among NYPA, NYSEG, and GM (the "Service Agreement"), NYSEG currently acquires from NYPA and provides to Delphi Automotive Systems, LLC, as GM's successor in interest,[1] certain low-priced hydropower, designated as expansion power ("Expansion Power"), for usage at the Lockport Facility. A dispute arose among NYPA, NYSEG, and GM regarding the sale and use of Expansion Power under the Service Agreement and the parties entered into the Settlement Agreement to resolve their dispute. The Settlement Agreement superseded and replaced the Service Agreement and designated the manner in which the electricity needs of the Lockport Facility will be supplied, including how the Expansion Power will be allocated between the Lockport Facility and NYSEG. Under the Energy Sales Agreement, Lockport Energy designed, constructed, and operates a cogeneration system adjacent to the Lockport Facility (the "Cogeneration System") which uses natural gas to generate and provide electricity and steam service for usage at the Lockport Facility. The Energy Sales Agreement provides that Lockport Energy will provide all of the Lockport Facility's electricity needs other than the

---

[1] Prior to January 1, 1999, GM operated Delphi's businesses through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Debtors under a Master Separation Agreement between Delphi and GM. In connection with these transactions, GM assigned to Delphi its rights and obligations under the Agreements.

Expansion Power that Delphi receives from NYPA through NYSEG under the Settlement Agreement.

5. Lockport Energy and Delphi have concluded that modification of the Agreements and the assumption of the modified Energy Sales Agreement will result in significant ongoing cost savings for the Debtors. The Debtors and Lockport Energy have determined that Lockport Energy should be allowed to continue using the Easements under the modified Energy Sales Agreement until December 27, 2027. The Debtors have agreed to lift the automatic stay for the limited purpose of allowing Lockport Energy to record the Easements as modified under the modified Energy Sales Agreement.

6. The Debtors' acceptance of Lockport Energy's proposal to modify the Agreements and assume the Energy Sales Agreements as provided herein is conditioned upon Delphi's ability to obtain an additional 10 mega watts of Expansion Power from NYPA. An application for that additional Expansion Power is pending before NYPA. A new contract with NYPA for the supply of additional 10 mega watts of Expansion Power will secure the availability of low-cost power to the Lockport Facility for at least three years beyond the term of the Energy Sales Agreement, and allow for electricity cost savings for the Debtors in the approximate amount of $14 million during the 2006-2011 period. In addition, the Energy Sales Agreement is scheduled to expire on December 27, 2007, whereas a new contract with NYPA will be in force at least until April 1, 2011. Accordingly, I believe that entering into a new contract with NYPA for the provision of additional 10 mega watts of Expansion Power is critical to the Lockport Facility. Lockport Energy will continue to supply steam to the Lockport Facility at a reduced cost.

7. At the time of the execution of the Energy Sales Agreement in 1991, Lockport Energy entered into long-term contracts with third parties for the supply of natural gas for the operation of the Cogeneration System. The proposed modifications to the

Agreements should reduce or eliminate Lockport Energy's role as a supplier of electricity to the Lockport Facility, thereby creating an opportunity for Lockport Energy to sell to third parties some of the gas used for the operation of the Cogeneration System at a profit which it will share with Delphi. The current estimate of Delphi's share of the profit from these sales to third parties of the natural gas is approximately $6 million (the "Price Estimate"). In addition, Lockport Energy has agreed to pay NYSEG approximately $3 million as compensation for the losses it will incur as a result of the modification of the Settlement Agreement (the "Additional Payment"). The funds for the payments by Lockport Energy to Delphi and NYSEG will be generated by Lockport Energy's sale to third parties of the natural gas currently under contract that otherwise would be used to satisfy Delphi's electricity requirements under the Energy Sales Agreement. Lockport Energy will sell the natural gas and will pay to Delphi the Price Estimate within 60 days of the latter of (a) the commencement of delivery to the Lockport Facility of the 10 mega watts of Expansion Power by NYPA or (b) entry of a final order of this Court approving the Motion (the "Payment Date").

8. The Additional Payment will be made within two business days after all of the following occur: (i) entry of a final order approving the Motion, (ii) commencement of delivery to the Lockport Facility of the 10 mega watts of Expansion Power by NYPA, and (iii) execution of the amended Agreements between Lockport Energy and Delphi. I believe that authorizing the Debtors to consummate this transaction and to assume the modified Energy Sales Agreement on the negotiated terms described in the Motion will allow the Debtors to obtain valuable, low-cost electricity and steam power. I believe that the negotiated terms are favorable to the Debtors and are in the best interest of their estates.

9. The Debtors estimate that the amount necessary to cure the defaults existing under the Energy Sales Agreement is $521,975.61 (the "Cure Amount"), which is

the total amount due for actual steam supplied by Lockport Energy to the Lockport Facility prior to October 8, 2005. The savings will exceed the payment of the Cure Amount within 10 months. The Debtors and Lockport Energy have agreed that the Cure Amount will be offset against the Price Estimate on the Payment Date. I believe that even with the payment of the Cure Amount, the assumption of the modified Energy Sales Agreement is beneficial to the Debtors' estates and constitutes substantial savings on energy costs.

10. The Debtors have determined that modifying the Agreements to allow the Debtors to terminate the provision of electricity to the Lockport Facility and to obtain valuable, low-priced electricity from NYPA for the duration of the new contracts with NYPA will substantially benefit the Lockport Facility by lowering its energy costs. I believe that modification of the Agreements, the assumption of the modified Energy Sales Agreement, and the lifting of the automatic stay to allow Lockport Energy to record the modified Easements is favorable to the Debtors and is in the best interests of their estates.

11. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: February 17, 2006
Lockport, New York

/s/ Matthew J. Zarnosky
MATTHEW J. ZARNOSKY