IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
    In re                               :    Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :    Case No. 05-44481 (RDD)
                                        :
                    Debtors.            :    (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

AFFIDAVIT OF SERVICE

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On February 17, 2006, I caused to be served the documents listed below (i) upon the parties listed on Exhibit A hereto via overnight delivery, (ii) upon the parties listed on Exhibit B hereto via electronic notification, and (iii) upon the parties listed on Exhibit C hereto via postage pre-paid U.S. mail:

1) Application for Order Under 11 U.S.C. Sections 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 Authorizing Employment and Retention of Covington & Burling as Foreign Trade and Special Corporate Committee Legal Counsel to Debtors (Docket No. 2424) [a copy of which is attached hereto as Exhibit D]

2) Second Amended Scheduling Order on Debtors' Motions to (I) Reject Collective Bargaining Agreements Under Section 1113(c) and (II) Eliminate Retiree Medical and Life Insurance Benefits for Union-Represented Retirees Under Section 1114(g) (Docket No. 2425) [a copy of which is attached hereto as Exhibit E]

3) Notice Of Presentment Of Order Under 11 U.S.C. Sections 327(e) And 1107(b) And Fed. R. Bankr. P. 2014 Authorizing Employment And Retention Of Covington & Burling As Foreign Trade And Special Corporate Committee Legal Counsel To Debtors (Docket No. 2426) [a copy of which is attached hereto as Exhibit F]

4) Motion To Further Extend The Time Period Within Which Debtors May Remove Actions Under 28 U.S.C. Section 1452 And Fed. R. Bankr. P. 9006 And 9027 (Docket No. 2430) [a copy of which is attached hereto as Exhibit G]

5) Notice of Motion To Further Extend The Time Period Within Which Debtors May Remove Actions Under 28 U.S.C. Section 1452 And Fed. R. Bankr. P. 9006 And 9027 (Docket No. 2430) [a copy of which is attached hereto as Exhibit G]

6) Motion for Order Under 11 U.S.C. Section 363 and Fed. R. Bankr. P. 6004 Authorizing and Approving Sale of Debtors' Equity Interest in Chinese Joint Venture (Docket No. 2436) [a copy of which is attached hereto as Exhibit H]

7) Motion Under 11 U.S.C. Sections 363, 1107, and 1108 Authorizing Delphi Automotive Systems LLC to Make Equity Investments in Delphi Furukawa Wiring Systems LLC and Approving Procedures to Make Additional Contributions without Further Court Approval (Docket No. 2442) [a copy of which is attached hereto as Exhibit I]

8) Motion For Order Under 11 U.S.C. Sections 362, 363, And 365 Authorizing Debtors To (I) Obtain Significant Improvement In Energy Costs By Modifying Agreements With Lockport Energy Associates L.P. And New York State Electric And Gas Corporation, (II) Assume Modified Agreement With Lockport Energy Associates L.P., And (III) Consent To Relief From Automatic Stay For Limited Purpose Of Allowing Lockport Energy Associates L.P. To Record Modified Easements (Docket No. 2444) [a copy of which is attached hereto as Exhibit J]

On February 17, 2006, I caused to be served the documents listed below upon the parties listed on Exhibit K hereto via overnight delivery:

9) Second Amended Scheduling Order on Debtors' Motions to (I) Reject Collective Bargaining Agreements Under Section 1113(c) and (II) Eliminate Retiree Medical and Life Insurance Benefits for Union-Represented Retirees Under Section 1114(g) (Docket No. 2425) [a copy of which is attached hereto as Exhibit E]

On February 17, 2006, I caused to be served the documents listed below upon the parties listed on Exhibit L hereto via overnight delivery:

10) Motion To Further Extend The Time Period Within Which Debtors May Remove Actions Under 28 U.S.C. Section 1452 And Fed. R. Bankr. P. 9006 And 9027 (Docket No. 2430) [a copy of which is attached hereto as Exhibit G]

11) Notice of Motion To Further Extend The Time Period Within Which Debtors May Remove Actions Under 28 U.S.C. Section 1452 And Fed. R. Bankr. P. 9006 And 9027 (Docket No. 2430) [a copy of which is attached hereto as Exhibit G]

On February 17, 2006, I caused to be served the documents listed below upon the parties listed on Exhibit M hereto via overnight delivery:

12) Motion for Order Under 11 U.S.C. Section 363 and Fed. R. Bankr. P. 6004 Authorizing and Approving Sale of Debtors' Equity Interest in Chinese Joint Venture (Docket No. 2436) [a copy of which is attached hereto as Exhibit H]

On February 17, 2006, I caused to be served the documents listed below upon the parties listed on Exhibit N hereto via overnight delivery:

13) Motion Under 11 U.S.C. Sections 363, 1107, and 1108 Authorizing Delphi Automotive Systems LLC to Make Equity Investments in Delphi Furukawa Wiring Systems LLC and Approving Procedures to Make Additional Contributions without Further Court Approval (Docket No. 2442) [a copy of which is attached hereto as Exhibit I]

On February 17, 2006, I caused to be served the documents listed below upon the parties listed on Exhibit O hereto via overnight delivery:

14) Motion For Order Under 11 U.S.C. Sections 362, 363, And 365 Authorizing Debtors To (I) Obtain Significant Improvement In Energy Costs By Modifying Agreements With Lockport Energy Associates L.P. And New York State Electric And Gas Corporation, (II) Assume Modified Agreement With Lockport Energy Associates L.P., And (III) Consent To Relief From Automatic Stay For Limited Purpose Of Allowing Lockport Energy Associates L.P. To Record Modified Easements (Docket No. 2444) [a copy of which is attached hereto as Exhibit J]

Dated: February 22, 2006

_/s/ Evan Gershbein_____
Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 22nd day of February, 2006, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature : ___/s/ Amy Lee Huh_____

Commission Expires: __3/15/09_____

# EXHIBIT A

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-2094801 | rstark@brownrudnick.com | Indenture Trustee |
| Capital Research and Management Company | Michelle Robson | 11100 Santa Monica Blvd | 15th Floor | Los Angeles | CA | 90025 | 310-996-6140 | 310-996-6091 | mlfr@capgroup.com | Creditor Committee Member |
| Cohen Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | b.simon@cwsny.com | |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel for Flextronics International USA, Inc. |
| Davis Polk & Wardwell | Donald Bernstein | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 | 212-450-3092 | donald.bernstein@dpw.com | Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2670 | sean.p.corcoran@delphi.com karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248.696.1729 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 6328 Monarch Park Place | | Niwot | CO | 80503 | 303-652-4853 | 303-652-4716 | cshiff@flextronics.com | Counsel for Flextronics International |
| Flextronics International | Terry Zale | 6328 Monarch Park Place | | Niwot | CO | 80503 | 303-652-4853 | 303-652-4716 | terryzale@flextronics.com | Counsel for Flextronics International |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | | 704-992-5075 | 866-585-2386 | | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel for Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel for Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department, Mario Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-298-2015 | 212-298-2016 | | IRS |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| IUE-CWA | Henry Reichard | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | hreichardiuecwa@aol.com | Creditor Committee Member |
| Jefferies & Company, Inc. | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.fmaher@chase.com richard.duker@jpmorgan.com gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | James Le | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-751-1511 | 310-751-1561 | jle@kccllc.com | Noticing and Claims Agent: |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | UCC Professional |
| Law Debenture Trust of New York | Patrick J. Healy | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Daniel R. Fisher | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | | Chicago | IL | 60606 | 212-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel for Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | | Chicago | IL | 60606 | 212-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel for Recticel North America, Inc. |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 2

2/22/2006 9:49 AM
MSL lists fedex and email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Mesirow Financial | Melissa Knolls | 321 N. Clark St. | 13th Floor | Chicago | IL | 60601 | 800-453-0600 | 312-644-8927 | mknoll@mesirowfinancial.com | UCC Professional |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel for Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | | New York Attorney General's Office |
| O'Melveny & Meyer LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Meyer LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov efile@pbgc.gov | Counsel for Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel for the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel for Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel for Murata Electronics North |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Prepetition Administrative Agent |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel for Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| United States Trustee | Alicia M. Leonard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | United States Trustee |
| United States Trustee | Deirdre A. Martini | 33 Whitehall Street | Suite 2100 | New York | NY | 10004 | 212-510-0500 | 212-668-2256 | deirdre.martini@usdoj.gov | United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | | Proposed Conflicts Counsel for the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeffrey.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 2

2/22/2006 9:49 AM
MSL lists fedex and email

# EXHIBIT B

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|-------|-----|-------|------------------|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-209-4801 | rstark@brownrudnick.com | Indenture Trustee |
| Capital Research and Management Company | Michelle Robson | 11100 Santa Monica Blvd | 15th Floor | Los Angeles | CA | 90025 | 310-996-6140 | 310-996-6091 | mlfr@capgroup.com | Creditor Committee Member |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel for Flextronics International USA, Inc. |
| Davis Polk & Wardwell | Donald Bernstein | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 | 212-450-3092 | donald.bernstein@dpw.com | Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2670 | sean.p.corcoran@delphi.com  karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Terry Zale | 6328 Monarch Park Place | | Niwot | CO | 80503 | 303-652-4853 | 303-652-4716 | terryzale@flextronics.com | Counsel for Flextronics International |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel for Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel for Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| IUE-CWA | Henry Reichard | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | hreichardiuecwa@aol.com | Creditor Committee Member |
| Jefferies & Company, Inc, | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | richard.duker@jpmorgan.com  gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation; EDS Information Services, LLC |
| Kurtzman Carson Consultants | James Le | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-751-1511 | 310-751-1561 | jle@kccllc.com | Noticing and Claims Agent: |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@llw.com | UCC Professional |
| Law Debenture Trust of New York | Daniel R. Fisher | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel for Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel for Recticel North America, Inc. |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Mesirow Financial | Melissa Knolls | 321 N. Clark St. | 13th Floor | Chicago | IL | 60601 | 800-453-0600 | 312-644-8927 | mknoll@mesirowfinancial.com | UCC Professional |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel for Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| O'Melveny & Meyer LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Meyer LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov  efile@pbgc.gov | Counsel for Pension Benefit Guaranty Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 2

2/22/2006 9:52 AM
MSL lists fedex and email

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel for the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel for Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel for Murata Electroncs North |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com rtrust@stblaw.com wrussell@stblaw.com | Prepetition Administrative Agent |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com jlyonsch@skadden.com rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel for Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 2

2/22/2006 9:52 AM
MSL lists fedex and email

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | | 610-230-3064 | 310-687-1052 | david.boyle@airgas.com | Counsel for Airgas, Inc. |
| Ajamie LLP | Thomas A. Ajamie | 711 Louisiana | Suite 2150 | Houston | TX | 77002 | | 713-860-1600 | 713-860-1699 | tajamie@ajamie.com | Counsel for SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Ajamie LLP | Wallace A. Showman | 1350 Avenue of the Americas | 29th Floor | New York | NY | 10019 | | 212-246-6820 | 212-581-8958 | wshowman@ajamie.com | Counsel for SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Centure Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel for Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel for Kilroy Realty, L.P. |
| Ambrake Corporation | Ronald L. Jones | 300 Ring Road | | Elizabethtown | KY | 42701 | | 270-765-0208 | 270-234-2395 | rjones@ambrake.com | Representative for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | gogimalik@andrewskurth.com | Counsel for ITW Mortgage Investments IV, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel for ITW Mortgage Investments IV, Inc. |
| Angelo, Gordon & Co. | Leigh Walzer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | | 212-692-8251 | 212-867-6395 | lwalzer@angelogordon.com | |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel for Stanley Electric Sales of America, Inc. |
| APS Clearing, Inc. | Andy Leinhoff | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | | 512-314-4416 | 512-314-4462 | aleinoff@amph.com | Counsel for APS Clearing, Inc. |
| APS Clearing, Inc. | Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | | 512-314-4416 | 512-314-4462 | mhamilton@ampn.com | Counsel for APS Clearing, Inc. |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Cohen.Mitchell@arentfox.com | Counsel for Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel for Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5000 | 202-942-5999 | joel_gross@aporter.com | Counsel for CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | Company |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | Kimberly J. Robinson | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | kim.robinson@bfkpn.com | Counsel for Motion Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | William J. Barrett | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | william.barrett@bfkpn.com | Counsel for Motion Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel for Mays Chemical Company |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Priority Health |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Michael K. McCrory Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com michael.mccrory@btlaw.com | Counsel for Gibbs Die Casting Company |
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 2125541444 | hannah@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 2125541444 | sean@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | | 313-496-1200 | 313-496-1300 | murph@berrymoorman.com | Counsel for Kamax L.P.; Optrex America, Inc. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Counsel to UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronics and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | tgaa@bbslaw.com | Counsel to Veritas Software Corporation |
| Blank Rome LLP | Bonnie Glantz Fatell | Chase Manhattan Centre | 1201 Market Street, Suite 800 | Wilmington | DE | 19801 | | 302-425-6423 | 302-428-5110 | fatell@blankrome.com | Counsel for Special Devices, Inc. |
| Blank Rome LLP | Marc E. Richards | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | mrichards@blankrome.com | Counsel for DENSO International America, Inc. |
| Bolhouse, Vander Hulst, Risko & Baar P.C. | David S. Lefere | 3996 Chicago Drive SW | | Grandville | MI | 49418 | | 616-531-7711 | 616-531-7757 | davidl@bolhouselaw.com | Counsel for Eclipse Tool and Die, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel for Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel for Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | sdonato@bsk.com | Counsel for Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp; Diemolding Corporation |
| Bose McKinney & Evans LLP | Jeannette Eisan Hinshaw | 135 N. Pennsylvania Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-684-5296 | 317-684-5173 | jhinshaw@boselaw.com | Counsel for Decatur Plastics Products, Inc. and Eikenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel for Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | rjones@bccb.com | Counsel for Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856-812-8900 | 856-853-9933 | dludman@brownconnery.com | Counsel for SAP America, Inc. |
| Buchalter Nemer, A Profesional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | schristianson@buchalter.com | Counsel for Oracle USA, Inc.; Oracle Credit Corporation |
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel for Mercedes-Benz U.S. International, Inc |
| Cage Williams & Abelman, P.C. | Steven E. Abelman | 1433 Seventeenth Street | | Denver | CO | 80202 | | 303-295-0202 | | sabelman@cagewilliams.com | Counsel for United Power, Inc. |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-205-6777 | jonathan.greenberg@engelhard.com | Counsel to Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |
| Calinoff & Katz, LLp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | driggio@candklaw.com | Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com | Counsel for Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel for STMicroelectronics, Inc. |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel for BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |

In re: Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 16

2/22/2006 9:52 AM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Clark Hill PLC | Seth A. Drucker | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdrucker@clarkhill.com | Counsel for BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel for ATS Automation Tooling Systems Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel for Arneses Electricos Automotrices, S.A.de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | maofiling@cgsh.com | Counsel for Bear, Stearns, Co. Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase & Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc.; UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel for Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com | Counsel for International Union, United Automobile, Aerospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel to Floyd Manufacturing Co., Inc. |
| Colbert & Winstead, P.C. | Amy Wood Malone | 1812 Broadway | | Nashville | TN | 37203 | | 615-321-0555 | 615-321-9555 | amalone@colwinlaw.com | Counsel for Averitt Express, Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | 734-971-9001 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | 203-862-8200 (230) 862-8231 | 203-629-1977 (203) 629-1977 | mlee@contrariancapital.com jstanton@contrariancapital.com wraine@contrariancapital.com solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | wachstein@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Company |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel for SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtin & Heefner, LLP | Robert Szwajkos | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | rsz@curtinheefner.com | Counsel for SPS Technologies, LLC; NSS Technologies, Inc.; SPS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-8898 | 917-368-8898 | athau@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-6065 | 212-697-1559 | dkarp@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-6065 | 212-697-1559 | sreisman@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A.de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | | 248-576-5741 | | krk4@daimlerchrysler.com | Counsel for DaimlerChrysler Corporation; DaimlerChrylser Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | 716-856-5510 | wsavino@damonmorey.com | Counsel for Relco, Inc.; The Durham Companies, Inc. |
| Daniels & Kaplan, P.C. | Jay Selanders | 2405 Grand Boulevard | Suite 900 | Kansas City | MO | 64108-2519 | | 816-221-3086 | 816-221-3010 | selanders@danielsandkaplan.com | Counsel for DaimlerChrysler Corporation; DaimlerChrysler Motors Company, LLC; DaimlerChrylser Canada, Inc. |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | carol_sowa@denso-diam.com | Counsel to Denso International America, Inc. |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | | 212-682-4940 | 212-682-4942 | gdiconza@dlawpc.com | Counsel to Tyz-All Plastics, Inc.; Furukawa Electric North America APD |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | john.persiani@dinslaw.com | Counsel for The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen Maria Ellena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | richard.kremen@dlapiper.com | Counsel for Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., L.P. |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | david.aaronson@dbr.com | Counsel to Penske Truck Leasing Co., L.P. and Quaker Chemical Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | dmdelphi@duanemorris.com | Counsel to ACE American Insurance Company |
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | jhlemkin@duanemorris.com | Counsel for NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; Hosiden America Corporation and Samtech Corporation |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representative for Electronic Data Systems Corporation |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel for Doshi Prettl International, LLC |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | Earle I. Erman | 400 Galleria Officentre | Ste. 444 | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | eerman@ermanteicher.com | Counsel for Doshi Prettl International, LLC |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | ggreen@fagelhaber.com | Counsel for Aluminum International, Inc. |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel for Aluminum International, Inc. |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkgold.com | Counsel for Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel for Kuss Corporation |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&G Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&G Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | ftrikkers@rikkerslaw.com | Counsel for Southwest Metal Finishing, Inc. |
| Gazes LLC | Ian J. Gazes | 32 Avenue of the Americas | | New York | NY | 10013 | | 212-765-9000 | 212-765-9675 | ian@gazesllc.com | Counsel to Setech, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 4 of 16

2/22/2006 9:52 AM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Gazes LLC | Eric Wainer | 32 Avenue of the Americas | Suite 1800 | New York | NY | 10013 | | 212-765-9000 | 212-765-9675 | office@gazesllc.com | Counsel to Setech, Inc. |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | | 305-349-2300 | 305-349-2310 | crieders@gjb-law.com | Counsel for Ryder Integrated Logistics, Inc. |
| Gibbons, Del Deo, Dolan, Griffinger & Vecchione | David N. Crapo | One Riverfront Plaza | | Newark | NJ | 07102-5497 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel for Epcos, Inc. |
| Goodwin Proctor LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | abrilliant@goodwinproctor.com | Counsel for UGS Corp. |
| Goodwin Proctor LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | cdruehl@goodwinproctor.com | Counsel for UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | gjarvis@ggelaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | jeisenhofer@gelaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | snirmul@gelaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | jh@previant.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | mdebbler@graydon.com | Counsel for Grote Industries; Batesville Tool & Die; PIA Group; Reliable Castings |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | ckm@greensfelder.com jpb@greensfelder.com | Counsel for ARC Automotive, Inc. |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 16

2/22/2006 9:52 AM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel for American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J.Battaglia | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net | Counsel to Pacific Gas Turbine Center, LLC and Chromalloy Gas Turbine Corporation |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel for Baker Hughes Incorporated; Baker Petrolite Corporation |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel for Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Glen Dumont | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4750 | 908-898-4137 | glen.dumont@hp.com | Counsel for Hewlett-Packard Financial Services Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-898-4133 | sharon.petrosino@hp.com | Counsel for Hewlett-Packard Financial Services Company |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel for GW Plastics, Inc. |
| Hodgson Russ LLP | Cheryl R. Storie | One M&T Plaza | Suite 2000 | Buffalo | NY | 14203 | | 716-848-1275 | 716-849-0349 | cstorie@hodgsonruss.com | Counsel for Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | Carnegie Hall Tower | 152 West 57th Street, 35th Street | New York | NY | 10019 | | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel for Hexcel Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | amoog@hhlaw.com | Counsel for Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5910 | ecdolan@hhlaw.com | Counsel for Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel for XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel for CoorsTek, Inc.; Corus, L.P. |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel for Fujitsu Ten Corporation of America |
| Honigman, Miller, Schwartz and Cohn, LLP | Robert B. Weiss, Frank L. Gorman | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | | 313-465-7000 | 313-465-8000 | rweiss@honigman.com fgorman@honigman.com | Counsel for General Motors Corporation |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | jrhunter@hunterschank.com | Counsel for ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | tomschank@hunterschank.com | Counsel for ZF Group North America Operations, Inc. |
| Hunton & Wiliams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel for RF Monolithics, Inc. |
| Hunton & Wiliams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | sholmes@hunton.com | Counsel for RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel for Jiffy-Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One Canton Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel for Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11305 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel for Trutron Corporation |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel for SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC and Tenneco Inc. |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel for WL. Ross & Co., LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 1800 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel for Solution Recovery Services |
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko Cari Campen Laufenberg Erin M. Rily | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel for Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Grotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggrotto@kellerrohrback.com | Counsel for Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | mbane@kelleydrye.com | Counsel for the Pension Benefit Guaranty Corporation |
| Kelley Drye & Warren, LLP | Mark. R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | msomerstein@kelleydrye.com | Counsel for the Pension Benefit Guaranty Corporation |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | tkennedy@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| King & Spalding, LLP | Alexandra B. Feldman | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | afeldman@kslaw.com | Counsel for Martinrea International, Inc. |
| King & Spalding, LLP | George B. South, III | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | gsouth@kslaw.com | Counsel for Martinrea International, Inc. |
| Kirkland & Ellis LLP | Geoffrey A. Richards | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | 312-861-2200 | grichards@kirkland.com | Counsel for Lunt Mannufacturing Company |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Kruglak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel for Millwood, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel for Parlex Corporation |
| Lambert, Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel for Linamar Corporation |
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | john.weiss@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchell.seider@lw.com | UCC Professional |
| Latham & Watkins | Robert Rosenberg | 885 Third Avenue | Suite 1000 | New York | NY | 10022-4834 | | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | UCC Professional |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | 1630 McCarthy Blvd. | | Milpitas | CA | 95035-7417 | | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel for Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel for Industrial Ceramics Corporation |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel for Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | ilevee@lowenstein.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | krosen@lowenstein.com | Counsel for Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | metkin@lowenstein.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel for Cerberus Capital Management, L.P.; AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | vdagostino@lowenstein.com | Counsel for AT&T Corporation |
| MacDonald, Illig, Jones & Britton LLP | Richard J. Parks | 100 State Street | Suite 700 | Erie | PA | 16507-1459 | | 814-870-7754 | 814-454-4647 | rparks@mijb.com | Counsel for Ideal Tool Company, Inc. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | jlanden@madisoncap.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq., Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | jml@ml-legal.com lmc@ml-legal.com | Counsel for Venture Plastics |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | gsantella@masudafunai.com | Counsel for NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America; American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; Hosiden America Corporation and Samtech Corporation |
| Mayer, Brown, Rowe & Maw LLP | Jeffrey G. Tougas | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | jgtougas@mayerbrownrowe.com | Counsel for Bank of America, N.A. |
| Mayer, Brown, Rowe & Maw LLP | Raniero D'Aversa, Jr. | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | rdaversa@mayerbrown.com | Counsel for Bank of America, N.A. |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | dadler@mccarter.com | Counsel to Ward Products, LLC |
| McDermott Will & Emery LLP | James M. Sullivan | 50 Rockefeller Plaza | | New York | NY | 10020 | | 212-547-5400 | 212-547-5444 | jmsullivan@mwe.com | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Timken Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 50 Rockefeller Plaza | | New York | NY | 10020 | | 212-547-5400 | 212-547-5444 | sselbst@mwe.com | Counsel for National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Jean R. Robertson, Esq. | 600 Superior Avenue, East | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | jrobertson@mcdonaldhopkins.com | Counsel to Brush Engineered materials |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 16

2/22/2006 9:52 AM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuirewoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1178 | 804-698-2186 | egunn@mcguirewoods.com | Counsel for Siemens Logistics Assembly Systems, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel for Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel for Prince George County, Maryland |
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | khopkins@milesstockbridge.com | Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Alumunim Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller Johnson | Thomas P. Sarb Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 616-831-1726 | 616-988-1748 616-988-1726 | sarbt@millerjohnson.com wolfordr@millerjohnson.com | Counsel to Pridgeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-8453 | fusco@millercanfield.com | Counsel for Niles USA Inc.; Techcentral, LLC; The Bartech Group, Inc.; Fischer Automotive Systems |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel for Wells Operating Partnership, LP |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Michael L. Schein | 666 Third Avenue | | New York | NY | 10017 | | 212-935-3000 | 212-983-3115 | mlschein@mintz.com | Counsel to Hitachi Automotive Products (USA), Inc.; Conceria Pasubio |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | pjricotta@mintz.com | Counsel for Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Mintz, Levin, Cohn, Ferris Glovsky and Pepco, P.C. | Stephanie K. Hoos | The Chrysler Center | 666 Third Avenue | New York | NY | 10017 | | 212-935-3000 | 212-983-3115 | skhoos@mintz.com | Counsel for Hitachi Automotive Products (USA), Inc. and Conceria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel for Molex Connector Corp |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel for ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel for Hitachi Chemical (Singapore) Pte, Ltd. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 9 of 16

2/22/2006 9:52 AM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel to Sumitomo Corporation |
| Moritt Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@morritthock.com | Counsel for Standard Microsystems Corporation and its direct and indirect subsidiaries Oasis SiliconSystems AG and SMSC NA Automotive, LLC (successor-in-interest to Oasis Silicon Systems, Inc.) |
| Morris, Nichols, Arsht and Tunnell | Michael G. Busenkell | PO Box 1347 | | Wilmington | DE | 19899-1347 | | 302-658-9200 | 302-658-3989 | mbusenkell@mnat.com | Counsel for Chicago Miniature Optoelectronic Technologies, Inc. |
| Morris, Nichols, Arsht and Tunnell | Robert J. Dehney | PO Box 1347 | | Wilmington | DE | 19899-1347 | | 302-658-9200 | 302-658-3989 | rdehney@mnat.com | Counsel for Chicago Miniature Optoelectronnic Technologies, Inc. |
| Morrison Cohen LLP | Joseph T. Moldovan Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8603 212-735-8757 | 917-522-3103 917-522-3157 | jmoldovan@morrisoncohen.com mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | TX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel for Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton, P.C. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel for Lankfer Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | knathan@nathanneuman.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Nathan, Neuman & Nathan, P.C. | Susanna C. Brennan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | sbrennan@nathanneuman.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | lisa.moore2@nationalcity.com | Vice President and Senior Counsel for National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel for Datwyler Rubber & Plastics, Inc.; Datwyler, Inc.; Datwyler i/o devices (Americas), Inc.; Rothrist Tube (USA), Inc. |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 16

2/22/2006 9:52 AM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | susanwhatley@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Noma Company and General Chemical Performance Products LLC | James Imbriaco | 90 East Halsey Road | | Parsippanny | NJ | 07054 | | 973-884-6952 | 973-515-3244 | jimbriaco@gentek-global.com | |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmasieh, Esq | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | | 908-722-0700 | 908-722-0755 | eabdelmasieh@nmmlaw.com | Counsel for Rotor Clip Company, Inc. |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel for WL. Ross & Co., LLC |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | mmharner@jonesday.com | Counsel for WL. Ross & Co., LLC |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay.hurst@oag.state.tx.us | Counsel for The Texas Comptroller of Public Accounts |
| Orbotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@orbotech.com | Company |
| Orrick, Herrington & Sutcliffe LLP | Alyssa Englund, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | jguy@orrick.com | Counsel for Westwood Assoicates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Matthew W. Cheney | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | mcheney@orrick.com | Counsel for Westwood Assoicates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | rwyron@orrick.com | Counsel for Westwood Assoicates, Inc. |
| Otterbourg, Steindler, Houston & Rosen, P.C. | Melissa A. Hager | 230 Park Avenue | | New York | NY | 10169 | | 212-661-9100 | 212-682-6104 | mhager@oshr.com | Counsel for Sharp Electronics Corporation |
| Otterbourg, Steindler, Houston & Rosen, P.C. | Scott L. Hazan | 230 Park Avenue | | New York | NY | 10169 | | 212-661-9100 | 212-682-6104 | shazan@oshr.com | Counsel for Sharp Electronics Corporation |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3157 | 212-373-2053 | cweidler@paulweiss.com | Counsel for Ambrake Corporation; Akebono Corporation |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel for Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R. McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | emccolm@paulweiss.com | Counsel for Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | 212-373-2136 | sshimshak@paulweiss.com | Counsel for Ambrake Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K. Street, N.W. | | Washington | DC | 20005-4026 | | 202-326-4020 | 202-326-4112 | landy.ralph@pbgc.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pepe & Hazard LLP | Charles J. Filardi, Jr., Esq. | 30 Jelliff Lane | | Southport | CT | 06890 | | 203-319-4042 | 203-319-4034 | cfilardi@pepehazard.com | Federal Express Corporation |
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | aaronsona@pepperlaw.com | Counsel for Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | casey@pepperlaw.com | Counsel for SKF USA, Inc. |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel for SKF USA, Inc. |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel for Capro, Ltd, Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Phillips Nizer LLP | Sandra A. Riemer, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 16

2/22/2006 9:52 AM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel for Clarion Corporation of America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel for MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | 7th Floor | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel for Clarion Corporation of America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel for MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel for MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pitney Hardin LLP | Ronald S. Beacher | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-682-3485 | rbeacher@pitneyhardin.com | Counsel for IBJTC Business Credit Corporation |
| Pitney Hardin LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@pitneyhardin.com | Counsel for Marshall E. Campbell Company |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| Pryor & Mandelup, LLP | A. Scott Mandelup, Kenneth A. Reynolds | 675 Old Country Road | | Westbury | NY | 11590 | | 516-997-0999 | 516-333-7333 | asm@pryormandelup.com kar@pryormandelup.com | Counsel for National Molding Corporation; Security Plastics Division/NMC LLC |
| QAD, Inc. | Jason Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadranglegr | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup. | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel for Semiconductor Components Industries, Inc. |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel for Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel for Semiconductor Components Industries, Inc. |
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel for General Electric Capital Corporation, Stategic Asset Finance. |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | | 330-670-3004 | 330-670-3020 | jlapinsky@republicengineered.com | Counsel to Republic Engineered Products, Inc. |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel for Microsoft Corporation; Microsoft Licensing, GP |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel for ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | 212-501-7088 | holly@regencap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel for Blue Cross Blue Shield of South Carolina |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | | 213-312-2000 | 213-312-2001 | cnorgaard@ropers.com | Counsel for Brembo S.p.A; Bibielle S.p.A.; AP Racing |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | | 617-951-7000 | 617-951-7050 | gregory.kaden@ropesgray.com | Counsel for D-J, Inc. |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rtrack@msn.com | Counsel to Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Charles S. Schulman, Arlene N. Gelman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | cschulman@sachnoff.com agelman@sachnoff.com | Counsel for Infineon Technologies North America Corporation |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Schiff Hardin LLP | Michael Yetnikoff | 623 Fifth Avenue | 28th Floor | New York | NY | 10022 | | 212-753-5000 | 212-753-5044 | myetnikoff@schiffhardin.com | Counsel for  Means Industries |
| Schiff Hardin LLP | William I. Kohn | 6600 Sears Tower | | Chicago | IL | 60066 | | 312-258-5500 | 312-258-5600 | wkohn@schiffhardin.com | Counsel for  Means Industries |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7056 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel for Panasonic Autommotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel for Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | carol.weiner.levy@srz.com | Counsel for D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk, Esq. | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel for  le Belier/LBQ Foundry S.A. de C.V. |
| Sheehan Phinney Bass + Green Professional Association | Steven E. Boyce | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-2347 | | 603-627-8278 | 603-641-2347 | sboyce@sheehan.com | Counsel for Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel for Milwaukee Investment Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel for Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel for Gulf Coast Bank & Trust Company |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | | 860-251-5811 | 860-251-5218 | bankruptcy@goodwin.com | Counsel to Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co. |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel for Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel for Hewlett-Packard Financial Services Company |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel for Silver Point Capital, L.P. |
| Simpson Thacher & Bartlett LLP | Kenneth S. Ziman, Esq. | 425 Lexington Avenue | | New York | NY | 10017 | | 212-455-2000 | 212-455-2502 | cfox@stblaw.com | Counsel to JPMorgan Chase Bank, N.A. |
| Simpson Thacher & Bartlett LLP | William T. Russell, Jr., Esq. | 425 Lexington Avenue | | New York | NY | 10017 | | 212-455-2000 | 212-455-2502 | cfox@stblaw.com | Counsel to JPMorgan Chase Bank, N.A. |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel for Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 3026528405 | kmiller@skfdelaware.com | Counsel for Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel for Molex, Inc. and INA USA, Inc. |
| Sonnenschein Nath & Rosenthal LLP | Jo Christine Reed | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | jcreed@sonnenschein.com | Counsel for Molex, Inc. and INA USA, Inc. |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel for Molex, Inc. and INA USA, Inc. |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | | 201-930-7483 | | lloyd.sarakin@am.sony.com | Counsel to Sony Electronics, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sotiroff & Abramczyk, P.C. | Robert M. Goldi | 30400 Telegraph Road | Suite 444 | Bingham Farms | MI | 48025 | | 248-642-6000 | 248-642-9001 | rgoldi@sotablaw.com | Counsel for Michigan Heritage Bank; MHB Leasing, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | | 415-393-9887 | emarcks@ssd.com | Counsel for Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel for Furukawa Electric Co., Ltd. And Furukawa Electric North America, APD Inc. |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0322 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel for Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel for Excel Global Logistics, Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | | 248-352-4700 | 248-352-4488 | shapiro@steinbergshapiro.com | Counsel for Bing Metals Group, Inc.; Central Transport International, Inc.; Crown Enerprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-3922100 | 609-392-7956 | jposta@sternslaw.com | Counsel for Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cp@stevenslee.com | Counsel to Tonolli Canada Ltd.; V.J Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison PLLC | Madison L.Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 | 502-779-8274 | wbeard@stites.com | Counsel for WAKO Electronics (USA), Inc. and Ambrake Corporation |
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | jminias@stroock.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | khansen@stroock.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Etkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Etkin Management Services, Inc. and Etkin Real Properties |
| Swidler Berlin LLP | Roger Frankel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | | 202-424-7500 | 202-424-7645 | rfrankel@swidlaw.com | Counsel for Sanders Lead Co. |
| Swidler Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W. Suite 300 | Washington | DC | 20007 | | 202-424-7500 | 202-424-7645 | rnsteinwurtzel@swidlaw.com | Attorneys for Sanders Lead Co., Inc. |
| Taft, Stettinius & Hollister LLP | Richard L .Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | | ferrell@taftlaw.com | Counsel for Wren Industries, Inc. |
| Tennessee Department of Revenue | Marvin E. Clements, Jr. | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | marvin.clements@state.tn.us | Tennesse Department of Revenue |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | jforstot@tpw.com | Counsel for TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | lcurcio@tpw.com | Counsel for TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Niizeki | 6-1 Marunouchi | 2-Chrome, Chiyoda-ku | Tokyo | Japan | 100-8322 | | | 81-3-3286-3919 | niizeki.tetsuhiro@furukawa.co.jp | Legal Department of The Furukawa Electric Co., Ltd. |
| Thelen Reid & Priest LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel for American Finance Group, Inc. d/b/a Guaranty Capital Corporation |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Thelen Reid & Priest LLP | Daniel A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel for Oki Semiconductor Company |
| Thompson & Knight | Rhett G. Cambell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | rhett.campbell@tklaw.com | Counsel for STMicroelectronics, Inc. |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 300 | Dallas | TX | 75201 | | 214-969-1505 | 214-969-1609 | john.brannon@tklaw.com | Counsel for Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | 210-344-6460 | ephillips@thurman-phillips.com | Counsel for Royberg, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Group |
| Todd & Levi, LLP | Jill Levi, Esq. | 444 Madison Avenue | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | jlevi@toddlevi.com | Counsel to Bank of Lincolnwood |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | | 212-594-5000 | 212-967-4258 | bmcdonough@teamtogut.com | Conflicts counsel to Debtors |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | jwilson@tylercooper.com | Counsel for Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | hzamboni@underbergkessler.com | Counsel for McAlpin Industries, Inc. |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center | Suite 807 | Pittsburgh | PA | 15222 | | 412-562-2549 | 412-562-2429 | djury@steelworkers-usw.org | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Varnum, Riddering, Schmidt & Howlett LLp | Michael S. McElwee | Bridgewater Place | P.O. Box 353 | Grand Rapids | MI | 49501-0352 | | 616-336-6827 | 616-336-7000 | msmcelwee@varnumlaw.com | Counsel for Furukawa Electric North America APD |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | | 614-464-6422 | 614-719-8676 | rjsidman@vssp.com | |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | | 614-464-8322 | 614-719-4663 | tscobb@vssp.com | Counsel for America Online, Inc. and its Subsidiaries and Affiliates |
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel for Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel for Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel to Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | growsb@wnj.com | Counsel for Behr Industries Corp. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel for Robert Bosch Corporation |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | | 817-810-5250 | 817-810-5255 | bankruptcy@warnerstevens.com | Counsel for Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | | 714-966-1000 | 714-966-1002 | lekvall@wgllp.com | Counsel for Toshiba America Electronic Components, Inc. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | 310-203-8110 | aordubegian@weineisen.com | Counsel for Orbotech, Inc. |
| Weltman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | John K. Cunningham | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | jcunningham@whitecase.com | Counsel for Appaloosa Management, LP |
| White & Case LLP | Margarita Mesones-Mori | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | mmesonesmori@whitecase.com | Counsel for Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce C. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel for Schunk Graphite Technology |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | | 512-370-2800 | 512-370-2850 | bspears@winstead.com | Counsel for National Instruments Corporation |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel for National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc. J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel for Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel for Metal Surfaces, Inc. |
| WL Ross & Co., LLC | Oscar Iglesias | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | | 212-826-1100 | 212-317-4893 | oiglesias@wlross.com | Counsel for WL. Ross & Co., LLC |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | | 336-574-8058 | 336-574-4520 | pinto@wcsr.com | Counsel for Armacell |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel for Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 15 of 16

2/22/2006 9:52 AM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|---------|-------|-----|-------|------------------|
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel for Toyota Tsusho America, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 16 of 16

2/22/2006 9:52 AM
2002 lists

# EXHIBIT C

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Akebono Corporation (North America) | Alan Swiech | 34385 Twelve Mile Road | | Farminton Hills | MI | 48331 | 248-489-7406 | 866-609-0888 | aswiech@akebobo-usa.com | Vice President of Administration for Akebono Corporation |
| Arnall Golden Gregory LLP | Heath J. Vicente | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | 404-873-8682 | 404-8738683 | heath.vicente@agg.com | Counsel to Daishinku (America) Corp. d/b/a KDS America ("Daishinku"), SBC Telecommunications, Inc. (SBC) |
| Bernstein Litowitz Berger & Grossman | Eileen McNerney | 1285 Avenue of the Americas | | New York | NY | 10019 | 212-554-1485 | 212-554-1444 | emcnerney@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bernstein Litowitz Berger & Grossman | Mark D. Debrowski | 1285 Avenue of the Americas | | New York | NY | 10019 | 212-554-1492 | 2125541444 | markd@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employes's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfords ABP |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | 313-393-7592 | 313-393-7579 | rcmcdowell@bodmanllp.com | Counsel for Freudenberg-NOK; General Partnership; Freudenberg-NOK, Inc.; Flextech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | 607-255-5124 | 607-254-3556 | nlph4@cornell.edu | Paralegal/Counsel for Cornell University |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | 516-227-6300 | 516-227-6307 | gettleman@e-hlaw.com | Counsel for Jon Ballin |
| HAL/ERC-Legal | Tillie Lim, Esq. | 50 Prospect Avenue | | Tarrytown | NY | 10591 | | | | Counsel to Hitachi Automotive Products (USA), Inc. |
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel for Valeo Climate Control Corp.; Valeo Electrical Systems, Inc. - Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | 617-542-3000 | 617-542-3001 | knorthrup@kutchinrufo.com | Counsel for Parlex Corporation |
| Lord, Bissel & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | 312-443-1832 | 312-443-896-6432 | tbrink@lordbissel.com | Counsel for Sedgwick Claims Management Services, Inc. |
| Lord, Bissel & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissel.com | Counsel for Methode Electronics, Inc. |
| Lord, Bissel & Brook LLP | Kevin J. Walsh Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | 212-947-8304 212-947-8340 | 212-947-1202 | kwalsh@lordbissel.com rcovino@lordbissel.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lyden, Liebenthal & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | 419-867-8900 | 419-867-8909 | egc@leydenlaw.com | Counsel for Metro Fibres, Inc. |
| Miami-Dade County, FL | April Burch | 140 West Flagler Street | Suite 1403 | Miami | FL | 33130 | 305-375-5314 | 305-375-1142 | aburch@miamidade.gove | Paralegal Collection Specialist for Miami-Dade County |
| Michael Cox | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | 313-456-0140 | | | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raternink | PO Box 30736 | | Lansing | MI | 48909-7717 | 517-373-1820 | 517-373-2129 | | Assistant Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | 517-373-1820 | 517-373-2129 | | Attorney General for Worker's Compensation Agency |
| Morgan, Lewis & Bockius LLP | William C. Heuer, Esq. | 101 Park Avenue | | New York | NY | 10178-0060 | 212-309-6000 | 212-309-6001 | wheuer@morganlewis.com | Counsel to Sumitomo Corporation |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | 478-742-8706 | 478-746-4488 | cahope@chapter12macon.com | Office of the Chapter 13 Trustee |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 2

2/22/2006 9:53 AM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | 313-456-0140 | | hausnerp@michigan.gov | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel for FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | 207-791-1100 | 207-791-1350 | kcunningham@piercewood.com | Counsel for FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda; FCI Automotive Deutschland Gmbh; FCI Italia S. p.A. |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | 989-385-3230 | 989-754-7690 | | Corporate Secretary for Professional Technologies Services |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | 212-841-5700 | 212-841-5725 | | Attorneys for D-J, Inc. |
| Rosen Slome Marder LLp | Thomas R. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11533 | 516-227-1600 | | | Counsel for JAE Electronics, Inc. |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | 248-540-3340 | | dweiner@schaferweiner.com | Counsel for Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | 248-540-3340 | | hborin@schaferweiner.com | Counsel for Dott Industries, Inc. |
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | 248-540-3340 | | mnewman@schaferweiner.com | Counsel for Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | 248-540-3340 | | rheilman@schaferweiner.com | Counsel for Dott Industries, Inc. |
| The Timken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706 | | | | Representative for Timken Corporation |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 2

2/22/2006 9:53 AM
2002 lists

# EXHIBIT D

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                     :
In re                   :     Chapter 11
                     :
DELPHI CORPORATION, et al.,     :     Case No. 05-44481 (RDD)
                     :
          Debtors.  :     (Jointly Administered)
                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b) AND FED. R.
BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF
COVINGTON & BURLING AS FOREIGN TRADE AND SPECIAL
CORPORATE COMMITTEE LEGAL COUNSEL TO DEBTORS

("COVINGTON & BURLING RETENTION APPLICATION")

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the

"Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), hereby submit this application (the "Application") for an order

under 11 U.S.C. §§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 authorizing the employment

and retention of Covington & Burling ("Covington") as foreign trade and special corporate

committee legal counsel to the Debtors, nunc pro tunc to October 8, 2005.  In support of this

Application, the Debtors submit the Affidavit of Aaron R. Marcu, sworn to February 17, 2006

(the "Marcu Affidavit").  In further support of this Application, the Debtors respectfully

represent as follows:

Background

A.    The Chapter 11 Filings

    1.    On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1130, as amended (the "Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") also sought reorganization relief. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(b) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtor's chapter 11 cases (Dockets Nos. 28 and 404).

    2.    On October 17, 2005, the Office of the Unites States Trustee appointed an official committee of unsecured creditors.  No trustee or examiner has been appointed in the Debtors' cases.

    3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

    4.    The statutory predicates for the relief requested herein are sections 327(e), and 1107(b) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    Current Business Operations Of The Debtors

    5.    As of the Initial Filing Date, Delphi had global 2004 revenues of approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1

billion,[1] Delphi ranks as the fifth largest public company business reorganization in terms of

revenues, and the thirteenth largest public company business reorganization in terms of assets.

Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations

without supervision from the Bankruptcy Court.

6.    Delphi has become a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and the Company

(as defined below) is arguably the single largest global supplier of vehicle electronics,

transportation components, integrated systems and modules, and other electronic technology.

The Company's technologies and products are present in more than 75 million vehicles on the

road worldwide.  The Company supplies products to nearly every major global automotive

original equipment manufacturer with 2004 sales to its former parent, General Motors

Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company,

DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group

exceeding $850 million.

7.    As part of its growth strategy, Delphi has established an expansive global

presence with a network of manufacturing sites, technical centers, sales offices, and joint

ventures located in every major region of the world.  As of the Initial Filing Date, the Debtors

employed approximately 180,000 employees.  The Debtors' 50,600 U.S. employees work in

approximately 44 manufacturing sites, 13 technical centers, and in Delphi's Troy, Michigan

headquarters.  Approximately 34,750 of these individuals are hourly employees as of the Initial

Filing Date, 96% of these were represented by approximately 49 different international and local

unions.  Outside the United States, the Company's foreign entities employed more than 134,000

---

[1]    The aggregated financial data used in this Application generally consists of consolidated information from
Delphi and its worldwide subsidiaries and affiliates.

people on the Initial Filing Date, supporting 120 manufacturing sites and 20 technical centers in

nearly 40 countries around the globe.

8.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary

of GM.  Prior to January 1, 1999, GM conducted the Company's business through various

divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions

and subsidiaries were transferred to Delphi and its subsidiaries and affiliates (collectively, the

"Company") in accordance with the terms of a Master Separation Agreement between Delphi

and GM.  In connection with these transactions, Delphi accelerated its evolution from a North

American-based, captive automotive supplier to a global supplier of components, integrated

systems, and modules for a wide range of customers and applications.  Although GM is still the

Company's single largest customer, today more than half of Delphi's revenue is generated from

non-GM sources.

9.    Due to the significant planning that goes into each vehicle model, Delphi's

efforts to generate new business do not immediately affect its financial results, because supplier

selection in the auto industry is generally finalized several years prior to the start of production

of the vehicle.  When awarding new business, which is the foundation for the Company's

forward revenue base, customers are increasingly concerned with the financial stability of their

supply base.  The Debtors believe that they will maximize stakeholder value and the Company's

future prospects if they stabilize their businesses and continue to diversify their customer base.

The Debtors also believe that this must be accomplished in advance of the expiration of certain

benefit guarantees between GM and certain of Delphi's unions representing most of its U.S.

hourly employees which coincides with the expiration of the Company's U.S. collective

bargaining agreements in the fall of 2007.

C.      Events Leading To The Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the marketplace, Delphi's financial condition has deteriorated further in the first six months of 2005, with net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, approximately $1 billion less than the same time period a year earlier.[2]

11.    The Debtors believe that the Company's financial performance has deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward looking revenue requirements.  Because discussions with its Unions and GM were not progressing sufficiently, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

---

[2]      Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

13.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses.  This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness.  The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down during these cases.

14.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.    By this Application, the Debtors request entry of an order authorizing the Debtors to employ and retain Covington pursuant to certain engagement letters between Delphi and Covington dated July 9, 1999 and June 8**,** 2005, attached hereto as <u>Exhibits</u> <u>A</u> and <u>B,</u> respectively (together, the "Engagement Letters").

<u>Basis For Relief</u>

16.    The Debtors submit that Covington's proposed retention meets all the prerequisites for retention of special counsel under section 327(e) of the Bankruptcy Code, which permits a debtor-in-possession, with court approval, to employ counsel that has represented the

6

Debtors prior to the commencement of their chapter 11 cases, for a "specified special purpose" if

such employment is in the best interest of the Debtors.  Because Covington is the proposed

foreign trade and special corporate committee legal counsel to the Debtors, but not the proposed

bankruptcy counsel in these chapter 11 cases, section 327(e) does not require that Covington and

its attorneys be "disinterested persons" as defined in section 101(14) of the Bankruptcy Code.

Rather, section 327(e) instead requires that Covington not represent or hold any interest adverse

to the estates or the Debtors with respect to the matter on which Covington is to be employed.

As discussed below, the employment of Covington as foreign trade and special corporate

committee legal counsel is in the best interests of the Debtors.

The Debtors' Employment Of Covington<br>
<u>Is In The Best Interests Of The Estates</u>

17.    Covington will serve as foreign trade and special corporate committee legal

counsel to the Debtors during these chapter 11 cases in respect of the matters described in

paragraph 20 below.  Covington has performed similar work for the Debtors in the past and is

therefore familiar with the Debtors' businesses and operations.  In particular, Covington is

especially attuned to the unique legal issues that arise in the Debtors' industry.

18.    Covington is a leading international law firm, with more than 500 lawyers

practicing in key business and regulatory centers throughout the world.  Covington has extensive

experience representing and advising clients in connection with complex litigation, regulatory,

and corporate matters.  Most important for the purposes of this Application, several members of

Covington have extensive experience in the provision of advice regarding foreign trade controls,

the representation of corporate boards and subcommittees thereof in connection with internal

investigations, the provision of advice regarding indemnification of corporate officers and

directors, and corporate and securities law and their interplay with restructuring and bankruptcy

7

law.  Accordingly, the Debtors believe that Covington is well qualified to serve as foreign trade

and special committee legal counsel with respect to these issues in these chapter 11 cases in an

efficient and effective manner.

19.    The Debtors believe that the employment of Covington will enhance and

will not duplicate the employment of Skadden, Arps, Slate, Meagher, & Flom LLP ("Skadden"),

the Debtors' general bankruptcy counsel, Shearman & Sterling LLP ("Shearman"), the Debtors'

special counsel, Togut, Segal & Segal LLP ("Togut"), the Debtors' conflicts counsel, or any of

the other professionals retained by the Debtors to perform specific tasks that are unrelated to the

work to be performed by Covington as foreign trade and special corporate committee legal

counsel to the Debtors.  The Debtors understand that Covington will work with the other

professionals retained by the Debtors to avoid any such duplication.

<u>Services To Be Rendered By Covington</u>

20.    As set forth in the Engagement Letters, the Debtors wish to engage

Covington to provide services to the Debtors in connection with litigation and foreign trade

government contract matters.  The Debtors anticipate that such services will include the

following:

> (a)    Advice and assistance on U.S. foreign trade controls, including the scope, applicability, licensing, and compliance requirements under the International Traffic in Arms Regulations, Directorate of Defense Controls, U.S. Department of State;
>
> (b)    Advice to a Special Committee (the "Special Committee") of the Board of Directors (the "Board") in connection with demands made or that may be made by Delphi shareholders with regard to various accounting issues now under investigation and in litigation;
>
> (c)    Advice to the Special Committee in connection with the Company's selection of a new external auditor; and
>
> (d)    Advice to the Company regarding indemnification and advancement of funds to certain officers and directors.

8

21.   Covington has indicated its desire and willingness to represent the Debtors as set forth herein and to render the necessary professional services as foreign trade and special corporate committee legal counsel to the Debtors.

22.   The Debtors may request that Covington undertake specific matters beyond the scope of the responsibilities set forth above.  Should Covington agree in its discretion to undertake any such matter, the Debtors shall seek further order of this Court.

Disinterestedness Of Professionals

23.   The Marcu Affidavit filed in support of this Application contains information available to date on Covington's connections with other parties-in-interest, as required by Bankruptcy Rule 2014(a).  To the best of the Debtors' knowledge, and based on the information in the attached Marcu Affidavit, which is premised on the conflicts check Covington has completed as of this date, Covington, its partners, counsel, and associates do not hold or represent any interest adverse to the Debtors, their creditors, any other party-in-interest in these chapter 11 cases, their respective attorneys and investment advisors, the U.S. Trustee, or any person employed therein, with respect to the matters on which Covington is to be employed.

24.   Covington has disclosed to the Debtors that it has in all probability in the past represented, currently represents, and will likely in the future represent certain of the Debtors' creditors and other parties-in-interest in matters unrelated to the Debtors or their chapter 11 cases.  A list of the parties-in-interest that are current clients of Covington is attached hereto as Exhibit C.  A list of the parties-in-interest that are not current clients but for whom Covington provided legal services within the last five years is attached hereto as Exhibit D.  None of the parties-in-interest accounted for more than 1% of Covington's gross revenues for its 2005 fiscal year, with the exception of Microsoft (less than 3%), JP Morgan Chase (less than

3%), Goodyear Tire & Rubber Company (less than 2%), SG Cowen (less than 2%), the State of

Minnesota (less than 2%) and IBM (less than 2%).  Covington does not believe that such

representation of parties-in-interest in unrelated matters raises any actual or potential conflict of

interest of Covington relating to the representation of the Debtors as their foreign trade and

special corporate committee legal counsel in these chapter 11 cases.  The Debtors understand

that, in order to vitiate any actual or potential conflicts of interest, Covington will not assist the

Debtors in connection with their analysis, negotiations, and litigation, if any, with parties with

whom Covington has existing client relationships, and that Skadden (or other counsel if Skadden

has a conflict), instead, will handle these tasks.

<u>Professional Compensation</u>

25.    Covington intends to apply to this Court for compensation and

reimbursement of expenses in accordance with section 330(a) of the Bankruptcy Code, the

Bankruptcy Rules, applicable guidelines established by the U.S. Trustee, and orders of this

Court.  Covington acknowledges that all compensation will be subject to this Court's review and

approval, after notice and a hearing.

26.    On the Petition Date, Covington was owed, and continues to be owed,

approximately $263,559.79 for services and charges performed prior to the Petition Date.

27.    Under the applicable provisions of the Bankruptcy Code, and subject to the

approval of this Court, the Debtors propose to pay Covington its hourly billing rates in effect for

the period in which services are performed, and other costs incurred for support services on

behalf of Debtors.  The current hourly rates of the Covington attorneys who are expected to be

principally responsible for rendering services to the Debtors in connection with these chapter 11

cases are as follows:  Aaron R. Marcu ($760); Peter D. Trooboff ($580); Adam Siegel ($580);

Barbara Hoffman ($550); Peter L. Flanagan ($520); Corrine A. Goldstein ($500); Michael J.

10

Naft ($410); Kimberly A. Strosnider ($365); and Gina R. Merrill ($270).  Other Covington

attorneys from time to time may render services to the Debtors in connection with these cases.

The current hourly rates for Covington attorneys range from $200 to $760.  The current hourly

rates for the services of legal assistants range from $165 to $250.  Covington customarily adjusts

its billing rates on an annual basis, usually as of October 1, and if Covington increases its rates

during the pendency of this proceeding, it will seek compensation at the modified rates, subject

to the terms of the Engagement Letters.  Pursuant to the engagement letter dated June 8, 2005,

notwithstanding the firm's increase in rates charged as of October 1, 2005, Covington will not

increase its rates with respect to its representation of the Special Committee of the Board until

June 8, 2006, other than for the regular progression of associates as they move from one year to

the next in terms of seniority.

28.    No arrangement is proposed between the Debtors and Covington for

compensation to be paid in these chapter 11 cases other than as set forth above, in the

Engagement Letters, and in the Marcu Affidavit.

29.    At the Debtors' request, Covington has continued to assist the Debtors in

connection with their foreign trade and special corporate committee issues since October 8, 2005

and hence the Debtors request Covington's retention to be effective <u>nunc pro tunc</u> to October 8,

2005.


<u>Conclusion</u>

30.    For the foregoing reasons, the Debtors submit that the employment of

Covington as the Debtors' foreign trade and special corporate committee legal counsel on the

terms set forth herein is in the best interests of the estates.

## Notice

31.    Notice of this Application has been provided in accordance with the Order

Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And

Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance

With Local Bankr. R. 1007-2(e) entered by this Court on October 14, 2005 (Docket No. 245).  In

light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

## Memorandum Of Law

32.    Because the legal points and authorities upon which this Application relies

are incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

12

WHEREFORE, the Debtors respectfully request that this Court enter an order (a)

authorizing the Debtors to employ and retain Covington as their foreign trade and special

corporate committee legal counsel to perform the services set forth herein, and (b) granting the

Debtors such other and further relief as is just.


Dated:    New York, New York
          February 17, 2006


                              DELPHI CORPORATION, on behalf of itself and
                              certain of its subsidiaries and affiliates, as Debtors and
                              Debtors-in-possession

                              By:  /s/ David M. Sherbin_____
                                    Name: David M. Sherbin
                                    Title:  Vice President, General Counsel, and
                                            Chief Compliance Officer

# EXHIBIT A

COVINGTON & BURLING

1201 PENNSYLVANIA AVENUE, N. W.

P.O. BOX 7566

WASHINGTON, D.C. 20044-7566

(202) 662-6000

FACSIMILE: (202) 662-6291

ROBERT J. GAGE
DIRECT DIAL NUMBER
(202) 662-5636

DIRECT FACSIMILE NUMBER
(202) 778-5636

rgage@cov.com

LECONFIELD HOUSE
CURZON STREET
LONDON W1Y 8AS
ENGLAND
TELEPHONE: 44-171-495-5655
FACSIMILE: 44-171-495-3101

KUNSTLAAN 44 AVENUE DES ARTS
BRUSSELS 1040 BELGIUM
TELEPHONE: 32-2-549-5230
FACSIMILE: 32-2-502-1598

July 9, 1999

Delphi Automotive Systems Corporation
5725 Delphi Drive
Troy, Michigan  48098-2815

Attention:  David N. Goldsweig, Esquire
            Assistant General Counsel

        Re:    Covington & Burling Legal Services for
               Delphi Automotive Systems Corporation

Dear David:

        We are pleased to confirm that Covington & Burling will provide legal
assistance to Delphi Automotive Systems Corporation with respect to antitrust and
government contract matters when requested by Delphi Automotive systems Corporation.
We have also agreed to second our associate attorney, Eric Phillips, to you for a three-
month period, as further described below.  It is understood that our client in this repre-
sentation is Delphi Automotive Systems Corporation and its subsidiaries.  By subsequent
mutual agreement, our services may be extended to other matters or other related entities.
The provisions of this letter will apply, unless otherwise subsequently agreed to in writing,
to any such expanded or subsequent representation.

        We have confirmed from our records that we do not have any outstanding
adverse representation of another client on any matter that is substantially related to the
representation described in this letter, and we undertake that we will not, without your
prior consent, undertake any such adverse representation in the future.  The same shall
apply with respect to any other matters on which we agree to represent Delphi Automotive
Systems Corporation or any of its subsidiaries or affiliates in the future.  On the other
hand, we reserve the right (and you by accepting our representation on these terms consent
thereto) to continue to represent or to undertake the representation of new or existing
clients in matters not substantially related to our representation in this matter, even though
the interests of the other clients in those matters may be adverse to those of Delphi
Automotive Systems Corporation and any of its subsidiaries or affiliates.

COVINGTON & BURLING

David N. Goldsweig, Esquire
July 9, 1999
Page 2

Unless otherwise subsequently agreed to in writing, charges for lawyers, legal assistants and other professionals employed by us will be in accordance with our standard billing rates as in effect at the time services are rendered. By letters dated June 18, 22 and 23, we have proposed the Firm's initial rate structure and travel policy, as tailored to your requirements. Our rates are adjusted annually, usually as of October 1, the start of our fiscal year. Generally, our statements for services will be rendered monthly, although statements may be rendered more or less frequently depending upon the circumstances and amounts involved.

We have agreed to second our associate, Eric Phillips, to you for a three-month period. We will bill you monthly, in arrears, for his service at the rate of $30,000 per month. Phillips will remain our employee, and we will be solely responsible for all his insurance and other employee benefits. We will also be solely responsible for Phillips' transportation and lodging expenses. As Phillips remains our employee, we will need to check in advance through our conflicts system all matters on which Phillips will be called to render advice to Delphi Automotive Systems Corporation with the understanding that he will be excused from any matter which, in our opinion, raises issues of conflict of interest.

Our statements will also include our usual and customary charges for support services incurred on your behalf, such as printing, duplicating, transcripts, computer research, telecommunications, secretarial overtime (where attributable to your special needs), mail, deliveries and the like, as well as out-of-pocket costs such as travel (subject to our arrangements). It is our general practice to ask our clients to pay directly to the supplier for certain larger charges and expenses incurred on behalf of the client. Examples of such charges and expenses are expert witness fees, fees for local or special counsel and certain transcript charges. Invoices received by us for such items will be forwarded to you promptly for direct payment.

As a professional partnership, we do not have the resources to provide financing to our clients. Accordingly, we expect payment in full of our statements within 30 days of the date rendered. If you should have a question regarding a particular charge or other aspect of a statement, the portion not subject to question should be paid within the specified period and the question put to us within that time. Because there have been instances where clients have been substantially in arrears in payment of our statements, we reserve the right to charge interest on any portion of a statement that is not paid within the specified period and suspend services until satisfactory payment arrangements are made or, if necessary, to terminate such services.

COVINGTON & BURLING

David N. Goldsweig, Esquire
July 9, 1999
Page 3

       If the foregoing plan of representation is acceptable to Delphi Automotive Systems Corporation, please indicate concurrence by signing and returning a copy of this letter to me.  We look forward to working with you.

                 Sincerely yours,

                 Robert J. Gage

cc:  Logan G. Robinson, Esquire
     Mr. Buffon
     Mr. Denniston
     Mr. Rule

**AGREED TO:**

**DELPHI AUTOMOTIVE SYSTEMS CORPORATION**

By:_____    7/15/99
    David N. Goldsweig
    Assistant General Counsel

# EXHIBIT B

# COVINGTON & BURLING

1330 AVENUE OF THE AMERICAS
NEW YORK, NY 10019
TEL 212.841.1000
FAX 212.841.1010
WWW.COV.COM

NEW YORK
WASHINGTON, DC
LONDON
BRUSSELS
SAN FRANCISCO

AARON R. MARCU

TEL 212.841.1078
AMARCU@COV.COM

June 8, 2005

*VIA FEDERAL EXPRESS*

David N. Farr
Craig G. Naylor
Special Committee for Derivative Demands
Delphi Corporation
5725 Delphi Drive
Troy, Michigan  48098

> Re:    <u>Special Committee for Derivative Demands</u>

Gentlemen:

We are very pleased to confirm that Covington & Burling will represent the above-entitled Special Committee of the Board of Directors ("Special Committee") of Delphi Corporation ("Delphi" or the "Company") in connection with demands made or to be made by Delphi shareholders in connection with various accounting issues now under investigation and in litigation.  If by subsequent agreement our services are extended to other matters, the provisions of this letter will also apply to that representation unless otherwise agreed in writing.

I will be in charge of the engagement, but other lawyers will be called upon as needed.  Our fee will be determined on the basis of a number of factors: our hourly rates in effect at the time services are rendered (currently $720 for me, $430 for Keith Lieberthal and $340 for Michael Naft; the range for our lawyers is $180 to $720 and $140 to $210 for our legal assistants), the value of the services provided, the degree of difficulty of the matter, preclusion from other engagements, and the result obtained.  The rates for particular individuals are adjusted from time to time, usually as of October 1, the start of our fiscal year.  As an accommodation to the Company, however, even if our rates are adjusted on October 1, 2005, we will not increase our rates until one year after the date of this agreement, other than for the regular progression of associates as they move from one year to the next in terms of seniority.

At the request of the Company, we generally will charge for our services and expenses in accordance with the Company's billing guidelines for outside counsel, which have been provided to us.  As I have discussed with the Company, however, and notwithstanding those guidelines, we will charge for necessary travel time by lawyers and paraprofessionals (which generally and to the extent practical will be spent on work for the Special Committee in any event) and necessary time spent organizing and managing documents for the matter, and we will pass on the costs of overtime, overtime meals and late-night transportation.  Our statements will summarize charges for support services incurred on your behalf, such as printing, duplicating, transcripts,

COVINGTON & BURLING

David N. Farr
Craig G. Naylor
Special Committee for Derivative Demands
June 8, 2005
Page 2 of 3

computer research, telecommunications, any secretarial overtime attributable to your special needs, mail, deliveries and the like, as well as out-of-pocket costs, such as travel. Where substantial third-party payments (such as co-counsel fees, expert fees, special studies, transcripts, or any single charge of more than $1,000) are required, we may either forward the charge to the Company for direct payment or request advance funds to cover the cost.

Our statements for professional services will be rendered monthly. We will expect the Company, on behalf of the Special Committee, to transmit payment of our statements in full within 30 days of receipt. If you have a question regarding a particular charge or other aspect of a statement, we hope you will raise it with us, but in such an event we expect timely payment of the portion not subject to question. If any statement remains unpaid for more than 90 days, we may cease performing services until satisfactory arrangements have been made for payment of outstanding statements and future statements.

Our records reveal no existing adverse representation of another client on any matter that is substantially related to this matter. Our records also reveal no existing representations in other matters of another client that is adverse to you or the Company in this matter. Without your prior consent, we will not undertake any substantially related adverse representation in the future, nor will we undertake such adverse representations with respect to other matters we may subsequently undertake on your behalf.

Notwithstanding the foregoing, however, you agree that we will have the right to represent other clients on matters that do not have a substantial relationship to any matter on which we are representing the Special Committee, even if in such matter the interests of the Special Committee or those of Delphi may be adverse, or if the other client, represented by other counsel, happens to be adverse to the Special Committee or Delphi in a matter in which we are representing it. In any such situation in which we would be adverse to the Special Committee or Delphi, we will communicate with you and the Company, and you and the Company agree that in any case where a conflicts waiver would be necessary, neither you nor the Company will unreasonably withhold the granting of a waiver.

I trust this letter accurately reflects our mutual understanding. If you have questions about any aspect of it, please let me know promptly; otherwise I would appreciate your confirming our understanding by signing and returning all of the enclosed originals of this letter to me in the enclosed envelope. We have also asked the Company to confirm its agreement to the terms of this letter of engagement by countersigning as well. When all of the signatories have executed all of the originals, I will send fully executed copies to you for your files.

COVINGTON & BURLING

David N. Farr
Craig G. Naylor
Special Committee for Derivative Demands
June 8, 2005
Page 3 of 3

      We very much appreciate your selecting our firm to assist you, and we look forward to working with you on this matter.

Sincerely yours,

Aaron R. Marcu

Agreed to:

David N. Farr

Craig G. Naylor

Joseph E. Papelian
Delphi Corporation

# EXHIBIT C

## Delphi Parties in Interest For Whom Covington Burling Has Open Matters

| Client name | Category | Comments |
|---|---|---|
| 3M Co | G (Top 50 Creditors) | Matters Listed Under Minnesota Mining and Manufacturing Company |
| AB SKF | Q (Major Suppliers) | Antitrust Matter Listed Under Colinx |
| ADEM - Water Division - Compliance Unit of Ground Water Branch (Alabama) | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State Matters For The State of Alabama; Nothing Specific For This Entity |
| ADEQ Tanks Program Division - Inspection and Compliance Unit (Arizona) | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State Matters For The State of Arizona; Nothing Specific For This Entity |
| Affinia | Q (Major Suppliers) | Foreign Trade Controls Matter |
| AFL-CIO Local 755 | F (Parties to Litigation and Their Counsel) | Matter For American Federation of Government Employees (Parent Organization) |
| AFL-CIO Local 755 | T (Unions Representing Company Employees) | Matter For American Federation of Government Employees (Parent Organization) |
| AIG Excess Casualty North America (Lexington) | D (Insurers) | Multiple Matters For Parent Company, Other Subsidiaries, and Affiliates |
| AIG Worldsource | D (Insurers) | Multiple Matters For Parent Company, Other Subsidiaries, and Affiliates |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Air Liquide Industrial US LP | O (Lienholders and Other Significant Lenders) | Antitrust Matter For Givaudan (Subsidiary of Air Liquide) |
| Air Resources Board (ARB) (California) | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State and Healthcare Matters For The State of California; Nothing Specific For This Entity |
| Alabama Department of Environmental Management | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State Matters For The State of Alabama; Nothing Specific For This Entity |
| Alabama Power Co. | M (Counterparties to Major Contracts) | Joint-State Matters For The State of Alabama; Nothing Specific For This Entity |
| Alcan Inc. | Q (Major Suppliers) | Antitrust and Patent Issues |
| Alcoa Inc | G (Top 50 Creditors) | Multiple Matters For Howmet Company, Of Which Alcoa Owns 85%. Antritrust and Patent Issues For Alcan (Subsidiary) |
| Allied World Assurance Holdings, Ltd | D (Insurers) | Matters For AIG and Units of Goldman Sachs, Whom Are Shareholders |
| Alltel | M (Counterparties to Major Contracts) | Telecommunications Matter For Pacific Telecom (Subsidiary) |
| Alps Electric Co Ltd | G (Top 50 Creditors) | Litigation, Tax, and Securities Matters |
| Aluminum Company of the Americas | Q (Major Suppliers) | Matters For Howmet Company, Of Which Alcoa (Short Form Name) Owns 85%. Open Antritrust and Patent Issues For Alcan (Subsidiary) |

## Delphi Parties in Interest For Whom Covington Burling Has Open Matters

| Client name | Category | Comments |
|---|---|---|
| American Equipment Leasing | O (Lienholders and Other Significant Lenders) | Multiple Matters For Citigroup (Parent Company) |
| American Finance Group | L (Counterparties to Major Leases) | Three Insurance Matters For American Premier Underwriters (American Financial Group) |
| Apple | F (Parties to Litigation and Their Counsel) | Multiple Legislation and Intellectual Property Matters For The Business Software Alliance; Apple is a Member of This Group |
| Arizona Department of Energy | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State Matters For The State of Arizona; Nothing Specific For This Entity |
| Arnold & Porter | F (Parties to Litigation and Their Counsel) | General Litigation Matter |
| Arvin Meritor | P (Major Customers) | Foreign Trade Controls Matter |
| AT&T Corp. | M (Counterparties to Major Contracts) | Multiple Employee Plans and Insurance Matters |
| Ayco Company LP | D (Insurers) | Goldman Sachs (Parent Company); Multiple Matters For Goldman Sachs |
| Balch & Bingham LLP | E (Professionals for the Past Three Years) | C&B Represents a Partner at Balch & Bingham (Robert W. Johnson II) in a Personal Matter; Two Other Open Personal Accounts for the Firm, Which Have Not Been Recently Used |
| Banc of America Securities LLC | K (Underwriters of Securities Issued by the Company) | Matter For Bank of America Securities (Parent Company); Multiple Matters For Bank of America N.A. |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Banco Santander Central Hispano S.A. | C (All Lenders) | Banking Matter For Abbey National plc (Related Entity) |
| Bank of America, N.A. | C (All Lenders) | Multiple Matters |
| Bank of New York | C (All Lenders) | Matters in Foreign Trade Controls, Finance and Bankruptcy |
| Bank One Michigan | O (Lienholders and Other Significant Lenders) | Acquired by JP Morgan Chase & Co. in 2004; Matters For JP Morgan and Bank One |
| Bank One Trust Company N.A. | J (Indenture Trustees) | Acquired by JP Morgan Chase & Co. in 2004; Matters For JP Morgan and Bank One |
| Bank One, NA | O (Lienholders and Other Significant Lenders) | Acquired by JP Morgan Chase & Co. in 2004; Matters For JP Morgan and Bank One |
| BB&T Capital Markets | K (Underwriters of Securities Issued by the Company) | Four Federal Election Law Matters |
| Bear Stearns | I (Record Note holders holding 5% or more) | Multiple Matters |
| Bear Stearns Inverstment Products | C (All Lenders) | Multiple Matters |
| Bell South | M (Counterparties to Major Contracts) | Communications Matter |

## Delphi Parties in Interest For Whom Covington Burling Has Open Matters

| Client name | Category | Comments |
|---|---|---|
| Blue Cross Blue Shield | M (Counterparties to Major Contracts) | Multiple Matters For Various Subsidiaries and Related Companies |
| BNP Paribas | C (All Lenders) | Antitrust Matter |
| BNP Paribas Securities Corp | K (Underwriters of Securities Issued by the Company) | Antitrust Matter For Parent Company (BNP Paribas) |
| Burson Marsteller | E (Professionals for the Past Three Years) | Food and Drug Matters For APCO Worldwide and GCI Group (Subsidiary of Parent Company: WPP Group) |
| C.E. Communication | M (Counterparties to Major Contracts) | Employee Plans Matters For Interpublic Group (Parent Company) |
| C.N.A. | R (Letter of Credit Issuers and Beneficiaries) | Matters For Subsidiaries of Loews Corp. (Also Parent of C.N.A. Insurance Companies, Columbia Casualty Company, Continental Casualty) |
| C.N.A. Financial Insurance | D (Insurers) | Matters For Subsidiaries of Loews Corp. (Also Parent of C.N.A. Insurance Companies, Columbia Casualty Company, Continental Casualty) |
| Cadillac | F (Parties to Litigation and Their Counsel) | Environmental and Foreign Trade Controls Matters Under General Motors (Parent Company) and Other Subsidiaries |
| California Environmental Protection Agency: (Cal EPA) | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State and Healthcare Matters For The State of California; Nothing Specific For This Entity |
| Calyon New York Branch | C (All Lenders) | Multiple Bankruptcy Matters |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Cambrex Bio Science | Q (Major Suppliers) | Food and Drug Matter Listed Under Cambrex Corp. |
| Candlewood Capital Partners LLC | C (All Lenders) | Corporate Governance Matter |
| Canon Financial Services | O (Lienholders and Other Significant Lenders) | Matters For Parent Canon |
| Canyon Capital CDO 2002-1 Ltd. | C (All Lenders) | Two Communications Matters; Managed by Canyon Capital Advisors LLC, sub of Canyon Partners, Inc. |
| Capital Group International, Inc. | H (Holders of 5% or More of Any Outstanding Equity Security of the Company) | One Tax and One Litigation Advice Matter For Subsidiaries of Parent Capital Group Companies |
| Capital Resource Group International, Inc. | H (Holders of 5% or More of Any Outstanding Equity Security of the Company) | One Tax and One Litigation Advice Matter For Subsidiaries of Parent Capital Group Companies |
| Cardinal Health | Q (Major Suppliers) | Insurance Matter For Parent Cardinal Healthcare |
| Cardinal Health 200, Inc. | M (Counterparties to Major Contracts) | Insurance Matter For Parent Cardinal Healthcare |
| Cardinal Health Canada 301, Inc. | Q (Major Suppliers) | Insurance Matter For Parent Cardinal Healthcare |
| Cellco Partnership | M (Counterparties to Major Contracts) | Matters For Verizon, A Related Entity |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Certified Unified Program Agencies (CUPA) (California) | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State and Healthcare Matters For The State of California; Nothing Specific For This Entity |
| Cigna Behavioral Health | M (Counterparties to Major Contracts) | Matter For Related Entity Connecticut General Life Insurance Company |
| CIGNA Corporation | G (Top 50 Creditors) | Matter For Related Entity Connecticut General Life Insurance Company |
| Citibank N.A. | C (All Lenders) | Multiple Matters For Citigroup (Parent Company) |
| Citibank Texas, National Association | F (Parties to Litigation and Their Counsel) | Multiple Matters For Citigroup (Parent Company) |
| Citicorp USA Inc. | C (All Lenders) | Multiple Matters For Citigroup (Parent Company) |
| Citicorp Vendor Finance, Inc. | O (Lienholders and Other Significant Lenders) | Multiple Matters For Citigroup (Parent Company) |
| Citigroup | I (Record Note holders holding 5% or more) | Multiple Matters For Citigroup (Parent Company) |
| Citigroup Financial Products Inc. | C (All Lenders) | Multiple Matters For Citigroup (Parent Company) |
| Citigroup Global Markets Inc. | K (Underwriters of Securities Issued by the Company) | Multiple Matters For Citigroup (Parent Company) |

## Delphi Parties in Interest For Whom Covington Burling Has Open Matters

| Client name | Category | Comments |
|---|---|---|
| City of Flint, Michigan | G (Top 50 Creditors) | Joint-State and Federal Benefits Matters For The State of Michigan; Nothing Specific For This Entity |
| City of Laurel, Mississippi | L (Counterparties to Major Leases) | Two Joint-State Matters For The State of Mississippi; Nothing Specific For Laurel, MS. |
| CNA Financial Insurance | N/A | Multiple Matters For Subsidiaries of Loews Corp. (Also Parent of C.N.A. Insurance Companies, Columbia Casualty Company, Continental Casualty) |
| CNA Insurance Companies | N/A | Multiple Matters For Subsidiaries of Loews Corp. (Also Parent of C.N.A. Insurance Companies, Columbia Casualty Company, Continental Casualty) |
| Colorado Department of Public Health and Environment (DPHE) | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State Matter For The State of Colorado; Nothing Specific For This Entity |
| Columbia Casualty Insurance Company | D (Insurers) | Multiple Matters For Subsidiaries of Loews Corp. (Also Parent of C.N.A. Insurance Companies, Continental Casualty) |
| Commissariat a L'Energie Atomique | Q (Major Suppliers) | Parent of Areva (Advisory), Alstom Power, Inc. (Insurance), Framatome ANP, Inc. (Energy); Three Matters Listed (Advisory, Energy, and Insurance) |
| Compaq Financial Services Corporation | O (Lienholders and Other Significant Lenders) | Multiple Matters For Related Party Hewlett-Packard |
| Compliance Counsel, Lear Corporation | F (Parties to Litigation and Their Counsel) | Two Matters (Corporate Governance and Securities Advice) Listed Under Lear Corporation |
| Connecticut General Life Insurance Company | M (Counterparties to Major Contracts) | Matter For Related Entity Connecticut General Life Insurance Company |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Constellation NewEnergy TX | M (Counterparties to Major Contracts) | General Corporate Matter For Constellation Energy |
| Continental Gummi-Werke AG | Q (Major Suppliers) | Also Known As Continental AG; Some Organizational and Governance Matters For Subsidiaries |
| Coral Energy Resources, LP | D (Insurers) | Matters For Subsidiaries of Related Party Shell Oil |
| County of Marquette, Michigan | L (Counterparties to Major Leases) | Joint-State and Federal Benefits Matters For The State of Michigan; Nothing Specific For This Entity |
| Credit Lyonnais | O (Lienholders and Other Significant Lenders) | Matters For Subsidiaries of Related Party Calyon |
| Credit Suisse First Boston LLC | K (Underwriters of Securities Issued by the Company) | One Open Matter |
| CSFB | E (Professionals for the Past Three Years) | One Open Matter |
| Cummins | P (Major Customers) | Matter For Related Party Cummins Engine Company |
| Dana Corp | G (Top 50 Creditors) | Multiple Matters |
| Dana Corp Global Production WHS | F (Parties to Litigation and Their Counsel) | Multiple Matters |

## Delphi Parties in Interest For Whom Covington Burling Has Open Matters

| Client name | Category | Comments |
|---|---|---|
| Danzas AEI | N/A | Bank and Finance Matter For Related Party Deutsche Postbank AG |
| Deloitte & Touche | Q (Major Suppliers) | Mergers and Aquisitiions, Government and Securities Matters For Various Subsidiaries |
| Deloitte Touche Tohmatsu | E (Professionals for the Past Three Years) | Mergers and Aquisitiions, Government and Securities Matters For Various Subsidiaries |
| Department of Toxic Substances Control (California) | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State and Healthcare Matters For The State of California; Nothing Specific For This Entity |
| Deutsche Bank AG | C (All Lenders) | Multiple Matters For Deutsche Bank and Other Subsidiaries (Real Estate, Trusts and Estates, etc...) |
| Deutsche Bank Securities Inc. | K (Underwriters of Securities Issued by the Company) | Multiple Matters For Deutsche Bank and Other Subsidiaries (Real Estate, Trusts and Estates, etc...) |
| Deutsche Bank Trust Company America | C (All Lenders) | Multiple Matters For Deutsche Bank and Other Subsidiaries (Real Estate, Trusts and Estates, etc...) |
| E I Dupont de Nemours & Co Inc | Q (Major Suppliers) | Employee Plans Matter For Related Party DuPont Company |
| E I Dupont de Nemours & Co TX | G (Top 50 Creditors) | Employee Plans Matter For Related Party DuPont Company |
| Eaton Corporation | F (Parties to Litigation and Their Counsel) | One Open Matter |

## Delphi Parties in Interest For Whom Covington Burling Has Open Matters

| Client name | Category | Comments |
|---|---|---|
| EDS | E (Professionals for the Past Three Years) | Health Care Matter |
| Elco Textron Fastening Systems | F (Parties to Litigation and Their Counsel) | Foreign Trade Control and Employee Plan Matters For Parent Textron |
| Erie Cnty Dept Environ Serv. OH | M (Counterparties to Major Contracts) | Multiple Joint-State and Healthcare Matters For The State of Ohio; Nothing Specific For This Entity |
| Ernst & Young | E (Professionals for the Past Three Years) | Criminal Representation Matter |
| Federal Mogul Corp. | Q (Major Suppliers) | M&A and Anti-Trust Matters |
| Fidelity | E (Professionals for the Past Three Years) | Insurance Matter |
| First National Bank of Chicago | N/A | Subsidiary of JP Morgan Chase; Multiple Matters |
| Fitzgerald Wtr Lgt&Bond Com GA | M (Counterparties to Major Contracts) | Joint-State Matter For The State of Georgia; Nothing Specific For This Entity |
| Flagship Capital | N/A | Multiple Matters For Related Party Bank of America |
| Fleishman Hillard Japan, Inc | E (Professionals for the Past Three Years) | Fleishman Hillard Part of Omnicom; Criminal Representation and Food and Drug Matters |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Flint (City of) MI | M (Counterparties to Major Contracts) | Joint-State and Federal Benefits Matters For The State of Michigan; Nothing Specific For This Entity |
| Ford Motor Company | F (Parties to Litigation and Their Counsel) | Tax and Trade Controls Matters For Volvo |
| Ford Motor Land Development Corporation | L (Counterparties to Major Leases) | Tax and Trade Controls Matters For Volvo |
| Fujitisu Ltd | Q (Major Suppliers) | Environmental Matter in Europe |
| General Electric Capital Corporation | C (All Lenders) | Multiple Matters Listed For Parent Company and Various Subsidiaries |
| General Electric Co Inc | G (Top 50 Creditors) | Multiple Matters Listed For Parent Company and Various Subsidiaries |
| General Motors Corporation | L (Counterparties to Major Leases) | Environmental and Foreign Trade Controls Matters Under Related Party General Motors and Subsidiaries |
| General Motors Daewoo Auto and Technology | F (Parties to Litigation and Their Counsel) | Environmental and Foreign Trade Controls Matters Under Related Party General Motors and Subsidiaries |
| General Motors Investment Management Corporation | M (Counterparties to Major Contracts) | Environmental and Foreign Trade Controls Matters Under General Motors (Parent Company) and Subsidiaries |
| Georgia Department of Natural Resources | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State Matter For The State of Georgia; Nothing Specific For This Entity |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Germain's Technology Group | L (Counterparties to Major Leases) | Food and Drug Matter For Related Party Associated British Foods |
| GM do Brazil | M (Counterparties to Major Contracts) | Environmental and Foreign Trade Controls Matters Under Related Party General Motors and Subsidiaries |
| GM France | M (Counterparties to Major Contracts) | Environmental and Foreign Trade Controls Matters Under Related Party General Motors and Subsidiaries |
| GM License Exchange | M (Counterparties to Major Contracts) | Environmental and Foreign Trade Controls Matters Under Related Party General Motors and Subsidiaries |
| GMPT | F (Parties to Litigation and Their Counsel) | Health Care Matter For Related Party Electronic Data Systems |
| Goldman Sachs | I (Record Note holders holding 5% or more) | Multiple Matters For Goldman Sachs and Other Subsidiaries |
| Goldman Sachs Credit Partners L.P. | C (All Lenders) | Multiple Matters For Goldman Sachs and Other Subsidiaries |
| Harley Davidson | P (Major Customers) | Multiple Matters |
| Hella Kgaa Hueck & Co. | Q (Major Suppliers) | Antitrust Matter |
| Henry County REMC IN | M (Counterparties to Major Contracts) | Joint-State and Healthcare Matters For The State of Indiana; Nothing Specific For This Entity |

## Delphi Parties in Interest For Whom Covington Burling Has Open Matters

| Client name | Category | Comments |
|---|---|---|
| Hill & Knowlton | E (Professionals for the Past Three Years) | Food and Drug Matters For APCO Worldwide and GCI Group (Subsidiary of Parent Company: WPP Group) |
| Hitachi Automotive | Q (Major Suppliers) | Sarbarnes-Oxley Matter and EU Environmental Law Matter For Hitachi, Ltd. (Parent Company) |
| Hitachi Credit America Corp. | O (Lienholders and Other Significant Lenders) | Sarbarnes-Oxley Matter and EU Environmental Law Matter For Hitachi, Ltd. (Parent Company) |
| Hitachi Ltd | G (Top 50 Creditors) | Sarbarnes-Oxley Matter and EU Environmental Law Matter For Hitachi, Ltd. |
| Honda | P (Major Customers) | General and Customs Matters For American Honda Motor Company (Subsidiary) |
| Honeywell ACS Sensing & Control | F (Parties to Litigation and Their Counsel) | Employee Plans Matters In US; Other Data Protection and Foreign Trade Controls Matters In Europe |
| HP Finance | L (Counterparties to Major Leases) | Multiple Matters For Hewlett-Packard and Subsidiaries |
| HSBC Bank USA, National Association | C (All Lenders) | Consumer Protection Matter For Household International (Related Entity Became Part of HSBC in 2003) |
| HSBC Securities (USA) Inc. | K (Underwriters of Securities Issued by the Company) | Consumer Protection Matter For Household International (Related Entity Became Part of HSBC in 2003) |
| IBM Corporation | M (Counterparties to Major Contracts) | Multiple Matters |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| IDEM - Office of Land Quality (Indiana) | R (Letter of Credit Issuers and Beneficiaries) | Joint-State and Healthcare Matters For The State of Indiana; Nothing Specific For This Entity |
| IDEM - Office of Land Quality (Indiana) | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State and Healthcare Matters For The State of Indiana; Nothing Specific For This Entity |
| IDS Life Insurance Company | C (All Lenders) | General Matter For Related Party American Express |
| Illinois Environmental Protection Agency | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State Matters For The State of Illinois; Nothing Specific For This Entity |
| Illinois Tool Works Inc | G (Top 50 Creditors) | General and Insurance Matters |
| Ina-Schaeffler KG | Q (Major Suppliers) | Antitrust Matter For Related Party Endorsia.com International AB |
| Indiana -American Water Company, Inc. | M (Counterparties to Major Contracts) | Two Foreign Trade Control Matters For Parent, RWE AG |
| Indiana Department of Environmental Management (IDEM) | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State and Healthcare Matters For The State of Indiana; Nothing Specific For This Entity |
| ING Capital LLC | C (All Lenders) | Matters For ING Bank and Various Subsidiaries |
| ING Investment Management CLO I, Ltd | C (All Lenders) | Matters For ING Bank and Various Subsidiaries |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| ING Prime Rate Trust | C (All Lenders) | Matters For ING Bank and Various Subsidiaries |
| ING Senior Income Fund | C (All Lenders) | Matters For ING Bank and Various Subsidiaries |
| Ino Therapeutics, Inc. | Q (Major Suppliers) | Food and Drug Matter For Parent LindeGas LLC |
| Insurance Company of the State of Pennsylvania | D (Insurers) | Various Matters For Multiple Related Entities |
| Integrated Therapeutics Group, Inc. | M (Counterparties to Major Contracts) | Multiple Matters For Parent Schering-Plough |
| Integrated Waste Management Board (CIWMB) (California) | S (State and Other Governmental Authorities With an Interest in the Company) | Open Matters Joint-State and Healthcare Matters For The State of California; Nothing Specific For This Entity |
| Intel Corporation | M (Counterparties to Major Contracts) | Multiple Matters For Business Software Alliance; Intel is a Policy Only Member of This Organzation |
| Intellectual Property Mining | M (Counterparties to Major Contracts) | Two Bankruptcy Matters For IPM Inc. |
| International Truck | F (Parties to Litigation and Their Counsel) | Employee Plans Matter |
| Invensys | F (Parties to Litigation and Their Counsel) | Foreign Trade Controls Matter |

## Delphi Parties in Interest For Whom Covington Burling Has Open Matters

| Client name | Category | Comments |
|---|---|---|
| Isuzu Group | P (Major Customers) | Bankruptcy Matter For Related Party Isuzu Motors Limited |
| Isuzu Motors Polska Sp Zo O | P (Major Customers) | Bankruptcy Matter For Related Party Isuzu Motors Limited |
| ITW Shakeproof Automotive | Q (Major Suppliers) | General and Insurance Matters For Illinois Tool Works |
| ITW Tomco | Q (Major Suppliers) | General and Insurance Matters For Illinois Tool Works |
| J.P. Morgan Securities Inc. | K (Underwriters of Securities Issued by the Company) | Multiple Matters For Parent J.P. Morgan and Other Subsidiaries |
| J.P. Morgan Trust Company | J (Indenture Trustees) | Multiple Matters For Parent J.P. Morgan and Other Subsidiaries |
| John Deere | Q (Major Suppliers) | Multiple Matters For Parent Deere and Co. |
| Johnson Controls | P (Major Customers) | Insurance Matter |
| Johnson Matthey PLC | R (Letter of Credit Issuers and Beneficiaries) | Food and Drug Matter |
| JPMorgan Chase Bank, N.A. | C (All Lenders) | Multiple Matters For Parent J.P. Morgan and Other Subsidiaries |

## Delphi Parties in Interest For Whom Covington Burling Has Open Matters

| Client name | Category | Comments |
|---|---|---|
| Kansas Department of Health & Environment | S (State and Other Governmental Authorities With an Interest in the Company) | Health Care and Federal Benefits Matters For The State of Kansas; Nothing Specific For This Entity |
| Kautex | P (Major Customers) | Foreign Trade Control and Employee Plan Matters For Textron (Parent Company), Which is a Firm Client |
| KDHE- Bureau of Environmental Remediation - Storage Tank Section (Kansas) | S (State and Other Governmental Authorities With an Interest in the Company) | Health Care and Federal Benefits Matters For The State of Kansas; Nothing Specific For This Entity |
| Kentucky Environmental and Public Protection Cabinet | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State Matters For The State of Kentucky; Nothing Specific For This Entity |
| Killam Industrial Development Partnership, Ltd. | L (Counterparties to Major Leases) | Two Criminal Representation Matters For Killam Group, Inc. |
| KKR Financial | N/A | Mattters Specific to Kohlberg, Kravis, & Roberts--Firm Client (Energy, Bankruptcy, Food and Drug, and Litigation Advice Matters) |
| Kokomo Wastewater (City of) IN | M (Counterparties to Major Contracts) | Joint-State and Healthcare Matters For The State of Indiana; Nothing Specific For This Entity |
| Kyocera Mita America, Inc. | O (Lienholders and Other Significant Lenders) | Antitrust Matter For AVX Corporation |
| L-3 Communications | Q (Major Suppliers) | Criminal Representation Matter Listed For Level 3 Communications, Inc. |
| LaSalle Bank National Association | O (Lienholders and Other Significant Lenders) | Insurance Matter For Parent LaSalle Bank National Association |

## Delphi Parties in Interest For Whom Covington Burling Has Open Matters

| Client name | Category | Comments |
|---|---|---|
| LaSalle National Bank, as Trustee under Trust No 115897 | L (Counterparties to Major Leases) | Insurance Matter For Parent LaSalle Bank National Association |
| Lear Corporation | M (Counterparties to Major Contracts) | One Corporate Governance and One Securities Advice Matter Listed Under Lear Corporation |
| Leasenet Group, Inc. | N/A | Securities Litigation For Parent Huntington Bancshares, Inc. |
| Limestone County Commission AL | M (Counterparties to Major Contracts) | Joint-State Matters For The State of Alabama; Nothing Specific For This Entity |
| Limestone County Wtr & Swr AL | M (Counterparties to Major Contracts) | Joint-State Matters For The State of Alabama; Nothing Specific For This Entity |
| Linklaters | E (Professionals for the Past Three Years) | Finance Matter |
| Lockheed Martin Energy Systems (Oak Ridge Lab) | M (Counterparties to Major Contracts) | Four Enivronmental Advice and Real Estate Matters For Parent Lockheed Martin |
| Lockport (City of) NY | M (Counterparties to Major Contracts) | Joint-State Matters For The State of New York; Nothing Specific For That Entity |
| Lucent Technologies | M (Counterparties to Major Contracts) | Multiple Employee Plan Matters For Lucent Technologies and AG Communications Systems Corp. (Subsidiary) |
| Magna Intier | P (Major Customers) | Federal Election Law Matter For Magna International, Inc. (Subsidiary of Parent Company) |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Magnavox Government and Industrial Electronics Company | M (Counterparties to Major Contracts) | This Company No Longer Exists. It Was Acquired By Hughes Aircraft Company in 1995. Hughes Aircraft is Now a Subsidiary of Raytheon. Open Environmental Matter For Raytheon |
| Marsh & McLennan Cos. | F (Parties to Litigation and Their Counsel) | Health Care Matter |
| Matsushita Electric Corporation of America | M (Counterparties to Major Contracts) | Three Matters For Subsidiaries of Parent Company; Multiple Matter Types |
| Matsushita Electric Industrial | G (Top 50 Creditors) | Three Matters For Subsidiaries of Parent Company; Multiple Matter Types |
| Matsushita Electrical Industrial Company | M (Counterparties to Major Contracts) | Three Matters For Subsidiaries of Parent Company; Multiple Matter Types |
| McCann-Erickson | E (Professionals for the Past Three Years) | Multiple Employee Plans Matters For Parent Interpublic Group of Companies |
| MCI Worldcom Communications, Inc | M (Counterparties to Major Contracts) | Multiple Closed Matters; Corporate Governance Matter For Wayne Huyard, President of MCI Mass Markets |
| Meadwestvaco Corp | Q (Major Suppliers) | Multiple Employee Plans Matters and One General Matter |
| Medstat Group, Inc. | M (Counterparties to Major Contracts) | Multiple M&A Matters and One Litigation Advice Matter For Parent The Thomson Company, Inc. |
| Medtronic Navigation | Q (Major Suppliers) | Various Matters in the US and Europe |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Merrill Lynch, Pierce, Fenner & Smith Incorporated | K (Underwriters of Securities Issued by the Company) | Criminal Representation Matter For an Executive of Parent Merrill Lynch |
| Metlife | M (Counterparties to Major Contracts) | Several Legislative Matters |
| Metlife (Dental) | M (Counterparties to Major Contracts) | Several Legislative Matters |
| Metlife Capital LP | O (Lienholders and Other Significant Lenders) | Several Legislative Matters |
| Microsoft Services | Q (Major Suppliers) | Multiple Matters |
| Milacron Marketing Company | O (Lienholders and Other Significant Lenders) | Insurance Matter For Parent Milacron, Inc. |
| Mineba Co Ltd | Q (Major Suppliers) | Government Contracts Matter Listed Under NMB (USA) Inc. |
| Minnesota Pollution Control Agency | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State and Healthcare Matters For The State of Minnesota; Nothing Specific For This Entity |
| Minolta Business Solutions, Inc. | O (Lienholders and Other Significant Lenders) | Matter For Parent Konica Minolta in Europe |
| Minolta Business Systems, Inc | N/A | Matter For Parent Konica Minolta in Europe |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Mississippi Department of Environmental Quality | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State Matters For The State of Mississippi; Nothing Specific For This Entity |
| Missouri Department of Natural Resources | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State Matters For The State of Missouri; Nothing Specific For This Entity |
| Mitsubishi | P (Major Customers) | Various Matters For Parent Company and Other Subsidiaries |
| Mitsubishi Electric | Q (Major Suppliers) | Open Matter in Europe; Also Other Mitsubishi Matters Under Parent Company and Other Subsidiaries |
| Monroe County Water Authority NY | M (Counterparties to Major Contracts) | Joint-State Matters For The State of New York; Nothing Specific For This Entity |
| Montgomery City San Eng Dept OH | M (Counterparties to Major Contracts) | Multiple Joint-State and Healthcare Matters For The State of Ohio; Nothing Specific For This Entity |
| Morgan Stanley & Co. Incorporated | K (Underwriters of Securities Issued by the Company) | Multiple Matters For Parent Company and Other Subsidiaries |
| Morgan Stanley Senior Funding, Inc. | C (All Lenders) | Multiple Matters For Parent Company and Other Subsidiaries |
| Motorola Automotive | Q (Major Suppliers) | Multiple Matters For Parent Motorola and Other Subsidiary (Next Level Communications) |
| Motorola Credit Corporation | O (Lienholders and Other Significant Lenders) | Multiple Matters For Parent Motorola and Other Subsidiary (Next Level Communications) |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Motorola Quadrasteer | F (Parties to Litigation and Their Counsel) | Multiple Matters For Parent Motorola and Other Subsidiary (Next Level Communications) |
| Motorola, Inc. | N/A | Multiple Matters For Parent Motorola and Other Subsidiary (Next Level Communications) |
| MPEG LA | M (Counterparties to Major Contracts) | Joint-State and Federal Benfits Matters For The State of Louisiana; Nothing Specific For This Entity |
| National City Bank | C (All Lenders) | Multiple Financial and Regulatory Matters |
| National Semiconductor | Q (Major Suppliers) | Foreign Trade Controls Matter |
| Navistar International | P (Major Customers) | Employee Plans Matters Listed Under International Truck and Engine Corporation, Which is Noted as the Operating Name |
| NEC Corp | G (Top 50 Creditors) | Environmental Matter In Europe For the Japanese Business Council; NEC is a Member of This Group |
| NEC Electronics | Q (Major Suppliers) | Environmental Matter In Europe For the Japanese Business Council; NEC is a Member of This Group |
| New Brunswick (City of) NJ | M (Counterparties to Major Contracts) | Multiple Joint-State and Healthcare Matters For The State of New Jersey; Nothing Specific For This City. |
| New York State Elec & Gas NY | M (Counterparties to Major Contracts) | Insurance Matter For Parent Energy East Management Corporation |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Nextel | M (Counterparties to Major Contracts) | Nextel and Sprint Merged Effective 8/12/2005; One Insurance Matter for Sprint |
| Nextel West Corp. | M (Counterparties to Major Contracts) | Nextel and Sprint Merged Effective 8/12/2005; One Insurance Matter for Sprint |
| NFS LLC | I (Record Note holders holding 5% or more) | Insurance Matter For FMR Corp. |
| Niagara Mohawk NY | M (Counterparties to Major Contracts) | Insurance Matters For National Grid and Subsidiaries (Including Niagara Mohawk NY) |
| Niton Corporation | R (Letter of Credit Issuers and Beneficiaries) | One Food and Drug Matter and One Criminal Representation Matter For Parent Thermo Electron Corp. |
| Nokia Corporation | M (Counterparties to Major Contracts) | Covington and Burling Partner Retained as an Expert Witness in One Matter |
| Noranda | Q (Major Suppliers) | Multiple Matters For Dow Corning and Other Susidiaries |
| Noranda USA INC | Q (Major Suppliers) | Multiple Matters For Dow Corning and Other Susidiaries |
| North Alabama Gas District AL | M (Counterparties to Major Contracts) | Joint-State Matters For The State of Alabama; Nothing Specific For This Entity |
| NYSDEC | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State Matters For The State of New York; Nothing Specific For This Entity |

## Delphi Parties in Interest For Whom Covington Burling Has Open Matters

| Client name | Category | Comments |
|---|---|---|
| Ohio Department of Commerce | S (State and Other Governmental Authorities With an Interest in the Company) | Multiple Joint-State and Healthcare Matters For The State of Ohio; Nothing Specific For This Entity |
| Oklahoma Corporate Division | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State and Health Care Matters; Nothing Specific For That Entity |
| Olathe (City of) KS | M (Counterparties to Major Contracts) | Health Care and Federal Benefits Matters For The State of Kansas; Nothing Specific For This Entity |
| Omron Corp | Q (Major Suppliers) | Product Liability Matter Listed Under Omron Healthcare Europe BV, Which is Based Out of London. |
| O'Neal, Rodney | B (Former Officers and Directors For the Past Three Years) | Director For Firm Client Goodyear Tire and Rubber; Nothing Specific For Mr. O'Neal |
| Opie, John | B (Former Officers and Directors For the Past Three Years) | Director For Firm Client Wal-Mart; Nothing Specific For Mr. Opie |
| Oppenheimer & Co. Inc. | K (Underwriters of Securities Issued by the Company) | Client Group Participant For Western Railroad; Closed Financial Services Matter For Subsidiary |
| Orange County Health Care Agency | R (Letter of Credit Issuers and Beneficiaries) | Joint-State and Healthcare Matters For The State of California; Nothing Specific For This Entity |
| ORIX Warren, LLC / Orix GF Warren Venture | L (Counterparties to Major Leases) | Mergers and Acquisitions Matters For Orix Capital Markets, LLC (Subsidiary of Orix Corporation [Parent Company]) |
| Paccar | P (Major Customers) | Insurance Matter |

## Delphi Parties in Interest For Whom Covington Burling Has Open Matters

| Client name | Category | Comments |
|---|---|---|
| Panasonic Automotive | Q (Major Suppliers) | Three Matters For Subsidiaries of Parent Panasonic |
| Panasonic Automotive | R (Letter of Credit Issuers and Beneficiaries) | Three Matters For Subsidiaries of Parent Panasonic |
| Paul Hastings Janofsky & Walker LLP | E (Professionals for the Past Three Years) | Employment Disputes Matter in London |
| Pennsylvania Department of Environmental Protection | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State and Healthcare Matters For The State of Pennslyvania; Nothing Specific For This Entity |
| Pepco Energy Services, Inc. (PES) | M (Counterparties to Major Contracts) | Multiple Matters |
| Pioneer Corp | Q (Major Suppliers) | Environmental Matter In Europe For the Japanese Business Council; Pioneer is a Member of This Organization |
| PNC Bank, N.A. | C (All Lenders) | Criminal Representation Matter |
| Portage Cnty Wir Resources OH | M (Counterparties to Major Contracts) | Multiple Joint-State and Healthcare Matters For The State of Ohio; Nothing Specific For This Entity |
| Promotora | P (Major Customers) | Food and Drug Matter Listed Under Promotora Agricola el Toro (Subsidiary) |
| PSE&G NJ | M (Counterparties to Major Contracts) | Federal Election Law and Insurance Matters For PSEG |

## Delphi Parties in Interest For Whom Covington Burling Has Open Matters

| Client name | Category | Comments |
|---|---|---|
| Raytheon Company | M (Counterparties to Major Contracts) | Environmental Advice Matter For Raytheon Canada Limited (Subsidiary) |
| Rochester Gas & Electric NY | N/A | Insurance Matter For Energy East Management Corporation (Parent Company) |
| Scotia Capital USA Inc. | K (Underwriters of Securities Issued by the Company) | Foreign Trade Control Matter |
| Sedgwick Claims Management Services, Inc. | E (Professionals for the Past Three Years) | Part of Marsh & McLennan Family Tree; Three Health Care Matters For Marsh & McLennan |
| Semiconductor Components | G (Top 50 Creditors) | Two Insurance Matters Listed For Related Entity Texas Pacific Group |
| Sensus | Q (Major Suppliers) | Two Food and Drug Matters For Sensus America LLC |
| Sequent Energy Services | E (Professionals for the Past Three Years) | Two Insurance Matters For Related Entity AGL Resources |
| SG Cowen Securities Corporation | K (Underwriters of Securities Issued by the Company) | Multiple Matters |
| Sharp Electronics Corp. | G (Top 50 Creditors) | Food and Drug Matter in the United States and Environmental Advice Matter in Europe |
| Siemens AG | G (Top 50 Creditors) | Matter For Siemens Medical Solutions USA, Inc. (Subsidiary of Parent Company) |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Siemens Automotive Ltd | Q (Major Suppliers) | Matter For Siemens Medical Solutions USA, Inc. (Subsidiary of Parent Company) |
| Siemens GEN III | F (Parties to Litigation and Their Counsel) | Matter For Siemens Medical Solutions USA, Inc. (Subsidiary of Parent Company) |
| Siemens VDO Automotive Inc | F (Parties to Litigation and Their Counsel) | Matter For Siemens Medical Solutions USA, Inc. (Subsidiary of Parent Company) |
| Siemens VDO SA de CV | F (Parties to Litigation and Their Counsel) | Matter For Siemens Medical Solutions USA, Inc. (Subsidiary of Parent Company) |
| Societe Generale SA New York | C (All Lenders) | Multiple Matters |
| Sony Ericsson Mobile | Q (Major Suppliers) | Joint Venture; Multiple Matters For Sony |
| South Carolina Department of Health and Environmental Control | S (State and Other Governmental Authorities With an Interest in the Company) | Healthcare Matters For The State of South Carolina; Nothing Specific For This Entity |
| South Trust Bank | F (Parties to Litigation and Their Counsel) | Bankruptcy Matter For Wachovia Bank (Parent Company); Also Open Public Offerings Matter For Edison International (Related Entity) |
| Sprint | M (Counterparties to Major Contracts) | Insurance Matter |
| Sprint Spectrum, L.P. | M (Counterparties to Major Contracts) | Insurance Matter For Parent Sprint Corporation |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Sprint United | M (Counterparties to Major Contracts) | Insurance Matter For Parent Sprint Corporation |
| SPX Corp | Q (Major Suppliers) | Insurance Matters Listed Under SPX Corporation, The Marley Company and Related Entities |
| Stant Manufacturing (Gates) | N/A | Antitrust Matter Listed Under Colinx |
| State of Alabama Dept of Industrial Relations | R (Letter of Credit Issuers and Beneficiaries) | Joint-State Matters For The State of Alabama; Nothing Specific For This Entity |
| State of Georgia Workers' Compensation Board | R (Letter of Credit Issuers and Beneficiaries) | Joint-State Matter For The State of Georgia; Nothing Specific For This Entity |
| State of Indiana | M (Counterparties to Major Contracts) | Joint-State and Healthcare Matters For The State of Indiana; Nothing Specific For This Entity |
| State of Kansas Workers' Compensation Board | R (Letter of Credit Issuers and Beneficiaries) | Health Care and Federal Benefits Matters For The State of Kansas; Nothing Specific For This Entity |
| State of Michigan | G (Top 50 Creditors) | Joint-State and Federal Benefits Matters For The State of Michigan |
| State of New York | F (Parties to Litigation and Their Counsel) | Joint-State Matters For The State of New York |
| State of Ohio | G (Top 50 Creditors) | Multiple Joint-State and Healthcare Matters For The State of Ohio |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| State of Tennessee | M (Counterparties to Major Contracts) | Joint-State Matter For The State of Tennessee; Nothing Specific For This Entity |
| State Street Bank and Trust Company | M (Counterparties to Major Contracts) | Multiple Financial Services Matters For Parent State Street Global Advisors, Ltd. Based in London |
| State Street Global Advisors | H (Holders of 5% or More of Any Outstanding Equity Security of the Company) | Multiple Financial Services Matters For Parent State Street Global Advisors, Ltd. Based in London |
| Storage Tek | N/A | Matters Listed Under The Business Software Alliance; Sun Microsystems (Parent Company of Storage Tek) is a Member of This Organization |
| Suzuki Group | P (Major Customers) | Matter Listed Under Suzuki Motor Company Ltd. in Europe |
| TCW Select Loan Fund, Limited | N/A | Subsidiary of Societe General; Multiple Matters For Societe General (Parent of TCW) and Other Subsidiaries (Including Numerous For SG Cowen) |
| Tennessee Department of Environmental & Conservation | S (State and Other Governmental Authorities With an Interest in the Company) | Joint-State Matters For The State of Tennessee; Nothing Specific For This Entity |
| Texas Commission on Environmental Quality | S (State and Other Governmental Authorities With an Interest in the Company) | Matters Listed Under State and Various Entities |
| Textron Inc | G (Top 50 Creditors) | Foreign Trade Control and Employee Plan Matters |
| The Huntington National Bank | O (Lienholders and Other Significant Lenders) | Matter For Parent Huntington Bancshares Incorporated (Parent Company) |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| TI Group | M (Counterparties to Major Contracts) | TI Group Merged to Form Smiths Group plc; Insurance Matter For Smiths Group |
| Ticona | N/A | International Disputes Matter For Celanese Americas Corporation (Subsidiary of Parent Company) |
| Time Warner | M (Counterparties to Major Contracts) | Corporate Governance Matter in Europe |
| Timken (Brazil) | F (Parties to Litigation and Their Counsel) | Antitrust Matters Under Parent Company and Other Subsidiaries |
| Timken Co, Inc | G (Top 50 Creditors) | Antitrust Matters Under Parent Company and Other Subsidiaries |
| Tomkins PLC | Q (Major Suppliers) | Antitrust Matter Listed Under Colinx |
| Toshiba American Information Systems | O (Lienholders and Other Significant Lenders) | Environmental Matter For Toshiba in Europe |
| Toshiba Corporation | M (Counterparties to Major Contracts) | Environmental Matter For Toshiba (Parent Company) in Europe |
| Towers Perrin | E (Professionals for the Past Three Years) | Criminal Representation Matter |
| TPG Advisors Inc | Q (Major Suppliers) | Insurance Matters Listed For Texas Pacific Group (Alternate Name For Entity) |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Trianon Industries Corp | N/A | Antitrust Matter For Related Entity Colinx |
| Trico | F (Parties to Litigation and Their Counsel) | Multiple Matters Under Parent Company and Other Subsidiaries |
| Troy (City of Michigan) | N/A | Joint-State and Federal Benefits Matters For The State of Michigan; Nothing Specific For This Entity |
| TRW Automotive Holdings Corp | N/A | One Insurance Matter and One General Matter Listed Under Subsidiary of Parent Company |
| TRW Automotive Products | F (Parties to Litigation and Their Counsel) | One Insurance Matter and One General Matter Listed Under Subsidiary of Parent Company |
| Tulsa Utils Svc (City of) OK | M (Counterparties to Major Contracts) | Joint-State and Health Care Matters: Nothing Specific For That Entity |
| Tyco Electronics Corp | Q (Major Suppliers) | Insurance, Criminal Representation, and Food and Drug Matters Under Parent Company and Subsidiaries |
| Tyco International Ltd | Q (Major Suppliers) | Insurance, Criminal Representation, and Food and Drug Matters Under Parent Company and Subsidiaries |
| U.S. Bancorp Piper Jaffray, Inc. | K (Underwriters of Securities Issued by the Company) | Multiple Insurance Matters For Parent Company and Subsidiaries |
| UBS | E (Professionals for the Past Three Years) | Multiple Matters For Parent Company and Subsidiaries |

## Delphi Parties in Interest For Whom Covington Burling Has Open Matters

| Client name | Category | Comments |
|---|---|---|
| UBS AG | N/A | Multiple Matters For Parent Company and Subsidiaries |
| UBS Loan Finance LLC | C (All Lenders) | Multiple Matters For Parent Company and Subsidiaries |
| UBS Securities LLC | K (Underwriters of Securities Issued by the Company) | Multiple Matters For Parent Company and Subsidiaries |
| United Healthcare Insurance Company | N/A | Healthcare Matter For Parent UnitedHealth Group |
| US Steel Corporation | Q (Major Suppliers) | Employee Plans Matter |
| Valeo Climate Control USA | Q (Major Suppliers) | Fund Formation Matter For Related Entity Valeo Capital Partners |
| Valeo Electrical Systems, Inc. | F (Parties to Litigation and Their Counsel) | Fund Formation Matter For Related Entity Valeo Capital Partners |
| Valeo SA | Q (Major Suppliers) | Fund Formation Matter For Related Entity Valeo Capital Partners |
| Van Dorn Demag Corporation | N/A | Open Matter For Parent Proctor and Gamble; Kohlberg, Kravis, & Roberts (Another Subsidiary of P&G) Has Open Energy, Bankruptcy, Food and Drug, and Litigation Advice Matters |
| Verizon | M (Counterparties to Major Contracts) | Multiple Matters For Verizon |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Verizon Wireless | M (Counterparties to Major Contracts) | Multiple Matters For Verizon |
| Verizon Wireless Messaging | M (Counterparties to Major Contracts) | Multiple Matters For Verizon |
| Volvo | F (Parties to Litigation and Their Counsel) | Tax and Trade Controls Matters |
| Volvo | P (Major Customers) | Tax and Trade Controls Matters |
| Volvo do Brasil Veiculos Ltda. | Q (Major Suppliers) | Tax and Trade Controls Matters For Related Entity Volvo |
| Volvo Parts North America, Inc. | Q (Major Suppliers) | Tax and Trade Controls Matters For Related Entity Volvo |
| Vulcan Ventures, Inc. | C (All Lenders) | Four Communication Matters For Vulcan Sports Media (Subsidiary) |
| Wachovia Bank National Association | C (All Lenders) | Bankruptcy Matter For Wachovia Bank (Subsidiary) |
| Wachovia Capital Markets, LLC | K (Underwriters of Securities Issued by the Company) | Bankruptcy Matter For Related Entity Wachovia Bank |
| Wal-Mart Stores CE | P (Major Customers) | Multiple Insurance and Campaign Finance Matters |

**Delphi Parties in Interest For Whom Covington Burling Has Open Matters**

| Client name | Category | Comments |
|---|---|---|
| Wells Fargo Bank Northwest, Trustee | O (Lienholders and Other Significant Lenders) | Multiple Financial Service and Financial Litigation Matters For Parent Wells Fargo Bank |
| Wells Fargo Van Kasper LLC | K (Underwriters of Securities Issued by the Company) | Multiple Financial Service and Financial Litigation Matters For Parent Wells Fargo Bank |
| Wilmer Cutler Pickering Hale and Dorr, LLP | E (Professionals for the Past Three Years) | Real Estate Matter |
| XM Emall LLC | P (Major Customers) | Two Insurance Matters For XM Satellite Radio |
| XM Satellite Radio | M (Counterparties to Major Contracts) | Two Insurance Matters |
| Zurich Financial Services | D (Insurers) | Zurich Financial Services is Ultimate Parent of Zurich American Insurance Company; Multiple Matters In Finance, Financial Services, and a Criminal Representation Matter |

# EXHIBIT D

## Delphi Parties in Interest For Whom Covington Burling Has Closed Matters For Within the Last Five Years

| Client name | Category | Last Closed Matter | Comments |
|---|---|---|---|
| Agfa Corporation | Q (Major Suppliers) | 4/6/2005 | Antitrust Matter For AGFA |
| Agfa-Gevaert N.V. | Q (Major Suppliers) | 4/6/2005 | Antitrust Matter For AGFA |
| Agilent Tech (M) Sdn Bhd | Q (Major Suppliers) | 6/24/2003 | Matter For Agilent Technologies, Inc. |
| Aksys, Ltd. | Q (Major Suppliers) | 3/31/2004 | Food and Drug Matter |
| Allevard Springs Ltd. | Q (Major Suppliers) | 9/15/2003 | Matter For An Affiliate of REJNA S.P.A. (Related Entity) |
| Allianz | D (Insurers) | 4/12/2002 | General Matter For Dresdner Kleinwort Wasserstein (Now Part of Allianz) |
| Allstate Insurance | F (Parties to Litigation and Their Counsel) | 3/25/2002 | Banking Matter |
| Amerada Hess Corporation | D (Insurers) | 7/29/2003 | Older Matters For Various Subsidiaries |
| Ameritech | M (Counterparties to Major Contracts) | 9/20/2005 | Multiple Matters For Ameritech and SBC Communications (Ultimate Parent Company) |
| Ameritech Credit Corporation | O (Lienholders and Other Significant Lenders) | 9/20/2005 | Multiple Matters For Parent Ameritech |

**Delphi Parties in Interest For Whom Covington Burling Has Closed Matters For Within the Last Five Years**

| Client name | Category | Last Closed Matter | Comments |
|---|---|---|---|
| ANR Pipeline Company | D (Insurers) | 6/21/2005 | Energy and Litigation Matters For Parent El Paso Corporation |
| Applera Corporation | M (Counterparties to Major Contracts) | 10/6/2005 | One Food and Drug Matter |
| Assembleon | O (Lienholders and Other Significant Lenders) | 11/17/2003 | Closed Matters For Another Subsidiary of Parent Koninklijke Philips Electric |
| BAX Global | Q (Major Suppliers) | 8/15/2005 | Two Insurance Matters |
| Bosch | P (Major Customers) | 3/13/2002 | C&B Advises Eight Automotive Supply Companies - Bosch, Dana, Delphi, Eaton, Motorola, Timken, TRW and Valeo With Respect to Several Potential Interrelated E-Commerce/B2B |
| Bridgestone T.G. Australia Pty. Ltd. | M (Counterparties to Major Contracts) | 11/13/2003 | Two Closed Matters |
| Cargill Financial Services Intl. Inc. | C (All Lenders) | 10/20/2005 | Closed Matters For Various Subsidiaries |
| Caterpillar | P (Major Customers) | 11/13/2003 | One Environmental Advice Matter For Caterpillar, Inc. |
| Caterpillar Engine Systems | Q (Major Suppliers) | 11/13/2003 | One Environmental Advice Matter For Caterpillar, Inc. |
| Centura Bank | O (Lienholders and Other Significant Lenders) | 6/18/2002 | Two Matters For Subsidiary of Royal Bank of Canada (Parent of Rbc Centura Bank) |

**Delphi Parties in Interest For Whom Covington Burling Has Closed Matters For Within the Last Five Years**

| Client name | Category | Last Closed Matter | Comments |
|---|---|---|---|
| Consumers Energy MI (Detroit) | M (Counterparties to Major Contracts) | 9/10/2003 | General Matters For Consumer's Gas Company and Consumer's Power Company (Michigan) |
| Consumers Power Company | N/A | 9/12/2003 | General Matters For Consumer's Gas Company and Consumer's Power Company (Michigan) |
| Consumers Power MI | N/A | 9/11/2003 | General Matters For Consumer's Gas Company and Consumer's Power Company (Michigan) |
| Cyro Industries | Q (Major Suppliers) | 3/29/2004 | One General Matter |
| Daihatsu | P (Major Customers) | 11/25/2002 | One Insurance Matter For Toyota Motor Sales |
| DOD | M (Counterparties to Major Contracts) | 4/15/2005 | One Non-Billable Matter For Department of Defense |
| DSSCSC China | M (Counterparties to Major Contracts) | 1/21/2004 | General and Insurance Matters For Various Subsidiaries of Parent CSC Corporation |
| East Ohio Gas Co. | D (Insurers) | 11/12/2003 | Tax Legislation Matter For Dominion Resources (Ultimate Parent) |
| El Paso Electric Co. TX | M (Counterparties to Major Contracts) | 6/21/2005 | Energy and Litigation Matters |
| Essex Group Inc | Q (Major Suppliers) | 1/12/2004 | Essex Group was Acquired and is Now Known as Superior Essex; Closed Foreign Trade Matters |

## Delphi Parties in Interest For Whom Covington Burling Has Closed Matters For Within the Last Five Years

| Client name | Category | Last Closed Matter | Comments |
|---|---|---|---|
| Fed Ex Trade Networks | Q (Major Suppliers) | 3/1/2005 | Insurance Matters And Employment Dispute For Kinkos (Part of Fed Ex Corporate Family) in London |
| Fed Ex Trade Networks Transport and Brokerage, Inc. | E (Professionals for the Past Three Years) | 3/1/2005 | Insurance Matters And Employment Dispute For Kinkos (Part of Fed Ex Corporate Family) in London |
| Federal Environmental Protection Agency | R (Letter of Credit Issuers and Beneficiaries) | 8/5/2002 | One General Matter |
| Fiat Automotives SA | P (Major Customers) | 2/17/2004 | Several Closed Matters For Other Subsidiaries |
| Fiat Group | P (Major Customers) | 2/18/2004 | Several Closed Matters For Other Subsidiaries |
| Gotham Funding Corporation | M (Counterparties to Major Contracts) | 3/31/2004 | Three Matters For Gotham Partners, L.P. |
| Hutchinson Seal | F (Parties to Litigation and Their Counsel) | 1/13/2004 | Environmental Advice Matter For Another Subsidiary of Parent Company |
| ICON Capital Corp | L (Counterparties to Major Leases) | 10/6/2005 | One Closed Matter For ICON PLC |
| ICX Corporation | O (Lienholders and Other Significant Lenders) | 7/19/2004 | One Matter Under Parent Company (Royal Bank of Scotland) and Banking, Regulatory, and General Matters foir ICX Corporation |
| Indiananapolis Power & Light Co. | M (Counterparties to Major Contracts) | 11/12/2003 | Insurance and Other Matters For AES Corp. (Parent Company) |

**Delphi Parties in Interest For Whom Covington Burling Has Closed Matters For Within the Last Five Years**

| Client name | Category | Last Closed Matter | Comments |
|---|---|---|---|
| Industrial Division of the Communications | F (Parties to Litigation and Their Counsel) | 6/24/2003 | Matters For The Communications Workers of America (Parent Organization) |
| International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers Communication Workers of America | G (Top 50 Creditors) | 6/24/2003 | Matters For The Communications Workers of America (Parent Organization) |
| IUE Moraine Umpire Appeal | F (Parties to Litigation and Their Counsel) | 6/24/2003 | Matters For The Communications Workers of America (Parent Organization) |
| IUE-CWA International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers - Communication Workers of America | T (Unions Representing Company Employees) | 6/24/2003 | Matters For The Communications Workers of America (Parent Organization) |
| Janney Montgomery Scott LLC | N/A | 3/30/2004 | Matters For Subsidiaries of Penn Mutual Life (Parent Company) |
| Johns Hopkins University | M (Counterparties to Major Contracts) | 7/22/2003 | Matters For Dr. William R. Brody, President of Johns Hopkins |
| Jones Day | E (Professionals for the Past Three Years) | 9/9/2003 | Employment Advice Matter |
| Lehman Brothers | I (Record Note holders holding 5% or more) | 11/8/2002 | Several Matters Under Different Parties: Shearson LB, Inc.; LB; LB Intl.; Peabody Coal Company |
| MCI Telecommunications Corporation | F (Parties to Litigation and Their Counsel) | 9/19/2005 | Several Closed Matters |

## Delphi Parties in Interest For Whom Covington Burling Has Closed Matters For Within the Last Five Years

| Client name | Category | Last Closed Matter | Comments |
|---|---|---|---|
| Medco Health Solutions Inc | M (Counterparties to Major Contracts) | 2/18/2005 | Several Matters For Parent Merck |
| Mellon Trust | I (Record Note holders holding 5% or more) | 8/10/2005 | Several Matters Under Various Subsidiaries |
| Merk Medco | G (Top 50 Creditors) | 2/18/2005 | Several Matters For Parent Merck |
| Morris, Nichols, Arsht & Tunnell | N/A | 1/19/1988 | Immigration Matters |
| Nissan | P (Major Customers) | 12/15/2003 | Matters For Subsidiaries |
| Nissan Technical Center North America, Inc. | L (Counterparties to Major Leases) | 12/15/2003 | Matters For Nissan Motor MFG. Corp. USA and Nissan Motor Co, Ltd. |
| Nissho Iwai American Corp | Q (Major Suppliers) | 8/26/2004 | Two Matters Listed (One Mergers & Acquisition, One Administrative Litigation For Sojitz Corporation of America [Parent]) |
| Nissho Iwai American Corp | R (Letter of Credit Issuers and Beneficiaries) | 8/26/2004 | Two Matters Listed (One Mergers & Acquisition For Other Subsidiary, One Administrative Litigation For Sojitz Corporation of America [Parent]) |
| North American Philips Corporation | M (Counterparties to Major Contracts) | 11/17/2003 | Last Matter For Philips Lighting, Former Name of Client |
| Oak Creek (City of) WI | M (Counterparties to Major Contracts) | 1/26/2005 | Matters For the State of Wisconsin; Nothing Specific For This City |

## Delphi Parties in Interest For Whom Covington Burling Has Closed Matters For Within the Last Five Years

| Client name | Category | Last Closed Matter | Comments |
|---|---|---|---|
| Pacific Employers Ins. Co. (ACE USA) | D (Insurers) | 2/20/2003 | Two General Matters Listed For ACE Limited |
| Panhandle Eastern Pipeline Company | D (Insurers) | 10/24/2001 | One Insurance Matter For Parent (Southern Union Co.) |
| PriceWaterhouseCoopers LLP | E (Professionals for the Past Three Years) | 3/31/2003 | Four Closed Matters |
| Renault | P (Major Customers) | 10/16/2002 | Matter For Renault V.I. SA |
| Robert Bosch Corporation | Q (Major Suppliers) | 3/13/2002 | C&B Advises Eight Automotive Supply Companies - Bosch, Dana, Delphi, Eaton, Motorola, Timken, TRW and Valeo With Respect to Several Potential Interrelated E-Commerce/B2B |
| SBC Ameritech | M (Counterparties to Major Contracts) | 9/21/2005 | Multiple Matters For Ameritech and SBC Communications (Ultimate Parent Company) |
| SBC Global Services | M (Counterparties to Major Contracts) | 9/21/2005 | Multiple Matters For Ameritech and SBC Communications (Ultimate Parent Company) |
| Sky CBNA Loan Funding LLC | C (All Lenders) | 9/19/2005 | Several Matters of Various Types For MCI (Parent Company) and Other Subsidiaries |
| Smith, Louis | F (Parties to Litigation and Their Counsel) | 7/19/2004 | Louis W. Smith is Listed As a Party in Sprint/D&O Litigation |
| Smith, Mary | F (Parties to Litigation and Their Counsel) | 11/15/2005 | Closed Matter For a Mary J. Smith |

**Delphi Parties in Interest For Whom Covington Burling Has Closed Matters For Within the Last Five Years**

| Client name | Category | Last Closed Matter | Comments |
|---|---|---|---|
| SR International Business Insurance Company Ltd. | N/A | 5/10/2001 | Matter For Securitas Capital LLC (Ultimate Parent) and Other Subsidiaries |
| State of Wisconsin | G (Top 50 Creditors) | 1/26/2005 | Matters For State and Various State Entities |
| SunTrust Bank Altanta | N/A | 10/6/2003 | Insurance and Other Matters For Subsidiaries of SunTrust Banks, Inc. (Parent Company) |
| Texas Instruments Inc | G (Top 50 Creditors) | 11/17/2003 | Matters For Soft Warehouse, Inc., Which Was Acquired in 1999 |
| Thacher Proffitt & Wood | F (Parties to Litigation and Their Counsel) | 3/30/2004 | Matter For Proffitt, Prizer, Thacher, Crawley, & Wood |
| The Royal Bank of Scotland | N/A | 7/19/2004 | One Matter For Parent Company and Closed Banking, Regulatory, and General Matters For Another Subsidiary (ICX Corporation) |
| The Royal Bank of Scotland PLC | C (All Lenders) | 7/19/2004 | One Matter For Parent Company and Closed Banking, Regulatory, and General Matters For Another Subsidiary (ICX Corporation) |
| Total SA | Q (Major Suppliers) | 11/14/2004 | Matters For Various Other Subsidiaries of Parent Company, Which is Now Known as ATOFINA |
| Toyota | P (Major Customers) | 11/25/2002 | Closed Insurance Matter For Toyota Motor Sales |
| Toyota Motor Company | M (Counterparties to Major Contracts) | 11/25/2002 | Closed Insurance Matter For Toyota Motor Sales |

## Delphi Parties in Interest For Whom Covington Burling Has Closed Matters For Within the Last Five Years

| Client name | Category | Last Closed Matter | Comments |
|---|---|---|---|
| Toyota Motor Corporation | M (Counterparties to Major Contracts) | 11/25/2002 | Closed Insurance Matter For Toyota Motor Sales |
| Toyota Motor Credit Corporation | O (Lienholders and Other Significant Lenders) | 11/25/2002 | Closed Insurance Matter For Toyota Motor Sales |
| Toyota Motor North America, Inc. | F (Parties to Litigation and Their Counsel) | 11/25/2002 | Closed Insurance Matter For Toyota Motor Sales |
| TXU Energy Retail Company LP | N/A | 3/30/2004 | Closed Unspecified Matters For Other Subsidiaries of TXU Energy (Parent Company) |
| TXU Energy TX | N/A | 3/31/2004 | Matters For Other Subsidiaries of TXU Energy (Parent Company) |
| U.S. Environmental Protection Agency | S (State and Other Governmental Authorities With an Interest in the Company) | 8/5/2002 | One General Matter |
| USAF/AFRL | N/A | 4/15/2005 | Non-Billable Matter For Department of Defense |
| Wisconsin Department of Natural Resources | S (State and Other Governmental Authorities With an Interest in the Company) | 1/26/2005 | Matters For The State of Wisconsin; Nothing Specific to That Entity |

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                        :

In re                       :     Chapter 11
                        :

DELPHI CORPORATION, et al.,  :     Case No. 05-44481 (RDD)
                        :

              Debtors.   :     (Jointly Administered)
                        :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

### AFFIDAVIT OF AARON. R. MARCU IN SUPPORT OF APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b) AND FED. R. BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF COVINGTON & BURLING AS FOREIGN TRADE AND SPECIAL CORPORATE COMMITTEE LEGAL COUNSEL TO DEBTORS

STATE OF NEW YORK

COUNTY OF NEW YORK

AARON R. MARCU, being duly sworn, deposes and states as follows:

1.  I am an attorney duly admitted to practice before the courts of the State of New York, the Southern and Eastern Districts of New York, and the U.S. Court of Appeals for the Second Circuit.  I am a partner in the law firm of Covington & Burling ("Covington"), proposed foreign trade and special corporate committee counsel for Delphi Corporation ("Delphi" or the "Company") and certain of its subsidiaries and affiliates, the debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors").

2.  I submit this affidavit (the "Marcu Affidavit")[1] in support of the Application For Order Under 11 U.S.C. §§ 327(e) And 1107(b) And Fed. R. Bankr. P. 2014 Authorizing Employment And Retention Of Covington & Burling As Foreign Trade And Special Corporate

---

[1]    Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the Application.

Committee Counsel To Debtors (the "Application") <u>nunc</u> <u>pro</u> <u>tunc</u> to October 8, 2005, filed

concurrently herewith.

3.    The address and telephone number of Covington are as follows:

1330 Avenue of the Americas
New York, NY 10019
(212) 841-1000

4.    Covington is well qualified to assist the Debtors in the manner described in

the Application.  Covington is a leading international law firm, with more than 500 lawyers

practicing in key business and regulatory centers throughout the world.  Most important for the

purposes of this Application, several members of Covington have extensive experience in the

provision of advice regarding foreign trade controls, the representation of corporate boards and

subcommittees thereof in connection with internal investigations, the provision of advice

regarding indemnification of corporate officers and directors, and corporate and securities law

and their interplay with restructuring and bankruptcy law.  Accordingly, the Debtors believe that

Covington is well qualified to serve as foreign trade and special corporate committee legal

counsel in these chapter 11 cases in an efficient and effective manner.

5.    Covington has advised the Debtors in connection with regulatory,

investigative, and litigation matters.  Based on the services that Covington has rendered to the

Debtors, Covington is familiar with the Debtors' corporate structure, their financial status, and

certain legal matters..

6.    Generally, in connection with the Debtors cases, Covington will continue to

provide to the Debtors the following types of professional services:

(a)    Advice and assistance on U.S. foreign trade controls, including the scope,
applicability, licensing, and compliance requirements under the
International Traffic in Arms Regulations, Directorate of Defense
Controls, U.S. Department of State;

2

(b)     Advice to a Special Committee (the "Special Committee") of the Board of
Directors (the "Board") in connection with demands made or that may be
made by Delphi shareholders with regard to various accounting issues now
under investigation and in litigation;

(c)     Advice to the Special Committee in connection with the Company's
selection of a new external auditor; and

(d)     Advice to the Company regarding indemnification and advancement of
funds to certain officers and directors.

7.    In light of certain existing client representations on unrelated matters, the
engagement of Skadden, Arps, Slate, Meagher, & Flom LLP ("Skadden") as the Debtors'
bankruptcy counsel, the engagement of Shearman & Sterling LLP ("Shearman") as the Debtors'
special counsel, the engagement of Togut, Segal & Segal LLP ("Togut") as the Debtors' conflicts
counsel, and the engagement of other counsel for the Debtors, Covington will not be responsible
for or undertake any representation with respect to (a) advising the Debtors concerning specific
contracts and claims of certain of Covington's existing clients and (b) reviewing, interpreting, or
commenting on the specific contracts and claims of certain of Covington's existing clients.
These existing client relationships, and the scope of the carve-out from Covington's retention, are
discussed more fully below.

8.    It is Covington's understanding that the Debtors may request that Covington
undertake specific matters beyond the limited scope of the responsibilities set forth above.
Should Covington agree in its discretion to undertake any such matter, it is Covington's
understanding that the Debtors will seek further order of this Court.

9.    Covington is making efforts, together with the Debtors' other counsel, to
ensure that there is no duplication of effort or work between such firms and Covington.  It is
Covington's intention that the estates should receive the best value possible from the efficient

coordination of work among its counsel.  Covington believes that its lawyers and the rest of the

lawyers retained in these cases have to date delineated clearly, and will continue to delineate

clearly, the division of work between them, so as to avoid any duplication of effort and to

maximize the efficiencies of the proposed arrangement.

10.    On the Petition Date, Covington was owed, and continues to be owed,

approximately $263,559.79 for services and charges performed prior to the Petition Date.

11.    Covington agrees to accept compensation for the services rendered in

connection with its representation of the Debtors in accordance with its standard billing policies

and based on the same rates generally charged for services rendered in matters handled by

Covington for its clients.  The current hourly rates of the Covington attorneys who are expected

to be principally responsible for rendering services to the Debtors in connection with these

chapter 11 cases are as follows:  Aaron R. Marcu ($760); Peter D. Trooboff ($580); Adam Siegel

($580); Barbara Hoffman ($550); Peter L. Flanagan ($520); Corrine A. Goldstein ($500);

Michael J. Naft ($410); Kimberly A. Strosnider ($365); and Gina R. Merrill ($270).  Other

Covington attorneys from time to time may render services to the Debtors in connection with

these cases.  The current hourly rates for Covington attorneys range from $200 to $760.  The

current hourly rates for the services of legal assistants range from $165 to $250.  Covington

customarily adjusts its billing rates on an annual basis, usually as of October 1, and if Covington

increases its rates during the pendency of this proceeding, it will seek compensation at the

modified rates, subject to the terms of the Engagement Letters.  Pursuant to the engagement

letter dated June 8, 2005, notwithstanding the firm's increase in rates charged as of October 1,

2005, Covington will not increase its rates with respect to its representation of the Special

4

Committee of the Board until June 8, 2006, other than for the regular progression of associates as

they move from one year to the next in terms of seniority.

12.    Covington acknowledges that all amounts paid to Covington during these

chapter 11 cases are subject to final allowance by this Court.  In the event that any fees or

expenses paid to Covington during these cases are disallowed, Covington will disgorge the fees

and expenses and return them to the Debtors or as otherwise ordered by this Court.

13.    Covington categorizes its billings by subject matter, in compliance with the

applicable guidelines of the Office of the United States Trustee (the "U.S. Trustee Guidelines").

Covington acknowledges its compensation in the Debtors' cases is subject to approval of this

Court in accordance with section 330 of the Bankruptcy Code, Bankruptcy Rule 2016, and the

U.S. Trustee Guidelines.

14.    Covington has conducted a check for conflicts of interest and other conflicts

and connections with respect to the Debtors' bankruptcy cases.  Covington maintains a database

containing the names of current, former, and potential clients and other principal parties related

to such clients.  I caused Covington to review and analyze the conflict database to determine

whether Covington has any connection with the principal parties-in-interest in these chapter 11

cases, using information provided to Covington by the Debtors and Skadden and information

contained in the database, including (a) the names of the Debtors' prepetition lenders, (b) the

names of significant creditors of the Debtors, and (c) the names of firms that the Debtors intend

to or may employ during their chapter 11 cases.

15.    Based on this research, I have concluded that Covington has in the past

represented, currently represents, and will likely represent in the future, certain of the Debtors'

creditors and other parties-in-interest in matters unrelated to the Debtors or these chapter 11

5

cases.  A list of the parties-in-interest that are current clients of Covington is attached to the

Application as Exhibit C.  A list of the parties-in-interest that are not current clients but for

whom Covington provided legal services within the last five years is attached to the Application

as Exhibit D.  None of the parties-in-interest accounted for more than 1% of Covington's gross

revenues for its 2005 fiscal year, with the exception of Microsoft (less than 3%), JP Morgan

Chase (less than 3%), Goodyear Tire & Rubber Company (less than 2%), SG Cowen (less than

2%), the State of Minnesota (less than 2%) and IBM (less than 2%).  Covington does not believe

that such representation of parties-in-interest in unrelated matters raises any actual or potential

conflict of interest of Covington relating to the representation of the Debtors as their foreign

trade and special corporate committee counsel in these chapter 11 cases, but discloses such

relationships out of an abundance of caution.  The Debtors understand that, in order to vitiate any

actual or potential conflicts of interest, Covington will not assist the Debtors in connection with

their analysis, negotiations, and litigation, if any, with parties with whom Covington has existing

client relationships, and that Skadden (or other counsel if Skadden has a conflict), instead, will

handle these tasks.

      16.    If Covington becomes aware of any other connections of which it presently

is unaware, Covington will bring them to the attention of this Court and the U.S. Trustee.


Dated:   February 17, 2006
        New York, New York



          By:   _/s/ Aaron R. Marcu_____
             Aaron R. Marcu

6

Sworn to before me
this 17th day of February, 2006


 _/s/ Michael W. Gramer_____
Notary Public

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                            :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b) AND FED. R. BANKR. P. 2014
AUTHORIZING EMPLOYMENT AND RETENTION OF COVINGTON & BURLING
AS FOREIGN TRADE AND SPECIAL CORPORATE COMMITTEE
LEGAL COUNSEL TO DEBTORS

("COVINGTON & BURLING RETENTION ORDER")

Upon the application, dated February 17, 2006 (the "Application"), of Delphi

Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C.

§§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 authorizing the employment and retention of

Covington & Burling ("Covington") as foreign trade and special corporate committee legal

counsel to the Debtors; and upon the Affidavit of Aaron Marcu, sworn to February 17, 2006, in

support of the Application (the "Marcu Affidavit"); and this Court being satisfied with the

representations made in the Application and the Marcu Affidavit that Covington does not

represent or hold any interest adverse to any of the Debtors' estates or the Debtors with respect to

the matters on which Covington is to be employed, and that Covington's employment is

necessary and would be in the best interests of each of the Debtors' estates; and it appearing that

proper and adequate notice has been given and that no other or further notice is necessary; and

upon the record herein; and after due deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Application is GRANTED.

2.    The Debtors' employment of Covington as their foreign trade and special

corporate committee legal counsel, pursuant to the Application, is approved under sections

327(e) and 1107(b) of the Bankruptcy Code, and Rule 2014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), with approval of such employment being effective as of the

Petition Date, October 8, 2005.

3.    Pursuant to Application, Covington will provide services to the Debtors in

connection with litigation and foreign trade government contract matters.  Such services will

include the following:

(a)    Advice and assistance on U.S. foreign trade controls, including the scope,
applicability, licensing, and compliance requirements under the
International Traffic in Arms Regulations, Directorate of Defense
Controls, U.S. Department of State;

(b)    Advice to a Special Committee (the "Special Committee") of the Board of
Directors (the "Board") in connection with demands made or that may be
made by Delphi shareholders with regard to various accounting issues now
under investigation and in litigation;

(c)    Advice to the Special Committee in connection with the Company's
selection of a new external auditor; and

(d)    Advice to the Company regarding indemnification and advancement of
funds to certain officers and directors.

4.    Covington shall be compensated in accordance with the standards and

procedures set forth in sections 330 and 331 of the Bankruptcy Code and all applicable

Bankruptcy Rules, Local Bankruptcy Rules for the United States Bankruptcy Court for the

Southern District of New York (the "Local Rules"), guidelines established by the Office of the

United States Trustee, and further orders of this Court.

5.    This Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Final Order.

6.    The requirement under Local Rule 9013-1(b) for the service and filing of a

separate memorandum of law is deemed satisfied by the Application.


Dated:    New York, New York
          March __, 2006



_____
    UNITED STATES BANKRUPTCY JUDGE

3

# EXHIBIT E

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
    In re                                 :   Chapter 11
                                          :
DELPHI CORPORATION, <u>et</u> <u>al.</u>,            :   Case No.  05 – 44481 (RDD)
                                          :
               Debtors.              :   (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x


SECOND AMENDED SCHEDULING ORDER ON DEBTORS' MOTIONS TO
(I) REJECT COLLECTIVE BARGAINING AGREEMENTS UNDER SECTION 1113(c) AND
(II) ELIMINATE RETIREE MEDICAL AND LIFE INSURANCE BENEFITS
<u>FOR UNION-REPRESENTED RETIREES UNDER SECTION 1114(g)</u>

("SECOND AMENDED SECTIONS 1113 AND 1114 SCHEDULING ORDER")

          Upon the Motion, dated October 8, 2005 (the "Motion"), of Delphi Corporation

and certain of its domestic subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order under 11 U.S.C. §§ 1113 and 1114

of the Bankruptcy Code[1] and Fed. R. Bankr. P. 2002(m) and 9006 establishing notice

procedures, briefing schedule, and hearing date regarding the Debtors' Motions To (a) Reject

Collective Bargaining Agreements Under Section 1113(c) And (b) Eliminate Retiree Medical

And Life Insurance Benefits For Union-Represented Retirees Under Section 1114(g) (the

"1113/1114 Motions"); and this Court having entered an order on October 13, 2005 (Docket No.

232) and an amended order on February 9, 2006 (Docket No. 2225) granting the relief requested

in the Motion (the "Order"); and this Court having determined that changing certain deadlines set

forth in the Order in the manner set forth herein  is appropriate and in the best interests of the

---

[1]       As used herein, the term "Bankruptcy Code" means chapter 11 of title 11 of the United States Code, 11
U.S.C. §§ 101-1330, as amended.

Debtors, their estates, their creditors, and other parties-in-interest; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

The Order shall continue in full force and effect except as follows:

1.      The Debtors shall file and serve the 1113/1114 Motions upon the notice parties listed in paragraph 7 hereof, with a copy to this Court's chambers, no later than 4:00 p.m. (Prevailing Eastern Time) on or before March 31, 2006.

2.      As soon as reasonably practicable following the filing of the 1113/1114 Motions, counsel for the Debtors, the Official Committee of Unsecured Creditors and the International Unions shall meet and confer pursuant to the Case Management Order (Docket No. 245) and the Debtors shall submit a meet and confer report to Chambers with a copy to all other counsel participating in the meet and confer conference.

3.      Any opposition to the 1113/1114 Motions (the "Opposition") shall be filed and served upon the Debtors and their counsel, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Chicago, Illinois 60606 (Att'n:  John Wm. Butler, Jr.), with a copy to this Court's chambers and the notice parties listed in paragraph 7 hereof, so as to be received no later than 4:00 p.m. (Prevailing Eastern Time) on April 21, 2006.

4.      Any reply by the Debtors to any Opposition shall be filed and served upon the relevant International Unions and their counsel, with a copy to this Court's chambers and the notice parties listed in paragraph 7 hereof, so as to be received no later than 4:00 p.m. (Prevailing Eastern Time) on May 1, 2006.

2

5.      If an Opposition is filed, counsel for the Debtors, the Creditors' Committee and the party filing the Opposition (the "Opposing Party") shall further meet and confer within a reasonable time after the Opposition is filed but prior to the hearing on the 1113/1114 Motions.

6.      This Court shall conduct a hearing on the Debtors' 1113/1114 Motions beginning at 10:00 a.m. (Prevailing Eastern Time) on May 8, 2006 and continuing on May 9, 2006 and thereafter as required.

7.      Copies of the 1113/1114 Motions shall be served, along with notice of hearing, via facsimile or overnight mail upon (a) the relevant International Unions (as defined in the Order) and their counsel, (b) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard), (c) counsel for the official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg), (d) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n: Kenneth S. Ziman), and (e) counsel for the agent under the postpetition credit facility, Davis Polk & Wardwell 450 Lexington Avenue, New York, New York 10017 (Att'n:  Marlane Melican).


Dated:      New York, New York
            February 17, 2006



                            /s/ ROBERT D. DRAIN
                            UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT F

Objections Due: February 27, 2006 at 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
              In re                       :    Chapter 11
                                          :
    DELPHI CORPORATION, et al.,           :    Case No. 05- 44481 (RDD)
                                          :
                            Debtors.      :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF PRESENTMENT OF ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b)
AND FED. R. BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND RETENTION
OF COVINGTON & BURLING AS FOREIGN TRADE AND SPECIAL CORPORATE
COMMITTEE LEGAL COUNSEL TO DEBTORS

PLEASE TAKE NOTICE that on February 17, 2006, Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in

the above-captioned cases filed the Application For An Order Under 11 U.S.C. §§ 327(e)

And 1107(b) And Fed. R. Bankr. P. 2014 Authorizing Debtors Employment And Retention

Of Covington & Burling ("Covington") As Foreign Trade and Special Corporate Commit-

tee Legal Counsel to Debtors (the "Application").

PLEASE TAKE FURTHER NOTICE that if timely written objections are

filed, served, and received in accordance with this notice, a hearing to consider approval of

the Application will be held on March 9, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the

"Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, Room 610, New York, New York,

10004.

PLEASE TAKE FURTHER NOTICE that if no written objections to the

Application are timely filed, served, and received, the order filed with the Application and

attached to this notice as Exhibit A will be submitted for signature to the Honorable Robert

D. Drain, United States Bankruptcy Court for the Southern District of New York, One

Bowling Green, Room 610, New York, New York 10004 on February 27, 2006.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Applica-

tion must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the Southern District of New York, and the Order Under 11

2

U.S.C. §§ 102 (1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And

Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance

With Local Bankr. R. 1007-2(e) (the "Case Management Order") (Docket No. 245), (c) be

filed with the Bankruptcy Court in accordance with General Order M-242 (as amended)

registered users of the Bankruptcy Court's case filing system must file electronically, and all

other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document

Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be

submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain,

United States Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725

Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors,

Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the

Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington

Avenue, New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for the agent

under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New

York, New York 10017 (Att'n:  Marlane Melican), (v) counsel for the Official Committee

of Unsecured Creditors, Latham & Watkins, 885 Third Avenue, New York, New York

10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vi) Covington & Burling, 1330

Avenue of the Americas, New York, NY 10019 (Att'n: Aaron R. Marcu), and (vii) the

Office of the United States Trustee for the Southern District of New York, 33 Whitehall

Street, Suite 2100, New York, New York 10004 (Att'n:  Alicia M. Leonhard), in each case

so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time) on February 27, 2006** (the "Objection Deadline").

        PLEASE TAKE FURTHER NOTICE that only those objections made as set forth herein and in accordance with the Case Management Order will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Application are timely filed and served in accordance with the procedures set forth herein and in the Case Management Order, the Bankruptcy Court may enter an order granting the Application **without further notice**.

Dated: New York, New York
      February 17, 2006

                SKADDEN, ARPS, SLATE, MEAGHER
                  & FLOM LLP

             By:  /s/ John Wm. Butler, Jr.
                John Wm. Butler, Jr. (JB 4711)
                John K. Lyons (JL 4951)
                Ron E. Meisler (RM 3026)
             333 West Wacker Drive, Suite 2100
             Chicago, Illinois  60606
             (312) 407-0700

                    - and -

             By:  /s/ Kayalyn A. Marafioti
                Kayalyn A. Marafioti (KM 9632)
                Thomas J. Matz (TM 5986)
              Four Times Square
             New York, New York  10036
             (212) 735-3000

             Attorneys for Delphi Corporation, et al.,
                Debtors and Debtors-in-Possession

4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
     In re                        :     Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :     Case No. 05-44481 (RDD)
                                    :
               Debtors.    :     (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b) AND FED. R. BANKR. P. 2014
AUTHORIZING EMPLOYMENT AND RETENTION OF COVINGTON & BURLING
AS FOREIGN TRADE AND SPECIAL CORPORATE COMMITTEE
<u>LEGAL COUNSEL TO DEBTORS</u>

("COVINGTON & BURLING RETENTION ORDER")

        Upon the application, dated February 17, 2006 (the "Application"), of Delphi

Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C.

§§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 authorizing the employment and retention of

Covington & Burling ("Covington") as foreign trade and special corporate committee legal

counsel to the Debtors; and upon the Affidavit of Aaron Marcu, sworn to February 17, 2006, in

support of the Application (the "Marcu Affidavit"); and this Court being satisfied with the

representations made in the Application and the Marcu Affidavit that Covington does not

represent or hold any interest adverse to any of the Debtors' estates or the Debtors with respect to

the matters on which Covington is to be employed, and that Covington's employment is

necessary and would be in the best interests of each of the Debtors' estates; and it appearing that

proper and adequate notice has been given and that no other or further notice is necessary; and

upon the record herein; and after due deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Application is GRANTED.

2.    The Debtors' employment of Covington as their foreign trade and special

corporate committee legal counsel, pursuant to the Application, is approved under sections

327(e) and 1107(b) of the Bankruptcy Code, and Rule 2014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), with approval of such employment being effective as of the

Petition Date, October 8, 2005.

3.    Pursuant to Application, Covington will provide services to the Debtors in

connection with litigation and foreign trade government contract matters.  Such services will

include the following:

(a)    Advice and assistance on U.S. foreign trade controls, including the scope, applicability, licensing, and compliance requirements under the International Traffic in Arms Regulations, Directorate of Defense Controls, U.S. Department of State;

(b)    Advice to a Special Committee (the "Special Committee") of the Board of Directors (the "Board") in connection with demands made or that may be made by Delphi shareholders with regard to various accounting issues now under investigation and in litigation;

(c)    Advice to the Special Committee in connection with the Company's selection of a new external auditor; and

(d)    Advice to the Company regarding indemnification and advancement of funds to certain officers and directors.

4.    Covington shall be compensated in accordance with the standards and

procedures set forth in sections 330 and 331 of the Bankruptcy Code and all applicable

Bankruptcy Rules, Local Bankruptcy Rules for the United States Bankruptcy Court for the

Southern District of New York (the "Local Rules"), guidelines established by the Office of the

United States Trustee, and further orders of this Court.

5.   This Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Final Order.

6.   The requirement under Local Rule 9013-1(b) for the service and filing of a

separate memorandum of law is deemed satisfied by the Application.


Dated:    New York, New York
          March __, 2006


_____
    UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT G

**Hearing Date and Time: March 9, 2006, 10:00 a.m.**
**Objection Deadline: March 2, 2006, 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
        In re                                             :        Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :        Case No. 05-44481 (RDD)
                                                          :
                                                          :        (Jointly Administered)
                        Debtors.                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION TO FURTHER EXTEND THE TIME PERIOD WITHIN
WHICH DEBTORS MAY REMOVE ACTIONS UNDER
28 U.S.C. § 1452 AND FED. R. BANKR. P. 9006 AND 9027

("SECOND REMOVAL DEADLINE EXTENSION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the

"Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order pursuant to

28 U.S.C. § 1452 and Rules 9006 and 9027 of the Federal Rules of Bankruptcy Procedure (the

"Bankruptcy Rules") to extend further the time period within which the Debtors may remove

pending proceedings.  In support of this Motion, the Debtors respectfully represent as follows:

<u>Background</u>

A.      <u>The Chapter 11 Filings</u>

1.      On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its

U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization

relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended

(the "Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of Delphi

(together with the Initial Filers, collectively, the "Debtors") also sought reorganization relief.

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered

orders directing the joint administration of the Debtors' chapter 11 cases (Dockets Nos. 28 and

404).

2.      On October 17, 2005, the Office of the United States Trustee appointed an

official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner

has been appointed in the Debtors' cases.

2

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicate for the relief requested herein are 28 U.S.C. section 1452 and Bankruptcy Rules 9006(b) and 9027.

B.    Current Business Operations Of The Debtors

5.    Delphi had global 2004 revenues of approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1 billion,[1] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.    Delphi has become a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and the Company (as defined below) is today arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide.  The Company supplies products to nearly every major global automotive original equipment manufacturer, with 2004 sales to its former parent, General Motors Corporation ("General Motors" or "GM"), equaling approximately $15.4 billion, and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

7.    As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world.  As of the Initial Filing Date., the Debtors employed approximately 180,000 employees worldwide.  The Debtors' 50,600 U.S. employees worked in approximately 44 manufacturing sites, 13 technical centers, and Delphi's Troy, Michigan headquarters.  Approximately 34,750 of the Debtors' U.S. employees were hourly employees as of the Initial Filing Date, and 96% of these were represented by approximately 49 different international and local unions.  Outside the United States, the Company's foreign entities employed more than 134,000 people on the Initial Filing Date, supporting 120 manufacturing sites and 20 technical centers in nearly 40 countries around the globe.

8.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates (collectively, the "Company") in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.    Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production

4

of the vehicle.  When awarding new business, which is the foundation for the Company's

forward revenue base, customers are increasingly concerned with the financial stability of their

supply base.  The Debtors believe that they will maximize stakeholder value and the Company's

future prospects if they stabilize their businesses and continue to diversify their customer base.

The Debtors also believe that this must be accomplished in advance of the expiration of certain

benefit guarantees between GM and certain of Delphi's unions representing most of its U.S.

hourly employees which coincides with the expiration of the Company's U.S. collective

bargaining agreements in the fall of 2007.

C.    Events Leading To Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net operating loss of $482 million on $28.6 billion in net sales.  Reflective

of a downturn in the marketplace, Delphi's financial condition deteriorated further in the first six

months of 2005, with net operating losses of $608 million for the first six months of calendar

year 2005 on six-month net sales of $13.9 billion, approximately $1 billion less than the same

time period a year earlier.[2]

11.    The Debtors believe that the Company's financial performance has

deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of

creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for

---

[2]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily
related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward looking revenue requirements.  Because discussions with its unions and GM were not progressing sufficiently, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

13.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses.  This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness.  The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down during these cases.

14.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.    By this Motion, the Debtors request entry of an order pursuant to

Bankruptcy Rule 9006(b) extending the time by which the Debtors may remove actions pursuant

to 28 U.S.C. § 1452 and Bankruptcy Rule 9027 to the later to occur of (a) June 7, 2007 or (b) 30

days after entry of an order terminating the automatic stay with respect to any particular action

sought to be removed without prejudice to the Debtors' rights to seek further extensions of the

period during which the Debtors may remove actions.

<u>Basis For Relief</u>

16.    On January 6, 2006, this Court extended to April 6, 2006, the period by

which the Debtors may remove actions pursuant to 28 U.S.C. § 1452 and Bankruptcy Rule 9027.

By this Motion, the Debtors request entry of an order pursuant to Bankruptcy Rule 9006(b)

further extending, until June 7, 2007, the period during which the Debtors may remove actions

pursuant to 28 U.S.C. § 1452 and Bankruptcy Rule 9027.  This date is consistent with the

Debtors' goals of emerging from chapter 11 protection by early to mid-2007.[3]

17.    The Debtors are parties, as of the Initial Filing Date, to over 200 judicial

and administrative proceedings pending in various courts or administrative agencies throughout

the United States (collectively, the "Actions").  The Actions involve a wide variety of claims.

The period during which the Debtors may remove Actions currently expires on the later to occur

of (a) April 6, 2006 or (b) 30 days after entry of an order terminating the automatic stay with

respect to the particular action sought to be removed.  Because of the number of Actions

---

[3]    This date also coincides with the Debtors' deadline to assume or reject nonresidential real property leases under
the Order Pursuant To 11 U.S.C. § 365(d)(4) Extending Deadline To Assume Or Reject Unexpired Leases Of
Nonresidential Real Property (Docket No. 1345).

7

involved and the wide variety of claims, the Debtors need additional time to determine which, if any, of the Actions should be removed and, if appropriate, transferred to this district.

18.    The Debtors submit that the relief requested is in the best interests of their estates and creditors.  The extension sought will afford the Debtors a sufficient opportunity to make fully informed decisions concerning the possible removal of the Actions, protecting the Debtors' valuable right to adjudicate lawsuits economically pursuant to 28 U.S.C. § 1452 if the circumstances warrant removal.  Moreover, this extension will not prejudice any of the litigants because the Actions are stayed through confirmation absent relief from the automatic stay.  Furthermore, nothing herein will prejudice any Party whose proceeding is removed from pursuing remand pursuant to 11 U.S.C. § 1452(b).  Accordingly, the proposed extension requested herein will not prejudice the rights of other parties to any of the Actions.

<u>Applicable Authority</u>

19.    28 U.S.C. § 1452 and Bankruptcy Rule 9027 govern the removal of pending civil actions.  Section 1452(a) provides:

> A party may remove any claim or cause of action in a civil action other than a proceeding before the United States Tax Court or a civil action by a governmental unit to enforce such governmental unit's police or regulatory power, to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title.

28 U.S.C. § 1452(a).  Bankruptcy Rule 9027(a)(2) further provides, in pertinent part:

> If the claim or cause of action in a civil action is pending when a case under the [Bankruptcy] Code is commenced, a notice of removal may be filed [in the bankruptcy court] only within the longest of (A) 90 days after the order for relief in the case under the Code, (B) 30 days after entry of an order terminating a stay, if the claim or cause of action in a civil action has been stayed under § 362 of the Code, or (C) 30 days after a trustee qualifies in a chapter 11 reorganization case but not later than 180 days after the order for relief.

8

Fed. R. Bankr. P. 9027(a)(2).

20.     Bankruptcy Rule 9006(b), in turn, provides that the Court can extend

unexpired time periods:

> [W]hen an act is required or allowed to be done at or within a specified period by these
> rules or by a notice given thereunder or by order of court, the court for cause shown may
> at any time in its discretion with or without motion or notice order the period
> enlarged if the request therefore is made before the expiration of the period originally
> prescribed or as extended by a previous order . . . .

Fed. R. Bankr. P. 9006(b)(1).

21.     It is well settled that this Court is authorized to expand the removal period

as requested herein.  See Jandous Elec. Constr. Corp. v. City of New York (In re Jandous

Electric Construction Corp.), 106 B.R. 48, 50 (Bankr. S.D.N.Y. 1989) (implying that timely

filing motion for enlargement of time period for removal is often granted); Stamm v. Rapco

Foam, Inc., 21 B.R. 715, 718 (Bankr. W.D. Pa. 1982) (court may enlarge time limit for filing

application for removal in appropriate circumstances); Circle Litho, Inc., v. Ryder Truck Lines,

Inc. (In re Circle Litho, Inc.), 12 B.R. 752, 756 (Bankr. D. Conn. 1981) ("All time limitations in

the rules are subject to Bankruptcy Rule 9006 which generally permits time limits set by the

rules to be enlarged or reduced").  This Court has granted extensions of the removal period to

plan confirmation on numerous occasions.  See, e.g., In re Delaco Company, Case No. 04-10899

(Bankr. S.D.N.Y. April 21, 2004) (extending debtors' removal deadline through confirmation of

plan of reorganization); In re Global Crossing Ltd., et al., Case Nos. 02-40187 through 02-40241,

02-11982 (Bankr. S.D.N.Y. May 1, 2002) (extending debtors' removal deadline through

confirmation of plan of reorganization); In re WorldCom, Inc., et al., Case No. 02-13533 (Bankr.

S.D.N.Y. Oct. 8, 2002) (extending debtors' removal deadline through confirmation of plan of

reorganization).

9

<u>Notice</u>

22.     Notice of this Motion has been provided in accordance with the Order

Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And

Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance

With Local Bankr. R. 1007-2(e) entered by this Court on October 14, 2005 (Docket No. 245).  In

light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

<u>Memorandum Of Law</u>

23.     Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a)

extending the period set forth in Bankruptcy Rule 9027(a)(2)(A) during which they may remove

Actions through and including the later to occur of (i) June 7, 2007, or (ii) 30 days after entry of

a order terminating the automatic stay with respect to any particular action sought to be removed,

without prejudice to the Debtors' rights to seek further extensions of the period during which the

Debtors may remove actions and (b) granting the Debtors such other and further relief as is just.

Dated:  New York, New York
        February 17, 2006

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr. (JB 4711)
      John K. Lyons (JL 4951)
      Ron E. Meisler (RM 3026)
    333 West Wacker Drive, Suite 2100
    Chicago, Illinois  60606
    (312) 407-0700

            - and -

By:/s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
    Four Times Square
    New York, New York 10036
    (212) 735-3000

    Attorneys for Delphi Corporation, et al.,
      Debtors and Debtors-in-Possession

11

**Hearing Date and Time: March 9, 2006, 10:00 a.m.**
**Objection Deadline: March 2, 2006, 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
         In re                          :    Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :    Case No. 05-44481 (RDD)
                                        :
                        Debtors.        :    (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF MOTION TO FURTHER EXTEND TIME PERIOD WITHIN
WHICH DEBTORS MAY REMOVE ACTIONS UNDER
28 U.S.C. § 1452 AND FED. R. BANKR. P. 9006 AND 9027

PLEASE TAKE NOTICE that on February 17, 2006, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed a Motion To Further Extend The Time Period Within Which Debtors May Remove Actions Under 28 U.S.C. § 1452 And Fed. R. Bankr. P. 9006 And 9027 (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Motion will be held on March 9, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance With Local Bankr. R. 1007-2(e) (the "Case Management Order") (Docket No. 245), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

2

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the

Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue,

New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for the agent under the

postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New

York 10017 (Att'n:  Marlane Melican), (v) counsel for the Official Committee of Unsecured

Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n:

Robert J. Rosenberg and Mark A. Broude), and (vi) the Office of the United States Trustee for

the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York

10004 (Att'n:  Alicia M. Leonhard), in each case so as to be **received** no later than **4:00 p.m.**

**(Prevailing Eastern Time) on March 2, 2006** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Case Management Order will be considered by the Bankruptcy

Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance

with the procedures set forth herein and in the Case Management Order, the Bankruptcy Court

may enter an order granting the Motion without further notice.


Dated:  New York, New York
        February 17, 2005


                              SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP

                              By: /s/ John Wm. Butler, Jr.
                                 John Wm. Butler, Jr. (JB 4711)
                                 John K. Lyons  (JL 4951)
                                 Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois  60606
                              (312) 407-0700

                                 - and -

                              By: /s/ Kayalyn A. Marafioti
                                 Kayalyn A. Marafioti (KM 9632)
                                 Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

                              Attorneys for Delphi Corporation, et al.,
                                 Debtors and Debtors-in-Possession

4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
    In re                                 :        Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :        Case No. 05-44481 (RDD)
                                        :
               Debtors.         :        (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


ORDER TO FURTHER EXTEND THE TIME PERIOD WITHIN
WHICH DEBTORS MAY REMOVE ACTIONS UNDER
28 U.S.C. § 1452 AND FED. R. BANKR. P. 9006 AND 9027

("SECOND REMOVAL DEADLINE EXTENSION ORDER")

       Upon the motion, dated February 17, 2006 (the "Motion"), of Delphi Corporation

and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-

captioned cases (collectively, the "Debtors"), for an order (the "Order") under 28 U.S.C. § 1452

and Fed. R. Bankr. P. 9006 and 9027 further extending the period within which the Debtors may

remove actions; and this Court having determined that the relief requested in the Motion is in the

best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it

appearing that proper and adequate notice of the Motion has been given and that no other or

further notice is necessary; and after due deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

       ORDERED, ADJUDGED, AND DECREED THAT:

       1.      The Motion is GRANTED.

       2.      Pursuant to Bankruptcy Rule 9006(b), the period within which the Debtors

may seek to remove civil actions pending on the date of the commencement of their chapter 11

cases, pursuant to 28 U.S.C. § 1452 and Fed. R. Bankr. P. 9027(a)(2), is enlarged and extended

to and including the later to occur of (a) June 7, 2007 or (b) 30 days after entry of an order

terminating the automatic stay with respect to the particular action sought to be removed.

      3.     This Order is without prejudice to the Debtors' rights to seek further

extensions of the period during which the Debtors may remove actions.

      4.     This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this Order.

      5.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.


Dated: New York, New York
      March ___, 2006


                                             _____
                                           UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT H

**Hearing Date and Time:   March 9, 2006 at 10:00 a.m.**
**Objection Deadline:     March 2, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
     Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
         In re                            :   Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :   Case No. 05-44481 (RDD)
                                          :
                    Debtors.              :   (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER 11 U.S.C. § 363 AND FED. R.
BANKR. P. 6004 AUTHORIZING AND APPROVING SALE OF
DEBTORS' EQUITY INTEREST IN CHINESE JOINT
VENTURE

("MOTION TO SELL CHINESE JOINT VENTURE INTEREST")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession (collectively, the "Debtors"), hereby submit this

motion (the "Motion") for an order under 11 U.S.C. § 363 And Fed. R. Bankr. P. 6004

Authorizing And Approving Sale Of Debtors' Equity Interest In Chinese Joint Venture.

In support of this Motion, the Debtors respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8, 2005 (the "Initial Filing Date"), Delphi and certain

of its U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for

reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§

101-1330, as amended (the "Bankruptcy Code").  On October 14, 2005, three additional

U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors")

also sought reorganization relief.  The Debtors continue to operate their businesses and

manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108

of the Bankruptcy Code.  This Court entered orders directing the joint administration of

the Debtors' chapter 11 cases (Dockets Nos. 28 and 404).

2.    On October 17, 2005, the Office of the United States Trustee

appointed an official committee of unsecured creditors (the "Creditors' Committee").  No

trustee or examiner has been appointed in the Debtors' cases.

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C.

§§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter

is a core proceeding under 28 U.S.C. § 157(b)(2).

2

4.      The statutory predicate for the relief requested herein is section 363 of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

5.      Delphi had global 2004 revenues of approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1 billion.[1] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.      Delphi has become a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and the Company (as defined below) is today arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide. The Company supplies products to nearly every major global automotive original equipment manufacturer, with 2004 sales to its former parent, General Motors Corporation ("General Motors" or "GM"), equaling approximately $15.4 billion, and sales to each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group exceeding $850 million.

---

[1]      The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

7.    As part of its growth strategy, Delphi has established an expansive global presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures located in every major region of the world.  As of the Initial Filing Date, the Debtors employed approximately 180,000 employees worldwide.  The Debtors' 50,600 U.S. employees worked in approximately 44 manufacturing sites, 13 technical centers, and Delphi's Troy, Michigan headquarters.  Approximately 34,750 of the Debtors' U.S. employees were hourly employees as of the Initial Filing Date, and 96% of these were represented by approximately 49 different international and local unions. Outside the United States, the Company's foreign entities employed more than 134,000 people on the Initial Filing Date, supporting 120 manufacturing sites and 20 technical centers in nearly 40 countries around the globe.

8.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates (collectively, the "Company") in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

4

9.     Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base.  The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base.  The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.     Events Leading To Chapter 11 Filing

10.     In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the marketplace, Delphi's financial condition deteriorated further in the first six months of 2005, with net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, approximately $1 billion less than the same time period a year earlier.[2]

---

[2]     Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

11.    The Debtors believe that the Company's financial performance has deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward looking revenue requirements. Because discussions with its unions and GM were not progressing sufficiently, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

13.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses.  This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness.  The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down during these cases.

6

14.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.    By this Motion, the Debtors seek entry of an order (the "Sale Order") under 11 U.S.C. § 363 authorizing Delphi Electronics (Holding) LLC ("Delphi Electronics"), a Debtor, to sell its fifty percent equity interest in the joint venture Shanghai Delco Electronics & Instrumentation Company Ltd ("SDE") to its joint venture partner, Shanghai Agriculture, Industry & Commerce Group Changjiang General Corporation ("Changjiang") and Changjiang's senior manager, Mr. Yang Yi (together, the "Purchasers").  The sale of Delphi Electronics' equity interest (the "Transaction") will be pursuant to a transfer agreement (the "Transfer Agreement"), a copy of which, substantially in the form to be executed, is attached hereto as Exhibit A.

<u>Basis For Relief</u>

A.  <u>Background And Marketing Efforts For The Proposed Transaction</u>

16.    SDE produces instrument clusters for automobiles.  Delphi Electronics has de-emphasized its focus on the instrument clusters product line as part of its ongoing product portfolio process.  The Transaction will allow Delphi Electronics to exit the SDE joint venture at a time when it is limiting its investment in cluster

7

technology and competing global automotive component suppliers have entered the
Asian region.

17.    Delphi Electronics marketed the sale of its interest in SDE
extensively.  Over the course of three years, Delphi Electronics approached nearly twenty
potential buyers for its equity interest in SDE.  Although several prospects expressed
early interest to the point of making non-binding offers for Delphi Electronics' equity
interest in SDE, all subsequently withdrew their offers after further discussions and/or
due diligence.  Delphi Electronics also worked with three Asian-based investment
bankers to help identify other potential buyers, including financial buyers.  The regional
investment bankers, however, declined the engagement due to their perceptions about the
feasibility and profitability and difficulty of finding a buyer.

18.    Early in 2005 Delphi Electronics began discussing in earnest the sale
of its equity interest to its joint venture partner and its senior manager - i.e., the current
Purchasers.  Over the course of several months, Delphi Electronics negotiated the
economic and legal terms of the Transaction with the Purchasers.  After careful
evaluation, and after consulting with their advisors and certain creditor constituencies, the
Debtors determined, in their sound business judgment, that the sale of its equity interest
in SDE to the Purchasers was the best alternative.

19.    Accordingly, the Debtors finalized with the Purchasers the terms of
the Transaction reflected by the Transfer Agreement.  The Debtors submit that the
decision to complete the Transaction represents a proper exercise of the Debtors' business
judgment. As described above, the Debtors believe that the marketing efforts to date have
resulted in the highest or otherwise best offer in the form of the Transfer Agreement.

Nevertheless, the Debtors will serve a copy of this Motion upon each of the potential buyers and/or their agents who expressed an interest in Delphi Electronics' equity interest in SDE and will evaluate any other bids which the Debtors may receive.

B. The Structure Of SDE And The Proposed Transaction

20.    Delphi Electronics established the joint venture SDE, a company incorporated in the People's Republic of China, with Changjiang in 1995. Each of Delphi Electronics and Changjiang currently owns 50 percent of the equity of SDE.

21.    The Transaction proposes a total sale price of $7.5 million (the "Purchase Price") to be paid to Delphi Electronics for its fifty percent equity interest in SDE. Payment of the Purchase Price is as follows: (i) fifty percent of the Purchase Price ($3,750,000) will be payable on closing, (ii) forty percent of the Purchase Price ($3,000,000) will be payable within 12 months from closing, and (iii) the final payment of 10 percent of the Purchase Price ($750,000) will be made within 24 months from closing.

22.    Changjiang will acquire forty-five percent of the equity interest in SDE from Delphi Electronics for $6,750,000. Mr. Yang Yi will acquire five percent of the equity interest in SDE from Delphi Electronics for $750,000.

23.    The parties anticipate that the Transaction will be completed by June 2006. Upon consummation of the transaction, the Articles of Association of SDE and the joint venture contract between Delphi Electronics and Changjiang will be terminated.

<u>Applicable Authority</u>

24.    The Debtors submit that under section 363 of the Bankruptcy Code and Bankruptcy Rule 6004, this Court should authorize the Debtors to enter into the Transaction.

25.    Section 363(b)(1) of the Bankruptcy Code provides, in pertinent part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). Although section 363 of the Bankruptcy Code does not set forth a standard for determining when it is appropriate for a court to authorize the sale or disposition of a debtor's assets, courts in the Second Circuit and others, in applying this section, have required that it be based upon the sound business judgment of the debtor.  <u>See</u> <u>In re Chateaugay Corp.</u>, 973 F.2d 141 (2d Cir. 1992) (holding that a judge determining § 363(b) application must find good business reason to grant such application from evidence presented before him); <u>Committee of Equity Sec. Holders v. Lionel Corp.</u> (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983) (same); <u>In re Delaware Hudson Ry. Co.</u>, 124 B.R. 169, 179 (Bankr. D. Del. 1991).

26.    Once the debtor articulates a valid business justification, "'[there is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" <u>In re Integrated Resources, Inc.</u>, 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting <u>Smith v. Van Gorkom</u>, 488 A.2d 858, 872 (Del. 1985)); <u>see also</u> <u>In re RCN Corp.</u>, June 22, 2004 Hr'g Tr. ¶¶ 51:3–12 (approving exit financing commitments pursuant to 363(b) of Bankruptcy Code).  Once a valid business judgment is made, the business judgment rule shields a debtor's management from judicial second-guessing.  <u>In</u>

10

re Farmland Indus., Inc., 294 B.R. at 913 (quoting In re Johns-Manville Corp., 60 B.R.

612, 615-16 (Bankr. S.D.N.Y. 1986)) ("'[T]he Code favors the continued operation of a

business by a debtor and a presumption of reasonableness attaches to a debtor's

management decisions.'").  Once the Debtors articulate a valid business justification,

"[t]he business judgment rule 'is a presumption that in making a business decision the

directors of a corporation acted on an informed basis, in good faith and in the honest

belief that the action was in the best interests of the company.'"  In re Integrated Res., Inc.,

147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872

(Del. 1985)).

              27.    Here, the Debtors submit that the Transaction is warranted under

section 363 of the Bankruptcy Code.  The Transaction contemplates the "sale" of estate

assets and reflects a valid exercise of the Debtors' business judgment in light of the

benefits that will accrue to the Debtors as a result of the Transaction.  See In re Baldwin

United Corp., 43 B.R. 888, 890 n.1 (Bankr. S.D. Ohio 1984) (agreeing that the 363

standard should govern).

              28.    In light of the tangible, important benefits expected to accrue to the

Debtors by consummating the Transaction, this Court should grant the relief requested in

this Motion.  Delphi Electronics is de-emphasizing its focus on the instrument clusters

product line and the Transaction will allow the Debtors to exit the SDE joint venture at an

advantageous sale price.  Consummating the Transaction represents a valid exercise of

the Debtors' business judgment and is in the best interests of the estates.

<u>Notice</u>

29.    Notice of this Motion has been provided in accordance with the

Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007,

And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case

Management, And Administrative Procedures, And (III) Scheduling An Initial Case

Conference In Accordance With Local Bankr. R. 1007-2(e), which was entered by this

Court on October 14, 2005 (Docket No. 245).  In light of the nature of the relief requested,

the Debtors submit that no other or further notice is necessary.


<u>Memorandum Of Law</u>

30.    Because the legal points and authorities upon which this Motion

relies are incorporated herein, the Debtors respectfully request that the requirement of the

service and filing of a separate memorandum of law under Local Rule 9013-1(b) be

deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a)

authorizing the Debtors to transfer sell it fifty percent equity interest in SDE to the

Purchasers and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
          February 17, 2006

                           SKADDEN, ARPS, SLATE, MEAGHER
                              & FLOM LLP

                           By: /s/ John Wm. Butler, Jr.
                               John Wm. Butler, Jr. (JB 4711)
                               John K. Lyons (JL 4951)
                               Ron E. Meisler (RM 3026)
                           333 West Wacker Drive, Suite 2100
                           Chicago, Illinois  60606
                           (312) 407-0700

                                        - and -

                           By: /s/ Kayalyn A. Marafioti
                               Kayalyn A. Marafioti (KM 9632)
                               Thomas J. Matz (TM 5986)
                           Four Times Square
                           New York, New York 10036
                           (212) 735-3000

                           Attorneys for Delphi Corporation, et al.,
                               Debtors and Debtors-in-Possession

13

## EXHIBIT A

## TRANSFER AGREEMENT

---

## CONTRACT CONCERNING THE TRANSFER OF EQUITY INTEREST

---

**IN SHANGHAI DELCO ELECTRONICS & INSTRUMENTATION COMPANY LTD**

**between**

**SHANGHAI AGRICULTURE, INDUSTRY & COMMERCE GROUP CHANGJIANG GENERAL CO., LTD.**

**and**

**Yang Yi**

**and**

**DELPHI ELECTRONICS HOLDING LLC.,**

**and**

**SHANGHAI DELCO ELECTRONICS & INSTRUMENTATION COMPANY LTD**

**____, 2006**

**Shanghai, China**

# Contents

Page

ARTICLE 1        GENERAL PROVISIONS ........................................................................ 1

ARTICLE 2        TRANSFER OF REGISTERED CAPITAL ............................................ 3

ARTICLE 3        FAIR CONSIDERATION........................................................................ 5

ARTICLE 4        LIQUIDATION AND DISSOLUTION ...................................................... 6

ARTICLE 5        REPRESENTATIONS, WARRANTIES AND COVENANTS ................................ 7

ARTICLE 6        TERMINATION OF OTHER REGISTRATION AND CERTIFICATES ................ 8

ARTICLE 7         RELEASES ........................................................................................... 9

ARTICLE 8        DELPHI TECHNOLOGY LICENSE AND SERVICE SUPPORT........................... 9

ARTICLE 9        BREACH OF CONTRACT ...................................................................... 9

ARTICLES 10    CONFIDENTIALITY ............................................................................. 10

ARTICLE 11     MISCELLANEOUS PROVISIONS ........................................................ 11

Appendix I        Equity Interest to be Transferred to Purchaser........................................ 15

Appendix II       Termination Agreement to the Joint Venture Contract and Articles of Association  16

Appendix III      Deliverables at Closing ....................................................................... 17

- i -

## Contract Concerning the Transfer of Equity Interest
## in Shanghai Delco Electronics & Instrumentation Company, Ltd.

THIS CONTRACT is made this ____ day of____, 2006 in Shanghai, People's Republic of China ("PRC"), by and between

(1)    **SHANGHAI AGRICULTURE, INDUSTRY & COMMERCE GROUP CHANGJIANG GENERAL CO., LTD.,** a company limited by shares registered with the Administration for Industry and Commerce, China (Business License No. _____), organized and existing under the laws of the PRC, and with its legal address at _____, China ("Changjiang General");

(2)    **YANG YI**, a PRC citizen with the domicile at _____ and ID card No. of _____(" Yang Yi ");

         Changjiang General and Yang Yi being collectively referred to in this Contract as "Purchaser".

(3)    **DELPHI ELECTRONICS HOLDING LLC.** (formerly known as Delco Electronics International, Inc. whose name has been legally changed to Delphi Electronics (Holding) LLC effective on September 23, 2002.), a corporation organized and existing under the laws of the State of Delaware, United States of America ("USA"), with its registered address at The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware 19801 USA ("Seller or Delphi");

(4)    **SHANGHAI DELCO ELECTRONICS & INSTRUMENTATION COMPANY LTD**, a Sino-foreign equity joint venture organized and existing as an enterprise legal person under the laws of the PRC (the "Company");

Purchaser (including Changjiang General and Yang Yi) , Seller and the Company are referred to collectively as the "Parties", and each individually as a "Party".

## ARTICLE 1        GENERAL PROVISIONS

1.1    Preliminary Statements

         1.1.1    Changjiang General and Delphi are parties to a joint venture contract dated December 15, 1995 (as amended by Amendment No.1 to the Joint Venture Contract dated July 28, 2000) (the "Joint Venture Contract") and parties to a set of Articles of Association dated December 15, 1995 (as amended by Amendment No.1 to Articles of Association of the Company dated July 28, 2000) (the "Articles of Association") for the establishment of the Company. In accordance with the Joint Venture Contract and the Articles of Association, each of Changjiang General and Delphi owns fifty percent (50%) of the total equity interests of the Company.

         1.1.2    On September 23, 2002, Seller changed its company name from "Delco Electronics

1

International, Inc." to "Delphi Electronics (Holding) LLC".

1.1.3    Seller intends to transfer, and Purchaser intends to purchase, Seller's entire fifty percent (50%) equity interest in the Company, which represents the paid-in registered capital in the amount of Renminbi Sixty One Million Two Hundred and Twelve Thousand Five Hundred Yuan (RMB 61,212,500) contributed by Seller pursuant to the Joint Venture Contract (the "Equity Interest Transfer") according to the terms and conditions in this Contract and the applicable laws.  The Parties intend that Seller's said fifty percent (50%) equity interest shall be sold to and acquired by Changjiang General and Yang Yi in the respective portions detailed in Appendix I attached hereto ("Allocated Proportions").  Among which, Changjiang General will purchase 45% equity interest of the Company and Yang Yi will purchase 5% equity interest of the Company.

1.1.4    The Equity Interest Transfer was unanimously approved by the board of directors of the Company (the "Board of Directors") on the board meeting held on _____, 2006 and is subject to approval by Shanghai Foreign Investment Commission (the "Approval Authority").

1.1.5    Upon the consummation of the Equity Interest Transfer, Purchaser shall collectively own one hundred percent (100%) of the equity interest in the registered capital of the Company and the Company shall cease to exist as a Chinese-Foreign joint venture, and shall submit an application to the competent Administration Authority of Industry and Commerce (the "SAIC") for conversion of the Company from a foreign-invested enterprise to a domestically-owned enterprise (the "Converted Co.").

1.1.6    Changjiang General and Delphi have agreed to terminate the Joint Venture Contract and the Articles of Association and other documents further mentioned herein below to reflect the transactions contemplated hereby.

1.2    <u>Definitions</u>

All terms used in this Contract, but not otherwise defined herein, shall have the meanings ascribed to them in the Joint Venture Contract.

1.3    <u>Headings</u>

The headings in this Contract are inserted for convenience only and shall not affect the construction of this Contract.

1.4    <u>Authority of Changjiang</u>

Yang Yi hereby confirms and agrees that Changjiang General shall have full authority to act on his behalf in respect of any and all matters whatsoever relating to this Contract and the transactions contemplated hereby; that Yang Yi shall be unconditionally bound by all agreements, consents, waivers, compromises, decisions, notices and/or communications, made and/or conveyed by Changjiang General to Seller, concerning any and all matters whatsoever relating to this Contract and the transactions contemplated hereby; and that Seller shall be entitled to accept and rely on all such agreements, consents, waivers, compromises, decisions, notices and/or communications as having been duly made or

2

conveyed on behalf of Changjiang General and Yang Yi.


## ARTICLE 2      TRANSFER OF REGISTERED CAPITAL

2.1     <u>Equity Interest Transfer</u>

Subject to the terms and conditions of this Contract, the Parties hereby agree that on the Closing Date (as defined in Section 2.3.1 below), Seller shall sell, transfer and assign to Purchaser, and Purchaser shall (as between them, in the Allocated Proportions) purchase from Seller, Seller's entire equity interest in the registered capital of the Company together with all rights, liabilities and obligations incidental thereto, which constitutes fifty percent (50%) of the registered capital of the Company (the "<u>Transferred Equity Interest</u>"), but excluding any dividends of the Company in the financial year of 2005.

<u>2.2</u>     2005 Dividends

The Parties recognize that if the Company has any operational income in the calendar year 2005 based on the 2005 audited accounts of the Company, the Parties shall take all reasonable actions to cause the Company adopt a board resolution to declare and make such dividend payment to the Parties according to its equity interest held by the respective party in the Company before the Closing Date (defined hereinafter).

2.3     <u>Closing</u>

2.3.1     Subject to the terms and conditions of this Contract, completion of the sale and purchase of the Transferred Equity Interest contemplated by this Contract (the "<u>Closing</u>") shall take place before 4 p.m. on the 30th working day after the date (the "<u>Approval Date</u>") on which this Contract is approved by the Approval Authority and an approval letter on the transfer of the Transferred Equity Interest for the Company reflecting the Equity Interest Transfer under this Contract (the "<u>Approval Letter</u>") is issued or such other date as the Parties may agree in writing (the "<u>Closing Date</u>"), at the offices of the Company.

2.3.2     The Closing shall be subject to and conditional upon the following (unless waived in writing by the affected Party):

(i)     <u>Representations and Warranties</u>: The respective representations and warranties of the Parties shall be true and correct in all material respects as of the Closing Date.

(ii)     <u>No Proceeding or Litigation</u>: No claim, action, suit, inquiry, proceeding or investigation shall have been commenced or threatened by or before any governmental authority or non-governmental authority against any Party, seeking to restrain the transactions contemplated by this Contract which, in the reasonable, good faith determination of Seller, is likely to render it impossible or unlawful to consummate such transactions.

(iii)     <u>Board Approval</u>: The Board of Directors shall have unanimously adopted resolutions approving the Equity Interest Transfer and other transactions contemplated hereby, including but not limited to, this Contract, the

3

Termination Agreement to the Joint Venture Contract the Articles of Association, and change of legal representative of the Company.

(iv)     <u>Registration of Change of Legal Representative with SAIC</u>: The Company shall register with SAIC immediately after but not later than five (5) days after the adoption of the board resolution for the change of legal representative of the Company. Before such registration, Changjiang General shall provide to the Company an appointment letter for the new legal representative to be appointed by Changjiang General and other necessary documents.

(v)      <u>State-owned Assets Approval</u>: Shanghai Municipal Agriculture, Industry and Commerce (Group) General Corporation has performed the necessary approval procedures on behalf of State-owned Assets Supervision and Administration Commission of Shanghai Municipal Government on the purchase of 45% equity interest of the Company by Changjiang, including the approval or filing procedures on the assets evaluation result in relation to the Transferred Equity Interest.

(vi)     <u>Certificate of Property Rights Transaction</u>: Shanghai United Assets and Equity Exchange has issued the Certificate of Property Rights Transaction on the purchase of 45% equity interest of the Company by Changjiang.

(vii)    <u>Government Approval</u>: This Contract and any other documentations related to the transactions contemplated by this Contract, including without limitation, the board resolutions, the application letter, the Termination Agreement to the Joint Venture Contract and Articles of Association as attached hereto as Appendix II (collectively refereed to as the "<u>Transaction Documents</u>") shall have been approved by the Approval Authority, in such form and substance as are acceptable to the Parties, which shall not substantially vary the terms and conditions of the Transaction Documents or impose any additional terms and conditions.

(viii)   <u>State Administration of Foreign Exchange Approval</u>: Purchaser shall obtain from the State Administration of Foreign Exchange as may be necessary all such approvals as may be required under the laws and regulations of the PRC for the conversation of the Purchase Price and the payment thereof to Seller as specified in Section 3.2 herein.

(ix)     <u>Bank Guarantee</u>: Before the Closing Date, Seller shall have received an irrevocable bank guarantee Letter (the "Bank Guarantee") from a bank acceptable to Seller, which shall indicate that in the event of failure by Changjiang General and/or Yang Yi to pay any amount due according to Section 3.2.1 (b) and/or (c), the bank shall pay such amount together with any interest thereon unconditionally upon the first demand made by Seller to the bank. The Bank Guarantee will be put in place to guarantee the payment by Changjiang General and Yang Yi consistent with the payment schedule shown in Section 3.2.1 (b) and (c). Any expenses arising from the issuance of the Bank Guarantee shall be solely borne by Purchaser.

4

(x)    <u>Authorizations of Parties</u>: Each Party shall have delivered to the other Parties copies of authorizations and/or duly adopted resolutions approving the execution and delivery of this Contract, and the performance by such Party of its obligations under this Contract.

(xi)    <u>Bankruptcy Court Order</u>: the bankruptcy court administering Delphi Corporation's bankruptcy case (the "Bankruptcy Court") has entered an order approving the Equity Interest Transfer and other transactions contemplated hereby to the Purchaser.

2.3.3    At the Closing, Purchaser shall deliver or cause to be delivered to Seller the deliverables specified in Part I of Appendix III hereto, and Seller shall deliver or cause to be delivered to Purchaser the deliverables specified in Part II of Appendix III hereto.

2.4    <u>Assumption of Rights & Obligations</u>

2.4.1    Upon the transfer of the Transferred Equity Interest by Seller to Purchaser on the Closing Date, Purchaser shall collectively own one hundred percent (100%) of the equity interest in the registered capital of the Converted Co. and be entirely responsible for the operations of the Converted Co., and shall assume all obligations in relation thereto.

2.4.2    Upon the transfer of the Transferred Equity Interest by Seller to Purchaser on the Closing Date, Purchaser shall assume in full all rights, obligations and liabilities arising from or in connection with the Transferred Equity Interest and for all obligations and liabilities in connection with the Converted Co. and/or its business and activities and shall ensure that Seller will be released from any claims, obligations, liabilities or legal proceedings arising from or in connection with the Transferred Equity Interest or the Company, regardless whether arising before or after the Closing Date and any such claims, obligations and liabilities or legal proceedings shall not affect the Purchase Price as agreed by the Parties in Section 3.1 hereof.

2.4.3    As between Seller and Purchaser, notwithstanding any other provision in this Contract, Changjiang General and Yang Yi shall be jointly and severally liable to Seller in respect of each and every obligation and liability of Purchaser (or either of them) under this Contract, including the obligation to pay the Purchase Price under Article 3. As between Changjiang General and Yang, all rights and liabilities of Purchaser under this Contract shall be assumed and performed by them in the Allocated Proportions.

## ARTICLE 3        FAIR CONSIDERATION

The Parties acknowledge and agree that the Purchase Price constitutes fair and equitable consideration for the Equity Interest Transfer.

5

3.1    Purchase Price

The Purchase Price for the sale and transfer by Seller to Purchaser of the Transferred Equity Interest shall be USD7,500,000 (In Words: seven million five hundred thousand United States Dollars);

3.2    Payment of the Purchase Price

3.2.1    The Purchase Price of USD 7,500,000 (In Words: seven million five hundred thousand United States Dollars) shall be paid and remitted in US Dollars by Changjiang General and Yang Yi in the Allocated Proportions, to Seller's offshore account specified by Seller in the following three installments:

(a)    50% of the Purchase Price, USD3,750,000 (In Words: Three Million Seven Hundred and Fifty Thousand United States Dollars), payable on the Closing Date. Among which, Changjiang General shall pay USD3,375,000 (In Words: Three Million Three Hundred and Seventy-five Thousand United States Dollars) and Yang Yi shall  pay USD375,000 (In Words: Three Hundred and Seventy-five Thousand United States Dollars);

(b)    40% of the Purchase Price, USD3,000,000 (In Words: Three Million United States Dollars), payable within twelve (12) months from the Closing Date. Among which, Changjiang General shall pay USD2,700,000 (In Words: Two Million Seven Hundred Thousand United States Dollars) and Yang Yi shall pay USD300,000 (In Words: Three Hundred Thousand United States Dollars);

(c)    10% of the Purchase Price, USD750,000 (In Words: Seven Hundred and Fifty Thousand United States Dollars), payable within twenty-four (24) months from the Closing Date. Among which, Changjiang General shall pay USD675,000 (In Words: Six Hundred and Seventy-five Thousand United States Dollars) and Yang Yi shall  pay USD75,000 (In Words: Seventy-five Thousand United States Dollars).

3.2.2    Purchaser shall pay interest to Seller upon any and all amounts of payments that are at any time unpaid to Seller at the prime rate prevailing at the J.P. Morgan Chase & Co. of New York compounded annually in effect in New York City, U. S. A. from the date when such payments are due and payable as provided herein to the date of payment.

3.3    Bank Charges

All bank charges incurred within China will be paid by Purchaser, and all bank charges incurred outside China will be paid by Seller.

## ARTICLE 4        LIQUIDATION AND DISSOLUTION

The Parties agree to conduct the Equity Interest Transfer in accordance with the terms and conditions of this Contract and that in the event that this Contract is not approved by the Approval Authority six (6) months after the execution of this Contract by the Parties, the Company shall be dissolved and

liquidated in accordance with the Liquidation Rules of the Foreign Investment Enterprises, approved by the State Council on June 15, 1996 and promulgated by the Ministry of Foreign Economic and Trade Cooperation on July 9, 1996 and the relevant Chinese laws and regulations.

### ARTICLE 5        REPRESENTATIONS, WARRANTIES AND COVENANTS

5.1     Seller's Representations and Warranties

Seller hereby represents and warrants to Purchaser that, as of the date hereof and as of the Closing Date:

(a)     The Equity Interest is and will be free from any charges, pledges, encumbrances and any third party rights of any kind whatsoever.

(b)     There are no lawsuits, arbitration, legal, administrative or other proceedings or governmental investigations pending or, to the best knowledge of Seller, threatened against it with respect to the subject matter of this Contract or that could affect in any way Seller's ability to enter into or perform this Contract.

5.2     Purchaser's Representations and Warranties

Changjiang General and Yang Yi hereby jointly and severally represents and warrants to Seller, and undertakes, that, as of the date hereof and as of the Closing Date:

(a)     Prior to the Closing Date contemplated by this Contract, Purchaser shall assure and cause the management staff of the Company appointed by Purchaser not to obstruct Seller and the management staff of the Company appointed by Seller to manage and monitor the bank account of the Company, including but not limited to the cash flow of the Company in the bank accounts of the Company, and other management and personnel issues of the Company as deemed necessary by Seller.

(b)     It has obtained and will maintain in effect all governmental approvals required to execute and perform each of its obligations and the Company's obligations under this Contract.

(c)     It shall not claim any items from Seller related to the Company, and warrant that Purchaser shall be fully responsible for the operation and performance of the Company post-closing, and of the Converted Co..

(d)     That the execution by Purchaser of this Contract and the performance of their respective obligations thereunder will not result in a breach of any contract or commitment or any government or court order, judgment or decree entered into by or otherwise binding upon Purchaser.

5.3     Notifications to Suppliers and Customers

Promptly and not later than thirty (30) days after the Closing Date, Purchaser shall cause the Company to issue to each of the Company's suppliers and customers written notification, in form and substance acceptable to Purchaser and Seller, of the change or impending change

7

of status for the Company to Converted Co. and the termination of the joint venture between Changjiang General and Seller.

5.4     Further Assurances

Each of the Parties agrees to expeditiously execute such documents and perform such further acts as may be reasonably required or desirable to carry out or to perform the provisions and purposes of this Contract.

## ARTICLE 6          TERMINATION OF OTHER REGISTRATION AND CERTIFICATES

6.1     Cancellation of the Approval Certificate

Purchaser shall cause the Company to surrender its Approval Certificate immediately after but not later than five (5) days after obtaining the Approval Authority's Approval Letter for the Equity Interest Transfer contemplated herein.

6.2          Cancellation of the Investment Certificates

On the Closing Date, the investment certificate previously issued to Seller by the Company shall be canceled, and Purchaser shall collectively own One Hundred percent (100%) of the equity interest in the registered capital of the Converted Co. pursuant to its articles of association, which 100% equity interest shall be lawfully held by Changjiang General at 95% and Yang Yi at 5%.

6.3     Seals of the Company

The Seals of the Company shall be surrendered to the SAIC for the purpose of cancellation of Company's registration, and new Seals of Converted Co. shall be obtained by the Converted Co. separately.

6.4     Termination of Joint Venture Contract and Articles of Association

(a)     Changjiang, Delphi and the Company hereby agree that the Joint Venture Contract and the Articles of Association of the Company shall terminate and cease to have further effect as of the Closing Date.

(b)     Without prejudice to the generality of the foregoing, Changjiang General and/or the Company shall execute such termination contracts or other like documents as Delphi may request in respect of the termination.

6.5     Other Delphi Related Documents

With regard to all contracts and other legal documents, other than the Technology License Contract as set forth in Article 8 hereof, entered into by Delphi and/or Delphi's Affiliates with the Company (the "Delphi Related Documents"), Purchaser, Seller and the Company hereby agree that:

(a)  Secondment Contract between the Company and Delphi dated February 2, 1996 will be amended according to the Amendment to Secondment Contract which will be signed otherwise; and

(b)  Technology License Contract between the Company and Delphi Technologies Inc. dated March 16, 2004 (for Compass) will remain valid until the expiration thereof on March 15, 2014.

Affiliate of a Party to this Contract shall mean a company directly or indirectly controlling, controlled by, or under common control with the Party.  A company is controlled by ownership of more than fifty percent (50%) of the stock entitled to vote for directors or persons performing a function similar to that of directors.


## ARTICLE 7      RELEASES

After the Joint Venture Contract or the Articles of Association is terminated respectively, each of the Parties hereto (including the Company) shall release each of the other parties hereto and their Affiliates from all further obligations under the Joint Venture Contract and the Articles of Association, and from any and all claims, losses, liabilities, damages, deficiencies, judgments, assessments, fines, settlements, costs or expenses (including interest, penalties and fees, expenses and disbursements of attorneys, experts, personnel and consultants incurred by any Party in any action or proceeding among the Parties or between any Party and any third party, or otherwise) based upon, arising out of, in relation to or otherwise in respect of the Joint Venture Contract or the Articles of Association.


## ARTICLE 8      DELPHI TECHNOLOGY LICENSE AND SERVICE SUPPORT

After the expiration of the Technology License Contract between the Company and Delphi dated February 2, 1996, Supplemental Contract No. 1 dated September 15, 1998 and Amendment to Technology License Contract dated February 16, 2004, all of which will expire on June 30, 2006. Delphi agrees to continuously license certain technology to the Company according to the technology license contract for compass until the termination or expiration thereof, and provide technology license and technical support to the Company according to a separate Technology License Contract and Technical Service Agreement which will be executed between Delphi or Delphi's Affiliate and the Company.


## ARTICLE 9      BREACH OF CONTRACT

Except as otherwise provided herein, if a Party (the "Breaching Party") fails to perform any of its obligations under this Contract, then the other Parties (the "Aggrieved Parties") may at its option, in addition to its other rights under Applicable Laws:

(a)      give written notice to the Breaching Party, describing the nature and scope of the breach and demanding that the Breaching Party cure the breach at its cost within the time specified in the notice (being no more than a [thirty (30)] day period); and

(b)      if the Breaching Party fails to cure the breach within such specified period following delivery of such written notice, the Aggrieved Parties may claim direct and foreseeable damages arising from the breach.

9

Notwithstanding the abovementioned, if Purchaser fails to pay the Purchase Price in accordance with Article 3, Seller is entitled to serve notice on Changjiang General requiring Purchaser to take such steps and execute all legal documents and agreements as are necessary to terminate this Contract, rescind the approvals and reinstate the Parties to the positions they were in prior to the date of this Contract, and compensate Seller against any losses, damages, costs, expenses and liabilities arising therefrom.

### ARTICLES 10    CONFIDENTIALITY

10.1    <u>Public Announcement</u>

Subject to Section 10.3, none of the Parties shall make any public announcement concerning this Contract, the Transaction Documents or any other or subsequent documents executed by the Parties in relation to the transfer without the prior written approval (which approval shall not be unreasonably withheld) from the other Parties.

10.2    <u>Confidential Information</u>

Subject to Section 10.1 and 10.3, each Party shall treat as confidential and not disclose or use any information received or obtained as a result of entering into this Contract or any Transaction Document (or any agreement, contract or document entered into pursuant to the foregoing), which relates to:

(a)     the provisions of this Contract, the Transaction Documents, or any such other agreements or contracts or documents entered into pursuant to the foregoing;

(b)     the negotiations relating to this Contract, the Transaction Documents or such other agreements, contracts or documents; or

(c)     the business, financial or other affairs of the other Parties (including future plans and targets).

10.3    <u>Public Information</u>

Sections 10.1 and 10.2 shall not prohibit disclosure or use of any information if and to the extent:

(a)     the disclosure or use is required by applicable law, any regulatory body or the rules and regulations of any stock exchange or for the purpose of obtaining approvals;

(b)     the disclosure or use is required to vest the full benefit of this Contract or any of the Transaction Document in each Party;

(c)     the disclosure or use is required for the purpose of any judicial proceedings arising out of this Contract or any of the Transaction Document or any other agreement, contract or document entered into under this Contract, or the disclosure is reasonably required to be made to a Taxation Authority in connection with the Taxation affairs of the disclosing Party;

(d)       the disclosure is made to professional advisers of either of the Parties provided such professional advisers comply with the provisions of Section 10.2 in respect of such information as if they were a party to this Contract;

(e)       the disclosure or use is otherwise required by the Bankruptcy Court with respect to filings to be made with the Bankruptcy Court in connection with this Contract;

(f)       the information becomes publicly available (other than by breach of this Contract);

(g)       the other Parties has given prior written approval to the disclosure or use; or

(h)       the information is independently developed after the Closing Date,

provided that prior to the disclosure or use of any information pursuant to Section 10.3 (a), 10.3 (b), 10.3 (c) (except in the case of disclosure to the Taxation Authority) 10.3 (d) or 10.3 (e), the Party concerned shall promptly notify the other Parties of such requirement with a view to providing the other Parties with a reasonable opportunity to contest such disclosure or use or otherwise to agree the timing and content of such disclosure or use.

## ARTICLE 11      MISCELLANEOUS PROVISIONS

11.1      <u>Waiver</u>

No waiver by any Party of any breach by any other Party of any provision hereof shall be deemed to be a waiver of any subsequent breach of that or any other provision hereof and any forbearance or delay by any Party in exercising any of its rights hereunder shall not be construed as a waiver thereof.

11.2      <u>Entire Agreement</u>

This Contract supersedes all prior agreements made among the Parties with respect to the subject matter hereof and constitutes the entire agreement among the Parties.  It is expressly agreed that no amendments hereof shall be effective unless made in writing and signed by all Parties.

11.3      <u>Language</u>

This Contract is executed in Chinese and English in ＿＿＿＿  (＿) counterparts in each language.  Both English and Chinese language versions shall be equally valid.  Each Party acknowledges that it has reviewed both language texts of this Contract and that they are the same in all material respects.

11.4      <u>Taxes and Expenses</u>

Except as otherwise expressly provided in this Contract, any and all Taxes, including any stamp duty, fees or expenses, arising due to or from this transaction shall be borne by each Party respectively upon whom the applicable law, regulation or jurisdiction's customs imposes the obligation to pay.  Accordingly, but without limiting the foregoing, any Taxes, fees and expenses incurred by the Company as a result of this transaction, or otherwise, shall be borne by the Company.  Each Party shall pay its own legal expenses.  If one Party has

11

paid any Taxes, fees or expenses required to be paid by the other Parties, the Party required to pay such Taxes, fees or expenses shall promptly reimburse the other Parties after receipt of notice thereof from such Party and shall furnish the other Parties with original Tax receipts evidencing payment of such Tax and the amount thereof issued by the PRC Taxation Authority.

The Parties agree that each is subject to a Stamp Duty equal to 0.05% of the Total Purchase Price specified in Section 3.1 above, and shall pay their own respective stamp duties as required by law.

For the purposes of this Contract:

"Tax" or "Taxation" means all forms of taxation or purported taxation, whether direct or indirect and whether levied by reference to income, profits, net wealth, asset values, turnover, added value or other reference and statutory, governmental, state, provincial, local governmental or municipal impositions, duties, contributions, levies whenever and wherever imposed (whether imposed by way of a withholding or deduction for or on account of tax or otherwise) and in respect of any Person and all penalties, fines, charges, surcharges, costs and interest relating thereto.

"Taxation Authority" means any governmental authority or any subdivision, agency, commission or authority thereof, or any quasi-governmental or private body having jurisdiction over the assessment, determination, collection or other imposition of Taxes as defined above.

11.5    Governing Law

The formation, validity, interpretation, execution, amendment and termination of this Contract shall be governed by the published laws of China.

11.6    Settlement of Disputes-Arbitration

(a)    Any dispute arising from, out of or in connection with this Contract shall be settled through friendly consultations between the Parties.  Such consultations shall begin immediately after one Party has delivered to the other Parties a written request for such consultation.  If within ninety (90) days following the date on which such notice is given, the dispute cannot be settled through consultations, the dispute shall, upon the request of any Party with notice to the other Parties, be submitted to arbitration in Zurich, Switzerland under the auspices of the ICC Court of Arbitration (the "ICC").

(b)    There shall be three (3) arbitrators.  Purchaser shall select one (1) arbitrator and Seller shall select one (1) arbitrator, and both arbitrators shall be selected within thirty (30) days after giving or receiving the demand for arbitration.  Such arbitrators shall be freely selected, and the Parties shall not be limited in their selection to any prescribed list.  The chairman of the ICC shall select the third arbitrator.  If a Party does not appoint an arbitrator who has consented to participate within thirty (30) days after the selection of the first arbitrator, the relevant appointment shall be made by the chairman of the ICC.

12

(c)     The arbitration proceedings shall be conducted in English.  The arbitration tribunal shall apply the ICC Rules of Conciliation and Arbitration in effect on the date of the signing of this Contract.  However, if such rules are in conflict with the provisions of this Article, including the provisions concerning the appointment of arbitrators, the provisions of this Article shall prevail.

(d)     Each Party shall cooperate with the other Parties in making full disclosure of and providing complete access to all information and documents requested by the other Parties in connection with such proceedings, subject only to any confidentiality obligations binding on such Party.

(e)     The arbitral award shall be final and binding upon all Parties, not subject to any appeal, and shall deal with the question of costs of arbitration and all matters related thereto.

(f)     Judgment upon the award rendered by the arbitration may be entered into any court having jurisdiction, or application may be made to such court for a judicial recognition of the award or any order of enforcement thereof.

11.7    Continued Implementation of Contract

During the period when a dispute is being resolved, the Parties shall in all other respects continue their implementation of this Contract.

**IN WITNESS WHEREOF**, this Contract is signed in Shanghai, PRC by the authorized representatives of the Parties on the date first written above.

**SHANGHAI AGRICULTURE, INDUSTRY & COMMERCE GROUP CHANGJIANG GENERAL CO., LTD.**

By:_____
Name:
Title:
Nationality:


**Yang Yi**


By:_____
Name: Yang Yi
Nationality:


**DELPHIELECTRONICS HOLDING LLC.**


By: _____
Name:
Title:
Nationality:


**SHANGHAI DELCO ELECTRONICS & INSTRUMENTATION COMPANY LTD**


By: _____
Name:
Title:
Nationality:

**Appendix I**

**Equity Interest to be Transferred to Purchaser**

| Names of Purchaser | Equity Interest to Be Transferred from Seller | Purchaser Price |
|---|---|---|
| Changjiang | 45% of Company's total equity interest | USD 6,750,000 |
| Yang Yi | 5% of Company's total equity interest | USD 750,000 |

**Appendix II**
**Termination Agreement to the Joint Venture Contract and Articles of Association**

**Appendix III**
**Deliverables at Closing**

**Part I**   **Closing Deliverables by Purchaser**

(i)   Payment Receipt issued by the bank to evidence the payment by Purchaser (including Changjiang General and Yang Yi) of 50% of the Purchase Price under Section 3.2.1 (a) hereof.

(ii)   Copy of the new Business License of the Company reflecting the change of legal representative with SAIC.

(iii)   Copies of authorizations and/or duly adopted resolution approving the execution and delivery of this Contract and the performance of its obligations under this Contract.

**Part II**   **Closing Deliverables by Seller**

(i)   Written resignations of the directors on the Board of Directors appointed by Seller, namely, [                    ].(ii) Copies of authorizations and/or duly adopted resolution approving the execution and delivery of this Contract and the performance of its obligations under this Contract.

**Hearing Date and Time: March 9, 2006 at 10:00 a.m.**
**Objection Deadline:  March 2, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                         :
        In re                                            :    Chapter 11
                                                         :
    DELPHI CORPORATION, et al.,                          :    Case No. 05-44481 (RDD)
                                                         :
                            Debtors.                     :    (Jointly Administered)
                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

1

NOTICE OF MOTION FOR ORDER UNDER 11 U.S.C. § 363
AND FED. R. BANKR. P. 6004 AUTHORIZING AND
APPROVING SALE OF DEBTORS' EQUITY INTEREST IN
CHINESE JOINT VENTURE

PLEASE TAKE NOTICE that on February 17, 2006, Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in

the above-captioned cases, filed a Motion For Order Under 11 U.S.C. § 363 And Fed. R.

Bankr. P. 6004 Authorizing And Approving Sale Of Debtors' Equity Interest In Chinese

Joint Venture (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of

the Motion will be held on March 9, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the

"Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, Room 610, New York, New York,

10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion

(a) must be in writing, (b) must conform to the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the Southern District of New York and the Order Under 11

U.S.C. §§ 102 (1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And

Administrative Procedures, And (III) Scheduling An Initial Case Conference In

Accordance With Local Bankr. R. 1007-2(e) (the "Case Management Order") (Docket No.

245), (c) must be filed with the Bankruptcy Court in accordance with General Order M-242

(as amended) – registered users of the Bankruptcy Court's case filing system must file

electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in

2

Portable Document Format (PDF), WordPerfect, or any other Windows-based word

processing format), (d) must be submitted in hard-copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) must be served upon

(i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel),

(ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker

Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for

the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP,

425 Lexington Avenue, New York, New York 10017 (Att'n:  Kenneth S. Ziman), (iv)

counsel for the agent under the Debtors' postpetition credit facility, Davis Polk & Wardell,

450 Lexington Avenue, New York, New York 10017 (Att'n:  Marlane Melican), (v)

counsel for the official committee of unsecured creditors, Latham & Watkins, 885 Third

Avenue, New York, New York, 10022 (Att'n:  Robert J. Rosenberg and Mark A. Broude),

and (vi) the Office of the United States Trustee for the Southern District of New York, 33

Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard), in

each case so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time)** on

**March 2, 2005** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Case Management Order will be considered by the Bankruptcy

Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance

with the procedures set forth herein and in the Case Management Order, the Bankruptcy Court

may enter an order granting the Motion without further notice.

Dated: New York, New York
      February 17, 2006

                    SKADDEN, ARPS, SLATE, MEAGHER
                      & FLOM LLP

                    By:  /s/ John Wm. Butler, Jr._____
                        John Wm. Butler, Jr. (JB 4711)
                        John K. Lyons (JL 4951)
                        Ron E. Meisler (RM 3026)
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois  60606
                    (312) 407-0700

                          - and -

                    By:  /s/ Kayalyn A. Marafioti_____
                        Kayalyn A. Marafioti (KM 9632)
                        Thomas J. Matz (TM 5986)
                    Four Times Square
                    New York, New York  10036
                    (212) 735-3000

                    Attorneys for Delphi Corporation, et al.,
                      Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
     In re                             :      Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :      Case No. 05-44481 (RDD)
                                            :
                        Debtors.       :      (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. § 363 AND FED. R. BANKR. P. 6004
AUTHORIZING  AND APPROVING SALE OF DEBTORS' EQUITY
INTEREST IN CHINESE JOINT VENTURE

("MOTION TO SELL CHINESE JOINT VENTURE INTEREST")

       Upon the motion, dated February 17, 2006 (the "Motion"), of Delphi

Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-

in-possession in the above-captioned cases (collectively, the "Debtors"), for an order (the

"Order") under 11 U.S.C. § 363, And Fed. R. Bankr. P. 6004, Authorizing And

Approving Sale Of Debtors' Equity Interest in Chinese Joint Venture; and upon the

record of the hearing held on the Motion; and this Court having determined that the relief

requested in the Motion is in the best interests of the Debtors, their estates, their creditors,

and other parties-in-interest; and it appearing that proper and adequate notice of the

Motion has been given and that no other or further notice is necessary; and after due

deliberation thereon; and good and sufficient cause appearing therefor,

       IT IS HEREBY FOUND AND DETERMINED THAT:

       A.     The Debtors have exercised reasonable business judgment in

deciding to sell Delphi Electronics (Holding) LLC's fifty percent equity interest in the

joint venture Shanghai Delco Electronics & Instrumentation Company Ltd ("SDE") to the

joint venture partner, Shanghai Agriculture, Industry & Commerce Group Changjiang

General Corporation ("Changjiang") and Changjiang's senior manager, Mr. Yang Yi (the

"Transaction").

        B.      The transfer of the equity interest to the Purchasers pursuant to a

transfer agreement, substantially in the form attached hereto as Exhibit A, is in the best

interests of the Debtors' estates and creditors.

        C.      The consummation of the Transaction is properly authorized under

all applicable provisions of the Bankruptcy Code, including, without limitation, section

363 of the Bankruptcy Code, and all of the applicable provisions of such section have

been complied with in respect thereof.

        D.      The Debtors have marketed the sale of the equity interests in SDE

and conducted the sale process in compliance with the Bankruptcy Code and the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules") fairly and with adequate

opportunity for interested parties to submit bids.

        E.      The Purchasers and the Debtors engaged in good faith, arm's-

length negotiations in connection with finalizing the terms of the Transaction and the

Purchasers are "good faith" purchasers as such term is used in section 363(m) of the

Bankruptcy Code.

        F.      The Debtors have provided (i) proper, timely, adequate, and

sufficient notice of the Motion in accordance with the Bankruptcy Code and Bankruptcy

Rules, (ii) such notice was good and sufficient and appropriate under the circumstances

of these cases, and (iii) no other or further notice of the Motion or the entry of this Order

is required.

2

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Motion is GRANTED.

2.    The Debtors are authorized to consummate the Transaction under the terms set forth in the Motion, and that the Transaction is approved pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 6004.

3.    The Transfer Agreement, substantially in the form attached hereto, when executed, is authorized and approved and shall be a valid and binding contract between the Debtors and the Purchasers.

4.    Pursuant to section 363 of the Bankruptcy Code, the Debtors and the Purchasers are authorized and directed to consummate the Transaction pursuant to and in accordance with the terms and conditions of the Transfer Agreement.

5.    This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

6.    The requirement under Rule 9013-1(b) of the Local1 Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:    New York, New York
          March __, 2006


_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT I

**Hearing Date: March 9, 2006 at 10:00 a.m.**
**Objection Deadline: March 2, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

         - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
         In re                            :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05–44481 (RDD)
                                          :
                     Debtors.             :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION UNDER 11 U.S.C. §§ 363, 1107, AND 1108 AUTHORIZING DELPHI
AUTOMOTIVE SYSTEMS LLC TO MAKE EQUITY INVESTMENTS IN DELPHI
FURUKAWA WIRING SYSTEMS LLC AND APPROVING PROCEDURES TO MAKE
ADDITIONAL CONTRIBUTIONS WITHOUT FURTHER COURT APPROVAL

("JOINT VENTURE FUNDING MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion under 11 U.S.C. §§ 363, 1107, and 1108 authorizing Delphi Automotive Systems LLC ("DAS LLC") to make equity investments in Delphi Furukawa Wiring Systems LLC ("DFWS") and approving procedures through which DAS LLC may make additional capital contributions without further court approval (the "Motion").  In further support of this Motion, the Debtors respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of Delphi including DFWS (together with the Initial Filers, collectively, the "Debtors"), also sought reorganization relief.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases (Dockets Nos. 28 and 404).

2.    On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner has been appointed in the Debtors' cases.

2

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are sections 363, 1107, and 1108 of the Bankruptcy Code.

B.      Current Business Operations Of The Debtors

5.      Delphi had global 2004 revenues of approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1 billion,[1]  Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.      Delphi has become a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and the Company (as defined below) is today arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide.  The Company supplies products to nearly every major global automotive original equipment manufacturer, with 2004 sales to its former parent, General Motors Corporation ("General Motors" or "GM"), equaling approximately $15.4 billion, and sales to

---

[1]      The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

each of Ford Motor Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company,

Ltd., and Volkswagen Group exceeding $850 million.

7.       As part of its growth strategy, Delphi has established an expansive global

presence with a network of manufacturing sites, technical centers, sales offices, and joint

ventures located in every major region of the world.  As of the Initial Filing Date, the Debtors

employed approximately 180,000 employees worldwide.  The Debtors' 50,600 U.S. employees

worked in approximately 44 manufacturing sites, 13 technical centers, and Delphi's Troy,

Michigan headquarters.  Approximately 34,750 of the Debtors' U.S. employees were hourly

employees as of the Initial Filing Date, and 96% of these were represented by approximately 49

different international and local unions.  Outside the United States, the Company's foreign

entities employed more than 134,000 people on the Initial Filing Date, supporting 120

manufacturing sites and 20 technical centers in nearly 40 countries around the globe.

8.       Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through

various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these

divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates

(collectively, the "Company") in accordance with the terms of a Master Separation Agreement

between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution

from a North American-based, captive automotive supplier to a global supplier of components,

integrated systems, and modules for a wide range of customers and applications.  Although GM

is still the Company's single largest customer, today more than half of Delphi's revenue is

generated from non-GM sources.

4

9.      Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base.  The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.      Events Leading To Chapter 11 Filing

10.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the marketplace, Delphi's financial condition deteriorated further in the first six months of 2005, with net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, approximately $1 billion less than the same time period a year earlier.[2]

---

[2]      Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

11.     The Debtors believe that the Company's financial performance has
deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational
restrictions driven by collectively bargained agreements, including restrictions preventing the
Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of
creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for
domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in
the United States and related pricing pressures, and (c) increasing commodity prices.

12.     In light of these factors, the Company determined that it would be
imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product
portfolio, operational issues, and forward looking revenue requirements.  Because discussions
with its unions and GM were not progressing sufficiently, the Company commenced these
chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and
preserve value for its stakeholders.

13.     Through the reorganization process, the Debtors intend to achieve
competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive
legacy liabilities and burdensome restrictions under current labor agreements and realigning
Delphi's global product portfolio and manufacturing footprint to preserve the Company's core
businesses.  This will require negotiation with key stakeholders over their respective
contributions to the restructuring plan or, absent consensual participation, the utilization of the
chapter 11 process to achieve the necessary cost savings and operational effectiveness.  The
Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested,
consolidated, or wound-down during these cases.

14.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.    By this motion, the Debtors seek an order authorizing, but not directing, DAS LLC to make outstanding, current, and future equity investments in the joint venture DFWS and approving notice procedures by which DAS LLC may contribute additional capital to DFWS without further court approval.

<u>Basis For Relief</u>

16.    DFWS, a Delaware limited liability company, is a joint venture that DAS LLC, a wholly-owned subsidiary of Delphi, and Furukawa Electric North America APD, Inc. ("Furukawa")[3] formed in late 2004.  DAS LLC owns 80% of DFWS and Furukawa owns the remaining 20%.  DFWS was established to design and deliver electrical/electronic distribution systems ("E/EDS") to a major Japanese automobile manufacturer (the "Customer").  Currently, DFWS is in a start-up phase but expects to begin production, sales, and delivery of product this year or next.  As noted above, DAS LLC sought chapter 11 relief on October 8, 2005 and DFWS sought chapter 11 relief on October 14, 2005.

---

[3]    Furukawa is a wholly owned subsidiary of Furukawa Electric North America, Inc., which is in turn a wholly owned subsidiary of The Furukawa Electric Co., Ltd., a Japanese corporation.

7

17.     The creation and maintenance of the joint venture DFWS is part of the Debtors' strategy to diversify their customer base and grow their North American business with the Customer.  Although DAS LLC had a small portion of the Customer's E/EDS business prior to the formation of DFWS, DAS LLC and Furukawa entered into a partnership to strengthen their methods and techniques to meet and better support the Customer's expectations regarding design and processes.  Furukawa brings key capabilities to the joint venture including a strong engineering relationship with the Customer, valuable insight into the Customer's recognized CAD systems, and experience in the Customer's product and process design methodologies.  By teaming these capabilities with DAS LLC's advanced electrical architecture design capabilities, its strengths in complete systems integration and optimization, and its manufacturing and customer support network, the Debtors and Furukawa established a joint venture well-positioned to expand their relationships with the Customer in North America and to become one of the Customer's key North American E/EDS suppliers.  To achieve this result, DAS LLC must nurture its joint venture with Furukawa.

18.     Since DFWS's formation, DFWS has already been awarded more Customer business than that which was anticipated at the inception of the joint venture and is being invited to submit proposals for future North American programs.  To ensure that DFWS continues to have significant future business prospects with the Customer and to preserve a positive relationship with Furukawa, the Debtors must maintain their momentum and continue to give DFWS the resources it needs to operate effectively.

19.     In addition to providing the Debtors' access to the Customer's business and facilitating the Debtors' customer diversification commitment, DFWS is predicted to be a

profitable venture, yielding net positive returns for the Debtors over the first ten years of its

existence.

20.    In addition to what has already been contributed, pursuant to the terms of

the LLC Agreement, DAS LLC and Furukawa have agreed to make equity injections in the

combined aggregate amount of approximately $3.8 million through the year 2007 to provide

DFWS with working capital to fund pre-production requirements such as engineering support,

prototypes, manufacturing plant preparation, and other support activities.[4]  Under the LLC

Agreement, DFWS is required to make payments to either DAS LLC or Furukawa for these

services.  Of the $3.8 million equity infusion, DAS LLC is scheduled to make aggregate

contributions of approximately $3.1 million (representing 80% of total capital contributions of

$3.8 million) and Furukawa is scheduled to make aggregate contributions of approximately $0.7

million (representing 20% of the total capital contributions of $3.8 million).  As of the Petition

Date, DAS LLC had contributed $2.3 million and Furukawa had contributed $0.6 million to the

venture.[5]  The remaining scheduled capital contributions for 2005 through 2007 are as follows:

|          | 2005[6] | 2006 | 2007 | Total |
|----------|---------|------|------|-------|
| DAS LLC  | $0.5    | $1.4 | $1.2 | $3.1  |
| Furukawa | $0.1    | $0.3 | $0.3 | $0.7  |

---

[4]    DFWS is currently in start-up mode and DAS LLC and Furukawa are billing DFWS for
the engineering and administrative services that DAS LLC and Furukawa are providing.
DFWS currently owes DAS LLC approximately $42,000 for prepetition engineering
services and $145,500 for postpetition services.  DFWS owes Furukawa $68,059.78.

[5]    In the ordinary course of business, DAS LLC provides equipment and tooling used in the
manufacture of products for DFWS.  The cost of the equipment and tooling is charged
back to DFWS.

[6]    Note that amounts are listed in millions and approximated to the nearest hundred
thousand.  The total aggregate 2005 contributions, including those contributions paid
prepetition and those scheduled, but unpaid, postpetition contributions, equals $3.5
million.

| | | | |
|---|---|---|---|
| **Total** | $0.6 | $1.7 | $1.5 | $3.8 |

21.    Under the terms of the LLC Agreement, DAS LLC and Furukawa agree that all scheduled capital contributions must be made to, and received by, DFWS no later than the last business day of the first calendar quarter of the year in which the capital contribution is scheduled, unless otherwise agreed by DAS LLC and Furukawa.  DAS LLC and Furukawa agreed to make quarterly contributions in 2005.  The fourth quarter capital contribution of $600,000 by both parties ($480,000 for DAS LLC and $120,000 for Furukawa) is currently outstanding.  Furukawa has indicated it will make its funding contributions for the fourth quarter of 2005 if DAS LLC injects its equity as well.  In the interim, DFWS' liquidity is decreasing.  Thus, the failure of DAS LLC to make its scheduled capital contributions to the Affiliated Debtor, DFWS, in the first quarter of 2006 may jeopardize the financial wherewithal of the joint venture.  Thus, the Debtors hereby seek authority for DAS LLC to make its scheduled capital contributions of $3.1 million.

Proposed Procedures For Making Additional Capital Contributions

22.    The Debtors anticipate that DFWS may require capital through equity contributions during the 2006-2007 period in excess of those scheduled amounts described above.  In part, this is due to DFWS's success in winning additional business beyond what was anticipated during the formation of the joint venture.  In addition, changes in the Customer's production schedule for certain platforms which use DFWS's products have extended DFWS's start-up period and postponed a portion of DFWS's cash receivables for the sale of its product.  Accordingly, the Debtors hereby request authority for DAS LLC to make contributions in excess of those scheduled above, in amounts up to $1.5 million, in the aggregate, in the Debtors' sole discretion, without notice or further court approval.  Should DAS LLC's aggregate additional

10

capital contributions total more than $1.5 million (the "Additional Capital Contributions"), the

Debtors seek approval of the following process (the "Procedures") by which DAS LLC would

make Additional Capital Contributions to DFWS:

       (a)     the Debtors would give notice of the proposed Additional Capital
Contributions (the "Additional Capital Notice") to (i) the Office of the United States
Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New
York, New York 10004, Att'n: Alicia M. Leonhard, Esq., (ii) counsel for the Creditors'
Committee, Latham & Watkins LLP, 885 Third Avenue, New York, New York, 10022-
4802 (Att'n: Robert J. Rosenberg, Esq.), (iii) counsel for the agent under the Debtors'
prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New
York, New York, 10017 (Att'n: Marissa Wesley, Esq.), and (iv) counsel for the agent
under the Debtors' postpetition credit facility, Davis Polk & Wardell, 450 Lexington
Avenue, New York, New York, 10017 (Att'n: Marlane Melican, Esq.) (collectively, the
"Notice Parties"). The Additional Capital Notice would be served by facsimile, overnight
delivery, or hand delivery and would include the amount of Additional Capital
Contributions requested.

       (b)     The Notice Parties would have ten business days following initial receipt
of the Additional Capital Notice to object to or request additional time to evaluate the
Additional Capital Contributions. If counsel to the Debtors received no written objection
or written request for additional time prior to the expiration of such ten business day
period, the Debtors would be authorized to make the requested Additional Capital
Contributions.

       (c)     If a Notice Party objects to the Additional Capital Notice within ten
business days after the Additional Capital Notice is received, the Debtors and such
objecting Notice Party would meet and confer in an attempt to negotiate a consensual
resolution. Should either party determine that an impasse exists, then the Debtors would
move the Bankruptcy Court for authority to make the Additional Capital Contributions
upon notice to the objecting party and other parties-in-interest in accordance with the
Court's Case Management Order (as defined below) entered on October 14, 2005.

       23.     In the exercise of their business judgment, the Debtors believe that the

capital contributions to be made by DAS LLC to DFWS, each of which is a Debtor in these

cases, is in the best interests of the Debtors' estates because such contributions will maximize

value for all stakeholders by promoting the diversification of the Debtors' businesses by growing

their relationship with the Customer.  Similarly, the Debtors believe that the Procedures

described herein are in the best interests of the Debtors.

Applicable Authority

24.    Sections 1107(a) and 1108 of the Bankruptcy Code vest debtors-in-possession with authority to continue operating their businesses.  The Debtors, operating their businesses as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, are fiduciaries "holding the bankruptcy estate[s] and operating the business[es] for the benefit of [their] creditors and (if the value justifies) equity owners."  In re CoServ, L.L.C., 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002).  Implicit in the duties of a chapter 11 debtor-in-possession is the duty "to protect and preserve the estate, including an operating business's going-concern value."  Id.

25.    Section 1107(a) of the Bankruptcy Code provides that the debtor-in-possession shall have the duties of a trustee in a chapter 11 case with all the rights and powers of a trustee.  11 U.S.C. § 1107.  Accordingly, to understand the rights and powers of the debtor-in-possession, section 1107 of the Bankruptcy Code must be read in conjunction with those provisions of chapters 3, 5, and 11 of the Bankruptcy Code which confer certain rights and powers on trustees.  7 Collier, Bankruptcy ¶ 1107.03 (15th rev. ed. 2003).  Section 363(c) of the Bankruptcy Code provides in pertinent part: "[T]he [debtor-in-possession] may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

26.    To the extent that the Debtors' decision to make equity investments in DFWS constitutes a transaction outside of the ordinary course of business, section 363(b)(1) of the Bankruptcy Code requires that "there must be some articulated business justification for using, selling, or leasing the property outside the ordinary course of business."  Institutional Creditors of Continental Airlines, Inc. v. Continental Airlines, Inc. (In re Continental Airlines,

12

Inc.), citing In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983); accord Stephens Indus., Inc.

v. McClung (In re McClung), 789 F.2d 386, 390 (6th Cir. 1986); Fulton State Bank v. Schipper

(In re Schipper), 109 B.R. 832, 836 (Bankr. N.D. Ill. 1989); In re Ionosphere Clubs, Inc., 98 B.R.

174, 175 (Bankr. S.D.N.Y. 1988).

       27.     Sound business reasons exist to justify DAS LLC making its scheduled

equity contributions in the joint venture DFWS, an Affiliated Debtor.  From the opening days of

these cases, the Debtors have expressed its commitment to diversifying its customer base.

Affidavit of Robert S. Miller, Jr. Under Local Bankruptcy Rule 1007-2 And In Support Of

Chapter 11 Petitions And Various First Day Applications And Motions at 6, In re Delphi

Corporation, Case No. 05-44481 (Bankr. S.D.N.Y. October 8, 2005) ("[T]o continue winning

business and to maintain a robust forward revenue base, it is particularly important for Delphi to

. . . continue to diversify its customer base.")  As discussed above, DFWS is essential to the

Debtors' efforts to diversify their customer base as it is a key component towards developing a

closer relationship with the Customer and winning E/EDS business from the Customer's North

American vehicle programs.

       28.     Over the last several years, the Customer has achieved substantial growth

in the United States and has steadily increased its market share both nationally and globally.

Accordingly, it has become increasingly important for the Debtors to develop their business

relationship with the Customer.  DFWS represents the Debtors' best opportunity to maintain and

develop its E/EDS sourcing abilities to the Customer.

       29.     The Debtors seek this Court's authority for DAS LLC to make Additional

Capital Contributions pursuant to the Procedures set forth herein to reduce the costs associated

with seeking Court approval of each request for Additional Capital Contributions and to reduce

the time required to obtain that approval.  The Procedures will provide the Debtors with both

flexibility and a framework for DAS LLC to make Additional Capital Contributions, while still

providing for a review by some of the major constituents of these cases.  Without a process for

making Additional Capital Contributions, the Debtors and their estates would incur added and

unnecessary expenses and delay in seeking further court approval of the exercise of their

business judgment.  The Debtors respectfully submit that should DFWS's business grow such

that Additional Capital Contributions are required, the ability to make such Additional Capital

Contributions would be essential to ensuring that the Debtors are able to fulfill their obligations

to DFWS and in turn to the Customer and continue to diversify their businesses.

        30.     For the foregoing reasons, the Debtors believe that the relief requested

herein is in the best interests of the estates and should be granted.

Notice

        31.     Notice of this Motion has been provided in accordance with the Order

Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And

Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance

With Local Bankr. R. 1007-2(e), entered by this Court on October 14, 2005 (Docket No. 245)

(the "Case Management Order").  In light of the nature of the relief requested, the Debtors

submit that no other or further notice is necessary.

Memorandum Of Law

        32.     Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

14

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE, the Debtors respectfully request that the Court enter an

order (i) authorizing, but not directing, DAS LLC to make outstanding, current, and future equity

investments in the joint venture DFWS, (ii) approving Procedures through which DAS LLC may

make Additional Capital Contributions without further court approval, and (iii) granting such

other and further relief as is just and proper.

Dated: New York, New York
      February 17, 2006

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By: /s/ John Wm. Butler, Jr._____
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti_____
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

**Hearing Date and Time: March 9, 2006 at 10:00 a.m.**
**Objection Deadline:  March 2, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                         :
            In re                                        :    Chapter 11
                                                         :
    DELPHI CORPORATION, et al.,                          :    Case No. 05-44481 (RDD)
                                                         :
                              Debtors.                   :    (Jointly Administered)
                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

NOTICE OF MOTION UNDER 11 U.S.C. §§ 363, 1107, AND 1108
AUTHORIZING DELPHI AUTOMOTIVE SYSTEMS LLC TO MAKE
EQUITY INVESTMENTS IN DELPHI FURUKAWA WIRING SYSTEMS LLC
AND APPROVING PROCEDURES TO MAKE ADDITIONAL
<u>CONTRIBUTIONS WITHOUT FURTHER COURT APPROVAL</u>

PLEASE TAKE NOTICE that on February 17, 2006, Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in

the above-captioned cases, filed a Motion Under 11 U.S.C. §§ 363, 1107, And 1108

Authorizing Delphi Automotive Systems LLC To Make Equity Investments In Delphi

Furukawa Wiring Systems LLC And Approving Procedures To Make Additional

Contributions Without Further Court Approval (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of

the Motion will be held on March 9, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the

"Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, Room 610, New York, New York,

10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion

(a) must be in writing, (b) must conform to the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the Southern District of New York and the Order Under 11

U.S.C. §§ 102 (1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And

Administrative Procedures, And (III) Scheduling An Initial Case Conference In

Accordance With Local Bankr. R. 1007-2(e) (the "Case Management Order") (Docket No.

245), (c) must be filed with the Bankruptcy Court in accordance with General Order M-242

(as amended) – registered users of the Bankruptcy Court's case filing system must file

2

electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word

processing format), (d) must be submitted in hard-copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) must be served upon

(i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel),

(ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker

Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for

the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP,

425 Lexington Avenue, New York, New York 10017 (Att'n:  Kenneth S. Ziman), (iv)

counsel for the agent under the Debtors' postpetition credit facility, Davis Polk & Wardell,

450 Lexington Avenue, New York, New York 10017 (Att'n:  Marlane Melican), (v)

counsel for the official committee of unsecured creditors, Latham & Watkins, 885 Third

Avenue, New York, New York, 10022 (Att'n:  Robert J. Rosenberg and Mark A. Broude),

and (vi) the Office of the United States Trustee for the Southern District of New York, 33

Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard), in

each case so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time)** on

**March 2, 2005** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth herein and in accordance with the Case Management Order will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance with the procedures set forth herein and in the Case Management Order, the Bankruptcy Court may enter an order granting the Motion without further notice.

Dated: New York, New York
       February 17, 2006

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By: /s/ John Wm. Butler, Jr._____
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti_____
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
     In re                            :     Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :     Case No. 05-44481 (RDD)
                                          :
               Debtors.           :     (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


ORDER UNDER 11 U.S.C. §§ 363, 1107, AND 1108 AUTHORIZING DELPHI
AUTOMOTIVE SYSTEMS LLC TO MAKE EQUITY INVESTMENTS IN DELPHI
FURUKAWA WIRING SYSTEMS LLC AND APPROVING PROCEDURES TO MAKE
ADDITIONAL CONTRIBUTIONS WITHOUT FURTHER COURT APPROVAL

("JOINT VENTURE FUNDING ORDER")

          Upon the motion, dated February 17, 2006 (the "Motion"), of Delphi Corporation

and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-

captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. §§ 363,

1107, and 1108 of chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 - 1330, as

amended, authorizing Delphi Automotive Systems LLC ("DAS LLC") to make equity

investments in Delphi Furukawa Wiring Systems LLC ("DFWS") and approving procedures

through which DAS LLC may make additional capital contributions without further court

approval; and upon the record of the hearing held on the Motion; and this Court having

determined that the relief requested in the Motion is in the best interests of the Debtors, their

estates, their creditors, and other parties-in-interest; and it appearing that proper and adequate

notice of the Motion has been given and that no other or further notice is necessary; and after due

deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED.

2.      DAS LLC is authorized, but not directed, to make outstanding, current,

and future equity investments in its joint venture DFWS in amounts up to $3.1 million.

3.      DAS LLC is further authorized, in the exercise of its business judgment, to

make capital contributions in excess of those scheduled amounts up to $1.5 million in the

aggregate during the 2006-2007 period without notice or further Court approval.  Should DAS

LLC's aggregate additional capital contributions total more than $1.5 million (the "Additional

Capital Contributions"), DAS LLC shall be authorized to make the Additional Capital

Contributions without further court approval in accordance with the following notice procedures:

> (a)    the Debtors shall give notice of the proposed Additional Capital Contributions (the "Additional Capital Notice") to  (i) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004, Att'n: Alicia M. Leonhard, Esq., (ii) counsel for the official committee of unsecured creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York, 10022-4802 (Att'n: Robert J. Rosenberg, Esq.), (iii) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York, 10017 (Att'n: Marissa Wesley, Esq.), and (iv) counsel for the agent under the Debtors' postpetition credit facility, Davis Polk & Wardell, 450 Lexington Avenue, New York, New York, 10017 (Att'n: Marlane Melican, Esq.) (collectively, the "Notice Parties"). The Additional Capital Notice shall be served by facsimile, overnight delivery, or hand delivery and shall include the amount of Additional Capital Contributions requested.

> (b)    The Notice Parties shall have ten business days following initial receipt of the Additional Capital Notice to object to or request additional time to evaluate the Additional Capital Contributions. If counsel to the Debtors receives no written objection or written request for additional time prior to the expiration of such ten business day period, the Debtors shall be authorized to make the requested Additional Capital Contributions.

> (c)    If a Notice Party objects to the proposed within ten business days after the Additional Capital Notice is received, the Debtors and such objecting Notice Party shall meet and confer in an attempt to negotiate a consensual resolution. Should either party determine that an impasse exists, then the Debtors shall move the Bankruptcy Court for authority to make the Additional Capital Contributions upon notice to the objecting party and other parties-in-interest in accordance with the Order Under 11 U.S.C.

§§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance With Local Bankr. R. 1007-2(e), entered by this Court on October 14, 2005 (Docket No. 245).

4.      This Court shall retain jurisdiction to hear and determine all matters

arising from the implementation of this Order.

5.      The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
       March ___, 2006


_____
       UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT J

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

          - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
     Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
    In re                        :    Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :    Case No. 05-44481 (RDD)
                                            :
               Debtors.        :    (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER 11 U.S.C. §§ 362, 363, AND 365 AUTHORIZING
DEBTORS TO (I) OBTAIN SIGNIFICANT IMPROVEMENT IN ENERGY COSTS BY
MODIFYING AGREEMENTS WITH LOCKPORT ENERGY ASSOCIATES L.P.
AND NEW YORK STATE ELECTRIC AND GAS CORPORATION, (II) ASSUME
MODIFIED AGREEMENT WITH LOCKPORT ENERGY ASSOCIATES L.P., AND
(III) CONSENT TO RELIEF FROM AUTOMATIC STAY FOR
LIMITED PURPOSE OF ALLOWING LOCKPORT ENERGY
ASSOCIATES L.P. TO RECORD MODIFIED EASEMENTS

("LOCKPORT ENERGY AGREEMENTS MODIFICATION AND ASSUMPTION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (the "Debtors"), hereby submit this motion (the "Motion") for an order under 11 U.S.C. §§ 362, 363, and 365 Authorizing The Debtors To (i) Obtain Significant Improvement In Energy Costs By Modifying Agreements With Lockport Energy Associates L.P. ("Lockport Energy"), the Power Authority of the State of New York ("NYPA"), and New York State Electric and Gas Corporation ("NYSEG"), (ii) Assume Modified Agreement with Lockport Energy, and (iii) Consent To Relief From The Automatic Stay For Limited Purpose Of Allowing Lockport Energy Associates L.P. To Record Modified Easements.  In support of this Motion, the Debtors submit the declaration of Matthew J. Zarnosky, sworn to February 17, 2006.  In further support of this Motion, the Debtors respectfully represent as follows:

<u>Background</u>

A.      <u>The Chapter 11 Filings</u>

1.      On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") also sought reorganization relief.  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtors' chapter 11 cases (Dockets Nos. 28 and 404).

2

2.        On October 17, 2005, the Office of the United States Trustee appointed an

official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner has

been appointed in the Debtors' cases.

3.        This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and

1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding

under 28 U.S.C. § 157(b)(2).

4.        The statutory predicates for the relief requested herein are sections 362, 363,

and 365 of the Bankruptcy Code.

B.    Current Business Operations Of The Debtors

5.        Delphi had global 2004 revenues of approximately $28.6 billion, and global

assets as of August 31, 2005 of approximately $17.1 billion.[1]  Delphi ranks as the fifth largest public

company business reorganization in terms of revenues, and the thirteenth largest public company

business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors

and continue their business operations without supervision from the Bankruptcy Court.

6.        Delphi has become a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and the Company (as

defined below) is today arguably the single largest global supplier of vehicle electronics,

transportation components, integrated systems and modules, and other electronic technology.  The

Company's technologies and products are present in more than 75 million vehicles on the road

worldwide.  The Company supplies products to nearly every major global automotive original

equipment manufacturer, with 2004 sales to its former parent, General Motors Corporation

("General Motors" or "GM"), equaling approximately $15.4 billion, and sales to each of Ford Motor

---

[1]      The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates.

Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen

Group exceeding $850 million.

7.          As part of its growth strategy, Delphi has established an expansive global

presence with a network of manufacturing sites, technical centers, sales offices, and joint ventures

located in every major region of the world.  As of the Initial Filing Date, the Debtors employed

approximately 180,000 employees worldwide.  The Debtors' 50,600 U.S. employees worked in

approximately 44 manufacturing sites, 13 technical centers, and Delphi's Troy, Michigan

headquarters.  Approximately 34,750 of the Debtors' U.S. employees were hourly employees as of

the Initial Filing Date, and 96% of these were represented by approximately 49 different

international and local unions.  Outside the United States, the Company's foreign entities employed

more than 134,000 people on the Initial Filing Date, supporting 120 manufacturing sites and 20

technical centers in nearly 40 countries around the globe.

8.          Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary

of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions

and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and

subsidiaries were transferred to Delphi and its subsidiaries and affiliates (collectively, the

"Company") in accordance with the terms of a Master Separation Agreement between Delphi and

GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-

based, captive automotive supplier to a global supplier of components, integrated systems, and

modules for a wide range of customers and applications.  Although GM is still the Company's single

largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.          Due to the significant planning that goes into each vehicle model, Delphi's

efforts to generate new business do not immediately affect its financial results, because supplier

selection in the auto industry is generally finalized several years prior to the start of production of

4

the vehicle.  When awarding new business, which is the foundation for the Company's forward

revenue base, customers are increasingly concerned with the financial stability of their supply base.

The Debtors believe that they will maximize stakeholder value and the Company's future prospects

if they stabilize their businesses and continue to diversify their customer base.  The Debtors also

believe that this must be accomplished in advance of the expiration of certain benefit guarantees

between GM and certain of Delphi's unions representing most of its U.S. hourly employees which

coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of

2007.

C.    Events Leading To Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the Company

generated approximately $2 billion in net income.  Every year thereafter, however, with the

exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a

net operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the

marketplace, Delphi's financial condition deteriorated further in the first six months of 2005, with

net operating losses of $608 million for the first six months of calendar year 2005 on six-month net

sales of $13.9 billion, approximately $1 billion less than the same time period a year earlier.[2]

11.    The Debtors believe that the Company's financial performance has

deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of

creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for

---

[2]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily
related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

5

domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward looking revenue requirements.  Because discussions with its unions and GM were not progressing sufficiently, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

13.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome restrictions under current labor agreements and realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses. This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness.  The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down during these cases.

14.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.    By this Motion, the Debtors seek entry of an order under 11 U.S.C. §§ 362,

363, and 365 authorizing the Debtors to (i) obtain significant improvement in energy costs by

modifying (a) that certain Settlement Agreement, dated August 14, 1995, by and among General

Motors Corporation ("GM"), NYPA, and NYSEG (the "Settlement Agreement"), (b) that certain

Energy Sales Agreement, dated April 22, 1991, by and between GM and Lockport Energy, as

amended (the "Energy Sales Agreement"), and (c) all amendments, supplements, exhibits,

easements, licenses, waivers, side letters, and ancillary documents related thereto (collectively, the

"Agreements"), (ii) assume the modified Energy Sales Agreement, and (iii) consent to relief from

the automatic stay for the limited purpose of allowing Lockport Energy to record easements existing

under the Energy Sales Agreement and which will continue as modified to exist under the modified

Energy Sales Agreement (the "Easements").  The relief requested herein is subject to the execution

of definitive documentation acceptable to the Debtors.

16.    The Debtors have determined that modification of the Agreements and

assumption of the modified Energy Sales Agreement will allow them to obtain significant

improvement in energy costs relating to the Debtors' Thermal & Interior Systems Facility, located at

200 Upper Mountain Road, Lockport, New York (the "Lockport Facility"). The Debtors believe that

the modification of the Agreements and assumption of the modified Energy Sales Agreement will

benefit the Debtors' estates and creditors.  The Debtors seek to modify the Agreements and assume

the modified Energy Sales Agreement with the consent of NYPA, NYSEG, and Lockport Energy.  A

copy of the Memorandum of Understanding between NYSEG, Delphi, and Lockport Energy, which

describes the principal terms of the modified Settlement Agreement, is attached hereto as Exhibit A.

The current form of the modified Energy Sales Agreement is attached hereto as Exhibit B.  A list of

the Easements is attached hereto as Exhibit C.

7

<u>Basis For Relief</u>

17.    The Lockport Facility's power needs are supplied under the Agreements. Pursuant to the Service Agreement, dated April 12, 1989, by and among NYPA, NYSEG, and GM (the "Service Agreement"), NYSEG currently acquires from NYPA and provides to Delphi Automotive Systems, LLC, as GM's successor in interest,[3] certain low-priced  hydropower, designated as expansion power ("Expansion Power"), for usage at the Lockport Facility.  A dispute arose among NYPA, NYSEG, and GM regarding the sale and use of Expansion Power under the Service Agreement and the parties entered into the Settlement Agreement to resolve their dispute. The Settlement Agreement superseded and replaced the Service Agreement and designated the manner in which the electricity needs of the Lockport Facility would be supplied, including how the Expansion Power would be allocated between the Lockport Facility and NYSEG.  Under the Energy Sales Agreement, Lockport Energy designed, constructed, and operates a cogeneration system adjacent to the Lockport Facility (the "Cogeneration System") which uses natural gas to generate and provide electricity and steam service for usage at the Lockport Facility.  The Energy Sales Agreement provides that Lockport Energy will provide all of the Lockport Facility's electricity needs other than the Expansion Power that Delphi receives from NYPA through NYSEG under the Settlement Agreement.

18.    Lockport Energy and Delphi have concluded that modification of the Agreements to reflect the termination of supply of electricity from Lockport Energy and the assumption of the modified Energy Sales Agreement will result in significant ongoing cost savings for the Debtors.  The Debtors and Lockport have determined that Lockport should be allowed to

---

[3]    As described above, prior to January 1, 1999, GM operated Delphi's businesses through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Debtors under a Master Separation Agreement between Delphi and GM.  In connection with these transactions, GM assigned to Delphi its rights and obligations under the Agreements.

8

continue using the Easements.  Under the modified Energy Sales Agreement, Lockport Energy will

continue to use the easements until December 27, 2027.  The Debtors have agreed to consent to

relief from the automatic stay for the limited purpose of allowing Lockport Energy to record the

Easements as modified under the modified Energy Sales Agreement.

19.    The Debtors' acceptance of Lockport Energy's proposal to modify the

Agreements and assume the modified Energy Sales Agreement as provided herein is conditioned

upon Delphi's ability to obtain an additional 10 mega watts of Expansion Power from NYPA.  An

application for that additional Expansion Power is pending before NYPA.  A new contract with

NYPA for the supply of additional 10 mega watts of Expansion Power would secure the availability

of low-cost power to the Lockport Facility for at least three years beyond the term of the Energy

Sales Agreement, and allow for electricity cost savings for the Debtors in the approximate amount of

$14 million during the 2006-2011 period.  In addition, the Energy Sales Agreement is scheduled to

expire on December 27, 2007, whereas the new contract with NYPA would be in force at least until

April 1, 2011.  Accordingly, the Debtors believe that entering into a new contract with NYPA for the

provision of additional 10 mega watts of Expansion Power is beneficial to the Lockport Facility.

Lockport Energy will continue to supply steam to the Lockport Facility at a reduced cost.

20.    At the time of the execution of the Energy Sales Agreement in 1991, Lockport

Energy entered into long-term contracts with third parties for the supply of natural gas for the

operation of the Cogeneration System.  The proposed modifications to the Agreements should

reduce or eliminate Lockport Energy's role as a supplier of electricity to the Lockport Facility,

thereby creating an opportunity for Lockport Energy to sell to third parties some of the gas used for

the operation of the Cogeneration System at a profit which it will share with Delphi.  The current

estimate of Delphi's share of the profit from these sales of the natural gas to third parties is

approximately $6 million (the "Price Estimate").  In addition, Lockport Energy has agreed to pay

9

NYSEG the sum of approximately $3.35 million as compensation for the losses it will incur as a result of the modification of the Settlement Agreement (the "Additional Payment"). The funds for the payments by Lockport Energy to Delphi and NYSEG will be generated by Lockport Energy's sale to third parties of the natural gas currently under contract that otherwise would be used to satisfy Delphi's electricity requirements under the Energy Sales Agreement.  Lockport Energy will sell the natural gas and will pay to Delphi the Price Estimate within 60 days of the latter of (a) the commencement of delivery to the Lockport Facility of the 10 mega watts of Expansion Power by NYPA or (b) entry of a final order of this Court approving the relief requested herein (the "Payment Date").  The Additional Payment will be made within two business days after all of the following occur: (i) entry of a final order approving this Motion, and (ii) commencement of delivery to the Lockport Facility of the 10 mega watts of Expansion Power by NYPA, and (iii) execution of the amended Agreements between the Lockport Energy and Delphi.  Authorizing the Debtors to consummate this transaction on the negotiated terms described herein will allow the Debtors to obtain valuable, low-cost electricity and steam power.  The negotiated terms are favorable to the Debtors and are in the best interests of their estates.

21.    The Debtors estimate that the amount necessary to cure the defaults existing under the Energy Sales Agreement is approximately $521,975.61 (the "Cure Amount"), which is the total amount due for actual steam supplied by Lockport Energy to the Lockport Facility prior to October 8, 2005.  The savings from entering into a new contract with NYPA for the provision of additional 10 mega watts of Expansion Power will exceed the payment of the Cure Amount within 10 months.  The Debtors and Lockport Energy have agreed that the Cure Amount will be offset against the Price Estimate on the Payment Date.  The Debtors believe that even taking into account offset of the Cure Amount, the assumption of the modified Energy Sales Agreement is beneficial to their estates and constitutes substantial savings on energy costs.

22.    The Debtors have determined in the exercise of their business judgment that modifying the Agreements to permit Lockport Energy to sell gas for the Debtors' benefit and to permit the Debtors to obtain valuable, low-priced electricity from NYPA for the duration of the new contracts with NYPA will substantially benefit the Lockport Facility by lowering its energy costs. The modification of the Agreements, the assumption of the modified Energy Sales Agreement, and the lifting of the automatic stay to allow Lockport to record the Easements is favorable to the Debtors and is in the best interests of their estates.

<u>Applicable Authority</u>

23.    Section 363(b)(1) provides that the "trustee, after notice and hearing, may use, sell, or lease, other than in the ordinary course of business, property, of the estate."  11 U.S.C. § 363(b)(1).  A debtor's decision to enter into a transaction outside of the ordinary course of business is governed by the business judgment standard.  3 Collier, <u>Bankruptcy</u> ¶ 363.01[1][g] (15th rev. ed. 2005); <u>see</u>, <u>e.g.</u>, <u>In re Global Crossing Ltd.</u>, 295 B.R. 726 (Bankr. S.D.N.Y. 2003) (bankruptcy court would approve, as exercise of reasonable business judgment, decision by chapter 11 debtors to enter into amended agreement for sale of assets); <u>Comm. of Equity Sec. Holders v. Lionel Corp.</u> (In re Lionel Corp.), 722 F.2d 1063, 1070 (2d Cir. 1983) (transactions pursuant to section 363(b) should be approved when they are supported by management's sound business judgment.); <u>In re Delaware & Hudson Ry. Co.</u>, 124 B.R. 169, 176 (D. Del. 1991) (same); <u>In re Phoenix Steel Corp.</u>, 82 B.R. 334, 336-36 (Bankr. D. Del. 1987) (same); <u>Orion Pictures Corp. v. Showtime Networks, Inc.</u> (In re Orion Pictures Corp.), 4 F.3d 1095, 1098-99 (2d Cir. 1993); <u>Committee of Asbestos-Related Litigants v. Johns-Manville Corp.</u> (In re Johns Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), court will generally not entertain objections to debtor's conduct.").

11

24.    Once the debtor articulates a valid business justification, '[t]he business judgment rule 'is a presumption that in making a business decision the directors of a corporation acted on an informed basis, in good faith, and in the honest belief that the action was in the best interests of the company.'" In re Integrated Resources, Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992); In re Johns-Manville Corp., 60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986) ("[T]he Code favors the continued operation of a business by a debtor and a presumption of reasonableness attaches to a Debtor's management decisions.").   In deciding whether a proper business judgment exists, a judge must find from the evidence presented a good business reason to grant a motion under section 363(b) of the Bankruptcy Code. In re Chateaugay Corp., 973 F.2d 141 (2d Cir.1992); In re Lionel Corp., 722 F.2d at 1071; In re Enron Corp., 2003 WL 1562202 (Bankr. S.D.N.Y. 2003).

25.    Here, the Debtors have satisfied the "business judgment" standard in connection with their decision to modify the Agreements with the consent of NYSEG, Lockport Energy, and NYPA because terminating the supply of electricity from Lockport Energy and entering into a new contract with NYPA for the supply of additional 10 mega watts of Expansion Power will result in substantial savings for the Debtors.

26.    Section 365(a) of the Bankruptcy Code provides that a debtor-in-possession, "subject to the Court's approval, may . . . assume any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

27.    The standard to be applied by a court in determining whether an executory contract or unexpired lease should be assumed is the "business judgment" test, which is premised upon the debtor's business judgment that assumption would be beneficial to its estate.  See Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098-99 (2d Cir. 1993);  see also In re Child World, Inc., 142 B.R. 87, 89 (Bankr. S.D.N.Y. 1992) (debtor may assume or reject unexpired lease under § 365(a) in exercise of its "business judgment"); In re Roman

12

Crest Fruit, Inc., 35 B.R. 939, 949 (S.D.N.Y. 1983); Control Data Corp. v. Zelman, 602 F.2d 38, 42

(2d Cir.1979); see also In re Crystalin, L.L.C., 293 B.R. 455, 463 (B.A.P. 8th Cir. 2003) (citing In re

Food Barn Stores, Inc., 107 F.3d 558, 566 (B.A.P. 8th Cir. 1997) (assumption of prepetition

agreement approved under business judgment standard).  This standard is satisfied when a debtor

determines that assumption will benefit the estate.  Id.  See also In re Farmland Indus., Inc., 294 B.R.

903, 913 (Bankr. W.D. Mo. 2003) (finding that debtor must show merely that "the action to be taken

will benefit the estate").

       28.    If the debtor's business judgment has been exercised reasonably, a court

should approve the assumption of an executory contact.  See, e.g., NLRB v. Bildisco and Bildisco,

465 U.S. 513, 523 (1984); Group of Inst'l Investors v. Chicago, Milwaukee, St. Paul & Pacific R.R.

Co., 318 U.S. 523 (1943); Cleveland Hotel Protective Comm. v. Nat'l City Bank of Cleveland (In re

Van Sweringen Corp, 155 F.2d 1009, 1013 (6th Cir.), cert. denied, 329 U.S. 766 (1946); In re

Ionosphere Clubs, Inc., 100 B.R. 670, 673 (Bankr. S.D.N.Y 1989); see also In re Orion Pictures

Corp. 4 F.3d at 1098-99; In re RCN Corp., Case No. 04-13638 (RDD) (Bankr. S.D.N.Y. 2004).

Once the debtor has satisfied the business judgment standard by showing that assumption will

benefit the estate, the court "should not interfere 'except upon a finding of bad faith or gross abuse of

[the debtor's] business discretion.'"  Id. at 465 (citing Lubrizol Enters., Inc. v. Richmond Metal

Finishers Inc., 756 F.2d 1043, 1047 (4th Cir. 1985)).

       29.    The business judgment rule shields a debtor's management from judicial

second-guessing.  In re Farmland Indus., Inc., 294 B.R. at 913 (quoting In re Johns-Manville Corp.,

60 B.R. 612, 615-16 (Bankr. S.D.N.Y. 1986)) ("'[T]he Code favors the continued operation of a

business by a debtor and a presumption of reasonableness attaches to a debtor's management

decisions.'").  Once the Debtors articulate a valid business justification, "[t]he business judgment

rule 'is a presumption that in making a business decision the directors of a corporation acted on an

informed basis, in good faith and in the honest belief that the action was in the best interests of the

company.'" In re Integrated Res., Inc., 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van

Gorkom, 488 A.2d 858, 872 (Del. 1985)).

30.    Indeed, when applying the "business judgment" rule, courts show great

deference to the debtor's decision-making.  See In re Crystalin, L.L.C., 293 B.R. at 464 (finding that

the court need not "place itself in the position of the trustee or debtor-in-possession") (omitting

citations).  See also Summit Land Co. v. Allen (In re Summit Land Co.), 13 B.R. 310, 315 (Bankr.

D. Utah 1981) ("Court approval under Section 365(a), if required, except in extraordinary situations,

should be granted as a matter of course.")

31.    Upon finding that the Debtors have exercised their sound business judgment

in determining that assumption of the modified Energy Sales Agreement on the negotiated terms

described above is in the best interests of their estates, this Court should approve assumption under

section 365(a) of the Bankruptcy Code.  In re Gucci, 193 B.R. 411, 415-17 (S.D.N.Y. 1996)

(affirming bankruptcy court's approval of assumption of executory contract upon determining that

assumption "was in the best interest of the estate"); Blue Cross Blue Shield of Conn. v. Gurski (In re

Gurski), Nos. 94-51202 & 3:95CV1883, 1996 WL 684397, at *2 (D. Conn. Jan. 25, 1996)

(affirming bankruptcy court's determination that executory contracts were beneficial to debtor such

that debtor could assume them under section 365(a)).

32.    Bankruptcy Code section 365(b)(1), in turn, codifies the requirements for

assuming an unexpired lease or executory contract of a debtor.  That subsection provides:

(b)(1)  If there has been a default in an executory contract or unexpired lease
        of the debtor, the trustee may not assume such contract or lease
        unless, at the time of assumption of such contract or lease, the trustee-

        (A)    cures, or provides adequate assurance that the trustee will
               promptly cure, such default;

14

(B)      compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C)      provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

33.      The Debtors submit that the statutory requirements of section 365(b)(1) of the Bankruptcy Code have been satisfied because there are no monetary defaults existing under the Agreements to be assumed other than payment of the Cure Amount. Such payment will be made based upon the conditions set forth above and in accordance with Bankruptcy Code section 365(b).

34.      In determining to assume the modified Energy Sales Agreement, the Debtors clearly have satisfied the requisite "business judgment" standard. Assumption of the modified Energy Sales Agreement will allow the Debtors to take advantage of the low steam prices available to them through the Energy Sales Agreement, which are important to the continued operation of the Lockport Facility and success of the Debtors' businesses and reorganization efforts.

35.      Accordingly, because the Debtors have determined in the exercise of their business judgment that the modifications of the Agreements and assumption of the modified Energy Sales Agreement, conditioned upon Delphi's ability to obtain an additional 10 mega watts of Expansion Power from NYPA, will allow them to obtain substantial savings in energy costs, the Debtors seek authority to modify the Agreements and assume the modified Energy Sales Agreement. The Debtors submit that this Court should approve the Motion and determine that such modification and assumption is in the best interests of the Debtors' estates, their creditors, and other parties-in-interest.

36.    Section 362(d)(1) of the Bankruptcy Code gives this Court the discretion to modify the automatic stay "for cause."  11 U.S.C. § 362(d)(1).   Section 362(d) of the Bankruptcy Code provides in pertinent part:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1)  for cause, including the lack of adequate protection of an interest in property of such party in interest. . .

11 U.S.C. § 362(d)(1).

37.    The Debtors submit that, under the unique circumstances here presented, "cause" exists to grant relief from the automatic stay pursuant to section 362(d)(1) to allow Lockport Energy to record the Easements.  Because the term "cause" is not defined in the Bankruptcy Code, the courts must determine whether this standard has been satisfied.  See In re M.J. & K Co., Inc., 161 B.R. 586, 590-91 (Bankr. S.D.N.Y. 1993) (cause is viewed as intentionally broad and flexible concept which must be determined on case-by-case basis).   "Thus, the 'facts of each request will determine whether relief is appropriate under the circumstances.'"  In re Mazzeo, 167 F.3d 139, 142-143 (2d Cir. 1999) (citations omitted) (citing In re Sonnax Indus., Inc., 907 F.2d 1280, 1285-86 (2d Cir. 1990) (articulating twelve factors which may be considered by court in deciding whether to lift stay for "cause")).[4]

---

[4]    The Sonnax factors include: (1)  whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

Mazzeo, 167 F.3d at 143 (citing In re Sonnax Industries, Inc., 907 F.2d 1280, 1285-86 (2d Cir. 1990)).

38.    The Mazzeo Court noted that all of the factors will not necessarily "be relevant in every case."  167 F.3d at 143; see also In re Bogdanovich, 292 F.3d 104, 110 (2d Cir. 2002).  The legislative history of section 362 is in accord with this interpretation in recognizing that "cause" may be established by a single factor."  See H.R. Rep. No. 95-595, 95th Cong., 1st Sess., 343-344 (1977).  Further, this Court has held that in applying the Sonnax factors, courts "need not assign equal weight to each factor.  In re New York Medical Group, P.C., 265 B.R. 408, 413 (Bankr. S.D.N.Y. 2001) (citing In re Keene Corp., 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994)).

39.    The Debtors believe that cause exists under the circumstances to lift the automatic stay to allow Lockport Energy to record the Easements.  The Debtors have undertaken a careful analysis of the Sonnax factors in reaching this conclusion.  Under the circumstances of the this case the Debtors have determined that (a) the modifications of the Agreements and the recording of the Easements will not interfere with the Debtors' reorganization efforts, (b) the estates are not being exposed to any risk, (c) necessary estate resources and manpower will not be distracted from more important estate needs, and (d) the modification of the Agreements and the recording of the Easements will result in an economic benefit to the Debtors' estates and their creditors.  Accordingly, the Debtors believe that lifting of the automatic stay is appropriate for the limited purpose of allowing Lockport Energy to record the modified easements.

Notice

40.    Notice of this Motion has been provided in accordance with the Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance With Local Bankr. R. 1007-2(e) entered by this Court on October 14, 2005 (Docket No. 245).  Notice has also been provided to the

17

counterparties to all of the Agreements.  In light of the nature of the relief requested, the Debtors

submit that no other or further notice is necessary.

Memorandum Of Law

41.    Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and filing of

a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) authorizing the Debtors to modify the Agreements, (b) authorizing the Debtors to assume the modified Energy Sales Agreement, (c) consenting to relief from the automatic stay for the limited purpose of allowing Lockport Energy to record the Easements, and (d) granting the Debtors such other and further relief as is just.

Dated: New York, New York
      February 17, 2006

                                  SKADDEN, ARPS, SLATE, MEAGHER
                                      & FLOM LLP


                              By:/s/ John Wm. Butler, Jr._____
                                   John Wm. Butler, Jr. (JB 4711)
                                   John K. Lyons (JL 4951)
                                   Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois  60606
                              (312) 407-0700

                              - and -


                              By: /s/ Kayalyn A. Marafioti_____
                                   Kayalyn A. Marafioti (KM 9632)
                                   Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

                              Attorneys for Delphi Corporation, et al.,
                                   Debtors and Debtors-in-Possession

Exhibit A
Memorandum Of Understanding



**RGS** ENERGY GROUP, INC.

**NYSEG**  **RG&E**

James P. Laurito
President & CEO, RGS Energy Group

February 17, 2006

Mark Rathke
Facilities Service Group
Manager, Plant Engineering, Design
& Utility Operation
Delphi Corporation
Harrison Thermal Systems
World Headquarters
200 Upper Mountain Road
Lockport, NY 14094

Thomas J. Gesicki
Senior Vice President
Foristar
5087 Junction Road,
Lockport NY 14094

Re: <u>Memorandum of Understanding Relating to Additional Expansion Power</u>

Dear: Mr. Rathke and Mr. Gesicki

New York State Electric & Gas Corporation ("NYSEG") and the Delphi Corporation ("Delphi") have been engaged in good-faith discussions as to whether certain contractual arrangements may be modified or terminated so as to allow Delphi to receive an additional allocation of 10 MW of New York Power Authority ("NYPA") Expansion Power for consumption at its Lockport, N.Y. facility. A basic requirement that NYSEG has expressed in such discussions is that NYSEG, and its other customers, be held economically neutral (as defined by the enumerated parameters below) in any arrangement that permits Delphi to receive such an additional Expansion Power allocation. For purposes of establishing the consideration that will be exchanged as the parties commence preparing, executing and performing the definitive agreements to accommodate such an additional allocation, NYSEG, Delphi and Lockport Energy Associates, L.P. ("LEA") agree to the following:

An equal opportunity employer

89 East Avenue | Rochester, NY 14649-0001
tel (585) 724-8077 | fax (585) 724-8285
NYSEG/RG&E | Subsidiaries of RGS Energy Group, Inc.

Energy East Companies

1. NYSEG shall receive a payment of $3.35 million from LEA on that date which is two (2) business days after all of the following occur: (i) the bankruptcy court approves Delphi's motion to enter into definitive agreements necessary to achieve the incremental allocation and to restructure the Energy Sales Agreement between Delphi and LEA and such approval becomes final and non-appealable, and (ii) the NYPA schedules with the NYISO the additional Expansion Power for delivery to Delphi, and (iii) such definitive agreements between LEA and Delphi are executed. If payment is not made by March 29, 2006, this agreement shall terminate and any arrangements that may have been made so as to allow Delphi to receive an additional allocation of 10 MW of NYPA Expansion Power for consumption at its Lockport, N.Y. facility, including Amendment No. 6 to the Power Purchase Agreement between NYSEG and LEA, shall be terminated.

2. If, on April 1, 2006, the additional expansion power does not actually commence flowing, NYSEG shall repay LEALP the $3.35 million within two business days of April 1, 2006, with 10% interest per annum, payable from the date NYSEG receives payment. If, on April 1, 2006, the additional expansion power does not actually flow, this agreement and any arrangements that may have been made so as to allow Delphi to receive an additional allocation of 10 MW of NYPA Expansion Power for consumption at its Lockport, N.Y. facility, including Amendment No. 6 to the Power Purchase Agreement between NYSEG and LEA, shall be terminated.

3. Delphi agrees to take delivery service for such an additional allocation of Expansion Power under NYSEG's S.C. 7-4 Transmission – ERO tariff and the NYISO OATT, which incorporates the S.C. 7-4 Transmission – ERO tariff, and further agrees to pay for, or reimburse NYSEG for, all charges applied under those tariffs, provided, however that Delphi hereby reserves its right to petition the Public Service Commission for an exemption from non-bypassable wires, system benefits and renewable performance standard charges that otherwise apply under said tariffs to the delivery of said Expansion Power allocation to Delphi, and NYSEG hereby agrees not to oppose such petition. With respect to an exemption from non-bypassable wires charges, the petition shall be specific to Delphi's unique circumstances. In addition, NYSEG and Delphi will work together, and the parties will take any necessary actions, which actions may include regulatory filings with the Public Service Commission ("PSC") requesting PSC approval to utilize a flex rate contract or economic development funds to reduce Delphi's cost of doing business in New York State to retain jobs.

4. LEA agrees that the restructuring of the Energy Sales Agreement between Delphi and LEA shall not require NYSEG to purchase additional capacity or energy under the existing power purchase agreement between NYSEG and LEA except to the extent the parties shall otherwise agree in writing.

2

The terms set forth above shall be binding on the parties only for the purpose of establishing the consideration that will be exchanged and embodied in any definitive agreements NYSEG, Delphi and LEA intend to execute to permit Delphi to receive the additional allocation of Expansion Power.

NYSEG, Delphi and LEA agree to use reasonable commercial efforts to prepare, execute and perform definitive agreements that will permit Delphi to obtain such an additional allocation of Expansion Power pursuant to the terms described herein.  Please indicate by your signature below on behalf of Delphi and LEA that Delphi and LEA agree with NYSEG to the terms set forth herein.  The parties agree that this letter agreement may be executed in counterparts.

Very truly yours,

James P. Laurito
President and Chief Executive
Officer

AGREED TO AND ACCEPTED:

Delphi Corporation

By:
Name: D. Marshall Andrews
Title: Business Line Executive

AGREED TO AND ACCEPTED:

Lockport Energy Associates, L.P.

By:_____
Name:
Title:

3

The terms set forth above shall be binding on the parties only for the purpose of establishing the consideration that will be exchanged and embodied in any definitive agreements NYSEG, Delphi and LEA intend to execute to permit Delphi to receive the additional allocation of Expansion Power.

NYSEG, Delphi and LEA agree to use reasonable commercial efforts to prepare, execute and perform definitive agreements that will permit Delphi to obtain such an additional allocation of Expansion Power pursuant to the terms described herein. Please indicate by your signature below on behalf of Delphi and LEA that Delphi and LEA agree with NYSEG to the terms set forth herein. The parties agree that this letter agreement may be executed in counterparts.

Very truly yours,

James P. Laurito
President and Chief Executive
Officer

AGREED TO AND ACCEPTED:

Delphi Corporation

By: _____
      Name:
      Title:

AGREED TO AND ACCEPTED:

Lockport Energy Associates, L.P.

By: _____
Name: *Thomas J. Gосicki*
Title: *Senior Vice President*

3

Exhibit B
Modified Energy Sales Agreement

CONFIDENTIAL DRAFT

## TABLE OF CONTENTS

**Page**

ARTICLE I

Definitions ......................................... 9


ARTICLE II

Representation and Warranties ........................ 16


ARTICLE III


ARTICLE IV

Operation and Maintenance of the System .............. 21


ARTICLE V

Interconnection Facilities and Access ................ 22


ARTICLE VI

Coordination Committee ............................... 23


ARTICLE VII

Alterations to the System ............................ 24


ARTICLE VIII

CONFIDENTIAL DRAFT

Permits and Licenses ................................. 24


ARTICLE IX

Metering Devices, Inspections and Adjustments ....... 25


ARTICLE X


ARTICLE XI

Sale of Steam ....................................... 28


ARTICLE XII

Insurance ........................................... 36


ARTICLE XIII

Term ................................................ 38


ARTICLE XIV


ARTICLE XV


ARTICLE XVI

Billing and Payment ................................. 39


ARTICLE XVII

Other Agreements .................................... 42

CONFIDENTIAL DRAFT

**ARTICLE XIV**

Unconditional, First Option to Purchase . . . . . . . . . . . . . 42

**ARTICLE XIX**

**ARTICLE XX**

Sale or Transfer of any Ownership Interest . . . . . . . . . . 45

**ARTICLE XXI**

Force Majeure . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 48

**ARTICLE XXII**

Indemnification . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 49

**ARTICLE XXIII**

Events Constituting Breach . . . . . . . . . . . . . . . . . . . . . . . . 51

**ARTICLE XXIV**

Remedies Upon Breach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 53

**ARTICLE XXV**

Excluded Damages . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 56

**ARTICLE XXVI**

Environmental Matters . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

CONFIDENTIAL DRAFT

**ARTICLE XXVII**

Notices .......................................................... 63

**ARTICLE XXVIII**

**ARTICLE XXIX**

Non-Waiver ....................................................... 64

**ARTICLE XXX**

Assignment ....................................................... 65

**ARTICLE XXXI**

Article Headings ................................................. 65

**ARTICLE XXXII**

Governing Law/Forum .............................................. 66

**ARTICLE XXXII**

Entire Agreement ................................................. 66

**ARTICLE  XXXIV**

Arbitration ...................................................... 67

**ARTICLE XXXV**

Counterparts ..................................................... 67

- iv -

CONFIDENTIAL DRAFT

**ARTICLE XXXV**

    **Complementary Agreements** ............................. 67


**ARTICLE XXXVI**

    **Approval** .......................................... 68

ARTICLE XXIV

Remedies Upon Breach ....................................... 59

ARTICLE XXV

Excluded Damages ........................................... 61

ARTICLE XXVI

Environmental Matters ...................................... 62

ARTICLE XXVII

Notices .................................................... 67

ARTICLE XXVIII
Reserved ................................................... 68


ARTICLE XXIX

Non-Waiver ................................................. 74

ARTICLE XXX

Assignment ................................................. 74

ARTICLE XXXI

Article Headings ........................................... 75

ARTICLE XXXII

Governing Law/Forum ........................................ 75

ARTICLE XXXIII

CONFIDENTIAL DRAFT

Entire Agreement ............................................... 75

ARTICLE XXXIV

Arbitration .................................................... 76

ARTICLE XXXV

Counterparts ................................................... 76

ARTICLE XXXVI

Complementary Agreements ....................................... 76

## AMENDED AND RESTATED ENERGY SALES AGREEMENT

THIS AMENDED AND RESTATED ENERGY SALES AGREEMENT (the "Amended and Restated Energy Sales Agreement") made this \_\_\_ day of _____, as amended and in effect from time to time, between Lockport Energy Associates, L.P. ("LEALP"), a Delaware limited partnership, having its principal place of business at 5087 Junction Road, Lockport, New York 12094, and Delphi Automotive Systems, LLC, a Delaware limited liability company, on behalf of its Thermal and Interior Division ("Delphi") facility located at 200 Upper Mountain Road, Lockport, New York, for the operation and maintenance of a cogeneration facility (the "System", which is more particularly described in Exhibits "B", "C" and "C-1" attached hereto) on property owned by LEALP in Lockport, New York, ("Project Site", which is more particularly described in Exhibit "A", attached hereto) and for the sale of steam from the System to Delphi.

## WITNESSETH:

- vi -

CONFIDENTIAL DRAFT

WHEREAS, on April 22, 1991, LEALP and General Motors Corporation, on behalf of its Harrison Division ("GM"), entered into an Energy Sales Agreement (the "Original Energy Sales Agreement") pursuant to which GM agreed to purchase designated amounts of electricity and steam from the System;

WHEREAS, on February 22, 1993, LEALP AND GM executed Amendment No. 1 to the Energy Sales Agreement (as so amended, the "Energy Sales Agreement");

WHEREAS, on January 1, 1999, GM assigned its rights and obligations under the Energy Sales Agreement to Delphi and Delphi agreed to assume such rights and obligations;

WHEREAS, as of the Effective Date, LEALP and Delphi desire to terminate LEALP's electricity sales to Delphi and restructure the terms and provisions pursuant to which LEALP supplies steam to Delphi;

WHEREAS, as of the Effective Date, LEALP wishes to generate and provide steam service for Delphi's facilities at 200 Upper Mountain Road, Lockport, New York in accordance with the terms and conditions set forth in this Amended and Restated Energy Sales Agreement and to continue to generate electricity for sale to others;

WHEREAS, as of the Effective Date, LEALP desires to sell the steam produced by the System and Delphi desires to purchase the steam for use at the Project Site;

- 7 -

CONFIDENTIAL DRAFT

WHEREAS, on October 8, 2005, Delphi filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code before the United States Bankruptcy Court, Southern District of New York (the "Bankruptcy Case");

WHEREAS, LEALP and Delphi desire to effectuate a written amendment and restatement of the Energy Sales Agreement, in accordance with Section 33.01 thereof;

WHEREAS, this Amended and Restated Energy Sales Agreement is intended to replace the Energy Sales Agreement and the Exhibits thereto in their entirety, except as provided herein ("Surviving Exhibits");

WHEREAS, the Surviving Exhibits and the New Exhibits, as defined herein, shall be incorporated and included in this Amended and Restated Energy Sales Agreement as if fully set forth in full herein;

WHEREAS, LEALP and Delphi, by this Amended and Restated Energy Sales Agreement, desire to establish the terms, conditions and obligations pursuant to which they can accomplish the above desires and needs;

NOW, THEREFORE, in consideration of the premises and the agreements contained in this Amended and Restated Energy Sales Agreement, and for good and valuable consideration as identified in the Termination Agreement attached hereto as Exhibit AA, the receipt and sufficiency of which is mutually acknowledged, LEALP and Delphi agree that the Surviving Exhibits and the New  Exhibits

- 8 -

CONFIDENTIAL DRAFT

are incorporated herein as if set forth in full and further agree as follows.

## ARTICLE I - <u>Definitions</u>

As used herein, the following terms shall have the meaning indicated below:

"Additional QF Steam" shall mean steam in excess of 500,000,000 pounds per calendar year which LEALP requires Delphi to take at no charge.

"<u>Agreements and Amendments</u>" shall mean (i) this Amended and Restated Energy Sales Agreement; (ii) the Termination Agreement, dated ____, 2006; (iii) Amendment No. 2 to the Main Transmission Line Easement, dated _____, 2006; (iv) Amendment No. 2 to the Overhead Piping and Wiring Licensing Agreement, dated _____, 2006; (v) Amendment No. 2 to the Oil Storage Tank Licensing Agreement, dated _____, 2006; (vi) Amendment No. 1 to the Natural Gas Pipeline Easement, dated _____, 2006; (vii) Amendment No. 1 to the Ingress and Egress Easement, dated _____, 2006; (viii) Amendment No. 1 to the Fuel Truck Ingress and Egress Licensing Agreement, dated _____, 2006; (ix) Amendment No. 1 to the Rail Car Ingress and Egress Licensing Agreement, dated _____, 2006; (x) and the Storm Water Drainage Culverts Easement, dated _____, 2006.

- 9 -

CONFIDENTIAL DRAFT

"Backup Boiler Agreement" shall mean the agreement between LEALP and GM dated January 11, 1996, which addresses GM's maintenance and operation of its existing steam boilers at LEALP's cost and on its behalf as a potential source of back-up steam, which is attached to the Energy Sales Agreement as Exhibit "S".

"Bankruptcy Court" shall mean the United States Bankruptcy Court, Southern District of New York.

"Bankruptcy Order" shall mean an order of the Bankruptcy Court in a form reasonably satisfactory to LEALP authorizing and approving the Agreements and Amendments.

"Credit Agreement" shall mean the credit agreement or other financing agreement(s) for the financing of construction and long-term operation of the System (which financing agreement(s) may include, but is not limited to, bond financing and/or lease financing) between LEALP and the Lender and the other financial parties, as amended and in effect from time to time.

"Easements" shall mean the agreements attached to the Energy Sales Agreement as Exhibits "G", "H" and "I" and the Storm Water Drainage Culverts Easement, attached hereto as Exhibit "BB", as amended and in effect from time to time.

"Effective Date" shall mean the day upon whichthe latter of i. an additional 10 MW block of Expansion Power from the New York Power Authority is approved by the Authority and scheduled for delivery to Delphi's Lockport plant and delivery of that power actually commences and ii. the Agreements and

- 10 -

CONFIDENTIAL DRAFT

Amendments are approved by the Bankruptcy Court in a form reasonably satisfactory to LEALP and the Bankruptcy Order becomes final and non-appealable

"Fair Market Value" for the System and the Project Site shall mean the fair market value of the System and the Project Site that would be obtained in an arms'-length transaction between an informed and willing buyer and an informed and willing seller, under no compulsion, respectively, to buy or sell. The Fair Market Value determination shall take into account among other things (1) that the System and the Project Site are subject to a right of first refusal; (2) the value of the following five contracts : (a) the Turnkey Construction Contract dated October 9, 1990 between Chas. T. Main of New York, Inc. and LEALP; (b) the Operating and Maintenance Agreement or a successor agreement; (c) the Power Purchase Agreement and the related wheeling agreement(s), or successor agreements; (d) this Agreement; and (e) the gas supply and gas transportation agreements for the System; (3) any environmental degradation to the Project Site that is the responsibility of LEALP and (4) the extent to which the System is pledged as collateral for debt. The fair market value will be agreed upon by LEALP and Delphi or, in the absence of such agreement, determined by an Independent Appraisal. The Independent Appraisal shall take into account, among other things, items (1) - (4) enumerated in this paragraph

"Fuel Truck Ingress and Egress Licensing Agreement"

- 11 -

CONFIDENTIAL DRAFT

shall mean the agreement attached as Exhibit "X" to the Energy Sales Agreement, as amended and in effect from time to time.

"Hazardous Matter" shall mean hazardous wastes, hazardous substances, or toxic substances as those terms are defined under RCRA, 42 U.S.C. 6901 et seq., CERCLA, 42 U.S.C. 9601 et seq., and TSCA, 15 U.S.C. 2601 et seq.

"Delphi Certificate" shall mean the certificate of Delphi in the form of Exhibit "CC" hereto.

"Independent Appraisal" shall mean an appraisal performed in accordance with the following requirements: LEALP and Delphi each shall select a qualified Member of Appraisal Institute in good standing with the American Institute of Real Estate Appraisers ("AIREA") with experience in the valuation of electric generation facilities to perform an appraisal based on the parties' definition of Fair Market Value, as set forth herein, at their own cost. If the higher of the two appraisals is less than 10% above the lower appraisal, the two appraisals shall be averaged and such average shall constitute the Fair Market Value. If the higher of the two appraisals is 10% or more above the lower appraisal, the two appraisers shall nominate a third similarly qualified member of AIREA, provided that, if either party fails to appoint an appraiser within 15 days after a written request to do so by the other party, or if the two appraisers fail to agree upon a third appraiser, then either party may apply to the American Arbitration Association to make such appointment. Once appointed, the third appraiser shall perform an independent

- 12 -

CONFIDENTIAL DRAFT

appraisal, based on the definition of Fair Market Value set forth herein, which appraisal shall be averaged with the two prior appraisals to constitute the Fair Market Value. Unless the parties agree otherwise, any third independent appraisal shall be made within 60 days of such appointment and the expenses attendant thereto shall be shared equally by LEALP and Delphi.

"Ingress and Egress Easement" shall mean the agreement attached as Exhibit "I" to the Energy Sales Agreement, as amended and in effect from time to time.

"Lender" shall mean any entity or entities providing debt, equity, lease and/or bond financing for the long term operation of the System, and their successors and assigns.

"LEALP Certificate" shall mean the certificate of LEALP in the form of Exhibit "DD" hereto.

"License To Operate and Maintain Certain Harrison Equipment" shall mean the agreement attached as Exhibit "T" to the Energy Sales Agreement, as amended and in effect from time to time.

"Licensing Agreements" shall mean the agreements attached as Exhibits "E", "F", "J" and "T", "X" and "Y" to the Energy Sales Agreement, as amended and in effect from time to time.

"Main Transmission Line Easement" shall mean the agreement attached as Exhibit "G" to the Energy Sales Agreement, as amended and in effect from time to time.

"Natural Gas Pipeline Easement" shall mean the agreement

- 13 -

CONFIDENTIAL DRAFT

attached as Exhibit "H" to the Energy Sales Agreement, as amended and in effect from time to time.

"Net Steam Energy Supplied" shall mean Steam energy delivered less energy in condensate returned, as determined pursuant to Section 11.09.

"New Exhibits" shall mean the following exhibits to this Amended and Restated Energy Sales Agreement, as amended from time to time:  Exhibits "AA" [Termination Agreement], "BB" Storm Water Drainage Culverts Easement], "CC" [Delphi Certificate], "DD" [LEALP Certificate].

"NYSEG" shall mean New York State Electric and Gas Corporation.

"Oil Tank Storage Licensing Agreement" shall mean the agreement attached as Exhibit "F" to the Energy Sales Agreement, as amended and in effect from time to time.

"Operating and Maintenance Agreement" shall mean the agreement effective as of October 9, 1990 and amended and restated as of April 25, 1991 between LEALP and North American Energy Services Company attached as Exhibit "M" to the Energy Sales Agreement, as amended and in effect from time to time.

"Overhead Piping and Wiring Licensing Agreement" shall mean the agreement attached as Exhibit "E" to the Energy Sales Agreement, as amended and in effect from time to time.

"Plans and Specifications" shall mean Exhibit "B" to the Energy Sales Agreement as modified by Exhibit "C" and Exhibit "C-

- 14 -

CONFIDENTIAL DRAFT

1" to the Energy Sales Agreement provided, however, that where the Plans and Specifications are modified by specific provisions of this Amended and Restated Energy Sales Agreement, the provisions of this Amended and Restated Energy Sales Agreement shall control. The sizes and quantities contained within subsections titled "Descriptions of Buildings" and "Definition of Interconnection" set forth in Exhibit "C" shall not be construed to be maximum standards.

"Power Purchase Agreement" shall mean the Power Purchase Agreement (including any mortgage and/or collateral documents delivered in connection therewith) between Empire Energy Niagara Limited Partnership ("Empire") and NYSEG dated March 26, 1990 which agreement was assigned by Empire to LEALP on February 25, 1991, as amended and in effect from time to time.

"Project Site Agreement of Sale" shall mean the agreement dated April 22, 1991 between the parties whereby the Project Site was conveyed by GM to LEALP, attached as Exhibit "D" to the Energy Sales Agreement.

"Rail Car Ingress and Egress Licensing Agreement" shall mean the agreement attached as Exhibit "Y" to the Energy Sales Agreement, as amended and in effect from time to time.

"Security Documents" shall mean the mortgage and security agreement and other collateral documents from LEALP to the Lender to secure the loan under the Credit Agreement, as such

- 15 -

CONFIDENTIAL DRAFT

mortgage and security agreement and collateral documents may be in effect from time to time.

"Steam Minimum" shall mean 500,000,000 pounds of steam per calendar year.

"Storm Water Drainage Culverts Easement" shall mean the agreement attached as Exhibit "BB" hereto , as amended and in effect from time to time.

"Surviving Exhibits" shall mean the following exhibits to the Energy Sales Agreement, as amended from time to time: Exhibits "A", "B", "C", "C-1", "D", "E", "F", "G", "H", "I", "J", "M", "P", "R", "S", "T", "U", "V", "W", "X", and "Y".

## ARTICLE II - Representation and Warranties

2.01    LEALP makes the following representations, covenants and warranties which shall survive the execution and delivery of this Amended and Restated Energy Sales Agreement:

(a)    LEALP is a limited partnership duly organized and existing in good standing under the laws of the State of Delaware, and LEALP has the power to own its property and to carry on its business as it is now being conducted. Throughout the term of this Amended and Restated Energy Sales Agreement, LEALP will provide Delphi with certified copies of all documents that could affect LEALP's ability to perform its obligations hereunder, including documents pertaining to its organization, membership, governance and operation.

- 16 -

CONFIDENTIAL DRAFT

(b)    There is no action, suit, investigation or proceeding pending or, to the knowledge of LEALP, threatened against LEALP, its general partner, or any of their respective properties, which might result in a material adverse change in the business, operations, results of operations, prospects or condition (financial or otherwise) of LEALP or its general partner, or which could be reasonably expected to materially adversely affect the System or the transactions contemplated by this Amended and Restated Energy Sales Agreement.

(c)    LEALP has all requisite partnership power and authority to execute, deliver and perform its obligations under this Amended and Restated Energy Sales Agreement, and the execution, delivery and performance by it of this Amended and Restated Energy Sales Agreement have been duly authorized by all necessary actions on its part, and this Amended and Restated Energy Sales Agreement has been duly executed and delivered by LEALP.

(d)    LEALP is not a party to any contract or agreement or subject to any partnership restriction which materially and adversely affects its business, operations, property or assets, prospects or condition (financial or otherwise).  The execution, delivery and performance of this Amended and Restated Energy Sales Agreement will not result in the violation of or be in conflict with or constitute a default under its partnership agreement or any term or provision of any mortgage, lease, license, agreement

- 17 -

CONFIDENTIAL DRAFT

or other instrument, or any judgment, decree, governmental order, statute, rule or regulation, by which LEALP is bound or to which all or a substantial part of its assets are subject, or result in the creation or imposition of, or the obligation to create or impose, any mortgage, lien, charge or encumbrance of any nature whatsoever upon any of the assets of LEALP (except those created or imposed by the Security Documents or the subordinated mortgage referenced in the Power Purchase Agreement) pursuant to the terms of any mortgage, indenture, agreement or instrument to which LEALP is a party or by which all or a substantial part of its assets are bound.  No approval by, authorization of, or filing with any Federal, state or other governmental commission, agency or authority is necessary in connection with the execution and delivery by LEALP of this Amended and Restated Energy Sales Agreement.

(e)    The System has been certified as a qualifying cogeneration facility, as such term is defined in Section 201 of the Public Utility Regulatory Policies Act of 1978 ("PURPA") and in the regulations promulgated thereunder, including, without limitation, 18 C.F.R. § 292.203, 18 C.F.R. § 292.205 and § 292.206, as amended (a "Qualifying Facility and shall remain a Qualifying Facility through the Initial Term.

(f)    During the period that the Amended and Restated Energy Sales Agreement is in effect, LEALP shall be allowed to

- 18 -

CONFIDENTIAL DRAFT

sell steam from the System to entities other than Delphi or its permitted successors and assigns as long as such sales do not interfere with LEALP's obligations hereunder.

2.02    Subject to and only upon the Bankruptcy Court's final and non-appealable order approving this Amended and Restated Energy Sales Agreement, in a form reasonably satisfactory to LEALP, Delphi makes the following representations, covenants and warranties which shall survive the execution and delivery of this Amended and Restated Energy Sales Agreement:

(a)    Delphi is a limited liability company duly organized and existing in good standing under the laws of the State of Delaware, and Delphi has the power to own its property and to carry on its business as it is now being conducted.

(b)    There is no action, suit, investigation or proceeding pending or, to the knowledge of Delphi, threatened against Delphi, which could materially adversely affect the System or the transactions contemplated by this Amended and Restated Energy Sales Agreement, or which involves the possibility of materially adversely affecting the ability of Delphi to comply with this Amended and Restated Energy Sales Agreement.

(c)    Delphi has all requisite power and authority to execute, deliver and perform its obligations under this Amended and Restated Energy Sales Agreement, and the execution, delivery and performance by it of this Amended and Restated Energy Sales Agreement, have been duly authorized by all necessary action on

- 19 -

CONFIDENTIAL DRAFT

its part, and this Amended and Restated Energy Sales Agreement has been duly executed and delivered by Delphi.

(d)    The execution, delivery and performance of this Amended and Restated Energy Sales Agreement will not result in the violation of or be in conflict with or constitute a default under any term or provision of any mortgage, lease, agreement or other instrument, or any judgment, decree, governmental order, statute, rule or regulation, by which Delphi is bound or to which all or a substantial part of its assets are subject, or result in the creation or imposition of, or the obligation to create or impose, any mortgage, lien, charge or encumbrance of any nature whatsoever upon any of the assets of Delphi pursuant to the terms of any mortgage, indenture, agreement or instrument to which Delphi is a party or by which all or a substantial part of its assets are bound.    No approval by, authorization of, or filing with any Federal, state or other governmental commission, agency or authority is necessary in connection with the execution and delivery by Delphi of this Amended and Restated Energy Sales Agreement or the Licenses.

**ARTICLE III - Reserved**

- 20 -

CONFIDENTIAL DRAFT
## ARTICLE IV - Operation and Maintenance of the System

4.01   LEALP shall be responsible for the operation and maintenance of the System and shall operate and maintain the System at its own expense in accordance with the Plans and Specifications. The System at all times shall be operated in a manner that will enable it to meet the steam demands set forth in Article XI.   With the exception of emergency situations, LEALP shall schedule normal maintenance and all capital improvements for the steam supply system for the months of May – September of each year.

4.02   Delphi shall be a third party beneficiary of the Operating and Maintenance Agreement.   Delphi shall have the right at all reasonable times at Delphi's expense and risk to review the operation and maintenance of the System and the records related thereto, to ensure that the System is being operated in accordance with the terms hereof and of the Operating and Maintenance Agreement, provided, however, that neither Delphi's right of review, nor any other provision contained herein, shall be read to infer that Delphi is in any way responsible for the operation or maintenance of the System.   In this regard, the covenants, undertakings and other provisions of the Operating and Maintenance Agreement are incorporated herein by reference, to the extent applicable to LEALP's obligations to Delphi, as if set forth herein.

- 21 -

CONFIDENTIAL DRAFT

4.03    LEALP shall maintain the monitoring station, as it exists as of the Effective Date of this Amended and Restated Energy Sales Agreement, for the System.

**ARTICLE V - <u>Interconnection Facilities and Access</u>**

5.01    Subject to Delphi's review rights set forth in Sections 5.02 and 5.03, LEALP shall be responsible for maintaining, at its cost and expense, all the transmission facilities and equipment necessary for the interconnections between the System and Delphi's existing facilities. The maintenance of all interconnection facilities shall be performed in accordance with the terms and conditions of the Licensing Agreements and Easements.

5.02    Designated Delphi employees, or their appointees, shall have the right, upon reasonable notice, to review any docu-ments related to the maintenance of the interconnections referenced in §5.01, <u>provided</u>, however, that neither Delphi's right to approve or review such documents, nor anything else con-tained herein, shall be read to infer that Delphi is in any way responsible for the design, installation or maintenance of such interconnection facilities.

5.03    LEALP, its agents, subcontractors, or others under its control shall respond in writing to any comments by Delphi, or its appointees, during the review process established pursuant to §5.02.    Thereafter the parties will negotiate in good faith to

- 22 -

CONFIDENTIAL DRAFT

resolve any comments submitted by Delphi.  Unresolved disputes
shall be referred to the Coordination Committee established
pursuant to §6.01.

## ARTICLE VI - <u>Coordination Committee</u>

6.01  In addition to maintaining routine operations and
communications, LEALP and Delphi shall establish a Coordination
Committee consisting of management representatives of LEALP and
Delphi.  The Committee shall meet as required for the following
purposes:

1.  Review and resolve disputes arising under Sections
4.02, 5.02, and 5.03.

2.  Provide projections of upcoming operating schedules
for maintenance and shutdown of LEALP and Delphi equipment.  LEALP
and Delphi agree to use their best efforts to promptly resolve any
disputes that may arise under Sections 4.02, 5.02, or 5.03 of this
Amended and Restated Energy Sales Agreement.  In the event the
Coordination Committee shall not resolve any such disputes, the
decision of LEALP shall be conclusive as to the aforesaid three
subsections only, and no others.

6.02  The Coordination Committee shall be comprised of
three representatives from Delphi and three representatives from
LEALP, which representatives shall be appointed, and are subject
to change, by the party that they represent.

CONFIDENTIAL DRAFT

**ARTICLE VII - <u>Alterations to the System</u>**

7.01  So long as the replacement or alteration shall not have an adverse effect on the ability of LEALP to perform its obligations hereunder, LEALP shall have the right to replace or upgrade any component of the System or add components to the System.  Prior notice of any proposed replacement or alteration (not including routine maintenance or in the case of an emergency) of equipment used for the production or delivery of steam shall be given to Delphi.  Replacements, upgradings or additions of such components shall belong to and become the property of LEALP and shall become a part of the System subject to the terms of this Amended and Restated Energy Sales Agreement.

**ARTICLE VIII - <u>Permits and Licenses</u>**

- 24 -

CONFIDENTIAL DRAFT

8.01   LEALP shall, at its own cost and expense, maintain throughout the term of this Amended and Restated Energy Sales Agreement all permits, licenses and approvals from all applicable governmental authorities, or other entities, necessary for the commercial operation of the System.   These permits may include, but are not limited to, state, federal, local and municipal environmental permits and licenses, state siting and operating permits, and local and municipal building code and zoning variances where required.   Delphi shall cooperate with LEALP in maintaining such permits, licenses and approvals but: (i) shall not interfere with LEALP's maintenance of such permits, licenses and approvals; and (ii) shall have no financial responsibility with respect to such maintenance.   LEALP shall at all times operate the System in a manner consistent with such permits, licenses and approvals.   Copies of all such permits, licenses, approvals, and variances shall be provided to Delphi by LEALP promptly after receipt by LEALP.

**ARTICLE IX - <u>Metering Devices, Inspections and Adjustments</u>**

9.01   <u>Metering Devices</u> - LEALP shall provide, own and maintain, at its own expense, all necessary meters and associated equipment to be utilized in measuring the steam energy output of the System and steam condensate return to the System, which measurements will form the basis of the calculation of the monies owed by Delphi to LEALP pursuant to this Amended and Restated Energy Sales Agreement.

- 25 -

CONFIDENTIAL DRAFT

9.02    <u>Check Meters</u> - Delphi shall have the option to install, at its own expense, check meters and associated equipment to verify all meter readings.

9.03    <u>Access, Inspections and Testing</u> - The metering devices shall be sealed and such seals shall be broken only by LEALP and only when a metering device is to be inspected, tested, adjusted, or repaired.    Delphi shall receive reasonable prior notice of any testing, inspecting or adjustment of metering devices and shall have the right to be present at such events.

9.04    <u>Adjustment for Inaccuracies</u> - Periodic tests of such metering equipment will be made by LEALP at least once each year at no cost to Delphi and additional tests will be made at any reasonable time upon request therefore by Delphi.  If, as a result of such tests, the metering equipment is found to be defective or inaccurate, it promptly will be restored to a condition of accuracy or replaced by LEALP.    If a test of the metering equipment is made at the request of Delphi with the result that said metering equipment is found to be registering correctly or within plus or minus one percent (1.0%) of 100% for steam, Delphi agrees to bear the expense of such test; provided that if such test shows an error greater than plus or minus one percent (1%) of 100% for steam, then LEALP will bear all costs of such test.  All meters shall be adjusted by LEALP as close as practical to 100% at the time of installation and testing.

CONFIDENTIAL DRAFT

If any of the metering equipment tests provided for herein disclose that the error for such equipment exceeds plus or minus one percent (1%) of 100% for steam, then one-half (50%) of the measured quantities resulting from the readings of such metering equipment taken during the billing periods since the last test on such equipment was made will be adjusted, in full, either upward or downward from the amount of the error to one hundred percent.  Any correction in billing resulting from such adjustment in meter records shall be made in the next monthly bill rendered by LEALP after the inaccuracy is discovered, and such correction when made shall constitute a complete and final settlement of any claim arising between the parties hereto out of such inaccuracy of the metering equipment.

Should any metering equipment installed by LEALP fail to register the condensate or steam delivered during any period of time, the amount of condensate or steam delivered during such period will be estimated by agreement of the parties based on the amounts previously delivered during similar periods under substantially similar conditions, unless meter readings are available from Delphi's installed meter equipment, in which case Delphi's meter readings will be used.  Delphi shall have its meters inspected and tested annually.

**ARTICLE X - <u>Sale of Electricity</u>**

- 27 -

CONFIDENTIAL DRAFT

10.01   Upon the Effective Date, all electricity sales from LEALP to Delphi shall terminate. Any and all provisions of the Energy Sales Agreement that are necessary for final metering and billing of LEALP's electricity sales to Delphi shall survive for purposes of final metering and billing of electricity sales.

**ARTICLE XI - <u>Sale of Steam</u>**

11.01   LEALP agrees to supply and deliver one hundred percent (100%) of Delphi's requirements for steam from the System up to 160,000 lbs/hour, commencing on the Effective Date and continuing uninterrupted through the Initial Term of this Amended and Restated Energy Sales Agreement, as defined in Article XIII. Through the Initial Term only, for steam equal to or less than 160,000 lbs/hour, up to a limit of 500,000,000 lbs of steam per calendar year, Delphi agrees to accept and pay for such actual steam deliveries pursuant to the terms set forth in §11.04.  For the Initial Term only, for steam in excess of 160,000, lbs/hour, or in excess of 500,000,000 lbs of steam per calendar year ("Excess Steam Capacity"), Delphi shall have the option to purchase such steam from LEALP for a price equal to LEALP's cost of supplying that steam or to secure such steam from an alternate source.

- 28 -

CONFIDENTIAL DRAFT

a.  LEALP's cost of supplying Excess Steam Capacity during the Initial Term shall be determined in the following manner: Excess Steam Capacity will be considered to be supplied by the auxiliary boiler defined in §2.01 of Exhibit "B". Auxiliary boiler steam costs will be determined by using the as delivered cost of fuel supplied and a boiler efficiency of 82% ("Initial Term Supplemental Steam Price").

11.02  In order to assure maximum reliability of supply to Delphi during the Initial Term, the steam supply facilities of the System shall be maintained by LEALP in accordance with the Plans and Specifications.  LEALP's obligation to supply steam in accordance with the provisions set forth herein shall not be excused by a labor dispute or a labor or material shortage that might otherwise qualify as a Force Majeure event under Article XXI hereof unless the LEALP labor dispute or labor or material shortage is the result of (1) events, other than extreme hot or cold weather or snow, beyond the reasonable control or contemplation of LEALP, or (2) a labor dispute or labor shortage affecting Delphi which results in an inability of LEALP, its employees or operators to operate the System.

a.  The delivery point for the steam will be in Delphi's Building No. 16 at the block valve entering the 24 inch main steam header.  Steam delivered will be at 145-155 psig with less than 20°F super heat.  LEALP shall be responsible for the maintenance of all steam supply lines up to and at the delivery

- 29 -

CONFIDENTIAL DRAFT

point.    Maintenance  of  steam  supply  lines  inside  the  existing
Delphi  boiler  house  shall  be  controlled  by  Exhibit  "T".    Steam
supply  lines  beyond  the  delivery  point  shall  be  the  responsibility
of  Delphi.

11.03    Through  the  Initial  Term,  Delphi  agrees  that
it  will  consume  yearly,  in  a  manner  consistent  with  the
requirements  of  PURPA,  the  minimum  pounds  (the  "Steam  Minimum")  of
steam  necessary  to  allow  the  System  to  maintain  its  Qualifying
Facility  ("QF")  status  at  the  Federal  Energy  Regulatory  Commission
("FERC"),  _provided_,  however,  that  such  Steam  Minimum  does  not
exceed  500,000,000  pounds  of  steam  per  calendar  year.    In    the
event  that  LEALP  should  require  Delphi  to  take  Additional  QF  Steam
to  maintain  LEALP's  QF  status  at  FERC,  Delphi  shall  take  the
Additional  QF  Steam  at  no  charge,  provided,  that  Delphi  shall  have
no  obligation  to  take  any  Additional  QF  Steam  unless  LEALP
provides  reasonable  notice  to  Delphi,  which  shall  not  be  less  than
60  days,  and,  provided  further,  that  the  extent  of  Additional  QF
Steam  that  Delphi  may  be  obligated  to  take  shall  reflect  Delphi's
historical  usage  patterns  and  the  extent  of  additional  QF  Steam
requirements.    Delphi's  obligation  to  consume  the  Steam  Minimum
and  Additional  QF  Steam  shall  not  be  excused  by  a  labor  dispute  or
a  labor  or  material  shortage  that  might  otherwise  qualify  as  a
Force  Majeure  event  under  Article  XXI.    Subject  to  LEALP's  ability
to  deliver  steam,  Delphi  is  obligated  to  take  and  pay  for  the
Steam  Minimum  and  take  the  Additional  QF  Steam  during  each

- 30 -

CONFIDENTIAL DRAFT

calendar year or for a partial year, a pro rata portion thereof, throughout the Initial Term.

11.04    The price for Net Steam Energy Supplied by LEALP to Delphi during the Initial Term up to 500,000,000 lbs per calendar year shall be equal to $3.00 per MMBtu.

11.05    During any Additional Term, Delphi shall take or pay for a minimum of 50,000,000 lbs of steam per calendar year. For each calendar year during any Additional Term, LEALP shall provide or be available to provide a minimum of 90% of Delphi's annual steam requirements up to a maximum of 160,000 lbs/hr and 500,000,000 lbs per year at a price equal to the as delivered cost of fuel supplied and a boiler efficiency of 82% plus a mark-up for water, chemicals and other incidentals of $1.50 per million pounds escalating at 3% annually beginning one year from the Effective Date (the "Supplemental Steam Price").  During short term periods when LEALP is unavailable to deliver steam, Delphi may operate its backup boilers pursuant to the Backup Boiler Agreement, Exhibit S.  During periods that Delphi's backup boilers are operated as a short-term substitute for Steam from LEALP, LEALP shall compensate Delphi for all costs associated with running the back-up boilers, including the cost of labor, fuel, water and other reasonable costs, less the Supplemental Steam Price.

- 31 -

CONFIDENTIAL DRAFT

a.    Notwithstanding any other term herein, if during any Additional Term, LEALP is producing electricity from its steam turbine, the price of Steam charged to Delphi during such periods shall be equal to the Initial Term Supplemental Steam Price.

11.06    During the Initial Term onlyin the event that LEALP's supply of steam from the System to Delphi is interrupted for any reason other than Delphi's acts or omissions or a Force Majeure event, which, for purposes herein, shall not include a labor dispute or a labor or material shortage by LEALP unless the labor dispute or labor or material shortage is the result of (1) events, other than extreme hot or cold weather or snow, beyond the reasonable control or contemplation of LEALP, or (2) a labor dispute or labor shortage against or affecting Delphi which results in the inability of LEALP, its employees or operators to operate the System, LEALP is obligated to secure and deliver an alternative, reliable source of steam to Delphi within 72 hours of the interruption.  In the event that LEALP fails in its obligation to deliver alternative, reliable steam hereunder and as a result thereof Delphi is forced to purchase steam from another entity or produce steam itself, for days 4 through 7 of the interruption LEALP shall pay Delphi liquidated damages of $100,000 per day and for days 8 through 30 of the interruption LEALP shall pay Delphi $200,000 per day as liquidated damages.

CONFIDENTIAL DRAFT

a. In addition, during the initial term onlyLEALP shall reimburse Delphi for all reasonable costs or charges directly associated with all replacement steam supplies commencing with the first hour of the first day that Delphi secures such replacement steam supplies including, but not limited to, boiler delivery and installation costs, rental and fuel costs, labor costs, dismantling costs, start-up, and/or other charges related to Delphi's alternate supply steam equipment during the period of interruption, less what such steam supplies would otherwise have cost Delphi pursuant to this Amended and Restated Energy Sales Agreement, provided, however, that Delphi shall use its best efforts to secure the least cost supplies of back-up steam recognizing its need to minimize its down time.

b. During each Additional Term, LEALP shall reimburse Delphi for all reasonable costs or charges directly associated with all replacement steam supplies commencing with the first hour of the thirty first day that Delphi secures such replacement steam supplies including, but not limited to, boiler delivery and installation costs, rental and fuel costs, labor costs, dismantling costs, start-up, and/or other charges related to Delphi's alternate supply steam equipment during the period of interruption, less what such steam supplies would otherwise have cost Delphi pursuant to this Amended and Restated Energy Sales Agreement, provided, however, that Delphi shall use its best

- 33 -

CONFIDENTIAL DRAFT

efforts to secure the least cost supplies of back-up steam recognizing its need to minimize its down time.

11.07    LEALP shall obtain Delphi's written approval (which approval shall not be unreasonably withheld and shall be addressed promptly by Delphi) for any and all chemical treatment or additives to inhibit corrosion added to the steam produced by LEALP prior to LEALP's making such additions or treatments.  Prior to making such chemical additions or treatments, LEALP shall provide the specifications for the additions or treatments to Delphi for review and concurrence.

11.08  Delphi will return the condensate water from the steam production of LEALP to LEALP without adding any Hazardous Matter, as defined herein.  LEALP is responsible for monitoring the quality and quantity of the condensate water returned.  In the event that LEALP finds the condensate water returned to be contaminated, it is responsible for directing the contaminated condensate water to a receptor designated by Delphi.  Title to usable condensate shall pass to LEALP at the delivery point, which shall be the 18,000 gallon condensate storage tank in Delphi Building 16.  LEALP shall retain responsibility for operation and maintenance for all components required for the movement of condensate from the Delivery Point to the System, including the 18,000 gallon condensate storage tank.  Delphi shall receive a credit for all such condensate returned to the condensate delivery point, less contaminated condensate that is diverted to a receptor

- 34 -

CONFIDENTIAL DRAFT

designated by Delphi, based on BTU value, calculated and determined in accordance with the following calculation:

Calculation of Credit For
Condensate Water Return Credits

BTUS - Total weighted Btu value of steam, in million Btu

BTUC - Total weighted Btu value of returned condensate, in million Btu

Calculated as follows:

$$BTUS = \sum_{i=1}^{n} (PSi \times HSi)$$

$$BTUC = \sum_{i=1}^{n} (PCi \times HSi)$$

Where:

PSi, HSi = Average hourly steam flow in pounds and corresponding steam enthalpy in Btu per pound during each operating hour.

PCi, HCi = Average hourly return condensate flow in pounds and corresponding condensate enthalpy during each operating hour.

n $\sum_{i=1}^{}$ = A sum of weighted Btu values of steam, condensate and water for all operating hours during the billing period.

n = Total number of hours during each billing period.

Flows = Determined from meter readings

Net Steam = BTUS - BTUC
Energy Supplied

- 35 -

CONFIDENTIAL DRAFT

Condensate
Enthalpy =Saturation enthalpy from ASME steam table at the conden-
          sate delivered temperature.

Steam
Enthalpy =Saturation enthalpy from ASME steam table at the deliv-
          ery pressure.

## ARTICLE XII - <u>Insurance</u>

12.01   LEALP shall obtain and maintain, or cause to be obtained and maintained, at its own expense, the following insurance coverages in full force and effect to cover all activities contemplated herein throughout the term of this Amended and Restated Energy Sales Agreement, unless otherwise specified for a longer coverage period:

(1) Comprehensive general liability insurance, including products, completed operations and contractual liability coverage in limits of not less than $20 million per occurrence combined single limit for personal injury and property damage.

(2) Statutory workers' compensation insurance and employers' liability insurance in limits required by New York State.

(3) Pollution Legal Liability insurance, including coverage for both sudden and accidental and non-sudden occurrences with limits of the greater of $5 million per occurrence combined single limit for personal injury and property damage with $8 million annual aggregate, or such limits as may be required according to applicable governing regulations, <u>provided</u>, however,

- 36 -

CONFIDENTIAL DRAFT

that LEALP shall not be required to renew the Pollution Legal Liability insurance if it can demonstrate each year thereafter, to Delphi's sole satisfaction, that such insurance is no longer available at commercially reasonable rates.

(4)    Comprehensive automobile liability insurance covering all owned and non-owned and hired vehicles in limits of not less than $1 million per occurrence combined single limit for personal injury and property damage, including all statutory coverages for all states of operation.

(5)    "All-risk" property insurance insuring all real and personal property at full replacement cost value.    LEALP and Delphi shall cause their insurers to waive any right of subrogation.    LEALP and Delphi shall assume responsibility for their own deductible amounts and losses in excess of policy limits for an insured loss.

(6)    Professional errors and omissions liability coverage in limits of not less than $3 million per occurrence for bodily injury and property damage resulting from LEALP's design and construction of the System.

The coverages obtained by LEALP pursuant to this Article shall be with reputable insurance companies and subject to the review and approval of Delphi, which approval shall not be unreasonably withheld.    LEALP shall cause each insurance policy to name Delphi as a certificate holder and require that the insurer provide Delphi with notice of any changes or lapses in LEALP's

- 37 -

CONFIDENTIAL DRAFT

insurance coverage.   Each year LEALP shall provide Delphi with certificates of insurance:  (a) evidencing Delphi as an additional insured for all of the above mentioned coverages, except workers compensation.   The purchase of appropriate insurance coverage by LEALP or the furnishing of the certificate(s) of insurance shall not release LEALP from its respective obligations or liabilities under this agreement.

## ARTICLE XIII - **Term**

13.01   The Initial Term of this Amended and Restated Energy Sales Agreement shall commence as of the Effective Date and shall terminate on December 27, 2007, unless the Amended and Restated Energy Sales Agreement is terminated earlier pursuant to the terms contained herein.  Delphi shall use its best efforts to file as soon as reasonably practicable after execution of all the Agreements and Amendments all necessary motions and supporting documentation (including without limitation the Agreements and Amendments) with the Bankruptcy Court as may be required to obtain the Bankruptcy Order and Delphi shall use its best efforts to diligently prosecute the same.   All such applications and supporting documentation, including without limitation the proposed form of the Bankruptcy Order, shall be subject to the prior review and approval of LEALP before being filed, not to be unreasonably withheld, conditioned, or delayed. In the event that the Bankruptcy Order has not been entered by the Bankruptcy Court

CONFIDENTIAL DRAFT

and has not become a final non-appealable order  on or before _____, 2006, either party shall have the right to terminate this Amended and Restated Energy Sales Agreement without any liability to the other whatsoever and in which case the original Energy Sales Agreement shall continue in effect.

13.02    Upon expiration of the Initial Term, this Amended and Restated Energy Sales Agreement shall continue in force for up to an additional ten terms of two years each ("Additional Terms"), up to a maximum of twenty (20) years ("Additional Term") unless Delphi provides LEALP with written notice of its intention to terminate this Amended and Restated Energy Sales Agreement no later than six months prior to the end of the Initial Term or the then effective Additional Term.

**ARTICLE XIV - Reserved**

**ARTICLE XV - Reserved**

**ARTICLE XVI - <u>Billing and Payment</u>**

16.01    Each month during the term of this Amended and Restated Energy Sales Agreement, Delphi shall submit to LEALP a statement of any steam standby or backup charges for which LEALP is responsible pursuant to  Section  11.06 hereof including, where applicable, copies of bills tendered to Delphi by third-parties.

- 39 -

CONFIDENTIAL DRAFT

16.02    LEALP will read the metering devices at 8:00 a.m., the first day of each calendar month, and will thereafter prepare and send to Delphi an invoice for the Net Steam Energy Supplied to Delphi by LEALP during such calendar month, at prices determined in accordance with Article XI.    Delphi's employees or agents shall have the right to be present when the metering devices are read.    Invoices will be sent to Delphi by the fifteenth (15th) day of the month following the month in which the readings were taken.    The billing period shall commence at 8:00 A.M. the first day of each month.

16.03    Other than portions of an invoice that are in dispute, Delphi shall pay the amount due to LEALP no later than thirty (30) days after receipt of the monthly invoice from LEALP. Any payment not so made will bear interest, from the date on which payment was required, at a rate equal to JP Morgan Chase's prime rate, plus one percent (1%), _provided_, however, that amounts under dispute will not be subject to interest if it is determined, by the agreement of the parties or by the decision of an independent court or arbitration panel, that the amounts were not due and payable to LEALP.

16.04    (a)    LEALP shall pay to Delphi the following schedule of payments, which the parties agree represents Delphi's share of the tax benefits obtained through the participation of the Town of Lockport Industrial Development Agency ("IDA") in the financing of the System:

- 40 -

CONFIDENTIAL DRAFT

| | |
|---|---|
| 2006 | 420,393 |
| 2007 | 459,538 |

The payments to Delphi for shared savings shall be paid only if LEALP is making Payments in Lieu of Taxes ("PILOT") to the IDA during the applicable period set forth on the foregoing chart. Further, if the PILOT in any given year above is different than $725,000 then Delphi's shared savings payment for that year shall be adjusted (upward or downward) by adding fifty percent (50%) of the difference of $725,000 less the actual PILOT payment. In no event shall Delphi be obligated to make payments to LEALP if the above calculation results in a value for Delphi's shared savings of less than zero.

(c)  Payment to Delphi for the amounts due for any calendar year shall be achieved by crediting the full amount due to Delphi against the first bill from LEALP in the immediately succeeding calendar year (i.e., the payment due for 2006 shall be credited against the first bill in 2007; the payment due for 2007 shall be credited against the first bill in 2008) provided, however that if the credit taken on any monthly bill would reduce such monthly bill to less than zero, the remaining credit shall apply to each succeeding monthly bill. In the event that such crediting period exceeds six months, payment of the remaining credit for the prior year shall be immediately payable to Delphi in cash. The payment due for the last year in which this Amended

- 41 -

CONFIDENTIAL DRAFT

and Restated Energy Sales Agreement is in effect shall be credited against the last bill to be paid by Delphi.  In the event that the credit for the last year of this Amended and Restated Energy Sales Agreement exceeds the last bill to Delphi, any remaining balance shall be immediately paid to Delphi in cash.

**ARTICLE XVII - Other Agreements**

17.01   LEALP agrees to execute and deliver the LEALP Certificate to Delphi in form and substance reasonably satisfactory to Delphi.

17.02   Delphi agrees to execute and deliver the Delphi Certificate and to LEALP in form and substance reasonably satisfactory to LEALP.

**XVIII - Unconditional, First Option to Purchase**

18.01   In the event that LEALP shall desire to sell or transfer all or any significant part of the System and/or Project Site during the term of this Agreement pursuant to Article XX hereof, Delphi shall have the unconditional and first option to purchase the System and Project Site, subject to LEALP's obligations under the Power Purchase Agreement.  If LEALP receives a bona fide offer to purchase the System and/or Project Site, it shall provide written notice of such offer to Delphi.  Delphi shall have ninety (90) days from receipt of such written notice from LEALP to elect in writing to purchase the System and/or

- 42 -

CONFIDENTIAL DRAFT

Project Site on the same terms and conditions as such bona fide offer.  If Delphi fails to provide LEALP such written election within the ninety (90) day period, Delphi shall be deemed to have elected not to exercise its right to purchase the System and/or Project Site.  Delphi's first option to purchase shall not be activated by transfers of limited partnership interests in LEALP to entities that meet the test outlined in §20.01 or otherwise are approved by Delphi.  If Delphi shall have so elected to purchase the System and/or Project Site, LEALP shall transfer the System and/or Project Site to Delphi pursuant to a deed and bill of sale, in form and substance satisfactory to Delphi, free and clear of all liens and encumbrances other than those arising under the Security Documents and the Power Purchase Agreement in exchange for payment by Delphi to LEALP of the purchase price in funds consisting of lawful currency of the United States of America, net of any funds owed to the Lender under the Security Documents or to NYSEG under the Power Purchase Agreement.  Any sales taxes on such purchase shall be paid by Delphi and all real estate taxes, school taxes and water and sewer rents shall be apportioned between LEALP and Delphi as of the date of the delivery of the deed on the basis of each party's respective period of ownership as it relates to said taxes.

- 43 -

CONFIDENTIAL DRAFT

## ARTICLE XIX - Assignment of Contracts Upon Purchase or Assumption of Control by Delphi

19.01   In the event that, pursuant to the provisions of Articles, XVIII or XXIV Delphi exercises its right to purchase the System and/or Project Site or assumes control of the System and/or Project Site through the operation of other provisions of this Agreement, or otherwise:

(a)   Subject to the Security Documents and the Power Purchase Agreement, LEALP shall assign to Delphi all the contracts requested by Delphi that relate to the operation and maintenance of the System, including, but not limited to, the Power Purchase Agreement, or a power sales agreement with another utility, and the gas supply and transportation contracts provided, however, that Delphi's right to request assignment of certain contracts shall not be read as an obligation by Delphi to assume all or any of those contracts except that, should Delphi exercise its right to purchase the System and/or Project Site, it shall assume only those gas supply and gas transportation contracts entered into by LEALP which are included herein, collectively, as Exhibit "U", in accordance with the terms and conditions contained therein.

(b)   Subject to the Security Documents and the Power Purchase Agreement, LEALP shall promptly transfer title to the Project Site and the System to Delphi; and

CONFIDENTIAL DRAFT

(c)  Subject to the Security Documents and the Power Purchase Agreement, LEALP shall convey its interest in the gas pipeline that interconnects the System and the Tennessee Gas Pipeline Company interstate pipeline located on Delphi's property for its Fair Market Value, as defined herein.

**ARTICLE XX - Sale or Transfer of any Ownership Interest in the System or Project Site to Others**

20.01  Any actual sale, transfer or conveyance of any ownership interest in the System or Project Site during the Initial Term or any Additional Term of this Amended and Restated Energy Sales Agreement, including any transfers or sales of the limited partnership interests in LEALP, whether partial or whole, by LEALP to any entity other than Delphi must be approved in advance by Delphi in writing, which approval shall not be unreasonably withheld, <u>provided</u>, however, that Delphi's prior right of approval shall not apply to any disposition pursuant to the exercise of remedies by the Lender or NYSEG pursuant to the Power Purchase Agreement or to the transfers of limited partnership interests to any entity that agrees to be bound by the terms of the LEALP Partnership Agreement and falls into one of the following three categories:

(i) any entity that is a partner in LEALP (or any affiliate of such entity) on the date hereof; or

(ii) any entity that has one or more class or series of securities listed or trades on a

- 45 -

CONFIDENTIAL DRAFT

national or international securities exchange or in the over-the-counter market (or any affiliate of such entity); or

(iii) any entity that would be deemed to be an "accredited investor" as defined in any of sections (a)(1), (a)(4), or (a)(8) of Rule 501 promulgated under the Securities Act of 1933, as in effect on the date hereof (or any affiliate of such entity), _provided_, that this clause shall not include "business development companies" as defined in Rule 501(a)(1) and that under Rule 501(a)(8), "accredited investors" shall include only those entities otherwise permitted herein.

Any approved transfer or sale of the System to any buyer must include a transfer or sale of the Project Site, and vice versa. LEALP shall provide written notice to Delphi of its intent to sell to an entity other than Delphi not less than 90 days prior to its intended date of transfer of title except (1) in the case of transfers of limited partnership interests, or (2) in the case of any disposition pursuant to the exercise of remedies by Lender or NYSEG under the Power Purchase Agreement, in which cases 30 days prior written notice shall be deemed sufficient.

20.02  Any actual or attempted sale, transfer or conveyance of any ownership interest in the System or Project Site by LEALP subsequent to the termination of this Amended and Restated Energy Sales Agreement to an entity other than Delphi shall be null and void unless the purchaser is approved in advance by Delphi in writing and Delphi shall decide to approve the assignment of the license agreement that would allow the purchaser to enter upon its grounds, _provided_, however, that Delphi's prior

CONFIDENTIAL DRAFT

right of approval in this regard shall not apply to any disposition pursuant to the exercise of remedies by the Lender or NYSEG pursuant to the Power Purchase Agreement.

20.03 Any actual or attempted substitution of parties to the Operation and Maintenance Agreement or a successor agreement approved by Delphi, (other than a substitution pursuant to the exercise of remedies by Lender) during the Initial Term or any Additional Term of this Amended and Restated Energy Sales Agreement, must be approved in advance by Delphi, which approval shall not be unreasonably withheld.

CONFIDENTIAL DRAFT

**ARTICLE XXI - <u>Force Majeure</u>**

21.01  If either party shall be unable to carry out any of its obligations under this Amended and Restated Energy Sales Agreement (other than the payment of money for goods or services actually rendered prior to the Force Majeure event) due to events reasonably beyond its control, and which, with the exercise of due care, it could not reasonably have been expected to avoid, including, without limitation, acts of God, governmental or judicial authority, war, blockage, insurrection, riot, labor dispute, labor or material shortage, fire, explosion, flood, nuclear emergency, epidemic, landslide, lightning, earthquake or similar cataclysmic occurrence, but specifically excluding the effects of extreme cold or hot weather or snow, this Amended and Restated Energy Sales Agreement shall remain in effect but the affected party's obligations shall be suspended for a period equal to the disabling circumstances, provided that:

(a) The non-performing party gives the other party prompt written Notice describing the particulars of the Force Majeure, including but not limited to the nature of the occurrence and its expected duration, and continues to furnish timely regular reports with respect thereto during the period of Force Majeure;

(b) The suspension of performance is of no greater scope and of no longer duration than is required by the Force Majeure;

(c) No obligations of either party that arose before the Force Majeure causing the suspension of performance shall be excused as a result of the Force Majeure;

- 48 -

CONFIDENTIAL DRAFT

(d) The non-performing party uses its best efforts to remedy its inability to perform; and

(e) The force majeure event described above is not otherwise specifically addressed by other provisions of this Amended and Restated Energy Sales Agreement.

21.02    For the avoidance of doubt and notwithstanding the foregoing in Section 21.01, the term "Force Majeure" does not include, with respect to Delphi, the occurrence of the Bankruptcy Case or any direct consequence of the initiation or conduct of the Bankruptcy Case, including without limitation any inability to adopt a bankrupcty plan or otherwise emerge from the Bankruptcy Case or any conversion of the Bankruptcy Case to a case Under chapter 7 of the United States Bankruptcy Code.

## ARTICLE XXII - <u>Indemnification</u>

22.01    LEALP assumes sole and entire responsibility for any loss of life or injuries that may be sustained to its employees, agents, subcontractors, members of the public and Delphi employees in connection with the  operation and maintenance of the System and the delivery of steam to the delivery point with Delphi other than for loss of life or injuries which result solely and exclusively from the fault or negligence of Delphi.  LEALP shall indemnify and save harmless Delphi for any and all liability for personal injuries, property damage, loss of life, expenses, claims, demands, or losses resulting from, or in any way connected with the operation or maintenance of the System and the delivery of steam to the delivery point with Delphi or the receipt of steam

- 49 -

CONFIDENTIAL DRAFT

condensate from Delphi, including any costs, expenses and attorneys' fees which may be incurred by Delphi incident to any such liability; _provided_, however, that LEALP shall not be required to indemnify and hold Delphi harmless from any claims, demands, losses, damages, expenses and other liabilities due solely and exclusively to the fault or negligence of Delphi.

22.02   Delphi shall indemnify and save harmless LEALP for any and all liability for personal injuries, property damage, loss of life, expenses, claims, demands, or losses resulting from, or in any way connected with Delphi's use of the steam after LEALP has delivered such steam to the delivery point set forth in Section 11.02(a) in a safe and proper manner, including any costs, expenses and attorneys' fees which may be incurred by LEALP incident to any such liability; _provided_, however, that Delphi shall not be required to indemnify and hold LEALP harmless from any claims, demands, losses, damages, expenses and other liabilities due solely and exclusively to the fault or negligence of LEALP.

22.03   LEALP and Delphi shall indemnify and hold the other harmless from any claims of LEALP's and Delphi's creditors to any right, title or interest in the other's property and possessions or resulting from any encumbrances, liens or claims placed on the other's property and possessions except as provided for herein.  The duties to indemnify provided herein shall survive the expiration or early termination of this Amended and Restated

- 50 -

CONFIDENTIAL DRAFT

Energy Sales Agreement with respect to any claims based on facts or conditions occurring prior to expiration or early termination hereof.

**ARTICLE XXIII - <u>Events Constituting Breach</u>**

23.01   The occurrence of any of the following shall constitute an "Event Constituting Breach" by Delphi hereunder:

(1)   any payment hereunder is not made when due and remains unpaid for twenty (20) days after written notice from LEALP; <u>provided</u>, however, that this provision shall not apply when Delphi's nonpayment is the result of a good-faith dispute as to a bill from LEALP and is limited to the amount in dispute; or

(2)   Delphi fails to perform any of its material duties or obligations contemplated by this Amended and Restated Energy Sales Agreement and such failure continues and is not cured within thirty (30) days after written notice thereof received from LEALP, except if such cure cannot reasonably be accomplished within such thirty (30) day period there shall be no Event Constituting Breach so long as Delphi has commenced a cure within such thirty (30) day period and diligently pursues such cure to completion.

23.02   The occurrence of any of the following shall constitute an "Event Constituting Breach" by LEALP hereunder:

(1)   any material representation or warranty furnished by LEALP in this Amended and Restated Energy Sales Agreement is discovered to have been false or misleading in any material

- 51 -

CONFIDENTIAL DRAFT

respect when made and such representation or warranty continues to be false or misleading for a period of 30 days after written notice to that effect is provided by Delphi and is material at the time that an Event Constituting Breach is declared;

(2)   LEALP fails to perform any of its material duties or obligations contemplated by this Amended and Restated Energy Sales Agreement and such failure continues and is not cured within thirty (30) days after written notice thereof received from Delphi, except if such cure cannot reasonably be accomplished within such thirty (30) day period there shall be no Event Constituting Breach so long as LEALP has commenced a cure within such thirty (30) day period and diligently pursues such cure to completion.

(3)   a petition in bankruptcy is filed by or against LEALP and is not dismissed within ninety (90) days; or LEALP becomes insolvent within the meaning of any state or federal bank-ruptcy or insolvency law; or a receiver for all or any part of LEALP's businesses shall be appointed by any state or federal court and such appointment of a receiver is not vacated within ninety (90) days of being made.

(4)   a breach of any material provision in the Licensing Agreements or Easements and such breach continues and is not cured within thirty (30) days after written notice thereof from Delphi;

(5)   LEALP fails, after the Effective Date: (a) to provide steam from any source for a period of 30 consecutive days

CONFIDENTIAL DRAFT

or any 30 days within any 45 day period, or (b) to provide steam from the System for a period of 90 consecutive days or any 90 days within a 120 day period and such failure is not due to a breach by Delphi or a Force Majeure event, which, for purposes herein, shall not include a labor dispute or a labor or material shortage by LEALP unless the labor dispute or labor or material shortage is the result of (1) events, other than extreme hot or cold weather or snow, beyond the reasonable control or contemplation of LEALP, or (2) a labor dispute or labor shortage against or affecting Delphi which results in the inability of LEALP, its employees or operators to operate the System.    23.03   During the Initial Term only, to the extent that Delphi is required to supply written notice of an Event of Default to LEALP under §23.02, it also shall send a copy of that notice to NYSEG via U.S. Mail, regular delivery, at its corporate headquarters, 4500 Vestal Parkway East, Binghamton, New York 13903.


**ARTICLE XXIV -** **Remedies Upon Breach**

24.01   Upon the occurrence of an Event Constituting Breach by Delphi as defined herein, LEALP may exercise any and all rights or remedies available to it at law or at equity or initiate other appropriate proceedings including bringing an action for recovery of amounts due and unpaid provided, however, that LEALP shall not suspend steam service to Delphi from the System because of any breach unless (1) Delphi has requested such suspension, or

- 53 -

CONFIDENTIAL DRAFT

(2) the Event Constituting Breach is as defined in §23.01(1).    In addition, any approvals or rights provided to Delphi shall be suspended until such time the Event Constituting Breach is cured.

24.02    Except for an Event Constituting Breach as described in §23.02(5) during any Additional Term, the exclusive remedy for which is provided in §24.03, upon the occurrence of an Event Constituting Breach by LEALP as defined herein, Delphi may elect one or more of the following remedies, which shall not be deemed to be exclusive:

(1)    terminate this Amended and Restated Energy Sales Agreement by delivery to LEALP of a written Notice of Termination, receipt of which by LEALP shall suspend the rights and obligations of LEALP and Delphi.    After the Notice of Termination is received by LEALP, Delphi shall have the unilateral option to purchase the System and Project Site from LEALP for the lesser of Fair Market Value, as defined herein, or $180,000,000 by paying the lesser amount to LEALP net of any funds owed to the Lender under the Security Documents or to NYSEG under the Power Purchase Agreement .    This Agreement shall terminate after closing.    This Article does not create an obligation on the part of Delphi to purchase the System and Project Site upon the occurrence of an Event Constituting Breach by LEALP;

(2)    suspend purchases of steam from LEALP and return of steam condensate to LEALP and obtain such steam and/or condensate return services from other sources.    In the event that Delphi

- 54 -

CONFIDENTIAL DRAFT

elects this remedy, LEALP shall reimburse Delphi for all charges of any sort paid by Delphi for such alternate supplies, including, but not limited to, any minimum charges, demand charges, wheeling charges, startup costs, dismantling costs, rental costs, fuel costs, labor costs, and equipment rental costs, less the amount that Delphi would have had to pay LEALP for the same steam pursuant to this Amended and Restated Energy Sales Agreement provided, however, that Delphi shall use its best efforts to secure least cost steam alternatives recognizing its need to minimize its down time.  Reimbursement to Delphi pursuant to this provision shall be by direct cash payments at the end of each month of suspension hereunder.  Late payments shall include interest calculated at the then-existing prime rate at JP Morgan Chase Bank, plus 1%.  The suspension period invoked hereunder by Delphi will be terminated when the Event Constituting Breach is remedied;

(3)  exercise any and all rights or remedies available to it at law or equity or initiate other appropriate proceedings to enforce the terms and provisions of this Amended and Restated Energy Sales Agreement and its rights hereunder.

24.03  Upon the occurrence of an Event Constituting Breach by LEALP as described in §23.02(5) during any Additional Term, this Amended and Restated Energy Sales Agreement shall terminate and Delphi's exclusive remedy shall be to either (i) purchase the auxiliary boiler from LEALP for $1.00 which Delphi

- 55 -

CONFIDENTIAL DRAFT

may continue to operate at its present site with all necessary ingress and egress rights or move to another locations at Delpho's cost, or (ii) purchase the System and Project Site from LEALP for Fair Market Value, or (iii) require LEALP, at LEALP's and Delphi's mutual option, (a) to either provide Delphi a package boiler capable of supplying 160,000 lbs/hr satisfying the quality standards of the Plans and Specifications installed at LEALP's site or delivered to Delphi's site to be connected and installed at Delphi's cost or (b) pay Delphi $500,000.

**ARTICLE XXV - <u>Excluded Damages</u>**

25.01    Notwithstanding any other provision contained herein, neither Delphi, LEALP nor any of their respective successors and assigns shall be liable in any action at law or in equity, whether based on contract or arising as a result of an Event Constituting Breach, tort (including negligence), strict liability or otherwise, to any other party hereto or to any other person, including affiliates and subsidiaries of any other party hereto, for damages for loss of profits or revenues (including, without limitation, loss of profits or revenues contemplated under the Power Purchase Agreement or successor power sales agreements entered into by LEALP with entities other than Delphi, its successors or assigns), loss of use or loss of business opportunity (including, without limitation, lost production time at Delphi facilities relying on Delphi products or damages

- 56 -

resulting from LEALP's loss of qualifying facility status). Neither Delphi, LEALP nor any of their respective successors and assigns shall be liable hereunder for punitive damages as a result of an Event Constituting Breach or otherwise.

**ARTICLE XXVI - <u>Environmental Matters</u>**

26.01   Delphi represents and warrants that, as of April 22, 1991, to the best of its knowledge, there were no existing violations of any applicable federal, state, or local environmental laws, regulations, or ordinances at the Project Site, including those governing Hazardous Matters.

26.02   LEALP represents and warrants that, to the best of its knowledge, there are no pending, threatened, ongoing, or unresolved administrative or enforcement investigations, compliance orders, claims, demands, actions, or other litigation brought by governmental authorities or other third parties alleging violations of any federal, state, or local environmental laws, regulations, or ordinances at the Project Site.

26.03   LEALP represents and warrants that it shall comply with all federal, state, and local laws, regulations, and ordinances in connection with any operations conducted at or use of the Project Site, including those governing Hazardous Matters.

26.04   LEALP acknowledges and agrees that LEALP, its successors, assigns, or tenants shall not treat, store, or dispose of any Hazardous Matter on or below the Project Site and shall

CONFIDENTIAL DRAFT

maintain generator-only status; _provided_, however, that LEALP, its successors, assigns, or tenants may accumulate such Hazardous Matters as allowed under applicable laws and regulations for off-site treatment, storage, or disposal so long as such Hazardous Matters are generated on-site and may store commercial products purchased for use on-site which may contain such Hazardous Matters

26.05    The parties agree that any contract or deed for transfer of possession in whole or part of the Project Site through sale, lease, or otherwise to any successor, assign, or tenant shall incorporate the obligations set forth above in Sections 26.03 and 26.04 and that these obligations shall bind and inure to the benefit of any successor, assign, or tenant.

26.06    (a)    Delphi shall indemnify and hold LEALP harmless from and against any and all liabilities, damages, penalties, orders, complaints, or fines (including without limitation, reasonable costs of investigation, reasonable costs associated with remediation, responses, removal or corrective actions, or financial assurances, and reasonable attorneys' fees, but in no event shall such terms include consequential damages such as, by way of example and not limitation, loss of use, loss of profits or loss of business opportunity) (any or all of which are hereinafter referred to as "Claims") arising from, out of, or by reason of: (a) any release of a Hazardous Matter that occurred prior to October 17, 1990 which constituted a violation of an applicable federal, state, or local environmental law, regulation

- 58 -

CONFIDENTIAL DRAFT

or ordinance in effect as of October 17, 1990, or (b) off-site treatment, storage, or disposal, or cleanup or remediation associated therewith, of hazardous substances which originated from the Project Site prior to October 17, 1990.

(b)  LEALP shall indemnify and hold Delphi harmless from and against any Claims which Delphi may be subjected to as a result of (a) any release of a Hazardous Matter which constitutes a violation of any applicable federal, state, or local environmental law, regulation, or ordinance that occurs at the Project Site on or after October 17, 1990 (except if caused by Delphi or its agents, contractors or employees on or after October 17, 1990), or (b) off-site treatment, storage, or disposal, or cleanup or remediation associated therewith, or hazardous substances which originated from the Project Site on or after October 17, 1990.

(c)  The right of indemnification set forth in §26.06(a) and (b) shall be subject to the following terms and conditions:

(1)  For purposes of this section the term "release" shall mean any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment of a reportable quantity as defined under CERCLA of a hazardous substance or hazardous waste or that amount of a hazardous substance or hazardous waste which results in cleanup, removal, or remediation liability being imposed in an

CONFIDENTIAL DRAFT

action brought by a local, state, or federal agency which action could have been brought under statutes in existence at Closing.

(2)    A party, shall upon discovery or notice of any release of a Hazardous Matter which may give rise to a claim under this §26.06 by either party, promptly verbally notify the other party.  Such verbal notice shall be promptly followed by written confirmation, but in no event later than ten (10) days from the date of discovery or notice.

(3)    A party, upon discovering or first learning of any such release shall, if required by law, properly notify the appropriate state or federal agency and shall simultaneously, or as soon as possible after notifying the appropriate government agency, inform the other party that it has notified such agency.

(4)    (i)    In the event of dispute regarding the origin of or responsibility for any release of a Hazardous Matter, the parties shall use their best efforts to resolve such dispute.  If the parties are unable to agree upon the origin of the release, then the parties shall hire a mutually agreeable independent environmental consultant to resolve the dispute either by determining the origin and time of the release or by apportioning responsibility between the parties.  The consultant's decision shall be binding upon the parties.  The costs incurred in hiring the consultant in this resolution process shall be shared equally by the parties.  The parties acknowledge and agree that the contract under which the consultant may be hired shall clearly

- 60 -

CONFIDENTIAL DRAFT

state that the consultant is being hired only to resolve the dispute related to the source of the release of a Hazardous Matter, and in no event will be retained by either party to conduct any resulting remediation or cleanup of the release.

(ii)  Following identification of the origin of any such release, the party responsible or determined to be responsible by the consultant for such release shall remediate or undertake cleanup as required under specifically applicable environmental laws, regulations, or ordinances and shall satisfy any reporting obligations.

(5)  The parties mutually agree to provide each other with copies of any data, results, or reports and any correspondence with any local, state, or federal agencies regarding any such release.

(6)  Neither party shall be obligated to indemnify the other for damages otherwise governed by this §26.06:  (i) to the extent that a claim for indemnification results from the failure to notify the other party as provided in Paragraph (C)(2) hereof, or (ii) if, except as provided in Paragraph (C)(8) hereof, the party seeking indemnification has negotiated and/or agreed to remediate or settle a claim for which indemnification may be sought without the prior written approval of the other party.

(7)  In the event any release of a Hazardous Matter results in a formal claim for indemnification hereunder, and provided all of the obligations of the party to be indemnified

- 61 -

CONFIDENTIAL DRAFT

(the "Indemnified Party") have been fulfilled as set forth above, the other party (the "Indemnifying Party") shall, upon prompt written notice of any such claim, undertake the defense thereof by representatives reasonably acceptable to the Indemnified Party.

(8)  If the Indemnifying Party, within a reasonable time after notice of any such claim for indemnification, fails to defend such claim, the Indemnified Party shall have the right to undertake the defense, compromise, or settlement of such claim on behalf of and for the account and risk of the Indemnifying Party, which may include but is not limited to expenses (including attorney fees) and liabilities of the Indemnified Party as well as any money damages or other money payments resulting from the defense, compromise, or settlement of such claim; provided, however, the Indemnifying Party shall have the right, upon advance written notice, to assume the defense of such claim prior to settlement, compromise, or final resolution thereof, but such assumption shall not relieve the Indemnifying Party of any costs incurred by the Indemnified Party up to the date of such assumption.

(9)  LEALP agrees that any contract for transfer of possession in whole or part of the Project Site through sale, lease, or otherwise shall incorporate the obligations set forth above in this §26.06.

(10)  The parties agree that the indemnification obligations set forth in this §26.06 survive the expiration or

- 62 -

CONFIDENTIAL DRAFT

termination of this Amended and Restated Energy Sales Agreement but shall bind and inure only to the benefit of the respective initial successor or initial assign of the parties or the Lender in the exercise of its remedies.

**ARTICLE XXVII - <u>Notices</u>**

27.01  Except as otherwise specifically provided for in this Amended and Restated Energy Sales Agreement, all Notices or other communications required or permitted hereunder will be in writing and deemed given if delivered personally, or if deposited in the U.S. mail, certified mail, postage prepaid, or delivered to a nationally recognized express mail service, charges prepaid, receipt obtained, and in any case addressed as follows:

**<u>Delphi Automotive Systems, LLC</u>**

One of the following three          Lockport Energy Associates, L.P.
   officials:                       One North Lexington, Ave
                                    White Plains, New York

                                    Attn:  President

with a copy to:

Manager of Plant and
Environmental Engineering
Harrison Division
Building 6
200 Upper Mountain Road
Lockport, NY 14094


<u>and</u>

                                    **Lockport Energy Associates, L.P.**

                                    Attn: Thomas J. Gesicki
                                    Senior Vice President

- 63 -

CONFIDENTIAL DRAFT

or to such other person or address as the addressee may have specified in a Notice duly given as provided herein.

**ARTICLE XXVIII -  No Joint Venture**

28.01 It is expressly agreed and understood that this Amended and Restated Energy Sales Agreement shall not be deemed or construed so as to create a joint venture or partnership between LEALP and Delphi.

**ARTICLE XXIX  - <u>Non-Waiver</u>**

29.01  No provision of this Amended and Restated Energy Sales Agreement shall be considered waived by either party unless such waiver is given in writing.  The failure of either party to insist on strict performance of any of the provisions of this Amended and Restated Energy Sales Agreement shall not be construed as a waiver of any such provision or the relinquishment of any rights hereunder in the future, but the same shall continue and remain in full force and effect.

CONFIDENTIAL DRAFT

**ARTICLE XXX   -  <u>Assignment</u>**


30.01    LEALP may not transfer, assign or in any way convey all or any part of its rights and obligations herein to any party without prior written approval of Delphi, which approval shall not be unreasonably withheld, <u>provided</u>, however, that LEALP may transfer its rights hereunder to the Lender, NYSEG and their respective successors and assigns.  Delphi may not transfer, in whole or in part, its rights and obligations hereunder to any successor or transferee of the Delphi Lockport facility without prior written approval of LEALP,.  Any such transfer by Delphi during the Initial Term shall also include assumption by the transferee of Delphi's obligation to take and pay for the Steam Minimum.

**ARTICLE XXXI - <u>Article Headings</u>**


31.01    The headings used in this Amended and Restated Energy Sales Agreement are for convenience only and shall not affect the construction of any terms of this Amended and Restated Energy Sales Agreement.

CONFIDENTIAL DRAFT

**ARTICLE XXXII - <u>Governing Law/Forum</u>**

32.01    This Amended and Restated Energy Sales Agreement will be governed by and construed in accordance with the laws of the State of New York.   Any judicial action instituted as a result of a breach of this Amended and Restated Energy Sales Agreement shall be instituted in a state or federal court located in the State of New York.

**ARTICLE XXXIII - <u>Entire Agreement</u>**

33.01    This Amended and Restated Energy Sales Agreement, including the Exhibits and the New Exhibits, and made a part hereof, shall completely and fully supersede all other prior understandings or agreements, both written and oral, relating to the subject matter hereof.   This Amended and Restated Energy Sales Agreement, including the Surviving Exhibits and the New Exhibits attached hereto and made a part hereof shall constitute the entire Amended and Restated Energy Sales Agreement between the parties, and no amendment or modification shall be effective except in a writing signed by duly authorized representatives of both parties.

- 66 -

CONFIDENTIAL DRAFT

**ARTICLE  XXXIV  -  <u>Arbitration</u>**

34.01    In the event of a dispute arising under this agreement, upon the written consent of both parties the dispute may be resolved through arbitration.  In such event the arbitration shall be conducted in accordance with the rules of the American Arbitration Association and shall be held at a mutually agreed upon site in New York State.

**ARTICLE XXXV  -  <u>Counterparts</u>**

35.01    This Amended and Restated Energy Sales Agreement may be executed in several counterparts, each of which shall be considered an original and all of which shall constitute but one and the same instrument.

**ARTICLE XXXVI - <u>Complementary Agreements</u>**

36.01    This Amended and Restated Energy Sales Agreement is to be read and interpreted in a manner that will complement the terms and conditions contained in the Licensing Agreements and the Easements between the parties. However, to the extent that the terms of those exhibits are deemed to be inconsistent with those contained herein, despite every effort to reconcile same, the terms of this Amended and Restated Energy Sales Agreement shall control.

- 67 -

CONFIDENTIAL DRAFT
**[require notarized certificate of authority from officers of Parties]**

IN WITNESS WHEREOF, LEALP and DELPHI have caused this Amended and Restated Energy Sales Agreement to be executed by their proper, duly authorized officers and their respective seals to be hereunto affixed and attested as of the first date above written.

LOCKPORT ENERGY ASSOCIATES, L.P.

By:  FCI Lockport GP, Inc.
     its General Partner

Attest:                                By:  _____

By:  _____           Name: _____

Name: _____          Title: _____

Title: _____         Date: _____


DELPHI Automotive Systems, LLC, THERMAL AND INTERIOR DIVISION

Attest:                                By:  _____

By:  _____           Name: _____

Name: _____          Title: _____

Title: _____         Date: _____

- 68 -

Exhibit AA
to
Energy Sales Agreement

**Exhibit AA**

**Payments to Delphi**

Capitalized terms used in this Exhibit AA and not defined herein shall have the meanings ascribed to them in the Amended and Restated Energy Sales Agreement.

In consideration for terminating electricity sales during the Initial Term, LEALP shall pay to NYSEG, as directed by Delphi an amount equal to $3,350,000 (the "Electricity Termination Payment,"), payable on the Effective Date. In addition, in consideration for terminating the Option Agreement (Exhibit Q), LEALP shall pay to Delphi (the "Option Termination Payment,") as defined below, payable within sixty days of the Effective Date and in no event later than June 30, 2006.

Option Termination Payment = (80% x Net Gas Savings) – $3.35 million

Net Gas Savings = HR x DED x (ANG x $D_w$ + GDI x $D_p$) – ECP x DED x ($D_w$ + $D_p$)

Where:

HR    =    9.1 MMBtus/Mwhr, the average net plant heat rate.

DED  =    409.836 Mwhrs, the avoided daily electricity delivery.

ANG  =    The average forward price of natural gas, expressed in $/MMBtu, for delivery at "Henry Hub" as published by the New York Mercantile Exchange at the close of business on the Determination Date for those days included in the definition of $D_w$.

GDI  =    The lower of:  (a) the price of natural gas, expressed in $/MMBtu, for the Determination Date as published in the Gas Daily Index for delivery at "Henry Hub"at the close of business on the Determination Date; or (b) the average forward price of natural gas, expressed in $/MMBtu, as published in the Gas Daily Index at the close of business on Determination Date for the last three days included in the definition of $D_p$.

$D_w$    =    Number of days remaining in the Initial Term excluding those days during the calendar month which includes the Effective Date.

$D_p$    =    Number of days in the calendar month that includes the Effective Date from the Effective Date through the end of the month, such days to exclude the Effective Date, but include the last day of the month.

ECP =    $30 per Mwhr, the avoided electricity contract price.

Determination Date =   The date that LEALP sells the excess gas to a third party.  In the event that LEALP does not sell gas forward with a third party by the fifteenth business date following the Effective Date, the Determination Date shall be the fifteenth business day following the Effective Date.

Exhibit C
List Of Agreements, Amendments,
Easements and Licenses Subject To Modification

(i) Termination Agreement between Delphi, NYSEG and NYPA, dated ___, 2006;

(ii) Amendment No. 2 to the Main Transmission Line Easement, dated ____, 2006;

(iii) Amendment No. 2 to the Overhead Piping and Wiring Licensing Agreement, dated ____, 2006;

(iv) Amendment No. 2 to the Oil Storage Tank Licensing Agreement, dated ____, 2006;

(v) Amendment No. 1 to the Natural Gas Pipeline Easement, dated ____, 2006;

(vi) Amendment No. 1 to the Ingress and Egress Easement, dated ____, 2006;

(vii) Amendment No. 1 to the Fuel Truck Ingress and Egress Licensing Agreement, dated ____, 2006;

(viii) Amendment No. 1 to the Rail Car Ingress and Egress Licensing Agreement, dated ____, 2006;

(ix) Storm Water Drainage Culverts Easement, dated ____, 2006;

(x) Overhead Piping and Wiring Licensing Agreement, dated April 22, 1991;

(xi) Amendment No. 1 to the Overhead Piping and Wiring Licensing Agreement, dated February 22, 1993;

(xii) Main Transmission Line Easement, dated April 22, 1991;

(xiii) Amendment No. 1 to Main Transmission Line Easement, dated February 22, 1993;

(xiv) Fuel Truck Ingress and Egress Licensing Agreement;

(xv) Oil Storage Tank Licensing Agreement, dated April 22, 1991;

(xvi) Amendment No. 1 to the Oil Storage Tank Licensing Agreement, dated February 22, 1993;

(xvii) Rail Car Ingress and Egress Licensing Agreement, dated February 22, 1993;

(xviii) License to Operate and Maintain Certain Harrison Equipment, dated April 22, 1991;

(xix) Natural Gas Pipeline Easement, dated April 22, 1991;

(xx) Backup Boiler Agreement, dated January 11, 1991;

(xxi) Amendment No. 1 to Ingress Egress Easement, dated  _____, 2006;

(xxii) Ingress Egress Easement, dated April 22, 1991.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)


Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                           :
        In re                              :    Chapter 11
                                           :
DELPHI CORPORATION et al.,                 :    Case No. 05-44481 (RDD)
                                           :
                       Debtors.            :    (Jointly Administered)
                                           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

DECLARATION OF MATTHEW J. ZARNOSKY IN SUPPORT OF MOTION FOR
ORDER UNDER 11 U.S.C. §§ 362, 363, AND 365 AUTHORIZING DEBTORS TO (I)
OBTAIN SUBSTANTIAL IMPROVEMENT IN ENERGY COSTS BY
MODIFYING AGREEMENTS WITH LOCKPORT ENERGY ASSOCIATES L.P. AND
NEW YORK STATE ELECTRIC AND GAS CORPORATION, (II) ASSUME
MODIFIED AGREEMENT WITH LOCKPORT ENERGY ASSOCIATES L.P.,
AND (III) CONSENT TO RELIEF FROM AUTOMATIC STAY FOR LIMITED
PURPOSE OF ALLOWING LOCKPORT ENERGY L.P. TO RECORD EASEMENTS

I, Matthew J. Zarnosky, declare that the following is true to the best of my knowledge, information, and belief:

1.   I am a Facility Plant Engineer of Delphi Corporation ("Delphi"), debtor and debtor-in-possession in the above-captioned chapter 11 cases (collectively, the "Debtors"). I have held this position for five years. I am familiar with the Debtors' operations, their process of obtaining electrical services, and the prices customarily charged for such services in the industry.

2.   I submit this affidavit in support of this Motion For order under 11 U.S.C. §§ 362, 363, and 365 Authorizing Debtors To (i) Obtain Substantial Improvement in Energy Costs By Modifying Agreements With Lockport Energy Associates L.P. ("Lockport Energy"), the Power Authority of the State of New York ("NYPA"), and New York State Electric and Gas Corporation ("NYSEG"), (ii) Assume Modified Agreement with Lockport Energy, dated February 17, 2005, and (iii) Consent To Relief From Automatic Stay For Limited Purpose Of Allowing Lockport Energy L.P. To Record Easements (the "Motion"). Pursuant to the Motion, the Debtors seek to obtain substantial improvement in energy costs by (i) modifying (a) that certain Settlement Agreement, dated August 14, 1995, by and among General Motors Corporation ("GM"), NYPA, and NYSEG (the "Settlement Agreement"), (b) that certain Energy Sales Agreement, dated April 22, 1991, by and between GM  and Lockport Energy, as amended (the "Energy Sales Agreement"), and (c) all amendments, supplements, exhibits, waivers, licenses, easements, side letters, and ancillary documents related thereto (collectively, the "Agreements"), (ii) assuming the modified Energy Sales Agreement, on the terms and conditions described in the Motion and in the proposed modified Settlement Agreement and Energy Sales Agreement, and (iii) consenting to relief from the automatic stay for the limited purpose of allowing Lockport Energy to record the easements existing under the Energy Sales Agreement and which will continue to

exist as modified under the modified Energy Sales Agreement (the "Easements").  I

understand that the relief requested herein is subject to the execution of definitive

documentation acceptable to the Debtors.

   3. I believe that modification of the Agreements and assumption of the

modified Energy Sales Agreement will allow the Debtors to obtain significant improvement

in energy costs relating to the Debtors' Thermal & Interior Systems Facility, located at 200

Upper Mountain Road, Lockport, New York (the "Lockport Facility").

   4. The Lockport Facility's power needs are supplied under the Agreements.

Pursuant to the Service Agreement, dated April 12, 1989, by and among NYPA, NYSEG,

and GM (the "Service Agreement"), NYSEG currently acquires from NYPA and provides to

Delphi Automotive Systems, LLC, as GM's successor in interest,[1] certain low-priced

hydropower, designated as expansion power ("Expansion Power"), for usage at the Lockport

Facility.  A dispute arose among NYPA, NYSEG, and GM regarding the sale and use of

Expansion Power under the Service Agreement and the parties entered into the Settlement

Agreement to resolve their dispute.  The Settlement Agreement superseded and replaced the

Service Agreement and designated the manner in which the electricity needs of the Lockport

Facility will be supplied, including how the Expansion Power will be allocated between the

Lockport Facility and NYSEG.  Under the Energy Sales Agreement, Lockport Energy

designed, constructed, and operates a cogeneration system adjacent to the Lockport Facility

(the "Cogeneration System") which uses natural gas to generate and provide electricity and

steam service for usage at the Lockport Facility.  The Energy Sales Agreement provides that

Lockport Energy will provide all of the Lockport Facility's electricity needs other than the

---

[1] Prior to January 1, 1999, GM operated Delphi's businesses through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Debtors under a Master Separation Agreement between Delphi and GM.  In connection with these transactions, GM assigned to Delphi its rights and obligations under the Agreements.

Expansion Power that Delphi receives from NYPA through NYSEG under the Settlement Agreement.

5.    Lockport Energy and Delphi have concluded that modification of the Agreements and the assumption of the modified Energy Sales Agreement will result in significant ongoing cost savings for the Debtors.  The Debtors and Lockport Energy have determined that Lockport Energy should be allowed to continue using the Easements under the modified Energy Sales Agreement until December 27, 2027.  The Debtors have agreed to lift the automatic stay for the limited purpose of allowing Lockport Energy to record the Easements as modified under the modified Energy Sales Agreement.

6.    The Debtors' acceptance of Lockport Energy's proposal to modify the Agreements and assume the Energy Sales Agreements as provided herein is conditioned upon Delphi's ability to obtain an additional 10 mega watts of Expansion Power from NYPA. An application for that additional Expansion Power is pending before NYPA.  A new contract with NYPA for the supply of additional 10 mega watts of Expansion Power will secure the availability of low-cost power to the Lockport Facility for at least three years beyond the term of the Energy Sales Agreement, and allow for electricity cost savings for the Debtors in the approximate amount of $14 million during the 2006-2011 period.  In addition, the Energy Sales Agreement is scheduled to expire on December 27, 2007, whereas a new contract with NYPA will be in force at least until April 1, 2011.  Accordingly, I believe that entering into a new contract with NYPA for the provision of additional 10 mega watts of Expansion Power is critical to the Lockport Facility.  Lockport Energy will continue to supply steam to the Lockport Facility at a reduced cost.

7.    At the time of the execution of the Energy Sales Agreement in 1991, Lockport Energy entered into long-term contracts with third parties for the supply of natural gas for the operation of the Cogeneration System.  The proposed modifications to the

Agreements should reduce or eliminate Lockport Energy's role as a supplier of electricity to

the Lockport Facility, thereby creating an opportunity for Lockport Energy to sell to third

parties some of the gas used for the operation of the Cogeneration System at a profit which it

will share with Delphi.  The current estimate of Delphi's share of the profit from these sales

to third parties of the natural gas is approximately $6 million (the "Price Estimate").  In

addition, Lockport Energy has agreed to pay NYSEG approximately $3 million as

compensation for the losses it will incur as a result of the modification of the Settlement

Agreement (the "Additional Payment").  The funds for the payments by Lockport Energy to

Delphi and NYSEG will be generated by Lockport Energy's sale to third parties of the natural

gas currently under contract that otherwise would be used to satisfy Delphi's electricity

requirements under the Energy Sales Agreement. Lockport Energy will sell the natural gas

and will pay to Delphi the Price Estimate within 60 days of the latter of (a) the

commencement of delivery to the Lockport Facility of the 10 mega watts of Expansion

Power by NYPA or (b) entry of a final order of this Court approving the Motion (the

"Payment Date").

8.    The Additional Payment will be made within two business days after all of

the following occur: (i) entry of a final order approving the Motion, (ii) commencement of

delivery to the Lockport Facility of the 10 mega watts of Expansion Power by NYPA, and

(iii) execution of the amended Agreements between Lockport Energy and Delphi.  I believe

that authorizing the Debtors to consummate this transaction and to assume the modified

Energy Sales Agreement on the negotiated terms described in the Motion will allow the

Debtors to obtain valuable, low-cost electricity and steam power.  I believe that the

negotiated terms are favorable to the Debtors and are in the best interest of their estates.

9.    The Debtors estimate that the amount necessary to cure the defaults

existing under the Energy Sales Agreement is $521,975.61 (the "Cure Amount"), which is

the total amount due for actual steam supplied by Lockport Energy to the Lockport Facility prior to October 8, 2005. The savings will exceed the payment of the Cure Amount within 10 months. The Debtors and Lockport Energy have agreed that the Cure Amount will be offset against the Price Estimate on the Payment Date. I believe that even with the payment of the Cure Amount, the assumption of the modified Energy Sales Agreement is beneficial to the Debtors' estates and constitutes substantial savings on energy costs.

10. The Debtors have determined that modifying the Agreements to allow the Debtors to terminate the provision of electricity to the Lockport Facility and to obtain valuable, low-priced electricity from NYPA for the duration of the new contracts with NYPA will substantially benefit the Lockport Facility by lowering its energy costs. I believe that modification of the Agreements, the assumption of the modified Energy Sales Agreement, and the lifting of the automatic stay to allow Lockport Energy to record the modified Easements is favorable to the Debtors and is in the best interests of their estates.

11. I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: February 17, 2006
Lockport, New York

/s/ Matthew J. Zarnosky
 MATTHEW J. ZARNOSKY

**Hearing Date and Time: March 9, 2006 at 10:00 a.m.**
**Objection Deadline:  March 2, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
      Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                          :
           In re                                          :     Chapter 11
                                                          :
     DELPHI CORPORATION, et al.,                          :     Case No. 05-44481 (RDD)
                                                          :
                                   Debtors.               :     (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

NOTICE OF MOTION FOR ORDER UNDER 11 U.S.C. §§ 362, 363, AND 365
AUTHORIZING DEBTORS TO (I) OBTAIN SIGNIFICANT IMPROVEMENT IN
ENERGY COSTS BY MODIFYING AGREEMENTS WITH LOCKPORT ENERGY
ASSOCIATES L.P. AND NEW YORK STATE ELECTRIC AND GAS CORPORATION,
(II) ASSUME MODIFIED AGREEMENT WITH LOCKPORT ENERGY ASSOCIATES
L.P., AND (III) CONSENT TO RELIEF FROM AUTOMATIC STAY FOR
LIMITED PURPOSE OF ALLOWING LOCKPORT ENERGY
ASSOCIATES L.P. TO RECORD MODIFIED EASEMENTS

PLEASE TAKE NOTICE that on February 17, 2006, Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in

the above-captioned cases, filed a Motion For Order Under 11 U.S.C. §§ 362, 363, And

365 Authorizing Debtors To (I) Obtain Significant Improvement In Energy Costs By

Modifying Agreements With Lockport Energy Associates L.P. And New York State

Electric And Gas Corporation, (II) Assume Modified Agreement With Lockport Energy

Associates L.P., And (III) Consent To Relief From Automatic Stay For Limited Purpose Of

Allowing Lockport Energy Associates L.P. To Record Modified Easements (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of

the Motion will be held on March 9, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the

"Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, Room 610, New York, New York,

10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion

(a) must be in writing, (b) must conform to the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the Southern District of New York and the Order Under 11

U.S.C. §§ 102 (1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And

2

Administrative Procedures, And (III) Scheduling An Initial Case Conference In

Accordance With Local Bankr. R. 1007-2(e) (the "Case Management Order") (Docket No.

245), (c) must be filed with the Bankruptcy Court in accordance with General Order M-242

(as amended) – registered users of the Bankruptcy Court's case filing system must file

electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word

processing format), (d) must be submitted in hard-copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) must be served upon

(i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel),

(ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker

Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for

the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP,

425 Lexington Avenue, New York, New York 10017 (Att'n:  Kenneth S. Ziman), (iv)

counsel for the agent under the Debtors' postpetition credit facility, Davis Polk & Wardell,

450 Lexington Avenue, New York, New York 10017 (Att'n:  Marlane Melican), (v)

counsel for the official committee of unsecured creditors, Latham & Watkins, 885 Third

Avenue, New York, New York, 10022 (Att'n:  Robert J. Rosenberg and Mark A. Broude),

and (vi) the Office of the United States Trustee for the Southern District of New York, 33

Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard), in

each case so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time)** on

**March 2, 2005** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Case Management Order will be considered by the Bankruptcy

Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance

with the procedures set forth herein and in the Case Management Order, the Bankruptcy Court

may enter an order granting the Motion without further notice.

Dated: New York, New York
         February 17, 2006

                    SKADDEN, ARPS, SLATE, MEAGHER
                        & FLOM LLP

                    By:  /s/ John Wm. Butler, Jr._____
                         John Wm. Butler, Jr. (JB 4711)
                         John K. Lyons (JL 4951)
                         Ron E. Meisler (RM 3026)
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois  60606
                    (312) 407-0700

                             - and -

                    By:  /s/ Kayalyn A. Marafioti_____
                         Kayalyn A. Marafioti (KM 9632)
                         Thomas J. Matz (TM 5986)
                    Four Times Square
                    New York, New York  10036
                    (212) 735-3000

                    Attorneys for Delphi Corporation, et al.,
                      Debtors and Debtors-in-Possession

4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                               :
        In re                         :     Chapter 11
                               :
DELPHI CORPORATION et al.,      :     Case No. 05-44481 (RDD)
                               :
                Debtors.    :     (Jointly Administered)
                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 362, 363, AND 365 AUTHORIZING
DEBTORS TO (I) OBTAIN SIGNIFICANT IMPROVEMENT IN ENERGY
COSTS BY MODIFYING AGREEMENTS WITH LOCKPORT ENERGY
ASSOCIATES L.P. AND NEW YORK STATE ELECTRIC AND GAS
CORPORATION, (II) ASSUME MODIFIED AGREEMENT WITH LOCKPORT
ENERGY ASSOCIATES L.P., AND (III) CONSENT TO RELIEF FROM
AUTOMATIC STAY FOR LIMITED PURPOSE OF ALLOWING
<u>LOCKPORT ENERGY ASSOCIATES L.P. TO RECORD MODIFIED EASEMENTS</u>

("LOCKPORT ENERGY AGREEMENTS MODIFICATION AND
ASSUMPTION ORDER")

Upon the motion, dated February 17, 2006 (the "Motion"), of Delphi

Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-

in-possession in the above-captioned cases (collectively, the "Debtors"), for an order (the

"Order") under 11 U.S.C. §§ 362, 363, and 365 Authorizing The Debtors To (i) Obtain

Significant Improvement In Energy Costs By Modifying Agreements With Lockport

Energy Associates L.P. ("Lockport Energy"), the Power Authority of the State of New

York ("NYPA"), and New York State Electric and Gas Corporation ("NYSEG"), (ii)

Assume Modified Agreement with Lockport Energy, and (iii) Consent To Relief From

Automatic Stay For Limited Purpose Of Allowing Lockport Energy Associates L.P. To

Record Modified Easements; and upon the Declaration Of Matthew J. Zarnosky,

executed on February 17, 2006, in support of the Motion; and upon the record of the

hearing held on the Motion; and this Court having determined that the relief requested in

the Motion is in the best interests of the Debtors, their estates, their creditors, and other

parties-in-interest; and this Court having determined that the parties to the transactions

contemplated in the Motion have acted in good faith; and it appearing that proper and

adequate notice of the Motion has been given and that no other or further notice is

necessary; and after due deliberation thereon; and good and sufficient cause appearing

therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The Debtors have exercised reasonable business judgment in

deciding to obtain significant improvement in energy costs by (i) modifying (a) that

certain Settlement Agreement, dated August 14, 1995, by and among General Motors

Corporation ("GM"), NYPA, and NYSEG (the "Settlement Agreement"), (b) that certain

Energy Sales Agreement, dated April 22, 1991, by and between GM and Lockport

Energy, as amended (the "Energy Sales Agreement"), and (c) all amendments,

supplements, exhibits, easements, licenses, relinquishment of rights, waivers, side letters,

and ancillary documents related thereto (collectively, the "Agreements"),[1] (ii) assuming

the modified Energy Sales Agreement, (iii) consenting to relief from the automatic stay

for the limited purpose of allowing Lockport Energy to record the easements existing

under the Energy Sales Agreement and which will continue to exist as modified under the

modified Energy Sales Agreement (the "Easements").[2]

---

[1] As described in the Motion, prior to January 1, 1999, GM operated Delphi's businesses through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Debtors under a Master Separation Agreement between Delphi and GM. In connection with these transactions, GM assigned to Delphi its rights and obligations under the Agreements.

[2] A list of Easements as modified under the Energy Sales Agreement is attached as Exhibit C to the Motion.

2

B.      The assumption of the modified Energy Sales Agreement, the modification of the Agreements, and the cure of the existing defaults under the Energy Sales Agreement are reasonable and appropriate under the circumstances.

C.      The cure of the outstanding prepetition obligations under the Energy Sales Agreement, as set forth in the Motion, satisfies the statutory requirements of section 365(b)(1) of the Bankruptcy Code.

D.      Cause exists to grant relief from the automatic stay under section 362(d)(1) for the limited purpose of allowing Lockport Energy to record the Easements.

IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED.

2.      The Debtors are authorized to take any and all actions necessary or desirable to modify the Agreements based upon the terms and conditions described in the Memorandum of Understanding between Delphi, NYSEG, and Lockport Energy attached as Exhibit A to the Motion.

3.      The Debtors are authorized to take any and all actions necessary or desirable to modify the Energy Sales Agreement substantially in the form attached as Exhibit B the Motion.

4.      The Debtors are authorized to take any and all actions to assume the modified Energy Sales Agreement.

5.      The relief granted herein is subject to the execution of definitive documentation acceptable to the Debtors.

3

6.      Except as expressly waived under the modified Agreements, all rights and obligations under the Energy Sales Agreement, including all amendments, supplements, exhibits, easements, licenses, waivers, site letters, and ancillary documents related hereto, shall continue, survive and be performed under the modified Energy Sales Agreement.

7.      Lockport Energy shall pay the Debtors the share of the profit from these sales of the natural gas to third parties in the approximate amount of $6 million (the "Price Estimate") within 60 days of the latter of (a) the commencement of delivery to the Lockport Facility of the 10 mega watts of Expansion Power by NYPA or (b) the date when this Order becomes final (the "Payment Date").

8.      Lockport Energy shall pay NYSEG the sum of approximately $3.35 million as compensation for losses it will incur as a result of the modification of the Settlement Agreement within two business days after all of the following occur: (i) the date when this Order becomes final, (ii) delivery to the Lockport Facility of the 10 mega watts of Expansion Power by NYPA has commenced, and (iii) the amended Agreements between the Lockport Energy and Delphi have been executed.

9.      Lockport Energy is authorized to offset the existing defaults under the Energy Sales Agreement, which equals no more than $521,975.61 (the "Cure Amount") against the Price Estimate on the Payment Date.  Upon payment of the Cure Amount, all prepetition defaults shall be deemed cured.

10.      The postpetition obligations arising under the modified Energy Sales Agreement shall have administrative priority status pursuant to section 503(b) of the Bankruptcy Code.

4

11.     Pursuant to section 362(d) of the Bankruptcy Code, the automatic stay shall be lifted for the limited purpose of allowing Lockport Energy to record the Easements.

12.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

13.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:   New York, New York
         March __, 2006


_____
  UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT K

| Contact | Company | Address 1 | Address 2 | City | State | Zip | Fax |
|---------|---------|-----------|-----------|------|-------|-----|-----|
| Al Coven | UAW Local 699 | 1191 Bagley St | | Saginaw | MI | 48601 | 989-753-6463 |
| Bennie Calloway | UAW Local 2188 | 342 Perry House Rd. | | Fitzgerald | GA | 31750 | 770-432-2673 |
| Bill Riddle | UAW Local 659 | 1222 Glenwood | | Flint | MI | 48502 | |
| Carl Kolb | IUE-CWA Local 698 | PO Box 86 | | Clinton | MS | 39060 | 601-925-2581 |
| Charles Scherer | IUOE 18S | 12106 Rhodes Rd | | Wayne | OH | 43466 | 216-432-0370 |
| Dan Riley | IBEW - Delphi E&C | 7929 S. Howell Ave. | MC: 1-2 | Oak Creek | WI | 53154 | |
| Danny Baird | IUOE 101S | 6601 Winchester | | Kansas City | MO | 64133 | |
| Darel Green | UAW Local 1021 | 804 Meadowbrook Dr. | | Olathe | KS | 66062 | 913-782-8478 |
| Darrell Shepard | UAW Local 2157 | 4403 City View Dr. | | Wichita Falls | TX | 76305 | 214-267-6565 |
| David York | UAW Local 438 | 7435 S. Howell Ave. | | Oak Creek | WI | 53154 | 414-762-2571 |
| Dennis Bingham | USW Local 87 | 21 Abbey Avenue | | Dayton | OH | 45417 | 937-433-1770 |
| Edwin Hill | IBEW | 900 Seventh Street NW | | Washington | DC | 20001 | 202-728-7676 |
| Frank Andrews | UAW Local 686 | 524 Walnut St. | | Lockport | NY | 14094 | 716-632-1797 |
| Gary Resier | IUE-CWA Local 717 | 2950 Sierra Dr. NW | | Warren | OH | 44483 | 330-395-4875 |
| Henry Reichard | IUE-CWA Automotive Conf Board | 2360 Dorothy Lane | Ste. 201 | Dayton | OH | 45439 | |
| Jack White | UAW Local 167 | 5545 Fieldstone Ct. | | Middleville | MI | 49333 | 616-949-6866 |
| James Clark | IUE-CWA Industrial Division | 501 Third Street NW | | Washington | DC | 20001-2797 | 202-434-1343 |
| James Hurren | UAW Local 467 | 2104 Farmer St. | | Saginaw | MI | 48601 | 989-753-6463 |
| Jeff Curry | IAM District 10 | 1650 South 38th Street | | Milwaukee | WI | 53215 | |
| Joe Buckley | UAW Local 696 | 1543 Alwildy Ave | | Dayton | OH | 45408 | 937-433-1770 |
| John Clark | UAW Local 2031 | 5075 Belmere Dr. | | Manitou Beach | MI | 49253 | 517-263-0015 |
| John Huber | UAW Local 1097 | 221 Dewey Ave | | Rochester | NY | 14608 | 585-458-4360 |
| Kizziah Polke | UAW Local 2083 | c/o Delphi T & I   Garry Gilliam | | Cottondale | AL | 35453 | |
| Larry Phillips | IUE-CWA Local 711 | 4605 Airport Rd. | | Gadsden | AL | 35904 | 601-443-7697 |
| Larry West | IUE-CWA Local 755 | 1675 Woodman Dr. | | Dayton | OH | 45432 | 937-253-4269 |
| Lattie Slusher | UAW Local 913 | 3114 S. Hayes Ave. | | Sandusky | OH | 44870 | 419-893-4073 |
| Leo W Gerard | United Steelworkers | Five Gateway Center | | Pittsburg | PA | 15222 | 412-562-2484 |
| Mark Profitt | IUE-CWA Local 801 | 1250 W. Dorothy Lane | Suite 301 | Dayton | OH | 45439 | 937-395-0078 |
| Mark Sweazy | UAW Local 969 | 3761 Harding Dr. | | Columbus | OH | 43228 | 937-433-1770 |
| Mike Socha | IBEW - Delphi E&S | 7929 S. Howell Ave. | MC: 1B01 | Oak Creek | WI | 53154 | |
| Randal Middleton | IBEW Local 663 | W223 S8625 Chateau Lane | | Big Bend | WI | 53103 | 262-662-0402 |
| Richard Shoemaker | Vice-President GM Department | 8000 E Jefferson | | Detroit | MI | 48214 | 313-823-6016 |
| Rick Zachary | UAW Local 662 | 2715 Rangeline Dr. | | Anderson | IN | 46017 | 317-247-8218 |
| Rob Betts | UAW Local 2151 | 140 64th Ave. | | Coopersville | MI | 49404 | 616-837-5876 |
| Robert Thayer | IAM | 9000 Machinists Place | | Upper Marlboro | MD | 20772-2687 | 301-967-4572 |
| Ron Gettelfinger | UAW President | 8000 E Jefferson | | Detroit | MI | 48214 | 313-823-6016 |
| Russ Reynolds | UAW Local 651 | 3518 Robert T. Longway Blvd. | | Flint | MI | 48506 | 810-767-3206 |
| Scott Painter | IUE-CWA Local 1111 | 1051 S. Rockerfeller Ave. | | Ontario | CA | 91761 | 607-734-6444 |
| Skip Dziedzic | UAW Local 1866 | 7435 S. Howell Ave. | | Oak Creek | WI | 53154 | 414-762-2571 |

| Contact | Company | Address 1 | Address 2 | City | State | Zip | Fax |
|---------|---------|-----------|-----------|------|-------|-----|-----|
| Sona Camp | UAW Local 292 | 1201 W. Alto Rd. | | Kokomo | IN | 46902 | |
| Steve Ishee | UAW Local 2190 | 1 Thames Ave. | | Laurel | MS | 39440 | 615-443-7697 |
| Terry Scruggs | UAW Local 2195 | 20564 Sandy Rd. | | Tanner | AL | 35671 | 716-632-1797 |
| Thomas Charles | IUOE 832S | P.O Box 93310 | | Rochester | NY | 14692 | 405-691-0857 |
| Vincent Giblin | IUOE | 1125 17th Street NW | | Washington | DC | 20036 | 202-778-2688 |
| William Humber | IUE-CWA Local 416 | PO Box 7361 | | North Brunswick | NJ | 08902 | 732-246-5121 |
| ZebWells | IUE-CWA Local 718 | PO Box 1136 | | Brookhaven | MS | 39602 | 412-562-2429 |

In re Delphi Corporation, et al.
Union Counsel - Overnight Mail

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Cohen, Weiss & Simon LLP | Joseph J. Vitale | 330 West 42nd Street | | New York | NY | 10036 | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com | Counsel for International Union, United Automobile, Aerospace and Agriculture Implement Works of America (UAW) |
| Electrical and Space Technicians | Kevin Dodd | 13144 Prairie Ave | | Hawthorne | CA | 90250 | | 310-219-3818 | | |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | 414-271-4500 | 414-271-6308 | jh@previant.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| IAM & AW | Robert V Thayer | 9000 Machinists Place | | Upper Marlboro | MD | 20772 | | 301-967-4572 | | |
| IBEW | Edwin D Hill | 900 Seventh Street NW | | Washington | DC | 20001 | | 202-728-7676 | | |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | 202-429-9100 | 202-778-2641 | rgriffin@iuoe.org | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Intl Union of Operating Engineers | Vincent J Giblin | 1125 17th St NW | | Washington | DC | 20036 | | 202-778-2688 | | |
| IUE-CWA | James D Clark | 501 Third St NW | Sixth Fl | Washington | DC | 20001 | | 202-434-1343 | | |
| IUE-CWA | Peter Mitchell | 501 Third St NW | Sixth Fl | Washington | DC | 20001 | | | | |
| Kennedy, Jennick & Murray, P.C. | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | | | Attorneys for the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communications Workers of America |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communicaitons Workers of America |
| United Auto Workers | Daniel Sherrick | 8000 E Jefferson Ave | | Detroit | MI | 48214 | | | | |
| United Steelworkers Of America | Robert D Clark | Five Gateway Center | | Pittsburgh | PA | 15222 | | 412-562-2429 | | |
| United Steelworkers Of America | General Counsel | Five Gateway Center | | Pittsburgh | PA | 15222 | | | | |

In re Delphi Corporation, et al.
Case No. 05-44481

Page 1 of 1

2/22/2006 10:00 AM
00028567

# EXHIBIT L

In re: Delphi Corporation, et al.
Special Parties - Overnight Mail

| Company | Contact | ADDRESS1 | ADDRESS2 | ADDRESS3 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|---|
| Abbey Gardy Llp | Paul O Paradis | 212 East 39th St | | | New York | NY | 10016 | |
| Abbey Gardy Llp | Mark G Gardy Esq | 212 East 39th St | | | New York | NY | 10016-2754 | |
| Abernathy Sonja | David E Stenson Esq | Liberty Tower | Ste 1210 | 120 W Second St | Dayton | OH | 45402 | |
| Acord Rosetta | | 11101 Fernitz Rd | | | Byron | MI | 48418-9505 | |
| Adler & Associates | Barry D Adler Esq | 30300 Northwestern Hwy | Ste 304 | | Farmington Hills | MI | 48334 | |
| Adler & Associates | Barry D Adler Esq | 30300 Northwestern Hwy Ste | 304 | | Farmington Hills | MI | 48334-3212 | |
| Adorno & Yoss | Thomas L Peterson | Ste 450 | 1000 Vermont Ave Nw | | Washington | DC | 20005 | |
| Akin Gump Strauss Hauer & Feld Llp | Allison Exall | 1700 Pacific Ave | Ste 4100 | | Dallas | FL | 75201 | |
| Akin Gump Strauss Hauer & Feld Llp | Steven M Morgan | 1700 Pacific Ave | Ste 4100 | | Dallas | FL | 75201 | |
| Akin Gump Strauss Hauer & Feld Llp | Steven M Morgan | 1700 Pacific Ave | Ste 4100 | | Dallas | FL | 75201 | |
| Akin Gump Strauss Hauer & Feld Llp | Steven M Morgan | 1700 Pacific Ave | Ste 4100 | | Dallas | FL | 75201 | |
| Alan S Dawes | Robert Stern And Elizabeth Baird | O'melveny & Myers Llp | 1625 Eye St Nw | | Washington | DC | 20006-4001 | |
| Aldridge Brenda | William D Davis Iii | Davis & Associates Pc | 917 Merchants Walk | Ste A | Huntsville | AL | 35801 | |
| Alen J Conard Pc | | 2320 West Jefferson | | | Trenton | MI | 48183-2706 | |
| Alfaro Jose C And Martha | | 304 West 5th St | | | Goodland | KS | 67735 | |
| Allen Brandon | Brandon Allen | Delphi Steering | Alabama Plant 21 | Highway 31 South | Athens | AL | 35613 | |
| Allen Brandon | Brandon Allen | Delphi Steering | Alabama Plant 21 | Highway 31 South | Athens | AL | 35613 | |
| Allison Carl | Freking & Betz | 215 East Ninth St | Fifth Fl | | Cincinnati | OH | 45202 | |
| Allstate Insurance | Robert L Goldenbogen Pc | 511 Fort St | Ste 505 | | Port Huron | MI | 48060 | |
| Alston & Bird | D G Scribner W Clay Massey | One Atlanta Ctr | 1201 West Peachtree St | | Atlanta | GA | 30303 | |
| Anderson Jr Russell | Samael F Prato | 183 East Main St | | | Rochester | NY | 14604 | |
| Anderson Kill & Olick | Judith Yavitz Esquire | 1251 Ave Of The Americas | | | New York | NY | 10020 | |
| Anderson Kill & Olick | Judith Yavitz Esquire | 1251 Ave Of The Americas | | | New York | NY | 10020 | |
| Anderson Kill & Olick | Judith Yavitz Esquire | 1251 Ave Of The Americas | | | New York | NY | 10020 | |
| Anderson Kill & Olick | Judith Yavitz Esquire | 1251 Ave Of The Americas | | | New York | NY | 10020 | |
| Archer & Greiner Pc | Frank D Allen Esq | One Centennial Square | Pobox 3000 | | Haddonfield | NJ | 08033-0968 | |
| Archer Norris | | 2033 Main St | No 800 | | Walnut Creek | CA | 94596 | |
| Atlas Carriers Inc Delphi Corporation | Larry Megal President | Booth St | PO Box 163 | | Searcy | AR | 72143 | |
| Austin Sculpture And Decorative Art Inc | Pam Tierce | 815 Grundy Ave | | | Holbrook | NY | 11741 | |
| Baldwin Sandra L | | 8616 Whitehorn St | | | Romulus | MI | 48174 | |
| Bayko Gibson Carnegie Hagan Schoonmaker & Meyer Llp | Richard M Gibson | 600 Travis | Ste 6500 | | Houston | TX | 77002 | |
| Becherer Kannett & Schweitzer | Mark S Kannett Esq | 2200 Powell St | Ste 805 | | Emeryville | CA | 94608 | |
| Becherer Kannett & Schweitzer | Mark S Kannett Esq | 2200 Powell St | Ste 805 | | Emeryville | CA | 94608 | |
| Becherer Kannett & Schweitzer | Mark S Kannett Esq | 2200 Powell St | Ste 805 | | Emeryville | CA | 94608 | |
| Becherer Kannett & Schweitzer | | 2200 Powell St | Ste 805 | | Emeryville | CA | 94608 | |
| Becherer Kannett & Schweitzer | | 2200 Powell St | Ste 805 | | Emeryville | CA | 94608 | |
| Beers Anderson Jackson Patty & Van Heest Pc | Michael S Jackson | PO Box 1988 | | | Montgomery | AL | 36102-1988 | |
| Bennett Samuelson Reynolds & Allard | | 1951 Webster St | Ste 200 | | Oakland | CA | 94612-2940 | |
| Berry & Berry | | 2930 Lakeshore Ave | | | Oakland | CA | 94610 | |
| Bishop Jr James Denson | | 2900 Trophy Dr | | | Bryon | TX | 77805 | |
| Bishop Sr James Denson And Nelda Maude Bishop | | 2900 Trophy Dr | | | Bryon | TX | 77805 | |
| Blecher & Collins Pc | M M Blesher D R Pepperman | 611 West Sixth St | 20th Fl | | Los Angeles | CA | 90017-3120 | |
| Bowman & Brooke | | 1741 Technology Dr | Ste 200 | | San Jose | CA | 95110-1355 | |
| Bowman And Brooke Llp | Lori A Zirkle Esq | 2901 North Central Ave | Ste 1600 | | Phoenix | AZ | 85012 | |
| Bowman And Brooke Llp | Lori A Zirkle Esq | 2901 North Central Ave | Ste 1600 | | Phoenix | AZ | 85012 | |
| Brady Billy W And Renee | | 5047 Raymond Ave | | | Burton | MI | 48509 | |
| Brent Coon & Associates | | 1220 W Sixth St Ste 303 | | | Cleveland | OH | 44113-1328 | |
| Brittingham Julie & David | Thomas J Intilli | 22 South St Clair | | | Dayton | OH | 45402-1501 | |
| Brobeck Phleger & Harrison | | One Market Plaza | Spear St Tower | 23rd Fl | San Francisco | CA | 94105 | |
| Brown James Lee And Roseleen | | 1605 Beresford Rd | | | North Little Rock | AR | 72116 | |
| Brydon Law Group | | 425 California St | Ste 1400 | | San Francisco | CA | 94104 | |
| Bull & Lifshitz Llp | Peter D Bull Esq | 18 East 41st St | | | New York | NY | 10017 | |
| Burdette James | David Torchi Esq | Tobias Kraus & Torchia | 911 Mercantile Library Bldg | 414 Walnut St | Cincinnati | OH | 45202 | |
| Burke Williams & Sorensen Llp | | 450 Sansome St | Ste 1200 | | San Francisco | CA | 94111 | |
| Burkelaw Agents Inc | | 330 North Wabash | | | Chicago | IL | 60611 | |
| Burkelaw Agents Inc | | 330 North Wabash | | | Chicago | IL | 60611 | |
| Burnham & Brown | | 1901 Harrison St | 11th Fl | | Oakland | CA | 94612-3501 | |
| C Megan Fischer | | 2901 North Central Ave | Ste 1600 | | Phoenix | AZ | 85012-2761 | |
| Cable Manufacturing & Assembly Co | | 1490 Industrial Pkwy | | | Bolivar | OH | 44612-0409 | |
| Cadena Law Firm Pc | | 1017 Montana Ave | | | El Paso | TX | 79902-5411 | |
| Campbell Campbell Edwards & Conroypc | C S Toomey F E Dennison | Woodbury Crossing | 3 South Broad St | Ste 2c | Woodbury | NJ | 08096 | |
| Carrigan Mccloskey & Roberson Llp | John Robertson Esq | 5300 Memorial Dr | Ste 700 | | Houston | TX | 77007 | |
| Carter Sharyl Yvette | Damon Law Office | 441 Vine St | Ste 2900 Carew Tower | | Cincinnati | OH | 45202 | |
| Cellino & Barnes Pc | | 17 Court St 7th Fl | | | Buffalo | NY | 14202 | |
| Chadbourne & Parke Llp | Robert A Swinger | 30 Rockefeller Plaza | | | New York | NY | 10112 | |
| Chadbourne & Parke Llp | Susan St Dennis | 350 S Grand Ave | Ste 3300 | | Los Angeles | CA | 90071 | |
| Chapa Israel | | 275 Battery St | 30th Fl | | San Francisco | CA | 94111 | |
| Chapman Lewis & Swan | Ralph E Chapman Esq | Post Office Box 428 | | | Clarksdale | MS | 38614 | |
| Charles Doty | Sheila M Bossier | Bossier Kitchena Pllc | 1520 N State St | | Jackson | MS | 39202 | |

In re: Delphi Corporation, et al.
Special Parties - Overnight Mail

| Company | Contact | ADDRESS1 | ADDRESS2 | ADDRESS3 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|---|
| Charles Doty | Mikel J Bowers Tim Goss Richard Capshaw | Capshaw Goss Bowers Llp | 3031 Allen St Ste 200 | | Dallas | TX | 75204 | |
| Charles Doty Bankruptcy Counsel | J Walter Newman Iv | 539 Trustmark National Bank | | | Jackson | MS | 39201 | |
| Clark & Scott Pc | Anthony N Fox Esq | PO Box 380548 | | | Birmingham | AL | 35238-0548 | |
| Clark Edgecomb | William C Book | 1221 Mckinney St | Ste 4300 | | Houston | TX | 77010-2010 | |
| Clifford Chance Us Llp | Boyd T Cloern | 2001 K St Nw | | | Washington | DC | 20006-1001 | |
| Clifford Law Offices Pc | Richard F Burke Jr Esq | 120 N Lasalle St | 31st Fl | | Chicago | IL | 60602 | |
| Clifford Law Offices Pc | Richard F Burke Jr Esq | 120 N Lasalle St | 31st Fl | | Chicago | IL | 60602 | |
| Clouse Dunn Hirsch Llp | R Rogge Dunn Esq | 220 Ross Ave | Ste 4900 West | | Dallas | TX | 75202-2889 | |
| Clouse Dunn Hirsch Llp | R Rogge Dunn Esq | 220 Ross Ave | Ste 4900 West | | Dallas | TX | 75202-2889 | |
| Clouse Dunn Hirsch Llp | R Rogge Dunn Esq | 220 Ross Ave | Ste 4900 West | | Dallas | TX | 75202-2889 | |
| Coates & Logan Llc | William P Coates Jr | 6804 W 107th St | Ste 250 | | Overland Pk | KS | 66212 | |
| Cole Cole & Easley Pc | Rex L Easley Jr | 302 West Forrest St | Po Drawer 510 | | Victoria | TX | 77902-0510 | |
| Coleman Michael | Isaiah Lipsey Esq | 17000 West Ten Mile Rd | 2nd Fl | | Southfield | MI | 48075 | |
| Cook Sylvia And Andre Cook Jr And Andrea Cook | | 710 Elk Glen Court | | | Colorado Springs | CO | 80906 | |
| Cooper Larsen | Gary L Cooper | 151 North 3rd Ave | Ste 210 | PO Box 4229 | Pocatello | ID | 83205 | |
| Cooper Larsen | Gary L Cooper | 151 North 3rd Ave | Ste 210 | PO Box 4229 | Pocatello | ID | 83205 | |
| Cooper Larsen | Gary L Cooper | 151 North 3rd Ave | Ste 210 | PO Box 4229 | Pocatello | ID | 83205 | |
| Corus Sec/lp | Champ Lyons Iii Esq | The Highland Building | 2201 Arlington Ave South | | Birmingham | AL | 35205 | |
| Cox Jon C | | 3102 Oak Lawn Ave | Ste600 Lb 164 | | Dallas | TX | 75219 | |
| Ct Corporation | | 111 Eighth Ave | | | New York | NY | 10011 | |
| Cusimano Keener Roberts Kimberley & Miles Pc | Michael L Roberts Esq | 153 South 9th St | | | Gadsden | AL | 35901-3645 | |
| Cusimano Keener Roberts Kimberley & Miles Pc | Michael L Roberts Esq | 153 South 9th St | | | Gadsden | AL | 35901-3645 | |
| Cusimano Keener Roberts | Michael L Roberts | 153 South 9th St | | | Gadsen | AL | 35901 | |
| Cusimano Keener Roberts | Michael L Roberts | 153 South 9th St | | | Gadsen | AL | 35901 | |
| Cusimano Keener Roberts | Michael L Roberts | 153 South 9th St | | | Gadsen | AL | 35901 | |
| Cusimano Keener Roberts | Michael L Roberts | 153 South 9th St | | | Gadsen | AL | 35901 | |
| Cusimano Keener Roberts | Michael L Roberts | 153 South 9th St | | | Gadsen | AL | 35901 | |
| Cusimano Keener Roberts | Michael L Roberts | 153 South 9th St | | | Gadsen | AL | 35901 | |
| Cusimano Keener Roberts | Michael L Roberts | 153 South 9th St | | | Gadsen | AL | 35901 | |
| David L Ayers Esq Jimmy B Wilkins Esq Watkins & Eager Pll | | Pobox 650 | | | Jackson | MS | 39205 | |
| David A Hodges | Attorney At Law | Centre Pl Building | 212 Ctr St Fifth Fl | | Little Rock | AR | 72201-2416 | |
| David G Jennings | | 250 E Broad St | Ste 900 | | Columbus | OH | 45215-3742 | |
| David N Farr | Harley Smith | | 8000 W Florissant Ave | Emerson | St Louis | MO | 63136 | |
| Davis & Davis | Fred Davis Esq | 2900 Trophy Dr | | | Bryan | TX | 77805-3610 | |
| Davis And Davis | Fred Davis | 2900 Trophy Dr | | | Bryan | TX | 77802-2158 | |
| Davis And Davis | Fred Davis | 2900 Trophy Dr | | | Bryan | TX | 77802-2158 | |
| Davis Graham & Stubbs Llp | C L Casteel M S Chappell | 1550 17th St | Ste 500 | | Denver | CO | 80202 | |
| Davis Ii Robert E Plaintiff V | | 5725 Delphi Dr | | | Troy | MI | 48098 | |
| Davis Polk & Wardell | Daniel F Kolb | 450 Lexington Ave | | | New York | NY | 10017 | |
| Davis Polk & Wardell | Daniel F Kolb | 450 Lexington Ave | | | New York | NY | 10017 | |
| Davis Polk & Wardell | Daniel F Kolb | 450 Lexington Ave | | | New York | NY | 10017 | |
| Delco Remy International Inc | | 2902 Enterprise Dr | | | Anderson | IN | 46013 | |
| Delco Remy International Inc | | 2902 Enterprise Dr | | | Anderson | IN | 46013 | |
| Delphi Automotive Systems Llc | Whiteside James | 922 Sand Hill Rd | | | Caledonia | NY | 14423 | |
| Delphi Automotive Systems Llc | Woolridge Loretta | 1356 East Fairview Ln | | | Rochester Hills | MI | 48306 | |
| Delphi Automotive Systems Llc | Barr James R | 10800 Oak Ct | | | Galloway | OH | 43119 | |
| Delphi Automotive Systems Llc | Polk Jackie | 5580 Kirkridge Trail | | | Oakland Twp | MI | 48306 | |
| Delphi Automotive Systems Llc | Munley Tom | 10155 Cherry Tree Terrace | | | Washington Twp | OH | 45458 | |
| Delphi Automotive Systems Llc | Polviren Mary Ann | 10520 Village Court | | | Grand Blanc | MI | 48439 | |
| Delphi Automotive Systems Llc | Kowallek Daniel | 6401 Nw Regal Circle | | | Port Saint Lucie | FL | 34983 | |
| Delphi Automotive Systems Llc | Money Jim | 6003 Lakewood Dr | | | Fairfield | OH | 45011 | |
| Delphi Automotive Systems Llc | Monrean Robert | 1694 Lucretia Dr | | | Girard | OH | 44420 | |
| Delphi Automotive Systems Llc | Calcagni James | 2909 Whispering Pines Dr | | | Canfield | OH | 44406 | |
| Delphi Automotive Systems Llc | Banks Herman | 1802 Railroad St Sw | | | Hartselle | AL | 35640 | |
| Delphi Automotive Systems Llc | Petrie James | PO Box 1623 | | | Warren | MI | 48090 | |
| Delphi Automotive Systems Singapore Pte Ltd | | 501 Ang Mo Kio Industrial Pk 1 | | | | | 569621 | Singapore |
| Delphi Automotive Systems Singapore Pte Ltd | | 501 Ang Mo Kio Industrial Pk 1 | | | | | 569621 | Singapore |
| Delphi Corporation | Stull Virginia Md | 731 Hidden Circle | | | Dayton | OH | 45458 | |
| Derek W Looser Esq Erin M Riley Esq Keller Rohrback | Lynn Lincoln Sarko Esq | 1201 Third Ave Ste 3200 | | | Seattle | WA | 98101-3276 | |
| Dickerson Brian | | Black Law Office | 1422 West Saginaw St | | East Lansing | MI | 48823 | |
| Dougherty Chad | Richard D Gibbon & Associates | 1611 South Harvard | | | Tulsa | OK | 74112 | |
| Dougherty Chad | Richard D Gibbon & Associates | 1611 South Harvard | | | Tulsa | OK | 74112 | |
| Dougherty Chad | Richard D Gibbon & Associates | 1611 South Harvard | | | Tulsa | OK | 74112 | |
| Dougherty Chad | Richard D Gibbon & Associates | 1611 South Harvard | | | Tulsa | OK | 74112 | |
| Douglas J Emonds Esq | | 4810 West 108th St | Ste 1122 | | Overland Pk | KS | 66211-1274 | |
| Douglas J Emonds Esq | | 4810 West 108th St | Ste 1122 | | Overland Pk | KS | 66211-1274 | |
| Drillock Law Firm | Linda R Drillock P38480 | 3030 Main St | | | Marlette | MI | 48453 | |
| Drillock Law Firm | Linda R Drillock P38480 | 3030 Main St | | | Marlette | MI | 48453 | |

In re: Delphi Corporation, et al.
Special Parties - Overnight Mail

| Company | Contact | ADDRESS1 | ADDRESS2 | ADDRESS3 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|---|
| Drillock Law Firm | Linda R Drillock P38480 | 3030 Main St | | | Marlette | MI | 48453 | |
| Drillock Law Firm | Linda R Drillock P38480 | 3030 Main St | | | Marlette | MI | 48453 | |
| Drillock Law Firm | Linda R Drillock P38480 | 3030 Main St | | | Marlette | MI | 48453 | |
| Drillock Law Firm | Linda R Drillock P38480 | 3030 Main St | | | Marlette | MI | 48453 | |
| Dryden Margoles Schimaneck Hartman | | One California St | Ste 2600 | | San Francisco | CA | 94111 | |
| Duane Smith Llp | Donald F Carey | 2325 W Broadway | Ste B | | Idaho Falls | ID | 83402 | |
| Duane Smith Llp | Donald F Carey | 2325 W Broadway | Ste B | | Idaho Falls | ID | 83402 | |
| Duane Smith Llp | Donald F Carey | 2325 W Broadway | Ste B | | Idaho Falls | ID | 83402 | |
| E Todd Tracy Esq | | 5473 Blair Rd | Ste 200 | | Dallas | TX | 75231-4168 | |
| Edwards & Angell | John Hooper Esq | 750 Lexington Ave | | | New York | NY | 10022 | |
| Edwards & Angell | John Hooper Esq | 750 Lexington Ave | | | New York | NY | 10022 | |
| Elmore Jr Arlis M | | 361 Rice Mine Rd | Ne Lot 317 | | Tuscaloosa | AL | 35406 | |
| Elwood S Simon & Associates Pc | E S Simon J P Zuccarini | 355 South Old Woodward Ave | Ste 250 | | Birmingham | AL | 48009 | |
| Elwood S Simon & Associates Pc | E S Simon J P Zuccarini | 355 South Old Woodward Ave | Ste 250 | | Birmingham | AL | 48009 | |
| Elwood S Simon & Associates | John P Zuccarini | 355 S Old Woodward Ave | Ste 250 | | Birmingham | MI | 48009 | |
| Elwood S Simon & Associates Pc | E S Simon J P Zuccarini | 355 South Old Woodward Ave | Ste 250 | | Birmingham | MI | 48009 | |
| Evans Terrence | Haskin Lauter Larue & Gibbons | 255 North Alabama St | | | Indianapolis | IN | 46204 | |
| Everardo Abrego | | 944 W Nolana | Ste C | | Pharr | TX | 78577 | |
| Everardo Abrego | | 944 W Nolana | Ste C | | Pharr | TX | 78577 | |
| Feldman Keifer & Herman | Andrew Feldman Esq | The Dun Building | Ste 400 | 110 Pearl St | Buffalo | NY | 14202 | |
| Feldman Keifer & Herman | Andrew Feldman Esq | The Dun Building | Ste 400 | 110 Pearl St | Buffalo | NY | 14202 | |
| Fieger Fieger Kenney And Johnson | Ven Rjohnson | 19390 West Ten Mile Rd | | | Southfield | MI | 48075-2458 | |
| Filice Brown Eassa & Mccleod | | 1999 Harrison St | 18th Fl | | Oakland | CA | 94612 | |
| Fitch Even Tabin & Flannery | Karl R Fink | 120 South Lasalle St | Ste 1600 | | Chicago | IL | 60603-3406 | |
| Foley & Lardner Llp | J F Birmingham Jr J S Kopp | 500 Woodward Ave | Ste 2700 | | Detroit | MI | 48226 | |
| Foley & Lardner Llp | J A Vanophem J S Kopp | One Detroit Ctr | 500 Woodward Ave | Ste 2700 | Detroit | MI | 48226 | |
| Foley & Lardner Llp | J R Trentacosta J C Mitchell | One Detroit Ctr | 500 Woodward Ave | Ste 2700 | Detroit | MI | 48226 | |
| Foley & Lardner Llp | J R Trentacosta S T Seabolt | 500 Woodard Ave | Ste 2700 | | Detroit | MI | 48226-3489 | |
| Foley & Mansfield Llp | | 1333 N California Blvd | Ste 580 | | Walnut Creek | CA | 94596 | |
| Ford Global Technologies Inc | Frank Mackenzie | 1 Pk Ln Blvd | Ste 600 C | | Dearborn | MI | 48126 | |
| Fred Brown Chevrolet Pontiac Inc | Fred Brown | 100 South Echols St | | | Caldwell | TX | 77836 | |
| Freund Freeze & Arnold | Christopher F Johnson | One Dayton Centre Ste 1800 | 1 South Main St | | Dayton | OH | 45402-2017 | |
| Freund Freeze & Arnold | Christopher F Johnson | One Dayton Centre Ste 1800 | 1 South Main St | | Dayton | OH | 45402-2017 | |
| Frie Arndt & Donbom | James J Arndt | 7400 Wadsworth Blvd | Ste 201 | | Arvada | CO | 80003 | |
| Frie Arndt & Donbom | James J Arndt | 7400 Wadsworth Blvd | Ste 201 | | Arvada | CO | 80003 | |
| Gardere & Wynne Llp | John States | 1601 Elm St | Ste 300 | | Dallas | TX | 75201 | |
| Gardner Corton & Dagles | Richard M Duffey | 191 N Wheeler Dr | 3700 | | Chicago | IL | 60606-1698 | |
| Gavia Sr Felipe F | Felipe F Gavia Sr In Pro Per | 4846 Caroline | | | Indianapolis | IN | 46205-1424 | |
| Gene T Moore | | 1802 Fifteenth St | | | Tuscaloosa | AL | 35401-4608 | |
| General Motors Corporation | Laura Hargitt | M/c 482 C23 B21 | 300 Renaissance Ctr | | Detroit | MI | 48265-3000 | |
| General Motors Corporation | Maynard Timm | 400 Renaissance Ctr | PO Box 400 | | Detroit | MI | 48265-4000 | |
| General Motors Corporation | Maynard Timm | 400 Renaissance Ctr | PO Box 400 | | Detroit | MI | 48265-4000 | |
| General Motors Legal Staff | Glenn A Jackson | 400 Renaissance Ctr | Mail Code 482 028 205 | | Detroit | MI | 48265-4000 | |
| General Motors Legal Staff | Maynard Timm | 400 Renaissance Ctr | PO Box 400 | | Detroit | MI | 48265-4000 | |
| Genicom Corporation | John Lefevere | 14800 Conference Ctr Dr | Ste 400 | | Chantilly | VA | 20151-3820 | |
| Gibson Mcaskill & Crosby | Victor A Oliveri | 69 Delaware Ave | | | Buffalo | NY | 14202 | |
| Gibson Mcaskill & Crosby Llp | Terence Flynn Esq | 69 Delaware Ave | | | Buffalo | NY | 14202 | |
| Gilbert Frank Ollanik And Komyatte | Paul J Komyatte | 5400 Ward Rd Building Iv | Ste 200 | | Arvada | CO | 80002-1820 | |
| Givens Robert | Paul R Leonard Esq | 424 Patterson Rd | | | Dayton | OH | 45419 | |
| Glaspy & Glaspy | | 100 Pringle Ave | No 750 | | Walnut Creek | CA | 94598 | |
| Gm Legal Staff | Suzanne Miklos | 400 Renaissance Ctr | PO Box 400 | | Detroit | MI | 48265-4000 | |
| Goldberg Segalla | Susan Van Gelder Esq | 120 Delaware Ave | Ste 500 | | Buffalo | NY | 14202 | |
| Gonzalez Ernie | Ernie Gonzalez | 16 David Luther Court | | | Hunt Valley | MD | 21030 | |
| Grace Genson Cosgrove & Schirm | | 444 South Flower St | Ste 1100 | | Los Angeles | CA | 90071 | |
| Grace Genson Cosgrove & Schirm | | 444 South Flower St | Ste 1100 | | Los Angeles | CA | 90071 | |
| Grace Genson Cosgrove & Schirm | | 444 South Flower St | Ste 1100 | | Los Angeles | CA | 90071 | |
| Grassi & Toering Plc | Douglas L Toering Esq | 888 West Big Beaver | Ste 750 | | Troy | MI | 48084 | |
| Greak & Smith Pc | A Professional Corporation | 8008 Slide Rd Ste 33 | | | Lubbock | TX | 79424-2828 | |
| Greenfield Stein & Senoir | Andrew Bart Esq | 600 Third Ave | 11th Fl | | New York | NY | 10016 | |
| Grimes John And Rita | | 5621 Arden Ave | | | Warren | MI | 48092 | |
| Guerra Enrique And Melissa Next Friends Of Enrique Guerra | | 1202 Calcutta Ln | | | San Antonio | TX | 78258 | |
| Gutjahr Michael | | 1010 Market St | Ste 650 | | St Louis | MO | 63101 | |
| Hagerty & Brady | Thomas Hagerty Esq | 69 Delaware Ave | Ste 1010 | | Buffalo | NY | 14202 | |
| Haight Brown & Bonesteel Llp | | 100 Bush St | 27th Fl | | San Francisco | CA | 94104-3929 | |
| Hainer & Berman Pc | Leonard K Berman | 24255 West 13 Mile Rd | Ste 270 | | Bingham Farms | MI | 48025 | |
| Hardwick & Knight | Travis W Hardwick Esq | PO Box 968 | | | Decatur | AL | 35602 | |
| Hardwick & Knight | Travis W Hardwick Esq | PO Box 968 | | | Decatur | AL | 35602 | |
| Harris Beach Llp | Cynthia Weiss Antonucci Esq | 805 Third Ave | 19th Fl | | New York | NY | 10022 | |
| Hartline Dacus Barger Dreyer & Kern | Wendy May | 6688 N Central Expressway | Ste 1000 | | Dallas | TX | 75206 | |

In re: Delphi Corporation, et al.
Special Parties - Overnight Mail

| Company | Contact | ADDRESS1 | ADDRESS2 | ADDRESS3 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|---|
| Hartline Dacus Barger Dreyer Kern Llp | Wendy May | 6688 N Central Expressway | Ste 1000 | | Dallas | TX | 75206 | |
| Hartline Dacus Barger Dreyer Kern Llp | Wendy May | 6688 N Central Expressway | Ste 1000 | | Dallas | TX | 75206 | |
| Hartline Dacus Barger Dreyer Kern Llp | Wendy May | 6688 N Central Expressway | Ste 1000 | | Dallas | TX | 75206 | |
| Hartline Dacus Barger Dreyer Kern Llp | Wendy May | 6688 N Central Expressway | Ste 1000 | | Dallas | TX | 75206 | |
| Harvey Altus P 30846 | | 30500 Northwestern Hwy | Ste 500 | | Farmington Hills | MI | 48334 | |
| Hill Ward & Henderson | David Tyrrell | 3700 Bank Of America Plaza | 101 E Kennedy Blvd | | Tampa | FL | 33602-5195 | |
| Hoagland Longo Moran Dunst & Doukas | Douglas M Fasciale | 40 Patterson St | Pobox 480 | | New Brunswick | NJ | 08903 | |
| Holden Kidwell Hahn & | William D Faler Esq | 330 Shoup Ave | 3rd Fl | | Idaho Falls | ID | 83405-0130 | |
| Holden Kidwell Hahn & | William D Faler Esq | 330 Shoup Ave | 3rd Fl | | Idaho Falls | ID | 83405-0130 | |
| Holden Kidwell Hahn & | William D Faler Esq | 330 Shoup Ave | 3rd Fl | | Idaho Falls | ID | 83405-0130 | |
| Hoot Dan | Dan Hoot | 8610 Northeast 139th Ave | | | Vancouver | WA | 98682-3009 | |
| Hoot Dan | Dan Hoot | 8610 Northeast 139th Ave | | | Vancouver | WA | 98682-3009 | |
| Hoot Dan | Dan Hoot | 8610 Northeast 139th Ave | | | Vancouver | WA | 98682-3009 | |
| Horowitz Wake & Forbes | Peter C Forbes 14081 | 370 Seventeenth St | Ste 3950 | | Denver | CO | 80202 | |
| Huckabay Munson Rowlett & Moore Pa | Elizabeth Fletcher | Regions Ctr | Ste 1900 | 400 West Capitol Ave | Little Rock | AR | 72201 | |
| Hurst Byron E | Casper & Casper | One N Main St Fifth Fl | PO Box 510 | | Middletown | OH | 45042 | |
| Hurwitz & Fine | Kevin Merriman Esquire | 1300 Liberty Building | | | Buffalo | NY | 14202 | |
| Hyder Michelle | | 183 West Market St | Ste 300 | | Warren | OH | 44481 | |
| Hyundai Motor America | Jason Erb | 10550 Talbert Ave | | | Fountain Valley | CA | 92728 | |
| Infoservices Inc | Eric Newton | PO Box 71602 | | | Madison Heights | MI | 48071 | |
| Jt Battenberg Iii | William H Jeffress Jr Baker Botts Llp | The Warner | 1299 Pennsylvania Ave Nw | | Washington | DC | 20004-2400 | |
| Jackson & Wallace Llp | | 580 California St | 15th Fl | | San Francisco | CA | 94104 | |
| Jackson & Wallace Llp | | 580 California St | 15th Fl | | San Francisco | CA | 94104 | |
| Jackson & Wallace Llp | | 55 Francisco St | 6th Fl | | San Francisco | CA | 94133 | |
| Jakupco Richard J | Huffer & Weathers Pc | 1850 Market Square Ctr | 151 North Delaware St | | Indianapolis | IN | 46204 | |
| James Edition Con Appeal | Cooper & Elliott Llc | 2175 Riverside Dr | | | Columbus | OH | 43221 | |
| Jasper N Edmundson Jr | | 1980 State St | | | Poplar Bluff | MO | 63901 | |
| Jay Schabel | Cheryl Smith Fisher Esq | Magavern Magavern & Grimm Llp | 1100 Rand Bldg | 14 Lafayete Square | Buffalo | NY | 14203 | |
| Jenner & Block | Phil Harris Esq | One Ibm Plaza | | | Chicago | IL | 60603 | |
| Jenner & Block | Phil Harris Esq | One Ibm Plaza | | | Chicago | IL | 60603 | |
| John G Blahnik | Thomas W Cranmer | Miller Canfield Paddock & Stone Plc | 150 W Jefferson Ave Ste 2500 | | Detroit | MI | 48226 | |
| John J Oshea | | 3400 E Lafayette | | | Detroit | MI | 46207 | |
| John Sheehan | Michael D Mann | Richards Spears Kibbe & Orbe Llp | 1775 Eye St Nw | | Washington | DC | 20006-2401 | |
| John Tishok | | 1000 Six Ppg Pl | | | Pittsburgh | PA | 15222 | |
| Johnson Rasmussen Robinson & Allen Plc 00211700 | J W Rasmussen D W Robinson | 48 North Macdonald St | | | Mesa | AZ | 85201 | |
| Johnson Freddie L | Haskin Lauter Larue & Gibbons | 255 North Alabama St | | | Indianapolis | IN | 46204 | |
| Johnson Rasmussen Robinson & | John W Rasmussen Esq | 48 North Macdonald St | | | Mesa | AZ | 85201 | |
| Jones Day | Michael M Gibson | 717 Texas | Ste 3300 | | Houston | TX | 77002 | |
| Jones Norman | Earl Earl And Rose | 31851 Mound Rd | | | Warren | MI | 48092 | |
| Jones Rodger | | 1238 St Michaels | | | Laredo | TX | 78041 | |
| Kantrowitz Goldhamer & Graifman Pc | Gary S Graifman | 747 Chestnut Ridge Rd | | | Chestnut Ridge | NY | 10977 | |
| Kathleen A Lang Michelle V Thurber Dickinson Wright | | 500 Woodward Ave | Ste 4000 | | Detroit | MI | 48226-3425 | |
| Keesal Young & Logan | Four Embarcadero Ctr | Ste 1500 | | | San Francisco | CA | 94111 | |
| Kelman Loria Pllc | Alan B Posner Esq | 660 Woodward Ave | Ste 1420 | | Detroit | MI | 48226-3588 | |
| King & Spaulding Llp | Halli D Cohn | 191 Peachtree St | | | Atlanta | GA | 30303 | |
| Kirkland & Ellis Llp | Robert Kopecky | 200 E Randolph Dr | | | Chicago | IL | 60601 | |
| Kirkland & Ellis Llp | Robert Kopecky | 200 E Randolph Dr | | | Chicago | IL | 60601 | |
| Kirkland & Ellis Llp | Robert Kopecky | 200 E Randolph Dr | | | Chicago | IL | 60601 | |
| Kirkland & Ellis Llp | Robert Kopecky | 200 E Randolph Dr | | | Chicago | IL | 60601 | |
| Kirkland & Ellis Llp | Robert Kopecky | 200 E Randolph Dr | | | Chicago | IL | 60601 | |
| Kirkland & Ellis Llp | Robert Kopecky | 200 E Randolph Dr | | | Chicago | IL | 60601 | |
| Kirkland & Ellis Llp | Robert Kopecky | 200 E Randolph Dr | | | Chicago | IL | 60601 | |
| Kirkland & Ellis Llp | Robert Kopecky | 200 E Randolph Dr | | | Chicago | IL | 60601 | |
| Kirkland & Ellis Llp | Robert Kopecky | 200 E Randolph Dr | | | Chicago | IL | 60601 | |
| Kumiega Kenneth J | Wilder & Linneball Llp | 320 Bisbane Bldg | 403 Main At Court St | | Buffalo | NY | 14203 | |
| Lafbbate Balkan Colavita & Contini Llp | Anna Dilonardo Esq | 1050 Franklin Ave | | | Garden City | NY | 11530 | |
| Laudig George Rutherford & Sipes | L George W R Sipes | 156 E Market St | Ste 600 | | Indianapolis | IN | 46204 | |
| Laudig George Rutherford & Sipes | L George W R Sipes | 156 E Market St | Ste 600 | | Indianapolis | IN | 46204 | |
| Laudig George Rutherford & Sipes | L George W R Sipes | 156 E Market St | Ste 600 | | Indianapolis | IN | 46204 | |
| Laudig George Rutherford & Sipes | Linda George | 156 E Market St | Ste 600 | | Indianapolis | IN | 46204 | |
| Laudig George Rutherford & Sipes | L George W R Sipes | 156 East Market St | Ste 600 | | Indianapolis | IN | 46204 | |
| Laudig George Rutherford & Sipes | L George W R Sipes | 156 East Market St | Ste 600 | | Indianapolis | IN | 46204 | |
| Laudig George Rutherford & Sipes | Kathleen A Musgrave Esq | 156 E Market St | Ste 600 | | Indianapolis | IN | 46204 | |
| Laudig George Rutherford & Sipes | Linda George Esqw Russell Sipes | 156 E Market St | Ste 600 | | Indianapolis | IN | 46204 | |
| Laudig George Rutherford & Sipes | Linda George Esq | 156 East Market St | Ste 600 | | Indianaplis | IN | 46204 | |
| Laudig George Rutherford & Sipes | Linda George Esq | 156 East Market St | Ste 600 | | Indianaplis | IN | 46204 | |

In re: Delphi Corporation, et al.
Special Parties - Overnight Mail

| Company | Contact | ADDRESS1 | ADDRESS2 | ADDRESS3 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|---|
| Laudig George Rutherford & Sipes | Linda George Esq | 156 East Market St | Ste 600 | | Indianaplis | IN | 46204 | |
| Laudig George Rutherford & Sipes | Linda George Esq | 156 East Market St | Ste 600 | | Indianaplis | IN | 46204 | |
| Laudig George Rutherford & Sipes | Linda George Esq | 156 East Market St | Ste 600 | | Indianaplis | IN | 46204 | |
| Laudig George Rutherford & Sipes | Linda George Esq | 156 East Market St | Ste 600 | | Indianaplis | IN | 46204 | |
| Laudig George Rutherford & Sipes | Linda George Esq | 156 East Market St | Ste 600 | | Indianaplis | IN | 46204 | |
| Laudig George Rutherford & Sipes | Linda George Esq | 156 East Market St | Ste 600 | | Indianaplis | IN | 46204 | |
| Laudig George Rutherford & Sipes | Linda George Esq | 156 East Market St | Ste 600 | | Indianaplis | IN | 46204 | |
| Laudig George Ruthergord & Sipes | Linda George Esq | 156 E Market St | 600 | | Indianapolis | IN | 46204 | |
| Law Office Of Alfredo Z Padilla | Alfredo Z Padilla | 104 N 5th St | Po Drawer 355 | | Carrizo Springs | TX | 78834-3102 | |
| Law Office Of Klari Neuwelt | Klari Neuwelt | 110 East 59th St | 29th Fl | | New York | NY | 10022 | |
| Law Office Of Mark E Williams | Renee T Vander Hagen P43771 | 38700 Van Dyke Ave | Ste 150 | | Sterling Heights | MI | 48312 | |
| Law Office Of Mark E Williams | Renee T Vander Hagen P43771 | 38700 Van Dyke Ave | Ste 150 | | Sterling Heights | MI | 48312 | |
| Law Office Of Scott E Shapiro Pc | S E Shapiro H Yun | 17337 Ventura Blvd | Ste 200 | | Encino | CA | 91316 | |
| Law Office Of William J Tinning | William J Tinning | 1013 Bluff Dr | | | Portland | TX | 78374 | |
| Law Office Of William J Tinning | William J Tinning | 1013 Bluff Dr | | | Portland | TX | 78374 | |
| Law Office Of William J Tinning | William J Tinning | 1013 Bluff Dr | | | Portland | TX | 78374 | |
| Law Office Of William J Tinning | William J Tinning | 1013 Bluff Dr | | | Portland | TX | 78374 | |
| Law Office Of William J Tinning | William J Tinning | 1013 Bluff Dr | | | Portland | TX | 78374 | |
| Law Office Of William J Tinning | William J Tinning | 1013 Bluff Dr | | | Portland | TX | 78374 | |
| Law Office Of William J Tinning | William J Tinning | 1013 Bluff Dr | | | Portland | TX | 78374 | |
| Law Office Of William J Tinning | William J Tinning | 1013 Bluff Dr | | | Portland | TX | 78374 | |
| Law Offices Of Charles J Piven Pa | Charles J Piven Esq | 401east Pratt St | Ste 2525 | | Baltimore | MD | 21201 - 1629 | |
| Law Offices Of G Lynn Shumway | G Lynn Shumway Esq | 6909 East Greenway Pkwy | Ste 200 | | Scottsdale | AZ | 85254-2172 | |
| Law Offices Of Leon Russell | Leon Russell | 3102 Oak Lawn Ste 600 | | | Dallas | TX | 75219-4271 | |
| Law Offices Of Maloney & Campolo | Tim Maloney Paul Campolo | 900 S E Military Dr | | | San Antonio | TX | 78214 | |
| Law Offices Of Maloney & Campolo | Tim Maloney Paul Campolo | 900 S E Military Dr | | | San Antonio | TX | 78214 | |
| Law Offices Of Nancy E Hudgins | | 1388 Sutter St | Ste 505 | | San Francisco | CA | 94109 | |
| Lawson Walter Keith | Alexander Corder Plunk | & Shelly Pc | PO Box 1129 | | Athens | AL | 35612 | |
| Leader & Berkon Llp | Michelle Pollachov Esq | 630 Third Ave | | | New York | NY | 10017 | |
| Leboeuf Lamb Greene & Macrae Llp | Kelly H Tsai | 125 West 55th St | | | New York | NY | 10019-5389 | |
| Lerach Coughlin Stoia Geller Rudman & Robbins Llp | Samuel H Rudman Esq | 200 Broadhollow Rd Ste 406 | | | Melville | NY | 11747-4806 | |
| Levin Simes & Kaiser Llp | Martha A H Berman Esq | 160 Sansome St | 12th Fl | | San Francisco | CA | 94104-3700 | |
| Lewis & Lewis Pc | Emily L Downing Esq | 800 Cathedral Pk Tower | 37 Franklin St | | Buffalo | NY | 14202-4107 | |
| | | | | | | | | |
| Lextron Bankruptcy | Melanie T Vardaman Craig Geno And Jeffrey Tyree | Harris & Geno Pllc | 587 Highland Colony Pkwy | PO Box 3380 | Ridgeland | MS | 39158-3380 | |
| Lextron Corporation | Sheila M Bossier | Bossier Kitchena Pllc | 1520 N State St | | Jackson | MS | 39202 | |
| Lextron Corporation | Mikel J Bowers Tim Goss Richard Capshaw | Capshaw Goss Bowers Llp | 3031 Allen St Ste 200 | | Dallas | TX | 75204 | |
| Lieberman & Bradley Pc | Paul Lieberman P16664 | 43902 Woodward Ave | Ste 250 | | Bloomfield Hills | MI | 48302 | |
| Lieff Cabraser Heimann & Bernstein Llp | J D Selbin R Geman | 780 Third Ave | 48th Fl | | Newyork | NY | 10017 | |
| Lieff Cabraser Heimann & Bernstein Llp | Lisa J Leebove Pro Hac Vice | Embarcadero Ctr West | 275 Battery St | 30th Fl | San Francisco | CA | 94111-3339 | |
| Lieff Cabraser Heimann Bernstein | Lisa Leebove | 275 Battery St 30th Fl | | | San Francisco | CA | 94111-3305 | |
| Lightfoot Franklin & White Llc | S Andrew Kelly Esq | The Clark Bldg | 400 20th St North | | Birmingham | AL | 35203 | |
| Lipperthumphreys Campbell Dust & Humphreys Pc | A T Lippert Jr P16714 | 4800 Fashion Square Blvd | Ste 410 | | Saginaw | MI | 48604-2604 | |
| Lipperthumphreys Campbell Dust & Humphreys Pc | A T Lippert Jr P16714 | 4800 Fashion Square Blvd | Ste 410 | | Saginaw | MI | 48604-2604 | |
| Liss & Shapero | A D Shapero M M Martin | 2695 Coolidge Hwy | | | Berkley | MI | 48072 | |
| Locke Reynolds Llp | Lloyd Milliken | 201 North Illinois | Ste 1000 | PO Box 44961 | Indianapolis | IN | 44962 | |
| Lombardo & Gilles | Timothy J Minor Esq | 318 Cayuga St | | | Salinas | CA | 93902 | |
| London Fischer | Todd Hesekiel | 59 Maiden Ln | | | New York | NY | 10038 | |
| Loprete Kent G | Kent Loprete | Delphi | 5725 Delphi Dr | | Troy | MI | 48098 | |
| Lowenstein Sandler Pc | David L Harris | 65 Livingston Ave | | | Roseland | NJ | 07068-1791 | |
| Luadig George Rutherford & Sipes | L George W R Sipes | 156 East Market St | Ste 600 | | Indianapolis | IN | 46204 | |
| Luadig George Rutherford & Sipes | L George W R Sipes | 156 East Market St | Ste 600 | | Indianapolis | IN | 46204 | |
| Luadig George Rutherford & Sipes | L George W R Sipes | 156 East Market St | Ste 600 | | Indianapolis | IN | 46204 | |
| Malaby Carlisle & Bradley Llc | William Bradley Esq | 150 Broadway | Ste 600 | | New York | NY | 10038 | |
| Maloney And Campolo | Tim Maloney | 900 Se Military Dr | | | San Antonio | TX | 78214-2825 | |
| Manns Debra A | | 714 South Fisk St | | | Miamisburg | OH | 45342 | |
| Mantese Joseph V | Joe Mantese | Delphi Research Lab | 51786 Shelby Pkwy | | Shelby Township | MI | 48315 | |
| Margaret H Mccollum | | One North Main St | PO Box 510 | | Middletown | OH | 45042-0510 | |
| Marian Rosner Marian Rosner | | 845 Third Ave | | | New York | NY | 10022-6601 | |
| Mark A Corder Esq | | 232 S Cherry | | | Olathe | KS | 66061 | |
| Mark R Gilling | | 3030 North Third St | Ste 1300 | | Phoenix | AZ | 85012 | |
| Mark Wilson | | 5231 Belleaire Blvd | | | Bellaire | TX | 77401 | |
| Markusson Green & Jarvis Pc | Dennis Hart Markusson Esq | 999 18th St 3300 | | | Denver | CO | 80202 | |
| Martin Drought & Torres Inc | Gerald Drought | Bank Of America | 25th Fl | 300 Convent St | San Antonio | TX | 78205 | |
| Mastromarco & Jahn Pc | Victor J Mastromarco Jr P34564 | 1024 N Michigan Ave | PO Box 3197 | | Saginaw | MI | 48605-3197 | |
| Mastromarco & Jahn Pc | Victor J Mastromarco Jr P34564 | 1024 N Michigan Ave | PO Box 3197 | | Saginaw | MI | 48605-3197 | |
| Mastromarco & Jahn Pc | Victor J Mastromarco Jr P34564 | 1024 N Michigan Ave | PO Box 3197 | | Saginaw | MI | 48605-3197 | |
| Mastromarco & Jahn Pc | Victor J Mastromarco Jr P34564 | 1024 N Michigan Ave | PO Box 3197 | | Saginaw | MI | 48605-3197 | |

In re: Delphi Corporation, et al.
Special Parties - Overnight Mail

| Company | Contact | ADDRESS1 | ADDRESS2 | ADDRESS3 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|---|
| Mastromarco & Jahn Pc | Victor J Mastromarco Jr | 1024 N Michigan Ave | | | Saginaw | MI | 48605-3197 | |
| Mastromarco & Jahn Pc | | 1024 N Michigan Ave | PO Box 3197 | | Saginaw | MI | 48602-4325 | |
| Mcguire Woods Llp | Yvette Harmon Esquire | 65 East 55th St | 31st Fl | | New York | NY | 10022 | |
| Mckee Stephen M | Armstrong & Lowe | 1401 S Cheyenne | | | Tulsa | OK | 74119-3440 | |
| Mckenna Long & Aldridge Llp | Steuart St Tower | One Market St | Ste 2700 | | San Francisco | CA | 94105-1475 | |
| Mckenna Long & Aldridge Llp | Steuart St Tower | One Market St | Ste 2700 | | San Francisco | CA | 94105-1475 | |
| Mcquaid Metzler Bedford & Van Zandt | | Penthouse Ste | 221 Main St | | San Francisco | CA | 94105-1909 | |
| Mcquaid Metzler Bedford & Van Zandt | | Penthouse Ste | 221 Main St | | San Francisco | CA | 94105-1909 | |
| Mettrick Steven J | Steve Mettrick | Delphi Energy & Chassis | 1000 Lexington Ave | | Rochester | NY | 14606 | |
| Mettrick Steven J | Steve Mettrick | Delphi Energy & Chassis | 1000 Lexington Ave | | Rochester | NY | 14606 | |
| Michael D Schloff Pllc | Michael D Schloff P25393 | 6905 Telegraph Rd | Ste 215 | | Bloomfield Hills | MI | 48301 | |
| Michael D Schloff Pllc | Michael D Schloff P25393 | 6905 Telegraph Rd | Ste 215 | | Berkley | MI | 48072 | |
| Michael D Schloff Pllc | Michael D Schloff P25393 | 6905 Telegraph Rd | Ste 215 | | Bloomfield Hills | MI | 48301 | |
| Michael Klinginsmith | Cheryl Smith Fisher Esq | Magavern Magavern & Grimm Llp | 1100 Rand Bldg | 14 Lafayete Square | Buffalo | NY | 14203 | |
| Miller Faucher And Cafferty Llp | Patrick E Cafferty | 101 North Main St | | | Ann Arbor | MI | 48104 | |
| Miller Faucher And Cafferty Llp | Patrick Cafferty Esq | 101 N Main St | Ste 450 | | Ann Arbor | MI | 48104-5507 | |
| Miller Faucher And Cafferty Llp | Patrick Cafferty Esq | 101 N Main St | Ste 450 | | Ann Arbor | MI | 48104-5507 | |
| Miller Shea Pc | Marc L Newman Esq | 950 W University Dr | Ste 300 | | Rochester | MI | 48307-1888 | |
| Mitchell Williams Selig Gates & Woodyard Pllc | Sherry P Bartley | 425 West Capitol Ave | Ste 1800 | | Little Rock | AR | 72201-3525 | |
| Moffatt Thomas Barrett Rock & Fields | Stephen R Thomas | 101 S Capital Blvd | 10th Fl | PO Box 829 | Boise | ID | 83701 | |
| Moffatt Thomas Barrett Rock & Fields | Stephen R Thomas | 101 S Capital Blvd | 10th Fl | PO Box 829 | Boise | ID | 83701 | |
| Moffatt Thomas Barrett Rock & Fields | Stephen R Thomas | 101 S Capital Blvd | 10th Fl | PO Box 829 | Boise | ID | 83701 | |
| Moretti Lucia V | Lucia V Moretti | Delphi Product & Service Solutions | 1441 West Long Lake Rd | | Troy | MI | 48098 | |
| Morris Cantor Lukasi | Frank J Dolce | 1000 Liberty Bldg | 420 Main St | | Buffalo | NY | 14202-3501 | |
| Morris Cantor Lukasik Dolce & Panepinto Pc | | 1000 Liberty Building | | | Buffalo | NY | 14202 | |
| Morris Nichols Arsht & Tunnell | Rodger D Smith Ii Esq | Jack B Blumenfeld Esq | 1201 N Market St | PO Box 1347 | Wilmington | DE | 19801-1147 | |
| Morris Nichols Arsht & Tunnell | Rodger D Smith Ii Esq | Jack B Blumenfeld Esq | 1201 N Market St | PO Box 1347 | Wilmington | DE | 19801-1147 | |
| Moses & Singer Llp | Stephen N Weiss | The Chrysler Building | 405 Lexington Ave | | New York | NY | 10174-1299 | |
| Moses & Singer Llp | Stephen N Weiss | The Chrysler Building | 405 Lexington Ave | | New York | NY | 10174-1299 | |
| Moses & Singer Llp | Stephen N Weiss | The Chrysler Building | 405 Lexington Ave | | New York | NY | 10174-1299 | |
| Motley Rosalyn | Wiggins Childs Quinn | & Pantazis Pc | The Kress Bldg | 301 19th St | Birmingham | AL | 35203 | |
| Murray Frank & Sailer Llp | Eric J Belfi | 275 Madison Ave | 8th Fl | | New York | NY | 10016 | |
| Murray Frank & Sailer Llp | J Sailer E J Belfi | 275 Madison Ave Ste 801 | | | New York | NY | 10016 | |
| Newman Tina | Jones & Taylor Llc | 2123 9th St | | | Tuscaloosa | AL | 35401 | |
| Nguyen James H | Cohen Garelick & Glazier Pc | Ste 800 Keystone Plaza | 8888 Keystone Crossing Blvd | | Indianapolis | IN | 46240-4636 | |
| Nixon Peabody Llp | Samuel Goldblatt | 800 Cathedral Pk Tower | 37 Franklin St | | Buffalo | NY | 14202 | |
| Norris Mclaughlin & Marcus | Haekyoung Suh | 721 Route 202 206 | PO Box 1018 | | Somerville | NJ | 08876-1018 | |
| Oneill Wallace & Doyle Pc | D Carbajal J J Danieleski Jr | PO Box 1966 | | | Saginaw | MI | 48605-1966 | |
| Oneill Wallace & Doyle Pc | D Carbajal J J Danieleski Jr | PO Box 1966 | | | Saginaw | MI | 48605-1966 | |
| Oneill Wallace & Doyle Pc | D Carbajal J J Danieleski Jr | PO Box 1966 | | | Saginaw | MI | 48605-1966 | |
| Oneill Wallace & Doyle Pc | D Carbajal J J Danieleski Jr | PO Box 1966 | | | Saginaw | MI | 48605-1966 | |
| Oneill Wallace & Doyle Pc | D Carbajal J J Danieleski Jr | PO Box 1966 | | | Saginaw | MI | 48605-1966 | |
| Oneill Wallace & Doyle Pc | D Carbajal J J Danieleski Jr | PO Box 1966 | | | Saginaw | MI | 48605-1966 | |
| Oneill Wallace & Doyle Pc | D Carbajal J J Danieleski Jr | PO Box 1966 | | | Saginaw | MI | 48605-1966 | |
| Oneill Wallace & Doyle Pc | D Carbajal J J Danieleski Jr | PO Box 1966 | | | Saginaw | MI | 48605-1966 | |
| Oneill Wallace & Doyle Pc | D Carbajal J J Danieleski Jr | PO Box 1966 | | | Saginaw | MI | 48605-1966 | |
| Oneill Wallace & Doyle Pc | D Carbajal J J Danieleski Jr | PO Box 1966 | | | Saginaw | MI | 48605-1966 | |
| Oneill Wallace & Doyle Pc | D Carbajal J J Danieleski Jr | PO Box 1966 | | | Saginaw | MI | 48605-1966 | |
| Orlik Eva M | Kendall Hahn | 220 N Rangeline Rd | | | Carmel | IN | 46032 | |
| Paine Hamblen Coffin Brook & Miller Llp | Scott C Cifrese | 714 West Sprague Ave | Ste 1200 | | Spokane | WA | 99201 | |
| Paine Hamblen Coffin Brook & Miller Llp | Scott C Cifrese | 714 West Sprague Ave | Ste 1200 | | Spokane | WA | 99201 | |
| Paine Hamblen Coffin Brook & Miller Llp | Scott C Cifrese | 714 West Sprague Ave | Ste 1200 | | Spokane | WA | 99201 | |
| Par Industries Llc | Legal Dept | 500 Commerce Dr | | | Amherst | NY | 14228 | |
| Par/viking 1106 Llc | Legal Dept | 30505 Bainbridge Rd | | | Solon | OH | 44139 | |
| Patrick James | Cheryl Smith Fisher Esq | Magavern Magavern & Grimm Llp | 1100 Rand Bldg | 14 Lafayete Square | Buffalo | NY | 14203 | |
| Paul Weiss Rifkind Wharton & Garrison Llp | Kenneth A Gallo | Denso Siemens And Trw | 1615 L St Nw | | Washington | DC | 20036-5694 | |
| Penley Brian | | 2918 E Sr 38 | | | Westfield | IN | 46074 | |
| Pepper Hamilton Llp | Richard A Rossman | 36th Fl | 100 Renaissance Ctr | | Detroit | MI | 48243-7926 | |
| Pepper Hamilton Llp | Richard A Rossman | 36th Fl | 100 Renaissance Ctr | | Detroit | MI | 48243-7926 | |
| Pepper Hamilton Llp | Richard A Rossman | 36th Fl | 100 Renaissance Ctr | | Detroit | MI | 48243-7926 | |
| Pepper Hamilton Llp | Richard A Rossman | 36th Fl | 100 Renaissance Ctr | | Detroit | MI | 48243-7926 | |
| Pepper Hamilton Llp | Richard A Rossman | 36th Fl | 100 Renaissance Ctr | | Detroit | MI | 48243-7926 | |
| Pepper Hamilton Llp | Richard A Rossman | 36th Fl | 100 Renaissance Ctr | | Detroit | MI | 48243-7926 | |
| Pepper Hamilton Llp | Richard A Rossman | 36th Fl | 100 Renaissance Ctr | | Detroit | MI | 48243-7926 | |
| Perkins Coie Llp | | 180 Townsend St | Third Fl | | Emeryville | CA | 94608 | |
| Peter D Fischbein | | 777 Terrace Ave | | | Hasbrouck Heights | NJ | 07604 | |

In re: Delphi Corporation, et al.
Special Parties - Overnight Mail

| Company | Contact | ADDRESS1 | ADDRESS2 | ADDRESS3 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|---|
| Phillips Lytle Hitchcock Blaine & Huber | James Whitcomb Esquire | 3400 Hsbc Ctr | | | Buffalo | NY | 14203 | |
| Piccirilli Edna | James A Fredericka Esq | Ambrosy And Fredericka | 144 North Pk Ave | Ste 200 | Warren | OH | 44481-1124 | |
| Polito Michael A | Samuel F Prato Esq | Alliance Building Ste I 435 | I 83 East Main St | | Rochester | NY | 14604 | |
| Prichard Hawkins Mcfarland & Young Llp | Kevin M Young David G Harris | Union Square | Ste 600 | 10101 Reunion Pl | San Antonio | TX | 78216 | |
| Prichard Hawkins Mcfarland & Young Llp | Kevin M Young David G Harris | Union Square | Ste 600 | 10101 Reunion Pl | San Antonio | TX | 78216 | |
| Provost Umphrey Law Firm | Andy Tindel | 112 East Line St | Ste 304 | | Tyler | TX | 75702 | |
| Provost Umphrey Law Firm Llp | Matthew C Matheny Esq | 490 Pk St | | | Beaumont | TX | 77701 | |
| Prusheik Stacey | Alan C Olson & Associates Sc | 2880 South Moorland Rd | | | New Berlin | WI | 53151-3744 | |
| Quale Feldbruegge Calvelli Than & Crusch | Terrence C Than | Ninth Fl | 710 N Plankinton | | Milwaukee | WI | 53203 | |
| Ramsey & Murray Pc | Curtis D Collette | 800 Gessner | Ste 1100 | | Houston | TX | 77024-4257 | |
| Reno Joseph | Law Offices Of Brad A Chalker Llc | 7953 Washington Woods Dr | PO Box 750726 | | Dayton | OH | 45475 | |
| Richard Hawkins & Young Llp | Kevin M Young | 10101 Renunion Pl | Ste 600 | | San Antonio | TX | 78216 | |
| Richard T Saraf Esq | | 665 Main St | Ste 400 | | Buffalo | NY | 14203 | |
| Richard T Saraf Esq | | 665 Main St | Ste 400 | | Buffalo | NY | 14203 | |
| Richard T Saraf Esq | | 665 Main St | Ste 400 | | Buffalo | NY | 14203 | |
| Richard T Saraf Esq | | 665 Main St | Ste 400 | | Buffalo | NY | 14203 | |
| Richard T Saraf Esq | | 665 Main St | Ste 400 | | Buffalo | NY | 14203 | |
| Robins Kaplan Miller & Ciresi Llp | R T Kugler B D Manning | 2800 Lasalle Plaza | 800 Lasalle Ave | | Minneapolis | MN | 55402 | |
| Roger S Penske | Larry Bluth | Penske Corporation | 2555 Telegraph Rd | | Bloomfield Hills | MI | 48302-0954 | |
| Rosen Ruben J | Steven T Fulk Esq | Fulk & Allain | 320 Massachusetts Ave | | Indianapolis | IN | 46204 | |
| Rowell Lynn | Binder & Binder Pc | 2805 Veterans Memorial Hwy | Ste 20 | | Ronkonkoma | NY | 11779 | |
| Sallee Lynn | Frank F Sallee Esq | 4739 Bellview | Ste 304 | | Kansas City | MO | 64112-1364 | |
| Savage Darrin | | PO Box 35262 | | | Kansas City | MO | 64134-5262 | |
| Schatz & Nobel Pc | R A Izard A M Schatz | 20 Church St | Ste 1700 | | Hartford | CT | 06103 | |
| Schiff Hardin & Waite | Paul Scrudato Esq | 623 5th Ave | 28th Fl | | New York | NY | 10022 | |
| Schiffrin & Barroway Llp | J H Meltzer G D Wells Iii | 280 King Of Prussia Rd | | | Radnor | PA | 19087 | |
| Schwartz Law Firm Pc | J A Schwartz D E Fordree | 37887 W 12 Mile Rd | Ste A | | Farmington Hills | MI | 48331 | |
| Scott Scott Llc | Geoffrey M Johnson | 33 River St | | | Chagrin Falls | OH | 44022 | |
| Sedgwick Deter Moran & Arnold | | One Embarceadero Ctr | 16th Fl | | San Francisco | CA | 94111 | |
| Selman Breitman Llp | | 33 New Montgomery St | 6th Fl | | San Francisco | CA | 94105 | |
| Semtech Corpus Christi Corp | John Poe | 652 Mitchell Rd | | | Newberry Pk | CA | 91320-2289 | |
| Shea & Gardner | | 1800 Massachusetts Ave Nw | | | Washington | DC | 20036-1872 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |

In re: Delphi Corporation, et al.
Special Parties - Overnight Mail

| Company | Contact | ADDRESS1 | ADDRESS2 | ADDRESS3 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|---|
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Shearman & Sterling | Marc D Ashley Esq | 599 Lexington Ave | | | New York | NY | 10022-6069 | |
| Sheila M Bossier | Sheila M Bossier | 1520 North State St | | | Jackson | MI | 39202 | |
| Sheila M Bossier | Sheila M Bossier | 1520 North State St | | | Jackson | MI | 39202 | |
| Sheila M Bossier | Sheila M Bossier | 1520 North State St | | | Jackson | MI | 39202 | |
| Sheila M Bossier | Sheila M Bossier | 1520 North State St | | | Jackson | MI | 39202 | |
| Sheila M Bossier | Sheila M Bossier | 1520 North State St | | | Jackson | MI | 39202 | |
| Sheila M Bossier | Sheila M Bossier | 1520 North State St | | | Jackson | MI | 39202 | |
| Sher Garner Cahill Richter Klein & Hilbert Llc | James Michael Garner Esq | 909 Poydras St | 28th Fl | | New Orleans | LA | 70112-4000 | |
| Sherman Taff & Bangert | Jack T Bangert | 1100 Main St | Ste 2890 | PO Box 26530 | Kansas City | MO | 64196 | |
| Simmonscooper Llc | Tim Thompson Esq | 707 Berkshire Blvd | PO Box 521 | | East Alton | IL | 62024-1326 | |
| Simons Cooper Llc | | 7070 Berkshire Blvd | PO Box 521 | | East Alton | IL | 62024-1326 | |
| Smetana Mahoney Gaffney & Tamburello | Anthony M Tamburello | 100 Campus Dr | Ste 112 | PO Box 672 | Florham Pk | NJ | 07932 | |
| Smith Lori | Hochman & Plunkett Co Lpa | Ste 650 Talbott Tower | | | Dayton | OH | 45402 | |
| Snell & Wilmer Llp | Timothy G Oneill Esq | 1200 17th St 1900 | | | Denver | CO | 80202 | |
| Sommer Schwartz Silver & Schwartz Pc | Andrew Kochanowski P55117 | 2000 Town Ctr | 9th Fl | | Southfield | MI | 48075 | |
| Sommer Schwartz Silver & Schwartz Pc | Andrew Kochanowski P55117 | 2000 Town Ctr | 9th Fl | | Southfield | MI | 48075 | |
| Sommer Schwartz Silver & Schwartz Pc | Andrew Kochanowski P55117 | 2000 Town Ctr | 9th Fl | | Southfield | MI | 48075 | |
| Sonnenschein Nath & Rosenthal Llp | Linda Yassky Esq | 1221 Ave Of The Americas | | | New York | NY | 10020 | |
| Southtrust | Eric F Hatten James J Robinson D Christopher Carson Jason D Woodard | Burr & Forman Llp | 420 North 20th St | 3100 Wachovia Tower | Birmingham | AL | 35203 | |
| Southtrust | Dennis C Sweet Iii Richard Freese | Sweet & Freese Pllc | 201 North President St | | Jackson | MS | 39201 | |
| Spiral Binding Company Inc | Robert Roth | One Maltese Dr | | | Totowa | NJ | 07511 | |
| Stanley J Walker | | 1017 South Gaylord St | | | Denver | CO | 80210 | |
| Stanley J Walter | | 1017 S Gaylord St | | | Denver | CO | 80209-4683 | |
| Stein Bliablia Mcguire Pantages & Gigl | Lawrence M Berkleley | Eisenhower Plaza | 354 Eisenhower Pkwy | | Livingston | NJ | 07036 | |
| Stein Bliablia Mcguire Pantages & Gigl | Lawrence M Berkleley | Eisenhower Plaza | 354 Eisenhower Pkwy | | Livingston | NJ | 07036 | |
| Stephen F Wasinger Plc | Stephen F Wasinger | 100 Beacon Ctr | 26862 Woodward Ave | | Royal Oak | MI | 48067 | |
| Stephen M Ozcomert Esq | | 215 N Mcdonough St | | | Decatur | GA | 30030 | |
| Stephen S Brown & Matthew M Merril | | 911 Main St | Ste 2300 | | Kansas City | MO | 64105 | |
| Steve Kevelson Esq | | One Cozine Ave | | | Brooklyn | NY | 11201 | |
| Stewart & Stewart | M J Sobieray D W Stewart | 931 South Rangeline Rd | | | Carmel | IN | 46032 | |
| Stewart Andrew | | 2824 Ruppuhn Dr | | | Saginaw | MI | 48603 | |
| Stinson Morrison Hecker Llp | Donald C Ramsay | 9 Corporate Woods | Ste 450 | 9200 Indian Creek Pkwy | Overland Pk | KS | 66210 | |
| Sugarman Law Firm Llp | Shannon Heneghan | 1600 Rand Building | 14 Lafayette Square | | Buffalo | NY | 14203 | |
| Synchronus Industrial Services Inc | Samuel W Junkin Pc | 601 Greensboro Ave | Ste 600 Alston Pl | | Tuscaloosa | AL | 35041 | |
| The Corporation Company | | 120 Central Ave | | | Clayton | MO | 63105 | |
| The Padberg & Corrigan Law Firm | Michael P Corrigan | 1010 Market St | Ste 650 | | St Louis | MO | 63101 | |
| The Padberg & Corrigan Law Firm | Matthew J Padberg Esq | 1010 Market St | Ste 650 | | St Louis | MO | 63101-2026 | |
| Thelen Reid & Priest Llp | | 101 Second St | Ste 1800 | | San Francisco | CA | 94105-3601 | |
| Thelen Reid & Priest Llp | | 101 Second St | Ste 1800 | | San Francisco | CA | 94105-3601 | |
| Thelen Reid & Priest Llp | | 101 Second St | Ste 1800 | | San Francisco | CA | 94105-3601 | |
| Thomas E Boyle Attorneys At Law | | 300 Spruce St | Fl One | | Columbus | OH | 43215 | |
| Thomas Garvey Garvey & Sciotti Pc | R F Garvey D P Beck | 24825 Little Mack | | | St Clair Shores | MI | 48080 | |
| Tinell Frankie | | 1017 N Barron St | | | Eaton | OH | 45320 | |
| Towle Denison Smith & Tavera | | 10866 Wilshire Blvd | Ste 1270 | | Los Angeles | CA | 90024 | |
| Turinsky Paul J | John B Gibbons | 2000 Standard Bldg | 1370 Ontario St | | Cleveland | OH | 44113 | |
| Uaw | | 221 Dewey Ave | | | Rochester | NY | 14608 | |
| Uaw | | 1543 Alwidy Ave | | | Dayton | OH | 45408 | |
| Uaw | Solidarity House | 8000 Jefferson Ave | | | Detroit | MI | 48214 | |
| Uaw Local 467 | Connye Harper Esq | Uaw International | 8000 E Jefferson Ave | | Detroit | MI | 48214 | |
| Uaw Local 651 | Connye Harper Esq | Uaw International | 8000 E Jefferson Ave | | Detroit | MI | 48214 | |
| Viking Industries Llc | Cheryl Smith Fisher Esq | Magavern Magavern & Grimm Llp | 1100 Rand Bldg | 14 Lafayete Square | Buffalo | NY | 14203 | |
| Walsh & Katz Ltd | A S Katz R B Breisblatt | 120 South Riverside Plaza | 22nd Fl | | Chicago | IL | 60606 | |
| Walsworth Franklin Bevins & Mccall Llp | | 550 Montgomery St | 8th Fl | | San Francisco | CA | 94111 | |
| Warren Communications News | | 2115 Ward Ct Nw | | | Washington | DC | 20037 | |
| Watkins & Eager Pllc | D L Ayers J B Wilkins | The Emporium Bldg | Ste 300 | 400 E Capital St | Jackson | MS | 39201 | |
| Watkins Ludlam Winter & Stennis Pa | Alveno M Castilla Mb 5924 | 633 North State St | | | Jackson | MS | 39202-3306 | |
| Watkins Ludlam Winter & Stennis Pa | Alveno M Castilla Mb 5924 | 633 North State St | | | Jackson | MS | 39202-3306 | |
| Watts Donovan And Tilley Pa | James W Tilley | Arkansas Capitol Commerce Ctr | 200 South Commerce St | Ste 200 | Little Rock | AR | 72201-1728 | |
| Weaver And Young Pc | Gregory T Young | 32770 Franklin Rd | | | Franklin | MI | 48025-1117 | |
| Weitz & Luxenberg Pc | G Russell Ragland Esq | 180 Maiden Ln | | | New York | NY | 10038-4925 | |
| Whitney Gary | Helmer Friedman Llp | 723 Ocean Front Walk | | | Venice | CA | 90291 | |
| Whitney Gary | Helmer Friedman Llp | 723 Ocean Front Walk | | | Venice | CA | 90291 | |
| Whyte Hirschboeck Dudek Sc | Ann M Maher Esq | 555 East Wells St | Ste 1900 | | Milwaukee | WI | 53202 | |
| Wiley Rein & Fielding | Thomas Kirby | 1776 K St Nw | | | Washington | DC | 20006 | |
| Wilson Donna R | Chaklos Jungerheld Hahn | & Washburn Pc | PO Box 6128 | | Saginaw | MI | 48608 | |

In re: Delphi Corporation, et al.
Special Parties - Overnight Mail

| Company | Contact | ADDRESS1 | ADDRESS2 | ADDRESS3 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|---|
| Winston And Strawn Llp | K R Anderson K J Oshea | 35 W Wacker Dr | | | Chicago | IL | 60601 | |
| Wolf Halenstein Adler Freeman & Hertz Llp | Christpher S Hinton Esq | 270 Madison Ave | | | New York | NY | 10016-0601 | |
| Wood Ralph | | 807 E 32nd St | | | Anderson | IN | 46016-5429 | |
| Woodson Harold | Leonard Kruse Pc | 4190 Telegraph Rd | Ste 3500 | | Bloomfield Hills | MI | 48302 | |
| Wright Lindsey & Jennings | Greg Jones | 200 West Capital Ave | Ste 23000 | | Little Rock | AR | 72201-3699 | |
| Wright Lindsey & Jennings | Greg Jones | 200 West Capital Ave | Ste 23000 | | Little Rock | AR | 72201-3699 | |
| Wynn Jr James I | | 163 Marlborough Rd | | | Rochester | NY | 14619 | |
| Yaldo & Domestein Pllc | Scott S Yaldo Esq | 30150 Telegraph Rd | Ste 444 | | Bingham Farms | MI | 48025-4519 | |
| Yount Loretta | Kenneth J Ignozzi Esq | Dyer Garofalo Mann & Schultz | 131 North Ludlow St | Ste 1400 | Dayton | OH | 45402 | |
| Yzaguirre & Chapa | Roberto J Yzaguirre Esq | 6521 North 10th St | Ste A | | Mcallen | TX | 78504-3205 | |

# EXHIBIT M

In re: Delphi Corporation, et al.
Special Parties - Overnight Mail

| CREDITOR NAME | CREDITOR NOTICE NAME | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---|---|---|---|---|---|---|---|
| Flextronics | Joe Minville | Sr Director Business Development | 2 Robbins Road | Westford | MA | 01886 | |
| JCI | Jim Geschke | 5757 N Green Bay Avenue | PO Box 591 | Milwaukee | WI | 53201 | |
| Lear | Mr Mark Ritz | VP of Business Development | 21557 Telegraph Road | Southfield | MI | 48034 | |
| Sanhua | Zhaohui Lu Assistant to President | C 11 Century Plaza | No 3 Hangda Road | Hangzhou | Zhejiang | 310007 | China |
| Saturn Electronics and Engineering | Mr Wallace K Tsuha | 255 Rex Blvd | | Auburn Hills | Michigan | 48326 | |
| SDE | Yang Yi | No 218 Chang Jiang Road | | Chong Ming | Shanghai | 202178 | China |
| Shanghai Agriculture Industry and Comm | Chang Jiang General Corporation | No 7 Lane 263 Huashan Road | | | Shanghai | 263 7 | China |
| Siemens VDO | Dr Bertolt Dietrich Gartner | Sodener Strasse 9 | | Schwalbach | | D-65824 | Germany |
| Visteon | Mr Rich Miller | Director Business Strategy Group | 17000 Rotunda Drive | Dearborn | MI | 48120 | |

# EXHIBIT N

Delphi Corporation
Special Parties - Overnight Mail

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY |
|---------|---------|----------|----------|------|-------|-----|---------|
| Furukawa Electric North America APD, Inc. | ATTN: Shuji Hayashida, President & CEO | 47677 Galleon Drive | | Plymouth | MI | 48170 | |
| Furukawa Electric North America, Inc. | Attention: Yukimasa Shiga, Executive Vice President | 900 Lafayette Street | Suite 506 | Santa Clara | CA | 95050 | |
| The Furukawa Electric Co., Ltd. | ATTN: Shigenobu Abe, Manager International Business Development Automotive Products Division | 6-1, Marunouchi 2-chome | Chiyoda-ku | Tokyo | | 100-8322 | Japan |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

2/22/2006 10:10 AM
Book1

# EXHIBIT O

Delphi Corporation
Special Parties - Overnight Mail

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---------|---------|----------|----------|------|-------|-----|
| James P. Laurito | President and Chief Executive Officer | 89 East Avenue | | Rochester | NY | 14649 |
| Lockport Energy Associates, LP | Attn:  Tom Gesicki | 5706 Upper Mountain Road | | Lockport | NY | 14094 |
| New York Power Authority | Joseph Carline, Esq. | 123 Main Street | | White Plains | NY | 10601 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

2/22/2006 10:14 AM
28568 Lockport