| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | Hearing Date: March 9, 2006<br>Hearing Time: 10:00 a.m. |

```
-------------------------------------------------------
In re:                                          :     Chapter 11
                                                :
DELPHI CORP., et al.,                           :     Case No. 05 B 44481 (RDD)
                                                :
                              Debtors.          :     (Jointly Administered)
-------------------------------------------------------x
```

**AMENDED RESPONSE AND OBJECTION OF THE UNITED STATES TRUSTEE
TO MOTION OF APPALOOSA MANAGEMENT L.P. PURSUANT TO 11 U.S.C.
§ 1102(a)(2) FOR AN ORDER DIRECTING THE UNITED STATES TRUSTEE TO
APPOINT AN OFFICIAL COMMITTEE OF EQUITY SECURITY HOLDERS**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

**I.    INTRODUCTION**

      Deirdre A. Martini, United States Trustee for the Southern District of New York (the "United States Trustee"), hereby files her Amended Response and Objection to the Motion (the "Motion") of Appaloosa Management L.P. ("Appaloosa") seeking an order directing the United States Trustee to appoint an official committee of equity security holders.  The Court should deny the Motion for the following reasons:

    A.    The Debtors appear to be insolvent at this time; and

    B.    Appaloosa has failed to demonstrate that the Appointment of an equity committee is necessary to adequately represent equity security holders' interests.

**II.    FACTS**

    **A.    The Debtors**

    1.    On October 8, 2005, Delphi Corporation, et al. ("Delphi" or the "Debtors") filed their chapter 11 cases (the "Delphi Cases").  The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of

Bankruptcy Code.

2. Delphi is a large public company with global operations in more than 40 countries in the Americas, Asia and Europe and more than 180,000 employees. Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors. Delphi is one of the largest, if not the single largest, global supplier of vehicle electronics, transportation components, integrated systems and modules and other electronic technology. Delphi supplies products to nearly every major global automotive original equipment manufacturer. Delphi's former parent is General Motors Corporation ("GM"). Effective January 1, 1999, the assets and liabilities of various divisions and subsidiaries of GM were transferred to Delphi.

3. On October 20, 2005, the United States Trustee appointed an official committee of unsecured creditors (the "Committee") in the Delphi Cases.

4. On October 13, 2005, the Court entered an Order Under 11 U.S.C. § 521(l) and Rules 1007 and 9006(b) of the Federal Rules of Bankruptcy Procedure ("Fed. R. Bankr.P.") granting an extension of time to the Debtors until January 22, 2006 to file schedules and statements. *See* ECF Doc. No. 223.

5. On November 7, 2005 (the "November 7th Letter"), the United States Trustee received a letter from White & Case LLP, submitted on behalf of its client, Appaloosa, requesting that the United States Trustee exercise her discretionary authority under section 1102(a)(1) of the Bankruptcy Code to form an official statutory committee of equity holders in this case. A copy of the November 7th Letter is annexed as Exhibit G to the Motion and incorporated herein by reference. The November 7th Letter was contemporaneously

sent to counsel to the Debtors and counsel to the Committee.

6. On December 12, 2005, the United States Trustee received a response from counsel to the Committee regarding the November 7th Letter, which is annexed as Exhibit G to the Motion and incorporated herein by reference. Subsequently, on December 19, 2005, the United States Trustee received a response from the Debtors regarding the November 7th Letter, which is annexed as Exhibit H to the Motion and incorporated herein by reference.

7. On or about December 20, 2005, the Debtors filed a Current Report (Form-8-K) with the Securities and Exchange Commission, a copy of which is annexed as Exhibit H to the Motion and incorporated herein by reference.

8. At the time Appaloosa filed the Motion, the United States Trustee's decision regarding whether to appoint an official committee of equity security holders was under advisement.

9. On January 20, 2006, each of the forty-two Delphi Debtors filed their Schedules and Statements of Financial Affairs. The Schedules and Statements of Financial Affairs state the assets and liabilities of the individual Debtors.

10. On February 3, 2006, the United States Trustee convened the § 341(a) meeting of creditors. During the creditors' meeting, the United States Trustee and creditors examined two representatives of the Debtors, John J. Dellinger, Vice President and Chief Financial Officer, and John D. Sheehan, Vice-President, Chief Restructuring Officer and Controller.

11. Mr. Sheehan attested to the accuracy of the Schedules and Statements of Financial Affairs, including the accompanying Global Notes.

12. Mr. Sheehan and Mr. Dellinger acknowledged that the assets were listed at book value on the Schedules. Neither of them was able to provide an estimate of the market value of

the Debtors or their assets.

13.     After creditors had a chance to examine the Debtors' witnesses, the United States Trustee closed the meeting of creditors.

### C.    Indicia of Insolvency

#### 1.    The Schedules

14.     The Schedules for the forty-one Debtors show that, on the petition date, in the vast majority of the separate Delphi Cases, the Debtor's debts outweighed the value of its assets. *See* Exhibit 1.  Even where the individual Delphi Debtors appeared to be solvent on the petition date, the asset to debt ratio is low, and the asset values are insufficient to significantly offset the consolidated liabilities. *See, e.g.*, Exhibit 1, at 3, 7, 10, 17, 24, and 26.

#### 2.    Monthly Operating Reports

15.     On February 28, 2006, the Debtors filed their consolidated Monthly Operating Report ("MOR") for January 2006 (the "January 2006 MOR").  The balance sheet contained in the January 2006 MOR shows reports assets of $13.813 billion and liabilities totaling $20.184 billion. *See* Exhibit 2, at 5.  Total stockholders' deficit is reported as ($6.371 billion). *Id*.  The Debtors continue to accrue losses, with a net loss of ($121 million) in January 2005 and ($1.374 billion) since the petition date. *Id*. at 4.

#### 3.    The September 30, 2005 Form 10-Q Filed with the SEC.

16.     On November 9, 2005, the Debtors filed a Form 10-Q with the SEC for the quarter ending September 30, 2005.[1]  The balance sheet in the 10-Q shows that liabilities have outweighed assets since at least 2004.  *See* Exhibit 3, at 3.  In addition, the Debtors sustained

---

[1]     To the United States Trustee's knowledge, this is the most recent 10-Q filed by the Debtors.

- 4 -

growing net losses during 2004 through the third quarter of 2005. *See id.* at 2. Moreover, the Debtors acknowledge that they are

> facing considerable challenges due to revenue decreases and related pricing pressures stemming from a substantial slowdown in GM's North American vehicle production. Although Delphi has shown steady growth of its non-GM business, these gains have been overtaken by the decrease of GM sales.

*See id.* at 4. In addition, "increasing commodity prices have also had a material adverse impact on Delphi's financial performance." *Id.*

### III.    ARGUMENT

#### A.    The Debtors Appear to be Insolvent at this Time.

17.    Section 1102(a)(1) of the Bankruptcy Code provides that:

> Except as provided in paragraph (3), as soon as practicable after the order for relief under chapter 11 of this title, the United States trustee shall appoint a committee of creditors holding unsecured claims and **may appoint additional committees** of creditors or **of equity security holders as the United States Trustee deems appropriate.**

11 U.S.C. §1102(a)(1) (emphasis added). The plain language of the statute indicates that the appointment of an equity committee is a discretionary act of the United States Trustee.

18.    In determining whether to appoint an equity committee in any case in which there is a request, the United States Trustee's analysis includes a review of the following:

    a.    The capital structure, organizational structure and financial posture of the debtor as reported in the verified bankruptcy petitions, schedules, affidavits and exhibits;

    b.    SEC filings on record at the commencement of the case and filed subsequent to the commencement of the case;

    c.    Input from the debtor, the creditors' committee and the SEC with regard to the desirability of appointing an equity committee; and

   d.  Written documentation regarding the debtor's financial position from concerned equity holders and from counsel to the moving parties.

  19. In analyzing the solvency of a debtor in the equity committee context, the United States Trustee looks to the definition of the term "insolvent" in the Bankruptcy Code.  Section 101(32) provides in part:

> with reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . .

11 U.S.C. § 101(32)(A).  Section 101(32) requires a "balance sheet approach to insolvency."  *In re Nirvana Restaurant*, Inc., — B.R.—, 2006 WL 435821, at *7 (Bankr. S.D.N.Y. February 24, 2006.)  If the debtor is a going concern, fair valuation means "the fair market value of the debtor's assets that could be obtained if sold in a prudent manner within a reasonable period of time to pay the debtor's debts."  *Id.* (*quoting Lawson v. Ford Motor Co. (In re Roblin Indus., Inc.*), 78 F.3d 30, 35 (2d Cir.1996)).

  20. The analysis starts with a review of the balance sheet, with the recognition that book value does not always provide a fair estimate of market value.  *Id*. at *8.  However, book values "may still support a court's inference of an entity's insolvency in some circumstances."  *In re Flutie New York Company*, 310 B.R. 31, 52 (Bankr. S.D.N.Y. 2004) (*quoting In re Roblin Industries*, 78 F.3d at 36.)

  21. Other evidence of insolvency can be found in SEC filings and accompanying financial statements, including (1) reports of negative net worth, (2) statements or figures that show sustained losses; (3) facts that show that the debtor is operating in a depressed market, and (4) reports of failure to pay bank debt.  *In re Roblin Industries, Inc.*, 78 F.3d at 37.  However, "whenever possible, a determination of insolvency should be based on seasonable appraisals or

expert testimony." *Id.* at 38.

22. The evidence currently available to the United States Trustee supports an inference that the Debtors are insolvent. The Schedules, MORs, and SEC filings show an excess of liabilities over the book value of assets. *See* Exhibits 1 through 3. The Debtors have sustained operating losses over several years, and the losses continue in chapter 11. *See* Exhibits 2 and 3. The Debtors are operating in a depressed market, with increasing commodity prices and decreasing business from GM, which offset any gains in new areas of business. *See* Exhibit 3, at 4. In addition, it is unclear whether the Debtors know the fair market value of their assets in the bankruptcy context at this early stage of the cases, in light of the testimony at the § 341 meeting. These facts (along with evidence that will surely result from the discovery undertaken by the Debtors and Appaloosa) should be sufficient for the Court to make a finding that the Debtors are insolvent.

    **B.    Appaloosa Has Failed to Demonstrate That the Appointment of an Equity Committee Is Necessary to Adequately Represent Equity Security Holders' Interests.**

23. Section 1102(a)(2) of the Bankruptcy Code provides that:

On request of a party in interest, the court may order the appointment of additional committees of ... equity security holders if necessary to assure adequate representation of ... equity security holders. The United States trustee shall appoint any such committee.

11 U.S.C. §1102(a)(2). *See generally* Fed. R. Bankr. P. 2020.

24. The statute gives the Court discretion to order the appointment of an equity committee if necessary to assure adequate representation of equity security holders. *In re Johns-Manville Corp.*, 68 B.R. 155, 159 (S.D.N.Y. 1986). However, § 1102(a)(2) does not set forth a test of adequate representation so the Court must examine the facts of each case. *Id*. *See also In re Beker Indus. Corp.*, 55 B.R. 945, 948 (Bankr. S.D.N.Y. 1985) (adequate representation

is not defined in the statute, but requires interpretation by the Court).

25.    Courts consider a number of non-exclusive factors in determining whether there is adequate representation, including the debtor's insolvency, the number of shareholders, the complexity of the case, and whether the cost of the committee would significantly outweigh the concern for adequate representation. *In re Johns-Manville Corp.*, 68 B.R. at 159-60.

26.    In the Delphi Cases, the factors relevant to the determination of adequate representation militate against the Court ordering appointment of an equity committee.

27.    First, the Debtors' solvency is at issue, and if the Debtors are insolvent, appointment of an equity committee is unwarranted.

28.    Second, it is true that the Debtors have a large number of shareholders. However, even though the Debtors operate multi-billion dollar international businesses, the issues raised in the Delphi Cases are not complex. Like most companies operating in bankruptcy, the Debtors must reduce costs, especially legacy costs, wind down unprofitable businesses to mitigate the effect of the depressed auto industry, and increase revenues in the profitable industries.

29.    Fourth, the benefit of appointing an equity committee this early in the case is outweighed by the cost. The case has been pending for only five months. A successful emergence from bankruptcy is far from certain, and a 100% return to unsecured creditors, with a surplus to equity, is speculative. Moreover, if the actions of committees in many chapter 11 cases are any indication, an equity committee would likely seek to retain general counsel, conflicts counsel, a financial advisor, an investment banker, and multi various other professionals. This cost, when the prospect of a return to equity is mere conjecture, outweighs any concern for adequate representation.

30.    The shareholders in the Delphi Cases are not disenfranchised from the chapter 11

process. Equity holders have standing to be heard pursuant to 11 U.S.C. § 1109(b) on the adequacy of the disclosure statement and the confirmation of the proposed plan.

31. The shareholders may also form an unofficial *ad hoc* committee to represent their interests. If the efforts of the *ad hoc* committee confer benefit on the estate, the *ad hoc* committee may seek an award of expenses under 11 U.S.C. § 503(b) at the successful conclusion of the Delphi Cases.

32. Based upon the foregoing, Appaloosa has not shown that appointment of an an equity committee is required to assure shareholders' adequate representation at this time.

## IV. CONCLUSION

For the foregoing reasons, the United States Trustee requests that the Court exercise its discretion and deny the Motion, sustain the United States Trustee's objections, and grant other relief as is just.

Dated: New York, New York
       March 2, 2005

                                        DEIRDRE A. MARTINI
                                        UNITED STATES TRUSTEE

                                    By: /s/ Alicia M. Leonhard
                                        Alicia M. Leonhard (AML-6060)
                                        Attorney

                                        33 Whitehall Street
                                        21st Floor
                                        New York, New York 10004-2112
                                        Tel. No. (212) 510-0500
                                        Fax. No. (212) 668-2255