| | | |
|---|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK | | Hearing Date:  March 9, 2006<br>Hearing Time:  10:00 a.m. |
| ------------------------------------------------------- | | |
| In re: | : | Chapter 11 |
| | : | |
| DELPHI CORP., *et al.*, | : | Case No. 05 B 44481 (RDD) |
| | : | |
| Debtors. | : | (Jointly Administered) |
| ------------------------------------------------------- | x | |

**UNITED STATES TRUSTEE'S OBJECTION TO MOTION OF GENERAL
MOTORS REQUESTING AN ORDER TO CHANGE THE MEMBERSHIP
OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

## I.    INTRODUCTION

Deirdre A. Martini, the United States Trustee for the Southern District of New York (the "United States Trustee"), hereby files her objection (the "Objection") to the Motion of General Motors ("GM") Requesting an Order to Change the Membership of the Official Committee of Unsecured Creditors (the "Motion"), on the following grounds:

    A.    The United States Trustee's formation of the Official Committee of Unsecured Creditors (the "Committee") was not arbitrary and capricious; and

    B.    GM has failed to demonstrate that appointment to the Committee is necessary for adequate representation of its interests.

## II.  FACTS

    **A.**    **The Debtors**

    1.    On October 8, 2005, Delphi Corporation, *et al.* ("Delphi" or the "Debtors") filed their chapter 11 cases (the "Delphi Cases"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of

Bankruptcy Code.

2.    Delphi is a large public company with global operations in more than 40 countries in the Americas, Asia and Europe and more than 180,000 employees. Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest pubic company business reorganization in terms of assets. Delphi's foreign subsidiaries are not chapter 11 debtors. Delphi is one of the largest, if not the single largest, global supplier of vehicle electronics, transportation components, integrated systems and modules and other electronic technology. Delphi supplies products to nearly every major global automotive original equipment manufacturer.

3.    GM is Delphi's former parent. Effective January 1, 1999, the assets and liabilities of various divisions and subsidiaries of GM were transferred to Delphi.

4.    The Debtors filed the Delphi Cases to streamline operations and preserve value because Delphi's financial condition had been deteriorating since at least 2003 due, among other reasons, to legacy liabilities and high fixed labor costs, reduction in GM's annual production, and increased commodity prices. *See* ECF Doc. No. 212, ¶¶ 10-12.

**B.    Formation of the Committee in the Delphi Cases**

5.    The United States Trustee scheduled an organizational meeting to form a committee of unsecured creditors (the "Organizational Meeting") for October 17, 2005 at 11:00 a.m. at the Marriott Marquis New York.

6.    On October 8, 2005, the United States Trustee posted the Notice of Organizational Meeting for Unsecured Creditors (the "Notice") on the Bankruptcy Court's electronic filing system (Docket, ECF No. 37) and caused the Notice to be served, through the Debtor's noticing agent, on the Debtor's top one hundred unsecured creditors. Included with the

Notice was a questionnaire (the "Questionnaire") asking each creditor to provide, among other information, (a) the creditor's identity (b) the amount of unsecured claims; (c) the nature of the claim; and (d) any insider status of the creditor.

7.      Prior to the Organizational Meeting, over 100 creditors submitted Questionnaires to the United States Trustee indicating an interest in serving on the Committee. Over 80 creditors attended the Organizational Meeting. Representatives of GM submitted a questionnaire and attended the Organizational Meeting

8.      At the Organizational Meeting, after an introduction by the United States Trustee and a presentation by the Debtors' representatives, the United States Trustee and her staff adjourned to a private room to continue deliberations which had begun upon receipt of the Questionnaires. During the deliberations, the United States Trustee and her staff met with certain creditors and their counsel to resolve questions and obtain additional information.

9.      Following the deliberations and a review of all available information, the United States Trustee formed the seven-member Committee which consists of: four trade creditors, a union, an indenture trustee and an institutional investor. In making her decision, the United States Trustee considered financial information filed with the Court, information obtained in meetings with the Debtor and various creditors, and information that came to light during the Organizational Meeting.

10.     On October 20, 2005, the United States Trustee filed a Notice of Appointment of the following seven creditors to the Committee:

    (a)     Electronic Data Systems, Corp., a trade creditor
    (b)     General Electric Company, a trade creditor
    (c)     Flextronics International Asia-Pacific, Ltd., a trade creditor
    (d)     Freescale Semiconductor, Inc., a trade creditor
    (e)     IUE-CWA, a labor union representative
    (f)     Wilmington Trust Company, the Indenture Trustee for the Senior Notes

  (g)  Capital Research and Management Company ("Cap Re"), an institutional investor

*See* Notice of Appointment of Creditors' Committee (ECF Doc. No. 469.)

  **C.**  **Requests for Reconstitution of the Committee**

  11.  After the formation of the Committee, Tyco Electronics Corp. ("Tyco"), the United Auto Workers (the "UAW"), the Pension Benefit Guaranty Board ("PBGC"), and Law Debenture Trust Company of New York (the "Law Debenture") requested appointment to the Committee in letters to the United States Trustee. After consultation with the parties-in interest, the United States Trustee, in a letter dated December 5, 2005, declined to reconstitute the Committee.

  12.  On December 19, 2005, Law Debenture filed a motion for an order of appointment to the Committee. The Court denied the motion on February 8, 2006, under the standards set forth in *In re Barney's, Inc.*, 197 B.R. 434 (Bankr. S.D.N.Y. 1996). Law Debenture filed a Notice of Appeal of the Court's decision on February 17, 2006.

  13.  The UAW and the PBGC eventually joined the Committee as *ex officio* members. However, contrary to GM's allegations (Motion, ¶ 16), the United States Trustee had no official role in the Committee's decision to confer *ex officio* status on the UAW and the PBGC. The appointment of *ex officio* members is a matter solely within the Committee's authority.

  14.  GM did not make a formal request for inclusion on the Committee. Instead, GM filed the Motion on February 17, 2006.

**III.**  **ARGUMENT**

  **A.**  **The United States Trustee's Formation of the Committee Was Not Arbitrary and Capricious.**

  15.  There is a split of authority in the Southern District of New York as to whether the Court has the power to add creditors to a committee appointed by the United States Trustee.

On the one hand, the Court in *In re Drexel Burnham Lambert*, 118 B.R. 209, 210 (Bankr. S.D.N.Y. 1990), interpreted the plain language of 11 U.S.C. § 1102(a)(2) in light of the 1986 amendments to the Bankruptcy Code. Section 1102(a)(2) provides in part:

> On request of a party in interest, the court may order the appointment of additional committees of creditors . . . if necessary to assure adequate representation of creditors . . . . The United States Trustee shall appoint any such committees.

11 U.S.C. § 1102(a)(2) (2005). The Court, in denying a creditor's request for appointment to the creditors' committee, stated:

> Noteworthy is the absence of any indication in [§ 1102(a)(2)] that the court may add to or delete an unsecured creditor from a committee. . . . .
>
> [S]ection 1102(a) provides that inadequate representation is to be addressed by a court through the creation of another committee. That is what Congress wrote. Its words are not to be ignored. Perhaps it should change the statute, perhaps the cost could be ameliorated, or perhaps Congress contemplated relief under other statutes not cited or analyzed by the Liquidators. But section 1102, relied on by them, cannot be said to afford the relief they seek.

*Id.* at 210-211.

16. On the other hand, in *In re Barneys, Inc.*, the Court held that under 11 U.S.C. § 105, the Court may review the United States Trustee's decision on the size and composition of a creditors' committee, to determine whether the United States Trustee "acted arbitrarily or capriciously, or otherwise abused its discretion." *In re Barney's, Inc.*, 197 B.R. at 439. A decision is **not** arbitrary or capricious

> unless it is based on an erroneous conclusion of law, a record devoid of evidence on which the decision maker could rationally have based its decision, or is otherwise patently unreasonable, arbitrary, or fanciful.

*Id.* (citations omitted). A party seeking review of a decision of the United States Trustee must present "substantial evidence" that the United States Trustee's appointment of a committee was arbitrary and capricious. *Id*.

- 5 -

16.     Presuming that *In re Barney's* controls, GM has presented no evidence – much less substantial evidence – that the United States Trustee acted arbitrarily or capriciously. *See* Motion, at 14-15. On the contrary, in making her decision, the United States Trustee solicited and reviewed questionnaires from creditors, conferred with creditors and the Debtors, reviewed information available at the time of the Organizational Meeting, and formed a representative committee.

**B.     GM Has Failed to Demonstrate that Appointment to the Committee is Necessary for Adequate Representation of its Interests.**

17.     GM skirts the holding of *In re Barney's* and this Court's recent reliance on *In re Barney's* in denying Law Debenture's similar motion. Instead, GM bases most of its argument on cases, including *In re Enron*, 279 B.R. 671 (Bankr. S.D.N.Y. 2002), *In re Texaco, Inc.*, 79 B.R. 560, 566 (Bankr. S.D.N.Y. 1987), and *In re McLean Industries*, 70 B.R. 852, 860-63 (Bankr. S.D.N.Y. 1987), which decided whether the United States Trustee erred in failing to appoint additional committees of creditors.

18.     The cited cases interpret § 1102(a)(2) which governs the appointment of additional committees, and arguably neither the cases nor the statute is relevant to a review of the United States Trustee's refusal to appoint a specific member to a committee. However, even under the § 1102(a)(2) standard, the United States Trustee did not err in refusing to appoint GM to the Committee.[1]

19.     The crux of GM's argument is that the Committee does not adequately represent its interests. *See* Motion, at 11-14. The term "adequate representation" is not defined in the Bankruptcy Code. *In re Enron*, 279 B.R. at 684-685. Therefore, in determining whether there is

---

[1]     The United States Trustee does not concede that the § 1102(a)(2) standard applies.

- 6 -

adequate representation, Courts consider the following factors on a case by case basis: (1) the ability of the committee to function; (2) the nature of the case; and (3) the standing and desires of the various constituencies. *Id*. at 685. GM provides no evidence that any of these criteria are met.

       **1.**  **The Committee Is Able to Function.**

  20.  First, GM does not cite to any facts that would show that the Committee is not functioning and productive. Instead, it argues that the Committee is not properly functioning because GM's interests are not adequately represented. *See* Motion, ¶ 28 (citing *In re Enron*, 279 B.R. at 686.) GM complains that, with the *ex officio* participation of the PBGC and the UAW, it is "the sole unrepresented major constituent." Motion, ¶ 29.

  21.  GM also says that its claims as a "customer" of Delphi, including "warranty claims, potential rejection damage claims, setoff and other prepetition claims" are not adequately represented by the "institutional investor, four suppliers, a labor union representative, and an indenture trustee" or the two *ex officio* members. *Id*.

  22.  GM fails to point out, however, how its unsecured claims differ from the unsecured claims of other creditors. Setoffs arise in the context of many unsecured claims; and any unsecured creditor with a contract has potential rejection damages or warranty claims.

       **2.**  **The Size and Complexity of the Delphi Cases Do Not Warrant Appointing GM to the Committee.**

  23.  GM also argues that the size and complexity of the Delphi Cases warrants its inclusion on the Committee. *See* Motion, ¶ 26. It is true that the Debtors operate multibillion dollar international businesses. However, the issues raised in the Delphi Cases are not complex. Like most companies operating in bankruptcy, the Debtors must reduce costs, especially legacy

costs, wind down unprofitable businesses to mitigate the effect of the depressed auto industry, and increase revenues in the profitable industries.

24.    GM claims that the Delphi's reorganization will be impaired if GM is not on the Committee. *See* Motion, ¶ 26. However, GM fails to discuss the effect of its status as the former parent of Delphi, with obligations to Delphi with respect to legacy costs, pricing, and other issues. The status and obligations create inherent conflicts that preclude meaningful participation by GM on the Committee.

25.    GM argues that under present circumstances, the Committee is GM's adversary because "the Debtors provide the Committee with financial information the Debtors refuse to provide [GM], thereby creating suspicious and unlevel negotiating positions that only exacerbate the monumental problems that must be resolved." *See* Motion, ¶ 26.

26.    GM does not explain how membership on the Committee would alter its adversarial relationship with the Debtors or the Committee. Based on GM's argument, it is possible that GM's membership would impair the Committee's ability to function if the Debtors refused to share confidential information with the Committee due to GM's presence. In addition, GM would have to recuse itself from issues that are cornerstone of the Delphi Cases.

### 3.    The Committee Opposes GM's Appointment to the Committee.

27.    GM argues that the third criterion, standing and desires of the constituents, is met because it is critical that customers, such as GM, sit on the Committee. *See* Motion, ¶ 30. This argument belies the fact that the Committee has opposed the Motion and that the Debtors are apparently not taking a position on the Motion.

28. GM has relied on a standard that is of questionable relevance to the issues in the Motion. However, even under this standard, GM has not met its burden of proving inadequate representation.

## IV. CONCLUSION

Based on the foregoing, the United States Trustee requests that the Court sustain her Objection, deny the Motion, and grant other relief as is just.

Dated: New York, NY
      March 6, 2006

                                          DEIRDRE A. MARTINI
                                          UNITED STATES TRUSTEE

                By:    /s/ Alicia M. Leonhard
                        Alicia M. Leonhard (AML-6060)
                        Attorney

                        33 Whitehall Street
                        21st Floor
                        New York, New York 10004-2112
                        Tel. No. (212) 510-0500
                        Fax. No. (212) 668-2255