**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (admitted *pro hac vice*)
Mark A. Broude (MB-1902)
Email: robert.rosenberg@lw.com
          mitchell.seider@lw.com
          mark.broude@lw.com

Counsel for The Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| Delphi Corp., et al., | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | |
| | ) | Jointly Administered |
| | ) | |

**OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED
CREDITORS TO MOTION FOR ORDER DIRECTING APPOINTMENT OF
GENERAL MOTORS CORPORATION TO STATUTORY CREDITORS' COMMITTEE**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of Delphi Corporation, *et al.* (the "Debtors"), by and through its undersigned counsel, hereby objects (the "Objection") to the Motion (the "Motion") for an Order Directing Appointment of General Motors Corporation ("GM") to the Statutory Creditors' Committee.[1] In support of its Objection, the Committee respectfully states as follows:

---

[1] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Motion.

NY\1117531.6

**PRELIMINARY STATEMENT**

The Committee objects to the Motion because it is unsupported by the facts and contrary to the law. Contrary to GM's statements in the Motion, its interests as a general unsecured creditor (to the extent it even is a creditor) are more than adequately represented by the current members of the Committee. More to the point, it was not arbitrary and capricious for the Office of the United States Trustee to find that the current membership of the Committee adequately represented the interests of all general unsecured creditors in these cases, including the interests of GM (to the extent it is a creditor). Most critically, the insertion of GM onto the Committee would cripple if not destroy the Committee's capacity to function as a fiduciary seeking to maximize the returns to unsecured creditors in these cases.

As a result, the Motion should be denied.

**FACTUAL BACKGROUND**

The Committee

1. The Committee was appointed on October 17, 2005, nine days after the Debtors' first petition date. The original members of the Committee were (a) Capital Research and Management Company; (b) Electronic Data Systems Corp.; (c) Flextronics International Asia-Pacific, Ltd. ("Flextronics"); (d) Freescale Semiconductor, Inc.; (e) General Electric Company; (f) IUE-CWA, and (g) Wilmington Trust Company, as Indenture Trustee. Flextronics has resigned from the Committee, and the Pension Benefit Guaranty Corporation (the "PBGC") and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW") have recently joined the Committee as *ex officio* members. Finally, on March 6, 2006, Tyco Electronics Corporation ("Tyco") was appointed to the Committee as full voting member.

2. Since the beginning of these cases, several parties have tried to join the Committee. Among others, Law Debenture Trust Company of New York ("Law Debenture"), the UAW, and the PBGC petitioned the Office of the United States Trustee (the "Trustee"), the Debtors, and the Committee for addition to the Committee. Law Debenture and UAW both filed motions with this Court seeking an order compelling the Trustee to add each to the Committee. As this Court is well aware, Law Debenture's motion was denied by this Court, and the UAW's motion was withdrawn following the Committee's invitation to the UAW to join the Committee as an *ex officio* member.

The Motion

3. Now GM seeks an order compelling its addition to the Committee. GM argues that it should be added to the Committee as a representative of the Debtors' "customers," and because it is the only "major constituency without a seat at the Committee table." Motion, ¶ 26. In support of the Motion, GM asserts that it is the largest general unsecured creditor in these cases by virtue of various warranty, contract, potential rejection, and other claims that it defines in the aggregate as "General Motors Prepetition Claims." GM further asserts that it has been trying to join the Committee since the beginning of these cases, that there were discussions among GM, the Debtors, the Committee, and the Trustee regarding GM's addition to the Committee, and that the Trustee decided to not appoint GM to the Committee because of the Committee's objection thereto.

**OBJECTION**

4. The Committee objects to the Motion because it is unsupported by the facts and is contrary to the law, and because its approval would end the Committee's capacity to function constructively in these cases.

3

5. As a result of Law Debenture's motion, this Court has already considered the standards by which it should review a decision by the Trustee regarding inclusion on the Committee. In considering that motion, this Court found that it should review the Trustee's decision regarding the makeup of the Committee to determine if the decision was an 'abuse of discretion,' or was 'arbitrary and capricious.' See Transcript, January 5, 2006, 166:16 – 167:9; see also In re Barney's Inc., 197 B.R. 431, 439 (Bankr. S.D.N.Y. 1996). That decision was a sound one; no court in this Circuit has applied a more liberal review standard under these circumstances (on the other hand, some have found no review jurisdiction at all). Id.; In re Victory Mkts., 196 B.R. 1 (Bankr. N.D.N.Y. 1995); In re Hills Stores Co., 137 B.R. 4 (Bankr. S.D.N.Y. 1992); In re Drexel Burnham Lambert Group, Inc., 118 B.R. 209 (Bankr. S.D.N.Y. 1990); In re McLean Industries, Inc., 70 B.R. 852 (Bankr. S.D.N.Y. 1987). Although GM argues otherwise, it cites only cases outside the Second Circuit and cases considering the power of a Bankruptcy Court to appoint additional committees (as opposed to the issue for this Motion, that is a power expressly granted to courts pursuant to section 1102(a)(2)). See Motion, ¶ 20; see also In re Enron Corp., 279 B.R. 671 (Bankr. S.D.N.Y. 2002) (reviewing determination of whether to appoint additional creditors' committee under de novo standard); In re Texaco, Inc., 79 B.R. 560 (Bankr. S.D.N.Y. 1987) (reviewing determination of whether to disband one of two committees).

6. Further, "[a] decision is not 'arbitrary and capricious' unless it is based on an erroneous conclusion of law, a record devoid of evidence on which the decision maker could rationally have based its decision, or is otherwise patently unreasonable, arbitrary or fanciful." In re Barney's, Inc., 197 B.R. at 439 (citations omitted). GM, as movant, bears the burden of

4

providing "substantial evidence" that the trustee's decision was arbitrary and capricious. See id.; see also In re Dow Corning Corp., 194 B.R. 121, 144 (Bankr. E.D. Mich. 1996).

7. Despite the Court's clear guidance to the contrary, and despite this Circuit's unanimous prior decisions, GM still argues that this Court should review the Trustee's decision *de novo*. However, in the present case, the outcome of GM's Motion will be the same under either standard. Regardless of the standard applied, consideration of the Motion is surprisingly straightforward – there is simply no reasonable basis on which GM can argue that this Court should compel the Trustee to appoint it to the Committee. By inference, GM almost admits as much through the arguments it offers. In support of its Motion, GM offers only two arguments as to why this Court should compel its addition to the Committee – (1) the Debtors' customers, as a class, are not represented on the Committee, and (2) GM is the only major constituency without a seat at the Committee table. Needless to say, neither argument is legally relevant, and in fact both arguments actually militate against adding GM to the Committee.

8. As an initial matter, all of the factual predicates for these arguments are suspect at best. First, although GM claims it is the largest unsecured creditor in these cases, it is just as likely that GM has no valid unsubordinated claim against the Debtors' estates or that GM is a significant net debtor of the estates. Each claim identified by GM in the Motion is either contingent or unliquidated (and may be disallowed in its entirety), subject to subordination or recharacterization, or otherwise subject to challenge on its merits. Moreover, the Committee is closely examining the circumstances of the 1999 spin-off of the Debtors by GM and the array of agreements entered into by the Debtors for GM's benefit, including but by no means limited to agreements under which the Debtors (i) assumed and paid since the 1999 spin-off massive GM wage and legacy liabilities and (ii) apparently promised, in 1999, to match the pension and

5

OPEB benefits offered by GM to the UAW in 2003.  Some or all of these agreements are suspect and may well result in the conclusion that challenges to any asserted claims and/or affirmative relief are appropriate.

9. Second, although GM attempts to create the inference that the UAW and PBGC have been added to the Committee as *ex officio* members as a result of conversations or negotiations among the Committee, the Debtors, the Trustee, the PBGC, and the UAW, that inference is simply not true.  The Committee has never been involved in any multi-party discussion regarding the addition of these or any other parties to the Committee, and the Committee unilaterally decided to extend an offer of *ex officio* membership to those parties because it thought such an offer would be in the best interests of all general unsecured creditors in these cases.

10. The Debtors' customers, as a "class of creditors," are not represented on the Committee because the customers, as customers, are not a class of unsecured creditors.  Customers are not owed money <u>by</u> the Debtors, but rather owe money <u>to</u> the Debtors.  To the extent that the customers are owed money by the Debtors for warranty, indemnity, guaranty, return, or other obligations, they are all general unsecured creditors of the exact same priority, nature, and "class" as at least four voting members of the Committee, if not <u>every single</u> member of the Committee.  <u>See</u> <u>e.g.</u> <u>In re Garden Ridge Corp.</u>, 2005 WL 523129 (Bankr. D. Del. Mar. 2, 2005) ("creditor groups are adequately represented if the interests of each group 'have a meaningful voice in the committee relative to their posture in the case.").  As such, to the extent that GM is a creditor of the Debtors, and the Committee does not admit that it is, its interests are more than adequately represented by the current members of the Committee.  To the extent that the Debtors and their estates are creditors of GM (either because GM is a customer of the

6

Debtors or because GM is otherwise liable to the estates), it is not entitled to representation on the Committee.

11. Finally, GM argues that it should be given a 'seat at the Committee table' because (a) the other 'major constituents' have a seat, and (b) it is necessary to facilitate its negotiations with the Debtors, PBGC, and the UAW. Clearly, seeking 'a seat at the Committee table' for parochial negotiating purposes, or because other parties have such a seat, is not relevant to adequate representation, and is not a compelling argument for reversing the Trustee's considered decision.

12. In fact, these arguments are quite persuasive evidence that the Motion should be denied. GM argues that it needs "a seat at the Committee table" because the PBGC and the UAW each have one, and that therefore "the current configuration of the Committee renders the Committee an adversary of [GM] rather than a statutory representative of it." Motion, ¶ 26. That statement, in and of itself, shows GM's fundamental misunderstanding about the role of the Committee, and the responsibility of each member thereof. Regardless of who its members are, the Committee represents all general unsecured creditors in these cases. The Committee cannot be a platform from which an individual creditor, customer or potential defendant advocates its own interests, and such individual interests cannot be the basis for compelling the Trustee to amend her earlier decision.

13. That statement also shows a fundamental misunderstanding (or misstatement) of GM's role in these cases. As the former parent of the Debtors, one of the key players in the labor negotiations in these cases, the single largest customer of the Debtors, and the self-proclaimed largest creditor of the Debtors, it is intimately and critically involved in

7

substantially (if not literally) every aspect of these cases.[2] GM asserts that it is adverse to the Committee as currently constituted; however, if GM is in fact adverse to the Committee, such adversity is a product of its role in these cases and its role in the creation of the problems that led their filing, not because of its absence from the Committee.

14. The inference of GM's argument is that adding GM to the Committee will magically eliminate the asserted adversity. However, adding GM to the Committee will not change the relationship between GM and the Committee, or somehow facilitate negotiations between GM and the Committee, particularly if (as has been the case so far) GM does not want those negotiations to occur. If GM has an honest willingness to engage the Committee, the Committee stands ready to negotiate with GM at any time.

15. Moreover, because of GM's level of involvement in these cases, its inclusion on the Committee would likely render the Committee incapable of conducting its duties effectively. There will very likely be few (if any) issues in the future that do not involve GM in some form, and including GM in the Committee's discussions thereon, or requiring the Committee continually to exclude GM therefrom, would chill if not entirely preclude meaningful discussion and consideration. In fact, the simple process of excluding GM from certain discussions could divulge critical strategic aspects of these cases in the future.

16. More importantly, preserving the independence and effectiveness of the Committee by denying the Motion would actually encourage a more reliable and arms-length process, and would preserve the critical balance between constituencies that currently exists. As the Debtors have repeatedly stressed to this Court, the single most critical aspect of these cases is

---

[2] In fact, for these reasons, the Committee offered to meet with GM regularly, even on a weekly basis following the Committee meetings to discuss any issues GM may feel appropriate, and to create an opportunity for consensus building between the Committee and GM. GM declined that invitation.

8

NY\1117531.6

the negotiation of a consensual resolution to the Debtors' "labor issues." To date, that negotiation has been between and among the Debtors, the various union constituencies, and GM. As the statutory representative of all of the Debtor's unsecured creditors, the Committee has repeatedly requested of the parties, including GM, that the Committee be invited to participate in (or at least observe) the negotiation of labor issues. GM in particular has declined these requests without explanation, even going so far as to refuse to let the Committee see any term sheets that it may have given the Debtors or the UAW. GM should understand, but apparently does not, that the Committee, as the party charged with acting for the unsecured creditors in these cases, has a deep interest in any negotiated resolution of Delphi's legacy liability issues. By the same token, GM should recognize, but apparently does not, that no settlement concerning these issues can occur without the active participation of the Committee. Given that, according to published reports, the timely resolution of GM's Delphi issues is critical to a GM turnaround (including perhaps GM's sale of a majority interest in GMAC), the Committee expected GM to engage it constructively on matters that are vital to Delphi's reorganization. An attempt to muscle its way on to the Committee, and a refusal to negotiate or even discuss the real issues, does not constitute such engagement.

17. In sum, GM's plea for a "seat at the Committee table" deflects attention from the "table" at which it is important to sit. Each of the parties that is currently involved in the negotiation of labor issues has its own powerful incentive to negotiate a consensual resolution, and the Debtors and the unions have a powerful incentive to maximize the contribution of GM to that solution. Not one of those parties, however, has any incentive to limit the claims on the Debtors' estates that result from that solution. To date, the Committee, the only party with an incentive to minimize claims against the estate, has been entirely excluded

9

NY\1117531.6

from negotiation of labor issues. The Committee must, can, and will speak on behalf of the general unsecured creditors in these cases, and adding GM to the Committee would only challenge, if not destroy, the ability of the Committee to do so.

18. Finally, the addition of GM to the Committee would also substantially limit the Committee's ability to work with the Debtors throughout these cases. GM asserts that the Debtors have been able to share with the Committee insights and information that they have not shared with GM. To the extent that assertion is true, allowing GM a "seat at the Committee table" would destroy that crucial working relationship. In a January 26, 2006 press release, GM estimated that its liabilities related to benefit guarantees for certain Delphi employees would range from $3.6 billion to $12 billion. Considering GM's overwhelming interest in minimizing exposure within that range (and in preventing the range from expanding), the Debtors would understandably recoil at sharing benefit-related information with a Committee that includes GM.

19. As a result of all of the above, the decision of the trustee to constitute the Committee without GM was appropriate and proper under any standard of review, and was clearly not arbitrary and capricious or an abuse of discretion.

## **CONCLUSION**

**WHEREFORE,** the Committee respectfully requests that this Court deny the Motion, and grant the Committee such other relief as is just and proper.

Dated: March 6, 2006
      New York, New York

                      **LATHAM & WATKINS LLP**

                      By: /s/ Robert J. Rosenberg
                          Robert J. Rosenberg (RR-9585)
                          Mitchell A. Seider
                          Mark A. Broude (MB-1902)
                          885 Third Avenue, Suite 1000
                          New York, New York 10022
                          Telephone: (212) 906-1200

                      Attorneys for the Official Committee
                      of Unsecured Creditors