STATE OF MICHIGAN
IN THE CIRCUIT COURT FOR THE COUNTY OF SAGINAW

CINDIE L. PALMER as Personal Representative of
the Estate of MICHAEL W. PALMER, Deceased,

        Plaintiff,

vs.

File No. 01- 40359 -NO
HON: Robert L. Kaczmarek
(P15639)

WESLEY INTERNATIONAL INC. f/k/a Buena
Vista Coatings, Inc. f/k/a Flint Coatings Inc.,
f/k/a, Iowa Coatings, Inc., f/k/a Prokote Holding, Inc.,
f/k/a Prokote USA, Inc. and f/k/a Universal Applicators, Inc.,
WESLEY INDUSTRIES, INC., HAROLD
AUBERT, GENERAL MOTORS COMPANY,
DELPHI AUTOMOTIVE SYSTEMS USA, LLC a/k/a Delphi Automotive
Systems LLC, DELPHI AUTOMOTIVE SYSTEMS RISK MANAGEMENT CORP.,
DELPHI AUTOMOTIVE SYSTEMS – ASHIMORI LLC,
DELPHI AUTOMOTIVE SYSTEMS CORPORATION and
DELPHI AUTOMOTIVE SYSTEMS HUMAN RESOURCES, LLC

        Defendants.
_____/

CADY, MASTROMARCO & JAHN, P.C.
By: Victor J. Mastromarco, Jr. (P34564)
Attorneys for Plaintiff
1024 N. Michigan Avenue
P.O. Box 3197
Saginaw, Michigan 48605-3197
(989) 752-1414
_____/

    There is no other pending or resolve civil action arising out of the same transaction or occurrence alleged in the present complaint, which has either been previously filed or dismissed.

**COMPLAINT, DEMAND FOR JURY TRIAL AND PRE-TRIAL CONFERENCE**

---

CADY, MASTROMARCO & JAHN, P.C.   1024 N. MICHIGAN AVENUE P.O. BOX 3197, SAGINAW, MICHIGAN 48605-3197



PLAINTIFF'S EXHIBIT B

NOW COMES the Plaintiff, the estate of Michael W. Palmer, by and through his Attorneys Cady, Mastromarco & Jahn, P.C., and hereby complains against Defendants stating more fully as follows:

## COMMON ALLEGATIONS

1. That at all times relevant herein, Plaintiff was a resident of the County of Saginaw, State of Michigan.

2. That at all times material hereto, Cindy L. Palmer is the duly appointed Personal Representative of the Estate of Michael W. Palmer, deceased, by order of the Saginaw County Probate Court. (Letter of Authority Attached to this Complaint as Exhibit 1).

3. That at all times material hereto, Defendants did business in the County of Saginaw, State of Michigan.

4. That upon information and belief, Defendant Wesley International Inc. f/k/a Buena Vista Coatings, Inc., f/k/a Flint Coatings Inc., f/k/a Iowa Coatings, Inc., f/k/a Prokote Holding, Inc., f/k/a Prokote USA, Inc., f/k/a Universal Applicators, Inc. (hereafter referred to collectively as Wesley International) was the employer of the deceased Plaintiff Michael Palmer and was a subcontractor to Defendant General Motors Company or at least one of the Defendant Delphi corporations at the time of Plaintiff's death.

5. That upon information and belief, Defendant Wesley International Inc., was the property owner of its facility at 3265 Commerce Centre Drive, Saginaw, Michigan at the time of Plaintiff's untimely death.

6. That at all times relevant herein, Defendant General Motors Company was the general contractor at 3265 Commerce Centre Drive, Saginaw, Michigan.

7. That at all times relevant herein, Defendants Delphi Automotive Systems USA, LLC a/k/a Delphi Automotive Systems LLC, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems – Ashimori LLC, Delphi Automotive Systems Corporation and/or Delphi Automotive Systems Human Resources, LLC all and/or some of them were the general contractor at 3265 Commerce Centre Drive, Saginaw, Michigan.

8. That in the alternative Defendant Wesley Industries, Inc. was Plaintiff's employer was the general contractor for Defendant Wesley International, Inc., was the property owner at 3265 Commerce Centre Drive or was one of the subcontractors to Defendant General Motors Corporation or a subcontractor for at least one of the above named Delphi corporate entities at the time of Plaintiff's death.

9. That upon information and belief, Defendant Aubert was the supervisor of the deceased at the time of Plaintiff's death.

10. That at all times mentioned herein, the Defendant Aubert was Defendants' apparent agent or express agent in the events that led to Plaintiff's death herein.

CADY, MASTROMARCO & JAHN, P.C.    1024 N. MICHIGAN AVENUE P.O. BOX 3197, SAGINAW, MICHIGAN 48605-3197    (989) 752-1414

11. That at the time of his untimely death, the Plaintiff, Michael Palmer, was employed at the Defendants' Saginaw facility located at 3265 Commerce Centre Drive, Saginaw, Michigan as a Maintenance Manager, and his duties included the maintenance of the equipment including the equipment comprising "line 1".

12. That the deceased on August 28, 1998, was performing his duties when he was instructed by his supervisor, Defendant Aubert, to enter into "line 1" to perform maintenance on the equipment.

13. That Plaintiff was required to do the above mentioned maintenance as part of his job responsibilities and as a condition of his employment.

14. That in order for Plaintiff to perform the maintenance on the equipment contained within "line 1" it was necessary for Plaintiff to bypass safety devices that were in place to prevent an employee from entering "line 1" while the equipment was operating.

15. That in order for an employee to perform maintenance in a safe manner, the equipment in "line 1" needed to be shut down, and Plaintiff's supervisors were aware of this fact.

16. That Plaintiff was specifically instructed by Defendants that he was **not** to shut down the equipment under any circumstances and was to "fix" the equipment while it was operating.

17. In fact, the equipment was not shut down immediately preceding and at the time of Plaintiff's untimely death.

18. That on August 28, 1998, and as a proximate cause of Defendants' actions, Plaintiff sustained a serious bodily injury which directly resulted in his untimely death on August 29, 1998.

19. That as a direct and proximate cause of Defendants' actions he was killed as a result of Defendants' actions in making him perform his job in the manner indicated above.

20. That as a result of the Defendants' actions, Plaintiff suffered severe shock, fright and mental anguish just prior to the collision and his horrible death on August 29, 1998.

21. That as a direct and proximate result of Defendants' actions, Plaintiff was deprived the pleasures of life, which he would have otherwise been entitled.

## COUNT I – GENERAL CONTRACTOR LIABILITY

22. Plaintiff hereby incorporates paragraphs 1 through 21 of his common allegations word for word paragraph by paragraph as if restated herein.

23. That at all times relevant herein, the Defendant general contractors retained supervisory and coordinating <u>control</u> of the day-to-day activities taking place at 3265 Commerce Centre Drive, Saginaw Michigan including where "line 1" was located.

24. That at all times relevant herein, the Defendant subcontractors painted automobile components at "line 1" for the Defendant General Contractor.

-5-

25. That in addition to creating policies and directing the day-to-day activities of the subcontractors, the Defendant general contractor supplied employees to the subcontractors to supervise and oversee the day-to-day activities at 3265 Commerce Centre Drive, Saginaw, Michigan including the common area where "line 1" was located.

26. That the supervisors provided included Mr. Bruce Simmons, an EPA/Safety Supervisor.

27. That the Defendant general contractor was aware and in fact required as a <u>condition of</u> the employees <u>employment</u> that the employees of the contractors were to bypass safety devices on "line 1" so that production goals could be met.

28. That the Defendant general contractor knew, or negligently disregarded the fact, that bypassing the safety devices on "line 1" that it placed a significant number of employees working on the equipment within "line 1" in imminent danger of death or serious bodily injury.

29. That in fact, the Defendant general contractor was aware and specifically directed its agent, Defendant Aubert, to require Plaintiff to bypass the safety devices when attempting repairs on the equipment, so as to avoid <u>delays</u> in production.

30. That on August 28, 1998, Defendant Aubert was acting with this authority or apparent authority when he ordered Plaintiff to bypass the safety devices.

## COUNT II – OWNER LIABILITY

-6-

31. Plaintiff hereby incorporates paragraphs 1 through 21 of his common allegations and paragraphs 22 through 30 of Count I word for word paragraph by paragraph as if restated herein.

32. That at all times relevant herein the subcontractors utilized a common area which included "line one".

33. That the equipment contained within the common areas of the Saginaw facility, included the equipment comprising "line 1" and as such were the property and/or under the control of the Defendant property owner and was utilized by the subcontractors.

34. That at all times relevant herein, the Defendant property owner retained supervisory and coordinating control of the day-to-day activities taking place in the common areas at 3265 Commerce Centre Drive, Saginaw Michigan including the common area where "line 1" was located.

35. That in addition to creating policies and directing the day-to-day activities of the contractors, the Defendant property owner supplied employees to the contractors to supervise and oversee the day-to-day activities at 3265 Commerce Centre Drive, Saginaw, Michigan including the common area where "line 1" was located.

36. That the supervisors provided included Mr. Bruce Simmons, an EPA/Safety Supervisor.

CADY, MASTROMARCO & JAHN, P.C.    1024 N. MICHIGAN AVENUE P.O. BOX 3197, SAGINAW, MICHIGAN 48605-3197    (989) 752-1414

37. That the Defendant property owner was aware and was, in fact, required as a condition of the employees employment that the employees of the contractors were to bypass safety devices on "line 1" so that production goals could be met.

38. That the Defendant property owner knew that bypassing the safety devices on "line 1" that it placed a significant number of employees working on the equipment within "line 1" in imminent danger of death or serious bodily injury.

39. That in fact, the Defendant property owner was aware and specifically directed its agent, Defendant Aubert, to require Plaintiff to bypass the safety devices when attempting repairs on the equipment, so as to avoid delays in production.

40. That in the alternative, the Defendant property owner negligently disregarded the fact that bypassing the safety devices at "line 1" placed the employees in imminent danger of death or serious bodily injury.

41. That in the alternative, the Defendant property owner negligently disregarded the fact that employees were bypassing the safety devices at "line 1".

42. That in the alternative, the Defendant property owner negligently disregarded the fact that employee of the contractors were being instructed to bypass the safety devices at "line 1".

## COUNT III
## INTENTIONAL TORT EXCEPTION TO WORKERS COMPENSATION

43. Plaintiff hereby incorporates paragraphs 1 through 21 of his common allegations and paragraphs 22 through 30 of count I and paragraphs 31 through 42 of count II word for word paragraph by paragraph as if restated herein.

44.  That Plaintiff's employer at all times relevant herein, was aware of the dangerous nature of the equipment contained within "line 1" and nevertheless intentionally chose to order its employees, including the deceased, to bypass the safety devises while the equipment was operating on several occasions preceding Plaintiff's untimely death.

45.  That in fact, Plaintiff's employer was aware that bypassing the safety devices placed its employees in imminent danger of death or serious bodily injury.

46.  That in fact, Plaintiff's employer made it a requirement of it employees' employment including Plaintiff's employment, that production was to continue at all costs and that "line 1" was not to be shut down for maintenance, and that it was the employees' responsibility to perform repairs while the equipment at "line 1" were operating.

47.  That the Defendant employer's agent Defendant Aubert was aware that bypassing the safety devices on "line 1" placed the employees in imminent danger of death or serious bodily injury, and that injury or death was substantially certain to occur.

48.  That Defendant Aubert as a part of management regularly required the employees under his supervision, including Plaintiff, to bypass the safety devices in "line 1" while the equipment was operating, as a condition of their employment.

49.  That on August 28, 1998, Plaintiff was instructed to perform maintenance on the equipment in "line 1" and was told unequivocally by his supervisor Defendant

CADY, MASTROMARCO & JAHN, P.C.    1024 N. MICHIGAN AVENUE P.O. BOX 3197, SAGINAW, MICHIGAN 48605-3197    (989) 752-1414

Aubert not to shut down the equipment regardless of the imminent danger which was present.

50. That as a result of Defendant Aubert's direct order, Plaintiff bypassed the safety devices and entered "line 1".

51. The equipment then went through its cycle resulting in the Plaintiff being pushed into the equipment where he was pinned against the equipment and his head was struck numerous times by the equipment.

52. That as a direct result of Plaintiff's severe injuries to his head on August 28, 1998, Plaintiff died on August 29, 1998.

## COUNT IV – INHERENTLY DANGEROUS ACTIVITY

53. Plaintiff hereby incorporates paragraphs 1 through 21 of his common allegations, paragraphs 22 through 30 of count I, paragraphs 31 through 42 of count II and paragraphs 43 through 52 of Count III word for word paragraph by paragraph as if restated herein.

54. That the use of the equipment utilized in "line 1" created a peculiar and/or special danger when used, as intended by Defendants, and as such is an inherently dangerous activity.

55. That as such, Defendants are strictly liable for the damages sustained by Plaintiff.

56. That on August 28, 1998, the equipment was being utilized in the manner contemplated by Defendants when attempted repairs were being made by the Plaintiff.

CADY, MASTROMARCO & JAHN, P.C.   1024 N. MICHIGAN AVENUE P.O. BOX 3197, SAGINAW, MICHIGAN 48605-3197   (989) 752-1414

57.  That the intended use of the equipment in "line 1" directly resulted in Plaintiff's untimely death on August 29, 1998.

**WHEREFORE**, the Plaintiff prays that this Honorable Court enter judgment against the Defendants in whatever amount in excess of $25,000 that Plaintiff is found to be entitled in order to compensate for loss of back pay, future pay, overtime pay, bonuses,, sick pay, vacation pay, and all other fringe benefits, together with interest on all money outstanding.  Furthermore, Plaintiff requests this Honorable Court include in its judgment an award in excess of $25,000 for pain and suffering, shock, fright, mental anguish, suffering together with interest, and further requests this Honorable Court include in its judgment an award in excess of $25,000 for reasonable costs and attorney fees, and any other such equitable relief the Court deems just.

Respectfully submitted,

CADY, MASTROMARCO & JAHN, P.C.

Dated: 8-24, 2001        By: /s/ Victor Mastromarco Jr.
VICTOR J. MASTROMARCO, JR. (P34564)
Attorney for Plaintiff
1024 N. Michigan, P.O. Box 3197
Saginaw, Michigan  48605-3197
(989) 752-1414

-11-

## DEMAND FOR TRIAL BY JURY

NOW COMES the above-entitled Plaintiff by and through his attorneys, CADY, MASTROMARCO & JAHN, P.C., and hereby demands a trial by jury of all issues involved in this cause unless expressly waived.

Respectfully submitted,

CADY, MASTROMARCO & JAHN, P.C.

Dated: 8-24 ,2001     By: _/s/ Victor J. Mastromarco Jr._
VICTOR J. MASTROMARCO, JR. (P34564)
Attorney for Plaintiff
1024 N. Michigan, P.O. Box 3197
Saginaw, Michigan 48605-3197
(989) 752-1414

## DEMAND FOR PRE-TRIAL CONFERENCE

*NOW COMES* the Plaintiff by and through his attorneys, CADY, MASTROMARCO & JAHN, P.C., and hereby demand a Pre-Trial Conference pursuant to the Michigan Court Rules.

Respectfully submitted,

CADY, MASTROMARCO & JAHN, P.C.

Dated: 8-24 ,2001

By: /s/ Victor J. Mastromarco, Jr.
VICTOR J. MASTROMARCO, JR. (P34564)
Attorney for Plaintiff
1024 N. Michigan, P.O. Box 3197
Saginaw, Michigan 48605-3197
(989) 752-1414

# PLAINTIFF'S EXHIBIT 1

Approved, SCAO                                                                                                          OSM CODE. LET

| STATE OF MICHIGAN<br>PROBATE COURT<br>COUNTY OF SAGINAW | LETTERS OF AUTHORITY FOR<br>PERSONAL REPRESENTATIVE | FILE NO.<br>01-111367-DE |
|---|---|---|

Estate of ____Michael W. Palmer, Deceased_____

TO:  Name, address, and telephone no.

   Cindie L. Palmer
   2119 S. VanBuren Road
   Reese, MI 48757
   (989) 868-4317

You have been appointed and qualified as personal representative of the estate on __AUG 2 3 2001__. You are authorized to do and perform all acts authorized by law except as to the following:
☐ Real estate or ownership interests in a business entity excluded from your responsibilities in your acceptance of appointment
☐ Restrictions:

☒ These letters expire: ____n/a____
Date

__AUG 2 3 2001__
Date

**Leah Turner Carva**
~~Judge (formal proceedings)~~/Register (informal proceedings)    ~~Bar no.~~

SEE OTHER SIDE FOR NOTICE OF DUTIES.

__Victor J. Mastromarco, Jr. P34564__
Attorney name (type or print)    Bar no.

__1024 N. Michigan Ave PO Box 3197__
Address

__Saginaw, MI 48605-3197    989-752-1414__
City, state, zip    Telephone no.

I certify that I have compared this copy with the original on file and that it is a correct copy of the original and that these letters are in full force and effect as of the date on the letters.

__8-23-01__                        _Leah Turner Carva_
Date                                Deputy register

Do not write below this line - For court use only

MCL 700.3103; MSA 27.13103, MCL 700.3307; MSA 27.13307
MCL 700.3414; MSA 27.13414, MCL 700.3504; MSA 27.13504.
PC 572 (3/00)  LETTERS OF AUTHORITY FOR PERSONAL REPRESENTATIVE    MCL 700.3601; MSA 27.13601, MCR 5.202(A)