Quarles & Brady Streich Lang LLP
One South Church Avenue, Suite 1700
Tucson, Arizona 85701-1621
Phone 520.770.8700 Facsimile 520.770.2203
knye@quarles.com

Hearing Date: April 7, 2006
Objection Deadline: March 31, 2006

Attorneys for Offshore International, Inc., and
Maquilas Teta Kawi, S.A. de C.V.,

Susan G. Boswell, Esq. (AZ Bar # 004719)
Kasey C. Nye, Esq. (AZ Bar # 020610)

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>DELPHI CORPORATION, et al.,<br><br>Debtors. | Chapter 11<br><br>Case No. 05-44481 (RDD)<br><br>(Jointly Administered) |

**THE OFFSHORE GROUP'S MOTION PURSUANT TO BANKRUPTCY CODE
§§ 362(d)(1) AND 553 FOR ORDER LIFTING THE AUTOMATIC STAY TO
PERMIT THE OFFSHORE GROUP TO EXERCISE RIGHT OF SETOFF**

Offshore International, Inc. ("Offshore"), and Maquilas Teta Kawi, S.A. de C.V. ("Maquilas") (collectively Offshore and Maquilas are hereinafter referred to as the "Offshore Group"), landlords, creditors, and parties in interest in the above captioned joint administered Chapter 11 case of Delphi Automotive Systems, L.L.C. ("Delphi Automotive"), by and through undersigned counsel, move the Court for an order under 11 U.S.C. §§ 362(d) and 553 granting the Offshore Group relief from the automatic stay to exercise their setoff rights.

**I.     STATEMENT OF JURISDICTION AND STATUTORY PREDICATE**

1.     The Court has jurisdiction over this core proceeding and contested matter under 28 U.S.C. §§ 1334, 157(b)(2)(G) and (M) and venue is proper under 28 U.S.C. §1408 et seq. The statutory basis for this motion is §§ 362(a), (d), and 553. Rule 4001 of

the Federal Rules of Bankruptcy Procedure and Local Rule 4001-1 Local Bankruptcy Rules for the Southern District of New York govern this proceeding.

## II. FACTUAL BACKGROUND

2. On October 8, 2005 (the "Petition Date"), the above captioned debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (hereinafter all references to title 11 the United States Code, 11 U.S.C. 101-1334, as amended, are referred to as the "Bankruptcy Code"), thereby commencing these bankruptcy cases (collectively the "Bankruptcy Case"). Since the Petition Date, the Debtors have continued to possess and manage their assets and operate their business as debtors in possession pursuant to Bankruptcy Code §§ 1107 and 1108.

3. Prior to the Petition Date, the Offshore Group and Delphi Automotive Systems, L.L.C. entered into that certain "Shelter Plan Service Agreement" dated December 9, 2002 as amended and renewed by those certain letter agreements dated March 19, 2004 and August 4, 2005 (collectively the "Shelter Agreement"). Pursuant to the Shelter Agreement, the Offshore Group agreed to provide certain services to Delphi Automotive to facilitate some of its Mexican manufacturing operations. A true and correct copy of the Shelter Agreement, which document speaks for itself, is attached as Exhibit "A" to the Declaration of Jeffrey A. Prileson (the "Prileson Declaration"). The Prileson Declaration is attached hereto as Exhibit "1" and by this reference is incorporated herein.

4. Pursuant to the Shelter Agreement, Offshore and its affiliate Maquilas agreed to provide certain services to Delphi Automotive to facilitate Delphi Automotive's manufacturing operation in Mexico, including but not limited: (i) leasing non-residential real property to Delphi Automotive at an industrial park operated by Maquilas in Guaymas, Sonora, Mexico; (ii) recruiting and managing labor force in compliance with the laws of Mexico; and (iii) providing logistical support facilitating the import and

export of equipment, inventory, raw materials and finished product into Mexico from the United States and from the United States into Mexico in compliance with a special body of Mexican trade laws related to NAFTA. Pursuant to the Shelter Agreement, Delphi Automotive effectively has no legal presence related to its operations through Offshore Group in Mexico, with all of the legal obligations related to Delphi Automotive's manufacturing operations, in the eyes of the Mexican government, being the responsibility of Maquilas. In other words, from the Mexican government's perspective, any tax, or employment law obligation belongs to Maquilas, not Delphi Automotive.

5. Pursuant to the Shelter Agreement, Delphi Automotive agreed, *inter alia*, (i) to pay certain facility fees (rent) and shelter plan fees; (ii) to reimburse costs, including employee wages, benefits, employer taxes, and requisition costs; (iii) to pay and reimburse all costs associated with the severance or termination of any and all workers hired by Maquilas at the request of Delphi Automotive; (iv) to reimburse the Offshore Group for all customs duties and taxes, including *ad valorem* taxes and customs duties imposed by Mexico which are referred to as "pedimentos" in connection with the import into Mexico or the export to the United States of equipment, materials, and goods; and (v) to timely pay all of the aforementioned obligations within ten days of invoice by the Offshore Group, which the Offshore Group agreed to submit to Delphi Automotive on a weekly basis.

6. Offshore and Maquilas in turn agree to refund Delphi Automotive any value added taxes, sales taxes or other taxes when refunded to the Offshore Group by the Mexican Government.

7. Delphi Automotive owes the Offshore Group $ 234,775.90 for pre-petition client purchases, customs broker fees and labor/shelter fees. The Offshore Group, on the other hand, owes Delphi Automotive $ 252,448.87 for a pre-petition invoice overpayment and refunds for pre-petition value added taxes paid for June, July, August and September 2005, but refunded since the petition date.

### III. POINTS AND AUTHORITIES SUPPORTING RELIEF

#### A. The Offshore Group Holds a Valid Right of Setoff

8. Section 362(a)(7) of the Bankruptcy Code provides that the filing of the Debtors' voluntary petition operates as an automatic stay, applicable to all parties, against "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor." 11 U.S.C. § 362(a)(7). However, section 362(a)(7) does not affect a creditor's setoff rights. H.R. Rep. No. 595, 95th Cong., 1st Sess., at 342 (1977); S. Rep. No. 989, 95th Cong., 2d Sess., at 51 (1978). Section 362(a)(7) "simply stays its enforcement pending an orderly examination of the debtors' and creditors' rights." *Id.* Thus, a party may still exercise its right to setoff in a bankruptcy proceeding if it obtains relief from the automatic stay or obtains an order allowing setoff prior to exercising any right to setoff. *In re NTG Indus., Inc.*, 103 B.R. 195, 197 (Bankr. N.D. Ill. 1989).

9. Setoff is the common law right to subtract a debt from an unrelated claim against the same creditor. Essentially, the right to setoff allows entities that have mutual obligations "to apply their mutual debts against each other, thereby avoiding 'the absurdity of making A pay B when B owes A.'" *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 18, 116 S. Ct. 286, 289, 133 L.Ed.2d 258 (1995) (quoting *Studley v. Boylston Nat'l Bank*, 229 U.S. 523, 528, 33 S. Ct. 806, 57 L.Ed. 1313 (1913)).

10. Bankruptcy law preserves these rights as they exist under non-bankruptcy law. 11 U.S.C. § 553(a); *In re HAL, Inc.*, 196 B.R. 159, 161 (9th Cir. B.A.P. 1996) ("To enforce a setoff right, '[a creditor] must establish that (1) it has a right of setoff under nonbankruptcy law; and (2) this right should be preserved in bankruptcy under § 553.'"); *See also, In re Whitaker*, 173 B.R. 359, 361 (Bankr. S.D. Ohio 1994) (Statute governing setoff in bankruptcy does not create a right of setoff but rather preserves the right where it exists under applicable non-bankruptcy law.); *In re Gordon Sel-Way, Inc.*, 239 B.R. 741,

751 (E.D. Mich. 1999). Thus, a creditor seeking to setoff a claim against a debtor in bankruptcy must establish its right to do so under state or federal law.

11. Setoff is permitted only when the opposing claims are mutual. Specifically, the two claims must: (i) be held by the same parties; (ii) in the same right or capacity; and (iii) both arise either pre-petition or post-petition. *See, Whitaker*, 173 B.R. at 361; and *Sel-Way*, 239 B.R. at 741.

12. In general, mutuality is construed narrowly. Thus, even if the parties are identical, the respective obligations must have been incurred in the same capacity. There is no mutuality unless the parties stand in the same relationship to one another with respect to both offsetting obligations. Debts are mutual when the obligations are in the same right and are between the same parties, standing in the same capacity. *Official Committee of Unsecured Creditors v. Manufacturers & Traders Trust Co. (In re Bennett Funding Group, Inc.)*, 146 F.3d 136, 139 (2d Cir. 1998); *In re Drexel Burnham Lambert Group, Inc.*, 113 B.R. 830, 847 (Bankr. S.D.N.Y. 1990).

13. Even when the parties are in all other respects the same entities standing in the same capacity, the mere act of one party filing bankruptcy destroys mutuality with respect to post-petition transactions. In this respect, "[t]he timing requirement is interwoven, in part, with the mutuality requirement; the idea being that claims arising after the commencement of the case lack the requisite mutuality for setoff against prepetition debts because the postpetition trustee or debtor-in-possession occupies a different capacity from the prepetition debtor." *Reich v. Davidson Lumber Sales, Inc., Employees Retirement Plan*, 154 B.R. 324, 335 (D.Utah, May 17, 1993). Consequently, the final requirement for mutuality is that both obligations must arise either before or after the petition date.

14. In this case, mutuality exists between the Offshore Group and Delphi Automotive because the obligations have been incurred in the same capacity pre-petition. Specifically, the Offshore Group holds refunds of certain pre-petition value added tax

payments and invoice overpayments which it is obligated to pay to Delphi Automotive under the Shelter Agreement. On the other hand, Delphi Automotive owes the Offshore Group money for services provided to Delphi Automotive pre-petition under the Shelter Agreement. In addition, the mutuality of the obligations between the Offshore Group and the Debtors survive the filing of the bankruptcy. Accordingly, the Offshore Group holds a valid right of setoff against the Debtors.

### B. Cause Exists for Lifting the Automatic Stay to Allow the Offshore Group to Exercise it Setoff Rights

15. Setoff rights are stayed upon the filing of a bankruptcy petition. *See* 11 U.S.C. § 362(a)(7) (applying the stay to "the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor"). The creditor, therefore, must obtain stay relief in order to exercise its rights of setoff. *See, e.g., In re Pieri*, 86 B.R. 208, 210 (9th Cir. B.A.P. 1988); *In re Metropolitan Hosp.*, 131 B.R. 283, 288 (E.D. Pa. 1991).

16. Section 362(d)(1) of the Bankruptcy Code provides that "on request of a party in interest, and after notice and a hearing, the court shall grant relief from the stay ... such as by terminating, annulling, modifying, or conditioning such stay- (1) for cause such as lack of adequate protection of an interest in property of such party in interest." The demonstration of a valid right to setoff constitutes a prima facie showing of "cause" for stay relief. 11 U.S.C. § 362(d)(1). *See also, Whitaker*, 173 B.R. at 361; *Olson*, 175 B.R. at 33. Upon a showing of cause, the burden shifts to the debtor to show that the stay should not be lifted. *See* 11 U.S.C. § 362(g); *Whitaker*, 173 B.R. at 362.

17. As set forth above, the Offshore Group holds a valid right to setoff Delphi Automotive's pre-petition obligations to the Offshore Group against refunds of certain pre-petition value added tapes and pre-petition overpayments. Accordingly, cause exists for lifting the automatic stay to allow the Offshore Group to exercise the setoff right.

18.  Once a creditor definitively establishes its right to a particular setoff transaction, the assets subject to setoff are entitled to a number of protections. For one, the assets subject to setoff are expressly excepted from turnover. *See*, 11 U.S.C. § 542(b). In addition, the creditor obtains a secured claim against the estate "to the extent of the amount subject to setoff," and holds an unsecured claim "to the extent that . . . the amount so subject to setoff is less than the allowed amount of such claim." 11 U.S.C. § 506(a).

## IV.  WAIVER OF MEMORANDUM OF LAW

19.  This Motion does not raise any novel issues of law. The Offshore Group therefore respectfully requests that this Court waive the requirement contained in Rule 9013-1(b) of the Local Bankruptcy Rules for the Southern District of New York that a separate memorandum of law be submitted in support of this Motion.

## V.  NOTICE

20.  Notice of this Motion will be provided in accordance with this Court's Order dated October 14, 2005, establishing case management and notice procedures in these Chapter 11 cases. No further or other notice need be provided. No previous motion for the relief sought herein has been made to this or any other Court.

WHEREFORE the Offshore Group respectfully requests the Court enter an Order:

A.  Granting the Motion;

B.  Lifting the automatic stay with respect to the Offshore Group to exercise its setoff rights;

C.  Granting such other relief as the Court deems just under the circumstances.

RESPECTFULLY SUBMITTED this 14th day of March, 2006.

/s/ Kasey C. Nye (AZ Bar # 020610)
Susan G. Boswell
Kasey C. Nye

QUARLES & BRADY STREICH LANG LLP
One South Church Avenue, Suite 1700
Tucson, Arizona 85701-1621
Phone (520) 770-8700 Facsimile (520) 770-2203
sboswell@quarles.com; knye@quarles.com
Attorneys for Offshore International, Inc., and
Maquilas Teta Kawi, S.A. de C.V..

### CERTIFICATE OF SERVICE

I hereby certify that copies of the foregoing were served in accordance with the Court's Order dated October 14, 2005 establishing case management and notice procedures in these Chapter 11 cases this 14th day of March, 2006, upon the parties set forth on the attached service list.

/s/ Kasey C. Nye (AZ Bar #020610)
Kasey C. Nye (KN 5922)