**Hearing Date and Time: April 7, 2006 at 10:00 a.m.**
**Objection Deadline: March 31, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
            In re                                         :    Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :    Case No. 05-44481 (RDD)
                                                          :
                                                          :    (Jointly Administered)
                Debtors.                                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER 11 U.S.C. §§ 107(b),
501, 502, AND 1111(a) AND FED. R. BANKR. P. 1009,
2002(a)(7), 3003(c)(3), AND 5005(a) ESTABLISHING BAR DATES
FOR FILING PROOFS OF CLAIM AND
APPROVING FORM AND MANNER OF NOTICE THEREOF

("BAR DATE MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order pursuant to 11 U.S.C. §§ 107(b), 501, 502, and 1111(a) and Rules 1009, 2002(a)(7), 3003(c)(3), and 5005(a) of the Federal Rules of Bankruptcy Procedure establishing bar dates for all creditors to file proofs of claim in these chapter 11 cases and approving the form and manner of notice thereof. In support of this Motion, the Debtors respectfully represent as follows:

Background

A.      The Chapter 11 Filings

1.      On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). On October 14, 2005 (the "Secondary Filing Date" and, together with the Initial Filing Date, the "Petition Dates"), three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") also sought reorganization relief. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtor's chapter 11 cases (Dockets Nos. 28 and 404).

2.    On October 17, 2005, the Office of the Unites States Trustee appointed an official committee of unsecured creditors.  No trustee or examiner has been appointed in the Debtors' cases.

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are sections 107(b), 501, 502, and 1111(a) of the Bankruptcy Code and Rules 1009, 2002(a)(7), 3003(c)(3), and 5005(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    Current Business Operations Of The Debtors

5.    As of the Initial Filing Date, Delphi had global 2004 revenues of approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1 billion.[1] Delphi ranks as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.    Delphi has become a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and the Company (as defined below) is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide.  The Company supplies products to nearly every major global automotive

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

original equipment manufacturer with 2004 sales to its former parent, General Motors

Corporation, equaling approximately $15.4 billion and sales to each of Ford Motor Company,

DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and Volkswagen Group

exceeding $850 million.

       7.    As part of its growth strategy, Delphi has established an expansive global

presence with a network of manufacturing sites, technical centers, sales offices, and joint

ventures located in every major region of the world.  As of the Initial Filing Date, the Debtors

employed approximately 180,000 employees.  The Debtors' 50,600 U.S. employees work in

approximately 44 manufacturing sites, 13 technical centers, and in Delphi's Troy, Michigan

headquarters.  As of the Initial Filing Date, Debtors employed approximately 34,750 hourly

employees in the United States, 96% of whom are union-represented.  Outside the United States,

the Company's foreign entities employed more than 134,000 people on the Initial Filing Date,

supporting 120 manufacturing sites and 20 technical centers in nearly 40 countries around the

globe.

       8.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary

of GM.  Prior to January 1, 1999, GM conducted the Company's business through various

divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions

and subsidiaries were transferred to Delphi and its subsidiaries and affiliates (collectively, the

"Company") in accordance with the terms of a Master Separation Agreement between Delphi

and GM.  In connection with these transactions, Delphi accelerated its evolution from a North

American-based, captive automotive supplier to a global supplier of components, integrated

systems, and modules for a wide range of customers and applications.  Although GM is still the

Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.    Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base.  The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.    Events Leading To The Chapter 11 Filing

10.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales.  Reflective of a downturn in the marketplace, Delphi's financial condition deteriorated further in the first six months of 2005, with net operating losses of $608 million for the first six months of calendar

year 2005 on six-month net sales of $13.9 billion, approximately $1 billion less than the same

time period a year earlier.[2]

12.    The Debtors believe that the Company's financial performance has

deteriorated because of (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-strategic, non-profitable operations, all of which have the effect of

creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for

domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in

the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward looking revenue requirements.  Because discussions

with its Unions and GM were not progressing sufficiently, the Company commenced these

chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and

preserve value for its stakeholders.

13.    Through the reorganization process, the Debtors intend to achieve

competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive

legacy liabilities and burdensome restrictions under current labor agreements and realigning

Delphi's global product portfolio and manufacturing footprint to preserve the Company's core

businesses.  This will require negotiation with key stakeholders over their respective

contributions to the restructuring plan or, absent consensual participation, the utilization of the

chapter 11 process to achieve the necessary cost savings and operational effectiveness.  The

---

[2]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily
related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down during these chapter 11 cases.

14.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

15.    By this Motion, the Debtors seek entry of an order under sections 107(b), 501, 502, and 1111(a) of the Bankruptcy Code and Bankruptcy Rules 1009, 2002(a)(7), 3003(c)(3), and 5005(a) setting a bar date and related procedures in these chapter 11 cases as follows:

(a)    Except as otherwise stated in subparagraphs (b) and (c), establishing July 31, 2006 (the "General Bar Date") as the deadline for all persons and entities[3] holding or wishing to assert a claim, as defined in § 101(5) of the Bankruptcy Code (individually, a "Person" or "Entity" and collectively, "Persons" or "Entities"), against any of the Debtors (collectively, the "Claims") to file a proof of such Claim in these chapter 11 cases;

(b)    Establishing the later of (i) the General Bar Date or (ii) 30 calendar days after a claimant is served with notice that the Debtors have amended their Schedules reducing, deleting, or changing the status of a scheduled claim of such claimant, as the bar date for filing a proof of claim in respect of such amended scheduled claim (the "Amended Schedule Bar Date");

(c)    Except as otherwise set forth in any order authorizing rejection of an executory contract or unexpired lease, establishing the later of (i) the General Bar Date or (ii) 30 calendar days after the effective date of any order authorizing the rejection of an executory contract or unexpired lease

---

[3]    Government units, as defined in 11 U.S.C. § 101(27), would be subject to the General Bar Date, as set forth in paragraph 25 hereof.

7

as the bar date by which a proof of claim relating to the Debtors' rejection of such contract or lease must be filed (the "Rejection Bar Date" and, together with the General Bar Date and the Amended Schedule Bar Date, the "Bar Dates");

(d)    Approving the Debtors' proposed form and manner of notice of the Bar Date.

16.    The Debtors expect that they will further amend the Schedules prior to service and publication of the Bar Date Notice (as defined below).  Bankruptcy Rule 1009(a) provides that notice of any amendment to the Schedules must be given to any entity affected thereby.  If the Schedules are amended before the Bar Date Notice is served and published, then only with respect to each party affected thereby, the Debtors request that the personalized proof of claim form serve as the notice required by Bankruptcy Rule 1009(a), and that no other notice of amendment of the Schedules be required.[4]

Basis For Relief

A.    The Need For A Bar Date

17.    The filing of proofs of claim in a chapter 11 case generally is governed by Bankruptcy Rule 3003(c)(3) which provides in relevant part that the "court shall fix . . . the time within which proofs of claim or interest . . . may be filed."  Fed. R. Bankr. P. 3003(c)(3).  The court is afforded wide latitude to consider the facts of the particular case when establishing a deadline for the filing of proofs of claim.

18.    Here, the facts justify the setting of the Bar Dates at this time.  The Debtors initially filed their Schedules on January 20, 2006 and filed amendments to the Schedules on February 1, 2006.  The United States Trustee held a meeting of creditors pursuant to section 341

---

[4]    If the Schedules are further amended after service and publication of the Bar Date Notice, the Debtors acknowledge that they would be obligated to satisfy the requirements of Bankruptcy Rule 1009(a) for any other affected parties.

of the Bankruptcy Code on February 3, 2006.  The Debtors expect to further amend certain of

their Schedules on or before April 7, 2006.  Additionally, to develop a comprehensive, viable

plan of reorganization, the Debtors will require complete and accurate information regarding the

nature, amount, and status of all Claims against the Debtors that will be asserted in these chapter

11 cases.  As the Debtors have previously stated, their goal is to complete their U.S.-based

restructuring and emerge from chapter 11 in early to mid-2007.  Establishment of the Bar Dates

by this Court at this stage in these chapter 11 cases will facilitate the accomplishment of that goal.

19.    To this end, the Debtors request that this Court set July 31, 2006 as the

General Bar Date for filing proofs of claim in these chapter 11 cases.  The Debtors anticipate

sending the Bar Date Notice no later than April 20, 2006, which will give parties-in-interest

more than three months after receipt of the Bar Date Notice to file proofs of claim.  The

requested date for the General Bar Date should also allow the Debtors to ascertain the number

and amount of claims in various classes and allow ample time to finalize the terms of a plan of

reorganization and disclosure statement prior to the solicitation of votes and, following

confirmation of a plan, the Debtors' projected emergence from chapter 11 in early to mid-2007.

B.    Parties Required To File Proofs Of Claim

20.    The Bar Dates would apply to all Persons and Entities (each as defined in

sections 101(41) and 101(15), respectively, of the Bankruptcy Code) holding Claims against the

Debtors (whether secured, priority, or unsecured) that arose prior to the relevant Petition Date,

including the following:

> (a)    Any Person or Entity whose Claim is listed as "disputed," "contingent," or
> "unliquidated" and which desires to share in any distribution in these
> chapter 11 cases;

> (b)    Any Person or Entity which believes that its Claim is improperly classified
> in the Schedules or listed in an incorrect amount in the Schedules and

which desires to have its Claim allowed in a classification or amount other than as set forth in the Schedules; and

(c)     Any Person or Entity whose Claim against a Debtor is not listed in the applicable Debtor's Schedules.

21.     The Debtors propose that the following Persons or Entities would not need to file proofs of claim:

(a)     Any Person or Entity (i) which agrees with the nature, classification, and amount of its Claim set forth in the Schedules and (ii) whose Claim against a Debtor is not listed as "disputed," "contingent," or "unliquidated" in the Schedules;

(b)     Any Person or Entity which has already properly filed a proof of claim against the correct Debtor;

(c)     Any Person or Entity which asserts a Claim allowable under sections 503(b) and 507(a)(1) of the Bankruptcy Code as an administrative expense of the Debtors' chapter 11 cases;

(d)     Any Person or Entity which asserts a Claim solely on the basis of future pension or other post-employment benefits, including, without limitation, retiree health care and life insurance; provided, however, that any such Person or Entity which wishes to assert a Claim against any of the Debtors based on anything other than future pension or other post-employment benefits must file a proof of claim on or prior to the General Bar Date;[5]

(e)     Any Debtor or any direct or indirect subsidiary of any of the Debtors in which the Debtors in the aggregate directly or indirectly own, control, or hold with power to vote, 50 percent or more of the outstanding voting securities of such subsidiary;

(f)     Any Person or Entity whose Claim against a Debtor previously has been allowed by, or paid pursuant to, an order of this Court;

(g)     Any holder of a Claim arising under or in respect of any of the following issuances of Delphi Corporation senior unsecured debt (each, a "Noteholder"): (i) those certain senior unsecured securities bearing interest

---

[5]     The bar date for the filing of proofs of claim on account of Claims arising from modification to or termination of future pension or other post-employment benefits will be determined pursuant to an order of this Court approving such modification or termination. Furthermore, the Debtors anticipate that, in the event that future pension or other post-employment benefits of collectively-bargained for employees or retirees are modified or terminated, claims will be filed by their collective bargaining or other appropriate representative on their behalf, to the extent permissible by applicable law.

at 6.55% and maturing on June 15, 2006; (ii) those certain senior unsecured securities bearing interest at 6.50% and maturing on May 1, 2009; (iii) those certain senior unsecured securities bearing interest at 6.50% and maturing on August 15, 2013; (iv) those certain senior unsecured securities bearing interest at 7.125% and maturing on May 1, 2029; (v) those certain 8.25% junior subordinated notes due 2033; or (vi) those certain adjustable-rate junior subordinated notes due 2033 (collectively, the "Senior Unsecured Securities"), other than the indenture trustees of the Senior Unsecured Securities; provided, however, that any Noteholder who wishes to assert a Claim against the Debtors that is not based solely upon the outstanding prepetition principal and interest due on account of its ownership of such Senior Unsecured Securities must file a proof of claim on or prior to the General Bar Date in respect of such Claim; and

(h)    Any holder of equity securities of, or other interests in, the Debtors solely with respect to such holder's ownership interest in or possession of such equity securities, or other interest; provided, however, that any such holder which wishes to assert a Claim against any of the Debtors that is not based solely upon its ownership of the Debtors' securities, including, but not limited to, Claims for damages or recision based on the purchase or sale of such securities, must file a proof of claim on or prior to the General Bar Date in respect of such Claim.

22.    The Debtors would retain the right to (a) dispute, or assert offsets or defenses against, any filed Claim or any Claim listed or reflected in the Schedules as to nature, amount, liability, classification, or otherwise, or (b) subsequently designate any Claim as disputed, contingent, or unliquidated.

23.    If the Debtors amend the Schedules on or after the date upon which the Debtors serve the Bar Date Notice in a manner that would reduce the undisputed, noncontingent, and liquidated amounts or to change the nature or classification of a particular Claim against a Debtor reflected therein, then the Debtors propose that the affected claimant would have until the Amended Schedule Bar Date to file a proof of claim or to amend any previously filed proof of claim in respect of such amended scheduled Claim.  The Debtors propose that notwithstanding

11

the foregoing, nothing in this Motion would preclude the Debtors from objecting to any Claim, whether scheduled or filed, on any grounds.

24.    The Debtors anticipate that certain creditors may assert Claims in connection with a Debtor's rejection of executory contracts and unexpired leases under section 365 of the Bankruptcy Code.  The Debtors propose that, for any Claim relating to a Debtor's rejection of an executory contract or unexpired lease that is approved by an order of this Court, unless otherwise stated in such order, the bar date for filing any such Claim would be the Rejection Bar Date.

25.    Section 502(b)(9) of the Bankruptcy Code provides that governmental units shall have 180 days after the petition date or such later time as the Bankruptcy Rules may provide, to file proofs of claim.  Accordingly, the Debtors propose that the General Bar Date be established as the bar date for all governmental units holding or wishing to assert a Claim in these chapter 11 cases.

26.    Finally, the Debtors propose that, pursuant to Bankruptcy Rule 3003(c)(2), any Person or Entity which is required to file a proof of claim in these chapter 11 cases (pursuant to the Bankruptcy Code, the Bankruptcy Rules, or any order of this Court) but which fails to do so in a timely manner be forever barred, estopped, and enjoined from (a) asserting any Claim against the Debtors that such Person or Entity has that (i) is in an amount that exceeds the amount, if any, that is set forth in the Schedules or (ii) is of a different nature or in a different classification than as set forth in the Schedules (any such Claim being referred to in this clause (a) as an "Unscheduled Claim") and (b) voting upon, or receiving distributions under, any plan or plans of reorganization in these chapter 11 cases in respect of an Unscheduled Claim.

C.      Procedures For Providing Notice Of Bar Date And Filing Proofs Of Claim

27.    The Debtors request that this Court authorize the noticing and claims agent appointed in these chapter 11 cases, Kurtzman Carson Consultants, LLC (the "Claims and Noticing Agent"), to give notice of the Bar Dates by serving (a) a notice of the Bar Dates substantially in the form of the notice attached as Exhibit A hereto (the "Bar Date Notice") and (b) a proof of claim form (the "Proof of Claim Form") substantially in the form of Form No. 10 of the Official Bankruptcy Forms and as attached as Exhibit B hereto upon:

(i)     the United States Trustee;

(ii)    counsel to each official committee;

(iii)   all Persons or Entities which have requested notice of the proceedings in the chapter 11 cases;

(iv)    all Persons or Entities which have filed claims in these chapter 11 cases;

(v)     all creditors and other known holders of claims as of the date of this Order, including all persons or entities listed in the Schedules as holding Claims;

(vi)    all parties to executory contracts and unexpired leases of the Debtors;

(vii)   all parties to litigation with the Debtors;

(viii)  the Philadelphia office of the Internal Revenue Service, the Northeast Regional Office of the Securities and Exchange Commission, the United States attorney for the Southern District of New York, any other department, agency, or instrumentality of the United States through which the Debtors became indebted for debt other than taxes, and any other governmental units as required by Bankruptcy Rule 2002(j); and

(ix)    all known Persons and Entities holding potential prepetition Claims.[6]

---

[6]    Approximately ninety-eight percent of the parties-in-interest who are entitled to receive notice of the Motion are located in English-speaking countries (based upon mailing addresses currently known to the Debtors), with the remainder spread over 25 countries.  In light of the expense associated with translation into multiple languages for a very limited number of parties-in-interest, the Debtors propose that all documents be provided solely in the English language.

28.    The Debtors propose to cause the Claims and Noticing Agent to mail the
Bar Date Notice and the Proof of Claim Form by first class U.S. mail, postage prepaid, to the
foregoing potential claimants no later than April 20, 2006.  The mailing of the Bar Date Notice
by no later than this date would ensure that creditors receive more than 100 days notice of the
Bar Dates, which is more than five times the minimum 20-day notice period established under
Bankruptcy Rule 2002(a)(7).

29.    The Debtors propose that a Proof of Claim Form state whether the Entity's
Claim is listed in the Schedules, the dollar amount of such Claim as listed in the Schedules, the
Debtor for which the Entity's Claim is scheduled, and whether the Claim is listed as disputed,
contingent, or unliquidated.

30.    The Debtors also propose that for any Proof of Claim Form to be validly and
properly filed, the original thereof must either be mailed to the United States Bankruptcy Court,
Southern District of New York, Delphi Corporation Claims, Bowling Green Station, P.O. Box
5058, New York, New York 10274-5058 or delivered by hand or overnight courier to the United
States Bankruptcy Court, Southern District of New York, Delphi Corporation Claims, One
Bowling Green, Room 534, New York, New York 10004-1408.  The Debtors propose that
facsimile submissions not be accepted and that proofs of claim be deemed filed when actually
received by the Clerk of the Bankruptcy Court.  The Debtors request that if a creditor wishes to
receive acknowledgment of receipt of such creditor's proof of claim, such creditor be required to
submit a copy of the proof of claim and a self-addressed, stamped envelope upon the filing of its
original proof of claim.

31.    In addition, the Debtors propose that proofs of claim must (a) be signed, (b)
include supporting documentation (or a summary if such documentation is voluminous) or an

explanation as to why documentation is not available, (c) be written in the English language, and (d) be denominated in United States currency.

32.    The Debtors anticipate that a significant amount of the supporting documentation provided with proofs of claim may contain confidential information.  In particular, the Debtors believe that many of the terms, including, without limitation, pricing terms contained in their contractual agreements with suppliers and customers, are highly confidential and constitute proprietary commercial information.  Furthermore, the terms of the Debtors' agreements with their suppliers, as well as a significant amount of additional information provided by the Debtors to their suppliers, are subject to express disclosure restrictions pursuant to the terms of Delphi's General Terms and Conditions, which are incorporated into and made a part of substantially all of the Debtors' agreements with their suppliers.

33.    The Debtors thus believe that many suppliers and other parties-in-interest asserting claims against the Debtors are likely to file supporting documentation containing such highly confidential and proprietary information under the belief that such party is required to do so pursuant to the instructions contained in Form No. 10 of the Official Bankruptcy Forms (the "Supporting Documentation").  The disclosure of such proprietary, competitively-sensitive information could cause serious and irreparable harm to the Debtors' businesses and their restructuring efforts.  Therefore, the Debtors assert that the information contained in the Supporting Documentation to a significant number of the proofs of claim will meet the criteria provided in section 107(b) of the Bankruptcy Code, which provides that this Court may protect an entity with respect to a trade secret or confidential research, development, or commercial information.

15

34.    Because the Debtors believe that a substantial number of the proofs of claim
to be filed are likely to contain highly confidential commercial information and because the
Debtors cannot determine which proofs of claim will contain such confidential and protected
information until such proofs of claim are filed, the Debtors respectfully request that, absent
further order of this Court, all Supporting Documentation to any proof of claim be subject to
examination only by the party asserting the Claim, the Debtors, the Debtors' counsel and
advisers, the United States Trustee, counsel and advisers to the official committee of unsecured
creditors appointed in these chapter 11 cases, Kurtzman Carson Consultants, the Claims and
Noticing Agent, and any personnel of the United States Bankruptcy Court for the Southern
District of New York in the performance of their official duties, and that all such parties be
directed to maintain the confidentiality of all Supporting Documentation to any proof of claim
and the information contained therein.  The Debtors further propose that any Supporting
Documentation to any proof of claim not be loaded onto this Court's official website.

35.    The Debtors propose that all Persons and Entities which wish to assert
Claims against more than one Debtor be required to file a separate proof of claim with respect to
each such Debtor.  If Persons and Entities are permitted to assert Claims against more than one
Debtor in a single Proof of Claim Form, the Claims and Noticing Agent may have difficulty
maintaining separate Claim registers for each Debtor, and all Debtors will be required to object
to a proof of claim that may be applicable to only one of the Debtors.

36.    Likewise, each Person and Entity should be required to identify on its Proof
of Claim Form the particular Debtor against which its Claim is asserted if it believes its claim is
against a Debtor other than the Debtor identified in the Proof of Claim Form that is mailed to it.
Requiring parties to identify the Debtor against which a Claim is asserted would greatly expedite

16

the Debtors' review of proofs of claim in these chapter 11 cases.  This requirement would not be unduly burdensome on claimants because each such Person and Entity will know or should know the identity of the Debtor against which it is asserting a Claim.

D.    Publication Notice

37.    The extensive nature of the Debtors' businesses creates the potential for the existence of many Claims against the Debtors of which the Debtors are unaware.  Such unknown potential Claims may include, for example, Claims that, for various reasons, are not recorded on the Debtors' books and records.  Accordingly, the Debtors believe that it is necessary to provide notice of the Bar Dates to Persons and Entities whose names and addresses are unknown to the Debtors and, in addition, that it is advisable to provide supplemental notice to known holders of Claims.

38.    Accordingly, the Debtors propose to give notice of the Bar Date Notice by (a) publication in the New York Times (national edition), the Wall Street Journal (national, European, and Asian editions), USA Today (worldwide), the Automotive News (national edition), and in local editions of the following: the Adrian Daily Telegram, the Arizona Daily Star, the Buffalo News, the Chicago Sun Times, the Clinton News, the Columbus Dispatch, the Daily Leader, the Dayton Daily News, the Detroit Free Press, the El Paso Times, the Fitzgerald Herald Leader, The Flint Journal, the Gadsden Times, the Grand Rapids Press, the Greensville News, the Indianapolis Star, the Kansas City Star, the Kokomo Tribune, the Lansing State Journal, the Laurel Leader, the Los Angeles Daily News, the Milwaukee Journal Sentinel, the Mobile Beacon, The Mobile Register, the Oakland Press, the Olathe Daily News, the Rochester Democrat and Chronicle, the Saginaw News, the Sandusky Register, the Tribune Chronicle, the Tulsa World, The Tuscaloosa News, and The Vindicator, and (b) electronically through posting

on the Delphi legal information website, www.delphidocket.com.   The Debtors propose to

publish such notices on or about April 21, 2006, or as soon thereafter as practicable.   Given this

timetable and the proposed Bar Dates, creditors would have sufficient notice, time, and

opportunity to file their Claims against the Debtors' estates.   The Debtors respectfully request

this Court to authorize the Debtors to enter into transactions to cause such publication to be made

and to make the reasonable payments required for such publication.

Notice Of Motion

39.    Notice of this Motion has been provided in accordance with the Order

Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, And

Administrative Procedures, And (III) Scheduling An Initial Case Conference In Accordance

With Local Bankr. R. 1007-2(e) entered by this Court on October 14, 2005 (Docket No. 245).   In

light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

Memorandum Of Law

40.    Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

18

WHEREFORE the Debtors respectfully request that this Court enter an order (a) setting

the Bar Dates and procedures for filing proofs of claim as described herein, (b) approving the

form and manner of notice thereof, and (c) granting them such other and further relief as is just.

Dated:  New York, New York
        March 17, 2006


                         SKADDEN, ARPS, SLATE, MEAGHER
                           & FLOM LLP

                         By: /s/ John Wm. Butler, Jr.
                             John Wm. Butler, Jr. (JB 4711)
                             John K. Lyons (JL 4951)
                             Ron E. Meisler (RM 3026)
                         333 West Wacker Drive, Suite 2100
                         Chicago, Illinois  60606
                         (312) 407-0700

                                 - and -

                         By: /s/ Kayalyn A. Marafioti
                             Kayalyn A. Marafioti (KM 9632)
                             Thomas J. Matz (TM 5986)
                         Four Times Square
                         New York, New York 10036
                         (212) 735-3000

                         Attorneys for Delphi Corporation, et al.,
                           Debtors and Debtors-in-Possession