SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
David E. Springer (DS 9331)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                            :
                                            :
            In re                           :      Chapter 11
                                            :
DELPHI CORPORATION, et al.,                 :      Case No. 05–44481 (RDD)
                                            :
                        Debtors.            :      (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DEBTORS' RESPONSE IN OPPOSITION TO MOTION OF APPALOOSA MANAGEMENT
L.P. PURSUANT TO FED R. BANKR. P. 9016 FOR ORDER QUASHING DEBTORS'
SUBPOENA FOR TESTIMONY AT TRIAL DIRECTED TO DAVID A. TEPPER

Delphi Corporation (which, with certain of its subsidiaries and affiliates, the

debtors, and the debtors-in-possession in the above-captioned cases, are referred to collectively

and variously herein as "Delphi" or the "Debtors") hereby submits this Response in Opposition

to the Motion of Appaloosa Management L.P. Pursuant to Fed. R. Bankr. P 9016 for an Order

Quashing the Debtors' Subpoena for the Testimony at Trial Directed to David A. Tepper, dated

March 20, 2006 (the "Motion").

In support of this Response, the Debtors respectfully represent as follows:

<u>Factual Background</u>

1.     Appaloosa's Motion is premised on misstatements of the facts and a

misinterpretation of the Court's Amended Pretrial and Scheduling Order. The truth is that, since

last Wednesday, March 15, 2006, Mr. Tepper has personally injected <u>himself</u> into the litigation

over Appaloosa's Motion for Appointment of an Equity Committee and thereby rendered his

testimony relevant.

2.     On March 15, 2006, Appaloosa's counsel faxed directly to Robert S. "Steve"

Miller, Chairman and CEO of Delphi, a letter signed by Mr. Tepper and directed to Delphi's

Board of Directors in care of Mr. Miller.[1] (Joint Hearing Exhibit ("Ex.") 194 (attached hereto).)

In his letter, Mr. Tepper accused Delphi's Board of Directors of breaches of their fiduciary duties

by, among other things, authorizing the filing of the Debtors' bankruptcy petitions,

misrepresenting the Debtors' financial condition, and "opposing the appointment of an official

equity holders committee."  Mr. Tepper's letter also demanded that the Debtors not enter into any

---

[1]    The Debtors' counsel protested Appaloosa's counsel's direct communication with Mr. Miller.
In response, Appaloosa's counsel claimed that "all we did [sic] was act as the mail service for
David Tepper. I had no contact with your client whatsoever. As reflected by the fax cover,
my secretary sent David's letter to Mr. Miller and asked that he forward it on to the other
directors." (Ex. 195 (attached hereto).)

agreements with General Motors or Delphi's unions without the prior participation or approval

by Appaloosa or other Delphi shareholders.

3.      Mr. Tepper's letter also included a demand that Delphi call a shareholders'

meeting at which Appaloosa intended to "nominate and elect a slate of between one and four

directors to the board." (Id.)  The letter concluded with a demand that Delphi sue its directors for

damages for breach of fiduciary duty, lest Appaloosa be "force[d] . . . to consider seeking relief

from the Bankruptcy Court to take this action on Delphi's behalf."  (Id.)

4.      Mr. Tepper's March 15, 2006 letter also made reference to a letter sent on Sunday,

March 12, 2005, by Appaloosa's counsel to the Debtors' counsel demanding that Appaloosa and

its advisors "be brought into the loop immediately" regarding the Debtors' ongoing discussions

with General Motors and the Debtors' unions. (Ex. 193.)

5.      On March 16, 2005, Appaloosa filed a Report on Schedule 13D with the

Securities and Exchange Commission, attaching copies of Mr. Tepper's letter of March 15, 2006

to the Debtors' Board of Directors, and Mr. Lauria's March 12, 2006 letter to Mr. Butler. (Ex.

34.)

6.      On March 17, 2006, The Daily Deal ran a story, headlined "Delphi investor

threatens rare ch. 11 proxy battle," on Mr. Tepper's maneuvers and Appaloosa's SEC filing of the

day before.  The Daily Deal noted that that it had spoken directly with Mr. Tepper about his

actions, and it reported: "The investor [Tepper] demanded that Delphi schedule an annual

meeting as soon as possible, and he threatened legal action should it fail to do so. But Tepper is

likely to settle for a place on a company equity committee, admitting in an interview that he

would likely stand down from his proxy challenge should Delphi assent to forming such a panel.

The Company opposes forming such a group." (Ex. 74 (emphasis added).)

7.       In light of Mr. Tepper's actions over the past few days, including his apparent admission that he had threatened to sue Delphi's board unless it acceded to his demand for the formation of an equity committee, on the morning of March 17, 2006, Delphi's counsel issued a trial subpoena commanding Mr. Tepper to attend the hearing scheduled for March 21, 2006. Mr. Tepper was properly served with the subpoena at the offices of Appaloosa in Chatham, New Jersey, at 4:26 p.m. on March 17, 2006 – a fact that Appaloosa does not contest. (See proof of service attached hereto.)

8.       Appaloosa's account of the meet and confer that thereafter occurred is wrong. When Mr. Tepper was served, Appaloosa's counsel, Mr. Aragon, was completing the deposition of Mr. David Resnick of Rothschild, the Debtors' investment banker and expert witness. The undersigned counsel for the Debtors defended the deposition for the Debtors.  After the conclusion of the deposition, at around 6:30 p.m., Mr. Aragon asked Delphi's counsel about the subpoena of Mr. Resnick and asked the basis for it.  The undersigned explained to Mr. Aragon that the subpoena to Mr. Tepper was prompted, among other things, by Mr. Tepper's letter of March 15, 2006, to Delphi's Board; Appaloosa's 13D filing of March 16, 2006; and Mr. Tepper's apparent admission to the <u>The Daily Deal</u> that his threats against Delphi's Board were part of a litigation tactic in respect to Appaloosa's equity committee motion.  (The signatory of Appaloosa's Motion was not a party to the discussion between the Debtors' counsel and Mr. Aragon and was either absent from the room or engaged in other activities during at least part of it.) Delphi's counsel specifically stated to Mr. Aragon that Appaloosa should feel free to file a motion to compel, if it wanted to do so, but that it could <u>only</u> represent to the Court that Delphi refused to withdraw the subpoena, and that Appaloosa should not otherwise represent or

4

characterize the Debtors' position. <u>Mr. Aragon expressly agreed to that condition.</u>[2] Appaloosa's

Motion neglects to acknowledge or respect Mr. Aragon's agreement in that respect.

<u>Argument</u>

9.      Appaloosa's contention that the subpoena somehow violates the Court's pretrial

and scheduling order cannot withstand serious scrutiny.  Mr. Tepper is not being called as an

"expert witness," and the events that prompted the subpoena to Mr. Tepper all occurred <u>after</u>

March 14, 2006, the date on which the order required the Debtors to produce the expert reports

and the declarations "containing the rebuttal or responsive testimony" of their witnesses. (Order,

¶ 7).  Moreover, the Order's requirement that "all <u>direct</u> testimony shall be presented through

expert reports and declarations" (<u>id.</u>, ¶ 14 (emphasis added)) cannot reasonably be interpreted to

apply to representatives of an <u>adverse</u> party, such as Mr. Tepper, with whom counsel may not,

consistent with their ethical obligations, communicate directly for purposes of preparing a

declaration (or otherwise). In all events, the examination of an adverse witness called by a party

in its case is not, in the usual sense, a "direct" examination, but a <u>cross</u>-examination.  <u>See</u> Fed. R.

Evid. 611(c).

10.     Appaloosa's contentions that the areas of inquiry of Mr. Tepper are "not relevant"

and that the subpoena was issued "for the sole purpose of harassing Mr. Tepper and Appaloosa"

are contrary to the record.[3]  Mr. Tepper made his testimony "relevant" and forfeited any

---

[2]     Delphi's counsel also agreed to make himself available for a further meet and confer over the
weekend, if Mr. Aragon wanted to discuss the matter further. There was no communication
from Appaloosa's counsel on this subject over the weekend.

[3]     Appaloosa's implication that the subpoena imposes an "undue burden" on Mr. Tepper lacks
any substantiation. The subpoena requires him to travel less than 25 miles from his home in
New Jersey and to spend less than a full day testifying in a manner in which Appaloosa is the
movant. This "burden," if it is one, is insubstantial if the matter is of the significance that
Appaloosa claims for it.

exemption from being called to testify when, on March 15, 2006, he wrote a letter to Delphi's

Board of Directors claiming that the directors had breached their fiduciary duties by resisting

Appaloosa's motion for an equity committee, when he filed his and his counsel's letters as

exhibits to a Report on Form 13D, and when he launched a publicity campaign in support of his

efforts. Cross-examination of Mr. Tepper will establish that, not <u>once</u> after Appaloosa purchased

its equity position in Delphi – which occurred <u>after</u> the Debtors had filed their petitions – did

Appaloosa contact the Debtors about its desire to form an equity committee or its supposed

concerns. A robust cross-examination of Mr. Tepper will set the whole matter into context and

make plain on the record that, as Mr. Tepper effectively admitted to <u>The Daily Deal</u>, his threats

against Delphi's Board were a desperate litigation tactic prompted by a recognition that, on the

discovery record that had been developed before then, his Motion for Appointment of an Equity

Committee stood no chance.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a) denying

Appaloosa's Motion and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
March 21, 2006

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP


By:   s/ David E. Springer
      John Wm. Butler, Jr. (JB 4711)
      David E. Springer (DS 9331)
      Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700


- and -


By:   s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000


Attorneys for Delphi Corporation, et al.,
      Debtors and Debtors-in-Possession

**Exhibit 194**



28 Main Street, 1st Floor, Chatham, New Jersey 07928

(973) 701-7000
Fax (973) 701-7055

March 15, 2006

<u>VIA EMAIL AND FACSIMILE</u>

TO:
THE MEMBERS OF THE BOARD OF DIRECTORS
OF DELPHI CORPORATION
c/o Robert S. "Steve" Miller
Chairman and Chief Executive Officer
Delphi Corporation
5725 Delphi Drive
Troy, Michigan 48098-2815

Re: Delphi Corporation—Case No. 05-44481

Gentlemen:

As you know, we are one of the largest shareholders of Delphi Corporation ("Delphi"). As reflected in our current Schedule 13G on file with the SEC, we hold approximately 9.3% of your issued and outstanding shares of common stock.

We are quite troubled by the board's course of conduct in connection with the commencement and prosecution of Delphi's chapter 11 case. Indeed, as outlined below, we believe that management and the board have engaged in, and are continuing to pursue, courses of action that are in breach of their fiduciary duties of care, loyalty and candor, and that have resulted in, and are continuing to inflict, material harm to the chapter 11 estate of Delphi and all of its bona fide stakeholders.

As a preliminary matter, we do not understand how the decision to seek chapter 11 relief on October 8, 2005 for Delphi and certain of its subsidiaries (collectively, "the Debtors") was necessitated by the Debtors' circumstances or in the best interests of Delphi or its stakeholders. Your public filings do not reflect the existence of a liquidity crisis or the pending or imminent exercise of creditor remedies, which if unchecked by bankruptcy, would have harmed or impaired the business. Moreover, there is no indication that any material adverse event occurred between August 2, 2005 (when the June 22 dividend was paid) and October 8 (when the chapter

Members of Board of Directors
of Delphi Corporation

March 15, 2006

11 petitions were filed) that would justify the onset of bankruptcy. On the other hand, it is clear
that the filing itself destroyed hundreds of millions of dollars of value (as reflected by the freefall
of Delphi's market capital during the period immediately preceding the filing) and has caused
Delphi to incur millions of dollars of unnecessary chapter 11-related fees and expenses. It is also
clear that the timing of the filing--one week before certain amendments to the Bankruptcy Code
became effective--had the effect of providing certain personal benefits to management and the
board: (1) it preserved management's ability to obtain for itself key employee retention plan
benefits (now largely outlawed by the amended Bankruptcy Code), and (2) it maximized the
control to be enjoyed by management and the board over the chapter 11 process, by retaining the
potential for unlimited extensions of the exclusive right to file a plan (as compared to the 180-
day limit set forth in the amendments to the Bankruptcy Code).

In addition to having improperly determined to seek chapter 11 relief, management and
the board have repeatedly authorized Delphi to take actions and make public statements in the
chapter 11 case that are inconsistent with their duty to maximize value at Delphi and prevented
Delphi's shareholders from being properly represented. For example:

* Delphi has repeatedly, materially overstated the amount of its labor-related
obligations by failing to take into account the fact that many of the benefits are unvested (i.e.,
they can be terminated without incurring liability) and any legal duty to provide them expires
with the applicable underlying CBA in late 2007.

* Delphi has improperly characterized itself as "grossly insolvent" in reliance on a
superficial balance sheet analysis, and without performing an appropriate enterprise valuation
based on a properly-vetted business plan presented after the formulation and assessment of
alternative reorganization strategies.

* Delphi has included in the Key Employee Compensation Program a reservation of
10% of Delphi's stock for management, putting management in direct conflict with Delphi's
shareholders (the KECP gives management the incentive to convert debt into equity of the
reorganized Delphi, diluting current shareholders' ownership stake).

* Delphi has cancelled its annual shareholders meeting for 2005 in violation of the
express requirements of applicable Delaware law, thereby preventing shareholders from
exercising their governance rights.

* At the same time, Delphi has thwarted the shareholders' efforts to obtain a vehicle
to be heard in the chapter 11 case by opposing the appointment of an official equityholders
committee.

Against this backdrop, recent reports regarding the potential for an imminent deal among the
Debtors, the UAW and GM regarding the Debtors' (including Delphi's) labor obligations and

2

Members of Board of Directors
of Delphi Corporation

March 15, 2006


GM's duties and claims with respect thereto, are the cause of further concern. Given the obvious
potential magnitude of the liabilities associated with any new long-term labor agreement or the
early termination of the existing CBAs, our natural concerns are that potentially outcome-
determinative decisions are being made without the proper procedural protections of a chapter 11
plan process, and without any opportunity for other constituencies (such as Appaloosa or
Delphi's other shareholders) to participate or be heard. These concerns have been intensified by
your counsel's failure to respond to our request to be informed promptly regarding the status of
negotiations (see attached letter to J. Butler dated March 12, 2005).

        Substantively, we do not believe Delphi should enter into any amended or revised
collective bargaining agreement with the unions or terminate the existing collective bargaining
agreements in a fashion that exposes Delphi to claims by employees/retirees or indemnification
claims of GM that would exceed the cost of performance under the existing CBAs through their
current expiration. In addition, the Delphi estate should not incur liability for revised labor costs
of insolvent subsidiaries; to do so would destroy value at Delphi in violation of your fiduciary
duty to maximize its value solely for the benefit of all of the parent corporation's stakeholders,
not just Appaloosa.

        Given our concerns and Delphi's unwillingness thus far to support our request for an
equity committee, we hereby demand that the board schedule and hold the 2005 annual
shareholders' meeting at the earliest possible time and further inform you of our intention to
nominate and elect a slate of between one and four directors to the board at such meeting. If you
are unwilling to proceed on a voluntary basis, we are prepared to seek appropriate relief
compelling a shareholder meeting. In addition, we believe that Delphi board members who are
also directors or officers of insolvent Debtor subsidiaries have conflicting duties that require
their recusal from all consideration of substantive interdebtor issues at the parent level. Finally,
we ask that Delphi promptly commence an action for damages arising from the above breaches
of the fiduciary duties of care and loyalty; failure to do so will force us to consider seeking relief
from the Bankruptcy Court to take this action on Delphi's behalf.

        Thank you for your attention to these important matters. We remain prepared to meet
with management and/or the board at your convenience to discuss these issues.

Very truly yours,



David Tepper
President

3

**Exhibit 195**

## MacDonald, Neil

**Subject:** Appaloosa Demand Letter

**From:** Butler, Jr., John (Jack) Wm
**Sent:** Friday, March 17, 2006 7:04 AM
**To:** Springer, David
**Subject:** FW: Appaloosa Demand Letter

**From:** Lauria, Thomas E. [mailto:TLauria@miami.whitecase.com]
**Sent:** Wednesday, March 15, 2006 10:42 PM
**To:** Butler, Jr., John (Jack) Wm
**Subject:** Re: Appaloosa Demand Letter

Jack, just to be clear, all we did was act as the mail service for David Tepper. I had no contact with your client whatsoever. As reflected by the fax cover, my secretary sent David's letter to Mr. Miller and asked that he forward it on to the other directors.

On a more substantive note, is there any interest in attempting to acheive a negotiated resolution of our motion, or is it going to be a fight to the bitter end?

------------------------
Sent from my BlackBerry Wireless Handheld

-----Original Message-----
From: Butler, Jr., John (Jack) Wm <JBUTLER@skadden.com>
To: Lauria, Thomas E. <TLauria@miami.whitecase.com>
Sent: Wed Mar 15 20:22:32 2006
Subject: Appaloosa Demand Letter

Tom,

This note is being sent only to you.

I note that you communicated directly with Steve Miller today (by fascimile).

Please direct all of W&C's communications to Skadden.

Thanks!

Jack

John Wm. Butler, Jr.
Partner and Co-Practice Leader
Corporate Restructuring Department
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
Chicago:    (312) 407-0730
New York:  (212) 735-3114

3/18/2006

Facsimile: (312) 407-8501

---

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

This e-mail and any attachments thereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you receive this email in error please immediately notify me at (212) 735-3000 and permanently delete the original copy and any copy of any e-mail, and any printout thereof.

Further information about the firm, a list of the Partners and their professional qualifications will be provided upon request.
\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

3/18/2006

**Exhibit 193**

**WHITE & CASE**

White & Case LLP
Wachovia Financial Center, Suite 4900
200 South Biscayne Boulevard
Miami, Florida 33131-2352

Tel  + 1 305 371 2700
Fax  + 1 305 358 5744/5766
www.whitecase.com

Direct Dial + (305) 995-5282

March 12, 2006

<u>VIA EMAIL AND FACSIMILE</u>

John W. Butler Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive
Chicago, IL 60606

<u>Re:  Delphi Corporation - Case No. 05-44481</u>

Dear Jack:

Since the commencement of Delphi's chapter 11 case, you have repeatedly and continuously characterized it as a "labor transition" case.  On inquiry, you explained to me that this phrase refers to a case where the <u>sine quo non</u> of the debtor's reorganization is the ability to reduce labor costs and related obligations.  Your proposition would appear to be validated by the following facts: (1) the Debtors' aggregate funded debt and prepetition trade claims as reflected in the Debtors' Schedules are materially less than any reasonable range of enterprise values for Delphi; (2) the Debtors' ongoing labor costs appear to be the largest single variable in assessing their prospective financial performance; and (3) the claims of one of Delphi's largest creditors, Delphi's former parent, GM, appear to be comprised primarily of purported indemnity rights related to its contractual responsibility for certain of Delphi's labor costs.

According to recent news reports, Delphi believes that it is nearing a tri-partite deal with the UAW and GM regarding modifications to certain of the Company's CBAs that would impact the Company's labor costs, including pension and OPEB obligations.  Given your representations and the afore-noted facts and circumstances of this case, any agreement regarding the resolution and treatment of the Debtors' pension and OPEB obligations (which the Debtors have characterized-- we believe incorrectly--as being as much as $14 Billion in the aggregate), will likely have a material impact on (and, in the extreme, could destroy) old equity's recovery under a plan.

Accordingly, we need to be brought into the loop immediately regarding the substance of the Company's discussions so that we can understand and assess where things are and also have the opportunity to provide meaningful, informed input regarding our views on these outcome-determinative matters before a deal is finalized. Please let me know when your team is available to meet with us on these issues.

ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT   HAMBURG   HELSINKI
HO CHI MINH CITY   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUMBAI   NEW YORK   PALO ALTO
PARIS   PRAGUE   RIYADH   ROME   SAN FRANCISCO   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

MIAMI 640759 (2K)

Jack Butler, Esq.

WHITE & CASE

Page 2

As a threshold matter, we believe that before the Debtors enter into any agreement regarding their labor obligations beyond the terms of the existing CBAs, the Debtors must first (1) put forth a business plan that has been fully vetted with the estates' constituencies (including representatives of equity), (2) establish reasonable ranges for Delphi's enterprise value under various possible scenarios that incorporate reasonable input from the estates' constituencies (including representatives of equity), and (3) establish a reasonable framework for the treatment of Delphi's other debt and claims. Indeed, under the circumstances, we believe that it would be inappropriate for Delphi to (a) enter into a long-term CBA and/or to resolve the disputes between GM and the Debtors regarding its liability for (and claims against the Debtors with respect to) employee and retiree obligations, without the protections of a chapter 11 plan process (i.e., entering into an amended long-term CBA or settling with GM is an unlawful sub rosa plan); or (b) link the terms of an amended CBA to a settlement with GM.

Putting aside the foregoing manifest process concerns, unless or until our diligence reveals some appropriate offsetting benefit, the costs arising from the amendment of an existing CBA, either in terms of employee/retiree claims or indemnification claims by GM (which we believe are subject to numerous defenses), should not exceed the cost of performing under such CBA through its current expiry. Furthermore, the Delphi estate should not incur liability for revised labor costs of insolvent subsidiaries – to permit it to do so would be in direct conflict with the duty of Delphi's board to maximize the value of its estate.

Thank you for your attention to these important matters. I look forward to working with you toward an appropriate value-maximizing resolution.

Very truly yours,

Thomas E Lauria/ee

Thomas E Lauria

TEL/rcc

MIAMI 649759 (2K)

**Exhibit 34**

```
<DOCUMENT>
<TYPE>SC 13D
<SEQUENCE>1
<FILENAME>sch13d.txt
<TEXT>
```

[Draft: (New York) March 16, 2006]

===============================================================================

UNITED STATES
SECURITIES AND EXCHANGE COMMISSION
WASHINGTON, D.C. 20549

----------

SCHEDULE 13D
UNDER THE SECURITIES EXCHANGE ACT OF 1934

DELPHI CORPORATION
------------------
(Name of Issuer)

Common Stock, $0.01 Par Value Per Share
----------------------------------------
(Title of Class of Securities)

247126105
--------------
(CUSIP Number)

with copies to:

Mark L. Mandel, Esq.
White & Case LLP
1155 Avenue of the Americas
New York, NY 10036
(212) 819-8546
-----------------------------------------------------------------
(Name, Address and Telephone Number of Person Authorized to Receive
Notices and Communications)

March 15, 2006
(Date of Event Which Requires Filing of this Statement)

If the filing person has previously filed a statement on Schedule 13G to report
the acquisition which is the subject of this Schedule 13D, and is filing this
schedule because of Rule 13d-1(e), 13d-1(f) or 13d-1(g), check the following box
[X].

===============================================================================

```
<PAGE>
```

SCHEDULE 13D

-------------------
CUSIP No. 247126105
-------------------

----- ----------------------------------------------------------------

```
1       NAME OF REPORTING PERSONS
        Appaloosa Investment Limited Partnership I


        I.R.S. IDENTIFICATION NOS. OF ABOVE PERSON (ENTITIES ONLY)

----- --------------------------------------------------------------------
2       CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP              (a) [ ]
                                                                     (b) [ ]
----- --------------------------------------------------------------------
3       SEC USE ONLY
----- --------------------------------------------------------------------
4       SOURCE OF FUNDS
        OO
----- --------------------------------------------------------------------
5       CHECK IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED
        PURSUANT TO ITEMS 2(d) or 2(e)                                   [ ]
----- --------------------------------------------------------------------
6       CITIZENSHIP OR PLACE OF ORGANIZATION
        Delaware
----------------------------- ----- --------------------------------------
NUMBER OF SHARES              7     SOLE VOTING POWER
BENEFICIALLY OWNED                  0
BY EACH REPORTING            ----- --------------------------------------
PERSON WITH                  8     SHARED VOTING POWER
                                   27,716,000
                            ----- --------------------------------------
                             9     SOLE DISPOSITIVE POWER
                                   0
                            ----- --------------------------------------
                             10    SHARED DISPOSITIVE POWER
                                   27,716,000
----- --------------------------------------------------------------------
11      AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON
        27,716,000
----- --------------------------------------------------------------------
12      CHECK IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES
        CERTAIN SHARES                                                   [ ]
----- --------------------------------------------------------------------
13      PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)
        4.93%
----- --------------------------------------------------------------------
14      TYPE OF REPORTING PERSON
        PN
----- --------------------------------------------------------------------
```

                                      2

<PAGE>

SCHEDULE 13D

--------------------
CUSIP No. 247126105
--------------------

----- --------------------------------------------------------------------
```
1       NAME OF REPORTING PERSONS
        Palomino Fund Ltd.


        I.R.S. IDENTIFICATION NOS. OF ABOVE PERSON (ENTITIES ONLY)
```

```
----- --------------------------------------------------------------------
2      CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP              (a) [ ]
                                                                     (b) [ ]
----- --------------------------------------------------------------------
3      SEC USE ONLY
----- --------------------------------------------------------------------
4      SOURCE OF FUNDS
       OO
----- --------------------------------------------------------------------
5      CHECK IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED
       PURSUANT TO ITEMS 2(d) or 2(e)                                   [ ]
----- --------------------------------------------------------------------
6      CITIZENSHIP OR PLACE OF ORGANIZATION
       British Virgin Islands
---------------------- ----- ----------------------------------------------
NUMBER OF SHARES        7     SOLE VOTING POWER
BENEFICIALLY OWNED BY         0
EACH REPORTING         ----- ----------------------------------------------
PERSON WITH             8     SHARED VOTING POWER
                              24,284,000
                       ----- ----------------------------------------------
                        9     SOLE DISPOSITIVE POWER
                              0
                       ----- ----------------------------------------------
                        10    SHARED DISPOSITIVE POWER
                              24,284,000
----- --------------------------------------------------------------------
11     AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON
       24,284,000
----- --------------------------------------------------------------------
12     CHECK IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES
       CERTAIN SHARES                                                   [ ]
----- --------------------------------------------------------------------
13     PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)
       4.32%
----- --------------------------------------------------------------------
14     TYPE OF REPORTING PERSON
       CO
----- --------------------------------------------------------------------
```

                                      3

<PAGE>

SCHEDULE 13D

```
-------------------
CUSIP No. 247126105
-------------------
```

```
----- --------------------------------------------------------------------
1      NAME OF REPORTING PERSONS
       Appaloosa Management L.P.

       I.R.S. IDENTIFICATION NOS. OF ABOVE PERSON (ENTITIES ONLY)

----- --------------------------------------------------------------------
2      CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP              (a) [ ]
                                                                     (b) [ ]
----- --------------------------------------------------------------------
3      SEC USE ONLY
```

```
-----  ------------------------------------------------------------------
4      SOURCE OF FUNDS
       OO
-----  ------------------------------------------------------------------
5      CHECK IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED
       PURSUANT TO ITEMS 2(d) or 2(e)                                 [ ]
-----  ------------------------------------------------------------------
6      CITIZENSHIP OR PLACE OF ORGANIZATION
       Delaware
-----------------------  -----  -----------------------------------------
NUMBER OF SHARES         7      SOLE VOTING POWER
BENEFICIALLY OWNED              0
BY EACH REPORTING        -----  -----------------------------------------
PERSON WITH              8      SHARED VOTING POWER
                                52,000,000
                         -----  -----------------------------------------
                         9      SOLE DISPOSITIVE POWER
                                0
                         -----  -----------------------------------------
                         10     SHARED DISPOSITIVE POWER
                                52,000,000
-----  ------------------------------------------------------------------
11     AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON
       52,000,000
-----  ------------------------------------------------------------------
12     CHECK IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES
       CERTAIN SHARES                                                 [ ]
-----  ------------------------------------------------------------------
13     PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)
       9.25%
-----  ------------------------------------------------------------------
14     TYPE OF REPORTING PERSON
       PN
-----  ------------------------------------------------------------------
```

                                      4

<PAGE>

SCHEDULE 13D

```
-------------------
CUSIP No. 247126105
-------------------
```

```
-----  ------------------------------------------------------------------
1      NAME OF REPORTING PERSONS
       Appaloosa Partners Inc.

       I.R.S. IDENTIFICATION NOS. OF ABOVE PERSON (ENTITIES ONLY)

-----  ------------------------------------------------------------------
2      CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP          (a) [ ]
                                                                (b) [ ]
-----  ------------------------------------------------------------------
3      SEC USE ONLY
-----  ------------------------------------------------------------------
4      SOURCE OF FUNDS
       OO
-----  ------------------------------------------------------------------
5      CHECK IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED
```

```
               PURSUANT TO ITEMS 2(d) or 2(e)                              [ ]
----- --------------------------------------------------------------------------
6      CITIZENSHIP OR PLACE OF ORGANIZATION
       Delaware
----------------------- ----- --------------------------------------------------
NUMBER OF SHARES        7     SOLE VOTING POWER
BENEFICIALLY OWNED            0
BY EACH REPORTING            ----- -----------------------------------------------
PERSON WITH             8     SHARED VOTING POWER
                             52,000,000
                            ----- -----------------------------------------------
                        9     SOLE DISPOSITIVE POWER
                             0
                            ----- -----------------------------------------------
                        10    SHARED DISPOSITIVE POWER
                             52,000,000
----- --------------------------------------------------------------------------
11     AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON
       52,000,000
----- --------------------------------------------------------------------------
12     CHECK IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES
       CERTAIN SHARES                                                      [ ]
----- --------------------------------------------------------------------------
13     PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11)
       9.25%
----- --------------------------------------------------------------------------
14     TYPE OF REPORTING PERSON
       CO
----- --------------------------------------------------------------------------
```

                                    5

<PAGE>

SCHEDULE 13D

--------------------
CUSIP No. 247126105
--------------------

```
----- --------------------------------------------------------------------------
1      NAME OF REPORTING PERSONS
       David A. Tepper

       I.R.S. IDENTIFICATION NOS. OF ABOVE PERSON (ENTITIES ONLY)

----- --------------------------------------------------------------------------
2      CHECK THE APPROPRIATE BOX IF A MEMBER OF A GROUP            (a) [ ]
                                                                  (b) [ ]
----- --------------------------------------------------------------------------
3      SEC USE ONLY
----- --------------------------------------------------------------------------
4      SOURCE OF FUNDS
       OO
----- --------------------------------------------------------------------------
5      CHECK IF DISCLOSURE OF LEGAL PROCEEDINGS IS REQUIRED
       PURSUANT TO ITEMS 2(d) or 2(e)                                      [ ]
----- --------------------------------------------------------------------------
6      CITIZENSHIP OR PLACE OF ORGANIZATION
       United States of America
----------------------- ----- --------------------------------------------------
```

| NUMBER OF SHARES BENEFICIALLY OWNED BY EACH REPORTING PERSON WITH | 7 | SOLE VOTING POWER 0 |
|---|---|---|
| | 8 | SHARED VOTING POWER 52,000,000 |
| | 9 | SOLE DISPOSITIVE POWER 0 |
| | 10 | SHARED DISPOSITIVE POWER 52,000,000 |

| 11 | AGGREGATE AMOUNT BENEFICIALLY OWNED BY EACH REPORTING PERSON 52,000,000 |
|---|---|
| 12 | CHECK IF THE AGGREGATE AMOUNT IN ROW (11) EXCLUDES CERTAIN SHARES [ ] |
| 13 | PERCENT OF CLASS REPRESENTED BY AMOUNT IN ROW (11) 9.25% |
| 14 | TYPE OF REPORTING PERSON IN |

6

<PAGE>

ITEM 1. SECURITY AND ISSUER

This statement on Schedule 13D (this "Statement"), relates to the common stock, $0.01 par value per share (the "Common Stock"), of Delphi Corporation, a Delaware corporation (the "Issuer"). According to the Issuer's most recent Form 10-Q filed with the U.S. Securities and Exchange Commission on November 9, 2005, the principal executive offices of the Issuer are located at 5725 Delphi Drive, Troy, Michigan 48098.

ITEM 2. IDENTITY AND BACKGROUND

(a) This Statement is being filed by and on behalf of: (i) Appaloosa Investment Limited Partnership I ("AILP"); (ii) Appaloosa Management L.P. ("AMLP"); (iii) Palomino Fund Ltd. ("Palomino"); (iv) Appaloosa Partners Inc. ("API"); and (v) David A. Tepper ("Mr. Tepper"). AILP, AMLP, Palomino, API and Mr. Tepper are hereinafter sometimes collectively referred to as the "Reporting Persons."

(b) The business address of AMLP is Appaloosa Management L.P., 26 Main Street, Chatham, NJ 07928. The business address of each of AILP, Palomino, API and Mr. Tepper is c/o Appaloosa Management L.P., 26 Main Street, Chatham, NJ 07928.

(c) AILP is a Delaware limited partnership that is an investment fund. AMLP is a Delaware limited partnership that is the general partner of AILP and acts as investment advisor to Palomino. Palomino is a British Virgin Islands corporation that is an investment fund. API is a Delaware corporation that is the general partner of AMLP. Mr. Tepper is a citizen of the United States and is the sole stockholder and the President of API. Mr. Tepper owns the majority of the limited partnership interests in AMLP.

The attached Schedule A lists the executive officers and directors of each

of AILP, AMLP, API and Palomino and contains the following information with
respect to each such person: (i) name; (ii) business address; (iii) present
principal occupation or employment and the name, principal business and address
of any corporation or other organization in which such employment is conducted;
and (iv) citizenship.

(d) During the past five years, none of the Reporting Persons nor, to the
best of any Reporting Persons' knowledge, any person named in Schedule A to this
Statement, has been convicted in a criminal proceeding (excluding traffic
violations or similar misdemeanors).

(e) During the past five years, none of the Reporting Persons nor, to the
best of any Reporting Persons' knowledge, any person named in Schedule A to this
Statement, was a party to a civil proceeding of a judicial or administrative
body of competent jurisdiction as a result of which such person was or is
subject to a judgment, decree or final order enjoining future violations of, or
prohibiting or mandating activity subject to, federal or state securities laws
or finding any violation with respect to such laws.

(f) AILP is a Delaware limited partnership. AMLP is a Delaware limited
partnership. Palomino is a British Virgin Islands Corporation. API is a Delaware
corporation. Mr. Tepper is a citizen of the United States.

7

<PAGE>

ITEM 3. SOURCE AND AMOUNT OF FUNDS OR OTHER CONSIDERATION

AMLP, API and Mr. Tepper beneficially own 52,000,000 shares of Common Stock
(the "AMLP Shares"). AILP beneficially owns 27,716,000 shares of Common Stock
(the "AILP Shares"), which were acquired with the funds of AILP. Palomino
beneficially owns 24,284,000 shares of Common Stock (the "Palomino Shares," and
together with the AMLP Shares and the AILP Shares, the "Shares"), which were
acquired with the funds of Palomino. The aggregate purchase price of the AILP
Shares was $9,295,306.80. The aggregate purchase price of the Palomino Shares
was $8,144,293.20.

ITEM 4. PURPOSE OF TRANSACTION

The acquisition of the Shares by the Reporting Persons was for investment
purposes. On March 15, 2006, in its capacity as a stockholder, AMLP sent a
letter to the Issuer's board of directors expressing concerns over the current
management of the Issuer in connection with the commencement and prosecution of
the Issuer's case under chapter 11 of the Bankruptcy Code (the "March 15th
Letter"). Particularly, the March 15th Letter outlines AMLP's belief that the
Issuer's management and board of directors have engaged in, and are continuing
to pursue, courses of action that are in breach of their fiduciary duties of
care, loyalty and candor, and that have resulted in, and are continuing to
inflict, material harm to the Issuer and all of its bona fide stakeholders.
Notably, there has been no indication that any material adverse event occurred
between August 2, 2005 (when a dividend was paid) and October 8, 2005 (when the
chapter 11 petitions were filed) that would justify the onset of bankruptcy. In
addition to having improperly determined to seek chapter 11 relief, the Issuer's
management and board of directors have repeatedly authorized the Issuer to take
actions and make public statements in the chapter 11 case that are inconsistent
with their duty to maximize value and prevented the Issuer's stockholders from
being properly represented. For example:

    o    the Issuer has repeatedly, materially overstated the amount of its
         labor-related obligations by failing to take into account the fact

that many of the benefits are unvested (i.e., they can be terminated without incurring liability) and any legal duty to provide them expires with the applicable underlying collective bargaining agreement in late 2007;

o   the Issuer has improperly characterized itself as "grossly insolvent" in reliance on a superficial balance sheet analysis, and without performing an appropriate enterprise valuation based on a properly-vetted business plan presented after the formulation and assessment of alternative reorganization strategies;

8

<PAGE>

o   the Issuer has included in the Key Employee Compensation Program ("KECP") a reservation of 10% of the Issuer's stock for management, putting management in direct conflict with the Issuer's stockholders (the KECP gives management the incentive to convert debt into equity of the reorganized Issuer, diluting current stockholders' ownership stake);

o   the Issuer has cancelled its annual stockholders meeting for 2005 in violation of the express requirements of applicable Delaware law, thereby preventing stockholders from exercising their governance rights; and

o   the Issuer has thwarted the stockholders' efforts to obtain a vehicle to be heard in the chapter 11 case by opposing the appointment of an official equityholders committee.

Moreover, the March 15th Letter demands that that the board schedule and hold the 2005 annual stockholders' meeting at the earliest possible time and further informs the Issuer's board of directors of AMLP's intention to nominate and elect a slate of between one and four directors to the board of directors at such meeting. The March 15th Letter further informs the Issuer's board of directors that if the Issuer is unwilling to proceed on a voluntary basis, AMLP is prepared to seek appropriate relief to compel a stockholders' meeting and asks that the Issuer promptly commence an action for damages arising from the breaches of the fiduciary duties of care and loyalty described in the March 15th Letter. AMLP has indicated that if the Issuer fails to do so, AMLP is prepared to seek relief from the Bankruptcy Court to take this action on the Issuer's behalf. The foregoing summary of the March 15th Letter is qualified in its entirety by reference to the March 15th Letter, a copy of which is filed as Exhibit 1 to this Statement.

Except as described in this Item 4 or otherwise described in this Statement, the Reporting Persons currently have no plans or proposals which relate to or would result in any transaction, event or action enumerated in paragraphs (a) through (j) of Item 4 of the form of Schedule 13D promulgated under the Securities Exchange Act of 1934, as amended.

Each of the Reporting Persons reserves the right, in light of its or his ongoing evaluation of the Company's financial condition, business, operations and prospects, the market price of the Common Stock, conditions in the securities markets generally, general economic and industry conditions, its or his business objectives and other relevant factors, to change its or his plans and intentions at any time, as it or he deems appropriate. In particular, and without limiting the generality of the foregoing, any one or more of the Reporting Persons (and their respective affiliates) reserves the right, in each case subject to any applicable limitations imposed on the sale of any of their

Common Stock by the Securities Act of 1933, as amended, or other applicable law,
to (i) purchase additional shares of Common Stock or other securities of the
Company, (ii) sell or transfer shares of Common Stock or other securities
beneficially owned by them from time to time in public or private transactions,
and (iii) cause any of the Reporting Persons to distribute in kind to their
respective stockholders, partners or members, as the case may be, shares of
Common Stock or other securities owned by such Reporting Persons.

9

<PAGE>

ITEM 5. INTEREST IN SECURITIES OF THE ISSUER

    (a)-(b) Set forth in the table below is the number and percentage of shares
of Common Stock beneficially owned by each Reporting Person as of March 15,
2006.

<TABLE>
<CAPTION>

| NAME | NUMBER OF SHARES BENEFICIALLY OWNED WITH SOLE VOTING AND DISPOSITIVE POWER | NUMBER OF SHARES BENEFICIALLY OWNED WITH SHARED VOTING AND DISPOSITIVE POWER | AG NU S BENE |
|---|---|---|---|
| <S> | <C> | <C> | ---- |
| Reporting Persons | 0 | 52,000,000 | 52 |
| Appaloosa Investment Limited Partnership I | 0 | 27,716,000 | 27 |
| Palomino Fund Ltd. | 0 | 24,284,000 | 24 |
| Appaloosa Management L.P. | 0 | 52,000,000 | 52 |
| Appaloosa Partners Inc. | 0 | 52,000,000 | 52 |
| David A. Tepper | 0 | 52,000,000 | 52 |

</TABLE>

    (1)  The percentages of Common Stock indicated in this table are based on
         the 561,781,590 shares of Common Stock outstanding as of September 30,
         2005, as disclosed in the Issuer's most recent Form 10-Q filed with
         the Securities and Exchange Commission on November 9, 2005. Any Common
         Stock not outstanding which is subject to options or conversion
         privileges which the beneficial owner had the right to exercise on or
         within 60 days after the date hereof is deemed outstanding for
         purposes of computing the percentage of Common Stock owned by such
         beneficial owner and for the Reporting Persons but is not deemed
         outstanding for the purpose of computing the percentage of outstanding
         Common Stock owned by any other beneficial owner.

    Other than as described above, no Reporting Person, and to the best
knowledge of the Reporting Persons, none of the persons set forth on Schedule A,
beneficially owns any securities of the Issuer.

    (c)  None of the Reporting Persons has purchased or sold common stock during
the past sixty (60) days.

http://www.sec.gov/Archives/edgar/data/1006438/000095012706000183/sch13d.txt          3/18/2006

<PAGE>

    (d) Not applicable.

    (e) Not applicable.

ITEM 6. CONTRACTS, AGREEMENTS, ARRANGEMENTS, UNDERSTANDINGS OR RELATIONSHIPS
WITH RESPECT TO SECURITIES OF THE ISSUER

    The information set forth, or incorporated by reference, in Item 3 is
hereby incorporated by this reference in this Item 6.

    Other than as described in this Statement, to the best knowledge of the
Reporting Persons there are no contracts, arrangements, understandings or
relationships among the Reporting Persons or the persons set forth on
Schedule A, and between any such persons and any other person, with respect to
any securities of the Issuer, including but not limited to, transfer and voting
of any of the securities of the Issuer, joint ventures, loan or option
arrangements, put or calls, guarantees of profits, division of profits or loss,
or the giving or withholding of proxies or a pledge or contingency the
occurrence of which would give another person voting power or investment power
over the securities of the Issuer.

ITEM 7. MATERIAL TO BE FILED AS EXHIBITS

Item 7 of the Schedule 13D is supplemented as follows:

Exhibit No.  Description
-----------  -------------------------------------------------------------
    1        Letter sent by Appaloosa Management L.P. to the Members of the
             Board of Directors of Delphi Corporation, dated March 15, 2006

    2        Joint Filing Agreement

                              11
<PAGE>


                           SIGNATURE

    After reasonable inquiry and to the best of my knowledge and belief, I
certify that the information set forth in this statement is true, complete and
correct.

Dated: March 16, 2006


                          APPALOOSA INVESTMENT LIMITED
                          PARTNERSHIP I


                          By: APPALOOSA MANAGEMENT L.P.,
                          Its General Partner


                          By: APPALOOSA PARTNERS INC.,
                          Its General Partner


                          By: /s/ David A. Tepper
                              --------------------------------
                          Name: David A. Tepper

```
                              Title: President


                              PALOMINO FUND LTD.


                              By: APPALOOSA MANAGEMENT L.P.,
                              Its Investment Adviser


                              By: APPALOOSA PARTNERS INC.,
                              Its General Partner


                              By: /s/ David A. Tepper
                                 --------------------------------
                              Name: David A. Tepper
                              Title: President


                              APPALOOSA MANAGEMENT L.P.


                              By: APPALOOSA PARTNERS INC.,
                              Its General Partner


                              By: /s/ David A. Tepper
                                 --------------------------------
                              Name: David A. Tepper
                              Title: President


                              APPALOOSA PARTNERS INC.


                              By: /s/ David A. Tepper
                                 --------------------------------
                              Name: David A. Tepper
                              Title: President
```

                                    12

<PAGE>


```
                              /s/ David A. Tepper
                              ----------------------
                                  David A. Tepper
```

                                    13

<PAGE>

SCHEDULE A

Executive Officers and Directors of Appaloosa Investment Limited Partnership I,
Palomino Fund Ltd., Appaloosa Management L.P. and Appaloosa Partners Inc.

<TABLE>
<CAPTION>

                                        PRESENT PRINCIPAL OCCUPATION OR

| NAME | CITIZENSHIP | EMPLOYMENT | BUS |
|------|-------------|------------|-----|
| <S> | <C> | <C> | <C> |
| David A. Tepper | United States | President, Appaloosa Partners Inc.; Director, Palomino Fund, Ltd. | c/o 26 NJ |
| Ronald Goldstein(1) | United States | Vice President and Secretary, Appaloosa Partners Inc. | c/o 26 NJ |
| Lawrence O'Friel(1) | United States | Treasurer, Appaloosa Partners Inc. | c/o 26 NJ |
| Ernest Morrison(1) | United Kingdom | Partner of the law firm Cox Hallett Wilkinson; Director, Palomino Fund, Ltd. | Mil Str |
| Graham Cook(1) | United Kingdom | Managing Director of TMF (BVI) Limited; Managing Director of Bison Financial Services Limited; Director, Palomino Fund, Ltd. | Mil Roa Vir |

</TABLE>

(1) Such persons disclaim beneficial ownership of any of the securities covered by this Statement.

14

</TEXT>
</DOCUMENT>

**Exhibit 74**

# The Daily Deal

**SERVING THE DEAL COMMUNITY**

FRIDAY MARCH 17 2006 — $2.00    VOL. 16 NO. 82

**IN**

2  A

2  B
    liquea
3  K
    Indus
4  C
    seato
5  A
5  T

6  P
    Secu

6  W
    uSwit
    M.C.

6  M
    Group

7  I

10  T

10  T

11  E

For m
for Th

**Fis**
**its**

by T.

## Delphi investor threatens rare Ch. 11 proxy battle

by Lou Whiteman

**BANKRUPTCY** Facing the potential loss of an investment in **Delphi Corp.** now valued at $22.1 million, a hedge fund manager is raising the heat on management at the bankrupt auto parts maker by threatening a proxy fight unless the company consents to the formation of a shareholders committee.

David Tepper, who owns 9.3% of Delphi shares through his Chatham, N.J.-based **Appaloosa Management LP**, said Thursday he intends to nominate up to four candidates to the company's board of directors. In a letter to the company filed with the Securities and Exchange Commission, Tepper claims Delphi officials misrepresented the company's financial position as it entered Chapter 11 last fall.

The investor demanded that Delphi schedule an annual meeting as soon as possible, and he threatened legal action

*DELPHI continued on page 8*

## After failure with Pechiney, Corus sells aluminum business

by Laura Board *in London*



**DEAL MEMO**

**ACQUIRER**

**TARGET**

**SELLER**

**DEAL VALUE    €826 million ($994 million)**

**M&A** Having once been bitten, recovering U.K. steelmaker **Corus Group plc** has taken a cautious approach to the long-anticipated disposal of most of its aluminum unit.

The London-based company said Thursday it plans to sell its downstream aluminum rolled products and extrusions businesses to Beachwood, Ohio-based **Aleris International Inc.** for €826 million ($994 million). And to avoid a breakup fee, Corus, which was blocked from selling the assets to **Pechiney SA** three years ago, has framed the agreement as a nonbinding letter of intent.

Corus was forced to pay Pechiney €20 million in March 2003, when its Netherlands Works Council blocked the €861 million transaction. Worker representatives in Europe have a le-

*CORUS continued on page 8*

## BASF signs secrecy pact with Engelhard



gelhard board almost immediately rejected as insufficient.

"It still doesn't look like BASF will be able to acquire Engelhard for $37," Carsten Kunold, an analyst with private bank **Merck Finck & Co.** in Munich, wrote in a note. "Any price above $41 would have a negative impact on both BASF's return on employed capital and earnings per share."

The German company is most

## Optasite gets $60M more in equity

by Christine Idzelis

**PRIVATE EQUITY** Wireless tower operator **Optasite Inc.** is expected to announce Friday that it has obtained $125 million worth of equity and debt to help it develop and buy towers. It will also disclose that it has purchased eight additional packages of tower assets from unnamed sellers.

**M&A**
ing f
N.H.
er S
two
purc
**Beh**
Fish
base
$15 r
abou
$55
and i
of ne
agno

**DELPHI** *continued from page 1*

should it fail to do so. But Tepper is likely to settle for a place on a company equity committee, admitting in an interview that he would likely stand down from his proxy challenge should Delphi assent to forming the panel. The company opposes forming such a group.

"It is incredibly cumbersome trying to operate from the outside," Tepper said. "What we are trying to do is give a voice to a group that is underrepresented in this process."

Tepper owns more than 52 million Delphi shares, which are valued at roughly 42 cents each.

A hearing is scheduled for next Tuesday at the U.S. Bankruptcy Court for the Southern District of New York on a request that the judge appoint an official equity committee for Delphi. The company declined comment before that hearing.

Tepper has made headlines recently for his investments in bankrupt auto suppliers. In addition to his stake in Delphi, his funds also owned more than 14% of **Dana Corp.**, which also filed for Chapter 11 protection last fall.

In his letter to management, Tepper questions whether Delphi needed to declare bankruptcy. He said the company's management and board "have engaged in, and are continuing to pursue, courses of action that are in breach of their fiduciary duties of care, loyalty and candor, and that have resulted in, and are continuing to inflict, material harm" to Delphi and its stakeholders.

"Your public filings do not reflect the existence of a liquidity crisis or the pending or imminent exercise of creditor remedies, which if unchecked by bankruptcy would have harmed or impaired the business," Tepper wrote, noting that there was no indication of a material adverse event that occurred at the company be-

tween Delphi's Aug. 2 dividend payment and its Oct. 8 filing.

"On the other hand, it is clear that the filing itself destroyed hundreds of millions of dollars of value and has caused Delphi to incur millions of dollars of unnecessary Chapter 11-related fees and expenses," the letter continued.

Of particular interest to the investor is Delphi's reorganization plan, which the bankruptcy court has yet to approve, to reserve 10% of its stock for key employees. Tepper argues that this incentive puts management interests in conflict with those of shareholders and creditors.

Tepper's legal brinksmanship faces long odds of succeeding. Bankruptcy attorneys said judges are typically reluctant to appoint equity committees except in rare occasions where there is reasonable hope for shareholder recovery, since the appointment involves added expenses and can muddy a company's reorganization.

"If shareholders could control a Chapter 11 case, many if not most companies would fail to reorganize," said William J. Rochelle III, a bankruptcy partner with **Fulbright & Jaworski LLP** in New York. "Shareholders in most cases have nothing to lose by delaying things indefinitely."

Though Tepper is technically correct that bankrupt companies are in violation of their charters if they do not hold an annual meeting, few if any bankrupt companies hold meetings. Charles Elson, director of the Weinberg Center for Corporate Governance at the University of Delaware in Newark, Del., said that bankrupt companies rarely hold annual meetings because there are few decisions for directors or shareholders to make while an organization remains in Chapter 11.

"Everything a company does in bankruptcy is subject to the oversight of a federal judge," Elson said. "The board is pretty toothless." ■

---

**BASF** *continued from page 1*

European and U.S. competition regulators have already cleared the Engelhard offer, and BASF said it may again extend the tender period if needed.

"BASF has extended its tender offer so that it would have an opportunity to review nonpublic information provided by Engelhard pursuant to the terms of a confidentiality agreement," the company said.

Engelhard shareholders, which once sent the shares above $40, appear to be less convinced of an earlier bid, with the shares trading up less than 1% Thursday morning, to $39.53. Although BASF's shares gained after launching the bid, they are now largely unchanged in the two-month period since the offer was announced.

If successful, BASF would win an Iselin, N.J.-based group with 6,500 employees and $4.2 billion in annual sales. The purchase would

also be the biggest ever for BASF, which earlier this month agreed to pay €2.8 billion ($3.4 billion) for the construction chemicals business of Degussa AG.

BASF also said Thursday it had already received tenders for less than 1% of Engelhard's stock. For the offer to be declared unconditional, BASF wants just over half of the company's share capital. Shareholders now have until April 14 to tender their shares. The previous deadline had been March 15. ■

---

**OPTASITE** *continued from page 1*

Other equity backers in this round included new inves-

So far Optasite has raised $96.7 million of equity and $65 million of debt, Eisenstein said, with the first funding at the beginning of 2004.

---

**CORUS** *contin*

gal right to a s

At first sig meet the sam have revived i restructuring

And the b presence in E losses looks sl

"This is a g Aleris interna said Corus spo

Shares in ( vestors welco with a report the black in 2 shares rose 11 a market valu

**Standard** nouncement l credit rating c Standard & F wrote that th the company 2005 due to financial poli of this dispos

Meanwhil guarantees th up, said a sour

Corus is al and Germany

The U.K. c enue of £10.1 pects net disp which was fo plc with the N on carbon ste ther that aim began in 200 stainless-stee

For Aleris, deals since its er of Common Inc. Notable a tion of Raleig of aluminum

"The Cor portunity to e minum applic value-added automotive s many others, and CEO, in a

The busin nues of $1.8 b to boost earr the deal will

**Proof of Service**

© 1988 JULIUS BLUMBERG, INC.
PUBLISHER, NYC 10013

COURT    UNITED STATES BANKRUPTCY COURT
COUNTY OF                SOUTHERN DISTRICT OF NEW YORK

IN RE DELPHI CORP., ET AL.,

                                                        CASE
                                                        INDEX No. 05-44481 (RDD)

                                          Plaintiff(s)

                against                                  *AFFIDAVIT OF*
                                                        *SERVICE OF SUBPOENA*
                                                        IN A CASE UNDER THE BANKRUPTCY
                                          Defendant(s)  CODE

STATE OF NEW YORK, COUNTY OF    NEW YORK        SS:  The undersigned, being duly sworn, deposes and says; deponent is not a party herein, is over 18 years of age and resides at    WAYNE, NEW JERSEY
That on   3/17/06              at 4:23  P M., at 26 MAIN STREET, CHATHAM, NEW JERSEY
deponent served the within subpoena on        DAVID A. TEPPER                    witness therein named,
IN A CASE UNDER THE BANKRUPTCY
CODE

**INDIVIDUAL**      by delivering a true copy to said witness personally; deponent knew the person so served to be the witness described in said
1. ☒        subpoena.

**CORPORATION**     a                         corporation, by delivering thereat a true copy to
2. ☐        personally, deponent knew said corporation so served to be the corporation witness and knew said individual to be thereof.

**SUITABLE AGE PERSON**  by delivering thereat a true copy to                              a person of suitable age
3. ☐        and discretion. Said premises is witness'—actual place of business—dwelling place—usual place of abode—within the state.

**AFFIXING TO DOOR, ETC.**  by affixing a true copy to the door of said premises, which is witness'—actual place of business—dwelling place—usual place
4. ☐        of abode—within the state. Deponent was unable, with due diligence to find witness or a person of suitable age and discretion thereat, having called there

**MAILING TO RESIDENCE**  Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to witness
USE WITH 3 OR 4  at witness' last known residence, at                                          and deposited
5A. ☐      said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

**MAILING TO BUSINESS**  Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class postpaid envelope properly
USE WITH 3 OR 4  addressed to witness at witness' actual place of business, at
5B. ☐      in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State. The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address or otherwise, that the communication was from an attorney or concerned an action against the witness.

**DESCRIPTION**
USE WITH
1, 2, OR 3

| ☒ Male | ☒ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☒ Brown Hair | ☒ Balding | ☐ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs. |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☒ 36-50 Yrs. | ☐ 5'4"-5'8" | ☐ 131-160 Lbs. |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☐ 51-65 Yrs. | ☒ 5'9"-6'0" | ☒ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☒ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

At the time of said service, deponent paid (tendered) in advance $  100.00        the authorized traveling expenses and one day's witness fee.

                        JOHN DICANIO
                    Notary Public, State of New York
                        No. 01-DI4877768
Sworn to before me on    Qualified in Westchester County
3/20/06              Commission Expires Feb. 11, 2007    _____
                                                        PRINT NAME BENEATH SIGNATURE
                                                        PETER FELDMAN

                                                        License No.    797824

**Amended Scheduling Order**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                          :

In re                      :       Chapter 11
                          :

DELPHI CORPORATION, et al.,    :       Case No. 05-44481 (RDD)
                          :

              Debtors.    :       (Jointly Administered)
                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

AMENDED PRETRIAL AND SCHEDULING ORDER RELATING TO THE MOTION OF
APPALOOSA MANAGEMENT L.P FOR AN ORDER DIRECTING THE UNITED STATES
TRUSTEE TO APPOINT AN EQUITY COMMITTEE IN THESE CHAPTER 11 CASES

          Upon the motion, dated December 22, 2005, of Appaloosa Management L.P

("Appaloosa") for an order under section 1102 of title 11 of the United States Code, 11 U.S.C. §§

101-1330, as amended (the "Bankruptcy Code"), directing the United States Trustee to appoint a

statutory equity committee in these chapter 11 cases (the "Motion") (Docket No. 1604); and

Appaloosa having originally noticed the Motion for hearing at the omnibus hearing on January 6,

2006; and at the Debtors' request, the parties having agreed to an adjournment of the hearing on

the Motion to the omnibus hearing on February 9, 2006; and at Appaloosa's request, the parties

having agreed to a further adjournment of the hearing on the Motion to the omnibus hearing on

March 9, 2006; and upon the objections to the Motion filed by the United States Trustee (Docket

Nos. 1682 and 2636), the Debtors (Docket No. 2629), the Official Committee of Unsecured

Creditors (Docket No. 2634), and the Prepetition Agent for the prepetition lenders (Docket No.

1693), as well as the Response of General Motors Corporation (Docket No. 1712); and the

parties having conducted discovery in respect of the Motion pursuant to "meet and confer"

agreements reached between Appaloosa and the Debtors in accordance with the Case

Management Order (Docket No. 245); and Appaloosa having filed a separate motion seeking

authority to file under seal certain motions to compel productions of documents and exhibits

thereto and to compel depositions and exhibits thereto (the "Discovery Motion") (Docket No.

2566); and the parties having resolved their disputes with respect to the production of documents

and exhibits thereto without further order of this Court; and the Court having resolved the parties'

disputes with respect to the production of deponent witnesses at an informal discovery

conference convened by the Court on March 2, 2006; and the parties having completed all

written discovery (except for the exchange of expert reports and documents relied upon by such

experts); and Appaloosa having requested a further adjournment of the hearing on the Motion

pursuant to a letter request dated March 6, 2006; and the Debtors having disputed Appaloosa's

asserted factual and legal basis for an adjournment but having agreed in a letter response dated

March 7, 2006, to a further adjournment subject to the entry of an order setting forth the

following pretrial schedule; and no other objector having notified the Court of its opposition to

either a further adjournment or entry of this Order; and this Court having determined that a

further adjournment of the contested hearing on the Motion subject to the terms of this Order is

appropriate and in the best interests of the Debtors, their estates, their creditors, stockholders and

other parties-in-interest; and upon the record herein; and after due deliberation thereon; and good

and sufficient cause appearing therefor, it is hereby

 ORDERED THAT:

   1. Appaloosa shall produce its final expert reports and all documents upon

which the experts relied, and the declarations containing the direct testimony of its witnesses, on

or before noon (all times being prevailing Eastern Time) on Friday, March 10, 2006.

        MSW - Draft March 8, 2006 - 12:24 PM

2.      Appaloosa shall be limited to two designated expert witnesses from Eureka Capital Markets, LLC ("Eureka"), Stephen A. Greene and Mark Hyman, and one designated expert witness from Hay Group, Inc. ("Hay"), Adam Reese; provided, however, that Appaloosa shall disclose on or before noon on Friday, March 10, 2006, by reference to the pages of the expert report, who at Eureka (either Mr. Greene or Mr. Hyman, but not both) will give what opinions and on what basis.

3.      The Debtors shall produce their designated Rule 30(b)(6) witness, John Sheehan, for a deposition, limited to seven hours, on Tuesday, March 7, 2006.

4.      If, and to the extent, that Mr. Sheehan is unable fully to answer, on behalf of the Debtors, questions (within the topics specified in the Second Amended Notice of Rule 30(b)(6) Deposition of the Debtors) posed to him, and given that Robert Dellinger, the Debtors' supplemental Rule 30(b)(6) witness is unavailable on March 8 and 9, 2006, and will be out of the country from March 10 through March 18, 2006, the Debtors shall produce Mr. Dellinger, for a deposition limited to three hours, at 9:00 a.m. on Monday, March 20, 2006.

5.      Appaloosa shall produce Mr. Stephen Greene, one of its expert witnesses associated with Eureka, for a deposition limited to four hours at 8:30 a.m. on Monday, March 13, 2006.

6.      Appaloosa shall produce Mr. Mark Hyman, its other expert witness associated with Eureka, for a deposition, limited to seven hours, at 10:00 a.m. on Tuesday, March 14, 2006.

7.      The Debtors shall produce their final expert reports, and all documents upon which their experts relied, and the declarations, if any, containing the rebuttal or responsive testimony of their respective witnesses by noon on Tuesday, March 14, 2006.

3

8. Appaloosa shall produce Mr. Adam Reese, its expert witness associated with Hay for a deposition, limited to three hours, at 9:00 a.m. on Thursday, March 16, 2006.

9. The Debtors shall produce their expert witness, if any, called to rebut or respond to the testimony of Appaloosa's expert witness associated with Hay for a deposition, limited to three hours, at 2:00 p.m. on Thursday, March 16, 2006, if he is available, or, if not, on Wednesday, March 15, 2006 (in which case his expert report and the documents upon which he relied shall be produced no later than noon on Monday, March 13, 2006).

10. The Debtors shall produce their expert witness, if any, called to rebut or respond to the testimony of Appaloosa's expert witness associated with Eureka for a deposition, limited to seven hours, at 9:30 a.m. on Friday, March 17, 2006.

11. The Parties shall produce their supplemental declarations, if any, by 5:00 p.m. on Friday, March 17, 2006.

12. By noon on Saturday, March 18, 2006, the parties shall identify (or the extent not previously produced, produce) to each other all other exhibits, including demonstrative exhibits, they intend to offer or otherwise use at the hearing on the Motion, and the Debtors shall thereafter prepare a joint exhibit binder for use at the hearing on the Motion (which binder shall include all declarations, expert reports, and exhibits identified by the parties).

13. The Debtors shall submit the joint exhibit binder to Chambers by noon on Monday, March 20, 2006, and arrange for service of the binder on Appaloosa and each objector to the Motion so as to be actually received in their New York offices by 5:00 p.m. on Monday, March 20, 2006.

14. The hearing on the Motion shall be held on Tuesday, March 21, 2006, at 10:00 a.m.  All direct testimony shall be presented through expert reports and declarations.

4

Witnesses as to whom expert reports and/or declarations have been submitted shall be made available for cross-examination at the hearing on the Motion.

15.    The Discovery Motion, having been originally resolved by the parties at a "meet and confer" conference and the Court at a chambers conference and Appaloosa having agreed that the Discovery Motion is fully resolved by entry of this Order, shall be annotated as settled and resolved on the March 9, 2006 omnibus hearing agenda.

16.    This Order may be amended, subject to approval of the Court, upon the agreement of the parties or upon motion for good cause shown.

Dated: New York, New York
       March 8, 2006

/s/Robert D. Drain                    
**UNITED STATES BANKRUPTCY JUDGE**

5

MSW - Draft March 8, 2006 - 12:24 PM