EXHIBIT "S"

# WHITE & CASE

**White & Case LLP**
Wachovia Financial Center, Suite 4900
200 South Biscayne Boulevard
Miami, Florida 33131-2352

Tel  + 1 305 371 2700
Fax  + 1 305 358 5744/5766
www.whitecase.com

Direct Dial + (305) 995-5282

March 12, 2006

### VIA EMAIL AND FACSIMILE

John W. Butler Jr., Esq.
Skadden, Arps, Slate, Meagher & Flom LLP
333 West Wacker Drive
Chicago, IL 60606

Re:  Delphi Corporation - Case No. 05-44481

Dear Jack:

Since the commencement of Delphi's chapter 11 case, you have repeatedly and continuously characterized it as a "labor transition" case.  On inquiry, you explained to me that this phrase refers to a case where the sine quo non of the debtor's reorganization is the ability to reduce labor costs and related obligations.  Your proposition would appear to be validated by the following facts: (1) the Debtors' aggregate funded debt and prepetition trade claims as reflected in the Debtors' Schedules are materially less than any reasonable range of enterprise values for Delphi; (2) the Debtors' ongoing labor costs appear to be the largest single variable in assessing their prospective financial performance; and (3) the claims of one of Delphi's largest creditors, Delphi's former parent, GM, appear to be comprised primarily of purported indemnity rights related to its contractual responsibility for certain of Delphi's labor costs.

According to recent news reports, Delphi believes that it is nearing a tri-partite deal with the UAW and GM regarding modifications to certain of the Company's CBAs that would impact the Company's labor costs, including pension and OPEB obligations. Given your representations and the afore-noted facts and circumstances of this case, any agreement regarding the resolution and treatment of the Debtors' pension and OPEB obligations (which the Debtors have characterized— we believe incorrectly—as being as much as $14 Billion in the aggregate), will likely have a material impact on (and, in the extreme, could destroy) old equity's recovery under a plan.

Accordingly, we need to be brought into the loop immediately regarding the substance of the Company's discussions so that we can understand and assess where things are and also have the opportunity to provide meaningful, informed input regarding our views on these outcome-determinative matters before a deal is finalized. Please let me know when your team is available to meet with us on these issues.

ALMATY   ANKARA   BANGKOK   BEIJING   BERLIN   BRATISLAVA   BRUSSELS   BUDAPEST   DRESDEN   DÜSSELDORF   FRANKFURT   HAMBURG   HELSINKI
HO CHI MINH CITY   HONG KONG   ISTANBUL   JOHANNESBURG   LONDON   LOS ANGELES   MEXICO CITY   MIAMI   MILAN   MOSCOW   MUMBAI   NEW YORK   PALO ALTO
PARIS   PRAGUE   RIYADH   ROME   SAN FRANCISCO   SÃO PAULO   SHANGHAI   SINGAPORE   STOCKHOLM   TOKYO   WARSAW   WASHINGTON, DC

MIAMI 640759 (2K)

Jack Butler, Esq.

WHITE & CASE

Page 2

As a threshold matter, we believe that before the Debtors enter into any agreement regarding their labor obligations beyond the terms of the existing CBAs, the Debtors must first (1) put forth a business plan that has been fully vetted with the estates' constituencies (including representatives of equity), (2) establish reasonable ranges for Delphi's enterprise value under various possible scenarios that incorporate reasonable input from the estates' constituencies (including representatives of equity), and (3) establish a reasonable framework for the treatment of Delphi's other debt and claims. Indeed, under the circumstances, we believe that it would be inappropriate for Delphi to (a) enter into a long-term CBA and/or to resolve the disputes between GM and the Debtors regarding its liability for (and claims against the Debtors with respect to) employee and retiree obligations, without the protections of a chapter 11 plan process (i.e., entering into an amended long-term CBA or settling with GM is an unlawful sub rosa plan); or (b) link the terms of an amended CBA to a settlement with GM.

Putting aside the foregoing manifest process concerns, unless or until our diligence reveals some appropriate offsetting benefit, the costs arising from the amendment of an existing CBA, either in terms of employee/retiree claims or indemnification claims by GM (which we believe are subject to numerous defenses), should not exceed the cost of performing under such CBA through its current expiry. Furthermore, the Delphi estate should not incur liability for revised labor costs of insolvent subsidiaries – to permit it to do so would be in direct conflict with the duty of Delphi's board to maximize the value of its estate.

Thank you for your attention to these important matters. I look forward to working with you toward an appropriate value-maximizing resolution.

Very truly yours,

Thomas E Lauria/ec

Thomas E Lauria

TEL/rcc

MIAMI 640759 (2X)