EXHIBIT "Y"

127

LORAL SPACE & COMMUNICATIONS LTD.

of two separate committees, one for preferred shareholders and one for common shareholders.

I think, as has been pointed out in oral arguments, these requests need to be looked at separately because they raise different issues, and that's what I'll do. But in sum, I'm going to deny each of the requests for the appointment of a committee for the following reasons: First, as is well established, the court reviews the U.S. Trustee's decision whether to appoint a committee or not to appoint a committee on a de novo basis, although I obviously note that when, as here, the U.S. Trustee has done a thorough analysis of the request in the first instance. I then turn to the statute which states in Section 1102(a), that the court may appoint an additional official committee of equity holders, if necessary, to assure adequate representation of that group.

As Judge Gropper pointed out in his opinion in the Kasper bankruptcy of this year, this statute, by focusing both on whether the appointment is necessary to assure adequate representation, sets a rather high threshold for the movant. Recognizing that threshold, the courts



1     LORAL SPACE & COMMUNICATIONS LTD.
2     likely to accelerate or to impede the
3     reorganization process.
4             The threshold consideration, that is
5     whether there is sufficient equity in the estate to
6     justify the cost and expense of a separate
7     committee is something we've spent considerable
8     time on this morning and this afternoon, although
9     it ultimately there's not an enormous amount of
10    evidence in the record that goes to the value of
11    the debtors and the value of the equity.  I note
12    that as set forth by Judge Cram in the Manville
13    case, the movants have the burden of proof, and it
14    is their burden to put on evidence establishing,
15    among other things, whether there is real equity
16    value here.  And as Judge Lifland pointed out in
17    the Williams Communications case, this didn't mean
18    that the court should conduct a full valuation of
19    the debtor, but rather should determine whether it
20    appears reasonable that there is a substantial
21    likelihood in Judge Lifland's words, of a
22    meaningful distribution under the absolute priority
23    rule, to equity holders.
24            And again, as pointed out by Judge
25    Lifland, citing to the Emens Industry case, this is

131

1       LORAL SPACE & COMMUNICATIONS LTD.
2  shareholders, holding approximately 23 percent,
3  which, if one looks at the liquidation preference
4  and accrued interest in respect of that preference,
5  is a meaningful amount of money, over 50 million
6  dollars. The timing of the appointment of a
7  committee wouldn't be appropriate at this point, in
8  that the debtors, having through their own
9  auspicious in large part, stabilized their business
10 and taken some key decisions in the case, are now
11 focusing on a Chapter 11 plan preceded by a
12 business plan, so that in fact, if it were
13 appropriate, one could, at this point, have a
14 committee that would be focusing on negotiation of
15 a Chapter 11 plan.
16         However, based on my review of the
17 presentation on valuation, I find that as far as
18 the common shareholders are concerned, that
19 negotiation would be largely academic. Based on
20 both the book value of the debtors, from their
21 publically filed SEC reporting, as well as the
22 agreed upon range of trading prices, which were the
23 only evidence of value offered by the movants, the
24 common shareholders are substantially under water
25 from anywhere between 230 million dollars on a high

132

1        LORAL SPACE & COMMUNICATIONS LTD.

2   end, to 620 or more on a low end, 620 million or

3   more on a low end.  As I noted at the hearing in

4   September, both book valuations and trading

5   valuations, that is security trading valuations

6   have their weak elements.  And it's been my

7   experience that book valuation in a company like

8   this is has often been overstated, whereas we all

9   recognize that the trading valuations are far from

10  accurate.  However, when either method leaves to

11  such a substantial negative equity, I think it is

12  clear to me that the debtors are insolvent as far

13  as the common shareholders are concerned.

14              Colliers states that it is clear

15  that a committee should not be appointed if the

16  debtor is hopelessly insolvent, and it is clear

17  that it should be appointed if the debtor is

18  clearly solvent, obviously leaving a middle ground

19  there for courts to deal with in their discretion.

20              I find here that the gap is simply

21  too large to justify the expense and disruption

22  that an official committee of common shareholders

23  would pose, given that the only trade off, I think,

24  based on what's before me, the evidence before me,

25  would be is di minimis recovery at this point, by

BENJAMIN REPORTING   (212)374-1138   DOYLE REPORTING   (212)867-8220
A VERITEXT COMPANY

133

1        LORAL SPACE & COMMUNICATIONS LTD.
2    shareholders.
3             It's important to note that the only
4    serious request for a committee here is based on
5    the need to negotiate a plan.  There's no
6    meaningful evidence, or even contention, that
7    management is somehow laying down on its job in
8    running the company properly and obtaining the most
9    value possible for the debtors.  In fact, the
10   reason for the renewal of the motion in its
11   prosecution today, is just the contrary, that the
12   company, its management has done an excellent job
13   in increasing value.  So, I'm really focusing on
14   the one function of a committee, which is
15   negotiating a plan.  And again, based on today's
16   record, I believe that those negotiations at this
17   point would result in only a di minimis recovery
18   for common shareholders; perhaps not in Judge
19   Lifland's words "a gift," although, perhaps close
20   to that.
21            I find that management is quite
22   capable of negotiating that type of recovery for
23   the shareholders, and I expect motivated to do so.
24   I also find that the -- if I haven't made it clear
25   already, the concerns that were raised in passing