EXHIBIT "DD"

15

1      WILLIAMS COMMUNICATIONS GROUP, INC.
2  any number of parties. But the information that
3  was in the Wall Street Journal did not come from
4  the company. It is very unfortunate that
5  incomplete and premature stories are leaked. So,
6  Your Honor, while we are very hopeful that we are
7  close, more importantly, we are very close to
8  filing a Disclosure Statement that would have a
9  detailed valuation, and that might bear some
10 relevance to Your Honor's consideration of this
11 morning's motion.
12         As I recall, where we left off on
13 June 27 was the following inquiry: One, what was
14 the standard that the Equity Commitee had to meet?
15 The standard being that they had to show some
16 reasonable likelihood of solvency or recovery.
17         Your Honor, if I can share with you
18 what the capital structure looks like and kind of
19 zone in on the numbers that might be relevant
20 here. Williams Communications Group has bond
21 debts that is publicly outstanding in the
22 principal amount of approximately $2.5 billion.
23 It also owes substantial sums to the parent
24 company, which alleges, the former parent company,
25 which also claims in excess of $2.3 billion. At

```
 1            WILLIAMS COMMUNICATIONS GROUP, INC.
 2   the Debtor level we have also guaranteed the
 3   claims owed to the banks that are the secured
 4   lenders to our operations.  The amount currently
 5   outstanding to the banks is $725 million.  There
 6   are additional obligations by the operating
 7   company, Your Honor, for capital leases and funded
 8   debts of approximately $250 million.  So where we
 9   left matters, I think to focus on the value
10   analysis at our last hearing, even if assuming
11   arguendo that The Williams Companies' claims of
12   some $2.3 billion plus were not to be allowed in
13   this proceeding, there is still, Your Honor,
14   claims to the bondholders exceeding $2.5 billion
15   accruing interest, I am sure, in the context of an
16   equity recovery beyond that, and obviously the
17   debt at the operating company.
18            If Your Honor would find it helpful,
19   although I do believe the burden is on the movant,
20   we have asked Tim Coleman, the managing director
21   of Blackstone, who is acting as the financial
22   advisor to the Debtor, to join us this morning.
23   Blackstone has been working on the valuation
24   sections of our Disclosure Statement and that
25   analysis, we would hope, in a matter of days until
```

1        WILLIAMS COMMUNICATIONS GROUP, INC.

2   it's filed.  But Mr. Coleman is here, Your Honor,

3   and he would be prepared to share with the Court,

4   if he were asked to testify.  If I may proffer his

5   testimony, Your Honor?

6               THE COURT:  You may, subject to

7   comment.

8               MS. BALL:  He would indicate, Your

9   Honor, that they have been studying the enterprise

10  valuation of Williams Communications in connection

11  with preparing the valuation sections of the

12  Disclosure Statement and the liquidation analysis.

13              Mr. Coleman would further testify

14  that the valuation of the enterprise on a going

15  concern basis, in the professional judgment of

16  Blackstone, has the range of 1.225 billion to

17  1.575 billion.  That alternatively, Your Honor, if

18  we are not successful and the company is forced

19  into liquidation by reason of failing to confirm a

20  Plan in Chapter 11, there would be no recovery to

21  the holding company Debtor levels.

22              Your Honor, Mr. Coleman is here.  As

23  I said, I don't believe it's our burden, but he is

24  prepared to share that aspect of his analysis,

25  which will shortly be public as we file the

26

| | |
|---|---|
| 1 | WILLIAMS COMMUNICATIONS GROUP, INC. |
| 2 | months, if not longer, will damage this business. |
| 3 | But I think we can get beyond the speculation and |
| 4 | get to the specifics. As the Court is aware, |
| 5 | there is a pre-bankruptcy agreement with the |
| 6 | company's banks that permits this case to proceed |
| 7 | at the holding company level as a financial |
| 8 | restructuring without the entanglement of the |
| 9 | operating business in Chapter 11. That agreement |
| 10 | has an October 15th deadline, requires a |
| 11 | transaction to be completed by October 15 or the |
| 12 | banks are then free to exercise their remedy at |
| 13 | the operating company level. Should that happen, |
| 14 | and we are on a tight schedule as it is, but |
| 15 | should that happen, the likely result will be a |
| 16 | bankruptcy of the operating company. And I don't |
| 17 | think it takes speculation for the Court to |
| 18 | recognize that the increased complexity of having |
| 19 | the operation in bankruptcy dealing with the |
| 20 | issues of customers and vendors and employees is |
| 21 | certainly that enterprise value. So the cost of a |
| 22 | separate committee in this case is sure to be |
| 23 | substantial. |
| 24 | On the other side of the formula, |
| 25 | adequacy of representation. We heard a lot about |