**HEARING DATE: April 7, 2006 at 10:00 a.m.**
**RESPONSE DEADLINE: April 4, 2006 at 4:00 p.m.**

LATHAM & WATKINS LLP
885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS-4321)
Mark A. Broude (MB-1902)
Email: robert.rosenberg@lw.com
 mitchell.seider@lw.com
 mark.broude@lw.com

Attorneys for the Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, et al., | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | |
| | ) | Jointly Administered |
| | ) | |

**NOTICE OF MOTION OF THE OFFICIAL COMMITTEE OF
UNSECURED CREDITORS FOR AN ORDER COMPELLING THE PRODUCTION OF
DOCUMENTS BY GENERAL MOTORS CORPORATION PURSUANT TO RULE 2004
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

PLEASE TAKE NOTICE that a hearing (the "Hearing") on the Motion of the Official

Committee of Unsecured Creditors for an Order Compelling the Production of the Documents by

General Motors Corporation Pursuant to Rule 2004 of the Federal Rules of Bankruptcy

Procedure (the "Motion"), filed by the Official Committee of Unsecured Creditors (the

"Committee") appointed in the chapter 11 cases of Delphi Corporation, et al. (collectively, the

"Debtors"), will be held before the Honorable Robert D. Drain on April 7, 2006 at 10:00 a.m.

(Eastern Time), or as soon thereafter as counsel may be heard, in the United States Bankruptcy Court for the Southern District of New York, Alexander Hamilton Customs House, One Bowling Green, New York, 10004-1408 (the "Bankruptcy Court").

PLEASE TAKE FURTHER NOTICE that responses or objections to the Motion, if any, must comply with the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court, must be set forth in writing describing the basis therefore, and must be filed with the Bankruptcy Court electronically in accordance with General Order M-242, as amended by General Order M-269, by registered users of the Court's electronic case filing system (the Users' Manual for the Electronic Case Filing System can be found at www.nysb.uscourts.gov, the official website for the Bankruptcy Court) and, by all other parties in interest, on a 3-1/2 inch computer diskette, preferably in Portable Document Format (PDF), or in any other Windows-based word processing format (with a hard copy delivered directly to Chambers). Any such responses or objections must be served in accordance with the Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007 and 9014 Establishing (I) Omnibus Hearing Dates, (II) Certain Notice, Case Management, and Administrative Procedures, and (III) Scheduling an Initial Case Conference in Accordance with Local Bankr. R. 1007-2(e) entered by the Court on October 14, 2005, as amended by the Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered by the Court on March 20, 2006, upon each of the following: (i) counsel to the Committee, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022, Attn.: Robert J. Rosenberg; (ii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, 21st Floor, New York, New York 10004, Attn.: Alicia M. Leonard; (iii)

counsel to the Debtors, Skadden, Arps, Slate & Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606, Attn.: John Wm. Butler Jr., (iv) special counsel to the Debtors, Shearman & Sterling LLP, 599 Lexington Avenue, New York, New York 10022, Attn.: Douglas Bartner, (v) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, NY 10017, Attn.: Marissa Wesley, (vi) counsel for the agent under the Debtors' proposed postpetition credit facility, Davis Polk & Wardell, 450 Lexington Avenue, New York, NY 10017, Attn.: Marlane Melican, and (vii) counsel for General Motors Corporation, Weil, Gotshal & Manages, LLP, 767 Fifth Avenue, New York, NY 10153. Attn: Jeffrey L. Tanenbaum, in each case so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on April 4, 2006 (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made in writing and timely filed and received by the Objection Deadline will be considered by the Bankruptcy Court during the Hearing. If no objections to the Motion are timely filed and served in accordance with the procedures set forth herein, the Bankruptcy Court may enter a final order granting the Motion without further notice.

Dated: March 24, 2006
New York, New York

**LATHAM & WATKINS LLP**

By: /s/ Robert J. Rosenberg
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS-4321)
Mark A. Broude (MB-1902)
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200

Attorneys for the Official Committee of
Unsecured Creditors

**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022-4802
Telephone: (212) 906-1200
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS-4321)
Mark A. Broude (MB-1902)
Email: robert.rosenberg@lw.com
        mitchell.seider@lw.com
        mark.broude@lw.com

Counsel for The Official Committee of Unsecured Creditors

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, et al., | ) | Case No. 05-44481 (RDD) |
| | ) | |
| Debtors. | ) | |
| | ) | Jointly Administered |
| | ) | |

**MOTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR AN ORDER COMPELLING THE PRODUCTION OF DOCUMENTS BY
GENERAL MOTORS CORPORATION PURSUANT TO RULE 2004
OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE**

The Official Committee of Unsecured Creditors (the "Committee") appointed in the chapter 11 cases of Delphi Corporation ("Delphi") and certain of its affiliates (collectively, the "Debtors"), by and through its undersigned counsel, hereby respectfully moves this Court for entry of an order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") compelling the production of documents by General Motors Corporation ("GM"). In support of this motion (the "Motion"), the Committee respectfully states as follows:

## JURISDICTION

1. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. The statutory predicate for the relief sought herein is Rule 2004 of the Bankruptcy Rules.

## BACKGROUND

3. On October 8, 2005 (the "Petition Date"), thirty-nine of the Debtors filed with this Court voluntary petitions for relief under chapter 11 of Title 11 of the United States Code, as amended (the "Bankruptcy Code"). On October 14, 2005, the three remaining Debtors similarly filed voluntary petitions.

4. The Committee was appointed nine days after the Petition Date, on October 17, 2005.[1] Shortly thereafter, the Committee selected Latham & Watkins LLP as its counsel, Mesirow Financial Consulting LLC as its financial advisor and Jefferies & Company, Inc. as its investment banker.

5. By this Motion, the Committee seeks documents related to the "property [and] to the liabilities" of the Debtors. Fed. R. Bank. P. 2004(b). In particular, the Committee, having exhausted its efforts to obtain information from GM on a cooperative basis, seeks documents from GM to enable the Committee to understand the claims that GM has asserted and may assert against the Debtors, as well as the claims that the Debtors have against GM. Given that a

---

[1] The following members originally were appointed to the Committee: (a) Capital Research and Management Company; (b) Electronic Data Systems Corp.; (c) Flextronics International Asia-Pacific, Ltd.; (d) Freescale Semiconductor, Inc.; (e) General Electric Company; (f) IUE-CWA and (g) Wilmington Trust Company, as Indenture Trustee. Flextronics International Asia-Pacific, Ltd., has since resigned from the Committee, and Tyco Electronics Corporation has since been appointed to the Committee. The Pension Benefit Guaranty Corporation and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America have been added as *ex officio* members of the Committee.

2

resolution of the pending labor negotiations among the Debtors, GM and the UAW may well involve some resolution of the claims by and against GM, it is of critical importance that these issues be addressed now. While the Debtors have been cooperative in keeping the Committee generally apprised, they have been constrained by limitations put upon them by GM.

6. Even a cursory examination of the record in these cases demonstrates how intertwined GM and the Debtors are, and how the claims that each may have against the other are integral to the outcome of these cases. As has been set forth in great detail in the various pleadings before this Court, the Debtors were a division of, and later a wholly-owned subsidiary of, GM prior to their 1999 spin-off (the "Spin-Off"). As part of this Spin-Off, GM and Delphi entered into a series of complex agreements, including the Master Separation Agreement, the U.S. Employee Matters Agreement, various guarantee and indemnity agreements, continuation and supplier agreements, and others. These agreements, or at least portions of them, are described in various pleadings filed in these cases, including but not limited to GM's Motion for Order Directing Appointment of General Motors Corporation to Statutory Creditors' Committee (the "GM Motion"). Notwithstanding the Spin-Off, as a result of these agreements, among other things, GM continued, and continues, to have broad, deep and complex relationships with all aspects of the Debtors' businesses.

7. For example, these relationships have led GM to assert that it is the largest creditor in these cases. As a part of the Spin-Off, GM guaranteed certain of the Debtors' obligations to their labor unions; GM has asserted that it has contractual and common law rights of indemnification against the Debtors for, among other things, any payments it is required to make under any of these guarantees. Furthermore, in the GM Motion, GM asserted that it holds various other claims against the Debtors, including but not limited to $100 million in "Asserted

3

Warranty Claims," $7.5 million in "Overpricing Claims," unknown "Additional Warranty Claims," $1.228 billion in "OPEB Flowback Claims," a $64 million "Annual OPEB Flowback Payment" due June 10, 2006, with an inference of additional such payments due in future, potential "Rejection Damage Claims" based on potential future contract rejections, various "Other Claims" (consisting of "various liquidated, unliquidated, and/or contingent prepetition claims against the Debtors' estates including, without limitation, unpaid obligations under certain legacy agreements, environmental and asbestos related claims, and product liability claims"), and "Setoff Claims" (the "GM Asserted Claims"). GM asserts that as a result of these claims, it is the single largest unsecured creditor of the Debtors.

8.  However, although GM claims it is the largest unsecured creditor in these cases, the Committee needs to determine whether GM is actually an unsecured creditor at all. Each claim identified by GM in the GM Motion is either contingent or unliquidated (and may be disallowed in its entirety), subject to subordination or recharacterization, or otherwise subject to challenge on its merits. In addition, the manner in which the Spin-Off was effected, as well as the continuing post-Spin-Off relationships between the Debtors and GM, may give rise to claims that the Debtors can assert against GM, which could both affect the amount and priority of any claims asserted by GM as well as provide the Debtors with a substantial affirmative recovery from GM. For example, and without limitation, the Debtors may be able to avoid cash payments to or for the benefit of GM under multiple agreements entered into by Delphi for GM's benefit, including agreements under which Delphi (i) assumed and paid since the Spin-Off massive GM wage and legacy liabilities, and (ii) apparently promised, in 1999, to match the pension and OPEB benefits offered by GM to the UAW in 2003. Indeed, Delphi's entire labor cost structure, which Delphi has stated repeatedly is the principal reason for its chapter 11 filing, was inherited

4

from GM in the Spin-Off. Moreover, GM, having single-handedly created this crisis, refused to resolve it with the debtors, insisting instead during prepetition negotiations that "other parties," including unsecured creditors, bear the burden of its handiwork through the chapter 11 process. Delphi was left with no choice but to file these proceedings. See Transcript of the March 21, 2006 Hearing on Appaloosa Management, LP's motion to appoint an equity committee, at 216-17.

9. As a result of all of this (and more), GM is a critical participant in these cases. GM's participation in and contribution to (consensual or otherwise) the negotiation and resolution of union and legacy liability issues, claim reconciliations, future business plans, and other vital aspects of these cases will be critical to the ultimate returns to the Debtors' creditors, and to the ultimate resolution of these cases. In fact, the sheer size and nature of the purported claims that GM asserts against the Debtors make the resolution of those claims alone a critical aspect of the ultimate outcome of these cases.

10. With this in mind, the Committee has repeatedly sought to engage GM in active discussions, and has worked to gather information from and about GM. However, those efforts have proven fruitless, as GM has refused to provide any information. Most critical is GM's absolute refusal even to discuss with the Committee, much less voluntarily provide information regarding, the ongoing negotiation among GM, the Debtors and the UAW. As the Debtors have repeatedly stressed to this Court, the single most critical aspect of these cases is the negotiation of a consensual resolution to the Debtors' "labor issues." To date, that negotiation has been between and among the Debtors, the various union constituencies, and GM. As the statutory representative of all of the Debtor's unsecured creditors, the Committee has repeatedly requested of the parties, including GM, that the Committee be invited to participate in (or at least observe)

5

the negotiation of labor issues. GM in particular has declined these requests without explanation, even going so far as to refuse to let the Committee see any term sheets that it may have given to the Debtors or the UAW.

11.     Indeed, it is crucial that the Committee obtain discovery immediately. This is not a situation where the Committee can sit back and wait for GM to file a claim, and then seek discovery in the context of a claim objection. Rather, to evaluate any ultimate agreement that GM, the Debtors, and the UAW may present to the Committee, the Committee must first evaluate the validity and priority of any claim against the estate that GM may assert, as well as the validity of any cause of action that the Debtors may have against GM.

12.     The Debtors have affirmatively sought and obtained from this Court an order that requires them to file any motion under sections 1113 and 1114 of the Bankruptcy Code by March 31, 2006, with a hearing on that motion scheduled for May 8, 2006. This means that if there is to be an agreement among the Debtors, the Debtors' unions and GM, it is likely to be reached in advance of May 8. Indeed, as the Court is aware, a partial settlement has been reached and a motion for approval is pending. What is clear is that the negotiations are moving rapidly and that various elements of an agreement, if not an entire agreement, are likely to come together quickly. The Committee, if it is to fulfill its fiduciary duties, cannot be left first seeking discovery after a deal has been announced and a motion seeking its approval has been filed. The issues are simply too complicated and the implications too all-encompassing for the Committee to have only the two weeks available to it under the case management order to seek discovery, review the reams of information that GM at that point would finally provide, and to evaluate and respond to such a motion. For this reason, the Committee requests that GM be compelled to produce the documents set forth on Exhibit A hereto within twenty-five (25) days of the entry of the

proposed order approving this Motion (the "Proposed Order"), and reserves its rights to seek further discovery from GM including, but not limited to, supplemental document requests, interrogatories, requests for admissions and depositions.

13.     It is likely that as part of the on-going negotiation GM will seek to use the largest possible purported claim against the Debtors as the quid pro quo for any contribution. The Committee is the party with the greatest incentive to reduce the GM claim. Thus, the possibility of an imminent labor deal means that the Committee must be able to analyze immediately all of GM's relationships with the Debtors in order to be able adequately to reach a position on GM's claims against Delphi and Delphi's claims against GM.

**RELIEF REQUESTED**

14.     By this Motion, the Committee seeks entry of the Proposed Order compelling the production by GM of the documents set forth on Exhibit A hereto within twenty-five (25) days of the entry of the Proposed Order, without prejudice to the Committee's rights to seek further and other forms of discovery from GM in these cases. Without limitation, the Committee seeks documents from GM related to and in connection with the Debtors' labor, pension, and OPEB obligations, the Spin-Off, the on-going business relationships between GM and the Debtors, and the various claims and potential claims asserted by GM in these cases. The specific documents sought by the Committee are set forth in the document requests attached hereto as Exhibit A, which is incorporated herein by reference.

15.     The Committee has scheduled this Motion for hearing at the April 7, 2006 regularly-scheduled omnibus hearing in these cases (the "April Hearing") in compliance with the Supplemental Case Management Order. Pursuant to the terms of the Supplemental Case Management Order, the Committee has consulted with counsel to the Debtors regarding the

7

relief sought in this Motion as well as the timing of its filing. The Committee has been informed that the Debtors do not object to this Motion being heard at the April Hearing in accordance with paragraph 11(a) of the Supplemental Case Management Order. Because this Motion is filed on less than 20 days' notice, parties in interest will have until April 4, 2006 to file an objection.

**BASIS FOR RELIEF**

16.     Bankruptcy Rule 2004(b) provides that, upon the motion of any party in interest, this Court may order the examination of any person relative to (a) the acts, conduct, property, liabilities or financial condition of the Debtors, (b) any matter that may affect the administration of the Debtors' estates, (c) the operation of the Debtors' businesses and the desirability of its continuance, (d) the source of money or property acquired or to be acquired for the purpose of consummating a plan of reorganization and the consideration given or offered therefor, and (e) any other matter relevant to the case or to the formulation of a plan of reorganization. See Fed. R. Bank. P. 2004.

17.     "The purpose of a rule 2004 examination is to allow the court to gain a clear picture of the condition and whereabouts of the bankrupt's estate." Keene Corporation v. Johns-Manville Corporation, et al. (In re Johns-Manville Corporation, et al.), 42 B.R. 362, 364 (S.D.N.Y. 1984) (citing Cameron v. United States, 231 U.S. 710 (1914)). The inquiry may "cut a broad swath through the Debtor's affairs, those associated with him, and those who might have had business dealing with him." Id. (citing In re Mantoleskey, 14 B.R. 973, 976 (Bankr. D. Mass 1981)). The Second Circuit Court of Appeals has explained that "the scope of an examination authorized by Rule 2004 is exceptionally broad." Martin v. Schaap Moving Systems, Inc., 1998 U.S. App. LEXIS 15255 (2d. Cir. 1998) ("the very purpose of a Rule 2004 motion is to allow broad inquiry into the nature of the estate"); see also In re Enron Corp., 281 B.R. 836, 840

8

(Bankr. .S.D.N.Y. 2002) (absent pending adversary proceeding, Rule 2004 examinations are appropriate to determine the "nature and extent of the bankruptcy estate").

18.    In this case, the production by GM of the requested documents is clearly within the parameters of Bankruptcy Rule 2004.  It is clear that, among other things, the labor negotiations, the Debtors' current and future business relationships with GM, and the various claims and potential claims by and against GM in these cases are among the most critical aspects of the Debtors' reorganization efforts.  The outcome of these negotiations, issues and claims will undoubtedly have a substantial impact on (and may in fact be the critical driver of) the potential returns to the Debtors' unsecured creditors.  As described above, the documents that the Committee seeks are critical to an analysis of the claims against and assets of the Debtors – claims asserted by GM and claims that the Debtors have against GM.  Understanding these issues fully is integral to a proper evaluation of any agreement that might be reached in the labor negotiations, and a determination of whether that agreement is truly in the best interests of the Debtors' unsecured creditors.

19.    Nevertheless, despite repeated requests, GM has refused to provide any documents or answer any of the questions that are fundamental to these issues.  The requested documents are specific, identifiable, and clearly within the scope of a request pursuant to Bankruptcy Rule 2004, and are critical to the Committee's conduct of its duties in these cases.

## WAIVER OF MEMORANDUM OF LAW

20.    In accordance with Local Bankruptcy Rule 9013-1(b) for the Southern District of New York, no separate memorandum of law is necessary as all authorities relied on in support of this Motion are set forth herein.

## NOTICE

21. Notice of this Motion has been provided in accordance with this Court's Case Management Order, as amended by this Court's Supplemental Case Management Order. In addition, the Committee has complied with the Supplemental Case Management Order with respect to the filing of this Motion and the need for expedited relief. In light of the nature of the relief requested, the Committee submits that no other or further notice is necessary. No previous motion for the relief sought herein has been made to this or any other Court.

## CONCLUSION

**WHEREFORE,** the Committee respectfully requests that this Court (a) enter the Proposed Order compelling the production of documents set forth on Exhibit A hereto within twenty-five (25) days of the entry of the Proposed Order, without prejudice to the Committee's rights to seek further and other forms of discovery from GM in these cases, and (b) grant such other and further relief as this Court deems just and proper under the circumstances.

Dated: March 24, 2006
New York, New York

**LATHAM & WATKINS LLP**

By: /s/ Robert J. Rosenberg
Robert J. Rosenberg (RR-9585)
Mitchell A. Seider (MS 4321)
Mark A. Broude (MB-1902)
885 Third Avenue, Suite 1000
New York, New York 10022
Telephone: (212) 906-1200

Attorneys for the Official Committee
of Unsecured Creditors

NY\1122146v.8

10