**Hearing Date and Time: April 7, 2006, 10:00 a.m.**
**Objection Deadline: April 4, 2006, 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
David E. Springer (DS 9331)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                             :
         In re                      :    Chapter 11
                             :
DELPHI CORPORATION, et al.,      :    Case No. 05-44481 (RDD)
                             :
                             :    (Jointly Administered)
          Debtors.           :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR APPROVAL OF JOINT INTEREST AGREEMENT BETWEEN
DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS, IMPLEMENTATION OF
PROTECTIVE ORDER, AND APPROVAL OF
PROCEDURES TO PROTECT INFORMATION IN FEE STATEMENTS

("JOINT INTEREST AGREEMENT MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order, substantially in the form attached hereto as Exhibit A, (a) approving the form of the Joint Interest Agreement with the Official Committee of Unsecured Creditors, substantially in the form attached to the proposed order as Exhibit 1 (the "Joint Interest Agreement"), (b) implementing a protective order with respect to information and documents produced pursuant to the Joint Interest Agreement, and (c) approving procedures, attached to the proposed order as Exhibit 2 (the "Fee Procedures"), to protect confidential and privileged information in fee statements and fee applications of professionals retained in these cases and a protective order with respect to the same. In support of the Motion, the Debtors respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") also sought reorganization relief. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtors' chapter 11 cases (Dockets Nos. 28 and 404).

2

2.      On October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner has been appointed in the Debtors' cases.

3.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are sections 105, 107, and 1103 of the Bankruptcy Code and rules 7026 and 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

5.      As of the Initial Filing Date, Delphi had global 2004 revenues of approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1 billion.[1] At the time of filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.      Delphi has become a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and the Company (as defined below) is arguably the single largest global supplier of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company's technologies and products are present in more than 75 million vehicles on the road worldwide.  The Company supplies products to nearly every major global automotive

---

[1]      The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

original equipment manufacturer with 2004 sales to its former parent, General Motors

Corporation ("GM"), equaling approximately $15.4 billion and sales to each of Ford Motor

Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and

Volkswagen Group exceeding $850 million.

       7.    As part of its growth strategy, Delphi has established an expansive global

presence with a network of manufacturing sites, technical centers, sales offices, and joint

ventures located in every major region of the world.  As of the Initial Filing Date, the Debtors

employed approximately 180,000 employees.  The Debtors' 50,600 U.S. employees work in

approximately 44 manufacturing sites, 13 technical centers, and in Delphi's Troy, Michigan

headquarters.  As of the Initial Filing Date, the Debtors employed approximately 34,750 hourly

employees in the United States, 96% of whom are union-represented.  Outside the United States,

the Company's foreign entities employed more than 134,000 people on the Initial Filing Date,

supporting 120 manufacturing sites and 20 technical centers in nearly 40 countries around the

globe.

       8.    Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through

various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these

divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates

(collectively, the "Company") in accordance with the terms of a Master Separation Agreement

between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution

from a North American-based, captive automotive supplier to a global supplier of components,

integrated systems, and modules for a wide range of customers and applications.  Although GM

is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.      Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base.  The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base. The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

C.    Events Leading To The Chapter 11 Filing

10.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net operating loss of $482 million on $28.6 billion in net sales. [2]  Reflective of a downturn in the marketplace, Delphi's financial condition deteriorated further in the first six months of 2005, with net operating losses of $608 million for the first six months of calendar year 2005 on six-month net sales of $13.9 billion, approximately $1 billion less than the same time period a year earlier.

---

[2]    Reported net losses in calendar year 2004 were $4.8 billion, reflecting a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.

11.    The Debtors believe that the Company's financial performance has deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

12.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward looking revenue requirements.  Because discussions with its major unions and GM were not progressing sufficiently, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

13.    Through the reorganization process, the Debtors intend to achieve competitiveness for Delphi's core U.S. operations by modifying or eliminating non-competitive legacy liabilities and burdensome costs and restrictions under current labor agreements and by realigning Delphi's global product portfolio and manufacturing footprint to preserve the Company's core businesses.  This will require negotiation with key stakeholders over their respective contributions to the restructuring plan or, absent consensual participation, the utilization of the chapter 11 process to achieve the necessary cost savings and operational effectiveness.  The Debtors believe that a substantial segment of Delphi's U.S. business operations must be divested, consolidated, or wound-down during these cases.

6

14. Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives. In the meantime, Delphi will marshal all of its resources to continue to deliver value and high-quality products to its customers globally. Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

D.    Overview Of Investigatory Matters

15. Prior to the Initial Filing Date, certain events occurred which prompted informal and formal investigations by the Company and third parties. The investigations include, but are not limited to (a) the internal review conducted by the Company's Audit Committee, (b) the formal ongoing investigations by several governmental agencies, (c) the Company's restatement of earnings for fiscal years 2001-03, (d) the subject matter related to the commencement of certain class actions, including, without limitation, actions brought under ERISA (as defined below) and various securities actions, and (e) the review by a special committee of the Company's Board of Directors of certain shareholder derivative demands and related actions (collectively, the "Investigations").

16. The Company is the subject of an ongoing investigation by the Securities and Exchange Commission ("SEC") and other federal authorities involving its accounting for and the adequacy of disclosures for a number of transactions dating from the Company's spin-off from GM. Delphi is fully cooperating with the SEC's ongoing investigation and requests for information as well as the related investigation being conducted by the Department of Justice. The Company has entered into an agreement with the SEC that currently suspends the running of the applicable statute of limitations until April 6, 2006, which is likely to be further extended.

Until these investigations are complete, Delphi is not able to predict the effect, if any, that these investigations will have on its business and financial condition, results of operations, and cash flows.  The SEC investigation and the related investigation by the Department of Justice were not stayed as a result of the Debtors' commencement of their chapter 11 cases.[3]

17.    Delphi completed a financial restatement in June 2005, the effects of which reduced retained earnings as of December 31, 2001 by $265 million, reduced 2002 net income by $24 million, and reduced 2003 net loss by $46 million.  The nature of the restatement adjustments have been described on Form 8-K filings with the SEC.  In conjunction with the restatement, the audit committee of the Company's Board of Directors conducted and concluded an internal investigation of certain accounting transactions over the previous five years.  The Company is continuing to cooperate fully with the government's investigations in these matters.  Delphi has made and will continue to make improvements to its policies and procedures as well as to the staffing of positions which play a significant role in internal controls to address these matters as more fully described in SEC filings.

18.    As referenced above, several class action lawsuits have been commenced against Delphi, Delphi Trust I, Delphi Trust II, current and former directors, certain current and former officers, General Motors Investment Management Corporation (the named fiduciary for investment purposes and investment manager for Delphi's employee benefit plans), and certain current and former employees of Delphi or its subsidiaries, as a result of the Company's announced financial restatement.  These lawsuits fall into three categories:  (a) lawsuits brought under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"),

---

[3]    On January 27, 2006, certain underwriters to the Debtors' securities initiated an adversary proceeding seeking to extend the automatic stay and preliminarily and permanently enjoin securities litigation through the pendency of the Debtors' chapter 11 cases (Adv. Pro. Case No. 06-01188).  Following objections by both the Debtors (Docket No. 15) and the Creditors' Committee (Docket No. 13), the underwriters' withdrew this adversary proceeding.

purportedly on behalf of participants in certain of the Company's and its subsidiaries' defined

contribution employee benefit pension plans which invested in Delphi common stock (the

"ERISA Actions"), (b) lawsuits alleging that the Company and certain of its current and former

directors and officers made materially false and misleading statements in violation of federal

securities laws (the "Securities Actions"), and (c) shareholder derivative actions (the

"Shareholder Derivative Actions").[4]  The Board of Directors of the Company has appointed a

special committee to investigate certain shareholder derivative demands.

Relief Requested

19.     The Debtors have determined that they will share material confidential

information with the Creditors' Committee and consult with the Creditors' Committee regarding

the Investigations.  The Debtors believe that it is in the best interests of their estates to provide

such confidential information related to the Investigations, whether written or oral (the

"Information"), to the designees of the Creditors' Committee (the "Reviewing Parties") to keep

them adequately apprized of the ongoing progress of the Investigations, without losing any

privilege or protection attaching to any produced information through the disclosure thereof.

20.     The Debtors believe that they share common interests with the Creditors'

Committee in this regard, and intend through the Joint Interest Agreement that any and all

sharing of information pursuant to the Joint Interest Agreement be protected pursuant to the

"common interest" or "joint defense" doctrine, to the fullest extent such protection is available

under applicable case law subject to the provisions of the Joint Interest Agreement.

---

[4]     On or about December 12, 2005, the Judicial Panel on Multidistrict Litigation transferred and consolidated into
one action the ERISA Actions, the Securities Actions, and the federal Shareholder Derivative Actions.  The
litigation was transferred to Judge Gerald R. Rosen in the United States District Court for the Eastern District of
Michigan and consolidated under the title In re Delphi Securities, Derivative and ERISA Litigation (MDL No.
1725).

21.    By this Motion and in furtherance of the Company's continuing internal review, the Debtors therefore seek: (a) approval of the proposed form of Joint Interest Agreement with the Creditors' Committee, substantially in the form attached to the proposed order as Exhibit 1, (b) entry of a protective order with respect to information and documents produced pursuant to the Joint Interest Agreement, and (c) approval of procedures to protect confidential and privileged information in fee statements and fee applications of professionals retained in these cases and entry of a protective order with respect to the same.

22.    The Debtors have scheduled this Motion for hearing at the April 7, 2006 regularly-scheduled omnibus hearing in these cases (the "April Hearing") in compliance with the provisions of the Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures (the "Supplemental Case Management Order"), entered March 20, 2006.  Pursuant to the terms of the Supplemental Case Management Order, the Debtors have consulted closely over the last several weeks with counsel to the Creditors' Committee regarding the relief sought in this Motion as well as the timing of its filing.  The Debtors have been informed that the Creditors' Committee does not object to this Motion being heard at the April Hearing in accordance with paragraph 11(a) of the Supplemental Case Management Order.  Because this Motion is being filed on less than 20 days' notice, parties-in-interest will have until April 4, 2006 to file an objection.

Basis For Relief

A.    Joint Interest Agreement

23.    As indicated above, the Debtors believe that it is in the best interests of their estates to provide to the Creditors' Committee selected confidential information related to the Investigations.  In furtherance of this belief, the Debtors propose that any information that

they may choose to provide would be subject to the terms and conditions relating to information-sharing and confidentiality as set forth in the Joint Interest Agreement.  To the extent there are material changes to the form of the Joint Interest Agreement attached hereto, prior to the hearing on this Motion, the Debtors will provide a copy of the final Joint Interest Agreement to the Court, the U.S. Trustee, and any party requesting, in writing, a copy of such agreement from the Debtors.

24.    The Debtors seek approval of the terms and conditions of the Joint Interest Agreement and, accordingly, seek the entry of the proposed order.  The Debtors submit that the cooperative process described in the Joint Interest Agreement will result in an efficient and cost effective review of the foregoing matters, and will protect the Debtors' interests.

25.    No discovery in respect of matters that are the subject of the Investigations will be permitted unless (a) the Bankruptcy Court has issued an appropriate order, after the Debtors and Creditors' Committee have met and conferred on the subject matter of the discovery and a telephonic status conference has been held before the Bankruptcy Court pursuant to section 105(d) of the Bankruptcy Code, (b) the Debtors and the Creditors' Committee have otherwise agreed, or (c) in connection with a contested hearing adjudicating a motion initiated by the Debtors, such discovery is permissible under the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure (provided that all rights and defenses with respect thereto are reserved).

26.    The Debtors also request that nothing in the Joint Interest Agreement be deemed to affect the separate and independent representation of the Debtors and the Creditors' Committee by their respective counsel and that nothing be deemed to create an attorney-client relationship between any attorney and anyone other than the client who hired that attorney.  The

11

Debtors would acknowledge that the sharing of information pursuant to the Joint Interest

Agreement would not be a basis for the disqualification of the Creditors' Committee's counsel.

B.    Joint Interest Agreement Protective Order

27.    The Debtors further seek an order, pursuant to 11 U.S.C. §§ 105, 107 and

1103 and Bankruptcy Rules 7026 and 9018, preserving for the benefit of the Debtors' estates

certain protections and privileges (the "Privileges") notwithstanding the limited disclosure of

certain confidential, and at times privileged, information and documents produced pursuant to

the Joint Interest Agreement.

28.    The power to exercise or waive a debtor's attorney-client privilege, like

other valuable property of a debtor's estate, vests in the trustee, or as is applicable in this case,

the debtor-in-possession.  See Commodity Futures Trading Comm'n v. Weintraub, 471 U.S. 343,

354 (1985) ("In summary, we conclude that vesting in the trustee control of the corporation's

attorney-client privilege most closely comports with the allocation of the waiver power to

management outside of bankruptcy without in any way obstructing the careful design of the

Bankruptcy Code.").

29.    Bankruptcy courts have recognized that, in certain circumstances, the

attorney-client and similar privileges may be shared between the debtor and its official

committees without waiving the privilege as to other parties, as the court in In re Mortgage &

Realty Trust, 212 B.R. 649 (Bankr. C.D. Cal. 1997) explained:

> Bankruptcy cases frequently involve parties who share common commercial
> interests, but whose interests in other respects may be very different.  This is
> especially true when the parties at issue are a debtor in possession under chapter
> 11 and a committee of creditors.  The debtor in possession and the committee of
> creditors share a duty to maximize the debtor's estate . . . .  In order to permit the
> committee to carry out [its] duties, the debtor must be able to provide information
> to the committee free of the risk that the committee may be forced to disgorge
> such information to adverse third parties.  A communication in furtherance of this

12

> common legal interest with that of the debtor is entitled to the protection of the
> attorney-client privilege, unless its confidentiality has been waived.

Id. at 653 (citations omitted) (holding that communication of privileged information shared

between debtor and committee did not waive privilege with respect to information).

30.    Moreover, section 107 of the Bankruptcy Code as well as Bankruptcy

Rule 9018 serve to protect confidential information from disclosure.  See In re Bell & Beckwith,

198 B.R. 265, 270 (Bankr. N.D. Ohio 1996) (denying motion to release confidential records from

seal).  The court in Bell & Beckwith also expressly relied on Fed. R. Civ. P. 26, made applicable

in bankruptcy cases by Bankruptcy Rule 7026, which empowers the court to "make any order

which justice requires to protect a party" from the disclosure of confidential information.  Id. at

267.

31.    In this case, even though the Debtors and the Creditors' Committee are

separate fiduciaries with distinct fiduciary duties, they share a common interest and fiduciary

duty in preserving the continued confidentiality of the Information as it is an estate asset.

32.    To that end, the Debtors and the Creditors' Committee agree that the relief

requested in the Motion should be granted.  Moreover, as set forth in the Joint Interest

Agreement, the Creditors' Committee has agreed to preserve the confidentiality of the

Information and further agreed to use the Information solely for purposes set forth in such

agreement.

33.    To ensure flexibility in the conduct of the Investigations, the Debtors

should not be precluded from making future waivers of applicable privileges if such waivers are

specific and narrowly-tailored for the intended purpose.  See In re Grand Jury Proceedings, 78

F.3d 251, 255 (6th Cir. 1996) (drawing distinction between what is waived and what remains

privileged, notwithstanding voluntary disclosure); In re Von Bulow, 828 F.2d 94, 102 (2d Cir.

13

1987) ("Applying the fairness doctrine, we hold therefore that the extrajudicial disclosure of an attorney-client communication – one not subsequently used by the client in a judicial proceeding to his adversary's prejudice – does not waive the privilege as to the undisclosed portions of the communications."); Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 611 (8th Cir. 1978) (en banc) (finding that limited waiver of attorney-client privilege occurred with respect to document disclosed to SEC); Chamberlain Mfg. Corp. v. Maremont Corp., No. 90 C 7127, 1993 WL 11885, at *3 n.2 (N.D. Ill. 1993) (noting that "the better rule" allows a limited waiver).

34.    Moreover, the relief requested should not prejudice the Debtors or the Creditors' Committee.  Consistent with the proposed order, the Debtors or the Creditors' Committee may pursue (to the extent permitted under applicable law and with the authorization of this Court) any remedies or causes of action which arise from or are related to the Information.

35.    Furthermore, the Debtors request that this Court retain jurisdiction over this matter.  Given the nature of the Information, any litigation arising in connection with the Investigations may be significant and time-consuming.  Thus, this Court's retention of jurisdiction over the Joint Interest Agreement and the relief requested herein is critical to ensure that any relief obtained by the Debtors remains enforceable and consistent.  See, e.g., Bell & Beckwith, 198 B.R. at 270 (honoring an arms-length, negotiated confidentiality agreement and denying trustee's motion to unseal confidential records); Rickards v. Certainteed Corp., No. 94-1756, 1995 WL 508209, at *2 (E.D. Pa. Aug. 21, 1995) (retaining jurisdiction to enforce confidentiality agreement); Evello Investments N.V. v. Printed Media Services, Inc., No. 94-2254, 1995 WL 135613, at *7, *9 (D. Kan. March 28, 1995) (same).

C.    Fee Statement/Application Procedures

36.    Because of the confidential nature of the Investigations and their subject matter, and the previously entered orders governing fee statements and fee applications, the Debtors also seek an order, pursuant to 11 U.S.C. §§ 105, 107, and 1103 and Bankruptcy Rules 7026 and 9018, preserving for the benefit of the estates certain Privileges contained in fee statements and applications of professional retained in these cases.  Certain of the professionals retained in these cases by the Debtors and the Creditors' Committee perform services that may cause some disclosure of these matters in their detailed time records.  The public filing and service of required fee statements and applications containing detailed time records that describe work performed in connection with the Investigations (the "Confidential Time Records") may result in the disclosure of confidential information.  This disclosure, in some cases, could extend to third parties who are the subject of an investigation.

37.    To avoid any inadvertent disclosure of confidential information, the Debtors propose that certain procedures be implemented with respect to the Confidential Time Records.  The Debtors propose that the procedures, set forth on Exhibit 2 to the proposed order (the "Fee Procedures"), for reviewing and filing fee statements and fee applications containing Confidential Time Records be approved by the Court in a protective order.  The Debtors request that the Court find that the dissemination and disclosure of the Confidential Time Records in accordance with the Fee Procedures does not constitute a waiver of the attorney-client or attorney work product privileges, or of any right to the confidentiality of such information by any party.

38.    Except as set forth in the Fee Procedures, the Debtors propose that all retained professionals be required to continue to file fee applications, monthly fee statements,

and related documents and records (including expense records) in accordance with the Order

Under 11 U.S.C. § 331 Establishing Procedures For Interim Compensation And Reimbursement

Of Expenses Of Professionals (Docket No. 869), as amended (Docket No. 2747), and provisions

of the Bankruptcy Code, the Bankruptcy Rules, and other applicable orders and guidelines.  The

Fee Procedures provide that the service of monthly fee statements and interim and final fee

applications containing the Confidential Time Records shall be limited to the following parties:

(i) the Company and its counsel, (ii) counsel to the Creditors' Committee, (iii) the United States

Trustee, (iv) this Court (in the case of interim or final fee applications), and (v) any other entity

consented to in writing by the Debtors or designated by this Court after notice and a hearing

(together, the "Designated Recipients").

        39.      The Debtors believe the Fee Procedures will preserve the confidentiality

of the Confidential Time Records while providing the Court and interested parties with the

opportunity to review (and, if necessary, object to) professional invoices for services rendered.

The Debtors assert that these procedures are required to protect the Debtors and the Debtors'

estates by safeguarding investigatory and litigation work conducted by certain retained

professionals as required by the various investigating government agencies, thereby preserving

the current cooperative posture of those investigations.

<u>Notice</u>

        40.      Notice of this Motion has been provided in accordance with the

Supplemental Case Management Order.  In addition, the Debtors have complied with the

Supplemental Case Management Order with respect to the filing of this Motion and the need for

expedited relief.  In light of the nature of the relief requested, the Debtors submit that no other or

further notice is necessary.

16

<u>Memorandum Of Law</u>

41.      Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (a) approving the form of the Joint Interest Agreement between the Debtors and the Official Committee of Unsecured Creditors, (b) implementing a protective order with respect to information and documents produced pursuant to the Joint Interest Agreement, (c) approving the Fee Procedures to protect confidential and privileged information in fee statements and fee applications of professionals retained in these cases and a protective order with respect to the same, and (d) granting the Debtors such other and further relief as is just.

Dated:          New York, New York
                March 28, 2006

                                SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP

                                By:   /s/ John Wm. Butler, Jr.
                                      John Wm. Butler, Jr. (JB 4711)
                                      David E. Springer (DS 9331)
                                      John K. Lyons (JL 4951)
                                      Ron E. Meisler (RM 3026)
                                333 West Wacker Drive, Suite 2100
                                Chicago, Illinois 60606
                                (312) 407-0700

                                        - and -

                                By:   /s/ Kayalyn A. Marafioti
                                      Kayalyn A. Marafioti (KM 9632)
                                      Thomas J. Matz (TM 5986)
                                Four Times Square
                                New York, New York 10036
                                (212) 735-3000

                                Attorneys for Delphi Corporation, et al.,
                                  Debtors and Debtors-in-Possession

<u>Exhibit A</u>

Proposed Order

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
       In re                    :       Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :       Case No. 05-44481 (RDD)
                                        :
               Debtors.        :       (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER APPROVING JOINT INTEREST AGREEMENT BETWEEN DEBTORS
AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS,
IMPLEMENTING PROTECTIVE ORDER, AND APPROVING
PROCEDURES TO PROTECT INFORMATION IN FEE STATEMENTS

("JOINT INTEREST AGREEMENT ORDER")

       Upon the motion, dated March 28, 2006 (the "Motion"), of Delphi Corporation

and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-

captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. §§ 105,

107 and 1103 and Bankruptcy Rules 7026 and 9018, approving the Joint Interest Agreement[1]

between the Debtors and the Creditors' Committee, preserving for the benefit of the Debtors'

estates certain protections and privileges from disclosure of information and documents

produced pursuant to the Joint Interest Agreement, and approving procedures to protect

confidential and privileged information in fee statements and fee applications of professionals

retained in these cases; and upon the record of the hearing held on the Motion; and this Court

having determined that the relief requested in the Motion is in the best interests of the Debtors,

their estates, their creditors, and other parties-in-interest; and it appearing that proper and

---

[1]    Terms not defined herein shall have the meanings ascribed to them in the Motion.

adequate notice of the Motion has been given and that no other or further notice is necessary; and

after due deliberation thereon,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The Debtors and the Creditors' Committee are separate fiduciaries of these estates

with distinct fiduciary duties that share a common interest with respect to the subject matter of

the Information (as defined herein).  In addition, the Court as well as the Debtors and the

Creditors' Committee have an interest in ensuring that its orders are implemented appropriately.

To carry out their respective fiduciary duties efficiently and effectively in general, the Debtors

and the Creditors' Committee must be able to share confidential information within the subject

matter of the Information free from the risk that any of them would be required to divulge such

information to third parties later.

B.      Given the common interest of the Debtors and the Creditors' Committee with

respect to the Information, the sharing of the confidential Information between the Debtors and

the Creditors' Committee shall not prejudice any rights, remedies, or causes of action of the

Debtors or the Creditors' Committee applicable with respect to any causes of action arising out of

the Information.

C.      The Debtors' administration of their cases should not be prejudiced by the

exchange of the Information.  Any Information provided by the Debtors to the Creditors'

Committee should be used only as provided in the Joint Interest Agreement.

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED

THAT:

1.      The Motion is GRANTED.

2

2.      The Court hereby approves the Joint Interest Agreement, a copy of which

is attached hereto as Exhibit 1.  Any non-public information and documents provided by the

Debtors to the Creditors' Committee related to the Investigations, whether written or oral,

including by virtue of participation by any Reviewing Party (as defined below) in the

Investigations, to the designees of the Creditors' Committee (which designees shall be the

outside professionals of the Creditors' Committee and, at the election of the Creditors'

Committee, either the chair of the Creditors' Committee or a subcommittee of the Creditors'

Committee in a number reasonably acceptable to the Debtors) (each a "Reviewing Party"), shall

be deemed confidential information subject to the provisions of the Joint Interest Agreement

("Information"), and no attorney-client, attorney work-product doctrine, or similar privilege shall

be waived solely by reason of the sharing of such Information under the terms of the Joint

Interest Agreement.  The Debtors' provision of Information pursuant to the Joint Interest

Agreement shall not confer upon any third party the right to obtain such Information, nor shall it

limit the right of any party, including the Creditors' Committee, to Information that is otherwise

discoverable to the extent so ordered by the Court or another Court of competent jurisdiction in

litigation authorized by the Court.

3.      Nothing in this Order shall preclude the Debtors from expressly waiving

any privilege or attorney work-product doctrine applicable with respect to any Information in the

future.

4.      The Creditors' Committee may exercise its own independent judgment in

determining whether to participate in particular meetings and interviews being conducted by the

Debtors in furtherance of the Investigations.

5.        Nothing in this Order or the Joint Interest Agreement shall limit, modify, or otherwise diminish the Debtors' or the Creditors' Committee's rights and powers under applicable law, including the rights of the Creditors' Committee, to seek Information from the Debtors that the Debtors do not voluntarily produce (provided that all defenses the Debtors may have to any such involuntary production are not diminished by this Order or the Joint Interest Agreement).

6.        Nothing in this Order or in the Joint Interest Agreement shall affect the separate representation of the parties by their respective counsel nor shall anything in this Order or the Joint Interest Agreement be deemed to create an attorney-client relationship between any attorney and anyone other than the client who hired that attorney.  The Debtors' provision of Information pursuant to the Joint Interest Agreement shall not be a basis for disqualification of any of the Creditors' Committee counsel.

7.        No discovery in respect of matters that are the subject of the Investigations shall be permitted unless (a) the Bankruptcy Court has issued an appropriate order, after the Debtors and Creditors' Committee have met and conferred on the subject matter of the discovery and a telephonic status conference has been held before the Bankruptcy Court pursuant to section 105(d) of the Bankruptcy Code, (b) the Debtors and the Creditors' Committee have otherwise agreed, or (c) in connection with a contested hearing adjudicating a motion initiated by the Debtors, such discovery is permissible under the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure (provided that all rights and defenses with respect thereto are reserved).

8.        The provisions of the Order Under 11 U.S.C. § 331 Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals

4

(Docket No. 869), as amended (Docket No. 2747) relating to monthly fee statements and fee

applications containing Confidential Time Records shall be modified in accordance with <u>Exhibit</u>

<u>2</u> attached hereto.  The dissemination and disclosure of the Confidential Time Records in

accordance with these procedures shall not constitute a waiver of the attorney-client or attorney

work product privileges, or of any right to the confidentiality of such information by any party.

The Debtors shall promptly serve a copy of this Order on all professionals retained pursuant to a

retention order entered by this Court.

        9.     The Court expressly retains exclusive jurisdiction to determine any dispute

regarding the interpretation or enforcement of this Order and the Joint Interest Agreement.  On

request of a party in interest, the Court may issue any order necessary or appropriate to enforce

or give effect to the provisions of this Order or the Joint Interest Agreement, including, but not

limited to, this retention of jurisdiction.

        10.    The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for

the United States Bankruptcy Court for the Southern District of New York for the service and

filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
       April ___, 2006


                                     _____
                                   UNITED STATES BANKRUPTCY JUDGE

<u>Exhibit 1</u>

Joint Interest Agreement

JOINT INTEREST AGREEMENT

WHEREAS, on October 8, 2005 (the "Initial Filing Date"), Delphi

Corporation ("Delphi") and certain of its U.S. subsidiaries (the "Initial Filers") filed

voluntary petitions in the United States Bankruptcy Court for the Southern District of

New York (the "Bankruptcy Court") for reorganization relief under chapter 11 of

title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the

"Bankruptcy Code").  On October 14, 2005, three additional U.S. subsidiaries of

Delphi (together with the Initial Filers, collectively, the "Debtors") also sought

reorganization relief.  The Debtors continue to operate their businesses and manage

their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the

Bankruptcy Code.

WHEREAS, on October 17, 2005, the Office of the United States Trustee

appointed an official committee of unsecured creditors (the "Creditors' Committee").

WHEREAS, prior to the Initial Filing Date, certain events occurred which

prompted informal and formal investigations by Delphi and its subsidiaries and

affiliates (collectively, the "Company") and third parties.  The investigations include,

but are not limited to (a) the internal review conducted by the Company's Audit

Committee, (b) the formal ongoing investigations by several governmental agencies,

(c) the Company's restatement of earnings for fiscal years 2001-03, (d) the subject

matter related to the commencement of certain class actions, including, without

limitation, actions brought under ERISA (as defined below) and various securities

actions, and (e) the review by a special committee of the Company's Board of

Directors of certain shareholder derivative demands and related actions (collectively,

the "Investigations").

WHEREAS, the Company is the subject of an ongoing investigation by the

Securities and Exchange Commission ("SEC") and other federal authorities

involving its accounting for and the adequacy of disclosures for a number of

transactions dating from the Company's spin-off from GM.  Delphi is fully

cooperating with the SEC's ongoing investigation and requests for information as

well as the related investigation being conducted by the Department of Justice. The

Company has entered into an agreement with the SEC that currently suspends the

running of the applicable statute of limitations until April 6, 2006, which is likely to

be further extended.  The SEC investigation and the related investigation by the

Department of Justice were not stayed as a result of the Debtors' commencement of

their chapter 11 cases.

WHEREAS, Delphi completed a financial restatement in June 2005, the

effects of which reduced retained earnings as of December 31, 2001 by $265 million,

reduced 2002 net income by $24 million, and reduced 2003 net loss by $46 million.

The nature of the restatement adjustments have been described on Form 8-K filings

with the SEC.  In conjunction with the restatement, the audit committee of the

Company's Board of Directors conducted and concluded an internal investigation of

2

certain accounting transactions over the previous five years.  The Company is

continuing to cooperate fully with the government's investigations in these matters.

WHEREAS, several class action lawsuits have been commenced against

Delphi, Delphi Trust I, Delphi Trust II, current and former directors, certain current

and former officers, General Motors Investment Management Corporation (the

named fiduciary for investment purposes and investment manager for Delphi's

employee benefit plans), and certain current and former employees of Delphi or its

subsidiaries, as a result of the Company's announced financial restatement.  These

lawsuits fall into three categories:  (a) lawsuits brought under the Employee

Retirement Income Security Act of 1974, as amended ("ERISA"), purportedly on

behalf of participants in certain of the Company's and its subsidiaries' defined

contribution employee benefit pension plans which invested in Delphi common stock

(the "ERISA Actions"), (b) lawsuits alleging that the Company and certain of its

current and former directors and officers made materially false and misleading

statements in violation of federal securities laws (the "Securities Actions"), and (c)

shareholder derivative actions (the "Shareholder Derivative Actions").  The Board of

Directors of the Company has appointed a special committee to investigate certain

shareholder derivative demands.  On or about December 12, 2005, the Judicial Panel

on Multidistrict Litigation transferred, and consolidated into one action, the ERISA

Actions, the Securities Actions, and the federal Shareholder Derivative Actions.  The

3

litigation was transferred to Judge Gerald R. Rosen in the United States District

Court for the Eastern District of Michigan and consolidated under the title In re

Delphi Securities, Derivative and ERISA Litigation (MDL No. 1725).

WHEREAS, the Debtors and the Creditors' Committee have determined that

it is in the best interests of the Debtors' estates that they share material confidential

information with each other and consult with each other regarding the Investigations.

The Debtors and the Creditors' Committee further believe that it is in the best

interests of the Debtors' estates for the Debtors to provide such confidential, non-

public information and documents related to the Investigations, whether written or

oral, including by virtue of participation by any Reviewing Party (as defined below)

in the Investigations ("Information") to the designees of the Creditors' Committee

(which designees shall be the outside professionals of the Creditors' Committee and,

at the election of the Creditors' Committee, either the chair of the Creditors'

Committee or a subcommittee of the Creditors' Committee in a number reasonably

acceptable to the Debtors), to keep them adequately apprized of the ongoing progress

of the Investigations, without losing any privilege or protection attaching to any

produced information through the disclosure thereof.

WHEREAS, the Debtors and the Creditors' Committee believe that they

share common interests in this regard, and intend through this Agreement that any

and all sharing of information pursuant to this Agreement be protected pursuant to

4

the "common interest" or "joint defense" doctrine, to the fullest extent such protection is available under applicable case law subject to the provisions of this Agreement.

WHEREAS, the Debtors and the Creditors' Committees wish to memorialize, and to set forth the terms and conditions of, their understanding with respect to the foregoing.

NOW, THEREFORE, IT IS HEREBY AGREED, by and between the Debtors and the Creditors' Committee, that:

1.     The Debtors may voluntarily share Information related to the Investigations with the members and professionals of the Creditors' Committee identified on Appendix A to this Agreement (collectively, the "Reviewing Parties"). The Reviewing Parties shall treat all Information obtained from the Debtors in accordance with this Agreement.  No other additional persons, firms, or entities shall be added to the Reviewing Parties list, unless prior email notice is provided to counsel for the Debtors and the Debtors consent in writing to such additions.  The Reviewing Parties may share and discuss Information with each other.  The designated professional firms identified on Appendix A may disclose Information as necessary in the ordinary course of their work to legal assistants, secretaries, or other non-professional staff, but shall disclose information only to individuals who have a need to know the Information for purposes of participating in the Investigations.

5

2.      The Debtors may voluntarily make available for inspection and
copying by the Reviewing Parties certain Information, including deposition
transcripts, internal memoranda, and other documents and information.  Upon the
Debtors' request (the consent to which a Reviewing Party shall not unreasonably
withhold), at the close of the chapter 11 cases or such other time as may be
reasonable the Reviewing Parties shall return all originals and return copies of any
and all Information produced pursuant to this Agreement, and shall certify their
compliance with this paragraph to the Debtors in writing, provided that the
professionals retained by the Creditors' Committee may retain (but must use for no
other purpose other than as set forth in paragraph 3) their own work product.

3.      All Information received by the Reviewing Parties in connection with
the Investigations shall be held in strict confidence and used solely for purposes of
the Investigations and any litigation subsequently authorized by the Bankruptcy
Court.  The Reviewing Parties shall not disclose Information received in connection
with the Investigations except to one another.

4.      In the event that a Reviewing Party is legally required by the
Bankruptcy Court, any other court of competent jurisdiction or by a federal, state or
local governmental or regulatory body, to disclose any of the Information, such
Reviewing Party shall, to the extent lawful, provide the Debtors with prompt written
notice of any such requirement to the Debtors no less than ten business days prior to

6

such required disclosure so that the Debtors may seek a protective order or other

appropriate remedy and/or waive compliance with this Agreement.  The Reviewing

Party shall provide service of such notice by facsimile and Federal Express to:  (a)

Delphi Corporation, Att'n: David Sherbin, 5725 Delphi Drive, Troy, MI 48098

(facsimile (248) 813-2491); (b) Delphi Corporation, Att'n: Joseph Papelian, 5725

Delphi Drive, Troy, MI 48098 (facsimile (248) 813-3251); and (c) Skadden, Arps,

Slate, Meagher & Flom LLP, Att'n: John Wm. Butler, Jr., 333 W. Wacker Drive,

Chicago, IL 60606 (facsimile (312) 407-0411).  If, in the absence of a protective

order or other remedy or the receipt of a waiver from the Debtors, such Reviewing

Party is nonetheless required to disclose any of the Information, such Reviewing

Party may, without liability hereunder, disclose only that portion of the Information

which such Reviewing Party is advised by counsel it is legally required to disclose,

provided that such Reviewing Party shall use its reasonable best efforts to preserve

the privileges and confidentiality of the Information by reasonably cooperating with

the Debtors to obtain an appropriate protective order or other reliable assurance that

the privileges and other confidential treatment will be accorded the Information.

     5.     The parties agree that all Information provided to the Reviewing

Parties prior to the execution of this Agreement was provided in furtherance of the

parties' common interests and the prior provision of Information by the Debtors, and

its receipt by the Reviewing Parties, is subject to this Agreement.

7

6.        The Reviewing Parties will not assert that the Debtors' production of Information pursuant to this Agreement constitutes a waiver of the attorney-client privilege, the attorney work product doctrine, or any other applicable privilege or protection.

7.        The Creditors' Committee may exercise its own independent judgment in determining whether to participate in particular meetings and interviews being conducted by the Debtors in furtherance of the Investigations, through its own representatives.

8.        No discovery in respect of matters that are the subject of the Investigations will be permitted unless (a) the Bankruptcy Court has issued an appropriate order, after the Debtors and Creditors' Committee have met and conferred on the subject matter of the discovery and a telephonic status conference has been held before the Bankruptcy Court pursuant to section 105(d) of the Bankruptcy Code, (b) the Debtors and the Creditors' Committee have otherwise agreed, or (c) in connection with a contested hearing adjudicating a motion initiated by the Debtors, such discovery is permissible under the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure (provided that all rights and defenses with respect thereto are reserved).

9.        It is the express intent of the parties to this Agreement, and of the Bankruptcy Court, if it approves the Agreement, that the Agreement and the

8

production of Information pursuant thereto will not confer upon any third party the

right to obtain such Information, nor shall it limit the right of any party, including

any Reviewing Party, to Information that is otherwise discoverable to the extent so

ordered by the Bankruptcy Court or another court of competent jurisdiction in

litigation authorized by the Bankruptcy Court.

10.    Nothing herein shall, or is intended in any way to limit, modify or

otherwise diminish the Debtors' or the Creditors' Committee's rights and powers

under applicable law, including under the Bankruptcy Code and Bankruptcy Rules,

or the rights of the Creditors' Committee to seek Information from the Debtors that

the Debtors do not voluntarily produce (provided that all defenses that Debtors may

have to any such involuntary production are preserved).

11.    Nothing herein shall be or is intended to constitute an admission by

any person or entity of any wrongdoing or liability or of the existence of any claims

or causes of action in connection with the subject matter of the Investigations or

otherwise.

12.    This Agreement shall be binding upon the parties' respective

successors and assigns.

13.    This Agreement shall be submitted for approval by the Bankruptcy

Court, but if not approved, shall remain in full force and effect as an agreement

among the parties.

9

14.    This Agreement may be executed in several counterparts, all of which constitute the same agreement.

15.    Nothing herein shall affect the separate and independent representation of the parties by their respective counsel nor shall anything herein be deemed to create an attorney-client relationship between any attorney and anyone other than the client who hired that attorney.  The sharing of Information pursuant to this Agreement shall not be a basis for disqualification of any Reviewing Party's counsel.

10

16.     This Agreement constitutes the full agreement among the parties

regarding the production and sharing of Information.  Modifications of this

Agreement must be in writing and signed by counsel to all parties hereto.


Dated:              _____, 2006

SKADDEN, ARPS, SLATE,                           LATHAM & WATKINS LLP
    MEAGHER & FLOM LLP

By:    _____              By:    _____
        John Wm. Butler, Jr. (JB 4711)                  Robert J. Rosenberg (RR-9585)
        David E. Springer (DS 9331)                     Mitchell A. Seider
        John K. Lyons (JL 4951)                         Mark A. Broude (MB-1902)
        Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100               885 Third Avenue
Chicago, Illinois 60606                         New York, New York 10022-4802
(312) 407-0700                                  (212) 906-1200

                - and -                         Attorneys for The Official Committee
                                                of Unsecured Creditors
By:    _____
        Kayalyn Marafioti (KM 9632)
        Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

11

<u>APPENDIX A</u>

LIST OF REVIEWING PARTIES FOR
<u>THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS</u>

DESIGNATED COMMITTEE MEMBERS
[list individuals and firm affiliations]

To be determined

DESIGNATED PROFESSIONALS
[list firms]

Latham & Watkins LLP
Mesirow Financial Consulting LLC
Jefferies & Company, Inc.

<u>Exhibit 2</u>

Fee Procedures

A.    The disclosure of the Confidential Time Records shall be limited to (i) Debtors and their counsel, (ii) counsel to the Creditors' Committee, (iii) the United States Trustee, (iv) this Court (in the case of interim or final fee applications), and (v) any other entity consented to in writing by the Debtors as set forth below, or designated by this Court after notice and a hearing (together, the "Designated Recipients").

B.    Except as set forth below, all retained professionals shall file their fee applications, monthly fee statements, and related documents and records (including expense records) in accordance with the Order Under 11 U.S.C. § 331 Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals (Docket No. 869), as amended (Docket No. 2747), and relevant provisions of the Bankruptcy Code, the Bankruptcy Rules, and other applicable orders and guidelines.

C.    Service and distribution of monthly fee statements and interim and final fee applications containing the Confidential Time Records shall be limited to the Designated Recipients. Monthly fee statements and interim and final fee applications sent to or served on non-Designated Recipients will have the Confidential Time Records redacted. Corresponding interim and final fee applications, with unredacted confidential time records, filed with this Court shall be filed under seal.

D.    Any party receiving the Confidential Time Records shall be required to maintain the confidentiality of such information and shall not publicly file, provide, or disclose the Confidential Time Records, directly or indirectly, or by any means or in any manner whatsoever, to anyone other than another Designated Recipient.

E.    Any party who wishes to become a Designated Recipient shall submit a written request to the Debtors, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: David Sherbin), with a copy to Debtors' counsel, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), setting forth with specificity the basis for the request. The Debtors shall have twenty days after receipt of such request to respond in writing to any such request and shall use reasonable efforts to resolve any such request without judicial intervention. In the event that the Debtors agree in writing to supply the requested information, the requesting party shall be deemed to be a Designated Recipient and shall be required to maintain the confidentiality of the time records as set forth above. If the Debtors determine not to supply the requested information, such requesting party shall then be entitled to file an appropriate motion or other pleading with this Court upon proper notice.

F.    The dissemination and disclosure of the Confidential Time Records in accordance with these procedures shall not constitute a waiver of the attorney-client or attorney work product privileges, or of any right to the confidentiality of such information by any party.

G.    Any objection to a fee application or fee statement, pleading, or other filing of a Designated Recipient that contains the content of the Confidential Time Records shall be filed with the Court in a form complying with the following requirements, with copies of such pleadings to be sent solely to the Designated Recipients:

1.    All such objections, pleadings, or other filings referenced in section G shall be filed with a cover sheet reciting the following information:

The materials herein are filed pursuant to the Joint Interest Agreement Order, entered by this Court April ___, 2006 (the "Order").  Pursuant to the Order, the attached materials contain confidential information and may be viewed only by the Chambers of the Honorable Robert D. Drain, the Debtors' counsel, the United States Trustee, and other Designated Recipients.  Copies of the attached materials are available solely under the procedures set forth in the Order.

2.    The cover sheet with respect to any objections, pleadings, or other filings shall contain the caption of the case, designate the party filing the materials, and be signed by counsel for such party.  Only the cover sheet shall become part of the public record.  The pleadings or other materials being filed shall be maintained by the Court in accordance with its procedures for documents filed under seal.

H.    With respect to any hearing concerning fee statements, fee applications, time records, or related documents or records containing Confidential Time Records, the necessary arrangements to maintain the confidentiality of the Confidential Time Records shall be addressed with the Court in advance of such hearing.

2