WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
Glenn M. Kurtz (GK-6272)
Gerard Uzzi (GU-2297)
Douglas P. Baumstein (DB-1948)

Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Thomas E Lauria (Admitted *Pro Hac Vice*)
Frank L. Eaton (FE-1522)
Linda M. Leali

ATTORNEYS FOR APPALOOSA
MANAGEMENT L.P.

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| Delphi Corporation, et al. | Case No. 05-44481 |
| | Jointly Administered |
| Debtors. | |

**APPALOOSA MANAGEMENT L.P.'S PRELIMINARY OBJECTION TO MOTION
FOR ORDER UNDER 11 U.S.C. § 363(b) AND FED. R. BANKR. P. 6004 APPROVING
THE DEBTORS' HUMAN CAPITAL HOURLY ATTRITION PROGRAMS**

TO:   THE HONORABLE JUDGE ROBERT D. DRAIN
      UNITED STATES BANKRUPTCY JUDGE

Appaloosa Management L.P. ("Appaloosa") hereby files this preliminary objection (the "Preliminary Objection") to the Motion for an Order under 11 U.S.C. § 363(b) and Fed. R. Bankr. P. 6004 Approving the Debtors' Human Capital Hourly Attrition Programs (the "Motion") of Delphi Corporation ("Delphi") and its affiliated debtors (collectively, with Delphi, the "Debtors"), and in opposition to the Motion, respectfully states as follows:

**PRELIMINARY STATEMENT**

1. On March 22, 2006, the Court announced its ruling from the bench granting Appaloosa's Motion Pursuant To 11 U.S.C. § 1102(a)(2) for an Order Directing the United States Trustee to Appoint an Equity Committee in these Chapter 11 Cases (the "Equity Committee Motion").

2. . In doing so, the Court specifically observed that the voice of the shareholders should be heard in connection with the Debtors' outcome-determinative labor negotiations and that because such negotiations were actively ongoing, it was important and appropriate that an equity committee be formed promptly.

3. On the very same day that the Court ordered the appointment of an equity committee, the Debtors filed the Motion, seeking approval of certain programs (the "Attrition Programs") pursuant to which they would offer early and pre-retirement incentives to their union-represented employees and provide up to 5,000 employees with the opportunity to "flow back" to the Debtors' former parent, General Motors Corporation ("GM"). In the Motion, the Debtors repeatedly characterize the relief sought as a critical first step in the process of addressing the legacy labor issues that have plagued the Debtors since their spin-off from GM in 1999. Left unanswered by the moving papers, however, are obviously material and relevant matters regarding, among other things:

    (a)    the expected overall financial and economic impact of the Attrition Programs on the chapter 11 estates of Delphi and each of its Debtor subsidiaries;

    (b)    the magnitude of the potential claims GM may acquire as a consequence of the Attrition Programs;

    (c)    the estate rights (i.e., defenses, counterclaims, setoffs, subordination, disallowance) that are reserved with respect to any claims asserted by GM;

      (d)    a fair assessment of the benefits and burdens of the Attrition Programs that would enable stakeholders to determine if the proposal is in the best interests of any or all of the Debtors' estates;

      (e)    a comparison of the Debtors' aggregate potential liability under the Attrition Programs to the amount the Debtors would otherwise be obligated to pay to the employees who choose to participate;

      (f)    which Debtor entities will be exposed to potential claims arising from the Attrition Programs; and

      (g)    perhaps most importantly, whether the Attrition Programs make economic sense on a stand-alone basis (given the Debtors' characterization of the Attrition Programs as a "First Step" in the resolution of their labor cost issues and the recent public indications that negotiations of an overall deal may not come to fruition).

4.     Despite the Court's desire that an equity committee be formed to give Delphi's 300,000 shareholders a voice with respect to such matters, it does not now appear that a committee will be formed before the hearing on the Motion (much less in a timeframe that would permit any reasonable investigation and an informed response). On the one hand, without identifying any exigencies necessitating expedited consideration, the Debtors have set the Motion for hearing with just 16 days' notice, on April 7. On the other hand, the US Trustee has indicated its intent to solicit all 300,000 of Delphi's shareholders for their interest in serving on an official committee, a process that is likely to take weeks to complete, although the statutes provides that "a committee of equity security holders . . . shall ordinarily consist of the persons . . . that hold the seven largest amounts of equity securities . . ." (11 U.S.C. §1102(b)(2)), and ordinary convention likewise limits solicitation (see, e.g., In re Calpine, where the equity committee will be formed from the 50 largest shareholders).

5.     As a practical matter, these circumstances thus leave Appaloosa, itself a 9.3% shareholder, as the lone sentinel for shareholder interests with respect to the Motion.

Accepting this responsibility and in light of the truncated timeline for assessment of the relief sought, Appaloosa promptly asked the Debtors for information regarding the Attrition Programs both informally and through formal discovery requests.

6. All such requests have been declined. The Debtors have taken the position that in the absence of an objection, (a) the Motion is not a contested matter and discovery under the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") is not available, and (b) information will not be shared informally without an executed confidentiality agreement, the form of which the Debtors have refused to share despite multiple requests from Appaloosa. As such, the Debtors have yet to provide any information to Appaloosa regarding the Motion or its potential consequences.

7. This Preliminary Objection is thus filed for the purpose of framing potential concerns Appaloosa may have with the Attrition Programs (without the benefit of any meaningful diligence) and triggering discovery rights under the Bankruptcy Rules, which will have to be exercised on an expedited basis to accommodate the Debtors' timeline, and which can presumably be exercised under a protective order substantially in the form utilized for the Equity Committee Motion.

8. In so doing, Appaloosa is hopeful that its concerns can be amicably resolved once it has become reasonably well-informed of the critical matters raised by the Motion. Nevertheless, Appaloosa reserves its right to amend its objections or assert additional objections on or before the objection deadline for the Motion.

**BACKGROUND**

9. On October 8, 2005, each of the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court"), thereby commencing the above-captioned jointly administered chapter 11 cases (collectively, the "Cases"). The Debtors continue to operate their business as debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

10. On December 22, 2005, Appaloosa filed its Motion.[1]

11. On March 22, 2006, the Court issued a bench ruling granting the Equity Committee Motion. On March 29, 2006, Appaloosa submitted both Appaloosa's and the Debtors' competing forms of order. Because an order directing the US Trustee has not yet been entered, the US Trustee has not yet commenced the process of appointing an equity committee.

12. Pursuant to the Motion, the Debtors seek entry of an order under section 363 of the Bankruptcy Code and Bankruptcy Rule 6004 approving and authorizing Delphi to enter into the Attrition Programs.

13. In the Motion, the Debtors represent that they have consulted closely over the last several weeks with counsel to the Creditors' Committee regarding the relief sought in the Motion. To Appaloosa's knowledge, prior to filing the Motion, the Debtors did not consult with any of its shareholders regarding the relief to be sought.

14. Shortly after the filing of the Motion, Appaloosa requested that the Debtors agree to provide Appaloosa with relevant information regarding the Motion on an informal basis and that the Debtors meet with Appaloosa as soon as practicable to discuss the

---

[1] All capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

Attrition Programs. In response, Appaloosa was advised that the Debtors would not recognize Appaloosa as a "self-appointed" representative of the shareholders for information sharing purposes and that the only available date to meet was March 30.

15. In response, on Monday, Appaloosa served formal discovery on the Debtors regarding the Motion. This too has been rejected by the Debtors on the grounds that there are no contested matters.

16. To gain access to confidential information regarding the Attrition Programs and their consequences, Appaloosa offered to modify the existing Stipulation and Protective Order used in connection with the Equity Committee Motion or enter into a separate confidentiality order for "attorneys' eyes" only and which would not require Appaloosa to become restricted. To date, the Debtors have rejected the notion of a protective order, and have not provided Appaloosa with a proposed form of confidentiality agreement.

I.

**PRELIMINARY OBJECTION**

17. Based upon the limited facts and analysis presented in the Motion, it should be denied because the Debtors have not demonstrated that the Attrition Programs are in the best interest of the estates of any of the Debtors, or that the decision to enter into the Attrition Programs is one that is protected by the business judgment rule. See In re Adelphia Commc'ns Corp., 2003 WL 22316543, *30 (Bankr. S.D.N.Y. 2003) citing Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985). The Debtors' conclusory statements that the Attrition Programs will have a positive impact on Delphi's cash flow does not constitute the type of thorough and comprehensive analysis that the Debtors' stakeholders require to assess the impact of the Attrition Programs on all or any of the Debtors.

18. The Debtors have provided no information to allow their stakeholders to assess the benefits and detriments of the Attrition Programs and whether they are in the best interests of all or any of the Debtors' estates.

19. The Debtors have failed to provide any financial information to permit stakeholders to determine whether the Attrition Programs will have a positive or negative economic impact on all or any of the Debtors and their estates.

20. Paragraph 7.b. of the Hourly Attrition states that "[f]or avoidance of doubt," GM's claims arising with respect to OPEB and other assumed obligations "shall be conclusively deemed to be comprehended by, including within, and shall constitute a prepetition, general unsecured claim assertable by GM against the estate of Delphi Corporation." In that the terms "conclusively deemed to be comprehended" have no known commercial meaning, such statement creates substantial doubt (rather than alleviating it) regarding the nature and treatment of claims that GM may be acquiring. In addition, it is not clear, given that the Debtors will have no vested obligations after its various collective bargaining agreements terminate in 2007, whether the Debtors' aggregate exposure under the Attrition Programs to GM will exceed the amount of the Debtors' enforceable obligations to the employees if they remained employed by the Debtors.

21. In addition, there is no recognition in the Motion that Delphi may be incurring new obligations on account of insolvent Debtor subsidiaries, and that such new obligations may be incurred for no value to Delphi if the incurred liability is in favor of any insolvent subsidiary.

22. Without additional information regarding the anticipated financial and economic impact on all or any of the Debtors, it is impossible for any of the Debtors'

stakeholders to assess the detriments and benefits of the Attrition Programs.  Accordingly, the Debtors have not establish that the Attrition Programs are in the best interests of the Debtors' estates and stakeholders.

23.  The Motion was filed on shortened notice, i.e., on less than twenty days notice.  However, in the Motion, the Debtors have demonstrated no exigent circumstances that would necessitate having such a critical and important matter heard on such short notice before parties in interest, including Appaloosa, can conduct discovery.  Accordingly, Appaloosa reserves its right to seek an adjournment of the April 7th hearing in order to conduct appropriate discovery.

## **CONCLUSION**

For the reasons set forth herein, Appaloosa respectfully requests that the Motion be denied.

Dated: March 30, 2006
        Miami, Florida

    WHITE & CASE LLP
    Glenn M. Kurtz (GK-6272)
    Gerard Uzzi (GU-2297)
    Douglas P. Baumstein (DB-1948)
    1155 Avenue of the Americas
    New York, New York 10036-2787
    (212) 819-8200

    Thomas E Lauria (Admitted *Pro Hac Vice)*
    Frank L. Eaton (FE-1522)
    Linda M. Leali
    Wachovia Financial Center
    200 South Biscayne Boulevard
    Miami, Florida 33131
    (305) 371-2700

    By: /s/ Frank L. Eaton
        Frank L. Eaton

    COUNSEL TO APPALOOSA
    MANAGEMENT L.P.