TOGUT, SEGAL & SEGAL LLP
Bankruptcy Co-Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT<br>SOUTHERN DISTRICT OF NEW YORK<br>-------------------------------------------------------------x | HEARING DATE: 4/7/06<br>AT: 10:00 a.m. |
| In re:<br><br>DELPHI CORPORATION, et al.,<br><br>                           Debtors.<br>-------------------------------------------------------------x | Chapter 11<br>Case No. 05-44481 [RDD]<br><br>Jointly Administered |

**DEBTORS' OBJECTION TO MOTION
BY OFFSHORE INTERNATIONAL, INC.
AND MAQUILAS TETA KAWI, S.A. DE C.V. FOR RELIEF
FROM AUTOMATIC STAY TO PERMIT SETOFF OF CLAIMS**

**TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:**

Delphi Corporation ("Delphi") and Delphi Automotive Systems, L.L.C. ("Delphi Automotive"), debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), by their undersigned counsel, as and for their objection to the motion dated March 14, 2006 (the "Motion") of Offshore International, Inc. ("Offshore") and Maquilas Teta Kawi, S.A. de C.V. ("Maquilas," and together with Offshore, the "Movants") for an Order for relief from the automatic stay to permit a setoff of claims, respectfully state:

## PRELIMINARY STATEMENT

1. Delphi Automotive and Offshore are parties to a contract (the "Shelter Agreement") pursuant to which Offshore provides certain services to Delphi Automotive to facilitate its Mexican manufacturing operations.

2. Maquilas may have a separate contractual arrangement with Offshore, but is not a party to any contract with Delphi Automotive.

3. Nevertheless, Offshore and Maquilas seek relief from the automatic stay to set off Delphi Automotive's pre-petition obligations to *Offshore* under the Shelter Agreement against post-petition value added tax refunds (the "VAT Refunds") that are owed to Delphi Automotive and which are held by *Maquilas*.

4. Consequently, Offshore seeks relief to effect a "triangular setoff." Triangular setoffs, such as the one sought by Offshore, are not permissible under section Title 11, U.S.C. (the "Bankruptcy Code"), section 553 because they lack the requisite mutuality. "[I]n certain 'triangular' setoff cases, 'a subsidiary or other affiliate of the creditor owes money to the bankrupt and the two affiliates ask that they be treated as a single entity. This is rebuffed by pointing out that, save in exceptional circumstances, corporate and commercial law treat affiliated corporations as separate enterprises.'" *Apex Oil Co. v. DiMauro*, 744 F. Supp. 53, 57-58 (S.D.N.Y. 1990) (quoting *In re Elcona Homes Corp.*, 863 F.2d 483, 486-87 (7th Cir. 1988)).

5. Offshore and Maquilas also fail to satisfy the mutuality requirement of section 553 in other respects. Mutuality is lacking because the VAT Refunds were not received until after the commencement of these cases and the claims asserted by Offshore are asserted to have arisen prepetition. As a result, the Motion also seeks authority to setoff pre- and postpetition items. This is not permissible.

6.  Moreover, although Maquilas is in possession of the VAT Refunds which belong to Delphi Automotive, Maquilas is a mere bailee without color of lien or at best a trustee of the refunds and, consequently, Maquilas does not have a debt which it can use to effectuate a setoff. Absent a debt and right of setoff, no cause for stay relief exists.

7.  Based upon the foregoing, and the authorities set forth below, the Motion fails and should be denied.

## STATEMENT OF FACTS

**The Chapter 11 Cases**

8.  On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its subsidiaries, including Delphi Automotive (the "Initial Filers") each filed voluntary petitions in this Court for reorganization relief under Chapter 11 of the Bankruptcy Code. On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") filed voluntary petitions in this Court for reorganization relief under Chapter 11 of the Bankruptcy Code.

9.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered Orders directing the joint administration of the Debtors' chapter 11 cases (Docket Nos. 28 and 404).

10. On October 17, 2005, the United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors in these cases, which is represented by Latham & Watkins. No trustee or examiner has been appointed.

**The Debtors' Pre-Petition Transactions with the Movants**

11. On December 9, 2002, Offshore and Delphi Automotive entered into the Shelter Plan Service Agreement (as renewed by letter agreements dated November 23, 2004 and August 4, 2005). A copy of the Shelter Agreement is attached to Affirmation of Hank Parisi, dated March 30, 2006, which annexed hereto as Exhibit A ("Parisi Affirmation") ¶ 6.

12. Pursuant to the Shelter Agreement, Offshore provides certain services to Delphi Automotive to facilitate Delphi Automotive's Mexican manufacturing operations. *See* Parisi Affirmation ¶ 3.

13. Maquilas is not a party to the Shelter Agreement. Indeed, the first five lines of the Shelter Agreement clearly provide:

> This AGREEMENT entered into by and between Delphi Automotive Systems LLC, a corporation organized and existing under the laws of the State of Delaware, hereinafter referred to as CLIENT, and OFFSHORE INTERNATIONAL, INC., a corporation organized and existing under the laws of the State of Arizona, hereinafter referred to as OFFSHORE.

*See* Shelter Agreement, Parisi Affirmation, Exhibit 1, at 1.[1]

14. Offshore appears to have a contractual relationship with Maquilas, separate and apart from Offshore's contractual relationship with Delphi Automotive. *See* Shelter Agreement, Parisi Affirmation, Exhibit 1, at 1 ("OFFSHORE has an existing contractual relationship with Maquilas Teta Kawi S.A. de C.V. ('Maquilas'), a Mexican corporation, for the furnishing of manufacturing space, labor and services in

---

[1] *See also id.* at 19: "The terms and provisions contained herein constitute the entire Agreement between the parties and supersede all previous communications and understandings, either oral or written, between the parties hereto with respect to the subject matter hereof. No agreements or understandings varying or extending the terms of this Agreement will be binding upon either party hereto unless in writing signed by a duly authorized officer or representative thereof of each party."

4

Guaymas/Empalme, Sonora, Mexico…."). Delphi Automotive is not a party to any contract with Maquilas. *See* Parisi Affirmation ¶ 9.

15. The Motion attempts to obscure the undeniable facts that (1) Offshore and Maquilas are separate entities and (2) Maquilas is not a party to the Shelter Agreement. The Motion does this, for example, by creating the defined term "Offshore Group" to refer to both Offshore and Maquilas, then stating that "the Offshore Group and Delphi Automotive Systems, L.L.C. entered into that certain 'Shelter Plan Service Agreement'. . . ." *See* Motion, at 1-2.

16. The Motion also tries to obscure that Maquilas is not a party to the Shelter Agreement by framing the basis for a setoff as:

> Delphi Automotive owes the Offshore Group $234,775.90 for pre-petition client purchases, customs broker fees and labor/shelter fees. The Offshore Group, on the other hand, owes Delphi Automotive $252,448.87 for a pre-petition invoice overpayment and refunds for pre-petition value added taxes paid for June, July, August and September 2005, but refunded since the petition date.[2]

Motion, at 3. This is improper and fails to conceal the fatal impediments to the relief sought by the Motion.

17. Maquilas obtained the VAT Refunds after the Initial Filing Date and possessed them as of the filing of the Motion. Subsequent to an initial conference with counsel for Movants concerning the Motion, counsel confirmed to the Debtors: "To answer one of your questions, the `pesos stay pesos' – i.e., the tax refunds are held by Maquilas."

---

[2] In an informal document production by Offshore to Delphi Automotive subsequent to the filing of the Motion, Offshore acknowledges a credit of $25,443.57 owing from Offshore to Delphi Automotive, which reduces the debts purportedly owed by Delphi Automotive to Offshore from $234,775.90 to $209,332.33. Also, subsequent to the Initial Filing Date, the Debtors paid $371,773.34 to Offshore pursuant to the Human Capital Obligations Order of the Court dated October 13, 2005.

Because Movants' request for authority to setoff fails as a matter of law, the Debtors expressly reserve their rights to determine the allowability of the claims listed in the Declaration annexed to the

*(footnote continued on the following page)*

5

18. All of the VAT Refunds were received by Maquilas from the Mexican government post-petition, except for the one value added tax refund which was pending, and had not been received, as of the time of the filing of the Motion.

## ARGUMENT

### A. Movants Have Failed to Show Cause to Modify the Automatic Stay Pursuant to Section 362(d)(1)

19. The Second Circuit has described the automatic stay as a "crucial provision of bankruptcy law" intended to "prevent disparate actions against debtors . . . [and] ensur[e] that no creditor receives more than an equitable share of the bankrupt's estate." *Lincoln Savings Bank, FSB v. Suffolk County Treasurer (In re Parr Meadows Racing Assoc., Inc.*, 880 F.2d 1540, 1545 (2d Cir. 1989) (internal citations omitted).

20. Pursuant to Bankruptcy Code section 362(d)(1), the Court may grant relief from the automatic stay "for cause." The Bankruptcy Code does not define the term "cause" and the determination of whether sufficient cause exists to modify the stay is determined on a case by case analysis. *See In re Balco Equities Ltd., Inc.*, 312 B.R. 734, 748-49 (Bankr. S.D.N.Y. 2004).

21. Movants erroneously argue that they have established a right to setoff and a showing of "cause" for relief from the automatic stay. *See* Motion, at 6. As demonstrated herein, Movants have failed to establish the mutuality of obligations that is required by Bankruptcy Code section 553. Therefore, Movants' request for relief from the automatic stay fails as a matter of law.

---

Motion, and to determine whether any portion of those claims were satisfied by the Debtors' payment to Offshore pursuant to the Human Capital Obligations Order or are not owing for other reasons.

6

**Movants Are Not Entitled To Effectuate A "Triangular Setoff"**
**Of Delphi Automotive's Obligations To *Offshore* Under The Shelter Agreement**
**Against The VAT Refunds Which Are Owed To Delphi Automotive By *Maquilas***

22. Movants may not set off Delphi Automotive's obligations to Offshore against VAT Refunds that Maquilas must deliver to Delphi Automotive. "Section 553(a) allows a creditor to offset a mutual debt owed **by the creditor** to the debtor against a claim **of the creditor** against the debtor, so long as these mutual debts arose before the commencement of the case, and so long as the setoff is valid under state law." *Togut v. Chemical Bank (Matter of Hecht)*, 41 B.R. 701, 703 (Bankr. S.D.N.Y. 1984) (emphasis added); *see also* 11 U.S.C. § 553(a). "A setoff is only applicable where the debtor and the creditor `owe' one another." *In re Brendern Enterprises, Inc.*, 12 B.R. 458, 460 (Bankr. E.D. Pa. 1981).

23. Movants bear the burden of establishing a right of setoff and must establish that (1) the debtor owes a debt to a creditor, which arose pre-petition; (2) the debtor has a claim against a creditor, which arose pre-petition; and (3) the debt and claim at issue are mutual. *See, e.g., In re The Bennett Funding Group, Inc.*, 212 B.R. 206, 212 (2d Cir. BAP 1997), *aff'd*, 146 F.3d 136 (2d Cir. 1998). Generally, mutual debts are debts "due to and from the same person in the same capacity." *Id.* (quoting *In re Sentinel Prods. Corp., P.I., Inc.*, 192 B.R. 41, 45 (N.D.N.Y. 1996) (quoting *Modern Settings Inc. v. Prudential-Bache Sec., Inc.*, 936 F.2d 640, 648 (2d Cir. 1991)).

24. Mutuality is "strictly construed" against the party seeking a setoff. *In re The Bennett Funding Group, Inc.*, 212 B.R. at 212; *In re Sentinel*, 192 B.R. at 45; *In re Westchester Structures, Inc.*, 181 B.R. 730, 739 (Bankr. S.D.N.Y. 1995); *In re Fasano/Harriss Pie Co.*, 43 B.R. 864, 870 (Bankr. W.D. Mich. 1984) (citing *In re Virginia Block Co.*, 16 B.R. 560, 562 (Bankr. W.D. Va. 1981)).

25. Here, Movants cannot establish the fundamental mutuality requirement of section 553 because although Delphi Automotive may owe a debt to Offshore, Maquilas is not a creditor of Delphi Automotive. In other words, Movants' triangular setoff request fails to satisfy the requirement that the debtor owe a debt to a creditor against whom the debtor has a claim. *See* 5 Collier on Bankruptcy ¶ 553.03[3][i] (15th ed. rev. 2001) (explaining that triangular setoffs are not permitted by Bankruptcy Code section 553); *In re Mastroeni*, 57 B.R. 191, 192 (Bankr. S.D.N.Y. 1986) (setoff under section 553 "incorporates the concept that there first must exist a mutuality of obligations between the parties. The requisite mutuality of debts or credits means that the debts must be due and owing to and from the same persons. . . .").

26. Although Movants describe Maquilas as an "affiliate" of Offshore, Motion, at 2, this affiliation with Offshore does not satisfy the mutuality requirement. "[I]t is well established that 'one subsidiary may not setoff a debt owed to a bankrupt against a debt owing from the bankrupt to another subsidiary . . . The same rule applies with a parent corporation and a wholly owned subsidiary." *In re Fassano/Harriss Pie Co.*, 43 B.R. at 870 (quoting *Depositors Trust Co. v. Frati Enterprises*, 590 F.2d 377, 379 (1st Cir. 1979) and citing *Inland Steel Co. v. Berger Steel Co., Inc.*, 327 F.2d 401, 403-04 (7th Cir. 1964)).

27. Maquilas has no right to retain the VAT Refunds and it must turn over the VAT Refunds to Delphi Automotive.

**Maquilas Does Not Have A Debt Which It Can Use To Effectuate A Setoff**

28. Maquilas is not a creditor of Delphi Automotive and has no claim against which it may affect a setoff. Rather, Maquilas is in possession of property of the estate, which it must turn over. As the Court explained in *In re Brendern Enterprises*,

8

*Inc.*, 12 B.R. 458, 460 (Bankr. E.D. Pa. 1981), "[a] set-off is only applicable in cases where the debtor and the creditor 'owe' one another. It is inapplicable to a situation where the debtor's property is in possession of a creditor as bailee or trustee without color of lien. The title of property in such case will be in the bankruptcy estate and cannot form a basis for the debt which the creditor case use as a set-off on his claims against the debtor."

29. In *Brendern Enterprises*, the debtor commenced a proceeding against a manufacturer for a turnover of its property and the manufacturer asserted, in response, that it was entitled to retain the equipment as a setoff against sums owed to it by the debtor. The Court determined that the creditor was not entitled to a setoff because it held the equipment in the capacity of bailee and held that "the property in question is not owing to the estate of the debtor, but rather, is owned by it. Thus, no mutuality of debt exists between the parties." *Id.* at 460. To the extent that a party is a mere bailee of the property of the debtor, it may not effectuate a setoff. *See id.* at 460.

30. Maquilas, like the creditor in *Brendern*, is a bailee without color of lien. "An implied bailment arises when one comes into lawful possession of personal property of another, other than by mutual contract of bailment; such possessor may be treated as a bailee of property by operation of law and may reasonably be referred to as a constructive bailee." *Tremaroli v. Delta Airlines*, 458 N.Y.S.2d 159, 160 (N.Y. Civ. Ct. 1983) (citing *Mack v. Davidson*, 55 A.D.2d 1027 (N.Y. App. Div. 1977)). *See also Nava v. Truly Nolen Exterminating of Houston, Inc.*, 683 P.2d 296, 299 (Ariz. Ct. App. 1984) ("Where personal property is delivered to one party by another in trust for a specific purpose, with the express or implied agreement that the property will be returned or accounted for when the purpose is accomplished, the transaction constitutes a bailment."); 8A Am. Jur. 2d Bailments § 12 (2005) ("A constructive bailment arises

9

when one person has lawfully acquired possession of another's personal property, other than by virtue of a bailment contract, and holds it under such circumstances that the law imposes on the recipient of the property the obligation to keep it safely and redeliver it to the owner. A constructive bailment may occur even in the absence of a voluntary delivery and acceptance of the property which is usually necessary to create a bailment relationship."). Based upon these sound principles, Movants' setoff demand lacks the required "capacity" component of Bankruptcy Code section 553.

    31.  The obligation of an entity that files for a tax return on behalf of a debtor to deliver the refund to the debtor, and the concomitant inability of such entity to set off against the refund, are well established. In *In re Bob Richards Chrysler Plymouth Corp., Inc.*, 473 F.2d 262 (9th Cir. 1973), a consolidated tax return was filed on behalf of a parent corporation, its wholly owned debtor subsidiary, and another wholly owned corporation. A refund based upon the earnings history of the subsidiary was due and the trustee sought to obtain it for the benefit of the subsidiary. The parent company asserted that it could set off other unsecured obligations of the debtor subsidiary against the refund. The Court disagreed and held that, although the refund was made payable to the parent company and notwithstanding that the debtor had consented to the parent's filing of the consolidated return and acting as the debtor's representative in dealings with the government, the parent's liability to the subsidiary arose out of a fiduciary duty or was in the nature of a trust and that therefore, the requisite mutuality of obligations was lacking. *See id.* at 265. The Court held "[t]he trust res is not owing to the bankrupt's estate but rather is owned by it." *Id.*

    32.  Regardless of whether Maquilas is deemed to be a bailee without color of lien under *Brendern*, a trustee under *Bob Richards*, or some similar construct, it is apparent that Maquilas has mere possession of Delphi Automotive's VAT Refunds but

10

has no right or title to them. As the Second Circuit explained in the context of assessing a setoff under Section 68 of the Bankruptcy Act:

> This section applies only to those situations where the bankrupt and creditor owe a debt to one another. It does not include the situation where the bankrupt's property is in the possession of the creditor as bailee or trustee, without color of lien. In such cases, title to the property would not be in the creditor, but would, instead, vest in the representative of the bankrupt estate, which, in this case, is the debtor in possession. Therefore, the property could not form the basis of a debt owing from the bankrupt which the creditor could use as an offset on his claim against the bankrupt.

*Matter of Lykens Hosiery Mills, Inc.*, 141 F. Supp. 891, 893-94 (S.D.N.Y. 1956) (internal citations omitted).

33. For these reasons, Movants' request for authority to effect a triangulated setoff fails. There is no mutuality, and no cause for relief from the automatic stay.

**Movants May Not Set Off The VAT Refunds
Against Pre-Petition Debts Owed By Delphi Automotive To
Offshore Because The VAT Refunds Are Post-Petition Items**

34. As Movants correctly observe, "[t]he timing requirement [of section 553] is interwoven, in part, with the mutuality requirement; the idea being that claims arising after the commencement of the case lack the requisite mutuality for setoff against prepetition debts because the postpetition trustee or debtor-in-possession occupies a different capacity from the prepetition debtor." Motion, at 5 (quoting *Reich v. Davidson Lumber Sales, Inc., Employees Retirement Plan,* 154 B.R. 324, 335 (D. Utah 1993)). *See also In re Genuity, Inc.*, 323 B.R. 79, 82 (Bankr. S.D.N.Y. 2005) (citing *Shopmen's Local 455 v. Kevin Steel Products, Inc.*, 519 F.2d 698, 704 (2d Cir. 1975)) (a pre-petition debtor and a debtor in possession are separate and distinct entities, which act in different capacities before and after a bankruptcy filing.).

11

35.     Here, the Debtors agree that the sums owed by Delphi Automotive (with one exception discussed below) are pre-petition debts.  However, Delphi Automotive's claims for payment of the VAT Refunds did not arise until postpetition.

36.     According to paragraph 12 of the Declaration of Jeffrey A. Prileson accompanying the Motion (the "Prileson Declaration"), "each of the value added tax refunds were [sic] received from the Mexican government after the Petition Date."  The Date[s] received listed for receipt of three of the four refunds from the Mexican government are 11/2/2005, 11/16/2005 and 1/4/2006.  Maquilas did not even apply for the fourth refund until post-petition, October 17, 2005, and it has not yet been received.

37.     Under Article VI.E. of the Shelter Agreement, the obligation to deliver the VAT Refunds to Delphi Automotive is triggered by the Mexican government's return of the refunds.  Consequently, Delphi Automotive could not demand return of the refunds from Offshore until after the VAT Refunds were received from the Mexican government – and that did not occur until after the Initial Filing Date.  Accordingly, this postpetition obligation may not be set off by the pre-petition debts of Delphi Automotive to Offshore.

**Two Items Listed In Paragraphs 10 And 11 Of**
**The Prileson Declaration Are Not Pre-Petition Debts.**

38.     The fourth purportedly pre-petition debt owing by Delphi Automotive to Offshore listed in paragraph 10 of the Prileson Declaration is a post-petition debt.  This fourth debt is a $6,780.31 debt allegedly owed by Delphi Automotive to Offshore pursuant to an invoice dated November 2, 2005 for "Customs Brokers [sic] incurred and paid by Maquilas on [sic] October."  The date for this item is the post-petition date of 11/2/2005.

39. Moreover, as the only detail provided with respect to this debt is that it reflects "Customs Brokers incurred and paid by Maquilas on October," it appears to relate back to a payment made by Maquilas after Delphi Automotive's petition date and, therefore, also be a post-petition debt in that respect.

40. In an informal document production by Offshore to Delphi Automotive subsequent to the filing of the Motion, Offshore characterizes the November 2, 2005 invoice as "Customs Broker pre-petition." *See* Exhibit B. This characterization is at odds with the Prileson Declaration description of "Customs Brokers [sic] incurred and paid by Maquilas on [sic] October." Offshore, not Delphi Automotive, is in possession of information concerning this claim. For purposes of the Motion, Offshore should be bound by the description in the Prileson Declaration, which was submitted under penalty of perjury, rather than counsel's unsworn characterization. This Court cannot, and should not, rely on those statements to find cause for relief from the automatic stay to permit this claim of setoff. *Cf. Ortiz v. Regan*, 749 F. Supp. 1254, 1263 (S.D.N.Y. 1990) ("assertions in a brief are not evidence of anything"); 10A Charles Alan Wright, Arthur R. Miller & Mary K. Kane, *Federal Practice & Procedure: Civil* § 2723 (2006) (statements in briefs are "self-serving and are not probative evidence of the existence or nonexistence of any factual issues").

41. Finally, the fifth purportedly pre-petition obligation owing from Offshore to Delphi Automotive listed in paragraph 11 of the Prileson Declaration constitutes a post-petition item. This item is a VAT Refund for which Maquilas did not apply to the Mexican government until October 17, 2005. Because the obligation to turn the refunds over to Delphi Automotive will not arise until after that refund is received, necessarily the obligation could not have been due before the tax return was

13

even filed by Maquilas, resulting in a post-petition obligation, which cannot be set off against the pre-petition claims asserted by Offshore.

43. Mutuality is lacking for those two items and they may not, in any circumstance, be subject to setoff.

## CONCLUSION

43. Based on the foregoing, Movants have not and cannot establish cause for relief from the automatic stay to allow them to effectuate the setoff they seek and the Motion should be denied in its entirety.

## Notice

44. Notice of this Objection has been provided in accordance with the Order under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing (i) Omnibus Hearing Dates, (ii) Certain Notice, Case Management, and Administrative Procedures, and (iii) Scheduling an Initial Case Conference in Accordance with Local Bankr. R. 1007-2(e), which was entered by this Court on October 14, 2005 (Docket No. 245). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

45. Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

**WHEREFORE**, the Debtors respectfully request that the Court enter an Order denying the Motion, together with such other and further relief as may be just and proper.

Dated:   New York, New York
         March 30, 2006

                                DELPHI CORPORATION, *et al.*
                                By their attorneys,
                                TOGUT, SEGAL & SEGAL LLP
                                By:

                                 /s/ Neil Berger
                                ALBERT TOGUT (AT-9759)
                                NEIL BERGER (NB-3599)
                                Members of the Firm
                                One Penn Plaza
                                New York, New York 10119
                                (212) 594-5000