# Exhibit E



Kevin M. Butler
Vice President
Human Resource Management

October 21, 2005

Mr. Richard Shoemaker
Vice President & Director
UAW General Motors Department
8000 East Jefferson Avenue
Detroit, Michigan 48214

Re:    Proposal for Modifications to UAW-Delphi Agreements Pursuant to
Section 1113 of the U.S. Bankruptcy Code, and for Modifications to
Retiree Welfare Benefits Under Section 1114 of the U.S. Bankruptcy
Code

Dear Mr. Shoemaker:

As you are aware, on October 8, 2005, Delphi Corporation filed a petition for reorganization under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. While we hoped to avoid this step, and worked very hard to obtain consensual agreements with our unions and General Motors ("GM") that would avoid the need for a bankruptcy filing, we were unable to do so.

As we discussed the past several weeks, Delphi cannot survive without significant modifications to the UAW-Delphi collective bargaining agreements. The Corporation needs to: (1) reduce wages and benefits to competitive levels; (2) eliminate job security provisions that require employment of persons unnecessary to the needs of the operations; (3) eliminate contract provisions which inhibit the enterprise's ability effectively to respond to market forces (i.e., restrictions on the sale, wind-down or consolidation of facilities); and (4) eliminate or substantially reduce legacy labor costs, including pension and OPEB, that the Corporation cannot afford.

A successful restructuring of Delphi's U.S. businesses will also require that we exit a number of product lines that are not core to our product portfolio and are losing money. Delphi can only succeed with value-added products customers are willing to buy at prices that enable covering the cost of development, manufacture, cost of capital, and return to investors. As we have discussed in this regard, critical factors in deciding whether, and when, to exit businesses will be our ability to negotiate a competitive wage and benefit package and addressing legacy costs impacting the facilities that make these products. Establishing a competitive wage and benefit structure may also, in some cases, allow Delphi to sell the product line and facilities, providing continued employment for your members.

During our discussions prior to the bankruptcy filing, Delphi provided proposed modifications and suggested balancing the changes with provisions that would mitigate the impact on affected employees. As we indicated, this would be possible only if substantially financed by GM. Unfortunately, Delphi has been unable to obtain an agreement with GM that would enable such economic consideration. In the context of a Chapter 11 reorganization, we cannot assume that GM will offer any support. Therefore, as I indicated in my letter to you of August 9, 2005, the modifications that Delphi must seek pursuant to Sections 1113 and 1114 of the U.S. Bankruptcy Code are more significant than previously discussed.

Mr. Richard Shoemaker, October 21, 2005 - Page 2

The specific modifications to the UAW-Delphi collective bargaining agreements and retiree welfare benefits that Delphi seeks, which are necessary to a successful reorganization, are set forth in the attached Term Sheet.  While these proposals should be self-explanatory, there are some areas in which we think that additional explanation would be appropriate.

**Financial Assumptions.**

The attached proposal is based on the most complete and reliable information currently available to the Corporation but, of necessity, includes a number of projections and assumptions.  If these projections and assumptions change during the course of the Chapter 11 proceeding, the Corporation will be required to revise its proposals accordingly.

- The proposals assume an implementation date of January 1, 2006.  To the extent that implementation is delayed, the Corporation will need to obtain additional cost reductions.

- The Corporation is in the process of reviewing its business plans and financial projections in light of the Chapter 11 filing, and expects to have an updated business plan by mid-December 2005.  If, as we anticipate, the Corporation's financial forecasts deteriorate further, then additional cost reductions may be necessary.

- The Corporation's current financial forecasts assume continued pricing and volume support from GM.  If GM reduces or eliminates that support, additional modifications will likely be necessary.

- As noted above, the Corporation's proposals assume that GM will not provide financial support to cushion the effect of job elimination, or to allow maintenance at current levels of pension and OPEB benefits.  If GM were willing to support such measures, the Corporation may be able to provide a higher level of benefits.

- Unlike our prior discussions, we have not constructed these proposals to meet a specific dollar value of cost reductions, but rather have set forth the terms that we believe are necessary to allow Delphi to compete successfully, and thus to avoid more closures of U.S. facilities than planned currently.

**Local Agreements.**

The enclosed Term Sheet seeks modifications to both the UAW National Agreement (including the Supplements, and any related appendices, memoranda, letters, minutes and understandings), and related provisions in the Local Agreements (and any related appendices, memoranda, letters, minutes and understandings) including those that would impair the Corporation's flexibility to implement a successful restructuring.  The Term Sheet provides that the National Agreements and Supplements would supersede any conflicting provisions of the Local Agreements.

If we reach agreement on a national level, the Local Agreements will be revised to reflect the provisions of the Term Sheet.  If we cannot reach agreement on a national level, the Corporation will file motions under Section 1113 to reject both the national and local agreements.

Mr. Richard Shoemaker, October 21, 2005 - Page 3

**Section 1114.**

In light of the UAW's agreement to represent UAW-represented retirees, the enclosed Term Sheet contains both the Corporation's proposals to modify the existing National and Local Agreements and Supplements under Section 1113 and its proposals to eliminate retiree welfare benefits for UAW-represented retirees under Section 1114. We anticipate that negotiations will be conducted simultaneously on both issues but will be happy to consider alternatives if you prefer.

**Pension.**

In the attached Term Sheet, we have proposed freezing the existing pension plan for UAW-represented employees, and modifications to some of the provisions of the UAW-National Agreements and Supplements affecting pension benefits. It may ultimately become necessary, however, for Delphi to terminate the plan and the Corporation therefore must reserve the right to do so. We will make this decision based on (1) updated financial projections based on the Chapter 11 filing; and (2) our ability to fund the plan in light of those projections and any support provided by GM.

**Relevant Information.**

As you are aware, we have previously provided the Union and its financial advisors with a significant amount of information which is relevant to its evaluation of the Term Sheet. To further assist you in evaluating the Term Sheet proposed, we will provide to you separately the following additional information, upon which Delphi based the current proposal:

- The Corporation's most recent business plan (which, as noted above, is in the process of being revised).

- A summary of the changes in financial projections since the business plan was developed.

- The Corporation's valuation of the proposed modifications. Please note that this valuation is based on the existing size of the work force, and does not take into account or seek to value sale, closure or consolidation of product lines for facilities. As the size of the work-force decreases, the "value" of the modifications will likewise decrease.

- A copy of the valuation model used for these calculations can be forwarded electronically at your request.

If you believe there is additional, relevant information necessary for the Union to evaluate the Corporation's proposal under Section 1113(b)(1) or Section 1114(f)(1) of the Bankruptcy Code, please contact me.

**Every Constituency Will Contribute.**

We recognize the hardship that this proposal imposes on your members. There is, however, no alternative. Unless Delphi can transform its U.S. operations, they will cease to exist, resulting in even greater hardship for employees, retirees and their families.

It is important to note, however, that every constituency of Delphi will share in the pain of this restructuring.

- The owners of Delphi – that is, Delphi's public share-holders whose stock had a total market value of approximately $12 billion only a few years ago – risk losing their entire investment.

Mr. Richard Shoemaker, October 21, 2005 - Page 4

- General Motors, our largest customer, has indicated it may assume as much as $12 billion in liabilities under its benefit guarantees.

- The creditors of Delphi, whose claims exceed $2 billion, are likely to be impaired from recovering the full value of their claims.

- Salaried employees, whose compensation and benefits are at or below competitive levels, will also be comparably impacted with regard to job loss.

**Further Discussions.**

While the attached Term Sheet represents the modifications that the Corporation believes are necessary for restructuring, the Corporation is open to considering all workable options and alternatives that will still provide the Corporation with the durable savings and competitive structure needed to exit Chapter 11 successfully.

We look forward to working closely and cooperatively with you to reach agreement on a new collective bargaining agreement in the coming days.  Please contact me at your earliest convenience so that we may immediately begin to meet and confer regarding the Section 1113 and 1114 Proposal contained in the attached Term Sheet.

Very truly yours,

Enclosures

cc:      All UAW Delphi Local Presidents
         All UAW Delphi Shop Chairpersons



Kevin M. Butler
Vice President
Human Resource Management

October 20, 2005

Mr. Henry Reichard
Chairman, IUE-CWA Automotive
  Conference Board
2360 Dorothy Lane
Suite 201
Dayton, OH  45439

> Re:    Proposal for Modifications to IUE-CWA-Delphi Agreements Pursuant to
>        Section 1113 of the U.S. Bankruptcy Code, and for Modifications to
>        Retiree Welfare Benefits Under Section 1114 of the U.S. Bankruptcy
>        Code

Dear Mr. Reichard:

As you are aware, on October 8, 2005, Delphi Corporation filed a petition for reorganization under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York.  While we hoped to avoid this step, and worked very hard to obtain consensual agreements with our unions and General Motors ("GM") that would avoid the need for a bankruptcy filing, we were unable to do so.

You are aware from our discussions the past several weeks that Delphi cannot survive without significant modifications to the IUE-CWA-Delphi collective bargaining agreements.  The Corporation needs to:  (1) reduce wages and benefits to competitive levels; (2) eliminate job security provisions that require employment of persons unnecessary to the needs of the operations; (3) eliminate contract provisions which inhibit the enterprise's ability effectively to respond to market forces (i.e., restrictions on the sale, wind-down or consolidation of facilities); and (4) eliminate or substantially reduce its legacy labor costs, including pension and OPEB, that the Corporation cannot afford.

A successful restructuring of Delphi's U.S. businesses will also require that we exit a number of product lines that are not core to our product portfolio and are losing money.  Delphi can only succeed with value-added products customers are willing to buy at prices that enable covering the cost of development, manufacture, cost of capital, and return to investors.  As we have discussed in this regard, critical factors in deciding whether, and when, to exit businesses will be our ability to negotiate a competitive wage and benefit package and addressing legacy costs impacting the facilities that make these products.  Establishing a competitive wage and benefit structure may also, in some cases, allow Delphi to sell the product line and facilities, providing continued employment for your members.

During our discussions prior to the bankruptcy filing, Delphi discussed possible modifications and suggested balancing the changes with provisions that would mitigate the impact on affected employees.  As we indicated, this would be possible only if substantially financed by GM.  Unfortunately, Delphi has been unable to obtain an agreement with GM that would enable such economic consideration.  In the context of a Chapter 11 reorganization, we cannot assume that GM will offer any support.  Therefore, as I indicated in my letter to you of August 10, 2005, the modifications that Delphi must seek pursuant to Sections 1113 and 1114 of the U.S. Bankruptcy Code are more significant than previously discussed.

Mr. Henry Reichard, October 20, 2005 - Page 2

The specific modifications to the IUE-CWA-Delphi collective bargaining agreements and retiree welfare benefits that Delphi seeks, which are necessary to a successful reorganization, are set forth in the attached Term Sheet. While these proposals should be self-explanatory, there are some areas in which we think that additional explanation would be appropriate.

**Financial Assumptions.**

The attached proposal is based on the most complete and reliable information currently available to the Corporation but, of necessity, includes a number of projections and assumptions. If these projections and assumptions change during the course of the Chapter 11 proceeding, the Corporation will be required to revise its proposals accordingly.

- The proposals assume an implementation date of January 1, 2006. To the extent that implementation is delayed, the Corporation will need to obtain additional cost reductions.

- The Corporation is in the process of reviewing its business plans and financial projections in light of the Chapter 11 filing, and expects to have an updated business plan by mid-December 2005. If, as we anticipate, the Corporation's financial forecasts deteriorate further, then additional cost reductions may be necessary.

- The Corporation's current financial forecasts assume continued pricing and volume support from GM. If GM reduces or eliminates that support, additional modifications will likely be necessary.

- As noted above, the Corporation's proposals assume that GM will not provide financial support to cushion the effect of job elimination, or to allow maintenance at current levels of pension and OPEB benefits. If GM were willing to support such measures, the Corporation may be able to provide a higher level of benefits.

- Unlike our prior discussions, we have not constructed these proposals to meet a specific dollar value of cost reductions, but rather have set forth the terms that we believe are necessary to allow Delphi to compete successfully, and thus to avoid more closures of U.S. facilities than planned currently.

**Local Agreements.**

The enclosed Term Sheet seeks modifications to both the IUE-CWA National Agreement (including the Supplements, and any related appendices, memoranda, letters, minutes and understandings), and related provisions in the Local Agreements (and any related appendices, memoranda, letters, minutes and understandings) including those that would impair the Corporation's flexibility to implement a successful restructuring. The Term Sheet provides that the National Agreements and Supplements would supersede any conflicting provisions of the Local Agreements.

If we reach agreement on a national level, the Local Agreements will be revised to reflect the provisions of the Term Sheet. If we cannot reach agreement on a national level, the Corporation will file motions under Section 1113 to reject both the national and local agreements.

**Section 1114.**

In light of the IUE-CWA's agreement to represent IUE-CWA-represented retirees, the enclosed Term Sheet contains both the Corporation's proposals to modify the existing National and Local Agreements and Supplements under Section 1113 and its proposals to eliminate retiree welfare benefits

Mr. Henry Reichard, October 20, 2005 - Page 3

for IUE-CWA-represented retirees under Section 1114. We anticipate that negotiations will be conducted simultaneously on both issues but will be happy to consider alternatives if you prefer.

**Pension.**

In the attached Term Sheet, we have proposed freezing the existing pension plan for IUE-CWA-represented employees, and modifications to some of the provisions of the IUE-CWA National Agreements and Supplements affecting pension benefits. It may ultimately become necessary, however, for Delphi to terminate the plan and the Corporation therefore must reserve the right to do so. We will make this decision based on (1) updated financial projections based on the Chapter 11 filing; and (2) our ability to fund the plan in light of those projections and any support provided by GM.

**Relevant Information.**

As you are aware, we have previously provided the Union and its financial advisors with a significant amount of information which is relevant to its evaluation of the Term Sheet. To further assist you in evaluating the Term Sheet proposed, we will provide to you separately the following additional information, upon which Delphi based the current proposal:

- The Corporation's most recent business plan (which, as noted above, is in the process of being revised).

- A summary of the changes in financial projections since the business plan was developed.

- The Corporation's valuation of the proposed modifications. Please note that this valuation is based on the existing size of the work force, and does not take into account or seek to value sale, closure or consolidation of product lines for facilities. As the size of the work-force decreases, the "value" of the modifications will likewise decrease.

- A copy of the valuation model used for these calculations can be forwarded electronically at your request.

If you believe there is additional, relevant information necessary for the Union to evaluate the Corporation's proposal under Section 1113(b)(1) or Section 1114(f)(1) of the Bankruptcy Code, please contact me.

**Every Constituency Will Contribute.**

We fully recognize the hardship that this proposal imposes on your members. There is, however, no alternative. Unless Delphi can transform its U.S. operations, they will cease to exist, resulting in even greater hardship for employees, retirees and their families.

It is important for your membership to understand, however, that every constituency of Delphi will share in the pain of this restructuring.

- The owners of Delphi – that is, Delphi's public share-holders whose stock had a total market value of approximately $12 billion only a few years ago – risk losing their entire investment.

- General Motors, our largest customer, has indicated it may assume as much as $12 billion in liabilities under its benefit guarantees.

Mr. Henry Reichard, October 20, 2005 - Page 4

- The creditors of Delphi, whose claims exceed $2 billion, are likely to be impaired from recovering the full value of their claims.

- Salaried employees, whose compensation and benefits are at or below competitive levels, will also be comparably impacted with regard to job loss.

**Further Discussions.**

While the attached Term Sheet represents the modifications that the Corporation believes are necessary for restructuring, the Corporation is open to considering all workable options and alternatives that will still provide the Corporation with the durable savings and competitive structure needed to exit Chapter 11 successfully.

We look forward to working closely and cooperatively with you to reach agreement on a new collective bargaining agreement in the coming days. Please contact me at your earliest convenience so that we may immediately begin to meet and confer regarding the Section 1113 and 1114 Proposal contained in the attached Term Sheet.

Very truly yours,

Enclosures

cc:    James D. Clark, President, International Union IUE-CWA
       All IUE-CWA-Delphi Local Presidents
       All IUE-CWA Delphi Shop Chairpersons



Kevin M. Butler
Vice President
Human Resource Management

October 21, 2005

Mr. Dennis Bingham
President, Local Union 87
United Steel Workers
21 Abbey Avenue
Dayton, OH  45417

      Re:    Proposal for Modifications to USW-Delphi Agreements Pursuant to
              Section 1113 of the U.S. Bankruptcy Code, and for Modifications to
              Retiree Welfare Benefits Under Section 1114 of the U.S. Bankruptcy
              Code

Dear Mr. Bingham:

As you are aware, on October 8, 2005, Delphi Corporation filed a petition for reorganization under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York.  While we hoped to avoid this step, and worked very hard to obtain consensual agreements with our unions and General Motors ("GM") that would avoid the need for a bankruptcy filing, we were unable to do so.

As we discussed the past several weeks that Delphi cannot survive without significant modifications to the USW-Delphi collective bargaining agreements.  The Corporation needs to:  (1) reduce wages and benefits to competitive levels; (2) eliminate job security provisions that require employment of persons unnecessary to the needs of the operations; (3) eliminate contract provisions which inhibit the enterprise's ability effectively to respond to market forces (i.e., restrictions on the sale, wind-down or consolidation of facilities); and (4) eliminate or substantially reduce legacy labor costs, including pension and OPEB, that the Corporation cannot afford.

A successful restructuring of Delphi's U.S. businesses will also require that we exit a number of product lines that are not core to our product portfolio and are losing money.  Delphi can only succeed with value-added products customers are willing to buy at prices that enable covering the cost of development, manufacture, cost of capital, and return to investors.  As we have discussed in this regard, critical factors in deciding whether, and when, to exit businesses will be our ability to negotiate a competitive wage and benefit package and addressing legacy costs impacting the facilities that make these products.  Establishing a competitive wage and benefit structure may also, in some cases, allow Delphi to sell the product line and facilities, providing continued employment for your members.

During our discussions prior to the bankruptcy filing, Delphi provided proposed modifications and suggested balancing the changes with provisions that would mitigate the impact on affected employees.  As we indicated, this would be possible only if substantially financed by GM.  Unfortunately, Delphi has been unable to obtain an agreement with GM that would enable such economic consideration.  In the context of a Chapter 11 reorganization, we cannot assume that GM will offer any support.  Therefore, as I indicated in my letter to you of August 10, 2005, the modifications that Delphi must seek pursuant to Sections 1113 and 1114 of the U.S. Bankruptcy Code are more significant than previously discussed.

Mr. Dennis Bingham, October 21, 2005 - Page 2

The specific modifications to the USW-Delphi collective bargaining agreements and retiree welfare benefits that Delphi seeks, which are necessary to a successful reorganization, are set forth in the attached Term Sheet. While these proposals should be self-explanatory, there are some areas in which we think that additional explanation would be appropriate.

**Financial Assumptions.**

The attached proposal is based on the most complete and reliable information currently available to the Corporation but, of necessity, includes a number of projections and assumptions. If these projections and assumptions change during the course of the Chapter 11 proceeding, the Corporation will be required to revise its proposals accordingly.

- The proposals assume an implementation date of January 1, 2006. To the extent that implementation is delayed, the Corporation will need to obtain additional cost reductions.

- The Corporation is in the process of reviewing its business plans and financial projections in light of the Chapter 11 filing, and expects to have an updated business plan by mid-December 2005. If, as we anticipate, the Corporation's financial forecasts deteriorate further, then additional cost reductions may be necessary.

- The Corporation's current financial forecasts assume continued pricing and volume support from GM. If GM reduces or eliminates that support, additional modifications will likely be necessary.

- As noted above, the Corporation's proposals assume that GM will not provide financial support to cushion the effect of job elimination, or to allow maintenance at current levels of pension and OPEB benefits. If GM were willing to support such measures, the Corporation may be able to provide a higher level of benefits.

- Unlike our prior discussions, we have not constructed these proposals to meet a specific dollar value of cost reductions, but rather have set forth the terms that we believe are necessary to allow Delphi to compete successfully, and thus to avoid more closures of U.S. facilities than planned currently.

**Local Agreements.**

The enclosed Term Sheet seeks modifications to both the USW Master Agreement (including the Supplements, and any related appendices, memoranda, letters, minutes and understandings), and related provisions in the Local Agreements (and any related appendices, memoranda, letters, minutes and understandings) including those that would impair the Corporation's flexibility to implement a successful restructuring. The Term Sheet provides that the Master Agreements and Supplements would supersede any conflicting provisions of the Local Agreements.

If we reach agreement on a national level, the Local Agreements will be revised to reflect the provisions of the Term Sheet. If we cannot reach agreement on a national level, the Corporation will file motions under Section 1113 to reject both the master and local agreements.

Mr. Dennis Bingham, October 21, 2005 - Page 3

**Section 1114.**

In light of the USW's agreement to represent USW-represented retirees, the enclosed Term Sheet contains both the Corporation's proposals to modify the existing Master and Local Agreements and Supplements under Section 1113 and its proposals to eliminate retiree welfare benefits for USW-represented retirees under Section 1114. We anticipate that negotiations will be conducted simultaneously on both issues but will be happy to consider alternatives if you prefer.

**Pension.**

In the attached Term Sheet, we have proposed freezing the existing pension plan for USW-represented employees, and modifications to some of the provisions of the USW-Master Agreements and Supplements affecting pension benefits. It may ultimately become necessary, however, for Delphi to terminate the plan and the Corporation therefore must reserve the right to do so. We will make this decision based on (1) updated financial projections based on the Chapter 11 filing; and (2) our ability to fund the plan in light of those projections and any support provided by GM.

**Relevant Information.**

As you are aware, we have previously provided the Union and its financial advisors with a significant amount of information which is relevant to its evaluation of the Term Sheet. To further assist you in evaluating the Term Sheet proposed, we will provide to you separately the following additional information, upon which Delphi based the current proposal:

- The Corporation's most recent business plan (which, as noted above, is in the process of being revised).

- A summary of the changes in financial projections since the business plan was developed.

- The Corporation's valuation of the proposed modifications. Please note that this valuation is based on the existing size of the work force, and does not take into account or seek to value sale, closure or consolidation of product lines for facilities. As the size of the work-force decreases, the "value" of the modifications will likewise decrease.

- A copy of the valuation model used for these calculations can be forwarded electronically at your request.

If you believe there is additional, relevant information necessary for the Union to evaluate the Corporation's proposal under Section 1113(b)(1) or Section 1114(f)(1) of the Bankruptcy Code, please contact me.

**Every Constituency Will Contribute.**

We recognize the hardship that this proposal imposes on your members. There is, however, no alternative. Unless Delphi can transform its U.S. operations, they will cease to exist, resulting in even greater hardship for employees, retirees and their families.

It is important to note, however, that every constituency of Delphi will share in the pain of this restructuring.

- The owners of Delphi – that is, Delphi's public share-holders whose stock had a total market value of approximately $12 billion only a few years ago – risk losing their entire investment.

Mr. Dennis Bingham, October 21, 2005 - Page 4

- General Motors, our largest customer, has indicated it may assume as much as $12 billion in liabilities under its benefit guarantees.

- The creditors of Delphi, whose claims exceed $2 billion, are likely to be impaired from recovering the full value of their claims.

- Salaried employees, whose compensation and benefits are at or below competitive levels, will also be comparably impacted with regard to job loss.

**Further Discussions.**

While the attached Term Sheet represents the modifications that the Corporation believes are necessary for restructuring, the Corporation is open to considering all workable options and alternatives that will still provide the Corporation with the durable savings and competitive structure needed to exit Chapter 11 successfully.

We look forward to working closely and cooperatively with you to reach agreement on a new collective bargaining agreement in the coming days. Please contact me at your earliest convenience so that we may immediately begin to meet and confer regarding the Section 1113 and 1114 Proposal contained in the attached Term Sheet.

Very truly yours,

Enclosures

cc:    Leo W. Gerard, President, USWA International
        Gary Adams, Shop Chairman USW Local 87L



**Kevin M. Butler**
Vice President
Human Resource Management

October 21, 2005

Mr. Robert V. Thayer
General Vice President, Headquarters
International Association of Machinists
and Aerospace Workers
9000 Machinists Place
Upper Marlboro, Maryland 20772-2687

     Re:    Proposal for Modifications to IAM-Delphi Agreements Pursuant to
           Section 1113 of the U.S. Bankruptcy Code, and for Modifications to
           Retiree Welfare Benefits Under Section 1114 of the U.S. Bankruptcy
           Code

Dear Mr. Thayer:

     As you may know, on October 8, 2005, Delphi Corporation filed a petition for reorganization under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. While we hoped to avoid this step, and worked very hard to obtain consensual agreements with our major unions and General Motors ("GM") that would avoid the need for a bankruptcy filing, we were unable to do so.

     It is clear to Delphi Corporation that Delphi cannot survive without significant modifications to our collective bargaining agreements, including the IAM-Delphi collective bargaining agreements. The Corporation needs to: (1) reduce wages and benefits to competitive levels; (2) eliminate job security provisions that require employment of persons unnecessary to the needs of the operations; (3) eliminate contract provisions which inhibit the enterprise's ability effectively to respond to market forces (i.e., restrictions on the sale, wind-down or consolidation of facilities); and (4) eliminate or substantially reduce its legacy labor costs, including pension and OPEB, that the Corporation cannot afford.

     A successful restructuring of Delphi's U.S. businesses will also require that we exit a number of product lines that are not core to our product portfolio and are losing money. Delphi can only succeed with value-added products customers are willing to buy at prices that enable covering the cost of development, manufacture, cost of capital, and return to investors. Critical factors in deciding whether, and when, to exit businesses will be our ability to negotiate a competitive wage and benefit package and address legacy costs impacting the facilities that make these products. Establishing a competitive wage and benefit structure may also, in some cases, allow Delphi to sell the product line and facilities, providing continued employment for your members.

     Delphi's ability to balance the changes with provisions that would mitigate the impact on affected employees would be possible only if substantially financed by GM. Unfortunately, Delphi has been unable to obtain an agreement with GM that would enable such economic consideration. In the context of a Chapter 11 reorganization, we cannot assume that GM will offer any support.

     The specific modifications to the IAM-Delphi collective bargaining agreements and retiree welfare benefits that Delphi seeks, which are necessary to a successful reorganization, are set forth in the attached Term Sheet. While these proposals should be self-explanatory, there are some areas in which we think that additional explanation would be appropriate.

Mr. Robert V. Thayer, October 21, 2005 - Page 2

**Financial Assumptions.**

The attached proposal is based on the most complete and reliable information currently available to the Corporation but, of necessity, includes a number of projections and assumptions. If these projections and assumptions change during the course of the Chapter 11 proceeding, the Corporation will be required to revise its proposals accordingly.

- The proposals assume an implementation date of January 1, 2006. To the extent that implementation is delayed, the Corporation will need to obtain additional cost reductions.

- The Corporation is in the process of reviewing its business plans and financial projections in light of the Chapter 11 filing, and expects to have an updated business plan by mid-December 2005. If, as we anticipate, the Corporation's financial forecasts deteriorate further, then additional cost reductions may be necessary.

- The Corporation's current financial forecasts assume continued pricing and volume support from GM. If GM reduces or eliminates that support, additional modifications will likely be necessary.

- As noted above, the Corporation's proposals assume that GM will not provide financial support to cushion the effect of job elimination, or to allow maintenance at current levels of pension and OPEB benefits. If GM were willing to support such measures, the Corporation may be able to provide a higher level of benefits.

- We have not constructed these proposals to meet a specific dollar value of cost reductions, but rather have set forth the terms that we believe are necessary to allow Delphi to compete successfully, and thus to avoid more closures of U.S. facilities than planned currently.

**Collective Bargaining Agreements.**

The enclosed Term Sheet seeks modifications to the IAM-Delphi collective bargaining agreements (and any related supplements, appendices, memoranda, letters, minutes and understandings) including those that would impair the Corporation's flexibility to implement a successful restructuring.

If we cannot reach agreement, the Corporation will file motions under Section 1113 to reject the IAM-Delphi collective bargaining agreements.

**Section 1114.**

In light of the IAM's agreement to represent IAM-represented retirees, the enclosed Term Sheet contains both the Corporation's proposals to modify the existing agreements under Section 1113 and its proposals to eliminate retiree welfare benefits for IAM-represented retirees under Section 1114. We anticipate that negotiations will be conducted simultaneously on both issues but will be happy to consider alternatives if you prefer.

Mr. Robert V. Thayer, October 21, 2005 - Page 3

**Pension.**

In the attached Term Sheet, we have proposed freezing the existing pension plan for IAM-represented employees, and modifications to some of the provisions of the IAM-Delphi collective bargaining agreements affecting pension benefits. It may ultimately become necessary, however, for Delphi to terminate the plan and the Corporation therefore must reserve the right to do so. We will make this decision based on (1) updated financial projections based on the Chapter 11 filing; and (2) our ability to fund the plan in light of those projections and any support provided by GM.

**Relevant Information.**

To assist you in evaluating the Term Sheet proposed, we will provide to you separately the following additional information, upon which Delphi based the current proposal:

- The Corporation's most recent business plan (which, as noted above, is in the process of being revised).

- A summary of the changes in financial projections since the business plan was developed.

- The Corporation's valuation of the proposed modifications. Please note that this valuation is based on the existing size of the work force, and does not take into account or seek to value sale, closure or consolidation of product lines for facilities. As the size of the work-force decreases, the "value" of the modifications will likewise decrease.

- A copy of the valuation model used for these calculations can be forwarded electronically at your request.

If you believe there is additional, relevant information necessary for the Union to evaluate the Corporation's proposal under Section 1113(b)(1) or Section 1114(f)(1) of the Bankruptcy Code, please contact me.

**Every Constituency Will Contribute.**

We fully recognize the hardship that this proposal imposes on your members. There is, however, no alternative. Unless Delphi can transform its U.S. operations, they will cease to exist, resulting in even greater hardship for employees, retirees and their families.

It is important for your membership to understand, however, that every constituency of Delphi will share in the pain of this restructuring.

- The owners of Delphi – that is, Delphi's public share-holders whose stock had a total market value of approximately $12 billion only a few years ago – risk losing their entire investment.

- General Motors, our largest customer, has indicated it may assume as much as $12 billion in liabilities under its benefit guarantees.

- The creditors of Delphi, whose claims exceed $2 billion, are likely to be impaired from recovering the full value of their claims.

- Salaried employees, whose compensation and benefits are at or below competitive levels, will also be comparably impacted with regard to job loss.

Mr. Robert V. Thayer, October 21, 2005 - Page 4

**Further Discussions.**

While the attached Term Sheet represents the modifications that the Corporation believes are necessary for restructuring, the Corporation is open to considering all workable options and alternatives that will still provide the Corporation with the durable savings and competitive structure needed to exit Chapter 11 successfully.

We look forward to working closely and cooperatively with you to reach agreement on a new collective bargaining agreement in the coming days.  Please contact me at your earliest convenience so that we may immediately begin to meet and confer regarding the Section 1113 and 1114 Proposal contained in the attached Term Sheet.

Very truly yours,

Enclosures

cc:      All IAM Delphi Shop Chairpersons



Kevin M. Butler
Vice President
Human Resource Management

October 21, 2005

Mr. Edwin D. Hill
President
International Brotherhood of Electrical Workers
900 Seventh Street, N.W.
Washington, DC 20001

> Re:    Proposal for Modifications to IBEW-Delphi Agreements Pursuant to
> Section 1113 of the U.S. Bankruptcy Code, and for Modifications to
> Retiree Welfare Benefits Under Section 1114 of the U.S. Bankruptcy
> Code

Dear Mr. Hill:

As you may know, on October 8, 2005, Delphi Corporation filed a petition for reorganization under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. While we hoped to avoid this step, and worked very hard to obtain consensual agreements with our major unions and General Motors ("GM") that would avoid the need for a bankruptcy filing, we were unable to do so.

It is clear to Delphi Corporation that Delphi cannot survive without significant modifications to our collective bargaining agreements, including the IBEW-Delphi collective bargaining agreements. The Corporation needs to: (1) reduce wages and benefits to competitive levels; (2) eliminate job security provisions that require employment of persons unnecessary to the needs of the operations; (3) eliminate contract provisions which inhibit the enterprise's ability effectively to respond to market forces (i.e., restrictions on the sale, wind-down or consolidation of facilities); and (4) eliminate or substantially reduce its legacy labor costs, including pension and OPEB, that the Corporation cannot afford.

A successful restructuring of Delphi's U.S. businesses will also require that we exit a number of product lines that are not core to our product portfolio and are losing money. Delphi can only succeed with value-added products customers are willing to buy at prices that enable covering the cost of development, manufacture, cost of capital, and return to investors. Critical factors in deciding whether, and when, to exit businesses will be our ability to negotiate a competitive wage and benefit package and address legacy costs impacting the facilities that make these products. Establishing a competitive wage and benefit structure may also, in some cases, allow Delphi to sell the product line and facilities, providing continued employment for your members.

Delphi's ability to balance the changes with provisions that would mitigate the impact on affected employees would be possible only if substantially financed by GM. Unfortunately, Delphi has been unable to obtain an agreement with GM that would enable such economic consideration. In the context of a Chapter 11 reorganization, we cannot assume that GM will offer any support.

The specific modifications to the IBEW-Delphi collective bargaining agreements and retiree welfare benefits that Delphi seeks, which are necessary to a successful reorganization, are set forth in the attached Term Sheet. While these proposals should be self-explanatory, there are some areas in which we think that additional explanation would be appropriate.

Mr. Edwin D. Hill, October 21, 2005 - Page 2

**Financial Assumptions.**

The attached proposal is based on the most complete and reliable information currently available to the Corporation but, of necessity, includes a number of projections and assumptions. If these projections and assumptions change during the course of the Chapter 11 proceeding, the Corporation will be required to revise its proposals accordingly.

- The proposals assume an implementation date of January 1, 2006. To the extent that implementation is delayed, the Corporation will need to obtain additional cost reductions.

- The Corporation is in the process of reviewing its business plans and financial projections in light of the Chapter 11 filing, and expects to have an updated business plan by mid-December 2005. If, as we anticipate, the Corporation's financial forecasts deteriorate further, then additional cost reductions may be necessary.

- The Corporation's current financial forecasts assume continued pricing and volume support from GM. If GM reduces or eliminates that support, additional modifications will likely be necessary.

- As noted above, the Corporation's proposals assume that GM will not provide financial support to cushion the effect of job elimination, or to allow maintenance at current levels of pension and OPEB benefits. If GM were willing to support such measures, the Corporation may be able to provide a higher level of benefits.

- We have not constructed these proposals to meet a specific dollar value of cost reductions, but rather have set forth the terms that we believe are necessary to allow Delphi to compete successfully, and thus to avoid more closures of U.S. facilities than planned currently.

**Collective Bargaining Agreements.**

The enclosed Term Sheet seeks modifications to the IBEW-Delphi collective bargaining agreements (and any related supplements, appendices, memoranda, letters, minutes and understandings) including those that would impair the Corporation's flexibility to implement a successful restructuring.

If we cannot reach agreement, the Corporation will file motions under Section 1113 to reject the IBEW-Delphi collective bargaining agreements.

**Section 1114.**

In light of the IBEW's agreement to represent IBEW-represented retirees, the enclosed Term Sheet contains both the Corporation's proposals to modify the existing agreements under Section 1113 and its proposals to eliminate retiree welfare benefits for IBEW-represented retirees under Section 1114. We anticipate that negotiations will be conducted simultaneously on both issues but will be happy to consider alternatives if you prefer.

Mr. Edwin D. Hill, October 21, 2005 - Page 3

**Pension.**

In the attached Term Sheet, we have proposed freezing the existing pension plan for IBEW-represented employees, and modifications to some of the provisions of the IBEW-Delphi collective bargaining agreements affecting pension benefits.  It may ultimately become necessary, however, for Delphi to terminate the plan and the Corporation therefore must reserve the right to do so.  We will make this decision based on (1) updated financial projections based on the Chapter 11 filing; and (2) our ability to fund the plan in light of those projections and any support provided by GM.

**Relevant Information.**

To assist you in evaluating the Term Sheet proposed, we will provide to you separately the following additional information, upon which Delphi based the current proposal:

- The Corporation's most recent business plan (which, as noted above, is in the process of being revised).

- A summary of the changes in financial projections since the business plan was developed.

- The Corporation's valuation of the proposed modifications.  Please note that this valuation is based on the existing size of the work force, and does not take into account or seek to value sale, closure or consolidation of product lines for facilities.  As the size of the work-force decreases, the "value" of the modifications will likewise decrease.

- A copy of the valuation model used for these calculations can be forwarded electronically at your request.

If you believe there is additional, relevant information necessary for the Union to evaluate the Corporation's proposal under Section 1113(b)(1) or Section 1114(f)(1) of the Bankruptcy Code, please contact me.

**Every Constituency Will Contribute.**

We fully recognize the hardship that this proposal imposes on your members.  There is, however, no alternative.  Unless Delphi can transform its U.S. operations, they will cease to exist, resulting in even greater hardship for employees, retirees and their families.

It is important for your membership to understand, however, that every constituency of Delphi will share in the pain of this restructuring.

- The owners of Delphi – that is, Delphi's public share-holders whose stock had a total market value of approximately $12 billion only a few years ago – risk losing their entire investment.

- General Motors, our largest customer, has indicated it may assume as much as $12 billion in liabilities under its benefit guarantees.

- The creditors of Delphi, whose claims exceed $2 billion, are likely to be impaired from recovering the full value of their claims.

Mr. Edwin D. Hill, October 21, 2005 - Page 4

- Salaried employees, whose compensation and benefits are at or below competitive levels, will also be comparably impacted with regard to job loss.

**Further Discussions.**

While the attached Term Sheet represents the modifications that the Corporation believes are necessary for restructuring, the Corporation is open to considering all workable options and alternatives that will still provide the Corporation with the durable savings and competitive structure needed to exit Chapter 11 successfully.

We look forward to working closely and cooperatively with you to reach agreement on a new collective bargaining agreement in the coming days.  Please contact me at your earliest convenience so that we may immediately begin to meet and confer regarding the Section 1113 and 1114 Proposal contained in the attached Term Sheet.

Very truly yours,

Enclosures

cc:    All IBEW Delphi Local Presidents
       All IBEW Delphi Shop Chairpersons



Kevin M. Butler
Vice President
Human Resource Management

October 21, 2005

Mr. Vincent J. Giblin
President
International Union of Operating Engineers
1125 17th Street, N.W.
Washington, DC 20036

> Re:    Proposal for Modifications to IUOE-Delphi Agreements Pursuant to
> Section 1113 of the U.S. Bankruptcy Code, and for Modifications to
> Retiree Welfare Benefits Under Section 1114 of the U.S. Bankruptcy
> Code

Dear Mr. Giblin:

As you may know, on October 8, 2005, Delphi Corporation filed a petition for reorganization under Chapter 11 in the United States Bankruptcy Court for the Southern District of New York. While we hoped to avoid this step, and worked very hard to obtain consensual agreements with our major unions and General Motors ("GM") that would avoid the need for a bankruptcy filing, we were unable to do so.

It is clear to Delphi Corporation that Delphi cannot survive without significant modifications to our collective bargaining agreements, including the IUOE-Delphi collective bargaining agreements. The Corporation needs to: (1) reduce wages and benefits to competitive levels; (2) eliminate job security provisions that require employment of persons unnecessary to the needs of the operations; (3) eliminate contract provisions which inhibit the enterprise's ability effectively to respond to market forces (i.e., restrictions on the sale, wind-down or consolidation of facilities); and (4) eliminate or substantially reduce its legacy labor costs, including pension and OPEB, that the Corporation cannot afford.

A successful restructuring of Delphi's U.S. businesses will also require that we exit a number of product lines that are not core to our product portfolio and are losing money. Delphi can only succeed with value-added products customers are willing to buy at prices that enable covering the cost of development, manufacture, cost of capital, and return to investors. Critical factors in deciding whether, and when, to exit businesses will be our ability to negotiate a competitive wage and benefit package and address legacy costs impacting the facilities that make these products. Establishing a competitive wage and benefit structure may also, in some cases, allow Delphi to sell the product line and facilities, providing continued employment for your members.

Delphi's ability to balance the changes with provisions that would mitigate the impact on affected employees would be possible only if substantially financed by GM. Unfortunately, Delphi has been unable to obtain an agreement with GM that would enable such economic consideration. In the context of a Chapter 11 reorganization, we cannot assume that GM will offer any support.

The specific modifications to the IUOE-Delphi collective bargaining agreements and retiree welfare benefits that Delphi seeks, which are necessary to a successful reorganization, are set forth in the attached Term Sheet. While these proposals should be self-explanatory, there are some areas in which we think that additional explanation would be appropriate.

Mr. Vincent J. Giblin, October 21, 2005 - Page 2

### Financial Assumptions.

The attached proposal is based on the most complete and reliable information currently available to the Corporation but, of necessity, includes a number of projections and assumptions. If these projections and assumptions change during the course of the Chapter 11 proceeding, the Corporation will be required to revise its proposals accordingly.

- The proposals assume an implementation date of January 1, 2006. To the extent that implementation is delayed, the Corporation will need to obtain additional cost reductions.

- The Corporation is in the process of reviewing its business plans and financial projections in light of the Chapter 11 filing, and expects to have an updated business plan by mid-December 2005. If, as we anticipate, the Corporation's financial forecasts deteriorate further, then additional cost reductions may be necessary.

- The Corporation's current financial forecasts assume continued pricing and volume support from GM. If GM reduces or eliminates that support, additional modifications will likely be necessary.

- As noted above, the Corporation's proposals assume that GM will not provide financial support to cushion the effect of job elimination, or to allow maintenance at current levels of pension and OPEB benefits. If GM were willing to support such measures, the Corporation may be able to provide a higher level of benefits.

- We have not constructed these proposals to meet a specific dollar value of cost reductions, but rather have set forth the terms that we believe are necessary to allow Delphi to compete successfully, and thus to avoid more closures of U.S. facilities than planned currently.

### Collective Bargaining Agreements.

The enclosed Term Sheet seeks modifications to the IUOE-Delphi collective bargaining agreements (and any related supplements, appendices, memoranda, letters, minutes and understandings) including those that would impair the Corporation's flexibility to implement a successful restructuring.

If we cannot reach agreement, the Corporation will file motions under Section 1113 to reject the IUOE-Delphi collective bargaining agreements.

### Section 1114.

In light of the IUOE's agreement to represent IUOE-represented retirees, the enclosed Term Sheet contains both the Corporation's proposals to modify the existing agreements under Section 1113 and its proposals to eliminate retiree welfare benefits for IUOE-represented retirees under Section 1114. We anticipate that negotiations will be conducted simultaneously on both issues but will be happy to consider alternatives if you prefer.

Mr. Vincent J. Giblin, October 21, 2005 - Page 3

**Pension.**

In the attached Term Sheet, we have proposed freezing the existing pension plan for IUOE-represented employees, and modifications to some of the provisions of the IUOE-Delphi collective bargaining agreements affecting pension benefits. It may ultimately become necessary, however, for Delphi to terminate the plan and the Corporation therefore must reserve the right to do so. We will make this decision based on (1) updated financial projections based on the Chapter 11 filing; and (2) our ability to fund the plan in light of those projections and any support provided by GM.

**Relevant Information.**

To assist you in evaluating the Term Sheet proposed, we will provide to you separately the following additional information, upon which Delphi based the current proposal:

- The Corporation's most recent business plan (which, as noted above, is in the process of being revised).

- A summary of the changes in financial projections since the business plan was developed.

- The Corporation's valuation of the proposed modifications. Please note that this valuation is based on the existing size of the work force, and does not take into account or seek to value sale, closure or consolidation of product lines for facilities. As the size of the work-force decreases, the "value" of the modifications will likewise decrease.

- A copy of the valuation model used for these calculations can be forwarded electronically at your request.

If you believe there is additional, relevant information necessary for the Union to evaluate the Corporation's proposal under Section 1113(b)(1) or Section 1114(f)(1) of the Bankruptcy Code, please contact me.

**Every Constituency Will Contribute.**

We fully recognize the hardship that this proposal imposes on your members. There is, however, no alternative. Unless Delphi can transform its U.S. operations, they will cease to exist, resulting in even greater hardship for employees, retirees and their families.

It is important for your membership to understand, however, that every constituency of Delphi will share in the pain of this restructuring.

- The owners of Delphi – that is, Delphi's public share-holders whose stock had a total market value of approximately $12 billion only a few years ago – risk losing their entire investment.

- General Motors, our largest customer, has indicated it may assume as much as $12 billion in liabilities under its benefit guarantees.

- The creditors of Delphi, whose claims exceed $2 billion, are likely to be impaired from recovering the full value of their claims.

- Salaried employees, whose compensation and benefits are at or below competitive levels, will also be comparably impacted with regard to job loss.

Mr. Vincent J. Giblin, October 21, 2005 - Page 4

**Further Discussions.**

While the attached Term Sheet represents the modifications that the Corporation believes are necessary for restructuring, the Corporation is open to considering all workable options and alternatives that will still provide the Corporation with the durable savings and competitive structure needed to exit Chapter 11 successfully.

We look forward to working closely and cooperatively with you to reach agreement on a new collective bargaining agreement in the coming days. Please contact me at your earliest convenience so that we may immediately begin to meet and confer regarding the Section 1113 and 1114 Proposal contained in the attached Term Sheet.

Very truly yours,

Enclosures

cc:    All IUOE Delphi Shop Chairpersons