Hearing Date and Time: May 9, 2006 at 10:00 a.m.
Objection Deadline: April 21, 2006 at 4:00 p.m.

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>333 West Wacker Drive, Suite 2100<br>Chicago, Illinois 60606<br>(312) 407-0700<br>John Wm. Butler, Jr. (JB 4711)<br>John K. Lyons (JL 4951)<br>Ron E. Meisler (RM 3026) | O'MELVENY & MYERS LLP<br>1625 Eye Street, NW<br>Washington, DC 20006<br>(202) 383-5300<br>Robert A. Siegel (RS 0922)<br>Tom A. Jerman<br>Rachel S. Janger<br>Jessica Kastin (JK 2288) |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>Four Times Square<br>New York, New York 10036<br>(212) 735-3000<br>Kayalyn A. Marafioti (KM 9632)<br>Thomas J. Matz (TM 5986) | GROOM LAW GROUP, CHTD<br>1701 Pennsylvania Avenue, NW<br>Washington, DC 20006<br>(202) 857-0620<br>Lonie A. Hassel |

Attorneys for Delphi Corporation, et al.,
   Debtor and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                               :
     In re                                     :    Chapter 11
                                               :
DELPHI CORPORATION, et al.,                    :    Case No. 05-44481 (RDD)
                                               :
                    Debtors.                   :    (Jointly Administered)
                                               :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DECLARATION OF BERNARD J. QUICK
IN SUPPORT OF DELPHI'S MOTION FOR AUTHORITY TO REJECT
COLLECTIVE BARGAINING AGREEMENTS UNDER 11 U.S.C. § 1113(c) AND
MODIFY RETIREE WELFARE BENEFITS UNDER 11 U.S.C. § 1114(g)

I, Bernard J. Quick, declare and state as follows:

1.  I am employed by Delphi Corporation ("Delphi") as a Director of Labor Relations. I joined Delphi in November 1998 in my current position. Prior to joining Delphi, I was employed by General Motors Corporation ("GM"). I began my employment with GM in April 1965 and served in a variety of personnel and labor relations positions. My last position with GM was as Assistant Director of Labor Relations.

2.  In my current position with Delphi, I have, among other responsibilities, the role of negotiating, or overseeing the negotiation of, Delphi's National and Local Agreements with the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers – Communications Workers of America (the "IUE-CWA"), and the United Steelworkers of America, Local 87 (the "USW").

3.  I submit this declaration in support of Delphi's Motion For Authority to Reject Collective Bargaining Agreements Under 11 U.S.C. § 1113(c) And Modify Hourly Retiree Benefits Under 11 U.S.C. § 1114(g) (the "Motion"). Any capitalized terms not expressly defined herein are intended to have the meanings ascribed to them in the Motion or accompanying memorandum of law, and references to Delphi herein include the Debtors, as appropriate. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, my opinion, my experience with and knowledge of Delphi's labor negotiations and contracts and with the IUE-CWA and USW, or are based upon knowledge obtained from employees of Delphi reporting to me in the course of their duties. If I were called on to testify, I could and would testify to the facts set forth herein.

**Declaration of Bernard J. Quick**

I. <u>Delphi's Agreements With The IUE-CWA And USW</u>

    A. <u>The IUE-CWA Agreements</u>

4. On November 16, 2003, Delphi and the IUE-CWA entered into the parties' current collective bargaining agreement, which went into effect on November 16, 2003 and expires on October 12, 2007 (the "IUE-CWA National Agreement"). True and correct copies of cited portions of the IUE-CWA National Agreement are attached hereto as Exhibit A. Excerpts of the IUE-CWA National Agreement, which detail Delphi's benefit plans, are attached as Exhibits to the Declaration of Steven Gebbia filed in support of the Motion.

5. The IUE-CWA has delegated to a number of its local affiliates the right to negotiate over local issues with Delphi. These local affiliates have entered into separate Local Agreements with Delphi. As such, the IUE-CWA-represented employees are covered by the National Agreement and a Local Agreement covering plant-specific issues. Due to their volume, Delphi is not filing the Local Agreements with this Motion but will provide copies of the documents to parties in interest upon request.

6. The IUE-CWA is the exclusive representative of Delphi employees at seven active plants and one idled plant in the U.S. It represents production and skilled trades employees.

7. The following are active plants where IUE-CWA represents some or all of Delphi's hourly employees: Brookhaven, Mississippi (Local 718), Clinton, Mississippi (Local 698), Gadsden, Alabama (Local 711), Kettering, Ohio (Local 755), Moraine, Ohio (Local 801), New Brunswick, New Jersey (Local 416), and Warren, Ohio (Local 717). The IUE-CWA also represents employees at Delphi's idled facility in Anaheim, California (Local 1111).

**Declaration of Bernard J. Quick**

B.    The USW Agreements

8.    On December 8, 1999, Delphi and the USW Local 87 entered into a collective bargaining agreement (the "USW National Agreement"). True and correct copies of cited portions of the 1999 USW National Agreement are attached hereto as Exhibit B. This Agreement, with certain modifications, was renewed in 2003, and currently expires on September 14, 2007. The 2003 modifications to the 1999 agreement are provided for in an agreement between the parties called Document 74 ("Doc. 74"), which is explained on pages 352-53 of Exhibit B. The modifications are explained in the 1999 USW Supplement. A true and correct copy of cited portions of the 1999 USW Supplement is attached hereto as Exhibit C.

9.    In addition to the USW National Agreement, Delphi is a party to two Local Agreements with USW Local 87. One agreement applies to USW-represented employees at Delphi's Home Avenue facility in Dayton, Ohio, and the other applies to USW-represented employees at Delphi's Vandalia, Ohio facility (collectively, the "USW Local Agreements"). Due to their volume, Delphi is not filing the Local Agreements with this Motion but will provide copies of the documents to parties in interest upon request.

II.    The Principal Terms Of The IUE-CWA and USW Agreements

A.    Wages And Benefits

10.    Base Wage Rates. Under these Delphi agreements, there are no national wage rates. Rather, the base wage rates are established by local negotiations, and cover hundreds of different positions. These rates are subject to approval by Delphi and the national unions. The rates, therefore, tend to be within a few cents of each other for similar positions. Traditional employees covered by the IUE-CWA National Agreement receive base wages as described in wage scales established in their respective local wage agreements. The rates provided for in the

4

IUE-CWA Local Agreements at active sites, including the rates applicable to employees hired under local supplemental new-hire agreements, are as follows:

| Plant Location | Wage Rate Range |
|---|---|
| Brookhaven, Mississippi (Local 718) | $14.03 - $26.98 |
| Clinton, Mississippi (Local 698) | $8.88 - $30.60 |
| Gadsden, Alabama (Local 711) | $7.77 - $13.67 |
| Kettering, Ohio (Local 755) | $8.00 - $30.36 |
| Moraine, Ohio (Local 801) | $14.27 - $30.95 |
| New Brunswick, New Jersey (Local 416) | $13.41 - $30.52 |
| Warren, Ohio (Local 717) | $14.00 - $31.28 |

11.     Apprentices are subject to a separate wage scale provided for in the IUE-CWA and USW National Agreement. The IUE-CWA apprentice rates are in a document entitled the Standard Apprentice Plan. True and correct copies of cited portions of the IUE-CWA Standard Apprentice Plan are attached hereto as Exhibit D. Both unions' apprentice wages range from $25.53 to $29.74 and are subject to yearly increases. IUE-CWA and USW Apprentices also receive a $1,200 and $100 - $150, respectively, allowance for tools, books and supplies. These wage rates are calculated based on the provisions in Exhibit D at pages 6 and 8 and paragraph 65(a)-(b) and Exhibit B at paragraphs 62(h)-(i) and 93(a) (modifying Exhibit C paragraphs 62(h)-(u)).

12.     Employees covered by the USW National Agreement receive base wages as described in the wage scales established in their respective Local Wage Agreements. The rates provided for in the USW Local Agreements at active sites, including the rates applicable to employees hired under local supplemental new-hire agreements, are as follows:

5

**Declaration of Bernard J. Quick**

| Plant Location | Wage Rate Range |
|---|---|
| Vandalia, Ohio | $8.00 - $31.11 |
| Dayton, Ohio | $11.97 - $31.22 |

13.  Wage Increases.  The IUE-CWA and USW National Agreement also provides that traditional employees will receive a variety of wage increases.

14.  IUE-CWA and USW-represented traditional employees start at 70 percent of the base wage at the time of their hire, and progress at intervals of five percent every 26 weeks, reaching the full base rate after three years of employment.  These provisions are described in Exhibit A at paragraph 61 and in Exhibit B at Paragraph 95.

15.  IUE-CWA and USW-represented employees may receive specific increases each year in amounts negotiated by their respective unions.  Since the Spin-Off in 1999, Delphi's union-represented traditional employees have received the following negotiated increases to their base wages, including a Cost of Living Allowance ("COLA").

| Date | Increase |
|---|---|
| September 1999 | 3% + $.85 COLA fold-in to base wages |
| September 2000 | 3% |
| September 2001 | 3% |
| September 2002 | 3% |
| September 2003 | $2 COLA fold-in to base wages |
| September 2004 | None |
| September 2005 | 2% |

16.  IUE-CWA and USW represented traditional employees received increases of between $0.25 and $0.85 on September 19, 2005, and are scheduled to receive an increase of between $0.39 to $1.09 per hour on September 18, 2006.  These provisions are set forth in Exhibit A at paragraph 65(a)-(b) and Exhibit C at paragraph 93a (modifying Exhibit B).

6

**Declaration of Bernard J. Quick**

17.     In addition, employees received a three percent lump sum performance bonus payment in September 2004 and a three percent increase to base wages is currently scheduled to take effect in September 2006.  These provisions are outlined in Exhibit A at paragraph 65b(2) and Exhibit C at paragraph 93(c).

18.     Delphi's employees have received quarterly COLA adjustments, in addition to the base wage and negotiated increases discussed above, since 1999.  Under the current labor agreements, the COLA adjustments are based upon a three-month average of the Consumer Price Index ("CPI") for the three months prior to the month in which the adjustment is made (i.e., the December 1, 2003 adjustment was based on the August, September, and October CPI average). During the 1999 negotiations and again during the 2003 negotiations, Delphi and the unions agreed to fold all but five cents of the accumulated hourly COLA into employees' base pay rates, simultaneously reducing the hourly COLA payable by that same amount.  These provisions are explained in Exhibit A at paragraph 65(d)-(i) and Exhibit C at paragraph 94(a)-(g) (modifying Exhibit B).

19.     The following table depicts the approximate annual COLA adjustments since 1999:

| Year | COLA Increase |
|---|---|
| 1999 | 1.9% |
| 2000 | 3.2% |
| 2001 | 2.2% |
| 2002 | 1.5% |
| 2003 | 2.2% |
| 2004 | 2.4% |
| 2005 | 3.7% |

**Declaration of Bernard J. Quick**

20. In 2003, all of Delphi's traditional IUE-CWA and USW-represented employees received lump sum "signing bonuses" of $3,000, respectively. These provisions are reflected in Exhibit A on page 370 and in Document 56 in Exhibit C (modifying Exhibit B at page 315).

21. <u>New-Hires</u>. Prior to the 2003 negotiations with the IUE-CWA, Delphi had been able to negotiate reduced wages for new-hires under the IUE-CWA Local Agreements. The terms of several examples of the competitive new-hire agreements between Delphi and IUE-CWA locals are summarized below.

22. In 1994, Delphi and the IUE-CWA Local 717 in Warren, Ohio, entered into a Competitive Hiring Plan that applies to new-hires in Warren. Employees are hired at 55 percent of base wages and COLA, with no growth to parity with traditional base wage rates. New-hires at the IUE-CWA Local 416 in New Brunswick, New Jersey also receive 52.5 percent of the maximum base rate of the job classification and 52.5 percent of COLA with no growth to parity.

23. In 1994, Delphi and the IUE-CWA Local 718 in Brookhaven, Mississippi, entered into the Concept 2000 Hiring Plan ("$C_2HP$") that applies to new-hires in Brookhaven. Employees hired under this plan are paid at a rate equal to 52.5 percent of the maximum base rate, with no growth to parity with traditional base wage rates.

24. In 1999, Delphi and the IUE-CWA Local 698 in Clinton, Mississippi, entered into the Competitive Challenge Agreement ("CCA"). Production employees hired under this agreement receive a total wage and benefit package that is not to exceed $13.44 per hour. Skilled employees are hired under a Skilled Trades Progressive Hiring Plan ("STPHP") dating back to 1984, which provides that a new-hire receives 70 percent of base wage and COLA, growing to parity wages in 10 years, and 70 percent of traditional benefits, growing to parity in

8

12 years.  Additionally, as provided in its local agreement, this facility may hire temporary employees at $9.95 per hour.

25.     Delphi and the IUE-CWA Local 755 in Kettering, Ohio have entered into several new-hire wage agreements which, depending upon an employee's skill level, provide for entry wage range from $8.00 - $15.20 per hour.  Production employees are hired at $8.00 per hour, with $0.20 per year increases over 10 years for a maximum rate of $10.00 per hour.  Skilled employees are hired at 60 percent of relevant job classification rates and receive a six percent or seven percent increase each year for six years, at which time their wages reach parity with those of traditional employees.  The wage ranges from $15.20 to $25.83 per hour.  Because of business conditions, no employees – production or skilled – have been hired in Kettering since these provisions were ratified.

26.     In the 2003 negotiations, Delphi was able to extend the IUE-CWA national competitive hire agreements.  The IUE-CWA National Agreement provides new-hires with the equivalent of 70 to 95 percent of the applicable local maximum base wage rate for that employee's job classification during the employee's first 156 weeks of employment.  The National Agreement's new-hire provisions apply to those new-hire employees who are not covered by a Local supplemental competitive new-hire agreement.  These provisions are set forth in Exhibit A at paragraph 61.

27.     The USW Vandalia Agreement also contains new-hire provisions.  The 1998 Local Agreement governing the USW Vandalia operations contains new-hire wage rates for employees hired after June 22, 1998.  A 2004 Addendum provides that production employees start at $8.00 per hour and grow to $10.00 per hour in three years.  Skilled trades employees start at $17.00 per hour and grow to $19.96 per hour in three years.

9

**Declaration of Bernard J. Quick**

28.     Currently, there are only approximately 1,910 IUE-CWA- represented employees working under the IUE-CWA new-hire agreements who have not transitioned to the traditional, high cost wage and benefit levels or been laid off.  There are approximately 496 USW represented employees working under the USW new-hire agreements who have not transitioned to the traditional, high cost wage and benefit levels or been laid off.

29.     <u>Overtime</u>.  Overtime pay for all IUE-CWA and USW-represented employees is generally paid at time and one-half for work beyond eight hours in a 24 hour period, or beyond 40 hours in one week, or for time worked on any shift which begins on a Saturday.  Employees are paid double time for work on a Sunday or a company-paid holiday (in addition to eight hours straight time Holiday Pay for the holiday).  Overtime provisions are set forth in Exhibit A at paragraph 52 and Exhibit B at paragraph 84a-86a.

30.     <u>Shift Premium</u>.  Traditional IUE-CWA and USW-represented employees who work an afternoon shift are entitled to a shift premium of five percent of base pay, and employees who work a night shift are entitled to a shift premium of 10 percent of base pay.  These provisions are set forth in Exhibit A at paragraph 56 and Exhibit B at paragraph 99.  Currently, an estimated 28 percent of Delphi's employees receive an afternoon shift premium, and an estimated 14 percent receive a night shift premium.

31.     <u>Vacation Benefits.</u>  Traditional IUE-CWA and USW-represented employees accrue up to 200 hours of vacation per year.  Because Delphi's workforce is very senior, the average Delphi traditional employee receives four and one-half weeks of vacation annually.

32.     Traditional employees with less than one year of service receive up to one week of vacation.  Traditional employees receive annual vacation of two weeks for employees with one to three years of service; two-and-a-half weeks for employees with three to five years of

10

service; three weeks for employees with five to 10 years of service; three-and-a-half weeks for employees with 10 to 15 years of service; four weeks for employees with 15 to 20 years of service; and five weeks per year for employees with 20 or more years of service. The specific vacation accrual policies are outlined below and are set forth in Exhibit A at paragraphs 101a-t and Exhibit B at paragraph 119-119s.

33. <u>Holidays</u>.  Under the IUE-CWA and the USW National Agreements, traditional employees receive a large number of paid holidays. For 2005-2006, these paid holidays include Election Day, Veterans Day, Thanksgiving Day, the day after Thanksgiving, Christmas week (five days off during the week between Christmas and New Year's Day), the day after New Year's Day, Martin Luther King, Jr. Day, Good Friday, the day after Easter, Memorial Day, Independence Day, Labor Day and "Independence Week" (four paid days off during the week in which Independence Day is celebrated). Employees who work during the Independence Shutdown Week receive up to eight hours of Additional Time Off for every day they work during that week. For the several days surrounding Christmas, employees are only scheduled to work on a voluntary basis. These provisions are set forth in Exhibit A at paragraphs 101u and 102 and Exhibit B at paragraphs 119u and 101.

34. If a holiday falls on a Saturday, eligible employees receive Holiday Pay in addition to their base wages, provided that they worked the last preceding scheduled work day within the week in which the holiday falls. The result is that employees who work on a holiday are compensated at double their base wage rate. These provisions are set forth in Exhibit A at paragraph 54(3) and Exhibit B at paragraph 86a(3).

35. The majority of the Local IUE-CWA and USW Agreements have similar holiday schedules to the schedule provided in the National Agreement.

11

**Declaration of Bernard J. Quick**

B.  Job Security Provisions

36. Delphi's existing labor agreements with the IUE-CWA and USW contain a variety of job security provisions that constrain Delphi's ability to respond to customer and market forces.

37. Protected Status/JOBS Bank. The IUE-CWA and USW National Agreements contain a program similar to the UAW's "secured employment level" provisions described in the Declaration of Darrell Kidd. The IUE-CWA and USW programs are applicable to employees with more than five and six years of seniority, respectively. The Delphi-IUE-CWA Job Security provisions were bargained in 1999 to cover the 1999 agreement and the next National Agreement in 2003. The 1999 "pattern agreement" provided for 42 weeks of layoff before placement into the JOBS Bank; the 2003 "pattern agreement" provided for 48 weeks of layoff (for a total of 90 weeks under the two agreements) before placement into the JOBS Bank. Similarly, after 74 weeks of lay off, employees under the USW agreement are placed in the JOBS Bank. Delphi can only lay off those employees based on a reduction in customer volumes, major economic downturn, or financial distress as described in Exhibit A at page 138-39 and Exhibit B at page 156.

38. Once an employee's layoff weeks are used, Delphi is obligated to return the employee to work. If there is no productive work available, employees are on "Protected Status." Employees on Protected Status may be placed in a training program, used as a replacement to facilitate the training of others, given a non-traditional job assignment outside the bargaining unit, or the like. When no such assignments are available, employees on Protected Status report to a designated JOBS Bank location where they commonly read, play cards, or watch television during work hours while they await work. Employees may remain in this status

12

**Declaration of Bernard J. Quick**

until they either are asked to return to normal active assignments due to a change in business conditions, they replace employees who voluntarily leave Delphi in the future, or they choose to retire. In recent years, there have been several hundred IUE-CWA and USW-represented employees assigned to a JOBS Bank at all times. The job security provisions are generally described in Exhibit A at pages 137-53 and 223-29 and Exhibit B at pages 155-67.

39. Although the agreements provide that employees on Protected Status may be placed in various positions, the program has not generally resulted in productive work for Delphi employees. Further, the IUE-CWA and USW National Agreements prohibit Delphi from assigning a JOBS Bank or Protected Status employee to a job outside the bargaining unit except on a voluntary basis, thereby limiting Delphi's ability to address potential staffing needs at other manufacturing sites.

40. <u>No Sale Or Closure Provisions</u>. The IUE-CWA and USW National Agreements prevent Delphi from closing plants or making other operational modifications. Delphi has agreed, until October 12, 2007 and September 2007, respectively, not to "close, nor partially or wholly sell, spin off, split-off, consolidate, or otherwise dispose of in any form, any plant, asset, or business unit of any type . . . constituting a bargaining unit under the Agreement." Some of the IUE-CWA Local Agreements extend these restrictions past the year 2007. For example, IUE-CWA Local 801, which represents employees at Delphi's Moraine, Ohio facility, extends this restriction until 2011.

41. If an event occurs that is beyond Delphi's control and makes compliance with the no-sale or spin-off commitment impossible, Delphi is required to confer with the IUE-CWA regarding any resulting operational changes. For example, Delphi has committed to identifying

potential methods of redeployment to other locations or making use of the JOBS Bank program. These provisions are set forth in Exhibit A at pages 365-66 and Exhibit B at page 305.

42.     Successorship.  Both the IUE-CWA and the USW 2003 National Agreement effectively prohibit the sale of a facility without union consent.  Even if Delphi receives union consent to sell a facility, any purchaser of an ongoing Delphi business becomes bound by the labor agreements covering employees at that facility.  Because absent union modification, the purchaser would be bound by the same, untenable labor cost structure as Delphi, Delphi is further constrained in its ability to make strategic or economically-necessary decisions to close or otherwise discontinue unprofitable operations.  These provisions are set forth in Exhibit A at 238 and Exhibit B at page 306.

43.     Staffing Requirements.  Delphi is limited in its ability to subcontract or outsource under the IUE-CWA and USW National Agreements, and may not lay off any employees as a result of outsourcing work.  The contract requires that Delphi continue to perform all production and maintenance work normally and historically performed by the bargaining unit at its facilities with its own employees.  Delphi may subcontract that work on a temporary basis to a contractor, but only if Delphi's skilled employees are "fully utilized."  These provisions are described in Exhibit A at paragraph 86(a)-(c) and pages 131-33 and Exhibit B at paragraph 62(y) and page 275.  If a contract for maintenance or construction work is to be let, Delphi generally must involve the IUE-CWA in its decision regarding subcontracting.  Furthermore, certain subcontracting disputes are "strikeable" issues, meaning that the union may strike if it believes that Delphi is not complying with contractual obligations.

44.     The restrictions on "outsourcing" generally apply to work that is performed in-house by Delphi's Union employees, but which Delphi is contemplating purchasing from another

14

company or manufacturing at another lower-cost Delphi facility.  Outsourcing is not a strikeable issue under the collective bargaining agreements, but Delphi's labor agreements do prohibit it from outsourcing without justifying, through a lengthy process, that the work can be performed more efficiently outside a particular facility.  Pursuant to the IUE-CWA and USW National Agreements, in making outsourcing decisions Delphi must provide the unions with confidential financial data and permit them to take a significant period of time to provide a competitive package based on the bids Delphi receives.  The outsourcing policy and process is described in Exhibit A at pages 175-81 and Exhibit B at pages 177-81.

      C.      <u>Other Non-Competitive Provisions</u>

      45.      <u>Joint Fund Accrual And Training Costs</u>.  In the IUE-CWA National Agreement, Delphi agreed to make available to the National Joint Skill Development and Training Committee $41,000,000 over the life of the agreement ($1,500,000 of which was to be used for the Legal Services Plan, which is described in the Declaration of Steven Gebbia).  Delphi and both the IUE-CWA and the USW have agreed to the Joint Skill Development and Training Committee.  These funds are used to promote development and provide resources and training activites for active and displaced employees.  The IUE-CWA program is funded as described more fully in Exhibit A at pages 381-85 and pages 420-21, and USW is funded as described in Exhibit B at pages 182-88.

      46.      Under the USW-Delphi 1999 Memorandum of Understanding - Joint Activities, Delphi provides funding for certain approved projects.  These funds accrue at a rate of $0.062 per hour, plus an overtime penalty calculation, that may be used as required.  Among the uses for these funds are "training efforts of active employees in job-related skills, basic education

15

**Declaration of Bernard J. Quick**

enhancement and interpersonal skills" and various studies and pilot programs. These provisions are set forth in Exhibit B at pages 186-87.

47. <u>Compensation Of Union Representatives</u>. Under the IUE-CWA and USW National Agreements, Delphi is obligated to permit a substantial number of employees to function as full-time Union representatives. Under these provisions, in each manufacturing site, a minimum of one employee functions full-time as a District Committeeperson for every 250 employees, with additional employees functioning full-time as Shop and Zone Committeepersons, determined by the number of districts/zones at the site, whose sole purpose is to represent Delphi's employees. These provisions are outlines in Exhibit A at paragraphs 8-26 and in Exhibit B at paragraphs 8a-30. Delphi also must permit numerous other employees, some appointed by the Union, to function as Union representatives who represent employees exclusively on issues such as benefits, health and safety, special skilled trades, joint training, human resource development, joint activities, and the like. These provisions are described in Exhibit A at pages 317, 321-22, 337, 358, and 381-85, and Exhibit B at pages 331-34.

I declare under penalty of perjury, and pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed this 31 day of March, 2006

                                    /s/ Bernard J. Quick_____
                                    BERNARD J. QUICK

**Declaration of Bernard J. Quick**