**Exhibit K**

# *Supplemental Agreement*

Covering

## PENSION PLAN

Exhibit A

to

AGREEMENT

between

DELPHI CORPORATION

and

UAW

dated

September 18, 2003

## ARTICLE II

## ELIGIBILITY FOR RETIREMENT
## AND AMOUNT OF PENSIONS

### Section 1.    Normal Retirement

Any employee who has attained age 65 and ceases active service shall be entitled to receive a pension based upon the employee's credited service. <u>Any employee who elects to continue to work full time for the Corporation beyond age 65 will be notified that, while such employee has entitlement to a normal retirement benefit at age 65, such benefit is suspended and will not be paid while such employee works for the Corporation beyond age 65.</u>

### Section 2.    Early Retirement

**(a) (1)**    An employee who has attained age 60 but not age 65, and who has 10 or more years of credited service, may retire at the option of the employee.

**(2)**    An employee who has attained age 55 but not age 60, and whose combined years of age and years of credited service (to the nearest 1/12 in each case) shall total 85 or more, may retire at the option of the employee.

**(3)**    An employee who has 30 or more years of credited service may retire at the option of the employee.

**(b)**    An employee who has attained age 55 (age 50 for an employee who is laid off on or after October 1, 1984 as a result of a plant closing where no other Delphi plants are in the same geographical area) but not age 65 and who has 10 or more years of credited service may be retired under mutually satisfactory conditions as set forth hereinafter in the Standards applicable to such retirement.

4

### Section 3.    Total and Permanent Disability Retirement

(a)    An employee who is totally and permanently disabled prior to attaining age 65, and has at least 10 years of credited service, shall be eligible for a disability pension as hereinafter provided. An individual who is not an employee with seniority is not eligible to apply for total and permanent disability retirement.

(b)    An employee shall be deemed to be totally and permanently disabled only if the employee is not engaged in regular employment or occupation for remuneration or profit and on the basis of medical evidence satisfactory to the Corporation the employee is found to be wholly and permanently prevented from engaging in regular employment or occupation with the Corporation at the plant or plants where the employee has seniority for remuneration or profit as a result of bodily injury or disease, either occupational or non-occupational in cause, but excluding disabilities resulting from service in the armed forces of any country unless the employee becomes totally and permanently disabled after accumulating at least 5 years of seniority following separation from service in the armed forces.

(c)    Any disability pensioner may be required to submit to medical examination at any time during retirement prior to age 65, but not more often than semi-annually, to determine whether the pensioner is eligible for continuance of the disability pension. If on the basis of such examination it is found that the pensioner is no longer disabled or if the pensioner engages in gainful employment, except for purposes of rehabilitation as determined by the Corporation, the pensioner will be deemed recovered and such disability pension will cease. In the event the disability pensioner refuses to submit to medical examination the pension will be discontinued until the pensioner is examined.

5

(d)    Employees who retire under this Section 3 shall, upon attaining age 65, be reclassified to a normal retirement.

## Section 4.    Amount of Pensions

(a) (1)    The monthly pension payable to an employee retired pursuant to the provisions of Sections 1, 2, or 3 of this Article II with benefits payable commencing on or after <u>October 1, 2003,</u> shall be a basic benefit for each year of credited service that the employee had at the date of retirement, determined by the applicable Benefit Class Code and based on the month for which payment is being made as set forth in the table immediately following:

| Retires With Benefits Payable Commencing | Benefit Class Code | Basic Benefit Rate Per Year of Credited Service For Months Commencing | | | |
| | | <u>10-1-03</u> through <u>9-1-04</u> | <u>10-1-04</u> through <u>9-1-05</u> | <u>10-1-05</u> through <u>9-1-06</u> | <u>10-1-06</u> and After |
| <u>October 1, 2003</u> and After | A | $ <u>47.75</u> | $ <u>48.80</u> | $ <u>49.85</u> | $ <u>50.90</u> |
| | B | <u>48.00</u> | <u>49.05</u> | <u>50.10</u> | <u>51.15</u> |
| | C | <u>48.25</u> | <u>49.30</u> | <u>50.35</u> | <u>51.40</u> |
| | D | <u>48.50</u> | <u>49.55</u> | <u>50.60</u> | <u>51.65</u> |

(2)    The monthly pension benefit payable to an employee who retires at the employee's option at a date selected by the employee shall be multiplied by a percentage as set forth in the following table:

6

| Age When<br>Pension Commences | Percentage* |
|:---:|:---:|
| 42 | 21.0% |
| 43 | 22.6 |
| 44 | 24.3 |
| 45 | 26.1 |
| 46 | 28.2 |
| 47 | 30.4 |
| 48 | 32.8 |
| 49 | 35.4 |
| 50 | 38.3 |
| 51 | 41.5 |
| 52 | 45.0 |
| 53 | 48.9 |
| 54 | 53.2 |
| 55 | 57.9 |
| 56 | 63.5 |
| 57 | 69.4 |
| 58 | 75.2 |
| 59 | 80.8 |
| 60 | 86.7 |
| 61 | 93.3 |
| 62 or over | 100.0 |

*  *Prorated for intermediate ages computed on the basis of the number of complete calendar months by which the employee is under the age attained at the employee's next birthday.*

   If an employee:

   **(i)**    with 30 or more years of credited service retires at the employee's option, or

   **(ii)**    whose combined years of age and years of credited service (to the nearest 1/12 in each case) shall total 85 or more retires at the employee's option,

the monthly basic benefits otherwise payable to such employee after age 62 and one month shall be redetermined without any such reduction.

7

**(3)** . The basic benefit payable in any month will not be reduced below an amount which results in the early retirement supplement paid to a participant in such month, under Article II, Section 6(a)(1), exceeding the old age insurance benefits, unreduced on account of age, payable under Title II of the Social Security Act, as amended.

**(b)** A temporary benefit for each year of credited service up to 30 shall be payable in addition to the monthly basic pension payable to an employee retired under mutually satisfactory conditions, or totally and permanently disabled pursuant to Section 2(b) or Section 3 above, as set forth in the table immediately following:

| Retires With Benefits Payable Commencing | Monthly Temporary Benefit Amount | |
|---|---|---|
| | Per Year of Credited Service | Maximum |
| October 1, 2003 Through September 1, 2004 | $ 45.75 | $ 1,372.50 |
| October 1, 2004 Through September 1, 2005 | 47.05 | 1,411.50 |
| October 1, 2005 Through September 1, 2006 | 48.50 | 1,455.00 |
| October 1, 2006 and After | 49.80 | 1,494.00 |

(c) . The monthly temporary benefit determined in (b) above shall be payable until age 62 and one month, or until the age at which the employee becomes or could have become eligible for a Federal Social Security benefit for disability or an unreduced Federal Social Security benefit for age. At such age the temporary benefit shall cease to be payable.

(d) An employee who is discharged for cause after such employee is eligible to retire at the employee's option under Section 2(a) of this Article II shall be entitled to the benefits provided under Section 4(a) of this Article II.

(e) The amount of any monthly pension benefit otherwise payable to the employee at retirement, or earlier commencement, will be reduced by the value of any past and future benefits paid or payable to any alternate payee(s) under a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p).

The actuarial value will be used to determine any amount to be paid to any such payee(s), if applicable, and the remaining benefit entitlement of the employee.

## Section 5.   Pension Benefits to Employee's Surviving Spouse

(a) In lieu of the monthly basic benefit otherwise payable, an employee who retires pursuant to the normal, early or total and permanent disability retirement provisions of this Article II, or who breaks seniority and is eligible for a deferred pension pursuant to the provisions of Section 2 of Article VII hereof, shall be deemed to have elected automatically a reduced amount of monthly basic benefit to provide that, if the designated spouse shall be living at the employee's death after such election shall have become effective, a survivor benefit shall immediately be payable to such spouse commencing on the first of the month following

**(i)** · In no event may an election for survivor benefits be made or changed after the death of the employee.

## Section 6.   Supplements

**(a)**   An employee who retires under Section 2 (other than an employee referred to in Section 4(d) of this Article II, unless the Corporation or an Impartial Umpire under an applicable collective bargaining agreement determines the discharge should not result in the employee being ineligible for benefits under this Section 6), or Section 3 of this Article II, and who retires within five years of the last day worked for the Corporation and who agrees to restrict participation in the work force before age 62 and one month as provided in (e) below will receive, in addition to the pension, certain supplements as set forth below:

**(1)**   If the employee retires under Section 2 or Section 3 of this Article II with 30 or more years of credited service at the date of retirement, such employee shall be entitled to a monthly early retirement supplement until age 62 and one month in an amount which when added to the monthly pension under this Plan will equal the amount of total monthly benefit provided in the table set forth below, subject to subsequent provisions of this Section 6:

| | Total Monthly Benefit Rate For Determining Monthly Early Retirement Supplement Prior to Age 62 and One Month For Retirements With 30 or More Years of Credited Service | | | |
|---|---|---|---|---|
| Retires With Benefits Payable Commencing | 10-1-03 through 9-1-04 | 10-1-04 through 9-1-05 | 10-1-05 through 9-1-06 | 10-1-06 and After |
| October 1, 2003 and After | $ 2,805 | $ 2,875 | $ 2,950 | $ 3,020 |

**(2)**   If the employee retires at the employee's option after attaining age 55 with benefits payable commencing on or after October 1, 2003 with less than 30 years of credited service, such employee shall be entitled to a monthly interim supplement until the attainment of age 62 and one month equal to the amount provided immediately below for each year of credited service that such employee had at the date of retirement, subject to the provisions of (b), (e) and (g) of this Section 6:

16

| Age at Retirement | Monthly Amount* and Effective Date of Interim Supplement Payable Prior to Age 62 and One Month for Each Year of Credited Service | | | |
| | Retirees With Benefits Payable Commencing on or After October 1, 2003 | | | |
| | 10-1-03 through 9-1-04 | 10-1-04 through 9-1-05 | 10-1-05 through 9-1-06 | 10-1-06 and After |
| | $ | $ | $ | $ |
| 55 | 20.10 | 20.70 | 21.35 | 21.90 |
| 56 | 23.75 | 24.45 | 25.20 | 25.85 |
| 57 | 28.70 | 29.50 | 30.45 | 31.25 |
| 58 | 33.65 | 34.60 | 35.70 | 36.60 |
| 59 | 37.55 | 38.60 | 39.85 | 40.85 |
| 60 | 43.45 | 44.70 | 46.10 | 47.30 |
| 61 | 43.45 | 44.70 | 46.10 | 47.30 |

*Prorated for intermediate ages computed on the basis of the number of complete calendar months by which the employee is under the age attained at the employee's next birthday.*

**(b)** The early retirement supplement under provision (a)(1) of this Section 6 for an employee who retires at the employee's option shall be calculated assuming that the basic pension commences immediately after retirement, and such early retirement supplement and the interim supplement under provision (a)(2) of this Section 6 shall be reduced for any month prior to age 62 and one month, for which the employee becomes or could have become eligible for a Federal Social Security benefit, by an amount equal to the amount of the temporary benefit to which the employee would have been entitled if retired under Section 2(b) of this Article II.

**(c)** The early retirement supplement under provision (a)(1) of this Section 6 for an employee who retires under Section 2(b) or Section 3 of this Article II

shall be calculated on the assumption that the employee will receive a temporary benefit until age 62 and one month, even if such temporary benefit is not received by the employee until such age because of entitlement to Social Security Benefits.

**(d)**   The early retirement supplement under provision (a)(1) of this Section 6 for an employee who does not prevent the automatic election of the surviving spouse coverage provided under Section 5 of this Article II shall be calculated on the basis of the monthly pension the employee would have received if the employee had prevented such automatic election.

**(e)**   Any of the supplements to which an employee is entitled shall commence on the first day of the month following the date on which the employee retires and shall be payable monthly thereafter until and including the first day of the month in which the employee (1) dies, (2) has the pension cease for any other reason, (3) is reemployed by the Corporation, or (4) attains age 62 and one month, whichever occurs first.

**(f)**   If a retired employee has been receiving a pension under Section 3 of this Article II and has been receiving a supplement and, on the basis of medical evidence satisfactory to the Corporation, it is found that such employee is no longer totally and permanently disabled and seniority is restored, or if such employee is reemployed by the Corporation, such employee shall not thereby forfeit any right thereafter to receive a supplement if such employee thereafter retires under this Pension Plan.

**(g)**   If the total of the employee's monthly pension under this Pension Plan and the monthly early retirement supplement or interim supplement receivable as computed above would exceed 70% of the employee's final base pay, such monthly supplement (but not the monthly pension) shall be reduced to the

18

extent required so that such monthly pension plus the supplement will equal 70% of the employee's final base pay. For this purpose, an employee's final base pay shall mean 173 1/3 times the employee's Base Hourly Rate as defined in Article X.

### Section 7.    Special Benefit

(a)    A retired employee, or a surviving spouse, (i) age 65 or older, or (ii) under age 65 and enrolled in the voluntary "Medicare" coverage that is available under the Federal Social Security Act by making contributions (in either case excluding the spouse of a former employee who received a deferred vested pension benefit under Article VII of the Plan), who is receiving a monthly benefit under Article II of the Plan which commenced prior to October 1, 1979, subject to (d) below, shall receive a monthly special benefit equal to:

(i)    $58.70 for months commencing on or after January 1, 2003, and

(ii)    the lesser of the generally applicable Medicare Part B premium, or $76.20 for months commencing on or after January 1, 2004.

(b)    In no event shall such payment commence prior to the first day of the month following the earlier of (i) the month during which age 65 is attained, or (ii) for enrollments effective prior to October 1, 2003, receipt by the Corporation of application on a form provided for this purpose from an otherwise eligible individual under age 65; except that, with respect to an otherwise eligible individual under age 65, payment shall commence with the first month of such enrollment, but in no event prior to October 1, 1979.

(c)    Not more than one such payment shall be made to any individual for any one month. No such payment shall be made to any individual under age 65

19

Workers Compensation

# DELPHI CORPORATION

September 18, 2003

International Union, United Automobile,
    Aerospace and Agricultural Implement
    Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
        Vice President and Director
        General Motors Department

Dear Mr. Shoemaker:

This letter of agreement constitutes an amendment to
the 2003 Delphi-UAW Pension Plan and shall be
construed and applied as if it were therein
incorporated.

Pursuant to Subsection 354(14) of the Michigan Workers
Compensation Act, as amended, until termination or
earlier amendment of the 2003 Collective Bargaining
Agreement, workers compensation for employees shall
not be reduced by disability retirement benefits
payable under the Hourly-Rate Employees Pension
Plan.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

133

# Exhibit L



*Supplemental Agreement*

Covering

**PENSION PLAN**

**Exhibit A
to
AGREEMENT
between
DELPHI CORPORATION
and
IUE-CWA
dated
November 16, 2003**

## ARTICLE II

# ELIGIBILITY FOR RETIREMENT
# AND AMOUNT OF PENSIONS

## Section 1. Normal Retirement

Any employee who has attained age 65 and ceases active service shall be entitled to receive a pension based upon the employee's credited service. <u>Any employee who elects to continue to work full time for the Corporation beyond age 65 will be notified that, while such employee has entitlement to a normal retirement benefit at age 65, such benefit is suspended and will not be paid while such employee works for the Corporation beyond age 65.</u>

## Section 2.   Early Retirement

(a)  (1)  An employee who has attained age 60 but not age 65, and who has 10 or more years of credited service, may retire at the option of the employee.

(2)  An employee who has attained age 55 but not age 60, and whose combined years of age and years of credited service (to the nearest 1/12 in each case) shall total 85 or more, may retire at the option of the employee.

(3)  An employee who has 30 or more years of credited service may retire at the option of the employee.

(b)  An employee who has attained age 55 (age 50 for an employee who is laid off on or after October 1, 1984 as a result of a plant closing where no other Delphi plants are in the same geographical area) but not age 65 and who has 10 or more years of credited service may be retired under mutually satisfactory conditions as set forth hereinafter in the Standards applicable to such retirement.

4

## Section 3.   Total and Permanent Disability Retirement

(a)   An employee who is totally and permanently disabled prior to attaining age 65, and has at least 10 years of credited service, shall be eligible for a disability pension as hereinafter provided.   An individual who is not an employee with seniority is not eligible to apply for total and permanent disability retirement.

(b)   An employee shall be deemed to be totally and permanently disabled only if the employee is not engaged in regular employment or occupation for remuneration or profit and on the basis of medical evidence satisfactory to the Corporation the employee is found to be wholly and permanently prevented from engaging in regular employment or occupation with the Corporation at the plant or plants where the employee has seniority for remuneration or profit as a result of bodily injury or disease, either occupational or non-occupational in cause, but excluding disabilities resulting from service in the armed forces of any country unless the employee becomes totally and permanently disabled after accumulating at least 5 years of seniority following separation from service in the armed forces.

(c)   Any disability pensioner may be required to submit to medical examination at any time during retirement prior to age 65, but not more often than semi-annually, to determine whether the pensioner is eligible for continuance of the disability pension.   If on the basis of such examination it is found that the pensioner is no longer disabled or if the pensioner engages in gainful employment, except for purposes of rehabilitation as determined by the Corporation, the pensioner will be deemed recovered and such disability pension will cease.   In the event the disability pensioner refuses to submit to medical examination the pension will be discontinued until the pensioner is examined.

5

**(d)** Employees who retire under this Section 3 shall, upon attaining age 65, be reclassified to a normal retirement.

## Section 4.   Amount of Pensions

**(a) (1)** The monthly pension payable to an employee retired pursuant to the provisions of Sections 1, 2, or 3 of this Article II with benefits payable commencing on, or after October 1, 2003, shall be a basic benefit for each year of credited service that the employee had at the date of retirement, determined by the applicable Benefit Class Code and based on the month for which payment is being made as set forth in the table immediately following:

| Retires With Benefits Payable Commencing | Benefit Class Code | Basic Benefit Rate Per Year of Credited Service For Months Commencing | | | |
|---|---|---|---|---|---|
| | | 10-1-03 through 9-1-04 | 10-1-04 through 9-1-05 | 10-1-05 through 9-1-06 | 10-1-06 and After |
| October 1, 2003 and After | A | $ 47.75 | $ 48.80 | $ 49.85 | $ 50.90 |
| | B | 48.00 | 49.05 | 50.10 | 51.15 |
| | C | 48.25 | 49.30 | 50.35 | 51.40 |
| | D | 48.50 | 49.55 | 50.60 | 51.65 |

**(2)** The monthly pension benefit payable to an employee who retires at the employee's option at a date selected by the employee shall be multiplied by a percentage as set forth in the following table:

6

Art. II, 4(a)(2)

| Age When Pension Commences | Percentage* |
|---|---|
| 42 | 21.0% |
| 43 | 22.6 |
| 44 | 24.3 |
| 45 | 26.1 |
| 46 | 28.2 |
| 47 | 30.4 |
| 48 | 32.8 |
| 49 | 35.4 |
| 50 | 38.3 |
| 51 | 41.5 |
| 52 | 45.0 |
| 53 | 48.9 |
| 54 | 53.2 |
| 55 | 57.9 |
| 56 | 63.5 |
| 57 | 69.4 |
| 58 | 75.2 |
| 59 | 80.8 |
| 60 | 86.7 |
| 61 | 93.3 |
| 62 or over | 100.0 |

*Prorated for intermediate ages computed on the basis of the number of complete calendar months by which the employee is under the age attained at the employee's next birthday.*

If an employee:

(i)  with 30 or more years of credited service retires at the employee's option, or

(ii)  whose combined years of age and years of credited service (to the nearest 1/12 in each case) shall total 85 or more retires at the employee's option,

the monthly basic benefits otherwise payable to such employee after age 62 and one month shall be redetermined without any such reduction.

7

**(3)** The basic benefit payable in any month will not be reduced below an amount which results in the early retirement supplement paid to a participant in such month, under Article II, Section 6(a)(1), exceeding the old age insurance benefits, unreduced on account of age, payable under Title II of the Social Security Act, as amended.

**(b)** A temporary benefit for each year of credited service up to 30 shall be payable in addition to the monthly basic pension payable to an employee retired under mutually satisfactory conditions, or totally and permanently disabled pursuant to Section 2(b) or Section 3 above, as set forth in the table immediately following:

| Retires With Benefits Payable Commencing | Monthly Temporary Benefit Amount | |
| --- | --- | --- |
| | Per Year of Credited Service | Maximum |
| | $ | $ |
| October 1, 2003 through September 1, 2004 | 45.75 | 1,372.50 |
| October 1, 2004 through September 1, 2005 | 47.05 | 1,411.50 |
| October 1, 2005 through September 1, 2006 | 48.50 | 1,455.00 |
| October 1, 2006 and After | 49.80 | 1,494.00 |

8

(c) The monthly temporary benefit determined in (b) above shall be payable until age 62 and one month, or until the age at which the employee becomes or could have become eligible for a Federal Social Security benefit for disability or an unreduced Federal Social Security benefit for age. At such age the temporary benefit shall cease to be payable.

(d) An employee who is discharged for cause after such employee is eligible to retire at the employee's option under Section 2(a) of this Article II shall be entitled to the benefits provided under Section 4(a) of this Article II.

(e) The amount of any monthly pension benefit otherwise payable to the employee at retirement, or earlier commencement, will be reduced by the value of any past and future benefits paid or payable to any alternate payee(s) under a Qualified Domestic Relations Order within the meaning of I.R.C. Section 414(p).

The actuarial value will be used to determine any amount to be paid to any such payee(s), if applicable, and the remaining benefit entitlement of the employee.

### Section 5.   Pension Benefits to Employee's Surviving Spouse

(a) In lieu of the monthly basic benefit otherwise payable, an employee who retires pursuant to the normal, early or total and permanent disability retirement provisions of this Article II, or who breaks seniority and is eligible for a deferred pension pursuant to the provisions of Section 2 of Article VII hereof, shall be deemed to have elected automatically a reduced amount of monthly basic benefit to provide that, if the designated spouse shall be living at the employee's death after such election shall have become effective, a survivor benefit shall immediately be payable to such spouse commencing on the first of the month following

9

**(i)**   In no event may an election for survivor benefits be made or changed after the death of the employee.

## Section 6.   Supplements

(a)   An employee who retires under Section 2 (other than an employee referred to in Section 4(d) of this Article II, unless the Corporation or an Impartial Umpire under an applicable collective bargaining agreement determines the discharge should not result in the employee being ineligible for benefits under this Section 6), or Section 3 of this Article II, and who retires within five years of the last day worked for the Corporation will receive, in addition to the pension, certain supplements as set forth below:

(1)   If the employee retires under Section 2 or Section 3 of this Article II with 30 or more years of credited service at the date of retirement, such employee shall be entitled to a monthly early retirement supplement until age 62 and one month in an amount which when added to the monthly pension under this Plan will equal the amount of total monthly benefit provided in the table set forth below, subject to subsequent provisions of this Section 6:

15

| | Total Monthly Benefit Rate For Determining Monthly Early Retirement Supplement Prior to Age 62 and One Month For Retirements With 30 or More Years of Credited Service | | | |
|---|---|---|---|---|
| Retires With Benefits Payable Commencing | 10-1-03 through 9-1-04 | 10-1-04 through 9-1-05 | 10-1-05 through 9-1-06 | 10-1-06 and After |
| October 1, 2003 and After | $ 2,805 | $ 2,875 | $ 2,950 | $ 3,020 |

**(2)**  If the employee retires at the employee's option after attaining age 55 with benefits payable commencing on or after October 1, 2003 with less than 30 years of credited service, such employee shall be entitled to a monthly interim supplement until the attainment of age 62 and one month equal to the amount provided immediately below for each year of credited service that such employee had at the date of retirement, subject to the provisions of (b), (e) and (g) of this Section 6:

16

Art. II, 6(a)(2)

|  | Monthly Amount* and Effective Date of Interim Supplement Payable Prior to Age 62 and One Month for Each Year of Credited Service | | | |
|---|---|---|---|---|
|  | Retires With Benefits Payable Commencing on or After October 1, 2003 | | | |
| Age at Retirement | 10-1-03 through 9-1-04 | 10-1-04 through 9-1-05 | 10-1-05 through 9-1-06 | 10-1-06 and After |
|  | $ | $ | $ | $ |
| 55 | 20.10 | 20.70 | 21.35 | 21.90 |
| 56 | 23.75 | 24.45 | 25.20 | 25.85 |
| 57 | 28.70 | 29.50 | 30.45 | 31.25 |
| 58 | 33.65 | 34.60 | 35.70 | 36.60 |
| 59 | 37.55 | 38.60 | 39.85 | 40.85 |
| 60 | 43.45 | 44.70 | 46.10 | 47.30 |
| 61 | 43.45 | 44.70 | 46.10 | 47.30 |

*Prorated for intermediate ages computed on the basis of the number of complete calendar months by which the employee is under the age attained at the employee's next birthday.*

**(b)** The early retirement supplement under provision (a)(1) of this Section 6 for an employee who retires at the employee's option shall be calculated assuming that the basic pension commences immediately after retirement, and such early retirement supplement and the interim supplement under provision (a)(2) of this Section 6 shall be reduced for any month prior to age 62 and one month, for which the employee becomes or could have become eligible for a Federal Social Security benefit, by an amount equal to the amount of the temporary benefit to which the employee would have been entitled if retired under Section 2(b) of this Article II.

**(c)** The early retirement supplement under provision (a)(1) of this Section 6 for an employee who retires under Section 2(b) or Section 3 of this Article II shall be calculated on the assumption that the employee will

17

receive a temporary benefit until age 62 and one month, even if such temporary benefit is not received by the employee until such age because of entitlement to Social Security Benefits.

(d)  The early retirement supplement under provision (a)(1) of this Section 6 for an employee who does not prevent the automatic election of the surviving spouse coverage provided under Section 5 of this Article II shall be calculated on the basis of the monthly pension the employee would have received if the employee had prevented such automatic election.

(e)  Any of the supplements to which an employee is entitled shall commence on the first day of the month following the date on which the employee retires and shall be payable monthly thereafter until and including the first day of the month in which the employee (1) dies, (2) has the pension cease for any other reason, (3) is reemployed by the Corporation, or (4) attains age 62 and one month, whichever occurs first.

(f)  If a retired employee has been receiving a pension under Section 3 of this Article II and has been receiving a supplement and, on the basis of medical evidence satisfactory to the Corporation, it is found that such employee is no longer totally and permanently disabled and seniority is restored, or if such employee is reemployed by the Corporation, such employee shall not thereby forfeit any right thereafter to receive a supplement if such employee thereafter retires under this Pension Plan.

(g)  If the total of the employee's monthly pension under this Pension Plan and the monthly early retirement supplement or interim supplement receivable as computed above would exceed 70% of the employee's final base pay, such monthly supplement (but not the monthly pension) shall be reduced to the extent required so that such monthly pension plus the

18

supplement will equal 70% of the employee's final base pay. For this purpose, an employee's final base pay shall mean 173 1/3 times the employee's Base Hourly Rate as defined in Article X.

## Section 7.   Special Benefit

(a)  A retired employee, or a surviving spouse, (i) age 65 or older, or (ii) under age 65 and enrolled in the voluntary "Medicare" coverage that is available under the Federal Social Security Act by making contributions (in either case excluding the spouse of a former employee who received a deferred vested pension benefit under Article VII of the Plan), who is receiving a monthly benefit under Article II of the Plan which commenced prior to October 1, 1979, subject to (d) below, shall receive a monthly special benefit equal to:

(i)  $58.70 for months commencing on or after January 1, 2003, and

(ii)  the lesser of the generally applicable Medicare Part B premium, or $76.20 for months commencing on or after January 1, 2004.

(b)  In no event shall such payment commence prior to the first day of the month following the earlier of (i) the month during which age 65 is attained, or (ii) for enrollments effective prior to October 1, 2003, receipt by the Corporation of application on a form provided for this purpose from an otherwise eligible individual under age 65; except that, with respect to an otherwise eligible individual under age 65, payment shall commence with the first month of such enrollment, but in no event prior to October 1, 1979.

(c)  Not more than one such payment shall be made to any individual for any one month. No such payment shall be made to any individual under age 65 for any month such individual is not enrolled for such voluntary

19

# Exhibit M

EXHIBIT A

SUPPLEMENTAL

AGREEMENT

(PENSION PLAN)

--------------------------------------------------------------------

NOTE -

As used herein (Exhibit A and A-1):

_____ (A)         =   <u>Effective Date of Increase</u>

_____ (B)         =   <u>Signing Date</u>

_____ (D)         =   <u>Board of Directors Meeting</u>

--------------------------------------------------------------------

b

<u>PENSION PLAN</u>

<u>ARTICLE II</u>

ELIGIBILITY FOR RETIREMENT
<u>AND AMOUNT OF PENSIONS</u>

Section 1.   <u>Normal Retirement</u>

Any employee who has attained age 65 and ceases active service shall be entitled to receive a pension based upon the employee's credited service.   <u>Any employee who elects to continue to work full time for the Corporation beyond age 65 will be notified that, while such employee has entitlement to a normal retirement benefit at age 65, such benefit is suspended and will not be paid while such employee works for the Corporation beyond age 65.</u>

Section 2.   <u>Early Retirement</u>

(a)   (1)   An employee who has attained age 60 but not age 65, and who has 10 or more years of credited service, may retire at the option of the employee.

(2)   An employee who has attained age 55 but not age 60, and whose combined years of age and years of credited service (to the nearest 1/12 in each case) shall total 85 or more, may retire at the option of the employee.

b

<u>PENSION PLAN</u>

Art. II, 2(a)(3)

(3)   An employee who has 30 or more years of credited service may retire at the option of the employee.

(b)   An employee who has attained age 55 (age 50 for an employee who is laid off on or after October 1, 1984 as a result of a plant closing where no other Delphi plants are in the same geographical area) but not age 65 and who has 10 or more years of credited service may be retired under mutually satisfactory conditions as set forth hereinafter in the Standards applicable to such retirement.

Section 3.   <u>Total and Permanent Disability Retirement</u>

(a)   An employee who is totally and permanently disabled prior to attaining age 65, and has at least 10 years of credited service, shall be eligible for a disability pension as hereinafter provided.  An individual who is not an employee with seniority is not eligible to apply for total and permanent disability retirement.

a                                    - 34 -

<u>PENSION PLAN</u>

Art. II, 3(b)

(b)  An employee shall be deemed to be totally and permanently disabled only if the employee is not engaged in regular employment or occupation for remuneration or profit and on the basis of medical evidence satisfactory to the Corporation the employee is found to be wholly and permanently prevented from engaging in regular employment or occupation with the Corporation at the plant or plants where the employee has seniority for remuneration or profit as a result of bodily injury or disease, either occupational or non-occupational in cause, but excluding disabilities resulting from service in the armed forces of any country unless the employee becomes totally and permanently disabled after accumulating at least 5 years of seniority following separation from service in the armed forces.

a                             - 35 -

<u>PENSION PLAN</u>

Art. II, 3(c)

(c)   Any disability pensioner may be required to submit to
medical examination at any time during retirement prior to
age 65, but not more often than semi-annually, to determine
whether the pensioner is eligible for continuance of the
disability pension.  If on the basis of such examination it
is found that the pensioner is no longer disabled or if the
pensioner engages in gainful employment, except for purposes
of rehabilitation as determined by the Corporation, the
pensioner will be deemed recovered and such disability
pension will cease.  In the event the disability pensioner
refuses to submit to medical examination the pension will be
discontinued until the pensioner is examined.

(d)   Employees who retire under this Section 3 shall, upon
attaining age 65, be reclassified to a normal retirement.

a                                    - 36 -

<u>PENSION PLAN</u>

Art. II, 4

Section 4.  <u>Amount of Pensions</u>

    (a)   (1)   The monthly pension payable to an employee retired pursuant to the provisions of Sections 1, 2, or 3 of this Article II with benefits payable commencing on or after ~~October 1, 1999~~_____(A)_____, shall be a basic benefit for each year of credited service that the employee had at the date of retirement, determined by the applicable Benefit Class Code and based on the month for which payment is being made as set forth in the table immediately following:

| Retires With Benefits Payable Commencing | Benefit Class Code | Basic Benefit Rate Per Year of Credited Service For Months Commencing | | | |
|---|---|---|---|---|---|
| | | ~~10-1-99~~ (A) through 9-1-~~00~~04 | ~~10-1-00~~ 10-1-04 through 9-1-~~01~~05 | ~~10-1-01~~ 10-1-05 through 9-1-~~02~~06 | ~~10-1-02~~ 10-1-06 and After |
| | | $ | $ | $ | $ |
| ~~October 1, 1999~~ _____(A)_____ and After | A | ~~40.80~~ | ~~42.50~~ | ~~44.50~~ | ~~46.70~~ |
| | B | ~~41.05~~ | ~~42.75~~ | ~~44.75~~ | ~~46.95~~ |
| | C | ~~41.30~~ | ~~43.00~~ | ~~45.00~~ | ~~47.20~~ |
| | D | ~~41.55~~ | ~~43.25~~ | ~~45.25~~ | ~~47.45~~ |
| | | 47.75 | 48.80 | 49.85 | 50.90 |
| | | 48.00 | 49.05 | 50.10 | 51.15 |
| | | 48.25 | 49.30 | 50.35 | 51.40 |
| | | 48.50 | 49.55 | 50.60 | 51.65 |

b

PENSION PLAN

Art. II, 4(a)(2)


(2)  The monthly pension benefit payable to an employee who

retires at the employee's option at a date selected by the

employee shall be multiplied by a percentage as set forth in

the following table:

| Age When Pension Commences | Percentage* |
|---|---|
| 42 | 21.0% |
| 43 | 22.6 |
| 44 | 24.3 |
| 45 | 26.1 |
| 46 | 28.2 |
| 47 | 30.4 |
| 48 | 32.8 |
| 49 | 35.4 |
| 50 | 38.3 |
| 51 | 41.5 |
| 52 | 45.0 |
| 53 | 48.9 |
| 54 | 53.2 |
| 55 | 57.9 |
| 56 | 63.5 |
| 57 | 69.4 |
| 58 | 75.2 |
| 59 | 80.8 |
| 60 | 86.7 |
| 61 | 93.3 |
| 62 or over | 100.0 |

*  Prorated for intermediate ages computed on
   the basis of the number of complete
   calendar months by which the employee is
   under the age attained at the employee's
   next birthday.

a                        - 38 -

<u>PENSION PLAN</u>

Art. II, 4(a)(2)

If an employee:

(i)   with 30 or more years of credited service retires
at the employee's option, or

(ii)  whose combined years of age and years of credited
service (to the nearest 1/12 in each case) shall
total 85 or more retires at the employee's
option,

the monthly basic benefits otherwise payable to such
employee after age 62 and one month shall be
redetermined without any such reduction.

(3)   The basic benefit payable in any month will not be
reduced below an amount which results in the early
retirement supplement paid to a participant in such
month, under Article II, Section 6(a)(1), exceeding the
old age insurance benefits, unreduced on account of
age, payable under Title II of the Social Security
Act, as amended.

a                                    - 39 -

<u>PENSION PLAN</u>

Art. II, 4(b)

(b) A temporary benefit for each year of credited service up to
30 shall be payable in addition to the monthly basic pension
payable to an employee retired under mutually satisfactory
conditions, or totally and permanently disabled pursuant to
Section 2(b) or Section 3 above, as set forth in the table
immediately following:

| Retires With Benefits Payable Commencing | Monthly Temporary Benefit Amount | |
| | Per Year of Credited Service | Maximum |
|---|---|---|
| | $ | $ |
| ~~October 1, 1999 (A)~~ Through September 1, ~~2000~~ 2004 | ~~38.85~~ 45.75 | ~~1,165.50~~ 1,372.50 |
| October 1, ~~2000~~ 2004 Through September 1, ~~2001~~ 2005 | ~~40.45~~ 47.05 | ~~1,213.50~~ 1,411.50 |
| October 1, ~~2001~~ 2005 Through September 1, ~~2002~~ 2006 | ~~42.35~~ 48.50 | ~~1,270.50~~ 1,455.00 |
| October 1, ~~2002~~ 2006 and After | ~~44.45~~ 49.80 | ~~1,333.50~~ 1,494.00 |

b                                    - 40 -

<u>PENSION PLAN</u>

Art. II, 4(c)

(c)   The monthly temporary benefit determined in (b) above shall
be payable until age 62 and one month, or until the age at
which the employee becomes or could have become eligible for
a Federal Social Security benefit for disability or an
unreduced Federal Social Security benefit for age.  At such
age the temporary benefit shall cease to be payable.

(d)   An employee who is discharged for cause after such employee
is eligible to retire at the employee's option under
Section 2(a) of this Article II shall be entitled to the
benefits provided under Section 4(a) of this Article II.

(e)   The amount of any monthly pension benefit otherwise payable
to the employee at retirement, or earlier commencement, will
be reduced by the value of any past and future benefits paid
or payable to any alternate payee(s) under a Qualified
Domestic Relations Order within the meaning of I.R.C.
Section 414(p).

The actuarial value will be used to determine any amount to
be paid to any such payee(s), if applicable, and the
remaining benefit entitlement of the employee.

a                           - 41 -

<u>PENSION PLAN</u>

Art. II, 6

Section 6.   <u>Supplements</u>

(a)   An employee who retires under Section 2 (other than an
employee referred to in Section 4(d) of this Article II,
unless the Corporation or an Impartial Umpire under an
applicable collective bargaining agreement determines the
discharge should not result in the employee being ineligible
for benefits under this Section 6), or Section 3 of this
Article II, and who retires within five years of the last
day worked for the Corporation will receive, in addition to
the pension, certain supplements as set forth below:

(1)   If the employee retires under Section 2 or Section 3
of this Article II with 30 or more years of credited
service at the date of retirement, such employee shall
be entitled to a monthly early retirement supplement
until age 62 and one month in an amount which when

a                               - 52 -

<u>PENSION PLAN</u>

Art. II, 6(a)(1)

        added to the monthly pension under this Plan will

        equal the amount of total monthly benefit provided in

        the table set forth below, subject to subsequent

        provisions of this Section 6:

| Retires With Benefits Payable Commencing | Total Monthly Benefit Rate For Determining Monthly Early Retirement Supplement Prior to Age 62 and One Month For Retirements With 30 or More Years of Credited Service | | | |
|---|---|---|---|---|
| | ~~10-1-99~~ (A) through 9-1-~~00~~04 | 10-1-~~00~~04 through 9-1-~~01~~05 | 10-1-~~01~~05 through 9-1-~~02~~06 | 10-1-~~02~~06 and After |
| ~~October 1, 1999~~ (A) and After | $ ~~2,380~~ 2,805 | $ ~~2,480~~ 2,875 | $ ~~2,600~~ 2,950 | $ ~~2,730~~ 3,020 |

b

     - 53 -

<u>PENSION PLAN</u>

Art. II, 6(a)(2)

(2)    If the employee retires at the employee's option after attaining age 55 with benefits payable commencing on or after ~~October 1, 1999~~ _____(A)_____ with less than 30 years of credited service, such employee shall be entitled to a monthly interim supplement until the attainment of age 62 and one month equal to the amount provided immediately below for each year of credited service that such employee had at the date of retirement, subject to the provisions of (b), (e) and (g) of this Section 6:

| Age at Retirement | Monthly Amount* and Effective Date of Interim Supplement Payable Prior to Age 62 and One Month for Each Year of Credited Service Retires With Benefits Payable Commencing on or After ~~October 1, 1999~~ (A) | | | |
|---|---|---|---|---|
| | ~~10-1-99~~ (A) through 9-1-~~00~~ 04 | 10-1-~~00~~ 04 through 9-1-~~01~~ 05 | 10-1-~~01~~ 05 through 9-1-~~02~~ 06 | 10-1-~~02~~06 and After |
| | $ | $ | $ | $ |
| 55 | ~~17.10~~20.10 | ~~17.80~~20.70 | ~~18.65~~21.35 | ~~19.55~~21.90 |
| 56 | ~~20.15~~23.75 | ~~21.00~~24.45 | ~~22.00~~25.20 | ~~23.10~~25.85 |
| 57 | ~~24.40~~28.70 | ~~25.40~~29.50 | ~~26.60~~30.45 | ~~27.90~~31.25 |
| 58 | ~~28.55~~33.65 | ~~29.75~~34.60 | ~~31.15~~35.70 | ~~32.70~~36.60 |
| 59 | ~~31.90~~37.55 | ~~33.20~~38.60 | ~~34.75~~39.85 | ~~36.50~~40.85 |
| 60 | ~~36.90~~43.45 | ~~38.45~~44.70 | ~~40.25~~46.10 | ~~42.25~~47.30 |
| 61 | ~~36.90~~43.45 | ~~38.45~~44.70 | ~~40.25~~46.10 | ~~42.25~~47.30 |

* Prorated for intermediate ages computed on the basis of the number of complete calendar months by which the employee is under the age attained at the employee's next birthday.

b

<u>PENSION PLAN</u>

Art. II, 6(b)

(b)     The early retirement supplement under provision (a)(1) of
this Section 6 for an employee who retires at the employee's
option shall be calculated assuming that the basic pension
commences immediately after retirement, and such early
retirement supplement and the interim supplement under
provision (a)(2) of this Section 6 shall be reduced for any
month prior to age 62 and one month, for which the employee
becomes or could have become eligible for a Federal Social
Security benefit, by an amount equal to the amount of the
temporary benefit to which the employee would have been
entitled if retired under Section 2(b) of this Article II.

(c)     The early retirement supplement under provision (a)(1) of
this Section 6 for an employee who retires under
Section 2(b) or Section 3 of this Article II shall be
calculated on the assumption that the employee will receive
a temporary benefit until age 62 and one month, even if such
temporary benefit is not received by the employee until such
age because of entitlement to Social Security Benefits.

a                                    - 55 -

<u>PENSION PLAN</u>

Art. II, 6(d)

(d)   The early retirement supplement under provision (a)(1) of
this Section 6 for an employee who does not prevent the
automatic election of the surviving spouse coverage provided
under Section 5 of this Article II shall be calculated on
the basis of the monthly pension the employee would have
received if the employee had prevented such automatic
election.

(e)   Any of the supplements to which an employee is entitled
shall commence on the first day of the month following the
date on which the employee retires and shall be payable
monthly thereafter until and including the first day of the
month in which the employee (1) dies, (2) has the pension
cease for any other reason, (3) is reemployed by the
Corporation, or (4) attains age 62 and one month, whichever
occurs first.

a

<u>PENSION PLAN</u>

Art. II, 6(f)

(f)   If a retired employee has been receiving a pension under
Section 3 of this Article II and has been receiving a
supplement and, on the basis of medical evidence
satisfactory to the Corporation, it is found that such
employee is no longer totally and permanently disabled and
seniority is restored, or if such employee is reemployed by
the Corporation, such employee shall not thereby forfeit any
right thereafter to receive a supplement if such employee
thereafter retires under this Pension Plan.

(g)   If the total of the employee's monthly pension under this
Pension Plan and the monthly early retirement supplement or
interim supplement receivable as computed above would exceed
70% of the employee's final base pay, such monthly
supplement (but not the monthly pension) shall be reduced to
the extent required so that such monthly pension plus the
supplement will equal 70% of the employee's final base pay.
For this purpose, an employee's final base pay shall mean
173 1/3 times the employee's Base Hourly Rate as defined in
Article X.

a                                    - 57 -

PENSION PLAN

Art. II, 8(a)(1)

| Retired With Benefits Payable Commencing | Class Code | Basic Benefit Rate Per Year of Credited Service For Months Commencing |
|---|---|---|
| | | ~~October 1, 1999~~ (A) and After |
| **Prior to** October 1, 1984 | N/A | 26.50* |
| October 1, 1984 through September 1, 1985 | A<br>B<br>C<br>D | 27.50<br>27.75<br>28.00<br>28.25 |
| October 1, 1985 through September 1, 1986 | A<br>B<br>C<br>D | 27.60<br>27.85<br>28.10<br>28.35 |
| October 1, 1986 through September 1, 1987 | A<br>B<br>C<br>D | 27.70<br>27.95<br>28.20<br>28.45 |

*  Including, if applicable, $1.00 waived for election of a special survivor option.

**(CONTINUED ON NEXT PAGE.)**

b

<u>PENSION PLAN</u>

Art. II, 8(a)(1)


**(CONTINUED FROM PRECEDING PAGE)**

| Retired With Benefits Payable Commencing | Benefit Class Code | Basic Benefit Rate Per Year of Credited Service For Months Commencing |
|---|---|---|
| | | ~~October 1, 1999~~ (A) and After |
| | | $ |
| October 1, 1987 through September 1, 1988 | A<br>B<br>C<br>D | 30.70<br>30.95<br>31.20<br>31.45 |
| October 1, 1988 through September 1, 1989 | A<br>B<br>C<br>D | 30.80<br>31.05<br>31.30<br>31.55 |
| October 1, 1989 through September 1, 1990 | A<br>B<br>C<br>D | 30.90<br>31.15<br>31.40<br>31.65 |
| October 1, 1990 through September 1, 1993 | A<br>B<br>C<br>D | 34.10<br>34.35<br>34.60<br>34.85 |
| October 1, 1993 through September 1, 1996 | A<br>B<br>C<br>D | 37.10<br>37.35<br>37.60<br>37.85 |
| October 1, 1996 ~~and prior to October~~ September 1, 1999 | A<br>B<br>C<br>D | 40.50<br>40.75<br>41.00<br>41.25 |
| <u>October 1, 1999 and prior to _____ (A) _____</u> | <u>A</u><br><u>B</u><br><u>C</u><br><u>D</u> | <u>46.70</u><br><u>46.95</u><br><u>47.20</u><br><u>47.45</u> |

b

- 63 -

# Exhibit N

EXHIBIT A-1

THE DELPHI
HOURLY-RATE EMPLOYEES
PENSION PLAN

PENSION PLAN

ARTICLE I
ESTABLISHMENT OF THE PLAN

Delphi ~~Automotive Systems~~ Corporation on behalf of itself and its Divisions and as agent for certain of its directly or indirectly wholly-owned and substantially wholly-owned domestic subsidiaries in accordance with I.R.C. Section 414(b), (c), and (m) will establish, subject to the approval of its Board of Directors, a pension fund either by a trust agreement with a trustee or trustees or by contract with an insurance company or insurance companies, or both, and with respect thereto shall make such payments or contributions as will be sufficient to maintain the fund on a sound actuarial basis as well as to pay expenses incident to the operation and management of the Plan.

Except as expressly provided in Sections 6, 7, and 8 of Article II and as provided in Article VII and Article IX, the provisions set forth in this Plan are applicable only to employees with seniority on or after _____. Employees retired with benefits commencing prior to such date or separated prior to such date, or eligible surviving spouses of such employees, shall be entitled to the benefits, if any, under the Plan as it existed immediately prior to such date.

Notwithstanding the paragraph immediately above, employees who retired with benefits commencing after ~~September 14, 1999~~ September 14, 2003, and prior to ~~October 1, 1999~~ _____(A)_____ , pursuant to the provisions of Article II of the Plan, shall be considered for purposes of Article II herein as having retired with benefits payable commencing on or after ~~October 1, 1999~~ _____(A)_____ ; the surviving spouse of any employee who died after ~~September 14, 1999~~ September 14, 2003 and prior to ~~October 1, 1999~~ _____(A)_____ , who is otherwise eligible for monthly benefits under the Plan, shall be considered entitled to monthly benefits pursuant to Section 5 of Article II herein; and any such employees shall be considered eligible for credited service under Article III herein.

ARTICLE II
ELIGIBILITY FOR RETIREMENT
AND AMOUNT OF PENSIONS

Section 1.  Normal Retirement

Any employee who has attained age 65 and ceases active service shall be entitled to receive a pension based upon the employee's credited service.  Any employee who elects to continue to work full time for the Corporation beyond age 65 will be notified that, while such employee has entitlement to a normal retirement benefit at age 65, such benefit is suspended and will not be paid while such employee works for the Corporation beyond age 65.

Section 2.  Early Retirement

(a)    (1)    An employee who has attained age 60 but not age 65, and who has 10 or more years of credited service, may retire at the option of the employee.

2

(2) An employee who has attained age 55 but not age 60, and whose combined years of age and years of credited service (to the nearest 1/12 in each case) shall total 85 or more, may retire at the option of the employee.

(3) An employee who has 30 or more years of credited service may retire at the option of the employee.

(b) An employee who has attained age 55 (age 50 for an employee who is laid off on or after October 1, 1984 as a result of a plant closing where no other Delphi plants are in the same geographical area) but not age 65 and who has 10 or more years of credited service may be retired under mutually satisfactory conditions as set forth hereinafter in the Standards applicable to such retirement.

Section 3.   Total and Permanent Disability Retirement

(a) An employee who is totally and permanently disabled prior to attaining age 65, and has at least 10 years of credited service, shall be eligible for a disability pension as hereinafter provided. An individual who is not an employee with seniority is not eligible to apply for total and permanent disability retirement.

(b) An employee shall be deemed to be totally and permanently disabled only if the employee is not engaged in regular employment or occupation for remuneration or profit and on the basis of medical evidence satisfactory to the Corporation the employee is found to be wholly and permanently prevented from engaging in regular employment or occupation with the Corporation at the plant or plants where the employee has seniority for remuneration or profit as a result of bodily injury or disease, either occupational or non-occupational in cause, but excluding disabilities resulting from service in the armed forces of any country unless the employee becomes totally and permanently disabled after accumulating at least 5 years of seniority following separation from service in the armed forces.

(c) Any disability pensioner may be required to submit to medical examination at any time during retirement prior to age 65, but not more often than semi-annually, to determine whether the pensioner is eligible for continuance of the disability pension. If on the basis of such examination it is found that the pensioner is no longer disabled or if the pensioner engages in gainful employment, except for purposes of rehabilitation as determined by the Corporation, the pensioner will be deemed recovered and such disability pension will cease. In the event the disability pensioner refuses to submit to medical examination the pension will be discontinued until the pensioner is examined.

(d) Employees who retire under this Section 3 shall, upon attaining age 65, be reclassified to a normal retirement.

Section 4.   Amount of Pensions

(a)   (1)   The monthly pension payable to an employee retired pursuant to the provisions of Sections 1, 2, or 3 of this Article II with benefits payable commencing on or after ~~October 1, 1999~~ _____(A)_____ , shall be a basic benefit for each year of credited service that the employee had at the date of retirement, determined by the applicable Benefit Class Code and based on the month for which payment is being made as set forth in the table immediately following:

| Retires With Benefits Payable Commencing | Benefit Class Code | Basic Benefit Rate Per Year of Credited Service For Months Commencing | | | |
|---|---|---|---|---|---|
| | | ~~10-1-99~~ (A) through ~~9-1-00~~04 | ~~10-1-00~~ 10-1-04 through ~~9-1-01~~05 | ~~10-1-01~~ 10-1-05 through ~~9-1-02~~06 | ~~10-1-02~~ 10-1-06 and After |
| | | $ | $ | $ | $ |
| ~~October 1, 1999~~ _____(A)_____ and After | A<br>B<br>C<br>D | ~~40.80~~<br>~~41.05~~<br>~~41.30~~<br>~~41.55~~<br>47.75<br>48.00<br>48.25<br>48.50 | ~~42.50~~<br>~~42.75~~<br>~~43.00~~<br>~~43.25~~<br>48.80<br>49.05<br>49.30<br>49.55 | ~~44.50~~<br>~~44.75~~<br>~~45.00~~<br>~~45.25~~<br>49.85<br>50.10<br>50.35<br>50.60 | ~~46.70~~<br>~~46.95~~<br>~~47.20~~<br>~~47.45~~<br>50.90<br>51.15<br>51.40<br>51.65 |

(2)   The monthly pension benefit payable to an employee who retires at the employee's option at a date selected by the employee shall be multiplied by a percentage as set forth in the following table:

| Age When Pension Commences | Percentage* |
|---|---|
| 42 | 21.0% |
| 43 | 22.6 |
| 44 | 24.3 |
| 45 | 26.1 |
| 46 | 28.2 |
| 47 | 30.4 |
| 48 | 32.8 |
| 49 | 35.4 |
| 50 | 38.3 |
| 51 | 41.5 |
| 52 | 45.0 |
| 53 | 48.9 |
| 54 | 53.2 |
| 55 | 57.9 |
| 56 | 63.5 |
| 57 | 69.4 |
| 58 | 75.2 |
| 59 | 80.8 |
| 60 | 86.7 |
| 61 | 93.3 |
| 62 or over | 100.0 |

4

\* Prorated for intermediate ages computed on the basis of the number of complete calendar months by which the employee is under the age attained at the employee's next birthday.

If an employee:

(i)   with 30 or more years of credited service retires at the employee's option, or

(ii)  whose combined years of age and years of credited service (to the nearest 1/12 in each case) shall total 85 or more retires at the employee's option,

the monthly basic benefits otherwise payable to such employee after age 62 and one month shall be redetermined without any such reduction.

(3)   The basic benefit payable in any month will not be reduced below an amount which results in the early retirement supplement paid to a participant in such month, under Article II, Section 6(a)(1), exceeding the old age insurance benefits, unreduced on account of age, payable under Title II of the Social Security Act, as amended.

(b)   A temporary benefit for each year of credited service up to 30 shall be payable in addition to the monthly basic pension payable to an employee retired under mutually satisfactory conditions, or totally and permanently disabled pursuant to Section 2(b) or Section 3 above, as set forth in the table immediately following:

| Retires With Benefits Payable Commencing | Monthly Temporary Benefit Amount | |
|---|---|---|
| | Per Year of Credited Service $ | Maximum $ |
| ~~October 1, 1999~~ (A) Through September 1, ~~2000~~ 2004 | ~~38.85~~ 45.75 | ~~1,165.50~~ 1,372.50 |
| October 1, ~~2000~~ 2004 Through September 1, ~~2001~~ 2005 | ~~40.45~~ 47.05 | ~~1,213.50~~ 1,411.50 |
| October 1, ~~2001~~ 2005 Through September 1, ~~2002~~ 2006 | ~~42.35~~ 48.50 | ~~1,270.50~~ 1,455.00 |
| October 1, ~~2002~~ 2006 and After | ~~44.45~~ 49.80 | ~~1,333.50~~ 1,494.00 |

5

(c)   The monthly temporary benefit determined in (b) above shall
be payable until age 62 and one month, or until the age at
which the employee becomes or could have become eligible for
a Federal Social Security benefit for disability or an
unreduced Federal Social Security benefit for age.  At such
age the temporary benefit shall cease to be payable.

(d)   An employee who is discharged for cause after such employee
is eligible to retire at the employee's option under
Section 2(a) of this Article II shall be entitled to the
benefits provided under Section 4(a) of this Article II.

(e)   The amount of any monthly pension benefit otherwise payable
to the employee at retirement, or earlier commencement, will
be reduced by the value of any past and future benefits paid
or payable to any alternate payee(s) under a Qualified
Domestic Relations Order within the meaning of I.R.C.
Section 414(p).

The actuarial value will be used to determine any amount to
be paid to any such payee(s), if applicable, and the
remaining benefit entitlement of the employee.

Section 5.  <u>Pension Benefits to Employee's Surviving Spouse</u>

(a)   In lieu of the monthly basic benefit otherwise payable, an
employee who retires pursuant to the normal, early or total
and permanent disability retirement provisions of this
Article II, or who breaks seniority and is eligible for a
deferred pension pursuant to the provisions of Section 2 of
Article VII hereof, shall be deemed to have elected
automatically a reduced amount of monthly basic benefit to
provide that, if the designated spouse shall be living at
the employee's death after such election shall have become
effective, a survivor benefit shall immediately be payable
to such spouse commencing on the first of the month
following the employee's death and such survivor benefit
shall be payable during the spouse's further lifetime.  In
the event (1) such spouse predeceases such employee, or
(2) they are divorced by court decree and (i) a Qualified
Domestic Relations Order within the meaning of I.R.C.
Section 414(p) so provides, or (ii) written consent of the
former spouse which acknowledges the effect of the
cancellation and is witnessed by a notary public isobtained,
such employee may cancel the survivor benefit election and
have the monthly basic pension benefit restored to the
amount payable without such election, effective (i) the
first day of the month following the month in which the
Corporation receives evidence satisfactory to the
Corporation of the spouse's death (for deaths on or after
October 1, 1999, restoration of the monthly basic benefit
will be effective the first day of the month following the
date of the death upon receipt by the Corporation, of notice
satisfactory to the Corporation, of the spouse's death), or
(ii) the first day of the third month following the month in
which the Corporation receives such employee's written
revocation of the election because of divorce, on a form
approved by the Corporation and accompanied by evidence

6

(ii)  retired under Section 3 of this Article II, occurring on or after attaining age 55, but before the first day of the month following the date of death, shall not disqualify an otherwise eligible surviving spouse from receiving a benefit hereunder.

(i)  In no event may an election for survivor benefits be made or changed after the death of the employee.

## Section 6.  Supplements

(a)  An employee who retires under Section 2 (other than an employee referred to in Section 4(d) of this Article II, unless the Corporation or an Impartial Umpire under an applicable collective bargaining agreement determines the discharge should not result in the employee being ineligible for benefits under this Section 6), or Section 3 of this Article II, and who retires within five years of the last day worked for the Corporation and who agrees to restrict participation in the work force before age 62 and one month as provided in (e) below will receive, in addition to the pension, certain supplements as set forth below:

(1)  If the employee retires under Section 2 or Section 3 of this Article II with 30 or more years of credited service at the date of retirement, such employee shall be entitled to a monthly early retirement supplement until age 62 and one month in an amount which when added to the monthly pension under this Plan will equal the amount of total monthly benefit provided in the table set forth below, subject to subsequent provisions of this Section 6:

| Retires With Benefits Payable Commencing | Total Monthly Benefit Rate For Determining Monthly Early Retirement Supplement Prior to Age 62 and One Month For Retirements With 30 or More Years of Credited Service | | | |
|---|---|---|---|---|
| | ~~10-1-99 (A)~~ through ~~9-1-0004~~ | 10-1-~~0004~~ through 9-1-~~0105~~ | 10-1-~~0105~~ through 9-1-~~0206~~ | 10-1-~~0206~~ and After |
| ~~October 1, 1999~~ ____(A)____ and After | $ ~~2,380~~ 2,805 | $ ~~2,480~~ 2,875 | $ ~~2,600~~ 2,950 | $ ~~2,730~~ 3,020 |

(2)  If the employee retires at the employee's option after attaining age 55 with benefits payable commencing on or after ~~October 1, 1999~~ _____(A)_____ with less than 30 years of credited service, such employee shall be entitled to a monthly interim supplement until the attainment of age 62 and one month equal to the amount provided immediately below for each year of credited service

that such employee had at the date of retirement, subject to
the provisions of (b)., (e) and (g) of this Section 6:

| Age at Retirement | Monthly Amount* and Effective Date of Interim Supplement Payable Prior to Age 62 and One Month for Each Year of Credited Service Retires With Benefits Payable Commencing on or After ~~October 1, 1999~~ (A) | | | |
|---|---|---|---|---|
| | ~~10-1-99~~ (A) through 9-1-~~00~~ 04 | 10-1-~~00~~ 04 through 9-1-~~01~~ 05 | 10-1-~~01~~ 05 through 9-1-~~02~~ 06 | 10-1-~~02~~ 06 and After |
| | $ | $ | $ | $ |
| 55 | ~~17.10~~ 20.10 | ~~17.80~~ 20.70 | ~~18.65~~ 21.35 | ~~19.55~~ 21.90 |
| 56 | ~~20.15~~ 23.75 | ~~21.00~~ 24.45 | ~~22.00~~ 25.20 | ~~23.10~~ 25.85 |
| 57 | ~~24.40~~ 28.70 | ~~25.40~~ 29.50 | ~~26.60~~ 30.45 | ~~27.90~~ 31.25 |
| 58 | ~~28.55~~ 33.65 | ~~29.75~~ 34.60 | ~~31.15~~ 35.70 | ~~32.70~~ 36.60 |
| 59 | ~~31.90~~ 37.55 | ~~33.20~~ 38.60 | ~~34.75~~ 39.85 | ~~36.50~~ 40.85 |
| 60 | ~~36.90~~ 43.45 | ~~38.45~~ 44.70 | ~~40.25~~ 46.10 | ~~42.25~~ 47.30 |
| 61 | ~~36.90~~ 43.45 | ~~38.45~~ 44.70 | ~~40.25~~ 46.10 | ~~42.25~~ 47.30 |

* Prorated for intermediate ages computed on the basis of the
number of complete calendar months by which the employee is
under the age attained at the employee's next birthday.

(b) The early retirement supplement under provision (a)(1) of
this Section 6 for an employee who retires at the employee's
option shall be calculated assuming that the basic pension
commences immediately after retirement, and such early
retirement supplement and the interim supplement under
provision (a)(2) of this Section 6 shall be reduced for any
month prior to age 62 and one month, for which the employee
becomes or could have become eligible for a Federal Social
Security benefit, by an amount equal to the amount of the
temporary benefit to which the employee would have been
entitled if retired under Section 2(b) of this Article II.

(c) The early retirement supplement under provision (a)(1) of
this Section 6 for an employee who retires under
Section 2(b) or Section 3 of this Article II shall be
calculated on the assumption that the employee will receive
a temporary benefit until age 62 and one month, even if such
temporary benefit is not received by the employee until such
age because of entitlement to Social Security Benefits.

(d) The early retirement supplement under provision (a)(1) of
this Section 6 for an employee who does not prevent the
automatic election of the surviving spouse coverage provided
under Section 5 of this Article II shall be calculated on
the basis of the monthly pension the employee would have
received if the employee had prevented such automatic
election.

(e) Any of the supplements to which an employee is entitled
shall commence on the first day of the month following the
date on which the employee retires and shall be payable
monthly thereafter until and including the first day of the

11

month in which the employee (1) dies, (2) has the pension
cease for any other reason, (3) is reemployed by the
Corporation, or (4) attains age 62 and one month, whichever
occurs first.

(f)   If a retired employee has been receiving a pension under
Section 3 of this Article II and has been receiving a
supplement and, on the basis of medical evidence
satisfactory to the Corporation, it is found that such
employee is no longer totally and permanently disabled and
seniority is restored, or if such employee is reemployed by
the Corporation, such employee shall not thereby forfeit any
right thereafter to receive a supplement if such employee
thereafter retires under this Pension Plan.

(g)   If the total of the employee's monthly pension under this
Pension Plan and the monthly early retirement supplement or
interim supplement receivable as computed above would exceed
70% of the employee's final base pay, such monthly
supplement (but not the monthly pension) shall be reduced to
the extent required so that such monthly pension plus the
supplement will equal 70% of the employee's final base pay.
For this purpose, an employee's final base pay shall mean
173 1/3 times the employee's Base Hourly Rate as defined in
Article X.

Section 7.   Special Benefit

(a)   A retired employee, or a surviving spouse, (i) age 65 or
older, or (ii) under age 65 and enrolled in the voluntary
"Medicare" coverage that is available under the Federal Social
Security Act by making contributions (in either case excluding
the spouse of a former employee who received a deferred vested
pension benefit under Article VII of the Plan), who is receiving
a monthly benefit under Article II of the Plan which commenced
prior to October 1, 1979, subject to (d) below, shall receive a
monthly special benefit equal to:

(i)   $45.50 58.70 for months commencing on or after
January 1, 1999 2003, and

(ii)   the lesser of the generally applicable Medicare Part B
premium, or $61.50 76.20 for months commencing on or
after January 1, 2000 January 1, 2004.

(b)   In no event shall such payment commence prior to the first
day of the month following the earlier of (i) the month
during which age 65 is attained, or (ii) for enrollments
effective prior to October 1, 1999        (A)       , receipt by
the Corporation of application on a form provided for this
purpose from an otherwise eligible individual under age 65;
except that, with respect to an otherwise eligible
individual under age 65, payment shall commence with the
first month of such enrollment, but in no event prior to
October 1, 1979.

(c)   Not more than one such payment shall be made to any
individual for any one month.  No such payment shall be made
to any individual under age 65 for any month such individual

Social Security

DELPHI ~~AUTOMOTIVE SYSTEMS~~ CORPORATION

~~September 28, 1999~~ ____ (B) _____

Name of Union

_____

_____

_____

Attention: _____

Dear Mr.

~~During these negotiations, the parties agreed to provide for extended early retirement supplements, interim supplements and temporary benefits for current retirees born in 1938, 1939, 1940 and 1941 who attain age 62 during the 1999 Collective Bargaining Agreement, and to future retirees born in those years who, during the term of the 1999 Agreement, (i) retire prior to attaining age 62 under Sections 2 and 3 of Article II of the GM-UAW Pension Plan, and (ii) reach age 62. Any such supplements or temporary benefits payable at retirement will be extended until the month prior to the month in which the retiree is or would have been eligible for a Social Security benefit of 80% of the unreduced Social Security benefit amount ("80% date").~~ During these negotiations, the parties agreed that the term "80% Date" means the first of the month in which a retiree is or would have been eligible to receive a Social Security retirement benefit equal to 80% of the retiree's Social Security full retirement benefit. The parties further agreed to provide for extended early retirement supplements, interim supplements and temporary benefits for current retirees born in 1941, 1942, 1943, 1944 or 1945 who attain age 62 during the 2003 Agreement, and to future retirees born in those years who, during the term of the 2003 Agreement

   (i)   retire prior to attaining age 62 under Article II, Section (2) or Section (3) of the Pension Plan, and

   (ii)  attain age 62.

Any such supplements or temporary benefits payable will be extended until the month prior to the retiree's "80% Date".

During these negotiations the parties also agreed to provide early retirement supplements (notwithstanding the age limitations within Article II, Section 6(a)(1)), interim supplements (notwithstanding the age limitations of Article II, Section 6(a)(2)) and temporary benefits (notwithstanding the age limitations of Article II, Section 4(c)) to those

85

employees born in 1941, 1942, 1943, 1944 or 1945 who, during the term of this Agreement, retire subsequent to age 62 but prior to their individual "80% Date". For the purpose of applying this provision, interim supplements for those employees who retire after age 62 and were otherwise not eligible for an interim supplement will be determined as though the employee retired at age 61. In no event shall this provision serve to provide a total benefit at any time to an employee which is greater than the total benefit payable to a similarly situated employee who retirees prior to age 62 with the same credited service.

For those retirees whose monthly basic benefit is subject to redetermination at age 62 and one month, the total amount of monthly pension benefit payable, subject to applicable increases, will be the same as that provided immediately prior to age 62 until attainment of the "80% date". For this purpose, any early retirement supplement or interim supplement payable after age 62 will be reduced by the amount of basic benefit that was increased as the result of the redetermination. For a retiree who is receiving an early retirement supplement or an interim supplement, who also is receiving a Social Security Disability benefit, that supplement will cease at age 62 and one month, as currently.

The parties further agree that, during the term of the ~~1999~~ 2003 Collective Bargaining Agreement, they would review the issues surrounding the changes in the Social Security "80% date" and evaluate alternatives to address this issue in the next Collective Bargaining Agreement.

Very truly yours,

DELPHI ~~AUTOMOTIVE SYSTEMS~~ CORPORATION


~~Steven L. Gebbia~~ Kevin M. Butler
~~Executive Director-Employee Benefits~~
Vice President
Human Resource Management

Accepted and Approved:

Name of Union

_____

_____

_____

By:

# Exhibit O



*Supplemental Agreement*

Covering

**PERSONAL SAVINGS PLAN**

Exhibit G

to

AGREEMENT

between

DELPHI CORPORATION

and

UAW

dated

September 18, 2003

# *Supplemental Agreement*

Covering

## PERSONAL SAVINGS PLAN

**Exhibit G**

**to**

**AGREEMENT**

**between**

**DELPHI CORPORATION**

**and**

**UAW**

**dated**

**September 18, 2003**

# TABLE OF CONTENTS

|  |  | Page No. |
|---|---|---|
| INDEX TO EXHIBITS G AND G-1 | | (vi) |
| Section 1. | Establishment of Plan | (3) |
| Section 2. | Administration | (3) |
| Section 3. | Non-Applicability of Collective Bargaining Agreement Grievance Procedure | (4) |
| Section 4. | Governmental Rulings | (4) |
| Section 5. | Duration of Agreement | (5) |
| EXHIBIT G-1 — PERSONAL SAVINGS PLAN | | 1 |
| **Article I** | **Establishment of Personal Savings Plan** | 3 |
| 1.01 | Establishment of Plan | 3 |
| 1.02 | Effective Date of Amended Plan | 3 |
| 1.03 | Governmental Rulings | 3 |
| **Article II** | **Definition of Terms** | 3 |
| 2.01 | Account | 3 |
| 2.02 | Administrator | 3 |
| 2.03 | After-Tax Assets | 4 |
| 2.04 | After-Tax Savings | 4 |
| 2.05 | Business Day | 4 |
| 2.06 | Code | 4 |
| 2.07 | Compensation | 5 |
| 2.08 | Corporation | 5 |
| 2.09 | Corporation Stock | 5 |
| 2.10 | GM Common Stock Funds | 5 |
| 2.11 | Current Market Value | 6 |
| 2.12 | Date of Valuation | 6 |
| 2.13 | Deferred Assets | 6 |
| 2.14 | Deferred Savings | 7 |
| 2.15 | Delphi Common Stock Fund | 7 |

(i)

# TABLE OF CONTENTS

|  |  | Page No. |
|---|---|---|
| 2.16 | Distributee | 7 |
| 2.17 | EDS Common Stock Fund | 7 |
| 2.18 | Effective Date of Investment Option Election | 7 |
| 2.19 | Effective Date of Loan | 8 |
| 2.20 | Effective Date of Termination | 8 |
| 2.21 | Effective Date of Transfer of Assets | 8 |
| 2.22 | Effective Date of Withdrawal | 8 |
| 2.23 | Eligible Rollover Distribution | 8 |
| 2.24 | Eligible Weekly Earnings | 9 |
| 2.25 | Employee | 9 |
| 2.26 | Excess Contributions | 11 |
| 2.27 | Excess Aggregate Contributions | 11 |
| 2.28 | Financial Hardship | 11 |
| 2.29 | Highly Compensated Employees | 12 |
| 2.30 | Leased Employees | 13 |
| 2.31 | Named Fuduciary | 14 |
| 2.32 | Normal Retirement Age | 14 |
| 2.33 | Participant | 14 |
| 2.34 | Plan | 14 |
| 2.35 | Plan Year | 14 |
| 2.36 | Prime Rate | 14 |
| 2.37 | Raytheon Company Common Stock Fund | 14 |
| 2.38 | Seniority | 15 |
| 2.39 | Total and Permanent Disability | 15 |
| 2.40 | Trustee | 15 |
| Article III | Eligibility | 15 |
| 3.01 | Eligibility | 15 |

(ii)

# TABLE OF CONTENTS

|  |  | Page No. |
|---|---|---|
| **Article IV** | **Cash or Deferred Arrangement** | 16 |
| 4.01 | Cash or Deferred Arrangement | 16 |
| 4.02 | Transfer of Assets to or Receipt of Assets from Other Qualified Plans. | 17 |
| 4.03 | Rollovers | 18 |
| 4.04 | Cash or Deferred Arrangement Limitation | 19 |
| **Article V** | **After-Tax Savings** | 21 |
| 5.01 | After-Tax Savings | 21 |
| 5.02 | Transfer of Assets to or Receipt of Assets from Other Qualified Plans. | 21 |
| 5.03 | After-Tax Contribution Limitation | 22 |
| 5.04 | Special Rules | 23 |
| **Article VI** | **Investment of Participant's Savings** | 24 |
| 6.01 | Investment Options | 24 |
| 6.02 | Vesting | 26 |
| 6.03 | Withdrawals | 26 |
| 6.04 | Distribution of Assets | 28 |
| 6.05 | Form of Distribution | 30 |
| 6.06 | Loans | 32 |
| **Article VII** | **Trust Fund** | 35 |
| 7.01 | Contributions to the Trustee | 35 |
| 7.02 | Investment Options | 36 |
| 7.03 | EDS Common Stock (0.01 Par Value) | 38 |
| 7.04 | Raytheon Company Common Stock | 38 |
| 7.05 | GM Common Stocks | 39 |

(iii)

# TABLE OF CONTENTS

|  |  | Page No. |
|---|---|---|
| **Article VIII** | **Other Provisions** | 39 |
| 8.01 | Non-Assignability | 39 |
| 8.02 | Designation of Beneficiaries in Event of Death | 40 |
| 8.03 | Merger or Consolidation | 41 |
| 8.04 | Limitations on Contributions and Benefits | 41 |
| 8.05 | Deferred Savings Limitation | 43 |
| 8.06 | Provisions to Comply With Section 416 of the Code | 44 |
| 8.07 | Investment Decisions | 44 |
| 8.08 | Special Provisions Regarding Veterans | 44 |
| 8.09 | Prohibition on Reversion | 45 |
| **Article IX** | **Employee Stock Ownership Plan Provisions** | 46 |
| 9.01 | Employee Stock Ownership Plan Provisions | 46 |
| 9.02 | ESOP Pre-Tax Savings Limitation | 46 |
| 9.03 | ESOP After-Tax Contribution Limitation | 47 |
| 9.04 | ESOP Special Rules | 49 |
| 9.05 | Distribution of ESOP Dividends | 50 |
| **Article X** | **Administration** | 50 |
| 10.01 | Administrative Responsibility | 50 |
| 10.02 | Records | 51 |
| 10.03 | Administrative Expenses | 51 |
| 10.04 | Participant Statements | 51 |

(iv)

# TABLE OF CONTENTS

|  |  | Page No. |
|---|---|---|
| 10.05 | Incapacity | 51 |
| 10.06 | Notice of Claim Denial | 52 |
| 10.07 | Confidential Information | 52 |
| **Article XI** | **Amendment, Modification, Suspension or Termination** | 53 |
| 11.01 | Amendment, Modification, Suspension, or Termination | 53 |
| 11.02 | Distribution Upon Plan Termination | 53 |
| Letter Agreements — | Misc. (Benefits Training and Education) | 54 |
|  | — Misc. (Improving Benefits Service Through Technology) | 56 |
|  | — PSP Contribution Level and Roth IRA | 58 |
|  | — PSP Employee Workshop | 59 |
|  | — Dividend and Cash Investment Plan | 60 |
|  | — Annual Review of Fund Performance | 61 |
|  | — Electronic Loan Repayment | 63 |
|  | — Suggestion Award Payments | 64 |
|  | — 529 College Savings Plan | 66 |

# INDEX TO

EXHIBIT G    — 2003 Supplemental Agreement Between
Delphi Corporation
and the UAW (Personal Savings Plan)

EXHIBIT G-1 — Personal Savings Plan

| | Article | Section | Page |
|---|---|---|---|
| **ACCOUNT** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.01 | 3 |
| **ADMINISTRATIVE EXPENSES**. . . . . . . . . . . . . . . . . . | X | 10.03 | 51 |
| **ADMINISTRATIVE RESPONSIBILITY** | | | |
| Authority of Named Fiduciary | X | 10.01 | 50 |
| Confidential Information . . . . . | X | 10.07 | 52 |
| Responsibility for . . . . . . . . . | Ex. G | 2 | (3) |
| **ADMINISTRATOR** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.02 | 3 |
| **AFTER-TAX ASSETS** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.03 | 4 |
| **AFTER-TAX SAVINGS** | | | |
| Contributions. . . . . . . . . . . . . | V | 5.01 | 21 |
| Definition of . . . . . . . . . . . . . | II | 2.04 | 4 |
| Limitation . . . . . . . . . . . . . . . | V | 5.03 | 22 |
| Special Rules . . . . . . . . . . . . . | V | 5.04 | 23 |
| Transfer of Assets . . . . . . . . . | V | 5.02 | 21 |
| **BENEFICIARIES** | | | |
| Designation of . . . . . . . . . . . . | VIII | 8.02 | 40 |
| Payment to . . . . . . . . . . . . . . . | VIII | 8.02 | 40 |
| **BUSINESS DAY** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.05 | 4 |
| **CASH OR DEFERRED ARRANGEMENT** | | | |
| Contributions . . . . . . . . . . . . . | IV | 4.01 | 16 |
| Highly Compensated Employees. | IV | 4.04 | 19 |
| Limitation . . . . . . . . . . . . . . . | IV | 4.04 | 19 |
| Rollovers . . . . . . . . . . . . . . . . | IV | 4.03 | 18 |
| Transfer of Assets . . . . . . . . . | IV | 4.02 | 17 |

|  | Article | Section | Page |
|---|---|---|---|
| **CLAIM DENIAL** | | | |
| Notice of . . . . . . . . . . . . . . . . | X | 10.06 | 52 |
| Review of. . . . . . . . . . . . . . . | X | 10.06 | 52 |
| Time Limit for Review . . . . . . | X | 10.06 | 52 |
| **CODE** | | | |
| Definition of . . . . . . . . . . . . | II | 2.06 | 4 |
| Provisions to Comply | | | |
| With Section 416 . . . . . . . . | VIII | 8.06 | 44 |
| **COMPENSATION** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.07 | 5 |
| **CONFIDENTIAL INFORMATION** | X | 10.07 | 52 |
| **CONTRIBUTIONS** | | | |
| Changes in Payroll Deduction. | IV | 4.01 | 17 |
| Limits. . . . . . . . . . . . . . . . . . . | IV | 4.01 | 17 |
| Percentage of Eligible | | | |
| Weekly Earnings. . . . . . . . . | IV | 4.01 | 16 |
| Profit Sharing Amounts . . . . . | IV | 4.01 | 17 |
| To the Trustee . . . . . . . . . . . | VII | 7.01 | 35 |
| **CORPORATION** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.08 | 5 |
| **CORPORATION STOCK** | | | |
| Changes in Number or Class . . | VII | 7.02 | 36 |
| Definition of . . . . . . . . . . . . . | II | 2.09 | 5 |
| Purchase of . . . . . . . . . . . . . | VII | 7.02 | 36 |
| Sales of . . . . . . . . . . . . . . . . | VII | 7.02 | 36 |
| **CURRENT MARKET VALUE** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.11 | 6 |
| **DATE OF VALUATION** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.12 | 6 |
| **DEFERRED ASSETS** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.13 | 6 |
| **DEFERRED SAVINGS** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.14 | 7 |
| **DEFERRED SAVINGS** | | | |
| **LIMITATION** . . . . . . . . . . . . . . . | VIII | 8.05 | 43 |

| | Article | Section | Page |
|---|---|---|---|
| DEFINITIONS . . . . . . . . . . . . . . | II | — | 3 |
| DISTRIBUTEE | | | |
| Definition of . . . . . . . . . . . . . | II | 2.16 | 7 |
| DISTRIBUTION OF ASSETS | | | |
| Cash-in-Lieu of Shares . . . . . . | VI | 6.05 | 30 |
| Date of Valuation . . . . . . . . . . | VI | 6.05 | 30 |
| Form of Distribution . . . . . . . . | VI | 6.05 | 30 |
| In Event of Death . . . . . . . . . . | VIII | 8.02 | 40 |
| Undeliverable Assets . . . . . . . . | VI | 6.04 | 29 |
| Upon Attainment of Age 70-1/2 . | VI | 6.04 | 29 |
| Upon Plan Termination . . . . . . | XI | 11.02 | 53 |
| Upon Termination of Employment | VI | 6.04 | 28 |
| DURATION OF AGREEMENT. . | Ex. G. | 5 | (5) |
| EDS COMMON STOCK FUND | | | |
| Cash-in-Lieu of Shares . . . . . . | VII | 7.03 | 38 |
| Definition of . . . . . . . . . . . . . | II | 2.17 | 7 |
| Investment of Dividends . . . . . | VII | 7.03 | 38 |
| Transfer of Assets . . . . . . . . . | VII | 7.03 | 38 |
| Withdrawal or Settlement . . . . | VII | 7.03 | 38 |
| EFFECTIVE DATE OF AMENDED PLAN . . . . . . . . . . . . . . . . . . . . | I | 1.02 | 3 |
| EFFECTIVE DATE OF INVESTMENT OPTION ELECTION | | | |
| Definition of . . . . . . . . . . . . . | II | 2.18 | 7 |
| EFFECTIVE DATE OF LOAN | | | |
| Definition of . . . . . . . . . . . . . | II | 2.19 | 8 |
| EFFECTIVE DATE OF TERMINATION | | | |
| Definition of . . . . . . . . . . . . . | II | 2.20 | 8 |
| EFFECTIVE DATE OF TRANSFER OF ASSETS | | | |
| Definition of . . . . . . . . . . . . . | II | 2.21 | 8 |
| EFFECTIVE DATE OF WITHDRAWAL | | | |
| Definition of . . . . . . . . . . . . . | II | 2.22 | 8 |

|  | Article | Section | Page |
|---|---|---|---|
| ELIGIBILITY . . . . . . . . . . . . . . . | III | 3.01 | 15 |
| **ELIGIBLE ROLLOVER DISTRIBUTION** |  |  |  |
| Definition of . . . . . . . . . . . . | II | 2.23 | 8 |
| **ELIGIBLE WEEKLY EARNINGS** |  |  |  |
| Contributions as Percentage of | IV | 4.01 | 16 |
| Definition of . . . . . . . . . . . . | II | 2.24 | 9 |
| Performance Bonus Payment. . | II | 2.24 | 9 |
| **EMPLOYEE** |  |  |  |
| Definition of . . . . . . . . . . . . | II | 2.25 | 9 |
| **EMPLOYEE STOCK OWNERSHIP PLAN (ESOP)** |  |  |  |
| After-Tax Contribution Limitation . . . . . . . . . . . . . . . | IX | 9.03 | 47 |
| Definition of . . . . . . . . . . . . | IX | 9.01 | 46 |
| Distribution of Dividends . . . . | IX | 9.05 | 50 |
| Pre-Tax Savings Limitation . . . | IX | 9.02 | 46 |
| Special Rules . . . . . . . . . . . . . | IX | 9.04 | 49 |
| ESTABLISHMENT OF PLAN . . | I | 1.01 | 3 |
| Board of Directors' Approval . | Ex. G | 1 | (3) |
| Internal Revenue Service Approval . . . . . . . . . . . . . . . | Ex. G | 4 | (4) |
| EXCESS CONRIBUTIONS . . . . . | II | 2.26 | 11 |
| **EXCESS AGGREGATE CONTRIBUTIONS** . . . . . . . . . . | II | 2.27 | 11 |
| **FIDUCIARY** |  |  |  |
| Delegation of Responsibilities. | X | 10.01 | 50 |
| **FINANCIAL HARDSHIP** |  |  |  |
| Definition of . . . . . . . . . . . . | II | 2.28 | 11 |
| **GENERAL MOTORS INVESTMENT MANAGEMENT CORPORATION** . . . . . . . . . . . . . | X | 10.01 | 50 |
| **GM COMMON STOCK FUNDS** |  |  |  |
| Definition of . . . . . . . . . . . . | II | 2.10 | 5 |
| Investment of Dividends . . . . . | VII | 7.05 | 39 |
| Transfer of Assets . . . . . . . . . | VII | 7.05 | 39 |
| Withdrawal or Settlement . . . . | VII | 7.05 | 39 |

| | Article | Section | Page |
|---|---|---|---|
| **GOVERNMENTAL RULINGS** | | | |
| Approval by Internal Revenue Service . . . . . . . . . . . . . . . . . | I | 1.03 | 3 |
| Plan Contingent Upon . . . . . . Ex. G | | 4 | (4) |
| **GRIEVANCE PROCEDURE** | | | |
| Non-Applicability of . . . . . . . Ex. G | | 3 | (4) |
| **HIGHLY COMPENSATED EMPLOYEES** | | | |
| Definition of . . . . . . . . . . . . | II | 2.29 | 12 |
| Limitations. . . . . . . . . . . . . . | IV | 4.04 | 19 |
| **INCAPACITY**. . . . . . . . . . . . . . | X | 10.05 | 51 |
| **INTERNAL REVENUE SERVICE** | | | |
| Code. . . . . . . . . . . . . . . . . . . | II | 2.06 | 4 |
| Governmental Rulings. . . . . . | I | 1.03 | 3 |
| **INVESTMENT DECISIONS** . . . . | VIII | 8.07 | 44 |
| **INVESTMENTS** | | | |
| By Trustee . . . . . . . . . . . . . . | VII | 7.01 | 35 |
| Contributions. . . . . . . . . . . . | VI | 6.01 | 24 |
| Delphi Common Stock Fund. . | VII | 7.02 | 36 |
| Election of . . . . . . . . . . . . . . | VI | 6.01 | 24 |
| Investment of Dividends . . . . | VII | 7.02 | 36 |
| Mutual Funds. . . . . . . . . . . . | VII | 7.02 | 37 |
| Promark Funds. . . . . . . . . . . | VII | 7.02 | 37 |
| Socially Oriented Funds . . . . | VII | 7.02 | 37 |
| Transfer of Assets . . . . . . . . . | VI | 6.01 | 25 |
| **LEASED EMPLOYEES** | | | |
| Definition of . . . . . . . . . . . . | II | 2.30 | 13 |
| **LIABILITIES OF CORPORATION**. | VII | 7.01 | 36 |
| **LIMITATIONS ON CONTRIBUTIONS AND BENEFITS** . . . . . . . . . . . . . . | VIII | 8.04 | 41 |

(x)

| | Article | Section | Page |
|---|---|---|---|
| **LOANS** | | | |
| Assets.................... | VI | 6.06 | 32 |
| Current Market Value ....... | VI | 6.06 | 32 |
| Date of................... | VI | 6.06 | 32 |
| Default on ............... | VI | 6.06 | 34 |
| Interest Rate of........... | VI | 6.06 | 32 |
| Layoff or Leave Repayment .. | VI | 6.06 | 34 |
| Period of Time Granted for ... | VI | 6.06 | 32 |
| Repayment of.............. | VI | 6.06 | 33 |
| Termination of Employment .. | VI | 6.06 | 34 |
| When Permitted........... | VI | 6.06 | 32 |
| **MERGER OR CONSOLIDATION OF PLAN** .................. | VIII | 8.03 | 41 |
| **NAMED FIDUCIARY** | | | |
| Definition of .............. | II | 2.31 | 14 |
| **NON-ASSIGNABILITY** ....... | VIII | 8.01 | 39 |
| **NON-FORFEITABILITY**....... | VI | 6.02 | 26 |
| **NORMAL RETIREMENT AGE** | | | |
| Definition of .............. | II | 2.32 | 14 |
| **PARTICIPANT** | | | |
| Definition of .............. | II | 2.33 | 14 |
| Statements ................ | X | 10.04 | 51 |
| **PLAN** | | | |
| Amendment, Modification, Suspension, or Termination of...................... | XI | 11.01 | 53 |
| Definition of .............. | II | 2.34 | 14 |
| **PLAN YEAR** | | | |
| Definition of .............. | II | 2.35 | 14 |
| **PRIME RATE** | | | |
| Definition of .............. | II | 2.36 | 14 |
| **PROHIBITION ON REVERSION** . | VIII | 8.09 | 45 |
| **RAYTHEON COMPANY COMMON STOCK FUND** | | | |
| Investment of Dividends ..... | VII | 7.04 | 38 |
| Transfer of Assets .......... | VII | 7.04 | 38 |
| Withdrawal or Settlement .... | VII | 7.04 | 38 |

| | Article | Section | Page |
|---|---|---|---|
| RECORDS | | | |
| Maintenance of . . . . . . . . . . . | X | 10.02 | 51 |
| Annual Valuations of Trust Fund or Market Value . . . . . . | X | 10.02 | 51 |
| ROLLOVERS . . . . . . . . . . . . . . . | IV | 4.03 | 18 |
| SENIORITY | | | |
| Definition of . . . . . . . . . . . . | II | 2.38 | 15 |
| Required for Eligibility . . . . . . | III | 3.01 | 15 |
| SPECIAL PROVISIONS REGARDING VETERANS . . . . . | VIII | 8.08 | 44 |
| TERMINATION | | | |
| Distribution Upon Plan Termination. . . . . . . . . . . . . | XI | 11.02 | 53 |
| Settlement Upon Termination of Employment . . . . . . . . . . | VI | 6.04 | 28 |
| TOTAL AND PERMANENT DISABILITY | | | |
| Definition of . . . . . . . . . . . . . | II | 2.39 | 15 |
| TRANSFER OF ASSETS TO OR RECEIPT OF ASSETS FROM OTHER QUALIFIED PLANS . . . | IV | 4.02 | 17 |
| TRUSTEE | | | |
| Definition of . . . . . . . . . . . . . | II | 2.40 | 15 |
| VALUATION | | | |
| Date of . . . . . . . . . . . . . . . . | II | 2.12 | 6 |
| VESTING . . . . . . . . . . . . . . . . . | VI | 6.02 | 26 |
| VOTING RIGHTS . . . . . . . . . . . | VII | 7.02 | 36 |
| WITHDRAWALS | | | |
| Amount of . . . . . . . . . . . . . . . | VI | 6.03 | 27 |
| Financial Hardship. . . . . . . . . | VI | 6.03 | 27 |
| Outstanding Loan(s) . . . . . . . . | VI | 6.03 | 27 |
| Reasons for . . . . . . . . . . . . . | VI | 6.03 | 26 |
| Suspension from Participation. | VI | 6.03 | 27 |
| When Permitted . . . . . . . . . . . | VI | 6.03 | 26 |

**EXHIBIT G**

**SUPPLEMENTAL AGREEMENT**

**(Personal Savings Plan)**

(2)

# SUPPLEMENTAL AGREEMENT
# (PERSONAL SAVINGS PLAN)

On this 18th day of September, 2003, Delphi Corporation, hereinafter referred to as the Corporation or Delphi, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, hereinafter referred to as the Union, on behalf of the employees covered by the Collective Bargaining Agreement of which this Agreement becomes a part, agree as follows:

## SECTION 1. Establishment of Plan

Subject to the approval of its Board of Directors, which occurred on December 3, 2003, the Corporation established Personal Savings Plan for Hourly-Rate Employees in the United States, hereinafter referred to as the "Plan," a copy of which is attached hereto and made a part of this Agreement to the extent applicable to the employees represented by the Union and covered by this Agreement as if fully set out herein, modified and supplemented, however, by the provisions hereinafter. In the event of any conflict between the provisions of the Plan and the provisions of this Agreement, the provisions of this Agreement will supersede the provisions of the Plan to the extent necessary to eliminate such conflict.

## SECTION 2. Administration

The Corporation shall have the responsibility for administration of the Plan.

Notwithstanding Article VI, Section 6.04 of the Plan, distribution of all assets in the Account of a Participant who has been discharged shall be deferred, unless the Participant otherwise elects irrevocably, pending the final resolution of any grievance over such Participant's discharge pursuant to the Collective Bargaining Agreement.

(3)

G, Sect. 3

## SECTION 3. Non-Applicability of Collective Bargaining Agreement Grievance Procedure

No matter respecting the Plan as supplemented by this Agreement or any difference arising thereunder shall be subject to the grievance procedure established in the Collective Bargaining Agreement between the Corporation and the Union.

## SECTION 4. Governmental Rulings

The Plan and the Plan as it may be supplemented by superseding provisions of this Agreement are contingent upon and subject to the Corporation obtaining and retaining from the Internal Revenue Service a ruling, satisfactory to the Corporation, holding that the Plan meets the requirements of Section 401 of the Code, or any section of the Code which amends, supersedes, or supplements said section, and that any trust forming a part of the Plan is exempt from income taxation under Section 501(a) of the Code, or any section of the Code which amends, supersedes, or supplements said section. In the event the above ruling is not obtained, the Corporation, within 30 days after any such disapproval, will give written notice thereof to the Union.

Notwithstanding any other provisions of this Agreement or the Plan, the Corporation, with the consent of the Director of the General Motors Department of the Union, may, during the term of this Agreement, make revisions in the Plan not inconsistent with the purposes, structure, and basic provisions thereof which shall be necessary to obtain or retain the ruling referred to in this Section 4. Any such revisions shall adhere as closely as possible to the language and intent of provisions outlined in this Agreement and the Plan.

(4)

G, Sect. 5

## SECTION 5. Duration of Agreement

This Agreement and Plan as supplemented by this Agreement shall continue in effect until otherwise agreed to by the Corporation and the Union.

In witness hereof, the parties hereto have caused this Agreement to be executed the day and year first above written.

(5)

| INTERNATIONAL UNION, UAW | DELPHI CORPORATION |
|---|---|
| RON GETTELFINGER | J. T. BATTENBERG III |
| RICHARD SHOEMAKER | ALAN DAWES |
| JIM BEARDSLEY | MARK WEBER |
| HENDERSON SLAUGHTER | DAVE WOHLEEN |
| JOE SPRING | DON RUNKLE |
| BILL STEVENSON | RODNEY O'NEAL |
| DAVE CURSON | KEVIN M.BUTLER |
| JIM SHROAT | RALPH E. HANDLEY |
| RON BIEBER | ATUL PASRICHA |
| SCOTT CAMPBELL | STEVEN L. GEBBIA |
| ANTONIO ORTIZ | DARRELL E. KIDD |
| TOM WALSH | NICK HOTCHKIN |
| TOM WEEKLEY | MARK CASHDOLLAR |
| WILLIE WILLIAMS | ROBERT GERLING |
| LEON SKUDLAREK | ED GOETIL |
| ESTHER CAMPBELL | DON HOOPER |
| HAROLD COX | MARK LEWIS |
| GREG FEDAK | CHARLES MCWEE |
| MARK KELLY | BERNARD QUICK |
| FAYE MCAFEE | JUDY MATZELLE |
| RICK MCKIDDY | M. BETH SAX |
| PAUL MITCHELL | FRANK KUPLICKI |
| HAROLD SHELTON | SCOTT HARRIS |
| DAVID SHOEMAKER | DAVID BODKIN |
| LAWRENCE SMITH | MICHAEL S. FLIGSTEIN |
| MAURICE STATEN | THOMAS SMITH |
| CINDY SUEMNICK | DAVE CAIROLI |
| LARRY SZUMAL | SALVATORE GALANTE, M.D. |
| RON BROGAN | KARL BOSSUNG |
| BOB BUENO | THOMAS B. ARNOLD |
| MIDGE COLLETTE | BRENDA PAGE |
| MARK HAWKINS | LARRY B. PEOPLES |
| JIM JENKINS | DAVE PETTYES |
| LEE JONES | MARK A. WINFIELD |
| MIKE JONES | RICH BALGENORTH |
| LARRY KUK | JOHN L. DEMARCO |
| RICK O'DONNELL | PAT MCDONALD |
| DARRELL SHEPARD | EVELYN JESTER |
| CLYDE SIMS | LESLEY MARCOTT |
| RAY ALLEN | JAMES M. PETRIE |
| PAUL ALLMAND | MARK PIERCE |
| GORDON ANDREWS | JERRY SEITER |
| NATE BEARDSLEY | DEBBIE DOUGLAS |
| CHARLIE BEST | DEBORAH FRANCE |

(6)

| INTERNATIONAL UNION, UAW | DELPHI CORPORATION |
|---|---|
| JIM BLAINE | DALE JOHNSON |
| RON BLYTHE | NANCY JULIUS |
| JOAN BRYANT | BRIAN C. STUDER |
| REBECCA CABREROS | SHARON L. SMITH |
| PATTI CAMPBELL | MICHELLE TRIMBLE |
| DEBBIE CHAMBERLAIN | RENEE ATKINSON |
| JERRY CHOTKOWSKI | BETH BROWN |
| JAMES CIOTTI | PAUL CAIGOY |
| JERRY CLIFTON | STEPHANIE DAMERON-CLARK |
| JIM CLIFTON | DEANNA DOROGY |
| TIM COBB | CHRISTINE DARBY |
| CHARLIE COY | GARY ELLIOTT |
| BRYAN CZAPE | LAURA HARDY |
| SHELLEY CZEIZLER | JOANNA KAPLAN |
| STEVE CZERNESKI | CHRIS KRUMINS |
| GEORGE DAKURAS | LESIA MAHON |
| DICK DIFFIN | DENNIS RIPPEL |
| TERRI DOLAN | GREG SCHMIEDEKNECHT |
| DON DOUGLAS | MELINDA J. WILEY |
| DAVE DREMER | CRISTINA M. ZATEK |
| SCOTT FARRADAY | LUCE RUBIO |
| JOHN FEDEWA | ARTHUR HUBER |
| TOM FORD | |
| BILL FREEMAN | |
| RON GRAHAM | |
| MOSES GREEN | |
| MIKE GRIMES | |
| CHARLIE GROSS | |
| LESLIE HALIBURTON | |
| FRANK HAMMER | |
| BILL HAYES | |
| KEN HOLDER | |
| DIANA HROVATIN | |
| MOHAMMED ISA | |
| DAVE KAGELS | |
| JIM KING | |
| TOM KINMAN | |
| PETE KOROLENKO | |
| DAVE KOSCINSKI | |
| DAN LACK | |
| JAMES LAKE | |
| DIANE LAWTON | |
| RANDY LENTZ | |
| REG MCGHEE | |

## INTERNATIONAL UNION, UAW

STEVE MCLIMANS
GREG NELSON
DON NEWTON
KRIS OWENS
ED PARKER
LINDA PATTON
RITA PERSINGER
STEVE RAICH
FRED RASPBERRY
BONNI REFFITT
LORENZO RIVERA
JOHN RUPP
RUSS RUSSAW
BILL SAVAGE
JIM SAYLOR
RENE SCHUTTE
BILL SCRASE
DARRELL SMITH
JAMES STEVENS
STAN STOKER
TOM STRUCKMAN
CRICKETT SWEET
LIBBY TOMASKO
EDDIE TRENT
KENNY VANHORN
DWAYNE WALDROP
RON WALKER
JOANNA WHITAKER
MICHAEL WILSON
AL YELLE

**EXHIBIT G-1**

**THE DELPHI**

**PERSONAL SAVINGS PLAN**

**FOR HOURLY-RATE EMPLOYEES**

**IN THE UNITED STATES**

1

2

# ARTICLE I

# ESTABLISHMENT OF
# PERSONAL SAVINGS PLAN

### 1.01   Establishment of Plan

Delphi Corporation hereby establishes The Delphi Personal Savings Plan for Hourly-Rate Employees in the United States (hereinafter referred to as the Plan), as set forth herein.

### 1.02   Effective Date of Amended Plan

The amended Plan shall become effective January 1, 2004, except as otherwise may be provided herein.

### 1.03   Governmental Rulings

This Plan is conditioned upon approval by the Internal Revenue Service in accordance with Sections 401 and 501(a) of the Code, or any section of the Code which amends, supersedes, or supplements said sections.

# ARTICLE II

# DEFINITION OF TERMS

The following definitions will apply to all words and phrases capitalized in the text which follows.

### 2.01   "Account"

Account means the assets credited to a Participant in the trust fund established under the Plan.

### 2.02   "Administrator"

Administrator means Delphi Corporation.

3

Art. II, 2.03

## 2.03   "After-Tax Assets"

After-Tax Assets means the units of the GM Common Stock Fund, EDS Common Stock Fund, GM Class H Common Stock Fund, Delphi Common Stock Fund, Raytheon Company Common Stock Fund, Promark Funds, Socially Oriented Funds, and shares of the Mutual Funds purchased with After-Tax Savings and dividends and earnings thereon.

## 2.04   "After-Tax Savings"

After-Tax Savings means amounts contributed to the trust fund by the Corporation as elected by a Participant in accordance with Section 5.01.

## 2.05   "Business Day"

Business Day means a day the New York Stock Exchange is open for business, except in the event of the occurrence on any day of government restrictions, exchange or market rulings, suspensions of trading, acts of civil or military authority, national emergencies, fires, earthquakes, floods or other catastrophes, acts of God, wars, riots or failures of communication or power supply, or other circumstances beyond the reasonable control of the Trustee, the Trustee shall determine in its discretion the extent to which such day shall constitute a Business Day for any purpose of the Plan. If the New York Stock Exchange is closed as a result of a holiday, weekend, or at the end of a Business Day, normally 4:00 p.m. Eastern Time, then the Effective Date will be the next following Business Day.

## 2.06   "Code"

The term "Code" means the Internal Revenue Code of 1986, as amended.

4

### 2.07 "Compensation"

Compensation means the total amount paid by the Corporation to the Employee with respect to hourly-rate employment during any Plan Year as evidenced by Internal Revenue Service Form W-2 or its equivalent, plus amounts not currently includable in income by reason of Sections 125, 132(f)(4) (effective January 1, 2001), and/or 402(e)(3) of the Code.

### 2.08 "Corporation"

Corporation means Delphi Corporation.

### 2.09 "Corporation Stock"

Corporation Stock means Delphi Common Stock, issued by Delphi Corporation with voting power and dividend rights no less favorable than the voting power and dividend rights of other common stock issued by the Corporation.

### 2.10 "GM Common Stock Funds"

• **GM Common Stock Fund** - The term "GM Common Stock Fund" shall mean the investment option consisting principally of common stock, $1-2/3 par value, issued by General Motors Corporation. A portion of the GM Common Stock Fund may be invested in short-term fixed income investments and money market instruments.

• **GM Class H Common Stock Fund** - The term "GM Class H Common Stock Fund" shall mean the investment option consisting principally of General Motors Class H common stock, $0.10 par value, issued by General Motors Corporation. A portion of the GM Class H Common Stock Fund may be invested in short-term fixed income investments and money market instruments.

5

Art. II, 2.11

### 2.11   "Current Market Value"
### Current Market Value means

**(a)**   for GM Common Stock Fund, EDS Common Stock Fund, GM Class H Common Stock Fund, Delphi Common Stock Fund, Raytheon Company Common Stock Fund, and the Promark Funds, the fair market value of the units reported by the respective fund,

**(b)**   for assets attributable to the Mutual Funds, the fair market value of the units reported by the Mutual Fund company, and

**(c)**   for assets attributable to the Socially Oriented Funds, the fair market value of the units reported by the companies representing such Funds.

### 2.12   "Date of Valuation"

Date of Valuation means the end of a Business Day, normally 4:00 p.m. Eastern Time, that a Participant initiates an investment option election, withdrawal, transfer of assets, settlement upon termination of employment, or loan, and such date shall be the Effective Date of Investment Option Election, Effective Date of Withdrawal, Effective Date of Transfer of Assets, Effective Date of Termination, or Effective Date of Loan, whichever applies.

### 2.13   "Deferred Assets"

Deferred Assets means the units of the GM Common Stock Fund, EDS Common Stock Fund, GM Class H Common Stock Fund, Delphi Common Stock Fund, Raytheon Company Common Stock Fund, Promark Funds, Socially Oriented Fund(s), and shares of the Mutual Funds purchased with Deferred Savings and dividends and earnings thereon.

6

## 2.14    "Deferred Savings"

Deferred Savings means amounts contributed to the
trust fund by the Corporation as elected by a Participant
in accordance with Sections 4.01 and 4.02.

## 2.15    "Delphi Common Stock Fund"

"Delphi Common Stock Fund" means the investment
consists principally of Delphi Corporation (Delphi)
Common Stock.  A portion of the Delphi Common
Stock Fund may be invested in short-term fixed income
investments and money market instruments.

## 2.16    "Distributee"

Distributee means an Employee or former Employee of
the Corporation to whom assets are to be distributed.
Additionally, the surviving spouse of the Employee or
former Employee or alternate payee to whom assets are
to be distributed under a Qualified Domestic Relations
Order, as defined in Section 414(p) of the Code, are
Distributees with regard to their interest.

## 2.17    "EDS Common Stock Fund"

EDS Common Stock Fund means the investment which
consists principally of Electronic Data Systems
Corporation (EDS) common stock, $0.01 par value.  A
portion of the EDS Common Stock Fund may be
invested in short-term fixed income investments and
money market instruments.

## 2.18    "Effective Date of Investment
Option Election"

Effective Date of Investment Option Election means the
Business Day on which appropriate direction to the
Trustee is received by the party designated by the
Administrator for an investment option change.

Art. II, 2.19

## 2.19   "Effective Date of Loan"

Effective Date of Loan means the Business Day on which appropriate direction to the Trustee is received by the party designated by the Administrator for a loan.

## 2.20   "Effective Date of Termination"

Effective Date of Termination means the Business Day on which termination of employment with the Corporation occurs.

## 2.21   "Effective Date of Transfer of Assets"

Effective Date of Transfer of Assets means the Business Day on which appropriate direction to the Trustee is received by the party designated by the Administrator for a transfer of assets.

## 2.22   "Effective Date of Withdrawal"

Effective Date of Withdrawal means the Business Day on which appropriate direction to the Trustee is received by the party designated by the Administrator for a withdrawal.

## 2.23   "Eligible Rollover Distribution"

Eligible Rollover Distribution means any distribution consisting of all or any portion of the Account of the Distributee, except that an Eligible Rollover Distribution does not include:

(i)   any distribution to the extent such distribution is required under Section 401(a)(9) of the Code;

(ii)   the portion of any distribution that is not includable in gross income;

(iii)   substantially equal installment payments that are payable for ten or more years; and

8

**(iv)** any distribution due to Financial Hardship as defined under Article II, Section 2.28.

## 2.24  "Eligible Weekly Earnings"

Eligible Weekly Earnings means base pay plus any Cost-of-Living Allowance received by a Participant from the Corporation with respect to hourly-rate employment during a calendar week and any Performance Bonus Payment (as defined in the Collective Bargaining Agreement) made to a Participant during the Plan Year. The term Eligible Weekly Earnings shall include any pay received for overtime hours, night shift, seven-day premiums, and suggestion awards. Eligible Weekly Earnings shall not include any other special payments, fees, or allowances, and in no event may exceed $200,000 per year effective January 1, 2001 (or as may be adjusted by the Secretary of the Treasury of the United States).

## 2.25  "Employee"

Employee means

**(a)**  any person regularly employed in the United States by the Corporation or by a wholly-owned or substantially wholly-owned domestic subsidiary in accordance with I.R.C. Section 414(b), (c), and (m) thereof, on an hourly-rate basis, including:

**(1)**  hourly-rate persons employed on a full-time basis and

**(2)**  part-time hourly-rate employees.

**(b)**  the term Employee shall not include employees of any directly or indirectly wholly-owned or substantially wholly-owned subsidiary of the Corporation, except as approved for employees of Delco Electronics Corporation, or as otherwise approved by the Delphi Board of Directors.

9

Art. II, 2.25(c)

(c)    the term "Employee" shall not include employees represented by a labor organization which has not signed an agreement making the Plan applicable to such employees.

(d)    the term "Employee" shall not include Leased Employees as defined under Article II, Section 2.30.

(e)    the term "Employee" shall not include contract employees, bundled-services employees, consultants, or similarly situated individuals, or individuals who have represented themselves to be independent contractors.

(f)    the following classes of individuals are ineligible to participate in this Plan, regardless of any other Plan terms to the contrary, and regardless of whether the individual is a common-law employee of the Corporation:

(i)    any individual who provides services to the Corporation where there is an agreement with a separate company under which the services are provided.  Such individuals are commonly referred to by the Corporation as "contract employees" or "bundled-services employees";

(ii)    any individual who has signed an independent contractor agreement, consulting agreement, or other similar personal service contract with the Corporation;

(iii)    any individual who both (a) is not included in any represented bargaining unit and (b) who the Corporation classifies as an independent contractor, consultant, contract employee, or bundled-services employee during the period the individual is so classified by the Corporation.

The purpose of this provision is to exclude from participation all persons who may actually be common-law employees of the Corporation, but who are not paid

10

as though they were employees of the Corporation, regardless of the reason they are excluded from the payroll, and regardless of whether that exclusion is correct.

## 2.26   "Excess Contributions"

The term Excess Contributions means the excess of:

**(a)**   the aggregate amount of Deferred Savings actually taken into account in computing the limitations for Highly Compensated Employees under Section 4.04(a), over

**(b)**   the maximum amount of Deferred Savings permitted under the limitations of Section 4.04(a) (determined by hypothetically reducing the Deferred Savings made on behalf of Highly Compensated Employees in the order of the ratios under Section 4.04(b), beginning with the highest of such ratios).

## 2.27   "Excess Aggregate Contributions"

The term Excess Aggregate Contributions means the excess of:

**(a)**   the aggregate amount of After-Tax Savings actually taken into account in computing the limitations for Highly Compensated Employees under Section 5.03(a), over

**(b)**   the maximum amount of After-Tax Savings permitted under the limitations of Section 5.03(a) (determined by hypothetically reducing the After-Tax Savings made on behalf of Highly Compensated Employees in the order of the ratios under Section 5.03(b), beginning with the highest of such ratios).

## 2.28   "Financial Hardship"

Financial Hardship means a reason given by a Participant when applying for a withdrawal before age

11

Art. II, 2.28

59-1/2 which indicates the withdrawal is (1) necessary to meet immediate and heavy financial needs of the Participant, (2) for an amount required to meet the immediate financial need created by the hardship, and (3) for an amount that is not reasonably available from other resources of the Participant. The amount of such withdrawal may be increased to include any amounts necessary to pay reasonably anticipated income taxes and penalties resulting from the early withdrawal. The reason must be permitted under existing Internal Revenue Service regulations and rulings and must be acceptable to the Named Fiduciary or its delegate for one of the following reasons:

(a)   purchase or construction of the Participant's principal residence;

(b)   payment of expenses to prevent foreclosure on the Participant's principal residence or to prevent eviction from the Participant's principal residence;

(c)   payment of tuition for the next 12 months of post-secondary education for a Participant, a Participant's spouse, or a Participant's dependent;

(d)   payment of medical expenses previously incurred or necessary to obtain medical care for a Participant, a Participant's spouse, or a Participant's dependent; or

(e)   any other reason acceptable under published Internal Revenue Service regulations and rulings.

## 2.29   "Highly Compensated Employees"

For purposes of this Plan, the term Highly Compensated Employees means Highly Compensated active Employees and Highly Compensated former Employees. For purposes of this Section, the determination year shall be the calendar year, and the look-back year shall be the 12-month period

12

immediately preceding the determination year. A Highly Compensated active Employee includes any Employee who performs service for the Corporation during the determination year and who, during the look-back year:

   **(a) (1)** received compensation from the Corporation in excess of $80,000.00 (as adjusted under the Code) for such year, or

   **(2)** was a 5% owner of the Corporation at any time during the year or the preceding year.

   **(b)** A Highly Compensated former Employee includes any Employee who separated from service prior to the determination year, performs no service for the Corporation during the determination year, and was a Highly Compensated active Employee for either the separation year or any determination year ending on or after the Employee's 55th birthday.

   **(c)** The determination of who is a Highly Compensated Employee, including the determinations of the number and identity of Employees in the top-paid group, will be made in accordance with Section 414(q) of the Code and regulations thereunder.

## 2.30 "Leased Employees"

Leased Employee means any person who, pursuant to an agreement between the Corporation and any leasing organization, has performed services for the Corporation on a substantially full-time basis for a period of at least one year, and such services are performed under the primary direction or control of the Corporation. Contributions or benefits provided a Leased Employee by the leasing organization which are attributable to services performed for the Corporation shall be treated as provided by the Corporation. A Leased Employee shall not be considered an employee of the Corporation

Art. II, 2.30

if such employee is covered by the safe harbor requirements of Section 414(n)(5) of the Code.

### 2.31 "Named Fiduciary"

Named Fiduciary means the Executive Committee of the Board of Directors of Delphi Corporation except as set forth in Sections 8.07 and 10.01.

### 2.32 "Normal Retirement Age"

Normal Retirement Age means the attainment of age 65 by the Participant.

### 2.33 "Participant"

Participant means an Employee, or former Employee, who has an Account under this Plan.

### 2.34 "Plan"

Plan means The Delphi Personal Savings Plan for Hourly-Rate Employees in the United States.

### 2.35 "Plan Year"

Plan Year means the 12-month period beginning on January 1 and ending on December 31.

### 2.36 "Prime Rate"

Prime Rate means the interest rate reported as the "Prime Rate" in the Eastern Edition of the Wall Street Journal in its general guide to money rates.

### 2.37 "Raytheon Company Common Stock Fund"

Raytheon Company Common Stock Fund means the investment which consists principally of Raytheon Company common stock. A portion of the Raytheon Company Common Stock Fund may be invested in short-term fixed income investments and money market instruments.

14

### 2.38  "Seniority"

Seniority as used in the Plan means the Employee must complete 90 days of employment with the Corporation.

### 2.39  "Total and Permanent Disability"

Total and Permanent Disability means the Employee is currently eligible for a benefit under The Delphi Hourly-Rate Employees Pension Plan because of total and permanent disability or would be eligible for such a benefit except the Employee does not have ten years of credited service.

### 2.40  "Trustee"

Trustee means the outside organization or organizations appointed by the Named Fiduciary, or its delegate, to hold, invest, and distribute the assets of the Plan.

## ARTICLE III

## ELIGIBILITY

### 3.01  Eligibility

An Employee is eligible to participate and accumulate savings under the Plan on the first day of the first pay period next following the attainment of Seniority.

A previously eligible Employee who resumes active employment following a termination of employment will be eligible to participate immediately.

15

Art. IV

# ARTICLE IV

# CASH OR DEFERRED ARRANGEMENT

## 4.01    Cash or Deferred Arrangement

(a)    In lieu of receipt of Eligible Weekly Earnings to which an Employee is entitled, such Employee may elect, by providing appropriate direction to the party designated by the Administrator, to have the Corporation contribute to the Plan, on a weekly basis, an equivalent amount in accordance with this qualified cash or deferred arrangement as provided for under Section 401(k) of the Code.  Such contributions must be whole percentages of the Employee's Eligible Weekly Earnings and may not be at a rate of less than 1% nor more than 60% of the Employee's Eligible Weekly Earnings.

In addition to the contributions described above, an Employee age 50 or over, or an Employee that will attain age 50 by the end of the year, may elect to have the Corporation contribute to the Employee's Account "catch-up" contributions as permitted by Federal law. Such contributions may not be at a rate of less than 1% nor more than 40% of the Employee's Eligible Weekly Earnings.  Catch-up contributions may only be permitted by an Employee once a limitation is imposed pursuant to this Section or Sections 4.04, 8.04 and 8.05 of the Plan.

Contributions referenced in this subsection shall be allocated to the Employee's Account and shall be vested immediately.  The Employee's Compensation shall be reduced by the full amount of any such Corporation contribution.

The Employee may elect, by providing appropriate direction to the party designated by the Administrator, to change the amount of such Corporation contributions or to have such contributions suspended at any time.

16

**(b)**   Any change in the rate of payroll deduction authorized by an Employee in accordance with subsection (a) of this Section 4.01 will become effective not later than the first day of the second pay period next following the date on which such authorization is received by the party designated by the Administrator.

**(c)**   In addition to the contributions as provided for in subsection (a) of this Section 4.01, an Employee eligible to receive a payment from The Delphi Profit Sharing Plan for Hourly-Rate Employees in the United States may elect to have the Corporation contribute to the Employee's Account as Deferred Savings an amount up to 100%, in multiples of 1%, of the amount of such payment, provided such Employee has not terminated employment prior to such contribution.  Such election shall be made at such time and in such manner as the Administrator shall determine and will remain continuously in effect until changed by the Employee. If appropriate direction is not received by the party designated by the Administrator from an Employee on or before the date established by the Administrator for submission of such election with respect to a payment, such amount shall be paid to the Employee.

**(d)**   The Corporation may limit the amount of contributions to the trust pursuant to subsections (a) and (c) of this Section 4.01 if necessary to comply with Sections 4.04, 8.04, and 8.05 of the Plan.

## 4.02   Transfer of Assets to or Receipt of Assets from Other Qualified Plans

The Administrator may direct the Trustee to accept all of an Employee's funds transferred from a similar qualified plan, and may direct the Trustee to transfer all of a Participant's funds to a similar qualified plan, provided such other qualified plan (1) is maintained by an employer which is a member of a controlled group of corporations of which the Employee's current employer

17

Art. IV, 4.02

is a member, and (2) permits such transfers or (3) is a
plan maintained by General Motors Corporation as part
of an applicable GM collective bargaining agreement.
Any funds so transferred shall be accompanied by
instructions from the Trustee setting forth the Employee
for whose benefit such assets are being transferred, and
identifying the source of such accumulated funds.
Funds transferred from other plans which otherwise
would be subject to federal income taxation will be
designated as Deferred Savings.

Notwithstanding the foregoing, the Plan may not receive
a transfer from another qualified plan if such other plan
provides, or at any time had provided, benefits through
alternative forms of distribution, including annuities,
which are not available under this Plan.

### 4.03   Rollovers

(a)    An Employee may make a rollover
contribution, as permitted under Section 402(c) of the
Code, into an option or options selected by such
Employee in an amount not exceeding the total amount
of taxable and/or nontaxable proceeds distributed by
another eligible retirement plan. An eligible retirement
plan shall be determined under Section 402(c)(8)(B).
Additionally, cash proceeds received under a Qualified
Domestic Relations Order from an eligible retirement
plan as described above may be rolled over to the Plan.
The rollover contribution must be made by the
Employee (a) within 60 days following the receipt of
such distribution of taxable proceeds, or (b) as a direct
trustee-to-trustee transfer from the former employer's
plan as permitted under Section 401(a)(31) of the Code.

(b)    An Employee who receives an Eligible Rollover
Distribution may elect to have the Trustee transfer directly
to an IRA of the Employee, or to another employer's plan
in which the Employee is a participant, all or part of the
assets included in the distribution, including Company
stock. The Employee shall designate the IRA or other

18

employer's plan to which assets are to be transferred, and the transfer shall be made subject to acceptance by the transferee plan or IRA. Any such direct transfer shall be subject to Section 401 (a)(31) of the Code.

### 4.04    Cash or Deferred Arrangement Limitation

(a)    The Deferred Savings percentage by the eligible Highly Compensated Employees under the Plan for a Plan Year must meet one of the following tests using the current year testing method:

(i)    The actual Deferred Savings percentage of the eligible Highly Compensated Employees is not more than 1.25 times the actual Deferred Savings percentage of all other eligible Employees; or

(ii)    The actual Deferred Savings percentage of the eligible Highly Compensated Employees is not more than two percentage points more than the actual Deferred Savings percentage for all other eligible Employees and is not more than 2.0 times (or, such lesser amount as the Secretary of the Treasury shall prescribe) the actual Deferred Savings percentage of all other eligible Employees.

(b)    The actual Deferred Savings percentage for the eligible Highly Compensated Employees and all other eligible Employees for a Plan Year is the average of the ratios (calculated separately for each eligible Employee) of the:

(i)    Amount of Deferred Savings actually paid over to the Plan trust not later than two and one-half months after the Plan Year on behalf of such eligible Employee for the Plan Year to:

(ii)    The eligible Employee's Compensation for such Plan Year.

(c)    The amount of Deferred Savings for a Highly Compensated Employee that exceeds the percentage limitations of subsection (a) of this Section 4.04 shall be distributed to the Participant no later than two and one-

Art. IV, 4.04(c)

half months following the end of the Plan Year. The amount of any such distribution shall be determined under a reasonable method selected by the Administrator under applicable tax regulations and will include any earnings attributable to the excess Deferred Savings.

**(d)**    Special Rules

**(i)**    In the event that this Plan satisfies the requirements of Sections 401(k), 401(a)(4), or 410(b) of the Code only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such sections of the Code only if aggregated with this Plan, then this Section 4.04 shall be applied by determining the actual Deferred Savings percentage of eligible Employees as if all such plans were a single plan.

**(ii)**    The actual Deferred Savings percentage for any Participant who is a Highly Compensated Employee for the Plan Year, and who is eligible to participate in two or more arrangements described in Section 401(k) of the Code that are maintained by the Corporation, shall be determined by treating all such plans as a single plan. Notwithstanding the foregoing, certain plans shall be treated as separate if mandatorily disaggregated under regulations under Section 401(k) of the Code.

**(iii)**    Notwithstanding any other provision of the Plan, Excess Contributions, plus any income and minus any loss allocable thereto, shall be distributed no later than the last day of the following Plan Year to Employees to whose accounts such Excess Contributions were allocated. Excess Contributions are allocated to the Highly Compensated Employees with the largest amounts of Deferred Savings taken into account for the year in which the excess arose, beginning with such Employee with the largest amount of such Savings and continuing in descending order until all the Excess Contributions have been allocated. For purposes of the preceding sentence, the "largest amount" is determined after distribution of any Excess Contributions.

20

Art. V

# ARTICLE V

## AFTER-TAX SAVINGS

### 5.01    After-Tax Savings

(a)    In lieu of all or part of the contributions an Employee may authorize in accordance with Section 4.01, an Employee may elect to contribute an equivalent amount to the Plan on an after-tax basis.  Such contributions shall be allocated to the Employee's Account and shall be vested immediately.

The Employee may elect, by providing appropriate direction to the party designated by the Administrator, to change the amount of such contributions or to have such contributions suspended at any time.

(b)    Any change in the rate of payroll deduction authorized by an Employee in accordance with subsection (a) of this Section 5.01 will become effective not later than the first day of the second pay period next following the date on which such authorization is received by the party designated by the Administrator.

(c)    The Corporation may limit the amount of contributions to the trust pursuant to subsection (a) of this Section 5.01 if necessary to comply with Sections 5.03, 5.05, and 8.04 of the Plan.

### 5.02    Transfer of Assets to or Receipt of Assets from Other Qualified Plans

The Administrator may direct the Trustee to accept all of an Employee's funds transferred from a similar qualified plan, and may direct the Trustee to transfer all of a Participant's funds to a similar qualified plan, provided such other qualified plan (1) is maintained by an employer which is a member of a controlled group of corporations of which the Employee's current employer is a member, and (2) permits such transfers, or (3) is a

21

Art. V, 5.02

plan maintained by General Motors Corporation as part of an applicable GM collective bargaining agreement. Any funds so transferred shall be accompanied by instructions from the Trustee setting forth the Employee for whose benefit such assets are being transferred, and identifying the source of such accumulated funds. Funds transferred from other plans which otherwise would not be subject to federal income taxation will be designated as After-Tax Savings.

Notwithstanding the foregoing, the Plan may not receive a transfer from another qualified plan if such other plan provides, or at any time had provided, benefits through alternative forms of distribution, including annuities, which are not available under this Plan.

### 5.03    After-Tax Contribution Limitation

(a)    The After-Tax Savings percentage by the eligible Highly Compensated Employees under the Plan for a Plan Year must meet one of the following tests using the current year testing method:

(i)    The actual After-Tax Savings percentage of the eligible Highly Compensated Employees is not more than 1.25 times the actual After-Tax Savings percentage of all other eligible Employees; or

(ii)    The actual After-Tax Savings percentage of the eligible Highly Compensated Employees is not more than two percentage points more than the actual After-Tax Savings percentage for all other eligible Employees and is not more than 2.0 times (or, such lesser amount as the Secretary of the Treasury shall prescribe) the actual After-Tax Savings percentage of all other eligible Employees.

(b)    The actual After-Tax Savings percentage for the eligible Highly Compensated Employees and all other eligible Employees for a Plan Year is the average of the

ratios (calculated separately for each eligible Employee) of the:

(i)    Amount of After-Tax Savings actually paid over to the Plan trust on behalf of such eligible Employee for the Plan Year to:

(ii)    The eligible Employee's Compensation for such Plan Year.

(c)    The amount of After-Tax Savings for a Highly Compensated Employee that exceeds the percentage limitations of subsection (a) of this Section 5.03 shall be distributed to the Participant no later than two and one-half months following the end of the Plan Year. The amount of any such distribution shall be determined under a reasonable method selected by the Administrator under applicable tax regulations and will include any earnings attributable to the excess After-Tax Savings.

## 5.04    Special Rules

(a)    In the event that this after-tax portion of the Plan satisfies the requirements of Sections 401(m), 401(a)(4), or 410(b) of the Code only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such sections of the Code only if aggregated with this after-tax portion of the Plan, then Section 5.02 shall be applied by determining the actual After-Tax Savings percentage of eligible Employees as if all such plans were a single plan.

(b)    The actual After-Tax Savings percentage for any Participant who is a Highly Compensated Employee for the Plan Year, and who is eligible to participate in two or more arrangements described in Section 401(m) of the Code that are maintained by the Corporation, shall be determined by treating all such plans as a single plan. Notwithstanding the foregoing, certain plans shall

23

Art. V, 5.04(b)

be treated as separate if mandatorily disaggregated under regulations under Section 401(m) of the Code.

**(c)**    Notwithstanding any other provision of the Plan, Excess Aggregate Contributions, plus any income and minus any loss allocable thereto, shall be distributed no later than the last day of the following Plan Year to Employees to whose accounts such Excess Aggregate Contributions were allocated. Excess Aggregate Contributions are allocated to the Highly Compensated Employees with the largest amounts of After-Tax Savings taken into account for the year in which the excess arose, beginning with such Employee with the largest amount of such Savings and continuing in descending order until all the Excess Aggregate Contribution have been allocated. For purposes of the preceding sentence, the "largest amount" is determined after distribution of any Exces Aggregate Contributions.

## ARTICLE VI

## INVESTMENT OF PARTICIPANT'S SAVINGS

### 6.01    Investment Options

**(a)**    Amounts contributed to the trust fund on behalf of Participants pursuant to subsections (a) and (c) of Section 4.01 and subsection (a) of Section 5.01 shall be invested in the following investment options, in increments of 10%, as may be elected by the Participant:

**(i)**    Delphi Common Stock Fund; or

**(ii)**    the Mutual Funds; or

**(iii)**    The Promark Funds

**(iv)**    Socially Oriented Fund(s)

**(b)**    A Participant's initial investment election shall remain in effect until changed by the Participant.

24

A Participant's investment election may be changed on any Business Day by providing appropriate direction to the party designated by the Administrator. Any change in the Participant's investment election shall be effective as of the Effective Date of Investment Option Election.

(c)  Amounts contributed to the trust fund on behalf of a Participant as provided in subsection (c) of Section 4.01 and Sections 4.02 and 5.02 shall be invested in the same investment option(s) as elected by the Participant pursuant to subsection (a) of this Section 6.01; provided, however, that if contributions are not being made to the trust fund on behalf of such Participant pursuant to subsections (a) of Sections 4.01 and 5.01, the Participant will be required, prior to the contribution or transfer of amounts pursuant to subsection (c) of Section 4.01 and Sections 4.02 and 5.02, to make an election regarding the investment of such amount.

(d)  A Participant may, by giving appropriate direction to the party designated by the Administrator, transfer assets being held in such Participant's Account from one investment option to another investment option, as follows:

(i)  A transfer of assets may include all or any part of such assets in an investment option, except that the Mutual Funds have a minimum transfer amount of $250. If the value of the Mutual Fund is less than the minimum, all such assets in the Fund must be transferred.

(ii)  A Participant may elect a transfer of assets on any Business Day.

(iii)  Any election to transfer assets shall be irrevocable, normally as of 4:00 p.m. Eastern Time, on the Business Day such election is received by the party designated by the Administrator.

25

Art. VI, 6.01(d)(iv)

(iv)  Any appropriate election to transfer assets shall be processed as of the Effective Date of Transfer of Assets.

(v)  Where excessive trading can undermine any of the Funds or exceed the available liquidity for any such Fund, Delphi reserves the right to modify or suspend transfer and withdrawal privileges on any of the Non-Mutual Funds, at any time, upon notice to Participants.

(vi)  The Mutual Funds' provider reserves the right to modify or suspend transfer and withdrawal privileges on any of the Mutual Funds in those instances where excessive trading in any one of the Mutual Funds can undermine such Fund.

(vii)  The Socially Oriented Funds provider reserves the right to modify or suspend transfer and withdrawal privileges on the Socially Oriented Funds in those instances where excessive trading in the Socially Oriented Funds can undermine such Fund.

## 6.02   Vesting

Each Participant shall be fully vested in the assets credited to the Participant's Account, and no portion of such Account shall be subject to forfeiture.

## 6.03   Withdrawals

(a)  A Participant may, by providing appropriate direction to the party designated by the Administrator, withdraw assets in such Participant's Account subject to the following provisions:

(1)  Prior to receiving a withdrawal of Deferred Assets, a Participant must withdraw all available After-Tax Assets including any earnings thereon.

(2)  Deferred Assets may be withdrawn from the

Art. VI, 6.03(a)(2)

Participant's Account, subject to the provisions outlined in subsection (a) of this Section 6.03, at any time after attaining age 59-1/2, or prior to age 59-1/2 because of severance from employment, death, Total and Permanent Disability, Financial Hardship, or termination of the Plan. Prior to receiving a withdrawal for Financial Hardship, a Participant previously must have taken all available asset distributions, withdrawals, and loans under all applicable plans maintained by the Corporation. The amount that may be withdrawn for a Financial Hardship shall be limited to the lesser of:

(i)    the total amount of Deferred Savings in the Participant's Account as of the Effective Date of Withdrawal; or

(ii)    the amount required to meet the Financial Hardship, including any amounts necessary to pay reasonably anticipated income taxes and penalties resulting from the early withdrawal.

(b)    A Participant who has an outstanding loan(s) in accordance with Section 6.06 shall be permitted to make a withdrawal in accordance with subsection (a) of this Section 6.03.

(c)    A Participant who withdraws any Deferred Assets for Financial Hardship in accordance with subsection (a) of this Section 6.03 will be suspended from accumulating further savings under this Plan, and all applicable plans maintained by the Corporation, for a period of 12 months immediately following such withdrawal.

(d)    Any election to withdraw assets shall be irrevocable, normally as of 4:00 p.m. Eastern Time, on the Business Day such election is received by the party designated by the Administrator.

27

Art. VI, 6.03(e)

(e)   The Date of Valuation on any appropriate election to withdraw assets, pursuant to this Section 6.03, shall be the Effective Date of Withdrawal.

## 6.04   Distribution of Assets

(a)   Settlement Upon Termination of Employment:

If a Participant terminates employment, such Participant may elect, by providing appropriate direction to the party designated by the Administrator, to (1) receive installment payments, (2) receive partial withdrawals, (3) receive a total settlement, or (4) defer continuously the distribution of assets in such Participant's Account. If such Participant fails to make an election, the Participant's Assets shall remain in the Participant's Account until the earlier of:

(1)   the Participant's request for a settlement; or

(2)   the Participant's attainment of age 70-1/2.

The Date of Valuation for any such installment payment, partial withdrawal, or total settlement shall be the Effective Date of Withdrawal.

With regard to installment payments, a Participant may elect to receive such payments each calendar month, calendar quarter, semi-annual, or on an annual basis.

Installment payments must be in whole dollar amounts with $100 established as the monthly minimum amount. A Participant may change or discontinue installment payments at any time by providing appropriate direction to the party designated by the Administrator.

If a terminated Participant does not make an election under this Section 6.04 prior to attaining age 70-1/2, distribution of assets in the Participant's Account will

begin not later than April 1 of the calendar year following the calendar year in which the Participant attains age 70-1/2 and shall be made annually thereafter in accordance with Section 401(a)(9) of the Code and the regulations thereunder, including the minimum distribution incidental benefit requirement of Section 1.401(a)(9)-2 of the Income Tax Regulations.

**(b)**   Attainment of Age 70-1/2

**(i)**   If a Participant attains age 70-1/2 and such Participant has not terminated employment, a distribution of the Participant's assets will be made upon termination of employment pursuant to Section 6.04(a).

**(ii)**   All distributions required under this subsection shall be determined and made in accordance with Section 401 (a)(9) of the Code and the regulations thereunder, including the minimum distribution incidental benefit requirement of Section 1.401 (a)(9)-2 of the Income Tax Regulations.

**(c)**   Undeliverable Assets

In the event a distribution to a Participant or the Participant's beneficiary cannot be made pursuant to subsections (a) and (b) of this Section 6.04 and Section 8.02 because the identity or location of such Participant or beneficiary cannot be determined after reasonable efforts, and if the Participant's settlement remains undistributed for a period of one year from the Date of Valuation, the Administrator may direct that the settlement assets and earnings on such assets be returned to the trust fund and liquidated. All liability for payment thereof shall thereupon terminate; provided, however, in the event the identity or location of the Participant or beneficiary is determined subsequently, the value of the assets at the Date of Valuation shall be paid from the Plan to such person in a single sum. Any assets so liquidated shall be (1) paid to the Participant or

Art. VI, 6.04(c)

beneficiary when the identity or location is determined, or (2) applied to reduce reasonable expenses of administering the Plan.

## 6.05    Form of Distribution

**(a)**    Upon withdrawal or settlement pursuant to Section 6.03 or subsections (a) and (b) of Section 6.04, a Participant may elect to receive any full shares equivalent to the Current Market Value of their assets invested in any of the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund; provided, however, that prior to or coincident with the Effective Date of Withdrawal or Effective Date of Termination, the Participant may elect to receive cash-in-lieu of shares equivalent to the value of their assets invested in the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund based on the Current Market Value of such stock on the Date of Valuation. All fractional units of the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund worth less than one share of stock and all units of the Promark Funds, Socially Oriented Funds, and Mutual Funds will be paid out in cash.

**(b)**    Upon settlement pursuant to subsection (c) of Section 6.04, a Participant shall receive cash-in-lieu of shares equivalent to the value of their assets liquidated in the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund based on the Current Market Value of such stock funds on the Date of Valuation.

**(c) (1)**    In the event of the death of a Participant and upon receipt of all information necessary to determine the beneficiary or beneficiaries, a settlement

Art. VI, 6.05(c)(1)

of all assets in the deceased Participant's account shall be made to the beneficiary or beneficiaries designated pursuant to Section 8.02. The beneficiary or beneficiaries may elect to receive cash-in-lieu of shares equivalent to the value of the assets invested in the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund in the deceased Participant's Account, based on the Current Market Value of such stock funds on the Date of Valuation. The Date of Valuation will be the Effective Date of Withdrawal. For purposes of making a settlement distribution to the beneficiary or beneficiaries, the Date of Valuation and the Effective Date of Withdrawal means the date on which the Administrator, or its delegate, determines the appropriate beneficiary or beneficiaries and is in receipt of all necessary information and directions to process the settlement.

(2)    Notwithstanding the provision of the immediately preceding paragraph, (a) if a Participant's beneficiary is the Participant's surviving spouse, if the Participant has elected a distribution schedule under Section 6.04 (a) which had commenced by the Participant's date of death, the Participant's account shall continue to be paid to the surviving spouse pursuant to such schedule or, at the spouse's election at any time, in a lump sum, and (b) if distribution of the Participant's account has not commenced as of the Participant's date of death, the surviving spouse shall, for purposes of the distribution requirements and options under the Plan, be deemed a participant; except that the surviving spouse shall be deemed to attain age 70-1/2 on the date the Participant would have attained such age.

Additionally, in no event shall the surviving spouse be able to make contributions to the deceased Participant's Account.

31

Art. VI, 6.06

## 6.06  Loans

(a)   Subject to such rules as the Administrator may prescribe, a Participant, a former Employee, and a surviving spouse, may borrow from assets in such Participant's Account one time each calendar year, for any reason, an amount (when added to the outstanding balance of all other Plan loans) not more than the lesser of:

(1)   $50,000 less the highest aggregate outstanding loan balance over the 12-month period preceding the Participant's application for loan; or

(2)   one-half of the Current Market Value of all assets in the Participant's Account.

The maximum amount available for a loan, to an active Participant, will be reduced by an amount equal to the outstanding principal and interest of any loan that has been defaulted.

For purposes of the above limitation, all loans from all plans maintained by the Corporation [or its subsidiaries in accordance with Section 414(b), (c), or (m) of the Code] shall be aggregated.

(b)   Loans shall be granted in whole dollar amounts with one thousand dollars ($1,000) established as the minimum amount of any loan.

(c)   Loans shall be granted for a minimum period of 12 months, with additional increments of 12 months as the Participant may elect, to a maximum of five years (ten years in the event the loan is for the purchase or construction of the Participant's principal residence), provided a Participant may not elect a term which will result in repayments of less than $10 per pay period.

(d)   Loans shall bear a rate of interest equal to the Prime Rate prevailing as of the last Business Day of the

Art. VI, 6.06(d)

calendar quarter immediately preceding the date the Participant gives appropriate direction for a loan to the party designated by the Administrator.

The interest rate shall remain the same throughout the term of the loan.

(e)    For purposes of this Section 6.06, the Current Market Value of a Participant's assets shall be determined on the Effective Date of Loan.

(f)    Each loan shall be evidenced by a written, or online acknowledged, Participant Loan Agreement that specifies:

(1)    the amount of the loan;

(2)    the term of the loan; and

(3)    the repayment schedule, showing payments to be made in a level amount which will fully amortize the loan over its duration.

By endorsing and either cashing or depositing the check representing the loan, a Participant shall acknowledge receipt of the Participant Loan Agreement and agree to the terms and conditions contained therein.

(g)    Cash equal to the value of any loan granted shall be obtained by liquidating assets in the Participant's Account from investment options in which the Participant has assets, as the Participant may elect.

(h)    Repayment of a loan shall be through weekly payroll deductions, except that if the Participant is not an active Employee, such repayments shall be made through monthly installment payments.  Payments of principal and interest shall be applied to reduce the outstanding balance of a loan.  Loan repayment amounts shall be allocated to the Participant's Account in the same investment option(s) as elected by the Participant

33

Art. VI, 6.06(h)

pursuant to subsection (a) of Section 6.01. A Participant shall be entitled to prepay the total outstanding loan balance or make partial prepayment at any time without penalty.

(i)    A Participant with an outstanding loan who is placed on layoff shall be entitled to:

(1)    make installment payments equivalent in value to the payments deducted previously from the Participant's paycheck; or

(2)    suspend loan payments for a period of up to 12 months while on layoff, provided such period does not extend beyond the maximum loan term,

(j)    A Participant with an outstanding loan who is placed on a disability leave of absence must make installment payments substantially equal to the payments deducted previously from the Participant's paycheck.

(k)    No earnings shall accrue to the Participant's Account with respect to the outstanding balance of any loan.

(l)    In the event an active Participant fails to make a required loan payment and such failure continues beyond the last day of the calendar quarter following the calendar quarter in which the required payment was due, then the Participant's loan will be defaulted and such Participant shall be irrevocably deemed to have received a distribution of assets in an amount equal to the remaining outstanding principal amount of and accrued interest on the loan, calculated to the date of such deemed distribution. An active Participant will not be relieved of the liability to repay a loan that is classified as a deemed distribution.

(m)    In the event a former Employee, surviving spouse, or a terminated Participant (including

34

Art. VI, 6.06(m)

termination due to death or retirement) fails to make a required loan payment and such failure continues beyond the last day of the calendar quarter following the calendar quarter in which the required payment was due, then the former Employee, surviving spouse, or terminated Participant shall be irrevocably deemed to have received a distribution of assets in an amount equal to the remaining outstanding principal amount of and accrued interest on the loan, calculated to the date of such deemed distribution.  A former Employee, surviving spouse, or terminated Participant will be relieved of the liability to repay a loan once such loan is classified as a deemed distribution.

(n)    A Participant (or beneficiary) who, prior to such Participant's repayment of the total principal amount of and accrued interest on a loan, requests or receives a settlement of assets, shall be deemed to have elected a withdrawal, pursuant to Section 6.03, equal to the principal amount of and accrued interest on the loan as of the Effective Date of Withdrawal.

(o)    Any appropriate direction given to borrow assets shall be irrevocable, normally as of 4:00 p.m. Eastern Time, on the Business Day such election is received by the party designated by the Administrator.

(p)    A Participant may have no more than five loans outstanding at any one time.

## ARTICLE VII

## TRUST FUND

### 7.01    Contributions to the Trustee

(a)    All Deferred and After-Tax Savings under this Plan will be paid to the Trustee who shall invest all such amounts and earnings thereon.

35

Art. VII, 7.01(b)

**(b)**   Once the Deferred and After-Tax Savings are contributed to the Trustee by the Corporation, the Corporation shall be relieved of any further liability except as otherwise may be provided by The Employee Retirement Income Security Act of 1974.

## 7.02   Investment Options

The Trustee is to invest in the following:

**(a)**   Delphi Common Stock Funds

**(i)**   The Participants' contributions which are to be invested in the Delphi Common Stock Fund <u>and dividends received by the Trustee</u> shall be deposited in the Delphi Common Stock Fund no later than the 10th day of the month following the month such contributions or dividends are received by the Trustee and shall be invested by an investment manager, or managers, appointed by the Named Fiduciary, or its delegate, under a management agreement which specifies the terms and conditions of such Funds.

**(ii)**   Any administrative expenses incurred, including brokerage commissions or transfer taxes, as a result of offering the Delphi Common Stock Fund, shall be paid pursuant to Section 10.03.

**(iii)**   Shares of common stocks held in the Delphi Common Stock Fund acquired by the Trustee under the terms of this Plan shall be registered in the name of the Trustee, or its nominee.  To the extent that it is consistent with ERISA and the Code, the Trustee shall vote and/or tender shares (including fractions), equivalent to the Current Market Value of the assets invested in the Delphi Common Stock Fund credited to each Participant, as instructed by the Participant but shall not vote shares for which such instructions are not received.

**(iv)**   If the Trustee has not received direction

36

from Participants which can be followed in accordance with ERISA and the Code, the Trustee shall, to the extent that it is consistent with ERISA and the Code, in its discretion, exercise or sell for the benefit of Participants any rights received from Delphi Corporation for the purchase of any additional shares of stock or other securities which Delphi may offer to its stockholders.

(v)  In the event that outstanding shares of the Delphi Common Stock shall be changed in number or class by reason of split-ups, combinations, mergers, consolidations, or recapitalizations, or by reason of stock dividends, the number and class of shares equivalent to the Current Market Value of the assets invested in the Delphi Common Stock which thereafter may be purchased under the Plan, both in the aggregate and as to any individual, and the number and class of shares equivalent to the Current Market Value of the assets invested in the Delphi Common Stock then in the Account of any Participant shall be adjusted so as to reflect such change.

(b)  Mutual Funds

The Participants' contributions invested in the Mutual Funds shall be invested by the Mutual Fund company appointed by the Named Fiduciary, or its delegate, pursuant to the applicable Mutual Fund Prospectus which specifies the terms and conditions of such Funds.

(c)  Promark Funds

The Participants' contributions invested in the Promark Funds shall be invested by an investment manager or managers appointed by the Named Fiduciary, or its delegate, in a Fund with specified terms and conditions.

(d)  Socially Oriented Funds

The participants' contributions invested in the

37

Art. VII, 7.02(d)

Socially Oriented Funds shall be invested by a mutual fund company or companies appointed by the Named Fiduciary, or its delegate, pursuant to the applicable Fund Prospectus which specifies the terms and conditions of such Funds.

### 7.03   EDS Common Stock ($0.01 Par Value)

(a)   The Trustee may hold in Participants' Accounts any EDS common stock distributed or to be distributed as a stock dividend. Any cash dividends received by the Trustee on EDS common stock shall be invested in the <u>Promark</u> Income Fund.

(b)   A Participant may elect to transfer assets held in the EDS Common Stock Fund to any of the investment options specified in Section 7.02, subject to the provisions of Section 6.01(d).

(c)   A Participant may elect in any withdrawal or settlement to receive cash-in-lieu of shares equivalent to the value of their assets invested in the EDS Common Stock Fund to which such withdrawal or settlement applies, based on the Current Market Value of such stock fund on the Date of Valuation for the withdrawal or settlement.

### 7.04   Raytheon Company Common Stock

(a)   The Trustee may hold in Participants' Accounts any Raytheon common stock distributed or to be distributed as a stock dividend. Any cash dividend received by the Trustee on Raytheon common stock shall be invested in the <u>Promark</u> Income Fund.

(b)   A participant may elect to transfer assets held in the Raytheon Common Stock Fund to any of the investment options specified in Section 7.02, subject to the provisions of Section 6.01(d).

(c)   A Participant may elect in any withdrawal or

38

settlement to receive cash-in-lieu of shares equivalent to the value of their assets invested in the Raytheon Common Stock Fund to which such withdrawal or settlement applies, based on the Current Market Value of such stock fund on the Date of Valuation for the withdrawal or settlement.

### 7.05    GM Common Stocks

(a)    The Trustee may hold in Participants' Accounts any GM common stocks.  Any cash dividends received by the Trustee on GM common stocks shall be invested in the <u>Promark</u> Income Fund.

(b)    A Participant may elect to transfer assets held in the GM Common Stock funds to any of the investment options specified in Section 7.02, subject to the provisions of Section 6.01(d).

(c)    A Participant may elect in any withdrawal or settlement to receive cash-in-lieu of shares equivalent to the value of their assets invested in the GM Common Stock Funds to which such withdrawal or settlement applies, based on the Current Market Value of such stock funds on the Date of Valuation for the withdrawal or settlement.

### ARTICLE VIII

### OTHER PROVISIONS

### 8.01    Non-Assignability

Except as otherwise may be provided by Section 6.06, no right or interest of any Participant under this Plan or in the Participant's Account shall be assignable or transferable, in whole or in part, either directly or by operation of law or otherwise, including, without limitation, by execution, levy, garnishment, attachment,

Art. VIII, 8.01

pledge, bankruptcy, or in any other manner, except (1) in accord with provisions of a qualified domestic relations order as defined in IRC Section 414(p), (2) a Participant's voluntary assignment of an amount not in excess of 10% of a distribution from the Plan, and (3) further excluding devolution by death or mental incompetency; no attempted assignment or transfer thereof shall be effective; and no right or interest of any Participant under this Plan shall be liable for, or subject to, any obligation or liability of such Participant.

## 8.02   Designation of Beneficiaries in Event of Death

(a)   A Participant may file with the party designated by the Administrator a written designation of a beneficiary or beneficiaries with respect to all or part of the assets in the Account of the Participant.

For a married Participant who dies, the entire balance of the Account shall be paid to the surviving spouse unless the written designation of beneficiary designating a person(s) other than the spouse with respect to part or all of the assets in the Account of the Participant includes the written consent of the spouse, witnessed by the Plan representative or a notary public. The written designation of beneficiary filed with the party designated by the Administrator may be changed or revoked at any time by the action of the Participant and, if necessary, the spouse. No designation or change of beneficiary will be effective until it is determined to be in order by the party designated by the Administrator, but when so determined it will be effective retroactively to the date of the instrument making the designation or change.

(b)   In the event an unmarried Participant does not file a written designation of beneficiaries, such a Participant shall be deemed to have designated as beneficiary or beneficiaries under this Plan the person or

persons who receive the Participant's life insurance proceeds under the Corporation's Life and Disability Benefits Program for Hourly Employees, unless such Participant shall have assigned such life insurance, in which case the assets in the account shall be paid to the assignee.

(c)    A beneficiary or beneficiaries will receive, subject to the provisions of Section 6.05, in the event of the Participant's death, the assets in the Participant's Account in accordance with the applicable designation. If the Corporation shall be in doubt as to the right of any beneficiary to receive any such assets, the Corporation may deliver such assets to the estate of the Participant, in which case the Corporation shall not have any further liability to anyone.

## 8.03    Merger or Consolidation

In the event of any merger or consolidation with, or transfer of assets or liabilities to, any other plan or program, each Participant in the Plan would, if the Plan then terminated, receive the assets in each such Participant's Account immediately after the merger, consolidation, or transfer which are at least equal in value to the assets each such Participant would have been entitled to receive immediately before the merger, consolidation, or transfer, if the Plan had then terminated.

## 8.04    Limitations on Contributions and Benefits

(a)    General Provisions

For purposes of this Section:

(i)    The term "Limitation Year" shall mean the Plan Year.

(ii)    All defined benefit plans or programs of the Corporation will be treated as one defined benefit plan

41

Art. VIII, 8.04(a)(ii)

or program, and all defined contribution plans or programs will be treated as one defined contribution plan or program.

**(iii)** No contribution to this Plan may exceed the limits provided under Section 404 of the Code for current deductibility for income tax purposes.

**(iv)** Contributions made to the trust by the Corporation pursuant to subsection (c) of Section 4.01 shall be allocated to a Participant's Account within the current Limitation Year. .

**(v)** For purposes of this Section, the term "Compensation" shall mean compensation as defined under Section 2.07 of the Plan.

**(vi)** The term "Annual Additions" shall mean the sum, for any Limitation Year, of Employee contributions, Corporation contributions, and forfeitures allocated to an Employee's account under all defined contribution plans.

**(b)** In no event shall contributions or benefits under this Plan exceed the limits of Section 415 of the Code and the regulations thereunder.

**(c)** For any Employee who participates under this Plan and any defined contribution plan or defined benefit plan of the Corporation, the sum of such Employee's Annual Additions shall not exceed the lesser of $40,000 (or such other amount prescribed by the Secretary of the Treasury applicable to the Limitation Year) or 100% of such Employee's Compensation for any Limitation Year.

**(d)** Any amounts elected to be contributed by an Employee pursuant to Section 5.01 of Article V which cannot be contributed as a result of the application of subsection (c) of this Article VIII shall be returned to the Employee and, if necessary, any amounts elected to be

42

contributed by an Employee pursuant to subsections (a) or (c) of Section 4.01 of Article IV which cannot be contributed as a result of the application of subsection (c) of this Article VIII shall be returned to the Employee.

## 8.05    Deferred Savings Limitation

A Participant's annual Deferred Savings under this Plan and all similar contributions to other plans maintained by the Corporation may not exceed <u>the amount permitted under Federal Law</u> (as adjusted by the Secretary of the Treasury). <u>The following table represents the annual limits on Deferred Saving</u>:

| Annual Deferred Savings Limits | | | |
|---|---|---|---|
| <u>Year</u> | <u>Under Age 50</u> | <u>Catch-Up*</u> <u>Contributions</u> | <u>Age 50 or Over</u> <u>(Includes "Catch-Up")</u> |
| <u>2003</u> | <u>$12,000</u> | <u>$2,000</u> | <u>$14,000</u> |
| <u>2004</u> | <u>$13,000</u> | <u>$3,000</u> | <u>$16,000</u> |
| <u>2005</u> | <u>$14,000</u> | <u>$4,000</u> | <u>$18,000</u> |
| <u>2006</u> | <u>$15,000</u> | <u>$5,000</u> | <u>$20,000</u> |
| * <u>Catch-up contributions may be made for participants age 50 or over only if such participants are restricted by other limits described in this Supplemental Agreement.</u> | | | |

In the event a Participant identifies, in writing, before March 2 following the end of the Plan Year an amount of Deferred Savings as exceeding this limitation, as applied to this Plan and all other plans in which such Employee participated, such amounts will be refunded to the Participant no later than April 15 following the receipt of such written notice from the Participant. In the event the Administrator identifies an amount in excess of the limitation, the Participant will be deemed to have notified the Administrator, and such amount will be refunded to the Participant.

Art. VIII, 8.06

### 8.06  Provisions to Comply With Section 416 of the Code

**(a)**  In any Plan Year in which the Plan is considered a "Top-Heavy Plan," as defined in Section 416 of the Code, the requirements of Section 416 of the Code, and the regulations thereunder, are applicable and must be satisfied.

**(b)**  The definition of a "Top-Heavy Plan" set forth in Section 416(g) of the Code and the additional definitions set forth in Section 416(i) of the Code are herein incorporated by reference.

**(c)**  If the Plan is determined to be a "Top-Heavy Plan" for a Plan Year, the Corporation shall make contributions equal to three percent of Compensation on behalf of each Participant who is not a "key employee" under Section 416 of the Code.

### 8.07  Investment Decisions

Any Participant or beneficiary, who makes an investment election permitted under the Plan or otherwise exercises control permitted under the Plan over the assets in the account, shall be deemed the named fiduciary under ERISA responsible for such decisions to the extent that such designation is permissible under applicable law and that the investment election or other exercise of control is not protected by Section 404(c) of ERISA, as amended.

### 8.08  Special Provisions Regarding Veterans

**(a)**  In the event an Employee is rehired following qualified military service, as defined in the Uniformed Services Employment and Re-Employment Rights Act, that was effective on or after December 15, 1994, such Employee will be entitled to have the Corporation make contributions to the Plan from such Employee's current earnings that shall be attributable to the period of time

44

Art. VIII, 8.08(a)

contributions were not otherwise allowable due to military service. Such contributions shall be in addition to contributions otherwise permitted under Sections 4.01 and 5.01, and shall be made as permitted under this Section and Section 414(u) of the Code.

(b)  Additional contributions permitted under this Section shall be based on the amount of Eligible Weekly Earnings and Profit Sharing Amount that the Employee would have received from the Corporation but for the military service, and such contributions shall be subject to the Plan's terms and conditions in effect during the applicable period of military service. Such contributions shall be made during the period that begins upon re-employment and extends for the lesser of five years or the Employee's period of military service multiplied by three.

(c)  Additional contributions made under this Section shall not be taken into account in the current year, for purposes of calculating and applying any limitation or requirement identified in Section 414(u)(1) of the Code. However, in no event may such contributions, when added to actual contributions previously made, exceed the amount of contributions allowable under the applicable limits in effect during the year of military service if the Employee had continued to be employed by the Corporation.

(d)  An Employee covered by this Section who has an outstanding loan(s) during the period of qualified military service covered by this Section, shall be entitled to suspend loan payments during such period, and the time for repayment of such loan(s) shall be extended to coincide with the suspension for a period of time equal to the period of qualified military service.

**8.09  Prohibition on Reversion**

The Plan shall be maintained and administered for the

45

Art. VIII, 8.09

exclusive purpose of providing benefits to Participants and beneficiaries and defraying reasonable expenses. Except as provided herein, Plan funds may not revert to the Corporation. All contributions to the Plan are conditioned on their deductibility under Section 404 of the Code at the time made. All or any part of a contribution for which a deduction is not allowed may be returned to the Corporation within one year of the date of disallowance. Further, in the event contributions are made due to a mistake or an administration error, such contributions may be returned to the Corporation within one year of the date of discovery of such mistake or error.

## ARTICLE IX

## EMPLOYEE STOCK OWNERSHIP PLAN PROVISIONS

**9.01** The portion of the Plan that consists of Deferred Assets and After-Tax Assets that are invested in the Delphi Common Stock Fund, including any dividends, earnings or gains thereon (the "ESOP portion" or "ESOP"), is designed to invest primarily in qualifying employer securities as defined by Section 4975(e)(8) of the Code, and is an employee stock ownership plan under Section 4975(e)(7) of the Code. This Article IX applies to this ESOP portion of the Plan.

### 9.02    ESOP Pre-Tax Savings Limitation

(a)    The ESOP Deferred Savings percentage by the eligible Highly Compensated Employees under the Plan for a Plan Year must meet one of the following tests using the current year testing method:

(i)    The actual ESOP Deferred Savings percentage of the eligible Highly Compensated Employees is not more than 1.25 times the actual ESOP Deferred Savings percentage of all other eligible Employees; or

46

(ii)   The actual ESOP Deferred Savings percentage of the eligible Highly Compensated Employees is not more than two percentage points more than the actual ESOP Deferred Savings percentage for all other eligible Employees and is not more than 2.0 times (or, such lesser amount as the Secretary of the Treasury shall prescribe) the actual ESOP Deferred Savings percentage of all other eligible Employees.

(b)   The actual ESOP Deferred Savings percentage for the eligible Highly Compensated Employees and all other eligible Employees for a Plan Year is the average of the ratios (calculated separately for each eligible Employee) of the:

(i)   Amount of ESOP Deferred Savings actually paid over to the Plan trust not later than two and one-half months after the Plan Year on behalf of such eligible Employee for the Plan Year to:

(ii)   The eligible Employee's Compensation for such Plan Year.

(c)   The amount of ESOP Deferred Savings for a Highly Compensated Employee that exceeds the percentage limitations of subsection (a) of this Section 9.02 shall be distributed to the Participant no later than two and one-half months following the end of the Plan Year.  The amount of any such distribution shall be determined under a reasonable method selected by the Administrator under applicable tax regulations and will include any earnings attributable to the excess ESOP Deferred Savings.

## 9.03   ESOP After-Tax Contribution Limitation

(a)   The ESOP After-Tax Contribution percentage by the eligible Highly Compensated Employees under the Plan for a Plan Year must meet one of the following tests using the current year testing method:

47

Art. IX, 9.03(a)(i)

    **(i)**   The actual ESOP After-Tax Savings percentage of the eligible Highly Compensated Employees is not more than 1.25 times the actual ESOP After-Tax Savings percentage of all other eligible Employees; or

    **(ii)**   The actual ESOP After-Tax Savings percentage of the eligible Highly Compensated Employees is not more than two percentage points more than the actual ESOP After-Tax Savings percentage for all other eligible Employees and is not more than 2.0 times (or, such lesser amount as the Secretary of the Treasury shall prescribe) the actual ESOP After-Tax Savings percentage of all other eligible Employees.

    **(b)**   The actual ESOP After-Tax Savings percentage for the eligible Highly Compensated Employees and all other eligible Employees for a Plan Year is the average of the ratios (calculated separately for each eligible Employee) of the:

    **(i)**   Amount of ESOP After-Tax Savings actually paid over to the Plan trust on behalf of such eligible Employee for the Plan Year to:

    **(ii)**   The eligible Employee's Compensation for such Plan Year.

    **(c)**   The amount of ESOP After-Tax Savings for a Highly Compensated Employee that exceeds the percentage limitations of subsection (a) of this Section 9.03 shall be distributed to the Participant no later than two and one-half months following the end of the Plan Year. The amount of any such distribution shall be determined under a reasonable method selected by the Administrator under applicable tax regulations and will include any earnings attributable to the excess ESOP After-Tax Savings.

48

### 9.04    ESOP Special Rules

(i)    In the event that this ESOP portion of the Plan satisfies the requirements of Sections 401(k), 401(m), 401(a)(4), or 410(b) of the Code only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such sections of the Code only if aggregated with this Plan, then this Section 9.04 shall be applied by determining the actual ESOP Deferred Savings percentage of eligible Employees as if all such plans were a single plan.

(ii)    The actual ESOP Deferred Savings percentage or ESOP After-Tax Savings percentage for any Participant who is a Highly Compensated Employee for the Plan Year, and who is eligible to participate in two or more arrangements described in Sections 401(k) and 401(m) of the Code that are maintained by the Corporation, shall be determined by treating all such plans as a single plan.  Notwithstanding the foregoing, certain plans shall be treated as separate if mandatorily disaggregated under regulations under Sections 401(k) and 4.01(m) of the Code.

(iii)    In the event the limits of Sections 9.02 or 9.03 are exceeded, then the actual ESOP Deferred Savings percentage or the actual ESOP After-Tax Savings percentage of those Highly Compensated Employees will be reduced using the same correction procedure set forth in Sections 4.04(d)(iii) and 5.04 as needed so that the limits are not exceeded.  The amount by which each Highly Compensated Employee's ESOP Deferred Savings or ESOP After-Tax Savings is reduced shall be treated as an Excess Contribution or Excess Aggregate Contribution, respectively.  The actual ESOP Deferred Savings percentage or the actual ESOP After-Tax Savings percentage of the Highly Compensated Employees is determined after any corrections are made. Excess contributions and excess aggregate contributions shall be treated as Annual Additions.

49

Art. IX, 9.05

## 9.05    Distribution of ESOP Dividends

A Participant may elect to receive cash dividends paid on shares of Delphi Common Stock corresponding to the units in the Delphi Common Stock Fund in a Participant's Account, rather than being reinvested in the respective funds, provided the Participant gives appropriate and timely notice of such election to the party designated by the Administrator. Dividends paid directly to Participants pursuant to this Section shall be paid not later than 90 days after the end of the Plan Year.

## ARTICLE X

## ADMINISTRATION

### 10.01    Administrative Responsibility

The Executive Committee of the Corporation's Board of Directors shall be the Named Fiduciary with respect to the Plan except as set forth below and in Section 8.07. The Executive Committee may delegate authority to carry out such of its responsibilities as it deems proper to the extent permitted by The Employee Retirement Income Security Act of 1974. Except as set forth in Section 8.07, General Motors Investment Management Corporation (GMIMCo) is the Named Fiduciary of this Plan for purposes of investment of Plan assets. GMIMCo may delegate authority to carry out such of its responsibilities as it deems proper to the extent permitted by The Employee Retirement Income Security Act of 1974.

Pursuant to authority delegated to it by the Named Fiduciary, Delphi, or its delegate, shall have responsibility for the day-to-day operation, management, and administration of the Plan, including full power and authority to construe, interpret, and administer this Plan and to pass upon and decide cases

presenting unusual circumstances in conformity with the objectives of the Plan and under such rules as Delphi or its delegate, may establish. Decisions of Delphi, or its delegate, shall be final and binding upon the Corporation and its employees.

## 10.02    Records

The Administrator shall provide for the maintenance of suitable records to reflect the separate Account balance of each Participant's contributions and any earnings thereon.

The Administrator shall make, or cause to be made, valuations of the trust fund or market value at least annually.

## 10.03    Administrative Expenses

Administrative expenses of the Plan shall be paid from assets liquidated pursuant to subsection (c) of Section 6.04. To the extent such expenses are not thereby paid in full, such expenses will be paid by the Corporation.

With regard to the fees for the Socially Oriented Funds and the Promark Funds (excluding the Fund currently known as the Promark Large Cap Index Fund), such fees for investment, Trustee, and management shall be paid by the Funds.

## 10.04    Participant Statements

Each Participant will be furnished a statement no less than four times per year showing the Current Market Value of the assets, including earnings, credited to the Participant's Account.

## 10.05    Incapacity

If the Administrator deems any person incapable of receiving any distribution to which such person is entitled under this Plan because such person has not yet

Art. X, 10.05

reached the age of majority, or because of illness, infirmity, mental incompetency or other incapacity, it may make payment, for the benefit or the account of such incapacitated person, to any person selected by the Administrator, whose receipt thereof shall be a complete settlement thereof. Such payments shall, to the extent thereof, discharge all liability of the Corporation and each other fiduciary with respect to this Plan.

### 10.06    Notice of Claim Denial

The Administrator will provide adequate notice, in writing, to any Participant or beneficiary whose claim for benefits under the Plan has been denied, setting forth the specific reasons for such denial.

The Participant or beneficiary will be given an opportunity for a full and fair review by the Named Fiduciary, or its delegate, of the decision denying the claim. The Participant or beneficiary will be given 60 days from the date of the notice denying such claim within which to request such review.

### 10.07    Confidential Information

The Administrator, or its delegate, shall be responsible for ensuring that sufficient procedures are in place and followed to safeguard the confidentiality (except to the extent necessary to comply with federal laws or state laws not pre-empted by ERISA) of information relating to the purchase, holding, and sale of securities, and the exercise of voting, tender, and similar rights with respect to such securities by Participants and beneficiaries. If deemed necessary by the Administrator, due to potential for undue employer influence with regard to exercise of shareholder rights, an independent party will be appointed by the Administrator to carry out instructions of Participants or beneficiaries relating to such rights.

## ARTICLE XI

## AMENDMENT, MODIFICATION, SUSPENSION, OR TERMINATION

### 11.01    Amendment, Modification, Suspension, or Termination

The Corporation reserves the right, by and through its Board of Directors, or its delegate, to amend, modify, suspend, or terminate the Plan, but any such action shall have no retroactive effect which would prejudice the interests of the Participants.

### 11.02    Distribution Upon Plan Termination

In the event of termination or partial termination of the Plan without establishment of a successor plan, the Administrator may direct the Trustee to:

(a)    continue to administer the trust fund and pay Account balances in accordance with Section 6.04 to Participants affected by the termination of the Plan upon their termination of employment, or to beneficiaries upon such a Participant's death, until the trust fund has been liquidated; or

(b)    distribute as soon as administratively feasible the assets remaining in the trust fund in a lump sum to Participants and beneficiaries in proportion to their respective Account balances.

(c)    In the event of termination, or partial termination, or a complete discontinuance of contributions under the Plan, the account balance of each affected Participant will be non-forfeitable.

Misc. (Benefits Training and Education)

# DELPHI CORPORATION

September 18, 2003

International Union, United Automobile
    Aerospace and Agricultural Implement
    Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
        Vice President and Director
        General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties renewed their commitment to provide ongoing training programs for Company and Union Benefit Representatives so as to improve the quality of service provided to hourly employees.  The parties also recognized the importance of communications programs aimed at educating employees about their benefits.

It was agreed that such training and education programs will be developed jointly and the cost of developing and implementing such programs properly will be paid from the National Joint Skill Development and Training Fund as approved by the Executive Board for Joint Activities.  These include, but are not limited to, the following:

- Joint Delphi-UAW Benefits Training Conference may be scheduled upon approval by the parties.

- Continuing education program for Union Benefit Representatives will be provided by the parties. Training sessions will be scheduled for newly appointed Union Benefit Representatives and Alternates as agreed to by the parties.  The sessions will concentrate on areas such as eligibility to receive benefits, description and interpretation of benefit plan provisions, and calculation of benefits.

- Conduct periodic on-site plant surveys and audits to evaluate training and education needs to improve employee service.

54

Misc. (Benefits Training and Education)

- Ad hoc training meetings on legal developments or other special needs.

Included also are any travel, lodging and living expenses incurred by Company and Union representatives in relation to the above. In addition, the Fund will pay for lost time (eight hours per day base rate plus COLA) of Union Benefit Representatives attending such programs away from their locations. The Company will pay for the time (eight hours per day base rate plus COLA) of alternate Union Benefit Representatives who replace those attending such programs.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW

By: Richard Shoemaker

55

Misc. (Improving Benefits Service Through Technology)

# DELPHI CORPORATION

<u>September 18, 2003</u>

International Union, United Automobile
  Aerospace and Agricultural Implement
  Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
         Vice President and Director
         General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties recognized the
need to move ahead with the development of
technological applications to improve the quality of
service provided to hourly employees.

1.  The parties recognized the need to provide the
    necessary tools to Local Union Benefit
    Representatives so that they may improve the
    service they are providing to hourly employees.
    Local Union Benefit Representatives require basic
    information that can be accessed quickly in order to
    confidently and accurately answer many of the
    questions they receive.  Therefore, the parties have
    designed <u>two systems</u>, the Benefits Data Access <u>and
    the Benefits WorkStation Access systems</u>, whereby
    Local Union Benefit Representatives have access to
    certain data elements from several benefit data
    systems.  These <u>systems</u> provide inquiry only access
    to Local Union Benefit Representatives who
    complete a computer training program.  Access is
    limited to information for UAW hourly employees at
    their particular location.

2.  The parties jointly will develop and implement a
    new benefit documentation feature to the existing
    <u>systems</u> that will be available to Local Union Benefit
    Representatives.  The <u>Systems</u> will include benefit
    plan booklets, administrative manuals (where
    applicable), relevant contract provisions and
    appropriate process descriptions.  Upon approval by

56

Misc. (Improving Benefits Service Through Technology)

the Executive Board of Joint Activities, the cost of
development, hardware and software requirements,
conversion of written documentation, and
installation and training, will be charged to the
National Joint Skill Development and Training Fund.
It is contemplated the benefit documentation feature
will be implemented during the term of the 2003
Agreement.

3.  The parties further agreed to provide hourly
    employees with web technology in addition to the
    continued use of a Voice Response System for
    inquiry and transactions in the Personal Savings
    Plan.

4.  The parties agree to enhance the Benefit Data
    Access System to provide the Pension Plan survivor
    coverage election/rejection and the cost of such
    survivor option. The cost of development and
    implementation will be charged to the National Joint
    Skill Development and Training Fund.

In conclusion, during the term of the new Agreement,
the parties pledge to carefully consider every
opportunity to improve the quality and efficiency in
benefits delivery.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

57

(PSP Contribution Level and Roth IRA)

# DELPHI CORPORATION

<u>September 18, 2003</u>

International Union, United Automobile
   Aerospace and Agricultural Implement
   Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
       Vice President and Director
       General Motors Department

Dear Mr. Shoemaker:

During these negotiations, <u>Delphi agreed to provide for</u>
a Roth IRA in the PSP <u>beginning January 1, 2006, that</u>
<u>would be consistent with</u> legal and regulatory
<u>guidelines</u>.

         Very truly yours,

         DELPHI CORPORATION

         <u>Kevin M. Butler</u>
         <u>Vice President</u>
         <u>Human Resource Management</u>

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

58

# DELPHI CORPORATION

September 18, 2003

International Union, United Automobile
   Aerospace and Agricultural Implement
   Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI  48214

Attn:  Mr. Richard Shoemaker
         Vice President and Director
         General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties discussed the
Corporation's willingness to continue to make
available to hourly employees during non-working time
the two Fidelity Workshops titled, the Investment
Education Workshop and the Getting Ready for
Retirement Workshop.  Such workshops may be
scheduled upon the request of the local Union and
Management leadership.  The parties recognize the
importance of educating employees on the Personal
Savings Plan.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

59

Dividend and Cash Investment Plan

# DELPHI CORPORATION

September 18, 2003

International Union, United Automobile
    Aerospace and Agricultural Implement
    Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
         Vice President and Director
         General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties discussed the
ability of employees and retirees to purchase
additional Delphi Common Stock with no load outside
of the Personal Savings Plan.

The Corporation informed the Union of the availability
of the Dividend Reinvestment and Stock Purchase
Program and the Union agreed that this Plan
satisfactorily addressed their request.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

60

<u>Annual Review of Fund Performance</u>

# DELPHI CORPORATION

<u>September 18, 2003</u>

International Union, United Automobile
    Aerospace and Agricultural Implement
    Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI  48214

Attn:  Mr. Richard Shoemaker
          Vice President and Director
          General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties discussed the
Union's interest in a more active role in understanding
the direction of the Personal Savings Plan (PSP).  To this
end, the parties agreed that General Motors Asset
Management (GMAM) and Fidelity would make an
annual presentation to the Union on the PSP.  The
review will include such things as:

Plan Participation
Account Status and Activity
Average Participant Account Balance
Amount of Assets in Available Investment Options
Promark Fund Performance
Fidelity Fund Performance
Fund and Plan Expenses

61

Annual Review of Fund Performance

The parties will discuss the current array of funds, their performance and any recommendation for changes. At the joint request of the parties, GMAM will review funds and other future directions and report its recommendations to the parties.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW

By: Richard Shoemaker

Electronic Loan Repayment

# DELPHI CORPORATION

September 18, 2003

International Union, United Automobile
   Aerospace and Agricultural Implement
   Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
          Vice President and Director
          General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties discussed the
loan repayment process for those Personal Savings
Plan (PSP) Participants who are not actively at work.

The parties agreed that those PSP Participants who are
not actively at work would receive information about
establishing an Electronic Funds Transfer (EFT) with
their loan coupon book.  Participants will have the
option of repaying their loans through the convenience
of EFT or via mail by using their loan coupon book.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

63

Suggestion Award Payments

# DELPHI CORPORATION

September 18, 2003

International Union, United Automobile
  Aerospace and Agricultural Implement
  Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
       Vice President and Director
       General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties discussed the process for Employees to defer Suggestion Award Payments into their Personal Savings Plan (PSP) account. It was noted that Employees currently have the ability to defer their Suggestion Award Payments, up to the maximum Plan contribution rate.

The Union requested that Employees be permitted to defer up to 100% of their Suggestion Award Payments into the PSP. The parties discussed the payment process for Suggestion Award Payments with the expectation of implementing a lump sum deferral feature of 100% of such payment into the PSP, up to the annual IRS dollar limits.

64

Suggestion Award Payments

The implementation date of the PSP deferral feature on Suggestion Award Payments will commence on or before January 1, 2005. This is due to the programming requirements for the Payroll System as well as the establishment of necessary financial and administrative processes, including a separate deferral election for an Employee's Suggestion Award.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW

By: Richard Shoemaker

65

529 College Savings Plan(s)

# DELPHI CORPORATION

September 18, 2003

International Union, United Automobile
   Aerospace and Agricultural Implement
   Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
       Vice President and Director
       General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties discussed the
Union's interest in communicating information
regarding 529 College Savings Plan(s) to hourly
Employees.  To this end, the parties agreed that Delphi
will prepare a communication brochure intended to
inform hourly Employees on the advantages of
establishing a 529 College Savings Plan(s).

The decision to participate in a 529 College Savings
Plan(s) will be on a voluntary basis handled directly
between the employee and the plan's respective
provider.  It is clearly understood that neither Delphi
nor the Union will have any administrative or fiduciary
responsibility with regard to these 529 College Savings
Plan(s).

                Very truly yours,

                DELPHI CORPORATION

                Kevin M. Butler
                Vice President
                Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

# NOTES

# NOTES

**NOTES**

## NOTES

**NOTES**

## 2003

**JANUARY**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

**FEBRUARY**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | |

**MARCH**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

**APRIL**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | | | |

**MAY**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

**JUNE**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

**JULY**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

**AUGUST**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

**SEPTEMBER**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | | | | |

**OCTOBER**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

**NOVEMBER**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

**DECEMBER**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

## 2004

**JANUARY**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

**FEBRUARY**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | | | | | | |

**MARCH**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

**APRIL**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

**MAY**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

**JUNE**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | | | |

**JULY**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

**AUGUST**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

**SEPTEMBER**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | | |

**OCTOBER**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

**NOVEMBER**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | | | | |

**DECEMBER**

| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

## 2005

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 |   |   |   |   |   |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 |   |   |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |   |   |   |   |   |   |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |   |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |   |   |   |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

## 2006

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 |   |   |   |   |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |   |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 |   |   |   |   |   |   |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |   |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 |   |   |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |   |   |   |   |   |   |

## 2007

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 |   |   |   |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 |   |   |   |   |   |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |   |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 |   |   |   |   |   |   |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |   |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

## 2008

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 |   |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |   |   |   |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 |   |   |   |   |   |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |   |   |   |   |   |   |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 |   |   |   |   |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |   |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 |   |   |   |   |   |   |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

# Exhibit P

*Supplemental Agreement*

Covering

# PERSONAL SAVINGS PLAN

Exhibit G

to

AGREEMENT

between

DELPHI CORPORATION

and

IUE-CWA

dated

November 16, 2003

# *Supplemental Agreement*

Covering

# PERSONAL SAVINGS PLAN

Exhibit G

to

AGREEMENT

between

DELPHI CORPORATION

and

IUE-CWA

dated

November 16, 2003

# TABLE OF CONTENTS

**Page No.**

INDEX TO EXHIBITS G AND G-1 . . . . . . . . . . . . . (vi)

Section 1.    Establishment of Plan . . . . . . . . . . . . . . (1)

Section 2.    Administration . . . . . . . . . . . . . . . . . . . (1)

Section 3.    Non-Applicability of Collective Bargaining Agreement Grievance Procedure . . . . . . . . . . . . . . . . . . . . . . . (2)

Section 4.    Governmental Rulings . . . . . . . . . . . . . (2)

Section 5.    Duration of Agreement . . . . . . . . . . . . . (3)

EXHIBIT G-1 — PERSONAL SAVINGS PLAN . . . . . . . 1

**Article I**    **Establishment of Personal Savings Plan** . . . . . . . . . . . . . . . . . . . . . . . . . 3

1.01    Establishment of Plan . . . . . . . . . . . . . . . 3

1.02    Effective Date of Amended Plan . . . . . . . 3

1.03    Governmental Rulings . . . . . . . . . . . . . . 3

**Article II**    **Definition of Terms** . . . . . . . . . . . . . . . 3

2.01    Account . . . . . . . . . . . . . . . . . . . . . . . . . 3

2.02    Administrator . . . . . . . . . . . . . . . . . . . . . . 3

2.03    After-Tax Assets . . . . . . . . . . . . . . . . . . 3

2.04    After-Tax Savings . . . . . . . . . . . . . . . . . 4

2.05    Business Day . . . . . . . . . . . . . . . . . . . . . 4

2.06    Code . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

2.07    Compensation . . . . . . . . . . . . . . . . . . . . 4

2.08    Corporation . . . . . . . . . . . . . . . . . . . . . . 5

2.09    Corporation Stock . . . . . . . . . . . . . . . . . 5

2.10    GM Common Stock Funds . . . . . . . . . . . 5

2.11    Current Market Value . . . . . . . . . . . . . . 5

2.12    Date of Valuation . . . . . . . . . . . . . . . . . . 6

2.13    Deferred Assets . . . . . . . . . . . . . . . . . . . 6

2.14    Deferred Savings . . . . . . . . . . . . . . . . . . 6

2.15    Delphi Common Stock Fund . . . . . . . . . . 7

(i)

# TABLE OF CONTENTS

|  |  | Page No. |
|---|---|---|
| 2.16 | Distributee | 7 |
| 2.17 | EDS Common Stock Fund | 7 |
| 2.18 | Effective Date of Investment Option Election | 7 |
| 2.19 | Effective Date of Loan | 7 |
| 2.20 | Effective Date of Termination | 8 |
| 2.21 | Effective Date of Transfer of Assets | 8 |
| 2.22 | Effective Date of Withdrawal | 8 |
| 2.23 | Eligible Rollover Distribution | 8 |
| 2.24 | Eligible Weekly Earnings | 8 |
| 2.25 | Employee | 9 |
| 2.26 | Excess Contributions | 11 |
| 2.27 | Excess Aggregate Contributions | 11 |
| 2.28 | Financial Hardship | 11 |
| 2.29 | Highly Compensated Employees | 12 |
| 2.30 | Leased Employees | 13 |
| 2.31 | Named Fuduciary | 13 |
| 2.32 | Normal Retirement Age | 14 |
| 2.33 | Participant | 14 |
| 2.34 | Plan | 14 |
| 2.35 | Plan Year | 14 |
| 2.36 | Prime Rate | 14 |
| 2.37 | Raytheon Company Common Stock Fund | 14 |
| 2.38 | Seniority | 14 |
| 2.39 | Total and Permanent Disability | 14 |
| 2.40 | Trustee | 15 |
| **Article III** | **Eligibility** | 15 |
| 3.01 | Eligibility | 15 |

(ii)

# TABLE OF CONTENTS

| | | Page No. |
|---|---|---|
| **Article IV** | **Cash or Deferred Arrangement** | 15 |
| 4.01 | Cash or Deferred Arrangement | 15 |
| 4.02 | Transfer of Assets to or Receipt of Assets from Other Qualified Plans | 17 |
| 4.03 | Rollovers | 18 |
| 4.04 | Cash or Deferred Arrangement Limitation | 18 |
| **Article V** | **After-Tax Savings** | 21 |
| 5.01 | After-Tax Savings | 21 |
| 5.02 | Transfer of Assets to or Receipt of Assets from Other Qualified Plans | 21 |
| 5.03 | After-Tax Contribution Limitation | 22 |
| 5.04 | Special Rules | 23 |
| **Article VI** | **Investment of Participant's Savings** | 24 |
| 6.01 | Investment Options | 24 |
| 6.02 | Vesting | 26 |
| 6.03 | Withdrawals | 26 |
| 6.04 | Distribution of Assets | 28 |
| 6.05 | Form of Distribution | 30 |
| 6.06 | Loans | 32 |
| **Article VII** | **Trust Fund** | 36 |
| 7.01 | Contributions to the Trustee | 36 |
| 7.02 | Investment Options | 36 |
| 7.03 | EDS Common Stock ($0.01 Par Value) | 38 |
| 7.04 | Raytheon Company Common Stock | 38 |
| 7.05 | Delphi Common Stock | 39 |

(iii)

# TABLE OF CONTENTS

|  |  | Page No. |
| --- | --- | --- |
| **Article VIII** | **Other Provisions** . . . . . . . . . . . . . . . . . . | 40 |
| 8.01 | Non-Assignability . . . . . . . . . . . . . . . . . . | 40 |
| 8.02 | Designation of Beneficiaries in Event of Death . . . . . . . . . . . . . . . . . . . | 40 |
| 8.03 | Merger or Consolidation . . . . . . . . . . . . . | 41 |
| 8.04 | Limitations on Contributions and Benefits . . . . . . . . . . . . . . . . . . . . . . . . | 42 |
| 8.05 | Deferred Savings Limitation . . . . . . . . . | 43 |
| 8.06 | Provisions to Comply With Section 416 of the Code . . . . . . . . . . . . | 44 |
| 8.07 | Investment Decisions . . . . . . . . . . . . . . . | 44 |
| 8.08 | Special Provisions Regarding Veterans . . . . . . . . . . . . . . . . . . . . . . . | 45 |
| 8.09 | Prohibition on Reversion . . . . . . . . . . . . | 46 |
| **Article IX** | **Employee Stock Ownership Plan Provisions** . . . . . . . . . . . . . . . . . . | 46 |
| 9.01 | Employee Stock Ownership Plan Provisions . . . . . . . . . . . . . . . . . . | 46 |
| 9.02 | ESOP Pre-Tax Savings Limitation . . . . . | 47 |
| 9.03 | ESOP After-Tax Contribution Limitation . . . . . . . . . . . . . . . . . . . . . . . | 48 |
| 9.04 | ESOP Special Rules . . . . . . . . . . . . . . . . | 49 |
| 9.05 | Distribution of ESOP Dividends . . . . . . . | 50 |
| **Article X** | **Administration** . . . . . . . . . . . . . . . . . . . | 50 |
| 10.01 | Administrative Responsibility . . . . . . . . | 50 |
| 10.02 | Records . . . . . . . . . . . . . . . . . . . . . . . | 51 |
| 10.03 | Administrative Expenses . . . . . . . . . . . | 51 |
| 10.04 | Participant Statements . . . . . . . . . . . . . | 52 |

(iv)

# TABLE OF CONTENTS

|  |  | Page No. |
|---|---|---|
| 10.05 | Incapacity | 52 |
| 10.06 | Notice of Claim Denial | 52 |
| 10.07 | Confidential Information | 52 |
| **Article XI** | **Amendment, Modification, Suspension or Termination** | **53** |
| 11.01 | Amendment, Modification, Suspension, or Termination | 53 |
| 11.02 | Distribution Upon Plan Termination | 53 |
| Letter Agreements | — Misc. (Benefits Training and Education) | 55 |
|  | — Misc. (Improving Benefits Service Through Technology) | 57 |
|  | — PSP Roth IRA | 59 |
|  | — Dividend and Çash Investment Plan | 60 |
|  | — Electronic Loan Repayment | 61 |
|  | — Suggestion Award Payments | 62 |
|  | — 529 College Savings Plan | 64 |
|  | — PSP Employee Workshop | 65 |
|  | — Annual Review of Fund Performance | 66 |

(v)

## INDEX TO

EXHIBIT G   — 2003 Supplemental Agreement Between
Delphi Corporation and the IUE-CWA
(Personal Savings Plan)

EXHIBIT G-1 — Personal Savings Plan

| | Article | Section | Page |
|---|---|---|---|
| **ACCOUNT** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.01 | 3 |
| **ADMINISTRATIVE EXPENSES**. . . . . . . . . . . . . . . . . | X | 10.03 | 51 |
| **ADMINISTRATIVE RESPONSIBILITY** | | | |
| Authority of Named Fiduciary | X | 10.01 | 50 |
| Confidential Information . . . . . | X | 10.07 | 52 |
| Responsibility for . . . . . . . . . . | Ex. G | 2 | (1) |
| **ADMINISTRATOR** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.02 | 3 |
| **AFTER-TAX ASSETS** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.03 | 3 |
| **AFTER-TAX SAVINGS** | | | |
| Contributions . . . . . . . . . . . . . | V | 5.01 | 21 |
| Definition of . . . . . . . . . . . . . | II | 2.04 | 4 |
| Limitation . . . . . . . . . . . . . . . | V | 5.03 | 22 |
| Special Rules . . . . . . . . . . . . . | V | 5.04 | 23 |
| Transfer of Assets . . . . . . . . . . | V | 5.02 | 21 |
| **BENEFICIARIES** | | | |
| Designation of . . . . . . . . . . . . | VIII | 8.02 | 40 |
| Payment to . . . . . . . . . . . . . . . | VIII | 8.02 | 40 |
| **BUSINESS DAY** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.05 | 4 |
| **CASH OR DEFERRED ARRANGEMENT** | | | |
| Contributions . . . . . . . . . . . . . | IV | 4.01 | 15 |
| Highly Compensated Employees. | IV | 4.04 | 18 |
| Limitation . . . . . . . . . . . . . . . | IV | 4.04 | 18 |
| Rollovers . . . . . . . . . . . . . . . . | IV | 4.03 | 18 |
| Transfer of Assets . . . . . . . . . . | IV | 4.02 | 17 |

|  | Article | Section | Page |
|---|---|---|---|
| **CLAIM DENIAL** | | | |
| Notice of . . . . . . . . . . . . . . . . . | X | 10.06 | 52 |
| Review of. . . . . . . . . . . . . . | X | 10.06 | 52 |
| Time Limit for Review . . . . . . | X | 10.06 | 52 |
| **CODE** | | | |
| Definition of . . . . . . . . . . . . | II | 2.06 | 4 |
| Provisions to Comply | | | |
| With Section 416 . . . . . . . . . | VIII | 8.06 | 44 |
| **COMPENSATION** | | | |
| Definition of . . . . . . . . . . . . | II | 2.07 | 4 |
| **CONFIDENTIAL INFORMATION** | X | 10.07 | 52 |
| **CONTRIBUTIONS** | | | |
| Changes in Payroll Deduction . | IV | 4.01 | 16 |
| Limits. . . . . . . . . . . . . . . . . . | IV | 4.01 | 16 |
| Percentage of Eligible | | | |
| Weekly Earnings . . . . . . . . . . | IV | 4.01 | 15 |
| Profit Sharing Amounts . . . . . . | IV | 4.01 | 15 |
| To the Trustee . . . . . . . . . . . . | VII | 7.01 | 36 |
| **CORPORATION** | | | |
| Definition of . . . . . . . . . . . . | II | 2.08 | 5 |
| **CORPORATION STOCK** | | | |
| Changes in Number or Class . . | VII | 7.02 | 36 |
| Definition of . . . . . . . . . . . . | II | 2.09 | 5 |
| Purchase of . . . . . . . . . . . . . | VII | 7.02 | 36 |
| Sales of . . . . . . . . . . . . . . . . | VII | 7.02 | 36 |
| **CURRENT MARKET VALUE** | | | |
| Definition of . . . . . . . . . . . . | II | 2.11 | 5 |
| **DATE OF VALUATION** | | | |
| Definition of . . . . . . . . . . . . | II | 2.12 | 6 |
| **DEFERRED ASSETS** | | | |
| Definition of . . . . . . . . . . . . | II | 2.13 | 6 |
| **DEFERRED SAVINGS** | | | |
| Definition of . . . . . . . . . . . . | II | 2.14 | 6 |
| **DEFERRED SAVINGS** | | | |
| **LIMITATION** . . . . . . . . . . . . . . . | VIII | 8.05 | 43 |

|  | Article | Section | Page |
|---|---|---|---|
| DEFINITIONS . . . . . . . . . . . . . . | II | — | 3 |
| **DELPHI COMON STOCK FUND** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.15 | 7 |
| Investment of Dividends . . . . . | VII | 7.05 | 36 |
| Transfer of Assets . . . . . . . . . . | VII | 7.05 | 36 |
| Withdrawal or Settlement . . . . | VII | 7.05 | 36 |
| **DISTRIBUTEE** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.16 | 7 |
| **DISTRIBUTION OF ASSETS** | | | |
| Cash-in-Lieu of Shares . . . . . . | VII | 6.05 | 30 |
| Date of Valuation . . . . . . . . . . . | VI | 6.05 | 30 |
| Form of Distribution . . . . . . . . | VI | 6.05 | 30 |
| In Event of Death . . . . . . . . . . | VIII | 8.02 | 40 |
| Undeliverable Assets . . . . . . . . | VI | 6.04 | 29 |
| Upon Attainment of Age 70-1/2 . | VI | 6.04 | 29 |
| Upon Plan Termination . . . . . . | XI | 11.02 | 53 |
| Upon Termination of Employment | VI | 6.04 | 28 |
| **DURATION OF AGREEMENT.** . Ex. G. | | 5 | (3) |
| **EDS COMMON STOCK FUND** | | | |
| Cash-in-Lieu of Shares . . . . . . | VII | 7.03 | 38 |
| Definition of . . . . . . . . . . . . . | II | 2.17 | 7 |
| Investment of Dividends . . . . . | VII | 7.03 | 38 |
| Transfer of Assets . . . . . . . . . . | VII | 7.03 | 38 |
| Withdrawal or Settlement . . . . | VII | 7.03 | 38 |
| **EFFECTIVE DATE OF AMENDED PLAN** . . . . . . . . . . . . . . . . . . . . . | I | 1.02 | 3 |
| **EFFECTIVE DATE OF INVESTMENT OPTION ELECTION** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.18 | 7 |
| **EFFECTIVE DATE OF LOAN** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.19 | 7 |
| **EFFECTIVE DATE OF TERMINATION** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.20 | 8 |
| **EFFECTIVE DATE OF TRANSFER OF ASSETS** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.21 | 8 |

|  | Article | Section | Page |
|---|---|---|---|
| EFFECTIVE DATE OF WITHDRAWAL | | | |
| Definition of .............. | II | 2.22 | 8 |
| ELIGIBILITY ............. | III | 3.01 | 15 |
| ELIGIBLE ROLLOVER DISTRIBUTION | | | |
| Definition of .............. | II | 2.23 | 8 |
| ELIGIBLE WEEKLY EARNINGS | | | |
| Contributions as Percentage of | IV | 4.01 | 15 |
| Definition of .............. | II | 2.24 | 8 |
| Performance Bonus Payment. . | II | 2.24 | 8 |
| EMPLOYEE | | | |
| Definition of .............. | II | 2.25 | 9 |
| EMPLOYEE STOCK OWNERSHIP PLAN (ESOP) | | | |
| After-Tax Contribution Limitation .............. | IX | 9.03 | 48 |
| Definition of .............. | IX | 9.01 | 46 |
| Distribution of Dividends .... | IX | 9.05 | 50 |
| Pre-Tax Savings Limitation... | IX | 9.02 | 47 |
| Special Rules .............. | IX | 9.04 | 49 |
| ESTABLISHMENT OF PLAN .. | I | 1.01 | 3 |
| Board of Directors' Approval . | Ex. G | 1 | (1) |
| Internal Revenue Service Approval ................ | Ex. G | 4 | (2) |
| EXCESS CONTRIBUTIONS ... | II | 2.26 | 11 |
| EXCESS AGGREGATE CONTRIBUTIONS .......... | II | 2.27 | 11 |
| FIDUCIARY | | | |
| Delegation of Responsibilities. | X | 10.01 | 50 |
| FINANCIAL HARDSHIP | | | |
| Definition of .............. | II | 2.28 | 11 |
| GENERAL MOTORS INVESTMENT MANAGEMENT CORPORATION. ............. | X | 10.01 | 50 |
| GM COMMON STOCK FUNDS | | | |
| Definition of .............. | II | 2.10 | 5 |

|  | Article | Section | Page |
|---|---|---|---|
| Investment of Dividends . . . . . | VII | 7.05 | 39 |
| Transfer of Assets . . . . . . . . . . | VII | 7.05 | 39 |
| Withdrawal or Settlement . . . . | VII | 7.05 | 39 |
| **GOVERNMENTAL RULINGS** | | | |
| Approval by Internal Revenue Service . . . . . . . . . . . . . . . . . . | I | 1.03 | 3 |
| Plan Contingent Upon . . . . . . . | Ex. G | 4 | (2) |
| **GRIEVANCE PROCEDURE** | | | |
| Non-Applicability of . . . . . . . . | Ex. G | 3 | (2) |
| **HIGHLY COMPENSATED EMPLOYEES** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.29 | 12 |
| Limitations . . . . . . . . . . . . . . . | IV | 4.04 | 18 |
| **INCAPACITY** . . . . . . . . . . . . . . . | X | 10.05 | 52 |
| **INTERNAL REVENUE SERVICE** | | | |
| Code . . . . . . . . . . . . . . . . . . . . | II | 2.06 | 4 |
| Governmental Rulings . . . . . . . | I | 1.03 | 3 |
| **INVESTMENT DECISIONS** . . . . | VIII | 8.07 | 44 |
| **INVESTMENTS** | | | |
| By Trustee . . . . . . . . . . . . . . . | VII | 7.01 | 36 |
| Contributions . . . . . . . . . . . . . | VI | 6.01 | 24 |
| Delphi Common Stock Fund . . | VII | 7.02 | 36 |
| Election of . . . . . . . . . . . . . . . | VI | 6.01 | 24 |
| Investment of Dividends . . . . . | VII | 7.02 | 36 |
| Mutual Funds . . . . . . . . . . . . . | VII | 7.02 | 37 |
| Promark Funds . . . . . . . . . . . . | VII | 7.02 | 38 |
| Socially Oriented Funds . . . . . | VII | 7.02 | 38 |
| Transfer of Assets . . . . . . . . . . | VI | 6.01 | 24 |
| **LEASED EMPLOYEES** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.30 | 13 |
| **LIABILITIES OF CORPORATION** . | VII | 7.01 | 36 |
| **LIMITATIONS ON CONTRIBUTIONS AND BENEFITS** . . . . . . . . . . . . . . . . . | VIII | 8.04 | 42 |

|  | Article | Section | Page |
|---|---|---|---|
| **LOANS** | | | |
| Assets. . . . . . . . . . . . . . . . . . . | VI | 6.06 | 32 |
| Current Market Value . . . . . . . | VI | 6.06 | 32 |
| Date of . . . . . . . . . . . . . . . . . . | VI | 6.06 | 32 |
| Default on . . . . . . . . . . . . . . . | VI | 6.06 | 34 |
| Interest Rate of. . . . . . . . . . . . | VI | 6.06 | 33 |
| Layoff or Leave Repayment . . | VI | 6.06 | 34 |
| Period of Time Granted for . . . | VI | 6.06 | 32 |
| Repayment of. . . . . . . . . . . . . | VI | 6.06 | 33 |
| Termination of Employment . . | VI | 6.06 | 34 |
| When Permitted. . . . . . . . . . . . | VI | 6.06 | 32 |
| **MERGER OR CONSOLIDATION** | | | |
| **OF PLAN** . . . . . . . . . . . . . . . . . . . | VIII | 8.03 | 41 |
| **NAMED FIDUCIARY** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.31 | 13 |
| **NON-ASSIGNABILITY** . . . . . . . | VIII | 8.01 | 40 |
| **NON-FORFEITABILITY**. . . . . . . | VI | 6.02 | 26 |
| **NORMAL RETIREMENT AGE** | | | |
| Definition of . . . . . . . . . . . . . ' | II | 2.32 | 14 |
| **PARTICIPANT** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.33 | 14 |
| Statements . . . . . . . . . . . . . . . | X | 10.04 | 52 |
| **PLAN** | | | |
| Amendment, Modification, | | | |
| Suspension, or Termination | | | |
| of. . . . . . . . . . . . . . . . . . . . . . | XI | 11.01 | 53 |
| Definition of . . . . . . . . . . . . . | II | 2.34 | 14 |
| **PLAN YEAR** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.35 | 14 |
| **PRIME RATE** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.36 | 14 |
| **PROHIBITION ON REVERSION** . | VIII | 8.09 | 46 |
| **RAYTHEON COMPANY** | | | |
| **COMMON STOCK FUND** | | | |
| Investment of Dividends . . . . . | VII | 7.04 | 39 |
| Transfer of Assets . . . . . . . . . . | VII | 7.04 | 39 |
| Withdrawal or Settlement . . . . | VII | 7.04 | 39 |

|  | Article | Section | Page |
|---|---|---|---|
| **RECORDS** | | | |
| Maintenance of . . . . . . . . . . . | X | 10.02 | 51 |
| Annual Valuations of Trust Fund or Market Value . . . . . . | X | 10.02 | 51 |
| **ROLLOVERS** . . . . . . . . . . . . . . . | IV | 4.03 | 18 |
| **SENIORITY** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.38 | 14 |
| Required for Eligibility . . . . . . | III | 3.01 | 15 |
| **SPECIAL PROVISIONS REGARDING VETERANS** . . . . . | VIII | 8.08 | 45 |
| **TERMINATION** | | | |
| Distribution Upon Plan Termination . . . . . . . . . . . . . | XI | 11.02 | 53 |
| Settlement Upon Termination of Employment . . . . . . . . . . | VI | 6.04 | 28 |
| **TOTAL AND PERMANENT DISABILITY** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.39 | 14 |
| **TRANSFER OF ASSETS TO OR RECEIPT OF ASSETS FROM OTHER QUALIFIED PLANS** . . . | IV | 4.02 | 17 |
| **TRUSTEE** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.40 | 15 |
| **VALUATION** | | | |
| Date of . . . . . . . . . . . . . . . . . | II | 2.12 | 6 |
| **VESTING** . . . . . . . . . . . . . . . . | VI | 6.02 | 26 |
| **VOTING RIGHTS** . . . . . . . . . . . | VII | 7.02 | 36 |
| **WITHDRAWALS** | | | |
| Amount of . . . . . . . . . . . . . . | VI | 6.03 | 27 |
| Financial Hardship . . . . . . . . . | VI | 6.03 | 27 |
| Outstanding Loan(s) . . . . . . . . | VI | 6.03 | 27 |
| Reasons for . . . . . . . . . . . . . | VI | 6.03 | 27 |
| Suspension from Participation . | VI | 6.03 | 27 |
| When Permitted . . . . . . . . . . . | VI | 6.03 | 27 |

# EXHIBIT G

# SUPPLEMENTAL AGREEMENT

## (Personal Savings Plan)

# SUPPLEMENTAL AGREEMENT
# (DELPHI PERSONAL SAVINGS PLAN)

On this <u>16th</u> day of <u>November 2003</u>, Delphi Corporation, hereinafter referred to as the Corporation, and the <u>IUE-CWA, the Industrial Division of the Communications Workers of America</u>, AFL-CIO, CLC, hereinafter referred to as the Union, on behalf of the employees covered by the Collective Bargaining Agreement of which this Agreement becomes a part, agree as follows:

## SECTION 1. Establishment of Plan

Subject to the approval of its Board of Directors, which occurred on <u>December 3, 2003</u>, the Corporation established Personal Savings Plan for Hourly-Rate Employees in the United States, hereinafter referred to as the "Plan," a copy of which is attached hereto and made a part of this Agreement to the extent applicable to the employees represented by the Union and covered by this Agreement as if fully set out herein, modified and supplemented, however, by the provisions hereinafter. In the event of any conflict between the provisions of the Plan and the provisions of this Agreement, the provisions of this Agreement will supersede the provisions of the Plan to the extent necessary to eliminate such conflict.

## SECTION 2. Administration

The Corporation shall have the responsibility for administration of the Plan.

Notwithstanding Article VI, Section 6.04 of the Plan, distribution of all assets in the Account of a Participant who has been discharged shall be deferred, unless the Participant otherwise elects irrevocably, pending the final resolution of any grievance over such Participant's discharge pursuant to the Collective Bargaining Agreement.

(1)

## SECTION 3. Non-Applicability of Collective Bargaining Agreement Grievance Procedure

No matter respecting the Plan as supplemented by this Agreement or any difference arising thereunder shall be subject to the grievance procedure established in the Collective Bargaining Agreement between the Corporation and the Union.

## SECTION 4. Governmental Rulings

The Plan and the Plan as it may be supplemented by superseding provisions of this Agreement are contingent upon and subject to the Corporation obtaining and retaining from the Internal Revenue Service a ruling, satisfactory to the Corporation, holding that the Plan meets the requirements of Section 401 of the Code, or any section of the Code which amends, supersedes, or supplements said section, and that any trust forming a part of the Plan is exempt from income taxation under Section 501(a) of the Code or any section of the Code which amends, supersedes, or supplements said section. In the event the above ruling is not obtained, the Corporation, within 30 days after any such disapproval, will give written notice thereof to the Union.

Notwithstanding any other provisions of this Agreement or the Plan, the Corporation, with the consent of the Chairman of the Delphi-IUE-CWA Automotive Conference Board, may, during the term of this Agreement, make revisions in the Plan not inconsistent with the purposes, structure, and basic provisions thereof which shall be necessary to obtain or retain the ruling referred to in this Section 4. Any such revisions shall adhere as closely as possible to the language and intent of provisions outlined in this Agreement and the Plan.

(2)

### SECTION 5. Duration of Agreement

This Agreement and Plan as supplemented by this Agreement shall continue in effect until otherwise agreed to by the Corporation and the Union.

In witness hereof, the parties hereto have caused this Agreement to be executed the day and year first above written.

| IUE-CWA, the Industrial Division of the Communications Workers of America, AFL-CIO, CLC | Delphi Corporation |
|---|---|
| EDWARD L. FIRE | J. T. BATTENBERG, III |
| JAMES D. CLARK | ALAN DAWES |
| MICHAEL J. BINDAS | MARK R. WEBER |
| DENNY THOMAS | DAVE WOHLEEN |
| ROBERT L. SUTTON | DON RUNKLE |
| VIRGINIA L. BAILEY | RODNEY O'NEAL |
| NICK BORDER | KEVIN M. BUTLER |
| STEVE LYKINS | JIM SPENCER |
| HENRY REICHARD | GUY HACHEY |
| WILLIAM C. THORPE | JIM BERTRAND |
| STEPHEN E. TRENT | RALPH HANDLEY |
| TODD M. VIARS | STEVEN L. GEBBIA |
| ISA SHABAZZ | DARRELL E. KIDD |
| EDWARD KARECKI | BERNARD J. QUICK |
| ANTHONY G. RUSSELL | MARK CASHDOLLAR |
| AARON C. JAMES | ROB GERLING |
| LARRY PHILLIPS | ED GOETTL |
| RONNIE L. HARDY | JUDY MATZELLE |
| GARY REISER | D. SCOTT MITCHELL |
| DONALD O. ARBOGAST | M. BETH SAX |
| ZEBTON WELLS | FRANCIS KUPLICKI |
| TEDDY WASHINGTON | SCOTT HARRIS |
| ALVIN LYONS | DAVID BOOKIN |
| B. KEITH HAMMOND | MICHAEL S. FLIGSTEIN |
| DAVID HEIZER | THOMAS SMITH |
| RON GILVIN | DALE JOHNSON |
| MICHAEL C. PALMER | DAVE CAIROLI |
| ERSKINE G. PAINTER V | SALVATORE GALANTE, M.D. |
| TODD T. WHARTON | KARL BOSSUNG |
| | RICH BALGENORTH |
| | STEPHANIE DAMERON-CLARK |
| | JOHN L. DeMARCO |
| | DEBORAH DOUGLAS |
| | PAT McDONALD |
| | BRENDA PAGE |
| | JAMES M. PETRIE |
| | DAVE PETTYES |

(4)

| IUE-CWA, the Industrial Division of the Communications Workers of America, AFL-CIO, CLC | Delphi Corporation |
|---|---|
| | CHARLES RUCKER |
| | SHARON SMITH |
| | RICHARD F. SOMOGYI |
| | BRIAN STUDER |
| | MARK WINFIELD |
| | KAREN ZIMMER |
| | RENEE ATKINSON |
| | CHRISTINE DARBY |
| | SHARON DELEZENNE |
| | DEANNA DOROGY |
| | DEBORAH FRANCE |
| | LAURA HARDY |
| | BEVERLY HUMPHREY |
| | NANCY JULIUS |
| | LESLEY MARCOTT |
| | MARK PIERCE |
| | DENNIS RIPPEL |
| | LUCE RUBIO |
| | MICHELLE TRIMBLE |
| | LAWANDA WHITE |
| | MELINDA WILEY |
| | CRISTINA ZATEK |

(5)

**IUE-CWA, the Industrial
Division of the Communications
Workers of America,
AFL-CIO, CLC**

**Delphi
Corporation**

HARRY W. WAGNER II

JIM FENNEL

MARLANE BENGRY

MELVIN RYAN

ALLAN WICHMANN

STEVEN OSTASIEWSKI

TOM MUNLEY

MATTHEW CHAFFIN

LYNN MOODY

LARRY JOHNSON

ROBERT MERKICH

CURTIS WEAKLEY

GWENDOLYN GAYDEN

DAPHNE HENRY

EMILEE A. CHAHINE

DIANE A. PROKOP

**EXHIBIT G-1**


**THE DELPHI**

**PERSONAL SAVINGS PLAN**

**FOR HOURLY-RATE EMPLOYEES**

**IN THE UNITED STATES**

2

# ARTICLE I

# ESTABLISHMENT OF
# PERSONAL SAVINGS PLAN

## 1.01  Establishment of Plan

Delphi Corporation hereby establishes The Delphi Personal Savings Plan for Hourly-Rate Employees in the United States (hereinafter referred to as the Plan), as set forth herein.

## 1.02  Effective Date of Amended Plan

The amended Plan shall become effective January 1, 2004, except as otherwise may be provided herein.

## 1.03  Governmental Rulings

This Plan is conditioned upon approval by the Internal Revenue Service in accordance with Sections 401 and 501(a) of the Code, or any section of the Code which amends, supersedes, or supplements said sections.

# ARTICLE II

# DEFINITION OF TERMS

The following definitions will apply to all words and phrases capitalized in the text which follows.

## 2.01  "Account"

Account means the assets credited to a Participant in the trust fund established under the Plan.

## 2.02  "Administrator"

Administrator means Delphi Corporation.

## 2.03  "After-Tax Assets"

After-Tax Assets means the units of the GM Common Stock Fund, EDS Common Stock Fund, GM Class H

3

Common Stock Fund, Delphi Common Stock Fund, Raytheon Company Common Stock Fund, Promark Funds, Socially Oriented Funds, and shares of the Mutual Funds purchased with After-Tax Savings and dividends and earnings thereon.

### 2.04 "After-Tax Savings"

After-Tax Savings means amounts contributed to the trust fund by the Corporation as elected by a Participant in accordance with Section 5.01.

### 2.05 "Business Day"

Business Day means a day the New York Stock Exchange is open for business, except in the event of the occurrence on any day of government restrictions, exchange or market rulings, suspensions of trading, acts of civil or military authority, national emergencies, fires, earthquakes, floods or other catastrophes, acts of God, wars, riots or failures of communication or power supply, or other circumstances beyond the reasonable control of the Trustee, the Trustee shall determine in its discretion the extent to which such day shall constitute a Business Day for any purpose of the Plan. If the New York Stock Exchange is closed as a result of a holiday, weekend, or at the end of a Business Day, normally 4:00 p.m. Eastern Time, then the Effective Date will be the next following Business Day.

### 2.06 "Code"

The term "Code" means the Internal Revenue Code of 1986, as amended.

### 2.07 "Compensation"

Compensation means the total amount paid by the Corporation to the Employee with respect to hourly-rate employment during any Plan Year as evidenced by Internal Revenue Service Form W-2 or its equivalent,

plus amounts not currently includable in income by reason of Sections 125, 132(f)(4) (effective January 1, 2001), and/or 402(e)(3) of the Code.

## 2.08  "Corporation"

Corporation means Delphi Corporation.

## 2.09  "Corporation Stock"

Corporation Stock means Delphi Common Stock, issued by Delphi Corporation with voting power and dividend rights no less favorable than the voting power and dividend rights of other common stock issued by the Corporation.

## 2.10  "GM Common Stock Funds"

- **GM Common Stock Fund** - The term "GM Common Stock Fund" shall mean the investment option consisting principally of common stock, $1-2/3 par value, issued by General Motors Corporation. A portion of the GM Common Stock Fund may be invested in short-term fixed income investments and money market instruments.

- **GM Class H Common Stock Fund** - The term "GM Class H Common Stock Fund" shall mean the investment option consisting principally of General Motors Class H common stock, $0.10 par value, issued by General Motors Corporation. A portion of the GM Class H Common Stock Fund may be invested in short-term fixed income investments and money market instruments.

## 2.11  "Current Market Value"
### Current Market Value means

(a) for GM Common Stock Fund, EDS Common Stock Fund, GM Class H Common Stock Fund, Delphi Common Stock Fund, Raytheon Company Common

Stock Fund, and the Promark Funds, the fair market value of the units reported by the respective fund,

(b) for assets attributable to the Mutual Funds, the fair market value of the units reported by the Mutual Fund company, and

(c) for assets attributable to the Socially Oriented Funds, the fair market value of the units reported by the companies representing such Funds.

## 2.12 "Date of Valuation"

Date of Valuation means the end of a Business Day, normally 4:00 p.m. Eastern Time, that a Participant initiates an investment option election, withdrawal, transfer of assets, settlement upon termination of employment, or loan, and such date shall be the Effective Date of Investment Option Election, Effective Date of Withdrawal, Effective Date of Transfer of Assets, Effective Date of Termination, or Effective Date of Loan, whichever applies.

## 2.13 "Deferred Assets"

Deferred Assets means the units of the GM Common Stock Fund, EDS Common Stock Fund, GM Class H Common Stock Fund, Delphi Common Stock Fund, Raytheon Company Common Stock Fund, Promark Funds, Socially Oriented Funds(s), and shares of the Mutual Funds purchased with Deferred Savings and dividends and earnings thereon.

## 2.14 "Deferred Savings"

Deferred Savings means amounts contributed to the trust fund by the Corporation as elected by a Participant in accordance with Sections 4.01 and 4.02.

6

## 2.15 "Delphi Common Stock Fund"

"Delphi Common Stock Fund" means the investment consists principally of Delphi Corporation (Delphi) Common Stock. A portion of the Delphi Common Stock Fund may be invested in short-term fixed income investments and money market instruments.

## 2.16 "Distributee"

Distributee means an Employee or former Employee of the Corporation to whom assets are to be distributed. Additionally, the surviving spouse of the Employee or former Employee or alternate payee to whom assets are to be distributed under a Qualified Domestic Relations Order, as defined in Section 414(p) of the Code, are Distributees with regard to their interest.

## 2.17 "EDS Common Stock Fund"

EDS Common Stock Fund means the investment which consists principally of Electronic Data Systems Corporation (EDS) common stock, $0.01 par value. A portion of the EDS Common Stock Fund may be invested in short-term fixed income investments and money market instruments.

## 2.18 "Effective Date of Investment Option Election"

Effective Date of Investment Option Election means the Business Day on which appropriate direction to the Trustee is received by the party designated by the Administrator for an investment option change.

## 2.19 "Effective Date of Loan"

Effective Date of Loan means the Business Day on which appropriate direction to the Trustee is received by the party designated by the Administrator for a loan.

7

### 2.20 "Effective Date of Termination"

Effective Date of Termination means the Business Day on which termination of employment with the Corporation occurs.

### 2.21 "Effective Date of Transfer of Assets"

Effective Date of Transfer of Assets means the Business Day on which appropriate direction to the Trustee is received by the party designated by the Administrator for a transfer of assets.

### 2.22 "Effective Date of Withdrawal"

Effective Date of Withdrawal means the Business Day on which appropriate direction to the Trustee is received by the party designated by the Administrator for a withdrawal.

### 2.23 "Eligible Rollover Distribution"

Eligible Rollover Distribution means any distribution consisting of all or any portion of the Account of the Distributee, except that an Eligible Rollover Distribution does not include:

(i) any distribution to the extent such distribution is required under Section 401(a)(9) of the Code;

(ii) the portion of any distribution that is not includable in gross income;

(iii) substantially equal installment payments that are payable for ten or more years; and

(iv) any distribution due to Financial Hardship as defined under Article II, Section 2.28.

### 2.24 "Eligible Weekly Earnings"

Eligible Weekly Earnings means base pay plus any Cost-of-Living Allowance received by a Participant

from the Corporation with respect to hourly-rate employment during a calendar week and any Performance Bonus Payment (as defined in the Collective Bargaining Agreement) made to a Participant during the Plan Year. The term Eligible Weekly Earnings shall include any pay received for overtime hours, night shift, seven-day premiums, and suggestion awards. Eligible Weekly Earnings shall not include any other special payments, fees, or allowances, and in no event may exceed $200,000 per year effective January 1, 2001, (or as may be adjusted by the Secretary of the Treasury of the United States).

## 2.25 "Employee"

Employee means

(a)  any person regularly employed in the United States by the Corporation or by a wholly-owned or substantially wholly-owed domestic subsidiary in accordance with I.R.C. Section 414(b), (c), and (m) thereof, on an hourly-rate basis, including:

(1)  hourly-rate persons employed on a full-time basis;

and

(2)  part-time hourly-rate employees.

(b)  the term Employee shall not include employees of any directly or indirectly wholly-owned or substantially wholly-owned subsidiary of the Corporation, except as approved for employees of Delco Electronics Corporation, or as otherwise approved by the Delphi Board of Directors.

(c)  the term "Employee" shall not include employees represented by a labor organization which has not signed an agreement making the Plan applicable to such employees.

9

(d)  the term "Employee" shall not include Leased Employees as defined under Article II, Section 2.30.

(e)  the term "Employee" shall not include contract employees, bundled-services employees, consultants, or similarly situated individuals, or individuals who have represented themselves to be independent contractors.

(f)  the following classes of individuals are ineligible to participate in this Plan, regardless of any other Plan terms to the contrary, and regardless of whether the individual is a common-law employee of the Corporation:

(i)  any individual who provides services to the Corporation where there is an agreement with a separate company under which the services are provided.  Such individuals are commonly referred to by the Corporation as "contract employees" or "bundled-services employees";

(ii)  any individual who has signed an independent contractor agreement, consulting agreement, or other similar personal service contract with the Corporation;

(iii)  any individual who both (a) is not included in any represented bargaining unit and (b) who the Corporation classifies as an independent contractor, consultant, contract employee, or bundled-services employee during the period the individual is so classified by the Corporation.

The purpose of this provision is to exclude from participation all persons who may actually be common-law employees of the Corporation, but who are not paid as though they were employees of the Corporation, regardless of the reason they are excluded from the payroll, and regardless of whether that exclusion is correct.

## 2.26  "Excess Contributions"

The term Excess Contributions means the excess of:

(a) the aggregate amount of Deferred Savings actually taken into account in computing the limitations for Highly Compensated Employees under Section 4.04(a), over

(b) the maximum amount of Deferred Savings permitted under the limitations of Section 4.04(a) (determined by hypothetically reducing the Deferred Savings made on behalf of Highly Compensated Employees in the order of the ratios under Section 4.04(b), beginning with the highest of such ratios).

## 2.27  "Excess Aggregate Contributions"

The term Excess Aggregate Contributions means the excess of:

(a) the aggregate amount of After-Tax Savings actually taken into account in computing the limitations for Highly Compensated Employees under Section 5.03(a), over

(b) the maximum amount of After-Tax Savings permitted under the limitations of Section 5.03(a) (determined by hypothetically reducing the After-Tax Savings made on behalf of Highly Compensated Employees in the order of the ratios under Section 5.03(b), beginning with the highest of such ratios).

## 2.28  "Financial Hardship"

Financial Hardship means a reason given by a Participant when applying for a withdrawal before age 59-1/2 which indicates the withdrawal is (1) necessary to meet immediate and heavy financial needs of the Participant, (2) for an amount required to meet the immediate financial need created by the hardship, and (3) for an amount that is not reasonably available from

11

Art II, 2.28

other resources of the Participant. The amount of such withdrawal may be increased to include any amounts necessary to pay reasonably anticipated income taxes and penalties resulting from the early withdrawal. The reason must be permitted under existing Internal Revenue Service regulations and rulings and must be acceptable to the Named Fiduciary or its delegate for one of the following reasons:

    **(a)** purchase or construction of the Participant's principal residence;

    **(b)** payment of expenses to prevent foreclosure on the Participant's principal residence or to prevent eviction from the Participant's principal residence;

    **(c)** payment of tuition for the next 12 months of post-secondary education for a Participant, a Participant's spouse, or a Participant's dependent;

    **(d)** payment of medical expenses previously incurred or necessary to obtain medical care for a Participant, a Participant's spouse, or a Participant's dependent; or

    **(e)** any other reason acceptable under published Internal Revenue Service regulations and rulings.

### 2.29 "Highly Compensated Employees"

For purposes of this Plan, the term Highly Compensated Employees means Highly Compensated active Employees and Highly Compensated former Employees. For purposes of this Section, the determination year shall be the calendar year, and the look-back year shall be the 12-month period immediately preceding the determination year. A Highly Compensated active Employee includes any Employee who performs service for the Corporation during the determination year and who, during the look-back year:

12

(a) (1)  received compensation from the Corporation in excess of $80,000.00 (as adjusted under the Code) for such year, or

(2) was a 5% owner of the Corporation at any time during the year or the preceding year.

(b) A Highly Compensated former Employee includes any Employee who separated from service prior to the determination year, performs no service for the Corporation during the determination year, and was a Highly Compensated active Employee for either the separation year or any determination year ending on or after the Employee's 55th birthday.

(c) The determination of who is a Highly Compensated Employee, including the determinations of the number and identity of Employees in the top-paid group, will be made in accordance with Section 414(q) of the Code and regulations thereunder.

## 2.30 "Leased Employees"

Leased Employee means any person who, pursuant to an agreement between the Corporation and any leasing organization, has performed services for the Corporation on a substantially full-time basis for a period of at least one year, and such services are performed under the primary direction or control of the Corporation. Contributions or benefits provided a Leased Employee by the leasing organization which are attributable to services performed for the Corporation shall be treated as provided by the Corporation. A Leased Employee shall not be considered an employee of the Corporation if such employee is covered by the safe harbor requirements of Section 414(n)(5) of the Code.

## 2.31 "Named Fiduciary"

Named Fiduciary means the Executive Committee of the Board of Directors of Delphi Corporation except as set forth in Sections 8.07 and 10.01.

### 2.32  "Normal Retirement Age"

Normal Retirement Age means the attainment of age 65 by the Participant.

### 2.33  "Participant"

Participant means an Employee, or former Employee, who has an Account under this Plan.

### 2.34  "Plan"

Plan means The Delphi Personal Savings Plan for Hourly-Rate Employees in the United States.

### 2.35  "Plan Year"

Plan Year means the 12-month period beginning on January 1 and ending on December 31.

### 2.36  "Prime Rate"

Prime Rate means the interest rate reported as the "Prime Rate" in the Eastern Edition of the *Wall Street Journal* in its general guide to money rates.

### 2.37  "Raytheon Company Common Stock Fund"

Raytheon Company Common Stock Fund means the investment which consists principally of Raytheon Company common stock. A portion of the Raytheon Company Common Stock Fund may be invested in short-term fixed income investments and money market instruments.

### 2.38  "Seniority"

Seniority as used in the Plan means the Employee must complete 90 days of employment with the Corporation.

### 2.39  "Total and Permanent Disability"

Total and Permanent Disability means the Employee is currently eligible for a benefit under The Delphi Hourly-Rate Employees Pension Plan because of total and

14

permanent disability or would be eligible for such a benefit except the Employee does not have ten years of credited service.

### 2.40 "Trustee"

Trustee means the outside organization or organizations appointed by the Named Fiduciary, or its delegate, to hold, invest, and distribute the assets of the Plan.

# ARTICLE III

# ELIGIBILITY

### 3.01 Eligibility

An Employee is eligible to participate and accumulate savings under the Plan on the first day of the first pay period next following the attainment of Seniority.

A previously eligible Employee who resumes active employment following a termination of employment will be eligible to participate immediately.

# ARTICLE IV

# CASH OR DEFERRED ARRANGEMENT

### 4.01 Cash or Deferred Arrangement

(a) In lieu of receipt of Eligible Weekly Earnings to which an Employee is entitled, such Employee may elect, by providing appropriate direction to the party designated by the Administrator, to have the Corporation contribute to the Plan, on a weekly basis, an equivalent amount in accordance with this qualified cash or deferred arrangement as provided for under Section 401(k) of the Code. Such contributions must be whole percentages of the Employee's Eligible Weekly Earnings and may not be at a rate of less than 1% nor more than 60% of the Employee's Eligible Weekly Earnings.

15

In addition to the contributions described above, an Employee age 50 or over, or an Employee that will attain age 50 by the end of the year, may elect to have the Corporation contribute to the Employee's Account "catch-up" contributions as permitted by Federal law. Such contributions may not be at a rate of less than 1% nor more than 40% of the Employee's Eligible Weekly Earnings. Catch-up contributions may only be permitted by an Employee once a limitation is imposed pursuant to this Section or Sections 4.04, 8.04 and 8.05 of the Plan.

Contributions referenced in this subsection shall be allocated to the Employee's Account and shall be vested immediately. The Employee's Compensation shall be reduced by the full amount of any such Corporation contribution.

The Employee may elect, by providing appropriate direction to the party designated by the Administrator, to change the amount of such Corporation contributions or to have such contributions suspended at any time.

(b) Any change in the rate of payroll deduction authorized by an Employee in accordance with subsection (a) of this Section 4.01 will become effective not later than the first day of the second pay period next following the date on which such authorization is received by the party designated by the Administrator.

(c) In addition to the contributions as provided for in subsection (a) of this Section 4.01, an Employee eligible to receive a payment from The Delphi Profit Sharing Plan for Hourly-Rate Employees in the United States may elect to have the Corporation contribute to the Employee's Account as Deferred Savings an amount up to 100%, in multiples of 1%, of the amount of such payment, provided such Employee has not terminated employment prior to such contribution. Such election shall be made at such time and in such manner as the

16

Administrator shall determine and will remain continuously in effect until changed by the Employee. If appropriate direction is not received by the party designated by the Administrator from an Employee on or before the date established by the Administrator for submission of such election with respect to a payment, such amount shall be paid to the Employee.

**(d)** The Corporation may limit the amount of contributions to the trust pursuant to subsections (a) and (c) of this Section 4.01 if necessary to comply with Sections 4.04, 8.04, and 8.05 of the Plan.

### 4.02 Transfer of Assets to or Receipt of Assets from Other Qualified Plans

The Administrator may direct the Trustee to accept all of an Employee's funds transferred from a similar qualified plan, and may direct the Trustee to transfer all of a Participant's funds to a similar qualified plan, provided such other qualified plan (1) is maintained by an employer which is a member of a controlled group of corporations of which the Employee's current employer is a member, and (2) permits such transfers, or (3) is a plan maintained by General Motors Corporation as part of an applicable GM collective bargaining agreement. Any funds so transferred shall be accompanied by instructions from the Trustee setting forth the Employee for whose benefit such assets are being transferred, and identifying the source of such accumulated funds. Funds transferred from other plans which otherwise would be subject to federal income taxation will be designated as Deferred Savings.

Notwithstanding the foregoing, the Plan may not receive a transfer from another qualified plan if such other plan provides, or at any time had provided, benefits through alternative forms of distribution, including annuities, which are not available under this Plan.

17

## 4.03  Rollovers

(a) An Employee may make a rollover contribution, as permitted under Section 402(c) of the Code, into an option or options selected by such Employee in an amount not exceeding the total amount of taxable <u>and/or nontaxable</u> proceeds distributed by <u>another eligible retirement</u> plan.  <u>An eligible retirement plan shall be determined under Section 402(c)(8)(B).  Additionally, cash proceeds received under a Qualified Domestic Relations Order from an eligible retirement plan as described above may be rolled over to the Plan.</u>  The rollover contribution must be made by the Employee (a) within 60 days following the receipt of such distribution <u>of taxable proceeds,</u> or (b) as a direct trustee-to-trustee transfer from the former employer's plan as permitted under Section 401(a)(31) of the Code.

(b) An Employee who receives an Eligible Rollover Distribution may elect to have the Trustee transfer directly to an IRA of the Employee, or to another employer's plan in which the Employee is a participant, all or part of the assets included in the distribution, including Company stock.  The Employee shall designate the IRA or other employer's plan to which assets are to be transferred, and the transfer shall be made subject to acceptance by the transferee plan or IRA. Any such direct transfer shall be subject to Section 401 (a)(31) of the Code.

## 4.04  Cash or Deferred Arrangement Limitation

(a)  The Deferred Savings percentage by the eligible Highly Compensated Employees under the Plan for a Plan Year must meet one of the following tests using the current year testing method:

(i)    The actual Deferred Savings percentage of

18

the eligible Highly Compensated Employees is not more than 1.25 times the actual Deferred Savings percentage of all other eligible Employees; or

(ii)   The actual Deferred Savings percentage of the eligible Highly Compensated Employees is not more than two percentage points more than the actual Deferred Savings percentage for all other eligible Employees and is not more than 2.0 times (or, such lesser amount as the Secretary of the Treasury shall prescribe) the actual Deferred Savings percentage of all other eligible Employees.

(b)   The actual Deferred Savings percentage for the eligible Highly Compensated Employees and all other eligible Employeesfor a Plan Year is the average of the ratios (calculated separately for each eligible Employee) of the:

(i)   Amount of Deferred Savings actually paid over to the Plan trust not later than two and one-half months after the Plan Year on behalf of such eligible Employee for the Plan Year to:

(ii)   The eligible Employee's Compensation for such Plan Year.

(c)   The amount of Deferred Savings for a Highly Compensated Employee that exceeds the percentage limitations of subsection (a) of this Section 4.04 shall be distributed to the Participant no later than two and one-half months following the end of the Plan Year.  The amount of any such distribution shall be determined under a reasonable method selected by the Administrator under applicable tax regulations and will include any earnings attributable to the excess Deferred Savings.

19

**(d)  Special Rules**

**(i)**    In the event that this Plan satisfies the requirements of Sections 401(k), 401(a)(4), or 410(b) of the Code only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such sections of the Code only if aggregated with this Plan, then this Section 4.04 shall be applied by determining the actual Deferred Savings percentage of eligible Employees as if all such plans were a single plan.

**(ii)**    The actual Deferred Savings percentage for any Participant who is a Highly Compensated Employee for the Plan Year, and who is eligible to participate in two or more arrangements described in Section 401(k) of the Code that are maintained by the Corporation, shall be determined by treating all such plans as a single plan.  Notwithstanding the foregoing, certain plans shall be treated as separate if mandatorily disaggregated under regulations under Section 401(k) of the Code.

Notwithstanding any other provision of the Plan, Excess Contributions, plus any income and minus any loss allocable thereto, shall be distributed no later than the last day of the following Plan Year to Employees to whose accounts such excess Contributions were allocated. Excess Contributions are allocated to the Highly Compensated Employees with the largest amounts of Deferred Savings taken into account for the year in which the excess arose, beginning with such Employee with the largest amount of such Savings and continuing in descending order untill all the Excess Contributions have been allocated. For purposes of the preceding sentence, the "largest amount" is determined after distribution of any Excess Contributions.

20

# ARTICLE V

# AFTER-TAX SAVINGS

## 5.01  After-Tax Savings

(a)  In lieu of all or part of the contributions an Employee may authorize in accordance with Section 4.01, an Employee may elect to contribute an equivalent amount to the Plan on an after-tax basis.  Such contributions shall be allocated to the Employee's Account and shall be vested immediately.

The Employee may elect, by providing appropriate direction to the party designated by the Administrator, to change the amount of such contributions or to have such contributions suspended at any time.

(b)  Any change in the rate of payroll deduction authorized by an Employee in accordance with subsection (a) of this Section 5.01 will become effective not later than the first day of the second pay period next following the date on which such authorization is received by the party designated by the Administrator.

(c)  The Corporation may limit the amount of contributions to the trust pursuant to subsection (a) of this Section 5.01 if necessary to comply with Sections 5.03, 5.05, and 8.04 of the Plan.

## 5.02  Transfer of Assets to or Receipt of Assets from Other Qualified Plans

The Administrator may direct the Trustee to accept all of an Employee's funds transferred from a similar qualified plan, and may direct the Trustee to transfer all of a Participant's funds to a similar qualified plan, provided such other qualified plan (1) is maintained by an employer which is a member of a controlled group of corporations of which the Employee's current employer is a member, and (2) permits such transfers, or (3) is a

21

Art. V, 5.02

plan maintained by General Motors Corporation as part of an applicable GM collective bargaining agreement. Any funds so transferred shall be accompanied by instructions from the Trustee setting forth the Employee for whose benefit such assets are being transferred, and identifying the source of such accumulated funds. Funds transferred from other plans which otherwise would not be subject to federal income taxation will be designated as After-Tax Savings.

Notwithstanding the foregoing, the Plan may not receive a transfer from another qualified plan if such other plan provides, or at any time had provided, benefits through alternative forms of distribution, including annuities, which are not available under this Plan.

## 5.03   After-Tax Contribution Limitation

(a)   The After-Tax Savings percentage by the eligible Highly Compensated Employees under the Plan for a Plan Year must meet one of the following tests using the current year testing method:

(i)   The actual After-Tax Savings percentage of the eligible Highly Compensated Employees is not more than 1.25 times the actual After-Tax Savings percentage of all other eligible Employees; or

(ii)   The actual After-Tax Savings percentage of the eligible Highly Compensated Employees is not more than two percentage points more than the actual After-Tax Savings percentage for all other eligible Employees and is not more than 2.0 times (or, such lesser amount as the Secretary of the Treasury shall prescribe) the actual After-Tax Savings percentage of all other eligible Employees.

(b)   The actual After-Tax Savings percentage for the eligible Highly Compensated Employees and all other

22

eligible Employees for a Plan Year is the average of the ratios (calculated separately for each eligible Employee) of the:

(i)    Amount of After-Tax Savings actually paid over to the Plan trust on behalf of such eligible Employee for the Plan Year to:

(ii)    The eligible Employee's Compensation for such Plan Year.

(c)    The amount of After-Tax Savings for a Highly Compensated Employee that exceeds the percentage limitations of subsection (a) of this Section 5.03 shall be distributed to the Participant no later than two and one-half months following the end of the Plan Year. The amount of any such distribution shall be determined under a reasonable method selected by the Administrator under applicable tax regulations and will include any earnings attributable to the excess After-Tax Savings.

## 5.04  Special Rules

(a)    In the event that this after-tax portion of the Plan satisfies the requirements of Sections 401(m), 401(a)(4), or 410(b) of the Code only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such sections of the Code only if aggregated with this after-tax portion of the Plan, then Section 5.02 shall be applied by determining the actual After-Tax Savings percentage of eligible Employees as if all such plans were a single plan.

(b)    The actual After-Tax Savings percentage for any Participant who is a Highly Compensated Employee for the Plan Year, and who is eligible to participate in two or more arrangements described in Section 401(m) of the Code that are maintained by the Corporation, shall be

23

determined by treating all such plans as a single plan. Notwithstanding the foregoing, certain plans shall be treated as separate if mandatorily disaggregated under regulations under Section 401(m) of the Code.

(c) Notwithstanding any other provision of the Plan, Excess Aggregate Contributions, plus any income and minus any loss allocable thereto, shall be distributed no later than the last day of the following Plan Year to Employees to whose accounts such Excess Aggregate Contributions were allocated. Excess Aggregate Contributions are allocated to the Highly Compensated Employees with the largest amounts of After-Tax Savings taken into account for the year in which the excess arose, beginning with such Employee with the largest amount of such Savings and continuing in descending order until all the Excess Aggregate Contribution have been allocated. For purposes of the preceding sentence, the "largest amount" is determined after distribution of any Excess Aggregate Contributions.

## ARTICLE VI

## INVESTMENT OF PARTICIPANT'S SAVINGS

### 6.01 Investment Options

(a) Amounts contributed to the trust fund on behalf of Participants pursuant to subsections (a) and (c) of Section 4.01 and subsection (a) of Section 5.01 shall be invested in the following investment options, in increments of 10%, as may be elected by the Participant:

(i)   Delphi Common Stock Fund; or

(ii)  the Mutual Funds; or

(iii) The Promark Funds

**(iv)** Socially Oriented Fund(s)

**(b)** A Participant's initial investment election shall remain in effect until changed by the Participant.

A Participant's investment election may be changed on any Business Day by providing appropriate direction to the party designated by the Administrator. Any change in the Participant's investment election shall be effective as of the Effective Date of Investment Option Election.

**(c)** Amounts contributed to the trust fund on behalf of a Participant as provided in subsection (c) of Section 4.01 and Sections 4.02 and 5.02 shall be invested in the same investment option(s) as elected by the Participant pursuant to subsection (a) of this Section 6.01; provided, however, that if contributions are not being made to the trust fund on behalf of such Participant pursuant to subsections (a) of Sections 4.01 and 5.01, the Participant will be required, prior to the contribution or transfer of amounts pursuant to subsection (c) of Section 4.01 and Sections 4.02 and 5.02, to make an election regarding the investment of such amount.

**(d)** A Participant may, by giving appropriate direction to the party designated by the Administrator, transfer assets being held in such Participant's Account from one investment option to another investment option, as follows:

**(i)** A transfer of assets may include all or any part of such assets in an investment option, except that the Mutual Funds have a minimum transfer amount of $250. If the value of the Mutual Fund is less than the minimum, all such assets in the Fund must be transferred.

**(ii)** A Participant may elect a transfer of assets on any Business Day.

25

**(iii)**  Any election to transfer assets shall be irrevocable, normally as of 4:00 p.m. Eastern Time, on the Business Day such election is received by the party designated by the Administrator.

**(iv)**  Any appropriate election to transfer assets shall be processed as of the Effective Date of Transfer of Assets.

**(v)**  Where excessive trading can undermine any of the Funds or exceed the available liquidity for any such Fund, Delphi reserves the right to modify or suspend transfer and withdrawal privileges on any of the Non-Mutual Funds, at any time, upon notice to Participants.

**(vi)**  The Mutual Funds' provider reserves the right to modify or suspend transfer and withdrawal privileges on any of the Mutual Funds in those instances where excessive trading in any one of the Mutual Funds can undermine such Fund.

**(vii)**  The Socially Oriented Funds provider reserves the right to modify or suspend transfer and withdrawal privileges on the Socially Oriented Funds in those instances where excessive trading in the Socially Oriented Funds can undermine such Fund.

## 6.02  Vesting

Each Participant shall be fully vested in the assets credited to the Participant's Account, and no portion of such Account shall be subject to forfeiture.

## 6.03 Withdrawals

**(a)**  A Participant may, by providing appropriate direction to the party designated by the Administrator, withdraw assets in such Participant's Account subject to the following provisions:

(1)   Prior to receiving a withdrawal of Deferred Assets, a Participant must withdraw all available After-Tax Assets including any earnings thereon.

(2)   Deferred Assets may be withdrawn from the Participant's Account, subject to the provisions outlined in subsection (a) of this Section 6.03, at any time after attaining age 59-1/2, or prior to age 59-1/2 because of <u>severance from</u> employment, death, Total and Permanent Disability, Financial Hardship<u>, or termination of the Plan</u>. Prior to receiving a withdrawal for Financial Hardship, a Participant previously must have taken all available asset distributions, withdrawals, and loans under all applicable plans maintained by the Corporation. The amount that may be withdrawn for a Financial Hardship shall be limited to the lesser of:

(i)   the total amount of Deferred Savings in the Participant's Account as of the Effective Date of Withdrawal; or

(ii)   the amount required to meet the Financial Hardship, including any amounts necessary to pay reasonably anticipated income taxes and penalties resulting from the early withdrawal.

(b)   A Participant who has an outstanding loan(s) in accordance with Section 6.06 shall be permitted to make a withdrawal in accordance with subsection (a) of this Section 6.03.

(c)   A Participant who withdraws any Deferred Assets for Financial Hardship in accordance with subsection (a) of this Section 6.03 will be suspended from accumulating further savings under this Plan, and all applicable plans maintained by the Corporation, for a period of 12 months immediately following such withdrawal.

27

**(d)** Any election to withdraw assets shall be irrevocable, normally as of 4:00 p.m. Eastern Time, on the Business Day such election is received by the party designated by the Administrator.

**(e)** The Date of Valuation on any appropriate election to withdraw assets, pursuant to this Section 6.03, shall be the Effective Date of Withdrawal.

## 6.04  Distribution of Assets

**(a)**  Settlement Upon Termination of Employment

If a Participant terminates employment, such Participant may elect, by providing appropriate direction to the party designated by the Administrator, to (1) receive installment payments, (2) receive partial withdrawals, (3) receive a total settlement, or (4) defer continuously the distribution of assets in such Participant's Account. If such Participant fails to make an election, the Participant's Assets shall remain in the Participant's Account until the earlier of:

**(1)**   the Participant's request for a settlement; or

**(2)**   the Participant's attainment of age 70-1/2.

The Date of Valuation for any such installment payment, partial withdrawal, or total settlement shall be the Effective Date of Withdrawal.

With regard to installment payments, a Participant may elect to receive such payments each calendar month, calendar quarter, semi-annual, or on an annual basis.

Installment payments must be in whole dollar amounts with $100 established as the monthly minimum amount. A Participant may change or discontinue installment payments at any time by providing appropriate direction to the party designated by the Administrator.

28

If a terminated Participant does not make an election under this Section 6.04 prior to attaining age 70-1/2, distribution of assets in the Participant's Account will begin not later than April 1 of the calendar year following the calendar year in which the Participant attains age 70-1/2 and shall be made annually thereafter in accordance with Section 401(a)(9) of the Code and the regulations thereunder, including the minimum distribution incidental benefit requirement of Section 1.401(a)(9)-2 of the Income Tax Regulations.

**(b)**  Attainment of Age 70-1/2

**(i)**  If a Participant attains age 70-1/2 and such Participant has not terminated employment, a distribution of the Participant's assets will be made upon termination of employment pursuant to Section 6.04(a).

**(ii)**  All distributions required under this subsection shall be determined and made in accordance with Section 401 (a)(9) of the Code and the regulations thereunder, including the minimum distribution incidental benefit requirement of Section 1.401 (a)(9)-2 of the Income Tax Regulations.

**(c)**  Undeliverable Assets

In the event a distribution to a Participant or the Participant's beneficiary cannot be made pursuant to subsections (a) and (b) of this Section 6.04 and Section 8.02 because the identity or location of such Participant or beneficiary cannot be determined after reasonable efforts, and if the Participant's settlement remains undistributed for a period of one year from the Date of Valuation, the Administrator may direct that the settlement assets and earnings on such assets be returned to the trust fund and liquidated. All liability for payment thereof shall thereupon terminate; provided, however, in the event the identity or location of the Participant or beneficiary is determined subsequently,

29

the value of the assets at the Date of Valuation shall be paid from the Plan to such person in a single sum. Any assets so liquidated shall be (1) paid to the Participant or beneficiary when the identity or location is determined, or (2) applied to reduce reasonable expenses of administering the Plan.

## 6.05  Form of Distribution

**(a)**  Upon withdrawal or settlement pursuant to Section 6.03 or subsections (a) and (b) of Section 6.04, a Participant may elect to receive any full shares equivalent to the Current Market Value of their assets invested in any of the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund; provided, however, that prior to or coincident with the Effective Date of Withdrawal or Effective Date of Termination, the Participant may elect to receive cash-in-lieu of shares equivalent to the value of their assets invested in the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund based on the Current Market Value of such stock on the Date of Valuation. All fractional units of the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund worth less than one share of stock and all units of the Promark Funds, Socially Oriented Funds, and Mutual Funds will be paid out in cash.

**(b)**  Upon settlement pursuant to subsection (c) of Section 6.04, a Participant shall receive cash-in-lieu of shares equivalent to the value of their assets liquidated in the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund based on the Current Market Value of such stock funds on the Date of Valuation.

**(c)  (1)**  In the event of the death of a Participant

30

and upon receipt of all information necessary to determine the beneficiary or beneficiaries, a settlement of all assets in the deceased Participant's account shall be made to the beneficiary or beneficiaries designated pursuant to Section 8.02. The beneficiary or beneficiaries may elect to receive cash-in-lieu of shares equivalent to the value of the assets invested in the GM Common Stock Funds, EDS Common Stock Fund, Delphi Common Stock Fund, or the Raytheon Common Stock Fund in the deceased Participant's Account, based on the Current Market Value of such stock funds on the Date of Valuation. The Date of Valuation will be the Effective Date of Withdrawal. For purposes of making a settlement distribution to the beneficiary or beneficiaries, the Date of Valuation and the Effective Date of Withdrawal means the date on which the Administrator, or its delegate, determines the appropriate beneficiary or beneficiaries and is in receipt of all necessary information and directions to process the settlement.

(2) Notwithstanding the provision of the immediately preceding paragraph, (a) if a Participant's beneficiary is the Participant's surviving spouse, if the Participant has elected a distribution schedule under Section 6.04 (a) which had commenced by the Participant's date of death, the Participant's account shall continue to be paid to the surviving spouse pursuant to such schedule or, at the spouse's election at any time, in a lump sum, and (b) if distribution of the Participant's account has not commenced as of the Participant's date of death, the surviving spouse shall, for purposes of the distribution requirements and options under the Plan, be deemed a participant; except that the surviving spouse shall be deemed to attain age 70-1/2 on the date the Participant would have attained such age.

31

Additionally, in no event shall the surviving spouse be able to make contributions to the deceased Participant's Account.

## 6.06  Loans

(a)  Subject to such rules as the Administrator may prescribe, a Participant, a former Employee, and a surviving spouse, may borrow from assets in such Participant's Account one time each calendar year, for any reason, an amount (when added to the outstanding balance of all other Plan loans) not more than the lesser of:

(1)  $50,000 less the highest aggregate outstanding loan balance over the 12-month period preceding the Participant's application for loan; or

(2)  one-half of the Current Market Value of all assets in the Participant's Account.

The maximum amount available for a loan, to an active Participant, will be reduced by an amount equal to the outstanding principal and interest of any loan that has been defaulted.

For purposes of the above limitation, all loans from all plans maintained by the Corporation [or its subsidiaries in accordance with Section 414(b), (c), or (m) of the Code] shall be aggregated.

(b)  Loans shall be granted in whole dollar amounts with one thousand dollars ($1,000) established as the minimum amount of any loan.

(c)  Loans shall be granted for a minimum period of 12 months, with additional increments of 12 months as the Participant may elect, to a maximum of five years (ten years in the event the loan is for the purchase or construction of the Participant's principal residence), provided a Participant may not elect a term which will result in repayments of less than $10 per pay period.

**(d)** Loans shall bear a rate of interest equal to the Prime Rate prevailing as of the last Business Day of the calendar quarter immediately preceding the date the Participant gives appropriate direction for a loan to the party designated by the Administrator.

The interest rate shall remain the same throughout the term of the loan.

**(e)** For purposes of this Section 6.06, the Current Market Value of a Participant's assets shall be determined on the Effective Date of Loan.

**(f)** Each loan shall be evidenced by a written, or online acknowledged, Participant Loan Agreement that specifies:

    **(1)** the amount of the loan;

    **(2)** the term of the loan; and

    **(3)** the repayment schedule, showing payments to be made in a level amount which will fully amortize the loan over its duration.

By endorsing and either cashing or depositing the check representing the loan, a Participant shall acknowledge receipt of the Participant Loan Agreement and agree to the terms and conditions contained therein.

**(g)** Cash equal to the value of any loan granted shall be obtained by liquidating assets in the Participant's Account from investment options in which the Participant has assets, as the Participant may elect.

**(h)** Repayment of a loan shall be through weekly payroll deductions, except that if the Participant is not an active Employee, such repayments shall be made through monthly installment payments. Payments of principal and interest shall be applied to reduce the outstanding balance of a loan. Loan repayment amounts shall be allocated to the Participant's Account in the

33

Art. VI, 6.06(h)

same investment option(s) as elected by the Participant pursuant to subsection (a) of Section 6.01. A Participant shall be entitled to prepay the total outstanding loan balance or make partial prepayment at any time without penalty.

(i)   A Participant with an outstanding loan who is placed on layoff shall be entitled to:

(1)   make installment payments equivalent in value to the payments deducted previously from the Participant's paycheck; or

(2)   suspend loan payments for a period of up to 12 months while on layoff, provided such period does not extend beyond the maximum loan term,

(j)   A Participant with an outstanding loan who is placed on a disability leave of absence must make installment payments substantially equal to the payments deducted previously from the Participant's paycheck.

(k)   No earnings shall accrue to the Participant's Account with respect to the outstanding balance of any loan.

(l)   In the event an active Participant fails to make a required loan payment and such failure continues beyond the last day of the calendar quarter following the calendar quarter in which the required payment was due, then the Participant's loan will be defaulted and such Participant shall be irrevocably deemed to have received a distribution of assets in an amount equal to the remaining outstanding principal amount of and accrued interest on the loan, calculated to the date of such deemed distribution. An active Participant will not be relieved of the liability to repay a loan that is classified as a deemed distribution.

(m)   In the event a former Employee, surviving

34

spouse, or a terminated Participant (including termination due to death or retirement) fails to make a required loan payment and such failure continues beyond the last day of the calendar quarter following the calendar quarter in which the required payment was due, then the former Employee, surviving spouse, or terminated Participant shall be irrevocably deemed to have received a distribution of assets in an amount equal to the remaining outstanding principal amount of and accrued interest on the loan, calculated to the date of such deemed distribution. A former Employee, surviving spouse, or terminated Participant will be relieved of the liability to repay a loan once such loan is classified as a deemed distribution.

(**n**)  A Participant (or beneficiary) who, prior to such Participant's repayment of the total principal amount of and accrued interest on a loan, requests or receives a settlement of assets, shall be deemed to have elected a withdrawal, pursuant to Section 6.03, equal to the principal amount of and accrued interest on the loan as of the Effective Date of Withdrawal.

(**o**)  Any appropriate direction given to borrow assets shall be irrevocable, normally as of 4:00 p.m. Eastern Time, on the Business Day such election is received by the party designated by the Administrator.

(**p**)  A Participant may have no more than five loans outstanding at any one time.

# ARTICLE VII

# TRUST FUND

## 7.01  Contributions to the Trustee

**(a)**  All Deferred and After-Tax Savings under this Plan will be paid to the Trustee who shall invest all such amounts and earnings thereon.

**(b)**  Once the Deferred and After-Tax Savings are contributed to the Trustee by the Corporation, the Corporation shall be relieved of any further liability except as otherwise may be provided by The Employee Retirement Income Security Act of 1974.

## 7.02  Investment Options

The Trustee is to invest in the following:

**(a)**  Delphi Common Stock Funds

**(i)**    The Participants' contributions which are to be invested in the Delphi Common Stock Fund and dividends received by the Trustee shall be deposited in the Delphi Common Stock Funds no later than the 10th day of the month following the month such contributions or dividends are received by the Trustee and shall be invested by an investment manager, or managers, appointed by the Named Fiduciary, or its delegate, under a management agreement which specifies the terms and conditions of such Funds.

**(ii)**    Any administrative expenses incurred, including brokerage commissions or transfer taxes, as a result of offering the Delphi Common Stock Fund, shall be paid pursuant to Section 10.03.

**(iii)**  Shares of common stocks held in the Delphi Common Stock Fund acquired by the Trustee under the terms of this Plan shall be registered in the name of the Trustee, or its nominee.  To the extent that it is consistent with ERISA and the Code, the Trustee shall

vote and/or tender shares (including fractions), equivalent to the Current Market Value of the assets invested in the Delphi Common Stock Funds credited to each Participant, as instructed by the Participant but shall not vote shares for which such instructions are not received.

**(iv)** If the Trustee has not received direction from Participants which can be followed in accordance with ERISA and the Code, the Trustee shall, to the extent that it is consistent with ERISA and the Code, in its discretion, exercise or sell for the benefit of Participants any rights received from Delphi Corporation for the purchase of any additional shares of stock or other securities which Delphi may offer to its stockholders.

**(v)** In the event that outstanding shares of the Delphi Common Stocks shall be changed in number or class by reason of split-ups, combinations, mergers, consolidations, or recapitalizations, or by reason of stock dividends, the number and class of shares equivalent to the Current Market Value of the assets invested in the Delphi Common Stocks which thereafter may be purchased under the Plan, both in the aggregate and as to any individual, and the number and class of shares equivalent to the Current Market Value of the assets invested in the Delphi Common Stocks then in the Account of any Participant shall be adjusted so as to reflect such change.

**(b)** Mutual Funds

The participants' contributions invested in the Mutual Funds shall be invested by the Mutual Fund company appointed by the Named Fiduciary, or its delegate, pursuant to the applicable Mutual Fund Prospectus which specifies the terms and conditions of such Funds.

(c)  Promark Funds

The Participants' contributions invested in the Promark Funds shall be invested by an investment manager or managers appointed by the Named Fiduciary, or its delegate, in a Fund with specified terms and conditions.

(d)  Socially Oriented Funds

The participants' contributions invested in the Socially Oriented Funds shall be invested by a mutual fund company or companies appointed by the Named Fiduciary, or its delegate, pursuant to the applicable Fund Prospectus which specifies the terms and conditions of such Funds.

## 7.03  EDS Common Stock ($0.01 Par Value)

(a)  The Trustee may hold in Participants' Accounts any EDS common stock distributed or to be distributed as a stock dividend.  Any cash dividends received by the Trustee on EDS common stock shall be invested in the Promark Income Fund.

(b)  A Participant may elect to transfer assets held in the EDS Common Stock Fund to any of the investment options specified in Section 7.02, subject to the provisions of Section 6.01(d).

(c)  A Participant may elect in any withdrawal or settlement to receive cash-in-lieu of shares equivalent to the value of their assets invested in the EDS Common Stock Fund to which such withdrawal or settlement applies, based on the Current Market Value of such stock fund on the Date of Valuation for the withdrawal or settlement.

## 7.04  Raytheon Company Common Stock

(a)  The Trustee may hold in Participants' Accounts any Raytheon common stock distributed or to

38

be distributed as a stock dividend. Any cash dividend received by the Trustee on Raytheon common stock shall be invested in the <u>Promark</u> Income Fund.

(b)    A participant may elect to transfer assets held in the Raytheon Common Stock Fund to any of the investment options specified in Section 7.02, subject to the provisions of Section 6.01(d).

(c)    A Participant may elect in any withdrawal or settlement to receive cash-in-lieu of shares equivalent to the value of their assets invested in the Raytheon Common Stock Fund to which such withdrawal or settlement applies, based on the Current Market Value of such stock fund on the Date of Valuation for the withdrawal or settlement.

## 7.05  GM Common Stocks

(a)    The Trustee may hold in Participants' Accounts any GM common stocks. Any cash dividends received by the Trustee on GM common stocks shall be invested in the <u>Promark</u> Income Fund.

(b)    A Participant may elect to transfer assets held in the GM Common Stock funds to any of the investment options specified in Section 7.02, subject to the provisions of Section 6.01(d).

(c)    A Participant may elect in any withdrawal or settlement to receive cash-in-lieu of shares equivalent to the value of their assets invested in the GM Common Stock Funds to which such withdrawal or settlement applies, based on the Current Market Value of such stock funds on the Date of Valuation for the withdrawal or settlement.

# ARTICLE VIII

# OTHER PROVISIONS

## 8.01  Non-Assignability

Except as otherwise may be provided by Section 6.06, no right or interest of any Participant under this Plan or in the Participant's Account shall be assignable or transferable, in whole or in part, either directly or by operation of law or otherwise, including, without limitation, by execution, levy, garnishment, attachment, pledge, bankruptcy, or in any other manner, except (1) in accord with provisions of a qualified domestic relations order as defined in IRC Section 414(p), (2) a Participant's voluntary assignment of an amount not in excess of 10% of a distribution from the Plan, and (3) further excluding devolution by death or mental incompetency; no attempted assignment or transfer thereof shall be effective; and no right or interest of any Participant under this Plan shall be liable for, or subject to, any obligation or liability of such Participant.

## 8.02  Designation of Beneficiaries in Event of Death

(a)  A Participant may file with the party designated by the Administrator a written designation of a beneficiary or beneficiaries with respect to all or part of the assets in the Account of the Participant.

For a married Participant who dies, the entire balance of the Account shall be paid to the surviving spouse unless the written designation of beneficiary designating a person(s) other than the spouse with respect to part or all of the assets in the Account of the Participant includes the written consent of the spouse, witnessed by the Plan representative or a notary public. The written designation of beneficiary filed with the party designated by the Administrator may be changed or revoked at any time by

the action of the Participant and, if necessary, the spouse. No designation or change of beneficiary will be effective until it is determined to be in order by the party designated by the Administrator, but when so determined it will be effective retroactively to the date of the instrument making the designation or change.

**(b)**    In the event an unmarried Participant does not file a written designation of beneficiaries, such a Participant shall be deemed to have designated as beneficiary or beneficiaries under this Plan the person or persons who receive the Participant's life insurance proceeds under the Corporation's Life and Disability Benefits Program for Hourly Employees, unless such Participant shall have assigned such life insurance, in which case the assets in the account shall be paid to the assignee.

**(c)**    A beneficiary or beneficiaries will receive, subject to the provisions of Section 6.05, in the event of the Participant's death, the assets in the Participant's Account in accordance with the applicable designation. If the Corporation shall be in doubt as to the right of any beneficiary to receive any such assets, the Corporation may deliver such assets to the estate of the Participant, in which case the Corporation shall not have any further liability to anyone.

## 8.03  Merger or Consolidation

In the event of any merger or consolidation with, or transfer of assets or liabilities to, any other plan or program, each Participant in the Plan would, if the Plan then terminated, receive the assets in each such Participant's Account immediately after the merger, consolidation, or transfer which are at least equal in value to the assets each such Participant would have been entitled to receive immediately before the merger, consolidation, or transfer, if the Plan had then terminated.

41

### 8.04  Limitations on Contributions and Benefits

(a)    General Provisions

For purposes of this Section:

(i)    The term "Limitation Year" shall mean the Plan Year.

(ii)    All defined benefit plans or programs of the Corporation will be treated as one defined benefit plan or program, and all defined contribution plans or programs will be treated as one defined contribution plan or program.

(iii)    No contribution to this Plan may exceed the limits provided under Section 404 of the Code for current deductibility for income tax purposes.

(iv)    Contributions made to the trust by the Corporation pursuant to subsection (c) of Section 4.01 shall be allocated to a Participant's Account within the current Limitation Year.

(v)    For purposes of this Section, the term "Compensation" shall mean compensation as defined under Section 2.07 of the Plan.

(vi)    The term "Annual Additions" shall mean the sum, for any Limitation Year, of Employee contributions, Corporation contributions, and forfeitures allocated to an Employee's account under all defined contribution plans.

(b)    In no event shall contributions or benefits under this Plan exceed the limits of Section 415 of the Code and the regulations thereunder.

(c)    For any Employee who participates under this Plan and any defined contribution plan or defined benefit plan of the Corporation, the sum of such Employee's Annual Additions shall not exceed the lesser of $40,000 (or such other amount prescribed by the Secretary of the Treasury applicable to the Limitation

42

Year) or 100% of such Employee's Compensation for any Limitation Year.

(d)    Any amounts elected to be contributed by an Employee pursuant to Section 5.01 of Article V which cannot be contributed as a result of the application of subsection (c) of this Article VIII shall be returned to the Employee and, if necessary, any amounts elected to be contributed by an Employee pursuant to subsections (a) or (c) of Section 4.01 of Article IV which cannot be contributed as a result of the application of subsection (c) of this Article VIII shall be returned to the Employee.

## 8.05  Deferred Savings Limitation

A Participant's annual Deferred Savings under this Plan and all similar contributions to other plans maintained by the Corporation may not exceed the amount permitted under Federal Law (as adjusted by the Secretary of the Treasury). The following table represents the annual limits on Deferred Saving:

| Annual Deferred Savings Limits | | | |
| --- | --- | --- | --- |
| Year | Under Age 50 | Catch-Up* Contributions | Age 50 or Over (Includes "Catch-Up") |
| 2003 | $12,000 | $2,000 | $14,000 |
| 2004 | $13,000 | $3,000 | $16,000 |
| 2005 | $14,000 | $4,000 | $18,000 |
| 2006 | $15,000 | $5,000 | $20,000 |

*    Catch-up contributions may be made for participants age 50 or over only if such participants are restricted by other limits described in this Supplemental Agreement.

In the event a Participant identifies, in writing, before March 2 following the end of the Plan Year an amount of Deferred Savings as exceeding this limitation, as applied to this Plan and all other plans in which such Employee participated, such amounts will be refunded to the Participant no later than April 15 following the

receipt of such written notice from the Participant. In the event the Administrator identifies an amount in excess of the limitation, the Participant will be deemed to have notified the Administrator, and such amount will be refunded to the Participant.

## 8.06   Provisions to Comply With Section 416 of the Code

(a)    In any Plan Year in which the Plan is considered a "Top-Heavy Plan," as defined in Section 416 of the Code, the requirements of Section 416 of the Code, and the regulations thereunder, are applicable and must be satisfied.

(b)    The definition of a "Top-Heavy Plan" set forth in Section 416(g) of the Code and the additional definitions set forth in Section 416(i) of the Code are herein incorporated by reference.

(c)    If the Plan is determined to be a "Top-Heavy Plan" for a Plan Year, the Corporation shall make contributions equal to three percent of Compensation on behalf of each Participant who is not a "key employee" under Section 416 of the Code.

## 8.07   Investment Decisions

Any Participant or beneficiary, who makes an investment election permitted under the Plan or otherwise exercises control permitted under the Plan over the assets in the account, shall be deemed the named fiduciary under ERISA responsible for such decisions to the extent that such designation is permissible under applicable law and that the investment election or other exercise of control is not protected by Section 404(c) of ERISA, as amended.

44

## 8.08  Special Provisions Regarding Veterans

(a)    In the event an Employee is rehired following qualified military service, as defined in the Uniformed Services Employment and Re-Employment Rights Act, that was effective on or after December 15, 1994, such Employee will be entitled to have the Corporation make contributions to the Plan from such Employee's current earnings that shall be attributable to the period of time contributions were not otherwise allowable due to military service.  Such contributions shall be in addition to contributions otherwise permitted under Sections 4.01 and 5.01, and shall be made as permitted under this Section and Section 414(u) of the Code.

(b)    Additional contributions permitted under this Section shall be based on the amount of Eligible Weekly Earnings and Profit Sharing Amount that the Employee would have received from the Corporation but for the military service, and such contributions shall be subject to the Plan's terms and conditions in effect during the applicable period of military service.    Such contributions shall be made during the period that begins upon re-employment and extends for the lesser of five years or the Employee's period of military service multiplied by three.

(c)    Additional contributions made under this Section shall not be taken into account in the current year, for purposes of calculating and applying any limitation or requirement identified in Section 414(u)(1) of the Code.  However, in no event may such contributions, when added to actual contributions previously made, exceed the amount of contributions allowable under the applicable limits in effect during the year of military service if the Employee had continued to be employed by the Corporation.

**(d)**    An Employee covered by this Section <u>who</u> has an outstanding loan(s) during the period of qualified military service covered by this Section, shall be <u>entitled to</u> suspend <u>loan payments</u> during such period, and the time for repayment of such loan(s) shall be extended <u>to coincide with suspension</u> for a period of time equal to the period of qualified military service.

## 8.09  Prohibition on Reversion

The Plan shall be maintained and administered for the exclusive purpose of providing benefits to Participants and beneficiaries and defraying reasonable expenses. Except as provided herein, Plan funds may not revert to the Corporation. All contributions to the Plan are conditioned on their deductibility under Section 404 of the Code at the time made. All or any part of a contribution for which a deduction is not allowed may be returned to the Corporation within one year of the date of disallowance. Further, in the event contributions are made due to a mistake or an administration error, such contributions may be returned to the Corporation within one year of the date of discovery of such mistake or error.

## ARTICLE IX

## EMPLOYEE STOCK OWNERSHIP PLAN PROVISIONS

**9.01**    The portion of the Plan that consists of Deferred Assets and After-Tax Assets that are invested in the Delphi Common Stock Funds, including any dividends, earnings or gains thereon (the "ESOP portion" or "ESOP"), is designed to invest primarily in qualifying employer securities as defined by Section 4975(e)(8) of the Code, and is an employee stock ownership plan under Section 4975(e)(7) of the Code. This Article IX applies to this ESOP portion of the Plan.

## 9.02  ESOP Pre-Tax Savings Limitation

(a)    The ESOP Deferred Savings percentage by the eligible Highly Compensated Employees under the Plan for a Plan Year must meet one of the following tests using the current year testing method:

(i)    The actual ESOP Deferred Savings percentage of the eligible Highly Compensated Employees is not more than 1.25 times the actual ESOP Deferred Savings percentage of all other eligible Employees; or

(ii)    The actual ESOP Deferred Savings percentage of the eligible Highly Compensated Employees is not more than two percentage points more than the actual ESOP Deferred Savings percentage for all other eligible Employees and is not more than 2.0 times (or, such lesser amount as the Secretary of the Treasury shall prescribe) the actual ESOP Deferred Savings percentage of all other eligible Employees.

(b)    The actual ESOP Deferred Savings percentage for the eligible Highly Compensated Employees and all other eligible Employees for a Plan Year is the average of the ratios (calculated separately for each eligible Employee) of the:

(i)    Amount of ESOP Deferred Savings actually paid over to the Plan trust not later than two and one-half months after the Plan Year on behalf of such eligible Employee for the Plan Year to:

(ii)    The eligible Employee's Compensation for such Plan Year.

(c)    The amount of ESOP Deferred Savings for a Highly Compensated Employee that exceeds the percentage limitations of subsection (a) of this Section 9.02 shall be distributed to the Participant no later than two and one-half months following the end of the Plan

47

Year. The amount of any such distribution shall be determined under a reasonable method selected by the Administrator under applicable tax regulations and will include any earnings attributable to the excess ESOP Deferred Savings.

## 9.03  ESOP After-Tax Contribution Limitation

(a)    The ESOP After-Tax Contribution percentage by the eligible Highly Compensated Employees under the Plan for a Plan Year must meet one of the following tests using the current year testing method:

(i)    The actual ESOP After-Tax Savings percentage of the eligible Highly Compensated Employees is not more than 1.25 times the actual ESOP After-Tax Savings percentage of all other eligible Employees; or

(ii)    The actual ESOP After-Tax Savings percentage of the eligible Highly Compensated Employees is not more than two percentage points more than the actual ESOP After-Tax Savings percentage for all other eligible Employees and is not more than 2.0 times (or, such lesser amount as the Secretary of the Treasury shall prescribe) the actual ESOP After-Tax Savings percentage of all other eligible Employees.

(b) The actual ESOP After-Tax Savings percentage for the eligible Highly Compensated Employees and all other eligible Employees for a Plan Year is the average of the ratios (calculated separately for each eligible Employee) of the:

(i)    Amount of ESOP After-Tax Savings actually paid over to the Plan trust on behalf of such eligible Employee for the Plan Year to:

(ii)    The eligible Employee's Compensation for such Plan Year.

48

(c)    The amount of ESOP After-Tax Savings for a Highly Compensated Employee that exceeds the percentage limitations of subsection (a) of this Section 9.03 shall be distributed to the Participant no later than two and one-half months following the end of the Plan Year. The amount of any such distribution shall be determined under a reasonable method selected by the Administrator under applicable tax regulations and will include any earnings attributable to the excess ESOP After-Tax Savings.

## 9.04    ESOP Special Rules

(i)    In the event that this ESOP portion of the Plan satisfies the requirements of Sections 401(k), 401(m), 401(a)(4), or 410(b) of the Code only if aggregated with one or more other plans, or if one or more other plans satisfy the requirements of such sections of the Code only if aggregated with this Plan, then this Section 9.04 shall be applied by determining the actual ESOP Deferred Savings percentage of eligible Employees as if all such plans were a single plan.

(ii)    The actual ESOP Deferred Savings percentage or ESOP After-Tax Savings percentage for any Participant who is a Highly Compensated Employee for the Plan Year, and who is eligible to participate in two or more arrangements described in Sections 401(k) and 401(m) of the Code that are maintained by the Corporation, shall be determined by treating all such plans as a single plan. Notwithstanding the foregoing, certain plans shall be treated as separate if mandatorily disaggregated under regulations under Sections 401(k) and 4.01(m) of the Code.

(iii)    In the event the limits of Sections 9.02 or 9.03 are exceeded, then the actual ESOP Deferred Savings percentage or the actual ESOP After-Tax Savings percentage of those Highly Compensated Employees will be reduced using the same correction

49

procedure set forth in Sections 4.04(d)(iii) and 5.04 as needed so that the limits are not exceeded. The amount by which each Highly Compensated Employee's ESOP Deferred Savings or ESOP After-Tax Savings is reduced shall be treated as an Excess Contribution or Excess Aggregate Contribution, respectively. The actual ESOP Deferred Savings percentage or the actual ESOP After-Tax Savings percentage of the Highly Compensated Employees is determined after any corrections are made. Excess Contributions and Excess Aggregate Contributions shall be treated as Annual Additions.

### 9.05  Distribution of ESOP Dividends

A Participant may elect to receive cash dividends paid on shares of Delphi Common Stock corresponding to the units in the Delphi Common Stock Fund in a Participant's Account, rather than being reinvested in the respective funds, provided the Participant gives appropriate and timely notice of such election to the party designated by the Administrator. Dividends paid directly to Participants pursuant to this Section shall be paid not later than 90 days after the end of the Plan Year.

## ARTICLE X

## ADMINISTRATION

### 10.01 Administrative Responsibility

The Executive Committee of the Corporation's Board of Directors shall be the Named Fiduciary with respect to the Plan except as set forth below and in Section 8.07. The Executive Committee may delegate authority to carry out such of its responsibilities as it deems proper to the extent permitted by The Employee Retirement Income Security Act of 1974. Except as set forth in Section 8.07, General Motors Investment Management Corporation (GMIMCo) is the Named Fiduciary of this Plan for purposes of investment of Plan assets.

50

GMIMCo may delegate authority to carry out such of its responsibilities as it deems proper to the extent permitted by The Employee Retirement Income Security Act of 1974.

Pursuant to authority delegated to it by the Named Fiduciary, Delphi, or its delegate, shall have responsibility for the day-to-day operation, management, and administration of the Plan, including full power and authority to construe, interpret, and administer this Plan and to pass upon and decide cases presenting unusual circumstances in conformity with the objectives of the Plan and under such rules as Delphi or its delegate, may establish.

Decisions of Delphi, or its delegate, shall be final and binding upon the Corporation and its employees.

## 10.02 Records

The Administrator shall provide for the maintenance of suitable records to reflect the separate Account balance of each Participant's contributions and any earnings thereon.

The Administrator shall make, or cause to be made, valuations of the trust fund or market value at least annually.

## 10.03 Administrative Expenses

Administrative expenses of the Plan shall be paid from assets liquidated pursuant to subsection (c) of Section 6.04. To the extent such expenses are not thereby paid in full, such expenses will be paid by the Corporation.

With regard to the fees for the Socially Oriented Funds and the Promark Funds (excluding the Fund currently known as the Promark Large Cap Index Fund), such fees for investment, Trustee, and management shall be paid by the Funds.

51

## 10.04 Participant Statements

Each Participant will be furnished a statement <u>no less than</u> four times per year showing the Current Market Value of the assets, including earnings, credited to the Participant's Account.

## 10.05 Incapacity

If the Administrator deems any person incapable of receiving any distribution to which such person is entitled under this Plan because such person has not yet reached the age of majority, or because of illness, infirmity, mental incompetency or other incapacity, it may make payment, for the benefit or the account of such incapacitated person, to any person selected by the Administrator, whose receipt thereof shall be a complete settlement thereof.  Such payments shall, to the extent thereof, discharge all liability of the Corporation and each other fiduciary with respect to this Plan.

## 10.06 Notice of Claim Denial

The Administrator will provide adequate notice, in writing, to any Participant or beneficiary whose claim for benefits under the Plan has been denied, setting forth the specific reasons for such denial.

The Participant or beneficiary will be given an opportunity for a full and fair review by the Named Fiduciary, or its delegate, of the decision denying the claim.  The Participant or beneficiary will be given 60 days from the date of the notice denying such claim within which to request such review.

## 10.07 Confidential Information

The Administrator, or its delegate, shall be responsible for ensuring that sufficient procedures are in place and followed to safeguard the confidentiality (except to the extent necessary to comply with federal laws or state

laws not pre-empted by ERISA) of information relating to the purchase, holding, and sale of securities, and the exercise of voting, tender, and similar rights with respect to such securities by Participants and beneficiaries. If deemed necessary by the Administrator, due to potential for undue employer influence with regard to exercise of shareholder rights, an independent party will be appointed by the Administrator to carry out instructions of Participants or beneficiaries relating to such rights.

# ARTICLE XI

# AMENDMENT, MODIFICATION, SUSPENSION, OR TERMINATION

## 11.01 Amendment, Modification, Suspension, or Termination

The Corporation reserves the right, by and through its Board of Directors, or its delegate, to amend, modify, suspend, or terminate the Plan, but any such action shall have no retroactive effect which would prejudice the interests of the Participants.

## 11.02 Distribution Upon Plan Termination

In the event of termination or partial termination of the Plan without establishment of a successor plan, the Administrator may direct the Trustee to:

(a)    continue to administer the trust fund and pay Account balances in accordance with Section 6.04 to Participants affected by the termination of the Plan upon their termination of employment, or to beneficiaries upon such a Participant's death, until the trust fund has been liquidated; or

(b)    distribute as soon as administratively feasible the assets remaining in the trust fund in a lump sum to

Art. X, 11.02(b)

Participants and beneficiaries in proportion to their respective Account balances.

(c)   In the event of termination, or partial termination, or a complete discontinuance of contributions under the Plan, the account balance of each affected Participant will be non-forfeitable.

# DELPHI CORPORATION

November 16, 2003

Mr. James D. Clark
Chairman, IUE-CWA
Automotive Conference Board
IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC
2360 West Dorothy Lane, Suite 201
Dayton, Ohio 45439

Dear Mr. Clark:

During these negotiations, the parties renewed their commitment to provide ongoing training programs for Company and Union Benefit Representatives so as to improve the quality of service provided to hourly employees. The parties also recognized the importance of communications programs aimed at educating employees about their benefits.

It was agreed that such training and education programs will be developed jointly, and the cost of developing and implementing such programs properly will be paid from the National Joint Skill Development and Training Fund as approved by the National Committee. These include, but are not limited to, the following:

- The annual joint Delphi-IUE-CWA Benefits Training Conference.

- Continuing education program for Union Benefit Representatives will be provided by the parties. Training sessions will be scheduled for newly appointed Union Benefit Representatives and Alternates as agreed to by the parties. The sessions will concentrate on areas such as eligibility to receive benefits, description and interpretation of benefit plan provisions, and calculation of benefits.

55

- Conduct periodic on-site plant surveys and audits to evaluate training and education needs to improve employee service.

- Ad hoc training meetings on legal developments or other special needs.

Included also are any travel, lodging, and living expenses incurred by Company and Union representatives in relation to the above. In addition, the Fund will pay for lost time (eight hours per day base rate plus COLA) of Union Benefit Representatives attending such programs away from their locations. The Company will pay for the time (eight hours per day base rate plus COLA) of alternate Union Benefit Representatives who replace those attending such programs.

Very truly yours,

DELPHI CORPORATION


Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC

By: James D. Clark

# DELPHI CORPORATION

<u>November 16, 2003</u>

Mr. <u>James D. Clark</u>
Chairman, IUE-<u>CWA</u>
<u>Automotive</u> Conference Board
<u>IUE-CWA, the Industrial Division</u>
<u>of the Communications Workers</u>
<u>of America, AFL-CIO, CLC</u>
<u>2360 West Dorothy Lane, Suite 201</u>
<u>Dayton</u>, Ohio <u>45439</u>

Dear Mr. <u>Clark</u>:

During these negotiations, the parties recognized the
need to move ahead with the development of
technological applications to improve the quality of
service provided to hourly employees.

1.  The parties recognized the need to provide the
    necessary tools to Local Union Benefit
    Representatives so that they may improve the
    service they are providing to hourly employees.
    Local Union Benefit Representatives require
    basic information that can be accessed quickly in
    order to confidently and accurately answer many
    of the questions they receive.  Therefore, the
    parties have designed <u>two systems</u>, the Benefits
    Data Access <u>and the Benefits WorkStation Access</u>
    <u>systems</u>, whereby Local Union Benefit
    Representatives have access to certain data
    elements from several benefit data systems.
    The<u>se</u> <u>systems</u> provide inquiry only access to
    Local Union Benefit Representatives who
    complete a computer training program.  Access is
    limited to information for IUE-<u>CWA</u> hourly
    employees at their particular location.

2.  The parties jointly will develop and implement a
    new benefit documentation feature to the
    existing <u>systems</u> that will be available to Local
    Union Benefit Representatives.  The system<u>s</u> will
    include benefit plan booklets, administrative
    manuals (where applicable), relevant contract

provisions and appropriate process descriptions. Upon approval by the National Committee, the cost of development, hardware and software requirements, conversion of written documentation, and installation and training, will be charged to the National Joint Skill Development and Training Fund. It is contemplated the benefit documentation feature will be implemented during the term of the 2003 Agreement.

3. The parties further agreed to provide hourly employees with web technology in addition to the continued use of a Voice Response System for inquiry and transactions in the Personal Savings Plan.

4. The parties agree to enhance the Benefit Data Access System to provide the Pension Plan survivor coverage election/rejection and the cost of such survivor option. The cost of development and implementation will be charged to the National Joint Skill Development and Training Fund.

In conclusion, during the term of the new Agreement, the parties pledge to carefully consider every opportunity to improve the quality and efficiency in benefits delivery.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC

By: James D. Clark

# DELPHI CORPORATION

November 16, 2003

Mr. James D. Clark
Chairman, IUE-CWA
Automotive Conference Board
IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC
2360 West Dorothy Lane, Suite 201
Dayton, Ohio 45439

Dear Mr. Clark:

During these negotiations, Delphi agreed to provide for
a Roth IRA in the PSP beginning January 1, 2006, that
would be consistent with legal and regulatory
guidelines.

Very truly yours,

DELPHI CORPORATION


Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC

By: James D. Clark

59

Dividend and Cash Investment Plan

# DELPHI CORPORATION

November 16, 2003

Mr. James D. Clark
Chairman, IUE-CWA
Automotive Conference Board
IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC
2360 West Dorothy Lane, Suite 201
Dayton, Ohio 45439

Dear Mr. Clark:

During these negotiations, the parties discussed the ability of employees and retirees to purchase additional Delphi Common Stock with no load outside of the Personal Savings Plan.

The Corporation informed the Union of the availability of the Dividend Reinvestment and Stock Purchase Program and the Union agreed that this Plan satisfactorily addressed their request.

Very truly yours,

DELPHI CORPORATION


Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC

By: James D. Clark

60

# DELPHI CORPORATION

November 16, 2003

Mr. James D. Clark
Chairman, IUE-CWA
Automotive Conference Board
IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC
2360 West Dorothy Lane, Suite 201
Dayton, Ohio 45439

Dear Mr. Clark:

During these negotiations, the parties discussed the
loan repayment process for those Personal Savings
Plan (PSP) Participants who are not actively at work.

The parties agreed that those PSP Participants who are
not actively at work would receive information about
establishing an Electronic Funds Transfer (EFT) with
their loan coupon book. Participants will have the
option of repaying their loans through the convenience
of EFT or via mail by using their loan coupon book.

Very truly yours,

DELPHI CORPORATION


Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC

By: James D. Clark

61

Suggestion Award Payments

# DELPHI CORPORATION

November 16, 2003

Mr. James D. Clark
Chairman, IUE-CWA
Automotive Conference Board
IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC
2360 West Dorothy Lane, Suite 201
Dayton, Ohio 45439

Dear Mr. Clark:

During these negotiations, the parties discussed the
process for Employees to defer Suggestion Award
Payments into their Personal Savings Plan (PSP)
account. It was noted that Employees currently have
the ability to defer their Suggestion Award Payments,
up to the maximum Plan contribution rate.

The Union requested that Employees be permitted to
defer up to 100% of their Suggestion Award Payments
into the PSP. The parties discussed the payment
process for Suggestion Award Payments with the
expectation of implementing a lump sum deferral
feature of 100% of such payment into the PSP, up to the
annual IRS dollar limits.

The implementation date of the PSP deferral feature on
Suggestion Award Payments will commence on or
before January 1, 2005. This is due to the programming
requirements for the Payroll System as well as the

establishment of necessary financial and
administrative processes, including a separate deferral
election for an Employee's Suggestion Award.

Very truly yours,

DELPHI CORPORATION


Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC

By: James D. Clark

# DELPHI CORPORATION

November 16, 2003

Mr. James D. Clark
Chairman, IUE-CWA
Automotive Conference Board
IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC
2360 West Dorothy Lane, Suite 201
Dayton, Ohio 45439

Dear Mr. Clark:

During these negotiations, the parties discussed the Union's interest in communicating information regarding 529 College Savings Plan(s) to hourly Employees. To this end, the parties agreed that Delphi will prepare a communication brochure intended to inform hourly Employees on the advantages of establishing a 529 College Savings Plan(s).

The decision to participate in a 529 College Savings Plan(s) will be on a voluntary basis handled directly between the employee and the plan's respective provider. It is clearly understood that neither Delphi nor the Union will have any administrative or fiduciary responsibility with regard to these 529 College Savings Plan(s).

Very truly yours,

DELPHI CORPORATION


Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC

By: James D. Clark

64

# DELPHI CORPORATION

November 16, 2003

Mr. James D. Clark
Chairman, IUE-CWA
Automotive Conference Board
IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC
2360 West Dorothy Lane, Suite 201
Dayton, Ohio 45439

Dear Mr. Clark:

During these negotiations, the parties discussed the
Corporation's willingness to continue to make
available to hourly employees during non-working time
the two Fidelity Workshops titled, the Investment
Education Workshop and the Getting Ready for
Retirement Workshop. Such workshops may be
scheduled upon the request of the local Union and
Management leadership. The parties recognize the
importance of educating employees on the Personal
Savings Plan.

Very truly yours,

DELPHI CORPORATION


Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC

By: James D. Clark

65

# DELPHI CORPORATION

November 16, 2003

Mr. James D. Clark
Chairman, IUE-CWA
Automotive Conference Board
IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC
2360 West Dorothy Lane, Suite 201
Dayton, Ohio 45439

Dear Mr. Clark:

During these negotiations, the parties discussed the
Union's interest in a more active role in understanding
the direction of the Personal Savings Plan (PSP). To this
end, the parties agreed that General Motors Asset
Management (GMAM) and Fidelity would make an
annual presentation to the Union on the PSP. The
review will include such things as:

Plan Participation
Account Status and Activity
Average Participant Account Balance
Amount of Assets in Available Investment Options
Promark Fund Performance
Fidelity Fund Performance
Fund and Plan Expenses

The parties will discuss the current array of funds, their
performance and any recommendation for changes. At

66

Annual Review of Fund Performance

the joint request of the parties, GMAM will review funds and other future directions and report its recommendations to the parties.

Very truly yours,

DELPHI CORPORATION


Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC

By: James D. Clark

# NOTES

# NOTES

# NOTES

# NOTES

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## 2003

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |   |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 |   |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |   |   |   |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 |   |   |   |   |   |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |   |   |   |   |   |   |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 |   |   |   |   |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |   |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 |   |   |   |   |   |   |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

## 2004

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 |   |   |   |   |   |   |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |   |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |   |   |   |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 |   |   |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |   |   |   |   |   |   |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 |   |   |   |   |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |   |

## 2005

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 |   |   |   |   |   |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 |   |   |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |   |   |   |   |   |   |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |   |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |   |   |   |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

## 2006

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 |   |   |   |   |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |   |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 |   |   |   |   |   |   |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |   |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 |   |   |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |   |   |   |   |   |   |

## 2007

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |  |  |  |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 |  |  |  |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 |  |  |  |  |  |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |  |  |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |  |  |  |  |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |  |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 |  |  |  |  |  |  |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |  |  |  |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |  |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |  |  |  |  |  |

## 2008

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |  |  |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 |  |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |  |  |  |  |  |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |  |  |  |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 |  |  |  |  |  |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |  |  |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |  |  |  |  |  |  |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 |  |  |  |  |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |  |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 |  |  |  |  |  |  |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |  |  |  |

