# Exhibit S

# *Supplemental Agreement*

Covering

## PROFIT SHARING PLAN

Exhibit F

to

AGREEMENT

between

DELPHI CORPORATION

and

UAW

dated

September 18, 2003

# *Supplemental Agreement*

Covering

## PROFIT SHARING PLAN

**Exhibit F**

**to**

**AGREEMENT**

**between**

**DELPHI CORPORATION**

**and**

**UAW**

**dated**

**September 18, 2003**

# TABLE OF CONTENTS

|  |  | Page No. |
|---|---|---|
| INDEX TO EXHIBITS F AND F-1 . . . . . . . . . . . . . . . | | (iv) |
| Section 1. | Establishment of Plan . . . . . . . . . . . . . . | (1) |
| Section 2. | Administration . . . . . . . . . . . . . . . . . . . | (2) |
| Section 3. | Non-Applicability of Collective Bargaining Agreement Grievance Procedure . . . . . . . . . . . . . . . . . . . . . . . | (3) |
| Section 4. | Governmental Rulings . . . . . . . . . . . . . . | (4) |
| Section 5. | Recovery of Overpayments . . . . . . . . . . | (5) |
| Section 6. | Duration of Agreement . . . . . . . . . . . . . | (5) |
| EXHIBIT F-1- PROFIT SHARING PLAN . . . . . . . . . . . | | 1 |
| **Article I** | **Establishment and Effective Date of Profit Sharing Plan** . . . . . . . . . . . . . . . | 3 |
| 1.01 | Establishment of Plan . . . . . . . . . . . . . . . | 3 |
| 1.02 | Effective Date of Amended Plan . . . . . . . . | 3 |
| **Article II** | **Definition of Terms** . . . . . . . . . . . . . . . . . | 3 |
| 2.01 | Administrator . . . . . . . . . . . . . . . . . . . . . | 3 |
| 2.02 | Associate . . . . . . . . . . . . . . . . . . . . . . . . | 3 |
| 2.03 | Compensated Hours . . . . . . . . . . . . . . . . | 4 |
| 2.04 | Consolidated Subsidiary . . . . . . . . . . . . . | 5 |
| 2.05 | Corporation . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.06 | Domestic . . . . . . . . . . . . . . . . . . . . . . . . | 5 |
| 2.07 | Employee . . . . . . . . . . . . . . . . . . . . . . . | 6 |
| 2.08 | Investment . . . . . . . . . . . . . . . . . . . . . . | 7 |
| 2.09 | Non-Consolidated Subsidiary . . . . . . . . . . | 7 |
| 2.10 | Participant . . . . . . . . . . . . . . . . . . . . . . | 8 |
| 2.11 | Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| 2.12 | Plan Year . . . . . . . . . . . . . . . . . . . . . . . | 8 |
| 2.13 | Profit Sharing Amount . . . . . . . . . . . . . . | 8 |
| 2.14 | Profits . . . . . . . . . . . . . . . . . . . . . . . . . | 8 |

(i)

# TABLE OF CONTENTS (Cont'd.)

|  |  | Page No. |
|---|---|---|
| 2.15 | Sales and Revenues | 8 |
| 2.16 | Subsidiary | 9 |
| 2.17 | Total Profit Share | 9 |
| 2.18 | U.S. Operations | 10 |
| **Article III** | **Enrollment** | 10 |
| 3.01 | Enrollment | 10 |
| **Article IV** | **Allocation and Distribution** | 10 |
| 4.01 | Allocation of the Total Profit Share to this Plan | 10 |
| 4.02 | Allocation of Profit Sharing Amount to Participants | 11 |
| 4.03 | When Profit Sharing Amounts are Allocated and Distributed | 11 |
| 4.04 | To Whom Profit Sharing Amounts are Distributed | 13 |
| 4.05 | Overpayments and Underpayments | 13 |
| 4.06 | Benefit Drafts Not Presented | 14 |
| **Article V** | **Other Provisions** | 15 |
| 5.01 | Designation of Beneficiaries in Event of Death | 15 |
| **Article VI** | **Administration** | 15 |
| 6.01 | Administrative Responsibility | 15 |
| 6.02 | Certification by Independent Certified Public Accountants | 16 |
| 6.03 | Administrative Expenses | 16 |
| 6.04 | Non-Assignability | 16 |
| 6.05 | Incapacity | 17 |
| 6.06 | Notice of Denial | 17 |

# TABLE OF CONTENTS (Cont'd.)

|  |  | Page No. |
|---|---|---|
| **Article VII** | **Amendment, Modification, Suspension, or Termination** | 18 |
| 7.01 | Amendment, Modification Suspension, or Termination | 18 |
| Letter Agreements — | Paragraph 109 Leave | 19 |
|  | — Union Reports | 20 |
|  | — FASB | 24 |
|  | — Misc. (Benefits Training and Education) | 26 |
|  | — Misc. (Improving Benefits Service Through Technology | 28 |

(iii)

**INDEX TO**

EXHIBIT F    — 2003 Supplemental Agreement Between
Delphi Corporation and the UAW
(Profit Sharing Plan)

EXHIBIT F-1 — Profit Sharing Plan

|  | Article | Section | Page |
|---|---|---|---|
| **ADMINISTRATION** | | | |
| Back Pay Awards | Ex. F | 2 | (2) |
| Certification by Certified | | | |
| Public Accountants | VI | 6.02 | 16 |
| Responsibility for | VI | 6.01 | 15 |
| Results of Review | Ex. F | 2 | (2) |
| **ADMINISTRATOR** | | | |
| Definition of | II | 2.01 | 3 |
| **ALLOCATIONS** | | | |
| Profit Sharing Amount to | | | |
| Participants | IV | 4.02 | 11 |
| Total Profit Share to this Plan | IV | 4.01 | 10 |
| To Whom Distributed | IV | 4.04 | 13 |
| When Profit Sharing Amounts are | | | |
| Allocated | IV | 4.03 | 11 |
| **AMENDMENT, MODIFICATION,** | | | |
| **SUSPENSION, OR** | | | |
| **TERMINATION** | VII | 7.01 | 18 |
| **ASSOCIATE** | | | |
| Definition of | II | 2.02 | 3 |
| **BACK PAY AWARDS** | Ex. F | 2 | (2) |
| **BENEFICIARIES** | | | |
| Designation of | V | 5.01 | 15 |
| Payment to | IV | 4.04 | 13 |
| **BENEFIT DRAFTS NOT** | | | |
| **PRESENTED** | IV | 4.06 | 14 |
| **CERTIFICATION BY** | | | |
| **INDEPENDENT CERTIFIED** | | | |
| **PUBLIC ACCOUNTANTS** | VI | 6.02 | 16 |
| **CLAIM DENIAL** | | | |
| Information to Union | Ex. F | 2 | (2) |

|  | Article | Section | Page |
|---|---|---|---|
| Notice of . . . . . . . . . . . . . . . . . | VI | 6.06 | 17 |
| Review of. . . . . . . . . . . . . . . . | VI | 6.06 | 17 |
| Time Limit for Review . . . . . . | VI | 6.06 | 17 |
| **COMPENSATED HOURS** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.03 | 4 |
| Limitations. . . . . . . . . . . . . . . | II | 2.03 | 4 |
| Local Union Leave . . . . . . . . . | Ex. F | 2 | (2) |
| Workers' Compensation. . . . . . | II | 2.03 | 4 |
| **CONSOLIDATED SUBSIDIARY** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.04 | 5 |
| **CORPORATION** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.05 | 5 |
| **DEFINITIONS** . . . . . . . . . . . . . . | II | — | 3 |
| **DISAGREEMENTS BETWEEN PARTIES**. . . . . . . . . . . . . . . . . . . . | Ex. F | 3 | (4) |
| **DISTRIBUTION OF PROFIT SHARING AMOUNTS** | | | |
| Deferral to Personal Savings Plan. . . . . . . . . . . . . . . . . . . . | IV | 4.03 | 11 |
| To Whom. . . . . . . . . . . . . . . . | IV | 4.04 | 13 |
| When Distributed. . . . . . . . . . | IV | 4.03 | 11 |
| Withholding Tax . . . . . . . . . . | IV | 4.03 | 11 |
| **DOMESTIC** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.06 | 5 |
| **DURATION OF AGREEMENT.** . | Ex. F | 6 | (5) |
| **EFFECTIVE DATE OF AMENDED PLAN** . . . . . . . . . . . . . . . . . . . . | I | 1.02 | 3 |
| **ELIGIBILITY**. . . . . . . . . . . . . . | III | 3.01 | 10 |
| **EMPLOYEE** | | | |
| Definition of . . . . . . . . . . . . . | II | 2.07 | 6 |
| **ENROLLMENT** . . . . . . . . . . . . . | III | 3.01 | 10 |
| **ESTABLISHMENT OF PLAN** | | | |
| Board of Directors' Approval . | Ex. F | 1 | (1) |
| **GOVERNMENTAL RULINGS** | | | |
| Department of Labor . . . . . . . | Ex. F | 4 | (4) |
| **GRIEVANCE PROCEDURE** | | | |
| Non-Applicability of . . . . . . . . | Ex. F | 3 | (3) |

(v)

|                                          | Article | Section | Page |
|------------------------------------------|---------|---------|------|
| IMPARTIAL PERSON . . . . . . . . .        | Ex. F   | 3       | (4)  |
| INCAPACITY. . . . . . . . . . . . . .     | VI      | 6.05    | 17   |
| NON-CONSOLIDATED SUBSIDIARY              |         |         |      |
| Definition of . . . . . . . . . . . . .  | II      | 2.09    | 7    |
| NOTICE OF DENIAL . . . . . . . .          | VI      | 6.06    | 17   |
| OVERPAYMENTS AND UNDERPAYMENTS           |         |         |      |
| Deduction from Wages and Benefits. . . . . . . . . . . . . . . . . | IV | 4.05 | 13 |
| Limitations on Recoveries . . . .         | IV      | 4.05    | 13   |
| Notice to Employee . . . . . . . . .      | Ex. F   | 5       | (5)  |
| Payment of Underpayment . . .             | IV      | 4.05    | 13   |
| Recovery from Monies Payable . . . . . . . . . . . . . . . . | Ex. F | 5 | (5) |
| PARTICIPANT                              |         |         |      |
| Definition of . . . . . . . . . . . . .  | II      | 2.10    | 8    |
| PLAN                                     |         |         |      |
| Definition of . . . . . . . . . . . . .  | II      | 2.11    | 8    |
| PLAN YEAR                                |         |         |      |
| Definition of . . . . . . . . . . . . .  | II      | 2.12    | 8    |
| PROFIT SHARING AMOUNT                    |         |         |      |
| Definition of . . . . . . . . . . . . .  | II      | 2.13    | 8    |
| PROFITS                                  |         |         |      |
| Definition of . . . . . . . . . . . . .  | II      | 2.14    | 8    |
| SALES AND REVENUES                       |         |         |      |
| Definition of . . . . . . . . . . . . .  | II      | 2.15    | 8    |
| SUBSIDIARY                               |         |         |      |
| Definition of . . . . . . . . . . . . .  | II      | 2.16    | 9    |
| TOTAL PROFIT SHARE                       |         |         |      |
| Definition of . . . . . . . . . . . . .  | II      | 2.17    | 9    |
| UNION LEAVES                             |         |         |      |
| Compensated Hours. . . . . . . .          | Ex. F   | 2       | (2)  |
| U.S. OPERATIONS                          |         |         |      |
| Definition of . . . . . . . . . . . . .  | II      | 2.18    | 10   |

**EXHIBIT F**

**SUPPLEMENTAL AGREEMENT**

**(Profit Sharing Plan)**

F, Sect. 1

# SUPPLEMENTAL AGREEMENT
# (PROFIT SHARING PLAN)

On this 18th day of September, 2003, Delphi Corporation, hereinafter referred to as the Corporation or Delphi, and the International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, hereinafter referred to as the Union, on behalf of the employees covered by the Collective Bargaining Agreement of which this Supplemental Agreement becomes a part, agree as follows:

## SECTION 1.  Establishment of Plan

Subject to the approval of its Board of Directors, the Corporation will establish an amended Profit Sharing Plan for Hourly-Rate Employees in the United States, hereinafter referred to as the "Plan," a copy of which is attached hereto as Exhibit F-1 and made a part of this Agreement to the extent applicable to the employees represented by the Union and covered by this Agreement as if fully set out herein, modified and supplemented, however, by the provisions hereinafter. In the event of any conflict between the provisions of the Plan and the provisions of this Agreement, the provisions of this Agreement will supersede the provisions of the Plan to the extent necessary to eliminate such conflict.

In the event that the Plan is not approved by the Board of Directors of the Corporation, the Corporation, within 30 days after any such disapproval, will give written notice thereof to the Union and this Agreement shall thereupon have no force or effect.  In that event, the matters covered by this Agreement shall be the subject of further negotiation between the Corporation and the Union.

(1)

F, Sect. 2 (a)

## SECTION 2.  Administration

(a)    Notwithstanding any provision of the Plan, (1) any person who receives a back pay award applicable to an earlier Plan Year as the result of a grievance settlement shall receive after such grievance settlement a payment for the Plan Year to which such back pay award applies in an amount equal to the Participant's Profit Sharing Amount that would have been payable for such earlier Plan Year, based on the Compensated Hours received by such person for such Plan Year, less any Profit Sharing Amount paid previously to such person for such Plan Year, (2) the amount of such payments shall be deducted from the Total Profit Share otherwise allocated to the Plan for the first Plan Year ending after the date of such grievance settlement in which a Total Profit Share is achieved, and (3) any Compensated Hours resulting from a back pay award shall be included as Compensated Hours only for the Plan Year for which the back pay is awarded.

(b)    The Union shall be informed of the results of a review of a request by a Participant or beneficiary of a Participant pursuant to Article VI, Section 6.06 of the Plan, provided the Participant is represented by the Union.

(c)    Notwithstanding Article II, Section 2.03 of the Plan, and solely for the purpose of determining the amount of any distribution under this Plan, Compensated Hours shall be credited to an employee who is on a leave of absence under Paragraph 109 of the National Agreement if the leave was granted for the purpose of permitting the employee to engage in the business of, or to work for, the Local Union and provided further that each such employee is involved in the in-plant administration of the provisions of such National Agreement.  An employee eligible for

(2)

F, Sect. 2 (c)

Compensated Hours pursuant to this provision shall be credited with up to 40 hours for each calendar week while on such leave, subject to the annual maximum specified in Article II, Section 2.03 of the Plan, provided the employee meets the requirements of the leave.

## SECTION 3. Non-Applicability of Collective Bargaining Agreement Grievance Procedure

(a)    No matter respecting the Plan as supplemented by this Agreement or any difference arising thereunder shall be subject to the grievance procedure established in the Collective Bargaining Agreement between the Corporation and the Union.

(b)    All computations made by the Corporation to determine Sales and Revenues and Profits (as defined in Article II, Sections 2.15 and 2.14 of the Plan, respectively) when certified by the opinion of a firm of independent certified public accountants (selection of which shall be made by the Corporation and must be approved by the shareholders of the Corporation) as being in accordance with generally accepted accounting principles, and all calculations made by the Corporation to determine the Total Profit Share (as defined in Article II, Section 2.17 of the Plan) when certified by the opinion of the aforementioned independent certified public accountants as being in accordance with the provisions of the Plan, shall be final and binding on the Union, Participants, beneficiaries, and the Corporation.

(c)    The Corporation will respond as soon as practicable to reasonable requests from the Union for information regarding the computations made by the Corporation of the Total Profit Share and allocation of the Total Profit Share among plans.

(3)

F, Sect. 3 (d)

(d)  The parties agree to refer any disagreements over the interpretation of the terms of this Agreement or the Plan to a mutually acceptable impartial person for resolution.  The resolution of any such disagreement by such impartial person shall be final and binding upon the Union, Participants, beneficiaries, and the Corporation.  Such impartial person shall not, however, have any authority to determine accounting policies used in the computation of Sales and Revenues, Profits, or the Total Profit Share, or to change the dollar amount of Sales and Revenues, Profits, or the Total Profit Share. The determination of accounting policies (e.g., depreciation, LIFO, expense allocation, etc.), so long as they are within generally accepted accounting principles, remains within the sole discretion of the Corporation and such determination of accounting policies shall be final and binding upon the Union, Participants, and beneficiaries. The compensation of the impartial person, which shall be in such amount and on such basis as may be determined by the Corporation and the Union, shall be shared equally by the Corporation and the Union.

## SECTION 4.  Governmental Rulings

(a)  The Plan, as set forth in Exhibit F-1, and the Plan as it may be supplemented by superseding provisions of this Agreement, are contingent upon and subject to the Corporation obtaining and retaining from the United States Department of Labor a ruling, satisfactory to the Corporation, holding that no part of any payments made from the Plan are included for purposes of the Fair Labor Standards Act or under comparable state legislation in the regular rate of any Participant.

(b)  The Corporation shall apply promptly to the appropriate agency(ies) for the ruling described in subsection (a) of this Section.

(4)

(c) Notwithstanding any other provisions of this Agreement or the Plan, the Corporation, with the consent of the UAW Vice President and Director of the General Motors Department of the Union, may, during the term of this Agreement, make revisions in the Plan not inconsistent with the purposes, structure, and basic provisions thereof which shall be necessary to obtain or retain the ruling referred to in subsection (a) of this Section 4. Any such revisions shall adhere as closely as possible to the language and intent of provisions outlined in this Agreement and the Plan.

## SECTION 5. Recovery of Overpayments

If it is determined that any monies paid to an employee under the Delphi-UAW National Agreement and any Exhibits thereto should not have been paid or should have been paid in a lesser amount, written notice thereof shall be given to such employee, and the employee shall repay the amount of the overpayment.

If the employee fails to repay such amount of overpayment promptly, the Corporation shall recover the amount of such overpayment immediately from any monies then payable, or which may become payable, to the employee in the form of wages or benefits payable under the Delphi-UAW National Agreement and any Exhibits thereto; except that, not more than 50% of any Profit Sharing Amount to which a Participant otherwise may be entitled shall be subject to any such recovery.

## SECTION 6. Duration of Agreement

This Agreement and Plan as modified and supplemented by this Agreement shall continue in effect until the termination of the Collective Bargaining Agreement of which this is a part. Notwithstanding termination of this Agreement and Plan, any Total Profit Share that

F, Sect. 6

otherwise would accrue for calendar year 2007 will be allocated, distributed, and administered in accordance with the provisions of this Agreement and the Plan.

In witness hereof, the parties hereto have caused this Agreement to be executed the day and year first above written.

| INTERNATIONAL UNION, UAW | DELPHI CORPORATION |
|---|---|
| RON GETTELFINGER | J. T. BATTENBERG III |
| RICHARD SHOEMAKER | ALAN DAWES |
| JIM BEARDSLEY | MARK WEBER |
| HENDERSON SLAUGHTER | DAVE WOHLEEN |
| JOE SPRING | DON RUNKLE |
| BILL STEVENSON | RODNEY O'NEAL |
| DAVE CURSON | KEVIN M. BUTLER |
| JIM SHROAT | RALPH E. HANDLEY |
| RON BIEBER | ATUL PASRICHA |
| SCOTT CAMPBELL | STEVEN L. GEBBIA |
| ANTONIO ORTIZ | DARRELL E. KIDD |
| TOM WALSH | NICK HOTCHKIN |
| TOM WEEKLEY | MARK CASHDOLLAR |
| WILLIE WILLIAMS | ROBERT GERLING |
| LEON SKUDLAREK | ED GOETTL |
| ESTHER CAMPBELL | DON HOOPER |
| HAROLD COX | MARK LEWIS |
| GREG FEDAK | CHARLES MCWEE |
| MARK KELLY | BERNARD QUICK |
| FAYE MCAFEE | JUDY MATZELLE |
| RICK MCKIDDY | M. BETH SAX |
| PAUL MITCHELL | FRANK KUPLICKI |
| HAROLD SHELTON | SCOTT HARRIS |
| DAVID SHOEMAKER | DAVID BODKIN |
| LAWRENCE SMITH | MICHAEL S. FLIGSTEIN |
| MAURICE STATEN | THOMAS SMITH |
| CINDY SUEMNICK | DAVE CAIROLI |
| LARRY SZUMAL | SALVATORE GALANTE, M.D. |
| RON BROGAN | KARL BOSSUNG |
| BOB BUENO | THOMAS B. ARNOLD |
| MIDGE COLLETTE | BRENDA PAGE |
| MARK HAWKINS | LARRY B. PEOPLES |
| JIM JENKINS | DAVE PETTYES |
| LEE JONES | MARK A. WINFIELD |
| MIKE JONES | RICH BALGENORTH |
| LARRY KUK | JOHN L. DEMARCO |
| RICK O'DONNELL | PAT MCDONALD |
| DARRELL SHEPARD | EVELYN JESTER |
| CLYDE SIMS | LESLEY MARCOTT |
| RAY ALLEN | JAMES M. PETRIE |
| PAUL ALLMAND | MARK PIERCE |
| GORDON ANDREWS | JERRY SEITER |
| NATE BEARDSLEY | DEBBIE DOUGLAS |
| CHARLIE BEST | DEBORAH FRANCE |

(7)

## INTERNATIONAL UNION, UAW

JIM BLAINE
RON BLYTHE
JOAN BRYANT
REBECCA CABREROS
PATTI CAMPBELL
DEBBIE CHAMBERLAIN
JERRY CHOTKOWSKI
JAMES CIOTTI
JERRY CLIFTON
JIM CLIFTON
TIM COBB
CHARLIE COY
BRYAN CZAPE
SHELLEY CZEIZLER
STEVE CZERNESKI
GEORGE DAKURAS
DICK DIFFIN
TERRI DOLAN
DON DOUGLAS
DAVE DREMER
SCOTT FARRADAY
JOHN FEDEWA
TOM FORD
BILL FREEMAN
RON GRAHAM
MOSES GREEN
MIKE GRIMES
CHARLIE GROSS
LESLIE HALIBURTON
FRANK HAMMER
BILL HAYES
KEN HOLDER
DIANA HROVATIN
MOHAMMED ISA
DAVE KAGELS
JIM KING
TOM KINMAN
PETE KOROLENKO
DAVE KOSCINSKI
DAN LACK
JAMES LAKE
DIANE LAWTON
RANDY LENTZ
REG MCGHEE

## DELPHI CORPORATION

DALE JOHNSON
NANCY JULIUS
BRIAN C. STUDER
SHARON L. SMITH
MICHELLE TRIMBLE
RENEE ATKINSON
BETH BROWN
PAUL CAIGOY
STEPHANIE DAMERON-CLARK
DEANNA DOROGY
CHRISTINE DARBY
GARY ELLIOTT
LAURA HARDY
JOANNA KAPLAN
CHRIS KRUMINS
LESIA MAHON
DENNIS RIPPEL
GREG SCHMIEDEKNECHT
MELINDA J. WILEY
CRISTINA M. ZATEK
LUCE RUBIO
ARTHUR HUBER

(8)

## INTERNATIONAL UNION, UAW

STEVE MCLIMANS
GREG NELSON
DON NEWTON
KRIS OWENS
ED PARKER
LINDA PATTON
RITA PERSINGER
STEVE RAICH
FRED RASPBERRY
BONNI REFFITT
LORENZO RIVERA
JOHN RUPP
RUSS RUSSAW
BILL SAVAGE
JIM SAYLOR
RENE SCHUTTE
BILL SCRASE
DARRELL SMITH
JAMES STEVENS
STAN STOKER
TOM STRUCKMAN
CRICKETT SWEET
LIBBY TOMASKO
EDDIE TRENT
KENNY VANHORN
DWAYNE WALDROP
RON WALKER
JOANNA WHITAKER
MICHAEL WILSON
AL YELLE

(9)

(10)

**EXHIBIT F-1**

**THE DELPHI**

**PROFIT SHARING PLAN**

**FOR HOURLY-RATE EMPLOYEES**

**IN THE UNITED STATES**

1

2

# ARTICLE I

# ESTABLISHMENT AND EFFECTIVE DATE OF PROFIT SHARING PLAN

## 1.01 Establishment of Plan

Delphi Corporation hereby establishes The Delphi Profit Sharing Plan for Hourly-Rate Employees in the United States (hereinafter referred to as the Plan).

## 1.02 Effective Date of the Plan

The Plan shall become effective January 1, 2004, except as otherwise may be provided herein.  The Agreement dated September 28, 1999 shall remain in effect until December 31, 2003, and shall govern distribution in 2004, based on any profits in 2003.

# ARTICLE II

# DEFINITION OF TERMS

The following definitions will apply to all words and phrases capitalized in the text which follows.

## 2.01 "Administrator"

Administrator means Delphi Corporation.  The Administrator's address is 5825 Delphi Drive, Mail Code 480-410-104, Troy, MI 48098.

## 2.02 "Associate"

Associate means a non-consolidated joint venture in which the capital investment of the Corporation, either directly or indirectly, is between 20% and 50%, inclusive.

3

Art. II, 2.03(a)

## 2.03 "Compensated Hours"

(a) Compensated Hours means all hours, not in excess of 1,850 hours in any Plan Year, for which a Participant who is eligible to receive a distribution for a Plan Year received pay from the Corporation with respect to hourly-rate employment in U.S. Operations during the Plan Year on or after an Employee's date of enrollment. The term shall include hours for which a Participant who is eligible to receive a distribution for a Plan Year receives base pay, overtime (with each hour paid at premium rates to be counted as one hour), vacation entitlement, holiday pay, bereavement pay, jury duty pay, short-term military duty pay, and call-in pay; provided, however, no hours shall be duplicated because of payment under more than one category. The term shall not include hours compensated in any other form (e.g., Cost-of-Living Allowance, night-shift premium, seven-day premium, incentive pay, moving allowance, supplemental unemployment benefit payments under the Corporation's Supplemental Unemployment Benefit Plan [including automatic short week benefit payments] or Guaranteed Income Stream Benefit Plan, suggestion awards, tool allowances, imputed income, sickness and accident benefits, extended disability benefits, and allocations under this Plan).

(b) The term Compensated Hours shall include, for a Participant who otherwise is eligible to receive a distribution for a Plan Year, 40 hours for each complete calendar week during such Plan Year that the Participant is on an approved sick leave of absence and for such complete calendar week has received Workers' Compensation payments from the Corporation as the result of a totally disabling occupational injury or disease under any Workers' Compensation law or act or any occupational disease, law, or act, provided:

4

(i)    the Participant otherwise would have been scheduled to work all hours during such complete calendar week(s); and

(ii)    the Participant is actively at work for the Corporation during at least one complete calendar week in the Plan Year; and

(iii)    during the Plan Year, or prior thereto, the Corporation has for such calendar week(s) either voluntarily paid Workers' Compensation benefits or failed to appeal the adverse determination of an applicable state agency or court awarding payment of Workers' Compensation benefits.

A Participant shall not receive credit for Compensated Hours applicable to any prior Plan Year as the result of a decision of an applicable state agency or court awarding benefits retroactively for periods during any prior Plan Year.

## 2.04 "Consolidated Subsidiary"

Consolidated Subsidiary means, for any Plan Year, any Subsidiary, the accounts of which are consolidated with those of the Corporation in the Statement of Consolidated Income and Consolidated Balance Sheet of the Corporation for such Plan Year.

## 2.05 "Corporation"

Corporation means Delphi Corporation.

## 2.06 "Domestic"

Domestic means, with respect to any Consolidated Subsidiary or Non-Consolidated Subsidiary, any such Subsidiary that is incorporated and derives more than 50% of its revenue from activities carried on or located within the United States.

5

Art. II, 2.07(a)

## 2.07 "Employee"

Employee means

(a)   any person regularly employed in the United States by U.S. Operations of the Corporation on an hourly-rate basis, including:

(1)   hourly-rate persons employed on a full-time basis;

(2)   part-time hourly-rate employees who, on a regular and continuing basis, perform jobs having definitely established working hours, but the complete performance of which requires fewer hours of work than the regular workweek, provided the services of such employees are normally available for at least half of the employing unit's regular workweek;

(b)   The term "Employee" shall not include employees represented by a labor organization which has not signed an agreement making the Plan applicable to such employees.

(c)   The term "Employee" shall not include leased employees as defined under Section 414(n) of the Internal Revenue Code.

(d)   The term "employee" shall not include contract employees, bundled services employees, consultants, or other similarly situated individuals, or individuals who have represented themselves to be independent contractors.

The following classes of individuals are ineligible to participate in this Plan, regardless of any other Plan terms to the contrary, and regardless of whether the individual is a common-law employee of the Corporation:

6

(1)   Any individual who provides services to the Corporation where there is an agreement with a separate company under which the services are provided. Such individuals are commonly referred to by the Corporation as "contract employees" or "bundled-services employees";

(2)   Any individual who has signed an independent contractor agreement, consulting agreement, or other similar personal service contract with the Corporation;

(3)   Any individual who both (a) is not included in any represented bargaining unit and (b) who the Corporation classifies as an independent contractor, consultant, contract employee, or bundled-services employee during the period the individual is so classified by the Corporation.

The purpose of this provision is to exclude from participation all persons who may actually be common-law employees of the Corporation, but who are not paid as though they were employees of the Corporation, regardless of the reason they are excluded from the payroll, and regardless of whether that exclusion is correct.

## 2.08 "Investment"

Investment means a company in which the Corporation has less than a 20% ownership.

## 2.09 "Non-Consolidated Subsidiary"

Non-Consolidated Subsidiary means, for any Plan Year, any Subsidiary which is not a Consolidated Subsidiary for such Plan Year.

Art. II, 2.10

### 2.10 "Participant"

Participant means an Employee who, at any time during a Plan Year, has been enrolled in the Plan in accordance with Article III and is eligible to receive a Profit Sharing Amount for such Plan Year.

### 2.11 "Plan"

Plan means The Delphi Profit Sharing Plan for Hourly-Rate Employees in the United States.

### 2.12 "Plan Year"

Plan Year means the 12-month period beginning on January 1 and ending on December 31.

### 2.13 "Profit Sharing Amount"

Profit Sharing Amount means the portion of the Total Profit Share allocated to a Participant.

### 2.14 "Profits"

Profits means income earned by U.S. Operations before income taxes and "extraordinary" items (with "extraordinary" defined as under generally accepted accounting principles). Profits are before any profit sharing charges are deducted.

Profits also are before incentive program charges for U.S. Operations, including (i) Delphi Corporation, (ii) Consolidated Subsidiaries, and (iii) Non-Consolidated Subsidiaries. Excluded from Profits are any profits (or losses) derived from non-U.S. Subsidiaries of U.S. Operations and any dividends received from non-U.S. Subsidiaries. Income from non-consolidated U.S. Operations shall be included on an after-tax basis.

### 2.15 "Sales and Revenues"

Sales and Revenues means the total net sales and revenues of Delphi U.S. Operations for such Plan Year.

8

### 2.16 "Subsidiary"

Subsidiary means a corporation, a majority of the voting stock of which is owned, directly or indirectly, by the Corporation.

### 2.17 "Total Profit Share"

Total Profit Share means an obligation of the Corporation for any Plan Year in an amount equal to the sum of:

(a) 6% of the portion of the Profits for such Plan Year which exceeds 0.0% of Sales and Revenues for such Plan Year but does not exceed 1.8% of Sales and Revenues;

(b) 8% of the portion of the Profits for such Plan Year which exceeds 1.8% of Sales and Revenues for such Plan Year but does not exceed 2.3% of Sales and Revenues;

(c) 10% of the portion of the Profits for such Plan Year which exceeds 2.3% of Sales and Revenues for such Plan Year but does not exceed 4.6% of Sales and Revenues;

(d) 14% of the portion of the Profits for such Plan Year which exceeds 4.6% of Sales and Revenues for such Plan Year but does not exceed 6.9% of Sales and Revenues; and

(e) 17% of the portion of the Profits for such Plan Year which exceeds 6.9% of Sales and Revenues for such Plan Year.

In any Plan Year in which a Total Profit Share is achieved, the minimum Total Profit Share will be $50 multiplied by the total number of participants eligible for a distribution for the Plan Year under this Plan or under a similar plan established by the Corporation or would be eligible under a similar plan.

9

Art. II, 2.18

## 2.18 "U.S. Operations"

U.S. Operations means all operations of the Corporation and its Domestic Subsidiaries, both consolidated and non-consolidated, in the financial statements included in the Delphi Annual Report that carry on business primarily in the United States. The term excludes (1) the following U.S. incorporated subsidiaries and their employees whose operations are primarily involved in business outside the United States: Delphi Automotive Systems (Holdings), Inc.; Delphi Automotive Systems International, Inc.; Delphi International Services, Inc. (Delaware); Delphi Corporation (Delaware); and any other subsidiaries that may qualify in the future, (2) Associates, and (3) Investments.

## ARTICLE III

## ENROLLMENT

### 3.01 Enrollment

An Employee will be enrolled in the Plan on the later of (a) the date upon which the employee meets the Plan definition of Employee, Section 2.07, or (b) the date on which this Plan first becomes applicable to the unit in which such person is employed, provided the person remains employed on such date.

## ARTICLE IV

## ALLOCATION AND DISTRIBUTION

### 4.01 Allocation of the Total Profit Share to this Plan

The Total Profit Share for the Plan Year is to be allocated to this Plan in the proportion that (a) the number of Participants in this Plan entitled to a

10

distribution for the Plan Year bears to (b) the total number of all hourly-rate employees and non-executive salaried employees of the U.S. Operations and other persons who are entitled to a distribution for the Plan Year under this Plan or under a similar plan or would be entitled under a similar plan.

### 4.02 Allocation of Profit Sharing Amount to Participants

The portion of the Total Profit Share for the Plan Year allocated to this Plan in accordance with Section 4.01 will be allocated to each Participant entitled to a distribution for the Plan Year in the proportion that (a) the Participant's Compensated Hours for the Plan Year bears to (b) the total Compensated Hours of all Participants in this Plan entitled to a distribution for the Plan Year.

### 4.03 When Profit Sharing Amounts are Allocated and Distributed

(a)  Commencing with the 2003 Plan Year and as soon as administratively feasible, but in no event later than the third month following the end of the Plan Year, the Profit Sharing Amount will be allocated and distributed to each eligible Participant pursuant to this Article IV. The Corporation shall deduct from the amount of any such distribution to a Participant (or beneficiary) any amount required to be deducted, by reason of any law or regulation, for payment of taxes or other payments to any federal, state, or local government. Each distribution shall be accompanied by a statement showing the computation of such Participant's Profit Sharing Amount. Withholding tax obligations of the Corporation with respect to any such distribution will be satisfied as determined by the Administrator of the Plan. In determining the amount of any applicable tax, the computation of which takes personal exemptions into account, the Corporation shall

11

Art. IV, 4.03(a)

be entitled to rely on the official form filed with the Corporation for purposes of income tax withholding. No interest shall be payable with respect to any such distribution.

(b)    In lieu of receiving a distribution in cash pursuant to subsection (a) of this Section 4.03, each Participant entitled to a distribution for any Plan Year that is in excess of the minimum Total Profit Share as defined in Article II, Section 2.17, other than a Participant whose employment terminated prior to distribution of such Profit Sharing Amounts, may elect to have the Corporation contribute to the Participant's account under The Delphi Personal Savings Plan for Hourly-Rate Employees in the United States an amount up to 100%, in multiples of 1% of such distribution, provided such amount is not in excess of the maximum amount permitted under Section 415 of the Code. Such election shall be filed at such time and in such manner as the Administrator shall determine and will remain continuously in effect until changed by the Employee. If the Administrator does not receive an election from a Participant on or before the date established by the Administrator for submission of such elections for the applicable Plan Year, the Participant's Profit Sharing Amount for the Plan Year shall be distributed to the Participant.

(c)    Any amounts elected to be deferred by a Participant pursuant to Section 4.03(b) of this Article IV which cannot be deferred as a result of the application of Section 415 of the Code shall be distributed to the Participant.

(d)    Notwithstanding Section 6.04 of the Plan, in the event the Corporation is legally obligated to pay a tax levy, child support, or similar legal obligations to any third party, no election made by the Participant to defer a Profit Sharing Amount pursuant to Section 4.03(b)

12

shall be effective. To the extent necessary and/or available, the legally required payment will be deducted from the Participant's Profit Sharing Amount and paid to the applicable third party.

## 4.04  To Whom Profit Sharing Amounts are Distributed

In addition to Participants who are on the active roll at the end of the Plan Year, the Profit Sharing Amount for the Plan Year, if any, will be paid to otherwise eligible (1) Participants on layoff or leave of absence, including sick leave, at the end of the Plan Year, (2) Participants who retired during the Plan Year, and (3) beneficiaries of Participants who died during the Plan Year. Employees who terminated during the Plan Year for any reason other than death, retirement, or any voluntary termination of employment program shall not be eligible for a distribution for the Plan Year. The amount of any such distribution shall be determined in accordance with Section 4.02 of this Article IV.

Distribution of a Profit Sharing Amount will be made only to a Participant. However, if the Participant is deceased at the time of distribution, the distribution will be made to the beneficiary or beneficiaries designated by the Participant pursuant to Article V.

## 4.05  Overpayments and Underpayments

(a)   No amount allocated to a Participant entitled to a distribution for a Plan Year under this Plan may be increased or decreased in a subsequent Plan Year except in the event it shall be determined an error in excess of $3 was made in the computation of any Profit Sharing Amount for any Plan Year. Such error shall be handled as follows:

(i)   If such Participant's Profit Sharing Amount (correctly determined) was greater than the amount paid

13

Art. IV, 4.05(a)(i)

to such Participant by an amount in excess of $3, the
deficiency shall be paid to such Participant within 60
days after such determination.

(ii)  If such Participant's Profit Sharing Amount
(correctly determined) was less than the amount paid to
such Participant by an amount in excess of $3, written
notice thereof shall be mailed to such Participant
receiving such Profit Sharing Amount and the
Participant shall return the amount of such overpayment
to the Corporation; provided, however, that no such
repayment shall be required if notice has not been given
within 120 days from the date on which the
overpayment was made. If such Participant shall fail to
return such amount promptly, the Corporation shall
make an appropriate deduction or deductions from any
monies then payable, or which may become payable, by
the Corporation to the employee in the form of wages or
future payments under this Plan; provided, however, that
any such deduction shall not exceed $30 from any one
paycheck, but any such deduction from subsequent
payments under the Plan shall not be limited.

(b)  The Corporation shall make an appropriate
deduction or deductions from any future benefit
payment or payments payable to the Participant under
this Plan for the purpose of recovering overpayments
made to the Participant in the form of wages or under
any Delphi benefit plan. Amounts so deducted shall be
remitted to the Corporation or the benefit plan, as
applicable. The Corporation, by such remittance, shall
be relieved of any further liability to the Participant with
respect to such payments under this Plan.

## 4.06  Benefit Drafts Not Presented

Unless prevented by law, the amount of any payment
made to a Participant under the Plan, but not claimed by
the Participant prior to December 31 of the Plan Year
following the date of such payment, shall be added to

14

the portion of the Total Profit Share next allocated to this Plan. In this event, such Participant shall have no further entitlement to such payment.

# ARTICLE V

# OTHER PROVISIONS

## 5.01 Designation of Beneficiaries in Event of Death

A Participant shall be deemed to have designated as beneficiary or beneficiaries under this Plan the person or persons who receive the Participant's life insurance proceeds under the Corporation's Life and Disability Benefits Program for Hourly Employees unless such Participant shall have assigned such life insurance, in which case the Profit Sharing Amount will be paid to the estate of the Participant unless such Participant has submitted, in writing, a different beneficiary or beneficiaries to the Plan Administrator.

A beneficiary or beneficiaries will receive, in the event of the Participant's death, all or part of the Profit Sharing Amount of the Participant in accordance with the applicable designation. If the Corporation shall be in doubt as to the right of any beneficiary to receive any Profit Sharing Amount, the Corporation may deliver such Profit Sharing Amount to the estate of the Participant, in which case the Corporation shall not have any further liability to anyone.

# ARTICLE VI

# ADMINISTRATION

## 6.01 Administrative Responsibility

The Corporation will have full power and authority to construe, interpret, and administer this Plan and to pass

15

upon and decide cases presenting claims in conformity with the objectives of the Plan and under such rules as it may establish from time to time. Decision of the Corporation will be final and binding upon any of its employees.

## 6.02 Certification by Independent Certified Public Accountants

The Corporation will compute Sales and Revenues and Profits (as defined in Article II, Sections 2.15 and 2.14, respectively) in accordance with generally accepted accounting principles and then calculate the Total Profit Share and the allocation of Total Profit Share among plans in accordance with the provisions of this Plan. Such computations and calculations, when certified by the opinion of a firm of independent certified public accountants (selection of which shall be made by the Corporation and must be approved by the shareholders of the Corporation), shall be final and binding on Participants; the collective bargaining representative of such Participants, if any; beneficiaries and the Corporation.

## 6.03 Administrative Expenses

Administrative expenses of the Plan shall be paid by the Corporation.

## 6.04 Non-Assignability

Except as provided in Article IV, Section 4.05, to the extent allowed by applicable law, no right or interest of any Participant under this Plan shall be assignable or transferable, in whole or in part, either directly or by operation of law or otherwise, including, without limitation, by execution, levy, garnishment, attachment,

16

pledge, or in any other manner, but excluding devolution by death or mental incompetency; no attempted assignment or transfer thereof shall be effective; and no right or interest of any Participant under this Plan shall be liable for, or subject to, any obligation or liability of such Participant.

## 6.05  Incapacity

If the Administrator deems any person incapable of receiving any distribution to which such person is entitled under this Plan because such person has not yet reached the age of majority, or because of illness, infirmity, mental incompetency, or other incapacity, it may make payment, for the benefit or the account of such incapacitated person, to any person selected by the Administrator whose receipt thereof shall be a complete settlement thereof.  Such payments shall, to the extent thereof, discharge all liability of the Corporation and each other fiduciary with respect to this Plan.

## 6.06  Notice of Denial

The Administrator shall provide adequate notice, in writing, to any Participant or beneficiary whose request for a distribution or for a distribution in a greater amount under this Plan has been denied setting forth the specific reason or reasons for such denial.  The Participant or beneficiary shall be given an opportunity for a full and fair review by the Corporation of the decision denying the request.  The Participant will be given a reasonable period of time, to be established by the Corporation from the date of the notice denying such request, within which to request such review.

17

Art. VII, 7.01

# ARTICLE VII

## AMENDMENT, MODIFICATION, SUSPENSION, OR TERMINATION

### 7.01 Amendment, Modification, Suspension, or Termination

The Corporation reserves the right, by and through its Board of Directors, to amend, modify, suspend, or terminate the Plan including specifically the right prior to making the allocation of contributions, as provided in Article IV, to include as Employees for purposes of the Plan such other employees of the Corporation and its Domestic Consolidated and Non-Consolidated Subsidiaries as the Corporation may specify.

18

Paragraph 109 Leave

# DELPHI CORPORATION

<u>September 18, 2003</u>

International Union, United Automobile
. Aerospace and Agricultural Implement
    Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
        Vice President and Director
        General Motors Department

Dear Mr. Shoemaker:

During the discussions between the parties held in
conjunction with completing the Profit Sharing Plan
language, the Union requested that all employees on
leave under Paragraph 109 of the National Agreement
to engage in the business of or to work for the Local
Union should be included as eligible participants under
such Plan.  The Corporation pointed out, however, that
certain employees, such as Trustees, Sergeants at Arms
and Guides, and any other employees not involved in
the in-plant administration of the National Agreement,
would not be included in the Plan and would not
receive any compensated hours under the Plan while
on such leave.  Moreover, it is understood that the Local
Union will advise Local Management each year, in
December, of the name, Social Security number, and job
title of each such employee therefore not eligible for
benefits under the Profit Sharing Plan.

Very truly yours,

DELPHI CORPORATION

<u>Kevin M. Butler</u>
<u>Vice President</u>
<u>Human Resource Management</u>

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

19

Union Reports

# DELPHI CORPORATION

September 18, 2003

International Union, United Automobile
   Aerospace and Agricultural Implement
   Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
      Vice President and Director
      General Motors Department

Dear Mr. Shoemaker:

This will confirm the understanding reached during our
recent discussions with the Union regarding the
information to be provided to the Union supporting
computations made to compute the "Total Profit Share"
and "Allocation of the Total Profit Share" to this Plan in
the Profit Sharing Plan for Hourly-Rate Employees in
the United States (the Profit Sharing Plan).

In these discussions, we advised the Union that for
each Plan Year the Corporation would provide the
following information:

- A summary report of Sales and Revenues, and
  Profits, adjusted in accordance with the Profit
  Sharing Plan, similar to the attached format;

- A report displaying the computation of the Total
  Profit Share and Allocation of the Total Profit
  Share to this Plan;

- Annual statement of consolidated income,
  including the footnotes, which will appear in the
  financial statements in the Annual Report to
  stockholders for the Plan Year; and

- A statement of the impact of changes described in
  the footnotes on U.S. Operations as defined in the
  Profit Sharing Plan.

20

Union Reports

The data reported will be certified by the independent public accountants in accordance with the Profit Sharing Plan.

The Corporation will provide the Union with the information described above as soon as practicable after it becomes available.

This understanding has been reached on the basis that the Union will ensure that, until and to the extent the information is made available by the Corporation to the public at large, the information will be disclosed only to those reviewing for the Union the computations related to the Profit Sharing Plan, and neither the Union nor anyone reviewing such information for the Union will make any other disclosure of the information.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Attachment
Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW

By: Richard Shoemaker

21



Union Reports

## HOURLY PROFIT SHARING PLAN
## Sales and Revenues & Profits, as Defined in the Plan,
## for the Year Ended December 31, 20___

($ in Millions)

**Sales and Revenues**
Total U.S. Net Sales and Revenues
Deduct Sales and Revenues of Excluded Subsidiaries and Associates    $
    $

Sales and Revenues of U.S. Operations as Defined in the Plan    $

**Profits as Defined in the Plan**
Net Income in the United States    $

Add (Deduct):
- Net Income of Excluded Subsidiaries and Associates
- Extraordinary Items
- Income Taxes of U.S. Operations Excluding Non-Consolidated Subsidiaries
- Provision for the Corporation, Consolidated Subsidiaries, and
  Non-Consolidated Subsidiaries Incentive Programs Applicable
  to U.S. Operations
- Profit Sharing Accrual

Profits as Defined in the Plan    $

22

Union Reports

## Portion of Profits as Defined in the Plan

| Portion of Profits as Defined in the Plan | Profits as Defined in the Plan | Profit Sharing Rate % | Total Profit Share |
|---|---|---|---|
| Between 0.0% and 1.8% of Sales and Revenues | $ | 6.0 | $ |
| Between 1.8% and 2.3% of Sales and Revenues | | 8.0 | |
| Between 2.3% and 4.6% of Sales and Revenues | | 10.0 | |
| Between 4.6% and 6.9% of Sales and Revenues | | 14.0 | |
| Over 6.9% of Sales and Revenues | | 17.0 | |
| | $ | | $ |
| Deduct Portion of Profit Sharing Allocable to Non-Participating Employees | | | |
| Profit Sharing Accrual | | | $ |

23

FASB

# DELPHI CORPORATION

September 18, 2003

International Union, United Automobile
Aerospace and Agricultural Implement
Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
       Vice President and Director
       General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the Corporation and the
Union confirmed their understanding and intent
regarding certain provisions of the Profit Sharing Plan.

The Profit Sharing Plan, as initially negotiated and as
presently constituted, provides for earnings of domestic
unconsolidated subsidiaries included in Plan income to
be reflected on an after-tax basis. This treatment for
Profit Sharing is consistent with the way Delphi
presently accounts for these subsidiaries in its
published financial results.

A change in the accounting for majority-owned
subsidiaries presently is being considered by the
Financial Accounting Standards Board (FASB).  The
FASB has indicated it intends to issue rules, effective in
1988, which would no longer permit companies to
exclude majority-owned "non-homogenous"
subsidiaries from a line-by-line consolidation with the
parent Corporation.  In the event the proposed FASB
rule regarding consolidation of majority-owned
subsidiaries becomes final, appropriate adjustments
will be made to "Profits" and "Sales and Revenues" for
the purpose of the Profit Sharing Plan.  These
adjustments will be made to achieve the same results
as would be achieved under the present practice of
reporting the after-tax results of unconsolidated
subsidiaries (majority-owned "non-homogenous"
operations) on a single line basis in the consolidated
results of the parent Corporation and of excluding the

24

FASB

revenues of these subsidiaries. These adjustments, as
with all other adjustments presently required to be
certified, would be certified by the independent public
accountants.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

25

Misc. (Benefits Training and Education)

# DELPHI CORPORATION

<u>September 18, 2003</u>

International Union, United Automobile
   Aerospace and Agricultural Implement
   Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn: Mr. Richard Shoemaker
       Vice President and Director
       General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties renewed their
commitment to provide ongoing training programs for
Company and Union Benefit Representatives so as to
improve the quality of service provided to hourly
employees. The parties also recognized the importance
of communications programs aimed at educating
employees about their benefits.

It was agreed that such training and education
programs will be developed jointly and the cost of
developing and implementing such programs properly
will be paid from the National Joint Skill Development
and Training Fund as approved by the Executive Board
for Joint Activities. These include, but are not limited to,
the following:

- Joint Delphi-UAW Benefits Training Conference
  may be scheduled upon approval by the parties.

- Continuing education program for Union Benefit
  Representatives will be provided by the parties.
  Training sessions will be scheduled for newly
  appointed Union Benefit Representatives and
  Alternates as agreed to by the parties. The
  sessions will concentrate on areas such as
  eligibility to receive benefits, description and
  interpretation of benefit plan provisions, and
  calculation of benefits.

26

Misc. (Benefits Training and Education)

- Conduct periodic on-site plant surveys and audits to evaluate training and education needs to improve employee service.

- Ad hoc training meetings on legal developments or other special needs.

Included also are any travel, lodging and living expenses incurred by Company and Union representatives in relation to the above. In addition, the Fund will pay for lost time (eight hours per day base rate plus COLA) of Union Benefit Representatives attending such programs away from their locations. The Company will pay for the time (eight hours per day base rate plus COLA) of alternate Union Benefit Representatives who replace those attending such programs.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW

By: Richard Shoemaker

27

Misc. (Improving Benefits Service Through Technology)

# DELPHI CORPORATION

<u>September 18, 2003</u>

International Union, United Automobile
   Aerospace and Agricultural Implement
   Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI 48214

Attn:  Mr. Richard Shoemaker
       Vice President and Director
       General Motors Department

Dear Mr. Shoemaker:

During these negotiations, the parties recognized the
need to move ahead with the development of
technological applications to improve the quality of
service provided to hourly employees.

1. The parties recognized the need to provide the
   necessary tools to Local Union Benefit
   Representatives so that they may improve the
   service they are providing to hourly employees.
   Local Union Benefit Representatives require basic
   information that can be accessed quickly in order
   to confidently and accurately answer many of the
   questions they receive. Therefore, the parties
   have designed <u>two systems</u>, the Benefits Data
   Access <u>and the Benefits WorkStation Access
   systems</u>, whereby Local Union Benefit
   Representatives have access to certain data
   elements from several benefit data systems.
   These <u>systems</u> provides inquiry only access to
   Local Union Benefit Representatives who
   complete a computer training program. Access is
   limited to information for UAW hourly employees
   at their particular location.

2. The parties jointly will develop and implement a
   new benefit documentation feature to the existing
   <u>systems</u> that will be available to Local Union
   Benefit Representatives. The Systems will include
   benefit plan booklets, administrative manuals
   (where applicable), relevant contract provisions

28

Misc. (Improving Benefits Service Through Technology)

and appropriate process descriptions. Upon approval by the Executive Board of Joint Activities, the cost of development, hardware and software requirements, conversion of written documentation, and installation and training, will be charged to the National Joint Skill Development and Training Fund. It is contemplated the benefit documentation feature will be implemented during the term of the 2003 Agreement.

3. The parties further agreed to provide hourly employees with web technology in addition to the continued use of a Voice Response System for inquiry and transactions in the Personal Savings Plan.

4. The parties agree to enhance the Benefit Data Access System to provide the Pension Plan survivor coverage election/rejection and the cost of such survivor option. The cost of development and implementation will be charged to the National Joint Skill Development and Training Fund.

In conclusion, during the term of the new Agreement, the parties pledge to carefully consider every opportunity to improve the quality and efficiency in benefits delivery.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW

By: Richard Shoemaker

29

## NOTES

**NOTES**

**NOTES**

**NOTES**

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## 2003

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |   |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 |   |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |   |   |   |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 |   |   |   |   |   |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |   |   |   |   |   |   |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 |   |   |   |   |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |   |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 |   |   |   |   |   |   |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

## 2004

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 |   |   |   |   |   |   |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |   |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |   |   |   |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 |   |   |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |   |   |   |   |   |   |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 |   |   |   |   |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |   |

## 2005

| JANUARY | FEBRUARY | MARCH |
|---|---|---|
| S M T W T F S | S M T W T F S | S M T W T F S |
| 1 | 1 2 3 4 5 | 1 2 3 4 5 |
| 2 3 4 5 6 7 8 | 6 7 8 9 10 11 12 | 6 7 8 9 10 11 12 |
| 9 10 11 12 13 14 15 | 13 14 15 16 17 18 19 | 13 14 15 16 17 18 19 |
| 16 17 18 19 20 21 22 | 20 21 22 23 24 25 26 | 20 21 22 23 24 25 26 |
| 23 24 25 26 27 28 29 | 27 28 | 27 28 29 30 31 |
| 30 31 | | |

| APRIL | MAY | JUNE |
|---|---|---|
| S M T W T F S | S M T W T F S | S M T W T F S |
| 1 2 | 1 2 3 4 5 6 7 | 1 2 3 4 |
| 3 4 5 6 7 8 9 | 8 9 10 11 12 13 14 | 5 6 7 8 9 10 11 |
| 10 11 12 13 14 15 16 | 15 16 17 18 19 20 21 | 12 13 14 15 16 17 18 |
| 17 18 19 20 21 22 23 | 22 23 24 25 26 27 28 | 19 20 21 22 23 24 25 |
| 24 25 26 27 28 29 30 | 29 30 31 | 26 27 28 29 30 |

| JULY | AUGUST | SEPTEMBER |
|---|---|---|
| S M T W T F S | S M T W T F S | S M T W T F S |
| 1 2 | 1 2 3 4 5 6 | 1 2 3 |
| 3 4 5 6 7 8 9 | 7 8 9 10 11 12 13 | 4 5 6 7 8 9 10 |
| 10 11 12 13 14 15 16 | 14 15 16 17 18 19 20 | 11 12 13 14 15 16 17 |
| 17 18 19 20 21 22 23 | 21 22 23 24 25 26 27 | 18 19 20 21 22 23 24 |
| 24 25 26 27 28 29 30 | 28 29 30 31 | 25 26 27 28 29 30 |
| 31 | | |

| OCTOBER | NOVEMBER | DECEMBER |
|---|---|---|
| S M T W T F S | S M T W T F S | S M T W T F S |
| 1 | 1 2 3 4 5 | 1 2 3 |
| 2 3 4 5 6 7 8 | 6 7 8 9 10 11 12 | 4 5 6 7 8 9 10 |
| 9 10 11 12 13 14 15 | 13 14 15 16 17 18 19 | 11 12 13 14 15 16 17 |
| 16 17 18 19 20 21 22 | 20 21 22 23 24 25 26 | 18 19 20 21 22 23 24 |
| 23 24 25 26 27 28 29 | 27 28 29 30 | 25 26 27 28 29 30 31 |
| 30 31 | | |

## 2006

| JANUARY | FEBRUARY | MARCH |
|---|---|---|
| S M T W T F S | S M T W T F S | S M T W T F S |
| 1 2 3 4 5 6 7 | 1 2 3 4 | 1 2 3 4 |
| 8 9 10 11 12 13 14 | 5 6 7 8 9 10 11 | 5 6 7 8 9 10 11 |
| 15 16 17 18 19 20 21 | 12 13 14 15 16 17 18 | 12 13 14 15 16 17 18 |
| 22 23 24 25 26 27 28 | 19 20 21 22 23 24 25 | 19 20 21 22 23 24 25 |
| 29 30 31 | 26 27 28 | 26 27 28 29 30 31 |

| APRIL | MAY | JUNE |
|---|---|---|
| S M T W T F S | S M T W T F S | S M T W T F S |
| 1 | 1 2 3 4 5 6 | 1 2 3 |
| 2 3 4 5 6 7 8 | 7 8 9 10 11 12 13 | 4 5 6 7 8 9 10 |
| 9 10 11 12 13 14 15 | 14 15 16 17 18 19 20 | 11 12 13 14 15 16 17 |
| 16 17 18 19 20 21 22 | 21 22 23 24 25 26 27 | 18 19 20 21 22 23 24 |
| 23 24 25 26 27 28 29 | 28 29 30 31 | 25 26 27 28 29 30 |
| 30 | | |

| JULY | AUGUST | SEPTEMBER |
|---|---|---|
| S M T W T F S | S M T W T F S | S M T W T F S |
| 1 | 1 2 3 4 5 | 1 2 |
| 2 3 4 5 6 7 8 | 6 7 8 9 10 11 12 | 3 4 5 6 7 8 9 |
| 9 10 11 12 13 14 15 | 13 14 15 16 17 18 19 | 10 11 12 13 14 15 16 |
| 16 17 18 19 20 21 22 | 20 21 22 23 24 25 26 | 17 18 19 20 21 22 23 |
| 23 24 25 26 27 28 29 | 27 28 29 30 31 | 24 25 26 27 28 29 30 |
| 30 31 | | |

| OCTOBER | NOVEMBER | DECEMBER |
|---|---|---|
| S M T W T F S | S M T W T F S | S M T W T F S |
| 1 2 3 4 5 6 7 | 1 2 3 4 | 1 2 |
| 8 9 10 11 12 13 14 | 5 6 7 8 9 10 11 | 3 4 5 6 7 8 9 |
| 15 16 17 18 19 20 21 | 12 13 14 15 16 17 18 | 10 11 12 13 14 15 16 |
| 22 23 24 25 26 27 28 | 19 20 21 22 23 24 25 | 17 18 19 20 21 22 23 |
| 29 30 31 | 26 27 28 29 30 | 24 25 26 27 28 29 30 |
| | | 31 |

## 2007

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | | | |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 | | | | |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

## 2008

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 | | | | | |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | | | |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | | | | | |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 | | |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 | | | | | | |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | | | | |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 | |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | | | | | | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | | | | | | |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 | | | |



# Exhibit T



*Supplemental
Agreement*

Covering

**PROFIT SHARING
PLAN**

Exhibit F

to

AGREEMENT

between

DELPHI CORPORATION

and

IUE-CWA

dated

November 16, 2003

# *Supplemental Agreement*

Covering

## PROFIT SHARING PLAN

**Exhibit F**

**to**

**AGREEMENT**

**between**

**DELPHI CORPORATION**

**and**

**IUE-CWA**

**dated**

**November 16, 2003**

# TABLE OF CONTENTS

|  |  | Page No. |
|---|---|---|
| INDEX TO EXHIBITS F AND F-1 | | (iv) |
| Section 1. | Establishment of Plan | (1) |
| Section 2. | Administration | (2) |
| Section 3. | Non-Applicability of Collective Bargaining Agreement Grievance Procedure | (3) |
| Section 4. | Governmental Rulings | (4) |
| Section 5. | Recovery of Overpayments | (5) |
| Section 6. | Duration of Agreement | (5) |
| EXHIBIT F-1- PROFIT SHARING PLAN | | 1 |
| Article I | Establishment and Effective Date of Profit Sharing Plan | 3 |
| 1.01 | Establishment of Plan | 3 |
| 1.02 | Effective Date of Amended Plan | 3 |
| Article II | Definition of Terms | 3 |
| 2.01 | Administrator | 3 |
| 2.02 | Associate | 3 |
| 2.03 | Compensated Hours | 4 |
| 2.04 | Consolidated Subsidiary | 5 |
| 2.05 | Corporation | 5 |
| 2.06 | Domestic | 5 |
| 2.07 | Employee | 6 |
| 2.08 | Investment | 7 |
| 2.09 | Non-Consolidated Subsidiary | 7 |
| 2.10 | Participant | 7 |
| 2.11 | Plan | 8 |
| 2.12 | Plan Year | 8 |
| 2.13 | Profit Sharing Amount | 8 |
| 2.14 | Profits | 8 |

# TABLE OF CONTENTS (Cont'd.)

|  |  | Page No. |
|---|---|---|
| 2.15 | Sales and Revenues | 8 |
| 2.16 | Subsidiary | 8 |
| 2.17 | Total Profit Share | 9 |
| 2.18 | U.S. Operations | 9 |
| **Article III** | **Enrollment** | 10 |
| 3.01 | Enrollment | 10 |
| **Article IV** | **Allocation and Distribution** | 10 |
| 4.01 | Allocation of the Total Profit Share to this Plan | 10 |
| 4.02 | Allocation of Profit Sharing Amount to Participants | 11 |
| 4.03 | When Profit Sharing Amounts are Allocated and Distributed | 11 |
| 4.04 | To Whom Profit Sharing Amounts are Distributed | 13 |
| 4.05 | Overpayments and Underpayments | 13 |
| 4.06 | Benefit Drafts Not Presented | 14 |
| **Article V** | **Other Provisions** | 15 |
| 5.01 | Designation of Beneficiaries in Event of Death | 15 |
| **Article VI** | **Administration** | 15 |
| 6.01 | Administrative Responsibility | 15 |
| 6.02 | Certification by Independent Certified Public Accountants | 16 |
| 6.03 | Administrative Expenses | 16 |
| 6.04 | Non-Assignability | 16 |
| 6.05 | Incapacity | 17 |
| 6.06 | Notice of Denial | 17 |

(ii)

# TABLE OF CONTENTS (Cont'd.)

|  |  | Page No. |
|---|---|---|
| **Article VII** | **Amendment, Modification, Suspension, or Termination** | 17 |
| 7.01 | Amendment, Modification Suspension, or Termination | 17 |
| Letter Agreements — | Paragraph 92 Leave | 19 |
|  | — Union Reports | 21 |
|  | — FASB | 25 |
|  | — Misc. (Benefits Training and Education) | 27 |
|  | — Misc. (Improving Benefits Service through Technology) | 29 |

# INDEX TO

EXHIBIT F    —2003 Supplemental Agreement Between
Delphi Corporation and the IUE-CWA
(Profit Sharing Plan)

EXHIBIT F-1 — Profit Sharing Plan

|  | Article | Section | Page |
|---|---|---|---|
| **ADMINISTRATION** | | | |
| Back Pay Awards . . . . . . . . . . Ex. F | | 2 | (2) |
| Certification by Certified | | | |
| Public Accountants . . . . . . . . | VI | 6.02 | 16 |
| Responsibility for . . . . . . . . . . | VI | 6.01 | 15 |
| Results of Review . . . . . . . . . . Ex. F | | 2 | (2) |
| **ADMINISTRATOR** | | | |
| Definition of . . . . . . . . . . . . . . | II | 2.01 | 3 |
| **ALLOCATIONS** | | | |
| Profit Sharing Amount to | | | |
| Participants . . . . . . . . . . . . . . | IV | 4.02 | 11 |
| Total Profit Share to this Plan . | IV | 4.01 | 10 |
| To Whom Distributed . . . . . . . | IV | 4.04 | 13 |
| When Profit Sharing Amounts are | | | |
| Allocated . . . . . . . . . . . . . . . . | IV | 4.03 | 11 |
| **AMENDMENT, MODIFICATION,** | | | |
| **SUSPENSION, OR** | | | |
| **TERMINATION** . . . . . . . . . . . . . . | VII | 7.01 | 17 |
| **ASSOCIATE** | | | |
| Definition of . . . . . . . . . . . . . . | II | 2.02 | 3 |
| **BACK PAY AWARDS** . . . . . . . . . Ex. F | | 2 | (2) |
| **BENEFICIARIES** | | | |
| Designation of . . . . . . . . . . . . | V | 5.01 | 15 |
| Payment to . . . . . . . . . . . . . . . . | IV | 4.04 | 13 |
| **BENEFIT DRAFTS NOT** | | | |
| **PRESENTED** . . . . . . . . . . . . . . . . | IV | 4.06 | 14 |
| **CERTIFICATION BY** | | | |
| **INDEPENDENT CERTIFIED** | | | |
| **PUBLIC ACCOUNTANTS** . . . . . | VI | 6.02 | 16 |
| **CLAIM DENIAL** | | | |
| Information to Union . . . . . . . . Ex. F | | 2 | (2) |
| Notice of . . . . . . . . . . . . . . . . . | VI | 6.06 | 17 |

|  | Article | Section | Page |
|---|---|---|---|
| Review of. . . . . . . . . . . . . . . | VI | 6.06 | 17 |
| Time Limit for Review . . . . . . | VI | 6.06 | 17 |
| **COMPENSATED HOURS** | | | |
| Definition of . . . . . . . . . . . | II | 2.03 | 4 |
| Limitations. . . . . . . . . . . . . | II | 2.03 | 4 |
| Local Union Leave . . . . . . . . . | Ex. F | 2 | (2) |
| Workers' Compensation. . . . . . | II | 2.03 | 4 |
| **CONSOLIDATED SUBSIDIARY** | | | |
| Definition of . . . . . . . . . . . . | II | 2.04 | 5 |
| **CORPORATION** | | | |
| Definition of . . . . . . . . . . . . | II | 2.05 | 5 |
| **DEFINITIONS** . . . . . . . . . . . . . . | II | — | 3 |
| **DISAGREEMENTS BETWEEN PARTIES**. . . . . . . . . . . . . . . . . . . | Ex. F | 3 | (4) |
| **DISTRIBUTION OF PROFIT SHARING AMOUNTS** | | | |
| Deferral to Personal Savings Plan. . . . . . . . . . . . . . . . . . . | IV | 4.03 | 11 |
| To Whom. . . . . . . . . . . . . . . . | IV | 4.04 | 13 |
| When Distributed. . . . . . . . . . | IV | 4.03 | 11 |
| Withholding Tax . . . . . . . . . . . | IV | 4.03 | 11 |
| **DOMESTIC** | | | |
| Definition of . . . . . . . . . . . . | II | 2.06 | 5 |
| **DURATION OF AGREEMENT**. . | Ex. F | 6 | (5) |
| **EFFECTIVE DATE OF THE PLAN** . . . . . . . . . . . . . . . . . . . | I | 1.02 | 3 |
| **ELIGIBILITY**. . . . . . . . . . . . . . . | III | 3.01 | 10 |
| **EMPLOYEE** | | | |
| Definition of . . . . . . . . . . . . | II | 2.07 | 6 |
| **ENROLLMENT**. . . . . . . . . . . . . | III | 3.01 | 10 |
| **ESTABLISHMENT OF PLAN** | | | |
| Board of Directors' Approval . | Ex. F | 1 | (1) |
| **GOVERNMENTAL RULINGS** | | | |
| Department of Labor . . . . . . . . | Ex. F | 4 | (4) |
| **GRIEVANCE PROCEDURE** | | | |
| Non-Applicability of . . . . . . . . | Ex. F | 3 | (3) |

(v)

| | Article | Section | Page |
|---|---|---|---|
| IMPARTIAL PERSON . . . . . . . . . | Ex. F | 3 | (4) |
| INCAPACITY . . . . . . . . . . . . . . . | VI | 6.05 | 17 |
| NON-CONSOLIDATED SUBSIDIARY | | | |
| Definition of . . . . . . . . . . . . . | II | 2.09 | 7 |
| NOTICE OF DENIAL . . . . . . . . . | VI | 6.06 | 17 |
| OVERPAYMENTS AND UNDERPAYMENTS | | | |
| Deduction from Wages and Benefits . . . . . . . . . . . . . . . . . | IV | 4.05 | 13 |
| Limitations on Recoveries . . . . | IV | 4.05 | 13 |
| Notice to Employee . . . . . . . . . | Ex. F | 5 | (5) |
| Payment of Underpayment . . . | IV | 4.05 | 13 |
| Recovery from Monies Payable . . . . . . . . . . . . . . . . | Ex. F | 5 | (5) |
| PARTICIPANT | | | |
| Definition of . . . . . . . . . . . . . | II | 2.10 | 7 |
| PLAN | | | |
| Definition of . . . . . . . . . . . . . | II | 2.11 | 8 |
| PLAN YEAR | | | |
| Definition of . . . . . . . . . . . . . | II | 2.12 | 8 |
| PROFIT SHARING AMOUNT | | | |
| Definition of . . . . . . . . . . . . . | II | 2.13 | 8 |
| PROFITS | | | |
| Definition of . . . . . . . . . . . . . | II | 2.14 | 8 |
| SALES AND REVENUES | | | |
| Definition of . . . . . . . . . . . . . | II | 2.15 | 8 |
| SUBSIDIARY | | | |
| Definition of . . . . . . . . . . . . . | II | 2.16 | 8 |
| TOTAL PROFIT SHARE | | | |
| Definition of . . . . . . . . . . . . . | II | 2.17 | 9 |
| UNION LEAVES | | | |
| Compensated Hours . . . . . . . . | Ex. F | 2 | (2) |
| U.S. OPERATIONS | | | |
| Definition of . . . . . . . . . . . . . | II | 2.18 | 9 |

**EXHIBIT F**

**SUPPLEMENTAL AGREEMENT**

**(Delphi Profit Sharing Plan)**

# SUPPLEMENTAL AGREEMENT
## (DELPHI PROFIT SHARING PLAN)

On this <u>16th</u> day of <u>November, 2003</u>, Delphi Corporation or Delphi, hereinafter referred to as the Corporation, and the <u>IUE-CWA, the Industrial Division of the Communications Workers of America</u>, AFL-CIO, <u>CLC</u>, hereinafter referred to as the Union, on behalf of the employees covered by the Collective Bargaining Agreement of which this Supplemental Agreement becomes a part, agree as follows:

## SECTION 1. Establishment of Plan

Subject to the approval of its Board of Directors, the Corporation will establish an amended Profit Sharing Plan for Hourly-Rate Employees in the United States, hereinafter referred to as the "Plan," a copy of which is attached hereto as Exhibit F-1 and made a part of this Agreement to the extent applicable to the employees represented by the Union and covered by this Agreement as if fully set out herein, modified and supplemented, however, by the provisions hereinafter. In the event of any conflict between the provisions of the Plan and the provisions of this Agreement, the provisions of this Agreement will supersede the provisions of the Plan to the extent necessary to eliminate such conflict.

In the event that the Plan is not approved by the Board of Directors of the Corporation, the Corporation, within 30 days after any such disapproval, will give written notice thereof to the Union and this Agreement shall thereupon have no force or effect. In that event, the matters covered by this Agreement shall be the subject of further negotiation between the Corporation and the Union.

(1)

F. Sect. 2 (a)

## SECTION 2. Administration

(a) Notwithstanding any provision of the Plan, (1) any person who receives a back pay award applicable to an earlier Plan Year as the result of a grievance settlement shall receive after such grievance settlement a payment for the Plan Year to which such back pay award applies in an amount equal to the Participant's Profit Sharing Amount that would have been payable for such earlier Plan Year, based on the Compensated Hours received by such person for such Plan Year, less any Profit Sharing Amount paid previously to such person for such Plan Year, (2) the amount of such payments shall be deducted from the Total Profit Share otherwise allocated to the Plan for the first Plan Year ending after the date of such grievance settlement in which a Total Profit Share is achieved, and (3) any Compensated Hours resulting from a back pay award shall be included as Compensated Hours only for the Plan Year for which the back pay is awarded.

(b) The Union shall be informed of the results of a review of a request by a Participant or beneficiary of a Participant pursuant to Article VI, Section 6.06 of the Plan, provided the Participant is represented by the Union.

(c) Notwithstanding Article II, Section 2.03 of the Plan, and solely for the purpose of determining the amount of any distribution under this Plan, Compensated Hours shall be credited to an employee who is on a leave of absence under Paragraph 92 of the National Agreement if the leave was granted for the purpose of permitting the employee to engage in the business of, or to work for, the Local Union and provided further that each such employee is involved in the in-plant administration of the provisions of such National Agreement. An employee eligible for Compensated Hours pursuant to this provision shall be

(2)

F, Sect. 2 (c)

credited with up to 40 hours for each calendar week while on such leave, subject to the annual maximum specified in Article II, Section 2.03 of the Plan, provided the employee meets the requirements of the leave.

## SECTION 3. Non-Applicability of Collective Bargaining Agreement Grievance Procedure

(a)  No matter respecting the Plan as supplemented by this Agreement or any difference arising thereunder shall be subject to the grievance procedure established in the Collective Bargaining Agreement between the Corporation and the Union.

(b)  All computations made by the Corporation to determine Sales and Revenues and Profits (as defined in Article II, Sections 2.15 and 2.14 of the Plan, respectively) when certified by the opinion of a firm of independent certified public accountants (selection of which shall be made by the Corporation and must be approved by the shareholders of the Corporation) as being in accordance with generally accepted accounting principles, and all calculations made by the Corporation to determine the Total Profit Share (as defined in Article II, Section 2.17 of the Plan) when certified by the opinion of the aforementioned independent certified public accountants as being in accordance with the provisions of the Plan, shall be final and binding on the Union, Participants, beneficiaries, and the Corporation.

(c)  The Corporation will respond as soon as practicable to reasonable requests from the Union for information regarding the computations made by the Corporation of the Total Profit Share and allocation of the Total Profit Share among plans.

(d)  The parties agree to refer any disagreements over the interpretation of the terms of this Agreement or the Plan to a mutually acceptable impartial person for

(3)

F, Sect. 3 (d)

resolution. The resolution of any such disagreement by such impartial person shall be final and binding upon the Union, Participants, beneficiaries, and the Corporation. Such impartial person shall not, however, have any authority to determine accounting policies used in the computation of Sales and Revenues, Profits, or the Total Profit Share, or to change the dollar amount of Sales and Revenues, Profits, or the Total Profit Share. The determination of accounting policies (e.g., depreciation, LIFO, expense allocation, etc.), so long as they are within generally accepted accounting principles, remains within the sole discretion of the Corporation, and such determination of accounting policies shall be final and binding upon the Union, Participants, and beneficiaries. The compensation of the impartial person, which shall be in such amount and on such basis as may be determined by the Corporation and the Union, shall be shared equally by the Corporation and the Union.

## SECTION 4. Governmental Rulings

(a) The Plan, as set forth in Exhibit F-1, and the Plan as it may be supplemented by superseding provisions of this Agreement, are contingent upon and subject to the Corporation obtaining and retaining from the United States Department of Labor a ruling, satisfactory to the Corporation, holding that no part of any payments made from the Plan are included for purposes of the Fair Labor Standards Act or under comparable state legislation in the regular rate of any Participant.

(b) The Corporation shall apply promptly to the appropriate agency(ies) for the ruling described in subsection (a) of this Section.

(c) Notwithstanding any other provisions of this Agreement or the Plan, the Corporation, with the consent of the Chairman of the Delphi-IUE-CWA

(4)

F, Sect. 4 (c)

Automotive Conference Board, may, during the term of this Agreement, make revisions in the Plan not inconsistent with the purposes, structure, and basic provisions thereof which shall be necessary to obtain or retain the ruling referred to in subsection (a) of this Section 4. Any such revisions shall adhere as closely as possible to the language and intent of provisions outlined in this Agreement and the Plan.

## SECTION 5. Recovery of Overpayments

If it is determined that any monies paid to an employee under the Delphi-IUE-CWA National Agreement and any Exhibits thereto should not have been paid or should have been paid in a lesser amount, written notice thereof shall be given to such employee, and the employee shall repay the amount of the overpayment.

If the employee fails to repay such amount of overpayment promptly, the Corporation shall recover the amount of such overpayment immediately from any monies then payable, or which may become payable, to the employee in the form of wages or benefits payable under the Delphi-IUE-CWA National Agreement and any Exhibits thereto; except that, not more than 50% of any Profit Sharing Amount to which a Participant otherwise may be entitled shall be subject to any such recovery.

## SECTION 6. Duration of Agreement

This Agreement and Plan as modified and supplemented by this Agreement shall continue in effect until the termination of the Collective Bargaining Agreement of which this is a part.

Notwithstanding termination of this Agreement and Plan, any Total Profit Share that otherwise would accrue for calendar year 2007 will be allocated, distributed, and administered in accordance with the provisions of this Agreement and the Plan.

(5)

F, Sect. 6

In witness hereof, the parties hereto have caused this
Agreement to be executed the day and year first above
written.

| IUE-CWA, the Industrial Division of the Communications Workers of America, AFL-CIO, CLC | Delphi Corporation |
|---|---|
| EDWARD L. FIRE | J. T. BATTENBERG, III |
| JAMES D. CLARK | ALAN DAWES |
| MICHAEL J. BINDAS | MARK R. WEBER |
| DENNY THOMAS | DAVE WOHLEEN |
| ROBERT L. SUTTON | DON RUNKLE |
| VIRGINIA L. BAILEY | RODNEY O'NEAL |
| NICK BORDER | KEVIN M. BUTLER |
| STEVE LYKINS | JIM SPENCER |
| HENRY REICHARD | GUY HACHEY |
| WILLIAM C. THORPE | JIM BERTRAND |
| STEPHEN E. TRENT | RALPH HANDLEY |
| TODD M. VIARS | STEVEN L. GEBBIA |
| ISA SHABAZZ | DARRELL E. KIDD |
| EDWARD KARECKI | BERNARD J. QUICK |
| ANTHONY G. RUSSELL | MARK CASHDOLLAR |
| AARON C. JAMES | ROB GERLING |
| LARRY PHILLIPS | ED GOETTL |
| RONNIE L. HARDY | JUDY MATZELLE |
| GARY REISER | D. SCOTT MITCHELL |
| DONALD O. ARBOGAST | M. BETH SAX |
| ZEBTON WELLS | FRANCIS KUPLICKI |
| TEDDY WASHINGTON | SCOTT HARRIS |
| ALVIN LYONS | DAVID BOOKIN |
| B. KEITH HAMMOND | MICHAEL S. FLIGSTEIN |
| DAVID HEIZER | THOMAS SMITH |
| RON GILVIN | DALE JOHNSON |
| MICHAEL C. PALMER | DAVE CAIROLI |
| ERSKINE G. PAINTER V | SALVATORE GALANTE, M.D. |
| TODD T. WHARTON | KARL BOSSUNG |
| | RICH BALGENORTH |
| | STEPHANIE DAMERON-CLARK |
| | JOHN L. DeMARCO |
| | DEBORAH DOUGLAS |
| | PAT McDONALD |
| | BRENDA PAGE |
| | JAMES M. PETRIE |
| | DAVE PETTYES |

(7)

| IUE-CWA, the Industrial Division of the Communications Workers of America, AFL-CIO, CLC | Delphi Corporation |
|---|---|
| | CHARLES RUCKER |
| | SHARON SMITH |
| | RICHARD F. SOMOGYI |
| | BRIAN STUDER |
| | MARK WINFIELD |
| | KAREN ZIMMER |
| | RENEE ATKINSON |
| | CHRISTINE DARBY |
| | SHARON DELEZENNE |
| | DEANNA DOROGY |
| | DEBORAH FRANCE |
| | LAURA HARDY |
| | BEVERLY HUMPHREY |
| | NANCY JULIUS |
| | LESLEY MARCOTT |
| | MARK PIERCE |
| | DENNIS RIPPEL |
| | LUCE RUBIO |
| | MICHELLE TRIMBLE |
| | LAWANDA WHITE |
| | MELINDA WILEY |
| | CRISTINA ZATEK |

| IUE-CWA, the Industrial Division of the Communications Workers of America, AFL-CIO, CLC | Delphi Corporation |
|---|---|
| | HARRY W. WAGNER II |
| | JIM FENNEL |
| | MARLANE BENGRY |
| | MELVIN RYAN |
| | ALLAN WICHMANN |
| | STEVEN OSTASIEWSKI |
| | TOM MUNLEY |
| | MATTHEW CHAFFIN |
| | LYNN MOODY |
| | LARRY JOHNSON |
| | ROBERT MERKICH |
| | CURTIS WEAKLEY |
| | GWENDOLYN GAYDEN |
| | DAPHNE HENRY |
| | EMILEE A. CHAHINE |
| | DIANE A. PROKOP |

(9)

(10)

**EXHIBIT F-1**

**THE DELPHI**

**PROFIT SHARING PLAN**

**FOR HOURLY-RATE EMPLOYEES**

**IN THE UNITED STATES**

2

# ARTICLE I

# ESTABLISHMENT AND EFFECTIVE DATE OF PROFIT SHARING PLAN

## 1.01  Establishment of Plan

Delphi Corporation hereby establishes The Delphi Profit Sharing Plan for Hourly-Rate Employees in the United States (hereinafter referred to as the Plan).

## 1.02  Effective Date of the Plan

The Plan shall become effective January 1, <u>2004</u>, except as otherwise may be provided herein.  The <u>Delphi</u> Agreement dated <u>November 14, 1999</u> shall remain in effect until December 31, <u>2003</u>, and shall govern distribution in <u>2004</u>, based on any profits in <u>2003</u>.

# ARTICLE II

# DEFINITION OF TERMS

The following definitions will apply to all words and phrases capitalized in the text which follows.

## 2.01  "Administrator"

Administrator means Delphi Corporation.  The Administrator's address is 5825 Delphi Drive, Mail Code 480-410-104, Troy, MI 48098.

## 2.02  "Associate"

Associate means a non-consolidated joint venture in which the capital investment of the Corporation, either directly or indirectly, is between 20% and 50%, inclusive.

3

Art. II, 2.03(a)

## 2.03 "Compensated Hours"

(a)  Compensated Hours means all hours, not in excess of 1,850 hours in any Plan Year, for which a Participant who is eligible to receive a distribution for a Plan Year received pay from the Corporation with respect to hourly-rate employment in U.S. Operations during the Plan Year on or after an Employee's date of enrollment. The term shall include hours for which a Participant who is eligible to receive a distribution for a Plan Year receives base pay, overtime (with each hour paid at premium rates to be counted as one hour), vacation entitlement, holiday pay, bereavement pay, jury duty pay, short-term military duty pay, and call-in pay; provided, however, no hours shall be duplicated because of payment under more than one category. The term shall not include hours compensated in any other form (e.g., Cost-of-Living Allowance, night-shift premium, seven-day premium, incentive pay, moving allowance, supplemental unemployment benefit payments under the Corporation's Supplemental Unemployment Benefit Plan [including automatic short week benefit payments] or Guaranteed Income Stream Benefit Plan, suggestion awards, tool allowances, imputed income, sickness and accident benefits, extended disability benefits, and allocations under this Plan).

(b)  The term Compensated Hours shall include, for a Participant who otherwise is eligible to receive a distribution for a Plan Year, 40 hours for each complete calendar week during such Plan Year that the Participant is on an approved sick leave of absence and for such complete calendar week has received Workers' Compensation payments from the Corporation as the result of a totally disabling occupational injury or disease under any Workers' Compensation law or act or any occupational disease, law, or act, provided:

4

(i)    the Participant otherwise would have been scheduled to work all hours during such complete calendar week(s); and

(ii)    the Participant is actively at work for the Corporation during at least one complete calendar week in the Plan Year; and

(iii)    during the Plan Year, or prior thereto, the Corporation has for such calendar week(s) either voluntarily paid Workers' Compensation benefits or failed to appeal the adverse determination of an applicable state agency or court awarding payment of Workers' Compensation benefits.

A Participant shall not receive credit for Compensated Hours applicable to any prior Plan Year as the result of a decision of an applicable state agency or court awarding benefits retroactively for periods during any prior Plan Year.

## 2.04 "Consolidated Subsidiary"

Consolidated Subsidiary means, for any Plan Year, any Subsidiary, the accounts of which are consolidated with those of the Corporation in the Statement of Consolidated Income and Consolidated Balance Sheet of the Corporation for such Plan Year.

## 2.05 "Corporation"

Corporation means Delphi Corporation.

## 2.06 "Domestic"

Domestic means, with respect to any Consolidated Subsidiary or Non-Consolidated Subsidiary, any such Subsidiary that is incorporated and derives more than 50% of its revenue from activities carried on or located within the United States.

5

Art. II, 2.07(a)

## 2.07 "Employee"

Employee means

(a) any person regularly employed in the United States by U.S. Operations of the Corporation on an hourly-rate basis, including:

(1) hourly-rate persons employed on a full-time basis;

(2) part-time hourly-rate employees who, on a regular and continuing basis, perform jobs having definitely established working hours, but the complete performance of which requires fewer hours of work than the regular workweek, provided the services of such employees are normally available for at least half of the employing unit's regular workweek;

(b) The term "Employee" shall not include employees represented by a labor organization which has not signed an agreement making the Plan applicable to such employees.

(c) The term "Employee" shall not include leased employees as defined under Section 414(n) of the Internal Revenue Code.

(d) The term "employee" shall not include contract employees, bundled services employees, consultants, or other similarly situated individuals, or individuals who have represented themselves to be independent contractors.

The following classes of individuals are ineligible to participate in this Plan, regardless of any other Plan terms to the contrary, and regardless of whether the individual is a common-law employee of the Corporation:

(1) Any individual who provides services to the Corporation where there is an agreement with a separate company under which the services are provided. Such

6

Art. II, 2.07(d)(1)

individuals are commonly referred to by the Corporation as "contract employees" or "bundled-services employees";

(2) Any individual who has signed an independent contractor agreement, consulting agreement, or other similar personal service contract with the Corporation;

(3) Any individual who both (a) is not included in any represented bargaining unit and (b) who the Corporation classifies as an independent contractor, consultant, contract employee, or bundled-services employee during the period the individual is so classified by the Corporation.

The purpose of this provision is to exclude from participation all persons who may actually be common-law employees of the Corporation, but who are not paid as though they were employees of the Corporation, regardless of the reason they are excluded from the payroll, and regardless of whether that exclusion is correct.

## 2.08 "Investment"

Investment means a company in which the Corporation has less than a 20% ownership.

## 2.09 "Non-Consolidated Subsidiary"

Non-Consolidated Subsidiary means, for any Plan Year, any Subsidiary which is not a Consolidated Subsidiary for such Plan Year.

## 2.10 "Participant"

Participant means an Employee who, at any time during a Plan Year, has been enrolled in the Plan in accordance with Article III and is eligible to receive a Profit Sharing Amount for such Plan Year.

7

Art. II, 2.11

## 2.11 "Plan"

Plan means The Delphi Profit Sharing Plan for Hourly-Rate Employees in the United States.

## 2.12 "Plan Year"

Plan Year means the 12-month period beginning on January 1 and ending on December 31.

## 2.13 "Profit Sharing Amount"

Profit Sharing Amount means the portion of the Total Profit Share allocated to a Participant.

## 2.14 "Profits"

Profits means income earned by U.S. Operations before income taxes and "extraordinary" items (with "extraordinary" defined as under generally accepted accounting principles). Profits are before any profit sharing charges are deducted.

Profits also are before incentive program charges for U.S. Operations, including (i) Delphi Corporation, (ii) Consolidated Subsidiaries, and (iii) Non-Consolidated Subsidiaries. Excluded from Profits are any profits (or losses) derived from non-U.S. Subsidiaries of U.S. Operations and any dividends received from non-U.S. Subsidiaries. Income from non-consolidated U.S. Operations shall be included on an after-tax basis.

## 2.15 "Sales and Revenues"

Sales and Revenues means the total net sales and revenues of Delphi U.S. Operations for such Plan Year.

## 2.16 "Subsidiary"

Subsidiary means a corporation, a majority of the voting stock of which is owned, directly or indirectly, by the Corporation.

8

Art. II, 2.17

### 2.17 "Total Profit Share"

Total Profit Share means an obligation of the Corporation for any Plan Year in an amount equal to the sum of:

   **(a)** 6% of the portion of the Profits for such Plan Year which exceeds 0.0% of Sales and Revenues for such Plan Year but does not exceed 1.8% of Sales and Revenues;

   **(b)** 8% of the portion of the Profits for such Plan Year which exceeds 1.8% of Sales and Revenues for such Plan Year but does not exceed 2.3% of Sales and Revenues;

   **(c)** 10% of the portion of the Profits for such Plan Year which exceeds 2.3% of Sales and Revenues for such Plan Year but does not exceed 4.6% of Sales and Revenues;

   **(d)** 14% of the portion of the Profits for such Plan Year which exceeds 4.6% of Sales and Revenues for such Plan Year but does not exceed 6.9% of Sales and Revenues; and

   **(e)** 17% of the portion of the Profits for such Plan Year which exceeds 6.9% of Sales and Revenues for such Plan Year.

In any Plan Year in which a Total Profit Share is achieved, the minimum Total Profit Share will be $50 multiplied by the total number of participants eligible for a distribution for the Plan Year under this Plan or under a similar plan established by the Corporation or would be eligible under a similar plan.

### 2.18 "U.S. Operations"

U.S. Operations means all operations of the Corporation and its Domestic Subsidiaries, both consolidated and non-consolidated, in the financial statements included in

9

Art. II, 2.18

the Delphi Annual Report that carry on business primarily in the United States. The term excludes (1) the following U.S. incorporated subsidiaries and their employees whose operations are primarily involved in business outside the United States: Delphi Automotive Systems (Holdings), Inc.; Delphi Automotive Systems International, Inc.; Delphi International Services, Inc. (Delaware); Delphi Corporation (Delaware); and any other subsidiaries that may qualify in the future, (2) Associates, and (3) Investments.

## ARTICLE III

## ENROLLMENT

### 3.01  Enrollment

An Employee will be enrolled in the Plan on the later of (a) the date upon which the employee meets the Plan definition of Employee, Section 2.07, or (b) the date on which this Plan first becomes applicable to the unit in which such person is employed, provided the person remains employed on such date.

## ARTICLE IV

## ALLOCATION AND DISTRIBUTION

### 4.01  Allocation of the Total Profit Share to this Plan

The Total Profit Share for the Plan Year is to be allocated to this Plan in the proportion that (a) the number of Participants in this Plan entitled to a distribution for the Plan Year bears to (b) the total number of all hourly-rate employees and non-executive salaried employees of the U.S. Operations and other persons who are entitled to a distribution for the Plan Year under this Plan or under a similar plan or would be entitled under a similar plan.

10

## 4.02  Allocation of Profit Sharing Amount to Participants

The portion of the Total Profit Share for the Plan Year allocated to this Plan in accordance with Section 4.01 will be allocated to each Participant entitled to a distribution for the Plan Year in the proportion that (a) the Participant's Compensated Hours for the Plan Year bears to (b) the total Compensated Hours of all Participants in this Plan entitled to a distribution for the Plan Year.

## 4.03  When Profit Sharing Amounts are Allocated and Distributed

(a)  Commencing with the 2003 Plan Year and as soon as administratively feasible, but in no event later than the third month following the end of the Plan Year, the Profit Sharing Amount will be allocated and distributed to each eligible Participant pursuant to this Article IV.  The Corporation shall deduct from the amount of any such distribution to a Participant (or beneficiary) any amount required to be deducted, by reason of any law or regulation, for payment of taxes or other payments to any federal, state, or local government.  Each distribution shall be accompanied by a statement showing the computation of such Participant's Profit Sharing Amount.  Withholding tax obligations of the Corporation with respect to any such distribution will be satisfied as determined by the Administrator of the Plan.  In determining the amount of any applicable tax, the computation of which takes personal exemptions into account, the Corporation shall be entitled to rely on the official form filed with the Corporation for purposes of income tax withholding.  No interest shall be payable with respect to any such distribution.

(b)  In lieu of receiving a distribution in cash pursuant to subsection (a) of this Section 4.03, each

11

Art. IV, 4.03(b)

Participant entitled to a distribution for any Plan Year that is in excess of the minimum Total Profit Share as defined in Article II, Section 2.17, other than a Participant whose employment terminated prior to distribution of such Profit Sharing Amounts, may elect to have the Corporation contribute to the Participant's account under The Delphi Personal Savings Plan for Hourly-Rate Employees in the United States an amount up to 100%, in multiples of 1% of such distribution, provided such amount is not in excess of the maximum amount permitted under Section 415 of the Code. Such election shall be filed at such time and in such manner as the Administrator shall determine and will remain continuously in effect until changed by the Employee. If the Administrator does not receive an election from a Participant on or before the date established by the Administrator for submission of such elections for the applicable Plan Year, the Participant's Profit Sharing Amount for the Plan Year shall be distributed to the Participant.

(c) Any amounts elected to be deferred by a Participant pursuant to Section 4.03(b) of this Article IV which cannot be deferred as a result of the application of Section 415 of the Code shall be distributed to the Participant.

(d) Notwithstanding Section 6.04 of the Plan, in the event the Corporation is legally obligated to pay a tax levy, child support, or similar legal obligations to any third party, no election made by the Participant to defer a Profit Sharing Amount pursuant to Section 4.03(b) shall be effective. To the extent necessary and/or available, the legally required payment will be deducted from the Participant's Profit Sharing Amount and paid to the applicable third party.

12

## 4.04 To Whom Profit Sharing Amounts are Distributed

In addition to Participants who are on the active roll at the end of the Plan Year, the Profit Sharing Amount for the Plan Year, if any, will be paid to otherwise eligible (1) Participants on layoff or leave of absence, including sick leave, at the end of the Plan Year, (2) Participants who retired during the Plan Year, and (3) beneficiaries of Participants who died during the Plan Year. Employees who terminated during the Plan Year for any reason other than death, retirement, or any voluntary termination of employment program shall not be eligible for a distribution for the Plan Year. The amount of any such distribution shall be determined in accordance with Section 4.02 of this Article IV.

Distribution of a Profit Sharing Amount will be made only to a Participant. However, if the Participant is deceased at the time of distribution, the distribution will be made to the beneficiary or beneficiaries designated by the Participant pursuant to Article V.

## 4.05 Overpayments and Underpayments

(a)  No amount allocated to a Participant entitled to a distribution for a Plan Year under this Plan may be increased or decreased in a subsequent Plan Year except in the event it shall be determined an error in excess of $3 was made in the computation of any Profit Sharing Amount for any Plan Year.  Such error shall be handled as follows:

(i)  If such Participant's Profit Sharing Amount (correctly determined) was greater than the amount paid to such Participant by an amount in excess of $3, the deficiency shall be paid to such Participant within 60 days after such determination.

(ii)  If such Participant's Profit Sharing Amount (correctly determined) was less than the amount paid to

Art. IV, 4.05(a)(ii)

such Participant by an amount in excess of $3, written notice thereof shall be mailed to such Participant receiving such Profit Sharing Amount and the Participant shall return the amount of such overpayment to the Corporation; provided, however, that no such repayment shall be required if notice has not been given within 120 days from the date on which the overpayment was made. If such Participant shall fail to return such amount promptly, the Corporation shall make an appropriate deduction or deductions from any monies then payable, or which may become payable, by the Corporation to the employee in the form of wages or future payments under this Plan; provided, however, that any such deduction shall not exceed $30 from any one paycheck, but any such deduction from subsequent payments under the Plan shall not be limited.

**(b)** The Corporation shall make an appropriate deduction or deductions from any future benefit payment or payments payable to the Participant under this Plan for the purpose of recovering overpayments made to the Participant in the form of wages or under any Delphi benefit plan. Amounts so deducted shall be remitted to the Corporation or the benefit plan, as applicable. The Corporation, by such remittance, shall be relieved of any further liability to the Participant with respect to such payments under this Plan.

## 4.06  Benefit Drafts Not Presented

Unless prevented by law, the amount of any payment made to a Participant under the Plan, but not claimed by theParticipant prior to December 31 of the Plan Year following the date of such payment, shall be added to the portion of the Total Profit Share next allocated to this Plan. In this event, such Participant shall have no further entitlement to such payment.

14

# ARTICLE V

# OTHER PROVISIONS

## 5.01 Designation of Beneficiaries in Event of Death

A Participant shall be deemed to have designated as beneficiary or beneficiaries under this Plan the person or persons who receive the Participant's life insurance proceeds under the Corporation's Life and Disability Benefits Program for Hourly Employees unless such Participant shall have assigned such life insurance, in which case the Profit Sharing Amount will be paid to the estate of the Participant unless such Participant has submitted, in writing, a different beneficiary or beneficiaries to the Plan Administrator.

A beneficiary or beneficiaries will receive, in the event of the Participant's death, all or part of the Profit Sharing Amount of the Participant in accordance with the applicable designation. If the Corporation shall be in doubt as to the right of any beneficiary to receive any Profit Sharing Amount, the Corporation may deliver such Profit Sharing Amount to the estate of the Participant, in which case the Corporation shall not have any further liability to anyone.

# ARTICLE VI

# ADMINISTRATION

## 6.01 Administrative Responsibility

The Corporation will have full power and authority to construe, interpret, and administer this Plan and to pass upon and decide cases presenting claims in conformity with the objectives of the Plan and under such rules as it may establish from time to time. Decision of the Corporation will be final and binding upon any of its employees.

15

Art. VI, 6.02

## 6.02 Certification by Independent Certified Public Accountants

The Corporation will compute Sales and Revenues and Profits (as defined in Article II, Sections 2.15 and 2.14, respectively) in accordance with generally accepted accounting principles and then calculate the Total Profit Share and the allocation of Total Profit Share among plans in accordance with the provisions of this Plan. Such computations and calculations, when certified by the opinion of a firm of independent certified public accountants (selection of which shall be made by the Corporation and must be approved by the shareholders of the Corporation), shall be final and binding on Participants; the collective bargaining representative of such Participants, if any; beneficiaries and the Corporation.

## 6.03 Administrative Expenses

Administrative expenses of the Plan shall be paid by the Corporation.

## 6.04 Non-Assignability

Except as provided in Article IV, Section 4.05, to the extent allowed by applicable law, no right or interest of any Participant under this Plan shall be assignable or transferable, in whole or in part, either directly or by operation of law or otherwise, including, without limitation, by execution, levy, garnishment, attachment, pledge, or in any other manner, but excluding devolution by death or mental incompetency; no attempted assignment or transfer thereof shall be effective; and no right or interest of any Participant under this Plan shall be liable for, or subject to, any obligation or liability of such Participant.

16

### 6.05  Incapacity

If the Administrator deems any person incapable of receiving any distribution to which such person is entitled under this Plan because such person has not yet reached the age of majority, or because of illness, infirmity, mental incompetency, or other incapacity, it may make payment, for the benefit or the account of such incapacitated person, to any person selected by the Administrator whose receipt thereof shall be a complete settlement thereof.  Such payments shall, to the extent thereof, discharge all liability of the Corporation and each other fiduciary with respect to this Plan.

### 6.06  Notice of Denial

The Administrator shall provide adequate notice, in writing, to any Participant or beneficiary whose request for a distribution or for a distribution in a greater amount under this Plan has been denied setting forth the specific reason or reasons for such denial.  The Participant or beneficiary shall be given an opportunity for a full and fair review by the Corporation of the decision denying the request.  The Participant will be given a reasonable period of time, to be established by the Corporation from the date of the notice denying such request, within which to request such review.

## ARTICLE VII

## AMENDMENT, MODIFICATION, SUSPENSION, OR TERMINATION

### 7.01  Amendment, Modification, Suspension, or Termination

The Corporation reserves the right, by and through its Board of Directors, to amend, modify, suspend, or terminate the Plan including specifically the right prior

17

Art. VII, 7.01

to making the allocation of contributions, as provided in
Article IV, to include as Employees for purposes of the
Plan such other employees of the Corporation and its
Domestic Consolidated and Non-Consolidated
Subsidiaries as the Corporation may specify.

18

Paragraph 92 Leave

# DELPHI CORPORATION

_November 16, 2003_

Mr. James D. Clark
Chairman, IUE-CWA
Automotive Conference Board
IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC
2360 West Dorothy Lane, Suite 201
Dayton, Ohio 45439

Attn:    Mr. James D. Clark
         Delphi-IUE-CWA Automotive Conference Board

Dear Mr. Clark:

During the discussions between the parties held in
conjunction with completing the Profit Sharing Plan
language, the Union requested that all employees on
leave under Paragraph 92 of the National Agreement to
engage in the business of, or to work for, the Local
Union should be included as eligible participants under
such Plan. The Corporation pointed out, however, that
certain employees not involved in the in-plant
administration of the National Agreement would not be
included in the Plan and would not receive any
compensated hours under the Plan while on such leave.
Moreover, it is understood that the Local Union will
advise Local Management each year, in December, of

19

Paragraph 92 Leave

the name, Social Security number, and job title of each
such employee therefore not eligible for benefits under
the Profit Sharing Plan.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

IUE-CWA, The Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC

By: James D. Clark

20

# DELPHI CORPORATION

November 16, 2003

Mr. James D. Clark
Chairman, IUE-CWA
Automotive Conference Board
IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC
2360 West Dorothy Lane, Suite 201
Dayton, Ohio 45439

Attn:   Mr. James D. Clark
        Delphi-IUE-CWA Automotive Conference Board

Dear Mr. Clark:

This will confirm the understanding reached during our recent discussions with the Union regarding the information to be provided to the Union supporting computations made to compute the "Total Profit Share" and "Allocation of the Total Profit Share" to this Plan in the Profit Sharing Plan for Hourly-Rate Employees in the United States (the Profit Sharing Plan).

In these discussions, we advised the Union that for each Plan Year the Corporation would provide the following information:

- A summary report of Sales and Revenues, and Profits, adjusted in accordance with the Profit Sharing Plan, similar to the attached format;

- A report displaying the computation of the Total Profit Share and Allocation of the Total Profit Share to this Plan;

- Annual statement of consolidated income, including the footnotes, which will appear in the financial statements in the Annual Report to stockholders for the Plan Year; and

- A statement of the impact of changes described in the footnotes on U.S. Operations as defined in the Profit Sharing Plan.

21

Union Reports

The data reported will be certified by the independent public accountants in accordance with the Profit Sharing Plan.

The Corporation will provide the Union with the information described above as soon as practicable after it becomes available.

This understanding has been reached on the basis that the Union will ensure that, until and to the extent the information is made available by the Corporation to the public at large, the information will be disclosed only to those reviewing for the Union the computations related to the Profit Sharing Plan, and neither the Union nor anyone reviewing such information for the Union will make any other disclosure of the information.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Attachment

Accepted and Approved:

IUE-CWA, The Industrial Division of the Communications Workers of America, AFL-CIO, CLC

By: James D. Clark

Union Reports

## DELPHI HOURLY PROFIT SHARING PLAN
### Sales and Revenues & Profits, as Defined in the Plan, for the Year Ended December 31, 20___

#### ($ In Millions)

**Sales and Revenues**

Total U.S. Net Sales and Revenues

Deduct Sales and Revenues of Excluded Subsidiaries and Associates $

Sales and Revenues of U.S. Operations as Defined in the Plan $

**Profits as Defined in the Plan**

Net Income in the United States $

Add (Deduct):

- Net Income of Excluded Subsidiaries and Associates
- Extraordinary Items
- Income Taxes of U.S. Operations Excluding Non-Consolidated Subsidiaries
- Provision for the Corporation, Consolidated Subsidiaries, and Non-Consolidated Subsidiaries Incentive Programs Applicable to U.S. Operations
- Profit Sharing Accrual

Profits as Defined in the Plan $

23

Union Reports



| Portion of Profits as Defined in the Plan | Profits as Defined In the Plan | Profit Sharing Rate % | Total Profit Share |
|---|---|---|---|
| Between 0.0% and 1.8% of Sales and Revenues | $ | 6.0 | $ |
| Between 1.8% and 2.3% of Sales and Revenues | | 8.0 | |
| Between 2.3% and 4.6% of Sales and Revenues | | 10.0 | |
| Between 4.6% and 6.9% of Sales and Revenues | | 14.0 | |
| Over 6.9% of Sales and Revenues | $ | 17.0 | $ |
| Deduct Portion of Profit Sharing Allocable to Non-Participating Employees | | | |
| Profit Sharing Accrual | | | $ |

24

FASB

# DELPHI CORPORATION

November 16, 2003

Mr. James D. Clark
Chairman, IUE-CWA
Automotive Conference Board
IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC
2360 West Dorothy Lane, Suite 201
Dayton, Ohio 45439

Attn:    Mr. James D. Clark
Delphi-IUE-CWA Automotive Conference Board

Dear Mr. Clark:

During these negotiations, the Corporation and the Union confirmed their understanding and intent regarding certain provisions of the Profit Sharing Plan.

The Profit Sharing Plan, as initially negotiated and as presently constituted, provides for earnings of domestic unconsolidated subsidiaries included in Plan income to be reflected on an after-tax basis. This treatment for Profit Sharing is consistent with the way Delphi presently accounts for these subsidiaries in its published financial results.

A change in the accounting for majority-owned subsidiaries presently is being considered by the Financial Accounting Standards Board (FASB). The FASB has indicated it intends to issue rules, effective in 1988, which would no longer permit companies to exclude majority-owned "non-homogenous" subsidiaries from a line-by-line consolidation with the parent Corporation. In the event the proposed FASB rule regarding consolidation of majority-owned subsidiaries becomes final, appropriate adjustments will be made to "Profits" and "Sales and Revenues" for the purpose of the Profit Sharing Plan. These adjustments will be made to achieve the same results as would be achieved under the present practice of reporting the after-tax results of unconsolidated

25

FASB

subsidiaries (majority-owned "non-homogenous" operations) on a single line basis in the consolidated results of the parent Corporation and of excluding the revenues of these subsidiaries. These adjustments, as with all other adjustments presently required to be certified, would be certified by the independent public accountants.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

IUE-CWA, The Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC

By: James D. Clark

Misc. (Benefits Training and Education)

# DELPHI CORPORATION

November 16, 2003

Mr. James D. Clark
Chairman, IUE-CWA
Automotive Conference Board
IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC
2360 West Dorothy Lane, Suite 201
Dayton, Ohio 45439

Attn:    Mr. James D. Clark
Delphi-IUE-CWA Automotive Conference Board

Dear Mr. Clark:

During these negotiations, the parties renewed their commitment to provide ongoing training programs for Company and Union Benefit Representatives so as to improve the quality of service provided to hourly employees. The parties also recognized the importance of communications programs aimed at educating employees about their benefits.

It was agreed that such training and education programs will be developed jointly, and the cost of developing and implementing such programs properly will be paid from the National Joint Skill Development and Training Fund as approved by the National Committee. These include, but are not limited to, the following:

- The annual joint Delphi-IUE-CWA Benefits Training Conference.

  Continuing education program for Union Benefit Representatives will be provided by the parties. Training sessions will be scheduled for newly appointed Union Benefit Representatives and Alternates as agreed to by the parties. The sessions will concentrate on areas such as eligibility to receive benefits, description and

27

Misc. (Benefits Training and Education)

interpretation of benefit plan provisions, and
calculation of benefits.

- Conduct periodic on-site plant surveys and
audits to evaluate training and education needs
to improve employee service.

- Ad hoc training meetings on legal developments
or other special needs.

Included also are any travel, lodging, and living
expenses incurred by Company and Union
representatives in relation to the above. In addition,
the Fund will pay for lost time (eight hours per day base
rate plus COLA) of Union Benefit Representatives
attending such programs away from their locations.
The Company will pay for the time (eight hours per day
base rate plus COLA) of alternate Union Benefit
Representatives who replace those attending such
programs.

Very truly yours,

DELPHI CORPORATION

Kevin M. Butler
Vice President
Human Resource Management

Accepted and Approved:

IUE-CWA, The Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC

By: James D. Clark

28

Misc. (Improving Benefits Service Through Technology)

# DELPHI CORPORATION

November 16, 2003

Mr. James D. Clark
Chairman, IUE-CWA
Automotive Conference Board
IUE-CWA, the Industrial Division
of the Communications Workers
of America, AFL-CIO, CLC
2360 West Dorothy Lane, Suite 201
Dayton, Ohio 45439

Attn:    Mr. James D. Clark
         Delphi-IUE-CWA Automotive Conference Board

Dear Mr. Clark:

During these negotiations, the parties recognized the need to move ahead with the development of technological applications to improve the quality of service provided to hourly employees.

1. The parties recognized the need to provide the necessary tools to Local Union Benefit Representatives so that they may improve the service they are providing to hourly employees. Local Union Benefit Representatives require basic information that can be accessed quickly in order to confidently and accurately answer many of the questions they receive. Therefore, the parties have designed two systems, the Benefits Data Access and the Benefits WorkStation Access systems, whereby Local Union Benefit Representatives have access to certain data elements from several benefit data systems. These systems provide inquiry only access to Local Union Benefit Representatives who complete a computer training program. Access is limited to information for IUE-CWA hourly employees at their particular location.

2. The parties jointly will develop and implement a new benefit documentation feature to the existing systems that will be available to Local Union Benefit Representatives. The Systems will include

29

Misc. (Improving Benefits Service Through Technology)

benefit plan booklets, administrative manuals (where applicable), relevant contract provisions and appropriate process descriptions. Upon approval by the Executive Board of Joint Activities, the cost of development, hardware and software requirements, conversion of written documentation, and installation and training, will be charged to the National Joint Skill Development and Training Fund. It is contemplated the benefit documentation feature will be implemented during the term of the <u>2003</u> Agreement.

3. The parties further agreed to provide hourly employees with <u>web technology in addition to the continued</u> use of a Voice Response System for inquiry and transactions in the Personal Savings Plan.

4. The parties agree to enhance the Benefit Data Access System to provide the pension Plan survivor coverage election/rejection and the cost of such survivor option. The cost of development and implementation will be charged to the National Joint Skill Development and Training Fund.

In conclusion, during the term of the new Agreement, the parties pledge to carefully consider every opportunity to improve the quality and efficiency in benefits delivery.

Very truly yours,

DELPHI CORPORATION

<u>Kevin M. Butler</u>
<u>Vice President</u>
<u>Human Resource Management</u>

Accepted and Approved:

<u>IUE-CWA, The Industrial Division</u>
<u>of the Communications Workers</u>
<u>of America, AFL-CIO, CLC</u>

By: <u>James D. Clark</u>

30

**NOTES**

## NOTES

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

**NOTES**

## 2003

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |  |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 |  |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |  |  |  |  |  |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |  |  |  |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 |  |  |  |  |  |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |  |  |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |  |  |  |  |  |  |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 |  |  |  |  |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |  |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 |  |  |  |  |  |  |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |  |  |  |

## 2004

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 |  |  |  |  |  |  |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |  |  |  |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |  |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  |  | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |  |  |  |  |  |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |  |  |  |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |  |  |  |  |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 |  |  |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |  |  |  |  |  |  |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 |  |  |  |  |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|  |  |  | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |  |

## 2005

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 |   |   |   |   |   |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 |   |   |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |   |   |   |   |   |   |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |   |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 |   |   |   |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 | 31 |

## 2006

### JANUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

### FEBRUARY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 |   |   |   |   |

### MARCH
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 | 31 |   |

### APRIL
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 |   |   |   |   |   |   |

### MAY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   | 1 | 2 | 3 | 4 | 5 | 6 |
| 7 | 8 | 9 | 10 | 11 | 12 | 13 |
| 14 | 15 | 16 | 17 | 18 | 19 | 20 |
| 21 | 22 | 23 | 24 | 25 | 26 | 27 |
| 28 | 29 | 30 | 31 |   |   |   |

### JUNE
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   | 1 | 2 | 3 |
| 4 | 5 | 6 | 7 | 8 | 9 | 10 |
| 11 | 12 | 13 | 14 | 15 | 16 | 17 |
| 18 | 19 | 20 | 21 | 22 | 23 | 24 |
| 25 | 26 | 27 | 28 | 29 | 30 |   |

### JULY
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   |   | 1 |
| 2 | 3 | 4 | 5 | 6 | 7 | 8 |
| 9 | 10 | 11 | 12 | 13 | 14 | 15 |
| 16 | 17 | 18 | 19 | 20 | 21 | 22 |
| 23 | 24 | 25 | 26 | 27 | 28 | 29 |
| 30 | 31 |   |   |   |   |   |

### AUGUST
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   | 1 | 2 | 3 | 4 | 5 |
| 6 | 7 | 8 | 9 | 10 | 11 | 12 |
| 13 | 14 | 15 | 16 | 17 | 18 | 19 |
| 20 | 21 | 22 | 23 | 24 | 25 | 26 |
| 27 | 28 | 29 | 30 | 31 |   |   |

### SEPTEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |

### OCTOBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 | 6 | 7 |
| 8 | 9 | 10 | 11 | 12 | 13 | 14 |
| 15 | 16 | 17 | 18 | 19 | 20 | 21 |
| 22 | 23 | 24 | 25 | 26 | 27 | 28 |
| 29 | 30 | 31 |   |   |   |   |

### NOVEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   | 1 | 2 | 3 | 4 |
| 5 | 6 | 7 | 8 | 9 | 10 | 11 |
| 12 | 13 | 14 | 15 | 16 | 17 | 18 |
| 19 | 20 | 21 | 22 | 23 | 24 | 25 |
| 26 | 27 | 28 | 29 | 30 |   |   |

### DECEMBER
| S | M | T | W | T | F | S |
|---|---|---|---|---|---|---|
|   |   |   |   |   | 1 | 2 |
| 3 | 4 | 5 | 6 | 7 | 8 | 9 |
| 10 | 11 | 12 | 13 | 14 | 15 | 16 |
| 17 | 18 | 19 | 20 | 21 | 22 | 23 |
| 24 | 25 | 26 | 27 | 28 | 29 | 30 |
| 31 |   |   |   |   |   |   |

## 2007

| JANUARY | FEBRUARY | MARCH |
|---|---|---|

**JANUARY**
S M T W T F S
  1 2 3 4 5 6
7 8 9 10 11 12 13
14 15 16 17 18 19 20
21 22 23 24 25 26 27
28 29 30 31

**FEBRUARY**
S M T W T F S
      1 2 3
4 5 6 7 8 9 10
11 12 13 14 15 16 17
18 19 20 21 22 23 24
25 26 27 28

**MARCH**
S M T W T F S
      1 2 3
4 5 6 7 8 9 10
11 12 13 14 15 16 17
18 19 20 21 22 23 24
25 26 27 28 29 30 31

**APRIL**
S M T W T F S
1 2 3 4 5 6 7
8 9 10 11 12 13 14
15 16 17 18 19 20 21
22 23 24 25 26 27 28
29 30

**MAY**
S M T W T F S
    1 2 3 4 5
6 7 8 9 10 11 12
13 14 15 16 17 18 19
20 21 22 23 24 25 26
27 28 29 30 31

**JUNE**
S M T W T F S
       1 2
3 4 5 6 7 8 9
10 11 12 13 14 15 16
17 18 19 20 21 22 23
24 25 26 27 28 29 30

**JULY**
S M T W T F S
1 2 3 4 5 6 7
8 9 10 11 12 13 14
15 16 17 18 19 20 21
22 23 24 25 26 27 28
29 30 31

**AUGUST**
S M T W T F S
     1 2 3 4
5 6 7 8 9 10 11
12 13 14 15 16 17 18
19 20 21 22 23 24 25
26 27 28 29 30 31

**SEPTEMBER**
S M T W T F S
        1
2 3 4 5 6 7 8
9 10 11 12 13 14 15
16 17 18 19 20 21 22
23 24 25 26 27 28 29
30

**OCTOBER**
S M T W T F S
 1 2 3 4 5 6
7 8 9 10 11 12 13
14 15 16 17 18 19 20
21 22 23 24 25 26 27
28 29 30 31

**NOVEMBER**
S M T W T F S
    1 2 3
4 5 6 7 8 9 10
11 12 13 14 15 16 17
18 19 20 21 22 23 24
25 26 27 28 29 30

**DECEMBER**
S M T W T F S
        1
2 3 4 5 6 7 8
9 10 11 12 13 14 15
16 17 18 19 20 21 22
23 24 25 26 27 28 29
30 31

## 2008

**JANUARY**
S M T W T F S
  1 2 3 4 5
6 7 8 9 10 11 12
13 14 15 16 17 18 19
20 21 22 23 24 25 26
27 28 29 30 31

**FEBRUARY**
S M T W T F S
      1 2
3 4 5 6 7 8 9
10 11 12 13 14 15 16
17 18 19 20 21 22 23
24 25 26 27 28 29

**MARCH**
S M T W T F S
        1
2 3 4 5 6 7 8
9 10 11 12 13 14 15
16 17 18 19 20 21 22
23 24 25 26 27 28 29
30 31

**APRIL**
S M T W T F S
  1 2 3 4 5
6 7 8 9 10 11 12
13 14 15 16 17 18 19
20 21 22 23 24 25 26
27 28 29 30

**MAY**
S M T W T F S
    1 2 3
4 5 6 7 8 9 10
11 12 13 14 15 16 17
18 19 20 21 22 23 24
25 26 27 28 29 30 31

**JUNE**
S M T W T F S
1 2 3 4 5 6 7
8 9 10 11 12 13 14
15 16 17 18 19 20 21
22 23 24 25 26 27 28
29 30

**JULY**
S M T W T F S
  1 2 3 4 5
6 7 8 9 10 11 12
13 14 15 16 17 18 19
20 21 22 23 24 25 26
27 28 29 30 31

**AUGUST**
S M T W T F S
      1 2
3 4 5 6 7 8 9
10 11 12 13 14 15 16
17 18 19 20 21 22 23
24 25 26 27 28 29 30
31

**SEPTEMBER**
S M T W T F S
 1 2 3 4 5 6
7 8 9 10 11 12 13
14 15 16 17 18 19 20
21 22 23 24 25 26 27
28 29 30

**OCTOBER**
S M T W T F S
   1 2 3 4
5 6 7 8 9 10 11
12 13 14 15 16 17 18
19 20 21 22 23 24 25
26 27 28 29 30 31

**NOVEMBER**
S M T W T F S
        1
2 3 4 5 6 7 8
9 10 11 12 13 14 15
16 17 18 19 20 21 22
23 24 25 26 27 28 29
30

**DECEMBER**
S M T W T F S
 1 2 3 4 5 6
7 8 9 10 11 12 13
14 15 16 17 18 19 20
21 22 23 24 25 26 27
28 29 30 31



# Exhibit U

EXHIBIT F

SUPPLEMENTAL AGREEMENT

(Delphi Profit Sharing Plan)

SUPPLEMENTAL AGREEMENT
(DELPHI PROFIT SHARING PLAN)

On this 8̶t̶h̶ ____ day of D̶e̶c̶e̶m̶b̶e̶r̶ ̶1̶9̶9̶9̶, Delphi A̶u̶t̶o̶m̶o̶t̶i̶v̶e̶ ̶S̶y̶s̶t̶e̶m̶s̶

Corporation or Delphi, hereinafter referred to as the Corporation, and

the United Steelworkers of America, AFL-CIO-CLC and its Local Union

No. 87, hereinafter referred to as the Union, on behalf of the

employees covered by the Collective Bargaining Agreement of which this

Supplemental Agreement becomes a part, agree as follows:


SECTION 1.   Establishment of Plan

Subject to the approval of its Board of Directors, the Corporation

will establish an amended Profit Sharing Plan for Hourly-Rate

Employees in the United States, hereinafter referred to as the "Plan,"

a copy of which is attached hereto as Exhibit F-1 and made a part of

this Agreement to the extent applicable to the employees represented

by the Union and covered by this Agreement as if fully set out herein,

modified and supplemented, however, by the provisions hereinafter.  In

the event of any conflict between the provisions of the Plan and the

provisions of this Agreement, the provisions of this Agreement will

supersede the provisions of the Plan to the extent necessary to

eliminate such conflict.


In the event that the Plan is not approved by the Board of Directors

of the Corporation, the Corporation, within 30 days after any such

disapproval, will give written notice thereof to the Union and this

Agreement shall thereupon have no force or effect.  In that event, the

b-nc                              (2)                              USWA

SUPPLEMENTAL AGREEMENT
(DELPHI PROFIT SHARING PLAN)

F, Sect. 1

matters covered by this Agreement shall be the subject of further
negotiation between the Corporation and the Union.


SECTION 2.   Administration

(a)   Notwithstanding any provision of the Plan, (1) any person who
      receives a back pay award applicable to an earlier Plan Year as
      the result of a grievance settlement shall receive after such
      grievance settlement a payment for the Plan Year to which such
      back pay award applies in an amount equal to the Participant's
      Profit Sharing Amount that would have been payable for such
      earlier Plan Year, based on the Compensated Hours received by
      such person for such Plan Year, less any Profit Sharing Amount
      paid previously to such person for such Plan Year, (2) the amount
      of such payments shall be deducted from the Total Profit Share
      otherwise allocated to the Plan for the first Plan Year ending
      after the date of such grievance settlement in which a Total
      Profit Share is achieved, and (3) any Compensated Hours resulting
      from a back pay award shall be included as Compensated Hours only
      for the Plan Year for which the back pay is awarded.


(b)   The Union shall be informed of the results of a review of a
      request by a Participant or beneficiary of a Participant pursuant
      to Article VI, Section 6.06 of the Plan, provided the Participant
      is represented by the Union.

a                                (3)                              USWA

SUPPLEMENTAL AGREEMENT
(DELPHI PROFIT SHARING PLAN)

F, Sect. 2(c)

(c)   Notwithstanding Article II, Section 2.03 of the Plan, and solely
      for the purpose of determining the amount of any distribution
      under this Plan, Compensated Hours shall be credited to an
      employee who is on a leave of absence under Paragraph 106 of the
      National Agreement if the leave was granted for the purpose of
      permitting the employee to engage in the business of, or to work
      for, the Local Union and provided further that each such employee
      is involved in the in-plant administration of the provisions of
      such National Agreement.  An employee eligible for Compensated
      Hours pursuant to this provision shall be credited with up to 40
      hours for each calendar week while on such leave, subject to the
      annual maximum specified in Article II, Section 2.03 of the Plan,
      provided the employee meets the requirements of the leave.

(d)   It is understood that benefit payments made under the Income
      Security Plan are included under Article II, Paragraph 2.03 of
      the Plan.

SECTION 3.   Non-Applicability of Collective
             Bargaining Agreement Grievance Procedure

(a)   No matter respecting the Plan as supplemented by this Agreement
      or any difference arising thereunder shall be subject to the
      grievance procedure established in the Collective Bargaining
      Agreement between the Corporation and the Union.

(b)   All computations made by the Corporation to determine Sales and
      Revenues and Profits (as defined in Article II, Sections 2.15 and
      2.14 of the Plan, respectively) when certified by the opinion of

a                              (4)                              USWA

SUPPLEMENTAL AGREEMENT
(DELPHI PROFIT SHARING PLAN)

F, Sect. 3(b)

a firm of independent certified public accountants (selection of
which shall be made by the Corporation and must be approved by
the shareholders of the Corporation) as being in accordance with
generally accepted accounting principles, and all calculations
made by the Corporation to determine the Total Profit Share (as
defined in Article II, Section 2.17 of the Plan) when certified
by the opinion of the aforementioned independent certified public
accountants as being in accordance with the provisions of the
Plan, shall be final and binding on the Union, Participants,
beneficiaries, and the Corporation.

(c)    The Corporation will respond as soon as practicable to reasonable
requests from the Union for information regarding the
computations made by the Corporation of the Total Profit Share
and allocation of the Total Profit Share among plans.

(d)    The parties agree to refer any disagreements over the
interpretation of the terms of this Agreement or the Plan to a
mutually acceptable impartial person for resolution.  The
resolution of any such disagreement by such impartial person shall
be final and binding upon the Union, Participants, beneficiaries,
and the Corporation.  Such impartial person shall not, however,
have any authority to determine accounting policies used in the
computation of Sales and Revenues, Profits, or the Total Profit
Share, or to change the dollar amount of Sales and Revenues,

a    (5)    USWA

SUPPLEMENTAL AGREEMENT
(DELPHI PROFIT SHARING PLAN)

F, Sect. 3(d)


Profits, or the Total Profit Share.  The determination of

accounting policies (e.g., depreciation, LIFO, expense

allocation, etc.), so long as they are within generally accepted

accounting principles, remains within the sole discretion of the

Corporation, and such determination of accounting policies shall

be final and binding upon the Union, Participants, and

beneficiaries.  The compensation of the impartial person, which

shall be in such amount and on such basis as may be determined by

the Corporation and the Union, shall be shared equally by the

Corporation and the Union.


SECTION 4.  <u>Governmental Rulings</u>

(a)  The Plan, as set forth in Exhibit F-1, and the Plan as it may be

supplemented by superseding provisions of this Agreement, are

contingent upon and subject to the Corporation obtaining and

retaining from the United States Department of Labor a ruling,

satisfactory to the Corporation, holding that no part of any

payments made from the Plan are included for purposes of the Fair

Labor Standards Act or under comparable state legislation in the

regular rate of any Participant.


(b)  The Corporation shall apply promptly to the appropriate

agency(ies) for the ruling described in subsection (a) of this

Section.

a                                    (6)                                    USWA

SUPPLEMENTAL AGREEMENT
(DELPHI PROFIT SHARING PLAN)

F, Sect. 4(c)

(c)  Notwithstanding any other provisions of this Agreement or
the Plan, the Corporation, with the consent of the President of
the Local Union No. 87 of the Union, may, during the term of
this Agreement, make revisions in the Plan not inconsistent with
the purposes, structure, and basic provisions thereof which
shall be necessary to obtain or retain the ruling referred to in
subsection (a) of this Section 4.  Any such revisions shall
adhere as closely as possible to the language and intent of
provisions outlined in this Agreement and the Plan.

SECTION 5.  Recovery of Overpayments

If it is determined that any monies paid to an employee under the
Delphi-USWA Main Agreement and any Exhibits thereto should not have
been paid or should have been paid in a lesser amount, written notice
thereof shall be given to such employee, and the employee shall repay
the amount of the overpayment.

If the employee fails to repay such amount of overpayment promptly,
the Corporation shall recover the amount of such overpayment
immediately from any monies then payable, or which may become payable,
to the employee in the form of wages or benefits payable under the
Delphi-USWA Main Agreement and any Exhibits thereto; except that, not
more than 50% of any Profit Sharing Amount to which a Participant
otherwise may be entitled shall be subject to any such recovery.

a                              (7)                              USWA

SUPPLEMENTAL AGREEMENT
(DELPHI PROFIT SHARING PLAN)

F, Sect. 6


SECTION 6.  <u>Duration of Agreement</u>

This Agreement and Plan as modified and supplemented by this Agreement

shall continue in effect until the termination of the Collective

Bargaining Agreement of which this is a part.


Notwithstanding termination of this Agreement and Plan, any Total

Profit Share that otherwise would accrue for calendar year ~~2003~~2007

will be allocated, distributed, and administered in accordance with

the provisions of this Agreement and the Plan.


In witness hereof, the parties hereto have caused this Agreement to be

executed the day and year first above written.

Local Union No. 87                    Delphi ~~Automotive~~
                                      ~~Systems~~ Corporation

_____               _____

_____               _____

_____               _____

_____               _____

_____               _____


United Steelworkers of
America, AFL-CIO/CLC

_____

_____


b-nc                        (8)

EXHIBIT F-1

THE DELPHI PROFIT SHARING PLAN

FOR HOURLY-RATE EMPLOYEES

IN THE UNITED STATES

a

THE DELPHI PROFIT SHARING PLAN
FOR HOURLY-RATE EMPLOYEES IN THE UNITED STATES


ARTICLE I

ESTABLISHMENT AND EFFECTIVE
DATE OF PROFIT SHARING PLAN


1.01    Establishment of Plan

Delphi ~~Automotive Systems~~ Corporation hereby establishes The
Delphi Profit Sharing Plan for Hourly-Rate Employees in the
United States (hereinafter referred to as the Plan).


1.02    Effective Date of the Plan

The Plan shall become effective January 1, ~~2000~~2004, except as
otherwise may be provided herein.    The ~~GM~~Delphi Agreement dated
~~January 8, 1997~~ shall remain in effect until December 31,
~~1999~~2003, and shall govern distribution in ~~2000~~2004, based on
any profits in ~~1999~~2003.


b-nc                          - 2 -

PROFIT SHARING PLAN

ARTICLE II

DEFINITION OF TERMS

The following definitions will apply to all words and phrases
capitalized in the text which follows.

2.01   "Administrator"

Administrator means Delphi ~~Automotive Systems~~ Corporation.   The
Administrator's address is 5~~7~~825 Delphi Drive, Mail Code  483~~0~~-
40~~10~~-61~~046~~, Troy, MI 48098.

2.02   "Associate"

Associate means a non-consolidated joint venture in which the
capital investment of the Corporation, either directly or
indirectly, is between 20% and 50%, inclusive.

2.03   "Compensated Hours"

(a)   Compensated Hours means all hours, not in excess of 1,850
      hours in any Plan Year, for which a Participant who is
      eligible to receive a distribution for a Plan Year received
      pay from the Corporation with respect to hourly-rate
      employment in U.S. Operations during the Plan Year on or
      after an Employee's date of enrollment.   The term shall
      include hours for which a Participant who is eligible to
      receive a distribution for a Plan Year receives base pay,
      overtime (with each hour paid at premium rates to be

b-nc                             - 3 -

<u>PROFIT SHARING PLAN</u>

Art. II, 2.03(a)

counted as one hour), vacation entitlement, holiday pay,
bereavement pay, jury duty pay, short-term military duty
pay, and call-in pay; provided, however, no hours shall be
duplicated because of payment under more than one category.
The term shall not include hours compensated in any other
form (e.g., Cost-of-Living Allowance, night-shift premium,
seven-day premium, incentive pay, moving allowance,
supplemental unemployment benefit payments under the
Corporation's Supplemental Unemployment Benefit Plan
[including automatic short week benefit payments] or
Guaranteed Income Stream Benefit Plan, suggestion awards,
tool allowances, imputed income, sickness and accident
benefits, extended disability benefits, and allocations
under this Plan).

(b)    The term Compensated Hours shall include, for a Participant
who otherwise is eligible to receive a distribution for a
Plan Year, 40 hours for each complete calendar week during
such Plan Year that the Participant is on an approved sick
leave of absence and for such complete calendar week has
received Workers' Compensation payments from the
Corporation as the result of a totally disabling
occupational injury or disease under any Workers'
Compensation law or act or any occupational disease, law,
or act, provided:

a                                    — 4 —

PROFIT SHARING PLAN

Art. II, 2.03(b)(i)

    (i)   the Participant otherwise would have been scheduled to work all hours during such complete calendar week(s); and

    (ii)   the Participant is actively at work for the Corporation during at least one complete calendar week in the Plan Year; and

    (iii)  during the Plan Year, or prior thereto, the Corporation has for such calendar week(s) either voluntarily paid Workers' Compensation benefits or failed to appeal the adverse determination of an applicable state agency or court awarding payment of Workers' Compensation benefits.

A Participant shall not receive credit for Compensated Hours applicable to any prior Plan Year as the result of a decision of an applicable state agency or court awarding benefits retroactively for periods during any prior Plan Year.

2.04   "Consolidated Subsidiary"

Consolidated Subsidiary means, for any Plan Year, any Subsidiary, the accounts of which are consolidated with

a

    - 5 -

<u>PROFIT SHARING PLAN</u>

Art. II, 2.04


those of the Corporation in the Statement of Consolidated Income
and Consolidated Balance Sheet of the Corporation for such Plan
Year.


2.05  "Corporation"

Corporation means Delphi ~~Automotive Systems~~ Corporation.


2.06  "Domestic"

Domestic means, with respect to any Consolidated Subsidiary
or Non-Consolidated Subsidiary, any such Subsidiary that is
incorporated and derives more than 50% of its revenue from
activities carried on or located within the United States.


2.07  "Employee"

Employee means


(a)  any person regularly employed in the United States by U.S.
     Operations of the Corporation on an hourly-rate basis,
     including:

     (1)  hourly-rate persons employed on a full-time basis;

     (2)  part-time hourly-rate employees who, on a regular and
          continuing basis, perform jobs having definitely
          established working hours, but the complete


a-nc                        - 6 -

PROFIT SHARING PLAN

Art. II, 2.07(a)(2)

       performance of which requires fewer hours of work than the regular workweek, provided the services of such employees are normally available for at least half of the employing unit's regular workweek;

(b)    The term "Employee" shall not include employees represented by a labor organization which has not signed an agreement making the Plan applicable to such employees.

(c)    The term "Employee" shall not include leased employees as defined under Section 414(n) of the Internal Revenue Code.

(d)    The term "employee" shall not include contract employees, bundled services employees, consultants, or other similarly situated individuals, or individuals who have represented themselves to be independent contractors.

The following classes of individuals are ineligible to participate in this Plan, regardless of any other Plan terms to the contrary, and regardless of whether the individual is a common-law employee of the Corporation:

b

- 7 -

PLUS 7A - 7B

PROFIT SHARING PLAN

Art. II, 2.07(d)(1)

    (1)   Any individual who provides services to the
Corporation where there is an agreement with a
separate company under which the services are
provided.  Such individuals are commonly referred to
by the Corporation as "contract employees" or
"bundled-services employees";

    (2)   Any individual who has signed an independent
contractor agreement, consulting agreement, or other
similar personal service contract with the
Corporation;

    (3)   Any individual who both (a) is not included in any
represented bargaining unit and (b) who the
Corporation classifies as an independent contractor,
consultant, contract employee, or bundled-services
employee during the period the individual is so
classified by the Corporation.

The purpose of this provision is to exclude from
participation all persons who may actually be common-law
employees of the Corporation, but who are not paid as though
they were employees of the Corporation, regardless of the
reason they are excluded from the payroll, and regardless of
whether that exclusion is correct.

a              - 7A -              PLUS 7B

## PROFIT SHARING PLAN

Art. II, 2.08

2.08    "Investment"

Investment means a company in which the Corporation has less
than a 20% ownership.

2.09    "Non-Consolidated Subsidiary"

Non-Consolidated Subsidiary means, for any Plan Year, any
Subsidiary which is not a Consolidated Subsidiary for such Plan
Year.

2.10    "Participant"

Participant means an Employee who, at any time during a Plan
Year, has been enrolled in the Plan in accordance with
Article III and is eligible to receive a Profit Sharing Amount
for such Plan Year.

a                               - 7B -

PROFIT SHARING PLAN

Art. II, 2.11

2.11  "Plan"

Plan means The Delphi Profit Sharing Plan for Hourly-Rate
Employees in the United States.

2.12  "Plan Year"

Plan Year means the 12-month period beginning on January 1 and
ending on December 31.

2.13  "Profit Sharing Amount"

Profit Sharing Amount means the portion of the Total Profit
Share allocated to a Participant.

2.14  "Profits"

Profits means income earned by U.S. Operations before income
taxes and "extraordinary" items (with "extraordinary" defined as
under generally accepted accounting principles).  Profits are
before any profit sharing charges are deducted.

Profits also are before incentive program charges for U.S.
Operations, including (i)  Delphi ~~Automotive Systems~~
Corporation, (ii) Consolidated Subsidiaries, and (iii) Non-
Consolidated Subsidiaries.  Excluded from Profits are any
profits (or losses) derived from non-U.S. Subsidiaries of U.S.
Operations and any dividends received from non-U.S.
Subsidiaries.  Income from non-consolidated U.S. Operations
shall be included on an after-tax basis.

a-nc                          - 8 -

PROFIT SHARING PLAN

Art. II, 2.15

2.15  "Sales and Revenues"

Sales and Revenues means the total net sales and revenues of
Delphi U.S. Operations for such Plan Year.

2.16  "Subsidiary"

Subsidiary means a corporation, a majority of the voting stock
of which is owned, directly or indirectly, by the Corporation.

2.17  "Total Profit Share"

Total Profit Share means an obligation of the Corporation for
any Plan Year in an amount equal to the sum of:

(a)   6% of the portion of the Profits for such Plan Year which
      exceeds 0.0% of Sales and Revenues for such Plan Year but
      does not exceed 1.8% of Sales and Revenues;

(b)   8% of the portion of the Profits for such Plan Year which
      exceeds 1.8% of Sales and Revenues for such Plan Year but
      does not exceed 2.3% of Sales and Revenues;

(c)   10% of the portion of the Profits for such Plan Year which
      exceeds 2.3% of Sales and Revenues for such Plan Year but
      does not exceed 4.6% of Sales and Revenues;

a

PROFIT SHARING PLAN

Art. II, 2.17(d)

     (d)   14% of the portion of the Profits for such Plan Year which exceeds 4.6% of Sales and Revenues for such Plan Year but does not exceed 6.9% of Sales and Revenues; and

     (e)   17% of the portion of the Profits for such Plan Year which exceeds 6.9% of Sales and Revenues for such Plan Year.

In any Plan Year in which a Total Profit Share is achieved, the minimum Total Profit Share will be $50 multiplied by the total number of participants eligible for a distribution for the Plan Year under this Plan or under a similar plan established by the Corporation or would be eligible under a similar plan.

2.18   "U.S. Operations"

U.S. Operations means all operations of the Corporation and its Domestic Subsidiaries, both consolidated and non-consolidated, in the financial statements included in the Delphi Annual Report that carry on business primarily in the United States.  The term excludes (1) the following U.S. incorporated subsidiaries

b

- 10 -

<u>PROFIT SHARING PLAN</u>

Art. II, 2.18


and their employees whose operations are primarily involved in

business outside the United States:  Delphi Automotive Systems

(Holdings), Inc.; Delphi Automotive Systems International, Inc.;

Delphi International Services, Inc.  (Delaware); Delphi

Corporation (Delaware); and any other subsidiaries that may

qualify in the future<u>, (2) Associates, and (3) Investments</u>.


b                              - 11 -

PROFIT SHARING PLAN

ARTICLE III

ENROLLMENT

3.01    Enrollment

An Employee will be enrolled in the Plan on the later of (a) the
date upon which the employee meets the Plan definition of
Employee, Section 2.07, or (b) the date on which this Plan first
becomes applicable to the unit in which such person is employed,
provided the person remains employed on such date.

a                              - 12 -

PROFIT SHARING PLAN

ARTICLE IV

ALLOCATION AND DISTRIBUTION

4.01   Allocation of the Total Profit Share to this Plan

The Total Profit Share for the Plan Year is to be allocated to
this Plan in the proportion that (a) the number of Participants
in this Plan entitled to a distribution for the Plan Year bears
to (b) the total number of all hourly-rate employees and non-
executive salaried employees of the U.S. Operations and other
persons who are entitled to a distribution for the Plan Year
under this Plan or under a similar plan or would be entitled
under a similar plan.

4.02   Allocation of Profit Sharing Amount to Participants

The portion of the Total Profit Share for the Plan Year
allocated to this Plan in accordance with Section 4.01 will be
allocated to each Participant entitled to a distribution for the
Plan Year in the proportion that (a) the Participant's
Compensated Hours for the Plan Year bears to (b) the total
Compensated Hours of all Participants in this Plan entitled to a
distribution for the Plan Year.

4.03   When Profit Sharing Amounts are Allocated and Distributed

(a)   Commencing with the 2003 Plan Year and a~~A~~s soon as
administratively feasible, but in no event later than ~~two~~
~~and one-half~~ the third month~~s~~ following the end of the Plan
Year, the Profit Sharing Amount will be allocated and
distributed to each eligible Participant pursuant to this

b                                    - 13 -

PROFIT SHARING PLAN

Art. IV, 4.03(a)

Article IV.   The Corporation shall deduct from the amount
of any such distribution to a Participant (or beneficiary)
any amount required to be deducted, by reason of any law or
regulation, for payment of taxes or other payments to any
federal, state, or local government.   Each distribution
shall be accompanied by a statement showing the computation
of such Participant's Profit Sharing Amount.   Withholding
tax obligations of the Corporation with respect to any such
distribution will be satisfied as determined by the
Administrator of the Plan.   In determining the amount of
any applicable tax, the computation of which takes personal
exemptions into account, the Corporation shall be entitled
to rely on the official form filed with the Corporation for
purposes of income tax withholding.   No interest shall be
payable with respect to any such distribution.

(b)   In lieu of receiving a distribution in cash pursuant to
subsection (a) of this Section 4.03, each Participant
entitled to a distribution for any Plan Year that is in
excess of the minimum Total Profit Share as defined in
Article II, Section 2.17, other than a Participant whose
employment terminated prior to distribution of such Profit
Sharing Amounts, may elect to have the Corporation
contribute to the Participant's account under The Delphi
Personal Savings Plan for Hourly-Rate Employees in

a                                    - 14 -

PROFIT SHARING PLAN

Art. IV, 4.03(b)

the United States an amount up to 100%, in multiples of 1%
of such distribution, provided such amount is not in excess
of the maximum amount permitted under Section 415 of the
Code.  Such election shall be filed at such time and in
such manner as the Administrator shall determine and will
remain continuously in effect until changed by the
Employee.  If the Administrator does not receive an
election from a Participant on or before the date
established by the Administrator for submission of such
elections for the applicable Plan Year, the Participant's
Profit Sharing Amount for the Plan Year shall be
distributed to the Participant.

(c)  Any amounts elected to be deferred by a Participant
pursuant to Section 4.03(b) of this Article IV which cannot
be deferred as a result of the application of Section 415
of the Code shall be distributed to the Participant.

(d)  Notwithstanding Section 6.04 of the Plan, in the event the
Corporation is legally obligated to pay a tax levy, child
support, or similar legal obligations to any third party,
no election made by the Participant to defer a Profit
Sharing Amount pursuant to Section 4.03(b) shall be
effective.  To the extent necessary and/or available, the
legally required payment will be deducted from the

a                              - 15 -

PROFIT SHARING PLAN

Art. IV, 4.03(d)


Participant's Profit Sharing Amount and paid to the
applicable third party.


4.04    To Whom Profit Sharing Amounts are Distributed

In addition to Participants who are on the active roll at the
end of the Plan Year, the Profit Sharing Amount for the Plan
Year, if any, will be paid to otherwise eligible
(1) Participants on layoff or leave of absence, including sick
leave, at the end of the Plan Year, (2) Participants who retired
during the Plan Year, and (3) beneficiaries of Participants who
died during the Plan Year.  Employees who terminated during the
Plan Year for any reason other than death, retirement, or any
voluntary termination of employment program shall not be
eligible for a distribution for the Plan Year.  The amount of
any such distribution shall be determined in accordance with
Section 4.02 of this Article IV.


Distribution of a Profit Sharing Amount will be made only to a
Participant.  However, if the Participant is deceased at the
time of distribution, the distribution will be made to the
beneficiary or beneficiaries designated by the Participant
pursuant to Article V.


a                              - 16 -

<u>PROFIT SHARING PLAN</u>

Art. IV, 4.05

4.05    <u>Overpayments and Underpayments</u>

(a)    No amount allocated to a Participant entitled to a
distribution for a Plan Year under this Plan may be
increased or decreased in a subsequent Plan Year except in
the event it shall be determined an error in excess of $3
was made in the computation of any Profit Sharing Amount for
any Plan Year.  Such error shall be handled as follows:

(i)    If such Participant's Profit Sharing Amount (correctly
determined) was greater than the amount paid to such
Participant by an amount in excess of $3, the
deficiency shall be paid to such Participant within 60
days after such determination.

(ii)    If such Participant's Profit Sharing Amount (correctly
determined) was less than the amount paid to such
Participant by an amount in excess of $3, written
notice thereof shall be mailed to such Participant
receiving such Profit Sharing Amount and the
Participant shall return the amount of such overpayment
to the Corporation; provided, however, that no such
repayment shall be required if notice has not been
given within 120 days from the date on which the
overpayment was made.  If such Participant shall fail
to return such amount promptly, the Corporation shall

a                                - 17 -

PROFIT SHARING PLAN

Art. IV, 4.05(a)(ii)

make an appropriate deduction or deductions from any monies then payable, or which may become payable, by the Corporation to the employee in the form of wages or future payments under this Plan; provided, however, that any such deduction shall not exceed $30 from any one paycheck, but any such deduction from subsequent payments under the Plan shall not be limited.

(b)   The Corporation shall make an appropriate deduction or deductions from any future benefit payment or payments payable to the Participant under this Plan for the purpose of recovering overpayments made to the Participant in the form of wages or under any Delphi benefit plan.  Amounts so deducted shall be remitted to the Corporation or the benefit plan, as applicable.  The Corporation, by such remittance, shall be relieved of any further liability to the Participant with respect to such payments under this Plan.

a                    - 18 -

<u>PROFIT SHARING PLAN</u>

Art. IV, 4.06

4.06   <u>Benefit Drafts Not Presented</u>

Unless prevented by law, the amount of any payment made to a
Participant under the Plan, but not claimed by the
Participant prior to December 31 of the Plan Year following
the date of such payment, shall be added to the portion of the
Total Profit Share next allocated to this Plan.  In this event,
such Participant shall have no further entitlement to such
payment.

a                          - 19 -

PROFIT SHARING PLAN

ARTICLE V

OTHER PROVISIONS

5.01    Designation of Beneficiaries in Event of Death

A Participant shall be deemed to have designated as beneficiary
or beneficiaries under this Plan the person or persons who
receive the Participant's life insurance proceeds under the
Corporation's Life and Disability Benefits Program for Hourly
Employees unless such Participant shall have assigned such life
insurance, in which case the Profit Sharing Amount will be paid
to the estate of the Participant unless such Participant has
submitted, in writing, a different beneficiary or beneficiaries
to the Plan Administrator.

A beneficiary or beneficiaries will receive, in the event of the
Participant's death, all or part of the Profit Sharing Amount of
the Participant in accordance with the applicable designation.
If the Corporation shall be in doubt as to the right of any
beneficiary to receive any Profit Sharing Amount, the
Corporation may deliver such Profit Sharing Amount to the estate
of the Participant, in which case the Corporation shall not have
any further liability to anyone.

a                              - 20 -

<u>PROFIT SHARING PLAN</u>

<u>ARTICLE VI</u>

<u>ADMINISTRATION</u>

6.01    <u>Administrative Responsibility</u>

The Corporation will have full power and authority to construe,
interpret, and administer this Plan and to pass upon and decide
cases presenting claims in conformity with the objectives of the
Plan and under such rules as it may establish from time to time.
Decision of the Corporation will be final and binding upon any
of its employees.

6.02    <u>Certification by Independent Certified Public Accountants</u>

The Corporation will compute Sales and Revenues and Profits (as
defined in Article II, Sections 2.15 and 2.14, respectively) in
accordance with generally accepted accounting principles and
then calculate the Total Profit Share and the allocation of
Total Profit Share among plans in accordance with the provisions
of this Plan.  Such computations and calculations, when
certified by the opinion of a firm of independent certified
public accountants (selection of which shall be made by the
Corporation and must be approved by the shareholders of the
Corporation), shall be final and binding on Participants; the
collective bargaining representative of such Participants, if
any; beneficiaries and the Corporation.

6.03    <u>Administrative Expenses</u>

Administrative expenses of the Plan shall be paid by the
Corporation.

a                                      - 21 -

PROFIT SHARING PLAN

Art. VI, 6.04


6.04  Non-Assignability

Except as provided in Article IV, Section 4.05, to the extent
allowed by applicable law, no right or interest of any
Participant under this Plan shall be assignable or transferable,
in whole or in part, either directly or by operation of law or
otherwise, including, without limitation, by execution, levy,
garnishment, attachment, pledge, or in any other manner, but
excluding devolution by death or mental incompetency; no
attempted assignment or transfer thereof shall be effective; and
no right or interest of any Participant under this Plan shall be
liable for, or subject to, any obligation or liability of such
Participant.


6.05  Incapacity

If the Administrator deems any person incapable of receiving any
distribution to which such person is entitled under this Plan
because such person has not yet reached the age of majority, or
because of illness, infirmity, mental incompetency, or other
incapacity, it may make payment, for the benefit or the account
of such incapacitated person, to any person selected by the
Administrator whose receipt thereof shall be a complete
settlement thereof.  Such payments shall, to the extent thereof,
discharge all liability of the Corporation and each other
fiduciary with respect to this Plan.


a                              - 22 -

PROFIT SHARING PLAN

Art. VI, 6.06

6.06   Notice of Denial

The Administrator shall provide adequate notice, in writing, to
any Participant or beneficiary whose request for a distribution
or for a distribution in a greater amount under this Plan has
been denied setting forth the specific reason or reasons for
such denial.  The Participant or beneficiary shall be given an
opportunity for a full and fair review by the Corporation of the
decision denying the request.  The Participant will be given a
reasonable period of time, to be established by the Corporation
from the date of the notice denying such request, within which
to request such review.

a                         - 23 -

PROFIT SHARING PLAN

ARTICLE VII

AMENDMENT, MODIFICATION,
SUSPENSION, OR TERMINATION

7.01    Amendment, Modification, Suspension, or Termination

The Corporation reserves the right, by and through its Board of
Directors, to amend, modify, suspend, or terminate the Plan
including specifically the right prior to making the allocation
of contributions, as provided in Article IV, to include as
Employees for purposes of the Plan such other employees of the
Corporation and its Domestic Consolidated and Non-Consolidated
Subsidiaries as the Corporation may specify.

a

<u>DELPHI PROFIT SHARING PLAN</u>

*[Paragraph 106 Leave]*

**DELPHI ~~AUTOMOTIVE SYSTEMS~~ CORPORATION**

~~December 8, 1999~~ _____, 2003

During the discussions b<u>United Steelworkers of America</u>
  <u>AFL-CIO-CLC</u>
Local Union No. 87
21 Abbey Avenue
Dayton, OH  45417

Attn:  Mr. Dennis A. Bingham
       President, Local No. 87

Dear Mr. Bingham:

During the discussions between the parties held in conjunction with
completing the Profit Sharing Plan language, the Union requested that
all employees on leave under Paragraph 106 of the Main Agreement to
engage in the business of, or to work for, the Local Union should be
included as eligible participants under such Plan.  The Corporation
pointed out, however, that certain employees not involved in the in-
plant administration of the Main Agreement would not be included in
the Plan and would not receive any compensated hours under the Plan
while on such leave.  Moreover, it is understood that the Local Union
will advise Local Management each year, in December, of the name,
Social Security number, and job title of each such employee therefore
not eligible for benefits under the Profit Sharing Plan.

                    Very truly yours,

                    DELPHI ~~AUTOMOTIVE SYSTEMS~~ CORPORATION

                    ~~Steven L. Gebbia~~<u>Kevin M. Butler</u>
                    ~~Executive Director -- Employee Benefits~~
                    <u>Vice President</u>
                    <u>Human Resource Management</u>

Accepted and Approved:

UNITED STEELWORKERS OF
AMERICA AFL-CIO-CLC,
LOCAL UNION NO. 87

By:  Dennis A. Bingham

b-nc                          - 26 -                          USWA

<u>DELPHI PROFIT SHARING PLAN</u>

*[Union Reports]*

**DELPHI ~~AUTOMOTIVE SYSTEMS~~ CORPORATION**

~~December 8, 1999~~      , 2003

United Steelworkers of America
  AFL-CIO-CLC
Local Union No. 87
21 Abbey Avenue
Dayton, OH  45417

Attn:  Mr. Dennis A. Bingham
       President, Local No. 87

Dear Mr. Bingham:

This will confirm the understanding reached during our recent
discussions with the Union regarding the information to be provided to
the Union supporting computations made to compute the "Total Profit
Share" and "Allocation of the Total Profit Share" to this Plan in the
Profit Sharing Plan for Hourly-Rate Employees in the United States
(the Profit Sharing Plan).

In these discussions, we advised the Union that for each Plan Year the
Corporation would provide the following information:

• A summary report of Sales and Revenues, and Profits, adjusted
  in accordance with the Profit Sharing Plan, similar to the
  attached format;

• A report displaying the computation of the Total Profit Share
  and Allocation of the Total Profit Share to this Plan;

• Annual statement of consolidated income, including the
  footnotes, which will appear in the financial statements in
  the Annual Report to stockholders for the Plan Year; and

• A statement of the impact of changes described in the
  footnotes on U.S. Operations as defined in the Profit Sharing
  Plan.

The data reported will be certified by the independent public
accountants in accordance with the Profit Sharing Plan.

The Corporation will provide the Union with the information described
above as soon as practicable after it becomes available.

b-nc                          - 27 -                          USWA

<u>DELPHI PROFIT SHARING PLAN</u>

*[Union Reports]*


This understanding has been reached on the basis that the Union will
ensure that, until and to the extent the information is made available
by the Corporation to the public at large, the information will be
disclosed only to those reviewing for the Union the computations
related to the Profit Sharing Plan, and neither the Union nor anyone
reviewing such information for the Union will make any other
disclosure of the information.


                            Very truly yours,

                            DELPHI ~~AUTOMOTIVE SYSTEMS~~ CORPORATION



                            ~~Steven L. Gebbia~~Kevin M. Butler
                            ~~Executive Director - Employee Benefits~~
                            <u>Vice President</u>
                            <u>Human Resource Management</u>



Accepted and Approved:

UNITED STEELWORKERS OF
AMERICA AFL-CIO-CLC,
LOCAL UNION NO. 87

By:  Dennis A. Bingham

[Union Reports]

**DELPHI HOURLY PROFIT SHARING PLAN**

Sales and Revenues & Profits, as Defined
in the Plan, for the Year Ended December 31,20 __
($ in Millions)

| SALES AND REVENUES | |
|---|---|
| Total U.S. Net Sales and Revenues | $ |
| Deduct Sales and Revenues of Excluded Subsidiaries and Associates | $_____ |
| Sales and Revenues of U.S. Operations as Defined in the Plan | $_____ |
| **PROFITS AS DEFINED IN THE PLAN** | |
| Net Income in the United States | $ |
| Add (Deduct): | |
| • Net Income of Excluded Subsidiaries and Associates | |
| • Extraordinary Items | |
| • Income Taxes of U.S. Operations Excluding Non-Consolidated Subsidiaries | |
| • Provision for the Corporation, Consolidated Subsidiaries, and Non-Consolidated Subsidiaries Incentive Programs Applicable to U.S. Operations | _____ |
| • Profit Sharing Accrual | |
| Profits as Defined in the Plan | $_____ |

| PORTION OF PROFITS AS DEFINED IN THE PLAN | PROFITS AS DEFINED IN THE PLAN | PROFIT SHARING RATE % | TOTAL PROFIT SHARE |
|---|---|---|---|
| Between 0.0% and 1.8% of Sales and Revenues | $ | 6.0 | $ |
| Between 1.8% and 2.3% of Sales and Revenues | | 8.0 | |
| Between 2.3% and 4.6% of Sales and Revenues | | 10.0 | |
| Between 4.6% and 6.9% of Sales and Revenues | | 14.0 | |
| Over 6.9% of Sales and Revenues | _____ | 17.0 | _____ |
| | $_____ | | $_____ |
| Deduct Portion of Profit Sharing Allocable to Non-Participating Employees | | | _____ |
| Profit Sharing Accrual | | | $_____ |

a                              - 25 -                              USWA

<u>DELPHI PROFIT SHARING PLAN</u>

[FASB]

## DELPHI ~~AUTOMOTIVE SYSTEMS~~ CORPORATION

~~December 8, 1999~~_____,2003

United Steelworkers of America
  AFL-CIO-CLC
Local Union No. 87
21 Abbey Avenue
Dayton, OH  45417

Attn:  Mr. Dennis A. Bingham
       President, Local No. 87

Dear Mr. Bingham:

During these negotiations, the Corporation and the Union confirmed their understanding and intent regarding certain provisions of the Profit Sharing Plan.

The Profit Sharing Plan, as initially negotiated and as presently constituted, provides for earnings of domestic unconsolidated subsidiaries included in Plan income to be reflected on an after-tax basis. This treatment for Profit Sharing is consistent with the way Delphi presently accounts for these subsidiaries in its published financial results.

A change in the accounting for majority-owned subsidiaries presently is being considered by the Financial Accounting Standards Board (FASB). The FASB has indicated it intends to issue rules, effective in 1988, which would no longer permit companies to exclude majority-owned "non-homogenous" subsidiaries from a line-by-line consolidation with the parent Corporation.  In the event the proposed FASB rule regarding consolidation of majority-owned subsidiaries becomes final, appropriate adjustments will be made to "Profits" and "Sales and Revenues" for the purpose of the Profit Sharing Plan.  These adjustments will be made to achieve the same results as would be achieved under the present practice of reporting the after-tax results of unconsolidated subsidiaries (majority-owned "non-homogenous" operations) on a single line basis in the consolidated results of the parent Corporation and of excluding the revenues of these

b-nc                          - 29 -                          USWA

DELPHI PROFIT SHARING PLAN

*[FASB]*


subsidiaries.  These adjustments, as with all other adjustments
presently required to be certified, would be certified by the
independent public accountants.

                    Very truly yours,

                    DELPHI ~~AUTOMOTIVE SYSTEMS~~ CORPORATION



                    ~~Steven L. Gebbia~~Kevin M. Butler
                    ~~Executive Director — Employee Benefits~~
                    Vice President
                    Human Resource Management


Accepted and Approved:

UNITED STEELWORKERS OF
AMERICA AFL-CIO-CLC,
LOCAL UNION NO. 87

By:  Dennis A. Bingham

DELPHI PROFIT SHARING PLAN

*[Eligibility]*

**DELPHI AUTOMOTIVE SYSTEMS CORPORATION**

December 8, 1999

United Steelworkers of America
 - AFL-CIO-CLC
Local Union No. 87
21 Abbey Avenue
Dayton, OH  45417

Attn:  Mr. Dennis A. Bingham
        President, Local No. 87

Dear Mr. Bingham:

During these negotiations, the Corporation and the Union agreed, with
respect to The Delphi Profit Sharing Plan for Hourly-Rate Employees in
the United States dated December 8, 1999 (the "1999 Plan"), to provide
immediate eligibility (without a requirement for attainment of one
year of seniority) for employees, who would otherwise be eligible,
newly hired on or after the Effective Date of this Agreement.

The intent of the parties is that Employees hired on or after the
Effective Date of this Agreement, or within the 12-month period
preceding the Effective Date of this Agreement, be afforded immediate
eligibility for the 1999 Plan Year of the 1996 Plan.  Further,
calculation of their Profit Sharing Amounts, as defined in
Section 2.13, shall be based upon Compensated Hours, as defined in
Section 2.03, worked on or after the beginning of the first pay period
commencing on or after the Effective Date of this Agreement.

Modification to the Plan resulting from this letter should not be
interpreted to revise any previously existing eligibility provisions
except as specifically provided herein.

                                    Very truly yours,

                                    DELPHI AUTOMOTIVE
                                    SYSTEMS CORPORATION


                                    Steven L. Gebbia
                                    Executive Director
                                    Employee Benefits

Accepted and Approved:


INTERNATIONAL UNION OF ELECTRONIC,
ELECTRICAL, SALARIED, MACHINE AND
FURNITURE WORKERS, AFL-CIO

By: Harold E. Nichols
b                             - 31 -

DELPHI PROFIT SHARING PLAN

*[Misc. - Benefits Training and Education]*

**DELPHI ~~AUTOMOTIVE SYSTEMS~~ CORPORATION**

~~November 14, 1999~~ _____ , 2003

Mr. ~~Harold E. Nichols~~ James D. Clark
Chairman, ~~Delphi~~IUE-CWA
Automotive Conference Board
IUE-CWA, the Industrial Division ~~International Union of Electronic,~~
of the Communications Workers ~~Electrical, Salaried, Machine and~~
of America, AFL-CIO, CLC ~~Furniture Workers, AFL-CIO~~
2360 West Dorothy Lane, Suite 201 ~~103 West Market Street, Suite 105~~
Dayton ~~Warren~~, Ohio ~~44418~~ 45439

Attn:  Mr. ~~Harold E. Nichols~~James D. Clark
       Delphi—IUE-CWA Automotive Conference Board

Dear Mr. ~~Nichols~~Clark:

During these negotiations, the parties renewed their commitment to
provide ongoing training programs for Company and Union Benefit
Representatives so as to improve the quality of service provided to
hourly employees.  The parties also recognized the importance of
communications programs aimed at educating employees about their
benefits.

It was agreed that such training and education programs will be
developed jointly, and the cost of developing and implementing such
programs properly will be paid from the National Joint Skill
Development and Training Fund as approved by the National Committee.
These include, but are not limited to, the following:

• The annual joint Delphi—IUE-CWA Benefits Training Conference.

  Continuing education program for Union Benefit Representatives will
  be provided by the parties. Training sessions will be scheduled for
  newly appointed Union Benefit Representatives and Alternates as
  agreed to by the parties.  The sessions will concentrate on areas
  such as eligibility to receive benefits, description and
  interpretation of benefit plan provisions, and calculation of
  benefits.

• Conduct periodic on-site plant surveys and audits to evaluate
  training and education needs to improve employee service.

• Ad hoc training meetings on legal developments or other special
  needs.

b-nc                        - 32 -

DELPHI PROFIT SHARING PLAN

*[Misc. - Benefits Training and Education]*

Included also are any travel, lodging, and living expenses incurred by
Company and Union representatives in relation to the above.  In
addition, the Fund will pay for lost time (eight hours per day base
rate plus COLA) of Union Benefit Representatives attending such
programs away from their locations.  The Company will pay for the time
(eight hours per day base rate plus COLA) of alternate Union Benefit
Representatives who replace those attending such programs.

Very truly yours,

DELPHI ~~AUTOMOTIVE SYSTEMS~~ CORPORATION

~~Steven L. Gebbia~~Kevin M. Butler
~~Executive Director - Employee Benefits~~
Vice President
Human Resource Management

Accepted and Approved:

~~INTERNATIONAL UNION OF~~          IUE-CWA, the Industrial Division
~~ELECTRONIC, ELECTRICAL,~~         of the Communications Workers
~~SALARIED, MACHINE AND~~           of America, AFL-CIO, CLC
~~FURNITURE WORKERS AFL-CIO~~

By: ~~Harold E. Nichols~~James D. Clark

a-nc                          - 33 -

DELPHI PROFIT SHARING PLAN

*[Misc. - Improving Benefits Service Through Technology]*

**DELPHI ~~AUTOMOTIVE SYSTEMS~~ CORPORATION**

~~November 14, 1999~~ _____ , 2003

Mr. ~~Harold E. Nichols~~ James D. Clark
Chairman, ~~Delphi-~~IUE-CWA
Automotive Conference Board
IUE-CWA, the Industrial Division ~~International Union of Electronic,~~
of the Communications Workers ~~Electrical, Salaried, Machine and~~
of America, AFL-CIO, CLC ~~Furniture Workers, AFL-CIO~~
2360 West Dorothy Lane, Suite 201 ~~103 West Market Street, Suite 105~~
Dayton ~~Warren~~, Ohio ~~44418~~ 45439

Attn:  Mr. ~~Harold E. Nichols~~James D. Clark
       Delphi—IUE-CWA Automotive Conference Board

Dear Mr. ~~Nichols~~Clark:

During these negotiations, the parties recognized the need to move
ahead with the development of technological applications to improve
the quality of service provided to hourly employees.

1.  The parties recognized the need to provide the necessary tools to
    Local Union Benefit Representatives so that they may improve the
    service they are providing to hourly employees.  Local Union
    Benefit Representatives require basic information that can be
    accessed quickly in order to confidently and accurately answer
    many of the questions they receive.  Therefore, the parties have
    designed ~~a two process~~systems, the Benefits Data Access ~~System~~and
    the Benefits WorkStation Access systems, whereby Local Union
    Benefit Representatives have access to certain data elements from
    several benefit data systems.  These ~~Benefits Data Access~~ Ssystems
    provides inquiry only access to Local Union Benefit
    Representatives who complete a computer training program.  Access
    is limited to information for IUE-CWA hourly employees at their
    particular location.

2.  The parties jointly will develop and implement a new benefit
    documentation feature to the existing ~~Benefits Data Access~~
    Ssystems that will be available to Local Union Benefit
    Representatives.  The Systems will include benefit plan booklets,
    administrative manuals (where applicable), relevant contract
    provisions and appropriate process descriptions.  Upon approval by
    the Executive Board of Joint Activities, the cost of development,
    hardware and software requirements, conversion of written
    documentation, and installation and training, will be charged to
    the National Joint Skill Development and Training Fund.  It is
    contemplated the benefit documentation feature will be implemented
    during the term of the ~~1999~~2003 Agreement.

b-nc                              - 34 -

DELPHI PROFIT SHARING PLAN

*[Misc. - Improving Benefits Service Through Technology]*

3.  The parties further agreed to ~~continue to~~ provide hourly employees
    with ~~the~~ web technology in addition to the continued use of a
    Voice Response System for inquiry and transactions in the Personal
    Savings Plan.

4.  The parties agree to enhance the Benefit Data Access System to
    provide the pension Plan survivor coverage election/rejection and
    the cost of such survivor option.  The cost of development and
    implementation will be charged to the National Joint Skill
    Development and Training Fund.

In conclusion, during the term of the new Agreement, the parties
pledge to carefully consider every opportunity to improve the quality
and efficiency in benefits delivery.

                    Very truly yours,

                    DELPHI ~~AUTOMOTIVE SYSTEMS~~ CORPORATION




                    ~~Steven L. Gebbia~~Kevin M. Butler
                    ~~Executive Director - Employee Benefits~~
                    Vice President
                    Human Resource Management



Accepted and Approved:

~~INTERNATIONAL UNION OF~~     IUE-CWA, the Industrial Division
~~ELECTRONIC, ELECTRICAL,~~     of the Communications Workers
~~SALARIED, MACHINE AND~~       of America, AFL-CIO, CLC
~~FURNITURE WORKERS AFL-CIO~~


By: ~~Harold E. Nichols~~James D. Clark




b-nc                    - 35 -

# Exhibit V

EXHIBIT F-1

THE DELPHI PROFIT SHARING PLAN
FOR HOURLY-RATE EMPLOYEES
IN THE UNITED STATES

THE DELPHI PROFIT SHARING PLAN
FOR HOURLY-RATE EMPLOYEES IN THE UNITED STATES


ARTICLE I

ESTABLISHMENT AND EFFECTIVE
DATE OF PROFIT SHARING PLAN


1.01   Establishment of Plan
       Delphi ~~Automotive Systems~~ Corporation hereby establishes The
       Delphi Profit Sharing Plan for Hourly-Rate Employees in the
       United States (hereinafter referred to as the Plan).

1.02   Effective Date of the Plan
       The Plan shall become effective January 1, ~~2000~~2004, except as
       otherwise may be provided herein.  The ~~GM~~ Agreement dated
       ~~November 2, 1996~~ September 28, 1999 shall remain in effect until
       December 31, ~~1999~~2003, and shall govern distribution in
       ~~2000~~2004, based on any profits in ~~1999~~2003.


ARTICLE II

DEFINITION OF TERMS

The following definitions will apply to all words and phrases
capitalized in the text which follows.

2.01   "Administrator"
       Administrator means Delphi ~~Automotive Systems~~ Corporation.  The
       Administrator's address is ~~57~~825 Delphi Drive, Mail Code  48~~3~~0-
       ~~40~~10-~~606~~104, Troy, MI  48098.

2.02   "Associate"
       Associate means a non-consolidated joint venture in which the
       capital investment of the Corporation, either directly or
       indirectly, is between 20% and 50%, inclusive.

2.03   "Compensated Hours"
       (a)   Compensated Hours means all hours, not in excess of 1,850
             hours in any Plan Year, for which a Participant who is
             eligible to receive a distribution for a Plan Year received
             pay from the Corporation with respect to hourly-rate
             employment in U.S. Operations during the Plan Year on or
             after an Employee's date of enrollment.  The term shall
             include hours for which a Participant who is eligible to
             receive a distribution for a Plan Year receives base pay,
             overtime (with each hour paid at premium rates to be
             counted as one hour), vacation entitlement, holiday pay,
             bereavement pay, jury duty pay, short-term military duty
             pay, and call-in pay; provided, however, no hours shall be
             duplicated because of payment under more than one category.
             The term shall not include hours compensated in any other
             form (e.g., Cost-of-Living Allowance, night-shift premium,
             seven-day premium, incentive pay, moving allowance,
             supplemental unemployment benefit payments under the

2

Corporation's Supplemental Unemployment Benefit Plan [including automatic short week benefit payments] or Guaranteed Income Stream Benefit Plan, suggestion awards, tool allowances, imputed income, sickness and accident benefits, extended disability benefits, and allocations under this Plan).

(b)    The term Compensated Hours shall include, for a Participant who otherwise is eligible to receive a distribution for a Plan Year, 40 hours for each complete calendar week during such Plan Year that the Participant is on an approved sick leave of absence and for such complete calendar week has received Workers' Compensation payments from the Corporation as the result of a totally disabling occupational injury or disease under any Workers' Compensation law or act or any occupational disease, law, or act, provided:

(i)    the Participant otherwise would have been scheduled to work all hours during such complete calendar week(s); and

(ii)    the Participant is actively at work for the Corporation during at least one complete calendar week in the Plan Year; and

(iii)    during the Plan Year, or prior thereto, the Corporation has for such calendar week(s) either voluntarily paid Workers' Compensation benefits or failed to appeal the adverse determination of an applicable state agency or court awarding payment of Workers' Compensation benefits.

A Participant shall not receive credit for Compensated Hours applicable to any prior Plan Year as the result of a decision of an applicable state agency or court awarding benefits retroactively for periods during any prior Plan Year.

2.04    "Consolidated Subsidiary"
Consolidated Subsidiary means, for any Plan Year, any Subsidiary, the accounts of which are consolidated with those of the Corporation in the Statement of Consolidated Income and Consolidated Balance Sheet of the Corporation for such Plan Year.

2.05    "Corporation"
Corporation means Delphi ~~Automotive Systems~~ Corporation.

2.06    "Domestic"
Domestic means, with respect to any Consolidated Subsidiary or Non-Consolidated Subsidiary, any such Subsidiary that is incorporated and derives more than 50% of its revenue from activities carried on or located within the United States.

2.07    "Employee"
Employee means

3

(a) any person regularly employed in the United States by U.S. Operations of the Corporation on an hourly-rate basis, including:

    (1) hourly-rate persons employed on a full-time basis;

    (2) part-time hourly-rate employees who, on a regular and continuing basis, perform jobs having definitely established working hours, but the complete performance of which requires fewer hours of work than the regular workweek, provided the services of such employees are normally available for at least half of the employing unit's regular workweek;

(b) The term "Employee" shall not include employees represented by a labor organization which has not signed an agreement making the Plan applicable to such employees.

(c) The term "Employee" shall not include leased employees as defined under Section 414(n) of the Internal Revenue Code.

(d) The term "employee" shall not include contract employees, bundled services employees, consultants, or other similarly situated individuals, or individuals who have represented themselves to be independent contractors.

The following classes of individuals are ineligible to participate in this Plan, regardless of any other Plan terms to the contrary, and regardless of whether the individual is a common-law employee of the Corporation:

    (1) Any individual who provides services to the Corporation where there is an agreement with a separate company under which the services are provided. Such individuals are commonly referred to by the Corporation as "contract employees" or "bundled-services employees";

    (2) Any individual who has signed an independent contractor agreement, consulting agreement, or other similar personal service contract with the Corporation;

    (3) Any individual who both (a) is not included in any represented bargaining unit and (b) who the Corporation classifies as an independent contractor, consultant, contract employee, or bundled-services employee during the period the individual is so classified by the Corporation.

The purpose of this provision is to exclude from participation all persons who may actually be common-law employees of the Corporation, but who are not paid as though they were employees of the Corporation, regardless of the reason they are excluded from the payroll, and regardless of whether that exclusion is correct.

2.08 "Investment"
Investment means a company in which the Corporation has less than a 20% ownership.

2.09    "Non-Consolidated Subsidiary"
Non-Consolidated Subsidiary means, for any Plan Year, any
Subsidiary which is not a Consolidated Subsidiary for such Plan
Year.

2.10    "Participant"
Participant means an Employee who, at any time during a Plan
Year, has been enrolled in the Plan in accordance with
Article III and is eligible to receive a Profit Sharing Amount
for such Plan Year.

2.11    "Plan"
Plan means The Delphi Profit Sharing Plan for Hourly-Rate
Employees in the United States.

2.12    "Plan Year"
Plan Year means the 12-month period beginning on January 1 and
ending on December 31.

2.13    "Profit Sharing Amount"
Profit Sharing Amount means the portion of the Total Profit
Share allocated to a Participant.

2.14    "Profits"
Profits means income earned by U.S. Operations before income
taxes and "extraordinary" items (with "extraordinary" defined as
under generally accepted accounting principles).  Profits are
before any profit sharing charges are deducted.

Profits also are before incentive program charges for U.S.
Operations, including (i) Delphi ~~Automotive Systems~~
Corporation, (ii) Consolidated Subsidiaries, and (iii) Non-
Consolidated Subsidiaries.  Excluded from Profits are any
profits (or losses) derived from non-U.S. Subsidiaries of U.S.
Operations and any dividends received from non-U.S.
Subsidiaries.  Income from non-consolidated U.S. Operations
shall be included on an after-tax basis.

2.15    "Sales and Revenues"
Sales and Revenues means the total net sales and revenues of
Delphi U.S. Operations for such Plan Year.

2.16    "Subsidiary"
Subsidiary means a corporation, a majority of the voting stock
of which is owned, directly or indirectly, by the Corporation.

2.17    "Total Profit Share"
Total Profit Share means an obligation of the Corporation for
any Plan Year in an amount equal to the sum of:

(a)    6% of the portion of the Profits for such Plan Year which
exceeds 0.0% of Sales and Revenues for such Plan Year but
does not exceed 1.8% of Sales and Revenues;

(b)    8% of the portion of the Profits for such Plan Year which
exceeds 1.8% of Sales and Revenues for such Plan Year but
does not exceed 2.3% of Sales and Revenues;

(c)    10% of the portion of the Profits for such Plan Year which
exceeds 2.3% of Sales and Revenues for such Plan Year but
does not exceed 4.6% of Sales and Revenues;

(d)    14% of the portion of the Profits for such Plan Year which
exceeds 4.6% of Sales and Revenues for such Plan Year but
does not exceed 6.9% of Sales and Revenues; and

(e)    17% of the portion of the Profits for such Plan Year which
exceeds 6.9% of Sales and Revenues for such Plan Year.

In any Plan Year in which a Total Profit Share is achieved,
the minimum Total Profit Share will be $50 multiplied by the
total number of participants eligible for a distribution for the
Plan Year under this Plan or under a similar plan established by
the Corporation or would be eligible under a similar plan.

2.18    "U.S. Operations"
U.S. Operations means all operations of the Corporation and its
Domestic Subsidiaries, both consolidated and non-consolidated,
in the financial statements included in the Delphi Annual Report
that carry on business primarily in the United States.  The term
excludes (1) the following U.S. incorporated subsidiaries and
their employees whose operations are primarily involved in
business outside the United States:  Delphi Automotive Systems
(Holdings), Inc.; Delphi Automotive Systems International, Inc.;
Delphi International Services, Inc.  (Delaware); Delphi
Corporation (Delaware); and any other subsidiaries that may
qualify in the future, (2) Associates, and (3) Investments.

ARTICLE III

ENROLLMENT

3.01    Enrollment
An Employee will be enrolled in the Plan on the later of (a) the
date upon which the employee meets the Plan definition of
Employee, Section 2.07, or (b) the date on which this Plan first
becomes applicable to the unit in which such person is employed,
provided the person remains employed on such date.

ARTICLE IV

ALLOCATION AND DISTRIBUTION

4.01    Allocation of the Total Profit Share to this Plan
The Total Profit Share for the Plan Year is to be allocated to
this Plan in the proportion that (a) the number of Participants
in this Plan entitled to a distribution for the Plan Year bears
to (b) the total number of all hourly-rate employees and non-
executive salaried employees of the U.S. Operations and other
persons who are entitled to a distribution for the Plan Year
under this Plan or under a similar plan or would be entitled
under a similar plan.

4.02    Allocation of Profit Sharing Amount to Participants

The portion of the Total Profit Share for the Plan Year
allocated to this Plan in accordance with Section 4.01 will be
allocated to each Participant entitled to a distribution for the
Plan Year in the proportion that (a) the Participant's
Compensated Hours for the Plan Year bears to (b) the total
Compensated Hours of all Participants in this Plan entitled to a
distribution for the Plan Year.

4.03  <u>When Profit Sharing Amounts are Allocated and Distributed</u>
    (a)  <u>Commencing with the 2003 Plan Year and a</u>~~As~~ soon as
administratively feasible, but in no event later than ~~two
and one-half~~ <u>the third</u> month~~s~~ following the end of the Plan
Year, the Profit Sharing Amount will be allocated and
distributed to each eligible Participant pursuant to this
Article IV.  The Corporation shall deduct from the amount
of any such distribution to a Participant (or beneficiary)
any amount required to be deducted, by reason of any law or
regulation, for payment of taxes or other payments to any
federal, state, or local government.  Each distribution
shall be accompanied by a statement showing the computation
of such Participant's Profit Sharing Amount.  Withholding
tax obligations of the Corporation with respect to any such
distribution will be satisfied as determined by the
Administrator of the Plan.  In determining the amount of
any applicable tax, the computation of which takes personal
exemptions into account, the Corporation shall be entitled
to rely on the official form filed with the Corporation for
purposes of income tax withholding.  No interest shall be
payable with respect to any such distribution.

    (b)  In lieu of receiving a distribution in cash pursuant to
subsection (a) of this Section 4.03, each Participant
entitled to a distribution for any Plan Year that is in
excess of the minimum Total Profit Share as defined in
Article II, Section 2.17, other than a Participant whose
employment terminated prior to distribution of such Profit
Sharing Amounts, may elect to have the Corporation
contribute to the Participant's account under The Delphi
Personal Savings Plan for Hourly-Rate Employees in the
United States an amount up to 100%, in multiples of 1% of
such distribution, provided such amount is not in excess of
the maximum amount permitted under Section 415 of the Code.
Such election shall be filed at such time and in such
manner as the Administrator shall determine and will remain
continuously in effect until changed by the Employee.  If
the Administrator does not receive an election from a
Participant on or before the date established by the
Administrator for submission of such elections for the
applicable Plan Year, the Participant's Profit Sharing
Amount for the Plan Year shall be distributed to the
Participant.

    (c)  Any amounts elected to be deferred by a Participant
pursuant to Section 4.03(b) of this Article IV which cannot
be deferred as a result of the application of Section 415
of the Code shall be distributed to the Participant.

7

(d)  Notwithstanding Section 6.04 of the Plan, in the event the
     Corporation is legally obligated to pay a tax levy, child
     support, or similar legal obligations to any third party,
     no election made by the Participant to defer a Profit
     Sharing Amount pursuant to Section 4.03(b) shall be
     effective.  To the extent necessary and/or available, the
     legally required payment will be deducted from the
     Participant's Profit Sharing Amount and paid to the
     applicable third party.

4.04   To Whom Profit Sharing Amounts are Distributed
       In addition to Participants who are on the active roll at the
       end of the Plan Year, the Profit Sharing Amount for the Plan
       Year, if any, will be paid to otherwise eligible
       (1) Participants on layoff or leave of absence, including sick
       leave, at the end of the Plan Year, (2) Participants who retired
       during the Plan Year, and (3) beneficiaries of Participants who
       died during the Plan Year.  Employees who terminated during the
       Plan Year for any reason other than death, retirement, or any
       voluntary termination of employment program shall not be
       eligible for a distribution for the Plan Year.  The amount of
       any such distribution shall be determined in accordance with
       Section 4.02 of this Article IV.

       Distribution of a Profit Sharing Amount will be made only to a
       Participant.  However, if the Participant is deceased at the
       time of distribution, the distribution will be made to the
       beneficiary or beneficiaries designated by the Participant
       pursuant to Article V.

4.05   Overpayments and Underpayments
       (a)  No amount allocated to a Participant entitled to a
            distribution for a Plan Year under this Plan may be
            increased or decreased in a subsequent Plan Year except in
            the event it shall be determined an error in excess of $3
            was made in the computation of any Profit Sharing Amount for
            any Plan Year.  Such error shall be handled as follows:

            (i)  If such Participant's Profit Sharing Amount (correctly
                 determined) was greater than the amount paid to such
                 Participant by an amount in excess of $3, the
                 deficiency shall be paid to such Participant within 60
                 days after such determination.

            (ii) If such Participant's Profit Sharing Amount (correctly
                 determined) was less than the amount paid to such
                 Participant by an amount in excess of $3, written
                 notice thereof shall be mailed to such Participant
                 receiving such Profit Sharing Amount and the
                 Participant shall return the amount of such overpayment
                 to the Corporation; provided, however, that no such
                 repayment shall be required if notice has not been
                 given within 120 days from the date on which the
                 overpayment was made.  If such Participant shall fail
                 to return such amount promptly, the Corporation shall
                 make an appropriate deduction or deductions from any
                 monies then payable, or which may become payable, by
                 the Corporation to the employee in the form of wages or

8

future payments under this Plan; provided, however,
that any such deduction shall not exceed $30 from any
one paycheck, but any such deduction from subsequent
payments under the Plan shall not be limited.

(b)   The Corporation shall make an appropriate deduction or
deductions from any future benefit payment or payments
payable to the Participant under this Plan for the purpose
of recovering overpayments made to the Participant in the
form of wages or under any Delphi benefit plan.  Amounts so
deducted shall be remitted to the Corporation or the
benefit plan, as applicable.  The Corporation, by such
remittance, shall be relieved of any further liability to
the Participant with respect to such payments under this
Plan.

4.06   Benefit Drafts Not Presented
Unless prevented by law, the amount of any payment made to a
Participant under the Plan, but not claimed by the
Participant prior to December 31 of the Plan Year following
the date of such payment, shall be added to the portion of the
Total Profit Share next allocated to this Plan.  In this event,
such Participant shall have no further entitlement to such
payment.

ARTICLE V

OTHER PROVISIONS

5.01   Designation of Beneficiaries in Event of Death
A Participant shall be deemed to have designated as beneficiary
or beneficiaries under this Plan the person or persons who
receive the Participant's life insurance proceeds under the
Corporation's Life and Disability Benefits Program for Hourly
Employees unless such Participant shall have assigned such life
insurance, in which case the Profit Sharing Amount will be paid
to the estate of the Participant unless such Participant has
submitted, in writing, a different beneficiary or beneficiaries
to the Plan Administrator.

A beneficiary or beneficiaries will receive, in the event of the
Participant's death, all or part of the Profit Sharing Amount of
the Participant in accordance with the applicable designation.
If the Corporation shall be in doubt as to the right of any
beneficiary to receive any Profit Sharing Amount, the
Corporation may deliver such Profit Sharing Amount to the estate
of the Participant, in which case the Corporation shall not have
any further liability to anyone.

ARTICLE VI

ADMINISTRATION

6.01   Administrative Responsibility
The Corporation will have full power and authority to construe,
interpret, and administer this Plan and to pass upon and decide
cases presenting claims in conformity with the objectives of the
Plan and under such rules as it may establish from time to time.

9

Decision of the Corporation will be final and binding upon any
of its employees.

6.02    Certification by Independent Certified Public Accountants
The Corporation will compute Sales and Revenues and Profits (as
defined in Article II, Sections 2.15 and 2.14, respectively) in
accordance with generally accepted accounting principles and
then calculate the Total Profit Share and the allocation of
Total Profit Share among plans in accordance with the provisions
of this Plan.  Such computations and calculations, when
certified by the opinion of a firm of independent certified
public accountants (selection of which shall be made by the
Corporation and must be approved by the shareholders of the
Corporation), shall be final and binding on Participants; the
collective bargaining representative of such Participants, if
any; beneficiaries and the Corporation.

6.03    Administrative Expenses
Administrative expenses of the Plan shall be paid by the
Corporation.

6.04    Non-Assignability
Except as provided in Article IV, Section 4.05, to the extent
allowed by applicable law, no right or interest of any
Participant under this Plan shall be assignable or transferable,
in whole or in part, either directly or by operation of law or
otherwise, including, without limitation, by execution, levy,
garnishment, attachment, pledge, or in any other manner, but
excluding devolution by death or mental incompetency; no
attempted assignment or transfer thereof shall be effective; and
no right or interest of any Participant under this Plan shall be
liable for, or subject to, any obligation or liability of such
Participant.

6.05    Incapacity
If the Administrator deems any person incapable of receiving any
distribution to which such person is entitled under this Plan
because such person has not yet reached the age of majority, or
because of illness, infirmity, mental incompetency, or other
incapacity, it may make payment, for the benefit or the account
of such incapacitated person, to any person selected by the
Administrator whose receipt thereof shall be a complete
settlement thereof.  Such payments shall, to the extent thereof,
discharge all liability of the Corporation and each other
fiduciary with respect to this Plan.

6.06    Notice of Denial
The Administrator shall provide adequate notice, in writing, to
any Participant or beneficiary whose request for a distribution
or for a distribution in a greater amount under this Plan has
been denied setting forth the specific reason or reasons for
such denial.  The Participant or beneficiary shall be given an
opportunity for a full and fair review by the Corporation of the
decision denying the request.  The Participant will be given a
reasonable period of time, to be established by the Corporation
from the date of the notice denying such request, within which
to request such review.

ARTICLE VII

AMENDMENT, MODIFICATION,
SUSPENSION, OR TERMINATION

7.01   Amendment, Modification, Suspension, or Termination
The Corporation reserves the right, by and through its Board of
Directors, to amend, modify, suspend, or terminate the Plan
including specifically the right prior to making the allocation
of contributions, as provided in Article IV, to include as
Employees for purposes of the Plan such other employees of the
Corporation and its Domestic Consolidated and Non-Consolidated
Subsidiaries as the Corporation may specify.

[Paragraph 109 Leave]


DELPHI ~~AUTOMOTIVE SYSTEMS~~ CORPORATION

~~September 28, 1999~~ _____, 2003


International Union, United Automobile
  Aerospace and Agricultural Implement
  Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI  48214

Attn:  Mr. Richard Shoemaker
       Vice President and Director
       General Motors Department

Dear Mr. Shoemaker:

During the discussions between the parties held in conjunction with
completing the Profit Sharing Plan language, the Union requested that
all employees on leave under Paragraph 109 of the National Agreement
to engage in the business of or to work for the Local Union should be
included as eligible participants under such Plan.  The Corporation
pointed out, however, that certain employees, such as Trustees,
Sergeants at Arms and Guides, and any other employees not involved in
the in-plant administration of the National Agreement, would not be
included in the Plan and would not receive any compensated hours under
the Plan while on such leave.  Moreover, it is understood that the
Local Union will advise Local Management each year, in December, of
the name, Social Security number, and job title of each such employee
therefore not eligible for benefits under the Profit Sharing Plan.


                          Very truly yours,

                          DELPHI ~~AUTOMOTIVE SYSTEMS~~
                          CORPORATION


                          ~~Steven L. Gebbia~~Kevin M. Butler
                          ~~Executive Director Employee Benefits~~
                          Vice President
                          Human Resource Management


Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

[Union Reports]

### DELPHI ~~AUTOMOTIVE SYSTEMS~~ CORPORATION

~~September 28, 1999~~_____, 2003

International Union, United Automobile
  Aerospace and Agricultural Implement
  Workers of America, UAW
8000 East Jefferson Avenue
Detroit, MI  48214

Attn:  Mr. Richard Shoemaker
       Vice President and Director
       General Motors Department

Dear Mr. Shoemaker:

This will confirm the understanding reached during our recent
discussions with the Union regarding the information to be provided to
the Union supporting computations made to compute the "Total Profit
Share" and "Allocation of the Total Profit Share" to this Plan in the
Profit Sharing Plan for Hourly-Rate Employees in the United States
(the Profit Sharing Plan).

In these discussions, we advised the Union that for each Plan Year the
Corporation would provide the following information:

* A summary report of Sales and Revenues, and Profits, adjusted in
  accordance with the Profit Sharing Plan, similar to the attached
  format;

* A report displaying the computation of the Total Profit Share and
  Allocation of the Total Profit Share to this Plan;

* Annual statement of consolidated income, including the footnotes,
  which will appear in the financial statements in the Annual Report
  to stockholders for the Plan Year; and

* A statement of the impact of changes described in the footnotes on
  U.S. Operations as defined in the Profit Sharing Plan.

The data reported will be certified by the independent public
accountants in accordance with the Profit Sharing Plan.

The Corporation will provide the Union with the information described
above as soon as practicable after it becomes available.

This understanding has been reached on the basis that the Union will
ensure that, until and to the extent the information is made available
by the Corporation to the public at large, the information will be
disclosed only to those reviewing for the Union the computations
related to the Profit Sharing Plan, and neither the Union nor anyone

13

reviewing such information for the Union will make any other
disclosure of the information.

                              Very truly yours,

                              DELPHI ~~AUTOMOTIVE SYSTEMS~~
                              CORPORATION


                              ~~Steven L. Gebbia~~Kevin M. Butler
                              ~~Executive Director-Employee Benefits~~
                              Vice President
                              Human Resource Management


Attachment

Accepted and Approved:

INTERNATIONAL UNION, UNITED AUTOMOBILE,
AEROSPACE AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA, UAW

By: Richard Shoemaker

**HOURLY PROFIT SHARING PLAN**

Sales and Revenues & Profits, as Defined
in the Plan, for the Year Ended December 31, 20 _

($ in Millions)

| SALES AND REVENUES | |
|---|---|
| Total U.S. Net Sales and Revenues | $ |
| Deduct Sales and Revenues of Excluded Subsidiaries and Associates | $_____ |
| Sales and Revenues of U.S. Operations as Defined in the Plan | $_____ |

| PROFITS AS DEFINED IN THE PLAN | |
|---|---|
| Net Income in the United States | $ |
| Add (Deduct): | |
| • Net Income of Excluded Subsidiaries and Associates | |
| • Extraordinary Items | |
| • Income Taxes of U.S. Operations Excluding Non-Consolidated Subsidiaries | |
| • Provision for the Corporation, Consolidated Subsidiaries, and Non-Consolidated Subsidiaries Incentive Programs Applicable to U.S. Operations | _____ |
| • Profit Sharing Accrual | |
| Profits as Defined in the Plan | $_____ |

| PORTION OF PROFITS AS DEFINED IN THE PLAN | PROFITS AS DEFINED IN THE PLAN | PROFIT SHARING RATE | TOTAL PROFIT SHARE |
|---|---|---|---|
| | | % | |
| Between 0.0% and 1.8% of Sales and Revenues | $ | 6.0 | $ |
| Between 1.8% and 2.3% of Sales and Revenues | | 8.0 | |
| Between 2.3% and 4.6% of Sales and Revenues | | 10.0 | |
| Between 4.6% and 6.9% of Sales and Revenues | | 14.0 | |
| Over 6.9% of Sales and Revenues | _____ | 17.0 | _____ |
| | $_____ | | $_____ |
| Deduct Portion of Profit Sharing Allocable to Non-Participating Employees | | | _____ |
| Profit Sharing Accrual | | | $_____ |

15

# Exhibit W

# *Supplemental Agreement*

Covering

## SUPPLEMENTAL UNEMPLOYMENT BENEFIT PLAN

**Exhibit D**

to

AGREEMENT

between

DELPHI CORPORATION

and

UAW

dated

**September 18, 2003**

**(Effective October 13, 2003)**

Art. I, 4(a)

## Section 4.    Disputed Claims for State System Benefits

**(a)** With respect to any Week for which an Employee has applied for a Benefit and for which the Employee:

**(1)**    has been denied a State System Benefit, and the denial is being protested by the Employee through the procedure provided therefor under the State System, or

**(2)**    has received a State System Benefit, payment of which is being protested by the Company through the procedure provided therefor under the State System and such protest has not, upon appeal, been held by the Board to be frivolous,

and the Employee is eligible to receive a Benefit under the Plan except for such denial, or protest, the payment of such Benefit shall be suspended until such dispute shall have been determined.

**(b)** If the dispute shall be finally determined in favor of the Employee, the Benefit shall be paid to the Employee.

# ARTICLE II

# AMOUNT OF BENEFITS

## Section 1.    Regular Benefits

**(a)** The Regular Benefit payable to an eligible Employee for any Week beginning on or after the effective date of this Plan shall be an amount which, when added to the Employee's State Benefit and Other Compensation, will equal 95% of the Employee's Weekly After-Tax Pay, minus $30.00, to take into account work-related expenses not incurred; provided,

12

however, that such Benefit shall not exceed $190 for any Week with respect to which the Employee is not receiving State System Benefits because of a reason listed in item (2) or (6) of Section 1(b) of Article I and is laid off or continues on layoff by reason of having refused to accept work when recalled pursuant to the Collective Bargaining Agreement or having refused an offer by the Company of other available work at the same Plant or at another Plant in the same labor market area (as defined in Section 3(b)(3) of Article I); except that refusal by skilled Tool and Die, Maintenance and Construction or Power House Employees or apprentices of work other than work in Tool Room Departments, Maintenance Departments and Power House Departments, respectively, shall not result in the application of the maximum provided for in this paragraph.

(b) An otherwise eligible Employee entitled to a Benefit reduced, as provided in subsection 3(d) of Article I, because of ineligibility (or eligibility for a Leveling Week Benefit) with respect to part of the Week, will receive 1/5 of a Regular Benefit computed under subsection (a) of this Section for each work day of the Week for which otherwise eligible; provided, however, that there shall be excluded from such computation any pay which could have been earned, computed, as if payable, for hours made available by the Company but not worked during the days for which the Employee is not eligible for a Benefit under subsection 3(d) of Article I.

## Section 2.    Automatic Short Week Benefit

(a) The Automatic Short Week Benefit payable to any eligible Employee for any Week beginning on or after the effective date of this Plan shall be an amount equal to the product of the number by which 40 exceeds the Employee's Compensated or Available Hours,

13

Art. II, 5

## Section 5.   Withholding Tax

The Trustee or the Company shall deduct from the amount of any Benefit (or Separation Payment) any amount required to be withheld by the Trustee or the Company by reason of any law or regulation, for payment of taxes or otherwise to any federal, state, or municipal government.  In determining the amount of any applicable tax entailing personal exemptions, the Trustee or the Company shall be entitled to rely on the official form filed by the Employee with the Company for purposes of income tax withholding on regular wages.

## Section 6.   Deduction of Union Dues

During any period while there is in effect an agreement between the Company and the Union concerning the maintaining of the Plan, the Company, upon notification by the designated financial officer of the local Union shall notify the Trustee to deduct monthly Union dues from Regular Benefits paid under the Plan and to pay such sums directly to the local Union on behalf of any Employee who has on file with the Company a written authorization providing for such deductions as set forth in the Collective Bargaining Agreement.

## ARTICLE III

## DURATION OF BENEFITS

## Section 1.   Volume Related Layoffs

An Employee, with one or more Years of Seniority, at work on or after the effective date of this Agreement will be granted full job security from volume declines, with the exception of up to 48 weeks of qualifying layoff during the term of this Agreement.

20

Art. III, 2

### Section 2.    Non-Volume Related Layoffs

An Employee, with one or more Years of Seniority, at work on or after the effective date of this Agreement and placed on a qualifying, non-volume related layoff thereafter will be eligible for SUBenefits for the duration of such layoff subject to the provisions of Article I of this Plan.

### Section 3.    Limitation of Duration of Benefits

If it appears that total SUB expenditures will exceed the SUB Maximum Financial Liability Cap during the term of this Agreement, the parties may take appropriate action to reduce the rate of expenditure and extend benefit duration.

## ARTICLE IV
## SEPARATION PAYMENT

### Section 1.    Eligibility

An Employee shall be eligible for a Separation Payment if the Employee:

(a)  has been on layoff from the Company for a continuous period of at least 12 months (or any shorter period determined by the Company) and such layoff is not a result of any of the circumstances or conditions set forth in Section 3(b)(2) of Article I; provided, however, an Employee shall be deemed to have been on layoff from the Company for a continuous period if, while on layoff, the Employee accepts an offer of work by the Company and subsequently is laid off again within not more than 10 work days from the date reinstated; or

(b)  becomes disabled and would be eligible for total and permanent disability benefits under any Company pension plan or retirement program except that the Employee does not have the years of credited service required to be eligible for such benefits; and in addition to (a) or (b) above;

21

Art. IV, 1(c)

(c)  had 1 or more Years of Seniority on the last day the Employee was on the Active Employment Roll, and such Years of Seniority had not been broken on or prior to the earliest date on which application can be made to the Company;

(d)  has not refused an offer of work pursuant to any of the conditions set forth in Section 3(b)(3) of Article I, on or after the last day worked for the Company, and prior to the earliest date on which the Employee can make application;

(e)  has made application for a Separation Payment prior to 24 months (36 months in the case of an Employee who has 10 or more Years of Seniority) from the commencement date of layoff or disability, except that an Employee who meets the requirements of subsection 1(b) of this Section may make such application on or before the 30th day following the last month for which the Employee was eligible to receive an Extended Disability Benefit in accordance with Section 7 of Article II of the Life and Disability Benefits Program, provided that in the case of layoff no application may be made prior to 12 continuous months of layoff from the Company (or any shorter period determined by the Company).

## Section 2.    Payment

(a)  A Separation Payment shall be payable only in a lump sum.

(b)  Determination of Amount

(1)  The Separation Payment payable to an eligible Employee shall be an amount determined by multiplying

(i)  the Employee's Base Hourly Rate by

(ii)  the applicable Number of Hours' Pay as shown in the following table:

22

Art. IV, 2(b)(1)(ii)

# SEPARATION PAYMENT TABLE

| Years of Seniority on Last Day on the Active Employment Roll | Number of Hours' Pay |
|---|---|
| 1 but less than 2 | 50 |
| 2 but less than 3 | 70 |
| 3 but less than 4 | 100 |
| 4 but less than 5 | 135 |
| 5 but less than 6 | 170 |
| 6 but less than 7 | 210 |
| 7 but less than 8 | 255 |
| 8 but less than 9 | 300 |
| 9 but less than 10 | 350 |
| 10 but less than 11 | 400 |
| 11 but less than 12 | 455 |
| 12 but less than 13 | 510 |
| 13 but less than 14 | 570 |
| 14 but less than 15 | 630 |
| 15 but less than 16 | 700 |
| 16 but less than 17 | 770 |
| 17 but less than 18 | 840 |
| 18 but less than 19 | 920 |
| 19 but less than 20 | 1000 |
| 20 but less than 21 | 1085 |
| 21 but less than 22 | 1170 |
| 22 but less than 23 | 1260 |
| 23 but less than 24 | 1355 |
| 24 but less than 25 | 1455 |
| 25 but less than 26 | 1560 |
| 26 but less than 27 | 1665 |
| 27 but less than 28 | 1770 |
| 28 but less than 29 | 1875 |
| 29 but less than 30 | 1980 |
| 30 and over | 2080 |

23

Art. IV, 2(b)(2)

(2)    The amount of Separation Payment so computed shall be reduced by the amount of any Benefits paid or payable to an Employee with respect to a Week occurring after the last day worked for the Company.

(3)    A Separation Payment payable hereunder shall be reduced by the amount of any payment received or receivable with respect to any layoff or separation of the Employee from the Company subsequent to the last day worked for the Company under any other "SUB" plan or plans of the Company or under any Company plan or program to which the Company has contributed.

(4)    If an Employee has been paid a prior Separation Payment and thereafter was hired again by the Company within 3 years from the last day worked in the Bargaining Unit, or if the Employee received a prior Separation Payment by reason of total and permanent disability and subsequently recovers, reports for work and such Employee's Seniority is reinstated under the Collective Bargaining Agreement,

(i)    Years of Seniority for purposes of determining the amount of the Employee's current Separation Payment shall mean the sum of the Years of Seniority used to determine the amount of the Employee's prior Separation Payment plus any other Years of Seniority acquired thereafter and which the Employee has on the last day on the Active Employment Roll with respect to the Employee's current Separation Payment, and

(ii)    there shall be subtracted, from the Number of Hours' Pay based on the Employee's Years of Seniority determined in (i) above, the Number of Hours' Pay used to calculate the Employee's prior Separation Payment.

24

(5)    The Separation Payment payable to an eligible Part-Time Employee shall be reduced in the same ratio as the Employee's scheduled hours of work at time of layoff bears to 40 hours, provided, however, that if an Employee has worked as a full-time and a Part-Time Employee, the Employee's Separation Payment shall be computed by multiplying the Number of Hours' Pay indicated by the Employee's Years of Seniority on the Employee's last day on the Active Employment Roll by a fraction the numerator of which is the sum of

(i)    the number of such Years during which the Employee was a full-time Employee, and

(ii)    the number of such Years during which the Employee was a Part-Time Employee, adjusted by the ratio which scheduled hours of work in such Years bears to 40; and the denominator of which is the Employee's Years of Seniority on the Employee's last day on the Active Employment Roll.

## Section 3.    Effect of Separation Payment on Seniority

An Employee who is issued and accepts a Separation Payment (A) agrees that such Payment is a lump sum payment allocable to an inactive period ("Allocation Period") during which no other pay or benefits or rights of employment shall apply, (B) shall cease to be an Employee and shall have Seniority canceled at any and all of the Company's plants and locations as of the date the Employee's application for the Separation Payment was received by the Company ("Termination Date") for all purposes, (C) shall not be eligible to receive a special early retirement under any Company retirement plan, (D) shall not be permitted to retire under any Company retirement plan during the Allocation Period following the Termination Date, and (E) cannot grow into retirement eligibility if ineligible as of the break in

25

# Exhibit X

# *Supplemental Agreement*

Covering

## SUPPLEMENTAL UNEMPLOYMENT BENEFIT PLAN

**Exhibit D**

**to**

**AGREEMENT**

**between**

**DELPHI CORPORATION**

**and**

**IUE-CWA**

**dated**

**November 16, 2003**

**(Effective December 8, 2003)**

Art. I, 4(2)

and the Employee is eligible to receive a Benefit under the Plan except for such denial, or protest, the payment of such Benefit shall be suspended until such dispute shall have been determined.

**(b)** If the dispute shall be finally determined in favor of the Employee, the Benefit shall be paid to the Employee.

# ARTICLE II

# AMOUNT OF BENEFITS

## Section 1.   Regular Benefits

**(a)** The Regular Benefit payable to an eligible Employee for any Week beginning on or after the effective date of this Plan shall be an amount which, when added to the Employee's State Benefit and Other Compensation, will equal 95% of the Employee's Weekly After-Tax Pay, minus $30.00, to take into account work-related expenses not incurred; provided, however, that such Benefit shall not exceed $190 for any Week with respect to which the Employee is not receiving State System Benefits because of a reason listed in item (2) or (6) of Section 1(b) of Article I and is laid off or continues on layoff by reason of having refused to accept work when recalled pursuant to the Collective Bargaining Agreement or having refused an offer by the Company of other available work at the same Plant or at another Plant in the same labor market area (as defined in Section 3(b)(3) of Article I); except that refusal by skilled Tool and Die, Maintenance and Construction or Power House Employees or apprentices of work other than work in Tool Room Departments, Maintenance Departments and Power House Departments, respectively, shall not result in the

12

application of the maximum provided for in this paragraph.

**(b)** An otherwise eligible Employee entitled to a Benefit reduced, as provided in subsection 3(d) of Article I, because of ineligibility (or eligibility for a Leveling Week Benefit) with respect to part of the Week, will receive 1/5 of a Regular Benefit computed under subsection (a) of this Section for each work day of the Week for which otherwise eligible; provided, however, that there shall be excluded from such computation any pay which could have been earned, computed, as if payable, for hours made available by the Company but not worked during the days for which the Employee is not eligible for a Benefit under subsection 3(d) of Article I.

### Section 2    Automatic Short Week Benefit

**(a)** The Automatic Short Week Benefit payable to any eligible Employee for any Week beginning on or after the effective date of this Plan shall be an amount equal to the product of the number by which 40 exceeds the Employee's Compensated or Available Hours, counted to the nearest tenth of an hour, multiplied by 80% of the Employee's Base Hourly Rate.

**(b)** An Employee, who breaks Seniority during a Week by reason of death or of retirement under the provisions of the Delphi Hourly-Rate Pension Plan and is eligible for an Automatic Short Week Benefit with respect to certain hours of layoff during the Week prior to the date Seniority is broken, will receive an amount computed as provided in subsection 2(a) above based on the number by which the hours for which the Employee would regularly have been compensated exceeds the Employee's Compensated or Available Hours with respect to that part of the Week prior to the date Seniority is broken.

13

Art. II, 5

## Section 5.    Withholding Tax

The Trustee or the Company shall deduct from the amount of any Benefit (or Separation Payment) any amount required to be withheld by the Trustee or the Company by reason of any law or regulation, for payment of taxes or otherwise to any federal, state, or municipal government.  In determining the amount of any applicable tax entailing personal exemptions, the Trustee or the Company shall be entitled to rely on the official form filed by the Employee with the Company for purposes of income tax withholding on regular wages.

## Section 6.    Deduction of Union Dues

During any period while there is in effect an agreement between the Company and the Union concerning the maintaining of the Plan, the Company, upon notification by the designated financial officer of the local Union shall notify the Trustee to deduct monthly Union dues from Regular Benefits paid under the Plan and to pay such sums directly to the local Union on behalf of any Employee who has on file with the Company a written authorization providing for such deductions as set forth in the Collective Bargaining Agreement.

## ARTICLE III

## DURATION OF BENEFITS

## Section 1.    Volume Related Layoffs

An Employee, with one or more Years of Seniority, at work on or after the effective date of this Agreement will be granted full job security from volume declines, with the exception of up to <u>48</u> weeks of qualifying layoff during the term of this Agreement.

20

of this Agreement, the parties may take appropriate action to reduce the rate of expenditure and extend benefit duration.

# ARTICLE IV

# SEPARATION PAYMENT

## Section 1.    Eligibility

An Employee shall be eligible for a Separation Payment if the Employee:

(a)  has been on layoff from the Company for a continuous period of at least 12 months (or any shorter period determined by the Company) and such layoff is not a result of any of the circumstances or conditions set forth in Section 3(b)(2) of Article I; provided, however, an Employee shall be deemed to have been on layoff from the Company for a continuous period if, while on layoff, the Employee accepts an offer of work by the Company and subsequently is laid off again within not more than 10 work days from the date reinstated; or

(b)  becomes disabled and would be eligible for total and permanent disability benefits under any Company pension plan or retirement program except that the Employee does not have the years of credited service required to be eligible for such benefits; and in addition to (a) or (b) above;

(c)  had 1 or more Years of Seniority on the last day the Employee was on the Active Employment Roll, and such Years of Seniority had not been broken on or prior to the earliest date on which application can be made to the Company;

(d)  has not refused an offer of work pursuant to any of the conditions set forth in Section 3(b)(3) of Article I,

on or after the last day worked for the Company, and prior to the earliest date on which the Employee can make application;

(e)  has made application for a Separation Payment prior to 24 months (36 months in the case of an Employee who has 10 or more Years of Seniority) from the commencement date of layoff or disability, except that an Employee who meets the requirements of subsection 1(b) of this Section may make such application on or before the 30th day following the last month for which the Employee was eligible to receive an Extended Disability Benefit in accordance with Section 7 of Article II of the Life and Disability Benefits Program, provided that in the case of layoff no application may be made prior to 12 continuous months of layoff from the Company (or any shorter period determined by the Company).

## Section 2.   Payment

(a)   A Separation Payment shall be payable only in a lump sum.

(b)  Determination of Amount

(1)  The Separation Payment payable to an eligible Employee shall be an amount determined by multiplying

(i)    the Employee's Base Hourly Rate by

(ii)   the applicable Number of Hours' Pay as shown in the following table:

22

Art. IV, 2(b)(1)(ii)

## SEPARATION PAYMENT TABLE

| Years of Seniority on Last Day on the Active Employment Roll | Number of Hours' Pay |
|---|---|
| 1 but less than 2 | 50 |
| 2 but less than 3 | 70 |
| 3 but less than 4 | 100 |
| 4 but less than 5 | 135 |
| 5 but less than 6 | 170 |
| 6 but less than 7 | 210 |
| 7 but less than 8 | 255 |
| 8 but less than 9 | 300 |
| 9 but less than 10 | 350 |
| 10 but less than 11 | 400 |
| 11 but less than 12 | 455 |
| 12 but less than 13 | 510 |
| 13 but less than 14 | 570 |
| 14 but less than 15 | 630 |
| 15 but less than 16 | 700 |
| 16 but less than 17 | 770 |
| 17 but less than 18 | 840 |
| 18 but less than 19 | 920 |
| 19 but less than 20 | 1000 |
| 20 but less than 21 | 1085 |
| 21 but less than 22 | 1170 |
| 22 but less than 23 | 1260 |
| 23 but less than 24 | 1355 |
| 24 but less than 25 | 1455 |
| 25 but less than 26 | 1560 |
| 26 but less than 27 | 1665 |
| 27 but less than 28 | 1770 |
| 28 but less than 29 | 1875 |
| 29 but less than 30 | 1980 |
| 30 and over | 2080 |

Art. IV, 2(b)(2))

(2) The amount of Separation Payment so computed shall be reduced by the amount of any Benefits paid or payable to an Employee with respect to a Week occurring after the last day worked for the Company.

(3) A Separation Payment payable hereunder shall be reduced by the amount of any payment received or receivable with respect to any layoff or separation of the Employee from the Company subsequent to the last day worked for the Company under any other "SUB" plan or plans of the Company or under any Company plan or program to which the Company has contributed.

(4) If an Employee has been paid a prior Separation Payment and thereafter was hired again by the Company within 3 years from the last day worked in the Bargaining Unit, or if the Employee received a prior Separation Payment by reason of total and permanent disability and subsequently recovers, reports for work and such Employee's Seniority is reinstated under the Collective Bargaining Agreement,

(i) Years of Seniority for purposes of determining the amount of the Employee's current Separation Payment shall mean the sum of the Years of Seniority used to determine the amount of the Employee's prior Separation Payment plus any other Years of Seniority acquired thereafter and which the Employee has on the last day on the Active Employment Roll with respect to the Employee's current Separation Payment, and

(ii) there shall be subtracted, from the Number of Hours' Pay based on the Employee's Years of Seniority determined in (i) above, the Number of Hours' Pay used to calculate the Employee's prior Separation Payment.

24

(5) The Separation Payment payable to an eligible Part-Time Employee shall be reduced in the same ratio as the Employee's scheduled hours of work at time of layoff bears to 40 hours, provided, however, that if an Employee has worked as a full-time and a Part-Time Employee, the Employee's Separation Payment shall be computed by multiplying the Number of Hours' Pay indicated by the Employee's Years of Seniority on the Employee's last day on the Active Employment Roll by a fraction the numerator of which is the sum of

(i)    the number of such Years during which the Employee was a full-time Employee, and

(ii) the number of such Years during which the Employee was a Part-Time Employee, adjusted by the ratio which scheduled hours of work in such Years bears to 40;

and the denominator of which is the Employee's Years of Seniority on the Employee's last day on the Active Employment Roll.

## Section 3.    Effect of Separation Payment on Seniority

An Employee who is issued and accepts a Separation Payment (A) agrees that such Payment is a lump sum payment allocable to an inactive period ("Allocation Period") during which no other pay or benefits or rights of employment shall apply, (B) shall cease to be an Employee and shall have Seniority canceled at any and all of the Company's plants and locations as of the date the Employee's application for the Separation Payment was received by the Company ("Termination Date") for all purposes, (C) shall not be eligible to receive a special early retirement under any Company retirement plan, (D) shall not be permitted to retire under any Company retirement plan during the Allocation Period following

# Exhibit Y



# *Supplemental Agreement*

Covering

## GUARANTEED INCOME
## STREAM BENEFIT PROGRAM

Exhibit E

to

AGREEMENT

between

DELPHI CORPORATION

and

UAW

dated

September 18, 2003

(Effective October 13, 2003)

E-1, Sect. 3 (c)

Collective Bargaining Agreement for pay from the Company for all or part of such period solely because the Employee would be on a qualifying layoff but for such active duty, the Employee will be deemed to be on a qualifying layoff, for the determination of eligibility for not more than two GIS Income Benefits in a calendar year; provided further, however, that this two GIS Income Benefit limitation shall not apply to short term active duty of 30 days or less for an otherwise eligible Employee because such Employee was called to active service in the National Guard by state or federal authorities in case of public emergency.

## Section 4.    Description of GIS Benefits

An Employee eligible for GIS Benefits, in accordance with Section 2 above, is entitled to a GIS Income Benefit and to GIS Health Care and Life Insurance Coverages as provided in this Section, and reduced as provided in this Section and in Section 5, until the Employee's eligibility for such benefits is terminated or suspended as provided in Sections 7 and 8, respectively, or until the Maximum Company Liability Amount, as defined in Section 15(d), has been reached.

### (a)  *GIS Income Benefit*

(1)    At the time of layoff, a guaranteed income level will be calculated for each Employee who thereafter may be eligible for a GIS Income Benefit. For eligible Employees with 10 to 15 Years of Seniority, the guaranteed income level will equal 50% of an Employee's Weekly Before-Tax Base Earnings on the last day at Work prior to the layoff establishing eligibility hereunder, increased by one (1) additional percentage point for each whole year that the Employee's Years of Seniority as of the last day at Work prior to such qualifying layoff exceeds 15 Years of Seniority (fractional years of such Seniority shall be disregarded), or if lesser, in the case of an Employee

10

E-1, Sect. 4 (a)(1)

eligible while disabled under subsection 2(e)(4), the weekly Sickness and Accident Benefit payable under the Life and Disability Benefits Program which applied or would have applied to the Employee if disabled on the Employee's last day at Work.

(2)    The maximum guaranteed income level hereunder is the lesser of (i) 75% of Weekly Before-Tax Base Earnings or (ii) 95% of Weekly After-Tax Base Earnings, as of the Employee's last day Worked prior to the qualifying layoff, less $30.00, or (iii) if the Employee is eligible under any Company plan or program then in effect to receive, at the Employee's option, either (a) a monthly retirement benefit unreduced for age because of (1) a contingent event unrelated to age or (2) disability, or (b) a monthly retirement benefit containing a supplemental allowance based on attaining a specified number of years of service, the weekly equivalent of the monthly amount of the retirement benefit that would be payable.

In determining the maximum guaranteed income level, the weekly equivalent of benefits paid on a monthly basis is computed by dividing the monthly benefit amount by 4.33.

(3)    The gross amount of the GIS Income Benefit payable to an eligible Employee will equal the guaranteed income level reduced by offsets provided under Section 5 of the Program.

(4)    The GIS Income Benefit for a Week which equals at least $100 will be paid as soon as practical after receipt of a completed application for such Week. If the amount payable for any Week would be less than $100, payment will be distributed after the Week in which the Employee's unpaid GIS Income Benefit equals at least $100. When the Employee's eligibility for GIS Benefits is suspended or terminated, accumulated unpaid GIS Income Benefits, regardless of amount, will be paid subject to the provisions of Section 5.

11

E-1, Sect. 4 (a)(5)

(5)   For purposes of determining the maximum guaranteed income level under subsection 4(a)(2)(ii) of this Section, an Employee's exemptions for withholding tax purposes will be equal to the Employee's actual number of personal and dependency exemptions (excluding exemptions for blindness and for age 65 years or over) which would be allowable on the Employee's Federal income tax return as of the Employee's last day at Work prior to layoff.

(6)   The Corporation, upon authorization from an Employee, shall deduct monthly union dues from GIS Income Benefits paid under the Program and pay such sums directly to the Union on the Employee's behalf.

### (b)   *GIS Health Care and Life Insurance Coverages*

An Employee who is eligible to receive GIS Benefits will receive GIS Health Care and Life Insurance Coverages, as determined in accordance with this paragraph, until termination of GIS Benefits or suspension of eligibility for GIS Health Care and Life Insurance Coverages. The GIS Health Care and Life Insurance Coverages consist of Hospital-Surgical-Medical coverage and Life Insurance; provided, however, that Hospital-Surgical-Medical coverage will be supplementary to any other insurance or self-insurance for which the Employee or the Employee's eligible dependent(s) may be eligible and for which the Employee or Employee's dependent(s) pays no more than one-half the premium. Benefits will be reduced by the amount of benefits provided or available upon request under such other insurance or self-insured coverages available to the Employee from any other source, including coverage as a dependent.

12

E-1, Sect. 5 (a)

## Section 5.    GIS Income Benefit Offsets

(a)  The GIS Income Benefit described in Section 4(a) is reduced by gross income or payments that an Employee receives or is eligible to receive from the following sources:

(1)    Statutory Benefits, except Social Security Old Age or Disability Benefit,

(2)    Eighty percent of Income from Other Sources (except disability, termination and supplemental unemployment benefit pay will be offset at 100%).

In determining the amount by which GIS Income Benefits are reduced, the weekly equivalent of benefits paid on a monthly basis is computed by dividing the monthly benefit amount by 4.33.

(b)  In addition, an Employee's outstanding debts to the Company or trustees of any Company benefit plan or program, and an Employee's unrepaid overpayments under the SUB Plan shall be offset against GIS Income Benefits.  The amount of GIS Income Benefits that are offset by SUB overpayments or outstanding debts to the Company or trustees of any Company plan or program, shall be paid by the Trustee to the Company or trustee of the SUB Plan Fund or other Company plan or program, as applicable.

(c)  For an Employee, whose GIS Income Benefit was suspended by reason of Section 8(a)(2), the Weekly earnings offset, for computing the reinstated GIS Income Benefit during any subsequent employment, will be the larger of the average Weekly Income from Other Sources received by the Employee for the last four Weeks of Employment from

(1)    the employer from whom the Employee terminated, which caused the suspension as described in Section 8(a)(2), or

13

# Exhibit Z

# *Supplemental Agreement*

Covering

## GUARANTEED INCOME STREAM

## BENEFIT PROGRAM

Exhibit E

to

AGREEMENT

between

DELPHI CORPORATION

and

IUE-CWA

dated

November 16, 2003

(Effective December 8, 2003)

E-1, Sect. 3(c)

such active duty, the Employee will be deemed to be on a qualifying layoff, for the determination of eligibility for not more than two GIS Income Benefits in a calendar year; provided further, however, that this two GIS Income Benefit limitation shall not apply to short term active duty of 30 days or less for an otherwise eligible Employee because such Employee was called to active service in the National Guard by state or federal authorities in case of public emergency.

## Section 4.    Description of GIS Benefits

An Employee eligible for GIS Benefits, in accordance with Section 2 above, is entitled to a GIS Income Benefit and to GIS Health Care and Life Insurance Coverages as provided in this Section, and reduced as provided in this Section and in Section 5, until the Employee's eligibility for such benefits is terminated or suspended as provided in Sections 7 and 8, respectively, or until the Maximum Company Liability Amount, as defined in Section 15(d), has been reached.

### (a)    *GIS Income Benefit*

(1)    At the time of layoff, a guaranteed income level will be calculated for each Employee who thereafter may be eligible for a GIS Income Benefit. For eligible Employees with 10 to 15 Years of Seniority, the guaranteed income level will equal 50% of an Employee's Weekly Before-Tax Base Earnings on the last day at Work prior to the layoff establishing eligibility hereunder, increased by one (1) additional percentage point for each whole year that the Employee's Years of Seniority as of the last day at Work prior to such qualifying layoff exceeds 15 Years of Seniority (fractional years of such Seniority shall be disregarded), or if lesser, in the case of an Employee eligible while disabled under subsection 2(e)(4), the weekly Sickness and Accident Benefit payable under the

Life and Disability Benefits Program which applied or would have applied to the Employee if disabled on the Employee's last day at Work.

(2) The maximum guaranteed income level hereunder is the lesser of (i) 75% of Weekly Before-Tax Base Earnings or (ii) 95% of Weekly After-Tax Base Earnings, as of the Employee's last day Worked prior to the qualifying layoff, less $30.00, or (iii) if the Employee is eligible under any Company plan or program then in effect to receive, at the Employee's option, either (a) a monthly retirement benefit unreduced for age because of (1) a contingent event unrelated to age or (2) disability, or (b) a monthly retirement benefit containing a supplemental allowance based on attaining a specified number of years of service, the weekly equivalent of the monthly amount of the retirement benefit that would be payable.

In determining the maximum guaranteed income level, the weekly equivalent of benefits paid on a monthly basis is computed by dividing the monthly benefit amount by 4.33.

(3) The gross amount of the GIS Income Benefit payable to an eligible Employee will equal the guaranteed income level reduced by offsets provided under Section 5 of the Program.

(4) The GIS Income Benefit for a Week which equals at least $100 will be paid as soon as practical after receipt of a completed application for such Week. If the amount payable for any Week would be less than $100, payment will be distributed after the Week in which the Employee's unpaid GIS Income Benefit equals at least $100. When the Employee's eligibility for GIS Benefits is suspended or terminated, accumulated unpaid GIS Income Benefits, regardless of amount, will be paid subject to the provisions of Section 5.

11

E-1, Sect. 4(a)(5)

(5) For purposes of determining the maximum guaranteed income level under subsection 4(a)(2)(ii) of this Section, an Employee's exemptions for withholding tax purposes will be equal to the Employee's actual number of personal and dependency exemptions (excluding exemptions for blindness and for age 65 years or over) which would be allowable on the Employee's Federal income tax return as of the Employee's last day at Work prior to layoff.

(6) The Corporation, upon authorization from an Employee, shall deduct monthly union dues from GIS Income Benefits paid under the Program and pay such sums directly to the Union on the Employee's behalf.

**(b)** *GIS Health Care and Life Insurance Coverages*

An Employee who is eligible to receive GIS Benefits will receive GIS Health Care and Life Insurance Coverages, as determined in accordance with this paragraph, until termination of GIS Benefits or suspension of eligibility for GIS Health Care and Life Insurance Coverages. The GIS Health Care and Life Insurance Coverages consist of Hospital-Surgical-Medical coverage and Life Insurance; provided, however, that Hospital-Surgical-Medical coverage will be supplementary to any other insurance or self-insurance for which the Employee or the Employee's eligible dependent(s) may be eligible and for which the Employee or Employee's dependent(s) pays no more than one-half the premium. Benefits will be reduced by the amount of benefits provided or available upon request under such other insurance or self-insured coverages available to the Employee from any other source, including coverage as a dependent.

## Section 5.    GIS Income Benefit Offsets

(a) The GIS Income Benefit described in Section

12

E-1, Sect. 5(a)

4(a) is reduced by gross income or payments that an Employee receives or is eligible to receive from the following sources:

(1)  Statutory Benefits, except Social Security Old Age or Disability Benefit,

(2)  Eighty percent of Income from Other Sources (except disability, termination and supplemental unemployment benefit pay will be offset at 100%).

In determining the amount by which GIS Income Benefits are reduced, the weekly equivalent of benefits paid on a monthly basis is computed by dividing the monthly benefit amount by 4.33.

(b)  In addition, an Employee's outstanding debts to the Company or trustees of any Company benefit plan or program, and an Employee's unrepaid overpayments under the SUB Plan shall be offset against GIS Income Benefits.  The amount of GIS Income Benefits that are offset by SUB overpayments or outstanding debts to the Company or trustees of any Company plan or program, shall be paid by the Trustee to the Company or trustee of the SUB Plan Fund or other Company plan or program, as applicable.

(c)  For an Employee, whose GIS Income Benefit was suspended by reason of Section 8(a)(2), the Weekly earnings offset, for computing the reinstated GIS Income Benefit during any subsequent employment, will be the larger of the average Weekly Income from Other Sources received by the Employee for the last four Weeks of Employment from

(1)  the employer from whom the Employee terminated, which caused the suspension as described in Section 8(a)(2), or

(2)  any subsequent employer.

13

**Exhibit AA**

EXHIBIT E

~~1999~~2003 SUPPLEMENTAL AGREEMENT

(GUARANTEED INCOME STREAM

BENEFIT PROGRAM)


~~December 9, 1999~~        =  Signing Date of
_____(A)_____           Collective Bargaining
                                Agreement

~~December 27, 1999~~       =  Effective Date of
_____(B)_____           GIS Agreement


b                              (1)

GUARANTEED INCOME STREAM BENEFIT PROGRAM

Sect. 4

Section 4.   Description of GIS Benefits

An Employee eligible for GIS Benefits, in accordance with
Section 2 above, is entitled to a GIS Income Benefit and to GIS
Health Care and Life Insurance Coverages as provided in this
Section, and reduced as provided in this Section and in
Section 5, until the Employee's eligibility for such benefits is
terminated or suspended as provided in Sections 7 and 8,
respectively, or until the Maximum Company Liability Amount, as
defined in Section 15(d), has been reached.

(a)   GIS Income Benefit

(1)   At the time of layoff, a guaranteed income level will
be calculated for each Employee who thereafter may be
eligible for a GIS Income Benefit.  For eligible
Employees with 10 to 15 Years of Seniority, the
guaranteed income level will equal 50% of an
Employee's Weekly Before-Tax Base Earnings on the last
day at Work prior to the layoff establishing
eligibility hereunder, increased by one (1) additional

a                          -16-

<u>GUARANTEED INCOME STREAM BENEFIT PROGRAM</u>

Sect. 4(a)(1)

percentage point for each whole year that the
Employee's Years of Seniority as of the last day at
Work prior to such qualifying layoff exceeds 15 Years
of Seniority (fractional years of such Seniority shall
be disregarded), or if lesser, in the case of an
Employee eligible while disabled under subsection
2(d)(4), the weekly Sickness and Accident Benefit
payable under the Life and Disability Benefits Program
which applied or would have applied to the Employee if
disabled on the Employee's last day at Work.

(2)   The maximum guaranteed income level hereunder is the
lesser of (i) 75% of Weekly Before-Tax Base Earnings
or (ii) an amount equal to three-fourths of 40 times
the Employee's base hourly rate as determined under
the Income Security Plan, as of the Employee's last
day Worked prior to the qualifying layoff or, (iii) if
the Employee is eligible under any Company plan or
program then in effect to receive, at the Employee's
option, either (a) a monthly retirement benefit
unreduced for age

a

<u>GUARANTEED INCOME STREAM BENEFIT PROGRAM</u>

Sect. 4(a)(2)

because of (1) a contingent event unrelated to age or
(2) disability, or (b) a monthly retirement benefit
containing a supplemental allowance based on attaining
a specified number of years of service, the weekly
equivalent of the monthly amount of the retirement
benefit that would be payable.

In determining the maximum guaranteed income level,
the weekly equivalent of benefits paid on a monthly
basis is computed by dividing the monthly benefit
amount by 4.33.

(3)   The gross amount of the GIS Income Benefit payable to
an eligible Employee will equal the guaranteed income
level reduced by offsets provided under Section 5 of
the Program.

(4)   The GIS Income Benefit for a Week which equals at
least $100 will be paid as soon as practical after
receipt of a completed application for such Week.  If
the amount payable for any Week would be less than

a                          -18-

GUARANTEED INCOME STREAM BENEFIT PROGRAM

Sect. 4(a)(4)

$100, payment will be distributed after the Week in which the Employee's unpaid GIS Income Benefit equals at least $100.  When the Employee's eligibility for GIS Benefits is suspended or terminated, accumulated unpaid GIS Income Benefits, regardless of amount, will be paid subject to the provisions of Section 5.

(5)   The Corporation, upon authorization from an Employee, shall deduct monthly union dues from GIS Income Benefits paid under the Program and pay such sums directly to the Union on the Employee's behalf.

a                    -19-

GUARANTEED INCOME STREAM BENEFIT PROGRAM

Sect. 4(b)

    (b)   GIS Health Care and Life Insurance Coverages

An Employee who is eligible to receive GIS Benefits will
receive GIS Health Care and Life Insurance Coverages, as
determined in accordance with this paragraph, until
termination of GIS Benefits or suspension of eligibility for
GIS Health Care and Life Insurance Coverages.  The GIS
Health Care and Life Insurance Coverages consist of
Hospital-Surgical-Medical coverage and Life Insurance;
provided, however, that Hospital-Surgical-Medical coverage
will be supplementary to any other insurance or self-
insurance for which the Employee or the Employee's eligible
dependent(s) may be eligible and for which the Employee or
Employee's dependent(s) pays no more than one-half the
premium.  Benefits will be reduced by the amount of benefits
provided or available upon request under such other
insurance or self-insured coverages available to the
Employee from any other source, including coverage as a
dependent.

a                          -20-

GUARANTEED INCOME STREAM BENEFIT PROGRAM

Sect. 5

Section 5.   GIS Income Benefit Offsets

    (a)   The GIS Income Benefit described in Section 4(a) is reduced by gross income or payments that an Employee receives or is eligible to receive from the following sources:

        (1)   Statutory Benefits, except Social Security Old Age or Disability Benefit, and

        (2)   Eighty percent of Income from Other Sources (except disability, termination and supplemental unemployment benefit pay will be offset at 100%).

    In determining the amount by which GIS Income Benefits are reduced, the weekly equivalent of benefits paid on a monthly basis is computed by dividing the monthly benefit amount by 4.33.

a

GUARANTEED INCOME STREAM BENEFIT PROGRAM

Sect. 5(b)

(b)   In addition, an Employee's outstanding debts to the Company
or trustees of any Company benefit plan or program shall be
offset against GIS Income Benefits.  The amount of GIS
Income Benefits that are offset by outstanding debts to the
Company or trustees of any Company plan or program, shall be
paid by the Trustee to the Company or trustee of any other
Company plan or program, as applicable.

(c)   For an Employee, whose GIS Income Benefit was suspended by
reason of Section 8(a)(2), the Weekly earnings offset, for
computing the reinstated GIS Income Benefit during any
subsequent employment, will be the larger of the average
Weekly Income from Other Sources received by the Employee
for the last four Weeks of Employment from

(1)   the employer from whom the Employee terminated, which
caused the suspension as described in Section 8(a)(2),
or

(2)   any subsequent employer.

a                                    -22-

**Exhibit BB**

# EXHIBIT E-1*

## 2003~~19969~~ GUARANTEED INCOME STREAM BENEFIT PROGRAM

EXHIBIT E-1

Section 1.  General

    The Guaranteed Income Stream Benefit Program is designed to promote
    employment stability and avoid layoffs.  The GIS Program provides a
    guaranteed minimum income, health care and life insurance coverages,
    subject to the terms, conditions and limitations contained in this
    Program (including the definitions contained in Section 19 hereof),
    for eligible long-service Employees covered by this Program who
    become laid off from the Company on or after March 1, 1982 and
    during the terms of the applicable 1982 through 1996̶9 Collective
    Bargaining Agreements, inclusive.

Section 2.  Eligibility for a GIS Benefit

    An Employee at Work on or after March 1, 1982 and laid off during
    the terms of the 1982 through 2003̶1̶9̶9̶6̶9 Collective Bargaining
    Agreements, inclusive, shall be eligible for a GIS Benefit for any
    Week beginning on or after the Effective Date if with respect to
    such Week the Employee meets all of the following conditions:

    (a)    Was, for the entire Week, on a qualifying layoff as described
           in Section 3.

    (b)    (1)    If laid off during the terms of the 1982, 1984 or
                  1987 Collective Bargaining Agreements, had at least
                  15 Years of Seniority (10 Years of Seniority with
                  respect solely to a Plant Closing situation) on the
                  last day the Employee Worked prior to the effective
                  date of such layoff.

           (2)    If laid off during the terms of the 1990,̶ ̶1̶9̶9̶3̶ ̶o̶r̶
                  1̶9̶9̶6̶ through 2003̶1̶9̶9̶9 Collective Bargaining
                  Agreements, inclusive, had at least 10 Years of
                  Seniority under the terms of the Collective
                  Bargaining Agreement, on the last day the Employee
                  Worked prior to the effective date of such layoff.

           With respect to a Plant Closing situation, if an otherwise
           eligible Employee has 10 or more Years of Seniority on such
           Employee's first day of layoff and such first day is within 5
           years prior to any subsequent date of the Plant Closing
           announcement, such Employee will be deemed eligible for GIS
           Benefits commencing with the first full Week following the
           date of the Plant Closing announcement.

    (c)    Has both

           (1)    exhausted all entitlement under any "SUB" Plan of the
                  Company and has had no SUB entitlement canceled after
                  the qualifying layoff for GIS Benefits for willfully
                  misrepresenting any material fact in connection with
                  an application for benefits under any SUB Plan;

2

provided, however, that if the Employee has
entitlement under any SUB Plan of the Company but the
Regular Benefit would be delayed under the SUB Plan
for any Week because of exhaustion of the Advance
Credit Account and the Guaranteed Benefit Account
under the SUB Plan, an eligible Employee may elect to
begin receipt of GIS Benefits, in which event the
Employee must elect that all of the Employee's
remaining SUB entitlement shall thereupon be canceled
under any SUB Plan of the Company.

(2)     a zero balance in the Employee's Security Fund
        Account under the General Motors Income Security Plan
        except for an amount equal to no more than the amount
        of any balance of Employee contributions in the
        Account at the start of the Employee's current
        continuous layoff from the Company; provided,
        however, that for Weeks of continuing layoff
        following the first Week of layoff for which the
        Employee satisfies the foregoing exception and is
        otherwise eligible for a GIS Benefit, such excepted
        amount of Employee contributions in the Account may
        also include subsequent interest allocations based
        solely thereon; and provided further, that such
        excepted amount of Employee contributions plus
        interest at the end of the period of layoff (plus
        subsequent interest allocated to such excepted
        amount) shall be added, at the start of any
        subsequent period of layoff, to the amount equal to
        the amount of additional Employee contributions (plus
        accrued interest thereon) in the Employee's Account
        since the end of the Employee's previous layoff
        period, and.

(d)   Is either

    (1)     working with a subsequent employer;

    (2)     meets the definition of able and available for work,
            utilized by the applicable Public Employment Service,
            for purposes of the receipt of a State System Benefit
            and meets the eligibility requirements other than
            minimum number of qualifying weeks for such State
            System Benefit for such Week even though the Employee
            may have exhausted such benefits;

    (3)     is participating in a jointly approved vocational
            training program; or

    (4)     (i)     becomes wholly and continuously disabled
                    after such otherwise qualifying layoff began,
                    and

            (ii)    remains wholly and continuously disabled for
                    a period of more than one Week (the period of

3

eligibility shall not include the first Week
of such disability), and

(iii)    is under a doctor's care;

provided, however, that such eligibility while disabled shall
cease when the Employee becomes eligible for a disability
retirement benefit under the Retirement Plan or has been paid
a cumulative total of 52 Weekly GIS Income Benefits while
disabled, whichever occurs first.  If the Employee's State
System Benefits are exhausted, any reporting requirements
associated with State System Benefit eligibility will not
apply under this paragraph.

(e)    Except when eligible while disabled under subsection 2(d)
above, maintains an active registration for such Week with
the applicable Public Employment Service for purposes of
locating employment opportunities.

(f)    Reports on a Timely Basis as required to the Company or its
designated representative:

(1) Income from Other Sources,
   (2)        Statutory Benefits,
   (3)        Insurance Coverages from Other Sources,
   (4)        evidence of active registration with the Public
              Employment Service,
   (5)        changes in employment status.

(g)    Provides the Company or its designated representative or
appropriate federal, state, or local governmental agencies,
as required, with any waivers, releases and reasonable
evidence that may be required by such agencies or the Company
for purposes of verifying the Employee's eligibility for and
amount of GIS Benefits.

(h)    Has made an application for GIS Benefits in accordance with
procedures established by the Company.

In addition, except when eligible while disabled under subsection
2(d) above, in order to be eligible for GIS Benefits an Employee
must accept Suitable Employment provided for or arranged by the
Company, Agent of the Company or Public Employment Service and must
not have broken Years of Seniority for any reason other than that
the Employee shall have been continuously unemployed by the Company
and had broken Seniority under the time-for-time provisions of the
Collective Bargaining Agreement.

Section 3.  <u>Conditions with Respect to Layoff</u>

(a)    A layoff for purposes of the GIS Program includes any
Seniority layoff except an inverse Seniority layoff resulting
from a reduction in force, including a layoff resulting from
the discontinuance of a Facility or an operation, and any
layoff occurring or continuing because the Employee was

4

unable to do the work offered by the Company although able to
perform other work in the Facility to which the Employee
would have been entitled if the Employee had had sufficient
Seniority.

(b)     An Employee's layoff for any Week shall be deemed qualifying
        for purposes of the GIS Program only if:

(1) such layoff was for the entire Week;

(2) such layoff was from the Bargaining Unit;

        (3)     such layoff was not for disciplinary reasons, and was
                not a consequence of:

                (i)     any strike, slowdown, work stoppage,
                        picketing (whether or not by Employees), or
                        concerted action, at a Company Facility or
                        Facilities, or any dispute of any kind
                        involving Employees, whether at a Company
                        Facility or Facilities or elsewhere,

                (ii)    any fault attributable to the Employee,

                (iii)   any war or hostile act of a foreign power
                        (but not government regulation or controls
                        connected therewith),

                (iv)    sabotage or insurrection, or

                (v)     any act of God;

        (4)     at a time when the Employee was on an otherwise
                qualifying layoff for purposes of the GIS Program or
                after having been advised that the Employee would be
                placed on such a layoff in the future, the Employee
                did not refuse or fail to appear for an employment
                interview (unless for Good Cause) or refuse any offer
                of employment (including employment with the Company
                outside the Bargaining Unit) which the Employee was
                then capable of performing at another Company
                Facility, or at the Company Facility where the
                Employee last worked, the acceptance of which could
                have avoided, delayed or reduced the period of the
                layoff that otherwise would have qualified the
                Employee for GIS Benefits except that until 2 years
                immediately following the Employee's last day Worked,
                or if less, the last day of the Week for which the
                Employee received a final ISP payment, leaving a zero
                balance in the Employee's Security Fund Account as
                described in Section 2(c)(1) of this Program, the
                Employee may refuse an offer which such Employee has
                a right to refuse under any applicable Local
                Seniority Agreement or equivalent of the Bargaining
                Unit in which such Employee has Seniority. If the

5

employment or employment interview which was refused is at a different Company Facility which is more than 50 miles from the Employee's address of record for purposes of the GIS Program and from the Company Facility where the Employee last worked or is currently working for the Company, the Employee shall not be ineligible hereunder; provided, however, that an otherwise eligible Employee who refuses a temporary part-time position with the Company will remain eligible for GIS Benefits; and

(5)     the Employee retains Years of Seniority, under the Collective Bargaining Agreement, except that an Employee shall continue to be covered by this Program if the Employee has broken such Years of Seniority, but only if the reason therefor is that the Employee has been continuously unemployed by the Company and Seniority was broken under the time-for-time provisions of the Collective Bargaining Agreement.

(c)     In addition, an Employee who enters the Armed Services of the United States directly from the employ of the Company shall while in such service be deemed, for purposes of the Program, to be on leave of absence and shall not be entitled to any GIS Benefits or payments for such period of absence. However, if an Employee is on short term active duty of 30 days or less, for required military training, in a National Guard, Reserve or similar unit and is ineligible under the Collective Bargaining Agreement for pay from the Company for all or part of such period solely because the Employee would be on a qualifying layoff but for such active duty, the Employee will be deemed to be on a qualifying layoff, for the determination of eligibility for not more than two GIS Income Benefits in a calendar year; provided further, however, that this two GIS Income Benefit limitation shall not apply to short term active duty of 30 days or less for an otherwise eligible Employee because such Employee was called to active service in the National Guard by state or federal authorities in case of public emergency.

Section 4.    Description of GIS Benefits

An Employee eligible for GIS Benefits, in accordance with Section 2 above, is entitled to a GIS Income Benefit and to GIS Health Care and Life Insurance Coverages as provided in this Section, and reduced as provided in this Section and in Section 5, until the Employee's eligibility for such benefits is terminated or suspended as provided in Sections 7 and 8, respectively, or until the Maximum Company Liability Amount, as defined in Section 15(d), has been reached.

(1)     At the time of layoff, a guaranteed income level will be calculated for each Employee who thereafter may be eligible for a GIS Income Benefit. For eligible Employees with 10 to 15 Years of Seniority, the

6

guaranteed income level will equal 50% of an
Employee's Weekly Before-Tax Base Earnings on the
last day at Work prior to the layoff establishing
eligibility hereunder, increased by one (1)
additional percentage point for each whole year that
the Employee's Years of Seniority as of the last day
at Work prior to such qualifying layoff exceeds 15
Years of Seniority (fractional years of such
Seniority shall be disregarded), or if lesser, in the
case of an Employee eligible while disabled under
subsection 2(d)(4), the weekly Sickness and Accident
Benefit payable under the Life and Disability
Benefits Program which applied or would have applied
to the Employee if disabled on the Employee's last
day at Work.

(2)     The maximum guaranteed income level hereunder is the
lesser of (i) 75% of Weekly Before-Tax Base Earnings
or (ii) an amount equal to three-fourths of 40 times
the Employee's base hourly rate as determined under
the Income Security Plan, as of the Employee's last
day Worked prior to the qualifying layoff or (iii) if
the Employee is eligible under any Company plan or
program then in effect to receive, at the Employee's
option, either (a) a monthly retirement benefit
unreduced for age because of (1) a contingent event
unrelated to age or (2) disability, or (b) a monthly
retirement benefit containing a supplemental
allowance based on attaining a specified number of
years of service, the weekly equivalent of the
monthly amount of the retirement benefit that would
be payable.

In determining the maximum guaranteed income level,
the weekly equivalent of benefits paid on a monthly
basis is computed by dividing the monthly benefit
amount by 4.33.

(3)     The gross amount of the GIS Income Benefit payable to
an eligible Employee will equal the guaranteed income
level reduced by offsets provided under Section 5 of
the Program.

(4)     The GIS Income Benefit for a Week which equals at
least $100 will be paid as soon as practical after
receipt of a completed application for such Week.  If
the amount payable for any Week would be less than
$100, payment will be distributed after the Week in
which the Employee's unpaid GIS Income Benefit equals
at least $100.  When the Employee's eligibility for
GIS Benefits is suspended or terminated, accumulated
unpaid GIS Income Benefits, regardless of amount,
will be paid subject to the provisions of Section 5.

(b)   GIS Health Care and Life Insurance Coverages

An Employee who is eligible to receive GIS Benefits will
receive GIS Health Care and Life Insurance Coverages, as
determined in accordance with this paragraph, until
termination of GIS Benefits or suspension of eligibility for
GIS Health Care and Life Insurance Coverages.  The GIS Health
Care and Life Insurance Coverages consist of Hospital-
Surgical-Medical coverage and Life Insurance; provided,
however, that Hospital-Surgical-Medical coverage will be
supplementary to any other insurance or self-insurance for
which the Employee or the Employee's eligible dependent(s)
may be eligible and for which the Employee or Employee's
dependent(s) pays no more than one-half the premium.
Benefits will be reduced by the amount of benefits provided
or available upon request under such other insurance or self-
insured coverages available to the Employee from any other
source, including coverage as a dependent.

Section 5.   GIS Income Benefit Offsets

(a)   The GIS Income Benefit described in Section 4(a) is reduced
by gross income or payments that an Employee receives or is
eligible to receive from the following sources:

   (1)      Statutory Benefits, except Social Security Old Age or
            Disability Benefit, and

   (2)      Eighty percent of Income from Other Sources (except
            disability, termination and supplemental unemployment
            benefit pay will be offset at 100%).

In determining the amount by which GIS Income Benefits are
reduced, the weekly equivalent of benefits paid on a monthly
basis is computed by dividing the monthly benefit amount by
4.33.

(b)   In addition, an Employee's outstanding debts to the Company
or trustees of any Company benefit plan or program shall be
offset against GIS Income Benefits.  The amount of GIS Income
Benefits that are offset by outstanding debts to the Company
or trustees of any Company plan or program, shall be paid by
the Trustee to the Company or trustee of any other Company
plan or program, as applicable.

(c)   For an Employee, whose GIS Income Benefit was suspended by
reason of Section 8(a)(2), the Weekly earnings offset, for
computing the reinstated GIS Income Benefit during any
subsequent employment, will be the larger of the average
Weekly Income from Other Sources received by the Employee for
the last four Weeks of employment from

8

(1)     the employer from whom the Employee terminated,
        which caused the suspension as described in
        Section 8(a)(2), or

(2)     any subsequent employer.

Section 6.    Redemption Payment

An Employee otherwise eligible for GIS Benefits may elect at Company
option to receive a Redemption Payment in lieu of future GIS
Benefits.

(a)    Eligibility

    An Employee shall be eligible for a Redemption Payment if the
    Employee:

    (1)     is otherwise eligible for GIS Benefits,

    (2)     makes, within 60 months of the commencement of layoff
            from the Company, proper application, as determined
            by the Company, for such Redemption Payment, and

    (3)     is at the time of application either working for a
            subsequent employer or meets the definition of able
            and available for work, utilized by the applicable
            Public Employment Service, for purposes of the
            receipt of a State System Benefit and meets the
            eligibility requirements, other than minimum number
            of qualifying weeks, for such State System Benefits
            even though the Employee may have exhausted such
            Benefits, or is participating in a jointly approved
            vocational training program.  If the Employee has
            exhausted State System Benefits, any reporting
            requirements associated with State System Benefit
            eligibility will not apply under this paragraph.

(b)    Payment

    (1)     A Redemption Payment shall be in a lump sum.

    (2)     Subject to the Maximum Company Liability Amount
            defined in Section 15(d), the Redemption Payment will
            be payable in an amount equal to $5,000 reduced by
            GIS Benefits received or provided prior to the date
            of approval of the application for the Redemption
            Payment by the Company.

    (3)     The amount of an Employee's Redemption Payment, as
            specified in (2) above, shall be reduced by any
            outstanding debts to the Company or trustees of any
            Company benefit plan or program including
            overpayments under the GIS Program. The amount of the
            reduction of the Redemption Payment because of SUB

9

# Exhibit CC

EXHIBIT D-1


DELPHI INCOME SECURITY PLAN

FOR HOURLY-RATE EMPLOYEES

a

<u>DELPHI INCOME SECURITY PLAN</u>

<u>ARTICLE II</u>

<u>ELIGIBILITY TO PARTICIPATE</u>

Each Employee, upon acquiring Seniority, shall be eligible to participate in the Plan, provided such Employee is an Employee of a unit of Employees to whom the Plan has been made and is applicable.

a                              – 3 –

DELPHI INCOME SECURITY PLAN

## ARTICLE III

### INCOME SECURITY FUND

SECTION 1.   Establishment of Fund

Delphi ~~Automotive Systems~~ Corporation shall establish an Income Security
Fund in accordance with this Income Security Plan and shall appoint a
Trustee to carry out the provisions of the Plan.  All contributions by the
Corporation for Employees, as set forth in Section 4; the securities
purchased therewith; and the earnings derived therefrom, shall be credited
to the Income Security Fund.

SECTION 2.   Irrevocability

No part of the Corporation's contributions to this Plan shall be recovered
by the Corporation.

SECTION 3.   Employees' Security Fund Accounts

The Corporation shall establish and maintain for each Employee an
individual account for the purposes of the Plan, and such account will be
referred to as the Employee's Security Fund Account.

SECTION 4.   Corporation Contributions to the Income Security Fund

(a)   The Corporation shall, out of current or accumulated earnings and
      profits, contribute to the Income Security Fund and shall credit to
      each Employee's Security Fund Account thirty-four cents (34¢) for each
      hour for which the Employee receives pay from the Corporation.

a-nc                          - 4 -

<u>DELPHI INCOME SECURITY PLAN</u>

Art. III, 4(b)

(b)   In addition to the contributions set forth in Section 4(a), the
      Corporation shall contribute to the Income Security Fund and shall
      credit to each Employee's Security Fund Account an additional six
      cents (6¢) for each hour for which the Employee receives pay at time
      and one-half from the Corporation and an additional twelve cents (12¢)
      for each hour for which the Employee receives pay at double-time from
      the Corporation.

(c)   Any Corporation contributions made for prior periods shall be made at
      the current contribution rate.

(d)   The Corporation's contributions shall be made weekly and shall be
      fully and immediately vested.

(e)   <u>Pay means the amount paid to a Participant for straight time hours
      worked.</u>

SECTION 5.   <u>Employee Contributions to The Income Security Fund</u>

An Employee who has or acquires Seniority may elect to make a non-
forfeitable contribution to their Security Fund Account established under
this Plan with respect to each Week in accordance with the following:

(a)   the Employee shall elect the percentage amount to be deducted from
      each weekly paycheck, ranging from not less than 1.0% to not more than
      5.0% of the Employee's Base Hourly Rate multiplied by the number of
      hours for which the Employee receives pay from the Corporation for the
      Week.  The Employee's election to make

b                                    - 5 -

DELPHI INCOME SECURITY PLAN

Art. III, 5(a)

contributions to their Security Fund Account shall become effective no

later than the Employee's paycheck for the ~~sixth~~third Week following

the Week in which the Employee's election is received by the Plan

Administrator or its designee, or, if later, the Week following the

Week in which the Employee acquires Seniority;

(b)   the Employee may elect to change the amount of their contribution,

within the minimum-maximum range, at any time.  The Employee's

election shall become effective no later than the Employee's paycheck

for the ~~sixth~~third Week following the Week in which the Employee's

election is received by the Plan Administrator or its designee;

(c)   the Employee may cancel their contributions at any time, with such

cancellation to become effective no later than the Employee's paycheck

for the ~~sixth~~third Week following the Week in which the Employee's

cancellation request is received by the Plan Administrator or its

designee;

(d)   all Employee contributions under this Section shall be made as soon as

practicable, but not later than monthly, to the Employee's Security

Fund Account and shall be paid or withdrawn from such Account only in

the same manner as the Corporation contributions are paid or withdrawn

under the provisions of this Plan;

b                                    - 6 -

DELPHI INCOME SECURITY PLAN

Art. III, 5(e)

(e)  an Employee's aggregate contributions may not exceed 10.0% of the
     Employee's aggregate compensation for all years since becoming a
     Participant;


SECTION 6.  Limitations on Employee Contributions

(a)  The contribution election percentage by the eligible Highly
     Compensated Employees under the Plan for a Plan Year must meet one of
     the following tests:

     (i)  The actual contribution election percentage of the eligible
          Highly Compensated Employees is not more than 1.25 times the
          actual contribution election percentage of all other eligible
          Employees; or

     (ii) The actual contribution election percentage of the eligible
          Highly Compensated Employees is not more than two percentage
          points more than the actual contribution election percentage for
          all other eligible Employees and is not more than 2.0 times (or
          such lesser amount as the Secretary of the Treasury shall
          prescribe) the actual contribution election percentage of all
          other eligible Employees.

(b)  The actual contribution election percentage for the eligible Highly
     Compensated Employees and all other eligible Employees for a Plan Year
     is the average of the ratios (calculated separately for each eligible
     Employee) of the:

a                          - 7 -

DELPHI INCOME SECURITY PLAN

ARTICLE IV

WEEKLY WITHDRAWALS
FROM INCOME SECURITY FUND

SECTION 1.  Weekly Withdrawals

(a)  An Employee who is eligible under the Plan may make withdrawals from
the Income Security Fund, up to the amount credited to the Employee's
Security Fund Account, for each Week (as defined in the Plan) during
which the Employee is Unemployed.  Such withdrawals shall be charged
to the Employee's Security Fund Account.  When the Employee's account
is exhausted, no further withdrawals may be made.

(b)  An Employee who is on continuous layoff for a full calendar month for
a reason attributable to the Corporation under Section (1)(b) of
Article V of the Plan, and with respect to such month receives no
earnings from the Corporation, may authorize the Corporation, or its
designee, to withdraw for each month from the Income Security Fund and
pay on such Employee's behalf an amount equal to the full cost of
continuing the Employee's basic life insurance as described in
Article II, Section 1 of the Life and Disability Benefits Program for
Hourly Employees and core coverages as described in Article II, 1(a)
and vision coverage as described in Article II, 1(b) of the Health
Care Program for Hourly Employees.  Such monthly withdrawals may be
made for up to a maximum of 37 months following the last month of
coverage for which the Corporation contributed for the Employee while
in

a                          - 12 -

<u>DELPHI INCOME SECURITY PLAN</u>

Art. IV, 1(b)

active service and shall be charged to the Employee's Security Fund
Account.  When the Employee's account is exhausted or the balance in
such Employee's account is less than an amount equal to the full cost
of continuing the Employee's basic life insurance and health care
coverages for the applicable month, or when directed by the Employee,
no further withdrawals may be made.


SECTION 2.  <u>Amount of Employee Weekly Withdrawals</u>

(a)  With respect to each Week for which an Employee receives, or is
entitled to receive, any Unemployment Compensation Benefits, the
Employee may withdraw from the Income Security Fund an amount equal to
an amount of up to eighty percent (80%) of forty (40) times such
Employee's Base Hourly Rate less Unemployment Compensation Benefits
and the Employee's Gross Wages, if any, for the same Week.


(b)  With respect to each Week (other than a waiting week during a non-
volume related layoff) for which an Employee is not entitled to
Unemployment Compensation Benefits, the Employee may withdraw from the
Income Security Fund an amount equal to an amount of up to eighty
percent (80%) of forty (40) times such Employee's Base Hourly Rate,
less 75% of such Employee's Gross Wages, if any, for the same Week.


a                          - 13 -

DELPHI INCOME SECURITY PLAN

Art. IV, 2(c)

(c)   With respect to each Week for which an Employee has Gross Wages from the Corporation in an amount sufficient to disqualify such Employee from Unemployment Compensation Benefits, the Employee may withdraw from the Income Security Fund an amount equal to an amount of up to eighty percent (80%) of forty (40) times such Employee's Base Hourly Rate, less 75% of such Employee's Gross Wages from the Corporation for the same Week.

(d)   With respect to any Week for which an Employee receives a statutory or Corporation sickness and accident benefit or any other disability benefit for part of a Week, the Employee may make a reduced Weekly Withdrawal from the Income Security Fund in an amount equal to an amount of up to one-fifth (1/5) of the amount determined in paragraph (b) of this Section 2 for each day of such Week for which such Employee was not entitled to receive such disability benefit but would otherwise have been Unemployed, as provided under Article V(b) of the Plan.

(e)   With respect to any Week for which an Employee applies to make a withdrawal from such Employee's Security Fund Account, Gross Wages shall include:

(i)   holiday pay received from the Corporation for such Week;

a                          - 14 -

DELPHI INCOME SECURITY PLAN

Art. IV, 2(e)(ii)

(ii) the amount of any wages the Employee would have received for such Week from the Corporation had the Employee worked the hours available, except when such wages are applicable to days for which an Employee receives a disability benefit during a Week for which the Employee is entitled to a reduced Weekly Withdrawal as provided under Article IV, 2(d); and

(iii) any withdrawals from a Security Fund Account, wage advances, unemployment benefit, or other similar benefit for such Week to which the Employee may be entitled under a plan financed by any other employer.

(f) Notwithstanding the provisions in (a), (b), and (c) of this Section, the Weekly Withdrawal of an Employee covered by Article XI, 7(a)(3) will be reduced in the same ratio as the scheduled hours of work of such Employee at time of layoff bears to the number of hours in the employing unit's regular workweek.

SECTION 3.  Attainment of Age 70-1/2

(a) If an Employee attains age 70-1/2 prior to January 1, 1997 and has not terminated employment, distribution of the Employee's Security Fund Account will begin not later than April 1 of the calendar year following the calendar year in which the Employee attains age 70-1/2 and shall be made annually thereafter. However, an Employee may elect to discontinue such annual

a                                     - 15 -

**Exhibit DD**

EXHIBIT D-1

DELPHI INCOME SECURITY PLAN
FOR HOURLY-RATE EMPLOYEES

DELPHI INCOME SECURITY PLAN

ARTICLE I
ESTABLISHMENT OF THE PLAN

Delphi Corporation, on behalf of itself and its Divisions and as agent for its directly or indirectly wholly-owned and substantially wholly-owned domestic subsidiaries shall establish, subject to the approval of its Board of Directors, an Income Security Plan for Hourly-Rate Employees, hereinafter referred to as the "Plan," and shall pay all expenses incident to the operation and management of the Plan.

The purpose of the Plan shall be to provide an Income Security Fund from which:

(1)  An Employee who is laid off under specified circumstances and conditions may withdraw stipulated weekly amounts, up to the amount credited to such Employee's individual account, to supplement state Unemployment Compensation Benefits;

(2)  An Employee who retires or is terminated with a resultant break in Seniority may withdraw the full amount credited to such Employee's account.

ARTICLE II
ELIGIBILITY TO PARTICIPATE

Each Employee, upon acquiring Seniority, shall be eligible to participate in the Plan, provided such Employee is an Employee of a unit of Employees to whom the Plan has been made and is applicable.

ARTICLE III
INCOME SECURITY FUND

SECTION 1.  Establishment of Fund
Delphi Corporation shall establish an Income Security Fund in accordance with this Income Security Plan and shall appoint a Trustee to carry out the provisions of the Plan.  All contributions by the Corporation for Employees, as set forth in Section 4; the securities purchased therewith; and the earnings derived therefrom, shall be credited to the Income Security Fund.

SECTION 2.  Irrevocability
No part of the Corporation's contributions to this Plan shall be recovered by the Corporation.

SECTION 3.  Employees' Security Fund Accounts
The Corporation shall establish and maintain for each Employee an individual account for the purposes of the Plan, and such account will be referred to as the Employee's Security Fund Account.

SECTION 4.  Corporation Contributions to the Income Security Fund
(a)  The Corporation shall, out of current or accumulated earnings and profits, contribute to the Income Security Fund and shall credit to each Employee's Security Fund Account ~~thirty-four cents (34¢)~~ for each

2

hour for which the Employee receives pay at the Corporation in accordance with the following table:

| Effective with Pay Period Ending | Corporation Contribution |
|---|---|
| 4/11/04 | $0.42 |
| 12/12/04 | $0.44 |
| 12/11/05 | $0.46 |
| 12/10/06 | $0.47 |

(b)  In addition to the contributions set forth in Section 4(a), the Corporation shall contribute to the Income Security Fund and shall credit to each Employee's Security Fund Account an additional six cents (6¢) for each hour for which the Employee receives pay at time and one-half from the Corporation and an additional twelve cents (12¢) for each hour for which the Employee receives pay at double-time from the Corporation.

(c)  Any Corporation contributions made for prior periods shall be made at the current contribution rate.

(d)  The Corporation's contributions shall be made weekly and shall be fully and immediately vested.

SECTION 5.  Employee Contributions to The Income Security Fund
An Employee who has or acquires Seniority may elect to make a non-forfeitable contribution to their Security Fund Account established under this Plan with respect to each Week in accordance with the following:

(a)  the Employee shall elect the percentage amount to be deducted from each weekly paycheck, ranging from not less than 1.0% to not more than 5.0% of the Employee's Base Hourly Rate multiplied by the number of hours for which the Employee receives pay from the Corporation for the Week.  The Employee's election to make contributions to their Security Fund Account shall become effective no later than the Employee's paycheck for the sixth Week following the Week in which the Employee's election is received by the Plan Administrator or its designee, or, if later, the Week following the Week in which the Employee acquires Seniority;

(b)  the Employee may elect to change the amount of their contribution, within the minimum-maximum range, at any time.  The Employee's election shall become effective no later than the Employee's paycheck for the sixth Week following the Week in which the Employee's election is received by the Plan Administrator or its designee;

(c)  the Employee may cancel their contributions at any time, with such cancellation to become effective no later than the Employee's paycheck for the sixth Week following the Week in which the Employee's cancellation request is received by the Plan Administrator or its designee;

(d)  all Employee contributions under this Section shall be made as soon as practicable, but not later than monthly, to the Employee's Security Fund Account and shall be paid or withdrawn from such Account only in the same manner as the Corporation contributions are paid or withdrawn under the provisions of this Plan;

(e)   an Employee's aggregate contribution may not exceed 10.0% of the
Employee's aggregate compensation for all years since becoming a
participant;

WEEKLY WITHDRAWALS
FROM INCOME SECURITY FUND

SECTION 1.   Weekly Withdrawals
(a)   An Employee who is eligible under the Plan may make withdrawals from the Income Security Fund, up to the amount credited to the Employee's Security Fund Account, for each Week (as defined in the Plan) during which the Employee is Unemployed.   Such withdrawals shall be charged to the Employee's Security Fund Account.   When the Employee's account is exhausted, no further withdrawals may be made.

(b)   An Employee who is on continuous layoff for a full calendar month for a reason attributable to the Corporation under Section (1)(b) of Article V of the Plan, and with respect to such month receives no earnings from the Corporation, may authorize the Corporation, or its designee, to withdraw for each month from the Income Security Fund and pay on such Employee's behalf an amount equal to the full cost of continuing the Employee's basic life insurance as described in Article II, Section 1 of the Life and Disability Benefits Program for Hourly Employees and core coverages as described in Article II, 1(a) and vision coverage as described in Article II, 1(b) of the Health Care Program for Hourly Employees.   Such monthly withdrawals may be made for up to a maximum of 37 months following the last month of coverage for which the Corporation contributed for the Employee while inactive service and shall be charged to the Employee's Security Fund Account.   When the Employee's account is exhausted or the balance in such Employee's account is less than an amount equal to the full cost of continuing the Employee's basic life insurance and health care coverages for the applicable month, or when directed by the Employee, no further withdrawals may be made.

SECTION 2.   Amount of Employee Weekly Withdrawals
(a)   With respect to each Week for which an Employee receives, or is entitled to receive, any Unemployment Compensation Benefits, the Employee may withdraw from the Income Security Fund an amount equal to an amount of up to eighty percent (80%) of forty (40) times such Employee's Base Hourly Rate less Unemployment Compensation Benefits and the Employee's Gross Wages, if any, for the same Week.

(b)   With respect to each Week (other than a waiting week during a non-volume related layoff) for which an Employee is not entitled to Unemployment Compensation Benefits, the Employee may withdraw from the Income Security Fund an amount equal to an amount of up to eighty percent (80%) of forty (40) times such Employee's Base Hourly Rate, less 75% of such Employee's Gross Wages, if any, for the same Week.

(c)   With respect to each Week for which an Employee has Gross Wages from the Corporation in an amount sufficient to disqualify such Employee from Unemployment Compensation Benefits, the Employee may withdraw from the Income Security Fund an amount equal to an amount of up to eighty percent (80%) of forty (40) times such Employee's Base Hourly Rate, less 75% of such Employee's Gross Wages from the Corporation for the same Week.

(d)   With respect to any Week for which an Employee receives a statutory or Corporation sickness and accident benefit or any other disability benefit for part of a Week, the Employee may make a reduced Weekly Withdrawal from the Income Security Fund in an amount equal to an

7

amount of up to the Weekly Withdrawal amount determined in
paragraph (b) of this Section 2 for each day of such Week for which
such Employee was not entitled to receive such disability benefit but
would otherwise have been Unemployed, as provided under Article V(b)
of the Plan.

(e)   With respect to any Week for which an Employee applies to make a
      withdrawal from such Employee's Security Fund Account, Gross Wages
      shall include:

      (i)   holiday pay received from the Corporation for such Week;

      (ii)  the amount of any wages the Employee would have received for such
            Week from the Corporation had the Employee worked the hours
            available, except when such wages are applicable to days for
            which an Employee receives a disability benefit during a Week for
            which the Employee is entitled to a reduced Weekly Withdrawal as
            provided under Article IV, 2(d); and

      (iii) any withdrawals from a Security Fund Account, wage advances,
            unemployment benefit, or other similar benefit for such Week to
            which the Employee may be entitled under a plan financed by any
            other employer.

(f)   Notwithstanding the provisions in (a), (b), and (c) of this Section,
      the Weekly Withdrawal of an Employee covered by Article XI, 7(a)(3)
      will be reduced in the same ratio as the scheduled hours of work of
      such Employee at time of layoff bears to the number of hours in the
      employing unit's regular workweek.

SECTION 3.   <u>Attainment of Age 70-1/2</u>
(a)   If an Employee attains age 70-1/2 prior to January 1, 1997 and has not
      terminated employment, distribution of the Employee's Security Fund
      Account will begin not later than April 1 of the calendar year
      following the calendar year in which the Employee attains age 70-1/2
      and shall be made annually thereafter. However, an Employee may elect
      to discontinue such annual distribution by providing appropriate
      direction to the party designated by the Administrator in which case
      a distribution of the Employee's Security Fund Account will be made
      upon termination of employment.

(b)   If an Employee attains age 70-1/2 on or after
      January 1, 1997, and such Employee has not terminated employment, a
      distribution of the Employee's Security Fund Account will be made
      upon termination of employment.

(c)   All distributions required under this Section 3 shall be determined
      and made in accordance with Section 401(a)(9) of the Code and the
      regulations thereunder, including the minimum distribution incidental
      benefit requirement of Section 1.401(a)(9)-2 of the Proposed Income
      Tax Regulations.

SECTION 4.   <u>Rollovers</u>
An Employee who receives an Eligible Rollover Distribution may elect to
have the Trustee transfer directly to an IRA of the Employee, or to another
employer's plan in which the Employee is a participant, all or part of the
assets included in the distribution.  The Employee shall designate the IRA
or other employer's plan to which assets are to be transferred, and the
transfer shall be made subject to acceptance by the transferee plan or IRA.