**Hearing Date: April 7, 2006**
                            **Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                       :
   In re                              :      Chapter 11
                                       :
DELPHI CORPORATION, et al.,      :      Case No. 05-44481 (RDD)
                                     :
                                     :      (Jointly Administered)
                Debtors.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DEBTORS' OMNIBUS OBJECTION TO MOTIONS
<u>SEEKING RELIEF FROM AUTOMATIC STAY</u>

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates

(the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), hereby submit this omnibus objection (the "Objection") to the motions filed by Arlis M. Elmore, Mary P. O'Neil and Liam P. O'Neil for relief from the automatic stay.[1] In support of the Objection, the Debtors respectfully represent as follows:

Preliminary Statement

1. The Motions should be denied because neither Elmore, M. O'Neil, nor L. O'Neil (the "Claimants") has shown adequate cause for relief from the automatic stay to continue their respective personal injury litigation against Delphi, among other defendants. Both Claimants allege that they do not believe that the continuation of litigation will affect the Debtors or their estates. They are wrong. As set forth below, the continuation of the Claimants' litigation will directly affect the Debtors and their estates, to the detriment of all other creditors.

2. Claimants assert that they have cause to lift the automatic stay simply because they are willing to proceed against insurance proceeds alone. What the Claimants fail to understand is that due to the structure of the Debtors' insurance program, as described in more detail below, any claim paid by the Debtors' insurer will result in the insurer's holding an administrative expense priority claim in an equal amount against the Debtors. Thus, for every dollar paid to the Claimants by the Debtors' insurer, the Debtors will have to reimburse their insurer that same amount. As a result, the continuation of the Claimants' litigation will directly affect the Debtors' estates.

---

[1] Arlis M. Elmore's Motion for Relief From Automatic Stay (the "Elmore Motion") can be found at Docket No. 2715 and Motion for Relief From Automatic Stay Filed by Petitioners, Mary P. O'Neil and Liam P. O'Neil (the "O'Neil Motion") can be found at Docket No. 2748 (collectively, the "Motions"). On March 29, 2006, Elmore filed a memorandum in support of the Elmore Motion, which can be found at Docket No. 3009.

Moreover, the Debtors also retain the duty to defend. Undertaking this duty in and of itself will cause unnecessary expense and distraction.

3.  Just today, the Debtors announced their strategy to prepare for their return to stable, profitable business operations through a broad-based global restructuring. Implementation of this strategy should enable the Debtors to emerge from chapter 11 in the first half of 2007. Indeed, the Debtors are at a critical stage of these highly complex chapter 11 cases. At this time, there is simply no plausible argument why the Debtors should be forced to divert their attention from the immense tasks at hand to appease the Claimants. As was announced, the Debtors today filed their motions under sections 1113 and 1114 of the Bankruptcy Code seeking authority to reject U.S. labor agreements and to modify retiree benefits, and their initial motion to reject unprofitable supply contracts with General Motors Corporation ("GM"). The resolution of these matters, which will require the Debtors' undiverted attention, is key to the Debtors' ability to complete its U.S.-based restructuring and emerge from chapter 11.

4.  In light of the issues currently facing the Debtors, they simply cannot, and should not, be forced to litigate prepetition claims now with the Claimants. In fact, it is precisely this type of costly distraction that Congress intended to neutralize through the automatic stay. Permitting a modification of the stay at this time to allow the Claimants to proceed in their litigation against Delphi would turn the protection afforded by the automatic stay on its head.

5.  Moreover, the Debtors are developing lift-stay procedures, which they may propose to this Court within the next calendar quarter that will allow for an

3

orderly process to address matters such as those underlying the Motions.[2]  Consequently, the Debtors should not now be forced to focus on litigation with general unsecured litigation claimants.  The automatic stay should remain in place, and the Motions should be denied.

Argument

6. The automatic stay imposed by section 362 of the Bankruptcy Code is one of the most fundamental and significant protections that the Bankruptcy Code affords a debtor.  <u>Midlantic Nat'l Bank v. N.J. Dep't of Envt'l. Prot.</u>, 474 U.S. 494, 503 (1986); <u>see</u> <u>also</u> <u>In re Drexel Burnham Lambert Group Inc.</u>, 113 B.R. 830, 837 (Bankr. S.D.N.Y. 1990) ("[A]utomatic stay is key to the collective and preservative nature of a bankruptcy proceeding.").  The automatic stay is designed to, among other things, give the debtor a "breathing spell" after the commencement of a chapter 11 case, shielding debtors from creditor harassment and a multitude of litigation in a variety of forums at a time when the debtor's personnel should be focusing on restructuring.  <u>See</u> <u>Taylor v. Slick</u>, 178 F.3d 698, 702 (3d Cir. 1999), <u>cert. denied</u>, 528 U.S. 1079 (2000).

7. The automatic stay broadly extends to all matters which may have an effect on a debtor's estate, enabling bankruptcy courts to ensure that debtors have the opportunity to rehabilitate and reorganize their operation.  <u>See</u> <u>Manville Corp. v. Equity Sec. Holders Comm.</u> (In re Johns-Manville Corp.), 801 F.2d 60, 62-64 (2d Cir. 1986); <u>see</u> <u>also</u> <u>Fid. Mortgage Investors v. Camelia Builders, Inc.</u>, 550 F.2d 47, 53 (2d Cir. 1976) ("Such jurisdiction is necessary 'to exclude any interference by the acts of others or by

---

[2] The Debtors may ultimately conclude that global lift-stay procedures may not efficiently respond to the burdens and costs currently imposed on the Debtors and their estates.  If the Debtors reach such a conclusion, they will not present lift-stay procedures to this Court.

proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization.'") (citation omitted); AP Indus. Inc. v. SN Phelps & Co. (In re AP Indus., Inc.), 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990) ("The automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding.").

8. Section 362(d)(1) of the Bankruptcy Code provides that the court may grant relief from the automatic stay "for cause." While debtors still retain the exclusive right to formulate a plan of reorganization, "an unsecured, unliquidated claim holder should not be permitted to pursue litigation against the debtor in another court unless extraordinary circumstances are shown." See In re Pioneer Commercial Funding Corp., 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990). As more fully described below, the Claimants have failed in showing sufficient, extraordinary cause to obtain relief from the automatic stay at this stage of the Debtors' cases.

9. The lifting of the stay is committed to the sound discretion of the Court. In re Sonnax Indus., 907 F.2d 1280, 1288 (2d Cir. 1990). Because of the unstructured nature of the issues that are often contemplated in lift stay proceedings, certain courts, including the Second Circuit, have used a list of twelve factors when determining whether cause exists to modify or lift the automatic stay. The Second Circuit in Sonnax set forth the list of twelve factors that may be considered when deciding whether the stay should be lifted to allow litigation against a Debtor to continue in another forum:

> (1) whether relief would result in a partial or complete resolution of the issues;  (2) lack of any connection with or interference with the

5

> bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

In re Sonnax Indus., 907 F.2d at 1286. See also In re Curtis, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984). All twelve factors will not be relevant in every case, Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999), nor must the Court afford equal weight to each of the twelve factors. See Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship (In re Burger Boys, Inc.), 183 B.R. 682, 688 (S.D.N.Y. 1994).

    10. As demonstrated below, the Claimants have not, and indeed cannot, carry the burden of establishing that sufficient cause exists to lift the automatic stay. "If the movants fail to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., 907 F. 2d at 1285; see also In re Metro Transp. Co., 82 B.R. 351, 353 (Bankr. E.D. Pa. 1988) (noting unsecured creditors face difficult task of producing evidence to establish balance of hardships tips in their favor to obtain stay relief). Accordingly, the Motions should be denied.

I.  The Competing Interests Of The Debtors
    Greatly Outweigh Claimants' Interest

    A.  The Balance Of Harms Weighs In The Favor Of The Debtors

    11.  The Debtors and their estates would be prejudiced if the automatic stay were modified to permit either of the Claimants' litigations to proceed at this point in these chapter 11 cases.  The Claimants would like this Court to believe that there is no harm to the estates because should this Court lift the automatic stay, the Claimants would be willing to limit their recovery against the Debtors' insurer.  This proposal mischaracterizes the Debtors' insurance coverage and the various obligations imposed on the Debtors if their insurers make payments on prepetition claims.  As previously disclosed in the Debtors' motion for order authorizing renewal of insurance coverage (the "Insurance Agreement Motion") (Docket No. 1559), the Debtors are required under their prepetition insurance program for general liability, product liability, and automobile liability claims to pay their insurers amounts the Debtors are or may be obligated to pay to other parties but which are paid by their insurers.  Under the various liability policies, the Debtors have deductible limits, depending on the date and nature of the claim, from $1 million to $5 million.  Therefore, the Debtors are obligated to pay any portion of a claim that falls within the applicable deductible limit.[3]

    12.  On January 9, 2006, this Court authorized the Debtors to assume the various insurance agreements under which this obligation arises.  Subsequently, the Debtors assumed these agreements.  Thus, if the Debtors' insurer makes any payments

---

[3] Although Elmore references the declaration page of an insurance policy issued to a third-party for purposes of showing that the Debtors may be indemnified for payments made related to his claim, there is no guarantee at this time that any third parties or their insurers have an obligation, or alternatively, would honor, absent additional litigation, any indemnification provisions applicable to Elmore's claim.

7

directly to the Claimants,. the Debtors' insurers would have administrative expense priority claims for such payments.[4]

13. The Claimants, either knowingly or unknowingly, have ignored the current intensity of these cases. As was announced today, the Debtors are currently in the midst of critical negotiations with their unions and GM to address numerous issues regarding increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations. In furtherance of these efforts, and as stated above, today the Debtors filed their motions under sections 1113 and 1114 of the Bankruptcy Code seeking authority to reject U.S. labor agreements after ten days' notice to the unions and to modify retiree benefits, and their initial motion to reject unprofitable supply contracts with GM.

14. Allowing the Claimants to proceed will distract the Debtors from these critical issues and will thus cause significant prejudice. In re U.S. Brass Corp., 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994) ("When balancing the hardships in lifting the stay, the most important factor is the effect of such litigation on the administration of the estate; even slight interference with the administration may be enough to preclude relief.") (citing In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984)). Clearly, the purpose of the automatic stay is to allow the Debtors breathing space to avoid spending the Debtors' and the estates' time and resources on the activities described in the Motions.

---

[4] It should be noted that even if the Debtors did not assume these insurance agreements, the insurers, after paying the Claimants amounts within the applicable deductible, would have the right under the insurance agreements to draw down on the letter of credit that was issued under the Debtors' prepetition security facility. This would in turn increase the amount of funded debt owed to prepetition lenders. Thus, even if the Debtors did not assume the insurance agreements, any claim paid by the Debtors' insurers would affect the Debtors' estate.

See, e.g., In re U.S. Brass Corp., 173 B.R. 1000 (Bankr. E.D. Tex. 1994) (finding debtor would be prejudiced and denying motion to lift stay, reasoning that debtor's insurance coverage was in dispute and "even claims against Debtors' insurance impacts upon property of the estate and Debtor must expend its resources to some degree to defend even claims which are ultimately totally covered for payment by insurance.") (citing In re Metro Transp. Co., 82 B.R. 351, 354 (Bankr. E.D. Pa. 1988)).

15. In stark contrast to the substantial prejudice that the Debtors would suffer, the Claimants cannot show that they would be prejudiced if the Motions were denied. The status quo will remain in place for all of the Claimants, and they will not be prejudiced by the delay. The Claimants will face only the ordinary delay that all creditors face in complex chapter 11 cases. Creditor delay is inherent in the bankruptcy process, and is an unavoidable–and intended–consequence of the automatic stay. Accordingly, the automatic stay should not be modified to permit the Claimants' litigation claims to continue at this time.

    B.    Relief From The Stay Will Interfere With The Debtors' Cases And Will Not Allow For An Economical Resolution To The Litigation

16. The Debtors will be prejudiced if the stay is lifted and the Claimants are allowed to continue with litigation at this critical stage of the Debtors' cases. In addition to the reasons set forth above, the Debtors are parties to hundreds of lawsuits in state and federal courts across the country. Lifting the automatic stay for either of these Claimants presumably would encourage other parties with litigation claims against the Debtors to seek similar relief, forcing the Debtors to defend against numerous motions to modify the automatic stay. This result would be contrary to the fundamental principles set forth by Congress as a basis for the automatic stay. See, e.g., LTV Steel

9

Co. v. Bd. Of Educ. (In re Chateaugay Corp.), 93 B.R. 26, 30 (S.D.N.Y. 1988) (noting that automatic stay is intended to prevent "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts"); Midlantic Nat'l Bank, 474 U.S. at 503; In re Drexel Burnham Lambert Group, Inc., 113 B.R. at 837.

II.   The Fundamental Purpose Of The Automatic Stay
      Would Be Violated If The Stay Were Modified

17.   The fundamental purpose of the stay imposed by section 362(a)(i) of the Bankruptcy Code is to provide a debtor with a breathing spell, by giving the debtor the time and an opportunity "to attempt a repayment or reorganization plan." Borman v. Raymark Indus., 946 F.2d 1031, 1033 (3d Cir. 1991) (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977)). Section 362(a)(i), therefore, stays pending prepetition litigation to "forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it," and "avoid interference with the . . . rehabilitation of the debtor." Borman, 946 F.2d at 1036 (quoting Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982)).

18.   The Claimants seek to force the Debtors to proceed with potentially time-consuming and costly litigation. Now is simply not the right time. The Debtors' management and in-house legal team are now in a critical period with their unions and GM to address numerous issues regarding their collectively bargained agreements and their supply contracts. Moreover, the Debtors' management and in-house legal team, in particular, are already taxed with the responsibility of managing the active developments in these chapter 11 cases. During this critical period, the Debtors' management should be allowed to focus on the touchstone issues in these cases. Modification of the automatic stay at this critical stage of these cases would force the

10

Debtors to divert their attention from the key issues that require all of their time and energy.

## Conclusion

19.   A balancing of the competing interests of the Debtors and the Claimants demonstrates that the automatic stay should not be modified to permit the Claimants to proceed at this early stage of these chapter 11 cases.  For the reasons set forth above, the Motions should be denied.

## Notice

20.   Notice of this Objection has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered March 20, 2006.  The Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

21.   Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) denying the Motions and (ii) granting the Debtors such other and further relief as is just.

Dated: New York, New York
       March 31, 2006

                          SKADDEN, ARPS, SLATE, MEAGHER
                              & FLOM LLP

By: /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr. (JB 4711)
      John K. Lyons (JL 4951)
      Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

  - and -

By: /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession