KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
Edward M. Fox, Esq. (EF1619)
599 Lexington Avenue
New York, New York 10022
Telephone (212) 536-3900

Attorneys for Wilmington Trust Company,
as Indenture Trustee

Hearing Date: April 7, 2006
10:00 A.M.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>DELPHI CORPORATON, *et al*.,<br><br>Debtors. | Chapter 11<br>Case No. 05-44481 (RDD)<br>(Jointly Administered) |

**LIMITED OBJECTION OF WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE, TO MOTION FOR ORDER UNDER 11 U.S.C. § 363(B) AND FED. R. BANKR. P. 6004 APPROVING DEBTORS' HUMAN CAPITAL HOURLY ATTRITION PROGRAMS**

Wilmington Trust Company ("WTC"), in its capacity as indenture trustee with respect to the senior notes and debentures (the "Senior Debt") in the aggregate principal amount of $2 billion issued by Delphi Corporation ("Delphi"), by and through its attorneys, Kirkpatrick & Lockhart Nicholson Graham LLP, hereby files this limited objection to the Motion for Order Under 11 U.S.C. § 363(b) and Fed. R. Bankr. P. 6004 Approving Debtors' Human Capital Hourly Attrition Programs (the "Motion") filed by Delphi and its debtor subsidiaries and affiliates (collectively, the "Debtors"), stating as follows:

**PRELIMINARY STATEMENT**

1. In principle, WTC does not object to the Debtors' efforts to reduce their overall labor costs by encouraging voluntary attrition in the manner proposed by the Motion, nor

to the Debtors' efforts to obtain financial and other assistance from General Motors Corporation ("GM") in accomplishing that result.

2. WTC does object, however, to any effort to grant to GM an allowed unsecured claim against Delphi in the context of a motion under 11 U.S.C. § 363(b) before there has been an adequate opportunity for parties in interest, including WTC, to investigate the factual and legal merits of such a claim and to explore any defenses that might exist to such a claim based on the Debtors' complex relationship with their former owner.

3. The Debtors' Motion expressly states that: "GM will likely assert claims against the Debtors related to obligations assumed and/or undertaken by GM as part of the UAW Special Attrition Program." Motion ¶ 30. The Debtors then state in the Motion that

> entry into the UAW Special Attrition Program Agreement does not prejudice the rights of any interested party (including the Debtors and the Creditors' Committee) with respect to, among other things, the administration, reconciliation, and ultimate allowance, if ever, of such assertable claims.

Motion ¶ 30. Nevertheless, the terms of the actual UAW-GM-Delphi Special Attrition Program (the "Attrition Agreement"), as well as the Debtors' proposed form of order approving the Motion, are, at best, ambiguous on this point, and could easily be construed to grant GM a general unsecured claim against Delphi, not subject to challenge later, for any costs incurred or obligations assumed in connection with the Attrition Agreement.

4. In order to resolve this ambiguity, any order authorizing the Debtors to enter into the Attrition Agreement must expressly provide that the statutory rights of any creditor or party in interest to object to any claims GM might file against the Debtors, whether arising under the Attrition Agreement or otherwise, are preserved notwithstanding anything to the contrary in the Attrition Agreement or otherwise in the order approving the Motion.

5. Furthermore, this Court should reject the Debtors' request for blanket authority to enter into "substantially similar" attrition agreements with respect to other non-UAW employees in the future. Instead, the Debtors should be required to demonstrate a "good business reason" for any future attrition agreements into which they propose to enter after notice to creditors and parties in interest and an opportunity to be heard with respect to such future attrition agreements. In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983).

**ANY ORDER ENTERED WITH RESPECT TO THE MOTION MUST EXPRESSLY PRESERVE THE RIGHTS OF PARTIES IN INTEREST TO OBJECT TO ANY CLAIMS THAT MIGHT BE ASSERTED BY GM**

6. Section 502(a) of the Bankruptcy Code provides, in pertinent part, that "[a] claim or interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." 11 U.S.C. § 502(a).

7. The Debtor acknowledge in the Motion that "GM will likely assert claims against the Debtors related to obligations assumed and/or undertaken by GM as part of the UAW Special Attrition Program." Motion ¶ 30. The Debtors then state that

> entry into the UAW Special Attrition Program does not prejudice the rights of any interested party (including the Debtors and the Creditors' Committee) with respect to, among other things, the administration, reconciliation, and ultimate allowance, if ever, of such assertable claims.

Motion. ¶ 30.

8. Unfortunately, this sort of express protective language is missing from both the Attrition Agreement itself and, more importantly, the proposed order to be entered approving the Motion. Indeed, the Attrition Agreement and the proposed order expressly provide that

> any obligations assumed by GM under this Agreement . . . shall be conclusively deemed to be comprehended by, included within, and ***shall constitute a prepetition general unsecured claim assertable***

> ***by GM against the estate of Delphi Corporation*** under the U.S. Employee Matters Agreement (including, without limitation, related flowback agreements and the UAW-GM-Delphi Memorandum of Understanding – Benefit Plan Treatment and the UAW-GM-Delphi Flowback Agreements contained in the 1999 and 2003 GM-UAW and Delphi-UAW Contract Settlement Agreements), Delphi's Agreement dated December 22, 1999 to indemnify GM for its liability under the Benefit Guarantee as if all conditions for the triggering of GM's claim shall have occurred, and Delphi's general indemnity of GM under the Master Separation Agreement.

Proposed Order, ¶ 9; Attrition Agreement, ¶ 7(b) (emphasis added).

9. The Attrition Agreement and the proposed order do provide that approval of the Attrition Agreement is "without prejudice to any interested party . . . in all ***other*** aspects of the Debtors' chapter 11 cases, including by illustration . . . all claims administration and allowance matters." Proposed Order, ¶ 7; Attrition Agreement, ¶ 7(c) (emphasis added). Because of the use of the word "other," however, it does not appear that this reservation of rights is effective with respect to any claim arguably created by section 7(b) of the Attrition Agreement.

10. Obviously, the question of whether GM is being granted an allowed unsecured claim against one or more of the Debtors' estates is a matter of great consequence, and must, at a minimum, be clarified before this Court can authorize the Debtors to enter into this or any other Attrition Agreement.

11. If GM agrees with the Debtors' interpretation of the Attrition Agreement – that the rights of creditors and parties in interest to object to any claims GM might assert against the Debtors, including any claims associated with the Attrition Agreement, are expressly preserved – then any order entered with respect to the Motion must be amended to expressly so provide.

12. If, by contrast, GM does not agree with the Debtors' interpretation of the Attrition Agreement, and believes that it is, in fact, obtaining judicial approval for a general unsecured claim against Delphi, then the Debtors' Motion must be denied because there is no meeting of the minds regarding an essential element of the parties' alleged agreement.

13. In either case, the precise nature of the relief sought by the Motion must be clarified so that creditors and parties in interest can make a fully-informed and intelligent evaluation of the merits of the Debtor's participation in the Attrition Agreement, and also avoid the very real possibility of future litigation regarding the status of any claims GM might ultimately assert in connection with performance of its obligations under the Attrition Agreement.

14. This issue is of particular significance to the Senior Debt because section 7(b) of the Attrition Agreement specifically authorizes GM to assert a claim against Delphi Corporation (as opposed to any of the other Debtors). Thus, Delphi's operating subsidiaries will receive the benefits of lower wage rates as hourly employees take advantage of the attrition program and are replaced by employees working for lower wages, while Delphi Corporation and its creditors are stuck with the bill. The Court cannot approve such a program with respect to Delphi Corporation absent a showing that the benefits to Delphi Corporation, which may no longer have any equity in the Debtor subsidiaries, exceed the costs to Delphi Corporation.[1] See

[1] This effort to focus the assertion of GM's claims against Delphi Corporation appears to be part of a concerted effort by GM to attack the Senior Debt. The Debtors' Chief Restructuring Officer, John Sheehan, testified on March 21, 2006 in connection with the motion for the appointment of an equity committee in this case, that:

> One of the most significant factors that led to the reorganization filing was a position by General Motors that it was not going to be the sole – sole holder of the costs associated with Delphi's transformation and it believed that other parties, including the unsecured bondholders, would need to be impaired through the process and that could really only be achieved at that point in time through a bankruptcy filing

Mission Iowa Wind Co. v. Enron Corp., 291 B.R. 39, 42 ("it is incumbent on the Bankruptcy Court in these circumstances not to defer in conclusory fashion to the debtors' business judgment but to consider on the merits whether the price allocated to the U.S. Asset Sellers was a fair reflection of those assets' relative value and to make findings of fact on that question.")

**THE DEBTORS SHOULD BE REQUIRED TO SEEK SEPARATE APPROVAL FOR ANY FUTURE ATTRITION AGREEMENTS**

15. Section 363(b) of the Bankruptcy Code provides, in pertinent part, that "the trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate . . . ." 11 U.S.C. § 363(b).

16. Accordingly, while a debtor may freely engage in ordinary course business transactions without direct oversight by the Court or its creditors, see 11 U.S.C. § 363(c), where a "transaction is outside the ordinary course of business, the debtor may not 'use, sell, or lease' estate property until creditors and other interested parties are given notice of the proposed transaction and the opportunity for a hearing if they object." In re Lavigne, 114 F.3d 379, 384 (2d Cir. 1997).

17. Moreover, before authorizing a debtor to engage in a transaction that is outside of the ordinary course of business, the Court must find that the proposed use of estate assets is supported by a "good business reason." In re Lionel Corp., 722 F.2d 1063, 1071 (2d Cir. 1983).

18. Notwithstanding these established requirements for approval of extraordinary transactions involving estate property, which presuppose some degree of individualized consideration, the Debtors seek blanket authority to enter into "reasonably

---

Transcript of hearing of March 21, 2006, p. 216, l. 21-217, l. 3.

comparable" attrition programs with respect to any of the Debtors' unionized employees not covered by the present Attrition Agreement (i.e. non-UAW employees). Motion, p. 24.

19. The Debtors have not demonstrated any justification for abrogating the statutory rights of their creditors to insist on notice and an opportunity for a hearing before the Debtors enter into any future attrition agreements, nor have they provided any quantitative definition of what a "reasonably comparable" attrition program might look like.

20. Accordingly, because the Debtors' decision to enter into future attrition programs similar to the Attrition Agreement will have significant economic consequences for the creditors of the Debtors' estates, the Debtors' request for blanket dispensation from the statutory requirement of demonstrating a "good business reason" for entering into each such agreement, and allowing creditors and parties in interest to review (and, if necessary, object to) the wisdom of their decision must be denied.

WHEREFORE, WTC respectfully requests that any Order entered with respect to the Motion: (i) expressly preserve the right of any creditor or party in interest to object to any claims that might ultimately be asserted by GM, whether in connection with the Attrition Agreement or otherwise, (ii) require the Debtors to seek separate approval for any other use, sale or lease of property of their estates outside of the ordinary course of business, including any program similar to the Attrition Program; and (iii) grant such other and further relief as this Court deems just and proper.

Dated: New York, New York
April 4, 2006

KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP

By: *_/s/ Edward M. Fox_*
Edward M. Fox (EF1619)
A Member of the Firm
Attorneys for Wilmington Trust Company,
as Indenture Trustee
599 Lexington Avenue
New York, NY 10022
(212) 536-3900