**Hearing Date: April 7, 2006**
          **Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                               :
    In re                      :   Chapter 11
                               :
DELPHI CORPORATION, et al.,     :   Case No. 05-44481 (RDD)
                               :
                               :   (Jointly Administered)
               Debtors.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

     DEBTORS' OBJECTION TO MOTION OF AUTOMOTIVE TECHNOLOGIES
        INTERNATIONAL, INC. FOR RELIEF FROM AUTOMATIC
       STAY TO PROCEED WITH PATENT LITIGATION APPEALS

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this objection (the "Objection") to the motion of Automotive Technologies International, Inc. ("ATI") for relief from the automatic stay to proceed with appeals of patent litigation (the "Motion") (Docket No. 2928). In support of the Objection, the Debtors respectfully represent as follows:

Preliminary Statement

1. In 2001 and 2003, ATI commenced two separate actions in the United States District Court for the Eastern District of Michigan, alleging infringement of two patents relating to side impact sensors and weight sensors by Delphi, among others (the "2001 Action" and the "2003 Action," respectively).[1] Prior to the petition date, the district court hearing the 2001 Action granted Delphi and the other defendants' motions for summary judgment and dismissed ATI's claims based on the court's finding of patent invalidity. Likewise, before the petition date, the district court hearing the 2003 Action granted Delphi's motions for summary judgment and dismissed ATI's claims based on the court's finding of noninfringement and patent invalidity. ATI appealed the rulings in both the 2001 Action (the "ATI/BMW Appeal") and 2003 Action (the "ATI/Delphi Appeal") to the United States Court of Appeals for the Federal Circuit. By the Motion, ATI has asked the Court for relief from the automatic stay to adjudicate the ATI/BMW Appeal and the ATI/Delphi Appeal to decision by the Federal Circuit on each appeal.

---

[1]  ATI also filed a third patent infringement case in 2004 against Delphi, among others, arising from a second patent for side impact sensors (the "2004 Action"). Because of the commonality of issues between the 2004 Action and the 2001 Action, however, the district court stayed the 2004 Action in its entirety in August 2005, pending the appeal of its ruling in the 2001 Action. ATI has not sought any relief in the Motion related to the 2004 Action.

2

2. With respect to the ATI/Delphi Appeal, the matter has been fully-briefed and filed with the Federal Circuit. Only oral arguments in front of the Federal Circuit and a decision from the court remain to adjudicate the appeal. Because Debtors have already expended the substantial monetary and management resources required to prepare Delphi's defense and brief the issues raised on appeal, the Debtors do not object to the modification of the automatic stay for the <u>sole</u> and <u>limited</u> purpose of allowing ATI to prosecute the ATI/Delphi Appeal with the Federal Circuit. Upon conclusion of the proceedings in the Federal Circuit (whether by affirmation, reversal, or other ruling), ATI should be required to return to this Court if it desires further relief from the automatic stay.

3. Unlike the ATI/Delphi Appeal, the ATI/BMW Appeal will require significant management involvement and monetary resources to defend this matter. ATI seeks multi-millions of dollars in damages from the Debtors and injunctive relief, prohibiting Delphi and others from using important vehicle safety devices. The ATI/BMW Appeal has not been briefed by any of the parties, and therefore, it is not as advanced as the ATI/Delphi Appeal. The Debtors estimate the cost of briefing this ATI/BMW Appeal and defending at the Federal Circuit may exceed $200,000. Based on a potential prepetition obligation, GM, another defendant, may contend that Delphi owes it a contractual indemnification obligation to defend GM in the ATI/BMW Appeal. If such an obligation exists, Delphi's expenses related to the ATI/BMW Appeal would be even greater. Additionally, ATI and Delphi, along with the approximately 25 other defendants in the underlying 2001 Action, have agreed to mediate this matter as part of the Federal Circuit's voluntary mediation program and the Debtors are prepared

participate in that mediation process. Although a mediation date has not been set, and the logistics of finding a mutually agreeable date for 25 parties is quite challenging, the Debtors anticipate that the parties will mediate the 2001 Action within the next two months.

4.  Just last week, the Debtors announced their strategy to prepare for their return to stable, profitable business operations through a broad-based global restructuring. Implementation of this strategy should enable the Debtors to emerge from chapter 11 in the first half of 2007. The Debtors filed their motions under sections 1113 and 1114 of the Bankruptcy Code seeking authority to reject U.S. labor agreements and to modify retiree benefits, and their initial motion to reject unprofitable supply contracts with General Motors Corporation ("GM"). The resolution of these matters, which will require the Debtors' undiverted attention, is key to the Debtors' ability to complete its U.S.-based restructuring and emerge from chapter 11. Indeed, the Debtors are at a critical stage of these highly complex chapter 11 cases. The Debtors informed ATI of the current critical and complex events taking place in these chapter 11 cases and requested that ATI agree to adjourn the Motion as it pertains to the ATI/BMW Appeal until the June omnibus hearing. ATI refused the Debtors' request to adjourn the Motion as it relates to the ATI/BMW Appeal.

5.  It is precisely this type of costly distraction that Congress intended to neutralize through the automatic stay. Permitting a modification of the stay at this time to allow ATI to proceed with the costly and burdensome ATI/BMW Appeal would turn the protection afforded by the automatic stay on its head. The Debtors should not now be forced to focus on a general unsecured litigation claimants' appeal that is in its infancy.

6. In light of the foregoing, the Debtors believe that it would be both efficient and prudent either to deny the Motion entirely as it pertains to the ATI/BMW Appeal or adjourn the ATI/BMW Appeal entirely to the next omnibus hearing date occurring 14 days or more after the mediation has been completed.

Argument

7. The automatic stay imposed by section 362 of the Bankruptcy Code is one of the most fundamental and significant protections that the Bankruptcy Code affords a debtor. Midlantic Nat'l Bank v. N.J. Dep't of Envt'l. Prot., 474 U.S. 494, 503 (1986); see also In re Drexel Burnham Lambert Group Inc., 113 B.R. 830, 837 (Bankr. S.D.N.Y. 1990) ("[A]utomatic stay is key to the collective and preservative nature of a bankruptcy proceeding."). The automatic stay is designed to, among other things, give the debtor a "breathing spell" after the commencement of a chapter 11 case, shielding debtors from creditor harassment and a multitude of litigation in a variety of forums at a time when the debtor's personnel should be focusing on restructuring. See Taylor v. Slick, 178 F.3d 698, 702 (3d Cir. 1999), cert. denied, 528 U.S. 1079 (2000).

8. The automatic stay broadly extends to all matters which may have an effect on a debtor's estate, enabling bankruptcy courts to ensure that debtors have the opportunity to rehabilitate and reorganize their operation. See Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.), 801 F.2d 60, 62-64 (2d Cir. 1986); see also Fid. Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 53 (2d Cir. 1976) ("Such jurisdiction is necessary 'to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization.'") (citation omitted); AP Indus. Inc. v. SN Phelps & Co. (In re

AP Indus., Inc.), 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990) ("The automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding.").

9. Section 362(d)(1) of the Bankruptcy Code provides that the court may grant relief from the automatic stay "for cause." While debtors still retain the exclusive right to formulate a plan of reorganization, "an unsecured, unliquidated claim holder should not be permitted to pursue litigation against the debtor in another court unless extraordinary circumstances are shown." See In re Pioneer Commercial Funding Corp., 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990). As more fully described below, ATI has failed in showing sufficient, extraordinary cause to obtain relief from the automatic stay at this stage of the Debtors' cases to proceed with the ATI/BMW Appeal.

10. The lifting of the stay is committed to the sound discretion of the Court. In re Sonnax Indus., 907 F.2d 1280, 1288 (2d Cir. 1990). Because of the unstructured nature of the issues that are often contemplated in lift stay proceedings, certain courts, including the Second Circuit, have used a list of twelve factors when determining whether cause exists to modify or lift the automatic stay. The Second Circuit in Sonnax set forth the list of twelve factors that may be considered when deciding whether the stay should be lifted to allow litigation against a Debtor to continue in another forum:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the

6

> action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

In re Sonnax Indus., 907 F.2d at 1286. See also In re Curtis, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984). All twelve factors will not be relevant in every case, Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999), nor must the Court afford equal weight to each of the twelve factors. See Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship (In re Burger Boys, Inc.), 183 B.R. 682, 688 (S.D.N.Y. 1994).

11.    As demonstrated below, as it pertains to the ATI/BMW Appeal, ATI has not, and indeed cannot, carry the burden of establishing that sufficient cause exists to lift the automatic stay. "If the movants fail to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., 907 F. 2d at 1285; see also In re Metro Transp. Co., 82 B.R. 351, 353 (Bankr. E.D. Pa. 1988) (noting unsecured creditors face difficult task of producing evidence to establish balance of hardships tips in their favor to obtain stay relief). Accordingly, the Motion should be denied.

I.    The Competing Interests Of The Debtors
      Greatly Outweigh ATI's Interest

   A.    The Balance Of Harms Weighs In The Favor Of The Debtors

12.    The Debtors and their estates would be prejudiced if the automatic stay were modified to permit the ATI/BMW Appeal to proceed at this point in these chapter 11 cases. The Claimants have consciously disregarded the current intensity of

7

these cases. As was announced on March 31, 2006, the Debtors are currently in the midst of critical negotiations with their unions and GM to address numerous issues regarding increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-strategic, non-profitable operations. In furtherance of these efforts, and as stated above, on March 31, 2006, the Debtors also filed their motions under sections 1113 and 1114 of the Bankruptcy Code seeking authority to reject U.S. labor agreements after ten days' notice to the unions and to modify retiree benefits, and their initial motion to reject unprofitable supply contracts with GM.

13.   Allowing ATI to proceed with the appeal of the ATI/BMW Appeal, which is in its infancy, will distract the Debtors from these critical issues and will thus cause significant prejudice. In re U.S. Brass Corp., 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994) ("When balancing the hardships in lifting the stay, the most important factor is the effect of such litigation on the administration of the estate; even slight interference with the administration may be enough to preclude relief.") (citing In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984)). Clearly, the purpose of the automatic stay is to allow the Debtors breathing space to avoid spending the Debtors' and the estates' time and resources on briefing and arguing the appeal of a very significant matter to the Debtors. See, e.g., In re U.S. Brass Corp., 173 B.R. 1000 (Bankr. E.D. Tex. 1994) (finding debtor would be prejudiced and denying motion to lift stay, reasoning that debtor's insurance coverage was in dispute and "even claims against Debtors' insurance impacts upon property of the estate and Debtor must expend its resources to some degree

to defend even claims which are ultimately totally covered for payment by insurance.") (citing In re Metro Transp. Co., 82 B.R. 351, 354 (Bankr. E.D. Pa. 1988)).

14. In stark contrast to the substantial prejudice that the Debtors would suffer, ATI cannot show that they would be prejudiced if the Motion, as it relates to the ATI/BMW Appeal, was denied. The status quo will remain in place for ATI, and they will not be prejudiced by the delay. Indeed, during this delay, the parties intend to mediate issues related to the 2001 Action and ATI/BMW Appeal, and they may be able to achieve a mutually agreeable resolution to ATI's claim without the need for relief from the automatic stay. Even if the parties had not agreed to mediate this matter, ATI simply would experience the creditor delay that is inherent in the bankruptcy process, and is an unavoidable–and intended–consequence of the automatic stay. Accordingly, the automatic stay should not be modified to permit ATI to prosecute the ATI/BMW Appeal at this time.

    B.    Relief From The Stay Will Interfere With The Debtors' Cases And Will Not Allow For An Economical Resolution To The 2001 Action

15. The Debtors will be prejudiced if the stay is lifted and ATI is allowed to continue with prosecution of the ATI/BMW Appeal at this critical stage of the Debtors' cases. In addition to the reasons set forth above, the Debtors are parties to hundreds of lawsuits and appeals in state and federal courts across the country. Due to the nature of the action and the potential liability, the cost of defending the ATI/BMW Appeal, which is still in its early stages, is significantly greater than the cost of defending many of the litigations claims filed against the Debtors, even though those claims may require the Debtors to engage in discovery. Lifting the automatic stay for ATI might encourage other parties with litigation claims against the Debtors to seek similar relief,

9

forcing the Debtors to defend against numerous motions to modify the automatic stay. This result would be contrary to the fundamental principles set forth by Congress as a basis for the automatic stay.  See, e.g., LTV Steel Co. v. Bd. Of Educ. (In re Chateaugay Corp.), 93 B.R. 26, 30 (S.D.N.Y. 1988) (noting that automatic stay is intended to prevent "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts"); Midlantic Nat'l Bank, 474 U.S. at 503; In re Drexel Burnham Lambert Group, Inc., 113 B.R. at 837.

      C.      The Debtors Do Not Have Insurance To Cover Claims Of
             The Nature Asserted In The 2001 Action and the 2003 Action

      16.      The Debtors will be prejudiced if the stay is lifted and ATI is allowed to continue with prosecution of the ATI/BMW Appeal.  In addition to the reasons stated above, the Debtors do not have insurance to cover the liability associated with the 2001 Action and the 2003 Action.  All costs associated with defending the actions and the ATI/BMW Appeal and any liability that may ultimately arise on account of the actions would be borne directly by the Debtors.  Accordingly, the automatic stay should not be modified to permit ATI to prosecute the ATI/BMW Appeal at this time.

II.      The Fundamental Purpose Of The Automatic Stay
          Would Be Violated If The Stay Were Modified

      17.      The fundamental purpose of the stay imposed by section 362(a)(i) of the Bankruptcy Code is to provide a debtor with a breathing spell, by giving the debtor the time and an opportunity "to attempt a repayment or reorganization plan." Borman v. Raymark Indus., 946 F.2d 1031, 1033 (3d Cir. 1991) (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977)).  Section 362(a)(i), therefore, stays pending prepetition litigation to "forestall the depletion of the debtor's assets due to legal costs in defending

proceedings against it," and "avoid interference with the . . . rehabilitation of the debtor." <u>Borman</u>, 946 F.2d at 1036 (quoting <u>Association of St. Croix Condominium Owners v. St. Croix Hotel Corp.</u>, 682 F.2d 446, 448 (3d Cir. 1982)).

18. ATI seeks to force the Debtors to proceed with a potentially time-consuming and costly appeal. Now is simply not the right time. The Debtors' management and in-house legal team are now in a critical period with their unions and GM to address numerous issues regarding their collectively bargained agreements and their supply contracts. Moreover, the Debtors' management and in-house legal team, in particular, are already taxed with the responsibility of managing the active developments in these chapter 11 cases. During this critical period, the Debtors' management should be allowed to focus on the touchstone issues in these cases. Modification of the automatic stay at this critical stage of these cases to allow ATI to prosecute the ATI/BMW Appeal would force the Debtors to divert their attention from the key issues that require all of their time and energy.

Conclusion

19. With respect to the ATI/Delphi Appeal, the Debtors would agree to modify the automatic stay for the <u>sole</u> and <u>limited</u> purpose of allowing ATI to prosecute the ATI/Delphi Appeal with the Federal Circuit. With respect to the ATI/BMW Appeal, in light of the fact that the Debtors have agreed to mediate the 2001 Action giving rise to the ATI/BMW Appeal and after balancing the competing interests of the Debtors and ATI, the automatic stay should not be modified at this time. The Motion should be denied or adjourned entirely as it relates to the ATI/BMW Appeal to the next omnibus

hearing date occurring 14 days or more after the mediation has been completed. For the reasons set forth above, the Motion should be denied.

## Notice

20. Notice of this Objection has been provided in accordance with the Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered March 20, 2006. The Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

21. Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) modifying the automatic stay for the sole and limited purpose of allowing ATI to prosecute the ATI/Delphi Appeal to a decision from the Federal Circuit, (ii) denying the Motion as it relates to the ATI/BMW Appeal or, in the alternative, adjourning the motion as it relates to the ATI/BMW Appeal to the next omnibus hearing date occurring 14 days or more after the mediation in respect of the ATI/BMW Appeal has been completed; and (iii) granting the Debtors such other and further relief as is just.

Dated: New York, New York
April 5, 2006

          SKADDEN, ARPS, SLATE, MEAGHER
            & FLOM LLP

          By: /s/ John Wm. Butler, Jr.
             John Wm. Butler, Jr. (JB 4711)
             John K. Lyons (JL 4951)
             Ron E. Meisler (RM 3026)
          333 West Wacker Drive, Suite 2100
          Chicago, Illinois 60606
          (312) 407-0700

           - and -

          By: /s/ Kayalyn A. Marafioti
             Kayalyn A. Marafioti (KM 9632)
             Thomas J. Matz (TM 5986)
          Four Times Square
          New York, New York 10036
          (212) 735-3000

          Attorneys for Delphi Corporation, et al.,
            Debtors and Debtors-in-Possession