# EXHIBIT H

## THIRD AMENDMENT TO CONSTRUCTION LOAN AGREEMENT

THIS THIRD AMENDMENT TO CONSTRUCTION LOAN AGREEMENT (this "Amendment") is made and entered into effective as of December 31, 2005, by and between CHEROKEE NORTH KANSAS CITY, LLC, a Delaware limited liability company ("Borrower"), and FIRST SOUTHERN NATIONAL BANK ("Lender")

WHEREAS, Borrower and Lender entered into that certain Construction Loan Agreement dated as of September 19, 2002 (hereinafter, as amended from time to time, the "Loan Agreement"; capitalized terms used herein and not otherwise defined shall have the meaning given them in the Loan Agreement); and

WHEREAS, in connection with the Loan Agreement, Borrower has delivered to Lender that certain draw note dated September 19, 2002 in the original principal amount of $1,200,000, that certain draw note dated July 25, 2003 in the original principal amount of $400,000, and that certain draw note dated March 29, 2005 in the original principal amount of $575,000; and

WHEREAS, Borrower, as Landlord, and Delphi Automotive Systems LLC ("Delphi"), as Tenant, are parties to that certain Lease of Industrial or Warehouse Facilities dated July 2, 2002 (as amended, the "Delphi Lease"), relating to the leasing of certain space in the Property; and

WHEREAS, Delphi has filed a voluntary bankruptcy petition under Chapter 11 of Title 11 of the United States Code (the "Delphi Bankruptcy Proceeding); and

WHEREAS, Borrower and Lender now mutually desire to amend certain of the terms and provisions of the Loan Agreement in accordance with the terms and conditions stated herein

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1   Term of Loan. Section 2 6 of the Loan Agreement is hereby amended and restated in its entirety as follows:

> Term of Loan   The term of this Agreement shall be from the Effective Date to March 28, 2008 (the "Termination Date").

2.   Interest Rate. Section 2.3(a) of the Loan Agreement is hereby amended and restated in its entirety as follows:

> Interest Rate   Subject to the terms and provisions of this Agreement, the principal amount of each Advance outstanding under the Note shall bear interest from time to time at a floating per annum rate of interest equal to the Prime Rate (as hereinafter defined) plus one and one-quarter percent (1 25%); provided, however, that at no time shall the applicable interest rate hereunder be less than five and one half percent (5 5%)

3   Reserve Account.   Borrower shall maintain a reserve account with Lender (the "Reserve Account"), which account shall be subject to a Deposit Account Pledge, Assignment and Security Agreement in favor of Lender   Borrower shall deposit not less than $20,000 per month into the Reserve Account; provided, however, that at no time shall Borrower be required to maintain a balance in the Reserve Account in excess of Two Hundred Thousand Dollars ($200,000)   Lender acknowledges and agrees that any and all funds in the Reserve Account shall immediately be returned to Borrower upon the earlier to occur of (a) the date the Loan is repaid in full, or (b) the date that Delphi accepts the Delphi Lease in the Delphi Bankruptcy Proceeding

4.   Amendments to Loan Documents.   All other applicable provisions of the Loan Agreement and any other loan documents in connection therewith are hereby amended in accordance with Sections 1 through 3 hereof

5.   Amendment Fee   The Borrower hereby agrees to pay to Lender a non-refundable amendment free of $12,000.00, which shall be fully earned and payable upon the execution of this Amendment

6   Condition Precedent.   It is a condition precedent to this Amendment taking effect that the Borrower shall have executed:

(a) the resolutions of Borrower dated of even date herewith authorizing the execution of this Amendment; and

(b) the Deposit Account Pledge, Assignment and Security Agreement dated of even date herewith from Borrower to Lender

7.   Incorporation by Reference; Statement Required by Section 432.045, Mo. Rev. Stat.

(a) Each of the other Loan Documents are incorporated herein in full by this reference, provided, however, that if there is any inconsistency between this Amendment and such other Loan Documents (as amended by this Amendment), this Amendment shall govern

**(b) Oral agreements or commitments to loan money, extend credit or to forbear from enforcing repayment of a debt including promises to extend or renew such debt are not enforceable, regardless of the legal theory upon which it is based that is in any way related to the credit agreement.  To protect you (borrower(s)) and us (creditor) from misunderstanding or disappointment, any agreements we reach covering such matters are contained in this writing, which is the complete and exclusive statement of the agreement between us, except as we may later agree in writing to modify it.**

8.   Miscellaneous

a   Except as expressly herein amended, all provisions of the Loan Agreement and other loan documents shall remain in full force and effect.

b.   This Amendment shall inure to the benefit of and be binding upon the parties hereto and their respective successors and assigns.

c.   This Amendment shall be construed in accordance with and be governed by the laws of the State of Missouri

d.   Borrower agrees to execute such other and further documents, instruments and agreements as Lender may request to implement the provisions of this Amendment

e.   Wherever possible each provision of this Amendment shall be interpreted in such a manner as to be effective and valid under applicable law, but if any provision of this Amendment shall be prohibited or invalid under applicable law, such provision shall be ineffective to the extent of such prohibition or invalidity without invalidating the remainder of such provision or the remaining provisions of this Amendment

[Remainder of Page Intentionally Left Blank]

IN WITNESS WHEREOF, the parties have caused this Amendment to be executed and delivered by their duly authorized representatives, effective as of the date first above written

CHEROKEE NORTH KANSAS CITY, LLC

By: _____
Name: Robert Naylor
Title: Sec/Treasurer

FIRST SOUTHERN NATIONAL BANK

By: _____
Name: Tommy Roberts
Title: Regional President

## DEPOSIT ACCOUNT PLEDGE, ASSIGNMENT AND SECURITY AGREEMENT

January 30, 2006

FOR VALUE RECEIVED in consideration of the benefits to the undersigned ("Customer") and to secure the payment of the obligations of Customer pursuant to the terms of those certain Promissory Notes (collectively, the "Notes") payable to FIRST SOUTHERN NATIONAL BANK (the "Bank") in the original principal amounts of $1,200,000, $400,000 and $575,000 dated September 19, 2002, July 25, 2003, and March 29, 2005, respectively, and all other documents executed by Customer in connection with the Notes ("Obligations"), Customer hereby assigns, transfers, pledges and grants to Bank a security interest in: (a) all of the right, title and interest of Customer in and to that certain Deposit Account, number 8000008866 deposited with or payable by Bank in the name of Customer, including all sums now or at any time hereafter on deposit to said account(s) and all sums due or to become due on said account(s), and any renewals, extensions or replacements of the above described account(s) and issued in lieu of the same ("Account"); (b) all other property which may from time to time be acquired directly or indirectly using the proceeds of the Account; (c) all property of every kind and description in which Customer has or may acquire any interest now or hereafter at any time in the possession or control of Bank for any reason including, without limitation, property delivered to Bank as collateral, for safekeeping, for deposit, or for collection or exchange for other property, and all dividends and distributions on or other rights in connection with such property; and (d) all other assets of Customer in which Bank has been or is hereafter granted a security interest under any other security agreements, notes or other obligations or liabilities between Customer and Bank (collectively, "Collateral") The following provisions shall apply to this Deposit Account Pledge, Assignment and Security Agreement (this "Agreement")

1. **Withdrawals** Except as otherwise provided in this Agreement, Customer shall have no right to withdraw or access any sums now or hereafter deposited in the Account until all of the Obligations have been paid in full and this Agreement is terminated pursuant to its stated terms. Notwithstanding the foregoing, Borrower shall have the right, at anytime, to withdraw that portion of the sums contained in the Account in excess of Two Hundred Thousand Dollars ($200,000.00) The Bank acknowledges and agrees that any and all interest earned on the Account shall be disbursed by the Bank on a monthly basis as principal payments on the Notes

2. **Right to Deal with Collateral and Other Obligors** Bank may from time to time, without notice to Customer, and without impairing or affecting the pledge and security interest created hereby: (a) acquire a security interest in any property in addition to the Collateral, or release any such interest so acquired, or permit any substitution or exchange for such property or any part thereof; (b) acquire the primary or secondary liability of any party or parties with respect to all or any Obligations, or release, modify or compromise the same or any thereof; (c) modify, extend or renew for any period any Obligations; (d) waive defaults of Customer or of any other person with respect to any of the Obligations or any collateral security therefore; (e) delay in enforcing, or fail to enforce, any of its rights against Customer or any other person with respect to any of the Obligations or impair or fail to perfect any security interest in any security for any of the Obligations; (f) fail to obtain validly executed or enforceable instruments pertaining to the Obligations or any security therefore; (g) fail to maintain a business

relationship with Customer; and (h) resort to the Collateral for payment of Obligations whether or not Bank shall have resorted to any other collateral or proceeded against any other party (including Customer) primarily or secondarily liable on the Obligations or any of them.

3.  **Care of Collateral.** Bank shall have no liability or responsibility to Customer for any action taken or omitted with respect to the Collateral or otherwise at the direction of Customer, except in the event of Bank's gross negligence or willful misconduct

4.  **Governing Law; Severability.** This Agreement shall be construed and governed by the laws of the State of Kentucky  If any part of this Agreement shall be adjudged invalid or unenforceable as of any term of court, then such partial invalidity or unenforceability shall not cause the remainder of this Agreement to be or become invalid or unenforceable, and if a provision hereof is held invalid or unenforceable in one or more of its applications, that provision shall remain in effect in all valid or enforceable applications that are severable from the invalid or unenforceable application or applications.

5.  **Litigation.** In the event of any litigation with respect to this Agreement, the Letter of Credit or other agreements secured hereby, the Collateral, or any other document or agreement applicable thereto; Customer agrees that any proceedings enforcing or construing this Agreement may be brought in any State or Federal Court in Kentucky

6.  **Default** The occurrence of any one of the following events after expiration of any applicable cure period shall constitute a default under this Agreement: (a) a failure of Customer to perform, observe or comply with any of the provisions of this Agreement; (b) a default under any writing, agreement or document executed by Customer in connection with any of the Obligations; or (c) the failure to pay any of the Obligations when due

7.  **Rights Upon Default** Upon a Default hereunder, in addition to the remedies provided by applicable law, Bank shall have all rights of a secured party under the Uniform Commercial Code, including the right to convert the Collateral to cash, or otherwise dispose of the Collateral in order to realize proceeds thereof, for application in reduction of the Obligations or for deposit to a cash collateral account securing the Obligations

8.  **Costs and Expenses** All costs and expenses, including, without limitation, reasonable legal fees and expenses (determined in accordance with such attorneys' normal hourly rates and not as a statutory percentage), incurred by or on behalf of Bank in connection with a default under this Agreement, shall be paid by Customer (to the extent not prohibited by law)

9.  **Termination** The pledge and security interest granted hereby is a continuing one and shall continue in effect notwithstanding that from time to time no Obligation may exist; and the pledge and security interest shall be terminated by Customer only upon actual delivery of written notice to Bank of such intention, and payment in full of all then existing Obligations secured hereby; provided, however, that such notice and payment shall in no way affect, and this Agreement shall remain fully operative with respect to any Obligations, or commitments which may become Obligations, entered into between Customer and/or Customer and Bank prior to receipt of such notice or payment, whichever is later.

2

10.    **Binding Effect.** This Agreement shall inure to and be binding upon the heirs, personal representatives, successors and assigns of Customer and Bank, and the terms "Customer" and "Bank" shall include and mean, respectively, the successors and assigns of Customer and Bank. The use of the singular herein may also refer to the plural, and vice versa, and the use of the neuter or any gender shall be applicable to any other gender or the neuter.

11.    **Amendments; Time.** This Agreement may be amended or modified only by a writing executed by both Customer and Bank. Time is of the essence of all Obligations.

12     **Waiver of Trial by Jury. Customer and Bank agree that any suit, action, or proceeding, whether claim or counterclaim, brought or instituted by Customer or Bank on or with respect to this Agreement or which in any way relates, directly or indirectly, to this Agreement, or the dealings of the parties with respect thereto, shall be tried only by a court and not a jury. CUSTOMER AND BANK HEREBY EXPRESSLY WAIVE ANY RIGHT TO A TRIAL BY JURY IN ANY SUCH SUIT, ACTION OR PROCEEDING. Customer and Bank acknowledge and agree that this provision is a specific and material aspect of this Agreement and that Bank would not accept this Agreement as a basis for the extension of credit to Customer without this waiver of jury trial.**

IN WITNESS WHEREOF, Customer and the Bank have executed this Agreement with the specific intention of creating an instrument under seal as of the date first written above.

WITNESS:                          CUSTOMER:
                                  CHEROKEE NORTH KANSAS CITY, LLC

_____           By: _____(SEAL)
                                  Name: _Robert Naylor_
                                  Title: _Sec/Treasurer_


                                  FIRST SOUTHERN NATIONAL BANK

                                  By: _____
                                  Name: _Tommy Roberts_
                                  Title: _Regional President_


3

## UNANIMOUS WRITTEN CONSENT
## OF THE SOLE MEMBER OF
## CHEROKEE NORTH KANSAS CITY, LLC

The undersigned, being the sole Member of Cherokee North Kansas City, LLC, a Missouri limited liability company (the "Company"), hereby adopts the following resolutions in lieu of a meeting, and waives the holding of such meeting and all notice thereof, and takes the other actions set forth below:

**RESOLVED**, that the Company extend the maturity date of all existing indebtedness (the "Loan") owed by the Company to First Southern National Bank (the "Lender") and that Cherokee Investment Partners II, L.P., in its capacity as the sole Member of the Company, be authorized to execute and deliver on behalf of the Company, all of the documents necessary to extend such maturity date, including but not limited to (i) a Third Amendment to Construction Loan Agreement between Lender and the Company; (ii) a Collateral Account Agreement by the Company in favor of the Lender; and (iii) such other loan documents, certificates, confirmations or assurances as may be required from the Company by the Lender to extend the maturity date of the Loan, to secure the loan as provided in the Collateral Account Agreement, and to take such other actions as may be deemed appropriate by Cherokee Investment Partners II, L.P., all on such terms and conditions as Cherokee Investment Partners II, L.P. shall deem appropriate.

**RESOLVED FURTHER**, that Cherokee Investment Partners II, L.P., in its capacity as the sole Member of the Company, be authorized to execute and deliver any and all documents on behalf of the Company, and to take any and all actions (including but not limited to the execution and delivery of any loan documents, etc.) deemed appropriate to effectuate the purposes of these resolutions and that all documents or agreements heretofore executed and acts or things heretofore done in connection with the loan are hereby ratified, confirmed and approved in all respects as the act or acts of the Company.

**RESOLVED FURTHER**, that the foregoing resolutions are in addition to and not in limitation of any other resolutions previously or hereafter adopted and that these resolutions will continue in full force and effect until revocation thereof by a resolution duly adopted by the members of the Company.

**[END OF TEXT—SIGNATURE PAGE FOLLOWS]**

**IN WITNESS WHEREOF**, the undersigned hereby certifies that it constitutes the sole Member of Cherokee North Kansas City, LLC, and executes this Unanimous Written Consent as of the 31st day of December, 2005.

<u>**Member:**</u>

**CHEROKEE INVESTMENT PARTNERS II, L.P., a Delaware limited partnership**

By: Cherokee Investors, LLC, a Delaware limited liability company, its general partner

By: _____
Thomas Darden, Managing Member

By: _____
John Mazzarino, Managing Member

# EXHIBIT I

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re: | ) Chapter 11 |
| DELPHI CORPORATION, INC., <u>et al.</u>, | ) Case No. 05-44481 (RDD) |
| Debtors. | ) (Jointly Administered) |

### SUPPLEMENTAL DECLARATION OF KENNETH HO

I, Kenneth Ho, hereby state and declare as follows:

1. This Supplemental Declaration is submitted in support of Cherokee North Kansas City, LLC's ("<u>Cherokee</u>") Reply (the "<u>Reply</u>") in Support of Motion for Order Under 11 U.S.C. § 365(d)(2) Directing Debtor Delphi Automotive Systems, LLC to Determine Within 150 Days Whether to Assume of Reject Its Nonresidential Real Property Lease with Cherokee North Kansas City, LLC (the "<u>Motion</u>"). I have first-hand knowledge of the matters described herein. This Supplemental Declaration is intended to supplement my Declaration submitted with the Motion in order to describe subsequent events.[1]

2. Since the Motion was filed, Cherokee and the Bank entered into a Third Amendment to Construction Loan Agreement (the "<u>Third Amendment</u>," a copy of which is attached as Exhibit H to the Reply). The Third Amendment is effective as of December 31, 2005, but was signed by Cherokee on January 30, 3006, and by the Bank on January 31, 2006.

---

[1] Capitalized terms not defined herein are as defined in my first Declaration.

1

6466\129\972512.1

I declare under penalty of perjury under the laws of the State of Colorado that the foregoing is true and correct to the best of my knowledge and belief.

Executed at Denver, Colorado, this 31st day of March, 2006.

_____
Kenneth Ho

2

6466\129\972512.1