SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
David E. Springer (DS 9331)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

  - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York, 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
 Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
                                    :
        In re                       :    Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :    Case No. 05–44481 (RDD)
                                    :
                Debtors.            :    (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DECLARATION OF JOHN D. SHEEHAN IN SUPPORT OF THE DEBTORS'
OBJECTION TO MOTION FOR ORDER DIRECTING DEBTOR DELPHI
AUTOMOTIVE SYSTEMS, LLC TO DETERMINE WITHIN 150 DAYS
WHETHER TO ASSUME OR REJECT ITS NONRESIDENTIAL REAL
PROPERTY LEASE WITH CHEROKEE NORTH KANSAS CITY, LLC

John D. Sheehan declares as follows:

1. Delphi Corporation and certain of its subsidiaries and affiliates are debtors and debtors-in-possession in these Chapter 11 cases. I submit this declaration in support of the Debtors' Objection to Motion for Order Directing Debtor Delphi Automotive Systems, LLC to Determine within 150 Days Whether to Assume or Reject its Nonresidential Real Property Lease with Cherokee North Kansas City, LLC (the "Cherokee Objection). Capitalized terms not otherwise defined in this declaration shall have the meanings ascribed to them in the Cherokee Objection.

2. I am the Vice President, Chief Restructuring Officer, Chief Accounting Officer, and Controller for Delphi Corporation (which, with certain of its subsidiaries and affiliates, the debtors, and the debtors-in-possession in the above-captioned cases, are referred to collectively and variously herein as "Delphi" or the "Debtors"). I joined Delphi in July 2002 as Chief Accounting Officer and Controller. On March 4, 2005, I also assumed the position of acting Chief Financial Officer, a position that I held until October 8, 2005, when I was appointed Chief Restructuring Officer. Consequently, I am familiar with, and personally was involved in, the events and circumstances giving rise to the Debtors' decision to seek chapter 11 protection on October 8, 2005 (the "Initial Filing Date"). Since the Initial Filing Date, I have been involved at some level in virtually all of the significant decisions made by the Debtors in connection with these chapter 11 cases.

3. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, my opinion, my experience with and knowledge of Delphi's financial condition, or are based upon knowledge obtained

2

from Delphi employees reporting to me in the course of their duties.  If I were called upon to testify, I could and would testify to the facts set forth herein.

### The Debtors Are Continuing To Pay For The Use Of The Property

4. The Debtors are current in all of their postpetition obligations under the Lease.  In addition, the Debtors have significant resources, including access to a substantial DIP credit facility, which provide adequate assurance to Cherokee that it will be paid its postpetition bills in a timely fashion.

### The Lease Is Among The Debtors Primary Assets And The Debtors Have Not Had Sufficient Time To Make Critical Decisions Regarding Its Leases

5. Most of the Debtors' leases are fundamental to their reorganization efforts.  As part of the Debtors' restructuring efforts, the Debtors are in the process of evaluating all owned and leased real estate, including the Lease of Industrial or Warehouse Facilities between the Debtors and Cherokee (the "Lease").  In considering their options with respect to the real property leases, the Debtors are evaluating a variety of factors to determine whether it is appropriate to assume, assume and assign, or reject a particular real property lease.  The realignment of Delphi's global product portfolio and manufacturing footprint to preserve Delphi's core businesses will be a major factor in the Debtors' decision as to disposition of a particular lease.

6. On March 31, 2006, the Debtors announced their transformation plan which outlines their strategy to prepare for their return to stable, profitable business operations through a broad-based global restructuring.  As part of the transformation plan, the Debtors have identified non-core product lines that do not fit into the company's future strategic framework.  The Debtors will seek to sell or wind-down these non-core product lines by January 1, 2008.  The Debtors have identified cockpits as one of the non-core product lines and one of the facilities that produces cockpits is the Cherokee facility.  Despite the fact that the Debtors intend to sell or

wind-down the cockpit product line, at this time the Debtors have not begun the sale process. In addition, before the Debtors can sell or wind-down the cockpit product line, the Debtors will need to discuss the proposed disposition with various parties-in-interest in these cases, including their customers and their unions. Accordingly, until the Debtors know with more certainty whether or how they will sell or wind-down the cockpit product line, decisions related to assumption or rejection of the Lease are premature and could force the Debtors, to assume substantial, long-term liabilities under the Lease or forfeit value on account of a marketable or otherwise necessary lease.

7.      As stated above, the Debtors manufacture cockpits for GM at the Lease facility. If the Debtors prematurely assume the Lease and later wind-down the cockpit product line, the estates may be burdened with long term liabilities unnecessary to the Debtors' reorganization or may be faced with substantial administrative expenses if the Lease is later rejected after assumption. On the other hand, the Debtors have obligations to continue to perform under the contracts related to the production of parts for GM at the Lease facility. If the Debtors are forced to prematurely reject the Lease, the Debtors may no longer be able to produce certain cockpit assemblies for GM, which could result in the shut down of GM plants, substantial damages to the Debtors, and the loss of continued business.

**The Debtors Have Not Had Sufficient Time To Formulate A Plan Of Reorganization**

8.      The Debtors are merely six months into a restructuring effort that they anticipate will take approximately 18 months to complete. At this point, however, the Debtors' energies are focused on implementing their transformation plan. On March 31, 2006, the Debtors filed their motions under sections 1113 and 1114 of the Bankruptcy Code seeking authority to reject U.S. labor agreements and to modify retiree benefits, and their initial motion to reject un-

4

profitable supply contracts with GM. The Debtors simply have not had time to make critical decisions regarding the assumption or rejection of their leases. In order to maximize value for the estates, the Debtors are not implementing the transformation plan on a factory by factory, but rather on a product line by product line basis. Forcing the Debtors to make premature decisions as to the Lease, could jeopardize the Debtors ability to implement its transformation plan and could impair the value of the product lines to be divested. The Debtors need to focus on implementing the transformation plan, not making one-off decisions about leases or factories.

**The Complexity And Size Of The Debtors' Chapter 11 Filings Warrant A Considerable Period In Which To Evaluate Assumption Or Rejection Of All Leases**

9.     The complexity of the issues that the Debtors face in transforming their businesses is magnified by the size of these cases. As stated above the Debtors will not be able to make a decision as to the Lease until they have more certainty with respect to the divestiture of the cockpit product line.

I declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing statements are true and correct.

Executed on April 5, 2006, in New York, New York.

/s/ John D. Sheehan
John D. Sheehan