**Hearing Date: April 7, 2006**
**Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
David E. Springer (DS 9331)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

   - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
:
   In re                              :    Chapter 11
:
DELPHI CORPORATION, et al.,      :    Case No. 05-44481 (RDD)
:
                      Debtors.   :    (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

REPLY TO LIMITED RESPONSE OF GENERAL
MOTORS CORPORATION TO DEBTORS' MOTION FOR APPROVAL OF JOINT
INTEREST AGREEMENT BETWEEN DEBTORS AND OFFICIAL COMMITTEE OF
UNSECURED CREDITORS, IMPLEMENTATION OF PROTECTIVE ORDER, AND
<u>APPROVAL OF PROCEDURES TO PROTECT INFORMATION IN FEE STATEMENT</u>

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this reply (the "Reply") to the Limited Response (the "Response") Of General Motors Corporation ("GM"), dated April 4, 2006, To Debtors' Motion For Approval Of Joint Interest Agreement Between Debtors And Official Committee Of Unsecured Creditors, Implementation Of Protective Order, And Approval Of Procedures To Protect Information In Fee Statement, dated March 28, 2006 (the "Motion").[1] In support of this Reply, the Debtors respectfully represent as follows:

## Preliminary Statement

1. Sharing confidential information related to certain Investigations (as defined below), whether written or oral (the "Information") with the Official Committee of Unsecured Creditors (the "Creditors' Committee") is appropriate at this point in these chapter 11 cases. This will allow the Debtors and the Creditors' Committee to address and resolve various matters relating to (a) the internal review conducted by the Company's Audit Committee, (b) the formal ongoing investigations by several governmental agencies, (c) the Company's restatement of earnings for fiscal years 2001-03, (d) the subject matter related to the commencement of certain class actions, including, without limitation, actions brought under ERISA and various securities actions, and (e) the review by a special committee of the Company's Board of Directors of certain shareholder derivative demands and related actions (collectively, the "Investigations"). Indeed, the resolution of some of the matters included in the Investigations may require this Court's approval, and the Debtors seek to address and

---

[1] Redline versions of the Joint Interest Agreement and the proposed order reflecting minor modifications resulting from the Debtors discussions with its co-fiduciary, the Creditors' Committee, are attached hereto as Exhibit A and Exhibit B respectively.

2

resolve various matters relating to the Investigations with the input of the Creditors' Committee.

2. In its Response, GM challenges the application of the common interest doctrine to Information relating to the Investigations shared by the Debtors with the Creditors' Committee. GM also requests that the Court enter an order incorporating certain qualifications that are neither necessary nor appropriate at this time, and will unduly burden the Debtors' estates. Most objectionable, GM seeks affirmative discovery into what is being shared between the Debtors and the Creditors' Committee (See Response ¶ 7) and to link the information sharing protocol to potential future litigation against GM (See Response ¶ 8).

3. As more fully discussed below, the sharing of the Information between the Debtors and the Creditors' Committee is an important step to enable the Creditors' Committee to understand the Investigations. In this situation, the application of the common interest doctrine is both appropriate and necessary to allow the Debtors and their co-fiduciary in these chapter 11 cases to discuss the Investigations on a fully informed basis. In order to emerge from chapter 11 with the support of the Creditors' Committee, as a co-fiduciary in these cases, sufficient information needs to be shared to permit the Creditors' Committee to be comfortable that: (a) the company has separated any wrongdoers from the Debtors' reorganizing businesses; (b) the company has developed a plan for the implementation of internal controls reasonably designed to prevent the recurrence of historical accounting practices; and (c) the company has provided adequate information to the Creditors' Committee regarding derivative and third-party claims so as to permit the Creditors' Committee to make an informed assessment of the merits of such potential claims in connection with the negotiations

3

of a plan of reorganization.  GM's concerns are misplaced and should not impede the Debtors' sharing of the Information with the Creditors' Committee.

Argument

A.      The Debtors And The Creditors' Committee Share A Common Legal Interest

      4.      While GM seems to challenge the applicability of the common interest doctrine to the facts at hand, the Debtors believe that the instant case fits well within the opinions issued by courts in this circuit.  Specifically, the Debtors' and the Creditors' Committee's common interest is the resolution of the Investigations in a way that maximizes the results for the Debtors, their estates, and their stakeholders.  The common interest of the Debtors and the Creditors' Committee is a legal interest, and not a commercial matter or business strategy.  It is exactly these situations in which the common interest privilege should apply.  See Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 447 (S.D.N.Y. 1995) ("[T]he doctrine applies where parties are represented by separate counsel but engage in a common legal enterprise.  Under such circumstances, it is not necessary for litigation to be in progress for the common interest doctrine to apply."); Denney v. Jenkens & Gilchrist, 362 F.Supp. 2d 407, 415 (S.D.N.Y. 2004) (same); In re Asia Global Crossing, Ltd., 322 B.R. 247 (Bankr. S.D.N.Y. 2005) ("Under the Second Circuit's approach, 'some form of joint strategy is necessary to establish the existence of a joint defense agreement, which would then operate to protect evidence under the common interest rule.'").

      5.      Moreover, the Debtors and the Creditors' Committee are working together to pursue their joint interest, but are currently limited in their ability to do so because of the confidential and privileged nature of much of the information possessed by the Debtors.  See Federal Trade Commission, 2001 WL 396522 (S.D.N.Y) at *3 ("What is important is not

whether the parties theoretically share similar interests but rather whether they demonstrate actual cooperation toward a common legal goal."). The Joint Interest Agreement is a manifestation of the desire of the Debtors and the Creditors' Committee to reach their common goal of resolving the Investigations. See In re Rivastigmine Patent Litigation, 2005 WL 2319005 (S.D.N.Y) at *4 (noting that cooperation "may be definitively shown through a formal collaboration agreement, no such written documentation is required"). Because the Debtors' ability to resolve the Investigations will be enhanced with the informed input of the Creditors' Committee, it is in the best interests of the both the Debtors' estates and their stakeholders that the Information be shared with the Creditors' Committee under the terms of the Joint Interest Agreement. Expedient resolution of the Investigations will maximize value for all stakeholders.

B.     The Order And The Joint Interest Agreement Are Narrowly Tailored

6.     GM requests that the scope of the purported common interest privilege regarding the Investigation be narrowly construed and strictly limited to privileged documents relating directly to the Investigations. GM's parochial interpretation of the Joint Interest Agreement seems to be causing its own unnecessary concern. (See Response ¶ 8).

7.     As stated in the Motion and restated here, the purpose of the Joint Interest Agreement between the Debtors and the Creditors' Committee is to allow the Debtors to provide their co-fiduciary with Information, including certain information that is privileged and confidential, related to the Investigations. This stated intention – which is also reflected in the Joint Interest Agreement and the proposed order – is narrow in scope and covers only information related to the Investigations. Providing this Information to the Creditors' Committee is necessary for the Debtors and their co-fiduciary to properly analyze issues in

5

respect thereof.  Accordingly, the Debtors, in their business judgment, believe that it is in the best interests of their estates to provide such Information to the Creditors' Committee.  This information sharing protocol will keep the Creditors' Committee apprised of the progress of the Investigations, and will allow the Debtors and the Creditors' Committee to form a common understanding and legal assessment relating to the issues encompassed by the Investigations that will facilitate a timely resolution of such matters.  To that end, the Debtors affirm that the relief requested in the proposed order covers only the Investigations.  See United States v. Weissman, 195 F.3d 96, 99 (2d Cir. 1999)  ("[O]nly those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected" by the common interest doctrine); United States v. Schwimmer, 892 F.2d 237, 243 (2d Cir. 1989) (same).

    8. Similarly, GM also requests that the common interest privilege be narrowly construed.  While the Second Circuit has warned that expansions of the attorney-client privilege under the common interest rule should be cautiously extended, see Federal Trade Com., 2001 WL 396522, at * 4, the Debtors and Creditors' Committee should not limit themselves to the protections available under applicable law.  The scope of the common interest privilege asserted by the Debtors and the Creditors' Committee should be construed to the fullest extent such protection is available under applicable case law, subject to the provisions of the Joint Interest Agreement.

C. GM's Additional Qualifications Are Unnecessary And Unduly Burdensome

    9. The Debtors intend to share with the Creditors' Committee privileged and confidential information relating only to the Investigations.  Consequently, the additional provisions and qualifications requested by GM are unnecessary in light of the Debtors'

affirmation that the proposed order and underlying agreement cover Information related only to the Investigations.  As discussed above, the Debtors and the Creditors' Committee share a common interest with respect the Investigations.  Moreover, the Debtors reserve their rights, pursuant to a subsequent motion or otherwise, to assert that the common interest privilege should apply to additional matters outside the scope of the Investigations, the Joint Interest Agreement and the proposed order related thereto.

10. Most objectionable of GM's requests is that GM seeks affirmative discovery into what is being shared between the Debtors and the Creditors' Committee (see Response ¶7) and to link the information sharing protocol to potential future litigation against GM (see Response ¶8).[2]  The request by GM that the Debtors establish and maintain a privilege log is unduly burdensome, and would impose an unnecessary cost on the Debtors.  For example, establishing a privilege log in connection with the internal investigation conducted by the Audit Committee would involve the review and documentation of hundreds of thousands of pages.  The costs that would be incurred by the Debtors to satisfy this request would substantially outweigh any benefit – a benefit which is wholly unclear.  Indeed, the Debtors and the Creditors' Committee regularly exchange information through various protocol and channels and the Debtors should not be burdened and the flow of information should not be impeded in order to satisfy GM's request.  This information sharing protocol should not be a means for GM to get discovery on possible further litigation against it.  Allowing this result would entirely shift the purpose of the Joint Interest Agreement.

---

[2]   GM's reasons for establishing a privilege log are not entirely clear.  To the extent GM intends to use the proposed privilege log to learn about information and documents related to the Investigations for its benefit in connection with its own ongoing investigations, such a tactic should not be countenanced by this Court.

7

11. Finally, the Debtors are not requesting that any privilege be expanded by either the proposed order or the Joint Interest Agreement. The common interest privilege is simply an exception to the general rule that the privilege is waived when confidential information is communicated to a third party. The Joint Interest Agreement and the proposed order simply protect the attorney-client privilege that exists.

<u>Notice</u>

12. Notice of this Reply has been provided in accordance with the Second Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered by this Court on March 28, 2006. In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) authorizing the Motion and (b) granting the Debtors such other and further relief as is just.

Dated:     New York, New York
           April 6, 2006

                                        SKADDEN, ARPS, SLATE, MEAGHER
                                         & FLOM LLP

                                        By:   /s/ John Wm. Butler, Jr.
                                              John Wm. Butler, Jr. (JB 4711)
                                              David E. Springer (DS 9331)
                                              John K. Lyons (JL 4951)
                                              Ron E. Meisler (RM 3026)
                                        333 West Wacker Drive, Suite 2100
                                        Chicago, Illinois 60606
                                        (312) 407-0700

                                                    - and -

                                        By:   /s/ Kayalyn A. Marafioti
                                              Kayalyn A. Marafioti (KM 9632)
                                              Thomas J. Matz (TM 5986)
                                        Four Times Square
                                        New York, New York 10036
                                        (212) 735-3000

                                        Attorneys for Delphi Corporation, et al.,
                                          Debtors and Debtors-in-Possession