JOINT INTEREST AGREEMENT

WHEREAS, on October 8, 2005 (the "Initial Filing Date"), Delphi Corporation ("Delphi") and certain of its U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") also sought reorganization relief. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

WHEREAS, on October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee").

WHEREAS, prior to the Initial Filing Date, certain events occurred which prompted informal and formal investigations by Delphi and its subsidiaries and affiliates (collectively, the "Company") and third parties. The investigations include, but are not limited to (a) the internal review conducted by the Company's Audit Committee, (b) the formal ongoing investigations by several governmental agencies, (c) the Company's restatement of earnings for fiscal years 2001-03, (d) the subject matter related to the commencement of certain class actions, including, without limitation, actions brought under ERISA (as defined below) and various securities actions, and (e) the review by a special committee of the Company's Board of

Directors of certain shareholder derivative demands and related actions (collectively, the "Investigations").

WHEREAS, the Company is the subject of an ongoing investigation by the Securities and Exchange Commission ("SEC") and other federal authorities involving its accounting for and the adequacy of disclosures for a number of transactions dating from the Company's spin-off from GM.  Delphi is fully cooperating with the SEC's ongoing investigation and requests for information as well as the related investigation being conducted by the Department of Justice. The Company has entered into an agreement with the SEC that currently suspends the running of the applicable statute of limitations until April 6, 2006, which is likely to be further extended.  The SEC investigation and the related investigation by the Department of Justice were not stayed as a result of the Debtors' commencement of their chapter 11 cases.

WHEREAS, Delphi completed a financial restatement in June 2005, the effects of which reduced retained earnings as of December 31, 2001 by $265 million, reduced 2002 net income by $24 million, and reduced 2003 net loss by $46 million. The nature of the restatement adjustments have been described on Form 8-K filings with the SEC.  In conjunction with the restatement, the audit committee of the Company's Board of Directors conducted and concluded an internal investigation of certain accounting transactions over the previous five years.  The Company is continuing to cooperate fully with the government's investigations in these matters.

2     DeltaView comparison of pcdocs://chisr02a/562598/12 and pcdocs://chisr02a/562598/13. Performed on 4/6/2006.

WHEREAS, several class action lawsuits have been commenced against Delphi, Delphi Trust I, Delphi Trust II, current and former directors, certain current and former officers, General Motors Investment Management Corporation (the named fiduciary for investment purposes and investment manager for Delphi's employee benefit plans), and certain current and former employees of Delphi or its subsidiaries, as a result of the Company's announced financial restatement. These lawsuits fall into three categories: (a) lawsuits brought under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), purportedly on behalf of participants in certain of the Company's and its subsidiaries' defined contribution employee benefit pension plans which invested in Delphi common stock (the "ERISA Actions"), (b) lawsuits alleging that the Company and certain of its current and former directors and officers made materially false and misleading statements in violation of federal securities laws (the "Securities Actions"), and (c) shareholder derivative actions (the "Shareholder Derivative Actions"). The Board of Directors of the Company has appointed a special committee to investigate certain shareholder derivative demands. On or about December 12, 2005, the Judicial Panel on Multidistrict Litigation transferred, and consolidated into one action, the ERISA Actions, the Securities Actions, and the federal Shareholder Derivative Actions. The litigation was transferred to Judge Gerald R. Rosen in the United States District Court for the Eastern District of Michigan and consolidated under the title <u>In re Delphi Securities, Derivative and ERISA Litigation</u> (MDL No. 1725).

3    DeltaView comparison of pcdocs://chisr02a/562598/12 and pcdocs://chisr02a/562598/13. Performed on 4/6/2006.

WHEREAS, the Debtors and the Creditors' Committee have determined that it is in the best interests of the Debtors' estates that they share material confidential information with each other and consult with each other regarding the Investigations. The Debtors and the Creditors' Committee further believe that it is in the best interests of the Debtors' estates for the Debtors to provide such confidential, non-public information and documents related to the Investigations, whether written or oral, including by virtue of participation by any Reviewing Party (as defined below) in the Investigations ("Information") to the designees of the Creditors' Committee (which designees shall be the outside professionals of the Creditors' Committee and, at the election of the Creditors' Committee, either the chair of the Creditors' Committee or a subcommittee of the Creditors' Committee in a number reasonably acceptable to the Debtors), to keep them adequately apprized of the ongoing progress of the Investigations, without losing any privilege or protection attaching to any produced information through the disclosure thereof.

WHEREAS, the Debtors and the Creditors' Committee believe that they share common interests in this regard, and intend through this Agreement that any and all sharing of information pursuant to this Agreement be protected pursuant to the "common interest" or "joint defense" doctrine, to the fullest extent such protection is available under applicable case law subject to the provisions of this Agreement.

---

4    DeltaView comparison of pcdocs://chisr02a/562598/12 and pcdocs://chisr02a/562598/13. Performed on 4/6/2006.

WHEREAS, the Debtors and the Creditors' Committees wish to memorialize, and to set forth the terms and conditions of, their understanding with respect to the foregoing.

NOW, THEREFORE, IT IS HEREBY AGREED, by and between the Debtors and the Creditors' Committee, that:

1.   The Debtors may voluntarily share Information related to the Investigations with the members and professionals of the Creditors' Committee identified on Appendix A to this Agreement (collectively, the "Reviewing Parties"). The Reviewing Parties shall treat all Information obtained from the Debtors in accordance with this Agreement.  No other additional persons, firms, or entities shall be added to the Reviewing Parties list, unless prior email notice is provided to counsel for the Debtors and the Debtors consent in writing to such additions.  The Reviewing Parties may share and discuss Information with each other.  The designated professional firms identified on Appendix A may disclose Information as necessary in the ordinary course of their work to legal assistants, secretaries, or other non-professional staff, but shall disclose information only to individuals who have a need to know the Information for purposes of participating in the Investigations.

2.   The Debtors may voluntarily make available for inspection and copying by the Reviewing Parties certain Information, including deposition transcripts, internal memoranda, and other documents and information.  Upon the Debtors' request (the consent to which a Reviewing Party shall not unreasonably withhold), at the close

5    DeltaView comparison of pcdocs://chisr02a/562598/12 and pcdocs://chisr02a/562598/13. Performed on 4/6/2006.

of the chapter 11 cases or such other time as may be reasonable the Reviewing Parties shall return all originals and return copies of any and all Information produced pursuant to this Agreement, and shall certify their compliance with this paragraph to the Debtors in writing, provided that the professionals retained by the Creditors' Committee may retain (but must use for no other purpose other than as set forth in paragraph 3) their own work product.

      3.      All Information received by the Reviewing Parties in connection with the Investigations shall be held in strict confidence and used solely for purposes of the Investigations and any litigation subsequently authorized by the Bankruptcy Court. The Reviewing Parties shall not disclose Information received in connection with the Investigations except to one another.

      4.      In the event that a Reviewing Party is legally required by the Bankruptcy Court, any other court of competent jurisdiction or by a federal, state or local governmental or regulatory body, to disclose any of the Information, such Reviewing Party shall, to the extent lawful, provide the Debtors with prompt written notice of any such requirement to the Debtors no less than ten business days prior to such required disclosure <ins>(provided that if a Reviewing Party is required to make a disclosure in less than 10 business days, such Reviewing Party shall provide notice to the Debtors as soon as reasonably practicable, but not later than one calendar day after the Reviewing Party is informed of the need to make such required disclosure)</ins> so that the Debtors may seek a protective order or other appropriate remedy and/or waive

6      DeltaView comparison of pcdocs://chisr02a/562598/12 and pcdocs://chisr02a/562598/13. Performed on 4/6/2006.

compliance with this Agreement. The Reviewing Party shall provide service of such notice by facsimile and Federal Express to: (a) Delphi Corporation, Att'n: David Sherbin, 5725 Delphi Drive, Troy, MI 48098 (facsimile (248) 813-2491); (b) Delphi Corporation, Att'n: Joseph Papelian, 5725 Delphi Drive, Troy, MI 48098 (facsimile (248) 813-3251); and (c) Skadden, Arps, Slate, Meagher & Flom LLP, Att'n: John Wm. Butler, Jr., 333 W. Wacker Drive, Chicago, IL 60606 (facsimile (312) 407-0411). If, in the absence of a protective order or other remedy or the receipt of a waiver from the Debtors, such Reviewing Party is nonetheless required to disclose any of the Information, such Reviewing Party may, without liability hereunder, disclose only that portion of the Information which such Reviewing Party is advised by counsel it is legally required to disclose, provided that such Reviewing Party shall use its reasonable best efforts to preserve the privileges and confidentiality of the Information by reasonably cooperating with the Debtors to obtain an appropriate protective order or other reliable assurance that the privileges and other confidential treatment will be accorded the Information.

5. The parties agree that all Information provided to the Reviewing Parties prior to the execution of this Agreement was provided in furtherance of the parties' common interests and the prior provision of Information by the Debtors, and its receipt by the Reviewing Parties, is subject to this Agreement.

6. The Reviewing Parties will not assert that the Debtors' production of Information pursuant to this Agreement constitutes a waiver of the attorney-client

7    DeltaView comparison of pcdocs://chisr02a/562598/12 and pcdocs://chisr02a/562598/13. Performed on 4/6/2006.

privilege, the attorney work product doctrine, or any other applicable privilege or protection.

7. The Creditors' Committee may exercise its own independent judgment in determining whether to participate in particular meetings and interviews being conducted by the Debtors in furtherance of the Investigations, through its own representatives.

8. No discovery in respect of matters that are the subject of the Investigations will be permitted unless (a) the Bankruptcy Court has issued an appropriate order, after the Debtors and Creditors' Committee have met and conferred on the subject matter of the discovery and a telephonic status conference has been held before the Bankruptcy Court pursuant to section 105(d) of the Bankruptcy Code, (b) the Debtors and the Creditors' Committee have otherwise agreed, or (c) in connection with <u>an adversary proceeding initiated by the Debtors or</u> a contested hearing adjudicating a motion initiated by the Debtors, such discovery is permissible under the Federal Rules of Civil Procedure or the Federal Rules of Bankruptcy Procedure (provided that all rights and defenses with respect thereto are reserved).

9. It is the express intent of the parties to this Agreement, and of the Bankruptcy Court, if it approves the Agreement, that the Agreement and the production of Information pursuant thereto will not confer upon any third party the right to obtain such Information, nor shall it limit the right of any party, including any Reviewing Party, to Information that is otherwise discoverable to the extent so ordered

8      DeltaView comparison of pcdocs://chisr02a/562598/12 and pcdocs://chisr02a/562598/13. Performed on 4/6/2006.

by the Bankruptcy Court or another court of competent jurisdiction in litigation authorized by the Bankruptcy Court.

10. Nothing herein shall, or is intended in any way to limit, modify or otherwise diminish the Debtors' or the Creditors' Committee's rights and powers under applicable law, including under the Bankruptcy Code and Bankruptcy Rules, or the rights of the Creditors' Committee to seek Information from the Debtors that the Debtors do not voluntarily produce (provided that all defenses that Debtors may have to any such involuntary production are preserved).

11. Nothing herein shall be or is intended to constitute an admission by any person or entity of any wrongdoing or liability or of the existence of any claims or causes of action in connection with the subject matter of the Investigations or otherwise.

12. This Agreement shall be binding upon the parties' respective successors and assigns.

13. This Agreement shall be submitted for approval by the Bankruptcy Court, but if not approved, shall remain in full force and effect as an agreement among the parties.

14. This Agreement may be executed in several counterparts, all of which constitute the same agreement.

15. Nothing herein shall affect the separate and independent representation of the parties by their respective counsel nor shall anything herein be deemed to create

9        DeltaView comparison of pcdocs://chisr02a/562598/12 and pcdocs://chisr02a/562598/13. Performed on 4/6/2006.

an attorney-client relationship between any attorney and anyone other than the client who hired that attorney.  The sharing of Information pursuant to this Agreement shall not be a basis for disqualification of any Reviewing Party's counsel.

10   DeltaView comparison of pcdocs://chisr02a/562598/12 and pcdocs://chisr02a/562598/13. Performed on 4/6/2006.

16. This Agreement constitutes the full agreement among the parties regarding the production and sharing of Information. Modifications of this Agreement must be in writing and signed by counsel to all parties hereto.

Dated: _____, 2006

| | |
|---|---|
| SKADDEN, ARPS, SLATE,<br>   MEAGHER & FLOM LLP | LATHAM & WATKINS LLP |
| By: _____<br>   John Wm. Butler, Jr. (JB 4711)<br>   David E. Springer (DS 9331)<br>   John K. Lyons (JL 4951)<br>   Ron E. Meisler (RM 3026)<br>333 West Wacker Drive, Suite 2100<br>Chicago, Illinois 60606<br>(312) 407-0700 | By: _____<br>   Robert J. Rosenberg (RR-9585)<br>   Mitchell A. Seider<br>   Mark A. Broude (MB-1902)<br><br>885 Third Avenue<br>New York, New York 10022-4802<br>(212) 906-1200 |
|      - and - | Attorneys for The Official Committee of Unsecured Creditors |
| By: _____<br>   Kayalyn Marafioti (KM 9632)<br>   Thomas J. Matz (TM 5986)<br>Four Times Square<br>New York, New York 10036<br>(212) 735-3000 | |
| Attorneys for Delphi Corporation, et al.,<br>  Debtors and Debtors-in-Possession | |

# APPENDIX A

## LIST OF REVIEWING PARTIES FOR
## THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS

### DESIGNATED COMMITTEE MEMBERS
[list individuals and firm affiliations]

To be determined

### DESIGNATED PROFESSIONALS
[list firms]

Latham & Watkins LLP
Mesirow Financial Consulting LLC
Jefferies & Company, Inc.

13  DeltaView comparison of pcdocs://chisr02a/562598/12 and pcdocs://chisr02a/562598/13. Performed on 4/6/2006.