UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                      :

    In re                                                 :         Chapter 11
                                                    :
DELPHI CORPORATION, et al.,           :         Case No. 05-44481 (RDD)
                                                    :
                          Debtors.            :         (Jointly Administered)
                                                     :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

ORDER UNDER 11 U.S.C. § 363(b) AND FED. R. BANKR. P. 6004
<u>APPROVING DEBTORS' HUMAN CAPITAL HOURLY ATTRITION PROGRAMS</u>

("HUMAN CAPITAL HOURLY ATTRITION PROGRAMS ORDER")

        Upon the motion, dated March 22, 2006 (the "Motion"), of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. § 363(b) and Rules 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (a) approving and authorizing the Debtors to enter into agreements providing for the human capital hourly attrition programs (collectively, the "Hourly Attrition Programs") covering the majority of the Debtors' hourly union-represented employees, (b) authorizing the Debtors to implement the Hourly Attrition Programs, (c) authorizing and approving the UAW Special Attrition Program Agreement (as defined in ordering paragraph 2 below), and (d) approving the provisions set forth in paragraphs 3.b.iv.3, 7.b, 7.c and 7.d of the UAW Special Attrition Program Agreement (provided, however that such express approval thereof shall not be deemed to limit in any way this Court's approval of any other provisions of the UAW Special Attrition Program Agreement); and this Court having determined that the relief requested in the Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it appearing that proper and

adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED and the Hourly Attrition Programs are hereby APPROVED.

2.      The Debtors are hereby authorized to enter into the agreement by and among Delphi Corporation, General Motors Corporation ("GM"), and the United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW") attached hereto as <u>Exhibit 1</u> (the "UAW Special Attrition Program Agreement") and to implement the terms of such UAW Special Attrition Program Agreement.

3.      The Debtors are hereby authorized, but not directed, to enter into agreements providing for reasonably comparable (as to the Debtors' obligations) Hourly Attrition Programs for the Debtors' non-UAW, union-represented employees (the "Hourly Attrition Program Agreements") and to implement such Hourly Attrition Programs provided for by the terms of the Hourly Attrition Program Agreements, which shall be on terms reasonably similar to the UAW Special Attrition Program Agreement; provided, however, that the Debtors shall not be authorized to implement any such Hourly Attrition Program Agreement without the prior review and opportunity to object to the Debtors' entry into such Hourly Attrition Program Agreement by the Creditors' Committee or order of this Court.  Upon the Debtors' election to enter into an Hourly Attrition Program Agreement pursuant to the immediately-preceding sentence, the Debtors shall provide written notice, which may be by facsimile or electronic mail, of the proposed Hourly Attrition Program Agreement to counsel for the Creditors' Committee.  The Creditors' Committee shall have three business days from the date of receipt of the notice of the proposed Hourly

2

Attrition Program Agreement in which to object.  If counsel to the Debtors receives no written objection prior to the expiration of such three business day period, the Debtors shall be authorized to enter into the proposed Hourly Attrition Program Agreement.  If the Creditors' Committee objects to the Debtors' entry into the Hourly Attrition Program Agreement within the three business day period, the Debtors and the Creditors' Committee shall use good faith efforts to consensually resolve the objection.  If the Debtors and the Creditors' Committee are unable to achieve a consensual resolution, the Debtors shall not take any further steps to implement the Hourly Attrition Program Agreement without first obtaining Court approval of entry into the Hourly Attrition Program Agreement upon not less than five business days notice prior to an expedited hearing as scheduled by the Court.

    4. Except for bilateral agreements of a union and GM to which the Debtors are not a party, each of the signatories to the agreements memorializing the Hourly Attrition Programs, including, without limitation, the UAW Special Attrition Program Agreement (each such party, a "Signatory," and collectively, the "Signatories") is directed to take all actions necessary or appropriate to effectuate the terms of this Order and the terms of its respective Hourly Attrition Program (including, without limitation, the UAW Special Attrition Program Agreement), including, without limitation, any and all actions necessary or appropriate to its implementation of and performance under such program.

    5. With respect to payment by the Debtors of gross monthly wages to those employees that participate in the voluntary pre-retirement program as provided by paragraph 3.b of the UAW Special Attrition Program Agreement, Delphi shall establish a segregated bank account (the "Segregated Account") that shall be funded in the amount of $75 million.  The funds in the Segregated Account shall be available to satisfy the obligations of paragraph 3.b of the

3

UAW Special Attrition Program Agreement and for no other purpose.  Under no circumstances (including but not limited to conversion of Delphi's Chapter 11 cases to Chapter 7 proceedings) shall the assets in the Segregated Account be available to satisfy the claims of any party other than the employees except as otherwise specifically provided in the UAW Special Attrition Program Agreement.

      6.      The Debtors are authorized, but not directed, to establish a similar account with substantially similar rights and protections for each Hourly Attrition Program entered into with the Debtors' non-UAW, union-represented employees.

      7.      The UAW Special Attrition Program Agreement (and the other Hourly Attrition Programs Agreements, to the extent so provided therein) shall not be subject to abrogation, modification or rejection without the mutual consent of the applicable Signatories thereto (with the exception of Delphi's consent solely in connection with the bilateral agreements of the UAW (or such other union, as applicable) and GM (such as paragraphs 1 and 5a.-d, f, and g obligations) that do not affect the Debtors).  The UAW Special Attrition Program Agreement, the other Hourly Attrition Programs Agreements and this Court's approval of such agreements are each without prejudice to any interested party (including the Signatories and the Official Committee of Unsecured Creditors) in all other aspects of the Debtors' chapter 11 cases, including by illustration, the Debtors' and GM's respective positions in all commercial discussions and claims matters between them, all collective bargaining matters involving the parties, in any potential proceedings under Sections 1113 and/or 1114 of the Bankruptcy Code with respect to the UAW (or such other union, as applicable), under Section 365 of the Bankruptcy Code with respect to GM's contracts with the Debtors, in any pension termination proceeding under the Employee

4

Retirement Income Security Act of 1974, as amended ("ERISA") and/or the Bankruptcy Code, and all claims administration and allowance matters.

        8.      Nothing in the UAW Special Attrition Program Agreement, the other Hourly Attrition Program Agreements, or this Court's approval of such agreements shall limit or otherwise modify (a) the Debtors' rights under Section 4041 of ERISA, or (b) the Debtors' rights under Section(s) 1113 and/or 1114 of the Bankruptcy Code with regard to any obligations which pre-existed the UAW Special Attrition Program Agreement or the other Hourly Attrition Programs Agreements (including pre-existing obligations referenced within such agreements), such as (by way of illustration only) the obligation to maintain the hourly pension plan or provide retirees or active employees (including employees/retirees participating in the attrition programs contained in the UAW Special Attrition Program Agreement or the other Hourly Attrition Program Agreements, as applicable) with levels of healthcare or other benefits as specified in pre-existing labor agreements.  Under no circumstances shall the Debtors freeze any pension plan covering UAW-represented employees in a manner that prevents such employees in the pre-retirement program described in paragraph 3.b. of the UAW Special Attrition Program Agreement from receiving on-going credited service sufficient to reach 30 years of credited service.  The Debtors shall provide the same healthcare and life insurance coverage to employees participating in paragraph 3.b. of the UAW Special Attrition Program Agreement that it provides to its other active UAW employees; <u>provided</u>, <u>however</u>, that if the Debtors reduce or eliminate such coverage provided to their active UAW employees, GM shall subsidize such coverage provided to employees participating in such paragraph 3.b up to the level provided to GM-UAW active employees.

9. Any obligations assumed by GM under the UAW Special Attrition Program Agreement with respect to OPEB under paragraph 4. thereof or active health care and life insurance under Paragraph 7.d. thereof shall be conclusively deemed to be comprehended by, included within, and shall constitute a prepetition, general unsecured claim assertable by GM against the estate of Delphi Corporation under the U.S. Employee Matters Agreement (including without limitation, related flowback agreements and the UAW-GM-Delphi Memorandum of Understanding – Benefit Plan Treatment and the UAW-GM-Delphi Flowback Agreements contained in the 1999 and 2003 GM-UAW and Delphi-UAW Contract Settlement Agreements), Delphi's Agreement dated December 22, 1999 to indemnify GM for its liability under the Benefit Guarantee as if all conditions for the triggering of GM's claim shall have occurred, and Delphi's general indemnity of GM under the Master Separation Agreement. GM has agreed to assume and pay OPEB payments to Delphi employees who "check the box" and/or flow back to GM for purposes of retirement, and to pay the amounts due under paragraph 3.a.i. of the UAW Special Attrition Program Agreement. The presumed triggering of GM's claim against Delphi Corporation described above is only for purposes of the UAW Special Attrition Program Agreement and does not trigger any contractual claims against either Delphi or GM beyond their respective obligations under the UAW Special Attrition Program Agreement.

10. Nothing contained in the UAW Special Attrition Program Agreement, any other Hourly Attrition Program Agreements or this Court's approval of such agreements shall constitute an assumption of any agreement described therein, including, without limitation (a) any collective bargaining agreement between the UAW (or any other union, as applicable) and the Debtors, or (b) any commercial agreement between GM and the Debtors, nor shall anything in the UAW Special Attrition Program Agreement, in any other Hourly Attrition Program Agreement, or

6

in this Court's approval of such agreements be deemed to create an administrative or priority claim with respect to GM or convert a prepetition claim into a postpetition claim or an administrative expense with respect to any party.

11.    For the avoidance of doubt, nothing in the Motion, the UAW Special Attrition Program Agreement or any other document shall prejudice the right of any interested party (including the Debtors and the Creditors' Committee) to challenge the allowability, amount or priority of any claims asserted by GM, except that GM's claims, if any, with respect to OPEB under paragraph 4. of the UAW Special Attrition Program Agreement or active health care and life insurance under Paragraph 7.d. of the UAW Special Attrition Program Agreement shall not be subject to objection on the basis that the claims were not assertable under U.S. Employee Matters Agreement (including without limitation, related flowback agreements and the UAW-GM-Delphi Memorandum of Understanding – Benefit Plan Treatment and the UAW-GM-Delphi Flowback Agreements contained in the 1999 and 2003 GM-UAW and Delphi-UAW Contract Settlement Agreements), Delphi's Agreement dated December 22, 1999 to indemnify GM for its liability under the Benefit Guarantee as if all conditions for the triggering of GM's claim shall have occurred, and Delphi's general indemnity of GM under the Master Separation Agreement.

12.    ~~11.~~ Notwithstanding any provision in the Bankruptcy Code or Bankruptcy Rules to the contrary, the Debtors are not subject to any stay in the implementation, enforcement, or realization of the relief granted in this Order, and the Debtors may, in their discretion and without further delay, take any action and perform any act authorized under this Order.

13.    ~~12.~~ This Court shall retain jurisdiction to hear and determine all matters, arising from the implementation and performance of this Order and the Hourly Attrition Programs and over each of the Signatories in connection therewith; provided, however, that the Court's

jurisdiction shall not extend to bilateral agreements of the UAW (or such other union, as applicable) and GM (such as paragraphs 1 and 5a.-d, f, and g obligations of the UAW Special Attrition Program Agreement).

      14.    ~~13.~~ The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
       April ___, 2006

                                            _____
                                            UNITED STATES BANKRUPTCY JUDGE

8