CLARK HILL PLC  
500 Woodward Avenue, Suite 3500  
Detroit, Michigan 48226-3435  
Joel D. Applebaum (Mich. Bar. No. P36774)  
admitted *pro hac vice*  
Seth A. Drucker (Mich. Bar. No. P65641)  
admitted *pro hac vice*  
sdrucker@clarkhill.com  
(313) 965-8300  

Hearing Date: May 10, 2006  
Hearing Time: 10:00 a.m.  
Objection Deadline: May 3, 2006  

**UNITED STATES BANKRUPTCY COURT**  
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | Case No. 05-44481 (RDD) |
| DELPHI CORPORATION, *et al.*, | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | |
| | ) | |

**MOTION OF BORGWARNER TURBO SYSTEMS INC.**  
**FOR RELIEF FROM AUTOMATIC STAY TO LIQUIDATE**  
**SETOFF AND RECOUPMENT CLAIMS AGAINST THE DEBTORS**

By this motion, BorgWarner Turbo Systems Inc. ("BorgWarner") seeks an order, pursuant to 11 U.S.C. §§ 362 and 553, and Rules 4001, 9013, and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and L.B.R. 4001-1, 9013-1, and 9014-1 (S.D.N.Y.) granting BorgWarner relief from the automatic stay to permit BorgWarner to liquidate its prepetition warranty claim (the "Warranty Claim") against Delphi Corporation in the proper non-bankruptcy forum in order to facilitate the eventual setoff and/or recoupment of the Warranty Claim and, pending the liquidation of its Warranty Claim, to permit BorgWarner to continue to freeze payment of any amounts it may owe the Debtors so as to adequately protect and preserve BorgWarner's setoff rights. In support thereof BorgWarner states as follows:

**Jurisdiction**

1.   This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Venue in this district is proper under 28 U.S.C. § 1409.

3.      The statutory bases for the relief requested herein are 11 U.S.C. §§ 362 and 553, Bankruptcy Rules 4001, 9013, and 9014, and L.B.R. 4001-1, 9013-1, and 9014-1 (S.D.N.Y).

## Background

4.      On October 8, 2005 (the "Petition Date"), the above captioned debtors and debtors-in-possession (hereafter, the "Debtors"), filed voluntary petitions for relief in this Court under chapter 11 of title 11 of the United States Code, as amended (the "Bankruptcy Code").

5.      The Debtors continue to operate their businesses as debtors-in-possession under 11 U.S.C. §§ 1107 and 1108.

6.      On October 17, 2005, the Office of the United States Trustee appointed an Official Committee of Unsecured Creditors.

7.      On October 28, 2005, the Court entered a *Final Order under 11 U.S.C. §§ 105, 361, 362, 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), and 364(e) and Fed. R. Bankr. P. 2002, 4001 and 9014 (I) Authorizing Debtors to Obtains Postpetition Financing, (II) To Utilize Cash Collateral and (III) granting Adequate Protection to Prepetition Secured Parties* (the "DIP Order").

## The Parties and Their Businesses

8.      The Debtors manufacture a wide variety of consumer and industrial products. Upon information and belief, the Debtors manufacture and supply parts and components to almost every original equipment manufacture ("OEM") of both automobiles and commercial vehicles in the world.

9.      The Debtors also sell parts and components to other auto suppliers, including BorgWarner.

10.     BorgWarner designs, manufactures, and distributes a wide variety of parts and components to automotive and commercial vehicle OEMs. As its name would imply, BorgWarner Turbo Systems Inc. is a leading manufacturer of turbo chargers for both diesel and gasoline internal combustion engines.

11.     Under one or more prepetition purchase orders (the "Purchase Order"), BorgWarner purchased components (the "Components") from the Debtors which it incorporated into certain of its turbo chargers and actuator kits (together, the "Turbo" or "Turbos") for sale to its customers.

12.     The Purchase Order selects Michigan Law as the governing law and the courts of the State of Michigan as the proper forum to litigate any dispute between the parties.

13.     Postpetition, BorgWarner continues to purchase Components from the Debtors pursuant to the Purchase Order and incorporates those Components into its Turbos.

14.     Pre and postpetition, BorgWarner incurred significant costs and damages resulting from the Turbo failures. After a thorough investigation and engineering analysis, BorgWarner has determined that the root cause of the Turbo failures stems from a defect in the Component supplied to it by the Debtors. Such Component defects are covered under warranty by the Debtors under the terms of both the Purchase Agreements and the law of the State of Michigan.

15.     BorgWarner continues to incur warranty costs as a result of additional Turbo failures every day.

**BorgWarner Has Negotiated in Good Faith to Resolve The Warranty Claim**

16.     Before and since the Petition Date, the parties have been engaged in lengthy and detailed negotiations in an effort to amicably liquidate and consensually resolve the Warranty Claim and BorgWarner's setoff and/or recoupment rights in connection therewith.

17.     In order to protect its right to setoff the Warranty Claim against its accounts payable to the Debtors, BorgWarner informed the Debtors that it would administratively freeze its pre and postpetition accounts payable to Delphi to, and only to, the extent necessary to protect its setoff and recoupment rights.  BorgWarner has not taken any steps to effect a setoff, and as discussed below, BorgWarner has continued negotiating in good faith with the Debtors to liquidate the Warranty Claim.

18.     Within days of the entry of the DIP Order Date BorgWarner offered to participate in the informal procedures outlined in Paragraph 18(a)(2) of the DIP Order available to the Debtors and setoff claimants to reconcile setoff claims, in place of a request for relief from the automatic stay (the "Informal Procedures") - *so long as the Debtors agreed to waive the requirement that BorgWarner participate in binding arbitration*.  On numerous occasions by written correspondence and oral communications, BorgWarner repeated its offer to participate in the Informal Procedures subject to a waiver of binding arbitration.  To date, however, the Debtors have not responded to any of BorgWarner's offers.

19.     At no time has BorgWarner engaged in any dilatory tactics or obstructed the Debtor's investigation of its Warranty Claim in any way.  To the contrary, BorgWarner has worked diligently to consensually resolve the Warranty Claim.  BorgWarner has responded promptly to every one of the Debtors requests for information supporting, or clarifying, the Warranty Claim.  BorgWarner has participated in numerous conference calls, many on short or no notice, requested by the Debtors to attempt to liquidate the Warranty Claim.

20.     By November, 2005, Delphi had completed the analysis of a sufficient number of returned defective Turbos to determine their warranty obligations and conclude negotiations with BorgWarner.    Nevertheless, shortly after the Petition Date, Delphi requested additional

voluminous and detailed statistical warranty data of every turbo failure to date. Much of this data was in possession of International Truck, BorgWarner's customer. BorgWarner then worked with International to compile this data in a form acceptable to Delphi.

21. Despite BorgWarner's continued cooperation, the negotiations appear to have stalled and it does not appear that the parties will be able to consensually liquidate the Warranty Claim.

22. Now, six months later, by letter dated April 7, 2006 (Exhibit C) the Debtors have requested that BorgWarner agree to participate in non-binding meditation, pursuant to the Informal Procedures. The Debtors, however, have not responded to BorgWarner's request that they acknowledge that the matter will not be referred to binding arbitration, thus necessitating this motion.

### Relief Requested

23. By this motion, pursuant to 11 U.S.C. § 362(d)(1), BorgWarner seeks relief from the automatic stay to proceed against the Debtors in the appropriate forum to liquidate the Warranty Claim and, pending liquidation of the Warranty Claim, to permit BorgWarner to continue to freeze payment of any amounts it may owe the Debtors so as to adequately protect and preserve BorgWarner's setoff rights.

### Relief From Stay is Proper in These Circumstances

24. There is a genuine dispute between BorgWarner and the Debtors over the nature and extent of the Turbo failures attributable to the Component supplied by the Debtors. This dispute prevents the parties from agreeing on the amount of the Warranty Claim.

25. BorgWarner wishes to setoff and/or recoup the Warranty Claim against amounts owed to it by the Debtors. Before BorgWarner may affect a setoff and/or recoupment, it must

liquidate its Warranty Claim. Accordingly, BorgWarner requests that the Court enter an order granting it relief from the automatic stay to liquidate the Warranty Claim in the appropriate forum, likely, the courts of the State of Michigan.

26. Section 362(d) of the Bankruptcy Code provides that:

> [o]n request of a party in interest and after a notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause,….

27. Here, cause exists as the liquidation of the Warranty Claim is critical to BorgWarner's ability to protect, assert and, ultimately, exercise any setoff and/or recoupment rights against the Debtors. Absent a determination of the amount of the Warranty Claim, BorgWarner cannot effectively seek relief from the automatic stay to effectuate its setoff rights.

28. While the Bankruptcy Code does not define "cause," courts have articulated standards as to when cause exists to grant relief from stay.

29. The court in *In re Curits*, 40 B.R. 795 (Bankr. D. Utah 1984), pointed out that "Congress recognized that in some circumstances it would be appropriate to modify the automatic stay 'for cause' to permit an action to proceed before another tribunal." *Id.* at 799. The *Curtis* court went on to delineate a list of twelve factors courts should consider when deciding whether to lift the automatic stay to allow litigation to proceed against the Debtor in another forum. Those twelve factors are:

> (1) Whether the relief will result in a partial or complete resolution of the issues; (2) The lack of any connection with or interference with the bankruptcy case; (3) Whether the foreign proceeding involves the debtor as a fiduciary; (4) Whether a specialized tribunal has been established to hear the particular cause of action and that tribunal has the expertise to hear such cases; (5) Whether the debtor's insurance carrier has assumed full financial responsibility for defending the litigation; (6) Whether the action

> essentially involves third parties, and the debtor functions only as a bailee or conduit for the goods or proceeds in question; (7) Whether litigation in another forum would prejudice the interests of other creditors, the creditors' committee and other interested parties; (8) Whether the judgment claim arising from the foreign action is subject to equitable subordination under Section 510(c); (9) Whether movant's success in the foreign proceeding would result in a judicial lien avoidable by the debtor under Section 522(f); (10) The interest of judicial economy and the expeditious and economical determination of litigation for the parties; (11) Whether the foreign proceedings have progressed to the point where the parties are prepared for trial; and (12) The impact of the stay on the parties and the "balance of hurt."

40 B.R. at 799-800 (internal cites and quotations omitted).

30. The Second Circuit adopted the *Curtis* factors in *In re Sonnax, Ind., Inc.*, 907 F.2d 1280 (2nd Cir. 1990). *See*, also, *In re Mazzeo*, 167 F.3d 139, 143 (2nd Cir. 1999) ("not all of these factors will be relevant in every case.").

31. In the instant case, factors 1, 2, 7, 10, and 12 are relevant, and an analysis of these factors militates in favor of granting BorgWarner's request.

Factor 1: Whether the Relief Will Result in Partial or Complete Resolution of the Issues

32. Granting BorgWarner's request for relief from stay will allow the parties to litigate to conclusion the dispute and liquidate the amount of the Warranty Claim in the proper forum fully and completely. Allowing BorgWarner to proceed in the proper forum to liquidate the Warranty Claim will allow BorgWarner to move for relief from stay in this Court to exercise setoff and/or recoupment to the extent of the fully liquidated Warranty Claim.

Factor 2: The Lack of Any Connection With or Interference With the Bankruptcy Case

33. Allowing BorgWarner to proceed against the Debtors in an alternate forum will not interfere with the administration of the Debtors' bankruptcy cases. Liquidation of the Warranty Claim does not involve any issues of bankruptcy law. Rather, it involves the interpretation and application of state law to a straightforward, albeit highly technical, breach of

warranty claim and the engineering and design issues associated therewith. All, or substantially all of the parties, exhibits, and documents necessary to the litigation are located in Michigan. The Warranty Claim is governed by Michigan law and Michigan courts are familiar with the issues and law involved in liquidating the Warranty Claim.

34. Further, liquidating the Warranty Claim requires the participation and expertise of engineers, technicians, warranty analysts, and field service representatives of BorgWarner, its customers, the Debtors, and industry experts. Again, all or substantially all of these individuals are located in Michigan.

Factor 7: Whether Litigation in Another Forum Would Prejudice the Interests of other Creditors, the Creditors' Committee and other Interested Parties

35. Granting BorgWarner's request for relief from stay will not prejudice the interests of creditors or other interested parties. Allowing BorgWarner to liquidate the Warranty Claim in the proper forum will not distract the Debtors from their efforts to reorganize. In fact, bringing this issue to a prompt resolution will benefit the Debtors by preserving an important customer relationship and resolving a significant secured claim.

Factor 10: The Interest of Judicial Economy and the Expeditious and Economical Determination of Litigation for the Parties

36. As the Court is aware, the Debtors face a challenging task managing and guiding the reorganization and restructuring of the Debtors' core business. Litigating the Warranty Claim in this Court would be a distraction to both Debtors' bankruptcy counsel and this Court. The liquidation of the Warranty Claim will involve highly complex technical issues regarding the design, development, and function of the Turbos and the Components, and the resolution and interpretation of Michigan contract law. This Court's time and resources should not be dissipated through the liquidation of the Warranty Claim. Also, as mentioned earlier, since most, if not all, of the parties necessary to the liquidation of the Warranty Claim are located in

Michigan, litigating the issue in Michigan is the most economical and efficient means to resolve this dispute. Accordingly, BorgWarner believes the most expeditious and efficient way to liquidate the Warranty Claim is through the courts of the State of Michigan.

Factor 12: The Impact of the Stay on the Parties and the "Balance of Hurt"

37. Absent an order lifting the stay to allow BorgWarner to liquidate its claim, BorgWarner cannot effectuate its setoff and/or recoupment rights as contemplated by the common law, the Bankruptcy Code, and Paragraph 18 of DIP Order. BorgWarner has worked diligently with the Debtors, attempting to liquidate the Warranty Claim; and BorgWarner has repeatedly offered to participate in the Informal Procedures, subject to the condition that the matter would not be referred to binding arbitration, to no avail.

38. Moreover, BorgWarner continues to incur warranty costs for Turbo failures. To date the Debtors and BorgWarner have not been able to satisfactorily identify and fix the root cause of the Turbo failures, which BorgWarner believes to be the Components. The continued failures are straining BorgWarner's relationships with its customers – who grow more and more frustrated with every Turbo failure. At this time, BorgWarner is bearing the full brunt of the warranty costs associated with the failures, even though Delphi is contractually bound to assume a portion of that liability.

**Conclusion**

39. For the reasons set forth above, this Motion should be granted. A balancing of the competing interests of BorgWarner and the Debtors clearly demonstrates that the automatic stay should be modified solely for the purpose of allowing BorgWarner to liquidate its Warranty Claim in the proper forum and to permit BorgWarner to continue to freeze any amounts it may owe to the Debtors pending the liquidation of the Warranty Claim to adequately protect BorgWarner's setoff rights.

**Waiver of Separate Memorandum of Law**

40. Since the statutory predicates and case law in support of the relief requested by this Motion are recited above, BorgWarner respectfully requests that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) (S.D.N.Y.) be deemed satisfied.

**Notice**

41. Notice of this Motion has been provided pursuant to the Case Management Order entered by this Court on October 14, 2005 (as amended) establishing notice procedures in these bankruptcy cases. No further notice is required. No previous motion for the relief requested herein has been made in this or any other court.

WHEREFORE, BorgWarner respectfully requests that this Court enter an Order, substantially in the form attached hereto as Exhibit A, (i) granting it relief from the automatic stay to liquidate the Warranty Claim in the appropriate forum; (ii) modifying the automatic stay to permit BorgWarner to continue to freeze payment of any amounts owed by BorgWarner to the Debtors pending liquidation of the Warranty Claim so as to adequately protect BorgWarner's setoff rights; and (iii) granting any other such relief the Court deems just and appropriate.

    CLARK HILL PLC

    By:    /s/ Seth A. Drucker
        Joel D. Applebaum (Mich. Bar. No. P36774)
        admitted *pro hac vice*
        Seth A. Drucker (Mich. Bar. No. P65641)
        admitted *pro hac vice*
    500 Woodward Avenue, Suite 3500
    Detroit, Michigan 48226-3435
    (313) 965-8300
    sdrucker@clarkhill.com
    Attorneys for BorgWarner Turbo Systems Inc.

Dated: April 12, 2006