**Hearing Date and Time: May 9, 2006 at 10:00 a.m.**
**Objection Deadline: April 21, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006
(202) 383-5300
Robert A. Siegel (RS 0922)
Tom A. Jerman
Rachel S. Janger
Jessica Kastin (JK 2288)

GROOM LAW GROUP, CHTD
1701 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 857-0620
Lonie A. Hassel

Attorneys for Delphi Corporation, et al.,
    Debtor and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                            :
      In re                     :    Chapter 11
                                                            :
DELPHI CORPORATION, et al.,                                 :    Case No. 05-44481 (RDD)
                                                            :
        Debtors.        :    (Jointly Administered)
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

EXHIBITS F, G, AND I TO THE DECLARATION OF KEVIN M. BUTLER
IN SUPPORT OF DELPHI'S MOTION FOR AUTHORITY TO REJECT
COLLECTIVE BARGAINING AGREEMENTS UNDER 11 U.S.C. § 1113(c) AND
MODIFY RETIREE WELFARE BENEFITS UNDER 11 U.S.C. § 1114(g)

The Debtors hereby submit Exhibits F, G, and I to the Declaration of Kevin M. Butler in

Support of Delphi's Motion for Authority to Reject Collective Bargaining Agreements Under 11

U.S.C. § 1113(c) and Modify Retiree Welfare Benefits Under 11 U.S.C. § 1114(g) (the

"Exhibits") filed with the Court on March 31, 2006 (Docket No. 3038).  The Exhibits were

served upon parties-in-interest on March 31, 2006 in accordance with the terms of the Second

Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006,

9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and

Administrative Procedures (Docket No. 2995) and the Third Amended Scheduling Order On

Debtors' Motions To (I) Reject Collective Bargaining Agreements Under Section 1113(c) And

(II) Eliminate Retiree Medical And Life Insurance Benefits For Union-Represented Retirees

Under Section 1114(g) (Docket No. 2996).

Dated: New York, New York
          April 12, 2006

                              SKADDEN, ARPS, SLATE, MEAGHER &
                                 FLOM LLP

                              By: /s/ John Wm. Butler, Jr._____
                                  John Wm. Butler, Jr. (JB 4711)
                                  John K. Lyons (JL 4951)
                                  Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois  60606
                              (312) 407-0700


                              By:/s/ Kayalyn A. Marafioti_____
                                  Kayalyn A. Marafioti (KM 9632)
                                  Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

O'MELVENY & MYERS LLP

By: /s/ Tom A. Jerman
   Robert A. Siegel (RS 0922)
   Tom A. Jerman
   Rachel S. Janger
   Jessica Kastin (JK 2288)
1625 Eye Street, NW
Washington, DC  20006
(202) 383-5300


GROOM LAW GROUP CHARTERED

By: /s/ Lonie A. Hassel
   Lonie A. Hassel
1701 Pennsylvania Avenue, NW
Washington, DC  20006
(202) 857-0620

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

**Exhibit F**

**PROPOSED MODIFICATIONS TO THE UAW-DELPHI AGREEMENTS PURSUANT
TO BANKRUPTCY CODE § 1113(c)
AND
PROPOSED MODIFICATIONS TO RETIREE WELFARE BENEFITS
PURSUANT TO BANKRUPTCY CODE § 1114**

This term sheet sets forth the proposals of Delphi Corporation and its operating
divisions ("Delphi" or the "Corporation") for modifications, pursuant to Section 1113(c) of
the U.S. Bankruptcy Code, to the UAW National Agreements and UAW Local
Agreements, both as defined below, between the International Union, United
Automobile, Aerospace and Agricultural Implement Workers of America, and/or its Local
Unions ("UAW") and Delphi, and for modifications to retiree welfare benefits, pursuant to
Section 1114 of the U.S. Bankruptcy Code, for Delphi's existing retirees, surviving
spouses and dependents (collectively "Retirees").

| General Provisions | |
|---|---|
| **UAW-Delphi Agreements** | The term "UAW-Delphi Agreements" shall mean both the UAW National Agreements and the UAW Local Agreements as defined below. |
| **UAW National Agreements** | The term "UAW National Agreements" shall mean the following:<br><br>• The Agreement Between Delphi Corporation and the UAW, dated September 18, 2003 (the "UAW-Delphi National Agreement");<br><br>• The Supplemental Agreement Covering Pension Plan, Exhibit A to Agreement between Delphi Corporation and UAW, dated September 18, 2003;<br><br>• The Supplemental Agreement Covering Life and Disability Benefits Program, Exhibit B to Agreement between Delphi Corporation and UAW, dated September 18, 2003;<br><br>• The Supplemental Agreement Covering Health Care Program, Exhibit C to Agreement between Delphi Corporation and UAW, dated September 18, 2003;<br><br>• The Supplemental Agreement Covering Supplemental Unemployment Benefit Plan, Exhibit D to Agreement between Delphi Corporation and UAW, dated September 18, 2003; |

- The Supplemental Agreement Covering Guaranteed Income Stream Benefit Program, Exhibit E to Agreement between Delphi Corporation and UAW, dated September 18, 2003;

- The Supplemental Agreement Covering Profit Sharing Plan, Exhibit F to Agreement between Delphi Corporation and UAW, dated September 18, 2003;

- The Supplemental Agreement Covering Personal Savings Plan, Exhibit G to Agreement between Delphi Corporation and UAW, dated September 18, 2003;

- The Supplemental Agreement Covering UAW-Delphi Legal Services Plan, Exhibit I to Agreement between Delphi Corporation and UAW, dated September 18, 2003;

- The UAW-GM-Delphi "Memorandum of Understanding Benefit Plan Treatment" dated September 30, 1999 and the Amendment thereto dated September 18, 2003;

- The UAW-Delphi Supplemental Agreement dated April 29, 2004;

- The letter from Ralph E. Handley to Richard Shoemaker dated September 29, 1999 concerning "Post-2003 Delphi Agreement" ("The Mirror Letter");

- The Excerpt from the Minutes of 1999 Delphi-UAW National Negotiations dated November 18, 1999 concerning Delphi's willingness to mirror the appropriate terms of the next GM-UAW National Agreement;

- The Special Attrition Plan – DIS Trenton dated October 26, 2000;

- The Special Attrition Plan – Delphi Energy & Chassis – Muncie dated November 3, 2003;

- The Special Attrition Plan – Delphi Energy & Chassis – Livonia dated December 9, 2003; and

- Any and all other agreements, supplements, appendices, documents, memoranda, letters, minutes and understandings, published and unpublished, between Delphi Corporation and the International Union, UAW.

| UAW Local Agreements | The term "UAW Local Agreements" shall mean the following: |
|---|---|
| | • The agreements between Delphi Automotive Holdings Group – Anderson, Indiana and UAW Local 662 |
| | • The agreements between Delphi Automotive Holdings Group – Athens, Alabama and UAW Local 2195 |
| | • The agreements between Delphi Automotive Holdings Group – Fitzgerald, Georgia and UAW Local 2188 |
| | • The agreements between Delphi Automotive Holdings Group – Flint East, Michigan and UAW Local 651 |
| | • The agreements between Delphi Automotive Holdings Group – Laurel, Mississippi and UAW Local 2190 |
| | • The agreements between Delphi Automotive Holdings Group – Olathe, Kansas and UAW Local 1021 |
| | • The agreements between Delphi Automotive Holdings Group – Wisconsin/Needmore Plants, Dayton, Ohio and UAW Local 696 |
| | • The agreements between Delphi Electronics and Safety – Kokomo, Indiana and UAW Local 292 |
| | • The agreements between Delphi Electronics and Safety – Milwaukee, Wisconsin and UAW Local 438 |
| | • The agreements between Delphi Energy and Chassis – Coopersville, Michigan and UAW Local 2151 |
| | • The agreements between Delphi Energy and Chassis – Grand Rapids, Michigan and UAW Local 167 |
| | • The agreements between Delphi Energy and Chassis – Milwaukee, Wisconsin and UAW Local 1866 |
| | • The agreements between Delphi Energy and Chassis – Rochester, New York and UAW Local 1097 |
| | • The agreements between Delphi Energy and Chassis – Saginaw, Michigan and UAW Local 467 |

|  | |
|---|---|
| | • The agreements between Delphi Energy and Chassis – Sandusky, Ohio and UAW Local 913 |
| | • The agreements between Delphi Energy and Chassis – Wichita Falls, Texas and UAW Local 2157 |
| | • The agreements between Delphi Steering – Saginaw Michigan and UAW Local 699 |
| | • The agreements between Delphi Thermal and Interior – Adrian, Michigan and UAW Local 2031 |
| | • The agreements between Delphi Thermal and Interior – Columbus, Ohio and UAW Local 969 |
| | • The agreements between Delphi Thermal and Interior – Cottondale, Alabama and UAW Local 2083 |
| | • The agreements between Delphi Thermal and Interior – Lockport, New York and UAW Local 686 |
| | • The agreements identified in Appendix C; and |
| | Any and all other agreements, supplements, appendices, documents, memoranda, letters, minutes and understandings, published and unpublished, between Delphi and the UAW local unions. |
| **Effective Date** | The UAW-Delphi Agreements, as modified by this Term Sheet, shall become effective on January 1, 2006 (the "Effective Date"). |
| **Duration** | The UAW-Delphi Agreements, as modified by this Term Sheet, shall continue in effect until 11:59 p.m. on January 1, 2012, subject to the modification and termination provisions of Paragraph (223) of the UAW-Delphi National Agreement. |
| | **Wages and Related Provisions** |
| **Base Wage Rates** | All base hourly wage rates under the UAW-Delphi Agreements shall be modified as set forth in Appendix A: |
| | • Paragraphs (97), (98), (98)(1), (98)(2), (98)(3), (98)(4), (98)(5), (98)(6), (98a), (98b), (99), (99a), (100), (101)(a)(2), (101)(e), (102), (102a), (143), (151), (163), (164), (165), (181a), Document 85, Document 146, Section 10 of the Contract Settlement Agreement of the UAW-Delphi National Agreement and other references related to wage schedules, |

|  | rates, general increases, performance bonuses, tool and other allowances in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• Paragraph 90 of the UAW-Delphi National Agreement will be deleted, and all other references to payment plans in other national and/or local Agreement provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• All payroll drafts and EFT's will be dated on Friday. |
| **COLA** | There will be no Cost of Living Allowance (COLA).  Paragraphs (101)(d), (101)(e), (101)(f), (101)(g), (101)(h), (101)(i), (101)(j), (101)(k), (101)(l), Document 87 and Document 101 of the UAW-Delphi National Agreement will be deleted, and all other references to COLA in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| **Overtime** | The overtime provisions of the UAW-Delphi Agreements shall be modified as follows:<br><br>• All overtime shall be payable at time and one half, irrespective of the day of the week in which the time is worked.<br><br>• Overtime shall be payable only after the employee has worked 40 hours in a pay period.  For purposes of this provision, hours paid as vacation and holiday pay shall be counted toward the 40-hour requirement.<br><br>• Paragraphs (81), (82), (84)(a), (84)(b), (85)(a), (85)(b), (85)(c), (86), (87), (87)(1), (87)(2), (87)(3), (87)(4), (87)(5), (87)(6), (206), Document 1, Document 2, Document 3, Document 4, and the Memorandum of Understanding on Overtime of the UAW-Delphi National Agreement will be deleted, and all other references to computing overtime premium pay in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• The amount and nature of any overtime to be worked shall be determined at the sole discretion of the Corporation.  Any and all provisions of the UAW-Delphi Agreements or local |

| | |
|---|---|
| | agreements that purport to require overtime, or to limit management discretion to determine overtime requirements, shall be deleted.<br><br>• All voluntary overtime provisions of the UAW-Delphi Agreements shall be eliminated. |
| **Shift Premiums** | All existing shift premiums under the UAW-Delphi Agreements shall be paid at five percent (5%) of the applicable base hourly rate, according to the following schedule:<br><br>{{TABLE}}<br><br>Paragraph 89 of the UAW-Delphi National Agreement and all other references to existing shift premiums in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| colspan centered | **Holidays, Vacation and Benefits** |
| **Holidays** | On the Effective Date, the number of Corporation-paid holidays under the UAW-Delphi Agreements will be reduced to ten (10) days per year.  Delphi and the UAW shall mutually agree on what the ten paid holidays will be.<br><br>Paragraphs (203), (203a), (203b), (203c), (208), (209), (211), (213a), Document 80 and Document 134 of the UAW-Delphi National Agreement will be deleted and all other references to the Christmas Holiday Period in other provisions and/or associated documents and associated Supplemental Agreements will be eliminated. |

Shift Premiums schedule:

| Scheduled Shift Starting Time | Amount of Regular Shift Premium |
|---|---|
| (1) On or after 11:00 a.m. and before 5:00 a.m. | Five percent |
| (2) On or after 5:00 a.m. and before 11:00 a.m. | None |

| | |
|---|---|
| **Independence Week** | The Corporation-paid Independence Week holiday will be eliminated.<br><br>• At its discretion, annually, the Corporation may designate the week in which the Independence Day holiday falls as a mandatory vacation period.<br><br>• Employees will use Vacation Entitlement hours, if available, or be granted an unpaid leave of absence for such mandatory vacation period.<br><br>Paragraphs (202a), (202b), (202c), (202d), (202d)(1), (202d)(2), (202d)(3), (202e), (202f), (202f)(1), (202f)(2), (202f)(3), Document 136 and Document 137 of the UAW-Delphi National Agreement will be deleted and all other references to Independence Week in the UAW-Delphi Agreements will be eliminated. |
| **Vacation Accrual** | Paragraph (191) of the UAW-Delphi National Agreement will be deleted, and all other references to vacation entitlement hours in other provisions and/or associated documents and all associated UAW-Delphi Agreements will be modified to reflect the following vacation accrual schedule:<br><br>Effective January 1, 2006, vacation accrual rates shall be as follows:<br><br>| **For an Eligible Employee with Seniority of:** | **Hours of Vacation Entitlement** |<br>|---|---|<br>| Less than one year | 40 |<br>| One but less than three years | 60 |<br>| Three but less than five years | 80 |<br>| Five but less than ten years | 100 |<br>| Ten but less than 15 years | 120 |<br>| Fifteen but less than 20 years | 140 |<br>| Twenty or more years | 160 | |
| **Profit Sharing** | Applicable terms and conditions of Supplemental Agreement Covering Profit Sharing Plan, Exhibit F, shall continue to apply except as follows: |

| | |
|---|---|
| | • Only "U.S. Operations", as defined under the 2003 Supplemental Agreement, Exhibit F, shall be included in any future calculation of profit sharing amounts.<br><br>• The following Letter Agreements shall be eliminated:<br><br>    ○ Improving Benefit Services Through Technology; and<br><br>    ○ Benefits Training and Education. |
| **Health Care** | Applicable terms and conditions of Supplemental Agreement Covering Health Care Program, Exhibit C, and the UAW-Delphi Supplemental Agreement dated April 29, 2004, Attachment B, Section I shall be modified to discontinue current health care options and replace them with the health care plan generally described in Appendix B.<br><br>• Appropriate modifications and deletions will be made to applicable Exhibits, Articles and Appendices of Exhibit C to conform to the monthly contribution, cost sharing, dependent eligibility, scope and level of benefits, coordination of benefits, utilization management and other provisions contemplated by Appendix B.<br><br>• Applicable sections of Article III of Exhibit C-1 concerning continuation of health care coverage while not actively at work will be modified to provide for up to a maximum of seven (7) months of continuation following the month the employee is last in active service.<br><br>• Article V concerning the Special Benefit will be eliminated.<br><br>• Section I of the UAW-Delphi Supplemental Agreement dated April 29, 2004, Attachment B, providing a Corporation-funded Flexible Spending Account shall be eliminated.<br><br>• Item 17 (Contract Settlement Agreement) shall be eliminated.<br><br>• All Miscellaneous Health Care Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the health care plan described in Appendix B. Specifically, the following Documents and Letters shall be deleted:<br><br>    ○ Statement of Intent (Representation). |

- Understandings with respect to the following:

  - Dental Coverage;

  - Vision Coverage;

  - Utilization Review and Cost Containment;

  - Employee Contributions - Health Maintenance Organizations(HMOs), and Alternative Dental and Vision Options;

  - Supplemental Methodology for Review of Health Maintenance Organizations (HMOs), and Alternative Dental and Vision Options; and

  - Health Care – HMO

- Letters of Agreement regarding the following subjects:

  - Informed Choice Plan (General);

  - Pharmacy Quality and Safety Components;

  - Preferred Provider Organizations;

  - Improving Benefit Services Through Technology;

  - Benefits Training and Education;

  - Community Initiatives;

  - Vision Network;

  - Preferred Dental Provider Arrangement;

  - Fertility Services;

  - Health Care Communication Strategy;

  - Mental Health and Substance Abuse Coverage; and

  - Traditional Care Network.

| | |
|---|---|
| | o  Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to providing the health care plan and shall be modified or eliminated as appropriate. |
| **Life and Disability** | Applicable terms and conditions of Supplemental Agreement, Exhibit B and the UAW-Delphi Supplemental Agreement dated April 29, 2004, Attachment B, Section IV shall be modified to:<br><br>• Limit Sickness & Accident benefits to a maximum of 26 weeks of disability;<br><br>• Allow the determination of total disability, for purposes of benefit eligibility and payment, to be made by the disability administrator;<br><br>• Eliminate the Impartial Medical Opinion (IMO) program;<br><br>• To make available, on an employee self-pay basis, Extended Disability Benefits for a maximum of 36 months of disability at an amount determined in accordance with Schedule I of the table found in Art. II, 5 of Exhibit B;<br><br>• To reduce S&A/EDB payable to current and future recipients to an amount proportionate to the new wage rates;<br><br>• To provide active employees with $30,000 of Basic Life Insurance. Survivor Income Benefit Insurance and Extra Accident Insurance shall be eliminated; and<br><br>• To limit continuation of Life Insurance while not actively at work to a maximum of 6 months after the month following the month the employee was last in active service.<br><br>All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted:<br><br>• Statement of Intent (Representation);<br><br>• Improving Benefit Services Through Technology; |

|  | • Benefits Training and Education; |
|--|-----------------------------------|
|  | • IMO Letter; and |
|  | • Reinstated S&A Letter. |
|  | Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the program described above and shall be modified or eliminated as appropriate. |

| **Job Security and Severance** | |
|---|---|
| **Right to Sell, Close or Consolidate** | Document 13 of the UAW-Delphi National Agreement, and all related provisions of the existing agreements, National and/or Local, that inhibit the Corporation's ability to close, or partially or wholly sell, spin-off, split-off, consolidate or otherwise dispose in any form any plant, asset or business unit of any type shall be eliminated.<br><br>In the event the Corporation sells a facility, it shall use its best effort to obtain the purchaser's agreement to hire existing Delphi employees at the facility. |
| **Successorship** | Document 91 of the UAW-Delphi National Agreement, and all related provisions of the existing agreements, national and/or local, that would require a purchaser of Corporation facilities to assume the existing collective bargaining agreements shall be eliminated. |
| **Elimination of Protected Status (JOBS Bank)** | Appendix K and Documents 10, 11, 117, 118 and 132 of the UAW-Delphi National Agreement and all related provisions of the existing agreements shall be eliminated.  The Corporation shall have the right immediately to lay off all employees on Protected Status (JOBS Bank). |
| **Hiring Requirements** | All hiring requirements accrued as of the Effective Date of this agreement generated as a result of Appendix K or under the flowback provisions or under any local agreement will be canceled.  All provisions of the national or local Agreements that would impose ongoing or future hiring requirements or obligations will be eliminated, including apprentices under Document 63 of the UAW-Delphi National Agreement. |

| | |
|---|---|
| **Need to Run Employment Levels** | The Corporation shall have sole discretion to determine the number of employees required at each facility, and to lay off or release employees who are unnecessary to the operation. All employment security, income security or other provisions of the existing agreements, national and/or local, that restrict this right shall be eliminated. |
| **Hiring** | If employees are required, it will be solely at Delphi's discretion to add a new hire or a temporary employee.<br><br>During the course of an attrition program or in the event of an insufficient number of employees, the Corporation will meet and confer with the Union to discuss the use of contract service personnel. |
| **Relocation Allowance** | On a case-by-case basis, Delphi employees relocating to a GM plant outside of the area hire or transferring from a Delphi plant to a Delphi plant may be eligible for Relocation Allowance based on actual expenses incurred, up to a maximum of $10,000. |
| **Outsourcing** | Appendix L, Documents 12, 89, 120, 127, 140 and 153 of the UAW-Delphi National Agreement, and all other related provisions of the existing local and national agreements that restrict the Corporation's right to source work, shall be eliminated. |
| **Severance Pay** | The Corporation will discuss implementation of affordable severance pay provisions for employees who are no longer required with no prospect of recall in the foreseeable future. |
| **Indirect Employees** | The Corporation shall have sole discretion to determine the type and number of non-production employees required at each facility, and the work to be assigned to such employees.<br><br>Paragraphs (140), (140a), (140b), Appendix F-1, Documents 112 ,149 and 152 of the UAW-Delphi National Agreement and all other references restricting the Corporation's discretion in this matter in other provisions and/or associated documents and all associated Supplemental Agreements, National and Local, will be eliminated.<br><br>Paragraphs (183)(c), (183)(d) and Appendix F of the UAW-Delphi National Agreement and all other provisions and/or associated documents and all associated Supplemental Agreements, national and local, will be modified to refer only to core activities that directly support production activities. |

Full utilization of skilled trades will apply only to core activities which directly support production operations and/or the maintenance and repair of plant equipment, and which can be performed competitively and within the required time frame. All other non-core skilled trades work will be outsourced or subcontracted, such as but not limited to:

- Tool and equipment build;

- Machine re-build;

- Building and facilities maintenance;

- Truck repair;

- Carpentry and painting;

- HVAC installation and repair;

- Telephone and IT equipment installation and support;

- Construction and rearrangement of facilities;

An affected trade that is scheduled to work 40 hours per week will be considered "fully utilized". Any monetary claims related to full utilization will be limited to the number of hours of work allegedly lost to the bargaining unit.

Indirect activities, both skilled and non-skilled, which are not competitive or which are not required for immediate support of production activities will be outsourced, contracted or eliminated, such as but not limited to:

- Snow removal;

- Janitorial services;

- Yard maintenance; and

- Crib support.

| | |
|---|---|
| **Supplemental Unemployment Benefits** | The Supplemental Agreement Covering Supplemental Unemployment Benefit Plan, Exhibit D, the UAW-Delphi Supplemental Agreement dated April 29, 2004, Attachment B, Section V; and Document 84 (Collective Bargaining Agreement) shall be eliminated. |

| | |
|---|---|
| **Guaranteed Income Stream Benefits** | The Supplemental Agreement Covering Guaranteed Income Stream Benefit Program, Exhibit E shall be eliminated. |
| **Temporary Employees** | Appendix A, X will be modified as follows:<br><br>• The Corporation, at its discretion, may hire temporary employees.<br><br>Document 144 of the UAW-Delphi National Agreement will be eliminated. |

|                    | **Other Provisions** |
|---|---|
| **Attendance** | The Corporation's attendance policies shall be revised as follows:<br><br>• The Corporation may implement a no-fault attendance policy under which all employee absences/tardiness are tracked including leaves of absence. After reaching defined thresholds, the employees will be subject to automatic, non-grievable corrective disciplinary action, ultimately leading to discharge. The program will also have a mechanism for reducing further disciplinary action based on improved attendance.<br><br>• All restrictions on the Corporation's administration, including any Local Agreements or Understandings, of the Family and Medical Leave Act shall be eliminated.<br><br>• Document 8 and Document 125 of the UAW-Delphi National Agreement will be deleted, and all other references to attendance and Family and Medical Leave Act policies in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• The Corporation may reduce vacation pay and holiday pay by the same percentage as an employee's absence rate during scheduled work hours during the previous year, including time on leave. |

| | |
|---|---|
| **Subsidized Discount Programs** | Any and all provisions of the UAW-Delphi Agreements that require expenditures by Delphi for personal items shall be eliminated.  Such provisions include, but are not limited to the following:<br><br>• Corporation-paid health club memberships;<br><br>• Discount programs subsidized by Delphi such as AOL; and<br><br>• Clothing allowances. |
| colspan | **UAW Representation and Support** |
| **CHR Funding and Joint Fund Accruals** | The funding provisions of Section III, subsections A and B of the Memorandum of Understanding – Joint Activities, and Item 19 (Contract Settlement Agreement) of the UAW-Delphi National Agreement will be deleted.<br><br>• The level of participation in the programs, services and related activities formerly funded by these provisions will be at the discretion of the Corporation, and any costs incurred for these will be the responsibility of Delphi Corporation.<br><br>• The Memorandum of Understanding – Human Resources Development, the Memorandum of Understanding - Joint Skill Development and Training, the Memorandum of Understanding – Tuition Assistance Plan, Documents 36, 38, 43, 102, 103, 106, 109, 110, 121, 123, 129, 130, 133, and Item 23 (Contract Settlement Agreement) - Group Legal Services Plan of the UAW-Delphi National Agreement and other references to education, training, and development in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• Documents 37 and 108 of the UAW-Delphi National Agreement – Child and Elder Care referral services and the Homework Hotline, and any subsidy for any child care center usage will be eliminated. |
| **Legal Services** | The Supplemental Agreement Covering UAW-Delphi Legal Services Plan, Exhibit I, of the UAW-Delphi National Agreement, shall be eliminated. |
| **Quality Network** | Document 40 of the UAW-Delphi National Agreement and all other references to Quality Network in other provisions and/or |

| | |
|---|---|
| | associated documents and all associated Supplemental Agreements will be eliminated. The Quality Network Process will be merged with the Delphi Manufacturing System. |
| **Union Representation** | The union representation provisions of the UAW-Delphi Agreements shall be revised as follows:<br><br>• The number of Union representatives of all kinds (including but not limited to district, zone, chairperson, benefit, health & safety, special skilled trades, future product, joint training, human resource development, joint activities, joint ergonomics, equal application, work/family, Quality Network and ADAPT) will be based on a ratio of 1:250. Plants with 200-750 employees will have a total of three (3) representatives. Operating plants with fewer than 200 employees will have a total of two (2) representatives. Closed plants will have no representatives when the population drops below 50.<br><br>• Union representatives will be scheduled to work overtime for representation purposes only when the 15 or more employees they represent are working overtime on the representative's scheduled shift and no other representatives, including district or zone committeepersons, are otherwise available on straight time.<br><br>• Joint program representatives, including those "special assigned" employees assigned to the Corporation, Divisions and/or agreed to at the plant level, shall be eliminated.<br><br>• Paragraphs (9), (11), (21), (21)(2), Sections VI, VI(a), and VI(b) of Document 7, the representation provisions of Section VII of Attachment A to Document 7, Document 46 and Document 77 of the UAW-Delphi National Agreement will be deleted, and all other references to the number of union representatives, paid time for union representatives, and/or overtime for union representatives in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• The Statement of Intent (Representation) shall be eliminated from all applicable Supplemental Agreements. |
| **Neutrality Letter** | The neutrality letter shall be eliminated. |

| No-Strike Provisions | No strikes, work stoppages or slowdowns shall be permitted during the term of the UAW-Delphi Agreements.<br><br>Paragraphs (116), (117), (118) of the UAW-Delphi National Agreement and other references to strikes in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| --- | --- |
| Personal Savings Plan | Applicable terms and conditions of Supplemental Agreement Covering Personal Savings Plan, Exhibit G, shall continue to apply except as follows:<br><br>• Section III of the UAW-Delphi Supplemental Agreement dated April 29, 2004, Attachment B, shall be eliminated.<br><br>• All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted:<br><br>    o Improving Benefit Services Through Technology; and<br><br>    o Benefits Training and Education.<br><br>Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the plan described above and shall be modified or eliminated as appropriate. |

| | |
|---|---|
| **Hourly-Rate Employees Pension Plan** | Applicable terms and conditions of Supplemental Agreement Covering Pension Plan, Exhibit A and the UAW-Delphi Supplemental Agreement dated April 29, 2004, Attachment B, Section II shall be eliminated or modified as follows: <br><br> • Freeze the Delphi Hourly-Rate Employees Pension Plan (HRP) which includes the Individual Retirement Plan effective January 1, 2006; <br><br> • As of the freeze date, HRP participants will accrue no additional credited service for purposes of calculating their benefits; <br><br> • As of the freeze date, no new participants will be allowed to join the HRP; <br><br> • As of the freeze date, the HRP will be amended to eliminate any benefits that are not protected by ERISA, including the Special Benefit; and <br><br> • Implement a defined contribution benefit for future benefit accruals, where appropriate. <br><br> All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted: <br><br> • Statement of Intent (Representation); <br><br> • Improving Benefit Services Through Technology; <br><br> • Benefits Training and Education; <br><br> • Workers Compensation; <br><br> • Lump-Sum Payment; <br><br> • Social Security; and <br><br> • Total and Permanent Disability – Return to Work. <br><br> Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the HRP described above and shall be modified or eliminated as appropriate. |

| | |
|---|---|
| **Potential Termination of Hourly Rate Pension Plan** | The Corporation reserves the right while in Chapter 11 to seek a distress termination of the HRP in the event that it determines that it cannot maintain the HRP under the applicable legal standards for such a termination. The Corporation shall make this decision based on (1) updated financial forecasts during the Chapter 11 case; and (2) the Corporation's ability to fund the HRP. |
| <u>**Defined Contribution Pension Plan**</u> | <u>For all employees hired on or after the effective date of a termination of the Hourly-Rate Employees Pension Plan (each such employee, a "New Hire"), the Corporation shall contribute 3% of each New Hire's Earnings to a defined contribution plan for the benefit of such New Hire employees.</u><br><br><u>For purposes of this provision, Earnings shall be defined as base hourly wage for hours worked, not to exceed 40 hours per week.</u> |
| **Other Post-Employment Benefits (OPEB)** ||
| **Health Care (Active Employees and Retirees)** | Applicable terms and conditions of Supplemental Agreement Covering Health Care Program, Exhibit C, and the UAW-Delphi Supplemental Agreement dated April 29, 2004, Attachment B, Section I shall be modified to eliminate any obligation the Corporation may have to provide active employees and Retirees with Corporation contributions for and access to the Delphi Corporation Health Care Program for Hourly Employees during retirement. |
| **Retiree Life Insurance– (Active Employees)** | Applicable terms and conditions of Supplemental Agreement Covering Life and Disability Benefits Program, Exhibit B and the UAW-Delphi Supplemental Agreement, Attachment B, Section IV dated April 29, 2004 shall be modified to eliminate Basic Life Insurance, Survivor Income Benefit Insurance and Extra Accident Insurance in retirement. Retirees may continue any employee-paid coverages for which they were enrolled at the point of retirement. |
| **Retiree Life Insurance– (Retirees)** | Basic Life Insurance, Survivor Income Benefit Insurance and Extra Accident Insurance for current Retirees shall be eliminated. Retirees will be allowed to continue any employee-paid coverages for which they are enrolled. |

| Local Agreements | |
|---|---|
| **Effect on Local Agreements** | The UAW National Agreements, as modified by this Term Sheet, shall supersede and control all Local Agreements between the UAW local units and Delphi or any of its divisions.<br><br>Upon execution of this Term Sheet by the national parties, any provisions of the Local Agreements which are inconsistent with this Term Sheet shall be deemed to have been eliminated, and the Corporation's proposals to modify such Local Agreements shall be deemed withdrawn as moot.<br><br>A non-exclusive list of agreements that will be eliminated is attached as Appendix C. |
| **Competitive Operating Agreements** | Within 90 days following ratification of this Term Sheet, the Local Agreements will be revised, pursuant to local negotiations, to (1) reflect the provisions of this Term Sheet, and (2) adopt a Competitive Operating Agreement.<br><br>The Competitive Operating Agreements will address, but not be limited to, issues such as:<br><br>• Number of classifications, and efficient use of both production and skilled trades employees;<br><br>• Frequency of employee movement, including freezing transfers during product launches;<br><br>• Overtime equalization practices that are cumbersome, inefficient and/or non-competitive; and<br><br>• Local practices and work rules that are non-competitive, including but not limited, to the elimination of all forms of pay for time not worked (e.g., wash-up time, early quits). |

| | |
|---|---|
| **Local Innovation** | The Corporation may seek, and UAW Local Unions may agree to other changes that are justified by local competitive conditions or necessary to make local operations viable:<br><br>• Locally competitive wage rates and/or benefit plans – subject to National Party approval.<br><br>Alternative Work Schedules.<br><br>• The following alternative work schedules are pre-approved and available for local use with no overtime payable for the first 40 hours worked each week.<br><br>   ○ 3-Crew, 2-Shift<br><br>   ○ 4-Crew, 2-shift<br><br>   ○ Four days x ten hours<br><br>   ○ Weekend crew<br><br>• The Local Parties may develop other work schedules to meet particular local requirements, subject to approval by the Corporation and the International Union. |
| **Living Agreement Provisions** | All UAW-Delphi agreements that do not have an expiration date shall be amended to expire coterminously with the National Agreement. |
| **Miscellaneous Provisions** | |
| **Definitive Documentation** | This Term Sheet is intended only to describe the basic modifications to the current UAW-Delphi Agreements that are necessary for the reorganization of the Corporation under Section 1113(c) of the Bankruptcy Code, and is not intended to constitute final contract language.  The parties agree that they will draft final contract language, and execute the 2005 UAW-Delphi Agreement, within 60 days of the execution of this term sheet.  The parties further agree that in drafting final contract language, they will eliminate or modify any provisions of the current UAW-Delphi Agreements that are inconsistent with this term sheet or which would preclude the Corporation from obtaining the full savings sought by this proposal. |

| | |
|---|---|
| **Right to Refile 1113 and 1114 Motions** | In the event that changes in the Corporation's financial condition or other relevant conditions require, the Corporation shall have the right while in Chapter 11 to seek further relief under Sections 1113 and 1114 of the Bankruptcy Code. |
| **Dispute Resolution** | Disputes, local and national, between the National Parties on matters involving the application or interpretation of this Term Sheet will be reviewed by a Joint Committee consisting of three (3) members appointed by the UAW Vice President and Director of General Motors Department and three (3) members appointed by the Vice President, Human Resources Management, Delphi Corporation.<br><br>• The Joint Committee shall meet as required. Delphi will provide information as necessary on any issues raised for discussion or resolution.<br><br>• The Joint Committee will have full authority to settle all matters that are properly before it, recognizing that disputes governed by appeal procedures of the respective Benefit Plans, and other issues consistent with applicable law, may be outside the scope of the Committee's authority. If the Joint Committee is unable to resolve a matter properly before it, it will refer the matter directly to arbitration, using the arbitration provisions contained in the UAW-Delphi National Agreement. |

| Complete Agreement and Waiver | The Corporation and the UAW acknowledge that during the negotiations which resulted in this Term Sheet and agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Term Sheet.  Therefore, the Corporation and the UAW agree that for the life of the agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter referred to, or covered in the agreement, or with respect to any subject or matter not specifically referred to or covered in the agreement, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time that they negotiated or signed this Term Sheet or agreement.  This Term Sheet represents the complete and total agreement of the Corporation and the UAW as to all modifications to the existing UAW-Delphi Agreements, and each party voluntarily and unqualifiedly waives the right to raise claims to the contrary. |

Executed ـــــــ day of ـــــــــــــــــ, 2005.


FOR THE INTERNATIONAL UNION,
UNITED AUTOMOBILE, AEROSPACE
AND AGRICULTURAL IMPLEMENT
WORKERS OF AMERICA                           FOR DELPHI CORPORATION



ـــــــــــــــــــــــــــــــــــــــــــــ                     ـــــــــــــــــــــــــــــــــــــــــــــ



WITNESS:                                      WITNESS:

ـــــــــــــــــــــــــــــــــــــــــــــ                     ـــــــــــــــــــــــــــــــــــــــــــــ


ـــــــــــــــــــــــــــــــــــــــــــــ                     ـــــــــــــــــــــــــــــــــــــــــــــ


ـــــــــــــــــــــــــــــــــــــــــــــ                     ـــــــــــــــــــــــــــــــــــــــــــــ

# APPENDIX A – WAGES

There are two (2) production wage rates and one (1) skilled wage rate.  The corresponding classification groupings in each category shall be provided to the UAW in a separate document.

Employees will receive the following rates of pay:

| | Low Production | High Production | Skilled |
|---|---|---|---|
| Base Rates - | ~~$9.50~~12.00 | ~~$10.50~~13.00 | ~~$19.00~~21.50 |
| New Hire Rates - | ~~$9.00~~10.00 | ~~$9.00~~11.00 | ~~$18.00~~19.50 |

New hire employees will receive an increase at the expiration of every 26 weeks worked from the date of hire until the full rate is attained.  The applicable rate, including the amount of each increase is set forth in the table below:

| Number of Weeks | Low Production | High Production | Skilled |
|---|---|---|---|
| 0 – 26 | ~~$9.00~~10.00 | ~~$9.00~~11.00 | ~~$18.00~~19.50 |
| 27 – 52 | ~~$9.25~~10.40 | ~~$9.25~~11.44 | ~~$18.25~~20.00 |
| 53 – 78 | ~~$9.50~~10.82 | ~~$9.50~~11.90 | ~~$18.50~~20.50 |
| 79 – 104 | $11.25 | ~~$9.75~~12.37 | ~~$18.75~~21.00 |
| 105 – 130 | $11.70 | ~~$10.00~~12.87 | ~~$19.00~~21.50 |
| 131 – 156 | $12.00 | ~~$10.25~~13.00 | |
| ~~157 – 182~~ | | $10.50 | |

Current Delphi employees will be paid according to the above schedule based on their Delphi seniority date, and skilled trades date, if applicable.

The Apprentice Rate Schedule is set forth as follows:

| Apprentice Training Period | Hourly Rate* |
|---|---|
| 1st 916 Hours | ~~$10.75~~12.00 |
| 2nd 916 Hours | ~~$11.00~~12.50 |
| 3rd 916 Hours | ~~$11.00~~12.50 plus   9% of "Rate Difference" |
| 4th 916 Hours | ~~$11.00~~12.50 plus 20% of "Rate Difference" |
| 5th 916 Hours | ~~$11.00~~12.50 plus 33% of "Rate Difference" |
| 6th 916 Hours | ~~$11.00~~12.50 plus 48% of "Rate Difference" |

| | |
|---|---|
| 7th 916 Hours | $~~11.00~~12.50 plus 66% of "Rate Difference" |
| 8th 916 Hours | $~~11.00~~12.50 plus 86% of "Rate Difference" |

\*The "Rate Difference" shall be determined by subtracting the hourly rate for the 2nd 916 hours from the maximum rate for the skilled classification for which the apprentice is in training. Resultant rates shall be rounded to the nearest 1 cent.

Upon graduation, apprentices will receive an increase, if retained, to the midpoint of the rate range for the skilled classification to which they are assigned.

An employee-in-training (E.I.T.) shall receive a rate not less than $~~11.00~~12.25 per hour upon transfer to the classification and, if retained, the employee's rate shall be increased not less than 10¢ per hours each 60 days until the employee reaches the minimum rate of the skilled classification to which the employee is assigned. Any increase above the minimum shall be on the basis of merit, but in no event will such an employee receive a rate above the midpoint of the rate range for the employee's job classification.

# APPENDIX B – HEALTH CARE

- Medical and Prescription Drugs

  - Dependent eligibility, scope and level of benefits, coordination of benefits, utilization management and general administrative provisions will be substantially the same as the current Basic Medical Plan provided to salaried enrollees.

  - Monthly contributions will be required and will be based on the cost of the health care plan and certain other factors including, but not limited to, the number of people covered, the status of the primary enrollee, etc.

  - Monthly contributions, medical cost sharing and prescription drug cost sharing will be adjusted annually to account for any increase in the cost of providing the health care plan.

  - Medical Cost Sharing

    - In-Network

      - Deductibles:            $~~900~~450 Individual/ $~~1,800~~900 Family

      - Copayment:              ~~25~~20% Employee/ ~~75~~80% Plan

      - Out-of-Pocket Max:      $~~2,500~~1,500 Individual/ $~~5,000~~3,000 Family

    - Out-of-Network

      - Deductibles:            $~~900~~450 Individual/ $~~1,800~~900 Family

      - Copayment:              ~~45~~40% Employee/ ~~55~~60% Plan

      - Out-of-Pocket Max:      None

  - Prescription Drug Cost Sharing

    - Retail:    $10 Generic/ $20 Formulary Brand/ $40 Non-formulary Brand

    - Mail:      $20 Generic/ $45 Formulary Brand/ $90 Non-formulary Brand

    - Out-of-network cost sharing is higher

- Mandatory generic, maintenance at mail and utilization management provisions apply

o Monthly Contributions for Medical/Prescription Drug Coverage

- Employee: $ ~~85~~65

- Employee + Spouse: $~~170~~130

- Employee + Child(ren): $~~160~~125

- Employee + Family $~~240~~180

o Other affordable health plan designs may be offered in the future.

- Dental – Not provided

- Vision – Not provided

# APPENDIX C - NON-EXCLUSIVE

## LIST OF AGREEMENTS THAT WILL BE ELIMINATED

- The letter dated July 13, 1998 and February 20, 2001 from Ralph E. Handley to Jim Beardsley regarding an employment floor at the Delphi Flint East Plant.

- The letter dated July 21, 2004 from Kevin M. Butler to Richard Shoemaker regarding Delphi's commitment, with GM's support, to develop and implement a plan that would, in part, maintain business that would support an ongoing employment level of at least 3,000 people at the Flint East plant.

- The "Memorandum of Understanding, Job Security for Skilled Trades Employees", dated March 27, 1985, between UAW Local 662 and Delco Remy Division, Anderson, Indiana.

- The "Memorandum of Understanding" dated March 27, 1985, between UAW Local 662 and Delco Remy Division, Anderson, Indiana guaranteeing the commitment in the Memorandum of Understanding on Job Security for Skilled Trades Employees on behalf of Delco Remy Division in the event the job security provisions of the GM-UAW National Agreement are not applicable or if the program is discontinued.

- The "Memorandum of Understanding" dated September 13, 1988 between UAW Local 662 and Delco Remy Division, Anderson, Indiana applying the provisions of the "Memorandum of Understanding – Job Security for Skilled Trades Employees" dated March 27, 1985 to temporary layoff situations with certain exclusions.

- The "Oxygen Sensor Manufacturing Site Commitment" from 1999 local negotiations between UAW Local 2157 and Delphi Energy & Chassis Systems, Wichita Falls, Texas.

- The understanding between the local parties from 1987 Local Negotiations at Delphi Energy and Chassis Division (then Rochester Products Division) – Rochester, New York that the Machinist classification at the (now) E&C Rochester plant would only be reduced by normal attrition or other voluntary attrition methods.

- The resolution of Local Demand 42 dated October 14, 1992 between UAW Local 167 and (then) AC Rochester Division, Grand Rapids, Michigan, obligating the Corporation to bring tooling work in-house rather than placing Tool and Die Makers in the JOBS Bank.

- The resolution of 1993 Local Demand 34 ("General Maintenance") between Local 167 and Delphi Energy & Chassis Division, Grand Rapids, Michigan, obligating the Corporation to retain a cleaning crew of eleven (11) employees in the event of a permanent reduction in force.

- The "Automotive Volume Calculation Formula", dated June 6, 1989 and subsequently incorporated into the 1990 local agreement between UAW Local 438 and the (then) Delco Electronics plant at Oak Creek (Milwaukee), Wisconsin, and any subsequent modifications thereto.

- The "MOU on New Work" dated November 7, 2003 at the Delphi Thermal & Interior plant in Adrian, Michigan.

- The answer to Demand P-25 between UAW Local 686 and Delphi Thermal Systems – Lockport, New York, dated February 14, 2000, related to process requirements for spot buy situations.

- The answer to Demand P-29 between UAW Local 686 and Delphi Thermal Systems – Lockport, New York, dated February 20, 2000.

- The answer to Demand S-16 between UAW Local 686 and Delphi Thermal Systems – Lockport, New York, dated February 9, 2000.

- The combined answer to Demands S-23 and S-25 between UAW Local 686 and Delphi Thermal Systems – Lockport, New York, dated February 20, 2000.

- The answer to Demand S-30 between UAW Local 686 and Delphi Thermal Systems – Lockport, New York, dated February 20, 2000.

- The "Memorandum of Understanding – Model Shop" dated November 1, 2002 between UAW Local 686 and Delphi Harrison Thermal Systems – Lockport, New York, -- "Additional Understandings Model Shop, Engineering Test, and Garage and Tunnel, all dated November 1, 2002".

- The "Memorandum of Understanding – Engineering Test" between UAW Local 686 and Delphi Thermal Systems – Lockport, New York, dated November 1, 2002.

- The following agreements between UAW Local 686 and Delphi Thermal Systems – Lockport, New York, regarding definitions of work to be regarded as normal and historical work for certain skilled trades classifications,  dated November 1, 2002:

    o "Model Maker – Normal and Historical"
    o "Experimental Engineering Test Technician (J-132) Normal & Historical (Includes all product testing of products to be built at Delphi Thermal's Lockport Facility)"
    o "Garage Mechanic – Normal & Historical"
    o "Tunnel Operator – Normal & Historical"

- The answer to Demand G-2 between UAW Local 686 and Delphi Thermal Systems – Lockport, New York, dated September 4, 2004, regarding award work content for the GMT-900 program to the Lockport plant.

- The answers to Demands P-1, P-2 and P-3 dated July 23, 2004 between Delphi
  Thermal Systems, Lockport, New York and UAW Local 686.

- The "Settlement Agreement" dated November 1, 1994 between Saginaw Division,
  Alabama Site, General Motors Corporation and UAW Local 2195.

- Unpublished Letter – "Voluntary Indefinite Layoff" dated September 13, 2003
  between Delphi AHG – Athens, Alabama plant and UAW Local 2195.

- Grievance settlement between Delphi E&C – Grand Rapids plant and UAW Local
  167 that would require insourcing of "blueprint tooling" in lieu of laying off
  Toolmakers and retention of a 12-person plant clean-up crew.

- The settlement of Appeal Case Y-71 (Grievance S28510) at the Delphi E&S –
  Milwaukee plant.

- The settlement of Management Initiative MI-11, dated October 12, 1999 at the
  Delphi E&C – Milwaukee plant.

- The resolution (for the Minutes Only) of 1999 Demand 22 at the Delphi E&C –
  Rochester plant.

- The resolution dated April 28, 2000 to 1999 Demand 197 at the Delphi E&C –
  Rochester plant.

- The resolution dated August 10, 2005 to 2003 Demand 65 at the Delphi E&C –
  Rochester plant.

- The resolution dated February 7, 2004 to 2003 Demand 96 at the Delphi E&C –
  Rochester plant.

- The "Unpublished Minutes" dated October 27, 2003 regarding subcontracting at the
  Delphi E&C – Saginaw plant.

- The Unpublished Letter regarding multiple starting times, paid lunch periods and
  overtime in Department 9893 at the Delphi E&S – Kokomo plant.

- The Unpublished Memorandum of Understanding regarding paid lunches on
  Christmas and Thanksgiving Day, and any similar understanding from 1999 local
  negotiations, at the Delphi E&S – Kokomo plant.

- The document "Issue Resolved 11/13/02" dated December 6, 2002 at the Delphi
  E&S – Kokomo plant.

- The settlement of Grievance #59715 dated March 28, 1979 at the Delphi E&S –
  Kokomo plant concerning scheduling of gang leaders.

- The "Grievance Settlement" and "Statement for the Minutes" dated September 30, 2003 at the Delphi E&S – Kokomo plant concerning representation during disciplinary interviews.

- The resolution "I.S.O. 17025 Certification" dated December 1, 2003 at the Delphi E&S – Kokomo plant.

- The Memorandum of Understanding dated February 13, 2004 at the Delphi E&S – Kokomo Plant regarding full utilization of skilled trades employees.

- The "Memorandum of Understanding – Model Shop" dated March 12, 2004 at the Delphi E&S – Kokomo Plant.

- The resolution of Demand 60 "Skilled Headcount" dated March 12, 2004 at the Delphi E&S – Kokomo Plant.

- The "Memorandum of Understanding – Skilled Trades – Apprentice Headcount", dated March 15, 2004 at the Delphi E&S – Kokomo plant.

- The "Memorandum of Understanding on Transitional Work Program" dated December 20, 2004 between the Delphi E&S – Milwaukee plant and UAW Local 438

- The "General Stores Call-In Guidelines" dated August 3, 1995 and the earlier "General Stores Call-In Guidelines" dated February 5, 1992 at the Delphi E&S – Milwaukee plant.

- The grievance settlement dated August 23, 1979 at the Delphi T&I – Adrian plant that requires scheduling a crib attendant when twelve (12) or more skilled trades employees are working.

- The settlement of 2003 Demand G-49 dated November 8, 2004 at the Delphi T&I – Lockport plant.

- The settlement of 2003 Demand H&S P-2 dated November 8, 2004 at the Delphi T&I – Lockport plant.

- The settlement of Demand G-57 dated July 23, 2004 at the Delphi T&I – Lockport plant.

- The settlement of Demand P-27 dated February 20, 2000 at the Delphi T&I – Lockport plant.

- The settlement of Demand P-3 dated July 23, 2004 at the Delphi T&I – Lockport plant.

- The settlement of Demand P-32 dated November 8, 2004 at the Delphi T&I – Lockport plant.

- The Memorandum of Understanding – "Central Fab & Construction" dated September 19, 1999 between the Delphi Saginaw Steering Systems – Saginaw plant and UAW Local 699.

- The "Memorandum of Understanding – Volume Related Layoff" dated October 12, 2001 at the Delphi Saginaw Steering Systems – Saginaw plant.

- The "Cooperative Agreement Between Management and Union – Non-Traditional Assignments of UAW Local 699 Members" dated September 13, 2002 at the Delphi Saginaw Steering Systems – Saginaw plant..

- The Memorandum of Understanding – "Delphi Saginaw Steering Systems Process Development Laboratory (PDL)", dated April 25, 2001 at the Delphi Saginaw Steering Systems – Saginaw plant.

- The Memorandum of Understanding – "Delphi Saginaw Steering Systems – Prototype Operations Factory", dated September 2, 1997 at the Delphi Saginaw Steering Systems – Saginaw plant.

- The Memorandum of Understanding – "Site Maintenance" dated December 9. 2002, at the Delphi Saginaw Steering Systems – Saginaw plant.

- The "Memorandum of Understanding – Tool and Die Maker Concerns" dated April 22, 2003 at the Delphi Saginaw Steering Systems – Saginaw plant.

- The "Memorandum of Understanding", dated February 15, 2002 concerning voluntary layoffs at the Delphi Saginaw Steering Systems – Saginaw plant.

**PROPOSED MODIFICATIONS TO THE IUE-CWA-DELPHI AGREEMENTS
PURSUANT TO BANKRUPTCY CODE § 1113(c)
AND
PROPOSED MODIFICATIONS TO RETIREE WELFARE BENEFITS
PURSUANT TO BANKRUPTCY CODE § 1114**

This term sheet sets forth the proposals of Delphi Corporation ("Delphi" or the
Corporation") for modifications pursuant to Section 1113(c) of the U.S. Bankruptcy Code
to the IUE-CWA-National Agreements and IUE-CWA Local Agreements, both as
defined below, between the International Union of Electronic, Electrical, Salaried,
Machine and Furniture Workers-Communications Workers of America, and/or its Local
Unions   ("IUE-CWA") and Delphi, and for modifications to retiree welfare benefits,
pursuant to Section 1114 of the U.S. Bankruptcy Code for Delphi's existing retirees,
surviving spouses and dependents  (collectively "Retirees).

| General Provisions | |
| --- | --- |
| **IUE-CWA-Delphi Agreements** | The term "IUE-CWA-Delphi Agreements" shall mean both the IUE-CWA National Agreements and the IUE-CWA Local Agreements as defined below. |
| **IUE-CWA-National Agreements** | The term "IUE-CWA-National Agreements" shall mean the following:<br><br>• The Agreement Between Delphi Corporation and the IUE-CWA, dated November 16, 2003 (the "IUE-CWA-Delphi National Agreement");<br><br>• The Supplemental Agreement Covering Pension Plan, Exhibit A to Agreement between Delphi Corporation and IUE-CWA, dated November 16, 2003;<br><br>• The Supplemental Agreement Covering Life and Disability Benefits Program, Exhibit B to Agreement between Delphi Corporation and IUE-CWA, dated November 16, 2003;<br><br>• The Supplemental Agreement Covering Health Care Program, Exhibit C to Agreement between Delphi Corporation and IUE-CWA, dated November 16, 2003;<br><br>• The Supplemental Agreement Covering Supplemental Unemployment Benefit Plan, Exhibit D to Agreement between Delphi Corporation and IUE-CWA, dated November 16, 2003; |

| | |
|---|---|
| | • The Supplemental Agreement Covering Guaranteed Income Stream Benefit Program, Exhibit E to Agreement between Delphi Corporation and IUE-CWA, dated November 16, 2003 |
| | • The Supplemental Agreement Covering Profit Sharing Plan, Exhibit F to Agreement between Delphi Corporation and IUE-CWA, dated November 16, 2003; |
| | • The Supplemental Agreement Covering Personal Savings Plan, Exhibit G to Agreement between Delphi Corporation and IUE-CWA, dated November 16, 2003; |
| | • The Supplemental Agreement Covering IUE-CWA - Delphi Legal Services Plan, Exhibit I to Agreement between Delphi Corporation and IUE-CWA, dated November 16, 2003; |
| | • The "Memorandum of Understanding Regarding Pension and Other Matters Concerning the Employment of GM Employees with Delphi Automotive Systems" dated December 1, 1998; |
| | • Memorandum of Understanding – IUE-CWA Automotive Conference Board – Joint Programs dated January 4, 2005 concerning payment of wages and benefits for five (5) IUE-CWA staff members from Joint Funds; |
| | • The unpublished Excerpt from the Minutes dated November 15, 2003 concerning development of a viable business represented by IUE-CWA Local 1111; and |
| | • Any and all other agreements, supplements, appendices, documents, memoranda, letters, minutes and understandings, published and unpublished, between Delphi Corporation and the IUE-CWA. |
| **IUE-CWA Local Agreements** | The term "IUE-CWA Local Agreements" shall mean the following:<br><br>• The agreements between Delphi Automotive Holdings Group – Anaheim (Ontario), California and IUE-CWA Local 1111 |

|  |  |
|---|---|
|  | • The agreements between Delphi Automotive Holdings Group – Kettering, Ohio and IUE-CWA Local 755 |
|  | • The agreements between Delphi Automotive Holdings Group – Moraine, Ohio and IUE-CWA Local 801 |
|  | • The agreements between Delphi Automotive Holdings Group – New Brunswick, New Jersey and IUE-CWA Local 416 |
|  | • The agreements between Delphi Packard Electric – Brookhaven, Mississippi and IUE-CWA Local 718 |
|  | • The agreements between Delphi Packard Electric – Clinton, Mississippi and IUE-CWA Local 698 |
|  | • The agreements between Delphi Packard Electric – Warren, Ohio and IUE-CWA Local 717 |
|  | • The agreements between Delphi Packard Electric – Gadsden, Alabama and IUE-CWA Local 711 |
|  | • The agreements identified in Appendix C; and |
|  | • Any and all other agreements, supplements, appendices, documents, memoranda, letters, minutes and understandings, published and unpublished, between Delphi and the IUE-CWA local unions. |
| **Effective Date** | The IUE-CWA-Delphi Agreements, as modified by this Term Sheet, shall become effective on January 1, 2006 (the "Effective Date"). |
| **Duration** | The IUE-CWA-Delphi Agreements, as modified by this Term Sheet, shall continue in effect until 11:59 p.m. on January 1, 2012, subject to the modification and termination provisions of Paragraphs (107) and (108) of the IUE-CWA-Delphi National Agreement. |
| **Wages and Related Provisions** ||
| **Base Wage Rates** | All base hourly wage rates under the IUE-CWA-Delphi Agreements shall be modified as set forth in Appendix A: |
|  | • Paragraphs (61), (61)(1), (61)(2), (61)(3), (61)(4), (61)(5), (61)(6), (61a), (61b), (61c), (61d), (62), (65b), (65e), (63), (63a), (64), (77), (78), (83), and the Apprentice T-Rate Table in the Standard Apprentice Plan, Section 8 of the Contract |

|  | Settlement Agreement of the IUE-CWA-Delphi National Agreement and other references related to wage schedules, rates, general increases, performance bonuses, tool and other allowances in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• All payroll drafts and EFT's will be dated on Friday. |
|---|---|
| **COLA** | There will be no Cost of Living Allowance (COLA).<br><br>Paragraphs (65d), (65f), (65g), (65h), (65i), (65k), (65l), Document 11 of the IUE-CWA-Delphi National Agreement will be deleted, and all other references to COLA in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| **Overtime** | The overtime provisions of the IUE-CWA-Delphi Agreements shall be modified as follows:<br><br>• All overtime shall be payable at time and one half, irrespective of the day of the week in which the time is worked.<br><br>• Overtime shall be payable only after the employee has worked 40 hours in a pay period. For purposes of this provision, hours paid as vacation and holiday pay shall be counted toward the 40-hour requirement.<br><br>• Paragraphs (48), (49), (51)(a), (51)(b), (52)(a), (52)(b), (52)(c), (53), (54), (54)(1), (54)(2), (54)(3), (54)(4), (54)(5), (54)(6), (102c), Document 1 of the IUE-CWA-Delphi National Agreement will be deleted, and all other references to computing overtime premium pay in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>The amount and nature of any overtime to be worked shall be determined at the sole discretion of the Corporation. Any and all provisions of the IUE-CWA-Delphi Agreements or Local Agreements that purport to require overtime, or to limit management discretion to determine overtime requirements, shall be deleted.<br><br>All voluntary overtime provisions of the IUE-CWA-Delphi Agreements shall be eliminated. |

| Shift Premiums | All existing shift premiums under the IUE-CWA-Delphi Agreements shall be paid at five percent (5%) of the applicable base hourly rate, according to the following schedule: |
|---|---|

| Schedule Shift Starting Time | Amount of Regular Shift Premium |
|---|---|
| (1) On or after 11:00 a.m. and before 5:00 a.m. | Five percent |
| (2) On or after 5:00 a.m. and before 11:00 a.m. | None |

|  | Paragraph (56) and all other references to existing shift premiums in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
|---|---|

### Holidays, Vacation and Benefits

| Holidays | On the Effective Date, the number of Corporation-paid holidays under the IUE-CWA-Delphi Agreements will be reduced to ten (10) days per year. Delphi and the IUE-CWA shall mutually agree on what the ten paid holidays will be.<br><br>Paragraphs (102), (102e), (102f), (102f)(1), (102f)(2), (102f)(3), (102)(4), (102h), (102l) Document 46 and Document 66 of the IUE-CWA-Delphi National Agreement will be deleted and all other references to the Christmas Holiday Period in other provisions and/or associated documents and associated Supplemental Agreements will be eliminated. |
|---|---|
| Independence Week | The Corporation-paid Independence Week holiday will be eliminated.<br><br>• At its discretion, annually, the Corporation may designate the week in which the Independence Day holiday falls as a mandatory vacation period.<br><br>• Employees will use Vacation Entitlement hours, if available, or be granted an unpaid leave of absence for such mandatory vacation period.<br><br>Paragraphs (101u), (101u)(1), (101u)(2), (101u)(3), (101u)(3)(a), (101u)(3)(b), (101u)(3)(c), (101u)(4), (101u)(5)(a), (101u)(5)(b), |

| | |
|---|---|
| | (101u)(5)(c) of the IUE-CWA Delphi National Agreement will be deleted and all other references to Independence Week in the IUE-CWA-Delphi Agreements will be eliminated. |
| **Vacation Accrual** | Paragraph (101g) of the IUE-CWA-Delphi National Agreement will be deleted, and all other references to vacation entitlement hours in other provisions and/or associated documents and all associated IUE-CWA-Delphi Agreements will be modified to reflect the following vacation accrual schedule:<br><br>Effective January 1, 2006, vacation accrual rates shall be as follows:<br><br><table><tr><th>For an Eligible Employee with Seniority of:</th><th>Hours of Vacation Entitlement</th></tr><tr><td>Less than one year</td><td>40</td></tr><tr><td>One but less than three years</td><td>60</td></tr><tr><td>Three but less than five years</td><td>80</td></tr><tr><td>Five but less than ten years</td><td>100</td></tr><tr><td>Ten but less than 15 years</td><td>120</td></tr><tr><td>Fifteen but less than 20 years</td><td>140</td></tr><tr><td>Twenty or more years</td><td>160</td></tr></table> |
| **Profit Sharing** | Applicable terms and conditions of Supplemental Agreement Covering Profit Sharing Plan, Exhibit F, shall continue to apply except as follows:<br><br>• Only "U.S. Operations", as defined under the 2003 Supplemental Agreement, Exhibit F, shall be included in any future calculation of profit sharing amounts.<br><br>• The following Letter Agreements shall be eliminated:<br><br>    o Improving Benefit Services Through Technology; and<br><br>    o Benefits Training and Education.<br><br>All local agreements that concern any profit sharing benefits, plans, options or practices shall be eliminated. |

| Health Care | Applicable terms and conditions of Supplemental Agreement Covering Health Care Program, Exhibit C, and all local agreements that concern any health care benefits, plans, options or practices shall be modified or eliminated to discontinue current health care options and replace them with the health care plan generally described in Appendix B. |
|---|---|

- Appropriate modifications and deletions will be made to applicable Exhibits, Articles and Appendices of Exhibit C to conform to the monthly contribution, cost sharing, dependent eligibility, scope and level of benefits, coordination of benefits, utilization management and other provisions contemplated by Appendix B.

- Applicable sections of Article III of Exhibit C-1 concerning continuation of health care coverage while not actively at work will be modified to provide for up to a maximum of seven (7) months of continuation following the month the employee is last in active service.

- Article V concerning the Special Benefit will be eliminated.

- Item 13 of the Contract Settlement Agreement shall be eliminated.

- All Miscellaneous Health Care Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the health care plan described in Appendix B. Specifically, the following Documents and Letters shall be deleted:

  o Statement of Intent (Representation).

  o Understandings with respect to the following:

    - Dental Coverage;

    - Vision Coverage;

    - Utilization Review and Cost Containment;

    - Employee Contributions - Health Maintenance Organizations(HMOs), and Alternative Dental and Vision Options;

    - Supplemental Methodology for Review of Health Maintenance Organizations (HMOs)

|  | and Alternative Dental and Vision Options; and<br><br>▪ Health Care - HMO<br><br>○ Letters of Agreement Regarding the following subjects:<br><br>    ▪ Informed Choice Plan (General);<br><br>    ▪ Pharmacy Quality and Safety Components;<br><br>    ▪ Preferred Provider Organizations;<br><br>    ▪ Improving Benefit Services Through Technology;<br><br>    ▪ Benefits Training and Education;<br><br>    ▪ Community Initiatives;<br><br>    ▪ Vision Network;<br><br>    ▪ Preferred Dental Provider Arrangement;<br><br>    ▪ Fertility Services;<br><br>    ▪ Health Care Communication Strategy;<br><br>    ▪ Mental Health and Substance Abuse Coverage;<br><br>    ▪ Traditional Care Network;<br><br>    ▪ Rolling Enrollment and Assignment of Options.<br><br>• Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to providing the health care plan and shall be modified or eliminated as appropriate. |
|---|---|
| **Life and Disability** | Applicable terms and conditions of Supplemental Agreement, Exhibit B and all local agreements that concern any Life & Disability benefits, payments or practices shall be modified or eliminated to: |

- Limit Sickness & Accident benefits to a maximum of 26 weeks of disability;

- Allow the determination of total disability, for purposes of benefit eligibility and payment, to be made by the disability administrator;

- Eliminate the Impartial Medical Opinion (IMO) program;

- To make available directly from the Insurance Program, on an employee self-pay basis, Extended Disability Benefits for a maximum of 36 months of disability at an amount determined in accordance with Schedule I of the table found in Art. II, 5 of Exhibit B;

- To reduce S&A/EDB payable to current and future recipients to an amount proportionate to the new wage rates;

- To provide active employees with $30,000 of Basic Life Insurance. Survivor Income Benefit Insurance and Extra Accident Insurance shall be eliminated; and

- To limit continuation of Life Insurance while not actively at work to a maximum of 6 months after the month following the month the employee was last in active service.

All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted:

- Statement of Intent (Representation);

- Improving Benefit Services Through Technology;

- Benefits Training and Education;

- IMO Letter; and

- Reinstated S&A Letter.

Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the program described above and shall be modified or eliminated as appropriate.

| Job Security and Severance | |
|---|---|
| **Right to Sell, Close or Consolidate** | Document 63 of the IUE-CWA-Delphi National Agreement, and all related provisions of the existing agreements, National and/or Local, that inhibit the Corporation's ability to close, or partially or wholly sell, spin-off, split-off, consolidate or otherwise dispose in any form any plant, asset or business unit of any type shall be eliminated.<br><br>In the event the Corporation sells a facility, it shall use its best effort to obtain the purchaser's agreement to hire existing Delphi employees at the facility. |
| **Successorship** | Document 7 of the IUE-CWA-Delphi National Agreement, and all related provisions of the existing agreements, national and/or local, that would require a purchaser of Corporation facilities to assume the existing collective bargaining agreements shall be eliminated. |
| **Elimination of Protected Status (JOBS Bank)** | Appendix D, Documents 4 and 65 of the IUE-CWA -Delphi National Agreement and all related provisions of the existing agreements shall be eliminated, including but not limited to the following:<br><br>• The unpublished Excerpt from the Minutes dated November 15, 2003 concerning development of a viable business represented by IUE-CWA Local 1111;<br><br>• The Letter dated July 15, 1996 from J. T. Reynolds to W. Thorpe, D. Owens, D. Campbell and C. Collins, regarding maintenance of a minimum active employment level of 1,500 until 2011 at the Delphi AHG – Moraine plant, and Delphi-IUE-CWA Umpire Decision Z-1 affirming this obligation; and<br><br>• The Memorandum of Understanding dated September 28, 2002 between Delphi AHG-Kettering and IUE-CWA Local 755 regarding Project Vortex, employment targets and commitments regarding closure or sale of the Delphi AHG Kettering plant.<br><br>The Corporation shall have the right immediately to lay off all employees on Protected Status (JOBS Bank) or who are otherwise in excess of operational requirements. |

| | |
|---|---|
| **Hiring Requirements** | All hiring requirements accrued as of the Effective Date of this agreement will be canceled.  All provisions of the National or Local Agreements that would impose ongoing or future hiring requirements or obligations will be eliminated, including apprentices under Document 80 of the IUE-CWA-Delphi National Agreement. |
| **Need to Run Employment Levels** | The Corporation shall have sole discretion to determine the number of employees required at each facility, and to lay off or release employees who are unnecessary to the operation.  All employment security, income security or other provisions of the existing agreements, National and/or Local, that restrict this right, shall be eliminated. |
| **Hiring** | If employees are required, it will be solely at Delphi's discretion to add a new hire or a temporary employee.

During the course of an attrition program or in the event of an insufficient number of employees, the Corporation will meet and confer with the Union to discuss the use of contract service personnel. |
| **Relocation Allowance** | On a case-by-case basis, Delphi employees transferring from a Delphi plant to a Delphi plant may be eligible for Relocation Allowance based on actual expenses incurred, up to a maximum of $10,000. |
| **Outsourcing** | Appendix F, Documents 6, 82, and 84 of the IUE-CWA-Delphi National Agreement and all other related provisions of the existing Local and National Agreements that restrict the Corporation's right to source work, shall be eliminated. |
| **Severance Pay** | The Corporation will discuss implementation of affordable severance pay provisions for employees who are no longer required with no prospect of recall in the foreseeable future. |
| **Indirect Employees** | The Corporation shall have sole discretion to determine the type and number of non-production employees required at each facility, and the work to be assigned to such employees.

Paragraph (70), Appendix B, and Document 79 of the IUE-CWA-Delphi National Agreement and all other references restricting the Corporation's discretion in this matter in other provisions and/or associated documents and all associated Supplemental Agreements, National and Local, will be eliminated. |

Paragraphs (86c), (86d) and Appendix A of the IUE-CWA-Delphi National Agreement and all other provisions and/or associated documents and all associated Supplemental Agreements, National and Local, will be modified to refer only to core activities that directly support production activities.

Full utilization of skilled trades will apply only to core activities which directly support production operations and/or the maintenance and repair of plant equipment, and which can be performed competitively and within the required time frame. All other non-core skilled trades work will be outsourced or subcontracted, such as but not limited to:

- Tool and equipment build;

- Machine re-build;

- Building and facilities maintenance;

- Truck repair;

- Carpentry and painting;

- HVAC installation and repair;

- Telephone and IT equipment installation and support; and

- Construction and rearrangement of facilities.

An affected trade that is scheduled to work 40 hours per week will be considered "fully utilized". Any monetary claims related to full utilization will be limited to the number of hours of work allegedly lost to the bargaining unit.

Indirect activities, both skilled and non-skilled, which are not competitive or which are not required for immediate support of production activities will be outsourced, contracted or eliminated, such as but not limited to:

- Snow removal;

- Janitorial services;

- Yard maintenance; and

- Crib support.

| Supplemental Unemployment Benefits | The Supplemental Agreement Covering Supplemental Unemployment Benefit Plan, Exhibit D, shall be eliminated. Any local agreements concerning Income Security plans, benefits, payments or practices shall be modified to close the plan to new participants and eliminate any future Corporation contributions to individual accounts. |
|---|---|
| Guaranteed Income Stream Benefits | The Supplemental Agreement Covering Guaranteed Income Stream Benefit Program, Exhibit E shall be eliminated. |
| Temporary Employees | Appendix E, IX will be modified as follows:<br><br>The Corporation, at its discretion, may hire temporary employees. |

## Other Provisions

| Attendance | The Corporation's attendance policies shall be revised as follows:<br><br>• The Corporation may implement a no-fault attendance policy under which all employee absence/tardiness are tracked including leaves of absence. After reaching defined thresholds, the employees will be subject to automatic, non-grievable corrective disciplinary action, ultimately leading to discharge. The program will also have a mechanism for reducing further disciplinary action based on improved attendance.<br><br>• All restrictions on the Corporation's administration, including any Local Agreements or Understandings, of the Family and Medical Leave Act shall be eliminated.<br><br>• Document 13 of the IUE-CWA-Delphi National Agreement will be deleted, and all other references to attendance and Family and Medical Leave Act policies in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• The Corporation may reduce vacation pay and holiday pay by the same percentage as an employee's absence rate during scheduled work hours during the previous year, including time on leave. |
|---|---|

| Subsidized Discount Programs | Any agreements, national and/or local, that require expenditures by Delphi for personal items shall be eliminated, such as but not limited to: <br><br> • Company-paid health club memberships; <br><br> • Discount programs subsidized by Delphi such as AOL; and <br><br> • Clothing allowances. |
|---|---|
| **IUE-CWA Representation and Support** ||
| JAC Funding and Joint Fund Accruals | Item 16 (Contract Settlement Agreement) of the IUE-CWA-Delphi National Agreement will be deleted. The level of participation in the programs, services and related activities formerly funded by these provisions will be at the discretion of the Corporation, and any costs incurred for these will be the responsibility of Delphi Corporation. <br><br> Documents 21, 25, 33, 55, 57, 60, 62, 73 and 74 of the IUE-CWA-Delphi National Agreement, Memorandum of Understanding- IUE-CWA Automotive Conference Board – Joint Programs dated January 4, 2005,  and other references to education, training, and development in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.  Document 56 of the IUE-CWA-Delphi National Agreement – Child and Elder Care referral services, the Homework Hotline, and any subsidy for any child care center usage will also terminated. |
| Legal Services | The Supplemental Agreement Covering IUE-CWA-Delphi Legal Services Plan, Exhibit I, of the IUE-CWA-Delphi National Agreement, shall be eliminated. |
| Quality Network | Document 20 of the IUE-CWA-Delphi National Agreement and all other references to Quality Network in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.  The Quality Network Process will be merged with the Delphi Manufacturing System. |
| Union Representation | The union representation provisions of the IUE-CWA-Delphi Agreements shall be revised as follows: <br><br> • The number of Union representatives of all kinds (including but not limited to district, zone, chairperson, benefit, health & |

|  | safety, special skilled trades, etc.) will be based on a ratio of 1:250. Plants with 200-750 employees will have a total of three (3) representatives. Operating plants with fewer than 200 employees will have a total of two (2) representatives. Closed plants will have no representatives when the population drops below 50.<br><br>• Union representatives will be scheduled to work overtime for representation purposes only when the 15 or more employees they represent are working overtime on the representative's scheduled shift and no other representatives, including district or zone committeemen, are otherwise available on straight time.<br><br>• Joint program representatives, including those "special assigned" employees assigned to the Corporation, Divisions and/or agreed to at the plant level, shall be eliminated.<br><br>• Paragraphs (8), (10), (20), (20)(2), Sections III, VI(a), and VI(b) of Document 2, and Document 43 of the IUE-CWA-Delphi National Agreement will be deleted, and all other references to the number of union representatives, paid time for union representatives, and/or overtime for union representatives in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>Statement of Intent (Representation) shall be eliminated from all applicable Supplemental Agreements. |
|---|---|
| **Neutrality Letter** | The neutrality letter shall be eliminated. |
| **No-Strike Provisions** | No strikes, work stoppages or slowdowns shall be permitted during the term of the IUE-CWA-Delphi Agreements as modified by this Term Sheet.<br><br>Paragraphs (98), (99), and (100) of the IUE-CWA-Delphi National Agreement and other references to strikes in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| **Personal Savings Plan** | Applicable terms and conditions of Supplemental Agreement – Personal Savings Plan, Exhibit G, shall continue to apply except that all local agreements that concern any defined contribution plans or practices shall be eliminated. |

| | |
|---|---|
| | In addition, all Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted:<br><br>• Improving Benefit Services Through Technology, and<br><br>• Benefits Training and Education<br><br>Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the plan described above and shall be modified or eliminated as appropriate. |
| **Hourly-Rate Employees Pension Plan** | Applicable terms and conditions of Supplemental Agreement Covering Pension Plan, Exhibit A, and all local agreements that concern any pension and defined contribution plans, benefits, payments or practices shall be eliminated or modified as follows:<br><br>• Freeze the Delphi Hourly-Rate Employees Pension Plan (HRP) effective January 1, 2006;<br><br>• As of the freeze date, HRP participants will accrue no additional credited service for purposes of calculating their benefits;<br><br>• As of the freeze date, no new participants will be allowed to join the HRP;<br><br>• As of the freeze date, the HRP will be amended to eliminate any benefits that are not protected by ERISA, including the Special Benefit; and<br><br>• Implement a new defined contribution benefit for future accruals, where appropriate.<br><br>All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted:<br><br>• Statement of Intent (Representation);<br><br>• Improving Benefit Services Through Technology;<br><br>• Benefits Training and Education; |

| | |
|---|---|
| | • Lump-Sum Payment;<br><br>• Social Security; and<br><br>• Total and Permanent Disability – Return to Work.<br><br>Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the HRP described above and shall be modified or eliminated as appropriate. |
| **Potential Termination of Hourly Rate Pension Plan** | The Corporation reserves the right while in Chapter 11 to seek a distress termination of the HRP in the event that it determines that it cannot maintain the HRP under the applicable legal standards for such a termination. The Corporation shall make this decision based on (1) updated financial forecasts during the Chapter 11 case; and (2) the Corporation's ability to fund the HRP. |
| **Defined Contribution Pension Plan** | For all employees hired on or after the effective date of a termination of the Hourly-Rate Employees Pension Plan (each such employee, a "New Hire"), the Corporation shall contribute 3% of each New Hire's Earnings to a defined contribution plan for the benefit of such New Hire employees.<br><br>For purposes of this provision, Earnings shall be defined as base hourly wage for hours worked, not to exceed 40 hours per week. |
| **Other Post-Employment Benefits OPEB** | |
| **Health Care- Active Employees and Retirees)** | Applicable terms and conditions of Supplemental Agreement, Covering Health Care Program, Exhibit C and all local agreements that concern any post-employment health care benefits, plans, options or practices shall be modified to eliminate any obligation the Corporation may have to provide active employees and Retirees with Corporation contributions for and access to the Delphi Corporation Health Care Program for Hourly Employees during retirement. |
| **Retiree Life Insurance (Active Employees)** | Applicable terms and conditions of Supplemental Agreement, Covering life and Disability Benefits Program, Exhibit B and all local agreements that concern any post-employment life insurance benefits, plans, options or practices shall be modified to eliminate all employer-paid life insurance, including Basic Life Insurance, Survivor Income Benefit Insurance and Extra |

| | |
|---|---|
| | Accident Insurance, in retirement. Retirees may continue any employee-paid coverages for which they were enrolled at the point of retirement. |
| **Retiree Life Insurance (Retirees)** | All life insurance coverage including Basic Life Insurance, Survivor Income Benefit Insurance and Extra Accident Insurance for Retirees shall be eliminated. Retirees will be allowed to continue any employee-paid coverages for which they are enrolled. |

| **Local Agreements** | |
|---|---|
| **Effect on Local Agreements** | The IUE-CWA- National Agreements, as modified by this Term Sheet, shall supersede and control all Local Agreements between the IUE-CWA local units and Delphi or any of its divisions. <br><br> Upon execution of this Term Sheet by the national parties, any provisions of the Local Agreements which are inconsistent with this Term Sheet shall be deemed to have been eliminated, and the Corporation's proposals to modify such Local Agreements shall be deemed withdrawn as moot. <br><br> A non-exclusive list of agreements that will be eliminated is attached as Appendix C. |
| **Competitive Operating Agreements** | Within 90 days following ratification of this Term Sheet, the Local Agreements will be revised, pursuant to local negotiations, to (1) reflect the provisions of this Term Sheet, and (2) adopt a Competitive Operating Agreement. <br><br> The Competitive Operating Agreements will address, but not be limited to, issues such as: <br><br> • Number of classifications, and efficient use of both production and skilled trades employees; <br><br> • Frequency of employee movement, including freezing transfers during product launches; <br><br> • Overtime equalization practices that are cumbersome, inefficient and/or non-competitive; and <br><br> • Local practices and work rules that are non-competitive, |

| | |
|---|---|
| | including but not limited, to the elimination of all forms of pay for time not worked (e.g., wash-up time, early quits). |
| **Local Innovation** | The Corporation may seek, and IUE-CWA Local Unions may agree to other changes that are justified by local competitive conditions or necessary to make local operations viable:<br><br>• Locally competitive wage rates and/or benefit plans – subject to National Party approval.<br><br>• Alternative Work Schedules<br><br>The following alternative work schedules are pre-approved and available for local use with no overtime payable for the first 40 hours worked each week.<br><br>   o  3-Crew, 2-Shift<br><br>   o  4-Crew, 2-shift<br><br>   o  Four days x ten hours<br><br>   o  Weekend crew<br><br>• The Local Parties may develop other work schedules to meet particular local requirements, subject to approval by the Corporation and the International Union. |
| **Living Agreement Provisions** | All IUE-CWA-Delphi agreements that do not have an expiration date shall be amended to expire coterminously with the National Agreement. |
| **Miscellaneous Provisions** | |
| **Definitive Documentation** | This Term Sheet is intended only to describe the basic modifications to the current IUE-CWA-Delphi Agreement that are necessary for the reorganization of the Corporation under Section 1113(c) of the Bankruptcy Code, and is not intended to constitute final contract language. The parties agree that they will draft final contract language, and execute the 2005 IUE-CWA-Delphi Agreement, within 60 days of the execution of this term sheet. The parties further agree that in drafting final contract language, they will eliminate or modify any provisions of the current IUE-CWA-Delphi Agreements that are inconsistent |

| | |
|---|---|
| | with this term sheet or which would preclude the Corporation from obtaining the full savings sought by this proposal. |
| **Right to Refile 1113 and 1114 Motions** | In the event that changes in the Corporation's financial condition or other relevant conditions require, the Corporation shall have the right while in Chapter 11 to seek further relief under Sections 1113 and 1114 of the Bankruptcy Code. |
| **Dispute Resolution** | Disputes, local and national, between the National Parties on matters involving the application or interpretation of this Term Sheet will be reviewed by a Joint Committee consisting of three (3) members appointed by the IUE-CWA Automotive Conference Board Chairman and three (3) members appointed by the Vice President, Human Resources Management, Delphi Corporation.<br><br>• The Joint Committee shall meet as required. Delphi will provide information as necessary on any issues raised for discussion or resolution.<br><br>The Joint Committee will have full authority to settle all matters that are properly before it, recognizing that disputes governed by appeal procedures of the respective Benefit Plans, and other issues consistent with applicable law, may be outside the scope of the Committee's authority. If the Joint Committee is unable to resolve a matter properly before it, it will refer the matter directly to arbitration, using the arbitration provisions contained in the IUE-CWA-Delphi National Agreement. |
| **Complete Agreement and Waiver** | The Corporation and the IUE-CWA acknowledge that during the negotiations which resulted in this Term Sheet and agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Term Sheet. Therefore, the Corporation and the IUE-CWA agree that for the life of the agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter referred to, or covered in the agreement, or with respect to any subject or matter not specifically referred to or covered in the agreement, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time that they negotiated or signed this Term Sheet or agreement. This Term Sheet represents the complete and total agreement of the Corporation and the IUE-CWA as to all modifications to the existing UAW- |

| | Delphi Agreements, and each party voluntarily and unqualifiedly waives the right to raise claims to the contrary. |
|---|---|

Executed _____ day of _____. 2005.

FOR THE INTERNATIONAL UNION          FOR DELPHI CORPORATION
OF ELECTRONIC, ELECTRICAL,
SALARIED, MACHINE AND
FURNITURE WORKERS-
COMMUNICATIONS WORKERS OF
AMERICA


_____          _____


WITNESS:                                 WITNESS:

_____          _____

_____          _____

_____          _____

## APPENDIX A – WAGES

There are two (2) production wage rates and one (1) skilled wage rate. The Corresponding classification groupings in each category shall be provided to the IUE-CWA in a separate document.

Employees will receive the following rates of pay:

|  | Low Production | High Production | Skilled |
|---|---|---|---|
| Base Rates - | $~~9.50~~12.00 | $~~10.50~~13.00 | $~~19.00~~21.50 |
| New Hire Rates - | $~~9.00~~10.00 | $~~9.00~~11.00 | $~~18.00~~19.50 |

New hire employees will receive an increase at the expiration of every 26 weeks worked from the date of hire until the full rate is attained.  The applicable rate, including the amount of each increase is set forth in the table below:

| Number of Weeks | Low Production | High Production | Skilled |
|---|---|---|---|
| 0 – 26 | $~~9.00~~10.00 | $~~9.00~~11.00 | $~~18.00~~19.50 |
| 27 – 52 | $~~9.25~~10.40 | $~~9.25~~11.44 | $~~18.25~~20.00 |
| 53 – 78 | $~~9.50~~10.82 | $~~9.50~~11.90 | $~~18.50~~20.50 |
| 79 – 104 | $11.25 | $~~9.75~~12.37 | $~~18.75~~21.00 |
| 105 – 130 | $11.70 | $~~10.00~~12.87 | $~~19.00~~21.50 |
| 131 – 156 | $12.00 | $~~10.25~~13.00 | |
| ~~157 – 182~~ | | $~~10.50~~ | |

Current Delphi employees will be paid according to the above schedule based on their Delphi seniority date, and skilled trades date, if applicable.  Employees below the new hire rate will continue in their current progression, if applicable, until such time as they reach the minimum rate, at which point they will be paid according to the above schedule.

The Apprentice Rate Schedule is set forth as follows:

| Apprentice Training Period | Hourly Rate* |
|---|---|
| 1st 916 Hours | $~~10.75~~12.00 |
| 2nd 916 Hours | $~~11.00~~12.50 |
| 3rd 916 Hours | $~~11.00~~12.50 plus  9% of "Rate Difference" |
| 4th 916 Hours | $~~11.00~~12.50 plus 20% of "Rate Difference" |
| 5th 916 Hours | $~~11.00~~12.50 plus 33% of "Rate Difference" |
| 6th 916 Hours | $~~11.00~~12.50 plus 48% of "Rate Difference" |
| 7th 916 Hours | $~~11.00~~12.50 plus 66% of "Rate Difference" |
| 8th 916 Hours | $~~11.00~~12.50 plus 86% of "Rate Difference" |

*The "Rate Difference" shall be determined by subtracting the hourly rate for the 2nd 916 hours from the maximum rate for the skilled classification for which the apprentice is in training.  Resultant rates shall be rounded to the nearest 1 cent.

Upon graduation, apprentices will receive an increase, if retained, to the midpoint of the rate range for the skilled classification to which they are assigned.

An upgrader shall receive a rate not less than $~~11.00~~12.25 per hour upon transfer to the classification and, if retained, the employee's rate shall be increased not less than 10¢ per hours each 60 days until the employee reaches the minimum rate of the skilled classification to which the employee is assigned.  Any increase above the minimum shall be on the basis of merit, but in no event will such an employee receive a rate above the midpoint of the rate range for the employee's job classification.

## APPENDIX B – HEALTH CARE

- Medical and Prescription Drugs

  - o Dependent eligibility, scope and level of benefits, coordination of benefits, utilization management and general administrative provisions will be substantially the same as the current Basic Medical Plan provided to salaried enrollees.

  - o Monthly contributions will be required and will be based on the cost of the health care plan and certain other factors including, but not limited to, the number of people covered, the status of the primary enrollee, etc.

  - o Monthly contributions, medical cost sharing and prescription drug cost sharing will be adjusted annually to account for any increase in the cost of providing the health care plan.

  - o Medical Cost Sharing

    - ▪ In-Network

      - • Deductibles:           $~~900~~450 Individual/ $~~1,800~~900 Family

      - • Copayment:            ~~25~~20% Employee/ ~~75~~80% Plan

      - • Out-of-Pocket Max: $~~2,500~~1,500 Individual/ $~~5,000~~3,000 Family

    - ▪ Out-of-Network

      - • Deductibles:           $~~900~~450 Individual/ $~~1,800~~900 Family

      - • Copayment:            ~~45~~40% Employee/ ~~55~~60% Plan

      - • Out-of-Pocket Max: None

  - o Prescription Drug Cost Sharing

    - ▪ Retail:         $10 Generic/  $20 Formulary Brand/ $40 Non-formulary Brand

    - ▪ Mail:          $20 Generic/  $45 Formulary Brand/ $90 Non-formulary Brand

    - ▪ Out-of-network cost sharing is higher

- Mandatory generic, maintenance at mail and utilization management provisions apply

o Monthly Contributions for Medical/Prescription Drug Coverage

- Employee:                     $ ~~85~~65

- Employee + Spouse:      $~~170~~130

- Employee + Child(ren):  $~~160~~125

- Employee + Family        $~~240~~180

o Other affordable health plan designs may be offered in the future.

- Dental – Not provided

- Vision – Not provided

## APPENDIX C - NON-EXCLUSIVE

## LIST OF AGREEMENTS THAT WILL BE ELIMINATED

- The Lifetime Job and Income Security Agreement for the Clinton Operations, dated June 13, 1985 between Delphi Packard Electric Systems and IUE-CWA Local 698

- The Addendum to the Lifetime Job and Income Security Agreement and the Clinton Hiring Plan Agreement for the Clinton Operations, dated September 28, 1999 between Delphi Packard Electric Systems and IUE-CWA Local 698

- The "Lifetime Job and Income Security Agreement for the Brookhaven Operations dated October 31, 1985 between Delphi Packard Electric Systems and Local IUE-CWA Local 718

- The "Lifetime Job and Income Security Agreement for the Warren Operations" dated November 20, 1984 between Delphi Packard Electric Systems – Warren, Ohio and IUE-CWA Local 717

- The "Addendum to the 1984 Local Lifetime Job and Income Security Agreement for the Warren Operations" dated November 12, 1987 between Delphi Packard Electric Systems – Warren, Ohio and IUE-CWA Local 717

- The Memorandum of Understanding "Addendum to the 1984 and 1987 Job and Income Security Agreement for the Warren Operations" dated May 26, 1997 between Delphi Packard Electric Systems – Warren, Ohio and IUE-CWA Local 717

- The "Memorandum of Understanding (2003 Local Agreement Settlement)" dated November 25, 2003 amending the Addendum to the 1984 and 1987 Job and Income Security Agreements for the Delphi Packard Electric Systems – Warren, Ohio Operations

- The letter from Emilee A. Chahine to Donald O. Arbogast dated November 2003, related to the second week of the July shutdown

- The Letter dated July 15, 1996 from J. T. Reynolds to W. Thorpe, D. Owens, D. Campbell, and C. Collins, regarding maintenance of a minimum active employment level of 1,500 until 2011 at the Delphi AHG – Moraine plant, and Delphi-IUE-CWA Umpire Decision Z-1 affirming this obligation.

- The Memorandum of Understanding dated September 28, 2002 between Delphi AHG – Kettering and IUE-CWA Local 755 regarding Project Vortex, employment targets and commitments regarding closure or sale of he Delphi AHG-Kettering plant

- The "Skilled Trades Memorandum of Understanding" dated September 28, 2002 between Delphi AHG – Kettering and IUE-CWA Local 755

- The "Memorandum of Understanding – Scheduled Hour Bonus Program" dated September 27, 2002 between Delphi AHG – Kettering and IUE-CWA Local 755

- The letter from Darrell R. Kidd to Dave Heizer dated September 27, 2002, concerning redistricting at the Delphi AHG – Kettering plant

- The letter from Darrell R. Kidd to Dave Heizer dated September 27, 2002, concerning application of Paragraph (20) of the Delphi – IUE-CWA National Agreement at the Delphi AHG – Kettering plant

- The Unpublished Memorandum of Understanding dated December 15, 2004 between Delphi AHG – Kettering and IUE-CWA Local 755 regarding the Metrology Lab

- The Memorandum of Understanding (Unpublished) dated April 14, 2004 between Delphi AHG – Kettering and IUE-CWA Local 755 concerning overtime for Outside Truckers, and all previous memoranda and/ or agreements on this matter

- The Memorandum of Understanding – "Outside Trucking Classification (200 Class.) dated January 28, 2002 between Delphi AHG – Kettering and IUE-CWA Local 755

- The Unpublished Memorandum of Understanding dated June 15, 2004 between Delphi AHG – Kettering and IUE-CWA Local 755 regarding committeeman pay during Conference Boards

- The Memorandum of Understanding dated June 15, 2004 between Delphi AHG – Kettering and IUE-CWA Local 755 regarding "Local Union Appointments"

- The Memorandum of Understanding dated June 15, 2004 between Delphi AHG – Kettering and IUE-CWA Local 755 regarding "Local Districting Agreement"

- The Unpublished Memorandum of Understanding – "Addendum to the 1/28/02 Representation MOU" dated January 14, 2003 between Delphi AGH – Kettering and IUE-CWA Local 755

- The undated Memorandum of Understanding between Bernard Quick and J. D. Clark regarding overtime for Ergonomics Representatives at the Delphi AHG – Kettering plant during the life of the 2002 Delphi – IUE-CWA National Agreement

- The Memorandum of Understanding dated January 8, 2003 between Delphi AHG – Kettering and IUE-CWA Local 755 regarding clarification of items in dispute related to Skilled Trades

- The February 23, 2004 letter from Pat McDonald to Mike Palmer concerning "Union Concerns Regarding Change in Employment Status and New Work Opportunities" at the Delphi AHG – Moraine plant

- The Memorandum of Understanding – "Security and Competitive Opportunity for Employees (SCOPE)" dated February 1, 1985 between Delphi AHG – Moraine (then Harrison Division, GMC) and IUE-CWA Local 801

**PROPOSED MODIFICATIONS TO THE USW-DELPHI AGREEMENTS
PURSUANT TO BANKRUPTCY CODE § 1113(c)
AND
PROPOSED MODIFICATIONS TO RETIREE WELFARE BENEFITS
PURSUANT TO BANKRUPTCY CODE § 1114**

This term sheet sets forth the proposals of Delphi Corporation and its operating divisions ("Delphi" or the "Corporation") for modifications, pursuant to Section 1113(c) of the U.S. Bankruptcy Code, to the USW Local 87L Agreements, both as defined below, between the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union, f/k/a the United Steelworkers of America, AFL-CIO-CLC, and/or its Local Unions ("USW") and Delphi, and for modifications to retiree welfare benefits, pursuant to Section 1114 of the U.S. Bankruptcy Code, for Delphi's existing retirees, surviving spouses and dependents (collectively "Retirees").

| General Provisions | |
|---|---|
| **USW Local 87L-Delphi Agreements** | The term "USW Local 87L-Delphi Agreements" shall mean the following:<br><br>• The Agreement Between Delphi Automotive Systems and Delphi Energy and Chassis Systems and Local Union 87, USW, dated December 8, 1999 (the "USW Local 87L-Delphi Master Agreement");<br><br>• The Supplemental Agreement Covering Pension Plan, Exhibit A to Agreement between Delphi Corporation and USW Local 87L, dated December 8, 1999;<br><br>• The Supplemental Agreement Covering Life and Disability Benefits Program, Exhibit B to Agreement between Delphi Corporation and USW Local 87L, dated December 8, 1999;<br><br>• The Supplemental Agreement Covering Health Care Program, Exhibit C to Agreement between Delphi Corporation and USW Local 87L, dated December 8, 1999;<br><br>• The Supplemental Agreement Covering Income Security Program, Exhibit D to Agreement between Delphi Corporation and USW Local 87L, dated December 8, 1999;<br><br>• The Supplemental Agreement Covering Guaranteed Income Stream Benefit Program, Exhibit E to Agreement between Delphi Corporation and USW Local 87L, dated December 8, 1999; |

<table>
<tr><td></td><td>

- The Supplemental Agreement Covering Profit Sharing Plan, Exhibit F to Agreement between Delphi Corporation and USW Local 87L, dated December 8, 1999;

- The Supplemental Agreement Covering Personal Savings Plan, Exhibit G to Agreement between Delphi Corporation and USW Local 87L, dated December 8, 1999;

- The Memorandum of Understanding between Delphi Corporation – Home Avenue and USW Local 87L dated January 20, 1997 (the "Delphi Home Avenue – USW Local 87L Agreement")

- The Agreement between Delphi Corporation and Thermal and Interior Systems Vandalia and USW Local 87L dated June 22, 1998 (the "Delphi Vandalia – USW Local 87L Agreement");

- Letter from Ronald M. Pirtle to Dennis Bingham dated December 17, 2004, concerning the Fix-It Plan at the Delphi T&I – Vandalia plant and the commitment to keep the site open during the balance of the agreement that expires on January 31, 2008;

- Those provisions of the "Survival Plan", effective January 3, 2005 at the Delphi T&I – Vandalia plant that conflict with the provisions of this Term Sheet;

- All other agreements, supplements, appendices, documents, memoranda, letters, minutes and understandings, published and unpublished, between Delphi and USW Local 87L.

</td></tr>
</table>

| | |
|---|---|
| **Effective Date** | The USW Local 87L-Delphi Agreements, as modified by this Term Sheet, shall become effective on January 1, 2006 (the "Effective Date"). |
| **Duration** | The USW Local 87L-Delphi Agreements, as modified by this Term Sheet, shall continue in effect until 11:59 p.m. on January 1, 2012, subject to the modification and termination provisions of Paragraph (128) and (129) of the USW Local 87L-Delphi Master Agreement. |

| Wages and Related Provisions | |
|---|---|
| **Base Wage Rates** | • All base hourly wage rates under the USW Local 87L-Delphi Agreements shall be modified as set forth in Appendix A:<br><br>• Paragraphs (62r)(8)(h), (62u), (62v)(2), (62v)(4), (62x)(1), (89), (90a), (90b), (91), (92), (94c), (95), (95)(1), (95(2), (95)(3), (95)(4), (95)(5), (95) (95)(6), (95a), (96) and Document 74, Section 7 of the Contract Settlement Agreement of the USW Local 87L-Delphi Master Agreement will be deleted.  All other references related to wage schedules, rates, general increases, performance bonuses, tool and other allowances in national and/or local agreements, in other provisions and/or in associated documents, including all associated Supplemental Agreements, will be eliminated.<br><br>• All payroll drafts and EFT's will be dated on Friday. |
| **COLA** | There will be no Cost of Living Allowance (COLA).  Paragraphs (94a), (94b), (94c), (94d), (94e), (94f), (94g), (94h), (94i), (94j) and Documents 47 and 48 of the USW Local 87L-Delphi Master Agreement will be deleted.  All other references to COLA in national and/or local agreements, in other provisions, and/or in associated documents, including all associated Supplemental Agreements, will be eliminated. |
| **Overtime** | The overtime provisions of the USW Local 87L-Delphi Agreements shall be modified as follows:<br><br>• All overtime shall be payable at time and one half, irrespective of the day of the week in which the time is worked.<br><br>• Overtime shall be payable only after the employee has worked 40 hours in a pay period.  For purposes of this provision, hours paid as vacation and holiday pay shall be counted toward the 40-hour requirement.<br><br>• Paragraphs (84a), (84b), (84c), (85), (85a), (86a), (86a)(1), (86a)(2), (86a)(3), (86a)(4), (86a)(5), (86b), (101d) and Document 11 of the USW Local 87L-Delphi Master Agreement will be deleted.  All other references to computing |

|  | |
|---|---|
|  | overtime premium pay in national and/or local agreements, in other provisions, and/or in associated documents, including all associated Supplemental Agreements, will be eliminated. <br><br> • The amount and nature of any overtime to be worked shall be determined at the sole discretion of the Corporation. Any and all provisions of the USW Local 87L-Delphi Agreements or local agreements that purport to require overtime, or to limit management discretion to determine overtime requirements, shall be deleted. <br><br> • All voluntary overtime provisions of the USW Local 87L-Delphi Agreements shall be eliminated. |
| **Shift Premiums** | All existing shift premiums under the USW Local 87L-Delphi Agreements shall be paid at five percent (5%) of the applicable base hourly rate, according to the following schedule: <br><br> Paragraph (99) and (100) of the USW Local 87L –Delphi Master Agreement and all other references to existing shift premiums in national and/or agreements, in other provisions, and/or in associated documents, including all associated Supplemental Agreements will be eliminated. |

| Scheduled Shift Starting Time | Amount of Regular Shift Premium |
|---|---|
| (1) On or after 11:00 a.m. and before 5:00 a.m. | Five percent |
| (2) On or after 5:00 a.m. and before 11:00 a.m. | None |

| **Holidays, Vacation and Benefits** | |
|---|---|
| **Holidays** | On the Effective Date, the number of Corporation-paid holidays under the USW Local 87L-Delphi Agreements will be reduced to ten (10) days per year. Delphi and the USW Local 87L shall mutually agree on what the ten paid holidays will be.<br><br>Paragraphs (101), (101)(3), (101f), (101g), (101g)(1), (101g)(2), (101g)(3), (101g)(4), (101i), (101l), Documents 39, 44 and 74 of the USW Local 87L-Delphi Master Agreement will be deleted. All other references to the Christmas Holiday Period in national and/or local agreements, in other provisions, and/or in associated documents, including associated Supplemental Agreements will be eliminated. |
| **Independence Week** | The Corporation-paid Independence Week holiday will be eliminated.<br><br>• At its discretion, annually, the Corporation may designate the week in which the Independence Day holiday falls as a mandatory vacation period.<br><br>• Employees will use Vacation Entitlement hours, if available, or be granted an unpaid leave of absence for such mandatory vacation period.<br><br>Paragraphs (119u), (119V), (119w), (119x), (119x)(1), (119x)(2), (119x)(3), (119y), (119z), (119z)(1), (119z)(2), and (119z)(3) of the USW Local 87L-Delphi Master Agreement will be deleted. Alll other references to Independence Week in other provisions and/or associated documents, including all associated Supplemental Agreements, will be eliminated. |
| **Vacation Accrual** | Paragraph (119g) of the USW Local 87L-Delphi Master Agreement will be deleted.<br><br>Memorandum of Understanding Hourly Vacation Pay Plan Modification dated December 22, 2004 in the Delphi Vandalia-USW Local 87L Vandalia "Survival Plan" and all other associated provisions and/or documents will be modified to reflect the following vacation accrual schedule:<br><br>Effective January 1, 2006, vacation accrual rates shall be as follows: |

| | For an Eligible Employee with Seniority of: | Hours of Vacation Entitlement |
|---|---|---|
| | Less than one year | 40 |
| | One but less than three years | 60 |
| | Three but less than five years | 80 |
| | Five but less than ten years | 100 |
| | Ten but less than 15 years | 120 |
| | Fifteen but less than 20 years | 140 |
| | Twenty or more years | 160 |
| **Profit Sharing** | Applicable terms and conditions of Supplemental Agreement Covering Profit Sharing Plan, Exhibit F, shall continue to apply except as follows: <br><br> • Only "U.S. Operations", as defined under the 2003 Supplemental Agreement, Exhibit F, shall be included in any future calculation of profit sharing amounts. <br><br> • The following Letter Agreements shall be eliminated: <br><br>    o Improving Benefit Services Through Technology; and <br><br>    o Benefits Training and Education. <br><br> All local agreements that concern any profit sharing benefits, plans, option or practices shall be eliminated. |
| **Health Care** | Applicable terms and conditions of Supplemental Agreement Covering Health Care Program, Exhibit C, and all local agreements that concern any health care benefits, plans, options or practices shall be modified or eliminated to discontinue current health care options and replace them with the health care plan generally described in Appendix B. <br><br> • Appropriate modifications and deletions will be made to applicable Exhibits, Articles and Appendices of Exhibit C to conform to the monthly contribution, cost sharing, dependent eligibility, scope and level of benefits, coordination of benefits, utilization management and other provisions contemplated by Appendix B. |

- Applicable sections of Article III of Exhibit C-1 concerning continuation of health care coverage while not actively at work will be modified to provide for up to a maximum of seven (7) months of continuation following the month the employee is last in active service.

- Article V concerning the Special Benefit will be eliminated.

- Section I of the USW Local 87L-Delphi Supplemental Agreement dated April 29, 2004, Attachment B, providing a Corporation-funded Flexible Spending Account shall be eliminated.

- All Miscellaneous Health Care Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the health plan described. Specifically, the following Documents and Letters shall be deleted:

  o Statement of Intent (Representation).

  o Understandings with respect to the following:

    - Dental Coverage;

    - Vision Coverage;

    - Employee Contributions - Health Maintenance Organizations(HMOs), and Alternative Dental and Vision Options;

    - Supplemental Methodology for Review of Health Maintenance Organizations (HMOs) and Alternative Dental and Vision Options; and

    - Health Care – HMO.

  o Letters of Agreement regarding the following subjects:

    - Informed Choice Plan (General);

    - Pharmacy Quality and Safety Components;

    - Preferred Provider Organizations;

|  |  |
|---|---|
|  | <ul><li>Improving Benefit Services Through Technology;</li><li>Benefits Training and Education;</li><li>Community Initiatives;</li><li>Vision Network;</li><li>Preferred Dental Provider Arrangement;</li><li>Fertility Services;</li><li>Health Care Communication Strategy;</li><li>Mental Health and Substance Abuse Coverage; and</li><li>Traditional Care Network.</li></ul><p>○ Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to providing the health care plan and shall be modified or eliminated as appropriate.</p> |
| **Life and Disability** | Applicable terms and conditions of Supplemental Agreement, Exhibit B and all local agreements that concern any Life & Disability benefits, payments or practices shall be modified to:<ul><li>Limit Sickness & Accident benefits to a maximum of 26 weeks of disability;</li><li>Allow the determination of total disability, for purposes of benefit eligibility and payment, to be made by the disability administrator;</li><li>Eliminate the Impartial Medical Opinion (IMO) program;</li><li>Make available, on an employee self-pay basis, Extended Disability Benefits for a maximum of 36 months of disability at an amount determined in accordance with Schedule I of the table found in Art. II, 5 of Exhibit B;</li></ul> |

| | |
|---|---|
| | • Reduce S&A/EDB payable to current and future recipients to an amount proportionate to the new wage rates; |
| | • Provide active employees with $30,000 of Basic Life Insurance. Survivor Income Benefit Insurance and Extra Accident Insurance shall be eliminated; and |
| | • Limit continuation of Life Insurance while not actively at work to a maximum of 6 months after the month following the month the employee was last in active service. |
| | All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted: |
| | • Statement of Intent (Representation); |
| | • Improving Benefit Services Through Technology; |
| | • Benefits Training and Education; |
| | • IMO Letter; and |
| | • Reinstated S&A Letter. |
| | Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the program described above and shall be modified or eliminated as appropriate. |

## Job Security and Severance

| | |
|---|---|
| **Right to Sell, Close or Consolidate** | Document 53 of the USW Local 87L-Delphi Master Agreement, and all related provisions of the existing agreements, national and/or local, that inhibit the Corporation's ability to close or partially or wholly sell, spin-off, split-off, consolidate or otherwise dispose of in any form any plant, asset or business unit of any type shall be eliminated. |
| | In the event the Company sells a facility or operation, it shall use its best effort to obtain the purchaser's agreement to hire existing Delphi employees at the facility or operation. |

| | |
|---|---|
| **Successorship** | Document 54 of the USW Local 87L-Delphi Master Agreement, and all related provisions of the existing agreements, national and/or local, that would require a purchaser of Corporation facilities to assume the existing collective bargaining agreements shall be eliminated. |
| **Elimination of Protected Status (JOBS Bank)** | Appendix L , Documents 55, 68,and 75 and Section 11 of the Contract Settlement Agreement of the USW Local 87L-Delphi Master Agreement, and all related provisions of the existing agreements, national and/or local, shall be eliminated.  The Corporation shall have the right immediately to lay off all employees on Protected Status (JOBS Bank). |
| **Hiring Requirements** | All hiring requirements accrued as of the Effective Date of this agreement, under any national and/or local agreement will be canceled.  All provisions of the national and/or local agreements that would impose ongoing or future hiring requirements or obligations will be eliminated, including apprentices. |
| **Need to Run Employment Levels** | The Corporation shall have sole discretion to determine the number of employees required at each facility, and to lay off or release employees who are unnecessary to the operation.  All employment security, income security or other provisions of the existing agreements, national and/or local that restrict this right shall be eliminated. |
| **Hiring** | If employees are required, it will be solely at Delphi's discretion to add a new hire or a temporary employee.

During the course of an attrition program or in the event of an insufficient number of employees, the Corporation will meet and confer with the Union to discuss the use of contract service personnel. |
| **Outsourcing** | Appendix N and Document 72 of the USW Local 87L-Delphi Master Agreement, and all other related provisions of the existing local and national agreements that restrict the Corporation's right to source work, shall be eliminated. |
| **Severance Pay** | The Corporation will discuss implementation of affordable severance pay provisions for employees who are no longer required with no prospect of recall in the foreseeable future. |

| **Indirect Employees** | The Corporation shall have sole discretion to determine the type and number of non-production employees required at each facility, and the work to be assigned to such employees. |
| --- | --- |
| | Paragraph (62r)(8) and Appendix J-1 of the USW Local 87L-Delphi Master Agreement, will be eliminated. All other references restricting the Corporation's discretion in this matter in other provisions or associated documents, national and/or local, including all associated Supplemental Agreements, will be eliminated. |
| | Paragraphs (62y)(3), (62y)(4) and Appendix J of the USW Local 87L-Delphi Master Agreement and all other provisions and/or associated documents and all associated Supplemental Agreements, national and local, will be modified to refer only to core activities that directly support production activities. |
| | Full utilization of skilled trades will apply only to core activities which directly support production operations and/or the maintenance and repair of plant equipment, and which can be performed competitively and within the required time frame. All other non-core skilled trades work will be outsourced or subcontracted, such as but not limited to: |
| | • Tool and equipment build; |
| | • Machine re-build; |
| | • Building and facilities maintenance; |
| | • Truck repair; |
| | • Carpentry and painting; |
| | • HVAC installation and repair; |
| | • Telephone and IT equipment installation and support; and |
| | • Construction and rearrangement of facilities. |
| | An affected trade that is scheduled to work 40 hours per week will be considered "fully utilized". Any monetary claims related to full utilization will be limited to the number of hours of work allegedly lost to the bargaining unit. |
| | Indirect activities, both skilled and non-skilled, which are not competitive or which are not required for immediate support of |

| | production activities will be outsourced, contracted or eliminated, such as but not limited to: |
|---|---|
| | • Snow removal; <br><br> • Janitorial services; <br><br> • Yard maintenance; and <br><br> • Crib support. |
| **Guaranteed Income Stream Benefits** | The Supplemental Agreement Covering Guaranteed Income Stream Benefit Program, Exhibit E, shall be eliminated. |
| **Income Security Plan** | Applicable terms and conditions of Supplemental Agreement, Exhibit D, and all local agreements that concern any income security plans, benefits, payments or practices shall be modified to close the plan to new participants and eliminate any future Corporation contributions to individual accounts. |
| **Temporary Employees** | The Corporation may, in its sole discretion, hire temporary employees. |
| **Other Provisions** | |
| **Attendance** | The Corporation's attendance policies shall be revised as follows: <br><br> • The Corporation may implement a no-fault attendance policy under which all employee absences/tardiness are tracked including leaves of absence. After reaching defined thresholds, employees will be subject to automatic, non-grievable corrective disciplinary action, ultimately leading to discharge. The program will also have a mechanism for reducing further disciplinary action based on improved attendance. <br><br> • All restrictions on the Corporation's administration, including any Local Agreements or Understandings, of the Family and Medical Leave Act shall be eliminated. <br><br> • All other references to attendance and Family and Medical Leave Act policies in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |

|  | • The Corporation may reduce vacation pay and holiday pay by the same percentage as an employee's absence rate during scheduled work hours during the previous year, including time on leave. |
|---|---|
| **Subsidized Discount Program** | Any and all provisions of the USW Local 87L-Delphi Agreements, national and/or local, that require expenditures by Delphi for personal items shall be eliminated, such as but not limited to:<br><br>• Company-paid health club memberships;<br><br>• Discount programs subsidized by Delphi such as AOL; and<br><br>• Clothing allowances. |
| **USW Representation and Support** ||
| **Joint Fund Accruals** | The funding provisions of the Memorandum of Understanding – Joint Activities of the USW Local 87L-Delphi Master Agreement will be deleted.<br><br>• The level of participation in the programs, services and related activities formerly funded by these provisions will be at the discretion of the Corporation, and any costs incurred for these will be the responsibility of Delphi Corporation.<br><br>• The Memorandum of Understanding – Human Resources Development and Joint Skill Development and Training Documents 15, 64, 64(A), 64(B) and 67 of the USW Local 87L-Delphi Master Agreement, and other references to education, training, and development in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| **Quality Network** | Documents 52 and 70 of the USW Local 87L-Delphi Master Agreement, and all other references to Quality Network in other provisions and/or associated documents, local and/or national, including associated Supplemental Agreements, will be eliminated. The Quality Network Process will be merged with the Delphi Manufacturing System. |

| Union Representation | The union representation provisions of the USW Local 87L-Delphi Agreements shall be revised as follows:<br><br>• The number of union representatives of all kinds (including but not limited to district, zone, chairperson, benefit, health & safety, special skilled trades, etc.) will be based on a ratio of 1:250. Plants with 200-750 employees will have a total of three (3) representatives. Operating plants with fewer than 200 employees will have a total of two (2) representatives. Closed plants will have no representatives when the population drops below 50.<br><br>• Union representatives will be scheduled to work overtime for representation purposes only when the 15 or more employees they represent are working overtime on the representative's scheduled shift and no other representatives, including district or zone committeemen, are otherwise available on straight time.<br><br>• Joint program representatives, including those "special assigned" employees assigned to the Corporation, Divisions and/or agreed to at the plant level, shall be eliminated.<br><br>• Paragraphs (8a), (15c)(1), (23a), (23aa), (23a)(1)(2)(1), Sections VI, VI(a) and VI(b) of Document 2, the representation provisions of Section N of Document 3, Document 47 and Document 65 of the USW Local 87L-Delphi Master Agreement will be deleted. All other references to the number of union representatives, paid time for union representatives, and/or overtime for union representatives in other provisions and/or associated documents, local and/or national, including all associated Supplemental Agreements, will be eliminated.<br><br>• Statement of Intent (Representation) shall be eliminated from all applicable Supplemental Agreements. |
|---|---|
| No-Strike Provisions | No strikes, work stoppages or slowdowns shall be permitted during the term of the USW Local 87L-Delphi Agreements.<br><br>Paragraphs (121) and (122) of the USW Local 87L-Delphi Master Agreement, and any other references to strikes in other provisions and/or associated documents, local and/or national, including all associated Supplemental Agreements, will be eliminated. |

| Personal Savings Plan | Applicable terms and conditions of Supplemental Agreement, Covering Personal Savings Plan, Exhibit G, shall continue to apply except that all local agreements that concern any personal savings plans or practices shall be eliminated.<br><br>All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above.  Specifically, the following Documents and Letters shall be deleted:<br><br>• Improving Benefit Services Through Technology; and<br><br>• Benefits Training and Education.<br><br>Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the plan described above and shall be modified or eliminated as appropriate. |
|---|---|
| Hourly-Rate Employees Pension Plan | Applicable terms and conditions of Supplemental Agreement Covering Pension Plan, Exhibit A, and all local agreements that concern any pension plans, benefits, payments or practices shall be eliminated or modified as follows:<br><br>• Freeze the Hourly-Rate Employees Pension Plan (HRP) which includes the Individual Retirement Plan effective January 1, 2006;<br><br>• As of the freeze date, HRP participants will accrue no additional credited service for purposes of calculating their benefits;<br><br>• As of the freeze date, no new participants will be allowed to join the HRP;<br><br>• As of the freeze date, the HRP will be amended to eliminate any benefits that are not protected by ERISA, including the Special Benefit; and<br><br>• Implement a defined contribution benefit for future benefit accruals, where appropriate.<br><br>All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted: |

|  | • Statement of Intent (Representation);<br><br>• Improving Benefit Services Through Technology;<br><br>• Benefits Training and Education;<br><br>• Workers Compensation;<br><br>• Lump-Sum Payment;<br><br>• Social Security; and<br><br>• Total and Permanent Disability – Return to Work.<br><br>Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the HRP described above and shall be modified or eliminated as appropriate. |
| **Potential Termination of Hourly Rate Pension Plan** | The Corporation reserves the right while in Chapter 11 to seek a distress termination of the HRP in the event that it determines that it cannot maintain the HRP under the applicable legal standards for such a termination. The Corporation shall make this decision based on (1) updated financial forecasts during the Chapter 11 case; and (2) the Corporation's ability to fund the HRP. |
| <u>**Defined Contribution Pension Plan**</u> | <u>For all employees hired on or after the effective date of a termination of the Hourly-Rate Employees Pension Plan (each such employee, a "New Hire"), the Corporation shall contribute 3% of each New Hire's Earnings to a defined contribution plan for the benefit of such New Hire employees.</u><br><br><u>For purposes of this provision, Earnings shall be defined as base hourly wage for hours worked, not to exceed 40 hours per week.</u> |
| **Other Post-Employment Benefits (OPEB)** | |
| **Health Care (Active Employees and Retirees)** | Applicable terms and conditions of Supplemental Agreement, Covering Health Care Program, Exhibit C, and all local agreements that concern any post-employment health care benefits, plans, options or practices shall be modified to eliminate any obligation the Corporation may have to provide active employees and Retirees with Corporation contributions for and access to the Delphi Health Care Program for Hourly Employees during retirement. |
| **Retiree Life** | Applicable terms and conditions of Supplemental Agreement, |

| | |
|---|---|
| **Insurance (Active Employees)** | Covering Life and Disability Benefits Program, Exhibit B, and all local agreements that concern any post-employment life insurance benefits, plans, options or practices shall be modified to eliminate all employer-paid life insurance, including Basic Life Insurance, Survivor Income Benefit Insurance and Extra Accident Insurance in retirement. Retirees may continue any employee-paid coverages for which they were enrolled at the point of retirement. |
| **Retiree Life Insurance (Retirees)** | All life insurance coverage including Basic Life Insurance, Survivor Income Benefit Insurance and Extra Accident Insurance for Retirees shall be eliminated. Retirees will be allowed to continue any employee-paid coverages for which they are enrolled. |
| **Local Agreements** | |
| **Effect on Local Agreements** | The USW-Local 87L-Delphi Master Agreement, the Delphi Home Avenue – USW Local 87L Agreement and the Delphi Vandalia-USW Local 87L Agreement, as modified by this Term Sheet, shall supersede and control all local agreements between the USW local units and Delphi or any of its divisions. Upon execution of this Term Sheet by the National Parties, any provisions of the any local agreements which are inconsistent with this Term Sheet shall be deemed to have been eliminated, and the Corporation's proposals to modify such local agreements shall be deemed withdrawn as moot. |
| **Competitive Operating Agreements** | Within 90 days following ratification of this Term Sheet, the local agreements at Home Avenue and Vandalia will be revised, pursuant to local negotiations, to (1) reflect the provisions of this Term Sheet; and (2) adopt a Competitive Operating Agreement. Competitive Operating Agreements will address, but not be limited to, issues such as:<br><br>• Number of classifications, and efficient use of both production and skilled trades employees;<br><br>• Frequency of employee movement, including freezing transfers during product launches;<br><br>• Overtime equalization practices that are cumbersome, inefficient and/or non-competitive; and<br><br>• Local practices and work rules that are non-competitive, |

| | |
|---|---|
| | including but not limited, to the elimination of all forms of pay for time not worked (e.g., wash-up time, early quits). |
| **Local Innovation** | The Corporation may seek, and USW Local Unions may agree to other changes that are justified by local competitive conditions or necessary to make local operations viable:<br><br>• Locally competitive wage rates and/or benefit plans – subject to Corporation approval.<br><br>Alternative Work Schedules:<br><br>• The following alternative work schedules are pre-approved and available for local use with no overtime payable for the first 40 hours worked each week:<br><br>    o 3-Crew, 2-Shift<br><br>    o 4-Crew, 2-shift<br><br>    o Four days x ten hours<br><br>    o Weekend crew<br><br>• The Local Parties may develop other work schedules to meet particular local requirements, subject to approval by the Corporation and the International Union. |
| **Living Agreement Provisions** | All USW Local 87L-Delphi agreements that do not have an expiration date ("living agreements"), shall be amended to expire coterminously with the USW Local 87L-Delphi Master Agreement. |
| **Miscellaneous Provisions** | |
| **Definitive Documentation** | This Term Sheet is intended only to describe the basic modifications to the current USW Local 87L-Delphi Agreements and the Delphi Vandalia-USW Local 87L Agreement that are necessary for the reorganization of the Corporation under Section 1113(c) of the Bankruptcy Code, and is not intended to constitute final contract language. The parties agree that they will draft final contract language, and execute the 2005 USW Local 87L-Delphi Master Agreement, the Delphi Home Avenue – USW Local 87L Agreement and the Delphi Vandalia-USW Local 87L Agreement, within 60 days of the execution of this term sheet. The parties further agree that in drafting final contract language, they will eliminate or modify any provisions of the current USW Local 87L-Delphi Agreement, the Delphi Home |

| | |
|---|---|
| | Avenue – USW Local 87L Agreement or the Delphi Vandalia-USW Local 87L Agreement that are inconsistent with this term sheet or which would preclude the Corporation from obtaining the full savings sought by this proposal. |
| **Right to Refile 1113 and 1114 Motions** | In the event that changes in the Corporation's financial condition or other relevant conditions require, the Corporation shall have the right while in Chapter 11 to seek further relief under Sections 1113 and 1114 of the Bankruptcy Code. |
| **Dispute Resolution** | Disputes, local and national, between the National Parties on matters involving the application or interpretation of this Term Sheet will be reviewed by a Joint Committee consisting of three (3) members appointed by the President of USW Local 87L and three (3) members appointed by the Vice President, Human Resources Management, Delphi Corporation.<br><br>• The Joint Committee shall meet as required. Delphi will provide information as necessary on any issues raised for discussion or resolution.<br><br>• The Joint Committee will have full authority to settle all matters that are properly before it, recognizing that disputes governed by appeal procedures of the respective Benefit Plans, and other issues consistent with applicable law, may be outside the scope of the Committee's authority. If the Joint Committee is unable to resolve a matter properly before it, it will refer the matter directly to arbitration, using the applicable arbitration provisions contained in the USW Local 87L-Delphi Master Agreement, the Delphi Home Avenue – USW Local 87L Agreement and/or the Delphi Vandalia-USW Local 87L Agreement. |
| **Complete Agreement and Waiver** | The Corporation and the USW acknowledge that during the negotiations which resulted in this Term Sheet and agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Term Sheet. Therefore, the Corporation and the USW Local 87L agree that for the life of the agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter referred to, or covered in the agreement, or with respect to any subject or matter not specifically referred to or covered in the agreement, even though such subject or matter |

|  | may not have been within the knowledge or contemplation of either or both of the parties at the time that they negotiated or signed this Term Sheet or agreement. This Term Sheet represents the complete and total agreement of the Corporation and the USW Local 87L as to all modifications to the existing USW-Delphi Agreements, and each party voluntarily and unqualifiedly waives the right to raise claims to the contrary. |

Executed _____ day of_____, 2005.

FOR UNITED STEEL, PAPER AND                    FOR DELPHI CORPORATION
FORESTRY, RUBBER,
MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND SERVICE
WORKERS, INTERNATIONAL UNION,
F/K/A THE UNITED STEELWORKERS
OF AMERICA, USW LOCAL 87L, AFL-
CIO-CLC


_____                _____


WITNESS:                                      WITNESS:


_____                _____


_____                _____


_____                _____

## APPENDIX A – WAGES

There are two (2) production wage rates and one (1) skilled wage rate. The corresponding classification groupings in each category shall be provided to the USW in a separate document.

Employees will receive the following rates of pay:

|  | Low Production | High Production | Skilled |
|---|---|---|---|
| Base Rates - | $~~9.50~~12.00 | $~~10.50~~13.00 | $~~19.00~~21.50 |
| New Hire Rates - | $~~9.00~~10.00 | $~~9.00~~11.00 | $~~18.00~~19.50 |

New hire employees will receive an increase at the expiration of every 26 weeks worked from the date of hire until the full rate is attained.  The applicable rate, including the amount of each increase is set forth in the table below:

| Number of Weeks | Low Production | High Production | Skilled |
|---|---|---|---|
| 0 – 26 | $~~9.00~~10.00 | $~~9.00~~11.00 | $~~18.00~~19.50 |
| 27 – 52 | $~~9.25~~10.40 | $~~9.25~~11.44 | $~~18.25~~20.00 |
| 53 – 78 | $~~9.50~~10.82 | $~~9.50~~11.90 | $~~18.50~~20.50 |
| 79 – 104 | $11.25 | $~~9.75~~12.37 | $~~18.75~~21.00 |
| 105 – 130 | $11.70 | $~~10.00~~12.87 | $~~19.00~~21.50 |
| 131 – 156 | $12.00 | $~~10.25~~13.00 | |
| ~~157 – 182~~ | | $~~10.50~~ | |

Current Delphi employees will be paid according to the above schedule based on their Delphi seniority date, and skilled trades date, if applicable. Any current wage rates below the above schedule will not be affected by the Agreement. Employees below the new hire rate will continue in their current progression, if applicable, until such time as they reach the minimum rate, at which point they will be paid according to the above schedule.

The Apprentice Rate Schedule is set forth as follows:

| Apprentice Training Period | Hourly Rate* |
|---|---|
| 1st 916 Hours | $~~10.75~~12.00 |
| 2nd 916 Hours | $~~11.00~~12.50 |
| 3rd 916 Hours | $~~11.00~~12.50 plus  9% of "Rate Difference" |
| 4th 916 Hours | $~~11.00~~12.50 plus 20% of "Rate Difference" |
| 5th 916 Hours | $~~11.00~~12.50 plus 33% of "Rate Difference" |
| 6th 916 Hours | $~~11.00~~12.50 plus 48% of "Rate Difference" |
| 7th 916 Hours | $~~11.00~~12.50 plus 66% of "Rate Difference" |
| 8th 916 Hours | $~~11.00~~12.50 plus 86% of "Rate Difference" |

*The "Rate Difference" shall be determined by subtracting the hourly rate for the 2nd 916 hours from the maximum rate for the skilled classification for which the apprentice is in training. Resultant rates shall be rounded to the nearest 1 cent.

Upon graduation, apprentices will receive an increase, if retained, to the midpoint of the rate range for the skilled classification to which they are assigned.

A helper shall receive a rate not less than $~~11.00~~12.25 per hour upon transfer to the classification and, if retained, the employee's rate shall be increased not less than 10¢ per hours each 60 days until the employee reaches the minimum rate of the skilled classification to which the employee is assigned. Any increase above the minimum shall be on the basis of merit, but in no event will such an employee receive a rate above the midpoint of the rate range for the employee's job classification.

## APPENDIX B – HEALTH CARE

- Medical and Prescription Drugs

  o Dependent eligibility, scope and level of benefits, coordination of benefits, utilization management and general administrative provisions will be substantially the same as the current Basic Medical Plan provided to salaried enrollees.

  o Monthly contributions will be required and will be based on the cost of the health care plan and certain other factors including, but not limited to, the number of people covered, the status of the primary enrollee, etc.

  o Monthly contributions, medical cost sharing and prescription drug cost sharing will be adjusted annually to account for any increase in the cost of providing the health care plan.

  o Medical Cost Sharing

    ▪ In-Network

      • Deductibles:              $~~900~~450 Individual/ $~~1,800~~900 Family

      • Copayment:                ~~25~~20% Employee/ ~~75~~80% Plan

      • Out-of-Pocket Max:        $~~2,500~~1,500 Individual/ $~~5,000~~3,000
        Family

    ▪ Out-of-Network

      • Deductibles:              $~~900~~450 Individual/ $~~1,800~~900 Family

      • Copayment:                ~~45~~40% Employee/ ~~55~~60% Plan

      • Out-of-Pocket Max:        None

  o Prescription Drug Cost Sharing

    ▪ Retail:    $10 Generic/  $20 Formulary Brand/ $40 Non-formulary
      Brand

    ▪ Mail:      $20 Generic/ $45 Formulary Brand/ $90 Non-formulary
      Brand

- Out-of-network cost sharing is higher

- Mandatory generic, maintenance at mail and utilization management provisions apply

o Monthly Contributions for Medical/Prescription Drug Coverage

- Employee:                     $ ~~85~~65

- Employee + Spouse:            $~~170~~130

- Employee + Child(ren):        $~~160~~125

- Employee + Family:            $~~240~~180

o Other affordable health plan designs may be offered in the future.

- Dental – Not provided

- Vision – Not provided

**PROPOSED MODIFICATIONS TO THE IAM-DELPHI AGREEMENTS
PURSUANT TO BANKRUPTCY CODE § 1113(c)
AND
PROPOSED MODIFICATIONS TO RETIREE WELFARE BENEFITS
PURSUANT TO BANKRUPTCY CODE § 1114**

This term sheet sets forth the proposals of Delphi Corporation and its operating divisions ("Delphi" or the " Corporation") for modifications pursuant to Section 1113(c) of the U.S. Bankruptcy Code, to the IAM-Delphi Agreements, as defined below, between the International Association of Machinists, AFL-CIO, Tool and Die Makers  Lodge 78 ("IAM") and Delphi, , and for modifications to retiree welfare benefits pursuant to Section 1114 of the U.S. Bankruptcy Code for Delphi's existing retirees, surviving spouses and dependents (collectively "Retirees").

| General Provisions | |
|---|---|
| **IAM-Delphi Agreements** | The term "IAM-Delphi Agreements" shall mean the following:<br><br>• The Agreement Between Delphi Electronics & Safety Milwaukee Operations Delphi Corporation and the IAM, dated December 22, 2003 (the "IAM-Delphi  Agreement");<br><br>• The Supplemental Agreement Covering Pension Plan, Exhibit A-1, to Agreement between Delphi Corporation and IAM dated December 22, 2003;<br><br>• The Supplemental Agreement Covering Life and Disability Benefits Program, Exhibit B-1, to Agreement between Delphi Corporation and IAM dated December 22, 2003;<br><br>• The Supplemental Agreement Covering Health Care Program, Exhibit C-1, to Agreement between Delphi Corporation and IAM dated December 22, 2003;<br><br>• The Supplemental Agreement Covering Income Security Plan, Exhibit D-1, to Agreement between Delphi Corporation and IAM dated December 22, 2003;<br><br>• The Supplemental Agreement Covering Guaranteed Income Stream Benefit Program, Exhibit E-1, to Agreement between Delphi Corporation and IAM dated December 22, 2003;<br><br>• The Supplemental Agreement Covering Profit Sharing Plan, Exhibit F-1, to Agreement between Delphi Corporation and IAM dated December 22, 2003; |

| | |
|---|---|
| | • The Supplemental Agreement Covering Personal Savings Plan, Exhibit G-1, to Agreement between Delphi Corporation and IAM dated December 22, 2003;<br><br>Any and all other agreements, supplements, appendices, documents, memoranda, letters, minutes and understandings, published and unpublished, between Delphi Corporation and the IAM. |
| **Effective Date** | The IAM-Delphi Agreements, as modified by this Term Sheet, shall become effective on January 1, 2006 (the "Effective Date"). |
| **Duration** | The IAM-Delphi Agreements, as modified by this Term Sheet, shall continue in effect until 11:59 p.m. on April 17, 2012, subject to the modification and termination provisions of Paragraph (91) of the IAM-Delphi National Agreement. |
| | **Wages and Related Provisions** |
| **Base Wage Rates** | All base hourly wage rates under the IAM-Delphi Agreements shall be modified as set forth in Appendix A:<br><br>• Paragraphs (79), (79)(a), (79)(b), and Wage Agreement dated December 22, 2003 and other references related to wage schedules, rates, general increases, performance bonuses, tool and other allowances in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• All payroll drafts will be dated on Friday. |
| **COLA** | There will be no Cost of Living Allowance (COLA).<br><br>Paragraphs (80), (80)(a), (80)(b), (80)(d), (80)(e), (80)(f), (80)(g), (80)(h), (80)(i), and the Policy Letter on COLA Calculation will be deleted, and all other references to COLA in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| **Overtime** | The overtime provisions of the IAM-Delphi Agreements shall be modified as follows:<br><br>• All overtime shall be payable at time and one half, irrespective of the day of the week in which the time is worked. |

|  | |
|---|---|
|  | • Overtime shall be payable only after the employee has worked 40 hours in a pay period. For purposes of this provision, hours paid as vacation and holiday pay shall be counted toward the 40-hour requirement.<br><br>• Paragraphs (57), (58), (58)(a), (58)(a)(1), (58)(a)(2), (58)(a)(3), (58)(b), (58)(b)(1), (58)(b)(2), (58)(b)(3), and (58)(c) will be deleted, and all other references to computing overtime premium pay in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• The amount and nature of any overtime to be worked shall be determined in the sole discretion of the Company. Any and all provisions of the IAM-Delphi Agreements or that purport to require overtime, or to limit management discretion to determine overtime requirements, shall be deleted.<br><br>• All voluntary overtime provisions of the IAM-Delphi Agreements shall be eliminated.<br><br>• The following Statements of Policy submitted to the IAM, Equalization of Overtime Hours, Supplementary Overtime, Overtime Scheduling, and, Overtime Work Opportunities for Apprentices will be deleted, and all other references to night shift premiums in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| **Shift Premiums** | All existing shift premiums under the IAM-Delphi Agreements shall be paid at five percent (5%) of the applicable base hourly rate, according to the following schedule: |

| Scheduled Shift Starting Time | Amount of Regular Shift Premium |
|---|---|
| (1) On or after 11:00 a.m. and before 5:00 a.m. | Five percent |
| (2) On or after 5:00 a.m. and before 11:00 a.m. | None |

| | |
|---|---|
| | Paragraph (58)(d)(1), (58)(e) of the IAM-Delphi Agreements, and all other references to existing shift premiums in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| **Holidays, Vacation and Benefits** | |
| **Holidays** | On the Effective Date, the number of Corporation-paid holidays under the IAM-Delphi Agreements will be reduced to ten (10) days per year.  Delphi will advise the IAM as to the dates of the ten paid holidays<br><br>Paragraphs (72), (72)(a), (72)(b), (72)(c), (72)(d), (72)(e), (72)(f), (73), (74), (74)(a), (74)(b), (74)(c), (74)(d), (75), (78) and the Policy Letter on Working on a Holiday/Vacation Entitlement Conversion Option of the IAM-Delphi Agreements will be deleted and all other references to the Christmas Holiday Period in other provisions and/or associated documents and associated Supplemental Agreements will be eliminated. |
| **Independence Week** | The Corporation-paid Independence Week holiday will be eliminated.<br><br>• At its discretion, annually, the Corporation may designate the week in which the Independence Day holiday falls as a mandatory vacation period.<br><br>• Employees will use Vacation Entitlement hours, if available, or be granted an unpaid leave of absence for such mandatory vacation period.<br><br>Paragraphs (71)(h), (71)(i), (71)(j)(1), (71)(j)(2), (71)(j)(3), (71)(k), (71)(l), (71)(l)(1), (71)(l)(2) and (71)(l)(3) of the IAM-Delphi Agreement  will be deleted and all other references to Independence Week in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| **Vacation Accrual** | Paragraph (70), (70)(a), (70)(b), (70)(b)(1), (70)(b)(2) and (70)(b)(3)of the IAM-Delphi Agreement will be deleted, and all other references to vacation entitlement hours in other provisions and/or associated documents and all associated IAM-Delphi Agreements will be eliminated, modified to reflect the following vacation accrual schedule: |

Effective January 1, 2006, vacation accrual rates shall be as follows:

| For an Eligible Employee with Seniority of: | Hours of Vacation Entitlement |
|---|---|
| Less than one year | 40 |
| One but less than three years | 60 |
| Three but less than five years | 80 |
| Five but less than ten years | 100 |
| Ten but less than 15 years | 120 |
| Fifteen but less than 20 years | 140 |
| Twenty or more years | 160 |

| | |
|---|---|
| **Profit Sharing** | Applicable terms and conditions of Supplemental Agreement Covering Profit Sharing Plan, Exhibit F-1, shall continue to apply except as follows:<br><br>• Only "U.S. Operations" as defined under the 2003 Supplemental Agreement, Exhibit F-1, shall be included in any future calculation of profit sharing amounts.<br><br>• The following Letter Agreements shall be eliminated:<br><br>    o Improving Benefit Services Through Technology; and<br><br>    o Benefits Training and Education. |

| Health Care | Applicable terms and conditions of Supplemental Agreement Covering Health Care Program, Exhibit C-1, shall be modified to discontinue current health care options and replace them with the health care plan generally described in Appendix B. |
|---|---|

- Appropriate modifications and deletions will be made to applicable Exhibits, Articles and Appendices of Exhibit C-1 to conform with the monthly contribution, cost sharing, dependent eligibility, scope and level of benefits, coordination of benefits, utilization management and other provisions contemplated by Appendix B.

- Applicable sections of Article III concerning continuation of health care coverage while not actively at work will be modified to provide for up to a maximum of seven 7 months of continuation following the month the employee is last in active service.

- Article V concerning the Special benefit will be eliminated.

All Miscellaneous Health Care Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the health care plan described Appendix B. Specifically, the following Documents and Letters shall be deleted:

- Statement of Intent (Representation)
- Understandings with Respect to:
    - Dental Coverage;
    - Vision Coverage;
    - Utilization Review and Cost Containment;;
    - Employee Contributions - Health Maintenance Organizations(HMOs), and Alternative Dental and Vision Options;
    - Supplemental Methodology for Review of Health Maintenance Organizations (HMOs), and Alternative Dental and Vision Options;
    - Health Care - HMO; and
    - Vision Network.

|  |  |
|---|---|
|  | • Letters of Agreement regarding the following subjects:<br><br>   o  Informed Choice Plan (General);<br><br>   o  Pharmacy Quality and Safety Components;<br><br>   o  Preferred Provider Organizations;<br><br>   o  Improving Benefit Services Through Technology;<br><br>   o  Benefits Training and Education;<br><br>   o  Community Initiatives;<br><br>   o  Preferred Dental Provider Arrangement;<br><br>   o  Fertility Services;<br><br>   o  Health Care Communication Strategy;<br><br>   o  Mental Health and Substance Abuse Coverage; and<br><br>   o  Traditional Care Network.<br><br>Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to providing the health care plan and shall be modified or eliminated as appropriate. |
| **Life and Disability** | Applicable terms and conditions of Supplemental Agreement Covering Life and Disability, Exhibit B-1, shall be modified to:<br><br>• Limit Sickness & Accident benefits to a maximum of 26 weeks of disability;<br><br>• Allow the determination of total disability, for purposes of benefit eligibility and payment, to be made by the disability administrator;<br><br>• Eliminate the Impartial Medical Opinion (IMO) program;<br><br>• To make available, on an employee self-pay basis, Extended Disability Benefits for a maximum of 36 months of disability at an amount determined in accordance with Schedule I of the table found in Art. II, 5 of Exhibit B;<br><br>• To reduce S&A/EDB payable to current and future recipients to an amount proportionate to the new wage rates; |

<table>
<tr><td></td><td>

- To provide active employees with $30,000 of Basic Life Insurance. Survivor Income Benefit Insurance and Extra Accident Insurance shall be eliminated; and

- To limit continuation of Life Insurance while not actively at work to a maximum of 6 months after the month following the month the employee was last in active service.

All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted:

- Statement of Intent (Representation);

- Improving Benefit Services Through Technology;

- Benefits Training and Education;

- IMO Letter; and

- Reinstated S&A Letter.

Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the program described above and shall be modified or eliminated as appropriate.

</td></tr>
<tr><td colspan="2" align="center">**Job Security and Severance**</td></tr>
<tr><td>**Right to Sell, Close or Consolidate Facilities**</td><td>The Plant Closing and Sale Moratorium provisions of the IAM-Delphi Agreement, and all related provisions of the existing agreements that inhibit the Corporation's ability to close, or partially or wholly sell, spin-off, split-off, consolidate or otherwise dispose in any form any plant, asset or business unit of any type shall be eliminated. In the event the Corporation sells a facility, it shall use its best effort to obtain the purchaser's agreement to hire existing Delphi employees at the facility.</td></tr>
</table>

| | |
|---|---|
| **Successorship** | The Sale of Operation Letter of the IAM – Delphi Agreement, and all related provisions of the existing a IAM-Delphi Agreements that would require a purchaser of Corporation facilities to assume existing collective bargaining agreements and/or recognize the IAM, shall be eliminated. |
| **Elimination of Protected Status (JOBS Bank)** | The Corporation shall have the right immediately to lay off all employees on Protected Status (JOBS Bank). |
| **Hiring Requirements** | All hiring requirements accrued as of the Effective Date of this agreement will be canceled.  All provisions of the Agreements that would impose ongoing or future hiring commitments or obligations will be eliminated. |
| **Need to Run Employment Levels** | The Corporation shall have sole discretion to determine the number of employees required at each facility, and to lay off or release employees who are unnecessary to the operation.  All employment security, income security or other provisions of the existing agreements that restrict this right shall be eliminated. |
| **Hiring** | If employees are required, it will be solely at Delphi's discretion to add a new hire or a temporary employee.

During the course of an attrition program or in the event of an insufficient number of employees, the Corporation will meet and confer with the union to discuss the use of contract service personnel |
| **Relocation Allowance** | On a case-by-case basis, Delphi employees transferring from a Delphi plant to a Delphi plant may be eligible for Relocation Allowance based on actual expenses incurred up to a maximum of $10,000. |
| **Outsourcing** | All related provisions of the existing IAM-Delphi agreements that restrict the Corporation's right to source work, shall be eliminated. |
| **Severance Pay** | The Corporation will discuss implementation of affordable severance pay provisions for employees who are no longer required with no prospect of recall in the foreseeable future. |

| Indirect Employees | The Corporation shall have sole discretion to determine the type and number of non-production employees required at each facility, and the work to be assigned to such employees. |
|---|---|
| | Apprentice Agreement Section IV, the Letters Subcontracting Discussions and Subcontracting of the IAM-Delphi Agreement and all other references restricting the Corporation's discretion in this matter in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| | The IAM-Delphi Agreements and all other provisions and/or associated documents will be modified to refer only to core activities that directly support production activities. |
| | Full utilization of skilled trades will apply only to core activities which directly support production operations and/or the maintenance and repair of plant equipment, and which can be performed competitively and within the required time frame. All other non-core skilled trades work will be outsourced or subcontracted, such as but not limited to: |
| | • Tool and equipment build; |
| | • Machine Re-build; |
| | • Building and facilities maintenance; |
| | • Truck repair; |
| | • HVAC installation and repair; |
| | • Telephone and IT equipment installation and support; and |
| | • Construction and rearrangement of facilities. |
| | An affected trade that is scheduled to work 40 hours per week will be considered "fully utilized". Any monetary claims related to full utilization will be limited to the number of hours of work allegedly lost to the bargaining unit. |
| | Indirect activities, both skilled and non-skilled, which are not competitive or which are not required for immediate support of production activities will be outsourced, contracted or eliminated. |

| | |
|---|---|
| **Income Security Plan** | Applicable terms and conditions of Supplemental Agreement, Exhibit D-1, and all local agreements that concern any income security plans, benefits, payments or practices shall be modified to close the plan to new participants and eliminate any future Corporation contributions to individual accounts. |
| **Guaranteed Income Stream Benefits** | The Supplemental Agreement Covering Guaranteed Income Stream Benefit Program, Exhibit E-1, shall be eliminated. |
| **Temporary Employees** | The Corporation, at its discretion, may hire temporary employees as required. |
| **Other Provisions** | |
| **Attendance** | The Corporation's attendance policies shall be revised as follows: <ul><li>The Corporation may implement a no-fault attendance policy under which all employee absence/tardiness are tracked including leaves of absence. After reaching defined thresholds, the employees will be subject to automatic, non-grievable corrective disciplinary action, ultimately leading to discharge. The program will also have a mechanism for reducing further disciplinary action based on improved attendance.</li><li>All restrictions on the Corporation's administration, including any Local Agreements or Understandings, of the Family and Medical Leave Act shall be eliminated.</li><li>The Memorandum of Understanding – The Attendance Procedure and Statement of Policy submitted to the IAM, compliance with the FMLA of 1993 of the IAM-Delphi Agreement will be deleted, and all other references to attendance and Family and Medical Leave Act policies in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.</li><li>The Corporation may reduce vacation pay and holiday pay by the same percentage as an employee's absence during scheduled work hours during the previous year, including time on leave.</li></ul> |

| Subsidized Discount Programs | Any provisions of the IAM-Delphi Agreements that require expenditures by Delphi for personal items shall be eliminated, such as but not limited to: <br><br> • Company-paid health club memberships; <br><br> • Discount programs subsidized by Delphi such as AOL; and <br><br> • Clothing allowances. |
|---|---|
| **IAM Representation and Support** ||
| Funding and Joint Fund Accruals | Any and all funding provisions in the IAM-Delphi Agreements are eliminated. <br><br> Any and all reference to education, training, and development in other provisions and/or associated documents and all Supplemental Agreements will be eliminated. |
| Union Representation | • Representatives with no Grievance Procedure responsibilities (i.e. joint activities only) will not work overtime for representation purposes, but will be eligible equalize overtime within their respective equalization groups. <br><br> • The Union may designate one (1) Union representative per shift. The day shift representative shall function as Chairperson. No representative shall be permitted to function more than two (2) hours per day averaged over the normal work week (Monday Through Friday). |
| No-Strike Provisions | • No strikes, work stoppages or slowdowns shall be permitted during the term of the IAM-Delphi Agreements as modified by this Term Sheet. <br><br> • Paragraphs (81), (82), and (83) of the IAM-Delphi Agreement and other references to strikes in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |

| | |
|---|---|
| **Personal Savings Plan** | Applicable terms and conditions of Supplemental Agreement Covering Personal Savings Plan, Exhibit G-1, shall continue to apply. |
| | • All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted: |
| |     o  Improving Benefit Services Through Technology; and |
| |     o  Benefits Training and Education. |
| | Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the plan described above and shall be modified or eliminated as appropriate. |

|  |
|---|
| **Pension** |

| | |
|---|---|
| **Hourly-Rate Employees Pension Plan** | Applicable terms and conditions of Supplemental Agreement Covering Pension Plan, Exhibit A-1, shall be eliminated or modified as follows: |
| | • Freeze the Hourly-Rate Employees Pension Plan (HRP) which includes and the Individual Retirement Plan effective January 1, 2006. |
| | • As of the freeze date, HRP participants will accrue no additional credited service for purposes of calculating their benefits; |
| | • As of the freeze date, no new participants will be allowed to join the HRP; |
| | • As of the freeze date, the HRP will be amended to eliminate any benefits that are not protected by ERISA, including the Special Benefit; and |
| | • Implement a defined contribution benefit for future benefit accruals, where appropriate. |

| | |
|---|---|
| | All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted:<br><br>&bull; Statement of Intent (Representation);<br><br>&bull; Improving Benefit Services Through Technology;<br><br>&bull; Benefits Training and Education;<br><br>&bull; Workers Compensation;<br><br>&bull; Lump-Sum Payment;<br><br>&bull; Social Security; and<br><br>&bull; Total and Permanent Disability – Return to Work.<br><br>Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the plan described above and shall be modified or eliminated as appropriate. |
| **Potential Termination of Pension Plan** | The Corporation reserves the right while in Chapter 11 to seek a distress termination of the HRP in the event that it determines that it cannot maintain the HRP under the applicable legal standards for such a termination.  The Corporation shall make this decision based on (1) updated financial forecasts during the Chapter 11 case; and (2) the Corporation's ability to fund the HRP. |
| <u>**Defined Contribution Pension Plan**</u> | <u>For all employees hired on or after the effective date of a termination of the Hourly-Rate Employees Pension Plan (each such employee, a "New Hire"), the Corporation shall contribute 3% of each New Hire's Earnings to a defined contribution plan for the benefit of such New Hire employees.</u><br><br><u>For purposes of this provision, Earnings shall be defined as base hourly wage for hours worked, not to exceed 40 hours per week.</u> |
| **Other Post-Employment Benefits (OPEB)** | |
| **Health Care (Active Employees and Retirees)** | Applicable terms and conditions of Supplemental Agreement Covering Health Care Program, Exhibit C-1, shall be modified to eliminate any obligation the Corporation may have to provide active employees and Retirees with Corporation contributions for and access to the Delphi Health Care Program for Hourly |

| | Employees during retirement. |
|---|---|
| **Retiree Life Insurance– (Active Employees)** | Applicable terms and conditions of Supplemental Agreement Covering Life and Disability Benefits, Exhibit B-1, shall be modified to eliminate Basic Life Insurance, Survivor Income Benefit Insurance and Extra Accident Insurance in retirement. Retirees may continue any employee-paid coverages for which they were enrolled at the point of retirement. |
| **Retiree Life Insurance– (Retirees)** | Basic Life Insurance, Survivor Income Benefit Insurance and Extra Accident Insurance for current Retirees shall be eliminated. Retirees will be allowed to continue any employee-paid coverages for which they are enrolled. |
| **Local Agreements** | |
| **Effect on Local Agreements** | The IAM-Delphi Agreements, as modified by this Term Sheet, shall supersede and control all Local Agreements between the IAM local units and Delphi or any of its divisions.  Any provisions of the Local Agreements which are inconsistent with this Term Sheet shall have no force and effect following execution of the Term Sheet. |
| **Competitive Operating Agreements** | Within 90 days following ratification of this Term Sheet, Agreements at the plant covered by the IAM-Delphi Agreement will be revised, pursuant to local negotiations, to (1) reflect the provisions of this Term Sheet, and (2) adopt a Competitive Operating Agreement. <br><br> The Competitive Operating Agreement will address, but not be limited to, issues such as: <br><br> o Number of classifications, and efficient use of both production and skilled trades employees; <br><br> o Frequency of employee movement, including freezing transfers during product launches; <br><br> o Overtime equalization practices that are cumbersome, inefficient and/or non-competitive; and <br><br> o Local practices and work rules that are non-competitive, including but not limited, to the elimination of all forms of pay for time not worked (e.g., wash-up time, early quits). |

| Local Innovation | The Corporation may seek, and IAM Local Unions may agree to other changes that are justified by local competitive conditions or necessary to make local operations viable:<br><br>• Locally competitive wage rates and/or benefit plans – subject to National Party approval.<br><br>Alternative Work Schedules:<br><br>• The following alternative work schedules are pre-approved and available for local use with no overtime payable for the first 40 hours worked each week.<br><br>    o 3-Crew, 2-Shift<br><br>    o 4-Crew, 2-shift<br><br>    o Four days x ten hours<br><br>    o Weekend crew<br><br>• The Local Parties may develop other work schedules to meet particular local requirements, subject to approval by the Corporation and the International Union. |
| --- | --- |
| Living Agreement Provisions | All IAM-Delphi Agreements, including living agreements, shall expire coterminously with this Agreement. |

### Miscellaneous Provisions

| Definitive Documentation | This Term Sheet is intended only to describe the basic modifications to the current IAM-Delphi Agreement that are necessary for the reorganization of the Corporation under Section 1113(c) of the Bankruptcy Code, and is not intended to constitute final contract language.  The parties agree that they will draft final contract language, and execute the 2005 IAM-Delphi Agreement, within 60 days of the execution of this term sheet.  The parties further agree that in drafting final contract language, they will eliminate or modify any provisions of the current IAM-Delphi Agreements that are inconsistent with this term sheet or which would preclude the  Corporation from obtaining the full savings sought by this proposal. |
| --- | --- |

| | |
|---|---|
| **Right to Refile 1113 and 1114 Motions** | In the event that changes in the Corporation's financial condition or other relevant conditions require, the Corporation shall have the right while in Chapter 11 to seek further relief under Sections 1113 and 1114 of the Bankruptcy Code. |
| **Dispute Resolution** | Disputes, local and national, between the National Parties on matters involving the application or interpretation of this Term Sheet will be reviewed by a Joint Committee consisting of one (1) member appointed by the IAM Business Manager and one (1) member appointed by the Vice President, Human Resources Management, Delphi Corporation.<br><br>• The Joint Committee shall meet as required. Delphi will provide information as necessary on any issues raised for discussion or resolution.<br><br>• The Joint Committee will have full authority to settle all matters that are properly before it, recognizing that disputes governed by appeal procedures of the respective Benefit Plans, and other issues consistent with applicable law, may be outside the scope of the Committee's authority. If the Joint Committee is unable to resolve a matter properly before it, it will refer the matter directly to arbitration, using the arbitration provisions contained in the IAM-Delphi Agreement. |
| **Complete Agreement and Waiver** | The Corporation and the IAM acknowledge that during the negotiations which resulted in this Term Sheet and agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Term Sheet. Therefore, the Corporation and the IAM agree that for the life of the agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter referred to, or covered in the agreement, or with respect to any subject or matter not specifically referred to or covered in the agreement, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time that they negotiated or signed this |

Term Sheet or agreement. This Term Sheet represents the complete and total agreement of the Corporation and the IAM as to all modifications to the existing IAM-Delphi Agreements, and each party voluntarily and unqualifiedly waives the right to raise claims to the contrary.

Executed _____ day of _____, 2005.

FOR INTERNATIONAL ASSOCIATION
OF MACHINISTS, AFL-CIO, TOOL
AND DIE MAKERS

FOR DELPHI CORPORATION

_____

_____

WITNESS:

WITNESS:

_____

_____

_____

_____

_____

_____

**APPENDIX A –WAGES**

There is one (1) skilled wage rate.  Corresponding classification groupings are set forth in Attachment X.

Employees will receive the following rates of pay:

|  | Skilled |
|---|---|
| Base Rates - | $~~19.00~~21.50 |
| New Hire Rates - | $~~18.00~~19.50 |

New hire employees will receive an increase at the expiration of every 26 weeks worked from the date of hire until the full rate is attained.  The applicable rate, including the amount of each increase is set forth in the table below:

| Number of Weeks | Skilled |
|---|---|
| 0 – 26 | $~~18.00~~19.50 |
| 27 – 52 | $~~18.25~~20.00 |
| 53 – 78 | $~~18.50~~20.50 |
| 79 – 104 | $~~18.75~~21.00 |
| 105 – 130 | $~~19.00~~21.50 |

Current Delphi employees will be paid according to the above schedule based on their Delphi seniority date, and skilled trades date, if applicable.

The Apprentice Rate Schedule is set forth as follows:

| Apprentice Training Period | Hourly Rate* |
|---|---|
| 1st 916 Hours | $~~10.75~~12.00 |
| 2nd 916 Hours | $~~11.00~~12.50 |
| 3rd 916 Hours | $~~11.00~~12.50 plus   9% of "Rate Difference" |
| 4th 916 Hours | $~~11.00~~12.50 plus 20% of "Rate Difference" |
| 5th 916 Hours | $~~11.00~~12.50 plus 33% of "Rate Difference" |
| 6th 916 Hours | $~~11.00~~12.50 plus 48% of "Rate Difference" |
| 7th 916 Hours | $~~11.00~~12.50 plus 66% of "Rate Difference" |
| 8th 916 Hours | $~~11.00~~12.50 plus 86% of "Rate Difference" |

*The "Rate Difference" shall be determined by subtracting the hourly rate for the 2nd 916 hours from the maximum rate for the skilled classification for which the apprentice is in training.  Resultant rates shall be rounded to the nearest 1 cent.

Upon graduation, apprentices will receive an increase, if retained, to the midpoint of the rate range for the skilled classification to which they are assigned.

## APPENDIX B – HEALTH CARE

- Medical and Prescription Drugs

    o Dependent eligibility, scope and level of benefits, coordination of benefits, utilization management and general administrative provisions will be substantially the same as the current Basic Medical Plan provided to salaried enrollees.

    o Monthly contributions will be required and will be based on the cost of the health plan and certain other factors including, but not limited to, the number of people covered, the status of the primary enrollee, etc.

    o Monthly contributions, medical cost sharing and prescription drug cost sharing will be adjusted annually to account for any increase in the cost of providing the health care plan.

    o Medical Cost Sharing

        ▪ In-Network
            • Deductibles:        $~~900~~450 Individual/ $~~1,800~~900 Family
            • Copayment:          ~~25~~20% Employee/ ~~75~~80% Plan
            • Out-of-Pocket Max:  $~~2,500~~1,500 Individual/ $~~5,000~~3,000 Family

        ▪ Out-of-Network
            • Deductibles:        $~~900~~450 Individual/ $~~1,800~~900 Family
            • Copayment:          ~~45~~40% Employee/ ~~55~~60% Plan
            • Out-of-Pocket Max:  None

    o Prescription Drug Cost Sharing

        ▪ Retail:   $10 Generic/  $20 Formulary Brand/ $40 Non-formulary Brand

        ▪ Mail:     $20 Generic/ $45 Formulary Brand/ $90 Non-formulary Brand

        ▪ Out-of-network cost sharing is higher

        ▪ Mandatory generic, maintenance at mail and utilization management provisions apply

    o Monthly Contributions for Medical/Prescription Drug Coverage

- Employee:                     $ ~~85~~65
- Employee + Spouse:            $~~170~~130
- Employee + Child(ren):        $~~160~~125
- Employee + Family            $~~240~~180

  o  Other affordable health plan designs may be offered in the future.

- Dental – Not provided

- Vision – Not provided

**PROPOSED MODIFICATIONS TO THE IBEW-DELPHI AGREEMENTS
PURSUANT TO BANKRUPTCY CODE § 1113(c)
AND
PROPOSED MODIFICATIONS TO RETIREE WELFARE BENEFITS
PURSUANT TO BANKRUPTCY CODE § 1114**

This term sheet sets forth the proposals of Delphi Corporation and its operating divisions ("Delphi" or the " Corporation") for modifications pursuant to Section 1113(c) of the U.S. Bankruptcy Code, to the IBEW-Delphi Agreements, as defined below, between the International Brotherhood of Electrical Workers, including its Local Union 663 ("IBEW") and Delphi Energy & Chassis Division – Milwaukee Operations,  and for modifications to retiree welfare benefits pursuant to Section 1114 of the U.S. Bankruptcy Code for Delphi's existing retirees, surviving spouses, and dependents (collectively "Retirees").

| General Provisions | |
|---|---|
| **IBEW-Delphi Agreements** | The term "IBEW-Delphi Agreements" shall mean the following:<br><br>• The Agreement Between Delphi E & C Milwaukee Operations Delphi Corporation and the IBEW, dated March 31, 2004 (the "IBEW-Delphi E &C Agreement");<br><br>• The Supplemental Agreement Covering Pension Plan, Exhibit A-1, to Agreement between Delphi Corporation and IBEW, dated March 31, 2004;<br><br>• The Supplemental Agreement Covering Life and Disability Benefits Program, Exhibit B-1, to Agreement between Delphi Corporation and IBEW, dated March 31, 2004;<br><br>• The Supplemental Agreement Covering Health Care Program, Exhibit C-1 to Agreement between Delphi Corporation and IBEW, dated March 31, 2004;<br><br>• The Supplemental Agreement Covering Income Security Plan, Exhibit D-1 to Agreement between Delphi Corporation and IBEW, dated March 31, 2004;<br><br>• The Supplemental Agreement Covering Guaranteed Income Stream Benefit Program, Exhibit E-1, to Agreement between Delphi Corporation and IBEW, dated March 31, 2004;<br><br>• The Supplemental Agreement Covering Profit Sharing Plan, Exhibit F-1 to Agreement between Delphi Corporation and IBEW, dated March 31, 2004; |

| | |
|---|---|
| | • The Supplemental Agreement Covering Personal Savings Plan, Exhibit G-1 to Agreement between Delphi Corporation and IBEW, dated March 31, 2004; <br><br> Any and all other agreements, supplements, appendices, documents, memoranda, letters, minutes and understandings, published and unpublished, between Delphi Corporation and the IBEW. This does not include Local Agreements negotiated between Local Unions and Local Managements, except for those portions of such Local Agreements which involve subjects referenced herein, which portions are superseded by the terms of this Agreement. |
| **Effective Date** | The IBEW-Delphi Agreements, as modified by this Term Sheet, shall become effective on January 1, 2006 (the "Effective Date"). |
| **Duration** | The IBEW-Delphi Agreements, as modified by this Term Sheet, shall continue in effect until 11:59 p.m. on April 17, 2012, subject to the modification and termination provisions of Paragraph (78) of the IBEW-Delphi National Agreement. |
| **Wages and Related Provisions** | |
| **Base Wage Rates** | All base hourly wage rates under the IBEW-Delphi Agreements shall be modified as set forth in Appendix A: <br><br> Paragraph 64, the Wage Agreement, Paragraphs 9 and 13 of the Apprentice Agreement, and Supplement G of the IBEW-Delphi Agreement, and other references related to wage schedules, rates, general increases, performance bonuses, tool and other allowances in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. <br><br> All payroll drafts and EFT's will be dated on Friday. |
| **COLA** | There will be no Cost of Living Allowance (COLA). <br><br> Paragraphs (65)(a), (65)(b), (65)(c), (65)(d), (65)(e), (65)(f), (65)(g), (65)(h) and Document 3 of the IBEW-Delphi Agreement will be deleted, and all other references to COLA in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |

| Overtime | • The overtime provisions of the IBEW-Delphi Agreement shall be modified as follows. All overtime shall be payable at time and one half, irrespective of the day of the week in which the time is worked.<br><br>• Overtime shall be payable only after the employee has worked 40 hours in a pay period. For purposes of this provision, hours paid as vacation and holiday pay shall be counted toward the 40-hour requirement.<br><br>• Paragraphs (41), (42), (43), (43)(a)(1), (43)(a)(2), (43)(a)(3), (43)(b)(1), (43)(b)(2), (43)(b)(3), (43)(c) and Document 2 of the IBEW-Delphi Agreement will be deleted, and all other references to computing overtime premium pay in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• The amount and nature of any overtime to be worked shall be determined in the sole discretion of the Corporation. Any and all provisions of the IBEW-Delphi Agreement that purport to require overtime, or to limit management discretion to determine overtime requirements, shall be deleted.<br><br>• All voluntary overtime provisions such as General Local Demand #8 and Paragraphs (57)(f) and (57)(g)of the IBEW-Delphi Agreement shall be eliminated. |
|---|---|
| **Shift Premiums** | All existing shift premiums under the IBEW-Delphi Agreements shall be paid at five percent (5%) of the applicable base hourly rate, according to the following schedule: |

| Scheduled Shift Starting Time | Amount of Regular Shift Premium |
|---|---|
| (1) On or after 11:00 a.m. and before 5:00 a.m. | Five percent |
| (2) On or after 5:00 a.m. and before 11:00 a.m. | None |

|  | Paragraph (43)(d) of the IBEW-Delphi Agreement and all other references to existing shift premiums in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
|---|---|
| **Holidays, Vacation and Benefits** | |
| **Holidays** | On the Effective Date, the number of Corporation-paid holidays will be reduced to ten (10) days per year. Delphi will advise the IBEW as to the dates of the ten paid holidays. <br><br> Paragraphs (57), (57)(a), (57)(b), (57)(c), (57)(d), (57)(e), and (57)(f)of the IBEW-Delphi Agreement will be deleted and all other references to the Christmas Holiday Period in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| **Independence Week** | The Corporation-paid Independence Week holiday will be eliminated. <br><br> • At its discretion, annually, the Corporation may designate the week in which the Independence Day holiday falls as a mandatory vacation period. <br><br> • Employees will use Vacation Entitlement hours, if available, or be granted an unpaid leave of absence for such mandatory vacation period. <br><br> Paragraphs (56)(n), (56)(o), (56)(p), (56)(p)(1), (56)(p)(2), (56)(p)(3), (56)(p)(4), (56)(q), (56)(r)(1), (56)(r)(2), and (56)(r)(3) of the IBEW-Delphi Agreement will be deleted and all other references to Independence Week in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| **Vacation Accrual** | Paragraph (56)(c) of the IBEW-Delphi Agreement will be deleted, and all other references to vacation entitlement hours in other provisions and/or associated documents and all associated Supplemental Agreements will be modified to reflect the following vacation accrual schedule: <br><br> Effective January 1, 2006, vacation accrual rates shall be as follows: |

| For an Eligible Employee with Seniority of: | Hours of Vacation Entitlement |
|---|---|
| Less than one year | 40 |
| One but less than three years | 60 |
| Three but less than five years | 80 |
| Five but less than ten years | 100 |
| Ten but less than 15 years | 120 |
| Fifteen but less than 20 years | 140 |
| Twenty or more years | 160 |

| | |
|---|---|
| **Profit Sharing** | Applicable terms and conditions of Supplemental Agreement Covering Profit Sharing Plan, Exhibit F-1 shall continue to apply.<br><br>• Only "U.S. Operations", as defined under the 2003 Supplemental Agreement, Exhibit F-1, shall be included in any future calculation of profit sharing amounts.<br><br>• The following Letter Agreements shall be eliminated:<br><br>    o  Improving Benefit Services Through Technology; and<br><br>    o  Benefits Training and Education. |

| Health Care | Applicable terms and conditions of Supplemental Agreement Covering Health Care Program, Exhibit C-1, shall be modified to discontinue current health care options and replace them with the health care option generally described in Appendix B. |
|---|---|

- Appropriate modifications and deletions will be made to applicable Exhibits, Articles and Appendices of Exhibit C-1 to conform with the monthly contribution, cost sharing, dependent eligibility, scope and level of benefits, coordination of benefits, utilization management and other provisions contemplated by Appendix B.

- Applicable sections of Article III of Exhibit C-1 concerning continuation of health care coverage while not actively at work will be modified to provide for up to a maximum of seven (7) months of continuation following the month the employee is last in active service.

- Article V concerning the Special Benefit will be eliminated.

- All Miscellaneous Health Care Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the health plan described. Specifically, the following Documents and Letters shall be deleted:

  - Statement of Intent (Representation)
  - Understandings with Respect to:
    - Dental Coverage;
    - Vision Coverage;
    - Utilization Review and Cost Containment;;
    - Employee Contributions - Health Maintenance Organizations(HMOs), and Alternative Dental and Vision Options;
    - Supplemental Methodology for Review of Health Maintenance Organizations (HMOs), and Alternative Dental and Vision Options
    - Health Care - HMO

|  | |
|---|---|
| | • Letters of Agreement regarding the following subjects: |
| |      o   Informed Choice Plan (General); |
| |      o   Pharmacy Quality and Safety Components; |
| |      o   Preferred Provider Organizations; |
| |      o   Improving Benefit Services Through Technology; |
| |      o   Benefits Training and Education; |
| |      o   Community Initiatives; |
| |      o   Vision Network; |
| |      o   Preferred Dental Provider Arrangement; |
| |      o   Fertility Services; |
| |      o   Health Care Communication Strategy; |
| |      o   Mental Health and Substance Abuse Coverage; and |
| |      o   Traditional Care Network |
| | Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to providing the health care plan and shall be modified or eliminated as appropriate. |
| **Life and Disability** | Applicable terms and conditions of Exhibit B-1 shall be modified to: <br><br> • Limit Sickness & Accident benefits to a maximum of 26 weeks of disability; <br><br> • Allow the determination of total disability, for purposes of benefit eligibility and payment, to be made by the disability administrator; <br><br> • Eliminate the Impartial Medical Opinion (IMO) program; <br><br> • To make available, on an employee self-pay basis, Extended Disability Benefits for a maximum of 36 months of disability at an amount determined in accordance with Schedule I of the table found in Art. II, 5 of Exhibit B; |

| | |
|---|---|
| | • To reduce S&A/EDB payable to current and future recipients to an amount proportionate to the new wage rates;<br><br>• To provide active employees with $30,000 of Basic Life Insurance. Survivor Income Benefit Insurance and Extra Accident Insurance shall be eliminated; and<br><br>• To limit continuation of Life Insurance while not actively at work to a maximum of 6 months after the month following the month the employee was last in active service.<br><br>All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted:<br><br>• Statement of Intent (Representation);<br>• Improving Benefit Services Through Technology;<br>• Benefits Training and Education;<br>• IMO Letter; and<br>• Reinstated S&A Letter.<br><br>Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the program described above and shall be modified or eliminated as appropriate. |
| **Job Security and Severance** | |
| **Right to Sell, Close or Consolidate Facilities** | Any provisions of the IBEW-Delphi Agreement, and all related provisions of the existing agreements, that inhibit the Corporation's ability to close, or partially or wholly sell, spin-off, split-off, consolidate or otherwise dispose in any form of any plant, asset or business unit of any type shall be eliminated.<br><br>In the event the Corporation sells this facility, it shall use its best effort to obtain the purchaser's agreement to hire existing Delphi employees at the facility. |

| | |
|---|---|
| **Successorship** | Any provision of the IBEW-Delphi Agreement and all related provisions of the existing agreements, that would require a purchaser of Corporation facilities to assume existing collective bargaining agreements shall be eliminated. |
| **Elimination of Protected Status (JOBS Bank)** | Supplement J and Management's Answer(s) to Local Demand 24 and 25 of the IBEW-Delphi Agreement and all related provisions of the existing agreements shall be eliminated. The Corporation shall have the right immediately to lay off all employees on Protected Status (JOBS Bank). |
| **Hiring Requirements** | All hiring requirements accrued as of the Effective Date of this agreement generated as a result of any provision of the IBEW-Delphi Agreements will be canceled. All provisions of the Agreements that would impose ongoing or future hiring requirements or obligations will be eliminated, including apprentices. |
| **Need to Run Employment Levels** | The Corporation shall have sole discretion to determine the number of employees required at each facility, and to lay off or release employees who are unnecessary to the operation. All employment security, income security or other provisions of the existing agreements that restrict this right shall be eliminated. |
| **Hiring** | If employees are required, it will be solely at Delphi's discretion to add a new hire or a temporary employee. Supplements E and F of the IBEW-Delphi Agreement are eliminated.<br><br>During the course of an attrition program or in the event of an insufficient number of employees, the Corporation will meet and confer with the Union to discuss the use of contract service personnel. |
| **Relocation Allowance** | On a case-by-case basis, Delphi employees transferring from a Delphi plant to Delphi plant may be eligible for Relocation Allowance based on actual expenses incurred, up to a maximum of $10,000. |
| **Outsourcing** | Any provisions of the IBEW-Delphi Agreement and all other related provisions of the existing agreements that restrict the Corporation's right to source work, shall be eliminated. |
| **Severance Pay** | The Corporation will discuss implementation of affordable severance pay provisions for employees who are no longer required with no prospect of recall in the foreseeable future. |

| | |
|---|---|
| **Indirect Employees** | The Corporation shall have sole discretion to determine the type and number of non-production employees required at each facility, and the work to be assigned to such employees.<br><br>Paragraphs (31)(a) and (31)(b) of the IBEW-Delphi Agreement and all other references restricting the Corporation's discretion in this matter in other provisions and/or associated documents and all associated Supplements will be eliminated.<br><br>Supplement H of the IBEW-Delphi Agreement and all other provisions and/or associated documents will be modified to refer only to core activities that directly support production activities.<br><br>Full utilization of skilled trades will apply only to core activities which directly support production operations and/or the maintenance and repair of plant equipment, and which can be performed competitively and within the required time frame.  All other non-core skilled trades work will be outsourced or subcontracted, such as but not limited to:<br><br>&bull; Tool and equipment build;<br><br>&bull; Machine Re-build;<br><br>&bull; Building and facilities maintenance;<br><br>&bull; Truck repair;<br><br>&bull; Telephone and IT equipment installation and support; and<br><br>&bull; Construction and rearrangement of facilities.<br><br>An affected trade that is scheduled to work 40 hours per week will be considered "fully utilized".  Any monetary claims related to full utilization will be limited to the number of hours of work allegedly lost to the bargaining unit.  As such, Management's answer to Local Demand #12 is eliminated.<br><br>Indirect activities which are not competitive or which are not required for immediate support of production activities will be outsourced, contracted or eliminated. |

| | |
|---|---|
| **Income Security Plan** | Applicable terms and conditions of Supplemental Agreement, Exhibit D-1, and all local agreements that concern any income security plans, benefits, payments or practices shall be modified to close the plan to new participants and eliminate any future Corporation contributions to individual accounts. |
| **Guaranteed Income Stream Benefits** | The Supplemental Agreement Covering Guaranteed Income Stream Benefits Program, Exhibit E-1, to the IBEW-Delphi Agreement shall be eliminated. |
| **Temporary Employees** | The Corporation, at its discretion, may hire temporary employees. |
| **Other Provisions** | |
| **Attendance** | The Corporation's attendance policies shall be revised as follows:<br><br>• The Corporation may implement a no-fault attendance policy under which all employee absence/tardiness are tracked including leaves of absence. After reaching defined thresholds, the employees will be subject to automatic, non-grievable corrective disciplinary action, ultimately leading to discharge. The program will also have a mechanism for reducing further disciplinary action based on improved attendance.<br><br>• All restrictions on the Corporation's administration, including any Agreements or Understandings, of the Family and Medical Leave Act shall be eliminated.<br><br>• Supplement I of the IBEW-Delphi Agreement will be deleted, and all other references to attendance and Family and Medical Leave Act policies in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• The Corporation may reduce vacation pay and holiday pay by the same percentage as an employee's absence rate during scheduled work hours during the previous year, including time on leave. |

| | |
|---|---|
| **Subsidized Discount Programs** | Any agreements that require expenditures by Delphi for personal items shall be eliminated, such as but not limited to:<br><br>• Corporation-paid health club memberships;<br><br>• Discount programs subsidized by Delphi such as AOL; and<br><br>• Clothing allowances. |
| **IBEW Representation and Support** ||
| **Funding and Fund Accruals** | Any and all reference to education, training, and development in other provisions and/or associated documents and all Supplemental Agreements will be eliminated. |
| **Union Representation** | The Union may designate one (1) Union representative per shift. The day shift representative shall be the designated Chairperson. No representative shall function for representation purposes of any kind for more than two (2) hours per day, Monday through Friday, averaged over the week. |
| **No-Strike Provisions** | No strikes, work stoppages or slowdowns shall be permitted during the term of the IBEW-Delphi Agreements as modified by this Term Sheet.<br><br>Paragraphs (67) and (68) of the IBEW-Delphi Agreement and other references to strikes in other provisions and/or associated documents will be eliminated. |
| **Personal Savings Plan** | Applicable terms and conditions of Supplemental Agreement Covering Personal Savings Plan, Exhibit G-1, shall continue to apply<br><br>• All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted:<br><br>    o Improving Benefit Services Through Technology; and<br><br>    o Benefits Training and Education. |

| | |
|---|---|
| | Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the plan described above and shall be modified or eliminated as appropriate. |
| **Pension** | |
| **Hourly-Rate Employees Pension Plan** | Applicable terms and conditions of Supplemental Agreement Covering Pension Plan, Exhibit A-1, shall be eliminated or modified as follows:<br><br>• Freeze the Hourly-Rate Employees Pension Plan (HRP) which includes and the Individual Retirement Plan effective January 1, 2006;<br><br>• As of the freeze date, HRP participants will accrue no additional credited service for purposes of calculating their benefits;<br><br>• As of the freeze date, no new participants will be allowed to join the HRP;<br><br>• As of the freeze date, the HRP will be amended to eliminate any benefits that are not protected by ERISA, including the Special Benefit; and<br><br>• As of the freeze date, no new participants will be allowed to join the HRP;<br><br>• Implement a defined contribution benefit for future benefit accruals, where appropriate.<br><br>All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted: |

- Statement of Intent (Representation);
- Improving Benefit Services Through Technology;
- Benefits Training and Education;
- Workers Compensation;
- Lump-Sum Payment;
- Social Security; and
- Total and Permanent Disability – Return to Work.

Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the HRP described above and shall be modified or eliminated as appropriate.

| | |
|---|---|
| **Potential Termination of Hourly Rate Pension Plan** | The Corporation reserves the right while in Chapter 11 to seek a distress termination of the HRP in the event that it determines that it cannot maintain the HRP under the applicable legal standards for such a termination. The Corporation shall make this decision based on (1) updated financial forecasts during the Chapter 11 case; and (2) the Corporation's ability to fund the HRP. |
| <u>**Defined Contribution Pension Plan**</u> | <u>For all employees hired on or after the effective date of a termination of the Hourly-Rate Employees Pension Plan (each such employee, a "New Hire"), the Corporation shall contribute 3% of each New Hire's Earnings to a defined contribution plan for the benefit of such New Hire employees.</u><br><br><u>For purposes of this provision, Earnings shall be defined as base hourly wage for hours worked, not to exceed 40 hours per week.</u> |
| **Other Post-Employment Benefits OPEB** | |
| **Health Care (Active Employees and Retirees)** | Applicable terms and conditions of Supplemental Agreement Covering Health Care Program, Exhibit C-1, shall be modified to eliminate any obligation the Corporation may have to provide active employees and Retirees with Corporation contributions for and access to the Delphi Corporation Health Care Program for Hourly Employees during retirement. |
| **Retiree Life Insurance – (Active** | Applicable terms and conditions of Supplemental Agreement Covering Life and Disability Benefits Program, Exhibit B-1, shall be modified to eliminate Basic Life Insurance, Survivor Income |

| | |
|---|---|
| **Employees)** | Benefit Insurance and Extra Accident Insurance in retirement. Retirees may continue any employee-paid coverages for which they were enrolled at the point of retirement. |
| **Retiree Life Insurance – (Retirees)** | Basic Life Insurance, Survivor Income Benefit Insurance and Extra Accident Insurance for current Retirees shall be eliminated. Retirees will be allowed to continue any employee-paid coverages for which they are enrolled. |

| **Other Agreements** | |
|---|---|
| **Effect on Other Agreements** | The IBEW-Delphi Agreements, as modified by this Term Sheet, shall supersede and control all Agreements between the IBEW Local 663 and Delphi Corporation Energy and Chassis Division, Milwaukee Operations.<br><br>Upon execution of this Term Sheet, any provisions of the Agreements which are inconsistent with this Term Sheet shall be deemed to have been eliminated, following execution of the Term Sheet. |
| **Competitive Operating Agreements** | Within 90 days following ratification of this Term Sheet, Local Agreements at the Delphi E&C – Milwaukee Operations plant covered by the IBEW-Delphi Agreement will be revised, pursuant to negotiations, to (1) reflect the provisions of this Term Sheet, and (2) adopt a Competitive Operating Agreement.<br><br>The Competitive Operating Agreement will address, but not be limited to, issues such as:<br><br> o Efficient use of skilled trades employees;<br><br> o Frequency of employee movement, including freezing transfers during product launched;<br><br> o Overtime equalization practices that are cumbersome, inefficient and/or non-competitive; and<br><br> o Local practices and work rules that are non-competitive, including but not limited, to the elimination of all forms of pay for time not worked (e.g., wash-up time, early quits). |

| Local Innovation | The Corporation may seek, and the IBEW Local Union may agree to other changes that are justified by local competitive conditions or necessary to make local operations viable: |
|---|---|
| | <ul><li>Locally competitive wage rates and/or benefit plans – subject to Corporate approval.</li></ul>Alternative Work Schedules:<ul><li>The following alternative work schedules are pre-approved and available for local use with no overtime payable for the first 40 hours worked each week.<ul><li>3-Crew, 2-Shift</li><li>4-Crew, 2-shift</li><li>Four days x ten hours</li><li>Weekend crew</li></ul></li><li>The Local Parties may develop other work schedules to meet particular local requirements, subject to approval by the Corporation and the International Union.</li></ul> |
| **Living Agreement Provisions** | All IBEW-Delphi agreements that do not have an expiration date shall be amended to expire coterminously with this Agreement. |
| **Miscellaneous Provisions** ||
| **Definitive Documentation** | This Term Sheet is intended only to describe the basic modifications to the current IBEW-Delphi Agreements that are necessary for the reorganization of the Corporation under Section 1113(c) of the Bankruptcy Code, and is not intended to constitute final contract language. The parties agree that they will draft final contract language, and execute the 2005 IBEW-Delphi Agreement, within 60 days of the execution of this term sheet. The parties further agree that in drafting final contract language, they will eliminate or modify any provisions of the current IBEW-Delphi Agreements that are inconsistent with this term sheet or which would preclude the Corporation from obtaining the full savings sought by this proposal. |

| | |
|---|---|
| **Right to Refile 1113 and 1114 Motions** | In the event that changes in the Corporation's financial condition or other relevant conditions require, the Corporation shall have the right while in Chapter 11 to seek further relief under Sections 1113 and 1114 of the Bankruptcy Code. |
| **Dispute Resolution** | Dispute between the Parties on matters involving the application or interpretation of this Term Sheet will be reviewed by a Joint Committee consisting of one (1) member appointed by the IBEW President/Business Manager and one (1) member appointed by the Vice President, Human Resources Management, Delphi Corporation.<br><br>• The Joint Committee shall meet as required.  Delphi will provide information as necessary on any issues raised for discussion or resolution.<br><br>• The Joint Committee will have full authority to settle all matters that are properly before it, recognizing that disputes governed by appeal procedures of the respective Benefit Plans, and other issues consistent with applicable law, may be outside the scope of the Committee's authority.  If the Joint Committee is unable to resolve a matter properly before it, it will refer the matter directly to arbitration, using the arbitration provisions contained in the IBEW-Delphi Agreement. |
| **Complete Agreement and Waiver** | The Corporation and the IBEW acknowledge that during the negotiations which resulted in this Term Sheet and agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Term Sheet.  Therefore, the Corporation and the IBEW agree that for the life of the agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter referred to, or covered in the agreement, or with respect to any subject or matter not specifically referred to or covered in the agreement, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time that they negotiated or |

signed this Term Sheet or agreement.  This Term Sheet represents the complete and total agreement of the Corporation and the IBEW as to all modifications to the existing IBEW-Delphi Agreements, and each party voluntarily and unqualifiedly waives the right to raise claims to the contrary.

Executed _____ day of _____, 2005.

FOR INTERNATIONAL                    FOR DELPHI CORPORATION
BROTHERHOOD OF ELECTRICAL
WORKERS, LOCAL 663

_____          _____

WITNESS:                             WITNESS:

_____          _____

_____          _____

_____          _____

# APPENDIX A – WAGES

There is one (1) skilled wage rate.  Employees will receive the following rates of pay:

|  | Skilled |
|---|---|
| Base Rates - | $~~19.00~~21.50 |
| New Hire Rates - | $~~18.00~~19.50 |

New hire employees will receive an increase at the expiration of every 26 weeks worked from the date of hire until the full rate is attained.  The applicable rate, including the amount of each increase is set forth in the table below:

| Number of Weeks | Skilled |
|---|---|
| 0 – 26 | $~~18.00~~19.50 |
| 27 – 52 | $~~18.25~~20.00 |
| 53 – 78 | $~~18.50~~20.50 |
| 79 – 104 | $~~18.75~~21.00 |
| 105 – 130 | $~~19.00~~21.50 |

Current Delphi employees will be paid according to the above schedule based on their Delphi seniority date, and skilled trades date, if applicable.

The Apprentice Rate Schedule is set forth as follows:

| Apprentice Training Period | Hourly Rate* |
|---|---|
| 1st 1040 Hours | $~~10.75~~12.00 |
| 2nd 1040 Hours | $~~11.00~~12.50 |
| 3rd 1040 Hours | $~~11.00~~12.50 plus  9% of "Rate Difference" |
| 4th 1040 Hours | $~~11.00~~12.50 plus 20% of "Rate Difference" |
| 5th 1040 Hours | $~~11.00~~12.50 plus 33% of "Rate Difference" |
| 6th 1040 Hours | $~~11.00~~12.50 plus 48% of "Rate Difference" |
| 7th 1040 Hours | $~~11.00~~12.50 plus 66% of "Rate Difference" |
| 8th 1040 Hours | $~~11.00~~12.50 plus 86% of "Rate Difference" |

*The "Rate Difference" shall be determined by subtracting the hourly rate for the 2nd 1040 hours from the maximum rate for the skilled classification for which the apprentice is in training.  Resultant rates shall be rounded to the nearest 1 cent.

Upon graduation, apprentices will receive an increase, if retained, to the midpoint of the rate range for the skilled classification to which they are assigned.

## APPENDIX B – HEALTH CARE

- Medical and Prescription Drugs

    o Dependent eligibility, scope and level of benefits, coordination of benefits, utilization management and general administrative provisions will be substantially the same as the current Basic Medical Plan provided to salaried enrollees.

    o Monthly contributions will be required and will be based on the cost of the health plan and certain other factors including, but not limited to, the number of people covered, the status of the primary enrollee, etc.

    o Monthly contributions, medical cost sharing and prescription drug cost sharing will be adjusted annually to account for any increase in the cost of providing the health care plan.

    o Medical Cost Sharing

        ▪ In-Network
            • Deductibles:        $900450 Individual/ $1,800900 Family
            • Copayment:          2520% Employee/ 7580% Plan
            • Out-of-Pocket Max:  $2,5001,500 Individual/ $5,0003,000 Family

        ▪ Out-of-Network
            • Deductibles:        $900450 Individual/ $1,800900 Family
            • Copayment:          4540% Employee/ 5560% Plan
            • Out-of-Pocket Max:  None

    o Prescription Drug Cost Sharing

        ▪ Retail:   $10 Generic/ $20 Formulary Brand/ $40 Non-formulary Brand
        ▪ Mail:     $20 Generic/ $45 Formulary Brand/ $90 Non-formulary Brand
        ▪ Out-of-network cost sharing is higher
        ▪ Mandatory generic, maintenance at mail and utilization management provisions apply

    o Monthly Contributions for Medical/Prescription Drug Coverage

        ▪ Employee:              $ 8565
        ▪ Employee + Spouse:     $170130

- Employee + Child(ren):    $160125
- Employee + Family    $240180

  o Other affordable health plan designs may be offered in the future.

- Dental – Not provided

- Vision – Not provided

## PROPOSED MODIFICATIONS TO THE IBEW-DELPHI AGREEMENTS
## PURSUANT TO BANKRUPTCY CODE § 1113(c)
## AND
## PROPOSED MODIFICATIONS TO RETIREE WELFARE BENEFITS
## PURSUANT TO BANKRUPTCY CODE § 1114

This term sheet sets forth the proposals of Delphi Corporation and its operating divisions ("Delphi" or the " Corporation") for modifications pursuant to Section 1113(c) of the U.S. Bankruptcy Code, to the IBEW-Delphi Agreements, as defined below, between the International Brotherhood of Electrical Workers, AFL-CIO, Local Union 663 ("IBEW") and Delphi Corporation Electronics & Safety Division – Milwaukee Operations, and for modifications to retiree welfare benefits pursuant to Section 1114 of the U.S. Bankruptcy Code, for Delphi's existing retirees, surviving spouses, and dependents (collectively "Retirees").

| General Provisions | |
|---|---|
| **IBEW-Delphi Agreements** | The term "IBEW-Delphi Agreements" shall mean the following: <br><br> • The Agreement between Delphi Corporation E & S Milwaukee Operations, and the IBEW dated March 11, 2004 (the IBEW-Delphi Agreement); <br><br> • The Supplemental Agreement Covering Pension Plan, Exhibit A-1 to Agreement between Delphi Corporation and IBEW dated March 11, 2004; <br><br> • The Supplemental Agreement Covering Life and Disability Benefits Program, Exhibit B-1 to Agreement between Delphi Corporation and IBEW dated March 11, 2004; <br><br> • The Supplemental Agreement Covering Health Care Program, Exhibit C-1 to Agreement between Delphi Corporation and IBEW dated March 11, 2004; <br><br> • The Supplemental Agreement Covering Income Security Plan, Exhibit D-1,to Agreement between Delphi Corporation and IBEW dated March 11, 2004; <br><br> • The Supplemental Agreement Covering Guaranteed Income Stream Benefit Program, Exhibit E-1 to Agreement between Delphi Corporation and IBEW dated March 11, 2004; <br><br> • The Supplemental Agreement Covering Profit Sharing Plan, Exhibit F-1 to Agreement between Delphi Corporation and IBEW dated March 11, 2004; |

| | |
|---|---|
| | • The Supplemental Agreement Covering Personal Savings Plan, Exhibit G-1 to Agreement between Delphi Corporation and IBEW dated March 11, 2004;<br><br>All other agreements, supplements, appendices, documents, memoranda, letters, minutes and understandings, published and unpublished, between Delphi Corporation and the IBEW. |
| **Effective Date** | The IBEW-Delphi Agreements, as modified by this Term Sheet, shall become effective on January 1, 2006 (the "Effective Date"). |
| **Duration** | The IBEW-Delphi Agreements, as modified by this Term Sheet, shall continue in effect until 11:59 p.m. on April 17, 2012, subject to the modification and termination provisions of Paragraph (80) of the IBEW-Delphi Agreement. |
| **Wages and Related Provisions** ||
| **Base Wage Rates** | All base hourly wage rates under the IBEW-Delphi Agreements shall be modified as set forth in Appendix A:<br><br>Paragraphs (23), (47), (67), (67b) and the Wage Agreement dated March 11, 2004 of the IBEW-Delphi Agreement, and other references related to wage schedules, rates, general increases, performance bonuses, tool and other allowances in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>All payroll drafts and EFT's will be dated on Friday. |
| **COLA** | There will be no Cost of Living Allowance (COLA).<br><br>Paragraphs (68)(a), (68)(b), (68)(c), (68)(d), (68)(d), (68)(e), (68)(f), (68)(g), (68)(h), (68)(i), and the Letter dated March 11, 2004 on COLA Calculation of the IBEW-Delphi Agreement will be deleted, and all other references to COLA in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| **Overtime** | • The overtime provisions of the IBEW-Delphi Agreements shall be modified as follows:<br><br>• All overtime shall be payable at time and one half, irrespective of the day of the week in which the time is worked.<br><br>• Overtime shall be payable only after the employee has |

|  | worked 40 hours in a pay period. For purposes of this provision, hours paid as vacation and holiday pay shall be counted toward the 40-hour requirement.<br><br>• Paragraphs (44), (45), (46)(a)(1), (46)(a)(2), (46)(a)(3), (46)(b)(1), (46)(b)(2), (46)(b)(3), (46)(c)(1), (46)(d)(1), and (46)(e)(1) of the IBEW-Delphi Agreement will be deleted, and all other references to computing overtime premium pay in other provisions and/or associated documents will be eliminated.<br><br>• The amount and nature of any overtime to be worked shall be determined in the sole discretion of the Corporation. Any and all provisions of the IBEW-Delphi Agreements that purport to require overtime, or to limit management discretion to determine overtime requirements, shall be deleted.<br><br>• All voluntary overtime provisions such as such as Statements of Policy and Demand Settlements on Supplementary Overtime of the IBEW-Delphi Agreement shall be eliminated. |
|---|---|
| **Shift Premiums** | All existing shift premiums shall be paid at five percent (5%) of the applicable base hourly rate, according to the following schedule:<br><br>Paragraph (46)(d) of the IBEW-Delphi Agreement and all other references to existing shift premiums in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |

| Scheduled Shift Starting Time | Amount of Regular Shift Premium |
|---|---|
| (1) On or after 11:00 a.m. and before 5:00 a.m. | Five percent |
| (2) On or after 5:00 a.m. and before 11:00 a.m. | None |

| Holidays, Vacation and Benefits | |
|---|---|
| **Holidays** | On the Effective Date, the number of Corporation-paid holidays will be reduced to ten (10) days per year. Delphi will advise the IBEW as to the dates of the ten paid holidays.<br><br>Paragraphs (60), (60)(a), (60)(b), (60)(c), (60)(d), (60)(e), (60)(f), (61), (62), and (66) of the IBEW-Delphi Agreement will be deleted and all other references to the Christmas Holiday Period in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| **Independence Week** | The Corporation-paid Independence Week holiday will be eliminated.<br><br>• At its discretion, annually, the Corporation may designate the week in which the Independence Day holiday falls as a mandatory vacation period.<br><br>• Employees will use Vacation Entitlement hours, if available, or be granted an unpaid leave of absence for such mandatory vacation period.<br><br>Paragraphs (58)(n), (58)(o), (58)(p), (58)(p)(1), (58)(p)(2), (58)(p)(3), (58)(q), (58)(r)(1), (58)(r)(2), (58)(r)(3), Statement of Policy and Demand Answers on Independence Week Shutdown of the IBEW-Delphi Agreement will be deleted and all other references to Independence Week in other provisions and/or associated documents will be eliminated. |
| **Vacation Accrual** | Paragraph (56)(c) of the IBEW-Delphi Agreement will be deleted, and all other references to vacation entitlement hours in other provisions and/or associated documents and all associated Supplemental Agreements will be modified to reflect the following vacation accrual schedule:<br><br>Effective January 1, 2006, vacation accrual rates shall be as follows: |

| For an Eligible Employee with Seniority of: | Hours of Vacation Entitlement |
|---|---|
| Less than one year | 40 |
| One but less than three years | 60 |
| Three but less than five years | 80 |
| Five but less than ten years | 100 |
| Ten but less than 15 years | 120 |
| Fifteen but less than 20 years | 140 |
| Twenty or more years | 160 |

| | |
|---|---|
| **Profit Sharing** | Applicable terms and conditions of Supplemental Agreement Covering Profit Sharing Plan, Exhibit F-1, shall continue to apply except as follows:<br><br>• Only "U.S. Operations", as defined under the 2003 Supplemental Agreement, Exhibit F-1, shall be included in any future calculation of profit sharing amounts.<br><br>• The following Letter Agreements shall be eliminated:<br><br>    o Improving Benefit Services Through Technology; and<br><br>    o Benefits Training and Education. |

| Health Care | Applicable terms and conditions of Supplemental Agreement Covering Health Care Program, Exhibit C-1, shall be modified to discontinue current health care options and replace them with the health care option generally described in Appendix B. |
|---|---|

<br>

- Appropriate modifications and deletions will be made to applicable Exhibits, Articles and Appendices of Exhibit C-1 to conform with the monthly contribution, cost sharing, dependent eligibility, scope and level of benefits, coordination of benefits, utilization management and other provisions contemplated by Appendix B.

- Applicable sections of Article III of Exhibit -1 concerning continuation of health care coverage while not actively at work will be modified to provide for up to a maximum of seven (7) months of continuation following the month the employee is last in active service.

- Article V concerning the Special Benefit will be eliminated.

All Miscellaneous Health Care Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the health plan described. Specifically, the following Documents and Letters shall be deleted:

- Statement of Intent (Representation)

- Understandings with Respect to:

  - Dental Coverage;

  - Vision Coverage;

  - Utilization Review and Cost Containment;

  - Employee Contributions - Health Maintenance Organizations(HMOs), and Alternative Dental and Vision Options;

  - Supplemental Methodology for Review of Health Maintenance Organizations (HMOs), and Alternative Dental and Vision Options

  - Health Care – HMO

- o   Community Initiatives;

- o   Vision Network;

- o   Improving Benefit Services Through Technology;

- o   Benefits Training and Education;

- o   Pharmacy Quality and Safety Components;

- o   Preferred Provider Organizations;

- Letters of Agreement regarding the following subjects:
  - o   Informed Choice Plan (General);

  - o   Preferred Dental Provider Arrangement;

  - o   Fertility Services;

  - o   Health Care Communication Strategy;

  - o   Mental Health and Substance Abuse Coverage; and

  - o   Traditional Care Network.

Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to providing the health care plan and shall be modified or eliminated as appropriate.

| Life and Disability | Applicable terms and conditions of Supplemental Agreement Exhibit B-1 shall be modified to: |
|---|---|
| | • Limit Sickness & Accident benefits to a maximum of 26 weeks of disability; |
| | • Allow the determination of total disability, for purposes of benefit eligibility and payment, to be made by the disability administrator; |
| | • Eliminate the Impartial Medical Opinion (IMO) program; |
| | • To make available, on an employee self-pay basis, Extended Disability Benefits for a maximum of 36 months of disability at an amount determined in accordance with Schedule I of the table found in Art. II, 5 of Exhibit B; |
| | • To reduce S&A/EDB payable to current and future recipients to an amount proportionate to the new wage rates; |
| | • To provide active employees with $30,000 of Basic Life Insurance. Survivor Income Benefit Insurance and Extra Accident Insurance shall be eliminated; |
| | • To limit continuation of Life Insurance while not actively at work to a maximum of 6 months after the month following the month the employee was last in active service. |
| | All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted: |
| | • Statement of Intent (Representation); |
| | • Improving Benefit Services Through Technology; |
| | • Benefits Training and Education; |
| | • IMO Letter; and |
| | • Reinstated S&A Letter. |
| | Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the program described above and shall be modified or eliminated as appropriate. |

| Job Security and Severance | |
|---|---|
| **Right to Sell, Close or Consolidate Facilities** | The plant Closing and Sale Moratorium of the IBEW-Delphi Agreement, and all related provisions of the existing agreements, that inhibit the Corporation's ability to close, or partially or wholly sell, spin-off, split-off, consolidate or otherwise dispose in any form of any plant, asset or business unit of any type shall be eliminated.<br><br>In the event the Corporation sells this facility, it shall use its best effort to obtain the purchaser's agreement to hire existing Delphi employees at the facility. |
| **Successorship** | Sale of Business Letter of the IBEW-Delphi Agreement and all related provisions of the existing agreements, that would require a purchaser of Corporation facilities to assume existing collective bargaining agreements shall be eliminated. |
| **Elimination of Protected Status (JOBS Bank)** | Memorandum of Understanding – Employment Security of the IBEW-Delphi Agreement and all related provisions of the existing agreements shall be eliminated. The Corporation shall have the right immediately to lay off all employees on Protected Status (JOBS Bank). |
| **Hiring Requirements** | All hiring requirements accrued as of the Effective Date of this agreement generated as a result of any provision of the IBEW-Delphi Agreements will be canceled. All provisions of the Agreement that would impose ongoing or future hiring requirements or obligations will be eliminated, including apprentices. |
| **Need to Run Employment Levels** | The Corporation shall have sole discretion to determine the number of employees required at each facility, and to lay off or release employees who are unnecessary to the operation. All employment security, income security or other provisions of the existing agreements that restrict this right shall be eliminated. |
| **Hiring** | If employees are required, it will be solely at Delphi's discretion to add a new hire or a temporary employee. The Statement of Policy and Demand Settlements consideration given to IBEW-Delphi employees are eliminated.<br><br>During the course of an attrition program or in the event of an insufficient number of employees, the Corporation will meet and confer with the Union to discuss the use of contract service personnel. |

| | |
|---|---|
| **Relocation Allowance** | On a case-by-case basis, Delphi employees transferring from a Delphi Plant to a Delphi Plant may be eligible for a Relocation Allowance based on actual expenses incurred up to a maximum of $10,000. |
| **Outsourcing** | Any provisions of the IBEW-Delphi Agreement and all other related provisions of the existing agreements that restrict the Corporation's right to source work, shall be eliminated. |
| **Severance Pay** | The Corporation will discuss implementation of affordable severance pay provisions for employees who are no longer required with no prospect of recall in the foreseeable future. |
| **Indirect Employees** | The Corporation shall have sole discretion to determine the type and number of non-production employees required at each facility, and the work to be assigned to such employees.<br><br>Paragraph (35) and Apprentice Agreement IV of the IBEW-Delphi Agreement and all other references restricting the Corporation's discretion in this matter in other provisions and/or associated documents will be eliminated.<br><br>Statements of Policy and Demand Settlements covering Subcontracting of the IBEW-Delphi Agreement and all other provisions and/or associated documents will be modified to refer only to core activities that directly support production activities.<br><br>Full utilization of skilled trades will apply only to core activities which directly support production operations and/or the maintenance and repair of plant equipment, and which can be performed competitively and within the required time frame. All other non-core skilled trades work will be outsourced or subcontracted, such as but not limited to:<br><br>• Tool and equipment build;<br><br>• Machine Re-build;<br><br>• Building and facilities maintenance;<br><br>• Truck repair;<br><br>• HVAC installation and repair; |

| | |
|---|---|
| | • Telephone and IT equipment installation and support; and |
| | • Construction and rearrangement of facilities. |
| | An affected trade that is scheduled to work 40 hours per week will be considered "fully utilized". Any monetary claims related to full utilization will be limited to the number of hours of work allegedly lost to the bargaining unit. |
| | Indirect activities which are not competitive or which are not required for immediate support of production activities will be outsourced, contracted or eliminated. |
| **Guaranteed Income Stream Benefits** | The Supplemental Agreement Covering Guaranteed Income Stream Benefits Program, Exhibit E-1, to the IBEW-Delphi Agreement shall be eliminated. |
| **Income Security Plan** | Applicable terms and conditions of Supplemental Agreement, Exhibit D-1, and all local agreements that concern any income security plans, benefits, payments or practices shall be modified to close the plan to new participants and eliminate any future Corporation contributions to individual accounts. |
| **Temporary Employees** | The Corporation, at its discretion, may hire temporary employees. |
| **Other Provisions** | |
| **Attendance** | The Corporation's attendance policies shall be revised as follows: <br><br> • The Corporation may implement a no-fault attendance policy under which all employee absence/tardiness are tracked including leaves of absence. After reaching defined thresholds, the employees will be subject to automatic, non-grievable corrective disciplinary action, ultimately leading to discharge. The program will also have a mechanism for reducing further disciplinary action based on improved attendance. <br><br> • All restrictions on the Corporation's administration, including any Agreements or Understandings, of the Family and Medical Leave Act shall be eliminated. |

| | |
|---|---|
| | • Memorandum of Understanding Special Procedure for Attendance and Statement of Policy and Demand settlements covering compliance with the FMLA of 1993 of the IBEW-Delphi Agreement will be deleted, and all other references to attendance and Family and Medical Leave Act policies in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• The Corporation may reduce vacation pay and holiday pay by the same percentage as an employee's absence rate during scheduled work hours during the previous year, including time on leave. |
| **Subsidized Discount Programs** | Any and all provisions of the IBEW-Delphi Agreements that require expenditures by Delphi for personal items shall be eliminated. Such provisions include, but are not limited to:<br><br>• Corporation-paid health club memberships;<br><br>• Discount programs subsidized by Delphi such as AOL; and<br><br>• Clothing allowances. |
| | **IBEW Representation and Support** |
| **Funding and Joint Fund Accruals** | • Any and all reference to education, training, and development in other provisions and/or associated documents and all Supplemental Agreements will be eliminated. |
| **Union Representation** | • The Union may designate one (1) Union representative per shift. The day shift representative shall function as Chairperson. No representative shall be permitted to function more than two (2) hours per day averaged over the normal work week (Monday Through Friday). |
| **No-Strike Provisions** | • No strikes, work stoppages or slowdowns shall be permitted during the term of the IBEW-Delphi Agreements as modified by this Term Sheet.<br><br>• Paragraphs (70) and (71) of the IBEW-Delphi Agreement and other references to strikes in other provisions and/or associated documents will be eliminated. |

| | |
|---|---|
| **Personal Savings Plan** | Applicable terms and conditions of Supplemental Agreement Covering Personal Savings Plan, Exhibit G-1, shall continue to apply except as follows:<br><br>• All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted:<br><br>   o Improving Benefit Services Through Technology; and<br>   o Benefits Training and Education.<br><br>Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the plan described above and shall be modified or eliminated as appropriate. |
| **Pension** | |
| **Hourly-Rate Employees Pension Plan** | Applicable terms and conditions of Supplemental Agreement Covering Pension Plan, Exhibit A-1, shall be eliminated or modified as follows:<br><br>• Freeze the Hourly-Rate Employees Pension Plan (HRP) which includes and the Individual Retirement Plan effective January 1, 2006;<br><br>• As of the freeze date, HRP participants will accrue no additional credited service for purposes of calculating their benefits;<br><br>• As of the freeze date, no new participants will be allowed to join the HRP;<br><br>• As of the freeze date, the HRP will be amended to eliminate any benefits that are not protected by ERISA, including the Special Benefit; and<br><br>• Implement a defined contribution benefit for future benefit accruals, where appropriate. |

| | All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted: |
|---|---|
| | • Statement of Intent (Representation); |
| | • Improving Benefit Services Through Technology; |
| | • Benefits Training and Education; |
| | • Workers Compensation; |
| | • Lump-Sum Payment |
| | • Social Security; and |
| | • Total and Permanent Disability – Return to Work. |
| | Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the HRP described above and shall be modified or eliminated as appropriate. |
| **Potential Termination of Hourly Rate Pension Plan** | The Corporation reserves the right while in Chapter 11 to seek a distress termination of the HRP in the event that it determines that it cannot maintain the HRP under the applicable legal standards for such a termination.  The Corporation shall make this decision based on (1) updated financial forecasts during the Chapter 11 case; and (2) the Corporation's ability to fund the HRP. |
| <u>**Defined Contribution Pension Plan**</u> | <u>For all employees hired on or after the effective date of a termination of the Hourly-Rate Employees Pension Plan (each such employee, a "New Hire"), the Corporation shall contribute 3% of each New Hire's Earnings to a defined contribution plan for the benefit of such New Hire employees.</u> <u>For purposes of this provision, Earnings shall be defined as base hourly wage for hours worked, not to exceed 40 hours per week.</u> |
| **Other Post-Employment Benefits (OPEB)** | |
| **Health Care (Active Employees and Retirees)** | Applicable terms and conditions of Supplemental Agreement Covering Health Care Program, Exhibit C-1, shall be modified to eliminate any obligation the Corporation may have to provide active employees and Retirees with Corporation contributions for and access to the Delphi Corporation Health Care Program for |

|  | Hourly Employees during retirement. |
| --- | --- |
| **Retiree Life Insurance– (Active Employees)** | Applicable terms and conditions of Supplemental Agreement Covering Life and Disability Benefits Program, Exhibit B-1, shall be modified to eliminate Basic Life Insurance, Survivor Income Benefit Insurance and Extra Accident Insurance in retirement. Retirees may continue any employee-paid coverages for which they were enrolled at the point of retirement. |
| **Retiree Life Insurance– (Retirees)** | Basic Life Insurance, Survivor Income Benefit Insurance and Extra Accident Insurance for current retirees shall be eliminated. Retirees will be allowed to continue any employee-paid coverages for which they are enrolled. |
| **Other Agreements** | |
| **Effect on Other Agreements** | The IBEW-Delphi Agreement, as modified by this Term Sheet, shall supersede and control all Agreements between the IBEW Local 663 and Delphi Corporation Electronics & Safety Division, Milwaukee Operations.<br><br>Upon execution of this Term Sheet, any provisions of the IBEW-Delphi Agreements which are inconsistent with this Term Sheet shall be deemed to have been eliminated, following execution of the Term Sheet. |
| **Competitive Operating Agreements** | Within 90 days following ratification of this Term Sheet, Agreements at the Delphi E&S – Milwaukee Operations plant covered by the IBEW-Delphi Agreement will be revised, pursuant to negotiations, to (1) reflect the provisions of this Term Sheet, and (2) adopt a Competitive Operating Agreement.<br><br>The Competitive Operating Agreement will address, but not be limited to, issues such as:<br><br>• Number of classifications and an efficient use of skilled trades employees;<br><br>• Frequency of employee movement, including freezing transfers during product launches;<br><br>• Overtime equalization practices that are cumbersome, inefficient and/or non-competitive; and<br><br>• Local practices and work rules that are non-competitive, including but not limited, to the elimination of all forms of pay for time not worked (e.g., wash-up time, early quits). |

| | |
|---|---|
| **Local Innovation** | The Corporation may seek, and the IBEW Local Union may agree to other changes that are justified by local competitive conditions or necessary to make local operations viable:<br><br>• Locally competitive wage rates and/or benefit plans – subject to Corporate approval.<br><br>Alternative Work Schedules:<br><br>• The following alternative work schedules are pre-approved and available for local use with no overtime payable for the first 40 hours worked each week.<br><br>   o  3-Crew, 2-Shift<br><br>   o  4-Crew, 2-shift<br><br>   o  Four days x ten hours<br><br>   o  Weekend crew<br><br>• The Local Parties may develop other work schedules to meet particular local requirements, subject to approval by the Corporation and the International Union. |
| **Living Agreement Provisions** | All IBEW-Delphi agreements that do not have an expiration date shall be amended to expire coterminously with this Agreement. |
| | **Legal and Contractual Provisions** |
| **Definitive Documentation** | This Term Sheet is intended only to describe the basic modifications to the current IBEW-Delphi Agreements that are necessary for the reorganization of the Corporation under Section 1113(c) of the Bankruptcy Code, and is not intended to constitute final contract language. The parties agree that they will draft final contract language, and execute the 2005 IBEW-Delphi Agreement, within 60 days of the execution of this term sheet. The parties further agree that in drafting final contract language, they will eliminate or modify any provisions of the current IBEW-Delphi Agreements that are inconsistent with this term sheet or which would preclude the Corporation from obtaining the full savings sought by this proposal. |

| | |
|---|---|
| **Right to Refile 1113 and 1114 Motions** | In the event that changes in the Corporation's financial condition or other relevant conditions require, the Corporation shall have the right while in Chapter 11 to seek further relief under Sections 1113 and 1114 of the Bankruptcy Code. |
| **Dispute Resolution** | Dispute between the Parties on matters involving the application or interpretation of this Term Sheet will be reviewed by a Joint Committee consisting of one (1) member appointed by the IBEW President/Business Manager and one (1) member appointed by the Vice President, Human Resources Management, Delphi Corporation.<br><br>• The Joint Committee shall meet as required. Delphi will provide information as necessary on any issues raised for discussion or resolution.<br><br>• The Joint Committee will have full authority to settle all matters that are properly before it, recognizing that disputes governed by appeal procedures of the respective Benefit Plans, and other issues consistent with applicable law, may be outside the scope of the Committee's authority. If the Joint Committee is unable to resolve a matter properly before it, it will refer the matter directly to arbitration, using the arbitration provisions contained in the IBEW-Delphi Agreement. |
| **Complete Agreement and Waiver** | The Corporation and the IBEW acknowledge that during the negotiations which resulted in this Term Sheet and agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Term Sheet. Therefore, the Corporation and the IBEW agree that for the life of the agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter referred to, or covered in the agreement, or with respect to any subject or matter not specifically referred to or covered in the agreement, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time that they negotiated |

<table>
<tr><td></td><td>or signed this Term Sheet or agreement. This Term Sheet represents the complete and total agreement of the Corporation and the IBEW as to all modifications to the existing IBEW - Delphi Agreements, and each party voluntarily and unqualifiedly waives the right to raise claims to the contrary.</td></tr>
</table>

Executed _____ day of _____, 2005.

FOR INTERNATIONAL                          FOR DELPHI CORPORATION
BROTHERHOOD OF ELECTRICAL
WORKERS, LOCAL 663


_____              _____


WITNESS:                                WITNESS:


_____              _____


_____              _____


_____              _____

## APPENDIX A – WAGES

There is one (1) skilled wage rate.  Employees will receive the following rates of pay:

|  | Skilled |
|---|---|
| Base Rates - | $~~19.00~~21.50 |
| New Hire Rates - | $~~18.00~~19.50 |

New hire employees will receive an increase at the expiration of every 26 weeks worked from the date of hire until the full rate is attained.  The applicable rate, including the amount of each increase is set forth in the table below:

| Number of Weeks | Skilled |
|---|---|
| 0 – 26 | $~~18.00~~19.50 |
| 27 – 52 | $~~18.25~~20.00 |
| 53 – 78 | $~~18.50~~20.50 |
| 79 – 104 | $~~18.75~~21.00 |
| 105 – 130 | $~~19.00~~21.50 |

Current Delphi employees will be paid according to the above schedule based on their Delphi seniority date, and skilled trades date, if applicable.

The Apprentice Rate Schedule is set forth as follows:

| Apprentice Training Period | Hourly Rate* |
|---|---|
| 1st 916 Hours | $~~10.75~~12.00 |
| 2nd 916 Hours | $~~11.00~~12.50 |
| 3rd 916 Hours | $~~11.00~~12.50 plus  9% of "Rate Difference" |
| 4th 916 Hours | $~~11.00~~12.50 plus 20% of "Rate Difference" |
| 5th 916 Hours | $~~11.00~~12.50 plus 33% of "Rate Difference" |
| 6th 916 Hours | $~~11.00~~12.50 plus 48% of "Rate Difference" |
| 7th 916 Hours | $~~11.00~~12.50 plus 66% of "Rate Difference" |
| 8th 916 Hours | $~~11.00~~12.50 plus 86% of "Rate Difference" |

*The "Rate Difference" shall be determined by subtracting the hourly rate for the 2nd 1040 hours from the maximum rate for the skilled classification for which the apprentice is in training.  Resultant rates shall be rounded to the nearest 1 cent.

Upon graduation, apprentices will receive an increase, if retained, to the midpoint of the rate range for the skilled classification to which they are assigned.

## APPENDIX B – HEALTH CARE

- Medical and Prescription Drugs

  - Dependent eligibility, scope and level of benefits, coordination of benefits, utilization management and general administrative provisions will be substantially the same as the current Basic Medical Plan provided to salaried enrollees.

  - Monthly contributions will be required and will be based on the cost of the health plan and certain other factors including, but not limited to, the number of people covered, the status of the primary enrollee, etc.

  - Monthly contributions, medical cost sharing and prescription drug cost sharing will be adjusted annually to account for any increase in the cost of providing the health care plan.

  - Medical Cost Sharing

    - In-Network

      - Deductibles:          $~~900~~450 Individual/ $~~1,800~~900 Family
      - Copayment:          ~~25~~20% Employee/ ~~75~~80% Plan
      - Out-of-Pocket Max:  $~~2,500~~1,500 Individual/ $~~5,000~~3,000 Family

    - Out-of-Network

      - Deductibles:          $~~900~~450 Individual/ $~~1,800~~900 Family
      - Copayment:          ~~45~~40% Employee/ ~~55~~60% Plan
      - Out-of-Pocket Max:  None

  - Prescription Drug Cost Sharing

    - Retail:    $10 Generic/ $20 Formulary Brand/ $40 Non-formulary Brand

    - Mail:    $20 Generic/ $45 Formulary Brand/ $90 Non-formulary Brand

    - Out-of-network cost sharing is higher

- Mandatory generic, maintenance at mail and utilization management provisions apply

  o Monthly Contributions for Medical/Prescription Drug Coverage
    - Employee:                     $ ~~85~~65
    - Employee + Spouse:            $~~170~~130
    - Employee + Child(ren):        $~~160~~125
    - Employee + Family             $~~240~~180

  o Other affordable health plan designs may be offered in the future.

- Dental – Not provided

- Vision – Not provided

**PROPOSED MODIFICATIONS TO THE IUOE-DELPHI AGREEMENTS
PURSUANT TO BANKRUPTCY CODE § 1113(c)
AND
PROPOSED MODIFICATIONS TO RETIREE WELFARE BENEFITS
PURSUANT TO BANKRUPTCY CODE § 1114**

This term sheet sets forth the proposals of Delphi Corporation and its operating divisions ("Delphi" or the "Corporation") for modifications pursuant to Section 1113(c) of the U.S. Bankruptcy Code, to the IUOE-Delphi Agreements, as defined below, between the International Union of Operating Engineers, and its Local 18-S ("IUOE") and Delphi, and for modifications to retiree welfare benefits, pursuant to Section 1114 of the U.S. Bankruptcy Code, for Delphi's existing retirees, surviving spouses and dependents (collectively "Retirees").

| General Provisions | |
|---|---|
| **IUOE-Delphi Agreements** | The term "IUOE-Delphi Agreements" shall mean the following: <br><br>• The Agreement Between Delphi Corporation Columbus Operations and the IUOE, dated October 1, 2003 (the "IUOE-Delphi Columbus Agreement"); <br><br>• The Supplemental Agreement Covering Pension Plan, Exhibit A-1 to Agreement between Delphi Corporation IUOE dated October 1, 2003; <br><br>• The Supplemental Agreement Covering Life and Disability Program Exhibit B-1 to Agreement between Delphi Corporation and IUOE dated October 1, 2003; <br><br>• The Supplemental Agreement Covering Health Care Program Exhibit C-1, to Agreement between Delphi Corporation and IUOE dated October 1, 2003; <br><br>• The Supplemental Agreement Covering Income Security Plan Exhibit D-1 to Agreement between Delphi Corporation and IUOE dated October 1, 2003; <br><br>• The Supplemental Agreement Covering Guaranteed Income Stream Benefit Program Exhibit E-1 to Agreement between Delphi Corporation and IUOE dated October 1, 2003; <br><br>• The Supplemental Agreement Covering Profit Sharing Plan Exhibit F-1 to Agreement between Delphi Corporation and IUOE dated October 1, 2003; |

| | |
|---|---|
| | • The Supplemental Agreement Covering Personal Savings Plan Exhibit G-1 to Agreement between Delphi Corporation and IUOE dated October 1, 2003; and<br><br>Any and all other agreements, supplements, appendices, documents, memoranda, letters, minutes and understandings, published and unpublished, between Delphi Corporation and the IUOE. |
| **Effective Date** | The IUOE-Delphi Agreements, as modified by this Term Sheet, shall become effective on January 1, 2006 (the "Effective Date"). |
| **Duration** | The IUOE-Delphi Agreements, as modified by this Term Sheet, shall continue in effect until 11:59 p.m. on April 17, 2012 subject to the modification and termination provisions of Article 28 of the IUOE-Delphi Agreement. |
| **Wages and Related Provisions** | |
| **Base Wage Rates** | All base hourly wage rates under the IUOE-Delphi Agreements shall be modified as set forth in Appendix A:<br><br>• Articles 16, 17, 34 and 35  and other references related to wage schedules, rates, general increases, performance bonuses, tool and other allowances in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• All payroll drafts and EFT's will be dated on Friday. |
| **COLA** | There will be no Cost of Living Allowance (COLA).<br><br>Article 18 will be deleted, and all other references to COLA in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| **Overtime** | The overtime provisions of the IUOE-Delphi Agreement shall be modified as follows:<br><br>• All overtime shall be payable at time and one half, irrespective of the day of the week in which the time is worked.<br><br>• Overtime shall be payable only after the employee has worked 40 hours in a pay period.  For purposes of this provision, hours paid as vacation and holiday pay shall be counted toward the 40-hour requirement. |

| | |
|---|---|
| | • Articles 10, 11, 12, 13, and 14 will be deleted, and all other references to computing overtime premium pay in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| | • The amount and nature of any overtime to be worked shall be determined in the sole discretion of the Corporation. Any and all provisions of the IUOE-Delphi Agreement that purport to require overtime, or to limit management discretion to determine overtime requirements, shall be deleted. |
| | • All voluntary overtime provisions of the IUOE-Delphi Agreement shall be eliminated. |
| **Shift Premiums** | All existing shift premiums under the IUOE-Delphi Agreements shall be paid at five percent (5%) of the applicable base hourly rate, according to the following schedule: |

| Scheduled Shift Starting Time | Amount of Regular Shift Premium |
|---|---|
| (1) On or after 11:00 a.m. and before 5:00 a.m. | Five percent |
| (2) On or after 5:00 a.m. and before 11:00 a.m. | None |

| | |
|---|---|
| | Article 15 of the IUOE-Delphi Agreements and all other references to existing shift premiums in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| | **Holidays, Vacation and Benefits** |
| **Holidays** | On the Effective Date, the number of Corporation-paid holidays under the IUOE-Delphi Agreements will be reduced to ten (10) days per year. Delphi will advise the IUOE as to the dates of the ten paid holidays. |
| | Article 23 of the IUOE-Delphi Agreement will be deleted and all other references to the Christmas Holiday Period in other provisions and/or associated documents and associated Supplemental Agreements will be eliminated. |

| Independence Week | The Corporation-paid Independence Week holiday will be eliminated. |
|---|---|
| | • At its discretion, annually, the Corporation may designate the week in which the Independence Day holiday falls as a mandatory vacation period. |
| | • Employees will use Vacation Entitlement hours, if available, or be granted an unpaid leave of absence for such mandatory vacation period. |
| | Article 23 of the IUOE-Delphi Agreements will be deleted and all other references to Independence Week in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| Vacation Accrual | Article 22 of the IUOE-Delphi Agreement will be deleted, and all other references to vacation entitlement hours in other provisions and/or associated documents and all associated IUOE-Delphi Agreements will be modified to reflect the following vacation accrual schedule: |
| | Effective January 1, 2006, vacation accrual rates shall be as follows: |

| For an Eligible Employee with Seniority of: | Hours of Vacation Entitlement |
|---|---|
| Less than one year | 40 |
| One but less than three years | 60 |
| Three but less than five years | 80 |
| Five but less than ten years | 100 |
| Ten but less than 15 years | 120 |
| Fifteen but less than 20 years | 140 |
| Twenty or more years | 160 |

| | |
|---|---|
| **Profit Sharing** | Applicable terms and conditions of Supplemental Agreement covering Profit Sharing Plan, Exhibit F-1, shall continue to apply except as follows:<br><br>• Only "U.S. Operations" as defined under 2003 Supplemental Agreement, Exhibit F-1, shall be included in any future calculation of profit sharing amounts.<br><br>• The following Letter Agreements shall be eliminated:<br><br>    o Improving Benefit Services Through Technology; and<br><br>    o Benefits Training and Education. |
| **Health Care** | Applicable terms and conditions of Supplemental Agreement Covering Health Care Program, Exhibit C-1, shall be modified to discontinue current health care options and replace them with the health care plan generally described in Appendix B.<br><br>• Appropriate modifications and deletions will be made to applicable Exhibits, Articles and Appendices of Exhibit C-1 to conform with the monthly contribution, cost sharing, dependent eligibility, scope and level of benefits, coordination of benefits, utilization management and other provisions contemplated by Appendix B.<br><br>• Applicable sections of Article III of Exhibit C-1 concerning continuation of health care coverage while not actively at work will be modified to provide for up to a maximum of seven (7) months of continuation following the month the employee is last in active service.<br><br>• Article V concerning the Special Benefit will be eliminated.<br><br>• All Miscellaneous Health Care Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the health care plan described in Appendix B. Specifically, the following Documents and Letters shall be deleted: |

|  |  |
|---|---|
|  | • Statement of Intent (Representation)<br>• Understandings with Respect to:<br>   ○ Dental Coverage;<br>   ○ Vision Coverage;<br>   ○ Employee Contributions - Health Maintenance Organizations(HMOs), and Alternative Dental and Vision Options;<br>   ○ Supplemental Methodology for Review of Health Maintenance Organizations (HMOs), and Alternative Dental and Vision Options, and<br>   ○ Health Care - HMO |
|  | • Letters of Agreement regarding the following subjects:<br>   ○ Informed Choice Plan (General);<br>   ○ Pharmacy Quality and Safety Components;<br>   ○ Preferred Provider Organizations;<br>   ○ Improving Benefit Services Through Technology;<br>   ○ Benefits Training and Education;<br>   ○ Community Initiatives;<br>   ○ Vision Network;<br>   ○ Preferred Dental Provider Arrangement;<br>   ○ Fertility Services;<br>   ○ Health Care Communication Strategy;<br>   ○ Mental Health and Substance Abuse Coverage; and<br>   ○ Traditional Care Network.<br><br>• Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to providing the health care plan and shall be modified or eliminated as appropriate. |

| Life and Disability | Applicable terms and conditions of Supplemental Agreement, Exhibit B-1 shall be modified to: |
|---|---|
| | • Limit Sickness & Accident benefits to a maximum of 26 weeks of disability; |
| | • Allow the determination of total disability, for purposes of benefit eligibility and payment, to be made by the disability administrator; |
| | • Eliminate the Impartial Medical Opinion (IMO) program |
| | • To make available, on an employee self-pay basis, Extended Disability Benefits for a maximum of 36 months of disability at an amount determined in accordance with Schedule I of the table found in Art. II, 5 of Exhibit B; |
| | • To reduce S&A/EDB payable to current and future recipients to an amount proportionate to the new wage rates; |
| | • To provide active employees with $30,000 of Basic Life Insurance. Survivor Income Benefit Insurance and Extra Accident Insurance shall be eliminated; |
| | • To limit continuation of Life Insurance while not actively at work to a maximum of 6 months after the month following the month the employee was last in active service. |
| | All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted: |
| | • Statement of Intent (Representation); |
| | • Improving Benefit Services Through Technology; |
| | • Benefits Training and Education; |
| | • IMO Letter; and |
| | • Reinstated S&A Letter. |

| | Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the program described above and shall be modified or eliminated as appropriate. |
|---|---|
| **Job Security and Severance** | |
| **Right to Sell, Close or Consolidate Facilities** | Article 40, Letter regarding Plant Closing and Sale Moratorium of the IUOE-Delphi Agreement, and all related provisions of the existing agreements, that inhibit the Corporation's ability to close, or partially or wholly sell, spin-off, split-off, consolidate or otherwise dispose in any form any plant, asset or business unit of any type shall be eliminated.<br><br>In the event the Corporation sells a facility, it shall use its best effort to obtain the purchaser's agreement to hire existing Delphi employees at the facility. |
| **Successorship** | Article 40 of the Letter regarding Sale of Business, and all related provisions of the existing IUOE-Delphi Agreements that would require a purchaser of Corporation facilities to assume the existing collective bargaining agreements shall be eliminated. |
| **Elimination of Protected Status (JOBS Bank)** | Attachment A, Memorandum of Understanding Employment Security of the IUOE-Delphi Agreement and all related provisions of the existing IUOE-Delphi Agreements shall be eliminated. The Corporation shall have the right immediately to lay off all employees on Protected Status (JOBS Bank). |
| **Hiring Requirements** | All hiring requirements accrued as of the Effective Date of this agreement will be canceled. All provisions of the Agreements that would impose ongoing or future hiring commitments or obligations will be eliminated, including apprentices. |
| **Need to Run Employment Levels** | The Corporation shall have sole discretion to determine the number of employees required at each facility, and to lay off or release employees who are unnecessary to the operation. All employment security, income security or other provisions of the existing agreements that restrict this right shall be eliminated. |
| **Hiring** | If employees are required, it will be solely at Delphi's discretion to add a new hire or a temporary employee.<br><br>During the course of an attrition program or in the event of an insufficient number of employees, the Corporation will meet and confer to discuss the use of contract service personnel. |

| | |
|---|---|
| **Relocation Allowance** | On a case-by-case basis, Delphi employees transferring from a Delphi plant to a Delphi plant may be eligible for Relocation Allowance based on actual expenses incurred, up to a maximum of $10,000.<br><br>Article 29, Moving Allowance, shall be eliminated.  Article 30 Relocation Allowance Amount, shall be eliminated. |
| **Outsourcing** | All related provisions of the existing agreements that restrict the Corporation's right to source work, shall be eliminated. |
| **Severance Pay** | The Corporation will discuss implementation of affordable severance pay provisions for employees who are no longer required with no prospect of recall in the foreseeable future. |
| **Indirect Employees** | The Corporation shall have sole discretion to determine the type and number of non-production employees required at each facility, and the work to be assigned to such employees.<br><br>Any and all agreements and all other references restricting the Corporation's discretion in this matter in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>Subcontracting provisions in the IUOE-Delphi Agreements and all other provisions and/or associated documents and all associated Supplemental Agreements will be modified to refer only to core activities that directly support production activities.<br><br>Full utilization of skilled trades will apply only to core activities which directly support production operations and/or the maintenance and repair of plant equipment, and which can be performed competitively and within the required time frame.  All other non-core skilled trades work will be outsourced or subcontracted, such as but not limited to:<br><br>&bull; Building and facilities maintenance;<br><br>&bull; Carpentry and painting;<br><br>&bull; HVAC installation and repair; and<br><br>&bull; Construction and rearrangement of facilities. |

| | |
|---|---|
| | An affected trade that is scheduled to work 40 hours per week will be considered "fully utilized". Any monetary claims related to full utilization will be limited to the number of hours of work allegedly lost to the bargaining unit.<br><br>Indirect activities, both skilled and non-skilled, which are not competitive or which are not required for immediate support of production activities will be outsourced, contracted or eliminated, such as but not limited to:<br><br>&bull; Janitorial services |
| **Income Security Plan** | Applicable terms and conditions of Supplemental Agreement, Exhibit D-1, and all local agreements that concern any income security plans, benefits, payments or practices shall be modified to close the plan to new participants and eliminate any future Corporation contributions to individual accounts. |
| **Guaranteed Income Stream Benefits Program** | The Supplemental Agreement Covering Guaranteed Income Stream Benefits Program, Exhibit E-1, shall be eliminated. |
| **Temporary Employees** | The Corporation, at its discretion, may hire temporary employees as required. |
| **Other Provisions** ||
| **Attendance** | The Corporation's attendance policies shall be revised as follows:<br><br>&bull; The Corporation may implement a no-fault attendance policy under which all employee absence/tardiness are tracked including leaves of absence. After reaching defined thresholds, the employees will be subject to automatic, non-grievable corrective disciplinary action, ultimately leading to discharge. The program will also have a mechanism for reducing further disciplinary action based on improved attendance.<br><br>&bull; All restrictions on the Corporation administration, including any Agreements or Understandings, of the Family and Medical Leave Act shall be eliminated. |

| | |
|---|---|
| | • All attendance programs and enhancements to FMLA Legislation of the IUOE-Delphi Agreements will be deleted, and all other references to attendance and Family and Medical Leave Act policies in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• The Corporation may reduce vacation pay and holiday pay by the same percentage as an employee's absence during scheduled work hours during the previous year, including time on leave. |
| **Subsidized Discount Programs** | Any and all provisions of the IUOE-Delphi Agreements that require expenditures by Delphi for personal items shall be eliminated.  Such provisions include, but are not limited to the following:<br><br>• Corporation-paid health club memberships;<br><br>• Discount programs subsidized by Delphi such as AOL; and<br><br>• Clothing allowances. |
| **IUOE Representation and Support** | |
| **Funding and Joint Fund Accruals** | The following items contained in Article 40 will be eliminated:<br><br>• Memorandum of Understanding Tuition Assistance Plan and related letter;<br><br>• Memorandum of Understanding Employee Assistance Program and Work/Family;<br><br>• Letter regarding Retiree Tuition Assistance Plan;<br><br>• Letter regarding Scholarship Plan for Dependent Children; and<br><br>• Unpublished Letter regarding Tuition Assistance Plan W-2 Forms.<br><br>Articles 37, 38, and 39 will be deleted and other references to education, training, and development in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |

| Union Representation | • The Union may designate one (1) Union representative. This representative will function as chairperson.<br><br>• Union representative will function only when required but not to exceed two (2) hours per day Monday through Friday. When an employee functions in a union representative capacity, proper notification to Management will be required. |
|---|---|
| No-Strike Provisions | • No strikes, work stoppages or slowdowns permitted during the term of the IUOE-Delphi Agreements.<br><br>• Article 21 of the IUOE-Delphi Agreement and other references to strikes in other provisions and/or associated Supplemental Agreements will be eliminated. |
| Personal Savings Plan | Applicable terms and conditions of Supplemental Agreement Covering Personal Savings Plan, Exhibit G-1, shall continue to apply.<br><br>• All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted:<br><br>    • Improving Benefit Services Through Technology; and<br><br>    • Benefits Training and Education.<br><br>Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the plan described above and shall be modified or eliminated as appropriate. |
| | **Pension** |
| Hourly-Rate Employees Pension Plan | Applicable terms and conditions of Supplemental Agreement Covering Pension Plan, Exhibit A-1, shall be eliminated or modified as follows:<br><br>• Freeze the Delphi Hourly-Rate Employees Pension Plan (HRP) which includes the Individual Retirement Plan effective January 1, 2006 |

- As of the freeze date, HRP participants will accrue no additional credited service for purposes of calculating their benefits;

- As of the freeze date, no new participants will be allowed to join the HRP;

- As of the freeze date, the HRP will be amended to eliminate any benefits that are not protected by ERISA, including the Special Benefit; and

- Implement a defined contribution benefit for future benefit accruals, where appropriate.

All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted:

- Statement of Intent (Representation);

- Improving Benefit Services Through Technology;

- Benefits Training and Education;

- Workers Compensation;

- Lump-Sum Payment;

- Social Security; and

- Total and Permanent Disability – Return to Work.

Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the HRP described above and shall be modified or eliminated as appropriate.

| | |
|---|---|
| **Potential Termination of Hourly Rate Pension Plan** | The Corporation reserves the right while in Chapter 11 to seek a distress termination of the HRP in the event that it determines that it cannot maintain the HRP under the applicable legal standards for such a termination. The Corporation shall make this decision based on (1) updated financial forecasts during the Chapter 11 case; and (2) the Corporation's ability to fund the HRP. |
| <u>**Defined Contribution Pension Plan**</u> | <u>For all employees hired on or after the effective date of a termination of the Hourly-Rate Employees Pension Plan (each such employee, a "New Hire"), the Corporation shall contribute 3% of each New Hire's Earnings to a defined contribution plan for the benefit of such New Hire employees.</u><br><br><u>For purposes of this provision, Earnings shall be defined as base hourly wage for hours worked, not to exceed 40 hours per week.</u> |
| colspan | **Other Post-Employment Benefits (OPEB)** |
| **Health Care (Active Employees and Retirees)** | Applicable terms and conditions of Supplemental Agreement, Exhibit C-1 shall be modified to eliminate any obligation the Corporation may have to provide active employees and Retirees with Corporation contributions for and access to the Delphi Corporation Health Care Program for Hourly Employees during retirement. |
| **Retiree Life Insurance (Active Employees)** | Applicable terms and conditions of Supplemental Agreement Covering Life and Disability Program, Exhibit B-1 shall be modified to eliminate Basic Life Insurance, Survivor Income Benefit Insurance and Extra Accident Insurance in retirement. Retirees may continue any employee-paid coverages for which they were enrolled at the point of retirement. |
| **Retiree Life Insurance (Retirees)** | Basic Life Insurance, Survivor Income Benefit Insurance and Extra Accident Insurance for current retirees shall be eliminated. Retirees will be allowed to continue any employee-paid coverages for which they are enrolled. |
| colspan | **Other Agreements** |
| **Effect on Other Agreements** | The IUOE-Delphi Agreements, as modified by this Term Sheet, shall supersede and control all Agreements between the IUOE Local 18-S and Delphi or any of its divisions.<br><br>Upon execution of this Term Sheet by the parties, any provisions of the IUOE-Delphi Agreements which are inconsistent with this |

| | Term Sheet shall be deemed to have been eliminated. |
|---|---|
| **Competitive Operating Agreements** | Within 90 days following ratification of this Term Sheet the Agreements at the plant covered by the Delphi-IUOE Agreement will be revised, pursuant to negotiations, to (1) reflect the provisions of this Term Sheet, and (2) adopt Competitive Operating Agreement.<br><br>The Competitive Operating Agreement will address, but not be limited to, issues such as:<br><br>• Number of classifications, and efficient use of both production and skilled trades employees;<br><br>• Frequency of employee movement, including freezing transfers during product launches;<br><br>• Overtime equalization practices that are cumbersome, inefficient and/or non-competitive; and<br><br>• Practices and work rules that are non-competitive, including but not limited, to the elimination of all forms of pay for time not worked (e.g., wash-up time, early quits). |

| | |
|---|---|
| **Local Innovation** | The Corporation may seek, and IUOE may agree to other changes that are justified by local competitive conditions or necessary to make operations viable:<br><br>• Locally competitive wage rates and/or benefit plans – subject to National Parties approval.<br><br>Alternative Work Schedules:<br><br>• The following alternative work schedules are pre-approved and available for local use with no overtime payable for the first 40 hours worked each week.<br><br>    o 3-Crew, 2-Shift<br>    o 4-Crew, 2-shift<br>    o Four days x ten hours<br>    o Weekend crew<br><br>• The Parties may develop other work schedules to meet particular local requirements, subject to approval by the Corporation and the International Union. |
| **Living Agreement Provisions** | All IUOE-Delphi agreements that do not have an expiration date shall be amended to expire coterminously with this Agreement. |

| Miscellaneous Provisions | |
|---|---|
| **Definitive Documentation** | This Term Sheet is intended only to describe the basic modifications to the current IUOE-Delphi Agreements that are necessary for the reorganization of the Corporation under Section 1113(c) of the Bankruptcy Code, and is not intended to constitute final contract language.  The parties agree that they will draft final contract language, and execute the 2005 IUOE-Delphi Agreement, within 60 days of the execution of this term sheet.  The parties further agree that in drafting final contract language, they will eliminate or modify any provisions of the current IUOE-Delphi Agreements that are inconsistent with this term sheet or which would preclude the  Corporation from obtaining the full savings sought by this proposal. |
| **Right to Refile 1113 and 1114 Motions** | In the event that changes in the Corporation's financial condition or other relevant conditions require, the Corporation shall have the right while in Chapter 11 to seek further relief under Sections 1113 and 1114 of the Bankruptcy Code. |
| **Dispute Resolution** | Disputes between the Parties on matters involving the application or interpretation of this Term Sheet will be reviewed by a Joint Committee consisting of one (1) member appointed by the IUOE and one (1) member appointed by the Vice President, Human Resources Management, Delphi Corporation.<br><br>• The Joint Committee shall meet as required.  Delphi will provide information as necessary on any issues raised for discussion or resolution.<br><br>The Joint Committee will have full authority to settle all matters that are properly before it, recognizing that disputes governed by appeal procedures of the respective Benefit Plans, and other issues consistent with applicable law, may be outside the scope of the Committee's authority.  If the Joint Committee is unable to resolve a matter properly before it, it will refer the matter directly to arbitration, using the arbitration provisions contained in the IUOE-Delphi Agreement. |

| Complete Agreement and Waiver | The Corporation and the IUOE acknowledge that during the negotiations which resulted in this Term Sheet and agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Term Sheet.  Therefore, the Corporation and the IUOE agree that for the life of the agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter referred to, or covered in the agreement, or with respect to any subject or matter not specifically referred to or covered in the agreement, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time that they negotiated or signed this Term Sheet or agreement.  This Term Sheet represents the complete and total agreement of the Corporation and the IUOE as to all modifications to the existing IUOE-Delphi Agreements, and each party voluntarily and unqualifiedly waives the right to raise claims to the contrary. |
|---|---|

Executed _____ day of _____, 2005.


FOR INTERNATIONAL UNION OF                    FOR DELPHI CORPORATION
OPERATING ENGINEERS



_____          _____



WITNESS:                                                      WITNESS:


_____          _____


_____          _____


_____          _____

## APPENDIX A – WAGES

There is one (1) skilled wage rate.  Corresponding classification groupings are set forth in a separate document.

Employees will receive the following rates of pay:

|  | Skilled |
|---|---|
| Base Rate - | $~~19.00~~21.50 |
| New Hire Rate | $~~18.00~~19.50 |

New hire employees will receive an increase at the expiration of every 26 weeks worked from the date of hire until the full rate is attained.  The applicable rate, including the amount of each increase is set forth in the table below:

| Number of Weeks | Skilled |
|---|---|
| 0 – 26 | $~~18.00~~19.50 |
| 27 – 52 | $~~18.25~~20.00 |
| 53 – 78 | $~~18.50~~20.50 |
| 79 – 104 | $~~18.75~~21.00 |
| 105 – 130 | $~~19.00~~21.50 |

Current Delphi employees will be paid according to the above schedule based on their Delphi seniority date, and skilled trades date, if applicable.

The Apprentice Rate Schedule is set forth as follows:

| Apprentice Training Period | Hourly Rate* |
|---|---|
| 1st 916 Hours | $~~10.75~~12.00 |
| 2nd 916 Hours | $~~11.00~~12.50 |
| 3rd 916 Hours | $~~11.00~~12.50 plus   9% of "Rate Difference" |
| 4th 916 Hours | $~~11.00~~12.50 plus 20% of "Rate Difference" |
| 5th 916 Hours | $~~11.00~~12.50 plus 33% of "Rate Difference" |
| 6th 916 Hours | $~~11.00~~12.50 plus 48% of "Rate Difference" |
| 7th 916 Hours | $~~11.00~~12.50 plus 66% of "Rate Difference" |
| 8th 916 Hours | $~~11.00~~12.50 plus 86% of "Rate Difference" |

*The "Rate Difference" shall be determined by subtracting the hourly rate for the 2nd 916 hours from the maximum rate for the skilled classification for which the apprentice is in training.  Resultant rates shall be rounded to the nearest 1 cent.

Upon graduation, apprentices will receive an increase, if retained, to the midpoint of the rate range for the skilled classification to which they are assigned.

An employee-in-training (E.I.T.) shall receive a rate not less than $~~11.00~~12.25 per hour upon transfer to the classification and, if retained, the employee's rate shall be increased not less than 10¢ per hours each 60 days until the employee reaches the minimum rate of the skilled classification to which the employee is assigned.  Any increase above the minimum shall be on the basis of merit, but in no event will such an employee receive a rate above the midpoint of the rate range for the employee's job classification.

## APPENDIX B – HEALTH CARE

- Medical and Prescription Drugs

  o Dependent eligibility, scope and level of benefits, coordination of benefits, utilization management and general administrative provisions will be substantially the same as the current Basic Medical Plan provided to salaried enrollees.

  o Monthly contributions will be required and will be based on the cost of the health plan and certain other factors including, but not limited to, the number of people covered, the status of the primary enrollee, etc.

  o Monthly contributions, medical cost sharing and prescription drug cost sharing will be adjusted annually to account for any increase in the cost of providing the health care plan.

  o Medical Cost Sharing

    ▪ In-Network

      • Deductibles:          $~~900~~450 Individual/ $~~1,800~~900 Family
      • Copayment:           ~~25~~20% Employee/ ~~75~~80% Plan
      • Out-of-Pocket Max:   $~~2,500~~1,500 Individual/ $~~5,000~~3,000 Family

    ▪ Out-of-Network

      • Deductibles:          $~~900~~450 Individual/ $~~1,800~~900 Family
      • Copayment:           ~~45~~40% Employee/ ~~55~~60% Plan
      • Out-of-Pocket Max:   None

  o Prescription Drug Cost Sharing

    ▪ Retail:   $10 Generic/ $20 Formulary Brand/ $40 Non-formulary Brand

    ▪ Mail:    $20 Generic/ $45 Formulary Brand/ $90 Non-formulary Brand

    ▪ Out-of-network cost sharing is higher

    ▪ Mandatory generic, maintenance at mail and utilization management provisions apply

  o Monthly Contributions for Medical/Prescription Drug Coverage

- Employee:                    $ ~~85~~65
- Employee + Spouse:           $~~170~~130
- Employee + Child(ren):       $~~160~~125
- Employee + Family            $~~240~~180

  o  Other affordable health plan designs may be offered in the future.

- Dental – Not provided

- Vision – Not provided

**PROPOSED MODIFICATIONS TO THE IUOE-DELPHI AGREEMENTS
PURSUANT TO BANKRUPTCY CODE § 1113(c)
AND
PROPOSED MODIFICATIONS TO RETIREE WELFARE BENEFITS
PURSUANT TO BANKRUPTCY CODE § 1114**

This term sheet sets forth the proposals of Delphi Corporation and its operating divisions ("Delphi" or the "Corporation") for modifications pursuant to Section 1113(c) of the U.S. Bankruptcy Code to the IUOE-Delphi Agreements, as defined below, between the International Union of Operating Engineers, ("IUOE") and Delphi, , and for modifications to retiree welfare benefits, pursuant to Section 1114 of the U.S. Bankruptcy Code, for Delphi's existing retirees, surviving spouses (collectively "Retirees").

| General Provisions | |
|---|---|
| **IUOE-Delphi Agreements** | The term "IUOE-Delphi Agreements" shall mean the following:<br><br>• The Agreement Between Delphi E & C Rochester Operations and the IUOE, dated March 24, 2004 (the "IUOE-Delphi Rochester Agreement");<br><br>• The Supplemental Agreement covering Pension Plan, Exhibit A-1, to Agreement between Delphi Corporation and IUOE dated March24, 2004;<br><br>• The Supplemental Agreement covering Life and Disability Benefits Program, Exhibit B-1, between Delphi Corporation and IUOE dated March 24, 2004;<br><br>• The Supplemental Agreement covering Health Care Program, Exhibit C-1, between Delphi Corporation and IUOE dated March 24, 2004;<br><br>• The Supplemental Agreement covering Income Security Plan, Exhibit D-1, between Delphi Corporation and IUOE dated March 24, 2004;<br><br>• The Supplemental Agreement covering Guaranteed Income Stream Program, Exhibit E-1, between Delphi Corporation and IUOE dated March 24, 2004;<br><br>• The Supplemental Agreement covering Profit Sharing Program, Exhibit F-1, between Delphi Corporation and IUOE dated March 24, 2004; |

|  | • The Supplemental Agreement covering Personal Savings Plan, Exhibit G-1, between Delphi Corporation and IUOE dated March 24, 2004;<br><br>• Any and all other agreements, supplements, appendices, documents, memoranda, letters, minutes and understandings, published and unpublished, between Delphi Corporation and the IUOE. |
|---|---|
| **Effective Date** | The IUOE-Delphi Agreements, as modified by this Term Sheet, shall become effective on January 1, 2006 (the "Effective Date") |
| **Duration** | The IUOE-Delphi Agreements, as modified by this Term Sheet, shall continue in effect until 11:59 p.m. on April 17, 2012, subject to the modification and termination provisions of Paragraph (106) of the IUOE-Delphi Agreement. |
| **Wages and Related Provisions** ||
| **Base Wage Rates** | All base hourly wage rates under the IUOE-Delphi Agreements shall be modified as set forth in Appendix A:<br><br>• The Wage Agreement in its entirety and other references related to wage schedules, rates, general increases, performance bonuses, tool and other allowances in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• All payroll drafts and EFT's will be dated on Friday. |
| **COLA** | There will be no Cost of Living Allowance (COLA).<br><br>Paragraphs (95)(a), (95)(b), (95)(c), (95)(d), (95)(e), (95)(f), (95)(g), (95)(h), (95)(i), and (95)(j)of the IUOE-Delphi Agreement will be deleted, and all other references to COLA in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| **Overtime** | The overtime provisions of the IUOE-Delphi Agreement shall be modified as follows:<br><br>• All overtime shall be payable at time and one half, irrespective of the day of the week in which the time is worked. |

| | |
|---|---|
| | • Overtime shall be payable only after the employee has worked 40 hours in a pay period. For purposes of this provision, hours paid as vacation and holiday pay shall be counted toward the 40-hour requirement.<br><br>• Paragraphs (52), (53), (54), (55)(a), (55)(b), (55)(b), (55)(c), (56)(a), (56)(b), (56)(c), (57), (58), (58)(1), (58)(2), (58)(3), (58)(4), (58)(5), (58)(6) AND Appendix C will be deleted, and all other references to computing overtime premium pay in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• The amount and nature of any overtime to be worked shall be determined in the sole discretion of the Corporation. Any and all provisions of the IUOE-Delphi Agreements that purport to require overtime, or to limit management discretion to determine overtime requirements, shall be deleted.<br><br>• All voluntary overtime provisions of the IUOE-Delphi Agreement shall be eliminated. |
| **Shift Premiums** | All existing shift premiums under the IUOE-Delphi Agreements shall be paid at five percent (5%) of the applicable base hourly rate, according to the following schedule:<br><br>| **Scheduled Shift Starting Time** | **Amount of Regular Shift Premium** |<br>|---|---|<br>| (1) On or after 11:00 a.m. and before 5:00 a.m. | Five percent |<br>| (2) On or after 5:00 a.m. and before 11:00 a.m. | None |<br><br>Paragraph (58)(6)(b) and all other references to existing shift premiums in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |

| Holidays, Vacation and Benefits | |
| --- | --- |
| Holidays | On the Effective Date, the number of Corporation-paid holidays under the IUOE-Delphi Agreement will be reduced to ten (10) days per year.  Delphi will advise the IUOE as to the dates of the ten paid holidays.<br><br>Paragraphs (84), (84)(a), (84)(b), (84)(c), (88), (89), (89)(a), (89)(b), (89)(c), (91), (93), and (94) of the IUOE-Delphi Agreement  will be deleted and all other references to  the Christmas Holiday Period in other provisions and/or associated documents and associated Supplemental Agreements will be eliminated. |
| Independence Week | The Corporation-paid Independence Week holiday will be eliminated.<br><br>• At its discretion, annually, the Corporation may designate the week in which the Independence Day holiday falls as a mandatory vacation period.<br><br>• Employees will use Vacation Entitlement hours, if available, or be granted an unpaid leave of absence for such mandatory vacation period.<br><br>Appendix F of the IUOE-Delphi Agreement will be deleted and all other references to Independence Week in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| Vacation Accrual | Paragraphs (69), (70), (70a), (70)(a)(1), and (70)(a)(2) of the IUOE-Delphi Agreement will be deleted, and all other references to vacation entitlement hours in other provisions and/or associated documents and all associated Supplemental Agreements will be modified to reflect the following vacation accrual schedule:<br><br>Effective January 1, 2006, vacation accrual rates shall be as follows: |

| For an Eligible Employee with Seniority of: | Hours of Vacation Entitlement |
|---|---|
| Less than one year | 40 |
| One but less than three years | 60 |
| Three but less than five years | 80 |
| Five but less than ten years | 100 |
| Ten but less than 15 years | 120 |
| Fifteen but less than 20 years | 140 |
| Twenty or more years | 160 |

| | |
|---|---|
| **Profit Sharing** | Applicable terms and conditions of Supplemental Agreement Covering Profit Sharing Plan, Exhibit F-1, shall continue to apply except as follows:<br><br>• Only "U.S. Operations", as defined under the 2003 Supplemental Agreement, Exhibit F-1, shall be included in any future calculation of profit sharing amounts.<br><br>• The following Letter Agreements shall be eliminated:<br><br>  o Improving Benefit Services Through Technology; and<br>  o Benefits Training and Education. |
| **Health Care** | Applicable terms and conditions of Supplemental Agreement Covering Health Care Program, Exhibit C-1, shall be modified to discontinue current health care options and replace them with the health care plan generally described in Appendix B.<br><br>• Appropriate modifications and deletions will be made to applicable Exhibits, Articles and Appendices of Exhibit C-1 to conform with the monthly contribution, cost sharing, dependent eligibility, scope and level of benefits, coordination of benefits, utilization management and other provisions contemplated by Appendix B. |

- Applicable sections of Article III of Exhibit C-1 concerning continuation of health care coverage while not actively at work will be modified to provide for up to a maximum of seven (7) months of continuation following the month the employee is last in active service.

- Article V concerning the Special Benefit will be eliminated.

- All Miscellaneous Health Care Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the health care plan described in Appendix B. Specifically, the following Documents and Letters shall be deleted:

    o Statement of Intent (Representation).

    o Understandings with respect to the following:

        ▪ Dental Coverage;

        ▪ Vision Coverage;

        ▪ Utilization Review and Cost Containment;

        ▪ Employee Contributions - Health Maintenance Organizations(HMOs), and Alternative Dental and Vision Options;

        ▪ Supplemental Methodology for Review of Health Maintenance Organizations (HMOs), and Alternative Dental and Vision Options, and

        ▪ Health Care – HMO

    o Letters of Agreement regarding the following subjects:

        ▪ Informed Choice Plan (General);

        ▪ Pharmacy Quality and Safety Components;

        ▪ Preferred Provider Organizations;

        ▪ Improving Benefit Services Through Technology;

        ▪ Benefits Training and Education;

        ▪

| | |
|---|---|
| | <ul><li>Traditional Care Network;</li><li>Community Initiatives;</li><li>Vision Network;</li><li>Preferred Dental Provider Arrangement;</li><li>Fertility Services;</li><li>Health Care Communication Strategy;</li><li>Mental Health and Substance Abuse Coverage; and</li><li>Traditional Care Network.</li><li>Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to providing the health care plan and shall be modified or eliminated as appropriate.</li></ul> |
| **Life and Disability** | Applicable terms and conditions of Supplemental Agreement, Exhibit B-1 shall be modified to:<br><br><ul><li>Limit Sickness & Accident benefits to a maximum of 26 weeks of disability;</li><li>Allow the determination of total disability, for purposes of benefit eligibility and payment, to be made by the disability administrator;</li><li>Eliminate the Impartial Medical Opinion (IMO) program</li><li>To make available, on an employee self-pay basis, Extended Disability Benefits for a maximum of 36 months of disability at an amount determined in accordance with Schedule I of the table found in Art. II, 5 of Exhibit B;</li><li>To reduce S&A/EDB payable to current and future recipients to an amount proportionate to the new wage rates;</li><li>To provide active employees with $30,000 of Basic Life Insurance. Survivor Income Benefit Insurance and Extra Accident Insurance shall be eliminated; and</li></ul> |

|  | <ul><li>To limit continuation of Life Insurance while not actively at work to a maximum of 6 months after the month following the month the employee was last in active service.</li></ul>All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted:<ul><li>Statement of Intent (Representation);</li><li>Improving Benefit Services Through Technology;</li><li>Benefits Training and Education;</li><li>IMO Letter; and</li><li>Reinstated S&A Letter.</li></ul>Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the program described above and shall be modified or eliminated as appropriate. |
|---|---|
| **Job Security and Severance** ||
| **Right to Sell, Close or Consolidate Facilities** | Any provisions of existing agreements that inhibit the Corporation's ability to close, or partially or wholly sell, spin-off, split-off, consolidate or otherwise dispose in any form any plant, asset or business unit of any type shall be eliminated.<br><br>In the event the Corporation sells a facility, it shall use its best effort to obtain the purchaser's agreement to hire existing Delphi employees at the facility. |
| **Successorship** | Any provisions of the existing IUOE-Delphi Agreements that would require a purchaser of Corporation facilities to assume existing collective bargaining agreements and/or recognize the IUOE, shall be eliminated. |
| **Elimination of Protected Status (JOBS Bank)** | Appendix H, Memorandum of Understanding Employment Security and any and all related provisions of the existing IUOE-Delphi Agreements, shall be eliminated. The Corporation shall have the right immediately to lay off all employees on Protected Status (JOBS Bank). |

| Hiring Requirements | All hiring requirements accrued as of the Effective Date of this agreement will be canceled. All provisions of the Agreements that would impose ongoing or future hiring commitments or obligations will be eliminated, including apprentices of the IUOE-Delphi Agreement. |
|---|---|
| Need to Run Employment Levels | The Corporation shall have sole discretion to determine the number of employees required at each facility, and to lay off or release employees who are unnecessary to the operation. All employment security, income security or other provisions of the existing agreements that restrict this right shall be eliminated. |
| Hiring | If employees are required, it will be solely at Delphi's discretion to add a new hire or a temporary employee.<br><br>During the course of an attrition program or in the event of an insufficient number of employees the Corporation will meet and confer with the Union to discuss the use of contract personnel. |
| Relocation Allowance | On a case-by-case basis, Delphi employees transferring from a Delphi plant to a Delphi plant may be eligible for Relocation Allowance based on actual expenses incurred, up to a maximum of $10,000. |
| Outsourcing | Any provisions of the existing agreements that restrict the Corporation's right to source work, shall be eliminated. |
| Severance Pay | The Corporation will discuss implementation of affordable severance pay provisions for employees who are no longer required with no prospect of recall in the foreseeable future. |
| Indirect Employees | The Corporation shall have sole discretion to determine the type and number of non-production employees required at each facility, and the work to be assigned to such employees.<br><br>Any and all references restricting the Corporation's discretion in the utilization of indirect employees this matter in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>Subcontracting Provisions of the IUOE-Delphi Agreement and all other provisions and/or associated documents and all associated Supplemental Agreements will be modified to refer only to core activities that directly support production activities. |

| | |
|---|---|
| | Full utilization of skilled trades will apply only to core activities which directly support production operations and/or the maintenance and repair of plant equipment, and which can be performed competitively and within the required time frame. All other non-core skilled trades work will be outsourced or subcontracted, such as but not limited to:<br><br>• Machine re-build;<br><br>• Building and facilities maintenance;<br><br>• Carpentry and painting; and<br><br>• Construction and rearrangement of facilities.<br><br>An affected trade that is scheduled to work 40 hours per week will be considered "fully utilized". Any monetary claims related to full utilization will be limited to the number of hours of work allegedly lost to the bargaining unit.<br><br>Indirect activities, both skilled and non-skilled, which are not competitive or which are not required for immediate support of production activities will be outsourced, contracted or eliminated, such as but not limited to:<br><br>• Janitorial services. |
| **Income Security Plan** | Applicable terms and conditions of Supplemental Agreement, Exhibit D-1, and all local agreements that concern any income security plans, benefits, payments or practices shall be modified to close the plan to new participants and eliminate any future Corporation contributions to individual accounts. |
| **Guaranteed Income Stream Benefits** | The Supplemental Agreement Covering Guaranteed Income Stream Benefit Program, Exhibit E-1, shall be eliminated. |
| **Temporary Employees** | The Corporation, at its discretion, may hire temporary employees as required. |

| Other Provisions | |
|---|---|
| **Attendance** | The Corporation's attendance policies shall be revised as follows:<br><br>• The Corporation may implement a no-fault attendance policy under which all employee absence/tardiness are tracked including leaves of absence. After reaching defined thresholds, the employees will be subject to automatic, non-grievable corrective disciplinary action, ultimately leading to discharge. The program will also have a mechanism for reducing further disciplinary action based on improved attendance.<br><br>• All restrictions on the Corporation's administration, including any I Agreements or Understandings, of the Family and Medical Leave Act shall be eliminated.<br><br>• Appendix B of the IUOE-Delphi Agreement will be deleted, and all other references to attendance and Family and Medical Leave Act policies in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated.<br><br>• The Corporation may reduce vacation pay and holiday pay by the same percentage as an employee's absence during scheduled work hours during the previous year, including time on leave. |
| **Subsidized Discount Programs** | Any and all provisions of the IUOE-Delphi Agreements that require expenditures by Delphi for personal items shall be eliminated. Such provisions include, but are not limited to the following:<br><br>• Corporation-paid health club memberships;<br><br>• Discount programs subsidized by Delphi such as AOL; and<br><br>• Clothing allowances. |

| IUOE Representation and Support | |
|---|---|
| **Funding and Joint Fund Accruals** | Appendix A(3), Tuition Assistance Plan, and Appendix A(14), Dependent Tuition Assistance, will be terminated. The Quality Network Process will be merged with the Delphi Manufacturing System.<br><br>Any and all reference to education, training, and development in other provisions and/or associated documents and all Supplemental Agreements will be eliminated. |
| **Union Representation** | The union representation provisions of the IUOE-Delphi Agreements shall be revised as follows:<br><br>• Union representatives as defined in Paragraphs (18) and (19) of the IUOE-Delphi Agreement will be eliminated. The Union may designate one (1) Union representative. This representative shall function as chairperson. Employees will not be permitted to function in a union representative capacity without the consent of local management.<br><br>• Representatives with no Grievance Procedure responsibilities (i.e. joint activities only) will not work overtime for representation purposes, but will be eligible equalize overtime within their respective equalization groups.<br><br>• All other references to the number of Union representatives, paid time for union representatives, and/or overtime for union representatives in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |
| **No-Strike Provisions** | No strikes, work stoppages or slowdowns shall be permitted during the term of the IUOE-Delphi Agreements as modified by this Term Sheet.<br><br>Paragraphs (96) and (97) of the IUOE-Delphi Agreement and other references to strikes in other provisions and/or associated documents and all associated Supplemental Agreements will be eliminated. |

| Personal Savings Plan | Applicable terms and conditions of Supplemental Agreement Covering Personal Savings Plan, Exhibit G-1, shall continue to apply. |
|---|---|
| | • All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted: |
| | o Improving Benefit Services Through Technology; and |
| | o Benefits Training and Education. |
| | Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the plan described above and shall be modified or eliminated as appropriate. |
| **Pension** | |
| Hourly-Rate Employees Pension Plan | Applicable terms and conditions of Exhibit A-1 Covering Pension Plan shall be eliminated or modified: |
| | • Freeze the Delphi Hourly-Rate Employees Pension Plan (HRP) which includes and the Individual Retirement Plan effective January 1, 2006. |
| | • As of the freeze date, HRP participants will accrue no additional credited service for purposes of calculating their benefits; |
| | • As of the freeze date, no new participants will be allowed to join the HRP; |
| | • The HRP will pay only those benefits specifically required by ERISA; |
| | • Eliminate the Special Benefit; and |
| | • Implement a defined contribution benefit, where appropriate |

|  | All Miscellaneous Program Documents and Unpublished Letters will be reviewed for conformity to the administration of the provisions described above. Specifically, the following Documents and Letters shall be deleted:<br><br>• Statement of Intent (Representation);<br><br>• Improving Benefit Services Through Technology;<br><br>• Benefits Training and Education;<br><br>• Workers Compensation;<br><br>• Lump-Sum Payment;<br><br>• Social Security; and<br><br>• Total and Permanent Disability – Return to Work.<br><br>Other Miscellaneous Documents and Unpublished Letters shall be reviewed to determine if they are essential to administering the HRP described above and shall be modified or eliminated as appropriate. |
| **Potential Termination of Pension Plan** | The Company reserves the right while in Chapter 11 to seek a distress termination of the HRP in the event that it determines that it cannot maintain the HRP under the applicable legal standards for such a termination.  The Corporation shall make this decision based on (1) updated financial forecasts during the Chapter 11 case; and (2) the Company's ability to fund the HRP. |
| **Defined Contribution Pension Plan** | For all employees hired on or after the effective date of a termination of the Hourly-Rate Employees Pension Plan (each such employee, a "New Hire"), the Corporation shall contribute 3% of each New Hire's Earnings to a defined contribution plan for the benefit of such New Hire employees.<br><br>For purposes of this provision, Earnings shall be defined as base hourly wage for hours worked, not to exceed 40 hours per week. |
| **Other Post-Employment Benefits (OPEB)** ||
| **Health Care (Active Employees and Retirees)** | Applicable terms and conditions of Supplemental Agreement Covering Health Care Program, Exhibit C-1, shall be modified to eliminate any obligation the Corporation may have to provide active employees and Retirees with Corporation contributions for and access to the Delphi Corporation Health Care Program for |

| | Hourly Employees during retirement. |
|---|---|
| **Retiree Life Insurance– (Active Employees)** | Applicable terms and conditions Supplemental Agreement Covering Life and Disability Benefits Program, Exhibit B-1, shall be modified to eliminate Basic Life Insurance, Survivor Income Benefit Insurance and Extra Accident Insurance in retirement. Retirees may continue any employee-paid coverages for which they were enrolled at the point of retirement. |
| **Retiree Life Insurance– (Retirees)** | Basic Life Insurance, Survivor Income Benefit Insurance and Extra Accident Insurance for current Retirees shall be eliminated. Retirees will be allowed to continue any employee-paid coverages for which they are enrolled. |
| **Other Agreements** | |
| **Effect on Other Agreements** | The IUOE-Delphi Agreements, as modified by this Term Sheet, shall supersede and control all other Agreements between the IUOE local units and Delphi or any of its divisions. Upon execution of this Term Sheet by the national parties, any provisions of the Agreements which are inconsistent with this Term Sheet shall be deemed to have been eliminated. |
| **Competitive Operating Agreements** | Within 90 days following ratification of this Term Sheet, the Agreements at the plant covered by the IUOE-Delphi Agreements will be revised, pursuant to negotiations, to (1) reflect the provisions of this Term Sheet, and (2) adopt a Competitive Operating Agreement. The Competitive Operating Agreements will address, but not be limited to, issues such as: • Number of classifications, and efficient use of both production and skilled trades employees; • Frequency of employee movement, including freezing transfers during product launches; • Overtime equalization practices that are cumbersome, inefficient and/or non-competitive; and • Local practices and work rules that are non-competitive, including but not limited, to the elimination of all forms of pay for time not worked (e.g., wash-up time, early quits). |

| Local Innovation | The Corporation may seek, and the IUOE Local Union may agree to other changes that are justified by local competitive conditions or necessary to make local operations viable: |
|---|---|
| | • Locally competitive wage rates and/or benefit plans – subject to Corporate approval. |
| | Alternative Work Schedules: |
| | • The following alternative work schedules are pre-approved and available for local use with no overtime payable for the first 40 hours worked each week. |
| | ○ 3-Crew, 2-Shift |
| | ○ 4-Crew, 2-shift |
| | ○ Four days x ten hours |
| | ○ Weekend crew |
| | • The Local Parties may develop other work schedules to meet particular local requirements, subject to approval by the Corporation and the International Union. |
| **Living Agreement Provisions** | All IUOE-Delphi agreements that do not have an expiration date shall be amended to expire coterminously with this Agreement. |

### Miscellaneous Provisions

| **Definitive Documentation** | This Term Sheet is intended only to describe the basic modifications to the current IUOE-Delphi Agreements that are necessary for the reorganization of the Corporation under Section 1113(c) of the Bankruptcy Code, and is not intended to constitute final contract language. The parties agree that they will draft final contract language, and execute the 2005 IUOE-Delphi Agreements, within 60 days of the execution of this term sheet. The parties further agree that in drafting final contract language, they will eliminate or modify any provisions of the current IUOE-Delphi Agreement that are inconsistent with this term sheet or which would preclude the Corporation from obtaining the full savings sought by this proposal. |
|---|---|

| | |
|---|---|
| **Right to Refile 1113 and 1114 Motions** | In the event that changes in the Corporation's financial condition or other relevant conditions require, the Corporation shall have the right while in Chapter 11 to seek further relief under Sections 1113 and 1114 of the Bankruptcy Code. |
| **Dispute Resolution** | Disputes, local and national, between the National Parties on matters involving the application or interpretation of this Term Sheet will be reviewed by a Joint Committee consisting of one (1) member appointed by the IUOE and one (1) member appointed by the Vice President, Human Resources Management, Delphi Corporation.<br><br>• The Joint Committee shall meet as required. Delphi will provide information as necessary on any issues raised for discussion or resolution.<br><br>The Joint Committee will have full authority to settle all matters that are properly before it, recognizing that disputes governed by appeal procedures of the respective Benefit Plans, and other issues consistent with applicable law, may be outside the scope of the Committee's authority. If the Joint Committee is unable to resolve a matter properly before it, it will refer the matter directly to arbitration, using the arbitration provisions contained in the IUOE-Delphi Rochester Agreement. |
| **Complete Agreement and Waiver** | The Corporation and the IUOE acknowledge that during the negotiations which resulted in this Term Sheet and agreement, each had the unlimited right and opportunity to make demands and proposals with respect to any subject or matter not removed by law from the area of collective bargaining, and that the understandings and agreements arrived at by the parties after the exercise of that right and opportunity are set forth in this Term Sheet. Therefore, the Corporation and the IUOE agree that for the life of the agreement, each voluntarily and unqualifiedly waives the right, and each agrees that the other shall not be obligated, to bargain collectively with respect to any subject or matter referred to, or covered in the agreement, or with respect to any subject or matter not specifically referred to or covered in the agreement, even though such subject or matter may not have been within the knowledge or contemplation of either or both of the parties at the time that they negotiated or |

signed this Term Sheet or agreement. This Term Sheet represents the complete and total agreement of the Corporation and the IUOE as to all modifications to the existing IUOE-Delphi Agreements, and each party voluntarily and unqualifiedly waives the right to raise claims to the contrary.

Executed _____ day of _____, 2005.

FOR INTERNATIONAL UNION OF                    FOR DELPHI CORPORATION
OPERATING ENGINEERS


_____               _____


WITNESS:                                       WITNESS:

_____               _____

_____               _____

_____               _____

## APPENDIX A – WAGES

There is one (1) skilled wage rate.  Corresponding classification groupings are set forth in Attachment X.

Employees will receive the following rates of pay:

|  | Skilled |
|---|---|
| Base Rates - | $~~19.00~~21.50 |
| New Hire Rates - | $~~18.00~~19.50 |

New hire employees will receive an increase at the expiration of every 26 weeks worked from the date of hire until the full rate is attained.  The applicable rate, including the amount of each increase is set forth in the table below:

| Number of Weeks | Skilled |
|---|---|
| 0 – 26 | $~~18.00~~19.50 |
| 27 – 52 | $~~18.25~~20.00 |
| 53 – 78 | $~~18.50~~20.50 |
| 79 – 104 | $~~18.75~~21.00 |
| 105 – 130 | $~~19.00~~21.50 |

Current Delphi employees will be paid according to the above schedule based on their Delphi seniority date and skilled trades date, if applicable.

The Apprentice Rate Schedule is set forth as follows:

| Apprentice Training Period | Hourly Rate* |
|---|---|
| 1st 916 Hours | $~~10.75~~12.00 |
| 2nd 916 Hours | $~~11.00~~12.50 |
| 3rd 916 Hours | $~~11.00~~12.50 plus  9% of "Rate Difference" |
| 4th 916 Hours | $~~11.00~~12.50 plus 20% of "Rate Difference" |
| 5th 916 Hours | $~~11.00~~12.50 plus 33% of "Rate Difference" |
| 6th 916 Hours | $~~11.00~~12.50 plus 48% of "Rate Difference" |
| 7th 916 Hours | $~~11.00~~12.50 plus 66% of "Rate Difference" |
| 8th 916 Hours | $~~11.00~~12.50 plus 86% of "Rate Difference" |

*The "Rate Difference" shall be determined by subtracting the hourly rate for the 2nd 916 hours from the maximum rate for the skilled classification for which the apprentice is in training.  Resultant rates shall be rounded to the nearest 1 cent.

Upon graduation, apprentices will receive an increase, if retained, to the midpoint of the rate range for the skilled classification to which they are assigned.

An employee-in-training (E.I.T.) shall receive a rate not less than $~~11.00~~12.25 per hour upon transfer to the classification and, if retained, the employee's rate shall be increased not less than 10¢ per hours each 60 days until the employee reaches the minimum rate of the skilled classification to which the employee is assigned.   Any increase above the minimum shall be on the basis of merit, but in no event will such an employee receive a rate above the midpoint of the rate range for the employee's job classification.

## APPENDIX B – HEALTH CARE

- Medical and Prescription Drugs

  o Dependent eligibility, scope and level of benefits, coordination of benefits, utilization management and general administrative provisions will be substantially the same as the current Basic Medical Plan provided to salaried enrollees.

  o Monthly contributions will be required and will be based on the cost of the health care plan and certain other factors including, but not limited to, the number of people covered, the status of the primary enrollee, etc.

  o Monthly contributions, medical cost sharing and prescription drug cost sharing will be adjusted annually to account for any increase in the cost of providing the health care plan.

  o Medical Cost Sharing

    ▪ In-Network

      • Deductibles:              $~~900~~450 Individual/ $~~1,800~~900 Family

      • Copayment:                ~~25~~20% Employee/ ~~75~~80% Plan

      • Out-of-Pocket Max:        $~~2,500~~1,500 Individual/ $~~5,000~~3,000 Family

    ▪ Out-of-Network

      • Deductibles:              $~~900~~450 Individual/ $~~1,800~~900 Family

      • Copayment:                ~~45~~40% Employee/ ~~55~~60% Plan

      • Out-of-Pocket Max:        None

  o Prescription Drug Cost Sharing

    ▪ Retail:    $10 Generic/ $20 Formulary Brand/ $40 Non-formulary Brand

    ▪ Mail:      $20 Generic/ $45 Formulary Brand/ $90 Non-formulary Brand

    ▪ Out-of-network cost sharing is higher

- Mandatory generic, maintenance at mail and utilization management provisions apply

o Monthly Contributions for Medical/Prescription Drug Coverage

- Employee:            $ ~~85~~65
- Employee + Spouse:      $~~170~~130
- Employee + Child(ren):    $~~160~~125
- Employee + Family      $~~240~~180

o Other affordable health plan designs may be offered in the future.

- Dental – Not provided

- Vision – Not provided

# Exhibit G



Kevin M. Butler
Vice President
Human Resource Management

November 15, 2005

Mr. Richard Shoemaker
Vice President & Director
UAW General Motors Department
8000 East Jefferson Avenue
Detroit, Michigan 48214

  Re:  Section 1113 Proposal

Dear Mr. Shoemaker:

  Delphi's proposal of October 21, 2005, was aimed at achieving a U.S. competitive all-in rate that will enable us to bid and win new work in the U.S.  As discussed, our experience demonstrates that, while labor rates vary by product line, we tend to lose new business opportunities to U.S. competitors as we approach or exceed an all-in labor rate of approximately $22 per hour.  Our analysis of the attached industry statistics also indicates that the likelihood of maintaining a viable presence in the U.S. is reduced as we exceed U.S. competitive levels.

  In our proposal of October 21, we achieved a wage and benefit cost of $21.12, including an hourly cost of $3.54 largely attributable to legacy workers' compensation costs.  When legacy pension and potential COBRA costs were included, however, the all-in labor rate was more than $31 – a plainly uncompetitive level.  These calculations were based on our long-standing labor costing practice of including all legacy labor expense in determining our hourly labor costs for bidding work.

  Without a significant change in our customary labor cost analysis practices, we were not able to propose an average base wage above $10.00, which you have advised us is unacceptable.  We also have concluded that continuing our practice of including legacy benefit expense as a direct element of US labor costs in bidding new work impairs our ability to win the volume of new business awards that are necessary for a viable US prospective business.  We have, therefore, decided to exclude all legacy benefits expense (including legacy pension, OPEB and workers' compensation costs) from our penny-sheet for future bidding <u>and</u> from our all-in rate proposal to the union.  Instead, we intend to address these legacy liabilities in the bankruptcy process along with other historical financial obligations that are subject to compromise, all of which must be resolved in order to produce a viable business plan for 2006 and beyond.

  With these changes, Delphi is now able to increase its average base wage proposal for production employees from $10.00 to $12.50, make improvements in active employee health care previously proposed, and implement a defined contribution pension plan for new hires.  This proposal results in a wage and benefit cost of $21.33 per hour, keeping Delphi in a competitive US pay and benefit range both in respect of its average base wage and benefit proposals. Similar changes are proposed for skilled trades.

Mr. Richard Shoemaker
Page 2

This proposal is subject to our finding ways to address all of the legacy benefit costs in the bankruptcy process. We are anxious to engage with you, our other Unions, General Motors, and other stakeholders to focus on potential solutions, including acceptable pension and funding alternatives, legislative, tax or other treatment of past workers' compensation and other obligations, approaches to health care costs such as a VEBA, and similar potential solutions. We have already engaged in discussions with federal, state and local government officials and agencies, and will continue to do so. The apparent consensus recently reached between General Motors and our major unions concerning application of the GM Benefit Guarantee agreements may also significantly improve opportunities for mutually acceptable solutions.

We have formalized this proposal on the enclosed Term Sheet. Under this proposal (as with the October 21 proposal), the existing hourly defined benefit pension plan is frozen. However, Delphi reserves the right to terminate the plan as necessary. While this is the final proposal that we plan to deliver to you prior to the December 16 deadline established in the Bankruptcy Court to file Section 1113 and 1114 motions, we do intend to provide you with an updated financial model when our 2006 business plan is finalized over the next few weeks. Our present plan is to deliver the 2006-2010 business plan to you on or about December 9, 2005, following approval of the plan by our Board of Directors and presentation of the plan to Delphi's Official Committee of Unsecured Creditors.

In the meantime, our increasing losses, as evidenced by Delphi's $788 million dollar loss in the third quarter and the deteriorating macro business environment, demonstrate the urgent need for constructive dialogue and positive resolution. We are ready to discuss these issues at your earliest availability.

Sincerely,

KMB:pmg

Enclosures

cc:    Local Union Presidents
       Local Union Shop Chairpersons



**Kevin M. Butler**
Vice President
Human Resource Management

November 15, 2005

Mr. Henry Reichard
Chairman, IUE-CWA Automotive
    Conference Board
2360 Dorothy Lane
Suite 201
Dayton, OH  45439

Re:  Section 1113 Proposal

Dear Mr. Reichard:

Delphi's proposal of October 20, 2005, was aimed at achieving a U.S. competitive all-in rate that will enable us to bid and win new work in the U.S.   As discussed, our experience demonstrates that, while labor rates vary by product line, we tend to lose new business opportunities to U.S. competitors as we approach or exceed an all-in labor rate of approximately $22 per hour.  Our analysis of the attached industry statistics also indicates that the likelihood of maintaining a viable presence in the U.S. is reduced as we exceed U.S. competitive levels.

In our proposal of October 20, we achieved a wage and benefit cost of $21.12, including an hourly cost of $3.54 largely attributable to legacy workers' compensation costs.  When legacy pension and potential COBRA costs were included, however, the all-in labor rate was more than $31 – a plainly uncompetitive level.  These calculations were based on our long-standing labor costing practice of including all legacy labor expense in determining our hourly labor costs for bidding work.

Without a significant change in our customary labor cost analysis practices, we were not able to propose an average base wage above $10.00, which you have advised us is unacceptable.  We also have concluded that continuing our practice of including legacy benefit expense as a direct element of US labor costs in bidding new work impairs our ability to win the volume of new business awards that are necessary for a viable US prospective business.  We have, therefore, decided to exclude all legacy benefits expense (including legacy pension, OPEB and workers' compensation costs) from our penny-sheet for future bidding and from our all-in rate proposal to the union.  Instead, we intend to address these legacy liabilities in the bankruptcy process along with other historical financial obligations that are subject to compromise, all of which must be resolved in order to produce a viable business plan for 2006 and beyond.

With these changes, Delphi is now able to increase its average base wage proposal for production employees from $10.00 to $12.50, make improvements in active employee health care previously proposed, and implement a defined contribution pension plan for new hires.  This proposal results in a wage and benefit cost of $21.33 per hour, keeping Delphi in a competitive US pay and benefit range both in respect of its average base wage and benefit proposals.  Similar changes are proposed for skilled trades.

Mr. Henry Reichard
Page 2


This proposal is subject to our finding ways to address all of the legacy benefit costs in the bankruptcy process. We are anxious to engage with you, our other Unions, General Motors, and other stakeholders to focus on potential solutions, including acceptable pension and funding alternatives, legislative, tax or other treatment of past workers' compensation and other obligations, approaches to health care costs such as a VEBA, and similar potential solutions. We have already engaged in discussions with federal, state and local government officials and agencies, and will continue to do so. The apparent consensus recently reached between General Motors and our major unions concerning application of the GM Benefit Guarantee agreements may also significantly improve opportunities for mutually acceptable solutions.

We have formalized this proposal on the enclosed Term Sheet. Under this proposal (as with the October 20 proposal), the existing hourly defined benefit pension plan is frozen. However, Delphi reserves the right to terminate the plan as necessary. While this is the final proposal that we plan to deliver to you prior to the December 16 deadline established in the Bankruptcy Court to file Section 1113 and 1114 motions, we do intend to provide you with an updated financial model when our 2006 business plan is finalized over the next few weeks. Our present plan is to deliver the 2006-2010 business plan to you on or about December 9, 2005, following approval of the plan by our Board of Directors and presentation of the plan to Delphi's Official Committee of Unsecured Creditors.

In the meantime, our increasing losses, as evidenced by Delphi's $788 million dollar loss in the third quarter and the deteriorating macro business environment, demonstrate the urgent need for constructive dialogue and positive resolution. We are ready to discuss these issues at your earliest availability.

Sincerely,


KMB:pmg

Enclosures

cc:    James Clark, President, International Union IUE-CWA
       Local Union Presidents
       Local Union Shop Chairpersons



**Kevin M. Butler**
Vice President
Human Resource Management

November 15, 2005

Mr. Dennis Bingham
President, Local Union 87
United Steel Workers
21 Abbey Avenue
Dayton, OH  45417

Re:  Section 1113 Proposal

Dear Mr. Bingham:

Delphi's proposal of October 21, 2005, was aimed at achieving a U.S. competitive all-in rate that will enable us to bid and win new work in the U.S.  As discussed, our experience demonstrates that, while labor rates vary by product line, we tend to lose new business opportunities to U.S. competitors as we approach or exceed an all-in labor rate of approximately $22 per hour.  Our analysis of the attached industry statistics also indicates that the likelihood of maintaining a viable presence in the U.S. is reduced as we exceed U.S. competitive levels.

In our proposal of October 21, we achieved a wage and benefit cost of $21.12, including an hourly cost of $3.54 largely attributable to legacy workers' compensation costs.  When legacy pension and potential COBRA costs were included, however, the all-in labor rate was more than $31 – a plainly uncompetitive level.  These calculations were based on our long-standing labor costing practice of including all legacy labor expense in determining our hourly labor costs for bidding work.

Without a significant change in our customary labor cost analysis practices, we were not able to propose an average base wage above $10.00, which you have advised us is unacceptable.  We also have concluded that continuing our practice of including legacy benefit expense as a direct element of US labor costs in bidding new work impairs our ability to win the volume of new business awards that are necessary for a viable US prospective business.  We have, therefore, decided to exclude all legacy benefits expense (including legacy pension, OPEB and workers' compensation costs) from our penny-sheet for future bidding <u>and</u> from our all-in rate proposal to the union.  Instead, we intend to address these legacy liabilities in the bankruptcy process along with other historical financial obligations that are subject to compromise, all of which must be resolved in order to produce a viable business plan for 2006 and beyond.

With these changes, Delphi is now able to increase its average base wage proposal for production employees from $10.00 to $12.50, make improvements in active employee health care previously proposed, and implement a defined contribution pension plan for new hires.  This proposal results in a wage and benefit cost of $21.33 per hour, keeping Delphi in a competitive US pay and benefit range both in respect of its average base wage and benefit proposals.  Similar changes are proposed for skilled trades.

Mr. Dennis Bingham
Page 2

This proposal is subject to our finding ways to address all of the legacy benefit costs in the bankruptcy process.  We are anxious to engage with you, our other Unions, General Motors, and other stakeholders to focus on potential solutions, including acceptable pension and funding alternatives, legislative, tax or other treatment of past workers' compensation and other obligations, approaches to health care costs such as a VEBA, and similar potential solutions.  We have already engaged in discussions with federal, state and local government officials and agencies, and will continue to do so.  The apparent consensus recently reached between General Motors and our major unions concerning application of the GM Benefit Guarantee agreements may also significantly improve opportunities for mutually acceptable solutions.

We have formalized this proposal on the enclosed Term Sheet.  Under this proposal (as with the October 21 proposal), the existing hourly defined benefit pension plan is frozen.  However, Delphi reserves the right to terminate the plan as necessary.  While this is the final proposal that we plan to deliver to you prior to the December 16 deadline established in the Bankruptcy Court to file Section 1113 and 1114 motions, we do intend to provide you with an updated financial model when our 2006 business plan is finalized over the next few weeks.  Our present plan is to deliver the 2006-2010 business plan to you on or about December 9, 2005, following approval of the plan by our Board of Directors and presentation of the plan to Delphi's Official Committee of Unsecured Creditors.

In the meantime, our increasing losses, as evidenced by Delphi's $788 million dollar loss in the third quarter and the deteriorating macro business environment, demonstrate the urgent need for constructive dialogue and positive resolution. We are ready to discuss these issues at your earliest availability.

Sincerely,

KMB:pmg

Enclosures

cc:    Local Union Presidents
        Local Union Shop Chairpersons



**Kevin M. Butler**
Vice President
Human Resource Management

November 17, 2005

Mr. Robert V. Thayer
General Vice President, Headquarters
International Association of Machinists
and Aerospace Workers
9000 Machinists Place
Upper Marlboro, Maryland 20772-2687

Re:  Section 1113 Proposal

Dear Mr. Thayer:

Delphi's October 2005 proposal was aimed at achieving a U.S. competitive all-in rate that will enable us to bid and win new work in the U.S.   As discussed, our experience demonstrates that, while labor rates vary by product line, we tend to lose new business opportunities to U.S. competitors as we approach or exceed an all-in labor rate of approximately $22 per hour.  Our analysis of the attached industry statistics also indicates that the likelihood of maintaining a viable presence in the U.S. is reduced as we exceed U.S. competitive levels.

In our October proposal we achieved a wage and benefit cost of $21.12, including an hourly cost of $3.54 largely attributable to legacy workers' compensation costs.  When legacy pension and potential COBRA costs were included, however, the all-in labor rate was more than $31 – a plainly uncompetitive level.  These calculations were based on our long-standing labor costing practice of including all legacy labor expense in determining our hourly labor costs for bidding work.

Without a significant change in our customary labor cost analysis practices, we were not able to propose an average base wage above $10.00, which we are advised is unacceptable. We also have concluded that continuing our practice of including legacy benefit expense as a direct element of US labor costs in bidding new work impairs our ability to win the volume of new business awards that are necessary for a viable US prospective business.  We have, therefore, decided to exclude all legacy benefits expense (including legacy pension, OPEB and workers' compensation costs) from our penny-sheet for future bidding <u>and</u> from our all-in rate proposal to the union.  Instead, we intend to address these legacy liabilities in the bankruptcy process along with other historical financial obligations that are subject to compromise, all of which must be resolved in order to produce a viable business plan for 2006 and beyond.

With these changes, Delphi is now able to increase its average base wage proposal for production employees from $10.00 to $12.50, make improvements in active employee health care previously proposed, and implement a defined contribution pension plan for new hires.  This proposal results in a wage and benefit cost of $21.33 per hour, keeping Delphi in a competitive US pay and benefit range both in respect of its average base wage and benefit proposals. Similar changes are proposed for skilled trades.

Mr. Robert Thayer
Page 2

This proposal is subject to our finding ways to address all of the legacy benefit costs in the bankruptcy process.  We are anxious to engage with you, our other Unions, General Motors, and other stakeholders to focus on potential solutions, including acceptable pension and funding alternatives, legislative, tax or other treatment of past workers' compensation and other obligations, approaches to health care costs such as a VEBA, and similar potential solutions.  We have already engaged in discussions with federal, state and local government officials and agencies, and will continue to do so.  The apparent consensus recently reached between General Motors and our major unions concerning application of the GM Benefit Guarantee agreements may also significantly improve opportunities for mutually acceptable solutions.

We have formalized this proposal on the enclosed Term Sheet.  Under this proposal (as with the October proposal), the existing hourly defined benefit pension plan is frozen.  However, Delphi reserves the right to terminate the plan as necessary.  While this is the final proposal that we plan to deliver to you prior to the December 16 deadline established in the Bankruptcy Court to file Section 1113 and 1114 motions, we do intend to provide you with an updated financial model when our 2006 business plan is finalized over the next few weeks.  Our present plan is to deliver the 2006-2010 business plan to you on or about December 9, 2005, following approval of the plan by our Board of Directors and presentation of the plan to Delphi's Official Committee of Unsecured Creditors.

In the meantime, our increasing losses, as evidenced by Delphi's $788 million dollar loss in the third quarter and the deteriorating macro business environment, demonstrate the urgent need for constructive dialogue and positive resolution. We are ready to discuss these issues at your earliest availability.

Sincerely,

KMB:pmg

Enclosures

cc:    All IAM Delphi Shop Chairpersons



Kevin M. Butler
Vice President
Human Resource Management

November 16, 2005

Mr. Edwin D. Hill
President
International Brotherhood of Electrical Workers
900 Seventh Street, N.W.
Washington, DC 20001

     Re:  Section 1113 Proposal

Dear Mr. Hill:

Delphi's October 2005 proposal was aimed at achieving a U.S. competitive all-in rate that will enable us to bid and win new work in the U.S.  As discussed, our experience demonstrates that, while labor rates vary by product line, we tend to lose new business opportunities to U.S. competitors as we approach or exceed an all-in labor rate of approximately $22 per hour.  Our analysis of the attached industry statistics also indicates that the likelihood of maintaining a viable presence in the U.S. is reduced as we exceed U.S. competitive levels.

In our October proposal we achieved a wage and benefit cost of $21.12, including an hourly cost of $3.54 largely attributable to legacy workers' compensation costs.  When legacy pension and potential COBRA costs were included, however, the all-in labor rate was more than $31 – a plainly uncompetitive level.  These calculations were based on our long-standing labor costing practice of including all legacy labor expense in determining our hourly labor costs for bidding work.

Without a significant change in our customary labor cost analysis practices, we were not able to propose an average base wage above $10.00, which we are advised is unacceptable.  We also have concluded that continuing our practice of including legacy benefit expense as a direct element of US labor costs in bidding new work impairs our ability to win the volume of new business awards that are necessary for a viable US prospective business.  We have, therefore, decided to exclude all legacy benefits expense (including legacy pension, OPEB and workers' compensation costs) from our penny-sheet for future bidding <u>and</u> from our all-in rate proposal to the union.  Instead, we intend to address these legacy liabilities in the bankruptcy process along with other historical financial obligations that are subject to compromise, all of which must be resolved in order to produce a viable business plan for 2006 and beyond.

With these changes, Delphi is now able to increase its average base wage proposal for production employees from $10.00 to $12.50, make improvements in active employee health care previously proposed, and implement a defined contribution pension plan for new hires.  This proposal results in a wage and benefit cost of $21.33 per hour, keeping Delphi in a competitive US pay and benefit range both in respect of its average base wage and benefit proposals.  Similar changes are proposed for skilled trades.

Mr. Edwin Hill
Page 2

This proposal is subject to our finding ways to address all of the legacy benefit costs in the bankruptcy process. We are anxious to engage with you, our other Unions, General Motors, and other stakeholders to focus on potential solutions, including acceptable pension and funding alternatives, legislative, tax or other treatment of past workers' compensation and other obligations, approaches to health care costs such as a VEBA, and similar potential solutions. We have already engaged in discussions with federal, state and local government officials and agencies, and will continue to do so. The apparent consensus recently reached between General Motors and our major unions concerning application of the GM Benefit Guarantee agreements may also significantly improve opportunities for mutually acceptable solutions.

We have formalized this proposal on the enclosed Term Sheet. Under this proposal (as with the October proposal), the existing hourly defined benefit pension plan is frozen. However, Delphi reserves the right to terminate the plan as necessary. While this is the final proposal that we plan to deliver to you prior to the December 16 deadline established in the Bankruptcy Court to file Section 1113 and 1114 motions, we do intend to provide you with an updated financial model when our 2006 business plan is finalized over the next few weeks. Our present plan is to deliver the 2006-2010 business plan to you on or about December 9, 2005, following approval of the plan by our Board of Directors and presentation of the plan to Delphi's Official Committee of Unsecured Creditors.

In the meantime, our increasing losses, as evidenced by Delphi's $788 million dollar loss in the third quarter and the deteriorating macro business environment, demonstrate the urgent need for constructive dialogue and positive resolution. We are ready to discuss these issues at your earliest availability.

Sincerely,

KMB:pmg

Enclosures

cc:    All IBEW Delphi Local Presidents
       All IBEW Delphi Shop Chairpersons



Kevin M. Butler
Vice President
Human Resource Management

November 17, 2005

Mr. Vincent J. Giblin
President
International Union of Operating Engineers
1125 17th Street, N.W.
Washington, DC 20036

　　　　　Re:  Section 1113 Proposal

Dear Mr. Giblin:

　　　　Delphi's October 2005 proposal was aimed at achieving a U.S. competitive all-in rate that will enable us to bid and win new work in the U.S.  As discussed, our experience demonstrates that, while labor rates vary by product line, we tend to lose new business opportunities to U.S. competitors as we approach or exceed an all-in labor rate of approximately $22 per hour.  Our analysis of the attached industry statistics also indicates that the likelihood of maintaining a viable presence in the U.S. is reduced as we exceed U.S. competitive levels.

　　　　In our October proposal we achieved a wage and benefit cost of $21.12, including an hourly cost of $3.54 largely attributable to legacy workers' compensation costs.  When legacy pension and potential COBRA costs were included, however, the all-in labor rate was more than $31 – a plainly uncompetitive level.  These calculations were based on our long-standing labor costing practice of including all legacy labor expense in determining our hourly labor costs for bidding work.

　　　　Without a significant change in our customary labor cost analysis practices, we were not able to propose an average base wage above $10.00, which we are advised is unacceptable.  We also have concluded that continuing our practice of including legacy benefit expense as a direct element of US labor costs in bidding new work impairs our ability to win the volume of new business awards that are necessary for a viable US prospective business.  We have, therefore, decided to exclude all legacy benefits expense (including legacy pension, OPEB and workers' compensation costs) from our penny-sheet for future bidding and from our all-in rate proposal to the union.  Instead, we intend to address these legacy liabilities in the bankruptcy process along with other historical financial obligations that are subject to compromise, all of which must be resolved in order to produce a viable business plan for 2006 and beyond.

　　　　With these changes, Delphi is now able to increase its average base wage proposal for production employees from $10.00 to $12.50, make improvements in active employee health care previously proposed, and implement a defined contribution pension plan for new hires.  This proposal results in a wage and benefit cost of $21.33 per hour, keeping Delphi in a competitive US pay and benefit range both in respect of its average base wage and benefit proposals.  Similar changes are proposed for skilled trades.

Mr. Vincent Giblin
Page 2

This proposal is subject to our finding ways to address all of the legacy benefit costs in the bankruptcy process. We are anxious to engage with you, our other Unions, General Motors, and other stakeholders to focus on potential solutions, including acceptable pension and funding alternatives, legislative, tax or other treatment of past workers' compensation and other obligations, approaches to health care costs such as a VEBA, and similar potential solutions. We have already engaged in discussions with federal, state and local government officials and agencies, and will continue to do so. The apparent consensus recently reached between General Motors and our major unions concerning application of the GM Benefit Guarantee agreements may also significantly improve opportunities for mutually acceptable solutions.

We have formalized this proposal on the enclosed Term Sheet. Under this proposal (as with the October proposal), the existing hourly defined benefit pension plan is frozen. However, Delphi reserves the right to terminate the plan as necessary. While this is the final proposal that we plan to deliver to you prior to the December 16 deadline established in the Bankruptcy Court to file Section 1113 and 1114 motions, we do intend to provide you with an updated financial model when our 2006 business plan is finalized over the next few weeks. Our present plan is to deliver the 2006-2010 business plan to you on or about December 9, 2005, following approval of the plan by our Board of Directors and presentation of the plan to Delphi's Official Committee of Unsecured Creditors.

In the meantime, our increasing losses, as evidenced by Delphi's $788 million dollar loss in the third quarter and the deteriorating macro business environment, demonstrate the urgent need for constructive dialogue and positive resolution. We are ready to discuss these issues at your earliest availability.

Sincerely,

KMB:pmg

Enclosures

cc:      All IUOE Delphi Shop Chairpersons

**Exhibit I**



**Kevin M. Butler**
Vice President
Human Resource Management

March 24, 2006

Mr. Richard Shoemaker
Vice President & Director
UAW General Motors Department
8000 East Jefferson Avenue
Detroit, Michigan  48214

      Re:   <u>Proposal for Modifications to UAW-Delphi Agreements</u>

Dear Mr. Shoemaker:

      Pursuant to Sections 1113 and 1114 of the U.S. Bankruptcy Code, I have enclosed Delphi's revised proposal for necessary modifications to Delphi's collective bargaining agreements with the United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW").  Subject to the results of our negotiations, our discussions with General Motors Corporation ("GM"), and in the event that we do not reach a comprehensive agreement by March 30, 2006, this is the proposal that Delphi intends to include in its Sections 1113 and 1114 Motion to be filed with the Bankruptcy Court on March 31, 2006.

      In this document, and as we have discussed with you previously, we have outlined two different approaches for achieving the cost savings and operational flexibility that Delphi needs successfully to restructure.  The first alternative assumes that GM would provide financial support to ease the transition between the existing terms of the Delphi-UAW agreements and the terms that Delphi needs to restructure.  This proposal includes a number of terms that we have discussed informally in recent weeks, including a "step-down" from existing wage levels for existing employees, and buy-outs and buy-downs for employees who elect to leave Delphi or to remain under new terms.  These terms are contingent upon a commitment by GM to pay the incremental cost of the proposal, but we are willing to discuss with GM and the UAW the possible forms that such financial support could take.

      The second alternative is based on the assumption that Delphi must restructure without any financial support from GM except that to which GM has already committed.  These terms are largely the same terms that were included in our proposal of November 15, 2005 and remain consistent with the discussion in our transmittal letter to you on that date.

Mr. Richard Shoemaker
Page 2

With today's proposal, we hope the parties can capitalize on the momentum that was created by the Special Attrition Program that we just executed and continue to find mutually acceptable solutions to reduce the hardship created by Delphi's financial situation.

We will also be providing you under separate cover a financial analysis of the current proposals and other information relevant to your consideration of these proposals.  We also expect to provide you and other stakeholders with an updated forecast of 2006 performance in mid-April based on Delphi's actual performance for the first two months of 2006 and estimated performance through the balance of 2006 and through 2010.  However, we do not expect that updated forecast to alter the required transformation of Delphi's labor agreements outlined in the enclosed materials.

Please contact me as soon as possible so that we can engage in discussions regarding this proposal immediately, and achieve a consensual agreement on contract modifications.

Sincerely,

cc:    Local Union Presidents
       Local Union Shop Chairpersons



**Kevin M. Butler**
Vice President
Human Resource Management

March 24, 2006

Mr. Henry Reichard
Chairman
IUE-CWA Automotive Conference Board
2360 Dorothy Lane, Suite 201
Dayton, Ohio 45439

      Re:    <u>Proposal for Modifications to IUE-CWA-Delphi Agreements</u>

Dear Mr. Reichard:

      Pursuant to Sections 1113 and 1114 of the U.S. Bankruptcy Code, I have enclosed Delphi's revised proposal for necessary modifications to Delphi's collective bargaining agreements with the IUE-CWA.  Subject to the results of our negotiations, our discussions with General Motors Corporation ("GM"), and in the event that we do not reach a comprehensive agreement by March 30, 2006, this is the proposal that Delphi intends to include in its Sections 1113 and 1114 Motion to be filed with the Bankruptcy Court on March 31, 2006.

      In this document, and as we have discussed with you previously, we have outlined two different approaches for achieving the cost savings and operational flexibility that Delphi needs successfully to restructure.  The first alternative assumes that GM would provide financial support to ease the transition between the existing terms of the IUE-CWA-Delphi agreements and the terms that Delphi needs to restructure.  This proposal includes a number of the subjects that we have discussed informally with you in recent weeks, including a "step-down" from existing wage levels for certain existing employees, and buy-outs and buy-downs for eligible employees who elect to leave Delphi or to remain under new terms.  These terms are contingent upon a commitment by GM to pay the incremental cost of the proposal, but we are willing to discuss with GM and the IUE-CWA the possible forms that such financial support could take.

      The second alternative is based on the assumption that Delphi must restructure without any financial support from GM.  These terms are largely the same terms that were included in our proposal of November 15, 2005 and remain consistent with the discussion in our transmittal letter to you on that date.

Mr. Henry Reichard
Page 2


With today's proposal, we hope the parties can utilize the momentum created this week as we seek the Bankruptcy Court's approval of Hourly Attrition Programs which might be negotiated with the IUE-CWA and continue to find mutually acceptable solutions to reduce the hardship created by Delphi's financial situation.

We will also be providing you under separate cover a financial analysis of the current proposals and other information relevant to your consideration of these proposals. We also expect to provide you and other stakeholders with an updated forecast of 2006 performance in mid-April based on Delphi's actual performance for the first two months of 2006 and estimated performance through the balance of 2006 and through 2010. However, we do not expect that updated forecast to alter the required transformation of Delphi's labor agreements outlined in the enclosed materials.

Please contact me as soon as possible so that we can engage in discussions regarding this proposal immediately, and achieve a consensual agreement on contract modifications.

Sincerely,


cc:    Local Union Presidents
       Local Union Shop Chairpersons



**Kevin M. Butler**
Vice President
Human Resource Management

March 24, 2006

Mr. Dennis Bingham
President, Local Union 87
United Steel Workers of America
21 Abbey Avenue
Dayton, Ohio 45417

      Re:    <u>Proposal for Modifications to USW Local 87L-Delphi Agreements</u>

Dear Mr. Bingham:

      Pursuant to Sections 1113 and 1114 of the U.S. Bankruptcy Code, I have enclosed Delphi's revised proposal for necessary modifications to Delphi's collective bargaining agreements with the USW Local 87L.  Subject to the results of our negotiations, our discussions with General Motors Corporation ("GM"), and in the event that we do not reach a comprehensive agreement by March 30, 2006, this is the proposal that Delphi intends to include in its Sections 1113 and 1114 Motion to be filed with the Bankruptcy Court on March 31, 2006.

      In this document, and as we have discussed with you previously, we have outlined two different approaches for achieving the cost savings and operational flexibility that Delphi needs successfully to restructure.  The first alternative assumes that GM would provide financial support to ease the transition between the existing terms of the USW Local 87L-Delphi agreements and the terms that Delphi needs to restructure.  This proposal includes a number of the subjects that we have discussed informally with you in recent weeks, including a "step-down" from existing wage levels for certain existing employees, and buy-outs and buy-downs for eligible employees who elect to leave Delphi or to remain under new terms.  These terms are contingent upon a commitment by GM to pay the incremental cost of the proposal, but we are willing to discuss with GM and the USW Local 87L the possible forms that such financial support could take.

      The second alternative is based on the assumption that Delphi must restructure without any financial support from GM.  These terms are largely the same terms that were included in our proposal of November 15, 2005 and remain consistent with the discussion in our transmittal letter to you on that date.

Mr. Dennis Bingham
Page 2

With today's proposal, we hope the parties can utilize the momentum created this week as we seek the Bankruptcy Court's approval of Hourly Attrition Programs which might be negotiated with the USW Local 87L and continue to find mutually acceptable solutions to reduce the hardship created by Delphi's financial situation.

We will also be providing you under separate cover a financial analysis of the current proposals and other information relevant to your consideration of these proposals.  We also expect to provide you and other stakeholders with an updated forecast of 2006 performance in mid-April based on Delphi's actual performance for the first two months of 2006 and estimated performance through the balance of 2006 and through 2010.  However, we do not expect that updated forecast to alter the required transformation of Delphi's labor agreements outlined in the enclosed materials.

Please contact me as soon as possible so that we can engage in discussions regarding this proposal immediately, and achieve a consensual agreement on contract modifications.

Sincerely,

cc:    Local Union Shop Chairperson



**Kevin M. Butler**
Vice President
Human Resource Management

March 25, 2006

Mr. Robert V. Thayer
General Vice President,
International Association of Machinists
and Aerospace Workers
9000 Machinists Place
Upper Marlboro, Maryland  20772-2687

     Re:    Proposal for Modifications to IAM-Delphi Agreements

Dear Mr. Thayer:

    Pursuant to Sections 1113 and 1114 of the U.S. Bankruptcy Code, I have enclosed Delphi's revised proposal for necessary modifications to Delphi's collective bargaining agreements with the IAM.  Subject to the results of our negotiations, our discussions with General Motors Corporation ("GM"), and in the event that we do not reach a comprehensive agreement by March 30, 2006, this is the proposal that Delphi intends to include in its Sections 1113 and 1114 Motion to be filed with the Bankruptcy Court on March 31, 2006.

    In this document we have outlined two different approaches for achieving the cost savings and operational flexibility that Delphi needs to successfully restructure.  The first alternative assumes that GM would provide financial support to ease the transition between the existing terms of the IAM-Delphi agreements and the terms that Delphi needs to restructure.  This proposal includes a "step-down" from existing wage levels for certain existing employees, and buy-outs and buy-downs for eligible employees who elect to leave Delphi or to remain under new terms.  These terms are contingent upon a commitment by GM to pay the incremental cost of the proposal, but we are willing to discuss with GM and the IAM the possible forms that such financial support could take.

    The second alternative is based on the assumption that Delphi must restructure without any financial support from GM.  These terms are largely the same terms that were included in our proposal on or about November 15, 2005 and remain consistent with the discussion in our transmittal letter to you on that date.

Mr. Robert V. Thayer
Page 2

With today's proposal, we hope the parties can utilize the momentum created this week as we seek the Bankruptcy Court's approval of Hourly Attrition Programs which might be negotiated with the IAM  and continue to find mutually acceptable solutions to reduce the hardship created by Delphi's financial situation.

We will also be providing you under separate cover a financial analysis of the current proposals and other information relevant to your consideration of these proposals.  We also expect to provide you and other stakeholders with an updated forecast of 2006 performance in mid-April based on Delphi's actual performance for the first two months of 2006 and estimated performance through the balance of 2006 and through 2010.  However, we do not expect that updated forecast to alter the required transformation of Delphi's labor agreements outlined in the enclosed materials.

Please contact me as soon as possible so that we can engage in discussions regarding this proposal immediately, and achieve a consensual agreement on contract modifications.

Sincerely,



**Kevin M. Butler**
Vice President
Human Resource Management

March 25, 2006

Mr. Edwin Hill
President
International Brotherhood of Electrical Workers
900 Seventh Street, N.W.
Washington, DC  20001

       Re:    <u>Proposal for Modifications to IBEW-Delphi Agreements</u>

Dear Mr. Hill:

       Pursuant to Sections 1113 and 1114 of the U.S. Bankruptcy Code, I have enclosed Delphi's revised proposal for necessary modifications to Delphi's collective bargaining agreements with the IBEW.  Subject to the results of our negotiations, our discussions with General Motors Corporation ("GM"), and in the event that we do not reach a comprehensive agreement by March 30, 2006, this is the proposal that Delphi intends to include in its Sections 1113 and 1114 Motion to be filed with the Bankruptcy Court on March 31, 2006.

       In this document we have outlined two different approaches for achieving the cost savings and operational flexibility that Delphi needs to successfully restructure.  The first alternative assumes that GM would provide financial support to ease the transition between the existing terms of the IBEW-Delphi agreements and the terms that Delphi needs to restructure.  This proposal includes a "step-down" from existing wage levels for certain existing employees, and buy-outs and buy-downs for eligible employees who elect to leave Delphi or to remain under new terms.  These terms are contingent upon a commitment by GM to pay the incremental cost of the proposal, but we are willing to discuss with GM and the IBEW the possible forms that such financial support could take.

       The second alternative is based on the assumption that Delphi must restructure without any financial support from GM.  These terms are largely the same terms that were included in our proposal on or about November 15, 2005 and remain consistent with the discussion in our transmittal letter to you on that date.

Mr. Edwin D. Hill
Page 2

With today's proposal, we hope the parties can utilize the momentum created this week as we seek the Bankruptcy Court's approval of Hourly Attrition Programs which might be negotiated with the IBEW  and continue to find mutually acceptable solutions to reduce the hardship created by Delphi's financial situation.

We will also be providing you under separate cover a financial analysis of the current proposals and other information relevant to your consideration of these proposals.  We also expect to provide you and other stakeholders with an updated forecast of 2006 performance in mid-April based on Delphi's actual performance for the first two months of 2006 and estimated performance through the balance of 2006 and through 2010.  However, we do not expect that updated forecast to alter the required transformation of Delphi's labor agreements outlined in the enclosed materials.

Please contact me as soon as possible so that we can engage in discussions regarding this proposal immediately, and achieve a consensual agreement on contract modifications.

Sincerely,

cc:     Local Union Presidents



**Kevin M. Butler**
Vice President
Human Resource Management

March 25, 2006


Mr. Vincent J. Giblin
President
International Union of Operating Engineers
1125 17th Street, N.W.
Washington, DC  20036

   Re: <u>Proposal for Modifications to IUOE-Delphi Agreements</u>

Dear Mr. Giblin:

   Pursuant to Sections 1113 and 1114 of the U.S. Bankruptcy Code, I have enclosed Delphi's revised proposal for necessary modifications to Delphi's collective bargaining agreements with the IUOE.  Subject to the results of our negotiations, our discussions with General Motors Corporation ("GM"), and in the event that we do not reach a comprehensive agreement by March 30, 2006, this is the proposal that Delphi intends to include in its Sections 1113 and 1114 Motion to be filed with the Bankruptcy Court on March 31, 2006.

   In this document we have outlined two different approaches for achieving the cost savings and operational flexibility that Delphi needs to successfully restructure.  The first alternative assumes that GM would provide financial support to ease the transition between the existing terms of the IUOE-Delphi agreements and the terms that Delphi needs to restructure.  This proposal includes a "step-down" from existing wage levels for certain existing employees, and buy-outs and buy-downs for eligible employees who elect to leave Delphi or to remain under new terms.  These terms are contingent upon a commitment by GM to pay the incremental cost of the proposal, but we are willing to discuss with GM and the IUOE the possible forms that such financial support could take.

   The second alternative is based on the assumption that Delphi must restructure without any financial support from GM.  These terms are largely the same terms that were included in our proposal on or about November 15, 2005 and remain consistent with the discussion in our transmittal letter to you on that date.

Mr. Vincent J. Giblin
Page 2


With today's proposal, we hope the parties can utilize the momentum created this week as we seek the Bankruptcy Court's approval of Hourly Attrition Programs which might be negotiated with the IUOE  and continue to find mutually acceptable solutions to reduce the hardship created by Delphi's financial situation.

We will also be providing you under separate cover a financial analysis of the current proposals and other information relevant to your consideration of these proposals.  We also expect to provide you and other stakeholders with an updated forecast of 2006 performance in mid-April based on Delphi's actual performance for the first two months of 2006 and estimated performance through the balance of 2006 and through 2010.  However, we do not expect that updated forecast to alter the required transformation of Delphi's labor agreements outlined in the enclosed materials.

Please contact me as soon as possible so that we can engage in discussions regarding this proposal immediately, and achieve a consensual agreement on contract modifications.

Sincerely,



cc:    Local Union Shop Chairpersons