**KPMG**

KPMG LLP
Suite 1200
150 West Jefferson
Detroit, MI 48226-4429

Telephone 313 983 0200
Fax 313 983 0006
      313 983 0007
      313 983 0008
Internet www.us.kpmg.com

*Billing [handwritten]*

*[handwritten] 1126615a*

March 1, 2005

**PRIVATE**
Mr. James P. Whitson
Chief Tax Officer
Delphi Corporation
M/C 480.400.626
5725 Delphi Drive
Troy, MI 48098-2815

Dear Mr. Whitson:

We are pleased you have engaged KPMG LLP ("KPMG") to provide tax consulting services for Delphi Corporation ("Delphi"). This letter confirms the scope and related terms of your engagement of KPMG.

We will provide tax consulting services with respect to such matters that may arise for which you seek our advice and consultation.

This letter does not encompass any services that are the subject of a separate engagement letter between KPMG and Delphi.

Our fees for this engagement will be based on the complexity of the issues and the time required of the individuals who will be performing the services. As a result of our discussions with you, we estimate that our rates for these services are as stated:

| | |
|---|---|
| Partners | $350 |
| Senior Manager | $325 |
| Managers | $300 |
| Senior Staff | $225 |
| Staff | $175 |

Circumstances encountered during the performance of these services that warrant additional time or expense could cause us to be unable to deliver them within the above estimates. We will endeavor to notify you of any such circumstances as they are assessed.

To be of greatest assistance to Delphi, we should be advised **in advance** of proposed transactions. If such matters exceed the scope of this engagement letter, we will issue

KPMG LLP, a U.S. limited liability partnership, is the U.S. member firm of KPMG International, a Swiss cooperative.



Page 2
Mr. Jim Whitson
Delphi Automotive Systems
February 9, 2004

separate engagement letters to confirm the scope and related terms of any additional engagements.

The attached Exhibit A, Terms and Conditions, Exhibit B, Travel and Per Diem Reimbursement, and Exhibit C, Dispute Resolution Procedures, are made a part of this engagement letter. Please sign the enclosed copy of this engagement letter to confirm our agreement and return it to us within 30 days. If you have any questions, please call me.

Very truly yours,

KPMG LLP

*[signature]*

Patrick N. Karpen
*Partner*

Enclosure

ACCEPTED:

Delphi Corporation

_____
Authorized Signature
JAMES P. WHITSON

__CHIEF TAX OFFICER__
Title

__17 APR 2005__
Date



# EXHIBIT A

## GENERAL TERMS AND CONDITIONS

1.  **Agreement.** It is agreed that KPMG LLP ("Consultant") will provide to Delphi Corporation ("Delphi") the services (the "Services") described in the accompanying engagement letter (the "Engagement Letter") to which this Exhibit A is attached (the Engagement Letter, this Exhibit A and Exhibit B are collectively referred to as this "Agreement"). For purposes of this Agreement, the terms "Consultant" include any affiliates of Consultant identified in the Engagement Letter as performing any of the Services, and the term "Delphi" includes any subsidiaries and affiliates of Delphi for which the Services are performed. This Agreement constitutes the entire and sole agreement between Delphi and Consultant, and merges all prior and contemporaneous communications with respect to the subject matter of this Agreement.

2.  **Independent Contractor.** Consultant will provide the Services as an independent contractor. Nothing contained in this Agreement shall be construed to create an employment or principal-agent relationship or joint venture between Consultant and Delphi, and neither party shall have the right, power or authority to obligate or bind the other in any manner whatsoever.

3.  **Personnel.** All of Consultant's agents, employees, subcontractors and/or independent contractors furnished by Consultant to perform the Services (collectively, "Personnel") are and will remain Consultant's employees and/or independent contractors and, under no circumstances, will any Personnel furnished by Consultant be deemed to be Delphi's employees or agents. Consultant is solely responsible, at Consultant's sole cost and expense, for (i) the fulfillment of all obligations to Personnel and (ii) the compliance by Consultant and Personnel with this Agreement and all laws, regulations, orders and other governmental requirements applicable to performance of the Services.

4.  **Conduct of Consultant's Personnel.** Consultant will assure that all Personnel who are performing Services on behalf of Consultant are competent to perform the Services. Consultant will require all Personnel who are performing any work on Delphi's premises to comply with all of Delphi's regulations and policies. Delphi, in its sole discretion, has the right to: (a) bar any of Personnel from Delphi's premises for failure to observe Delphi's regulations or policies, (b) require that Consultant promptly remove from Delphi's premises any Personnel who violate any of Delphi's regulations or policies, and (c) require that Consultant cease using any Personnel to perform the services who are reasonably unacceptable to Delphi. Delphi will confer with Consultant to discuss Delphi's concerns prior to requiring removal of any Personnel. Consultant will replace any barred or removed Personnel with Personnel reasonably acceptable to Delphi.

1



5.  **Non-Solicitation of Employees.**

   A. Delphi agrees that during the term of this Agreement and for a period of one (1) year after the termination of this Agreement, it will not hire or attempt to hire any employees or former employees of Consultant if listed in the engagement letter attached hereto, who have been assigned to or have performed any of the Services contemplated herein.

   B. Consultant agrees that during the term of this Agreement and for a period of one (1) year after the termination of this Agreement, it will not hire or attempt to hire any employees or former employees of Delphi's Tax staff who have participated in the furtherance of this Agreement.

   C. Notwithstanding the provisions of Sections 5A and 5B, neither party shall be prohibited from employing any employee, former employee or personnel of the other who contacts such party (i) on his or her own initiative or (ii) in response to a general solicitation for employment contained in a newspaper or any other publication.

6. **Professional Fees.** Delphi will compensate Consultant for actual Services performed in accordance with the fee schedule set forth in this Agreement (the "Fee Schedule"). Consultant will invoice Delphi no more frequently than monthly. Consultant will submit, with each invoice for payment, a report specifying the actual Services performed and the calculation of the invoiced payment in accordance with the Fee Schedule. Invoices will be due and payable by Delphi within forty-five (45) days of Delphi's receipt of the invoice and corresponding report in the required form.

7. **Expenses.** Delphi will reimburse Consultant for all reasonable costs and expenses Consultant incurs in connection with the Services, including, without limitation, all travel expenses, provided, however, that Consultant must obtain prior approval of Delphi for any individual reimbursable expenses in excess of $1,000 or for reimbursable expenses which exceed or are anticipated to exceed an aggregate of $2,500 during any calendar month. Consultant will not charge any markup, overhead, profit or other fees on the reimbursable expenses. Delphi's reimbursement obligations will be governed by the provisions of Exhibit B.

8. **Taxes.** Unless otherwise agreed in the Engagement Letter, any applicable taxes imposed on Consultant in connection with the performance of the Services (except for taxes imposed on Consultant's income) will be invoiced to, and paid by, Delphi in addition to fees and expenses.

9. **Indemnification.**

   A. Delphi shall indemnify, defend and hold harmless Consultant, including its directors, officers, employees, agents and representatives, from and against any and all claims,

2



demands, actions, damages, liabilities, costs and expenses, including reasonable attorney fees and expenses, to the extent arising out of or resulting from third party claims against Consultant based on any of Consultant's written or verbal work product prepared pursuant to this Agreement and furnished by Consultant to Delphi for internal use (such as reports, analyses, projections, advice, recommendations and other data) (collectively, "Internal Work Product Claims"). In addition, Delphi shall indemnify, defend and hold harmless Consultant, including its directors, officers, employees, agents and representatives, from and against any and all claims, demands, actions, damages, liabilities, costs and expenses, including reasonable attorney fees and expenses (other than Internal Work Product Claims), to the extent arising out of or resulting from third party claims against Consultant based on any activities of Consultant in connection with the performance of Services under this Agreement (collectively, "Non-Work Product Claims"), provided, however, that Delphi will have no obligation to indemnify Consultant to the extent that any Non-Work Product Claims arise out of or result from the negligence, illegal acts or willful misconduct of Consultant and/or its directors, officers, employees, agents or representatives.

B. Consultant shall indemnify, defend and hold harmless Delphi, including its directors, officers, employees, agents and representatives, from any and all claims, demands, actions, damages, liabilities, costs and expenses, including reasonable attorney fees and expenses, to the extent arising out of or resulting from the negligence, illegal acts or willful misconduct of Consultant and/or its directors, officers, employees, agents or representatives in connection with the performance of Services under this Agreement, provided, however, that Consultant will have no obligation to indemnify Delphi to the extent that any such claims or damages arise out of or result from Internal Work Product Claims.

C. In each case, the indemnifying party shall also pay to the indemnified party any and all costs and expenses incurred in connection with the enforcement of these indemnification provisions.

D. The indemnification obligations set forth in this Section 9 and the general terms and conditions of this Agreement shall not apply to any tax or other governmental filings prepared by Consultant. The rights and obligations of the parties with respect to such services shall be governed by a separate agreement.

10. Limitation of Liability. Consultant's liability under this Agreement will be limited to twenty (20) times the professional fees paid; provided however that this limitation shall not apply (i) in the event of any breach of Section 16 below relating to Delphi Proprietary Information or (ii) if Consultant is found to be grossly negligent or to have acted willfully or fraudulently. In no event will Consultant or Delphi be liable for consequential, special, indirect, incidental, punitive or exemplary damages, costs, expenses, or losses (including loss of profits, data, business or goodwill) regardless of whether such liability is based on breach of contract,

3



tort, strict liability, breach of warranties, failure of essential purpose or otherwise, and even if advised of the likelihood of such damages.

11.   **Standard of Performance.** Consultant will use its best skills, resources and judgment to perform the Services in an efficient and economical manner and in accordance with the highest professional standards. If any Services are not completed to Delphi's reasonable satisfaction, Consultant will, at no additional cost to Delphi, take reasonable steps to correct any deficiencies. The express warranties in this Paragraph and in this Agreement shall be in lieu of all other warranties, express or implied, including the implied warranty of merchantability and fitness for a particular purpose.

12.   **Reliance on Information/Authorities.** Consultant will base its conclusions on the facts and assumptions that Delphi submits and will not independently verify this information. Inaccuracy or incompleteness of the information Delphi provides could have a material effect on Consultant's conclusions. In rendering its advice, Consultant may consider, for example, the applicable provisions of the Internal Revenue Code of 1986, and ERISA as amended, and the relevant state statutes, the regulations thereunder, and judicial and administrative interpretations thereof. These authorities are subject to change, retroactively and/or prospectively, and any such changes could affect the validity of Consultant's advice. Consultant will not update its advice for subsequent changes or modifications to the law and regulations, or to the judicial and administrative interpretations thereof, unless Delphi separately engages Consultant to do so after such changes or modifications.

13.   **Legal Counsel.** Delphi should consult with and/or engage legal counsel for the purpose of advising on non-tax legal aspects of matters on which Consultant provides tax advice and drafting any legal documents and/or agreements that may be required in connection therewith. Consultant will provide Delphi's legal counsel with tax-related advice that is deemed necessary by Delphi's legal counsel to draft such documents and/or agreements. To the extent Services of legal counsel or other professional service providers are required, Delphi is responsible for engaging and paying such service providers.

14.   **Federal Confidential Communications Privilege.** A confidentiality privilege under Internal Revenue Code Section 7525 may pertain to certain communications between Consultant personnel and Delphi regarding federal tax advice provided pursuant to this engagement. By retaining Consultant, Delphi agrees that Consultant is instructed to claim the privilege on Delphi's behalf, with respect to any applicable communications, up to and until such time as Delphi may waive any such privilege in writing. As disclosure of any such confidential communications to the Internal Revenue Service or other third party may cause any confidentiality privilege to be waived, Delphi should notify Consultant if the Internal Revenue Service or other third party requests information about any tax advice or tax advice documents provided by Consultant.

4



Delphi understands that Consultant makes no representation, warranty, or promise, and offers no opinion with respect to the applicability of such confidentiality privilege to any communication. Delphi agrees to indemnify Consultant for any attorney's fees and other costs and expenses incurred by Consultant in defending the confidentiality privilege on Delphi's behalf. Consultant agrees to promptly notify Delphi of any claim for which Consultant seeks indemnification and Delphi shall have the right to conduct the defense or settlement of any such claim at Delphi's sole expense, and Consultant shall cooperate with Delphi. Consultant shall nonetheless have the right to participate in such defense at its own expense and to approve the settlement of any claim hereunder that imposes liability or obligation.

15.    <u>Disclosure and Restriction on Use.</u>    If this engagement relates to a strategy offered by Consultant to Delphi that is designed to reduce or defer federal income tax for a direct or indirect corporate participant, pursuant to Treasury Regulation section 301.6111-2(c), Delphi (and each employee, representative, or other agent of Delphi) is expressly authorized to disclose the structure and tax aspects of the strategy with any and all persons, without limitation of any kind.

Written advice provided by Consultant to Delphi is for the information and use of Delphi only and may not be relied upon by any third party without the express written permission of Consultant.

16.    <u>Non-Disclosure of Delphi Proprietary Information.</u>

A.    "Delphi Proprietary Information" means any information concerning the business and affairs of Delphi, which is not publicly available at the time disclosed to, or learned by, Consultant or any Personnel. Delphi Proprietary Information includes, without limitation, this Agreement and any written or verbal work product prepared pursuant to this Agreement (such as reports, analyses, projections, advice, recommendations and other data); trade secrets; product specifications; data; know-how; formulae; compositions; processes; designs; sketches; photographs; samples; inventions; concepts; ideas; past, current and planned research and development; past, current and planned manufacturing or distribution methods and processes; price lists; marketing and business plans, methods and processes; financial results and information; reports; computer software and programs (including object code and source code); databases; notes; analyses; compilations; studies; and other materials or intangibles. Delphi Proprietary Information also includes any materials or information that contain or are based on any other Delphi Proprietary Information, whether prepared by Delphi, Consultant, Personnel or any other person. Information will be conclusively deemed Delphi Proprietary Information if it is marked "Proprietary" or "Confidential" or with an equivalent legend at the time it is disclosed. Any information transmitted orally will be conclusively deemed Delphi Proprietary Information if Delphi notifies Consultant that it is proprietary within a reasonable time following oral disclosure. The failure, however, to mark information as "Proprietary" or "Confidential" or to notify Consultant that oral information is proprietary will not affect the



information's proprietary nature. Delphi Proprietary Information does not include any trade secrets; data; know-how; formulae; compositions; processes; designs; sketches; inventions; concepts; ideas; methodologies, and techniques; models; templates; general purpose consulting and software tools previously created, acquired, owned or developed or independently developed by Consultant in the performance of the Services without reference to Delphi's Proprietary Information.

      B. In connection with Consultant's performance of Services, Delphi may disclose Delphi Proprietary Information to Consultant and Personnel. All Delphi Proprietary Information disclosed, furnished or made available to Consultant and/or Personnel and all Delphi Proprietary Information generated or developed by Consultant and/or Personnel will be treated and maintained as confidential by Consultant and Personnel, will not be disclosed to any third parties, either in whole or in part, except upon Delphi's prior written authorization, and will be used by Consultant and Personnel only for the purpose of performing the Services in accordance with this Agreement, in all cases using the same degree of care and discretion to avoid disclosure, publication or dissemination of such Delphi Proprietary Information that Consultant uses with respect to its own similar information that it does not wish to disclose, publish or disseminate (but in no event less than a reasonable degree of care and discretion). Before Consultant or Personnel discloses any information that could, under any circumstances, constitute Delphi Proprietary Information, Consultant will obtain Delphi's written consent. Neither Consultant nor Personnel will remove any Delphi Proprietary Information from Delphi's premises unless Delphi authorizes the removal in writing. Consultant will be responsible and liable to Delphi for the violation by any of Personnel of these confidentiality obligations.

      C. The foregoing obligations under this Section 16B of this <u>Exhibit A</u> shall not apply to the extent that any Delphi Proprietary Information (i) is at the time of disclosure, or thereafter becomes, part of the public domain through a source other than Consultant and Personnel, (ii) is subsequently learned by Consultant or Personnel from a third party that has a legal right to make such disclosure and does not impose an obligation of confidentiality on the receiving party, (iii) was known to Consultant or Personnel at the time of disclosure by Delphi, (iv) was generated independently by Consultant or Personnel before disclosure by Delphi, or (v) is required to be disclosed by Consultant or Personnel by law, subpoena or other process.

17.   <u>Assignment and Subcontracting</u>. Consultant will not assign or subcontract any portion of its responsibilities under this Agreement without Delphi's prior written approval. To the extent any of the services under the Engagement Letter will be performed in or relate to a jurisdiction outside of the United States, Client acknowledges and agrees that such services may be performed by the member firm of KPMG International practicing in such jurisdiction. Accordingly, Client consents to KPMG's disclosure to a member firm and such member firm's use of information received from Client for the purpose of providing services under the Engagement Letter.



18. **Changes and Delays.**

   A. In the event that (i) Delphi requires a change in the scope of the Services, (ii) any change of applicable law or regulation affects the timing or performance of the Services or (iii) any action by Delphi or a third party (other than Personnel) affects the timing or performance of the Services, subject to the mutual agreement of Delphi and Consultant, the fees and/or schedule for performance for the Services will be equitably adjusted by the parties.

   B. To the extent that the Engagement Letter provides that Consultant's performance under this Agreement is contingent upon specific action or cooperation of Delphi, including the supply to Consultant of specific resources, approvals, and information, any delays in Consultant's performance which occur as a result of the failure or untimely performance by Delphi shall be excused to the extent of any such delay or untimely performance by Delphi and Consultant shall not incur any liability to Delphi as a result of any such delay or untimely performance by Delphi.

19. **Term and Termination.** This Agreement will terminate when the Services have been completed. In addition, either party may terminate this Agreement in the event of the breach by the other party of this Agreement, which breach is not cured within thirty (30) days after notice by the non-breaching party. Delphi shall pay Consultant for Services performed prior to the effective date of termination as well as expenses incurred prior to the effective date of termination and approved by Delphi in accordance with Section 7 of this Exhibit A.

20. **Conflict.** In the event of any conflict, ambiguity or inconsistency between this Agreement and any other agreement relating to the Services, including any preprinted terms and conditions on Delphi's purchase orders, the terms and conditions of this Agreement shall govern.

21. **Survival.** The provisions of this Agreement, which give the parties rights beyond termination of this Agreement, will survive any termination of this Agreement.

22. **Severability.** If any portion of this Agreement is held to be void, invalid, or otherwise unenforceable, in whole or part, the remaining portions of this Agreement shall remain in effect.

23. **Amendment.** This Agreement shall not be modified except by a later written agreement signed by both parties.

24. **Alternative Dispute Resolution.**

   A. Any dispute or claim arising out of or relating to the Engagement Letter between the parties, the services provided thereunder, or any other services provided by or on

7

**KPMG**

behalf of Consultant or any of its subcontractors or agents to Delphi or at its request (including any dispute or claim involving any person or entity for whose benefit the services in question are or were provided) shall be resolved in accordance with the dispute resolution procedures set forth in Exhibit C attached hereto, which constitute the sole methodologies for the resolution of all such disputes. By operation of this provision, the parties agree to forego litigation over such disputes in any court of competent jurisdiction. Mediation, if selected, may take place at a location to be designated by the parties. Arbitration shall take place in Detroit, Michigan. Either party may seek to enforce any written agreement reached by the parties during mediation, or to confirm and enforce any final award entered in arbitration, in any court of competent jurisdiction.

    B.    Notwithstanding the agreement to such procedures, either party may seek injunctive relief to enforce its rights with respect to the use or protection of (i) its confidential or proprietary information or material or (ii) its names, trademarks, service marks or logos, solely in the courts of the State of Michigan or in the courts of the United States located in the State of Michigan. The parties consent to the personal jurisdiction thereof and to sole venue therein only for such purposes.

25.    <u>Miscellaneous.</u>

    A.    For engagements where services will be provided by KPMG through offices located in California, Client acknowledges that certain of KPMG's personnel who may be considered "owners" under the California Accountancy Act and implementing regulations (California Business and Professions Code section 5079(a); 16 Cal. Code Regs. sections 51 and 51.1) and who may provide services in connection with this engagement, may not be licensed as certified public accountants under the laws of any of the various states.

    B.    Where KPMG is reimbursed for expenses, it is KPMG's policy to bill clients the amount incurred at the time the good or service is purchased. If KPMG subsequently receives a volume rebate or other incentive payment from a vendor relating to such expenses, KPMG does not credit such payment to Client. Instead, KPMG applies such payments to reduce its overhead costs, which costs are taken into account in determining KPMG's standard billing rates and certain transaction charges that may be charged to clients.



## EXHIBIT B

### Travel and Per Diem Reimbursement

A.  If Personnel are required by Delphi to travel as an incidental requirement in performing services for Delphi, then such travel and per diem expenses, subject to prior written approval of Delphi, will be reimbursable as follows:

| | |
|---|---|
| 1. Air Travel | Economy/Coach class only. Business class is permitted only upon prior written consent by Delphi. |
| 2. Hotel | Consultant will exercise good, sound business judgment and discretion in choosing hotels, such as moderately priced chain hotels or hotels that offer discounted corporate rates. Where extended travel is involved, reduced rates may be available and should be requested. |
| 3. Rental cars | Compact or intermediate class only. The cost of collision damage waiver and personal accident insurance is the responsibility of Consultant. |
| 4. Mileage Allowance | Reimbursement will be at the then current IRS rate (currently $0.405 per mile) for the miles which are in excess of his or her normal commute from home to work and back. When permanently assigned to another location, even if the new location is temporary, Consultant will not be reimbursed for excess miles, additional driving time, etc. |
| 5. Expense Reports | If requested, Consultant will provide receipts for all reimbursable expenses, including meals and other expenditures, in excess of $25.00 or more. |
| 6. Meals | Meals will not be reimbursed for non-overnight trips, except in the case of late return occasioned by travel outside normal working hours. Reimbursement for meals will be the actual and reasonable expenses paid by Consultant. |
| 7. Extended Travel | Consultant should review the home visit policy prior to a trip. Generally, the following provisions apply: |

If the travel expense is less than the living expense in the temporary location, Consultant will be reimbursed for travel to the permanent location every week.

If the travel expense is more than the living expense in the temporary location, Consultant will be reimbursed for travel to the permanent location every two



weeks.

Excess expenses due to frequent travel or stays will not be reimbursed by Delphi without its prior written approval.

8. Miscellaneous — When Consultant chooses an alternative method of transportation, e.g., to drive instead of fly, reimbursement, including meals and lodging, will not exceed the lesser of the two costs. Documentation to support the lesser cost must be attached to expense report. Travel time must also be limited if on working hours.

The employee, his or her immediate supervisor, and an authorized Delphi representative must sign the expense report form.

Consultant is responsible for travel reservations, hotel/motel accommodations and rental cars. If directed by Delphi, Consultant will make all travel arrangements through Global Experts in Travel (GET), or other designated supplier, using a special account set up for such purposes.

Any cash advance by Consultant to its employee is the responsibility of Consultant.

9. Per Diem — In certain instances, a per diem will be paid to Consultant in accordance with Delphi's standard per diem policy.

B.    All travel and per diem for which Consultant seeks reimbursement will be submitted to Delphi on standard vouchers, with substantiating documentation, and will accompany the monthly invoices.



## EXHIBIT C

### Dispute Resolution Procedures

The following procedures are the sole methodologies to be used to resolve any controversy or claim ("dispute"). If any of these provisions are determined to be invalid or unenforceable, the remaining provisions shall remain in effect and binding on the parties to the fullest extent permitted by law.

**Mediation**

Any party may request mediation of a dispute by providing a written Request for Mediation to the other party or parties. The mediator, as well as the time and place of the mediation, shall be selected by agreement of the parties. Absent any other agreement to the contrary, the parties agree to proceed in mediation using the CPR Mediation Procedures (Effective April 1, 1998), with the exception of paragraph 2 which shall not apply to any mediation conducted pursuant to this agreement. As provided in the CPR Mediation Procedures, the mediation shall be conducted as specified by the mediator and as agreed upon by the parties. The parties agree to discuss their differences in good faith and to attempt, with facilitation by the mediator, to reach a consensual resolution of the dispute. The mediation shall be treated as a settlement discussion and shall be confidential. The mediator may not testify for any party in any later proceeding related to the dispute. No recording or transcript shall be made of the mediation proceeding. Each party shall bear its own costs in the mediation. Absent an agreement to the contrary, the fees and expenses of the mediator shall be shared equally by the parties.

**Arbitration**

Arbitration shall be used to settle the following disputes: (1) any dispute not resolved by mediation 90 days after the issuance by one of the parties of a written Request for Mediation (or, if the parties have agreed to enter or extend the mediation, for such longer period as the parties may agree) or (2) any dispute in which a party declares, more than 30 days after receipt of a written Request for Mediation, mediation to be inappropriate to resolve that dispute and initiates a Request for Arbitration. Once commenced, the arbitration will be conducted either (1) in accordance with the procedures in this document and the Rules for Non-Administered Arbitration of the CPR Institute for Dispute Resolution ("CPR Arbitration Rules") as in effect on the date of the engagement letter or contract between the parties, or (2) in accordance with other rules and procedures as the parties may designate by mutual agreement. In the event of a conflict, the provisions of this document and the CPR Arbitration Rules will control.

The arbitration will be conducted before a panel of three arbitrators, two of whom may be designated by the parties using either the CPR Panels of Distinguished Neutrals or the Arbitration Rosters maintained by any JAMS Office in the United States. If the parties are unable to agree on the composition of the arbitration panel, the parties shall follow the screened

11

Oct-12-05   03:39pm   From-KPMG LLP - NDPPS                       313 983 0500                T-329   P.015/015   F-403



selection process provided in Section B, Rules 5, 6, 7, and 8 of the CPR Arbitration Rules. Any issue concerning the extent to which any dispute is subject to arbitration, or any dispute concerning the applicability, interpretation, or enforceability of these procedures, including any contention that all or part of these procedures are invalid or unenforceable, shall be governed by the Federal Arbitration Act and resolved by the arbitrators. No potential arbitrator shall be appointed unless he or she has agreed in writing to abide and be bound by these procedures.

The arbitration panel shall issue its final award in writing. The panel shall have no power to award non-monetary or equitable relief of any sort. Damages that are inconsistent with any applicable agreement between the parties, that are punitive in nature, or that are not measured by the prevailing party's actual damages, shall be unavailable in arbitration or any other forum. In no event, even if any other portion of these provisions is held to be invalid or unenforceable, shall the arbitration panel have power to make an award or impose a remedy that could not be made or imposed by a court deciding the matter in the same jurisdiction.

Discovery shall be permitted in connection with the arbitration only to the extent, if any, expressly authorized by the arbitration panel upon a showing of substantial need by the party seeking discovery.

All aspects of the arbitration shall be treated as confidential. The parties and the arbitration panel may disclose the existence, content or results of the arbitration only as provided in the CPR Arbitration Rules. Before making any such disclosure, a party shall give written notice to all other parties and shall afford such parties a reasonable opportunity to protect their interests.

The award reached as a result of the arbitration will be binding on the parties, and confirmation of the arbitration award may be sought in any court having jurisdiction.

Oct-12-05  03:51pm  From-KPMG LLP - NDPPS          313 983 0500         T-329  P.002/002  F-404

**KPMG**

KPMG LLP
Suite 1200
150 West Jefferson
Detroit, MI 48226-4429

Telephone  313 983 0200
Fax        313 983 0006
           313 983 0007
           373 983 0008
Internet   www.us.kpmg.com

*Handwritten: Billing 6006286 Delphi 2005 Fed Tax File*

May 23, 2005

Mr. James P. Whitson
Chief Tax Officer
Delphi Corporation
M/C 480.400.626
5725 Delphi Drive
Troy, MI 48098-2815

Dear Mr. Whitson:

This document will serve as an addendum to our previous engagement letter for tax consulting services dated March 1, 2005, and signed by you on April 14, 2005 ("Agreement"). The modifications are set forth below:

(1) The term of the Agreement will last only until December 31, 2005, assuming there are no Services in progress at that time. Paragraph 19 of the Agreement is so modified.

(2) The Fees for the Services contemplated under the Agreement will not exceed $25,000 for any particular tax matter. In such cases where Fees for a particular tax matter are reasonably expected to exceed $25,000, a separate engagement letter will be negotiated.

(3) Paragraph 10 regarding Limitation of Liability will be modified such that the first part thereof will read:

Consultant's liability under this Agreement will be limited to $500,000;

The remainder of Paragraph 10 will stay as is.

Please sign the enclosed copy of this addendum and return it to us.

If you have any questions, please call.

Very truly yours,

KPMG LLP

*[signature]*

Patrick N. Karpen
Partner

ACCEPTED

Delphi Corporation

*[signature]*
Authorized Signature
JAMES P. WHITSON
Title: CHIEF TAX OFFICER

24 MAY 2005
Date

KPMG LLP, a U.S. limited liability partnership, is the U.S. member firm of KPMG International, a Swiss cooperative.

MAY 23 '05 17:05                                      PAGE.02
                                                 ** TOTAL PAGE.02 **