Hearing Date and Time: May 9, 2006, 10:00 am

Barbara Mehlsack (BM 1390)
GORLICK, KRAVITZ & LISTHAUS, P.C.
17 State Street, 4th Floor
New York, New York 10004
(212) 269-2500
bmehlsack@gkllaw.com

Richard Griffin, General Counsel
INTERNATIONAL UNION OF OPERATING ENGINEERS
1125 17th Street, NW
Washington, DC 20036
(202) 778-2675
rgriffin@iuoe.org

Attorneys for International Union of Operating Engineers
Local Union Nos. 18 and 832

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---

In re : Chapter 11

DELPHI CORPORATION, et al., : Case No.05-44481 (RDD)

Debtors. : (Jointly Administered)

---

DECLARATION OF CHARLES SCHERER
IN SUPPORT OF IUOE LOCAL UNION NOS. 18 AND 832 OPPOSITION
TO DELPHI'S MOTION FOR AUTHORITY TO REJECT
COLLECTIVE BARGAINING AGREEMENTS

I, Charles Scherer, declare and state as follows:

1. I am currently a Business Agent for International Union of Operating Engineers

("IUOE") Local Union No. 18 ("Local 18"). I have held this position for 25 years. Local 18 has

over 15,000 members and geographical jurisdiction in the State of Ohio, with its headquarters in Cleveland, Ohio.

2. In 1995, IUOE Local Union No. 589 merged into Local 18 and became Local 18 S, a branch of Local 18. Since the time of the merger, I have represented a number of Local 18 S bargaining units. These include three units—Powerhouse (5 employees), Maintenance (50 employees), and Production (240 employees)—at Ralston Foods in Lancaster, Ohio; a 46-employee unit at Ford Motor Company in Brook Park, Ohio where the employees operate and maintain the powerhouse and heating, ventilation, and air conditioning ("HVAC") units; two divisions of the Ohio American Water Company—the Franklin Division (13 employees operating and maintaining water treatment and waste water treatment facilities) and the Tiffin Division (13 employees operating water treatment facilities).

3. Another Local 18 S bargaining unit I represent consists of the powerhouse operators at the Delphi Thermal and Interior facility in Columbus, Ohio ("Delphi Columbus bargaining unit"). This facility produces automobile locking mechanisms. Local 18 S represents thirteen employees at this facility. The thirteen employees work in the facility's powerhouse and operate and maintain the boilers and HVAC systems. Certain relevant pages of the collective bargaining agreement between Delphi Corporation Columbus Operations and Local 18 S (the "Delphi-Local 18 S agreement") are attached as Exhibit E to the Declaration Of Darrell Kidd In Support Of Delphi's Motion For Authority To Reject Collective Bargaining Agreements Under 11 U.S.C. § 1113(c) And Modify Retiree Welfare Benefits Under 11 U.S.C. § 1114(g) (the "Kidd Declaration"). The Delphi-Local 18 S agreement is scheduled to expire on September 30, 2007.

4. In my capacity as Business Agent for Local 18 S I have been and continue to be responsible for collective bargaining on behalf of all of the bargaining units represented by Local

2

18 S including the Delphi Columbus bargaining unit. I make this declaration in support of the objections of IUOE Local 18 S to Delphi's Motion for Authority to Reject Collective Bargaining Agreements under 11 U.S. C § 1113 ( c ) and Motion to Modify Retiree Welfare Benefits under 11 U.S.C.§ 1114(g). Except as otherwise stated here, all of the facts I set forth in this declaration are based upon my personal knowledge and my experience as a union leader and negotiator or from information obtained in the course of the performance of my duties. If called upon to testify I could and would testify to the facts set forth here.

5.. I understand that Delphi has filed a bankruptcy petition and is engaged in a process by which it intends to close or sell a number of its current facilities. I have been advised by Delphi representatives that Delphi intends to try to close or sell the Columbus facility at which the Local 18 S-represented employees work. I also understand that Delphi is currently seeking authority from the bankruptcy court to reject its collective bargaining agreements with a number of different unions and that the Delphi-Local 18 S agreement is one of the agreements Delphi is trying to rid itself of.

6.. This spring, I was advised by Robert Gerling, a Delphi labor relations representative, that Delphi was putting together early retirement incentive packages for the employees represented by Delphi's various different unions. I scheduled a meeting with Mr. Gerling for March 31, 2006 in the Toledo, Ohio area, the purpose of which was for Mr. Gerling to present to me the retirement incentive package to be offered to the Local 18 S-represented employees at the Columbus facility. I had explained to Mr. Gerling that I preferred to conduct the actual collective bargaining negotiations on-site at the Columbus facility, as that would allow the bargaining unit's chief steward Roger Struckman and Delphi employee Bill Johnson to participate in the negotiations and ask any questions directly of him. Mr. Gerling had agreed to

3

conduct any such negotiations on-site. On the scheduled day of the meeting, Mr. Gerling called to advise me that, because of the filing Delphi would be making that day in the bankruptcy court, he would have to cancel the meeting, but that he would get back to me once the Local 18 S retirement incentive packages had been cleared by Delphi's lawyers. As of today (April 19, 2006) I have not heard back from Mr. Gerling.

7. Delphi has not informed Local 18 S how specifically the cost structure and operations provisions of the Delphi-Local 18 S collective bargaining agreement covering thirteen employees who work in the powerhouse at the Columbus facility are an impediment to Delphi's competitive position.

8. Last week I was advised by members of the Local 18 S bargaining unit that Mr. Gerling was on-site at the Columbus facility to present the United Auto Workers ("UAW")(who represent the vast majority of the Columbus' facilities employees) with the details of the Human Capital Attrition Program negotiated between the UAW, General Motors, and Delphi that provides early retirement incentives for UAW-represented Delphi employees, as well as certain opportunities to return to work for General Motors under certain circumstances. Several of these Local 18 S members managed to obtain the details of the UAW-GM-Delphi program and called me to ask whether a similar program would be presented to the Local 18 S-represented employees. This Monday (April 17, 2006), I called Mr. Gerling and left him a voice mail indicating that some of the Local 18 S-represented employees had become aware of the details of the UAW-GM-Delphi program and wanted to know whether they would be offered a similar package. I asked him to call me back. I have not yet heard from Mr. Gerling.

9. Since Local 18 S has yet to receive, review and analyze the promised early retirement package, any attempt to engage in collective bargaining negotiations with Delphi concerning the

4

Local 18 S Columbus facility bargaining unit is like trying to hit a moving target. Without knowing the terms of the package it is difficult to know how many employees will accept the package and leave employment with Delphi; without knowing how many employees will leave and whether Delphi intends to replace them it is difficult to judge Delphi's potential savings pursuant to attrition. Furthermore, Local 18 S cannot respond with respect to proposed modifications of retiree welfare benefits absent an understanding of the nature and effect of the promised early retirement package.

10. In addition, the current Delphi-Local 18 S agreement contains an Article 16, found at pages 12-13 of Exhibit E of the Kidd Declaration, which provides that new employees hired after the agreement's effective date (October 1, 2003) "shall be hired at a rate equal to seventy percent (70) percent of the maximum based rate of the job classification." The percent of the maximum base rate for such employees progresses to 75% after 26 weeks, 80% after 52 weeks, and 85% after 78 weeks. Thus, even if Delphi was to replace some or all Local 18 S employees who took an early retirement package with new employees covered by the above-quoted provisions, Delphi would be able to realize substantial savings in the Local 18 S-represented unit pursuant to the explicit terms of the current collective bargaining agreement (due to expire within 18 months). Without knowing the amount of savings Delphi will realize pursuant to the combination of the early retirement incentive package and Article 16 of the current agreement, it is premature to formulate an economic counteroffer to the substantial wage and benefit concessions currently being sought by Delphi.

11. In this regard, it is my understanding that if the retirement incentive package offered to the Local 18 S-represented employees has the same terms and conditions as that offered to the UAW-represented employees, six or seven of the thirteen employees represented by Local 18 S

would be eligible to take the early retirement package. Upon information and belief, it is likely that, if offered this package, at least three employees (i.e., 23% of the current unit) will take it and leave employment with Delphi.

12. I declare under penalty of perjury, and pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information and belief. Executed this 19th day of April, 2006.

                                            /s/   Charles Scherer
                                            CHARLES SCHERER