# Exhibit B

5_20_2005 United Hearing Transcript.txt

```
0001
 1            IN THE UNITED STATES BANKRUPTCY COURT
              FOR THE NORTHERN DISTRICT OF ILLINOIS
 2                       EASTERN DIVISION
 3
 4     In re:                    )
                                 ) No. 02 B 48191
 5     UAL CORPORATION, et al.,  )
                                 ) Chicago, Illinois
 6                               ) May 20, 2005
                       Debtors.  ) 9:30 a.m.
 7
 8            TRANSCRIPT OF PROCEEDINGS BEFORE THE
                 HONORABLE EUGENE R. WEDOFF
 9
10     APPEARANCES:
11     MR. JAMES SPRAYREGEN
       MS. LESLIE BAYLES
12     MR. TODD GALE
       MR. DAVID SELIGMAN
13     MR. ERIC CHALUT
       MR. JEFFREY GETTLEMAN
14     MR. ALEX DIMITRIEF
       on behalf of the debtors;
15
       MR. STEPHEN WOLFE
16     on behalf of the United States Trustee, Mr. Ira
       Bodenstein, as a member of the fee review committee;
17
       MR. FRANK CITERA
18     MR. MATT GENSBURG
       on behalf of the city of Chicago;
19
       MR. JOHN MENKE
20     on behalf of the PBGC;
21     MS. BABETTE CECCOTTI
       on behalf of the Air Line Pilots Association;
22
       MR. JACK CARRIGLIO
23     on behalf of the retired pilots;
24     MR. RONALD R. PETERSON
       on behalf of the KBC Bank;
25
0002
 1     MR. WILLIAM BARRETT
       on behalf of Environmental Resource Management;
 2
       MR. DON MACHALINSKI
 3     on behalf of USAIG;
 4     MR. HILLARD STERLING
       on behalf of OurHouse;
 5
       MR. KURT CARLSON
 6     on behalf of Ace Hardware;
 7     MR. ANDREW ROSENMAN
       on behalf of UAL Loyalty Services;
 8
       MR. PAUL SLATER
 9     on behalf of the creditors committee;
10     MS. SHARON LEVIN
       on behalf of the IAM;
11
       MR. JAMES SPIOTTO
12     on behalf of the Bank of New York and Wells Fargo as
```

5_20_2005 United Hearing Transcript.txt
12    emerge and stay out of bankruptcy as a viable and
13    competitive enterprise.
14            THE COURT:  Okay.  Well, that goes to the
15    merits of the motion.  The other point that's raised
16    by IAM is the question of the relief that would be
17    accorded in the event that the motion is granted.
18    IAM has made the point that the statute does not
19    appear on its face to allow the court to enter an
20    order authorizing but not actually implementing the
21    rejection of a collective bargaining agreement.  And
22    I need to hear your response to that point as well.
23            MR. DIMITRIEF:  Your Honor, the court in
24    the U.S. Airways bankruptcy in granting the motion
25    for rejection also granted authority to reject.
0099
1             THE COURT:  Was the matter argued in that
2     court?
3             MR. DIMITRIEF:  Your Honor, I'm not sure
4     that it was.  I just know what the order says.
5             THE COURT:  Okay.  Well, if all that Judge
6     Mitchell did was enter an agreed order or enter an
7     order, the form of which was not opposed, having made
8     the findings that he made, I don't think that that
9     would stand as precedent for appropriate
10    interpretation of 1113.
11            MR. DIMITRIEF:  But as I understand it,
12    Your Honor -- and not having been counsel there, I am
13    just piecing it together from the record as best as I
14    can.  As I understand what happened in the U.S.
15    Airways case, there was an offer that was going out
16    for a vote, and the authority to reject was granted
17    pending the completion of that ratification vote.
18    And so it was the same sort of --
19            THE COURT:  Okay.  The point I'm trying to
20    make is we're dealing here with a question of
21    statutory construction.  Does Section 1113 by its
22    terms permit a court to enter an order that merely
23    authorizes a rejection by the debtor as opposed to
24    finding that a collective bargaining agreement is
25    rejected.  And if that point was not argued before
0100
1     Judge Mitchell, the order that he entered would not
2     be of any persuasive authority as to how 1113 ought
3     to be interpreted.
4             Now, I look at 1113 and it says that
5     rejection can only be accomplished according to the
6     terms of 1113, and that's in 1113(a).  And then I see
7     that in 1113(b) through (d) there is discussion only
8     of an application for rejection, not for authority to
9     reject.  So if there is going to be statutory
10    authorization, I think it's going to have to be
11    something that apparently is not on the face of 1113.
12    And if that's not correct, I would like to know what
13    your argument is to the contrary.
14            MR. DIMITRIEF:  Well, Your Honor, I think
15    that our argument is that under -- that 1113(c)
16    doesn't foreclose this court from granting authority
17    to reject under specified terms, such as a certain
18    time period after the court's ruling.  What I would
19    suggest, Your Honor, is that consistent with the
20    overall structure that Your Honor has imparted to
21    1113(c), and how 1113(c) is designed to motivate
22    parties to settle, that a sensible construction of
23    1113(c) is to say that the court can enter a ruling

Page 41

5_20_2005 United Hearing Transcript.txt

24  and, in effect, give the parties one last chance, in
25  view of the court's ruling, to reach a consensual
0101
1   agreement or compromise before that ruling takes
2   effect.  And, Your Honor, that's all we're asking for
3   here.  We aren't asking for an unlimited right to
4   just put this in our hip pocket and carry it around
5   for the next couple of months.
6               Just to clarify our request, all we
7   are asking is that the court grant our request for
8   relief, but not grant it in a way that it immediately
9   becomes effective, but gives the debtors and the IAM
10  a final opportunity in light of that order to reach a
11  consensual agreement.
12              THE COURT:  Okay.  The statute requires
13  that any ruling on the application be made within 30
14  days of the commencement of the hearing.  That would
15  be June 10.  If you're suggesting that I could issue
16  a ruling that wouldn't be effective until after
17  June 10, I think that could reasonably be seen as
18  contradicting the statute.
19              MR. DIMITRIEF:  That's not at all what
20  we're asking for, Your Honor.  And, in fact, that
21  illustrates what we're not asking for.  We aren't
22  asking for something until June 10th.  At a minimum,
23  Your Honor, in terms of outside parameters, May 31st
24  would be what we would request because that's when
25  the 1113(e) relief runs out.
0102
1               But, Your Honor, we don't intend to
2   wait until then either.  I mean, what we would really
3   like is after we get guidance from the court is to
4   sit down and take one last chance at trying to
5   resolve this consensually.  And we're prepared to do
6   that the very hour after Your Honor rules.  So we're
7   not asking for an indefinite delay.  We're not
8   saying, okay, give us the right to reject and then
9   let us use that as negotiating leverage for the next
10  month.  We're talking about asking Your Honor to set
11  the stage for a final push towards a consensual
12  resolution.  And we're willing to accept whatever
13  time parameters Your Honor would put on that to allow
14  the parties to do that final push, something along
15  the lines of what was entered in the U.S. Airways
16  case.
17              THE COURT:  Okay.  Thank you, Mr.
18  Dimitrief.
19              MR. DIMITRIEF:  Thank you, Your Honor.
20              THE COURT:  Go ahead, Ms. Levine.
21              MS. LEVINE:  Thank you, Your Honor.  Your
22  Honor, very briefly, Your Honor has obviously sat
23  through substantial testimony and you heard the oral
24  argument at the opening, so just by way of summing up
25  briefly.
0103
1               THE COURT:  There wasn't supposed to be an
2   argument at the opening, but it may very well have
3   been.
4               MS. LEVINE:  The oral argument presented as
5   part of the opening statements.  I didn't mean today,
6   I meant at the opening of the trial.
7               THE COURT:  No, no, no.  I'm just
8   reflecting the usual trial practice admonition that
9   an opening statement ought not to be an argument.

Page 42

5_20_2005 United Hearing Transcript.txt
16   leave open right now, unless you've got authority
17   that you want to address to that issue.
18              MS. LEVINE:  Well, it's only that the
19   debtors -- the fifth element under 1113(c) as
20   developed by the case law is that the debtors must
21   provide the union with relevant information as is
22   necessary to evaluate the Section 1113(c) proposal.
23   And that's been interpreted to include all kinds of
24   financial disclosures, as well as business model
25   disclosures, as well as the types of information that
0121
1    companies rarely distribute to anybody other than
2    perhaps their lenders.
3              THE COURT:  Okay.
4              MS. LEVINE:  All right.  So this type of
5    information is the very type of information on a
6    critical point.  It's even more relevant than some of
7    the other information that we got from the debtor in
8    the cartons and cartons of documents that were
9    provided to us because this type of information
10   absolutely prevented us from addressing what the
11   debtor and the PBGC were articulating as their very
12   concerns over the problem we were trying to solve.
13             THE COURT:  All right.
14             MS. LEVINE:  Your Honor, one last point.  I
15   would like to note that the company has also implied
16   that the IAM perhaps is not negotiating in good faith
17   and that that somehow impacts the company's
18   obligation to negotiate in good faith.
19             THE COURT:  I don't recall hearing that
20   argument made.
21             MS. LEVINE:  I just want to address the
22   fact that the IAM during the course of these
23   negotiations has been trying to reach a tentative
24   agreement with the company, but, in addition to that,
25   has offered at various points in time to take out the
0122
1    current proposal that the company has had on the
2    table for ratification vote.  And the company -- and,
3    in fact, as I stand here today, it would take out the
4    company's proposal for a ratification vote.
5              THE COURT:  But without a recommendation.
6              MS. LEVINE:  But without a recommendation.
7    And the company, Your Honor, has declined despite the
8    fact that the company says that it has made the
9    argument that this actually --
10             THE COURT:  Okay.  You know, I really don't
11   want to get into what the back and forth is in the
12   negotiations right now.  And, again, I did not
13   understand United to be arguing that IAM has been
14   negotiating in bad faith.
15             MS. LEVINE:  Your Honor, as a last point, I
16   just would like to address the issue of what this
17   statute authorizes in terms of an actual ruling.
18             THE COURT:  You don't need to.  I agree
19   with you.
20             MS. LEVINE:  Thank you, Your Honor.
21             MR. DIMITRIEF:  Your Honor, I think your
22   last comment just shortened my rebuttal a little bit.
23             THE COURT:  Well, just to make it clear,
24   Mr. Dimitrief, I believe that the only order that
25   1113 allows the court to enter in this connection is
0123
1    an order granting an application for rejection of a
                          Page 50

5_20_2005 United Hearing Transcript.txt

2  collective bargaining agreement.  Now, it may be
3  possible to delay the effective date of that order,
4  but I don't believe it would be possible to delay the
5  effective date of that order beyond the 30-day period
6  from the commencement of the hearing on rejection.
7           MR. DIMITRIEF:  I understand that, sir.
8  And I guess what I would say is that what we intended
9  to do was make our application one that would give us
10  the authority to reject, and I'll reiterate to the
11  court today, within a reasonable period of time after
12  a ruling.
13          THE COURT:  Okay.  Well, I just don't agree
14  that that's a potential outcome under 1113.
15          MR. DIMITRIEF:  And I guess that what's
16  important for us for the court to understand is that
17  we ask for this not as negotiating leverage, but as
18  one final opportunity before the order becomes
19  effective to try to reach a consensual resolution,
20  that's all.
21          THE COURT:  Well, I think one of the
22  important limitations of 1113 is that a debtor in
23  seeking rejection of a collective bargaining
24  agreement has to be willing to live with the
25  consequences of a rejection if that rejection is
0124
1  ordered.  And so if the debtor is not certain about
2  whether it really wants to have the collective
3  bargaining agreement rejected, it ought not to make
4  the application.  And so merely giving the debtor an
5  option of rejecting or not rejecting does not exist
6  under 1113 as I read it.
7           MR. DIMITRIEF:  Well, Your Honor, I
8  apologize for belaboring the point.  But remember
9  that we've said all along that we would prefer a
10  consensual agreement.  So moving for rejection
11  doesn't mean that the defendant wants rejection.
12  It's that the -- that the debtor will --
13          THE COURT:  Will take --
14          MR. DIMITRIEF:  -- utilize --
15          THE COURT:  -- rejection in the event that
16  a consensual agreement is not able to be reached
17  prior to the time that an order goes into effect.
18          MR. DIMITRIEF:  Exactly.
19          THE COURT:  Okay.  And then we don't
20  disagree because I think that's what the consequence
21  of 1113 is.  Certainly up until the time the order
22  goes into effect, there is the potential for entering
23  into a consensual arrangement that will make the
24  matter moot.  But once the order goes into effect,
25  then there is rejection of the agreement, not an
0125
1  option to reject or not reject.
2           MR. DIMITRIEF:  Once the order goes into
3  effect --
4           THE COURT:  Yes.
5           MR. DIMITRIEF:  -- pursuant to its terms.
6  And we would just ask the court to take that into
7  account as we address whatever form of order is going
8  to be entered based on what the court does, that's
9  all.
10          THE COURT:  Okay.
11          MR. DIMITRIEF:  Two points, Your Honor.
12  First, I think I have a question -- or an answer to
13  the question that you asked, and it's based on the

Page 51