# EXHIBIT B

# COHEN, WEISS AND SIMON LLP
## COUNSELLORS AT LAW

SAMUEL J. COHEN (1908-1991)
HENRY WEISS (1910-2004)

BRUCE H. SIMON
ROBERT S. SAVELSON
STEPHEN B. MOLDOF
MICHAEL E. ABRAM
KEITH E. SECULAR
PETER HERMAN
RICHARD M. SELTZER
JAMES L. LINSEY*
JANI K. RACHELSON
BABETTE CECCOTTI*
SUSAN DAVIS*
MICHAEL L. WINSTON
THOMAS N. CIANTRA
JOSEPH J. VITALE*
PETER D. DECHIARA
LISA M. GOMEZ*
BRUCE S. LEVINE
JAMES R. GRISI*
ELIZABETH O'LEARY

330 WEST 42ND STREET
NEW YORK, N.Y. 10036-6976

(212) 563-4100
TELECOPIER (212) 695-5436

WRITER'S DIRECT DIAL
212-356-0231

COUNSEL
STANLEY M. BERMAN
MANLIO DIPRETA

EYAD ASAD
ROBIN H. GISE
TRAVIS M. MASTRODDI
ORIANA VIGLIOTTI
DAVID R. HOCK*
AVI BERNSTEIN*
ZACHARY N. LEEDS
MOLLY BROOKS
SUZANNE E. D'AMATO**

NEW JERSEY OFFICE
206 CLAREMONT AVENUE
MONTCLAIR, N.J. 07042
(973) 509-0011
* ALSO ADMITTED IN NJ
** ADMITTED IN CT ONLY

April 14, 2006

<u>Via Federal Express</u>
Mr. Kevin M. Butler
Vice President
Human Resource Management
Delphi Corporation
5725 Delphi Drive mc: 483-400-606
Troy, MI 48098

Re:   <u>Information Regarding Proposed Modification to UAW-Delphi Agreements</u>

Dear Mr. Butler:

Richard Shoemaker has forwarded to us a copy of your March 28, 2006 letter and has asked us to respond to those portions of the letter describing the information provided to the UAW and its financial advisors.

Please be advised that UAW does not agree with your assertion that "Delphi has provided, directly or through information provided in the presentations and meetings or in the litigation process, all of the available, relevant information that the UAW and its financial advisors have sought to date..."

Furthermore, since your letter appears intended to be an exhibit in a Section 1113/1114 filing, let me add that UAW does not believe that Delphi has provided the UAW and its financial advisors with such relevant information as is necessary to evaluate the Section 1113 and Section 1114 proposals".

As you know, Lazard Freres & Co., LLC has been engaged by the UAW to, among other things, independently review and analyze the business, operations, financial condition and prospects of Delphi, and projections related thereto.

COHEN, WEISS AND SIMON LLP

Kevin M. Butler
April 14, 2006
Page 2

In an effort to properly inform the UAW relative to Delphi, Lazard pursued its due diligence by requesting information in three primary subject areas: (i) background and overview of Delphi's business, operations, and manufacturing footprint, (ii) review of basic labor and benefit related information including staffing levels and "penny sheet" costing information, and iii) review of current and projected financial information including business plans such as the "Steady State" and "Transformation" plans presented by Delphi.

Lazard pursued its due diligence by providing Delphi and its advisors written information request lists organized by category and prioritized by relative importance. Lazard twice narrowed and prioritized its due diligence request list in an effort to better focus the Debtors on the most important items. Lazard also developed follow-up question lists in response to incomplete or inadequate materials provided in response to specific requests. Lazard also frequently followed-up with Delphi or its advisors to check on outstanding and often dated requests.

Despite all of Lazard's efforts, Delphi has not afforded Lazard the required access or information to enable it to properly conduct due diligence and fully assist the UAW in evaluating Delphi's financial and strategic situation. Delphi has subjected each and every request to layers of review and approvals. The information provided to Delphi has been in summary format without explanation. This has prompted further questions and follow-ups. Arbitrary rules have been established restricting access to information. Boxes of "data" as distinguished from relevant information have been provided in a transparent attempt to create an evidentiary track record of compliance with the standards of 1113/1114. This has resulted in a disjointed, unorganized, and uninformative due diligence process. Delphi has made this dysfunctional due diligence process even more challenging by making frequent adjustments to its financial plans and being unwilling to provide the calculations and exhibits supporting its proposed complex labor modifications. As a result of this dynamic, just as Lazard finally receives overdue information to begin to understand the then current business plan or transformation overlay, Delphi releases a new plan with equally limited supporting information, thereby compelling Lazard to restart its due diligence leading to a prolonged and inefficient process.

The most recent labor modification proposal dated March 24, 2006 presents yet another example of Delphi's flawed approach to due diligence. Delphi states in its letter outlining that proposal that it "will also be providing under separate cover a financial analysis of the current proposals and other information relevant to your consideration of these proposals." Delphi's letter ignores that Lazard has been waiting for nearly a month for supporting information and schedules underlying Delphi's *last* proposed transformation plan. After waiting for information sufficient to evaluate Delphi's financial condition and labor modification proposals for nearly 5 months, on the eve of the threatened filing of an 1113/1114 motion, Delphi provides to the UAW a new proposal. The accompanying financial information for this new proposal (which was just received) is comprised of a financial model without explanation or

COHEN, WEISS AND SIMON LLP

Kevin M. Butler
April 14, 2006
Page 3

assumptions. Finally, the latest financial model does not even factor in the impact of potential early retirements as a result of the recently announced attrition program - a critical component of any restructuring plan at Delphi.

    The following examples illustrate Delphi's fundamental failure to provide relevant and necessary information to UAW:

    1. Lazard submitted an initial due diligence request list to the Debtors on November 1, 2005. This list contained approximately 58 data requests. To accommodate the request of Delphi's advisors, Lazard twice revised its list, on November 2, 2005 and again on November 7, 2005, and ultimately narrowed the list to 22 prioritized items. By the end of 2005, the Debtors had responded to 7 of Lazard's 22 prioritized requests.

    2. On November 22, 2005, immediately following a labor-related presentation by the Debtors, Lazard delivered a brief due diligence list (consisting of 13 items) requesting backup information and raising questions stemming from the presentation. To date, more than half of the requests have been left unanswered.

    3. On February 8, 2006, Lazard provided Delphi with eight priority requests relating to certain high-level Modified Steady State Plan information presented to the Unsecured Creditors Committee on February 2, 2006. To date, Lazard has received a response to only three of these priority requests, two on March 14th/15th (five weeks later) and the other on March 24th (more than six weeks later).

    4. By letter dated February 23, 2006, Lazard submitted a list of seven priority items to Delphi's financial advisors regarding the last Steady State Plan; only one of these requests has been answered to date, and that response occurred on March 24th.

    5. Lazard received Delphi's Steady State Plan in mid-January 2006 but, for some unexplained reason, the materials were marked for "professional eyes only" and Lazard was not given permission by Delphi to share the data with the UAW until more than one month later. Moreover, while the Steady State Plan materials finally provided basic financial information -- income/balance sheet/cash flow statements and high-level financial information by business division -- the materials still lacked sufficient detail to adequately analyze Delphi's business. For example, the materials did not provide financial information at the plant-level or product-level, nor did the information give light to the different cost structures for U.S. and foreign operations. Having performed analysis on the Steady State Plan, it is Lazard's understanding that this plan will now be replaced by another steady state plan to be provided some time in April 2006.

COHEN, WEISS AND SIMON LLP

Kevin M. Butler
April 14, 2006
Page 4

### Summary of Data Requests Surrounding Labor Modifications Savings

The issue of labor modifications at Delphi is exceedingly complex and of utmost importance to the unions. Delphi's labor proposals impact tens of thousands of current and retired union employees, and consist of extraordinarily drastic wage cuts and changes concerning, among others, job security programs, work rules, benefit programs, retiree healthcare, and pension benefits. The modeling of the financial impact of Delphi's proposed labor modifications is equally complex and involves both GAAP and actuarial calculations. Yet, despite the inherent complexity and the detail necessary to properly analyze this issue, Delphi has repeatedly provided one or two-page high-level summaries of the potential impact of its proposed labor modifications on the Company's financial position.

For example, Delphi first provided a high-level, one-page summary of the potential impact of its proposed labor modifications on the Company's financial position (with no supporting documentation or context) on December 16, 2005. Lazard requested backup materials and calculations to such savings. To date, only one material request item has been provided, and that was only provided in late March 2006. Examples of requests include critical items such as the individual components of savings involved (reductions in wage/benefit/JOBSbank/headcount), pension and OPEB calculations, and a detailed headcount walk by relevant category (retirements/severance/attrition/flowback, etc.). In January 2006, more than one month after its initial request, Lazard again requested backup and, except for the item delivered in late March, Delphi has still failed to respond.

On February 2, 2006, in a presentation to the Unsecured Creditors Committee, Delphi presented another version of this high-level summary of potential labor savings, again with no further detail provided. As the labor savings in question were specific and exact amounts in the billions of dollars, the data clearly represented summary output from a financial model, suggesting that the requested backup materials existed yet were not made available to Lazard.

In short, with respect to labor cost modifications, Delphi has failed to provide sufficient information, and the information that has been provided has been, for the most part, untimely, insufficiently detailed, and has made it impossible for Lazard to assist the UAW in evaluating Delphi's proposals.

### Summary Process Surrounding Delphi's Transformation Plan

Finally, one of the critical components of Lazard's evaluation of Delphi's future viability is derived from the analysis of Delphi's Transformation Plan. The Transformation Plan, as characterized by Delphi, represents a restructuring plan designed to return Delphi to "market level" profitability and positive operating cash flow. The Transformation Plan is derived from the layering of six "transformation overlays" to its current Steady State (i.e. status quo) Plan.

COHEN, WEISS AND SIMON LLP

Kevin M. Butler
April 14, 2006
Page 5

Two of the transformation overlays consist of labor modifications and a portfolio sale/wind down of much of the Debtors' U.S. operations.

Since the first Transformation Plan was presented (and immediately discredited) in November 2005, Lazard has repeatedly inquired as to when the revised Transformation Plan would be available. Finally, on February 22, 2006, Rothschild suggested that a draft of the Transformation Plan and supporting materials were ready for review, conditioned on the execution of a letter agreement by UAW stating that such information would not be used against Delphi in the 1113/1114 context. Yet, despite stating that the letter was immediately available for execution, Delphi did not send it to UAW counsel for review and execution until March 8th.

On March 10th, Lazard finally received initial data on the February 2, 2006 Transformation Plan; however, such data was limited to four financial output pages. Delphi stated that more detailed information was still being prepared (e.g. labor costing), and asked Lazard to submit a prioritized request list. A list of nine items was provided to the Debtors' advisors on the same day, March 10th. While limited information began to trickle in six days later, the more critical information such as labor costing and headcount walk was not made available until March 24th. To date, the limited nine-item request list, including several follow-on Lazard questions stemming from the limited responses provided by the Debtor, has not been adequately fulfilled. Now, the February 2006 Transformation Plan has been replaced by the labor proposal delivered on March 24, 2006.

Based on the foregoing, UAW believes that Delphi's filing of the Section 1113/1114 proceeding is inappropriate and will impede future progress in the complex negotiations necessary to resolve the difficult issues confronting all parties. Delphi's failure to provide the statutorily required relevant information is only one manifestation of Delphi's process failure.

Sincerely,

Bruce H. Simon

BHS: sjh

cc:    John W. Butler, Jr.