# Exhibit C



# O'MELVENY & MYERS LLP

| | | |
|---|---|---|
| BEIJING | 1625 Eye Street, NW | NEWPORT BEACH |
| BRUSSELS | Washington, D.C. 20006-4001 | NEW YORK |
| CENTURY CITY | TELEPHONE (202) 383-5300 | SAN FRANCISCO |
| HONG KONG | FACSIMILE (202) 383-5414 | SHANGHAI |
| LONDON | www.omm.com | SILICON VALLEY |
| LOS ANGELES | | TOKYO |

OUR FILE NUMBER
207,998-001

April 14, 2006

WRITER'S DIRECT DIAL
(202) 383-5233

Bruce H. Simon, Esq.
Cohen, Weiss and Simon LLP
330 West 42nd Street
New York, NY 10036-6976

WRITER'S E-MAIL ADDRESS
tjerman@omm.com

Re: *Information Provided Regarding Section 1113/1114 Proposals*

Dear Mr. Simon:

     Kevin Butler has asked that I respond on behalf of Delphi Corporation ("Delphi") to your March 30, 2006 letter regarding information provided by Delphi to Lazard Frères & Co. LLC ("Lazard"), financial advisor to the United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"). We request that all future correspondence involving Delphi's Section 1113/1114 Motion be addressed directly to me, as counsel of record in this matter. I apologize for the time it has taken me to get back to you but I wanted to make sure we provided a thorough response.

     As set forth below, Delphi disagrees with your characterization both of the legal requirements under Section 1113 of the Bankruptcy Code, and of the scope and quality of information that Delphi has provided to Lazard and the UAW. At the outset, however, we want to emphasize that our disagreement on these matters should in no way be construed as a reluctance on the part of Delphi to provide Lazard and the UAW with all of the information they believe is necessary to evaluate Delphi's proposals. To the contrary, Delphi agreed last year to reimburse your client's fees to Lazard to help ensure that the UAW had all of the resources required to analyze the voluminous information that has been provided to the UAW and its financial and legal advisors over the last nine months. If Delphi's goal had been to impede UAW's access to information, it would not have agreed to do this.

     We also want to assure you that this type of legal sparring, while perhaps an inevitable part of litigation, will not prevent Delphi from devoting its full efforts to the substantive negotiations designed to reach an amicable and prompt resolution of the labor contract modifications necessary for Delphi to restructure. We understand that letters like this are crafted by careful lawyers such as yourself to create a record for arguments they may want to make in any bankruptcy court proceedings. While we both must protect our clients' interests, Delphi's hope is that a negotiated agreement can be reached and that a hearing can be avoided.

O'MELVENY & MYERS LLP

Bruce H. Simon, Esq., April 14, 2006 - Page 2

With this introduction, we disagree with the assertions set forth in your letter in two basic respects. First, as a legal matter, we fundamentally disagree with the premise that Delphi is obligated under Section 1113 to provide Lazard with the type of "due diligence" that sophisticated investment bankers like Lazard conduct to evaluate corporate transactions. While we are happy to do whatever is necessary to assist the UAW in evaluating Delphi's proposals, Section 1113 requires only that the debtor provide "the representative of the employees" with "such relevant information as is necessary to evaluate the proposal." 11 U.S.C. § 1113(b)(1)(B). This obligation assumes that (1) the representative is already aware of the debtors' business operations, including the terms of the collective bargaining agreements and employee benefits then in effect, and (2) the information can be provided and evaluated within the very short time period anticipated under Section 1113 (e.g., that a hearing must begin within 14 days after the motion is filed).

In recognition of the statutory scheme -- and the potential for mischief if a union were able to avoid the merits by interposing time-consuming, burdensome information requests -- the courts have construed the obligations under Section 1113 quite narrowly. E.g., In re Appletree Mkts. Inc., 155 B.R. 431, 437-38 (S.D. Tex. 1993) (obligation met when debtor provided union with access to financial books and current financial statements); In re Valley Steel Prods. Co., 142 B.R. 337 (Bankr. E.D. Mo. 1992) (obligation met when debtor provided yearly operating statements and monthly bankruptcy operating report); In re Royal Composing Room, 62 B.R. 403, 412-13 (Bankr. S.D.N.Y. 1986) (a single sheet of paper which listed some of the employer's labor costs and included handwritten audited sales and loss figures was "reliable and relevant information and complete enough to form a basis for reasoned consideration of [the debtor's] proposal" and the "union must be assumed to understand the economics of its own collective bargaining agreement"). The courts have also held that the obligation to provide information under Section 1113 applies only to information upon which the debtor relies in support of its proposal -- not information that the union seeks to support another, alternative proposal. In re Ormet Corp., 316 B.R. 665, 670 (Bankr. S.D. Ohio 2004) (finding no obligation to produce information that was not needed to evaluate the Debtors' proposals, but instead was needed to prepare a counter-offer).

The obligations imposed by the courts and contemplated by the statute are vastly different than the "due diligence" that the UAW has asked Lazard to conduct in this matter. As your letter acknowledges, Lazard's assignment requires learning the "background and overview of Delphi's business, operations and manufacturing footprint," an understanding of "basic labor and benefits information," and "current and projected financial forecasts." Your client has been the collective bargaining representative of General Motors' and Delphi's employees for more than seven decades, and is intimately familiar with all aspects of Delphi's operations.

Based on the requests that Delphi has received from Lazard, which include such basic information as a description of the facilities in which UAW-represented employees work, the number of such employees, the products manufactured by these employees, and the benefit plans applicable to these employees, it does not appear that Lazard made any attempt to obtain information from the UAW before seeking that information from Delphi. Indeed, we would be

O'MELVENY & MYERS LLP

Bruce H. Simon, Esq., April 14, 2006 - Page 3

shocked if the UAW and its locals did not have at least three-quarters of the information requested by Lazard in their own files.

Moreover, these requests necessarily fall upon a small core of Delphi's finance and labor relations staff who are already occupied far more than full time with work on Delphi's restructuring efforts and labor negotiations. To repeat, Delphi has been and is more than happy to help bring Lazard up to speed. This effort, however, arises out of our desire to produce a consensual agreement and not any legal obligation imposed by Section 1113.

Second, as a factual matter, we disagree with your characterization of the information sharing that has occurred to date. Initially, the long litany of complaints in your letter makes it clear that, to paraphrase an old saying, Delphi has been "damned if it did, and damned if it didn't." When Delphi provides a summary of financial projections, you complain that the information was provided in "summary format." When Delphi provides a complete financial model, you complain that the model was provided "without explanation or assumptions." When Delphi did not provide the level of detail that Lazard wanted, you complain that Delphi was "unwilling to provide calculations and exhibits." When Delphi did provide the detail, you complain that it provided "boxes of data." When Delphi delayed providing preliminary projections pending further review, you complain that Delphi unnecessarily delayed production, or required "layers of review and approval." When Delphi provided preliminary information, you complain that there were "frequent adjustments to its financial plans."

More importantly, however, your letter does not accurately account for the information that Delphi has provided to Lazard and the UAW. Since negotiations began with the UAW on potential contract modifications last summer, Delphi methodically has logged all information requests it has received from its unions or their financial advisors, and the status of Delphi's responses to those requests. Furthermore, Lazard has periodically provided Delphi's financial advisers with status reports that showed Lazard's own view of what information it had been provided, and what information it still needed. The following is a summary of those documents.

- Appendix A is a list maintained by Delphi of all information requests it received from Lazard prior to the filing of Delphi's filing of the 1113/1114 motion. The list includes the nature of the request, the date Lazard made the request, whether the request has been fulfilled, by which internal Delphi department, and, in the few instances where a request has not been fulfilled, the reason therefore. As you can see, Delphi's records indicate that it has fulfilled nearly 90 percent of Lazard's 116 information requests received prior to the date of your letter. To the extent that Delphi has not responded, it is largely because the information requests called for (1) privileged information, (2) information Delphi did not maintain in the form sought, or (3) information that was not yet available, but which Delphi promised to provide when it became available.

- Appendix B is a list maintained by Delphi of all documents provided to Lazard in response to its information requests listed in Appendix A, including the date of the request, the date the responsive material was provided, the responsive document name, document id numbers, and the number of pages of each document. As you can

O'MELVENY & MYERS LLP

Bruce H. Simon, Esq., April 14, 2006 - Page 4

see, Delphi has provided Lazard with 2590 pages of documents -- not counting the voluminous information that Delphi has provided directly to all of its unions or to the UAW itself.

- Appendix C is a list maintained by Delphi's labor relations department of all questions or information requests it has received from the UAW or Lazard as of April 11, 2006. Some of these items overlap with those on Appendix A that were referred to labor relations for response. As you can see, Delphi's records indicate that labor relations has fulfilled all of the UAW's and Lazard's information requests.

- Appendix D is a summary of meetings and telephone calls that Delphi and its financial advisors have held with Lazard to explain the information provided and answer questions from Lazard. We submit that this information, which includes the date, attendees and subject matter of these meetings and calls in question, refutes the claim that Delphi has not attempted to explain the information it has provided to Lazard. We note further that Lazard is a highly sophisticated investment bank, and its follow-up questions show that it understands the models and data provided.

- Appendix E is a list of information that Delphi provided to all of its unions with its proposals, or to update such information previously provided, between October 2005 and the present.

- Appendix F is a list of two sets of materials posted on a "virtual data room" created by Delphi to allow easier access by its unions to significant amounts of information, including: (1) information that Delphi provided to other unions, or their financial advisors, and (2) Delphi labor agreements. For reasons that escape us, Lazard and the UAW have declined access to this web site.

As you can see, there has been an enormous amount of information provided to the UAW and Lazard. In Kevin Butler's March 24, 2006, letter to the UAW, he asked that the UAW notify him of the specifics of any information that the UAW or its financial advisors still believed was outstanding. While your letter purports to respond to Mr. Butler's request, it is long on general accusations, and short -- in fact, nonexistent -- on specific information requests. To the contrary, following receipt of your letter Delphi received 29 new information requests from Lazard that, as we understand it, are the only outstanding information requests from Lazard. Delphi has already responded to 14 of those requests, and is in the process of responding to the rest.

On behalf of Delphi, I want to reiterate that we intend to provide you with all of the information the UAW or Lazard believes it needs to evaluate Delphi's proposals, and ask that you identify specifically any information that remains outstanding. While a general attack on

O'MELVENY & MYERS LLP

Bruce H. Simon, Esq., April 14, 2006 - Page 5

Delphi's information sharing might be useful in litigation before the bankruptcy court, it does not help advance the goal of supplying the information the UAW and Lazard need to evaluate Delphi's proposals in an effort to reach a consensual agreement.

Sincerely,

Tom A. Jerman
of O'MELVENY & MYERS LLP

Enclosures