| | |
|---|---|
| Marianne Goldstein Robbins | Hearing Date and Time: May 9, 2006 at 10:00 a.m. |
| Jill M. Hartley (JH3652) | Objection Deadline: April 21, 2006 at 4:00 p.m. |
| Previant, Goldberg, Uelmen, | |
| Gratz, Miller, & Brueggeman, s.c. | |
| 1555 N. RiverCenter Drive - Suite 202 | |
| Milwaukee, WI 53212 | |
| Telephone:   (414)   271-4500 | |
| Facsimile:    (414)   271-6308 | |

Attorneys for IBEW Local 663 and
IAMAW District 10

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| | **Chapter 11** |
| **DELPHI CORPORATION, et al.,** | **Case No. 05-44481 (RDD)** |
| Debtors. | **(Jointly Administered)** |

**DECLARATION OF RANDAL A. MIDDLETON**

I, Randal A. Middleton, declare:

      1.     I submit this Declaration in support of IBEW Local 663 and IAMAW District 10's Objection to Debtors' Motion to Reject Collective Bargaining Agreements and to Modify Retiree Benefits.  I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would competently testify to all facts stated herein.

      2.     I am the President/Business Manager for IBEW Local 663 and have served  in this position for eleven years.

      3.     I am also a journeyman electrician and have been employed by Delphi since June 1, 1981.

      4.     IBEW Local 663 has two collective bargaining agreements with Delphi.  One covers journeyman electricians employed with the E & C division and the other covers journeyman electricians employed by the E & S division.

5. The E & S bargaining unit has 20 employees and the E & C bargaining unit has 40 employees.

6. The IBEW also has approximately 13 retirees whom it is representing in the context of the 1114 motion.

7. As President/Business Manager for Local 663 I am the chief spokesperson in negotiations for the two bargaining units and have been during my entire tenure in my office.

8. On October 24, 2005, while I was on vacation, I received a phone call from Dan Riley, Shop Chairman and the International Union indicating that the Company held a meeting with the bargaining committees for E & C and E & S and presented the Company's 1113/1114 proposals.

9. It is my understanding that the Company was represented by Rob Gerling and site wide labor relations representatives. Based upon information I learned from my committee members, the Company made it clear to the union that the meeting was not intended as negotiations; but rather, for informational purposes only.

10. Copies of the 1113/1114 proposals the Company presented to the Union during the October 24th meeting is attached hereto as Exhibit A.

11. Rob Gerling contacted me by telephone in November 2005, and asked to set up a meeting with me. He indicated that he had additional information to provide to the Union in connection with the 1113/1114 proposals.

12. I met with Rob Gerling in Detroit, Michigan on November 16, 2005, pursuant to his request.

13. During our meeting on the 16th, Gerling gave me the Company's revised 1113/1114 proposals and went over some highlights regarding the changes. Specifically, he discussed the changes to the health and welfare and wage proposals.

14. Gerling also told me at our November 16, 2005 meeting, that the Company did not have any plans to meet to negotiate with the IBEW at that time, and that the IBEW should not expect any meetings to bargain over the 1113/1114 proposals until the Company had a tentative agreement with the UAW. The meeting ended with Gerling advising me that he would be in touch regarding any possible negotiation dates.

15. It is my understanding that the Local's counsel in this matter sent a letter to the Company's attorneys on November 22. 2005, confirming Gerling's statement that the Company would not seek negotiations with the IBEW until a tentative agreement was reached with the larger unions like the UAW and IUE. A copy of that letter is attached hereto as Exhibit B.

16. I never received any contact from Gerling or anyone else within Company management regarding the November 22nd letter of counsel or with respect to bargaining dates over the Company's 1113/1114 proposals in 2005 and into early 2006.

17. Sometime in January 2006, I heard discussion in the shop indicating that the Company had extended the date for filing its 1113/1114 motion with the bankruptcy court and further, that the Company had withdrawn its November 1113/1114 proposals to the UAW to engage in more serious negotiations.

18. No one from Delphi management ever told me or any other IBEW representative that the Company had withdrawn its November 1113/1114 proposals to the IBEW. I learned this through the grapevine sometime in late January.

19. While the IBEW requested and received information from Charles McWee, Director of Industrial Relations, during January, February and March 2006, there was no bargaining, and no meaningful conversation regarding the Company's proposals during this time.

20. On March 22, 2006, Gerling sent me a copy of the Special Attrition Package the Company negotiated with the UAW. I received the document on Thursday, March 23, 2006.

21. In connection with the Attrition package, I had a telephone conversation with Gerling on March 22, 2006. During our phone call, he informed me that he was going to share a copy of the UAW special attrition package with me and that he hoped to have a similar proposal to share with the IBEW by Monday, March 27, 2006.

22. On March 28, 2006, I received copies of the Company's latest 1113/1114 proposals for the E & C and E & S divisions via FedEx. Copies of those proposals are attached hereto as Exhibit C.

23. On March 28, 2006, Gerling contacted me via telephone. He indicated that he wanted to address the UAW Special Attrition Package and answer any questions that we had regarding the program. In addition, he indicated that he also wanted to address us on the latest 1113/1114 proposal and answer any questions with regard to the proposal.

24. Pursuant to Gerling's request, on March 30, 2006, both IBEW shop committees, myself, the IAM committee and its business agent Don Grieffin, participated in a conference call with Gerling and Ed Kettle as well as the local Delphi Management.

25. During that conference call on March 30th, the Company presented a power point presentation explaining the three options available under the UAW special attrition package. Gerling indicated that it was the Company's intention to offer a substantially similar attrition package to the IAM and IBEW members.

26. The Company confirmed that the meeting was intended as a Q & A session and not a negotiation session over the 1113/1114 proposals.

27. I asked Gerling where and when the negotiations over the 1113/1114 proposals would take place and Gerling responded that he did not have a preference as to location and asked for the IBEW and IAM's availability for bargaining.

28. Both I and the IAM business agent Don Griffin advised Gerling that we were available for negotiations over the Company's proposal at any time from that day forward.

29. The Unions asked who would negotiate on the Company's behalf and Gerling responded that he would be involved as well as a financial person as well as legal counsel.

30. Gerling also made the statement that even if the Unions immediately accepted and signed the terms and conditions package that had been presented, the Company would probably not be able to accept it because they needed to reach agreement with the UAW and IUE first.

31. The Union asked a series of questions of the Gerling and the other Company representatives during the meeting.

32. Gerling did briefly address the terms and conditions of the Company's latest 1113/1114 proposal. He prefaced his comments regarding the proposal by advising the Unions that the proposals were contingent upon GM providing the commitments necessary to finance the proposals.

33. Although we offered to make ourselves available for bargaining at any time, Gerling did not set a date for negotiations; rather, he simply told us that he would get back to us regarding bargaining.

34. In the March 30, 2006, conference call, Gerling said that the 1113/1114 motion would only be against the UAW. This was consistent with the fact that we had had no negotiations and the Company proposal to us was not even finalized, but contingent on GM's agreement to fund portions of the proposal.

35. Following the meeting on March 30, the Union sent written requests for information to Gerling. Those requests are attached hereto as Exhibit D. To date, the unions have not received responses to our requests.

36. I am aware that our counsel has also sent written correspondence to the Company's attorneys on April 5, 2006, to advise them that the IBEW and IAM are ready and willing to meet to bargain. A copy of Union counsel's correspondence is attached hereto as Exhibit E.

4

37. On Thursday, April 13, 2006, Gerling contacted me by telephone to discuss setting a date for negotiations over the 1113/1114 proposals. I advised him that I was available that day or the next, April 13 and 14, or any day the week of April 17 and beyond.

38. Gerling advised me that the first day he was available to meet was April 20. We tentatively set bargaining for April 20 and 21 and the following week Gerling called to confirm the dates. We are currently set to begin negotiations on April 20 at 1:00 p.m. This will be the first opportunity we have to negotiate with the Company over its 1113/1114 proposals.

39. I learned that the Milwaukee facility was to close on December 31, 2007, from a UAW posting and the Company's 1113/1114 motion papers. I have asked for confirmation of the closing, but have not received on the record confirmation.

40. I have accessed the virtual data room that the Company has established. Although the website listed a category of documents described as "unpublished letters of understanding" when I attempted to view the documents in that category, I received a message that I did not have authorization to review the data. I received the same message when I attempted to access splinter union agreements, financial information and negotiations minutes.

41. There was general data available to the Union in the virtual data room, however, the information was not specific enough for us to evaluate the Company's proposals.

42. The Union also sent an information request to Kevin Butler, Vice President HRM, dated October 31, 2005. While we have received responses to certain of our questions, not all inquiries were answered. Attached hereto as Exhibit F is a copy of our information request.

43. Although we have not received all the information that we have requested or which is necessary to evaluate the Company's 1113/1114 proposals, the IBEW and the IAM have developed a counter-proposal which will provide the Company with substantial savings from our two Unions and contribute to the Company's effort to reorganize. We intend to present our counter-proposal to the Company at our initial bargaining session on April 20. A copy of the Unions' counter-proposal is attached hereto as Exhibit G.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of April, 2006.

                                                                                 _____
                                                                                  Randal A. Middleton