| | |
|---|---|
| Marianne Goldstein Robbins | Hearing Date and Time: May 9, 2006 at 10:00 a.m. |
| Jill M. Hartley (JH3652) | Objection Deadline: April 21, 2006 at 4:00 p.m. |
| Previant, Goldberg, Uelmen, | |
|  Gratz, Miller, & Brueggeman, s.c. | |
| 1555 N. RiverCenter Drive - Suite 202 | |
| Milwaukee, WI 53212 | |
| Telephone:    (414)   271-4500 | |
| Facsimile:    (414)   271-6308 | |

Attorneys for IBEW Local 663 and
IAMAW District 10

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| | **Chapter 11** |
| **DELPHI CORPORATION, et al.,** | **Case No. 05-44481 (RDD)** |
| Debtors. | **(Jointly Administered)** |

### DECLARATION OF DONALD L. GRIFFIN

I, Donald L. Griffin, declare:

      1.    I submit this Declaration in support of IBEW Local 663 and IAMAW District 10's Objection to Debtors' Motion to Reject Collective Bargaining Agreements and to Modify Retiree Benefits. I have personal knowledge of the facts set forth in this Declaration and, if called as a witness, could and would competently testify to all facts stated herein.

      2.    I am a Business Agent employed by the International Association of Machinists and Aerospace Workers, District 10 and have held my position since November 21, 2005.

      3.    At the start of my employment on November 21, 2005, I took over representation of the District 10 bargaining unit at Delphi from another Agent who was retiring.

      4.    The IAM has a collective bargaining agreements with Delphi which covers various classifications of machinists at the Company's Oak Creek, Wisconsin facility.

      5.    The IAM bargaining unit has approximately 45 employees.

6. The IAM also has approximately 10 to 12 retirees whom it is representing in the context of the 1114 motion.

7. Although I did not yet represent the unit in October 2005, it is my understanding that the Union received the Company's 1113/1114 proposals during a meeting with Rob Gerling and site labor relations representatives on October 24th.

8. Based upon information I learned from my committee members, the Company made it clear to the union that the meeting was not intended as negotiations; but rather, for informational purposes only.

9. A copy of the 1113/1114 proposals the Company presented to the Union during the October 24th meeting is attached hereto as Exhibit A.

10. Sometime in November 2005, the IAM received the Company's revised 1113/1114 proposals by mail.

11. Sometime in late November or early December 2005, after the IAM received the amended 1113/1114 proposal, I spoke with Gerling via telephone. During our telephone call he informed me that the Company did not have any plans to meet to negotiate with the IAM at that time, rather, the Company would be meeting with the larger unions such as the UAW, IUE and USW and that it would be a while before the Company contacted the IAM and IBEW to negotiate over the 1113/1114 proposals.

12. During our conversation Gerling also indicated that the Company had received the IAM's November 1, 2005 letter requesting information and they were in the process of putting together a response. We also discussed how he would provide me with the information and I gave him my email address.

13. It is my understanding that the Local's counsel in this matter sent a letter to the Company's attorneys on November 22. 2005, confirming Gerling's statement that the Company would not seek negotiations with the IAM until it negotiated with the larger unions like the UAW and IUE. A copy of that letter is attached hereto as Exhibit B.

14. I never received any contact from Gerling or anyone else within Company management regarding the November 22nd letter of counsel or with respect to bargaining dates over the Company's 1113/1114 proposals in 2005 and into early 2006.

15. Sometime in December 2005, I received an email message from Director of Industrial Relations, Charles McWee, informing me that the Company was setting up a website where it would post responses to information requests and other information the Company wished to share with the Unions. His message indicated that in order to access the site, a user name and password would be assigned.

16. I completed applications for access to the site for myself, Union counsel Jill Hartley and IAM Shop Chairman Jeff Curry. However, only Jeff Curry received a user name and password at that time.

17. Sometime in January 2006, the IAM shop chairman informed me that he had heard through the UAW that the Company had withdrawn its November 1113/1114 proposals to the UAW.

18. No one from Delphi management ever told me or any other IAM representative that the Company had withdrawn its November 1113/1114 proposals to the IAM.

19. While the IAM requested and received information from Charles McWee, Director of Industrial Relations, during January, February and March 2006, there was no bargaining, and no meaningful conversation regarding the Company's proposals during this time.

20. Sometime during the week of March 20, 2006, while I was out of the office, Gerling sent me a copy of the Special Attrition Package the Company negotiated with the UAW via email as well as by hard copy through the mail.

21. In connection with the Attrition package, I had a telephone conversation with Gerling during that same week in March. During our phone call, he informed me that he hoped to have a similar proposal to share with the IAM in the near future. Gerling also said that he wanted to set up a conference call sometime the week of March 27 to explain the attrition proposal and answer any questions regarding the program.

22. On or about March 28, 2006, I received copies of the Company's latest 1113/1114 proposal. A copy of that proposal is attached hereto as Exhibit C.

23. On or about March 28, 2006, I spoke to Randy Middleton, IBEW President/Business Manager, who advised me that a conference call had been set up with Gerling, the IBEW and the IAM for March 30, 2006, to address us on the UAW attrition program.

24. Pursuant to Gerling's request, on March 30, 2006, the IAM committee, myself, both IBEW shop committees, and Middleton participated in a conference call with Gerling and Ed Kettle as well as the local Delphi Management.

25. During that conference call on March 30th, the Company presented a power point presentation explaining the three options available under the UAW special attrition package. Gerling indicated that it was the Company's intention to offer a substantially similar attrition package to the IAM and IBEW members.

26. The Company confirmed that the meeting was intended as a Q & A session and not a negotiation session over the 1113/1114 proposals.

3

27. Middleton asked Gerling where and when the negotiations over the 1113/1114 proposals would take place and Gerling responded that he did not have a preference as to location and asked for the IBEW and IAM's availability for bargaining.

28. Both I and Middleton advised Gerling that we were available for negotiations over the Company's proposal at any time from that day forward.

29. The Unions asked who would negotiate on the Company's behalf and Gerling responded that he would be involved as well as a financial person as well as legal counsel.

30. Gerling also made the statement that even if the Unions immediately accepted and signed the terms and conditions package that had been presented, the Company would probably not be able to accept it because they needed to reach agreement with the UAW and IUE first.

31. The Union asked a series of questions of the Gerling and the other Company representatives during the meeting.

32. Gerling did briefly address the terms and conditions of the Company's latest 1113/1114 proposal. He prefaced his comments regarding the proposal by advising the Unions that the proposals were contingent upon GM providing the commitments necessary to finance the proposals.

33. Although we offered to make ourselves available for bargaining at any time, Gerling did not set a date for negotiations; rather, he simply told us that he would get back to us regarding bargaining.

34. I am aware that our counsel sent written correspondence to the Company's attorneys on April 5, 2006, to advise them that the IBEW and IAM are ready and willing to meet to bargain. A copy of Union counsel's correspondence is attached hereto as Exhibit D.

35. On Friday, April 14, 2006, I spoke to Gerling. He advised me that he had received a copy of our counsel's letter regarding setting bargaining dates. Gerling indicated that the earliest he could meet was April 20 and we tentatively scheduled negotiations for the 20th at 1:00 p.m. This will be the first opportunity we have to negotiate with the Company over its 1113/1114 proposals.

36. During our telephone discussion on April 14, I asked Gerling whether he had the information that we had requested regarding Delphi's estimate of the cost savings attributable to their 1113/1114 proposals. Gerling said that he did not have that information yet, but that he would have a financial person with him on the 20th who could provide that information then.

37. Gerling also informed me that the Company did not yet have the commitments from GM necessary to fund their latest proposal and that as a result, he did not believe that they could

4

accomplish much in bargaining on the 20th unless the Unions would really surprise him with their response to the Company's proposals.

38. I have accessed the virtual data room that the Company has established. I have not found the website to be user friendly and have had difficulty accessing documents contained therein.

39. There was general data available to the Union in the virtual data room, however, the information was not specific enough for us to evaluate the Company's proposals.

40. The Union also sent an information request to Kevin Butler, Vice President HRM, dated November 1, 2005. While we have received responses to certain of our questions, not all inquiries were answered. Attached hereto as Exhibit E is a copy of our information request.

41. Although we have not received all the information that we have requested or which is necessary to evaluate the Company's 1113/1114 proposals, the IBEW and the IAM have developed a counter-proposal which will provide the Company with substantial savings from our two Unions and contribute to the Company's effort to reorganize. We intend to present our counter-proposal to the Company at our initial bargaining session on April 20. A copy of the Unions' counter-proposal is attached hereto as Exhibit F.

42. On Tuesday, April 18, 2006, Middleton and I sent Gerling a joint letter outlining the information we had requested which had not yet been provided as well as requesting additional information the Unions needed to evaluate the Company's proposals. A copy of that request is attached hereto as Exhibit G.

43. Gerling contacted me on Wednesday, April 19, 2006 and advised me that he had received the Unions' letter and that the financial person who would be attending bargaining on April 20 should be able to provide responses to our requests.

Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this _____ day of April, 2006.

_____

Donald L. Griffin