KIRKPATRICK & LOCKHART  Hearing Date: May 9, 2006
NICHOLSON GRAHAM LLP  10:00 a.m.
Edward M. Fox, Esq. (EF1619)
599 Lexington Avenue
New York, New York 10022
Telephone (212) 536-3900

Attorneys for Wilmington Trust Company,
as Indenture Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
In re:                                          :    Chapter 11
                                                :    Case No. 05-44481 (RDD)
DELPHI CORPORATON, *et al.*,                    :    (Jointly Administered)
                                                :
        Debtors.                                :
                                                :
--------------------------------------------------------X

**LIMITED OBJECTION OF WILMINGTON TRUST COMPANY,
AS INDENTURE TRUSTEE, TO MOTION FOR ORDER
UNDER 11 U.S.C. § 1113(C) AUTHORIZING REJECTION OF
COLLECTIVE BARGAINING AGREEMENTS AND UNDER 11 U.S.C. § 1114(G)
AUTHORIZING MODIFICATION OF RETIREE WELFARE BENEFITS**

Wilmington Trust Company ("WTC"), in its capacity as indenture trustee with respect to the senior notes and debentures (the "Senior Debt") in the aggregate principal amount of $2 billion issued by Delphi Corporation ("Delphi"), by and through its attorneys, Kirkpatrick & Lockhart Nicholson Graham LLP, hereby files this limited objection to the Motion for Order Under 11 U.S.C. § 1113(c) Authorizing Rejection of Collective Bargaining Agreements and Under 11 U.S.C. § 1114(g) Authorizing Modification of Retiree Welfare Benefits (the "Motion") filed by Delphi and its debtor subsidiaries and affiliates (collectively, the "Debtors"), stating as follows:

NY-434970 v1

**PRELIMINARY STATEMENT**

1.      Without taking any position regarding whether the particular concessions the Debtor has requested from its employees and retirees are necessary or appropriate, WTC acknowledges the Debtors' need to implement fundamental changes to their respective businesses in order to maximize the value available for distribution to their respective creditors as well as the Debtors' desire to preserve the possibility of a return to profitability for at least some of the Debtors' domestic operations.

2.      Nevertheless, WTC is concerned that, in their desire to reach a comprehensive resolution of their labor issues, the Debtors have failed to give adequate consideration to the varying interests of their individual estates and creditors, and have simply assumed that the proper allocation among Delphi and its U.S. operating subsidiaries of the substantial burdens that may result from rejection of various collective bargaining agreements and/or modification of retiree benefit obligations can be sorted out at a later date.

3.      WTC respectfully submits that the question of how the costs of reorganizing the Debtors' labor force will be allocated among Delphi and its U.S. operating subsidiaries is simply too important to be ignored, and must be addressed now in order for the Debtors to meet their burden of proving that the decision to seek the modifications proposed by the Motion represents a reasonable exercise of Delphi's business judgment, and will ensure "that all creditors, the debtor and all of the affected parties are treated fairly and equitably." 11 U.S.C. § 1113(b)(1)(A).

4.      Accordingly, absent an affirmative showing by Delphi that it and its creditors -- as opposed to its U.S. operating subsidiaries -- will receive an overall positive

economic benefit from the rejection of its collective bargaining agreements and modification of its retiree benefit obligations, the Motion must be denied.

**THE DEBTORS HAVE NOT DEMONSTRATED THAT THE RELIEF REQUESTED BY THE MOTION IS IN THE BEST INTERESTS OF DELPHI CORPORATION**

5.   Section 1113 of the Bankruptcy Code provides, among other things, that before seeking to reject a collective bargaining agreement, a debtor must make a proposal that assures "that all creditors, the debtor and all of the affected parties are treated fairly and equitably."  11 U.S.C. § 1113(b)(1)(A).

6.   Consistent with the statutory directive to consider the interests of "all of the affected parties," in evaluating a motion for permission to reject, courts look beyond the immediate consequences of rejection for the parties to the collective bargaining agreement itself, and consider a variety of additional equitable factors, including:

(1)   the likelihood and consequences of liquidation if rejection is not permitted;

(2)   the likely reduction in the value of creditors' claims if the bargaining agreement remains in force;

(3)   the likelihood and consequences of a strike if the bargaining agreement is voided;

(4)   the possibility and likely effect of any employee claims for breach of contract if rejection is approved;

(5)   the cost-spreading abilities of the various parties, taking into account the number of employees covered by the bargaining agreement and how various employees' wages and benefits compare to those of others in the industry; and

(6)   the good or bad faith of the parties in dealing with the debtor's financial dilemma.

Truck Drivers Local 807 v. Carey Transportation, 816 F.2d 82, 93 (2d Cir. 1987).

7. In an effort to demonstrate that these equitable factors favor rejection, the Debtors, mainly Delphi, rely on a series of conclusory assertions that appear to disregard the legal distinction between Delphi Corporation, a holding company with no operations, no real property and no operating assets and few, if any, employees, and the other Debtors, many of which are operating companies with substantial unionized workforces.

8. For instance, the Debtors' Memorandum of Law in support of the Motion states that in the absence of the relief requested by the Motion, "Delphi will rapidly consume any assets available to satisfy other creditors," and that "Delphi will be forced to liquidate." (p. 75).

9. The Debtors further state that "compared to the outcome in liquidation that may occur without rejection, a successful reorganization in which the employees have general unsecured claims arising from collective bargaining agreement rejection damages is clearly more favorable." (p. 77).

10. These and other statements made by the Debtors in support of the Motion reflect a clear tendency to favor the interests of Delphi Automative Systems LLC ("DAS LLC") and Delphi's other U.S. operating subsidiaries, which would reap substantial benefits from a reduction in the costs attributable to their unionized employees and retirees, and which might well be forced to cease operations and liquidate in the absence of such a reduction.

11. Unfortunately, the Debtors have not established that Delphi Corporation and its creditors share these same economic interests, particularly if, and to the extent, Delphi's debtor subsidiaries are insolvent.

12. In fact, unless DAS LLC and Delphi's other U.S. operating subsidiaries are solvent – or would be rendered solvent by the wage and benefit reductions sought by the

Motion – there is no economic justification for Delphi Corporation to incur any additional costs or claims solely to reduce the extent of its subsidiaries' insolvency.

13. If the Motion is granted, DAS LLC and Delphi's other U.S. operating subsidiaries will receive clear economic benefits in the form of lower wage rates and reduced benefit obligations for the unionized employees employed in their operations, which may well offset the cost of any resulting rejection damage claims.

14. By contrast, Delphi Corporation, which does not employ the services of any unionized employees, will assume substantial payment obligations and a significantly increased volume of unsecured claims – all without any apparent corresponding benefit.

15. Under the Debtors' proposal, Delphi would agree, among other things, to make the following payments to the impacted employees of its subsidiaries:

    (i) a $50,000.00 buydown to employees moving to a reduced wage scale;

    (ii) a $140,000.00 buyout payment to any employee with more than ten years of seniority whose services are no longer required by the Debtors' operations; and

    (iii) a $70,000.00 buyout payment to any employee with fewer than ten years of seniority whose services are no longer required by the Debtors' operations.

See Memorandum of Law, p. 44.

16. In addition, General Motors would presumably assert indemnification claims against Delphi under the Benefit Guarantee for benefits paid by GM to the Debtors' retirees on account of the proposed modification of retiree benefits sought by the Motion.

17. These costs come on top of the estimated $3 to $4 billion in claims the Debtor has already agreed to allow GM to assert against it in connection with the Delphi-GM-UAW Attrition Program, which is likewise designed to provide benefits to DAS LLC and

Delphi's other U.S. operating subsidiaries by encouraging voluntary attrition among the ranks of their employees, but provides no obvious benefit to Delphi itself.

18. Before Delphi is allowed to make any additional contributions to, or incur any additional claims on account of, the welfare of its subsidiaries, in connection with the Motion or otherwise, Delphi should be required to demonstrate how reducing the wage and benefit obligations of DAS LLC and Delphi's other U.S. operating subsidiaries' to their hourly employees will result in any measurable benefit to its own creditors, who are being asked to shoulder virtually all of the costs associated with the Debtors' current labor transformation strategy, without any assurances that DAS LLC and Delphi's other U.S. operating subsidiaries will even be asked to shoulder those costs.

19. WTC's concern is exacerbated by the fact that the Debtors all share the same counsel, who has publicly suggested that Delphi might not even have the right to assert claims against DAS LLC and Delphi's other U.S. operating subsidiaries with respect to the substantial contributions with which Delphi is being saddled to resolve the Debtors' collective labor problems.[1]

20. Contrary to the suggestions made by Debtors' counsel on April 7, 2006, while Delphi may be the sole signatory to the collective bargaining agreements at issue in the

---

[1]  See Transcript of April 7, 2006 Hearing (Afternoon), p. 109-110, wherein Debtors' counsel, Jack Butler, stated that "there's a very cohesive and cogent argument that can be made, frankly, that all the rest of the wholly-owned subsidiaries are doing nothing but carrying out the obligations and performing the obligations that the parent company is primarily liable for. And does it for the benefit of the parent company."
   Although Mr. Butler also stated that WTC's counsel "should presume that the people who are responsible for Delphi Corporation or fiduciary duties will do their duty", he refused to concede that Delphi Corporation would have a claim, stating only that "if, in fact, there is a legitimate intercompany claim to be asserted in this Chapter 11 case in connection with this, it will be sorted out in connection with the plan of reorganization." TR. at 123, l. 4-13.

Motion, Delphi's subsidiaries are not simply carrying out the obligations of their corporate parent in honoring the terms of those agreements.

21.  Instead, the subsidiaries appear to be "joint employers" of their unionized employees, and are thus obligated to honor the terms of those collective bargaining agreements. See N.L.R.B. v. Browning Ferris Indus. of Pennsylvania, Inc., 691 F.2d 1117 (3d Cir. 1982).

22.  The key difference between Delphi and its U.S. operating subsidiaries, however, is that the operating subsidiaries will derive a direct benefit from the rejection of the collective bargaining agreements, while Delphi, which has no operations, will derive a benefit only to the extent that rejection of the collective bargaining agreements increases the equity value of its investment in its Debtor subsidiaries to some positive amount.

23.  While the Debtors' bankruptcy cases are being jointly administered, each of the Debtors remains a separate legal entity obligated to act as an independent fiduciary for the benefit of its own separate estate and creditors.

24.  It is thus incumbent on the Court and each of the Debtors, including Delphi, to ensure that the costs associated with any transformation of the Debtors' respective businesses, including any costs resulting from the rejection of the collective bargaining agreements and/or modification of retiree benefits, are allocated fairly and equitably among the Debtors that will actually receive the benefit of the wage and benefit reductions requested by the Motion.

25.  Absent a clear allocation of the burdens resulting from rejection of the collective bargaining agreements and retiree benefits to the particular operating entities that will benefit from that rejection, the Debtors simply cannot prove that the relief requested by the

Motion is fair or equitable to Delphi Corporation or its creditors, or that it is even a reasonable exercise of Delphi's business judgment to request such relief.

26.  Wilmington Trust reserves the right to amend or supplement this limited objection after it has had the opportunity to obtain discovery from the Debtors in connection with the Motion.

WHEREFORE, WTC respectfully requests that the Court deny the Motion, unless and until the Debtors can demonstrate that rejection of the collective bargaining agreements and modification of retiree benefits is in the best interests of each of the Debtors, including Delphi Corporation, and that any costs resulting from that rejection or modification are allocated fairly and equitably among the separate estates of the Debtors.

Dated: New York, New York
April 21, 2006

    KIRKPATRICK & LOCKHART
    NICHOLSON GRAHAM LLP

    By: */s/ Edward M. Fox*
       Edward M. Fox (EF1619)
       A Member of the Firm
    Attorneys for Wilmington Trust Company,
    as Indenture Trustee
    599 Lexington Avenue
    New York, NY 10022
    (212) 536-3900