1

1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    05-44481-rdd

5    - - - - - - - - - - - - - - - - - - - - -x

6    IN RE:

7

8    DELPHI CORPORATION, et al.,

9

10           Debtor.

11

12    - - - - - - - - - - - - - - - - - - - - -x

13

14                 February 10, 2006

15                 2:10 PM

16

17                 United States Custom House

18                 One Bowling Green

19                 New York, New York

20

21    B e f o r e :

22

23    HON. ROBERT D. DRAIN, US BANKRUPTCY JUDGE

24

25

2

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    HEARING re Motion to Approve Motion for an

3    Order Under 11 U.S.C. Sections 363(b) and

4    365(a) and Fed. R. Bankr. P. 9019 Approving

5    Procedures to Assume Certain Amended and

6    Restated Sole Source Supplier Agreements

7

8    HEARING re Motion to Authorize Motion for

9    Order Under Sections 105 and 363 Authorizing

10   the Debtors to Implement a Key Employee

11   Compensation Program

12

13   HEARING re Objection to Motion and Memorandum

14   of Law in Support of Objection of IBEW Local

15   63 and IAM District 10 to Motion for Order

16   Authorizing Debtors to Implement a Key

17   Employee Compensation Plan

18

19   HEARING re Objection to Motion and Memorandum

20   of Law of International Union of Operating

21   Engineers Local Union Nos. 18, 101 and 832 to

22   Debtor's Motion for an Order Authorizing the

23   Debtors to Implement a Key Employee

24   Compensation Program

25

3

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2   HEARING re Motion to Authorize Motion for

3   Order Under Sections 105 and 363 Authorizing

4   the Debtors to Implement a Key Employee

5   Compensation Program

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21   Transcribed By:

22   Pnina Eilberg

23

24

25

4

```
 1    DELPHI CORPORATION, ET. AL.    05-44481-rdd
 2   A P P E A R A N C E S :
 3   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
 4           Attorneys for Debtors
 5           333 West Wacker Drive
 6           Chicago, Illinois  60606
 7
 8   BY:     JOHN WM. BUTLER, JR., ESQ.
 9           DAVID E. SPRINGER, ESQ.
10
11   SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
12           Attorneys for Debtors
13           Four Times Square
14           New York, New York  10036
15
16   BY:     KAYALYN A. MARAFIOTI, ESQ.
17
18   NIX, PATTERSON & ROACH LLP
19           Attorneys for United Steel Workers
20           205 Linda Drive
21           Daingerfield, Texas  75638
22
23   BY:     BRADLEY E. BECKWORTH, ESQ.
24           JEFFERY J. ANGOLOVICH, ESQ
25
```

5

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    LATHAM & WATKINS, LLP

3            Attorneys for Official Committee of

4            Unsecured Creditors

5            885 Third Avenue

6            New York, New York   10023

7

8    BY:     ROBERT ROSENBERG, ESQ.

9

10   MURRAY, FRANK & SAILER, LLP

11           Attorneys for International Union

12           of Electrical Workers

13           275 Madison Avenue

14           New York, New York   10016

15

16   BY:     TOM KENNEDY, ESQ.

17

18   COHEN, WEISS & SIMON, LLP

19           Attorneys for UAW

20           330 W. 42nd Street

21           New York, New York   10036

22

23   BY:     BABETTE CECCOTTI, ESQ.

24

25

6

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2   MEYER, SUOZZI, ENGLISH & KLEIN, PC

3          1350 Broadway, Suite 501

4          New York, New York  10018

5

6   BY:      LOWELL PETERSON, ESQ.

7

8   KIRKPATRICK & LOCKHART NICHOLSON GRAHAM LLP

9          Attorneys for Wilmington Trust

10          Company

11          599 Lexington Avenue

12          New York, New York  10022

13

14   BY:      EDWARD FOX, ESQ.

15

16   UNITED STATES TRUSTEE

17          33 Whitehall Street, 21st floor

18          New York, New York  10004

19   BY:      ALICIA M. LEONHARD, ESQ.

20

21

22

23

24

25

7

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2

3              P R O C E E D I N G S

4         THE COURT:  Be seated.

5         MR. BUTLER:  Your Honor, good

6    afternoon.  My name is Jack Butler.  I

7    am from the law firm of Skadden, Arps,

8    Slate, Meagher & Flom, LLP.  I'm here

9    with my partners David Springer and

10   Kayalyn Marafioti for this specially set

11   hearing on a motion for order under 11

12   USC 105 in the 363, to authorize the

13   debtors to implement a Key Employee

14   Compensation Program, originally filed

15   in October of 2005, at docket number

16   213.  Your Honor, by agreement with the

17   creditors committee entered into in

18   December of 2005, the debtors agreed to

19   adjourn to the July 27th, 2006 hearing.

20   All aspects of the KECP motion relating

21   to annual incentive plans after June

22   30th of 2006, relating to emergence cash

23   awards, and relating to emergency --

24   emergence equity awards.  We have agreed

25   to proceed only with the annual

8

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         incentive plan for the period from

3         October 8th through June 30th of 2006.

4         The debtors previously dealt with an

5         aspect of the pre-petition long-term

6         incentive plan and with the severance

7         program as part of the human capital

8         obligations order, which is a final

9         order of the Court, which also dealt

10        with the payment of full performance of

11        payment obligations to the debtors,

12        46,000 member domestic human capital

13        work force.  And the debtors also, Your

14        Honor, as part of this program, have

15        cancelled the pre-petition long-term

16        incentive program, other than for a

17        limited performance program dealt with

18        under the human capital obligations

19        order.  And also cancelled a pre-

20        petition retention program, or stay-for-

21        pay program, that had been approved back

22        in February of 2005.  Your Honor, so the

23        only matter that is before the Court

24        today, is the annual incentive plan for

25        the period covering the first nine

9

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         months of the debtors' cases.  As part

3         of our agreements with the unsecured

4         creditors committee, we have agreed to

5         forgo the program for the fourth quarter

6         of 2005.  That period's obviously behind

7         us now.  It was not behind us when the

8         motion was filed in October of 2005, but

9         as the time has marched on, and the

10        debtors have adjourned these matters for

11        a period of four months to work through

12        the mechanics and the form and substance

13        of the program with the creditors

14        committee, it was agreed that the

15        program would cover only the period

16        January 1 through June 30th of this

17        year.  Your Honor, the program that is

18        before the Court at target performance

19        has a pool of just under 21 million

20        dollars, with no more than about 5.7

21        million of that available for the 22 or

22        23 most senior officers at the company,

23        that are called - that are comprised the

24        Delphi strategy board, with the

25        exception of Mr. Miller, our chief

10

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         executive officer, who is in court

3         today, who has voluntarily reduced his

4         compensation, effective January 1st, to

5         a dollar a year and has declined

6         participation in this program.  Your

7         Honor, to put this in perspective, we're

8         here before the Court on a summary

9         hearing regarding the section 363 use of

10        estate property for what the debtors

11        believe, at least as it relates to this

12        portion of the KECP, is an ordinary

13        course program, and just to put it in

14        perspective, the document that's blown

15        up on the board which is also part of

16        Exhibit 1, makes clear, from the

17        debtors' perspective and the testimony

18        will make clear as we move forward, that

19        the annual incentive program, the wedge

20        of the pie that is yellow, is one of

21        four elements of basic compensation that

22        has been part of Delphi's historic cash

23        structure -- incentive structure and

24        compensation structure, for it's

25        executives world wide, since the spin

11

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         off from General Motors.  There are four

3         pieces.  There's a salary amount, there

4         are benefits, there's an annual

5         incentive opportunity and there's a

6         long-term incentive opportunity.  And,

7         that comprises the unitary compensation

8         structure for the company.   From

9         October 8th of this year, through today,

10        the debtors have been providing their

11        executives only salary and benefits, but

12        not providing any of the other programs,

13        the annual incentive program or the

14        long-term incentive program.  And so,

15        there has been two of the four pieces of

16        the puzzle that are part of the unitary

17        program, have, in fact, been unavailable

18        for the last 120 days.  And as the

19        testimony will show, there's been a

20        competitive shortfall of that.  What we

21        are here today to talk about is only one

22        additional piece of the pie, this third

23        piece dealing with annual incentive

24        opportunity and even if we are able to

25        prevail on our motion today, because we

12

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         put off the balance of the KECP to

3         address the long-term incentive issues,

4         the work force -- the executive work

5         force, will be operating on something

6         like two thirds of their basic program,

7         that's been the basic program since the

8         debtors became a public company years

9         ago.  And that's just, Your Honor, the

10        summary of what we're here to talk about

11        today.  In reviewing the objectives and

12        the evidence, we have made some progress

13        and I'd like to report to the Court on,

14        if I may.

15             THE COURT:  Okay.

16             MR. BUTLER:  Your Honor, there

17        are, before the Court today, 10

18        objections to be dealt with.  There has

19        been one objection that was withdrawn as

20        it relates to the AIP, the pre-

21        petitioned bank group, which had filed

22        their objection at docket number 1157,

23        had withdrawn their objection to the AIP

24        that's before the Court today at docket

25        number 2227.  In addition, Your Honor,

13

1      DELPHI CORPORATION, ET. AL.    05-44481-rdd

2           there are two unions; I'm just going to

3           run through the other objections.  There

4           are five objections that come from the

5           creditors committee and four of its

6           members.  There are three other unions

7           that have objected and then there is an

8           objection from the lead plaintiffs in

9           the securities litigation and from the

10          United States Trustee.  Addressing the

11          order of the objectors, there has been

12          an agreement, that the objectors in

13          dealing with the evidence to glean

14          today, that the first objector that will

15          deal matters will be the IUECWA.  Their

16          objection is filed at docket number 1164

17          and they will be the first of the

18          objectors to present today, and they

19          have also intend to present evidence in

20          the form of Henry Riker who has

21          submitted a declaration at docket number

22          1164, and a supplemental declaration at

23          docket number 2223.  The second, in the

24          order of objectors dealing with matters,

25          will be the UAW.  Their objection is at

14

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        docket number 1135 and they have also

3        filed a declaration at that docket

4        number in support of their objection.

5        The third objector will be the United

6        Steel Workers, who have filed their

7        objection at docket number 1134.  They

8        have also a declarant and that is Mark

9        Shaw at docket number 2054.  Those are

10       the only three of the objections, Your

11       Honor that have, actually, attest

12       declarations to go in today.

13            THE COURT:  Do you contemplate

14       cross examination of those individuals?

15            MR. BUTLER:  Very limited, Your

16       Honor, and they are present in the court

17       room today.

18            THE COURT:  Okay.

19            MR. BUTLER:  The fourth

20       objector would be Wilmington Trust

21       Company.  Their objection is at docket

22       number 1133.  The fifth objector would

23       be the lead plaintiffs.  Their

24       document's at docket number 1161.  The

25       sixth objector, if they choose to

15

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         present anything, would be the Pension

3         Benefit Guarantee Corporation, another

4         member of the committee, and they're at

5         docket number 1141.  And, finally, the

6         last objector would be the Official

7         Committee of Unsecured Creditors at

8         docket number 2099.  And the United

9         States Trustee, obviously, is here by

10        Miss Leonhard, to participate as well.

11        Their objection is at docket number

12        1288.  We've been advised that -- by

13        counsel to the IBEW, which filed an

14        objection at 1156 and by the IUOE which

15        filed an objection 1159 that they do not

16        have any plans to formally participate

17        in this afternoon's hearing.  Your

18        Honor, there is a joint exhibit book,

19        and there have been stipulations with

20        respect to the evidence.  I'd like to

21        present those exhibit books at this

22        time.

23             THE COURT:  Okay.

24             MR. BUTLER:  Your Honor, there

25        are 37 exhibits in the exhibit book.

16

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         There's an agreement that Exhibit 1

3         would be admitted for -- as a

4         demonstrative exhibit only.  There are

5         no objections to Exhibits 2 through 25.

6         The debtors have an objection to Exhibit

7         26, which is the KECP participants'

8         designation by the lead plaintiffs.  The

9         debtors have a hearsay objection to

10        Exhibit 27.  Exhibits 28 and 29 have

11        been withdrawn.  And, the deposition

12        testimony designates in 31 through 33

13        are coming in, Your Honor, with an

14        agreement that the designators, the UAW

15        and the IUE would not have an

16        opportunity to cross examine Mr. Weber,

17        Mr. Bogdnavich and Mr. Opie, but instead

18        would rely on their designations from

19        the depositions.  And, but they did

20        reserve the right to re-cross with

21        respect to any re-direct that I may

22        offer.

23             THE COURT:  Okay.

24             MR. BUTLER:  So with that in

25        mind, Your Honor, I'd like to move the

17

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        admission of documents Exhibits 1

3        through 25, and 30 through 37.

4            THE COURT:  Okay.  I assume

5        there are no objections, in light of

6        what we've just stated, so I'll admit

7        them.

8            MR. BUTLER:  Thank you, Your

9        Honor.  Your Honor, in connection with

10       the -- the order, the line of testimony,

11       and there have been meet and confers

12       held in this case in a variety of

13       information that has been exchanged in

14       connection with this, the direct

15       examination for each of the six

16       witnesses, the three for the debtors and

17       the three for the objectors, is

18       proceeding by declaration and

19       supplemental declaration subject to

20       cross examination.  And, the order would

21       be first, the debtors will offer Mr.

22       Webber's declaration, both his principal

23       and supplemental declarations.  Then the

24       declaration of the debtors' compensation

25       consultant, Nick Bogdnavich.  Then the

18

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         declaration of the debtors' lead

3         independent director, Mr. John Opie.

4         That would be followed, then, after

5         we've completed the debtors' declarants;

6         we'll then be dealing with the

7         declarations that are being offered by

8         the objectors, presumably in the same

9         order then, that we dealt with them.

10        The first one would be the principal

11        declaration and supplemental declaration

12        of Henry Riker on behalf of the IUE.

13        The second declaration for the objectors

14        would be the declaration of Mr. Steve

15        Grandstaff on behalf the UAW, and the

16        third declarant would be the declaration

17        of Mr. Mark Shaw on behalf of the United

18        Steel Workers.  And, we plan brief cross

19        examinations of those witnesses.  Your

20        Honor, upon the completion of that, that

21        should complete the evidentiary record

22        and we'll deal with the remaining

23        exhibits at that time.  And then we ask

24        Your Honor to move to close the record

25        and make that motion before the Court.

19

```
 1    DELPHI CORPORATION, ET. AL.    05-44481-rdd
 2              THE COURT:  Okay.
 3              MR. BUTLER:  If that's
 4       appropriate to proceed, we'll proceed in
 5       that fashion.
 6              THE COURT:  That sounds fine.
 7              MR. BUTLER:  Your Honor, I then
 8       would like to begin the record today by
 9       offering in, they've already been
10       admitted into evidence, these are the
11       declarations, and I should have made the
12       point when I moved their admission,
13       obviously, and I think it goes without
14       saying but I'll say it, the declarations
15       15 through 22nd, Your Honor, moved into
16       evidence subject to cross and re-cross
17       and re-direct that we are planning to
18       do.  With that in mind, I'd like to, at
19       this point, offer for cross examination
20       Mark R. Webber, and with respect to his
21       declarations that have been admitted
22       into evidence as Exhibits 15 and 16.
23              THE COURT:  Okay.  If you could
24       take the stand up here Mr. Webber.  Just
25       speak loudly please.
```

20

```
 1   DELPHI CORPORATION, ET. AL.    05-44481-rdd
 2            MR. WEBBER:  Speak loudly.
 3         (Witness is duly sworn.)
 4            THE COURT:  So, I forget which
 5       union we're doing first, but --
 6            MR. BUTLER:  IUE I believe,
 7       number one.
 8            MR. KENNEDY:  No, the IUE had
 9       indicated by the introduction -- Your
10       Honor, my name is Tom Kennedy,I
11       represent the IUE.  By the introduction
12       of the designated portions of Mr.
13       Webber's deposition, we've agreed, as a
14       consensual matter, to not burden the
15       Court with further cross examination.
16            THE COURT:  All right.  Very
17       well.
18            MR. BUTLER:  That would be true
19       for the UAW, I believe.
20            MS. LEONHARD:  It would, Your
21       Honor.  Thank you.
22            THE COURT:  Okay.
23            MR. BUTLER:  That takes us to
24       the United Steel Workers.
25            MR. PETERSON:  Lowell Peterson,
```

21

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        for the Steel Workers, we have no

3        questions at this time, subject to

4        reserving the right to re-cross.

5                THE COURT:  Okay.

6                MR. BUTLER:  Wilmington Trust.

7                MS. LEONHARD:  We don't have

8        any questions at this time.

9                MR. BUTLER:  Lead plaintiffs.

10               MR. BECKWORTH:  With the

11       Court's permission we do have a few

12       questions.

13               THE COURT:  Fine.

14               MR. BECKWORTH:  Would it please

15       the Court, Your Honor, my name is Brad

16       Beckworth.  I'm with the law firm Nix,

17       Patterson and Roche, from Daingerfield,

18       Texas.  I represent the Teacher's

19       Retirement System for the state of

20       Oklahoma, the Public Employees

21       Retirement System for the state of

22       Mississippi, ABP, which is the National

23       Pension Fund of the Netherlands and also

24       Refesem which is a mutual fund

25       management company in Vienna.  We have,

22

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         I guess, commonly been referred to as a

3         securities lead plaintiffs in this case.

4         With that, I'd have a few questions for

5         Mr. Webber, if it pleases the Court.

6              THE COURT:  Go ahead.

7    EXAMINATION BY

8    MR. BECKWORTH:

9         Q.    Mr. Webber, good afternoon.

10   You had your deposition taken in this case,

11   last week, I believe?

12        A.    I did.

13        Q.    And, you've also submitted the

14   declaration?

15        A.    That's correct.

16        Q.    Just to kind of summarize for

17   the Court, what's in your declaration, could

18   you just describe, briefly, what your

19   involvement was on the compensation committee

20   in the process of fashioning the current

21   version of the KECP or AIP that the debtor is

22   asking the Court to approve?

23        A.    I'm the secretary of the

24   compensation committee, school rules and

25   facilitator (indiscernible) advisor

23

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    (indiscernible) we want to discuss matters

3    (indiscernible) decision --

4        Q.    You were involved in both the

5    promulgation and the continued modification of

6    the KECP that we're ultimately here looking at

7    today.

8        A.    (Indiscernible.)

9        Q.    And you yourself would be an

10   eligible participant under that KECP, is that

11   correct?

12       A.    Correct.

13       Q.    I would like to ask you a few

14   questions about what the KECP, as it's

15   currently proposed, does, or does not do.  Is

16   there a component in the KECP that requires an

17   eligible employee participant to sign any

18   statement that that employee has not been

19   involved or participated in, insider trading

20   in violation in one of the United States

21   securities exchange acts?

22       A.    I don't believe

23   (indiscernible).

24       Q.    Is there a provision in the

25   current AIP or KECP that eliminates the

24

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    ability of an eligible participant to

3    participate if that person is named as a

4    defendant in the securities class action

5    litigation that is pending?

6              THE COURT:  Your suit?

7         BY MR. BECKWORTH:

8         Q.    Yes, Your Honor, I mean, yes,

9    sir.  Okay.  Is there any provision in the AIP

10   KECP that's being proposed today that

11   precludes someone from participating if they

12   have been named by the internal committees,

13   audit committee or other investigative

14   committee appointed by the debtor, if that

15   person has been named as someone who acted

16   with dishonesty against the best interest of

17   the company?

18        A.    You asked me if there was a

19   provision prohibits participation, if you had

20   been named by the audit committee of the

21   company?

22        Q.    Yes or --

23        A.    -- dishonesty?

24        Q.    -- yes, sir, or any other

25   investigative committee appointed by the

25

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    debtor.   That would be participation on the

3    front end.

4        A.    Okay.  I'm trying to run

5    through the prophylactic protections that we

6    have and I'm trying to imagine how that

7    question fits.

8        Q.    Maybe I can help you.  The

9    current prophylactic measures that are in

10   place have a claw-back provision that deal a

11   standard that will talk about dishonesty.

12   What I'm asking you for now is,is there any

13   front-end eligibility requirement that

14   precludes participation if someone has been

15   named previously by the investigative

16   committees that have been used by the debtor?

17       A.    The name?

18       Q.    As a person who acted against

19   the best interest of the company or acted

20   dishonestly.

21       A.    I don't think that we have a

22   rule.

23       Q.    Excuse me?

24       A.    I don't think we have rules

25   about --

26

1    DELPHI CORPORATION, ET. AL.   05-44481-rdd

2        Q.      You don't think they would be

3    on roll.  What does that mean?

4        A.      I don't think being dishonest

5    --

6        Q.      Yes.  Do you know if there's

7    anyone?

8        A.      I don't know of anyone.

9        Q.      Okay.  Thank you, that's fine.

10   Finally, there is no provision in KECP that we

11   have now that precludes participation or

12   requires disgorgement of funds that are earned

13   under this program.  If someone is found to

14   have acted dishonestly by the court or jury in

15   the securities litigation, that is presently

16   pending against the debtor.  Is that correct?

17       A.      Your litigation?

18       Q.      Yes, sir.  Yes, sir.

19       A.      Say that one more time.

20       Q.      There is no provision that

21   precludes participation or requires forfeiture

22   of any money earned under this KECP of someone

23   who is found to have acted dishonestly against

24   the best interest of the company by the court

25   or the jury in the securities litigation,

27

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    pending its outcome.  That's correct, isn't

3    it?

4        A.    Specifically that?

5        Q.    Yes, sir.

6        A.    I don't know that specifically

7    that is mentioned.

8        Q.    Okay.  So to your knowledge,

9    it's not in there.  It's okay.  I would like

10   to turn to the prophylactic measures that are

11   being proposed by the debtors.  Specifically,

12   I'd like to speak to you for a minute about

13   the claw-back procedures.  You're familiar

14   with that?

15       A.    Yes.

16       Q.    Could you tell the judge what

17   that means, what -- in your mind the claw-back

18   procedure?

19       A.    There are a number of

20   provisions that would cause escrow funds.

21   However, those funds are in escrow and if they

22   are found to be a payment method for due

23   process to learn how to claw-back.

24       Q.    That's basically a forfeiture

25   provision.

28

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         A.      Colorful.

3         Q.      That standard the claw-back

4    provision has component of finding out when

5    someone should have to forfeit.  And I

6    believe, in your words, in your deposition,

7    your declaration; it is if someone acted in

8    bad faith against the best interest of the

9    company.  If that is found then they would be

10   required to give money back.  Is that correct?

11        A.      (Indiscernible)

12              MR. BUTLER:  Objection.  Your

13        Honor, that document speaks for itself.

14        It's in the record.  I don¦t know that

15        we need to have it recited here.  It may

16        be, or perhaps we could get the document

17        in front of the Court and in front of

18        Mr. Webber.

19              MR. BECKWORTH:  That's fine, or

20        I could just summarize it, it just be a

21        long.

22              THE COURT:  That's fair.  Well,

23        no, I mean, I don't want you to be

24        putting words in his mouth.  If you're

25        going to ask him about the specific

29

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        document, you know, if you want

3        clarification of it, then we should

4        refer into the document.

5            MR. BECKWORTH:  The

6        prophylactic, can you give me one

7        second, Your Honor; I'll get it.

8            THE COURT:  Sure.  It's Exhibit

9        5.

10           MR. BECKWORTH:  I'm just going

11       to give him a courtesy copy so that he

12       could look at it.  May I approach the

13       bench, Your Honor?

14           THE COURT:  Yes.  Mr. Webber,

15       if you could still speak up a little,

16       because it has to be picked up on the

17       microphone.

18           MR. BECKWORTH:  Your Honor, Mr.

19       Butler has informed me it's Exhibit 5 in

20       the big notebook that Your Honor has

21       before you.

22           THE COURT:  That's fine.

23           MR. BECKWORTH:  It's in the

24       large book; Exhibit 15 and 16 Mr.

25       Webber, we may be able to help you if we

30

```
 1    DELPHI CORPORATION, ET. AL.    05-44481-rdd
 2         direct your attention to the actual
 3         prophylactic.
 4              MR. BUTLER:  I'm very sorry
 5         about this.
 6    BY MR. BECKWORTH:
 7    Q.      Maybe we can do it this way.
 8    After you submitted your declaration, the
 9    prophylactic measures were amended.  Is that
10    correct, that there was a new version put in
11    place?
12    A.      I could never remember.
13    Q.      Okay.  And I would like to
14    talk to you specifically about those and to
15    help you, sir.  So, if you will turn to the
16    second page of Exhibit 5 which is the current
17    prophylactic --
18              THE COURT:  Are you going to
19         read that for us?
20    BY MR. BECKWORTH:
21    Q.      Yes, Your Honor.  Yes, sir, I
22    do.  Look at the first paragraph on the second
23    page.  You are familiar with those
24    prophylactic measures are you not?
25    A.      I am.
```

31

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        Q.    Now, let me rephrase that

3    question as you look at it.  The current claw-

4    back procedure requires forfeiture if the

5    board finds that a person failed to act with

6    good faith and acted against the best interest

7    of the debtor.  Is that correct?

8        A.    Correct.

9        Q.    Is it also true that at the

10   time you gave your declaration there was yet

11   another standard, and that was that if the

12   person was found to have acted with the belief

13   that his conduct was unlawful?

14       A.    I believe that is correct.

15       Q.    Can you tell us why that other

16   statement was dropped from what is now being

17   proposed to the Court?

18       A.    I believe that consultation

19   during discussion.

20       Q.    And the debtor has agreed to

21   that phrasing of the claw-back procedure,

22   correct?  Sir, do you believe that that is the

23   appropriate standard to be submitted to the

24   Court for forfeiture?

25       A.    I believe it is appropriate.

32

1     DELPHI CORPORATION, ET. AL.    05-44481-rdd

2          Q.      It is appropriate?  Okay.

3     Fine.  Has the debtor determined any objective

4     criteria for what types of conduct would

5     violate that standard?

6          A.      No.

7          Q.      Can you illuminate that to the

8     Court?  Tell us what those are, if there are

9     any?

10         A.      We're talking about

11    (indiscernible).

12         Q.      Yes, sir.

13         A.      If someone (indiscernible) the

14    number of categories that are listed on hand-

15    held, often delete after a due process,

16    determined to be guilty.

17         Q.      Determined by who to be

18    guilty?

19         A.      By the company.

20         Q.      By the company, okay.  Would

21    the following of false financial statements be

22    something that would trigger that claw-back if

23    someone was found to be guilty of that?

24         A.      Certainly.

25         Q.      What about improperly

33

```
 1    DELPHI CORPORATION, ET. AL.    05-44481-rdd
 2   recording loans of money when in fact, it was
 3   a sale.  What if you improperly recorded a
 4   sale if, in fact, it was a loan?  What about
 5   delaying the timing of the recording of
 6   inventory in violation of the company's
 7   internal accounting policies and procedures?
 8        A.    It could be.
 9        Q.    What about violations of
10   Delphi's code of conduct?
11        A.    It could be.
12        Q.    Why do you -- just for
13   clarification, you keep saying it could be.
14   What?  Why is that the standard you're using?
15        A.    (indiscernible) Due process.
16        Q.    Does the claw-back procedure
17   afford due process to such employees accused
18   of these things?
19        A.    They would go through due
20   process.
21        Q.    Can you explain for the Court
22   was is involved in that due process?
23        A.    I imagine that would be an
24   investigation on the part of the company, to
25   hear all the evidence and the testimony and a
```

34

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    decision would be made.

3         Q.    Is that a time consuming or

4    burdensome endeavor by the debtor?  Or could

5    it be?

6         A.    It could be.

7         Q.    Is the employee entitled to be

8    represented by counsel in such a procedure?

9         A.    I don't know the answer to

10   that (indiscernible).

11        Q.    Under your current standards

12   in place, with dealing with indemnification of

13   an employee and proceedings related to that,

14   is someone entitled to --

15        A.    I think they would be, yeah.

16        Q.    Okay.  And these are based

17   upon the indemnification standard in your by-

18   laws, is that correct?

19        A.    I do believe.

20        Q.    Okay.  So, then the answer

21   would be that if someone were brought through

22   this process, they would be entitled to be

23   represented by counsel.

24        A.    Yes.

25        Q.    Who would pay for that

35

1    DELPHI CORPORATION, ET. AL.   05-44481-rdd

2    counsel?  We have seen testimony, and I

3    believe your testimony was this as well, that

4    it was the belief in fashioning the KECP that

5    if an employee was currently employed by

6    Delphi then they should be eligible as an

7    executive to participate.  Is that correct?

8              MR. BUTLER:  Objection.  Your

9         Honor, counsel just testified what Mr.

10        Webber testified to.  I'd like to know

11        where that testimony is.  I'd like you

12        to refer to the deposition or some piece

13        of paper and repeat the question.

14             THE COURT:  Well I don't know.

15        I think I remember him saying that in

16        his deposition.

17             MR. BECKWORTH:  I'm just trying

18        to move things along.  I can ask it more

19        quickly, just trying to get the process

20        rolling.

21             MR. BUTLER:  All right.  I'll

22        withdraw, Your Honor.

23        BY MR. BECKWORTH:

24        Q.    Your Honor, I'll ask it a

25   different way; it should help.  Is that true

36

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    that you on the compensation committee and the

3    others that were on the compensation

4    committee, started with the premise that if a

5    person was still employed as an executive at

6    Delphi, then they would be allowed to

7    participate in this version of the AIP?

8         A.    It depends on who you ask.

9         Q.    Okay.  And was that based in

10   part on the result of findings by the audit

11   committee?

12        A.    Yes.

13        Q.    And, is it true that the

14   assumption from which you started this process

15   was that if the audit committee had allowed

16   someone to stay on at the company, then they

17   were properly allowed to participate?

18        A.    Correct.

19        Q.    Are you aware of what standard

20   the audit committee used in determining

21   whether someone should be asked to be

22   separated from employment in the company?

23        A.    Not exactly.

24        Q.    Was anyone, to your knowledge,

25   involved with the compensation committee in

37

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    this process, aware of what that culpability

3    standard was, used by the audit committee?

4         A.    Can you rephrase that?

5         Q.    Sure.  To your knowledge,

6    let's go at this way.  Who else was on the

7    compensation committee with you that helped

8    decide about this KECP program?

9         A.    John Opie

10        Q.    In your communication with

11   those individuals and your experience in

12   developing this program, to your knowledge,

13   was anyone aware of what standard the audit

14   committee used in determining whether a

15   person's employment at Delphi should be

16   stopped, terminated?

17        A.    I believe, yes.

18        Q.    Who?

19        A.    Mr. (indiscernible)

20        Q.    Did the compensation

21   committee, let's just say you specifically

22   first, make any effort to compare whether the

23   claw-back standard we just talked about, you

24   remember the good faith and best interest of

25   the company, did you make any effort to

38

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    determine whether that standard was the

3    equivalent of the standard used by the audit

4    committee?

5         A.    I did not.

6         Q.    For all you know, the audit

7    committee standard could have been much

8    higher.

9         A.    Presumably.

10        Q.    Could it have been something

11   like criminal conduct, right?

12        A.    I don't know.

13        Q.    So, you have no idea?  Okay.

14   Is that troublesome to you at all sir, that

15   you started from a premise that people should

16   be allowed to participate in the KECP if they

17   were still employed after the audit committee

18   pleaded its review.  Yet, you don't know what

19   standard of culpability the audit committee

20   used?

21        A.    No.

22        Q.    Why not?

23        A.    Because I believe prophylactic

24   measures we had in place took care of it.

25        Q.    Did you have any prophylactic

39

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2   measures in place at the time that you

3   submitted the proposed KECP to this Court?

4        A.    No.

5        Q.    In fact, it was not until

6   after January 5th, 2006 that KECP program

7   first had prophylactic measures.  Is that

8   correct?

9        A.    I don't know about the date.

10        Q.    Does that sound right to you?

11        A.    January 6th --

12        Q.    January 5th?

13        A.    Could be.

14        Q.    It was very recent, is that

15   right?

16        A.    Uh-huh.

17        Q.    So when you first proposed the

18   eligibility requirements to the KECP, you

19   didn't know whether those claw-back or

20   prophylactic measures would be in place, did

21   you?

22        A.    No.

23        Q.    And to this day, you don't

24   know whether the prophylactic measures that

25   are being used are the same as what the audit

40

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    committee used, or different, do you?

3         A.    No, I don't.

4         Q.    Okay.  Is there any reason, in

5    your mind, why the compensation committee

6    could not take this claw-back standard and use

7    it as a standard for escrowing money?  Let me

8    ask this a little different way.  You have a

9    different standard in place for the escrow

10   provisions, is that correct?

11        A.    Yes.

12        Q.    I'm sorry?

13        A.    Yes.

14        Q.    Those are, and I'll just

15   summarize it, on the first page, lower

16   paragraph.  If a participant is given the

17   right to make a well submission by the FCC, if

18   a participant is sued or informed, or the

19   company is informed that they will be sued by

20   the FCC, that person is notified, or the

21   company is notified that the participant is a

22   target of criminal investigation.  If a person

23   is indicted or agrees to the filing of a

24   criminal information against him, or if the

25   person declines to answer questions on grounds

41

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    of his Fifth Amendment right against self-

3    incrimination.  Any of those things could

4    trigger an escrow, correct?

5         A.    Yes.

6         Q.    Those are higher standards,

7    from a culpability view, than the claw-back

8    provisions which simply are fail to act in

9    good faith, acted against the best interest of

10   the company, are they not?

11        A.    Higher in what way?  Define

12   higher for me.

13        Q.    Well, for instance, the claw-

14   back provision deals with failing to act in

15   good faith and against the best interest of

16   the company, correct?

17        A.    Yes.

18        Q.    But that doesn't rise to the

19   level, perhaps, of being indicted or found to

20   be guilty by a jury?

21        A.    Yes.

22        Q.    Now, let me ask you this.

23   What reason does the compensation committee

24   have for using these five standards that we

25   just listed for escrow as opposed to using the

42

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    threshold standard we talked about on the

3    claw-back provisions?

4         A.    It seems to me that escrowing

5    the (indiscernible) not paid out.  The claw-

6    back, you give it back.  I don't know that the

7    standard is different.

8         Q.    That's your reason?

9         A.    I think so.

10        Q.    Okay.  Is there any

11   preventative reason, or just reason why you

12   could not take that claw-back provision and

13   make that the standard for escrowing money?

14        A.    Not to my knowledge.

15        Q.    If you escrowed money using

16   the claw-back provision, would the employee on

17   the escrow side still be entitled to the

18   proceedings that have the lawyers and due

19   process things that you talked about?

20        A.    They would be.

21        Q.    They would be?

22        A.    Yes.

23        Q.    Unless it was required

24   otherwise by the Court.

25        A.    Yes.

43

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         Q.    I'd like to ask just a few

3    questions, sir, about the investigation or

4    whether there -- let me take that back.  I'd

5    like to ask you, not the results of the

6    investigations that were done, or what

7    actually occurred in those investigations.  I

8    want to ask you about what the compensation

9    committee may have considered in determining a

10   KECP or AIP to present to the Court, okay?

11   You are aware, are you not, that there is an

12   ongoing FCC investigation regarding certain

13   conduct on behalf of either present or former

14   employees at your company.  Is that correct?

15        A.    Yes.

16        Q.    Did the compensation

17   committee, in fashioning this program, do

18   anything to determine whether eligible

19   participants were targets in that FCC

20   investigation?

21        A.    I don't know how they would

22   have known to target somebody.

23        Q.    I have one issue I'd like to

24   take up.  This deals with a confidential

25   matter, and I don't know if -- may, we just

44

```
 1    DELPHI CORPORATION, ET. AL.    05-44481-rdd
 2   approach the bench real quick.  I don't want
 3   to --
 4              THE COURT:  Okay.
 5        BY MR. BECKWORTH:
 6        Q.    -- I don't want to transgress
 7   on the confidentiality privilege.  Try this
 8   again.  Is it true that the compensation
 9   committee did not have before it, in
10   fashioning the KECP, the results of any
11   investigation in relation to the ongoing FCC
12   investigation?
13        A.    Yes.
14        Q.    Is it true that the audit
15   committee of Delphi concluded a special
16   investigation regarding some of the accounting
17   and control improprieties that are going on
18   regarding Delphi, or had gone on regarding
19   Delphi?
20        A.    Yes.
21        Q.    Those have led, in part, to
22   the restatement of Delphi, is that correct?
23        A.    Did the compensation committee
24   rely, in any way, upon the findings of the
25   audit committee, other than what we talked
```

45

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2   about earlier, with the fact that certain

3   employees were allowed to remain at the

4   company?  No.

5       Q.     So you did not -- you or no

6   one else, to your knowledge, at the

7   compensation committee actually looked at the

8   findings by law, or anything of that nature?

9       A.     No.

10      Q.     Are you aware of whether there

11  is a Department of Justice investigation going

12  on here?

13      A.     Huh-uh.

14      Q.     Have you, or anybody, to your

15  knowledge, on the compensation committee,

16  looked at any of the documents or other

17  evidence that's been gathered from that

18  proceeding?

19      A.     No.  I do not know.

20      Q.     Okay.  They were not

21  considered in any way when fashioning the

22  prophylactic measures or the KECP, correct?

23      A.     Uh-huh.

24      Q.     So, I'm correct.  Okay.  Isn't

25  it also true that Delphi had an investigative

46

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    committee or process that involved an outside

3    auditor, PWC and also the law firm Wilmer,

4    Cutler (indiscernible).  Did you, or any

5    person on the audit committee look at the

6    results of those findings, or have you, in

7    fashioning the KECP?

8         A.    Compensation committee.

9         Q.    Yes, sir.  Did you work at any

10   of the exit memos that were prepared for

11   employees who left Delphi?  Executive

12   employees who quit or were terminated?

13        A.    I don't know.

14        Q.    To your knowledge, has anyone

15   on the compensation committee done that?

16        A.    Not to my knowledge.

17        Q.    At the time of your

18   deposition, you had not read the consolidated

19   class action complaint that was filed by the

20   securities lead plaintiffs, is that correct?

21        A.    It's too big.

22        Q.    Yes, sir.  You have read our

23   objection.

24        A.    Uh-huh.

25        Q.    After looking at our

47

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    objection, did you endeavor to investigate any

3    of the allegations in --

4         A.    No.

5         Q.    To your knowledge, has anyone

6    on the compensation committee done that?

7         A.    Not that I know.

8         Q.    That's witness, Your Honor.

9              THE COURT:  Okay.

10             MR. BUTLER:  Your Honor, the

11         next party would be the PBGC on a cross.

12             MR. WILSON:  Good afternoon,

13         Your Honor, Eric Wilson for the PBGC.

14         Your Honor the issues of concern to the

15         PBGC are largely identical raised by the

16         committee, so we'll be deferring to the

17         committee on this proceeding.

18             THE COURT:  Okay.  Very well.

19             MR. WILSON:  Thank you.

20             MR. BUTLER:  Your Honor, the

21         last cross examiner would be the

22         committee.

23             THE COMMITTEE:  No questions

24         here, Your Honor.

25             MR. BUTLER:  Your Honor, the

48

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        debtors have no re-direct.

3            THE COURT:  All right.  Let me

4        just see if I have any questions.  Mr.

5        Webber, in addition to being the

6        secretary of the compensation committee,

7        you're the EBP of Human Resources?

8            THE WITNESS:  Yes.

9            THE COURT:  So, you generally

10       are in charge of personnel matters

11       throughout the entire corporate

12       structure.  As I read your affidavit and

13       Mr. Bogdnavich's as well, I take it that

14       the reason that the debtors are seeking

15       approval of the annual incentive plan is

16       that they believe that without it

17       they're not competitive with other

18       comparably situated companies.  Is that

19       correct?

20           THE WITNESS:  That's one of the

21       reasons.

22           THE COURT:  And what are the

23       others?

24           THE WITNESS:  The organization,

25       the executive organization, first of

49

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         all, needs to have a competitive

3         compensation program, so you are correct

4         on that aspect, Judge.  Without this

5         piece of compensation, they know that

6         their competitive opportunity will lag

7         behind other competitors.  We can figure

8         them out.  Without it, we believe, we

9         would have possibly demoralized

10        organization and we would have the

11        accelerated perks that we're seeing

12        continuing, possibly even getting more

13        accelerated to go.  So it's a number of

14        reasons why we don't have this

15        (indiscernible) potential for

16        (indiscernible)

17             THE COURT:  Well, have people

18        told you that the reason they've quit is

19        that they are not getting a bonus?

20             THE WITNESS:  At their exit

21        interview, I have not seen those kind of

22        perks summarized like that.  The basic

23        thread going through them is that they

24        seek other opportunities outside Delphi

25        that will, simply, encourage them to go

50

1   DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        to competitive compensation.

3              THE COURT:  Are those

4        opportunities in the automotive industry

5        or are they generally in just big

6        business?

7              THE WITNESS:  People have left

8        Delphi to go to companies inside and

9        outside the automotive industry.

10             THE COURT:  Mr. Bogdnavich's

11       affidavit says that, at least for the

12       period from 2001 through 2004, there was

13       only one year in which there was any

14       bonus paid.  Is that correct?  Was that

15       a full bonus then?

16             THE WITNESS:  A partial bonus.

17             THE COURT:  If -- does the

18       debtor believe that these bonuses

19       actually will end up being paid?

20             THE WITNESS:  It's hard to

21       know; we are talking about it now.  We

22       always believed that the above average

23       stocks, solid business plan, there was a

24       potential to receive the bonus, and

25       that's what's fair.  You have to believe

51

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         you have the chance to achieve these

3         opportunities.  It's not a guarantee,

4         just a chance.

5              THE COURT:  He said, that in

6         Mr. Bogdnavich's affidavit, I believe,

7         he said, that if you look at just the

8         base salary component of executive

9         compensation, as I read it, it was

10        actually in the, either in the top 25

11        percent or the top 40 percent depending

12        on what level you were at.  If, and he

13        said that, I guess this is correct.

14        I'll ask him about this, but in

15        comparison to competitors who apparently

16        are able to pay their bonuses, if you

17        factor in that amount, also, of the

18        compensation, that the executives earn

19        the bottom 25 percent.

20              THE WITNESS:  That's correct.

21              THE COURT:  Okay.  If these

22        bonuses are paid in the target amount,

23        the roughly 20 million as opposed to the

24        38, what percentage would it place the

25        employees vis-a-vis their competitors?

52

1    DELPHI CORPORATION, ET. AL.   05-44481-rdd

2              THE WITNESS:  Is it a cash

3         business we are talking about?

4              THE COURT:  Well the ARP plus

5         their base salary?

6              THE WITNESS:  You can answer

7         better than we can.  My guess would be

8         its something upper (indiscernible).

9              THE COURT:  Okay.  So, around

10        75 percent.

11             THE WITNESS:  I guess,

12        depending upon the (indiscernible)

13             THE COURT:  Okay.  The people

14        who are leaving, obviously must be aware

15        of the debtors' announcement that they

16        are going to, in addition to negotiating

17        with GM and the unions and the

18        creditors, that they're going to

19        rationalize their business, including

20        getting out of various plants and the

21        like.  Is that right?  I mean, that's

22        been publicly reported, I'd assume it's

23        generally knowledge among the

24        executives.

25             THE WITNESS:  Yes, they've

53

1   DELPHI CORPORATION, ET. AL.   05-44481-rdd
2       heard that discussion, yes.
3               THE COURT:  Are the people who
4       have left in the last year, have they
5       been replaced?
6               THE WITNESS:  Some of them have
7       been replaced, some of them are in the
8       process of being replaced.
9               THE COURT:  So there is --
10      another way to ask this is -- the
11      debtors believe that there is a need to
12      replace them?
13              THE WITNESS:  Yeah.
14              THE COURT:  It's not just that
15      they're leaving and its not -- given
16      that the debtors are going to be
17      downsizing aspects of this business
18      anyway, you don't need to replace them.
19              THE WITNESS:  They've been
20      through some efficiency planning.  But
21      by and large, these people are going to
22      be replaced.  Those things have not
23      disappointed.
24              THE COURT:  When you look at
25      the cost of the bonuses being sought

54

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         here, how does that stack up with the

3         cost of replacing someone?

4              THE WITNESS:  It would vary

5         individual by individual.  A senior

6         executive probably costs more to replace

7         initially because you have a finder's

8         fee when you search for an executive.

9         They typically ask for a sign-on bonus

10        or a year and keep bonus and typically,

11        comes to a base pay increase, which

12        could be equal.  So, I would say on

13        balance it would cost more to replace

14        than to pay the bonus.

15             THE COURT:  Okay.  Thank you.

16             MR. BUTLER:  Thank you Mr.

17        Webber.  Your Honor, the debtors now

18        call Mr. Nick Bogdnavich from the Watson

19        Wyatt firm to -- for cross examination

20        in connection with his declaration,

21        which has been admitted into evidence as

22        Exhibit number 17.  Mr. Bogdnavich?

23             (Witness is duly sworn)

24             THE COURT:  Okay.

25             MR. BUTLER:  Your Honor, by

55

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2          virtue of the designations of testimony,

3          with respect to Mr. Bogdnavich at

4          Exhibit number 32 which has been

5          admitted into evidence, the first two

6          objectors, the IUE and the UAW passed

7          direct cross examination.  The next

8          opportunity would go to the United Steel

9          Workers.

10               MR.BECKWORTH:  Steel Workers

11          pass at this time.

12               THE COURT:  Okay.

13               MR. BUTLER:  The next

14          opportunity would go to Wilmington Trust

15          Company.

16               MR. FOX:  I don't have any

17          questions at this time.

18               MR. BUTLER:  The next

19          opportunity for cross examination would

20          go to the lead plaintiffs.

21               MR. ANGELOVICH:  We pass Your

22          Honor.

23               MR. BUTLER:  And the PBGC is

24          passed as well as US Trustee.  That

25          would leave the creditors committee.

56

1     DELPHI CORPORATION, ET. AL.    05-44481-rdd

2             MR. ROSENBERG:  Pass, Your

3        Honor.

4             THE COURT:  All right.  Mr.

5        Bogdnavich, I guess you heard my earlier

6        questions of Mr. Webber.  Was he right

7        that if the target is met here, the

8        roughly 20 million, the mid-target, that

9        the combination of benefits, salary and

10       AIP would put the executives roughly in

11       the top 25 percent?

12            THE WITNESS:  That's correct.

13       Looking at the cash compensation only,

14       it would be the sum of salary and target

15       annual incentives.  Assuming there are

16       adjustments the pay would be

17       approximately 75 percent.

18            THE COURT:  Your introductory

19       clause, I just want to make sure I

20       understand that.  Do you mean to say

21       that when you're comparing these

22       people's compensation arrangements with

23       the competition, that the competition

24       also has an extra component of some

25       other long-term plan that these don't?

57

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2              THE WITNESS:  Yes.  If you look

3         at the exhibit that is on the easel, you

4         can see that at Corporate America there

5         are generally three components to the

6         pay structures; salary, the annual

7         incentive opportunity and the long term

8         incentive.  Now, at Delphi preferably

9         when you have add all three to the

10        structure, and assuming that you can pay

11        target pay for the annual incentives,

12        target rewards are a lot of money.  To

13        then pay a little bit above the median

14        compared to its peers.  Stated another

15        way, another way to analyze it would be

16        that the cash pay that Delphi has a

17        larger portion of the holdover mix with

18        structures than it does in other

19        companies.

20             THE COURT:  So if you factor in

21        competitors non-cash pay component,

22        which I guess is stock option plans,

23        where does that place Delphi's workers?

24             THE WITNESS:  Either at or

25        slightly above the median.

58

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2              THE COURT:  Okay.  When you

3         looked at this, did you look at the time

4         when these workers, these executives

5         came on to Delphi?  Generally, when did

6         they start working for Delphi?

7              THE WITNESS:  I don't know.  I

8         would assume that it's different for

9         different executives.  Some have been

10        there for years, and others are

11        relatively new.

12             THE COURT:  But you didn't

13        break that out?

14             THE WITNESS:  I didn't.

15             THE COURT:  Okay.  So, if

16        someone got a signing bonus, that

17        doesn't figure into this.

18             THE WITNESS:  That's correct,

19        except to the extent that the signing

20        bonus would count against the bonus

21        earned under the annual salary.

22        Sometimes provisions are drafted up, I

23        do not know --

24             THE COURT:  But this doesn't

25        have that?

59

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2              THE WITNESS:  That would only

3        be in an individual case.

4              THE COURT:  All right.  Right,

5        if you got a signing bonus -- I see.  I

6        take it that Wyatt -- let me ask you did

7        Wyatt have anything to do with the

8        actual target being set, or was that

9        something that the board, I imagine, had

10       set?

11             THE WITNESS:  That was derived

12       from management's business department.

13             THE COURT:  Okay.  Is the

14       formula that's applied to the targets, a

15       formula that's consistently used in

16       these types of annual incentive plans?

17       That is, if you're below the target by a

18       certain percentage you get -- you don't

19       -- you're not just wiped out of your

20       bonus, you get a percentage of the

21       bonus.  Is that typical?

22             THE WITNESS:  Yes.

23             THE COURT:  And are these

24       percentages typical?

25             THE WITNESS:  Yes.

60

1    DELPHI CORPORATION, ET. AL.   05-44481-rdd

2              THE COURT:  Okay.  All right.

3         In your view, as an outsider, how

4         significant is it to retaining the

5         executives at this company that this

6         annual incentive plan be put in place?

7              THE WITNESS:  I think it's fair

8         and appropriate to be in the debtor's

9         best interest to provide opportunities

10        for incentive compensation for

11        (indiscernible).  Again, the key word is

12        opportunities.  The performance has to

13        be a certain performance for a mutual

14        (indiscernible) to work out.

15        Essentially all it is, is providing them

16        with an opportunity of competitive

17        payable and is consistent of those of

18        their peers.

19             THE COURT:  Okay.  Thank you.

20             MR. BUTLER:  Can I ask a

21        question, Your Honor?

22             THE COURT:  Sure.

23             MR. KENNEDY:  Tom Kennedy, Your

24        Honor, for the IUE.

25        BY MR. KENNEDY:

61

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        Q.      Isn't it correct, sir, that

3    you do not have expertise in labor relations?

4        A.      Yes.

5        Q.      And the plan that you drafted

6    for Delphi, would you have drafted or proposed

7    essentially the same plan whether it had a

8    unionized work force or not?

9        A.      The answer is probably yes.

10       Q.      So, is it fair to say that

11   your analysis of the plan as being in the

12   interest of the debtors is not based on a

13   comparison of the dangers that the plan might

14   pause, or rather cause, to the eventual

15   successful resolution of collective bargaining

16   negotiations?

17       A.      I have no knowledge about the

18   effect my plan may have on individuals.

19            MR. KENNEDY:  Enough.  Thank

20       you.

21            THE COURT:  Do you have any

22       redirect?

23            MR. BUTLER:  Your Honor, for

24       the record Mr. Bogdnavich referred in

25       his responses to the Court, I referred

62

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         to a document that was on an easel.

3    That is, for the record, Exhibit number 1 of

4    the trial exhibits for the trial today.  Your

5    Honor, the debtors would now call our final

6    witness, and place Mr. John D. Opie, who is

7    our outside lead director of the independent

8    board of directors to be available for cross

9    examination in connection with his declaration

10   which has been filed and admitted into

11   evidence as Exhibit number 18.

12        (Witness is duly sworn)

13             MR. BUTLER:  Again, it is my

14        understanding by virtue of having, and

15        now its stating the fact the IUE asked

16        some questions, I'll ask it again.  The

17        last witness, by virtue of having

18        designated Exhibit 33, which is in

19        evidence, with respect to Mr. Opie's

20        deposition, my understanding, is that

21        both the IUE and the UAW pass cross

22        examination, is that correct?

23             THE COURT:  Correct, pending

24        any questions that might be asked.  That

25        takes us to United Steel Workers.

63

1    DELPHI CORPORATION, ET. AL.   05-44481-rdd

2              MR. BECKWORTH:  Pass at this

3         time.

4              MR. BUTLER:  The next

5         opportunity goes to Wilmington Trust

6         Company.

7              MS. LEONHARD:  I don't have any

8         questions.

9              MR. BUTLER:  The next

10        opportunity goes to the lead plaintiffs.

11             MR. ANGELOVICH:  A brief cross

12        examination, Your Honor.

13             THE COURT:  Okay.

14             MR. ANGELOVICH:  May it please

15        the court, Your Honor, my name is Jeff

16        Angelovich, I'm with the law firm of

17        Nix, Patterson and Roach in

18        Daingerfield, Texas; here on behalf of

19        the lead plaintiffs in the

20        securities litigation.  If it pleases

21        the Court, I'd like to proceed with the

22        cross examination.

23             THE COURT:  That's fine.

24        BY MR. ANGELOVICH:

25        Q.    Mr. Opie, how are you this

64

1      DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    afternoon?

3          A.      Fine.

4          Q.      You are the lead independent

5    director of the debtors, is that correct?

6          A.      Yes.

7                  THE COURT:   You have to speak

8          up just a little because the microphone

9          is over the desk.

10         BY MR. ANGELOVICH:

11         Q.      Would you please tell the

12   Court how long you have held that position

13   with the debtor?

14         A.      Since 2002.

15         Q.      To the present day?

16         A.      Yes.

17         Q.      And during that same period of

18   time that you've been on the compensation

19   committee at Delphi?

20         A.      (Indiscernible).

21         Q.      And, of course, then that

22   would apply equally, as well, to the audit

23   committee?

24         A.      Yes.

25         Q.      And is it true that the

65

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    ultimate determination of who is or is not

3    going to be a KECP participant is going to be

4    made by the compensation committee?

5         A.    Yes.

6         Q.    And, of course, they take

7    recommendations, I assume, from human

8    resources or personnel, prior to making that

9    decision?

10        A.    (Indiscernible).

11        Q.    And as such, it would make

12   sense that the compensation committee was

13   actually involved in drafting\ what we call

14   either the prophylactic or the safe harbor

15   provisions of the KECP.  Is that correct?

16        A.    Yes.

17        Q.    You were also in that role,

18   involved in developing the events that would

19   trigger the placement of KECP payments into

20   escrow?

21        A.    The discussion of how we came

22   out with that report

23        Q.    And I understand from your

24   deposition that you didn't draft the words

25   that were put in the document, but you were

66

1     DELPHI CORPORATION, ET. AL.     05-44481-rdd

2     involved in the process in deciding what

3     needed to be done.  Correct?

4         A.     Yes.

5         Q.     Okay.  Mr. Webber was a little

6     bit unsure of the date.  Does it seem to be

7     consistent with your recollection that the

8     process of developing these safe harbor

9     provisions began in January of this year,

10    after Judge Drain indicated some hesitance in

11    approving the program without those measures?

12        A.     It was my understanding of how

13    it was developed, was in common discussions,

14    including creditors that ourselves, in terms

15    of being comfortable that the right people

16    were paid and the wrong people were not paid.

17    So that it was developed over a period of

18    time.

19        Q.     Okay.  Was this being

20    discussed in October of '05, when the original

21    KECP plan was filed with this Court, shortly

22    after the debtor filing bankruptcy?

23        A.     To the best of my

24    recollection, in that form, no.

25        Q.     So that preceded somewhere

67

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    down between that date and where we are today?

3         A.    Yes.

4         Q.    Okay.  Is it a fair summary

5    that the goal of the safe harbor provision, is

6    to make sure that no executive is paid under

7    the KECP that does not deserve to be paid?

8         A.    Yes.

9         Q.    Okay.  And, within that

10   category of executive that doesn't deserve

11   payment, would you agree that that would

12   include individuals who are -- that may have

13   participated in conduct that's the subject of

14   the SEC investigation?

15        A.    They were found to be involved

16   in inappropriate accounting, yes.

17        Q.    Yes, sir.  And, similarly, it

18   may not, necessarily, but it may involve

19   individuals who are the subject of the conduct

20   of the Department of Justice investigation,

21   correct?

22        A.    Yes.

23        Q.    Okay.  And, I suppose it would

24   also include individuals who may have

25   participated in the events that led to Delphi

68

1      DELPHI CORPORATION, ET. AL.     05-44481-rdd

2    restating the financial records?

3          A.     Yes, there's some relationship

4    between the two, but yes.

5          Q.     Okay.  And, just to make sure

6    I'm clear from Mr. Webber's testimony, from

7    your declaration, your deposition, in the

8    past, and as best I can tell going forward in

9    the future, the compensation committee is

10   relying on the audit committee to do an

11   investigation or committees of the audit

12   committee to do an investigation, and

13   determine whether potential beneficiaries were

14   involved in something improper.  Is that

15   correct?

16         A.     Generally, yes.

17         Q.     Okay.  And, as far as you

18   understand it, and of course, you're on the

19   audit committee, I'm not going to ask you any

20   details, but they are continuing to cooperate

21   with any ongoing governmental investigations,

22   is that correct?

23         A.     Yes, it is.

24         Q.     So, I want to break it up just

25   real briefly into the past and what we see

69

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    going on in the future.  For those, and we'll

3    call them employment actions that the audit

4    committee has taken, I think I've seen that

5    term in maybe your declaration, actions that

6    they've taken in the past, if an employment

7    decision regarding an executive who was deemed

8    inappropriate by the audit committee, it was

9    the position of the compensation committee

10   that that person would already be off the

11   payroll.  Is that correct?

12        A.    Yes.

13        Q.    And, as such, it's a natural

14   conclusion, that if they're not on the

15   payroll, they're not going to get paid under

16   the KECP?

17        A.    Yes.

18        Q.    Okay.  Is it also correct that

19   going forward in the future, the compensation

20   committee continues to rely on the audit

21   committee, to continue their investigations?

22        A.    We rely on them continuing to

23   give us feedback in terms of any additional

24   and extras that are taken.

25        Q.    Okay.  The compensation

70

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    committee is not independently undertaking any

3    investigations to determine whether certain

4    beneficiaries should be eligible.  Okay.  And

5    I recall from your deposition, and I just want

6    to make sure that this statement is something

7    you want to stand with, is if the audit

8    committee takes action regarding a KECP

9    participant in the future, that your committee

10   or your other committee, the compensation

11   committee is immediately going to take him off

12   the KECP program?

13        A.      It depends on the nature of

14   that feedback, of course, in terms of what

15   action and what the implications are.  But if

16   the recommendation is that they're leaving the

17   payroll, then they would no longer be

18   eligible.

19        Q.      Okay.  Okay.  I want to talk

20   to you about the safe harbor provisions a

21   little bit.  Would it help you to have a copy

22   of that in front of you?

23        A.      It would.

24        Q.      Okay, let me get you one real

25   quick.  This also reads Exhibit 5 in the big

71

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    book there.  I have one.  Your Honor, may I

3    approach --

4                THE COURT:  Yes.

5                MR. ANGELOVICH:  -- just give

6         him one of these.

7    BY MR. ANGELOVICH:

8         Q.    I want to talk first, if we

9    can, and just briefly, about what I call

10   escrow triggering events.  And in that sheet

11   you have in front of you which is Exhibit 5,

12   it seems to me, and I tried to nudge Mr.

13   Beckworth because I think he missed a couple

14   when he was doing his cross examination, but

15   in the first paragraph there are a couple

16   things that can trigger escrow.  The debtor

17   asserts a claim, that's one.  The official

18   committee of unsecured creditors could inform

19   the debtor that they're going to come to the

20   judge here and say, can we file a claim, and

21   then proceed to do so.  So those are the first

22   two.  Then we have this notice, in the second

23   paragraph, the notice of the right to make a,

24   well, submission by the SEC.  Maybe the

25   participant or the committee's told that the

72

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    person's going to be sued, or has been sued by

3    the SEC, notified that they're the target of a

4    criminal proceeding, indicted or agrees to

5    filing over criminal information, or declines

6    to answer questions based on his fifth

7    amendment right.  Are those all triggering

8    events?

9         A.    Yes.

10        Q.    Mr. Opie, there is nothing in

11   that list that ties any audit committee action

12   regarding the KECP participant to the

13   escrowing of any payment.  Is that correct?

14        A.    I don't quite understand the

15   question.

16        Q.    Well, based on the exclusive

17   list, and you would agree that this is an

18   exclusive list --

19        A.    I would agree that the list

20   that's been established and agreed upon

21   between the two parties, the creditor and the

22   debtor.

23        Q.    And as such, on that list of

24   seven triggering items, none of them are

25   actions taken by the audit committee, is that

73

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    correct?

3         A.     They made the observations

4    made by the audit committee (indiscernible).

5         Q.     Observations by the audit

6    committee is not on the list either, is that

7    correct?

8         A.     (Indiscernible) they would

9    observe it, and then take action, and

10   recommend to the (indiscernible) committee

11   that they, that action be taken on the

12   individual, and, therefore, would be exempted

13   from the KEPC account.

14        Q.     Well, sir, and I understand

15   that that may be your interpretation of this

16   document, that document doesn't say that.  Is

17   there anything in those provisions either

18   requiring or authorizing the compensation

19   committee to escrow funds?  I'm going to ask

20   this one more time in response to audit

21   committee activity.

22        A.     Since their statement

23   (indiscernible).

24        Q.     Is there anything in these

25   first two paragraphs that either requires or

74

1      DELPHI CORPORATION, ET. AL.    05-44481-rdd

2     authorizes the compensation committee to

3     escrow funds in response to audit committee

4     actions?

5          A.     No, it doesn't say it here,

6     but it wouldn't be too --

7          Q.     Does it say it there?

8          A.     I haven't looked where it

9     specifically says that, but we've said it many

10    times, that we have no interest or intent to

11    pay anyone that doesn't deserve to be paid by

12    us.

13         Q.     Okay.  So maybe these

14    provisions would be better if that was

15    explicitly spelled out.  Is that a fair

16    statement?

17         A.     It's a fair statement.

18         Q.     Okay.  Now let's turn the page

19    real quick and look at their forfeiture, claw-

20    back standards.  And, I know you were in the

21    court room when Mr. Webber was giving his

22    testimony, and so I'm not going to go through

23    the standard again, but as it was read, it's a

24    good faith standard.  Is that a fair

25    statement?

75

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        A.    Yes.

3        Q.    All right.  Do you agree with

4    Mr. Webber that it is the appropriate standard

5    to determine the eligibility for KECP

6    participation?

7        A.    Do you mean, should they be on

8    the payroll or not?

9        Q.    No, sir.  Whether they acted

10   in good faith or failed to act in good faith

11   and in a manner the company reasonably

12   believes to have been or not opposed to the

13   best interest of the company.

14       A.    Yes.  Our first test is there

15   on the payroll.  (Indiscernible) they are

16   acting on bad behavior.

17       Q.    Okay.  Now, Mr. Webber

18   testified that he believed that you knew both

19   the standard that the audit committee used in

20   their investigation and the standard that's

21   set forth in this document.  Is that a correct

22   statement?

23       A.    Yeah.  I think that's correct.

24       Q.    Can you tell me what that

25   standard is --

76

```
 1     DELPHI CORPORATION, ET. AL.    05-44481-rdd
 2                MR. BUTLER:  Objection.
 3   BY MR. ANGELOVICH:
 4        Q.    You are a committee employee.
 5                MR. BUTLER:  Objection Your
 6         Honor, we are now going into what the
 7         audit committee did in its
 8         investigation.  Your Honor ruled in pre-
 9         trial motion, that wasn't part of this
10         deal.
11                MR. ANGELOVICH:  Your Honor,
12         briefly, that's correct, Your Honor did
13         rule that.  What the debtor is asking
14         this Court to do is to say, well, the
15         compensation committee is going to rely
16         on whatever the audit committee does.
17         Take our word for it, the standard that
18         the audit committee used, is using, is
19         appropriate, and I don't know -- I think
20         based on their reliance, at least on the
21         results of that, at a minimum, we're
22         entitled to know that.
23                MR. BUTLER:  Your Honor, that's
24         now what the KECP AFP motion says.  What
25         you said to ask the Court to be
```

77

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         comfortable with the prophylactic, safe

3         harbor provisions be put in.  That's

4         been -- that's the way this has been

5         constructed.  And not to go into what

6         the audit committee thought or didn't

7         think or what standards they used, or

8         what the investigation was or any of

9         those other matters that the lead

10        plaintiffs were so interested in delving

11        into.

12             MR. ANGELOVICH:  You know, Your

13        Honor, I appreciate the significance of

14        the fact that we have the securities

15        case on the bottom.  We are here because

16        we believe this KECP program is

17        inappropriately lenient, and believe

18        that the prophylactic measures are

19        inappropriate.  That's the reason we're

20        here.  The Court has made it very clear

21        that we're not getting, going to get any

22        discovery on this, but I think it's also

23        very clear that if they are going to sit

24        back and by that, I mean Delphi's

25        compensation committee, and wait and see

78

```
 1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

 2        what the audit committee does.  We at

 3        least should know what standard that is.

 4            THE COURT:  But the audit, when

 5        you say what the audit committee does, I

 6        mean, that was a question I had with the

 7        original question, which is someone

 8        named by the audit committee?  I think

 9        they're very different.  They may well

10        be very different points. I mean, you

11        can name people in different ways doing

12        different things.

13            MR. ANGELOVICH:  And, Your

14        Honor, that's correct and perhaps I was

15        imprecise.  I'll tell Your Honor that

16        I'll be upfront until the court order

17        can surface.  If the audit committee is

18        using a criminal standard, that's

19        something that gets close to

20        willfulness.  They may not take an

21        employment action against somebody who

22        has failed to act in the good faith of

23        the company and in a manner that the

24        company reasonably believes to have been

25        in or not opposed to the best interest.
```

79

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         And so, our point is, without knowing

3         that standard, there may be people who

4         are filtering through the audit

5         committee who don't meet this standard.

6         Yet, at the same time, they are relying

7         on the audit committee to weed those

8         very people out, in those terms.

9              MR. BUTLER:  No, I think you

10        are assuming, you say they are relying

11        on the audit committee to weed those

12        people out, I think that's not an

13        assumption you should make.

14        It's information that is relevant to

15        them, but it's not the only basis.

16             MR. ANGELOVICH:  Okay, Your

17        Honor.

18             THE COURT:  I think you can,

19        you know -- consistent with my earlier

20        rulings, I think you can certainly ask

21        me to read into my evaluation of this

22        motion, the fact that they're not

23        revealing this information.  But, now

24        I'm seeing the two off against each

25        other, I don't think it's, I mean,

80

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         because they are not directly tied

3         together, I don't think its, it -- it is

4         so important to learn what their

5         standard is, overriding the other issues

6         that, that we've had other hearings

7         about, as to why were not having

8         discovery on that point.

9              MR. ANGELOVICH:  Your Honor --

10             THE COURT:  I'll sustain the

11        objection.

12             MR. ANGELOVICH:  And I'll

13        reserve that argument and move on to my

14        last few questions.

15             THE COURT:  Okay.

16   BY MR. ANGELOVICH:

17        Q.    Mr. Beckworth asked Mr. Webber

18   this question, and I'm going to ask you this

19   question.  What consideration, if any, did the

20   compensation committee give to the idea of

21   applying this good faith standard to the

22   triggering of escrow funds?  Put it up on the

23   front end and make that decision?

24        A.    Well, when we put the flyer

25   together, we were ready to go.  We eased the

81

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    storm that those on the payroll would be

3    considered as partners.  We had no reason to

4    believe or pick or choose any employee, having

5    (indiscernible) and the escrow held back.

6    But, at some point during the process, and/or

7    during the program, in ended up needing to be

8    entertained when we, being the escrow account,

9    began to surface?

10        Q.    Okay.  Was there an

11   impediment, or is there an impediment to the

12   compensation committee obtaining access to

13   exit interviews?

14        A.    I would say there's no

15   impediment, but it's not a practice.  It's not

16   something we do.  We don't get into that

17   depth.  What we can count on the feedback from

18   HR and the administration, in terms of the

19   kinds of reasons that the people are leaving.

20        Q.    Is there an impediment to the

21   compensation committee obtaining the results

22   of the audit committee investigation?

23        A.    You know, you keep -- we can't

24   put a wall between the two, it is confidential

25   and we are convening with the SEC and the POJ

82

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    on the audit side and we don't have that open

3    and cover for the rest of the topic.

4         Q.    Would there be something -- is

5    that, that's just an internal decision.

6    There's not actually something that precludes

7    you from doing it.

8         A.    If you recall, I would say

9    that would be a decision with all the parties

10   involved.

11        Q.    Okay.  Is there any impediment

12   to the compensation committee obtaining

13   whistleblower reports?  Or would it be the

14   same as the answer you just gave?

15        A.    No.  A whistleblower report

16   might come in from another avenue, another

17   channel, through an ombudsmen, kind of input

18   through HR so, no, that would go -- a

19   whistleblower report didn't go with the audit.

20        Q.    Okay.  And in fact, sometimes

21   those can go to you.  There's a provision that

22   allows for that, correct?

23        A.    There used to be one, but it

24   generally goes through the audit committee.

25        Q.    And then, finally sir, what

83

1    DELPHI CORPORATION, ET. AL.     05-44481-rdd

2    consideration, if any, did the compensation

3    committee give to the cost, consider the cost

4    to the debtor to recoup KECP payments that

5    were already made, rather than escrow, if it

6    came to that?

7          A.      The cost of getting the

8    payment back?

9          Q.      Yes.

10         A.      I don't -- we just assumed

11   that if there was a situation where there may

12   need to be asked for a lien or called back,

13   that we would do that.

14         Q.      Okay, and I want to talk about

15   a situation where it's not in escrow, where

16   it's just been paid and then you decide later

17   on, well, we need to call that back.  Did the

18   compensation committee sit down and decide,

19   well, what it is going to cost the debtor to

20   go out and recoup that money, rather than just

21   holding it on the front end, until a final

22   decision was made?

23         A.      Well, we didn't because we

24   assumed that if it was appropriate to call it

25   that.  That it was -- if we reached only

84

1      DELPHI CORPORATION, ET. AL.     05-44481-rdd

2      (indiscernible) then we would make those

3      decisions as we move forward, but we would

4      rather (indiscernible).

5           Q.     Thank you sir, I'll pass the

6      witness.  Thank you, Your Honor.

7                THE COURT:  Okay.

8                MR. BUTLER:  Your Honor, the

9           only other party that's reserved cross

10          examination is the committee.

11               MR. BUTLER:  No questions, Your

12          Honor.

13               THE COURT:  Okay.

14               MR. BUTLER:  Your Honor, I have

15          some brief re-direct, or does the Court

16          want to ask --

17               THE COURT:  Well, maybe you'd

18          better wait till I ask the questions, in

19          case you might want to ask some more.

20          Am I right that none of the AIP payments

21          will be made until at least six months

22          down the road?

23               THE WITNESS:  We would -- we

24          would see them to be paid, if I'm

25          correct, I have to refer to some of the

85

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2          experts, in the end of June, beginning

3          of July when we get the results of the

4          first quarter.

5                THE COURT:  So, it wouldn't be

6          -- it's basically a six month then.

7                THE WITNESS:  Yes.

8                THE COURT:  Okay.  Mr., I

9          forget whether it was Mr. Webber or Mr.

10         Bogdnavich, you said that the targets

11         were from the company's business plan?

12               THE WITNESS:  Yes.

13               THE COURT:  Is that the

14         business plan upon which the company is

15         premising the negotiations with the

16         union?

17               THE WITNESS:  That's the

18         business plan that was developed by the

19         union for teams, so the answer to that

20         would be yes.

21               THE COURT:  Okay.

22               THE WITNESS:  But we have named

23         (indiscernible) by going for this

24         (indiscernible) and making certain

25         assumptions, that we hadn't made yet,

86

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         nor do we have a management team that's

3         going to describe (indiscernible).

4              THE COURT:  That was my next

5         question.  Is it -- well first of all,

6         are you familiar with the development of

7         the business plan and its basic

8         assumptions?

9              THE WITNESS:  Yes, Your Honor.

10             THE COURT:  Is, I guess you

11        heard, the answer to the earlier

12        question that at least from 2001 through

13        2004 there was only a partial bonus, and

14        that was only paid once.  Is it your

15        view that, unlike that situation, this

16        target is easily met?

17             THE WITNESS:  No, over the

18        years (indiscernible) increase the

19        (indiscernible) for all of us together.

20        And, second, (indiscernible).

21             THE COURT:  Do these targets

22        assume the -- either the contextual

23        restructuring or the implementation of

24        the proposal to the unions?

25             THE WITNESS:  No.  The exempted

87

```
1    DELPHI CORPORATION, ET. AL.   05-44481-rdd

2         the benefit and/or the credit that you

3         would receive (indiscernible) and

4         (indiscernible).

5              THE COURT:  Okay.  All right.

6    BY MR. BUTLER:

7         Q.    Mr. Opie, just a couple of

8    questions on re-direct.  Did you have occasion

9    to personally become involved in the

10   discussions with the creditors committee with

11   respect to the KECP?

12        A.    Yes, I did.

13        Q.    In fact, you were designated

14   as one of the two negotiators from the

15   company, to talk with the credits crew, wasn't

16   that correct?

17        A.    Yes.

18        Q.    Do you recall why the

19   creditors committee wanted you to be involved

20   as the lead independent director of the

21   company?

22        A.    No, I don't recall the reason,

23   but they requested that Steve Miller, the CEO

24   and myself meet them in New York to have a

25   discussion, hoping that there could be a union
```

88

1      DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    of the minds and we could listen to their

3    concerns.  And we, in turn, could give them

4    our concerns.

5         Q.     Do you participate in the

6    KECP, Mr. Opie?

7         A.     No, I don't.

8         Q.     Does Mr. Miller participate in

9    the KECP?

10        A.     No, he doesn't.

11        Q.     Do you recall whether that

12   meeting occurred in the fourth quarter of last

13   year in December or at some other time?

14        A.     December 19th, I remember it

15   well.  It's the Christmas holidays in New

16   York.

17        Q.     And did the subject of safe

18   harbor and prophylactic provisions come up in

19   the discussions you had there with the

20   committee in terms of trying to sort through

21   how this money might be paid?

22        A.     Not in that format, or not

23   with that in mind, but it did come up that

24   there was great concern that we pay the

25   appropriate people, and we do not pay those

89

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    that His Honor and the rest have expressed

3    concerns about.  We paid people that

4    (indiscernible).

5        Q.    And the discussions that

6    continued throughout the month of December

7    lead to those -- lead eventually to those

8    prophylactic provisions being adopted?

9        A.    Yes, I think (indiscernible).

10   Many know that there were several versions

11   that were floating through (indiscernible).

12       Q.    Can you look back at Exhibit 5

13   in this big book, or you could look, I think

14   you still have the prophylactic version in

15   front of you, Mr. Opie.  So, you can look at

16   that.  That's Exhibit 5.  Would you just look

17   at the front page, the escrow requirements and

18   in the first paragraph there's a provision

19   that says that there'd be an escrow in the

20   event that the debtors asserted their claim.

21   Do you see that?  It's about five, six lines

22   down?  From the first paragraph, you could

23   just read the first paragraph up through where

24   it talks about the debtors asserting a claim.

25       A.    All right.

90

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         Q.    Mr. Opie, I just ask you, as

3    an ex-officio member of both the audit and the

4    compensation committee, if the audit committee

5    determined that the company had claims against

6    an existing employee, would it advise the

7    compensation committee?

8         A.    Yes.  I believe it would.

9    Usually they file the compensation committee

10   in the HR organization.

11        Q.    And sitting as a member, ex-

12   officio member of both those committees, do

13   you believe that you received that information

14   from the audit committee sitting as a member

15   of the compensation committee that you would,

16   in fact, invoke the existing terms, the

17   prophylactic provisions, and therefore,

18   trigger the escrow provisions?

19        A.    I believe we would at that

20   point.  I mentioned earlier (indiscernible).

21        Q.    Are you familiar, generally,

22   with the target that had been adopted with

23   respect to the pay-outs for the six month

24   period?

25        A.    Yes.

91

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         Q.    And, is it correct that they

3    are referred to as Ibida UG and Obadar UG?

4         A.    Yes, they are.

5         Q.    Is the Ibida UG phrase some

6    sort of earnings calculation sir?

7         A.    Yes.

8         Q.    And can you tell the court

9    what the UG is?

10        A.    UG is merely a reference to

11   Union and General Motors.

12        Q.    And is it true, sir, that for

13   purposes of performance under this program,

14   any benefits of restructuring with General

15   Motors and the unions are excluded from what

16   would be the -- the performance would be based

17   on.  And that's true for the Obedah UG at the

18   division level as well?

19        A.    (Indiscernible).

20        Q.    No further questions, Your

21   Honor.

22             THE COURT:  Okay.  You could

23        sit down.

24             MR. BUTLER:  The next order of

25        witnesses would be the IUE.  In dealing

92

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         with the next witness, the IUE has two

3         declarations of Mr. Henry Reichard, that

4         have been admitted into evidence.

5         Declarations -- rather Exhibits number

6         19 and 20.

7              MR. SPRINGER:   That's correct.

8         The IUE would call Mr. Riker to Your

9         Honor, he's in the courtroom.

10                  (Witness is duly sworn)

11       BY MR. SPRINGER:

12       Q.     Good afternoon Your Honor,

13   David Springer for the debtors.   Good

14   afternoon, Mr. Riker.   I just have a few

15   questions for you, sir.   You don't question

16   the fact that when Delphi was spun off from

17   General Motors it had an executive

18   compensation program that had four components

19   to it.   Number one, base salary.   number two,

20   benefits, number 3, annual incentive

21   compensation and, number 4 long-term incentive

22   compensation.   You don't question that do you?

23   And you don't question the fact, as we sit

24   here today, that executive compensation at

25   Delphi is actually less than that at other

93

1      DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    domestic auto suppliers, automat -- parts

3    manufacturers, you don't question that do you?

4          A.      (Indiscernible).

5          Q.      So, you don't have any.

6          A.      I don't have any.

7          Q.      And you don't question the

8    fact that today, executive compensation at

9    Delphi is less than that at other big public

10   companies.  You don't question that either do

11   you?

12         A.      I don't know the compensation

13   of other companies. I don't know.

14         Q.      So you don't have any basis to

15   question.  And you don't question the fact

16   that as we sit here today that the executive

17   compensation at Delphi is limited to that two

18   parts of that four part structure that we

19   talked about.  You don't question that -- do

20   you sir?  That it's limited to salary and

21   benefits?  And you don't question the fact

22   that the limited six month annual incentive

23   program that's before the court today is

24   within the range of competitive practices.

25   You don't question that either do you sir?

94

1     DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    And finally, sir, of course you don't support

3    Delphi's request for approval.  We know that

4    right?  And is it true that you can't, as a

5    union official, support a request for

6    executive incentive compensation in a labor

7    transformation case like this?  Isn't that

8    true?

9         A.    I can't support, and our

10   membership can't support lucrative bonuses,

11   when we know that the dollars and it faces a

12   concessionary agreement that we are being

13   handed.

14        Q.    I have no further questions,

15   Your Honor.  Thank you sir.

16        A.    Any more questions for Mr.

17   Riker?  You can step down.

18             MR. BUTLER:  Your Honor, the

19        fifth witness in the order that's been

20        agreed is Mr. Steve A. Grandstaff, who

21        has filed a declaration in opposition of

22        the KECP program on behalf of the UAW.

23        That declaration has been admitted into

24        evidence as exhibit number 21.

25        (Witness is duly sworn)

95

1      DELPHI CORPORATION, ET. AL.     05-44481-rdd

2          BY MR. SPRINGER:

3          Q.     Good afternoon Mr. Grandstaff.

4      Nice to see you again today, sir.  Some of

5      these questions will sound a little bit

6      familiar.  You're here as the representative

7      of the United Auto Workers.  Is that right

8      sir?

9          A.     Yes.

10         Q.     And it's true that you don't

11     question the fact, like Mr. Riker that when

12     Delphi was spun off from General Motors, it

13     had a four part executive comp., plan; wages,

14     salary, excuse me salaries, benefits, annual

15     incentive comp and long-term incentive comp.

16     You don't question that, do you?

17         A.     I have no way of knowing that.

18         Q.     And you don't question the

19     fact that as we sit here today, Delphi's

20     executives are only getting paid under two

21     parts of that four-part program.  You don't

22     question that?

23         A.     I'm not totally aware of how

24     they put an agreement in the works.

25         Q.     Well, you don't have any

96

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    knowledge or information to the contrary do

3    you?

4         A.    No.

5         Q.    And you don't question the

6    fact that today Delphi's executive

7    compensation is below that of its competitors

8    in the domestic auto parts manufacturing

9    business.  You don't question that do you?

10        A.    I don't really know the facts

11   to support it.

12        Q.    So you don't, you don't

13   question it right?

14        A.    I don't know the facts to

15   support it.

16        Q.    Well, did you make any effort

17   to find out, look into the facts, before you

18   came to testify today?  Now, you don't

19   question the fact that the six month annual

20   incentive program before the court is within

21   the range of competitive practice do you?

22        A.    I don't know the facts to

23   support that.

24        Q.    So you don't know?  Now, your

25   understanding is that the amount of money

97

1      DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    that's at stake under the six month AIP before

3    the court today is about 21 million dollars,

4    is that right?

5         A.      I don't know.

6         Q.      And is it correct that it is

7    not your view, and it's not the view of the

8    United Auto Workers that if the court

9    authorizes Delphi to pay that 21 million

10   dollars to its executives, that that money

11   will be taken away from the workers.  Isn't

12   that right.

13        A.      Even so far as going out and

14   collecting that from the workers?

15        Q.      No, isn't it true, sir, that

16   it is not your view, that any monies that the

17   court authorizes for Delphi exec's by way of

18   an incentive compensation, will be taken away

19   from the workers.  Isn't that true?

20        A.      I'm not quite sure of your

21   question.  Are you asking me (indiscernible)?

22        Q.      Well, at your deposition

23   yesterday, were you asked these questions, and

24   did you give these answers, on page 28.

25        Question:  Has the UAW told its

98

1      DELPHI CORPORATION, ET. AL.      05-44481-rdd

2    membership that any monies that the court

3    authorizes be paid to Delphi executives by way

4    of incentive compensation will be taken away

5    from the workers.

6         Answer:  I don't think so. I don't

7    recall any communication like that.

8         Question:  Do you believe that?

9         Answer:  I didn't even put it in those

10   terms.

11        Question:  I'm asking you, as you sit

12   here today, is it your view or opinion that

13   any sums that are approved by the court to be

14   paid to the executives by way of incentive

15   compensation, will be taken away from the

16   workers?

17        Answer:  No.

18        Were you asked those questions, and did

19   you give those answers yesterday?

20

21        A.     Yes, I did.

22        Q.     I have no further questions,

23   Your Honor.

24             THE COURT:  Mr. Grandstaff, I

25        reviewed your affidavit and Mr.

99

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         Reichard's affidavit, and what I chiefly

3         take away from them is the obvious

4         point, that it is harder to persuade

5         your constituents to make substantial

6         reductions in benefits and everything

7         else that you are being asked to do

8         while there is an increase in

9         compensation for the executives.  Is

10        that correct?

11             THE WITNESS:  Yes, it is.

12             THE COURT:  Now, obviously,

13        you've heard the testimony today, and

14        you've read the pleadings which suggest

15        that if not today, at some point, it

16        appears that the compensation for the

17        executives should be brought into line

18        with their competitors.  And my question

19        is, if not now, when will that be?

20             THE WITNESS:  In my opinion,

21        Your Honor, the point in time is when

22        the executives would be able to bring

23        Delphi out of the bankruptcy situation,

24        make it a whole company again, where the

25        employees of the company felt secure in

100

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         their employment and their future.  But,

3         so long as the company remains in this

4         questionable state, and you're asking

5         the workers to give up on wages,

6         benefits and pensions, for the

7         executives to take a profit, at that

8         point in time doesn't seem fair, because

9         at that point in time they won't know

10        whether they're going to take their

11        profit and let the company continue to

12        sink versus work hard to make the

13        company healthy again for everybody's

14        benefit.

15             THE COURT:  So, correct me if

16        I'm wrong, what I take away from that

17        is, that the UAW is not opposed to

18        making the executives' compensation

19        competitive, but they want to do it when

20        there's an overall restructuring,

21        including not only the pay of the

22        workers.

23             THE WITNESS:  Yes, Your Honor.

24        I think there would need to be equality

25        of sacrifice because at one point in

101

```
1    DELPHI CORPORATION, ET. AL.   05-44481-rdd

2         time we asked the workers to give more,

3         and you're offering the executives more,

4         it's a clash and I feel when there are

5         employees that are worried about

6         mortgages and cars and kids' colleges

7         and stuff like that.  If they're going

8         to have to rethink their whole

9         lifestyle, while at the same time the

10        executives have what they have and

11        they're gaining more improvement.  It's

12        a --

13             THE COURT:  Well, okay.  If I

14        were an executive, I could read a lot

15        into the phrase equality of sacrifice,

16        because what I heard you say first

17        suggested that it's a timing issue and

18        everyone should be in the same boat

19        together, but that once that boat rises

20        out of bankruptcy then there's no

21        problem.  I'm not sure, in the second

22        answer you gave, whether there was an

23        additional suggestion that, if, the

24        workers are asked to give up significant

25        concessions and agree to do so, or I
```

102

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        eventually have to impose them, then,

3        they would just simply not agree to any

4        bonus.  I don't think that's what I

5        heard you say.  But I, if I were an

6        executive, I could imply that from what

7        you were saying.

8            THE WITNESS:  May we speak

9        freely?

10            THE COURT:  Sure.

11            THE WITNESS:  I don't think

12        it's so much the employees agreeing to a

13        bonus, it's more the employees agreeing

14        to a scaled down labor kind of trap,

15        that would drastically scale down labor

16        contracts --

17            THE COURT:  Oh no, I understand

18        that.  I understand that.  But if you

19        start with the premise that the basis

20        for convincing your people to agree to

21        that significant change for the worse,

22        is to make Delphi competitive so that

23        it not only survives, but is healthy,

24        then, you would think that it would also

25        be important to be competitive at the

103

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         executive level too.  Because that --

3         otherwise you're not going to be able to

4         hire executives.  So, I'm still trying

5         to figure out whether this is just a

6         timing issue, where I could understand

7         where workers may be concerned about

8         executives jumping the gun, or whether

9         it's just an issue where workers are

10        saying, well, if I'm going to have to

11        give up anything, the executives aren't

12        going to get anything more.  The latter

13        point troubles me a little bit.  The

14        timing issue I understand.

15             THE WITNESS:  I feel it's a

16        timing issue, mixed with a success

17        issue, if the executives continue to

18        drain the company and drive the company

19        closer to a total disbanded, where you

20        shut down all the plants, etc., and then

21        they walk away from it, with bonuses in

22        their pocket, while all the workers not

23        only lose what they have now, plus lose

24        their livelihood when the plants shut

25        down:  I don't understand why the

104

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         executives would be assessed to have not

3         grown the company, or brought the

4         company into this unhealthy state.

5              THE COURT:  Okay.  Thanks.  Any

6         further questions?

7              MS. CECCOTTI:  For United Auto

8         Workers, judge we have no questions for

9         the witness.  Thank you.

10             THE COURT:  Okay.  You could

11        sit down, sir.

12             MR. BUTLER:  Okay, sorry.  Your

13        Honor, the final witness of the six

14        witnesses, is Mark Shaw for the Steel

15        Workers.  His declaration has been

16        admitted to evidence as exhibit number

17        22.

18        (Witness is duly sworn)

19        BY MR. SPRINGER:

20        Q.    Good afternoon Mr. Shaw.  Nice

21   to see you again today sir.

22        A.    No problem.

23        Q.    I'll try not to be too

24   imaginative with you either, and just touch on

25   some of the same few points.  Now you are the

105

1    DELPHI CORPORATION, ET. AL.   05-44481-rdd

2    representative today of the United Steel

3    Workers, is that right?

4              MR. PETERSON:  Objection as to

5         the use of the word representative.

6         Obviously he's represented by counsel

7         who is in back of you.

8         (indiscernible).

9              MR. SPRINGER:  Well, I'll

10        rephrase it.

11             THE COURT:  Sustained.

12        BY MR. SPRINGER:

13        Q.    You're the designated witness

14   for the United Steel workers here right?

15        A.    Correct.

16        Q.    And, you're actually a union

17   official, are you not sir?

18        A.    Yes, I am.

19        Q.    What is your title with the

20   union?

21        A.    I'm kind of the coordinator

22   for the U.S.W., District 1 and I've come to

23   New York State from Ohio.

24        Q.    And the -- so far as you know,

25   the USW has made a decision to designate you

106

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2  as the person to come testify on behalf of the

3  union today.

4        A.      That's correct.

5        Q.      And would it be true that

6  today, United Steel Workers is not in a

7  position to offer any evidence at all with

8  regard to whether or not the compensation paid

9  to Delphi, even executives is competitive with

10  other auto parts makers.  Would that be true?

11        A.      That's true.

12        Q.      And would it also be true that

13  the United Steel Workers is not in a position,

14  today, to offer any evidence whatsoever, with

15  regard to whether or not the incentive comp

16  program up for consideration today, is

17  competitive or not with that of other auto

18  parts markers?

19              MR. BUTLER:  I'd like to here,

20        propose another objection.  I let the

21        first question go.  As I said, this is

22        facts witness, not a representative.  If

23        you want to ask the facts witness what

24        the Steel Worker's case is, that is, I

25        think, inappropriate.  He's here to

                                                              107

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         testify about facts, and you're asking

3         him simply argumentative questions about

4         what the Steel Workers, as a matter of

5         their agreement will (indiscernible).

6              THE COURT:  Well, Mr. Shaw has

7         submitted an affidavit about the adverse

8         affects that this program would have on

9         the negotiations and I think it is fair

10        to probe whether he is considered as the

11        negotiating representative for the

12        questions that are being asked of him,

13        so I'll deny that.

14   BY MR. SPRINGER:

15        Q.    Let me see if I can read it

16   back, or even remember it.  Is it correct that

17   the Steel Workers today through you, are not

18   in a position to offer any evidence with

19   regard to whether or not the incentive comp

20   program before the court today is competitive

21   with that offered by other domestic auto work

22   -- auto parts manufacturers?

23        A.    That's correct.

24        Q.    And would it also be true that

25   the Steel Workers are not in the position to

108

1    DELPHI CORPORATION, ET. AL.     05-44481-rdd

2    offer any evidence, with regard to whether or

3    not the compensation paid to Delphi executives

4    is competitive with that paid by other big

5    publicly traded companies?  Is that also true?

6         A.    Yes.

7         Q.    Is it also true that the Steel

8    Workers are not prepared today to offer any

9    evidence with regard to whether or not the

10   incentive comp program that's up today is

11   competitive with that offered by other big

12   public companies?

13              THE COURT:  Let me make sure,

14        you understand the question and my

15        ruling.  When counsel saying, any

16        evidence, what I take his question, it

17        is not in this courtroom, but generally,

18        when you talk to your constituents.

19              THE WITNESS:  Yes, I understand

20        that.

21              THE COURT:  Okay, fine.

22        BY MR. SPRINGER:

23        Q.    Okay.  I'll try it again.  If

24   -- is it true that the United Steel Workers

25   are not prepared, today, to offer any evidence

109

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2    with regard to whether or not the incentive

3    compensation program up for consideration by

4    the court, today, is competitive with that

5    offered by other big public companies?  Would

6    that be true sir?

7         A.    Yeah, that'd be true.

8         Q.    Now, as a union official, sir

9    is it true that you cannot support any request

10   for a key employee compensation plan in this,

11   or in any other labor transformation case.  Is

12   that true?

13        A.    I don't think that's true.

14        Q.    Okay.  Have you ever testified

15   -- excuse me -- Is it true that you can't

16   support any incentive compensation plan for

17   executives, when in the case the workers' may

18   be asked to make wage and benefit concessions?

19   Is that true?

20        A.    The Steel Workers?

21        Q.    Yes, sir.

22        A.    (Indiscernible).

23        Q.    Just one second, I have to

24   recheck my notes here.  Let me ask you the

25   question this way sir.  Are you prepared, as

1    DELPHI CORPORATION, ET. AL.   05-44481-rdd

2    you sit here today, to support a key employee

3    compensation program for Delphi's executives

4    under the current circumstances?

5              MR. BUTLER:  Objection, it

6         calls for speculation.

7              THE COURT:  Sustained.

8    BY MR. SPRINGER:

9         Q.    Are you prepared, sir, to

10   recommend to anybody that the Steel Workers

11   support the application before the court

12   today, under any circumstances?

13        A.    (Indiscernible).

14             THE COURT:  No.  Let me ask you

15        a little differently.  Would you

16        categorically rule out ever supporting

17        the AIP that's currently before the

18        court, under any circumstances?

19             THE WITNESS:  It's hard to

20        know, unless you know what's involved

21        with everything.  I don't think you

22        could just take bets and say your going

23        (indiscernible).  Obviously, I think

24        it's a combination of many key factors

25        improving the success, the bargaining

111

1     DELPHI CORPORATION, ET. AL.    05-44481-rdd

2          with the union representing the --

3     BY MR. SPRINGER:

4          Q.   And it -- and it's true that

5     with regard to a request for approval of a key

6     employee compensation plan.  That from your

7     standpoint, if there is any form of payment

8     that looks like there's no shared sacrifice,

9     at least appears to your members that there's

10    no shared sacrifice, it obviously brings great

11    consternation and potential problems, right?

12         A.    There's no doubt that the

13    membership is aware of this matter and it can

14    possibly make our job, getting a successful

15    labor agreement more difficult, if the

16    membership thinks that there's no shared

17    sacrifices.

18         Q.    And is that -- is that one of

19    the reasons why you can't support the request

20    by the debtors to implement the KECP program

21    today?

22         A.    Yes, that's one of the many

23    reasons.

24         Q.    Okay.  I have nothing further,

25    Your Honor.

112

```
 1    DELPHI CORPORATION, ET. AL.    05-44481-rdd
 2              THE COURT:  Okay.
 3              MR. BUTLER:  Can I have just
 4        one moment?
 5              THE COURT:  Sure.
 6              MR. BUTLER:  I have nothing
 7        further Your Honor.
 8              THE COURT:  All right.  You can
 9        step down Mr. Shaw.
10              MR. BUTLER:  Your Honor, could
11        I have one moment?
12              THE COURT:  Yes.
13              MR. BUTLER:  Your Honor, I'm
14        advised with respect to the exhibits the
15        two exhibits which the debtors had
16        earlier raised objections -- objection,
17        with respect to exhibits 26 and 27, that
18        they have been withdrawn.
19              THE COURT:  Okay.
20              MR. BUTLER:  That, Your Honor,
21        would mean that all the exhibits in the
22        exhibit book are in, save exhibits 26
23        through 29 which have been withdrawn.
24        I'd like to move Your Honor to --
25              THE COURT:  I'm sorry, 26 and
```

113

```
 1    DELPHI CORPORATION, ET. AL.    05-44481-rdd
 2        27 right?
 3              MR. BUTLER:  26 and 27 just
 4        came out.  28 and 29 were withdrawn
 5        earlier.
 6              THE COURT:  Right.  Okay.
 7              MR. BUTLER:  I'd like to move
 8        to close the evidentiary record.
 9              THE COURT:  All right.  No one
10        has any other evidence to present.
11        Okay, it's closed.
12              MR. BUTLER:  I was wondering,
13        Your Honor, if we could do two things.
14        One, perhaps have a five minute recess
15        and two, get some guidance from the
16        court, on whether you want anything
17        beyond the briefs that have already been
18        submitted.
19              THE COURT:  I don't need
20        further briefs.
21              MR. BUTLER:  I meant -- I meant
22        just to wave oral argument beyond what's
23        been --
24              THE COURT:  Yes, I'd like to
25        hear briefly from people, so let me take
```

114

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         a 10 minute break.  And, so, I'll be

3         back at 4:15.

4              MR. BUTLER:  Thank you, Your

5         Honor.

6              (Recess.)

7              THE COURT:  Be seated.  By

8         hearing oral argument, I'm not

9         encouraging people to repeat what

10        they've put in their pleadings, but just

11        to tell me what they think is most

12        important.

13             MR. BUTLER:  If I have the

14        court's permission I'd like to make a

15        brief closing and then reserve to come

16        back after all the objectors.

17             THE COURT:  That's fine.

18             MR. BUTLER:  Your Honor, I

19        think it's an important exercise here to

20        recognize what this motion is and what

21        it is not.  What the evidentiary record

22        has contained within it, and what it

23        does not.  And, who is prejudiced and

24        who would not be prejudiced, as one

25        addresses this motion.  Particularly

115

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         under the Orion standard, particularly

3         under the exercises of this judgment

4         here.  I've been doing this for

5         something like 27 years.  I have

6         appeared on countless motions of this

7         kind and other major issues in large

8         chapter 11 cases.  And, when you sit as

9         debtor's counsel and you come before the

10        court on the matter of executive

11        compensation, regardless of the facts,

12        it is an emotional and even inflammatory

13        exercise.  And, what we had tried to do

14        in this evidentiary presentation and in,

15        what we believe, the evidentiary record

16        now represents, is a, we hope,

17        dispassionate and objective view of what

18        is before the court today.  I will tell,

19        Your Honor, had this matter alone been

20        the components of the KECP without the

21        equity programs that, by the way, were

22        designed to come at the end of the case,

23        when everything was designed.  That is,

24        nothing be paid until the end of the

25        case, under the equity emergence

116

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         programs.  This, most likely, wouldn't

3         have even come to the court in this

4         fashion, because much of it, what is

5         actually here now, I think is largely an

6         ordinary course.  We indicate in our

7         papers that really the court can both

8         find this new in their course of

9         business and make an alternative ruling,

10        also in support of the debtors.  But, I

11        do think it's important, Your Honor, to

12        start with what it is not.  This is not

13        an increase in executive compensation.

14        This is not, as the UAW witness

15        suggested, the management taking a

16        profit.  This is not the executives

17        jumping the gun.  This is an attempt by

18        the debtors in the exercise of

19        reasonable business judgment to restore

20        part of the competitive structure that

21        has existed at Delphi since 1999.  The

22        program that the debtors have had

23        included salary, benefits, long-term

24        incentive and short-term.  And, yes,

25        under the evidentiary record, short-term

117

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         didn't pay out on a number of those

3         years because the debtors didn't achieve

4         their plans.  Some of the long-term

5         programs have paid out and there are

6         other long-term programs didn't, but it

7         was the entire program that, together,

8         as the evidence indicated, was necessary

9         to put -- all four pieces are necessary

10        to get to Delphi executives just to the

11        competitive median, not leading the

12        pack, not even being a third of the way

13        back in the pack, but half way back in

14        the pack if all four components are

15        available.  And, all four components

16        were available in each of the pre-

17        petitioned periods.  The fact and Mr.

18        Bogdnovich indicated in his testimony,

19        that these are not guarantees, they are

20        opportunities.  And the availability of

21        those opportunities, although -- not

22        achieved in each of the years, every one

23        of the years, pre-petition.  The

24        availability of the opportunities is

25        what creates the competitive

118

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         environment, and allows the company to

3         go forward.  So this is not a matter of

4         adding on.  This is not a stay for pay

5         bonus, in fact, the stay for pay bonuses

6         that were in place pre-petition were

7         cancelled by the board of directors in

8         connection with this Chapter 11 case.

9         And, we didn't even know the statute,

10        having filed before October 17th, we

11        could have filed a (indiscernible) and

12        sought the stay for pay programs.  And,

13        even though, many of the automotive

14        suppliers in chapter 11 today have those

15        programs in place.  What we wanted to do

16        was to try to have programs that had

17        incentive opportunities in it.  And, we

18        filed this on October 8th, at the

19        beginning of the case so that there

20        would be a fair understanding of the

21        attempt by the company, with its outside

22        compensation experts, to deal with that

23        competitive shortfall that, on average,

24        represents on a demonstrative basis,

25        about half, roughly, of what the

Pg 119 of 297

119

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         structure was.  The ordinary course,

3         basic structure was, for each of the

4         years Delphi has existed.  And, in doing

5         so, and in negotiating with the

6         creditors committee, the debtors made

7         another business judgment, which was,

8         taking all the circumstances under --

9         into account, including all of the

10        circumstances relating to the objectives

11        in this chapter 11 case.   The debtors

12        took the position with the creditors

13        committee, they would take a good

14        portion of the program that, would

15        simply, restore the executives to that

16        which they already had, and they would

17        put that off until the summer time, so

18        we could check the progress in the case,

19        talk about that, negotiate with the

20        committee.  What we believe needed to go

21        forward now, or would be lost forever,

22        is trying to restore, at least, an

23        incentive program to identify the first-

24        half business plan, because, just as

25        happened at the end of last year, when

212-267-6868                                    516-608-2400

120

1   DELPHI CORPORATION, ET. AL.   05-44481-rdd

2       we worked through the last part of last

3       year, without having a plan, then the

4       pressure was, well don't have a plan

5       retroactively, so the plan was lost.  So

6       for the first four -- three months of

7       this case, our executives operated at

8       about half of what they had on a pre-

9       petitioned basis.  So this is not adding

10      on, this is not increasing; this is an

11      attempt to restore.  And, by the way,

12      when we talk about salary, which

13      represents about a third of that pie,

14      that normal chart, the fact is, all of

15      the executive officers of the company,

16      the top 20 or so of the company, all

17      took 10 percent pay cuts, effective

18      January 1st.  Mr. Miller, who's in the

19      court room, gave up his salary effective

20      January 1st.  Mr. O'Neil the president

21      of the company, gave up 20 percent of

22      his base salary on January 1st, in an

23      attempt to try to do the right thing in

24      the labor transformation case.  But,

25      Your Honor, these 460 odd executives,

121

1   DELPHI CORPORATION, ET. AL.   05-44481-rdd

2        that are part of, what we believe to be

3        an ordinary course program, operate, you

4        know, global Delphi.  They are before

5        the court on this program because the

6        domestic operations, which involve

7        46,000 employees is clearly in front of

8        the court and is extremely important to

9        the operation of the business, but these

10        466 people, along with the other

11        executives that are solely in foreign

12        company, the foreign businesses, provide

13        global leadership to 185,000 people on

14        six continents.  And the company has put

15        together a six month business plan, that

16        it has reviewed with the creditors

17        committee and reviewed with the board of

18        directors, and is by no means an easy

19        plan to accomplish, there was testimony

20        about the plan, what the expectations

21        were and the company needs to incent

22        it's management team to make the steps

23        towards that.  Not because the company

24        is trying to give them something extra,

25        or add on, so that it will increase the

122

1   DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        hiring temperature in this case, again,

3        with respect to organized labor, here in

4        the United States.  But so that the

5        company can, in fact, restore at least a

6        portion of what was lost in connection

7        with the filing.  And, I think, Your

8        Honor, that is -- I think the first

9        issue that I think is most important.

10       The second comment that I would make is

11       that what we're measuring here, and what

12       the court is to balance in the Orion

13       test of our business judgment and

14       exercise on the courts on business

15       judgment, based on the evidence before

16       the court, is an evidentiary record that

17       is virtually, and maybe entirely

18       uncontroverted as to the way the program

19       is constructed, as to what the targets

20       are, as to what the amounts are, as to

21       whether it's competitive, as to whether

22       it's reasonable.  No one has introduced

23       any evidence to challenge any aspect of

24       the program.  And, in fact, the progress

25       committee has specifically approved the

123

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         form and substance of the program.  So

3         what the court is being asked to weigh

4         by the objectors, and I'll sit down in a

5         minute and come back later, is to weigh

6         an uncontroverted evidentiary record

7         that is, I think, full of evidence for

8         the court to have comfort that the

9         debtors have appropriately exercised

10        their business judgment, measured

11        against a difference of view, one that

12        we understand and took into

13        consideration, but a difference of view,

14        where the folks who represent our unions

15        and are creditors could rather say, gee,

16        wouldn't it be better for everybody if

17        these employees just didn't get, the

18        only employees the 185,000.  These 466

19        employees work to restore at least a

20        part of what they had, as opposed to

21        giving anything up, restored to part of

22        what they had for the next six months or

23        eight months, until whenever we figure

24        we get to the end of the case.  And if

25        we do that, then what with the

124

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         announcement that this court's making to

3         the executives is, you're going to be

4         unlike any other employee of Delphi,

5         you're going to get about half of what

6         the opportunities are available to you

7         that were available in pre-petitioned

8         Delphi, while everybody else is getting

9         paid 100 percent of what they had

10        available to them?

11             THE COURT:  Wait a minute, when

12        you say everybody else, you don't mean

13        the union's right?

14             MR. BUTLER:  As we sit here

15        today,

16             THE COURT:  Well, no but you

17        teed up for a hearing in front of me in

18        about a month and half.  That proposal

19        is to reduce what they're getting by

20        more than half.

21             MR. BUTLER:  And the evidence,

22        Your Honor, is going to show, and this

23        is one of the issues we have to deal

24        with, and sitting as the arbiter of our

25        business judgment, Your Honor has to

125

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        deal with, is the uncontroverted

3        evidence and this record, is that the

4        actual performance, the actual pay on

5        place that the executives are getting is

6        about the 25th percentile.

7            THE COURT:  Now, I was just

8        responding to the stay, I don't -- I was

9        trying to follow the statement, I didn't

10       mean to be specific.

11           MR. BUTLER:  Well, because at

12       the other end of it, Your Honor, the

13       fact of the matter is in this case, and

14       I don't make the facts up here, I have

15       to be one of the people, with others

16       around us in this courtroom, to try and

17       solve the problem.  But, the fact is

18       that our hourly work force are at

19       uncompetitive rates and that's what the

20       1113 process will show.  And, somehow or

21       other, we have to fix both those

22       problems.  But, we don't fix the

23       executive problem by saying, let's take

24       away half of their opportunities right

25       now, today.  As a matter of fact, we

126

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         took them away October 8th.  Let's take

3         away half the opportunities for the

4         balance of the case and then -- and then

5         deal with the other issues later on.

6         And, ultimately, Your Honor, the court

7         knows this, I know this, having been

8         involved in labor transformation cases

9         throughout my career, we have to solve

10        the legacy obligations and the

11        uncompetitive labor costs in this case.

12             We're going to try very hard to

13        do it on a consensual basis, whether or

14        not we file an 1113.  An 1113 is a piece

15        of paper and a process.  But we both

16        know that congress requires at the end

17        of the day, that what we have to do is

18        settle this, finally, at a bargaining

19        table.  And we will work hard to do

20        that, and our evidence has been very

21        clear.  We recognize in the formulation

22        of this business, exercise in this

23        business judgment that the -- on the one

24        hand, trying to deal with a real and

25        pleasant problem that is effecting the

127

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         reorganization of this case, which is

3         this sort of half of the pre-petitioned

4         loaf for executives, which is causing us

5         to lose executives, it's demoralizing

6         the executive rank.  It is effecting

7         businesses not just in the United

8         States, but globally, because these

9         executives are responsible for the

10        entire global operations of the company,

11        that are doing that in order to try to

12        satisfy the -- the 1113 process in this

13        case.  Simply, in the opinion of the

14        company, the business judgment of people

15        like Mr. Opie as independent directors,

16        is a recipe for disaster.  And will lead

17        us to a -- real problems in connection

18        with the reorganization.

19             And so what the company is

20        trying to do here, is trying to strike

21        the balances.  By agreeing with the

22        creditors committee to take off all the

23        long-term incentive plans and put them

24        at the back end of the case.  By trying

25        to -- by being involved in almost three

128

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         months of negotiation with the

3         creditor's committee and modifying the

4         programs so the form and substance is

5         acceptable to the committee, and take

6         those actions that the company is trying

7         to do all that it can to exercise

8         business judgment.  And we recognize

9         that anybody can use this motion for

10        their own purposes and their own

11        strategic purpose in this case, but if

12        people view it for what it is, because

13        factually there can be no doubt that

14        what this is, is a restoration of

15        benefits that were taken away as opposed

16        to trying to field the lily or put icing

17        on the cake, or take things away from

18        people, or increase compensation, or all

19        those other things, which it is not,

20        Your Honor.  Then, I think, the

21        reasonableness of the debtor's business

22        judgment here, is simply underscored.

23        We bid the record and the evidence is

24        uncontroverted in support of the motion.

25        And, I'll reserve the balance of the

129

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         argument until the end, Your Honor.

3         Thank you.

4              THE COURT:  Okay.

5              MR. ROSENBERG:  Your Honor, I'd

6         like to begin with an important

7         preliminary point.  And, again,

8         hopefully not borrowing the card, but

9         going over the procedure of what we are

10        doing here today.  What we did here

11        today was hear one portion of a single

12        motion.  A single motion which is still

13        pending, and which contains provisions

14        which will be heard down the vine,

15        presently in July, which the committee

16        and other parties may or may not support

17        in whatever form they end up being, or

18        end up being negotiated.  I am very

19        concerned that no findings today, in

20        connection with this relatively modest

21        and small portion of that larger motion,

22        prejudice, that hearing down the line

23        we've had this issue before Your Honor,

24        whatever situations and modifications of

25        motions it is particularly important

130

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         here that I ask Your Honor to please

3         keep that in mind when you make

4         findings, however you determine to come

5         out.

6              Again, Your Honor, this motion

7         was filed, I believe, on the first day

8         of the case, if not very soon

9         thereafter.  It contained an enormous

10        compensation package of which this is

11        only a part, which this court with some

12        serious understatement, called a

13        lightening rod.  It surely has been

14        that, and it continues to be that, as

15        Your Honor has heard.  The timing

16        problem here, with due respect to the

17        data, is one entirely of its own making.

18        It, perhaps, could have filed this

19        program, certainly the program has

20        finally agreed to with the creditors

21        committee, early in the case and it

22        probably would have gone through with

23        very little controversy, had that been

24        the sum and substance of the motion.

25        But it wasn't.

131

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         Nor is it true, Your Honor,

3    contrary to some statements that the

4    debtor has made, that the motion was

5    adjourned at the creditors committee's

6    request.  That is not the fact.  The

7    fact is that the creditors committee at

8    each adjourned hearing told the debtor

9    that it would object to the motion and

10   the debtor chose to adjourn and

11   negotiate, rather than have the

12   committee file an objection to the

13   program.

14        So, again Your Honor, we're

15   here one week before a deluged 1113 date

16   because of the procedures that the

17   debtor, at its discretion, chose to --

18   chose to follow.  Now, you have heard

19   me, the committee, talk about three

20   problems with the annual incentive plan

21   as originally proposed.  One was its

22   substance, its lack of gradual --

23   granularity, its lack of actually

24   incentivising performance on an

25   individual basis.  We have solved that

132

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         problem, Your Honor.  As Mr. Butler

3         indicated, the plan put forth is

4         acceptable to the committee and its

5         compensation consultants, with respect

6         to this six month period.  And again,

7         the point I'm making here, Your Honor,

8         is that it will be jiggled, or jiggered

9         I should say, and the terms will be

10        slightly modified if they want our

11        cooperation or for six months period

12        going forward.

13             The second issue is the so-

14        called prophylactic issue.  Making sure

15        that bad guys, if you will, do not run

16        off with incentive payments.  We feel,

17        Your Honor, and obviously reasonable

18        people are free to differ, that the

19        present program, which Your Honor can

20        see is vast and different from the one

21        that was put forth to this court in an

22        affidavit even last week, properly

23        achieves the balance between protecting

24        the estate and its assets, on the one

25        hand, and not unfairly or unreasonably

133

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         branding people simply because somebody

3         decides that they're bad guys before

4         anyone has a chance to adjudicate that.

5         We don't think that's fair, we think

6         that the proper balance has been

7         achieved here, obviously anyone is free

8         to differ with that, but there again, we

9         are satisfied that the right balance has

10        been achieved.   That brings us,

11        finally, to the timing issue.

12             Your Honor, the creditors

13        committee, of course is the fiduciary

14        for the entire creditor body.  It is a

15        highly representative committee.  The

16        U.S. Trustee did an excellent job of

17        making that the case.  The committee has

18        even, as Your Honor knows, expanded upon

19        that representativeness, by adding to

20        ex-officio members in the last couple of

21        weeks, the UAW and the PBGC.  All major

22        unsecured constituencies have weighed in

23        on this issue of timing. We have also,

24        of course, heard the company's point of

25        view on the issue of timing.  They're

134

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         not our constituency, but we are

3         depending on them to make our

4         constituency as whole as possible.  So,

5         they are hardly our enemies.  We do want

6         them to be happy.  That should go

7         without saying.  I think it's fair to

8         say that we wrestled long and hard with

9         this issue, and heard out at great

10        length every one of those constituencies

11        and, on balance, it is our conclusion

12        that it is not a reasonable exercise of

13        the debtors business judgment to go

14        forward one week before an 1113 motion,

15        in terms of the main issue in this case,

16        which is and has to be labor peace.  Are

17        we sacrificing one constituency at the

18        expense of another in making that

19        judgment, perhaps so.

20             But Your Honor, as Your Honor

21        knows, bankruptcy tends, in the final

22        analysis to be a zero fun game and these

23        hard judgments have to be made.  I

24        listened to Mr. Grandstaff in particular

25        and his answers to your questions, I

135

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         thought he was incredibly eloquent.  I

3         have never met Mr. Grandstaff before

4         today, I have never spoken to him, but

5         he did capsulize the way that the

6         committee has analyzed these various

7         competing interests and how we have come

8         down, sitting here one week before an

9         1113 motion.  Thank you.

10             MR. KENNEDY:  Your Honor, Tom

11        Kennedy for the IUE.  I'd like to

12        address a couple of points, especially

13        those made in the reply papers recently

14        filed by the debtor, two days ago.  We

15        do not believe that this AIP program can

16        be construed as being in the ordinary

17        course of business.  The original

18        proposition that was made, at the time

19        the motion was filed, on October 8th,

20        also called for a six month AIP with a

21        target cost of just over 20 million

22        dollars.  That motion said nothing about

23        the AIP being in the ordinary course of

24        business.  That argument wasn't raised

25        until two days ago.  But Delphi was

136

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         looking for a declaratory judgment that

3         the AIP was in the ordinary course, I'm

4         confident they're aware of the proper

5         procedure would have been a proceeding

6         under rule 7001.  The format chosen in

7         the text of the original motion, as far

8         as we're concerned, I'm not trying to

9         elevate form over substance, but just

10        looking at that point, was this

11        originally intended to be an ordinary

12        course motion in our view.  The answer

13        to that is no.  But, more importantly,

14        than the procedure, the substance shows

15        how different the next six months are

16        intended to be, under this program, than

17        the prior years.  And as Your Honor, I

18        believe, demonstrated an awareness of in

19        questioning some of the witnesses, the

20        Bogdnavich declaration, in paragraph

21        eight, is very clear that,

22        notwithstanding these charts that refer

23        not to money paid, but to opportunities,

24        the actual incentive progra -- payments

25        to the same group of executives, was

137

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         zero in most of the last four years.

3         And in the one year in which they were

4         paid, 2002, were only a partial payment.

5         The issue here is the existence

6         of money versus no money.  There may

7         have been an opportunity before, we

8         don't know what those opportunities

9         were, how well they were picked, or who

10        made the business plan, or what the

11        targets were, but we do know that there

12        was no money paid.  And we know that

13        under this plan the expectation is

14        notwithstanding the suggestion that

15        there's reach in the plan, that it will

16        be paid.  It's paid out after only 70

17        percent performance achievement by the

18        executives and we are now 40 days into

19        the period which they're contending is

20        going to be measured.  If, at that

21        point, two things are true, the first

22        is; it's much more clear to the company

23        whether they are going to meet their

24        performance targets, and we think they

25        are, as has been suggested by the

138

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        Bugdovich affidavit at paragraphs 10 and

3        11, where he's talking about the EBITDAR

4        performance actually being positive for

5        the first six months, is the company's

6        expectation.  It's also true that just

7        from the sheer perception of is this

8        going to incentify people; we're already

9        20 percent into the period that they're

10       trying to incentifize.  If the program

11       hasn't been installed yet, 20 percent of

12       it's potential impact is obviously --

13       been lost.

14            THE COURT:  Well, except they

15       know the motion's been on file.  I mean,

16       I have to assume that the executives are

17       acutely aware of this.

18            MR. KENNEDY:  Well, if that's

19       the case, then we may have achieved 20

20       percent of its impact without having to

21       put the money on the table.

22            THE COURT:  Yeah, but then when

23       you take it away, they have lost 40

24       percent.

25            MR. KENNEDY:  Well, you can

139

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         dandy the numbers about, but the reality

3         is 40 days into the period already.

4              THE COURT:  Well, let me ask

5         you, because at -- at one level,

6         obviously, I shared some of your view

7         that, in some respect, this is a change

8         in that there was, in practical terms,

9         no bonus except for some portion of the

10        bonus in 2002, for the last four years

11        or five years.  And, at the same time,

12        however, I think it's fair to say that

13        people, well not just MBA's, but people

14        generally feel that you get more value

15        for your dollar if its in the form of an

16        incentive program, then if its just flat

17        salary and it would be odd for a company

18        to set -- intentionally hard targets.

19        So, I was waiting to hear through the

20        whole hearing whether these targets were

21        believed by anyone to be you know, lay

22        ups, or whether its something that

23        people really have to work hard to

24        achieve and what I have in front of me,

25        is basically that it's not a lay up, as

140

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         far as I can -- I have on the record.

3         That's -- maybe there's something you

4         can point me to in the depositions or

5         something else that suggests otherwise.

6              MR. KENNEDY:  Well, Your Honor,

7         at page 14, paragraph 32 of the

8         Budgnovich deposition, I'll read you the

9         following.  The corporate level EBITDAR

10        Ub target for the period ending June 30,

11        2006 is negative 80 million.  Quote,

12        paren: A negative EBITDAR target for

13        purposes of an incentive compensation

14        plan is not unusual in my experience for

15        a company in chapter 11, end paren.  I

16        understand that the company expects, in

17        fact, its EBITDAR will be positive, end

18        quote.

19              So, we believe, Your Honor,

20        that the period we're in, the negative

21        EBITDAR itself as a incentivising

22        device, I'll leave to those more

23        familiar with

24        business targets than I.  I understand

25        that there are some people going to

141

1      DELPHI CORPORATION, ET. AL.    05-44481-rdd

2            comment on that later.  But, the

3            Budgnovich deposition indicates that

4            they are expecting a positive EBITDAR.

5            And whether this is a lay up or a little

6            bit of a reach, it's still a period,

7            since we're in too, in our view, its

8            well known to the company that they are

9            going to meet those -- those targets.

10           The issue in this case, in any event, is

11           not what I would call an abstract

12           analysis of how incentive plans work, or

13           how they might apply in a mythical

14           company.  But, as we sit here today,

15           given the reality and proximity of the

16           1113 motion, is it good business

17           judgment to place a red flag in front of

18           the tens of thousands of individuals

19           that are going to be affected by that

20           motion.  And let me note, Your Honor,

21           this is not the time to go into it, but

22           we do not accept, as an attorney for the

23           IUE that our hourly work force works at

24           uncompetitive rates.  That's been said

25           many times, it's said as though its back

142

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         drop, it's said as though it's a given.

3         It is not a given and we intend to

4         contest that if we have to in front of

5         an 1113 motion.  But, as we sit here

6         today, we do know that the company is

7         planning for a number of our members,

8         and attempting to cut their salary in

9         half.  And I don't think anyone needs to

10        dwell on how dramatic that would be for

11        anyone, no matter what their salary

12        level is.  The working people who live

13        from check to check it's all the more so

14        then it might be for the executives.  In

15        that context, unless a plan has an

16        extraordinary need for being, our view

17        it would be inappropriate to install it.

18        There's been no demonstration that

19        there's an extraordinary need to impose

20        this plan at this time.  The status quo

21        has been no AIP payments as a practical

22        matter, and without over-dwelling on

23        that point, for some years now.  Another

24        six months, another year without them,

25        if it achieves a substantial diminution

143

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         of the executive class, there may be

3         other factors at work or I would assume

4         that there are other factors because

5         that same lack of an AIP has not driven

6         out a substantial number of executives

7         in the prior year.  Why would you assume

8         that increase executive departures, to

9         the extent they've been demonstrated are

10        as a result of a lack of an AIP, when

11        there hasn't been one for the last four

12        years?  We think it's highly significant

13        that, not only the unions, but other

14        stakeholders in the committee,

15        representing all of the stakeholders,

16        oppose this motion based on its impact

17        on the pending labor negotiations.  The

18        reply B filed by Delphi, acknowledges at

19        page 4 the proceeding with the AIP,

20        could make negotiations with the unions

21        heart.  Then they would have as, quote,

22        the dead is capitulated and agreed to

23        arbitrarily deprive their executive work

24        force of basic market-based

25        compensation, end quote

144

1   DELPHI CORPORATION, ET. AL.   05-44481-rdd

2               We do not think there is

3       anything in this record that supports so

4       purple a description of the compensation

5       being paid to these executives.  They

6       are at norms with respect to the salary

7       portion of their, and I suppose the

8       benefit portion of their compensation,

9       and the opportunities, as I've said

10      before, that they are being deprived of,

11      they haven't had as a practical matter

12      for years.  The Delphi argued it was

13      speculative whether approval of the AIP

14      would endanger the critical negotiations

15      with the unions.  It is speculative only

16      in the sense that it hasn't happened

17      yet.  Seasoned labor negotiators have

18      all testified that it will be a serious

19      impediment for reaching an agreement, if

20      these plans are put into place.  There

21      is no evidence to the contrary.  The

22      company grudgingly acknowledged that it

23      would make it more difficult.  The

24      position of the union negotiators is, it

25      will make it impossible.  It's somewhere

                                                                    145

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         in that continuum, in any event, given

3         the centrality to this case of achieving

4         an acceptable consensual labor solution.

5         Anything that makes it harder should

6         have a substantial burden of

7         justification before going forward and

8         that is simply not something they've

9         met.

10                 THE COURT:   Let me ask you

11        then, why -- you say that -- but doesn't

12        that encourage people to be unreasonable

13        on the other side?  And just say, well,

14        I'm going to be upset no matter what the

15        basis is and, therefore, doesn't that

16        prejudge the issue?

17                 MR. KENNEDY:   In the labor

18        negotiations, you're referring to?

19                 THE COURT:  Yeah.

20                 MR. KENNEDY:  Your Honor, no it

21        doesn't.  The unions are fighting for

22        their lives in this case, Your Honor.

23        These are thousands of people in

24        communities that have very deep concerns

25        about what's happening here.  This is a

146

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         matter that will be an irritant, a

3         stumbling block, an impediment, perhaps

4         reaching to the point of rendering them

5         impossible to achieve an affirmative

6         vote, but it certainly not the only

7         thing people are going to be looking at.

8         We are not suggesting that it is.  But,

9         this is way too important a decision to

10        have any one factor be entertained.

11             But again, what I think you

12        have to look at here and kind of

13        weighing this all together, isn't the

14        normal status of labor negotiations.

15        These are enormous cuts that the

16        employer is seeking to make in the labor

17        relations environment.  We're going to

18        have a trial about whether they're

19        warranted or not, and I'm not going to

20        comment on it.  But, we certainly know

21        that this is not the kind of situation

22        where an employer comes forward and says

23        we want to take away your cost of living

24        increase, we want to freeze your wages

25        for two years, and we want five dollars

147

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         more toward the health care.  There are

3         an awful lot of conversations that can

4         be had, and which we could not stand

5         here, honestly, and say the impact of

6         the executive -- the 20 million dollars

7         or up to 38 million dollars additional

8         monies being paid to executives is a

9         material element.  But, that's not true

10        here.  We can say that here, it's true.

11        There's no evidence to the contrary.

12        What we believe is that the risk would

13        ward alternatives to the debtor's

14        estate, which I think is something that

15        the court has to consider, are startle.

16        Let's assume that the debtors are right.

17        The motion -- we prevail.  The motions

18        denied, either entirely or at this time

19        and the adverse consequences that have

20        been suggested by the debtor occur.

21        They lose some executives.  There's a --

22        instead of 110 percent effort, they're

23        getting 106 percent effort from some of

24        their executives.  They can, after all,

25        reward them with salary. They can reward

148

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2            them with evaluations.  There are other

3            tools in the corporate for the employer

4            to deal with executives.  But, and that

5            could have an impact on the estate,

6            we're not suggesting it couldn't.  But,

7            it's a relatively minor impact.  On the

8            other hand, if the motion is granted and

9            the objectors are right, that it is a

10           terrible time at which to enact this

11           particular plan, and the labor relations

12           are unsuccessful, and everything spins

13           out of control, and the debtor is unable

14           to successfully reorganize, the

15           risk/reward analysis suggests to us that

16           the -- it's decidedly against proving

17           this particular motion.

18                THE COURT:  Well let me posit

19           another scenario, where it appears, on

20           an objective basis, that this addition

21           to compensation is warranted, generally.

22           That it is truly designed to get them

23           within range of what executives at

24           comparable companies make.  But, that

25           for your timing reason and Mr.

149

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        Rosenberg's timing reason it is not

3        approved in final form today.  What's to

4        keep your clients and the other unions

5        from saying, oh, well that's off the

6        table, forget it, you're not entitled to

7        that.  Even though, as an objective

8        matter, they are.

9            MR. KENNEDY:  Well, a couple of

10       things, Your Honor.  For one thing,

11       executive compensation programs are not

12       negotiable between labor unions and

13       employers.  The --

14           THE COURT:  I understand, but

15       in the negotiations that you want me to

16       defer this in light of, what's to keep

17       the unions from making this, in essence,

18       if it is, in fact, objectively

19       sustainable, a straw man issue, and

20       just, you know, a way to turn around and

21       gouge the company's eye with it.

22       Instead of focusing on the real, the

23       real things

24           MR. KENNEDY:  Well,

25       (indiscernible).

150

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2             THE COURT:  Going back to my

3        questions of Mr. Grandstaff, I can

4        understand, emotionally, and I'm not

5        playing -- I'm not in any way

6        denigrating emotions, because I think

7        emotion, people talking about their, you

8        know, their next pay check is probably

9        more important than logic in a lot of

10       cases.  I know that this is hard for the

11       unions to swallow, but at the same time,

12       I do see a bit of a disconnect between

13       that point and a point that just says

14       well look, we're never going to approve

15       it.  We're never going to let this

16       happen.

17             MR. KENNEDY:  And, Your Honor,

18       we are not standing -- you're saying, we

19       are never going to let this happen.  We

20       are suggesting to the court that the

21       consideration of this or of a plan such

22       as this, be put off until the conclusion

23       of successful labor negotiations and the

24       context -- and in the context of a

25       reorganization plan.  In which there is

151

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         an opportunity to focus on the future of

3         the enterprise where we know what

4         organizations and elements of this

5         company are going to be going forward as

6         Delphi.  When we know which executives

7         are going to be important for the

8         continuation of the company, because

9         they're not going to be part of alms and

10        aspects of the company that are going to

11        be eliminated.

12             THE COURT:  But over the next

13        six months aren't they -- these guys --

14        important no matter what?

15             MR. KENNEDY:  Well, I think

16        they're important, Your Honor, but over

17        the next six months, in the midst of the

18        most important labor negotiations this

19        company will ever face, the negative

20        consequences of the program, in our

21        view, outweigh the incentivising aspects

22        that it might otherwise have.

23             THE COURT:  Well, but are

24        those, ultimately, are those negative

25        consequences logically sustainable?

152

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2              MR. KENNEDY:  They are -- if we

3    reach a point, Your Honor, in six months

4    from now, in which we are sitting here,

5    one way or another, having achieved a

6    different labor context in which the

7    company is operating, and in that

8    context the company is seeking to

9    introduce an executive compensation

10   programs that they think are

11   appropriate, going forward for all the

12   reasons behind the estate, then the

13   unions would look at that, I think, very

14   differently.  I know my client would.

15   Then, they do not, since at that point,

16   we will have resolved the issues that we

17   are concerned, would be unresolvable, if

18   this program is put into affect.  So,

19   again, Your Honor --

20             THE COURT:  So you won't be

21   arguing with me that there's no reason

22   to incentivize them for the last six

23   months that have already been performed?

24             MR. KENNEDY:  Well that's an

25   interesting point, Your Honor.  I

153

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         probably would argue that, Your Honor.

3         But, I don't you'd agree with me. So,

4         based on what we've said before.  So,

5         let me just summarize, Your Honor,

6         because other people need to speak.

7         First, the approval of this program, we

8         think, will reduce the likelihood of the

9         agreements.  The debtor didn't consult

10        with any of its unions in formulating

11        this plan.  Which we think is

12        significant, and I direct your attention

13        to Geneva Steel Company, 236BR7 --

14             THE COURT:  Wasn't Geneva Steel

15        all about stock options and emergence

16        bonuses and really --

17             MR. KENNEDY:  Yes, it was, Your

18        Honor.

19             THE COURT:  Okay.

20             MR. KENNEDY:  There was an

21        incentive program, but a different kind

22        of incentive program, that's correct.

23             THE COURT:  Okay.

24             MR. KENNEDY:  We don't believe

25        this represents the exercise of sound

154

1   DELPHI CORPORATION, ET. AL.    05-44481-rdd

2          judgment given all the factors we've

3          identified, which at the end of the day,

4          I think is the critical issue, and we've

5          cited in our briefs some cases

6          demonstrating that the appropriate time

7          for the consideration of this kind of

8          motion is after labor negotiations are

9          completed and a reorganization plan is

10         being formulated.  We think there's no

11         necessity.  And, finally, Your Honor, we

12         do think this motion should be denied as

13         a matter of equity, fairness, and the

14         appearance of justice.  This is a very

15         well-known confrontation, if you want to

16         use that word, that we think its

17         incumbent upon the court to consider the

18         impact upon the entire spectrum of

19         people interested in Delphi of an

20         approval of this motion.  We think it

21         will be the wrong signal to all of the

22         participants, and we would urge you to

23         consider that impact as well.  Thank

24         you.

25              MS. CECCOTTI:  Good afternoon,

155

1     DELPHI CORPORATION, ET. AL.    05-44481-rdd

2            Your Honor, Babette Ceccotti for the

3     UAW.  I don't think I can do better than

4     the UAW's witness, frankly, but I will

5     try to summarize, particularly, in light

6     of the colloquy with the last couple of

7     -- the last couple of speakers.

8            Mr. Butler and his colleagues

9     are calling this a labor transformation

10    case.  We know what that means.  It's

11    sort of short-hand for a case in which

12    the debtor is focusing its

13    reorganization, very substantially, on

14    cutting labor costs, as they put, their

15    legacy obligations as well.  And, that

16    the workers are going to asked to make

17    deep and significant economic

18    sacrifices.  In the words of the

19    creditors committee, which we think is

20    completely on the mark, life changing

21    sacrifices.  And, it means that the

22    unions must be fully engaged in a

23    process that will be difficult and will

24    be complicated.

25            And, we hope that everyone in

156

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         this room shares our view, that a

3         negotiated solution of these issues is a

4         far better result for this case than the

5         alternative.  The union's case, as

6         you've heard, is that the AIP bonuses

7         are disruptive of that process. They're

8         disruptive of the process of trying to

9         reach a consensual resolution.  As

10        complex as that process already is,

11        adding this element to -- by this

12        element I mean, approving the bonuses

13        today for the executives will make it

14        even more difficult for the unions to

15        reach a negotiated solution that will

16        have the support of the UAW membership.

17             I think that is really the key

18        element of what each of the unions is

19        saying here today.  Bringing up the AIP

20        at the very same time, that the company

21        is -- it's practically now colliding

22        with the 1113 motion that the company

23        says it's going to file at the end of

24        next week, as other speakers have noted.

25        This creates, what Mr. Grandstaff called

157

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         a clashing in its message to the

3         workforce.  The membership that this

4         union, the UAW and the other unions,

5         have to communicate with, in order to

6         try to translate everything that is

7         going on in this case, in terms of the

8         legal system of what the bankruptcy --

9         what the bankruptcy laws allow the

10        debtors to attempt to do.  In terms of

11        the very, very complicated and difficult

12        economic issues.  That the union is

13        going to have the very tough job of

14        trying to distill, if you will, for the

15        worker's who are coming to work every

16        day and working for Delphi.

17             The debtor's case is a case

18        about executive compensation.  Most of

19        these key employee plan cases are about

20        executive compensation.  They have the

21        element of consultants coming in and

22        with charts and peer groups, and we've

23        had discussions today also about how the

24        targets work, and what they are.  And,

25        all of this is in the realm of how one

158

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        designs an executive compensation

3        program.

4            I think what you heard Mr.

5        Grandstaff saying is, that this is not

6        how the worker's are looking at this.

7        Right?  The workers are thinking about

8        the very real consequences to their

9        lives of concessions.  The level of

10       concessions that the debtor's are asking

11       about here.  They're not debating

12       whether the, sort of, unpronounceable

13       targets are right, or whether the peer

14       group is right.  They're looking at this

15       and they're saying I have financial

16       insecurity here.  I am looking at

17       serious financial insecurity here, but

18       here are executives being paid money.

19            THE COURT:  You know, I know

20       that that's a good talking point, but I

21       actually think people are a lot smarter

22       than that.  They know, by now, that the

23       issue that I have to decide, ultimately,

24       is one that comes down to this, and

25       which the unions, I understand, dispute:

159

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         the debtors are saying that we can't

3         compete without these cuts.  And, I

4         think, every American worker knows that

5         issue and in their heart of hearts they

6         know that competition is the key point

7         in this whole dynamic.  So, I'm having a

8         hard time accepting that, unless, you

9         know, you've had six or seven beers, and

10        you're really pissed, that the mere fact

11        that an executive is getting more money

12        is going to, you know, be the deciding

13        factor here.  If it is all put in the

14        context of what makes the company

15        compete better, why is that such a hard

16        message?  I mean, among other things, I

17        was just reflecting on the union's point

18        about whether the target's a lay up.  If

19        it is a lay up, and in fact their

20        performance is going to exceed it,

21        instead of being 80 million EBITDAR UG,

22        negative, they're positive, doesn't that

23        mean that they can, that the company is

24        going to take less from the

25        workers?  Because it's the same business

160

1      DELPHI CORPORATION, ET. AL.    05-44481-rdd

2          plan, and if the demands from the

3          workers are based on an 80 million

4          EBITDAR UG negative business plan and

5          they achieve, you know, ten million

6          EBITDAR plus, doesn't that mean they

7          have to ask

8          less from the workers because they're

9          more competitive?  I just think that, I

10         understand there's rhetoric, I

11         understand that it comes up in a labor

12         negotiation, but ultimately, it's over

13         whether you're competitive or not.

14             MS. CECCOTTI:  Your Honor, let

15         me try to answer the question this way.

16             I think that there are two,

17         really two issues, kind of mixed in

18         here.  Well, there's a lot of issues

19         mixed in, but, I think, in terms of your

20         question, there are two basic issues

21         mixed in here.  One is a sort of short

22         term practical reality and the other is

23         a more longer term question.  And, the

24         short-term practical reality is what we

25         are attempting to convey here today.

161

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         The timing issue is, in fact, a very

3         practical short-term problem.  The

4         debtor's have this time table that

5         they're on, and all of that is going to

6         start happening in a litigation way, I

7         suppose, next week.  So, I think it's

8         fair to assume that the parties are

9         having to deal with that fact, okay.

10        And having to deal with that fact both

11        in short-term reality, real-time basis

12        and, at the same time, in the long-term

13        to get to, what I think everybody here

14        would agree would be the goal, which

15        would be a successful Delphi

16        reorganization that's competitive and

17        provides job and financial security.

18        So, I think, today, however,

19        particularly since we're talking about a

20        program that is now being offered to you

21        on a short-term basis, it is appropriate

22        to look at the union's -- what the

23        unions are saying, is they're very real

24        short-term problem.

25             THE COURT:  Well, but I don't

162

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         know when people get over that.  I mean,

3         ultimately, and I know you've done this

4         a lot, the fairness that I'm supposed to

5         have to look at, ultimately, I think, is

6         based on a type of record that's put in

7         front of me today, which is, you know,

8         objectively, does this make the company

9         stronger or weaker and is everyone

10        sharing the appropriate amount of pain?

11        Not sharing pain, but the appropriate

12        amount.  So, I just hope that -- I

13        understand that there's explaining that

14        people have to do, but I don't -- I hope

15        that a request for an adjournment is not

16        just putting off the day when people

17        have to do explaining.  And, my guess

18        is, that they've already done a lot of

19        explaining, because it's been done in

20        countless cases involving 1113 in the

21        past.

22             MS. CECCOTTI:  Your Honor, let

23        me just make -- I'm sorry I didn't mean

24        to cut you off --

25             THE COURT:  That's fine.

163

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2              MS. CECCOTTI:  Okay.  Let me

3        just, when we filed our objection some

4        months ago, back when the debtor filed

5        its papers, I guess I papers were due in

6        mid-November some time.  You may notice

7        a reference to, sort of, the tone of

8        which this case started.  And, it was

9        unfortunate.  And, it was viewed very

10       much so, as an attack -- direct attack -

11       - on the worker's contracts and the

12       worker's working lives, really.  The

13       tone was really unfortunate.  I think

14       that we have gotten a bit beyond that,

15       but I'm not sure that the effects of all

16       of that poisoning of the well, I'm going

17       to call it for lack of a better word,

18       are necessarily gone.  And so, we have

19       overlaying all of these complex issues,

20       and there are lots of them, the way this

21       case started, the way it's been moving

22       along to get to this point, again, where

23       the debtor is saying February 17th,

24       that' it.  We're going to start a

25       litigation process.  Whatever else, we

164

1   DELPHI CORPORATION, ET. AL.   05-44481-rdd

2        may be doing, we're going to start a

3        litigation process.  And, right in the

4        middle of all of this, with all of that

5        history, we have a request to pay

6        executives 20 to 30 million dollars.

7        So, I -- I hear what you're saying

8        Judge, but I think that taking a look at

9        how this case started, and it's been

10       mostly about the labor issues, just in

11       terms of the way we call it -- what we

12       call it.  We call it the labor

13       transformation case, right?  That's what

14       the case is about.  I think, that a

15       debtor's request to come in and pay

16       money, I'm not going to get into the

17       debate about whether it's an increase or

18       not an increase, or a profit or not a

19       profit, I think all of that is -- does

20       not really get to the direct perception

21       that we are talking about here today

22       that's the problem.  On the one hand,

23       you have workers worried about the

24       uncertainty of what this means up to

25       this moment in time and what's going to

165

```
1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         happen on the 17th, and is there going

3         to be an agreement, and is there not

4         going to be an agreement, and knowing

5         today, let's say, if, Your Honor, were

6         to sign the order, that -- put aside the

7         fact that its in six months, the

8         executives are going to get 20 to 30

9         million dollars.  That just creates, for

10        these unions, an extremely difficult

11        practical problem.  It is a short-term,

12        I won't say issue, in the sense of it

13        goes away once there's an agreement.

14        Maybe it does, maybe it doesn't.  When

15        you have an agreement, you have a

16        completely different world.  You have

17        people that understand what's in front

18        of them.  You have people that can see a

19        path towards, hopefully a way out of

20        this case, as Mr. Grandstaff said, in a

21        way that makes the company successful.

22        It's a different environment; you just

23        look at things differently than you do

24        when you're right in the middle of the

25        eye of the storm, if you will, the
```

166

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         uncertainty.

3              THE COURT:  Okay.

4              MS. CECCOTTI:  I did want to

5         say, finally, Judge, that I think that

6         the Geneva is instructive because, I

7         think that Geneva is a timing case, if

8         you really look at it that way.

9              MR. PETERSON:  Good afternoon,

10        Your Honor, Lowell Peterson from Meyer,

11        Suozzi, English & Klein for the Steel

12        Workers.  I think we've all focused on

13        the, sort of, long-term reality of this

14        case, which is a euphomism, and that is

15        a labor transformation case.  This has

16        been -- this case has been presented as

17        the -- one of the largest, if not the

18        largest manufacturing bankruptcy in

19        history, the target is to restructure

20        the business in a number of ways, which

21        involve, according to the debtors,

22        enormous sacrifices by the hourly

23        employees.  Both in terms potentially,

24        of losing their jobs as plants are

25        closed or aspects of the operation are

167

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         shuttered, and in terms, facing enormous

3         pay and benefit cuts, including the

4         prospect of retirement without benefits.

5         I think there's been a notion that

6         somehow, and I understand it, that

7         somehow the employees, the workers if

8         you will, are reacting irrationally, and

9         that they should recognize, in some way,

10        that competitiveness is a good thing.

11        And, I actually think that, that misses

12        the point.  I don't think there really

13        is anything irrational about the

14        reactions of the hourly employees, and

15        there's actually no evidence in the

16        record to rebut the extensive testimony

17        of the union folks who have had

18        experience with this stuff.  I mean, Mr.

19        Shaw from the Steel Workers has been

20        through numerous bankruptcies with

21        executive compensation programs, and

22        without.  And, there is a world of

23        difference.  So it is -- it is, sort of,

24        true through historical experience, that

25        this kind of program makes it that much

168

DELPHI CORPORATION, ET. AL.    05-44481-rdd

1

2          more difficult to come to a consensual

3          resolution in a quote, labor

4          transformation, end quote case.  Which

5          means that the workers have to take a

6          lot of money out of their pockets.

7          That's what labor transformation means.

8          It's not a structural thing; it¦s a

9          direct sacrifice by these folks.  It is

10         simply true, as a matter of experience,

11         that, that's what happens in these

12         cases.  Whether we think it's a good

13         thing or a bad thing.  That is the way

14         people react and they; frankly, I think

15         it makes some sense.  I know Mr.

16         Springer and his cross examination of

17         the various union witnesses, sort of,

18         struggled mightily to get them to say,

19         isn't it true that there's no way you

20         can ever agree to any key employee

21         compensation program.  And, they all

22         said no, that's not what we're saying.

23         There's no ideological imperative here.

24         There's no -- to use Mr. Butler's

25         phrase, there's no -- nobody's using

169

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         this for strategic purposes to wrestle

3         some kind of constraints, this is --

4         we're dealing with a reality of what its

5         going to be like to go to union meetings

6         and try to get contracts ratified.

7         That's what we're talking about.  This

8         is true.  This is not speculation.  This

9         is not strategic advantages.  This is

10        what happens in the real world.  And in

11        the real world, all of these unions have

12        been through labor transformation cases.

13        They've been through restructurings.

14        They know what its like; they know what

15        the members look at.  They know what

16        companies look like.  And, it is

17        certainly the case, as the witnesses

18        suggested quite, declining to say yes to

19        Mr. Springer's continued insistence,

20        there are plenty of reorganization cases

21        in which the executives share the bounty

22        as well as sharing the sacrifices.

23        We're just not at that stage.  This,

24        right out of the box -- this case has

25        been about trying to wrest enormous

170

1    DELPHI CORPORATION, ET. AL.   05-44481-rdd

2         concessions from the employees, and that

3         is not the time to start talking about

4         increasing pay for executives.  And, as

5         I think the evidence is clear, we are

6         talking about the increasing pay for

7         executives, because that's where we're

8         going with this.  The evidence that the

9         debtor's themselves produced, indicate

10        that there haven't been these payouts in

11        the past, there haven't been payouts in

12        '01 or '03 or '04, and there was a

13        partial payout in '02.  And, that makes

14        some sense.  I mean, after all, isn't

15        the concept of incentive pay to be paid

16        for performance?  This is a company

17        that's nose-dived, according to

18        everything the debtor's have told us.

19        You get paid for performing well, not

20        simply for showing up and not screwing

21        up too badly.  The concept of pay for

22        performance means that the performance

23        has to be good.  And, the unions are

24        familiar with many corporations and have

25        good collective bargaining relationships

171

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         with many employers in which the

3         executives are incentivized.  And, in

4         which, when the company does well, they

5         get paid more.  The executives get paid

6         more.  That is not a problem that the

7         union members have with this.  The

8         problem is that that's not where Delphi

9         is.

10             THE COURT:  Well, why is that?

11        Based on today's record?

12             MR. PETERSON:  Why is --

13             THE COURT:  Then why do they

14        have a problem, based on today's record,

15        with this incentive program?

16             MR. PETERSON:  Because the

17        people are getting paid even with

18        negative EBITDAR.

19             THE COURT:  Well, a lot of

20        companies in bankruptcy are hitting a

21        home run if they raise the negative

22        EBITDAR from, you know, 200 negative to

23        50 negative.  I mean, that's a good

24        thing in bankruptcy often.

25             MR. PETERSON:  Well, it is a

172

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         good thing, but it is certainly a long

3         way from taking this company to where it

4         needs to be.  I would just -- I suppose

5         echo what my predecessors have said, and

6         that is there, will there come a stage

7         in this case in which the worker's feel

8         comfortable that, in fact, we're looking

9         at the light at the end of the tunnel,

10        in which things are going to turn

11        around?

12              THE COURT:  Yeah.  I'm --

13              MR. PETERSON:  But, we're not

14        there yet.

15              THE COURT:  I'm assuming,

16        though, that your clients have reviewed,

17        although they probably haven't finalized

18        their review, of the debtor's financial

19        information that they've been providing.

20        I mean, are these targets bogus, or are

21        they real, in light of that review?

22              MR. PETERSON:  Well, I don't

23        know exactly what you mean by bogus.

24              THE COURT:  Well, are they --

25              MR. PETERSON:   Are they

173

```
1     DELPHI CORPORATION, ET. AL.   05-44481-rdd
2         achievable, yes.  They are very
3         achievable, in fact the --
4             THE COURT:  Well, are they lay-
5         ups or is it really something that is
6         comparable to the other types of
7         incentive programs that unions have been
8         comfortable with, that you mentioned.
9         Like, you know, are they like that?
10            MR. PETERSON:  Well --
11            THE COURT:  The targets in
12        those programs.
13            MR. PETERSON:  In this historic
14        context, the fact is, that these
15        executives have not received payments,
16        even when the company was out of
17        bankruptcy.  So, from the perspective of
18        the unions, yes, they are lay-ups in the
19        sense that now, when the company is
20        doing particularly poorly, executives
21        will be getting 20 million dollars,
22        where for the past five years, when the
23        company was not in bankruptcy, they
24        didn't.  So, in that sense, yes, it is a
25        different way of doing business, and
```

174

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        these executives are going to be getting

3        rewarded where, in the past --

4              THE COURT:  Is it only --

5              MR. PETERSON:  -- they showed

6        they wouldn't be.

7              THE COURT:  Is it only in that

8        sense?

9              MR. PETERSON:  Is it only in

10       that sense?  I would say that its -- I

11       would say that you're correct that

12       people have informed an arithmetically

13       precise determination about whether 80

14       million negative or 90 or 20 million is

15       a better target.  I would say that that

16       level of analysis hasn't been done.  I

17       don't think that that is positioned in

18       this reorganization process that the

19       unions find themselves in.  Or that the

20       union members find themselves in.  It

21       could be that there is --

22             THE COURT:  Yeah.  In other

23       words, they haven't gotten to that point

24       yet.

25             MR. PETERSON:  No.

175

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2              THE COURT:  Analysis of the

3         business plan.

4              MR. PETERSON:  No, I don't

5         think the business plan is necessarily

6         to that point itself.  There is a short-

7         term business plan, but as we understand

8         it, the longer term program for taking

9         this company out of chapter 11 is --

10        it's in very preliminary stages.

11             THE COURT:  No, but as to the

12        six month targets, that's really what I

13        want to focus on.  It has been pretty

14        well vetted?

15             MR. PETERSON:  I can't give you

16        the answer to that, Your Honor.  I

17        haven't asked that question to my

18        clients.

19             THE COURT:  Okay.

20             MR. PETERSON:  I think what --

21        there is a -- there's some additional

22        problems that need to be pointed out

23        though.  In addition to the, sort of,

24        concrete and unrebutted experience that

25        the unions have had with these kind of

176

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         programs, let's look at what, in fact,

3         these executives have been paid.  And,

4         we have some exhibits that are in the

5         record that are in this, sort of,

6         separate binder, that suggest that some

7         of the arguments that company's made

8         maybe hasn't emphasized quite so much

9         today, but it's all over its motion

10        papers, which is that their executives

11        are running for the doors because pay is

12        so uncompetitive, and their current pay

13        structure is too low.  People want to

14        leave because they can make more money

15        elsewhere.  What those numbers don't

16        include is substantial amounts of money

17        that were actually paid to these

18        executives in 2004.  And, in fact, if

19        you look at the documents that were

20        presented to us in discovery, you will

21        see that the executives were paid lots

22        more money in 2005, the failure year, if

23        you will, and then they were in 2004.

24        So the factual predicate that somehow

25        these executives had been hurting for a

177

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         long time, and they have to have their

3         opportunities expanded, might some good

4         in the abstract.  But, it isn't

5         factually accurate.  There were

6         substantial wage increases across the

7         executive ranks, across the ranks of the

8         executives who have been identified as

9         targets of this AIP.  For example, in

10        Band G, the average increase was 25

11        thousand dollars a year, in January 1,

12        in January 2005.  There was a cancelled

13        deferred compensation program which

14        resulted in enormous payments.  Hundreds

15        of thousands of dollars of payments in

16        many cases.  There were 24 executives

17        who got more than 100,000 dollars each.

18        Four got more than 500,000.  One of them

19        got a million seven.  Now, canceling a

20        deferred compensation plan means that,

21        that plan is not there, but in a

22        bankruptcy context --

23             THE COURT:  Is that a stock

24        plan?

25             MR. PETERSON:  I'm sorry.

178

1    DELPHI CORPORATION, ET. AL.   05-44481-rdd

2              THE COURT:  Was that a stock

3         plan?

4              MR. PETERSON:  No, that was not

5         a stock plan, as far as I understand it.

6         The stock component of their

7         compensation is, still shows up on the

8         sheets as income to them.  I think we

9         would all concede that the actual value

10        of Delphi stock is something that's sort

11        of up for grabs at this point.  But a

12        def -- in bankruptcy, of course,

13        deferred compensation plans, are not

14        bested plans, they're not a risk or

15        regulated plans.  Frequently, any claims

16        under those plans disappear or become

17        general in secured claims.  So, that was

18        a lot of money that these executives

19        received.  So, the concept that somehow

20        there's a rush for the gates, or these

21        executives are going to be -- have low

22        morale, because of these unconscionably

23        low compensation schedules is simply

24        belied by the record.  I want to also

25        suggest that a central feature of the

179

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         pleadings mentioned, or touched upon by

3         debtors in their oral argument today, is

4         that you've got underpaid executives and

5         overpaid workers.  That is simply not

6         true.  And the fact that this issue

7         continues to be framed in that way, I

8         think, continues to set the wrong tone,

9         to pick up Ms. Ceccotti's argument in

10        this case.  It is when we get into the

11        proper forum for addressing this alleged

12        -- allegedly over paid workforce.  We

13        think the evidence will convince Your

14        Honor, that that's a vast overstatement.

15        We are still looking for that guy who

16        makes 65 dollars an hour to cut the

17        grass.  We haven't found him yet.  I

18        don't think he exists.

19             THE COURT:  Well, leave that

20        aside.  Where is the evidence that the

21        executive are not underpaid on today's

22        record?

23             MR. PETERSON:  I think the

24        evidence that they received substantial

25        money that wasn't presented to the court

180

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         in the analysis is evidence of that or

3         is determined to the know?  I do think

4         that it's true, it's fair to say that

5         our central argument is not a market

6         argument, is not a competitiveness

7         argument.  It's not an argument that at

8         no point in the future should these

9         executive salaries be looked at, and

10        considered in the context of an overall

11        plan for rehabilitating this company.  I

12        think our central argument is that, if

13        the central goal of this case is to

14        extract large wage and benefit

15        concessions, there's no reason to light

16        this fire, at this time.  This is simply

17        not the appropriate approach.  Because,

18        like it or not, the members get to vote

19        on changes in their contracts.  And,

20        this is not something that's stirred up

21        by the unions, this is something the

22        unions -- that member bring to the

23        unions and we've seen in case after case

24        after case.  And, at this point in time,

25        these kinds of payments to executives,

181

```
1    DELPHI CORPORATION, ET. AL.    05-44481-rdd
2         in this context, when there simply isn't
3         any sense of where we're going as a
4         company, where these workers paychecks
5         will come from in the future, and what
6         they're going to be.  This is not a
7         time, as I say, to light that fire.
8         And, I think that's really the central
9         argument we're making.  And, again,
10        we're not saying never.  We're just
11        saying that this too much at this stage
12        in the context of the 1113 motions, and
13        the enormous set of proposals.  The
14        enormous cuts proposed by these debtors
15        in this case, that the debtors have not
16        backed off from, have suggested that
17        they're interested in continuing to
18        pursue rejection of the collective
19        bargaining agreements on a defined
20        timetable.  I mean, that horse is out of
21        the barn.  It's marching down the path.
22        In that context, we suggest that this is
23        not an appropriate time to grant the 20
24        million dollar AIP.
25             THE COURT:  Okay.
```

182

1      DELPHI CORPORATION, ET. AL.    05-44481-rdd

2                    MR. PETERSON:  Thank you.

3                    MR. FOX:  Good afternoon, Your

4        Honor, Edward Fox from Kirkpatrick and

5        Lockhart on behalf of Wilmington Trust

6        Company, as indentured trustee for the

7        company's senior debt and senior notes

8        and debentures.  Your Honor, I'll be

9        very brief.  Wilmington Trust shares the

10       view of the committee, as expressed by

11       Mr. Rosenberg.  But, I would take a

12       minute to just put it in a little bit of

13       perspective.  If you recall, we were

14       here on November 29th, on the debtors

15       supplier agreement assumption procedures

16       motion.  And, at that point, the debtor

17       asked for permission to pay suppliers if

18       need be, portions of their pre-

19       petitioned claim as part of the

20       assumption of their contracts going

21       forward, out of concern that if the

22       vendors failed to supply the company

23       going forward, failed to -- or refused

24       to do business with the company going

25       forward, that it could cause substantial

183

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         disruptions in the supply chain and that

3         it could cause the debtor damages of, I

4         believe it was as much as 10 million

5         dollars a day, if they failed to supply

6         their customers as they were required to

7         do.   It seems to us that the hourly

8         employees, who are as much a part of the

9         supply chain as any of the vendors, and

10        if they fail to show up one day for work

11        because they are standing outside the

12        gates picketing, rather than having

13        ratified an agreement, that the

14        magnitude of harm would be similar

15        there, as would be if the vendors failed

16        to supply.   We are guided by the

17        testimony and the evidence that we've

18        seen from the unions, with respect to

19        their concerns, not about negotiations,

20        but about ratification.   And, that's

21        where our concern is.   When we balance

22        the potential harms that could occur,

23        one verses the other, of being -- them

24        being unable to ratify an agreement

25        verses the harm that might come, or the

184

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         benefit that might be gained from having

3         the attitude that this point in time, we

4         end up coming down on the side of

5         waiting, at least until a little later

6         in the process, rather than doing this a

7         week before the 1113 process begins.

8              THE COURT:  Okay.

9              MR. FOX:  Thank you.

10             MR. BECKWORTH:  Your Honor,

11        Brad Beckworth again, on behalf of the

12        Oklahoma Teacher's Retirement System,

13        Mississippi Public Employees Retirement

14        System, Refesa and ABP.  Your Honor, we

15        are mindful and indeed very respectful

16        of the importance of the issues that are

17        at stake today.  And, I want just to

18        make clear to the court, that it is not

19        our purpose in objecting to object to

20        the fact that there is an AIP or KECP

21        proposed.  It's not our objection that

22        we should never have one for Delphi.  We

23        don't take a stake in that at all.

24        That's for other folks.  What we have

25        done, Your Honor, and what I think the

185

1    DELPHI CORPORATION, ET. AL.   05-44481-rdd

2         record shows today, is show that there

3         are some significant aspects in where

4         the proposed plan falls short of what

5         needs to be done.  And, one of the first

6         things I would like to turn to Your

7         Honor, is the court's decision, Judge

8         Gonzales' decision in re Enron, the

9         bankruptcy case that was pending here in

10        the Southern District.  In the debtor's

11        response that was filed a day or two ago

12        to all -- collective response to all of

13        the objections, in paragraphs 91 and 92,

14        the debtor cited Enron two decisions by

15        Judge Gonzales in reference to their

16        prophylactic measures.  I read that

17        opinion, and I asked some questions

18        regarding it, at the very beginning of

19        my cross examination of Mr. Webber, and

20        I find it instructive.  In that case,

21        Judge Gonzales refused to allow

22        participation in the program that was at

23        issue there in several very important

24        regards that we don't have here.  First,

25        Judge Gonzales did not allow anyone to

186

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         participate in the proposed plan, if

3         they were a named defendant in the

4         pending securities litigation brought by

5         the California pension funds, against

6         Enron.   Second, The Court did now allow

7         participation by anyone who had been

8         found to be a wrongful actor by Enron's

9         in-house investigative committee, or

10        special investigative committee that was

11        used there to determine what was going

12        on.   Third, Judge Gonzales did not allow

13        anyone to participate if the independent

14        examiner that was used in Enron, found

15        that anyone had acted with dishonesty.

16        And, fourth, and particularly relevant

17        here is, The Court did not allow

18        participation or, in fact, required

19        forfeiture, if anyone who was a

20        participant under that program, was

21        ultimately found to have acted with

22        dishonesty against the best interest of

23        the company.   And that was the standard

24        by any court of competent jurisdiction,

25        and that includes, I believe Judge

187

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         Harmon's court is dealing with the civil

3         litigation that's going on, in that

4         case, down in Houston and the Southern

5         District of Texas.  I asked Mr. Webber

6         if the current program being proposed,

7         or what we are dealing with today, has

8         any of those provisions in it.  And, the

9         answer was, no, they don't.  Your Honor,

10        at a minimum, if Delphi is going to rely

11        upon that case for any precedent, we

12        believe that any program that is at

13        stake here should have requirements such

14        as those.  That's the kind of thing that

15        we've objected to, that it didn't have

16        those safeguards.  Now, we have a great

17        deal of respect for the fact, that for

18        whatever reason, whether it was in

19        December or after Your Honor's comments,

20        whenever it occurred, that the debtor

21        and the creditor's committee have gotten

22        together and discussed prophylactic

23        measures.  We think that is a step in

24        the right direction and we applaud that.

25        We do find, though, that there are some

188

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         things that we believe fall quite short.

3         And, I have to go back to one thing

4         before we get to that.  First, we have

5         shown, I think, in the record, that the

6         compensation committee that was in

7         charge with drawing up and negotiating

8         the various aspects of this program, we

9         don't think they did an adequate

10        investigation about the allegations that

11        are going on with this company.  In

12        fact, we believe they did no

13        investigation at all.  Now, Your Honor,

14        there's been a lot said about the

15        allegations that we have raised in our

16        securities litigation, our objection

17        here.  But, I would like to turn this

18        court's attention, that there's a whole

19        other body of allegations that have been

20        raised here.  There's a restatement by

21        this debtor.  There's an investigation

22        that is ongoing that has had some

23        conclusions already by its audit

24        committee with the help of PWC and

25        Wilmer Cutler help, was hired by them.

189

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         There's the SEC's investigation and, I

3         think it was Wednesday, when we were in

4         court with Judge Rosen in Michigan; the

5         U.S. Attorney was there with several

6         former employees from Delphi being

7         represented by criminal defense counsel.

8         And, the court met in chambers with them

9         about that, we don't know what all was

10        said.  The point is, there are a lot of

11        investigations going on.  We believe,

12        especially with respect to the audit

13        committee's finding that the debtor has

14        available to it, a wide body of

15        information upon which it can determine

16        whether certain people, that are

17        currently eligible to participate in

18        this program, shouldn't be there.  In

19        fact, Your Honor, we think that they

20        have, quite likely, in the findings of

21        the audit committee, we don't know what

22        standard they used, but we believe that

23        there may be findings in the audit

24        committee's reports, regarding a

25        culpability standard about people that,

190

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         using the standards we talked about with

3         Enron and some of the questions that we

4         asked that they regard in their claw-

5         back procedures, people that under that

6         standard shouldn't be there.  We have

7         looked at one of the statements that

8         Delphi's made in some of it's papers

9         that says, with respect to complaints

10        about wrongdoing, the worse thing that

11        we can do is ignore them, do nothing and

12        allow them to grow worse.  I think that

13        comes from their code of conduct.  Your

14        Honor, we submit to the court that, that

15        is precisely what the debtor has done

16        with respect to the compensation

17        committee's view and review of the

18        allegations that have been raised

19        against eligible KECP participants.

20        Now, I won't go into the names or any

21        identities or even numbers, but I think

22        the records will show that there are

23        current, in fact, quite a few current

24        eligible KECP participants, who have

25        been a party to these investigations.

191

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         I'm not saying they're targets, I'm not

3         saying they've been accused of any

4         wrongdoing.  But, they have been

5         involved.  But the compensation

6         committee, to our knowledge, based on

7         the record that we've submitted here

8         today, have never looked at what was

9         said, what was known about those folks.

10        Now, building on that, with respect to

11        the prophylactic measures, Your Honor,

12        we submit to the court that the claw-

13        back provisions that are in place, is a

14        good starting point. The standard in

15        place is, did they act -- did an

16        individual act -- fail to act in good

17        faith, and against the best interest of

18        the company.  But, what I asked Mr.

19        Webber, and what Mr. Angelovich asked

20        Mr. Opie is, what about moving that

21        standard to the front end, as a standard

22        for escrow.  I think that is a very

23        appropriate standard, similar to the

24        standard used by Judge Gonzales, and

25        there's absolutely no reason why this

192

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         compensation committee cannot make that

3         evaluation with at least with respect to

4         the 17 people that we named in our

5         objection.  The testimony during

6         depositions, and I don't think anyone

7         here would disagree, that if our

8         allegations are true, they are serious

9         allegations.  If that's true, is it

10        asking too much of the debtor, given

11        what's going on, to, at least, look at,

12        under that lower standard of the claw-

13        back procedure, look at those employees

14        and see if they have been guilty of

15        violating that standard.  And, if so,

16        escrow the money.  Now, a lots been said

17        --

18             THE COURT:  Well, can I

19        interrupt you there?

20             MR. BECKWORTH:  Yes, Your

21        Honor.

22             THE COURT:  Wasn't it the

23        testimony that if you employed that

24        standard, because it is a rule or

25        standard, you have to have a due process

193

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         hearing?  So, then you'd be involved in

3         a lot of litigation over simply putting

4         it into escrow, whereas what's been

5         derived as far as the escrow standard,

6         is an objective standard that's based

7         upon some other factor such as the SEC

8         or an indictment or, or the employee,

9         him or herself, taking objective step,

10        like invoking the fifth amendment, where

11        you don't need that type of due process

12        and you could just say its in the escrow

13        like that, and we're going to postpone

14        this issue until it's decided in the

15        future.

16             MR. BECKWORTH:  Your Honor, I

17        think that the question I asked of Mr.

18        Webber with -- exact to that, was that

19        first he said yeah, they may, I'm not

20        sure, but they may be entitled to due

21        process.  But the ultimate issue is,

22        this plan, whether it's approved and the

23        scope of what is approved, you know, I'm

24        not a bankruptcy lawyer, but I believe

25        that's up to Your Honor.  And, I believe

194

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         its up to Your Honor to determine

3         whether, and to what extent, those due

4         process safeguard -- due process

5         safeguards are there.  This isn't asking

6         to take money away from somebody that

7         they already have.  It's asking, simply,

8         that even if they hit these targets, and

9         they're entitled to that money, that it

10        be held in safekeeping until a later

11        time.  I don't think that's too much to

12        ask.  And, I, you know, I may be wrong,

13        but I just don't see it.  Now, Your

14        Honor, with respect to the prophylactic

15        measures, were just simply asking to

16        change the order.  But, we're also being

17        asked by the debtor, and to some extent

18        by the committee, to put an awful lot of

19        trust in these folks, to go after these

20        people.  Well, I think there's inherent

21        conflict there.  We see the fight that's

22        gone on and, you know, they have every

23        right to fight us with what they've

24        done, but, Your Honor, if there are

25        ongoing federal and civil investigations

195

1      DELPHI CORPORATION, ET. AL.    05-44481-rdd

2           and perhaps criminal trials and SEC

3           actions and our action, wouldn't it be

4           somewhat against the debtor's best

5           interest to actually go out and go

6           through these claw-back procedures in

7           the scope of all that's going on?  I

8           mean, I think it is.  And, so one

9           suggestion we have, is whether there

10          should be some independent party

11          involved, maybe an examiner to act with

12          both the board and the creditors

13          committee.  I think there's been a lot

14          made about timely here, Your Honor, and

15          one of the things that I think I would

16          close with is, we think the timing on

17          these prophylactic measures are

18          premature.  Not that they shouldn't have

19          ever been done, we wish they had been

20          done back when they proposed this plan,

21          but it's simply something that's, I

22          think, they've rushed with a good

23          motive, but a rush to put together.  I

24          don't think they'd go far enough.  They

25          haven't even given time for the dust to

                                                                  196

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         settle, not with respect to our

3         proceedings, but these very serious

4         governmental investigations.  And all

5         that we're asking is simply to look at

6         the people we've named and ask the

7         compensation committee to look at the

8         audit committee review standard that's

9         out there, determine whether that

10        standard comports with the standard that

11        they have for claw-back procedures, and

12        look at every other thing that's

13        available to them and just make a basic

14        determination of whether wrongdoers are

15        being left at the company.  And,

16        finally, there's another problem with

17        all of this.  You've talked about the

18        targets and whether they're a lay up and

19        all that, the people, the way we

20        determine based on the testimony,

21        whether those targets have been reached,

22        my understanding is based upon the

23        financial reporting and accounting

24        statements that'll be filed by the

25        debtor.  Our allegations show, or at

197

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        least suggest, that some of the people

3        that have been charged of that very

4        process, who may have been involved in

5        the wrongdoing that led to the

6        restatement, are still in the same

7        position now to determine whether the

8        statements reach a level that meet those

9        targets.  We think that could do further

10       damage to the company.  We certainly

11       don't think it's appropriate that

12       someone like that should be rewarded

13       under a program like this.  Your Honor,

14       we appreciate your time.

15            THE COURT:  Please don't sit

16       down.  In Enron hadn't there already

17       been indictments?

18            MR. BECKWORTH:  Your Honor,

19       there's two --

20            THE COURT:  And, in fact guilty

21       pleas?

22            MR. BECKWORTH:  I do not know

23       the answer to that because there are two

24       cases cited two different versions of

25       Enron that were cited.  The last one

198

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         that I was quoting from was February 6,

3         2003 and I'm pretty sure by that time --

4              THE COURT:  So, that's clearly

5         post Arthur Anderson and post the

6         indictments --

7              MR. BECKWORTH:  Yes, I think by

8         that time that is true.

9              THE COURT:  All right.  And

10        then after -- wouldn't it, as a

11        practical matter, if some other court

12        found the trigger, dishonesty as you

13        quoted Enron, wouldn't that be res

14        judicata or collateral estoppel for me.

15        I mean, there it is as a practical

16        matter, why would I have to spell it

17        out?  They could be in any court.

18        Because as a practical matter, that

19        would be the case.

20             MR. BECKWORTH:  You mean, if

21        they found that these standards had been

22        hit, that you'd have to rely upon that?

23             THE COURT:  Yeah.

24             MR. BECKWORTH:  Oh, I don't

25        disagree with that at all.

199

DELPHI CORPORATION, ET. AL.    05-44481-rdd

            THE COURT:  And -- okay.

            MR. BECKWORTH:  But I would
    have two comments with that.  One is,
    you are talking about a standard that,
    let's just take for instance, a criminal
    standard, that may be higher, and in
    fact, is higher than the current claw-
    back procedures and is higher than
    what's in their own code of conduct
    about what's appropriate so --

            THE COURT:  Well, but I don't -
    - under -- I mean, how -- what other
    context would it be?  I mean, it's
    either going to be a criminal finding or
    a finding of, you know, fraud or some
    other thing in a civil action.  So, what
    -- I mean, this particular standard goes
    beyond, generally, what any court would
    be asked to find.

            MR. BECKWORTH:  Your Honor,
    there is no provision in the current
    escrow that deals with the securities
    litigation.

            THE COURT:  I'm not talking

200

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         about the escrow.

3              MR. BECKWORTH:  You're just

4         talking about the claw-back provision?

5              THE COURT:  Yeah.

6              MR. BECKWORTH:  I think the

7         claw-back provision's fine.  I don't

8         have a problem with that at all.  We're

9         talking about the escrow because it

10        does, you have got to assume that to get

11        to the claw-back provisions these other

12        things have to happen first and we're

13        depending on government bodies with

14        different ideas, and different resources

15        that are available to the debtor,

16        whether they're actually going to even

17        go through with these proceedings.  That

18        we don't know.

19             THE COURT:  Well, and again, as

20        far as timing is concerned, this

21        wouldn't get awarded on the debtor's

22        program for six months.  Your motion,

23        the motions to dismiss in your

24        litigation are to be filed next month

25        and probably will be heard by then,

201

1    DELPHI CORPORATION, ET. AL.   05-44481-rdd

2        won't they?

3              MR. BECKWORTH:  Your Honor,

4        under the current standard, the motions

5        will be filed March 15th, I don't think

6        we're supposed to reply to those until

7        May 6th, and then the debtor has another

8        60 days or 30 days to respond.  I can't

9        imagine that these will be responded to

10       until later.

11             THE COURT:  Ah, if only I were

12       a district judge.

13             MR. BECKWORTH:  Touche.  Thank

14       you, Your Honor.

15             THE COURT:  All right.  So you

16       may not have any determination by the

17       time the six months run.

18             MR. BECKWORTH:  I think it's

19       highly unlikely that we would.

20             THE COURT:  Okay.

21             MR. BECKWORTH:  Thank you, Your

22       Honor.

23             MS. LEONHARD:  Good afternoon,

24       Your Honor, Alicia Leonhard for the

25       United States Trustee.  Your Honor, the

202

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        United States Trustee recognizes the

3        value of incentive programs for

4        executives and also their propriety and,

5        is not categorically opposed to one for

6        the Delphi employees.  However, the U.S.

7        Trustee does join with all the other

8        objectors in stating that the relief is

9        premature to grant the relief.  And, I

10       think that the reasons may be perhaps, a

11       bit different from the other people.  I

12       have a little broader picture is that

13       the benefits of waiting and revisiting

14       the issue in six months, really outweigh

15       the detriment to the executives.  I

16       didn't see any evidence that any of

17       these executives are going to flee in

18       the next six months because they didn't

19       get their incentive, but I t certainly

20       overcomes a huge public relations

21       problem that the debtor has, and a huge

22       public perception problem of unfairness.

23       And, in addition, the parties can, we

24       can see how the debtor's business plan

25       is operating, if the targets are proper

203

1   DELPHI CORPORATION, ET. AL.   05-44481-rdd

2       and I believe that there will be no harm

3       to anybody, so --

4           THE COURT:  I'm going to ask

5       you the same thing --

6           MS. LEONHARD:  Yes.

7           THE COURT:  I asked Ms.

8       Ceccotti.  But, aren't you always going

9       to have that public perception problem?

10      I mean, if you reached an agreement with

11      the unions and, you know, then as part

12      of the confirmation, you retroactively

13      approved this plan, and other aspects of

14      a plan, aren't people going to say,

15      well, you know, they snuck one by us?

16          MS. LEONHARD:  No, I don't

17      believe so, Your Honor.  I think, you

18      know, because I believe that if, you

19      know, once you -- if you're emerging

20      from bankruptcy with a plan, with an

21      exit strategy, theoretically in good

22      financial condition, and ready to move

23      forward lean and mean, I don't think

24      anybody's going to object to proper

25      compensation for the executives.  And,

204

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         so I think, you know, I understand your

3         comment, but I believe that it will not

4         be taken that way.  So with that, the US

5         Trustee would request that Court defer

6         this matter and --

7              THE COURT:  Okay.

8              MS. LEONHARD: -- for six months

9         or so.  Thank you.

10             THE COURT:  All right.

11             MR. BUTLER:  Your Honor, first

12        I want to just correct something that

13        may be in the record in Mr. Kennedy's

14        remarks.  He was talking about Mr.

15        Budgnovich's declaration at paragraph

16        32.  I believe it was Mr. Kennedy, that

17        raised the issue about having positive

18        Ebeda performance for the six month

19        period, but a negative ebadar ag and he

20        sort of said that meant that already

21        we're saying that our performances are

22        going to be better than the plan.

23        That's not what paragraph 32 says.  What

24        paragraph 32 says, is that at the

25        corporate level the target EBITDAR ug

205

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         with the u and the g taken out, is

3         derived from the debtor's business plan,

4         as approved by the board of directors

5         and it's a negative 80 million.  Then it

6         goes on to say, that the company expects

7         that its EBITDAR without the ug taken

8         out, will be positive for the six month

9         period.  They're two different measures

10        and the business plan, as it turns out,

11        has positive EBITDAR in the six month

12        plan, but when you remove, as we agreed

13        to do in our negotiations with the

14        creditor's committee, the effect of

15        anything in the plan, related to General

16        Motors or union activity, it caused it

17        to be a negative 80 million, that it was

18        a number that was derived.  So, I don't

19        want the court to have the impression

20        that the way this was constructed that

21        we set the number at negative 80 million

22        but the plan already had a bunch of

23        money in it that suggests that the

24        company is going to perform.  That's not

25        the case at all.  Addressing first the

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         lead plaintiff's comments on

3         prophylactic provisions, I was active in

4         the Enron case.  I was special counsel

5         to the debtor's.  We were involved with

6         all the congressional investigations.  I

7         was very aware of what Judge Gonzales

8         ruled and didn't rule on those matters.

9         Enron was in a very different place at

10        the time these programs were considered.

11        And, while it is true, on the one hand,

12        that not every provision that was in the

13        final arrangements with Judge Gonzales

14        in that order, I remiss.  It's also true

15        that most of the prophylactic provisions

16        that are in this order, that we've

17        negotiated on, or proposed order that

18        we've negotiated on and agreed to with

19        the creditor's committee, were not in

20        that program.  And, I think -- and the

21        other piece of it that I think reflects

22        something that may not, just to be

23        clear, there was a suggestion somehow in

24        argument that the claw-back mechanism is

25        only available if there wasn't an

207

1   DELPHI CORPORATION, ET. AL.    05-44481-rdd

2           escrow.  That, you know, escrow -- the

3           escrow had to trigger something in order

4           for there to be a claw-back or

5           forfeiture, and that's not the case.

6           There are two independent measures.  One

7           is, what are the facts objectively, Your

8           Honor, identified those that would have

9           had to occur objectively that would

10          cause somebody to go into escrow?  And

11          it may not matter to anybody else, it

12          would certainly matter to the executive

13          whose pay is being deposited an account

14          and they're not getting it.  What are

15          the objective standards to do that early

16          on?  And, by the way, it's not just that

17          the third party standards, its if the

18          committee decides there's a claim or the

19          debtor's decide there's a claim.  And,

20          there's a check and balance there, and

21          we're involved as co-fiduciaries, in

22          looking at various matters.  That's what

23          creates the escrow.  What would cause a

24          forfeiture of that escrow, or a claw-

25          back of anything paid that was not

208

1    DELPHI CORPORATION, ET. AL.   05-44481-rdd

2         escrowed, are the procedures that even

3         the lead plaintiffs have conceded seem

4         to reasonable to them.  And, Your Honor,

5         we -- and even on that there's a check

6         and balance because, in addition to the

7         due process given to the employee

8         involved, the creditors committee gets

9         to review the record.  If they think,

10        somehow, we have not done our job and

11        made the appropriate determination, we

12        agreed that we would come to you for a

13        ennoble review, not just your overseeing

14        what we did, but you'd have to have a

15        chance to take a fresh look at that

16        record.  We hope to never get to your,

17        Your Honor, because we think the co-

18        fiduciaries can address these issues on

19        our own, but we wanted to have a very

20        transparent check and balance in the

21        system.

22             THE COURT:  Is there a problem

23        with providing, what I think Mr. Opie

24        said, would actually happen in practice,

25        that if the audit committee, which of

209

1      DELPHI CORPORATION, ET. AL.    05-44481-rdd

2          course he serves on as well as the

3          compensation committee, determined that

4          the employee, in its view, fit within

5          the claw-back definition, that it would

6          -- it would so inform the compensation

7          committee?

8                  MR. BUTLER:  Your Honor, I had

9          -- we certainly can add that to the

10         order.  The reality is, the order

11         already says, if the debtor and that's

12         everybody --

13                 THE COURT:  I know, but there's

14         a perception, I think, that the one

15         doesn't talk to the other, even though,

16         of course, Mr. Opie's on both of them.

17                 MR. BUTER:  We can certainly

18         fix that perception, Your Honor.

19                 THE COURT:  Okay.

20                 MR. BUTLER:  The other piece

21         and I'll try to be relatively brief

22         here, except I do want to just respond

23         to the objections that were made.

24         First, there are a lot of processes that

25         were going on here, and labor

210

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         transformation, the 1113 process is one

3         of the most important things that are

4         involved in the case.  But, its one of

5         three or four primary objectives that we

6         put in place here.  And, as we're

7         thinking about this program --

8              THE COURT:  I'm sorry, I want

9         to interrupt you because I want to make

10        sure -- and you're not a criminal

11        lawyer.  By agreeing to that, does that

12        create any issues in complying with SEC

13        investigations and the like?  I would

14        think it would not, but, I just would

15        want to make sure that it does not,

16        somehow blow the lid on -

17             MR. BUTLER:  I don't think --

18             THE COURT:  -- confidentiality

19        issues that the government may have

20        imposed on the audit committee or vice

21        versa.

22             MR. BUTLER:  I'll check with

23        the audit committee, and the audit

24        committee is not going to be releasing

25        information from the government.  I

211

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         mean, that's a different -- and we won't

3         breech that wall, Your Honor.

4              THE COURT:  All right.  I'm

5         sorry.  I'm sorry to interrupt you.

6              MR. BUTLER:  No, I was -- with

7         respect to the issue of the labor

8         transformation matters here, that is one

9         of the three or four primary objectives

10        of this case, which is to address and

11        resolve those issues, hopefully, like

12        all of us want to do on, if we can, a

13        consensual basis.  But in considering

14        this program, and considering whether

15        Your Honor, will ratify -- essentially,

16        ratify our business judgment, the

17        debtor's business judgment, in wanting

18        to restore a piece of that pie, that was

19        taken away, the question is, in doing

20        that and trying to deal with the 1113 is

21        to understand that these are on -- in

22        some respects, separate tracks, and also

23        to understand that the labor

24        transformation effects, and it's

25        important 46,000 people in this country

212

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        that are in the domestic spheres, and

3        oh, by the way, its not just the 34,000

4        folks who are represented and by the

5        unions.  There is going to be

6        transformation of the salaried workforce

7        in the domestic, in the United States,

8        as well.  As we implement SGNA

9        reductions and those folks -- some of

10       those folks go away.  This is not just -

11       - the burden is not just on labor.  But,

12       I want to simply point out, without

13       making any predictions, and without

14       anything -- saying one thing or another

15       -- the discussions between, that have

16       been publicly reported between the

17       company and its unions and General

18       Motors are active and vibrant and I'm

19       not going to characterize them.  But, I

20       also point out on the record here,

21       particularly with the media that are in

22       the room here today, that the scheduling

23       order that is docketed in this case,

24       that sets a February 17th filing

25       deadline, contains within it in the last

213

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         paragraph of that order, a statement

3         that if the debtor determines its

4         necessary, or appropriate to adjourn the

5         February 17th date, that that occurs by

6         notifying Your Honor's chambers and by

7         notifying the international unions and

8         the creditors committee.  And the

9         reality is, there are board of

10        director's meetings scheduled next week

11        in Troy, Michigan.  There's a creditors

12        committee meeting scheduled next

13        Thursday, here in New York, at which

14        these matters are going to be discussed

15        at great length.  And the debtor's will

16        do what is the appropriate thing, as a

17        fiduciary, on next Friday.  They will

18        either file something, or they will seek

19        another date, if that's what makes sense

20        in this case.  All right.  And that --

21        while everyone wants to tie these issues

22        directly together, and we'll have

23        debated with Mr. Rosenberg about why

24        these cases are closer in proximity, the

25        fact of the matter is, Your Honor's

214

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         already observed it.  There is no good

3         time in a Chapter 11 case of this type

4         to talk about executive compensation.

5         And, oh by the way, had anyone thinks

6         that it's okay once you have a deal, the

7         court only has to take some judicial

8         notice of what went on in United

9         Airlines, recently, after they had all

10        the deals, and the executive

11        compensation program was put at the end

12        and the consternation it caused among

13        all the unions, among the creditors

14        committee and all the litigation that

15        went on after all the other deals had

16        been given, there was never a good time

17        to deal with this.  But we made a

18        business judgment as a company, after

19        consulting with the creditors committee,

20        trying to figure out what made sense,

21        what's in the best interest of the

22        estate, we decided to put the bulk of

23        these issues, mostly around the long-

24        term incentive programs, and the

25        emergent things, off to another day.

215

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         Like everyone wants, let's put it off --

3         let's put if off six months.  What we

4         concluded, and the record is clear on

5         this, Mr. Opie is the lead director of

6         this company, came and testified to it

7         in his deposition, in his declarations

8         and on the stand, attest to the fact

9         that the board, the compensation

10        committee, all examined and though about

11        all these factors and issues.  And, on

12        balance concluded that it was in the

13        best interest of the estate, as the

14        debtors, to go forward with this program

15        of a limited restoration of part of the

16        pie that does not now, exist.  The -- in

17        reaching that --

18             THE COURT:  I'm sorry, I

19        didn't, you know, it's been a few hours,

20        but, where in his deposition does he

21        talk about the effect of this on the

22        negotiations with the union?

23             MR. BUTLER:  One moment, Your

24        Honor, I'll get you the --

25             THE COURT:  I'm sorry.  His

216

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         affidavit, not his deposition.

3              MR. BUTLER:  Your Honor, its

4         discussed in his testimony on paragraph

5         28 of the declaration on page 15.  And,

6         they're also exhibit -- you also have an

7         exhibit 11, Your Honor, at exhibit 11,

8         you have the board minutes for the

9         February 1st meeting at which there is

10        also further reference to it.  Where it

11        said in the board minutes, on page 2 of

12        the board minutes, there's a whole

13        discussion regarding the -- that Mr.

14        Miller had led, regarding the

15        discussions with the UCC regarding the

16        proposed six month plan.  I discussed

17        the terms of the plan.  He discussed --

18        indicated that the rest of the program

19        was putting off to a later date.  He

20        reviewed with the directors, the issues

21        raised with the UCC and management.  He

22        noted about the declaration need be

23        filed at February 10th.  He talked about

24        trying to resolve the issues with the

25        UCC, talked about what the alternatives

217

1   DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        were, talked about deferring all actions

3        regarding the incentive plan until the

4        corporation finished its discussion with

5        its labor unions.  There were much --

6        "there was much discussion on the pros

7        and cons of each approach and on the

8        inner relationship between this decision

9        and the status of the ongoing decisions

10       with the labor unions in General Motors.

11       Mr. Opie suggested that the directors

12       revisit this topic in executive session

13       after management finished its update," I

14       was the only person to attend that

15       executive session, other than the

16       directors, and you can see the notation

17       at the bottom of exhibit 11, about the

18       report I made back to the corporate

19       secretary regarding those discussions in

20       which there was unanimous consensus of

21       the independent directors, after they

22       completed further deliberation.  That it

23       was in the best interest of the debtors

24       to go forward with this program on this

25       limited basis that we've discussed.  So,

218

```
1    DELPHI CORPORATION, ET. AL.    05-44481-rdd
2         Your Honor, what we have here, is a
3         difference of opinion, not -- it's not
4         on the evidentiary record.  I mean, the
5         evidentiary record, I think, is
6         overwhelming as to the -- and frankly
7         not controverted -- as to the form of
8         the program, the substance of the
9         program, the targets, and oh, by the
10        way, as the record, the evidentiary
11        record indicates, the targets were all
12        negotiated with Mr. Rosenberg, with the
13        creditors committee and with Pearl
14        Meyer, their compensation consultant.
15        All the curves that are in the exhibits,
16        all the targets, how it all works, the
17        ranges, the amounts, whether the 80
18        million was reasonable, the obadar ug
19        targets, those were all reviewed and
20        approved by the comp committee, excuse
21        me, by the Miss Pearl Meyer, the
22        creditors committee's compensation
23        consultant, and ultimately form the
24        basis of the agreement between the
25        committee and the company on that
```

219

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         subject.  So, there is nothing in this

3         record, and there was no evidence to the

4         contrary, put in this record, to suggest

5         anything about that is -- that there's

6         improper, inappropriate, unreasonable,

7         frankly, anything about the form, the

8         substance of this program.  Nor, has

9         there been any evidence in the record to

10        dispute the debtor's position, which is

11        the fact that these programs, the

12        opportunities were available on a pre-

13        petitioned basis.  One of the union

14        respondents made a point of saying, well

15        its not the opportunities, it didn't pay

16        out some years.  It may not pay out this

17        year.  But there was, in fact, an annual

18        incentive plan adopted by the board of

19        directors through its comp committee in

20        each of the years it set standards.

21        Sometimes it paid out, sometimes it

22        didn't.  All right.  This program, after

23        its been bedded with the creditors

24        committee has been adopted for the first

25        six months of this year, and as the

220

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd
2         evidence indicates in the declarations,
3         the agreement was to do it for only six
4         months, because everyone recognizes this
5         is such a dynamic case, that we are
6         better off to go for just these six
7         months and then come back and
8         recalibrate and see what makes sense
9         going forward in the cases.  But, on
10        balance, what we have here is, on the
11        one hand, the evidentiary record, and on
12        the other hand, a difference of opinion
13        and an effort to substitute the business
14        judgment and opinion of everyone else,
15        other than the debtors.  Even though
16        there's no evidence in opposite to the
17        targets and the structure of the
18        program.  The other thing, just a couple
19        of other comments, I was thinking about
20        this, and I recognize, I have dealt with
21        most of the lawyers on this side of the
22        room for many, many years, and many,
23        many cases involving labor
24        transformation.  All right.  And, I
25        recognize how difficult these cases are

221

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         and how much work we all have to do.  I

3         also recognize, Your Honor, that we all

4         have a common responsibility to try to

5         make sure our clients deal with the

6         facts and address the facts that are the

7         facts.  And, I hope, in this record

8         today, because the record is so

9         uncontroverted, and it is so clear what

10        this is, and what it is not, that the

11        leadership of the union can explain the

12        facts in the evidentiary record that

13        they can -- they can do things, and how

14        they describe this, that caused this not

15        to be the irritant, stumbling block, and

16        lighting of fire.  There's no question

17        in my mind, that if the leadership of

18        these unions wants to try to light a

19        fire, they can light a fire.  But,

20        that's a conscious decision they make as

21        a part labor strategy.  They can also

22        take the position in reporting on their

23        web sites to the their members, if Your

24        Honor, approves this program based on

25        the record, and under O'Rian affirms out

222

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         business judgment, then they also can

3         report that this was carefully debated.

4         It was carved back by the creditors

5         committee who has oversight.  There was

6         no objection to the actual program

7         itself and very limited relief was given

8         today and the rest was put off until

9         later in the year.  It's all a matter of

10        how people want to do things, and to

11        suggest that we should prejudice the

12        debtor's reorganization and our -- the

13        way in which we are addressing the

14        shortfall here, which is uncontroverted

15        in the record, based on somebody

16        lighting a fire, I would just point out

17        that the union leadership themselves,

18        have some shared responsibility in that

19        fact.  I also think it's important, Your

20        Honor, to reduce the abstract to the

21        reality, and I agree with Mr. Scotty,

22        that its important to be pragmatic here.

23        Who are these 466 executives?  And what

24        are they responsible for doing?  Well,

25        we know, and the evidence is

223

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         uncontroverted, that they're not just

3         managing a workforce of 46,000, but a

4         workforce of 185,000.  They're not just

5         managing what's going on in the United

6         States, but they are managing work on

7         six continents.  And, as they go through

8         and do that work, they're doing it in

9         key areas to make the company

10        reorganizable.  Just take two, for

11        example, and then I will stop on this

12        point, GSM the supply chain, managing

13        the continuity of this supply chain, as

14        we've said, and Your Honor's recognized

15        in other matters, is key to our

16        survival.  And, I recognize that if the

17        labor -- if labor chooses to interrupt

18        the supply chain -- that would be a

19        problem for us.  There's also a contract

20        that prevents that, at the moment.  And,

21        we would expect that if people aren't

22        trying to make this something it isn't

23        that this won't happen.  But the supply

24        chain, the amount of work and effort

25        across six continents, it has to go on

224

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         by the global source management group,

3         by the GSM group, in order to be able to

4         supply-- rather management group, to be

5         able to make that supply chain

6         uninterrupted.  All right, that is an

7         extraordinary effort.  And it is

8         creating real value and it has nothing

9         to do with labor transformation.  It has

10        to do with another huge important aspect

11        of this case.  There's another whole

12        organization that manages the customer

13        business in this thing.  We are -- we

14        are in the middle of the supply chain

15        ourselves.  We have suppliers, that's

16        one half, we have to deliver the OEM's

17        to customers all over the world.

18        Managing those customers, helping those

19        customers understand, not General

20        Motors, but everybody else were doing --

21        working with.  Having them understand

22        why they should give us awards in 2009

23        and '10, and '11 and '12 and having

24        those customers happy and working those

25        relationships, and that takes senior

225

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         talent.  That takes a tremendous amount

3         of energy and effort.  That is something

4         that has to go on too.  Without the

5         supply chain, without customers, we

6         don't have a reorganizable business

7         either.  And, every day when they wake

8         up, these executives have to go and deal

9         with those issues too.  And, you know,

10        all we've tried to do here is put in

11        what the -- is uncontrovertable

12        testimony that this is an ordinary plus

13        program, involved in, refer to legal

14        standard now, I'm just talking about

15        ordinary course and sense, all the other

16        companies have it, all right.  And, this

17        is a program that is in chime, not to

18        guarantee bonuses, not to stay for pay,

19        but, in fact, to incentivize.  And, the

20        last comment on the union issue, Your

21        Honor, in response here, there was a

22        comment here that Your Honor defers this

23        because the unions must be fully

24        engaged.  And, implicit that suggestion

25        was, that, you know, we won't be fully

226

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         engaged.  We won't allow ourselves to be

3         fully engaged.  We won't exercise

4         leadership to be fully engaged if the

5         court determines on this uncontroverted

6         record, that this program is reasonable.

7         And, that's -- that -- we need to have

8         more leadership in the unions too.  We

9         all need to --

10             THE COURT:  Well, I don't know

11        if it was in that context.  I think, if

12        I recall in the reference, it was to the

13        fact that the union hasn't really vetted

14        the target.

15             MR. BUTLER:  Now, that was USW.

16        This was the comments from the UAW, Your

17        Honor.  United Steel Workers said they

18        hadn't vetted the target.  That was in

19        their comment.  I think -- I think, Ms.

20        Ceccatti actually said the target wasn't

21        the important issue here, they want

22        focus on the targets.

23             THE COURT:  Well, but according

24        to the UAW, I admit, but what about Mr.

25        Grandstaff's point, which is that there

227

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         is a tremendous amount of understandable

3         uncertainty on the union members' part,

4         as to what's going to happen with their

5         jobs, including the potential that it

6         all unravels.  In light of that

7         uncertainty, where is the harm, given

8         the importance of resolving that issue,

9         and the undoubted flack you're going to

10        get if I grant this motion, where is the

11        harm in my, for example, finding that

12        this program is reasonable and fair and

13        necessary to make the debtor

14        competitive, but that its actual

15        implementation should be deferred until

16        a reasonable time to conclude the

17        negotiations has transpired?  Which

18        would probably be well within the six

19        months.

20             MR. BUTLER:  Your Honor, I'm

21        not sure, in the last part, that's

22        correct.  That we'll have a plan and

23        we'll be --

24             THE COURT:  I'm not talking

25        about a plan.  I'm saying a reasonable

228

```
1    DELPHI CORPORATION, ET. AL.    05-44481-rdd
2         time for the parties to have made --
3         given it their best shot.
4              MR. BUTLER:  Yeah, well, Your
5         Honor there's two points in that, I
6         think.  One is what you're really doing
7         is going back and telling the executives
8         that there's -- that it's, you know.
9         The court actually finds, based on all
10        the evidence and all this discovery and
11        all the testimony that this is
12        reasonable, it's appropriate, it's
13        necessary but the court's not going to
14        give it to you.  Even though that's a
15        reasonable -- and that
16              THE COURT:  I'm not going to
17        give it to you now.
18              MR. BUTLER:  But what's -- how
19        does an executive have any belief -- you
20        know, look the executives get it.  They
21        understand that executive compensation
22        in bankruptcy cases is a -- you know, is
23        a socially unacceptable kind of issue,
24        and that everybody is going to be
25        unhappy about it except the executives,
```

229

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         all right.  And, so to say, you've

3         actually won the case, debtor, nobody

4         challenged the case or the challenges,

5         you've overcome them by, you know, a

6         preponderance of the evidence, all

7         right, but you can't implement it under

8         (indiscernible).  You can't implement

9         it right now, how does an employee think

10        they're ever going to get it.  I mean,

11        you're basically saying to the

12        employees, and to me that's almost the

13        worst of all possible worlds.  You're

14        telling the executives that this program

15        is a reasonable program, that what we've

16        been saying to them --

17             THE COURT:  Except for one

18        fact, which is that the aspect of this

19        restructuring, that from day one, in

20        fact the first ten paragraphs of the

21        motion also highlights this, is your

22        dealing with the labor costs.

23             MR. BUTLER:  Right.

24             THE COURT:  And so, that aspect

25        of it, including enabling those labor

230

1   DELPHI CORPORATION, ET. AL.   05-44481-rdd

2       costs to be dealt with in a way that is

3       fair and efficient, means that this has

4       to be deferred.

5            MR. BUTLER:  Your Honor, what

6       that says, that sounds great on one

7       sense, but what it really says is, we're

8       going to hold the restoration of these

9       benefits hostage to somebody else

10      getting what they want.

11           THE COURT:  Not necessarily.

12           MR. BUTLER:  Well --

13           THE COURT:  It just says that

14      you have a fair chance of going through

15      it.

16           MR. BUTLER:  Well, Your Honor,

17      when you take a step back, this is, as

18      you (indiscernible) an Orien pictures

19      summary proceeding to evaluate our

20      business judgment.  And, there's

21      evidence on this in the record.

22           THE COURT:  Well, I know, but

23      you're saying to me, ignore the business

24      judgment about doing it now.

25           MR. BUTLER:  No, I'm not saying

231

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         ignore the business judgment.  They are.

3              THE COURT:  Well, I understand.

4              MR. BUTLER:  I'm saying --

5              THE COURT:  But, I'm saying

6         that they have some real force to their

7         argument.

8              MR. BUTLER:  I'm saying, Your

9         Honor, that we didn¦t suggest that these

10        calls aren't difficult situations.  We

11        didn't suggest that we haven't listened

12        to what the unions have said, quite to

13        the contrary.  What the board of

14        directors minutes say that are in

15        evidence, what the declarations say that

16        are in evidence, by which none of the

17        objectors challenged our evidence on

18        this point.  What it said was, that our

19        board of directors took all these

20        considerations in, pro and con, these

21        are the independent directors that have

22        no stake, no financial stake in this

23        program, took all these considerations

24        in, pro and con, they took them into

25        account, they balanced them.  They

232

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         weighed them in terms of trying to make

3         sure that we could do all the things we

4         need to do for the global business, and

5         they came to a conclusion that on

6         balance, we should seek approval of this

7         limited program and put everything else

8         off.  That is the business judgment.

9         Nobody's suggesting that there isn't a

10        reasonable position in the unions.  Most

11        of the discussions we have between the

12        company and the union, there's a

13        scintilla of reasonableness and truth in

14        what everybody says.  And I say a

15        scintilla, because different of us are

16        going to say I got more reasonable this,

17        or you got more reasonable, you know,

18        there's all these positions have within

19        them some reason, but at the end of the

20        day, on this record, in this proceeding,

21        the question is whether the debtors have

22        exercised reasonable business judgment

23        in weighing all these things.  We didn't

24        miss them.  We didn't ignore it.  We

25        evaluated it, and at the end of the day,

233

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         concluded that this problem of having

3         our 466 executives have half of what

4         they have had historically, this problem

5         is unacceptable.  We've lived it for the

6         first four months of the case, we don't

7         believe we can live it through the next

8         six months of the case without having

9         purchased the estate.  Beyond that, you

10        want to talk about fair and equitable,

11        the only people who've taken cuts so

12        far, have been the senior executives.

13             THE COURT:  And again, you say,

14        "so far", but it's patently obvious that

15        you're going to ask people to take cuts

16        of, you know, 50 percent.

17             MR. BUTLER:  Right.  And the

18        way this has been structured with the

19        creditors committee --

20             THE COURT:  Or more, you know,

21        you've actually asked for more.  So --

22             MR. BUTLER:  And, Your Honor,

23        its also the way this has been

24        structured, the creditors committee and

25        the next six month program they'll be

234

1    DELPHI CORPORATION, ET. AL.   05-44481-rdd

2        back before the court on too.  Right?

3        Everyone, normally in these cases you

4        get decent programs put in place, and

5        you're able to go through the case with

6        them.  We're back here this summer to

7        deal with this program again.  The

8        question is, whether or not, after

9        having not been able to implement this

10       program in the fourth quarter of 2005,

11       whether or not, now that we've reached

12       agreement on the substance and form of

13       the program, with the creditors

14       committee and there are no, there's

15       nothing in the evidence that controverts

16       the appropriateness of this program,

17       whether or not we're able to deliver an

18       incentive opportunity to our executives

19       or not.

20            THE COURT:  Except, how are you

21       going to look them in the eye, next week

22       and say I have a chance to get a $500,00

23       bonus, and by the way, I'm asking you

24       for a 50 percent reduction in pay?

25            MR. BUTLER:  Your Honor,

235

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        ultimately in all these things, we look

3        at the entire compensation structure

4        each people have, and you work through

5        those issues.  The real -- I mean,

6        that's the reality.  I mean, otherwise

7        you basically saying to the court --

8        saying to people that in a case where

9        there's going to be --

10            THE COURT:  It hasn't really

11        been -- I guess that the point I'm

12        trying to make, is that you've worked

13        through half of the issue, and I think

14        you've worked through it reasonably.

15        And, I'm prepared to find that.  I think

16        you have worked through it reasonably.

17        But, I'm not so sure, and there's --

18        except for the banks, and, of course,

19        you know, I don't really encourage

20        people to stand up and say "we support

21        this", because I think that's a

22        redundancy and you did a good enough job

23        as it is, but no one else is supporting

24        this motion in this case.  I mean, the

25        secured banks withdrew their objection,

236

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         but everyone seems to think that the

3         mere fact of the other half of the

4         equation, which is the big half, which

5         is dealing with the union costs is yet

6         to come.  And, they have -- they have a

7         point.  It's very -- as you said, it's

8         very difficult to ask people to make

9         those types of concessions, literally

10        when this has happened.  Now, at the

11        same time, I think, based on this

12        record, the executives are entitled to

13        it.  Which is why I'm prepared to make a

14        finding.  But, it's just -- it sets up -

15        - it sets up a very odd dynamic.

16             MR. BUTLER:  Your Honor, its

17        hard, one of the more difficult jobs in

18        this room, to a certain extent, other

19        than Your Honor's today, is mine.

20        Because when you stand up here, I'm

21        advocating what I think the law and the

22        facts and the court --

23             THE COURT:  I understand.

24             MR. BUTLER:  It's a clearly

25        unpopular position, but it doesn't mean

237

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2          that this company, in order to fulfill

3          it's fiduciary responsibilities,

4          shouldn't address this issue.  That's

5          the only point, Your Honor.

6                THE COURT:  No, I agree with

7          that.  It's really a timing point.

8                MR. BUTLER:  Right.  And,

9          ultimately, ultimately through a process

10         that's been well documented and there's

11         clear evidence and uncontroverted

12         evidence in the record about what that

13         process has been, the question is

14         whether Your Honor's prepared under

15         Orion Pictures, to overrule that

16         business judgment.

17                THE COURT:  Okay.

18                MR. BUTLER:  Thank you, Your

19         Honor.

20                THE COURT:  All right, well I

21         better go think about that for a few

22         minutes.

23                (Recess)

24                THE COURT:  I have, in front of

25         me the debtors' amended motion for

238

1    DELPHI CORPORATION, ET. AL.   05-44481-rdd

2         approval of what's referred to as an

3         annual incentive plan, although, as it's

4         clear from the motion itself, it's

5         really a semi-annual incentive plan.  It

6         would be in effect for the period

7         January 1 of this year, through June

8         30th of this year.  And then, although

9         it is fair to say that there may be some

10        small "p" precedential value at that

11        point, to this plan, it would be re-

12        opened for negotiation and further

13        development in the light of the debtors'

14        case and projections and business plan

15        at that time.  The motion as originally

16        filed had an annual incentive plan as an

17        element of a much more involved and

18        expensive, potentially, executive

19        compensation arrangement.  The other

20        portions of that motion are being

21        adjourned, or have been adjourned

22        periodically, and they are now scheduled

23        to be heard sometime in July of this

24        year.  And, as Mr. Rosenberg pointed out

25        at the beginning of the hearing, my

239

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         ruling this evening pertains just to the

3         "annual" incentive plan that is before

4         me at this time, and just in reference

5         to the facts as developed in this

6         hearing, which is appropriate, because

7         as the parties point out in their

8         papers, which very clearly lay out the

9         standard for the court's consideration

10        of a plan like this, I should review

11        this plan, the "annual" incentive plan

12        in the light of the particular facts and

13        circumstances that pertain today with

14        respect to the debtors' case, and of

15        course, as they relate to its executives

16        and other constituents.  That is to say,

17        I believe that this motion should be

18        decided under section 363(b) of the

19        Bankruptcy Code, which applies to

20        actions out of the ordinary course

21        rather than under, or accepting, that it

22        is in the ordinary course, as the

23        debtors have urged.  I believe that in

24        light of, first, the potential size of

25        the bonuses that would be awardable

240

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         under this plan, which targets bonuses

3         in the aggregate of roughly 20 million

4         dollars, and can go up to roughly 38

5         million dollars, if the debtors

6         substantially exceed the target

7         performance, as well as in the light of

8         the effect that the implementation of

9         this bonus program may have on the

10        debtors' chapter 11 case, generally,

11        and, in more particular, on the

12        negotiations that the debtors are in the

13        midst of with their unions, I think that

14        this is more than a simple human

15        resources matter.  That is not to say,

16        however, that this is a particularly

17        extraordinary matter.  It is -- it has

18        been an element of executive

19        compensation generally in the

20        marketplace and, in particular, until

21        the period immediately preceding the

22        debtors' chapter 11 filing, an element

23        of the executive compensation for these

24        particular executives.  Before the

25        filing, in light of the fact that the

241

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        debtors' circumstances had clearly

3        changed, it was recognized by the board,

4        and the compensation committee of the

5        board, that the debtors' compensation

6        scheme for executives had gotten out of

7        kilter.  The pre-bankruptcy bonus

8        program didn't particularly work, nor

9        did the non-cash portion of the

10       executive compensation program, and,

11       therefore, they had eliminated those

12       portions prior to the filing.  At the

13       same time, they sought to implement

14       revisions, basically, at the very start

15       of the case.  The standard then, that I

16       should employ is an examination, first,

17       as to whether this program is in any way

18       tainted by self-dealing or is, instead,

19       the product of the advice of independent

20       advisors and the ultimate decision-

21       making by an independent board.  And

22       then, secondly, whether it has been

23       appropriately vetted with the other

24       constituents in the case, so that they

25       can test, also, whether it's tainted by

242

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         any form of insider self- dealing.

3         Secondly, if I find that it is proposed

4         on a fair and arm's length

5         basis, and informed by independent

6         judgment, I need to review it in the

7         light of whether it makes good business

8         sense.  In that regard, although I'm the

9         ultimate arbiter of that decision, the

10        courts have been clear that I can, in

11        large measure, rely upon the business

12        judgment of the debtor's board itself,

13        particularly if, after adequate notice

14        and opportunity to test the

15        underpinnings of the proposal, there has

16        not been sufficient evidence to indicate

17        that that business judgment is

18        questionable.  The official creditors'

19        committee, which, Mr. Rosenberg points

20        out, is properly representative of the

21        various constituencies in this very

22        large case, spent a great deal of time

23        reviewing the originally proposed annual

24        incentive plan and negotiating its

25        terms, and it has done so not only with

243

1   DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         the expertise of its counsel and its

3         members, but also its own human

4         resources/executive compensation

5         consultant, and it has concluded that it

6         agrees with the debtors that, as far as

7         the level of compensation and the

8         targets and the measures for awarding an

9         annual incentive for this period, that

10        is the six month period, the plan is

11        reasonable and satisfies its own

12        business judgment.  The evidence, and

13        because of the various adjournments of

14        this matter, there's been quite a long

15        time to develop that evidence, also

16        supports that conclusion.  There was no

17        meaningful evidence to contradict, for

18        example, that the current arrangement,

19        which for the post-petition period does

20        not have any annual incentive element

21        for compensation, is not competitive and

22        that it, in fact, puts the debtor in the

23        bottom quarter in respect of executive

24        compensation with regard to its

25        competitors.  Nor was there any

244

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        meaningful evidence to contradict the

3        debtors' record that with this annual

4        incentive plan, at least for the first

5        six months of this year, the executives,

6        when compared against all of the

7        components of compensation available to

8        their counterparts at the debtors'

9        competitors, are essentially in the

10       middle, in the 50th percentile.  In

11       addition, there was no meaningful

12       evidence to contradict the evidence

13       offered by the debtors that the targets,

14       the incentive targets proposed, were

15       anything other than the normal types of

16       incentive targets that competitors would

17       have.  That is, that they are not a lay-

18       up or a slam-dunk or whatever other

19       basketball metaphor you want to use,

20       but, instead, reflect an opportunity and

21       not a sure thing.  And an opportunity

22       that the executives would have to

23       perform at a high level to achieve.

24       This is the case notwithstanding the

25       fact that the target for the overall

245

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         corporate level, which constitutes a

3         significant part of the measuring stick,

4         is a negative EBITDAR figure.  However,

5         as I think I noted during oral argument,

6         in a chapter 11 case it may well be that

7         a negative EBITDAR figure is,

8         nevertheless, a very desirable target,

9         given where the debtors' business

10        started.  I know, further, and I'm

11        persuaded of this having looked again at

12        the affidavit that that target has not

13        been met already but that it is

14        something that is, at this point, still

15        an aspiration.  The debtors, in reaction

16        to the creditors' committee's points, as

17        well as other objections, have modified

18        the annual incentive plan in other ways,

19        too.  For example, they have backed out

20        of the calculation on both sides of the

21        ledger the effects of saving from, or

22        restructuring costs related to the

23        ongoing negotiations with, the unions

24        and with GM.  They have also, more

25        particularized a substantial portion of

246

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd
2         the incentive formula tied to the
3         particular divisions that the executives
4         work in.  And, further,  they have
5         specified the additional review role to
6         be played with respect to each
7         individual executive by his or her
8         superiors and the HR group.  Very
9         importantly, they also have implemented,
10        in the light of the accounting
11        disclosures and other
12        events highlighted in the lead
13        plaintiff's complaint, after discussions
14        with the creditors committee, various
15        measures to protect the estates from
16        paying out bonuses, which would not be
17        paid out for another six months,
18        roughly, in any event to, for want of a
19        better word, those who would be either
20        found to be or under certain
21        circumstances that contain a fairly high
22        level of proof in the allegation,
23        alleged to be, "bad actors" in various
24        ways.  And those are laid out in exhibit
25        5 in the record.  So, looked at on its

247

1   DELPHI CORPORATION, ET. AL.    05-44481-rdd

2        own, objectively, it is clear to me that

3        this plan would pass muster as an

4        appropriate form of compensation, that

5        passes the business judgment test

6        ultimately that I would impose upon it.

7        Are there aspects of it that one might

8        change?  Yes, perhaps, but that's not

9        what the business judgment test is all

10       about.  That's particularly the case in

11       areas involving human resources where it

12       really is not the court's role to micro-

13       manage compensation, planning and

14       decision making.  All of the objections,

15       frankly, except for the lead plaintiffs'

16       did not, when you probed, go to the bona

17       fides of the program itself.  As far as

18       the lead plaintiffs are concerned, they

19       would like to see different, to some

20       extent, protective provisions in the

21       plan.  And in one respect I've agreed

22       with them and the debtors have agreed to

23       implement that change, which is that the

24       audit committee, will in fact

25       communicate, subject to any

248

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         confidentiality restrictions that they

3         have because of DOJ or SEC

4         investigations, with the compensation

5         committee, regarding whether the audit

6         committee reasonably believes that

7         either the -- I'm sorry, that the so-

8         called claw-back conditions have been

9         met in respect of a particular

10        executive.  But the bulk of the

11        objections, all go to one point, which

12        is that it is contended that even if

13        this program is on its own merits

14        reasonable and within the debtors'

15        business judgment, it is not within the

16        debtors' business judgment to seek it at

17        this time, because the debtor, at this

18        time, is in the midst of seeking very

19        substantial wage and benefit concessions

20        from its union and non-union employees.

21        The objectors say that, because of this

22        juxtaposition, there are two problems

23        with the annual incentive plan that's

24        proposed today.  The first is that it

25        will inevitably elicit a hostile

249

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         reaction which will, at least, or at a

3         minimum serve as a serious distraction

4         in negotiations.  Secondly, they contend

5         that, even though on its own the plan

6         may satisfy the debtors' business

7         judgment, and I recognize that no one

8         has conceded that except the creditors'

9         committee and perhaps the US Trustee,

10        but that's what I've found, the plan

11        isn't fair until there is more clarity

12        in respect of what, ultimately, will be

13        either agreed to or imposed upon the

14        union workers, as well as the non-union

15        workers.  There is a clear visceral

16        appeal to that argument.  It is very

17        hard to ask someone to make a

18        substantial give-up, when you yourself

19        have just received the right to obtain a

20        bonus.  And it, at a minimum, takes at

21        least in practical terms, I would think,

22        at least 10 minutes of explaining in any

23        meeting where that issue's raised, if

24        someone's willing to listen, why the

25        fate of one, the bonus, should not

250

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         really be tied to the other, and, in fact,

3         that the request for the concession is

4         thematically, actually related to the

5         other, in the sense, that they're both

6         intended to make the debtor more

7         competitive.  Nevertheless, I believe

8         that anyone negotiating in good faith

9         with the debtors, would ultimately have

10        to accept that explanation.  And, I

11        think that the debtors' unions, their

12        advisors, and the rank and file, are,

13        first, smart enough to make the

14        argument, the inevitable argument, and,

15        second, smart enough also to understand

16        the debtors' and my response.  Another

17        way to say this is, that it appears to

18        me that if I did not approve this AIP

19        today, I would be approving it at some

20        point, because it is reasonable, and I

21        don't really see a logical reason to

22        defer that beyond the inevitable push

23        back that the debtors would receive.

24        But, they would receive that push back

25        inevitably, I believe, at any time.  And

251

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2         it has chosen to bring it on now, and

3         based on this record, it's entitled to

4         it.  The other objection, although it's

5         a variation on that theme, I think has

6         more substance to it, which is that this

7         case is still in its early stages and it

8         is not clear what will happen in it.  It

9         is particularly not clear to the unions,

10        and the unionized work force, what will

11        happen to them.  And it does appear to

12        me, to create a perception of

13        unfairness, to lock in the opportunity

14        for a bonus in that environment.  One

15        aspect of the bonus plan, in particular,

16        seems unfair to me in that respect, and

17        that is the aspect that gives the

18        executives the right to a bonus,

19        although a reduced bonus, even if the

20        debtors perform at considerably less

21        than the target level.  While, normally,

22        I would not pick out a provision like

23        that, for a plan like this, I think, in

24        this particular context, where the same

25        business plan that is being presented to

252

1    DELPHI CORPORATION, ET. AL.    05-44481-rdd

2           the workers as the basis for asking them

3           for concessions is being used as the

4           basis for the bonus targets, it does not

5           seem to me to be fair to award a bonus

6           for performance off of, or worse than,

7           that business plan by 30 percent in this

8           context.  That may be something that can

9           be addressed down the road, when the

10          debtors are further along with their

11          negotiations, but it does seem to that,

12          that is locking in a form of certainty

13          beyond an opportunity, which is, I

14          believe, the only way that a bonus plan

15          like this can be presented with

16          justification: to a worker who is being

17          asked to take a substantial reduction

18          that the executive is taking the risk,

19          as well as potentially getting the

20          reward for meeting the target.  So, with

21          those two changes, i.e., the change on

22          the audit committee reporting and the

23          elimination of the bonus opportunity for

24          less than performance, I will approve

25          the amended motion.

253

1   DELPHI CORPORATION, ET. AL.    05-44481-rdd

2            MR. BUTLER:  Your Honor, we

3       will prepare a revised draft order, and

4       send it to chambers on Monday.

5            THE COURT:  Okay.

6            MR. BUTLER:  That concludes the

7       matter before the court today.

8            (Whereupon this matter was

9       concluded.)

10      (Time noted: 6:50 PM)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

254

1      DELPHI CORPORATION, ET. AL.    05-44481-rdd

2

3          I, Pnina Eilberg, hereby certify that

4      the foregoing is a true and correct

5      transcription, to the best of my ability, of

6      the sound recorded proceedings submitted for

7      transcription in the matter of the bankruptcy

8      hearing for except, where as indicated, the Court

9      has modified its bench ruling:

10     DELPHI CORPORATION, ET. AL.

11         I further certify that I am not employed

12     by nor related to any party to this action.

13

14         In witness whereof, I hereby sign this

15     date:

16     February 19, 2006.

17

18

19     _____

20                    Pnina Eilberg

21

22

23

24

25

## A

**ability** 24:2 254:5
**able** 11:24 29:25
51:16 99:22 103:3
224:3,5 234:5,9,17
**ABP** 21:22 184:14
**absolutely** 191:25
**abstract** 141:11
177:4 222:20
**accelerated** 49:11
49:13
**accept** 141:22
250:10
**acceptable** 128:5
132:4 145:4
**accepting** 159:8
239:21
**access** 81:12
**accomplish** 121:19
**account** 73:13 81:8
119:9 207:13
231:25
**accounting** 33:7
44:16 67:16
196:23 246:10
**accurate** 177:5
**accused** 33:17 191:3
**achievable** 173:2,3
**achieve** 51:2 117:3
139:24 146:5
160:5 244:23
**achieved** 117:22
133:7,10 138:19
152:5
**achievement** 137:17
**achieves** 132:23
142:25
**achieving** 145:3
**acknowledged**
144:22
**acknowledges**
143:18
**act** 31:5 41:8,14
75:10 78:22
191:15,16,16

195:11
**acted** 24:15 25:18,19
26:14,23 28:7 31:6
31:12 41:9 75:9
186:15,21
**acting** 75:16
**action** 24:4 46:19
70:8,15 72:11 73:9
73:11 78:21 195:3
199:17 254:12
**actions** 69:3,5 72:25
74:4 128:6 195:3
217:2 239:20
**active** 206:3 212:18
**activity** 73:21
205:16
**actor** 186:8
**actors** 246:23
**acts** 23:21
**actual** 30:2 59:8
125:4,4 136:24
178:9 222:6
227:14
**acutely** 138:17
**add** 57:9 121:25
209:9
**adding** 118:4 120:9
133:19 156:11
**addition** 12:25 48:5
52:16 148:20
175:23 202:23
208:6 244:11
**additional** 11:22
69:23 101:23
147:7 175:21
246:5
**address** 12:3 135:12
208:18 211:10
221:6 237:4
**addressed** 252:9
**addresses** 114:25
**addressing** 13:10
179:11 205:25
222:13
**adequate** 188:9
242:13

**adjourn** 7:19 131:10
213:4
**adjourned** 9:10
131:5,8 238:21,21
**adjournment**
162:15
**adjournments**
243:13
**adjudicate** 133:4
**adjustments** 56:16
**administration**
81:18
**admission** 17:2
19:12
**admit** 17:6 226:24
**admitted** 16:3 19:10
19:21 54:21 55:5
62:10 92:4 94:23
104:16
**adopted** 89:8 90:22
219:18,24
**advantages** 169:9
**adverse** 107:7
147:19
**advice** 241:19
**advise** 90:6
**advised** 15:12
112:14
**advisor** 22:25
**advisors** 241:20
250:12
**advocating** 236:21
**affect** 152:18
**affidavit** 48:12
50:11 51:6 98:25
99:2 107:7 132:22
138:2 216:2
245:12
**affirmative** 146:5
**affirms** 221:25
**afford** 33:17
**AFP** 76:24
**afternoon** 7:6 22:9
47:12 64:2 92:12
92:14 95:3 104:20
154:25 166:9

182:3 201:23
**afternoon's** 15:17
**ag** 204:19
**aggregate** 240:3
**ago** 12:9 135:14,25
163:4 185:11
**agree** 67:11 72:17
72:19 75:3 101:25
102:3,20 153:3
161:14 168:20
222:21 237:6
**agreed** 7:18,24 9:4
9:14 20:13 31:20
72:20 94:20
130:20 143:22
205:12 206:18
208:12 247:21,22
249:13
**agreeing** 102:12,13
127:21 210:11
**agreement** 7:16
13:12 16:2,14
94:12 95:24 107:5
111:15 144:19
165:3,4,13,15
182:15 183:13,24
203:10 218:24
220:3 234:12
**agreements** 2:6 9:3
153:9 181:19
**agrees** 40:23 72:4
243:6
**Ah** 201:11
**ahead** 22:6
**AIP** 12:20,23 22:21
23:25 24:9 36:7
43:10 56:10 84:20
97:2 110:17
135:15,20,23
136:3 142:21
143:5,10,19
144:13 156:6,19
177:9 181:24
184:20 250:18
**Airlines** 214:9
**al** 1:8 2:1 3:1 4:1 5:1

6:1 7:1 8:1 9:1
10:1 11:1 12:1
13:1 14:1 15:1
16:1 17:1 18:1
19:1 20:1 21:1
22:1 23:1 24:1
25:1 26:1 27:1
28:1 29:1 30:1
31:1 32:1 33:1
34:1 35:1 36:1
37:1 38:1 39:1
40:1 41:1 42:1
43:1 44:1 45:1
46:1 47:1 48:1
49:1 50:1 51:1
52:1 53:1 54:1
55:1 56:1 57:1
58:1 59:1 60:1
61:1 62:1 63:1
64:1 65:1 66:1
67:1 68:1 69:1
70:1 71:1 72:1
73:1 74:1 75:1
76:1 77:1 78:1
79:1 80:1 81:1
82:1 83:1 84:1
85:1 86:1 87:1
88:1 89:1 90:1
91:1 92:1 93:1
94:1 95:1 96:1
97:1 98:1 99:1
100:1 101:1 102:1
103:1 104:1 105:1
106:1 107:1 108:1
109:1 110:1 111:1
112:1 113:1 114:1
115:1 116:1 117:1
118:1 119:1 120:1
121:1 122:1 123:1
124:1 125:1 126:1
127:1 128:1 129:1
130:1 131:1 132:1
133:1 134:1 135:1
136:1 137:1 138:1
139:1 140:1 141:1
142:1 143:1 144:1

145:1 146:1 147:1
148:1 149:1 150:1
151:1 152:1 153:1
154:1 155:1 156:1
157:1 158:1 159:1
160:1 161:1 162:1
163:1 164:1 165:1
166:1 167:1 168:1
169:1 170:1 171:1
172:1 173:1 174:1
175:1 176:1 177:1
178:1 179:1 180:1
181:1 182:1 183:1
184:1 185:1 186:1
187:1 188:1 189:1
190:1 191:1 192:1
193:1 194:1 195:1
196:1 197:1 198:1
199:1 200:1 201:1
202:1 203:1 204:1
205:1 206:1 207:1
208:1 209:1 210:1
211:1 212:1 213:1
214:1 215:1 216:1
217:1 218:1 219:1
220:1 221:1 222:1
223:1 224:1 225:1
226:1 227:1 228:1
229:1 230:1 231:1
232:1 233:1 234:1
235:1 236:1 237:1
238:1 239:1 240:1
241:1 242:1 243:1
244:1 245:1 246:1
247:1 248:1 249:1
250:1 251:1 252:1
253:1 254:1,10
**Alicia** 6:19 201:24
**allegation** 246:22
**allegations** 47:3
  188:10,15,19
  190:18 192:8,9
  196:25
**alleged** 179:11
  246:23
**allegedly** 179:12

**allow** 157:9 185:21
  185:25 186:6,12
  186:17 190:12
  226:2
**allowed** 36:6,15,17
  38:16 45:3
**allows** 82:22 118:2
**alms** 151:9
**alternative** 116:9
  156:5
**alternatives** 147:13
  216:25
**amended** 2:5 30:9
  237:25 252:25
**amendment** 41:2
  72:7 193:10
**America** 57:4
**American** 159:4
**amount** 11:3 51:17
  51:22 96:25
  162:10,12 223:24
  225:2 227:2
**amounts** 122:20
  176:16 218:17
**analysis** 61:11
  134:22 141:12
  148:15 174:16
  175:2 180:2
**analyze** 57:15
**analyzed** 135:6
**Anderson** 198:5
**and/or** 81:6 87:2
**Angelovich** 55:21
  63:11,14,16,24
  64:10 71:5,7 76:3
  76:11 77:12 78:13
  79:16 80:9,12,16
  191:19
**ANGOLOVICH**
  4:24
**announcement**
  52:15 124:2
**annual** 7:21,25 8:24
  10:19 11:4,13,23
  48:15 56:15 57:6
  57:11 58:21 59:16

60:6 92:20 93:22
  95:14 96:19
  131:20 219:17
  238:3,16 239:3,11
  242:23 243:9,20
  244:3 245:18
  248:23
**answer** 34:9,20
  40:25 52:6 61:9
  72:6 82:14 85:19
  86:11 98:6,9,17
  101:22 136:12
  160:15 175:16
  187:9 197:23
**answers** 97:24 98:19
  134:25
**anybody** 45:14
  110:10 128:9
  203:3 207:11
**anybody's** 203:24
**anyway** 53:18
**apparently** 51:15
**appeal** 249:16
**appear** 251:11
**appearance** 154:14
**appeared** 115:6
**appears** 99:16 111:9
  148:19 250:17
**applaud** 187:24
**application** 110:11
**applied** 59:14
**applies** 239:19
**apply** 64:22 141:13
**applying** 80:21
**appointed** 24:14,25
**appreciate** 77:13
  197:14
**approach** 29:12
  44:2 71:3 180:17
  217:7
**appropriate** 19:4
  31:23,25 32:2 60:8
  75:4 76:19 83:24
  88:25 152:11
  154:6 161:21
  162:10,11 180:17

181:23 191:23
197:11 199:11
208:11 213:4,16
228:12 239:6
247:4
**appropriately** 123:9
241:23
**appropriateness**
234:16
**approval** 48:15 94:3
111:5 144:13
153:7 154:20
232:6 238:2
**approve** 2:2 22:22
150:14 250:18
252:24
**approved** 8:21
98:13 122:25
149:3 193:22,23
203:13 205:4
218:20
**approves** 221:24
**approving** 2:4 66:11
156:12 250:19
**approximately**
56:17
**arbiter** 124:24 242:9
**arbitrarily** 143:23
**areas** 223:9 247:11
**argue** 153:2
**argued** 144:12
**arguing** 152:21
**argument** 80:13
113:22 114:8
129:2 135:24
179:3,9 180:5,6,7
180:7,12 181:9
206:24 231:7
245:5 249:16
250:14,14
**argumentative**
107:3
**arguments** 176:7
**arithmetically**
174:12
**arm's** 242:4

**ARP** 52:4
**Arps** 4:3,11 7:7
**arrangement** 238:19
243:18
**arrangements** 56:22
206:13
**Arthur** 198:5
**aside** 165:6 179:20
**asked** 24:18 36:21
62:15,24 80:17
83:12 97:23 98:18
99:7 101:2,24
107:12 109:18
123:3 155:16
175:17 182:17
185:17 187:5
190:4 191:18,19
193:17 194:17
199:20 203:7
233:21 252:17
**asking** 22:22 25:12
76:13 97:21 98:11
100:4 107:2
158:10 192:10
194:5,7,15 196:5
234:23 252:2
**aspect** 8:5 49:4
122:23 224:10
229:18,24 251:15
251:17
**aspects** 7:20 53:17
151:10,21 166:25
185:3 188:8
203:13 247:7
**aspiration** 245:15
**asserted** 89:20
**asserting** 89:24
**asserts** 71:17
**assessed** 104:2
**assets** 132:24
**assume** 2:5 17:4
52:22 58:8 65:7
86:22 138:16
143:3,7 147:16
161:8 200:10
**assumed** 83:10,24

**assuming** 56:15
57:10 79:10
172:15
**assumption** 36:14
79:13 182:15,20
**assumptions** 85:25
86:8
**attack** 163:10,10
**attempt** 116:17
118:21 120:11,23
157:10
**attempting** 142:8
160:25
**attend** 217:14
**attention** 30:2
153:12 188:18
**attest** 14:11 215:8
**attitude** 184:3
**attorney** 141:22
189:5
**Attorneys** 4:4,12,19
5:3,11,19 6:9
**audit** 24:13,20 36:10
36:15,20 37:3,13
38:3,6,17,19 39:25
44:14,25 46:5
64:22 68:10,11,19
69:3,8,20 70:7
72:11,25 73:4,5,20
74:3 75:19 76:7,16
76:18 77:6 78:2,4
78:5,8,17 79:4,7
79:11 81:22 82:2
82:19,24 90:3,4,14
188:23 189:12,21
189:23 196:8
208:25 210:20,23
210:23 247:24
248:5 252:22
**auditor** 46:3
**authorize** 2:8 3:2
7:12
**authorizes** 74:2 97:9
97:17 98:3
**authorizing** 2:9,16
2:22 3:3 73:18

**auto** 93:2 95:7 96:8
97:8 104:7 106:10
106:17 107:21,22
**automat** 93:2
**automotive** 50:4,9
118:13
**availability** 117:20
117:24
**available** 9:21 62:8
117:15,16 124:6,7
124:10 189:14
196:13 200:15
206:25 219:12
244:7
**avenue** 5:5,13 6:11
82:16
**average** 50:22
118:23 177:10
**award** 252:5
**awardable** 239:25
**awarded** 200:21
**awarding** 243:8
**awards** 7:23,24
224:22
**aware** 36:19 37:2,13
43:11 45:10 52:14
95:23 111:13
136:4 138:17
206:7
**awareness** 136:18
**awful** 147:3 194:18

**B**

**B** 1:21 143:18
**Babette** 5:23 155:2
**back** 8:21 28:10
31:4 41:14 42:6,6
43:4 74:20 77:24
81:5 83:8,12,17
89:12 105:7
107:16 114:3,16
117:13,13 123:5
127:24 141:25
150:2 163:4 188:3
190:5 191:13
192:13 195:20

199:9 207:25
217:18 220:7
222:4 228:7
230:17 234:2,6
250:23,24
**backed** 181:16
245:19
**bad** 28:8 75:16
132:15 133:3
168:13 246:23
**badly** 170:21
**balance** 12:2 54:13
122:12 126:4
128:25 132:23
133:6,9 134:11
183:21 207:20
208:6,20 215:12
220:10 232:6
**balanced** 231:25
**balances** 127:21
**Band** 177:10
**bank** 12:21
**Bankr** 2:4
**bankruptcies**
167:20
**bankruptcy** 1:2,23
66:22 99:23
101:20 134:21
157:8,9 166:18
171:20,24 173:17
173:23 177:22
178:12 185:9
193:24 203:20
228:22 239:19
254:7
**banks** 235:18,25
**bargaining** 61:15
110:25 126:18
170:25 181:19
**barn** 181:21
**base** 51:8 52:5 54:11
92:19 120:22
**based** 34:16 36:9
61:12 72:6,16
76:20 91:16
122:15 143:16

153:4 160:3 162:6
171:11,14 191:6
193:6 196:20,22
221:24 222:15
228:9 236:11
251:3
**basic** 10:21 12:6,7
49:22 86:7 119:3
143:24 160:20
196:13
**basically** 27:24 85:6
139:25 229:11
235:7 241:14
**basis** 79:15 93:14
102:19 118:24
120:9 126:13
131:25 145:15
148:20 161:11,21
211:13 217:25
218:24 219:13
242:5 252:2,4
**basketball** 244:19
**Beckworth** 4:23
21:10,14,16 22:8
24:7 28:19 29:5,10
29:18,23 30:6,20
35:17,23 44:5 63:2
71:13 80:17
184:10,11 192:20
193:16 197:18,22
198:7,20,24 199:3
199:21 200:3,6
201:3,13,18,21
**bedded** 219:23
**beers** 159:9
**began** 66:9 81:9
**beginning** 85:2
118:19 185:18
238:25
**begins** 184:7
**behalf** 18:12,15,17
43:13 63:18 94:22
106:2 182:5
184:11
**behavior** 75:16
**belied** 178:24

**belief** 31:12 35:4
228:19
**believe** 10:11 20:6
20:19 22:11 23:22
28:6 31:14,18,22
31:25 34:19 35:3
37:17 38:23 48:16
49:8 50:18,25 51:6
53:11 77:16,17
81:4 90:8,13,19
98:8 115:15
119:20 121:2
130:7 135:15
136:18 140:19
147:12 153:24
183:4 186:25
187:12 188:2,12
189:11,22 193:24
193:25 203:2,17
203:18 204:3,16
233:7 239:17,23
250:7,25 252:14
**believed** 50:22 75:18
139:21
**believes** 75:12 78:24
248:6
**bench** 29:13 44:2
254:9
**beneficiaries** 68:13
70:4
**benefit** 15:3 87:2
100:14 109:18
144:8 167:3
180:14 184:2
248:19
**benefits** 11:4,11
56:9 91:14 92:20
93:21 95:14 99:6
100:6 116:23
128:15 167:4
202:13 230:9
**best** 24:16 25:19
26:24 28:8 31:6
37:24 41:9,15 60:9
66:23 68:8 75:13
78:25 186:22

191:17 195:4
214:21 215:13
217:23 228:3
254:5
**bested** 178:14
**bets** 110:22
**better** 52:7 74:14
84:18 123:16
155:3 156:4
159:15 163:17
174:15 204:22
220:6 237:21
246:19
**beyond** 113:17,22
163:14 199:19
233:9 250:22
252:13
**bid** 128:23
**big** 29:20 46:21 50:5
70:25 89:13 93:9
108:4,11 109:5
236:4
**binder** 176:6
**bit** 57:13 66:6 70:21
95:5 103:13 141:6
150:12 163:14
182:12 202:11
**block** 146:3 221:15
**blow** 210:16
**blown** 10:14
**board** 9:24 10:15
31:5 59:9 62:8
118:7 121:17
195:12 205:4
213:9 215:9 216:8
216:11,12 219:18
231:13,19 241:3,5
241:21 242:12
**boat** 101:18,19
**bodies** 200:13
**body** 133:14 188:19
189:14
**Bogdnavich** 16:17
17:25 54:18,22
55:3 56:5 61:24
85:10 136:20

**Bogdnavich's** 48:13
50:10 51:6
**Bogdnovich** 117:18
**bogus** 172:20,23
**bona** 247:16
**bonus** 49:19 50:14
50:15,16,24 54:9
54:10,14 58:16,20
58:20 59:5,20,21
86:13 102:4,13
118:5 139:9,10
234:23 240:9
241:7 249:20,25
251:14,15,18,19
252:4,5,14,23
**bonuses** 50:18 51:16
51:22 53:25 94:10
103:21 118:5
153:16 156:6,12
225:18 239:25
240:2 246:16
**book** 15:18,25 29:24
71:2 89:13 112:22
**books** 15:21
**borrowing** 129:8
**bottom** 51:19 77:15
217:17 243:23
**bounty** 169:21
**Bowling** 1:18
**box** 169:24
**Brad** 21:15 184:11
**BRADLEY** 4:23
**branding** 133:2
**break** 58:13 68:24
114:2
**breech** 211:3
**brief** 18:18 63:11
84:15 114:15
182:9 209:21
**briefly** 22:18 68:25
71:9 76:12 113:25
**briefs** 113:17,20
154:5
**bring** 99:22 180:22
251:2
**Bringing** 156:19

**brings** 111:10
133:10
**broader** 202:12
**Broadway** 6:3
**brought** 34:21 99:17
104:3 186:4
**Budgnovich** 140:8
141:3
**Budgnovich's**
204:15
**Bugdovich** 138:2
**building** 191:10
**bulk** 214:22 248:10
**bunch** 205:22
**burden** 20:14 145:6
212:11
**burdensome** 34:4
**business** 50:6,23
52:3,19 53:17
59:12 85:11,14,18
86:7 96:9 116:9,19
119:7,24 121:9,15
122:13,14 123:10
124:25 126:22,23
127:14 128:8,21
134:13 135:17,24
137:10 140:24
141:16 159:25
160:4 166:20
173:25 175:3,5,7
182:24 202:24
205:3,10 211:16
211:17 214:18
220:13 222:2
224:13 225:6
230:20,23 231:2
232:4,8,22 237:16
238:14 242:7,11
242:17 243:12
245:9 247:5,9
248:15,16 249:6
251:25 252:7
**businesses** 121:12
127:7
**BUTER** 209:17
**Butler** 4:8 7:5,6

12:16 14:15,19
15:24 16:24 17:8
19:3,7 20:6,18,23
21:6,9 28:12 29:19
30:4 35:8,21 47:10
47:20,25 54:16,25
55:13,18,23 60:20
61:23 62:13 63:4,9
76:2,5,23 79:9
84:8,11,14 87:6
91:24 94:18
104:12 106:19
110:5 112:3,6,10
112:13,20 113:3,7
113:12,21 114:4
114:13,18 124:14
124:21 125:11
132:2 155:8
204:11 209:8,20
210:17,22 211:6
215:23 216:3
226:15 227:20
228:4,18 229:23
230:5,12,16,25
231:4,8 233:17,22
234:25 236:16,24
237:8,18 253:2,6
**Butler's** 168:24

---

**C**

C 4:2 7:3
**cake** 128:17
**calculation** 91:6
245:20
**California** 186:5
**call** 54:18 62:5
65:13 69:3 71:9
83:17,24 92:8
141:11 163:17
164:11,12,12
**called** 9:23 83:12
130:12 132:14
135:20 156:25
248:8
**calling** 155:9
**calls** 110:6 231:10

**canceling** 177:19
**cancelled** 8:15,19
118:7 177:12
**capital** 8:7,12,18
**capitulated** 143:22
**capsulize** 135:5
**card** 129:8
**care** 38:24 147:2
**career** 126:9
**carefully** 222:3
**cars** 101:6
**carved** 222:4
**case** 17:12 22:3,10
59:3 77:15 84:19
94:7 106:24
109:11,17 115:22
115:25 118:8,19
119:11,18 120:7
120:24 122:2
123:24 125:13
126:4,11 127:2,13
127:24 128:11
130:8,21 133:17
134:15 138:19
141:10 145:3,22
155:10,11 156:4,5
157:7,17,17 163:8
163:21 164:9,13
164:14 165:20
166:7,14,15,16
168:4 169:17,24
172:7 179:10
180:13,23,23,24
181:15 185:9,20
187:4,11 198:19
205:25 206:4
207:5 210:4
211:10 212:23
213:20 214:3
220:5 224:11
229:3,4 233:6,8
234:5 235:8,24
238:14 239:14
240:10 241:15,24
242:22 244:24
245:6 247:10

251:7
**cases** 9:2 115:8
126:8 150:10
154:5 157:19
162:20 168:12
169:12,20 177:16
197:24 213:24
220:9,23,25
228:22 234:3
**cash** 7:22 10:22 52:2
56:13 57:16
**categorically** 110:16
202:5
**categories** 32:14
**category** 67:10
**cause** 27:20 61:14
182:25 183:3
207:10,23
**caused** 205:16
214:12 221:14
**causing** 127:4
**Ceccatti** 226:20
**Ceccotti** 5:23 104:7
154:25 155:2
160:14 162:22
163:2 166:4 203:8
**Ceccotti's** 179:9
**central** 178:25 180:5
180:12,13 181:8
**centrality** 145:3
**CEO** 87:23
**certain** 2:5 43:12
45:2 59:18 60:13
70:3 85:24 189:16
236:18 246:20
**certainly** 32:24
79:20 130:19
146:6,20 169:17
172:2 197:10
202:19 207:12
209:9,17
**certainty** 252:12
**certify** 254:3,11
**chain** 183:2,9
223:12,13,18,24
224:5,14 225:5

**challenge** 122:23
**challenged** 229:4
231:17
**challenges** 229:4
**chambers** 189:8
213:6 253:4
**chance** 51:2,4 133:4
208:15 230:14
234:22
**change** 102:21 139:7
194:16 247:8,23
252:21
**changed** 241:3
**changes** 180:19
252:21
**changing** 155:20
**channel** 82:17
**chapter** 115:8 118:8
118:14 119:11
140:15 175:9
214:3 240:10,22
245:6
**characterize** 212:19
**charge** 48:10 188:7
**charged** 197:3
**chart** 120:14
**charts** 136:22
157:22
**check** 119:18 142:13
142:13 150:8
207:20 208:5,20
210:22
**Chicago** 4:6
**chief** 9:25
**chiefly** 99:2
**chime** 225:17
**choose** 14:25 81:4
**chooses** 223:17
**chose** 131:10,17,18
**chosen** 136:6 251:2
**Christmas** 88:15
**circumstances**
110:4,12,18 119:8
119:10 239:13
241:2 246:21
**cited** 154:5 185:14

197:24,25
**civil** 187:2 194:25
199:17
**claim** 71:17,20
89:20,24 182:19
207:18,19
**claims** 90:5 178:15
178:17
**clarification** 29:3
33:13
**clarity** 249:11
**clash** 101:4
**clashing** 157:2
**class** 24:4 46:19
143:2
**clause** 56:19
**claw** 31:3 41:13 42:5
74:19 190:4
191:12 192:12
199:8 207:24
**claw-back** 25:10
27:13,17,23 28:3
31:21 32:22 33:16
37:23 39:19 40:6
41:7 42:3,12,16
195:6 196:11
200:4,7,11 206:24
207:4 209:5 248:8
**clear** 10:16,18 68:6
77:20,23 126:21
136:21 137:22
170:5 184:18
206:23 215:4
221:9 237:11
238:4 242:10
247:2 249:15
251:8,9
**clearly** 121:7 198:4
236:24 239:8
241:2
**client** 152:14
**clients** 149:4 172:16
175:18 221:5
**close** 18:24 78:19
113:8 195:16
**closed** 113:11

**166**:25
**closer** 103:19 213:24
**closing** 114:15
**code** 33:10 190:13
199:10 239:19
**COHEN** 5:18
**collateral** 198:14
**colleagues** 155:8
**collecting** 97:14
**collective** 61:15
170:25 181:18
185:12
**colleges** 101:6
**colliding** 156:21
**colloquy** 155:6
**Colorful** 28:2
**combination** 56:9
110:24
**come** 13:4 71:19
82:16 88:18,23
105:22 106:2
114:15 115:9,22
116:3 123:5 130:4
135:7 164:15
168:2 172:6 181:5
183:25 208:12
220:7 236:6
**comes** 54:11 146:22
158:24 160:11
190:13
**comfort** 123:8
**comfortable** 66:15
77:2 172:8 173:8
**coming** 16:13
157:15,21 184:4
**comment** 122:10
141:2 146:20
204:3 225:20,22
226:19
**comments** 187:19
199:4 206:2
220:19 226:16
**committee** 5:3 7:17
9:4,14 13:5 15:4,7
22:19,24 24:13,14
24:20,25 36:2,4,11

36:15,20,25 37:3,7
37:14,21 38:4,7,17
38:19 40:2,5 41:23
43:9,17 44:9,15,23
44:25 45:7,15 46:2
46:5,8,15 47:6,16
47:17,22,23 48:6
55:25 64:19,23
65:4,12 68:9,10,12
68:19 69:4,8,9,20
69:21 70:2,8,9,10
70:11 71:18 72:11
72:25 73:4,6,10,19
73:21 74:2,3 75:19
76:4,7,15,16,18
77:6,25 78:2,5,8
78:17 79:5,7,11
80:20 81:12,21,22
82:12,24 83:3,18
84:10 87:10,19
88:20 90:4,4,7,9
90:14,15 119:6,13
119:20 121:17
122:25 127:22
128:3,5 129:15
130:21 131:7,12
131:19 132:4
133:13,15,17
135:6 143:14
155:19 182:10
186:9,10 187:21
188:6,24 189:21
191:6 192:2
194:18 195:13
196:7,8 205:14
206:19 207:18
208:8,25 209:3,7
210:20,23,24
213:8,12 214:14
214:19 215:10
218:13,20,25
219:19,24 222:5
233:19,24 234:14
241:4 242:19
246:14 247:24
248:5,6 249:9

252:22
**committees** 24:12
  25:16 68:11 90:12
**committee's** 71:25
  131:5 189:13,24
  190:17 218:22
  245:16
**common** 66:13
  221:4
**commonly** 22:2
**communicate** 157:5
  247:25
**communication**
  37:10 98:7
**communities** 145:24
**comp** 95:13,15,15
  106:15 107:19
  108:10 218:20
  219:19
**companies** 48:18
  50:8 57:19 93:10
  93:13 108:5,12
  109:5 148:24
  169:16 171:20
  225:16
**company** 6:10 9:22
  11:8 12:8 14:21
  21:25 24:17,21
  25:19 26:24 28:9
  32:19,20 33:24
  36:16,22 37:25
  40:19,21 41:10,16
  43:14 45:4 55:15
  60:5 63:6 75:11,13
  78:23,24 85:14
  87:15,21 90:5
  99:24,25 100:3,11
  100:13 103:18,18
  104:3,4 118:2,21
  120:15,16,21
  121:12,14,21,23
  122:5 127:10,14
  127:19 128:6
  137:22 139:17
  140:15,16 141:8
  141:14 142:6

144:22 151:5,8,10
  151:19 152:7,8
  153:13 156:20,22
  159:14,23 162:8
  165:21 170:16
  171:4 172:3
  173:16,19,23
  175:9 180:11
  181:4 182:6,22,24
  186:23 188:11
  191:18 196:15
  197:10 205:6,24
  212:17 214:18
  215:6 218:25
  223:9 232:12
  237:2
**company's** 33:6
  85:11 133:24
  138:5 149:21
  176:7 182:7
**comparable** 148:24
  173:6
**comparably** 48:18
**compare** 37:22
**compared** 57:14
  244:6
**comparing** 56:21
**comparison** 51:15
  61:13
**compensation** 2:11
  2:17,24 3:5 7:14
  10:4,21,24 11:7
  17:24 22:19,24
  36:2,3,25 37:7,20
  40:5 41:23 43:8,16
  44:8,23 45:7,15
  46:8,15 47:6 48:6
  49:3,5 50:2 51:9
  51:18 56:13,22
  60:10 64:18 65:4
  65:12 68:9 69:9,19
  69:25 70:10 73:18
  74:2 76:15 77:25
  80:20 81:12,21
  82:12 83:2,18 90:4
  90:7,9,15 92:18,21

92:22,24 93:8,12
  93:17 94:6 96:7
  97:18 98:4,15 99:9
  99:16 100:18
  106:8 108:3 109:3
  109:10,16 110:3
  111:6 115:11
  116:13 118:22
  128:18 130:10
  132:5 140:13
  143:25 144:4,8
  148:21 149:11
  152:9 157:18,20
  158:2 167:21
  168:21 177:13,20
  178:7,13,23 188:6
  190:16 191:5
  192:2 196:7
  203:25 209:3,6
  214:4,11 215:9
  218:14,22 228:21
  235:3 238:19
  240:19,23 241:4,5
  241:10 243:4,7,21
  243:24 244:7
  247:4,13 248:4
**compete** 159:3,15
**competent** 186:24
**competing** 135:7
**competition** 56:23
  56:23 159:6
**competitive** 11:20
  48:17 49:2,6 50:2
  60:16 93:24 96:21
  100:19 102:22,25
  106:9,17 107:20
  108:4,11 109:4
  116:20 117:11,25
  118:23 122:21
  160:9,13 161:16
  227:14 243:21
  250:7
**competitiveness**
  167:10 180:6
**competitors** 49:7
  51:15,25 57:21

96:7 99:18 243:25
244:9,16
**complaint** 46:19
246:13
**complaints** 190:9
**complete** 18:21
**completed** 18:5
154:9 217:22
**completely** 155:20
165:16
**completion** 18:20
**complex** 156:10
163:19
**complicated** 155:24
157:11
**complying** 210:12
**component** 23:16
28:4 51:8 56:24
57:21 178:6
**components** 57:5
92:18 115:20
117:14,15 244:7
**comports** 196:10
**comprised** 9:23
**comprises** 11:7
**con** 231:20,24
**concede** 178:9
**conceded** 208:3
249:8
**concept** 170:15,21
178:19
**concern** 47:14 88:24
182:21 183:21
**concerned** 103:7
129:19 136:8
152:17 200:20
247:18
**concerns** 88:3,4 89:3
145:24 183:19
**concession** 250:3
**concessionary** 94:12
**concessions** 101:25
109:18 158:9,10
170:2 180:15
236:9 248:19
252:3

**conclude** 227:16
**concluded** 44:15
215:4,12 233:2
243:5 253:9
**concludes** 253:6
**conclusion** 69:14
134:11 150:22
232:5 243:16
**conclusions** 188:23
**concrete** 175:24
**condition** 203:22
**conditions** 248:8
**conduct** 31:13 32:4
33:10 38:11 43:13
67:13,19 190:13
199:10
**confers** 17:11
**confident** 136:4
**confidential** 43:24
81:24
**confidentiality** 44:7
210:18 248:2
**confirmation**
203:12
**conflict** 194:21
**confrontation**
154:15
**congress** 126:16
**congressional** 206:6
**connection** 17:9,14
54:20 62:9 118:8
122:6 127:17
129:20
**cons** 217:7
**conscious** 221:20
**consensual** 20:14
126:13 145:4
156:9 168:2
211:13
**consensus** 217:20
**consequences**
147:19 151:20,25
158:8
**consider** 83:3
147:15 154:17,23
**considerably** 251:20

**consideration** 80:19
83:2 106:16 109:3
123:13 150:21
154:7 239:9
**considerations**
231:20,23
**considered** 43:9
45:21 81:3 107:10
180:10 206:10
**considering** 211:13
211:14
**consistent** 60:17
66:7 79:19
**consistently** 59:15
**consolidated** 46:18
**consternation**
111:11 214:12
**constituencies**
133:22 134:10
242:21
**constituency** 134:2
134:4,17
**constituents** 99:5
108:18 239:16
241:24
**constitutes** 245:2
**constraints** 169:3
**constructed** 77:5
122:19 205:20
**construed** 135:16
**consult** 153:9
**consultant** 17:25
218:14,23 243:5
**consultants** 132:5
157:21
**consultation** 31:18
**consulting** 214:19
**consuming** 34:3
**contain** 246:21
**contained** 114:22
130:9
**contains** 129:13
212:25
**contemplate** 14:13
**contend** 249:4
**contended** 248:12

**contending** 137:19
**contest** 142:4
**context** 142:15
150:24,24 152:6,8
159:14 173:14
177:22 180:10
181:2,12,22
199:14 226:11
251:24 252:8
**contextual** 86:22
**continents** 121:14
223:7,25
**continuation** 151:8
**continue** 69:21
100:11 103:17
**continued** 23:5 89:6
169:19
**continues** 69:20
130:14 179:7,8
**continuing** 49:12
68:20 69:22
181:17
**continuity** 223:13
**continuum** 145:2
**contract** 223:19
**contracts** 102:16
163:11 169:6
180:19 182:20
**contradict** 243:17
244:2,12
**contrary** 96:2 131:3
144:21 147:11
219:4 231:13
**control** 44:17
148:13
**controversy** 130:23
**controverted** 218:7
**controverts** 234:15
**convening** 81:25
**conversations** 147:3
**convey** 160:25
**convince** 179:13
**convincing** 102:20
**cooperate** 68:20
**cooperation** 132:11
**coordinator** 105:21

| | | | |
|---|---|---|---|
| **copy** 29:11 70:21 | 126:1 127:1 128:1 | 23:12 26:16 27:2 | 136:12 178:12 |
| **corporate** 48:11 | 129:1 130:1 131:1 | 28:10 30:10 31:7,8 | 209:2,16 225:15 |
| 57:4 140:9 148:3 | 132:1 133:1 134:1 | 31:14,22 34:18 | 235:18 239:15,20 |
| 204:25 217:18 | 135:1 136:1 137:1 | 35:7 36:18 39:8 | 239:22 |
| 245:2 | 138:1 139:1 140:1 | 40:10 41:4,16 | **court** 1:2 7:4 8:9,23 |
| **corporation** 1:8 2:1 | 141:1 142:1 143:1 | 43:14 44:22 45:22 | 9:18 10:2,8 12:13 |
| 3:1 4:1 5:1 6:1 7:1 | 144:1 145:1 146:1 | 45:24 46:20 48:19 | 12:15,17,24 14:13 |
| 8:1 9:1 10:1 11:1 | 147:1 148:1 149:1 | 49:3 50:14 51:13 | 14:16,18 15:23 |
| 12:1 13:1 14:1 | 150:1 151:1 152:1 | 51:20 56:12 58:18 | 16:23 17:4 18:25 |
| 15:1,3 16:1 17:1 | 153:1 154:1 155:1 | 61:2 62:22,23 64:5 | 19:2,6,23 20:4,15 |
| 18:1 19:1 20:1 | 156:1 157:1 158:1 | 65:15 66:3 67:21 | 20:16,22 21:5,13 |
| 21:1 22:1 23:1 | 159:1 160:1 161:1 | 68:15,22 69:11,18 | 21:15 22:5,6,17,22 |
| 24:1 25:1 26:1 | 162:1 163:1 164:1 | 72:13 73:2,7 75:21 | 24:6 26:14,24 |
| 27:1 28:1 29:1 | 165:1 166:1 167:1 | 75:23 76:12 78:14 | 28:17,22 29:8,14 |
| 30:1 31:1 32:1 | 168:1 169:1 170:1 | 82:22 84:25 87:16 | 29:22 30:18 31:17 |
| 33:1 34:1 35:1 | 171:1 172:1 173:1 | 91:2 92:7 97:6 | 31:24 32:8 33:21 |
| 36:1 37:1 38:1 | 174:1 175:1 176:1 | 99:10 100:15 | 35:14 39:3 42:24 |
| 39:1 40:1 41:1 | 177:1 178:1 179:1 | 105:15 106:4 | 43:10 44:4 47:9,18 |
| 42:1 43:1 44:1 | 180:1 181:1 182:1 | 107:16,23 153:22 | 48:3,9,22 49:17 |
| 45:1 46:1 47:1 | 183:1 184:1 185:1 | 174:11 204:12 | 50:3,10,17 51:5,21 |
| 48:1 49:1 50:1 | 186:1 187:1 188:1 | 227:22 254:4 | 52:4,9,13 53:3,9 |
| 51:1 52:1 53:1 | 189:1 190:1 191:1 | **cost** 53:25 54:3,13 | 53:14,24 54:15,24 |
| 54:1 55:1 56:1 | 192:1 193:1 194:1 | 83:3,3,7,19 135:21 | 55:12 56:4,18 |
| 57:1 58:1 59:1 | 195:1 196:1 197:1 | 146:23 | 57:20 58:2,12,15 |
| 60:1 61:1 62:1 | 198:1 199:1 200:1 | **costs** 54:6 126:11 | 58:24 59:4,13,23 |
| 63:1 64:1 65:1 | 201:1 202:1 203:1 | 155:14 229:22 | 60:2,19,22 61:21 |
| 66:1 67:1 68:1 | 204:1 205:1 206:1 | 230:2 236:5 | 61:25 62:23 63:13 |
| 69:1 70:1 71:1 | 207:1 208:1 209:1 | 245:22 | 63:15,21,23 64:7 |
| 72:1 73:1 74:1 | 210:1 211:1 212:1 | **counsel** 15:13 34:8 | 64:12 66:21 71:4 |
| 75:1 76:1 77:1 | 213:1 214:1 215:1 | 34:23 35:2,9 105:6 | 74:21 76:14,25 |
| 78:1 79:1 80:1 | 216:1 217:1,4 | 108:15 115:9 | 77:20 78:4,16 |
| 81:1 82:1 83:1 | 218:1 219:1 220:1 | 189:7 206:4 243:2 | 79:18 80:10,15 |
| 84:1 85:1 86:1 | 221:1 222:1 223:1 | **count** 58:20 81:17 | 84:7,13,15,17 85:5 |
| 87:1 88:1 89:1 | 224:1 225:1 226:1 | **counterparts** 244:8 | 85:8,13,21 86:4,10 |
| 90:1 91:1 92:1 | 227:1 228:1 229:1 | **countless** 115:6 | 86:21 87:5 91:8,22 |
| 93:1 94:1 95:1 | 230:1 231:1 232:1 | 162:20 | 93:23 96:20 97:3,8 |
| 96:1 97:1 98:1 | 233:1 234:1 235:1 | **country** 211:25 | 97:17 98:2,13,24 |
| 99:1 100:1 101:1 | 236:1 237:1 238:1 | **couple** 71:13,15 87:7 | 99:12 100:15 |
| 102:1 103:1 104:1 | 239:1 240:1 241:1 | 133:20 135:12 | 101:13 102:10,17 |
| 105:1 106:1 107:1 | 242:1 243:1 244:1 | 149:9 155:6,7 | 104:5,10 105:11 |
| 108:1 109:1 110:1 | 245:1 246:1 247:1 | 220:18 | 107:6,20 108:13 |
| 111:1 112:1 113:1 | 248:1 249:1 250:1 | **course** 10:13 64:21 | 108:21 109:4 |
| 114:1 115:1 116:1 | 251:1 252:1 253:1 | 65:6 68:18 70:14 | 110:7,11,14,18 |
| 117:1 118:1 119:1 | 254:1,10 | 94:2 116:6,8 119:2 | 112:2,5,8,12,19,25 |
| 120:1 121:1 122:1 | **corporations** 170:24 | 121:3 133:13,24 | 113:6,9,16,19,24 |
| 123:1 124:1 125:1 | **correct** 22:15 23:11 | 135:17,23 136:3 | 114:7,17 115:10 |

115:18 116:3,7
120:19 121:5,8
122:12,16 123:3,8
124:11,16 125:7
126:6 129:4
130:11 132:21
138:14,22 139:4
145:10,19 147:15
148:18 149:14
150:2,20 151:12
151:23 152:20
153:14,19,23
154:17 158:19
161:25 162:25
166:3 171:10,13
171:19 172:12,15
172:24 173:4,11
174:4,7,22 175:2
175:11,19 177:24
178:2 179:19,25
181:25 184:8,18
186:6,17,24 187:2
189:4,8 190:14
191:12 192:18,22
197:15,20 198:4,9
198:11,17,23
199:2,12,19,25
200:5,19 201:11
201:15,20 203:4,7
204:5,7,10 205:19
208:22 209:13,19
210:8,18 211:4
214:7 215:18,25
226:5,10,23
227:24 228:9,16
229:17,24 230:11
230:13,22 231:3,5
233:13,20 234:2
234:20 235:7,10
236:22,23 237:6
237:17,20,24
253:5,7 254:8
**courtesy** 29:11
**courtroom** 92:9
108:17 125:16
**courts** 122:14

242:10
**court's** 21:11 114:14
124:2 185:7
188:18 228:13
239:9 247:12
**cover** 9:15 82:3
**covering** 8:25
**co-fiduciaries**
207:21
**create** 210:12
251:12
**creates** 117:25
156:25 165:9
207:23
**creating** 224:8
**credit** 87:2
**creditor** 72:21
133:14
**creditors** 5:4 7:17
9:4,13 13:5 15:7
52:18 55:25 66:14
71:18 87:10,19
119:6,12 121:16
123:15 127:22
130:20 131:5,7
133:12 155:19
195:12 208:8
213:8,11 214:13
214:19 218:13,22
219:23 222:4
233:19,24 234:13
242:18 245:16
246:14 249:8
**creditor's** 128:3
187:21 205:14
206:19
**credits** 87:15
**crew** 87:15
**criminal** 38:11
40:22,24 72:4,5
78:18 189:7 195:2
199:6,15 210:10
**criteria** 32:4
**critical** 144:14 154:4
**cross** 14:14 16:16
17:20 18:18 19:16

19:19 20:15 47:11
47:21 54:19 55:7
55:19 62:8,21
63:11,22 71:14
84:9 168:16
185:19
**culpability** 37:2
38:19 41:7 189:25
**current** 22:20 23:25
25:9 30:16 31:3
34:11 110:4
176:12 187:6
190:23,23 199:8
199:22 201:4
243:18
**currently** 23:15 35:5
110:17 189:17
**curves** 218:15
**Custom** 1:17
**customer** 224:12
**customers** 183:6
224:17,18,19,24
225:5
**cut** 142:8 162:24
179:16
**Cutler** 46:4 188:25
**cuts** 120:17 146:15
159:3 167:3
181:14 233:11,15
**cutting** 155:14

---

## D

**D** 1:23 7:3 62:6
**Daingerfield** 4:21
21:17 63:18
**damage** 197:10
**damages** 183:3
**dandy** 139:2
**dangers** 61:13
**data** 130:17
**date** 39:9 66:6 67:2
131:15 213:5,19
216:19 254:15
**David** 4:9 7:9 92:13
**day** 39:23 64:15
126:17 130:7

154:3 157:16
162:16 183:5,10
185:11 214:25
225:7 229:19
232:20,25
**days** 11:18 135:14
135:25 137:18
139:3 201:8,8
**dead** 143:22
**deadline** 212:25
**deal** 13:15 18:22
25:10 76:10
118:22 124:23
125:2 126:5,24
148:4 161:9,10
187:17 211:20
214:6,17 221:5
225:8 234:7
242:22
**dealing** 11:23 13:13
13:24 18:6 34:12
91:25 169:4 187:2
187:7 229:22
236:5 242:2
**deals** 41:14 43:24
199:23 214:10,15
**dealt** 8:4,9,17 12:18
18:9 220:20 230:2
**debate** 164:17
**debated** 213:23
222:3
**debating** 158:11
**debentures** 182:8
**debt** 182:7
**debtor** 1:10 22:21
24:14 25:2,16
26:16 31:7,20 32:3
34:4 50:18 64:13
66:22 71:16,19
72:22 76:13 83:4
83:19 131:4,8,10
131:17 135:14
147:20 148:13
153:9 155:12
163:4,23 182:16
183:3 185:14

187:20 188:21
189:13 190:15
192:10 194:17
196:25 200:15
201:7 202:21
209:11 213:3
227:13 229:3
243:22 248:17
250:6
**debtors** 2:10,16,23
3:4 4:4,12 7:13,18
8:4,11,13 9:2,10
10:10,17 11:10
12:8 16:6,9 17:16
17:21,24 18:2,5
27:11 48:2,14
52:15 53:11,16
54:17 61:12 62:5
64:5 89:20,24
92:13 111:20
112:15 116:10,18
116:22 117:3
119:6,11 123:9
134:13 147:16
157:10 159:2
166:21 179:3
181:14,15 182:14
215:14 217:23
220:15 232:21
237:25 238:13
239:14,23 240:5
240:10,12,22
241:2,5 243:6
244:3,8,13 245:9
245:15 247:22
248:14,16 249:6
250:9,11,16,23
251:20 252:10
**debtor's** 2:22 60:8
115:9 128:21
147:13 157:17
158:10 161:4
164:15 170:9,18
172:18 185:10
195:4 200:21
202:24 205:3

206:5 207:19
211:17 213:15
219:10 222:12
242:12
**December** 7:18
88:13,14 89:6
187:19
**decent** 234:4
**decide** 37:8 83:16,18
158:23 207:19
**decided** 193:14
214:22 239:18
**decidedly** 148:16
**decides** 133:3
207:18
**deciding** 66:2
159:12
**decision** 23:3 34:2
65:9 69:7 80:23
82:5,9 83:22
105:25 146:9
185:7,8 217:8
221:20 241:20
242:9 247:14
**decisions** 84:3
185:14 217:9
**declarant** 14:8
18:16
**declarants** 18:5
**declaration** 13:21
13:22 14:3 17:18
17:19,22,24 18:2
18:11,11,13,14,16
22:14,17 28:7 30:8
31:10 54:20 62:9
68:7 69:5 94:21,23
104:15 136:20
204:15 216:5,22
**declarations** 14:12
17:23 18:7 19:11
19:14,21 92:3,5
215:7 220:2
231:15
**declaratory** 136:2
**declined** 10:5
**declines** 40:25 72:5

**declining** 169:18
**deemed** 69:7
**deep** 145:24 155:17
**def** 178:12
**defendant** 24:4
186:3
**defense** 189:7
**defer** 149:16 204:5
250:22
**deferred** 177:13,20
178:13 227:15
230:4
**deferring** 47:16
217:2
**defers** 225:22
**Define** 41:11
**defined** 181:19
**definition** 209:5
**delaying** 33:5
**delete** 32:15
**deliberation** 217:22
**deliver** 224:16
234:17
**Delphi** 1:8 2:1 3:1
4:1 5:1 6:1 7:1 8:1
9:1,24 10:1 11:1
12:1 13:1 14:1
15:1 16:1 17:1
18:1 19:1 20:1
21:1 22:1 23:1
24:1 25:1 26:1
27:1 28:1 29:1
30:1 31:1 32:1
33:1 34:1 35:1,6
36:1,6 37:1,15
38:1 39:1 40:1
41:1 42:1 43:1
44:1,15,18,19,22
45:1,25 46:1,11
47:1 48:1 49:1,24
50:1,8 51:1 52:1
53:1 54:1 55:1
56:1 57:1,8,16
58:1,5,6 59:1 60:1
61:1,6 62:1 63:1
64:1,19 65:1 66:1

67:1,25 68:1 69:1
70:1 71:1 72:1
73:1 74:1 75:1
76:1 77:1 78:1
79:1 80:1 81:1
82:1 83:1 84:1
85:1 86:1 87:1
88:1 89:1 90:1
91:1 92:1,16,25
93:1,9,17 94:1
95:1,12 96:1 97:1
97:9,17 98:1,3
99:1,23 100:1
101:1 102:1,22
103:1 104:1 105:1
106:1,9 107:1
108:1,3 109:1
110:1 111:1 112:1
113:1 114:1 115:1
116:1,21 117:1,10
118:1 119:1,4
120:1 121:1,4
122:1 123:1 124:1
124:4,8 125:1
126:1 127:1 128:1
129:1 130:1 131:1
132:1 133:1 134:1
135:1,25 136:1
137:1 138:1 139:1
140:1 141:1 142:1
143:1,18 144:1,12
145:1 146:1 147:1
148:1 149:1 150:1
151:1,6 152:1
153:1 154:1,19
155:1 156:1 157:1
157:16 158:1
159:1 160:1 161:1
161:15 162:1
163:1 164:1 165:1
166:1 167:1 168:1
169:1 170:1 171:1
171:8 172:1 173:1
174:1 175:1 176:1
177:1 178:1,10
179:1 180:1 181:1

182:1 183:1 184:1 184:22 185:1 186:1 187:1,10 188:1 189:1,6 190:1 191:1 192:1 193:1 194:1 195:1 196:1 197:1 198:1 199:1 200:1 201:1 202:1,6 203:1 204:1 205:1 206:1 207:1 208:1 209:1 210:1 211:1 212:1 213:1 214:1 215:1 216:1 217:1 218:1 219:1 220:1 221:1 222:1 223:1 224:1 225:1 226:1 227:1 228:1 229:1 230:1 231:1 232:1 233:1 234:1 235:1 236:1 237:1 238:1 239:1 240:1 241:1 242:1 243:1 244:1 245:1 246:1 247:1 248:1 249:1 250:1 251:1 252:1 253:1 254:1 254:10

**Delphi's** 10:22 33:10 57:23 77:24 94:3 95:19 96:6 110:3 190:8

**deluged** 131:15

**delving** 77:10

**demands** 160:2

**demonstrated** 136:18 143:9

**demonstrating** 154:6

**demonstration** 142:18

**demonstrative** 16:4 118:24

**demoralized** 49:9

**demoralizing** 127:5

**denied** 147:18 154:12

**denigrating** 150:6

**deny** 107:13

**department** 45:11 59:12 67:20

**departures** 143:8

**depending** 51:11 52:12 134:3 200:13

**depends** 36:8 70:13

**deposited** 207:13

**deposition** 16:11 20:13 22:10 28:6 35:12,16 46:18 62:20 65:24 68:7 70:5 97:22 140:8 141:3 215:7,20 216:2

**depositions** 16:19 140:4 192:6

**deprive** 143:23

**deprived** 144:10

**depth** 81:17

**derived** 59:11 193:5 205:3,18

**describe** 22:18 86:3 221:14

**description** 144:4

**deserve** 67:7,10 74:11

**designate** 105:25

**designated** 20:12 62:18 87:13 105:13

**designates** 16:12

**designation** 16:8

**designations** 16:18 55:2

**designators** 16:14

**designed** 115:22,23 148:22

**designs** 158:2

**desirable** 245:8

**desk** 64:9

**details** 68:20

**determination** 65:2 174:13 196:14

201:16 208:11

**determine** 38:2 43:18 68:13 70:3 75:5 130:4 186:11 189:15 194:2 196:9,20 197:7

**determined** 32:3,16 32:17 90:5 180:3 209:3

**determines** 213:3 226:5

**determining** 36:20 37:14 43:9

**detriment** 202:15

**develop** 243:15

**developed** 66:13,17 85:18 239:5

**developing** 37:12 65:18 66:8

**development** 86:6 238:13

**device** 140:22

**didn't** 231:9

**differ** 132:18 133:8

**difference** 123:11,13 167:23 218:3 220:12

**different** 35:25 40:2 40:8,9 42:7 58:8,9 78:9,10,11,12 132:20 136:15 152:6 153:21 165:16,22 173:25 197:24 200:14,14 202:11 205:9 206:9 211:2 232:15 247:19

**differently** 110:15 152:14 165:23

**difficult** 111:15 144:23 155:23 156:14 157:11 165:10 168:2 220:25 231:10 236:8,17

**diminution** 142:25

**direct** 17:14 30:2 55:7 153:12 163:10 164:20 168:9

**direction** 187:24

**directly** 80:2 213:22

**director** 18:3 62:7 64:5 87:20 215:5

**directors** 62:8 118:7 121:18 127:15 205:4 216:20 217:11,16,21 219:19 231:14,19 231:21

**director's** 213:10

**disagree** 192:7 198:25

**disappear** 178:16

**disappointed** 53:23

**disaster** 127:16

**disbanded** 103:19

**disclosures** 246:11

**disconnect** 150:12

**discovery** 77:22 80:8 176:20 228:10

**discretion** 131:17

**discuss** 23:2

**discussed** 66:20 187:22 213:14 216:4,16,17 217:25

**discussion** 31:19 53:2 65:21 87:25 216:13 217:4,6

**discussions** 66:13 87:10 88:19 89:5 157:23 212:15 216:15 217:19 232:11 246:13

**disgorgement** 26:12

**dishonest** 26:4

**dishonestly** 25:20 26:14,23

**dishonesty** 24:16,23 25:11 186:15,22

198:12
**dismiss** 200:23
**dispassionate** 115:17
**dispute** 158:25 219:10
**disruptions** 183:2
**disruptive** 156:7,8
**distill** 157:14
**distraction** 249:3
**district** 1:3 2:15 105:22 185:10 187:5 201:12
**division** 91:18
**divisions** 246:3
**docket** 7:15 12:22 12:24 13:16,21,23 14:2,3,7,9,21,24 15:5,8,11
**docketed** 212:23
**document** 10:14 28:13,16 29:2,4 62:2 65:25 73:16 73:16 75:21
**documented** 237:10
**documents** 17:2 45:16 176:19
**document's** 14:24
**doing** 20:5 71:14 78:11 82:7 115:4 119:4 127:11 129:10 164:2 173:20,25 184:6 211:19 222:24 223:8 224:20 228:6 230:24
**DOJ** 248:3
**dollar** 10:5 139:15 181:24
**dollars** 9:20 94:11 97:3,10 135:22 146:25 147:6,7 164:6 165:9 173:21 177:11,15 177:17 179:16 183:5 240:4,5

**domestic** 8:12 93:2 96:8 107:21 121:6 212:2,7
**don't** 28:14
**doors** 176:11
**doubt** 111:12 128:13
**downsizing** 53:17
**draft** 65:24 253:3
**drafted** 58:22 61:5,6
**drafting** 65:13
**drain** 1:23 66:10 103:18
**dramatic** 142:10
**drastically** 102:15
**drive** 4:5,20 103:18
**driven** 143:5
**drop** 142:2
**dropped** 31:16
**due** 27:22 32:15 33:15,17,19,22 42:18 130:16 163:5 192:25 193:11,20 194:3,4 208:7
**duly** 20:3 54:23 62:12 92:10 94:25 104:18
**dust** 195:25
**dwell** 142:10
**dynamic** 159:7 220:5 236:15

**E**

**e** 1:21,21 4:2,2,9,23 7:3,3
**earlier** 45:2 56:5 79:19 86:11 90:20 112:16 113:5
**early** 130:21 207:15 251:7
**earn** 51:18
**earned** 26:12,22 58:21
**earnings** 91:6
**eased** 80:25

**easel** 57:3 62:2
**easily** 86:16
**easy** 121:18
**ebadar** 204:19
**Ebeda** 204:18
**EBITDAR** 138:3 140:9,12,17,21 141:4 159:21 160:4,6 171:18,22 204:25 205:7,11 245:4,7
**EBP** 48:7
**echo** 172:5
**economic** 155:17 157:12
**Edward** 6:14 182:4
**effect** 61:18 205:14 215:21 238:6 240:8
**effecting** 126:25 127:6
**effective** 10:4 120:17,19
**effects** 163:15 211:24 245:21
**efficiency** 53:20
**efficient** 230:3
**effort** 37:22,25 96:16 147:22,23 220:13 223:24 224:7 225:3
**eight** 123:23 136:21
**Eilberg** 3:22 254:3 254:20
**either** 43:13 51:10 57:24 65:14 73:6 73:17,25 86:22 93:10,25 104:24 147:18 199:15 213:18 225:7 246:19 248:7 249:13
**Electrical** 5:12
**element** 147:9 156:11,12,18 157:21 238:17

**easel** 240:18,22 243:20
**elements** 10:21 151:4
**elevate** 136:9
**elicit** 248:25
**eligibility** 25:13 39:18 75:5
**eligible** 23:10,17 24:2 35:6 43:18 70:4,18 189:17 190:19,24
**eliminated** 151:11 241:11
**eliminates** 23:25
**elimination** 252:23
**eloquent** 135:2
**emergence** 7:22,24 115:25 153:15
**emergency** 7:23
**emergent** 214:25
**emerging** 203:19
**emotion** 150:7
**emotional** 115:12
**emotionally** 150:4
**emotions** 150:6
**emphasized** 176:8
**employ** 241:16
**employed** 35:5 36:5 38:17 192:23 254:11
**employee** 2:10,17,23 3:4 7:13 23:17,18 34:7,13 35:5 42:16 76:4 81:4 90:6 109:10 110:2 111:6 124:4 157:19 168:20 193:8 208:7 209:4 229:9
**employees** 21:20 33:17 43:14 45:3 46:11,12 51:25 99:25 101:5 102:12,13 121:7 123:17,18,19 166:23 167:7,14

170:2 183:8
184:13 189:6
192:13 202:6
229:12 248:20
**employer** 146:16,22
148:3
**employers** 149:13
171:2
**employment** 36:22
37:15 69:3,6 78:21
100:2
**enabling** 229:25
**enact** 148:10
**encourage** 49:25
145:12 235:19
**encouraging** 114:9
**endanger** 144:14
**endeavor** 34:4 47:2
**ended** 81:7
**enemies** 134:5
**energy** 225:3
**engaged** 155:22
225:24 226:2,3,4
**Engineers** 2:21
**English** 6:2 166:11
**ennoble** 208:13
**enormous** 130:9
146:15 166:22
167:2 169:25
177:14 181:13,14
**Enron** 185:8,14
186:6,14 190:3
197:16,25 198:13
206:4,9
**Enron's** 186:8
**entered** 7:17
**enterprise** 151:3
**entertained** 81:8
146:10
**entire** 48:11 117:7
127:10 133:14
154:18 235:3
**entirely** 122:17
130:17 147:18
**entitled** 34:7,14,22
42:17 76:22 149:6

193:20 194:9
236:12 251:3
**environment** 118:2
146:17 165:22
251:14
**equal** 54:12
**equality** 100:24
101:15
**equally** 64:22
**equation** 236:4
**equitable** 233:10
**equity** 7:24 115:21
115:25 154:13
**equivalent** 38:3
**Eric** 47:13
**escrow** 27:20,21
40:9 41:4,25 42:17
65:20 71:10,16
73:19 74:3 80:22
81:5,8 83:5,15
89:17,19 90:18
191:22 192:16
193:4,5,12 199:23
200:2,9 207:2,2,3
207:10,23,24
**escrowed** 42:15
208:2
**escrowing** 40:7 42:4
42:13 72:13
**especially** 135:12
189:12
**ESQ** 4:8,9,16,23,24
5:8,16,23 6:6,14
6:19
**essence** 149:17
**essentially** 60:15
61:7 211:15 244:9
**established** 72:20
**estate** 10:10 132:24
147:14 148:5
152:12 214:22
215:13 233:9
**estates** 246:15
**estoppel** 198:14
**et** 1:8 2:1 3:1 4:1 5:1
6:1 7:1 8:1 9:1

10:1 11:1 12:1
13:1 14:1 15:1
16:1 17:1 18:1
19:1 20:1 21:1
22:1 23:1 24:1
25:1 26:1 27:1
28:1 29:1 30:1
31:1 32:1 33:1
34:1 35:1 36:1
37:1 38:1 39:1
40:1 41:1 42:1
43:1 44:1 45:1
46:1 47:1 48:1
49:1 50:1 51:1
52:1 53:1 54:1
55:1 56:1 57:1
58:1 59:1 60:1
61:1 62:1 63:1
64:1 65:1 66:1
67:1 68:1 69:1
70:1 71:1 72:1
73:1 74:1 75:1
76:1 77:1 78:1
79:1 80:1 81:1
82:1 83:1 84:1
85:1 86:1 87:1
88:1 89:1 90:1
91:1 92:1 93:1
94:1 95:1 96:1
97:1 98:1 99:1
100:1 101:1 102:1
103:1 104:1 105:1
106:1 107:1 108:1
109:1 110:1 111:1
112:1 113:1 114:1
115:1 116:1 117:1
118:1 119:1 120:1
121:1 122:1 123:1
124:1 125:1 126:1
127:1 128:1 129:1
130:1 131:1 132:1
133:1 134:1 135:1
136:1 137:1 138:1
139:1 140:1 141:1
142:1 143:1 144:1
145:1 146:1 147:1

148:1 149:1 150:1
151:1 152:1 153:1
154:1 155:1 156:1
157:1 158:1 159:1
160:1 161:1 162:1
163:1 164:1 165:1
166:1 167:1 168:1
169:1 170:1 171:1
172:1 173:1 174:1
175:1 176:1 177:1
178:1 179:1 180:1
181:1 182:1 183:1
184:1 185:1 186:1
187:1 188:1 189:1
190:1 191:1 192:1
193:1 194:1 195:1
196:1 197:1 198:1
199:1 200:1 201:1
202:1 203:1 204:1
205:1 206:1 207:1
208:1 209:1 210:1
211:1 212:1 213:1
214:1 215:1 216:1
217:1 218:1 219:1
220:1 221:1 222:1
223:1 224:1 225:1
226:1 227:1 228:1
229:1 230:1 231:1
232:1 233:1 234:1
235:1 236:1 237:1
238:1 239:1 240:1
241:1 242:1 243:1
244:1 245:1 246:1
247:1 248:1 249:1
250:1 251:1 252:1
253:1 254:1,10
**euphomism** 166:14
**evaluate** 230:19
**evaluated** 232:25
**evaluation** 79:21
192:3
**evaluations** 148:2
**evening** 239:2
**event** 89:20 141:10
145:2 246:18
**events** 65:18 67:25

71:10 72:8 246:12
**eventual** 61:14
**eventually** 89:7
  102:2
**everybody** 123:16
  124:8,12 161:13
  209:12 224:20
  228:24 232:14
**everybody's** 100:13
**evidence** 12:12
  13:13,19 15:20
  19:10,16,22 33:25
  45:17 54:21 55:5
  62:11,19 92:4
  94:24 104:16
  106:7,14 107:18
  108:2,9,16,25
  113:10 117:8
  122:15,23 123:7
  124:21 125:3
  126:20 128:23
  144:21 147:11
  167:15 170:5,8
  179:13,20,24
  180:2 183:17
  202:16 219:3,9
  220:2,16 222:25
  228:10 229:6
  230:21 231:15,16
  231:17 234:15
  237:11,12 242:16
  243:12,15,17
  244:2,12,12
**evidentiary** 18:21
  113:8 114:21
  115:14,15 116:25
  122:16 123:6
  218:4,5,10 220:11
  221:12
**ex** 90:11
**exact** 193:18
**exactly** 36:23 172:23
**examination** 14:14
  17:15,20 19:19
  20:15 22:7 54:19
  55:7,19 62:9,22

63:12,22 71:14
  84:10 168:16
  185:19 241:16
**examinations** 18:19
**examine** 16:16
**examined** 215:10
**examiner** 47:21
  186:14 195:11
**example** 177:9
  223:11 227:11
  243:18 245:19
**exceed** 159:20 240:6
**excellent** 133:16
**exception** 9:25
**exchange** 23:21
**exchanged** 17:13
**excluded** 91:15
**exclusive** 72:16,18
**excuse** 25:23 95:14
  109:15 218:20
**executive** 10:2 12:4
  35:7 36:5 46:11
  48:25 51:8 54:6,8
  67:6,10 69:7 92:17
  92:24 93:8,16 94:6
  95:13 96:6 101:14
  102:6 103:2
  115:10 116:13
  120:15 125:23
  127:6 143:2,8,23
  147:6 149:11
  152:9 157:18,20
  158:2 159:11
  167:21 177:7
  179:21 180:9
  207:12 214:4,10
  217:12,15 228:19
  228:21 238:18
  240:18,23 241:10
  243:23 246:7
  248:10 252:18
**executives** 10:25
  11:11 51:18 52:24
  56:10 58:4,9 60:5
  95:20 97:10 98:3
  98:14 99:9,17,22

100:7,18 101:3,10
  103:4,8,11,17
  104:2 106:9 108:3
  109:17 110:3
  116:16 117:10
  119:15 120:7,25
  121:11 124:3
  125:5 127:4,5,9
  136:25 137:18
  138:16 142:14
  143:6 144:5 147:8
  147:21,24 148:4
  148:23 151:6
  156:13 158:18
  164:6 165:8
  169:21 170:4,7
  171:3,5 173:15,20
  174:2 176:3,10,18
  176:21,25 177:8
  177:16 178:18,21
  179:4 180:25
  202:4,15,17
  203:25 222:23
  225:8 228:7,20,25
  229:14 233:3,12
  234:18 236:12
  239:15 240:24
  241:6 244:5,22
  246:3 251:18
**exec's** 97:17
**exempted** 73:12
  86:25
**exercise** 114:19
  115:13 116:18
  122:14 126:22
  128:7 134:12
  153:25 226:3
**exercised** 123:9
  232:22
**exercises** 115:3
**exhibit** 10:16 15:18
  15:21,25 16:2,4,6
  16:10 29:8,19,24
  30:16 54:22 55:4
  57:3 62:3,11,18
  70:25 71:11 89:12

89:16 94:24
  104:16 112:22
  216:6,7,7 217:17
  246:24
**exhibits** 15:25 16:5
  16:10 17:2 18:23
  19:22 62:4 92:5
  112:14,15,17,21
  112:22 176:4
  218:15
**exist** 215:16
**existed** 116:21 119:4
**existence** 137:5
**existing** 90:6,16
**exists** 179:18
**exit** 46:10 49:20
  81:13 203:21
**expanded** 133:18
  177:3
**expect** 223:21
**expectation** 137:13
  138:6
**expectations** 121:20
**expecting** 141:4
**expects** 140:16
  205:6
**expense** 134:18
**expensive** 238:18
**experience** 37:11
  140:14 167:18,24
  168:10 175:24
**expertise** 61:3 243:2
**experts** 85:2 118:22
**explain** 33:21
  221:11
**explaining** 162:13
  162:17,19 249:22
**explanation** 250:10
**explicitly** 74:15
**expressed** 89:2
  182:10
**extensive** 167:16
**extent** 58:19 143:9
  194:3,17 236:18
  247:20
**extra** 56:24 121:24

extract 180:14
extraordinary 142:16,19 224:7 240:17
extras 69:24
extremely 121:8 165:10
ex-officio 90:3 133:20
eye 149:21 165:25 234:21

**F**

f 1:21
face 151:19
faces 94:11
facilitator 22:25
facing 167:2
fact 11:17 33:2,4 39:5 45:2 62:15 77:14 79:22 82:20 87:13 90:16 92:16 92:23 93:8,15,21 95:11,19 96:6,19 117:17 118:5 120:14 122:5,24 125:13,17,25 131:6,7 140:17 149:18 159:10,19 161:2,9,10 165:7 172:8 173:3,14 176:2,18 179:6 184:20 186:18 187:17 188:12 189:19 190:23 197:20 199:8 213:25 215:8 219:11,17 222:19 225:19 226:13 229:18,20 236:3 240:25 243:22 244:25 247:24 252:2
factor 51:17 57:20 146:10 159:13 193:7

factors 110:24 143:3 143:4 154:2 215:11
facts 96:10,14,17,22 106:22,23 107:2 115:11 125:14 207:7 221:6,6,7,12 236:22 239:5,12
factual 176:24
factually 128:13 177:5
fail 41:8 183:10 191:16
failed 31:5 75:10 78:22 182:22,23 183:5,15
failing 41:14
failure 176:22
fair 28:22 50:25 60:7 61:10 67:4 74:15,17,24 100:8 107:9 118:20 133:5 134:7 139:12 161:8 180:4 227:12 230:3,14 233:10 238:9 242:4 249:11 252:5
fairly 246:21
fairness 154:13 162:4
faith 28:8 31:6 37:24 41:9,15 74:24 75:10,10 78:22 80:21 191:17 250:8
fall 188:2
falls 185:4
false 32:21
familiar 27:13 30:23 86:6 90:21 95:6 140:23 170:24
far 68:17 97:13 105:24 136:7 140:2 156:4 178:5 193:5 195:24

200:20 233:12,14 243:6 247:17
fashion 19:5 116:4
fashioning 22:20 35:4 43:17 44:10 45:21 46:7
fate 249:25
FCC 40:17,20 43:12 43:19 44:11
feature 178:25
February 1:14 8:22 163:23 198:2 212:24 213:5 216:9,23 254:16
Fed 2:4
federal 194:25
fee 54:8
feedback 69:23 70:14 81:17
feel 101:4 103:15 132:16 139:14 172:7
felt 99:25
fides 247:17
fiduciaries 208:18
fiduciary 133:13 213:17 237:3
field 128:16
fifth 14:22 41:2 72:6 94:19 193:10
fight 194:21,23
fighting 145:21
figure 49:7 58:17 103:5 123:23 214:20 245:4,7
file 71:20 90:9 126:14 131:12 138:15 156:23 213:18 250:12
filed 7:14 9:8 12:21 13:16 14:3,6 15:13 15:15 46:19 62:10 66:21 94:21 118:10,11,18 130:7,18 135:14 135:19 143:18

163:3,4 185:11 196:24 200:24 201:5 216:23 238:16
filing 40:23 66:22 72:5 122:7 212:24 240:22,25 241:12
filtering 79:4
final 8:8 62:5 83:21 104:13 134:21 149:3 206:13
finalized 172:17
finally 15:5 26:10 82:25 94:2 126:18 130:20 133:11 154:11 166:5 196:16
financial 32:21 68:2 158:15,17 161:17 172:18 196:23 203:22 231:22
find 96:17 116:8 174:19,20 185:20 187:25 199:20 235:15 242:3
finder's 54:7
finding 28:4 189:13 199:15,16 227:11 236:14
findings 36:10 44:24 45:8 46:6 129:19 130:4 189:20,23
finds 31:5 228:9
fine 19:6 21:13 26:9 28:19 29:22 32:3 63:23 64:3 108:21 114:17 162:25 200:7
finished 217:4,13
fire 180:16 181:7 221:16,19,19 222:16
firm 7:7 21:16 46:3 54:19 63:16
first 8:25 13:14,17 17:21 18:10 20:5

30:22 37:22 39:7
39:17 40:15 48:25
55:5 71:8,15,21
73:25 75:14 85:4
86:5 89:18,22,23
101:16 106:21
119:23 120:6
122:8 130:7
137:21 138:5
153:7 185:5,24
188:4 193:19
200:12 204:11
205:25 209:24
219:24 229:20
233:6 239:24
241:16 244:4
248:24 250:13
**fit** 209:4
**fits** 25:7
**five** 13:4 41:24
89:21 113:14
139:11 146:25
173:22
**fix** 125:21,22 209:18
**flack** 227:9
**flag** 141:17
**flat** 139:16
**flee** 202:17
**floating** 89:11
**Flom** 4:3,11 7:8
**floor** 6:17
**flyer** 80:24
**focus** 151:2 175:13
226:22
**focused** 166:12
**focusing** 149:22
155:12
**folks** 123:14 167:17
168:9 184:24
191:9 194:19
212:4,9,10
**follow** 125:9 131:18
**followed** 18:4
**following** 32:21
140:9
**force** 8:13 12:4,5

61:8 125:18
141:23 143:24
231:6 251:10
**foregoing** 254:4
**foreign** 121:11,12
**forever** 119:21
**forfeit** 28:5
**forfeiture** 26:21
27:24 31:4,24
74:19 186:19
207:5,24
**forget** 20:4 85:9
149:6
**forgo** 9:5
**form** 9:12 13:20
66:24 111:7 123:2
128:4 129:17
136:9 139:15
149:3 218:7,23
219:7 234:12
242:2 247:4
252:12
**formally** 15:16
**format** 88:22 136:6
**former** 43:13 189:6
**formula** 59:14,15
246:2
**formulated** 154:10
**formulating** 153:10
**formulation** 126:21
**forth** 75:21 132:3,21
**forum** 179:11
**forward** 10:18 68:8
69:19 84:3 118:3
119:21 132:12
134:14 145:7
146:22 151:5
152:11 182:21,23
182:25 203:23
215:14 217:24
220:9
**found** 26:13,23
27:22 28:9 31:12
32:23 41:19 67:15
179:17 186:8,14
186:21 198:12,21

246:20 249:10
**four** 4:13 9:11 10:21
11:2,15 13:5 92:18
93:18 95:13 117:9
117:14,15 120:6
137:2 139:10
143:11 177:18
210:5 211:9 233:6
**fourth** 9:5 14:19
88:12 186:16
234:10
**four-part** 95:21
**Fox** 6:14 55:16
182:3,4 184:9
**framed** 179:7
**FRANK** 5:10
**frankly** 155:4
168:14 218:6
219:7 247:15
**fraud** 199:16
**free** 132:18 133:7
**freely** 102:9
**freeze** 146:24
**Frequently** 178:15
**fresh** 208:15
**Friday** 213:17
**front** 25:3 28:17,17
70:22 71:11 80:23
83:21 89:15,17
121:7 124:17
139:24 141:17
142:4 162:7
165:17 191:21
237:24
**front-end** 25:13
**fulfill** 237:2
**full** 8:10 50:15 123:7
**fully** 155:22 225:23
225:25 226:3,4
**fun** 134:22
**fund** 21:23,24
**funds** 26:12 27:20
27:21 73:19 74:3
80:22 186:5
**further** 20:15 91:20
94:14 98:22 104:6

111:24 112:7
113:20 197:9
216:10 217:22
238:12 245:10
246:4 252:10
254:11
**future** 68:9 69:2,19
70:9 100:2 151:2
180:8 181:5
193:15

---

**G**

**g** 7:3 177:10 205:2
**gained** 184:2
**gaining** 101:11
**game** 134:22
**gates** 178:20 183:12
**gathered** 45:17
**gee** 123:15
**general** 11:2 91:11
91:14 92:17 95:12
178:17 205:15
212:17 217:10
224:19
**generally** 48:9 50:5
52:23 57:5 58:5
68:16 82:24 90:21
108:17 139:14
148:21 199:19
240:10,19
**Geneva** 153:13,14
166:6,7
**getting** 49:12,19
52:20 77:21 83:7
95:20 111:14
124:8,19 125:5
147:23 159:11
171:17 173:21
174:2 207:14
230:10 252:19
**give** 28:10 29:6,11
42:6 69:23 71:5
80:20 83:3 88:3
97:24 98:19 100:5
101:2,24 103:11
121:24 175:15

224:22 228:14,17
**given** 40:16 53:15
  141:15 142:2,3
  145:2 154:2
  192:10 195:25
  208:7 214:16
  222:7 227:7 228:3
  245:9
**gives** 251:17
**give-up** 249:18
**giving** 74:21 123:21
**glean** 13:13
**global** 121:4,13
  127:10 224:2
  232:4
**globally** 127:8
**GM** 52:17 245:24
**go** 14:12 22:6 33:19
  37:6 49:13,25 50:8
  55:8,14,20 74:22
  77:5 80:25 82:18
  82:19,21 83:20
  106:21 118:3
  119:20 134:6,13
  141:21 169:5
  188:3 190:20
  194:19 195:5,5,24
  200:17 207:10
  212:10 215:14
  217:24 220:6
  223:7,25 225:4,8
  234:5 237:21
  240:4 247:16
  248:11
**goal** 67:5 161:14
  180:13
**goes** 19:13 63:5,10
  82:24 165:13
  199:18 205:6
**going** 13:2 28:25
  29:10 30:18 44:17
  45:11 49:23 52:16
  52:18 53:16,21
  65:3,3 68:8,19
  69:2,15,19 70:11
  71:19 72:2 73:19

74:22 76:6,15
  77:21,23 80:18
  83:19 85:23 86:3
  97:13 100:10
  101:7 103:3,10,12
  110:22 124:3,5,22
  126:12 129:9
  132:12 137:20,23
  138:8 140:25
  141:9,19 145:7,14
  146:7,17,19 150:2
  150:14,15,19
  151:5,5,7,9,10
  152:11 155:16
  156:23 157:7,13
  159:12,20,24
  161:5 163:16,24
  164:2,16,25 165:2
  165:4,8 169:5
  170:8 172:10
  174:2 178:21
  181:3,6 182:20,23
  182:24 186:11
  187:3,10 188:11
  189:11 192:11
  193:13 195:7
  199:15 200:16
  202:17 203:4,8,14
  203:24 204:22
  205:24 209:25
  210:24 212:5,19
  213:14 220:9
  223:5 227:4,9
  228:7,13,16,24
  229:10 230:8,14
  232:16 233:15
  234:21 235:9
**Gonzales** 185:8,15
  185:21,25 186:12
  191:24 206:7,13
**good** 7:5 22:9 31:6
  37:24 41:9,15
  47:12 74:24 75:10
  75:10 78:22 80:21
  92:12,13 95:3
  104:20 119:13

141:16 154:25
  158:20 166:9
  167:10 168:12
  170:23,25 171:23
  172:2 177:3 182:3
  191:14,16 195:22
  201:23 203:21
  214:2,16 235:22
  242:7 250:8
**gotten** 163:14
  174:23 187:21
  241:6
**gouge** 149:21
**government** 200:13
  210:19,25
**governmental** 68:21
  196:4
**grabs** 178:11
**gradual** 131:22
**GRAHAM** 6:8
**Grandstaff** 18:15
  94:20 95:3 98:24
  134:24 135:3
  150:3 156:25
  158:5 165:20
**Grandstaff's** 226:25
**grant** 181:23 202:9
  227:10
**granted** 148:8
**granularity** 131:23
**grass** 179:17
**great** 88:24 111:10
  134:9 187:16
  213:15 230:6
  242:22
**Green** 1:18
**grounds** 40:25
**group** 12:21 136:25
  158:14 224:2,3,4
  246:8
**groups** 157:22
**grow** 190:12
**grown** 104:3
**grudgingly** 144:22
**GSM** 223:12 224:3
**guarantee** 15:3 51:3

225:18
**guarantees** 117:19
**guess** 22:2 51:13
  52:7,11 56:5 57:22
  86:10 162:17
  163:5 235:11
**guidance** 113:15
**guided** 183:16
**guilty** 32:16,18,23
  41:20 192:14
  197:20
**gun** 103:8 116:17
**guy** 179:15
**guys** 132:15 133:3
  151:13

## H

**half** 117:13 118:25
  119:24 120:8
  124:5,18,20
  125:24 126:3
  127:3 142:9
  224:16 233:3
  235:13 236:3,4
**hand** 32:14 126:24
  132:25 148:8
  164:22 206:11
  220:11,12
**handed** 94:13
**happen** 150:16,19
  165:2 200:12
  208:24 223:23
  227:4 251:8,11
**happened** 119:25
  144:16 236:10
**happening** 145:25
  161:6
**happens** 168:11
  169:10
**happy** 134:6 224:24
**harbor** 65:14 66:8
  67:5 70:20 77:3
  88:18
**hard** 50:20 100:12
  110:19 126:12,19
  134:8,23 139:18

139:23 150:10
159:8,15 236:17
249:17
**harder** 99:4 145:5
**harm** 183:14,25
203:2 227:7,11
**Harmon's** 187:2
**harms** 183:22
**health** 147:2
**healthy** 100:13
102:23
**hear** 33:25 113:25
129:11 139:19
164:7
**heard** 53:2 56:5
86:11 99:13
101:16 102:5
129:14 130:15
131:18 133:24
134:9 156:6 158:4
200:25 238:23
**hearing** 2:2,8,13,19
3:2 7:11,19 10:9
15:17 114:8
124:17 129:22
131:8 139:20
193:2 238:25
239:6 254:8
**hearings** 80:6
**hearsay** 16:9
**heart** 143:21 159:5
**hearts** 159:5
**held** 17:12 32:15
64:12 81:5 194:10
**help** 25:8 29:25
30:15 35:25 70:21
188:24,25
**helped** 37:7
**helping** 224:18
**Henry** 13:20 18:12
92:3
**hesitance** 66:10
**high** 244:23 246:21
**higher** 38:8 41:6,11
41:12 199:7,8,9
**highlighted** 246:12

**highlights** 229:21
**highly** 133:15
143:12 201:19
**hire** 103:4
**hired** 188:25
**hiring** 122:2
**historic** 10:22
173:13
**historical** 167:24
**historically** 233:4
**history** 164:5 166:19
**hit** 194:8 198:22
**hitting** 171:20
**hold** 230:8
**holding** 83:21
**holdover** 57:17
**holidays** 88:15
**home** 171:21
**HON** 1:23
**honestly** 147:5
**Honor** 7:5,16 8:14
8:22 9:17 10:7
12:9,16,25 14:11
14:16 15:18,24
16:13,25 17:9,9
18:20,24 19:7,15
20:10,21 21:15
24:8 28:13 29:7,13
29:18,20 30:21
35:9,22,24 47:8,10
47:13,14,20,24,25
54:17,25 55:22
56:3 60:21,24
61:23 62:5 63:12
63:15 71:2 76:6,8
76:11,12,23 77:13
78:14,15 79:17
80:9 84:6,8,12,14
86:9 89:2 91:21
92:9,12 94:15,18
98:23 99:21
100:23 104:13
111:25 112:7,10
112:13,20,24
113:13 114:5,18
115:19 116:11

120:25 122:8
124:22,25 125:12
126:6 128:20
129:2,5,23 130:2,6
130:15 131:2,14
132:2,7,17,19
133:12,18 134:20
134:20 135:10
136:17 140:6,19
141:20 145:20,22
149:10 150:17
151:16 152:3,19
152:25 153:2,5,18
154:11 155:2
160:14 162:22
165:5 166:10
175:16 179:14
182:4,8 184:10,14
184:25 185:7
187:9 188:13
189:19 190:14
191:11 192:21
193:16,25 194:2
194:14,24 195:14
197:13,18 199:21
201:3,14,22,24,25
203:17 204:11
207:8 208:4,17
209:8,18 211:3,15
215:24 216:3,7
218:2 221:3,24
222:20 225:21,22
226:17 227:20
228:5 230:5,16
231:9 233:22
234:25 236:16
237:5,19 253:2
**Honor's** 187:19
213:6,25 223:14
236:19 237:14
**hope** 115:16 155:25
162:12,14 208:16
221:7
**hopefully** 129:8
165:19 211:11
**hoping** 87:25

**horse** 181:20
**hostage** 230:9
**hostile** 248:25
**hour** 179:16
**hourly** 125:18
141:23 166:22
167:14 183:7
**hours** 215:19
**House** 1:17
**Houston** 187:4
**HR** 81:18 82:18
90:10 246:8
**huge** 202:20,21
224:10
**Huh-uh** 45:13
**human** 8:7,12,18
48:7 65:7 240:14
243:3 247:11
**Hundreds** 177:14
**hurting** 176:25

---

**I**

**IAM** 2:15
**IBEW** 2:14 15:13
**Ibida** 91:3,5
**icing** 128:16
**idea** 38:13 80:20
**ideas** 200:14
**identical** 47:15
**identified** 154:3
177:8 207:8
**identify** 119:23
**identities** 190:21
**ideological** 168:23
**ignore** 190:11
230:23 231:2
232:24
**Illinois** 4:6
**illuminate** 32:7
**imaginative** 104:24
**imagine** 25:6 33:23
59:9 201:9
**immediately** 70:11
240:21
**impact** 138:12,20
143:16 147:5

148:5,7 154:18,23
**impediment** 81:11
81:11,15,20 82:11
144:19 146:3
**imperative** 168:23
**implement** 2:10,16
2:23 3:4 7:13
111:20 212:8
229:7,8 234:9
241:13 247:23
**implementation**
86:23 227:15
240:8
**implemented** 246:9
**implications** 70:15
**implicit** 225:24
**imply** 102:6
**importance** 184:16
227:8
**important** 80:4
102:25 114:12,19
116:11 121:8
122:9 129:6,25
146:9 150:9 151:7
151:14,16,18
185:23 210:3
211:25 222:19,22
224:10 226:21
**importantly** 136:13
246:9
**impose** 102:2 142:19
247:6
**imposed** 210:20
249:13
**impossible** 144:25
146:5
**imprecise** 78:15
**impression** 205:19
**improper** 68:14
219:6
**improperly** 32:25
33:3
**improprieties** 44:17
**improvement**
101:11
**improving** 110:25

**inappropriate** 67:16
69:8 77:19 106:25
142:17 219:6
**inappropriately**
77:17
**incent** 121:21
**incentifize** 138:10
**incentify** 138:8
**incentive** 7:21 8:2,6
8:16,24 10:19,23
11:5,6,13,14,23
12:3 48:15 57:7,8
59:16 60:6,10
92:20,21 93:22
94:6 95:15,15
96:20 97:18 98:4
98:14 106:15
107:19 108:10
109:2,16 116:24
118:17 119:23
127:23 131:20
132:16 136:24
139:16 140:13
141:12 153:21,22
170:15 171:15
173:7 202:3,19
214:24 217:3
219:18 234:18
238:3,5,16 239:3
239:11 242:24
243:9,20 244:4,14
244:16 245:18
246:2 248:23
**incentives** 56:15
57:11
**incentivising** 131:24
140:21 151:21
**incentivize** 152:22
225:19
**incentivized** 171:3
**include** 67:12,24
176:16
**included** 116:23
**includes** 186:25
**including** 52:19
66:14 100:21

119:9 167:3 227:5
229:25
**income** 178:8
**increase** 54:11 86:18
99:8 116:13
121:25 128:18
143:8 146:24
164:17,18 177:10
**increases** 177:6
**increasing** 120:10
170:4,6
**incredibly** 135:2
**incrimination** 41:3
**incumbent** 154:17
**indemnification**
34:12,17
**indentured** 182:6
**independent** 18:3
62:7 64:4 87:20
127:15 186:13
195:10 207:6
217:21 231:21
241:19,21 242:5
**independently** 70:2
**indicate** 116:6 170:9
242:16
**indicated** 20:9 66:10
117:8,18 132:3
216:18 254:8
**indicates** 141:3
218:11 220:2
**indicted** 40:23 41:19
72:4
**indictment** 193:8
**indictments** 197:17
198:6
**indiscernible** 22:25
23:2,3,8,23 28:11
32:11,13 33:15
34:10 37:19 42:5
46:4 49:15,16 52:8
52:12 60:11,14
64:20 65:10 73:4,8
73:10,23 75:15
81:5 84:2,4 85:23
85:24 86:3,18,19

86:20 87:3,4 89:4
89:9,11 90:20
91:19 93:4 97:21
105:8 107:5
109:22 110:13,23
118:11 149:25
229:8 230:18
**individual** 54:5,5
59:3 73:12 131:25
191:16 246:7
**individuals** 14:14
37:11 61:18 67:12
67:19,24 141:18
**industry** 50:4,9
**inevitable** 250:14,22
**inevitably** 248:25
250:25
**inflammatory**
115:12
**inform** 71:18 209:6
**information** 17:13
40:24 72:5 79:14
79:23 90:13 96:2
172:19 189:15
210:25
**informed** 29:19
40:18,19 174:12
242:5
**inherent** 194:20
**initially** 54:7
**inner** 217:8
**input** 82:17
**insecurity** 158:16,17
**inside** 50:8
**insider** 23:19 242:2
**insistence** 169:19
**install** 142:17
**installed** 138:11
**instance** 41:13 199:6
**instructive** 166:6
185:20
**intend** 13:19 142:3
**intended** 136:11,16
250:6
**intent** 74:10
**intentionally** 139:18

**interest** 24:16 25:19
26:24 28:8 31:6
37:24 41:9,15 60:9
61:12 74:10 75:13
78:25 186:22
191:17 195:5
214:21 215:13
217:23
**interested** 77:10
154:19 181:17
**interesting** 152:25
**interests** 135:7
**internal** 24:12 33:7
82:5
**international** 2:20
5:11 213:7
**interpretation** 73:15
**interrupt** 192:19
210:9 211:5
223:17
**interview** 49:21
**interviews** 81:13
**introduce** 152:9
**introduced** 122:22
**introduction** 20:9
20:11
**introductory** 56:18
**inventory** 33:6
**investigate** 47:2
**investigation** 33:24
40:22 43:3,12,20
44:11,12,16 45:11
67:14,20 68:11,12
75:20 76:8 77:8
81:22 188:10,13
188:21 189:2
**investigations** 43:6
43:7 68:21 69:21
70:3 189:11
190:25 194:25
196:4 206:6
210:13 248:4
**investigative** 24:13
24:25 25:15 45:25
186:9,10
**invoke** 90:16

**invoking** 193:10
**involve** 67:18 121:6
166:21
**involved** 23:4,19
33:22 36:25 46:2
65:13,18 66:2
67:15 68:14 82:10
87:9,19 110:20
126:8 127:25
191:5 193:2
195:11 197:4
206:5 207:21
208:8 210:4
225:13 238:17
**involvement** 22:19
**involving** 162:20
220:23 247:11
**in-house** 186:9
**irrational** 167:13
**irrationally** 167:8
**irritant** 146:2
221:15
**issue** 43:23 101:17
103:6,9,14,16,17
122:9 129:23
132:13,14 133:11
133:23,25 134:9
134:15 137:5
141:10 145:16
149:19 154:4
158:23 159:5
161:2 165:12
179:6 185:23
193:14,21 202:14
204:17 211:7
225:20 226:21
227:8 228:23
235:13 237:4
**issues** 12:3 47:14
80:5 115:7 124:23
126:5 152:16
156:3 157:12
160:17,18,20
163:19 164:10
184:16 208:18
210:12,19 211:11

213:21 214:23
215:11 216:20,24
225:9 235:5
**issue's** 249:23
**is,is** 25:12
**items** 72:24
**it's** 168:8
**IUE** 16:15 18:12
20:6,8,11 55:6
60:24 62:15,21
91:25 92:2,8
135:11 141:23
**IUECWA** 13:15
**IUOE** 15:14
**i.e** 252:21

———————
                    **J**
———————

**J** 4:24
**Jack** 7:6
**January** 9:16 10:4
39:6,11,12 66:9
120:18,20,22
177:11,12 238:7
**Jeff** 63:15
**JEFFERY** 4:24
**jiggered** 132:8
**jiggled** 132:8
**job** 111:14 133:16
157:13 161:17
208:10 235:22
**jobs** 166:24 227:5
236:17
**John** 4:8 18:3 37:9
62:6
**join** 202:7
**joint** 15:18
**JR** 4:8
**judge** 1:23 27:16
49:4 66:10 71:20
104:8 164:8 166:5
185:7,15,21,25
186:12,25 189:4
191:24 201:12
206:7,13
**judgment** 115:3
116:19 119:7

122:13,15 123:10
124:25 126:23
127:14 128:8,22
134:13,19 136:2
141:17 154:2
211:16,17 214:18
220:14 222:2
230:20,24 231:2
232:8,22 237:16
242:6,12,17
243:12 247:5,9
248:15,16 249:7
**judgments** 134:23
**judicata** 198:14
**judicial** 214:7
**July** 7:19 85:3
129:15 238:23
**jumping** 103:8
116:17
**June** 7:21 8:3 9:16
85:2 140:10 238:7
**jurisdiction** 186:24
**jury** 26:14,25 41:20
**justice** 45:11 67:20
154:14
**justification** 145:7
252:16
**juxtaposition**
248:22

———————
                    **K**
———————

**Kayalyn** 4:16 7:10
**KECP** 7:20 10:12
12:2 16:7 22:21
23:6,10,14,16,25
24:10 26:10,22
35:4 37:8 38:16
39:3,6,18 43:10
44:10 45:22 46:7
65:3,15,19 66:21
67:7 69:16 70:8,12
72:12 75:5 76:24
77:16 83:4 87:11
88:6,9 94:22
111:20 115:20
184:20 190:19,24

**keep** 33:13 54:10
81:23 130:3 149:4
149:16
**Kennedy** 5:16 20:8
60:23,23,25 61:19
135:10,11 138:18
138:25 140:6
145:17,20 149:9
149:24 150:17
151:15 152:2,24
153:17,20,24
204:16
**Kennedy's** 204:13
**Kennedy,I** 20:10
**KEPC** 73:13
**key** 2:10,16,23 3:4
7:13 60:11 109:10
110:2,24 111:5
156:17 157:19
159:6 168:20
223:9,15
**kids** 101:6
**kilter** 241:7
**kind** 22:16 49:21
82:17 102:14
105:21 115:7
146:12,21 153:21
154:7 160:17
167:25 169:3
175:25 187:14
228:23
**kinds** 81:19 180:25
**Kirkpatrick** 6:8
182:4
**Klein** 6:2 166:11
**knew** 75:18
**know** 26:6,8 27:6
28:14 29:2 34:9
35:10,14 38:6,12
38:18 39:9,19,24
42:6 43:21,25
45:19 46:13 47:7
49:5 50:21 58:7,23
74:20 76:19,22
77:12 78:3 79:19
81:23 89:10 93:12

93:13 94:3,11
96:10,14,22,24
97:5 100:9 105:24
110:20,20 118:9
121:4 126:7,16
137:8,11,12
138:15 139:21
142:6 146:20
149:20 150:8,10
151:3,6 152:14
155:10 158:19,19
158:22 159:6,9,12
160:5 162:2,3,7
168:15 169:14,14
169:15 171:22
172:23 173:9
180:3 189:9,21
193:23 194:12,22
197:22 199:16
200:18 203:11,15
203:18,19 204:2
207:2 209:13
215:19 222:25
225:9,25 226:10
228:8,20,22 229:5
230:22 232:17
233:16,20 235:19
245:10
**knowing** 79:2 95:17
165:4
**knowledge** 27:8
36:24 37:5,12
42:14 45:6,15
46:14,16 47:5
52:23 61:17 96:2
191:6
**known** 43:22 141:8
191:9
**knows** 126:7 133:18
134:21 159:4

___

**L**

**labor** 61:3 94:6
102:14,15 109:11
111:15 120:24
122:3 126:8,11

134:16 143:17
144:17 145:4,17
146:14,16 148:11
149:12 150:23
151:18 152:6
154:8 155:9,14
160:11 164:10,12
166:15 168:3,7
169:12 209:25
211:7,23 212:11
217:5,10 220:23
221:21 223:17,17
224:9 229:22,25
**lack** 131:22,23
143:5,10 163:17
**lag** 49:6
**laid** 246:24
**large** 29:24 53:21
115:7 180:14
242:11,22
**largely** 47:15 116:5
**larger** 57:17 129:21
**largest** 166:17,18
**LATHAM** 5:2
**law** 2:14,20 7:7
21:16 45:8 46:3
63:16 236:21
**laws** 34:18 157:9
**lawyer** 193:24
210:11
**lawyers** 42:18
220:21
**lay** 139:21,25 141:5
159:18,19 173:4
196:18 239:8
244:17
**lay-ups** 173:18
**lead** 13:8 14:23 16:8
18:2 21:9 22:3
46:20 55:20 62:7
63:10,19 64:4 77:9
87:20 89:7,7
127:16 206:2
208:3 215:5
246:12 247:15,18
**leadership** 121:13

221:11,17 222:17
226:4,8
**leading** 117:11
**lean** 203:23
**learn** 27:23 80:4
**leave** 55:25 140:22
176:14 179:19
**leaving** 52:14 53:15
70:16 81:19
**led** 44:21 67:25
197:5 216:14
**ledger** 245:21
**left** 46:11 50:7 53:4
196:15
**legacy** 126:10
155:15
**legal** 157:8 225:13
**length** 134:10
213:15 242:4
**lenient** 77:17
**Leonhard** 6:19
15:10 20:20 21:7
63:7 201:23,24
203:6,16 204:8
**let's** 37:6,21 74:18
125:23 126:2
147:16 165:5
176:2 199:6 215:2
215:3
**level** 41:19 51:12
91:18 103:2 139:5
140:9 142:12
158:9 174:16
197:8 204:25
243:7 244:23
245:2 246:22
251:21
**Lexington** 6:11
**lid** 210:16
**lien** 83:12
**life** 155:20
**lifestyle** 101:9
**light** 17:5 149:16
155:5 172:9,21
180:15 181:7
221:18,19 227:6

238:13 239:12,24
240:7,25 242:7
246:10
lightening 130:13
lighting 221:16
222:16
likelihood 153:8
lily 128:16
limited 8:17 14:15
93:17,20,22
215:11 217:25
222:7 232:7
Linda 4:20
line 17:10 99:17
129:22
lines 89:21
list 72:11,17,18,19
72:23 73:6
listed 32:14 41:25
listen 88:2 249:24
listened 134:24
231:11
literally 236:9
litigation 13:9 24:5
26:15,17,25 63:20
161:6 163:25
164:3 186:4 187:3
188:16 193:3
199:24 200:24
214:14
little 29:15 40:8
57:13 64:8 66:5
70:21 95:5 103:13
110:15 130:23
141:5 182:12
184:5 202:12
live 142:12 233:7
lived 233:5
livelihood 103:24
lives 145:22 158:9
163:12
living 146:23
LLP 4:3,11,18 5:2
5:10,18 6:8 7:8
loaf 127:4
loan 33:4

loans 33:2
Local 2:14,21
lock 251:13
Lockhart 6:8 182:5
locking 252:12
logic 150:9
logical 250:21
logically 151:25
long 28:21 57:7
64:12 100:3 134:8
172:2 177:2
214:23 243:14
longer 70:17 160:23
175:8
long-term 8:5,15
11:6,14 12:3 56:25
92:21 95:15
116:23 117:4,6
127:23 161:12
166:13
look 29:12 30:22
31:3 46:5 51:7
53:24 57:2 58:3
74:19 89:12,13,15
89:16 96:17
146:12 150:14
152:13 161:22
162:5 164:8
165:23 166:8
169:15,16 176:2
176:19 192:11,13
196:5,7,12 208:15
228:20 234:21
235:2
looked 45:7,16 58:3
74:8 180:9 190:7
191:8 245:11
246:25
looking 23:6 46:25
56:13 136:2,10
146:7 158:6,14,16
172:8 179:15
207:22
looks 111:8
lose 103:23,23 127:5
147:21

losing 166:24
lost 119:21 120:5
122:6 138:13,23
lot 57:12 101:14
147:3 150:9
158:21 160:18
162:4,18 168:6
171:19 178:18
188:14 189:10
193:3 194:18
195:13 209:24
lots 163:20 176:21
192:16
loudly 19:25 20:2
low 176:13 178:21
178:23
Lowell 6:6 20:25
166:10
lower 40:15 192:12
lucrative 94:10

————————

M

M 6:19
Madison 5:13
magnitude 183:14
main 134:15
major 115:7 133:21
makers 106:10
making 65:8 85:24
100:18 124:2
130:17 132:7,14
133:17 134:18
149:17 181:9
212:13 241:21
247:14
man 149:19
manage 247:13
management 21:25
86:2 116:15
121:22 216:21
217:13 224:2,4
management's
59:12
manages 224:12
managing 223:3,5,6
223:12 224:18

manner 75:11 78:23
manufacturers 93:3
107:22
manufacturing 96:8
166:18
Marafioti 4:16 7:10
March 201:5
marched 9:9
marching 181:21
mark 14:8 18:17
19:20 104:14
155:20
markers 106:18
market 180:5
marketplace 240:20
market-based
143:24
material 147:9
matter 8:23 20:14
43:25 107:4
111:13 115:10,19
118:3 125:13,25
142:11,22 144:11
145:14 146:2
149:8 151:14
154:13 168:10
198:11,16,18
204:6 207:11,12
213:25 222:9
240:15,17 243:14
253:7,8 254:7
matters 9:10 13:15
13:24 23:2 48:10
77:9 206:8 207:22
211:8 213:14
223:15
MBA's 139:13
Meagher 4:3,11 7:8
mean 24:8 26:3
28:23 52:21 56:20
75:7 77:24 78:6,10
79:25 112:21
124:12 125:10
138:15 156:12
159:16,23 160:6
162:2,23 167:18

170:14 171:23
172:20,23 181:20
195:8 198:15,20
199:13,14,18
203:10,23 211:2
218:4 229:10
235:5,6,24 236:25
**meaningful** 243:17
244:2,11
**means** 27:17 121:18
155:10,21 164:24
168:5,7 170:22
177:20 230:3
**meant** 113:21,21
204:20
**measure** 242:11
**measured** 123:10
137:20
**measures** 25:9 27:10
30:9,24 38:24 39:2
39:7,20,24 45:22
66:11 77:18
185:16 187:23
191:11 194:15
195:17 205:9
207:6 243:8
246:15
**measuring** 122:11
245:3
**mechanics** 9:12
**mechanism** 206:24
**media** 212:21
**median** 57:13,25
117:11
**meet** 17:11 79:5
87:24 137:23
141:9 197:8
**meeting** 88:12
213:12 216:9
249:23 252:20
**meetings** 169:5
213:10
**member** 8:12 15:4
90:3,11,12,14
180:22
**members** 13:6 111:9

133:20 142:7
169:15 171:7
174:20 180:18
221:23 227:3
243:3
**membership** 94:10
98:2 111:13,16
156:16 157:3
**Memorandum** 2:13
2:19
**memos** 46:10
**mentioned** 27:7
90:20 173:8 179:2
**mere** 159:10 236:3
**merely** 91:10
**merits** 248:13
**message** 157:2
159:16
**met** 56:7 86:16
135:3 145:9 189:8
245:13 248:9
**metaphor** 244:19
**method** 27:22
**Meyer** 6:2 166:10
218:14,21
**Michigan** 189:4
213:11
**micro** 247:12
**microphone** 29:17
64:8
**middle** 164:4 165:24
224:14 244:10
**midst** 151:17 240:13
248:18
**mid-November**
163:6
**mid-target** 56:8
**mightily** 168:18
**Miller** 9:25 87:23
88:8 120:18
216:14
**million** 9:19,21
51:23 56:8 97:3,9
135:21 140:11
147:6,7 159:21
160:3,5 164:6

165:9 173:21
174:14,14 177:19
181:24 183:4
205:5,17,21
218:18 240:3,5
**mind** 16:25 19:18
27:17 40:5 88:23
130:3 221:17
**mindful** 184:15
**minds** 88:2
**mine** 236:19
**minimum** 76:21
187:10 249:3,20
**minor** 148:7
**minute** 27:12 113:14
114:2 123:5
124:11 182:12
**minutes** 216:8,11,12
231:14 237:22
249:22
**missed** 71:13
**misses** 167:11
**Mississippi** 21:22
184:13
**mix** 57:17
**mixed** 103:16
160:17,19,21
**modest** 129:20
**modification** 23:5
**modifications**
129:24
**modified** 132:10
245:17 254:9
**modifying** 128:3
**moment** 112:4,11
164:25 215:23
223:20
**Monday** 253:4
**money** 26:22 28:10
33:2 40:7 42:13,15
57:12 83:20 88:21
96:25 97:10
136:23 137:6,6,12
138:21 158:18
159:11 164:16
168:6 176:14,16

176:22 178:18
179:25 192:16
194:6,9 205:23
**monies** 97:16 98:2
147:8
**month** 85:6 89:6
90:23 93:22 96:19
97:2 121:15
124:18 132:6
135:20 175:12
200:24 204:18
205:8,11 216:16
233:25 243:10
**months** 9:2,11 84:21
120:6 123:22,23
128:2 132:11
136:15 138:5
142:24 151:13,17
152:3,23 163:4
165:7 200:22
201:17 202:14,18
204:8 215:3
219:25 220:4,7
227:19 233:6,8
244:5 246:17
**morale** 178:22
**mortgages** 101:6
**motion** 2:2,2,8,8,13
2:15,19,22 3:2,2
7:11,20 9:8 11:25
18:25 76:9,24
79:22 114:20,25
128:9,24 129:12
129:12,21 130:6
130:24 131:4,9
134:14 135:9,19
135:22 136:7,12
141:16,20 142:5
143:16 147:17
148:8,17 154:8,12
154:20 156:22
176:9 182:16
200:22 227:10
229:21 235:24
237:25 238:4,15
238:20 239:17

252:25
**motions** 115:6
129:25 147:17
181:12 200:23
201:4
**motion's** 138:15
**motive** 195:23
**Motors** 11:2 91:11
91:15 92:17 95:12
205:16 212:18
217:10 224:20
**mouth** 28:24
**move** 10:18 16:25
18:24 35:18 80:13
84:3 112:24 113:7
203:22
**moved** 19:12,15
**moving** 163:21
191:20
**MR.BECKWOR...**
55:10
**MURRAY** 5:10
**muster** 247:3
**mutual** 21:24 60:13
**mythical** 141:13

**N**

**N** 4:2 7:3
**name** 7:6 20:10
21:15 25:17 63:15
78:11
**named** 24:3,12,15
24:20 25:15 78:8
85:22 186:3 192:4
196:6
**names** 190:20
**National** 21:22
**natural** 69:13
**nature** 45:8 70:13
**necessarily** 67:18
163:18 175:5
230:11
**necessary** 117:8,9
213:4 227:13
228:13
**necessity** 154:11

**need** 28:15 53:11,18
83:12,17 100:24
113:19 142:16,19
153:6 175:22
182:18 193:11
216:22 226:7,9
232:4 242:6
**needed** 66:3 119:20
**needing** 81:7
**needs** 49:2 121:21
142:9 172:4 185:5
**negative** 140:11,12
140:20 151:19,24
159:22 160:4
171:18,21,22,23
174:14 204:19
205:5,17,21 245:4
245:7
**negotiable** 149:12
**negotiate** 119:19
131:11
**negotiated** 129:18
156:3,15 206:17
206:18 218:12
**negotiating** 52:16
107:11 119:5
188:7 242:24
250:8
**negotiation** 128:2
160:12 238:12
**negotiations** 61:16
85:15 107:9
143:17,20 144:14
145:18 146:14
149:15 150:23
151:18 154:8
183:19 205:13
215:22 227:17
240:12 245:23
249:4 252:11
**negotiators** 87:14
144:17,24
**Netherlands** 21:23
**never** 30:12 135:3,4
150:14,15,19
181:10 184:22

191:8 208:16
214:16
**nevertheless** 245:8
250:7
**new** 1:3,19,19 4:14
4:14 5:6,6,14,14
5:21,21 6:4,4,12
6:12,18,18 30:10
58:11 87:24 88:15
105:23 116:8
213:13
**Nice** 95:4 104:20
**NICHOLSON** 6:8
**Nick** 17:25 54:18
**nine** 8:25
**Nix** 4:18 21:16 63:17
**nobody's** 168:25
232:9
**non-cash** 57:21
241:9
**non-union** 248:20
249:14
**normal** 120:14
146:14 244:15
**normally** 234:3
251:21
**norms** 144:6
**Nos** 2:21
**nose-dived** 170:17
**notation** 217:16
**note** 141:20
**notebook** 29:20
**noted** 156:24 216:22
245:5 253:10
**notes** 109:24 182:7
**notice** 71:22,23
163:6 214:8
242:13
**notified** 40:20,21
72:3
**notifying** 213:6,7
**notion** 167:5
**notwithstanding**
136:22 137:14
244:24
**November** 182:14

**nudge** 71:12
**number** 7:15 12:22
12:25 13:16,21,23
14:2,4,7,9,22,24
15:5,8,11 20:7
27:19 32:14 49:13
54:22 55:4 62:3,11
92:5,19,19,20,21
94:24 104:16
117:2 142:7 143:6
166:20 205:18,21
**numbers** 139:2
176:15 190:21
**numerous** 167:20

**O**

**o** 1:21 7:3
**obadar** 91:3 218:18
**Obedah** 91:17
**object** 131:9 184:19
203:24
**objected** 13:7
187:15
**objecting** 184:19
**objection** 2:13,14,19
12:19,22,23 13:8
13:16,25 14:4,7,21
15:11,14,15 16:6,9
28:12 35:8 46:23
47:2 76:2,5 80:11
105:4 106:20
110:5 112:16
131:12 163:3
184:21 188:16
192:5 222:6
235:25 251:4
**objections** 12:18
13:3,4 14:10 16:5
17:5 112:16
185:13 209:23
245:17 247:14
248:11
**objective** 32:3
115:17 148:20
149:7 193:6,9
207:15

objectively 149:18
162:8 207:7,9
247:2
objectives 12:11
119:10 210:5
211:9
objector 13:14 14:5
14:20,22,25 15:6
objectors 13:11,12
13:18,24 17:17
18:8,13 55:6
114:16 123:4
148:9 202:8
231:17 248:21
obligations 8:8,11
8:18 126:10
155:15
observations 73:3,5
observe 73:9
observed 214:2
obtain 249:19
obtaining 81:12,21
82:12
obvious 99:3 233:14
obviously 9:6 15:9
19:13 52:14 99:12
105:6 110:23
111:10 132:17
133:7 138:12
139:6
occasion 87:8
occur 147:20 183:22
207:9
occurred 43:7 88:12
187:20
occurs 213:5
October 7:15 8:3
9:8 11:9 66:20
118:10,18 126:2
135:19
odd 120:25 139:17
236:15
OEM's 224:16
offer 16:22 17:21
19:19 106:7,14
107:18 108:2,8,25

offered 18:7 107:21
108:11 109:5
161:20 244:13
offering 19:9 101:3
officer 10:2
officers 9:22 120:15
official 5:3 15:6
71:17 94:5 105:17
109:8 242:18
officio 90:12
oh 102:17 149:5
198:24 212:3
214:5 218:9
Ohio 105:23
okay 12:15 14:18
15:23 16:23 17:4
19:2,23 20:22 21:5
24:9 25:4 26:9
27:8,9 30:13 32:2
32:20 34:16,20
36:9 38:13 40:4
42:10 43:10 44:4
45:20,24 47:9,18
51:21 52:9,13
54:15,24 55:12
58:2,15 59:13 60:2
60:19 63:13 66:5
66:19 67:4,9,23
68:5,17 69:18,25
70:4,19,19,24
74:13,18 75:17
79:16 80:15 81:10
82:11,20 83:14
84:7,13 85:8,21
87:5 91:22 101:13
104:5,10,12
108:21,23 109:14
111:24 112:2,19
113:6,11 129:4
153:19,23 161:9
163:2 166:3
175:19 181:25
184:8 199:2
201:20 204:7
209:19 214:6
237:17 253:5

Oklahoma 21:20
184:12
ombudsmen 82:17
once 86:14 101:19
165:13 203:19
214:6
ongoing 43:12 44:11
68:21 188:22
194:25 217:9
245:23
open 82:2
opened 238:12
operate 121:3
operated 120:7
operating 2:20 12:5
152:7 202:25
operation 121:9
166:25
operations 121:6
127:10
Opie 16:17 18:3
37:9 62:6 63:25
72:10 87:7 88:6
89:15 90:2 127:15
191:20 208:23
215:5 217:11
Opie's 62:19 209:16
opinion 98:12 99:20
127:13 185:17
218:3 220:12,14
opportunities 49:24
50:4 51:3 60:9,12
117:20,21,24
118:17 124:6
125:24 126:3
136:23 137:8
144:9 177:3
219:12,15
opportunity 11:5,6
11:24 16:16 49:6
55:8,14,19 57:7
60:16 63:5,10
137:7 151:2
234:18 242:14
244:20,21 251:13
252:13,23

oppose 143:16
opposed 41:25 51:23
75:12 78:25
100:17 123:20
128:15 202:5
opposite 220:16
opposition 94:21
option 57:22
options 153:15
oral 113:22 114:8
179:3 245:5
order 2:3,9,15,22
3:3 7:11 8:8,9,19
13:11,24 17:10,20
18:9 78:16 91:24
94:19 127:11
157:5 165:6
194:16 206:14,16
206:17 207:3
209:10,10 212:23
213:2 224:3 237:2
253:3
ordinary 10:12
116:6 119:2 121:3
135:16,23 136:3
136:11 225:12,15
239:20,22
organization 48:24
48:25 49:10 90:10
224:12
organizations 151:4
organized 122:3
Orien 230:18
original 66:20 78:7
135:17 136:7
originally 7:14
131:21 136:11
238:15 242:23
Orion 115:2 122:12
237:15
outcome 27:2
outside 46:2 49:24
50:9 62:7 118:21
183:11
outsider 60:3
outweigh 151:21

202:14
**overall** 100:20
 180:10 244:25
**overcome** 229:5
**overcomes** 202:20
**overlaying** 163:19
**overpaid** 179:5
**overriding** 80:5
**overrule** 237:15
**overseeing** 208:13
**oversight** 222:5
**overstatement**
 179:14
**overwhelming** 218:6
**over-dwelling**
 142:22
**O'Neil** 120:20
**O'Rian** 221:25

**P**
**p** 2:4 4:2,2 7:3
 238:10
**pack** 117:12,13,14
**package** 130:10
**page** 30:16,23 40:15
 74:18 89:17 97:24
 140:7 143:19
 216:5,11
**paid** 42:5 50:14,19
 51:22 66:16,16
 67:6,7 69:15 74:11
 83:16 84:24 86:14
 88:21 89:3 95:20
 98:3,14 106:8
 108:3,4 115:24
 117:5 124:9
 136:23 137:4,12
 137:16,16 144:5
 147:8 158:18
 170:15,19 171:5,5
 171:17 176:3,17
 176:21 179:12
 207:25 219:21
 246:17
**pain** 162:10,11
**paper** 35:13 126:15

**papers** 116:7 135:13
 163:5,5 176:10
 190:8 239:8
**paragraph** 30:22
 40:16 71:15,23
 89:18,22,23
 136:20 140:7
 204:15,23,24
 213:2 216:4
**paragraphs** 73:25
 138:2 185:13
 229:20
**paren** 140:12,15
**part** 8:7,14 9:2
 10:15,22 11:16
 33:24 36:10 44:21
 76:9 93:18 95:13
 116:20 120:2
 121:2 123:20,21
 130:11 151:9
 182:19 183:8
 203:11 215:15
 221:21 227:3,21
 245:3
**partial** 50:16 86:13
 137:4 170:13
**participant** 23:10,17
 24:2 40:16,18,21
 65:3 70:9 71:25
 72:12 186:20
**participants** 16:7
 43:19 154:22
 190:19,24
**participate** 15:10,16
 24:3 35:7 36:7,17
 38:16 88:5,8 186:2
 186:13 189:17
**participated** 23:19
 67:13,25
**participating** 24:11
**participation** 10:6
 24:19 25:2,14
 26:11,21 75:6
 185:22 186:7,18
**particular** 134:24
 148:11,17 199:18

239:12 240:11,20
 240:24 246:3
 248:9 251:15,24
**particularized**
 245:25
**particularly** 114:25
 115:2 129:25
 155:5 161:19
 173:20 186:16
 212:21 240:16
 241:8 242:13
 247:10 251:9
**parties** 72:21 82:9
 129:16 161:8
 202:23 228:2
 239:7
**partners** 7:9 81:3
**parts** 93:2,18 95:21
 96:8 106:10,18
 107:22
**party** 47:11 84:9
 190:25 195:10
 207:17 254:12
**pass** 55:11,21 56:2
 62:21 63:2 84:5
 247:3
**passed** 55:6,24
**passes** 247:5
**patently** 233:14
**path** 165:19 181:21
**Patterson** 4:18
 21:17 63:17
**pause** 61:14
**pay** 8:21 34:25
 51:16 54:11,14
 56:16 57:6,10,11
 57:13,16,21 74:11
 88:24,25 97:9
 100:21 117:2
 118:4,5,12 120:17
 125:4 150:8 164:5
 164:15 167:3
 170:4,6,15,21
 176:11,12 182:17
 207:13 219:15,16
 225:18 234:24

**payable** 60:17
**paychecks** 181:4
**paying** 246:16
**payment** 8:10,11
 27:22 67:11 72:13
 83:8 111:7 137:4
**payments** 65:19
 83:4 84:20 132:16
 136:24 142:21
 173:15 177:14,15
 180:25
**payout** 170:13
**payouts** 170:10,11
**payroll** 69:11,15
 70:17 75:8,15 81:2
**pay-outs** 90:23
**PBGC** 47:11,13,15
 55:23 133:21
**PC** 6:2
**peace** 134:16
**Pearl** 218:13,21
**peer** 157:22 158:13
**peers** 57:14 60:18
**pending** 24:5 26:16
 27:2 62:23 129:13
 143:17 185:9
 186:4
**pension** 15:2 21:23
 186:5
**pensions** 100:6
**people** 38:15 49:17
 50:7 52:13 53:3,21
 66:15,16 78:11
 79:3,8,12 81:19
 88:25 89:3 102:20
 113:25 114:9
 121:10,13 125:15
 127:14 128:12,18
 132:18 133:2
 138:8 139:13,13
 139:23 140:25
 142:12 145:12,23
 146:7 150:7 153:6
 154:19 158:21
 162:2,14,16
 165:17,18 168:14

171:17 174:12
176:13 189:16,25
190:5 192:4
194:20 196:6,19
197:2 202:11
203:14 211:25
222:10 223:21
233:11,15 235:4,8
235:20 236:8
**people's** 56:22
**percent** 51:11,11,19
52:10 56:11,17
120:17,21 124:9
137:17 138:9,11
138:20,24 147:22
147:23 233:16
234:24 252:7
**percentage** 51:24
59:18,20
**percentages** 59:24
**percentile** 125:6
244:10
**perception** 138:7
164:20 202:22
203:9 209:14,18
251:12
**perform** 205:24
244:23 251:20
**performance** 8:10
8:17 9:18 60:12,13
91:13,16 125:4
131:24 137:17,24
138:4 159:20
170:16,22,22
204:18 240:7
252:6,24
**performances**
204:21
**performed** 152:23
**performing** 170:19
**period** 8:2,25 9:11
9:15 50:12 64:17
66:17 90:24 132:6
132:11 137:19
138:9 139:3
140:10,20 141:6

204:19 205:9
238:6 240:21
243:9,10,19
**periodically** 238:22
**periods** 117:17
**period's** 9:6
**perks** 49:11,22
**permission** 21:11
114:14 182:17
**person** 24:3,15
25:18 31:5,12 36:5
40:20,22,25 46:5
69:10 106:2
217:14
**personally** 87:9
**personnel** 48:10
65:8
**person's** 37:15 72:2
**perspective** 10:7,14
10:17 173:17
182:13
**persuade** 99:4
**persuaded** 245:11
**pertain** 239:13
**pertains** 239:2
**Peterson** 6:6 20:25
20:25 105:4 166:9
166:10 171:12,16
171:25 172:13,22
172:25 173:10,13
174:5,9,25 175:4
175:15,20 177:25
178:4 179:23
182:2
**petition** 8:20
**petitioned** 12:21
117:17 120:9
182:19 219:13
**phrase** 91:5 101:15
168:25
**phrasing** 31:21
**pick** 81:4 179:9
251:22
**picked** 29:16 137:9
**picketing** 183:12
**picture** 202:12

**pictures** 230:18
237:15
**pie** 10:20 11:22
120:13 211:18
215:16
**piece** 11:22,23 35:12
49:5 126:14
206:21 209:20
211:18
**pieces** 11:3,15 117:9
**pissed** 159:10
**place** 25:10 30:11
34:12 38:24 39:2
39:20 40:9 51:24
57:23 60:6 62:6
118:6,15 125:5
141:17 144:20
191:13,15 206:9
210:6 234:4
**placement** 65:19
**plaintiffs** 13:8 14:23
16:8 21:9 22:3
46:20 55:20 63:10
63:19 77:10 208:3
247:15,18
**plaintiff's** 206:2
246:13
**plan** 2:17 8:2,6,24
18:18 48:15 50:23
56:25 60:6 61:5,7
61:11,13,18 66:21
85:11,14,18 86:7
95:13 109:10,16
111:6 119:24
120:3,4,5 121:15
121:19,20 131:20
132:3 137:10,13
137:15 140:14
142:15,20 148:11
150:21,25 153:11
154:9 157:19
160:2,4 175:3,5,7
177:20,21,24
178:3,5 180:11
185:4 186:2
193:22 195:20

202:24 203:13,14
203:20 204:22
205:3,10,12,15,22
216:16,17 217:3
219:18 227:22,25
238:3,5,11,14,16
239:3,10,11,11
240:2 242:24
243:10 244:4
245:18 247:3,21
248:23 249:5,10
251:15,23,25
252:7,14
**planning** 19:17
53:20 142:7
247:13
**plans** 7:21 15:16
57:22 59:16 117:4
127:23 141:12
144:20 178:13,14
178:15,16
**plants** 52:20 103:20
103:24 166:24
**played** 246:6
**playing** 150:5
**pleaded** 38:18
**pleadings** 99:14
114:10 179:2
**pleas** 197:21
**pleasant** 126:25
**please** 19:25 21:14
63:14 64:11 130:2
197:15
**pleases** 22:5 63:20
**plenty** 169:20
**plus** 52:4 103:23
160:6 225:12
**PM** 1:15 253:10
**Pnina** 3:22 254:3,20
**pocket** 103:22
**pockets** 168:6
**point** 19:12,19 79:2
80:8 81:6 90:20
99:4,15,21 100:8,9
100:25 103:13
129:7 132:7

133:24 136:10
137:21 140:4
142:23 146:4
150:13,13 152:3
152:15,25 158:20
159:6,17 163:22
167:12 174:23
175:6 178:11
180:8,24 182:16
184:3 189:10
191:14 212:12,20
219:14 222:16
223:12 226:25
231:18 235:11
236:7 237:5,7
238:11 239:7
245:14 248:11
250:20
**pointed** 175:22
238:24
**points** 78:10 104:25
135:12 228:5
242:19 245:16
**poisoning** 163:16
**POJ** 81:25
**policies** 33:7
**pool** 9:19
**poorly** 173:20
**portion** 10:12 57:17
119:14 122:6
129:11,21 139:9
144:7,8 241:9
245:25
**portions** 20:12
182:18 238:20
241:12
**posit** 148:18
**position** 64:12 69:9
106:7,13 107:18
107:25 119:12
144:24 197:7
219:10 221:22
232:10 236:25
**positioned** 174:17
**positions** 232:18
**positive** 138:4

140:17 141:4
159:22 204:17
205:8,11
**possible** 134:4
229:13
**possibly** 49:9,12
111:14
**post** 198:5,5
**postpone** 193:13
**post-petition** 243:19
**potential** 49:15
50:24 68:13
111:11 138:12
183:22 227:5
239:24
**potentially** 166:23
238:18 252:19
**practical** 139:8
142:21 144:11
160:22,24 161:3
165:11 198:11,15
198:18 249:21
**practically** 156:21
**practice** 81:15 96:21
208:24
**practices** 93:24
**pragmatic** 222:22
**pre** 8:19 12:20 76:8
117:16 120:8
182:18 219:12
**preceded** 66:25
**precedent** 187:11
**precedential** 238:10
**preceding** 240:21
**precise** 174:13
**precisely** 190:15
**precludes** 24:11
25:14 26:11,21
82:6
**predecessors** 172:5
**predicate** 176:24
**predictions** 212:13
**preferably** 57:8
**prejudge** 145:16
**prejudice** 129:22
222:11

**prejudiced** 114:23
114:24
**preliminary** 129:7
175:10
**premature** 195:18
202:9
**premise** 36:4 38:15
102:19
**premising** 85:15
**prepare** 253:3
**prepared** 46:10
108:8,25 109:25
110:9 235:15
236:13 237:14
**preponderance**
229:6
**present** 13:18,19
14:16 15:2,21
43:10,13 64:15
113:10 132:19
**presentation** 115:14
**presented** 166:16
176:20 179:25
251:25 252:15
**presently** 26:15
129:15
**president** 120:20
**pressure** 120:4
**presumably** 18:8
38:9
**pretty** 175:13 198:3
**prevail** 11:25 147:17
**preventative** 42:11
**prevents** 223:20
**previously** 8:4 25:15
**pre-bankruptcy**
241:7
**pre-petition** 8:5,15
117:23 118:6
**pre-petitioned**
124:7 127:3
**primary** 210:5
211:9
**principal** 17:22
18:10
**prior** 65:8 136:17

143:7 241:12
**privilege** 44:7
**pro** 231:20,24
**probably** 54:6 61:9
130:22 150:8
153:2 172:17
200:25 227:18
**probe** 107:10
**probed** 247:16
**problem** 101:21
104:22 125:17,23
126:25 130:16
132:2 161:3,24
164:22 165:11
171:6,8,14 196:16
200:8 202:21,22
203:9 208:22
223:19 233:2,4
**problems** 111:11
125:22 127:17
131:20 175:22
248:22
**procedure** 27:18
31:4,21 33:16 34:8
129:9 136:5,14
192:13
**procedures** 2:5
27:13 33:7 131:16
182:15 190:5
195:6 196:11
199:9 208:2
**proceed** 7:25 19:4,4
63:21 71:21
**proceeding** 17:18
45:18 47:17 72:4
136:5 143:19
230:19 232:20
**proceedings** 34:13
42:18 196:3
200:17 254:6
**process** 22:20 27:23
32:15 33:15,17,20
33:22 34:22 35:19
36:14 37:2 42:19
46:2 53:8 66:2,8
81:6 125:20

126:15 127:12
155:23 156:7,8,10
163:25 164:3
174:18 184:6,7
192:25 193:11,21
194:4,4 197:4
208:7 210:2 237:9
237:13
**processes** 209:24
**produced** 170:9
**product** 241:19
**profit** 100:7,11
116:16 164:18,19
**progra** 136:24
**program** 2:11,24 3:5
7:14 8:7,14,16,17
8:20,21 9:5,13,15
9:17 10:6,13,19
11:13,14,17 12:6,7
26:13 37:8,12 39:6
43:17 49:3 66:11
70:12 77:16 81:7
91:13 92:18 93:23
94:22 95:21 96:20
106:16 107:8,20
108:10 109:3
110:3 111:20
116:22 117:7
119:14,23 121:3,5
122:18,24 123:2
130:19,19 131:13
132:19 135:15
136:16 138:10
139:16 151:20
152:18 153:7,21
153:22 158:3
161:20 167:25
168:21 171:15
175:8 177:13
185:22 186:20
187:6,12 188:8
189:18 197:13
200:22 206:20
210:7 211:14
214:11 215:14
216:18 217:24

218:8,9 219:8,22
220:18 221:24
222:6 225:13,17
226:6 227:12
229:14,15 231:23
232:7 233:25
234:7,10,13,16
240:9 241:8,10,17
247:17 248:13
**programs** 11:12
115:21 116:2
117:5,6 118:12,15
118:16 128:4
149:11 152:10
167:21 173:7,12
176:2 202:3
206:10 214:24
219:11 234:4
**progress** 12:12
119:18 122:24
**prohibits** 24:19
**projections** 238:14
**promulgation** 23:5
**proof** 246:22
**proper** 133:6 136:4
179:11 202:25
203:24
**properly** 36:17
132:22 242:20
**property** 10:10
**prophylactic** 25:5,9
27:10 29:6 30:3,9
30:17,24 38:23,25
39:7,20,24 45:22
65:14 77:2,18
88:18 89:8,14
90:17 132:14
185:16 187:22
191:11 194:14
195:17 206:3,15
**proposal** 86:24
124:18 242:15
**proposals** 181:13
**propose** 106:20
**proposed** 23:15
24:10 27:11 31:17

39:3,17 61:6
131:21 181:14
184:21 185:4
186:2 187:6
195:20 206:17
216:16 242:3,23
244:14 248:24
**proposition** 135:18
**propriety** 202:4
**pros** 217:6
**prospect** 167:4
**protect** 246:15
**protecting** 132:23
**protections** 25:5
**protective** 247:20
**provide** 60:9 121:12
**provides** 161:17
**providing** 11:10,12
60:15 172:19
208:23
**proving** 148:16
**provision** 23:24 24:9
24:19 25:10 26:10
26:20 27:25 28:4
41:14 42:12,16
67:5 82:21 89:18
199:22 200:4
206:12 251:22
**provisions** 27:20
40:10 41:8 42:3
58:22 65:15 66:9
70:20 73:17 74:14
77:3 88:18 89:8
90:17,18 129:13
187:8 191:13
200:11 206:3,15
247:20
**provision's** 200:7
**proximity** 141:15
213:24
**public** 12:8 21:20
93:9 108:12 109:5
184:13 202:20,22
203:9
**publicly** 52:22 108:5
212:16

**purchased** 233:9
**purple** 144:4
**purpose** 128:11
184:19
**purposes** 91:13
128:10 140:13
169:2
**pursue** 181:18
**push** 250:22,24
**put** 10:7,13 12:2
30:10 56:10 60:6
65:25 77:3 80:22
80:24 81:24 95:24
98:9 114:10 117:9
119:17 121:14
127:23 128:16
132:3,21 138:21
144:20 150:22
152:18 155:14
159:13 162:6
165:6 182:12
194:18 195:23
210:6 214:11,22
215:2,3 219:4
222:8 225:10
232:7 234:4
**puts** 243:22
**putting** 28:24
162:16 193:3
216:19
**puzzle** 11:16
**PWC** 46:3 188:24

---

**Q**

---

**quarter** 9:5 85:4
88:12 234:10
243:23
**question** 25:7 31:3
35:13 60:21 72:15
78:6,7 80:18,19
86:5,12 92:15,22
92:23 93:3,7,10,15
93:15,19,21,25
95:11,16,18,22
96:5,9,13,19 97:21
97:25 98:8,11

99:18 106:21
108:14,16 109:25
160:15,20,23
175:17 193:17
211:19 221:16
232:21 234:8
237:13
**questionable** 100:4
242:18
**questioning** 136:19
**questions** 21:3,8,12
22:4 23:14 40:25
43:3 47:23 48:4
55:17 56:6 62:16
62:24 63:8 72:6
80:14 84:11,18
87:8 91:20 92:15
94:14,16 95:5
97:23 98:18,22
104:6,8 107:3,12
134:25 150:3
185:17 190:3
**quick** 44:2 70:25
74:19
**quickly** 35:19
**quit** 46:12 49:18
**quite** 72:14 97:20
169:18 176:8
188:2 189:20
190:23 231:12
243:14
**quo** 142:20
**quote** 140:11,18
143:21,25 168:3,4
**quoted** 198:13
**quoting** 198:2

_____
**R**
**r** 1:21 2:4 4:2 7:3
19:20
**raise** 171:21
**raised** 47:15 112:16
135:24 188:15,20
190:18 204:17
216:21 249:23
**range** 93:24 96:21

148:23
**ranges** 218:17
**rank** 127:6 250:12
**ranks** 177:7,7
**rates** 125:19 141:24
**ratification** 183:20
**ratified** 169:6
183:13
**ratify** 183:24 211:15
211:16
**rationalize** 52:19
**reach** 137:15 141:6
152:3 156:9,15
197:8
**reached** 83:25
196:21 203:10
234:11
**reaching** 144:19
146:4 215:17
**react** 168:14
**reacting** 167:8
**reaction** 245:15
249:2
**reactions** 167:14
**read** 30:19 46:18,22
48:12 51:9 74:23
79:21 89:23 99:14
101:14 107:15
140:8 185:16
**reads** 70:25
**ready** 80:25 203:22
**real** 44:2 68:25
70:24 74:19
126:24 127:17
149:22,23 158:8
161:23 169:10,11
172:21 224:8
231:6 235:5
**reality** 139:2 141:15
160:22,24 161:11
166:13 169:4
209:10 213:9
222:21 235:6
**really** 96:10 116:7
139:23 153:16
156:17 159:10

160:17 163:12,13
164:20 166:8
167:12 173:5
175:12 181:8
202:14 226:13
228:6 230:7
235:10,19 237:7
238:5 247:12
250:2,21
**realm** 157:25
**real-time** 161:11
**reason** 40:4 41:23
42:8,11,11 48:14
49:18 77:19 81:3
87:22 148:25
149:2 152:21
180:15 187:18
191:25 232:19
250:21
**reasonable** 116:19
122:22 132:17
134:12 208:4
218:18 226:6
227:12,16,25
228:12,15 229:15
232:10,16,17,22
243:11 248:14
250:20
**reasonableness**
128:21 232:13
**reasonably** 75:11
78:24 235:14,16
248:6
**reasons** 48:21 49:14
81:19 111:19,23
152:12 202:10
**rebut** 167:16
**recalibrate** 220:8
**recall** 70:5 82:8
87:18,22 88:11
98:7 182:13
226:12
**receive** 50:24 87:3
250:23,24
**received** 90:13
173:15 178:19

179:24 249:19
**recess** 113:14 114:6
237:23
**recheck** 109:24
**recipe** 127:16
**recited** 28:15
**recognize** 114:20
126:21 128:8
167:9 220:20,25
221:3 223:16
249:7
**recognized** 223:14
241:3
**recognizes** 202:2
220:4
**recollection** 66:7,24
**recommend** 73:10
110:10
**recommendation**
70:16
**recommendations**
65:7
**record** 18:21,24
19:8 28:14 61:24
62:3 113:8 114:21
115:15 116:25
122:16 123:6
125:3 128:23
140:2 144:3 162:6
167:16 171:11,14
176:5 178:24
179:22 185:2
188:5 191:7
204:13 208:9,16
212:20 215:4
218:4,5,10,11
219:3,4,9 220:11
221:7,8,12,25
222:15 226:6
230:21 232:20
236:12 237:12
244:3 246:25
251:3
**recorded** 33:3 254:6
**recording** 33:2,5
**records** 68:2 190:22

**recoup** 83:4,20
**red** 141:17
**redirect** 61:22
**reduce** 124:19 153:8
  222:20
**reduced** 10:3 251:19
**reduction** 234:24
  252:17
**reductions** 99:6
  212:9
**redundancy** 235:22
**refer** 29:4 35:12
  84:25 136:22
  225:13
**reference** 91:10
  163:7 185:15
  216:10 226:12
  239:4
**referred** 22:2 61:24
  61:25 91:3 238:2
**referring** 145:18
**Refesa** 184:14
**Refesem** 21:24
**reflect** 244:20
**reflecting** 159:17
**reflects** 206:21
**refused** 182:23
  185:21
**regard** 106:8,15
  107:19 108:2,9
  109:2 111:5 190:4
  242:8 243:24
**regarding** 10:9
  43:12 44:16,18,18
  69:7 70:8 72:12
  185:18 189:24
  216:13,14,15
  217:3,19 248:5
**regardless** 115:11
**regards** 185:24
**regulated** 178:15
**rehabilitating**
  180:11
**Reichard** 92:3
**Reichard's** 99:2
**rejection** 181:18

**relate** 239:15
**related** 34:13 205:15
  245:22 250:4
  254:12
**relates** 10:11 12:20
**relating** 7:20,22,23
  119:10
**relation** 44:11
**relations** 61:3
  146:17 148:11
  202:20
**relationship** 68:3
  217:8
**relationships** 170:25
  224:25
**relatively** 58:11
  129:20 148:7
  209:21
**releasing** 210:24
**relevant** 79:14
  186:16
**reliance** 76:20
**relief** 202:8,9 222:7
**rely** 16:18 44:24
  69:20,22 76:15
  187:10 198:22
  242:11
**relying** 68:10 79:6
  79:10
**remain** 45:3
**remaining** 18:22
**remains** 100:3
**remarks** 204:14
**remember** 30:12
  35:15 37:24 88:14
  107:16
**remiss** 206:14
**remove** 205:12
**rendering** 146:4
**reorganizable**
  223:10 225:6
**reorganization**
  127:2,18 150:25
  154:9 155:13
  161:16 169:20
  174:18 222:12

**reorganize** 148:14
**repeat** 35:13 114:9
**rephrase** 31:2 37:4
  105:10
**replace** 53:12,18
  54:6,13
**replaced** 53:5,7,8,22
**replacing** 54:3
**reply** 135:13 143:18
  201:6
**report** 12:13 65:22
  82:15,19 217:18
  222:3
**reported** 52:22
  212:16
**reporting** 196:23
  221:22 252:22
**reports** 82:13
  189:24
**represent** 20:11
  21:18 123:14
**representative** 95:6
  105:2,5 106:22
  107:11 133:15
  242:20
**representativeness**
  133:19
**represented** 34:8,23
  105:6 189:7 212:4
**representing** 111:2
  143:15
**represents** 115:16
  118:24 120:13
  153:25
**request** 94:3,5 109:9
  111:5,19 131:6
  162:15 164:5,15
  204:5 250:3
**requested** 87:23
**required** 28:10
  42:23 183:6
  186:18
**requirement** 25:13
**requirements** 39:18
  89:17 187:13
**requires** 23:16

26:12,21 31:4
  73:25 126:16
**requiring** 73:18
**res** 198:13
**reserve** 16:20 80:13
  114:15 128:25
**reserved** 84:9
**reserving** 21:4
**resolution** 61:15
  156:9 168:3
**resolve** 211:11
  216:24
**resolved** 152:16
**resolving** 227:8
**resources** 48:7 65:8
  200:14 240:15
  247:11
**resources/executive**
  243:4
**respect** 15:20 16:21
  19:20 55:3 62:19
  87:11 90:23
  112:14,17 122:3
  130:16 132:5
  139:7 144:6
  183:18 187:17
  189:12 190:9,16
  191:10 192:3
  194:14 196:2
  211:7 239:14
  243:23 246:6
  247:21 248:9
  249:12 251:16
**respectful** 184:15
**respects** 211:22
**respond** 201:8
  209:22
**responded** 201:9
**respondents** 219:14
**responding** 125:8
**response** 73:20 74:3
  185:11,12 225:21
  250:16
**responses** 61:25
**responsibilities**
  237:3

**responsibility** 221:4
  222:18
**responsible** 127:9
  222:24
**rest** 82:3 89:2
  216:18 222:8
**Restated** 2:6
**restatement** 44:22
  188:20 197:6
**restating** 68:2
**restoration** 218:14
  215:15 230:8
**restore** 116:19
  119:15,22 120:11
  122:5 123:19
  211:18
**restored** 123:21
**restrictions** 248:2
**restructure** 166:19
**restructuring** 86:23
  91:14 100:20
  229:19 245:22
**restructurings**
  169:13
**result** 36:10 143:10
  156:4
**resulted** 177:14
**results** 43:5 44:10
  46:6 76:21 81:21
  85:3
**retaining** 60:4
**retention** 8:20
**rethink** 101:8
**retirement** 21:19,21
  167:4 184:12,13
**retroactively** 120:5
  203:12
**revealing** 79:23
**review** 38:18 172:18
  172:21 190:17
  196:8 208:9,13
  239:10 242:6
  246:5
**reviewed** 98:25
  121:16,17 172:16
  216:20 218:19

**reviewing** 12:11
  242:23
**revised** 253:3
**revisions** 241:14
**revisit** 217:12
**revisiting** 202:13
**reward** 147:25,25
  252:20
**rewarded** 174:3
  197:12
**rewards** 57:12
**re-cross** 16:20 19:16
  21:4
**re-direct** 16:21
  19:17 48:2 84:15
  87:8
**rhetoric** 160:10
**right** 16:20 20:16
  21:4 35:21 38:11
  39:10,15 40:17
  41:2 48:3 52:21
  56:4,6 59:4,4 60:2
  66:15 71:23 72:7
  75:3 84:20 87:5
  89:25 94:4 95:7
  96:13 97:4,12
  105:3,14 111:11
  112:8 113:2,6,9
  120:23 124:13
  125:24 133:9
  147:16 148:9
  158:7,13,14 164:3
  164:13 165:24
  169:24 187:24
  194:23 198:9
  201:15 204:10
  211:4 213:20
  219:22 220:24
  224:6 225:16
  229:2,7,9,23
  233:17 234:2
  237:8,20 249:19
  251:18
**Riker** 13:20 18:12
  92:8,14 94:17
  95:11

**rise** 41:18
**rises** 101:19
**risk** 147:12 178:14
  252:18
**risk/reward** 148:15
**Roach** 4:18 63:17
**road** 84:22 252:9
**ROBERT** 1:23 5:8
**Roche** 21:17
**rod** 130:13
**role** 65:17 246:5
  247:12
**roll** 26:3
**rolling** 35:20
**room** 14:17 74:21
  120:19 156:2
  212:22 220:22
  236:18
**Rosen** 189:4
**Rosenberg** 5:8 56:2
  129:5 182:11
  213:23 218:12
  238:24 242:19
**Rosenberg's** 149:2
**roughly** 51:23 56:8
  56:10 118:25
  240:3,4 246:18
**rule** 25:22 76:13
  110:16 136:6
  192:24 206:8
**ruled** 76:8 206:8
**rules** 22:24 25:24
**ruling** 108:15 116:9
  239:2 254:9
**rulings** 79:20
**run** 13:3 25:4
  132:15 171:21
  201:17
**running** 176:11
**rush** 178:20 195:23
**rushed** 195:22

————————————
**S**
————————————

**S** 4:2 7:3
**sacrifice** 100:25
  101:15 111:8,10

  168:9
**sacrifices** 111:17
  155:18,21 166:22
  169:22
**sacrificing** 134:17
**safe** 65:14 66:8 67:5
  70:20 77:2 88:17
**safeguard** 194:4
**safeguards** 187:16
  194:5
**safekeeping** 194:10
**SAILER** 5:10
**salaried** 212:6
**salaries** 95:14 180:9
**salary** 11:3,11 51:8
  52:5 56:9,14 57:6
  58:21 92:19 93:20
  95:14 116:23
  120:12,19,22
  139:17 142:8,11
  144:6 147:25
**sale** 33:3,4
**satisfied** 133:9
**satisfies** 243:11
**satisfy** 127:12 249:6
**save** 112:22
**saving** 245:21
**saying** 19:14 33:13
  35:15 102:7
  103:10 108:15
  125:23 134:7
  149:5 150:18
  156:19 158:5,15
  159:2 161:23
  163:23 164:7
  168:22 181:10,11
  191:2,3 204:21
  212:14 219:14
  227:25 229:11,16
  230:23,25 231:4,5
  231:8 235:7,8
**says** 50:11 74:9
  76:24 89:19
  146:22 150:13
  156:23 190:9
  204:23,24 209:11

230:6,7,13 232:14
**scale** 102:15
**scaled** 102:14
**scenario** 148:19
**scheduled** 213:10,12
238:22
**schedules** 178:23
**scheduling** 212:22
**scheme** 241:6
**school** 22:24
**scintilla** 232:13,15
**scope** 193:23 195:7
**Scotty** 222:21
**screwing** 170:20
**search** 54:8
**Seasoned** 144:17
**seated** 7:4 114:7
**SEC** 67:14 71:24
72:3 81:25 193:7
195:2 210:12
248:3
**second** 13:23 18:13
29:7 30:16,22
71:22 86:20
101:21 109:23
122:10 132:13
186:6 250:15
**secondly** 241:22
242:3 249:4
**secretary** 22:23 48:6
217:19
**section** 10:9 239:18
**Sections** 2:3,9 3:3
**secure** 99:25
**secured** 178:17
235:25
**securities** 13:9 22:3
23:21 24:4 26:15
26:25 46:20 63:20
77:14 186:4
188:16 199:23
**security** 161:17
**SEC's** 189:2
**see** 48:4 57:4 59:5
68:25 77:25 84:24
89:21 95:4 104:21

107:15 132:20
150:12 165:18
176:21 192:14
194:13,21 202:16
202:24 217:16
220:8 247:19
250:21
**seeing** 49:11 79:24
**seek** 49:24 213:18
232:6 248:16
**seeking** 48:14
146:16 152:8
248:18
**seen** 35:2 49:21 69:4
180:23 183:18
**self** 41:2 242:2
**self-dealing** 241:18
**semi-annual** 238:5
**send** 253:4
**senior** 9:22 54:5
182:7,7 224:25
233:12
**sense** 65:12 144:16
165:12 168:15
170:14 173:19,24
174:8,10 181:3
213:19 214:20
220:8 225:15
230:7 242:8 250:5
**separate** 176:6
211:22
**separated** 36:22
**serious** 130:12
144:18 158:17
192:8 196:3 249:3
**serve** 249:3
**serves** 209:2
**session** 217:12,15
**set** 7:10 59:8,10
75:21 139:18
179:8 181:13
205:21 219:20
**sets** 212:24 236:14
236:15
**settle** 126:18 196:2
**seven** 72:24 159:9

177:19
**severance** 8:6
**SGNA** 212:8
**share** 169:21
**shared** 111:8,10,16
139:6 222:18
**shares** 156:2 182:9
**sharing** 162:10,11
169:22
**Shaw** 14:9 18:17
104:14,20 107:6
112:9 167:19
**sheer** 138:7
**sheet** 71:10
**sheets** 178:8
**short** 160:21 175:6
185:4 188:2
**shortfall** 11:20
118:23 222:14
**shortly** 66:21
**short-hand** 155:11
**short-term** 116:24
116:25 160:24
161:3,11,21,24
165:11
**shot** 228:3
**show** 11:19 124:22
125:20 183:10
185:2 190:22
196:25
**showed** 174:5
**showing** 170:20
**shown** 188:5
**shows** 136:14 178:7
185:2
**shut** 103:20,24
**shuttered** 167:2
**side** 42:17 82:2
145:13 184:4
220:21
**sides** 245:20
**sign** 23:17 165:6
254:14
**signal** 154:21
**significance** 77:13
**significant** 60:4

101:24 102:21
143:12 153:12
155:17 185:3
245:3
**signing** 58:16,19
59:5
**sign-on** 54:9
**similar** 183:14
191:23
**similarly** 67:17
**SIMON** 5:18
**simple** 240:14
**simply** 41:8 49:25
102:3 107:3
119:15 127:13
128:22 133:2
145:8 168:10
170:20 178:23
179:5 180:16
181:2 193:3 194:7
194:15 195:21
196:5 212:12
**single** 129:11,12
**sink** 100:12
**sir** 24:9,24 26:18,18
27:5 30:15,21
31:22 32:12 38:14
43:3 46:9,22 61:2
67:17 73:14 75:9
82:25 84:5 91:6,12
92:15 93:20,25
94:2,15 95:4,8
97:15 104:11,21
105:17 109:6,8,21
109:25 110:9
**sit** 77:23 83:18
91:23 92:23 93:16
95:19 98:11
104:11 110:2
115:8 123:4
124:14 141:14
142:5 197:15
**sites** 221:23
**sitting** 90:11,14
124:24 135:8
152:4

**situated** 48:18
**situation** 83:11,15
  86:15 99:23
  146:21
**situations** 129:24
  231:10
**six** 17:15 84:21 85:6
  89:21 90:23 93:22
  96:19 97:2 104:13
  121:14,15 123:22
  132:6,11 135:20
  136:15 138:5
  142:24 151:13,17
  152:3,22 159:9
  165:7 175:12
  200:22 201:17
  202:14,18 204:8
  204:18 205:8,11
  215:3 216:16
  219:25 220:3,6
  223:7,25 227:18
  233:8,25 243:10
  244:5 246:17
**sixth** 14:25
**size** 239:24
**Skadden** 4:3,11 7:7
**slam-dunk** 244:18
**Slate** 4:3,11 7:8
**slightly** 57:25
  132:10
**small** 129:21 238:10
**smart** 250:13,15
**smarter** 158:21
**snuck** 203:15
**socially** 228:23
**Sole** 2:6
**solely** 121:11
**solid** 50:23
**solution** 145:4 156:3
  156:15
**solve** 125:17 126:9
**solved** 131:25
**somebody** 43:22
  78:21 133:2 194:6
  207:10 222:15
  230:9

**someone's** 249:24
**somewhat** 195:4
**soon** 130:8
**sorry** 30:4 40:12
  104:12 112:25
  162:23 177:25
  210:8 211:5,5
  215:18,25 248:7
**sort** 88:20 91:6
  127:3 155:11
  158:12 160:21
  163:7 166:13
  167:23 168:17
  175:23 176:5
  178:10 204:20
**sought** 53:25 118:12
  241:13
**sound** 39:10 95:5
  153:25 254:6
**sounds** 19:6 230:6
**source** 2:6 224:2
**Southern** 1:3 185:10
  187:4
**speak** 19:25 20:2
  27:12 29:15 64:7
  102:8 153:6
**speakers** 155:7
  156:24
**speaks** 28:13
**special** 44:15 186:10
  206:4
**specially** 7:10
**specific** 28:25
  125:10
**specifically** 27:4,6
  27:11 30:14 37:21
  74:9 122:25
**specified** 246:5
**spectrum** 154:18
**speculation** 110:6
  169:8
**speculative** 144:13
  144:15
**spell** 198:16
**spelled** 74:15
**spent** 242:22

**spheres** 212:2
**spin** 10:25
**spins** 148:12
**spoken** 135:4
**Springer** 4:9 7:9
  92:7,11,13 95:2
  104:19 105:9,12
  107:14 108:22
  110:8 111:3
  168:16
**Springer's** 169:19
**spun** 92:16 95:12
**Square** 4:13
**stack** 54:2
**stage** 169:23 172:6
  181:11
**stages** 175:10 251:7
**stake** 97:2 184:17,23
  187:13 231:22,22
**stakeholders** 143:14
  143:15
**stand** 19:24 70:7
  147:4 215:8
  235:20 236:20
**standard** 25:11 28:3
  31:11,23 32:5
  33:14 34:17 36:19
  37:3,13,23 38:2,3
  38:7,19 40:6,7,9
  42:2,7,13 74:23,24
  75:4,19,20,25
  76:17 78:3,18 79:3
  79:5 80:5,21 115:2
  186:23 189:22,25
  190:6 191:14,21
  191:21,23,24
  192:12,15,24,25
  193:5,6 196:8,10
  196:10 199:5,7,18
  201:4 225:14
  239:9 241:15
**standards** 34:11
  41:6,24 74:20 77:7
  190:2 198:21
  207:15,17 219:20
**standing** 150:18

  183:11
**standpoint** 111:7
**start** 58:6 102:19
  116:12 161:6
  163:24 164:2
  170:3 241:14
**started** 36:4,14
  38:15 163:8,21
  164:9 245:10
**starting** 191:14
**startle** 147:15
**state** 21:19,21 100:4
  104:4 105:23
**stated** 17:6 57:14
**statement** 23:18
  31:16 70:6 73:22
  74:16,17,25 75:22
  125:9 213:2
**statements** 32:21
  131:3 190:7
  196:24 197:8
**States** 1:2,17 6:16
  13:10 15:9 23:20
  122:4 127:8
  201:25 202:2
  212:7 223:6
**stating** 62:15 202:8
**status** 142:20 146:14
  217:9
**statute** 118:9
**stay** 36:16 118:4,5
  118:12 125:8
  225:18
**stay-for** 8:20
**Steel** 4:19 14:6
  18:18 20:24 21:2
  55:8,10 62:25
  104:14 105:2,14
  106:6,13,24 107:4
  107:17,25 108:7
  108:24 109:20
  110:10 153:13,14
  166:11 167:19
  226:17
**step** 94:17 112:9
  187:23 193:9

230:17
**steps** 121:22
**Steve** 18:14 87:23
94:20
**stick** 245:3
**stipulations** 15:19
**stirred** 180:20
**stock** 57:22 153:15
177:23 178:2,5,6
178:10
**stocks** 50:23
**stop** 223:11
**stopped** 37:16
**storm** 81:2 165:25
**strategic** 128:11
169:2,9
**strategy** 9:24 203:21
221:21
**straw** 149:19
**Street** 5:20 6:17
**strike** 127:20
**stronger** 162:9
**structural** 168:8
**structure** 10:23,23
10:24 11:8 48:12
57:10 93:18
116:20 119:2,3
176:13 220:17
235:3
**structured** 233:18
233:24
**structures** 57:6,18
**struggled** 168:18
**stuff** 101:7 167:18
**stumbling** 146:3
221:15
**subject** 17:19 19:16
21:3 67:13,19
88:17 219:2
247:25
**submission** 40:17
71:24
**submit** 190:14
191:12
**submitted** 13:21
22:13 30:8 31:23

39:3 107:7 113:18
191:7 254:6
**substance** 9:12
123:2 128:4
130:24 131:22
136:9,14 218:8
219:8 234:12
251:6
**substantial** 99:5
142:25 143:6
145:6 176:16
177:6 179:24
182:25 245:25
248:19 249:18
252:17
**substantially** 155:13
240:6
**substitute** 220:13
**success** 103:16
110:25
**successful** 61:15
111:14 150:23
161:15 165:21
**successfully** 148:14
**sued** 40:18,19 72:2,2
**sufficient** 242:16
**suggest** 99:14 176:6
178:25 181:22
197:2 219:4
222:11 231:9,11
**suggested** 101:17
116:15 137:25
147:20 169:18
181:16 217:11
**suggesting** 146:8
148:6 150:20
232:9
**suggestion** 101:23
137:14 195:9
206:23 225:24
**suggests** 140:5
148:15 205:23
**suit** 24:6
**Suite** 6:3
**sum** 56:14 130:24
**summarize** 22:16

28:20 40:15 153:5
155:5
**summarized** 49:22
**summary** 10:8
12:10 67:4 230:19
**summer** 119:17
234:6
**sums** 98:13
**Suozzi** 6:2 166:11
**superiors** 246:8
**supplemental** 13:22
17:19,23 18:11
**supplier** 2:6 182:15
**suppliers** 93:2
118:14 182:17
224:15
**supply** 182:22 183:2
183:5,9,16 223:12
223:13,18,23
224:4,5,14 225:5
**support** 2:14 14:4
94:2,5,9,10 96:11
96:15,23 109:9,16
110:2,11 111:19
116:10 128:24
129:16 156:16
235:20
**supporting** 110:16
235:23
**supports** 144:3
243:16
**suppose** 67:23 144:7
161:7 172:4
**supposed** 162:4
201:6
**sure** 29:8 37:5 56:19
60:22 67:6 68:5
70:6 97:20 101:21
102:10 108:13
112:5 132:14
163:15 193:20
198:3 210:10,15
221:5 227:21
232:3 235:17
244:21
**surely** 130:13

**surface** 78:17 81:9
**survival** 223:16
**survives** 102:23
**sustain** 80:10
**sustainable** 149:19
151:25
**Sustained** 105:11
110:7
**swallow** 150:11
**sworn** 20:3 54:23
62:12 92:10 94:25
104:18
**system** 21:19,21
157:8 184:12,14
208:21

**T**

**t** 202:19
**table** 126:19 138:21
149:6 161:4
**tainted** 241:18,25
**take** 19:24 40:6
42:12 43:4,24
48:13 59:6 65:6
70:11 73:9 76:17
78:20 99:3 100:7
100:10,16 108:16
110:22 113:25
119:13 125:23
126:2 127:22
128:5,17 138:23
146:23 159:24
168:5 182:11
184:23 194:6
199:6 208:15
214:7 221:22
223:10 230:17
233:15 252:17
**taken** 22:10 69:4,6
69:24 72:25 73:11
97:11,18 98:4,15
128:15 204:4
205:2,7 211:19
233:11
**takes** 20:23 62:25
70:8 224:25 225:2

249:20
**talent** 225:2
**talk** 11:21 12:10
25:11 30:14 70:19
71:8 83:14 87:15
108:18 119:19
120:12 131:19
209:15 214:4
215:21 233:10
**talked** 37:23 42:2,19
44:25 93:19 190:2
196:17 216:23,25
217:2
**talking** 32:10 50:21
52:3 138:3 150:7
158:20 161:19
164:21 169:7
170:3,6 199:5,25
200:4,9 204:14
225:14 227:24
**talks** 89:24
**target** 9:18 40:22
43:22 51:22 56:7
56:14 57:11,12
59:8,17 72:3 86:16
90:22 135:21
140:10,12 166:19
174:15 204:25
226:14,18,20
240:6 244:25
245:8,12 251:21
252:20
**targets** 43:19 59:14
85:10 86:21
122:19 137:11,24
139:18,20 140:24
141:9 157:24
158:13 172:20
173:11 175:12
177:9 191:2 194:8
196:18,21 197:9
202:25 218:9,11
218:16,19 220:17
226:22 240:2
243:8 244:13,14
244:16 252:4

**target's** 159:18
**Teacher's** 21:18
184:12
**team** 86:2 121:22
**teams** 85:19
**teed** 124:17
**tell** 27:16 31:15 32:8
64:11 68:8 75:24
78:15 91:8 114:11
115:18
**telling** 228:7 229:14
**temperature** 122:2
**ten** 160:5 229:20
**tends** 134:21
**tens** 141:18
**term** 57:7 69:5
160:22,23 175:7,8
214:24
**terminated** 37:16
46:12
**terms** 66:14 69:23
70:14 79:8 81:18
88:20 90:16 98:10
132:9 134:15
139:8 157:7,10
160:19 164:11
166:23 167:2
216:17 232:2
242:25 249:21
**terrible** 148:10
**test** 75:14 122:13
241:25 242:14
247:5,9
**testified** 35:9,10
75:18 109:14
144:18 215:6
**testify** 96:18 106:2
107:2
**testimony** 10:17
11:19 16:12 17:10
33:25 35:2,3,11
55:2 68:6 74:22
99:13 117:18
121:19 167:16
183:17 192:5,23
196:20 216:4

225:12 228:11
**Texas** 4:21 21:18
63:18 187:5
**text** 136:7
**Thank** 17:8 20:21
26:9 47:19 54:15
54:16 60:19 61:19
84:5,6 94:15 104:9
114:4 129:3 135:9
154:23 182:2
184:9 201:13,21
204:9 237:18
**Thanks** 104:5
**that'd** 109:7
**thematically** 250:4
**theme** 251:5
**theoretically** 203:21
**they'd** 195:24
**thing** 120:23 146:7
149:10 167:10
168:8,13,13
171:24 172:2
187:14 188:3
190:10 196:12
199:17 203:5
212:14 213:16
220:18 224:13
244:21
**things** 33:18 35:18
41:3 42:19 53:22
71:16 78:12
113:13 128:17,19
137:21 149:10,23
159:16 165:23
172:10 185:6
188:2 195:15
200:12 210:3
214:25 221:13
222:10 232:3,23
235:2
**think** 19:13 25:21
25:24 26:2,4 34:15
35:15 42:9 60:7
69:4 71:13 75:23
76:19 77:7,22 78:8
79:9,12,18,20,25

80:3 89:9,13 98:6
100:24 102:4,11
102:24 106:25
107:9 109:13
110:21,23 114:11
114:19 116:5,11
122:7,8,9 123:7
128:20 133:5,5
134:7 137:24
139:12 142:9
143:12 144:2
146:11 147:14
150:6 151:15
152:10,13 153:8
153:11 154:4,10
154:12,16,20
155:3,19 156:17
158:4,21 159:4
160:9,16,19 161:7
161:13,18 162:5
163:13 164:8,14
164:19 166:5,7,12
167:5,11,12
168:12,14 170:5
174:17 175:5,20
178:8 179:8,13,18
179:23 180:3,12
181:8 184:25
187:23 188:5,9
189:3,19 190:12
190:21 191:22
192:6 193:17
194:11,20 195:8
195:13,15,16,22
195:24 197:9,11
198:7 200:6 201:5
201:18 202:10
203:17,23 204:2
206:20,21 208:9
208:17,23 209:14
210:14,17 218:5
222:19 226:11,19
226:19 228:6
229:9 235:13,15
235:21 236:2,11
236:21 237:21

240:13 245:5
249:21 250:11
251:5,23
**thinking** 158:7
210:7 220:19
**thinks** 111:16 214:5
**third** 5:5 11:22 14:5
18:16 117:12
120:13 186:12
207:17
**thirds** 12:6
**thought** 77:6 135:2
**thousand** 177:11
**thousands** 141:18
145:23 177:15
**thread** 49:23
**three** 13:6 14:10
17:16,17 57:5,9
120:6 127:25
131:19 210:5
211:9
**threshold** 42:2
**Thursday** 213:13
**tie** 213:21
**tied** 80:2 246:2
250:2
**ties** 72:11
**till** 84:18
**time** 9:9 15:22 18:23
21:3,8 26:19 31:10
34:3 39:2 46:17
55:11,17 58:3 63:3
64:18 66:18 73:20
79:6 88:13 99:21
100:8,9 101:2,9
119:17 135:18
139:11 141:21
142:20 147:18
148:10 150:11
154:6 156:20
159:8 161:4,12
163:6 164:25
170:3 177:2
180:16,24 181:7
181:23 184:3
194:11 195:25

197:14 198:3,8
201:17 206:10
214:3,16 227:16
228:2 236:11
238:15 239:4
241:13 242:22
243:15 248:17,18
250:25 253:10
**timely** 195:14
**times** 4:13 74:10
141:25
**timetable** 181:20
**timing** 33:5 101:17
103:6,14,16
130:15 133:11,23
133:25 148:25
149:2 161:2 166:7
195:16 200:20
237:7
**title** 105:19
**today** 8:24 10:3 11:9
11:21,25 12:11,17
12:24 13:14,18
14:12,17 19:8 23:7
24:10 62:4 67:2
92:24 93:8,16,23
95:4,19 96:6,18
97:3 98:12 99:13
99:15 104:21
105:2 106:3,6,14
106:16 107:17,20
108:8,10,25 109:4
110:2,12 111:21
115:18 118:14
124:15 125:25
129:10,11,19
135:4 141:14
142:6 149:3
156:13,19 157:23
160:25 161:18
162:7 164:21
165:5 176:9 179:3
184:17 185:2
187:7 191:8
212:22 221:8
222:8 236:19

239:13 248:24
250:19 253:7
**today's** 171:11,14
179:21
**told** 49:18 71:25
97:25 131:8
170:18
**Tom** 5:16 20:10
60:23 135:10
**tone** 163:7,13 179:8
**tools** 148:3
**top** 51:10,11 56:11
120:16
**topic** 82:3 217:12
**total** 103:19
**totally** 95:23
**touch** 104:24
**Touche** 201:13
**touched** 179:2
**tough** 157:13
**tracks** 211:22
**traded** 108:5
**trading** 23:19
**Transcribed** 3:21
**transcription** 254:5
254:7
**transformation** 94:7
109:11 120:24
126:8 155:9
164:13 166:15
168:4,7 169:12
210:2 211:8,24
212:6 220:24
224:9
**transgress** 44:6
**translate** 157:6
**transparent** 208:20
**transpired** 227:17
**trap** 102:14
**tremendous** 225:2
227:2
**trial** 62:4,4 76:9
146:18
**trials** 195:2
**tried** 71:12 115:13
225:10

**trigger** 32:22 41:4
65:19 71:16 90:18
198:12 207:3
**triggering** 71:10
72:7,24 80:22
**troubles** 103:13
**troublesome** 38:14
**Troy** 213:11
**true** 20:18 31:9
35:25 36:13 44:8
44:14 45:25 64:25
91:12,17 94:4,8
95:10 97:15,19
106:5,10,11,12
107:24 108:5,7,24
109:6,7,9,12,13,15
109:19 111:4
131:2 137:21
138:6 147:9,10
167:24 168:10,19
169:8 179:6 180:4
192:8,9 198:8
206:11,14 254:4
**truly** 148:22
**trust** 6:9 14:20 21:6
55:14 63:5 182:5,9
194:19
**trustee** 6:16 13:10
15:9 55:24 133:16
182:6 201:25
202:2,7 204:5
249:9
**truth** 232:13
**try** 44:7 104:23
108:23 118:16
120:23 125:16
126:12 127:11
155:5 157:6
160:15 169:6
209:21 221:4,18
**trying** 25:4,6 35:17
35:19 88:20 103:4
119:22 121:24
125:9 126:24
127:20,20,24
128:6,16 136:8

138:10 156:8
157:14 169:25
211:20 214:20
216:24 223:22
232:2 235:12
**tunnel** 172:9
**turn** 27:10 30:15
74:18 88:3 149:20
172:10 185:6
188:17
**turns** 205:10
**two** 11:15 12:6 13:2
55:5 68:4 71:22
72:21 73:25 79:24
81:24 87:14 92:2
92:19 93:17 95:20
112:15 113:13,15
135:14,25 137:21
146:25 160:16,17
160:20 185:11,14
197:19,23,24
199:4 205:9 207:6
223:10 228:5
248:22 252:21
**type** 162:6 193:11
214:3
**types** 32:4 59:16
173:6 236:9
244:15
**typical** 59:21,24
**typically** 54:9,10

**U**

**u** 205:2
**UAW** 5:19 13:25
16:14 18:15 20:19
55:6 62:21 94:22
97:25 100:17
116:14 133:21
155:3 156:16
157:4 226:16,24
**UAW's** 155:4
**Ub** 140:10
**UCC** 216:15,21,25
**ug** 91:3,3,5,9,10,17
159:21 160:4

204:25 205:7
218:18
**Uh-huh** 39:16 45:23
46:24
**ultimate** 65:2
193:21 241:20
242:9
**ultimately** 23:6
126:6 151:24
158:23 160:12
162:3,5 186:21
218:23 235:2
237:9,9 247:6
249:12 250:9
**unable** 148:13
183:24
**unacceptable**
228:23 233:5
**unanimous** 217:20
**unavailable** 11:17
**uncertainty** 164:24
166:2 227:3,7
**uncompetitive**
125:19 126:11
141:24 176:12
**unconscionably**
178:22
**uncontrovertable**
225:11
**uncontroverted**
122:18 123:6
125:2 128:24
221:9 222:14
223:2 226:5
237:11
**underpaid** 179:4,21
**underpinnings**
242:15
**underscored** 128:22
**understand** 56:20
65:23 68:18 72:14
73:14 102:17,18
103:6,14,25
108:14,19 123:12
140:16,24 149:14
150:4 158:25

160:10,11 162:13
165:17 167:6
175:7 178:5 204:2
211:21,23 224:19
224:21 228:21
231:3 236:23
250:15
**understandable**
227:2
**understanding**
62:14,20 66:12
96:25 118:20
196:22
**understatement**
130:12
**undertaking** 70:2
**undoubted** 227:9
**unfair** 251:16
**unfairly** 132:25
**unfairness** 202:22
251:13
**unfortunate** 163:9
163:13
**unhappy** 228:25
**unhealthy** 104:4
**uninterrupted** 224:6
**union** 2:20,21 5:11
20:5 85:16,19
87:25 91:11 94:5
105:16,20 106:3
109:8 111:2
144:24 157:4,12
167:17 168:17
169:5 171:7
174:20 205:16
215:22 219:13
221:11 222:17
225:20 226:13
227:3 232:12
236:5 248:20
249:14
**unionized** 61:8
251:10
**unions** 13:2,6 52:17
86:24 91:15
123:14 143:13,20

144:15 145:21
149:4,12,17
150:11 152:13
153:10 155:22
156:14,18 157:4
158:25 161:23
165:10 169:11
170:23 173:7,18
174:19 175:25
180:21,22,23
183:18 203:11
212:5,17 213:7
214:13 217:5,10
221:18 225:23
226:8 231:12
232:10 240:13
245:23 250:11
251:9
**union's** 124:13
156:5 159:17
161:22
**unitary** 11:7,16
**United** 1:2,17 4:19
6:16 13:10 14:5
15:8 18:17 20:24
23:20 55:8 62:25
95:7 97:8 104:7
105:2,14 106:6,13
108:24 122:4
127:7 201:25
202:2 212:7 214:8
223:5 226:17
**unlawful** 31:13
**unpopular** 236:25
**unpronounceable**
158:12
**unravels** 227:6
**unreasonable**
145:12 219:6
**unreasonably**
132:25
**unrebutted** 175:24
**unresolvable** 152:17
**unsecured** 5:4 9:3
15:7 71:18 133:22
**unsuccessful** 148:12

**unsure** 66:6
**unusual** 140:14
**update** 217:13
**upfront** 78:16
**upper** 52:8
**ups** 139:22 173:5
**upset** 145:14
**urge** 154:22
**urged** 239:23
**USC** 7:12
**use** 10:9 40:6 105:5
128:9 154:16
168:24 244:19
**Usually** 90:9
**USW** 105:25 226:15
**U.S** 133:16 189:5
202:6
**U.S.C** 2:3
**U.S.W** 105:22

**V**

**value** 139:14 178:9
202:3 224:8
238:10
**variation** 251:5
**variety** 17:12
**various** 52:20 135:6
168:17 188:8
207:22 242:21
243:13 246:14,23
**vary** 54:4
**vast** 132:20 179:14
**vendors** 182:22
183:9,15
**versa** 210:21
**verses** 183:23,25
**version** 22:21 30:10
36:7 89:14
**versions** 89:10
197:24
**versus** 100:12 137:6
**vetted** 175:14
226:13,18 241:23
**vibrant** 212:18
**vice** 210:20
**Vienna** 21:25

**view** 41:7 60:3 86:15
97:7,7,16 98:12
115:17 123:11,13
128:12 133:25
136:12 139:6
141:7 142:16
151:21 156:2
182:10 190:17
209:4
**viewed** 163:9
**vine** 129:14
**violate** 32:5
**violating** 192:15
**violation** 23:20 33:6
**violations** 33:9
**virtually** 122:17
**virtue** 55:2 62:14,17
**visceral** 249:15
**vis-a-vis** 51:25
**voluntarily** 10:3
**vote** 146:6 180:18

**W**

**W** 5:20
**Wacker** 4:5
**wage** 109:18 177:6
180:14 248:19
**wages** 95:13 100:5
146:24
**wait** 77:25 84:18
124:11
**waiting** 139:19
184:5 202:13
**wake** 225:7
**walk** 103:21
**wall** 81:24 211:3
**want** 23:2 28:23
29:2 43:8 44:2,6
56:19 68:24 70:5,7
70:19 71:8 83:14
84:16,19 100:19
106:23 113:16
132:10 134:5
146:23,24,25
149:15 154:15
166:4 175:13

176:13 178:24
184:17 204:12
205:19 209:22
210:8,9,15 211:12
212:12 222:10
226:21 230:10
233:10 244:19
246:18
**wanted** 87:19
118:15 208:19
**wanting** 211:17
**wants** 213:21 215:2
221:18
**ward** 147:13
**warranted** 146:19
148:21
**wasn't** 76:9 87:15
130:25 135:24
153:14 179:25
192:22 206:25
226:20
**WATKINS** 5:2
**Watson** 54:18
**wave** 113:22
**way** 30:7 35:25 37:6
40:8 41:11 44:24
45:21 53:10 57:15
57:15 77:4 95:17
97:17 98:3,14
109:25 115:21
117:12,13 120:11
122:18 135:5
146:9 149:20
150:5 152:5
160:15 161:6
163:20,21 164:11
165:19,21 166:8
167:9 168:13,19
172:3 173:25
179:7 196:19
204:4 205:20
207:16 212:3
214:5 218:10
222:13 230:2
233:18,23 234:23
241:17 250:17

252:14
**ways** 78:11 166:20
245:18 246:24
**weaker** 162:9
**web** 221:23
**Webber** 19:20,24
20:2 22:5,9 28:18
29:14,25 35:10
48:5 54:17 56:6
66:5 74:21 75:4,17
80:17 85:9 185:19
187:5 191:19
193:18
**Webber's** 17:22
20:13 68:6
**Weber** 16:16
**wedge** 10:19
**Wednesday** 189:3
**weed** 79:7,11
**week** 22:11 131:15
132:22 134:14
135:8 156:24
161:7 184:7
213:10 234:21
**weeks** 133:21
**weigh** 123:3,5
**weighed** 133:22
232:2
**weighing** 146:13
232:23
**WEISS** 5:18
**well-known** 154:15
**went** 214:8,15
**West** 4:5
**we'll** 18:6,22 19:4
47:16 69:2 213:22
227:22,23
**we're** 10:7 12:10
20:5 23:6 32:10
49:11 76:21 77:19
77:21 122:11
126:12 131:14
136:8 138:8
140:20 141:7
146:17 148:6
150:14,15 161:19

163:24 164:2
168:22 169:4,7,23
170:7 172:8,13
181:3,9,10,10
193:13 194:16
196:5 200:8,12
201:6 204:21
207:21 210:6
230:7 234:6,17
**we've** 15:12 17:6
18:5 20:13 74:9
80:6 129:23 153:4
154:2,4 157:22
166:12 180:23
183:17 187:15
191:7 196:6
206:16,18 217:25
223:14 225:10
229:15 233:5
234:11
**whatsoever** 106:14
**whereof** 254:14
**whistleblower** 82:13
82:15,19
**Whitehall** 6:17
**who've** 233:11
**wide** 10:25 189:14
**willfulness** 78:20
**willing** 249:24
**Wilmer** 46:3 188:25
**Wilmington** 6:9
14:20 21:6 55:14
63:5 182:5,9
**Wilson** 47:12,13,19
**wiped** 59:19
**wish** 195:19
**withdraw** 35:22
**withdrawn** 12:19,23
16:11 112:18,23
113:4
**withdrew** 235:25
**witness** 20:3 47:8
48:8,20,24 49:20
50:7,16,20 51:20
52:2,6,11,25 53:6
53:13,19 54:4,23

56:12 57:2,24 58:7
58:14,18 59:2,11
59:22,25 60:7 62:6
62:12,17 84:6,23
85:7,12,17,22 86:9
86:17,25 92:2,10
94:19,25 99:11,20
100:23 102:8,11
103:15 104:9,13
104:18 105:13
106:22,23 108:19
110:19 116:14
155:4 254:14
**witnesses** 17:16
18:19 91:25
104:14 136:19
168:17 169:17
**WM** 4:8
**won** 229:3
**wondering** 113:12
**word** 60:11 76:17
105:5 154:16
163:17 246:19
**words** 28:6,24 65:24
155:18 174:23
**work** 8:13 9:11 12:4
12:4 46:9 60:14
61:8 100:12
107:21 123:19
125:18 126:19
139:23 141:12,23
143:3,23 157:15
157:24 183:10
221:2 223:6,8,24
235:4 241:8 246:4
251:10
**worked** 120:2
235:12,14,16
**worker** 159:4
252:16
**workers** 4:19 5:12
14:6 18:18 20:24
21:2 55:9,10 57:23
58:4 62:25 95:7
97:8,11,14,19 98:5
98:16 100:5,22

101:2,24 103:7,9
103:22 104:8,15
105:3,14 106:6,13
107:4,17,25 108:8
108:24 109:17,20
110:10 155:16
158:7 159:25
160:3,8 164:23
166:12 167:7,19
168:5 179:5 181:4
226:17 249:14,15
252:2
**worker's** 106:24
157:15 158:6
163:11,12 172:7
**workforce** 157:3
179:12 212:6
223:3,4
**working** 58:6
142:12 157:16
163:12 224:21,24
**works** 95:24 141:23
218:16
**world** 10:25 165:16
167:22 169:10,11
224:17
**worlds** 229:13
**worried** 101:5
164:23
**worse** 102:21 190:10
190:12 252:6
**worst** 229:13
**wouldn't** 74:6 85:5
116:2 123:16
174:6 195:3
198:10,13 200:21
**wrest** 169:25
**wrestle** 169:2
**wrestled** 134:8
**wrong** 66:16 100:16
154:21 179:8
194:12
**wrongdoers** 196:14
**wrongdoing** 190:10
191:4 197:5
**wrongful** 186:8

**Wyatt** 54:19 59:6,7

**X**
**x** 1:5,12

**Y**
**yeah** 34:15 53:13
75:23 109:7
138:22 145:19
172:12 174:22
193:19 198:23
200:5 228:4
**year** 9:17 10:5 11:9
50:13 53:4 54:10
66:9 88:13 119:25
120:3 137:3
142:24 143:7
176:22 177:11
219:17,25 222:9
238:7,8,24 244:5
**years** 12:8 58:10
86:18 115:5 117:3
117:22,23 119:4
136:17 137:2
139:10,11 142:23
143:12 144:12
146:25 173:22
219:16,20 220:22
**yellow** 10:20
**yesterday** 97:23
98:19
**York** 1:3,19,19 4:14
4:14 5:6,6,14,14
5:21,21 6:4,4,12
6:12,18,18 87:24
88:16 105:23
213:13

**Z**
**zero** 134:22 137:2

**$**
**$500,00** 234:22

**0**
**01** 170:12
**02** 170:13

**03** 170:12
**04** 170:12
**05** 66:20
**05-44481-rdd** 1:4
2:1 3:1 4:1 5:1 6:1
7:1 8:1 9:1 10:1
11:1 12:1 13:1
14:1 15:1 16:1
17:1 18:1 19:1
20:1 21:1 22:1
23:1 24:1 25:1
26:1 27:1 28:1
29:1 30:1 31:1
32:1 33:1 34:1
35:1 36:1 37:1
38:1 39:1 40:1
41:1 42:1 43:1
44:1 45:1 46:1
47:1 48:1 49:1
50:1 51:1 52:1
53:1 54:1 55:1
56:1 57:1 58:1
59:1 60:1 61:1
62:1 63:1 64:1
65:1 66:1 67:1
68:1 69:1 70:1
71:1 72:1 73:1
74:1 75:1 76:1
77:1 78:1 79:1
80:1 81:1 82:1
83:1 84:1 85:1
86:1 87:1 88:1
89:1 90:1 91:1
92:1 93:1 94:1
95:1 96:1 97:1
98:1 99:1 100:1
101:1 102:1 103:1
104:1 105:1 106:1
107:1 108:1 109:1
110:1 111:1 112:1
113:1 114:1 115:1
116:1 117:1 118:1
119:1 120:1 121:1
122:1 123:1 124:1
125:1 126:1 127:1
128:1 129:1 130:1

131:1 132:1 133:1
134:1 135:1 136:1
137:1 138:1 139:1
140:1 141:1 142:1
143:1 144:1 145:1
146:1 147:1 148:1
149:1 150:1 151:1
152:1 153:1 154:1
155:1 156:1 157:1
158:1 159:1 160:1
161:1 162:1 163:1
164:1 165:1 166:1
167:1 168:1 169:1
170:1 171:1 172:1
173:1 174:1 175:1
176:1 177:1 178:1
179:1 180:1 181:1
182:1 183:1 184:1
185:1 186:1 187:1
188:1 189:1 190:1
191:1 192:1 193:1
194:1 195:1 196:1
197:1 198:1 199:1
200:1 201:1 202:1
203:1 204:1 205:1
206:1 207:1 208:1
209:1 210:1 211:1
212:1 213:1 214:1
215:1 216:1 217:1
218:1 219:1 220:1
221:1 222:1 223:1
224:1 225:1 226:1
227:1 228:1 229:1
230:1 231:1 232:1
233:1 234:1 235:1
236:1 237:1 238:1
239:1 240:1 241:1
242:1 243:1 244:1
245:1 246:1 247:1
248:1 249:1 250:1
251:1 252:1 253:1
254:1

**1**

**1** 9:16 10:16 16:2
17:2 62:3 105:22

177:11 238:7
**1st** 10:4 120:18,20
120:22 216:9
**10** 1:14 2:15 12:17
114:2 120:17
138:2 183:4
224:23 249:22
**10th** 216:23
**100** 124:9
**100,000** 177:17
**10004** 6:18
**10016** 5:14
**10018** 6:4
**10022** 6:12
**10023** 5:6
**10036** 4:14 5:21
**101** 2:21
**105** 2:9 3:3 7:12
**106** 147:23
**11** 2:3 7:11 115:8
118:8,14 119:11
138:3 140:15
175:9 214:3 216:7
216:7 217:17
224:23 240:10,22
245:6
**110** 147:22
**1113** 125:20 126:14
126:14 127:12
131:15 134:14
135:9 141:16
142:5 156:22
162:20 181:12
184:7 210:2
211:20
**1133** 14:22
**1134** 14:7
**1135** 14:2
**1141** 15:5
**1156** 15:14
**1157** 12:22
**1159** 15:15
**1161** 14:24
**1164** 13:16,22
**12** 224:23
**120** 11:18

**1288** 15:12
**1350** 6:3
**14** 140:7
**15** 19:15,22 29:24
216:5
**15th** 201:5
**16** 19:22 29:24
**17** 54:22 192:4
**17th** 118:10 163:23
165:2 212:24
213:5
**18** 2:21 62:11
**185,000** 121:13
123:18 223:4
**19** 92:6 254:16
**19th** 88:14
**1999** 116:21

**2**

**2** 16:5 216:11
**2:10** 1:15
**20** 51:23 56:8 92:6
120:16,21 135:21
138:9,11,19 147:6
164:6 165:8
173:21 174:14
181:23 240:3
**200** 171:22
**2001** 50:12 86:12
**2002** 64:14 137:4
139:10
**2003** 198:3
**2004** 50:12 86:13
176:18,23
**2005** 7:15,18 8:22
9:6,8 176:22
177:12 234:10
**2006** 1:14 7:19,22
8:3 39:6 140:11
254:16
**2009** 224:22
**205** 4:20
**2054** 14:9
**2099** 15:8
**21** 9:19 94:24 97:3,9
**21st** 6:17

**213** 7:16
**22** 9:21 104:17
**22nd** 19:15
**2223** 13:23
**2227** 12:25
**23** 9:22
**236BR7** 153:13
**24** 177:16
**25** 16:5 17:3 51:10
 51:19 56:11
 177:10
**25th** 125:6
**26** 16:7 112:17,22,25
 113:3
**27** 16:10 112:17
 113:2,3 115:5
**27th** 7:19
**275** 5:13
**28** 16:10 97:24 113:4
 216:5
**29** 16:10 112:23
 113:4
**29th** 182:14

---
**3**
---
**3** 92:20
**30** 17:3 140:10 164:6
 165:8 201:8 252:7
**30th** 7:22 8:3 9:16
 238:8
**31** 16:12
**32** 55:4 140:7 204:16
 204:23,24
**33** 6:17 16:12 62:18
**330** 5:20
**333** 4:5
**34,000** 212:3
**363** 2:9 3:3 7:12
 10:9
**363(b)** 2:3 239:18
**365(a)** 2:4
**37** 15:25 17:3
**38** 51:24 147:7 240:4

---
**4**
---
**4** 92:21 143:19

**4:15** 114:3
**40** 51:11 137:18
 138:23 139:3
**42nd** 5:20
**46,000** 8:12 121:7
 211:25 223:3
**460** 120:25
**466** 121:10 123:18
 222:23 233:3

---
**5**
---
**5** 29:9,19 30:16
 70:25 71:11 89:12
 89:16 246:25
**5th** 39:6,12
**5.7** 9:20
**50** 171:23 233:16
 234:24
**50th** 244:10
**500,000** 177:18
**501** 6:3
**599** 6:11

---
**6**
---
**6** 198:2
**6th** 39:11 201:7
**6:50** 253:10
**60** 201:8
**60606** 4:6
**63** 2:15
**65** 179:16

---
**7**
---
**70** 137:16
**7001** 136:6
**75** 52:10 56:17
**75638** 4:21

---
**8**
---
**8th** 8:3 11:9 118:18
 126:2 135:19
**80** 140:11 159:21
 160:3 174:13
 205:5,17,21
 218:17
**832** 2:21

**885** 5:5

---
**9**
---
**90** 174:14
**9019** 2:4
**91** 185:13
**92** 185:13