05-44481-rdd    Doc 3463-1    Filed 04/27/06    Entered 04/27/06 16:45:40    Cover Sheet
Pursuant to Untied States Trustee Guidelines for Reviewing Applicat    Pg 1 of 22
Hearing Date and Time: June 29, 2006 at 10:00 a.m.
Objection Deadline: June 13, 2006 at 4:00 p.m.

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
Douglas P. Bartner (DB-2301)
Andrew V. Tenzer (AT-2263)

Special Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
------------------------------------------------------------x
                                              :
                                              :
                                              :
In re:                                        :      Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :      Case No.  05 – 44481 (RDD)
                                              :
                    Debtors.                  :      (Jointly Administered)
                                              :
                                              :
                                              :
------------------------------------------------------------x
```

COVER SHEET PURSUANT TO UNITED STATES TRUSTEE
GUIDELINES FOR REVIEWING APPLICATIONS FOR INTERIM COMPENSATION
AND REIMBURSEMENT OF EXPENSES FILED UNDER 11 U.S.C. § 330

NAME OF APPLICANT:            Shearman & Sterling LLP

TIME PERIOD:                 October 8, 2005 through January 31, 2006

ROLE IN THE CASE:            Special Counsel to the Debtors and the Debtors in Possession

DATE OF FINAL RETENTION:     November 4, 2005

APPLICATION:                 Fees Requested:                          $2,097,867.55
                             Expenses Requested:                        $103,201.56
                             Existing Holdback Requested (20%):         $419,573.51

PRIOR APPLICATION:           None.

THIS IS A(N):                X  Interim      ___  Final Application

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York 10022
Telephone: (212) 848-4000
Facsimile: (212) 848-7179
Douglas P. Bartner (DB-2301)
Andrew V. Tenzer (AT-2263)

Special Counsel to the Debtors and Debtors in Possession

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

```
-----------------------------------------------------------x
                                                           :
                                                           :
                                                           :
In re:                                                     :
                                                           :    Chapter 11
DELPHI CORPORATION, et al.,                                :
                                                           :    Case No. 05 – 44481 (RDD)
                              Debtors.                     :
                                                           :    (Jointly Administered)
                                                           :
                                                           :
-----------------------------------------------------------x
```

**FIRST APPLICATION OF SHEARMAN & STERLING LLP, AS**
**SPECIAL COUNSEL TO THE DEBTORS, FOR ALLOWANCE OF INTERIM**
**COMPENSATION FOR PROFESSIONAL SERVICES RENDERED AND**
**FOR REIMBURSEMENT OF ACTUAL AND NECESSARY EXPENSES**
**INCURRED FROM OCTOBER 8, 2005 THROUGH JANUARY 31, 2006**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Shearman & Sterling LLP ("S&S"), special counsel to Delphi Corporation and

certain of its direct and indirect subsidiaries, as debtors and debtors in possession in the above-

captioned cases (collectively, the "Debtors"), submits this application (this "Application"),

pursuant to sections 330(a) and 331 of title 11 of the United States Code (the "Bankruptcy

Code") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"),

for the interim allowance of compensation for professional services performed by S&S for the period from October 8, 2005 through January 31, 2006 (the "Compensation Period"), and for reimbursement of actual and necessary expenses incurred during the Compensation Period and respectfully represent:

## Professional Compensation
## and Reimbursement of Expenses Requested

1.     S&S prepared this application in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases adopted by the Court on April 19, 1995 (the "Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, adopted on January 30, 1996 (the "UST Guidelines") and the Order Under 11 U.S.C. § 331 Establishing Procedures for Monthly Compensation and Reimbursement of Expenses of Professionals (Docket No. 869) (the "Monthly Compensation Order," and collectively with the Local Guidelines and UST Guidelines, the "Guidelines"). Pursuant to the Local Guidelines, a certification regarding compliance with the Guidelines is attached hereto as Exhibit A.

2.     The Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334. Venue is proper under 28 U.S.C. §§ 1408 and 1409. This is a core proceeding under 28 U.S.C. § 157(b)(2).

3.     S&S seeks allowance of the interim compensation for professional services rendered to the Debtors during the Compensation Period, in the aggregate amount of $2,097,867.55 and for reimbursement of expenses incurred in connection with the rendition of such services in the aggregate amount of $103,201.56. During the Compensation Period, S&S

attorneys and paraprofessionals expended a total of 4,958.3 hours for which compensation is requested.

4.      Pursuant to Bankruptcy Rule 2016(b), there is no agreement or understanding between S&S and any other person, other than members of the firm, for the sharing of compensation to be received for services rendered in these cases.

5.      S&S's fees in these cases are billed in accordance with its existing billing rates and procedures in effect for the representation of the Debtors in relation to the chapter 11 cases (the "Bankruptcy Matters") and for the representation of certain Debtors, non-debtors, current officers and former officers in relation to an investigation and several litigation matters (the "Litigation Matters," and together with the Bankruptcy Matters, "Delphi Matters") during the Compensation Period.  The rates S&S charges for the services rendered by its professionals and paraprofessionals in relation to the Bankruptcy Matters are generally the same rates S&S charges for professional and paraprofessional services rendered in comparable nonbankruptcy related matters.  Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable nonbankruptcy cases in a competitive national legal market.  The rates S&S charges for the services rendered by its professionals and paraprofessionals in relation to the Litigation Matters are discounted pursuant to a separate agreement between Debtors and S&S as further described herein.

6.      Pursuant to the UST Guidelines, annexed hereto as Exhibit B is a schedule setting forth all S&S professionals and paraprofessionals who have performed services in relation to the Delphi Matters during the Compensation Period, the capacities in which each such individual is employed by S&S, the department in which each individual practices, the hourly billing rate charged by S&S for services performed by such individual, the aggregate number of

hours expended in this matter and fees billed therefor, and the year in which each professional

was first licensed to practice law.

7.      Annexed hereto as <u>Exhibit C</u> is a schedule specifying the categories of

expenses for which S&S is seeking reimbursement and the total amount for each such expense

category.

8.      Pursuant to Section II.D of the UST Guidelines, annexed hereto as <u>Exhibit</u>

<u>D</u> is a summary by project categories of the services performed by S&S during the

Compensation Period.

9.      S&S maintains computerized records of the time spent by all S&S

attorneys and paraprofessionals in connection with the Delphi Matters.  Subject to redaction for

the attorney-client privilege or confidential information where necessary to protect the Debtors'

estates, copies of these computerized records have been furnished to the United States Trustee

for the Southern District of New York (the "<u>U.S. Trustee</u>"), the attorneys for the official

committee of unsecured creditors appointed in these chapter 11 cases (the "<u>Creditors</u>

<u>Committee</u>"), the attorneys for the Debtors prepetition lenders (the "<u>Prepetition Lenders</u>") and

the attorneys for the Debtors' postpetition lenders (the "<u>DIP Lenders</u>") in connection with S&S's

monthly fee statements.

10.     As of the date hereof, S&S maintains a retainer in the amount of

$325,324.92 for professional service performed and to be performed, and expenses incurred and

to be incurred, in connection with the Delphi Matters.

11.     Also in accordance with the Monthly Compensation Order, S&S

submitted monthly statements to the Debtors (and certain other parties-in-interest as set forth in

the Monthly Compensation Order), and received payments on account of monthly statements

submitted during the Compensation Period, as follows:

| Monthly Statement | Total Fees | 80% of Fees | 20% of Fees | Expenses (100%) |
|---|---|---|---|---|
| October 8, 2005 – November 30, 2005 | $1,457,451.50 | $1,165,961.20 Payment Received | $291,490.30 | $70,496.21 Payment Received |
| December 1, 2005 – December 31, 2005 | $338,460.55 | $270,768.44 Payment Received | $67,692.11 | $20,132.22 Payment Received |
| January 1, 2006 – January 31, 2006 | $301,955.50 | $241,564.40 Payment Received | $60,391.10 | $12,573.13 Payment Received |
| **TOTAL** | $2,097,867.55 | $1,678,294.04 | $419,573.51 | $103,201.56 |

12.    As set forth above, S&S has received payments totaling $1,781,495.60

representing payment of eighty percent (80%) of the fees for professional services and one

hundred percent (100%) of the expenses requested by S&S for the period October 8, 2005

through January 31, 2006.

13.    Accordingly, the Debtors hereby seek approval of a total of $2,097,867.55

in fees during the Compensation Period. The Debtors hereby also seek approval of a total of

$103,201.56 in expenses for the Compensation Period. The total of the 20% holdback of fees for

the Compensation Period is $419,573.51, which is outstanding as of the date hereof.

14.    To the extent that time or disbursement charges for services rendered or

disbursements incurred relate to the Compensation Period, but were not processed prior to the

preparation of this Application, S&S reserves the right to request additional compensation for

such services and reimbursement of such expenses in a future fee application.

## Background

15.     On the Petition Date, each of the Debtors filed a voluntary petition in the Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") for relief under chapter 11 of the Bankruptcy Code.

16.     On October 17, 2005, the United States Trustee for the Southern District of New York appointed the Creditors' Committee. As of the date hereof, no request has been made for the appointment of a trustee or examiner in these cases.

17.     The Debtors have continued in possession of their respective properties and have continued to operate and manage their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

18.     Pursuant to an order of this Court dated November 4, 2005 (Docket No. 1376), the Debtors were authorized to retain S&S on a final basis as their special counsel to render legal services in the prosecution of these chapter 11 cases.

19.     S&S does not hold or represent any interest adverse to the estates, and is a disinterested person as that term is defined in section 101(14) of the Bankruptcy Code as modified by section 1107(b) of the Bankruptcy Code. S&S has previously filed affidavits with this Court attesting to its disinterestedness (Docket Nos. 49 and 845).

20.     No disclosure statement or plan of reorganization has been filed with this Court as of the date hereof. The Debtors have the exclusive right to file a chapter 11 plan through August 5, 2006 and the Debtors may exclusively solicit acceptances on such a plan through October 4, 2006.

## Summary of Services

21.     The Debtors' chapter 11 cases are large and complex. S&S has dedicated significant resources to help the Debtors finance and stabilize their ongoing business operations.

During the Compensation Period, S&S assisted – consistent with its role as 327(e) special

counsel and at the request of the Debtors' 327(a) restructuring counsel – in the preparation of

motions, applications, and other relevant documents on behalf of the Debtors.  As of the date

hereof, approximately six months from the commencement of these chapter 11 cases, there are

over 3452 docket entries for these cases.  These figures evidence the size of these chapter 11

cases and, accordingly, the magnitude of the professional services that these cases have

demanded.

        22.     During the Compensation Period, S&S spent significant time and

expended considerable efforts in advising Delphi with respect to its postpetition financing

facility (the "DIP Facility").  S&S also has been involved in certain other "first day" motions.

During the Compensation Period, S&S has devoted time and effort in assisting the Debtors with

retaining various other professionals and rendering services to the Debtors throughout these

chapter 11 cases.

        23.     In addition, S&S represents certain Debtors in connection with the

Litigation Matters with respect to numerous putative class actions in federal court alleging

violations of, among other things, the federal securities laws and the Employee Retirement

Income Securities Act of 1974 ("ERISA") and both federal and state derivative actions alleging,

among other things, breaches of various fiduciary duties.  The federal actions have been

transferred to the United States District Court for the Eastern District of Michigan for

coordinated or consolidated pretrial proceedings before Judge Gerald E. Rosen.  The federal and

state derivative actions have been administratively closed in light of the bankruptcy stay.  S&S

also represents Delphi Corporation with respect to an investigation by the United States

Securities and Exchange Commission ("SEC") in connection with issues relating to Other

Postemployment Benefits ("OPEB").

24.     Given the complexity of the cases, certain matters required the attention of

two or more S&S attorneys with expertise in different areas of law.  For example, attorneys in

S&S's bankruptcy and finance groups coordinated their efforts in preparing documents in

connection with the postpetition financing facility and S&S's litigation attorneys consult with

bankruptcy attorneys as required.

25.     To ensure that the legal fees were appropriate given the nature of the

matter or dispute at issue, attorneys with lower billing rates were assigned to handle certain

matters, such as researching and preparing initial drafts of documents.  In order to utilize S&S

attorneys in this cost-effective manner, more senior attorneys reviewed the work of junior

attorneys and, when necessary, meetings were held among attorneys to coordinate their efforts.

Absent meetings of this nature, all matters would have been handled by the senior attorney – at a

higher cost to the estate – who more often had direct contact with the Debtors and other parties in

interest and their respective counsel.

26.     To facilitate effective review of this Application, in accordance with the

UST Guidelines, S&S has utilized the following separate billing categories as appropriate:

Litigation Matters
    * Securities Class Action Litigation    Matter 20
    * Derivative Litigation    21
    * ERISA Class Action Litigation    22
    * SEC OPEB Investigation    23

Bankruptcy Matters
    * Business Issues/Operations    25
    * Case Administration    26
    * Claims Administration & Objections    27
    * DIP Financing    28
    * Employee Benefits/Pensions    30

| | |
|---|---|
| * Employment Applications & Objections | 31 |
| * Executory Contracts/Leases | 32 |
| * Fee Application & Objections | 33 |
| * First Day Matters | 34 |
| * Litigation | 36 |
| * Meetings of Creditors | 37 |
| * Relief From Stay | 40 |
| * Relief From Stay Proceedings | 41 |
| * Tax Issues | 42 |
| * Utilities Matters | 43 |
| * Strategic Planning | 44 |
| * European Financing Matters | 45 |
| * Expenses | 46 |
| * Intellectual Property | 47 |
| * Securities Advice | 48 |

27.    Set forth below is a brief summary of certain of the matters on which S&S spent a significant number of hours and it is not meant to be a detailed description of all of the work performed, nor does it necessarily reflect all of the separate billing categories established by S&S.  A complete summary of the fees attributable to each category is provided in Exhibit D hereto.  The time details which fully describe the day-to-day services provided by S&S, and the time expended performing such services in each of the categories, have been served upon those parties set forth in the Monthly Compensation Order and are available for review by any other interested party upon request to S&S.

<u>LITIGATION MATTERS</u>

A.  <u>Securities Class Action</u> (Fees: $258,877.35; Hours: 854.2)

- Drafted and submitted supplemental brief in support of motion to transfer federal actions for coordinated or consolidated pretrial proceedings.

- Prepared for and participated in oral argument on motion to transfer federal actions for coordinated or consolidated pretrial proceedings.

- Conducted legal research and drafted motion to dismiss Consolidated Amended Complaint.

- Coordinated with Debtors' counsel to ensure Debtors' continued compliance with document preservation obligations.

- Drafted necessary representation agreements for individual defendants affiliated with Debtors.

- Participated in numerous teleconferences and communications with Debtors' in-house Counsel concerning general operational issues related to the litigations.

B. <u>Derivative Lawsuits</u> (Fees: $17,137.80; Hours: 65.2)

- Drafted and submitted supplemental brief in support of motion to transfer federal actions for coordinated or consolidated pretrial proceedings.

- Prepared for and participated in oral argument on motion to transfer federal actions for coordinated or consolidated pretrial proceedings.

- Secured administrative closings of matters in light of the bankruptcy stay.

- Participated in numerous teleconferences and communications with Debtors' in-house Counsel concerning general operational issues related to the litigations.

C. <u>ERISA Class Action Litigation</u> (Fees: $27,593.10; Hours: 108.9)

- Drafted and submitted supplemental brief in support of motion to transfer federal actions for coordinated or consolidated pretrial proceedings.

- Prepared for and participated in oral argument on motion to transfer federal actions for coordinated or consolidated pretrial proceedings.

- Coordinated with Debtors' counsel to ensure Debtors' continued compliance with document preservation obligations.

- Reviewed and responded to plaintiffs' multiple document requests.

- Participated in numerous teleconferences and communications with Debtors' in-house Counsel concerning general operational issues related to the litigations.

D. <u>SEC OPEB Investigation</u> (Fees: $38,852.55; Hours: 130.6)

- Reviewed documents for production to the SEC and coordinated with counsel with respect to documents.

- Participated in numerous teleconferences and communications with Debtors' in-house Counsel concerning general operational issues related to the investigation.

### BANKRUPTCY MATTERS

E. <u>Business Issues/Operations</u> (Fees: $33,786.00; Hours: 67.7)

- Participated in numerous meetings and teleconferences with Debtors' management and counsel concerning general operational issues.

- Participated in meetings and teleconferences to develop operational strategies and restructure business plan.

- Advised the Debtors on issues related to directors and officers insurance policies including researching various issues and preparing a memorandum with respect to same.

- Prepared for and participated in meetings and teleconferences with board of directors.

F. <u>Debtor In Possession Financing</u> (Fees: $742,570.00; Hours: 1481.0)

- Rendered services in connection with obtaining interim and final approval from this Court of the DIP Facility in order to provide sufficient liquidity to stabilize the Debtors' businesses and fund their ongoing operations during these cases.

- Rendered advice to the Debtors with respect to the Debtors' use of and compliance with the DIP Facility.

- Drafted and negotiated a side letter to the DIP Facility.

- Prepared and organized DIP Facility closing deliverables.

- Advised the Debtor in connection with adequate protection and set-off issues.

- Responded to discovery requests from the ad hoc committee including the production of documents, drafting of responses to interrogatories and preparing for and defending various depositions.

- Negotiated and obtained amendments to the DIP Facility as necessary.

G. <u>Employment Applications and Objections</u> (Fees: $549,904.00; Hours: 1198.7)

- Advised the Debtors regarding the retention of various professionals including Ernst & Young, Deloitte & Touche, LLP and KPMG, to render services in connection with the reorganization of the Debtors' business and the prosecution of these chapter 11 cases.

- Drafted motions relating to the retention of various additional professionals including amendments to their retentions and supplemental filings.

- Participated in meetings and teleconferences to develop strategies to respond to the objection of the lead plaintiffs (the "<u>Lead Plaintiffs</u>") to the retention of Deloitte & Touche, LLP ("<u>D&T</u>").

- Conducted research regarding and prepared response to the Lead Plaintiffs' objection to the retention of D&T.

- Responded to discovery requests relating to the D&T retention application from the Lead Plaintiffs including the development of strategies to respond to deposition requests, drafting of a confidentiality agreement and preparation for and the defense of various depositions.

- Conducted research regarding and prepared Debtors' objection to the Lead Plaintiffs' motion to compel discovery including moving to quash the subpoena and for a protective order.

- Prepared for and conducted hearing on the contested D&T discovery motions.

- Prepared for and successfully prosecuted hearing on the retention motions at which this Court entered orders authorizing the retention of D&T, Ernst & Young and KPMG.

- Advised the Debtors regarding and participated in meetings and teleconferences to develop strategies to respond to the Lead Plaintiffs' appeal of the D&T retention order.

- Prepared Debtors' response to the Lead Plaintiffs' request to expedite the appeal of the D&T retention order.

H. <u>Executory Contracts</u> (Fees: $24,284.50; Hours: 71.1)

- Advised the Debtors regarding treatment of selected executory contracts, including characterization, assumption and rejection options and postpetition obligations.

- Advised the Debtors regarding the treatment of license agreements, including assumption and rejection options and compliance with postpetition obligations.

- Drafted motion to reject certain unexpired leases of personal property to which the Debtors were a party on the date of commencement of their chapter 11 cases. Prepare for hearing related thereto. Follow up on pick-up of equipment leased pursuant to rejected lease and options related thereto.

- Drafted motions to reject certain license agreements to which the Debtors were a party on the date of commencement of their chapter 11 cases. Prepare for hearings related thereto.

I. First Day Matters (Fees: $189,174.50; Hours: 438.6)

- Prepared for and participated in bridge hearing regarding the filing of the Debtors' chapter 11 cases.

- Prepared for and assisted in the conduct of the hearing on "first day" motions at which this Court entered various orders drafted by S&S authorizing, *inter alia* (i) joint administration of chapter 11 cases, (ii) extension of time to file schedules of assets and liabilities, schedules of executory contracts and unexpired leases, and statements of financial affairs, (iii) retention of S&S as special counsel to the Debtors, (iv) retention of FTI Consulting Inc. as restructuring and financial advisors to the Debtors, (v) retention of various legal and accounting professionals, (vi) retention of a claims and noticing agent, (vii) maintenance of existing bank accounts and business forms and continuation of centralized cash management system, (viii) payment of certain non-property taxes and authorizing and directing financial institutions to honor and process checks and transfers related to such payments, (ix) payment of certain prepetition shipping and delivery charges for goods in transit and customs duties, (x) payment of contractors and service providers in satisfaction of liens (xi) entry into, continued performance under and provision of credit support under derivative contracts and (xii) payment of prepetition obligations necessary to maintain current insurance coverage in effect.

- Revised and supplemented various exhibits to and proposed orders in connection with the "first day" motions.

J. Strategic Planning (Fees: $99,263.00; Hours: 180.4)

- Advised the Debtors regarding the filing of bankruptcy petitions for additional subsidiaries and prepared chapter 11 petitions for the filing of three additional entities and a motion for the joint administration of those entities.

- Conducted legal research and discussions with Debtors and Debtors' counsel regarding various litigation strategies including drafting and submitting supplemental brief in support of and preparing for and participating in oral argument on motion to transfer federal actions for coordinated or consolidated pretrial proceedings.

- Participated in drafting presentations to the Debtors' senior management regarding strategy and logistical considerations related to the filing of bankruptcy petitions and commencement of the chapter 11 cases.

28.    The professional services performed by S&S were necessary and appropriate to the administration of the Debtors' chapter 11 cases and were in the best interests of the Debtors and other parties in interest. Compensation for the services described above is commensurate with the complexity, importance, and nature of the problems, issues, or tasks involved.

29.    Pursuant to a separate arrangement between S&S and the Debtors those services performed in relation to the Litigation Matters were billed in accordance with the billing rates and procedures in effect for such matters prior to October 1, 2005, including the application of a 10% discount to the fees billed as well as expense discounts (the "Discounted Rate"). The Discounted Rate applies to those services performed in relation to the Litigation Matters through March 22, 2006.

30.    The professional services performed by S&S on behalf of the Debtors during the Compensation Period required an aggregate expenditure of 4,958.3 recorded hours by S&S's members, counsel, associates, and paraprofessionals. Of the aggregate time expended, 1,200.1 recorded hours were expended by partners and counsel of S&S, 3,099.4 recorded hours were expended by associates, and 658.8 recorded hours were expended by paraprofessionals of S&S. The professional services were performed with expedience and in an efficient manner.

31.     During the Compensation Period, S&S's hourly billing rates for attorneys ranged from $235.00 to $795.00 per hour. Allowance of compensation in the amount requested would result in a blended hourly billing rate for attorneys of approximately $462.37 (based on 4,299.5 recorded hours for attorneys at S&S's regular and negotiated billing rates in effect at the time of the performance of services). Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable bankruptcy cases in a competitive national legal market. As noted, attached hereto as Exhibit B is a schedule listing each S&S professional and paraprofessional who performed services in these cases during the Compensation Period, the hourly rate charged by S&S for services performed by each such individual, and the aggregate number of hours and charges by each such individual.

### Actual and Necessary Disbursements of S&S

32.     As set forth in Exhibit C hereto, S&S has disbursed $103,201.56 in expenses incurred in providing professional services during the Compensation Period. These expenses are reasonable and necessary in light of the size and complexity of the Debtors' cases. For example, in order for S&S to properly analyze and address the complex issues that have arisen in these chapter 11 cases, S&S attorneys performed considerable electronic research during the Compensation Period, all of which was necessary to facilitate the Debtors' reorganization and in the best interests of the Debtors' estates.

33.     The time constraints facing the Debtors, along with the number and complexity of tasks generated by these chapter 11 cases, have required S&S's attorneys and other employees to devote significant time during the evenings and weekends to perform legal services on behalf of the Debtors. Such services were essential to meet deadlines, timely respond to motions and objections, and to satisfy the ongoing demands of the Debtors' businesses and the administration of these complex chapter 11 cases.

34.     Consistent with firm policy, attorneys and other employees of S&S who worked late into the evenings or weekends were reimbursed for their reasonable meal costs and their cost for transportation from the office to home. S&S's regular practice is not to include components for those charges in overhead when establishing billing rates and to charge its clients for these and all other out-of-pocket disbursements incurred during the regular course of the rendition of services. The reimbursement amounts do not exceed those set forth in the Guidelines.

35.     Likewise, consistent with firm policy, given the time constraints imposed by the circumstances of these cases which required S&S attorneys and other employees to work late into the evenings and weekends, S&S has been required to utilize some overtime secretarial help, thereby incurring a certain amount of overtime charges.

36.     S&S charges all of its clients $0.18 per page for photocopying expenses, which is less than the $0.20 per page maximum permitted by the Guidelines. In compliance with the Guidelines S&S does not charge for in-coming facsimiles. With respect to out-going facsimile expenses, as permitted in the Guidelines, S&S charges $1.25 per page for domestic facsimile transmissions and $2.50 per page for international facsimile transmissions. These charges are intended to cover S&S's direct operating costs, which costs are not incorporated into the S&S hourly billing rates. Only clients who actually use services of the types set forth in Exhibit C hereto are charged for such services. The effect of including such expenses as part of the hourly billing rates would impose unfairly such costs upon clients who do not require extensive photocopying and other facilities and services.

37.     Pursuant to the Discounted Rate, S&S charges the Debtors $0.15 per page for photocopying performed in relation to the Litigation Matters as opposed to the $0.18 per page charged to other clients and the $0.20 per page maximum permitted by the Guidelines.

38.     In addition, because of the multiple locations of the Debtors' businesses, frequent long distance telephone calls were required.  On several occasions, overnight delivery of documents and other materials was required as a result of circumstances necessitating the use of such express services.  These disbursements are not included in S&S's overhead for the purpose of setting billing rates.  S&S has made every effort to minimize its disbursements in these cases.  The actual expenses incurred in providing professional services were absolutely necessary, reasonable, and justified under the circumstances to serve the needs of the Debtors, their estates, and creditors.

39.     Throughout these cases, S&S has expended a considerable effort to "self police" its fees by critically reviewing all time charges entered into its billing system.  S&S's vigilance in scrutinizing the time billed to the Debtors' has led to the voluntary reductions.

40.     To accommodate the Debtors, S&S has billed its non-working travel time at 50%, which results in a voluntary fee reduction of $12,171.75.  These voluntary reductions were taken on a monthly basis and are already incorporated into the exhibits hereto.

41.     Those fee reductions are in addition to efforts usually expended by S&S to ensure that its clients are not charged for unnecessary services.  In that regard, as is the firm's policy, S&S carefully managed staffing in a manner to avoid overstaffing and, where possible (after taking into consideration the nature and complexity of a matter or dispute), utilized attorneys with lower billing rates.

## The Requested Compensation Should Be Allowed

42.    Section 331 of the Bankruptcy Code provides for interim compensation of professionals and incorporates the substantive standards of section 330 to govern this Court's award of such compensation.  11 U.S.C. § 331.  Section 330 of the Bankruptcy Code, provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual, necessary services . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1).  Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded, the court shall consider the nature, extent and the value of such services, taking into account all relevant factors, including –
>
> the time spent on such services;
>
> the rates charged for such services;
>
> whether the services were necessary to the administration of, or beneficial at the time which the service was rendered toward the completion of, a case under this title;
>
> whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue or task addressed; and
>
> whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than in cases under this title.

11 U.S.C. § 330(a)(3).

43.    Applying these factors, S&S respectfully submits that the services for which it seeks compensation in this Application were beneficial and necessary to the Debtors' cases and reorganization.  Moreover, S&S submits that the compensation sought for these services is reasonable in light of the nature, extent and value of those services to the Debtor, its estate and all parties in interest.

44.    Throughout the Compensation Period, S&S worked diligently to anticipate obstacles to the Debtors' reorganization and to respond to the problems it faced -- from emergent crises to more mundane matters.  These services, in addition to the services more directly focused on the reorganization process, were necessary and beneficial to the Debtors' estate and were consistently performed in a timely manner commensurate with the complexity, importance and nature of the issues involved.  Accordingly, allowance of the compensation sought herein is warranted.

45.    In addition to time and labor devoted, other factors may be considered in awarding fees for legal services.  In considering the reasonableness of fees, courts often consider the standards established in In re First Colonial Corp. of America, 544 F.2d 1291 (5th Cir.), cert. denied, 431 U.S. 904 (1977), and then to determine what a reasonable fee would be under the circumstances.  See also D'Emanuele v. Montgomery Ward & Co., Inc., 904 F.2d 1379, 1383 (9th Cir. 1990); Kerr v. Screen Extras Guild, Inc., 526 F.2d 67, 70 (9th Cir. 1976).  Accordingly, these factors generally considered in determining the reasonableness of a fee application are: (i) the time and labor required, the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; (ii) the likelihood, if apparent or made known to the client, that the acceptance of the particular employment will preclude other employment by the lawyer; (iii) the fee customarily charged in the locality for similar services; (iv) the amount involved and the results obtained; (v) the time limitations imposed by the client or by circumstances; (vi) the nature and length of the professional relationship with the client; (vii) the experience, reputation and ability of the lawyer or lawyers performing the services; and (viii) whether the fee is fixed or contingent.  All of these factors justify the compensation sought herein.

NYDOCS03/795722.2

20

### No Duplication of Service Among Counsel

46.    S&S has developed a cooperative working relationship with other firms

retained by the Debtors, including, among others, Skadden, Arps, Slate, Meagher & Flom LLP,

Togut, Segal & Segal LLP, the Groom Law Group Chartered and O'Melveney & Myers LLP.

Because each firm is aware of each of the other's role and scope of services being provided to the

Debtors, S&S believes that no unnecessary duplication of services has occurred.  As a result, the

Debtors' law firms were able to provide the necessary legal services to the Debtors in an

expeditious and efficient manner.

### Review of Application by Debtors

47.    As provided in section II.A.5 of the UST Guidelines, the officer

designated by the Debtors to be responsible for such matters, David Sherbin, has been provided

with a copy of this Application.  Mr. Sherbin has approved the amounts requested for

compensation for professional services and reimbursement of actual and necessary expenses as

set out in this Application.

### Requirements of Local Rule 9013-1(b)

48.    Given that there are no novel issues of law presented herein and that the

legal authority for the relief being sought is set forth herein, S&S respectfully requests that this

Court waive the requirement that S&S file a memorandum of law in support of this Motion as

provided in Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy

Court for the Southern District of New York.

### No Prior Request

49.    No previous motion for the relief sought herein has been made to this or

any other court.

WHEREFORE S&S respectfully requests (i) allowance of compensation for professional services rendered during the Compensation Period in the amount of $2,097,867.55 and reimbursement for actual and necessary expenses S&S incurred during the Compensation Period in the amount of $103,201.56; (ii) that the allowance of such compensation for professional services rendered and reimbursement of actual and necessary expenses incurred be without prejudice to S&S's right to seek additional compensation for services performed and expenses incurred during the Compensation Period which were not processed at the time of this Application; and (iii) this Court grant S&S such other and further relief as is just.

Dated:    New York, New York
          April 27, 2006

By: _____

Douglas P. Bartner (DB-2301)
Andrew V. Tenzer (AT-2263)

SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York  10022
Telephone: (212) 848-4000
Facsimile:  (212) 848-7179

Special Counsel to the Debtors and
Debtors in Possession