HEARING DATE & TIME: JUNE 20, 2006 AT 10:00 A.M. (Eastern)
OBJECTIONS DUE: JUNE 13, 2006, AT 4:00 P.M. (Eastern)

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, et al., | ) | Case No. 05-44481(RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**FIRST INTERIM APPLICATION FOR COMPENSATION AND
REIMBURSEMENT OF EXPENSES OF WARNER STEVENS, L.L.P., AS CONFLICTS
COUNSEL TO THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS
FOR THE PERIOD OF NOVEMBER 10, 2005 THROUGH JANUARY 31, 2006**

TO THE HONORABLE ROBERT D. DRAIN, UNITED STATES BANKRUPTCY JUDGE:

This First Interim Application for Compensation and Reimbursement of Expenses (the "Application") is made by Warner Stevens, L.L.P. ("Warner Stevens"), and seeks compensation for services rendered and costs advanced by Warner Stevens, for the period of November 10, 2005 through January 31, 2006 (the "Reporting Period"), as Conflicts Counsel to the Official Committee of Unsecured Creditors for the above-captioned Debtors (the "Debtors"). In support of the Application, Warner Stevens respectfully represents as follows:

**I.   Jurisdiction and Venue**

1.   The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and 11 U.S.C. § 331. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. § 1409. The statutory predicates for the relief requested herein are sections 105(a), 330(a) and 331 of the United States Bankruptcy Code (the "Bankruptcy Code"). Pursuant to Local Guidelines, a certification regarding compliance with such guidelines is attached hereto as Exhibit "A."

## II. Background

2.      On October 8, 2005 (the "Petition Date"), Delphi Corporation and 38 affiliates (the "Debtors") commenced their reorganization cases by filing voluntary Chapter 11 petitions with this Court.  On October 14, 2005, three additional Debtors filed voluntary petitions.  The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.      On October 17, 2005, the United States Trustee for the Southern District of New York appointed the Official Committee of Unsecured Creditors for the Debtors' cases (the "Committee").

4.      At a meeting of the Committee held on or about November 10, 2005, the Committee voted to retain Warner Stevens as its Conflicts Counsel.

5.      On November 23, 2005, the Committee filed its Application for Order Under 11 U.S.C. §§ 327(a), 328 and 1103 and Fed.R.Bankr.P. 2014(a) Authorizing Employment and Retention of Warner Stevens, L.L.P., as Conflicts Counsel for the Official Committee of Unsecured Creditors (the "Employment Application").

6.      This Court's Final Order Under 11 U.S.C. §§ 327(a), 328 and 1103 and Fed.R.Bankr.P. 2014(a) Authorizing Employment and Retention of Warner Stevens, L.L.P., as Conflicts Counsel for the Official Committee of Unsecured Creditors, effective November 10, 2005, was entered in these bankruptcy cases on January 6, 2006 (the "Employment Order").  A copy of the Employment Application and Employment Order are attached hereto as Exhibit "B."

7.      No trustee or examiner has been appointed in the Debtors' Chapter 11 bankruptcy cases.

### III. Requested Compensation and Reimbursement

8. This Application is filed by Warner Stevens pursuant to 11 U.S.C. §§ 330 and 331, and Rule 2016(a) of the Federal Rules of Bankruptcy Procedure and in accordance with the Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Professionals (the "Interim Compensation Order"), dated November 4, 2005.

9. By this Application, Warner Stevens seeks the following relief:

   a. Approval of Professional Fees incurred for the Reporting Period in the amount of $322,376;

   b. Approval of Reimbursable Expenses incurred during the Reporting Period in the amount of $14,929.31; and

   c. Authorization for the Debtors to pay to Warner Stevens such Professional Fees and Reimbursable Expenses due and owing in the amount of $64,475.20 ($322,376 (fees) + $14,929.31 (expenses) less $272,830.11 (funds previously received – as addressed in paragraph 14 below)).

10. All of the professional services which are the subject of this Application were rendered by Warner Stevens exclusively at the request of the Committee and not for or at the request of any other person or entity.

11. No agreement exists, nor will any be made, to share any compensation received by Warner Stevens for its services on behalf of the Committee with any other person or firm.

12. All of the expenses for which Warner Stevens seeks reimbursement were actually and necessarily incurred by Warner Stevens in connection with its rendition of professional services to or for the Committee or in connection with obtaining Court approval of its employment.

13. As set forth in detail below, the services performed by Warner Stevens on behalf of the Committee have materially benefited the Debtors' chapter 11 estates and their creditors.

14. The Interim Compensation Order provides that professionals retained by order of the Court are permitted to submit monthly billings to the Debtors and, absent objection, 80% of the

professional fees incurred and 100% of the reimbursable expenses incurred are authorized to be paid pursuant to the Interim Compensation Order. Warner Stevens has submitted requests for monthly compensation and reimbursement of expenses and has received funds from the Debtors in these bankruptcy cases as follows:

| Month | Professional Fees Billed | Reimbursable Expenses Billed | Professional Fees Paid (80%) | Reimbursable Expenses Paid (100%) | Balance Due to Warner Stevens |
|---|---|---|---|---|---|
| **11/10-12/31, 2005** | $196,380.00 | $1,538.02 | $157,104.00 | $1,538.02 | $39,276.00 |
| **January 2006** | $125,996.00 | $13,391.29 | $100,796.80 | $13,391.29 | $25,199.20 |
| | | | | | |
| **TOTALS** | **$322,376.00** | **$14,929.31** | **$257,900.80** | **$14,929.31** | **$64,475.20** |

### IV.    Exhibits With Detail Of Fees And Expenses

15.    In the ordinary course of its business, Warner Stevens maintains records of time expended by attorneys and paralegals in rendering services to its clients. The time records are made contemporaneously with the rendition of professional services and are prepared contemporaneously by the professional who rendered the service.

16.    Warner Stevens also maintains contemporaneous records of all actual and necessary expenses incurred in connection with the rendition of professional services to its clients in the ordinary course of its business.

17.    The exhibits relating to the professional services performed and reimbursable expenses sought by Warner Stevens during the Reporting Period are as follows:

   a.   Exhibit "C" is a summary of the hours expended during the Reporting Period by each professional.

   b.   Exhibit "D" is a chronological statement, by Task Code, detailing all of the professional services rendered to the Committee during the Reporting Period, as transcribed from Warner Stevens' contemporaneous time records. The time records show the professional services rendered, the date on which the services were performed, the person who performed the services, and the amount of time spent performing the services.

  c. Exhibit "E" is a summary of the professional services rendered during the Reporting Period for each Task Code.

  d. Exhibit "F" is a statement detailing expenses incurred, which expenses are considered extraordinary and not included in Warner Stevens' overhead, for which approval of reimbursement is requested by this Application during the Reporting Period. Warner Stevens' policy regarding such extraordinary expenses is set forth in Section VI below.

### V. Summary Of Legal Services Performed By Warner Stevens

18. Set forth below are summary descriptions of the legal services performed by Warner Stevens during the Reporting Period on behalf of the Committee. The legal services are grouped together by specific tasks and arranged by a designated Task Code. Some of the legal services described in the following Task Codes pertain to matters which are ongoing and for which Warner Stevens continues to provide legal services. The time records for the legal services, in a chronological listing by Task Code, are set forth in Exhibit "D." These legal services were performed under the supervision of Michael D. Warner as lead conflicts counsel for the Committee.

**A. Bank of America Lien Review (BA)**

19. On November 11, 2005, Bank of America, N.A. ("Bank of America"), filed its Motion (I) To Provide Adequate Protection of Security Interests in Collateral and (II) To Terminate the Automatic Stay With Respect to Cash Collateral (the "Bank of America Motion").

20. In connection with the Bank of America Motion, the Committee requested Warner Stevens to undertake an analysis of Bank of America's liens against revenue generated by certain air charter agreements entered into by Delphi Automotive Systems Human Resources LLC ("Delphi HR"). Delphi HR leases two jet aircraft from Bank of America and the charter agreements and the revenue generated thereunder purportedly serve as collateral (the "Charter Collateral") for Delphi HR's obligations under the aircraft leases.

21.     As part of this assignment, Warner Stevens was first asked to negotiate with counsel for Bank of America regarding the proposed consent order that was to be entered in connection with the Bank of America Motion.  Warner Stevens reviewed the proposed consent order and, after discussions with counsel for Bank of America and the Debtors, drafted language for inclusion in the consent order that, among other protections for the Committee, provided the Committee with a thirty day period after the entry of the consent order to investigate, and challenge if necessary, Bank of America's asserted lien against the Charter Collateral.

22.     The Consent Order Resolving Motion by Bank of America, N.A., for Adequate Protection Replacement Liens was entered by the Court on January 12, 2006.

23.     On January 13, 2006, Bank of America also filed the Complaint of Bank of America, N.A., for a Declaratory Judgment with Respect to the Priority of Liens and Security Interests in Property of Delphi Automotive Systems Human Resources, LLC (the "Bank of America Complaint").  The terms of the final order approving the Debtors' DIP Financing prompted Bank of America to file the complaint in which Bank of America sought a declaration from the Court that it held a senior lien against, among other things, the Charter Collateral.

24.     The issues raised in the Bank of America Complaint are similar to the issues discussed in paragraph 20 above.

25.     In conducting its analysis of the issues raised in connection with Bank of America's asserted lien against the Charter Collateral, Warner Stevens reviewed extensive documentation provided by Bank of America with respect to the leases and the charter agreements, the attachment and perfection of the asserted lien, public records and relevant case law and state statutes.  After Warner Stevens concluded its legal research and analysis, and reported to the Committee its

conclusions, the decision was made not to proceed with a challenge, as provided under the terms of the consent order, to Bank of America's lien against the Charter Collateral.

26. Under the category of Bank of America Lien Review, Warner Stevens incurred 66.8 hours of professional time, which equates to $24,022 of legal fees.

**B. Deloitte & Touche Employment Review (DT)**

27. On November 23, 2005, the Debtors filed their Application for Order Under 11 U.S.C. §§ 327(a), 328(a) and 1107(b) Authorizing Employment and Retention of Deloitte & Touche LLP as Independent Auditors and Accountants to Debtors, Effective Nunc Pro Tunc to October 8, 2005.

28. Warner Stevens was asked by the Committee to review the application and to determine if there were any issues relevant to the Committee and unsecured creditors with respect to the terms of employment of Deloitte & Touche by the estates. After reviewing the employment application and proposed employment order, Warner Stevens advised the Committee of certain issues that needed to be addressed with the Debtors and Deloitte & Touche.

29. In addition, the Lead Plaintiffs in the consolidated securities class action titled *In re Delphi Corp. Securities Litigation*, Master File No. 1:05-CV-2637 (NRB) (SDNY) (the "Lead Plaintiffs") filed an objection to the employment of Deloitte & Touche by the estates. Warner Stevens reviewed the objection and advised the Committee of the nature and basis of the lengthy objection.

30. Warner Stevens, on behalf of the Committee, also met with the Office of the United States Trustee to discuss the issues raised by the proposed employment of Deloitte & Touche.

31. After numerous discussions with counsel to Deloitte & Touche and the Debtors and attempts to negotiate protections in the proposed order approving Deloitte & Touche's retention, the

parties were unable to agree on proposed language prior to the objection deadline. Therefore, Warner Stevens drafted and filed on December 28, 2005, the Committee's Limited Objection to Deloitte & Touche's employment application.

32.     After the filing of the Limited Objection, Warner Stevens, on behalf of the Committee, continued its negotiations with Deloitte & Touche's over the concerns raised in the Committee's Limited Objection, in particular the scope of the indemnity to be given by the Debtors to Deloitte & Touche. Prior to the hearing on the application, the parties were able to agree on acceptable language for inclusion in the proposed order. Warner Stevens appeared at the hearing on behalf of the Committee.

33.     The Order Under 11 U.S.C. §§ 327(a), 328(a) and 1107(b) Authorizing Employment and Retention of Deloitte & Touche LLP as Independent Auditors and Accountants to Debtors, Effective Nunc Pro Tunc to October 8, 2005, was entered on January 11, 2006 (the "Deloitte Employment Order").

34.     As a result of Warner Stevens efforts, the language added to the Deloitte Employment Order ensures that the employment of Deloitte & Touche by the estates post-petition will not convert any pre-petition indemnity claims Deloitte & Touche may have against the Debtors into post-petition claims or preclude the estates from pursuing avoidance actions against Deloitte & Touche based upon pre-petition payments made to Deloitte & Touche.

35.     Subsequent to entry of the Deloitte Employment Order, the Lead Plaintiffs filed a notice of appeal of the Deloitte Employment Order.

36.     The Committee determined that it was in the interests of the Committee and creditors that the Deloitte Employment Order be upheld on appeal. Warner Stevens has therefore reviewed the record on appeal as well as the Lead Plaintiffs' Opening Brief and drafted and filed on February

21, 2006, a Brief on behalf of the Committee. Warner Stevens is continuing to monitor the appeal and will participate where warranted.

37.     Under the category of Deloitte & Touche Employment Review, Warner Stevens incurred 60.2 hours of professional time, which equates to $25,629.50 of legal fees.

**C.     Employment Application (EA)**

38.     Within the category of Employment Application is time incurred by Warner Stevens in connection with seeking Court approval of Warner Stevens' employment by the Committee. Warner Stevens prepared and filed its application seeking employment as Conflicts Counsel for the Committee, as well as the form of proposed employment order. The Employment Application was filed with the Court on November 23, 2005 and the Employment Order was entered on January 6, 2006.

39.     Due to the size of these cases and the potential conflicts with the numerous parties involved, Warner Stevens expended a considerable amount of time reviewing its records and investigating connections with potentially interested parties to determine conflicts, if any, that might exist.

40.     In addition, after filing the Employment Application, Warner Stevens met with the Office of the United States Trustee to discuss the terms and scope of Warner Stevens' employment. As a result of these discussions with the Office of the United States Trustee, Warner Stevens modified the Employment Order prior to lodging with the Court.

41.     Also included in this category is time incurred in connection with appearing at the Court hearing on the Employment Application and in connection with preparing and filling supplemental declarations with the Court to disclose new client information.

42. Under the category of Employment Application, Warner Stevens incurred 29.5 hours of professional time, which equates to $8,232.50 of legal fees.

**D.     Fee Application (FA)**

43. Fees included in the category of Fee Application is time incurred by Warner Stevens in connection with its monthly fee requests for payment of professional fees and expenses in accordance with the Interim Compensation Order.

44. Warner Stevens incurred time drafting and serving its monthly fee requests. In addition, Warner Stevens incurred time reviewing the monthly time and expense records that were submitted with the fee requests and redacting such time entries where necessary to avoid disclosure of confidential information.

45. Under the category of Fee Application, Warner Stevens incurred 11.5 hours of professional time, which equates to $3,884 of legal fees.

**E.     General Committee Operations & Issues (GC)**

46. Time included in the category of General Committee Operations & Issues is the time and effort incurred by Warner Stevens on behalf of the Committee on tasks, including small and discreet projects that do not fit within any of the other more specific categories set forth herein.

47. In that regard, Warner Stevens incurred time in connection with participating in the weekly meetings held by the Committee and its professionals to discuss the matters and issues in the bankruptcy cases and to decide on the Committee's position and/or strategy with respect thereto. Except in situations where the physical presence of an attorney from Warner Stevens was needed, Warner Stevens has participated via the telephone and has limited the number of attorneys that have participated on the conference call. In connection with participating in such calls, attorneys at Warner Stevens have also incurred time in reviewing the proposed agenda for such meetings and the

memorandum circulated by other Committee professionals detailing the issues to be discussed and voted upon at the meeting.

48. In connection with the weekly Committee meetings, Warner Stevens prepared memoranda to the Committee providing summaries of issues being handled by Warner Stevens on behalf of the Committee and proposed recommendations when necessary. During the Committee meetings, attorneys at Warner Stevens would discuss the matters Warner Stevens was handling on behalf of the Committee, their status and answer any questions that Committee members had with respect to such matters.

49. Warner Stevens also incurred time in this category in connection with participating at the monthly meetings held between the Debtors and their professionals and the Committee and its professionals. Only one attorney from Warner Stevens participated in each such meeting.

50. Also included in this category is time incurred by Warner Stevens in reviewing pleadings filed with the Court and in coordinating, so as to avoid the duplication of effort, with the Committee's lead counsel the division of work and the handling of matters on which lead counsel had a potential conflict.

51. Under the category of General Committee Operations & Issues, Warner Stevens incurred 152.1 hours of professional time, which equates to $61,558 of legal fees.

F. **Secured Lender Lien Review (LR)[1]**

52. During this Reporting Period, Warner Stevens devoted the majority of its time and effort to representing the Committee in the category of Secured Lender Lien Review.

---

[1] Due to the nature of this investigation by Warner Stevens and the fact that the investigation is ongoing, the description of the efforts of Warner Stevens on behalf of the Committee will be more general than specific and will not explain in detail everything that Warner Stevens has examined or concluded with respect to the activities included in this category. Similarly, the details of certain time entries have been redacted.

53.   On behalf of the Committee, Warner Stevens was assigned the task of investigating the prepetition lending relationship by and among the Debtors, JPMorgan Chase Bank, N.A. ("JP Morgan"), and the Debtors' other prepetition lenders (collectively, the "Prepetition Lenders"). In particular, Warner Stevens was asked to (1) examine, analyze and challenge, if necessary, the validity, enforceability, priority or extent of the prepetition debt (the "Prepetition Debt") owing to the Prepetition Lenders pursuant to the terms of that certain 5-Year Third Amended and Restated Credit Agreement, dated as of June 14, 2005 (the "Prepetition Credit Agreement"), and the other documents executed in connection therewith, and the liens and security interests granted by the Debtors to secure the Prepetition Debt (the "Prepetition Liens"); (2) determine whether the Prepetition Lenders are under-secured or over-secured; and (3) determine, and prosecute, if necessary, any avoidance actions or other claims and/or defenses available to the Debtors' estates against the Prepetition Lenders related to the Prepetition Debt, the Prepetition Liens and/or the Prepetition Credit Agreement.

54.   In accordance with the Final DIP Financing Order entered in these cases, the Committee was initially given until January 16, 2006, to complete the tasks set forth in item (1) above and was given to until April 17, 2006, to complete the tasks set forth items (2) and (3) above.

55.   During the Reporting Period, Warner Stevens conducted an extensive review of documents, statutes and case law in its investigation to determine whether any challenge should be made to the Prepetition Debt or the Prepetition Liens or whether any causes of action exist for the Committee to pursue. This review and investigation continues today.

56.   In connection with this investigation, Warner Stevens requested and received from the Debtors and JP Morgan extensive documentation related to the prepetition lending relationship. Warner Stevens has reviewed and analyzed the loan agreements and closing documents which

evidence the $2.5 billion loan made to Delphi by the Prepetition Lenders and the collateral documents which provide for the asserted attachment and perfection of the Prepetition Liens.

57.   With respect to the issue of attachment and perfection, Warner Stevens reviewed and analyzed the guaranty and security agreement executed by Delphi and its subsidiaries, UCC financing statements for over thirty entities, control agreements, mortgages, legal opinions, perfection certificates, stock certificates and other documents which purport to grant and/or perfect the Prepetition Liens.

58.   As part of this analysis, Warner Stevens reviewed the Uniform Commercial Code as adopted in several states and researched the relevant case law and treatises interpreting the provisions of such statutes as they apply to the Prepetition Liens. In connection with its analysis, Warner Stevens also reviewed and researched other applicable non-bankruptcy law and documents that were relevant to this inquiry.

59.   After completing its initial analysis, Warner Stevens presented, in early January 2006, its preliminary conclusions to the Committee in the form of a detailed memorandum and presentation at a Committee meeting.

60.   After the conclusion of its meeting with the Committee, Warner Stevens met with counsel for JP Morgan to discuss the next steps in the process as the January 16, 2006, deadline for filing a complaint was approaching. As a result of these discussions, the parties stipulated to an extension of the January 16, 2006 deadline to the April 17, 2006 deadline.

61.   During the month of January 2006, Warner Stevens continued its investigation and analysis of the validity and perfection of the Prepetition Liens but also turned its attention to completing the tasks described in items (2) and (3) in paragraph 53 above. In this regard, Warner Stevens prepared, and requested from JP Morgan and the Debtors, on an informal basis, a more

extensive list of documents and materials in connection with this second part of the investigation. Whereas, most of the time captured during the Reporting Period for the category of Secured Lender Lien Review has involved analysis and research related to item (1), a portion of the time in this category relates to analysis and research related to items (2) and (3).

62. Under the category of Secured Lender Lien Review, Warner Stevens incurred 484.2 hours of professional time, which equates to $199,050 of legal fees.

63. A summary chart of the professional hours expended and the fees incurred for each of the categories listed above is attached hereto as Exhibit "E."

### VI.    Firm's Policy Regarding Expenses and Professional Billing

64. Exhibit "F" sets forth the expenses incurred by Warner Stevens during the Reporting Period for which reimbursement is sought in connection with its representation of the Committee. Warner Stevens's policy is not to charge for long distance telephone charges, incoming and outgoing facsimile transmissions, in-house photocopying and postage. Warner Stevens's policy with regard to other expenses incurred is as follows:

65. **Photocopying & Printing.** Warner Stevens uses its best efforts to employ outside copying / printing services for large projects and for those projects connected with mailing of notices to interested parties. When an outside service is utilized, the cost is charged to the estate without any mark-up thereon. In-house photocopying performed by Warner Stevens is provided at no charge to the client. Exhibit "F" states that Warner Stevens seeks reimbursement of $518.80 for photocopying and printing costs.

66. **Courier and Document Retrieval Services**. Warner Stevens uses courier and/or document retrieval services for delivery/retrieval of documents and for overnight delivery services.

No mark-up of the billing received by Warner Stevens is made. Exhibit "F" states that Warner Stevens seeks reimbursement of $1,396.55 for courier and document retrieval services.

67. **Electronic Legal Research**. Warner Stevens's policy is not to charge for expenses incurred for electronic legal research that are included as part of its Westlaw service plan. However, when Warner Stevens must conduct electronic legal research for matters outside the scope of its Westlaw service plan, Warner Stevens uses its best efforts to keep electronic legal research costs to a minimum. When electronic legal research costs are incurred by Warner Stevens that are charged in addition to its Westlaw service plan, the actual cost is charged to the client, with no mark-up thereon. Exhibit "F" states that Warner Stevens seeks reimbursement of $7,133.89 for electronic legal research. A significant portion of the charges reflected for Westlaw services is legal research related to state statutes, case law and legal treatises and periodicals that are not part of Warner Stevens' service plan, as well as online UCC searches.

68. **Travel**. Warner Stevens uses its best efforts to keep travel costs to a minimum when travel is necessary to adequately represent the client. When travel expenses are incurred by Warner Stevens during the ordinary course of its representation, the actual cost[2] is charged and no mark-up is made to the travel costs incurred by Warner Stevens. During the Reporting Period, it was necessary for Warner Stevens to incur travel expenses related to meetings with the Committee Members, the Debtors and attendance at hearings. Exhibit "F" states that Warner Stevens seeks reimbursement of $5,880.07 for travel related expenses.

---

[2] When air travel is required, Warner Stevens seeks reimbursement only for the cost of coach class airfare and does not bill the estates for travel time unless work on the cases is undertaken during such travel time.

## VII.  Interim Request for Compensation

Based upon the foregoing, Warner Stevens respectfully requests that the Court enter its Order approving interim compensation and reimbursement of expenses to Warner Stevens for the period from November 10, 2005 through January 31, 2006, as follows:

| | |
|---|---|
| Professional Fees | $322,376.00 |
| Reimbursable Expenses | $14,929.31 |
| Total Compensation | $337,305.31 |

Further, Warner Stevens requests that the Court enter its Order authorizing the Debtors to pay to Warner Stevens the remaining unpaid balance of the total compensation for the Reporting Period of $64,475.20 ($337,305.31 less application of funds received to date in the amount of $272,830.11).

Dated:  April 28, 2006        Respectfully submitted,

*/s/ MICHAEL D. WARNER*
_____
Michael D. Warner (MW-3381)
**WARNER STEVENS, L.L.P.**
301 Commerce Street, Suite 1700
Fort Worth, TX  76102
Telephone:    817.810.5250
Facsimile:    817.810.5255
Email:        mwarner@warnerstevens.com

CONFLICTS COUNSEL FOR THE OFFICIAL
COMMITTEE OF UNSECURED CREDITORS