IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                :

In re                                 :     Chapter 11
                                :

DELPHI CORPORATION, et al.,      :     Case No. 05-44481 (RDD)
                                :

                   Debtors.    :     (Jointly Administered)
                                :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

AFFIDAVIT OF SERVICE

      I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

      On April 21, 2006, I caused to be served the documents listed below (i) upon the parties listed on Exhibit A hereto via overnight delivery, (ii) upon the parties listed on Exhibit B hereto via electronic notification, and (iii) upon the parties listed on Exhibit C hereto via postage pre-paid U.S. mail:

1)   Motion for Order Under 11 U.S.C. § 363(b) and Fed.R.Bankr.P.6004 Authorizing Debtors' Entry into Agreements with Booz Allen Hamilton Inc (Docket No. 3319) [a copy of which is attached hereto as Exhibit D]

2)   Motion for Order Under 11 U.S.C. § 365 and Fed.R.Bankr.P.6006 Authorizing Rejection of OEM License and Supply Agreement with Inovise Medical, Inc. (Docket No. 3321) [a copy of which is attached hereto as Exhibit E]

3)   Notice of Presentment Of Order Under 11 U.S.C. Section 327(e) And 1107(b) And Fed. R. Bankr. P. 2014 Authorizing Employment And Retention Of Blake, Cassels & Graydon LLP As Canadian Counsel To Debtors Nunc Pro Tunc To January 9, 2006 (Docket No. 3329) [a copy of which is attached hereto as Exhibit F]

4)   Motion For Order Under Fed. R. Bankr. P. 9019 Authorizing And Approving Settlement Agreement With XM Satellite Radio Inc. (Docket No. 3337) [a copy of which is attached hereto as Exhibit G]

5)   Notice of Hearing on Motion for Approval, Pursuant to Federal Rule of Bankruptcy Procedure 9019, of Settlement Agreement with Furukawa Electric North America APD, Inc. (Docket No. 3347) [a copy of which is attached hereto as Exhibit H]

6)   Motion To Approve Stipulation And Agreed Order Between Delphi Corporation, Et Al. And Flextronics International Asia-Pacific Ltd., Et Al.

Regarding Adequate Protection Of Prepetition Setoff Rights (Docket No. 3348) [a copy of which is attached hereto as Exhibit I]

7)  Ex Parte Motion Under Bankruptcy Code Section 107(b) And Fed. R. Bankr. P. 9018(1) For Order Authorizing Debtors To File Under Seal Portions Of Motion For Order Under Fed. R. Bankr. P. 9019 Authorizing And Approving License Agreement With Denso Corporation In Settlement Of Patent Infringement Litigation (Docket No. 3355) [a copy of which is attached hereto as Exhibit J]

8)  Motion For Order Under Fed. R. Bankr. P. 9019 Authorizing And Approving Stipulations And Settlement Agreements With Certain Defendants In In Re Electrical Carbon Products Antitrust Litigation, MDL 1514 (Docket No. 3357) [a copy of which is attached hereto as Exhibit K]

9)  Motion For Order Under Fed. R. Bankr. P. 9019 Authorizing And Approving License Agreement With Denso Corporation In Settlement Of Patent Infringement Litigation (Docket No. 3358) [a copy of which is attached hereto as Exhibit L]

10) Notice of Presentment of Order Under 11 U.S.C. §§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 Authorizing Employment and Retention of Pagemill Partners, LLC as Financial Advisors to Debtors Nunc Pro Tunc to March 14, 2006 (Docket No. 3366) [a copy of which is attached hereto as Exhibit M]

11) Notice of Presentment of Order Under 11 U.S.C. §§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 Authorizing Employment and Retention of Mayer, Brown, Rowe & Maw LLP as Special Information Technology Outsourcing Counsel to Debtors Nunc Pro Tunc to February 1, 2006 (Docket No. 3368) [a copy of which is attached hereto as Exhibit N]

On April 21, 2006, I caused to be served the document listed below upon the parties listed on Exhibit O hereto via overnight delivery:

12) Motion for Order Under 11 U.S.C. § 363(b) and Fed.R.Bankr.P.6004 Authorizing Debtors' Entry into Agreements with Booz Allen Hamilton Inc (Docket No. 3319) [a copy of which is attached hereto as Exhibit D]

On April 21, 2006, I caused to be served the document listed below upon the parties listed on Exhibit P hereto via overnight delivery:

13) Motion for Order Under 11 U.S.C. § 365 and Fed.R.Bankr.P.6006 Authorizing Rejection of OEM License and Supply Agreement with Inovise Medical, Inc. (Docket No. 3321) [a copy of which is attached hereto as Exhibit E]

On April 21, 2006, I caused to be served the document listed below upon the parties listed on <u>Exhibit Q</u> hereto via overnight delivery:

14) Notice of Presentment Of Order Under 11 U.S.C. Section 327(e) And 1107(b) And Fed. R. Bankr. P. 2014 Authorizing Employment And Retention Of Blake, Cassels & Graydon LLP As Canadian Counsel To Debtors Nunc Pro Tunc To January 9, 2006 (Docket No. 3329) [a copy of which is attached hereto as Exhibit F]

On April 21, 2006, I caused to be served the document listed below upon the parties listed on <u>Exhibit R</u> hereto via overnight delivery:

15) Motion For Order Under Fed. R. Bankr. P. 9019 Authorizing And Approving Settlement Agreement With XM Satellite Radio Inc. (Docket No. 3337) [a copy of which is attached hereto as Exhibit G]

On April 21, 2006, I caused to be served the document listed below upon the parties listed on <u>Exhibit S</u> hereto via overnight delivery:

16) Notice of Hearing on Motion for Approval, Pursuant to Federal Rule of Bankruptcy Procedure 9019, of Settlement Agreement with Furukawa Electric North America APD, Inc. (Docket No. 3347) [a copy of which is attached hereto as Exhibit H]

On April 21, 2006, I caused to be served the document listed below upon the parties listed on <u>Exhibit T</u> hereto via overnight delivery:

17) Motion To Approve Stipulation And Agreed Order Between Delphi Corporation, Et Al. And Flextronics International Asia-Pacific Ltd., Et Al. Regarding Adequate Protection Of Prepetition Setoff Rights (Docket No. 3348) [a copy of which is attached hereto as Exhibit I]

On April 21, 2006, I caused to be served the document listed below upon the parties listed on <u>Exhibit U</u> hereto via overnight delivery:

18) Ex Parte Motion Under Bankruptcy Code Section 107(b) And Fed. R. Bankr. P. 9018(1) For Order Authorizing Debtors To File Under Seal Portions Of Motion For Order Under Fed. R. Bankr. P. 9019 Authorizing And Approving License Agreement With Denso Corporation In Settlement Of Patent Infringement Litigation (Docket No. 3355) [a copy of which is attached hereto as Exhibit J]

On April 21, 2006, I caused to be served the document listed below upon the parties listed on <u>Exhibit V</u> hereto via overnight delivery:

19) Motion For Order Under Fed. R. Bankr. P. 9019 Authorizing And Approving Stipulations And Settlement Agreements With Certain Defendants In In Re

Electrical Carbon Products Antitrust Litigation, MDL 1514 (Docket No. 3357) [a copy of which is attached hereto as Exhibit K];

On April 21, 2006, I caused to be served the document listed below upon the parties listed on <u>Exhibit W</u> hereto via overnight delivery:

20) Motion For Order Under Fed. R. Bankr. P. 9019 Authorizing And Approving License Agreement With Denso Corporation In Settlement Of Patent Infringement Litigation (Docket No. 3358) [a copy of which is attached hereto as Exhibit L];

On April 21, 2006, I caused to be served the document listed below upon the parties listed on <u>Exhibit X</u> hereto via overnight delivery:

21) Notice of Presentment of Order Under 11 U.S.C. §§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 Authorizing Employment and Retention of Pagemill Partners, LLC as Financial Advisors to Debtors Nunc Pro Tunc to March 14, 2006 (Docket No. 3366) [a copy of which is attached hereto as Exhibit M];

On April 21, 2006, I caused to be served the document listed below upon the parties listed on <u>Exhibit Y</u> hereto via overnight delivery:

22) Notice of Presentment of Order Under 11 U.S.C. §§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 Authorizing Employment and Retention of Mayer, Brown, Rowe & Maw LLP as Special Information Technology Outsourcing Counsel to Debtors Nunc Pro Tunc to February 1, 2006 (Docket No. 3368) [a copy of which is attached hereto as Exhibit N].

Dated: April 28, 2006

                                                    */s/ Evan Gershbein*
                                                Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 28th day of April, 2006, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature : ____*/s/ Sarah Elizabeth Frankel*_____

Commission Expires: ___*12/23/08*___

# EXHIBIT A

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-209-4801 | rstark@brownrudnick.com | Indenture Trustee |
| Capital Research and Management Company | Michelle Robson | 11100 Santa Monica Blvd | 15th Floor | Los Angeles | CA | 90025 | 310-996-6140 | 310-996-6091 | mllr@capgroup.com | Creditor Committee Member |
| Cohen Weiss & Simon | Bruce Simon | 330 W. 42nd Street | | New York | NY | 10036 | 212-356-0231 | 212-695-5436 | b.simon@cwsny.com | |
| Curtis, Mallet-Prevost, Cott & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2120966000 | 2126971559 | sreisman@cm-p.com | Counsel for Flextronics International USA, Inc. |
| Davis Polk & Wardwell | Donald Bernstein | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 | 212-450-3092 | donald.bernstein@dpw.com | Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2670 | sean.p.corcoran@delphi.com / karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | cschiff@flextronics.com | Counsel for Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel for Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trev.chambers@freescale.com | Creditor Committee Member |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel for Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-0928 | 212-751-0928 | sgross@hodgsonruss.com | Counsel for Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| Internal Revenue Service | Attn: Insolvency Department, Maria Valerio | 290 Broadway | 5th Floor | New York | NY | 10007 | 212-436-1038 | 212-436-1931 | mariavalerio@irs.gov | IRS |
| Internal Revenue Service | Attn: Insolvency Department | 477 Michigan Ave | Mail Stop 15 | Detroit | MI | 48226 | 313-628-3648 | 313-628-3602 | | Michigan IRS |
| IUE-CWA | Henry Reichard | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | hreichardiuecwa@aol.com | Creditor Committee Member |
| Jefferies & Company, Inc. | William O. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com, thomas.f.maher@chase.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | richard.duker@jpmorgan.com, gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | 212-270-4016 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation, EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation, EDS Information Services, LLC |
| Kurtzman Carson Consultants | James Le | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-751-1511 | 310-751-1561 | jle@kccllc.com | Noticing and Claims Agent; |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | UCC Professional |

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Law Debenture Trust of New York | Patrick J. Healy | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Daniel R. Fisher | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel for Recticel North America, Inc. |
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel for Recticel North America, Inc. |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 212735-8603 | 9175223103 | jmoldovan@morrisoncohen.com | |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Meyer LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Meyer LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov / elfe@pbgc.gov | Counsel for Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel for the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel for Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild Inc. | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel for Murata Electronics North |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-848-4000 | 212-848-7179 | dbartner@shearman.com / jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com / rtrust@stblaw.com / wrussell@stblaw.com | Prepetition Administrative Agent |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com / jlyonssh@skadden.com / rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafioti@skadden.com / tmatz@skadden.com | Counsel to the Debtor |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 3

4/26/2006 12:33 PM
Delphi Master Service List

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel for Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Tyco Electronics Corporation | MaryAnn Brereton, Assistant General Counsel | 60 Columbia Road | | Morristown | NJ | 7960 | 973-656-8365 | 973-656-8805 | | Creditor Committee Member |
| United States Trustee | Alicia M. Leonhard | 33 Whitehall Street | 21st Floor | New York | NY | 10004-2112 | 212-510-0500 | 212-668-2255 does not take service via fax | | United States Trustee |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel for the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

4/26/2006 12:33 PM
Delphi Master Service List

# EXHIBIT B

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Brown Rudnick Berlack Israels LLP | Robert J. Stark | Seven Times Square | | New York | NY | 10036 | 212-209-4800 | 212-209-4801 | rstark@brownrudnick.com | Indenture Trustee |
| Capital Research and Management Company | Michelle Robson | 11100 Santa Monica Blvd | 15th Floor | Los Angeles | CA | 90025 | 310-996-6140 | 310-996-6091 | mlfr@capgroup.com | Creditor Committee Member |
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126966000 | 2126971559 | sreisman@cm-p.com | Counsel for Flextronics International USA, Inc. |
| Davis Polk & Wardwell | Donald Bernstein | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-4092 | 212-450-3092 | donald.bernstein@dpw.com | Postpetition Administrative Agent |
| Delphi Corporation | Sean Corcoran, Karen Craft | 5725 Delphi Drive | | Troy | MI | 48098 | 248-813-2000 | 248-813-2670 | sean.p.corcoran@delphi.com / karen.j.craft@delphi.com | Debtors |
| Electronic Data Systems Corp. | Michael Nefkens | 5505 Corporate Drive MSIA | | Troy | MI | 48098 | 248-696-1729 | 248-696-1739 | mike.nefkens@eds.com | Creditor Committee Member |
| Flextronics International | Carrie L. Schiff | 305 Interlocken Parkway | | Broomfield | CO | 80021 | 303-927-4853 | 303-652-4716 | zschiff@flextronics.com | Counsel for Flextronics International |
| Flextronics International USA, Inc. | Paul W. Anderson | 2090 Fortune Drive | | San Jose | CA | 95131 | 408-428-1308 | | paul.anderson@flextronics.com | Counsel for Flextronics International USA, Inc. |
| Freescale Semiconductor, Inc. | Richard Lee Chambers, III | 6501 William Cannon Drive West | MD: OE16 | Austin | TX | 78735 | 512-895-6357 | 512-895-3090 | trey.chambers@freescale.com | Creditor Committee Member |
| FTI Consulting, Inc. | Randall S. Eisenberg | 3 Times Square | 11th Floor | New York | NY | 10036 | 212-2471010 | 212-841-9350 | randall.eisenberg@fticonsulting.com | Financial Advisors to Debtors |
| General Electric Company | Valerie Venable | 9930 Kincey Avenue | | Huntersville | NC | 28078 | 704-992-5075 | 866-585-2386 | valerie.venable@ge.com | Creditor Committee Member |
| Groom Law Group | Lonie A. Hassel | 1701 Pennsylvania Avenue, NW | | Washington | DC | 20006 | 202-857-0620 | 202-659-4503 | lhassel@groom.com | Counsel for Employee Benefits |
| Hodgson Russ LLP | Stephen H. Gross | 152 West 57th Street | 35th Floor | New York | NY | 10019 | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel for Hexcel Corporation |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | fgorman@honigman.com | Counsel to General Motors Corporation |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-7000 | 313-465-8000 | rweiss@honigman.com | Counsel to General Motors Corporation |
| IUE-CWA | Henry Reichard | 2360 W. Dorothy Lane | Suite 201 | Dayton | OH | 45439 | 937-294-7813 | 937-294-9164 | hreichard@iuecwa@aol.com | Creditor Committee Member |
| Jefferies & Company, Inc. | William Q. Derrough | 520 Madison Avenue | 12th Floor | New York | NY | 10022 | 212-284-2521 | 212-284-2470 | bderrough@jefferies.com | UCC Professional |
| JPMorgan Chase Bank, N.A. | Thomas F. Maher, Richard Duker, Gianni Russiello | 270 Park Avenue | | New York | NY | 10017 | 212-270-0426 | 212-270-0430 | thomas.f.maher@chase.com / richard.duker@jpmorgan.com / gianni.russello@jpmorgan.com | Postpetition Administrative Agent |
| JPMorgan Chase Bank, N.A. | Vilma Francis | 270 Park Avenue | | New York | NY | 10017 | 212-270-5484 | 212-270-4016 | vilma.francis@jpmorgan.com | Prepetition Administrative Agent |
| Kramer Levin Naftalis & Frankel LLP | Gordon Z. Novod | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | gnovod@kramerlevin.com | Counsel Data Systems Corporation, EDS Information Services, LLC |
| Kramer Levin Naftalis & Frankel LLP | Thomas Moers Mayer | 1177 Avenue of the Americas | | New York | NY | 10036 | 212-715-9100 | 212-715-8000 | tmayer@kramerlevin.com | Counsel Data Systems Corporation, EDS Information Services, LLC; Noticing and Claims Agent; |
| Kurtzman Carson Consultants | James Le | 12910 Culver Blvd. | Suite I | Los Angeles | CA | 90066 | 310-751-1511 | 310-751-1561 | jle@kccllc.com | UCC Professional |
| Latham & Watkins LLP | Robert J. Rosenberg | 885 Third Avenue | | New York | NY | 10022 | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | UCC Professional |
| Law Debenture Trust of New York | Daniel R. Fisher | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | daniel.fisher@lawdeb.com | Indenture Trustee |
| Law Debenture Trust of New York | Patrick J. Healy | 767 Third Ave. | 31st Floor | New York | NY | 10017 | 212-750-6474 | 212-750-1361 | patrick.healy@lawdeb.com | Indenture Trustee |
| McDermott Will & Emery LLP | David D. Cleary | 227 West Monroe Street | | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | dcleary@mwe.com | Counsel for Recticel North America, Inc. |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 3

4/26/2006 12:34 PM
Delphi Master Service List

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| McDermott Will & Emery LLP | Mohsin N. Khambati | 227 West Monroe Street | | Chicago | IL | 60606 | 312-372-2000 | 312-984-7700 | mkhambati@mwe.com | Counsel for Recticel North America, Inc. |
| McTigue Law Firm | J. Brian McTigue | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | bmctigue@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| McTigue Law Firm | Cornish F. Hitchcock | 5301 Wisconsin Ave. N.W. | Suite 350 | Washington | DC | 20015 | 202-364-6900 | 202-364-9960 | conh@mctiguelaw.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Mesirow Financial | Leon Szlezinger | 666 Third Ave | 21st Floor | New York | NY | 10017 | 212-808-8366 | 212-682-5015 | lszlezinger@mesirowfinancial.com | UCC Professional |
| Morrison Cohen LLP | Joseph T. Moldovan, Esq. | 909 Third Avenue | | New York | NY | 10022 | 2127358603 | 9175223103 | jmoldovan@morrisoncohen.com | Counsel for Blue Cross and Blue Shield of Michigan |
| Northeast Regional Office | Mark Schonfeld, Regional Director | 3 World Financial Center | Room 4300 | New York | NY | 10281 | 212-336-1100 | 212-336-1323 | newyork@sec.gov | Securities and Exchange Commission |
| Office of the New York State | Attorney General Eliot Spitzer | 120 Broadway | | New York City | NY | 10271 | 212-416-8000 | 212-416-6075 | ServeAG@oag.state.ny.us | New York Attorney General's Office |
| O'Melveny & Meyer LLP | Robert Siegel | 400 South Hope Street | | Los Angeles | CA | 90071 | 213-430-6000 | 213-430-6407 | rsiegel@omm.com | Special Labor Counsel |
| O'Melveny & Meyer LLP | Tom A. Jerman, Rachel Janger | 1625 Eye Street, NW | | Washington | DC | 20006 | 202-383-5300 | 202-383-5414 | tjerman@omm.com | Special Labor Counsel |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005 | 202-326-4020 | 202-326-4112 | garrick.sandra@pbgc.gov; elle@pbgc.gov | Counsel for Pension Benefit Guaranty Corporation |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K Street, N.W. | Suite 340 | Washington | DC | 20005-4026 | 2023264020 | 2023264112 | landy.ralph@pbgc.gov | Chief Counsel for the Pension Benefit Guaranty Corporation |
| Phillips Nizer LLP | Sandra A. Riemer | 666 Fifth Avenue | | New York | NY | 10103 | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel for Freescale Semiconductor, Inc., f/k/a Motorola Semiconductor Systems |
| Rothchild LLP | David L. Resnick | 1251 Avenue of the Americas | | New York | NY | 10020 | 212-403-3500 | 212-403-5454 | david.resnick@us.rothschild.com | Financial Advisor |
| Seyfarth Shaw LLP | Robert W. Dremluk | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | 2122185500 | 2122185526 | rdremluk@seyfarth.com | Counsel for Murata Electronics North |
| Shearman & Sterling LLP | Douglas Bartner, Jill Frizzley | 599 Lexington Avenue | | New York | NY | 10022 | 212-8484000 | 212-848-7179 | dbartner@shearman.com; jfrizzley@shearman.com | Local Counsel to the Debtors |
| Simpson Thatcher & Bartlett LLP | Kenneth S. Ziman, Robert H. Trust, William T. Russell, Jr. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2000 | 212-455-2502 | kziman@stblaw.com; rtrust@stblaw.com; wrussell@stblaw.com | Prepetition Administrative Agent |
| Skadden, Arps, Slate, Meagher & Flom LLP | John Wm. Butler, John K. Lyons, Ron E. Meisler | 333 W. Wacker Dr. | Suite 2100 | Chicago | IL | 60606 | 312-407-0700 | 312-407-0411 | jbutler@skadden.com; jlyonsch@skadden.com; rmeisler@skadden.com | Counsel to the Debtor |
| Skadden, Arps, Slate, Meagher & Flom LLP | Kayalyn A. Marafioti, Thomas J. Matz | 4 Times Square | P.O. Box 300 | New York | NY | 10036 | 212-735-3000 | 212-735-2000 | kmarafio@skadden.com; tmatz@skadden.com | Counsel to the Debtor |
| Spencer Fane Britt & Browne LLP | Daniel D. Doyle | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | ddoyle@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |

4/26/2006 12:34 PM
Delphi Master Service List

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Delphi Corporation
Master Service List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Spencer Fane Britt & Browne LLP | Nicholas Franke | 1 North Brentwood Boulevard | Tenth Floor | St. Louis | MO | 63105 | 314-863-7733 | 314-862-4656 | nfranke@spencerfane.com | Counsel for Movant Retirees and Proposed Counsel for The Official Committee of Retirees |
| Stevens & Lee, P.C. | Chester B. Salomon, Constantine D. Pourakis | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | 2123198500 | 2123198505 | cp@stevenslee.com cs@stevenslee.com | Counsel for Wamco, Inc. |
| Togut, Segal & Segal LLP | Albert Togut | One Penn Plaza | Suite 3335 | New York | NY | 10119 | 212-594-5000 | 212-967-4258 | altogut@teamtogut.com | Conflicts Counsel to the Debtors |
| Warner Stevens, L.L.P. | Michael D. Warner | 1700 City Center Tower II | 301 Commerce Street | Fort Worth | TX | 76102 | 817-810-5250 | 817-810-5255 | mwarner@warnerstevens.com | Proposed Conflicts Counsel for the Official Committee of Unsecured Creditors |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | jeff.tanenbaum@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | martin.bienenstock@weil.com | Counsel to General Motors Corporation |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8000 | 212-310-8007 | michael.kessler@weil.com | Counsel to General Motors Corporation |
| Wilmington Trust Company | Steven M. Cimalore | Rodney Square North | 1100 North Market Street | Wilmington | DE | 19890 | 302-636-6058 | 302-636-4143 | scimalore@wilmingtontrust.com | Creditor Committee Member/Indenture Trustee |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 3 of 3

4/26/2006 12:34 PM
Delphi Master Service List

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Airgas, Inc. | David Boyle | 259 Radnor-Chester Road, Suite 100 | P.O. Box 6675 | Radnor | PA | 19087-8675 | | 610-230-3064 | 310-687-1052 | david.boyle@airgas.com | Counsel for Airgas, Inc. |
| Ajamie LLP | Thomas A. Ajamie | 711 Louisiana | Suite 2150 | Houston | TX | 77002 | | 713-860-1600 | 713-860-1699 | tajamie@ajamie.com | Counsel for SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| Akebono Corporation (North America) | Alan Swietch | 34385 Twelve Mile Road | | Farmington Hills | MI | 48331 | | 248-489-7406 | 866-609-0888 | aswietch@akebono-usa.com | Vice President of Administration for Akebono Corporation |
| Akin Gump Strauss Hauer & Feld, LLP | Peter J. Gurfein | 2029 Century Park East | Suite 2400 | Los Angeles | CA | 90067 | | 310-552-6696 | 310-229-1001 | pgurfein@akingump.com | Counsel for Wamco, Inc. |
| Allen Matkins Leck Gamble & Mallory LLP | Michael S. Greger | 1900 Main Street | Fifth Floor | Irvine | CA | 92614-7321 | | 949-553-1313 | 949-553-8354 | mgreger@allenmatkins.com | Counsel for Kilroy Realty, L.P. |
| Alston & Bird, LLP | Craig E. Freeman | 90 Park Avenue | | New York | NY | 10016 | | 212-210-9400 | 212-922-3891 | craig.freeman@alston.com | Counsel for Cadence Innovation, LLC |
| Alston & Bird, LLP | Dennis J. Connolly; David A. Wender | 1201 West Peachtree Street | | Atlanta | GA | 30309 | | 404-881-7269 | 404-253-8554 | dconnolly@alston.com; dwender@alston.com | Counsel for Cadence Innovation, LLC |
| Ambrake Corporation | Ronald L. Jones | 300 Ring Road | | Elizabethtown | KY | 42701 | | 270-765-0208 | 270-234-2395 | jones@ambrake.com | Representative for Ambrake Corporation |
| American Axle & Manufacturing, Inc. | Steven R. Keyes | One Dauch Drive, Mail Code 6E-2-42 | | Detroit | MI | 48243 | | 313-758-4868 | | steven.keyes@aam.com | Representative for American Axle & Manufacturing, Inc. |
| Andrews Kurth LLP | Gogi Malik | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | gogimalik@andrewskurth.com | Counsel for ITW Mortgage Investments IV, Inc. |
| Andrews Kurth LLP | Monica S. Blacker | 1717 Main Street | Suite 3700 | Dallas | TX | 75201 | | 214-659-4400 | 214-659-4401 | mblacker@andrewskurth.com | Counsel for ITW Mortgage Investments IV, Inc. |
| Angelo, Gordon & Co. | Leigh Weizer | 245 Park Avenue | 26th Floor | New York | NY | 10167 | | 212-692-8251 | 212-867-6395 | lweizer@angelogordon.com | Counsel for Stanley Electric Sales of America, Inc. |
| Anglin, Flewelling, Rasmussen, Campbell & Trytten, LLP | Mark T. Flewelling | 199 South Los Robles Avenue | Suite 600 | Pasadena | CA | 91101-2459 | | 626-535-1900 | 626-577-7764 | mtf@afrct.com | Counsel for Stanley Electric Sales of America, Inc. |
| APS Clearing, Inc. | Andy Leinhoff | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | | 512-314-4416 | 512-314-4462 | aleinoff@amph.com | Counsel for APS Clearing, Inc. |
| APS Clearing, Inc. | Matthew Hamilton | 1301 S. Capital of Texas Highway | Suite B-220 | Austin | TX | 78746 | | 512-314-4416 | 512-314-4462 | mhamilton@amph.com | Counsel for APS Clearing, Inc. |
| Arent Fox PLLC | Mitchell D. Cohen | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Cohen.Mitchell@arentfox.com | Counsel for Pullman Bank and Trust Company |
| Arent Fox PLLC | Robert M. Hirsh | 1675 Broadway | | New York | NY | 10019 | | 212-484-3900 | 212-484-3990 | Hirsh.Robert@arentfox.com | Counsel for Pullman Bank and Trust Company |
| Arnall Golden Gregory LLP | Darryl S. Laddin | 171 17th Street NW | Suite 2100 | Atlanta | GA | 30363-1031 | | 404-873-8120 | 404-873-8121 | dladdin@agg.com | Counsel to Daimhinu (America Corp, d/ba KISS America Corp), SBC Telecommunications, Inc. (SBC of America) |
| Arnold & Porter LLP | Joel M. Gross | 555 Twelfth Street, N.W. | | Washington | D.C. | 20004-1206 | | 202-942-5999 | 202-942-5999 | joel_gross@porter.com | Counsel for CSX Transportation, Inc. |
| ATS Automation Tooling Systems Inc. | Carl Galloway | 250 Royal Oak Road | | Cambridge | Ontario | N3H 4R6 | Canada | 519-653-4483 | 519-650-6520 | cgalloway@atsautomation.com | Company |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | Kimberly J. Robinson | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | kim.robinson@bfkpn.com | Counsel for Motion Industries, Inc. |
| Barack, Ferrazzano, Kirschbaum Perlman, & Nagelberg LLP | William J. Barrett | 333 West Wacker Drive | Suite 2700 | Chicago | IL | 60606 | | 312-629-5170 | 312-984-3150 | william.barrett@bfkpn.com | Counsel for Motion Industries, Inc. |
| Barnes & Thornburg LLP | Alan K. Mills | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | alan.mills@btlaw.com | Counsel for Mays Chemical Company |
| Barnes & Thornburg LLP | John T. Gregg | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3930 | 626-742-3999 | john.gregg@btlaw.com | Counsel to Priority Health; Clarion Corporation of America |
| Barnes & Thornburg LLP | Mark R. Owens | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | mark.owens@btlaw.com | Counsel for Clarion Corporation of America |
| Barnes & Thornburg LLP | Michael K. McCrory | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | michael.mccrory@btlaw.com | Counsel for Gibbs Die Casting Corporation; Clarion Corporation of America |
| Barnes & Thornburg LLP | Patrick E. Mears | 300 Ottawa Avenue, NW | Suite 500 | Grand Rapids | MI | 49503 | | 616-742-3936 | 616-742-3999 | pmears@btlaw.com | Counsel to Armada Rubber Manufacturing Company, Bank of America Leasing & Leasing & Capital, LLC, & AutoCam Corporation |
| Barnes & Thornburg LLP | Wendy D. Brewer | 11 S. Meridian Street | | Indianapolis | IN | 46204 | | 317-236-1313 | 317-231-7433 | wendy.brewer@btlaw.com | Counsel for Gibbs Die Casting Corporation |
| Bartlett Hackett Feinberg P.C. | Frank F. McGinn | 155 Federal Street | | Boston | MA | 02110 | | 617-422-0200 | 617-422-0383 | ffm@bostonbusinesslaw.com | Counsel for Iron Mountain Information Management, Inc. |
| Bernstein Litowitz Berger & Grossman | Eileen McNerney | 1285 Avenue of the Americas | 9th Floor | New York | NY | 10019 | | 212-554-1485 | 212-554-1444 | eileen@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma, Public Employee's Retirement System of Mississippi; Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |

4/26/2006 12:35 PM
2002 lists

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Bernstein Litowitz Berger & Grossman | Hannah E. Greenwald | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1411 | 212554-1444 | hannah@blbglaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Bernstein Litowitz Berger & Grossman | John P. Coffey | 1285 Avenue of the Americas | | New York | NY | 10019 | | 212-554-1409 | 212554-1444 | | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Berry Moorman P.C. | James P. Murphy | 535 Griswold | Suite 1900 | Detroit | MI | 48226 | | 313-496-1200 | 313-496-1300 | sein@blbglaw.com | Counsel for Kamax L.P.; Optrex America, Inc. |
| Bialson, Bergen & Schwab | Kenneth T. Law, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | murphj@berrymoorman.com | Counsel for UPS Supply Chain Solutions, Inc. |
| Bialson, Bergen & Schwab | Lawrence M. Schwab, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | klaw@bbslaw.com | Counsel for UPS Supply Chain Solutions, Inc.; Solectron Corporation; Solectron De Mexico SA de CV; Solectron Invotronics; Coherent, Inc.; Veritas Software Corporation |
| Bialson, Bergen & Schwab | Patrick M. Costello, Esq. | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | lschwab@bbslaw.com | Solectron Corporation; Solectron de Mexico SA de CV; Solectron Invotronica and Coherent, Inc. |
| Bialson, Bergen & Schwab | Thomas M. Gaa | 2600 El Camino Real | Suite 300 | Palo Alto | CA | 94306 | | 650-857-9500 | 650-494-2738 | pcostello@bbslaw.com | Counsel to Veritas Software Corporation |
| Blank Rome LLP | Bonnie Glantz Fatell | Chase Manhattan Centre | 1201 Market Street, Suite 800 | Wilmington | DE | 19801 | | 302-425-6423 | 302-428-5110 | tgaa@bbslaw.com | Counsel for Special Devices, Inc. |
| Blank Rome LLP | Marc E. Richards | The Chrysler Building | 405 Lexington Avenue | New York | NY | 10174 | | 212-885-5000 | 212-885-5002 | fatell@blankrome.com | Counsel for DENSO International America, Inc. |
| Bodman LLP | Ralph E. McDowell | 100 Renaissance Center | 34th Floor | Detroit | MI | 48243 | | 313-393-7592 | 313-393-7579 | mrichards@blankrome.com | Counsel for Freudenberg-NOK General Partnership; Freudenberg-NOK, Inc.; Flexitech, Inc.; Vibracoustic de Mexico, S.A. de C.V.; Lear Corporation; American Axle & Manufacturing, Inc. |
| Bond, Schoeneck & King, PLLC | Camille W. Hill | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8100 | 315-218-8100 | rmcdowell@bodmanllp.com | Counsel for Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp. |
| Bond, Schoeneck & King, PLLC | Charles J. Sullivan | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | chill@bsk.com | Counsel for Diemolding Corporation |
| Bond, Schoeneck & King, PLLC | Stephen A. Donato | One Lincoln Center | 18th Floor | Syracuse | NY | 13202 | | 315-218-8000 | 315-218-8100 | csullivan@bsk.com | Counsel for Marquardt GmbH and Marquardt Switches, Inc.; Tessy Plastics Corp.; Diemolding Corporation |
| Bose McKinney & Evans LLP | Jeanette Eisan Hinshaw | 135 N. Pennsylvania Street | Suite 2700 | Indianapolis | IN | 46204 | | 317-684-5296 | 317-684-5173 | sdonato@bsk.com | Counsel for Decatur Plastics Products, Inc. and Elkenberry & Associates, Inc.; Lorentson Manufacturing, Company, Inc.; Lorentson Tooling, Inc.; L & S Tools, Inc.; Hewitt Tool & Die, Inc. |
| Boult, Cummings, Conners & Berry, PLC | Austin L. McMullen | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | ihinshaw@boselaw.com | Counsel for Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Boult, Cummings, Conners & Berry, PLC | Roger G. Jones | 1600 Division Street, Suite 700 | PO Box 34005 | Nashville | TN | 37203 | | 615-252-2307 | 615-252-6307 | amcmullen@bccb.com | Counsel for Calsonic Kansei North America, Inc.; Calsonic Harrison Co., Ltd. |
| Brown & Connery, LLP | Donald K. Ludman | 6 North Broad Street | | Woodbury | NJ | 08096 | | 856.812.8900 | 866.863.9933 | rjones@bccb.com | Counsel for SAP America, Inc. |
| Buchalter Nemer, A Professional Corporation | Shawn M. Christianson | 333 Market Street | 25th Floor | San Francisco | CA | 94105-2126 | | 415-227-0900 | 415-227-0770 | dludman@brownconnery.com | Counsel for Oracle USA, Inc.; Oracle Credit Corporation |
| | | | | | | | | | | schristianson@buchalter.com | |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 2 of 17

4/26/2006 12:35 PM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Burr & Forman LLP | Michael Leo Hall | 420 North Twentieth Street | Suite 3100 | Birmingham | AL | 35203 | | (205) 458-5367 | (205) 244-5651 | mhall@burr.com | Counsel for Mercedes-Benz U.S. International, Inc. |
| Cage Williams & Abelman, P.C. | Steven E. Abelman | 1433 Seventeenth Street | | Denver | CO | 80202 | | 303-295-0202 | | sabelman@cagewilliams.com | Counsel for United Power, Inc. |
| Cahill Gordon & Reindel LLP | Jonathan Greenberg | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 732-205-6777 | jonathan.greenberg@engelhart.com | Counsel for Engelhard Corporation |
| Cahill Gordon & Reindel LLP | Robert Usadi | 80 Pine Street | | New York | NY | 10005 | | 212-701-3000 | 212-269-5420 | rusadi@cahill.com | Counsel to Engelhard Corporation |
| Calinoff & Katz, Llp | Dorothy H. Marinis-Riggio | 140 East 45th Street | 17th Floor | New York | NY | 10017 | | 212-826-8800 | 212-644-5123 | | Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Aluminum Ellay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLs and Adell Plastics, Inc. |
| Carson Fischer, P.L.C. | Robert A. Weisberg | 300 East Maple Road | Third Floor | Birmingham | MI | 48009-6317 | | 248-644-4840 | 248-644-1832 | rweisberg@carsonfischer.com | Counsel for Cascade Die Casting Group, Inc. |
| Carter Ledyard & Milburn LLP | Aaron R. Cahn | 2 Wall Street | | New York | NY | 10005 | | 212-732-3200 | 212-732-3232 | cahn@clm.com | Counsel for STMicroelectronics, Inc. |
| Clark Hill PLC | Joel D. Applebaum | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | japplebaum@clarkhill.com | Counsel for BorgWarner Turbo Systems Inc.; Metaldyne Company, LLC |
| Clark Hill PLC | Seth A. Drucker | 500 Woodward Avenue | Suite 3500 | Detroit | MI | 48226-3435 | | 313-965-8300 | 313-965-8252 | sdrucker@clarkhill.com | Counsel for BorgWarner Turbo Systems Inc.; Metaldyne Company LLC |
| Clark Hill PLLC | Robert D. Gordon | 500 Woodward Avenue | Suite 3600 | Detroit | MI | 48226-3435 | | 313-965-8572 | 313-965-8252 | rgordon@clarkhill.com | Counsel for ATS Automation Tooling Systems Inc. |
| Cleary Gottlieb Steen & Hamilton LLP | Deborah M. Buell | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | mapfiling@cgsh.com | Counsel for Arneses Electricos Automotrices, S.A. de C.V.; Cordaflex, S.A. de C.V. |
| Cleary, Gottlieb, Steen & Hamilton LLP | James L. Bromley | One Liberty Plaza | | New York | NY | 10006 | | 212-225-2000 | 212-225-3999 | mapfiling@cgsh.com | Counsel for Bear, Stearns, Co. or Inc.; Citigroup, Inc.; Credit Suisse First Boston; Deutsche Bank Securities, Inc.; Goldman Sachs Group, Inc.; JP Morgan Chase Co.; Lehman Brothers, Inc.; Merrill Lynch & Co.; Morgan Stanley & Co., Inc. UBS Securities, LLC |
| Cohen & Grigsby, P.C. | Thomas D. Maxson | 11 Stanwix Street | 15th Floor | Pittsburgh | PA | 15222-1319 | | 412-297-4706 | 412-209-1837 | tmaxson@cohenlaw.com | Counsel for Nova Chemicals, Inc. |
| Cohen, Weiss & Simon LLP | Joseph J. Vitale | 330 West 42nd Street | | New York | NY | 10036 | | 212-356-0238 | 646-473-8238 | jvitale@cwsny.com | Counsel for International Union, United Automobile, Aerospace and Agriculture Implement Works of America (UAW) |
| Cohn Birnbaum & Shea P.C. | Scott D. Rosen, Esq. | 100 Pearl Street, 12th Floor | | Hartford | CT | 06103 | | 860-493-2200 | 860-727-0361 | srosen@cb-shea.com | Counsel for Floyd Manufacturing Co., Inc. |
| Colbert & Winstead, P.C. | Amy Wood Malone | 1812 Broadway | | Nashville | TN | 37203 | | 615-321-0555 | 615-321-9555 | amalone@cbshea.com | Counsel for Averitt Express, Inc. |
| Conlin, McKenney & Philbrick, P.C. | Bruce N. Elliott | 350 South Main Street | Suite 400 | Ann Arbor | MI | 48104 | | 734-971-9000 | 734-971-9001 | Elliott@cmplaw.com | Counsel to Brazeway, Inc. |
| Connolly Bove Lodge & Hutz LLP | Jeffrey C. Wisler, Esq. | 1007 N. Orange Street | P.O. Box 2207 | Wilmington | DE | 19899 | | 302-658-9141 | 302-658-0380 | jwisler@cblh.com | Counsel to ORIX Warren, LLC |
| Contrarian Capital Management, L.L.C. | Mark Lee, Janice Stanton, Bill Raine, Seth Lax | 411 West Putnam Avenue | Suite 225 | Greenwich | CT | 06830 | | 203-862-8200 | 203-629-1977 | mlee@contrariancapital.com; stanton@contrariancapital.com; wraine@contrariancapital.com; solax@contrariancapital.com | Counsel to Contrarian Capital Management, L.L.C. |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Sylvie J. Derrien | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | (230) 862-8231 937-223-8177 | (303) 629-1977 937-223-8705 | derrien@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Ronald S. Pretekin | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | derrien@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| Coolidge, Wall, Womsley & Lombard Co. LPA | Steven M. Wachstein | 33 West First Street | Suite 600 | Dayton | OH | 45402 | | 937-223-8177 | 937-223-6705 | Pretekin@coollaw.com | Counsel for Harco Industries, Inc.; Harco Brake Systems, Inc.; Dayton Supply & Tool Coompany |
| | | | | | | | | | | wachstein@coollaw.com | |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Cornell University | Nancy H. Pagliaro | Office of University Counsel | 300 CCC Building, Garden Avenue | Ithaca | NY | 14853-2601 | | 607-255-5124 | 607-254-3556 | nhp4@cornell.edu | Paralegal/Counsel for Cornell University |
| Covington & Burling | Susan Power Johnston | 1330 Avenue of the Americas | | New York | NY | 10019 | | 212-841-1005 | 646-441-9005 | sjohnston@cov.com | Special Counsel to the Debtor |
| Curtin & Heefner, LLP | Daniel P. Mazo | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | | Counsel for SFS Technologies, LLC; NSS Technologies, Inc.; SFS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtin & Heefner, LLP | Robert Szwajkos | 250 N. Pennsylvania Avenue | | Morrisville | PA | 19067 | | 215-736-2521 | 215-736-3647 | dpm@curtinheefner.com | Counsel for SFS Technologies, LLC; NSS Technologies, Inc.; SFS Technologies Waterford Company; Greer Stop Nut, Inc. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Andrew M. Thau | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-8898 | 917-368-8898 | rsz@curtinheefner.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | David S. Karp | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-6065 | 212-697-1559 | athau@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A de C.V.; Northfield Acquisition Co. |
| Curtis, Mallet-Prevost, Colt & Mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | | 212-696-6065 | 212-697-1559 | dkarp@cm-p.com | Counsel for Flextronics International, Inc., Flextronics International USA, Inc.; Multek Flexible Circuits, Inc.; Sheldahl de Mexico S.A de C.V.; Northfield Acquisition Co.; Flextronics Asia-Pacific Ltd.; Flextronics Technology (M) Sdn. Bhd |
| DaimlerChrysler Corporation | Kim Kolb | CIMS 485-13-32 | 1000 Chrysler Drive | Auburn Hills | MI | 48326-2766 | | 248-576-5741 | | sreisman@cm-p.com | Counsel for DaimlerChrysler Corporation, DaimlerChrysler Motors Company, LLC, DaimlerChrysler Canada, Inc. |
| Damon & Morey LLP | William F. Savino | 1000 Cathedral Place | 298 Main Street | Buffalo | NY | 14202-4096 | | 716-856-5500 | 716-856-5510 | krk4@daimlerchrysler.com | Counsel for Relco, Inc., The Durham Companies, Inc. |
| Daniels & Kaplan, P.C. | Jay Selanders | 2405 Grand Boulevard | Suite 900 | Kansas City | MO | 64108-2519 | | 816-221-3086 | 816-221-3006 | wsavino@damonmorey.com | Counsel for DaimlerChrysler Corporation, DaimlerChrysler Motors Company, LLC, DaimlerChrysler Canada, Inc. |
| Denso International America, Inc. | Carol Sowa | 24777 Denso Drive | | Southfield | MI | 48086 | | 248-372-8531 | 248-350-7772 | selanders@danielsandkaplan.com | Counsel to Denso International America, Inc. |
| Deputy Attorney General | Amina Maddox | R.J. Hughes Justice Complex | P.O. Box 106 | Trenton | NJ | 08625 | | 609-984-0183 | 609-292-6260 | carol_sowa@denso-diam.com | Deputy Attorney General - State of New Jersey |
| DiConza Law, P.C. | Gerard DiConza, Esq. | 630 Third Avenue, 7th Floor | | New York | NY | 10017 | | 212-682-4940 | 212-682-4942 | amina.maddox@dol.lps.state.nj.us | Counsel for Tyz-All Plastics, Inc.; Furukawa Electric North America APD |
| Dinsmore & Shohl LLP | John Persiani | 1900 Chemed Center | 255 East Fifth Street | Cincinnati | OH | 45202 | | 513-977-8200 | 513-977-8141 | gdiconza@dlawpc.com | Counsel for The Procter & Gamble Company |
| DLA Piper Rudnick Gray Cary US LLP | Richard M. Kremen, Maria Elena Chavez-Ruark | The Marbury Building | 6225 Smith Avenue | Baltimore | Maryland | 21209-3600 | | 410-580-3000 | 410-580-3001 | john.persiani@dinslaw.com | Counsel for Constellation NewEnergy, Inc. & Constellation NewEnergy - Gas Division, LLC |
| Drinker Biddle & Reath LLP | Andrew C. Kassner | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | richard.kremen@dlapiper.com | Counsel to Penske Truck Leasing Co., LP |
| Drinker Biddle & Reath LLP | David B. Aaronson | 18th and Cherry Streets | | Philadelphia | PA | 19103 | | 215-988-2700 | 215-988-2757 | andrew.kassner@dbr.com | Counsel to Penske Truck Leasing Co., LP. and Quaker Chemical Corporation |
| Duane Morris LLP | Margery N. Reed, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | david.aaronson@dbr.com | Counsel to ACE American Insurance Company |
| | | | | | | | | | | mnreed@duanemorris.com | |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Duane Morris LLP | Joseph H. Lemkin | 744 Broad Street | Suite 1200 | Newark | NJ | 07102 | | 973-424-2000 | 973-424-2001 | | Counsel for NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation; Nichicon (America) Corporation; Taiho Corporation of America, American Akaku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc./SL Tennessee, LLC; Holsden America Corporation and Samtech Corporation |
| Duane Morris LLP | Wendy M. Simkulak, Esq. | 30 South 17th Street | | Philadelphia | PA | 19103-4196 | | 215-979-1000 | 215-979-1020 | wmsimkulak@duanemorris.com | Counsel to ACE American Insurance Company |
| Electronic Data Systems Corporation | Ayala Hassell | 5400 Legacy Dr. | Mail Stop H3-3A-05 | Plano | TX | 75024 | | 212-715-9100 | 212-715-8000 | ayala.hassell@eds.com | Representative for Electronic Data Systems Corporation |
| Entergy Services, Inc. | Alan H. Katz | 7411 Highway 51 North | Ste. 444 | Southaven | MS | 38671 | | 248-827-4100 | 248-827-4106 | akatz@entergy.com | Company |
| Erman, Teicher, Miller, Zucker & Freedman, P.C. | David H. Freedman | 400 Galleria Officentre | | Southfield | MI | 48034 | | 248-827-4100 | 248-827-4106 | dfreedman@ermanteicher.com | Counsel for Dodri Prettl International LLC |
| Ettelman & Hochheiser, P.C. | Gary Ettelman | c/o Premium Cadillac | 77 Main Street | New Rochelle | NY | 10801 | | 516-227-6300 | 516-227-6307 | gettelman@eh-law.com | Counsel for Jon Ballin |
| Fagel Haber LLC | Gary E. Green | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | ggreen@fagelhaber.com | Counsel for Aluminum International, Inc. |
| Fagel Haber LLC | Lauren Newman | 55 East Monroe | 40th Floor | Chicago | IL | 60603 | | 312-346-7500 | 312-580-2201 | lnewman@fagelhaber.com | Counsel for Aluminum International, Inc. |
| Finkel Goldstein Rosenbloom & Nash LLP | Ted J. Donovan | 26 Broadway | Suite 711 | New York | NY | 10004 | | 212-344-2929 | 212-422-6836 | tdonovan@finkelgold.com | Counsel for Pillarhouse (U.S.A.) Inc. |
| Foley & Lardner LLP | Jill L. Murch | 321 North Clark Street | Suite 2800 | Chicago | IL | 60610-4764 | | 312-832-4500 | 312-832-4700 | jmurch@foley.com | Counsel for Kuss Corporation |
| Fox Rothschild LLP | Fred Stevens | 13 East 37th Street | Suite 800 | New York | NY | 10016 | | 212-682-7575 | 212-682-4218 | fstevens@foxrothschild.com | Counsel to M&G Plastic Products, Inc. |
| Fox Rothschild LLP | Michael J. Viscount, Jr. | 1301 Atlantic Avenue | Suite 400 | Atlantic City | NJ | 08401-7212 | | 609-348-4515 | 609-348-6834 | mviscount@foxrothschild.com | Counsel to M&G Plastic Products, Inc. |
| Frederick T. Rikkers | | 419 Venture Court | P.O. Box 930555 | Verona | WI | 53593 | | 608-848-6350 | 608-848-6357 | frikkers@rikkerslaw.com | Counsel for Southwest Metal Finishing, Inc. |
| Gazes LLC | Ian J. Gazes | 32 Avenue of the Americas | | New York | NY | 10013 | | 212-765-9000 | 212-765-9675 | ian@gazesllc.com | Counsel to Setech, Inc. |
| Gazes LLC | Eric Wainer | 32 Avenue of the Americas | Suite 1800 | New York | NY | 10013 | | 212-765-9000 | 212-765-9675 | office@gazesllc.com | Counsel to Setech, Inc. |
| Genovese Joblove & Battista, P.A. | Craig P. Rieders, Esq. | 100 S.E. 2nd Street | Suite 4400 | Miami | FL | 33131 | | 305-349-2300 | 305-349-2310 | crieders@gjb-law.com | Counsel for Ryder Integrated Logistics, Inc. |
| Gibbons, Del Deo, Dolan, Griffinger & Vecchione | David N. Crapo | One Riverfront Plaza | | Newark | NJ | 07102-5497 | | 973-596-4523 | 973-639-6244 | dcrapo@gibbonslaw.com | Counsel for Epcos, Inc. |
| Goldberg, Stinnett, Meyers & Davis | Merle C. Meyers | 44 Montgomery Street | Suite 2900 | San Francisco | CA | 94104 | | 415-362-5045 | 415-362-2392 | mmeyers@gsmdlaw.com | Counsel for Alps Automotive, Inc. |
| Goodwin Procter LLP | Allan S. Brilliant | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | abrilliant@goodwinprocter.com | Counsel for UGS Corp. |
| Goodwin Procter LLP | Craig P. Druehl | 599 Lexington Avenue | | New York | NY | 10022 | | 212-813-8800 | 212-355-3333 | cdruehl@goodwinprocter.com | Counsel for UGS Corp. |
| Gorlick, Kravitz & Listhaus, P.C. | Barbara S. Mehlsack | 17 State Street | 4th Floor | New York | NY | 10004 | | 212-269-2500 | 212-269-2540 | bmehlsack@gkllaw.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Goulston & Storrs, P.C. | Peter D. Bilowz | 400 Atlantic Avenue | | Boston | MA | 02110-333 | | 617-482-1776 | 617-574-4112 | pbilowz@goulstonstorrs.com | Counsel to Thermotech Company |
| Grant & Eisenhofer P.A. | Geoffrey C. Jarvis | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7000 | 302-622-7100 | | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Grant & Eisenhofer P.A. | Jay W. Eisenhofer | 45 Rockefeller Center | 650 Fifth Avenue | New York | NY | 10111 | | 212-755-6501 | 212-755-6503 | gjarvis@gelaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| | | | | | | | | | | jeisenhofer@gelaw.com | |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 5 of 17

4/26/2006 12:35 PM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Grant & Eisenhofer P.A. | Sharan Nirmul | 1201 North Market Street | Suite 2100 | Wilmington | DE | 19801 | | 302-622-7100 | 302-622-7100 | snirmul@gelaw.com | Counsel for Teachers Retirement System of Oklahoma, Public Employee's Retirement System of Mississippi, Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Gratz, Miller & Brueggeman, S.C. | Jill M. Hartley | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Gratz, Miller & Brueggeman, S.C. | Matthew R. Robbins | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | mrr@previant.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Gratz, Miller & Brueggeman, S.C. | Timothy C. Hall | 1555 N. RiverCenter Drive | Suite 202 | Milwaukee | WI | 53212 | | 414-271-4500 | 414-271-6308 | tch@previant.com | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10 |
| Graydon Head & Ritchey LLP | J. Michael Debbeler, Susan M. Argo | 1900 Fifth Third Center | 511 Walnut Street | Cincinnati | OH | 45202 | | 513-621-6464 | 513-651-3836 | | Counsel for Grote Industries; Batesville Tool & Die; PIA Group, Reliable Castings |
| Greensfelder, Hemker & Gale, P.C. | Cherie Macdonald J. Patrick Bradley | 10 S. Broadway | Suite 200 | St. Louis | MO | 63102 | | 314-241-9090 | 314-241-8624 | clm@greensfelder.com jpb@greensfelder.com | Counsel for ARC Automotive, Inc. |
| Guaranty Bank | Herb Reiner | 8333 Douglas Avenue | | Dallas | TX | 75225 | | 214-360-2702 | 214-360-1940 | herb.reiner@guarantygroup.com | Counsel for American Finance Group, Inc. dba Guaranty Capital Corporation |
| Halperin Battaglia Raicht, LLP | Alan D. Halperin Christopher J. Battaglia Julie D. Dyas | 555 Madison Avenue | 9th Floor | New York | NY | 10022 | | 212-765-9100 | 212-765-0964 | cbattaglia@halperinlaw.net ahalperin@halperinlaw.net jdyas@halperinlaw.net | Counsel to Pacific Gas Turbines Center, LLC and Chromalloy Gas Turbine Corporation; ARC Automotive, Inc. |
| Harris D. Leinwand | Harris D. Leinwand | 350 Fifth Avenue | Suite 2418 | New York | NY | 10118 | | 212-725-7338 | 212-244-6219 | hleinwand@aol.com | Counsel for Baker Hughes Incorporated; Baker Petrolite Corporation |
| Herrick, Feinstein LLP | Paul Rubin | 2 Park Avenue | | New York | NY | 10016 | | 212-592-1448 | 212-545-3360 | prubin@herrick.com | Counsel for Canon U.S.A., Inc. and Schmidt Technology GmbH |
| Hewlett-Packard Company | Anne Marie Kennelly | 3000 Hanover St., M/S 1050 | | Palo Alto | CA | 94304 | | 650-857-6902 | 650-852-8617 | anne.kennelly@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Glen Dumont | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-888-4750 | 908-888-4137 | glen.dumont@hp.com | Counsel for Hewlett-Packard Financial Services Company |
| Hewlett-Packard Company | Kenneth F. Higman | 2125 E. Katella Avenue | Suite 400 | Anaheim | CA | 92806 | | 714-940-7120 | 740-940-7539 | ken.higman@hp.com | Counsel to Hewlett-Packard Company |
| Hewlett-Packard Company | Sharon Petrosino | 420 Mountain Avenue | | Murray Hill | NJ | 07974 | | 908-898-4760 | 908-888-4133 | sharon.petrosino@hp.com | Counsel for Hewlett-Packard Financial Services Company |
| Hiscock & Barclay, LLP | J. Eric Charlton | 300 South Salina Street | PO Box 4878 | Syracuse | NY | 13221-4878 | | 315-425-2716 | 315-425-8576 | echarlton@hiscockbarclay.com | Counsel for GW Plastics, Inc. |
| Hodgson Russ LLP | Cheryl R. Storie | One M&T Plaza | | Buffalo | NY | 14203 | | 716-848-1275 | 716-849-0349 | cstorie@hodgsonruss.com | Counsel for Hexcel Corporation |
| Hodgson Russ LLP | Stephen H. Gross, Esq. | 230 Park Avenue | 17th Floor | New York | NY | 10169 | | 212-751-4300 | 212-751-0928 | sgross@hodgsonruss.com | Counsel for Hexcel Corporation |
| Hogan & Hartson L.L.P. | Audrey Moog | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5677 | 202-637-5677 | amoog@hhlaw.com | Counsel for Umicore Autocat |
| Hogan & Hartson L.L.P. | Edward C. Dolan | Columbia Square | 555 Thirteenth Street, N.W. | Washington | D.C. | 20004-1109 | | 202-637-5910 | 202-637-5910 | ecdolan@hhlaw.com | Counsel for Umicore Autocat Canada Corp. |
| Hogan & Hartson L.L.P. | Scott A. Golden | 875 Third Avenue | | New York | NY | 10022 | | 212-918-3000 | 212-918-3100 | sagolden@hhlaw.com | Counsel for XM Satellite Radio Inc. |
| Holme Roberts & Owen, LLP | Elizabeth K. Flaagan | 1700 Lincoln | Suite 4100 | Denver | CO | 80203 | | 303-861-7000 | 303-866-0200 | elizabeth.flaagan@hro.com | Counsel for Coors/Tek, Inc.; Corus, LP |
| Honigman, Miller, Schwartz and Cohn, LLP | Donald T. Baty, Jr. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7314 | 313-465-7315 | dbaty@honigman.com | Counsel for Fujitsu Ten Corporation of America |
| Honigman, Miller, Schwartz and Cohn, LLP | Robert B. Weiss, Frank L. Gorman | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | | 313-465-7000 | 313-465-8000 | rweiss@honigman.com fgorman@honigman.com | Counsel for General Motors Corporation |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 6 of 17

4/26/2006 12:35 PM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Honigman, Miller, Schwartz and Cohn, LLP | E. Todd Sable | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226 | | 313-465-7548 | 313-465-7549 | tsable@honigman.com | Counsel for Valeo Climate Control Corp.; Valeo Electrical Systems, Inc.; Motors and Actuators Division;Valeo Electrical Systems, Inc. - Wipers Division; Valeo Switches & Detection System, Inc. |
| Hunter & Schank Co. LPA | John J. Hunter | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | jhunter@hunterschank.com | Counsel for ZF Group North America Operations, Inc. |
| Hunter & Schank Co. LPA | Thomas J. Schank | One Canton Square | 1700 Canton Avenue | Toledo | OH | 43624 | | 419-255-4300 | 419-255-9121 | tomschank@hunterschank.com | Counsel for ZF Group North America Operations, Inc. |
| Hunton & Williams LLP | Michael P. Massad, Jr. | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-880-0011 | mmassad@hunton.com | Counsel for RF Monolithics, Inc. |
| Hunton & Williams LLP | Steven T. Holmes | Energy Plaza, 30th Floor | 1601 Bryan Street | Dallas | TX | 75201 | | 214-979-3000 | 214-979-3000 | sholmes@hunton.com | Counsel for RF Monolithics, Inc. |
| Hurwitz & Fine P.C. | Ann E. Evanko | 1300 Liberty Building | | Buffalo | NY | 14202 | | 716-849-8900 | 716-855-0874 | aee@hurwitzfine.com | Counsel for Ufe Tite Co., Inc. |
| Ice Miller | Ben T. Caughey | One American Square | Box 82001 | Indianapolis | IN | 46282-0200 | | 317-236-2100 | 317-236-2219 | Ben.Caughey@icemiller.com | Counsel for Sumco, Inc. |
| Infineon Technologies North America Corporation | Greg Bibbes | 1730 North First Street | M/S 11505 | San Jose | CA | 95112 | | 408-501-6442 | 408-501-2488 | greg.bibbes@infineon.com | General Counsel & Vice President for Infineon Technologies North America Corporation |
| Infineon Technologies North America Corporation | Jeff Gillespie | 2529 Commerce Drive | Suite H | Kokomo | IN | 46902 | | 765-454-2146 | 765-456-3836 | jeffery.gillispie@infineon.com | Global Account Manager for Infineon Technologies North America |
| International Union of Operating Engineers | Richard Griffin | 1125-17th Avenue, N.W. | | Washington | DC | 20036 | | 202-429-9100 | 202-778-2641 | griffin@iuoe.org | Counsel for International Brotherhood of Electrical Workers Local Unions No. 663; International Association of Machinists; AFL-CIO Tool and Die Makers Local Lodge 78, District 10; International Union of Operating Engineers Local Union Nos. 18, 101 and 832 |
| Jaffe, Raitt, Heuer & Weiss, P.C. | Paige E. Barr | 27777 Franklin Road | Suite 2500 | Southfield | MI | 48034 | | 248-351-3000 | 248-351-3082 | pbarr@jaffelaw.com | Counsel for Truzon Corporation |
| Jenner & Block LLP | Ronald R. Peterson | One IBM Plaza | | Chicago | IL | 60611 | | 312-222-9350 | 312-840-7381 | rpeterson@jenner.com | Counsel for SPX Corporation (Contech Division), Alcan Rolled Products-Ravenswood, LLC and Tennaco Inc |
| Jones Day | Scott J. Friedman | 222 East 41st Street | | New York | NY | 10017 | | 212-326-3939 | 212-755-7306 | sjfriedman@jonesday.com | Counsel for WL. Ross & Co. LLC |
| Katten Muchin Rosenman LLP | John P. Sieger, Esq. | 525 West Monroe Street | Suite 1800 | Chicago | IL | 60661 | | 312-902-5200 | 312-577-4733 | john.sieger@kattenlaw.com | Counsel to TDK Corporation America and MEMC Electronic Materials, Inc. |
| Kegler, Brown, Hill & Ritter Co., LPA | Kenneth R. Cookson | 65 East State Street | Suite 3200 | Columbus | OH | 43215 | | 614-426-5400 | 614-464-2634 | kcookson@keglerbrown.com | Counsel for Solution Recovery Services |
| Keller Rohrback L.L.P. | Lynn Lincoln Sarko, Carl Campen Laufenberg, Erin M. Riley | 1201 Third Avenue | Suite 3200 | Seattle | WA | 98101 | | 206-623-1900 | 206-623-3384 | lsarko@kellerrohrback.com claufenberg@kellerrohrback.com eriley@kellerrohrback.com | Counsel for Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Keller Rohrback P.L.C. | Gary A. Gotto | National Bank Plaza | 3101 North Central Avenue, Suite 900 | Phoenix | AZ | 85012 | | 602-248-0088 | 602-248-2822 | ggotto@kellerrohrback.com | Counsel for Neal Folck, Greg Bartell, Donald McEvoy, Irene Polito, and Thomas Kessler, on behalf of themselves and a class of persons similarly situated, and on behalf of the Delphi Savings-Stock Purchase Program for Salaried Employees in the United States and the Delphi Personal Savings Plan for Hourly-Rate Employees in the United States |
| Kelley Drye & Warren, LLP | Mark I. Bane | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | mbane@kelleydrye.com | Counsel for the Pension Benefit Guaranty Corporation |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Kelley Drye & Warren, LLP | Mark R. Somerstein | 101 Park Avenue | | New York | NY | 10178 | | 212-808-7800 | 212-808-7897 | msomerstein@kelleydrye.com | Counsel for the Pension Benefit Guaranty Corporation |
| Kennedy, Jennick & Murray | Larry Magarik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | lmagarik@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communications Workers of America |
| Kennedy, Jennick & Murray | Susan M. Jennik | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | sjennik@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communications Workers of America |
| Kennedy, Jennick & Murray | Thomas Kennedy | 113 University Place | 7th Floor | New York | NY | 10003 | | 212-358-1500 | 212-358-0207 | kennedy@kjmlabor.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers - Communications Workers of America |
| King & Spalding, LLP | George B. South, III | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | 212-556-2222 | gsouth@kslaw.com | Counsel for Martinrea International, Inc. |
| Kirkland & Ellis LLP | Geoffrey A. Richards | 200 East Randolph Drive | | Chicago | IL | 60601 | | 312-861-2000 | 312-861-2200 | grichards@kirkland.com | Counsel for Lunt Manufacturing Company |
| Kirkpatrick & Lockhart Nicholson Graham LLP | Edward M. Fox | 599 Lexington Avenue | | New York | NY | 10022 | | 212-536-4812 | 212-536-3901 | efox@klng.com | Counsel to Wilmington Trust Company, as Indenture trustee |
| Klett Rooney Lieber & Schorling | DeWitt Brown | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | 302-552-4200 | | dbrown@klettrooney.com | Counsel for Entergy |
| Kougiak, Wilkins, Griffiths & Dougherty CO., L.P.A. | Sam O. Simmerman | 4775 Munson Street N.W. | P.O. Box 36963 | Canton | OH | 44735-6963 | | 330-497-0700 | 330-497-4020 | sosimmerman@kwgd.com | Counsel for Millwood, Inc. |
| Kutchin & Rufo, P.C. | Edward D. Kutchin | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | ekutchin@kutchinrufo.com | Counsel for Parlex Corporation |
| Kutchin & Rufo, P.C. | Kerry R. Northrup | 155 Federal Street | 17th Floor | Boston | MA | 02110-1727 | | 617-542-3000 | 617-542-3001 | knorthrup@kutchinrufo.com | Counsel for Parlex Corporation |
| Lambert, Leser, Isackson, Cook & Guinta, P.C. | Susan M. Cook | 309 Davidson Building | PO Box 835 | Bay City | MI | 48707-0835 | | 989-893-3518 | | smcook@lambertleser.com | Counsel for Linamar Corporation |
| Latham & Watkins | Erika Ruiz | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | erika.ruiz@lw.com | UCC Professional |
| Latham & Watkins | Henry P. Baer, Jr. | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | henry.baer@lw.com | UCC Professional |
| Latham & Watkins | John W. Weiss | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | john.weiss@lw.com | UCC Professional |
| Latham & Watkins | Mark A. Broude | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1384 | 212-751-4864 | mark.broude@lw.com | UCC Professional |
| Latham & Watkins | Michael J. Riela | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | michael.riela@lw.com | UCC Professional |
| Latham & Watkins | Mitchell A. Seider | 885 Third Avenue | | New York | NY | 10022 | | 212-906-1200 | 212-751-4864 | mitchel.seider@lw.com | UCC Professional |
| Latham & Watkins | Robert Rosenberg | 885 Third Avenue | Suite 1000 | New York | NY | 10022-4834 | | 212-906-1370 | 212-751-4864 | robert.rosenberg@lw.com | UCC Professional |
| Lewis and Roca LLP | Rob Charles, Esq. | One South Church Street | Suite 700 | Tucson | AZ | 85701 | | 520-629-4427 | 520-879-4705 | rcharles@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Lewis and Roca LLP | Susan M. Freeman, Esq. | 40 North Central Avenue | Suite 1900 | Phoenix | AZ | 85004-4429 | | 602-262-5756 | 602-734-3824 | sfreeman@lrlaw.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Linear Technology Corporation | John England, Esq. | 1630 McCarthy Blvd. | | Milpitas | CA | 95035-7417 | | 408-432-1900 | 408-434-0507 | jengland@linear.com | Counsel to Linear Technology Corporation |
| Linebarger Goggan Blair & Sampson, LLP | Diane W. Sanders | 1949 South IH 35 (78741) | P.O. Box 17428 | Austin | TX | 78760-7428 | | 512-447-6675 | 512-443-5114 | austin.bankruptcy@publicans.com | Counsel to Cameron County, Brownsville ISD |
| Linebarger Goggan Blair & Sampson, LLP | Elizabeth Weller | 2323 Bryan Street | Suite 1600 | Dallas | TX | 75201 | | 214-880-0089 | 4692215002 | dallas.bankruptcy@publicans.com | Counsel for Dallas County and Tarrant County |
| Linebarger Goggan Blair & Sampson, LLP | John P. Dillman | P.O. Box 3064 | | Houston | TX | 77253-3064 | | 713-844-3478 | 713-844-3503 | houston_bankruptcy@publicans.com | Counsel in Charge for Taxing Authorities |
| Loeb & Loeb LLP | P. Gregory Schwed | 345 Park Avenue | | New York | NY | 10154-0037 | | 212-407-4000 | | gschwed@loeb.com | Counsel to Creditor The Interpublic Group of Companies, Inc. and Proposed Auditor Deloitte & Touche, LLP |
| Loeb & Loeb LLP | William M. Hawkins | 345 Park Avenue | | New York | NY | 10154 | | 212-407-4000 | 212-407-4990 | whawkins@loeb.com | Counsel for Industrial Ceramics Corporation |
| Lord, Bissell & Brook | Timothy W. Brink | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-1832 | 312-443-896- | tbrink@lordbissell.com | Counsel for Sedgwick Claims Management Services, Inc. |
| Lord, Bissell & Brook | Timothy S. McFadden | 115 South LaSalle Street | | Chicago | IL | 60603 | | 312-443-0370 | 312-896-6394 | tmcfadden@lordbissell.com | Counsel for Industrial Ceramics Corporation |
| Lord, Bissell & Brook LLP | Kevin J. Walsh | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-947-8304 | 212-947-1202 | kwalsh@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |

In re: Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 8 of 17

4/26/2006 12:35 PM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Lord, Bissel & Brook LLP | Rocco N. Covino | 885 Third Avenue | 26th Floor | New York | NY | 10022-4802 | | 212-812-8340 | 212-947-1202 | rcovino@lordbissell.com | Counsel to Sedgwick Claims Management Services, Inc. and Methode Electronics, Inc. |
| Lowenstein Sandler PC | Bruce S. Nathan | 1251 Avenue of the Americas | | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | | Counsel for Daewoo International (America) Corp. |
| Lowenstein Sandler PC | Ira M. Levee | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | bnathan@lowenstein.com | Counsel for Teachers Retirement System of Oklahoma, Public Employee's Retirement System of Mississippi; Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Lowenstein Sandler PC | Kenneth A. Rosen | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | ilevee@lowenstein.com | Counsel for Cerberus Capital Management, L.P. |
| Lowenstein Sandler PC | Michael S. Etkin | 1251 Avenue of the Americas | 18th Floor | New York | NY | 10020 | | 212-262-6700 | 212-262-7402 | krosen@lowenstein.com | Counsel for Teachers Retirement System of Oklahoma, Public Employee's Retirement System of Mississippi; Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Lowenstein Sandler PC | Scott Cargill | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | metkin@lowenstein.com | Counsel for Cerberus Capital Management, L.P. / AT&T Corporation |
| Lowenstein Sandler PC | Vincent A. D'Agostino | 65 Livingston Avenue | | Roseland | NJ | 07068 | | 973-597-2500 | 973-597-2400 | scargill@lowenstein.com | Counsel for AT&T Corporation |
| Lydon, Leibenhaut & Chappell, Ltd. | Erik G. Chappell | 5565 Airport Highway | Suite 101 | Toledo | OH | 43615 | | 419-867-8900 | 419-867-8909 | vdagostino@lowenstein.com | Counsel for Metro Fibres, Inc. |
| MacDonald, Illig, Jones & Britton LLP | Richard J. Parks | 100 State Street | Suite 700 | Erie | PA | 16507-1459 | | 814-870-7754 | 814-454-4647 | egc@toledolaw.com | Counsel for Ideal Tool Company, Inc. |
| Madison Capital Management | Joe Landen | 6143 South Willow Drive | Suite 200 | Greenwood Village | CO | 80111 | | 303-957-4254 | 303-957-2098 | rparks@mijb.com | Representative for Madison Capital Management |
| Margulies & Levinson, LLP | Jeffrey M. Levinson, Esq. Leah M. Caplan, Esq. | 30100 Chagrin Boulevard | Suite 250 | Pepper Pike | OH | 44124 | | 216-514-4935 | 216-514-4936 | jlandon@madisoncap.com jml@ml-legal.com lmc@ml-legal.com | Representative for Madison Capital Management / Counsel for Venture Plastics |
| Masstronarco & Jahn, P.C. | Victor J. Mastromarco, Jr. | 1024 North Michigan Avenue | P.O. Box 3197 | Saginaw | MI | 48605-3197 | | 989-752-1414 | | | Counsel for H.E. Services Company and Robert Blackie a/k/a Counsel to Cindy Palmer, Personal Representative to the Estate of Michael Palmer |
| Masuda Funai Eifert & Mitchell, Ltd. | Gary D. Santella | 203 North LaSalle Street | Suite 2500 | Chicago | IL | 60601-1262 | | 312-245-7500 | 312-245-7467 | vmastromarco@aol.com | Counsel for NDK America, Inc./NDK Crystal, Inc.; Foster Electric USA, Inc.; JST Corporation ; Nichicon (America) Corporation ; Tano Corporation of America, American Aikoku Alpha, Inc.; Sagami America, Ltd.; SL America, Inc.; SL Tennessee, LLC; Hosiden America Corporation and Samtech Corporation |
| Mayer, Brown, Rowe & Maw LLP | Jeffrey G. Tougas | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | gsantella@masudafunai.com | Counsel for Bank of America, N.A. |
| Mayer, Brown, Rowe & Maw LLP | Raniero D'Aversa, Jr. | 1675 Broadway | | New York | NY | 10019 | | 212-262-1910 | 212-506-2500 | jgtougas@mayerbrownrowe.com | Counsel for Bank of America, N.A. |
| McCarter & English, LLP | David J. Adler, Jr. Esq. | 245 Park Avenue, 27th Floor | | New York | NY | 10167 | | 212-609-6800 | 212-609-6921 | rdaversa@mayerbrownrowe.com | Counsel to Ward Products, LLC |
| McCarthy Tetrault LLP | John J. Salmas Lorne P. Salzman | 66 Wellington Street West | Suite 4700 | Toronto | Ontario | M5K 1E6 | | 416-362-1812 | 416-868-0673 | dadler@mccarter.com jsalmas@mccarthy.ca lsalzman@mccarthy.ca | Counsel for Themselves (McCarthy Tetrault LLP) |
| McDermott Will & Emery LLP | James M. Sullivan | 50 Rockefeller Plaza | | New York | NY | 10020 | | 212-547-5444 | 212-547-5444 | | Counsel to Linear Technology Corporation, National Semiconductor Corporation; Tintek Corporation |
| McDermott Will & Emery LLP | Stephen B. Selbst | 50 Rockefeller Plaza | | New York | NY | 10020 | | 212-547-5400 | 212-547-5444 | jmsullivan@mwe.com | Counsel for National Semiconductor Corporation |
| McDonald Hopkins Co., LPA | Jean R. Robertson, Esq. | 600 Superior Avenue, East | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sselbst@mwe.com | Counsel to Brush Engineered Materials |
| McDonald Hopkins Co., LPA | Scott N. Opincar, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | jrobertson@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |
| McDonald Hopkins Co., LPA | Shawn M. Riley, Esq. | 600 Superior Avenue, E. | Suite 2100 | Cleveland | OH | 44114 | | 216-348-5400 | 216-348-5474 | sopincar@mcdonaldhopkins.com sriley@mcdonaldhopkins.com | Counsel to Republic Engineered Products, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

4/26/2006 12:35 PM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| McElroy, Deutsch, Mulvaney & Carpenter, LLP | Jeffrey Bernstein, Esq. | Three Gateway Center | 100 Mulberry Street | Newark | NJ | 07102-4079 | | 973-622-7711 | 973-622-5314 | jbernstein@mdmc-law.com | Counsel to New Jersey Self-Insurers Guaranty Association |
| McGuirewoods LLP | Elizabeth L. Gunn | One James Center | 901 East Cary Street | Richmond | VA | 23219-4030 | | 804-775-1178 | 804-698-2186 | egunn@mcguirewoods.com | Counsel for Siemens Logistics Assembly Systems, Inc. |
| Meyer, Suozzi, English & Klein, P.C. | Hanan Kolko | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | hkolko@msek.com | Counsel for The International Union of Electronic, Salaried, Machine and Furniture Workers-Communications Workers of America |
| Meyer, Suozzi, English & Klein, P.C. | Lowell Peterson, Esq. | 1350 Broadway | Suite 501 | New York | NY | 10018 | | 212-239-4999 | 212-239-1311 | lpeterson@msek.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Meyers, Rodbell & Rosenbaum, P.A. | M. Evan Meyers | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | emeyers@mrrlaw.net | Counsel for Prince George County, Maryland |
| Meyers, Rodbell & Rosenbaum, P.A. | Robert H. Rosenbaum | Berkshire Building | 6801 Kenilworth Avenue, Suite 400 | Riverdale Park | MD | 20737-1385 | | 301-699-5800 | | rrosenbaum@mrrlaw.net | Counsel for Prince George County, Maryland |
| Miami-Dade County, FL | April Burch | 140 West Flagler Street | Suite 1403 | Miami | FL | 33130 | | 305-375-5314 | 305-375-1142 | aburch@miamidade.gov | Paralegal Collection Specialist for Miami-Dade County |
| Michael Cox | Michael Cox | Cadillac Place | 3030 W. Grand Blvd, Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | | Attorney General for State of Michigan, Department of Treasury |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Michael Cox | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | miag@michigan.gov | Attorney General for Worker's Compensation Agency |
| Michigan Department of Labor and Economic Growth, Worker's Compensation Agency | Dennis J. Raterink | PO Box 30736 | | Lansing | MI | 48909-7717 | | 517-373-1820 | 517-373-2129 | raterinkd@michigan.gov | Assistant Attorney General for Worker's Compensation Agency |
| Miles & Stockbridge, P.C. | Kerry Hopkins | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | khopkins@milesstockbridge.com | Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Aluminum Elkay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miles & Stockbridge, P.C. | Thomas D. Renda | 10 Light Street | | Baltimore | MD | 21202 | | 410-385-3418 | 410-385-3700 | trenda@milesstockbridge.com | Counsel for Computer Patent Annuities Limited Partnership, Hydro Aluminum North America, Inc., Hydro Aluminum Adrian, Inc., Hydro Aluminum Precision Tubing NA, LLC, Hydro Aluminum Elkay Enfield Limited, Hydro Aluminum Rockledge, Inc., Norsk Hydro Canada, Inc., Emhart Technologies LLL and Adell Plastics, Inc. |
| Miller Johnson | Thomas P. Sarb / Robert D. Wolford | 250 Monroe Avenue, N.W. | Suite 800, PO Box 306 | Grand Rapids | MI | 49501-0306 | | 616-831-1748 / 616-831-1726 | 616-988-1748 / 616-988-1726 | sarbt@millerjohnson.com / wolfordr@millerjohnson.com | Counsel to Prétigeon & Clay, Inc. |
| Miller, Canfield, Paddock and Stone, P.L.C. | Timothy A. Fusco | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8435 | 313-496-7997 | fusco@millercanfield.com | Counsel for Niles USA Inc.; Techcentral, LLC; The Bantech Group, Inc.; Fischer Automotive Systems |
| Miller, Canfield, Paddock and Stone, P.L.C. | Jonathan S. Green | 150 W. Jefferson Avenue | Suite 2500 | Detroit | MI | 48226 | | 313-496-8452 | 313-496-7997 | greenj@millercanfield.com | Counsel for Wells Operating Partnership, LP |
| Mintz, Levin, Cohn, Ferris Glovsky and Popeo, P.C. | Paul J. Ricotta | One Financial Center | | Boston | MA | 02111 | | 617-542-6000 | 617-542-2241 | pjricotta@mintz.com | Counsel for Hitachi Automotive Products (USA), Inc. and Concoria Pasubio |
| Mintz, Levin, Cohn, Ferris Glovsky and Popeo, P.C. | Stephanie K. Hoos | The Chrysler Center | 666 Third Avenue | New York | NY | 10017 | | 212-935-3000 | 212-983-3115 | skhoos@mintz.com | Counsel of Hitachi Automotive Products (USA), Inc. and Concoria Pasubio |
| Molex Connector Corp | Jeff Ott | 2222 Wellington Ct. | | Lisle | IL | 60532 | | 630-527-4254 | 630-512-8610 | Jeff.Ott@molex.com | Counsel for Molex Connector Corp |

In re: Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 10 of 17

4/26/2006 12:35 PM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Montgomery, McCracken, Walker & Rhoads, LLP | Laurie A. Krepto | 123 South Broad Street | | Philadelphia | PA | 19109 | | 215-772-1500 | 215-772-7620 | lkrepto@mmwr.com | Counsel for AMEC Earth & Environmental, Inc. |
| Morgan, Lewis & Bockius LLP | Andrew D. Gottfried | 101 Park Avenue | | New York | NY | 10178-0060 | | 212-309-6000 | 212-309-6001 | agottfried@morganlewis.com | Counsel for ITT Industries, Inc.; Hitachi Chemical (Singapore), Ltd. |
| Morgan, Lewis & Bockius LLP | Menachem O. Zelmanovitz | 101 Park Avenue | | New York | NY | 10178 | | 212-309-6000 | 212-309-6001 | mzelmanovitz@morganlewis.com | Counsel for Hitachi Chemical (Singapore) Pte. Ltd. |
| Morgan, Lewis & Bockius LLP | Richard W. Esterkin, Esq. | 300 South Grand Avenue | | Los Angeles | CA | 90017 | | 213-612-1163 | 213-612-2501 | resterkin@morganlewis.com | Counsel for Sumitomo Corporation |
| Morit Hock Hamroff & Horowitz LLP | Leslie Ann Berkoff | 400 Garden City Plaza | | Garden City | NY | 11530 | | 516-873-2000 | | lberkoff@morithock.com | Counsel for Standard Microsystems Corporation and its direct and indirect subsidiaries Oasis SiliconSystems AG and SMSC INA Automotive, LLC (successor-in-interest to Oasis Silicon Systems, Inc.) |
| Morris, Nichols, Arsht and Tunnell | Robert J. Dehney | PO Box 1347 | | Wilmington | DE | 19899-1347 | | 302-658-9200 | 302-658-3989 | rdehney@mnat.com | Counsel for Chicago Miniature Optoelectronic Technologies, Inc. |
| Morrison Cohen LLP | Joseph T. Moldovan Michael R. Dal Lago | 909 Third Avenue | | New York | NY | 10022 | | 212-735-8603 212-735-8757 | 917-522-3103 917-522-3157 | jmoldovan@morrisoncohen.com mdallago@morrisoncohen.com | Counsel to Blue Cross and Blue Shield of Michigan |
| Munsch Hardt Kopf & Harr, P.C. | Raymond J. Urbanik, Esq., Joseph J. Wielebinski, Esq. and Davor Rukavina, Esq. | 3800 Lincoln Plaza | 500 North Akard Street | Dallas | RX | 75201-6659 | | 214-855-7590 214-855-7561 214-855-7587 | 214-855-7584 | rurbanik@munsch.com jwielebinski@munsch.com drukavina@munsch.com | Counsel for Texas Instruments Incorporated |
| Nantz, Litowich, Smith, Girard & Hamilton. | Sandra S. Hamilton | 2025 East Beltline, S.E. | Suite 600 | Grand Rapids | MI | 49546 | | 616-977-0077 | 616-977-0529 | sandy@nlsg.com | Counsel for Lankler Diversified Industries, Inc. |
| Nathan, Neuman & Nathan, P.C. | Kenneth A. Nathan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | Knathan@nathanneuman.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Elkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Elkin Management Services, Inc. and Elkin Real Properties |
| Nathan, Neuman & Nathan, P.C. | Susanna C. Brennan | 29100 Northwestern Highway | Suite 260 | Southfield | MI | 48034 | | 248-351-0099 | 248-351-0487 | | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Elkin Equities, Inc.; 1401 Troy Associates LP; Brighton Limited Partnership; DPS Information Services, Inc.; Elkin Management Services, Inc. and Elkin Real Properties |
| National City Commercial Capital | Lisa M. Moore | 995 Dalton Avenue | | Cincinnati | OH | 45203 | | 513-455-2390 | 866-298-4481 | sbrennan@nathanneuman.com lisa.moore@nationalcity.com | Vice President and Senior Counsel for National City Commercial Capital |
| Nelson Mullins Riley & Scarborough | George B. Cauthen | 1320 Main Street, 17th Floor | PO Box 11070 | Columbia | SC | 29201 | | 803-7255-9425 | 803-256-7500 | george.cauthen@nelsonmullins.com | Counsel for Datwyler Rubber & Plastics, Inc.; Datwyler i/o devices (Americas), Inc.; Fcomtal Tube (USA), Inc. |
| Nix, Patterson & Roach, L.L.P. | Bradley E. Beckworth | 205 Linda Drive | | Dangerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | bbeckworth@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |

In re: Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 11 of 17

4/26/2006 12:35 PM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Nix, Patterson & Roach, L.L.P. | Jeffrey J. Angelovich | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | jangelovich@nixlawfirm.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Nix, Patterson & Roach, L.L.P. | Susan Whatley | 205 Linda Drive | | Daingerfield | TX | 75638 | | 903-645-7333 | 903-645-4415 | | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raifeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Noma Company and General Chemical Performance Products LLC | James Imbriaco | 90 East Halsey Road | | Parsippany | NJ | 07054 | | 973-884-6952 | 973-515-3244 | jimbriaco@gentek-global.com | Counsel for Chapter 13 Trustee |
| Norris, McLaughlin & Marcus | Elizabeth L. Abdelmaseih, Esq. | 721 Route 202-206 | P.O. Box 1018 | Somerville | NJ | 08876 | | 908-722-0700 | 908-722-0755 | eabdelmaseih@nmmlaw.com | Counsel for Rotor Clip Company, Inc. |
| North Point | David G. Heiman | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | dgheiman@jonesday.com | Counsel for WL. Ross & Co., LLC |
| North Point | Michelle M. Harner | 901 Lakeside Avenue | | Cleveland | OH | 44114 | | 216-586-3939 | 216-579-0212 | mmharner@jonesday.com | Counsel for WL. Ross & Co., LLC |
| Office of the Chapter 13 Trustee | Camille Hope | P.O. Box 954 | | Macon | GA | 31202 | | 478-742-8706 | 478-746-4488 | cahope@13trustee7.macon.com | Office of the Chapter 13 Trustee |
| Office of the Texas Attorney General | Jay W. Hurst | P.O. Box 12548 | | Austin | TX | 78711-2548 | | 512-475-4861 | 512-482-8341 | jay.hurst@oag.state.tx.us | Counsel for The Texas Comptroller of Public Accounts |
| Ortotech, Inc. | Michael M. Zizza, Legal Manager | 44 Manning Road | | Billerica | MA | 01821 | | 978-901-5025 | 978-667-9969 | michaelz@ortotech.com | Company |
| Orrick, Herrington & Sutcliffe LLP | Alyssa England, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-506-5187 | 212-506-5151 | aenglund@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd. |
| Orrick, Herrington & Sutcliffe LLP | Frederick D. Holden, Jr., Esq. | 405 Howard Street | | San Francisco | CA | 94105 | | 415-773-5700 | 415-773-5759 | fholden@orrick.com | Counsel to America President Lines, Ltd. And APL Co. Pte Ltd |
| Orrick, Herrington & Sutcliffe LLP | Jonathan P. Guy | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8500 | 202-339-8500 | jguy@orrick.com | Counsel for Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Matthew W. Cheney | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | mcheney@orrick.com | Counsel for Westwood Associates, Inc. |
| Orrick, Herrington & Sutcliffe LLP | Richard H. Wyron | The Washington Harbour | 3050 K Street, N.W. | Washington | DC | 20007 | | 202-339-8400 | 202-339-8500 | rwyron@orrick.com | Counsel for Westwood Associates, Inc. |
| Ottenbourg, Steindler, Houston & Rosen, P.C. | Melissa A. Hager | 230 Park Avenue | | New York | NY | 10169 | | 212-661-9100 | 212-682-6104 | mhager@oshr.com | Counsel for Sharp Electronics Corporation |
| Ottenbourg, Steindler, Houston & Rosen, P.C. | Scott L. Hazan | 230 Park Avenue | | New York | NY | 10169 | | 212-661-9100 | 212-682-6104 | mhager@oshr.com | Counsel for Sharp Electronics Corporation |
| Paul, Weiss, Rifkind, Wharton & Garrison | Curtis J. Weidler | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3157 | 212-373-2053 | shazan@oshr.com | Counsel for Ambrake Corporation; Akebono Corporation |
| Paul, Weiss, Rifkind, Wharton & Garrison | Douglas R. Davis | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | cweidler@paulweiss.com | Counsel for Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Elizabeth R McColm | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3000 | 212-757-3990 | ddavis@paulweiss.com | Counsel for Noma Company and General Chemical Performance Products LLC |
| Paul, Weiss, Rifkind, Wharton & Garrison | Stephen J. Shimshak | 1285 Avenue of the Americas | | New York | NY | 10019-6064 | | 212-373-3133 | 212-373-2136 | emccolm@paulweiss.com | Counsel for Ambrake Corporation |
| Peggy Housner | | Cadillac Place | 3030 W. Grand Blvd., Suite 10-200 | Detroit | MI | 48202 | | 313-456-0140 | | sshimshak@paulweiss.com | Assistant Attorney General for State of Michigan, Department of Treasury |
| Pension Benefit Guaranty Corporation | Ralph L. Landy | 1200 K. Street, N.W. | | Washington | DC | 20005-4026 | | 202-326-4020 | 202-326-4112 | housnerp@michigan.gov | Counsel to Pension Benefit Guaranty Corporation |
| Pepe & Hazard LLP | Charles J. Filardi, Jr., Esq. | 30 Jelliff Lane | | Southport | CT | 06890 | | 203-319-4042 | 203-319-4034 | landy.ralph@pbgc.gov | Federal Express Corporation |
| Pepper, Hamilton LLP | Anne Marie Aaronson | 3000 Two Logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | cfilardi@pepehazard.com | Counsel for Capro, Ltd., Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| | | | | | | | | | | aaronsona@pepperlaw.com | |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Pepper, Hamilton LLP | Linda J. Casey | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | caseyl@pepperlaw.com | Counsel for SKF USA, Inc. |
| Pepper, Hamilton LLP | Henry Jaffe | 1313 Market Street | PO Box 1709 | Wilmington | DE | 19899-1709 | | 302-777-6500 | 302-421-8390 | jaffeh@pepperlaw.com | Counsel for SKF USA, Inc. |
| Pepper, Hamilton LLP | Francis J. Lawall | 3000 Two logan Square | Eighteenth & Arch Streets | Philadelphia | PA | 19103-2799 | | 215-981-4000 | 215-981-4750 | lawallf@pepperlaw.com | Counsel for Capro, Ltd. Teleflex Automotive Manufacturing Corporation and Teleflex Incorporated d/b/a Teleflex Morse (Capro) |
| Phillips Nizer LLP | Sandra A. Riemer, Esq. | 666 Fifth Avenue | | New York | NY | 10103 | | 212-841-0589 | 212-262-5152 | sriemer@phillipsnizer.com | Counsel to Freescale Semiconductor, Inc. f/k/a Motorola Semiconductor Systems (U.S.A.) Inc. |
| Pierce Atwood LLP | Jacob A. Manheimer | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | jmanheimer@pierceatwood.com | Counsel for FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda. FCI Automotive Deutschland Gmbh; FCI Italia S. pA. |
| Pierce Atwood LLP | Keith J. Cunningham | One Monument Square | | Portland | ME | 04101 | | 207-791-1100 | 207-791-1350 | kcunningham@pierceatwood.com | Counsel for FCI Canada, Inc.; FCI Electronics Mexido, S. de R.L. de C.V.; FCI USA, Inc.; FCI Brasil, Ltda. FCI Automotive Deutschland Gmbh; FCI Italia S. pA. |
| Pillsbury Winthrop Shaw Pittman LLP | Karen B. Dine | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | karen.dine@pillsburylaw.com | Counsel for Clarion Corporation of America |
| Pillsbury Winthrop Shaw Pittman LLP | Margot P. Erlich | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | margot.erlich@pillsburylaw.com | Counsel for MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Mark D. Houle | 650 Town Center Drive | 7th Floor | Costa Mesa | CA | 92626-7122 | | 714-436-6800 | 714-436-2800 | mark.houle@pillsburylaw.com | Counsel for Clarion Corporation of America |
| Pillsbury Winthrop Shaw Pittman LLP | Richard L. Epling | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | richard.epling@pillsburylaw.com | Counsel for MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pillsbury Winthrop Shaw Pittman LLP | Robin L. Spear | 1540 Broadway | | New York | NY | 10036-4039 | | 212-858-1000 | 212-858-1500 | robin.spear@pillsburylaw.com | Counsel for MeadWestvaco Corporation, MeadWestvaco South Carolina LLC and MeadWestvaco Virginia Corporation |
| Pitney Hardin LLP | Ronald S. Beacher | 7 Times Square | | New York | NY | 10036 | | 212-297-5800 | 212-682-3485 | rbeacher@pitneyhardin.com | Counsel for IBJTC Business Credit Corporation |
| Pitney Hardin LLP | Richard M. Meth | P.O. Box 1945 | | Morristown | NJ | 07962-1945 | | 973-966-6300 | 973-966-1015 | rmeth@pitneyhardin.com | Counsel for Marshall E. Campbell Company |
| Porzio, Bromberg & Newman, P.C. | Brett S. Moore, Esq. | 100 Southgate Parkway | P.O. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | bsmoore@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| Porzio, Bromberg & Newman, P.C. | John S. Mairo, Esq. | 100 Southgate Parkway | P. Box 1997 | Morristown | NJ | 07960 | | 973-538-4006 | 973-538-5146 | jsmairo@pbnlaw.com | Counsel to Neuman Aluminum Automotive, Inc. and Neuman Aluminum Impact Extrusion, Inc. |
| Pryor & Mandelup, LLP | A. Scott Mandelup, Kenneth A. Reynolds | 675 Old Country Road | | Westbury | NY | 11590 | | 516-997-0999 | 516-333-7333 | asm@pryormandelup.com kar@pryormandelup.com | Counsel for National Molding Corporation, Security Plastics Division/NMC LLC |
| QAD, Inc. | Janice Pickering, Esq. | 10,000 Midlantic Drive | | Mt. Laurel | NJ | 08054 | | 856-840-2489 | 856-840-2740 | jkp@qad.com | Counsel to QAD, Inc. |
| Quadrangle Debt Recovery Advisors LLC | Andrew Herenstein | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1742 | 866-741-2505 | andrew.herenstein@quadranglegroup.com | Counsel to Quadrangle Debt Recovery Advisors LLC |
| Quadrangle Group LLC | Patrick Bartels | 375 Park Avenue, 14th Floor | | New York | NY | 10152 | | 212-418-1748 | 866-552-2052 | patrick.bartels@quadranglegroup.com | Counsel to Quadrangle Group LLC |
| Quarles & Brady Streich Lang LLP | John A. Harris | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | jharris@quarles.com | Counsel for Semiconductor Components Industries, Inc. |
| Quarles & Brady Streich Lang LLP | Kasey C. Nye | One South Church Street | | Tucson | AZ | 85701 | | 520-770-8717 | 520-770-2203 | knye@quarles.com | Counsel for Offshore International, Inc.; Maquilas Teta Kawi, S.A. de C.V.; On Semiconductor Corporation |
| Quarles & Brady Streich Lang LLP | Scott R. Goldberg | Renaissance One | Two North Central Avenue | Phoenix | AZ | 85004-2391 | | 602-229-5200 | 602-229-5690 | sgoldber@quarles.com | Counsel for Semiconductor Components Industries, Inc. |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 13 of 17

4/26/2006 12:35 PM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Reed Smith | Elena Lazarou | 599 Lexington Avenue | 29th Street | New York | NY | 10022 | | 212-521-5400 | 212-521-5450 | elazarou@reedsmith.com | Counsel for General Electric Capital Corporation, Stategic Asset Finance. |
| Republic Engineered Products, Inc. | Joseph Lapinsky | 3770 Embassy Parkway | | Akron | OH | 44333 | | 330-670-3004 | 330-670-3020 | jlapinsky@republicengineered.com | Counsel to Republic Engineered Products, Inc. |
| Riddell Williams P.S. | Joseph E. Shickich, Jr. | 1001 4th Ave. | Suite 4500 | Seattle | WA | 98154-1195 | | 206-624-3600 | 206-389-1708 | jshickich@riddellwilliams.com | Counsel for Microsoft Corporation; Microsoft Licensing, GP |
| Riemer & Braunstein LLP | Mark S. Scott | Three Center Plaza | | Boston | MA | 02108 | | 617-523-9000 | 617-880-3456 | mscott@riemerlaw.com | Counsel for ICX Corporation |
| Riverside Claims LLC | Holly Rogers | 2109 Broadway | Suite 206 | New York | NY | 10023 | | 212-501-0990 | 212-501-7088 | holly@rogenecap.com | Riverside Claims LLC |
| Robinson, McFadden & Moore, P.C. | Annemarie B. Mathews | P.O. Box 944 | | Columbia | SC | 29202 | | 803-779-8900 | 803-771-9411 | amathews@robinsonlaw.com | Counsel for Blue Cross Blue Shield of South Carolina |
| Ropers, Majeski, Kohn & Bentley | Christopher Norgaard | 515 South Flower Street | Suite 1100 | Los Angeles | CA | 90071 | | 213-312-2000 | 213-312-2001 | cnorgaard@ropers.com | Counsel for Brembo S.p.A; Bitselie S.p.A.; AP Racing |
| Ropes & Gray LLP | Gregory O. Kaden | One International Place | | Boston | MA | 02110-2624 | | 617-951-7000 | 617-951-7050 | gregory.kaden@ropesgray.com | Attorneys for D.J., Inc. |
| Ropes & Gray LLP | Marc E. Hirschfield | 45 Rockefeller Plaza | | New York | NY | 10111-0087 | | 212-841-5700 | 212-841-5725 | marc.hirschfield@ropesgray.com | Attorneys for D.J., Inc. |
| Rosen Slome Marder LLP | Thomas M. Slome | 333 Earle Ovington Boulevard | Suite 901 | Uniondale | NY | 11533 | | 516-227-1600 | | tslome@rsmllp.com | Counsel for JAE Electronics, Inc. |
| Russell Reynolds Associates, Inc. | Charles E. Boulbol, P.C. | 26 Broadway, 17th Floor | | New York | NY | 10004 | | 212-825-9457 | 212-825-9414 | rrieck@msn.com | Counsel for Russell Reynolds Associates, Inc. |
| Sachnoff & Weaver, Ltd | Charles S. Schulman, Arlene N. Gelman | 10 South Wacker Drive | 40th Floor | Chicago | IL | 60606 | | 312-207-1000 | 312-207-6400 | cschulman@sachnoff.com; agelman@sachnoff.com | Counsel for Infineon Technologies North America Corporation |
| Satterlee Stephens Burke & Burke LLP | Christopher R. Belmonte | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | cbelmonte@ssbb.com | Counsel to Moody's Investors Service |
| Satterlee Stephens Burke & Burke LLP | Pamela A. Bosswick | 230 Park Avenue | | New York | NY | 10169 | | 212-818-9200 | 212-818-9606 | pbosswick@ssbb.com | Counsel to Moody's Investors Service |
| Schafer and Weiner PLLC | Daniel Weiner | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | dweiner@schaferandweiner.com | Counsel for Dott Industries, Inc. |
| Schafer and Weiner PLLC | Howard Borin | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | hborin@schaferandweiner.com | Counsel for Dott Industries, Inc. |
| Schafer and Weiner PLLC | Max Newman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | mnewman@schaferandweiner.com | Counsel for Dott Industries, Inc. |
| Schafer and Weiner PLLC | Ryan Heilman | 40950 Woodward Ave. | Suite 100 | Bloomfield Hills | MI | 48304 | | 248-540-3340 | | rheilman@schaferandweiner.com | Counsel for Dott Industries, Inc. |
| Schiff Hardin LLP | Michael Yetnikoff | 623 Fifth Avenue | 28th Floor | New York | NY | 10022 | | 212-753-5000 | 212-753-5044 | myetnikoff@schiffhardin.com | Counsel for Means Industries |
| Schiff Hardin LLP | William J. Kohn | 6600 Sears Tower | | Chicago | IL | 60606 | | 312-258-5500 | 312-258-5600 | wkohn@schiffhardin.com | Counsel for Means Industries |
| Schiffrin & Barroway, LLP | Michael Yarnoff | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7706 | myarnoff@sbclasslaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Schiffrin & Barroway, LLP | Sean M. Handler | 280 King of Prussia Road | | Radnor | PA | 19087 | | 610-667-7706 | 610-667-7056 | shandler@sbclasslaw.com | Counsel for Teachers Retirement System of Oklahoma; Public Employee's Retirement System of Mississippi; Raiffeisen Kapitalanlage-Gesellschaft m.b.H and Stichting Pensioenfonds ABP |
| Schulte Roth & Sabel LLP | James T. Bentley | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2273 | 212-593-5955 | james.bentley@srz.com | Counsel for Panasonic Automotive Systems Company of America |
| Schulte Roth & Sabel LLP | Michael L. Cook | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | michael.cook@srz.com | Counsel for Panasonic Automotive Systems Company of America; D.C. Capital Partners, L.P. |
| Schulte Roth & Zabel LLP | Carol Weiner Levy | 919 Third Avenue | | New York | NY | 10022 | | 212-756-2000 | 212-595-5955 | carol.weiner-levy@srz.com | Counsel for D.C. Capital Partners, L.P. |
| Seyfarth Shaw LLP | Paul M. Baisier, Esq. | 1545 Peachtree Street, N.E. | Suite 700 | Atlanta | GA | 30309-2401 | | 404-885-1500 | 404-892-7056 | pbaisier@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | Robert W. Dremluk, Esq. | 1270 Avenue of the Americas | Suite 2500 | New York | NY | 10020-1801 | | 212-218-5500 | 212-218-5526 | rdremluk@seyfarth.com | Counsel to Murata Electronics North America, Inc.; Fujikura America, Inc. |
| Seyfarth Shaw LLP | William J. Hanlon | World Trade Center East | Two Seaport Lane, Suite 300 | Boston | MA | 02210 | | 617-946-4800 | 617-946-4801 | whanlon@seyfarth.com | Counsel for le Belier/LBQ Foundry S.A. de C.V. |

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 14 of 17

4/26/2006 12:35 PM
2002 lists

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Sheehan Phinney Bass + Green Professional Association | Steven E. Boyce | 1000 Elm Street | P.O. Box 3701 | Manchester | NH | 03105-2347 | | 603-627-8278 | 603-641-2347 | sboyce@sheehan.com | Counsel for Source Electronics, Inc. |
| Sheldon S. Toll PLLC | Sheldon S. Toll | 2000 Town Center | Suite 2550 | Southfield | MI | 48075 | | 248-358-2460 | 248-358-2740 | lawtoll@comcast.net | Counsel for Milwaukee Investment Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 5353 Essen Lane | Suite 650 | Baton Rouge | LA | 70809 | | 225-757-2185 | 225-757-7674 | rthibeaux@shergarner.com | Counsel for Gulf Coast Bank & Trust Company |
| Sher, Garner, Cahill, Richter, Klein & Hilbert, LLC | Robert P. Thibeaux | 909 Poydras Street | 28th Floor | New Orleans | LA | 70112-1033 | | 504-299-2100 | 504-299-2300 | rthibeaux@shergarner.com | Counsel for Gulf Coast Bank & Trust Company |
| Shipman & Goodwin LLP | Jennifer L. Adamy | One Constitution Plaza | | Hartford | CT | 06103-1919 | | 860-251-5811 | 860-251-5218 | bankruptcy@goodwin.com | Counsel for Fortune Plastics Company of Illinois, Inc.; Universal Metal Hose Co. |
| Sills, Cummis Epstein & Gross, P.C. | Andrew H. Sherman | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | asherman@sillscummis.com | Counsel for Hewlett-Packard Financial Services Company |
| Sills, Cummis Epstein & Gross, P.C. | Jack M. Zackin | 30 Rockefeller Plaza | | New York | NY | 10112 | | 212-643-7000 | 212-643-6500 | jzackin@sillscummis.com | Counsel for Hewlett-Packard Financial Services Company |
| Silver Point Capital, L.P. | Chaim J. Fortgang | Two Greenwich Plaza | 1st Floor | Greenwich | CT | 06830 | | 203-542-4216 | 203-542-4100 | cfortgang@silverpointcapital.com | Counsel for Silver Point Capital, Inc. |
| Simpson Thacher & Bartlett LLP | Kenneth S. Ziman, Esq. | 425 Lexington Avenue | | New York | NY | 10017 | | 212-455-2000 | 212-455-2502 | kziman@stblaw.com | Counsel to JPMorgan Chase Bank, N.A. |
| Simpson Thacher & Bartlett LLP | William T. Russell, Jr., Esq. | 425 Lexington Avenue | | New York | NY | 10017 | | 212-455-2000 | 212-455-2502 | cbov@stblaw.com | Counsel to JPMorgan Chase Bank, N.A. |
| Smith, Gambrell & Russell, LLP | Barbara Ellis-Monro | 1230 Peachtree Street, N.E. | Suite 3100 | Atlanta | GA | 30309 | | 404-815-3500 | 404-815-3509 | bellis-monro@sgrlaw.com | Counsel for Southwire Company |
| Smith, Katzenstein & Furlow LLP | Kathleen M. Miller | 800 Delaware Avenue, 7th Floor | P.O. Box 410 | Wilmington | DE | 19899 | | 302-652-8400 | 302652b405 | kmiller@skfdelaware.com | Counsel for Airgas, Inc. |
| Sonnenschein Nath & Rosenthal LLP | D. Farrington Yates | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | fyates@sonnenschein.com | Counsel for Molex, Inc. and INA USA, Inc. |
| Sonnenschein Nath & Rosenthal LLP | Jo Christine Reed | 1221 Avenue of the Americas | 24th Floor | New York | NY | 10020 | | 212-768-6700 | 212-768-6800 | jcreed@sonnenschein.com | Counsel for Molex, Inc. and INA USA, Inc. |
| Sonnenschein Nath & Rosenthal LLP | Robert E. Richards | 8000 Sears Tower | 233 South Wacker Drive | Chicago | IL | 60606 | | 312-876-8000 | 312-876-7934 | rrichards@sonnenschein.com | Counsel for Molex, Inc. and INA USA, Inc. |
| Sony Electronics Inc. | Lloyd B. Sarakin - Chief Counsel, Finance and Credit | 1 Sony Drive | MD #1 E-4 | Park Ridge | NJ | 07656 | | 201-930-7483 | | lloyd.sarakin@am.sony.com | Counsel to Sony Electronics, Inc. |
| Sotiroff & Abramczyk, P.C. | Robert M. Goldi | 30400 Telegraph Road | Suite 444 | Bingham Farms | MI | 48025 | | 248-642-6000 | 248-642-9001 | rgoldi@sotablaw.com | Counsel for Michigan Heritage Bank, MHB Leasing, Inc. |
| Squire, Sanders & Dempsey L.L.P. | Eric Marcks | One Maritime Plaza | Suite 300 | San Francisco | CA | 94111-3492 | | | 415-393-9887 | emarcks@ssd.com | Counsel for Furukawa Electric Ltd. And Furukawa Electric North America, APD Inc. |
| Squire, Sanders & Dempsey L.L.P. | Penn Ayers Butler | 600 Hansen Way | | Palo Alto | CA | 94304 | | 650-856-6500 | 650-843-8777 | pabutler@ssd.com | Counsel for Furukawa Electric Ltd. And Furukawa Electric North America, APD Inc. |
| State of Michigan Department of Labor & Economic Growth, Unemployment Insurance Agency | Roland Hwang Assistant Attorney General | 3030 W. Grand Boulevard | Suite 9-600 | Detroit | MI | 48202 | | 313-456-2210 | 313-456-2201 | hwangr@michigan.gov | Assistant Attorney General for State of Michigan, Unemployment Tax Office of the Department of Labor & Economic Growth, Unemployment Insurance Agency |
| Steel Technologies, Inc. | John M. Baumann | 15415 Shelbyville Road | | Louisville | KY | 40245 | | 502-245-0342 | 502-245-0542 | jmbaumann@steeltechnologies.com | Counsel for Steel Technologies, Inc. |
| Stein, Rudser, Cohen & Magid LLP | Robert F. Kidd | 825 Washington Street | Suite 200 | Oakland | CA | 94607 | | 510-287-2365 | 510-987-8333 | rkidd@srcm-law.com | Counsel for Excel Global Logistics, Inc. |
| Steinberg Shapiro & Clark | Mark H. Shapiro | 24901 Northwestern Highway | Suite 611 | Southfield | MI | 48075 | | 248-352-4700 | 248-352-4488 | shapiro@steinbergshapiro.com | Counsel for Bing Metals Group, Inc.; Central Transport International, Inc.; Crown Enterprises, Inc.; Economy Transport, Inc.; Logistics Insight Corp (LINC); Universal Am-Can, Ltd.; Universal Truckload Services, Inc. |
| Sterns & Weinroth, P.C. | Jeffrey S. Posta | 50 West State Street, Suite 1400 | PO Box 1298 | Trenton | NJ | 08607-1298 | | 609-3922100 | 609-392-7956 | jposta@sternslaw.com | Counsel for Doosan Infracore America Corp. |
| Stevens & Lee, P.C. | Chester B. Salomon, Esq. Constantine D. Pourakis, Esq. | 485 Madison Avenue | 20th Floor | New York | NY | 10022 | | 212-319-8500 | 212-319-8505 | cs@stevenslee.com cpb@stevenslee.com | Counsel to Tokai Canada Ltd.; V.I. Technologies, Inc. and V.J. ElectroniX, Inc. |
| Stinson Morrison Hecker LLP | Mark A. Shaiken | 1201 Walnut Street | | Kansas City | MO | 64106 | | 816-842-8600 | 816-691-3495 | mshaiken@stinsonmoheck.com | Counsel to Thyssenkrupp Waupaca, Inc. and Thyssenkrupp Stahl Company |
| Stites & Harbison PLLC | Robert C. Goodrich, Jr. | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | madison.cashman@stites.com | Counsel to Seitech, Inc. |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Stites & Harbison PLLC | Madison L Cashman | 424 Church Street | Suite 1800 | Nashville | TN | 37219 | | 615-244-5200 | 615-782-2371 | robert.goodrich@stites.com | Counsel to Setech, Inc. |
| Stites & Harbison, PLLC | W. Robinson Beard, Esq. | 400 West Market Street | | Louisville | KY | 40202 | | 502-681-0448 | 502-779-8274 | wbeard@stites.com | Counsel to WAKO Electronics (USA), Inc. and Ambrake Corporation |
| Stroock & Stroock & Lavan, LLP | Joseph G. Minias | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Elkin Equities, Inc.; 1401 Troy Associates LP Brighton Limited Partnership; DFS Information Services, Inc.; Elkin Management Services, Inc. and Elkin Real Properties |
| Stroock & Stroock & Lavan, LLP | Kristopher M. Hansen | 180 Maiden Lane | | New York | NY | 10038 | | 212-806-5400 | 212-806-6006 | jminias@stroock.com | Counsel for 975 Opdyke LP; 1401 Troy Associates Limited Partnership; 1401 Troy Associates Limited Partnership c/o Elkin Equities, Inc.; 1401 Troy Associates LP Brighton Limited Partnership; DFS Information Services, Inc.; Elkin Management Services, Inc. and Elkin Real Properties |
| Swelder Berlin LLP | Robert N. Steinwurtzel | The Washington Harbour | 3000 K Street, N.W., Suite 300 | Washington | DC | 20007 | | 202-424-7500 | 202-424-7645 | khansen@stroock.com | Attorneys for Sanders Lead Co., Inc. |
| Taft, Stettinius & Hollister LLP | Richard L. Ferrell | 425 Walnut Street | Suite 1800 | Cincinnati | OH | 45202-3957 | | 513-381-2838 | | rsteinwurtzel@swidlaw.com | Counsel for Wren Industries, Inc. |
| Tennessee Department of Revenue | Marvin E. Clements, Jr | c/o TN Attorney General's Office, Bankruptcy Division | PO Box 20207 | Nashville | TN | 37202-0207 | | 615-532-2504 | 615-741-3334 | ferrell@taftlaw.com | Tennessee Department of Revenue |
| Terra Law LLP | David B. Draper | 60 S. Market Street | Suite 200 | San Jose | CA | 95113 | | 408-299-1200 | 408-998-4895 | marvin.clements@state.tn.us | Counsel for Maxim Integrated Products, Inc. |
| Thacher Proffitt & Wood LLP | Jonathan D. Forstot | Two World Financial Center | | New York | NY | 10281 | | 212-912-7679 | 212-912-7751 | ddraper@terra-law.com | Counsel for TT Electronics, Plc |
| Thacher Proffitt & Wood LLP | Louis A. Curcio | Two World Financial Center | | New York | NY | 10281 | | 212-912-7607 | 212-912-7751 | jforstot@tpw.com | Counsel for TT Electronics, Plc |
| The Furukawa Electric Co., Ltd. | Mr. Tetsuhiro Nizeki | 6-1 Marunouchi | 2-Chome, Chiyoda-ku | Tokyo | | 100-8322 | Japan | | 813-3286-3919 | lcurcio@tpw.com | Legal Department of The Furukawa Electric Co., Ltd. |
| The Timken Corporation BIC - 08 | Robert Morris | 1835 Dueber Ave. SW | PO Box 6927 | Canton | OH | 44706 | | 1-330-438-3000 | 1-330-471-4388 | nizeki.tetsuhiro@furukawa.co.jp | Representative for Timken Corporation |
| Thelen Reid & Priest LLP | David A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | robert.morris@timken.com | Counsel for American Finance Group, Inc. d/b/a Guaranty Capital Corporation |
| Thelen Reid & Priest LLP | Daniel A. Lowenthal | 875 Third Avenue | | New York | NY | 10022 | | 212-603-2000 | 212-603-2001 | dlowenthal@thelenreid.com | Counsel for Oki Semiconductor Company |
| Thompson & Knight | Rhett G. Campbell | 333 Clay Street | Suite 3300 | Houston | TX | 77002 | | 713-654-1871 | 713-654-1871 | dlowenthal@thelenreid.com | Counsel for STMicroelectronics, Inc. |
| Thompson & Knight LLP | John S. Brannon | 1700 Pacific Avenue | Suite 300 | Dallas | TX | 75201 | | 214-969-1505 | 214-969-1609 | rhett.campbell@tklaw.com | Counsel for Victory Packaging |
| Thurman & Phillips, P.C. | Ed Phillips, Jr. | 8000 IH 10 West | Suite 1000 | San Antonio | TX | 78230 | | 210-341-2020 | 210-344-4460 | john.brannon@tklaw.com | Counsel for Roypferd, Inc. d/b/a Precision Mold & Tool and d/b/a Precision Mold and Tool Group |
| Todt & Levi, LLP | Jill Levi, Esq. | 444 Madison Street | Suite 1202 | New York | NY | 10022 | | 212-308-7400 | | sgphillips@thurman-phillips.com | Counsel to Bank of Lincolnwood |
| Togut, Segal & Segal LLP | Albert Togut, Esq. | One Penn Plaza | Suite 3335 | New York | NY | 10119 | | 212-594-5000 | 212-967-4258 | | Conflicts Counsel for Debtors |
| Tyler, Cooper & Alcorn, LLP | W. Joe Wilson | City Place | 35th Floor | Hartford | CT | 06103-3488 | | 860-725-6200 | 860-278-3802 | atogut@teamtogut.com | Counsel for Barnes Group, Inc. |
| Underberg & Kessler, LLP | Helen Zamboni | 300 Bausch & Lomb Place | | Rochester | NY | 14604 | | 585-258-2800 | 585-258-2821 | wilson@tylercooper.com | Counsel for McAlpin Industries, Inc. |
| Union Pacific Railroad Company | Mary Ann Kilgore | 1400 Douglas Street | MC 1580 | Omaha | NE | 68179 | | 402-544-4195 | 402-501-0127 | hzamboni@underbergkessler.com | Counsel for Union Pacific Railroad Company |
| United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO | David Jury, Esq. | Five Gateway Center | Suite 807 | Pittsburgh | PA | 15222 | | 412-562-2549 | 412-562-2429 | mkilgore@UP.com | Counsel to United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union (USW), AFL-CIO |
| Varnum, Riddering, Schmidt & Howlett LLp | Michael S. McElwee | Bridgewater Place | P. O. Box 353 | Grand Rapids | MI | 49501-0352 | | 616-336-6827 | 616-336-7000 | djury@steelworkers-usw.org | Counsel for Furukawa Electric North America APD |
| Vorys, Sater, Seymour and Pease LLP | Robert J. Sidman, Esq. | 52 East Gay Street | P.O. Box 1008 | Columbus | OH | 43216-1008 | | 614-464-6422 | 614-719-4876 | msmcelwee@varnumlaw.com | |
| Vorys, Sater, Seymour and Pease LLP | Tiffany Strelow Cobb | 52 East Gay Street | | Columbus | OH | 43215 | | 614-464-8322 | 614-719-4663 | rjsidman@vssp.com | Counsel for America Online, Inc. and its Subsidiaries and Affiliates |
| | | | | | | | | | | tscobb@vssp.com | |

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Wachtell, Lipton, Rosen & Katz | Emil A. Kleinhaus | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | EAKleinhaus@wlrk.com | Counsel for Capital Research and Management Company |
| Wachtell, Lipton, Rosen & Katz | Richard G. Mason | 51 West 52nd Street | | New York | NY | 10019-6150 | | 212-403-1000 | 212-403-2000 | RGMason@wlrk.com | Counsel for Capital Research and Management Company |
| Waller Lansden Dortch & Davis, PLLC | David E. Lemke, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | david.lemke@wallerlaw.com | Counsel for Nissan North America, Inc. |
| Waller Lansden Dortch & Davis, PLLC | Robert J. Welhoelter, Esq. | 511 Union Street | Suite 2700 | Nashville | TN | 37219 | | 615-244-6380 | 615-244-6804 | robert.welhoelter@wallerlaw.com | Counsel for Nissan North America, Inc. |
| Warner Norcross & Judd LLP | Stephen B. Grow | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2158 | | grow@wnj.com | Counsel for Behr Industries Corp. |
| Warner Norcross & Judd LLP | Gordon J. Toering | 900 Fifth Third Center | 111 Lyon Street, N.W. | Grand Rapids | MI | 49503 | | 616-752-2185 | 616-222-2185 | gtoering@wnj.com | Counsel for Robert Bosch Corporation |
| Warner Norcross & Judd LLP | Michael G. Cruse | 2000 Town Center | Suite 2700 | Southfield | MI | 48075 | | 248-784-5131 | 248-603-9631 | mcruse@wnj.com | Counsel to Compuware Corporation |
| Warner Stevens, L.L.P. | Michael D. Warner | 301 Commerce Street | Suite 1700 | Fort Worth | TX | 76102 | | 817-810-5250 | 817-810-5255 | bankruptcy@warnerstevens.com | Counsel for Electronic Data Systems Corp. and EDS Information Services, L.L.C. |
| Weiland, Golden, Smiley, Wang Ekvall & Strok, LLP | Lei Lei Wang Ekvall | 650 Town Center Drive | Suite 950 | Costa Mesa | CA | 92626 | | 714-966-1000 | 714-966-1002 | lekvall@wgllp.com | Counsel for Toshiba America Electronic Components, Inc. |
| Weinstein, Eisen & Weiss LLP | Aram Ordubegian | 1925 Century Park East | #1150 | Los Angeles | CA | 90067 | | 310-203-9393 | 310-203-8110 | aordubegian@weinsteen.com | Counsel for Orbotech, Inc. |
| Wellman, Weinberg & Reis Co., L.P.A. | Geoffrey J. Peters | 175 South Third Street | Suite 900 | Columbus | OH | 43215 | | 614-857-4326 | 614-222-2193 | gpeters@weltman.com | Counsel to Seven Seventeen Credit Union |
| White & Case LLP | John K. Cunningham | 1155 Avenue of the Americas | | New York | NY | 10036-2787 | | 212-819-8200 | | jcunningham@whitecase.com | Counsel for Appaloosa Management, LP |
| White & Case LLP | Margarita Mesones-Mori | Wachovia Financial Center | 200 South Biscayne Blvd., Suite 4900 | Miami | FL | 33131 | | 305-371-2700 | 305-358-5744 | mmesonesmori@whitecase.com | Counsel for Appaloosa Management, LP |
| Whyte, Hirschboeck Dudek S.C. | Bruce G. Arnold | 555 East Wells Street | Suite 1900 | Milwaukee | WI | 53202-4894 | | 414-273-2100 | 414-223-5000 | barnold@whdlaw.com | Counsel for Schunk Graphite Technology |
| Winstead Sechrest & Minick P.C. | Berry D. Spears | 401 Congress Avenue | Suite 2100 | Austin | TX | 78701 | | 512-370-2800 | 512-370-2850 | bspears@winstead.com | Counsel for National Instruments Corporation |
| Winstead Sechrest & Minick P.C. | R. Michael Farquhar | 5400 Renaissance Tower | 1201 Elm Street | Dallas | TX | 75270 | | 214-745-5400 | 214-745-5390 | mfarquhar@winstead.com | Counsel for National Instruments Corporation |
| Winthrop Couchot Professional Corporation | Marc J. Winthrop | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | mwinthrop@winthropcouchot.com | Counsel for Metal Surfaces, Inc. |
| Winthrop Couchot Professional Corporation | Sean A. O'Keefe | 660 Newport Center Drive | 4th Floor | Newport Beach | CA | 92660 | | 949-720-4100 | 949-720-4111 | sokeefe@winthropcouchot.com | Counsel for Metal Surfaces, Inc. |
| W.L. Ross & Co., LLC | Oscar Iglesias | 600 Lexington Avenue | 19th Floor | New York | NY | 10022 | | 212-826-1100 | 212-317-4893 | oiglesias@wlross.com | Counsel for W.L. Ross & Co., LLC |
| Womble Carlyle Sandridge & Rice, PLLC | Lillian H. Pinto | 300 North Greene Street | Suite 1900 | Greensboro | NC | 27402 | | 336-574-8058 | 336-574-4628 | lpinto@wcsr.com | Counsel for Armacell |
| Zeichner Ellman & Krause LLP | Peter Janovsky | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | pjanovsky@zeklaw.com | Counsel for Toyota Tsusho America, Inc. |
| Zeichner Ellman & Krause LLP | Stuart Krause | 575 Lexington Avenue | | New York | NY | 10022 | | 212-223-0400 | 212-753-0396 | skrause@zeklaw.com | Counsel for Toyota Tsusho America, Inc. |

4/26/2006 12:35 PM
2002 lists

In re Delphi Corporation, et al.
Case No. 05-44481 (RDD)

# EXHIBIT C

Delphi Corporation
2002 List

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | COUNTRY | PHONE | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|
| Ajamie LLP | Wallace A. Showman | 1350 Avenue of the Americas | 29th Floor | New York | NY | 10019 | | 212-246-6820 | Counsel for SANLUIS Rassini International, Inc.; Rassini, S.A. de C.V. |
| King & Spalding, LLP | Alexandra B. Feldman | 1185 Avenue of the Americas | | New York | NY | 10036 | | 212-556-2100 | Counsel for Martinrea International, Inc. |
| Klett Rooney Lieber & Schorling | Eric L. Schnabel | The Brandywine Building | 1000 West Street, Suite 1410 | Wilmington | DE | 19801 | | 302-552-4200 | Counsel for Entergy |
| Morris, Nichols, Arsht and Tunnell | Michael G. Busenkell | PO Box 1347 | | Wilmington | DE | 19899-1347 | | 302-658-9200 | Counsel for Chicago Miniature Optoelectronic Technologies, Inc. |
| O'Rourke Katten & Moody | Michael C. Moody | 161 N. Clark Street | Suite 2230 | Chicago | IL | 60601 | | 312-849-2020 | Counsel for Ameritech Credit Corporation d/b/a SBC Capital Services |
| Professional Technologies Services | John V. Gorman | P.O. Box #304 | | Frankenmuth | MI | 48734 | | 989-385-3230 | Corporate Secretary for Professional Technologies Services |

In re: Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

4/26/2006 12:36 PM
2002 lists

# EXHIBIT D

**Hearing Date and Time: May 12, 2006 at 10:00 a.m.**
**Objection Deadline: May 5, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
         In re                            :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05-44481 (RDD)
                                          :
                                          :    (Jointly Administered)
         Debtors.                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER 11 U.S.C. § 363(b) AND
FED. R. BANKR. P. 6004 AUTHORIZING DEBTORS' ENTRY
INTO AGREEMENTS WITH BOOZ ALLEN HAMILTON INC.

("BOOZ ALLEN MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order pursuant to 11 U.S.C. § 363(b) and Fed. R. Bankr. P. 6004 authorizing the Debtors' entry into and performance under agreements with Booz Allen Hamilton Inc. ("Booz Allen") to provide ongoing support for Delphi's selling, general, and administration expenses ("SG&A") and organization transformation.  In support of this Motion, the Debtors respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtor's chapter 11 cases.

2.    On October 17, 2005, the Office of the Unites States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner has been appointed in the Debtors' cases.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are section 363(b) of the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.      Current Business Operations Of The Debtors

5.      Delphi and its subsidiaries and affiliates (collectively, the "Company") had global 2005 net sales of approximately $26.9 billion, and global assets as of August 31, 2005 of approximately $17.1 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.      The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a

---

[1]      The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

global supplier of components, integrated systems, and modules for a wide range of customers

and applications.  Although GM is still the Company's single largest customer, today more than

half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

8.    In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.8 billion on net sales of $26.9 billion.

9.    The Debtors believe that the Company's financial performance has

deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the

United States and related pricing pressures, and (c) increasing commodity prices.

10.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major unions and GM had not progressed sufficiently by the end of the third quarter of

---

[2]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
loss in calendar year 2004 was $482 million.

4

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the

Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined the key tenets of its

transformation plan.  The Company believes that this plan will enable it to return to stable,

profitable business operations and allow the Debtors to emerge from these chapter 11 cases in

the first half of 2007.  To complete their restructuring process, the Debtors must focus on five

key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which

to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize

GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business

commitment to the Company.  Third, the Debtors must streamline their product portfolio to

capitalize on their world-class technology and market strengths and make the necessary

manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried

workforce to ensure that the Company's organizational and cost structure is competitive and

aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise

a workable solution to their current pension situation.

12.    In connection with the first two elements of the Company's transformation

plan, Delphi continues to participate in discussions with its unions and GM.  Throughout those

discussions, Delphi has consistently communicated a clear message to both its hourly workforce

and GM: Delphi is committed to finding a consensual resolution to its issues and intends to

continue to discuss with its unions and GM ways to become competitive in the Debtors' U.S.

operations.  To that end, Delphi, GM and the UAW recently received this Court's approval of a

tripartite agreement providing for a special hourly attrition program for Delphi's UAW-

5

represented employees.  This special hourly attrition program could provide as many as 18,000

of Delphi's 23,000 existing UAW-represented long-term hourly employees with "soft landings"

through retirement attrition programs and GM flowbacks.  Delphi also hopes to reach agreement

on similar hourly attrition programs with its other unions, which could provide as many as 4,500

additional hourly employees with retirement programs or incentives.

　　　　　　　13.　　These hourly attrition programs constitute an important first step in

implementing the Debtors' transformation plan, but will not resolve all of the issues related to

Delphi's uncompetitive labor agreements.  Moreover, Delphi has not yet reached comprehensive

agreements with its unions and GM.  Therefore, on March 31, 2006, Delphi moved under

sections 1113 and 1114 of the Bankruptcy Code for authority to reject its U.S. labor agreements

and to modify retiree benefits.[3]  Contemporaneously therewith, the Debtors also moved to reject

unprofitable supply contracts with GM.[4]  Among the reasons for the GM contract rejection

motion was the Debtors' belief that GM must cover a greater portion of the costs of

manufacturing products for GM at plants that bear the burden of the Debtors' legacy costs.  This

initial motion covers approximately half of the Debtors' North American annual purchase

volume revenue from GM but only 10% of the Debtors' total contracts with GM.  Although the

filing of these motions was a necessary procedural step, the Debtors remain focused on reaching

a consensual resolution with all of Delphi's unions and GM before a hearing on the motions is

necessary.

　　　　　　　14.　　To implement the third element of the Debtors' transformation plan, the

Company announced plans to focus its product portfolio on those core technologies for which the

---

[3]　　Motion For Order Under 11 U.S.C. § 1113(c) Authorizing Rejection Of Collective Bargaining Agreements And
Under 11 U.S.C. § 1114(g) Authorizing Modification Of Retiree Welfare Benefits (Docket No. 3035)

[4]　　Motion For Order Under 11 U.S.C. § 365 And Fed. R. Bankr. P. 6006 Authorizing Rejection Of Certain
Executory Contracts With General Motors Corporation (Docket No. 3033)

6

Company has significant competitive and technological advantages and expects the greatest opportunities for increased growth.   To that end, the Company will concentrate the organization around the following core strategic product lines: (a) Controls & Security (Body Security, Mechatronics, Power Products, and Displays), (b) Electrical/Electronic Architecture (Electrical/Electronic Distribution Systems, Connection Systems, and Electrical Centers), (c) Entertainment & Communications (Audio, Navigation, and Telematics), (d) Powertrain (Diesel and Gas Engine Management Systems), (e) Safety (Occupant Protection and Safety Electronics), and (f) Thermal (Climate Control & Powertrain Cooling).[5]

15.     In contrast, the Company similarly identified certain non-core product lines that do not fit into its future strategic framework, including Brake & Chassis Systems, Catalysts, Cockpits and Instrument Panels, Door Modules and Latches, Ride Dynamics, Steering, and Wheel Bearings.  The Company will seek to sell or wind down these non-core product lines (which will include approximately one-third of its global manufacturing sites) and will consult with its customers, unions, and other stakeholders to carefully manage the transition of such affected product lines.  The Company intends to sell or wind down the non-core product lines and manufacturing sites by January 1, 2008.

16.     As part of its organizational restructuring, the fourth element of the Debtors' transformation plan, the Company expects to reduce its global salaried workforce by as many as 8,500 employees as a result of portfolio and product rationalizations and initiatives adopted following an analysis of the Company's selling, general, and administration ("SG&A") cost saving opportunities.  The Company believes that once its SG&A plan is fully implemented,

---

[5]   The Company does not expect the portfolio changes to have a significant impact on its independent aftermarket or consumer electronics businesses.  Similarly, the Company does not expect an impact on medical, commercial vehicles, or other adjacent-market businesses and product lines.

7

the Company should realize savings of approximately $450 million per year in addition to

savings realized from competitive measures planned for its core businesses and the disposition of

non-core assets.

17.     As noted above, the final key tenet of the transformation plan is to devise

a workable solution to the Debtors' current pension situation.  The Debtors' goal is to retain the

benefits accrued under the existing defined benefit U.S. pension plans for both the Debtors'

hourly and salaried workforce.  To do so, however, it will be necessary to freeze the current

hourly U.S. pension plan as of October 1, 2006 and to freeze the current salaried U.S. pension

plan as of January 1, 2007.  Despite the freeze, because of the size of the funding deficit, it will

also be necessary for the Debtors to obtain relief from the Pension Benefit Guaranty Corporation,

the Internal Revenue Service, the Department of Labor, and potentially Congress, to amortize

funding contributions over a long-term period.  The Company intends to replace the hourly plan

(for certain employees) and the salaried plan with defined contribution plans.

18.     Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

19.     By this Motion, the Debtors seek entry of an order under section 363(b) of

the Bankruptcy Code and Bankruptcy Rule 6004 approving and authorizing, as more fully set

forth below, the Debtors' entry into and performance under an agreement with Booz Allen for the

second phase (the design phase) of the Debtors' SG&A restructuring program (the "Booz Allen

8

Agreement"), which has a targeted completion of September 2006.  With the assistance of Booz

Allen, the Debtors are undertaking an aggressive program to reshape their SG&A costs that

should result in potential savings of more than $450 million by the anticipated completion of the

SG&A transformation program in 2008.  Although Delphi believes that the program

contemplated by the Booz Allen Agreement is being undertaken in the ordinary course of its

business, out of an abundance of caution, the Debtors are requesting this Court's approval of the

Booz Allen Agreement.

20.     In addition, the Debtors are requesting this Court's approval of procedures

under which Delphi may enter into an agreement with Booz Allen covering the implementation

phase of the SG&A restructuring program, which is expected to occur from September 2006

through, at minimum, March 2007.  Although the exact terms of this implementation agreement

have not been fully negotiated between the parties, the Debtors seek approval to enter into such

an agreement, without further court approval, after giving notice to specified parties-in-interest.

<u>Basis For Relief</u>

21.     Prior to the commencement of the Debtors' chapter 11 cases, Delphi

engaged Booz Allen to assist it in evaluating potential SG&A savings.  Delphi and Booz Allen

contemplated that the SG&A restructuring program would be executed in a phased approach.

During phase one of the program, which has been completed, Booz Allen and Delphi:

- •     Evaluated, quantified, and agreed to overall SG&A savings of approximately
  $450 million (with additional potential savings of approximately $90 million upon
  the exit from certain businesses);

- •     Evaluated, quantified, and targeted savings by function;

- •     Identified the primary axis of the Company's organization and simplified its
  structure to achieve transparency and accountability for each business;

- •     Created working teams to achieve change throughout the business; and

9

- Structured an overall program of changes which, upon implementation, would achieve most of the projected savings by the end of 2007.

22.     The second, design phase of the SG&A restructuring program will build upon what Booz Allen and Delphi developed during phase one. During the second phase of the program, Booz Allen will develop and design a plan to realize the targeted SG&A savings. Realizing the savings and transforming Delphi's SG&A will involve the following main activities:

- The creation of a finance, human resources, and sales back-office shared service organization;

- The streamlining of divisional/product business units' SG&A in finance, human resources, and customer interaction processes;

- The streamlining of the corporate core of the organization;

- The transformation of information technologies, including the creation of information technologies shared services and exploration of other opportunities to reduce costs;

- The implementation of new product organization; and

- The streamlining of the global supply management organization.

23.     The Debtors' SG&A transformation is believed to be one of the largest transformations undertaken in the global automotive supply industry. The transformation program will likely run through 2007 and into 2008 before all phases are complete. At the conclusion of phase two in September 2006, the Debtors anticipate that the implementation phase will commence immediately. Currently, the Debtors estimate that the implementation phase of the SG&A restructuring program will last at least through the first quarter of 2007. Subsequent phases may follow.

A.     <u>The Second Phase</u>

24.    Booz Allen and Delphi began work on the second phase of the program, as set forth in the Booz Allen Agreement, on April 3, 2006 and anticipate completion of this second phase by September 2006, before the start of the 2007 fiscal year planning and budgeting process.  With the assistance of Booz Allen, the Debtors should have approximately $340 million of SG&A savings factored into their line budgets for the 2007 fiscal year.  Implementation of these cost saving measures will begin in 2006, with the objective of achieving significant savings in the first quarter of 2007.

25.    Booz Allen and the Debtors estimate that the second phase of the SG&A transformation program will cost approximately $13 million in fees.  In addition, Delphi will pay Booz Allen's expenses (at cost), which are currently estimated to be approximately 18% of fees. Because of the magnitude of the SG&A transformation project, Booz Allen has agreed to provide to the Debtors a discount based on the total fees charged by Booz Allen beginning with the second phase and continuing through all subsequent phases.  Specifically, fees of more than $10 million but less than or equal to $20 million will be discounted by 3% and fees greater than $20 million will be discounted by 5%.  Accordingly, approximately $3 million of the estimated phase two fees should be discounted by 3% and all fees incurred in the third (implementation) phase, and any subsequent phases of the program, would be discounted by at least 3%.

26.    In addition, as more fully described in the Booz Allen Agreement, Booz Allen has agreed that as much as $1.0 million of its fees will not be payable by Delphi if specified, pre-determined targets are not met.  Conversely, Booz Allen will receive up to $1.0 million in additional fees if agreed-upon progress toward the detailed targeted savings is exceeded.  The "at risk" fees will be withheld by Delphi in five equal amounts of $200,000 from the fees otherwise due to Booz Allen under the Booz Allen Agreement.  During a meeting which

11

will be held on or about December 1, 2006, Delphi and Booz Allen will jointly review Delphi's

budgets and the SG&A savings reflected therein, and will determine whether or not Booz Allen

is entitled to receive either or both of the withheld fees and the additional $1.0 million in fees.

B    The Implementation Phase

27.    Although the scope of Booz Allen's support during the implementation

phase of the SG&A restructuring program has not been fully negotiated between the parties and

thus is not covered by the Booz Allen Agreement, Booz Allen and Delphi anticipate that Booz

Allen will participate in the implementation phase of the program commencing in September

2006.  This third phase of the program will focus on implementing the changes designed in phase

two of the program and achieving the remaining $110 million of targeted savings (of the total

projected $450 million of SG&A transformation plan savings) identified during phase two.

Based on the parties' current concept of the more limited role that Booz Allen will perform in the

implementation phase, the parties estimate that Booz Allen's fees for the portion of the

implementation phase which should be completed through March 2007 will be approximately

$10 million.  All fees incurred by Booz Allen in the implementation phase will be subject to the

fee discount as outlined above.

28.    By this Motion, the Debtors seek authority to enter into an agreement with

Booz Allen for the implementation phase of the SG&A restructuring program (the

"Implementation Agreement") and to pay Booz Allen under that agreement, without further court

approval, but subject to the following procedures (the "Procedures"):

(a)    As soon as Delphi and Booz Allen have reached agreement regarding
Booz Allen's role in the implementation phase, the Debtors would submit the
Implementation Agreement to (i) the Office of the United States Trustee for the Southern
District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004
(Att'n: Alicia M. Leonhard, Esq.) and (ii) counsel for the Creditors' Committee, Latham
& Watkins LLP, 885 Third Avenue, New York, New York 10022-4802 (Att'n: Robert J.

Rosenberg, Esq.) (the "Notice Parties").  The Implementation Agreement would be served by facsimile, overnight delivery, or hand delivery.

      (b)      The Notice Parties would have ten business days following initial receipt of the Implementation Agreement to object to or request additional time to evaluate the Implementation Agreement.  Any objections would be submitted in writing to counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., Esq.) and counsel for Booz Allen, Chadbourne & Parke LLP, 30 Rockefeller Plaza, New York, New York 10112 (Att'n: Howard Seife, Esq.).  If counsel to the Debtors and counsel to Booz Allen received no written objection or written request for additional time prior to the expiration of such ten business day period, the Debtors would be authorized to enter into and perform their obligations under the Implementation Agreement.

      (c)      If a Notice Party objects to the proposed Implementation Agreement within the proscribed ten business day period, the Debtors and such objecting Notice Party would meet and confer in an attempt to negotiate a consensual resolution of the objection.  Should either party determine that an impasse exists, the Debtors would move the Bankruptcy Court for authority to enter into the Implementation Agreement upon notice to the objecting party and other parties-in-interest in accordance with the terms of the Third Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered April 20, 2006 (Docket No. 3293) (the "Case Management Order").

      29.      In the exercise of their business judgment, the Debtors believe that the proposed agreement with Booz Allen is in the best interests of the Debtors' estates because the savings and organizational efficiency to be achieved with the assistance of Booz Allen will maximize the recovery for all stakeholders.  Moreover, the Booz Allen Agreement reflects changes made in response to feedback received from the Creditors' Committee.  Additionally, the Debtors believe that the Procedures described herein are in the best interests of the Debtors' estates.  Accordingly, and out of an abundance of caution, the Debtors hereby seek authority, but not direction, to enter into and perform, as of the date of entry into the Booz Allen Agreement, all obligations required under the Booz Allen Agreement, and to enter into and perform under an Implementation Agreement in accordance with the Procedures set forth above.

13

<u>Applicable Authority</u>

30.    Bankruptcy Code section 363(b)(1) permits a debtor-in-possession to use property of the estate "other than in the ordinary course of business" after notice and a hearing. 11 U.S.C. § 363(b)(1).  Uses of estate property outside the ordinary course of business may be authorized if the debtor demonstrates a sound business justification for it.  <u>See</u> <u>In re Lionel Corp.</u>, 722 F.2d 1063, 1071 (2d Cir. 1983) (business judgment rule requires finding that good business reason exists to grant debtor's application under section 363(b)); <u>In re Delaware Hudson Ry. Co.</u>, 124 B.R. 169, 179 (Bankr. D. Del. 1991).  Once the debtor articulates a valid business justification, a presumption arises that "in making a business decision the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action was in the best interests of the company.'"  <u>In re Integrated Resources, Inc.</u>, 147 B.R. 650, 656 (S.D.N.Y. 1992).  As a rule, the debtor's business judgment "should be approved by the court unless it is shown to be 'so manifestly unreasonable that it could not be based upon sound business judgment, but only on bad faith, or whim or caprice.'" <u>In re Aerovox, Inc.</u>, 269 B.R. 74, 81 (Bankr. D. Del. 2001) (quoting <u>In re Interco, Inc.</u>, 128 B.R. 229, 234 (Bankr. E.D. Mo. 1991)).

31.    The Debtors submit that entering into the Booz Allen Agreement reflects a sound exercise of the Debtors' business judgment.  As outlined in Delphi's March 31, 2006 press release, as part of its overall transformation plan and restructuring strategy, Delphi is committed to realizing SG&A cost saving opportunities.  The Debtors anticipate that by working with Booz Allen to streamline their organization and transform their SG&A, the Debtors should achieve approximately $450 million in projected savings.  Moreover, the resulting corporate structure should allow the Debtors to operate more efficiently and effectively going forward.

14

32.     Furthermore, the Procedures will provide the Debtors with both flexibility and a framework for entry into an appropriate Implementation Agreement with Booz Allen without the necessity for a further court application, but still providing for a review by major parties-in-interest in these chapter 11 cases.  This Court has previously granted the Debtors authority to take action prospectively under section 363 of the Bankruptcy Code pursuant to procedures similar to those outlined above.  See, e.g., Order Under 11 U.S.C. § 363 Approving Procedures to Sell Certain De Minimis Assets Free and Clear of Liens, Claims, and Encumbrances and to Pay Market Rate Broker Commissions in Connection with Such Sales without Further Court Approval, dated October 27, 2005 (Docket No. 766); Order Under 11 U.S.C. §§ 365(a) and 554 and Fed .R. Bankr. P. 6006 Approving Procedures for Rejecting Unexpired Real Property Leases and Authorizing Debtors to Abandon Certain Furniture, Fixture, and Equipment, dated January 6, 2006 (Docket No. 1776); Order Under 11 U.S.C. §§ 363, 1107, and 1108 Approving Procedures to Enter Into or Renew Real Property Leases Without Further Court Approval, dated January 6, 2006 (Docket No. 1777); and Order Under 11 U.S.C. Sections 363, 1107, and 1108 Authorizing Delphi Automotive Systems LLC to Make Equity Investments in Delphi Furukawa Wiring Systems LLC and Approving Procedures to Make Additional Contributions Without Further Court Approval, dated March 17, 2006 (Docket No. 2858). Without the Procedures for entering into an Implementation Agreement, the Debtors submit that they and their estates would incur added and unnecessary expense and delay in seeking further court approval of the exercise of their business judgment.

15

<u>Notice Of Motion</u>

33.     Notice of this Motion has been provided in accordance with the Case

Management Order.  In light of the nature of the relief requested, the Debtors submit that no

other or further notice is necessary.

<u>Memorandum Of Law</u>

34.     Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

16

WHEREFORE, the Debtors respectfully request that this Court enter an order

(a) authorizing the entry into and performance of the Booz Allen Agreement, (b) approving the

Procedures under which Booz Allen and Delphi may enter into an Implementation Agreement

without further court approval, and (c) granting the Debtors such other and further relief as is

just.

Dated:      New York, New York
            April 21, 2006

                              SKADDEN, ARPS, SLATE, MEAGHER
                              & FLOM LLP

                              By:    /s/ John Wm. Butler, Jr.
                                    John Wm. Butler, Jr. (JB 4711)
                                    John K. Lyons (JL 4951)
                                    Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois 60606
                              (312) 407-0700

                                        - and -

                              By:    /s/ Kayalyn A. Marafioti
                                    Kayalyn A. Marafioti (KM 9632)
                                    Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

                              Attorneys for Delphi Corporation, et al.,
                                Debtors and Debtors-in-Possession

17

**Hearing Date and Time: May 12, 2006 at 10:00 a.m.**
**Objection Deadline:  May 5, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)


    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)


Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                              :
        In re                                 :    Chapter 11
                                              :
    DELPHI CORPORATION, et al.,                :    Case No. 05-44481 (RDD)
                                              :
                            Debtors.          :    (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

NOTICE OF MOTION FOR ORDER UNDER 11 U.S.C. § 363(b) AND
FED. R. BANKR. P. 6004 AUTHORIZING DEBTORS' ENTRY
INTO AGREEMENTS WITH BOOZ ALLEN HAMILTON INC.

PLEASE TAKE NOTICE that on April 21, 2006, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases, filed a Motion For Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Authorizing Debtors' Entry Into Agreements With Booz Allen Hamilton Inc. (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Motion will be held on May 12, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York, 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion (a) must be in writing, (b) must conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York and the Third Supplemental Order Under 11 U.S.C. §§ 102 (1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, And Administrative Procedures (the "Third Supplemental Case Management Order") (Docket No. 3293), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) must

2

be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n:

General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP,

333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.),

(iii) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher &

Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n:  Kenneth S.

Ziman), (iv) counsel for the agent under the Debtors' postpetition credit facility, Davis Polk

& Wardell, 450 Lexington Avenue, New York, New York 10017 (Att'n:  Marlane Melican),

(v) counsel for the official committee of unsecured creditors, Latham & Watkins, 885 Third

Avenue, New York, New York, 10022 (Att'n:  Robert J. Rosenberg and Mark A. Broude),

and (vi) the Office of the United States Trustee for the Southern District of New York, 33

Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard), in

each case so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time)** on **May

5, 2006** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth herein and in accordance with the Third Supplemental Case Management Order will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance with the procedures set forth herein and in the Third Supplemental Case Management Order, the Bankruptcy Court may enter an order granting the Motion without further notice.

Dated: New York, New York
      April 21, 2006

             SKADDEN, ARPS, SLATE, MEAGHER
               & FLOM LLP

             By: /s/ John Wm. Butler, Jr._____
                 John Wm. Butler, Jr. (JB 4711)
                 John K. Lyons (JL 4951)
                 Ron E. Meisler (RM 3026)
             333 West Wacker Drive, Suite 2100
             Chicago, Illinois  60606
             (312) 407-0700

                     - and -

             By: /s/ Kayalyn A. Marafioti_____
                 Kayalyn A. Marafioti (KM 9632)
                 Thomas J. Matz (TM 5986)
              Four Times Square
             New York, New York  10036
             (212) 735-3000

             Attorneys for Delphi Corporation, et al.,
               Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
     In re                            :        Chapter 11
                                          :
DELPHI CORPORATION, <u>et al.</u>,              :        Case No. 05-44481 (RDD)
                                          :
               Debtors.        :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. § 363(b) AND FED. R. BANKR. P. 6004 AUTHORIZING
<u>DEBTORS' ENTRY INTO AGREEMENTS WITH BOOZ ALLEN HAMILTON INC.</u>

("BOOZ ALLEN ORDER")

        Upon the motion, dated April 21, 2006 (the "Motion"), of Delphi Corporation and

certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned

cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. §§ 363(b) of

chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended, and Fed. R.

Bankr. P. 6004 authorizing the Debtors' entry into and performance under certain agreements

with Booz Allen Hamilton Inc. ("Booz Allen"); and upon the record of the hearing held on the

Motion; and this Court having determined that the relief requested in the Motion is in the best

interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it

appearing that proper and adequate notice of the Motion has been given and that no other or

further notice is necessary; and after due deliberation thereon; and good and sufficient cause

appearing therefor, it is hereby

        ORDERED, ADJUDGED, AND DECREED THAT:

        1.       The Motion is GRANTED.

2.      The Debtors are authorized, but not directed, to enter into and fully

perform under their agreement with Booz Allen for the second phase (the design phase) of the

Debtors' SG&A restructuring program (the "Booz Allen Agreement"), including making all

payments due to Booz Allen pursuant to the Booz Allen Agreement.

3.      The Debtors are further authorized, but not directed, in the exercise of

their business judgment, to enter into an agreement with Booz Allen for the implementation

phase of the SG&A restructuring program (the "Implementation Agreement") and to pay Booz

Allen under that agreement, without further court approval but subject to the following

procedures (the "Procedures"):

(a)      As soon as Delphi and Booz Allen have reached agreement
regarding Booz Allen's role in the implementation phase, the Debtors shall submit the
Implementation Agreement to (i) the Office of the United States Trustee for the Southern
District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004
(Att'n: Alicia M. Leonhard, Esq.) and (ii) counsel for the Creditors' Committee, Latham
& Watkins LLP, 885 Third Avenue, New York, New York 10022-4802 (Att'n: Robert J.
Rosenberg, Esq.) (the "Notice Parties").  The Implementation Agreement shall be served
by facsimile, overnight delivery, or hand delivery.

(b)      The Notice Parties shall have ten business days following initial
receipt of the Implementation Agreement to object to or request additional time to
evaluate the Implementation Agreement.  Any objections shall be submitted in writing to
counsel for the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker
Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr., Esq.) and counsel
for Booz Allen, Chadbourne & Parke LLP, 30 Rockefeller Plaza, New York, New York
10112 (Att'n: Howard Seife, Esq.).  If counsel to the Debtors and counsel to Booz Allen
receive no written objection or written request for additional time prior to the expiration
of such ten business day period, the Debtors shall be authorized to enter into and perform
their obligations under the Implementation Agreement.

(c)      If a Notice Party objects to the proposed Implementation Agreement
within the proscribed ten business day period, the Debtors and such objecting Notice
Party shall meet and confer in an attempt to negotiate a consensual resolution of the
objection.  Should either party determine that an impasse exists, the Debtors shall move
the Bankruptcy Court for authority to enter into the Implementation Agreement upon
notice to the objecting party and other parties-in-interest in accordance with the terms of
the Third Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P.
2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice,

2

Case Management, and Administrative Procedures, entered April 20, 2006 (Docket No. 3293).

       4.     This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

       5.     The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated: New York, New York
      May ___, 2006

                                _____
                                UNITED STATES BANKRUPTCY JUDGE

3

# EXHIBIT E

Hearing Date and Time: May 12, 2006 at 10:00 a.m.
Objection Deadline: May 5, 2006 at 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

     - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
     Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -  -  x
                                              :
          In re                               :     Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :     Case No. 05-44481 (RDD)
                                              :
                                              :     (Jointly Administered)
          Debtors.                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER 11 U.S.C. § 365 AND
FED. R. BANKR. P. 6006 AUTHORIZING REJECTION OF
OEM LICENSE AND SUPPLY AGREEMENT WITH INOVISE MEDICAL, INC.

("INOVISE REJECTION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order pursuant to 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006 authorizing Delphi Medical Systems Corporation ("Delphi Medical") to reject that certain OEM License and Supply Agreement dated as of April 11, 2005 between Inovise Medical, Inc. and Delphi Medical.  In support of this Motion, the Debtors respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtor's chapter 11 cases.

2.    On October 17, 2005, the Office of the Unites States Trustee appointed an official committee of unsecured creditors.  No trustee or examiner has been appointed in the Debtors' cases.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are section 365 of the

Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy

Rules").

B.    Current Business Operations Of The Debtors

5.    Delphi and its subsidiaries and affiliates (collectively, the "Company") had

global 2005 net sales of approximately $26.9 billion, and global assets as of August 31, 2005 of

approximately $17.1 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth

largest public company business reorganization in terms of revenues, and the thirteenth largest

public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are

not chapter 11 debtors and continue their business operations without supervision from the

Bankruptcy Court.

6.    The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

7.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary

of GM.  Prior to January 1, 1999, GM conducted the Company's business through various

divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions

and subsidiaries were transferred to the Company in accordance with the terms of a Master

Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi

accelerated its evolution from a North American-based, captive automotive supplier to a global

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates.

3

supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.      Events Leading To The Chapter 11 Filing

8.      In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2]  Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.8 billion on net sales of $26.9 billion.

9.      The Debtors believe that the Company's financial performance has deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

10.     In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of

---

[2]     Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

4

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the

Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined the key tenets of its

transformation plan.  The Company believes that this plan will enable it to return to stable,

profitable business operations and allow the Debtors to emerge from these chapter 11 cases in

the first half of 2007.  To complete their restructuring process, the Debtors must focus on five

key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which

to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize

GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business

commitment to the Company.  Third, the Debtors must streamline their product portfolio to

capitalize on their world-class technology and market strengths and make the necessary

manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried

workforce to ensure that the Company's organizational and cost structure is competitive and

aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise

a workable solution to their current pension situation.

12.    In connection with the first two elements of the Company's transformation

plan, Delphi continues to participate in discussions with its unions and GM.  Throughout those

discussions, Delphi has consistently communicated a clear message to both its hourly workforce

and GM: Delphi is committed to finding a consensual resolution to its issues and intends to

continue to discuss with its unions and GM ways to become competitive in the Debtors' U.S.

operations.  To that end, Delphi, GM and the UAW recently received this Court's approval of a

tripartite agreement providing for a special hourly attrition program for Delphi's UAW-

5

represented employees. This special hourly attrition program could provide as many as 18,000 of Delphi's 23,000 existing UAW-represented long-term hourly employees with "soft landings" through retirement attrition programs and GM flowbacks. Delphi also hopes to reach agreement on similar hourly attrition programs with its other unions, which could provide as many as 4,500 additional hourly employees with retirement programs or incentives.

13.    These hourly attrition programs constitute an important first step in implementing the Debtors' transformation plan, but will not resolve all of the issues related to Delphi's uncompetitive labor agreements. Moreover, Delphi has not yet reached comprehensive agreements with its unions and GM. Therefore, on March 31, 2006, Delphi moved under sections 1113 and 1114 of the Bankruptcy Code for authority to reject its U.S. labor agreements and to modify retiree benefits.[3] Contemporaneously therewith, the Debtors also moved to reject unprofitable supply contracts with GM.[4] Among the reasons for the GM contract rejection motion was the Debtors' belief that GM must cover a greater portion of the costs of manufacturing products for GM at plants that bear the burden of the Debtors' legacy costs. This initial motion covers approximately half of the Debtors' North American annual purchase volume revenue from GM but only 10% of the Debtors' total contracts with GM. Although the filing of these motions was a necessary procedural step, the Debtors remain focused on reaching a consensual resolution with all of Delphi's unions and GM before a hearing on the motions is necessary.

14.    To implement the third element of the Debtors' transformation plan, the Company announced plans to focus its product portfolio on those core technologies for which the

---

[3]    Motion For Order Under 11 U.S.C. § 1113(c) Authorizing Rejection Of Collective Bargaining Agreements And Under 11 U.S.C. § 1114(g) Authorizing Modification Of Retiree Welfare Benefits (Docket No. 3035)

[4]    Motion For Order Under 11 U.S.C. § 365 And Fed. R. Bankr. P. 6006 Authorizing Rejection Of Certain Executory Contracts With General Motors Corporation (Docket No. 3033)

Company has significant competitive and technological advantages and expects the greatest

opportunities for increased growth.   To that end, the Company will concentrate the organization

around the following core strategic product lines: (a) Controls & Security (Body Security,

Mechatronics, Power Products, and Displays), (b) Electrical/Electronic Architecture

(Electrical/Electronic Distribution Systems, Connection Systems, and Electrical Centers), (c)

Entertainment & Communications (Audio, Navigation, and Telematics), (d) Powertrain (Diesel

and Gas Engine Management Systems), (e) Safety (Occupant Protection and Safety Electronics),

and (f) Thermal (Climate Control & Powertrain Cooling).[5]

15.    In contrast, the Company similarly identified certain non-core product lines

that do not fit into its future strategic framework, including Brake & Chassis Systems, Catalysts,

Cockpits and Instrument Panels, Door Modules and Latches, Ride Dynamics, Steering, and

Wheel Bearings.  The Company will seek to sell or wind down these non-core product lines

(which will include approximately one-third of its global manufacturing sites) and will consult

with its customers, unions, and other stakeholders to carefully manage the transition of such

affected product lines.  The Company intends to sell or wind down the non-core product lines

and manufacturing sites by January 1, 2008.

16.    As part of its organizational restructuring, the fourth element of the Debtors'

transformation plan, the Company expects to reduce its global salaried workforce by as many as

8,500 employees as a result of portfolio and product rationalizations and initiatives adopted

following an analysis of the Company's selling, general, and administration ("SG&A") cost

saving opportunities.  The Company believes that once its SG&A plan is fully implemented, the

---

[5]    The Company does not expect the portfolio changes to have a significant impact on its independent aftermarket
or consumer electronics businesses.  Similarly, the Company does not expect an impact on medical, commercial
vehicles, or other adjacent-market businesses and product lines.

7

Company should realize savings of approximately $450 million per year in addition to savings realized from competitive measures planned for its core businesses and the disposition of non-core assets.

17.    As noted above, the final key tenet of the transformation plan is to devise a workable solution to the Debtors' current pension situation.  The Debtors' goal is to retain the benefits accrued under the existing defined benefit U.S. pension plans for both the Debtors' hourly and salaried workforce.  To do so, however, it will be necessary to freeze the current hourly U.S. pension plan as of October 1, 2006 and to freeze the current salaried U.S. pension plan as of January 1, 2007.  Despite the freeze, because of the size of the funding deficit, it will also be necessary for the Debtors to obtain relief from the Pension Benefit Guaranty Corporation, the Internal Revenue Service, the Department of Labor, and potentially Congress, to amortize funding contributions over a long-term period.  The Company intends to replace the hourly plan (for certain employees) and the salaried plan with defined contribution plans.

18.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

19.    By this Motion, the Debtors seek an order under section 365 of the Bankruptcy Code and Bankruptcy Rule 6006 authorizing Delphi Medical to reject that certain OEM License and Supply Agreement dated as of April 11, 2005 between Inovise Medical, Inc. ("Inovise") and Delphi Medical (the "Agreement") effective as of May 12, 2006.

8

Basis For Relief

20.    On April 11, 2005, Delphi Medical and Inovise entered into the Agreement,

pursuant to which Inovise granted Delphi Medical a license of certain intellectual property for

use in Delphi Medical's electrocardiography ("ECG") products.  Specifically, Inovise granted

Delphi Medical exclusive (as to certain markets) and nonexclusive (as to certain other markets)

licenses of its Audicor software (the "Audicor Software") which was to be used in Delphi

Medical's multiparameter vital signs monitors (the "Products").  Pursuant to the Agreement,

Inovise also agreed to sell Delphi Medical certain Inovise single-use disposable sensors (the

"Sensors" and, collectively with the Audicor Sofware, the "Inovise Devices"), which would be

necessary to be used with the Products incorporating the Audicor Software.

21.    The Inovise Devices represent only one of multiple possible technologies

which could be incorporated into the Products.  The Inovise Devices remain in the

developmental stages.  Although Inovise has developed prototypes of vital signs monitors

incorporating the Inovise Devices, the actual functionality of the Inovise Devices in a clinical

setting has not yet been determined.  It is crucial to Delphi Medical's successful launch of the

Products that they incorporate technologies with proven functionality.  Accordingly, Delphi

Medical has determined that it cannot assume the inherent risk created by the unproven nature of

the Inovise Devices in bringing the Products to market successfully.

22.    Furthermore, to be successful in the marketplace, the Inovise Devices will

require a broad base of physicians to be aware of the technology, understand it, and request it.

Such acceptance by physicians does not currently exist and Delphi Medical believes that it will

be a considerable period of time, if ever, before a critical mass of physicians supporting the

Inovise Devices develops.  Therefore, Delphi Medical has determined that marketing the

Products incorporating the Inovise Devices is likely to be a significant hindrance to market

9

acceptance of the Products.  In contrast, Delphi Medical can, if rejection of the Agreement is

approved, incorporate existing and widely-accepted ECG technology into the Products, thereby

improving the likelihood of a successful market launch of the Products.  Absent the immediate

rejection of the Agreement, however, Delphi Medical cannot take steps to integrate alternative

technology into the Products because of certain exclusivity restrictions contained in the

Agreement.

23.    Finally, the costs associated with the Agreement and the Inovise Devices

further necessitate the immediate rejection of the Agreement.[6]  Delphi Medical has determined

that the cost of the Inovise Devices is not competitive with the cost of alternative and more

widely-accepted ECG technologies.  When combined with the significant concerns regarding the

marketability of Products incorporating the Inovise Devices, Delphi Medical is concerned that

the cost of the Inovise Devices would likely make the Products unprofitable.

24.    Therefore, Delphi Medical has determined, in its business judgment, that

continued performance under the Agreement constitutes an unnecessary use of Delphi Medical's

cash resources and that rejection of the Agreement is necessary.  Immediate rejection of the

Agreement will free Delphi Medical from the burdensome financial commitments required under

the Agreement and will also allow Delphi Medical to proceed immediately with the process of

incorporating alternative ECG technology into the Products.  Delphi Medical must be able to

begin that process expeditiously if it is to bring the Products to market in accordance with its

current product launch schedule.  Finally, Delphi Medical has determined that the prospects for

the ultimate success of the Products will be significantly better if the Products incorporate proven

and widely-accepted ECG technology rather than the unproven Inovise Devices.  For all of these

---

[6]    The financial and most other terms of the Agreement are protected by disclosure limitations included therein.

reasons, Delphi Medical has determined, in the sound exercise of its business judgment, that

rejection of the Agreement is in the best interests of Delphi Medical, its estate, its creditors, and

other parties-in-interest.

Applicable Authority

25.    Section 365(a) of the Bankruptcy Code provides, in relevant part, that "the

trustee, subject to the court's approval, may reject any executory contract or unexpired lease of

the debtor.  11 U.S.C. § 365(a).  Other than requiring court approval, Congress prescribed no

guidelines limiting a debtor's discretion to reject the kind of executory contracts at issue in this

Motion.

26.    The Supreme Court has recognized "the traditional 'business judgment'

standard applied by the courts to authorize rejection of the ordinary executory contract" under

section 365(a), and it cited the Second Circuit's decision in In re Minges, 602 F.2d 38, 42-43 (2d

Cir. 1979), as an example of the articulation of that standard.  NLRB v. Bildisco and Bildisco,

465 U.S. 513, 523 (1984).  In re Minges, in turn, mandates a "flexible" standard requiring only

that the debtor exercise its discretion in the best interests of the estate and its creditors.  In re

Minges, 602 F.2d at 42-43.  See also In re The Penn Traffic Co., 322 B.R. 63, 68 (Bankr.

S.D.N.Y. 2005) ("It is well established that the decision whether to assume or reject an executory

contract under Section 365(a) is a matter of business judgment to be exercised in the best

interests of the debtor in possession and its creditors.").

27.    In all circumstances, the touchstone of the section 365(a) analysis is

straightforward: "It is enough if, as a matter of business judgment, rejection of the burdensome

contract may benefit the estate." In re Minges, 602 F.2d at 43 (emphasis added). Accord  In re

Sundial Asphalt Co., 147 B.R. 72 (E.D.N.Y. 1992).

11

28.    The purpose of section 365(a) of the Bankruptcy Code is to give the debtor the opportunity to go through its inventory of executory contracts and decide "which ones would be beneficial to adhere to and which ones would be beneficial to reject." Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993).  When a debtor does so in a reasonable manner and in good faith, courts generally approve the debtor's decisions.  See In re G Survivor Corp., 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994) ("Generally, absent a showing of bad faith, or an abuse of discretion, the debtor's business judgment will not be altered.").

29.    In Orion Pictures, the Second Circuit stated that a bankruptcy court should "apply its best 'business judgment' to determine if it would be beneficial or burdensome to the estate" to reject or assume the contracts.  In re Orion Pictures Corp., 4 F.3d at 1099.  The Orion Pictures decision also cautions: "it is important to keep in mind that the bankruptcy court's 'business judgment' in deciding a motion to assume is just that —a judgment of the sort a businessman would make." Id. at 1099.  In other words, the Court "sits as an overseer of the wisdom with which the bankruptcy estate's property is being managed by the trustee or debtor-in-possession" Id.

30.    The vast majority of courts recognize that the business judgment standard is not a strict standard and presents a "low threshold" for the debtor to meet.  See In re The Penn Traffic Co., 322 B.R. 63, 68 (Bankr. S.D.N.Y. 2005); Lubrizol Enters., Inc. v. Richmond Metal Finishers Inc., 756 F.2d 1043, 1047 (4th Cir. 1985) (collecting cases); In re W&L Assoc., Inc., 71 B.R. 962, 966 (Bankr. E.D. Pa. 1987) ("We do not consider the 'business judgment test' to be a strict standard to meet"); In re Fashion Two Twenty, Inc., 16 B.R. 784, 787 (Bankr. N.D. Ohio 1982) ("The less rigid 'business judgment' is favored by most Courts and is adopted as the proper

standard herein."). "More exacting scrutiny would slow the administration of the debtor's estate

and increase its cost, interfere with the Bankruptcy Code's provision for private control of

administration of the estate, and threaten the court's ability to control a case impartially."

Richmond Leasing Co. v. Capital Bank, N.A., 762 F.2d 1303, 1311 (5th Cir. 1985).

      31.    The Second Circuit's Orion Pictures decision also instructs that proceedings

on a motion under 11 U.S.C. § 365(a) should be streamlined, consistent with the statutory

purpose of allowing a debtor-in-possession to manage affairs efficiently in the best interests of

the estate:

> At heart, a motion [under section 365(a)] should be considered a summary
> proceeding, intended to efficiently review the trustee's or debtor's decision to
> adhere to or to reject a particular contract in the course of the swift administration
> of the bankruptcy estate.  It is not the time or place for prolonged discovery or a
> lengthy trial with disputed issues.

Orion Pictures, 4 F.3d at 1098-99.

      32.    Courts have recognized that there are myriad reasons why a debtor might

determine, reasonably, that the rejection of a contract "may benefit the estate," including, among

other things, that:  (a) the contract is uneconomical to complete according to its terms, (b) the

contract is financially draining to the estate, and (c) rejection will make the debtor more

attractive to a prospective purchaser or investor.  See In re Riodizio, 204 B.R. at 425; see also In

re G Survivor Corp, 171 B.R. at 758 (listing possible factors).

      33.    Here, the Debtors have exercised their sound business judgment in

determining to reject the Agreement.  Incorporating the Inovise Devices into the Products will

jeopardize the successful launch of the Products, as the Inovise Devices have not garnered

significant market acceptance and have not yet been proven to be feasible.  In contrast,

alternative technologies that are widely-accepted are available to Delphi Medical and could be

incorporated into the Products absent the Agreement.  The likelihood of success of the Products

would be greatly enhanced through the use of these alternate technologies.  In addition, these alternative technologies would be more cost-effective, thereby improving the profitability of the Products for Delphi Medical.  The express terms of the Agreement, however, prohibit Delphi Medical from utilizing any alternative technologies in the products in certain critical markets.  Therefore, the Debtors believe that immediate rejection of the Agreement is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest.

Notice Of Motion

34.    Notice of this Motion has been provided in accordance with the Third Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered by this Court on March 28, 2006 (Docket No. 3293).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

35.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

14

WHEREFORE the Debtors respectfully request that the Court enter an order (a)

authorizing Delphi Medical to reject the Agreement effective as of May 12, 2006 and (b)

granting them such other and further relief as is just.

Dated:  New York, New York
   April 21, 2006

      SKADDEN, ARPS, SLATE, MEAGHER
       & FLOM LLP

      By: /s/ John Wm. Butler, Jr.
       John Wm. Butler, Jr. (JB 4711)
       John K. Lyons (JL 4951)
       Ron E. Meisler (RM 3026)
      333 West Wacker Drive, Suite 2100
      Chicago, Illinois  60606
      (312) 407-0700

         - and -

      By: /s/ Kayalyn A. Marafioti
       Kayalyn A. Marafioti (KM 9632)
       Thomas J. Matz (TM 5986)
      Four Times Square
      New York, New York 10036
      (212) 735-3000

      Attorneys for Delphi Corporation, et al.,
       Debtors and Debtors-in-Possession

**Hearing Date and Time: May 12, 2006 at 10:00 a.m.**
**Objection Deadline:  May 5, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)


        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)


Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession


Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698


Delphi Legal Information Website:
http://www.delphidocket.com


UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                            :
            In re                                           :    Chapter 11
                                                            :
    DELPHI CORPORATION, et al.,                             :    Case No. 05-44481 (RDD)
                                                            :
                            Debtors.                        :    (Jointly Administered)
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

NOTICE OF MOTION FOR ORDER UNDER 11 U.S.C. § 365 AND
FED. R. BANKR. P. 6006 AUTHORIZING REJECTION OF
OEM LICENSE AND SUPPLY AGREEMENT WITH INOVISE MEDICAL, INC.

PLEASE TAKE NOTICE that on April 21, 2006, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases, filed a Motion For Order Under 11 U.S.C. § 365 And Fed. R. Bankr. P. 6006 Authorizing Rejection Of OEM License And Supply Agreement With Inovise Medical, Inc. (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Motion will be held on May 12, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York, 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion (a) must be in writing, (b) must conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York and the Third Supplemental Order Under 11 U.S.C. §§ 102 (1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, And Administrative Procedures (the "Third Supplemental Case Management Order") (Docket No. 3293), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) must

2

be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n:  Kenneth S. Ziman), (iv) counsel for the agent under the Debtors' postpetition credit facility, Davis Polk & Wardell, 450 Lexington Avenue, New York, New York 10017 (Att'n:  Marlane Melican), (v) counsel for the official committee of unsecured creditors, Latham & Watkins, 885 Third Avenue, New York, New York, 10022 (Att'n:  Robert J. Rosenberg and Mark A. Broude), and (vi) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard), in each case so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time)** on **May 5, 2006** (the "Objection Deadline").

3

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Third Supplemental Case Management Order will be

considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely

filed and served in accordance with the procedures set forth herein and in the Third

Supplemental Case Management Order, the Bankruptcy Court may enter an order granting the

Motion without further notice.

Dated: New York, New York
      April 21, 2006

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

4

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                          :
      In re                         :     Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :     Case No. 05-44481 (RDD)
                                          :
                  Debtors.      :     (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - -  x

ORDER UNDER 11 U.S.C. § 365 AND FED. R. BANKR. P. 6006
AUTHORIZING REJECTION OF OEM LICENSE AND
SUPPLY AGREEMENT WITH INOVISE MEDICAL, INC.

("INOVISE REJECTION ORDER")

Upon the motion, dated April 21, 2006 (the "Motion"), of Delphi

Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-

in-possession in the above-captioned cases (collectively, the "Debtors"), for an order (the

"Order") under 11 U.S.C. § 365 and Fed. R. Bankr. P. 6006 authorizing Delphi Medical

Systems Corporation ("Delphi Medical") to reject that certain OEM License and Supply

Agreement dated as of April 11, 2005 by and between Inovise Medical, Inc. and Delphi

Medical (the "Agreement") effective as of May 12, 2006; and upon the record of the

hearing held on the Motion; and after due deliberation thereon, and sufficient cause

appearing therefor,

IT IS HEREBY FOUND AND DETERMINED THAT:

A.      The Debtors have exercised reasonable business judgment in

seeking authorization to reject the Agreement.

B.      The relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors, and other parties-in-interest.

      C.      The notice given by the Debtors of the Motion and the hearing thereon constitutes due and sufficient notice thereof.

      D.      Good and sufficient cause has been shown for the entry of this Order.

THEREFORE, IT IS ORDERED, ADJUDGED, AND DECREED THAT:

1.      The Motion is GRANTED.

2.      Effective as of May 12, 2006, the Agreement shall be rejected by Delphi Medical pursuant to section 365(a) of the Bankruptcy Code.

3.      Notwithstanding any provision of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended, or the Federal Rules of Bankruptcy Procedure to the contrary, this Order shall take effect immediately upon entry.

4.      This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

5.      The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:   New York, New York
         May __, 2006

_____
UNITED STATES BANKRUPTCY JUDGE

2

# EXHIBIT F

Presentment Date and Time: May 1, 2006 at 4:00 p.m.

Objection Deadline: May 1, 2006 at 2:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

333 West Wacker Drive, Suite 2100

Chicago, Illinois 60606

(312) 407-0700

John Wm. Butler, Jr. (JB 4711)

John K. Lyons (JL 4951)

Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

Four Times Square

New York, New York 10036

(212) 735-3000

Kayalyn A. Marafioti (KM 9632)

Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:

Toll Free:  (800) 718-5305

International:  (248) 813-2698

Delphi Legal Information Website:

http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                          :
            In re                                         :     Chapter 11
                                                          :
    DELPHI CORPORATION, et al.,                           :     Case No. 05- 44481 (RDD)
                                                          :
                                Debtors.                  :     (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - -   x

NOTICE OF PRESENTMENT OF ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b)
AND FED. R. BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF  BLAKE,
CASSELS & GRAYDON LLP AS CANADIAN COUNSEL TO DEBTORS
NUNC PRO TUNC TO JANUARY 9, 2006

PLEASE TAKE NOTICE that on April 21, 2006, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases, filed the Application For An Order Under 11 U.S.C. §§ 327(e) And 1107(b) And Fed. R. Bankr. P. 2014 Authorizing The Employment And Retention Of Blake, Cassels & Graydon LLP As Canadian Counsel To The Debtors, <u>Nunc Pro Tunc</u> To January 9, 2006 (the "Application," a copy of which is attached to this notice as <u>Exhibit A</u>).

PLEASE TAKE FURTHER NOTICE that if timely written objections are filed, served, and received in accordance with this notice, a hearing to consider approval of the Application will be held on May 12, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York, 10004.

PLEASE TAKE FURTHER NOTICE that if no written objections to the Application are timely filed, served, and received, the order filed with the Application and attached to this notice as <u>Exhibit B</u> will be submitted for signature to the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004 on May 1, 2006 at 4:00 p.m. (Prevailing Eastern Time).

PLEASE TAKE FURTHER NOTICE that objections, if any, to the

Application must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy

Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the

Third Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P.

2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice,

Case Management, And Administrative Procedures, entered by this Court on April 20,

2006 (the "Third Supplemental Case Management Order") (Docket No. 3293), and (c) be

filed with the Bankruptcy Court in accordance with General Order M-242 (as amended),

pursuant to which registered users of the Bankruptcy Court's case filing system must file

electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in

Portable Document Format (PDF), WordPerfect, or any other Windows-based word

processing format), (d) be submitted in hard-copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) be served upon (i)

Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel),

(ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker

Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the

agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425

Lexington Avenue, New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for

the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington

Avenue, New York, New York 10017 (Att'n: Marlane Melican), (v) counsel for the

Official Committee of Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue,

New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vi) Blake,

Cassels & Graydon LLP, 199 Bay Street Suite 2800, Commerce Court West Toronto,

Ontario Canada, M5L 1A9 (Att'n: Susan M. Grundy), and (vii) the Office of the United

States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New

York, New York 10004 (Att'n: Alicia M. Leonhard), in each case so as to be **received** no

later than **2:00 p.m. (Prevailing Eastern Time) on May 1, 2006** (the "Objection Dead-

line").

PLEASE TAKE FURTHER NOTICE that only those objections made as
set forth herein and in accordance with the Third Supplemental Case Management Order
will be considered by the Bankruptcy Court at the Hearing.  If no objections to the
Application are timely filed and served in accordance with the procedures set forth herein
and in the Third Supplemental Case Management Order, the Bankruptcy Court may enter
an order granting the Application **without further notice**.

Dated: New York, New York
       April 21, 2006

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
     In re                    :    Chapter 11
                                                      :
DELPHI CORPORATION, et al.,                           :    Case No. 05-44481 (RDD)
                                                      :
               Debtors.    :    (Jointly Administered)
                                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b)
AND FED. R. BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND
RETENTION OF BLAKE, CASSELS & GRAYDON LLP AS CANADIAN
COUNSEL TO DEBTORS NUNC PRO TUNC TO JANUARY 9, 2006

("BLAKES RETENTION APPLICATION")

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the

"Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), hereby submit this application (the "Application") for an order

under 11 U.S.C. §§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 authorizing the employment

and retention of Blake, Cassels & Graydon LLP ("Blakes") as Canadian counsel to the Debtors,

nunc pro tunc to January 9, 2006.  In support of this Application, the Debtors submit the

Declaration Of Susan M. Grundy In Support Of Application For Order Under 11 U.S.C. §§

327(e) And 1107(b) And Fed. R. Bankr. P. 2014 Authorizing Employment And Retention Of

Blake, Cassels & Graydon LLP As Canadian Counsel To Debtors Nunc Pro Tunc To January 9,

2006, dated April 20, 2005 (the "Grundy Declaration").  In further support of this Application,

the Debtors respectfully represent as follows:

<u>Background</u>

A.      <u>The Chapter 11 Filings</u>

1.      On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtor's chapter 11 cases.

2.      On October 17, 2005, the Office of the Unites States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner has been appointed in the Debtors' cases.

3.      This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

4.      The statutory predicates for the relief requested herein are sections 327(e) and 1107(b) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.      <u>Current Business Operations Of The Debtors</u>

5.      Delphi and its subsidiaries and affiliates (collectively, the "Company") had global 2005 net sales of approximately $26.9 billion, and global assets as of August 31, 2005 of approximately $17.1 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest

---

[1]      The aggregated financial data used in this Application generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

2

public company business reorganization in terms of assets. Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.    The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology. The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM. Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries. Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM. In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

8.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the

3

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.8 billion on net sales of $26.9 billion.

       9.     The Debtors believe that the Company's financial performance has

deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the

United States and related pricing pressures, and (c) increasing commodity prices.

       10.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements. Because discussions

with its major unions and GM had not progressed sufficiently by the end of the third quarter of

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the

Debtors' transformation plan and preserve value for its stakeholders.

D.     The Debtors' Transformation Plan

       11.    On March 31, 2006, the Company outlined the key tenets of its

transformation plan. The Company believes that this plan will enable it to return to stable,

profitable business operations and allow the Debtors to emerge from these chapter 11 cases in

the first half of 2007. To complete their restructuring process, the Debtors must focus on five

---

[2]     Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording
of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004. The Company's net
operating loss in calendar year 2004 was $482 million.

key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which

to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize

GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business

commitment to the Company.  Third, the Debtors must streamline their product portfolio to

capitalize on their world-class technology and market strengths and make the necessary

manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried

workforce to ensure that the Company's organizational and cost structure is competitive and

aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise

a workable solution to their current pension situation.

       12.     In connection with the first two elements of the Company's transformation

plan, Delphi continues to participate in discussions with its unions and GM.  Throughout those

discussions, Delphi has consistently communicated a clear message to both its hourly workforce

and GM: Delphi is committed to finding a consensual resolution to its issues and intends to

continue to discuss with its unions and GM ways to become competitive in the Debtors' U.S.

operations.  To that end, Delphi, GM and the UAW recently received this Court's approval of a

tripartite agreement providing for a special hourly attrition program for Delphi's UAW-

represented employees.  This special hourly attrition program could provide as many as 18,000

of Delphi's 23,000 existing UAW-represented long-term hourly employees with "soft landings"

through retirement attrition programs and GM flowbacks.  Delphi also hopes to reach agreement

on similar hourly attrition programs with its other unions, which could provide as many as 4,500

additional hourly employees with retirement programs or incentives.

       13.     These hourly attrition programs constitute an important first step in

implementing the Debtors' transformation plan, but will not resolve all of the issues related to

Delphi's uncompetitive labor agreements.  Moreover, Delphi has not yet reached comprehensive

agreements with its unions and GM.  Therefore, on March 31, 2006, Delphi moved under

sections 1113 and 1114 of the Bankruptcy Code for authority to reject its U.S. labor agreements

and to modify retiree benefits.[3]  Contemporaneously therewith, the Debtors also moved to reject

unprofitable supply contracts with GM.[4]  Among the reasons for the GM contract rejection

motion was the Debtors' belief that GM must cover a greater portion of the costs of

manufacturing products for GM at plants that bear the burden of the Debtors' legacy costs.  This

initial motion covers approximately half of the Debtors' North American annual purchase

volume revenue from GM but only 10% of the Debtors' total contracts with GM.  Although the

filing of these motions was a necessary procedural step, the Debtors remain focused on reaching

a consensual resolution with all of Delphi's unions and GM before a hearing on the motions is

necessary.

14.     To implement the third element of the Debtors' transformation plan, the

Company announced plans to focus its product portfolio on those core technologies for which the

Company has significant competitive and technological advantages and expects the greatest

opportunities for increased growth.   To that end, the Company will concentrate the organization

around the following core strategic product lines: (a) Controls & Security (Body Security,

Mechatronics, Power Products, and Displays), (b) Electrical/Electronic Architecture

(Electrical/Electronic Distribution Systems, Connection Systems, and Electrical Centers), (c)

Entertainment & Communications (Audio, Navigation, and Telematics), (d) Powertrain (Diesel

---

[3]     Motion For Order Under 11 U.S.C. § 1113(c) Authorizing Rejection Of Collective Bargaining Agreements
        And Under 11 U.S.C. § 1114(g) Authorizing Modification of Retiree Welfare Benefits (Docket No. 3035)

[4]     Motion For Order Under 11 U.S.C. § 365 And Fed. R. Bankr. P. 6006 Authorizing Rejection Of Certain
        Executory Contracts With General Motors Corporation (Docket No. 3033)

and Gas Engine Management Systems), (e) Safety (Occupant Protection and Safety Electronics), and (f) Thermal (Climate Control & Powertrain Cooling).[5]

15.     In contrast, the Company similarly identified certain non-core product lines that do not fit into its future strategic framework, including Brake & Chassis Systems, Catalysts, Cockpits and Instrument Panels, Door Modules and Latches, Ride Dynamics, Steering, and Wheel Bearings.  The Company will seek to sell or wind down these non-core product lines (which will include approximately one-third of its global manufacturing sites) and will consult with its customers, unions, and other stakeholders to carefully manage the transition of such affected product lines.  The Company intends to sell or wind down the non-core product lines and manufacturing sites by January 1, 2008.

16.     As part of its organizational restructuring, the fourth element of the Debtors' transformation plan, the Company expects to reduce its global salaried workforce by as many as 8,500 employees as a result of portfolio and product rationalizations and initiatives adopted following an analysis of the Company's selling, general, and administration ("SG&A") cost saving opportunities.  The Company believes that once its SG&A plan is fully implemented, the Company should realize savings of approximately $450 million per year in addition to savings realized from competitive measures planned for its core businesses and the disposition of non-core assets.

17.     As noted above, the final key tenet of the transformation plan is to devise a workable solution to the Debtors' current pension situation.  The Debtors' goal is to retain the benefits accrued under the existing defined benefit U.S. pension plans for both the Debtors'

---

[5]     The Company does not expect the portfolio changes to have a significant impact on its independent aftermarket or consumer electronics businesses.  Similarly, the Company does not expect an impact on medical, commercial vehicles, or other adjacent-market businesses and product lines.

hourly and salaried workforce.  To do so, however, it will be necessary to freeze the current

hourly U.S. pension plan as of October 1, 2006 and to freeze the current salaried U.S. pension

plan as of January 1, 2007.  Despite the freeze, because of the size of the funding deficit, it will

also be necessary for the Debtors to obtain relief from the Pension Benefit Guaranty Corporation,

the Internal Revenue Service, the Department of Labor, and potentially Congress, to amortize

funding contributions over a long-term period.  The Company intends to replace the hourly plan

(for certain employees) and the salaried plan with defined contribution plans.

18.    Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

## Relief Requested

19.    By this Application, the Debtors request authorization to employ and

retain Blakes as Canadian counsel, effective as of January 9, 2006.  Accordingly, the Debtors

respectfully request the entry of an order under sections 327(e) and 1107(b) of the Bankruptcy

Code and Bankruptcy Rule 2014 authorizing the employment and retention of Blakes pursuant to

an ongoing professional relationship between the Debtors and Blakes.

## Basis For Relief

20.    The Debtors submit that Blakes' proposed retention meets all the

prerequisites for retention of special counsel under section 327(e) of the Bankruptcy Code.

8

The Debtors' Employment Of Blakes
Is In The Best Interests Of The Estates

21.    Blakes is especially attuned to the unique Canadian law issues that have

arisen and may in the future arise in the Debtors' chapter 11 cases.  Blakes has a well-established

and prominent bankruptcy and insolvency practice in Canada with extensive experience in cross-

border insolvency matters and in dealing with troubled suppliers in the automotive industry.

Blakes has a highly qualified and dedicated team of partners, associates, students, and law clerks

with a broad range of expertise in commercial law, litigation, and many other practice areas

related to business law.  Accordingly, the Debtors believe that Blakes is well-qualified to serve

as Canadian counsel in these chapter 11 cases in an efficient and effective manner.

22.    The Debtors believe that the employment of Blakes will enhance and will

not duplicate the employment of Skadden, Arps, Slate, Meagher, & Flom LLP ("Skadden,

Arps"), the Debtors' general bankruptcy counsel, Shearman & Sterling LLP, the Debtors' special

counsel, Togut, Segal & Segal LLP, the Debtors' conflicts counsel, or any of the other

professionals retained by the Debtors to perform specific tasks that are unrelated to the work to

be performed by Blakes as Canadian counsel to the Debtors.  The Debtors understand that Blakes

will work with the other professionals retained by the Debtors to avoid any such duplication.

Services To Be Rendered By Blakes

23.    The Debtors wish to retain Blakes to provide services to the Debtors in

connection with Canadian law issues related to the Debtors' business and industry.  The Debtors

anticipate that such services will include the following:

(a)    legal advice and litigation services with respect to tort, contract, and general
        business disputes in Canada;

(b)    legal advice and representation with respect to out-of-court commercial workouts
        in Canada;

9

(c)     legal advice and representations with respect to financially distressed suppliers in Canada; and

(d)     miscellaneous commercial and litigation advice related to Canadian issues.

24.     Blakes has indicated its desire and willingness to represent the Debtors as set forth herein and to render the necessary professional services as Canadian counsel to the Debtors.

25.     The Debtors may request that Blakes undertake specific matters beyond the scope of the responsibilities set forth above.  Should Blakes agree in its discretion to undertake any such matter, the Debtors will seek further order of this Court.

<u>Disinterestedness Of Professionals</u>

26.     Section 327(e) does not require that Blakes and its attorneys be "disinterested persons" as defined in section 101(14) of the Bankruptcy Code.  Rather, section 327(e) of the Bankruptcy Code requires that Blakes not represent or hold any interest adverse to the estates or the Debtors with respect to the matter on which Blakes is to be employed.

27.     The Grundy Declaration filed in support of this Application contains information available to date on Blakes' connections with certain parties-in-interest, as required by Bankruptcy Rule 2014(a).  According to the Grundy Declaration, Blakes, its partners, counsel, and associates do not hold or represent any interest adverse to the Debtors, their creditors, any other party-in-interest in these chapter 11 cases, their respective attorneys and investment advisors, the United States Trustee, or any person employed in the Office of the United States Trustee, with respect to the matters on which Blakes is to be employed.

28.     Blakes has disclosed to the Debtors that Blakes has in the past represented, currently represents, and will likely in the future represent certain of the Debtors' creditors and other parties-in-interest in matters unrelated to the Debtors or their chapter 11 cases.  Blakes does

10

not believe that the foregoing raises any actual or potential conflict of interest of Blakes relating

to the representation of the Debtors as their Canadian counsel in these chapter 11 cases, but such

relationships are disclosed out of an abundance of caution.  The Debtors understand that, in order

to vitiate any actual or potential conflicts of interest, Blakes will not assist the Debtors in

connection with their analysis, negotiations, and litigation, if any, with parties with whom Blakes

has existing client relationships, and that Skadden, Arps (or other counsel if Skadden, Arps has a

conflict), instead, will handle these tasks.

Professional Compensation

29.    Blakes intends to apply to this Court for compensation and reimbursement

of expenses in accordance with section 330(a) of the Bankruptcy Code, the Bankruptcy Rules,

applicable guidelines established by the United States Trustee, and orders of this Court.  Blakes

acknowledges that all compensation will be subject to this Court's review and approval, after

notice and a hearing.

30.    Under the applicable provisions of the Bankruptcy Code, and subject to

the approval of this Court, the Debtors propose to pay Blakes its standard hourly rates as

disclosed in the Grundy Declaration.  Blakes has agreed to accept as compensation for the

services rendered in connection with its representation of the Debtors Blakes' standard hourly

rates, which vary from Cdn$470 to Cdn$830 per hour for partners, Cdn$275 to Cdn$570 per

hour for associates, Cdn$105 to Cdn$270 per hour for law clerks and Cdn$155 to Cdn$170 per

hour for students.

31.    No arrangement is proposed between the Debtors and Blakes for

compensation to be paid in these chapter 11 cases other than as set forth above and in the Grundy

Declaration.

11

32.     At the Debtors' request, Blakes has continued to assist the Debtors in connection with Canadian legal issues since January 9, 2006 and hence the Debtors request Blakes' retention to be effective <u>nunc</u> <u>pro</u> <u>tunc</u> to January 9, 2006.

## Conclusion

33.     For the foregoing reasons, the Debtors submit that the employment of Blakes as the Debtors' Canadian counsel on the terms set forth herein is in the best interests of the estates.

## Notice

34.     Notice of this Motion has been provided in accordance with the Third Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on April 20, 2006 (Docket No. 3293).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

35.     Because the legal points and authorities upon which this Application relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a)

authorizing the Debtors to employ and retain Blakes as their Canadian counsel, <u>nunc</u> <u>pro</u> <u>tunc</u> to

January 9, 2006, to perform the services set forth herein and (b) granting the Debtors such other

and further relief as is just.


Dated:    New York, New York
          April 21, 2006


                                     DELPHI CORPORATION, on behalf of itself and
                                     certain of its subsidiaries and affiliates, as Debtors and
                                     Debtors-in-Possession

                                     By:   /s John D. Sheehan_____
                                           Name: John D. Sheehan
                                           Title:  Vice President, Chief Restructuring
                                                   Officer, and Controller

13

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
      In re                             :    Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :    Case No. 05-44481 (RDD)
                                        :
                       Debtors.         :    (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b) AND FED. R. BANKR. P. 2014
AUTHORIZING EMPLOYMENT AND  RETENTION OF BLAKE, CASSELS & GRAYDON
LLP AS CANADIAN COUNSEL TO DEBTORS NUNC PRO TUNC TO JANUARY 9, 2006

("BLAKES RETENTION ORDER")

Upon the application, dated April 21, 2006 (the "Application"), of Delphi

Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C.

§§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 authorizing the employment and retention of

Blake, Cassels & Graydon LLP ("Blakes") as Canadian counsel to the Debtors nunc pro tunc to

January 9, 2006; and upon the Declaration of Susan M. Grundy, dated April 20, 2006, in support

of the Application (the "Grundy Declaration"); and this Court being satisfied with the

representations made in the Application and the Grundy Declaration that Blakes does not

represent or hold any interest adverse to any of the Debtors' estates or the Debtors with respect to

the matters on which Blakes is to be employed, and that Blakes' employment is necessary and

would be in the best interests of each of the Debtors' estates; and it appearing that proper and

adequate notice of the Application has been given and that no other or further notice is

necessary; and upon the record herein; and after due deliberation thereon; and good and

sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.    The Application is GRANTED.

2.    The Debtors' employment of Blakes as their Canadian counsel, pursuant to the

Application, is approved under sections 327(e) and 1107(b) of the Bankruptcy Code and Rule

2014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), with approval of

such employment being effective as of January 9, 2006.

3.    Blakes shall be compensated in accordance with the standards and procedures

set forth in sections 330 and 331 of the Bankruptcy Code and all applicable Bankruptcy Rules,

Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New

York (the "Local Rules"), guidelines established by the Office of the United States Trustee, and

further orders of this Court.

4.    This Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Order.

5.    The requirement under Local Rule 9013-1(b) for the service and filing of a

separate memorandum of law is deemed satisfied by the Application.


Dated:    New York, New York
          May _____, 2006



                                    _____
                                    UNITED STATES BANKRUPTCY JUDGE

2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                          :
      In re                 :    Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :    Case No. 05-44481 (RDD)
                                                          :
      Debtors.               :    (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

DECLARATION OF SUSAN M. GRUNDY IN SUPPORT OF APPLICATION FOR ORDER
UNDER 11 U.S.C. §§ 327(e) AND 1107(b) AND FED. R. BANKR. P. 2014 AUTHORIZING
EMPLOYMENT AND RETENTION OF BLAKE, CASSELS & GRAYDON LLP AS
CANADIAN COUNSEL TO DEBTORS NUNC PRO TUNC TO JANUARY 9, 2006

      SUSAN M. GRUNDY being duly sworn, deposes and states as follows:

      1.   I am a Partner of the firm Blake, Cassels & Graydon LLP ("Blakes").  I am a

member in good standing of the bar of, and am admitted to practice in, Ontario. I am co-chair of

Blakes' Restructuring & Insolvency Group and specialize in the commercial aspects of

insolvency, including work-outs, restructuring, bankruptcy and security enforcement.  I have

extensive experience in insolvency proceedings of all kinds, including numerous cases involving

troubled suppliers in the automotive sector.  I am a director of the Insolvency Institute of Canada,

past chair of the Insolvency subsection of the Canadian Bar Association (Ontario) and a member

of the American Bankruptcy Institute and INSOL International.  Blakes is the proposed Canadian

counsel for Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, the

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors").

2.   I submit this declaration (the "Grundy Declaration")[1] in support of the

Application For Order Under 11 U.S.C. §§ 327(e) And 1107(b) and Fed. R. Bankr. P. 2014

Authorizing Employment And Retention Of Blake, Cassels & Graydon LLP As Canadian

Counsel To Debtors <u>Nunc</u> <u>Pro</u> <u>Tunc</u> to January 9, 2006 (the "Application"), filed concurrently

herewith.

3.   The address and telephone number of Blakes' Toronto office is as follows:

199 Bay Street, Suite 2800
Commerce Court West
Toronto, Ontario, M5L 1A9
416-863-2400

<u>Qualifications of Professionals</u>

4.   Blakes is especially attuned to the unique Canadian law issues that arise in

the Debtors' industry.  Most importantly for present purposes, Blakes has a well-established and

prominent bankruptcy and insolvency practice in Canada with extensive experience in cross-

border insolvency matters and in dealing with troubled suppliers in the automotive industry.

Blakes has a highly qualified team of partners, associates, students and law clerks with a broad

range of expertise in commercial law, litigation, and many other practice areas related to

business law.

5.   Blakes began assisting the Debtors, as of January 9, 2006, with respect to

preserving the ongoing supply of material from certain troubled suppliers of the Debtors in

Canada.  Based on the services that Blakes has provided to the Debtors, Blakes is thoroughly

familiar with the Debtors' corporate structure, the nature of their financial status, and certain

legal matters relating to the Debtors.

---

[1]       Unless otherwise defined herein, all capitalized terms shall have the meanings ascribed to them in the
Application.

2

6.    Generally, in connection with the Debtors' cases, Blakes will continue to provide the Debtors with the following types of professional services:

(a)    legal advice and litigation services with respect to tort, contract, and general business disputes in Canada;

(b)    legal advice and representation with respect to out-of-court commercial workouts in Canada;

(c)    legal advice and representations with respect to financially distressed suppliers in Canada; and

(d)    miscellaneous commercial and litigation advice related to Canadian issues.

7.    In light of certain existing client representations on unrelated matters, the engagement of Skadden, Arps, Slate, Meagher, & Flom LLP ("Skadden, Arps") as the Debtors' bankruptcy counsel, the engagement of Shearman & Sterling LLP as the Debtors' special counsel, the engagement of Togut, Segal & Segal LLP as the Debtors' conflicts counsel, or the engagement of any other counsel for the Debtors', Blakes will not be responsible for or undertake any representation with respect to (a) advising the Debtors concerning specific contracts and claims of certain of Blakes' existing clients and (b) reviewing, interpreting, or commenting on the specific contracts and claims of certain of Blakes' existing clients.

8.    It is Blakes' understanding that the Debtors may request that Blakes undertake specific matters beyond the limited scope of the responsibilities set forth above. Should Blakes agree in its discretion to undertake any such matter, it is Blakes understanding that the Debtors will seek further order of this Court.

9.    Blakes is making efforts, together with the Debtors' other counsel, to ensure that there is no duplication of effort or work between such firms and Blakes.  It is Blakes' intention that the estates should receive the best value possible from the efficient coordination of work among its counsel.  Blakes believes that its lawyers, and the rest of the lawyers retained in

3

these cases have to date delineated clearly, and will continue to delineate clearly, the division of

work between them, so as to avoid any duplication of effort and to maximize the efficiencies of

the proposed arrangement.

<u>Compensation</u>

10.    There are no arrangements between Blakes and any entity to share

compensation received or to be received in connection with these chapter 11 cases.  Blakes has

agreed to accept as compensation for the services rendered in connection with its representation

of the Debtors: Blakes' standard hourly rates, which vary from Cdn$470 to Cdn$830 per hour for

partners, Cdn$275 to Cdn$570 per hour for associates, Cdn$105 to Cdn$270 per hour for law

clerks and Cdn$155 to Cdn$170 per hour for students.  Charges for legal assistants and support

staff are not normally charged by Blakes.  The hourly rates set forth above are subject to periodic

increases in the normal course of Blakes' business, often due to the increased experience of a

particular professional.  The hourly rates set forth above are Blakes' standard hourly rates for

work of this nature.  These rates are set at a level designed to compensate Blakes fairly for the

work of its lawyers and legal assistants and to cover fixed and routine overhead expenses.

Consistent with its policy, Blakes will continue to charge the Debtors for all other services

provided and for other charges and disbursements incurred in the rendition of services.  These

charges and disbursements include, among other things, costs for telephone charges,

photocopying charges, travel expenses, business meals, computerized research, messengers,

couriers, postage, witness fees, and other fees related to trials and hearings.

11.    Blakes intends to apply to this Court for allowance of compensation for

professional services rendered and reimbursement of charges and disbursements incurred in the

chapter 11 cases in accordance with applicable provisions of the Bankruptcy Code, the

4

Bankruptcy Rules, the Local Rules for the Southern District of New York, and the United States

Trustee Guidelines. Blakes will seek compensation for the services of each partner, associate,

law clerk and student acting on behalf of the Debtors in these cases at the applicable rates

charged for such services on a non-bankruptcy matter.

12. Blakes acknowledges that all amounts paid to Blakes during these chapter

11 cases are subject to final allowance by this Court. In the event that any fees or expenses paid

to Blakes during these cases are disallowed by this Court, the fees and expenses will be

disgorged by Blakes and returned to the Debtors or as otherwise ordered by this Court.

13. Blakes categorizes its billings by subject matter, in compliance with the

applicable guidelines of the Office of the United States Trustee (the "U.S. Trustee Guidelines").

Blakes acknowledges its compensation in the Debtors' cases is subject to approval of this Court

in accordance with section 330 of the Bankruptcy Code, Bankruptcy Rule 2016, and the U.S.

Trustee Guidelines.

<u>Disinterestedness</u>

14. Blakes has conducted a check for conflicts of interest and other conflicts and

connections with respect to the Debtors' bankruptcy cases. Blakes maintains a database

containing the names of current, former, and potential clients and other principal parties related

to such clients. I caused Blakes to review and analyze the conflict database to identify

relationships or potential connections between Blakes and the principal parties-in-interest in

these chapter 11 cases, using information provided to Blakes by the Debtors and Skadden, Arps

and information contained in the database.

15. Based upon this research, I have determined that Blakes has in the past

represented, currently represents, and will likely in the future represent certain of the Debtors'

5

creditors and other parties-in-interest in matters unrelated to the Debtors or these chapter 11 cases. I do not believe that the foregoing raises any actual or potential conflicts of interest of Blakes relating to the representation of the Debtors in these chapter 11 cases, but such relationships are disclosed out of an abundance of caution. I am advised that Section 327(e) of the Bankruptcy Code does not require that Blakes and its attorneys be "disinterested persons" as defined in section 101(14) of the Bankruptcy Code. Rather, section 327(e) of the Bankruptcy Code instead requires that Blakes not represent or hold any interest adverse to the estates or the Debtors with respect to the matter on which Blakes is to be employed. Attached hereto and marked as Exhibit A is a "List of Possible Interested Parties", consisting of the names of current or former clients, or affiliates or potential affiliates of those clients, who may have an interest in the estates.

16.    Skadden, Arps has provided a list (the "List") of the Debtors' (A) Affiliates and Non-Debtor Subsidiaries; (B) Former Officers and Directors (for the past three years); (C) All Lenders (including current and former agents under credit facilities and their counsel and financial advisors); (D) Insurers; (E) Professionals (attorneys, accountants, investment bankers, consultants for the past three years [Excluding those professionals that charge less than $100,000 in Annual Fees]; (F) Parties to Litigation and their Counsel (for claims of at least $500,000); (G) Top 50 Creditors; (H) Holders of 5% or More of any Outstanding Equity Security of the Company; (I) Record Noteholders holding 5% or More of Any Outstanding Issuance of Notes of the Company; (J) Indenture Trustees; (K) Underwriters of Securities Issued by the Company During the Past Three Years; (L) Counterparties to Major Leases; (M) Counterparties to Major Contracts (over $100,000); (N) Secured Financial Creditors; (O) Lienholders and Other Significant Lenders; (P) Major Customers; (Q) Major Suppliers; (R) Letter of Credit Issuers and

6

Beneficiaries; (S) State and Other Governmental Authorities with an Interest in the Company; (T) Unions Representing Company Employees; (U) Other Miscellaneous Interested Parties; (V) Objecting/Adverse Parties/Postpetition Parties; and (W) Master Service List and 2002 Entities List.   Blakes has conducted a series of searches of these names on its databases to identify relationships or potential connections between such parties and Blakes.   Blakes currently represents or has represented the entities listed on <u>Exhibit A</u>.

17.   Blakes' databases do not have the capability to identify affiliates of the parties named on the List.  In many cases, our search against a name on the List has identified matters related to entities with similar names.  The name as it appears on Blakes' databases is listed on Exhibit A.  Where the name listed on Exhibit A is not identical to the name on the List, additional information would be required to confirm whether that entity is in fact an affiliate of a name on the List.   Such entities are referred to on <u>Exhibit A</u> as "Potential Affiliates."

18.   It is my intention that, if Blakes becomes aware of any other connections of which it presently is unaware, Blakes will bring them to the attention of this Court and the U.S. Trustee.

19.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated:        April 20, 2006
              Toronto, Ontario


                                    By:  /s Susan M. Grundy___
                                         **SUSAN M. GRUNDY**

EXHIBIT A – List of Possible Interested Parties

A.    Affiliates and Non-Debtor Subsidiaries

Blakes currently represents, or has represented in the past, the following affiliates and non-debtor subsidiaries in matters unrelated to the Debtors and their Chapter 11 cases:

Nil

B.    Former Officers and Directors (for the Past Three Years)

Blakes currently represents, or has represented in the past, the following individual in matters unrelated to the Debtors and their Chapter 11 cases.  Further information would need to be obtained to confirm whether he is a former officer or director, within the past three years, of the Debtors:

Brown, Richard

C.    Lenders

Blakes currently represents, or has represented in the past, the following entities, who are either lenders named on the List or affiliates or potential affiliates of such lenders, in matters unrelated to the Debtors and their Chapter 11 cases:

Ableco Finance LLC
ABN AMRO Bank N.V.
Australia and New Zealand Banking Group Limited
Bank of America, National Association
Bank of Nova Scotia
Bank of New York
Bank of Tokyo Mitsubishi, Ltd.
Barclays Bank PLC
Bear, Stearns & Co. Inc.
BNP Paribas
Capitalsource Finance LLC
Cargill Financial Services Corporation
Citibank N.A.
Citicorp USA Inc.
Citigroup Inc.
Comerica Bank
Credit Industrial et Commercial
Credit Suisse
Deutsche Bank AG
Deutsche Bank Trust Company Americas
Dymas Funding Company LLC
Fifth Third Bank
Fortis Bank

9

Fortress Credit Opportunities Fund I LP
General Electric Capital Corporation
Goldman Sachs & Co.
HSBC Bank USA, National Association
Investors Bank & Trust Company
JPMorgan Chase Bank N.A.
KeyBank National Association
Liberty Mutual Insurance Company
Mizuho Corporate Bank
Morgan Stanley Senior Funding, Inc.
National City Bank
PNC Bank, National Association
Principal Life Insurance Company
Protective Life Insurance Company
Royal Bank of Scotland
Salomon Brothers Inc.
Seneca Capital
Simpson Thacher & Bartlett
Societe Generale
Sumitomo Mitsui Banking Corporation
SunTrust Bank
UBS AG
UFJ Bank Canada
Wachovia Bank, National Association
Watershed Capital Partners Inc.
Wells Fargo Foothill, Inc.

D.    Insurers

Blakes currently represents, or has represented in the past, the following entities, who are either insurers named on the List or affiliates or potential affiliates of such insurers, in matters unrelated to the Debtors and their Chapter 11 cases:

ACE INA Insurance Company of Canada
ACE USA
AIG Assurance Canada
Allianz Canada
American Home Assurance Company
Aon Corporation
Axis AB
Cananwill Inc.
Chubb Insurance Company of Canada
CNA Insurance Company
Continental Casualty Company
Coral Energy
First Lexington Corporation
GEP Techtrans Inc.

10

Great American Group
Hartford Life Inc.
Liberty Mutual Insurance Company
Lloyds of London
Seminole Canada Energy Company
SR International Business Insurance Company Ltd.
St. Paul Fire & Marine Insurance Company
Swiss Re
Union Gas Limited
Zurich Insurance Company

E.    Professionals (for the past three years and excluding those professionals that charge less than $100,000 in annual fees) (the "Professionals")

Blakes currently represents, or has represented in the past, the following entities, who are either Professionals named on the List or affiliates or potential affiliates of such Professionals, in matters unrelated to the Debtors and their Chapter 11 cases. In many cases, Blakes was retained as local counsel to represent a third party.

AIT Corporation
Ariba, Inc.
Baker & Botts
Baker & Daniels
Baker & McKenzie
Balch & Bingham
Banner & Witcoff, Ltd.
Burson-Marsteller International
Butzel Long
Carquest Corporation (The)
CSM Worldwide Inc.
Cunningham, David
Deloitte Touche Tohmatsu International
Dickenson Wright P.L.L.C.
Drinker Biddle & Reath
Dykema Gossett
E & Y/Ernst & Young
EDS Canada
Fleishman-Hillard
Foley & Lardner
Frost Brown Todd LLC
Heller Ehrman LLP
Hill & Knowlton
Honigman Miller Schwartz and Cohn
Hunton & Williams
Jaeckle Fleischmann & Mugel
Jones Day
Jones Lang Lasalle Inc.

11

Linklaters
McCann Erickson Ltd.
McCarthy Tetrault
Miller Canfield Paddock & Stone
Morris, Nichols, Arsht & Tunnell
Neal, Gerber & Eisenberg, LLP
Noerr Stiefenhofer Lutz
Ohio State University (The)
O'Melveny & Myers
Orion Partners LLC
Paul, Hastings, Janofsky & Walker LLP
Pepper Hamilton Scheetz
Pillsbury Winthrop
Price Heneveld Cooper DeWitt & Litton, LLP
PricewaterhouseCoopers LLP
Sales Productivity Systems Inc.
Reising Ethington Barnes Kisselle P.C.
Russell A. Farrow Limited
Salomon Smith Barney
Sapient Corporation
Shearman & Sterling LLP
Squire Sanders & Dempsey
Cooley Godward Huddleson & Tatum
TBM Consulting Group, Inc.
Thompson Hine & Flory
Towers Perrin
TPI Aviation Ltd.
UBS AG
Watson Wyatt & Company
Wilmer, Cutler & Pickering
Wood, Herron & Evans LP
Young & Rubicam Inc.

F.     Parties to Litigation and Their Counsel (for claims of at least $500,000)
       (the "Parties")

Blakes currently represents, or has represented in the past, the following entities, who are either Parties named on the List or affiliates or potential affiliates of such Parties, in matters unrelated to the Debtors and their Chapter 11 cases:

AEC Pipelines, L.P.
Allstate
Alternative Resources Corp.
Apple Computer, Inc.
Austin Rover Group, Limited
Bancomer, S.A.
BMC Industries Inc.

12

Bodman, Longley & Dahling, LLP
Brown, James Lee
Brown, John
Building Materials Investment Corporation
Campbell, John
Campbell, Robert
Chadbourne & Parke
Chemical Waste Management Inc.
Citibank N.A.
Lear Corporation
Coolidge Wall Womsley & Lombard Co. L.P.A.
Corus Aluminium Quebec Inc.
Covington & Burling
Daewoo International America Corp.
DaimlerChrysler AG
Dana Corporation
Davis, Robert
Denso International America Inc.
Eaton Corporation
Epsilon Group
ESS Technology Inc.
Fitch, Even, Tabin & Flannery
Fluor Corporation
Ford Motor Company
Franklin, Gordon
Furukawa Electric Co. Ltd. (The)
General Motors of Canada Limited [2]
Global Minerals and Metals Corporation
Gordon, Patricia
Greystone Partners Ltd.
Hanna, Terry
Honeywell Inc.
Howrey LLP
Howrey Simon Arnold & White LLP
HPI Inc.
Hutchinson Seal Corporation
International Truck and Engine Corporation
Invensys PLC
Jenner & Block
Lease Plan USA, Inc.
Lewis, Robert
Little, Robert William
Locke Liddell & Sapp LLP

---

[2] We last represented GM more than 10 years ago, on isolated matters. Blakes normally acts opposite GM. More recently, we have handled isolated matters for GMAC. None of these matters related to Delphi.

Marsh & McLennan Marine & Energy Ltd.
McGuireWoods LLP
MCI Telecommunications Corporation
Modine Manufacturing Corporation
Much Shelist Freed Denenberg Ament & Elger P.C.
Nesco Holdings, Inc.
O'Brien, Michael
Paragon Industries Inc.
Phillips, Robert
Polsinelli, White, Bardemand & Shalton
Quinn Emanuel & Urquhart
Robins, Kaplan, Miller & Ciresi
Roetzel & Andress
Saturn Distributing Inc.
Scott & Scott
Smith, Jim
Smith, Mary
Squitieri & Fearon, LLP
Stewart & Stewart
Stewart, Andrew
Stites & Harbison PLLC
Taylor, Jonathan B.
Textron Inc.
Thacher Proffitt & Wood
The Chamberlain Group, Inc.
Thompson & Knight
Toyota Motor Manufacturing North America, Inc.
Trico Constructors Ltd.
TRW Inc.
Ventra Group Inc.
Volvo Cars of Canada Ltd.
Waste Management Inc.
Watkins Motor Line, Inc.
Williams, Steven
Wilson, Steven
Young, Michael

G.     Top 50 Creditors

Blakes currently represents, or has represented in the past, the following entities, who are either top 50 creditors of the Debtors named on the List or affiliates or potential affiliates of such creditors, in matters unrelated to the Debtors and their Chapter 11 cases:

3m Canada Company
Alcoa – Sie Cargo Conversions, LLC
Robert Bosch GmbH
CIGNA Corporation

14

Clarion American Asset Management
Corning Incorporated
Dana Corporation
Delta Financial Corporation
Dura Automotive Systems (Canada) Ltd.
Freudenberg Nonwovens Inc.
General Electric Capital Corporation
Illinois Tool Works Inc.
Linamar Corporation
Matsushita Electric Industrial Co. Ltd.
NEC Corp.
Norsk Hydro Produksjon A.S.
Sequa Corporation
Sharp Electronics of Canada Ltd.
Solectron Corporation
TDK Corporation
Textron Inc., and its affiliate
Viasystems Canada, G.P.

H.    Holders of 5% or More of Any Outstanding Equity Security (the "Equity Holders")

Blakes currently represents, or has represented in the past, the following entities, who are either Equity Holders named on the List or affiliates or potential affiliates of such Equity Holders, in matters unrelated to the Debtors and their Chapter 11 cases:

State Street Global Advisors

I.    Record Noteholders Holding 5% or More of any Outstanding Issuance of Notes of the Company (the "Noteholders")

Blakes currently represents, or has represented in the past, the following entities, who are either Noteholders named on the List or affiliates or potential affiliates of such Noteholders, in matters unrelated to the Debtors and their Chapter 11 cases:

Bear, Stearns & Co. Inc.
CIBC Mellon Trust Company
Citigroup Inc.
Goldman Sachs & Co.
Investors Bank & Trust Company
Lehman Brothers
MSDW Investment Management Inc.

J.    Indenture Trustees

Blakes currently represents, or has represented in the past, the following entities, who are either indenture trustees named on the List or affiliates or potential affiliates of such trustees, in matters unrelated to the Debtors and their Chapter 11 cases:

Bank One, NA
First National Bank of Chicago
JPMorgan Chase Bank, N.A.

K.    Underwriters of Securities Issued by the Company During the Past Three Years (the "Underwriters")

Blakes currently represents, or has represented in the past, the following entities, who are either Underwriters named on the List or affiliates or potential affiliates of such Underwriters, in matters unrelated to the Debtors and their Chapter 11 cases:

ABN AMRO North America Inc.
Barclays Capital Inc.
BNP Paribas
Citigroup Global Markets Inc.
Credit Suisse First Boston Limited
Deutsche Bank Securities Inc.
Ferris, Baker, Watts
HSBC Securities (USA) Inc.
JPMorgan Securities Inc.
Merrill Lynch, Pierce, Fenner & Smith Incorporated
McDonald Investments Inc.
Morgan Stanley & Co. Incorporated
Oppenheimer & Co., Inc.
RBC Dain Rauscher Inc.
Scotia Capital Inc.
Stifel, Nicolaus & Company, Incorporated
Tokyo-Mitsubishi International PLC
UBS Securities LLC
Wachovia Capital Markets, LLC

L.    Counterparties to Major Leases

Blakes currently represents, or has represented in the past, the following entities, who are either counterparties to major leases named on the List or affiliates or potential affiliates of such counterparties, in matters unrelated to the Debtors and their Chapter 11 cases:

CSI Brokers Inc.
First American Corporation
Ford Motor Company
General Motors of Canada Limited [2]
LaSalle National Bank

16

RCA Inc.
Visteon Corporation

M.    Counterparties to Major Contracts (Over $100,000)

Blakes currently represents, or has represented in the past, the following entities, who are either parties to contracts over $100,000 named on the List or affiliates or potential affiliates of such parties, in matters unrelated to the Debtors and their Chapter 11 cases:

Alabama Power Company
Alpine Group Inc., The
AT&T Canada Inc.
SBC Datacomm Corporation (formerly Ameritech Corporation)
Blue Cross and Blue Shield
Bridgestone Firestone Canada Inc.
Cardinal Health, Inc.
CIGNA Corporation
Cinergy Services Inc.
Connecticut General Life Insurance
Constellation New Energy Canada Inc.
Consumers Power Company
Cullman Ventures, Inc.
Daewoo International America Corp.
Directed Electronics Inc.
DSSI Consulting Inc.
Emtech Group Ltd.
General Motors of Canada Limited [2]
Green Shield Canada
Hewitt Associates LLC
Hyundai Motor Company
IBM Canada Ltd.
Intel Corporation
Lear Corporation
Lockheed Martin Corporation
Lord Corporation
Lucent Technologies Inc.
Matsushita Electric Industrial Co. Ltd.
Metlife Canada
MCI Worldcom
Metropolitan Life Insurance Company
MRI Financial Group Inc.
Nextel Communications Inc.
New York State Electric & Gas Co.
Niagara Mohawk Power Corporation
Nokia Corporation
North America Philips Corporation
Raytheon Company

17

> Skytel Corporation
> State Street Bank and Trust Company
> Takata Restraint Systems Inc.
> TCS Food Service Equipment Inc.
> Tennessee Valley Authority
> The Bank of Tokyo-Mitsuibishi, Ltd.,
> The Regents of the University of Michigan
> TI Group
> Time Warner Inc.
> Toshiba America Consumer Products, Inc.
> Toyota Motor Corporation
> Valence Technology Inc.
> Value Options, Inc.
> Verizon Select Services Inc.

N.    Secured Financial Creditors

Blakes currently represents, or has represented in the past, the following entities, who are either secured financial creditors named on the List or affiliates or potential affiliates of such creditors, in matters unrelated to the Debtors and their Chapter 11 cases:

> See section (C) above

O.    Lienholders and Other Significant Lenders

Blakes currently represents, or has represented in the past, the following entities, who are either lienholders or other significant lenders named on the List or affiliates or potential affiliates of such lienholders or lenders, in matters unrelated to the Debtors and their Chapter 11 cases:

> SBC Datacomm Corporation (formerly Ameritech Corporation)
> Bank One, NA
> Bell Microproducts, Inc.
> RBC Centura Bank, Inc.
> Citicorp Vendor Finance, Ltd.
> Compaq Canada Inc.
> Credit Lyonnais
> Daewoo International America Corp.
> Dell Financial Services LP
> Fifth Third Bank
> General Electric Capital Corporation
> Husky Injection Molding Systems Ltd.
> ICX Technologies Inc.
> Kensington Capital Partners Limited
> Konica Minolta Business Solutions, USA
> LaSalle Bank National Association
> Lease Plan USA, Inc.

18

Metlife Canada
Mori Seiki Co. Ltd.
Motorola, Inc.
Relational Funding Corporation
The Huntington National Bank
Toshiba America Consumer Products, Inc.
Toyota Motor Credit Corporation
Van Dorn Demag Corporation
Wells Fargo Bank

P.    Major Customers

Blakes currently represents, or has represented in the past, the following entities, who are either customers named on the List or affiliates or potential affiliates of such customers, in matters unrelated to the Debtors and their Chapter 11 cases:

Aftermarket Specialties, Inc.
AGCO Corporation
ArvinMeritor Inc.
BMW Group Canada
Robert Bosch GmbH
Caterpillar
Cummins Engine Company, Inc.
Ford Motor Company
General Motors of Canada Limited [2]
Harley Davidson
American Honda Finance Inc.
Johnson Controls Ltd.
Kautex Holdings Ltd.
Mercedes-Benz Canada Inc.
Mitsubishi
Navistar International
Nissan Canada Inc.
Paccar Financial Corporation
Renault Canada Limited
Austin Rover Group Limited
Toyota Motor Manufacturing North America Inc.
Vauxhall Motors Limited
Visteon Corporation
Volvo GM Heavy Truck Corporation

Q.    Major Suppliers

Blakes currently represents, or has represented in the past, the following entities, who are either suppliers named on the List or affiliates or potential affiliates of such suppliers, in matters unrelated to the Debtors and their Chapter 11 cases:

19

AGFA Corporation
Agilent Financial Services
Alcan Inc.
Alpine Group Inc., The
Aluminum Company of America
Amphenol Corporation
BAX Global
BBK Ltd.
CAMI
Cardinal Health, Inc.
Caterpillar
Centra Inc.
Clarion America Asset Management
Corus Aluminium Quebec Inc.
CTS Corporation
Daewoo International America Corp.
Deloitte & Touche Inc.
Denso International America Inc.
The DMC Corporation
Essex Group Inc.
Federal Express Canada Limited
Furukawa Electric Co. Ltd. (The)
GE Medical Systems Information Technologies Inc.
General Electric Capital Corporation
GKN PLC
Henkel KG.A.A.
Hewlett-Packard Company
Holden Development Limited
International Truck and Engine Corporation
John Deere Limited
Johnson Matthey PLC
Koninklijke Phillips Electronics N.V.
KPMG LLP
L-3 Communications Corporation
Lefthand Networks Inc.
Lexington Safety Products Inc.
Marian, Inc.
Medrad Inc.
Microsoft Corporation
Mitsubishi
Motorola Inc.
MSX International Inc.
NEC Corp.
Nissho Iwai American Corporation
Noranda Inc.
Olin Corporation

Omron Dualtec Automotive Electronics, Inc.
Onex Corporation
Parker Hannifin (Canada) Inc.
Philips Semiconductors Inc.
Progressive Moulded Products Limited
Robert Bosch GmbH, or its affiliate
C. Ed. Schulte Gmbh
Siemens Canada Inc.
Stelco Inc.
StorageTek Canada Inc.
Sumitomo Electric Industries, Ltd.
Tomkins & Co.
Torrington Inc.
Total SA
Trelleborg Gummifabriks AB
TRW Inc.
Tyco Electronics Logistics AG
Tyco International Limited
UBS AG
USA Technologies, Inc.
Viasystems Canada G.P.
Visteon Corporation
Volvo Cars of Canada Ltd.

R.    Letter of Credit Issuers and Beneficiaries

Blakes currently represents, or has represented in the past, the following entities, who are either letter of credit issuers or beneficiaries names on the List or affiliates or potential affiliates of such issuers or beneficiaries, in matters unrelated to the Debtors and their Chapter 11 cases:

CNA Insurance Company
Prologis
Reliance Insurance Company
Toronto-Dominion Bank (The)

S.    State and Other Governmental Authorities with an Interest in the Company

Blakes currently represents, or has represented in the past, the following state or other governmental authorities in matters unrelated to the Debtors and their Chapter 11 cases:

Nil

T.    Unions Representing Company Employees

Blakes currently represents, or has represented in the past, the following union in matters unrelated to the Debtors and their Chapter 11 cases:

21

International Union of Operating Engineers

U.      Other Miscellaneous Interested Parties

Blakes currently represents, or has represented in the past, the following other interested parties in matters unrelated to the Debtors and their Chapter 11 cases:

Nil

V.      Objecting/Adverse Parties/Postpetition Parties

Blakes currently represents, or has represented in the past, the following entities, who are either objecting, adverse or postpetition parties named in the List or affiliates or potential affiliates of such parties, in matters unrelated to the Debtors and their Chapter 11 cases:

A. Schulman Inc.
BASF Corporation
Daewoo International America Corp.
Fujikura America
GKN PLC
Hexcel Corporation
Kensington Capital Partners Limited
Master Home Products Inc.
Mercedes Benz Canada Inc.
Raiffeisen Capital Management
SBC Communications Inc.
Saturn Distributing Inc.
Southwire Company
SPS Technologies
Sumitomo Electric Industries, Ltd.
TRW Canada Limited
TRW Vehicle Safety Systems, Inc.
Wilmington Trust Company

W.      Master Service List and 2002 List

Blakes currently represents, or has represented in the past, the following parties from the master service list or the 2002 list named on the List, or affiliates or potential affiliates of such parties, in matters unrelated to the Debtors and their Chapter 11 cases:

Aluminum Company of America
America Online Incorporated
ATS Automation Tooling Systems, Inc.
AT&T Canada Inc. (formerly Metro Calgary Fibre Services, Inc.)
Bi.Bi.Eelle – Abrasiui Industriali S.R.L.
Cerberus Capital Management, L.P.
Computer Patent Annuities

Cornell University
Curtis, Mallet-Prevost, Colt & Mosle LLP
Davis Polk & Wardwell
Federal Express Canada Limited
General Chemical Performance Products Ltd.
Hodgson Russ LLP
Honigman Miller Schwartz & Cohn
ICX Technologies Inc.
ITT Industries, Inc.
Jefferies & Company, Inc.
Kramer, Levin, Nessin, Kamin & Frankel LLP
Latham & Watkins
McDermott Will & Emery
Moody's Investors Services, Inc.
Motorola Inc.
National Instruments Corporation
Noma Company
Norsk Hydro Canada Oil & Gas Inc.
Nova Chemicals Ltd.
Orbotech, Inc.
Penske Truck Leasing Co., L.P.
Phillips, Nizer, Benjamin, Drim & Ballon
Seyfarth, Shaw, Fairweather & Geraldson
Silver Point Finance LLC
Simpson Thacher & Bartlett
Solectron Corporation
Teleflex Incorporation
Thermotech Energy Systems Ltd.
Toshiba America Consumer Products, Inc.
UPS Supply Chain Solutions
Weil Gotshal & Manges

# EXHIBIT G

**Hearing Date and Time: May 12,  2006 at 10:00 a.m.**
**Objection Deadline: May 5, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

         - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                      :
        In re                                         :    Chapter 11
                                                      :
DELPHI CORPORATION, et al.,                           :    Case No. 05-44481 (RDD)
                                                      :
                                                      :    (Jointly Administered)
        Debtors.                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER FED. R. BANKR. P. 9019 AUTHORIZING AND
APPROVING SETTLEMENT AGREEMENT WITH XM SATELLITE RADIO INC.

("XM SETTLEMENT MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Motion (the "Motion") For Order Under Fed. R. Bankr. P. 9019 Authorizing

And Approving Settlement Agreement With XM Satellite Radio Inc.  In support of this Motion,

the Debtors respectfully represent as follows:

<u>Background</u>

A.    <u>The Chapter 11 Filings</u>

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and

affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title

11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered

orders directing the joint administration of the Debtor's chapter 11 cases.

2.    On October 17, 2005, the Office of the Unites States Trustee appointed an

official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner

has been appointed in the Debtors' cases.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicate for the relief requested herein is Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

2

B.       Current Business Operations Of The Debtors

5.       Delphi and its subsidiaries and affiliates (collectively, the "Company") had

global 2005 net sales of approximately $26.9 billion, and global assets as of August 31, 2005 of

approximately $17.1 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth

largest public company business reorganization in terms of revenues, and the thirteenth largest

public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are

not chapter 11 debtors and continue their business operations without supervision from the

Bankruptcy Court.

6.       The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

7.       Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through

various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these

divisions and subsidiaries were transferred to the Company in accordance with the terms of a

Master Separation Agreement between Delphi and GM.  In connection with these transactions,

Delphi accelerated its evolution from a North American-based, captive automotive supplier to a

global supplier of components, integrated systems, and modules for a wide range of customers

and applications.  Although GM is still the Company's single largest customer, today more than

half of Delphi's revenue is generated from non-GM sources.

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates.

3

C.    Events Leading To The Chapter 11 Filing

8.    In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.8 billion on net sales of $26.9 billion.

9.    The Debtors believe that the Company's financial performance has

deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the

United States and related pricing pressures, and (c) increasing commodity prices.

10.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major unions and GM had not progressed sufficiently by the end of the third quarter of

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the

Debtors' transformation plan and preserve value for its stakeholders.

---

[2]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
loss in calendar year 2004 was $482 million.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined the key tenets of its

transformation plan.  The Company believes that this plan will enable it to return to stable,

profitable business operations and allow the Debtors to emerge from these chapter 11 cases in

the first half of 2007.  To complete their restructuring process, the Debtors must focus on five

key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which

to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize

GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business

commitment to the Company.  Third, the Debtors must streamline their product portfolio to

capitalize on their world-class technology and market strengths and make the necessary

manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried

workforce to ensure that the Company's organizational and cost structure is competitive and

aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise

a workable solution to their current pension situation.

12.    In connection with the first two elements of the Company's transformation

plan, Delphi continues to participate in discussions with its unions and GM.  Throughout those

discussions, Delphi has consistently communicated a clear message to both its hourly workforce

and GM: Delphi is committed to finding a consensual resolution to its issues and intends to

continue to discuss with its unions and GM ways to become competitive in the Debtors' U.S.

operations.  To that end, Delphi, GM and the UAW recently received this Court's approval of a

tripartite agreement providing for a special hourly attrition program for Delphi's UAW-

represented employees.  This special hourly attrition program could provide as many as 18,000

of Delphi's 23,000 existing UAW-represented long-term hourly employees with "soft landings"

through retirement attrition programs and GM flowbacks.  Delphi also hopes to reach agreement

5

on similar hourly attrition programs with its other unions, which could provide as many as 4,500

additional hourly employees with retirement programs or incentives.

13.     These hourly attrition programs constitute an important first step in

implementing the Debtors' transformation plan, but will not resolve all of the issues related to

Delphi's uncompetitive labor agreements.  Moreover, Delphi has not yet reached comprehensive

agreements with its unions and GM.  Therefore, on March 31, 2006, Delphi moved under

sections 1113 and 1114 of the Bankruptcy Code for authority to reject its U.S. labor agreements

and to modify retiree benefits.[3]  Contemporaneously therewith, the Debtors also moved to reject

unprofitable supply contracts with GM.[4]  Among the reasons for the GM contract rejection

motion was the Debtors' belief that GM must cover a greater portion of the costs of

manufacturing products for GM at plants that bear the burden of the Debtors' legacy costs.  This

initial motion covers approximately half of the Debtors' North American annual purchase

volume revenue from GM but only 10% of the Debtors' total contracts with GM.  Although the

filing of these motions was a necessary procedural step, the Debtors remain focused on reaching

a consensual resolution with all of Delphi's unions and GM before a hearing on the motions is

necessary.

14.     To implement the third element of the Debtors' transformation plan, the

Company announced plans to focus its product portfolio on those core technologies for which the

Company has significant competitive and technological advantages and expects the greatest

opportunities for increased growth.   To that end, the Company will concentrate the organization

around the following core strategic product lines: (a) Controls & Security (Body Security,

---

[3]     Motion For Order Under 11 U.S.C. § 1113(c) Authorizing Rejection Of Collective Bargaining Agreements And
        Under 11 U.S.C. § 1114(g) Authorizing Modification of Retiree Welfare Benefits (Docket No. 3035)

[4]     Motion For Order Under 11 U.S.C. § 365 And Fed. R. Bankr. P. 6006 Authorizing Rejection Of Certain
        Executory Contracts With General Motors Corporation (Docket No. 3033)

6

Mechatronics, Power Products, and Displays), (b) Electrical/Electronic Architecture

(Electrical/Electronic Distribution Systems, Connection Systems, and Electrical Centers), (c)

Entertainment & Communications (Audio, Navigation, and Telematics), (d) Powertrain (Diesel

and Gas Engine Management Systems), (e) Safety (Occupant Protection and Safety Electronics),

and (f) Thermal (Climate Control & Powertrain Cooling).[5]

15.     In contrast, the Company similarly identified certain non-core product

lines that do not fit into its future strategic framework, including Brake & Chassis Systems,

Catalysts, Cockpits and Instrument Panels, Door Modules and Latches, Ride Dynamics, Steering,

and Wheel Bearings.  The Company will seek to sell or wind down these non-core product lines

(which will include approximately one-third of its global manufacturing sites) and will consult

with its customers, unions, and other stakeholders to carefully manage the transition of such

affected product lines.  The Company intends to sell or wind down the non-core product lines

and manufacturing sites by January 1, 2008.

16.     As part of its organizational restructuring, the fourth element of the

Debtors' transformation plan, the Company expects to reduce its global salaried workforce by as

many as 8,500 employees as a result of portfolio and product rationalizations and initiatives

adopted following an analysis of the Company's selling, general, and administration ("SG&A")

cost saving opportunities.  The Company believes that once its SG&A plan is fully implemented,

the Company should realize savings of approximately $450 million per year in addition to

savings realized from competitive measures planned for its core businesses and the disposition of

non-core assets.

---

[5]    The Company does not expect the portfolio changes to have a significant impact on its independent aftermarket
or consumer electronics businesses.  Similarly, the Company does not expect an impact on medical, commercial
vehicles, or other adjacent-market businesses and product lines.

17.     As noted above, the final key tenet of the transformation plan is to devise a workable solution to the Debtors' current pension situation.  The Debtors' goal is to retain the benefits accrued under the existing defined benefit U.S. pension plans for both the Debtors' hourly and salaried workforce.  To do so, however, it will be necessary to freeze the current hourly U.S. pension plan as of October 1, 2006 and to freeze the current salaried U.S. pension plan as of January 1, 2007.  Despite the freeze, because of the size of the funding deficit, it will also be necessary for the Debtors to obtain relief from the Pension Benefit Guaranty Corporation, the Internal Revenue Service, the Department of Labor, and potentially Congress, to amortize funding contributions over a long-term period.  The Company intends to replace the hourly plan (for certain employees) and the salaried plan with defined contribution plans.

18.     Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

<u>Relief Requested</u>

19.     By this Motion, the Debtors seek entry of an order under Bankruptcy Rule 9019 authorizing and approving a settlement agreement (the "Settlement Agreement") entered into by the Debtor Delphi Automotive Systems LLC and XM Satellite Radio Inc. ("XM").

Basis For Relief

A.    Background To The Proposed Settlement Agreement

20.    The Debtors and XM have been bringing digital direct satellite radio products and service to vehicles and to the consumer electronics market for a number of years.[6] Together, the Debtors and XM have cooperated in the design, development, manufacture, distribution, and marketing of numerous in-vehicle and portable satellite radio products and accessories.  In the course of their relationship, however, certain disputes have arisen and the parties have become involved in protracted negotiations concerning the calculation and payment by XM to the Debtors of hardware subsidies (the "Subsidies") in connection with the Debtors' purchase of the Roady2, SKYFi2, and MyFi satellite radio products (the "Products"). Specifically, the parties dispute the impact of certain finance and extended warranty fees or charges imposed by Flextronics International USA Inc. ("Flextronics"), a third party manufacturer and supplier of various products to the Debtors, on the calculation of the Subsidies (the "Dispute").

B.    The Proposed Settlement Agreement

21.    In an effort to resolve the Dispute, to clarify the manner in which the Subsidies will be calculated in the future regarding the Products, and to solidify the terms under which XM will support Delphi's manufacture, distribution, and marketing of a new satellite radio product, XM and the Debtors entered into the Settlement Agreement, dated April 11, 2006, a copy of which is annexed hereto as Exhibit A.  The salient terms of the Settlement Agreement are as follows:

---

[6]    XM is a leading satellite radio service company that provides music, news, talk, information, entertainment, and sports programming for reception by vehicle, home, and portable radios nationwide and over the Internet to millions of subscribers.

9

1) XM and the Debtors will waive and release all claims against each other directly related to the Dispute.

2) In lieu of agreeing to increased Subsidies for the Products to cover fees or charges that are the subject of the Dispute, XM will make three quarterly payments to the Debtors in the amount of $100,000 each, commencing on June 30, 2006.  XM will continue to pay and the Debtors will accept the Subsidies for the Products in accordance with the terms of applicable agreements and excluding any fees or charges imposed by Flextronics.

3) Delphi will use good faith efforts to resolve with Flextronics any open issues related to certain non-manufacturing fees and charges with respect to the Products manufactured by Flextronics by no later than May 31, 2006.

4) XM will waive all past and future minimum Marketing Development Fund ("MDF") spending requirements imposed upon the Debtors under the various product agreements, including the agreements related to the Products.  XM will not be required to reimburse the Debtors for any MDF already expended or committed by the Debtors.

5) XM and the Debtors will use commercially reasonable steps to fulfill certain obligations, as specified in the Settlement Agreement, regarding the SKYFi3 product, which has not yet been introduced at retail.

6) The Debtors will invoice XM in an amount equal to $1,000,000 to support the Debtors' current 2006 engineering and supplier non-restructuring engineering costs for the SKYFi3 product.  XM will pay this invoice in full no later than June 30, 2006.

<u>Applicable Authority</u>

22.    By this Motion, the Debtors respectfully request the entry of an order under Rule 9019(a) of the Bankruptcy Rules approving the Settlement Agreement.  Bankruptcy Rule 9019 provides, in relevant part, that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement."  Bankruptcy Rule 9019(a).  Settlements and compromises are "a normal part of the process of reorganization."  <u>Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968) (quoting <u>Case v. L.A. Lumber Prods. Co.</u>, 308 U.S. 106, 130 (1939)); <u>see also</u> <u>In re Adelphia Communications Corp.</u>, 327 B.R. 143, 159 (decision to accept or reject settlement lies within

10

sound discretion of bankruptcy court), adhered to on reconsideration, 327 B.R. 175 (Bankr. S.D.N.Y. 2005).

23.    Approval of a compromise under Bankruptcy Rule 9019(a) is appropriate when the compromise is fair and equitable and is in the best interests of the debtor's estate.  See, e.g., TMT Trailer Ferry, 390 U.S. at 424; Adelphia, 327 B.R. at 159 ("The settlement need not be the best that the debtor could have obtained.  Rather, the settlement must fall 'within the reasonable range of litigation possibilities.'") (citations omitted) (quoting In re Penn Centr. Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979); Nellis v. Shugrue, 165 B.R. 115, 121 (S.D.N.Y. 1994) ("The obligation of the bankruptcy court is to determine whether a settlement is in the best interest of an estate before approving it.").  In general, compromises in the bankruptcy context should be approved unless they "'fall below the lowest point in the range of reasonableness.'"  Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (citation omitted).

24.    The Supreme Court in TMT Trailer Ferry set forth the following factors that courts should consider in determining whether a proposed settlement or compromise is in the best interests of a debtor's estate:  (a) the probability of the debtor's success in the litigation, (b) the difficulties associated with collection, (c) the complexity of the litigation, and the attendant expense, inconvenience, and delay, and (d) the paramount interests of the estate's creditors.  TMT Trailer Ferry, 390 U.S. at 424-25; see also Nellis, 165 B.R. at 122; Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002).

25.    Courts in this district have further elaborated on these factors to consider: (a)  the balance between the likelihood of plaintiff's or defendants' success should the case go to trial vis-à-vis the concrete present and future benefits held forth by the settlement without the expense and delay of a trial and subsequent appellate procedures, (b) the prospect of complex

11

and protracted litigation if the settlement is not approved, (c) the proportion of the class members

who do not object or who affirmatively support the proposed settlement, (d) the competency and

experience of counsel who support the settlement, (e) the relative benefits to be received by

individuals or groups within the class, (f) the nature and breadth of releases to be obtained by the

directors and officers as a result of the settlement, and (g) the extent to which the settlement is

truly the product of arms-length bargaining, and not of fraud or collusion.  Adelphia, 327 B.R. at

159-60; accord In re Texaco Inc., 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988).

26.    The bankruptcy court need not determine that all of the foregoing criteria

favor approval of a compromise, and the proposed compromise need not be the best agreement

that the debtor could have achieved under the circumstances.  See Adelphia, 327 B.R. at 159-60;

see also Penn Centr., 596 F.2d at 1114.  Instead, the court's proper "role is to determine whether

the settlement as a whole is fair and equitable," In re Lee Way Holding Co., 120 B.R. 881, 890

(Bankr. S.D. Ohio 1990), and falls "'within the reasonable range of litigation possibilities.'"  In re

Telesphere Communications, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (citation omitted).

To that end, courts should not substitute their own judgment for that of the debtor, but rather

should "'canvass the issues'" to affirm that the proposed settlement falls above "'the lowest point

in the range of reasonableness.'"  Adelphia, 327 B.R. at 159 (quoting W.T. Grant Co., 699 F.2d

at 608); accord Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs,

Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd sub nom. Sobchack v. Am. Nat'l Bank & Trust

Co., 17 F.3d 600 (2d Cir. 1994).

27.    The Settlement Agreement between the Debtors and XM should be

approved under Bankruptcy Rule 9019(a) because its terms are fair and equitable, fall well

within the range of reasonableness, and are in the best interests of the Debtors and their estates.

Most significantly, the Settlement Agreement solidifies the terms under which XM will support

12

Delphi's manufacture, distribution, and marketing of the SKYFi3 product.  XM has significant

expertise and proprietary knowledge in the design and development of portable satellite radio

products and has expended considerable time and resources towards the development of the

SKYFi3 product.  Pursuant to the terms of the Settlement Agreement, XM has agreed to provide

certain designs and schematics to the Debtors, as well as certain technical information and

technical consulting to assist the Debtors in the completion of the SKYFi3 product design and

development.  XM will waive all costs associated with the product development for the SKYFi3

product as well as the costs associated with factory support provided and to be provided to the

Debtors.  XM will provide additional monetary support by making an immediate payment of

$1,000,000 to support the Debtors' current 2006 engineering and supplier costs for the SKYFi3

product.  The Debtors believe that the technical expertise and monetary support XM will provide

to the Debtors pursuant to the Settlement Agreement is critical for the Debtors to successfully

launch the SKYFi3 product.

      28.     With respect to the Dispute specifically, in lieu of agreeing to increased

Subsidies for the Products to cover fees or charges that are the subject of the Dispute, XM will

make three quarterly payments to the Debtors in the amount of $100,000 each, commencing on

June 30, 2006.  XM will continue to make Subsidy payments to Delphi in connection with the

Products, which will give the Debtors access to additional working capital to fund their satellite

radio products business.

      29.     Finally, the Debtors believe that the Settlement Agreement is a reasonable

compromise under the circumstances because it avoids the potentially burdensome costs and

uncertainties of litigation while generating goodwill and preserving the positive working

relationships between the Debtors and XM and between the Debtors and Flextronics.  Those

positive working relationships and the expertise and technical assistance XM has provided, and

13

has agreed to continue to provide under the Settlement Agreement, has contributed and will

continue to contribute to the Debtors' success in their growing consumer electronics business.

The Debtors do not believe that this level of ongoing support by XM could be obtained through

the difficult and protracted litigation that would result if this Settlement Agreement is not

approved, and that the loss of such support would eventually result in significant harm to the

Debtors' consumer electronic business.

30.      Accordingly, in the exercise of their business judgment, the Debtors

believe that the terms of the Settlement Agreement are reasonable based upon the significant

benefits the Debtors will receive, as summarized above.  Therefore, based on the significant

benefits to be realized by the Debtors from entering into the Settlement Agreement, together with

the potential harm to the estates if the relief requested herein is not granted, the Debtors

respectfully request that the motion be granted.

## Notice Of Motion

31.      Notice of this Motion has been provided in accordance with the Third

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered by this Court on April 20, 2006 (Docket No. 3293).  In

light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

## Memorandum Of Law

32.      Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

14

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

        33.        WHEREFORE the Debtors respectfully request that this Court

enter an order (a) authorizing and approving the Settlement Agreement and (b) granting them

such other and further relief as is just.

Dated:  New York, New York
       April 21, 2006

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

**EXHIBIT A**

**SETTLEMENT AGREEMENT**



**S A T E L L i T E
R A D i O**

April 12, 2006

*Settlement Proposal Not Admissible For Any Purpose*

Mr. Frank Ordoñez
President
Delphi Product & Service Solutions
Delphi Automotive Systems LLC
1441 West Long Lake Road
Troy, Michigan 48098

> Settlement Letter Agreement Regarding Delphi / Manufacturer Finance Charge
> Issue -- Certain Additional Issues

Dear Frank:

This Letter Agreement (this "Letter Agreement") is made in reference to that certain letter (the
"Settlement Agreement") by and between Delphi Automotive Systems LLC ("Delphi") and XM
Satellite Radio Inc. ("XM") concerning the calculation and payment by XM to Delphi of
hardware subsidies (the "Subsidies") in connection with Delphi's purchase of the Roady2,
SKYFi2 and MyFi products (the "Products"), specifically pertaining to finance and extended
warranty fees or charges imposed by Flextronics ("Dispute"). In accordance with Fed. R. Evid.
408 and all other applicable laws and rules, neither this Letter Agreement nor the Settlement
Agreement nor any discussions or negotiations involving the contents or terms of this Settlement
Agreement may be used in any action or proceeding which may be commenced hereafter.

Delphi hereby agrees that the motion to be submitted to the Bankruptcy Court with respect to
approval of the Settlement Agreement shall be provided to XM at least one business day prior to
it being filed with the Bankruptcy Court so as to permit XM to review the motion for the purpose
of determining whether there are any potential breaches of any confidentiality provisions
pertaining to any agreements between XM and Delphi.

XM / Delphi Confidential    1500 ECKINGTON PLACE NE  WASHINGTON DC 20002-2194  PH 202 380 4000  FAX 202 380 4500  WWW.XMRADIO.COM

Mr. Frank Ordoñez
April 12, 2006
Page 2

If you are in agreement with the provisions of this Letter Agreement, please countersign below and return one fully-executed original to XM within three (3) business days after the date of this Letter Agreement.

Sincerely,

XM SATELLITE RADIO INC.

*Joseph J. Euteneuer*

Joseph J. Euteneuer
Chief Financial Officer

Acknowledged and Agreed,

DELPHI AUTOMOTIVE SYSTEMS LLC

*Francisco A. Ordoñez*

Mr. Francisco A. Ordoñez
President
Delphi Product & Service Solutions Division

cc: Joe Damato
    Joe Papelian

XM / Delphi Confidential



SATELLITE
RADIO

April 12, 2006

*Settlement Proposal Not Admissible For Any Purpose*

Mr. Frank Ordoñez
President
Delphi Product & Service Solutions
Delphi Automotive Systems LLC
1441 West Long Lake Road
Troy, Michigan  48098

<u>Settlement Letter Agreement Regarding Delphi / Manufacturer Finance Charge</u>
<u>Issue</u>

Dear Frank:

This letter ("Settlement Agreement") is submitted as part of negotiations between Delphi
Automotive Systems LLC ("Delphi") and XM Satellite Radio Inc. ("XM") concerning the
calculation and payment by XM to Delphi of hardware subsidies (the "Subsidies") in connection
with Delphi's purchase of the Roady2, SKYFi2 and MyFi products (the "Products"), specifically
pertaining to finance and extended warranty fees or charges imposed by Flextronics ("Dispute").
In accordance with Fed. R. Evid. 408 and all other applicable laws and rules, neither this
Settlement Agreement nor any discussions or negotiations involving the contents or terms of this
Settlement Agreement may be used in any action or proceeding which may be commenced
hereafter.

XM and Delphi hereby agree to the settlement terms below, to be submitted for approval to the
U.S. Bankruptcy Court for the Southern District of New York ("Bankruptcy Court") no later than
April 21, 2006.

Subject to both parties' compliance with their respective obligations under this Settlement
Agreement:

1. XM and Delphi will waive and release all claims against each other directly related to the
   Dispute.  This waiver and release includes any and all claims, damages, injuries,
   demands, actions, causes of action of whatever kind or nature, at law or in equity, known
   or unknown, asserted or unasserted, suspected or unsuspected, foreseeable or
   unforeseeable, that each party may have had or may now have or may hereafter have
   against the other party, for any cause existing at any time before or after the date hereof
   relating directly to the Dispute.

2. Delphi will promptly invoice XM an amount equal to $1,000,000 to support Delphi's
   current 2006 engineering and supplier NRE (Non Recurring Engineering) costs for the
   SKYFi3 product.  XM will pay this invoice in full no later than June 30, 2006.

Mr. Frank Ordoñez
April 12, 2006
Page 2

3. In lieu of agreeing to increased subsidies for the Products to cover fees or charges that are the subject of the Dispute, XM will make three (3) quarterly payments to Delphi in the amount of One Hundred Thousand Dollars ($100,000) each, with each such payment due on the last day of each calendar quarter commencing with June 30, 2006. XM will continue to pay (and Delphi will accept) the Subsidies for the Products in accordance with the terms of the applicable agreements between XM and Delphi with respect to the Products, provided, however, that Delphi agrees such Subsidies will be calculated in a manner that excludes any fees or charges imposed by Flextronics and related to: (i) payment terms longer than forty-five (45) days; (ii) late payments; (iii) an extended warranty period (i.e., a warranty period greater than nine (9) months from date of shipment from the factory); (iv) delivery other than ex factory; (v) delays or changes to or cancellations of firm orders; (vi) breach by Delphi of the terms of Delphi's agreement with Flextronics with respect to the Products; (vii) changes to the design, manufacturing process, the raw materials or sub-components used for the Products made at the direction of Delphi without XM's written consent; or (viii) actions or inactions of Delphi that result in a financial benefit to Delphi that are not contemplated by the applicable agreements between XM and Delphi with respect to the Products ("Non-MCPU Charges").

4. XM will waive all past and future minimum Marketing Development Fund ("MDF") spend requirements imposed upon Delphi under the SKYFi, SKYFi2 and MyFi product agreements. For the avoidance of doubt, nothing in this Settlement Agreement, including without limitation in paragraph 9, shall require XM to reimburse Delphi for any MDF already expended or committed by Delphi.

5. SKYFi3 Matters.

   a. XM has spent significant time and effort, towards the development of the SKYFi3 product. Specifically XM has provided Delphi with the overall electrical design including schematic diagram and PCB layout for two electrical design passes P1 and P2. XM also provided Delphi with factory support in Malaysia from XM's resident manufacturing support team. XM will waive all NRE costs for the SKYFi3 product development, including the P1 and P2 effort and other required XM technologies, including Napster/XM Desktop Client in forms useable with the SKYFi3 product (Certicom firmware upgrade is required at Delphi's expense).

   b. Delphi and XM will use commercially reasonable efforts to enter into a definitive agreement for the SKYFi3 product no later than April 19, 2006, which shall include a $20 hardware subsidy upon first-time activation (i.e., subsidy only payable with respect to the first activation of each SKYFi3 unit). XM will offer Delphi a hardware subsidy opportunity upon first-time activation for a future variant of the SKYFi3 platform based on the H90 chipset targeted for launch in

Mr. Frank Ordoñez
April 12, 2006
Page 3

spring of 2007. The exact subsidy amount will be based on the specific features of the product and whether it can be supported in the XM budget for 2007.

   c. Delphi shall be responsible for all third party royalties applicable to the SKYFi3 product.

   d. Subject to the terms of the "Sensitive Information MOU" between the parties, XM shall promptly provide Delphi with the following: layout, electrical design, "BunA" software and Nexus software (provided that Delphi shall be responsible for entering into a license agreement with and paying any required royalties to PacketVideo Corporation). XM shall provide reasonably necessary technical consulting to assist Delphi in completing the SKYFi3 product design and development.

   e. As previously agreed between Delphi and XM, Delphi shall assume all responsibility for the remaining design and development effort related to the SKYFi3 product, and shall be solely responsible for all future prototype builds, commencement of mass production, and timing of introduction at retail, which timing shall be established by Delphi. Delphi will be solely responsible to set all pricing, margin and MDF opportunities for its retailers and distributors. XM agrees to continue to provide reasonable factory support in Malaysia from XM's resident manufacturing support team through the date of the initial SKYFi3 product launch.

   f. XM will use reasonable efforts to market and promote the SKYFi3 product in accordance with retail demand and XM's overall marketing plans.

6. Delphi will use good faith efforts to resolve with Flextronics any open issues related to Non-MCPU Charges with respect to the Products manufactured by Flextronics, in no event later than May 31, 2006.

7. No later than April 21, 2006, Delphi will make a motion before the Bankruptcy Court for approval of the settlement terms set forth in this Settlement Agreement. Delphi agrees that the proposed order submitted to the Bankruptcy Court with respect to approval of the settlement terms set forth in this Settlement Agreement shall be acceptable to XM, in its reasonable discretion. XM shall review and approve the proposed order within three (3) days after receipt.

8. XM agrees to provide Delphi with details of XM's monthly activations on all Delphi aftermarket hardware. Details to be provided include, but are not limited to (to the extent known by XM): reported Delphi radios manufactured, radio ID number and activation

XM / Delphi Confidential

Mr. Frank Ordoñez
April 12, 2006
Page 4

date. This information will be made available to Delphi no later than June 30, 2006 and will provide a historical view back to the beginning of the Delphi-XM relationship.

9. Apart from the Dispute, XM claims that they overpaid Delphi on product subsidies arising from a previously undiscovered error in the database query used to generate the periodic first time activation reports provided by XM to Delphi ("XM Other Claim"). While Delphi disputes the XM Other Claim, it agrees to cooperate with XM to determine the validity of the XM Other Claim through an audit process or a process otherwise agreed to by the parties. In addition, Delphi claims that they under-billed certain premium freight (air-only portion), retail price protection and/or retail price credits (e.g., related to temporary price reductions authorized by XM) ("Delphi Other Claim" and together with the XM Other Claim, the "Other Claims"). While XM disputes the Delphi Other Claim, it agrees to cooperate with Delphi to determine the validity of the Delphi Other Claim through an audit process or a process otherwise agreed to by the parties. While the parties acknowledge that this provision does not constitute a settlement or an admission of the Other Claims, both XM and Delphi agree that they will work in good faith to resolve these Other Claims (and net them against each other). For the avoidance of doubt, the Other Claims exclude all issues covered by this Settlement Agreement. In the event that XM's claimed overpayment with respect to the XM Other Claim exceeds Delphi's claimed under-billing with respect to the Delphi Other Claim, XM agrees to waive its right to collect the first One Million Dollars ($1,000,000) of such difference from Delphi. Similarly, in the event that Delphi's claimed under-billing with respect to the Delphi Other Claim exceeds XM's claimed overpayment with respect to the XM Other Claim, Delphi agrees to waive its right to collect the first One Million Dollars ($1,000,000) of such difference from XM. In both cases, the difference for purposes of its definition as a pre-petition claim (arose prior to October 8, 2005) or a post-petition claim (arose on or after October 8, 2005) will be allocated pro-rata in accordance with the underlying liability and the time period during which such underlying liability arose.

10. This Settlement Agreement constitutes the entire agreement between the parties with respect to the subject matter and supersedes all prior written and oral and all contemporaneous oral agreements and understandings with respect to the subject matter, and changes or modifications shall be in writing and executed by both parties.

11. This Settlement Agreement shall be construed and enforced under the law of the State of New York without reference to any choice of law or conflict of law provisions or rules, and both Parties consent to the jurisdiction of the American Arbitration Association for the resolution of any dispute arising out of this Settlement Agreement.

12. This Settlement Agreement has been prepared mutually by both Parties.

XM / Delphi Confidential

Mr. Frank Ordoñez
April 12, 2006
Page 5


The effectiveness of this Settlement Agreement (including all obligations and agreements referenced herein) shall all be contingent upon the Bankruptcy Court entering an order approving Delphi's motion to approve the settlement terms set forth in this Settlement Agreement and such order not being subject to an appeal filed within ten (10) days of entry of the order by the Bankruptcy Court (a "Final Order").  Without limiting the generality of the foregoing, in no event shall XM be required to make any payment otherwise required by this Settlement Agreement unless and until the Bankruptcy Court has entered the order approving Delphi's motion to approve the settlement terms set forth in this Settlement Agreement and such order becoming a Final Order.

If you are in agreement with the provisions of this Settlement Agreement, please countersign below and return one fully-executed original to XM within three (3) business days after the date of this Settlement Agreement.

Sincerely,

XM SATELLITE RADIO INC.

*Joseph J. Euteneuer*

Joseph J. Euteneuer
Chief Financial Officer


Acknowledged and Agreed,

DELPHI AUTOMOTIVE SYSTEMS LLC

*Francisco A. Ordoñez*

Mr. Francisco A. Ordoñez
President
Delphi Product & Service Solutions Division

cc: Joe Damato
    Joe Papelian

XM / Delphi Confidential

**Hearing Date and Time: May 12, 2006 at 10:00 a.m.**
**Objection Deadline: May 5, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                         :
          In re                          :    Chapter 11
                                         :
DELPHI CORPORATION, et al.,              :    Case No. 05-44481 (RDD)
                                         :
                        Debtors.         :    (Jointly Administered)
                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

NOTICE OF MOTION FOR ORDER UNDER FED. R. BANKR. P. 9019 AUTHORIZING
AND APPROVING SETTLEMENT AGREEMENT WITH XM SATELLITE RADIO, INC.

PLEASE TAKE NOTICE that on April 21, 2006, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), filed a Motion For Order Under Fed. R. Bankr. P. 9019 Authorizing And Approving Settlement Agreement With XM Satellite Radio, Inc. (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Motion will be held on May 12, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Third Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on April 20, 2006 (the "Third Supplemental Case Management Order") (Docket No. 3293), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

2

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the

Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue,

New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for the agent under the

postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New

York 10017 (Att'n:  Marlane Melican), (v) counsel for the Official Committee of Unsecured

Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n:

Robert J. Rosenberg and Mark A. Broude), and (vi) the Office of the United States Trustee for

the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York

10004 (Att'n:  Alicia M. Leonhard), in each case so as to be **received** no later than **4:00 p.m.**

**(Prevailing Eastern Time) on May 5, 2006** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Third Supplemental Case Management Order will be

considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely

filed and served in accordance with the procedures set forth herein and in the Third

Supplemental Case Management Order, the Bankruptcy Court may enter an order granting the

Motion without further notice.

Dated:  New York, New York
        April 21, 2006

                              SKADDEN, ARPS, SLATE, MEAGHER
                                  & FLOM LLP

                              By:/s/ John Wm. Butler, Jr._____
                                John Wm. Butler, Jr. (JB 4711)
                                John K. Lyons  (JL 4951)
                                Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois  60606
                              (312) 407-0700

                                  - and -

                              By: /s/ Kayalyn A. Marafioti_____
                                Kayalyn A. Marafioti (KM 9632)
                                Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

                              Attorneys for Delphi Corporation, et al.,
                              Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                        :
      In re                         :        Chapter 11
                                        :
DELPHI CORPORATION, et al.,             :        Case No. 05-44481 (RDD)
                                        :
                    Debtors.     :        (Jointly Administered)
                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER FED. R. BANKR. P. 9019 AUTHORIZING AND APPROVING
SETTLEMENT AGREEMENT WITH XM SATELLITE RADIO, INC.

("XM SETTLEMENT ORDER")

        Upon the motion, dated April 21, 2006 (the "Motion"), of Delphi Corporation and

certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned

cases (collectively, the "Debtors"), for an order (the "Order") Under Fed. R. Bankr. P. 9019

Authorizing And Approving Settlement Agreement With XM Satellite Radio, Inc. (the

"Settlement Agreement"); and this Court having determined that the relief requested in the

Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-

interest; and it appearing that proper and adequate notice of the Motion has been given and that

no other or further notice is necessary; and after due deliberation thereon; and good and

sufficient cause appearing therefor,

        IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

        1.      The Debtors' decision to enter into the Settlement Agreement is reasonable

and appropriate under the circumstances and is approved.

      2.        The Debtors are hereby authorized to enter into the Settlement Agreement.

Dated: New York, New York
      May ___, 2006

_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT H

**Hearing Date and Time: May 12, 2006 at 10:00 a.m.**
**Objection Deadline:  May 5, 2006 at 4:00 p.m.**

TOGUT, SEGAL & SEGAL LLP
Bankruptcy Co-Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)
Tally Wiener (TW-6519)

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
                                                            :
In re:                                                      :
                                                            :        Chapter 11
DELPHI CORPORATION, et al.,                                 :        Case No. 05-44481 [RDD]
                                                            :
                        Debtors.                            :        Jointly Administered
                                                            :
------------------------------------------------------------x

## NOTICE OF HEARING ON MOTION
## FOR APPROVAL, PURSUANT TO FEDERAL RULE
## OF BANKRUPTCY PROCEDURE 9019, OF SETTLEMENT
## <u>AGREEMENT WITH FURUKAWA ELECTRIC NORTH AMERICA APD, INC.</u>

**PLEASE TAKE NOTICE THAT** a hearing (the "Hearing") to consider the

motion (the "Motion") of Delphi Corporation ("Delphi") and certain of its subsidiaries and

affiliates, debtors and debtors in possession in the above-captioned cases (collectively, the

"Debtors"), by their undersigned counsel, for approval, pursuant to Rule 9019 of the Federal

Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), approving a Settlement Agreement,[1]

annexed to the Motion as Exhibit "1", by and among the Debtors and Furukawa Electric North

America APD, Inc. ("Furukawa"), Debtors' estates, shall be conducted before the Honorable

Robert D. Drain, United States Bankruptcy Judge, in Room 610 of the United States Bankruptcy

Court, One Bowling Green, New York, New York, 10004, on May 12, 2006, at 10:00 a.m. (New

York City Time), or as soon thereafter as counsel may be heard.

**PLEASE TAKE FURTHER NOTICE THAT** responses or objections, if any,

to the relief requested by the Motion  (a) must be in writing, (b) must conform to the Bankruptcy

Rules, the Local Bankruptcy Rules for the Southern District of New York, and the Second

Supplemental Order under 11 U.S.C. §§ 102 (1) and 105 and Fed. R. Bankr. P. 2002(m), 9006,

9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and

Administrative Procedures, (the "Case Management Order") (Docket No. 2995), (c) must be filed

with the Bankruptcy Court in accordance with General Order M-242 (General Order M-242, as

amended, and the User's Manual for the Electronic Case Filing System can be found at

www.nysb.ucourts.gov, the official website for the Bankruptcy Court) - registered users of the

Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest

must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or

any other Windows-based word processing format), (d) must be submitted in hard-copy form

directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and

(e) and must be served upon:  (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

(Attn: General Counsel);  (ii) conflicts counsel for the Debtors, Togut, Segal & Segal LLP, One

Penn Plaza, New York, New York 10119 (Attn:  Neil Berger, Esq.);  (iii) counsel for the

---

[1]    Capitalized terms used herein but not defined, shall have the meaning ascribed to them in the Motion.

2

Debtors, Skadden Arps Slate Meagher & Flom, Four Times Square, New York, New York

10036 (Attn: John Wm. Butler, Jr., Esq.); (iv) counsel for the agent under the Debtors' pre-

petition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York,

New York 10017 (Attn: Kenneth S. Ziman); (v) counsel for the agent under the post-petition

credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017

(Attn: Marlane Melican); (vi) commercial and litigation counsel to the Debtors, Butzel & Long,

P.C., 100 Bloomfield Hills Parkway, Suite 200, Bloomfield Hills, MI 48304 (Attn: James

Darien); (vii) co-counsel for Furukawa Electric North America APD: (a) Varnum, Riddering,

Schmidt & Howlett LLP, 333 Bridge Street, N.W., Suite 1700, Grand Rapids, MI 49504

(Michael S. McElwee, Esq.) and (b) DiConza Law, P.C., 630 Third Avenue, New York, New

York 10017 (Attn: Gerard DiConza, Esq.); (viii) counsel for the Official Committee of

Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022-

4068 (Attn: Robert J. Rosenberg, Esq.); and (ix) the Office of the United States Trustee for the

Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004

(Attn: Alicia M. Leonhard), in each case so as to be **received** by such persons no later than **4:00**

**p.m. (Prevailing Eastern Time) on May 5, 2006** (the "Objection Deadline").

**(Concluded on following page)**

3

**PLEASE TAKE FURTHER NOTICE** that only those timely-written objections made in accordance herewith, and timely filed and received by the Objection Deadline will be considered by the Bankruptcy Court, and that if no objections to the Settlement Agreement are timely filed and served the Bankruptcy Court may so order the Settlement Agreement.

Dated:  New York, New York
    April 21, 2006

         DELPHI CORPORATION, *et al.*
         By their attorneys,
         TOGUT, SEGAL & SEGAL LLP
         By:

         /s/ Neil Berger
         ALBERT TOGUT (AT-9759)
         NEIL BERGER (NB-3599)
         Members of the Firm
         One Penn Plaza
         New York, New York 10119
         (212) 594-5000

**Hearing Date and Time: May 12, 2006 at 10:00 a.m.**
**Objection Deadline:  May 5, 2006 at 4:00 p.m.**

TOGUT, SEGAL & SEGAL LLP
Conflicts Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                                              :
In re:                                        :
                                              :        Chapter 11
DELPHI CORPORATION, et al.,                   :        Case No. 05-44481 [RDD]
                                              :
                     Debtors.                 :        Jointly Administered
                                              :
---------------------------------------------------------------x


## MOTION FOR APPROVAL OF SETTLEMENT
## AGREEMENT WITH FURUKAWA ELECTRIC NORTH AMERICA APD, INC.

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"), by

their undersigned counsel, as and for their motion (the "Motion") for approval, pursuant to Rule

9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), of the settlement

agreement annexed hereto as Exhibit "1" (the "Settlement Agreement") by and among the

Debtors and Furukawa Electric North America APD, Inc. ("Furukawa"), respectfully show this

Honorable Court that:

BACKGROUND

A.    The Chapter 11 Filings

1.    On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its

U.S. subsidiaries (the "Initial Filers") filed voluntary petitions in this Court for reorganization

relief under chapter 11 of the Bankruptcy Code.  On October 14, 2005, three additional U.S.

subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") also sought

reorganization relief.  The Debtors continue to operate their businesses and manage their

properties as debtors-in-possession pursuant to §§ 1107(a) and 1108 of the Bankruptcy Code.

This Court entered orders directing the joint administration of the Debtors' chapter 11 cases

(Dockets Nos. 28 and 404).

2.    On October 17, 2005, the Office of the Unites States Trustee appointed an

official committee of unsecured creditors (the "Creditors' Committee"), which retained Latham

& Watkins LLP as its counsel.  No trustee or examiner has been appointed in the Debtors' cases.

3.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicate for the relief requested herein is Bankruptcy Rule

9019.

B.    Current Business Operations Of The Debtors

5.    As of the Initial Filing Date, Delphi had global 2004 revenues of

approximately $28.6 billion, and global assets as of August 31, 2005 of approximately $17.1

billion.[1] Delphi ranks as the fifth largest public company business reorganization in terms of

revenues, and the thirteenth largest public company business reorganization in terms of assets.

Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations

without supervision from the Bankruptcy Court.

6.    Delphi has become a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and the Company

(as defined below) is arguably the single largest global supplier of vehicle electronics,

transportation components, integrated systems and modules, and other electronic technology.

The Company's technologies and products are present in more than 75 million vehicles on the

road worldwide.  The Company supplies products to nearly every major global automotive

original equipment manufacturer with 2004 sales to its former parent, General Motors

Corporation ("GM"), equaling approximately $15.4 billion and sales to each of Ford Motor

Company, DaimlerChrysler Corporation, Renault/Nissan Motor Company, Ltd., and

Volkswagen Group exceeding $850 million.

7.    As part of its growth strategy, Delphi has established an expansive global

presence with a network of manufacturing sites, technical centers, sales offices, and joint

ventures located in every major region of the world.  As of the Initial Filing Date, the Debtors

employed approximately 180,000 employees.  The Debtors' 50,600 U.S. employees work in

approximately 44 manufacturing sites, 13 technical centers, and in Delphi's Troy, Michigan

headquarters.  As of the Initial Filing Date, the Debtors employed approximately 34,750 hourly

employees in the United States, 96% of whom are union-represented.  Outside the United States,

the Company's foreign entities employed more than 134,000 people on the Initial Filing Date,

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from
Delphi and its worldwide subsidiaries and affiliates.

supporting 120 manufacturing sites and 20 technical centers in nearly 40 countries around the globe.

8.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to Delphi and its subsidiaries and affiliates (collectively, the "Company") in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

9.    Due to the significant planning that goes into each vehicle model, Delphi's efforts to generate new business do not immediately affect its financial results, because supplier selection in the auto industry is generally finalized several years prior to the start of production of the vehicle.  When awarding new business, which is the foundation for the Company's forward revenue base, customers are increasingly concerned with the financial stability of their supply base.  The Debtors believe that they will maximize stakeholder value and the Company's future prospects if they stabilize their businesses and continue to diversify their customer base.  The Debtors also believe that this must be accomplished in advance of the expiration of certain benefit guarantees between GM and certain of Delphi's unions representing most of its U.S. hourly employees which coincides with the expiration of the Company's U.S. collective bargaining agreements in the fall of 2007.

## RELIEF REQUESTED

10.    The Debtors seek approval of the Settlement Agreement with Furukawa

pursuant to Bankruptcy Rule 9019.  Pursuant to the Settlement Agreement, the Debtors will:

recover $2,261,205.46, representing 80% of the pre-petition Payment (defined below) that was

(a) made to Furukawa;  and (b) avoid the cost, expense and delay of litigation.  For the reasons

set forth below, the Debtors believe that the settlement and compromise of claims embodied in

the Settlement Agreement is fair and equitable, falls well within the range of reasonableness, is

in the best interest of the Debtors' estates, and should be approved.

## BASIS FOR RELIEF

A.    Background To The Proposed Settlement Agreement

11.    Furukawa supplies the Debtors with SIR coils and connection systems

pursuant to various purchase orders and supply contracts.

12.    In response to demands by Furukawa, on or about September 14, 2005, the

Debtors made a wire payment of $2,832,045.42 to Furukawa, noting in the Wire Request Form:

"Vendor refusing to ship due to press release" (the "September 14 Payment").

13.    The September 14 Payment represented a gross payment of

$2,860,651.94, less a 1% early payment discount, and it satisfied invoices for goods that were

just previously shipped to the Debtors (the "Invoices").

14.    As a result of an oversight, on or about October 4, 2005, the Debtors made

an electronic funds transfer payment to Furukawa in the amount of $2,826,506.66 (the

"Payment").  The Payment was remitted by the Debtors against the same Invoices that had

already been satisfied by the September 14 Payment.

15.    The September 14 Payment and the Payment were in slightly different

amounts because one invoice for approximately $34,000 was not included in the Payment, and

5

the Payment did not take credit for a prompt-payment discount.  Furukawa placed the Payment

into a "suspension account", and the Debtors never provided any instructions to Furukawa

regarding application of the Payment.

16.     Four days later, on October 8, the Debtors filed their petitions in this

Court.  As of the Initial Filing Date, Furukawa had not applied the Payment to invoices due and

owing from the Debtors to Furukawa.

17.     On December 15, 2005, Furukawa moved for an Order pursuant to

Bankruptcy Code section 362(d) modifying the automatic stay to permit it to apply the Payment

to an equivalent amount of pre-petition invoices that are unrelated to the Payment (the "Stay

Motion").  The Debtors filed an Objection to the Stay Motion on February 2, 2006 (the

"Objection"), and Furukawa filed a Reply thereto on February 8, 2006.  The Stay Motion, the

Objection and Furukawa's Reply were considered by the Court at a hearing on February 9, 2006,

at the conclusion of which, the Court denied the Stay Motion.  An Order denying the Stay

Motion was entered on March 3, 2006 (the "March 3 Order").  However, avoidance of the

Payment was not before the Court and, consequently, the March 3 Order did not direct Furukawa

to return the Payment to the Debtors.

18.     The Debtors have asserted that the Payment is avoidable and recoverable

as, among other things, a preferential transfer pursuant to Bankruptcy Code sections 547 and

550, and the Debtors have demanded the return of the Payment.

19.     Furukawa has asserted that the Payment is not avoidable or recoverable

and that, among other things, Furukawa provided subsequent new value to the Debtors totaling

approximately $799,000.  Delphi disputed the amount of the subsequent new value provided by

Furukawa prior to the Initial Filing Date, and asserted that it totaled no more than approximately

6

$500,000. The precise amount of Furukawa's subsequent new value would require additional,

time-consuming discovery. Moreover, Furukawa has asserted that it would actively litigate any

avoidance proceeding by the Debtors to recover the Payment.

B.    The Proposed Settlement Agreement

20.    Diligence and arms-length negotiations between the Debtors and

Furukawa have produced an agreement, subject to Bankruptcy Court approval, to settle and

compromise the Debtors' demand for return of the Payment:

> (a)    Furukawa will return $2,261,205.46 to the Debtors (the "Settlement
> Amount");
>
> (b)    Furukawa will retain $565,301.20 of the Payment (the "Retention") which
> will be applied to satisfy pre-petition Furukawa invoices that have been
> identified by the Debtors;
>
> (c)    Furukawa may amend its proof of claim in Debtors' case to reflect the
> financial terms of the proposed settlement;[2] and
>
> (d)    The Debtors and Furukawa will exchange releases of claims pertaining to
> the Payment.

21.    The Debtors have determined that the proposed Settlement Agreement is

in the best interests of the Debtors' estates and, in reaching that conclusion, have considered,

among other things, the defenses asserted and potentially assertable by Furukawa and the cost,

expense and delay associated with litigation regarding the avoidability of the Payment.

APPLICABLE AUTHORITY

22.    Bankruptcy Rule 9019(a) provides, in relevant part, that: "[o]n motion by

the [debtor in possession] and after notice and a hearing, the court may approve a compromise

and settlement." Fed. R. Bankr. P. 9019(a). Indeed, settlements and compromises are "a normal

part of the process of reorganization." Protective Comm. for Indep. Stockholders of TMT

7

Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. Los Angeles Lumber

Prods. Co., 308 U.S. 106, 130 (1939)); see also In re Adelphia Commc'ns Corp., 327 B.R. 143,

159, adhered to on reconsideration, 327 B.R. 175 (Bankr. S.D.N.Y. 2005).

23.    To approve a compromise and settlement under Bankruptcy Rule 9019(a),

courts have held that the proposed compromise and settlement should be found to be fair and

equitable, reasonable and in the best interests of the debtor's estate.  See In re Ionosphere Clubs,

Inc., 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd, 17 F.3d 600 (2d Cir. 1994);  Adelphia

Commc'ns, 327 B.R. at 159 ("The settlement need not be the best that the debtor could have

obtained.  Rather, the settlement must fall 'within the reasonable range of litigation

possibilities.'") (citations omitted) (quoting In re Penn Centr. Transp. Co., 596 F.2d 1102, 1114

(3d Cir. 1979).  Additionally, the decision to approve a particular settlement lies within the sound

discretion of the Bankruptcy Court.  See Nellis v. Shugrue, 165 B.R. 115, 123 (S.D.N.Y. 1994).

24.    In exercising its discretion, the Bankruptcy Court must make an

independent determination that the settlement is fair and reasonable.  Id. at 122.  The Court,

however, may consider the opinions of the debtor in possession and its counsel that the

settlement is fair and reasonable.  See In re Purofied Down Prods. Corp., 150 B.R. 519, 522

(S.D.N.Y. 1993).  In addition, the Bankruptcy Court should exercise its discretion "in light of the

general public policy favoring settlements."  In re Hibbard Brown & Co., Inc., 217 B.R. 41, 46

(Bankr. S.D.N.Y. 1998); see also Shugrue, 165 B.R. at 123 ("the general rule [is] that

settlements are favored and, in fact, encouraged by the approval process outlined above").

25.    In determining whether to approve a proposed settlement, a Bankruptcy

Court need not decide the numerous issues of law and fact raised by the settlement, but rather

should "canvass the issues and see whether the settlement 'fall[s] below the lowest point in the

---

2      This summary represents the significant provisions of the Settlement Agreement, and it is not intended to

range of reasonableness.'" In re W.T. Grant Co., 699 F.2d 599, 608 (2d Cir. 1983); accord

Purofied Down Prods., 150 B.R. at 522 ("the court need not conduct a 'mini-trial' to determine

the merits of the underlying litigation").

        26.    Bankruptcy Courts have applied the following factors in determining

whether a settlement should be approved:  (a) the probability of success in the litigation, with

due consideration for the uncertainty in fact and law;  (b) the complexity and likely duration of

the litigation and any attendant expense, inconvenience and delay;  (c) the proportion of creditors

who do not object to, or who affirmatively support the proposed settlement;  and (d) the extent to

which the settlement is truly the product of arm's length bargaining and not the product of fraud

or collusion.  See In re Ashford Hotels, Ltd., 226 B.R. 797, 804 (Bankr. S.D.N.Y. 1998);  In re

Best Prods. Co., 168 B.R. 35, 50 (Bankr. S.D.N.Y. 1994).  See also Fry's Metals, Inc. v. Gibbons

(In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002) (also incorporating as a factor the

"likely difficulties in collection").

        27.    The relevant factors set forth above support a finding that the compromise

that is embodied in the Settlement Agreement is fair and equitable, in the best interests of the

Debtors and should be approved.  The Debtors and Furukawa propose to resolve all claims

relating to the Payment consensually, without further litigation.  If these matters are not resolved

through the proposed settlement, future litigation before this Court will result in additional

expense for the Debtors and their estates with no certainty that the Debtors would recover more

than the Settlement Agreement after a trial.

        28.    The benefits flowing from the settlement and compromise embodied in the

Settlement Agreement -- including:  (a) the elimination of a material risk of an unfavorable

litigation outcome;  (b) the avoidance of the significant costs, uncertainties and delays likely

---

modify or amend any of the provisions of the Settlement Agreement.

attendant to any litigation and possible resulting judgment;  (c) the waiver of any and all claims that Furukawa may possess against the Debtors with respect to the Payment, except for the Amended Claim;  and (d) the payment of the Settlement Amount -- all clearly demonstrate that approval of the Settlement Agreement is in the best interests of the Debtors and the Debtors' estates.

29.    Additionally, the Settlement Agreement is the product of arm's length bargaining and negotiations between the Debtors and Furukawa.  Accordingly, the Debtors submit that the parties' proposed settlement and compromise is appropriate in light of the relevant factors and should be approved.

### NOTICE OF MOTION

30.    Notice of this Motion is being given in accordance with the Second Supplemental Order under 11 U.S.C. §§ 102 (1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered by this Court on March 28, 2006 (the "Case Management Order") (Docket No. 2995).  The Debtors submit that no other notice need be given.

### MEMORANDUM OF LAW

31.    This Motion does not present any novel issues of law.  Consequently, the Debtors respectfully request that the Court waive the requirement that they file a memorandum of law in support of this Motion pursuant to Local Bankruptcy Rule 9013-1(b).  The Debtors reserve the right, however, to file a separate memorandum of law in support hereof or in response to any objection to this Motion.

32.    No previous motion for the relief sought herein has been made to this or any other Court.

10

WHEREFORE, the Debtors respectfully request that the Court approve the

settlement and compromise by and among the Debtors and Furukawa by "So Ordering" the

annexed Settlement Agreement, and grant such other and further relief as the Court deems just

and appropriate.

Dated:  New York, New York
        April 21, 2006

                                                  DELPHI CORPORATION, et al.
By their attorneys,
TOGUT, SEGAL & SEGAL LLP
By:

/s/ Neil Berger
ALBERT TOGUT (AT-9759)
NEIL BERGER (NB-3599)
Members of the Firm
One Penn Plaza
New York, New York 10119
(212) 594-5000

TOGUT, SEGAL & SEGAL LLP
Bankruptcy Co-Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York 10119
(212) 594-5000
Albert Togut (AT-9759)
Neil Berger (NB-3599)

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

| | |
|---|---|
| UNITED STATES BANKRUPTCY COURT | **HEARING DATE:   5/12/06** |
| SOUTHERN DISTRICT OF NEW YORK | **AT:  10:00 a.m.** |

-------------------------------------------------------------x
                                                        :
In re:                                                  :
                                                        :        Chapter 11
DELPHI CORPORATION, et al.,                             :        Case No. 05-44481 [RDD]
                                                        :
                        Debtors.                        :        Jointly Administered
                                                        :
-------------------------------------------------------------x

## SETTLEMENT AGREEMENT

Furukawa Electric North America APD, Inc. ("Furukawa") and Delphi Automotive Systems, Inc. together with its co-debtors ("Delphi"), hereby agree:

WHEREAS, on October 4, 2005 Delphi sent a payment by EFT ("Electric Funds Transfer") to Furukawa in the amount of $2,826,506.66 (hereafter, the "Payment"); and

WHEREAS, On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its subsidiaries, each filed voluntary petitions in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court") for reorganization relief under Chapter 11 of the Bankruptcy Code.  On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") filed voluntary petitions in this Court for reorganization relief under Chapter 11 of the Bankruptcy Code; and

1

WHEREAS, the Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Bankruptcy Court entered Orders directing the joint administration of the Debtors' chapter 11 cases (Docket Nos. 28 and 404); and

WHEREAS, on October 17, 2005, the United States Trustee for the Southern District of New York appointed an official committee of unsecured creditors in these cases, which is represented by Latham & Watkins. No trustee or examiner has been appointed; and

WHEREAS, as of the Initial Filing, Furukawa had not applied the Payment to invoices due and owing from Delphi to Furukawa; and

WHEREAS, on or about December 15, 2005, Furukawa filed a Motion for Relief from Stay to permit the set-off of the Payment against pre-petition invoices (the "Invoices") due and owing from Delphi to Furukawa; and

WHEREAS, Delphi opposed Furukawa's Motion for Relief from Stay; and

WHEREAS, by an Order dated March 3, 2006, (the "March 3 Order") the Bankruptcy Court denied Furukawa's Motion for Relief from Stay, but did not direct Furukawa to return the Payment to Delphi; and

WHEREAS, after entry of the March 3 Order, Delphi asserted that the Payment is avoidable and recoverable, and Delphi demanded return of the Payment to Delphi; and.

WHEREAS, Furukawa has asserted that the payment is not avoidable or recoverable and has asserted that, among other things: it provided subsequent new value to Delphi after the date the Payment; the Payment was made in the ordinary course of business of Delphi and Furukawa and according to ordinary industry terms; and that Furukawa will contest the presumption that Delphi was insolvent when the Payment was made; and

2

WHEREAS, as a result of arms-length negotiations, the parties have agreed to a full and final resolution of the Payment based upon the terms and conditions set forth in this Agreement; and

WHEREAS, Delphi has concluded that the proposed settlement set forth herein is in the best interests of its estate, and in reaching that conclusion, has considered, among other things, the defenses asserted by Furukawa and the cost, expense and delay associated with litigating the matter, the result of which is uncertain.

NOW, THEREFORE, FOR good and valuable consideration, the sufficiency and receipt of which are hereby acknowledged, the parties agree:

1.      This Agreement shall be effective on the date when an Order of the Bankruptcy Court (the "Approval Order") approving the terms hereof shall become final and not subject to any stay (the "Effective Date"). Notwithstanding the foregoing, during the period between the date of the complete execution of this Agreement and the Effective Date, the parties hereto shall be bound by the terms hereof and they shall do nothing contrary to the terms set forth herein.

2.      On and after the Effective Date, Furukawa shall retain 20 percent of the Payment, and return 80 percent of the Payment to Delphi. Furukawa will therefore retain $565,301.20 (the "Retention"), and shall return to Delphi $2,261,205.46 (the "Settlement Amount"). Furukawa will deliver the Settlement Amount to Delphi in immediately available funds within three (3) business days after the Effective Date.

3.      Within 30 days after the Effective Date, Furukawa may, file an Amended Proof of Claim (the "Amended Claim") in the Delphi bankruptcy case, reducing and reclassifying its claim to reflect the terms of this Agreement. Subject to any applicable bar date, this Agreement does not preclude or otherwise prevent Furukawa from asserting any additional claims it may

3

have against the Delphi estates, including, but not limited to, its claim for the Settlement Amount.   The Debtors, the Committee and other parties in interest retain all of their rights, claims and defenses regarding any claims filed in these cases by Furukawa.   Entry of the Approval Order shall constitute a modification of the automatic stay in Delphi's case solely to permit Furukawa to apply the Retention toward satisfaction of the Invoices that are identified in the schedule that is annexed hereto.

4.      Payment of the Settlement Amount by Furukawa to Delphi shall be a full and final satisfaction of any and all claims that Delphi may have against Furukawa for a return of the Payment.  Upon entry of the Approval Order and payment to Delphi of the Settlement Amount, Delphi hereby releases and waives any claim, charge, cause of action and avoidance action it may assert or may have been able to assert against Furukawa, its affiliates, subsidiaries, shareholders, officers, directors, employees, attorneys, and agents with respect to the Payment and the Retention, including, but not limited to, any claims Delphi may assert or may have been able to assert against Furukawa under Chapter 5 of the United States Bankruptcy Code.

5.      Delphi shall, promptly, and at its sole expense, file a motion for an Order approving this Agreement pursuant to Bankruptcy Rule 9019, and shall take full responsibility for the prosecution of such motion. This written Agreement constitutes the entire and fully integrated agreement of the parties, and may not be contradicted by prior writings, or prior or contemporaneous oral statements.

6.      This Agreement may be executed in multiple counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same Agreement.  This Agreement shall be binding upon and shall inure to the benefit of the parties hereto and their legal representatives, predecessors, successors and assigns.

4

7.       It is expressly understood and agreed that the terms hereof, including the forgoing paragraphs and headings, are contractual and that the Agreement contained herein and the consideration transferred is to compromise disputed claims and avoid litigation, and that no statement made herein, payment, release, or other consideration shall be construed as an admission by the parties of any kind or nature.

8.       The Bankruptcy Court shall retain original and exclusive jurisdiction to interpret and enforce the terms of this Agreement and to resolve any disputes in connection herewith.

FURUKAWA ELECTRIC NORTH AMERICA ADP, INC.

Dated:  _____, 2006          By:_____

Its:_____

DELPHI AUTOMOTIVE SYSTEMS, INC.

Dated:  April 21, 2006                   By: /s/ John D. Sheehan _____

Its: Vice President, Chief Restructuring Officer, Chief Accounting Officer and Controller _____

1234692_1.DOC

So Ordered on this
_____ day of May, 2006

_____
Honorable Robert D. Drain
United States Bankruptcy Judge

5

# FURUKAWA--LISTING OF INVOICES TO OFFSET
(Delphi Prop 040306)

| Process # | DUNS # | Plant Code | Document # | Document Date | Total Amount | Currency Code | Bill Of Lading | Purchase Order |
|---|---|---|---|---|---|---|---|---|
| 900003163841 | RD 966877987 | K9 | 269050IPF4734309 | 9/8/05 | $144,232.32 | USD | 26905 | SAG9014073 |
| 900003163992 | RD 966877987 | K9 | 269340IPF4751110 | 9/9/05 | $137,251.92 | USD | 26934 | SAG9014073 |
| 900003881160 | RD 966877987 | K9 | 273110IPF5023829 | 9/28/05 | $137,163.84 | USD | 27311 | SAG9014073 |
| 900003783986 | RD 966877987 | K9 | 271430IPF4893521 | 9/20/05 | $134,514.72 | USD | 27143 | SAG9014073 |
| 900003924298 | RD 966877987 | K9 | 272760I436414801 | 9/30/05 | $10,897.92 | USD | 27276 | SAG9014940 |
| 900003865318 | RD 966877987 | J9 | 50498440001 | 9/27/05 | $1,200.00 | USD | 27315 | S3S32084 |
| | | | | Misc Adjustment | $40.48 | | | |
| | | | | **TOTAL OFFSET AMOUNT** | **$565,301.20** | | | |

Blue Font:  Reclamation Period Invoices to be switched

# FURUKAWA--LISTING OF INVOICES TO OFFSET (Replacement Proposal)
(Furukawa Prop 041906)

| Process # | DUNS # | Plant Code | Document # | Document Date | Total Amount | Currency Code | Bill Of Lading | Purchase Order | Furukawa Invoice Date |
|---|---|---|---|---|---|---|---|---|---|
| 900003163841 | RD 966877987 | K9 | 269050IPF4734309 | 9/8/05 | $144,232.32 | USD | 26905 | SAG9014073 | |
| 900003163992 | RD 966877987 | K9 | 269340IPF4751110 | 9/9/05 | $137,251.92 | USD | 26934 | SAG9014073 | |
| 900003783986 | RD 966877987 | K9 | 271430IPF4893521 | 9/20/05 | $134,514.72 | USD | 27143 | SAG9014073 | |
| 900003865318 | RD 966877987 | J9 | 50498440001 | 9/27/05 | $1,200.00 | USD | 27315 | S3S32084 | |
| APPROVED | | K9 | I436360709 | | $39,836.16 | USD | 26644 | 9014940 | 9/1/05 |
| APPROVED | | K9 | I436393024 | | $34,145.28 | USD | 26940 | 9014941 | 9/12/05 |
| APPROVED | | K9 | I436393124 | | $39,836.16 | USD | 26941 | 9014942 | 9/13/05 |
| APPROVED | | K9 | I436403728 | | $34,145.28 | USD | 27045 | 9014943 | 9/21/05 |
| | | | | Misc Adjustment | $139.36 | | | | |
| | | | | **TOTAL OFFSET AMOUNT** | **$565,301.20** | | | | |

OK per Dana Fidler 4/21/06

Green Font:  Furukawa desired substitute invoices
Yellow highlighted area to be filled in by Delphi

# EXHIBIT I

**Hearing Date and Time: May 12, 2006 at 10:00 a.m.**
**Objection Deadline: May 5, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                          :
In re                       :     Chapter 11
                          :
DELPHI CORPORATION, et al.,    :     Case No. 05-44481 (RDD)
                          :
                          :     (Jointly Administered)
          Debtors.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION TO APPROVE STIPULATION AND AGREED ORDER BETWEEN DELPHI
CORPORATION, ET AL. AND FLEXTRONICS INTERNATIONAL ASIA-PACIFIC LTD., ET
AL. REGARDING ADEQUATE PROTECTION OF PREPETITION SETOFF RIGHTS

("FLEXTRONICS STIPULATION MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Motion (the "Motion") To Approve Stipulation And Agreed Order Between

Delphi Corporation, Et Al. And Flextronics International Asia-Pacific Ltd., Et Al. Regarding

Adequate Protection Of Prepetition Setoff Rights (the "Stipulation").  In support of this Motion,

the Debtors respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and

affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title

11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered

orders directing the joint administration of the Debtors' chapter 11 cases.

2.    On October 17, 2005, the Office of the Unites States Trustee appointed an

official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner

has been appointed in the Debtors' cases.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicate for the relief requested herein is Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    Current Business Operations Of The Debtors

5.    Delphi and its subsidiaries and affiliates (collectively, the "Company") had global 2005 net sales of approximately $26.9 billion, and global assets as of August 31, 2005 of approximately $17.1 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth largest public company business reorganization in terms of revenues, and the thirteenth largest public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are not chapter 11 debtors and continue their business operations without supervision from the Bankruptcy Court.

6.    The Company is a leading global technology innovator with significant engineering resources and technical competencies in a variety of disciplines, and is one of the largest global suppliers of vehicle electronics, transportation components, integrated systems and modules, and other electronic technology.  The Company supplies products to nearly every major global automotive original equipment manufacturer.

7.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi and its worldwide subsidiaries and affiliates.

3

C.      Events Leading To The Chapter 11 Filing

8.      In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.8 billion on net sales of $26.9 billion.

9.      The Debtors believe that the Company's financial performance has

deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the

United States and related pricing pressures, and (c) increasing commodity prices.

10.      In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major unions and GM had not progressed sufficiently by the end of the third quarter of

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the

Debtors' transformation plan and preserve value for its stakeholders.

---

[2]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating
loss in calendar year 2004 was $482 million.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined the key tenets of its

transformation plan.  The Company believes that this plan will enable it to return to stable,

profitable business operations and allow the Debtors to emerge from these chapter 11 cases in

the first half of 2007.  To complete their restructuring process, the Debtors must focus on five

key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which

to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize

GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business

commitment to the Company.  Third, the Debtors must streamline their product portfolio to

capitalize on their world-class technology and market strengths and make the necessary

manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried

workforce to ensure that the Company's organizational and cost structure is competitive and

aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise

a workable solution to their current pension situation.

12.    In connection with the first two elements of the Company's transformation

plan, Delphi continues to participate in discussions with its unions and GM.  Throughout those

discussions, Delphi has consistently communicated a clear message to both its hourly workforce

and GM: Delphi is committed to finding a consensual resolution to its issues and intends to

continue to discuss with its unions and GM ways to become competitive in the Debtors' U.S.

operations.  To that end, Delphi, GM and the UAW recently received this Court's approval of a

tripartite agreement providing for a special hourly attrition program for Delphi's UAW-

represented employees.  This special hourly attrition program could provide as many as 18,000

of Delphi's 23,000 existing UAW-represented long-term hourly employees with "soft landings"

through retirement attrition programs and GM flowbacks.  Delphi also hopes to reach agreement

on similar hourly attrition programs with its other unions, which could provide as many as 4,500

additional hourly employees with retirement programs or incentives.

      13.    These hourly attrition programs constitute an important first step in

implementing the Debtors' transformation plan, but will not resolve all of the issues related to

Delphi's uncompetitive labor agreements.  Moreover, Delphi has not yet reached comprehensive

agreements with its unions and GM.  Therefore, on March 31, 2006, Delphi moved under

sections 1113 and 1114 of the Bankruptcy Code for authority to reject its U.S. labor agreements

and to modify retiree benefits.[3]  Contemporaneously therewith, the Debtors also moved to reject

unprofitable supply contracts with GM.[4]  Among the reasons for the GM contract rejection

motion was the Debtors' belief that GM must cover a greater portion of the costs of

manufacturing products for GM at plants that bear the burden of the Debtors' legacy costs.  This

initial motion covers approximately half of the Debtors' North American annual purchase

volume revenue from GM but only 10% of the Debtors' total contracts with GM.  Although the

filing of these motions was a necessary procedural step, the Debtors remain focused on reaching

a consensual resolution with all of Delphi's unions and GM before a hearing on the motions is

necessary.

      14.    To implement the third element of the Debtors' transformation plan, the

Company announced plans to focus its product portfolio on those core technologies for which the

Company has significant competitive and technological advantages and expects the greatest

opportunities for increased growth.   To that end, the Company will concentrate the organization

around the following core strategic product lines: (a) Controls & Security (Body Security,

---

[3]    Motion For Order Under 11 U.S.C. § 1113(c) Authorizing Rejection Of Collective Bargaining Agreements And
Under 11 U.S.C. § 1114(g) Authorizing Modification of Retiree Welfare Benefits (Docket No. 3035)

[4]    Motion For Order Under 11 U.S.C. § 365 And Fed. R. Bankr. P. 6006 Authorizing Rejection Of Certain
Executory Contracts With General Motors Corporation (Docket No. 3033)

6

Mechatronics, Power Products, and Displays), (b) Electrical/Electronic Architecture

(Electrical/Electronic Distribution Systems, Connection Systems, and Electrical Centers), (c)

Entertainment & Communications (Audio, Navigation, and Telematics), (d) Powertrain (Diesel

and Gas Engine Management Systems), (e) Safety (Occupant Protection and Safety Electronics),

and (f) Thermal (Climate Control & Powertrain Cooling).[5]

15.    In contrast, the Company similarly identified certain non-core product

lines that do not fit into its future strategic framework, including Brake & Chassis Systems,

Catalysts, Cockpits and Instrument Panels, Door Modules and Latches, Ride Dynamics, Steering,

and Wheel Bearings.  The Company will seek to sell or wind down these non-core product lines

(which will include approximately one-third of its global manufacturing sites) and will consult

with its customers, unions, and other stakeholders to carefully manage the transition of such

affected product lines.  The Company intends to sell or wind down the non-core product lines

and manufacturing sites by January 1, 2008.

16.    As part of its organizational restructuring, the fourth element of the

Debtors' transformation plan, the Company expects to reduce its global salaried workforce by as

many as 8,500 employees as a result of portfolio and product rationalizations and initiatives

adopted following an analysis of the Company's selling, general, and administration ("SG&A")

cost saving opportunities.  The Company believes that once its SG&A plan is fully implemented,

the Company should realize savings of approximately $450 million per year in addition to

savings realized from competitive measures planned for its core businesses and the disposition of

non-core assets.

---

[5]    The Company does not expect the portfolio changes to have a significant impact on its independent aftermarket
or consumer electronics businesses.  Similarly, the Company does not expect an impact on medical, commercial
vehicles, or other adjacent-market businesses and product lines.

7

17.     As noted above, the final key tenet of the transformation plan is to devise a workable solution to the Debtors' current pension situation.  The Debtors' goal is to retain the benefits accrued under the existing defined benefit U.S. pension plans for both the Debtors' hourly and salaried workforce.  To do so, however, it will be necessary to freeze the current hourly U.S. pension plan as of October 1, 2006 and to freeze the current salaried U.S. pension plan as of January 1, 2007.  Despite the freeze, because of the size of the funding deficit, it will also be necessary for the Debtors to obtain relief from the Pension Benefit Guaranty Corporation, the Internal Revenue Service, the Department of Labor, and potentially Congress, to amortize funding contributions over a long-term period.  The Company intends to replace the hourly plan (for certain employees) and the salaried plan with defined contribution plans.

18.     Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

## Relief Requested

19.     By this Motion, the Debtors seek entry of an order under Bankruptcy Rule 9019 authorizing and approving the Stipulation.

## Basis For Relief

A.     The Proposed Stipulation And Agreed Order

20.     The Debtors and Flextronics International Asia-Pacific Ltd. and certain of its affiliates (collectively, "Flextronics") are parties to numerous purchase orders and/or

8

agreements (collectively, the "Agreements") pursuant to which Flextronics manufactures and

supplies various products to the Debtors.

21.      Prior to the Petition Date (as defined in the Stipulation), one or more of

the Debtors owed Flextronics $6,713,037 on account of products delivered to the Debtors prior

to the Petition Date (the "Flextronics Prepetition Receivable") and Flextronics owed one or more

of the Debtors $5,884,967 on account of prepetition overpayments and price reductions (the

"Flextronics Prepetition Payable").  Flextronics received payment under a guaranty provided by a

foreign non-Debtor affiliate of the Debtors for pre-Petition Date amounts due to Flextronics

under the Agreements (the "Guaranty Payments"), including of the Flextronics Prepetition

Receivable.

22.      Flextronics has agreed to pay the Flextronics Prepetition Payable to the

Debtors pursuant to the Stipulation provided that, the respective setoff rights and defenses of

Flextronics and the Debtors as they existed immediately prior to the Petition Date are preserved.

The principal terms of the Stipulation are as follows:[6]

> a.      Flextronics will pay the Flextronics Prepetition Payable to the Debtors
> within five business days of the Effective Date (as defined in the Stipulation).
>
> b.      As adequate protection for any setoff rights Flextronics may have with
> respect to the Flextronics Prepetition Payable in the event that Flextronics must
> return any portion of the Guaranty Payments, Flextronics will be entitled to
> exercise its prepetition setoff rights, if any, against any postpetition payables
> owing to the Debtors and Flextronics will be entitled to the adequate protection as
> provided at paragraph 18 of the Final DIP Financing Order, dated October 28,
> 2005, which sets forth procedures for parties seeking to exercise and/or preserve
> their setoff rights.  Such exercise, if any, by Flextronics shall for all purposes be
> treated as if Flextronics had not made any payments to the Debtors with respect to
> the Flextronics Prepetition Payables.  Further, in the event that Flextronics has no
> postpetition payables owing to, or to be owing to, the Debtors against which to
> exercise any unresolved setoff rights, the Debtors shall pay Flextronics an amount
> equal to its setoff right up to the Flextronics Prepetition Payable within ten

---

[6]      The following summary is included for convenience and is subject in all respects to the terms of the Stipulation.

9

business days of the effective date of a plan of reorganization in the Debtors'
chapter 11 cases.

c.      If Flextronics disgorges any portion of the Guaranty Payments, Flextronics
will have a claim against the Debtors in the amount of such disgorged amount and
Flextronics' setoff rights with respect to such disgorged amount will be preserved
and will in no way be prejudiced as a result of Flextronics payment of the
Flextronics Prepetition Payable to the Debtors.

<u>Applicable Authority</u>

23.      By this Motion, the Debtors respectfully request the entry of an order
under Rule 9019(a) of the Bankruptcy Rules approving the Settlement Agreement.  Bankruptcy
Rule 9019 provides, in relevant part, that "[o]n motion by the trustee and after notice and a
hearing, the court may approve a compromise or settlement."  Bankruptcy Rule 9019(a).
Settlements and compromises are "a normal part of the process of reorganization," <u>Protective
Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson</u>, 390 U.S. 414, 424 (1968)
(quoting <u>Case v. L.A. Lumber Prods. Co.</u>, 308 U.S. 106, 130 (1939)); <u>see also</u> <u>In re Adelphia
Communications Corp.</u>, 327 B.R. 143, 159 (decision to accept or reject a settlement lies within
sound discretion of bankruptcy court), <u>adhered to on reconsideration</u>, 327 B.R. 175 (Bankr.
S.D.N.Y. 2005).

24.      Approval of a compromise under Bankruptcy Rule 9019(a) is appropriate
when the compromise is fair and equitable and is in the best interests of a debtor's estate.  <u>See,
e.g.</u>, <u>TMT Trailer Ferry</u>, 390 U.S. at 424; <u>Adelphia</u>, 327 B.R. at 159 ("The settlement need not be
the best that the debtor could have obtained.  Rather, the settlement must fall 'within the
reasonable range of litigation possibilities.'") (citations omitted) (quoting <u>In re Penn Centr.
Transp. Co.</u>, 596 F.2d 1102, 1114 (3d Cir. 1979); <u>Nellis v. Shugrue</u>, 165 B.R. 115, 121
(S.D.N.Y. 1994) ("The obligation of the bankruptcy court is to determine whether a settlement is
in the best interest of an estate before approving it.").  In general, compromises in the bankruptcy

context should be approved unless they "'fall below the lowest point in the range of reasonableness.'"  Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (citation omitted).

25.    The Supreme Court in TMT Trailer Ferry set forth the following factors that courts should consider in determining whether a proposed settlement or compromise is in the best interests of a debtor's estate:  (a) the probability of the debtor's success in the litigation, (b) the difficulties associated with collection, (c) the complexity of the litigation, and the attendant expense, inconvenience, and delay, and (d) the paramount interests of the estate's creditors. TMT Trailer Ferry, 390 U.S. at 424-25; see also Nellis, 165 B.R. at 122; Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002).

26.    Courts in this district have further elaborated on these factors to consider: (a)  the balance between the likelihood of plaintiff's or defendants' success should the case go to trial vis-à-vis the concrete present and future benefits held forth by the settlement without the expense and delay of a trial and subsequent appellate procedures, (b) the prospect of complex and protracted litigation if the settlement is not approved, (c) the proportion of the class members who do not object or who affirmatively support the proposed settlement, (d) the competency and experience of counsel who support the settlement, (e) the relative benefits to be received by individuals or groups within the class, (f) the nature and breadth of releases to be obtained by the directors and officers as a result of the settlement, and (g) the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.  Adelphia, 327 B.R. at 159-60; accord In re Texaco Inc., 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988).

27.    The bankruptcy court need not determine that all of the foregoing criteria favor approval of a compromise, and the proposed compromise need not be the best agreement

11

that the debtor could have achieved under the circumstances.  See Adelphia, 327 B.R. at 159-60;

see also Penn Centr., 596 F.2d at 1114.  Instead, the court's proper "role is to determine whether

the settlement as a whole is fair and equitable," In re Lee Way Holding Co., 120 B.R. 881, 890

(Bankr. S.D. Ohio 1990), and falls "'within the reasonable range of litigation possibilities.'"  In re

Telesphere Communications, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (citation omitted).

To that end, courts should not substitute their own judgment for that of the debtor, but rather

should "'canvass the issues'" to affirm that the proposed settlement falls above "'the lowest point

in the range of reasonableness.'"  Adelphia, 327 B.R. at 159 (quoting W.T. Grant Co., 699 F.2d

at 608); accord Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs,

Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd sub nom. Sobchack v. Am. Nat'l Bank & Trust

Co., 17 F.3d 600 (2d Cir. 1994).

28.    The Stipulation between the Debtors and Flextronics should be approved

under Bankruptcy Rule 9019(a) because its terms are fair and equitable, fall well within the

range of reasonableness, and are in the best interests of the Debtors and their estates.  Most

significantly, the Stipulation provides for the payment by Flextronics of the Flextronics

Prepetition Payable in the amount of $5,884,967, which will give the Debtors access to

additional working capital to fund their operations.  In addition, the Debtors believe that the

Stipulation is a reasonable compromise under the circumstances because it avoids the costs and

uncertainties of litigation while preserving the positive working relationship between the Debtors

and Flextronics.  Finally, the Debtors note that the Creditors' Committee has approved the terms

of the Stipulation.

29.    In the exercise of their business judgment, the Debtors therefore believe

that the terms of the Stipulation are reasonable based upon the funds and other important benefits

that the Debtors will receive.  Based on the benefits to be realized from entering into the

12

Stipulation, together with the potential harm to the estates if the relief requested herein is not granted, the Debtors respectfully request that the Motion be granted.

Notice Of Motion

30.    Notice of this Motion has been provided in accordance with the Third Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on April 20, 2006 (Docket No. 3293).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

31.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that this Court enter an order (a)

authorizing and approving the Stipulation and (b) granting them such other and further relief as

is just.

Dated:  New York, New York
         April 21, 2006

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: /s/ John Wm. Butler, Jr.
      John Wm. Butler, Jr. (JB 4711)
      John K. Lyons (JL 4951)
      Ron E. Meisler (RM 3026)
    333 West Wacker Drive, Suite 2100
    Chicago, Illinois  60606
    (312) 407-0700

              - and -

By: /s/ Kayalyn A. Marafioti
      Kayalyn A. Marafioti (KM 9632)
      Thomas J. Matz (TM 5986)
    Four Times Square
    New York, New York 10036
    (212) 735-3000

    Attorneys for Delphi Corporation, et al.,
      Debtors and Debtors-in-Possession

14

**Hearing Date and Time: May 12, 2006 at 10:00 a.m.**
**Objection Deadline:  May 5, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)


        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)


Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                            :
            In re                           :      Chapter 11
                                            :
    DELPHI CORPORATION, et al.,             :      Case No. 05-44481 (RDD)
                                            :
                        Debtors.            :      (Jointly Administered)
                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -   x

NOTICE OF MOTION TO APPROVE STIPULATION AND AGREED
ORDER BETWEEN DELPHI CORPORATION, ET AL. AND FLEXTRONICS
INTERNATIONAL ASIA-PACIFIC LTD., ET AL. REGARDING ADEQUATE
PROTECTION OF PREPETITION SETOFF RIGHTS

PLEASE TAKE NOTICE that on April 21, 2006, Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in

the above-captioned cases, filed a Motion To Approve Stipulation And Agreed Order

Between Delphi Corporation, Et Al. And Flextronics International Asia-Pacific Ltd., Et Al.

Regarding Adequate Protection Of Prepetition Setoff Rights (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of

the Motion will be held on May 12, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the

"Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, Room 610, New York, New York,

10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion

(a) must be in writing, (b) must conform to the Federal Rules of Bankruptcy Procedure, the

Local Bankruptcy Rules for the Southern District of New York and the Third Supplemental

Order Under 11 U.S.C. §§ 102 (1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007,

And 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management,

And Administrative Procedures (the "Third Supplemental Case Management Order")

(Docket No. 3293), (c) be filed with the Bankruptcy Court in accordance with General

Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system

must file electronically, and all other parties-in-interest must file on a 3.5 inch disk

(preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-

based word processing format), (d) be submitted in hard-copy form directly to the

chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) must

2

be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n:

General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP,

333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.),

(iii) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher &

Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n:  Kenneth S.

Ziman), (iv) counsel for the agent under the Debtors' postpetition credit facility, Davis Polk

& Wardell, 450 Lexington Avenue, New York, New York 10017 (Att'n:  Marlane Melican),

(v) counsel for the official committee of unsecured creditors, Latham & Watkins, 885 Third

Avenue, New York, New York, 10022 (Att'n:  Robert J. Rosenberg and Mark A. Broude),

and (vi) the Office of the United States Trustee for the Southern District of New York, 33

Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard), in

each case so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time)** on **May

5, 2006** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth herein and in accordance with the Third Supplemental Case Management Order will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely filed and served in accordance with the procedures set forth herein and in the Third Supplemental Case Management Order, the Bankruptcy Court may enter an order granting the Motion without further notice.

Dated: New York, New York
          April 21, 2006

                         SKADDEN, ARPS, SLATE, MEAGHER
                             & FLOM LLP

                         By:  /s/ John Wm. Butler, Jr.
                             John Wm. Butler, Jr. (JB 4711)
                             John K. Lyons (JL 4951)
                             Ron E. Meisler (RM 3026)
                         333 West Wacker Drive, Suite 2100
                         Chicago, Illinois  60606
                         (312) 407-0700

                                 - and -

                         By:  /s/ Kayalyn A. Marafioti
                             Kayalyn A. Marafioti (KM 9632)
                             Thomas J. Matz (TM 5986)
                         Four Times Square
                         New York, New York  10036
                         (212) 735-3000

                         Attorneys for Delphi Corporation, et al.,
                           Debtors and Debtors-in-Possession

4

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)


Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                         :

In re                        :    Chapter 11
                                         :

DELPHI CORPORATION, et al.,  :    Case No. 05-44481 (RDD)
                                         :

                  Debtors.   :    (Jointly Administered)
                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


STIPULATION AND AGREED ORDER BETWEEN DELPHI
CORPORATION, ET AL. AND FLEXTRONICS INTERNATIONAL
ASIA-PACIFIC LTD, ET AL. REGARDING ADEQUATE
PROTECTION OF PREPETITION SETOFF RIGHTS

**WHEREAS,** on October 8, 2005 (the "Initial Filing Date"), Delphi Corporation ("Delphi") and certain of its U.S. subsidiaries (the "Initial Filers") filed voluntary petitions for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court"); and

**WHEREAS**, on October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, collectively, the "Debtors") filed voluntary petitions in the Bankruptcy Court for reorganization relief under the Bankruptcy Code; and

**WHEREAS,** the Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;  and

**WHEREAS,** the Bankruptcy Court entered orders directing the joint administration of the Debtors' chapter 11 cases (Docket Nos. 28 and 404);  and

**WHEREAS**, on October 17, 2005, the Office of the United States Trustee appointed an official committee of unsecured creditors;  and

**WHEREAS**, no trustee or examiner has been appointed in the Debtors' cases;  and

**WHEREAS**, the Bankruptcy Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409, and this matter is a core proceeding under 28 U.S.C. § 157(b)(2);  and

2

**WHEREAS,** on October 28, 2005, the Bankruptcy Court entered a final order authorizing the Debtors to, among other things, obtain postpetition financing, utilize cash collateral, and grant adequate protection to prepetition secured parties (the "Final DIP Order");  and

**WHEREAS,** the Debtors and Flextronics International Asia-Pacific Ltd. and certain of its affiliates (collectively, "Flextronics" and together with the Debtors, the "Parties") are parties to numerous purchase orders and/or agreements (collectively, the "Agreements") pursuant to which Flextronics manufactures and supplies various products to the Debtors; and

**WHEREAS,** Flextronics has received payments (including of the Flextronics Pre-Petition Receivable (as defined below)) under a guaranty provided by a foreign non-Debtor affiliate of the Debtors for pre-Initial Filing Date amounts due to Flextronics under the Agreements (the "Guaranty Payments"); and

**WHEREAS**, prior to the Petition Date, one or more of the Debtors owed Flextronics $6,713,037 on account of products delivered to the Debtors prior to the Initial Filing Date (the "Flextronics Prepetition Receivable") and Flextronics owes one or more of the Debtors $5,884,967 in total on account of prepetition overpayments and price reductions (the "Flextronics Prepetition Payable");  and

**WHEREAS**, Flextronics has agreed to pay the Flextronics Prepetition Payable to the Debtors pursuant to this stipulation (the "Stipulation") preserving the respective rights of Flextronics and the Debtors as they existed immediately prior to the Initial Filing Date; and

3

**NOW, THEREFORE,** in consideration of the foregoing, the Parties hereto hereby stipulate and agree as follows:

1.  Flextronics agrees to pay the Flextronics Prepetition Payable to the Debtors within five (5) business days of the Effective Date (as defined below).  As adequate protection for any setoff rights Flextronics may have with respect to the Flextronics' Prepetition Payables in the event Flextronics must return any portion of the Guaranty Payments, the Debtors agree that Flextronics shall be entitled to exercise its prepetition setoff rights, if any, against any postpetition payables owing to the Debtors and that Flextronics shall be entitled to the adequate protection provided in the Final DIP Order to parties who have not exercised their setoff rights.  Such exercise, if any, by Flextronics shall for all purposes be treated as if Flextronics had not made any payments to the Debtors with respect to the Flextronics Prepetition Payable.  Further, in the event that Flextronics has no postpetition payables owing to, or to be owing to, the Debtors against which to exercise any unresolved setoff rights, the Debtors shall pay Flextronics an amount equal to its setoff right up to the Flextronics Prepetition Payable within ten (10) business days of the effective date of a plan of reorganization in the Debtors' chapter 11 cases.

2.  The Parties agree that in the event that Flextronics has to disgorge any portion of the Guaranty Payments, Flextronics shall have a claim against the Debtors in the amount of such disgorged amount and Flextronics' setoff rights with respect to such disgorged amount shall be preserved and shall in no way be prejudiced as a result of Flextronics payment of the Flextronics Prepetition Payable to the Debtors.

3.     Nothing contained herein constitutes any waiver of any right of the Debtors or any other party-in-interest to examine and/or object to any setoff right exercised by Flextronics with respect to any postpetition payable, and that the Parties retain all of their other rights, claims, and defenses with respect to any setoff right exercised by Flextronics.

4.     This Stipulation shall not be modified, amended, or terminated, nor any of its provisions waived, except by an agreement in writing signed by all of the Parties.

5.     The covenants, agreements, terms, provisions, and conditions contained in this Stipulation shall be binding upon, and inure to the benefit of, the Parties and their respective legal representatives, predecessors, successors, and assigns, including any trustee appointed in these chapter 11 cases.

6.     It is expressly understood and agreed that the terms hereof, including the recital paragraphs, are contractual;  that the agreement herein contained and the consideration transferred hereunder is to compromise the Demand and to avoid litigation;  and that no statement made herein, payment, release, or other consideration given shall be construed as an admission by the Parties of any kind or nature whatsoever.

7.     This Stipulation constitutes the entire agreement between the Parties with respect to the subject matter herein and supersedes all other prior agreements and understandings, both written and oral, between the Parties with respect to the subject matter hereof.

8.     The signatories below represent that they are authorized to enter into this Stipulation.

5

9.      This Stipulation may be executed in counterparts, any of which may be transmitted by facsimile, and each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

10.     This Stipulation constitutes an agreement between the Parties hereto and shall be effective immediately upon its approval by the Bankruptcy Court and its entry on the docket; provided, that no objection to, or appeal of, this Stipulation has been filed (the "Effective Date").

**[concluded on following page]**

11.    The Bankruptcy Court shall retain original and exclusive

jurisdiction over the Parties to interpret and enforce the terms of this Stipulation and to

resolve any disputes in connection herewith.

Dated: New York, New York
        April 21, 2006

                        SKADDEN, ARPS, SLATE, MEAGHER
                          & FLOM LLP

                        By:  /s/ John Wm. Butler, Jr.
                            John Wm. Butler, Jr. (JB 4711)
                            John K. Lyons (JL 4951)
                            Ron E. Meisler (RM 3026)
                        333 West Wacker Drive, Suite 2100
                        Chicago, Illinois  60606
                        (312) 407-0700

                                - and -

                        By: /s/ Kayalyn A. Marafioti
                            Kayalyn A. Marafioti (KM 9632)
                            Thomas J. Matz (TM 5986)
                        Four Times Square
                        New York, New York 10036
                        (212) 735-3000

                        Attorneys for Delphi Corporation, et al.,
                            Debtors and Debtors-in-Possession

                        CURTIS, MALLET-PREVOST, COLT &
                          MOSLE LLP

                        By: /s/ Steven J. Reisman
                            Steven J. Reisman (SR 4906)
                        101 Park Avenue
                        New York, New York 10178
                        (212) 696-6065

                        Attorneys for Flextronics International
                            Asia-Pacific Ltd.

7

LATHAM & WATKINS, LLP

By: /s/ Mark A. Broude
    Mark A. Broude (MB 1902)
885 Third Avenue
New York, New York 10022-4834
(212) 906-1200


Counsel to the Official Committee of Unsecured
Creditors, et al.


**SO ORDERED** this ___ day of
May 2006 in New York, New York


_____
UNITED STATES BANKRUPTCY JUDGE

# EXHIBIT J

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

       - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)


Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                              :
        In re                                 :      Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :      Case No. 05-44481 (RDD)
                                              :
                                              :      (Jointly Administered)
            Debtors.                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x


EX PARTE MOTION UNDER BANKRUPTCY CODE SECTION 107(b)
AND FED. R. BANKR. P. 9018(1) FOR ORDER AUTHORIZING DEBTORS
TO FILE UNDER SEAL PORTIONS OF MOTION FOR ORDER UNDER FED. R. BANKR.
P. 9019 AUTHORIZING AND APPROVING LICENSE AGREEMENT WITH DENSO
CORPORATION IN SETTLEMENT OF PATENT INFRINGEMENT LITIGATION


("DENSO SETTLEMENT UNDER SEAL MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this ex parte motion (the "Motion") For Order Under 11 U.S.C. § 107(b) And Fed. R. Bankr. P. 9018(1) For Order Authorizing Debtors To File Under Seal Portions Of Motion For Order Under Fed. R. Bankr. P. 9019 Authorizing And Approving License Agreement With Denso Corporation In Settlement Of Patent Infringement Litigation (the "Denso Settlement Motion").  In support of this Motion, the Debtors respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtor's chapter 11 cases.

2.    On October 17, 2005, the Office of the Unites States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner has been appointed in the Debtors' cases.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2

4.    The statutory predicates for the relief requested herein are 11 U.S.C. § 107(b)

and Rule 9018 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    The Confidential Information

5.    Since April 2002, Denso and the Debtors have been involved in patent

disputes and patent litigation relating to gasoline engine management systems ("Gasoline EMS"),

the systems and technologies used to control engines that operate on gasoline, based on Delphi's

manufacture and sale of certain gasoline engine control units.  Delphi and Denso have conducted

negotiations over the past four years to resolve these disputes, which resulted in the parties

entering into the License Agreement.[1]

6.    The Debtors submit that certain information contained in the License

Agreement and the terms of the settlement between the parties reflected in the License

Agreement and disclosed in the Denso Settlement Motion (together, the "Confidential

Materials") is sensitive, confidential commercial information.  Accordingly, the Debtors have

agreed with Denso to seek authority to file the Confidential Materials under seal and to provide

for only limited disclosure and service of such materials.


Relief Requested

7.    By this Motion, the Debtors seek entry of an order, pursuant to section 107(b)

of the Bankruptcy Code and Bankruptcy Rule 9018(1), authorizing the Debtors to file the

Confidential Materials under seal in the Debtors' cases to maintain the confidentiality of the

information contained in those materials to the extent not already described and disclosed in the

Denso Settlement Motion.

_____

[1]    Capitalized terms used but not defined herein have the meanings given to them in the Denso Settlement Motion.

3

8.    The Confidential Materials are comprised of highly sensitive and confidential information regarding the terms on which the parties have agreed to settle the longstanding patent litigation regarding Gasoline EMS.  The Confidential Materials also contain detailed proprietary information describing the ongoing business relationship between the parties, which the parties believe to be highly sensitive and confidential information not typically disclosed to the public or made available in the industry, including patents and technical information pertaining to Gasoline EMS.  It is, therefore, of the utmost importance to the Debtors and Denso that the details of the License Agreement and settlement set forth in the Confidential Materials be kept confidential so that competitors may not use the information contained therein to gain a strategic advantage over the parties in the marketplace.

9.    Finally, disclosure of the Confidential Materials is not necessary for the protection of the public, creditors of the Debtors, or third parties, because (a) the Denso Settlement Motion is subject to this Court's approval in any case and (b) the Debtors are prepared to provide unredacted copies of the Denso Settlement Motion to certain significant parties-in-interest in these cases as described in the immediately following paragraph.

10.    The Debtors propose that the Confidential Materials (and any confidential information derived from the Confidential Materials) remain confidential, be filed under seal, and be served on and made available only to (a) the United States Trustee for the Southern District of New York, (b) counsel to the Creditors' Committee, and (c) such other parties as ordered by this Court or agreed to by the Debtors and Denso.

4

<u>Applicable Authority</u>

11.    Section 107(b) of the Bankruptcy Code provides bankruptcy courts with the power to issue orders that will protect entities from potential harm that may result from the disclosure of certain confidential information. That section provides, in relevant part:

On request of a party in interest, the bankruptcy court shall . . . --

(1)    protect an entity with respect to a trade secret or confidential research, development, or commercial information . . . .

12.    Thus, Bankruptcy Rule 9018 defines the procedures by which a party may move for relief under the section 107(b) of the Bankruptcy Code, and provides that "[o]n motion, or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information."  Fed. R. Bankr. P. 9018.

13.    The Second Circuit has held that section 107(b) and Bankruptcy Rule 9018 do "not require that commercial information be the equivalent of a trade secret before protecting such information."  <u>Video Software Dealers Assoc. v. Orion Pictures Corp. (In re Orion Pictures Corp.)</u>, 21 F.3d 24, 28 (2d Cir. 1994). Indeed, this Court has stated that it "is required to grant that relief upon the motion of a party in interest, assuming the information is of the type listed in section 107(b)."  <u>In re Global Crossing Ltd.</u>, 295 B.R. 720, 723 (Bankr. S.D.N.Y. 2003).  In addition, the Second Circuit has held that a party seeking the sealing of information is only required to show that the information is confidential and commercial, and no showing of "good cause" is necessary, although the Debtors have demonstrated that good cause does exist.  <u>Video Software Dealers Assoc.</u>, 21 F.3d at 28; <u>see also</u> <u>In re Adelphia Communications Corp.</u>, Case No. 02-41729 (REG) (S.D.N.Y.  June 25, 2002) (holding that fee information could be filed

5

under seal because it constituted confidential commercial information, the disclosure of which would be disadvantageous and harmful to debtors and to bank group).

14.    As was true in <u>Adelphia</u>, the Debtors submit that the Confidential Materials that the Debtors seek to protect also contains sensitive commercial information, the disclosure of which would be harmful to the Debtors and their businesses.  Accordingly, the Court should enter an order authorizing the Debtors to file the License Agreement and certain limited portions of the Denso Settlement Motion with the Court pursuant to General Order M-242 and sealed by the United States Bankruptcy Clerk for the Southern District of New York. The Debtors intend to file a redacted public version of the Motion which excludes the Confidential Materials.

<u>Notice Of Motion</u>

15.    Notice of this Motion has been provided in accordance with the Third Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on April 20, 2006 (Docket No. 3293).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.  The Debtors request that the Court grant the relief requested herein without the need for a hearing under 11 U.S.C. §102(1)(B) so that the Debtors may file the Denso Settlement Motion under seal on April 21, 2006.

<u>Memorandum Of Law</u>

16.    Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

6

05-44481-rdd    Doc 3504    Filed 04/28/06    Entered 04/28/06 16:52:38    Main Document
Pg 209 of 427

WHEREFORE the Debtors respectfully request that this Court enter an order (a)

authorizing the Debtors to file the Confidential Materials under seal and (b) granting them such

other and further relief as is just.

Dated:  New York, New York
         April 21, 2006


                              SKADDEN, ARPS, SLATE, MEAGHER
                                 & FLOM LLP

                              By: /s/ John Wm. Butler, Jr.
                                  John Wm. Butler, Jr. (JB 4711)
                                  John K. Lyons (JL 4951)
                                  Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois  60606
                              (312) 407-0700

                                      - and -

                              By: /s/ Kayalyn A. Marafioti
                                  Kayalyn A. Marafioti (KM 9632)
                                  Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

                              Attorneys for Delphi Corporation, et al.,
                                 Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                    :
        In re                       :       Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :       Case No. 05-44481 (RDD)
                                    :
                Debtors.            :       (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER UNDER BANKRUPTCY CODE SECTION 107(b)
AND FED. R. BANKR. P. 9018(1) FOR ORDER AUTHORIZING DEBTORS
TO FILE UNDER SEAL PORTIONS OF MOTION FOR ORDER UNDER FED. R. BANKR. P.
9019 AUTHORIZING AND APPROVING LICENSE AGREEMENT WITH DENSO
CORPORATION IN SETTLEMENT OF PATENT INFRINGEMENT LITIGATION

("DENSO SETTLEMENT UNDER SEAL ORDER")

Upon the motion, dated April 21, 2006 (the "Motion"), of Delphi Corporation and

certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned

cases (collectively, the "Debtors"), for an order (the "Order") Under 11 U.S.C. § 107(b) And Fed.

R. Bankr. P. 9018(1) For Order Authorizing Debtors To File Under Seal Portions Of  Motion For

Order Under Fed. R. Bankr. P. 9019 Authorizing And Approving License Agreement With

Denso Corporation ("Denso") In Settlement Of Patent Infringement Litigation (the "Denso

Settlement Motion"); and this Court having determined that the relief requested in the Motion is

in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and

after due deliberation thereon; and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      The Motion is GRANTED.

2.      The Debtors, pursuant to 11 U.S.C. § 107(b) and Federal Rule of

Bankruptcy Procedure 9018(1), are authorized to file certain information contained in the Denso

Settlement Motion, i.e., the license agreement annexed to the Denso Settlement Motion and the

financial terms of the settlement between the parties reflected in the license agreement and

disclosed in the Denso Settlement Motion (together, the "Confidential Materials"), under seal.

        3.      The Confidential Materials (and any information derived from the

Confidential Materials) shall remain confidential, be filed under seal, and shall be served on and

made available only to (a) the United States Trustee for the Southern District of New York, (b)

counsel to the Creditors' Committee, and (c) such other parties as ordered by this Court or agreed

to by the Debtors and Denso.

        4.      Any pleadings filed in these cases that reference or disclose any of the

information contained in the Confidential Materials shall be filed under seal and served only on

those parties authorized to receive the Confidential Materials in accordance with this Order.


Dated: New York, New York
      April ___, 2006




                          _____
                          UNITED STATES BANKRUPTCY JUDGE

2

# EXHIBIT K

Hearing Date and Time: May 12, 2006 at 10:00 a.m.
Objection Deadline: May 5, 2006 at 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

      - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)


Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
        In re                                       :    Chapter 11
                                                    :
DELPHI CORPORATION, et al.,                         :    Case No. 05-44481 (RDD)
                                                    :
                                                    :    (Jointly Administered)
        Debtors.                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER FED. R. BANKR. P. 9019 AUTHORIZING
AND APPROVING STIPULATIONS AND SETTLEMENT AGREEMENTS
WITH CERTAIN DEFENDANTS IN IN RE ELECTRICAL CARBON
PRODUCTS ANTITRUST LITIGATION, MDL 1514

("ELECTRICAL CARBON SETTLEMENT MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this Motion (the "Motion") For Order Under Fed. R. Bankr. P. 9019 Authorizing

And Approving Stipulations And Settlement Agreements With Certain Defendants In In re

Electrical Carbon Products Antitrust Litigation, MDL 1514.  In particular, the Motion seeks the

authority and approval for entering into settlement agreements with three sets of defendants: (a)

The Morgan Crucible Company plc, Morganite Industries, Inc., Morganite, Inc., Morgan

Advanced Materials and Technology, Inc., Morganite Electrical Carbon Ltd., and National

Electrical Carbon Products, Inc. (collectively, the "Morgan Defendants"), (b) Ludwig Schunk

Stiftung e.V., Schunk GmbH, Schunk Kohlenstoff-Technik GmbH, Schunk of North America,

Inc., Schunk Graphite Technology LLC, Hoffmann & Co. Elektrokohle AG, and Hoffmann

Carbon, Inc. (collectively, the "Schunk Defendants"), and (c) SGL Carbon AG and SGL Carbon,

LLC (together, the "SGL Defendants," and together with the Morgan Defendants and the Schunk

Defendants, the "Settling Defendants").  In support of this Motion, the Debtors respectfully

represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and

affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title

11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered

orders directing the joint administration of the Debtor's chapter 11 cases.

2

2.    On October 17, 2005, the Office of the Unites States Trustee appointed an

official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner

has been appointed in the Debtors' cases.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicate for the relief requested herein is Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    Current Business Operations Of The Debtors

5.    Delphi and its subsidiaries and affiliates (collectively, the "Company") had

global 2005 net sales of approximately $26.9 billion, and global assets as of August 31, 2005 of

approximately $17.1 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth

largest public company business reorganization in terms of revenues, and the thirteenth largest

public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are

not chapter 11 debtors and continue their business operations without supervision from the

Bankruptcy Court.

6.    The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates.

3

7.       Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions and subsidiaries were transferred to the Company in accordance with the terms of a Master Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi accelerated its evolution from a North American-based, captive automotive supplier to a global supplier of components, integrated systems, and modules for a wide range of customers and applications.  Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

8.       In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income.  Every year thereafter, however, with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.8 billion on net sales of $26.9 billion.

9.       The Debtors believe that the Company's financial performance has deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic

---

[2]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in calendar year 2004 was $482 million.

4

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

10.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements.  Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of 2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined the key tenets of its transformation plan.  The Company believes that this plan will enable it to return to stable, profitable business operations and allow the Debtors to emerge from these chapter 11 cases in the first half of 2007.  To complete their restructuring process, the Debtors must focus on five key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business commitment to the Company.  Third, the Debtors must streamline their product portfolio to capitalize on their world-class technology and market strengths and make the necessary manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried workforce to ensure that the Company's organizational and cost structure is competitive and aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise a workable solution to their current pension situation.

12.    In connection with the first two elements of the Company's transformation plan, Delphi continues to participate in discussions with its unions and GM.  Throughout those

5

discussions, Delphi has consistently communicated a clear message to both its hourly workforce

and GM: Delphi is committed to finding a consensual resolution to its issues and intends to

continue to discuss with its unions and GM ways to become competitive in the Debtors' U.S.

operations.  To that end, Delphi, GM and the UAW recently received this Court's approval of a

tripartite agreement providing for a special hourly attrition program for Delphi's UAW-

represented employees.  This special hourly attrition program could provide as many as 18,000

of Delphi's 23,000 existing UAW-represented long-term hourly employees with "soft landings"

through retirement attrition programs and GM flowbacks.  Delphi also hopes to reach agreement

on similar hourly attrition programs with its other unions, which could provide as many as 4,500

additional hourly employees with retirement programs or incentives.

13.    These hourly attrition programs constitute an important first step in

implementing the Debtors' transformation plan, but will not resolve all of the issues related to

Delphi's uncompetitive labor agreements.  Moreover, Delphi has not yet reached comprehensive

agreements with its unions and GM.  Therefore, on March 31, 2006, Delphi moved under

sections 1113 and 1114 of the Bankruptcy Code for authority to reject its U.S. labor agreements

and to modify retiree benefits.[3]  Contemporaneously therewith, the Debtors also moved to reject

unprofitable supply contracts with GM.[4]  Among the reasons for the GM contract rejection

motion was the Debtors' belief that GM must cover a greater portion of the costs of

manufacturing products for GM at plants that bear the burden of the Debtors' legacy costs.  This

initial motion covers approximately half of the Debtors' North American annual purchase

volume revenue from GM but only 10% of the Debtors' total contracts with GM.  Although the

---

[3]    Motion For Order Under 11 U.S.C. § 1113(c) Authorizing Rejection Of Collective Bargaining Agreements And Under 11 U.S.C. § 1114(g) Authorizing Modification of Retiree Welfare Benefits (Docket No. 3035)

[4]    Motion For Order Under 11 U.S.C. § 365 And Fed. R. Bankr. P. 6006 Authorizing Rejection Of Certain Executory Contracts With General Motors Corporation (Docket No. 3033)

6

filing of these motions was a necessary procedural step, the Debtors remain focused on reaching

a consensual resolution with all of Delphi's unions and GM before a hearing on the motions is

necessary.

14.    To implement the third element of the Debtors' transformation plan, the

Company announced plans to focus its product portfolio on those core technologies for which the

Company has significant competitive and technological advantages and expects the greatest

opportunities for increased growth.   To that end, the Company will concentrate the organization

around the following core strategic product lines: (a) Controls & Security (Body Security,

Mechatronics, Power Products, and Displays), (b) Electrical/Electronic Architecture

(Electrical/Electronic Distribution Systems, Connection Systems, and Electrical Centers), (c)

Entertainment & Communications (Audio, Navigation, and Telematics), (d) Powertrain (Diesel

and Gas Engine Management Systems), (e) Safety (Occupant Protection and Safety Electronics),

and (f) Thermal (Climate Control & Powertrain Cooling).[5]

15.    In contrast, the Company similarly identified certain non-core product

lines that do not fit into its future strategic framework, including Brake & Chassis Systems,

Catalysts, Cockpits and Instrument Panels, Door Modules and Latches, Ride Dynamics, Steering,

and Wheel Bearings.  The Company will seek to sell or wind down these non-core product lines

(which will include approximately one-third of its global manufacturing sites) and will consult

with its customers, unions, and other stakeholders to carefully manage the transition of such

affected product lines.  The Company intends to sell or wind down the non-core product lines

and manufacturing sites by January 1, 2008.

---

[5]    The Company does not expect the portfolio changes to have a significant impact on its independent aftermarket
or consumer electronics businesses.  Similarly, the Company does not expect an impact on medical, commercial
vehicles, or other adjacent-market businesses and product lines.

16.     As part of its organizational restructuring, the fourth element of the

Debtors' transformation plan, the Company expects to reduce its global salaried workforce by as

many as 8,500 employees as a result of portfolio and product rationalizations and initiatives

adopted following an analysis of the Company's selling, general, and administration ("SG&A")

cost saving opportunities.  The Company believes that once its SG&A plan is fully implemented,

the Company should realize savings of approximately $450 million per year in addition to

savings realized from competitive measures planned for its core businesses and the disposition of

non-core assets.

17.     As noted above, the final key tenet of the transformation plan is to devise

a workable solution to the Debtors' current pension situation.  The Debtors' goal is to retain the

benefits accrued under the existing defined benefit U.S. pension plans for both the Debtors'

hourly and salaried workforce.  To do so, however, it will be necessary to freeze the current

hourly U.S. pension plan as of October 1, 2006 and to freeze the current salaried U.S. pension

plan as of January 1, 2007.  Despite the freeze, because of the size of the funding deficit, it will

also be necessary for the Debtors to obtain relief from the Pension Benefit Guaranty Corporation,

the Internal Revenue Service, the Department of Labor, and potentially Congress, to amortize

funding contributions over a long-term period.  The Company intends to replace the hourly plan

(for certain employees) and the salaried plan with defined contribution plans.

18.     Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

8

Relief Requested

19.     By this Motion, the Debtors seek entry of an order under Bankruptcy Rule
9019 authorizing and approving various separate stipulations and settlement agreements with the
Settling Defendants.

Basis For Relief

A.    Background To The Proposed Stipulations And Settlement Agreements

20.     On November 4, 2002, the U.S. Department of Justice filed Informations[6]
against The Morgan Crucible Company plc ("Morgan Crucible") and its United States affiliate,
Morganite, Inc., in the U.S. District Court for the Eastern District of Pennsylvania alleging
illegal behavior in furtherance of a global conspiracy to suppress and eliminate competition by
fixing the prices of Electrical Carbon Products.[7]  Both companies pled guilty to the charges and
paid fines of $1 million and $10 million, respectively.  Four Morgan executives – Ian P. Norris,
Robin D. Emerson, Jacobus Johan Anton Kroef, and F. Scott Brown (collectively, the
"Individual Defendants") – were also charged in connection with their role in the conspiracy.
With the exception of Mr. Norris, who currently faces extradition from the United Kingdom,
each of the Individual Defendants pled guilty, paid a fine, and served time in federal prison.

---

[6]    An "information," as defined in Fed. R. Crim. Proc. 7, is a criminal charging document.

[7]    "Electrical Carbon Products" includes, but is not limited to, carbon brushes, commutators, brush holders, and
current collectors used in the manufacture of direct current electric motors, automotive applications, and other
transit applications as well as consumer products; mechanical carbon products used in pump and compressor
industries; and the blocks of carbon from which these products are made.  Carbon brushes are used to transfer
electrical current in direct current motors by acting as the rubbing contacts for electrical connectors in motors.
Direct current motors are used in a variety of products including computers, consumer products, automobiles,
battery operated electric vehicles, and public transit vehicles.  Carbon collectors are used to transfer electrical
current from wires or rails for use in transit vehicles that are not independently powered.  Mechanical carbon
products are sold primarily to pump seal manufacturers and are used in fluid handling markets for containing
liquids in wear situations.  The types of electrical and mechanical carbon products at issue include, but are not
limited to, carbon current collectors, carbon brushes sold to original equipment manufacturers for automotive
applications, traction transit carbon brushes, industrial carbon brushes for use in battery operated vehicles,
carbon brushes sold to original equipment manufacturers for use in consumer products and industrial
applications, and mechanical carbon products for use in pump and compressor industries.

Subsequently, on December 3, 2003, the European Commission adopted a decision and assessed

fines totaling €101,440,000 against the Settling Defendants and others for their participation in

the international Electrical Carbon Products price-fixing conspiracy.  Finally, on July 16, 2004,

Morgan Crucible and its Canadian affiliate, Morganite Canada Corporation, pled guilty and paid

fines of Cdn $550,000 and Cdn $450,000, respectively, for their roles in implementing the

Electrical Carbon Products price-fixing conspiracy in Canada.

    21.  Following announcement of the Electrical Carbon Products price-fixing

investigations in the United States, the European Union, and Canada, a number of private

antitrust class actions were filed in courts throughout the United States against the Settling

Defendants; Le Carbone Lorraine S.A., Carbone Lorraine North America Corporation, and

Carbone of America Industries Corporation (collectively, the "Carbone Defendants"); and C.

Conradty Nuernberg GmbH ("Conradty," and together with the Settling Defendants and the

Carbone Defendants, the "MDL Defendants").  The Debtors were not plaintiffs in any of these

actions.  Certain of these actions – the federal direct purchaser actions – were ultimately

consolidated before the Honorable Jerome B. Simandle of the U.S. District Court for the District

of New Jersey (the "MDL Court") in In re Electrical Carbon Products Antitrust Litigation, MDL

No. 1514, Master Docket No. 03-CV-2182 (JBS) (the "MDL Proceeding").

    22.  Between August 11, 2004 and February 25, 2005, the class plaintiffs in the

MDL Proceeding entered into settlement agreements with each of the MDL Defendants (the

"MDL Settlements").  On May 11, 2005, the MDL Court entered an Order Granting Preliminary

Approval of Proposed Settlements Between Class Plaintiffs and Settling Defendants.  Shortly

thereafter, notice of the MDL Settlements was forwarded to all class members.  Delphi was a

member of the settlement class.

23.     On August 19, 2005, Delphi and thirteen other similarly situated

companies (collectively, the "Plaintiffs"), believing that they might be able to obtain a greater

recovery than as a member of the class by filing a separate lawsuit, requested exclusion from the

settlement class in the MDL Proceeding.  On September 23, 2005, the Plaintiffs, including

Delphi, filed a complaint (the "Complaint") against the MDL Defendants thereby initiating an

action in the U.S. District Court for the Eastern District of Michigan, Case No. 05-CV-73655

(the "Action").  The Complaint alleges that, during the time period of October 1988 through

September 2001, the MDL Defendants engaged in a worldwide conspiracy, the purpose and

effect of which was to fix, raise, maintain, and/or stabilize prices and to allocate markets and

customers for Electrical Carbon Products sold in the United States, Europe, and elsewhere, in

violation of Section 1 of the Sherman Act, 15 U.S.C. § 1 and Sections 445.772 and 445.778 of

the Michigan Antitrust Reform Act.  Subsequently, on December 6, 2005, the Action was

transferred to the MDL Court and consolidated in the MDL Proceeding.

24.     Prior to the filing of the Action, Delphi settled and released its claims

against the Morgan Defendants.  Moreover, unlike the other Plaintiffs, Delphi elected not to

bring suit against the Schunk Defendants.  Thus, of the Settling Defendants, only the SGL

Defendants were named as defendants by Delphi in the Action.  Delphi did not make any

purchases of Electrical Carbon Products from the SGL Defendants, but brought the action

against the SGL Defendants on the basis of joint and several liability.

25.     Shortly after the Action was transferred to the MDL Court, the Plaintiffs

agreed to a request from the parties in the MDL Proceeding to participate in settlement

negotiations with the MDL Defendants.  After months of extensive arms' length negotiations

under court supervision, the Plaintiffs entered into separate stipulations and settlement

11

agreements with each of the Settling Defendants.  No such agreement was reached with the

Carbone Defendants and Plaintiffs intend to pursue their claims against the Carbone Defendants.

B.    The Proposed Stipulations And Settlement Agreements

26.    The Plaintiffs entered into a stipulation and settlement agreement with the

Morgan Defendants on February 11, 2006 (the "Morgan Settlement,"); with the Schunk

Defendants on February 28, 2006 (the "Schunk Settlement"); and with the SGL Defendants on

March 10, 2006 (the "SGL Settlement," and together with the Morgan Settlement and the Schunk

Settlement, the "Settlements").

27.    In general, the Settlements provide that the Plaintiffs will:  (a) dismiss the

Action against the Settling Defendants and the Individual Defendants with prejudice and without

costs, (b) withdraw their requests to exclude themselves from the Morgan, Schunk, and SGL

MDL Settlements, and (c) release and discharge the Settling Defendants from all non-Foreign

Claims arising from the Electrical Carbon Products price-fixing conspiracy.[8]  In return, the

Schunk Defendants have agreed to pay the Plaintiffs an additional aggregate sum; the Schunk

and SGL Defendants have agreed to cooperate with the Plaintiffs in prosecuting the Action

against the Carbone Defendants; and the Morgan and Schunk Defendants have agreed to toll, for

a period of twelve months, the relevant statutes of limitation relating to the Plaintiffs' Foreign

Claims.  Additionally, as an inducement to Delphi and the other Plaintiffs to rejoin some of the

---

[8]    The Morgan Settlement defines "Foreign Claims" as "claims (i) based on allegations of an agreement among competitors with respect to the prices charged for Electrical Carbon Products manufactured and sold to the Plaintiffs by the Morgan Defendants outside of the United States of America during the period between October of 1988 and December of 1999; (ii) arising and asserted exclusively under the laws of jurisdiction(s) located outside of the territorial boundaries of the United States of America; and (iii) asserted exclusively in the courts of such non-U.S. jurisdictions(s)."  The Schunk Settlement defines "Foreign Claims" as "any claim that relates to any purchase of Electrical Carbon Products by the Releasing Parties from any of the Released Parties, from a facility located outside of North America and the end delivery of which occurred outside of North America."  The SGL Settlement defines "Foreign Claims" as "any claim that relates to any purchase of Electrical Carbon Products by the Releasing Parties from any of the Released Parties, from a facility located outside of the United States and the end delivery of which occurred outside of the United States."

12

class settlements, class counsel in the MDL Proceeding agreed to reduce their requested fees

from the settlement funds by approximately $900,000.

28.    The Debtors' anticipated recovery from the Settlements will likely exceed

$1.1 million.[9]  Prior to filing the Action, the Debtors' last settlement demand to the Schunk

Defendants was valued at approximately $380,000.  Thus, the Debtors' anticipated recovery as a

result of the Settlements is nearly three times their last settlement demand.  Moreover, the

Debtors made no purchases from the SGL Defendants, but will share in the SGL Settlement.

Applicable Authority

29.    By this Motion, the Debtors respectfully request the entry of an

order under Rule 9019(a) of the Bankruptcy Rules approving the Stipulations and Settlement

Agreements.  Bankruptcy Rule 9019 provides, in relevant part, that "[o]n motion by the trustee

and after notice and a hearing, the court may approve a compromise or settlement."  Bankruptcy

Rule 9019(a).  Settlements and compromises are "a normal part of the process of reorganization."

Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414,

424 (1968) (quoting Case v. L.A. Lumber Prods. Co., 308 U.S. 106, 130 (1939)); see also In re

Adelphia Communications Corp., 327 B.R. 143, 159 (decision to accept or reject a settlement

lies within sound discretion of bankruptcy court), adhered to on reconsideration, 327 B.R. 175

(Bankr. S.D.N.Y. 2005).

30.    Approval of a compromise under Bankruptcy Rule 9019(a) is appropriate

when the compromise is fair and equitable and is in the best interests of a debtor's estate.  See,

e.g., TMT Trailer Ferry, 390 U.S. at 424; Adelphia, 327 B.R. at 159 ("The settlement need not be

---

[9]    This amount is based on counsel's best estimate of Delphi's anticipated recovery and does not include costs or
attorneys' fees.  The actual amount of Delphi's recovery will not be finalized until all claims are processed by
the claims administrator.

13

the best that the debtor could have obtained.  Rather, the settlement must fall 'within the

reasonable range of litigation possibilities.'") (citations omitted) (quoting In re Penn Centr.

Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979); Nellis v. Shugrue, 165 B.R. 115, 121

(S.D.N.Y. 1994) ("The obligation of the bankruptcy court is to determine whether a settlement is

in the best interest of an estate before approving it.").  In general, compromises in the bankruptcy

context should be approved unless they "'fall below the lowest point in the range of

reasonableness.'"  Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983)

(citation omitted).

       31.     The Supreme Court in TMT Trailer Ferry set forth the following factors

that courts should consider in determining whether a proposed settlement or compromise is in the

best interests of a debtor's estate:  (a) the probability of the debtor's success in the litigation, (b)

the difficulties associated with collection, (c) the complexity of the litigation, and the attendant

expense, inconvenience, and delay, and (d) the paramount interests of the estate's creditors.

TMT Trailer Ferry, 390 U.S. at 424-25; see also Nellis, 165 B.R. at 122; Fry's Metals, Inc. v.

Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002).

       32.     Courts in this district have further elaborated on these factors to consider:

(a)  the balance between the likelihood of plaintiff's or defendants' success should the case go to

trial vis-à-vis the concrete present and future benefits held forth by the settlement without the

expense and delay of a trial and subsequent appellate procedures, (b) the prospect of complex

and protracted litigation if the settlement is not approved, (c) the proportion of the class members

who do not object or who affirmatively support the proposed settlement, (d) the competency and

experience of counsel who support the settlement, (e) the relative benefits to be received by

individuals or groups within the class, (f) the nature and breadth of releases to be obtained by the

directors and officers as a result of the settlement, and (g) the extent to which the settlement is

truly the product of arms-length bargaining, and not of fraud or collusion.  Adelphia, 327 B.R. at

159-60; accord In re Texaco Inc., 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988).

33.    The bankruptcy court need not determine that all of the foregoing criteria

favor approval of a compromise, and the proposed compromise need not be the best agreement

that the debtor could have achieved under the circumstances.  See Adelphia, 327 B.R. at 159-60;

see also Penn Centr., 596 F.2d at 1114.  Instead, the court's proper "role is to determine whether

the settlement as a whole is fair and equitable," In re Lee Way Holding Co., 120 B.R. 881, 890

(Bankr. S.D. Ohio 1990), and falls "'within the reasonable range of litigation possibilities.'"  In re

Telesphere Communications, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994) (citation omitted).

To that end, courts should not substitute their own judgment for that of the debtor, but rather

should "'canvass the issues'" to affirm that the proposed settlement falls above "'the lowest point

in the range of reasonableness.'"  Adelphia, 327 B.R. at 159 (quoting W.T. Grant Co., 699 F.2d

at 608); accord Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust Co. (In re Ionosphere Clubs,

Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd sub nom. Sobchack v. Am. Nat'l Bank & Trust

Co., 17 F.3d 600 (2d Cir. 1994).

34.    Antitrust litigation, like the Action, frequently involves "voluminous

documentary and testimonial evidence, extensive discovery, complicated legal, factual, and

technical (particularly economic) questions, numerous parties and attorneys, and substantial

sums of money."  Manual for Complex Litigation (Fourth) § 30 (2004); see also  In re Shopping

Carts Antitrust Litigation, MDL No. 451, 1983 WL 1950, at *7 (S.D.N.Y. 1983) ("antitrust price

fixing actions are generally complex, expensive and lengthy") (citing City of Detroit v. Grinnell

Corp., 495 F. 2d 448, 467-68 (2d Cir. 1974)).  The Electrical Carbon Products antitrust litigation,

which involves allegations of a decade-long international price-fixing conspiracy, is even more

complex than typical antitrust litigation.  In the MDL Proceeding, several foreign defendants

15

raised subject matter jurisdiction challenges that have not finally been resolved.  The MDL

Defendants also raised a statute of limitations defense for a portion of the damages period.

Although the MDL Court denied these challenges, it held that fraudulent concealment remains an

element that must be proven at trial to finally defeat the statute of limitations defense.  The

Settling Defendants would likely also challenge federal antitrust jurisdiction over certain of the

foreign purchases made by Delphi and the other Plaintiffs.  Other contentious issues in the

Action would likely include market definition, the Plaintiffs' theory on liability, and the

Plaintiffs' ability to prove damages.

        35.      The Settlements will provide the Debtors with a substantial recovery for a

portion of their claims and will decrease the complexity, length, and cost of the continuing

litigation relating to the Electrical Carbon Products price-fixing conspiracy, while at the same

time increasing the Debtors' probability of success against the non-settling Carbone Defendants

in such litigation.  First, as a result of the Settlements, the Debtors will only have to litigate

against the Carbone Defendants in federal court, rather than conduct a multiple-front litigation

against all of the MDL Defendants.  Second, the Settlements require the Schunk and SGL

Defendants to take affirmative steps to assist the Debtors in their suit against the Carbone

Defendants.  In addition, the Debtors, benefiting from arguments and theories bolstered by

evidence and expertise provided by the Schunk and SGL Defendants, will be able to focus their

attention on rebutting the defenses asserted by the Carbon Defendants and on proving the

Debtors' claims against the Carbone Defendants.

        36.      Absent the Settlement, the Debtors would likely face a number of

difficulties with collection if the litigation moved forward against the Settling Defendants.  As

explained above, the Debtors previously released their claims against the Morgan Defendants

and elected not to sue the Schunk Defendants.  In any event, the Debtors would be prevented

16

from seeking treble damages or joint and several liability against the Schunk Defendants because

the Schunk Defendants received amnesty from the Department of Justice.  Moreover, as is

discussed above, the foreign parents of the Settling Defendants will likely resist jurisdiction in

the courts of the United States and challenge collection efforts.  Any one of these factors could

jeopardize the Debtors' ability to  recover their damages.

        37.    The creditors of the Debtors will also benefit from the Settlements.  First,

as a result of negotiations between class counsel and antitrust counsel for the Debtors, class

counsel agreed to reduce their requested attorneys' fees by approximately $900,000.  This

amount will instead be included in the settlement fund that will now be used to compensate all

class members, including the Debtors, for the damages they incurred.  Second, the Debtors'

recovery under the Settlements from the three Settling Defendants is substantial.  The Debtors

previously settled with the Morgan Defendants and made no purchases from the SGL

Defendants.  The Debtors' purchases from the Schunk Defendants (the third Settling Defendant)

amounted to approximately $2.3 million.  Pursuant to the Settlements, the Debtors stand to

recover approximately $1.1 million from the Settling Defendants which represents a recovery of

approximately 48% of their purchases from the Schunk Defendants.  If the Debtors had remained

in the settlement class in the MDL Proceedings, their recovery would have been approximately

4% of the aggregate amount of any purchases.  Third, the Settlements allow for the potential of

additional recovery from other parties.  Under the federal antitrust laws, the Carbone Defendants,

who are not settling defendants,  remain jointly and severally liable for three times the Debtors'

damages.  The Debtors intend to pursue their claims against the Carbone Defendants in the

Action.  The Settlements have also been drafted in a manner that preserves the Debtors' right to

bring a foreign action to seek additional damages from the Settling Defendants for purchases

made outside the United States.

38.      Accordingly, the Stipulations and Settlement Agreements are fair and
equitable, fall well within the range of reasonableness, and represent a benefit to the Debtors'
creditors and other parties-in-interest.  For the reasons set forth above, the Court should approve
the Stipulations and Settlement Agreements pursuant to Bankruptcy Rule 9019.

Notice Of Motion

39.     Notice of this Motion has been provided in accordance with the Third

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered by this Court on April 20, 2006 (Docket No. 3293).  In

light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

Memorandum Of Law

40.     Because the legal points and authorities upon which this Motion relies are

incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York be deemed

satisfied.

WHEREFORE the Debtors respectfully request that this Court enter an order (a)

authorizing and approving the Stipulations and Settlement Agreements and (b) granting them

such other and further relief as is just.

Dated:  New York, New York
          April 21, 2006

                              SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP

                              By: /s/ John Wm. Butler, Jr.
                                    John Wm. Butler, Jr. (JB 4711)
                                    John K. Lyons (JL 4951)
                                    Ron E. Meisler (RM 3026)
                              333 West Wacker Drive, Suite 2100
                              Chicago, Illinois  60606
                              (312) 407-0700

                                          - and -

                              By: /s/ Kayalyn A. Marafioti
                                    Kayalyn A. Marafioti (KM 9632)
                                    Thomas J. Matz (TM 5986)
                              Four Times Square
                              New York, New York 10036
                              (212) 735-3000

                              Attorneys for Delphi Corporation, et al.,
                                Debtors and Debtors-in-Possession

20

**Hearing Date and Time: May 12, 2006 at 10:00 a.m.**
**Objection Deadline:  May 5, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
     Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                                             :
              In re                                          :    Chapter 11
                                                             :
        DELPHI CORPORATION, et al.,                          :    Case No. 05-44481 (RDD)
                                                             :
                               Debtors.                      :    (Jointly Administered)
                                                             :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

NOTICE OF MOTION FOR ORDER UNDER FED. R. BANKR. P. 9019
AUTHORIZING AND APPROVING STIPULATIONS AND SETTLEMENT
AGREEMENTS WITH CERTAIN DEFENDANTS IN IN RE ELECTRICAL
CARBON PRODUCTS ANTITRUST LITIGATION, MDL 1514

PLEASE TAKE NOTICE that on April 21, 2006, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases, filed a Motion For Order Under Fed. R. Bankr. P. 9019 Authorizing And Approving Stipulations And Settlement Agreements With Certain Defendants In In Re Electrical Carbon Products Antitrust Litigation, MDL 1514 (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the Motion will be held on May 12, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York, 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion (a) must be in writing, (b) must conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York and the Third Supplemental Order Under 11 U.S.C. §§ 102 (1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, And Administrative Procedures (the "Third Supplemental Case Management Order") (Docket No. 3293), (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the

2

chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) must

be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n:

General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP,

333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.),

(iii) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher &

Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n:  Kenneth S.

Ziman), (iv) counsel for the agent under the Debtors' postpetition credit facility, Davis Polk

& Wardell, 450 Lexington Avenue, New York, New York 10017 (Att'n:  Marlane Melican),

(v) counsel for the official committee of unsecured creditors, Latham & Watkins, 885 Third

Avenue, New York, New York, 10022 (Att'n:  Robert J. Rosenberg and Mark A. Broude),

and (vi) the Office of the United States Trustee for the Southern District of New York, 33

Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard), in

each case so as to be **received** no later than **4:00 p.m. (Prevailing Eastern Time)** on **May

5, 2006** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Third Supplemental Case Management Order will be

considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely

filed and served in accordance with the procedures set forth herein and in the Third

Supplemental Case Management Order, the Bankruptcy Court may enter an order granting the

Motion without further notice.

Dated: New York, New York
       April 21, 2006

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                          :
          In re                           :        Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :        Case No. 05-44481 (RDD)
                                          :
                         Debtors.         :        (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

ORDER UNDER FED. R. BANKR. P. 9019 AUTHORIZING
AND APPROVING STIPULATIONS AND SETTLEMENT AGREEMENTS
WITH CERTAIN DEFENDANTS IN IN RE ELECTRICAL CARBON
PRODUCTS ANTITRUST LITIGATION, MDL 1514

("ELECTRICAL CARBON SETTLEMENT ORDER")

Upon the motion, dated April 21, 2006 (the "Motion"), of Delphi Corporation and

certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned

cases (collectively, the "Debtors"), for an order (the "Order") Under Fed. R. Bankr. P. 9019

Authorizing And Approving Stipulations And Settlement Agreements With Certain Defendants

In In Re Electrical Carbon Products Antitrust Litigation, MDL 1514 (the "Stipulations and

Settlement Agreements"); and this Court having determined that the relief requested in the

Motion is in the best interests of the Debtors, their estates, their creditors, and other parties-in-

interest; and it appearing that proper and adequate notice of the Motion has been given and that

no other or further notice is necessary; and after due deliberation thereon; and good and

sufficient cause appearing therefor,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1.      The Debtors' decision to enter into the Stipulations and Settlement

Agreements is reasonable and appropriate under the circumstances and is approved.

2.      The Debtors are hereby authorized to enter into the Stipulations and

Settlement Agreements.

Dated:  New York, New York
         May ___, 2006


_____
UNITED STATES BANKRUPTCY JUDGE

2

# EXHIBIT L

Hearing Date and Time: May 12, 2006 at 10:00 a.m.
Objection Deadline: May 5, 2006 at 4:00 p.m.

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

       - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
     Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
          In re                     :    Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :    Case No. 05-44481 (RDD)
                                    :
                                    :    (Jointly Administered)
          Debtors.                  :
- - - - - - - - - - - - - - - - - - - - - - - - - - - x

MOTION FOR ORDER UNDER FED. R. BANKR. P. 9019 AUTHORIZING AND
APPROVING LICENSE AGREEMENT WITH DENSO CORPORATION IN
SETTLEMENT OF PATENT INFRINGEMENT LITIGATION

("DENSO SETTLEMENT MOTION")

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this motion (the "Motion") for an order under Fed. R. Bankr. P. 9019 authorizing and approving the Debtors' entry into that certain License Agreement entered into by and among Delphi, Delphi Automotive Systems LLC ("DAS LLC"), Delphi Technologies, Inc. ("Delphi Technologies"), and Denso Corporation ("Denso"), which settles a patent infringement lawsuit between Denso and Delphi and DAS LLC.  In support of this Motion, the Debtors respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration of the Debtor's chapter 11 cases.

2.    On October 17, 2005, the Office of the Unites States Trustee appointed an official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner has been appointed in the Debtors' cases.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

2

4.    The statutory predicates for the relief requested herein is Rule 9019 of the

Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

B.    Current Business Operations Of The Debtors

5.    Delphi and its subsidiaries and affiliates (collectively, the "Company") had

global 2005 net sales of approximately $26.9 billion, and global assets as of August 31, 2005 of

approximately $17.1 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth

largest public company business reorganization in terms of revenues, and the thirteenth largest

public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are

not chapter 11 debtors and continue their business operations without supervision from the

Bankruptcy Court.

6.    The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

7.    Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through

various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these

divisions and subsidiaries were transferred to the Company in accordance with the terms of a

Master Separation Agreement between Delphi and GM.  In connection with these transactions,

Delphi accelerated its evolution from a North American-based, captive automotive supplier to a

global supplier of components, integrated systems, and modules for a wide range of customers

---

[1]    The aggregated financial data used in this Motion generally consists of consolidated information from Delphi
and its worldwide subsidiaries and affiliates.

3

and applications. Although GM is still the Company's single largest customer, today more than half of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

        8.    In the first two years following Delphi's separation from GM, the Company generated approximately $2 billion in net income. Every year thereafter, however, with the exception of 2002, the Company has suffered losses. In calendar year 2004, the Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2] Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.8 billion on net sales of $26.9 billion.

        9.    The Debtors believe that the Company's financial performance has deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements, including restrictions preventing the Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic OEMs resulting in the reduced number of motor vehicles that GM produces annually in the United States and related pricing pressures, and (c) increasing commodity prices.

        10.    In light of these factors, the Company determined that it would be imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product portfolio, operational issues, and forward-looking revenue requirements. Because discussions with its major unions and GM had not progressed sufficiently by the end of the third quarter of

---

[2]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004. The Company's net operating loss in calendar year 2004 was $482 million.

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the

Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

        11.    On March 31, 2006, the Company outlined the key tenets of its

transformation plan.  The Company believes that this plan will enable it to return to stable,

profitable business operations and allow the Debtors to emerge from these chapter 11 cases in

the first half of 2007.  To complete their restructuring process, the Debtors must focus on five

key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which

to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize

GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business

commitment to the Company.  Third, the Debtors must streamline their product portfolio to

capitalize on their world-class technology and market strengths and make the necessary

manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried

workforce to ensure that the Company's organizational and cost structure is competitive and

aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise

a workable solution to their current pension situation.

        12.    In connection with the first two elements of the Company's transformation

plan, Delphi continues to participate in discussions with its unions and GM.  Throughout those

discussions, Delphi has consistently communicated a clear message to both its hourly workforce

and GM: Delphi is committed to finding a consensual resolution to its issues and intends to

continue to discuss with its unions and GM ways to become competitive in the Debtors' U.S.

operations.  To that end, Delphi, GM and the UAW recently received this Court's approval of a

tripartite agreement providing for a special hourly attrition program for Delphi's UAW-

represented employees.  This special hourly attrition program could provide as many as 18,000

5

of Delphi's 23,000 existing UAW-represented long-term hourly employees with "soft landings"
through retirement attrition programs and GM flowbacks. Delphi also hopes to reach agreement
on similar hourly attrition programs with its other unions, which could provide as many as 4,500
additional hourly employees with retirement programs or incentives.

13.     These hourly attrition programs constitute an important first step in
implementing the Debtors' transformation plan, but will not resolve all of the issues related to
Delphi's uncompetitive labor agreements. Moreover, Delphi has not yet reached comprehensive
agreements with its unions and GM. Therefore, on March 31, 2006, Delphi moved under
sections 1113 and 1114 of the Bankruptcy Code for authority to reject its U.S. labor agreements
and to modify retiree benefits.[3] Contemporaneously therewith, the Debtors also moved to reject
unprofitable supply contracts with GM.[4] Among the reasons for the GM contract rejection
motion was the Debtors' belief that GM must cover a greater portion of the costs of
manufacturing products for GM at plants that bear the burden of the Debtors' legacy costs. This
initial motion covers approximately half of the Debtors' North American annual purchase
volume revenue from GM but only 10% of the Debtors' total contracts with GM. Although the
filing of these motions was a necessary procedural step, the Debtors remain focused on reaching
a consensual resolution with all of Delphi's unions and GM before a hearing on the motions is
necessary.

14.     To implement the third element of the Debtors' transformation plan, the
Company announced plans to focus its product portfolio on those core technologies for which the
Company has significant competitive and technological advantages and expects the greatest

---

[3]   Motion For Order Under 11 U.S.C. § 1113(c) Authorizing Rejection Of Collective Bargaining Agreements And
      Under 11 U.S.C. § 1114(g) Authorizing Modification of Retiree Welfare Benefits (Docket No. 3035)

[4]   Motion For Order Under 11 U.S.C. § 365 And Fed. R. Bankr. P. 6006 Authorizing Rejection Of Certain
      Executory Contracts With General Motors Corporation (Docket No. 3033)

opportunities for increased growth.   To that end, the Company will concentrate the organization

around the following core strategic product lines: (a) Controls & Security (Body Security,

Mechatronics, Power Products, and Displays), (b) Electrical/Electronic Architecture

(Electrical/Electronic Distribution Systems, Connection Systems, and Electrical Centers), (c)

Entertainment & Communications (Audio, Navigation, and Telematics), (d) Powertrain (Diesel

and Gas Engine Management Systems), (e) Safety (Occupant Protection and Safety Electronics),

and (f) Thermal (Climate Control & Powertrain Cooling).[5]

15.    In contrast, the Company similarly identified certain non-core product

lines that do not fit into its future strategic framework, including Brake & Chassis Systems,

Catalysts, Cockpits and Instrument Panels, Door Modules and Latches, Ride Dynamics, Steering,

and Wheel Bearings. The Company will seek to sell or wind down these non-core product lines

(which will include approximately one-third of its global manufacturing sites) and will consult

with its customers, unions, and other stakeholders to carefully manage the transition of such

affected product lines. The Company intends to sell or wind down the non-core product lines

and manufacturing sites by January 1, 2008.

16.    As part of its organizational restructuring, the fourth element of the

Debtors' transformation plan, the Company expects to reduce its global salaried workforce by as

many as 8,500 employees as a result of portfolio and product rationalizations and initiatives

adopted following an analysis of the Company's selling, general, and administration ("SG&A")

cost saving opportunities. The Company believes that once its SG&A plan is fully implemented,

the Company should realize savings of approximately $450 million per year in addition to

---

[5]    The Company does not expect the portfolio changes to have a significant impact on its independent aftermarket
or consumer electronics businesses.  Similarly, the Company does not expect an impact on medical, commercial
vehicles, or other adjacent-market businesses and product lines.

7

savings realized from competitive measures planned for its core businesses and the disposition of non-core assets.

17.    As noted above, the final key tenet of the transformation plan is to devise a workable solution to the Debtors' current pension situation.  The Debtors' goal is to retain the benefits accrued under the existing defined benefit U.S. pension plans for both the Debtors' hourly and salaried workforce.  To do so, however, it will be necessary to freeze the current hourly U.S. pension plan as of October 1, 2006 and to freeze the current salaried U.S. pension plan as of January 1, 2007.  Despite the freeze, because of the size of the funding deficit, it will also be necessary for the Debtors to obtain relief from the Pension Benefit Guaranty Corporation, the Internal Revenue Service, the Department of Labor, and potentially Congress, to amortize funding contributions over a long-term period.  The Company intends to replace the hourly plan (for certain employees) and the salaried plan with defined contribution plans.

18.    Upon the conclusion of the reorganization process, the Debtors expect to emerge as a stronger, more financially sound business with viable U.S. operations that are well-positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of its resources to continue to deliver high-quality products to its customers globally.  Additionally, the Company will preserve and continue the strategic growth of its non-U.S. operations and maintain its prominence as the world's premier auto supplier.

## Relief Requested

19.    By this Motion, the Debtors seek entry of an order under Bankruptcy Rule 9019 authorizing and approving the Debtors' entry into that certain License Agreement entered into by and among Delphi, DAS LLC, Delphi Technologies, and Denso, which settles a patent infringement lawsuit between Denso and Delphi and DAS LLC.

8

Basis For Relief

A.    Background To Proposed Settlement

20.    In March 2002, Denso, a Japanese corporation, alleged that Delphi was infringing several of Denso's patents relating to gasoline engine management system ("Gasoline EMS"), the systems and technologies used to control engines that operate on gasoline, based on Delphi's manufacture and sale of certain gasoline engine control units.

21.    Delphi and Denso have conducted negotiations over the past four years to resolve this dispute.  On July 11, 2005, Denso filed a complaint against Delphi and DAS LLC in the U.S. District Court for the District of Delaware alleging infringement of three of Denso's thermostat diagnostic patents relating to Gasoline EMS.  This litigation, entitled Denso Corporation v. Delphi Corporation and Delphi Automotive Systems LLC, Civil Action No. 05-481 (SLR) (D. Del.) (the "Denso Action"), has been stayed as a result of the filing of these chapter 11 cases.

B.    Proposed License Agreement

22.    Delphi and Denso continued to engage in negotiations following the filing of the Denso Action and during the last several months they have negotiated the terms of the License Agreement to resolve this dispute.  In the exercise of their business judgment and to avoid the costs, delay, and uncertainty of litigation, the Debtors have agreed to settle the Denso Action under the terms of the License Agreement.

23.    Under the License Agreement, substantially in the form attached hereto under seal,[6] the parties each obtain valuable rights from and provide valuable releases to each other.  Denso will release Delphi from Denso's claims as set forth in the Denso Action and

---

[6]    The terms of the License Agreement are highly confidential and were filed under seal with the Court.

9

Delphi will release Denso from Delphi's claims arising from any affirmative defenses or

counterclaims directly related to Denso's claims in the Denso Action; Delphi obtains a license

under 21 Denso Gasoline EMS U.S. patents (including all related U.S. and foreign patents) as

well as an option to designate two additional existing Denso Gasoline EMS patents for inclusion

under the License Agreement, for Delphi's use in its future pursuit of business (these patents

would be valuable to Delphi); Denso obtains a license for up to seven existing Delphi Gasoline

EMS patents; and, in addition, Delphi will pay Denso the sum of $          (the "Settlement

Payment").  Due to the substantial cost of patent litigation, if Denso were to pursue the Denso

Action, Delphi's litigation costs alone could approach the amount of the Settlement Payment.

Moreover, both Delphi and Denso have agreed to a five-year moratorium on any future charges

of infringement of existing Gasoline EMS patents that are not the subject of this settlement.

        24.    The value of this settlement to the Debtors is substantial in light of the cost

and uncertainty of litigation, the benefit of the additional patents option, and the fact that the

Debtors will no longer be distracted by this costly litigation and the threat of further patent

litigation and disputes with Denso during the moratorium with respect to existing Denso

Gasoline EMS patents.  The Debtors are in the midst of implementing their comprehensive

transformation plan announced March 31, 2006.  The Debtors' management is consumed with

this process at this time and will be throughout the reorganization process.  The Debtors are in no

position to devote resources unnecessarily to matters, such as the Denso Action, that are not

related to their core mission at this stage in the reorganization process:  implementing the

transformation plan and continuing to deliver high-quality products to customers globally.  Thus,

Delphi believes it would be prudent to make the Settlement Payment and to end the long-

standing dispute with Denso, which, if allowed to continue, could further impede the Debtors'

reorganization efforts.

### Applicable Authority

25.    By this Motion, the Debtors respectfully request the entry of an order

under Rule 9019(a) of the Bankruptcy Rules approving the License Agreement and the

settlement terms contained therein. Bankruptcy Rule 9019 provides, in relevant part, that "[o]n

motion by the trustee and after notice and a hearing, the court may approve a compromise or

settlement." Bankruptcy Rule 9019(a). Settlements and compromises are "a normal part of the

process of reorganization," Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc.

v. Anderson, 390 U.S. 414, 424 (1968) (quoting Case v. L.A. Lumber Prods. Co., 308 U.S. 106,

130 (1939)); see also In re Adelphia Comm'ns Corp., 327 B.R. 143, 159 (decision to accept or

reject a settlement lies within sound discretion of bankruptcy court), adhered to on

reconsideration, 327 B.R. 175 (Bankr. S.D.N.Y. 2005).

26.    Approval of a compromise under Bankruptcy Rule 9019(a) is appropriate

when the compromise is fair and equitable and is in the best interests of a debtor's estate. See,

e.g., TMT Trailer Ferry, 390 U.S. at 424; Adelphia Comm'ns, 327 B.R. at 159 ("The settlement

need not be the best that the debtor could have obtained. Rather, the settlement must fall 'within

the reasonable range of litigation possibilities.'") (citations omitted) (quoting In re Penn Centr.

Transp. Co., 596 F.2d 1102, 1114 (3d Cir. 1979); Nellis v. Shugrue, 165 B.R. 115, 121

(S.D.N.Y. 1994) ("The obligation of the bankruptcy court is to determine whether a settlement is

in the best interest of an estate before approving it."). In general, compromises in the bankruptcy

context should be approved unless they "'fall below the lowest point in the range of

11

reasonableness.'" Cosoff v. Rodman (In re W.T. Grant Co.), 699 F.2d 599, 608 (2d Cir. 1983) (citation omitted).

27.    The Supreme Court in TMT Trailer Ferry set forth the following factors that courts should consider in determining whether a proposed settlement or compromise is in the best interests of a debtor's estate: (a) the probability of the debtor's success in the litigation, (b) the difficulties associated with collection, (c) the complexity of the litigation, and the attendant expense, inconvenience, and delay, and (d) the paramount interests of the estate's creditors. TMT Trailer Ferry, 390 U.S. at 424-25; see also Nellis, 165 B.R. at 122; Fry's Metals, Inc. v. Gibbons (In re RFE Indus., Inc.), 283 F.3d 159, 165 (3d Cir. 2002).

28.    Courts in this district have further elaborated on these factors to consider: (a) the balance between the likelihood of plaintiff's or defendants' success should the case go to trial vis-à-vis the concrete present and future benefits held forth by the settlement without the expense and delay of a trial and subsequent appellate procedures, (b) the prospect of complex and protracted litigation if the settlement is not approved, (c) the proportion of the class members who do not object or who affirmatively support the proposed settlement, (d) the competency and experience of counsel who support the settlement, (e) the relative benefits to be received by individuals or groups within the class, (f) the nature and breadth of releases to be obtained by the directors and officers as a result of the settlement, and (g) the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion. Adelphia Comm'ns, 327 B.R. at 159-60; accord In re Texaco Inc., 84 B.R. 893, 902 (Bankr. S.D.N.Y. 1988).

29.    The bankruptcy court need not determine that all of the foregoing criteria favor approval of a compromise, and the proposed compromise need not be the best agreement that the debtor could have achieved under the circumstances. See Adelphia Comm'ns, 327 B.R.

12

at 159-60; see also Penn Centr., 596 F.2d at 1114.  Instead, the court's proper "role is to

determine whether the settlement as a whole is fair and equitable," In re Lee Way Holding Co.,

120 B.R. 881, 890 (Bankr. S.D. Ohio 1990), and falls "'within the reasonable range of litigation

possibilities.'" In re Telesphere Comm'ns, Inc., 179 B.R. 544, 553 (Bankr. N.D. Ill. 1994)

(citation omitted).  To that end, courts should not substitute their own judgment for that of the

debtor, but rather should "'canvass the issues'" to affirm that the proposed settlement falls above

"'the lowest point in the range of reasonableness.'" Adelphia Comm'ns, 327 B.R. at 159 (quoting

W.T. Grant Co., 699 F.2d at 608); accord Airline Pilots Ass'n, Int'l v. Am. Nat'l Bank & Trust

Co. (In re Ionosphere Clubs, Inc.), 156 B.R. 414, 426 (S.D.N.Y. 1993), aff'd sub nom. Sobchack

v. Am. Nat'l Bank & Trust Co., 17 F.3d 600 (2d Cir. 1994).

   30. The License Agreement, as it sets forth the terms of the settlement

between the Debtors and Denso, should be approved under Bankruptcy Rule 9019(a) because its

terms are fair and equitable, fall well within the range of reasonableness, and are in the best

interests of the Debtors and their estates.  Most significantly, the License Agreement provides for

the immediate resolution of the Denso Action.  The proposed settlement falls within the

reasonable range of litigation possibilities.  As is the case with any litigation, the outcome of

Denso's patent infringement lawsuit is uncertain, and a trial on the merits would involve

significant time and expense, as well as an administrative burden.  Given the significant expense

associated with patent litigation, Delphi's litigation costs to defend the Denso Action could

approach the Settlement Payment being paid to Denso under the License Agreement.  Thus, the

Debtors believe that resolving Denso's lawsuit against Delphi pursuant to the terms of the

License Agreement is a fair resolution of this matter, and in the best interest of the Debtors and

their creditors.

31.   Furthermore, Denso will grant to Delphi licenses for 21 Denso Gasoline EMS U.S. patents (including all related U.S. and foreign patents), with the option to designate two additional existing Denso Gasoline EMS patents for inclusion under the License Agreement. The Debtors believe that the terms of the settlement set forth in the License Agreement are a reasonable compromise under the circumstances because it avoids the costs and uncertainties of litigation while allowing the Debtors to license certain Denso Gasoline EMS patents.

32.   In the exercise of their business judgment, the Debtors therefore believe that the terms of the License Agreement are reasonable based upon important benefits that the Debtors will receive. Based on the benefits to be realized from entering into the License Agreement, together with the potential harm to the estates if the relief requested herein is not granted, the Debtors respectfully request that the motion be granted.

## Notice Of Motion

33.   Notice of this Motion has been provided in accordance with the Second Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on March 28, 2006 (Docket No. 2995). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

## Memorandum Of Law

34.   Because the legal points and authorities upon which this Motion relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

14

15

WHEREFORE the Debtors respectfully request that this Court enter an order (a)

authorizing and approving the License Agreement and (b) granting them such other and further

relief as is just.

Dated:  New York, New York
      April 21, 2006

                               SKADDEN, ARPS, SLATE, MEAGHER
                                & FLOM LLP

                            By: /s/ John Wm. Butler, Jr.
                                John Wm. Butler, Jr. (JB 4711)
                                John K. Lyons (JL 4951)
                                Ron E. Meisler (RM 3026)
                            333 West Wacker Drive, Suite 2100
                            Chicago, Illinois  60606
                            (312) 407-0700

                                  - and -

                            By: /s/ Kayalyn A. Marafioti
                                Kayalyn A. Marafioti (KM 9632)
                                Thomas J. Matz (TM 5986)
                            Four Times Square
                            New York, New York 10036
                            (212) 735-3000

                            Attorneys for Delphi Corporation, et al.,
                            Debtors and Debtors-in-Possession

# LICENSE AGREEMENT

(Filed Under Seal)

**Hearing Date and Time: May 12, 2006 at 10:00 a.m.**
**Objection Deadline: May 5, 2006 at 4:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

        - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                    :
        In re                       :     Chapter 11
                                    :
DELPHI CORPORATION, et al.,         :     Case No. 05-44481 (RDD)
                                    :
                      Debtors.      :     (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

NOTICE OF MOTION FOR ORDER UNDER FED. R. BANKR. P. 9019 AUTHORIZING
AND APPROVING LICENSE AGREEMENT WITH DENSO CORPORATION IN
SETTLEMENT OF PATENT INFRINGEMENT LITIGATION

PLEASE TAKE NOTICE that on April 21, 2006, Delphi Corporation ("Delphi")

and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-

captioned cases (collectively, the "Debtors"), filed a Motion For Order Under Fed. R. Bankr. P.

9019 Authorizing And Approving License Agreement With Denso Corporation In Settlement Of

Patent Infringement Litigation (the "Motion").

PLEASE TAKE FURTHER NOTICE that a hearing to consider approval of the

Motion will be held on May 12, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing")

before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District

of New York, One Bowling Green, Room 610, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Motion must

(a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local

Bankruptcy Rules for the Southern District of New York, and the Third Supplemental Order

Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And

Administrative Procedures, entered by this Court on April 20, 2006 (the "Third Supplemental

Case Management Order") (Docket No. 3293), (c) be filed with the Bankruptcy Court in

accordance with General Order M-242 (as amended) – registered users of the Bankruptcy Court's

case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch

disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based

word processing format), (d) be submitted in hard-copy form directly to the chambers of the

Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) be served upon (i) Delphi

Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to

the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100,

2

Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the

Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue,

New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for the agent under the

postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New

York 10017 (Att'n:  Marlane Melican), (v) counsel for the Official Committee of Unsecured

Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n:

Robert J. Rosenberg and Mark A. Broude), and (vi) the Office of the United States Trustee for

the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York

10004 (Att'n:  Alicia M. Leonhard), in each case so as to be **received** no later than **4:00 p.m.**

**(Prevailing Eastern Time) on May 5, 2006** (the "Objection Deadline").

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth

herein and in accordance with the Third Supplemental Case Management Order will be

considered by the Bankruptcy Court at the Hearing.  If no objections to the Motion are timely

filed and served in accordance with the procedures set forth herein and in the Third

Supplemental Case Management Order, the Bankruptcy Court may enter an order granting the

Motion without further notice.

Dated:  New York, New York
      April 21, 2006

                    SKADDEN, ARPS, SLATE, MEAGHER
                      & FLOM LLP

                    By:/s/ John Wm. Butler, Jr.
                       John Wm. Butler, Jr. (JB 4711)
                       John K. Lyons  (JL 4951)
                       Ron E. Meisler (RM 3026)
                    333 West Wacker Drive, Suite 2100
                    Chicago, Illinois  60606
                    (312) 407-0700

                      - and -

                    By:/s/ Kayalyn A. Marafioti
                       Kayalyn A. Marafioti (KM 9632)
                       Thomas J. Matz (TM 5986)
                    Four Times Square
                    New York, New York 10036
                    (212) 735-3000

                    Attorneys for Delphi Corporation, et al.,
                      Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                    :
        In re                       :        Chapter 11
                                    :
DELPHI CORPORATION, et al.,          :        Case No. 05-44481 (RDD)
                                    :
                Debtors.            :        (Jointly Administered)
                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER FED. R. BANKR. P. 9019 AUTHORIZING AND APPROVING
LICENSE AGREEMENT WITH DENSO CORPORATION IN SETTLEMENT
OF PATENT INFRINGEMENT LITIGATION

("DENSO SETTLEMENT ORDER")

            Upon the motion, dated April 21, 2006 (the "Motion"), of Delphi Corporation and

certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned

cases (collectively, the "Debtors"), for an order (the "Order") under Fed. R. Bankr. P. 9019

authorizing and approving that certain License Agreement by and among Delphi, Delphi

Automotive Systems LLC ("DAS LLC"), Delphi Technologies, Inc., and Denso Corporation

("Denso"), which settles a patent infringement lawsuit between Denso and Delphi and DAS LLC;

and this Court having determined that the relief requested in the Motion is in the best interests of

the Debtors, their estates, their creditors, and other parties-in-interest; and it appearing that

proper and adequate notice of the Motion has been given and that no other or further notice is

necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor, it

is hereby;

            IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

            1.        The Motion is GRANTED.

      2.      The Debtors' decision to enter into the License Agreement is reasonable

and appropriate under the circumstances and is approved.

      3.      The Debtors are hereby authorized to enter into the License Agreement.


Dated:            May ___, 2006                                                                        __

                                                   _____
                                                   UNITED STATES BANKRUPTCY
                                                   JUDGE

2

# EXHIBIT M

**Presentment Date and Time: May 1, 2006 at 4:00 p.m.**
**Objection Deadline: May 1, 2006 at 2:00 p.m.**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

　　- and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
　　Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - -   x
                                                       :
         In re                                         :    Chapter 11
                                                       :
DELPHI CORPORATION, et al.,                            :    Case No. 05- 44481 (RDD)
                                                       :
                               Debtors.                :    (Jointly Administered)
                                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - -   x
```

NOTICE OF PRESENTMENT OF ORDER UNDER 11 U.S.C. §§ 327(e)
AND 1107(b) AND FED. R. BANKR. P. 2014 AUTHORIZING
EMPLOYMENT AND RETENTION OF PAGEMILL PARTNERS, LLC AS
FINANCIAL ADVISORS TO DEBTORS NUNC PRO TUNC TO MARCH 14, 2006

PLEASE TAKE NOTICE that on April 21, 2006, Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases, filed the Application For An Order Under 11 U.S.C. §§ 327(e) And 1107(b) And Fed. R. Bankr. P. 2014 Authorizing The Employment And Retention Of Pagemill Partners, LLC As Financial Advisors To The Debtors, Nunc Pro Tunc To March 1, 2006 (the "Application," a copy of which is attached to this notice as Exhibit A).

PLEASE TAKE FURTHER NOTICE that if timely written objections are filed, served, and received in accordance with this notice, a hearing to consider approval of the Application will be held on May 12, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the "Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004.

PLEASE TAKE FURTHER NOTICE that if no written objections to the Application are timely filed, served, and received, the order filed with the Application and attached to this notice as Exhibit B will be submitted for signature to the Honorable Robert D. Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling Green, Room 610, New York, New York 10004 on May 1, 2006 at 4:00 p.m. (Prevailing Eastern Time).

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Application must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local Bankruptcy Rules for the Southern District of New York, and the Third Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

2

Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on April 20, 2006 (the "Third Supplemental Case Management Order") (Docket No. 3293), and (c) be filed with the Bankruptcy Court in accordance with General Order M-242 (as amended), pursuant to which registered users of the Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or any other Windows-based word processing format), (d) be submitted in hard-copy form directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge, and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098 (Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler, Jr.), (iii) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher & Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n: Kenneth S. Ziman), (iv) counsel for the agent under the postpetition credit facility, Davis Polk & Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n: Marlane Melican), (v) counsel for the Official Committee of Unsecured Creditors, Latham & Watkins LLP, 885 Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A. Broude), (vi) PageMill Partners, LLC, 2475 Hanover Street, Palo Alto, California 94304 (Att'n: Milledge A. Hart), and (vii) the Office of the United States Trustee for the Southern District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n: Alicia M. Leonhard), in each case so as to be **received** no later than **2:00 p.m. (Prevailing Eastern Time) on May 1, 2006** (the "Objection Deadline").

3

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth herein and in accordance with the Third Supplemental Case Management Order will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Application are timely filed and served in accordance with the procedures set forth herein and in the Case Management Order, the Bankruptcy Court may enter an order granting the Application **without further notice**.

Dated: New York, New York
     April 21, 2006

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York  10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

4

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                :

In re                      :    Chapter 11

                              :

DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)

                              :

                              :    (Jointly Administered)

            Debtors.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(a) AND 328
AND FED. R. BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND
RETENTION OF PAGEMILL PARTNERS, LLC AS FINANCIAL
ADVISOR TO DEBTORS NUNC PRO TUNC TO MARCH 14, 2006

("PAGEMILL RETENTION APPLICATION")

          Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates,

debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"),

hereby submit this application (the "Application") for an order under 11 U.S.C. §§ 327(a) and

328 and Fed. R. Bankr. P. 2014 authorizing the employment and retention of Pagemill Partners,

LLC ("Pagemill") as a financial advisor to the Debtors, nunc pro tunc to March 14, 2006.  In

support of this Application, the Debtors submit the Declaration of Milledge A. Hart executed on

March 30, 2006 (the "Hart Declaration").  In further support of this Application, the Debtors

respectfully represent as follows:

Background

A.    The Chapter 11 Filings

            1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and
affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title
11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").
The Debtors continue to operate their businesses and manage their properties as debtors-in-
possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  This Court entered
orders directing the joint administration of the Debtor's chapter 11 cases.

            2.    On October 17, 2005, the Office of the Unites States Trustee appointed an
official committee of unsecured creditors (the "Creditors' Committee").  No trustee or examiner
has been appointed in the Debtors' cases.

            3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157
and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core
proceeding under 28 U.S.C. § 157(b)(2).

            4.    The statutory predicates for the relief requested herein are section 363(b) of
the Bankruptcy Code and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the
"Bankruptcy Rules").

B.    Current Business Operations Of The Debtors

            5.    Delphi and its subsidiaries and affiliates (collectively, the "Company") had
global 2005 net sales of approximately $26.9 billion, and global assets as of August 31, 2005 of
approximately $17.1 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth
largest public company business reorganization in terms of revenues, and the thirteenth largest

---

[1]    The aggregated financial data used in this Application generally consists of consolidated information from
Delphi and its worldwide subsidiaries and affiliates.

2

public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are

not chapter 11 debtors and continue their business operations without supervision from the

Bankruptcy Court.

6.    The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

7.    Delphi was incorporated in Delaware in 1998 as a wholly-owned subsidiary

of GM.  Prior to January 1, 1999, GM conducted the Company's business through various

divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these divisions

and subsidiaries were transferred to the Company in accordance with the terms of a Master

Separation Agreement between Delphi and GM.  In connection with these transactions, Delphi

accelerated its evolution from a North American-based, captive automotive supplier to a global

supplier of components, integrated systems, and modules for a wide range of customers and

applications.  Although GM is still the Company's single largest customer, today more than half

of Delphi's revenue is generated from non-GM sources.

C.    Events Leading To The Chapter 11 Filing

8.    In the first two years following Delphi's separation from GM, the Company

generated approximately $2 billion in net income.  Every year thereafter, however, with the

exception of 2002, the Company has suffered losses.  In calendar year 2004, the Company

reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2]  Reflective of a

continued downturn in the marketplace, in 2005 Delphi incurred net losses of approximately $2.8

billion on net sales of $26.9 billion.

9.     The Debtors believe that the Company's financial performance has

deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the

United States and related pricing pressures, and (c) increasing commodity prices.

10.     In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major unions and GM had not progressed sufficiently by the end of the third quarter of

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the

Debtors' transformation plan and preserve value for its stakeholders.

D.     The Debtors' Transformation Plan

11.     On March 31, 2006, the Company outlined the key tenets of its

transformation plan.  The Company believes that this plan will enable it to return to stable,

profitable business operations and allow the Debtors to emerge from these chapter 11 cases in

the first half of 2007.  To complete their restructuring process, the Debtors must focus on five

---

[2]     Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording of a
valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net operating loss in
calendar year 2004 was $482 million.

key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which

to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize

GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business

commitment to the Company.  Third, the Debtors must streamline their product portfolio to

capitalize on their world-class technology and market strengths and make the necessary

manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried

workforce to ensure that the Company's organizational and cost structure is competitive and

aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise

a workable solution to their current pension situation.

    12. In connection with the first two elements of the Company's transformation

plan, Delphi continues to participate in discussions with its unions and GM.  Throughout those

discussions, Delphi has consistently communicated a clear message to both its hourly workforce

and GM: Delphi is committed to finding a consensual resolution to its issues and intends to

continue to discuss with its unions and GM ways to become competitive in the Debtors' U.S.

operations.  To that end, Delphi, GM and the UAW recently received this Court's approval of a

tripartite agreement providing for a special hourly attrition program for Delphi's UAW-

represented employees.  This special hourly attrition program could provide as many as 18,000

of Delphi's 23,000 existing UAW-represented long-term hourly employees with "soft landings"

through retirement attrition programs and GM flowbacks.  Delphi also hopes to reach agreement

on similar hourly attrition programs with its other unions, which could provide as many as 4,500

additional hourly employees with retirement programs or incentives.

    13. These hourly attrition programs constitute an important first step in

implementing the Debtors' transformation plan, but will not resolve all of the issues related to

Delphi's uncompetitive labor agreements.  Moreover, Delphi has not yet reached comprehensive

agreements with its unions and GM.  Therefore, on March 31, 2006, Delphi moved under

sections 1113 and 1114 of the Bankruptcy Code for authority to reject its U.S. labor agreements

and to modify retiree benefits.[3]  Contemporaneously therewith, the Debtors also moved to reject

unprofitable supply contracts with GM.[4]  Among the reasons for the GM contract rejection

motion was the Debtors' belief that GM must cover a greater portion of the costs of

manufacturing products for GM at plants that bear the burden of the Debtors' legacy costs.  This

initial motion covers approximately half of the Debtors' North American annual purchase

volume revenue from GM but only 10% of the Debtors' total contracts with GM.  Although the

filing of these motions was a necessary procedural step, the Debtors remain focused on reaching

a consensual resolution with all of Delphi's unions and GM before a hearing on the motions is

necessary.

       14.    To implement the third element of the Debtors' transformation plan, the

Company announced plans to focus its product portfolio on those core technologies for which the

Company has significant competitive and technological advantages and expects the greatest

opportunities for increased growth.   To that end, the Company will concentrate the organization

around the following core strategic product lines: (a) Controls & Security (Body Security,

Mechatronics, Power Products, and Displays), (b) Electrical/Electronic Architecture

(Electrical/Electronic Distribution Systems, Connection Systems, and Electrical Centers), (c)

Entertainment & Communications (Audio, Navigation, and Telematics), (d) Powertrain (Diesel

---

[3]    Motion For Order Under 11 U.S.C. § 1113(c) Authorizing Rejection Of Collective Bargaining Agreements And
Under 11 U.S.C. § 1114(g) Authorizing Modification of Retiree Welfare Benefits (Docket No. 3035)

[4]    Motion For Order Under 11 U.S.C. § 365 And Fed. R. Bankr. P. 6006 Authorizing Rejection Of Certain
Executory Contracts With General Motors Corporation (Docket No. 3033)

and Gas Engine Management Systems), (e) Safety (Occupant Protection and Safety Electronics), and (f) Thermal (Climate Control & Powertrain Cooling).[5]

15.    In contrast, the Company similarly identified certain non-core product lines that do not fit into its future strategic framework, including Brake & Chassis Systems, Catalysts, Cockpits and Instrument Panels, Door Modules and Latches, Ride Dynamics, Steering, and Wheel Bearings.  The Company will seek to sell or wind down these non-core product lines (which will include approximately one-third of its global manufacturing sites) and will consult with its customers, unions, and other stakeholders to carefully manage the transition of such affected product lines.  The Company intends to sell or wind down the non-core product lines and manufacturing sites by January 1, 2008.

16.    As part of its organizational restructuring, the fourth element of the Debtors' transformation plan, the Company expects to reduce its global salaried workforce by as many as 8,500 employees as a result of portfolio and product rationalizations and initiatives adopted following an analysis of the Company's selling, general, and administration ("SG&A") cost saving opportunities.  The Company believes that once its SG&A plan is fully implemented, the Company should realize savings of approximately $450 million per year in addition to savings realized from competitive measures planned for its core businesses and the disposition of non-core assets.

17.    As noted above, the final key tenet of the transformation plan is to devise a workable solution to the Debtors' current pension situation.  The Debtors' goal is to retain the benefits accrued under the existing defined benefit U.S. pension plans for both the Debtors'

---

[5]    The Company does not expect the portfolio changes to have a significant impact on its independent aftermarket or consumer electronics businesses.  Similarly, the Company does not expect an impact on medical, commercial vehicles, or other adjacent-market businesses and product lines.

hourly and salaried workforce.  To do so, however, it will be necessary to freeze the current

hourly U.S. pension plan as of October 1, 2006 and to freeze the current salaried U.S. pension

plan as of January 1, 2007.  Despite the freeze, because of the size of the funding deficit, it will

also be necessary for the Debtors to obtain relief from the Pension Benefit Guaranty Corporation,

the Internal Revenue Service, the Department of Labor, and potentially Congress, to amortize

funding contributions over a long-term period.  The Company intends to replace the hourly plan

(for certain employees) and the salaried plan with defined contribution plans.

18.    Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

## Relief Requested

19.    By this Application, the Debtors seek to employ and retain Pagemill as a

financial advisor to the Debtors, effective as of March 14, 2006.  Accordingly, the Debtors

respectfully request the entry of an order under sections 327(a) and 328 of the Bankruptcy Code

and Fed. R. Bankr. P 2014 authorizing the employment and retention of Pagemill as a financial

advisor to the Debtors in accordance with the terms set forth in the letter agreement attached

hereto as Exhibit 1 (the "Engagement Letter").

## Services To Be Rendered

20.    As set forth in further detail in the Engagement Letter and in the Hart

Declaration, subject to the approval of this Court, Pagemill has agreed to provide the following

services:

8

(a)    Collaborate with MobileAria, Inc. ("MobileAria"), one of the Debtors, to prepare descriptive materials, presentations, and develop a strategy for marketing MobileAria to potential acquirors;

(b)    Identify and evaluate strategic partners in cooperation with MobileAria;

(c)    Assist MobileAria in coordinating the material and information to be made available to prospective partners and the due diligence investigations;

(d)    Contact prospective partners approved in advance by MobileAria to determine their level of interest in a potential Transaction (as such term is defined in the Engagement Letter);

(e)    Evaluate the proposed terms and conditions of a potential Transaction, and make such other analyses and investigations as may be appropriate;

(f)    Advise MobileAria in the negotiation of all aspects of a proposed Transaction;

(g)    Present summaries to MobileAria's senior management and board of directors as requested by MobileAria; and

(h)    Provide declarations and live testimony to this Court as requested by MobileAria.

21.    Subject to this Court's approval of the Application, Pagemill is willing to perform the services described in the Engagement Letter on the terms set forth therein.

22.    Pagemill is aware that the Debtors have retained additional professionals in connection with these chapter 11 cases, including FTI Consulting, Inc. and Rothschild, Inc.  The services to be provided by Pagemill under the Engagement Letter are not intended to duplicate the services of these or any other professionals retained by  the Debtors in these chapter 11 cases, and Pagemill will make every effort to avoid duplicating the work performed by such other professionals.

Qualifications Of Pagemill

23.    Pagemill, a technology-focused investment bank located in Silicon Valley in California, is a member of the National Association of Securities Dealers and the Securities Investor Protection Corporation.  Pagemill provides financial advisory services in connection

9

with mergers and acquisitions, divestitures, private placements, and specialized financial

services.  The firm services both public and private companies, focusing on emerging and middle

market transactions.

24.    Pagemill and its professionals have extensive transaction experience with

over 200 transactions successfully completed by its managing directors.  Pagemill leverages its

strong relationships with top tier venture capital, private equity, and law firms to maintain its

strong deal flow.

Disinterestedness Of Professionals

25.    The Hart Declaration contains information available to date on Pagemill's

connections with other parties-in-interest, as required by Bankruptcy Rule 2014(a).  Based on the

information in the Hart Declaration, the Debtors submit that Pagemill and the professionals in

the Pagemill firm are "disinterested persons," as that term is used in section 101(14) of the

Bankruptcy Code, and are otherwise eligible to be retained under section 327(a) of the

Bankruptcy Code.

Professional Compensation[6]

26.    Subject to this Court's approval and pursuant to the terms and conditions of

the Engagement Letter, the Debtor's have agreed to Pagemill's professional compensation as

follows:

(a)    Engagement Fee: A non-refundable engagement fee of $40,000 due upon
approval of this Application;

(b)    Success Fee: In the case of the Transaction, a Success Fee equal to the
sum of $300,000 plus 1.5% of the Aggregate Value of the Transaction;
and

---

[6]    Capitalized terms used this section but not defined herein shall have the meanings assigned to them in the
Engagement Letter.

10

(c) <u>Expenses</u>: Reimbursement of Pagemill for all reasonable out-of-pocket, out of Bay Area travel expenses incurred by Pagemill in connection with the engagement.

27.    The Debtors and Pagemill acknowledge and agree that (a) the hours worked, (b) the results achieved, and (c) the ultimate benefit to the Debtors of the work performed, in each case, in connection with the engagement, may be variable, and the Debtors and Pagemill have taken such factors into account in setting the fees under the Engagement Letter; <u>provided</u>, <u>however</u>, that with respect to the hours worked, Pagemill will devote whatever resources are required to fulfill the purposes of the engagement on a timely basis.

28.    Pagemill intends to apply to this Court for allowance of compensation and reimbursement of expenses in accordance with section 330(a) of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy rules for the United States Bankruptcy Court for the Southern District of New York (the "Local Rules"), the guidelines established by the Office of the United States Trustee, the Order Under 11 U.S.C. § 331 Establishing Procedures For Interim Compensation And Reimbursement Of Expenses Of Professionals, the Third Supplemental Order Under 11 U.S.C. Sections 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures entered by this Court on 4/20/06 (Docket No. 3293), and any other applicable orders of this Court.  Consistent with its ordinary practice and the practice of financial advisors in other chapter 11 cases whose fee arrangements are typically not hours-based, Pagemill ordinarily does not maintain contemporaneous time records or conform to or provide a schedule of hourly rates for its professionals.  Therefore, Pagemill requests that it be excused from compliance with such requirements.

11

29.    The Debtors believe that Pagemill's fees are fair and reasonable in light of industry practice, market rates both inside and outside of chapter 11 cases, Pagemill's experience in reorganizations, and Pagemill's importance to these cases.

<u>Indemnification</u>

30.    As more fully described in the Engagement Letter, if the Application is granted, the Debtors have agreed to indemnify and hold Pagemill harmless from liabilities arising out of or in connection with its retention by the Debtors except for any such liability for losses, claims, damages, or liabilities incurred by the Debtors that are finally judicially determined by a court of competent jurisdiction to have resulted primarily from have resulted from the bad faith, negligence, willful misconduct, or breach of fiduciary duty of Pagemill.

31.    The Debtors request that the indemnification provisions contained in the Engagement Letter (the "Indemnification Provisions") be approved.  The Indemnification Provisions are as follows:

(a)    In the event that Pagemill or any of its affiliates, their respective directors, officers, partners, agents, or employees, or any other person controlling Pagemill or any of its affiliates (collectively, "Indemnified Persons") becomes involved in any capacity in any action, claim, suit, investigation, or proceeding, actual or threatened, brought by or against any person, including stockholders of MobileAria, in connection with or as a result of the Engagement Letter or any matter referred to in the engagement, MobileAria will reimburse such Indemnified Person for its reasonable legal and other expenses (including without limitation the reasonable costs and expenses incurred in connection with investigation and preparation or enforcement of the engagement) incurred in connection therewith as such expenses are incurred (subject to disgorgement by the Indemnified Person to the extent any losses (defined below) are finally determined by a court or arbitral tribunal to have resulted from the bad faith, negligence, willful misconduct, or breach of fiduciary duty of Pagemill or any Indemnified Person in performing the engagement);

(b)    If indemnification is to be sought thereunder by an Indemnified Person, then such Indemnified Person will notify MobileAria of the commencement of any litigation, proceeding, or other action in respect thereof.  Following such notification, MobileAria may elect in writing to

assume the defense of such litigation, proceeding, or other action (and costs related thereto) and, upon such election, MobileAria will not be liable for any legal costs subsequently incurred by such Indemnified Person unless (i) MobileAria has failed to provide legal counsel to such Indemnified Party in a timely manner or (ii) such Indemnified Person and MobileAria have concluded that (A) the representation of such Indemnified Person by legal counsel selected by MobileAria would be inappropriate due to actual or potential conflicts of interest or (B) there may be legal defenses available to such Indemnified Person that are different from or in addition to those available to MobileAria or any other Indemnified Person who is represented by such legal counsel.  Nothing set forth herein will preclude any Indemnified Person from retaining its own counsel at its own expense.

(c)     No Indemnified Person seeking indemnification, reimbursement, or contribution under the Engagement Letter will, without MobileAria's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation, or proceeding referred to herein.

(d)     The reimbursement, indemnity, and contribution obligations of MobileAria under the terms of the Engagement Letter will be in addition to any liability which MobileAria may otherwise have, will extend upon the same terms and conditions to any affiliate of Pagemill and the partners, directors, agents, employees and controlling persons (if any), as the case may be, of Pagemill and any such affiliate, and will be binding on and inure to the benefit of any successors, assigns, heirs, and personal representatives of the MobileAria, Pagemill, any such affiliate, and any such person.

32.     The Debtors and Pagemill believe that the Indemnification Provisions are customary and reasonable for financial advisory and investment banking engagements, both out-of-court and in chapter 11 cases.  See United Artists Theater Co. v. Walton, 315 F.3d 217 (3d Cir. 2003); In re Acterna Corp., Case No. 03-12837 (Bankr. S.D.N.Y. Jun. 24, 2003); In re Joan & David Halpern, Inc., 248 B.R. 43 (Bankr. S.D.N.Y. 2000), aff'd, 2000 WL 1800690 (S.D.N.Y. 2000).

## Termination

33.     Pagemill's engagement will expire six months from the date of the Engagement Letter unless extended by mutual agreement in writing.  Additionally, Pagemill's

13

engagement may be terminated at any time by written notice to the other party by either Pagemill

or the Debtor; provided, however, that in the event of any termination of Pagemill's engagement

thereunder by Pagemill, Pagemill will not be entitled to any Success Fee.  In the event of any

termination of Pagemill's engagement by the Debtor, Pagemill will continue to be entitled to the

full amount of the Success Fee described above if at any time prior to the expiration of six

months after any such termination, MobileAria consummates a Transaction (as such term is

defined in the Engagement Letter), or enters into an agreement to consummate a Transaction

(which Transaction is subsequently consummated) with a prospective acquirer.  Within 30 days

after any notice of termination of its engagement, Pagemill will (a) deliver to MobileAria a

confirming list of all parties which have contacted or been contacted by Pagemill or which were

contacted by or had contact with MobileAria and with whom direct discussions regarding a

potential Transaction were held and (b) destroy certain materials as described in section 4 of the

Engagement Letter.  Additionally, the provisions of Section 2 through 8 of the Engagement

Letter will survive any termination of the engagement.

Conclusion

34.    For the foregoing reasons, the Debtors submit that the relief requested

herein is in the best interest of the Debtors and their estates and creditors and should be

approved.

Notice

35.    Notice of this Application has been provided in accordance with the Third

Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,

9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures, entered by this Court on April 20, 2006 (Docket No. 3293 ).  In

14

light of the nature of the relief requested, the Debtors submit that no other or further notice is

necessary.

Memorandum Of Law

36.    Because the legal points and authorities upon which this Application relies

are incorporated herein, the Debtors respectfully request that the requirement of the service and

filing of a separate memorandum of law under Local Rule 9013-1(b) be deemed satisfied.

WHEREFORE, the Debtors respectfully request that this Court enter an order (a)

authorizing the Debtors to employ and retain Pagemill as a financial advisor to perform the

services set forth herein and (b) granting the Debtors such other and further relief as is just.

Dated: New York, New York
      April 21, 2006

                       DELPHI CORPORATION, on behalf of itself and
                       certain of its subsidiaries and affiliates, as Debtors
                       and Debtors-in-Possession

                       By:  /s/ Dr. Richard Lind
                             Name:  Dr. Richard Lind
                             Title:  MobileAria President

16

<u>Exhibit 1</u>

March 14, 2006

**Personal & Confidential**

Dr. Richard C. Lind
President
MobileAria, Inc.
800 W. El Camino Real, Suite 240
Mountain View, CA 94040

Re:    **Engagement of Pagemill Partners, LLC**

Dear Richard:

This will confirm our understanding that MobileAria, Inc. as debtor in possession (the
"Company") in that certain case under chapter 11 of title 11 of the United States Code
designated as case no. 05-47474 consolidated for administrative purposes only with case
no. 05-44481 (the "Case") pending before the United States Bankruptcy Court for the
Southern District of New York (the "Court") has engaged Pagemill Partners, LLC, a
California limited liability company ("Pagemill"), subject to obtaining the requisite Court
approvals, to act as a financial advisor to the Company on the terms and conditions set
forth in this letter (this "Engagement Letter").

Section 1.    **Services to be Rendered.**    In connection with this engagement, Pagemill
shall, as appropriate.

- Collaborate with the Company to prepare descriptive materials, presentations,
  and develop a strategy for marketing the Company to potential acquirers.
- Identify and evaluate strategic partners in cooperation with the Company.
- Assist the Company in coordinating the materials and information to be made
  available to prospective partners and with due diligence investigations.
- Contact prospective partners approved in advanced by the Company to
  determine their level of interest in a potential Transaction.
- Evaluate the proposed terms and conditions of a potential Transaction, and
  make such other analyses and investigations as may be appropriate.
- Advise the Company in the negotiation of all aspects of a proposed
  Transaction.
- Present summaries to the Company's Senior Management and Board of
  Directors as requested by the Company.
- Provide declarations and live testimony to the Court as requested by the
  Company.

Section 2.  **Compensation.**

(a)     **Engagement Fee:** Company shall pay Pagemill an engagement fee of $40,000
        due upon approval of the Pagemill retention application and which shall be
        separate from the Success Fee (as defined below).

(b)     **Success Fee:** Upon consummation of a Transaction with a Prospect, Pagemill will
        be due a Success Fee equal to the sum of $300,000 plus 1.5 % of the Aggregate
        Value of the Transaction.  The Success Fee shall be paid to Pagemill in cash via
        wire transfer on the day of the closing of the Transaction.  No fees or expenses
        payable to any other party, including a financial advisor, either by the Company
        or by any other entity shall reduce or otherwise affect the fees payable to
        Pagemill.

(c)     **Expenses:** The Company shall reimburse Pagemill for all reasonable out-of-
        pocket, out of Bay Area travel expenses incurred by Pagemill in connection with
        this engagement.  Invoices are due and payable upon receipt; provided however,
        that the Company shall not be obligated to reimburse Pagemill for legal or out of
        Bay Area travel expenses under this paragraph without the prior written consent
        of the Company.

(d)     **Fee Procedures:**  Pagemill will request payment of its fees in accordance with
        the local bankruptcy rules for the Southern District of New York and the relevant
        administrative orders governing payment of professionals entered into by the
        Court in the case.

Section 3.  **Definitions.**

(a)     The "Transaction" shall include, without limitation, (i) any transaction (whether
        in one or a series of transactions with one or more Prospects) whereby, directly or
        indirectly, a fifty percent or more equity interest in either the Company or all or
        substantially all the assets of the Company are acquired by one or more Prospects,
        or (ii) any merger with a Prospect; provided, however, that any transaction
        resulting in the liquidation of the Company or substantially all the assets of the
        Company under chapter 7 or chapter 11 of the United States Bankruptcy Code
        shall not be included within this definition.

(b)     "Aggregate Value" shall mean the sum of (i) the total amount received or
        receivable by the Company and/or its stockholders, other than normal
        employment terms and allowances for staff entitlements (severance payments)
        typically offered by the acquirer to employees and (ii) the assumption or payment
        of debt by the acquiring party, other than normal trade debt; both measured on the
        date of the signing of the definitive agreements related to the Transaction.  In the
        event Aggregate Value includes securities without an established public trading
        market, the value of such securities for purposes of calculating the fee shall be

their fair market value, as the parties shall mutually agree prior to closing, using standard valuation methodologies. In the event Aggregate Value includes securities with an established public trading market, the value of such securities for purposes of calculating the fee shall be the average closing price of such securities over the ten (10) consecutive trading days up to and including the second trading day immediately preceding the date of the signing of the definitive agreements related to the Transaction.

In the event the Aggregate Value involved in the Transaction includes deferred or contingent payments (other than amounts withheld or held in escrow) or acquisition of additional stock or assets after the initial closing, the Company and Pagemill shall use their best efforts to mutually agree on their present value which shall be used for purposes of calculating the fee to be paid at closing; alternatively if the Company and Pagemill do not mutually agree on the present value, Pagemill shall receive its fee as the Company or its stockholders receive such deferred or contingent payments.

(c)    A "Prospect" is any prospective acquirer (other than Delphi Corporation or any of its affiliates) which, during the term of this engagement, contacts or is contacted by Pagemill or contacts or is contacted by the Company independently of Pagemill, and with which Pagemill or the Company holds direct, substantive discussions concerning a potential Transaction.

Section 4.    **Confidentiality.**    No advice rendered by Pagemill, whether formal or informal, may be disclosed, in whole or in part, or summarized, excerpted from or otherwise referred to without Pagemill's prior written consent, provided, however, Pagemill's advice may be disclosed to the Company's stockholders, the Court and any Court-appointed committee. In addition, neither Pagemill nor the terms of this engagement may be otherwise referred to without Pagemill's prior written consent. The obligations of the Company pursuant to this paragraph shall survive any expiration or termination of this Engagement Letter or Pagemill's engagement hereunder.

In connection with Pagemill's engagement, the Company shall cooperate fully with Pagemill in connection with its financial review and analysis and shall furnish Pagemill with all information concerning the Company which Pagemill reasonably deems appropriate and shall provide Pagemill with access to the Company's officers, directors, employees, accountants, counsel and other representatives (collectively, the "Representatives"), it being understood that Pagemill shall rely solely upon such information supplied by the Company and the Representatives without assuming any responsibility for independent investigation or verification thereof and that such Representatives agree to be bound by the terms of this Section 4. All non-public information concerning the Company, including the fact of a possible Transaction, which is given to Pagemill in connection with this engagement shall be used solely in the course of the performance of Pagemill's services hereunder and shall be treated confidentially by Pagemill for so long as it remains non-public. Except as otherwise required by law or

regulatory authority, Pagemill shall not disclose this information to a third party without the consent of the Company and confirmation that such third party has executed a confidentiality agreement.

Section 5.  **Termination.**  Pagemill's engagement shall commence on the date hereof and expire six months from the date hereof, unless extended by mutual agreement in writing.  Pagemill's engagement hereunder may be terminated at any time by written notice to the other party by either Pagemill or the Company; provided, however, that in the event of any termination of Pagemill's engagement hereunder by Pagemill, Pagemill will not be entitled to any Success Fee under this Agreement.  In the event of any termination of Pagemill's engagement hereunder by the Company, Pagemill shall continue to be entitled to the full amount of the Success Fee provided for herein if at any time prior to the expiration of three (3) months after any such termination by the Company, the Company consummates a Transaction, or enters into an agreement to consummate a Transaction (which Transaction is subsequently consummated) with a Prospect.  Within thirty days after any notice of termination of this engagement, Pagemill shall (i) deliver to the Company a confirming list of all parties which have contacted or been contacted by Pagemill or which were contacted by or had contact with the Company and with whom direct discussion regarding a potential Transaction were held and (ii) destroy certain materials as described in Section 4 ~~of that certain Confidentiality~~ *hereof* ~~Agreement between the Company and Pagemill dated March 6, 2006 (the "Confidentiality Agreement").~~ Additionally, the provisions of Sections 2 through 8 of this Engagement Letter shall survive any termination.

Section 6.  **Indemnity.**  In the event Pagemill or any of its affiliates, their respective directors, officers, partners, agents or employees, or any other person controlling Pagemill or any of its affiliates (collectively, "Indemnified Persons") becomes involved in any capacity in any action, claim, suit, investigation or proceeding, actual or threatened, brought by or against any person (other than an action between the Company and Pagemill), including stockholders of the Company, in any matter referred to in the engagement, the Company shall reimburse such Indemnified Person for its reasonable legal and other expenses (including without limitation the reasonable costs and expenses incurred in connection with investigation and preparation or enforcement of the engagement) incurred in connection therewith as such expenses are incurred (subject to disgorgement by the Indemnified Person to the extent any losses (defined below) are finally determined by a court or arbitral tribunal to have resulted from the bad faith, negligence, willful misconduct or breach of fiduciary duty of Pagemill or any Indemnified Person in performing the engagement).

If indemnification is to be sought hereunder by an Indemnified Person, then such Indemnified Person shall notify the Company of the commencement of any litigation, proceeding or other action in respect thereof.  Following such notification, the Company may elect in writing to assume the defense of such litigation, proceeding or other action (and costs related thereto) and, upon such election, the Company shall not be liable for any legal costs subsequently incurred by such Indemnified Person unless (i) the Company

has failed to provide legal counsel to such Indemnified Party in a timely manner or (ii) such Indemnified Person and the Company shall have concluded that (A) the representation of such Indemnified Person by legal counsel selected by the Company would be inappropriate due to actual or potential conflicts of interest or (B) there may be legal defenses available to such Indemnified Person that are different from or addition to those available to the Company or any other Indemnified Person that are represented by such legal counsel. Nothing set forth hereon shall preclude any Indemnified Person from retaining its own counsel at its own expense.

No Indemnified Person seeking indemnification, reimbursement or contribution under this Engagement Letter shall, without the Company's prior written consent, settle, compromise, consent to the entry of any judgment in or otherwise seek to terminate any action, claim, suit, investigation or proceeding referred to herein.

The reimbursement, indemnity and contribution obligations of the Company hereunder shall be in addition to any liability which the Company may otherwise have, shall extend upon the same terms and conditions to any affiliate of Pagemill and the partners, directors, agents, employees and controlling persons (if any), as the case may be, of Pagemill and any such affiliate, and shall be binding on and inure to the benefit of any successors, assigns, heirs and personal representatives of the Company, Pagemill, any such affiliate and any such person.

Section 7.    **Miscellaneous.**    The benefits of, and the obligations and liabilities assumed in, this Engagement Letter shall inure to the benefit of, and be binding upon, any successors and assigns of the Company and Pagemill.  Except as provided in the Confidentality Agreement, this Engagement Letter constitutes the entire agreement between Pagemill and the Company and supersedes any prior agreements or understandings with respect to the matters set forth herein. This Engagement Letter may not be amended, waived, modified or assigned, in whole or in part, including by operation of law, without the prior written consent of the Company and Pagemill.  In connection with this engagement, Pagemill is acting as an independent contractor with duties owing solely to the Company and not in any other capacity.  All aspects of the relationship created by this Engagement Letter shall be governed by and construed in accordance with the laws of the State of California, applicable to contracts made and to be performed therein.

Section 8.    **Bankruptcy Court Jurisdiction.**    The Court shall have exclusive jurisdiction of all matters arising out of, and related to, the Company's engagement of Pagemill.

\*          \*          \*

Please confirm that the foregoing is in accordance with your understanding by signing and returning to us an executed copy of this Engagement Letter, which shall then constitute a binding agreement.

Respectfully,
**Pagemill Partners, LLC**

Signed: _____

By:  Milledge Hart
Its:  Managing Director

Accepted and agreed to as of the date first written above:

**MobileAria, Inc.**

Signed: _____

By:  Dr. Richard C. Lind
Its:  President

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                         :
        In re                            :    Chapter 11
                                         :
DELPHI CORPORATION, et al.,              :    Case No. 05-44481 (RDD)
                                         :
                      Debtors.           :    (Jointly Administered)
                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
```

ORDER UNDER 11 U.S.C. §§ 327(a) AND 328 FED. R. BANKR. P. 2014
AUTHORIZING EMPLOYMENT AND RETENTION OF PAGEMILL PARTNERS, LLC
AS FINANCIAL ADVISOR TO DEBTORS NUNC PRO TUNC TO MARCH 14, 2006

("PAGEMILL RETENTION ORDER")

Upon the application, dated April 21, 2006 (the "Application"), of Delphi

Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order"), pursuant to 11

U.S.C. §§ 327(a) and 328 and Fed. R. Bankr. P. 2014, authorizing the employment and retention

of Pagemill Partners, LLC ("Pagemill") as a financial advisor to the Debtors effective as of

March 14, 2006; and upon the Declaration of Milledge A. Hart, executed on March 30, 2006, in

support of the Application; and this Court having determined that the relief requested in the

Application is in the best interests of the Debtors, their estates, their creditors, and other parties-

in-interest; and this Court being satisfied that Pagemill is disinterested and represents no interest

adverse to the Debtors or their estates as to the matters upon which Pagemill is to be engaged;

and it appearing that proper and adequate notice of the Application has been given and that no

other or further notice is necessary; and after due deliberation thereon; and good and sufficient

cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.  The Application is GRANTED.

2.  The Debtors' employment of Pagemill as a financial advisor, pursuant to the
Application and the terms set forth in the letter agreement attached to the Application as <u>Exhibit
1</u>, is approved under chapter 11 of title 11 of the United States Code, U.S.C. §§ 327(a) and 328,
as amended (the "Bankruptcy Code") and Rule 2014 of the Federal Rules of Bankruptcy
Procedure (the "Bankruptcy Rules"), with approval of such employment being effective as of
March 14, 2006.

3.  Pagemill shall be compensated in accordance with the standards and
procedures set forth in sections 330 and 331 of the Bankruptcy Code and all applicable
Bankruptcy Rules, Local Bankruptcy Rules for the United States Bankruptcy Court for the
Southern District of New York (the "Local Rules"), guidelines established by the Office of the
United States Trustee, and further orders of this Court.  Without limiting the foregoing, Pagemill
shall make reasonable efforts to ensure that the Debtors' estates are not charged for any
duplication of work with the other professionals retained in these chapter 11 cases.

4.  This Court shall retain jurisdiction to hear and determine all matters arising
from the implementation of this Order.

5.  The requirement under Local Rule 9013-1(b) for the service and filing of a
separate memorandum of law is deemed satisfied by the Application.

Dated: New York, New York
     May ____, 2006

                                                      _____
                                              UNITED STATES BANKRUPTCY JUDGE

2

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re | Chapter 11 |
| DELPHI CORPORATION, et al, | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

DECLARATION AND STATEMENT OF MILLEDGE A.HART
IN SUPPORT OF APPLICATION FOR ORDER UNDER
11 U.S.C. §§ 327(a) AND 328 AND FED R. BANKR. P. 2014
AUTHORIZING EMPLOYMENT AND RETENTION OF
PAGEMILL PARTNERS, LLC AS FINANCIAL ADVISOR
TO DEBTORS NUNC PRO TUNC TO MARCH 14, 2006

Milledge A. Hart, under penalty of perjury, declares and says:

1.    I am a Managing Director at the financial advisory and investment banking firm of Pagemill Partners, LLC ("Pagemill"), which maintains its principal office at 2475 Hanover Street, Palo Alto, CA 94304.  I am authorized to execute this declaration and disclosure statement (this "Declaration") on behalf of Pagemill.  I submit this Declaration under sections 327(a) and 328 of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code") and Rules 2014 and 2016 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") in support of the Application For Order (the "Order") Under 11 U.S.C. §§ 327(a) And 328 (I) Authorizing Employment And Retention of Pagemill Partners, LLC  As Financial Advisor and Investment Banker To Debtors And (II) Scheduling A Final Hearing Thereon (the "Application"), filed contemporaneously herewith by Delphi Corporation ("Delphi") and certain of its direct and indirect subsidiaries, as debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors" or "Company").  Except as otherwise indicated, I have personal knowledge of the matters set forth herein and if called as a witness, would testify competently thereto.[1]

---

[1]  Certain of the disclosures herein relate to matters within the knowledge of other professionals at Pagemill and are based on information provided by them.

1

Qualifications Of Professionals

2.      Pagemill, a technology focused investment bank located in Silicon Valley, is a member
of the National Association of Securities Dealers and the Securities Investor Protection Corporation.
Pagemill provides financial advisory services including mergers & acquisitions, divestitures, private
placements and specialized financial services.  The firm services both public and private companies,
focusing on emerging and middle market transactions.

3.      Pagemill and its professionals have extensive transaction experience with over 200
transactions closed by its managing directors. Pagemill leverages its strong relationships with top tier
venture capital, private equity and law firms to maintain its strong deal flow.

Services To Be Rendered

4.      If the Application is approved, Pagemill will provide financial advisory and investment
banking services to the Debtors, as contemplated by, and in accordance with the terms of, the Engagement
Letter.

Professional Compensation

5.      To the best of my knowledge, the Debtors do not owe any amounts to Pagemill in respect
of prepetition fees and expenses.

6.      Pagemill respectfully refers interested parties to the Engagement Letter for a full
recitation of the proposed terms of Pagemill's compensation.  In summary, if the Application is
approved, Pagemill will be entitled to receive the following fees in cash:

> (e)    A $40,000 non-refundable engagement fee shall be due and payable by the
> Company upon approval of the Pagemill retention application.

> (g)    In the case of the sale of MobileAria, Inc. (the "Transaction") for which
> Company is seeking to have Pagemill approved as the Company's primary
> advisor and investment banker, a fee (the "Success Fee") equal to $300,000 plus
> the product of (i) the Aggregate Consideration times (ii) the applicable Success
> Fee Percentage, each as specified in the Engagement Letter, which Success Fee
> shall be due and payable in cash at the closing of such M&A Transaction.

7.      The Company and Pagemill acknowledge and agree that (a) the hours worked, (b) the results achieved, and (c) the ultimate benefit to the Company of the work performed, in each case, in connection with this engagement may be variable, and the Company and Pagemill have taken such factors into account in setting the fees under the Engagement Letter; provided, however, that with respect to the hours worked, Pagemill shall devote whatever resources as are required to fulfill the purposes of this engagement on a timely basis.

8.      In the event that this Court approves the retention of Pagemill by the Company, (a) Pagemill's fees and expenses shall be subject to (i) the jurisdiction and approval of this Court under section 328(a) of the Bankruptcy Code and the Order, (ii) any applicable fee and expense guideline orders, and (iii) any requirements governing interim and final fee applications, and (b) the Company shall pay all fees and expenses of Pagemill under the Engagement Letter as promptly as practicable in accordance with the terms thereof and the orders of this Court governing interim and final fee applications, and after obtaining all necessary further approvals from this Court, if any.

9.      Pagemill intends to apply to this Court for allowance of compensation and reimbursement of expenses in accordance with the procedures set forth in the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Rules, as those procedures may be modified or supplemented by order of this Court.  Consistent with its ordinary practice and the practice of financial advisors in other chapter 11 cases whose fee arrangements are typically not hours-based, Pagemill ordinarily does not maintain contemporaneous time records or conform to or provide a schedule of hourly rates for its professionals.  Therefore, Pagemill requests that it be excused from compliance with such requirements.

<u>Disinterestedness</u>

10.     In connection with the preparation of this Declaration, Pagemill reviewed the list of parties-in-interest that Pagemill received from the Debtors (the "Interested Parties"), a copy of which is attached hereto as <u>Exhibit 2</u>.

11.     To the best of my knowledge, Pagemill has not represented the entities listed on <u>Exhibit 2</u> in connection with matters relating to the Debtors, their estates, assets, or businesses and will not represent

3

other entities which are creditors of, or have other relationships with, the Debtors in matters relating to the Debtors, their estates, assets, or businesses.

12.    Attached hereto as Exhibit 3 is a list of the Interested Parties with which Pagemill has identified certain dealings unrelated to this engagement.  To the best of my knowledge, none of the connections with the entities listed on Exhibit 3 accounts for more than 1% of Pagemill's gross annual revenues.

13.    To the best of my knowledge, neither Pagemill, I, nor any other employee of Pagemill that will work on this engagement has any connection with or holds any interest adverse to the Debtors, their estates, or the Interested Parties in the matters on which Pagemill is proposed to be retained.

14.    To the best of my knowledge, Pagemill has not been retained to assist any entity or person other than the Debtors on matters relating to these chapter 11 cases.  If Pagemill's proposed retention by the Debtors is approved by this Court, Pagemill will not accept any engagement or perform any service for any entity or person other than the Debtors in these chapter 11 cases.  Pagemill will, however, continue to provide professional services to entities or persons that may be creditors or equity security holders of the Debtors or Interested Parties in these chapter 11 cases, provided, however, that such services do not relate to, or have any direct connection with, these chapter 11 cases or the Debtors.

15.    Based on the results of the conflicts search conducted to date and described more fully herein, to the best of my knowledge, neither I, Pagemill, nor any officer or employee thereof who will work on this engagement, insofar as I have been able to ascertain, has any connection with the Debtors, their creditors, other parties-in-interest (as reasonably known to Pagemill), their respective attorneys, the Office of the United States Trustee for the Southern District of New York or any person employed by such office with respect to the matters upon which Pagemill is to be engaged, and Pagemill does not, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, hold or represent any interest adverse to the Debtors, their estates, or any class of creditors or equity interest holders, except as set forth herein.

16.    To the best of my knowledge, Pagemill is a "disinterested person" pursuant to sections 101(14) and 327(a) of the Bankruptcy Code, in that its officers and employees:

4

(a)    are not creditors, equity security holders, or insiders of the Debtors;

(b)    are not and were not investment bankers for any outstanding security of the
       Debtors;

(c)    have not been, within three years before the date of the filing of the Debtors'
       chapter 11 petitions, (i) investment bankers for a security of the Debtors, (ii) an
       attorney for such an investment banker in connection with
       the offer, sale, or issuance of a security of the Debtors; and

(d)    were not, within two years before the date of filing of the Debtors' chapter 11
       petitions, a director, officer, or employee of the Debtors or of any investment
       banker as specified in subparagraph (b) or (c) of this paragraph.

17.    No promises have been received by Pagemill, nor any employee thereof, as to
compensation or payment in connection with these chapter 11 cases other than in accordance with the
provisions of the Bankruptcy Code and the Bankruptcy Rules.  Further, Pagemill has no agreement with
any other entity to share with such entity any compensation received by Pagemill in connection with these
chapter 11 cases, except as permitted under section 504 of the Bankruptcy Code.

18.    If any new relevant facts or relationships are discovered or arise during the pendency of
these chapter 11 cases, Pagemill will use reasonable efforts to identify such further developments and
will, if appropriate, promptly file a supplemental declaration as required by Bankruptcy Rule 2014(a).

Pursuant to section 1746 of title 28 of the United States Code, I declare under penalty of perjury
under the laws of the United States of America that the foregoing is true and correct.

Executed this 30th day of March, 2006, at New York, New York.

Milledge A. Hart
Managing Director

5

# **EXHIBIT 3**

Hitachi Ltd – Hitachi Telecom

# EXHIBIT N

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                          :
          In re                           :    Chapter 11
                                          :
DELPHI CORPORATION, et al.,               :    Case No. 05- 44481 (RDD)
                                          :
                           Debtors.       :    (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF PRESENTMENT OF ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b)
AND FED. R. BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND RETENTION OF
MAYER, BROWN, ROWE & MAW LLP AS SPECIAL INFORMATION TECHNOLOGY
OUTSOURCING COUNSEL TO DEBTORS NUNC PRO TUNC TO FEBRUARY 1, 2006

PLEASE TAKE NOTICE that on April 21, 2006, Delphi Corporation

("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in

the above-captioned cases filed the Application For An Order Under 11 U.S.C. §§ 327(e) And

1107(b) And Fed. R. Bankr. P. 2014 Authorizing The Employment And Retention Of Mayer,

Brown, Rowe & Maw LLP As Special Information Technology Outsourcing Counsel To The

Debtors, Nunc Pro Tunc To February 1, 2006 (the "Application," a copy of which is attached

to this notice as Exhibit A).

PLEASE TAKE FURTHER NOTICE that if timely written objections are filed,

served, and received in accordance with this notice, a hearing to consider approval of the

Application will be held on May 12, 2006, at 10:00 a.m. (Prevailing Eastern Time) (the

"Hearing") before the Honorable Robert D. Drain, United States Bankruptcy Court for the

Southern District of New York, One Bowling Green, Room 610, New York, New York,

10004.

PLEASE TAKE FURTHER NOTICE that if no written objections to the

Application are timely filed, served, and received, the order filed with the Application and

attached to this notice as Exhibit B will be submitted for signature to the Honorable Robert D.

Drain, United States Bankruptcy Court for the Southern District of New York, One Bowling

Green, Room 610, New York, New York 10004 on May 1, 2006 at 4:00 p.m. (Prevailing

Eastern Time).

PLEASE TAKE FURTHER NOTICE that objections, if any, to the Application

must (a) be in writing, (b) conform to the Federal Rules of Bankruptcy Procedure, the Local

Bankruptcy Rules for the Southern District of New York, and the Third Supplemental Order

Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014

2

Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Adminis-

trative Procedures, entered by this Court on April 20, 2006 (the "Third Supplemental Case

Management Order") (Docket No. 3293), and (c) be filed with the Bankruptcy Court in

accordance with General Order M-242 (as amended), pursuant to which registered users of the

Bankruptcy Court's case filing system must file electronically, and all other parties-in-interest

must file on a 3.5 inch disk (preferably in Portable Document Format (PDF), WordPerfect, or

any other Windows-based word processing format), (d) be submitted in hard-copy form

directly to the chambers of the Honorable Robert D. Drain, United States Bankruptcy Judge,

and (e) be served upon (i) Delphi Corporation, 5725 Delphi Drive, Troy, Michigan 48098

(Att'n: General Counsel), (ii) counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom

LLP, 333 West Wacker Drive, Suite 2100, Chicago, Illinois 60606 (Att'n: John Wm. Butler,

Jr.), (iii) counsel for the agent under the Debtors' prepetition credit facility, Simpson Thacher

& Bartlett LLP, 425 Lexington Avenue, New York, New York 10017 (Att'n: Kenneth S.

Ziman), (iv) counsel for the agent under the postpetition credit facility, Davis Polk &

Wardwell, 450 Lexington Avenue, New York, New York 10017 (Att'n:  Marlane Melican),

(v) counsel for the Official Committee of Unsecured Creditors, Latham & Watkins LLP, 885

Third Avenue, New York, New York 10022 (Att'n: Robert J. Rosenberg and Mark A.

Broude), (vi) Mayer, Brown, Rowe & Maw LLP, 71 South Wacker, Chicago, Illinois 60606

(Attn: Paul J.N. Roy), and (vii) the Office of the United States Trustee for the Southern

District of New York, 33 Whitehall Street, Suite 2100, New York, New York 10004 (Att'n:

Alicia M. Leonhard), in each case so as to be **received** no later than **2:00 p.m. (Prevailing**

**Eastern Time) on May 1, 2006** (the "Objection Deadline").

3

PLEASE TAKE FURTHER NOTICE that only those objections made as set forth herein and in accordance with the Third Supplemental Case Management Order will be considered by the Bankruptcy Court at the Hearing.  If no objections to the Application are timely filed and served in accordance with the procedures set forth herein and in the Third Supplemental Case Management Order, the Bankruptcy Court may enter an order granting the Application **without further notice**.

Dated: New York, New York
      April 21, 2006

                SKADDEN, ARPS, SLATE, MEAGHER
                & FLOM LLP

            By: /s/ John Wm. Butler, Jr.
                John Wm. Butler, Jr. (JB 4711)
                John K. Lyons (JL 4951)
                Ron E. Meisler (RM 3026)
            333 West Wacker Drive, Suite 2100
            Chicago, Illinois  60606
            (312) 407-0700

                    - and -

            By: /s/ Kayalyn A. Marafioti
                Kayalyn A. Marafioti (KM 9632)
                Thomas J. Matz (TM 5986)
             Four Times Square
            New York, New York  10036
            (212) 735-3000

            Attorneys for Delphi Corporation, et al.,
                Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                        :
    In re                             :    Chapter 11
                                                        :
DELPHI CORPORATION, et al.,                             :    Case No. 05-44481 (RDD)
                                                        :
               Debtors.    :    (Jointly Administered)
                                                        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - x

APPLICATION FOR ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b)
AND FED. R. BANKR. P. 2014 AUTHORIZING EMPLOYMENT AND
RETENTION OF MAYER, BROWN, ROWE & MAW LLP AS SPECIAL INFORMATION
TECHNOLOGY OUTSOURCING COUNSEL TO DEBTORS
NUNC PRO TUNC TO FEBRUARY 1, 2006

("MAYER BROWN RETENTION APPLICATION")

        Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the

"Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), hereby submit this application (the "Application") for an order

under 11 U.S.C. §§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 authorizing the employment

and retention of Mayer, Brown, Rowe & Maw LLP ("Mayer, Brown") as special information

technology ("IT") outsourcing counsel to the Debtors, nunc pro tunc to February 1, 2006.  In

support of this Application, the Debtors submit the Declaration And Disclosure of Paul J.N. Roy

In Support Of Application For Order Under 11 U.S.C. §§ 327(e) And 1107(b) And Fed. R.

Bankr. P. 2014 Authorizing Employment And Retention Of Mayer, Brown, Rowe & Maw LLP

As Special Information Technology Outsourcing Counsel To Debtors Nunc Pro Tunc To

February 1, 2006, dated April 21, 2005 (the "Roy Declaration"). In further support of this

Application, the Debtors respectfully represent as follows:

Background

A.    The Chapter 11 Filings

1.    On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and

affiliates filed voluntary petitions in this Court for reorganization relief under chapter 11 of title

11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code").

The Debtors continue to operate their businesses and manage their properties as debtors-in-

possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered

orders directing the joint administration of the Debtor's chapter 11 cases.

2.    On October 17, 2005, the Office of the Unites States Trustee appointed an

official committee of unsecured creditors (the "Creditors' Committee"). No trustee or examiner

has been appointed in the Debtors' cases.

3.    This Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157

and 1334. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core

proceeding under 28 U.S.C. § 157(b)(2).

4.    The statutory predicates for the relief requested herein are sections 327(e)

and 1107(b) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules").

B.    Current Business Operations Of The Debtors

5.    Delphi and its subsidiaries and affiliates (collectively, the "Company") had

global 2005 net sales of approximately $26.9 billion, and global assets as of August 31, 2005 of

2

approximately $17.1 billion.[1] At the time of its chapter 11 filing, Delphi ranked as the fifth

largest public company business reorganization in terms of revenues, and the thirteenth largest

public company business reorganization in terms of assets.  Delphi's non-U.S. subsidiaries are

not chapter 11 debtors and continue their business operations without supervision from the

Bankruptcy Court.

6.      The Company is a leading global technology innovator with significant

engineering resources and technical competencies in a variety of disciplines, and is one of the

largest global suppliers of vehicle electronics, transportation components, integrated systems and

modules, and other electronic technology.  The Company supplies products to nearly every

major global automotive original equipment manufacturer.

7.      Delphi was incorporated in Delaware in 1998 as a wholly-owned

subsidiary of GM.  Prior to January 1, 1999, GM conducted the Company's business through

various divisions and subsidiaries.  Effective January 1, 1999, the assets and liabilities of these

divisions and subsidiaries were transferred to the Company in accordance with the terms of a

Master Separation Agreement between Delphi and GM.  In connection with these transactions,

Delphi accelerated its evolution from a North American-based, captive automotive supplier to a

global supplier of components, integrated systems, and modules for a wide range of customers

and applications.  Although GM is still the Company's single largest customer, today more than

half of Delphi's revenue is generated from non-GM sources.

C.      Events Leading To The Chapter 11 Filing

8.      In the first two years following Delphi's separation from GM, the

Company generated approximately $2 billion in net income.  Every year thereafter, however,

---

[1]      The aggregated financial data used in this Application generally consists of consolidated information from
Delphi and its worldwide subsidiaries and affiliates.

3

with the exception of 2002, the Company has suffered losses.  In calendar year 2004, the

Company reported a net loss of approximately $4.8 billion on $28.6 billion in net sales.[2]

Reflective of a continued downturn in the marketplace, in 2005 Delphi incurred net losses of

approximately $2.8 billion on net sales of $26.9 billion.

9.    The Debtors believe that the Company's financial performance has

deteriorated because of: (a) increasingly unsustainable U.S. legacy liabilities and operational

restrictions driven by collectively bargained agreements, including restrictions preventing the

Debtors from exiting non-profitable, non-core operations, all of which have the effect of creating

largely fixed labor costs, (b) a competitive U.S. vehicle production environment for domestic

OEMs resulting in the reduced number of motor vehicles that GM produces annually in the

United States and related pricing pressures, and (c) increasing commodity prices.

10.    In light of these factors, the Company determined that it would be

imprudent and irresponsible to defer addressing and resolving its U.S. legacy liabilities, product

portfolio, operational issues, and forward-looking revenue requirements.  Because discussions

with its major unions and GM had not progressed sufficiently by the end of the third quarter of

2005, the Company commenced these chapter 11 cases for its U.S. businesses to complete the

Debtors' transformation plan and preserve value for its stakeholders.

D.    The Debtors' Transformation Plan

11.    On March 31, 2006, the Company outlined the key tenets of its

transformation plan.  The Company believes that this plan will enable it to return to stable,

profitable business operations and allow the Debtors to emerge from these chapter 11 cases in

---

[2]    Reported net losses in calendar year 2004 reflect a $4.1 billion tax charge, primarily related to the recording
of a valuation allowance on the U.S. deferred tax assets as of December 31, 2004.  The Company's net
operating loss in calendar year 2004 was $482 million.

4

the first half of 2007.  To complete their restructuring process, the Debtors must focus on five

key areas.  First, Delphi must modify its labor agreements to create a competitive arena in which

to conduct business.  Second, the Debtors must conclude their negotiations with GM to finalize

GM's financial support for the Debtors' legacy and labor costs and to ascertain GM's business

commitment to the Company.  Third, the Debtors must streamline their product portfolio to

capitalize on their world-class technology and market strengths and make the necessary

manufacturing alignment with their new focus.  Fourth, the Debtors must transform their salaried

workforce to ensure that the Company's organizational and cost structure is competitive and

aligned with its product portfolio and manufacturing footprint.  Finally, the Debtors must devise

a workable solution to their current pension situation.

    12.    In connection with the first two elements of the Company's transformation

plan, Delphi continues to participate in discussions with its unions and GM.  Throughout those

discussions, Delphi has consistently communicated a clear message to both its hourly workforce

and GM: Delphi is committed to finding a consensual resolution to its issues and intends to

continue to discuss with its unions and GM ways to become competitive in the Debtors' U.S.

operations.  To that end, Delphi, GM and the UAW recently received this Court's approval of a

tripartite agreement providing for a special hourly attrition program for Delphi's UAW-

represented employees.  This special hourly attrition program could provide as many as 18,000

of Delphi's 23,000 existing UAW-represented long-term hourly employees with "soft landings"

through retirement attrition programs and GM flowbacks.  Delphi also hopes to reach agreement

on similar hourly attrition programs with its other unions, which could provide as many as 4,500

additional hourly employees with retirement programs or incentives.

13.     These hourly attrition programs constitute an important first step in implementing the Debtors' transformation plan, but will not resolve all of the issues related to Delphi's uncompetitive labor agreements.  Moreover, Delphi has not yet reached comprehensive agreements with its unions and GM.  Therefore, on March 31, 2006, Delphi moved under sections 1113 and 1114 of the Bankruptcy Code for authority to reject its U.S. labor agreements and to modify retiree benefits.[3]  Contemporaneously therewith, the Debtors also moved to reject unprofitable supply contracts with GM.[4]  Among the reasons for the GM contract rejection motion was the Debtors' belief that GM must cover a greater portion of the costs of manufacturing products for GM at plants that bear the burden of the Debtors' legacy costs.  This initial motion covers approximately half of the Debtors' North American annual purchase volume revenue from GM but only 10% of the Debtors' total contracts with GM.  Although the filing of these motions was a necessary procedural step, the Debtors remain focused on reaching a consensual resolution with all of Delphi's unions and GM before a hearing on the motions is necessary.

14.     To implement the third element of the Debtors' transformation plan, the Company announced plans to focus its product portfolio on those core technologies for which the Company has significant competitive and technological advantages and expects the greatest opportunities for increased growth.   To that end, the Company will concentrate the organization around the following core strategic product lines: (a) Controls & Security (Body Security, Mechatronics, Power Products, and Displays), (b) Electrical/Electronic Architecture (Electrical/Electronic Distribution Systems, Connection Systems, and Electrical Centers), (c)

---

[3]     Motion For Order Under 11 U.S.C. § 1113(c) Authorizing Rejection Of Collective Bargaining Agreements And Under 11 U.S.C. § 1114(g) Authorizing Modification of Retiree Welfare Benefits (Docket No. 3035)

[4]     Motion For Order Under 11 U.S.C. § 365 And Fed. R. Bankr. P. 6006 Authorizing Rejection Of Certain Executory Contracts With General Motors Corporation (Docket No. 3033)

Entertainment & Communications (Audio, Navigation, and Telematics), (d) Powertrain (Diesel

and Gas Engine Management Systems), (e) Safety (Occupant Protection and Safety Electronics),

and (f) Thermal (Climate Control & Powertrain Cooling).[5]

15.    In contrast, the Company similarly identified certain non-core product

lines that do not fit into its future strategic framework, including Brake & Chassis Systems,

Catalysts, Cockpits and Instrument Panels, Door Modules and Latches, Ride Dynamics, Steering,

and Wheel Bearings.  The Company will seek to sell or wind down these non-core product lines

(which will include approximately one-third of its global manufacturing sites) and will consult

with its customers, unions, and other stakeholders to carefully manage the transition of such

affected product lines.  The Company intends to sell or wind down the non-core product lines

and manufacturing sites by January 1, 2008.

16.    As part of its organizational restructuring, the fourth element of the

Debtors' transformation plan, the Company expects to reduce its global salaried workforce by as

many as 8,500 employees as a result of portfolio and product rationalizations and initiatives

adopted following an analysis of the Company's selling, general, and administration ("SG&A")

cost saving opportunities.  The Company believes that once its SG&A plan is fully implemented,

the Company should realize savings of approximately $450 million per year in addition to

savings realized from competitive measures planned for its core businesses and the disposition of

non-core assets.

17.    As noted above, the final key tenet of the transformation plan is to devise

a workable solution to the Debtors' current pension situation.  The Debtors' goal is to retain the

---

[5]    The Company does not expect the portfolio changes to have a significant impact on its independent
aftermarket or consumer electronics businesses.  Similarly, the Company does not expect an impact on
medical, commercial vehicles, or other adjacent-market businesses and product lines.

benefits accrued under the existing defined benefit U.S. pension plans for both the Debtors'

hourly and salaried workforce.  To do so, however, it will be necessary to freeze the current

hourly U.S. pension plan as of October 1, 2006 and to freeze the current salaried U.S. pension

plan as of January 1, 2007.  Despite the freeze, because of the size of the funding deficit, it will

also be necessary for the Debtors to obtain relief from the Pension Benefit Guaranty Corporation,

the Internal Revenue Service, the Department of Labor, and potentially Congress, to amortize

funding contributions over a long-term period.  The Company intends to replace the hourly plan

(for certain employees) and the salaried plan with defined contribution plans.

18.    Upon the conclusion of the reorganization process, the Debtors expect to

emerge as a stronger, more financially sound business with viable U.S. operations that are well-

positioned to advance global enterprise objectives.  In the meantime, Delphi will marshal all of

its resources to continue to deliver high-quality products to its customers globally.  Additionally,

the Company will preserve and continue the strategic growth of its non-U.S. operations and

maintain its prominence as the world's premier auto supplier.

## Relief Requested

19.    By this Application, the Debtors request authorization to employ and retain

Mayer, Brown as special IT outsourcing counsel, effective as of February 1, 2006.  Accordingly,

the Debtors respectfully request the entry of an order under sections 327(e) and 1107(b) of the

Bankruptcy Code and Bankruptcy Rule 2014 authorizing the employment and retention of

Mayer, Brown in accordance with the terms set forth in the letter agreement attached hereto as

Exhibit 1 (the "Engagement Letter").

## Basis For Relief

20.    The Debtors submit that Mayer, Brown's proposed retention meets all the

prerequisites for retention of special counsel under section 327(e) of the Bankruptcy Code, which

permits a debtor-in-possession, with court approval, to employ counsel for a "specified special purpose" if such employment is in the best interest of the Debtors.

The Debtors' Employment Of Mayer, Brown<br>Is In The Best Interests Of The Estates

21.    The Debtors had retained Mayer, Brown as an ordinary course professional according to the Order Under 11 U.S.C §§ 327, 330, And 331 Authorizing Retention Of Professionals Utilized By Debtors In Ordinary Course Of Business ("Ordinary Course Professionals Order") (Docket No. 883).  It is apparent, however, that Mayer, Brown will exceed the fee cap established in the Ordinary Course Professionals Order.  Therefore, the Debtors request that Mayer, Brown be formally retained as special IT outsourcing counsel to the Debtors in these chapter 11 cases.

22.    Mayer, Brown is especially attuned to the unique IT outsourcing issues that arise in the Debtors' industry.  Mayer, Brown is a full-service, international law firm, with offices in 13 cities across the United States and Europe, as well as representative offices in China and affiliated offices in Italy and Mexico.  With more than 1,300 lawyers, Mayer, Brown provides legal services in virtually every major practice area, including finance, corporate, business restructuring, trial and appellate litigation, intellectual property, real estate, environmental, tax, employee benefits, and international trade, and, in particular, Mayer, Brown has cultivated a national and international reputation for providing the highest quality legal advice to its clients in all phases of sourcing, from outsourcing through re-sourcing to in-sourcing, in a wide variety of complex transactions.  Most importantly for purposes of this Application, several members of Mayer, Brown have extensive experience in legal services relating to IT, telecommunications, and business process outsourcing.  Accordingly, the Debtors believe that Mayer, Brown is well

9

qualified to serve as special IT outsourcing counsel in these chapter 11 cases in an efficient and effective manner.

23.    The Debtors believe that the employment of Mayer, Brown will enhance and will not duplicate the employment of Skadden, Arps, Slate, Meagher, & Flom LLP ("Skadden, Arps"), the Debtors' general bankruptcy counsel, Shearman & Sterling LLP, the Debtors' special counsel, Togut, Segal & Segal LLP, the Debtors' conflicts counsel, or any of the other professionals retained by the Debtors to perform specific tasks that are unrelated to the work to be performed by Mayer, Brown as special IT outsourcing counsel to the Debtors.  The Debtors understand that Mayer, Brown will work with the other professionals retained by the Debtors to avoid any such duplication.

<u>Services To Be Rendered By Mayer, Brown</u>

24.    As set forth in the Engagement Letter, the Debtors wish to retain Mayer, Brown to provide services to the Debtors in connection with IT outsourcing matters.  The Debtors anticipate that such services will include the following:

(a)    reviewing documents, including Delphi's form IT outsourcing agreements;

(b)    drafting, revising, and editing a new form IT outsourcing agreement for the IT outsourcing services;

(c)    negotiating specific IT outsourcing agreements with third-party bidders; and

(d)    miscellaneous information technology advice and counsel related to IT outsourcing matters.

25.    Mayer, Brown has indicated its desire and willingness to represent the Debtors as set forth herein and to render the necessary professional services as special IT outsourcing counsel to the Debtors.

10

26.    The Debtors may request that Mayer, Brown undertake specific matters beyond the scope of the responsibilities set forth above.  Should Mayer, Brown agree in its discretion to undertake any such matter, the Debtors will seek further order of this Court.

<u>Disinterestedness Of Professionals</u>

27.    Section 327(e) does not require that Mayer, Brown and its attorneys be "disinterested persons" as defined in section 101(14) of the Bankruptcy Code.  Rather, section 327(e) of the Bankruptcy Code requires that Mayer, Brown not represent or hold any interest adverse to the estates or the Debtors with respect to the matters on which Mayer, Brown is to be employed.  As discussed above, the employment of Mayer, Brown as special IT outsourcing counsel to the Debtors is in the best interests of the Debtors.

28.    The Roy Declaration filed in support of this Application contains information available to date on Mayer, Brown's connections with other parties-in-interest, as required by Bankruptcy Rule 2014(a).  According to the Roy Declaration, Mayer, Brown, its partners, counsel, and associates do not hold or represent any interest adverse to the Debtors, their creditors, any other party-in-interest in these chapter 11 cases, their respective attorneys and investment advisors, the Office of the United States Trustee (the "U.S. Trustee"), or any person employed therein, with respect to the matters on which Mayer, Brown is to be employed.

29.    Mayer, Brown has disclosed to the Debtors that Mayer, Brown has in the past represented, currently represents, and will likely in the future represent, certain of the Debtors' creditors and other parties-in-interest in matters unrelated to the Debtors or their chapter 11 cases, and in certain matters related to these chapter 11 cases, but unrelated to the matters on which Mayer, Brown is to be employed.  Mayer, Brown does not believe that the foregoing raises any actual or potential conflict of interest for Mayer, Brown relating to the representation of the Debtors as their special IT outsourcing counsel in these chapter 11 cases, but such

11

relationships are disclosed out of an abundance of caution.  The Debtors understand that, in order

to vitiate any actual or potential conflicts of interest, Mayer, Brown will not assist the Debtors in

connection with their analysis, negotiations, and litigation, if any, with parties with whom

Mayer, Brown has existing client relationships, and that Skadden, Arps (or other counsel if

Skadden, Arps has a conflict), instead, will handle any such tasks.

Professional Compensation

30.    Mayer, Brown intends to apply to this Court for compensation and

reimbursement of expenses in accordance with section 330(a) of the Bankruptcy Code, the

Bankruptcy Rules, applicable guidelines established by the U.S. Trustee, and orders of this

Court.  Mayer, Brown acknowledges that all compensation will be subject to this Court's review

and approval, after notice and a hearing.

31.    Under the applicable provisions of the Bankruptcy Code, and subject to the

approval of this Court, the Debtors propose to pay Mayer, Brown its rates as disclosed in the

Engagement Letter.  Mayer, Brown will discount its rates by 5% for the first $500,000 of fees,

and by 10% for the portion of its fees that exceed $500,000.  Mayer, Brown will not charge for

travel time, though it will charge for time spent working while traveling.  Mayer, Brown's hourly

billable rates include its general overhead and internal charges associated with its practice.

32.    No arrangement is proposed between the Debtors and Mayer, Brown for

compensation to be paid in these chapter 11 cases other than as set forth above, in the

Engagement Letter, and in the Roy Declaration.

33.    At the Debtors' request, Mayer, Brown has assisted the Debtors in

connection with their IT outsourcing issues since February 1, 2006 and hence the Debtors

request Mayer, Brown's retention to be effective nunc pro tunc to February 1, 2006.

12

## Conclusion

34.    For the foregoing reasons, the Debtors submit that the employment of
Mayer, Brown as the Debtors' special IT outsourcing counsel on the terms set forth herein is in
the best interests of the estates.

## Notice

35.    Notice of this Motion has been provided in accordance with the Third
Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006,
9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,
And Administrative Procedures, entered by this Court on April 20, 2006 (Docket No. 3293).  In
light of the nature of the relief requested, the Debtors submit that no other or further notice is
necessary.

## Memorandum Of Law

36.    Because the legal points and authorities upon which this Application relies
are incorporated herein, the Debtors respectfully request that the requirement of the service and
filing of a separate memorandum of law under Rule 9013-1(b) of the Local Bankruptcy Rules for
the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

13

WHEREFORE, the Debtors respectfully request that this Court enter an order (a)

authorizing the Debtors to employ and retain Mayer, Brown as their special IT outsourcing

counsel to perform the services set forth herein, nunc pro tunc to February 1, 2006 and (b)

granting the Debtors such other and further relief as is just.

Dated:    New York, New York
          April 21, 2006

                              DELPHI CORPORATION, on behalf of itself and
                              certain of its subsidiaries and affiliates, as Debtors and
                              Debtors-in-Possession

                              By:  /s/ John D. Sheehan_____
                                    Name:  John D. Sheehan
                                    Title:   Vice President, Chief Restructuring
                                             Officer, and Controller

14

Exhibit 1



Mayer, Brown, Rowe & Maw LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637

Main Tel (312) 782-0600
Main Fax (312) 701-7711
www.mayerbrownrowe.com

**Paul J.N. Roy**
Direct Tel (312) 701-7370
Direct Fax (312) 706-8196
proy@mayerbrownrowe.com

February 3, 2006

Marjorie Harris Loeb, Esq.
Assistant General Counsel
 Corporate and Securities
Delphi Corporation
MC 483.400.603
5725 Delphi Place
Troy, Michigan  48098

Dear Ms. Loeb:

    This letter confirms our agreement for the provision of legal services by this Firm to Delphi Corporation in connection with the negotiation of an IT outsourcing services contract (the "**ITO Project**"), subject to the attainment of waiver letters, if necessary.  You may limit or expand the scope of our representation at any time, provided that any expansion must be by mutual consent.  We are very pleased that you have retained us and will, of course, answer any questions you may have about these arrangements.

## PAYMENT PROVISIONS

    We recognize that in choosing us to provide these services, you are choosing specific individuals at the Firm, including myself, Paul Chandler, Greg Manter and Kristina Herrmann.  I will be your primary interface on this engagement and will supervise the other professionals involved.  As per our discussion, I will keep you informed of staffing needs and work with you in coordinating with Delphi's internal legal staff so that together we can insure the most cost-efficient and effective delivery of services.  Others from the Firm may be necessary to assist us on this engagement, but we have agreed to obtain your written permission before engaging them.  No fees will be paid for work performed by others before we have obtained your written permission.   The Firm endeavors, to the maximum extent compatible with the quality of our work product, to assign our personnel in a way designed to produce timely and economical handling of matters.  If at any time you have questions, concerns or suggestions, please contact me promptly.

    Our fees for services are based on time (at quarter hour increments) spent on specific projects, computed at our hourly rates for those persons performing the services required.  I will be the principal attorney for this engagement.  My hourly rate is $580.  The hourly rates for other professionals you have approved for this engagement are as follows:

9056727 42007437

Berlin  Brussels  Charlotte  Chicago  Cologne  Frankfurt  Houston  London  Los Angeles  New York  Palo Alto  Paris  Washington, D.C.
Independent Mexico City Correspondent:  Jauregui, Navarrete, Nader y Rojas, S.C.

Mayer, Brown, Rowe & Maw LLP operates in combination with our associated English limited liability partnership in the offices listed above.

Mayer, Brown, Rowe & Maw LLP

Marjorie Harris Loeb, Esq.
February 3, 2006
Page 2

| | |
|---|---|
| Paul Chandler | $475 |
| Greg Manter | $300 |
| Kristina Herrmann | $260 |

We agree these hourly rates will remain in effect until the earlier of the completion of the ITO Project and January 1, 2007. We will discount our rates for the ITO Project by 5% for the first $500,000 of fees, and at 10% for portion of our fees that exceed $500,000. We will not charge for travel time, though we will charge for time we are working on your matters while traveling.

Our hourly billable rates include our general overhead and internal charges associated with our practice. A copy of the Delphi billing instructions and limitations is enclosed and incorporated into this engagement agreement by this reference, together with a copy of our current schedule of charges, which will apply only to the extent permitted by the Delphi billing instructions and limitations.

We anticipate submitting to you monthly invoices for the professional (lawyer and paralegal) services rendered and other charges and expenses incurred. Payment is due upon receipt of our statement and in no event later than 30 days thereafter. We will provide you with billing details specifying the individuals involved, their positions here, the hours and work performed and an itemization of other charges.

9056727 42007437

Mayer, Brown, Rowe & Maw LLP

Marjorie Harris Loeb, Esq.
February 3, 2006
Page 3

## CONFLICT PROVISIONS

You agree that our Firm may represent the persons or entities listed in Attachment A where their interests are adverse (in litigation, transactions or otherwise) to you or your affiliates in matters not related to our engagement by you. In addition, you agree that our Firm may represent other persons or entities (i.e., not listed in Attachment A) whose interests are adverse to you or your affiliates in matters not related to our engagement by you, provided that so long as you remain a continuing client of our Firm, we will not represent such other persons or entities in any litigation or arbitration adverse to Delphi without having obtained a separate waiver from you for that representation.

We agree, however, that your prospective consent to adverse representation shall not apply in any instance where, as the result of our representation of you, we have obtained sensitive, proprietary or other confidential information of a nonpublic nature that, if known to any such other client of ours, could be used in a matter in which we are retained by our other client to your material disadvantage unless we have screened our lawyers and paralegals who have such information from any involvement in the adverse representation. In addition, no lawyer of our Firm who is representing Delphi will participate in the representation of another person or entity adverse to Delphi. The attorneys in our Firm working on matters for Delphi and persons or entities adverse to Delphi will, of course, keep segregated and separate any work product and information concerning the matters for Delphi from any work product and information concerning the matters for any person or entity adverse to Delphi.

For the purpose of determining whether a conflict of interest exists, it is only you and your subsidiaries which we will represent and not your stockholders or other related companies (collectively "Other Related Persons"). You agree not to give us confidential information regarding your Other Related Persons. While we recognize that to act adversely to any Other Related Persons could jeopardize a long term relationship with you, which we would naturally be reluctant to do, for conflict of interest purposes we reserve the right to represent another client with interests adverse to any Other Related Person without obtaining any consent from you or such Other Related Person.

## TERMINATION OF ENGAGEMENT

Following termination of our engagement, any otherwise nonpublic information you have supplied to us which is retained by us will be kept confidential in accordance with applicable rules of professional conduct. At your request, your papers and property will be returned to you; our own files, including lawyer work product, pertaining to the matter will be retained by us. For various reasons, including the minimization of unnecessary storage expenses, we reserve the right to destroy or otherwise dispose of any such items retained by us within a reasonable time after the termination of the engagement.

9056727 42007437

Mayer, Brown, Rowe & Maw LLP


Marjorie Harris Loeb, Esq.
February 3, 2006
Page 4


Our attorney-client relationship will be considered terminated if more than 12 months have elapsed from the last time you requested and we furnished any billable services to you. If you later retain us to perform further or additional services, our attorney-client relationship will be revived, subject to these and any supplemental terms of engagement. The fact that we may inform you from time to time of developments in the law which may be of interest to you, by newsletter or otherwise, should not be understood as a revival of an attorney-client relationship. Moreover, we have no obligation to inform you of such developments in the law unless we are engaged in writing to do so.

ACCEPTANCE

This letter constitutes the entire understanding between you and Mayer, Brown, Rowe & Maw LLP and supersedes all prior understandings, written or oral, relating to its subject matter. Any change must be made or confirmed in writing. If this letter correctly reflects your understanding of the terms and conditions of our engagement, please indicate your acceptance by signing the enclosed copy of this letter in the space provided below and returning it to our office, to my attention.

On behalf of Mayer, Brown, Rowe & Maw LLP, I thank you for the opportunity to be of service.

Sincerely,

Paul J.N. Roy


We agree to the foregoing terms:

DELPHI CORPORATION


By:_____

Date:_____


9056727 42007437

Delphi Billing Instructions and Limitations

## Payment Terms

Delphi payment terms are MSN-2 (second day of the second month, after the date of the invoice).

## Permitted Reimbursables

Delphi **will** reimburse a law firm for reasonable and actual out-of-pocket payments made to third-party vendors (i.e., Delphi **will not** pay for markups or surcharges added by the law firm) for the following items:

- Air freight/express mail deliveries
- Bond fees and premiums
- Coach-class air fare (lowest available rate/class)
- Computerized legal research (e.g., Lexis, Westlaw)
- Court reporter fees
- Expert witness fees
- Filing fees
- Inside photocopy (up to 10 cents per page)
- Local business transportation (e.g., taxi fares)
- Long distance telephone charges (for voice, fax or data)
- Outside messenger services
- Outside photocopy, binding, and printing services
- Postage
- Travel (airfare, hotel, rental car)

Delphi **will not** pay for:

- Books/subscriptions
- Fax communications (except long distance telephone charges)
- Hourly fees while traveling
- Inside photocopy (more than 10 cents per page)
- Local meals
- Local personal transportation (taxi/limousine to/from home)
- Local telephone charges
- Membership fees
- Office supplies
- Overtime charges
- Secretarial/clerical charges
- Storage charges

9056727 42007437

- Word processing

Mayer, Brown, Rowe & Maw LLP
U. S. Offices

Schedule of Non-fee Charges to Clients

(which will apply only to the extent permitted by the Delphi Billing Instructions and Limitations)

July 1, 2005

I.      Long Distance Telephone.

We purchase our long-distance telephone service from telecommunications providers at

discounted rates. We charge clients at rates calculated to recover our cost.

II.     Automated Research.

We purchase services from Lexis and Westlaw at fixed monthly rates which are substantially

below their published rates. We charge clients for the Lexis and Westlaw connections at rates

calculated to recover our cost.

III.    Telefax Service.

We charge clients $1.00 per page, plus applicable long distance telephone charges regardless of

length at our discounted rates. There is no charge for incoming telefaxes.

IV.     Document Reproduction.

We charge clients for standard-size internal black and white copies at the rate of $.15 per page.

We charge clients for standard-size internal color document reproduction (if specifically

requested by clients) at the rate of $1.00 per page. We currently reproduce documents using

photocopiers, laser printers, and digital copiers, and may in the future use other means of

reproduction. Outside copying is charged at actual out-of-pocket cost.

V.      Postage.

We charge clients at cost for postage when the cost of mailing is $1.00 or more.

9056727 42007437

VI.   Out-of-pocket Disbursements.

The following types of disbursements when related to a client matter are charged at the firm's

cost:

> Advances on behalf of clients (*e.g.*, tax payments, filing fees, title charges)
> Consultants' and expert witnesses' fees and expenses
> Courier and messenger services
> Court reporters
> Equipment when purchased solely for a client matter
> Meals
> Outside services (including cost of litigation support services purchased from outside vendors)
> Service of process
> Records searches
> Supplies (when amounts are large or type of supply item is special)
> Tax return processing charges
> Taxis, mileage, parking (local)
> Travel (airfares, hotels, meals, car rentals, fees of travel agencies and professionals, taxis and incidentals)*
> Trial exhibits
> Witness fees and costs
> Other items not covered above that are directly attributable to a client matter
>
> *We use commissions paid to our travel agents by hotels and auto rental companies to reduce the costs to us of our Travel Department.

VII.   Items Not Charged to Clients.

> Administrative overhead
> Air conditioning and electricity for overtime work
> Client entertainment
> Local and suburban telephone calls
> Rent for conference rooms

Attachment A

Gail O'Brien
Login Robinson
Oppenheimer Senior Floating Rate Fund

TRW Automotive Inc. and its subsidiaries
Ispat Inland/Mittal Steel USA Inc. and its subsidiaries
United Stars, Inc. and its subsidiaries
Hub Group and its subsidiaries
Micronas Semi-Conductors and its subsidiaries
Bank of America N.A. and its subsidiaries

9056727 42007437

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                              :
            In re                             :    Chapter 11
                                              :
DELPHI CORPORATION, et al.,                   :    Case No. 05-44481 (RDD)
                                              :
                              Debtors.        :    (Jointly Administered)
                                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. §§ 327(e) AND 1107(b) AND FED. R. BANKR. P. 2014
AUTHORIZING EMPLOYMENT AND  RETENTION OF MAYER, BROWN, ROWE &
MAW LLP AS SPECIAL INFORMATION TECHNOLOGY OUTSOURCING COUNSEL TO
DEBTORS NUNC PRO TUNC TO FEBRUARY 1, 2006

("MAYER, BROWN RETENTION ORDER")

Upon the application, dated April 21, 2006 (the "Application"), of Delphi

Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the

above-captioned cases (collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C.

§§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 authorizing the employment and retention of

Mayer, Brown, Rowe & Maw LLP ("Mayer, Brown") as special information technology

outsourcing counsel to the Debtors; and upon the Declaration And Disclosure Of Paul J.N. Roy

In Support Of Application For Entry Of Order Under 11 U.S.C. §§ 327(e) And 1107(b)

Authorizing Employment And Retention Of Mayer, Brown, Rowe & Maw LLP As Special

Information Technology Outsourcing Counsel To The Debtors Nunc Pro Tunc To February 1,

2006 (the "Roy Declaration"); and this Court being satisfied with the representations made in the

Application and the Roy Declaration that Mayer, Brown does not represent or hold any interest

adverse to any of the Debtors' estates or the Debtors with respect to the matters on which Mayer,

Brown is to be employed, and that Mayer, Brown's employment is necessary and would be in the

best interests of each of the Debtors' estates; and it appearing that proper and adequate notice has

been given and that no other or further notice is necessary; and upon the record herein; and after

due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1.   The Application is GRANTED.

2.   The Debtors' employment of Mayer, Brown as their special information

technology outsourcing counsel, pursuant to the Application, is approved under sections 327(e)

and 1107(b) of the Bankruptcy Code and Rule 2014 of the Federal Rules of Bankruptcy

Procedure (the "Bankruptcy Rules"), with approval of such employment being effective as of

February 1, 2006.

3.   Mayer, Brown shall be compensated in accordance with the standards and

procedures set forth in sections 330 and 331 of the Bankruptcy Code and all applicable

Bankruptcy Rules, Local Bankruptcy Rules for the United States Bankruptcy Court for the

Southern District of New York (the "Local Rules"), guidelines established by the Office of the

United States Trustee, and further orders of this Court.

4.   This Court shall retain jurisdiction to hear and determine all matters arising

from the implementation of this Order.

5.   The requirement under Local Rule 9013-1(b) for the service and filing of a

separate memorandum of law is deemed satisfied by the Application.


Dated:    New York, New York
          May _____, 2006


_____
  UNITED STATES BANKRUPTCY JUDGE

2

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| _____ | ) | |
| | ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, et al., | ) | Case No. 05-04481 (RDD) |
| | ) | |
| Debtors. | ) | (Jointly Administered) |

**DECLARATION AND DISCLOSURE OF PAUL J.N. ROY**
**IN SUPPORT OF APPLICATION FOR ENTRY**
**OF ORDER UNDER 11 U.S.C. §§ 327(e) and 1107(b) AUTHORIZING**
**EMPLOYMENT AND RETENTION OF MAYER, BROWN, ROWE & MAW LLP AS**
**SPECIAL IT OUTSOURCING COUNSEL TO THE DEBTORS**
***NUNC PRO TUNC* TO FEBRUARY 1, 2006**

I, Paul J.N. Roy, declare under penalty of perjury as follows:

1.       I am a partner in the law firm of Mayer, Brown, Rowe & Maw LLP ("Mayer,

Brown"), which maintains offices in Chicago, IL among other places.  The name, address, and

telephone number for Mayer, Brown are as follows:

> Mayer, Brown, Rowe & Maw LLP
> 71 South Wacker
> Chicago, Illinois 60606-4637
> Telephone: (312) 782-0600
> Facsimile: (312) 701-7711

2.       I am a member in good standing of the bar of the State of Illinois and the United

States District Court for the Northern District of Illinois.

3.       I submit this Declaration, pursuant to Rule 2014 of the Federal Rule Bankruptcy

Procedure (the "Bankruptcy Rules") and Rule 2014-1 of the Local Bankruptcy Rules for this

Court (the "Local Rules"), in connection with the application of Delphi Corporation ("Delphi" or

the "Company") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession

in the above-captioned cases (collectively, the "Debtors"), for an order, pursuant to sections

327(e) and 1107(b) of Title 11, United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy

Code"), authorizing the retention and employment of Mayer, Brown as special information

technology outsourcing counsel, nunc pro tunc to February 1, 2006 (the "Application").[1]  This

Declaration shall also constitute Mayer, Brown's disclosure of compensation required by

Bankruptcy Rule 2016(b), Local Rule 2016-1, and Section 329 of the Bankruptcy Code.

4.      I am authorized to make this Declaration on Mayer, Brown's behalf and, unless

otherwise stated, I have personal knowledge of the facts set forth herein.  Certain disclosures

herein relate to matters within the knowledge of other attorneys at Mayer, Brown and are based

on information provided to me by them.

### Mayer, Brown's Retention and Representation

5.      Following a lengthy and comprehensive RFP process initiated in January 2006 by

the Debtors, Mayer, Brown was selected by the Debtors to assist Delphi in connection with the

preparation, documentation and negotiation of one or more information technology ("IT")

outsourcing service contracts that cover, on a global basis, application hosting, service desk and

desktop functions for Delphi's business operations (the "IT Outsourcing Services").  Delphi's

decision to retain Mayer, Brown to provide the IT Outsourcing Services was formalized in an

engagement letter dated February 3, 2006 (the "Engagement Letter").   A copy of the

Engagement Letter is attached as Exhibit 1 to the Application.

6.      In connection with the IT Outsourcing Services, Mayer, Brown, under the

direction of the Delphi legal staff, is reviewing documents, including Delphi's form IT

outsourcing agreements, and drafting, revising and editing a new form IT outsourcing agreement

---

[1] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the
Application.

for the IT Outsourcing Services, negotiating specific agreements with third-party bidders, advising Delphi and performing related tasks.

7.      Founded more than 100 years ago, Mayer, Brown is a full-service, international law firm, with offices in 13 cities across the United States and Europe, as well as representative offices in China and affiliated offices in Italy and Mexico.  With more than 1,300 lawyers, Mayer, Brown provides legal services in virtually every major practice area, including finance, corporate, business restructuring, trial and appellate litigation, intellectual property, real estate, environmental, tax, employee benefits, and international trade, and, in particular, Mayer, Brown has cultivated a national and international reputation for providing the highest quality legal advice to its clients in all phases of sourcing, from outsourcing through re-sourcing to in-sourcing, in a wide variety of complex transactions.  I understand that the Debtors selected Mayer, Brown as its counsel with respect to the IT Outsourcing Services because Mayer Brown is a global leader in the provision of legal services relating to information technology, telecommunications and business process outsourcing.  In connection therewith, Mayer, Brown has become familiar with the factual and legal issues relevant to the Debtors' business operations, agreements and specific needs concerning its IT outsourcing requirements.

8.      In light of Mayer, Brown's existing client representations on unrelated matters and, as discussed below, the Debtors' engagement of Skadden, Arps, Slate, Meagher, & Flom LLP ("Skadden") as general bankruptcy counsel, along with their retention of (a) Shearman & Sterling LLP ("Shearman") as special counsel; (b) O'Melveny & Myers LLP ("O'Melveny") as special labor counsel; (c) Wilmer Cutler Pickering Hale and Door LLP ("WCPHD") as special regulatory counsel; (d) Banner & Witcoff, Ltd ("Banner"), as special intellectual property counsel; (e) Cantor Colburn LLP ("Cantor") as special patent counsel; (g) Butzel Long, PC

3

("Butzel") as special commercial litigation counsel; (h) Groom Law Group Chartered ("Groom") as special employee benefits counsel; and (i) Baker & Daniels ("Baker" and collectively with the other professionals the Debtors retain by order of the Court in their chapter 11 cases, the "Other Special Counsel"), Mayer, Brown will not be responsible for and will not undertake any representation of the Debtors with respect to either (x) advising the Debtors concerning specific contracts and claims of certain of Mayer, Brown's existing clients, or (y) reviewing, interpreting, or commenting on the specific contracts and claims of certain of Mayer, Brown's existing clients.  These existing client relationships, and the scope of the carve-out from Mayer, Brown's retention, are discussed more fully below.

9.    I understand that the Debtors may request that Mayer, Brown undertake specific matters beyond the limited scope of the responsibilities set forth above.  Should Mayer, Brown agree in its discretion to undertake any such matter, it is Mayer, Brown's understanding that the Debtors shall seek further order of this Court authorizing Mayer, Brown's retention for such additional purposes.

10.    Mayer, Brown recognizes the need to, and will, take all steps reasonably necessary, together with Skadden, as the Debtor's general bankruptcy counsel, and the Other Special Counsel, to ensure that there is no duplication of effort or work between Skadden and the Other Special Counsel, on the one hand, and Mayer, Brown on the other hand, and will continue to do so.  It is Mayer, Brown's intention that the estates should receive the best value possible from the efficient coordination of work among its counsel.  Mayer, Brown believes that its lawyers and Skadden and the Other Special Counsel have to date delineated clearly, and will continue to delineate clearly, the division of work between them, so as to avoid any duplication of effort and to maximize the efficiencies of the proposed arrangement.

11.    As of the Petition Date, Mayer, Brown did not hold any claim against and was not owed any money on account of any services provided to any of the Debtors prior to the Petition Date.  Further, according to the firm's accounting records, Mayer, Brown did not receive any payments from the Debtors in the 90 days prior to the Petition Date for any services rendered or expenses incurred for any legal work performed by Mayer, Brown on behalf of the Debtors.

<u>**Mayer, Brown's Disclosure Procedures**</u>

12.    Skadden forwarded to Mayer, Brown a list of the principle parties-in-interest in these chapter 11 cases, including the Debtors' and Delphi's domestic and foreign subsidiaries, directors, officers, key executives, lenders, insurers, underwriters, unions, major equity-and note-holders, customers, vendors, and counterparties to major leases and contracts, among other entities with possible connections to these cases.  The entities referenced in this paragraph are referred to collectively as the "Interested Parties."  The list of Interested Parties (as supplemented and up-dated since the Petition Date through February 28, 2006), is attached hereto as <u>Exhibit A</u>.

13.    In preparing this Declaration, I implemented procedures developed by Mayer, Brown to ensure compliance with the requirements of the Bankruptcy Code and the Bankruptcy Rules regarding the retention of Mayer, Brown as special counsel in the Debtors' chapter 11 cases (the "Mayer, Brown Disclosure Procedures").  The statements and disclosures contained herein are based on the results of the Mayer, Brown Disclosure Procedures.  Pursuant to the Mayer, Brown Disclosure Procedures, I performed, or caused to be performed, the following actions to identify the parties relevant to this Declaration and to ascertain Mayer, Brown's connections to the Interested Parties:

(a)    I directed Mayer, Brown personnel to compare the list of Interested Parties to the names that Mayer, Brown has compiled in a master client database from its conflict clearance and billing records, comprised of the names of the entities for which any attorney time charges have been billed since January 1, 2002 (the "Client Database").  The Client Database includes the name of each current or former client,

5

the names of the parties who are or were related or adverse to such current or former client in the matters on which we represented the client, and the names of the Mayer, Brown personnel who are or were responsible for current or former matters for each such client.

(b)    Any matches between the Client Database and the list of Interested Parties were identified (the "Client Matches").

(c)    An analyst in Mayer, Brown's conflicts department then reviewed the Client Matches and deleted obvious name coincidences and individuals or entities that were adverse to Mayer, Brown's client in both this matter and the respective matters referenced in the Client Matches.  The remaining client connections were compiled for purposes of this Declaration.

### Mayer, Brown's Connections

14.    The disclosures in this subsection are the product of implementing the Mayer, Brown Disclosure Procedures, and disclose Mayer, Brown's connections with the Interested Parties for purposes of Bankruptcy Rule 2014.  The disclosures are arranged in the same categories as the Interested Parties List: (i) domestic subsidiaries;[2] (ii) foreign subsidiaries; (iii) joint owners of subsidiaries; (iv) directors, officers, and key executives; (v) major customers; (vi) insurance providers; (vii) major vendors; (viii) professionals; (ix) indenture trustees; (x) underwriters of securities; (xi) non-Debtor parties to collective bargaining agreements; (xii) counterparties to major leases; (xiii) counterparties to major contracts; (xiv) major lenders; (xv) state and other government authorities; (xvi) potential interested parties; (xvii) major litigation parties; (xviii) holders of 5% or more of the equity securities of the Company; (xix) holders of 5% or more of notes of the Company; (xx) objecting/adverse parties appearing postpetition; and (xxi) master service list and Rule 2002 list.

A.    Representations Adverse to Delphi.

15.    Pursuant to the Engagement Letter, Delphi, on behalf of itself and its affiliates, has waived certain non-disqualifying conflicts and agreed that Mayer, Brown may represent

---

[2]    This category includes all of the Debtors.

6

other of its current and future clients on a basis adverse to Delphi in any matter, including with

respect to the Company's pending chapter 11 cases, provided such other engagements are not

related directly to the IT Outsourcing Services being provided by Mayer, Brown.  With respect

to such engagements,[3]  Mayer, Brown represents the following clients on matters adverse or

potentially adverse to the Debtors:

a)   Mayer, Brown represents a former officer of, and a professional services firm as advisor to, Delphi with respect to an investigation before the Securities and Exchange Commission ("SEC").

b)   Gail O'Brien:  Mayer, Brown represents Ms. O'Brien, a former in-house attorney at Electronic Data Systems ("EDS"), which was providing contractual services to Delphi, with respect to an investigation of Delphi by the Department of Justice and the SEC.

c)   Ernst & Young LLP:  Mayer, Brown was retained by E&Y to assist it in getting retained as accountants in Delphi's pending chapter 11 cases.

d)   Philips Electronics North America Corporation:   Mayer, Brown is providing general advice to Philips with respect to optical disc media licensing in circumstances that may be adverse to Delphi Technologies Inc.  Mayer, Brown also is representing Philips as a defendant in asbestos exposure litigation where Delphi is a co-defendant.

e)   Oppenheimer Senior Floating Rate Fund:  Mayer, Brown is representing Oppenheimer as a member in a syndicated loan facility provided to Delphi in which JP Morgan Securities, Inc. is the agent.

f)   TRW Automotive Inc.:  Mayer, Brown is providing advice to TRW on environmental rights under an environmental deed relating to the sale of Lucas Diesel Systems Division in which several Delphi affiliates hold an adverse or potentially adverse interest.

g)   Mittal Steel USA Inc. (f/k/a Ispat Inland Inc.):   Mayer, Brown has provided advice to Mittal Steel with respect to its claims against Delphi in the chapter 11 cases and assumption of its amended sole source supply agreement.

---

[3]      Certain of the adverse parties referenced in this subsection are or may be current or former affiliates of Delphi.

h)    <u>United Stars, Inc.</u>:  Mayer, Brown has provided advice to United Stars with respect to its claims against Delphi, which claims have since been sold and assigned by United Stars to a third-party debt trader.

i)    <u>Hub Group, Inc.</u>:  Mayer, Brown has provided advice to Hub in Delphi's chapter 11 case with respect to Hub's treatment as a critical vendor and the extension of a letter of credit Delphi provides to Hub.

j)    <u>Micronas GmbH</u>:  Mayer, Brown has provided advice to Micronas with respect to its claims against Delphi in its chapter 11 case.

k)    <u>Bank of America N.A.</u>:  Mayer Brown is representing Bank of America as the assignee of the unsecured claims of the Olin Corporation in Delphi's chapter 11 cases.[4]

16.    Mayer, Brown has been engaged to represent at least one party that is interested in acquiring certain assets owned by Delphi should  Delphi decide to offer such assets for sale pursuant to Section 363 of the Bankruptcy Code (the "Possible Sale").  The identity of such party is not being disclosed herein in order to protect the confidential nature of those clients' interests in making a bid in the Possible Sale.  I do not believe that representation precludes Mayer, Brown from also representing Delphi under Section 327(e) of the Bankruptcy Code for several reasons.  First, Delphi agreed in the Engagement Letter that Mayer, Brown could continue to represent other clients in such matters.  Second, none of the IT Outsourcing Services that are being provided by Mayer, Brown to Delphi impact the Possible Sale.  Third, Mayer, Brown is implementing a formal screen between the attorneys and other professionals who are working for Delphi and those at Mayer, Brown involved in representing such party in connection with the Possible Sale.

17.    In general, and consistent with the terms of the Engagement Letter, Mayer, Brown lawyers who are involved in representing its other clients on matters adverse or potentially

---

[4]    In addition to the foregoing, Mayer, Brown represented in the past certain of its clients in matters adverse to the Debtors that were closed as of the Petition Date.

adverse to the Debtors have not been and will not be involved in providing any of the IT Outsourcing Services to Delphi.[5]

      B.    <u>Representations of Interested Parties or Their Affiliates</u>.

      18.    Mayer, Brown previously or currently (except where noted below) represents and may represent in the future, in matters wholly unrelated to these chapter 11 cases, the following Interested Parties or, in some instances, their affiliates[6]:

    I.    <u>Domestic Subsidiaries</u>: NONE, except with respect to Delphi as noted above.[7]

    II.    <u>Foreign Subsidiaries</u>: NONE.

    III.    <u>Joint Owners of Subsidiaries</u>: Palm, Inc.; Raytheon Company; and Royce & Associates, LLC.

    IV.    <u>Directors, Officers and Key Executives</u>:  Various officers, directors and/or key executives for Delphi.

    V.    <u>Major Customers</u>: BMW; Caterpillar, Inc.; Collins & Aikman Corp.; Cummins Inc.; Daewoo Motor; DaimlerChrysler Corp., US; Fiat Group; Ford Motor Company; General Motors Corp.; Hyundai Motor America; Isuzu Group; Lear Corporation Automotive Systems; Mitsubishi Motors of America Credit Co.; Nissan North America Inc.; Paccar; Promotora; PSA Group; Renault; Land Rover; Takata; Tenneco, Inc.; Toyota Motor Credit Corporation; Volvo Truck; Agilent Tech. (M) SBN BHD; Cardinal Health; Elgin Industries; Johnson Controls Inc. (JCI); KLA Tencor Corp.; and Medrad, Inc.

    VI.    <u>Insurance Providers</u>: AIG/American International Group, Inc.; AON Risk Services of Illinois; AON Risk Services, Inc.; Blue Cross Blue Shield of Michigan; CIGNA Corp.; Hewitt Associates; Medco Health Solutions, Inc.;

---

[5]    For the purpose of full disclosure, it should be noted that Craig Reimer, who is counsel in Mayer, Brown's bankruptcy practice, has been, and is expected to continue to be, involved with respect to facilitating Mayer, Brown's retention and compensation as a professional in Delphi's chapter 11 case.  Mr. Reimer is not involved in Mayer, Brown's engagement with respect to the IT Outsourcing Services, but has been involved in representing Mittal Steel, Hub Group, Micronas and Hub Group with respect to the matters identified in paragraph 15 above.

[6]    In order to maintain consistency between the list of Interested Parties provided to Mayer, Brown and the disclosures in paragraph 18, the names of these entities are written the same was as they appear on that list even though in many instances the names on the list are incomplete or fail to reflect that certain entities have since been merged into or otherwise acquired by others (*e.g.*, JPMorgan Chase Bank is successor in interest by merger to Bank One).

[7]    The conflicts search results produced information showing that Mayer, Brown provided general corporate advice to an entity called "Delphi Displays Limited" in 2002.  That name did not appear on the list of domestic subsidiaries provided to Mayer, Brown but is identified herein for the purpose of full disclosure.

Metropolitan Life Insurance Co.; St. Pal Fire & Marine Insurance Company; St. Paul (Bermuda), Ltd.; Towers Perrin; United Health Group; ACE USA; Allianz of America Corporation; IRI; Liberty Mutual Insurance Company; Marsh USA, Inc.; Tokio Marine; American Home Assurance Co. (AIMA); AON UK; AXIS; Continental Casualty Co.; Great American Insurance Co.; Pacific Employers Insurance Co. (ACE USA); Steadfast Insurance Company (Zurich); Twin City Fire Insurance (Hartford); ACE Insurance Co.; East Ohio Gas Co.; and The Hartford Insurance Company.

VII.   Major Vendors: 3M Company; Aluminum Company of America, Inc. (ALCOA); Alps Electric Co., Ltd.; Carlisle Companies Inc.; Deloitte & Touche USA LLP; Electronic Data Systems Corporation (EDS); Engelhard Corporation; Freescale Semiconductor Inc.; General Electric Capital Corporation; General Electric Co., Inc.; Hitachi Ltd.; Illinois Tool Works Inc.; Intermet Corporate; ISI of Indiana, Inc.; Kyocera; Microsoft Services; Molex Inc.; Motorola Inc.; National Semiconductor Corporation; Philips Semiconductors; PriceWaterhouseCoopers LLP; RSR Corporation; Sequa Corp.; Siemens AG; Texas Pacific Group Ltd.; Textron Inc.; Thyseenkrupp AG; TRW Automotive; Tyco Electronics Corp.; Bayer AG; Equistar Chemicals LP; Federal Mogul Corp.; GKN PLC; Mittal Steel Company N.U.; PFG; PMP; Shell Oil; EI DuPont de Nemours & Co., Inc.; Circuit City Stores, Inc.; Wal-Mart Stores CE; GMACCM Asset Management de Mexico; Hub Group; Reliance Insurance Company; RLI Surety; Toronto Dominion Bank; Advanced Polymer Systems, Inc.; Eagle Picher Holdings, Inc.; Exxon Mobile Corp.; Felxtronics International; Fujitsu Ten Corporation; Ispat Inland; Robert Bosch Corporation Automotive Group; State of Wisconsin; Capri Capital Advisors LLC; Delta Air Lines, Inc.; University HealthSystems Consortium (UHC); Saab Automobile AB; Asashi Glass Co.; BTV Holding GmbH; International Rectifier Corp.; Sumitomo Electronic Industries, Ltd.; and Wilh Werhahn.

VIII.   Professionals: Cleary, Gottlieb, Steen & Hamilton; Shearman & Sterling LLP; AIT Group; Ernst & Young; FTI Consulting, Inc.; KPMG LLC; Linklaters; McCann-Erickson; MIT; Saloman Smith Barney; Watson Wyatt & Company; O'Melvany & Meyers, LLP; and Rothschild Inc.

IX.   Indenture Trustees: Bank One Trust Company, N.A.; and First National Bank of Chicago.

X.   Underwriters of Securities: A.G. Edwards & Sons, Inc.; ABN AMRO Incorporated; Banc of America Securities LLC; Barclays Capital Inc.; BB&T Capital Markets, Inc.; BNP Paribas Securities Corp.; Citigroup Global Markets, Inc.; Comerica Securities Inc.; Credit Suisse First Boston LLC; Deutsche Bank Securities, Inc.; HSBC Securities, Inc.; J.P. Morgan Securities, Inc.; McDonald Investments Inc.; Merrill Lynch, Pierce, Fenner & Smith Incorporated; Morgan Stanely & Co. Incorporated; Oppenheimer & Co., Inc.; RB Dain Rauscher Inc.; Scotia Capital, Inc.; SG Cowen Securities Corporation; The Royal Bank of

Scotland PLC; U.S. Bancorp Piper Jaffray Inc.; UBS Securities LLC; and Wachovia Capital Markets, LLC.

XI.     <u>Unions</u>:  NONE.

XII.    <u>Counterparties to Major Leases</u>:  LaSalle National Bank.

XIII.   <u>Counterparties to Major Contracts</u>:    American Electric Power (AEP OK); Alabama Power Co.; AT&T Corporation; AT&T Solutions, Inc.; AT&T Wireless; Honeywell International; Kokomo Gas & Fuel Company IN; Nextel Communications; PSE&G NJ; SBC Ameritech; SBC Global Services, Inc.; Southern California Edison; State of Indiana; Timer Warner; TXU Energy Retail Company LP; Verizon; Anexbusiness Corp.; Clifford Electronics, Inc.; Intel Corporation; Matsushita Electric Corporation of America; Nokia Corporation; North American Philips Corporation; Standard Research Institute International (SRI Intl); and Toshiba Corporation.

XIV.    <u>Major Lenders</u>:  Banc One Capital Markets, Inc.; ABN AMRO Bank N.V.; The Bank of Tokyo-Mitsubishi, Ltd.; JPMorgan Bank, N.A.; Wachovia Bank, National Association; Whitney National Bank; Citicorp Securities, Inc.; First Chicago Capital Markets, Inc.; Dai-Ichi Kangyo Trust Company of New York; Bianco Bibao Vizcaya Argentaria, S.A.; Banco Santander Central Hispano S.A.; Bank of America, N.A.; Bank of New York; Bank of Nova Scotia; Barclays Bank PLC; BNP Paribas; Calyon New York Branch (f/k/a Credit Lyonnais); CapitalSource Finance LLC; Cargill Financial Services International, Inc.; Citibank N.A.; Commerzbank Aktiengesellschaft New York; Deutsche Bank AG; Deutsche Bank & Trust Company of America; Goldman Sachs Credit Partners L.P.; Gulf Stream-Compass CLO 2004-1, Ltd.; Gulf Stream-Compass CLO 2005-1, Ltd.; HSBC Bank USA, National Association; KeyBank National Association; Mizuho Corporate Bannk Ltd., (f/k/a DKB); Morgan Stanley Senior Fundings, Inc.; Societe Generale SA New York; Sumitomo Mitsui Banking Corporation; UFJ Bank Limited; AMMC CLO; Atrium; Callidus Debt Partners CDO Fund I; Galaxy; ING Investment Management; Lincoln National Life Insurance Co.; National City Bank; Octagon Investment Partners; PNC Bank, N.A.; Principal Funding I, LLC; Q Funding III L.P.; R2 Top Hat, Ltd.; Rosemont CLO, Ltd.; Stanfield; SunTrust Bank Altanta; TCW; and Thrivent High Yield.

XV.     <u>State and Other Government Authorities</u>: Minnesota Pollution Control Agency.

XVI.    <u>Potential Interested Parties</u>:  NONE.

XVII.   <u>Major Litigation Parties</u>:  Chase-Orr, Kimberly; Republic Waste Industries, Inc. (a/k/a Autonation); Eaton Corporation; HPI; ICG; Lockheed Martin Corp.; Martinex, Jose Angel Mata; Meritt, James and Bonnie; Paragon/CJR; Phillips, Robert; William P. Edwards; Bentley Rolls-Royce; Jones, David; Land Rover; State of New York; Arnold & Porter; Brown, Jonathan; Invensys; Jonathan B. Taylor, Esq.; and Stewart, Andrew.

11

XVIII. <u>Holders of 5% or More of the Equity Securities of the Company</u>: Dodge & Cox; and State Street Bank and Trust Company.

XIX. <u>Holders of 5% or More of Insurance Notes of the Company</u>:  First Clear; Lehman Brothers, Inc.; Mellon Trust; and Pershing LLC.

XX. <u>Objecting/Adverse Parties/Postpetition Parties</u>:  Avenue Capital Group; Benteler Automotive Corp.; Concordia Advisors LLC; Cyrus Capital Partners; D.E. Shaw and Co.; Flextronics Technology (M) SDN BHD; Mercedes-Benz International, Inc.;  SBC  Communications, Inc.;  Wilmington  Trust  Company;  BASF Corporation; Raiffeisen Kapitalange-Gesellschaft GmbH; Sumitomo Corporation of America; TRW Vehicle Safety Systems, Inc.; Barnes Group, Inc.; Castrol Industrial North America, Inc.; Daewoo International (America) Corp.; Sojitz Corporation of America; Sony Electronics, Inc.; Pullman Bank and Trust Company; and Law Debenture Trust Company of New York.

XXI. <u>Master Service List and 2002 List</u>:  Cerberus Capital Management, L.P.; Jefferies & Company, Inc.; Latham & Watkins LLP; McDermott Will & Emery LLP; Seyfarth Shaw LLP; Solectron Corporation; Veritas Software Corporation; Weil, Gotshal & Manges LLP; America Online, Inc.; Cornell University; Excel Global Logistics, Inc.; Foster Electric USA, Inc.; ICX Corporation; Nova Chemicals, Inc.; Oracle USA, Inc.; SAP America, Inc.; Schunk Graphite Technology; The Proctor & Gamble Company; and Toshiba America Electronica Components, Inc.

19.     Some of our attorneys, in the context of their personal finances, may directly or indirectly own publicly traded securities in the Debtors or certain non-Debtor Interested Parties. We have not listed or inquired about those connections with specificity because we do not believe they have any bearing on our representation of Delphi with respect to the IT Outsourcing Services.[8]

20.     To the best of my knowledge, neither Mayer, Brown, nor its partners, counsel, or associates have any connections to (A) the Assistant U.S. Trustee for Region 2, her staff, or individuals employed by the Office of the United States Trustee for the Southern District of New York, Manhattan and White Plains divisions, or (B) the Bankruptcy Judge presiding over these chapter 11 cases or his chambers staff.

---

[8]     I should note that Mayer, Brown has a long-standing policy prohibiting all of its lawyers and support staff from using confidential information that may come to their attention in the course of their work.  In this regard all Mayer, Brown personnel are subject to certain ethical constraints, including a bar from trading in securities with respect to which they possess confidential information.

21.    Mayer, Brown is one of the world's major law firms and has a diverse client base. Indeed, in calendar year 2005, no single client (including affiliates) accounted for more than 3% of Mayer, Brown's total time billed for that period.  With the exception of Ernst & Young; Bank of America; AT&T; Wal-Mart; Wachovia; General Motors and Merrill Lynch, from the list of Interested Parties that has been searched, no single client referenced in this Declaration accounted for more than 1% of Mayer, Brown's total time billed for 2005 and, of that group, only Ernst & Young, Bank of America and AT&T accounted for more than 1.5% of total billings for 2005.

22.    Supplementing the disclosures set forth in paragraphs 14 through 21 above, Mayer, Brown appears in cases, proceedings, and transactions involving many different professionals, including attorneys, accountants, financial consultants, real estate consultants, and investment bankers, some of which may represent Interested Parties or are themselves Interested Parties. Included among those professionals are Skadden, Shearman, O'Melveny, Simpson Thacher & Bartlett LLP (counsel for the agent under the Debtors' prepetition credit facility), Davis Polk & Wardwell (counsel for the agent under the Debtors' postpetition credit facility), Latham & Watkins (counsel for the Official Committee of Unsecured Creditors), FTI Consulting, Inc. (the Debtors' restructuring and financial advisors), and Rothschild Inc. (the Debtors' financial advisor and investment banker).  As disclosed in paragraph 17 above, certain of those professionals are or have been direct clients of Mayer, Brown in matters unrelated to the Debtors.  In addition, Mayer, Brown has in the past appeared, currently appears, and in the future is likely to appear in matters in which Mayer, Brown represents the same entity, a related entity, or an entity adverse to those represented by other professionals who are Interested Parties or by

13

other professionals that the Debtors have retained or may seek to retain or are otherwise involved in these chapter 11 cases.

23.    These chapter 11 cases involve hundreds of suppliers, vendors, landlords, service providers, employees, creditors, and other parties in interest and entities referenced in Bankruptcy Rule 2014(a).  Mayer, Brown is continuing and will continue to review potential conflicts and connections with those entities in accordance with the Mayer, Brown Disclosure Procedures and will file supplemental disclosures as appropriate.

24.    Based upon the search conducted to date in accordance with the Mayer, Brown Disclosure Procedures, I submit that (A) none of Mayer, Brown's representations or other connections disclosed herein have resulted or will result in any actual or potential conflict of interest herein, which have not already been consented to and/or expressly waived by the Debtors, and (B) neither I, nor Mayer, Brown or any partner, counsel, or associate thereof, insofar as I have been able to ascertain, holds or represents any interest adverse to the Debtors or to their estates with respect to the matters on which Mayer, Brown is to be employed.

### Mayer, Brown's Rates and Billing Practices

25.    Mayer, Brown categorizes its billings by subject matter, in compliance with the applicable guidelines of the Office of the United States Trustee (the "U.S. Trustee Guidelines").  Mayer, Brown acknowledges that its compensation in the Debtor's cases is subject to approval of this Court in accordance with applicable law and court rules and orders, including Section 330 of the Bankruptcy Code, Bankruptcy Rule 2016, and the U.S. Trustee Guidelines.

26.    Mayer, Brown's hourly rates are set at a level designed to fairly compensate Mayer, Brown for the work of its attorneys, paralegals and other paraprofessionals, and to cover fixed and routine overhead expenses.  Hourly rates vary with the experience and seniority of the individuals assigned and may be adjusted by Mayer, Brown from time to time.  Mayer, Brown's

14

hourly rates for the lawyers expected to provide the IT Outsourcing Services range from $580 to $260, $225 for paralegals and $40 for most other paraprofessionals.  As set forth in the Engagement Letter (attached as <u>Exhibit 1</u> to the Application), these hourly rates will remain in effect until the earlier of the completion of the ITO Project (as defined therein) and January 7, 2007.[9]  As further set forth in the Engagement Letter, Mayer, Brown has agreed to provide a 5% discount of fees for the first $500,000 of fees and a 10% discount for fees that exceed $500,000.

27.    No promises have been received by Mayer, Brown or any of its affiliates as to payment or compensation in connection with these cases other than in accordance with the Bankruptcy Code, Bankruptcy Rules, Local Rules, U.S. Trustee Guidelines, and orders of this Court.  Mayer, Brown has neither shared, nor agreed to share, with any person other than partners and employees of Mayer, Brown, any compensation or reimbursements to be received by Mayer, Brown in connection with its services rendered in these cases.

28.    I acknowledge that all amounts paid to Mayer, Brown during these chapter 11 cases are subject to final allowance by this Court.  In the event that any fees paid or expenses reimbursed to Mayer, Brown during these chapter 11 cases are disallowed, those amounts will be disgorged by Mayer, Brown and returned to the Debtors or as otherwise ordered by the Court.

29.    By reason of the foregoing, I believe that Mayer, Brown is eligible for employment and retention by the Debtors pursuant to Section 327(e) of the Bankruptcy Code and the applicable Bankruptcy Rules and Local Bankruptcy Rules.

30.    The foregoing constitutes the Declaration of Mayer, Brown pursuant to Section 329 of the Bankruptcy Code and Rules 2014(a) and 2016(b) of the Bankruptcy Rules.

---

[9]    With respect to IT Outsourcing Services, if any, provided after January 1, 2007, Mayer, Brown reserves the right to adjust its hourly rates in accordance with the firm's annual, general adjustment to its attorneys' and paraprofessional rates as may be made thereafter.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on:  April 21, 2006
              Chicago, Illinois

                                        Mayer, Brown, Rowe & Maw LLP


                                        /s/ Paul J.N. Roy
                                        Paul J.N. Roy

<u>Exhibit A</u>

## Conflicts Entities for Project Motown

I. **Domestic Subsidiaries**

1.  AMBRAKE Corporation (Delaware)
2.  Ambrake GP, Inc. (Kentucky)
3.  Ambrake Manufacturing, Ltd. (Kentucky)
4.  ASEC Manufacturing General Partnership (Delaware)
5.  ASEC Sales General Partnership (Delaware)
6.  Aspire, Inc. (Michigan)
7.  CEI Co., Ltd. (Tennessee)
8.  Delco Electronics LLC (Delaware)
9.  Delco Electronics Overseas Corporation (Delaware)
10. Delphi Automotive Systems - Ashimori LLC (Michigan)
11. Delphi Automotive Systems (Holding), Inc. (Delaware)
12. Delphi Automotive Systems Global (Holding), Inc. (Delaware)
13. Delphi Automotive Systems Human Resources LLC (Delaware)
14. Delphi Automotive Systems International, Inc. (Delaware)
15. Delphi Automotive Systems Korea, Inc. (Delaware)
16. Delphi Automotive Systems LLC (Delaware)
17. Delphi Automotive Systems Overseas Corporation (Delaware)
18. Delphi Automotive Systems Risk Management Corp. (Delaware)
19. Delphi Automotive Systems Services LLC (Delaware)
20. Delphi Automotive Systems Tennessee, Inc. (Delaware)
21. Delphi Automotive Systems Thailand, Inc. (Delaware)
22. Delphi China LLC (Delaware)
23. Delphi Connection Systems (California)
24. Delphi Corporation
25. Delphi Diesel Systems Corp. (Delaware)
26. Delphi Electronics (Holding) LLC (Delaware)
27. Delphi Foreign Sales Corporation (Virgin Islands)
28. Delphi Furukawa Wiring Systems LLC (Delaware)
29. Delphi Integrated Service Solutions, Inc. (Michigan)
30. Delphi International Holdings Corp. (Delaware)
31. Delphi International Services, Inc. (Delaware)
32. Delphi Liquidation Holding Company
33. Delphi LLC (Delaware)
34. Delphi Mechatronic Systems, Inc. (Delaware)
35. Delphi Medical Systems Colorado Corporation (Colorado)
36. Delphi Medical Systems Corporation (Delaware)
37. Delphi NY Holdings Corporation (New York)
38. Delphi Receivables LLC (Delaware)
39. Delphi Services Holding Corporation (Delaware)
40. Delphi Technologies, Inc. (Delaware)
41. Delphi Trust I (Delaware)

42. Delphi Trust II (Delaware)
43. Delphi Trust III (Delaware)
44. Delphi Trust IV (Delaware)
45. DREAL, Inc. (Delaware)
46. EnerDel, Inc. (Delaware)
47. Environmental Catalysts, LLC (Delaware)
48. Exhaust Systems Corporation (Delaware)
49. HE Microwave LLC (Delaware)
50. InPlay Technologies, Inc. (Nevada)
51. MobileAria, Inc. (Delaware)
52. Packard Hughes Interconnect Company (Delaware)
53. PBR Knoxville L.L.C. (Delaware)
54. Specialty Electronics International Ltd. (Virgin Islands)
55. Specialty Electronics, Inc. (South Carolina)
56. Delphi Medical Systems Texas Corporation

## II. Foreign Subsidiaries

57. Alambrados y Circuitos Eléctricos, S.A. de C.V. (Mexico)
58. Arcomex S.A. de C.V. (Mexico)
59. Arneses Electricos Automotrices, S.A. de C.V. (Mexico)
60. AS Catalizadores Ambientales S.A. de C.V. (Mexico)
61. ASEC Manfacturing (Thailand) Ltd. (Thailand)
62. ASEC Private Limited (India)
63. Ashimori Industry Co., Ltd. (Japan)
64. Autoensambles y Logistica, S.A. de C.V. (Mexico)
65. Beijing Delphi Technology Development Company, Ltd. (Peoples Republic of China)
66. Beijing Delphi Wan Yuan Engine Management Systems Company, Ltd. (Peoples Republic of China)
67. BGMD Servicos Automotivos Ltda. (Brazil)
68. BlueStar Battery Systems International Corp. (Canada)
69. Bujias Mexicanas, S.A. de C.V. (Mexico)
70. Cablena, S.L (Spain)
71. Calsonic Harrison Co., Ltd. (Japan)
72. Centro Técnico Herramental, S.A. de C.V. (Mexico)
73. Closed Joint Stock Company PES/SCC (Russian Federation)
74. Condura, S. de R.L. (Mexico)
75. Controladora Chihuahuense, S. de R.L. de C.V. (Mexico)
76. Controladora de Alambrados y Circuitos Eléctricos, S. de R.L. de C.V. (Mexico)
77. Controladora de Alambrados y Circuitos, S. de R.L. de C.V. (Mexico)
78. Controladora de Rio Brave, S. de R.L. de C.V. (Mexico)
79. Controladora Vesfron, S. de R.L. de C.V. (Mexico)
80. Cordaflex Espana, S.A. (Spain)
81. Cordaflex, S.A. de C.V. (Mexico)
82. Daehan Electronics Yantai Co., Ltd. (Peoples Republic of China)

83. Daesung Electric Co., Ltd. (Korea)
84. Daewoo Motor Co., Ltd. (Korea)
85. Del Tech Co., Ltd. (Korea)
86. Delphi (China) Technical Centre Co. Ltd. (Peoples Republic of China)
87. Delphi Administración, S.A. de C.V. (Mexico)
88. Delphi Alambrados Automotrices, S.A. de C.V. (Mexico)
89. Delphi Automotive Systems - Portugal S.A. (Portugal)
90. Delphi Automotive Systems (China) Holding Company Limited (Peoples Republic of China)
91. Delphi Automotive Systems (Netherlands) B.V. (Netherlands)
92. Delphi Automotive Systems (Thailand) Ltd. (Thailand)
93. Delphi Automotive Systems Australia Ltd. (Australia)
94. Delphi Automotive Systems Cinq SAS (France)
95. Delphi Automotive Systems Deutschland Verwaltungs GmbH (Federal Republic of Germany)
96. Delphi Automotive Systems do Brasil Ltda. (Brazil)
97. Delphi Automotive Systems Espana S.L. (Spain)
98. Delphi Automotive Systems Holding GmbH (Austria)
99. Delphi Automotive Systems Huit SAS (France)
100. Delphi Automotive Systems Japan, Ltd. (Japan)
101. Delphi Automotive Systems Limited Sirketi (Turkey)
102. Delphi Automotive Systems Luxembourg S.A. (Luxembourg)
103. Delphi Automotive Systems Maroc (Morocco)
104. Delphi Automotive Systems Neuf SAS (France)
105. Delphi Automotive Systems Philippines, Inc. (Philippines)
106. Delphi Automotive Systems Private Ltd. (India)
107. Delphi Automotive Systems Singapore Investments Pte. Ltd. (Singapore)
108. Delphi Automotive Systems Singapore Pte Ltd. (Singapore)
109. Delphi Automotive Systems Sweden AB (Sweden)
110. Delphi Automotive Systems UK Limited (England and Wales)
111. Delphi Automotive Systems Vienna GmbH (Austria)
112. Delphi Automotive Systems, S.A. de C.V. (Mexico)
113. Delphi Automotive Systems/Ashimori de Mexico, S.A. de C.V. (Mexico)
114. Delphi Automotive Systems-Portugal S.A. (Portugal)
115. Delphi Belgium N.V. (Belgium)
116. Delphi Cableados, S.A. de C.V. (Mexico)
117. Delphi Calsonic Compressors, S.A.S. (France)
118. Delphi Canada Inc. (Ontario)
119. Delphi Catalyst South Africa (Proprietary) Limited (South Africa)
120. Delphi Connection Systems - Tijuana, S.A. de C.V. (Mexico)
121. Delphi Controladora, S.A. de C.V. (Mexico)
122. Delphi Czech Republic, k.s. (Czech Republic)
123. Delphi Daesung Wuxi Electronics Co., Ltd. (Peoples Republic of China)
124. Delphi de Mexico, S.A. de C.V. (Mexico)

125.  Delphi Delco Electronic Systems Suzhou Co., Ltd. (Peoples Republic of China)
126.  Delphi Delco Electronics de Mexico, S.A. de C.V. (Mexico)
127.  Delphi Delco Electronics Europe GmbH (Federal Republic of Germany)
128.  Delphi Deutschland GmbH (Federal Republic of Germany)
129.  Delphi Deutschland Technologies GmbH (Federal Republic of Germany)
130.  Delphi Diesel Body Systems Mexico, S.A. de C.V. (Mexico)
131.  Delphi Diesel Systems Corporativo IDSA, S.A. de C.V. (Mexico)
132.  Delphi Diesel Systems do Brasil Ltda. (Brazil)
133.  Delphi Diesel Systems France SAS (France)
134.  Delphi Diesel Systems Korea Ltd. (Korea)
135.  Delphi Diesel Systems Limited (England and Wales)
136.  Delphi Diesel Systems Pakistan (Private) Limited (Pakistan)
137.  Delphi Diesel Systems Pension Trustees Limited (England and Wales)
138.  Delphi Diesel Systems S.L. (Spain)
139.  Delphi Diesel Systems Service Mexico, S.A. de C.V. (Mexico)
140.  Delphi Electronic Suzhou Co. Ltd. (Peoples Republic of China)
141.  Delphi Ensamble de Cables y Componentes, S. de R.L. de C.V. (Mexico)
142.  Delphi France Holding SAS (France)
143.  Delphi France SAS (France)
144.  Delphi Harrison Calsonic, S.A. (France)
145.  Delphi Holding GmbH (Austria)
146.  Delphi Holding Hungary Asset Management Limited Liability Company (Hungary)
147.  Delphi Holdings Luxembourg S.ar.l. (Luxembourg)
148.  Delphi Insurance Limited (Ireland)
149.  Delphi Interior Systems de Mexico, S.A. de C.V. (Mexico)
150.  Delphi International Holdings Corporation Luxembourg S.C.S. (Luxembourg)
151.  Delphi Italia Automotive Systems S.r.l. (Republic of Italy)
152.  Delphi Korea Corporation (Korea)
153.  Delphi Lockheed Automotive Limited (England and Wales)
154.  Delphi Lockheed Automotive Pension Trustees Limited (England and Wales)
155.  Delphi Otomotiv Sistemleri Sanayi ve Ticaret Anonim Sirket (Turkey)
156.  Delphi Packard Austria GmbH & Co. KG (Austria)
157.  Delphi Packard Electic Sielin Argentina S.A. (Argentina)
158.  Delphi Packard Electric (Malaysia) Sdn. Bhd. (Malaysia)
159.  Delphi Packard Electric Ceska Republika, S.R.O. (Czech Republic)
160.  Delphi Packard Electric Systems Company Ltd. (Peoples Republic of China)
161.  Delphi Packard España, SLU (Spain)
162.  Delphi Packard Hungary Kft (Hungary)
163.  Delphi Packard Romania SRL (Romania)
164.  Delphi Poland S.A. (Poland)
165.  Delphi Polska Automotive Systems Sp. z.o.o. (Poland)
166.  Delphi Saginaw Lingyun Drive Shaft Co., Ltd. (Peoples Republic of China)
167.  Delphi Saginaw Steering Systems UK Limited (England and Wales)

168. Delphi Shanghai Dynamics and Propulsion Systems Co. Ltd. (Peoples Republic of China)
169. Delphi Sistemas de Energia, S.A. de C.V. (Mexico)
170. Delphi Slovensko s.r.o. (Slovak Republic)
171. Delphi Tychy Sp. z.o.o. (Poland)
172. Delphi-Calsonic Hungary Manufacturing Limited Liability Company (Hungary)
173. Delphi-TVS Diesel Systems Ltd. (India)
174. DEOC Pension Trustees Limited (England and Wales)
175. Diavia Aire, S.A. (Spain)
176. Electrotecnica Famar S.A.C.I.I.E. (Argentina)
177. Famar do Brasil Comercio e Representacao Ltda. (Brazil)
178. Famar Fueguina, S.A. (Argentina)
179. FUBA Automotive GmbH & Co. KG (Federal Republic of Germany)
180. Gabriel de Mexico, S.A. de C.V. (Mexico)
181. Grundig Car InterMedia System GmbH (Federal Republic of Germany)
182. Grundig Sistemas de Electronica Lda., Portugal (Portugal)
183. Holdcar S.A. (Argentina)
184. Inmobiliaria Marlis, S.A. (Mexico)
185. Inmuebles Wagon, S.A. (Mexico)
186. Interessengemeinschaft fur Rundfunkschutzrechte GmbH Schutzrechtsverwertung & Co. KG (Federal Republic of Germany)
187. Katcon, S.A. de C.V. (Mexico)
188. KDAC (Thailand) Company Limited (Thailand)
189. KDS Company, Ltd. (Korea)
190. Korea Delphi Automotive Systems Corporation (Korea)
191. Korea Technology Bank Network (Korea)
192. Liverpool Branch of Delco Electronics Overseas Corporation
193. Mecel AB (Sweden)
194. Moscow Branch of Delphi Automotive Systems Overseas Corporation
195. Noteco Comércio e Participacoes Ltda. (Brazil)
196. NSK Ltd. (Japan)
197. On Se Telecom Co. Ltd. (Korea)
198. P.T. Delphi Automotive Systems Indonesia (Indonesia)
199. Packard Korea Incorporated (Korea)
200. Productos Delco de Chihuahua, S.A. de C.V. (Mexico)
201. Promotora de Partes Electricas Automotrices S.A. de C.V. (Mexico)
202. PROSTEP AG (Federal Republic of Germany)
203. Proveedora de Electricidad de Occidente, S.A. de C.V. (Mexico)
204. Quingdao Daesung Electronic (Peoples Republic of China)
205. Rio Bravo Eléctricos, S.A. de C.V. (Mexico)
206. Shanghai Delco Electronics & Instrumentation Co., Ltd. (Peoples Republic of China)
207. Shanghai Delphi Automotive Air-conditioning Systems Co., Ltd. (Peoples Republic of China)
208. Shanghai Delphi Emission Control Systems Company, Ltd. (Peoples Republic of China)

209.  Shanghai-Delphi Automotive Door Systems Co., Ltd. (Peoples Republic of China)
210.  Shengyang Huali Automotive Air-conditioning Co. Ltd. (Peoples Republic of China)
211.  Sistemas Electricos y Conmutadores, S.A. de C.V. (Mexico)
212.  Speciality Electronics (Singapore) Pte Ltd. (Singapore)
213.  Taiwan Representative Office of Delphi Automotive Systems International, Inc. (Peoples Republic of China)
214.  TECCOM GmbH (Federal Republic of Germany)
215.  TecDoc Information Systems GmbH (Federal Republic of Germany)
216.  Termoelectrica del Golfo, S. de R.L. de C.V. (Mexico)
217.  Thailwil, Switzerland Branch of Delphi International Services, Inc.
218.  Unterstutzungsgesellschaft der Kabelwerke Reinshagen GmbH (Federal Republic of Germany)
219.  Wuhan Shenlong Automotive Air-conditioning Co. Ltd. (Peoples Republic of China)
220.  Yeon Kyung Electronics Co., Ltd. (Korea)

## III.    Joint Owners of Subsidiaries

221.  Akebono Corporation - North America
222.  Ashimori America, Inc.
223.  Calsonic International Inc.
224.  Calsonic Corporation
225.  Dunlap, Robert Terren
226.  Enerl, Inc.
227.  Furukawa Electric North America APD, Inc.
228.  Kalkowitz, Dan
229.  Mayfield Fund
230.  O'Gara, Thomas M.
231.  Palm, Inc.
232.  PBR Tennessee, Inc.
233.  Raytheon Company
234.  Royce & Associates
235.  RS Investments Management
236.  Van Zeeland, Anthony J.

## IV.    Directors, Officers and Key Executives

237.  Atul Pasricha
238.  Bernd Gottschalk
239.  Bette M. Walker
240.  Bradley J. Maggart
241.  Brian Eichenlaub
242.  Choon T. Chon
243.  Craig G. Naylor
244.  Cynthia A. Niekamp
245.  David A. Burgner
246.  David B. Wohleen

247. David C. Barbeau
248. David N. Farr
249. Diane L. Kaye
250. Doug Gruber
251. Doug Parnell
252. Earl Diem
253. Edson Brasil
254. F. Timothy Richards
255. Francisco A. (Frank) Ordoñez
256. Gary Abusamra
257. Gregory D. Kochendorfer
258. Guy C. Hachey
259. James A. Bertrand
260. James A. Spencer
261. James P. Whitson
262. Jeffrey J. Owens
263. John D. Opie
264. John D. Sheehan
265. John Guevara
266. John P. Arle
267. Jonathan B. DeGaynor
268. Jose Avila
269. Karen L. Healy
270. Kevin M. Butler
271. Logan G. Robinson
272. Lucia V. Moretti
273. Mark C. Lorenz
274. Mark R. Weber
275. Mark Shasteen
276. Mark Theriot
277. Michael Simon
278. Oscar de Paula Bernardes Neto
279. R. David Nelson
280. Robert H. Brust
281. Robert J. Remenar
282. Robert Morgan
283. Robert S. (Steve) Miller Jr.
284. Rodney O'Neal
285. Roger S. Penske
286. Ronald M. Pirtle
287. Shoichiro Irimajiri
288. Virgis W. Colbert
289. Volker J. Barth
290. William Wrubel

291.    A.E. Billis
292.    A.N. Gardner
293.    Alan S. Dawes
294.    Allen D. Flowers
295.    Brian P. O'Neill
296.    Burton J. Valanty
297.    Charu Manocha
298.    Dae Un Lee
299.    David J. Jones
300.    Denise Olbrecht
301.    Derek Kolano
302.    Derrick M. Williams
303.    Donald L. Runkle
304.    Elizabeth M. Schwarting
305.    F.H. Cooke
306.    Faris Alsagoff
307.    Frank A. Ordonez
308.    Frank Gango
309.    Gabor Janos Deak
310.    Gail K. Miller
311.    Haim Feigenbaum
312.    Ian Scott
313.    J.E. Jackson
314.    J.L. Williamson
315.    J.T. Battenberg III
316.    James W. Borzi
317.    Jeffery M. Krause
318.    Jeffery Parsons
319.    Jerry Sonnonstine
320.    Jimmy C. Chen
321.    Jimmy L. Funke, Esq.
322.    Jinya Chen Esq.
323.    John A. Passante
324.    John G. Blahnik
325.    John M. Fuerst
326.    John Short
327.    Jose Maria Alapont
328.    Joseph P. Gumina
329.    Karen McClain
330.    Kevin R. Heigel
331.    Laura Marion
332.    Lothar Veeser
333.    Majorie Harris Loeb
334.    Marc C. McGuire, Esq.

335.    Maria Conor-Freeman
336.    Martin Conlon
337.    Mary A. Gray
338.    Max Rogers
339.    Michael A. Shader
340.    Michael Beckett
341.    Michael T. Reagan
342.    Mike Balsei
343.    Mike Rayne
344.    Milan E. Belans II
345.    Myung Hwan Yoon
346.    Nick Hotchkin
347.    Pamela M. Geller
348.    Patricia C. Sueltz
349.    Paul S. Milburn
350.    Peter H. Janak
351.    Phillippe Desnos
352.    R. Scott Bailey
353.    R.A. Young
354.    R.E. Hathaway
355.    Rainer Hermeling
356.    Richard A. Franzi
357.    Richard Brown
358.    Richard E. Erwin
359.    Richard J. Zablocki
360.    Richard Jok
361.    Robert H. Sparks
362.    Robert Katz, Esq.
363.    Roberto Edwin Berry
364.    Ronald E. Jobe
365.    Russel W.H. Bailey
366.    Sandeep Manocha
367.    Sarah J. Salrin
368.    Sean P. Corcoran
369.    Shuji Hayashida
370.    Stephen L. Davey
371.    Steve D. Clemons
372.    Susan A. McLaughlin
373.    Theodore H. Lewis
374.    Thomas D. Goodman
375.    Thomas N. Twomey
376.    Timothy J. Knutson
377.    William D. Cornwell
378.    William Steven Bowers

379. Wolfgang Humbeck
380. Andrew Brown, Jr.
381. Arthur Russell Jackson
382. Carrie Anderson
383. Christopher P. Arkwright
384. David Knill
385. David Maschoff
386. F. Thomas Springer
387. F. Thomas Sprunger
388. Fred J. Bellar III
389. Gregory R. Richards
390. Henry A. Sullivan
391. James H. Hindels
392. Jeffery M. Overly
393. Jeffery R. Chadwick
394. John A. Jaffurs
395. John Robert Roland, Jr.
396. Linos Jacovides
397. Mark S. Kamischke
398. Michael L. Schuppe
399. Milton R. Scheffler
400. Pam Pitsenbarger
401. Patrick Griffin
402. Robert C. Walker
403. Samuel H. Hall Jr.
404. Timothy G. Forbes
405. David Sherbin
406. Robert Dellinger

V.    **Customers**

407. Aftermarket Technology Corp.
408. American Axle and Manufacturing Holdings Inc.
409. Arvinmeritor Inc.
410. AZ Automotive Corp.
411. Benteler Industries, Inc.
412. BMW
413. Caterpillar Inc.
414. Collins & Aikman Corp.
415. Cummins Inc.
416. Daewoo Motor
417. Daijatsu
418. DaimlerChrysler Corp., US
419. DBM Technologies, Inc.
420. Delphi Allied Sales

421. Denso
422. Fiat Group
423. Ford Motor Co.
424. Fuji Heavy Industries
425. General Motors Corp.
426. GM Powertrain
427. GMIO
428. GMNA
429. GMNAO
430. GMSPO
431. Harley Davidson
432. Honda of America Mfg., Inc.
433. Hyundai Motor America
434. Isuzu Group
435. Kautex Textron
436. Lear Corporation Automotive Systems
437. Intier Automotive Inc.
438. Magna International Inc.
439. Mitsubishi Motors of America Credit Co.
440. Modatek
441. Navistar International Corporation
442. Nissan North America Inc.
443. Paccar
444. Power & Signal Group
445. Promotora
446. PSA Group
447. Renault
448. Rover
449. Suzuki Group
450. Takata
451. Tenneco, Inc.
452. Toyota Motor Credit Corporation
453. TRW
454. Volvo Truck
455. VW Group
456. Yorozu
457. American Alliance of Service Providers (AASP)
458. Agfa Corporation
459. Agfa-Gevaert N.V.
460. Agilent Tech. (M) SDN BHD
461. Aksys, Ltd.
462. American Discount Supply, Inc.
463. Applied Biosystems
464. Automotive Training Schools

465.  Brite Smile
466.  Cambrex Bio Science
467.  Cami Automotive Inc.
468.  Cardinal Health
469.  Caterpillar Engine Systems
470.  Coinstar, Inc.
471.  Elgin Industries
472.  Everest Biomedical Instruments
473.  ForHealth Technologies, Inc.
474.  Haemoscope Corporation
475.  Helicor, Inc.
476.  Hewlett-Packard Co.
477.  HP Financial Services
478.  Independent Auto Parts (IAPA)
479.  Inogen
480.  INO Therapeutics
481.  InterAmerican Trade Corp.
482.  International Truck & Engine
483.  John Deere
484.  Johnson Controls Inc. (JCI)
485.  Key Safety Systems, Inc.
486.  KLA Tencor Corp.
487.  KS Centoco
488.  L-3 Communications
489.  LeftHand Networks
490.  Matco Tools
491.  Medical Simulation Corporation
492.  Medrad Inc.
493.  Medtronic Navigation
494.  Melling Tool Company
495.  Michael Baker, Inc.
496.  National Auto Radiator
497.  Niton Corporation
498.  NuVasive, Inc.
499.  Ophthonix, Inc.
500.  Particle Measuring Systems, Inc.
501.  Point 5 Technologies
502.  Precision Turbo & Engine Rob.
503.  Rescue Technology
504.  Reviva Labs
505.  S.E. Power Systems Orlando
506.  StorageTek
507.  Sun Refining & Marketing
508.  Sunrise Medical HHG, Inc./Sunrise Medical Ltd.

509.    Tamsco, Inc.
510.    Technologia Modificada SA de Caterpillar
511.    Tire Industry Foundation
512.    USA Technologies, Inc.
513.    Verilink Corporation
514.    Volvo Do Brazil Veiculos Ltda.
515.    Volvo Parts North America, Inc.
516.    Wheeler Brothers, Inc.

## VI.    **Insurance Providers**

517.    ACE American Insurance Company
518.    AIG/American International Group, Inc.
519.    Allied World Assurance Company, AWAC
520.    American International Companies
521.    AON (Bermuda) Limited
522.    AON Risk Services of Illinois
523.    AON Risk Services, Inc.
524.    Blue Cross Blue Shield of Michigan
525.    CIGNA Behavioral Health
526.    CIGNA Corp.
527.    Cole Managed Vision
528.    David Vision
529.    Delta Dental Plans Association
530.    Green Shields Canada
531.    Health Solutions
532.    Health Plus
533.    Hewitt Associates
534.    JLT Services
535.    Lexington Insurance Companies
536.    M-Plan
537.    Medco Health Solutions Inc.
538.    The Medstat Group Inc.
539.    MetLife
540.    National Foot Care
541.    NCQA (National Committee for Quality Assurance)
542.    New York Workers Compensation Board
543.    Scantron
544.    SHPPS/Health International
545.    Starr Excess Liability Insurance Intl. Limited
546.    St. Paul Fire & Marine Insurance Compan
547.    St. Paul (Bermuda), Ltd.
548.    TGI Direct
549.    Towers Perrin
550.    United Health Group

551. University of Michigan
552. Value Behavioral Health (Value Options)
553. Zurich American Insurance Company
554. ACE USA
555. AIG World Source
556. Allianz of America Corporation
557. American International Specialty Lines Insurance Company
558. Bermuda Markets
559. CAN Insurance Services (CIS)
560. GEP
561. Gulf Underwriters Insurance Company
562. Hanover Inc.
563. HDI Insurance Company
564. IRI
565. Liberty Mutual Insurance Company
566. Lloyds of London
567. Marsh USA, Inc. (Broker)
568. Tokio Marine
569. XL Global Reinsurance Company, Ltd.
570. AIG Excess Causualty North America (Lexington)
571. AIU, Inc.
572. American Home Assurance Co. (AIMA)
573. AON UK
574. Arch Insurance Group Inc.
575. AXIS
576. Canawill, Inc.
577. Chubb Custom Insurance
578. Continental Casualty Co. (C.N.A)
579. Federal Ins. Co. (Chubb)
580. Great American Insurance Co.
581. Hanseatic Insurance Company (Bermuda) Ltd.
582. Ins. Co. of the State of Pennsylvania (AIG)
583. Marsh/Pentastar
584. National Union Fire Ins. Co. (AIG)
585. Pacific Employers Insurance Co. (ACE USA)
586. Steadfast Insurance Company (Zurich)
587. Swiss Re Insurance Company Ltd.
588. Twin City Fire Insurance (Hartford)
589. United State Aviation Insurance Group (USAIG)
590. US Specialty/HCC
591. ACE Insurance Co.
592. AIG WorldSource
593. Nation Union (AIG)
594. Amerada Hess Corporation

595. ANR Pipeline Company
596. Columbia Gas Transmission Corp.
597. Columbia Gas of Ohio
598. Coral Energy Resources, L.P.
599. East Ohio Gas Co.
600. Indiana Gas Company
601. Panhandle Eastern Pipeline Company
602. Seminole Energy Services
603. Sequent Energy Services
604. The Hartford
605. UGI Energy Servies
606. Union Gas System, Inc.
607. Vectren Energy

**VII.**  **Vendors**

608. 3M Company
609. A Agrati SPA
610. Ab Skf
611. Abc Group Inc.
612. Acome Societe Cooperative De Produc
613. Advanced Micro Devices
614. Affinia Group Holdings Inc.
615. Aluminum Company of America, Inc. (ALCOA)
616. Alpine Group Inc.
617. Alps Electric Co. Ltd.
618. American President Lines Ltd.
619. Amtek Engineering Ltd.
620. Analog Devices Inc.
621. Android Industries LLC
622. Aplicaciones De Metales Sinterizado
623. Assembleon America Inc.
624. Autocam Corp.
625. Autoliv Asp Inc.
626. Beiersdorf AG
627. Binter SA
628. Boco Pty Ltd.
629. Bosch, Robert Stiftung Gmbg
630. Bosch Automotive Systems Corp.
631. Calsonic Kansei Corp.
632. Calsonic Kansei North America, Inc.
633. Carlisle Companies Inc.
634. Carringworth Ltd.
635. Centra Inc.
636. Cie Automotive Sa

| | |
|---|---|
| 637. | Clarion Corp. of America |
| 638. | Contech |
| 639. | Continental Gummi-werke AG |
| 640. | Daewoo Heavy Industry America |
| 641. | Dayco Products LLC |
| 642. | DBG Tool & Machine |
| 643. | Deloitte & Touche |
| 644. | Denso International America, Inc. |
| 645. | Dhl Danzas Air & Ocean |
| 646. | Direct Sourcing Solutions |
| 647. | DMC 2 Canada Corporation |
| 648. | Dura Automotive Systems Inc. |
| 649. | Eco-Bat America LLC |
| 650. | Electronic Data Systems Corporation (EDS) |
| 651. | Engelhard Corporation |
| 652. | Essex Group Inc. |
| 653. | Feintool International Holding |
| 654. | Fountain Construction |
| 655. | Freescale Semiconductor Inc. |
| 656. | Furukawa Electric Co. Ltd., the |
| 657. | General Electric Capital Corporation |
| 658. | General Electric Co. Inc. |
| 659. | Georg Fischer AG |
| 660. | Great Lakes Tape Corp. |
| 661. | Green, Ernie Industries Inc. |
| 662. | Groupe Rencast |
| 663. | Hitachi Automotive Products, Ltd. |
| 664. | Hitachi Ltd. |
| 665. | Hitachi Chemical Asia Pacific |
| 666. | HSS LLC |
| 667. | Illinois Tool Works Inc. |
| 668. | Impala Platinum Holdings Ltd. |
| 669. | INA Bearing Group |
| 670. | Infineon Technologies AG |
| 671. | Intermet Corporate |
| 672. | ISI of Indiana Inc. |
| 673. | Johann Albert Freund |
| 674. | Kataman Metals Inc. |
| 675. | Kyocera |
| 676. | Leaseway Transfer Pool |
| 677. | Leopold Kostal GmbH & Co. Kg |
| 678. | Lexington Connector Seals |
| 679. | Linamar Corp. |
| 680. | Littlefuse Inc. |

681.    LS Cable Ltd.
682.    Madison-kipp Corp.
683.    Mahle GmbH
684.    Markin Tubing
685.    Metaldyne Corporation
686.    Methode Electronics Inc.
687.    Metropolitan Life Ins. Co.
688.    Microsoft Services
689.    Minebea Co. Ltd.
690.    Molex Inc.
691.    Motorola Inc.
692.    Motorola Automotive
693.    Multitronics Inc.
694.    National Semiconductor Corporation
695.    NEC Electronics Inc.
696.    Nec Corp.
697.    Niles Co. Ltd.
698.    North American Operations
699.    NSK Ltd.
700.    Ogura Clutch Co. Ltd.
701.    Olin Corp.
702.    Paid Prescriptions LLC
703.    Pam Dedicated Inc.
704.    Panasonic Automotive Systems Company
705.    PBR Automotive USA LLC
706.    PBR Columbia LLC
707.    PEK Co. Ltd.
708.    Philips Semiconductors
709.    PriceWaterhouseCoopers LLP
710.    Progressive Moulded Products Ltd.
711.    Qek Global Solutions
712.    RSR Corporation
713.    Ryder Integrated Logistics, Inc.
714.    Sansho Giken Co. Ltd.
715.    Sas Comte
716.    Securitas Security
717.    Sequa Corp.
718.    Setech Inc.
719.    SGS Thomson
720.    Siemens Automotive Ltd.
721.    Siemens AG
722.    Societe Industrielle De Sonceboz SA
723.    SPX Corporation
724.    Steel Technologies, Inc.

725.  Stoba Praezisionstechnik GmbH & Co.
726.  Syncron-Eifler Ipari Es Kereskedelm
727.  Tata America Intl. Corp.
728.  Tech Central
729.  Texas Pacific Group Ltd.
730.  Textron Inc.
731.  Thyssenkrupp AG
732.  Tokico Ltd.
733.  Torrington Co.
734.  Toyo Clutch Co. Inc.
735.  TRW Automotive
736.  TT Electronics PLC
737.  Tyco International Ltd.
738.  Tyco Electronics Corp.
739.  Umicore Sa
740.  Unigraphics Solutions Inc.
741.  US Steel Corporation
742.  UVA Machine Company
743.  Vireo Sa
744.  Vallourec
745.  Vanguard Distributors Inc.
746.  Viasystems Canada Inc.
747.  Visteon Automotive Systems
748.  Wanxiang Group Corp.
749.  Waupaca Foundry Inc.
750.  Yazaki Corp.
751.  ADC - Anderson Diecast
752.  Bayer AG
753.  Blackhawk Automotive Plastics Inc.
754.  Circle Plastics Products Inc.
755.  Equistar Chemicals LP
756.  Federal Mogul Corp.
757.  Georgia Gulf Corp.
758.  GKN PLC
759.  Hayes Lemmerz International Inc.
760.  Henkel KGAA
761.  I&W Industries LLC
762.  Intec Group Inc., The
763.  International Wire Group, Inc. (Omega)
764.  Key Plastics LLC
765.  M&Q Plastic Products Inc.
766.  Martinrea International Inc.
767.  Meadville Forging Co.
768.  Michigan ARC Products

769. Microchip Technology Inc.
770. Mittal Steel Company N.U.
771. MTI Technology Corp.
772. National Rivet & MFG Co.
773. Norandal
774. Norilsk Nickel
775. Northern Engraving Corp.
776. Olympic Coaters
777. Palmer Holland Inc.
778. Perfection Spring
779. PFG
780. Photo Circuits
781. Pioneer INDL Components
782. Plymouth Rubber Company
783. PMP
784. Premier Trim LLC
785. PTC Alliance Corp.
786. Republic Engineered Products, Inc.
787. Rotor Clip Company, Inc.
788. Seiko Epson Corp.
789. Sharp Electronics Corporation
790. Shell Oil
791. SKF USA, Inc.
792. Spartech Corp.
793. ST Microelectronics NV
794. Swatch Group
795. SwiTec
796. Tower Automotive Inc.
797. Trico Products Corporation
798. US Aeroteam
799. Parts Finishing Group Inc. (Vassar)
800. Willow Hill Industries
801. ARC Automotive Inc.
802. Texas Instruments Inc.
803. CE Communications, Inc.
804. Hyatt Legal Plans, Inc.
805. SIRVA Relocation LLC
806. EI Dupont de Nemours & Co. Inc.
807. Freudenberg & Co. KG
808. Timken Co., Inc.
809. Best Buy Co. Inc.
810. Circuit City Stores Inc.
811. Daihatsu
812. Napa Dist Center

813.    Saturn Corp.
814.    Standard Motor Products Inc.
815.    Wal-Mart Stores CE
816.    XM Emall LLC
817.    Federal Environmental Protection Agency
818.    Fraccionadora Industrial del Norte, S.A. de C.V.
819.    GMACCM Asset Management de Mexico
820.    Hub Group
821.    Michigan Department of Environmental Quality
822.    New Jersey Environmental Protection Agency
823.    Ohio Environmental Protection Agency
824.    Orange County Health Care Agency
825.    ProLogis-Juarez Investment, LLC
826.    Reliance Insurance Company
827.    RLI Surety
828.    Safeco Insurance Co.
829.    State of Alabama Dept of Industrial Relations
830.    State of Georgia, Workers' Compensation Board
831.    State of Kansas, Workers' Compensation Board
832.    State of New York, Workers' Compensation Board
833.    Toronto Dominion Bank
834.    ABC Plastic
835.    Advanced Polymer Systems, Inc.
836.    Allegney Technologies
837.    ATF
838.    Basell USA Inc.
839.    Beaver Mfg.
840.    Carpenter Technology Corp.
841.    Cooper Standard Automotive Inc.
842.    Curtis Screw
843.    Dana Corporation
844.    Decatur Plastic Products, Inc.
845.    DGB
846.    Dicky Grabler
847.    Dr. Schneider Automotive
848.    Eagle Picher Holdings Inc.
849.    Elkhart Prod.
850.    Epcos AG, Inc.
851.    Exxon Mobile Corp.
852.    Fischer America
853.    Affinia Canada Corp.
854.    AK Steel Corporation
855.    AW Transmission Engineering
856.    Bosch Braking Systems Corp.

857.    Carlisle Engineered Prods.
858.    Carter Group Inc.
859.    D & R Technology LLC
860.    Doshi Prettl International
861.    Flextronics International
862.    Fujitsu Ten Corporation
863.    Futaba Corp. of America
864.    Howard County, Indiana Treasurer
865.    Ispat Inland
866.    Johnson Electric North
867.    Montgomery County, Ohio Treasurer
868.    Murata Electronics North America, Inc.
869.    Niles USA, Inc.
870.    Pechiney Rolled Products
871.    Robert Bosch Corporation Automotive Group
872.    Semiconductor Components Industries, LLC
873.    SGS Thompson
874.    Solectron de Mexico SA de CV
875.    State of Wisconsin
876.    TDK Corporation of America
877.    TI Group Automotive System
878.    Westwood Associates Inc.
879.    Yazaki North America Inc.
880.    Alps Automotive, Inc.
881.    Cataler North America Corp.
882.    Corus LP
883.    SPX Contech
884.    Aisin Seiki Co Ltd
885.    Buena Vista Township, Michigan
886.    Capri Capital Advisors LLC
887.    Delta
888.    Limar Realty Corp
889.    Madison County, Indiana
890.    Merck Medco
891.    State of Michigan
892.    State of Ohio
893.    Traxle Mfg Ltd
894.    University HealthSystem Consortium (UHC)
895.    Adam Opel AG
896.    Agco-Jackson Operation
897.    Cannon Group Ltd.
898.    DK Packaging
899.    Espackdis SA
900.    HMH Group

901.   Koltec BV
902.   New Wave Enterprises (Belgium) NV
903.   Perkins Engines Company Ltd.
904.   Saab Automobile AB
905.   Vauxhall Motors Ltd.
906.   AFX Wheels
907.   Amphenol Corp
908.   Asahi Glass Co
909.   B&A Enterprises
910.   Bitron Industrie SpA
911.   British Vita PLC
912.   BTV Holding GmbH
913.   Bus Electronik GmbH
914.   Dr. Johannes Heidenhain-Stiftung Gmb
915.   Engineered Plastic Components Inc
916.   Hanwha Corp Poun Plt
917.   International Rectifier Corp
918.   Marian, Inc
919.   Mecaplast
920.   Mitsubishi Electric
921.   Ningbo Huaxiang Electronic Co Ltd
922.   Noranda Aluminum, Inc
923.   Ontario Holding International Bv
924.   Pressac
925.   Quexco Inc
926.   Rohm Co Ltd
927.   Samtech Corporation
928.   Schulte & Co GmbH
929.   Selectron Corp
930.   Spirent PLC
931.   Stelco GmbH Electronic Components
932.   Sumitomo Electric Industries Ltd
933.   Taiho Corporation of Europe Kft
934.   Technitrol Inc
935.   TPG Advisors
936.   Vishay Intertechnology
937.   Wieland Werke AG
938.   Wilh Werhahn

## VIII.   Professionals

939.   Cleary, Gottlieb, Steen & Hamilton
940.   Corporate Branding LLC
941.   CMS Worldwide
942.   Fidelity Employer Services Company LLC

943.    Fidelity Institutional Retirement Services Company
944.    Morris, Nichols, Arsht & Tunnell
945.    Sedgwick Claims Management Services, Inc.
946.    Shearman & Sterling LLP
947.    4GEN
948.    Air Academy Associates
949.    AIT GROUP
950.    American Supplier Institute, LLC (ASI)
951.    Ariane Ingenierie
952.    ASI, Shainin (ICIM)
953.    Asset Mfg. Resources
954.    BBK, Ltd.
955.    Bevco Solution Strategies
956.    Braun Kendrick Finkbeiner
957.    BSI Americas
958.    Bugbee & Conkle
959.    Crew Buchanan & Lowe
960.    Drew, Eckl & Farnham, LLP
961.    Due, Doyle Fanning, Ewing & Metger, LLP
962.    Ernst & Young
963.    Evans, Pletkoic & Rhodes, P.C.
964.    Eyster, Key, Tubb, Weaver & Roth
965.    Fernandez Racing
966.    FTI Consulting, Inc.
967.    Hamberger & Weiss
968.    Hendrick Motorsports
969.    Holloway, Dobson, Bachman
970.    Hudson, Potts & Bernstein
971.    I33 Communications LLC
972.    KPMG LLC
973.    Lathrop & Gage
974.    Lean Business Solutions
975.    Lenox, Socey, Wilgus, Formidoni, Brown, Giordano & Casey
976.    Letson, Griffith, Woodall, Lavelle & Rosenberg
977.    Levasseur & Levasseur
978.    Linklaters
979.    Locker & Lee
980.    McCann-Erickson
981.    MIT
982.    O.P. Tyagi
983.    Paul E. Riegel, Esq.
984.    Phifer & White, P.C.
985.    Robbins GIOIA
986.    S.P. Nagrath & Co.

987.   Saarakshi Enterprises
988.   Saloman Smith Barney
989.   Sapient
990.   Scheuer Mackin Breslin LLC
991.   Seva Technologies
992.   Shainin LLC
993.   Six Sigma Academy
994.   Solution Strategies, Inc.
995.   Southwest Research
996.   TBM
997.   Tech Caliber
998.   Training Services and Solutions
999.   TSSC
1000.  TWI Network
1001.  Vprys, Sater, Seymour & Pease
1002.  Watson Wyatt & Company
1003.  Wise, Carter, Child & Caraway
1004.  World Class Engineering
1005.  Zeanah, Hust & Summerford
1006.  Groom Law Group
1007.  O'Melveny & Meyers, LLP
1008.  Rothschild Inc.
1009.  Rohatyn Associates LLC
1010.  Sitrick & Company
1011.  Ahern & Soper Co. Inc.
1012.  Air Academy Press & Associates
1013.  ASI Consulting Group LLC
1014.  Asset Management Resources
1015.  Bede & Associates
1016.  Booz-Allen Hamilton
1017.  Clark Patterson Associates
1018.  Conway McKinsey and Dunlevy
1019.  Corporate Executive Board
1020.  CTG Auditors
1021.  CTJ Safety Associates
1022.  DASCO
1023.  David Cunningham
1024.  Det Norske Veritas
1025.  Detroit Translation Bureau
1026.  DeWitt Ross & Stevens
1027.  Electricore Inc.
1028.  Hao Do
1029.  Institute of Configuration
1030.  Link Testing Laboratories

1031. Meritus Consulting Services
1032. Miller Consulting Services
1033. Molitor International
1034. Ohio State University
1035. Origin Intl. Inc.
1036. Rutledge Tonya R.
1037. SGS Controll Co. MBH
1038. Tatum Partners
1039. Tec Ease Inc.
1040. TPI
1041. Xpedex
1042. AJM International
1043. Bedi Strategies, Inc.
1044. Brenda Veit
1045. Calwest
1046. Cardoza
1047. Carquest
1048. Chris Kouri & Assoc.
1049. Coble Taylor & Jones
1050. Coe & Associates
1051. Common Point Graphics
1052. Dickson Allen
1053. Foley & Lardner LLP
1054. Frost Brown Todd LLC
1055. Hirsig-Frazier Co.
1056. Hunton & Williams LLP
1057. JLE Process Services, Inc.
1058. Kitchin & Sons, Inc.
1059. Law Offices of Albert M. Gutierrez, P.C.
1060. Lee Hecht Harrison
1061. N.A. Williams Co.
1062. Northeastern Marketing
1063. On-Mark Sales
1064. Orion Adv. Mktg.
1065. Parsons
1066. Paul Hastings Janofsky & Walker LLP
1067. Productivity Systems
1068. QS Servicos Tecnicos
1069. Richards Spears Kibbe & Orbe LLP
1070. Russell Reynolds Associates, Inc.
1071. SAP Consulting
1072. Savety Innovations Ltd.
1073. Shaw E & I
1074. Siskel Sales Company

1075. Spirax Sarco
1076. SRS Marketiong Co.
1077. Suh & Assoc.
1078. Suri & Company
1079. Watkins Ludlam Winter & Stennis, P.A.

**IX.** **Indenture Trustees**
1080. Bank One Trust Company N.A.
1081. J.P. Morgan Trust Company, N.A.
1082. Chase Lincoln First Bank N.A.
1083. First National Bank of Chicago

**X.** **Underwriters of Securities**
1084. A.G. Edwards & Sons, Inc.
1085. ABN AMRO Incorporated
1086. Advest, Inc.
1087. Banc of America Securities LLC
1088. Barclays Capital Inc.
1089. BB&T Capital Markets, Inc.
1090. BNP Paribas Securities Corp
1091. C.L. King & Associated, Inc.
1092. Citigroup Global Markets Inc.
1093. Comerica Securities Inc.
1094. Credit Suisse First Boston LLC
1095. D.A. Davidson & Co.
1096. Deutsche Bank Securities Inc.
1097. Ferris, Baker Watts, Incorporated
1098. HSBC Securities Inc.
1099. J.P. Morgan Securities Inc.
1100. Janney Montgomery Scott LLC
1101. McDonald Investments Inc.
1102. Merrill Lynch, Pierce, Fenner & Smith Incorporated
1103. Mesirow Financial, Inc.
1104. Morgan Stanley & Co. Incorporated
1105. Oppenheimer & Co. Inc.
1106. Quick & Reilly, Inc.
1107. RBC Dain Rauscher Inc.
1108. Ryan Beck & Co.
1109. Samuel A. Ramirez & Company Inc.
1110. Scotia Capital Inc.
1111. SG Cowen Securities Corporation
1112. Southwest Securities, Inc.
1113. Stifel, Nicolaus & Company, Incorporated
1114. The Royal Bank of Scotland PLC

1115.  U.S. Bancorp Piper Jaffray Inc.
1116.  UBS Securities LLC
1117.  Utendahl Capital Partners, L.P.
1118.  Wachovia Capital Markets, LLC
1119.  Wells Fargo Van Kasper LLC
1120.  Williams Capital Group, L.P.

## XI.   Unions

1121.  International Union, United Automobile, Aerospace and Agricultural Implement Workers of America (UAW)
1122.  IUE-CWA, the Industrial Division of the Communications Workers of America, AFL-CIO
1123.  Electronic and Space Technicians Local 1553
1124.  International Brotherhood of Electrical Workers, AFL-CIO Local 663
1125.  International Union of Operating Engineers Local 101-S
1126.  International Union of Operating Engineers Local 18-S
1127.  IUE, AFL-CIO Local 698
1128.  IUE, AFL-CIO Local 711
1129.  IUE, AFL-CIO Local 718
1130.  IUE, AFL-CIO Local 755
1131.  IUE-CWA, The Industrial Division of the Communications Workers of America, AFL-CIO, CLC
1132.  IUE-CWA Local 1111
1133.  IUE-CWA Local 416
1134.  IUE-CWA Local 709
1135.  IUE-CWA, AFL-CIO Local 801
1136.  IUE-CWA, AFL-CIO,CLC Local 717
1137.  UAW Amalgamated Local 292
1138.  UAW Amalgamated Local 686
1139.  UAW Local 1021
1140.  UAW Local 1097
1141.  UAW Local 167
1142.  UAW Local 1866
1143.  UAW Local 2031
1144.  UAW Local 2083
1145.  UAW Local 2151
1146.  UAW Local 2157
1147.  UAW Local 2188
1148.  UAW Local 2190
1149.  UAW Local 2195
1150.  UAW Local 286
1151.  UAW Local 438
1152.  UAW Local 467
1153.  UAW Local 651

1154.  UAW Local 662
1155.  UAW Local 686, Unit 19
1156.  UAW Local 696
1157.  UAW Local 699
1158.  UAW Local 913
1159.  UAW Local 969
1160.  United Steelworkers of America
1161.  International Association of Machinists (IAM) Local 78
1162.  International Union of Operating Engineers (IUOE) Local 832S
1163.  United Steel Workers of America (USW) Local 87

## XII.    Counterparties to Major Leases

1164.  1401 Troy Associates Limited Partnership
1165.  ATEL Capital Group
1166.  First Industrial L.P.
1167.  Ford Motor Land Development Corporation
1168.  John E. Benz & Co.
1169.  Kensington Capital Corp.
1170.  Kilroy Realty, L.P.
1171.  LaSalle National Bank
1172.  Laurence Tippman, Sr., Family Limited Partnership
1173.  Osprey, S.A., Ltd.
1174.  River Road Investments, Inc.
1175.  TR Butterfield Trail Corp.
1176.  Universal Tool and Engineering Company, Inc.
1177.  Wells Operating Partnership, L.P.
1178.  ORIX Warren, LLC / Orix GF Warren Venture

## XIII.   Counterparties to Major Contracts

1179.  Techcentral LLC
1180.  American Electric Power (AEP OK)
1181.  Air Force Office of Scientific Research (AFOSR)
1182.  Alabama Gas Corporation
1183.  Alabama Power Co.
1184.  Alltel
1185.  Ameritech Information Systems, Inc.
1186.  Anderson City Utilities, IN
1187.  Anxebusiness Corp.
1188.  Applera Corporation
1189.  ARL
1190.  AT&T Corporation
1191.  AT&T Solutions, Inc.
1192.  AT&T Wireless
1193.  Avaya World Services, Inc.

1194. Cardinal Health 200, Inc.
1195. Cellco Partnership d/b/a Verizon Wireless
1196. Chemical Reclamation Svcs Inc. USA
1197. Cinergy PSI IN
1198. City of Adrian, MI
1199. Clinton (City of) MS
1200. Columbus (City of) Ohio
1201. Constellation NewEnergy, Inc.
1202. Consumers Energy
1203. Consumers Power Company
1204. Coopersville (City of) MI
1205. D.O.T. Volpe Center
1206. Dayton Power & Light Co.
1207. Dayton Water Dept (City of) Ohio
1208. Department of Commerce/National Institute of Standards and Technology (DOC/NIST)
1209. Department of Defense/Tank-Automotive and Armaments Command (DOD/TACOM)
1210. Department of Energy/National Energy Technology Laboratory (DOE/NETL)
1211. Department of Transportation/National Highway Traffic Safety Administration (DOT/NHTSA)
1212. DPL Energy Resources, Inc.
1213. DTE Energy MI
1214. El Paso Electric Co. TX
1215. Electricore Aerovironment
1216. Emtech
1217. Entergy (MS Power & Light) USA
1218. EQ-Heritage USA
1219. Erie Cnty. Dept. Environ Serv. OH
1220. Fitzgerald Wtr. Lgt. Bond Com GA
1221. Flint (City of) MI
1222. Georgia Power Company
1223. Henry County REMC IN
1224. Heritage Interactive Services USA
1225. HESCO Houston Energy Srvs Co.
1226. Honeywell International
1227. Indiana University:  Purdue University Indianapolis (IUPUI)
1228. Indiana Michigan Power Comp IN
1229. Indiana-American Water Company
1230. Indianapolis Power & Light Co.
1231. Industrial Energy Users - Ohio
1232. Intercall
1233. Johns Hopkins University
1234. Kokomo Gas & Fuel Company IN
1235. Kokomo Wastewater (City of) IN
1236. KPL (Western Resources) KS

1237. Limestone County Commission AL
1238. Limestone County Wtr & Swr AL
1239. Lockport (City of) NY
1240. Lockport Energy Associates NY
1241. Magic Valley Electric Coop USA
1242. Mississippi Power Company
1243. Monroe Cnty Water Authority NY
1244. Montgomery City San Eng Dept OH
1245. MRI Connectivity Solutions
1246. NASA
1247. New Brunswick (City of) NJ
1248. New York Power Authority
1249. New York State Electric & Gas NY
1250. Nextel Coomunications
1251. Niagra Mohawk NY
1252. North Alabama Gas District AL
1253. Oak Creek (City of) WI
1254. Ohio Edison Company
1255. Oil Chem Inc. USA
1256. Olathe (City of) KS
1257. OneOK Energy Energy Marketing OK
1258. Pepco Energy Services, Inc.
1259. Portage Cnty Wir Resources OH
1260. PSE&G NJ
1261. Purdue University
1262. Rineco Chemical Industries USA
1263. Rochester (City of) NY USA
1264. Rochester Gas & Electric NY
1265. SBC Ameritech
1266. SBC Global Services, Inc.
1267. SkyTel
1268. Southern California Edison
1269. Sprint United
1270. State of Indiana
1271. TechSolve
1272. Tennessee Valley Authority
1273. Time Warner
1274. Troy (City of) MI
1275. Tulsa Utils Svc (City of) OK
1276. TXU Energy Retail Company LP
1277. USAF/AFRL
1278. Vandalia (City of) OH
1279. Verizon
1280. Warren (City of) Util Srvs OH

1281.  Warren City of Pollution Control
1282.  Wisconsin Electric Power Co. WI
1283.  Wyoming (City of) MI
1284.  Zoe Medical, Inc.
1285.  Alexander Long, III
1286.  Anxebusiness Corp.
1287.  Bell South
1288.  Bluetooth
1289.  Caretools, Inc.
1290.  Clifford Electronics, Inc.
1291.  Compuware Corporation
1292.  Cullmann GmbH
1293.  Debiotech S.A.
1294.  Direct Sourcing Solutions (DSSI)
1295.  Dolby Digital
1296.  DSSCSC China
1297.  Embedded Technology
1298.  Ericsson AB
1299.  Firma Carl Freudenberg KG
1300.  HTC Corp.
1301.  IBM Corporation
1302.  Ideal Technology Solutions U.S. Inc
1303.  Inovise Medical, Inc.
1304.  Integrated Therapeutics Group, Inc.
1305.  Intel Corporation
1306.  JSP International Ltd.
1307.  LiveDevices Inc
1308.  Logikos
1309.  Lucent Technologies Inc.
1310.  Magnavox Government and Industrial Electronics Company
1311.  Matsushita Electric Corporation of America
1312.  Miller Engineered Services, Incorporated
1313.  MMT SA
1314.  Moving Magnet Technologies SA
1315.  MPEG LA, LLC
1316.  NCMS
1317.  Nokia Corporation
1318.  North American Philips Corporation
1319.  Premacare
1320.  Sanden Corporation
1321.  Satyam
1322.  Scroll Laboratories, Inc.
1323.  Standard Research Institute International (SRI Intl)
1324.  TCS

1325. The Whitaker Corporation
1326. Thomas Giannulli Inc.
1327. Toshiba Corporation
1328. UBE Industries, Ltd.
1329. UnitedGlobal Com Inc (UGC)
1330. UGC "Europe"
1331. Valence Technology Cayman Islands Inc.

## XIV.    Lenders

1332. Banc One Capital Markets, Inc.
1333. Falcon Asset Securitization Corporation
1334. Jupiter Securitization Corporation
1335. ABN AMRO Bank N.V.
1336. Amsterdam Funding Corporation
1337. The Bank of Tokyo-Mitsubishi, Ltd.
1338. Gotham Funding Corporation
1339. JPMorgan Bank, N.A.
1340. Wachovia Bank, National Association
1341. Blue Ridge Asset Funding Corporation
1342. City of Saginaw, Michigan
1343. Michigan Strategic Fund
1344. Whitney National Bank
1345. Citicorp Securities, Inc.
1346. First Chicago Capital Markets, Inc.
1347. Dai-Ichi Kangyo Trust Company of New York
1348. Cede & Co.
1349. Ohio Water Development Authority
1350. Cleveland Trust Company
1351. Deposit Guaranty National Bank
1352. Regions Bank
1353. Lord Corporation
1354. A3 Funding LP
1355. Ableco Finance LLC
1356. Agricultural Bank of China
1357. Amaranth Partners LLC
1358. Apollo Distressed Investment Fund
1359. Appaloosa Invest Ltd. Partnership I
1360. Australia and New Zealand Bank Group
1361. Banco Bilbao Vizcaya Argentaria, S
1362. Banca Nazionale Del Lavoro SpA, New
1363. Banco Santander Central Hispano S.A.
1364. Bank of America, N.A.
1365. Bank of China Luxembourg SA
1366. Bank of New York

1367. Bank of Nova Scotia
1368. Bank of Toyko Mitsubishi Company
1369. Barclays Bank PLC
1370. BNP Paribas
1371. BrenCourt Distress Securities Maste
1372. Calyon New York Branch [f/k/a] Credit Lyonnais
1373. CapitalSource Finance LLC
1374. Cargill Financial Services Intl. Inc.
1375. Citibank N.A.
1376. Citigroup Financial Products Inc.
1377. Comerica Bank Michigan
1378. Commerzbank Aktiengesellschaft New
1379. Credit Industriel et Commercial
1380. Deutshce Bank AG
1381. Deutsche Bank Trust Company America
1382. Dymas Funding Company LLC
1383. Event Partners Debt Acquisition, LLC
1384. Fifth Third Bank, Eastern Michigan
1385. Goldman Sachs Credit Partners L.P.
1386. Gulf Stream - Compass CLO 2004-1, Ltd.
1387. Gulf Stream - Compass CLO 2005-1, Ltd.
1388. HBK Master Fund L.P.
1389. HSBC Bank USA, National Association
1390. KeyBank National Association
1391. Lehman Commercial Paper, Inc.
1392. Mizuho Corporate Bank Ltd. fka DKB
1393. Morgan Stanley Senior Fundings, Inc.
1394. Protective Life Insurance Company
1395. Sequils Ing I, Ltd.
1396. Severn River Master Fund Ltd.
1397. Societe Generale SA New York
1398. Special Situations Investing Group
1399. Sumitomo Mitsui Banking Corporation
1400. Trilogy Portfolio Company, LLC
1401. TRS Callisto LLC
1402. TRS Leda LLC
1403. TRS Thebe LLC
1404. UBS AG, Stamford Branch
1405. UBS Loan Finance LLC
1406. UFJ Bank Limited
1407. Windmill Master Fund LP
1408. Grand Central Asset Trust, SIL Series
1409. Sea Pines Funding LLC
1410. Tenor Opportunity Master Fund, Ltd.

1411.  Citicorp Vendor Finance, Inc.
1412.  Compaq Financial Services Corporation
1413.  Crown Credit Company
1414.  Sentry Financial Corporation
1415.  The Peltz Group, Inc.
1416.  Whitney Private Debt Fund LP
1417.  Bear Stearns Investment Products
1418.  Secondary Loan and Distressed Credit
1419.  ACA CLO 2005-1, Ltd.
1420.  Access Institutional Loan Fund
1421.  ADAR Investment Fund Ltd.
1422.  Addison CDO, Limited
1423.  AG Alpha Credit Master, Ltd.
1424.  Ahab Partners, L.P.
1425.  Airlie Opportunity Master Fund, Ltd
1426.  American Express Certificate Company
1427.  AMMC CLO
1428.  Archimedes Funding IV, Ltd.
1429.  ARX Global High Yield Securities
1430.  Aslan Capital Master Fund, LP
1431.  Atlas Capital Funding, Ltd.
1432.  Atrium
1433.  Avenue CLO
1434.  Avery Point CLO, Ltd.
1435.  Balboa CDO I, Limited
1436.  BDC Finance LLC
1437.  Black Diamond Offshore Limited
1438.  Blue Square Funding Ltd. Series 3
1439.  Boldwater CBNA Loan Funding LLC
1440.  Boldwater Credit Opportunities
1441.  Boston Harbor CLO 2004-1, Ltd
1442.  Boston Income Portfolio
1443.  Brookville Capital Master Fund, L.P.
1444.  Brun Mawr CLO, Ltd.
1445.  Callidus Debt Partners CDO Fund I
1446.  Candlewood Capital Partners LLC
1447.  Canpartners Investments IV LLC
1448.  Canyon Capital Partners
1449.  Castle Garden Funding
1450.  Castle Hill
1451.  CDL Loan Funding LLC
1452.  Cedarview Opportunities Master Fund
1453.  Celerity CLO Ltd
1454.  Centurion CDO

1455. Chatham Light II CLO, Limited
1456. Citadel Hill 2000 Ltd.
1457. Colonial Funding LLC
1458. CSAM Funding IV
1459. C-Squared CDO Ltd.
1460. Cumberland II CLO Ltd.
1461. Cypresstree Claif Funding LLC
1462. D.K. Acquisition Partners, L.P.
1463. Debt Strategies Fund, Inc.
1464. Delaware Corp Bond Fund
1465. Delaware Delchester Fund
1466. Desjardins Financial Security Life
1467. Diversified Income Strategies
1468. Diversified Investors High Yield
1469. Dryden Leveraged Loan
1470. Duane Street CLO 1, Ltd.
1471. Duma Master Fund LP
1472. Dunes Funding LLC
1473. ELF Funding Trust I
1474. Employers Insurance of Wausau
1475. Empyrean Investments, LLC
1476. Endurance CLO I Ltd.
1477. Excess Book
1478. Feingold O'Keefe Credit Fund CBNA
1479. First Trust Highland Capital
1480. Flagship CLO
1481. Forest Creek CLO, Ltd.
1482. Fortis Bank SA NV Cayman Island Branch
1483. Forstress Credit Funding
1484. Lightspeed CLO
1485. Galaxy
1486. Gleneagles CLO Ltd.
1487. Global Enhanced Loan Fund S.A.
1488. Global StocksPLUS Income Fund
1489. Gracie Capital L.P.
1490. Greywolf Loan Participation LLC
1491. Guggenheim Portfolio Company XII
1492. Hammerman
1493. Harbour Town Funding LLC
1494. High Income Portfolio
1495. Highland Floating Rate
1496. Horizon Income Fund, Ltd.
1497. IDS Life Insurance Company
1498. ING Investment Management

1499. Investment CBNA Loan Funding LLC
1500. Investors Bank and Trust Co
1501. Jasper CLO Ltd.
1502. Katonah
1503. KIL Loan Funding LLC
1504. Kingsland I, Ltd.
1505. KKR Financial CLO 2005-1, Ltd.
1506. KZH
1507. Liberty CLO Ltd.
1508. LibertyView Loan Fund, LLC
1509. Lincoln National Life Insurance Co.
1510. Linden Capital LP
1511. Lispenard Street Credit (Master)
1512. Loan Funding LLC
1513. Loan Star State Trust
1514. Long Grove CLO, Limited
1515. Madison Park Funding I, Ltd.
1516. Marathon CLO I Ltd.
1517. Marathon Special Opportunity
1518. Market Square CLO Ltd.
1519. Maquette Park CLO Ltd.
1520. McDonnell Loan Opportunity Ltd.
1521. Metropolitan West
1522. ML Global Investment Series Income
1523. Mountain Capital CLO
1524. Muirfield Trading LLC
1525. National City Bank
1526. Nemean CLO, Ltd.
1527. Oak Hill Credit
1528. Oak Hill Securities Fund
1529. OCM High Yield Plus Fund LP
1530. Octagon Investment Partners
1531. Panton Master Fund LP
1532. Park Avenue Loan Trust
1533. PIMCO Floating
1534. Pinewood Credit Markets Master Fund
1535. Pioneer Floating Rate Trust
1536. PNC Bank, N.A.
1537. Post Leveraged Loan Master Fund, LP
1538. Post Opportunity Fund L.P.
1539. Post Total Return Fund, L.P.
1540. Principal Life Insurance Company
1541. Prospect Funding I, LLC
1542. Putnam Investments

1543.  Q Funding III LP
1544.  Quadrangle Master Funding Ltd
1545.  Quattro
1546.  R2 Top Hat, Ltd.
1547.  Race Point
1548.  Red Fox Funding LLC
1549.  Redwood Master Fund, Ltd.
1550.  Riviera Funding LLC
1551.  Robson Trust
1552.  Rockwall CDO Ltd.
1553.  Rosemont CLO, Ltd.
1554.  Salomon Brothers Variable Rate
1555.  Sankaty High Yield Partners
1556.  Satellite Senior Income Fund
1557.  Saturn Trust
1558.  Scoggin Worldwide Fund Ltd
1559.  Scottwood Partners LP
1560.  SEI Institutional Managed TST
1561.  Seneca Capital, L.P.
1562.  Sierra CLO I Ltd.
1563.  Silverado CLO 2006-1 Ltd.
1564.  Sky CBNA Loan Funding LLC
1565.  SMBC MVI SPC
1566.  SOF Investment, LP
1567.  Southport CLO, Limited
1568.  SRI Fund LP
1569.  Stanfield
1570.  SunTrust Bank Atlanta
1571.  TCW
1572.  The Drake Offshore Master Fund, Ltd
1573.  The Foothill Group Incorporated
1574.  The Hartford Floating Rate Fund
1575.  Thirvent High Yield
1576.  Velocity CLO, Ltd.
1577.  Venture CDO
1578.  Vista Leverage Income Fund
1579.  Vulcan Ventures, Inc.
1580.  Watershed Capital
1581.  Waterville Funding LLC
1582.  Waveland-Ingots, Ltd.
1583.  Wells Capital Management
1584.  Western Asset Floating Rate
1585.  Wind River CLO I, Ltd.
1586.  Wrigley CDO, Ltd.

**XV.     State and Other Governmental Authorities**
1587.    Air Resources Board (ARB) California
1588.    Alabama Department of Environmental Management (ADEM)
1589.    Arizona Department of Environmental Quality (ADEQ)
1590.    California Environmental Protection Agency (Cal EPA)
1591.    Certified Unified Program Agencies (CUPA) (California)
1592.    Colorado Department of Public Health and Environment (DPHE)
1593.    Department of Toxic Substances Control (California)
1594.    Georgia Department of Natural Resources
1595.    Illinois Environmental Protection Agency ( EPA) (Illinois)
1596.    Indiana Department of Environmental Management (IDEM)
1597.    Integrated Waste Management Board (CIWMB) (California)
1598.    Kansas Department of Health & Environment
1599.    Kentucky Environmental and Public Protection Cabinet
1600.    Minnesota Pollution Control Agency
1601.    Mississippi Department of Environmental Quality
1602.    Missouri Department of Natural Resources
1603.    New Jersey Department of Environmental Protection
1604.    New York State Department of Environmental Conservation (NYSDEC)
1605.    Office of Environmental Health Hazard Assessment (OEHHA)
1606.    Ohio Department of Commerce (BUSTR)
1607.    Oklahoma Corporate Commission
1608.    Oklahoma Department of Environmental Quality
1609.    Pennsylvania Department of Environmental Protection
1610.    Regional Air Pollution Control Agency (RAPCA) (Ohio)
1611.    South Carolina Department of Health and Environmental Control
1612.    State Department of Health Services (California)
1613.    State Water Resources Control Board (SWRCB) (California)
1614.    Tennessee Department of Environmental and Conservation
1615.    Texas Commission on Environmental Quality
1616.    U.S. Department of Transportation
1617.    U.S. Environmental Protection Agency
1618.    Wisconsin Department of Natural Resources
1619.    Occupational Safety and Health Administration (OSHA)

**XVI.    Potential Interested Parties**
1620.    Brittingham, Julie & David
1621.    Estate of Stella Demeniu
1622.    Grimes, Rita
1623.    Quinn, Larry
1624.    Shannon Shaw, Martin L.
1625.    Consumer Electronic Product Line
1626.    Vehicle Electronic Product Line

**XVII.** **Litigation Parties**

1627.   Adams Oil
1628.   Alan Torabi
1629.   Alfaro, Jose C.
1630.   Allegheny Coatings
1631.   Allegheny Rodney
1632.   Allegre Dong AH
1633.   Alternate Resource, Inc.
1634.   American Electronics Components (AEC)
1635.   Amy C. Bastien
1636.   Bryan, Greyson
1637.   Arbogast, Michael A.
1638.   Asherbranner, Jennifer T.
1639.   Associated Springs & Barnes Group, Inc.
1639.   Austin Group, Ltd.
1640.   Automotive Technologies International, Inc.
1641.   Ayusa
1642.   A&O Mold & Engineering, Inc.
1643.   Barnes, Cleary
1644.   Bartell, Greg
1645.   Beck, Bobby
1646.   Bedrin, John
1647.   Bendix ABS Fires
1648.   Bernadine Peace
1649.   Betty J. Flora
1650.   Beuke, Robert L.
1651.   Bex, Russell
1652.   Bishop, Sr., James Denson
1653.   Blas, Cassandra E.
1654.   Bradley, Phyllis Jean
1655.   Brady, Billy W.
1656.   Brewer, Mary M.
1657.   Brian Dickerson
1658.   Brian Mahle
1659.   Brian Penley
1660.   Bridget A. Neubauer
1661.   Brown, James Lee
1662.   Building Materials Holding Corporation
1663.   Buis, James
1664.   Bulk Terminals, Inc.
1665.   Byron E. Hurst
1666.   Canter, Richard
1667.   Carl Allison

1668. Central Bank of Brazil
1669. Chad Dougherty
1670. Chapa, Israel
1671. Charles Francis Kulinec Jr.
1672. Chase-Orr, Kimberly
1673. Chris Wong
1674. Cindy Lee Schlicher, n/k/a Cindy Lee Berthold
1675. Circle Plastic Products, Inc.
1676. City of DelRay Beach Police
1677. Gimpex
1678. Mano Gum
1679. VEHVAC
1680. Cloncs, Donald
1681. Clorex S.A.
1682. Columbus Plant Fire
1683. Condutelli
1684. Conrad, Dean F.
1685. Cook, Sylvia
1686. Cox, Jon C.
1687. Crown City Plating Company
1688. Custom Energy, L.L.C.
1689. C&J Industries
1690. Daniel A. Miller
1691. Davis, Robert E., II
1692. Vasquez, Joe R d/b/a/ Farmers' Marketing Service
1693. Republic Waste Industries, Inc. a/k/a Autonation
1694. Kelly Koszewski
1695. INFONAVIT (Instituto del Fondo Nacoinal de la Vivienda para los Trabajadores)
1696. Tolulene & Cloroethane
1697. Solvent Chemicals
1698. Opel Hungary/GMPT
1699. IMSS (Instituto Mexicano del Seguro Social)
1700. Demet
1701. Dennis Sharp
1702. Denso Corporation
1703. Devlieg Boulevard II, Inc.
1704. DHB-CA
1705. Donna R. Wilson
1706. DSL Net Inc.
1707. Eaton Corporation
1708. Edith C. James
1709. Elco Textron Fastening Systems
1710. Elmore, Jr., Arlis M.
1711. Energy Conversions Systems (ECS) f/k/a Morganite

1712. Ennis, Donald
1713. ESSEDUE
1714. Estate of Lannon
1715. Ethylene Propylene Diene
1716. Eva M. Orlik
1717. Executive Loan Program - MI
1718. Farag Mohamed
1719. Felipe F. Gavia, Sr.
1720. Fiber Optic Fund
1721. Fiber Systems International, Inc.
1722. First Technology
1723. Fleming, Joseph A.
1724. Flex-Tech
1725. FLSA Investigation, Kettering
1726. Folck, Neal C.
1727. Freddie L. Johnson
1728. Gaines, Ira
1729. Gann, Robert Edwin
1730. Gary Whitney
1731. GfH
1732. Gillette, Edward A.
1733. Greystone & Co.
1734. Groce, Kelly R.
1735. Gualandi, Kevin
1736. Gulf Coast Bank & Trust Company
1737. Gutjahr, Michael
1738. Hammer, Edward
1739. Harold Woodson
1740. Hayes Brake
1741. Hillman, Robert
1742. Hirschmann Electronics GmbH & Co.
1743. Hoover Precision Plastics
1744. Hoyt, Arthur C.
1745. HPI
1746. Hubbard, Clarence E.
1747. Hunter, Clemie
1748. Hutchinson Seal Corp.
1749. H.E. Services Company
1750. ICG
1751. Diavia Belgian Distributor
1752. IUE Moraine Umpire
1753. James Burdette
1754. James H. Nguyen
1755. James Truscio

1756.   Jason Mills
1757.   Jeff Stoughton
1758.   Jevicks, Teresa
1759.   John Guevrra
1760.   John Petrie
1761.   Johnson, Jana C.
1762.   Joseph Reno
1763.   Judith Myers
1764.   Karlin, Lawrence
1765.   Kenneth J. Kumiega
1766.   Key Plastics
1767.   Kim Fouche
1768.   Kim N. Khan
1769.   Kimberly Y. Foster
1770.   Kostal of America, Inc.
1771.   Kramer, Steven
1772.   Kraus, Jessica
1773.   Laneko
1774.   Lemon Bay Partners
1775.   Leon Sammons
1776.   Linda Osowki
1777.   Linerboard Antitrust
1778.   Litex, Inc.
1779.   Lockheed Martin Corp.
1780.   Lori Smith
1781.   Lunt Manufacturing Co., Inc.
1782.   Lynn Rowell
1783.   L&W Stamping, Inc.
1784.   Magnesium Aluminium Corporation
1785.   Mansel Hagan vs Clyde Lee, Jr.
1786.   Mark Heathco
1787.   Martin J. Jordan
1788.   Martina Clark
1789.   Martinez, Jose Angel Mata
1790.   Mary Smith
1791.   Means Industrial, Inc.
1792.   Merritt, James and Bonnie
1793.   Michael A. Polito
1794.   Michael K. Snider
1795.   Michael S. Young
1796.   Michelle Hyder
1797.   Mike Birdyshaw
1798.   Mike Leslie
1799.   Milwaukee Design Center

1800.   Minnick, Ralph D.
1801.   Modine Manufacturing Company
1802.   Morrison, Thomas
1803.   Mortensen, Philip Bradley
1804.   Motorola Quadrasteer
1805.   NBR
1806.   Neal C. Folck
1807.   Newton, David
1808.   NGK Spark Plugs USA, Inc.
1809.   Norma Jean Torsky
1810.   Norman Jones
1811.   O'Brian, George M.
1812.   O'Brien, Michael L.
1813.   O'Neill, Mary P.
1814.   Orlick Industries, Ltd.
1815.   OSHA Recordables
1816.   P-K Tool & Manufacturing
1817.   Pamela K. Dotson
1818.   Paragon/CJR
1819.   Parkview Metal Products, Inc.
1820.   Partridge, Steve
1821.   Patent Holding Company
1822.   Paul J. Turinsky
1823.   Paul Kirsch
1824.   Automotive Applied Technologies Limited
1825.   Pennington, Jeff
1826.   Peter Yang
1827.   Petrie Household Goods Claim
1828.   Phelps, John W.
1829.   Phillips, Robert
1830.   Poitra, Tammie
1831.   Praxair Surface Technologies
1832.   Priest, Aaron
1833.   Pritchard, Deborah Brown
1834.   Proud, Douglas
1835.   Quake Global, Inc.
1836.   Quinn, Larry
1837.   Raphael, Naomi
1838.   Rebecca Lea Miles
1839.   Rebecca Rudzik
1840.   Reilly, Jr. Thomas A.
1841.   ASEC France
1842.   Richard Barner
1843.   Richard J. Jakupco

1844.   Richard Kowalski
1845.   Richard W. Knisley, II
1846.   Rio Bravo Occupied Worker Housing
1847.   Robert Givens
1848.   Robin McCree
1849.   Rosalyn Motley
1850.   Rowley, Donald
1851.   Ruben J. Rosen
1852.   Russell Anderson, Jr.
1853.   Russell, Thomas
1854.   Sedberry, Joyce
1855.   Segway
1856.   Sharon Kelley
1857.   Sharyl Yvette Carter
1858.   Shawn VanAmburg
1859.   Shaw, Martin L.
1860.   Shontea Jenkins
1861.   Siemens VDO Automotive AG (SVDO)
1862.   Smith, James O.
1863.   Smith, Louis
1864.   Smolik, Lillie
1865.   Sonja Abernathy
1866.   SouthTrust Bank
1867.   Stansbury II, Robert L.
1868.   Stejakowski, Dennis
1869.   Stephen M. McKee
1870.   Steven Williams
1871.   Strategic Distribution Marketing De Mexico, S.A. DE C.V.
1872.   Strattec Security Corporation
1873.   Stuck, Ronald P.
1874.   SungWoo
1875.   Anglo Metals, Inc.
1876.   Takata-Petri AG
1877.   Talbot Case
1878.   Tammy A. Vandale
1879.   Tasha Kelely
1880.   Tenneco Automotive Inc.
1881.   Terazosin Hydrochloride
1882.   Terrence Evans
1883.   E&C-Sanko
1884.   The Chamberlain Group, Inc.
1885.   Theresa L. Spencer
1886.   Thomas York Jr.
1887.   Ticona

1888. Tina Newman
1889. Grundig Multimedia B.V.
1890. Trovan
1891. Tuthill, Rusty
1892. ESS, Inc.
1893. Delco Remy America, Inc. (DRA)
1894. Nabco
1895. Infratrol Cure Ovens
1896. U.S. Aeroteam, Inc.
1897. Valeo Electrical Systems, Inc.
1898. Valeo Switches and Detection Systems, Inc.
1899. Ventra - Tech
1900. Vincent J. Coletta
1901. Waldo, Richard L.
1902. Walter Keith Lawson
1903. Wheeler, Bruce C.
1904. Whitehead, Anthony
1905. Whitmire, Steven Lee
1906. William Ashburn
1907. William Blaesi
1908. William Jensen
1909. William P. Edwards
1910. Willis, Steven
1911. Woodward Diesel Pump
1912. Wood, Ralph
1913. Wright, Eugene A
1914. Yates, Dale A.
1915. Alex S. Stewart
1916. Anthony F. Budak
1917. Arnold, James Jr.
1918. Automotive Technologies, Inc.
1919. Avarette, Bessie
1920. Baxter, Daniel
1921. Bentley Rolls-Royce
1922. Berry, Doris
1923. Bhones, Diane
1924. BMC Holding Corporation d/b/a BMC West
1925. BorgWarner Inc.
1926. BorgWarner Turbo Systems, Inc.
1927. Brantley, Shalonda J.
1928. Brian Lyons
1929. Britt, Stephanie
1930. Brooks, Diane
1931. Brooks, Marvin

1932.  Brooks, Shameila
1933.  Brown, Celestia
1934.  Bryce Woodward
1935.  Buchanan, Rufus O.
1936.  Burch, Amy R.
1937.  Butler, Daisy J.
1938.  Campbell, John E.
1939.  Chivers, Kathy L.
1940.  Clyde Wilson
1941.  Cockrane, Ameatha
1942.  Colbert, John E.
1943.  Connie Fournier
1944.  Copeland, Huey G.
1945.  CWI
1946.  Daniel Lamb
1947.  Davis, Janetta
1948.  DCX
1949.  Diana B. McBride
1950.  DMS NA
1951.  Droman, Rick
1952.  Dukarski, Katherine
1953.  Dutton, William Boyd
1954.  Edward Joseph Greenwood
1955.  Elco Textron, Inc.
1956.  Enterprise Automotive Systems
1957.  Epsilon
1958.  Farmer, Darryl G.
1959.  Faurecia Exhaust Sys Inc.
1960.  Fieger, Fieger, Kenney and Johnson
1961.  Fields, Charlotte
1962.  Foster, Kim L.
1963.  Gaddis, Tracy
1964.  Garcia, Jessie L.
1965.  Gilyard, Jonnie
1966.  Glass, Coy
1967.  Glynn, Marcus
1968.  Gonzalez, Phillip
1969.  Gordon, Franklin
1970.  Gordon, Patricia
1971.  Gregory James Knighton
1972.  Harco Industries, Inc.
1973.  Harden, John W.
1974.  Hardy, William
1975.  Harold Aubert

1976. Hassel, Claudette M.
1977. Hernandez, Gloria
1978. Herndon, Laura V.
1979. Hills, Donald L., Sr.
1980. Honeywell ACS Sensing & Control
1981. Hood, Constance
1982. Hood, Kelli
1983. Howard, Mark
1984. International Truck
1985. IUE-CWA Local 755
1986. IUE-CWQ
1987. Johnson, Ruth
1988. Johnson, Shanellie
1989. Jones, David
1990. Jones, Lonnie
1991. Josey, Anita
1992. Joyce Walker
1993. Julias, Steven
1994. Kevin R. Walter
1995. Kowallek, Daniel E.
1996. Land Rover
1997. Larry Brady
1998. Larry C. Peters
1999. Latimore, John L.
2000. Lee Young
2001. Linda Hudson
2002. Lisa Gross
2003. Little, Robert W.
2004. Logistics Solution Group S.A. de C.V.
2005. Lumpkin, Robert J.
2006. Lunn, Richard
2007. Mahle Sistemas de Filtracion de Mexico
2008. Massey, Patricia
2009. Matter, Phillip
2010. MBUSI
2011. Teresa Hurst
2012. McCullough, Amy M.
2013. McDonald, Wilfred A.
2014. MCI Telecommunications Corporation
2015. McMillon, Anna
2016. Meyer and Williams
2017. Mulligan, Charles D.
2018. Ondo, Anthony C.
2019. Opel

2020. Owens, Donna
2021. Peters, Jerry
2022. Philip Gonzalez
2023. Pickett, Mary
2024. Powell, Charlene
2025. Qualls, Debbie L.
2026. Randal A. Middleton
2027. Reyes, Daniel
2028. Robert Lewis
2029. Samacki, Rachel
2030. Shanks, Carol
2031. Sherban, Daniel
2032. Sherer Electric
2033. State of New York
2034. Surles, Brenda
2035. Swain, Andrew
2036. Taylor, Kenneth
2037. Thomas, Demetrius
2038. Thompson, Maria N.
2039. Todd, William N.
2040. Vincent, Leo J.
2041. Walker, Joyce
2042. Warner-Eno, Leslie A.
2043. Wayne Conwell
2044. West, Roleda
2045. Whitaker, Samuel F.
2046. William D. Hanline
2047. Williams, Lester
2048. Wilson, Loretta
2049. Winbush, Meatha
2050. Wisehart, Rhonda
2051. Wolan, Lea
2052. Woodard, Anthony
2053. Young, Karl L.
2054. Adams, Thomas E.
2055. Aimtronics Corporation
2056. Alternative Resource, Inc.
2057. Ana Paula
2058. Anorve, Juan
2059. Apple Computer
2060. Arnold & Porter
2061. Aziz, Salman
2062. Bernstein, Sidney
2063. Brown, Jonathan

2064. CDA Consulting
2065. Celso Gon*alves Viana
2066. Chilton, Alfred
2067. Clark, Charles
2068. Dactem, Inc.
2069. Dangerfield, Shawn
2070. Daniel Legorreta
2071. Donald M. Lyon, Esq.
2072. Dynamic Sciences International
2073. Eftec North America, LLC
2074. Electrical Systems Motors
2075. Electronic Environmental Engineering
2076. Electrospec Cost Recovery
2077. Ellis, Peter
2078. Fabricated Metals
2079. Financial Services of America, LLC
2080. Fosbre, Frank J. Jr.
2081. Fromm, Pamela
2082. Gabrielle, Lori J.
2083. Glass, Garvin
2084. H.P. Haveles, Esq.
2085. Hahn Elastomer
2086. Hanners, Carolyn
2087. Harley Brakes
2088. Hassett & Donnelly, PC
2089. Howery Simon Arnold & White, LLP
2090. INSS
2091. Invensys
2092. Itabirito Plant
2093. Jan Strzebniok
2094. Janet E. Moser, Esq.
2095. Jarzyniecki, Philip
2096. Jeanniard
2097. Jeff C. Spahn, Jr., Esq.
2098. Joe Viviano
2099. Jon E. McDermott, Esq.
2100. Jon R. Smibert, Esq.
2101. Jonathan B. Taylor, Esq.
2102. Jones, Leland
2103. Jones, Rodger
2104. Jones, Vanessa
2105. Joshua A. Sherbin, Esq.
2106. Joyal Products, Inc.
2107. Junkin, Harrison & Junkin, PC

2108. JV Products
2109. Kenna Technical Services
2110. Kenna, William
2111. Kessler, Thomas
2112. Kreegar, William C.
2113. Krupp-Hoersch
2114. Laborsource 2000, Inc.
2115. Lazor, Daniel
2116. LK Nagano Sistemas Automotivos Ltda.
2117. Luiz Alberto Moreira
2118. Manns, Debra A.
2119. Matamoros
2120. Matthew G. Lindberg, Esq.
2121. Mauro Lucio Diniz
2122. McAleer, Adrian
2123. MetroCal, Inc.
2124. Ministerio Publico
2125. Missing Press Parts
2126. Mubea, Inc.
2127. MyFi Battery Fires
2128. Nesco
2129. Novo Rio Baterias Ltda.
2130. Nu Tech Plastics Engineering, Inc.
2131. Olson Tooling
2132. Onsalma
2133. Palmer, Cindie L.
2134. Paul Rosen, Esq.
2135. PODS
2136. Power Outage
2137. Public Lighting Authorities
2138. Reynosa
2139. Richard Vance, Esq.
2140. Ross, Marion
2141. Royal Freight, L.P.
2142. S "nia Aparecida da Silva
2143. Samuel W. Junkin, Esq.
2144. SEC-MSC Software Corporation
2145. Seskin, Lauren
2146. Smith, Erisha
2147. Sobel, Jonathan F.
2148. State of Minas Gerais
2149. Stewart, Andrew
2150. Stites & Harbison, PLLC
2151. Tom Van Dusen

2152.   Valeo North American Corporate
2153.   Watkins Motor Lines
2154.   Weber, Herman
2155.   William L. Seldeen, Esq.
2156.   Williams, Modina
2157.   Xandex, Inc.
2158.   Yount, Loretta

## XVIII   Holders of 5% or More of Equity Security of Company
2159.   Capital Group International, Inc.
2160.   Capital Research & Management Company
2161.   Dodge & Cox
2162.   State Street Bank and Trust Company
2163.   Brandes Investment Partners, LLC

## XIX.   Noteholders Holding 5% or More of Insurance Notes of Company
2164.   First Clear
2165.   Investors Bank & Trust Co.
2166.   Lehman Brothers, Inc.
2167.   Mellon Trust
2168.   ML Sfkpg
2169.   NFS LLC
2170.   Pershing LLC
2171.   SSB Electronic USA

## XX.   Objecting/Adverse Parties/Postpetition Parties
2172.   A. Schulman, Inc.
2173.   Ai--Doraville, LLC
2174    Ai-Genesee, LLC
2175.   Autocam Corporation
2176.   Avenue Capital Group
2177.   Benteler Automotive Corp.
2178.   Concordia Advisors LLC
2179.   Cyrus Capital Partners
2180.   D.C. Capital Partners, L.P.
2181.   D.E. Shaw and Co.
2182.   DK Acquisition Partners LP
2183.   DOTT Industries, Inc.
2184.   Duraswitch Industries Inc.
2185.   Elliot & Associates
2186.   Flextronics Technology (M) SDN. BHD
2187.   Fujikura America, Inc.
2188.   Gibbs Die Casting Corporation
2189.   Kensington International Limited

2190. L&W Engineering Co.
2191. Lakeside Plastics Limited
2192. Latigo Partners, LP
2193. Longacre Fund Management LLC
2194. Lorentson Manufacturing Company, Inc.
2195. Mercedes-Benz International, Inc.
2196. Multek Flexible Circuits, Inc.
2197. National Molding Corp.
2198. Neuman Aluminum
2199. Northfield Acquisition Co.
2200. Omega Tool Corp.
2201. Osran Opto Semiconductors Inc.
2202. Pension Benefit Guaranty Corporation
2203. Pentastar Aviation, LLC
2204. Pioneer Automotive Technologies, Inc.
2205. SBC Communications Inc.
2206. Security Plastics Division, NMC, LLC
2207. Sheldahl de Mexico S.A. de C.V.
2208. Southtec, LLC
2209. Springfield Associates LLC
2210. Venture Plastics, Inc.
2211. Wilmington Trust Company
2212. Worthington Steel Company
2213. XM Satellite Radio, Inc.
2214. Alcan Rolled Products-Ravenswood, LLC
2215. Baker Hughes Incorporated
2216. Baker Petrolite Corporation
2217. BASF Corporation
2218. Datwyler Inc.
2219. Detroit Heading, LLC
2220. GKN Sinter Metals, Inc.
2221. Greer Stop Nut, Inc.
2222. Hexcel Corporation
2223. Hydro Aluminum
2224. INA USA, Inc.
2225. JAE Electronics
2226. Kelsey-Hayes Company
2227. Koyo Corporation
2228. LBQ Foundry S.A. de C.V.
2229. Le Belier
2230. March Coatings, Inc.
2231. Miniature Precision Components
2232. NSS Technologies, Inc.
2233. Public Employee's Retirement System of Mississippi

2234. Quasar Industries, Inc.
2235. Raiffeisen Kapitalanlage-Gesellschaft m.b.H.
2236. Roater Coaters International, Inc.
2237. Robin Industries, Inc.
2238. Rothrist Tube (USA) Inc.
2239. S & Z Tool & Die, Inc.
2240. Saturn Electronics
2241. Serigraph, Inc.
2242. Serma Coat Limited Liability Co.
2243. Southwire Company
2244. SPS Technologies Waterford Company
2245. SPS Technologies, LLC
2246. Stichting Pensioenfonds ABP
2247. Sumitomo Corporation of America
2248. Teacher's Retirement System of Oklahoma
2249. TRW Canada Limited
2250. TRW Electronica Ensambles S.A. de C.V.
2251. TRW Vehicle Safety Systems, Inc.
2252. Valeo Climate Control Corp.
2253. Wamco, Inc.
2254. Wren Industries, Inc.
2255. Alicia M. Leonhard
2256. Avon Automotive
2257. Barnes Group Inc.
2258. BEI Sensors & Systems Company
2259. BEI Technologies, Inc.
2260. Cadillac Rubber & Plastic
2261. Castrol Industrial North America Inc.
2262. Daewoo International (America) Corp.
2263. Hitachi Magnetics Corporation
2264. Hoover Precision Products, Inc.
2265. Motion Industries, Inc.
2266. OSRAM Opto Semiconductors Inc.
2267. Penn United Technology
2268. Pridgeon & Clay, Inc.
2269. Sojitz Corporation of America
2270. Sony Electronics, Inc.
2271. Trans Tron, Ltd., Inc.
2272. Trans-Matic Mfg. Co., Inc.
2273. Wellman, Inc.
2274. Pullman Bank and Trust Company
2275. Behr Industries Corporation
2276. Eclipse Tool & Die, Inc.
2277. Huntsville Radio Service, Inc.

2278.   MacAuto USA, Inc.
2279.   Specmo Enterprises
2280.   Susan M. Buttitta
2281.   The Lee Company
2282.   Tricon Industries, Inc.
2283.   CSX Transporation, Inc.
2284.   AMR Industries
2285.   Appaloosa Management L.P.
2286.   Earl Washington
2287.   ENTEK International, LLC
2288.   ESPEC North America, Inc.
2289.   Jon C. Cox
2290.   JST Manufacturing Co., Ltd.
2291.   Lafonza Earl Washington
2292.   Law Debenture Trust Company Of New York
2293.   Morrie Wayne Henry
2294.   Proto Manufacturing
2295.   Rafael De Paoli
2296.   Schmidt Technology GmbH
2297.   Sensus Precision Die Casting, Inc.
2298.   Thermo NITON Analyzers LLC
2299.   Cascade Die Casting Group, Inc.
2300.   Cherokee North Kansas City, LLC
2301.   Deutsch Dagan Ltd.
2302.   Martin L. Shannon Shaw
2303.   Flow Dry Technology Ltd.
2304.   Yoder Industries Inc.
2305.   Master Products Inc.

**XXI.**   **Master Service List and 2002 List**

2306.   Airgas, Inc.
2307.   Aluminum International, Inc.
2308.   APL Co. Pte Ltd.
2309.   Armada Rubber Manufacturing Company
2310.   Bank of Lincolnwood
2311.   Bartech Group, Inc.
2312.   Brown Rudnick Berlack Israels LLP
2313.   Brush Engineered Materials
2314.   Calsonic Kansei North America, Inc.
2315.   Cameron County, Brownsville ISD
2316.   Capro, Ltd.
2317.   Cerberus Capital Management, L.P.
2318.   Chromalloy Gas Turbine Corporation
2319.   Cohen Weiss & Simon

2320. Coherent, Inc.
2321. Compuware Corporation
2322. Conceria Pasubio
2323. Contrarian Capital Management, L.L.C.
2324. CoorsTek, Inc.
2325. Curtis, Mallet-Prevost, Colt & Mosle LLP
2326. Daishinku (America) Corp.
2327. Dallas County
2328. Davis Polk & Wardwell
2329. Eikenberry & Associates, Inc.
2330. Federal Express Corporation
2331. Fischer Automotive Systems
2332. Floyd Manufacturing Co., Inc.
2333. Fortune Plastics Company
2334. Hewitt Tool & Die, Inc.
2335. Hodgson Russ LLP
2336. Honigman Miller Schwartz & Cohen LLP
2337. Industrial Ceramics Corporation
2338. Internal Revenue Service
2339. Jefferies & Company, Inc.
2340. KDS America
2341. Kramer Levin Naftalis & Frankel LLP
2342. Kurtzman Carson Consultants
2343. Latham & Watkins LLP
2344. Linear Technology Corporation
2345. Mays Chemical Company
2346. McDermott Will & Emery LLP
2347. McTigue Law Firm
2348. MEMC Electronic Materials, Inc.
2349. Millwood, Inc.
2350. Morrison Cohen LLP
2351. Motorola Semiconductor Systems
2352. National City Commercial Capital
2353. New Jersey Self-Insurers Guaranty Association
2354. Northeast Regional Office of Securities and Exchange Commission
2355. Pacific Gas Turbine Center, LLC
2356. Penske Truck Leasing Co., L.P.
2357. Phillips Nizer LLP
2358. Priority Health
2359. QAD, Inc.
2360. Quadrangle Debt Recovery Advisors, LLC
2361. Quadrangle Group LLC
2362. Quaker Chemical Corporation
2363. Rassini, S.A. de C.V.

2364.  Relco, Inc.
2365.  Sanders Lead Co.
2366.  SANLUIS Rassini International, Inc.
2367.  Seyfarth Shaw LLP
2368.  Simpson Thatcher & Bartlett LLP
2369.  Solectron Corporation
2370.  Solectron Invotronics
2371.  Spencer Fane Britt & Browne LLP
2372.  Stevens & Lee, P.C.
2373.  Tarrant County
2374.  Teleflex Automotive Manufacturing Corporation
2375.  Teleflex Incorporated
2376.  Teleflex Morse (Capro)
2377.  The Durham Companies, Inc.
2378.  Thermotech Company
2379.  Thyssenkrupp Stahl Company
2380.  Thyssenkrupp Waupaca, Inc.
2381.  Togut, Segal & Segal LLP
2382.  Tonolli Canada Ltd.
2383.  Toyota Tsusho America, Inc.
2384.  Tyz-All Plastics, Inc.
2385.  Universal Metal Hose, Co.
2386.  UPS Supply Chain Solutions, Inc.
2387.  V.J. ElectroniX, Inc.
2388.  Veritas Software Corporation
2389.  VJ Technologies, Inc.
2390.  Wako Electronics (USA), Inc.
2391.  Ward Products, LLC
2392.  Warner Stevens, L.L.P.
2393.  Weil, Gotshal & Manges LLP
2394.  Worker's Compensation Agency
2395.  975 Opdyke, L.P.
2396.  Adell Plastics, Inc.
2397.  America Online, Inc.
2398.  American Aikoku Alpha, Inc.
2399.  American Finance Group, Inc.
2400.  AP Racing
2401.  APS Clearing
2402.  ATS Automation Tooling Systems, Inc.
2403.  Averitt Express, Inc.
2404.  Batesville Tool & Die
2405.  Bibielle S.p.A.
2406.  Bing Metals Group, Inc.
2407.  Brazeway, Inc.

2408.   Brembo S.p.A.
2409.   Brighton Limited Partnership
2410.   Canon U.S.A. Inc.
2411.   Chicago Miniature Optoelectronic Technologies, Inc.
2412.   Computer Patent Annuities Limited Partnership
2413.   Cornell University
2414.   Crown Enterprises, Inc.
2415.   Dayton Supply & Tool Company
2416.   Diemolding Corporation
2417.   D-J, Inc.
2418.   Doosan Infracore America Corp.
2419.   DPS Information Services, Inc.
2420.   Economy Transport, Inc.
2421.   Emhart Technologies LLL
2422.   Etkin Equities, Inc.
2423.   Excel Global Logistics, Inc.
2424.   FCI Connect, Inc.
2425.   Flextech, Inc.
2426.   Foster Electric USA, Inc.
2427.   General Chemical Performance Products LLC
2428.   Gentral Transport International, Inc.
2429.   Grote Industries
2430.   Guaranty Capital Corporation
2431.   GW Plastics, Inc.
2432.   Hosiden American Corporation
2433.   IBJTC Business Credit Corporation
2434.   ICX Corporation
2435.   Ideal Tool Company, Inc.
2436.   ITT Industries, Inc.
2437.   ITW Mortgage Investments IV, Inc.
2438.   Jiffy-Tite Co., Inc.
2439.   Jon Ballin
2440.   Kamax L.P.
2441.   Kuss Corporation
2442.   Lankfer Diversified Industries, Inc.
2443.   Logistics Insight Corp (LINC)
2444.   Madison Capital Management
2445.   Maquilas Teta Kawi, S.A. de C.V.
2446.   Marquardt GmbH
2447.   Marquardt Switches, Inc.
2448.   Marshall E. Campbell Company
2449.   McAlpin Industries, Inc.
2450.   MeadWestvaco Corporation
2451.   Metal Surfaces, Inc.

2452. Metro Fibres, Inc.
2453. Miami-Dade County
2454. Michigan Heritage Bank
2455. Milwaukee Investment Company
2456. Moody's Investors Service
2457. National Instruments Corporation
2458. NDK America, Inc.
2459. NDK Crystal, Inc.
2460. Nichicon (America) Corporation
2461. Noma Company
2462. Norsk Hydro Canada, Inc.
2463. Nova Chemicals, Inc.
2464. Oasis SiliconSystems AG
2465. Offshore International, Inc.
2466. Oki Semiconductor Company
2467. Optrex America, Inc.
2468. Oracle Credit Corporation
2469. Oracle USA, Inc.
2470. Orbotech, Inc.
2471. Parlex Corporation
2472. PIA Group
2473. Pillarhouse (U.S.A.), Inc.
2474. Precision Mold and Tool Group
2475. Prince George County, Maryland
2476. Professional Technologies Services
2477. Reliable Castings
2478. RF Monolithics, Inc.
2479. Royberg, Inc.
2480. Sagami America, Ltd.
2481. SAP America, Inc.
2482. Schunk Graphite Technology
2483. Seven Seventeen Credit Union
2484. Siemens Logistics Assembly Systems, Inc.
2485. Silver Point Capital, L.P.
2486. SL America, Inc.
2487. SL Tennessee, LLC
2488. SMSC NA Automotive, LLC
2489. Solution Recovery Services
2490. Source Electronics, Inc.
2491. Southwest Metal Finishing, Inc.
2492. Special Devices, Inc.
2493. Standard Microsystems Corporation
2494. Stanley Electric Sales of America, Inc.
2495. Sumco, Inc.

2496. Taiho Corporation of America
2497. Taxing Authorities
2498. Tessy Plastics Corp.
2499. Texas Comptroller of Public Accounts
2500. The Proctor & Gamble Company
2501. Toshiba America Electronic Components, Inc
2502. Trutron Corporation
2503. UGS Corporation
2504. Umicore Autocat Canada Corporation
2505. United Power, Inc.
2506. Universal Am-Can, Ltd.
2507. Universal Truckload Services, Inc.
2508. Vibracoustic de Mexico, S.A. de C.V.
2509. Victory Packaging
2510. WL. Ross & Co., LLC
2511. ZF Group North America Operations, Inc.

# EXHIBIT O

Delphi Corporation
Special Party

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---------|---------|----------|----------|------|-------|-----|
| Chadbourne & Parke LLP | Howard Seife Esq | 30 Rockefellar Plaza | | New York | NY | 10112 |

4/26/2006 12:40 PM
Booz Allen Service List

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

# EXHIBIT P

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX |
|---------|---------|----------|----------|------|-------|-----|-------|-----|
| Inovise Medical Inc | Chief Financial Officer | 10565 SW Nimbus Ave Suite 100 | | Portland | OR | 97223 | | 503-431-3801 |

4/26/2006 12:46 PM
Inovise Motion Service List

Page 1 of 1

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

# EXHIBIT Q

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | Country |
|---------|---------|----------|----------|------|-------|-----|---------|
| Blake Cassels & Graydon LLP | Attn: Susan M Grundy | 199 Bay Street Suite 2800 | Commerce Court West | Toronto | Ontario | M 5L 1A9 | Canada |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

4/26/2006 12:39 PM
Blake Application Service List

# EXHIBIT R

Delphi Corporation
Special Party

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---------|---------|----------|----------|------|-------|-----|
| Delphi Automotive Systems LLC | Francisco Ordonez | 1441 West Long Lake Road | | Troy | MI | 48098 |

4/26/2006 12:51 PM
XM Motion Service List

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

# EXHIBIT S

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---------|---------|----------|----------|------|-------|-----|
| Varnum Riddering Schmidt & Howlett LLP | Attn: Michael S. McElwee Esq | 333 Bridge Street, N.W. Suite 1700 | | Grand Rapids | MI | 49504 |
| Diconza Law PC | Attn: Gerard Diconza Esq | 630 Third Avenue | | New York | NY | 10017 |

In re: Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

4/26/2006 12:45 PM
Furukawa Service List

# EXHIBIT T

Delphi Corporation
Special Party

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX | EMAIL | PARTY / FUNCTION |
|---|---|---|---|---|---|---|---|---|---|---|
| Curtis, Mallet-Prevost, Colt & mosle LLP | Steven J. Reisman | 101 Park Avenue | | New York | NY | 10178-0061 | 2126396000 | 2126971559 | sreisman@cm-p.com | Counsel for Flextronics International USA, Inc. |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

4/26/2006 12:44 PM
Flextronics Service List

# EXHIBIT U

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX |
|---|---|---|---|---|---|---|---|---|
| Ropes & Gray | Stuart Hirshfield | 45 Rockefellar Plaza | | New York | NY | 10111-0087 | 212-841-5700 | 212-841-5725 |
| Ropes & Gray | Richard Inz | 1251 Avenue of the Americas | | New York | NY | 10020-1105 | 212-596-9000 | 212-596-9090 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

4/26/2006 12:42 PM
Denso Service List

# EXHIBIT V

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PARTY / FUNCTION |
|---------|---------|----------|----------|------|-------|-----|------------------|
| Sullivan & Cromwell LLP | Attn: Robert M. Osgood | One Fetter Lane | | London | England | EC4A 1AN | On behalf of Morgan Defendants |
| Brown & Connery LLP | Attn: Michael J. Vassalotti | 360 Haddon Avenue | PO Box 539 | Westmont | NJ | 08108 | On behalf of SGL Defendants |
| Jenner & Block LLP | Attn: Matthew M. Neumeier | One IBM Plaza | | Chicago | IL | 60611 | On behalf of Schunk Defendants |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

4/26/2006 12:44 PM
Electrical Carbon Service List

# EXHIBIT W

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | PHONE | FAX |
|---|---|---|---|---|---|---|---|---|
| Ropes & Gray | Stuart Hirshfield | 45 Rockefellar Plaza | | New York | NY | 10111-0087 | 212-841-5700 | 212-841-5725 |
| Ropes & Gray | Richard Inz | 1251 Avenue of the Americas | | New York | NY | 10020-1105 | 212-596-9000 | 212-596-9090 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

4/26/2006 12:42 PM
Denso Service List

# EXHIBIT X

Delphi Corporation
Special Party

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---------|---------|----------|----------|------|-------|-----|
| PageMill Partners LLC | Attn: Milledge A. Hart | 2475 Hanover Street | | Palo Alto | CA | 94304 |

4/26/2006 12:50 PM
Page Mill Service List

Page 1 of 1

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

# EXHIBIT Y

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP |
|---------|---------|----------|----------|------|-------|-----|
| Mayer Brown Rowe & Maw LLP | Attn: Paul J.N. Roy | 71 South Wacker | | Chicago | IL | 60606 |

4/26/2006 12:47 PM
Mayer Brown Service List

Page 1 of 1

In re: Delphi Corporation, et al.
Case No. 05-44481 (RDD)