Hearing Date and Time: June 20, 2006, 10:00 a.m.
Objection Deadline: June 13, 2006, 4:00 p.m.

**COVINGTON & BURLING**

1330 Avenue of the Americas
NEW YORK, NY  10019-5400
(212) 841-1000
Aaron R. Marcu (AM-6309)
Susan Power Johnston (SJ-9386)

Foreign Trade and Special Corporate Committee
Counsel to the Debtors and Debtors-in-Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                    :
　　　In re                                          :    Chapter 11
                                                    :
DELPHI CORPORATION, et al.,                          :    Case No. 05-44481 (RDD)
                                                    :
                              Debtors.               :    (Jointly Administered)
                                                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**REVISED FIRST INTERIM APPLICATION OF COVINGTON & BURLING,
FOREIGN TRADE AND SPECIAL CORPORATE COMMITTEE LEGAL COUNSEL
TO THE DEBTORS AND DEBTORS-IN-POSSESSION,
FOR ALLOWANCE OF COMPENSATION FOR SERVICES
RENDERED AND REIMBURSEMENT OF EXPENSES INCURRED
FOR THE PERIOD FROM OCTOBER 8, 2005, THROUGH JANUARY 31, 2006**

TO THE HONORABLE ROBERT D. DRAIN,
UNITED STATES BANKRUPTCY JUDGE:

　　　　　　　Covington & Burling ("**Covington**"), foreign trade and special corporate

committee legal counsel to the above-captioned debtors and debtors-in-possession (collectively,

"**Delphi**", the "**Company**" or the "**Debtors**"), submits this first interim application (the "**First**

**Application**") for allowance of compensation for professional services rendered and

reimbursement of expenses incurred from October 8, 2005, through January 31, 2006 (the "**First Application Period**").

## PRELIMINARY STATEMENT

1.    By this First Application and pursuant to sections 330 and 331 of chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rule 2016 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), Covington requests that this Court authorize: (a) interim allowance of compensation for professional services Covington rendered during the First Application Period in the amount of $490,281.00; and (b) the reimbursement of actual and necessary expenses Covington incurred in connection with the rendition of such professional services in the amount of  $20,653.23.[1]

2.    Covington's requests reflect the requisite time, skill, and effort Covington expended during the First Application Period providing assistance to the Company as its foreign trade and special corporate committee legal counsel.  In this capacity, Covington has:  (a) advised and assisted the Company on U.S. foreign trade control matters, including the scope, applicability, licensing, and compliance requirements under the International Traffic in Arms Regulations, Directorate of Defense Controls, U.S. Department of State; (b) advised a Special Committee (the "**Special Committee**") of the Company's Board of Directors (the "**Board**") in connection with demands which have been or may be made by Delphi shareholders with regard to various accounting issues now under investigation and in litigation; (c) advised the Special Committee in connection with the Company's external auditor selection process; and (d)

---

[1]    Covington reserves its right to seek at a later date compensation for expenses incurred during the First Application Period that may not have been posted as of yet and thus are not included herein.

advised the Company regarding indemnification of and advancement of funds to certain

directors and officers.

3.    This Court has jurisdiction over this First Application pursuant to

28 U.S.C. §§ 157 and 1334.  Venue of these cases and this First Application is proper in this

district pursuant to 28 U.S.C. §§1408 and 1409.  This matter is a core proceeding under

28 U.S.C. § 157(b)(2).

## **GENERAL BACKGROUND**

4.    On October 8, 2005 (the "**Petition Date**"), Delphi and certain of its U.S.

subsidiaries filed voluntary petitions in this Court for relief under chapter 11 of the Bankruptcy

Code.  On October 14, 2005, three additional U.S. subsidiaries of Delphi also sought relief in

this Court under chapter 11 of the Bankruptcy Code.  The Debtors continue to operate their

businesses and manage their properties as debtors-in-possession pursuant to sections 1107(b)

and 1108 of the Bankruptcy Code.  This Court entered orders directing the joint administration

of the Debtors' chapter 11 cases (Docket Nos. 28 and 404).

5.    On October 17, 2005, the Office of the United States Trustee appointed an

official committee of unsecured creditors.  On March 22, 2006, the Court directed the United

States Trustee to appoint an equity committee to represent the interests of Delphi's

shareholders.  No trustee or examiner has been appointed in the Debtors' cases.

6.    On November 4, 2005, the Court issued an Order Under 11 U.S.C. §§ 331

(I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses of

Professionals and (II) Setting a Final Hearing Thereon (Docket No. 869) (the "**Interim**

**Compensation Order**"), pursuant to which Covington makes this First Application.

7.    On February 17, 2006, the Debtors filed an Application for Order under 11 U.S.C. §§ 327(e) and 1107(b) and Fed. R. Bankr. P. 2014 Authorizing Employment and Retention of Covington & Burling as Foreign Trade and Special Corporate Committee Legal Counsel to Debtors (Docket No. 2424) (the "**Retention Application**"), seeking the retention of Covington *nunc pro tunc* to October 8, 2005.

8.    On March 9, 2006, the Court granted the Retention Application, authorizing the employment and retention of Covington as Foreign Trade and Special Corporate Committee Legal Counsel to the Debtors (Docket No. 2769) (the "**Retention Order"**).

9.    Before the Petition Date, Covington performed numerous services for the Debtors.  <u>See</u> Affidavit of Aaron R. Marcu Pursuant to Section 504 of the Bankruptcy Code and Bankruptcy Rule 2016 (the "**Marcu Affidavit**"), attached as **Exhibit A**.  As a result of these prepetition services, Covington was owed, and continues to be owed, approximately $263,559.79.  Neither the compensation nor expenses requested pursuant to this First Application include any portion of this amount.  Covington will seek allowance of a prepetition claim for these amounts at the proper time.

## <u>COVINGTON'S FEES AND EXPENSES</u>

10.    Covington's services in these cases have been substantial, necessary, and beneficial to the Debtors and the Board, the Company's creditors, and other parties-in-interest. Throughout the First Application Period, Covington has addressed a variety of pressing issues that required Covington, in the discharge of its professional responsibilities, to devote substantial time by its professionals on an ongoing and, at times, daily basis.

11.    As of the date of this First Application, Covington has not received payment for the services rendered and expenses incurred covered in this First Application,

although Covington has submitted invoices for postpetition services rendered to the Board and to the Debtors for payment pursuant to the Interim Compensation Order.

12.    No agreement or understanding exists between Covington or any other entity for the sharing of compensation to be received for services rendered in or in connection with this case.

13.    Covington's personnel maintain written contemporaneous records of the time expended in rendering professional services to the Debtors and the Board. A copy of the daily time records for the First Application Period, broken down by matter and listing the name of the attorney or paraprofessional, the date on which the services were performed, and the amount of time spent in performing the services, is attached as **Exhibit B**.

14.    Because many of the services Covington rendered during the First Application Period are confidential and sensitive, Covington has filed Exhibit B to this Application under seal pursuant to the Order Approving Joint Interest Agreement Between Debtors and Official Committee of Unsecured Creditors, Implementing Protective Order And Approving Procedures to Protect Information in Fee Statements (the "**Joint Interest Order**") (Docket No. 3279).

15.    For the convenience of the Court and parties-in-interest, attached as **Exhibit C** is a list of the attorneys and paraprofessionals who have worked on Delphi matters during the First Application Period, the aggregate time expended by each individual during the First Application Period, his or her hourly billing rate during the First Application Period, and the amount of Covington's fees attributable to each individual.[2]  Additionally, included as part

---

[2]    Covington customarily adjusts its billing rates on an annual basis, usually as of October 1 of each year. However, as indicated in the Marcu Affidavit, if Covington increases its rates during the pendency of the Delphi (continued…)

of Exhibit C is a list of all the matters for which services were rendered and the aggregate

amount of hours and fees expended for each of those matters.

16.    Covington also maintains records of all actual and necessary out-of-pocket

expenses incurred in connection with the rendition of professional services.  A schedule setting

forth the categories of expenses and amounts for which reimbursement is requested is attached

as **Exhibit D**.

## SUMMARY OF SERVICES RENDERED

17.    The following summary highlights the principal areas to which Covington

devoted substantial time and attention during the First Application Period.  The full breadth of

Covington's services is reflected in Covington's time records.

### Foreign Trade Control Representation

18.    Covington provided advice and assistance to the Debtors on many facets

of U.S. export and import laws and restrictions, including compliance with International Traffic

in Arms Regulations administered by the Department of Defense Trade Controls of the U.S.

Department of State, the Export Administration Regulations administered by the Bureau of

Industry and Security of the U.S. Department of Commerce and several economic sanctions

programs administered by the Office of Foreign Assets Control, U.S. Department of the

Treasury, and other foreign trade controls laws, including U.S. laws and regulations responsive

to the Arab boycott of Israel.  In addition, Covington advised the Debtors on registration,

licensing, reporting, recordkeeping and other requirements imposed by the foregoing entities

---

proceeding, it will seek compensation subject to the terms of its engagement letter dated June 8, 2005, pursuant to which Covington will not increase its rates charged with respect to the representation of the Special Committee until June 8, 2006, other than for the regular progression of Covington associates as they increase in seniority.

and other departments and agencies of the U.S. government for the import of goods from and

the export of goods to various foreign countries and for the supply of parts and components to

contractors of the U.S. government that are manufacturing weapons systems for the U.S.

Department of Defense for utilization by the military forces of the United States.

<u>Special Committee Representation</u>

19.    In response to a demand letter issued by a Delphi shareholder, a Special

Committee of the Board was formed to investigate accounting issues now in litigation and/or

under investigation, to advise the Board regarding whether there are viable claims against

potential defendants in connection with these issues, and, if so, to make recommendations

regarding whether it is in the Company's best interest to pursue them.

20.    As counsel to the Special Committee, Covington attorneys reviewed

numerous documents relating to these accounting issues, including emails, notes, memoranda,

correspondence, presentations, contracts, and accounting records.  Covington attorneys

conducted research regarding legal standards applicable to a corporate Board's response to a

shareholder demand and research regarding potential causes of action against current and

former Delphi directors and officers.  Covington attorneys participated in numerous meetings

and telephone conferences with the members of the Special Committee to provide updates on

work completed, to present key evidence, to provide advice regarding proposed investigative

steps, and to receive direction from the Special Committee.

21.    Covington attorneys prepared for and conducted, or assisted members of

the Special Committee in conducting, interviews of certain current and former officers and

directors of the Company.  In preparation for these interviews, Covington attorneys reviewed

key documents, prepared materials and exhibits to be used during the interviews. In addition, Covington attorneys prepared memoranda regarding those interviews.

Auditor Selection Process Representation

22.    Covington advised the Special Committee in connection with the process utilized by management and the Audit Committee to select a new external auditor.

Debtor Representation

23.    Covington provided advice to the Company regarding the indemnification of and advancement of funds to certain Delphi directors and officers, and in connection therewith, Covington attorneys reviewed the Company bylaws, conducted legal research and drafted internal legal memoranda. Covington attorneys discussed their findings and presented their recommendations in telephone conferences with in-house counsel, the members of the Special Committee and the Board.

Retention and Case Administration

24.    During the First Application Period, Covington prepared and drafted its Retention Application and supporting documents after reviewing the applicable federal and local requirements, and prepared and executed an extensive conflict check to determine whether the proposed representation would present any conflict of interest.

25.    Throughout the progress of the Debtors' chapter 11 cases, Covington has communicated extensively with the Debtors, the Board and the Special Committee, participating in meetings and telephone conferences with representatives of the Debtors and members of the Special Committee, and exchanging email and other correspondence. These communications were crucial in keeping the Debtors, the Board and the members of the Special Committee apprised of the status of issues of concern to them.

26.     As highlighted above, Covington has provided essential services to the Debtors and the Board, and these services have benefited the Debtors, the Board, their creditors, and other parties-in-interest in these bankruptcy cases.  Covington rendered these services in an expeditious and efficient manner and in compliance with the requirements of the Bankruptcy Code.

## COVINGTON'S REQUEST FOR INTERIM COMPENSATION

27.     The allowance of interim compensation for services rendered and reimbursement of expenses incurred in bankruptcy cases is expressly provided for in section 331 of the Bankruptcy Code:

> [A] debtor's attorney, or any professional person . . . may apply to the court not more than once every 120 days after an order for relief in a case under this title, or more often if the court permits, for such compensation for services rendered . . . as is provided under section 330 of this title.

11 U.S.C. § 331.

28.     The Interim Compensation Order requires professionals in the Debtors' chapter 11 cases to serve monthly fee statements upon notice parties listed in that Order in order to obtain allowance of compensation and reimbursement of 80% of fees and 100% of expenses identified in each monthly statement.  Approximately every 120 days, professionals in the Debtors' chapter 11 cases serve and file with the Court an application for interim or final compensation pursuant to sections 330 and 331 of the Bankruptcy Code.  The Interim Compensation Order is not intended to alter the fee application requirements set forth in sections 330 and 331 of the Bankruptcy Code.  See Interim Compensation Order at ¶ 2(b).

29.     Section 330(a)(1) of the Bankruptcy Code provides, in pertinent part, that a court may award to a professional person, including a debtor's attorney:

> reasonable compensation for actual, necessary services rendered by
> the . . . professional person, or attorney . . . .

11 U.S.C. § 330(a)(1).  The Congressional intent and policy expressed in section 330 of the

Bankruptcy Code is to provide for adequate compensation to attract qualified and competent

practitioners to bankruptcy cases.

30.    Covington submits that its request for interim allowance of compensation

is reasonable.  The services rendered by Covington, as highlighted above, were necessary to

fulfill the Debtors' and the Board's requests for legal counsel.

31.    Covington has made, and continues to make, efforts to work with the

Debtors' other counsel to ensure that there is no unnecessary duplication of work between

Covington and such other firms.  Covington and the other firms retained in these chapter 11

cases have clearly delineated the division of labor between them to maximize the efficient usage

of their combined resources by the Debtors' estate.

32.    The services rendered by Covington during the First Application Period

were performed diligently and efficiently.  When possible, Covington delegated tasks to lower-

cost junior attorneys or, for discrete matters, to attorneys with specialized expertise in the

particular task at issue.  While that approach may have required intra-office conferences or

involved individual attorneys who spent only a few hours on the matter at hand, the net result

was enhanced cost efficiency.  The blended hourly rate for all attorneys and paraprofessionals is

approximately $334.00, which is within the range of fees normally charged for similar services

rendered in a chapter 11 case by major law firms in the New York City and Washington, D.C.

areas.

33.    The services rendered to the Debtors by Covington during the First

Application Period required an aggregate expenditure of 1,432.40 recorded hours of the time of

attorneys and paraprofessionals.  Based upon the number of hours spent and Covington's hourly

billing rate established by the engagement letter dated June 8, 2005, the value of the recorded

services rendered is $490,281.00.  Exhibit C sets forth a list of such individuals, the aggregate

amount of time expended by each and the current hourly billing rate for each.  The fair and

reasonable value of the services rendered and recorded by Covington to the Debtors during the

First Application Period is set forth in Exhibit B and summarized above.

## DISBURSEMENTS

34.    Covington incurred actual and necessary out-of-pocket expenses during

the First Application Period, in connection with the rendition of the professional services

described above, in the amount of $20,653.23 as set forth in detail in Exhibit D.[3]

35.    The disbursements for which Covington seeks reimbursement include the

following:

1.    Duplicating - Charged at $0.15 per page;

2.    Telecommunications - Long-distance calls and long-distance facsimile
transmissions are billed at actual cost.  There is no charge for incoming
facsimiles;

3.    Computer Research Charges - Covington's practice is to bill clients for
LEXIS and Westlaw research at actual cost;

4.    Overtime Expenses - Covington's practice is to allow any attorney
working later than 8:00 p.m. and any legal assistants working later than
7:30 p.m. to charge a working meal to the appropriate client.  The meal
charge is limited to $20 per person;[4]

---

[3]    Covington's standard practice is to treat certain expenses as having been incurred when such obligations
are recorded and reflected as payable in Covington's accounting system.

[4]    All overtime meals are therefore in compliance with this Court's Local Administrative Order M-150, dated
April 19, 1995.

5.     Local Car Service - Covington's practice is to allow attorneys, legal assistants and secretaries to charge car service to the appropriate client after 8:00 p.m.;

6.     Delivery Services - Covington's practice is to charge postal, overnight delivery and courier services at actual cost; and

7.     Overtime Word Processing Charges and Secretarial Overtime - Covington's practice is to bill clients for overtime word processing charges and secretarial overtime at actual cost, and, therefore, such charges are included in this First Application.

## PROCEDURE

36.     In accordance with the Interim Compensation Order, the Joint Interest Order, and the Court's local rules, notice of this First Application has been provided to the 2002 notice list, and the First Application with all exhibits has been served on: the Debtors, their attorneys, the United States Trustee and counsel to the Official Committee of Unsecured Creditors.  The First Application without the time records has been served on  counsel for the agent under the Debtors' prepetition credit facility and counsel for the agent under the Debtors' postpetition credit facility.  Covington submits that given the circumstances and the notice of the relief requested herein, no other or further notice is required.

37.     As the First Application presents no novel issue of law, Covington requests that the Court dispense with the requirement of Local Rule 9013-1(b) that a memorandum of law be submitted herewith.

38.     No previous motion for the relief sought herein has been made to this or any other court.

## CONCLUSION

WHEREFORE, Covington respectfully requests that this Court enter an order

awarding Covington:

1.    interim compensation from the Debtors for services rendered for the

period from October 8, 2005, through January 31, 2006, inclusive, in the amount of $490,281.00;

2.    reimbursement of actual and necessary expenses incurred in connection

with the rendition of such services, in the amount of $20,653.23; and

3.    such other and further relief as may be just and proper.


Dated:  April 28, 2006

                    **COVINGTON & BURLING**


                    By:    /s/ Aaron R. Marcu
                         Aaron R. Marcu  (AM-6309)
                         Susan Power Johnston  (SJ-9386)

                    1330 Avenue of the Americas
                    New York, NY  10019-5400
                    (212) 841-1000

                    **Foreign Trade and Special Corporate
                    Committee Counsel to the Debtors and
                    Debtors-in-Possession**