Joseph D. Frank (JF-6085)
Jeremy C. Kleinman (JK-0080)
FRANK/GECKER LLP
325 North LaSalle Street, Suite 625
Chicago, Illinois 60610
(312) 276-1400 – telephone
(312) 276-0035 – facsimile

Counsel for Jones Lang LaSalle Americas, Inc.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, *et al.*, | ) | Case No. 05-44481 (RDD) |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**JONES LANG LASALLE AMERICAS, INC.'S FIRST
INTERIM APPLICATION FOR ALLOWANCE AND
PAYMENT OF COMPENSATION AND REIMBURSEMENT
OF EXPENSES PURUSANT TO 11 U.S.C. §§ 328, 330 AND 331**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Jones Lang LaSalle Americas, Inc. ("JLL") submits this first interim application (the "First Interim Application"), pursuant to 11 U.S.C. §§ 328, 330 and 331 and the Order Under 11 U.S.C. § 331 Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals (the "Compensation Order"), for (i) allowance of compensation in the amount of $180,103.84 for professional services performed as the real estate administrative and transaction services provider to Delphi Corporation and its related Debtor entities (collectively, the "Debtors") during the period of November 3, 2005 through January 31, 2006 (the "Application Period") and reimbursement of expenses in the amount of $4,208.73 incurred in connection therewith, and (ii) payment in the amount of $62,021.17 in connection therewith.

1. This Court has jurisdiction over this First Interim Application pursuant to 28 U.S.C. § 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B) and (M).

2. Venue of these cases and this First Interim Application is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The statutory predicates for the relief sought herein are 11 U.S.C. §§ 105(a), 328 330 and 331 and Fed. R. Bankr. P. 2016.

## BACKGROUND

4. On October 8, 2005 (the "Petition Date"), the Debtors filed voluntary petitions for relief under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §§ 101 et seq.) (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York.

5. The Debtors continue to manage their property and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

6. On November 9, 2005, the Debtors filed the Application for Order under 11 U.S.C. §§ 327(a) and 328 and Fed. R. Bankr. P. 1014(a) Authorizing Employment and Retention of Jones Lang LaSalle Americas, Inc. as Real Estate Administrative and Transaction Services Provider to Debtors (Docket No. 996) (the "JLL Retention Application"). In the JLL Retention Application, the Debtors sought authority to retain JLL, a global integrated real estate services provider specializing in facility services, transactional services and lease administration, to perform professional services related to the Debtors' real estate and real property leases.

7. The specific terms of the Debtors' engagement of JLL were set forth in the Real Estate Services Agreement between Delphi Automotive Systems LLC and Jones Lang LaSalle Americas, Inc., dated September 2, 2005, as amended by that certain First Amendment to Real

Estate Services Agreement dated November 9, 2005 (the "Engagement Agreement"), which was attached to the JLL Retention Application. Prior to the Petition Date, JLL advised the Debtors regarding real estate matters, and pursuant to the Engagement Agreement, JLL has expanded the range of administrative and transaction services it provides to the Debtors. This prior experience provided JLL greater familiarity with the Debtors' real estate portfolio and interests and has rendered JLL well qualified to assist the Debtors with the more than 400 parcels of real property that the Debtors own or lease in nearly 40 countries worldwide.

8. On December 1, 2005, this Court entered an Order granting the JLL Retention Application (Docket No. 1385) (the "JLL Order"), retroactive to November 3, 2005.

9. The Debtors have retained JLL upon terms consistent with JLL's general billing practices. In the ordinary course of its business and in similar engagements both inside and outside of bankruptcy, JLL charges its clients a set monthly fee for each professional providing services to the client.[1] JLL does not charge its clients on an hourly basis for the particular tasks its professionals perform, and JLL does not require its professionals to record the specific tasks performed or the amount of time spent on those tasks each day, which is normal practice in JLL's business. As set forth in the Engagement Agreement, JLL is to be compensated for the services of these professionals according to the following formula:

> Jones Lang LaSalle will be entitled to a fee for Administrative Services in an amount equal to the sum of: (i) the cost of salary of all Administrative Services Account Personnel working exclusively on the Delphi account (excluding bonuses, benefit expenses and payroll taxes) in accordance with a salary schedule acceptable to Delphi . . . and (ii) an overheard allocation and profit factor equal to seventy-five (75%) percent for Administrative Services Account Personnel of (i) above.
>
> and

---

[1] During the Application Period, each of the professionals for whom JLL seeks compensation provided services exclusively to the Debtors, dedicating all of their work to services for the Debtors.

- 3 -

> Jones Lang LaSalle will be entitled to a fee for Transaction Services Account Personnel in an amount equal to the sum of: (i) the cost of salary of all Transaction Services Account Personnel working exclusively on the Delphi account (excluding bonuses, benefit expenses and payroll taxes) in accordance with a salary schedule acceptable to Delphi . . . and (ii) an overheard allocation and profit factor equal to fifty-five (55%) percent for Transaction Services Account Personnel of (i) above.

Engagement Agreement ¶¶ IA, IIA.

10. In addition to the compensation structure outlined above, as set forth in Section 6.4(B) of the Engagement Agreement, the parties have agreed that JLL will be entitled to additional compensation related to the setup and maintenance of the Delphi+ Lease Administration System, a proprietary lease administration database that will permit JLL to manage the Debtors' worldwide owned and leased real property portfolio. As set forth in Section 6.4(B):

> The fee for the Delphi+ Lease Administration System is Eighteen Thousand Dollars ($18,000) per annum. In addition, Delphi shall pay Jones Lang LaSalle a one-time setup fee of Twenty-Five Thousand Dollars ($25,000.00) for the setup and implementation of the lease administration database, Delphi+ Lease Administration, and its successors. This fee covers establishment of Delphi's specific website utilized by the system, migration of data from the previously existing database, establishment of a base set of lease administration reports, creation of user ID's for accessing the system and one (1) web-based training class on system usage.

Engagement Agreement, ¶ 6.4(B).

11. The Delphi+ Lease Administration database, customized to meet the specific needs of the Debtors, has now been completed to the Debtors' satisfaction. Pursuant to the terms of the Engagement Agreement, JLL is now entitled to seek allowance and payment the $25,000 setup fee (the "Setup Fee") discussed above.[2] This Setup Fee is also intended to cover the cost

---

[2] In Paragraph 23 of the JLL Retention Application, the Debtors make specific reference to this Setup Fee, but incorrectly list the amount as $27,000. Notwithstanding the terms of the JLL Retention Agreement, JLL seeks only $25,000.

of training the Debtors' personnel to use this database.  In addition, JLL is also entitled to assess the $18,000 lease administration fee (the "Lease Administration Fee") contemplated by Section 6.4 of the Engagement Agreement.  Although the Engagement Agreement does not specify the timing of such payment, for ease of administration, JLL will invoice the Debtors as part of its request for payment of monthly compensation at a rate $1,500 per month ($1/12^{th}$ of $18,000).

12.    JLL has not previously invoiced the Debtors for payment of the Setup Fee or the Lease Administration Fee.  JLL now seeks allowance and payment of the Setup Fee and the Lease Administration Fees for November, December and January for the first time as part of this First Interim Application.

## RELIEF REQUESTED

13.    By this First Interim Application, JLL requests that the Court allow, on an interim basis, expenses of $4,208.73 and compensation of $180,103.84 (including the $25,000 Setup Fee and $4,500 Lease Administration Fees described above) for professional services rendered by JLL to the Debtors during the Application Period.

14.    As contemplated by the Engagement Agreement, JLL has provided administrative and transaction management services relating to the Debtors' substantial real estate and leases portfolios.  JLL has supplied five professionals, each of whom has dedicated 100% of his or her work during the Application Period providing the Debtors with comprehensive services concerning their domestic and international leases and real property.

15.    The professional services provided to the Debtors by JLL's professionals during the Application Period generally fall within two categories:  (i) the analysis and administration of the Debtors' leases; and (ii) the investigation, analysis and management of the Debtors' potential new real estate sale, purchase and lease transactions.  Services rendered by JLL's professionals in each category have been essential to the Debtors' administration of their bankruptcy estates.

**Lease Administration Services**

16.     During the Application Period, JLL has assisted the Debtors in developing a better means by which to track, analyze and manage the Debtors' active lease portfolio. Specifically, JLL's services have included: abstracting and interpreting commercial lease documents; performing a detailed analysis of the Debtors' rental obligations under their leases; processing payments in satisfaction of the Debtors' various lease obligations; billing and collecting on account of third-party tenant obligations to the Debtors; communicating with various landlords and tenants on behalf of the Debtors; assisting with the resolution of outstanding rent issues and other administrative landlord/tenant issues arising in the Debtors' bankruptcy cases; reviewing annual landlord reconciliation statements and calculations to ensure accuracy and lease compliance; and entry and management of data concerning lease documents and accounts.

17.     During the Application Period, Janice Lannoo and Lois Jankow performed the above-described lease administration services on behalf of JLL. Each rendered services exclusively to the Debtors throughout the Application Period and are located at the Debtors' Troy, Michigan headquarters on a full-time basis.

*Janice Lannoo* serves as a Lease Analyst at the Debtor's headquarters in Troy, Michigan. Ms. Lannoo is a graduate of the Detroit Business Institute and has 11 years of experience in the field of commercial real estate lease administration and analysis. Ms. Lannoo previously worked in the real estate department of a large trucking company, and has expertise in areas of abstracting, auditing, accounts payable, utilities and property tax obligations, generating rent payments and performing annual landlord reconciliations and performed services for the Debtors prior to the bankruptcy filing.

*Lois Jankow* also serves as a Lease Analyst at the Debtor's headquarters in Troy, Michigan. Ms. Jankow is a Senior Lease Administrator with a degree in Accounting from Oakland University. Ms. Jankow has over 13 years in the field of real estate lease administration. Prior to joining JLL, Ms. Jankow served as an Assistant Controller- Real Estate Department, for Central Transport, Inc. and was Supervisor of Accounts Payable- Real Estate Accounting, at Kmart Corporation and provided services to the Debtors prior to the Debtors' bankruptcy filing.

**Transaction Management Services**

18. JLL also provided extensive real estate transaction management services to the Debtors during the Application Period, dedicating three full-time professionals to investigate and, to the extent advisable, pursue advantageous sale, purchase and leasing opportunities for the Debtors. In connection therewith, JLL's professionals undertook the following tasks: leading the site selection process for new leased and owned facilities; leading the negotiation process for new lease and purchase transactions with landlords; collaborating with the Debtors' in-house and outside legal counsel to draft and revise legal documentation for the real estate transactions into which the Debtors seek to enter; finding and managing third-party real estate brokers; managing the entry into new license agreements, easements, and other real estate related matters, as well as renewals of the same; and coordinating the Debtors' portfolio management efforts with personnel in the Debtors' Facilities Services Group (FSG), environmental services, and business divisions.

19. Throughout the Application Period, the JLL professionals who have provided transaction management services to the Debtors on an exclusive basis are: Clifton Chauncey

Hitchcock (Debtors' Troy, Michigan Headquarters); Jas Lozinski (Debtors' offices in Luton, Bedfordshire, United Kingdom); and Joel Chia (Debtors' offices in Singapore).

20. A description of the respective experience and areas of expertise of Messrs. Hitchcock, Lozinki and Chia follows:

*Clifton Chauncey Hitchcock* serves as a Transaction Manager at the Debtors' headquarters in Troy, Michigan. Mr. Hitchcock graduated from the Michigan State University – Detroit College of Law in 2000 with honors. He has managed leasing activity in the Detroit metropolitan area for three years and has considerable experience with termination and renegotiation of leases. In addition, he has experience performing real-estate transaction due diligence. Prior to becoming a Transaction Manager at JLL, Mr. Hitchcock has held positions as a leasing manager, a city planning commissioner, a litigation attorney and a judicial law clerk.

*Jas Lozinski* serves as a Transaction Manager for the Debtors at their Luton, Bedfordshire, England location. Mr. Lozinski provides services to the Debtors with respect to transactions throughout Europe. With more than 19 years of experience, his credentials extend to consolidation, site selection and consultancy throughout Europe, with special expertise in automotive and manufacturing projects. Mr. Lozinski earned his degree in Valuation and Estate Management at Bristol University, Bristol, England.

*Joel Chia* served as a Transaction Manager to the Debtors throughout the Application Period.[3] Mr. Chia was based in Singapore, where he provided services to the Debtors with respect to real estate transactions and potential real estate transactions throughout Asia. Mr. Chia earned a Bachelor of Civil Engineering degree with honors from National University of

---

[3] Mr. Chia left the employment of JLL, effective February 28, 2006. As of March 20, 2006, Mr. Chia has been replaced by Mr. Eric Zhang. Mr. Eric Zhang has been retained on a non-exclusive basis to service the Debtors' transaction management needs throughout Asia. Mr. Zhang will be headquartered in Shanghai, China.

Singapore and has more than ten years experience in the property development and construction industry.

21.    For the convenience of the Court and parties in interest, a summary of the professionals rendering services to the Debtors on an exclusive basis throughout the Application Period follows:

| PROFESSIONAL | POSITION | LOCATION | EXPERIENCE | MONTHLY COMPENSATION | TOTAL COMPENSATION (APPLICATION PERIOD) |
|---|---|---|---|---|---|
| Clifton Chauncey Hitchcock | Transaction Manager | Troy, Michigan | 3 years experience; Law Degree | $9,041.67 | $26,220.85 |
| Jaz Lozinski | Transaction Manager | Luton, Bedfordshire, United Kingdom | 19 years experience; Valuation & Estate Management Decree | $22,419.17 | $65,015.71 |
| Joel Chia | Transaction Manager | Singapore | 10 years experience; Civil Engineering Degree | $6,491.91 | $16,229.78 |
| Lois Jankow | Lease Analyst | Troy, Michigan | 11 years experience | $8,750.00 | $25,375.00 |
| Janice Lannoo | Lease Analyst | Troy, Michigan | 13 years experience, Bachelor of Science Degree in Accounting | $6,125.00 | $17,762.50 |

22.    In connection with JLL's engagement with the Debtors, a number of other JLL professionals have dedicated time and professional services to the Debtors during the Application Period. However, based on the terms of the Engagement Agreement, JLL is not seeking any additional compensation for services rendered by JLL professionals who were not devoting 100% of their work to JLL.

23.    As set forth above, JLL has incurred expenses totaling $4,208.73 for which JLL seeks reimbursement. All of the expenses were incurred by Jas Lozinski in connection with his

travel for Delphi.  A summary description of the expenses incurred by Mr. Lozinski and the amount of each of the expense categories is provided below.[4]

| SUMMARY OF EXPENSE STATEMENTS ||
|---|---|
| **TYPE OF EXPENSE** | **AMOUNT** |
| Airfare | $2,000.90 |
| Hotel Accommodations/Meals | $1,624.93 |
| Local Transportation | $444.95 |
| Mileage Reimbursement (at £0.31 per mile) | $137.95 |
| **TOTAL:** | **$4,208.73** |

24.     This First Interim Application has been prepared in accordance with the Interim Compensation Order, this Court's Administrative Orders, dated June 24, 1991 and April 21, 1995, and the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed under 11 U.S.C. § 330, dated January 30, 1996.

25.     All services for which JLL requests compensation were performed for the Debtors and not on behalf of any other person or entity.

26.     The professional services and related expenses for which JLL requests interim allowance of compensation and reimbursement were rendered in connection with the case and such services and expenses have been necessary and beneficial to the Debtors, their estates, creditors and other parties in interest.

27.     JLL has received no payment and no promise of payment from any source for its services in connection with this case, except as disclosed herein.  In addition, other than as permitted under section 504(b)(1) of the Bankruptcy Code, there is no agreement or

---

[4] Mr. Lozinski works with the Debtors in the United Kingdom.  These expenses are converted from British Pounds using an exchange rate of $1.78 (U.S.) to the British Pound.

understanding between JLL and any other person or entity for the sharing of compensation to be received for services rendered in these cases.

28.    Prior to the filing of this First Interim Application, JLL served three statements of monthly interim compensation and expenses covering the time period of November 3, 2005 through January 31, 2006, as follows:

29.    On December 14, 2005, JLL served its invoice for professional services rendered to the Debtors for the time period of November 3, 2005 through November 30, 2005 (the "November Statement"), reflecting total fees due in the amount of $44,049.34.  A copy of the November Statement is attached hereto as **Exhibit A**.

30.    On December 14, 2005, JLL served its invoice for professional services rendered to the Debtors for the time period of December 1, 2005 through December 31, 2005 (the "December Statement"), reflecting total fees in the amount of $52,827.75.  A copy of the December Statement is attached hereto as **Exhibit B**.

31.    On February 28, 2006, JLL served its Statement of Monthly Compensation and Expenses for the time period January 1, 2006 through January 31, 2006 (the "January Statement") requesting fees in the amount of $52,827.75.  A copy of the January 2006 Statement is attached hereto as **Exhibit C**.

32.    Due to a clerical error, on January 2, 2006, JLL received payment of the full amount of the December Statement, without the intended 20% holdback.  In order to correct this error, the Debtors withheld $10,565.55, representing 20% of the fees assessed and paid for the December Statement, from the amount properly payable as monthly interim compensation on account of the November Statement, which was paid after the December Statement.

33.    On March 29, 2006 and March 30, 2006, JLL received two payments totaling $44,070.53 on account of its invoice for services rendered during January 2006.[5] Thus, JLL has previously requested and received the following amounts on account of services rendered during the Application Period:

| | | SUMMARY OF FEE STATEMENTS | | | |
| --- | --- | --- | --- | --- | --- |
| | | REQUESTED | | PAID | |
| Date Served | Period Covered | Fees | Expenses | Fees | Expenses |
| 12/14/05 | 11/03/05 – 11/30/05 | $44,948.34 | -0- | $25,393.12 | -0- |
| 12/14/05 | 12/01/05 – 12/31/05 | $52,827.75 | -0- | $52,827.75 | -0- |
| 02/28/06 | 01/01/06 – 01/31/06 | $52,827.75 | -0- | $44,070.53 | -0- |
| N/A | Database Setup Fee | $25,000.00 | -0- | -0- | -0- |
| N/A | Lease Administration Fee | $4,500.00 | -0- | -0- | -0- |
| N/A | Previously Unclaimed Expenses | -0- | $4,208.73 | -0- | -0- |
| TOTAL: | | $180,103.84 | $4,208.73 | $122,291.40 | $ 0.00 |

34.    The above-referenced payments were made pursuant to this Court's Compensation Order and remain subject to this Court's review in connection with the present Application and any final application filed by JLL.

35.    JLL has today served this First Interim Application upon all parties referenced in the Interim Compensation Order. The services for which JLL now seeks compensation have been essential to the administration of the Debtors' estates and have provided substantial benefits to the Debtors and their creditors.

---

[5] An additional clerical error occurred with respect to the payment of January, 2006 fees, pursuant to which JLL received an excess payment of $1,808.33. JLL seeks to remedy this error by reducing the amount for which it seeks payment in the same amount. To the extent the Court deems it necessary, JLL will be happy to refund the amount of the overpayment.

WHEREFORE, for all of the foregoing reasons, JLL respectfully requests that the Court enter an order (i) allowing JLL the sum of $180,103.84 in fees and expenses of $4,208.73 for the period of November 3, 2005 through January 31, 2006; (ii) authorizing the Debtors to pay to JLL the sum of $62,021.17, representing (a) the 20% holdback amount from the compensation paid for services rendered during November 2005, December 2005, and January 2006 ($28,312.44), (b) payment of the Setup Fee ($25,000.00) and Lease Administration Fee ($4,500.00) and (c) reimbursement of expenses in the amount of $4,208.73; and (iii) granting such other and further relief as this Court deems just and proper.

Dated: April 28, 2006                         JONES LANG LASALLE AMERICAS, INC.


                                              By:      /s/ Joseph D. Frank


                                              Joseph D. Frank (JF-6085)
                                              Jeremy C. Kleinman (JK 0080)
                                              FRANK/GECKER LLP
                                              325 North LaSalle Street
                                              Suite 625
                                              Chicago, Illinois  60610
                                              (312) 276-1400 – telephone
                                              (312) 276-0035 – facsimile

                                              Counsel to Jones Lang LaSalle Americas, Inc.