**Hearing Date and Time: May 9, 2006 at 10:00 a.m.**

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER<br>   & FLOM LLP<br>333 West Wacker Drive, Suite 2100<br>Chicago, Illinois 60606<br>(312) 407-0700<br>John Wm. Butler, Jr. (JB 4711)<br>John K. Lyons (JL 4951)<br>Ron E. Meisler (RM 3026) | O'MELVENY & MYERS LLP<br>1625 Eye Street, NW<br>Washington, DC  20006<br>(202) 383-5300<br>Robert A. Siegel (RS 0922)<br>Tom A. Jerman (TJ 1129)<br>Rachel S. Janger<br>Jessica Kastin (JK 2288) |
| SKADDEN, ARPS, SLATE, MEAGHER<br>   & FLOM LLP<br>Four Times Square<br>New York, New York 10036<br>(212) 735-3000<br>Kayalyn A. Marafioti (KM 9632)<br>Thomas J. Matz (TM 5986) | GROOM LAW GROUP, CHTD<br>1701 Pennsylvania Avenue, NW<br>Washington, DC 20006<br>(202) 857-0620<br>Lonie A. Hassel (LH 8805) |

Attorneys for Delphi Corporation, <u>et</u> <u>al.</u>,
   Debtor and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                          :
   In re                                  :       Chapter 11
                                          :
DELPHI CORPORATION, <u>et</u> <u>al.</u>,      :       Case No. 05-44481 (RDD)
                                          :
                          Debtors.   :       (Jointly Administered)
                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

SUPPLEMENTAL DECLARATION OF KEVIN M. BUTLER
IN SUPPORT OF DELPHI'S MOTION FOR AUTHORITY TO REJECT
COLLECTIVE BARGAINING AGREEMENTS UNDER 11 U.S.C. § 1113(c) AND
<u>MODIFY RETIREE WELFARE BENEFITS UNDER 11 U.S.C. § 1114(g)</u>

I, Kevin M. Butler, declare and state as follows:

1.  I submit this supplemental declaration in support of Delphi's Motion For Authority To Reject Collective Bargaining Agreements Under 11 U.S.C. § 1113(c) And Modify Retiree Welfare Benefits Under 11 U.S.C. § 1114(g) (the "Motion").  Any capitalized terms not expressly defined herein are intended to have the meanings ascribed to them in my original declaration, filed March 31, 2006 (Docket No. 3038) (the "March 31 Declaration").  Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, my opinion, my experience with and knowledge of Delphi's labor relations, or are based upon knowledge obtained from Delphi employees reporting to me in the course of their duties.  If I were called upon to testify, I could and would testify to the facts set forth herein.

I.  Meetings With The Unions Regarding Delphi's Declining Financials And Proposals

2.  As discussed in my March 31, 2006 Declaration, Delphi met with representatives of the UAW, IUE-CWA, and USW, and provided them with its initial proposals pursuant to Sections 1113 and 1114, on October 20 and 21, 2005.  On the same dates, Delphi served the IAM, IBEW, and IUOE, and all of the Local Unions with similar proposals.

3.  Prior to October 20, 2005, I and members of my staff met with the UAW, IUE-CWA, and USW on several occasions to discuss Delphi's need to reduce its labor costs and ways in which the Unions and Delphi could work together to reduce costs.  Delphi informed the Unions as early as 2003 that it needed to achieve labor cost savings because of its financial decline. Between January 2005 and October 20, 2005, I met personally with the UAW eleven times to discuss these issues.  In addition to the meetings that I attended, members of my staff

2

**Supplemental Declaration of Kevin M. Butler**

have also had various meetings and conversations with the UAW regarding Delphi's need for labor cost savings.

4. In addition to meeting with the UAW, I met with the IUE-CWA four times between January 2005 and October 20, 2005, and with the USW three times during this period to provide Delphi's business updates and discuss "what if" proposals regarding potential scenarios involving modifications to Delphi's collective bargaining agreements. In addition to the meetings for which I was present, members of my staff also met and had conversations with the IUE-CWA and the USW regarding these issues.

5. From October 20, 2005 through December 2005, I met with the UAW five times, and met with the IUE-CWA and USW once each to discuss Delphi's October proposals and the Competitive Benchmark Proposals.

6. On December 19, 2005, Delphi withdrew its Competitive Benchmark Proposals in response to the Unions' opposition to those proposals and because of their refusal to negotiate with Delphi while the Competitive Benchmark Proposals were on the table. Delphi's withdrawal of the Competitive Benchmark Proposals was based on input from the Unions and was done in an effort to facilitate, not hinder, negotiations as the Unions now suggest.

7. As of March 24, 2006, none of the Unions had proposed an alternative or a counterproposal to the Competitive Benchmark Proposals. Given the Unions' failure to work towards a consensual resolution, Delphi presented the Unions with the GM Consensual Proposal on March 24, 2006. Delphi had, however, begun discussing the concepts memorialized in these proposals with the UAW and the IUE-CWA months prior to that date. As stated in the term sheets and cover letters provided to the Unions on March 24 and March 25, 2006, Delphi's GM

Consensual Proposals include the definite terms set forth in the Competitive Benchmark Proposals. The term sheets and cover letters make clear that Delphi put the Competitive Benchmark Proposals back on the table and offered an alternative should Delphi achieve sufficient GM financial support. Each of the alternatives presented in the GM Consensual Proposals are definite proposals, which the major Unions have been aware of for approximately nine weeks.

8. Between December 15, 2005 and March 24, 2006, I met with the UAW nine times. In addition to these meetings I and members of my staff had ongoing conversations and meetings with the UAW regarding the Special Attrition Program. From March 1, 2006 through March 28, 2006, Delphi met with the UAW every day to reach an agreement on the UAW Special Attrition Program, and met with the UAW twice in April 2006 regarding that agreement.

9. I have met with the IUE-CWA three times and with the USW once since December 15, 2005. In addition to these meetings, members of my staff have been in almost daily contact with the IUE-CWA and in frequent contact with the USW regarding Delphi's proposals.

10. Each of my meetings with the UAW, IUE-CWA, and USW between January 2005 and the present are reflected in the chart attached hereto as Exhibit A. This Exhibit does not reflect the many meetings between my staff members and the Unions or conversations outside the context of those meetings. Delphi's meetings and correspondence with the IUE-CWA, USW, IAM, IBEW, and IUOE are discussed in further detail in the Declaration of Robert Gerling and the Supplemental Declaration of Bernard J. Quick in support of the Motion.

**Supplemental Declaration of Kevin M. Butler**

11. Despite these efforts, to date Delphi has been unable to reach a consensual agreement with any of its Unions.

II. Delphi's Salaried and Management Workforce

12. On March 31, 2006, Delphi announced that as part of its transformation plan it will freeze its existing salaried employees' pension plan as of January 1, 2007, and change its salaried benefits to bring them in line with other more cost-competitive companies by restructuring its current health care plan to increase employee contributions.

III. Delphi Needs Relief From Its Collective Bargaining Agreements Prior To Their September 2007 Expiration

13. Any argument that Delphi can simply wait until September 2007, when its labor agreements generally expire, is untenable. First, Delphi can not implement immediately its proposals upon the expiration of the agreements. Delphi must bargain to impasse with the Unions regarding its proposals prior to lawfully implementing any changes to terms and conditions of employment. Second, during the bargaining process and at the time of impasse, Delphi is vulnerable to a strike, the cost of which would easily exceed any savings estimated by increasing employee contributions.

I declare under penalty of perjury, and pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information and belief.

Executed this 1st day of May, 2006

/s/ Kevin M. Butler
KEVIN M. BUTLER

5

**Supplemental Declaration of Kevin M. Butler**

Exhibit A

# Highly Confidential - Not Filed