**Hearing Date and Time: May 9, 2006 at 10:00 a.m.**

| | |
|---|---|
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>333 West Wacker Drive, Suite 2100<br>Chicago, Illinois 60606<br>(312) 407-0700<br>John Wm. Butler, Jr. (JB 4711)<br>John K. Lyons (JL 4951)<br>Ron E. Meisler (RM 3026) | O'MELVENY & MYERS LLP<br>1625 Eye Street, NW<br>Washington, DC 20006<br>(202) 383-5300<br>Robert A. Siegel (RS 0922)<br>Tom A. Jerman (TJ 1129)<br>Rachel S. Janger<br>Jessica Kastin (JK 2288) |
| SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP<br>Four Times Square<br>New York, New York 10036<br>(212) 735-3000<br>Kayalyn A. Marafioti (KM 9632)<br>Thomas J. Matz (TM 5986) | GROOM LAW GROUP, CHTD<br>1701 Pennsylvania Avenue, NW<br>Washington, DC 20006<br>(202) 857-0620<br>Lonie A. Hassel (LH 8805) |

Attorneys for Delphi Corporation, et al.,
   Debtor and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                                                          :
     In re                                                :    Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :    Case No. 05-44481 (RDD)
                                                          :
                              Debtors.                    :    (Jointly Administered)
                                                          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

DECLARATION OF ROBERT GERLING
IN SUPPORT OF DELPHI'S MOTION FOR AUTHORITY TO REJECT
COLLECTIVE BARGAINING AGREEMENTS UNDER 11 U.S.C. § 1113(c) AND
MODIFY RETIREE WELFARE BENEFITS UNDER 11 U.S.C. § 1114(g)

I, Robert Gerling, declare and state as follows:

1. I am currently employed as Delphi Corporation's ("Delphi") Labor Director - Thermal and Interior Division. I began working for General Motors Corporation ("GM") in 1984, and have been employed by Delphi since 1999. From 1999 to 2002, I was the Labor Director for Delphi's Packard Division. From 2002 to 2004, I was the Labor Director for Delphi Harrison Thermal Systems.

2. In my current position with Delphi, my responsibilities include labor negotiations with the UAW, IUE, and the USW. Delphi also has labor agreements with smaller unions, including the IAM, District 10 which represents about 45 employees, Local 663 of the IBEW which represents 40 employees in the E&C division and 20 employees in the E&S division, and Locals 832S and 18 of the IUOE, which represent 6 and 13 employees, respectively. Generally, the local unions for the IAM, IBEW, and the IUOE bargain directly with Delphi plants. Since Delphi has sought reorganization relief, however, I have assumed the responsibility of negotiating with Delphi's local unions of the IAM, IBEW, and IUOE.

3. I have read the Declarations of Charles Scherer (the "Scherer Declaration") and Jim Glathar (the "Glathar Declaration") in Support of IUOE Local Union Nos. 18 and 832 Opposition To Delphi's Motion For Authority To Reject Collective Bargaining Agreements and the Declarations of Randal A. Middleton (the "Middleton Declaration") and Donald L. Griffin (the "Griffin Declaration") in Support of IBEW Local 663 and IAMAW District 10's Objection to Debtors' Motion To Reject Collective Bargaining Agreements And To Modify Retiree Benefits. I submit this declaration in response to the forgoing declarations and in support of the Motion. Any capitalized terms not expressly defined herein are intended to have the meanings

2

**Declaration of Robert Gerling**

ascribed to them in the Motion or accompanying memorandum of law, and references to Delphi herein include the Debtors, as appropriate. Except as otherwise indicated, all facts set forth in this declaration are based upon my personal knowledge, my review of relevant documents, my opinion, my experience with and knowledge of Delphi's labor relations, or are based upon knowledge obtained from Delphi employees reporting to me in the course of their duties. If I were called upon to testify, I could and would testify to the facts set forth herein.

I.      Meetings With The IAM, IBEW, And IUOE Following Delphi's Proposals

   A.   Meeting With IUOE - Columbus, Ohio

   4.   In October 2005, Jeffrey Pritchett, a Manager in Delphi's Mergers, Acquisitions & New Markets group, and I met with Roger Struckman, the IUOE - Columbus bargaining unit's chief steward, at Delphi's Columbus facility. The purpose of the meeting was to explain Delphi's October proposal which had been recently sent by Kevin Butler to each of the Unions. At this meeting, I showed a power point presentation which explained the details of the October proposal and walked through their terms.

   5.   Since Charles Scherer, the Business Agent for the IUOE - Columbus, was unable to attend the meeting with Mr. Struckman, I offered to personally meet with him and review Delphi's October proposal. Approximately one week after the meeting at the Columbus facility, Mr. Scherer and I met at Panera Bread Bakery and I explained the terms of the proposal. During that meeting, I either personally addressed all of Mr. Scherer's questions or forwarded them on to Charles McWee, Director, Delphi Labor Relations, for a formal response.

   6.   My next contact with Mr. Scherer was a lunch meeting on November 18, 2005 at the Bob Evans Restaurant in Monroe, Michigan. Similar to the meeting in October, I explained

Delphi's Competitive Benchmark Proposal, which had been distributed to the Unions by Kevin Butler in the middle of November. During the meeting, I explained each of the terms in the Competitive Benchmark Proposals to Mr. Scherer, and addressed his questions.

7. Although I was always open to meet and discuss Delphi's proposal with the IUOE, Mr. Scherer never contacted me between November 2005 and March 2006 to discuss or to respond to Delphi's proposal.

8. My next contact with Mr. Scherer did not occur until March 2006. I called Mr. Scherer and scheduled a meeting for March 31, 2006, with the hope of presenting an Hourly Attrition Program for the IUOE. At that time, Kevin Butler had sent the Unions Delphi's GM Consensual Proposals and Delphi, GM, and the UAW had reached an agreement on the UAW Special Attrition Program. Delphi planned to negotiate a similar attrition program with the other Unions as soon as it was able to secure GM financial support.

9. Unfortunately, I had to cancel the meeting and explained to Mr. Scherer that I was not yet in a position to present a similar Hourly Attrition Program to the IUOE, because Delphi still did not have the financial support of GM which was necessary for such an attrition program for the IUOE. Since the purpose of this program was to present the IUOE the attrition program to the IUOE, Mr. Scherer and I agreed that a meeting at that time would not be worthwhile. I indicated to him I would contact him about the attrition program when Delphi had secured the financial support of GM. I was always, however, available to negotiate with Local 18 of the IUOE concerning the Company's GM Consensual Proposal, to which to date the IUOE has not yet responded.

10. On April 12, 2006, I made three presentations to UAW represented employees at Delphi's Columbus and Lockport facilities. The purpose of this presentation was to explain the details of the UAW Special Attrition Program. Shortly after the meeting, an IUOE represented employee approached me and asked if the UAW Special Attrition Program applied to his union. I told that employee that Delphi intended to present a similar program to the IUOE as soon as it receives financial support from GM.

11. On April 17, 2006, in response to the meeting on April 12, Mr. Scherer left me a voicemail message inquiring about the status of the IUOE Hourly Attrition Program. I returned his call on April 26, 2006 and explained to him that Delphi had still not received financial backing from GM and without it, could not be in a position to present an IUOE attrition program. Mr. Scherer indicated that he would wait for my telephone call for any future updates on an attrition program.

12. Although I was always available to discuss and negotiate Delphi's GM Consensual Proposal, as of May 1, 2006, IUOE Local 18 has not presented a counterproposal or sought to negotiate Delphi's proposal.

B.  Meeting With IUOE - Rochester, New York

13. I met with Jim Glathar, the Business Agent for IUOE Local 832S, and the Local Chairman at Delphi's Rochester facility in October and November of 2005. The meetings were similar to those I conducted at the IUOE - Columbus facility in which I explained the October proposal and the Competitive Benchmark Proposal.

14. Between November 2005 and March 2006, Mr. Glathar never contacted me to negotiate or discuss the Competitive Benchmark Proposal. I also contacted him to follow up on

5

the GM Consensual Proposal sent by Kevin Butler, and explained that Delphi, GM, and the UAW had reached an agreement on the UAW Special Attrition Program. I further explained to Mr. Glathar that Delphi intended to present a similar program to the IUOE when it secured financial support from GM.

15. Paragraph 7 of the Glathar Declaration states that Glenn Spiroff, Local 832S's steward at Delphi's Rochester facility, I told Mr. Glathar that Delphi would be presenting an IUOE Hourly Attrition Program. I explained to Mr. Glathar that Delphi intended to present an attrition program for the IUOE when it obtains GM financial support for such a program, but I did not have any conversations relating to this topic with Mr. Spiroff.

16. On April 26, 2006, I called Mr. Glathar to notify him that the status of the IUOE Hourly Attrition Program remained unchanged and that although Delphi intended to present the union with an Hourly Attrition Program, it still has not obtained GM support necessary for such an attrition program with the IUOE. As of April 27, 2006 Mr. Glathar and I have exchanged voicemail messages, but I have not been able to personally convey this message to him.

17. Although I was always available to discuss and negotiate Delphi's GM Consensual Proposal, as of May 1, 2006 IUOE Local 832S has not presented a counterproposal or sought to negotiate Delphi's proposal.

C. <u>Meeting With IBEW And IAM</u>

18. On October 24, 2005, I conducted two separate meetings with members of the IBEW Local 663 and IAM District 10 bargaining committees to explain the October proposal. Mr. Middleton, President/Business Manager for IBEW Local 663, was not available to attend this meeting. Donald Griffin, the Business Agent of the IAM, District 10, also did not attend this

6

**Declaration of Robert Gerling**

meeting because he was not yet the business agent for District 10. At both meetings, I carefully explained each of the terms of the October proposals and addressed the IAM and IBEW questions regarding the proposal.

19. Paragraph 9 of the Middleton Declaration and paragraph 8 of the Griffin Declaration state that "the Company made it clear to the union[s] that the meeting [on October 24, 2005] was not intended as negotiations; but rather was for informational purposes only." This statement is incorrect. At these meetings I presented the Delphi's October proposals to the IBEW and IAM members, and was available then, or anytime, to reach an agreement on a modified labor contract. As Mr. Middleton was not available for that meeting, I did not expect an immediate response at that meeting to Delphi's proposal.

20. In November 2005, after Kevin Butler sent out a second letter presenting the Competitive Benchmark Proposals to each union, I spoke with members of the IBEW and IAM to explain the proposals. Neither Mr. Middleton nor Mr. Griffin was involved in these discussions in November. During both the October and November meetings, I explained to the IBEW and IAM that to the extent I could not personally answer their questions or requests, my role was to communicate the data or information requests to Mr. McWee to ensure that the answers provided were correct and responsive. In addition, I expressed to the IBEW and IAM bargaining committee that I was always available to further discuss and negotiate these proposals.

21. Since Mr. Middleton did not attend either meeting, I offered personally to meet with him to discuss the Competitive Benchmark Proposal. Mr. Middleton was in Detroit, Michigan for a "Mobilizing@Delphi" meeting. We decided to meet on November 16, 2005 at

the Starbucks in the Renaissance Center in Detroit to discuss the proposal. During the meeting I highlighted the changes to the Competitive Benchmark Proposal and addressed his questions. In response to the proposal, Mr. Middleton commented that IBEW was going to "watch the UAW" before it responded.

22. In Paragraphs 14 through 15 of the Middleton Declaration, Mr. Middleton states that at the November 16 meeting, I told him that Delphi did not have any plans to meet and negotiate with the IBEW until Delphi had a "tentative agreement" with the UAW. He further states that on November 22, 2005, IBEW's counsel wrote a letter to Delphi, "confirming Gerling's statement that the Company would not seek negotiations with the IBEW until a tentative agreement was reached with the larger unions like the UAW and IUE." While I may have informed Mr. Middleton that Delphi was planning on meeting with the UAW and IUE, which represent thousands of Delphi employees, I never told Mr. Middleton I was not willing to meet with the IBEW until Delphi reached a tentative agreement with the UAW. In fact, I was always available and open to discuss Delphi's proposals with the IBEW. The IBEW counsel's letter of November 22, 2005 addressed to me, makes no reference to not negotiating until a "tentative agreement" is reached. A true and correct copy of that letter is attached as Exhibit B to the Middleton Declaration. The IBEW, however, never approached me with a response to the GM Consensual Proposal until late April. After I received the letter, I attempted to call the IBEW's attorney who sent the November 22, 2005 letter to clarify what I had said, but did not receive a response to that telephone call.

23. Paragraph 18 of the Griffin Declaration states that no one from Delphi informed the IAM that Delphi had withdrawn their Competitive Benchmark Proposals. On December 19,

**Declaration of Robert Gerling**

2005, Delphi issued a press release stating that Delphi would be withdrawing their Competitive Benchmark Proposals to reaffirm Delphi's commitment to reach a consensual agreement with its Unions and GM. In late December 2005, after this announcement, I called Mr. Griffin to tell him about the December 19 press release and e-mailed him a copy of the press release to notify the IAM that Delphi would be withdrawing their Competitive Benchmark Proposals. Delphi's December 19 press release is available at http://www.delphi.com/news/pressReleases/pr66139-12192005.

24. Between the meeting with Mr. Middleton in November 2005 and March 2006, neither Mr. Middleton nor Mr. Griffin contacted me to negotiate Delphi's proposals or offer a counterproposal. My next contact was in March 2006, when I sent them both a copy of the UAW Special Attrition Program. After Kevin Butler sent all the Unions the GM Consensual Proposals on March 24, 2006, I scheduled a conference call with Mr. Middleton, Mr. Griffin, Plant Personnel Director Sandy Gernhart, Labor Relations Manager Tim Wilimitus, Labor Director - Delphi E&C Division Ed Goettl, and myself for March 30, 2006 to discuss and answer any questions they had regarding the details of the UAW Special Attrition Program. During the teleconference, I sent by e-mail a power point presentation that summarized the three options available under the program. I also explained that Delphi intended to negotiate a similar program for the IBEW and IAM, but had been unable to secure GM support for such a program at that time. I assured Mr. Middleton and Mr. Griffin that I would contact them as soon as Delphi obtained GM financial backing. Although the primary focus of the conference call was to discuss the UAW Special Attrition Program, I answered numerous questions regarding the GM Consensual Proposals on the telephone call or forwarded them to Mr. McWee.

9

**Declaration of Robert Gerling**

25. On or about April 13, 2006, I contacted both Mr. Middleton and Mr. Griffin to schedule negotiations. On April 20 and 21, 2006, I, along with other Delphi representatives, held two bargaining sessions with the IBEW and IAM. On April 20, the IBEW and IAM presented Delphi with their joint counterproposal. A true and correct copy of the IBEW and IAM counterproposal is attached as Exhibit G to the Middleton Declaration.

26. I reviewed the joint counterproposal and determined that while the IBEW and IAM had accepted the first step of Delphi's proposed two-step wage reduction, it otherwise largely rejected Delphi's proposal. Among other provisions, the IAM and IBEW rejected Delphi's proposals relating to overtime, vacation accrual, the right to sell, close, or consolidate facilities, successorship provisions, hiring requirements, health care for active employees and retirees, and retiree life insurance. The counterproposal does not even approach the level of modifications required by Delphi. As of May 1, 2006, no consensual resolution has been reached with the IBEW or the IAM.

I declare under penalty of perjury, and pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief. Executed this 1st day of May, 2006

/s/ Robert Gerling
ROBERT GERLING

10

**Declaration of Robert Gerling**