**Hearing Date and Time: May 9, 2006 at 10:00 a.m.**

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtor and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

O'MELVENY & MYERS LLP
1625 Eye Street, NW
Washington, DC  20006
(202) 383-5300
Robert A. Siegel (RS 0922)
Tom A. Jerman (TJ 1129)
Rachel S. Janger
Jessica Kastin (JK 2288)

GROOM LAW GROUP, CHTD
1701 Pennsylvania Avenue, NW
Washington, DC 20006
(202) 857-0620
Lonie A. Hassel

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - X
                    :
   In re                  :   Chapter 11
                    :
DELPHI CORPORATION, et al.,   :   Case No. 05-44481 (RDD)
                    :
            Debtors.   :   (Jointly Administered)
                    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - X

DECLARATION OF WILLIAM R. SHAW
IN SUPPORT OF DELPHI'S MOTION FOR AUTHORITY TO REJECT
COLLECTIVE BARGAINING AGREEMENTS UNDER 11 U.S.C. § 1113(c) AND
MODIFY RETIREE WELFARE BENEFITS UNDER 11 U.S.C. § 1114(g)

I, William R. Shaw, declare and state as follows:

1.      I submit this declaration in support of Delphi's Motion For Authority to Reject

Collective Bargaining Agreements Under 11 U.S.C. § 1113(c) And Modify Retiree Welfare

Benefits Under 11 U.S.C. § 1114(g) (the "Motion").  Any capitalized terms not expressly defined

herein are intended to have the meanings ascribed to them in the Motion or accompanying

memorandum of law, and references to Delphi herein include the Debtors, as appropriate.  I

submit this declaration in response to the UAW's objection to the motion and the Declaration of

Andrew Yearley filed in support of the UAW's bjection to Delphi's motion, dated April 21, 2006.

If I were called on to testify, I could and would testify to the facts set forth herein.

2.      I am a Director at Rothschild Inc. ("Rothschild"), which maintains an office at

1251 Avenue of the Americas, 51st Floor, New York, New York, 10020.

I.   Rothschild's Role In Delphi's Information Sharing With Lazard And The UAW

3.      In our role as investment bankers to Delphi, Rothschild was charged with

interfacing with Lazard Ltd. ("Lazard"), financial advisors to the UAW, coordinating their due

diligence requests to Delphi, and relaying information provided by Delphi to Lazard.

4.      Lazard first became involved in Delphi's information sharing process with the

UAW in October 2005.  Delphi encouraged Rothschild to interact with and involve Lazard, one

of the most sophisticated advisory banks in the U.S., in the information sharing process to enable

more productive discussion of Delphi's financial status.  Lazard, I understand, also represents

Tower Automotive, an auto supplier, in connection with its Chapter 11 case and Section 1113

proceedings.  With its knowledge of the basic economic factors affecting the auto supplier

industry, Lazard should be well-equipped to advise the UAW on the situation with which Delphi

is faced.  In fact, we and Delphi believed that Lazard's involvement was so useful that, in

January 2006, Delphi agreed to compensate Lazard for its work on behalf of the UAW in the

information sharing process.  The bankruptcy court approved Delphi's motion for authority to compensate Lazard.

5.       I have reviewed the declaration of Andrew Yearley, a Managing Director at Lazard, which was filed in support of the UAW's opposition to the Motion, and I strongly disagree with many of the assertions contained in his declaration as they relate to information sharing.  I have also reviewed the declaration of James E. Millstein filed in support of the UAW's opposition to the Motion, as it relates to information sharing.  Mr. Millstein's declaration reiterates in summary many of the same contentions made in the Yearley declaration.  In his declaration, Mr. Yearley omits discussion of many meetings and calls that Lazard attended with Rothschild and Delphi.  Mr. Yearley also complains about a lack of timeliness of responses to Lazard's information requests, even though a significant amount of the information requested was provided to Lazard months ago, and Rothschild and Delphi continue to promptly respond to Lazard's more recent data requests.  Delphi and Rothschild have made themselves available promptly upon any Lazard request for a conference call or meeting.  Even though engaged to assist the UAW in the information sharing process since October 2005, Lazard has requested relatively few meetings or calls to engage in substantive discussions with the Company on due diligence matters.  Nonetheless, and as described below, a substantial amount of information has been provided to Lazard, which information is sufficient to comprehensively analyze Delphi, its financial projections, and its proposals.

II.  The Information Sharing Process With Lazard And The UAW

    A.    The UAW Has Received Significant Amounts Of Information Provided To All
           Parties In The Bankruptcy Process.

6.      As an ex-officio member of the Unsecured Creditors' Committee, the UAW

receives regular reports and presentations made by Delphi's management.

7.      Delphi has filed a number of documents, as well as monthly operating reports,

available to Lazard and the UAW, that provide both general background and detailed financial

reporting about Delphi's financial status.

8.      Lazard and the UAW have been given the opportunity to have access to the

electronic dataroom that Delphi has established for the benefit of its unions.

    B.    Lazard Was Promptly Provided With The Projections And Models Underlying
           The Proposals When They Were Completed, And Has Met With Rothschild And
           Delphi Both At Our Request, And Anytime Lazard Requested.

9.      Mr. Yearley's declaration implies that no financial model was made available to

Lazard until March 2006.  As set forth below, this implication is incorrect.

    1.    Information Provided With The October Proposals.

10.      With its October 2005 Section 1113 and 1114 Proposals, Delphi provided each of

its Unions with:  (a) an electronic, and dynamic (i.e., working Excel) copy of the existing

financial model, which included the then current baseline status quo projections and  the October

2005 Proposals financial scenario; (b) a summary of the changes in financial projections since

the prior Scenario C proposal had been made to the Unions; (c) Delphi's assessment of the

impact of the proposed labor contract modifications; and (d) historical financials.  Lazard had the

ability to use this dynamic model to analyze the October 2005 Proposals and proposal

sensitivities.  In my experience, a working copy of a debtor's financial model − such as that

which Delphi delivered to Lazard − is more than a debtor would typically provide to parties-in-

interest, such as potential lenders or investors considering an investment in the company, in other chapter 11 cases.

11.    Lazard was not left to review these materials in a vacuum. On November 1, 2005, I, along with others from my team at Rothschild, met in New York with Mr. Yearley and other representatives of Lazard, the UAW, and Delphi to review the October 2005 Proposals, detailed presentations previously provided to GM and the UAW regarding an out-of-court resolution, and next steps. Lazard and Rothschild met again only a week later to review the dynamic financial model. These were the first of numerous meetings and phone calls we held with Lazard, and which often included both the UAW and Delphi, to address information that was provided to Lazard and the UAW, and to discuss information requests. Attached as Exhibit A hereto is a true and correct copy of a list compiled by Rothschild of substantive meetings and calls which have been held with Lazard since November 1, 2005, and the attendees and subjects discussed in those meetings. In addition, there may have been similar calls and meetings between Delphi and the UAW of which Rothschild is not aware, and there were numerous calls between Lazard and Rothschild to discuss the status of and clarification of their due diligence requests that have not necessarily been logged.

2.    Information Provided With The November Competitive Benchmark Proposals.

12.    Following the information sharing and discussions described above, Delphi issued its November 2005 Competitive Benchmark Proposals.

13.    In mid-November 2005, with the Competitive Benchmark Proposals, Delphi and Rothschild provided the UAW and Lazard the pennysheet detail illustrating Delphi's labor costs per hour, showing the breakdown of wages, wage-related expenses, and benefits of the targeted labor cost contained in the Competitive Benchmark Proposals, and documents demonstrating

5

how the targeted labor costs in the Competitive Benchmark Proposals compared to Delphi's

benchmark comparators.  The pennysheet detail, along with Delphi's projected headcount and

hours under the baseline projections and the Competitive Benchmark Scenario, which have been

provided to Lazard, form the basis to assess the total wage and active benefit savings provided

by Delphi's proposals.  These savings are based on the baseline assumption about the number of

employees and hours worked during each period under the status quo, and under the proposed

modifications.  On a company-wide basis, Delphi has prepared these calculations and that

information, as well as the OPEB savings, has been provided to Lazard.  In other words, with

each of its proposals, assuming the baseline projections compared to the relevant scenarios,

Delphi has identified the total cost savings attributable to the proposed modifications.

14.     On November 22, 2005, Lazard, the UAW, Delphi, and Rothschild again met in

New York to review the pennysheet calculations and competitive labor benchmarking that had

been provided to Lazard a week earlier.

15.     On December 1 and 2, 2005, Delphi, Rothschild, and FTI Consulting ("FTI") met

with Lazard and other advisors, regarding operational due diligence, including presentations by

each of Delphi's divisions.

### 3.     Information Provided Regarding Delphi's Steady State Scenario

16.     During the fall of 2005, Delphi had undertaken its annual business planning

process and developed its financial projections for the period from 2006 through 2010 assuming

the continuation of Delphi's current operating footprint and no changes to its labor cost structure

(the "Steady State Scenario").  On December 12, 2005, while Delphi was still completing its

Steady State Scenario, Lazard was presented with information regarding the Steady State

Scenario in preliminary summary form, including a summary of the changes in financial

projections under Steady State Scenario versus the prior projections, and Delphi's updated impact of the proposed modifications based on the November 2005 Competitive Benchmark Proposals.

17.     Four days later, we met with Lazard, the UAW, and Delphi to review preliminary business plan projections and an accompanying presentation.  A few days later, on December 19, 2005, we held a follow up conference call with Lazard and Delphi to answer labor due diligence questions.

18.     Following the break for the holidays, on January 13, 2006, the financial advisors to each Union were provided with the completed Steady State Scenario projections.  They were also provided with detailed information regarding:  (a) P&L Consolidation by Division, (b) Regional Overview by Division, (c) Year over year revenue analysis, (d) Material/freight and performance, (e) Manufacturing expense analysis, (f) Other COGS detail, (g) Employment - U.S. hourly employment by location, (h) Capital spending, and (i) GM North American production volume assumptions.  The Steady State Scenario projections provided on January 13, 2006 were then used as the projections underlying Delphi's Competitive Benchmark and GM Consensual models later provided to Lazard.  Accordingly, and contrary to both Mr. Millstein's and Mr. Yearley's assertions, Lazard has had since January 2006 the basic financial projections upon which Delphi's models have since been based.

19.     Following Lazard's receipt of this substantial data, on January 31, 2006, a conference call among Lazard, the UAW, Delphi, and Rothschild took place to review labor pennysheet calculations, including pension and OPEB.  A week later, on February 7, 2006, Delphi, Rothschild, and FTI held a call with Lazard and the IUE-CWA's financial advisors to review the Steady State projection detail that had been provided in January.  Lazard did not submit a list of questions on the Steady State Scenario, which had been provided on January 13,

7

2006, until February 23, 2006, as noted in Mr. Yearley's declaration.  Although Delphi and

Rothschild continued to be available to address the Steady State projections, it was not until

April 18, 2006 that Lazard requested a meeting with Delphi management to review these

projections, operational assumptions, and strategic plan.  Delphi and Rothschild were

immediately responsive and suggested a meeting at Delphi's headquarters.  Lazard, however,

said that they were not available and would have to schedule for a later date, but have not yet

proposed a new date for the meeting.

4.      <u>Lazard Was Provided With Both A Draft And A Final Version Of The
Competitive Benchmark Scenario Projections, And A Final Version of
The Competitive Benchmark Scenario And The GM Consensual Scenario
Interactive Model</u>.

20.      In February 2006, the Creditors' Committee was presented with a <u>draft</u> summary

of the Competitive Benchmark Scenario, which was related to the November 2005 Competitive

Benchmark Proposals to the Unions.  Following Lazard's request for a copy of the detailed draft

projections, and because the projections were not yet finalized and were therefore subject to

change, I understand that Delphi's lawyers conferred with lawyers for the UAW to develop a

confidentiality agreement to insure that the information would not be disclosed or used against

Delphi in any litigation.  Once this agreement was reached, the detailed draft projections were

provided to Lazard.

21.      The final model was completed near the end of March 2006 and was provided to

Lazard and all other Unions and advisors.  This production of information included an electronic

copy of the dynamic financial model underlying:  (a) the Steady State financial projections, (b)

financial projections based on the Competitive Benchmark Proposals, and (c) financial

projections based on the GM Consensual Proposals, as well as an analysis of the potential effect

of the Special Attrition Program on Delphi's financial projections and a bridge calculating the

8

line-by-line impact of each of the Competitive Benchmark and GM Consensual Proposals versus

the Steady State financial projections.

22.    While Mr. Yearley asserts that the models Lazard received include "hard coded"

assumptions which cannot be altered to test various assumptions, Delphi and Rothschild have

explained the basis for these model assumption inputs to Lazard, and have provided Lazard with

sufficient information, including labor pennysheets supporting each proposal and headcount

walks, to allow Lazard to perform sensitivity analyses on the models.  Accordingly, the models

Delphi provided, along with the information provided regarding the assumption inputs to such

models, allow Lazard to construct alternative scenarios using different assumptions.

C.    Delphi Has Timely Provided Lazard And The UAW With Significant Amounts
Of Relevant Information As A Result Of Lazard's Information Requests.

1.    The Information Flow Process.

23.    Lazard provided Rothschild with its first "due diligence list" on November 1,

2005, and since that time has continued to provide Rothschild with revised lists of its information

requests.  Mr. Yearley states that information flow to Lazard has been "delayed" due to a

"filtering process" that results from Delphi's litigation concerns.  Delphi, in fact, has developed a

process of review by various entities within Delphi to ensure that all information provaided to the

Unions and their advisors is accurate, complete, responsive, and reliable.  Because Delphi is a

large corporation, not all requests can be fulfilled by looking to only one source within Delphi.

The review process, which ensures that the information provided is the most accurate, complete,

responsive, and reliable information available, benefits Lazard and the other constituencies in

these chapter 11 cases, and was not created as a roadblock to proper information sharing.

24.    As Exhibit A to Mr. Yearley's declaration shows, this process has resulted in the

production by Delphi of significant amounts of information to Lazard and the UAW, and, while

9

Delphi and Rothschild believe items listed as outstanding on Exhibit A have in fact been
fulfilled, Exhibit A nonetheless demonstrates responses to nearly all of Lazard's information
requests received since November 2005.  In response to its various November 2005 document
requests, requests made as Delphi was finalizing its Competitive Benchmark Proposals,
completing its Steady State Scenario, and entering the Thanksgiving, Christmas, and New Year's
holiday period, Mr. Yearley's Exhibit A demonstrates that most of the information requested was
provided no later than early February 2006 − nearly two months before the Motion was filed, and
approximately three months before the scheduled hearing on this matter.  Thus, for example, Mr.
Millstein's contention in Exhibit 1 to his declaration, Summary of Key Materials Recently
Received By Lazard, that Lazard did not receive a schedule of Delphi product lines and facilities
identified as "non-continuing businesses" until March 16, 2006, is misleading.  In fact, a
schedule consistent with the March 16, 2006 materials had been provided to both the UAW and
Lazard in October 2005.  Subsequent requests made in February, March, and April have largely
been fulfilled promptly, as Mr. Yearley's Exhibit A shows.  Delphi's records, like Lazard's
records, show that nearly all of Lazard's information requests to date have been fulfilled.  To the
extent that Lazard has not received responses, it is largely because the information requests
called for: (a) privileged information, (b) information Delphi did not maintain in the form sought,
(c) information that was not yet available, but which will be provided if it does become available,
or (d) information that does not exist at Delphi.

25.    Lazard has requested plant-specific data on a historical and projected basis.
Delphi's individual plants do not maintain financial information on any consistent, coordinated
basis.  Therefore, Delphi's corporate office does not readily have access to this type of
information.  After performing a diligent search, Delphi was able to compile, on an ad hoc basis,

10

the historical information maintained by its individual plants.  On a projected basis, the plant-specific data was also not immediately available.  Delphi therefore worked with its plants to create the projected data and provided it once it was available, along with the historical data.

26.      It is also noteworthy that apparently Lazard's information flow from its own client has not been particularly strong.  A number of Lazard's information requests have been for materials that we understand it could − and should − have been able to obtain from its client, the UAW, including, for instance, wage rates and benefits at the UAW-represented facilities that the UAW negotiated, data regarding age and seniority of personnel represented by the UAW, and products manufactured by Delphi (which UAW members make).

27.      To date, Delphi has produced more than one hundred and twenty documents directly to the UAW and Lazard.  In addition, both the UAW and Lazard have had access to more than seven hundred documents available on the Delphi Virtual Data Room.

I declare under penalty of perjury, and pursuant to 28 U.S.C. § 1746, that the foregoing is true and correct to the best of my knowledge, information, and belief.

Executed this 1st day of May, 2006

/s/ William R. Shaw
WILLIAM R. SHAW

Exhibit A

Delphi Meetings / Calls With Lazard And The UAW

The following is a log of meetings and calls that Rothschild participated in with Delphi. There may have been other calls directly between Delphi and the UAW that Rothschild is not aware of.  In addition, there were numerous calls with Lazard to discuss the status of and clarification to their due diligence requests that have not necessarily been logged.

| | |
|---|---|
| 11/1/05 | Meeting with Lazard (Jim Millstein, Andrew Yearley, Stephen Sieh, Philip Riley, Sayles Braga), UAW (Joe Stackpole), Delphi (Sheehan, Salrin), and Rothschild (Resnick, Shaw, Torraco) in New York to review 1113/1114 proposals, historical presentations and next steps |
| 11/8/05 | Meeting with Lazard (Sieh, Riley, Braga) and Rothschild (Shaw, Torraco, Irion) in New York to review the dynamic projections model |
| 11/22/05 | Meeting with Lazard (Millstein, Yearley, Sieh, Riley), UAW (Linda Ewing, Jennifer Kelly, Stackpole), Delphi (Salrin, Balgenorth, Darby, Dameron-Clark), OMM (Jerman), and Rothschild (Resnick, Shaw, Torraco) in New York to review penny sheet calculations and competitive labor benchmarking |
| 12/1 - 12/2 | Two-day meetings with Lazard (Millstein, Yearley, Sieh, Riley), other constituency advisors, Delphi, Rothschild, and FTI regarding operational due diligence, including presentations by each division |
| 12/2/05 | Meeting with Lazard (Millstein, Yearley, Sieh) and Delphi (Sheehan, Butler) regarding labor due diligence |
| 12/16/05 | Meeting with Lazard (Millstein, Yearley, Sieh, Riley), UAW (Stackpole, others), Delphi (Sheehan, Salrin, Sax, Kidd), and Rothschild (Resnick, Shaw, Torraco) in Troy/New York to review business plan projections and presentation |
| 12/19/05 | Call with Lazard (Yearley, Sieh, Riley), Delphi (Sheehan), and Rothschild (Shaw, Torraco) to answer labor due diligence questions |
| 1/31/06 | Call with Lazard (Yearley, Sieh, Riley), UAW (Kelly, Rob Sciotto), Delphi (Salrin, Darby, Dameron-Clark), and Rothschild (Shaw, Torraco) to review labor penny sheet calculations, including pension and OPEB |
| 2/7/06 | Call with Lazard (Sieh, Riley, Braga), Chanin, Delphi (Salrin, Pritchett, LoPrete), Rothschild (Torraco), and FTI (King) to review steady state projection detail |
| 3/10/06 | Call with Lazard (Yearley, Sieh, Riley) and Rothschild (Shaw, Torraco) regarding due diligence questions |

4/4/06      Call with Lazard (Yearley, Riley, Braga), UAW (Sciotto), Delphi (Salrin, Pritchett, Dameron-Clark), and Rothschild (Shaw, Torraco) to review attrition plan and projections materials

4/6/06      Meeting with Lazard (Yearley, Riley, Braga), UAW (Sciotto), Chanin, Delphi (Pritchett), FTI (Emrikian, Pokrassa), and Rothschild (Shaw, Torraco) to review dynamic projections model

4/18/06     Lazard requested a meeting with Delphi to understand the steady state projections and a call to understand the development of the plant profitability analysis.  Delphi responded that they were available as soon as Lazard wanted to schedule.  Lazard stated that they were not yet available and would respond with possible dates

4/21/06     Call with Lazard (Yearley, Sieh, Riley), Delphi (Pritchett), and Rothschild (Shaw, Torraco) to review transformation model assumptions and cash flow walks between models

4/21/06     Call with Lazard (Yearley, Sieh, Riley), Delphi (Pritchett), and Rothschild (Shaw, Torraco) to review attrition plan analysis and impact on projections