| | |
|---|---|
| | Hearing Date and Time:   TBD |
| | Objection Deadline:   TBD |

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
Glenn M. Kurtz (GK-6272)
Gerard Uzzi (GU-2297)
Douglas P. Baumstein (DB-1948)

Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Thomas E Lauria (Admitted *Pro Hac Vice*)
Frank L. Eaton (FE-1522)
Ileana A. Cruz

ATTORNEYS FOR APPALOOSA
MANAGEMENT L.P., WEXFORD CAPITAL LLC,
PARDUS CAPITAL MANAGEMENT L.P., AND
LAMPE CONWAY & CO., LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re | ) | Chapter 11 |
| | ) | |
| Delphi Corporation, <u>et al.</u> | ) | Case No. 05-44481 (RDD) |
| | ) | Jointly Administered |
| Debtors. | ) | |
| | ) | |

**EMERGENCY MOTION OF THE SHAREHOLDERS FOR ENTRY OF AN ORDER
PURSUANT TO 11 U.S.C. §§ 105(a) AND 1102(a)(2) ENLARGING
THE EQUITY COMMITTEE APPOINTED BY THE U.S. TRUSTEE**

TO:   THE HONORABLE JUDGE ROBERT D. DRAIN,
       UNITED STATES BANKRUPTCY JUDGE

Appaloosa Management L.P., with and through certain of its affiliates

(collectively, "Appaloosa"), Wexford Capital LLC, with and through certain of its affiliates

(collectively, "Wexford"), Pardus Capital Management L.P., with and through certain of its affiliates ("Pardus"), and Lampe Conway & Co., LLC, with and through certain of its affiliates (collectively "Lampe," and together with Appaloosa, Wexford, and Pardus, each a "Shareholder" and collectively, the "Shareholders"),[1] by and through their undersigned counsel, hereby file this emergency motion (the "Motion") for entry of an order pursuant to sections 105(a) and 1102(a)(2) of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") enlarging the Committee of Equity Security Holders (the "Equity Committee") appointed by the United States Trustee (the "U.S. Trustee") by directing the appointment of the Shareholders to serve as members.  For the reasons set forth herein and in the Declaration of Frank L. Eaton, submitted contemporaneously herewith, the relief requested herein is warranted on an emergency basis in accordance with the proposed order to show cause (the "Order to Show Cause") submitted contemporaneously herewith.  In support of this Motion, the Shareholders respectfully represent as follows:

## EMERGENCY RELIEF REQUIRED

1.      Via the Order to Show Cause, the Shareholders seek emergency consideration of this Motion.  Critical events in these chapter 11 cases are rapidly unfolding on issues which this Court directed that equity be given the opportunity to be heard.  Specifically, as these chapter 11 cases have been touted as labor transformation cases, resolution of labor issues will have a significant—if not decisive—impact on the interests that the Shareholders should be given the opportunity to protect.  In light of the fast approaching hearing scheduled for May 9, 2006 to consider rejection of certain collective bargaining agreements and elimination of retiree benefits,

---

[1]     Appaloosa beneficially owns approximately 9.3% of Delphi's issued and outstanding shares; Wexford beneficially owns approximately 3.2% of Delphi's issued and outstanding shares; Pardus beneficially owns approximately 4.7% of Delphi's issued and outstanding shares; and Lampe beneficially owns approximately 1% of Delphi's issued and outstanding shares.

the Shareholders urge this Court that expedited consideration of the relief requested by the Motion is warranted.

## PRELIMINARY STATEMENT

2.  In the aggregate, the Shareholders, each of which is a sophisticated investor and a veteran of numerous chapter 11 cases, own nearly 20% of the issued and outstanding common stock of Delphi Corporation ("Delphi"). As this Court is aware, Appaloosa, Delphi's largest shareholder, single-handedly prosecuted the motion for the appointment of an equity committee over the objection of Delphi and its affiliated debtors (collectively, the "Debtors"), the official committee of unsecured creditors (the "Creditors' Committee"), the Debtors' prepetition lenders, and the U.S. Trustee. In prosecuting the motion and conducting extensive discovery, Appaloosa expended a significant amount of resources through the retention of counsel and experts. Appaloosa's efforts ultimately resulted in a favorable decision by this Court directing the U.S. Trustee to appoint an equity committee. Thereafter, each of the Shareholders formally requested appointment to the Equity Committee.

3.  Rather than promptly forming an equity committee from Delphi's largest shareholders (as would have been consistent with customary practice, the language of section 1102(b)(2) of the Bankruptcy Code and the exigencies of these chapter 11 cases), the U.S. Trustee instead adopted the unprecedented, costly and time-consuming procedure of soliciting all of Delphi's over 300,000 shareholders for committee membership.

4.  As a result of this bizarre process, not until the afternoon of Friday, April 28, 2006—a full twenty-eight days after the issuance of this Court's order directing the appointment of an equity committee—did the U.S. Trustee actually appoint the Equity Committee; it is a 7-member committee consisting of two institutional investors and five individuals. Conspicuously

missing from the roster was Appaloosa and the other Shareholders, each of which submitted timely its application for membership to the Equity Committee.

5.  In what we believe to be a first in the annals of bankruptcy history, a party that (i) requested the appointment of a committee, (ii) successfully obtained an order directing the appointment of such committee, (iii) has otherwise been active in the case protecting the interests of the constituency to be represented by such committee, and (iv) applied to be a member of such committee, was subsequently not offered the opportunity to be a member. The U.S. Trustee's failure to even make an inquiry to Appaloosa and the other Shareholders regarding their request to serve on the Equity Committee is troubling given the size of their holdings, their willingness to serve, and the clear direction under section 1102(b)(2) of the Bankruptcy Code that an equity committee should "ordinarily consist of the persons, willing to serve, that hold the seven largest amounts of equity securities."

6.  The Shareholders believe that the U.S. Trustee's failure to appoint some or all of them to the Equity Committee is a clear abuse of discretion and respectfully request that the Court direct the U.S. Trustee to enlarge the Equity Committee through the appointment of the Shareholders.

## BACKGROUND

7.  On October 8, 2005, each of the Debtors filed respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Court"), thereby commencing the above-captioned jointly administered chapter 11 cases (collectively, the "Cases"). The Debtors continue to operate their businesses as debtors and debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

The Equity Committee Motion

8.      On November 7, 2005, Appaloosa requested appointment of an equity committee by letter to the U.S. Trustee.  Thereafter, on December 22, 2005, after Delphi's board of directors refused to support Appaloosa's request for the formation of an equity committee and the U.S. Trustee failed to take any action on Appaloosa's request, Appaloosa filed its Motion Pursuant to 11 U.S.C. § 1102(a)(2) for an Order Directing the United States Trustee to Appoint an Equity Committee in these Chapter 11 Cases [Docket No. 1604] (the "Equity Committee Motion").

9.      The Equity Committee Motion was opposed by the Debtors [Docket No. 2629], the Creditors' Committee [Docket No. 1634], JPMorgan Chase Bank, N.A., in its capacity as administrative agent for itself and a syndicate of the Debtors' senior secured lenders [Docket No. 1693] and the U.S. Trustee, who filed two objections to the Equity Committee Motion [Docket Nos. 1682 & 2636].

10.     In prosecuting the Motion, Appaloosa conducted extensive discovery and retained experts to (i) counter the Debtors' conclusion that they were hopelessly insolvent, and (ii) analyze the Debtors' labor costs, including pension benefits and other post-employment benefit liabilities under various potential scenarios.

The Unintended and Inadvertent Disclosure of Confidential Information

11.     On March 20, 2006, Appaloosa through its counsel, filed its Memorandum of Law in Reply to Objections to the Equity Committee Motion (the "Memorandum of Law"). Because the Memorandum of Law and related papers contained certain information that had been produced by the Debtors in discovery and marked as "confidential" or "highly confidential," they were electronically filed on the Court's CM/ECF system as a redacted document in accordance with a Stipulation and Agreed Protective Order dated January 31, 2006 between Appaloosa and the Debtors.  The redacted text was highlighted in black using a

Microsoft Word ("MS Word") feature making the text unreadable. In filing the redacted Memorandum of Law and related papers, counsel for Appaloosa, complied with the Court's General Order M-242 and the Electronic Filing System Attorney User's Manual (the "ECF Manual") (an exhibit to the General Order) which states that "[c]onversion of any word processing document to PDF Format is required before submitting to the court's electronic filing system." ECF Manual at p. 4 entitled "How to Convert Documents to PDF Format." The ECF Manual outlines the process to "print to pdf:" "Print the file. The File should not actually print out; instead the option to save the file as a PDF format file appears. Name the file, giving it the extension .PDF. Accept the option and the file is converted to a PDF Document." Id.

12.    At the conclusion of the first day of hearings on the Equity Committee Motion, counsel to Appaloosa first learned that the redacted Memorandum of Law and related papers may have been downloaded by members of the financial press from the CM/ECF system and saved to hard drive. Using the Adobe Acrobat program and Microsoft operating system, these parties were apparently able to reconvert the redacted documents to MS Word format, which had the unintended effect of eliminating the redaction and revealing the redacted material. After learning of this problem, counsel for Appaloosa promptly attempted to contact the Clerk of the Court to take corrective measures: by the commencement of business the following morning, access to the redacted Memorandum of Law and related papers had been eliminated.

13.    The disclosure was unintended and inadvertent, occurred through no one's fault, and did not in any way involve Appaloosa or any other Shareholder.

Approval of the Equity Committee Motion and Appointment of Committee Members

14.    At the conclusion of a two-day evidentiary hearing conducted on March 21 and 22, 2006, the Court issued a bench ruling granting the Equity Committee Motion. On March 30, 2006, the Court entered an order directing the U.S. Trustee to appoint an Equity Committee

[Docket No. 3024] (the "Equity Committee Order").  One provision of the Equity Committee Order specifically addressed Appaloosa and the disclosure of confidential information:  "In the event Appaloosa applies to be appointed to the Equity Committee, the U.S. Trustee is directed to investigate, among other issues pertaining to Appaloosa's ability to serve as a fiduciary for equity security holders, all facts relating to the apparent release of confidential information covered by the Court's protective order in the prosecution of the Motion."  Equity Committee Order ¶ 8.

15.     On March 30, 2006, the U.S. Trustee filed with the Court a letter, together with an Equity Security Holder Committee Acceptance Form (the "Acceptance Form") that was distributed to each of Delphi's over 300,000 shareholders to solicit interest in serving on the Equity Committee.  The Acceptance Form was required to be submitted to the U.S. Trustee by no later than April 24, 2006 at 12:00 p.m.

16.     Prior to the April 24th deadline, each of the Shareholders completed and submitted their respective Acceptance Forms.[2]  In addition, counsel to Appaloosa submitted a cover letter (the "Cover Letter") detailing the unintended and inadvertent disclosure of the redacted material in the Memorandum of Law and related papers, together with memoranda from each attorney, paralegal and employee involved in the filing process.

Appaloosa and the Other Shareholders Have Remained Active in these Cases

17.     During the 5-week gap period prior to the formation of the Equity Committee on April 28, 2006, Appaloosa, as well as certain of the other Shareholders, have remained actively engaged in these Cases, having (i) filed and prosecuted their objections to the Debtors' request for authorization to enter into hourly attrition programs with its unions (as a result of which a number of changes and modifications were agreed to on the record or ordered by the Court that

---

[2]     In addition, Wexford submitted a letter to the U.S. Trustee in support of its Acceptance Form, setting forth its unique qualifications to serve on the Equity Committee.

benefited the Delphi estate), (ii) filed a preliminary and a supplemental objection to the Debtors' motion pursuant to sections 1113 and 1114 of the Bankruptcy Code to reject its various collective bargaining agreements and terminate retiree welfare benefits (the "CBA Rejection Motion") [Docket No. 3244 & 3356] and (iii) filed a preliminary objection to the Debtors' motion to reject in excess of 5,000 supply contracts with General Motors Corporation (the "GM Rejection Motion") [Docket No. 3243].  In addition, the Shareholders are currently involved in obtaining discovery from the Debtors relating to the economic impact on all stakeholders, including equity security holders, if the relief requested in the CBA Rejection Motion and the GM Rejection Motion is granted.

Appointment of the Equity Committee

18.     On April 28, 2006, the U.S. Trustee filed the Notice of Appointment of Committee of Equity Security Holders (the "Notice of Appointment") [Docket No. 3503] identifying two institutional investors and five individual shareholders.  Notwithstanding Appaloosa's continuous involvement in these Cases and single-handed efforts to secure the appointment of the Equity Committee, its name was conspicuously absent.  Notably, notwithstanding the Equity Committee Order and the Court's directive that the U.S. Trustee "investigate" Appaloosa's request to serve on the Equity Committee, the U.S. Trustee never contacted Appaloosa or its counsel prior to filing the Notice of Appointment.  In addition, notwithstanding the language of section 1102(b)(2) of the Bankruptcy Code that an equity committee "shall ordinarily consist of the persons, willing to serve, that hold the seven largest amounts of equity securities of the debtor," none of the other Shareholders were appointed or even contacted by the U.S. Trustee.

19.     On May 1, 2006, the Shareholders' counsel corresponded with the U.S. Trustee in a good faith effort to determine the possible grounds for the Shareholders' exclusion from the

Equity Committee. In response, the U.S. Trustee simply noted that it would "not discuss the rationale behind the choice of members of committees, which is a privileged and confidential matter."

## JURISDICTION AND VENUE

20.     This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is property pursuant to 28 U.S.C. §§ 1408 and 1409.

## RELIEF REQUESTED

21.     By this Motion, the Shareholders request entry of an order enlarging the Equity Committee appointed by the U.S. Trustee to include the Shareholders.[3]

## BASIS FOR RELIEF

22.     Section 1102(b)(2) of the Bankruptcy Code provides that "[a] committee of equity security holders appointed under subsection (a)(2) of this section shall <u>ordinarily consist of the persons, willing to serve, that hold the seven largest amounts of equity securities of the debtor</u> of the kinds represented on such committee." 11 U.S.C. § 1102(b)(2) (emphasis added).

23.     Courts within this Circuit have long held that a U.S. trustee's decision regarding the composition of a committee appointed under section 1102(a) is subject to review by the bankruptcy court. See, e.g., In re Barney's Inc., 197 B.R. 431, 439 (Bankr. S.D.N.Y. 1996) (reviewing the U.S. trustee's decision regarding the size and composition of an official committee for abuse of discretion); In re Texaco, Inc., 79 B.R. 560, 566 (Bankr. S.D.N.Y. 1987) (reviewing the U.S. trustee's decision *de novo* and holding that the court has authority to modify committee membership).

---

[3]     A proposed order granting the Motion is attached hereto.


24. This Court, in these very Cases, has previously addressed the standard of review for the U.S. Trustee's decision on the composition of the Creditors' Committee. In this case, Law Debenture, the indenture trustee for certain of the Debtors' notes, filed a motion requesting an order to change the membership of the Creditors' Committee after the U.S. Trustee refused to appoint Law Debenture as a member.[4] In resolving Law Debenture's motion, this Court stated that:

> Given the statutory charge to the U.S. Trustee to appoint the committee, I believe that the Barney's line of cases . . . [i]s probably the right line to follow as to the standard by which the court should review the issue. That is, at least as to whether a particular member should be appointed to a committee, the trustee's decision should be reviewed on an abuse-of-discretion basis, given the trustee's administrative function in deciding which individual member should serve on a committee.

Hr'g Tr. 160:20-161:4, Jan. 5, 2006.

25. Indeed, courts reviewing appointment decisions for abuse of discretion have held that "the bankruptcy judge may invoke § 105(a) and – if necessary or appropriate – may dictate which creditors will sit on the committee(s) empanelled by the [U.S. trustee]." In re Value Merchants, Inc., 202 B.R. 280, 288 (E.D. Wis. 1996); 11 U.S.C. § 105(a) ("No provision of this title . . . shall be construed to preclude the court from . . . taking any action or making any determination necessary or appropriate to . . . prevent an abuse of process."); see also In re Plabell Rubber Prods., 140 B.R. 179, 181 (Bankr. N.D. Ohio 1992) (holding that, pursuant to section 105(a) of the Bankruptcy Code, the court may review the U.S. trustee's decisions regarding committee membership under an "arbitrary and capricious" or "abuse of discretion" standard).

---

[4] Although the relief sought by Law Debenture was similar to the relief sought by the Shareholders herein, Law Debenture's position with respect to the Creditors' Committee differed in that Law Debenture was not the entity responsible for having fought hard for appointment of that official committee.

26. Similarly, courts reviewing such decisions *de novo* have held that the bankruptcy court is vested with the same broad authority to revisit a trustee's appointment decision. See, e.g., In re Pub. Serv. Co. of N.H., 89 B.R. 1014, 1019-21 (Bankr. D.N.H. 1988) (reviewing U.S. trustee's decision *de novo* and appointing additional parties to existing committee).

27. As at least one court has astutely noted, the failure to review a U.S. trustee's decision regarding the composition of a committee would, in effect, reduce section 1102 of the Bankruptcy Code to no more than a "blank check[] drawn to the credit of some administrative officer or board." Masters, Mates & Pilots Plans v. Lykes Bros. S.S. Co., Inc. (In re Lykes Bros. S.S. Co., Inc.), 200 B.R. 933, 939 (Bankr. M.D. Fla. 1996) (citing Bowen v. Mich. Acad. of Family Physicians, 476 U.S. 667, 671 (1986)).

28. While the courts in Barney's and Texaco applied differing standards of review, both decisions support the proposition that a U.S. trustee's decision regarding the appointment of a committee is subject to the bankruptcy court review. Moreover, despite the application of different standards of review, recent amendments to the Bankruptcy Code under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 make plain that the latter approach is favored by Congress. Specifically, under revised section 1102(a)(4), a court may "[o]n request of a party in interest and after notice and a hearing, . . . order the United States trustee to change the membership of a committee . . . ." 11 U.S.C. § 1102(a)(4)(2005). While the Shareholders concede that section 1102(a)(4) of the Bankruptcy Code does not apply retroactively, they respectfully submit that it provides clarification regarding the intent of Congress and, as such, further supports the enlargement of the Equity Committee in these Cases.

29. For the reasons discussed herein, the Shareholders respectfully submit that the U.S. Trustee abused its discretion in failing to appoint some or all of the Shareholders to the

Equity Committee. As a result, the Shareholders request that this Court exercise its authority under sections 105(a) and 1102(a)(2) of the Bankruptcy Code to order enlargement of the Equity Committee by appointing the Shareholders to serve as members.

### WAIVER OF MEMORANDUM OF LAW

30. The Shareholders have cited to the legal authorities upon which they rely within the body of this Motion. Accordingly, the Shareholders respectfully request that the requirement of Local Rule 9013-1(b) that a memorandum of law be submitted herewith be deemed satisfied.

### NO PRIOR REQUEST

31. No previous motion for the relief sought herein has been made to this or any other court.

### NOTICE

32. The Shareholders will provide notice of this Motion on the date hereof to all entities entitled to receive notice pursuant to that certain Case Management Order [Docket No. 245], as amended, issued by this Court in these chapter 11 cases. The Shareholders submit that no other or further notice is necessary or required.

WHEREFORE, the Shareholders respectfully request entry of an order (i) pursuant to 11 U.S.C. §§ 105(a) and 1102(a)(2) enlarging the Equity Committee by appointing the Shareholders to serve as members, and (ii) granting the Shareholders such other and further relief as is just.

Dated:  May 3, 2006
        Miami, Florida

> WHITE & CASE LLP
> Glenn M. Kurtz (GK-6272)
> Gerard Uzzi (GU-2297)
> Douglas P. Baumstein (DB-1948)
> 1155 Avenue of the Americas
> New York, New York 10036-2787
> (212) 819-8200
>
> Thomas E Lauria (Admitted *Pro Hac Vice)*
> Frank L. Eaton (FE-1522)
> Ileana A. Cruz
> Wachovia Financial Center
> 200 South Biscayne Boulevard
> Miami, Florida 33131
> (305) 371-2700
>
> By: _____
>         Frank L. Eaton
>
> Counsel to Appaloosa Management L.P.,
>   Wexford Capital LLC, Pardus Capital
>   Management L.P., and Lampe Conway & Co.,
>   LLC