BURR & FORMAN LLP  
420 North 20th Street  
Suite 3100  
Birmingham, Alabama 35203  
(205) 251-3000  
Michael Leo Hall  

Hearing Date at Time: May 9, 2006 at 10:00 a.m.

Attorney for Creditor  
MERCEDES-BENZ U.S. INTERNATIONAL, INC.

UNITED STATES BANKRUPTCY COURT  
SOUTHERN DISTRICT OF NEW YORK  

---

| | |
|---|---|
| In re | Chapter 11 |
| DELPHI CORPORATION et al.,[1] | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

---

## OBJECTION OF MERCEDES-BENZ U.S. INTERNATIONAL, INC., TO THE MOTION OF INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND IMPLEMENT WORKERS OF AMERICA (UAW) TO LIMIT PARTICIPATION IN THE HEARING ON DELPHI'S SECTION 1113 AND SECTION 1114 MOTION

**COMES NOW** Mercedes-Benz U.S. International, Inc. ("MBUSI"), a creditor and party-in-interest in the above-styled bankruptcy case, and hereby files its objection (the "Objection") to the *Motion of International Union, United Automobile, Aerospace and Implement Workers of America (UAW) to Limit Participation in the Hearing on Delphi's Section 1113 and Section 1114*

---

[1] In addition to Delphi, the following entities are debtors in these related cases: ASEC Manufacturing General Partnership, ASEC Sales General Partnership, Aspire, Inc., Delco Electronics Overseas Corporation, Delphi Automotive Systems (Holding), Inc., Delphi Automotive Systems Global (Holding), Inc., Delphi Automotive Systems Human Resources, LLC, Delphi Automotive Systems International, Inc., Delphi Automotive Systems Korea, Inc., Delphi Automotive Systems LLC, Delphi Automotive Systems Overseas Corporation, Delphi Automotive Systems Risk Management Corp., Delphi Automotive Systems Services LLC, Delphi Automotive Systems Tennessee, Inc., Delphi Automotive Systems Thailand, Inc., Delphi China LLC, Delphi Connection Systems, Delphi Diesel Systems Corp., Delphi Electronics (Holding) LLC, Delphi Foreign Sales Corporation, Delphi Integrated Services Solutions, Inc., Delphi International Holdings Corp., Delphi International Services, Inc., Delphi Liquidation Holding company, Delphi LLC, Delphi Mechatronic Systems, Inc., Delphi Medical Systems Colorado Corporation, Delphi Medical Systems Corporation, Delphi Services Holding Corporation, Delphi Technologies, Inc., DREAL, Inc, Environmental Catalysts, LLC, Exhaust Systems Corporation, Packard Hughes Interconnect Company, Specialty Electronics, Inc., and Specialty Electronics International Ltd.

1460955

*Motion* (the "Motion to Limit Participation"). It support of its Objection, MBUSI states as follows:

## FACTS

1. MBUSI is an Alabama Corporation, having its principal office and place of business at 1 Mercedes Drive, Vance, Alabama 35490 (the "Vance Plant"). MBUSI is a wholly owned subsidiary of Daimler Chrysler North America Holding, which is a wholly owned subsidiary of DaimlerChrysler AG, and is an original equipment manufacturer ("OEM") customer of Delphi Corporation and its subsidiaries ("Delphi").

2. MBUSI has executed multiple contracts, entitled letters of intent (the "Letters of Intent"), with Delphi, for the development and supply of transmission mounts and hydromounts; wiring harness systems; cockpit modules; SAM rear, SRB front, and SRB rear systems; and other systems, components, and/or parts. Each of the Letters of Intent is governed by MBUSI's master supply agreement (the "Supply Agreement"). MBUSI now purchases approximately four hundred million dollars ($400,000,000.00) worth of automotive systems, components, and/or parts from Delphi each year.

3. Delphi has manufacturing facilities in Cottondale, Alabama[2] (staffed by UAW Local 2083 union members) and Gadsden, Alabama (staffed by IUE Local 711 union members) which are essentially dedicated to making products for MBUSI (the "Alabama Delphi Plants").[3] MBUSI's own manufacturing lines depend on the "just in-time" supply of products from these plants in order for MBUSI's own plant to remain operational. Delphi is liable to MBUSI under

---

[2] This plant is sometimes referenced as being located in Tuscaloosa, Alabama.

[3] Delphi has other plants in Alabama, including locations in Decatur, Tuscaloosa, and the Quad Cities, with which MBUSI is not concerned.

1460955                                                           2

the Supply Agreement for any shutdown of the MBUSI lines caused by Delphi's failure timely supply, including any failure resulting from a strike.

4. On March 31, 2006, Delphi filed its *Motion for an Order Under 11 U.S.C. § 1113(c) Authorizing Rejection of Collective Bargaining Agreements and Under 11 U.S.C. § 1114(g) Authorizing Modification of Retiree Welfare Benefits* (the "Section 1113 and 1114 Motion"). The deadline for filing objections to the Section 1113 and 1114 Motion expired on April 21, 2006, and the Section 1113 and 1114 Motion is set for hearing on May 9, 2006.

5. Objections to the Section 1113 and 1114 Motion have been filed by the International Union, United Automobile, Aerospace and Implement Workers of America (the "UAW"), Appaloosa Management L.P. and Wexford Capital LLC ("Appaloosa"), General Motors Corporation ("General Motors"), United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers, International Union, AFL-CIO (the "USW"), International Union of Electronic, Salaried, Machine and Furniture Workers - Communications Workers of America (the "IUE-CWA"), and Wilmington Trust Company ("Wilmington").

6. On April 26, 2006, the UAW filed its Motion to Limit Participation, seeking the entry of an order excluding Appaloosa, Wilmington, and the Committee from participating in the hearing on the Debtors' Section 1113 and 1114 Motion. Though the requested relief does not seek to bar all potential parties in interest from participating in the proceedings on the Section 1113 and 1114 Motion, excluding only those who have filed an objection or a response thereto, it is apparent that the intended scope of the Motion to Limit Participation is to preclude any party other than Delphi, the unions, and General Motors from participating.

7. There is a risk that rejection of the union contracts concerning the Alabama Delphi Plants will lead to work stoppages. If a stoppage takes place, and Delphi is unable to fulfill its obligations to MBUSI under the Supply Agreement, MBUSI will incur significant damages. As such, MBUSI has a pecuniary interest in the outcome of the hearing on the Section 1113 and 1114 Motion, in both its capacity as a customer and as a creditor of the debtor. Moreover, no party can be said to adequately represent the unique interests of MBUSI in this particular dispute.

8. MBUSI has only recently received from Delphi the union contracts which are applicable to the Alabama Delphi Plants.[4] MBUSI seeks to appear and participate at the hearing in order to protect its interests in the continued operation of these Alabama Delphi Plants. MBUSI's concern is that considerations unique to the Alabama Delphi Plants be made known to the Court and considered by the parties in negotiating a consensual modification of the collective bargaining agreements.

9. In particular, Delphi has consistently maintained that in order to reorganize it needs to dramatically reduce wage rates of its employees covered by collective bargaining agreements. It appears that Delphi's ultimate wage target for hourly workers is in the mid to high teens. However, for the two Alabama Delphi Plants, the wages rates are already either *at or below* the target rates[5]. This factor, which is unique to the Alabama Delphi Plants, should be considered by the Court in reaching a decision as to these union contracts.

---

[4] Counsel for MBUSI requested copies of the collective bargaining agreements from Delphi when Delphi filed its Section 1113 and 1114 Motion. Counsel for Delphi e-mailed these documents to counsel for MBUSI on April 26, 2006.

[5] There may be a handful of employees in the Gadsden plant, which may have higher rates because they worked there before General Motors spun off the Gadsden plant to Delphi. MBUSI believes there are no such employees at the recently built Cottondale plant.

10. Moreover, MBUSI has been told that the two Alabama Delphi Plants generally do not receive any component parts from any other Delphi bankrupt entity.[6] Even if the rejection of all of Delphi's other collective bargaining agreements led to a work stoppage at all of those facilities, continued timely production should still be possible at the two Alabama Delphi Plants.

11. So there are two facts unique to the Alabama Delphi Plants. First, the pay rates of these two plants are at of below Delphi's target wage rates. Second, these Alabama Delphi Plants should be able to operate on a stand alone basis even if the rest of Delphi is shut down.

12. MBUSI desires to participate in these proceedings to be sure that the uniqueness of its situation is appropriately brought to the Court's attention so that the Court can make a fully informed decision.

13. MBUSI refrains from opposing or supporting the Section 1113 and 1114 Motion at this time. At most, MBUSI will oppose or support the Section 1113 and 1114 Motion only as it relates to the collective bargaining agreements applicable to the Alabama Delphi Plants.

14. MBUSI does not intend to call any witnesses at the Section 1113 and 1114 Motion proceedings.

15. For the reasons set forth more fully herein, MBUSI is entitled to appear at and participate in the hearing on the Section 1113 and 1114 Motion.

## ARGUMENT

16. Section 1109(b) of the Bankruptcy Code states, "A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an

---

[6] The Alabama Delphi Plants do receive components from Delphi's Mexican entities. ccasionally MBUSI has been told to believe that perhaps one component part does come from a Delphi facility owned by a bankrupt entity, but MBUSI has not been able to verify this.

1460955

5

equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b).

17. Some courts expressly provide that 1109(b) standing to "appear and be heard on any issue in a [chapter 11] case" extends to contested matters, while other courts reference the statute as illustrative in determining whether a party has standing in a particular bankruptcy proceeding. *See, e.g., In re Bumper Sales, Inc.*, 907 F.2d 1430, 1433-44 (4th Cir. 1990) (stating that secured creditor's § 363 motion was "case," as opposed to an adversary proceeding, in which unsecured creditors committee had standing under § 1109); *In re Texaco Inc.*, 81 B.R. 820, 828 (Bankr. S.D. N.Y. 1988) (discussing § 1109(b) standing in the context of determining whether an individual was party in interest under § 362(d) of the Bankruptcy Code).

18. The term "party in interest" as used in the bankruptcy statute "is broadly interpreted, but not infinitely expansive." *See, e.g., Southern Blvd., Inc. v. Martin Paint Stores*, 207 B.R. 57, 61 (S.D. N.Y. 1997); *In re Ionosphere Clubs, Inc.*, 101 B.R. 844, 849 (Bankr. S.D. N.Y. 1989); *In re Texaco Inc.*, 81 B.R. 820, 828 (Bankr. S.D. N.Y. 1988).

19. Whether an entity is a party in interest entitled to appear and participate in a proceeding in the bankruptcy case is to be determined on an ad hoc basis, not summarily. *In re Ionosphere Clubs, Inc.*, 208 B.R. 812, 815 (S.D. N.Y. 1997); *In re Texaco Inc.*, 81 B.R. 820, 828 (Bkrtcy. S.D. N.Y. 1988).

20. The test Second Circuit courts use in determining whether an entity is a "party in interest" entitled to appear and be heard in a bankruptcy proceeding is whether that entity has a sufficient stake in the outcome of the proceeding so as to require representation. *See, e.g., Baron & Budd, P.C. v. Unsecured Asbestos Claimants Committee*, 321 B.R. 147, 158 (D. N.J. 2005); *In*

1460955

6

*re First Interregional Equity Corp.*, 218 B.R. 731, 735 (Bankr. D. N.J. 1997); *In re Texaco Inc.*, 81 B.R. 820, 828 (Bkrtcy. S.D. N.Y. 1988).

21.    Due to the nature of proceedings under § 1113 and § 1114, a party who may have standing to appear and be heard with respect to other issues arising in a chapter 11 bankruptcy case may not have standing to appear and be heard at a § 1113 or § 1114 proceeding. Nevertheless, this does not mean that the general rule for determining when an entity is a "party in interest" is not applicable, or that the court may summarily exclude parties who may have an interest in the outcome of the proceeding.

22.    In support of its Motion to Limit Participation, the UAW relies on a non-binding holding of the Seventh Circuit Court of Appeals in *In re UAL Corp.*, 408 F.3d 847 (7th Cir. 2005). It appears that the Seventh Circuit is the only Court of Appeals to have considered the standing of a party to appear and be heard at a proceeding under § 1113.

23.    In *UAL Corp*, the debtor proposed to reject its pension plans and transfer its residual obligations to the Pension Benefit Guaranty Corporation under § 1113. Upon questions as to the appropriateness of its remaining as fiduciary of those plans, an independent fiduciary was selected solely for the purpose of administering the plans pending a ruling on the debtor's proposed rejection. The Seventh Circuit ruled that the independent fiduciary of the pension plans did not have standing to appear and participate at the hearing on the debtor's § 1113 motion. *Id.* at 851.

24.    In reaching its decision, the court in *UAL Corp.* found that an "interested party" for the purposes of a § 1113 proceeding is necessarily more limited than a "party in interest" in the bankruptcy case and, therefore, held that § 1109 was inapplicable. *Id.* The Court went on to

state that, in the context of § 1113, "interested party" means a party to the collective bargaining agreement. *Id.*

25. Even if § 1109 is not applicable in § 1113 proceedings, case law interpreting § 1109 and annunciating the standard for determining whether an entity is a "party in interest" entitled to appear and be heard is clearly instructive as to whether an entity is an "interested party" under § 1113.

26. Despite the assertion of the Seventh Circuit, there appears to be no basis for distinguishing the terms "party in interest," as used in § 1109, and "any interested party," as used in § 1113. In explaining its distinction, the Court of Appeals reasoned that since consensual modification of the collective bargaining agreement would not have required the approval of the independent fiduciary, it need not be permitted to participate. *Id.* Not only does this argument ignore the distinction between a mutual modification pursuant to the terms of a collective bargaining agreement and a unilateral termination provided for exclusively by the Bankruptcy Code, but it neglects to consider the fact of the bankruptcy and the resulting impact of any modification on the bankruptcy estate. A creditor of the bankruptcy estate, who is not a party to a contract which the debtor seeks to assume or reject, may nevertheless be a party in interest entitled to object to the debtor's motion due to the potential impact of such a determination on the bankruptcy estate. *See, e.g., In re ANC Rental Corp., Inc.*, 278 B.R. 714, 719 (Bankr. D. Del. 2002) ("A creditor may be heard on a section 365 motion on issues which impact its interest as a creditor. Those would include the issue of whether the Debtors' exercise of their business judgment in deciding to assume or reject an executory contract was appropriate.") There is no basis for differentiating where the contract sought to be rejected is a collectively bargaining

1460955

8

agreement. As such, this Court should not limit participation in the § 1113 to parties to the subject collective bargaining agreements.

27. In reaching its decision, the court in *UAL Corp.* also argued that to allow every conceivably interested party to participate in a § 1113 proceeding would render such proceedings unmanageable. *In re UAL Corp.*, 408 F.3d at 851. Admittedly, it would be overly burdensome to require every union member to be individually noticed and to permit every union member who may desire to speak to be heard. However, this goes to the issue of representation. Union members, at least those whose interests are aligned with the collective bargaining units representing them, need not be permitted to participate since their interests are already being represented in the case. MBUSI, on the other hand, is a single entity having a unique pecuniary interest in the outcome of these proceedings, whose interest is not represented. Moreover, any determination that parties should be excluded from participating because of concerns as to manageability should not be made summarily. Because MBUSI is not represented by any other party, and because its appearance will not render the proceeding unmanageable, it should not be precluded from appearing and being heard.

28. Ultimately, *UAL Corp.* is distinguishable since, unlike MBUSI, the independent fiduciary that sought to participate in the § 1113 proceedings did not have a pecuniary interest in the outcome of the proceeding and, thus, would not be a party in interest entitled to appear and be heard under the previously annunciated standard applied by the courts of the Second Circuit.

29. Because MBUSI has a pecuniary interest in the outcome of the § 1113 and § 1114 proceedings due to the harm that would result to MBUSI if these proceedings were to result in work stoppages at the Alabama Delphi Plants, MBUSI is entitled to appear and be heard.

MBUSI's interests in the proceedings are unrepresented, and its participation will not render the proceedings unmanageable.

## CONCLUSION

WHEREFORE MBUSI requests that this Court deny the UAW's Motion to Limit Participation, or, alternatively, hold that any order entered in connection therewith does not preclude MBUSI from appearing at and participating in the proceedings held in connection with Delphi's Section 1113 and 1114 Motion.

Dated: Birmingham, Alabama
May 4, 2006

                                                  BURR & FORMAN LLP

                                                  By:   /s/ Michael Leo Hall
                                                          Michael Leo Hall (Pro Hac Vice)

                                                420 North 20th Street
                                                Suite 3100
                                                Birmingham, Alabama 35203
                                                (205) 251-3000

                                                Attorneys for Creditor
                                                MERCEDES-BENZ U.S. INTERNATIONAL, INC.