WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
Glenn M. Kurtz (GK-6272)
Gerard Uzzi (GU-2297)
Douglas P. Baumstein (DB-1948)

Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Thomas E Lauria (Admitted *Pro Hac Vice*)
Frank L. Eaton (FE-1522)
Ileana A. Cruz

ATTORNEYS FOR APPALOOSA
MANAGEMENT L.P., WEXFORD CAPITAL LLC,
PARDUS CAPITAL MANAGEMENT L.P., AND
LAMPE CONWAY & CO., LLC

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re ) | Chapter 11 |
| ) | |
| Delphi Corporation, <u>et</u> <u>al.</u> ) | Case No. 05-44481 (RDD) |
| ) | Jointly Administered |
| Debtors. ) | |
| ) | |

**OBJECTION OF THE SHAREHOLDERS TO THE MOTION OF
INTERNATIONAL UNION, UNITED AUTOMOBILE, AEROSPACE AND
IMPLEMENT WORKERS OF AMERICA (UAW) TO LIMIT PARTICIPATION
IN THE HEARING ON DELPHI'S SECTION 1113 AND SECTION 1114 MOTION**

TO:   THE HONORABLE JUDGE ROBERT D. DRAIN
        UNITED STATES BANKRUPTCY JUDGE

Appaloosa Management L.P., with and through certain of its affiliates

(collectively, "Appaloosa"), Wexford Capital LLC, with and through certain of its affiliates

(collectively, "Wexford"), Pardus Capital Management L.P., with and through certain of its

affiliates ("Pardus"), and Lampe Conway & Co., LLC, with and through certain of its affiliates

(collectively "Lampe," and together with Appaloosa, Wexford, and Pardus, each a "Shareholder," and collectively, the "Shareholders"),[1] by and through their undersigned counsel, hereby file this objection (the "Objection") to the Motion of International Union, United Automobile, Aerospace and Implement Workers of America (the "UAW") to Limit Participation in the Hearing on Delphi's Section 1113 and Section 1114 Motion (the "Motion") in connection with the motion filed by Delphi Corporation ("Delphi") and its affiliated debtors and debtors-in-possession (collectively, the "Debtors") seeking to reject their collective bargaining agreements and terminate retiree benefits (the "1113/1114 Motion").[2] In support of this Objection, the Shareholders respectfully represent as follows:

## PRELIMINARY STATEMENT

1. In complete disregard of the transparency of the chapter 11 process, where all parties in interest are statutorily entitled to be heard and assert objections, the UAW seeks to shut out not only the Shareholders, but also the official committee of unsecured creditors (the "Creditors' Committee") from this Court's adjudication of the Debtors' 1113/1114 Motion. The UAW's Motion is nothing more than an attempt to subvert and undercut the fundamental tenets of due process. The Debtors make the same argument in footnote 8 of their 1113/1114 Omnibus Reply (defined below). The Shareholders, who collectively hold nearly 20% of Delphi's issued and outstanding common stock, are without any doubt statutory parties in interest that "may raise and may appear and be heard on any issue in a case under this chapter." 11 U.S.C. § 1109(b). UAW's attempt to stifle the voice of the Shareholders undermines the foundation of sections

---

[1] Appaloosa beneficially owns approximately 9.3% of Delphi's issued and outstanding shares; Wexford beneficially owns approximately 3.2% of Delphi's issued and outstanding shares; Pardus beneficially owns approximately 4.7% of Delphi's issued and outstanding shares; and Lampe beneficially owns approximately 1% of Delphi's issued and outstanding shares.

[2] Motion for an Order under 11 U.S.C. § 1113(c) Authorizing Rejection of Collective Bargaining Agreements and under 11 U.S.C. § 1114(g) Authorizing Modification of Retiree Welfare Benefits [Docket No. 3035].

1113 and 1114 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") that "all creditors, the debtor and all of the affected parties are [to be] treated fairly and equitably" and the specific provision of section 1113(d)(1) that "[a]ll interested parties may appear and be heard at such hearing." As evidenced by the Debtors' own predictions in the 1113/1114 Motion that "shareholders will likely lose their entire investments" as a result of any resolution of their labor disputes, the relief sought in the 1113/1114 Motion significantly impacts the interests of the Shareholders. Accordingly, the Shareholders are entitled to be heard at the hearing on the 1113/1114 Motion.

        2.        Simply put, UAW's argument cannot be taken seriously. Its sole justification for its position rests on a non-binding and inapposite decision of the Seventh Circuit in In re UAL Corp., 408 F.3d 847 (7th Cir. 2005). Any reading of sections 1113(d)(1) and 1114(k)(1) of the Bankruptcy Code that seeks to eviscerate the right to be heard granted by section 1109(b) of the Bankruptcy Code is clearly at odds with the goal of the chapter 11 process to establish a forum in which all constituencies can protect their interests. See In re Johns-Manville Corp., 36 B.R. 727, 735 (Bankr. S.D.N.Y. 1984) ("The filing of a Chapter 11 case creates an estate for the benefit of all creditors and equity holders of the debtor wherein all constituencies may voice their interests and bargain for their best possible treatment.").

        3.        Because the Debtors' cases are fundamentally "labor transformation cases" that will dictate recoveries of creditors and shareholders alike, the careful balancing of the equities required by section 1113 of the Bankruptcy Code cannot be accomplished without the participation of those key constituents whose interests will be irreparably harmed if their participation in this process is prohibited. For the reasons set forth below, the Motion should be denied.

## BACKGROUND

4. On October 8, 2005, each of the Debtors filed respective voluntary petitions for relief under chapter 11 of the Bankruptcy Code with the United States Bankruptcy Court for the Southern District of New York (the "Court"), thereby commencing the above-captioned jointly administered Cases. The Debtors continue to operate their businesses as debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. On December 22, 2005, Appaloosa filed its Motion Pursuant to 11 U.S.C. § 1102(a)(2) for an Order Directing the United States Trustee to Appoint an Equity Committee in these Chapter 11 Cases [Docket No. 1604] (the "Equity Committee Motion").

6. At the conclusion of a two-day evidentiary hearing conducted on March 21 and 22, 2006, the Court issued a bench ruling granting the Equity Committee Motion. On March 30, 2006, the Court entered an order directing the U.S. Trustee to appoint an Equity Committee [Docket No. 3024].

7. On March 31, 2006, the Debtors filed their 1113/1114 Motion. A hearing on the 1113/1114 Motion is set for May 9, 2006.

8. On April 17, 2006, Appaloosa filed a preliminary objection to the 1113/1114 Motion [Docket No. 3244] (the "Preliminary Objection"). Four days later, on April 21, 2006, Appaloosa and Wexford[3] filed a supplemental objection to the 1113/1114 Motion [Docket No. 3356] (the "Supplemental Objection" and, together with the Preliminary Objection, the "Objections").

---

[3] Wexford began participating in these proceedings on or about April 20, 2006.

9.  On April 26, 2006, the UAW filed its Motion, which seeks to eliminate the participation of the Shareholders and other parties in interest at the 1113/1114 Hearing.[4]

10. On April 28, 2006, the U.S. Trustee filed a Notice of Appointment of Committee of Equity Security Holders (the "Notice of Appointment") [Docket No. 3503], appointing a seven-member committee of equity holders which excludes the Shareholders.

11. On May 1, 2006, the Debtors filed an omnibus reply memorandum of law in support of the 1113/1114 Motion [Docket No. 3551] (the "1113/1114 Omnibus Reply") in which they raise an argument identical to that raised by the UAW in the Motion.

12. On May 3, 2006, the Shareholders filed an emergency motion seeking entry of an order pursuant to 11 U.S.C. §§ 105(a) and 1102(a)(2) enlarging the Equity Committee appointed by the U.S. Trustee to include the Shareholders [Docket No. 3581], in which the Shareholders request membership on the Equity Committee in time to participate in the 1113/1114 Hearing.

## OBJECTION

13. The Shareholders oppose the UAW's untenable position that the Shareholders are not "interested parties" under sections 1113(d)(1) and 1114(k)(1) of the Bankruptcy Code and, as such, are barred from participating in the 1113/1114 Hearing. The UAW's sole proffered justification for this position is its misplaced reliance on a single non-binding, and inapposite Seventh Circuit decision: In re UAL Corp., 408 F.3d 847 (7th Cir. 2005).

14. Notwithstanding the UAW's arguments to the contrary, sections 1113(d)(1) and 1114(k)(1) of the Bankruptcy Code extend a participation right to all parties who

---

[4]  For the reasons set forth in this Objection, the joinder filed on April 28, 2006 by the USW [Docket No. 3499] should also be denied.

have an interest in a debtor's application to reject a collective bargaining agreement or to modify retiree benefits, respectively. Section 1113(d)(1) provides in relevant part:

> Upon the filing of an application for rejection the court shall schedule a hearing to be held not later than fourteen days after the date of the filing of such application. <u>All interested parties may appear and be heard at such hearing.</u>

11 U.S.C. § 1113(d)(1) (emphasis added).[5]

15. An "interested party" under sections 1113(d)(1) and 1114(k)(1) of the Bankruptcy Code is construed substantially the same as a "party in interest" under section 1109(b) of the Bankruptcy Code. <u>In re Sandhurst Sec., Inc.</u>, 96 B.R. 451, 455 (S.D.N.Y. 1989). In <u>Sandhurst</u>, the court analyzed whether an interim bankruptcy trustee had standing to file a motion to resolve an election dispute, and concluded that such interim trustee was not a stakeholder, and therefore, not an "interested party" as contemplated by the phrase "parties in interest" used in section 1109(b) of the Bankruptcy Code. <u>Id.</u> at 455. The court applied the "familiar canon of construction that Congress is presumed to intend the same meaning to similar words or phrases in integrated legislation," and accordingly, found that parties who have an "economic interest at stake in the bankruptcy case," are interested parties. <u>Id.</u> (citing <u>Blue Chip Stamps v. Manor Drugs Stores</u>, 421 U.S. 723, 756, 95 S.Ct. 1917, 1935 (1975)).

16. Applying this familiar canon of statutory construction makes clear that the term "interested parties" as used in sections 1113(d)(1) and 1114(k)(1) of the Bankruptcy Code and the term "parties in interest" of section 1109(b) of the Bankruptcy Code, are meant to be

---

[5] Section 1114(k)(1) of the Bankruptcy Code tracks the language of section 1113(d)(1) of the Bankruptcy Code, stating:

> Upon the filing of an application for modifying retiree benefits, the court shall schedule a hearing to be held not later than fourteen days after the date of the filing of such application. <u>All interested parties may appear and be heard at such hearing.</u>

11 U.S.C. § 1114(k)(1) (emphasis added).

accorded similar meanings. See id. Moreover, given the clear and unambiguous language of sections 1113(d)(1) and 1114(k)(1), which <u>in no way speak to limiting participation</u>, the argument that the Shareholders are not interested parties is absurd. See <u>Lamie v. U.S. Trustee</u>, 540 U.S. 526, 534, 124 S. Ct. 1023, 1030 (2004) ("It is well established that 'when the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms.'") (internal citation omitted).

17. Significantly, the UAW's effort to restrict participation at the 1113/1114 Hearing would contravene authority in this Circuit which defines a "party in interest" broadly:

> Beyond this non-exhaustive list, the term "<u>party in interest</u>" is not further defined in the Bankruptcy Code. . . . "The general theory behind the section is that anyone holding a direct financial stake in the outcome of the case should have an opportunity . . . to participate in the adjudication of any issue that may ultimately shape the disposition of his or her interest." . . . The meaning of the term "must be determined on an 'ad hoc' basis," and the categories mentioned in Section 1109 are "not meant to exclude other types of <u>interested parties</u> from the purview of that section."

<u>Doral Ctr., Inc. v. Ionosphere Clubs, Inc. (In re Ionosphere Clubs, Inc.)</u>, 208 B.R. 812, 814-15 (S.D.N.Y. 1997) (internal citations omitted) (emphasis added); <u>see</u> <u>also</u> <u>Term Loan Holder Committee v. Ozer Group, LLC (In re the Caldor Corp.)</u>, 303 F.3d 161, 169 (2d. Cir. 2002) (citing to 11 U.S.C. § 1109(b), the Second Circuit concludes that a pecuniary interest in the debtor's cases supported an "unconditional right" to participation).

18. That the phrase is broadly construed in this Circuit is evident by the Honorable A.L. Gropper's recent rejection of the UAW's identical argument in the chapter 11 case of <u>In re Tower Automotive, Inc., et al.</u>, Case No. 05-10578 (ALG) (Bankr. S.D.N.Y.). Under circumstances identical to those of the instant case, the UAW sought to exclude the creditors' committee from participating in the debtor's motion under to sections 1113 and 1114 of the Bankruptcy Code to reject its collective bargaining agreements and modify retiree

benefits.  At an evidentiary hearing held to consider the debtor's motion on February 27, 2006, Judge Gropper stated that under the Caldor decision, the creditors' committee had the right to be heard, stating:

> THE COURT: All right. I think, under the Caldor case, the Creditors' Committee is certainly entitled to be heard. Whether and to what extent, obviously, remains to be seen, but I'm not going to exclude them . . .

In re Tower Automotive, Inc., et al., Case No. 05-10578 (ALG) (Bankr. S.D.N.Y. Feb. 27, 2006) Hr'g Tr. 1.19:12-23 (emphasis added) (Docket No. 1245) (relevant excerpts of the hearing transcript are annexed hereto as Exhibit "A").

19.    Indeed, as equity security holders, the Shareholders are an enumerated party under section 1109(b) of the Bankruptcy Code.  11 U.S.C. § 1109(b) (interested parties include, "the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee") (emphasis added).  An interpretation of section 1113 of the Bankruptcy Code that excludes expressly enumerated parties is clearly at odds with the broad interpretation given the term "parties in interest" in this Circuit.

20.    Clearly, with their substantial investment in the Debtors' equity, the Shareholders have a direct financial stake in the outcome of these Cases.  Indeed, in the 1113/1114 Motion, the Debtors have already telegraphed their view of distributions under a chapter 11 plan, with the Shareholders "likely [to] lose their entire investments."  1113/1114 Motion ¶ 51.  Accordingly, given the financial stakes involved, the Shareholders are undoubtedly interested parties who are entitled to participate in the 1113/1114 Hearing under the law of this

Circuit; any argument to the contrary is disingenuous and would result in serious injustice to the Shareholders.

21. Notwithstanding this binding authority, which is clearly contrary to the position adopted by UAW, the UAL Corp. decision simply does not support the sweeping proposition that a party in interest to a debtor's bankruptcy case is not a party in interest to that debtor's labor issues. In UAL Corp., the court simply held that an independent fiduciary ("IFS"), appointed to administer the debtor-airline's pension plan, was not an "interested party" entitled to participate in the debtor's rejection of its collective bargaining agreement pursuant to section 1113 of the Bankruptcy Code. 408 F.3d at 849. In so holding, the court in UAL Corp. specifically noted that, at the time of its retention, "IFS acknowledged that its capacity would be administrative only—to ensure collection of all sums due, and their correct distribution under the plans' terms, but not to take any position on whether those terms should be altered." Id. (emphasis added).

22. By contrast, the facts existing in the UAL Corp. case do not exist here. The Shareholders are not prohibited, contractually or otherwise, from participating in the rejection process as IFS was by agreement. In addition, the Shareholders' interests are not being protected by any law or any other party to the process, as was the situation in the UAL Corp. case.

23. Notably, the UAL Corp. decision fails to recognize that rejection of a collective bargaining agreement under section 1113(c) of the Bankruptcy Code requires that the debtor's proposal for rejection be fair and equitable to all affected parties, including creditors and shareholders. 11 U.S.C. § 1113(b)(1)(A); see In re Speco Corp., 195 B.R. 674, 679 (Bankr. S.D. Ohio 1996). In Speco, the court noted, in the context of a motion to modify retiree benefits

under section 1114 of the Bankruptcy Code, that a debtor does not meet the "fair and equitable" criteria without considering the effect the proposed modifications will have on all affected parties. Speco, 195 B.R. at 679. In that case, the court noted as follows:

> [I]t [is] impossible to gauge whether the debtor-in-possession's proposed modification 'assures that all creditors, the debtor and all of the affected parties are treated fairly and equitably.' The court . . . has been told little concerning what the debtor proposes to pay other creditors. Without knowing how other creditors . . . are to be treated by the debtor, the court simply cannot make a determination regarding fair and equitable treatment.

Id. (internal citation omitted).

24. In Speco, the court determined that, under section 1114 of the Bankruptcy Code (which applies an almost identical analysis as that under section 1113 of the Bankruptcy Code), the debtor was not entitled to terminate retiree benefits because, without knowing the debtor's future plans, it was impossible for the court to find that the proposed termination of benefits was either necessary or fair and equitable to all parties. Id. Stated differently, an interpretation of the term "interested parties" that prohibits representation of all affected parties, frustrates the goal of fair and equitable treatment embodied in section 1113(b) of the Bankruptcy Code.

25. Indeed, such narrow interpretation would render meaningless this Court's recognition of the importance that equity holders have a voice in the resolution of the Debtors' labor issues. See Transcript of hearing held March 22, 2006; Hr'g Tr. 28:12-20 ("[A]n equity committee needs to understand . . . the pressing issues of this case in respect to labor, pension, and other benefits and GM. It needs to be informed, it needs to give the debtors its views so that they can be taken into account as the debtor proceeds.") (relevant excerpts of the hearing transcript are annexed hereto as Exhibit "B").

26. As applied to these Cases, the Seventh Circuit's interpretation of "interested parties" in <u>UAL Corp.</u> would effectively silence parties who are substantially affected—including not only the Shareholders, but also the Creditors' Committee—and stop them from ensuring that the Debtors carry their burden of making proposals that treat all affected parties fairly and equitably. This is a blatant violation of due process. Given that General Motors Corporation, a party with a large economic stake in these Cases, is not being excluded from participation and may become entitled to assert billions of dollars in claims against the Debtors as a result of the proposed rejection and modification, the notion that the Shareholders are not "interested parties" under sections 1113(d)(1) and 1114(k)(1) of the Bankruptcy Code is absurd.

**[remainder of page intentionally left blank]**

**CONCLUSION**

For the reasons set forth herein, the Shareholders respectfully request that the Motion be denied.

Dated:   May 5, 2006
         Miami, Florida

>WHITE & CASE LLP
>Glenn M. Kurtz (GK-6272)
>Gerard Uzzi (GU-2297)
>Douglas P. Baumstein (DB-1948)
>1155 Avenue of the Americas
>New York, New York 10036-2787
>(212) 819-8200
>
>Thomas E Lauria (Admitted *Pro Hac Vice*)
>Frank L. Eaton (FE-1522)
>Ileana A. Cruz
>Wachovia Financial Center
>200 South Biscayne Boulevard
>Miami, Florida 33131
>(305) 371-2700
>
>By:   /s/ Frank L. Eaton
>         Frank L. Eaton
>
>COUNSEL TO APPALOOSA MANAGEMENT
>L.P., WEXFORD CAPITAL LLC, PARDUS
>CAPITAL MANAGEMENT L.P., AND
>LAMPE CONWAY & CO., LLC