KIRKPATRICK & LOCKHART
NICHOLSON GRAHAM LLP
Edward M. Fox, Esq. (EF1619)
599 Lexington Avenue
New York, NY 10022
(212) 536-3900

Attorneys for Wilmington Trust Company,
as Indenture Trustee

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------x
In re:                                                    :        Chapter 11
                                                          :
DELPHI CORPORATION, et al.,                               :        Case No. 05-44481 (RDD)
                                                          :
                          Debtors.                        :        (Jointly Administered)
                                                          :
----------------------------------------------------------x


**OBJECTION OF WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE, TO MOTION OF UAW TO LIMIT PARTICIPATION IN THE HEARING ON DEBTORS' SECTION 1113/1114 MOTION AND SUR REPLY TO DEBTORS' OMNIBUS REPLY MEMORANDUM IN SUPPORT OF 1113/1114 MOTION**

Wilmington Trust Company ("WTC"), as indenture trustee for the $2 billion of senior notes and debentures issued by Delphi Corporation ("Delphi"), objects to the Motion of International Union, United Automobile, Aerospace and Implement Workers of America (UAW) to Limit Participation in the Hearing on Delphi's Section 1113 and Section 1114 Motion (the "UAW Motion") and responds to the Omnibus Reply Memorandum of Debtors in Support of Motion for Order Under 11 U.S.C. § 1113(c) Authorizing Rejection of Collective Bargaining Agreements and Under 11 U.S.C. § 1114(g) Authorizing Modification of Retiree Welfare Benefits (the "Reply") insofar as the Reply seeks to deny WTC standing to object to the Motion for Order Under 11 U.S.C. § 1113(c) Authorizing Rejection of Collective Bargaining Agreements and Under 11 U.S.C. § 1114(g) Authorizing Modification of Retiree Welfare

NY-438100 v1

Benefits (the "1113/1114 Motion") filed by Delphi and its affiliated debtors (collectively, the "Debtors") in these administratively consolidated chapter 11 cases, and in support thereof states as follows:

## INTRODUCTION

1. There is no small irony in the fact that the UAW, which objects to the 1113/1114 Motion filed by the Debtors, seeks to prevent WTC, which also objects to the 1113/1114 Motion, from participating in the hearing on the 1113/1114 Motion.

2. Although the UAW purports to bring its UAW Motion pursuant to 11 U.S.C. § 1113(d)(1), there is nothing in this provision to suggest that one objector to the 1113/1114 Motion may use this provision as a basis to deny another objector to the same 1113/1114 Motion from being heard with respect thereto. Nor does the UAW allege any harm that would result to it if WTC is heard on the 1113/1114 Motion. Indeed, WTC's participation could actually help the UAW achieve its stated goal of defeating the 1113/1114 Motion.

3. Even if 11 U.S.C. § 1113(d)(1) does permit the UAW to object to WTC's participation in the hearing on the 1113/114 Motion, the use of the phrase "interested parties" in Section 1113(d)(1) does not prohibit WTC's participation in the hearing on the 1113/1114 Motion.

4. Although the Debtors also assert in their Reply that WTC lacks standing to object to the 1113/1114 Motion, the Debtors apparently only take this position with respect to parties in interest who object to their 1113/1114 Motion. Moreover, the Debtors should be estopped from asserting a standing objection against WTC by virtue of their actions in serving the 1113/1114 Motion on WTC and otherwise inviting its participation.

**BACKGROUND**

5. On or about March 31, 2006, the Debtor served the 1113/1114 Motion by e-mail on WTC and all parties on the Master Service List. A copy of the e-mail service is annexed hereto as Exhibit A.

6. The Declaration of Kevin M. Butler in Support of Delphi's Motion for Authority to Reject Collective Bargaining Agreements Under 11 U.S.C. § 1113(c) and Modify Retiree Welfare Benefits Under 11 U.S.C. § 1114(g) (the "Butler Dec'l") states in paragraph 7 that "copies of the collective bargaining agreements will be made available to <u>parties</u>-<u>in</u>-<u>interest</u> upon request." Butler Dec'l ¶ 7, p. 4 (emphasis added).

7. The Declaration of Bernard J. Quick in Support of Delphi's Motion for Authority to Reject Collective Bargaining Agreement Under 11 U.S.C. § 1113(c) and Modify Retiree Welfare Benefits Under 11 U.S.C. § 1114(g) (the "Quick Dec'l") states in paragraph 5 that "Due to their volume, Delphi is not filing the Local Agreements with this Motion but will provide copies of the documents to <u>parties in interest</u> upon requests." Quick Dec'l ¶ 5, p. 3 (emphasis added).

8. On April 21, 2006, WTC served on the Debtors and other parties to the contested matter, and filed with the Court, its Limited Objection of Wilmington Trust Company, as Indenture Trustee, to Motion for Order Under 11 U.S.C. § 1113(c) Authorizing Rejection of Collective Bargaining Agreements and Under 11 U.S.C. §1114(g) Authorizing Modification of Retiree Welfare Benefits (the "Limited Objection").

9. On April 25, 2006, WTC served its First Request of Wilmington Trust Company, as Indenture Trustee, for Production of Documents Directed to Delphi Corporation and its Debtor Subsidiaries and Affiliates.

10. At 10:15 a.m. on April 26, 2006, Rachel Janger, Esq. of O'Melveny & Meyers, labor counsel to the Debtors, served WTC by e-mail on behalf of the Debtors with a schedule of the depositions noticed in connection with the 1113/1114 Motion. A true and correct copy of the Janger e-mail is annexed hereto as Exhibit B.

11. At 12:35 p.m. on April 26, 2006, counsel to WTC received a letter from David Springer of Skadden Arps Slate Meagher & Flom LLP, a true and correct copy of which is annexed hereto as Exhibit C, stating for the first time the Debtor's view that WTC does not have standing to object to the 1113/1114 Motion or to take discovery in connection therewith.

12. On April 27, 2006, the UAW filed the UAW Motion, essentially making the same arguments as the Debtors in Mr. Springer's letter of April 26, 2006.

**ARGUMENT**

**A. WTC Is A Party In Interest And Must Be Allowed To Participate In The Hearing On The 1113/1114 Motion**

13. 11 U.S.C. § 1109(b) provides:

> (b) A party in interest, including the debtor, the trustee, a creditors' committee, an equity security holders' committee, a creditor, an equity security holder, or any indenture trustee, may raise and may appear and be heard on any issue in a case under this chapter.

11 U.S.C. § 1109(b)

14. The Second Circuit has interpreted the plain language of Section 1109(b) broadly to mean

> that the phrase "any issue in a case" plainly grants a right to raise, appear and be heard on *any issue* regardless whether it arises in a contested matter or an adversary proceeding.

- 4 -

Term Loan Holder Committee v. Ozer Group, L.L.C. (In re Caldor Corp.), 303 F.3d 161, 169 (2d Cir. 2002).

       15.       Despite the plain language of 11 U.S.C. § 1109(b) and the Second Circuit's decision implementing it, UAW and the Debtor (with respect to WTC, but apparently not with respect to the Creditors' Committee) argue, based on the Seventh Circuit's decision in In re UAL Corp., 408 F.3d 847, 850 (7th Cir. 2005), the sentence in 11 U.S.C. § 1113(d)(1) and in 11 U.S.C. § 1114(k)(1) stating that "All interested parties may appear and be heard at such hearing," should be read to exclude any party other than the Debtors, the unions and General Motors Corporation("GM") from participating in the hearing on the 1113/1114 Motion.

       16.       Without any analysis of the legislative history of Sections 1113 or 1114, the text and structure of the Bankruptcy Code and Bankruptcy Rules, or even a discussion of applicable rules of statutory construction, the Seventh Circuit concluded in In re UAL Corp. that the term "interested party" "is most naturally read to mean 'party to the collective bargaining agreement' or a guarantor of that contract." In re UAL Corporation, 408 F.3d 847, 851 (7th Cir. 2005). The Seventh Circuit also concluded that including at the hearing any person with a financial stake in the employer's performance of the collective bargaining agreement "would make § 1113 proceedings unmanageable." Id. The Seventh Circuit also found that because "Section 1109(b) defines who is a party to the bankruptcy; the set of 'interested parties' for particular purposes such as § 1113 must be its subset." Id. Otherwise, the Seventh Circuit concluded, "every employee *individually* would have to be notified and allowed to participate . . . though for every other purpose the union acts as the employees' representative." Id. Finally, the Seventh Circuit concluded that

> "what labor and management may do voluntarily, the Court may accomplish in a § 1113 proceeding. There is no reason to include in the § 1113 proceeding any person or entity whose consent

- 5 -

>would be unnecessary to a voluntary change in the agreement. All of the legally protected interests are represented by labor, management, and the Pension Benefit Guaranty Corporation."

Id.

### B. As A Matter Of Statutory Construction, Sections 1113 and 1114 Cannot Be Read To Repeal Section 1109(b)

17.     As a matter of statutory construction, the clear intent of Congress in 11 U.S.C. § 1109(b) to grant WTC and all other parties in interest the right to "appear and be heard on any issue in a case under this chapter" should not be cast aside based on ambiguous language in Sections 1113 and 1114 which permits "interested parties" to appear and be heard but certainly contains no language excluding other parties in interest from being heard as permitted by Section 1109(b). In effect, however, the Seventh Circuit's holding in In re UAL Corp., repeals 11 U.S.C. § 1109(b) as it would otherwise apply to the 1113/1114 Motion. Such a repeal by implication, however, is not appropriate here.

18.     The Supreme Court has held that:

>In the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statues are irreconcilable.

Morton v. Mancari, 417 U.S. 535, 550 (1974).

>In order for one federal statute to preempt or implicitly repeal another, there must be "express manifestations of a preemptive intent." . . . "The courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective."

United States v. City of New York, 359 F.3d 83, 97 (2d Cir. 2004) (citation omitted).

19. The Supreme Court's decision in <u>Connecticut National Bank v. Germain</u>, 503 U.S. 249 (1992) is perhaps most instructive in this matter. There, the Court considered the interplay of 28 U.S.C. §§ 1291 and 1292 and 28 U.S.C. § 158(d). 28 U.S.C. § 1291 provides for appeals from final orders of the district courts and 28 U.S.C. § 1292 provides for appeals of interlocutory orders of the district courts in certain circumstances. Congress then enacted 28 U.S.C. § 158(d), which gave the courts of appeals jurisdiction over final orders of district courts sitting as appellate courts in bankruptcy, but was silent as to review of interlocutory orders. Germain argued that the enactment of 28 U.S.C. § 158(d), by implication, repealed the authority of the circuit courts from hearing interlocutory appeals of bankruptcy matters despite the existence of 28 U.S.C. § 1292 granting the circuit courts authority to hear interlocutory appeals. Although the Second Circuit agreed with Germaine, the Supreme Court reversed stating:

> Redundancies across statutes are not unusual events in drafting, and so long as there is no "positive repugnancy" between two laws, a court must give effect to both. Because giving effect to both § 1291 and 158(d) would not render one or the other wholly superfluous, we do not have to read § 158(d) as precluding courts of appeals, by negative implication, from exercising jurisdiction under § 1291 over district courts sitting in bankruptcy. We similarly do not have to read § 158(d) as precluding jurisdiction under § 1291. While courts should disfavor interpretations of statutes that render language superfluous, in this case that canon does not apply.

<u>Connecticut National Bank v. Germain</u>, 503 U.S. at 253 (citations omitted).

20. Here, there is no express manifestation in the phrase "interested parties" of an intent by Congress in enacting Sections 1113 and 1114 to preempt or repeal 11 U.S.C. § 1109(b) as it would otherwise apply to the 1113/1114 Motion. Rather, the Court should either view the term "interested parties" in Sections 1113 and 1114 as coextensive with the term "parties-in-interest" in Section 11109(b), or as more expansive than the term party-in-interest.

### C. The Term Interested Parties Is At Least Co-Extensive With The Term Party In Interest

21. Although the Seventh Circuit held that the term "interested party" is most naturally read to mean 'party to the collective bargaining agreement' or a guarantor of that contract," In re UAL Corp., 408 F.3d at 852, what is natural appears, here, to have been in the eye of the beholder.

22. In In re Sandhurst Securities, Inc., 96 B.R. 451 (Bankr. S.D.N.Y. 1989), a candidate for election as a chapter 7 trustee argued that an Advisory Committee note to Fed. R. Bankr. P. 2003 using the phrase "interested party" gave him standing to challenge an election for trustee. Judge Buschman, however, found that the phrase could not be so construed, holding:

> Instead, it appears that the phrase "interested parties" refers to parties to the bankruptcy proceeding and is a shorthand reference to entities bearing characteristics similar to "parties in interest" as that phrase is employed in § 1109(b) of the Bankruptcy Code. Admittedly, that section does not apply to Chapter 7 cases. But, the familiar canon of construction that Congress is presumed to intend the same meaning to similar words or phrases in integrated legislation indicates that only a debtor, creditor, equity security holder or other party, like an indenture trustee, representing entities having an economic interest at stake in the bankruptcy case, are within its ken.

In re Sandhurst Securities, Inc., 96 B.R. 451, 455 (Bankr. S.D.N.Y. 1989) (citations omitted).

23. Consequently, use of the phrase "interested parties" in Sections 1113 and 1114 may simply have been legislative shorthand for the phrase parties-in-interest. Such an interpretation of Section 1113 makes sense in light of the "unbankruptcy like" draftsmanship of Section 1113(b)(1) which provides that

> the debtor in possession or trustee (hereinafter in this section "trustee" shall include a debtor in possession) . . . .

- 8 -

even though such a provision is unnecessary in light of 11 U.S.C. § 1101(1), which defines

"debtor in possession" to mean "debtor except when a person that has qualified under Section

322 of the title is serving as trustee in the case . . . ."

24. Moreover, in a bankruptcy case, the natural reading of statutes involving standing issues is to be inclusive, not exclusive, because any proceeding may effect a stakeholder's interests. As Collier explains:

> Given the economic realities of most chapter 11 debtors, virtually every proceeding in a case will have the effect of channeling the estate's limited resources in one direction or another. It follows that, unless the debtor is solvent or the particular stakeholder is otherwise guaranteed full performance or payment, or unless it is absolutely clear that the debtor is in such bad shape that the particular stakeholder has no real prospect of any recovery whatsoever, the outcome of virtually any proceeding will often affect the disposition of the interests of stakeholders *inter se* to the extent that it is often impossible to conclude on a categorical basis that any one stakeholder is not a "real party in interest" with respect to any particular matter. Coupled with the fact that ownership interests in the chapter 11 context are inherently diffuse to begin with, the assignment of responsibility for the handling of certain proceedings to one party or another is, to a certain degree, artificial and hardly supplants any legitimate level of interest of stakeholders generally.
>
> In addition, given the diversity of interests that are implicated in the typical charter 11 case, conflicts of interest invariably arise as parties pursue their own self interests. Recognizing this, the option of any party in interest to participate with respect to any discrete matter may be necessary not only as a reflection of the significance of the matter to that particular party, but also to police any conflict that might serve to color the course of the proceedings.

7 L. King, Collier on Bankruptcy, ¶ 1109.04[2][b][i] (15th ed. Revised 2006). See Official

Unsecured Creditors Committee v. Michaels (In re Marin Motor Oil, Inc.) 689 F.2d 445, 457

(3rd Cir. 1982) ("the broad and absolute construction of section 1109(b) comports with the usual

- 9 -

expectations of parties in interest that they will have a right to be heard, as parties in interest, by the tribunal adjudicating their interests.")

    **D.**    **The Term "Interested Parties" Should Be Construed More Broadly Than The Term Parties-In-Interest**

    25.    Moreover, the natural reading of the phrase "interested parties," when read in conjunction not only with the Bankruptcy Code but also the Rules of Bankruptcy Procedure, expands the universe of participants in a Section 1113 or Section 1114 hearing beyond that encompassed by the term parties in interest.

    26.    Fed. R. Bankr. P. 2018(a) provides that:

> In a case under the Code, after hearing on such notice as the court directs and for cause shown, the court may permit any <u>interested entity</u> to intervene generally or with respect to any specified matter.

(Emphasis added). Although the rule uses the term "interested entity" rather than "interested party" because "entity" is a defined term in the Bankruptcy Code and "party" is not, it makes clear that "interested parties" are not a subset of "parties-in-interest." Rather, the term "interested parties" includes a population beyond the scope of "parties in interest." Therefore, absent a special grant of standing such as Section 1113 or Section 1114, interested parties who are not parties-in-interest would not be permitted to be heard on such a motion without leave of court. As <u>Collier</u> explains:

> Rule 2018(a) provides for intervention by entities not otherwise having a right to participate in the bankruptcy case. Thus, the rule provides for participation by entities not granted the right to appear and be heard under section 1109 or another section of the Code that grants standing. An entity given the right to be heard under section 1109 need not seek leave under Rule 2018(a) to intervene in a case. A party granted the right to participate in a bankruptcy case by section 1109 or section 1164 of the Code is automatically a party in interest in that case.

- 10 -

9 L. King, Collier on Bankruptcy, ¶ 2018.02 (15th ed. Revised 2006).

### E. The Legislative History Of Section 1113 And 1114 Supports A Broad Reading Of The Term "Interested Parties"

27. There is little legislative history to Sections 1113 and 1114 other than floor statements because these provisions were added to the Bankruptcy Amendments and Federal Judgeship Act of 1984 after the Supreme Court's decision in NLRB v. Bildisco & Bildisco, 465 U.S. 513 (1984). The floor statements support the notion that the term "interested party" was to be at least co-extensive with, if not broader than, the term party in interest. Senator Hatch, for instance, stated:

> Moreover the term "affected parties"[1] is meant to include those parties with a contractual, legal, or financial tie to the debtor that would make it one of the logical parties to the equities balancing that must proceed as the court administers a reorganization. This and all other provisions in this labor part of the bill must be read in the context of the needs of the reorganization process. This provision is intended merely to require some reasonable consideration of various interests that should be considered in reorganizing.

Remarks of Senator Hatch, 130 Cong. Rec. S. 8887, 8892 (June 29, 1984) reprinted in E-1 Appendix Parts 5-9 L. King, Collier on Bankruptcy, App. Pt. 6(c) (15th ed. Revised 2006).

### F. The Court Is Capable Of Managing The 1113/1114 Hearing Without Artificially Limiting The Participants

28. Although the Seventh Circuit in In re UAL Corp. felt that allowing all parties in interest to participate in Section 1113 proceedings would make them unmanageable, experience in the Southern District of New York in extraordinarily large, complex cases with hundreds of thousands of parties in interest, such as Enron, Worldcom and, indeed, Delphi, make

---

[1] The term "affected parties" in the Packwood Amendment passed by the Senate was apparently changed to "interested parties" in conference committee.

- 11 -

clear that this concern is a red herring and cannot be used as an excuse to prohibit participation by parties in interest with significant stakes in the outcome of these cases. As Collier explains:

> The truth is that the efficiency fears of the courts are more imaginary than real in this context. Moreover, complex litigation involving multiple parties is not new to the federal courts. To address the needs of the process, the bankruptcy courts have ample powers to control and streamline multiparty litigation short of categorical exclusions.

7 L. King, Collier on Bankruptcy, ¶ 1109.04[3][b], (15th ed., Revised 2006).

29. Finally, the Seventh Circuit stated that because labor and management are free to change their agreements without regard to the view of workers, pensioners or pension fiduciaries, there is no reason to include these entities in the 1113 process. In bankruptcy, however, the Debtors are not necessarily free to assume or reject their collective bargaining agreements without first obtaining court approval and the Seventh Circuit assumes its conclusion concerning the meaning of the term "interested parties" in order to find otherwise. See In re The Leslie Fay Companies, Inc., 168 B.R. 294, 303 (Bankr. S.D.N.Y. 1994).

### G.     The Debtor Should Be Estopped From Objecting To WTC's Participation

30. Although the Debtor also complains that WTC lacks standing to be heard in connection with the 1113/1114 Motion, the Debtor should be estopped from asserting this argument because they invited WTC's participation. This is not a situation where WTC has shown up uninvited and attempted to intervene in a proceeding. Rather, the Debtors served the 1113/1114 Motion on WTC, offered in the Butler Declaration and the Quick Declaration to make available to "parties in interest" copies of the collective bargaining agreements and Local Agreements which are the object of the 1113/1114 Motion and delivered to WTC a schedule of the depositions scheduled in connection with the 1113/1114 Motion. Only after the Debtors took

these steps to invite and facilitate WTC's participation in the hearing on the 1113/1114 Motion did the Debtors then advise WTC of their view that it was not an "interested party" and therefore would not be permitted to participate in the discovery process. In view of the Debtors' actions, however, they cannot now be heard to complain that WTC, which asserts the largest liquidated claim in these cases, may not participate in the hearing on the 1113/1114 Motion.

H.    **WTC Should Be Permitted To Intervene If It Is Not An Interested Party**

31.    In the event the Court should determine that WTC is not an interested party and, therefore, does not have a right to be heard in connection with the 1113/1114 Motion, WTC respectfully requests, pursuant to Fed. R. Bankr. P. 2018(a), that it nevertheless be allowed to intervene and be heard in connection with the 1113/1114 Motion.

32.    Unlike the officers, directors and counsel for the Debtors, who must concern themselves with the interests of forty-three separate debtor entities, and the Official Committee of Unsecured Creditors, which serves as the creditors committee for the creditors of all forty-three debtors, WTC acts as indenture trustee for the Senior Notes and Debentures issued by Delphi Corporation. Therefore, WTC is uniquely situated to appear and be heard with respect to the interests of Delphi Corporation and its creditors.

33.    As the evidence at the hearing on the 1113/1114 Motion will establish, Delphi Corporation, though perhaps nominally a party to the collective bargaining agreement, is not the employer of any member of the unionized workforce. Rather, the entire unionized workforce is retained by, or provides services to, Delphi Automative Systems LLC or other debtor subsidiaries in the United States. Accordingly, all of the benefits of rejection of the collective bargaining agreements as proposed by the Debtors will flow to the U.S. debtor subsidiaries and their creditors. Because creditors of the subsidiaries will not be paid in full, according to Debtors' chief restructuring officer, John Sheehan, Delphi Corporation's equity

interest in its debtor subsidiaries will be wiped out as part of the reorganization and any increase in the value of the U.S. subsidiaries as a result of changes to the collective bargaining agreements will not benefit Delphi Corporation.

34. Nevertheless, the Debtors, in their proposals to the unions as detailed in the 1113/1114 Motion, have continued the pattern begun with the Attrition Program to saddle Delphi Corporation and its creditors with the costs of the labor transformation even though Delphi Corporation is not the recipient of the benefits of this effort.

35. Accordingly, WTC must be permitted to be heard with respect to these issues as there is no other entity which can or will be heard in connection with the 1113/1114 Motion solely with respect to the interests of Delphi Corporation.

WHEREFORE Wilmington Trust Company, as indenture trustee, respectfully requests that the UAW Motion be denied or, if such motion is not denied, that, pursuant to Fed. R. Bankr. P. 2018(a), Wilmington Trust Company, as indenture trustee, be granted standing to appear and participate in the hearing on the 1113/1114 Motion.

Dated: New York, New York
May 5, 2006

                               KIRKPATRICK & LOCKHART
                               NICHOLSON GRAHAM LLP

                               By:*/s/ Edward M. Fox*_____
                                  Edward M. Fox (EF1619)
                                  A Member of the Firm
                               Attorneys for Wilmington Trust Company,
                               as indenture trustee
                               599 Lexington Avenue
                               New York, New York 10022
                               (212) 536-3900