TOGUT, SEGAL & SEGAL LLP
Conflicts Counsel for Delphi Corporation, et al.,
Debtors and Debtors in Possession
One Penn Plaza, Suite 3335
New York, New York  10119
Telephone:  (212) 594-5000
Facsimile:  (212) 967-4258
Albert Togut (AT-9759)
Neil Berger (NB-3599)
Sean P. McGrath (SM-4676)
Christopher D. Lagow (CL-3457)

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:   (248) 813-2689

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
In re:                                                         :
                                                               :   Chapter 11
DELPHI CORPORATION et al.,                                     :   Case No. 05-44481 (RDD)
                                                               :   (Jointly Administered)
                                      Debtors.                 :
---------------------------------------------------------------x

**MOTION FOR AN ORDER AUTHORIZING
THE EXAMINATION OF, AND DIRECTING, BARCLAYS
BANK PLC, TO PRODUCE DOCUMENTS PURSUANT TO
<u>RULE 2004 OF THE FEDERAL RULES OF BANKRUPTCY PROCEDURE</u>**

TO THE HONORABLE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

    Delphi Corporation ("Delphi"), and the other Debtors and Debtors in Possession in the above-captioned cases (together the "Debtors"), by their conflicts counsel, Togut, Segal & Segal LLP, as and for their motion (the "Motion") for an Order pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), respectfully show this Honorable Court that:

## INTRODUCTION

1. Barclays Bank PLC ("Barclays") has agreed in writing that it owes a matured and liquidated debt of not less than $9,049,399.41 to Delphi pursuant to a swap Master Agreement (defined below), but it has refused to pay such amount to Delphi.

2. In doing so, Barclays has asserted a right of setoff on account of speculative and unliquidated claims that Barclays, or one of its affiliates, believes that it may have against the Debtors in connection with the participation by Barclays Capital Inc., a separate entity, in the pre-petition issuance of certain Delphi debt instruments. To date, however, Barclays has failed to articulate any justifiable basis or authority for such alleged setoff right.

3. Delphi seeks entry of the prefixed Order pursuant to Bankruptcy Rule 2004 (i) authorizing the examination of Barclays pertaining to Barclays' assertion of a right of setoff regarding its payment obligations to Delphi pursuant to the Master Agreement; and (ii) directing Barclays' production of any and all documents in its possession or control pertaining to such assertion, all as more particularly described in the Schedule annexed hereto as Exhibit "1" (collectively, the "Documents"). Entry of such an Order is intended to assist the Delphi in its continuing efforts to recover its liquidated and matured claim against Barclays.

## BACKGROUND

**The Chapter 11 Cases**

2. On October 8, 2005 (the "Initial Filing Date"), Delphi and certain of its subsidiaries (the "Initial Filers") each filed voluntary petitions in this Court for reorganization relief under Chapter 11 of the Bankruptcy Code. On October 14, 2005, three additional U.S. subsidiaries of Delphi (together with the Initial Filers, the

"Debtors") filed voluntary petitions in this Court for reorganization relief under Chapter 11 of the Bankruptcy Code.

3. The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered Orders directing the joint administration of the Debtors' chapter 11 cases (Docket Nos. 28 and 404).

4. On October 17, 2005, the United States trustee for the Southern District of New York appointed an official committee of unsecured creditors in these cases, which is represented by Latham & Watkins.

5. Pursuant to an Amended Notice dated May 11, 2006, the United States trustee for the Southern District of New York appointed a committee of equity security holders.

6. No trustee or examiner has been appointed.

**Barclays' Alleged Setoff Claim**

7. Prior to the Initial Filing Date, Delphi and one of its affiliates, Delphi Automotive Systems Risk Management Corporation ("Delphi Risk Management"), entered into separate master swap agreements with Barclays: one agreement dated November 23, 2001 (the "Master Agreement", a copy of which is annexed hereto as Exhibit "2"), and one dated December 6, 2001 (the "December Agreement").

8. On October 10, 2005, Barclays sent a Notice of Early Termination to Delphi Risk Management to terminate the December Agreement. Barclays has paid Delphi Risk Management $1,999,658.00 on account of the early termination of the December Agreement. That payment obligation is no longer in dispute and it is not part of the controversy that is addressed by this Application.

3

9. Barclays also sent Delphi a Notice of Termination of the Master Agreement on October 10, 2005, which constituted an early termination thereof. A copy of the Notice of Termination is annexed hereto as Exhibit "3".

10. Section 6 of the Master Agreement requires the payment of a termination payment upon the early termination of the Master Agreement. However, Barclays has refused to tender the termination payment that is due and matured pursuant to the Master Agreement.

11. On October 26, 2005, Barclays sent Delphi a Statement of Payment on Early Termination in connection with the Master Agreement. Therein, Barclays represented and agreed that it owed Delphi a liquidated sum of $10,178,261.40 as the termination payment provided for by the Master Agreement. Thereafter, on November 14, 2005, Barclays sent Delphi an Amended Statement of Payment on Early Termination, revising the amount that it owed Delphi to $9,044,399.41 (the "Termination Payment") on account of the early termination of the Master Agreement[1]. A copy of Barclay's November 14, 2005 Amended Statement is annexed hereto as Exhibit "4".

12. In response to Delphi's demand for delivery of the Termination Payment, on February 13, 2006, Barclays advised Delphi that it had elected to withhold payment of the Termination Payment to protect its "set-off rights against any indemnification payments owed by Delphi Corporation…" A copy of the February 13 Letter is annexed hereto as Exhibit "5".

13. According to Barclays, its indemnification rights arise from potential liability in connection with the involvement of Barclays Capital Inc., an entity

---

[1] Delphi reserves the right to contest the amount of the Termination Payment and to seek any other amounts that are due and owing.

4

that is not a party to the Master Agreement, in the pre-petition issuance of certain Delphi bonds. *Id.* Barclays Capital Inc., an apparent affiliate of Barclays, has been named as a defendant in a class action filed in the Southern District of New York, styled *In re Delphi Corp. Securities Litigation, 1:05-cv-2637* (the "Litigation").[2] However, Delphi is not aware of any claims having been asserted in the Litigation against Barclays Bank PLC – the counterparty to the Master Agreement. Moreover, the issuance of those debt instruments was and is wholly unrelated to the Master Agreement and the parties' rights and obligations thereunder.

14. Consequently, there is no apparent factual or legal justification or requisite mutuality for the right of setoff that has been asserted by Barclays pertaining to the Termination Payment. Moreover, Barclays may not rely upon speculative, contingent and unliquidated liability damages in the Litigation as a basis for an assertion of a setoff claim against its obligation to make the liquidated and matured Termination Payment to Delphi. *See Public Service Co. v. New Hampshire Electric Coop. (In re Public Service Co.)*, 884 F.2d 11, 16 (1st Cir.1989)(Potential future liability is not a proper basis to setoff current obligation).

15. The Documents, including those related to Barclays' corporate structure and potential liability in the Litigation, will enable Delphi to assess the validity of any setoff claim that is being asserted by Barclays.

---

[2] On February 6, 2006, the Litigation was consolidated with several other actions pending against Delphi and related entities and all of them were transferred to the United States District Court for the Eastern District of Michigan.

**RELIEF REQUESTED**

16. Delphi requests entry of the prefixed Order directing Barclays to turn over all of the Documents that are in its possession, custody or control and to appear for examination under oath pursuant to Rule 2004 of the Bankruptcy Rules.

17. Bankruptcy Rule 2004(a) expressly authorizes this Court to order an examination of an entity upon request of a party-in-interest. The scope of such examination is intended to be broad and, among other things, cover property of a debtor, along with any matter which may effect the administration of a debtor's estate. See Fed.R.Bankr.Pro. 2004(b).

18. Bankruptcy Rule 2004 examinations are appropriate for revealing the nature and extent of the bankruptcy estate and for "discovering assets, examining transactions, and determining whether wrongdoing has occurred." In re Enron Corp., 281 B.R. 836, 840 (Bankr. S.D.N.Y. 2002) (citations omitted). In this regard, Courts have recognized that Rule 2004 examinations are broad and unfettered and may be in the nature of "fishing expeditions." Id.

19. Here, an examination pursuant to Bankruptcy Rule 2004 is appropriate because it is clear that the Documents will enable Delphi to (i) better understand and analyze Barclays' alleged setoff claim; and (ii) evaluate whether the cost and expense of litigation to compel payment of the Termination Payment is appropriate. Consequently, the production of the Documents by Barclays and/or the examination of Barclays is necessary to facilitate the Debtors' ability to administer these estates. In re Drexel Burnham Lambert Group, Inc., 123 B.R. 702, 708 (Bankr. S.D.N.Y. 1991) (the object of the examination of witnesses under Rule 2004 is to show the condition of the estate and to enable the Court to discover its extent and whereabouts,

6

and to come into possession of it); In re Sun Med. Mgmt., Inc., 104 B.R. 522, 524 (Bankr. M.D. Ga 1989) (Bankruptcy Rule 2004 examinations are permitted to discover assets).

20. Moreover, Bankruptcy Rule 2004(c) provides that the attendance of a witness for examination and the production of documents may be compelled by subpoena. Delphi requests that it be authorized to issue and serve such subpoena(s) as may be necessary to compel compliance with any Order granting this Application.

21. The only basis for an objection to a Rule 2004 examination by the affected party may be a claim of abuse or harassment, or that the matters that are the subject of the examination are unrelated to the affairs of the Debtor. See In re Mittco, Inc., 44 B.R. 35, 36 (Bankr. E.D. Wisc. 1984); In re Johns-Manville Corp., 42 B.R. 362, 364 (S.D.N.Y. 1984). Such an objection is not appropriate in this case. It is clear that the requested Documents are limited to those that will assist Delphi in the identification and recovery of property of its estate, and the Documents have not yet been supplied by Barclays to justify its failure to deliver the Termination Payment to Delphi.

22. Based upon the foregoing, the Rule 2004 examination sought by Delphi is reasonable and appropriate.

23. It is requested that Barclays be directed to turn over all of the Documents to Delphi within ten (10) business days after service of a copy of the prefixed Order, once signed, upon Barclays, by Federal Express overnight carrier, with service to occur not later than two (2) business days after the date of the entry of the Order. The Debtors request that such service be deemed good and sufficient notice thereof.

24. Delphi further requests that Barclays be directed to appear for oral examination under oath at the offices of Togut, Segal & Segal LLP, One Penn Plaza, New York, New York 10119, on such date(s) and time(s) as may be designated by

7

Delphi in writing not less than ten days prior to such examination to respond to questions, if any, by Delphi concerning the Documents.

25. Bankruptcy Rule 2004(c) provides that the attendance of a witness for examination and the production of documents may be compelled by a subpoena. Delphi requests that he be authorized to enforce the provisions of the prefixed Order, once signed, by the issuance and service of a subpoena(s), if necessary.

### WAIVER OF REQUIREMENT FOR SEPARATE MEMORANDUM

26. The legal authorities upon which the relief requested herein are set forth above. Consequently, Delphi respectfully requests that the Court waive the requirement for the filing of a separate memorandum of law in support hereof.

27. No prior application for the relief requested herein has been made by Delphi to this or any other Court.

**WHEREFORE**, Delphi requests the entry of the prefixed Order, and for such other and further relief as is just and proper.

DATED: New York, New York
May 19, 2006

        TOGUT, SEGAL & SEGAL LLP
        Conflicts Counsel for
        Delphi Corporation, et al.
        Debtors and Debtors-in-Possession
        By:

        /s/Neil Berger
        ALBERT TOGUT (AT-9759)
        NEIL BERGER (NB-3599)
        Members of the Firm
        One Penn Plaza - Suite 3335
        New York, New York 10119
        (212) 594-5000