Marianne Goldstein Robbins
Previant, Goldberg, Uelmen,
 Gratz, Miller, & Brueggeman, s.c.
1555 N. RiverCenter Drive - Suite 202
Milwaukee, WI 53212
Telephone:    (414)   271-4500
Facsimile:     (414)   271-6308

Attorneys for IBEW Local 663 and
IAMAW District 10

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re: | |
| | Chapter 11 |
| **DELPHI CORPORATION, et al.,** | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

**SUPPLEMENTAL DECLARATION OF RANDAL L. MIDDLETON**

I, RANDAL A. MIDDLETON, declare:

1.      I submit this Supplemental Declaration in support of IBEW Local 663 and IAMAW District 10's Objection to Debtor's Motion to Reject Collective Bargaining Agreements and to Modify Retiree Benefits. I have personal knowledge of the facts set forth in this Declaration, if called as a witness could and would competently testify to all the facts stated herein.

2.      In addition to the request for information I sent to Kevin Butler dated October 31, 2005, Dan Riley, Chairman of the IBEW E&C Bargaining unit, sent a request for information to Rob Gerling dated October 26, 2005, which has been marked as Exhibit 140. Also, counsel for the

international union, Lawrence Cohen, sent a letter to a letter to Tom Lena of Delphi, which is marked as Exhibit 139, dated October 28, 2005.

3. A month after my information request dated October 31, 2005 to Ken Butler dated October 31, 2005, I received two emails from Charles McWee dated November 28, 2005, Exhibits 141 and 142.

4. I have read the declaration of Rob Gerling. Mr. Gerling states that in November 2005, he spoke with members of the IBEW and IAM. He does not identify the date or the persons to whom he spoke. Although I am the chief spokesperson for IBEW Local 663, Mr. Gerling never informed me that he spoke with IBEW members other than myself in November of 2005. Manager of Labor Relations, Timothy Wilmitis, of Delphi in Milwaukee, Wisconsin, told me he was not aware that Mr. Gerling was at any meeting in Milwaukee, Wisconsin in November 2005.

5. I met with Mr. Gerling on November 16, 2005 in Detroit, Michigan. At that time, he did not state that he was unwilling to meet with the IBEW until Delphi reached a tentative agreement with the UAW, he did state that he did not plan to meet with the IBEW until a tentative agreement was reached with the UAW.

6. On March 30, I made an additional information request of Charles McWee which repeated some of my earlier requests. In response, Mr. McWee sent me back an email with attachments which are identified as Exhibit 143. I was particularly frustrated that my request for a target goal to bring the Milwaukee operations to a competitive rate was not provided. Instead I received Delphi's response to another union, the IUE, which provided no target goal of the Milwaukee operations or any other operations. In the email, Mr. McWee reiterated his earlier refusal to provide information on compensation for salaried employees.

7. I did not receive any mail from Mr. Gerling concerning the December 19, 2005 press release. When I saw the press release, I did not know whether it was intended to refer to the proposal made to the IBEW. However, from Mr. Gerling's statements on November 16, 2005, I understood that the Company did not intend to negotiate with the IBEW until a new proposal was made to the UAW and a tentative agreement had been reached with that union. There was therefore no reason for IBEW to prepare a counter-proposal until we received notice a tentative agreement between the UAW and Delphi.

8. On April 7, 2006, I requested information on proposed changes in the hourly pension plan, marked ast Exhibit 144. On April 18, 2006, I and Don Griffin, representing the IAMAW, wrote requesting information concerning the cost savings from the company's proposal to freeze the pension as to our unions. I received a response marked as Exhibit 146, on April 27, 2006 stating that information was not available.

9. On April 20, 2006, IAM and IBEW met with Mr. Gerling and other Company representatives. At that time, we received some information concerning the Company's proposed health benefits for active employees and its pension freeze proposal. We were surprised to learn during the meeting that doctor visits were not covered by the company's proposed plan. During the April 20 meeting, we also asked Mr. Gerling about outstanding information requests. Mr. Gerling explained that he was not authorized to provide us with information. Any information requests had to be referred to legal and to Charles McWee. At that meeting, we also reviewed penny sheet which I had received for IBEW Local 663 earlier in April. The primary explanation we received was that the penny sheet did not accurately reflect normal per hour costs when hours were reduced for the bargaining unit, since the full cost of a monthly or annual benefit was spread between fewer hours.

10. At the end of the meeting on April 20, 2006, the IBEW and IAM submitted a counterproposal Mr. Gerling indicated that he would review the proposal and ask any questions he had concerning the proposal the next day, April 21, 2006. When the meeting concluded, there were outstanding information requests on the Company proposal, including requests for copies of the actual summary plan description for the Company proposals.

11. On April 21, 2006, Mr. Gerling asked questions concerning the Union proposal and the IAM and IBEW answered all the questions he had. Mr. Gerling then indicated that he understood that the Unions needed the promised attrition package which had not yet been presented by Delphi and answers to outstanding questions prior to substantive negotiations. He therefore indicated that he saw no purpose in extending the meeting on April 21, 2006. We asked Mr. Gerling for additional dates to meet, but he said he would have to get back to us on that, and that he would do so on Monday or Tuesday of the following week. Before he left, Mr. Gerling indicated that it would be beneficial for the parties to next meet in Troy, Michigan to discuss an attrition package. I indicated to him that I would need to bring at least some members of my committee with me even if the meeting was in Troy.

12. I did not hear from Mr. Gerling on Monday or Tuesday of the following week, and therefore contacted him on Thursday. He indicated at that time that he did not have a date when he could meet with us. Mr. Gerling indicated that while he had prepared a attrition package, he was not able to present it to us. He indicated that he would be preparing a counterproposal.

13. On May 1, 2006, Mr. Gerling confirmed by email that he still did not have an attrition package to present to us, nor did he have a counterproposal. A reply email asked him if it would be

possible to meet during the week in Troy as he had suggested two weeks previously, marked as Exhibit 147.

14. As of the commencement of the hearing on Delphi's 1113 and 1114 motions, May 9, 2006, IBEW Local 663 had not received an attrition package, nor had we received any counterproposal nor a date which Delphi would be ready to negotiate with the IBEW to follow up after the April 21, 2006 meeting.

15. On or about May 7, 2006, I received a call from Rob Gerling indicating that his lawyer would contact my lawyer and they were going to offer that the IBEW would be treated the same as UAW "me too". Mr. Gerling further said that this issue is in the hands of his attorney. The proposal that the IBEW be treated like the UAW was not a definitive proposal. It provided no specific terms and conditions of employment on which the IBEW bargaining unit could rely. In addition, Delphi takes the position that it will not provide benefits similar to those found in the General Motors Benefit Guaranteed to the UAW. Our counsel did receive an e-mail from Delphi's counsel with a similar communication. Our counsel reminded Delphi's counsel of his earlier statement that the parties should talk directly to each other. This would mean that any arrangement provided by Delphi to the IBEW patterned on what it is providing to the UAW would have a far more severe impact on our members.

16. We learned through emails from Delphi's counsel that the proposal that we get what the the UAW got meant that if the UAW agreements were rejected, our agreements would also be copy rejected.

17. Exhibits 149, 150 and 151 are collective bargaining agreements covering maintenance electricians in the Milwaukee area. Exhibit 152 is a chart summarizing some of the information in

these collective bargaining agreements. These collective bargaining agreements indicate that the average wage rate under Local 663's counterproposal is just competitive with other employers in the Milwaukee metropolitan area who employ maintenance electricians.

18.     The IBEW has many outstanding information requests dating back to October and November 2005, as well as more recent information requests made in April and May 2006, the information requested was finally provided in May as recently as May 18, 2006. I and my committee are in the process of reviewing that information, but it appears that a substantial amount of information remains outstanding, including information concerning the compensation package and concessions, if any, made by salaried employees, what wage surveys, if any, have been prepared relative to skilled employees and salaried employees, information concerning the costing of various proposals as they apply to the IBEW.

19.     We have received a breakdown of saving from concessions sought from the UAW but not for saving from concessions sought from the IBEW and IAM.

20.     The general information provided for the Milwaukee Organization does not appear to address the announced closure of the facility. Some of the cost items will be changed significantly by plant closure. For example, pension freeze will result in minimal savings if the plant closes in eighteen months. The company has presented no figures for cost savings even on a plant-wide basis, resulting from any of the language it seeks.

21.     Since the hearing commenced, we have met with the company on more than one occasion. However, we still do not have a definite proposal on wages or benefits for active employees or retirees since proposals that we have received on these issues state they are contingent

of General Motors financial support. There are also references to eliminating understanding and agreements which have not been identified.

22.     On May 18, 2006, we received information for the first time on questions we had asked in October and November. In many cases, the answer was that no information was available. We have not had the opportunity to verify these claims. The responses do not even copies of the unidentified agreements with the IAM and IBEW which the company proposed to change.

23.     Pursuant to 28 U.S.C. §1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of May, 2006

/s Randall A. Middleton
RANDAL A. MIDDLETON

G:\DOCS\ELE663\71259\M0147428.WPD