# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re | Chapter 11 |
| DELPHI CORPORATION, et al., | Case No. 05-44481 (RDD) |
| Debtors. | (Jointly Administered) |

AMENDED ORDER UNDER 11 U.S.C. § 363(b) AND FED. R. BANKR. P. 6004
AUTHORIZING DEBTORS TO ENTER INTO THE UAW
<u>SPECIAL ATTRITION PROGRAM AGREEMENT</u>

("UAW HUMAN CAPITAL HOURLY ATTRITION PROGRAMS ORDER")

Upon the motion, dated March 22, 2006 (the "Motion"), of Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (each, a "Debtor," and collectively, the "Debtors"), for an order (the "Order") under 11 U.S.C. § 363(b) and Rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") (a) approving and authorizing the Debtors to enter into agreements providing for the human capital hourly attrition programs (collectively, the "Hourly Attrition Programs") covering the majority of the Debtors' hourly union-represented employees, (b) authorizing the Debtors to implement the Hourly Attrition Programs, (c) authorizing and approving the UAW Special Attrition Program Agreement (as defined in ordering paragraph 3 below), and (d) approving the provisions set forth in paragraphs 3.b.iv.3., 7.b., 7.c. and 7.d. of the UAW Special Attrition Program Agreement (<u>provided</u>, <u>however</u>, that such express approval thereof shall not be deemed to limit in any way this Court's approval of any other provisions of the UAW Special Attrition Program Agreement); and this Court having considered (w) Appaloosa Management L.P.'s Preliminary Objection To Motion For Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Approving The Debtors' Human Capital Hourly Attrition Programs, dated March 30, 2006 (Docket No. 3021), as supplemented by Appaloosa Management L.P.'s Supplemental Objection To Motion For Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Approving the Debtors' Human Capital Hourly Attrition Programs, dated April 4, 2006 (Docket No. 3098); (x) the Limited

Objection Of The Official Committee Of Unsecured Creditors To Motion For Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Approving The Debtors' Human Capital Hourly Attrition Programs, dated April 4, 2006 (Docket No. 3092), as amended by the Amended Limited Objection Of The Official Committee Of Unsecured Creditors To Motion For Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Approving The Debtors' Human Capital Hourly Attrition Programs, dated April 5, 2006 (Docket No. 3108); (y) the Limited Objection Of Wilmington Trust Company, As Indenture Trustee, To Motion For Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Approving The Debtors' Human Capital Hourly Attrition Programs, dated April 4, 2006 (Docket No. 3097); and (z) the Limited Objection Of Law Debenture Trust Company Of New York, As Indenture Trustee, To Motion For Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 6004 Approving Debtors' Human Capital Hourly Attrition Programs, dated April 6, 2006 (Docket No. 3130) (collectively, the "Objections"); and this Court having further considered The Response Of UAW In Support Of Debtors' Motion For Approval Of UAW Special Attrition Program, dated March 24, 2006 (Docket No. 2958) and the Response Of General Motors Corporation In Support Of Debtors' Motion For Order Approving Human Capital Hourly Attrition Programs, dated April 4, 2006 (Docket No. 3090); and this Court having also considered the statements in open Court on behalf of the administrative agent under the Debtors' prepetition credit facility and the United Steelworkers of America in support of the Motion; and upon the evidence presented at the April 7, 2006 hearing on the Motion (the "Hearing") and the arguments and statements of counsel clarifying the relief sought in the Motion; and this Court having determined, for the reasons stated in its bench ruling at the conclusion of the Hearing that the relief requested in the Motion, as provided herein, is in the best interests of the Debtors, their estates, their creditors, and other parties-in-interest; and it appearing that proper and adequate notice of the Motion has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor; and the Court having previously entered an Order, dated May 5, 2006 in respect of the Motion and having been informed by counsel for GM by letter dated May 12, 2006, of a potential ambiguity in the May 5, 2006 Order that could, though incorrectly, be read to exceed the relief

granted by the Court, the Court has determined to enter this Amended Order, which supercedes the May 5, 2006 Order, to eliminate such ambiguity. Therefore, it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1. The Motion is GRANTED IN PART and DENIED IN PART as set forth herein.

2. The Objections are overruled to the extent inconsistent with the terms hereof.

3. The Debtors are hereby authorized to enter into the agreement by and among Delphi Corporation, General Motors Corporation ("GM"), and the United Automobile, Aerospace and Agricultural Implement Workers of America (the "UAW") attached hereto as Exhibit 1 (the "UAW Special Attrition Program Agreement") and to implement the terms of such UAW Special Attrition Program Agreement.

4. Except for the bilateral agreements of the UAW and GM to which the Debtors are not a party, each of the signatories to the UAW Special Attrition Program Agreement (each such party, a "Signatory," and collectively, the "Signatories") is directed to take all actions necessary or appropriate to effectuate the terms of this Order and the terms of the UAW Special Attrition Program Agreement, including, without limitation, any and all actions necessary or appropriate to its implementation of and performance under such agreement.

5. With respect to payment by the Debtors of gross monthly wages to those employees who participate in the voluntary pre-retirement program as provided by paragraph 3.b. of the UAW Special Attrition Program Agreement, Delphi shall establish a segregated bank account (the "Segregated Account") that shall be funded in the amount of $75 million. The funds in the Segregated Account shall be available to satisfy the obligations of paragraph 3.b. of the UAW Special Attrition Program Agreement and for no other purpose. Under no circumstances (including but not limited to conversion of Delphi's chapter 11 cases to chapter 7 cases) shall the assets in the Segregated Account be available to satisfy the claims of any party other than the employees except as otherwise specifically provided in the UAW Special Attrition Program Agreement. Delphi shall be entitled to withdraw funds from the

Segregated Account as and when provided by the terms of paragraph 3.b.iv. of the UAW Special Attrition Program Agreement. Upon withdrawal pursuant to the terms of paragraph 3.b.iv. of the UAW Special Attrition Program Agreement, the Debtors' use of such funds shall no longer be restricted by the terms of the UAW Special Attrition Program Agreement.

6. The UAW Special Attrition Program Agreement shall not be subject to abrogation, modification, or rejection without the mutual consent of the Signatories (with the exception of bilateral agreements of the UAW and GM (such as paragraphs 1. and 5a, d, f, and g obligations) that do not affect the Debtors) and, to the extent required by section 363(b) of the Bankruptcy Code, further order of the Court. The UAW Special Attrition Program Agreement and, this Court's approval of such agreement, or the performance of any obligation thereunder are each without prejudice to the rights and remedies of any party-in-interest (including the Signatories, the Crediters' Committee, and the Equity Committee) in all other aspects of the Debtors' chapter 11 cases, including, by illustration, the Debtors' and GM's respective positions in all commercial discussions and claims matters between them, all collective bargaining matters involving the parties, in any potential proceedings under sections 1113 and/or 1114 of the Bankruptcy Code with respect to the UAW, under section 365 of the Bankruptcy Code with respect to GM's contracts with the Debtors, in any pension termination proceeding under the Employee Retirement Income Security Act of 1974, as amended ("ERISA") and/or the Bankruptcy Code, and all claims administration and allowance matters.

7. Nothing in the UAW Special Attrition Program Agreement, this Court's approval of such agreement, or the performance of any obligation thereunder, shall limit or otherwise modify (a) the Debtors' rights under Section 4041 of ERISA or (b) the Debtors' rights under section(s) 1113 and/or 1114 of the Bankruptcy Code with regard to any obligations which pre-existed the UAW Special Attrition Program Agreement (including pre-existing obligations referenced within such agreement), such as (by way of illustration only) the

obligation to maintain the hourly pension plan or provide retirees or active employees (including employees/retirees participating in the attrition programs contained in the UAW Special Attrition Program Agreement) with levels of healthcare or other benefits as specified in pre-existing labor agreements.  Under no circumstances shall the Debtors freeze any pension plan covering UAW-represented employees in a manner that prevents such employees in the pre-retirement program described in paragraph 3.b. of the UAW Special Attrition Program Agreement from receiving on-going credited service sufficient to reach 30 years of credited service. The Debtors shall provide the same healthcare and life insurance coverage to employees participating in paragraph 3.b. of the UAW Special Attrition Program Agreement that they provide to its other active UAW employees; <u>provided, however</u>, that if the Debtors reduce or eliminate such coverage provided to their active UAW employees, GM shall subsidize such coverage provided to employees participating in such paragraph 3.b. up to the level provided to GM-UAW active employees.

8. GM may conclusively assert a prepetition, general unsecured claim with respect to (x) OPEB obligations it assumes under paragraph 4 of the UAW Special Attrition Program Agreement (excluding, for the avoidance of doubt, (i) incentive payments made by GM to any Delphi employee under paragraph 3.a.i., and (ii) any payments made by GM under paragraph 1) and (y) active health care and life insurance obligations GM assumes under paragraph 7.d thereof against the estate of Delphi Corporation under and/or within (a) the U.S. Employee Matters Agreement (including, without limitation, related flowback agreements and the UAW-GM-Delphi Memorandum of Understanding Benefit Plan Treatment and the UAW-GM-Delphi Flowback Agreements contained in the 1999 and 2003 GM-UAW and Delphi-UAW Contract Settlement Agreements), (b) Delphi's Agreement dated December 22, 1999 to indemnify GM for its liability under the Benefit Guarantee, as if all conditions for the triggering of GM's claim shall have occurred, and (c) Delphi's general indemnity of GM under the Master Separation Agreement.  GM has agreed to assume and

pay OPEB payments to Delphi employees who "check the box" and/or flow back to GM for purposes of retirement, and to pay the amounts due under paragraph 3.a.i. of the UAW Special Attrition Program Agreement. The presumed triggering of GM's claim against Delphi Corporation described above is only for purposes of the UAW Special Attrition Program Agreement and does not trigger any contractual claims against either Delphi or GM beyond their respective obligations under the UAW Special Attrition Program Agreement. Except as provided in this paragraph, GM may not assert any claim against any of the Debtors on account or in respect of its obligations or performance under the UAW Special Attrition Program Agreement (including, but not limited to, under paragraphs 1. and 2. thereof).

9. Nothing contained in the UAW Special Attrition Program Agreement, in this Court's approval of such agreement or the performance of any obligation thereunder, shall constitute an assumption of any agreement described therein, including, without limitation (a) any collective bargaining agreement between the UAW and the Debtors or (b) any agreement between GM and the Debtors, nor shall anything in the UAW Special Attrition Program Agreement in this Court's approval of such agreement or the performance of any obligation thereunder be deemed to create or give rise to an administrative or priority claim with respect to, in favor of or for the benefit of GM or convert a prepetition claim into a postpetition claim or an administrative expense with respect to any party.

10. For the avoidance of doubt, nothing in the Motion, the UAW Special Attrition Program Agreement, this Court's approval of such agreement, the performance of any obligation thereunder, or any other document shall prejudice the right of any party-in-interest (including, without limitation, the Debtors, the Creditors' Committee and the Equity Committee) to challenge the allowability, amount, or priority of any claims asserted by GM (including, without limitation, all defenses, objections, offsets, counterclaims, bases for disallowance, subordination or recharacterization, all avoidance rights under chapter 5 of the

Bankruptcy Code, and all remedies with respect thereto), except that GM's claims, if any, with respect to OPEB obligations assumed under paragraph 4 of the UAW Special Attrition Program Agreement or active health care and life insurance obligations assumed under paragraph 7.d. of the UAW Special Attrition Program Agreement shall not be subject to objection on the basis that such claims were not assertable under (a) the U.S. Employee Matters Agreement (including, without limitation, related flow back agreements and the UAW-GM-Delphi Memorandum of Understanding Benefit Plan Treatment and the UAW-GM-Delphi Flowback Agreements contained in the 1999 and 2003 GM-UAW and Delphi-UAW Contract Settlement Agreements), (b) Delphi's Agreement dated December 22, 1999 to indemnify GM for its liability under the Benefit Guarantee, as if all conditions for the triggering of GM's claim shall have occurred, and (c) Delphi's general indemnity of GM under the Master Separation Agreement.  Except as expressly provided in the preceding sentence, GM's claim is subject to defenses under those particular agreements listed above or on any other ground.  GM may not assert any claim of any kind arising under or relating to the UAW Special Attrition Program Agreement against any Debtor other than Delphi, and the foregoing exception shall not impair any right or remedy that may exist with respect to the enforceability or avoidability of any such agreement.  Further, nothing in the Motion, the UAW Special Attrition Program Agreement, this Court's approval of such agreement, the performance of any obligation thereunder, or any other document shall prejudice any right or remedy of any Debtor against any other Debtor with respect to the allocation of Delphi's obligations under the UAW Special Attrition Program Agreement or claims asserted against Delphi thereunder, all of which rights are expressly preserved.

11. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation and performance of this Order and the UAW Special Attrition Program Agreement and over each of the Signatories in connection therewith; <u>provided</u>, <u>however</u>, that the Court's jurisdiction shall not extend to bilateral agreements of the UAW and GM

(such as paragraphs 1 and 5a- d, f, and g of the UAW Special Attrition Program Agreement).

12. The Debtors shall notice for hearing any Hourly Attrition Programs entered into with the Debtors' other unions as provided under the Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered by this Court on October 14, 2005 (Docket No. 245), as further supplemented by orders entered by this Court on March 20, 2006 (Docket No. 2883), March 28, 2006 (Docket No. 2995), and April 20, 2006 (Docket No. 3293), and any other order further modifying such orders.

13.  The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Motion.

Dated:  New York, New York
       May 12, 2006

                          /s/ Robert D. Drain
                          UNITED STATESBANKRUPTCY COURT JUDGE