**Hearing Date: June 16, 2006**
                        **Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                           :
    In re                              :      Chapter 11
                                             :
DELPHI CORPORATION, et al.,     :      Case No. 05-44481 (RDD)
                                           :
                                           :      (Jointly Administered)
                   Debtors.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

     DEBTORS' RESPONSE TO OBJECTION OF UNIVERSAL TOOL & ENGINEERING
  CO., INC. TO DEBTORS' NOTICE OF REJECTION OF UNEXPIRED LEASES AND
                   <u>ABANDONMENT OF PERSONAL PROPERTY</u>

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this Response (this "Response") to the Objection Of Universal Tool & Engineering Co., Inc. To Debtors' Notice Of Rejection Of Unexpired Leases And Abandonment Of Personal Property, dated April 27, 2006 (the "Objection"), and respectfully represent as follows:

Preliminary Statement

1. On January 6, 2006, this Court entered an order granting the Debtors' motion for an Order Approving Procedures For Rejecting Unexpired Real Property Leases And Authorizing Debtors To Abandon Certain Furniture, Fixture, And Equipment (the "Lease Rejection Order") (Docket No. 1776). Pursuant to the Lease Rejection Order, on April 13, 2006, the Debtors filed their notice to reject the lease of property located at 7601 East 88th Place, Indianapolis, Indiana 46256 (the "Lease") by April 30, 2006 (Docket No. 3222).[1] On April 27, 2006, UTE filed the Objection, stating that it does not "object to the rejection of the Lease" but has "serious concerns" regarding (a) "possible unremediated environmental issues" at the Lease site and (b) "the abandonment of hazardous and/or burdensome property" at the Lease premises by the Debtors after April 30, 2006, the effective date of the Lease rejection. (Objection ¶ 5) (Docket No. 3462). The Debtors' respectfully submit that neither concern prevents the Debtors from rejecting the Lease under section 365 of the Bankruptcy Code.

---

[1] Prior to surrendering the property to Universal Tool & Engineering ("UTE"), the Debtors spent approximately $250,000 to clean the premises. Included in those costs were sums expended on site clean-up and dust and waste removal.

1

2. The Debtors' rejection of the Lease under 11 U.S.C. §365 is appropriately reviewed according to the business judgment test applicable to decisions regarding executory contracts under that provision. Section 365 gives UTE a claim for any costs it may incur for any environmental contamination that may actually exist at the Lease site. The right to assert a claim is UTE's only remedy in these circumstances.

3. UTE's second basis for its Objection, premised on the Debtors' failure to remove abandoned property, is equally flawed. There is no case law in this jurisdiction, or elsewhere, that would preclude the Debtors from rejecting the Lease on the grounds that not all of the Debtors' property was removed from the Lease premises. Indeed, a debtor's fundamental right to reject contracts would be eviscerated if the debtor were required, as a condition to rejection, to comply with burdensome contract conditions such as the requirement to remove abandoned property. Thus, UTE's "concerns" are nothing more than contract rejection claims that should be raised in a proof of claim and resolved in the claims reconciliation process. They are not grounds for opposing the Debtors' rejection of the Lease.[2]

Argument

A. The Debtors' Authority To Reject The Lease Is Not Limited By Unspecified Environmental Hazards

4. Section 365(a) of the Bankruptcy Code authorizes a trustee, or debtor-in-possession, subject to the court's approval, to assume or reject any executory contract or unexpired lease of the debtor. In deciding whether to grant such approval,

---

[2] The Objection also asserts that the Lease premises would not be vacated by April 30, 2006. The Debtors have confirmed that the Lease premises were in fact vacated as of April 30, 2006 and that the Debtors conducted a "walk-through" with UTE upon vacating the Lease premises.

2

bankruptcy courts usually apply the business judgment test. Generally, absent a showing of bad faith or abuse of a debtor's business discretion, a debtor's exercise of business judgment in determining that rejection will benefit the estate will not be disturbed. Westbury Real Estate Ventures v. Bradless, Inc. (In re Bradlees Stores, Inc.), 194 B.R. 555, 558 (Bankr. S.D.N.Y. 1996); In re G Survivor Corp. 171 B.R. 755, 757-58 (Bankr. S.D.N.Y. 1994), aff'd sub nom. John Forsyth Co. v. G Licensing, Ltd., 187 B.R. 111 (S.D.N.Y. 1995). Thus, in reviewing a motion seeking authorization to reject an unexpired lease, the court only needs to determine that the debtor's decision to reject is a reasonable business judgment.

    5.  Here, UTE does not question the Debtors' exercise of their business judgment or present any facts or argument demonstrating that rejection of the Lease is not in the best interests of the Debtors. Instead, UTE raises unspecified, hypothetical environmental concerns, implicitly raising the narrow exception to a debtor's authority to abandon property under a different section of the Bankruptcy Code. In Midlantic National Bank v. New Jersey Department of Environmental Protection, 474 U.S. 494 (1986), the Supreme Court carved out a limited exception to the trustee's broad power to abandon owned property under section 554(a) of the Bankruptcy Code, holding that "a trustee may not abandon property in contravention of a state statute or regulation that is reasonably designed to protect the public health or safety from identified hazards." Id. at 507. The Supreme Court emphasized that this exception is "a narrow one," and that the power to abandon would only be limited by requirements "reasonably calculated to protect the public health or safety from imminent and identifiable harm." Id. at 507 n.9 (emphasis added). Implicit in the Supreme Court's decision in Midlantic is the concern that section

3

554 provides no mechanism for addressing imminent and identifiable hazards on abandoned property. No private party would have the obligation to correct those conditions and the burden of responding would rest by default with the government. Id. at 505-06.

6. Courts have generally not applied the Midlantic test to requests for approval of the rejection of unexpired leases such as the one at issue here.[3] Differences between sections 365 and 554, as well as the policy concerns underlying the Supreme Court's decision, demonstrate that Midlantic should not be applied to the rejection of a lease. When a lease is rejected under section 365 of the Bankruptcy Code, there is a mechanism for addressing imminent hazards to public health or safety. The lessor, as the owner of the property, will be obligated by the federal Comprehensive Environmental Response, Compensation and Liability Act of 1980, 42 U.S.C. §§ 6911a, 9601-9675 and other environmental laws to address those conditions. The lessor will, in turn, have a claim for damages against the debtor under section 365(g) of the Bankruptcy Code for damages resulting from the rejection of the lease, including environmental damages. Unlike the abandonment in Midlantic, in this case, imminent environmental hazards, if any, will not be left unaddressed or fall on the government.

7. Even if the Court were to determine that the Midlantic test for abandoning owned property under section 554 of the Bankruptcy Code is applicable in this case of the rejection of a lease under 11 U.S.C. §365, UTE has not met the requirements of

---

[3] No different result is required by this court's decision in In re McCrory Corp., 188 B.R. 763 (Bankr. S.D.N.Y. 1995). In that case, the court applied the Midlantic analysis to determine that a lessor's environmental cleanup costs following rejection of a lease were not entitled to administrative priority. The court did not apply the test to determine whether to approve rejection of the lease. Discussion in the case regarding application of the Midlantic test to the approval of the rejection of a lease is dicta.

4

that test either with respect to the Lease site as a whole or with respect to any items of personal property located on it that will be abandoned. Courts applying Midlantic have emphasized that its limitation on the power of abandonment based on environmental conditions is a narrow one, even allowing abandonment of contaminated property so long as there is no imminent and identifiable harm to public health or safety. See In re Unidigital, Inc., 262 B.R. 283, 286 (Bankr. D. Del. 2001) ("Since the Midlantic decision, the majority of courts have read the exception to abandonment narrowly by disallowing abandonment only where there is an imminent and identifiable harm to the public health or safety."); In re McCrory Corp., 188 B.R. 763, 768 (Bankr. S.D.N.Y. 1995). The Court of Appeals for the Fourth Circuit, for instance, held that the trustee cannot abandon property only "where there is a serious health risk," not "where the hazards are speculative or may await appropriate action by an environmental agency." Borden, Inc. v. Wells-Fargo Bus. Credit (In re Smith-Douglass), 856 F.2d 12, 16 (4th Cir. 1988); see also N.M. Env't Dept. v. Foulston (In re L.F. Jennings Oil Co.), 4 F.3d 887 (10th Cir. 1993) (allowing abandonment when site posed no imminent threat to public safety); In re Anthony Ferrante & Sons, Inc., 119 B.R. 45, 49 (D.N.J. 1990) (finding that abandonment of contaminated drinking water system could not be prevented without showing of imminent and identifiable danger to public).

    8.  Moreover, the burden lies directly on the party opposing abandonment on grounds of environmental problems to show that the abandonment is "'in contravention of a state law or regulation.'" In re Franklin Signal Corp., 65 B.R. 268, 272 (Bankr. D. Minn. 1986) (citation omitted); see also In re Unidigital, Inc., 262 B.R at 287 (allowing abandonment, court found that "in order to fit into the Midlantic exception, the

5

debtor must be attempting to abandon property in contravention of state or local laws or regulations designed to protect the public").

9. In this case, UTE's "evidence" amounts only to an equivocal yet conclusory statement that "environmental contamination may exist" and that the Debtors' rejection of the Lease and vacation of the Leased Site "is in violation of federal, state, or local law" if they do not conduct any environmental testing. (Objection ¶ 6.) Stating that there may be violations of the law is not enough; there also "must be a showing that the violation constitutes an imminent and identifiable harm." In re Shore Co., 134 B.R. 572, 578 (Bankr. E.D. Tex. 1991); see also In re L.F. Jennings, 4 F.3d at 890 (arguing that "before abandonment of a property can violate Midlantic the property must represent an immediate and identifiable harm to public health or safety"). Moreover, the burden is on the parties "opposing abandonment under Midlantic to prove that the contamination on the property creates an imminent and identifiable harm to the public which will be aggravated by the abandonment." In re St. Lawrence Corp., 239 B.R. 720, 726-27 (Bankr. D.N.J. 1999), aff'd, 248 B.R. 734 (D.N.J. 2000). Because UTE has asserted only hypothetical claims of environmental contamination, it has failed to make any showing that would entitle it to relief under Midlantic either with respect to the property as a whole or with respect to any personal property located on it.

    B.    **Failure To Remove Abandoned Property Is Not A Valid Ground For An Objection**

10. UTE's Objection based on a concern that it will have to dispose of property abandoned by the Debtors is equally unsupported. The Debtors are unaware of any case law, and none is identified by UTE, that would support UTE's position. Nor does

6

section 554 of the Bankruptcy Code identify any grounds to prohibit the Debtors' rejection of the Lease.

11.  As noted above, under section 365 of the Bankruptcy Code the debtor has the right to reject unexpired leases when, in its business judgment, rejection is in the best interests of the debtor. UTE does not contest that the Debtors have properly exercised their business judgment to reject the Leases and that the Lease is burdensome to the estate. Instead, the Objection asserts that the Debtors are nevertheless required to remove certain unidentified property from the Lease premises so that UTE would not be forced to incur the costs of cleaning out the premises.

12.  UTE's Objection should be overruled because it is premised on a misunderstanding of bankruptcy law. The removal of any abandoned property that is ultimately identified by UTE would certainly burden the Debtors and provide no value to the Debtors' estate. The cost of removing the abandoned property by the Debtors, and complying with any other contractual obligations under the Lease, would also certainly exceed any contractual damage claim that may be asserted by UTE under sections 365(g) and 502(g) of the Bankruptcy Code. Indeed, to impose such a requirement as a condition to rejection of the Lease would be tantamount to requiring the Debtors to cure alleged defaults under the Lease prior to its rejection. Nothing in the Bankruptcy Code or applicable bankruptcy law provides a party-in-interest with the administrative right to payment for the failure to cure lease defaults upon rejection or payment of alleged damages arising from the abandonment of property pursuant to section 554 of the Bankruptcy Code.

13. This exact conclusion was recently reached by Judge Gerber in <u>In re Ames Department Stores, Inc.</u>, 306 B.R. 43 (Bankr. S.D.N.Y. 2004), when the landlord sought to impose similar obligations on the Debtor as a condition to rejecting the lease:

> The Court necessarily must reject the Landlords' implicit contention that the Debtors' statutory right to reject can be qualified by requirements not in the Bankruptcy Code itself, and especially by an implied requirement of compliance with lease covenants that are burdensome to the debtor, and that may form part of the rationale for rejection in the first place. A rejection is a court-authorized breach of an executory contract. When the exercise of business judgment makes such advisable, the estate can, by rejection, be relieved of the duty of continuing post-petition performance on a contract, and the landlord's claim for any damages arising from the rejection is a pre-petition claim for breach of contract. The ability to reject provides the trustee or debtor-in-possession with the means to relieve the estate of the duty to perform on burdensome obligations at the expense of all of the estate's other creditors, and to avoid the incurrence of additional administrative expenses which lack a corresponding benefit to the estate.

<u>Id.</u> at 51-52 (footnotes omitted). In addition, the court went on to state that a debtor's decision to reject a contract "is one of the most fundamental rights of a trustee or debtor-in-possession" and that the right would be eviscerated if the debtor were required, as a condition to rejection, to comply with burdensome contract conditions such as the requirement to remove abandoned property. <u>Id.</u> at 52.

14. Based on the foregoing, the Debtors' rejection of the Lease, effective as of April 30, 2006, should be approved. The Debtors complied with all the requirements of the Bankruptcy Code in rejecting the Lease, and it should be of no consequence, for determining whether the rejection was proper, that certain abandoned property remained on the Lease premises. The Bankruptcy Code does not require the curing of defaults as a condition to rejection, which is essentially what UTE is requesting here. Any dispute that UTE may have with abandoned property or future environmental clean-up costs should be

8

resolved through the claims reconciliation process. It should not be a condition or requirement to the Debtors' right to reject the Lease.

Notice

15. Notice of this Response has been provided in accordance with the Seventh Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on May 19, 2006 (Docket No. 3824) ("Supplemental Case Management Order"). In addition, the Debtors have complied with the Supplemental Case Management Order with respect to the scheduling of this matter for the June 16, 2006 omnibus hearing.[4] In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

16. Because the legal points and authorities upon which this Response relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

---

[4] The Debtors have consulted with counsel to the Creditors' Committee regarding this matter and the Debtors have been informed that the Creditors' Committee does not object to the scheduling of this matter for the June omnibus hearing.

WHEREFORE the Debtors respectfully request that the Court enter an order in the form attached hereto as <u>Exhibit A</u> (i) overruling the Objection, (ii) confirming April 30, 2006 as the effective date of the Lease rejection, and (iii) granting such other and further relief as is just.

Dated: New York, New York
       June 6, 2006

                    SKADDEN, ARPS, SLATE, MEAGHER
                        & FLOM LLP

                    By: /s/ John Wm. Butler, Jr.
                        John Wm. Butler, Jr. (JB 4711)
                        John K. Lyons (JL 4951)
                        Ron E. Meisler (RM 3026)
                        333 West Wacker Drive, Suite 2100
                        Chicago, Illinois  60606
                        (312) 407-0700

                    - and -

                    By: /s/ Kayalyn A. Marafioti
                        Kayalyn A. Marafioti (KM 9632)
                        Thomas J. Matz (TM 5986)
                        Four Times Square
                        New York, New York 10036
                        (212) 735-3000

                    Attorneys for Delphi Corporation, <u>et</u> <u>al.</u>,
                        Debtors and Debtors-in-Possession

<u>Exhibit A</u>

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
                                                            :
    In re                                 :    Chapter 11
                                                            :
DELPHI CORPORATION, et al.,                                 :    Case No. 05-44481 (RDD)
                                                            :
                       Debtors.    :    (Jointly Administered)
                                                            :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

ORDER UNDER 11 U.S.C. § 365(a) AUTHORIZING REJECTION OF PROPERTY
LOCATED AT 7601 EAST 88TH PLACE, INDIANAPOLIS, INDIANA

("7601 EAST 88TH PLACE LEASE REJECTION ORDER")

Upon the motion, dated December 16, 2005 (the "Motion"), of Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order under 11 U.S.C. § 365(a) authorizing the Debtors to reject certain unexpired real property leases and authorizing debtors to abandon certain furniture, fixture, and equipment (Docket No. 1551), the Order Approving Procedures For Rejecting Unexpired Real Property Leases And Authorizing Debtors To Abandon Certain Furniture, Fixture, And Equipment entered January 6, 2006 (Docket No. 1776), the Debtors' notice to reject the lease of property located at 7601 East 88th Place, Indianapolis, Indiana 46256 (the "Lease") by April 30, 2006 (Docket No. 3222), the Objection Of Universal Tool & Engineering Co., Inc. To Debtors' Notice Of Rejection Of Unexpired Leases And Abandonment Of Personal Property, dated April 27, 2006 (Docket No. 1894) (the "Objection"), and the Debtors' Response To Objection Of Universal Tool & Engineering Co., Inc. To Debtors' Notice Of Rejection Of Unexpired Leases And Abandonment Of Personal Property, dated June 6, 2006 (the "Response"); and upon the record of the hearing held on the Objection and the Response; and it appearing that proper and

adequate notice of the matter has been given and that no other or further notice is necessary; and after due deliberation thereon; and good and sufficient cause appearing therefor; it is hereby

ORDERED, ADJUDGED, AND DECREED THAT:

1. The Objection is OVERRULED.

2. The rejection of the Lease shall be effective as of April 30, 2006.

3. Notwithstanding any provision of title 11 of the United States Code, 11 U.S.C. §§ 101-1330, as amended, or of the Federal Rules of Bankruptcy Procedure to the contrary, this Order shall take effect immediately upon signature.

4. This Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Order.

5. The requirement under Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York for the service and filing of a separate memorandum of law is deemed satisfied by the Response.

Dated:   New York, New York
         June __, 2006

                                                          _____
                                                          UNITED STATES BANKRUPTCY JUDGE

2