**Hearing Date: June 19, 2006**
        **Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                :
    In re                         :    Chapter 11
                                :
DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                                :
                                :    (Jointly Administered)
              Debtors.       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

## DEBTORS' OBJECTION TO MOTION OF H.E. SERVICES COMPANY AND ROBERT BACKIE, MAJORITY SHAREHOLDER FOR RELIEF FROM AUTOMATIC STAY

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this objection (the "Objection") to the motion of H.E. Services Company and Robert Backie, Majority Shareholder (collectively, "H.E. Services"), for relief from the automatic stay, dated March 6, 2006 (the "Motion") (Docket No. 2705). In support of the Objection, the Debtors respectfully represent as follows:

Preliminary Statement

1. The Motion should be denied because H.E. Services has not shown adequate cause for relief from the automatic stay to continue its litigation against Delphi. Indeed, the movant has not shown <u>any</u> cause. In support of its Motion, H.E. Services alleges that (i) continuation of its $100 million lawsuit will require no significant time from any employee involved in the Debtors' bankruptcy cases and (ii) both the Debtors and H.E. Services will benefit if the stay is lifted and these matters are brought to judgment and collection. H.E. Services is wrong on both comments.

2. The Debtors have no insurance coverage for this matter and thus, the continuation of the H.E. Services' litigation will directly affect the Debtors and their estates, to the detriment of all other creditors. All costs associated with defending the action and any liability that may arise as a result of it would be borne directly by the Debtors' estates.

3. In addition, the H.E. Services' litigation is in the early stages. In fact, the action was filed only four months before the Debtors sought chapter 11 relief,

2

and discovery has not yet even commenced. To properly defend the estates against H.E. Services' $100 million claim, the Debtors would allocate resources that would otherwise be used in their restructuring efforts. Indeed, the Debtors' in-house attorneys are involved in this suit and most other litigation against the Debtors. Accordingly, continuation of this suit would be a distraction from the Debtors' focus on reorganizing. This would be detrimental to all of the Debtors' stakeholders because the Debtors are at a critical stage of these highly complex chapter 11 cases, and all of their resources are and should be focused on maintaining operations and implementing the Delphi transformation plan.

        4.        Indeed, on March 31, 2006, the Debtors announced their strategy to prepare for their return to stable, profitable business operations through a broad-based global restructuring. In furtherance of the Debtors' restructuring efforts, on May 9, 2006, the hearing on the Debtors' motion for authority to reject U.S. labor agreements and to modify retiree benefits under sections 1113 and 1114 of the Bankruptcy Code commenced. Moreover, the Debtors expect to commence the hearing on their motion for authority to reject certain unprofitable supply contracts with General Motors Corporation ("GM") after the section 1113 and 1114 hearing has concluded. The Debtors are also preparing to implement other aspects of their transformation plan including streamlining the Debtors' product portfolio, transforming the Debtors' salaried workforce to ensure that the Debtors' organizational and cost structure is competitive, and devising a workable solution to the Debtors' current pension issues. The resolution of these matters, which will require the Debtors' undivided attention, is key to the Debtors' ability to complete its U.S.-based restructuring and emerge from chapter 11.

5. Accordingly, there is no good reason why the Debtors should now be forced to divert their attention from the immense tasks at hand to appease H.E. Services in its attempt to resume the litigation related to its claim and collect any judgment from the Debtors. To permit adjudication of H.E. Services' claims at this time would improperly prefer this unsecured creditor over other holders of disputed, unliquidated claims and will encourage other similarly situated parties to follow suit. Because the Debtors are parties to more than two hundred active and threatened lawsuits throughout the country, if the automatic stay is lifted for H.E. Services, the Debtors could be inundated with similar motions from numerous litigation claimants. This would force the Debtors to reallocate needed resources to defend against numerous motions to modify the automatic stay rather than focus on restructuring efforts to emerge from chapter 11 as soon as possible.

6. In light of the issues currently facing the Debtors, they simply should not be forced to litigate prepetition claims now with H.E. Services or any other similarly situated claimant. In fact, this type of costly distraction is precisely what Congress intended to halt through the automatic stay. Permitting a modification of the stay at this time to allow H.E. Services to proceed against Delphi with its litigation would undermine the protections afforded by Congress to a chapter 11 debtor.

<u>Argument</u>

7. The automatic stay imposed by section 362 of the Bankruptcy Code is one of the most fundamental and significant protections that the Bankruptcy Code affords a debtor. <u>Midlantic Nat'l Bank v. N.J. Dep't of Envt'l. Prot.</u>, 474 U.S. 494, 503 (1986); <u>see</u> <u>also</u> <u>In re Drexel Burnham Lambert Group Inc.</u>, 113 B.R. 830, 837

4

(Bankr. S.D.N.Y. 1990) ("[A]utomatic stay is key to the collective and preservative nature of a bankruptcy proceeding."). The automatic stay is designed to, among other purposes, give the debtor a "breathing spell" after the commencement of a chapter 11 case and shield the debtor from creditor harassment and a multitude of litigation in a variety of forums at a time when the debtor's personnel should be focusing on restructuring. See Taylor v. Slick, 178 F.3d 698, 702 (3d Cir. 1999), cert. denied, 528 U.S. 1079 (2000); In re Enron Corp., 300 B.R. 201 (Bankr. S.D.N.Y. 2003).

8. The automatic stay broadly extends to all matters that may have an effect on a debtor's estate, enabling bankruptcy courts to ensure that debtor has the opportunity to rehabilitate and reorganize its operations. See Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.), 801 F.2d 60, 62–64 (2d Cir. 1986); see also Fid. Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 53 (2d Cir. 1976) ("Such jurisdiction is necessary 'to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization.'") (citation omitted); AP Indus. Inc. v. SN Phelps & Co. (In re AP Indus., Inc.), 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990) ("The automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding.").

9. Section 362(d)(1) of the Bankruptcy Code provides that the court may grant relief from the automatic stay "for cause." In Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus.), 907 F.2d 1280, 1285 (2d Cir. 1990), the Court of Appeals explained the burden-shifting regime on a motion to modify the automatic stay:

5

> The burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property," 11 U.S.C. § 362(g)(1). See 2 Collier on Bankruptcy ¶ 362.10, at 362–76. If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.

10.    "If the movants fail to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., 907 F. 2d at 1285; see also In re Metro Transp. Co., 82 B.R. 351, 353 (Bankr. E.D. Pa. 1988) (noting that unsecured creditors face difficult task of producing evidence to establish balance of hardships tips in their favor to obtain stay relief). Moreover, during the period when debtors still retain the exclusive right to formulate a plan of reorganization, "an unsecured, unliquidated claim holder should not be permitted to pursue litigation against the debtor in another court unless extraordinary circumstances are shown." See In re Pioneer Commercial Funding Corp., 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990). As more fully described below, H.E. Services has failed to show any cause, let alone extraordinary cause, sufficient to obtain relief from the automatic stay to proceed with its litigation. The failure of H.E. Services to satisfy its burden to show cause is sufficient grounds to deny its Motion.

11.    Even if the movants had provided one shred of evidence to satisfy cause – which they have not – this Court is given sound discretion to evaluate the propriety of lifting the stay under the circumstances. In re Sonnax Indus., 907 F.2d at 1288. Courts have traditionally used multifactor tests to determine whether cause exists to modify or lift the automatic stay. The Second Circuit has used a twelve-factor lift stay

test articulated in the Sonnax decision.[1] In re Sonnax sets forth the following list of twelve factors that should be considered when deciding whether the stay should be lifted to allow litigation against a debtor to continue in another forum:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

Id. at 1286. See also In re Curtis, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984). All twelve factors will not be relevant in every case, Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999), nor must the Court afford equal weight to each of the twelve factors. See Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship (In re Burger Boys, Inc.), 183 B.R. 682, 688 (S.D.N.Y. 1994). The relevant factors with regard to this Motion are (i) whether the debtors' insurer has assumed full responsibility for defending them; (ii) whether litigation in another forum would prejudice the interests of other creditors; (iii) whether the parties are ready for trial in the other proceeding; (iv) lack of any connection with or interference with the bankruptcy case; and (v) impact of the stay on the parties and the balance of harms. As demonstrated below, H.E. Services has not,

---

[1] In lieu of applying the twelve-factor test used in this Circuit for almost two decades, H.E. Services seeks to have this Court consider only three factors used in the Seventh Circuit by directing the Court's attention to In re Fernstrom Storage & Van Co., 938 F.2d 731 (7th Cir. 1991).

7

and indeed cannot, carry the burden of establishing that sufficient cause exists to lift the automatic stay. Accordingly, the Motion should be denied.

I.  **The Debtors And Their Creditors Will Be Prejudiced Because The Debtors' Insurer Has Not Assumed Full Responsibility For Defending The Case**

12. As noted above, the Debtors do not have insurance to cover the liability associated with H.E. Services' claim. All costs associated with defending the action and any liability that may ultimately arise on account of the action would be borne directly by the Debtors to the detriment of their stakeholders. As a result, the Debtors and their estates would be prejudiced if the automatic stay were modified to permit the H.E. Services' litigation to proceed at this point in these chapter 11 cases.

II. **The Debtors Are Not Prepared For Trial**

13. In addition, the H.E. Services' litigation is in its infancy. The action was filed in June 2005, only a few months before the Debtors' petition date. See In re Comdisco, 271 B.R. 273, 277–80 (Bankr. N.D. Ill. 2002) (denying motion to lift stay regarding securities class action in its early stages). In fact, the case is in such a preliminary phase that there has yet to be a scheduling order entered, much less discovery. Despite the size of the Debtors, H.E. Services' assertion of a $100 million claim is significant to these estates. Modifying the automatic stay to allow H.E. Services to proceed against the Debtors in a $100 million action would require the Debtors and their counsel to invest in time-consuming and costly litigation to the detriment of other efforts that are more central to the Debtors' efforts to reorganize.

8

III.  Lifting The Stay Would Unnecessarily Interfere
      With The Debtors' Restructuring Efforts

14. The Debtors and their estates would be prejudiced if the automatic stay were modified now to permit the H.E. Services' litigation to proceed. The Debtors are in the midst of critical negotiations with their unions and GM to address numerous issues regarding U.S. legacy liabilities and operational restrictions driven by collective bargaining agreements. In furtherance of these efforts, and as stated above, the Debtors commenced the prosecution of their motion under sections 1113 and 1114 of the Bankruptcy Code seeking authority to reject U.S. labor agreements. In addition, the Debtors also intend to prosecute their motion to reject unprofitable supply contracts with GM.

15. Allowing H.E. Services to proceed with its $100 million litigation at this time will distract the Debtors from these critical issues and will thus cause significant prejudice. In re U.S. Brass Corp., 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994) ("When balancing the hardships in lifting the stay, the most important factor is the effect of such litigation on the administration of the estate; even slight interference with the administration may be enough to preclude relief.") (citing In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984)); see In re Comdisco, 271 B.R. at 280 (finding that "it would be irresponsible and subversive of the purpose of the automatic stay to allow any resources and attention of the Debtor to be diverted to other matters not directly related to its reorganization"). Denying H.E. Services' Motion is consistent with one of the purposes of the automatic stay, which is to allow the Debtors breathing space. See, e.g.,

In re Enron Corp., 300 B.R. at 211 (finding that "'[t]he purpose of the automatic stay is to give the debtor a breathing spell from creditors'") (citations omitted).

16.  In addition to the reasons set forth above, the Debtors are parties to more than two hundred active and threatened lawsuits across the country.  Lifting the automatic stay for H.E. Services presumably would encourage other parties with litigation claims against the Debtors, to seek similar relief, thereby forcing the Debtors to defend against dozens of motions to modify the automatic stay.  This result would be contrary to the fundamental principles set forth by Congress as a basis for the automatic stay.  See, e.g., LTV Steel Co. v. Bd. of Educ. (In re Chateaugay Corp.), 93 B.R. 26, 30 (S.D.N.Y. 1988) (noting that automatic stay is intended to prevent "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts"); Midlantic Nat'l Bank, 474 U.S. at 503; In re Drexel Burnham Lambert Group, Inc., 113 B.R. at 837.  Therefore, H.E. Services should not be allowed at this time to lift the stay and proceed with its litigation against the Debtors.

IV.   The Balance Of The Harms Weighs In Favor Of
      Denying The H.E. Services' Motion

17.  In stark contrast to the substantial prejudice that the Debtors would suffer, H.E. Services cannot show that it would be prejudiced if the Motion were denied.  H.E. Services will face only the ordinary delay that all creditors face in complex chapter 11 cases.  See In re Comdisco, 271 B.R. at 277–80 (finding that "the automatic stay almost always delays litigants … [t]hat, after all, is its purpose, and the reason they call it a 'stay'").  H.E. Services simply would experience the creditor delay that is inherent in the bankruptcy process, and is an unavoidable – and intended – consequence of the automatic

stay. H.E. Services may file a proof of claim against the Debtors prior to the July 31, 2006 bar date if it chooses to do so.

18.    Moreover, H.E. Services filed a supplement to the Motion (Docket No. 3263) (the "Supplement"), contending that the relief it requests is consistent with the relief granted to Automotive Technologies International ("ATI") (Docket No. 3200). The facts and circumstances of ATI's cases are wholly unlike those of H.E. Services' case. The ATI cases were filed years before the Debtors filed their chapter 11 cases. Moreover, in contrast to the H.E. Services' case in which the litigation has barely begun, ATI's action was on appeal, the issues had been fully briefed, and the parties were awaiting oral argument. Clearly, the ATI facts are entirely different than the facts at hand. For all the reasons stated above, the Debtors request that the Motion together with the Supplement be denied.

## Conclusion

19.    A balancing of the competing interests of the Debtors and H.E. Services demonstrates that the automatic stay should not be modified to permit H.E. Services to proceed with the H.E. Service litigation at the critical stage of these chapter 11 cases. H.E. Services fails to meet the burden of establishing that sufficient cause exists to lift the automatic stay. For the reasons set forth above, the Motion should be denied.

## Notice

20.    Notice of this Objection has been provided in accordance with the Seventh Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain

Notice, Case Management, And Administrative Procedures, entered by this Court on May 19, 2006 (Docket No. 3824). In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

<u>Memorandum Of Law</u>

21. Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) denying the Motion and (ii) granting the Debtors such other and further relief as is just.

Dated: New York, New York
       June 9, 2006

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

 - and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession