**Hearing Date: June 19, 2006**
**Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free:  (800) 718-5305
International:  (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                            :

      In re                    :    Chapter 11
                            :
DELPHI CORPORATION, et al.,    :    Case No. 05-44481 (RDD)
                            :
                            :    (Jointly Administered)
              Debtors.    :
- - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DEBTORS' OBJECTION TO MOTION
OF CINDY PALMER, PERSONAL REPRESENTATIVE OF THE ESTATE OF
MICHAEL PALMER, DECEASED, FOR RELIEF FROM AUTOMATIC STAY

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates

(the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases

(collectively, the "Debtors"), hereby submit this objection (the "Objection") to the motion

of  Cindy Palmer, personal representative of the estate of Michael Palmer, deceased

("Palmer"), for relief from the automatic stay, dated March 6, 2006 (the "Motion")

(Docket No. 2708), and the Supplement to the Motion, dated April 18, 2006 (the

"Supplement") (Docket No. 3267).  In support of the Objection, the Debtors respectfully

represent as follows:

<u>Preliminary Statement</u>

1.        With respect to the Motion, the Debtors are amenable to modifying

the automatic stay for the <u>sole</u> and <u>limited</u> purpose of allowing Palmer to prosecute the

Palmer Appeal (as defined below).  The Debtors object to the Motion, however, to the

extent that Palmer seeks any additional relief beyond allowing Palmer to prosecute the

Palmer Appeal in the Michigan Court of Appeals.  If Palmer receives a favorable ruling

in the Palmer Appeal, she should return to this Court to request any additional relief that

she may deem necessary.

2.        On August 24, 2001, Palmer commenced an action against Delphi

alleging that the actions of Delphi proximately caused the wrongful death of Michael

Palmer.  On November 21, 2002, the trial court granted Delphi's motion for summary

disposition, and Palmer appealed to the Michigan Court of Appeals (the "Palmer

Appeal").  Oral arguments were scheduled for October 12, 2005, but due to the

commencement of the Debtors' Chapter 11 cases, the oral arguments were stayed.  By the

2

Motion, Palmer has asked the Court for relief from the automatic stay, not only to

adjudicate the Palmer Appeal, but if successful on the appeal to prosecute the Palmer

litigation to in the lower court.

3.     The Palmer Appeal has been fully briefed and filed with the

Michigan Court of Appeals.  Only oral arguments in front of the Michigan Court of

Appeals and a decision from the appellate court remain to adjudicate the Palmer Appeal.

Because the Debtors have already expended the resources required to prepare Delphi's

defense and brief the issues raised on appeal, the Debtors do not object to the

modification of the automatic stay for the <u>sole</u> and <u>limited</u> purpose of allowing Palmer to

prosecute the Palmer Appeal with the Michigan Court of Appeals.  Upon conclusion of

the proceedings in the Michigan Court of Appeals (whether by affirmation, reversal, or

other ruling), however, Palmer should be required to return to this Court if she desires

further relief from the automatic stay.  To the extent that Palmer is not willing to modify

the automatic stay under the terms set forth above, and is seeking to continue the

litigation beyond a judgment in the Michigan Court of Appeals the Debtors object to the

Motion as set forth further below.

4.     The automatic stay should either be modified for the <u>sole</u> and

<u>limited</u> purpose of allowing Palmer to prosecute the Palmer Appeal or, in the alternative,

the Motion should be denied because Palmer has failed to offer sufficient evidence to

show adequate cause for relief from the automatic stay to continue her personal injury

litigation against Delphi, among other defendants.  Indeed, the movant has not shown <u>any</u>

cause to take any action beyond the prosecution of the Palmer Appeal.  In support of its

Motion, Palmer alleges that (i) its lawsuit will require no significant time from any

3

employee involved in the Debtors' bankruptcy cases and (ii) both the Debtors and Palmer

will benefit if the stay is lifted and these matters are brought to judgment and collection.

Neither allegation is correct.

5.      If the Palmer Appeal results in a reversal of the trial court's

decision and the matter is allowed to proceed to judgment, the Debtors' estates will be

directly affected.  Due to the structure of the Debtors' insurance program, as described in

more detail below, any claim paid by the Debtors' insurer will result in the insurer's

holding an administrative expense priority claim in an equal amount against the Debtors.

Thus, for every dollar paid to Palmer by the Debtors' insurer within the Debtors'

deductible (at least $1 million deductible), the Debtors will have to reimburse their

insurer that same amount.  As a result, allowing the litigation to proceed to judgment will

directly affect the Debtors' estates.  Moreover, the Debtors also retain the duty to defend.

Undertaking this duty in and of itself will cause unnecessary expense and distraction.  In

addition, the Debtors have recently moved for an Order Under 11 U.S.C. § 362 And Fed.

R. Bankr. P. 7016 And 9019 Approving Procedures For Modifying The Automatic Stay

To Allow For (i) Liquidating And Settling And/Or (ii) Mediating Certain Prepetition

Litigation Claims ("Lift Stay Procedures") (Docket No. 4038).  Provided that the

procedures are approved, to the extent that Palmer is successful in her appeal, there will

be another outlet for Palmer to liquidate her case.

6.      It is important to note that although the Palmer Appeal is in

advanced stages, if the Michigan Court of Appeals were to reverse the trial court's

decision, the litigation would once again be active.  Under such a scenario, the Debtors

4

would be unnecessarily distracted and valuable resources that would otherwise be

allocated to the administering of the estate would be wasted.

       7.     Indeed, on March 31, 2006, the Debtors announced their strategy

to prepare for their return to stable, profitable business operations through a broad-based

global restructuring.  In furtherance of the Debtors' restructuring efforts, on May 9, 2006,

the hearing on the Debtors' motion for authority to reject U.S. labor agreements and to

modify retiree benefits under sections 1113 and 1114 of the Bankruptcy Code

commenced.  Moreover, the Debtors expect to commence the hearing on their motion for

authority to reject certain unprofitable supply contracts with General Motors Corporation

("GM") after the section 1113 and 1114 hearing has concluded.  The Debtors are also

preparing to implement other aspects of their transformation plan including streamlining

the Debtors' product portfolio, transforming the Debtors' salaried workforce to ensure that

the Debtors' organizational and cost structure is competitive, and devising a workable

solution to the Debtors' current pension issues.  The resolution of these matters, which

will require the Debtors' undivided attention, is key to the Debtors' ability to complete its

U.S.-based restructuring and emerge from chapter 11.

       8.     Accordingly, the Debtors should not now be forced to divert their

focus from the formidable issues at hand to enable Palmer to resume the litigation related

to her claims and collect any judgment from the Debtors.  To permit adjudication of

Palmer's claims at this time would giver her a preference over other holders of disputed,

unliquidated claims and would encourage other similarly situated parties to seek similar

relief.  The Debtors are parties to more than two hundred active and threatened lawsuits

throughout the country.  If the automatic stay is lifted for Palmer for the purpose of

allowing her to proceed against Delphi beyond the Palmer Appeal, the Debtors may be

inundated with similar motions by other litigants.  Thus, rather than focusing on

restructuring efforts in order to emerge from chapter 11 as soon as possible, the Debtors

would be required instead to reallocate needed resources to defend against numerous

motions to modify the automatic stay.

        9.     The Debtors should not be forced to litigate prepetition claims with

Palmer or any other similarly situated claimant at this time.  The automatic stay was

designed to avoid precisely this type of distraction for debtors.  Permitting a modification

of the stay to allow Palmer to proceed against Delphi – other than pursuit of the Palmer

Appeal – would defeat the this fundamental protection afforded by Congress to a chapter

11 debtor.

Argument

        10.    The automatic stay imposed by section 362 of the Bankruptcy

Code is one of the most fundamental and significant protections that the Bankruptcy

Code affords a debtor.  Midlantic Nat'l Bank v. N.J. Dep't of Envt'l. Prot., 474 U.S. 494,

503 (1986); see also In re Drexel Burnham Lambert Group Inc., 113 B.R. 830, 837

(Bankr. S.D.N.Y. 1990) ("[A]utomatic stay is key to the collective and preservative

nature of a bankruptcy proceeding.").  The automatic stay is designed to, among other

purposes, give the debtor a "breathing spell" after the commencement of a chapter 11

case and shield the debtor from creditor harassment and a multitude of litigation in a

variety of forums at a time when the debtor's personnel should be focusing on

restructuring.  See Taylor v. Slick, 178 F.3d 698, 702 (3d Cir. 1999), cert. denied, 528

U.S. 1079 (2000); In re Enron Corp., 300 B.R. 201 (Bankr. S.D.N.Y. 2003).

6

11.    The automatic stay broadly extends to all matters that may have an effect on a debtor's estate, enabling bankruptcy courts to ensure that debtor has the opportunity to rehabilitate and reorganize its operations.  See Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.), 801 F.2d 60, 62–64 (2d Cir. 1986); see also Fid. Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 53 (2d Cir. 1976) ("Such jurisdiction is necessary 'to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization.'") (citation omitted); AP Indus. Inc. v. SN Phelps & Co. (In re AP Indus., Inc.), 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990) ("The automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding.").

12.    Section 362(d)(1) of the Bankruptcy Code provides that the court may grant relief from the automatic stay "for cause." In Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus.), 907 F.2d 1280, 1285 (2d Cir. 1990), the Court of Appeals explained the burden-shifting regime on a motion to modify the automatic stay:

> The burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property," 11 U.S.C. § 362(g)(1). See 2 Collier on Bankruptcy ¶ 362.10, at 362–76. If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.

13.    "If the movants fail to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled

7

to continued protection." In re Sonnax Indus., 907 F. 2d at 1285; see also In re Metro

Transp. Co., 82 B.R. 351, 353 (Bankr. E.D. Pa. 1988) (noting that unsecured creditors

face difficult task of producing evidence to establish balance of hardships tips in their

favor to obtain stay relief). Moreover, during the debtor's exclusivity period, "an

unsecured, unliquidated claim holder should not be permitted to pursue litigation against

the debtor in another court unless extraordinary circumstances are shown." See In re

Pioneer Commercial Funding Corp., 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990). As more

fully described below, Palmer has not shown any cause, let alone extraordinary cause,

sufficient to obtain relief from the automatic stay. The failure of Palmer to satisfy her

burden to show cause is sufficient grounds to deny her Motion and Supplement.

14.    Even if the movant had offered any evidence to satisfy cause, this

Court may nonetheless evaluate the propriety of lifting the stay under the circumstances.

In re Sonnax Indus., 907 F.2d at 1288. Courts have traditionally used multifactor tests to

determine whether cause exists to modify or lift the automatic stay. The Second Circuit

has used a twelve-factor lift stay test articulated in the Sonnax case.[1] In re Sonnax sets

forth a list of twelve factors that should be considered when deciding whether the stay

should be lifted to allow litigation against a debtor to continue in another forum:

> (1) whether relief would result in a partial or complete resolution of the
> issues; (2) lack of any connection with or interference with the bankruptcy
> case; (3) whether the other proceeding involves the debtor as a fiduciary;
> (4) whether a specialized tribunal with the necessary expertise has been
> established to hear the cause of action; (5) whether the debtor's insurer has
> assumed full responsibility for defending it; (6) whether the action
> primarily involves third parties; (7) whether litigation in another forum

---

[1]    In lieu of applying the twelve-factor test used in this Circuit for almost two decades, Palmer seeks to
have this Court consider only three factors used in the Seventh Circuit by directing the Court's
attention to In re Fernstrom Storage & Van Co., 938 F.2d 731 (7th Cir. 1991).

> would prejudice the interests of other creditors; (8) whether the judgment
> claim arising from the other action is subject to equitable subordination;
> (9) whether movant's success in the other proceeding would result in a
> judicial lien avoidable by the debtor; (10) the interests of judicial economy
> and the expeditious and economical resolution of litigation; (11) whether
> the parties are ready for trial in the other proceeding; and (12) impact of
> the stay on the parties and the balance of harms.

Id. at 1286.  See also In re Curtis, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984).  All

twelve factors will not be relevant in every case, Mazzeo v. Lenhart (In re Mazzeo), 167

F.3d 139, 143 (2d Cir. 1999), nor must the Court afford equal weight to each of the

twelve factors.  See Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship (In re Burger Boys,

Inc.), 183 B.R. 682, 688 (S.D.N.Y. 1994).  The relevant factors with regard to this

Motion are (i) whether the Debtors' insurer has assumed full responsibility for defending

them; (ii) whether litigation in another forum would prejudice the interests of other

creditors; (iii) whether the parties are ready for trial in the other proceeding; (iv) lack of

any connection with or interference with the bankruptcy case; and (v) impact of the stay

on the parties and the balance of harms.  As demonstrated below, Palmer has not, and

indeed cannot, carry the burden of establishing that sufficient cause exists to lift the

automatic stay.  Moreover, to the extent that Palmer is successful with its appeal and

provided that the Court approves the Lift Stay Procedures, Palmer will have another

outlet to liquidate her case.  Accordingly, the Motion should be denied.

I.      The Debtors And Their Creditors Will Be Prejudiced
        Because The Debtors' Insurer Has Not Assumed Full
        Responsibility For Defending The Case

                15.      Although the Debtors have insurance coverage for the Palmer suit,

a judgment would nonetheless prejudice the estate.  As previously disclosed in the

Debtors' motion for order authorizing renewal of insurance coverage (Docket No. 1559),

the Debtors are required under their prepetition insurance program for general liability,

product liability, and automobile liability claims to pay their insurers amounts that the

Debtors are or may be obligated to pay to other parties but which are paid by their

insurers.  Under the various liability policies, the Debtors have deductible limits,

depending on the date and nature of the claim, ranging from $1 million to $5 million.

Therefore, the Debtors are obligated to pay any portion of a claim that falls within the

applicable deductible limit.

16.     On January 9, 2006, this Court authorized the Debtors to assume

the various insurance agreements under which this obligation arises.  Subsequently, the

Debtors in fact assumed these agreements.  Accordingly, if the Debtors' insurer makes

any payments directly to Palmer that fall within the Debtors' deductible, the Debtors'

insurers would have administrative expense priority claims against the Debtors' estates

with respect to such payments.

II.     The Debtors Are Not Prepared For Trial

17.     As discussed above, although the Palmer Appeal is in advanced

stages, if the Michigan Court of Appeals were to reverse the trial court's decision, the

case would once again become active.  Modifying the automatic stay to allow Palmer to

proceed with the litigation against the Debtors would require the Debtors and their

counsel to invest in potentially time-consuming and costly litigation.

III.    Lifting The Stay Would Unnecessarily Interfere
        With The Debtors' Restructuring Efforts

18.     The Debtors and their estates would be prejudiced if the automatic

stay were modified now to permit the Palmer litigation to proceed.  The Debtors are in

10

the midst of critical negotiations with their unions and GM to address numerous issues

regarding U.S. legacy liabilities and operational restrictions driven by collectively

bargained agreements.  In furtherance of these efforts, and as stated above, the Debtors

commenced the prosecution of their motion under sections 1113 and 1114 of the

Bankruptcy Code seeking authority to reject U.S. labor agreements.  In addition, the

Debtors intend to prosecute their motion to reject unprofitable supply contracts with GM.

        19.     Allowing Palmer to proceed with its litigation, other than to

complete the appeal process that is already under way, would distract the Debtors from

these critical issues and would thus cause significant prejudice to the Debtors.  In re U.S.

Brass Corp., 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994) ("When balancing the

hardships in lifting the stay, the most important factor is the effect of such litigation on

the administration of the estate; even slight interference with the administration may be

enough to preclude relief.") (citing In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984));

see In re Comdisco, 271 B.R. at 280 (finding that "it would be irresponsible and

subversive of the purpose of the automatic stay to allow any resources and attention of

the Debtor to be diverted to other matters not directly related to its reorganization").

Denying Palmer's Motion is consistent with one of the purposes of the automatic stay,

which is to allow the Debtors breathing space.  See, e.g., In re Enron Corp., 300 B.R. at

211 (finding that "'[t]he purpose of the automatic stay is to give the debtor a breathing

spell from creditors'") (citations omitted).

        20.     In addition to the reasons set forth above, the Debtors are parties to

more than two hundred active and threatened lawsuits throughout the country.  Lifting the

automatic stay for Palmer presumably would encourage other parties with litigation

claims against the Debtors, even those in the preliminary stages of litigation, to seek similar relief, thereby forcing the Debtors to defend against dozens of motions to modify the automatic stay.  This result would be contrary to the purpose of section 362 of the Bankruptcy Code.  See, e.g., LTV Steel Co. v. Bd. of Educ. (In re Chateaugay Corp.), 93 B.R. 26, 30 (S.D.N.Y. 1988) (noting that automatic stay is intended to prevent "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts"); Midlantic Nat'l Bank, 474 U.S. at 503; In re Drexel Burnham Lambert Group, Inc., 113 B.R. at 837.  Therefore, Palmer should not be allowed to lift the stay and proceed with its litigation against the Debtors, other than to complete its pending appeal.

IV.    The Balance Of The Harms Weighs In Favor Of
       Denying The Palmer's Motion

          21.    In stark contrast to the substantial prejudice that the Debtors would suffer, Palmer cannot show that it would be prejudiced if the Motion were denied. Palmer will face only the ordinary delay that all creditors face in complex Chapter 11 cases.  See In re Comdisco, 271 B.R. at 277–80 (finding that "the automatic stay almost always delays litigants … [t]hat, after all, is its purpose, and the reason they call it a 'stay'").  Palmer simply would experience the creditor delay that is inherent in the bankruptcy process, and is an unavoidable – and intended – consequence of the automatic stay.[2]

--------

[2]    The Debtors attempted to consensually resolve the Motion and offered to enter into a Stipulation and Agreed Order (the "Proposed Stipulation") whereby, with this Court's consent, the automatic stay would be modified for the sole and limited purpose of allowing Palmer to prosecute to decision the Palmer Appeal.  Under the proposed stipulation, Palmer's rights to seek further relief from the

Conclusion

22.    A balancing of the competing interests of the Debtors and Palmer

demonstrates that the automatic stay should not be modified to permit Palmer to proceed

with the Palmer litigation other than to complete the pending appeal.  Palmer has failed to

meet the burden of establishing that sufficient cause exists to lift the automatic stay.  For

the reasons set forth above, the automatic stay should be lifted for the <u>sole</u> and <u>limited</u>

purpose of allowing Palmer to prosecute the Palmer Appeal.

Notice

23.    Notice of this Objection has been provided in accordance with the

Seventh Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P.

2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain

Notice, Case Management, And Administrative Procedures, entered by this Court on May

19, 2006 (Docket No. 3824).  In light of the nature of the relief requested, the Debtors

submit that no other or further notice is necessary.

Memorandum Of Law

24.    Because the legal points and authorities upon which this Objection

relies are incorporated herein, the Debtors respectfully request that the requirement of the

service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the

Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District

of New York be deemed satisfied.

---

automatic stay would be preserved in full, and the Debtors would reserve all rights to object to any
further relief requested by Palmer.  Palmer rejected the Proposed Stipulation.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) denying the Motion and (ii) granting the Debtors such other and further relief as is just.

Dated: New York, New York
June 9, 2006

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s/ John Wm. Butler, Jr.
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

14