

**LEGAL COST CONTROL**
*Legal Cost Solutions*
*Accounting Cost Solutions*

## STATEMENT OF ENGAGEMENT

This Statement of Engagement, dated June 1, 2006, is between the Delphi Fee Committee (the "Committee") and Legal Cost Control, Inc. ("LCC") and includes the following terms and conditions:

1. **TERM**: The term of this Engagement shall be for the term of the bankruptcy or liquidation proceedings.

2. **COMMENCEMENT OF TERM**: The Term shall commence upon signature by all parties to this Statement of Engagement.

3. **TERMINATION**: This Engagement shall terminate upon the filing of final orders referable to all Fee Applications, **or** upon completion and/or submission of LCC's Final Reports, whichever occurs first.

4. **SERVICES TO BE RENDERED BY LCC**: Pursuant to this Engagement, LCC shall provide the services set forth in its Presentation of June 1, 2006 (the "Delphi Overview"). The work of LCC for the Committee as encompassed by this Statement of Engagement shall be to provide the Committee with Expert Reports and data analysis of the nature explained in the presentation to the Committee made by LCC on June 1, 2006 *In re Delphi Corporation, et al.,* Case No. 05-44481 (RDD) (Bankr. S.D.N.Y.) (the "Delphi Case"), to analyze and report to the Committee on the compliance or non-compliance of those fee applications with the requirements of the applicable provisions of the United States Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, the United States Trustee Guidelines, and the Local Rules and General Orders of the United States Bankruptcy Court for the Southern District of New York, in order to aid the Committee in its work of advising the Bankruptcy Court presiding over the Delphi Case (the "Bankruptcy Court") in aid of the Bankruptcy Court's determination of amounts of compensation and reimbursement of expenses of the professionals and committee members in the Delphi Case that are reasonable and appropriate. In furtherance of this work and the work of the Committee, John J. Marquess, Esquire of LCC shall apply for admission in this case, *Pro Hac Vice*.

**EXHIBIT A**

5. <u>LCC'S FEE FOR SERVICES RENDERED</u>: LCC's Fee shall be Eight-Tenths of One Percent (.80%) of all fees and expenses submitted by the Professionals in the Delphi case.

   LCC shall submit its invoices for services rendered to the Court, Committee and/or Debtor pursuant to the Administrative Order establishing procedures for Interim Compensation of Professionals in this case. LCC's Fee shall be an all-inclusive Fee and shall include not only the services set forth in Paragraph 4 but also all attendant costs incurred by LCC (office support, mail/postage, photocopying, travel, expert testimony, etc.).

6. <u>LAW GOVERNING</u>: This engagement shall be governed by and construed in accordance with the laws of the State of New York.

7. <u>ENGAGEMENT BINDING</u>: This Engagement shall be binding upon the successors and assigns of the parties hereto.

AGREED TO AND ACCEPTED:

**LEGAL COST CONTROL, INC.**                **DELPHI FEE COMMITTEE**

_____                     _____
BY: John J. Marquess                          BY:
    President                                     Chair

DATE: 6-8-06                                  DATE: June 8, 2006

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In Re: | : | Chapter 11 |
| | : | |
| DELPHI CORPORATION | : | Case Number: |
| et al., | : | 05-44481 (RDD) |
| | : | |
| Debtors. | : | |

## VERIFIED STATEMENT PURSUANT TO BANKRUPTCY RULE 2014(a)

**STATE OF NEW JERSEY** §
§
**COUNTY OF CAMDEN** §

LEGAL COST CONTROL, INC., ("LCC"), is being considered for appointment in the above-captioned case ("Delphi") as the fee examiner. This Verified Statement is filed pursuant to Bankruptcy Rule 2014 and sets forth LCC's connections with the Debtor, creditor, parties in interest, attorneys, accountants, United States Trustee and the Office of the United States Trustee with respect to the above-captioned case.

1. I, John J. Marquess, am a director and officer of LCC. After thorough investigation, I believe that LCC, its attorneys, agents, servants, workers and other personnel employed thereby do not have any interest adverse to the Debtor, and that LCC is disinterested and competent to perform the tasks of fee examiner. No promises have been received by LCC or any shareholders thereof as to compensation in connection with this case other than in accordance with the provisions of the Bankruptcy Code. LCC has no agreement with any other entity to share with such entity any compensation received by LCC other than in accordance with the Bankruptcy Code.

1

# EXHIBIT B

2.   To the best of my knowledge, information and belief, LCC, its shareholders, agents, workers, servants, employees and counsel have no connection with the Debtor, the creditors in this case, other parties in interest, their respective attorneys and accountants, the United States Trustee or any person employed in the Office of the United States Trustee and, in support thereof, states the following:

   a.   Current Representation In Connection With The Delphi Bankruptcy Or Creditors Or Parties In Interest

   LCC is not presently representing any creditors or other parties in interest in connection with the Delphi Bankruptcy or in any matters relating to the Delphi Bankruptcy.

   b.   Past Representation In Connection With The Delphi Bankruptcy Or Creditors Or Parties In Interest

   LCC has never represented any creditors or other parties in interest in connection with the Delphi Bankruptcy or in any matters relating to the Delphi Bankruptcy.

   c.   Current Representation Of Creditors And/Or Parties In Interest In Matters Unrelated To The Delphi Bankruptcy

   LCC does not currently represent creditors or parties in interest in matters unrelated to the Delphi Bankruptcy.

3.   Neither LCC nor any of its shareholders, agents, workers, servants, employees or counsel hold or own any claim or equity security in the Debtor.

4.   In light of all of the above, I believe that neither LCC nor any of its shareholders, officers, agents, servants, workers, employees or counsel represents any interest materially adverse to the debtor or to the debtor's estate or the matters to which LCC is seeking to be employed. To the best of my knowledge and

2

belief, LCC is a "disinterested person," as that term is defined in Section 101(14) of the Bankruptcy Code.

5.  If I discover any other matter, which could arguably create a conflict of interest, or any information contrary to or in addition to that set forth herein, I will immediately disclose such information to the Court and to all parties in interest.

6.  LCC is a company comprised of legal, accounting and other professionals with expertise in legal and professional cost and litigation management. LCC's personnel have provided services to courts, corporations, governmental entities and insurance carriers throughout the United States and Europe and have assisted those parties in determining the reasonableness and necessity of fee billings in bankruptcy matters, accounting matters, transactional matters, and litigation. LCC's staff is the most experienced in legal cost management in the country. The company's core attorneys and accountants, analysts, legal and accounting assistants and information technology teams all have over thirteen years experience in the field.

7.  LCC personnel worked as Fee Auditors in the following representative cases: Enron (Southern District of New York); Adelphia Communications Corp. (Southern District of New York; still engaged); WorldCom, Inc. (Southern District of New York); National Benevolent Association of Christian Churches (Western District of Texas); AmeriServe (Delaware); NTL Communications, Inc. (Southern District of New York); WRT (Eastern District of Louisiana); Exide (D.C.); and on behalf of the Resolution Trust Corporation in the RTC litigation

3

(various jurisdictions). In those cases, over $3 Billion in legal fees were subject to review and evaluations.

8. The names and a brief description of the experience of the key LCC personnel who may be conducting the fee examination in the Delphi Bankruptcy are:

    A. *JOHN J. MARQUESS, ESQUIRE.* Mr. Marquess is an experienced litigator, who is a member of the State Bar of New Jersey and Pennsylvania and is admitted to both the State and Federal Courts therein. Mr. Marquess has been the expert fee auditor in many of the largest fee dispute cases in United States history, including the following:

- Enron Bankruptcy - $725 Million in legal and professional fees;
- Adelphia Bankruptcy – $400 Million in legal and professional fees;
- WorldCom Bankruptcy - $350 Million in legal and professional fees;
- National Benevolent Assn.-Christian Churches Bankruptcy - $40 Million in legal and professional fees;
- AmeriServe Bankruptcy - $30 Million in legal and professional fees;
- NTL Communications, Inc. Bankruptcy - $14 Million in legal and professional fees;
- WRT Bankruptcy - $36 Million in legal and professional fees;
- Mylan Anti-trust Litigation - $21.4 Million in legal fees;
- Microsoft Anti-Trust Litigation - $12 Million in legal fees;
- Kia Class Action Litigation - $6 Million in legal fees;
- LL&E v. Online Litigation - $1.5 Million in legal fees;
- Motorola Ground Water Contamination - $30 Million in legal fees.
- Shiley Heart Valve Litigation - $100 Million in legal fees.
- Ashland Oil Toxic Tort Case - $44 Million in legal fees.
- Dow Corning Breast Implant Litigation - $250 Million in legal fees.
- OCF/C&F Asbestos Litigation – $650 Million in legal fees.
- Center for Claims Resolution Asbestos Litigation - $100 Million in legal fees.
- UV Industries Litigation - $50 Million in legal fees.
- UTC Industries Litigation - $50 Million in legal fees.
- RTC Litigation - $500 Million in legal fees.

4

Mr. Marquess has also served as Guest Lecturer and Instructor to the following entities:

- American Bar Association
- Risk Insurance Managers Society (RIMS)
- Large Law Department Council (LL.D.)
- American Insurance Association (AIA)
- Institute of London Underwriters
- National Association of Mutual Insurance Companies (NAMIC)
- Executive Enterprises, Inc.
- International Quality and Productivity Center
- San Francisco Claim Council
- Pennsylvania Association of Mutual Insurance Companies (PAMIC)
- Oregon State Bar
- Philadelphia Bench-Bar
- "Ethics of Billing," PA Bar MCLE
- Association of American Law Schools (A.A.L.S.)
- New Jersey Bankers Association
- Association of Georgia Defense Council
- American Forest and Paper Association

Mr. Marquess has also been the leading commentator on legal cost control issues to the print media and has been featured in the following publications:

- ABA Journal
- The Wall Street Journal
- The New York Times
- The Washington Post
- Forbes Magazine
- Fortune Magazine
- Inc. Magazine
- "Claims" Magazine
- Business Insurance Magazine
- The Philadelphia Inquirer
- Risk Management Magazine
- The National Law Journal

B. *CYNTHIA D. MORRIS, ESQUIRE.*

Ms. Morris has been a member of the California Bar since 1986. She began her legal career in San Diego, CA practicing with a law firm in civil litigation. Her practice included both state and federal court litigation with an emphasis on legal and medical malpractice. Ms. Morris participated in all phases of litigation and was also involved in appellate practice.

5

In addition to private practice, Ms. Morris worked in a corporate law department in Portland, Oregon. She provided legal opinions, drafted and reviewed contracts, monitored litigation and monitored legislative and regulatory changes.

From private practice, Ms. Morris transitioned to a career in legal and professional cost management. She has trained and assisted clients in managing and controlling legal costs, has conducted on-site audits of law firms, training seminars for clients, negotiated settlements, and has testified on behalf of clients in federal court and in state court arbitrations. Ms. Morris has also organized and managed large projects.

C. *ROSEMARY T. PATRICELLI, ESQUIRE.*

Ms. Patricelli is licensed to practice in Pennsylvania and New Jersey since 1986. Her initial career focus was representing the interests of health care providers, medical device manufacturers and pharmaceutical companies. In 1990, she developed a subspecialty in legal services management, assisting clients in establishing a reliable framework for the integration and use of, both internal and outsourced legal services. She also created information management and auditing programs and provided consulting services in these and related areas to corporations based both domestic and overseas.

Ms. Patricelli has testified as an expert witness, published numerous articles and has been a frequent guest speaker on the management of legal outsourcing, performance measurement and quality control.

D. *MARY MCGINNIS, ESQUIRE.*

In addition to her role as an attorney, Ms. McGinnis possesses an M.B.A. Ms. McGinnis worked on the Enron, WorldCom and NBA Bankruptcies, and was the lead auditor in the Microsoft Anti-Trust Litigation.

E. *NANCY J. MCCAULEY, ESQUIRE*

Ms. McCauley has been with LCC since its inception. Her practice specialties were commercial transactions and ERISA matters. She is admitted to practice in state and federal courts in New Jersey and Pennsylvania.

F. *DENNIS J. KELLY, CPA.*

Mr. Kelly has 32 years accounting experience with government and corporate auditing work, and has worked on a number of bankruptcies for LCC, including Enron and WorldCom.

6

G.  *PATRICK J. WOODS.*

Mr. Woods served as fee auditor in a number of large cases. He has been a key manager in the Enron, WorldCom, Adelphia, NTL and AmeriSeve cases, as well as the Microsoft Anti-Trust Litigation. As Corporate Vice President, Mr. Woods is responsible for all Operations and Quality Control. Prior to entering the legal cost management field in 1989, Mr. Woods served for 15 years as Special Statistical Studies Manager for the Social Security Administration.

H.  *KEITH LIMPER.*

A former U.S. Marine, Mr. Limper has 14 years experience in legal cost containment systems, software and networks. Mr. Limper has been integral to the development of LCC's web-based applications. His "hands-on" applications include the Enron, WorldCom, Adelphia, NBA bankruptcies as well as LCC's corporate matters.

I.  *JENNIFER BATSON*

Ms. Batson has an M.S. degree and extensive professional fee auditing experience since 1993. Her area of professional expertise is management report creation for web-based systems.

9.      LCC employs other professionals and paraprofessionals who may from time to time be asked to assist in the Delphi review. However, those individuals identified in Paragraph 8 will be primarily responsible for the fee review.

Further, affiant sayeth not.

DATED: June 1, 2006

_____
JOHN J. MARQUESS