Hearing Date and Time: June 19, 2006 at 10:00 a.m.
Objection Deadline: June 13, 2006 at 4:00 p.m.

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
Glenn M. Kurtz (GK-6272)
Gerard Uzzi (GU-2297)
Douglas P. Baumstein (DB-1948)

Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Thomas E Lauria (Admitted *Pro Hac Vice*)
Frank L. Eaton (FE-1522)
Ileana A. Cruz

ATTORNEYS FOR APPALOOSA
MANAGEMENT L.P., WEXFORD CAPITAL LLC,
LAMPE CONWAY & CO., LLC, HARBINGER CAPITAL
PARTNERS, LLC AND MARATHON ASSET MANAGEMENT LLC

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| Delphi Corporation, et al. | Case No. 05-44481 (RDD) |
| Debtors. | Jointly Administered |

**OBJECTION OF THE AD HOC EQUITY COMMITTEE TO
THE DEBTORS' SETTLEMENT PROCEDURES MOTION**

TO:   THE HONORABLE JUDGE ROBERT D. DRAIN,
      UNITED STATES BANKRUPTCY JUDGE

Appaloosa Management L.P., with and through certain of its affiliates

(collectively, "Appaloosa"), Wexford Capital LLC, with and through certain of its affiliates

(collectively, "Wexford"), Lampe Conway & Co., LLC, with and through certain of its affiliates

MIAMI 659969 v5 (2K)

(collectively, "Lampe"), Harbinger Capital Partners LLC, with and through certain of its affiliates (collectively, "Harbinger"), and Marathon Asset Management LLC, with and through certain of its affiliates (collectively, "Marathon," and together with Appaloosa, Wexford, Lampe and Harbinger, each a "Shareholder" and collectively, the "Ad Hoc Equity Committee"),[1] by and through their undersigned counsel, hereby file this objection (the "Objection") to the Debtors' Motion for Order Under 11 U.S.C. §§ 363, 502, and 503 and Fed. R. Bankr. P. 9019(b) Authorizing Debtors to Compromise or Settle Certain Classes of Controversy and Allow Claims Without Further Court Approval [Docket No. 4037] (the "Settlement Procedures Motion"). In support of this Objection, the Ad Hoc Equity Committee respectfully represents as follows:

## PRELIMINARY STATEMENT

1.  While the Ad Hoc Equity Committee recognizes that some form of settlement procedures makes sense in large chapter 11 cases from a perspective of judicial economy, the Settlement Procedures Motion raises numerous concerns. The scope of the relief requested goes well beyond that provided by Rule 9019(b) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") which limits a debtor's settlement authority to a "class or classes of controversies." Here, the Debtors are seeking inordinately broad settlement authority before the July 31, 2006 bar date for filing proofs of claim against the Debtors in these cases (the "Bar Date") and without any meaningful analysis of the type and amounts of claims being asserted against the Debtors. In short, the Debtors are seeking authority to settle individual claims ranging up to $20 million in a vacuum, without providing notice to the Ad Hoc Equity Committee or the official committee of equity interest holders (the "Equity Committee"), and without providing this Court with information sufficient to determine the substance or fairness of

---

[1] The Ad Hoc Equity Committee represents approximately 21% of Delphi's issued and outstanding shares.

those settlements as required under Bankruptcy Rule 9019. The relief is clearly outside the limited scope of class or classes of controversies provided for in Bankruptcy Rule 9019(b). Rather than identifying the particular class or classes of controversies they wish to settle, the Debtors rely solely on the dollar amounts of potential claims. Without identification of classes of claims and a calculation of appropriate settlement thresholds, the relief requested in the Settlement Procedures Motion is too vague to be granted.[2]

2. Moreover, carte blanche authority to settle potentially hundreds of millions of dollars of claims without adequate notice to parties in interest and further oversight of this Court is of particular concern to the Ad Hoc Equity Committee given the Debtors' repeated messages that the company is "hopelessly insolvent" and that the shareholders are "out of the money." Due process requires that all parties in interest receive adequate notice, not just the United States trustee, the official committee of unsecured creditors (the "Creditors Committee") and the Debtors' prepetition and postpetition lenders (who are the only parties to whom the Debtors propose providing notice under the proposed settlement procedures). At a minimum, notice should be provided to the Ad Hoc Equity Committee and the Equity Committee with a full and fair opportunity to challenge the propriety of any proposed settlement.

3. Accordingly, the Settlement Procedures Motion should be denied.

## BACKGROUND

4. On October 8, 2005, each of the Debtors filed respective voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New

---

[2] The Ad Hoc Equity Committee would not necessarily oppose the granting of settlement authority over well defined classes of claims below a certain monetary threshold. The Debtors, however, have not provided the Ad Hoc Equity Committee with information sufficient to undertake the appropriate analysis regarding the potential impact of any such classes of claims on the Debtors' estates, including, among other things, information regarding the aggregate amount of claims under $1 million.

York (the "Court"), thereby commencing the above-captioned jointly administered chapter 11 cases (collectively, the "Cases"). The Debtors continue to operate their businesses as debtors and debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5.  On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed the Creditors' Committee.

6.  On March 30, 2006, the Court entered an order directing the U.S. Trustee to appoint the Equity Committee [Docket No. 3024]. On April 28, 2006, the U.S. Trustee filed the Notice of Appointment of Committee of Equity Security Holders (the "Notice of Appointment") [Docket No. 3503] appointing a 7-member Equity Committee.

## OBJECTION

A.  **Rule 9019 Does Not Provide Support for the Blanket Settlement Authority Sought By the Debtors**

7.  Through the proposed settlement procedures (the "Proposed Procedures"), the Debtors seek to vest themselves with settlement powers that go well beyond the grant of authority contemplated under Bankruptcy Rule 9019(b), which provides that "the court may fix *a class or classes of controversies* and authorize the trustee to compromise or settle controversies *within such class or classes* without further hearing or notice." Fed. R. Bankr. P. 9019(b) (emphasis added). Here, the Debtors have not provided this Court with any specific information regarding the "class" or "classes of controversies," which they seek to resolve. Rather, they have merely requested blanket authority to resolve *all claims* under a certain monetary threshold prior to the passing of the Bar Date or providing this Court with any meaningful analysis of the aggregate amounts and classes of claims the Debtors intend to settle under the Proposed Procedures.

8. The Debtors' Proposed Procedures seek authority to, among other things, (i) settle all general unsecured prepetition claims for less than $1 million <u>without</u> notice to any parties in interest and <u>without</u> further approval of this Court; (ii) settle all such claims for any amount between $1 million and $20 million <u>without</u> Court approval and with only limited notice to certain "Notice Parties,"[3] conspicuously excluding both the Ad Hoc Equity Committee and the Equity Committee; (iii) settle disputes related to prepetition secured or priority claims, administrative expense priority claims, or other postpetition claims for any amount less than $500,000 <u>without</u> notice to any parties in interest and <u>without</u> further approval of this Court; and (iv) settle disputes related to prepetition secured or priority claims, administrative expense priority claims, or other postpetition claims for any amount between $500,000 and $10 million <u>without</u> Court approval and with only limited notice to the Notice Parties (and not the Ad Hoc Equity Committee or the Equity Committee). There is simply no legal basis for granting such expansive settlement authority in these Cases.

9. Bankruptcy Rule 9019 provides a structural framework for the settlement of claims. Rule 9019(a) and cases interpreting its provisions provide guidance as to the basic procedural protections that must be afforded to parties, as well as the factual determinations that must be made, prior to the approval of any particular compromise or settlement. Specifically, Rule 9019(a) provides that "[o]n motion by the trustee and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, the debtor, and indenture trustee as provided in Rule 2002 and to any other entity as the court may direct." Fed. R. Bankr. P. 9019(a). Courts interpreting Rule 9019(a) have stressed

---

[3] The "Notice Parties" are (i) the Office of the United States Trustee for the Southern District of New York, (ii) counsel for the Creditors' Committee, (iii) counsel for the agent under the Debtors' prepetition credit facility, and (iv) counsel for the agent under the Debtors' postpetition credit facility. <u>See</u> Settlement Procedures Motion ¶ 28.

that "[t]he obligation of the bankruptcy court is to determine whether a settlement is in the best interest of an estate before approving it." Nellis v. Shugrue, 165 B.R. 115, 121 (S.D.N.Y 1994) (citing In re Drexel Burnham Lambert Group, Inc., 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991)).

10.    In determining whether a proposed settlement submitted for approval under Rule 9019(a) is in the best interest of the estate, courts consider: (i) the probability of success in the litigation; (ii) the difficulty in collecting after obtaining a judgment in the litigation; (iii) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (iv) the interest of creditors and stockholders and a proper deference to their reasonable views of the settlement. Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968); Nellis, 165 B.R. at 121-22. With regard to the fourth factor, while the desires of creditors are not necessarily binding, a court "should [nevertheless] carefully consider the wishes of the majority of the creditors." In re Foster Mortgage Corp., 68 F.3d 914, 917 (5th Cir. 1995) (quoting In re Transcon. Energy Corp., 764 F.2d 1296 (9th Cir. 1985)). Indeed, courts have stressed that "a bankruptcy court may not ignore creditors' overwhelming opposition to a settlement." Id. at 918; see also Lloyd, Carr & Co., 617 F.2d 882, 889 (1st Cir. 1980) ("We have found no precedent for a compromise . . . actively opposed by the major creditors and affirmatively approved by none.").

11.    The same basic factors must be considered by a court in determining whether expansive settlement authority (governing multiple claims) will be vested in a debtor pursuant to Bankruptcy Rule 9019(b). Rule 9019(b), like 9019(a), provides debtors with authority to enter into particular settlements, but does so on a much larger scale. Rule 9019(b) contemplates that, for certain like claims ("class or classes of controversies") judicial and debtor economy permit courts to give debtors settlement authority that would prevent the wasteful exercise of seeking

repeated authority for the resolution of what, in essence, is the same controversy. Fed. R. Bankr. P. 9019(b). The Debtors cite no authority to suggest that a request for settlement authority under Rule 9019(b) can be made without any factual support. See Boyd v. N. End Auto Sales, Inc. (In re Check Reporting Servs., Inc.), 137 B.R. 653, 658 (Bankr. W.D. Mich. 1992) (noting that courts approving settlements have "a duty to determine whether [such] settlements . . . are reasonable before approving them"); see also cf. In re Texaco, Inc., 84 B.R. 893, 901 (Bankr. S.D.N.Y. 1988) ("The duty of a bankruptcy judge to reach an 'intelligent, objective and educated evaluation' of settlements cannot be carried out absent factual background . . . . In approving compromises the court must act independently and for the benefit of all parties in interest.").

12.     Bankruptcy Rule 9019(b) does not provide for an unfettered delegation of court authority to a debtor without any oversight (other than a dollar limitation). The statute simply provides authority to settle a "class" or "classes" of controversies, which are commonly understood in litigation to involve, at a minimum, common questions of law or fact. See Fed. R. Civ. P. 23(a). The Debtors' suggestion that a "class" can include all claims under a certain dollar amount, not only runs contrary to this well-established principle, but also serves to abrogate the judicial oversight contemplated under Rule 9019.

13.     The authority to settle preference actions within certain parameters provides an appropriate example of the use of Rule 9019(b). See, e.g., Check Reporting, 137 B.R. at 656 (order allowing debtor to settle claims under Rule 9019(b) was limited to pending preferential transfer adversary proceedings and restricted settlements to no less than 25% percent of the amount of the judgment requested by the trustee in the proceeding being settled); see also  See 10 Collier on Bankruptcy ¶ 9019.03 (Alan N. Resnick & Henry J. Sommer, eds. 15th ed. rev. 2005) (noting that Rule 9019(b) may be used, for example, to resolve settlements in numerous

preference actions "as long as the compromise amount is not less than a certain percentage of the recovery sought in the complaint.")

14. The Debtors have not identified any particular class or classes of controversies which they seek to settle through their Proposed Procedures. Rather, the Debtors intend to settle undefined claims and controversies with little, if any, notice, and with no further order of this Court, so long as such settlements do not exceed certain monetary thresholds. This proposed use of Bankruptcy Rule 9019(b) is materially more expansive than the plain text of the rule, as well as the case law interpreting its provisions, which clearly contemplate a more restricted view of what comprises a "class" of controversy.

15. Although there is no basis for suggesting that Bankruptcy Rule 9019(b) (which grants authority to settle multiple claims) contemplates a lesser showing than Bankruptcy Rule 9019(a) (which grants authority to settle a single claim or controversy), the Debtors so argue. Specifically, the Debtors have raised two arguments in support of their extraordinarily broad settlement procedures: (a) under Rule 9019(b), a party need only show that the "proposed procedure" is reasonable prior to obtaining approval from the Bankruptcy Court, Settlement Procedures Motion at ¶34 (citing Check Reporting, 137 B.R. at 656-57); and (b) the Proposed Procedures closely mirror the procedures that were approved by the United States Bankruptcy Court for the Southern District of New York in In re WorldCom, Inc., jointly administered under Case No. 02-13533 (Bankr. S.D.N.Y. Oct. 8, 2002), and, as such, are proper. Neither argument is persuasive.

16. The decision in Check Reporting does not support the proposition that Bankruptcy Rule 9019(b) requires only "that the proposed procedure be reasonable." Indeed, in that case, the United States Bankruptcy Court for the Western District of Michigan did not

discuss the specific requirements of Bankruptcy Rule 9019(b) at all; it merely upheld the enforceability of a settlement that had been reached pursuant to a court order, which vested the chapter 7 trustee with limited authority under Rule 9019(b) to settle a very specific class of controversies, i.e., "pending preferential transfer adversary proceedings for no less than twenty-five (25%) percent of the amount of the judgment requested by the Trustee in the proceeding which is settled." Id. at 656.  Nothing in Check Reporting supports the blanket settlement authority sought by the Debtors here.  Indeed, the opposite is true; Check Reporting illustrates the proper application of Rule 9019(b) to a narrowly defined class of controversies (i.e., preference actions) within a specified band of settlement ranges (i.e., more than 25%).  The Debtors have not identified any such class in their Settlement Procedures Motion.  Moreover, the Debtors have not provided any evidence to support their proposed test "that the proposed procedures be reasonable."  Rather, they merely state in conclusory fashion that they will adopt "internal approval procedures," without providing any factual support or detail regarding those procedures whatsoever.  See Settlement Procedures Motion ¶ 28.

17.    Similarly, while the Debtors have argued that the court in WorldCom approved procedures similar to those at issue here, in reality, the order that was approved in that case stopped far short of granting the unrestricted settlement authority requested by the Debtors' motion. In particular, although the court in WorldCom did not require notice to be provided for settlements of less than $1 million, its order under Bankruptcy Rule 9019(b) made plain that all settlements greater than or equal to $1 million would be subject to notice and, upon the filing of any objection, could be approved only upon renegotiation by the debtors or pursuant to a motion under Rule 9019.[4]  Additionally, in WorldCom, all settlements greater than or equal to $10 million required court approval and, consequently, the filing of a motion pursuant to Rule 9019.

---

[4]    A copy of the order entered in WorldCom is attached hereto as Exhibit A.

Importantly, recognizing that the settlement of claims under $1 million might well swamp a class of unsecured claims, the court's order required that, after the aggregate amount of settlements under $1 million reached $100 million, any settlement equal to or greater than $500,000 would require notice. Taken in their totality, the procedures approved in WorldCom provide a level of judicial oversight and protection that is conspicuously absent from the Debtors' Proposed Procedures.

18. Given the Debtors' view that the company is "hopelessly insolvent" and that equity is "out of the money," an unchecked delegation of settlement authority to the Debtors that could severely impact any potential recovery to equity holders, and which eviscerates the rights of parties in interest to, among other things, object to proofs of claim under section 502 of the Bankruptcy Code, is of great concern to the Ad Hoc Equity Committee. Without the benefit of the passing of the Bar Date and a comprehensive analysis of the types of claims measured by monetary thresholds, the Debtors have not provided the Court or creditors with information beyond the general monetary range of the claims they seek authority to settle. As such, it is impossible to derive even the most basic information about these disputes – i.e., whose suits and grievances are being settled; the subject of those disputes; the Debtors' likelihood of success; the amounts in controversy; and/or the amounts that individuals, or groups of individuals, might expect to receive under the settlement – much less to determine whether their settlement would be in the best interests of the Debtors' estates.

19. Under their Proposed Procedures, the Debtors would be vested with the authority to settle an array of undefined claims without any judicial oversight whatsoever. Under this regime, the Court would be incapable of determining whether any particular settlement was in the best interests of the Debtors' estates. This lack of judicial oversight creates obvious

concerns, particularly when considered in connection with the Debtors' repeated assurances that they are insolvent and that numerous parties in interest, including equity, may not obtain any recovery as a result. In the absence of more particularized information and identification of classes of controversies, i.e., a type of controversy that fits a basic fact pattern, as required by the statute, the Court should deny the Settlement Procedures Motion.

B.   **The Limited Notice Contemplated Under the Debtors' Proposed Settlement Procedures Denies Due Process to Parties in Interest**

20.   The Debtors' Settlement Procedures Motion seeks authority to settle certain claims without any notice or further approval of this Court, and to settle others with only limited notice to the Notice Parties on an expedited basis; any such restricted notice would severely undercut the due process rights of numerous parties in interest and should thus be denied.

21.   Even if one were to assume, *arguendo*, that the use of Bankruptcy Rule 9019(b) is appropriate here – which it is not – the limited group of Notice Parties contemplated under the Debtors' Proposed Procedures should be expanded to include the Ad Hoc Equity Committee, which includes Appaloosa, Wexford, Harbinger and Marathon, each of which hold debt securities issued by the Debtors, and, therefore, are creditors entitled to notice of any proposed settlement. See Fed. R. Bankr. P. 9019(a) ("Notice [of a compromise or settlement] shall be given to *creditors* . . . ." (emphasis added)). The interests of these parties as equity holders creates an additional basis for requiring notice.

22.   "[T]he clear purpose of Rule 9019 is to prevent the making of concealed agreements which are unknown to the creditors and unevaluated by the court." Masters, Inc. v. Saccurato, 149 B.R. 289, 292 (E.D.N.Y. 1992); see also Bramham v. Nevada First Thrift (In re Bramham), 38 B.R. 459, 466 (Bankr. Nev. 1984) ("If something more than mere adequate

protection of an allowed secured claim is contemplated by a stipulation, then all interested parties must be notified of what is proposed and given an opportunity to voice their objections.").

23. Courts have long noted that due process requires notice that is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of [an] action and [to] afford them an opportunity to present their objections." GAC Enters., Inc. v. Medaglia (In re Medaglia), 52 F.3d 451, 455 (2d Cir. 1995) (quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). To determine whether notice is reasonable, a court must consider the totality of the circumstances, including "whether notice was given in time for the aggrieved party to take meaningful action in response to the impending deprivation of rights." Bucurescu v. 190A Realty Corp. (In re Bucurescu), 282 B.R. 124, 132 (S.D.N.Y. 2002) (quoting In re Dinova, 212 B.R. 437, 443 (2d Cir. B.A.P. 1997)).

24. Given the indefinite scope of proposed settlements contemplated under the Settlement Procedures Motion, it is impossible to determine whether settlements entered into pursuant to the Debtors' Proposed Procedures will ultimately impact recoveries to equity holders in these Cases. Thus, in the absence of a comprehensive analysis of the claims being asserted in these Cases, the Ad Hoc Equity Committee respectfully submits that any settlement procedures adopted in these Cases include notice to both the Ad Hoc Equity Committee and the Equity Committee.

25. At present, given that the Debtors have failed to provide this Court with any information regarding the scope, type or aggregate amount of their prospective settlements, they have failed to provide any justification for the limited and extremely expedited notice period contemplated under the Settlement Procedures Motion. See Fed. R. Bankr. P. 9019(b) (providing for limited notice relating to compromises or settlements relating to a particular "class

or classes of controversies"). Thus, unless the Debtors provide this Court with evidence of "cause" justifying shortened notice for any proposed settlement going forward, all notifications pursuant to the Debtors' proposed settlement procedures should provide parties in interest with 20 days in which to respond. See Fed. R. Bankr. P. 9019(a), 2002(a), and 9006(c)(1).

## CONCLUSION

26.    For the reasons set forth herein, the Ad Hoc Equity Committee respectfully requests that the Settlement Procedures Motion be denied.

Dated:    June 13, 2006
         Miami, Florida

                                WHITE & CASE LLP
                                Glenn M. Kurtz (GK-6272)
                                Gerard Uzzi (GU-2297)
                                Douglas P. Baumstein (DB-1948)
                                1155 Avenue of the Americas
                                New York, New York 10036-2787
                                (212) 819-8200

                                Thomas E Lauria (Admitted *Pro Hac Vice)*
                                Frank L. Eaton (FE-1522)
                                Ileana A. Cruz
                                Wachovia Financial Center
                                200 South Biscayne Boulevard
                                Miami, Florida 33131
                                (305) 371-2700

                                By:  /s/ Frank L. Eaton
                                     Frank L. Eaton

                                ATTORNEYS FOR APPALOOSA
                                MANAGEMENT L.P., WEXFORD CAPITAL LLC,
                                LAMPE CONWAY & CO., LLC,
                                HARBINGER CAPITAL PARTNERS, LLC AND
                                MARATHON ASSET MANAGEMENT LLC