**Hearing Date: June 19, 2006**
                                **Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                        :
    In re                               :     Chapter 11
                                        :
DELPHI CORPORATION, et al.,          :     Case No. 05-44481 (RDD)
                                        :
                                        :     (Jointly Administered)
                    Debtors.        :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**DEBTORS' OBJECTION TO MOTION OF AUTOMOTIVE TECHNOLOGIES
INTERNATIONAL, INC. FOR RELIEF FROM AUTOMATIC
<u>STAY TO PROCEED WITH APPEAL OF PATENT LITIGATION</u>**

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this objection (the "Objection") to the motion of Automotive Technologies International, Inc. ("ATI") for relief from the automatic stay to proceed with appeal of patent litigation, dated June 1, 2006 (the "Motion") (Docket No. 3980). In support of the Objection, the Debtors respectfully represent as follows:

Preliminary Statement

1. By the Motion, ATI has asked the Court for relief from the automatic stay to adjudicate the ATI/BMW Appeal (defined below) to decision by the United States Court of Appeals for the Federal Circuit. This is the second time that ATI has requested this relief from this Court in the last three months. This appeal is in connection with an action commenced by ATI in calendar year 2001 in the United States District Court for the Eastern District of Michigan, alleging infringement of a patent relating to side impact sensors by Delphi, among others (the "Action"). Prior to the petition date, the district court trying the Action granted Delphi and the other defendants' motions for summary judgment and dismissed ATI's claims based on the court's finding of the invalidity of the patents at issue. ATI appealed the rulings in the Action to the Federal Circuit (the "ATI/BMW Appeal").

2. On March 22, 2006, ATI filed a motion for relief from the automatic stay, in which it requested, among other things, relief from the automatic stay to adjudicate the ATI/BMW Appeal (the "First Motion") (Docket No. 2928). At the time, however, ATI and Delphi, along with the approximately 25 other defendants in the underlying Action, had agreed to mediation as part of the Federal Circuit's voluntary

mediation program, and the Debtors and the parties were prepared to participate in the mediation process.  At the hearing on the First Motion, this Court denied the relief requested by ATI[1] related to the ATI/BMW Appeal and stated that "if the mediation falls apart, then you could come back and convince me that, at that point, the Federal Circuit should deal with [the ATI/BMW Appeal] as . . . an expert court and dispose of it."  Tr. Apr. 7, 2006, at 122:18-22.

        3.      Despite agreeing to mediate, ATI filed the present Motion on June 1, 2006, five days <u>before</u> the mediation was scheduled to take place.  Even more damaging, in the Motion, ATI negatively characterized the status of negotiations and expressed its prophetic conviction of the mediations failure.  The reality is that in the time between the hearing of the First Motion and the filing of this Motion, ATI did not contact the Debtors regarding this matter, except with regard to the scheduling of the June 6, 2006 mediation.  Despite the mediation not even having taken place when the Motion was filed, ATI made the following statements in the Motion that expressed ATI's intention only to resolve the pending dispute in litigation notwithstanding the upcoming mediation:

- "Accordingly, given the passage of time and the <u>utter stagnancy</u> of any resolution of the remaining appeal, ATI renews its request for lift stay."  Motion ¶ 1 (emphasis added).

- "As resolution has neither been approximated nor achieved, ATI renews its request for relief from the automatic stay to allow the ATI/BMI (sic) Appeal to advance before the Federal Circuit."  Motion ¶ 4.

- "By the passage of time <u>without progress toward resolution</u>, it has become <u>evident</u> that there is <u>no other means</u> of concluding the ATI/BMW Appeal."  Motion ¶ 6 (emphasis added).

---

[1]    The Court entered an order stating that to the extent the automatic stay applied, the parties were permitted to mediate the claims related to the ATI/BMW Appeal (Docket No. 3200).

- "Despite this Court's prior instruction to Delphi and to ATI to first seek to settle or otherwise resolve the ATI/BMW Appeal through channels discussed on the record at a hearing on April 7, 2006, <u>despite ATI's efforts</u>, there has been <u>no advancement</u> toward any resolution of the ATI/BMW Appeal."  Motion ¶ 17 (emphasis added).

4.  Again, these statements were made by ATI <u>before</u> the June 6, 2006 mediation. Not surprisingly, the June 6, 2006 mediation did not result in a resolution of the claims underlying the ATI/BMW Appeal.[2] ATI's statements in their Motion (filed five days before mediation commenced) is not consistent with a party mediating in good faith. Even if ATI had a good faith intention to mediate, the filing of the Motion, which contains the above-referenced statements, before the mediation even occurred was likely to create an environment between the parties that was not conducive to a successful mediation. Thus, this Court should not reward ATI's conduct by granting this discretionary relief.

5.  Moreover, the ATI/BMW Appeal will require significant management involvement and monetary resources to defend this matter. ATI seeks millions of dollars in damages from the Debtors and injunctive relief, prohibiting Delphi and others from using important vehicle safety devices. The ATI/BMW Appeal has not been briefed by any of the parties. As previously stated in the Debtors' response to the First Motion, the Debtors estimate the cost of briefing this ATI/BMW Appeal and defending at the Federal Circuit may exceed $200,000.

6.  It is important to note that if the Federal Circuit reverses the district court's summary judgment in favor of Delphi and the other defendants, the Action

---

[2] Because of a confidentiality provision in the rules governing the mediation program, the Debtors are not permitted to disclose anything that occurred during the mediation.

4

will return to the pre-trial stage of a highly complex litigation. Under such a scenario, the Debtors would be unnecessarily distracted throughout the reorganization, as well as drain resources that would otherwise be allocated to the administering of the estate. In order to properly defend the estate against ATI's claims, this would require resources from the Debtors that would otherwise be allocated to restructuring efforts.

7. Indeed, on March 31, 2006, the Debtors announced their strategy to prepare for their return to stable, profitable business operations through a broad-based global restructuring. In furtherance of the Debtors' restructuring efforts, on May 9, 2006, the hearing on the Debtors' motion for authority to reject U.S. labor agreements and to modify retiree benefits under sections 1113 and 1114 of the Bankruptcy Code commenced. Moreover, the Debtors expect to commence the hearing on their motion for authority to reject certain unprofitable supply contracts with General Motors Corporation ("GM") after the section 1113 and 1114 hearing has concluded. The Debtors are also preparing to implement other aspects of their transformation plan including streamlining the Debtors' product portfolio, transforming the Debtors' salaried workforce to ensure that the Debtors' organizational and cost structure is competitive, and devising a workable solution to the Debtors' current pension issues. The resolution of these matters, which will require the Debtors' undivided attention, is key to the Debtors' ability to complete its U.S.-based restructuring and emerge from chapter 11.

8. Accordingly, there is no good reason why the Debtors should now be forced to divert their attention from the immense tasks at hand to appease ATI in its attempt to resume the litigation related to its claim and collect any judgment from the Debtors. To permit adjudication of ATI's claims at this time would improperly prefer this

unsecured creditor over other holders of disputed, unliquidated claims and would encourage other similarly situated parties to follow suit. Because the Debtors are parties to more than two hundred active and threatened lawsuits throughout the country, if the automatic stay is lifted for ATI, the Debtors could be inundated with similar motions from numerous litigation claimants. This would force the Debtors to reallocate needed resources to defend against numerous motions to modify the automatic stay rather than focus on restructuring efforts to emerge from chapter 11 as soon as possible.

Argument

9.  The automatic stay imposed by section 362 of the Bankruptcy Code is one of the most fundamental and significant protections that the Bankruptcy Code affords a debtor. Midlantic Nat'l Bank v. N.J. Dep't of Envt'l. Prot., 474 U.S. 494, 503 (1986); see also In re Drexel Burnham Lambert Group Inc., 113 B.R. 830, 837 (Bankr. S.D.N.Y. 1990) ("[A]utomatic stay is key to the collective and preservative nature of a bankruptcy proceeding."). The automatic stay is designed to, among other purposes, give the debtor a "breathing spell" after the commencement of a chapter 11 case and shield the debtor from creditor harassment and a multitude of litigation in a variety of forums at a time when the debtor's personnel should be focusing on restructuring. See Taylor v. Slick, 178 F.3d 698, 702 (3d Cir. 1999), cert. denied, 528 U.S. 1079 (2000); In re Enron Corp., 300 B.R. 201 (Bankr. S.D.N.Y. 2003).

10.  The automatic stay broadly extends to all matters that may have an effect on a debtor's estate, enabling bankruptcy courts to ensure that debtor has the opportunity to rehabilitate and reorganize its operations. See Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.), 801 F.2d 60, 62–64 (2d Cir. 1986);

see also Fid. Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 53 (2d Cir. 1976) ("Such jurisdiction is necessary 'to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization.'") (citation omitted); AP Indus. Inc. v. SN Phelps & Co. (In re AP Indus., Inc.), 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990) ("The automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding.").

11.    Section 362(d)(1) of the Bankruptcy Code provides that the court may grant relief from the automatic stay "for cause." In Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus.), 907 F.2d 1280, 1285 (2d Cir. 1990), the Court of Appeals explained the burden-shifting regime on a motion to modify the automatic stay:

> The burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of proof on the debtor for all issues other than "the debtor's equity in property," 11 U.S.C. § 362(g)(1). See 2 Collier on Bankruptcy ¶ 362.10, at 362–76. If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.

12.    "If the movants fail to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., 907 F. 2d at 1285; see also In re Metro Transp. Co., 82 B.R. 351, 353 (Bankr. E.D. Pa. 1988) (noting that unsecured creditors face difficult task of producing evidence to establish balance of hardships tips in their favor to obtain stay relief).  Moreover, during the period when debtors still retain the

7

exclusive right to formulate a plan of reorganization, "an unsecured, unliquidated claim holder should not be permitted to pursue litigation against the debtor in another court unless extraordinary circumstances are shown." See In re Pioneer Commercial Funding Corp., 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990). As more fully described below, ATI has failed to show extraordinary cause sufficient to obtain relief from the automatic stay to proceed with its litigation. The failure of ATI to satisfy its burden to show cause is sufficient grounds to deny its Motion.

13. This Court is given sound discretion to evaluate the propriety of lifting the stay under the circumstances. In re Sonnax Indus., 907 F.2d at 1288. Courts have traditionally used multifactor tests to determine whether cause exists to modify or lift the automatic stay. The Second Circuit has used a twelve-factor lift stay test articulated in the Sonnax decision. In re Sonnax sets forth the following list of twelve factors that should be considered when deciding whether the stay should be lifted to allow litigation against a debtor to continue in another forum:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

14. Id. at 1286. See also In re Curtis, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984). All twelve factors will not be relevant in every case, Mazzeo v. Lenhart (In

8

re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999), nor must the Court afford equal weight to each of the twelve factors.  See Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship (In re Burger Boys, Inc.), 183 B.R. 682, 688 (S.D.N.Y. 1994).

15.     As more fully described below, ATI has failed in showing any cause, let alone extraordinary cause sufficient to obtain relief from the automatic stay at this stage of the Debtors' chapter 11 cases to proceed with the ATI/BMW Appeal.  The failure of ATI to satisfy its burden to show cause is sufficient grounds to deny the Motion.  Even if ATI provides some evidence to satisfy cause, this Court is given sound discretion to evaluate the appropriateness of lifting the stay under the circumstances.  In re Sonnax Indus., 907 F.2d at 1288.  Given the fact that ATI gave short shrift to mediating (and the consequent disregard for judicial economy) as evidenced by the filing of this Motion before the mediation even occurred, the Court should not reward ATI with this discretionary relief.

I.      The Competing Interests Of The Debtors
        Greatly Outweigh ATI's Interest

    A.      The Balance Of Harms Weighs In The Favor Of The Debtors

16.     The Debtors and their estates would be prejudiced if the automatic stay were modified to permit the ATI/BMW Appeal to proceed at this point in these chapter 11 cases.  The Claimants have consciously disregarded the current intensity of these cases.  The Debtors are in the midst of critical negotiations with their unions and GM to address numerous issues regarding U.S. legacy liabilities and operational restrictions driven by collective bargaining agreements.  In furtherance of these efforts, and as stated above, the Debtors commenced the prosecution of their motion under sections 1113 and 1114 of the Bankruptcy Code seeking authority to reject U.S. labor

9

agreements. In addition, the Debtors also intend to appear before the Bankruptcy Court to prosecute their motion to reject unprofitable supply contracts with GM.

17. Allowing ATI to proceed with the appeal of the ATI/BMW Appeal, which is in its infancy, will distract the Debtors from these critical issues and will thus cause significant prejudice. In re U.S. Brass Corp., 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994) ("When balancing the hardships in lifting the stay, the most important factor is the effect of such litigation on the administration of the estate; even slight interference with the administration may be enough to preclude relief.") (citing In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984)). Clearly, the purpose of the automatic stay is to allow the Debtors breathing space to avoid spending the Debtors' and the estates' time and resources on briefing and arguing the appeal of a very significant matter to the Debtors.

18. In stark contrast to the substantial prejudice that the Debtors would suffer, ATI cannot show that they would be prejudiced if the Motion was denied. Even if alternative dispute resolution is no longer a viable option to resolve ATI's alleged claims, ATI simply would experience the creditor delay that is inherent in the bankruptcy process, and is an unavoidable–and intended–consequence of the automatic stay. Accordingly, the automatic stay should not be modified to permit ATI to prosecute the ATI/BMW Appeal at this time.

    B.    Relief From The Stay Will Interfere With The Debtors' Cases And Will Not Allow For An Economical Resolution To The Action

19. The Debtors will be prejudiced if the stay is lifted and ATI is allowed to continue with prosecution of the ATI/BMW Appeal at this critical stage of the Debtors' cases. Due to the nature of the action and the potential liability, the cost of

defending the ATI/BMW Appeal, which is still in its early stages, is extremely expensive. Moreover, contrary to ATI's allegations, even if the Federal Circuit were to reverse the district court's summary judgment in favor of Delphi and other defendants, such reversal would not "inherently lead" to liquidation of ATI's claims. See Motion ¶ 16. Indeed, even if the summary judgment ruling were reversed, the Action, a patent infringement case involving approximately 25 defendants simply would return to the pre-trial stages of litigation. At this time, only the liability portion of discovery has been completed. If ATI subsequently returned to this Court for additional relief from the automatic stay and the Action were to proceed forward, there would be numerous additional dispositive motions filed regarding liability.[3] Additionally, the damages and expert portion of discovery has not even begun. Given that the ATI/BMW is still in its infancy stages and the pre-trial phase of the Action is nowhere near complete, the relief requested in the Motion would not lead to a rapid or economical resolution of the issues between ATI and Delphi.

20.     In addition to the reasons set forth above, the Debtors are parties to more than two hundred active and threatened lawsuits across the country. Lifting the automatic stay for ATI presumably would encourage other parties with litigation claims against the Debtors, to seek similar relief, thereby forcing the Debtors to defend against dozens of motions to modify the automatic stay. This result would be contrary to the fundamental principles set forth by Congress as a basis for the automatic stay. See, e.g., LTV Steel Co. v. Bd. of Educ. (In re Chateaugay Corp.), 93 B.R. 26, 30 (S.D.N.Y. 1988)

---

[3]  Depending on the basis of the Federal Circuit's decision, Delphi and/or other defendants or ATI may also move the District Court to reopen aspects of liability discovery so that the parties may seek new discovery to address points addressed by the Federal Circuit.

(noting that automatic stay is intended to prevent "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts"); Midlantic Nat'l Bank, 474 U.S. at 503; In re Drexel Burnham Lambert Group, Inc., 113 B.R. at 837. Therefore, ATI should not be allowed at this time to lift the stay and proceed with its litigation against the Debtors.

      C.      The Debtors Do Not Have Insurance
To Cover Claims Of The Nature Asserted In The Action

      21.      The Debtors would be prejudiced if the stay is lifted and ATI is allowed to continue with prosecution of the ATI/BMW Appeal. In addition to the reasons stated above, the Debtors do not have insurance to cover the liability associated with the Action. All costs associated with defending the actions and the ATI/BMW Appeal and any liability that may ultimately arise on account of the Action would be borne directly by the Debtors and their estates. Accordingly, the automatic stay should not be modified to permit ATI to prosecute the ATI/BMW Appeal at this time.

II.      The Fundamental Purpose Of The Automatic Stay
Would Be Violated If The Stay Were Modified

      22.      The fundamental purpose of the stay imposed by section 362(a)(i) of the Bankruptcy Code is to provide a debtor with a breathing spell, by giving the debtor the time and an opportunity "to attempt a repayment or reorganization plan." Borman v. Raymark Indus., 946 F.2d 1031, 1033 (3d Cir. 1991) (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 340 (1977)). Section 362(a)(i), therefore, stays pending prepetition litigation to "forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it," and "avoid interference with the . . . rehabilitation of the debtor."

Borman, 946 F.2d at 1036 (quoting Association of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F.2d 446, 448 (3d Cir. 1982)).

23. ATI seeks to force the Debtors to proceed with a potentially time-consuming and costly appeal. Now is simply not the right time. The Debtors' management and in-house legal team are now in a critical period with their unions and GM to address numerous issues regarding their collectively bargained agreements and their supply contracts. Moreover, the Debtors' management and in-house legal team, in particular, are already taxed with the responsibility of managing the active developments in these chapter 11 cases. During this critical period, the Debtors' management should be allowed to focus on the touchstone issues in these cases. Modification of the automatic stay at this critical stage of these cases to allow ATI to prosecute the ATI/BMW Appeal would force the Debtors to divert their attention from the key issues that require all of their time and energy.

## Conclusion

24. A balancing of the competing interests of the Debtors and ATI demonstrates that the automatic stay should not be modified to permit ATI to proceed with the ATI/BMW Appeal at this critical stage of these chapter 11 cases. ATI fails to meet the burden of establishing that sufficient cause exists to lift the automatic stay and fails the Sonnax test. Moreover, even if ATI can put forth some evidence of cause, ATI should not be rewarded for destroying almost any hope for the parties to resolve their issues through mediation by filing the Motion before the mediation occurred.

Notice

25. Notice of this Objection has been provided in accordance with the Seventh Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered May 19, 2006 (Docket No. 3824). The Debtors submit that no other or further notice is necessary.

Memorandum Of Law

26. Because the legal points and authorities upon which this Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) denying the Motion and (ii) granting the Debtors such other and further relief as is just.

Dated:    New York, New York
          June 13, 2006

SKADDEN, ARPS, SLATE, MEAGHER
  & FLOM LLP

By:  /s/ John Wm. Butler, Jr.
     John Wm. Butler, Jr. (JB 4711)
     John K. Lyons (JL 9331)
     Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By:  /s/ Kayalyn A. Marafioti
     Kayalyn A. Marafioti (KM 9632)
     Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
  Debtors and Debtors-in-Possession