**RIECK AND CROTTY, P.C.**
Jerome F. Crotty, Esq.
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-4646 (Telephone)
(312) 726-0647 (Facsimile)

Original Hearing Date: June 16, 2006 at 10:00 a.m.
Rescheduled to: June 19, 2006 at 10:00 a.m.

**MENAKER & HERRMANN LLP**
Richard G. Menaker, Esq.
10 East 40th Street, 43rd Floor
New York, New York 10016
(212) 545-1200
(212) 545-1656

*Counsel for Petitioners*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| In re:<br>DELPHI CORPORATION, et al.,<br><br>Debtor. | Chapter 11<br><br>Case No. 05-44481 (RDD)<br><br>(Jointly Administered) |

### O'NEILL CLAIMANTS' SUPPLEMENT TO MOTION FOR RELIEF FROM AUTOMATIC STAY AND OBJECTIONS TO DEBTORS' APPLICATION TO ESTABLISH CLAIMS PROCEDURES

TO THE HONORABLE JUDGE ROBERT D. DRAIN
UNITED STATES BANKRUPTCY JUDGE:

Petitioners, Mary P. O'Neill and Liam P. O'Neill ("O'Neills"), by their attorneys, move this Honorable Court pursuant to 11 U.S.C. §362(d) to supplement their motion for relief from the automatic stay in order to proceed with the prosecution of the state court litigation filed against Debtor, Delphi Corporation ("Debtor") and to seek satisfaction of any judgment obtained against Debtor from any insurance coverage that may be applicable to O'Neills' claims against Debtor, and

in further support thereof, O'Neills state as follows:

1. O'Neills have a cause of action against Debtor for strict liability, negligence, and breach of express and implied warranties of merchantability relating to the July 3, 2001, malfunction of the electrical component parts and systems contained in a 2000 General Motors GMC Jimmy sport utility vehicle owned by O'Neills. O'Neills filed a lawsuit in the Circuit Court of Cook County on June 27, 2003, which was served upon Debtor on July 24, 2003. Petitioner Mary P. O'Neill lost both of her legs in the occurrence which is the subject of the lawsuit.

2. In the Circuit Court of Cook County lawsuit, the parties have substantially completed written discovery, conducted expert inspection and testing of the vehicle involved and its component parts, including parts manufactured by Delphi which contributed to the subject occurrence and O'Neills' damages, and scheduled depositions which have been stayed pursuant to the automatic stay entered in this case.

3. On or about October 21, 2005, Debtor sent a Notice of Commencement of Chapter 11 Bankruptcy Cases regarding Debtor.

**A. O'Neills' Motion to Lift Stay**

4. On March 8, 2006, O'Neills filed their Motion for Relief From Stay and supporting Memorandum pursuant to 11 U.S.C. §362(d), and requested relief from the automatic stay in order to proceed with the prosecution of the state court litigation filed against Debtor and to seek satisfaction of any judgment obtained against Debtor from any insurance coverage that may be applicable to O'Neills' claims against Debtor.

5. Debtors responded and objected to O'Neills' Motion arguing, *inter alia*, that due to the structure of Debtors' insurance program any claim paid by Debtors' Insurers will result in the

Insurers' holding an administrative expense priority claim in an equal amount against Debtors. Debtors' Omnibus Objection to Motions Seeking Relief from Automatic Stay, paragraph 2. Thus, Debtors argue, a modification of the stay would distract Debtors from critical issues and would cause substantial prejudice to Debtors. As demonstrated below, such argument is contrary to the plan approved by an Order of this Court sought and obtained by Debtors which plan was established to administer claims like O'Neills' claims by Debtors' insurance carriers without further order of Court.

6.   At the hearing on O'Neills' Petition on April 7, 2006, this Court granted O'Neills permission to obtain certain discovery relating to the insurance arrangements that would be applicable to O'Neills' personal injury claims (4/7/06 Tr. at149-150). Thereafter, O'Neills and Debtors entered into a stipulation and order requiring confidential treatment of the documents produced, and Debtors subsequently disclosed at least some of the information the O'Neills requested. That documentation, together with the Debtors' earlier application in this case for authorization to renew their insurance, provide further support for O'Neills' petition to lift the automatic stay as to their personal-injury case.

7.   In summary, it now emerges from the documents that an order by this Court modifying the stay and permitting O'Neills to proceed in state court will (a) not unreasonably distract Debtors from their reorganization, and (b) not diminish Debtors' estate in any manner that has not already been approved by this Court's Order without any objection by the other creditors.

**B.  Debtors' Prior Insurance Agreement Motion**

8.   Specifically, by their Insurance Agreement Motion dated December 16, 2005, Debtors applied to the Court for permission to renew their general liability insurance policies, the same insurance coverage to which O'Neills look for ultimate payment in their personal injury action.

("Insurance Agreement Motion"). That motion described a relationship between Debtors and the general liability insurance carriers which required court-approval of certain financial protections for the carriers (the "insurance arrangements"). Debtors disclosed in the Insurance Agreement Motion that their insurance coverage involved a Multi-Line Deductible Program that included deductibles for certain classes of claims (Insurance Agreement Motion, ¶ 22, Ex. B) . Notwithstanding the deductibles, the insurance arrangements provided for the insurance carriers to make payment of the entire amount of any judgment or settlement payable to a claimant (such as the O'Neills) and obtain reimbursement from Debtors via a reconciliation process at a later date when groups of claims could be reviewed and evaluated.

9. Debtors' Insurance Agreement Motion further disclosed that the insurance arrangements would require that the carriers receive security for reimbursement on paid out deductibles in the form, inter alia, of one or more letters of credit totaling approximately $19.1 million (Insurance Agreement Motion, ¶¶ 24, 30).

10. Debtors' Insurance Agreement Motion further disclosed that the insurance arrangements would authorize the insurance carriers to "draw against the Collateral, [and] apply the Collateral to the Debtors' obligations [to make reimbursement] . . . without further order of this Court" on notice to the Debtors and counsel for the Creditors' Committee (*id.* ¶ 31). Under the insurance arrangements such the drawings on the security would be treated as an administrative expense claim despite the fact that it involved use of estate assets in resolution of prepetition claims (*id.* ¶ 30).

11. This paragraph has been redacted and submitted to the Court separately due to Debtors' objection to O'Neills' reference to documents marked as "Confidential." O'Neills await

Debtors' effort to sustain their confidentiality claim for such documents.

12. O'Neills have determined that the relief sought by them is entirely appropriate given that, in their Insurance Agreement Motion, Debtors sought and obtained approval from the Court authority to assume and renew the insurance Agreements between Delphi and those insurers identified in Debtors' Insurance Agreement Motion. Insurance Agreement Motion, paragraph 17.

13. As explained in their Insurance Agreement Motion, Debtors' proposed assumption and renewal of such Insurance Agreements and related agreements with their Insurers as executory contracts in this proceeding was done only after Debtors "... considered all potential options short of assumption of the Agreements and have determined that all such options are either not viable or are less favorable to Debtors' estates." Insurance Agreement Motion, paragraph 38.

14. Having obtained the Court's approval of their assumption and renewal of their Insurance Agreements, however, Debtors now seek to bar O'Neills from proceeding with their claims covered by such assumed Insurance Agreements by objecting to their Petition for Relief from the Stay.

15. Presumably, Debtors are concerned their Insurers will either file administrative priority claims to recover defense and indemnity payments made by them in connection with their potential defense, settlement and potential payment of O'Neills' claims in the lawsuit or, alternatively, will draw against the irrevocable $19.1 million New Letter of Credit Debtors posted with the Insurers as collateral to secure Debtors' reimbursement obligations to such Insurers. For the reason stated below, Debtors' concerns, however, should not serve as any basis for denial of the O'Neills' Motion for Relief from the Automatic Stay.

16. In their Insurance Agreement Motion, Debtors advised the Court their assumption of

such Insurance Agreements was not only a valid exercise of their fiduciary duty as debtors in possession but also they had no option but to assume the Insurance Agreements and to pledge the New Letter of Credit required by the Insurers. Insurance Agreement Motion, paragraphs 42 and 43.

11. Further, in their Insurance Agreement Motion, Debtors argued for and obtained the Court's express findings that Debtors exercised "reasonable business judgment" in seeking the additional relief required to enable them to renew such Insurance Policies. Debtors also argued that such relief was "in the best interest of the Debtors, their estates, *their creditors and other parties in interest.*" Insurance Agreement Order, paragraphs B and C. *Emphasis added.*

17. Debtors also sought and obtained the Court's Order that the Insurers were authorized to draw against the Collateral pledged by Debtors under the Insurance Agreements, to apply the Collateral to the Debtors' obligations under the Agreements and to take other actions permitted under applicable non-bankruptcy law and the Agreements *and to do so without further order of this Court.* Insurance Agreement Motion, paragraph 44. "The Insurers are hereby authorized, conditioned upon the Debtors' assumption of the Agreements, to draw against the collateral, to take other actions permitted under applicable non-bankruptcy law and in accordance with the Agreements without further Order of this Court (upon (sic) prior written notice, not to exceed five business days, to the Debtors and counsel for the official committee of unsecured creditors, if and to the extent that prior notice is required by the rules of this Court; provided that no notice shall be required for draws under letters of credit due to the expiration or non-renewal thereof. Insurance Agreement Order paragraph 6.

18. Finally, Debtors also sought and obtained the Court's Order that "all payment and reimbursement obligations owing to the Insurers from the Debtors under the Agreements are hereby

accorded administrative priority status pursuant to section 503(b)(1)(a) of the Bankruptcy Code." Insurance Agreement Motion, paragraph 45 and Order paragraph 8.

19. Debtors are now faced with the natural consequences of the relief they sought and obtained under the Insurance Agreement Motion and Order. Debtors should not be allowed to deprive O'Neills of their rights to protect *their best interests* by pursuing their claims against Debtors and their Insurance carriers' available coverage.

20. Debtors did not distinguish the application of the provisions of the Insurance Agreement Motion or resulting Order to pre-petition and post-petition claims. Instead, they argued, in pertinent part:

> Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." Id. The CoServ court specifically noted that preplan satisfaction of prepetition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." Insurance Agreement Motion, paragraph 42.

Obviously, Debtors' intent in bringing their Insurance Agreement Motion was to provide security to Debtors' Insurers for Debtors' deductible liability under their policies because without such security Debtors' insurers would not have agree to renew their policies thereby leaving Debtors without a viable source of alternative insurance. Insurance Agreement Motion, paragraph 28.

21. O'Neills argue that such preplan insurance arrangement approved by this Court in the and Insurance Agreement Order should bind Debtors to both the benefits and the detriments of their insurance bargain and the Order of this Court. Whether the Insurance carriers incur or pay and, therefore, may seek to recover any or all such payments as administrative expense priority claims

should not be a factor the Court weighs in exercising its discretion in granting or denying O'Neills' Motion. Such potential administrative expense priority claims to the extent any may later arise have already been approved by the Court in its and Insurance Agreement Order on Debtors' own Insurance Agreement Motion.

22. The foregoing facts and such record, which are beyond dispute, demonstrate that O'Neills should be granted relief from the automatic stay and thereby permitted to conclude their proceedings in the state court. The insurance carriers, under their Court approved arrangement, would pay the first dollar of any judgment or settlement in O'Neills' case. Insofar as the carriers at some future date may seek reimbursement under the insurance arrangements, this Court has already approved a set aside of a stated portion of estate resources to satisfy the carriers' administrative claim. The Creditors Committee had notice of the set-aside at the time it was requested by Debtors and approved by the Court. There can be no prejudice to anyone, Debtors or Creditors, to allow O'Neills to proceed in the context of these already approved, pre-existing arrangements and Order.

23. Debtors may contend that O'Neills have somehow reached incorrect conclusions from the discovery materials they have reviewed and therefore have misconstrued the insurance arrangements. O'Neills acknowledge that possibility because the documentation is complex and there has been no opportunity to question anyone with firsthand knowledge of the arrangements and the administration of claims under the policies. If there is any issue of fact concerning the insurance arrangements, O'Neills request permission to take appropriate further discovery, including one or more depositions of the most knowledgeable persons among Debtors and their insurers' administrators, before the stay issue is presented to the Court for determination.

24. In particular, there should be no possibility that the insurance carriers would refuse

to pay the first dollar of any judgment or settlement in accordance with the insurance arrangements and Order but rather take the position that Debtors are required to pay the deductible amount directly to the O'Neills. If that were to remain a possibility in any way, then there would have been a misrepresentation in Debtors' application to this Court last December seeking renewal of their insurance and entry of the and Insurance Agreement Order. This Court should assure itself that the insurance carriers will make first dollar payments as represented. Indeed, it would be appropriate to obtain an on-the-record commitment directly from the carriers that such payments will be made, and O'Neills hereby request that the Court direct that such commitment be made.

### C.   Debtors' Motion to Establish Claim Liquidation Procedures

25.   On June 6, 2006, Debtors served a motion proposing procedures "for liquidating and settling and/or mediating certain prepetition litigation claims." From the description in the motion, it would appear that Debtors contemplate including O'Neills' claims within their contemplated procedures, thereby forestalling resumption of the state court action.

26.   O'Neills take no position on the proposed procedures as a general matter, but they object strenuously to any attempt by Debtors to use those procedures to preempt their state court action and force O'Neills to submit to the procedures instead. The state court action has been proceeding against not just the Debtors but also General Motors and other named defendants since July 2003. Pre-trial proceedings were substantially advanced at the time this Chapter 11 case was filed.. Those state court proceedings should not be consigned to the dustbin.

27.   Moreover, the proposed procedures are deeply prejudicial to O'Neills. Under the proposal, any settlement of their causes of action would have to be (a) accompanied by a release of the Debtors' insurance carriers, and (b) transformation of the liquidated amount into an allowed

unsecured non-priority claim subject to a distribution under the confirmed plan of reorganization (Debtors' 6/6/06 Motion ¶ 28(d)). Both conditions are deeply harmful to Claimants such as O'Neills, for whom the existence of Debtors' general liability insurance constitutes protection akin to a security interest. There is no reason why insurance carriers should receive the protections of Chapter 11 debtors, or why Mrs. O'Neill should receive pennies on the dollar for the loss of her legs when insurance to pay for that loss exists pursuant to an Order of this Court. See Insurance Agreement Motion Order.

28.     Debtors' Motion to Establish Claim Liquidation Procedures notes that there is no requirement that a litigation claimant proceed under the proposed claim liquidation procedures (*id.* ¶ 30). But Debtors make clear their intent to resist any lifting of the automatic stay to permit resumption of actual litigation in another court, such as the state court involved here (*id.* ¶ 37). O'Neills accept Debtors' proposal allowing them to opt out of the proposed claims liquidation procedures and request that their pending petition to lift the stay be granted to enable them to resume and conclude their action against Debtors and others in the state court.

WHEREFORE, O'Neills respectfully request entry of an Order modifying the automatic stay imposed by §362(d) of the Bankruptcy Code to allow O'Neills to proceed with the State Court Litigation, including discovery, trial, settlement or verdict, filed against Debtor and to seek satisfaction of any such settlement or judgment from Debtors and from any insurance coverage that may be applicable to O'Neills' claims against Debtor pursuant to the Insurance Agreement Order.

Respectfully submitted,

Petitioners, Mary P. O'Neill and Liam P. O'Neill

By: _____
One of their attorneys

**RIECK AND CROTTY, P.C.**
Jerome F. Crotty, Esq.
55 West Monroe Street, Suite 3390
Chicago, Illinois 60603
(312) 726-4646 (Telephone)
(312) 726-0647 (Facsimile)

**MENAKER & HERRMANN LLP**
Richard G. Menaker, Esq.
10 East 40th Street, 43rd Floor
New York, New York 10016
(212) 545-1200
(212) 545-1656

*Counsel for Petitioners*