DUANE MORRIS LLP  
A Delaware Limited Liability Partnership  
Lawrence J. Kotler, Esquire  
380 Lexington Avenue  
New York, NY 10168  
(212) 692-1000  
(212) 692-1020 (facsimile)  
    and  
Margery N. Reed, Esquire  
Wendy M. Simkulak, Esquire  
30 South 17th Street  
Philadelphia, PA 19103-4196  
(215) 979-1000  
(215) 979-1020 (facsimile)  

Obj. Deadline: June 15, 2006 at 4:00 p.m.  
Hearing: June 19, 2006 at 10:00 a.m.

Counsel for the ACE Companies

**IN THE UNITED STATES BANKRUPTCY COURT**  
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| DELPHI CORPORATION, et al. | ) | Case No. 05-44481 |
| | ) | (Jointly Administered) |
| Debtors. | ) | |

**OBJECTION OF THE ACE COMPANIES TO**  
**THE DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C. § 362 AND FED. R.**  
**BANKR. P. 7016 AND 9019 APPROVING PROCEDURES FOR MODIFYING THE**  
**AUTOMATIC STAY TO ALLOW FOR (I) LIQUIDATING AND SETTLING AND/OR**  
**(II) MEDIATING CERTAIN PREPETITION LITIGATION CLAIMS**

    ACE American Insurance Company ("ACE"), Pacific Employers Insurance Company ("PEIC") and their respective affiliates (collectively, the "ACE Companies"), by and through their undersigned counsel, hereby file this Objection (the "Objection") to the Debtors' Motion for Order Under 11 U.S.C. § 362 and Fed. R. Bankr. P. 7016 and 9019 Approving Procedures for Modifying the Automatic Stay to Allow for (i) Liquidating and Settling and/or (ii) Mediating Certain Prepetition Litigation Claims (the "Lift Stay Procedures Motion")[1], and respectfully state as follows:

---

[1] Each capitalized term that is not defined herein shall have the meaning given to such term in the Lift Stay Procedures Motion or the proposed form of order filed therewith (the "Proposed Order").

## BACKGROUND

1.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding under 28 U.S.C. § 157(b)(2).

## THE BANKRUPTCY CASE

2.  On October 8 and 14, 2005 (collectively, the "Petition Date"), Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

3.  On or about December 16, 2005, the Debtors filed a Motion For Order Under 11 U.S.C. Sections 362, 363, 365, 1107, And 1108 Authorizing Renewal Of Insurance Coverage And Certain Related Relief (the "Assumption Motion") pursuant to which the Debtors requested, *inter alia*, authority to assume pursuant to 11 U.S.C. § 365 their insurance policies and the related agreements between Delphi and the Insurers (collectively, the "Insurance Agreements") including, but not limited to the following:

  (a)  that certain Multi-Line Deductible Program Agreement effective as of October 1, 2000 by and between Pacific Employers Insurance Company and Delphi (formerly known as Delphi Automotive Systems Corporation) and all amendments and addenda thereto (collectively, the "Multi-Line Deductible Program Agreement");

  (b)  all General Liability Policies issued to Delphi or the other Debtors by one or more of the Insurers and all renewals, extensions, and endorsements thereto (collectively, the "General Liability Policy");

  (c)  all Automobile Liability Policies issued to Delphi or the other Debtors by one or more of the Insurers and all renewals, extensions, and endorsements thereto (collectively, the "Automobile Liability Policy");

  (d)  all Workers' Compensation Policies issued to Delphi or the other Debtors by one or more of the Insurers and all renewals, extensions, and endorsements thereto (collectively, the "Workers' Compensation Policy" and, collectively with the General Liability Policy and the Automobile Liability Policy, the "Insurance Policies");

 (e) the binder related to the Insurance Policies; and

 (f) the claims administration agreements related to the Insurance Policies.

4. On or about January 9, 2006, this Court entered an order granting the Assumption Motion (the "Assumption Order") pursuant to which the Debtors assumed the Insurance Policies and the other Insurance Agreements and all of their obligations thereunder.

5. On or about June 6, 2006, the Debtors filed the Lift Stay Procedures Motion seeking, on an expedited basis, *inter alia*, "to liquidate and settle certain prepetition litigation claims." These claims involve assertions of liability by Claimants against the Debtors. Debtors allege in the Lift Stay Procedures Motion that such claims fall within the scope of the Insurance Program for general liability, product liability, automobile liability and emissions claims. The Lift Stay Procedures Motion does not seek relief with respect to workers' compensation claims.

## **OBJECTION**

**A. The ACE Companies Object To The Lift Stay Procedures Motion To The Extent It Seeks Declaratory Judgment Regarding The Insurance Agreements.**

6. Although not specifically requested in the Lift Stay Procedures Motion, the Proposed Order expressly provides declaratory relief by including the following sentence: "Moreover, the implementation of the Lift Stay Procedures by the Debtors shall not be deemed a breach of any agreement under the Insurance Program or agreement with any Third Party Indemnitor." Proposed Order, ¶ 6.

7. The ACE Companies object to the declaratory relief for the following reasons.

8. The declaratory relief is beyond the scope of relief that the Debtors request in the Lift Stay Procedures Motion, and should be stricken for this reason alone.

9. Moreover, it is impossible to determine, at this early juncture, whether or not the Debtors will, in the future, comply with the Insurance Agreements, since the Lift Stay

3

Procedures Motion does not provide sufficient detail of the procedures for negotiating settlements with Claimants or the terms to be contained in any settlement agreements to be entered into with Claimants.

10. The declaratory relief also appears to be unnecessary and possibly inconsistent with the first sentence in Paragraph 6 of the Proposed Order, which provides that "Nothing in this Order is intended to nor shall this Order be deemed to, alter any requirements under the Insurance Program or to limit or otherwise prejudice any Third Party Indemnitor's rights or defenses, all of which are expressly reserved."

11. Moreover, the procedure for obtaining a declaratory judgment is governed by the Federal Rules of Civil Procedure and specifically Federal Rule of Civil Procedure 3, made applicable by Federal Rule of Bankruptcy Procedure 7003, which states that "[a] civil action is commenced by filing a complaint with the court." *See* Fed. R. Civ. P. 3, 57; Fed. R. Bankr. P. 7003; 28 U.S.C. § 2201, *et seq.*

12. Federal courts, including bankruptcy courts, have consistently held that the proper procedure for seeking a declaratory judgment is to file a complaint, not a motion. *See, e.g., Int'l Brotherhood of Teamsters v. Eastern Conference of Teamsters*, 160 F.R.D. 452 [page] (S.D.N.Y. 1995) (stating that "[b]ecause an action for a declaratory judgment is an ordinary civil action, a party may not make a motion for declaratory relief, but rather, the party must bring an action for a declaratory judgment"); *In re Harry C. Partridge, Jr. & Sons, Inc.*, 43 B.R. 669, 672 (Bankr. S.D.N.Y. 1984) (stating that an action to obtain a declaratory judgment "relating to [a breach of] contract dispute is expressly delineated in Bankruptcy Rule 7001(9) as an adversary proceeding" which must be commenced by a summons and complaint); *In re Spencer*, 7 B.R. 458 (Bankr. S.D. Cal. 1980) (holding that because there was no contrary authority, it would require the traditional federal procedure of filing a complaint for declaratory relief in order to obtain a

4

declaratory judgment and thus, overruling the trustee's objections that sought a declaratory judgment).

13. Due process entitles the ACE Companies to receive thirty (30) days to answer or respond to a complaint after service of process, discovery, and a trial on the merits before entry of a declaratory judgment affecting the parties' rights under their contracts. *See CIT Group/Bus. Credit, Inc. v. Official Comm. of Unsecured Creditors (In re E-Z Serve Convenience Stores, Inc.)*, 318 B.R. 631, 635-36 (M.D.N.C. 2004).

14. The ACE Companies have not had any meaningful opportunity to determine what specific procedures the Debtors may implement and whether such procedures will comply with the applicable Insurance Agreements.

15. To the extent the Debtors seek a declaratory judgment from this Court regarding matters of contract law as they relate to the Insurance Program, the Debtors must commence an adversary proceeding under the Federal Rules of Bankruptcy Procedure by the filing of a complaint.

16. Accordingly, the ACE Companies request that (i) the Lift Stay Procedures Motion be denied to the extent that the Debtors seek a declaratory judgment as to whether their actions will breach the Insurance Agreements; and (ii) the following sentence in paragraph 6 of the Proposed Order be stricken in its entirety: "Moreover, the implementation of the Lift Stay Procedures by the Debtors shall not be deemed a breach of any agreement under the Insurance Program or agreement with any Third Party Indemnitor."

**B.    The Required Release Of Insurers, As Described In Paragraph 28(d) Of The Lift Stay Procedures Motion, Is Ambiguous And Must Be Clarified.**

17. Paragraph 28(d) of the Lift Stay Procedures Motion provides: "As a condition precedent to settling any Claims, the Debtors would require that a Claimant release the Debtors'

5

Insurers from all amounts the Debtors are or might be obligated to pay to other parties under the Multi-Line Deductible Program Agreement. By executing such a release the Claimants would be precluded from seeking payment from the Debtors' Insurers for the portion of their claims that fall within the applicable deductible."

18. The ACE Companies object to the release provision in Paragraph 28(d) of the Lift Stay Procedures Motion for the following reasons.

19. The Lift Stay Procedures Motion is ambiguous in that it fails to explain what is meant by the phrase "release the Debtors' Insurers from <u>all amounts the Debtors are or might be obligated to pay to other parties under the Multi-Line Deductible Program Agreement</u>." (Emphasis added).

20. The ACE Companies aver that the Debtors have obligations to the Insurers under the Multi-Line Deductible Program Agreement as well as under the other Insurance Agreements. In addition, the Debtors' obligations under the Insurance Agreements may be owing to the Insurers or to other parties.

21. Further, the copy of the Multi-Line Deductible Program Agreement that is attached to the Lift Stay Procedures Motion as Exhibit A is incomplete, as it does not include all amendments and addendum thereto; and the Debtors have not submitted the other Insurance Agreements, all of which have been assumed.

22. The Lift Stay Procedures Motion is ambiguous in that it fails to explain what is meant by the sentence "By executing such a release the Claimants would be precluded from seeking payment from the Debtors' Insurers <u>for the portion of their claims that fall within the applicable deductible</u>." (Emphasis added).

23. The Lift Stay Procedures Motion fails to establish a mechanism to protect the Insurers' rights with respect to Claims that exceed the applicable deductible.

6

24. Further, the Lift Stay Procedures Motion fails to address how a Claim will be settled if a portion of the Claim exceeds the deductible or how the Insurers' rights will be protected.

25. Moreover, the ACE Companies should have an opportunity to review and approve any release to the extent that it may affect their rights or obligations under the Insurance Agreements.

26. The ACE Companies request that the Lift Stay Procedures be limited to Claims within the applicable deductible; and accordingly request that paragraph 3(b) of the Proposed Order be modified to (a) revise the first clause of the first sentence thereof to read as follows, "In settlement of a Claim in a sum greater than $500,000 but less than applicable deductibles under the Insurance Program..." and (b) delete the last sentence thereof.

27. The ACE Companies also request that the Proposed Order be revised to provide as follows: "The Debtors are authorized to implement the Lift Stay Procedures, as modified herein, for any Claim that does not exceed the amount of the applicable deductible provided in the applicable Insurance Agreement (defined below). As a condition precedent to settling any such Claim, the Debtors shall require a Claimant to execute a release in favor of the Insurers, in form and substance acceptable to the Insurers, pursuant to which the Claimant shall release the Insurers from all liability to the Claimant, his/her/its heirs, administrators, executors, successors and assigns with respect to such Claim arising under or relating to the Debtors' insurance policies and related agreements (including, without limitation, the Multi-Line Deductible Program Agreement and the amendments and addendum thereto) ("Insurance Agreements"), the Insurance Program, and applicable law."

7

C. **The ACE Companies Object To The Lift Stay Procedures Motion To The Extent It Seeks To Modify The Debtors' Obligations To The Insurers Or The Insurers' Rights Or Obligations Under The Insurance Agreements.**

28. The Debtors assumed the Program Agreement and the Insurance Policies and therefore assumed all of their obligations under the Insurance Program. *See, e.g., In re Nitec Paper Corp.*, 43 B.R. 492, 498 (S.D.N.Y. 1984) (stating that a "contract assumed in bankruptcy is accompanied by all its provisions, and conditions. It may not be assumed in part and rejected in part"); *In re Village Rathskeller, Inc.*, 147 B.R. 665 (Bankr. S.D.N.Y. 1992) (citing *Nitec*). *See also* 11 U.S.C. § 365. Thus, the Debtors obligations under the Insurance Program cannot subsequently be altered even by the Lift Stay Procedures. *See, e.g., In re LHD Realty Corp.*, 20 B.R. 717 (Bankr. S.D. Ind. 1982) (a debtor was not permitted to modify a lease that was assumed under 11 U.S.C. § 365).

29. The ACE Companies object to the Lift Stay Procedures Motion to the extent that it seeks a modification of the Insurance Agreements, or to the extent it seeks to modify the Debtors' obligations to the Insurers or the Insurers' right or obligations under the Insurance Agreements.

30. The ACE Companies request that the Proposed Order be modified to add the following provision: "Nothing in this Order shall modify, impair or affect the Debtors' or the Insurers' rights or obligations under the Insurance Agreements and applicable law, including, without limitation, the right, if any, to assert any claim, defense or counterclaim. Nothing in this Order or any settlement pursuant to this Order, including the allowance of any claim, shall give rise to a claim for coverage under any of the Insurance Agreements."

D. **Additional Objections.**

31. The ACE Companies further object to the Lift Stay Procedures Motion to the extent that certain assertions therein are incorrect or imprecise. For example,

8

DM3\370501.5

   a. The Lift Stay Procedures Motion fails to disclose whether or not the proposed procedures comply with the Insurance Agreements and applicable non-bankruptcy law with respect to all of the various Claims and Claimants that may be affected by the Lift Stay Procedures.

   b. The Lift Stay Procedures Motion fails to explain how the Claims may be monetized or paid promptly.

   c. The Debtors assert that they have provided the ACE Companies with notice of the Lift Stay Procedures Motion, and an opportunity to comment or object to the procedures requested herein.  However, the ACE Companies were not given adequate time to review and consider this Motion.

   d. The Lift Stay Procedures Motion does not need to be considered on an expedited basis.  Therefore, without limiting the foregoing objections, the ACE Companies object to the Debtors' proposed unreasonably short time deadlines which do not provide a fair and reasonable opportunity for Third Party Indemnitors, including the ACE Companies, to review and consider the Motion.

   e. The ACE Companies reserve their right to raise additional objections at any hearing on the Lift Stay Procedures Motion.

**[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK.]**

WHEREFORE, for the foregoing reasons, the ACE Companies respectfully request that the Court (i) deny the Motion to the extent that it requests a declaratory judgment; (ii) provide in any order granting the Motion, in whole or in part, that: (a) the Lift Stay Procedures, including the release provided therein, be revised as provided herein, and (b) the incorrect or imprecise assertions in the Motion detailed herein be corrected or clarified by the Debtors; and (iii) grant such further and additional relief as is just and proper.

Dated: June 15, 2006

DUANE MORRIS LLP

By: /s/ *Lawrence J. Kotler*
    Lawrence J. Kotler, Esquire (LK-8177)
    380 Lexington Avenue
    New York, NY 10168
    (212) 692-1000
    (212) 692-1020 (facsimile)
    ljkotler@duanemorris.com

and

Margery N. Reed, Esquire
Wendy M. Simkulak, Esquire
30 South 17th Street
Philadelphia, PA 19103-4196
(215) 979-1000
(215) 979-1020 (facsimile)
mreed@duanemorris.com
wmsimkulak@duanemorris.com

Counsel for the ACE Companies