**Hearing Date: June 19, 2006**
        **Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

|  |  |  |
|---|---|---|
|  | : |  |
| In re | : | Chapter 11 |
|  | : |  |
| DELPHI CORPORATION, et al., | : | Case No. 05-44481 (RDD) |
|  | : |  |
|  | : | (Jointly Administered) |
| Debtors. | : |  |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DEBTORS' CORRECTED OBJECTION TO MOTION
OF CINDY PALMER, PERSONAL REPRESENTATIVE OF ESTATE OF
MICHAEL PALMER, DECEASED, FOR RELIEF FROM AUTOMATIC STAY

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this corrected objection (the "Corrected Objection")[1] to the motion of Cindy Palmer, personal representative of the estate of Michael Palmer, deceased ("Palmer"), for relief from the automatic stay, dated March 6, 2006 (the "Motion") (Docket No. 2708), and the Supplement to the Motion, dated April 18, 2006 (the "Supplement") (Docket No. 3267). In support of the Corrected Objection, the Debtors respectfully represent as follows:

Preliminary Statement

1. With respect to the Motion, the Debtors are amenable to modifying the automatic stay for the sole and limited purpose of allowing Palmer to prosecute the Palmer Appeal (as defined below). The Debtors object to the Motion, however, to the extent that Palmer seeks any additional relief beyond allowing Palmer to prosecute the Palmer Appeal in the Michigan Court of Appeals. If Palmer receives a favorable ruling in the Palmer Appeal, she should return to this Court to request any additional relief that she may deem necessary.

2. On August 24, 2001, Palmer commenced an action against Delphi alleging that the actions of Delphi proximately caused the wrongful death of Michael Palmer. On November 21, 2002, the trial court granted Delphi's motion for summary disposition, and Palmer appealed to the Michigan Court of Appeals (the "Palmer

---

[1] The Debtors are correcting their original objection to the Motion to correct information regarding the Debtors' insurance. The Debtor's filed its initial objection to the Motion on June 9, 2006 (Docket No. 4111).

Appeal"). Oral arguments were scheduled for October 12, 2005, but due to the commencement of the Debtors' Chapter 11 cases, the oral arguments were stayed. By the Motion, Palmer has asked the Court for relief from the automatic stay, not only to adjudicate the Palmer Appeal, but if successful on the appeal to prosecute the Palmer litigation in the lower court.

3. The Palmer Appeal has been fully briefed and filed with the Michigan Court of Appeals. Only oral arguments in front of the Michigan Court of Appeals and a decision from the appellate court remain to adjudicate the Palmer Appeal. Because the Debtors have already expended the resources required to prepare Delphi's defense and brief the issues raised on appeal, the Debtors do not object to the modification of the automatic stay for the sole and limited purpose of allowing Palmer to prosecute the Palmer Appeal with the Michigan Court of Appeals. Upon conclusion of the proceedings in the Michigan Court of Appeals (whether by affirmation, reversal, or other ruling), however, Palmer should be required to return to this Court if she desires further relief from the automatic stay. To the extent that Palmer is not willing to modify the automatic stay under the terms set forth above, and is seeking to continue the litigation beyond a judgment in the Michigan Court of Appeals, the Debtors object to the Motion as set forth further below.

4. The automatic stay should either be modified for the sole and limited purpose of allowing Palmer to prosecute the Palmer Appeal or, in the alternative, the Motion should be denied because Palmer has failed to offer sufficient evidence to show adequate cause for relief from the automatic stay to continue her personal injury litigation against Delphi, among other defendants. Indeed, the movant has not shown any

3

cause to take any action beyond the prosecution of the Palmer Appeal. In support of its Motion, Palmer alleges that (i) its lawsuit will require no significant time from any employee involved in the Debtors' bankruptcy cases and (ii) both the Debtors and Palmer will benefit if the stay is lifted and these matters are brought to judgment and collection. Neither allegation is correct.

5. In their original Objection, the Debtors stated their belief that the insurance policies under which Palmer's claim arose had been assumed pursuant to an Order Authorizing Renewal of Insurance Coverage and Certain Related Relief, entered on January 9, 2006 (the "Insurance Order") (Docket No. 1779). The Debtors have subsequently determined, however, that because the event that gave rise to the Palmer Appeal occurred prior to the January 1, 1999 spinoff,[2] the Debtors policies that were assumed pursuant to the Insurance Order do not cover this Claim. Moreover, after further investigation, the Debtors have discovered that in fact they do not have insurance for the first million dollars of liability related to this claim. The excess insurance that the Debtors have that may cover the Palmer action covers only any liability in excess of one million dollars. Therefore, the first million dollars of any liability that may arise as a result of the Palmer litigation would be borne directly by the Debtors' estates. In addition, the Debtors are liable for all costs associated with defending the action. Thus, the continuation of the Palmer litigation will directly affect the Debtors and their estates.

6. It is important to note that although the Palmer Appeal is in advanced stages, if the Michigan Court of Appeals were to reverse the trial court's

---

[2] Effective January 1, 1999, the assets and liabilities of certain divisions and subsidiaries were transferred (i.e., spun off) to Delphi and its subsidiaries and affiliates in accordance with the terms of a Master Separation Agreement between Delphi and GM.

4

decision, the litigation would once again be active.  Under such a scenario, the Debtors would be unnecessarily distracted and valuable resources that would otherwise be allocated to the administering of the estate would be wasted.

       7.       Indeed, on March 31, 2006, the Debtors announced their strategy to prepare for their return to stable, profitable business operations through a broad-based global restructuring.  In furtherance of the Debtors' restructuring efforts, on May 9, 2006, the hearing on the Debtors' motion for authority to reject U.S. labor agreements and to modify retiree benefits under sections 1113 and 1114 of the Bankruptcy Code (the "Section 1113/1114 Motion") commenced.  The Court has adjourned hearing on the Section 1113/1114 Motion to August 11, 2006.  Moreover, the Debtors expect to commence the hearing on their motion for authority to reject certain unprofitable supply contracts with GM on August 15, 2006, provided that the hearing on the Section 1113/1114 Motion is completed or resolved prior to that time.  The Debtors are also preparing to implement other aspects of their transformation plan including streamlining the Debtors' product portfolio, transforming the Debtors' salaried workforce to ensure that the Debtors' organizational and cost structure is competitive, and devising a workable solution to the Debtors' current pension issues.  The resolution of these matters, which will require the Debtors' undivided attention, is key to the Debtors' ability to complete its U.S.-based restructuring and emerge from chapter 11.

       8.       Accordingly, the Debtors should not now be forced to divert their focus from the formidable issues at hand to enable Palmer to resume the litigation related to her claims and collect any judgment from the Debtors.  To permit adjudication of Palmer's claims at this time would giver her a preference over other holders of disputed,

5

unliquidated claims and would encourage other similarly situated parties to seek similar relief. The Debtors are parties to more than two hundred active and threatened lawsuits throughout the country. If the automatic stay is lifted for Palmer for the purpose of allowing her to proceed against Delphi other than simply to argue the Palmer Appeal, the Debtors may be inundated with similar motions by other litigants. Thus, rather than focusing on restructuring efforts in order to emerge from chapter 11 as soon as possible, the Debtors would be required instead to reallocate needed resources to defend against numerous motions to modify the automatic stay.

9. The Debtors should not be forced to litigate prepetition claims with Palmer or any other similarly situated claimant at this time. The automatic stay was designed to avoid precisely this type of distraction for debtors. Permitting a modification of the stay to allow Palmer to proceed against Delphi – other than oral argument of the Palmer Appeal – would defeat the this fundamental protection afforded by Congress to a chapter 11 debtor. Furthermore, should Palmer succeed in the Palmer Appeal, she may return to this Court to request additional relief from the automatic stay to pursue her action further.

<u>Argument</u>

10. The automatic stay imposed by section 362 of the Bankruptcy Code is one of the most fundamental and significant protections that the Bankruptcy Code affords a debtor. <u>Midlantic Nat'l Bank v. N.J. Dep't of Envt'l. Prot.</u>, 474 U.S. 494, 503 (1986); <u>see</u> <u>also</u> <u>In re Drexel Burnham Lambert Group Inc.</u>, 113 B.R. 830, 837 (Bankr. S.D.N.Y. 1990) ("[A]utomatic stay is key to the collective and preservative nature of a bankruptcy proceeding."). The automatic stay is designed to, among other

purposes, give the debtor a "breathing spell" after the commencement of a chapter 11 case and shield the debtor from creditor harassment and a multitude of litigation in a variety of forums at a time when the debtor's personnel should be focusing on restructuring.  See Taylor v. Slick, 178 F.3d 698, 702 (3d Cir. 1999), cert. denied, 528 U.S. 1079 (2000); In re Enron Corp., 300 B.R. 201 (Bankr. S.D.N.Y. 2003).

11. The automatic stay broadly extends to all matters that may have an effect on a debtor's estate, enabling bankruptcy courts to ensure that debtor has the opportunity to rehabilitate and reorganize its operations.  See Manville Corp. v. Equity Sec. Holders Comm. (In re Johns-Manville Corp.), 801 F.2d 60, 62–64 (2d Cir. 1986); see also Fid. Mortgage Investors v. Camelia Builders, Inc., 550 F.2d 47, 53 (2d Cir. 1976) ("Such jurisdiction is necessary 'to exclude any interference by the acts of others or by proceedings in other courts where such activities or proceedings tend to hinder the process of reorganization.'") (citation omitted); AP Indus. Inc. v. SN Phelps & Co. (In re AP Indus., Inc.), 117 B.R. 789, 798 (Bankr. S.D.N.Y. 1990) ("The automatic stay prevents creditors from reaching the assets of the debtor's estate piecemeal and preserves the debtor's estate so that all creditors and their claims can be assembled in the bankruptcy court for a single organized proceeding.").

12. Section 362(d)(1) of the Bankruptcy Code provides that the court may grant relief from the automatic stay "for cause." In Sonnax Indus. v. Tri Component Prods. Corp. (In re Sonnax Indus.), 907 F.2d 1280, 1285 (2d Cir. 1990), the Court of Appeals explained the burden-shifting regime on a motion to modify the automatic stay:

> The burden of proof on a motion to lift or modify the automatic stay is a shifting one. Section 362(d)(1) requires an initial showing of cause by the movant, while Section 362(g) places the burden of

proof on the debtor for all issues other than "the debtor's equity in property," 11 U.S.C. § 362(g)(1). See 2 Collier on Bankruptcy ¶ 362.10, at 362–76. If the movant fails to make an initial showing of cause, however, the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection.

13.     "If the movants fail to make an initial showing of cause . . . the court should deny relief without requiring any showing from the debtor that it is entitled to continued protection." In re Sonnax Indus., 907 F. 2d at 1285; see also In re Metro Transp. Co., 82 B.R. 351, 353 (Bankr. E.D. Pa. 1988) (noting that unsecured creditors face difficult task of producing evidence to establish balance of hardships tips in their favor to obtain stay relief).  Moreover, during the debtor's exclusivity period, "an unsecured, unliquidated claim holder should not be permitted to pursue litigation against the debtor in another court unless extraordinary circumstances are shown." See In re Pioneer Commercial Funding Corp., 114 B.R. 45, 48 (Bankr. S.D.N.Y. 1990).  As more fully described below, Palmer has not shown any cause, let alone extraordinary cause, sufficient to obtain relief from the automatic stay.  The failure of Palmer to satisfy her burden to show cause is sufficient grounds to deny her Motion and Supplement.

14.     Even if the movant had offered any evidence to satisfy cause, this Court may nonetheless evaluate the propriety of lifting the stay under the circumstances. In re Sonnax Indus., 907 F.2d at 1288.  Courts have traditionally used multifactor tests to determine whether cause exists to modify or lift the automatic stay.  The Second Circuit has used a twelve-factor lift stay test articulated in the Sonnax case.[3]  In re Sonnax sets

---

[3]    In lieu of applying the twelve-factor test set forth in Sonnax, Palmer seeks to have this Court consider only three factors used in the Seventh Circuit by directing the Court's attention to In re Fernstrom Storage & Van Co., 938 F.2d 731 (7th Cir. 1991).

8

forth a list of twelve factors that should be considered when deciding whether the stay should be lifted to allow litigation against a debtor to continue in another forum:

> (1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms.

Id. at 1286.  See also In re Curtis, 40 B.R. 795, 799–800 (Bankr. D. Utah 1984).  All twelve factors will not be relevant in every case, Mazzeo v. Lenhart (In re Mazzeo), 167 F.3d 139, 143 (2d Cir. 1999), nor must the Court afford equal weight to each of the twelve factors.  See Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship (In re Burger Boys, Inc.), 183 B.R. 682, 688 (S.D.N.Y. 1994).  The relevant factors with regard to this Motion are (i) whether the Debtors' insurer has assumed full responsibility for defending them; (ii) whether litigation in another forum would prejudice the interests of other creditors; (iii) whether the parties are ready for trial in the other proceeding; (iv) lack of any connection with or interference with the bankruptcy case; and (v) impact of the stay on the parties and the balance of harms.  As demonstrated below, Palmer has not, and indeed cannot, carry the burden of establishing that sufficient cause exists to lift the automatic stay.

I.  The Debtors And Their Creditors Will Be Prejudiced Because The Debtors' Insurer Has Not Assumed Full Responsibility For Defending The Case

15. As noted above, the Debtors do not have insurance to cover any liability associated with the first million dollars of Palmer's claim.[4] Therefore, any liability would be borne directly by the Debtors for such amount. In addition, the Debtors are liable for costs associated with defending the action. As a result, the Debtors and their estates would be prejudiced if the automatic stay were modified to permit the Palmer's litigation to proceed at this point in these chapter 11 cases.

II.  The Debtors Are Not Prepared For Trial

16. As discussed above, although the Palmer Appeal is in advanced stages, if the Michigan Court of Appeals were to reverse the trial court's decision, the case would once again become active. Modifying the automatic stay to allow Palmer to proceed with the litigation against the Debtors would require the Debtors and their counsel to invest in potentially time-consuming and costly litigation.

III. Lifting The Stay Would Unnecessarily Interfere With The Debtors' Restructuring Efforts

17. The Debtors and their estates would be prejudiced if the automatic stay were modified now to permit the Palmer litigation to proceed. The Debtors are in the midst of critical negotiations with their unions and GM to address numerous issues regarding U.S. legacy liabilities and operational restrictions driven by collectively bargained agreements. In furtherance of these efforts, and as stated above, the Debtors commenced the prosecution of their motion under sections 1113 and 1114 of the

---

[4]  Palmer's claim may be covered under the Debtors' excess insurance, but only for the amounts in excess of $1 million.

10

Bankruptcy Code seeking authority to reject U.S. labor agreements. The hearing on the Section 1113/1114 Motion is scheduled to begin on August 11, 2006. Moreover, the Debtors expect to commence the hearing on their motion for authority to reject certain unprofitable supply contracts with GM on August 15, 2006, provided that the hearing on the Section 1113/1114 Motion is completed or resolved prior to that time.

18. Allowing Palmer to proceed with its litigation, other than to complete the appeal process that is already under way, would distract the Debtors from these critical issues and would thus cause significant prejudice to the Debtors. In re U.S. Brass Corp., 173 B.R. 1000, 1006 (Bankr. E.D. Tex. 1994) ("When balancing the hardships in lifting the stay, the most important factor is the effect of such litigation on the administration of the estate; even slight interference with the administration may be enough to preclude relief.") (citing In re Curtis, 40 B.R. 795, 806 (Bankr. D. Utah 1984)); see In re Comdisco, 271 B.R. at 280 (finding that "it would be irresponsible and subversive of the purpose of the automatic stay to allow any resources and attention of the Debtor to be diverted to other matters not directly related to its reorganization"). Denying Palmer's Motion is consistent with one of the purposes of the automatic stay, which is to allow the Debtors breathing space. See, e.g., In re Enron Corp., 300 B.R. at 211 (finding that "'[t]he purpose of the automatic stay is to give the debtor a breathing spell from creditors'") (citations omitted).

19. In addition to the reasons set forth above, the Debtors are parties to more than two hundred active and threatened lawsuits throughout the country. Lifting the automatic stay for Palmer presumably would encourage other parties with litigation claims against the Debtors, even those in the preliminary stages of litigation, to seek

11

similar relief, thereby forcing the Debtors to defend against dozens of motions to modify the automatic stay. This result would be contrary to the purpose of section 362 of the Bankruptcy Code. See, e.g., LTV Steel Co. v. Bd. of Educ. (In re Chateaugay Corp.), 93 B.R. 26, 30 (S.D.N.Y. 1988) (noting that automatic stay is intended to prevent "chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts"); Midlantic Nat'l Bank, 474 U.S. at 503; In re Drexel Burnham Lambert Group, Inc., 113 B.R. at 837. Therefore, Palmer should not be allowed to lift the stay and proceed with her litigation against the Debtors, other than to argue her pending appeal.

IV.    The Balance Of The Harms Weighs In Favor Of
       Denying The Palmer's Motion

20.    In stark contrast to the substantial prejudice that the Debtors would suffer, Palmer cannot show that it would be prejudiced if the Motion were denied. Palmer will face only the ordinary delay that all creditors face in complex Chapter 11 cases. See In re Comdisco, 271 B.R. at 277–80 (finding that "the automatic stay almost always delays litigants … [t]hat, after all, is its purpose, and the reason they call it a 'stay'"). Palmer simply would experience the creditor delay that is inherent in the bankruptcy process, and is an unavoidable – and intended – consequence of the automatic stay.[5] Moreover, to the extent that Palmer is successful in the Palmer Appeal, she may

---

[5]    The Debtors attempted to resolve the Motion consensually and offered to enter into a Stipulation and Agreed Order (the "Proposed Stipulation") whereby, with this Court's consent, the automatic stay would be modified for the sole and limited purpose of allowing Palmer to prosecute to decision the Palmer Appeal. Under the proposed stipulation, Palmer's rights to seek further relief from the automatic stay would be preserved in full, and the Debtors would reserve all rights to object to any further relief requested by Palmer. Palmer rejected the Proposed Stipulation.

return to this Court to request additional relief from the automatic stay to pursue her action further.

Conclusion

21.     A balancing of the competing interests of the Debtors and Palmer demonstrates that the automatic stay should not be modified to permit Palmer to proceed with the Palmer litigation other than to argue the pending appeal.  Palmer has failed to meet the burden of establishing that sufficient cause exists to lift the automatic stay.  For the reasons set forth above, the automatic stay should be lifted for the <u>sole</u> and <u>limited</u> purpose of allowing Palmer to prosecute the Palmer Appeal.

Notice

22.     Notice of this Corrected Objection has been provided in accordance with the Seventh Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(m), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management, And Administrative Procedures, entered by this Court on May 19, 2006 (Docket No. 3824).  In light of the nature of the relief requested, the Debtors submit that no other or further notice is necessary.

Memorandum Of Law

23.     Because the legal points and authorities upon which this Corrected Objection relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) denying the Motion and (ii) granting the Debtors such other and further relief as is just.

Dated: New York, New York
       June 15, 2006

                SKADDEN, ARPS, SLATE, MEAGHER
                   & FLOM LLP

By: /s/   John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons (JL 4951)
    Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois  60606
(312) 407-0700

 - and -

By: /s/   Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession