**Hearing Date: June 19, 2006**
                    **Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Ron E. Meisler (RM 3026)

    - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
    Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
                                           :
    In re                              :    Chapter 11
                                           :
DELPHI CORPORATION, et al.,       :    Case No. 05-44481 (RDD)
                                         :
                                         :    (Jointly Administered)
               Debtors.          :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

DEBTORS' RESPONSE TO O'NEILL CLAIMANTS' SUPPLEMENT TO MOTION
FOR RELIEF FROM AUTOMATIC STAY AND OBJECTIONS TO DEBTORS'
<u>APPLICATION TO ESTABLISH CLAIMS PROCEDURES</u>

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this response (the "Response") to the supplement to motion of Mary P. O'Neill and Liam P. O'Neill (the "O'Neills") for relief from automatic stay and objections to Debtors' application to establish claims procedures (the "Supplement"), dated June 13, 2006 (Docket No. 4173), and respectfully represent as follows:

Preliminary Statement

1. The O'Neills, litigation claimants with alleged unsecured claims against the Debtors, originally filed their motion for relief from the automatic stay on March 8, 2006 (Docket No. 2748) (the "Motion"). The Debtors objected to the Motion for several reasons, but primarily because the mechanics of their insurance program causes the O'Neills' unsecured claims to diminish the Debtors' estate as an administrative expense priority claim. After reviewing the applicable insurance policies, the O'Neills do not dispute this fundamental point. Because the O'Neills' unsecured claim will have such an effect on the estates, the Debtors' protection under the automatic stay should be maintained, and the Motion should be denied.

A.   The O'Neills Do Not Dispute The Debtors' Description
     Of The Mechanics Of Their Insurance Program

2. In the Motion, the O'Neills asserted that they had cause to lift the automatic stay and proceed with their litigation because they were allegedly willing to limit any recovery to the proceeds of any applicable insurance policies, and that granting relief from the stay "would not create any liability upon [the] Debtors." Motion ¶¶ 4, 5. But in the Debtors' March 31, 2006 objection to the Motion (Docket No. 3051) (the

2

"Objection"), the Debtors explained that because of the mechanics of the Debtors' insurance program, there are effectively no insurance proceeds to pay the first $1 million of any claim the O'Neills may have, because that sum represents the deductible under the applicable insurance policy. Thus, the O'Neills' premise that their claim would not create liability for the estates was incorrect.

3. The mechanics of the Debtors' insurance program first require the Debtors' insurer to pay any portion of the claim that falls within the deductible if the Debtors cannot pay, which is the case now that Delphi filed for chapter 11 relief. On the other hand, amounts paid by the Debtors' insurer within the $1 million deductible result in the insurer's holding a heightened priority claim in an equal amount against the Debtors. Thus, for every dollar paid to the O'Neills by the Debtors' insurer up to the $1 million deductible, the Debtors would have to reimburse their insurer that same amount on an administrative claim basis. In the Objection, the Debtors expressly noted that this mechanism was previously disclosed in the Debtors' motion for order authorizing renewal of insurance coverage (Docket No. 1559) (the "Insurance Agreement Motion").

4. The O'Neills subsequently filed a reply on April 6, 2006 (Docket No. 3132) (the "Reply"). In the Reply, the O'Neills no longer requested to collect any judgment solely from the insurance proceeds, nor did they agree to release the Debtors from any liability. Instead, the O'Neills alleged that they needed to review the Debtors' insurance policies to verify the mechanics of the Debtors' insurance program, and how those mechanics might affect the O'Neills' right to recover any judgment related to their claim. The O'Neills sought this discovery to confirm the Debtors' assertion that claims paid by their insurer would circle back as priority claims against the estate.

5. After receiving discovery sufficient to demonstrate the mechanics of the Debtors' insurance program applicable to their claims, on June 13, 2006, the O'Neills filed the Supplement. In the Supplement, the O'Neills agree with the Debtors' description of the mechanics of their insurance program as it relates to the ultimate effect on the Debtors' estate, but now allege that it is irrelevant.[1] Supplement ¶¶ 11, 21. Instead, the O'Neills now contend that by obtaining an order approving the Insurance Agreement Motion (the "Insurance Agreement Order"), the Debtors have waived the protections of the automatic stay as it pertains to the alleged prepetition claims affected by the Insurance Agreement Order. That is not correct.

6. First, the insurer's obligation to pay a claim like the O'Neills arises out of the applicable insurance policies, not the Insurance Agreement Order. Nothing in the Insurance Agreement Order creates any additional obligations to the Debtors' insurer under the prepetition insurance program. Indeed, if the Debtors had never filed the Insurance Agreement Motion, their insurer's obligations under the prepetition insurance program with respect to the O'Neills' claims would be the same as they are today. Second, the insurer's right to seek reimbursement from the Debtors for payments made in accordance with the insurance program also arises from the applicable insurance policies, not the Insurance Agreement Order. As previously stated in the Objection, even if the Debtors had not assumed these insurance agreements, the insurers, after paying the O'Neills amounts within the applicable deductible, would have the right under the

---

[1] The O'Neills incorrectly allege that the insurer has an initial obligation to pay claims under the Debtors' insurance program. Such an obligation arises only when the Debtors fail to pay the claims, which is the case now that the Debtors have sought chapter 11 relief. Regardless of this disagreement, the O'Neills do not dispute that given the current circumstances, if the Debtors' insurer pays the O'Neills' claim, the insurer would have the right to seek reimbursement from the Debtors, and such reimbursement would be paid in full.

4

insurance agreements to draw down on the letter of credit that was issued under the Debtors' prepetition security facility. This would in turn increase the amount of funded debt owed to prepetition lenders. Thus, even if the Debtors had not assumed the insurance agreements, any claim paid by the Debtors' insurers would affect the Debtors' estates. Objection ¶ 12, n.5. The Insurance Agreement Order simply provides the insurer with a second option for recovering, in full, any payments that it makes on behalf of the Debtors. Either way, because the harm to the estates that the Debtors have described is not disputed by the O'Neills, this Court should deny the Motion.

7. In the Supplement, the O'Neills also request to take additional discovery, including depositions of the individuals employed by the Debtors' and their claims administrators purportedly to explore any "remaining issue of fact" related to the mechanics of the Debtors' insurance program. This is a red herring: Although the O'Neills mischaracterize several aspects of the insurance program, they ultimately do not dispute that claims paid by the insurer would circle back as heightened priority claims against the Debtors' estate. Supplement ¶¶ 11, 21. Thus, there is no material dispute of facts pertinent to the Motion and the O'Neills' request for additional discovery should be rejected.

8. Indeed, the O'Neills' latest request for more discovery fits into a well-established pattern that has played out in this Court. To date, the O'Neills have filed the Motion, the memorandum in support of the Motion, the Reply, and the Supplement. In addition, the O'Neills have propounded interrogatories and a request for production of documents on the Debtors related to an issue that they now argue should be irrelevant, and they now seek to take additional discovery and depositions of individuals to better

understand facts that are not in dispute, and which they now claim are irrelevant to the Motion. Additionally, the June 19, 2006 omnibus hearing will mark the third time that the Motion has been set for hearing, with none of the prior adjournments being at the Debtors' request. The Motion already has distracted the Debtors from critical issues in these cases. The automatic stay was designed to avoid precisely this type of distraction for debtors. For this additional reason, the Motion should be denied without further delay.

B.      The O'Neills' Objection To The Lift Stay Procedures Is Moot

9.      In the Supplement, the O'Neills also assert a limited objection to the Debtors' motion for order establishing procedures (the "Lift Stay Procedures") for modifying the automatic stay applicable in these cases, to the extent necessary, for (i) liquidating and settling and/or (ii) mediating certain prepetition litigation claims (Docket No. 4038) (the "Lift Stay Procedures Motion"). The O'Neills do not object to the general implementation of the Lift Stay Procedures. Instead, the O'Neills "object strenuously to any attempt by Debtors to use those procedures to preempt their state court action and force O'Neills to submit to the procedures instead." Supplement ¶ 26. But this objection obviously is misplaced, because the O'Neills themselves correctly point out that there is no requirement that a litigation claimant, including the O'Neills, proceed under the Lift Stay Procedures. Supplement ¶ 28. The Lift Stay Procedures only applies to claimants who voluntarily choose to participate. Thus, by their own acknowledgment, the O'Neills' objection to the Lift Stay Procedures is moot and should be overruled.

Conclusion

10.     The automatic stay should not be modified to permit the O'Neills to proceed with litigation of their unsecured prepetition claims. Modification of the

6

automatic stay would prejudice the Debtors. For the reasons set forth above, the Motion should be denied. Additionally, the O'Neills' objection to the Lift Stay Procedures Motion should be overruled.

### Notice

11. Notice of this Response has been provided in accordance with the Seventh Supplemental Order Under 11 U.S.C. §§ 102(1) and 105 and Fed. R. Bankr. P. 2002(m), 9006, 9007, and 9014 Establishing Omnibus Hearing Dates and Certain Notice, Case Management, and Administrative Procedures, entered May 19, 2006 (Docket No. 3824). The Debtors submit that no other or further notice is necessary.

### Memorandum Of Law

12. Because the legal points and authorities upon which this Response relies are incorporated herein, the Debtors respectfully request that the requirement of the service and filing of a separate memorandum of law under Local Rule 9013-1(b) of the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York be deemed satisfied.

WHEREFORE the Debtors respectfully request that the Court enter an order (i) denying the Motion and, (ii) overruling the O'Neills' objection to the Lift Stay Procedures Motion, and (iii) granting the Debtors such other and further relief as is just.

Dated:     New York, New York
           June 16, 2006

SKADDEN, ARPS, SLATE, MEAGHER
   & FLOM LLP

By:  /s/ John Wm. Butler, Jr.
     John Wm. Butler, Jr. (JB 4711)
     John K. Lyons (JL 9331)
     Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By:  /s/ Kayalyn A. Marafioti
     Kayalyn A. Marafioti (KM 9632)
     Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession