**Hearing Date: June 19, 2006**
                                                              **Hearing Time: 10:00 a.m. (Prevailing Eastern Time)**

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan III (AH 8807)
Ron E. Meisler (RM 3026)

       - and -

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Four Times Square
New York, New York 10036
(212) 735-3000
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

Delphi Legal Information Hotline:
Toll Free: (800) 718-5305
International: (248) 813-2698

Delphi Legal Information Website:
http://www.delphidocket.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | x : | |
| In re | : : | Chapter 11 |
| DELPHI CORPORATION, et al., | : : | Case No. 05-44481 (RDD) |
| Debtors. | : : : | (Jointly Administered) |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | x | |

DEBTORS' REPLY TO LIMITED OBJECTION
OF WILMINGTON TRUST COMPANY, AS INDENTURE TRUSTEE, TO MOTION FOR ORDER
UNDER 11 U.S.C. § 363(b) AND FED. R. BANKR. P. 2002 AND 6004 AUTHORIZING AND
APPROVING DEBTORS' ENTRY INTO TRANSFER AGREEMENT WITH JOHNSON CONTROLS,
INC. PROVIDING FOR (A) SALE OF ACQUIRED ASSETS FREE AND CLEAR OF LIENS,
CLAIMS, AND ENCUMBRANCES (B) CONTINUATION AND TRANSITION OF SUPPLY TO
JOHNSON CONTROLS, INC. OF BATTERY PRODUCTS OUT OF FITZGERALD FACILITY AND
(C) IMPLEMENTATION OF ATTRITION PLAN WITH RESPECT TO NEW BRUNSWICK
<u>FACILITY IN ACCORDANCE WITH IUE-CWA MEMORANDUM</u>

Delphi Corporation ("Delphi") and certain of its subsidiaries and affiliates (the "Affiliate Debtors"), debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), hereby submit this response (the "Reply") to the preliminary objection (the "Objection") timely filed by Wilmington Trust Company, as indenture trustee ("WTC") (Docket No. 4098) to the Debtors' Motion For Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 2002 And 6004 Authorizing And Approving Debtors' Entry Into Transfer Agreement With Johnson Controls, Inc. Providing For (A) Sale Of Acquired Assets Free And Clear Of Liens, Claims, And Encumbrances (B) Continuation And Transition Of Supply To Johnson Controls, Inc. Of Battery Products Out Of Fitzgerald Facility And (C) Implementation Of Attrition Plan With Respect To New Brunswick Facility In Accordance With IUE-CWA Memorandum, dated May 29, 2006 (Docket No. 3927) (the "Motion").[1]  In support of this Reply, the Debtors respectfully represent as follows:[2]

---

[1] The United States Department of Justice ("DOJ"), on behalf of the United States Environmental Protection Agency, filed an objection going to certain environmental issues (Docket No. 4116).  The Debtors, JCI, and the DOJ have resolved the DOJ's objection by agreeing to include the following paragraph in the proposed order:

> 32.    Nothing in this Order approving the Transfer Agreement: (a) releases or nullifies any liability to a government entity under environmental statutes or regulations that any entity would be subject to as owner or operator of such property; and (b) precludes or prevents a governmental entity from exercising any powers under police and regulatory statutes, or regulations, that would be applicable to any entity as an owner or operator of property.  However, this Order does not act as a determination that JCI is or will be an owner or operator of any property.

A blacklined version of the Proposed Order is attached hereto as Exhibit A

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Motion.

2

Preliminary Statement

1. In its continued quest to shift the obligations and liabilities of Delphi Corporation to its Affiliate Debtors in order to improperly isolate non-bondholder claims from Delphi Corporation's assets, WTC has filed yet another in a series of similar objections – this time in opposition to Delphi Corporation's funding of the IUE-CWA New Brunswick Attrition Plan.[3] Delphi is funding this attrition program on account of the national collective bargaining agreement between Delphi Corporation and the IUE-CWA, dated November 16, 2003 and all of the supplemental agreements thereto (the "IUE-CWA National Agreement").  By its Objection, WTC seeks to prevent Delphi Corporation, the signatory to the IUE-CWA Memorandum, from funding the costs of the IUE-CWA New Brunswick Attrition Plan.  Instead, WTC would require Delphi Automotive Systems LLC ("DAS LLC"), the signatory to the Transfer Agreement, to fund these costs on Delphi Corporation's behalf.

2. The Debtors and WTC have resolved part of WTC's objection by confirming that the payment of $12.5 million by Johnson Controls, Inc. ("JCI") pursuant to the Transfer Agreement will be paid to Delphi Corporation (as had been the Debtors' intention in any event).  Accordingly, paragraph 20 of the proposed order has been revised as follows:

> 20. Both the $12.5 million to be paid by JCI pursuant to Section 3.A(xi) of Exhibit 4.1 to the Transfer Agreement and the economic support to be provided by General Motors Corporation

---

[3] This attempt to shift liabilities away from Delphi Corporation – the issuer of the senior bonds – is particularly striking since the bondholders were well aware that Delphi Corporation was liable for pension and other human capital obligations arising from the collective bargaining agreements between Delphi Corporation and its unions.  See Prospectus Supplement dated April 28, 1999, pages S-4 and S-20.  Similar language is contained or is otherwise incorporated by reference in each of the two other prospectus supplements covering the series of senior bonds outstanding, dated May 31, 2001 and July 22, 2003.

>      to Delphi Corporation upon the transfer of the New Brunswick
>      Facility to JCI shall be paid to Delphi Corporation.

The economic support to be provided by General Motors Corporation ("GM") is pursuant to an agreement between GM and Delphi Corporation, so those funds will flow directly to Delphi Corporation, the party that is the signatory to the IUE-CWA Memorandum and is therefore responsible for funding the IUE-CWA New Brunswick Attrition Plan.

       3.      The only unresolved issues are WTC's assertions that (i) Delphi Corporation is not the proper debtor entity to fund the IUE-CWA New Brunswick Attrition Plan and (ii) it is not in the best interests of Delphi Corporation to fund that attrition plan. Both assertions are wrong.

       4.      First, Delphi Corporation is the proper party to fund the IUE-CWA New Brunswick Attrition Plan because Delphi Corporation is the signatory and consequent obligor to the IUE-CWA National Agreement. Since the IUE-CWA New Brunswick Attrition Plan relates to and modifies the obligations under the IUE-CWA National Agreement, it is only logical that Delphi Corporation would execute the agreement with the IUE-CWA memorializing the attrition program. Second, it is in the best interests of Delphi Corporation to enter into the IUE-CWA Memorandum and fund the IUE-CWA New Brunswick Attrition Plan because to do otherwise would expose Delphi Corporation to even greater losses. Finally, Delphi Corporation has secured significant economic support that will fund substantially all, if not all, of the cost of the IUE-CWA New Brunswick Attrition Plan. As set forth below, the Debtors estimate that the IUE-CWA New Brunswick Attrition Plan would pay for itself well before the end of 2006.

Argument

A. Delphi Corporation Is The Proper Party To Fund
   The IUE-CWA New Brunswick Attrition Program

5. Delphi Corporation is the signatory and consequent obligor to the IUE-CWA National Agreement. It ultimately is responsible for the wages and benefits provided to IUE-CWA-represented employees under that agreement, including but not limited to other post-employment benefits ("OPEB") and JOBS Bank benefits for laid-off employees.

6. To the extent that a subsidiary of Delphi Corporation pays for any of these benefits provided for under the IUE-CWA National Agreement, that subsidiary has an assertable claim against Delphi Corporation. As this Court noted at the April 7, 2006 hearing on the Debtors' motion to approve the UAW Special Attrition Program, subsidiaries of Delphi Corporation that pay benefits to UAW-represented employees have claims against Delphi Corporation, as the signatory and consequent obligor to the Debtors' national collective bargaining agreement with the UAW. At that hearing, WTC's counsel asserted that Delphi Corporation's subsidiaries are reaping the benefits of attriting union-represented employees while Delphi Corporation is paying the bill. In response, the Court said:

> Well, at the minimum, if the agreement said that GM was going to assert its claim against the subsidiaries that use UAW employees, wouldn't the subsidiaries go right back and assert that that's – they should be reimbursed for that by Delphi since Delphi is the party on the collective bargaining agreement and on the contracts with GM?

April 7, 2006 Tr. at 117:10-19.[4]

7. The Court's observation was entirely consistent with the Debtors' corporate structure. The Debtors have an intercompany mechanism in place to allow subsidiaries

---

[4] A copy of this excerpt from the April 7, 2006 transcript is attached hereto as Exhibit B.

5

of Delphi Corporation, such as DAS LLC, to assert those claims against Delphi Corporation. Delphi Corporation (under "Delphi Automotive Systems, Inc.," the name by which it was known at the time), DAS LLC, and Delphi Automotive Systems (Holding), Inc. are parties to that certain Intercompany Agreement dated May 17, 1999, a copy of which is attached hereto as <u>Exhibit C</u>. The Intercompany Agreement is an intercompany cash pooling agreement allowing for Delphi Corporation and its subsidiaries to engage in intercompany transactions, track intercompany transfers of funds, and obtain reimbursement for services provided to each other.

B. <u>It Is In The Best Interests Of Delphi Corporation To Fund
The IUE-CWA New Brunswick Attrition Plan</u>

8.      The presence of this intercompany mechanism allowing subsidiaries of Delphi Corporation to assert claims against their parent corporation shows why, contrary to WTC's assertion, it is in Delphi Corporation's best interests to fund the IUE-CWA New Brunswick Attrition Plan. This attrition plan is an essential component of the Transfer Agreement, without which the transaction would not have been consummated. Were the transaction to fail, DAS LLC would likely be forced to close the New Brunswick Facility rather than allow it to remain a cash drain in the amount of approximately $3 million per month.

9.      Closing the facility and laying off its approximately 300 employees, would create significant costs, as the Debtors estimate that approximately two-thirds of those employees would be eligible for JOBS Bank benefits under the IUE-CWA National Agreement. The Debtors estimate that those benefits (which are the responsibility of Delphi Corporation on account of its obligations under the IUE-CWA National Agreement), would total approximately $2.2 million per month in payroll costs. As set forth below, the costs to Delphi Corporation of funding that attrition program would quickly be exceeded by the costs of not funding it.

10. The costs to Delphi Corporation of funding the IUE-CWA New Brunswick Attrition Plan are estimated to be between $18.5 million to $22.8 million, less the aggregate of $12.5 million to be paid by JCI under the Transfer Agreement plus the economic support to be provided by GM under its separate agreement with Delphi Corporation. (As set forth in the Motion, the terms of this agreement with GM, including the amount of this economic support, are confidential.) Thus, the costs to Delphi Corporation will be between $5.5 million and $10.3 million, less GM's significant support. Without even considering GM's support, the cost of closing the New Brunswick Facility, at $2.2 million per month in JOBS Bank benefits, would exceed the costs of funding the IUE-CWA New Brunswick Attrition Plan within 2½ to 5 months. After factoring in GM's support, the attrition plan would pay for itself even sooner.

11. In sum, the Debtors believe that Delphi Corporation's entry into the IUE-CWA New Brunswick Attrition Plan constitutes a reasonable exercise of business judgment, will improve net cash flow, and reduce projected operating losses flowing from, among other sources, Delphi Corporation's obligations under the IUE-CWA National Agreement.

WHEREFORE the Debtors respectfully request that this Court enter an order (a) overruling the Objection, (b) granting the Motion, and (c) granting the Debtors such other and further relief as is just.

Dated: New York, New York
June 16, 2006

SKADDEN, ARPS, SLATE, MEAGHER
& FLOM LLP

By: /s/ John Wm. Butler, Jr.
John Wm. Butler, Jr. (JB 4711)
John K. Lyons (JL 4951)
Albert L. Hogan III (AH 8807)
Ron E. Meisler (RM 3026)
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

- and -

By: /s/ Kayalyn A. Marafioti
Kayalyn A. Marafioti (KM 9632)
Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
Debtors and Debtors-in-Possession

8