IN THE UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                                      :
          In re                       :   Chapter 11
                                      :
  DELPHI CORPORATION, et al.,         :   Case No. 05-44481 (RDD)
                                      :
                          Debtors.    :   (Jointly Administered)
                                      :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  X
```

## AFFIDAVIT OF SERVICE

I, Evan Gershbein, being duly sworn according to law, depose and say that I am employed by Kurtzman Carson Consultants, LLC, the Court appointed claims and noticing agent for the Debtors in the above-captioned cases.

On June 20, 2006, I caused to be served the document listed below upon the parties listed on Exhibit A hereto via overnight delivery and via facsimile:

Notice of Proposed De Minimis Transfer and License of Patents Free and Clear of Liens, Claims, and Encumbrances [a copy of which is attached hereto as Exhibit B]

Dated: June 22, 2006

                                                   */s/ Evan Gershbein*
                                                   Evan Gershbein

Subscribed and sworn to (or affirmed) before me on this 22nd day of June, 2006, by Evan Gershbein, personally known to me or proved to me on the basis of satisfactory evidence to be the person who appeared before me.

Signature :  */s/ Amy Lee Huh*

Commission Expires:  *3/15/09*

# EXHIBIT A

Delphi Corporation
Special Parties

| COMPANY | CONTACT | ADDRESS1 | ADDRESS2 | CITY | STATE | ZIP | FAX |
|---|---|---|---|---|---|---|---|
| Davis Polk & Wardwell | Donald S. Bernstein, Esq. | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-3092 |
| Davis Polk & Wardwell | Brian Resnick, Esq. | 450 Lexington Avenue | | New York | NY | 10017 | 212-450-3213 |
| Fried, Frank, Harris, Shriver & Jacobson LLP | Bonnie Steingart, Esq. | One New York Plaza | | New York | NY | 10004 | 212-859-8585 |
| General Motors Corporation (Legal Department) | Kenneth D. Enborg, Esq. | 300 GM Renaissance Center | P.O. Box Mail Code 482-C25-A36 | Detroit | MI | 48265-3000 | 313-665-4976 |
| Honigman Miller Schwartz and Cohn LLP | Frank L. Gorman, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-8000 |
| Honigman Miller Schwartz and Cohn LLP | Robert B. Weiss, Esq. | 2290 First National Building | 660 Woodward Avenue | Detroit | MI | 48226-3583 | 313-465-8000 |
| Kelley Drye & Warren LLP | Eric R. Wilson, Esq. | 101 Park Avenue | | New York | NY | 10178 | 212-808-7897 |
| Kelley Drye & Warren LLP | Joseph A. Boyle, Esq. | 200 Kimball Avenue | | Parsippany | NJ | 7054 | 973-503-5950 |
| Latham & Watkins LLP | Robert J. Rosenberg, Esq. | 885 Third Avenue | | New York | NY | 10022 | 212-751-4864 |
| Latham & Watkins LLP | Mark A. Broude, Esq. | 885 Third Avenue | | New York | NY | 10022 | 212-751-4864 |
| Office of the United States Trustee for the Southern District of New York | Alicia M. Leonhard, Esq. | 33 Whitehall Street | Suite 2100 | New York | NY | 10004 | 212-668-2255 |
| Pension Benefit Guaranty Corporation | Karen L. Morris, Esq. | Associate Chief Counsel | 1200 K Street, N.W., Suite 340 | Washington | DC | 20005-4026 | 202-326-4112 |
| Pension Benefit Guaranty Corporation | Jeffrey Cohen, Esq. | Chief Counsel | 1200 K Street, N.W. Suite 340 | Washington | DC | 20005-4026 | 202-326-4112 |
| Pension Benefit Guaranty Corporation | Joan Segal, Esq. | 1200 K Street, N.W., Suite 340 | | Washington | DC | 20005-4026 | 202-326-4112 |
| Pension Benefit Guaranty Corporation | Ralph L. Landy, Esq. | 1200 K Street, N.W. Suite 340 | | Washington | DC | 20005-4026 | 202-326-4112 |
| Simpson Thacher & Barlett LLP | Kenneth S. Zinman, Esq. | 425 Lexington Avenue | | New York | NY | 10017 | 212-455-2502 |
| Weil, Gotshal & Manges LLP | Jeffrey L. Tanenbaum, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8007 |
| Weil, Gotshal & Manges LLP | Martin J. Bienenstock, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8007 |
| Weil, Gotshal & Manges LLP | Michael P. Kessler, Esq. | 767 Fifth Avenue | | New York | NY | 10153 | 212-310-8007 |

In re. Delphi Corporation, et al.
Case No. 05-44481 (RDD)

Page 1 of 1

6/21/2006 1:54 PM
Revised Notice Special Parties

# EXHIBIT B

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
: 
   In re                                      :     Chapter 11
:
DELPHI CORPORATION, et al.,          :     Case No. 05-44481 (RDD)
:
                           Debtors.   :     (Jointly Administered)
:
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NOTICE OF PROPOSED DE MINIMIS TRANSFER AND LICENSE OF
PATENTS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES

PLEASE TAKE NOTICE THAT in accordance with the Order Under 11 U.S.C. § 363 Approving Procedures To Sell Certain De Minimis Assets Free And Clear Of Liens, Claims, And Encumbrances And To Pay Market Rate Broker Commissions In Connection With Such Sales Without Further Court Approval, entered on October 28, 2005, (Docket No. 766) (the "De Minimis Asset Sale Order"), Delphi Technologies, Inc., a Delaware corporation (the "Debtor"), hereby gives notice of its intention to transfer, convey, and assign to Freudenberg NOK Mechatronics KG, a company organized under the laws of Germany (the "Purchaser"), full ownership of European patent No. 117430 and German patent application No. 10253145 (the "Transferred Patents") pursuant to that certain Patent And Know-How Transfer And License Agreement, dated as of June 19, 2006, (the "Patent Transfer Agreement").  A copy of the Patent Transfer Agreement is attached hereto as Exhibit A.  In addition, pursuant to the Patent Transfer Agreement, the Debtor intends to grant a sole non-transferable license for the use of certain Licensed Patents (as defined in the Patent Transfer Agreement).

PLEASE TAKE FURTHER NOTICE THAT in consideration of the foregoing, Purchaser shall pay the Debtor EUR 326,000 (approximately $411,281, as of June 19, 2006).

PLEASE TAKE FURTHER NOTICE THAT the Purchaser is not an insider of the Debtor as such term is defined in section 101(31) of the Bankruptcy Code and has no other connections to the Debtor.

PLEASE TAKE FURTHER NOTICE THAT no broker was used in the transfer, conveyance, and assignment of the Transferred Patents or license of the Licensed Patents.

PLEASE TAKE FURTHER NOTICE THAT pursuant to the De Minimis Assets Sale Order, the Debtor will consummate the transfer, conveyance, and assignment of the Transferred Patents free and clear of liens, claims, and encumbrances, and take such actions as are necessary to close the transaction, including, but not limited to, collection of proceeds of the transfer, conveyance, and assignment of the Transferred Patents and Licensed Patents, provided that counsel to the Debtor does not receive from a party that receives this notice (a "Notice Party"), within five business days after the date following the Notice Party's initial receipt of this notice, a written objection or written request for additional time to evaluate the proposed sale.

PLEASE TAKE FURTHER NOTICE THAT pursuant to the same transaction, Delphi Deutschland Gmbh ("Delphi Deutschland"), a non-debtor affiliate of the debtors in the above-captioned chapter 11 cases, intends to grant to the Purchaser a world-wide right and license of all know-how related to the Licensed Patents, developed and owned by Delphi Deutschland, including but not limited to, confidential processes and formulae relating to the use and understanding of the Licensed Patents in exchange for payments from

2

Purchaser based on a percentage of the revenue generated from the sale of its operations in

Berlin, Germany.

Dated: New York, New York
      June 20, 2006

                                SKADDEN, ARPS, SLATE, MEAGHER
                                     & FLOM LLP

By: /s/ John Wm. Butler, Jr.
    John Wm. Butler, Jr. (JB 4711)
    John K. Lyons
    Ron E. Meisler
333 West Wacker Drive, Suite 2100
Chicago, Illinois 60606
(312) 407-0700

   - and -

By: /s/ Kayalyn A. Marafioti
    Kayalyn A. Marafioti (KM 9632)
    Thomas J. Matz (TM 5986)
Four Times Square
New York, New York 10036
(212) 735-3000

Attorneys for Delphi Corporation, et al.,
   Debtors and Debtors-in-Possession

**Exhibit A**
**Patent And Know-How Transfer Agreement**

## PATENT AND KNOW-HOW TRANSFER AND LICENSE AGREEMENT

THIS AGREEMENT, dated this 19th day of June, 2006, is between Delphi Deutschland GmbH (herein after "DELPHI DEUTSCHLAND"), a German limited liability company, having its registered seat at Vorm Eichholz 1, 42119 Wuppertal, Germany, Delphi Technologies, Inc. (herein after "PATENT OWNER"), a corporation of the State of Delaware, having its principal office at 5725 Delphi Drive, Troy MI 48098, U.S.A., and Freudenberg NOK Mechatronics GmbH & Co. KG (hereinafter called "LICENSEE"), a limited partnership registered and organized under the laws of Germany, having its principal office at Höhnerweg 2 – 4, 69469 Weinheim / Bergstraße, Germany.

WHEREAS, DELPHI DEUTSCHLAND and LICENSEE entered into a Business Transfer Agreement (the "Business Transfer Agreement") on the date hereof, pursuant to which LICENSEE purchases and acquires, and DELPHI DEUTSCHLAND sells, transfers and assigns, the Business (as defined in the Business Transfer Agreement);

WHEREAS, DELPHI DEUTSCHLAND has developed certain intellectual property including technical know-how that is necessary or useful in the Business;

WHEREAS, PATENT OWNER holds legal title to certain patents relating to the intellectual property developed by DELPHI DEUTSCHLAND that are necessary or useful in the Business;

WHEREAS, On October 8, 2005, PATENT OWNER, along with certain of its affiliates, filed voluntary petitions for relief commencing a case under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101 – 1330, as amended (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of New York (the "Bankruptcy Court");

WHEREAS, PATENT OWNER and certain of its affiliates continue to operate their businesses and amange their properties as debtors-in-possession pursuant to sections 1107 (a) and 1108 of the Bankruptcy Code;

WHEREAS, LICENSEE desires to obtain all know-how related to the Business, certain patents and a sole license relating to certain other patents related to the Business;

WHEREAS, Capitalized terms not otherwise defined herein shall have the meanings ascribed thereto in the Business Transfer Agreement;

575297.0F-Chicago Server 2A                                            KISW - Draft June 16, 2006 - 11:56 AM

NOW, THEREFORE, in consideration of the premises, the agreements, covenants, and conditions herein contained, it is agreed as follows:

ARTICLE 1 – DEFINITIONS

1.1 "Affiliates" as used herein shall mean any legal entity either directly or indirectly controlling, controlled by, or under common control with a Party. For the purpose of this definition, control shall mean ownership or control of at least fifty percent (50%) of a legal entity's voting stock or other ownership or voting interests.

1.2 "Assigned Patents" as used herein shall mean European patent no. 1174310 (granted and covering Germany, France and Italy) and German patent application no. 10253145.

1.3 "Closing Date" has the meaning ascribed to it in the Business Transfer Agreement.

1.4 "De Minimis Sale Order" as used herein shall mean the Order Under 11 U.S.C. § 363 Approving Procedures To Sell Certain De Minimis Assets Free And Clear Of Liens, Claims, And Encumbrances And To Pay Market Rate Broker Commissions In Connection With Such Sales Without Further Court Approval, entered by the Bankruptcy Court on October 27, 2005 and attached hereto as Annex 1.4.

1.5 "Flexible Printed Cable Products" as used herein means flat, flexible laminated, extruded, printed or etched cable produced by the Business.

1.6 "Know-how" as used herein shall mean confidential processes and formulae, which are related to the use or understanding of the Licensed Patents.

1.7 "Licensed Patents" as used herein shall mean the patents and applications owned by DELPHI DEUTSCHLAND and PATENT OWNER identified in Annex 1.7, including any extensions, continuations, divisionals, continuations-in-part, re-examinations, reissues, and foreign counterparts thereof.

1.8 "Party" as used herein shall mean either DELPHI DEUTSCHLAND, PATENT OWNER or LICENSEE, and "Parties" shall mean collectively DELPHI DEUTSCHLAND, PATENT OWNER and LICENSEE.

2

1.9   "Strategic Alliance Agreement" as used herein shall mean the Strategic Alliance Agreement signed between the LICENSEE and DELPHI DEUTSCHLAND on the date hereof.

1.10  "Tax" as used herein shall mean any corporate tax, sales tax, documentary and stamp taxes, transfer taxes, use taxes, excise taxes, value-added taxes, registration duties, withholding tax, local taxes, gross receipts or similar charges and all charges for filing and recording documents in connection with this Agreement.

## ARTICLE 2 – ASSIGNMENT OF ASSIGNED PATENTS

On the terms and subject to the conditions set forth in this Agreement and in the De Minimis Sale Order PATENT OWNER herewith transfer, conveys and assigns full ownership for the Assigned Patents to LICENSEE at the later of (i) the third business day after the condition set forth in Article 7 shall have been satisfied or (ii) the Closing Date. LICENSEE herewith accepts the transfer, conveyance and assignment.

## ARTICLE 3 – LICENSE OF LICENSED PATENTS

On the terms and subject to the conditions set forth in this Agreement, PATENT OWNER (subject to the full satisfaction of the terms and conditions of the De Minimis Sale Order) grants to LICENSEE and LICENSEE's Affiliates a sole (subject to pre-existing rights of others), non-transferable, worldwide right and license, with the right to sublicense to its Affiliates, to use the Licensed Patents to make, have made, use, have used, sell, and import Flexible Printed Cable Products. For the avoidance of doubt, this sole license shall not affect DELPHI DEUTSCHLAND'S and DELPHI DEUTSCHLAND'S Affiliates right to make full commercial use of the Licensed Patents, with the right to grant sub-licenses, of the Licensed Patents.

## ARTICLE 4 – LICENSE GRANTED TO DELPHI DEUTSCHLAND

LICENSEE grants to DELPHI DEUTSCHLAND and DELPHI DEUTSCHLAND's Affiliates a paid-up, non-transferable, worldwide right and license, without the right to sublicense, under the Assigned Patents, to use, sell, and import DELPHI DEUTSCHLAND's and DELPHI DEUTSCHLAND's Affiliates products.

1

### ARTICLE 5 – LICENSE OF KNOW-HOW

On the terms and subject to the conditions set fort in this Agreement DELPHI DEUTSCHLAND grants to LICENSEE and LICENSEE's Affiliates a world-wide right and license to use and make use of the Know-How

### ARTICLE 6 – PURCHASE PRICE, ROYALTIES, STATEMENTS, AND PAYMENTS

6.1  In consideration of PATENT OWNER's transfer, conveyance and assignment of full ownership of the Assigned Patents to LICENSEE and the grant of the license to the Licensed Patents set forth in Article 3 of this Agreement, LICENSEE shall pay PATENT OWNER an amount equal to Euro 326,000 (three hundred twenty six thousand Euro) (the "Purchase Price") on the Closing Date. Payment of the Purchase Price shall be made by wire transfer of funds to the following account of PATENT OWNER.

J.P. Morgan Chase & Co.
One Chase Manhattan Plaza
New York, New York 10081, U.S.A.
ABA # 021000021

for credit to

Account Number 323022537
DELPHI Technologies Inc.

6.2  In consideration of DELPHI DEUTSCHLAND's license of the Know-how set forth in Article 5 of this Agreement, LICENSEE shall pay DELPHI DEUTSCHLAND an amount equal to 1 % of the revenue generated from the sale of Booked Business (as defined in the Strategic Alliance Agreement) and an amount equal to 3 % of the revenue generated from the sale of New Business (as defined in the Strategic Alliance Agreement) for a period of five years from the Closing Date as a royalty.

6.3  LICENSEE shall pay 5 % interest per annum to PATENT OWNER and DELPHI DEUTSCHLAND upon any and all amounts that are past due in excess of ten (10) business days from the due date as determined in accordance with Article 6.6 below.

6.4  Within ten (10) days prior to the end of each calendar year during the term of this Agreement, LICENSEE shall furnish DELPHI DEUTSCHLAND with a

-4-

written statement showing LICENSEE's and its Affiliates total Booked Business and New Business.

6.5 For a period of five (5) years after the date of submission of each statement, LICENSEE shall keep true and accurate records, files and books of account containing all the data reasonably required for the full computation and verification of the royalties to be paid hereunder. Upon reasonable notice, LICENSEE shall permit a Certified Public Accountant acceptable to LICENSEE and DELPHI DEUTSCHLAND, and paid for by DELPHI DEUTSCHLAND, to inspect the same at any time during usual business hours at LICENSEE's location, and no more frequently than once annually. Such Accountant shall only disclose to DELPHI DEUTSCHLAND such information as is necessary to verify the accuracy of LICENSEE's statement. In the event that an inspection of LICENSEE's records hereof reveals an underpayment, LICENSEE shall promptly remit the underpayment with interest as specified in Article 6.3 hereof. If the underpayment is in excess of ten percent (10%) of the amount due, LICENSEE shall promptly pay to DELPHI DEUTSCHLAND the deficiency with such interest, and additionally reimburse DELPHI DEUTSCHLAND for all of the costs of the audit.

6.6 All royalties herein shall be in Euro payable within 15 working days from the end of each calendar year based on that year's Booked Business and New Business revenue and in the case of a termination, the royalties due shall be in Euro payable within 15 working days after the termination of this Agreement. Payment shall be made by wire transfer of funds to the following account of DELPHI DEUTSCHLAND:

Deutsche Bank AG
An den Dominikanern 11 – 27
50668 Köln
Germany

Account No: 0 71 21 58 00
BLZ: 330 700 90
IBAN: DE42 3307 0090 0071 2158 00
SWIFT CODE: DEUTDEDW

By Order of: Freudenberg NOK Mechatronics GmbH & Co. KG

6.7 The consideration payable under Article 6.1 and all other amounts payable pursuant to this Agreement shall be exclusive of any Tax. All such Tax shall be paid by LICENSEE but excluding any Taxes based upon DELPHI

5

DEUTSCHLAND's and PATENT OWNERS net income. If LICENSEE is required to withhold any income taxes from royalties paid under this Agreement, LICENSEE shall promptly furnish tax receipts issued by appropriate tax authorities so as to enable DELPHI DEUTSCHLAND or LICENSOR to support a claim for credit against such Tax.

### ARTICLE 7 – CONDITION PRECEDENT

The respective obligations of each Party to effect the transactions contemplated by this Agreement shall be subject to the full satisfaction of the terms and conditions of the De Minimis Sale Order.

### ARTICLE 8 – TERMINATION

8.1 The term of this Agreement shall begin on the Closing Date and will continue in force for a period of five (5) years, at which time it will expire, unless terminated earlier by DELPHI DEUTSCHLAND or PATENT OWNER as hereinafter provided. Upon the expiration of the Agreement as set forth above, the License granted to LICENSEE under Article 3 shall become perpetual and fully paid-up, and no more royalties shall be due to DELPHI DEUTSCHLAND.

8.2 If LICENSEE defaults in fulfilling any of its obligations or conditions of this Agreement or the Strategic Alliance Agreement, DELPHI DEUTSCHLAND or PATENT OWNER shall give notice of such default specifying the reasons therefore. If LICENSEE does not cure such default within sixty (60) days of such notice, DELPHI DEUTSCHLAND or PATENT OWNER shall then have the right, in their discretion, to terminate this Agreement by giving LICENSEE written notice of such termination. This Agreement shall terminate on the tenth (10th) day after such notice is given.

8.3 In the event that LICENSEE ceases conducting business in the normal course, become insolvent, makes a general assignment for the benefit of creditors, suffers or permits the appointment of a receiver for its business or assets, or shall avail itself of, or become subject to, any proceeding under any statute of Germany relating to insolvency or the protection of rights of creditors, then this Agreement may be terminated effective on the date of such event or at any time thereafter by DELPHI DEUTSCHLAND or PATENT OWNER providing notice electing to terminate this Agreement to LICENSEE.

6

575797 08-Chicago Server 2A

MSW - Draft June 16, 2006 - 11:56 AM

8.4    Any royalties paid by LICENSEE to DELPHI DEUTSCHLAND under Article 6.2 are non-refundable, and will not be refunded to LICENSEE upon termination of this Agreement under this Article 8.

8.5    No failure or delay on the part of DELPHI DEUTSCHLAND or PATENT OWNER in exercising its right of termination hereunder for any one or more defaults shall be construed to prejudice their right of termination for such or for any other or subsequent default.

## ARTICLE 9 - NOTICES

All notices given under this Agreement shall be in writing and shall be deemed to have been properly given when delivered personally, or sent by prepaid registered or certified mail, or by telex or electronic transmission to the following addresses:

If given to PATENT OWNER:

DELPHI Technologies, Inc
Legal Department - M/C 480-410-202
P.O. Box 5052
Troy, MI 48007-5052, U.S.A.
Facsimile Number: +1 248 813 1211

If given to DELPHI DEUTSCHLAND:

DELPHI Deutschland GmbH
Vom Eichholz 1
42119 Wuppertal
Germany
Facsimile Number: +49 202 291 3445

With a copy to
DELPHI European Headquarters
Legal Department
64, avenue de la Plaine de France
95972 Roissy Charles de Gaulle Cedex
Facsimile Number: +33 (0)1 56 48 69 39

If given to LICENSEE:

Freudenberg NOK Mechatronics GmbH & Co. KG.

7

>Höhnerweg 2 - 4
>69469 Weinheim / Bergstraße
>Germany
>Facsimile Number: +49 6201 883709
>
>With a copy to
>Freudenberg & Co. Kommanditgesellschaft
>Legal Department
>Facsimile Number: +49 6201 884552

The date of service shall be deemed to be the date on which such notice was personally delivered, posted, or sent by telex or other electronic transmission. Either party may give written notice of a change of address and, after notice of such change has been received, any notice, payment or statement thereafter shall be given to such party as above provided at such changed address.

### ARTICLE 10 – DISCLAIMER AND INDEMNIFICATION

EXCEPT AS SET FORTH IN THE IMMEDIATELY FOLLOWING SENTENCE, THE KNOW-HOW, ASSIGNED AND LICENSED PATENTS ARE BEING PROVIDED "AS IS," WITHOUT ANY WARRANTY OF ANY KIND, INCLUDING (WITHOUT LIMITATION) ANY WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE.

TO DELPHI DEUTSCHLAND'S AND PATENT OWNER'S BEST KNOWLEDGE NEITHER THE KNOW-HOW, NOR THE ASSIGNED OR LICENSED PATENTS ARE CURRENTLY INFRINGING, ANY INTELLECTUAL PROPERTY OF ANY OTHER PERSON IN ANY MATERIAL RESPECT IN CONNECTION WITH THE OPERATION OF THE BUSINESS.

### ARTICLE 11 – DISPUTE RESOLUTION

11.1 **Informal Dispute Resolution** - In the event that any dispute, controversy, or claim between the Parties arises out of the interpretation of, or performance under this Agreement, the Parties agree to refrain from initiating any legal or other proceedings until all of the procedures set forth in this Article 11 have been exhausted.

11.2 **Negotiation** - The Parties shall first attempt to resolve amicably and informally any dispute, controversy, or claim arising out of or relating to this Agreement,

8

including without limitation the interpretation, performance, breach, termination or invalidity of this Agreement (the "Dispute"). A Party shall initiate informal negotiations to resolve the Dispute by giving the other Party notice ("Request for Informal Dispute Resolution") of such intent. The Request for Informal Dispute Resolution shall (i) describe the Dispute and (ii) propose the procedure for its amicable resolution, including, if appropriate, the hiring of consultants. Within thirty (30) days of the date of such Request for Informal Dispute Resolution, the Parties shall attempt to resolve the Dispute amicably, and no party shall resort to any other means of dispute resolution for at least thirty (30) days after such Request for Informal Dispute Resolution has been delivered.

11.3 <u>Management Negotiation</u> - If any Dispute is not resolved pursuant to Article 11.2 of this Agreement, each Party shall designate one or more executives (the "Executives") to act on behalf of such Party to negotiate to solve the matter. At the earliest practical time, and in any event, no later than thirty (30) days after the conclusion of the process set forth in Article 11.2 of this Agreement, the Executives of both Parties shall meet in a mutually agreeable location to discuss the Dispute. The Executives shall negotiate in good faith to resolve the Dispute, and any resolution shall be set forth in writing and signed by all Parties. Such a resolution shall be final and binding on the Parties.

11.4 <u>Unresolved Dispute</u> - If the Parties are unable to settle any Dispute amicably or by informal negotiations in accordance with Articles 11.2 and 11.3 of this Agreement, then each Party may pursue available legal and equitable remedies, as limited by this Agreement, or if mutually agreeable, resolution through an independent dispute mediator; provided, that any pursuit of legal or equitable remedies against PATENT OWNER must be commenced in the Bankruptcy Court.

## ARTICLE 12 - MISCELLANEOUS

12.1 Nothing in this Agreement shall be construed as conferring any license or right with respect to any trademark, trade or brand name, a corporate name of either Party, or any other name or mark, or abbreviation thereof.

12.2 No license or other right, by implication, estoppel, or otherwise, under any of PATENT OWNER's patents or patent applications, other than the Assigned or Licensed Patents, is conveyed, either directly or indirectly, to LICENSEE under this Agreement

12.3 Nothing in this Agreement shall be construed as imposing on PATENT OWNER and DELPHI DEUTSCHLAND any obligation to institute any suit or action for infringement of the Know-how, Assigned or Licensed Patents, or to defend any suit or action brought by a third party which challenges or concerns the validity of the Know-how, Assigned or Licensed Patents.

12.4 Nothing in this Agreement shall be construed as imposing any obligation on PATENT OWNER OR DELPHI DEUTSCHLAND to file any patent application or to secure any patent or to maintain any patent in force.

12.5 No express or implied waiver by either of the Parties to this Agreement of any breach of any term, condition or obligation of this Agreement by the other Party shall be construed as a waiver of any subsequent breach of that or any other term, condition or obligation.

12.6 This Agreement does not constitute any Party the agent or legal representative of any other Party, each of which is an independent contractor, responsible for its own expenses, including attorney's and other professional fees incurred in connection with the transactions contemplated by this Agreement. No Party is authorized to create any obligation on behalf of any other Party.

12.7 If any term, clause or provision of this Agreement shall be judged to be invalid, the validity of any other term, clause or provision shall not be affected; and such invalid term, clause or provision shall be deemed deleted from this Agreement.

12.8 This Agreement may not be assigned by LICENSEE without the prior written consent of DELPHI DEUTSCHLAND and PATENT OWNER, which shall not be unreasonably withheld.

12.9 Each Party hereto is responsible for compliance with and for obtaining such approvals or permits as may be required under national, local or other governmental laws, ordinances, regulations and rules as may be applicable to the performance of its responsibilities and obligations under this Agreement. The Parties will cooperate in securing any such governmental approvals or permits required to effect the transactions contemplated by this Agreement.

12.10 LICENSEE agrees to comply with all export laws, restrictions, national security controls, and regulations of the United States of America or any other jurisdiction with respect to the Know-how, Assigned and Licensed Patents.

12.11 Except as provided in Article 11.4 with respect to PATENT OWNER, this Agreement shall be enforced, construed, interpreted, and applied in accordance with the laws of the Federal Republic of Germany without regard to its law of conflicts, and LICENSEE hereby submits to the jurisdiction of the courts of the Federal Republic of Germany, for such purposes. The headings of Articles in this Agreement are intended solely for convenience of reference and shall not be considered in construing this Agreement.

12.12 This Agreement constitutes the entire understanding between the Parties with respect to the subject matter hereof; all prior agreements, drafts, representations, statements, negotiations, and undertakings are superseded hereby. No amendment to this Agreement shall be effective unless it is in writing and signed by duly authorized representatives of both Parties.

12.13 Except as PATENT OWNER deems necessary to satisfy Article 7 above or as otherwise agreed to by the Parties in writing, the Parties shall not to make any public announcement of the terms and conditions of this Agreement, and each Party agrees not to use the other Party's name in advertising, publicity, or otherwise, with regard to the subject matter of this Agreement.

11

IN WITNESS WHEREOF, the Parties have caused this Agreement to be duly executed on the date first mentioned above in their names by their proper officers thereunto duly authorized.

ACCEPTED:

DELPHI Deutschland GmbH

*[signature]*
By: Bernd Wegescheide
Title: Geschäftsführer (CFO)
Date: 19.06.2006

By: Stefaan Vandevelde
Title: Geschäftsführer (CEO)
Date: 19.06.2006

DELPHI Technologies, Inc.

*[signature]*
By: Thomas N. Twomey
Title: Vice President
Date: 19.06.2006

Freudenberg NOK Mechatronics GmbH & Co. KG

*[signature]*
By:
Title:
Date: 19.06.2006

12