1

```
1    UNITED STATES BANKRUPTCY COURT

2    SOUTHERN DISTRICT OF NEW YORK

3    Case No. 05-44481

4    - - - - - - - - - - - - - - - - - - - -x

5    In the Matter of:

6

7    DELPHI CORPORATION,

8

9          Debtor.

10

11   - - - - - - - - - - - - - - - - - - - -x

12                  (MORNING SESSION)

13                  U.S. Bankruptcy Court

14                  One Bowling Green

15                  New York, New York

16

17                  May 30, 2006

18                  11:06 a.m.

19

20   B E F O R E:

21   HON. ROBERT D. DRAIN

22   U.S. BANKRUPTCY JUDGE

23

24

25
```

2

```
1    MOTION:  Notice of Hearing Proposed Seventh

2    Omnibus Hearing Agenda filed by John Wm.

3    Butler Jr. on behalf of Delphi Corporation.
```

4    with hearing to be held on 5/30/2006 at 11:00

5    AM at Courtroom 610 (RDD)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed By:  Sharona Shapiro


                                                    3


1

2    A P P E A R A N C E S :

3    SKADDEN, ARPS, SLATE, MEAGHER & FLOM, LLP

4         Attorneys for Debtor and

5         Debtors-in-Possession

6         Four Times Square

7         New York, NY 10036

8

```
 9    BY:   KAYALYN A. MARAFIOTI, ESQ.

10

11    TOGUT, SEGAL & SEGAL, LLP

12          Attorneys for Debtor

13          One Penn Plaza

14          New York, NY 10119

15

16    BY:   NEIL BERGER, ESQ.

17

18    LATHAM & WATKINS, LLP

19          Attorneys for the Creditors' Committee

20          885 Third Avenue

21          New York, NY 10022

22

23    BY:   Mark A. Broude, ESQ..

24          John W. Weiss

25
```

                                                                4

```
 1

 2    FRIED, FRANK, HARRIS, SHRIVER & JACOBSON, LLP

 3          Attorneys for Equity Committee

 4          One New York Plaza

 5          New York, NY 10004

 6

 7    BY:   BONNIE STEINGART, ESQ.

 8

 9    CURTIS, MALLET-PREVOST, COLT & MOSLE, LLP

10          Attorneys for Flextronics

11          101 Park Avenue

12          New York, NY 10178

13
```

14   BY:   ANDREW M. THAU, ESQ.

15

16   HOGAN & HARTSON, LLP

17        Attorneys for XM Satellite Radio

18        875 Third Avenue

19        New York, NY 10022

20

21   BY:   SCOTT A. GOLDEN, ESQ.

22

23

24

25

                                                        5

1

2   KLESTADT & WINTERS, LLP

3        Attorneys for Textron Fastening

4        Systems, Inc.

5        292 Madison Avenue

6        New York, NY 10017

7

8   BY:   TRACY L. KLESTADT, ESQ.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

1                P R O C E E D I N G S

2              THE COURT:  Okay.  Delphi

3    Corporation.

4              MS. MARAFIOTI:  Good morning, Your

5    Honor.  Kayalyn Marafioti on behalf of Delphi

6    Corporation.  We're here this morning for the

7    debtor's Seventh omnibus hearing in these

8    cases.  We filed an agenda -- or a proposed

9    agenda with the Court last week, and unless

10   the Court has a different direction for us,

11   we're prepared to move right through that

12   agenda in the order stated.

13             THE COURT:  All right.  That's fine.

14             MS. MARAFIOTI:  Very well then.  The

15   first matter on the agenda is the Deutsch

16   Dagan order to show cause, which is being

17   handled by the debtor's co-council, Togut

18   Segal firm.

19             THE COURT:  Okay.

20             MR. BERGER:  Good morning, Judge.

21   Neil Berger, Togut, Segal & Segal.  Number one

22   on the agenda is the last of the vendor orders

23   to show cause for post-petition payments made

https://vip21.veritextllc.com/myfiles/329515/117767.TXT

24   on account of pre-petition invoices.  This is

25   the order to show cause against Deutsch Dagan.

                                                        7

 1   This is the vendor in Israel.  We're still

 2   waiting for confirmation of service in

 3   accordance with the Hague convention.

 4   Notwithstanding, the business representatives

 5   of Deutsch Dagan and the debtor are discussing

 6   a settlement.  I referenced at our last

 7   hearing that there was a structure for a

 8   settlement.  The parties are following that

 9   and I don't think that it would be aggressive

10   to say that they're in the short strokes.

11   It's a matter of dollars at this point.  So,

12   we'd like to continue this to our next omnibus

13   hearing and hopefully we'll have an order

14   submitted at or before the hearing.

15            THE COURT:  Okay.  That's fine.

16            MR. BERGER:  Thank you, Judge.

17            MS. MARAFIOTI:  Your Honor, the

18   second matter on the agenda is the H.E.

19   Services motion for relief from the stay.

20   Under this motion, H.E. Services is seeking to

21   modify the stay to continue its litigation in

22   the District Court for the eastern district of

23   Michigan where the movant is asserting 100

24   million dollars worth of various civil rights,

25   promissory estoppel and misrepresentation

                                                        8

1    claims.  And the parties have agreed to

2    adjourn this matter to the June 16 omnibus

3    hearing date.

4            THE COURT:  Okay.

5            MS. MARAFIOTI:  The third matter on

6    the agenda, Your Honor, you may remember from

7    last time there was some colloquy on the

8    record about the Cindie Palmer motion for

9    relief from a stay.  Here too, Ms. Palmer and

10   the debtors have agreed to adjourn to June

11   16th.

12           THE COURT:  Okay.

13           MS. MARAFIOTI:  The next item on the

14   agenda, Your Honor, is being handled by the

15   Togut Segal firm.

16           MR. BERGER:  Judge, the next matter

17   is the adjourned hearing for the Offshore

18   Group motion for relief from the automatic

19   stay to effect a setoff.  This is the motion

20   that implicated Mexican tax law.  We've become

21   familiar enough with tax law in Mexico to deal

22   with the issues presented in this motion and

23   there have been meetings and telephone

24   conferences between the business

25   representatives of both sides and we hope to

                                        9

1    settle this.  I don't think that there is any

2    great likelihood that there's going to be a

3    contested hearing.  So with Your Honor's

4    permission, we'd like to carry to the next

5    date.

6          THE COURT:  All right.  That's fine.

7          MS. MARAFIOTI:  You also have the

8     next matter.

9          MR. BERGER:  I do have the next

10    matter, Your Honor, which is number 5.

11    Borg-Warner Turbo Systems, Inc. lift stay

12    motion, docket No. 3218.  This is a motion by

13    Borg-Warner seeking relief from the automatic

14    stay from this Court for permission to

15    commence a state court action against the

16    debtors in Michigan to liquidate a pre-

17    petition warrantee claim.

18          We've advised Borg-Warner that we

19    oppose that relief.  Borg-Warner asked that

20    today's hearing be adjourned and asked for a

21    settlement meeting with the debtors.  We'd

22    like to have that settlement meeting with

23    them, hopefully before the next adjourn date.

24    In any event though, Your Honor, any

25    resolution with Borg-Warner would need to be

10

1     reviewed by the committee under paragraph 18

2     of the DIP order that pertains to setoffs.

3     So, with Your Honor's permission, we'd like to

4     adjourn it to June but with the anticipation

5     that it will be probably moved into the next

6     adjourned hearing as well.

7          THE COURT:  All right.  When is the

8     Bar Date?

9          MR. BERGER:  I'm sorry?

10          THE COURT:  Do you remember when the

11    Bar Date is in this case?

12              MS. MARAFIOTI:  July 31st, Your

13    Honor.

14              THE COURT:  Okay.  All right.  That

15    adjournment's fine.

16              MR. BERGER:  Thank you, Judge.

17              MS. MARAFIOTI:  Your Honor, item 6

18    on the agenda is the motion of Dane Systems,

19    LLC for adequate protection.  Dane Systems

20    claims that it holds a lien on certain

21    equipment of the debtors and says that its

22    security interests are not adequately

23    protected.  The parties are in the process of

24    trying to work this matter out and so they've

25    agreed to adjourn this matter to June 16th.


                                              11


 1              THE COURT:  Okay.

 2              MS. MARAFIOTI:  Item 7 on the agenda

 3    is a motion of the creditors' committee and I

 4    will turn the floor over to Latham & Watkins.

 5              MR. BROUDE:  Your Honor, good

 6    morning.  Mark Broude, Latham & Watkins, on

 7    behalf of the creditors' committee.  We're

 8    here on the application of the committee to

 9    retain Buck Consultants as the committee's

10    pension and benefits actuary.  The application

11    was filed on April 20th, was served in

12    accordance with the case management order as

13    were both the original and supplemental

14    affidavits.  Buck will be retained -- we're

15    seeking to retain Buck to January 23rd under

16    328a but its fees will be subject to review

17    under 330, normal fee applications on an

18    hourly basis.  And no objections have been

19    filed, Your Honor.

20         THE COURT:  Okay.

21         MR. BERGER:  Your Honor, for the

22    debtor's.  Following Mr. Brody's

23    representation, there are no objections.  The

24    debtor reviewed the application, has no

25    objection to the release or to the form of

12

1    order.  Just to confirm, this is not an effort

2    to recreate any kind of data wheel.  The

3    debtor's are cooperating with Buck already and

4    there's a good working relationship.  We do

5    not have an objection.

6         THE COURT:  Okay.  And they still

7    want to send back the fee payment, right?

8         MR. BROUDE:  Yes, they would very

9    much like to.  Right now, they're holding it

10    in an escrow account, Packard-Hughes is

11    insisting that they cannot trust the

12    transition work if it's not paid for, so what

13    you've heard --

14         THE COURT:  All right.  Well, I'll

15    put another paragraph in the order saying that

16    they'll refund the payment.  And I think

17    implicit in that is that their word can be

18    trusted.

19         MR. BROUDE:  Okay.  Thank you, Your

20    Honor.  Subject to that, we have an order we

21    can hand up if Your Honor would like.

22              THE COURT:  No, I have it.

23              MR. BROUDE:  Oh, okay.

24              THE COURT:  Well, actually, that has

25    the disk, so why don't you do that?  That's

13

1    fine.

2              MR. BROUDE:  Yes.  Thank you, Your

3    Honor.

4              MS. MARAFIOTI:  Your Honor, item 8

5    on the agenda is the debtor's motion under

6    Section 363(b) of the Bankruptcy Code and Rule

7    6004 to authorize the debtor to enter into and

8    perform under some agreements with Booz Allen.

9    Booz Allen is a consulting firm.  And under

10   the agreement, Booz Allen would provide

11   ongoing support for the restructuring of the

12   debtor's selling general and administration,

13   or SG&A, expenses.

14              As you know, this is a fundamental

15   part of the debtor's transformation and has

16   referred to it many times.  Your Honor, the

17   work that Booz Allen did, actually began pre-

18   bankruptcy.  And there was a phase 1 of this

19   project -- we call it the evaluation phase --

20   that actually did begin before the filing of

21   these petitions.

22              What we're seeking here is

23   permission to continue on with the second

24   phase, which is the design phase of this

25   program which we hope to bring as much as 450

14

1    million dollars in savings for the debtors on

2    their SG&A line.

3            By this motion we are also, Your

4    Honor, seeking authority to enter into a third

5    phase, should the second phase be successful

6    by the end of September of this year, which is

7    what we're hoping.  Phase 3 is the actual

8    implementation phase.  And in connection with

9    that, we would be giving special notice to

10   certain parties and interests so that they

11   could review what the fees would be and how

12   the program was going to go forward.  All of

13   these aspects, Your Honor, have been vetted

14   with the creditors' committee.

15           The fees are set forth in detail.

16   If the Court has any questions, I can

17   certainly go over with them.  We have in court

18   today with us the debtor's chief restructuring

19   officer, John Sheehan, who would be prepared

20   to testify if need be, about the debtor's

21   business judgment in determining to go forward

22   with this very important program.

23           There are no objections to the

24   motion, Your Honor.  And we believe that the

25   debtors have, in fact, exercised good business

15

1    judgment in determining to go forward with it.

2    We actually think this is an ordinary course

3    of business type of activity.  As I mentioned,

4    the debtors did begin this process before the

5    bankruptcy and would have done it whether the

6    bankruptcy occurred or not.  But in light of

7    the large dollar amounts involved and at the

8    urging of the creditors' committee, as well as

9    Booz Allen, we are seeking the authority of

10   the Court to go forward.

11            THE COURT:  Okay.  And I got a black

12   line proposed order that, I guess, puts some

13   more detail on the review process by the

14   committee.

15            MS. MARAFIOTI:  Yes, that's right,

16   Your Honor.  I think that it's a consensual

17   order at this point.

18            MR. BROUDE:  Yes, it is, Your Honor.

19   Both the retention letter itself, as well as

20   the order, reflects the input of the

21   creditors' committee and allows us to review

22   and have input into whether the success fee

23   has been earned and whether the phase 3 should

24   be moved forward and on what basis.

25            THE COURT:  Okay.  All right.


                                                    16


1            MS. MARAFIOTI:  So with that, Your

2    Honor, we would request that the Court enter

3    the request -- the proposed order.

4            THE COURT:  All right.  In light of

5    the involvement of the committee and also the

6    motion papers, which I thought were clear and

7    made the case why this is important, I'll

8    approve it.

9            MS. MARAFIOTI:  Thank you, Your

10   Honor.  I have a disk with the orders if

11   that's necessary.

12           THE COURT:  Okay.  Yes, that's fine.

13           MS. MARAFIOTI:  And item 9 on the

14   agenda this morning, Your Honor, is the motion

15   for an order under -- the debtor's motion

16   under section 365 of the Bankruptcy Code and

17   Rule 6006 authorizing the debtor to reject an

18   OEM License and Supply Agreement with Inovise

19   Medical.

20           This motion also is uncontested.

21   The debtors seek authority to reject that

22   license agreement with Inovise that's dated as

23   of April 2005.  And we'd like to do that

24   effective as of May 12, so a couple of weeks

25   ago, Your Honor.

                                                    17

1            Under the agreement, Inovise had

2    granted a license of certain intellectual

3    property that were to be used in connection

4    with Delphi Medical's vital signs monitors

5    that it's working on.  Delphi Medical, of

6    course, is one of the debtors in these cases.

7    The sensors and software are just one of many

8    technologies that could be used and these

9    particular technologies are untested so the

10   debtor believes that to be successful in this

11   vital signs monitors products program, they

12      need to be relieved of this license.

13              As I said, Your Honor, there are no

14      objections to the motion and we believe that

15      it is a proper exercise of the debtor's

16      business judgment to reject this license.

17              THE COURT:  Okay.  Based on my

18      review of the motion, I agree with that.  So

19      I'll approve it.  I guess if they have a

20      claim, it will be governed by the Bar Date

21      Order.

22              MS. MARAFIOTI:  Yes, Your Honor.

23      And the Bar Date, as we've noted, is July 31

24      or 30 days, I guess.

25              THE COURT:  Okay.

                                                    18

1               MS. MARAFIOTI:  They have the later

2       of July 31 or 30 days --

3               THE COURT:  Right.

4               MS. MARAFIOTI:  -- after the

5       rejection becomes effective.

6               THE COURT:  Right.  Okay.  So you

7       can hand up these orders at the end.

8               MS. MARAFIOTI:  Okay.  Very good.

9       Item number 10, Your Honor, is a settlement

10      agreement that we're seeking approval of today

11      under rule 9019.  This is the settlement

12      agreement with XM Satellite Radio, Inc.

13              XM and the debtors do a lot of work

14      together, Your Honor.  They've been involved

15      in providing radio products and servicing

16      vehicles with consumer electronics for a

17    number of years.  And they've cooperated in

18    design, development, manufacture and

19    distribution of these various products.

20              But, as might be expected over a

21    period of time, they have had quite a number

22    of commercial disputes.  And they've been in

23    protracted negotiations about some of these

24    disputes regarding subsidies in connection

25    with certain products.  And this particular

                                              19

1    dispute involves certain finance and extended

2    warrantee fees or charges imposed by

3    Flextronics, which is a third party

4    manufacturer and supplier of various products

5    to the debtors.  You may remember, Your Honor,

6    that Flextronics at one time was a member of

7    the creditors' committee.

8              In an effort to resolve the dispute

9    and clarify the manner in which the subsidies

10    will be calculated and solidify the terms

11    under which XM will support the manufacture,

12    distribution and marketing of the new

13    satellite radio products, the settlement

14    agreement provides for various things.

15              First of all and importantly for the

16    estates, the parties will exchange mutual

17    releases in connection with the particular

18    disputes here.

19              In lieu of agreeing to increased

20    subsidies for these products, XM intends to

21    make three quarterly payments to the debtors

22   of 100,000 dollars each, beginning on June

23   30th of this year, if the Court approves this

24   settlement.  And XM will continue to pay and

25   the debtors will accept these subsidies in

20

1   accordance with the applicable terms of the

2   agreement and excluding any fees charged by

3   Flextronics.

4        Delphi will use good faith efforts

5   to resolve with Flextronics any open issues

6   related to nonmanufacturing fees and charges.

7   XM will waive past and future minimum

8   marketing development fund spending

9   requirements and won't be required to

10   reimburse the debtors for any marketing

11   development funds already expended or

12   committed to.  XM and the debtors will use

13   commercially reasonable steps to fulfill

14   certain obligations regarding some of these

15   products.  And finally, the debtors will

16   invoice XM for a million dollars to support

17   the debtor's current engineering -- 2006

18   engineering and supplier nonrestructuring

19   engineering costs for these products,

20   particularly the so-called SKYFi3 product.

21        We believe that this is a reasonable

22   compromise under the circumstances, Your

23   Honor.  As I said, this is an important

24   business relationship for the debtors.  They

25   will be receiving the million dollars plus the

1   three installments of a hundred thousand.

2          We believe that it is a wise use of

3   the debtor's estates to enter into this

4   agreement and we respectfully request that the

5   Court approve it.

6          THE COURT:  Okay.   There's a

7   provision in the agreement that says that the

8   parties will use commercially reasonable

9   efforts to enter into a definitive agreement

10   for the SKYFi3, no later than April 19.   Do

11   you know whether they've done that or whether

12   there's any reason to think that they won't?

13          MS. MARAFIOTI:  Excuse me, Your

14   Honor.  Your Honor, I'm advised that the

15   parties are actually planning to sign that

16   today --

17          THE COURT:  Okay.

18          MS. MARAFIOTI:  -- but that it

19   hasn't been done just yet.

20          THE COURT:  All right.  But they're

21   planning to sign it, so that provision still

22   holds up.

23          MS. MARAFIOTI:  Yes, I think in

24   other words, they've been successful in their

25   efforts --

22

1          THE COURT:  Okay.

2          MS. MARAFIOTI:  -- to achieve

3   agreement on that subject.

4            THE COURT:  And the debtor is still

5    working with Flextronix on trying to resolve

6    their issues?

7            MS. MARAFIOTI:  Yes, Your Honor.

8    That's correct.

9            THE COURT:  Okay.  All right.  All

10    right.  Based on my review of the motion, I'll

11    approve it.

12            MS. MARAFIOTI:  Thank you, Your

13    Honor.  The next item, number 11 on the

14    agenda, is being handled by the Togut Segal

15    firm.

16            MR. BERGER:  Judge, next on the

17    agenda is the hearing to consider the debtor's

18    motion for 9915 approval of a settlement -- a

19    proposed settlement with Furukawa Electric

20    North America APD, Inc.

21            On February 6th, Your Honor

22    considered and denied a motion by Furukawa.

23    It sought relief from the automatic stay to

24    affect a setoff against a double payment that

25    it received in the amount of approximately 2.8

23

1    million dollars.

2            The debtors opposed that motion on a

3    number of bases, generally asserting that the

4    transfer was a type of avoidable claim and

5    that, without an allowed claim because of the

6    operation of 502d, a cause could not be

7    established for relief from the automatic stay

8    to assert a setoff.

9          Your Honor entered an order on March

10    3rd of this year, denying the setoff motion.

11    But because the avoidance and recovery of the

12    subject transfer was not in front of the

13    Court, that order did not directly return --

14    of the transfer.

15          We engaged in negotiations and

16    informal discovery with Furukawa and reached a

17    settlement, subject to court approval,

18    pursuant to which 80 percent of the transfer

19    will be returned to the debtor's estate.  And

20    that totals $2,261,205.46 and Furukawa would

21    retain 565,301.20.

22          That 80/20 split happened to roughly

23    equate to the subsequent new value that

24    Furukawa had been asserting.  They asserted

25    somewhere in the range of 799,000 dollars.


24


1    The debtors were able to prove up somewhere in

2    the range of 500, just north of that.  And the

3    80/20 split worked in the parties general

4    negotiations concerning the cost of litigation

5    -- uncertainty of litigation.  Furukawa

6    certainly wasn't in the mood to return all of

7    the money, not even the 80/20 split that we

8    originally and subsequently proposed.

9          We think this is a reasonable, fair

10    and equitable settlement.  We think it's in

11    the best interest of the debtor's estates.  We

12    continue to do business with Furukawa, not

13    only in the realm of the transactions that

14    gave rise to this transfer, but also in the

15    case of a joint venture where they assist us

16    in an area of growth.

17            Notice of this motion was given to

18    all known creditors and parties in interest.

19    There's an affidavit of service on file.  Last

20    week -- I believe it was last week or the week

21    before -- we sent to chambers a revised form

22    of stipulation and order as well as a black

23    line draft that incorporates changes that were

24    requested by the creditors' committee to make

25    certain that the releases that were being

25

1    granted by the debtors and their estates,

2    pertained only to the transfer in question and

3    to the amended claim that Furukawa may file to

4    reflect this settlement.

5            THE COURT:  Okay.  All right.  This

6    appears to me a reasonable settlement as well.

7    So, I'll approve it.

8            MR. BROUDE:  Thank you, Your Honor.

9    Your chambers has a disk with an order on it.

10            THE COURT:  Okay.   You're sure?

11            MR. BROUDE:  We'll submit another

12    disk.

13            THE COURT:  I didn't see it in the

14    files, so --

15            MR. BROUDE:  We'll be happy to send

16    another disk.

17            THE COURT:  Thank you.

18            MS. MARAFIOTI:  The next item on the

19    agenda, number 12, is a motion to approve a

20    settlement with Flextronics under rule 9019.

21    I might say, first off, Your Honor, that this

22    is completely unrelated to Flextronics'

23    involvement in the XM settlement that we just

24    discussed a minute or so ago.

25              By way of background, the debtors

26

1    and Flextronics International Asia Pacific and

2    certain of their affiliates are parties to

3    numerous purchase agreements under which

4    Flextronics manufactures and supplies various

5    products to the debtors.

6              Pre-bankruptcy, one or more of the

7    debtors owed Flextronics about 6.7 million

8    dollars for products that were delivered prior

9    to the petition date.  Flextronics also owed

10   one of the debtors 5.8 million dollars on

11   account of pre-petition overpayments.

12             Now, the reason we're here today

13   Your Honor, on this matter, as opposed to

14   simply dealing with it under paragraph 18 of

15   the DIP order is that there are a couple of

16   twists on this agreement.

17             The first is that Flextronics

18   actually received payment for that 6.7 million

19   dollars from a nondebtor.  So it's been fully

20   paid, and as a result of that, actually left

21   the creditors' committee.

22             But there still remained the issue

23   of the 5.8 million dollars that was owed to

24    the debtors.  And in anticipation of the

25    Court's approval of this agreement,

27

1    Flextronics was persuaded to actually pay to

2    the debtors the 5.8 million dollars.  And that

3    money has been paid.

4            Now, as adequate protection for

5    whatever setoff rights it may have, rather

6    than simply working under paragraph 18 of the

7    DIP order, Your Honor, there are certain

8    slight changes here.  Flextronics -- in the

9    event -- sorry -- that Flextronics would

10    return or be required to return any portion of

11    the guarantee payments that it got already, it

12    would be entitled to exercise its pre-petition

13    setoff rights, if any, against post-petition

14    payables owed to the debtors and would be

15    entitled to the adequate protection set forth

16    in the DIP financing order.

17            And in the event that Flextronics

18    has no post-petition payables against which to

19    set the money off, it would effectively

20    receive the entire amount in cash within ten

21    business days of the effective date of the

22    reorganization plan.

23            So that's why this is a little bit

24    different, Your Honor.  But we have gone over

25    this at length with the creditors' committee

28

1    and there are no objections that have been

2    filed and we would respectfully request that

3    the Court --

4              THE COURT:  Okay.  So this -- the

5    adequate protection only kicks in if the -- if

6    Flextronics has to repay the money it's

7    already been paid.

8              MS. MARAFIOTI:  That's right, Your

9    Honor.

10             THE COURT:  I guess there's some

11   sort of avoidance theory.

12             MS. MARAFIOTI:  I'm sorry?

13             THE COURT:  Under some sort of

14   avoidance theory, I'm assuming.

15             MS. MARAFIOTI:  That's right.

16   That's right.

17             THE COURT:  All right.  Which I hope

18   is unlikely.  So I will approve the

19   stipulation.

20             MS. MARAFIOTI:  Thank you, Your

21   Honor.  Number 13 is another settlement

22   motion, Your Honor, under rule 9019 with

23   Electrical Carbon.  This one is a little bit

24   detailed.  And of course we have all of the

25   relevant facts set forth in the pleadings and

29

1    I don't want to burden the record here today.

2    But what it's all about is a pre-bankruptcy

3    anti-trust litigation that Delphi was involved

4    in as a plaintiff, involving three sets of

5    defendants.  I'll call them the Morgan

6    defendants, the Schunk defendants, S-C-H-U-N-

7    K, and SGL Carbon.  I mean, that's probably

8    familiar to the Court.  There are certain

9    other defendants, Your Honor, that are not the

10    subject of this motion, that continue on as

11    defendants in this anti-trust litigation.

12            What happened is that in 2002 the

13    Justice Department initiated proceedings

14    against Morgan in District Court in

15    Pennsylvania claiming illegal behavior in

16    furtherance of a global conspiracy to suppress

17    and eliminate competition by fixing the prices

18    of electrical carbon products.

19            After that happened, a number of

20    parties brought private anti-trust claims

21    against Electrical Carbon and others in the

22    District Court in New Jersey.  And they were

23    ultimately consolidated as MDL litigation in

24    New Jersey.  And certain of the class

25    plaintiffs there decided to enter into a

30

1    settlement.  And Delphi, among others, chose

2    not to do that because they thought they might

3    do better if they worked on their own.

4            So in August of last year, Delphi

5    and thirteen other similarly situated parties

6    opted out of that MDL class settlement

7    litigation and filed a complaint against the

8    MDL defendants on their own.

9            Now, what's before us today, Your

10    Honor, is the settlement against three of

11    those parties, as I mentioned.  And what will

12    the debtors get out of this?  Well, first of

13    all, there will be a dismissal of the U.S.

14    action against the settling defendants and the

15    individual defendants with prejudice and

16    without cost.

17          So, though Delphi could still bring

18    claims -- foreign claims against these

19    parties, I would like to point out -- the

20    parties will withdraw their requests -- or

21    Delphi will withdraw its request to exclude

22    itself from the Morgan, Schunk, and SGL

23    settlements.  There will be a release and

24    discharge of the settling defendants from any

25    nonforeign claims.  And in exchange, the

31

1    Schunk defendants have agreed to pay the

2    plaintiffs 150,000 dollars.  They've agreed to

3    cooperate with the plaintiffs in pursuing the

4    action against the remaining defendants, which

5    is where we think the real claims might lay.

6    And the Morgan and Schunk defendants have

7    agreed to toll, for a period of 12 months, the

8    relevant statutes of limitation in respect of

9    those foreign claims that will remain alive.

10          Additionally, class counsel in the

11    MDL proceeding has agreed to reduce its fee by

12    approximately 900,000 dollars so there will be

13    more left in the pool to go around for all the

14    various parties.  The anticipated recovery

15    from the settlements, in the hands of the

16    debtors, is approximately 1.1 million, based

17    on the amounts that we have purchased from

18    them over time.

19         So, we believe that this is a very

20    sensible settlement, Your Honor.  And, again,

21    the matter is uncontested and we would ask

22    that the Court approve of the entry into this

23    agreement.

24         THE COURT:  All right.  I'll approve

25    it for the reasons stated.  Is it subject to

32

1    further approval by the MDL court, or is this

2    it?

3         MS. MARAFIOTI:  I don't believe so,

4    Your Honor.

5         THE COURT:  Okay.  All right.

6         MS. MARAFIOTI:  Okay.  The next

7    matter, which is number 14, is also a

8    settlement under 9019, Your Honor.  We have

9    quite a number of these today.  This is a

10    motion authorizing us to enter into a license

11    agreement with Denso Corporation, D-E-N-S-O.

12         There's a related motion that's been

13    filed, Your Honor.  It's a motion to file

14    under seal the actual amount of the payment.

15    I think the Court is aware of what that is and

16    I'll get to that in a moment.

17         Just by way of background again, all

18    of the relevant facts are set forth in the

19    papers and I won't belabor the record.  But,

20    Denso alleged that Delphi was infringing on

21    several of Denso's patents relating to a

22    gasoline engine management system that's used

23    to control engines that operate on gasoline.

24    And the parties have been engaged in

25    negotiations on this for four solid years in

33

1    an effort to resolve this dispute.

2              In July of last year, Denso sued

3    Delphi in the District Court in the district

4    of Delaware, alleging patent infringement.

5    And, of course, that litigation was stayed as

6    a result of these cases.

7              The parties continued to engage in

8    negotiations after the filing of the Denso

9    action and indeed after the filing of the

10   bankruptcy case and have agreed to enter into

11   a licensed agreement, pursuant to which the

12   following things will happen.

13             First of all, again, there will be

14   mutual releases exchanged by the parties in

15   connection with the claims and counterclaims

16   that are directly related to this matter.

17             Delphi will obtain a license under

18   21 Denso patents and an option to designate

19   two additional patents that it believes would

20   be quite valuable to it in its business.

21             Denso will also get a license from

22   Delphi on several existing patents.  And

23   finally, Delphi will pay Denso a sum of money

24   that has been disclosed to the Court and filed

25    under seal.

34

1              The patent litigation is very

2    costly, Your Honor.  And the parties have been

3    engaged in this process for some number of

4    years, as I mentioned.  If Denso were to

5    pursue the action, the litigation costs alone,

6    we think, could approach the amount of the

7    settlement payment.

8              And, moreover, both of the parties

9    have agreed to a five-year moratorium on

10   future charges of infringement under these

11   particular patents that are the subject of the

12   settlement.  And we think that will be very

13   valuable for our business as well.

14             So, in light of the fact, among

15   other things, that there are no objections

16   that have been filed to this motion, we would

17   respectfully ask the Court to approve it.

18             THE COURT:  Okay.  In light of that

19   fact and the motion itself, I'll approve it.

20             MS. MARAFIOTI:  Thank you, Your

21   Honor.  The next item on the agenda is matter

22   number 15 and it's being handled by White &

23   Case.

24             THE COURT:  Okay.

25             MS. MARAFIOTI:  I guess it's not

35

1    being handled by White & Case.  The item on

2    the agenda, Your Honor, is the shareholder's

3    emergency motion for an order to expand the

4    size of the equity committee to include three

5    additional parties:  Appaloosa, Wexford, and

6    Lampay Conway.

7            The debtors understand that, based

8    on an email that was sent to us by White &

9    Case, that White & Case intended to withdraw

10   the motion today in Court.  And we reported

11   that to the United States Trustee.  And in

12   reliance on that, none of us filed any papers.

13   I take it by their absence that they in fact

14   do want to withdraw this motion.

15           THE COURT:  All right.  I take that

16   to be the case as well.  However, if there is

17   no formal withdrawal, I'll simply deny the

18   motion by the end of the week.

19           MS. MARAFIOTI:  Thank you, Your

20   Honor.

21           THE COURT:  Okay.

22           MS. MARAFIOTI:  And that brings us

23   to the last item on the agenda, number 16,

24   which is the motion of Mary and Liam O'Neil

25   for relief from the automatic stay to pursue a

36

1    personal injury litigation that's pending in

2    state court in Illinois.  I don't know if

3    Counsel for the O'Neil's is here.

4            THE COURT:  Wasn't this the one

5    where you were going to give them the

6    insurance policy to look over?

7            MS. MARAFIOTI:  That's right, Your

8    Honor.  And there was also some other

9    discovery that the Court -- very limited

10    discovery that the Court permitted, and the

11    O'Neils served that discovery on us in April.

12    We asked for a protective order because we

13    needed to turn over the insurance policies

14    which we think contain competitive and

15    business-sensitive information.

16            For a number of reasons, I think

17    through no fault of the parties, it took

18    awhile for the parties to agree on the form of

19    a protective order.  That was just agreed upon

20    last Friday.  And immediately upon signing

21    that stipulation which has now been submitted

22    to the Court for signature, I believe, we

23    turned over the policies to the O'Neil's

24    counsel and we also responded to

25    interrogatories that had been propounded to

37

1    us.

2            So, unfortunately there hasn't been

3    a lot of time between Friday and today for us

4    to have any further conversations with counsel

5    about this and I will turn the podium over to

6    them.

7            THE COURT:  Okay.  I signed the

8    protective order this morning.

9            MS. MARAFIOTI:  Thank you, Your

10    Honor.

11            MR. MENAKER:  Good morning, Your

12    Honor.

13          THE COURT:  Good morning.

14          MR. MENAKER:  Richard Menaker, of

15    Menaker & Herman, LLP, representing the

16    O'Neils.  We would be grateful if we could

17    have a reasonable opportunity to read the

18    materials that were provided to us late in the

19    day on Friday.  And, therefore, I ask this

20    matter to be put over to the next available

21    date for the Court.

22          THE COURT:  Okay.  That's June

23    16th, right?

24          MS. MARAFIOTI:  We have no problem,

25    Your Honor, with that.


                                                      38


1          THE COURT:  Okay.  Very well.  And

2    I --

3          MR. MENAKER:  Thank you, Your Honor.

4          THE COURT:  -- and assuming that

5    after you review them you'll be able to talk

6    with the debtors and maybe this can be

7    resolved.

8          MS. MARAFIOTI:  We're certainly

9    hopeful that that can be accomplished, Your

10    Honor.

11          THE COURT:  Okay.

12          MR. MENAKER:  Thank you.

13          MS. MARAFIOTI:  And I think that

14    concludes the matters that are on the calendar

15    for today, Your Honor, unless the Court has

16    something else.

17                THE COURT:  No, that's it.  Thanks.

18                MS. MARAFIOTI:  Okay.   Thank you,

19       Your Honor.

20                THE COURT:  Okay.

21          (Time noted:  11:38 a.m.)

22

23

24

25

                                                        39

1            C E R T I F I C A T I O N

2

3       I, Sharona Shapiro, hereby certify that

4    the foregoing is a true and correct

5    transcription, to the best of my ability, of

6    the sound recorded proceedings submitted for

7    transcription in the matter of the bankruptcy

8    proceeding of:

9    DELPHI CORPORATION

10

11       I further certify that I am not employed

12   by nor related to any party to this action.

13

14       In witness whereof, I hereby sign this

15   date:

16   May 31, 2006.

17

18       _____

19                Sharona Shapiro

20

21

22

23

24

25