UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x
                               :

In re                           :       Chapter 11
                               :

DELPHI CORPORATION, et al.,   :       Case No. 05-44481 (RDD)
                               :

               Debtors.     :       (Jointly Administered)
                               :

- - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

ORDER UNDER 11 U.S.C. § 363(b) AND FED. R. BANKR. P. 2002 AND 6004 AUTHORIZING AND APPROVING DEBTORS' ENTRY INTO TRANSFER AGREEMENT WITH JOHNSON CONTROLS, INC. PROVIDING FOR (A) SALE OF ACQUIRED ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND ENCUMBRANCES (B) CONTINUATION AND TRANSITION OF SUPPLY TO JOHNSON CONTROLS, INC. OF BATTERY PRODUCTS OUT OF FITZGERALD FACILITY AND (C) IMPLEMENTATION OF ATTRITION PLAN WITH RESPECT TO NEW BRUNSWICK FACILITY IN ACCORDANCE WITH IUE-CWA MEMORANDUM

("NEW BRUNSWICK TRANSFER ORDER")

          Upon the motion, dated May 26, 2006 (the "Motion"), of Delphi Corporation and certain of its subsidiaries and affiliates, debtors and debtors-in-possession in the above-captioned cases (collectively, the "Debtors"), for an order (the "Order") pursuant to 11 U.S.C. § 363(b) and Fed. R. Bankr. P. 2002 and 6004 authorizing and approving the Debtors' entry into the Transfer Agreement dated May 26, 2006 by and between Delphi Automotive Systems LLC, a Debtor in these cases, and Johnson Controls, Inc. ("JCI"), a copy of which is attached hereto as Exhibit 1 (together, with the exhibits and schedules attached thereto, the "Transfer Agreement"), providing for (a) sale of certain assets (the "Acquired Assets") of the Debtors' battery manufacturing facility in New Brunswick, New Jersey (the "New Brunswick Facility") free and clear of liens, claims, and encumbrances (the "Sale"), (b) the continuation and transition of supply to JCI of battery products out of the Debtors' manufacturing facility in Fitzgerald, Georgia (the "Fitzgerald Facility"), and (c) implementation of an attrition plan with respect to the New Brunswick

Facility; and upon the Preliminary Objection Of Wilmington Trust Company, As Indenture

Trustee, To Motion For Order Under 11 U.S.C. § 363(b) And Fed. R. Bankr. P. 2002 And 6004

Authorizing And Approving Debtors' Entry Into Transfer Agreement With Johnson Controls,

Inc. Providing For (A) Sale Of Acquired Assets Free And Clear Of Liens, Claims, And

Encumbrances (B) Continuation And Transition Of Supply To Johnson Controls, Inc. Of Battery

Products Out Of Fitzgerald Facility And (C) Implementation Of Attrition Plan With Respect To

New Brunswick Facility In Accordance With IUE-CWA Memorandum (Docket No. 4098) (the

"WTC Objection"); and upon the Objection Of The United States Of America To Motion By The

Debtors Seeking Authorization And Approval Of Debtors' Entry Into A Transfer Agreement

With Johnson Controls, Inc., Providing For (A) Sale Of Acquired Assets Free And Clear Of

Liens, Claims, And Encumbrances; (B) Continuation And Transition Of Supply To Johnson

Controls, Inc. Of Battery Products Out Of Fitzgerald Facility; And (C) Implementation Of

Attrition Plan With Respect To New Brunswick Facility In Accordance With IUE-CWA

Memorandum (Docket No. 4116); and upon the Amended Objection Of Wilmington Trust

Company, As Indenture Trustee, To Motion For Order Under 11 U.S.C. § 363(b) And Fed. R.

Bankr. P. 2002 And 6004 Approving Debtors' Entry Into Transfer Agreement With Johnson

Controls, Inc. Providing For (A) Sale Of Acquired Assets Free And Clear Of Liens, Claims, And

Encumbrances, (B) Continuation And Transition Of Supply To Johnson Controls, Inc. Of

Battery Products Out Of Fitzgerald Facility, And (C) Implementation Of Attrition Plan With

Respect To New Brunswick Facility In Accordance With IUE-CWA Memorandum (Docket No.

4250) (the "Amended WTC Objection") (collectively, the "Objections"); and Wilmington Trust

Company, as indenture trustee ("WTC"), on the record, in connection with the consensual

resolution of the Motion, having waived any right of appeal with respect to this Order; and this

2

Court having determined that the relief requested in the Motion is in the best interests of the

Debtors, their estates, their creditors, and other parties in interest; and it appearing that proper

and adequate notice of the Motion has been given and that no other or further notice is necessary;

and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED THAT:[1]

A.    The court has jurisdiction over the Motion and the transactions

contemplated by the Transfer Agreement pursuant to 28 U.S.C. §§ 157 and 1334, and this matter

is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N).  Venue of these cases and the

Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.    The statutory predicates for the relief sought in the Motion are sections

363 of 11 U.S.C. §§ 101-1330, as amended (the "Bankruptcy Code"), and Fed. R. Bankr. P. 2002

and 6004.

C.    As evidenced by the affidavits of service previously filed with the Court,

and based on the representations of counsel at the hearing on the Motion (the "Hearing"), (i)

proper, timely, adequate and sufficient notice of the Motion, the Hearing and the sale of the

Acquired Assets (as defined in the Transfer Agreement) has been provided in accordance with 11

U.S.C. §§ 102(l) and 363 and Fed. R. Bankr. P. 2002 and 6004, (ii) such notice was good and

sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice

of the Motion, the Hearing, or the Sale is or shall be required.

D.    Each applicable Debtor (i) has full corporate power and authority to

execute the Transfer Agreement and all other documents contemplated thereby, and the transfer

---

[1]    Findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings
of fact when appropriate.  See Fed. R. Bankr. P. 7052.

and conveyance of the Acquired Assets by the Debtors has been duly and validly authorized by all necessary corporate action of each of the Debtors, (ii) has all of the corporate power and authority necessary to consummate the transactions contemplated by the Transfer Agreement, and (iii) has taken all corporate action necessary to authorize and approve the Transfer Agreement and the consummation by such Debtor of the transactions contemplated thereby, and no consents or approvals, other than those expressly provided for in the Transfer Agreement, are required for each applicable Debtor to consummate such transactions.

E.      Approval of the Transfer Agreement and consummation of the Sale at this time are in the best interests of the Debtors, their creditors, their estates, and other parties in interest.

F.      The Debtors have demonstrated good, sufficient, and sound business purpose and justification in that, among other things, the Debtors and their advisors diligently and in good faith analyzed all other available options in connection with the disposition of the Acquired Assets and determined that the terms and conditions set forth in the Transfer Agreement, and the transfer to JCI of the Acquired Assets pursuant thereto, represent a fair and reasonable purchase price and constitute the highest and best value obtainable for the Acquired Assets.  A sale of the Acquired Assets at this time to JCI pursuant to 11 U.S.C. § 363(b) is the most favorable alternative to minimize the Debtors' losses attributable to the Acquired Assets, and maximizes the Debtors' estates for the benefits of all constituencies.  Delaying approval of the Sale might result in JCI's termination of the Transfer Agreement and may result in an alternative outcome that will achieve less value and cause greater losses for the Debtors, their estates, and their creditors.

G.     The Debtors have demonstrated good, sufficient, and sound business purpose and justification regarding the continuation and ultimate transition to JCI of the supply of battery products out of the Fitzgerald Facility pursuant to the Transfer Agreement.

H.     The Debtors have demonstrated good, sufficient, and sound business purpose and justification in that, among other things, the Debtors and their advisors diligently and in good faith analyzed the terms and conditions of the IUE-CWA Memorandum (as defined below) and determined that the terms and conditions thereof and in particular the terms and conditions of the IUE-CWA New Brunswick Attrition Plan (as defined below) set forth in the IUE-CWA Memorandum is an appropriate plan under the circumstances and is in the best interests of the Debtors, their estates, and their creditors.

I.     A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including: (i) the Office of the United States Trustee for the Southern District of New York, (ii) all entities known to have asserted any lien, claim, interest, or encumbrance in or upon the Acquired Assets, including but not limited to environmental, employee, and product liability claims, (iii) all federal, state, and local regulatory or taxing authorities or recording offices, including but not limited environmental regulatory authorities, which have a reasonably known interest in the relief requested by the Motion, (iv) all entities known to have an interest in a transaction with respect to the Acquired Assets during the past six months, (v) the United States Attorney's office, (vi) the United States Department of Justice, (vii) the Securities and Exchange Commission, (viii) the Internal Revenue Service, (ix) all entities on the Master Service List (as defined by the Supplemental Order Under 11 U.S.C. §§ 102(1) And 105 And Fed. R. Bankr. P. 2002(M), 9006, 9007, And 9014 Establishing Omnibus Hearing Dates And Certain Notice, Case Management,

And Administrative Procedures (Docket No. 2883) (the "Supplemental Case Management Order")) and such other entities that are required to be served with notices under the Supplemental Case Management Order, (x) counsel for JCI, (xi) counsel for the Official Committee of Unsecured Creditors appointed in these chapter 11 cases, and (xii) counsel for the Official Committee of Equity Security Holders appointed in these chapter 11 cases.

J.    JCI is not an "insider" of any of the Debtors, as that term is defined in 11 U.S.C. § 101(31).

K.    The Transfer Agreement was negotiated, proposed, and entered into by the Debtors and JCI without collusion, in good faith, and from arm's-length bargaining positions. Neither the Debtors nor JCI have engaged in any conduct that would cause or permit the Transfer Agreement to be avoided under 11 U.S.C. § 363(n).

L.    JCI is a good faith purchaser under 11 U.S.C. § 363(m) and, as such, is entitled to all of the protections afforded thereby.

M.    The consideration provided by JCI for the Acquired Assets pursuant to the Transfer Agreement (i) is fair and reasonable, (ii) is the highest and best offer for the Acquired Assets, (iii) will provide a greater recovery for the Debtors' creditors than would be provided by any other practical available alternative, and (iv) constitutes reasonably equivalent value and fair consideration under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

N.    The transfer of the Acquired Assets to JCI will be a legal, valid, and effective transfer of the Acquired Assets, and, except as expressly permitted or otherwise specifically provided for in the Transfer Agreement or this Order, will vest JCI with all right,

title, and interest of the Debtors to the Acquired Assets free and clear of all liens, claims, and

encumbrances, including, but not limited to those (A) that purport to give to any party a right or

option to effect any forfeiture, modification, right of first refusal, or termination of the Debtors'

or JCI's interest in the Acquired Assets, or any similar rights, (B) relating to taxes arising under

or out of, in connection with, or in any way relating to the operation of the Debtors' battery

business prior to the transfer of the Acquired Assets to JCI, and (C) mortgages, restrictions,

hypothecations, charges, indentures, loan agreements, instruments, leases, licenses, options,

deeds of trust, security interests, conditional sale or other title retention agreements, pledges,

liens (including, without limitation, mechanics', materialmens', and other consensual and non-

consensual liens and statutory liens), judgments, demands, encumbrances, rights of first refusal,

offsets, contracts, recoupment, rights of recovery, claims for reimbursement, contribution,

indemnity, exoneration, products liability, alter-ego, environmental, or tax, decrees of any Court

or foreign or domestic governmental entity, or charges of any kind or nature, if any, including,

but not limited to, any restriction on the use, transfer, receipt of income, or other exercise of any

attributes of ownership, debts arising in any way in connection with any agreements, acts, or

failures to act, of any of the Debtors or any of the Debtors' predecessors or affiliates, claims (as

that term is defined in the Bankruptcy Code), reclamation claims, obligations, liabilities,

demands, guaranties, options, rights, contractual or other commitments, restrictions, interests and

matters of any kind and nature, whether known or unknown, choate or inchoate, filed or unfiled,

scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or

unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated,

matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to

or subsequent to the commencement of these bankruptcy cases, and whether imposed by

agreement, understanding, law, equity or otherwise, including claims otherwise arising under

doctrines of successor liability (all liens, claims, and encumbrances, including, but not limited to

the items and concepts listed in (A), (B), and (C) above, collectively, the "Interests or Claims").

O.    If the Sale of the Acquired Assets were not free and clear of all Interests or

Claims as set forth in the Transfer Agreement and this Order, or if JCI would, or in the future

could, be liable for any of the Interests or Claims as set forth in the Transfer Agreement and this

Order, JCI would not have entered into the Transfer Agreement and would not consummate the

Sale or the transactions contemplated by the Transfer Agreement, thus adversely affecting the

Debtors, their estates, and their creditors.

P.    The Debtors may sell their interests in the Acquired Assets free and clear

of all Interests or Claims because, in each case, one or more of the standards set forth in 11

U.S.C. § 363(f)(1)-(5) has been satisfied.  All holders of Interests or Claims who did not object,

or withdrew their objections to the Sale, are deemed to have consented to the Sale, pursuant to 11

U.S.C. § 363(f)(2).  Those holders of Interests or Claims who did object fall within one or more

of the other subsections of 11 U.S.C. § 363(f) and are adequately protected by having their

Interests or Claims, if any, attach to the cash proceeds of the Sale ultimately attributable to the

property against or in which they claim an Interest or Claim.

Q.    The Debtors are authorized to sell, transfer, convey or assign to JCI, all of

the Debtors' right, title, and interest (including common law rights) to all of their intangible

property included in the Acquired Assets to the broadest extent permitted by law and the terms of

the Transfer Agreement.

R.      Approval of the Transfer Agreement and consummation of the Sale of the Acquired Assets at this time are in the best interests of the Debtors, their creditors, their estates and other parties in interest.

S.      The liabilities being assumed by JCI under the Transfer Agreement, including but not limited to those liabilities set forth on Exhibit 3.6H (Environmental Matters) and Exhibit 4.1 (Employee Matters) to the Transfer Agreement, are an integral part of the Acquired Assets being purchased by JCI and, accordingly, such assumption is reasonable, enhances the value of the Debtors' estates, and does not constitute unfair discrimination.

NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

### General Provisions

1.      The Motion is GRANTED.

2.      The Objections are overruled except as expressly provided herein.

### Approval Of The Transfer Agreement

3.      Pursuant to 11 U.S.C. § 363(b), the Transfer Agreement, and all of the terms and conditions thereof, are hereby approved.

4.      Pursuant to 11 U.S.C. § 363(b), the Debtors are authorized to perform their obligations under the Transfer Agreement and comply with the terms thereof and consummate the Sale in accordance with and subject to the terms and conditions of the Transfer Agreement.

5.      Each of the signatories to the Transfer Agreement is directed to take all actions necessary or appropriate to effectuate the terms of this Order with respect to the Sale.

6.      The Debtors are authorized and directed to execute and deliver, and empowered to perform under, consummate, and implement, the Transfer Agreement, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Transfer Agreement, and to take all further actions as may be requested by JCI for the purpose of assigning, transferring, granting, conveying, and conferring to JCI or reducing to possession, the Acquired Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the Transfer Agreement.

7.      This Order and the Transfer Agreement shall be binding in all respects upon all creditors (whether known or unknown) of any Debtor, JCI, all successors and assigns of JCI, the Debtors and their affiliates and subsidiaries, and any subsequent trustees appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code and shall not be subject to rejection.  To the extent any provision of this Order is inconsistent with the terms of the Transfer Agreement, this Order shall govern.

8.      The Transfer Agreement and any related agreements, documents, or other instruments may be modified, amended, or supplemented by the parties thereto in accordance with the terms thereof without further order of the Court; provided that any such modification, amendment, or supplement is not material.

<u>Sale And Transfer Of The Acquired Assets</u>

9.      Except as expressly permitted or otherwise specifically provided for in the Transfer Agreement or this Order, pursuant to 11 U.S.C. §§ 363(b) and 363(f), upon the consummation of the Transfer Agreement, the Acquired Assets shall be transferred to JCI free and clear of all Interests or Claims, with all such Interests or Claims to attach to the cash proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have as against the Acquired Assets, subject to any claims and defenses the Debtors may possess with respect thereto. Following the date of the completion of the transfer of the New Brunswick Facility to JCI under the Transfer Agreement (the "Completion Date"), no holder of any Interests or Claims in the Acquired Assets shall interfere with JCI's use and enjoyment of the Acquired Assets based on or related to such Interests or Claims, or any actions that the Debtors may take in their chapter 11 cases and no person shall take any action to prevent, interfere with or otherwise enjoin consummation of the transactions contemplated in or by the Transfer Agreement or this Order.

10.      Except as expressly provided in the Transfer Agreement or this Order, other than the liabilities assumed under the Transfer Agreement, including but not limited to those liabilities set forth on Exhibit 3.6H (Environmental Matters) and Exhibit 4.1 (Employee Matters) to the Transfer Agreement, the sale, transfer, assignment, and delivery of the Acquired Assets pursuant to the Transfer Agreement shall not be subject to any Interests or Claims, and Interests or Claims of any kind or nature whatsoever shall attach only to the net proceeds of the Sale in their order of priority, with the same validity, force, and effect which they now have as against the Acquired Assets, subject to

any claims and defenses the Debtors may possess with respect thereto.  All persons and

entities, including, but not limited to, all debt security holders, equity security holders,

governmental, tax, and regulatory authorities, lenders, trade and other creditors, holding

Interests or Claims arising in any way in connection with any acts, or failure to act, of the

Debtors or the Debtors' predecessors or affiliates, claims (as that term is defined in

section 101(5) of the Bankruptcy Code), obligations, demands, or guaranties of any kind

and nature against or in the Debtors or the Acquired Assets (whether legal or equitable,

secured or unsecured, matured or unmatured, contingent or noncontingent, senior or

subordinated), arising under or out of, in connection with, or in any way relating to the

Debtors, the Acquired Assets, the operation of the Debtors' battery business prior to the

Completion Date, or the transfer of the Acquired Assets to JCI, hereby are, and will be,

forever barred, estopped, and permanently enjoined from asserting, prosecuting, or

otherwise pursuing such Interests or Claims of any kind or nature whatsoever against JCI,

its successors or assigns, their property, or any designee.  Following the Completion

Date, no holder of an Interest or Claim (other than holders of liabilities assumed under

the Transfer Agreement, including but not limited to those liabilities set forth on Exhibit

3.6H (Environmental Matters) and Exhibit 4.1 (Employee Matters) to the Transfer

Agreement, on account of such liabilities only) against the Debtors shall interfere with

JCI's title to or use and enjoyment of the Acquired Assets based on or related to such

Interests or Claims and all such Interests or Claims, if any, shall be and hereby are

channeled, transferred and attached solely and exclusively to the proceeds of the Sale in

their order of priority.

11.     Except as expressly provided in the Transfer Agreement or this

Order, the transfer of the Acquired Assets to JCI pursuant to the Transfer Agreement

does not require any consents other than as specifically provided for in the Transfer

Agreement and constitutes a legal, valid, and effective transfer of the Acquired Assets,

and shall vest JCI with all right, title, and interest of the Debtors in and to the Acquired

Assets free and clear of all Interests or Claims of any kind or nature whatsoever (except

for the liabilities assumed under the Transfer Agreement, including but not limited to

those liabilities set forth on Exhibit 3.6H (Environmental Matters) and Exhibit 4.1

(Employee Matters) to the Transfer Agreement).

12.     If any person or entity that has filed financing statements,

mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing

Interests or Claims against or in the Acquired Assets shall not have delivered the

foregoing to the Debtors prior to the Completion Date, in proper form for filing and

executed by the appropriate parties, termination statements, instruments of satisfactions,

releases of all Interests or Claims that the person or entity has with respect to the

Acquired Assets, or otherwise, then (a) the Debtors are hereby authorized to execute and

file such statements, instruments, releases and other documents on behalf of the person or

entity with respect to the Acquired Assets and (b) JCI is hereby authorized to file, register

or otherwise record a certified copy of this Order, which, once filed, registered or

otherwise recorded, shall constitute conclusive evidence of the release of all Interests or

Claims in the Acquired Assets of any kind or nature whatsoever.

13.     This Order (a) shall be effective as a determination that, on the

Completion Date, all Interests or Claims of any kind or nature whatsoever existing as to

the Debtors or the Acquired Assets prior to the Completion Date have been

unconditionally released, discharged, and terminated (other than any surviving

obligations), and that the conveyances described herein have been effected and (b) shall

be binding upon and shall govern the acts of all entities including without limitation, all

filing agents, filing officers, title agents, title companies, recorders of mortgages,

recorders of deeds, registrars of deeds, administrative agencies, governmental

departments, secretaries of state, federal, state, and local officials, and all other persons

and entities who may be required by operation of law, the duties of their office, or

contract, to accept, file, register or otherwise record or release any documents or

instruments, or who may be required to report or insure any title or state of title in or to

any of the Acquired Assets.

14.     Except as otherwise expressly provided in the Transfer Agreement,

no person or entity, including, without limitation, any federal, state or local governmental

agency, department or instrumentality, shall assert by suit or otherwise against JCI or its

successors in interest any claim that they had, have or may have against the Debtors, or

any liability, debt, or obligation relating to or arising from the Acquired Assets, or the

Debtors' operation of the Business or use of the Acquired Assets, including, without

limitation, any liabilities calculable by reference to the Debtors or their assets or

operations, and all persons and entities are hereby enjoined from asserting against JCI in

any way any such claims, liabilities, debts or obligations.

15.     Except as expressly provided in the Transfer Agreement or this

Order, JCI is not assuming nor shall it in any way whatsoever be liable or responsible, as

a successor or otherwise, for any liabilities, debts, commitments, or obligations (whether

known or unknown, disclosed or undisclosed, absolute, contingent, inchoate, fixed, or

otherwise) of the Debtors or any liabilities, debts, commitments, or obligations in any

way whatsoever relating to or arising from the Acquired Assets or the Debtors' operation

of their business or use of the Acquired Assets on or prior to the Completion Date or any

such liabilities, debts, commitments, or obligations that in any way whatsoever relate to

periods on or prior to the Completion Date or are to be observed, paid, discharged, or

performed on or prior to the Completion Date (in each case, including any liabilities that

result from, relate to or arise out of tort or other product liability claims), or any liabilities

calculable by reference to the Debtor or their assets or operations, or relating to

continuing conditions existing on or prior to the Completion Date, which liabilities,

debts, commitments, and obligations are hereby extinguished insofar as they may give

rise to successor liability, without regard to whether the claimant asserting any such

liabilities, debts, commitments, or obligations has delivered to JCI a release thereof.

Without limiting the generality of the foregoing, except as expressly provided in the

Transfer Agreement or this Order, JCI shall not be liable or responsible, as a successor or

otherwise, for the Debtors' liabilities, debts, commitments, or obligations, whether

calculable by reference to the Debtors, arising on or prior to the Completion Date and

under or in connection with (i) any employment or labor agreements (including, without

limitation, the payment of wages, bonuses, severance pay, benefits (including, without

limitation, contributions or payments on account of any under-funding with respect to

any and all pension plans) or any other payment to employees of Debtors while such

individuals were employed by the Debtors), consulting agreements, severance

arrangements, change-in-control agreements, or other similar agreement to which any

15

Debtor is a party, (ii) any pension, welfare, compensation, or other employee benefit

plans, agreements, practices, and programs, including, without limitation, any pension

plan of the Debtors (including, without limitation, retention, benefit and/or incentive plan

to which any Debtors are a party and relating to the battery business (including, without

limitation, arising from or related to the rejection or other termination of any such

agreement)), (iii) the cessation of the Debtors' operations, dismissal of employees, or

termination of employment or labor agreements or pension, welfare, compensation, or

other employee benefit plans, agreements, practices, and programs, obligations that might

otherwise arise from or pursuant to the Employee Retirement Income Security Act of

1974, as amended, the Fair Labor Standard Act, Title VII of the Civil Rights Act of 1964,

the Age Discrimination and Employment Act of 1967, the Federal Rehabilitation Act of

1973, the National Labor Relations Act, the Consolidated Omnibus Budget

Reconciliation Act of 1985, COBRA, or the Worker Adjustment and Retraining

Notification Act, (iv) workers' compensation, occupational disease, or unemployment or

temporary disability insurance claims, (v) environmental liabilities, debts, claims, or

obligations arising from conditions first existing on or prior to Completion Date

(including, without limitation, the presence of hazardous, toxic, polluting, or

contaminating substances or wastes), which may be asserted on any basis, including,

without limitation, under the Comprehensive Environmental Response, Compensation

and Liability Act, 42 U.S.C. § 9601 et seq., (vi) any bulk sales or similar law, (vii) any

liabilities, debts, commitments, or obligations of, or required to be paid by, the Debtors

for any Taxes of any kind for any period, (viii) any liabilities, debts, commitments, or

obligations for any Taxes relating to the business of the Debtors or the Acquired Assets

for or applicable to the period prior to the Completion Date, (ix) any litigation relating to the Acquired Assets for or applicable to the period prior to the Completion Date, and (x) any products liability or similar claims, whether pursuant to any state or any federal laws or otherwise, relating to the Acquired Assets for or applicable to the period prior to the Completion Date.  JCI shall in no way be deemed a party to or assignee of any such agreement set forth in (i), (ii), and (iii) above, and no employee of JCI shall be deemed in any way covered by or a party to any such agreement, and all parties to any such agreement are hereby enjoined from asserting against JCI any and all claims arising from or relating to such agreement.  Any and all notices, if any, required to be given to the Debtors' employees pursuant to the Workers Adjustment and Retraining Notification Act, or any similar federal or state law, shall be the sole responsibility and obligation of the Debtors and JCI shall have no responsibility or liability therefore.

16.    Upon the completion of the transactions contemplated by the Transfer Agreement, JCI shall not be deemed to (i) be the successor of the Debtors, (ii) have, de facto, or otherwise, merged with or into the Debtors, (iii) be a mere continuation or substantial continuation of the Debtors or the enterprise(s) of the Debtors, or (iv) be liable for any acts or omissions of the Debtors in the conduct of the Debtors' business.

<u>Continuation And Transition Of Supply Out Of Fitzgerald</u>

17.    The Debtors are hereby authorized to (a) continue manufacturing and supplying JCI with battery products manufactured at the Fitzgerald Facility in accordance with JCI's diminishing supply requirements and (b) to transition production of battery products manufactured at the Fitzgerald Facility to other JCI facilities.

17

18.     The Debtors and JCI are each directed to take all actions necessary or appropriate to effectuate the terms of this Order with respect to the supply and transition of battery products from the Fitzgerald Facility.

<u>IUE-CWA Consent And IUE-CWA New Brunswick Attrition Plan</u>

19.     The Debtors are hereby authorized to enter into the agreement by and among Delphi Corporation, the International Union, IUE-CWA and IUE-CWA Local 416 (collectively the "IUE-CWA") attached to the Transfer Agreement as Exhibit 1.13 thereto (the "IUE-CWA Memorandum") and to implement the terms of such IUE-CWA Memorandum, including without limitation (i) that certain attrition plan between Delphi Corporation and the IUE-CWA (the "IUE-CWA New Brunswick Attrition Plan") with respect to the New Brunswick Facility and (ii) that certain consent to the waiver of that certain no-sale clause and neutrality obligations (the "IUE-CWA Consent").

20.     Each of the signatories to the IUE-CWA Memorandum is directed to take all actions necessary or appropriate to effectuate the terms of this Order with respect to the IUE-CWA Consent and the IUE-CWA New Brunswick Attrition Plan and the terms of the IUE-CWA Consent and the IUE-CWA New Brunswick Attrition Plan, including, without limitation, any and all actions necessary or appropriate to its implementation of and performance under the IUE-CWA Consent and the IUE-CWA New Brunswick Attrition Plan.

21.     Both the $12.5 million to be paid by JCI pursuant to Section 3.A(xi) of Exhibit 4.1 to the Transfer Agreement and the economic support to be provided by General Motors Corporation to Delphi Corporation upon the transfer of the New Brunswick Facility to JCI shall be paid to Delphi Corporation.

22.    The entry of this Order is without prejudice to WTC to assert that claims should be asserted by or on behalf of Delphi Corporation against Delphi Automotive Systems LLC arising from Delphi Corporation's payment of obligations related to the IUE-CWA New Brunswick Attrition Plan (the "Alleged Intercompany Claims").  All parties-in-interest (including, without limitation, Delphi Corporation and any of its affiliated Debtors, the IUE-CWA, the Official Committee of Unsecured Creditors, and the Official Committee of Equity Security Holders) have an express reservation of rights to challenge all aspects of the Alleged Intercompany Claims, if ever asserted.

23.    This Order (including, without limitation, (i) the finding herein that Delphi Corporation has demonstrated good, sufficient, and sound business purpose and justification in determining that the terms and conditions of the IUE-CWA New Brunswick Attrition Plan are in the best interests of the Debtors, their estates, and their creditors and (ii) the Transfer Agreement attached hereto as Exhibit 1) shall not be used adversely as precedent against WTC in any subsequent litigation in these chapter 11 cases should WTC raise objections in such litigation in the future that are similar to the WTC Objection or the Amended WTC Objection.

## Additional Provisions

24.    The consideration provided by JCI for the Acquired Assets under the Transfer Agreement is hereby deemed to constitute reasonably equivalent value and fair consideration under the Bankruptcy Code, the Uniform Fraudulent Conveyance Act, the Uniform Fraudulent Transfer Act, and under the laws of the United States, and any state, territory, possession, or the District of Columbia.

19

25.     On the Completion Date, this Order shall be construed and shall constitute for any and all purposes a full and complete general assignment, conveyance, and transfer of all of the Acquired Assets or a bill of sale transferring good and marketable title in such Acquired Assets to JCI on pursuant to the terms of the Transfer Agreement.

26.     Except as otherwise provided in the Transfer Agreement, on the Completion Date, each of the Debtors' creditors is authorized and directed to execute such documents and take all other actions as may be necessary (or, in the case of the agent under the Debtors' prepetition credit facility, as may be reasonably requested) to release their respective Interests or Claims against the Acquired Assets, if any, as may have been recorded or may otherwise exist.

27.     Each and every federal, state, and governmental agency or department, and any other person or entity, is hereby directed to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the Transfer Agreement.

28.     All entities who are currently, or as of the Completion Date may be, in possession of some or all of the Acquired Assets to be sold, transferred, or conveyed pursuant to the Transfer Agreement are hereby directed to surrender possession of the Acquired Assets to JCI on the Completion Date.

29.     The transactions contemplated by the Transfer Agreement are undertaken by JCI in good faith, as that term is used in section 363(m) of the Bankruptcy Code, and accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the sale of the Acquired Assets shall not affect the

20

validity of the Sale to JCI, unless such authorization is duly stayed pending such appeal.

JCI is a purchaser in good faith of the Acquired Assets, and is entitled to all of the

protections afforded by section 363(m) of the Bankruptcy Code.

30.    The consideration paid by JCI in the Sale for the Acquired Assets

under the Transfer Agreement is fair and reasonable, and may not be avoided or

otherwise challenged under 11 U.S.C. § 363(n).

31.    The Debtors, including but not limited to their respective officers,

employees, and agents, are hereby authorized to execute such documents and do such

acts as are necessary or desirable to carry out the transactions contemplated by the terms

and conditions of the Transfer Agreement and this Order.  The Debtors shall be, and they

hereby are, authorized to take all such actions as may be necessary to effectuate the terms

of this Order.

32.    Nothing in this Order or the performance of any obligation

hereunder shall be deemed to create or give rise to any claims, except those claims

created or arising pursuant to the Transfer Agreement, including, without limitation, the

IUE-CWA Memorandum and Exhibit 4.1 (Employee Matters) to the Transfer Agreement.

For the avoidance of doubt, this Order is without prejudice (a) to the Debtors' right to

seek further Court approval to permit the allowance of additional claims against the

Debtors not contemplated by the Transfer Agreement but necessary to effectuate the

transactions contemplated thereunder, and (b) to the right of any party-in-interest to

challenge the allowability, amount, or priority of any such additional claims referred to in

(a) above.  Nothing contained in the Transfer Agreement or in this Order, or the

performance of any obligation hereunder and thereunder, shall constitute an assumption or rejection of any agreement.

33.    The terms and provisions of the Transfer Agreement and this Order shall be binding in all respects upon, and shall inure to the benefit of, the Debtors, their estates, and their creditors, JCI, and its respective affiliates, successors, and assigns, and any affected third parties, including, but not limited to, all persons asserting an Interest or Claim in the Acquired Assets to be sold to JCI pursuant to the Transfer Agreement, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise shall be binding.

34.    Notwithstanding anything contained herein to the contrary, the term "Acquired Assets" as defined herein does not include property that is not property of the Debtors' estates, such as funds that are trust funds under any applicable state lien laws.

35.    Nothing in this Order approving the Transfer Agreement: (a) releases or nullifies any liability to a government entity under environmental statutes or regulations that any entity would be subject to as owner or operator of such property; and (b) precludes or prevents a governmental entity from exercising any powers under police and regulatory statutes, or regulations, that would be applicable to any entity as an owner or operator of property.  However, this Order does not act as a determination that JCI is or will be an owner or operator of any property.

36.    To the extent permitted by section 525 of the Bankruptcy Code, no governmental unit may revoke or suspend any permit or license relating to the operation

of the Acquired Assets sold, transferred, or conveyed to JCI on account of the filing or

pendency of these chapter 11 cases or the consummation of the Sale.

37.    The failure specifically to include or to reference any particular

provision of the Transfer Agreement in this Order shall not diminish or impair the

effectiveness of such provision, it being the intent of the Court that the Transfer

Agreement be authorized and approved in their entirety.

38.    The Transfer Agreement and any related agreements, documents,

or other instruments may be modified, amended, or supplemented by the parties thereto

in accordance with the terms thereof without further order of the Court; provided that any

such modification, amendment, or supplement does not have a material adverse effect on

the Debtors' estates.

39.    The provisions of this Order are nonseverable and mutually

dependent.

40.    Nothing in this Order shall alter or amend the Transfer Agreement

and the obligations of the Debtors and JCI thereunder.

41.    This Court retains jurisdiction to enforce and implement the terms

and provisions of the Transfer Agreement, all amendments thereto, any waivers and

consents thereunder, and of each of the agreements executed in connection therewith in

all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of

the Acquired Assets to JCI, (b) compel delivery of the purchase price, reimbursement of

costs under the IUE-CWA New Brunswick Attrition Plan, or performance of other

obligations owed to the Debtors pursuant to the Transfer Agreement, (c) resolve any

disputes arising under or related to the Transfer Agreement, except as otherwise provided

therein, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect

JCI against any Interests or Claims against the Debtors or the Acquired Assets, of any

kind or nature whatsoever, attaching to the proceeds of the Sale.

       42.    Notwithstanding Rule 6004(g) of the Federal Rules of Bankruptcy

Procedure or any other Bankruptcy Rule, this Order shall take effect immediately upon its

entry.

       43.    The requirement under Rule 9013-1(b) of the Local Bankruptcy

Rules for the United States Bankruptcy Court for the Southern District of New York for

the service and filing of a separate memorandum of law is deemed satisfied by the

Motion.

Dated: New York, New York
      June 26, 2006

                      /s/ Robert D. Drain_____
                      UNITED STATES BANKRUPTCY JUDGE