Bonnie Steingart (BS-8004)
Debra M. Torres (DT-9093)
FRIED, FRANK, HARRIS, SHRIVER & JACOBSON LLP
One New York Plaza
New York, New York 10004
Telephone:  212.859.8000
Facsimile:  212.859.4000

*Counsel for the Official Committee of Equity Security Holders*

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| Delphi Corporation, et al., | : | Case No.  05-44481 (RDD) |
| | : | (Jointly Administered) |
| Debtors. | : | |

**LIMITED OBJECTION OF THE OFFICIAL COMMITTEE OF
EQUITY SECURITY HOLDERS IN OPPOSITION TO DEBTORS'
MOTION FOR ORDER UNDER 11 U.S.C. § 363 (b) AND FED. R. BANKR. P.
6004 APPROVING (I) SUPPLEMENT TO UAW SPECIAL ATTRITION
PROGRAM, AND (II) IUE-CWA SPECIAL ATTRITION PROGRAM**

TO:   THE HONORABLE JUDGE ROBERT D. DRAIN
        UNITED STATES BANKRUPTCY JUDGE

The Official Committee of Equity Security Holders (the "Equity Committee"), of Delphi Corporation ("Delphi") and the other above-captioned debtors (collectively, the "Debtors") by and through its counsel, Fried, Frank, Harris, Shriver & Jacobson LLP, files this limited objection (the "Objection") to the Debtors' motion (the "Motion") for an order pursuant to 11 U.S.C. § 363(b) and Fed. R. Bankr. P. 6004 approving and authorizing the Debtors to implement (i) a supplemental program (the "UAW Supplement") in addition to the previously-approved

human capital attrition program covering hourly employees represented by United Automobile, Aerospace and Agricultural Implement Workers of America ("UAW"), and (ii) a human capital attrition program (the "IUE-CWA Program," and together with the UAW Supplement, the "Programs") covering hourly employees represented by the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers-Communications Workers of America ("IUE-CWA"), which was filed on June 19, 2006, in the above-captioned chapter 11 cases. In support of the Objection, the Equity Committee respectfully states as follows:

## PRELIMINARY STATEMENT

1.   As the Court knows, General Motors Corporation ("GM") has exposure to the Debtors' employees as a result of the benefit guarantees GM provided in 1999. To the extent GM is required to fund under the benefit guarantees, it could seek to assert a prepetition claim against the Debtors, which would be subject to challenge in all respects. The Equity Committee has reason to believe significant affirmative claims and avoidance actions may exist against GM. In that regard, the Equity Committee is concerned that certain provisions in the Programs may inappropriately enhance the size and nature of GM's claims and may be inconsistent with the Bankruptcy Code.

2.   Throughout the Motion the Debtors herald their efforts to negotiate and obtain in the Programs reservations of rights for all parties so that issues relating to the actual costs of the Programs absorbed by GM, including claims arising therefrom, are to be determined at a later date (in the context of claims resolution). However, as currently drafted, certain of the Programs' provisions work to effectively inflate and insulate the claims GM may assert, while simultaneously limiting the reservation of rights afforded parties in interest to challenge such

2

claims. Therefore, by this Objection, the Equity Committee requests that the order approving and authorizing the implementation of the Programs be modified (as described in greater detail below) to expressly protect and reserve any and all rights of any party in interest to challenge and object to the various claims GM may assert in connection with the Programs on any and all grounds.

## BACKGROUND

3.      On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates filed voluntary petitions in this Court for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. This Court entered orders directing the joint administration of the Debtors' chapter 11 cases.

4.      On October 17, 2005, the Office of the United States Trustee (the "U.S. Trustee") appointed an Official Committee of Unsecured Creditors (the "Creditors' Committee").

5.      On April 28, 2006, the U.S. Trustee appointed the Equity Committee.

6.      On May 5, 2006, this Court entered an order authorizing and approving the Debtors' human capital attrition program (the "UAW Program") covering hourly employees represented by the UAW. On May 12, 2006, this Court amended the order authorizing the UAW Program.

7.      On May 8, 2006, the Equity Committee engaged Fried, Frank, Harris, Shriver & Jacobson LLP as counsel, with such retention approved by this Court on June 19, 2006.

8.      On June 19, 2006, the Debtors filed the Motion pursuant to which they seek

approval of and authority to implement the Programs. In general, the IUE-CWA Program provides for the voluntary retirement for certain IUE-CWA represented employees, "check the box" provisions whereby such retirees may elect to retire from GM and buyout options for active employees. The UAW Supplement provides for these buyout options for UAW represented employees.

## LIMITED OBJECTION

9.   In the Motion, the Debtors represent that the IUE-CWA Program is without prejudice to any party in interest in all other aspects of the Debtors' chapter 11 cases. See Motion, paragraph 21. The Debtors also represent that they would not have agreed to many of the provisions of the Programs without obtaining for parties in interest express reservations of rights with respect to claims asserted by GM relating to the Programs. See Motion, paragraph 31. Yet, contrary to such statements in both the Motion and the Programs, the Debtors have not provided the appropriate language in the proposed order approving and authorizing the Programs.

10.   The Programs are the result of a trilateral agreement among (i) the Debtors, GM and the UAW and (ii) the Debtors, GM and the IUE-CWA, based on the various rights and obligations of such parties under certain prepetition agreements, including the Master Separation Agreement and the U.S. Employee Matters Agreement among the Debtors and GM, and certain benefit guarantee agreements between GM and the respective unions. As such, GM has agreed to incur a portion of the costs associated with the Programs, not as an altruistic act, but rather, because GM is currently obligated to and would otherwise absorb costs with respect to the employees covered by the Programs even without a trilateral agreement. GM should not be authorized to better its position in terms of these prepetition arrangements at the expense of the

4

Debtors' other constituencies. Therefore, the various limitations on parties' rights to challenge and object to claims GM may assert in connection with the Program must be stricken.

### A.     GM should not be given an allowed claim

11.     Pursuant to the Programs, certain eligible employees will have the option to receive a specified buyout payment in order to sever all ties with both the Debtors and GM (except for vested pension benefits). It is contemplated that the Debtors and GM will each pay one-half of the total buyout payments due and GM will be given an allowed prepetition general unsecured claim with respect to its share of the buyout payments. The Equity Committee understands that the predicate for giving GM such an allowed claim is the Debtors' argument that such funding is essentially "new money," which warrants specialized treatment for GM.[1] However, the Debtors' argument is belied by the terms of the prepetition arrangements that are in place between GM and the respective unions.

12.     The funding for the buyout payments is not a new money investment by GM, but rather is a means for GM to reduce or eliminate its obligations to certain employees under the benefit guarantees it gave to UAW and IUE-CWA represented employees. As a result of these benefit guarantees, GM has exposure for, among other things, OPEB obligations it would have to assume for eligible employees if the Debtors reduce or eliminate such benefits. If GM made payments under these benefit guarantees, GM would at most have the ability to assert claims

---

[1] In the declaration of David L. Resnick filed by the Debtors in support of the Motion, Mr. Resnick states that GM's buyout payments provide a postpetition benefit to the Debtors' estate because GM was not otherwise obligated to provide the funding. This assertion, however, is without support and does not reflect that, as discussed later, such payments provide a means for GM to reduce its exposure on other prepetition obligations to the unionized employees.

against the Debtors for reimbursement of such payments under certain prepetition agreements among the Debtors and GM and/or common law theories of contribution and subrogation. Any claims asserted by GM would be subject to challenge in all respects, including that GM's claims for indemnity and reimbursement are not covered or contemplated by the prepetition agreements, and that the prepetition agreements themselves are void or voidable and may not be enforced.

13. The buyout option under the Programs provides a means whereby GM can reduce or eliminate its prepetition exposure to the employees by providing one-half of the funding to employees who sever all ties with both the Debtors and GM, thus cutting off GM's OPEB and other exposure under the benefit guarantees to such employees. In essence, instead of funding under the benefit guarantees (and having the ability to assert a claim against the Debtors that is subject to challenge), GM is satisfying its exposure to certain employees by funding a smaller amount under the buyout program but receiving an allowed claim with respect to such funding. There is no basis to provide GM with an allowed claim for partial funding a buyout of employees to which it already had exposure under the benefit guarantees.

14. In the event GM's claims with respect to buyouts are deemed allowed by this Court, such allowance should be made subject to reconsideration in light of and pursuant to section 502(d) of the Bankruptcy Code. Section 502(d) provides that the court shall <u>disallow</u> any claim of any entity that is a transferee of a transfer avoidable under section 548 of the Bankruptcy Code, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable. <u>See</u> 11 U.S.C. 502(d). Thus, "the Bankruptcy Code explicitly bans [the] allowance [of a claim of a transferee] until [the transferee] has repaid the estate for the fraudulently transferred property." <u>Glinka v. Federal Plastics Mfg. (In re</u>

6

Housecraft Indus. USA, Inc.), 310 F.3d 64, 72, n.8 (2nd Cir. 2002).[2]

15. Like other parties in interest, the Equity Committee believes that given the circumstances surrounding GM and the Debtors' relationship, including in the context of the spin-off, many of GM's claims may be subject to challenge and avoidance on a number of grounds including fraudulent conveyance and preference actions. The Motion does not seek nor would it be appropriate to eliminate the protections of section 502(d) of the Bankruptcy Code. As such, if GM is given an allowed claim with respect to its buyout payments under the Programs, such allowance must be subject to reconsideration pursuant to section 502(d) of the Bankruptcy Code. See In re Mid Atlantic Fund, Inc., 60 B.R. 604, 609 (Bankr. S.D.N.Y. 1986) (to succeed on an objection to a claim under section 502(d), the movant need only make a prima facie showing the transfer was preferential.)

**B.     Parties in interest must be allowed to assert claims and defenses held by the Debtors**

16. Pursuant to the IEU-CWA Program, GM may assert claims against Delphi with respect to OPEB obligations assumed under paragraph 2 of the IUE-CWA Program relating to "check the box" retirees or active health care and life insurance obligations assumed under paragraph 3.d. relating to employees that elect to enter into a pre-retirement program. Pursuant to the IEU-CWA Program, the Debtors have waived their rights to challenge the allowance of any such claims (except with respect to the economic value of such claims). See IUE-CWA

---

[2] Significantly, disallowance is required under § 502(d) even where the statute of limitations for an affirmative claim to recover such a transfer has expired. In United States Lines v. United States (In re McLean Indus.), 184 B.R. 10 (Bankr. S.D.N.Y. 1995), aff'd 196 B.R. 670 (S.D.N.Y. 1996).

Program, paragraph 2. However, the rights of parties in interest to object to the claims of GM have been reserved. See IUE-CWA Program, paragraph 2.

17.     As other parties, including the Creditors' Committee, have asserted throughout the Debtors' chapter 11 cases, as a result of the relationship between GM and certain of the Debtors in connection with the spin-off and thereafter, there may be a number of claims that the Debtors can assert against GM which could affect the allowance, amount and priority of claims GM may assert against the Debtors. In light of the Debtors' waiver of rights to object, in order to ensure that the reservation of rights for other parties in interest has meaning and encompasses all claims and defenses that may be brought against GM, parties in interest must be allowed to stand in the shoes of the Debtors when objecting to claims asserted by GM. The order approving the Motion must make it expressly clear that the Debtors' waiver of rights to object to GM's claims is not binding on other constituencies and that the rights of parties in interest to assert claims and defenses against GM as if they were standing in the shoes of the Debtors are unimpaired and unaffected in any way by the Debtors' waiver.

**C.    The right to challenge claims asserted by GM on the grounds that they are not assertable under the Master Separation Agreement must be preserved**

18.     As currently proposed, the IUE-CWA Program provides that the prepetition general unsecured claims GM may assert against the Debtors for obligations assumed by GM under the "check the box" provisions shall be conclusively deemed to be comprehended by, included within and assertable under the Master Separation Agreement dated December 22, 1998 (the "Master Separation Agreement") and that no parties in interest may challenge the allowance of such claims on the grounds that the claims were not assertable under that agreement. See IUE-

8

CWA Program, paragraph 2.

19.     Given, inter alia, the terms of the Master Separation Agreement and the terms of GM's benefit guarantees, there is a serious question concerning whether the Master Separation Agreement would in fact cover these claims of GM.  The request to conclusively find otherwise, therefore, is inappropriate.  The Master Separation Agreement among the Debtors and GM was entered into in connection with the spin-off of the Debtors and is the primary agreement pursuant to which the Debtors became a separate entity.  Under the Master Separation Agreement, there is a general indemnity provision that allows GM to assert claims against the Debtors in the event GM incurs a loss or liability arising from the liabilities the Debtors had assumed and/or due to the manner in which the Debtors conduct their business.

20.     In essence, the general indemnity under the Master Separation Agreement provides GM with a claim in the event GM gets stuck with a liability that the Debtors assumed. The general indemnity under the Master Separation Agreement makes no provision for and cannot as a matter of law cover GM for additional liabilities GM voluntarily assumed (in contracts to which the Debtors are not a party) after the spin-off.  For GM to seek to insulate its claims from challenge on that basis is inappropriate and significantly diminishes the ability of parties to challenge such claims.

21.     By the relief requested in the Motion, GM and the Debtors are not only attempting to create grounds by which GM may assert claims against the Debtors, but are also shielding such claims from challenge by eliminating one of the important defenses against such claims (that is that such claims are not assertable under the general indemnity of the Master Separation Agreement).  In defense of their decision to agree to waive their right to object to GM's OPEB

related claims and to limit parties' rights to challenge such claims, the Debtors argue that GM would have had administrative expense claims for such obligations but instead agreed to assert only prepetition general unsecured claims. This assertion ignores the fact that even if GM had not agreed to participate in the IUE-CWA Program, including the "check the box" option, GM would still be obligated to assume the OPEB related prepetition liabilities as a result of the benefit guarantees GM provided to the IUE-CWA. GM settling exposure it has to employees (as a result of an agreement between GM and the IUE-CWA) cannot and should not give rise to a postpetition claim against the Debtors. Significantly, if the Master Separation Agreement does not cover GM's claims, GM would have to assert such claims under theories of common law contribution or subrogation which would likely result in a much smaller claim and would be subject to a number of defenses.

22.   The Equity Committee is not seeking to have the Court find that the Master Separation Agreement indemnity does not cover the GM claims, it is simply seeking to preserve the right to assert such claim and have the issue fully vetted. Thus, in order to give the reservation of rights meaning, parties in interest must be allowed to challenge the allowance of all of GM's prepetition claims on any grounds, including on the grounds that they are not assertable under the Master Separation Agreement.[3]

---

[3]   This Court's prior decision approving the UAW Program, including that claims asserted by GM with respect to "check the box" UAW employees are assertable under the Master Separation Agreement, can be distinguished and need not be determinative for the IUE-CWA Program for the following reasons: 1) the Court's decision related to the treatment of GM's claims and was not an interpretation of the Master Separation Agreement and 2) for the Debtors' UAW represented employees, the Debtors entered into a new indemnity agreement with GM specifically indemnifying GM for obligations assumed pursuant to GM's benefit guarantee with the UAW, however, for IUE-CWA represented employees, no such separate

05-44481-rdd    Doc 4369    Filed 06/27/06    Entered 06/27/06 15:57:32    Main Document
                                          Pg 11 of 12

## **CONCLUSION**

23. In order to adequately preserve the rights of parties in interest in the Debtors' chapter 11 cases (as the Debtors assert the Programs accomplish) and for the foregoing reasons, the Equity Committee respectfully requests that the order approving the relief requested in the Motion expressly provide that (i) GM's claims against the Debtors with respect to buyout payments provided under the Programs are not conclusively allowed but rather the rights of any party in interest to challenge the source, allowability, amount and priority of such claims are fully reserved, (ii) the Debtor' waiver of its rights to object to the allowance of GM's claims, if any, with respect to OPEB and other obligations assumed under paragraph 2 of the IUE-CWA Program shall not affect or prejudice the right of any party in interest to object to or challenge such claims on any grounds, including based on any objections, defenses or claims that could have been brought by the Debtors and on the grounds that such claims are not assertable under the Master Separation Agreement and (iii) to the extent GM is given an allowed claim against the Debtors under the Programs, such claim is subject to reconsideration under section 502(d) of the Bankruptcy Code.

[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]

---

indemnity agreement exists and the Debtors are simply third party beneficiaries of the benefit guarantees GM provided to the IUE-CWA employees.

Dated: June 27, 2006
New York, New York

                        FRIED, FRANK, HARRIS, SHRIVER
                             & JACOBSON LLP

                        By:   /s/ Bonnie Steingart
                            Bonnie Steingart (BS-8004)
                            Debra M. Torres (DT-9093)

                        One New York Plaza
                        New York, New York 10004
                        Telephone: 212.859.8000
                        Facsimile: 212.859.4000

                        *Counsel for the Official Committee of Equity Security Holders*

557114