Hearing Date and Time: June 29, 2006 at 10 a.m.
Extended Objection Deadline: June 28, 2006 at 9:00 a.m.

WHITE & CASE LLP
1155 Avenue of the Americas
New York, New York 10036-2787
(212) 819-8200
Glenn M. Kurtz (GK-6272)
Gerard Uzzi (GU-2297)
Douglas P. Baumstein (DB-1948)

Wachovia Financial Center
200 South Biscayne Blvd., Suite 4900
Miami, Florida 33131
(305) 371-2700
Thomas E Lauria (Admitted *Pro Hac Vice*)
Frank L. Eaton (FE-1522)
Ileana A. Cruz

ATTORNEYS FOR APPALOOSA
MANAGEMENT L.P., WEXFORD CAPITAL LLC,
LAMPE CONWAY & CO., LLC, HARBINGER CAPITAL
PARTNERS, LLC AND MARATHON ASSET MANAGEMENT LLC

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re | Chapter 11 |
| Delphi Corporation, et al. | Case No. 05-44481 (RDD) |
| Debtors. | Jointly Administered |

**SUPPLEMENTAL LIMITED OBJECTION OF THE AD HOC EQUITY COMMITTEE
TO THE DEBTORS' MOTION FOR ORDER UNDER 11 U.S.C. § 363(b)
AND FED. R. BANKR. P. 6004 APPROVING (I) SUPPLEMENT TO UAW SPECIAL
ATTRITION PROGRAM, AND (II) IUE-CWA SPECIAL ATTRITION PROGRAM**

TO:   THE HONORABLE JUDGE ROBERT D. DRAIN,
      UNITED STATES BANKRUPTCY JUDGE

Appaloosa Management L.P., with and through certain of its affiliates

(collectively, "Appaloosa"), Wexford Capital LLC, with and through certain of its affiliates

(collectively, "Wexford"), Lampe Conway & Co., LLC, with and through certain of its affiliates (collectively, "Lampe"), Harbinger Capital Partners LLC, with and through certain of its affiliates (collectively, "Harbinger"), and Marathon Asset Management LLC, with and through certain of its affiliates (collectively, "Marathon," and together with Appaloosa, Wexford, Lampe and Harbinger, each a "Shareholder" and collectively, the "Ad Hoc Equity Committee"),[1] by and through their undersigned counsel, hereby file this limited supplemental objection to the Motion for an Order under 11 U.S.C. § 363(b) and Fed. R. Bankr. P. 6004 Approving (i) Supplement to UAW Special Attrition Program (the "UAW Supplement "), and (ii) IUE-CWA Special Attrition Program (the "IUE-CWA Program") [Docket No. 4269] (the "Motion")[2] of Delphi Corporation ("Delphi") and its affiliated debtors (collectively, with Delphi, the "Debtors" and the "Company"), and in opposition to the Motion, respectfully states as follows:

## PRELIMINARY STATEMENT

1. The Ad Hoc Equity Committee, like other constituencies, believes that significant affirmative claims and avoidance actions may exist against General Motors Corporation ("GM"). Thus, it makes this limited objection to the UAW Supplement and the IUE-CWA Program (the "New Programs") to the extent the order approving them (the "Proposed Order") seeks to force interested parties to waive defenses and claims against GM. As such, the Ad Hoc Equity Committee requests, by this limited objection, the Court deny that part of the Motion seeking to grant allowed claims to GM and to force parties to waive their rights to object to other GM claims or raise certain defenses.

---

[1] The Ad Hoc Equity Committee represents approximately 21% of Delphi's issued and outstanding shares.

[2] The Debtors consented to extend the Ad Hoc Equity Committee's deadline to file a response to the Motion to and including June 28, 2006 at 9 a.m. (EDT).

2. The Ad Hoc Equity Committee is also concerned that the proposed GM claims are asserted against Delphi when such claims arise from benefits to the estates of Delphi's operating subsidiaries. The Bankruptcy Code is not organized on an enterprise basis, and it is an improper use of a parent estate's assets to provide benefits to insolvent subsidiaries in the form of accepting claims for benefits to such subsidiaries.

3. In addition, the Debtors are not entitled to rush consideration of this Motion on 10-day notice and also attempt to abrogate the rights of interested parties to an automatic 10-day stay of an order approving the Motion. The Debtors have failed to establish any exigency that would entitle them to such relief. Accordingly, the Ad Hoc Equity Committee believes that the Bankruptcy Court should enter an approval order that expressly contains the modifications set forth below.

## BACKGROUND

4. On October 8 and 14, 2005, Delphi and certain of its U.S. subsidiaries and affiliates each filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") with the United States Bankruptcy Court for the Southern District of New York (the "Court"), thereby commencing the above-captioned jointly administered chapter 11 cases (collectively, the "Cases"). The Debtors continue to operate their businesses as debtors and debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

5. On January 1, 1999, the assets and liabilities of GM's wholly-owned subsidiary, Delphi, were transferred to Delphi Corporation (the "Spin-Off") in accordance with the terms of a Master Separation Agreement between GM and Delphi ("MSA"). In connection with the Spin-Off, GM entered into separate agreements with the United Automobile Workers ("UAW"), International Union of Electronic, Electrical, Salaried, Machine and Furniture

Workers-Communications Workers of America ("IUE-CWA") and the United Steelworkers of America.  In each of these three agreements (collectively, the "Benefit Guarantees" and individually the "UAW Benefit Guarantee", the "IUE-CWA Benefit Guarantee" and the "USW Benefit Guarantee," respectively), GM agreed to provide contingent benefit guarantees to make payments for limited pension benefits and post retirement health care and life insurance benefits ("OPEB") to certain of its eligible former GM U.S. hourly employees who transferred to Delphi as part of the Spin-Off.  A separate pre-petition agreement between GM and Delphi requires Delphi to indemnify GM if and to the extent GM makes payments under or relating to the UAW Benefit Guarantee (the "Delphi-UAW-GM Indemnity Agreement").  Upon information and belief, Delphi did not enter into similar agreements to indemnify GM for payments made under either the IUE-CWA Benefit Guarantee or the USW Benefit Guarantee in connection with the Spin-off.

6.      On March 22, 2006, the Debtors filed their Motion for Order Under 11 U.S.C. § 363(b) and Fed. R. Bankr. P. 6004 Approving Debtors' Human Capital Hourly Attrition Programs, seeking authority to enter into an agreement with GM and the UAW ("UAW Program") that would offer special programs designed to incentivize Delphi's UAW-represented employees into early retirement.

7.      The UAW Program is funded by GM, but permits GM to assert a pre-petition general unsecured claim that is subject to all defenses, other than certain defenses which arise from the special relationship among Delphi, GM and UAW that was created by the UAW Benefit Guarantee and the Delphi-UAW-GM Indemnity Agreement.

8.  On March 31, 2006, the Debtors sought authority to reject their collective bargaining agreements with certain of their unions and to modify their obligations to provide OPEB to hourly retirees (the "1113/1114 Motion").

9.  On May 12, 2006, the Court entered an order authorizing the Debtors to implement the UAW Program (the "UAW Program Order").[3]

10. The Debtors, on June 19, 2006, filed the Motion, seeking approval of the UAW Supplement, which proposes, *inter alia*, that in exchange for a release from all obligations (other than pension), UAW-represented employees receive certain lump-sum buyout payments in amounts of $40,000, $70,000 and $140,000, depending upon seniority, among other requirements ("UAW Buyout Payments"). Significantly, Delphi is liable for half the amount of the total UAW Buyout Payments, and GM obtains an allowed claim for its payment of the other half.

11. The Motion also seeks approval of the IUE-CWA Program, which contains terms similar to those approved by the Court under the UAW Program. The IUE-CWA Program, however, also contains two significantly different provisions that were not approved or considered by the Court. First, it provides for buyout payments ("IUE-CWA Buyout Payments"), which are similar to the UAW Buyout Payments (the IUE-CWA Buyout Payments together with the UAW Buyout Payments, the "Buyout Payments") that are currently under the Court's consideration, and second, it requires Delphi essentially to fund the entire Buyout Payments program, either directly or indirectly through allowed claims granted to GM under the Proposed Order.

---

[3]  On May 18, 2006, Wilmington Trust Company, as indenture trustee to the Debtors' senior notes and debentures, filed a notice of appeal of the First Attrition Program Order [Docket No. 3813]. Appaloosa, Wexford and Lampe also filed a notice of appeal, which they intend to voluntarily dismiss.

12. On June 20, 2006, the Ad Hoc Equity Committee filed a preliminary objection to the Motion (the "Preliminary Objection") in order to obtain discovery.

13. Significantly, the Motion, which was filed after close of business on June 19, 2006, was filed on less than 10-days notice, without any supporting affidavits or declarations. After filing its Preliminary Objection the next day, the Ad Hoc Equity Committee propounded discovery and Rule 30(b)(6) deposition notices upon the Debtors seeking information, such as economic analysis and financial models, to aid in assessing the financial impact the New Programs will have on the Debtors' estates. It was not until Sunday, June 25, 2006, that the Debtors submitted three declarations to support the Motion in response to the discovery requests. The depositions of John Sheehan and Kevin Butler were taken on June 26 and 27, 2006. Based on the evidence and testimony produced in response to discovery and in depositions, the Ad Hoc Equity Committee asserts the following limited objection.

## SUPPLEMENTAL OBJECTION

### I. Approval of The New Programs Must Clearly Preserve All Rights of Parties in Interest

#### A. Parties in Interest Should Not be Required to Waive Potential Defenses to GM Claims

14. As noted above, the New Programs propose to grant GM an allowed pre-petition general unsecured claim in the aggregate amount of all Buyout Payments actually paid by GM under the programs (the "GM Buyout Claims"). (IUE-CWA Program ¶ 1(c)). Significantly, the New Programs seek to prohibit all parties from objecting to the GM Buyout Claims on any grounds. Id.

15. The New Programs also propose to grant GM the right to "conclusively" assert a pre-petition general unsecured claim with respect to: (i) OPEB obligations it assumes under paragraph 2 of the IUE-CWA Program (the "Retiree Benefits") and (ii) active health care

and life insurance obligations it assumes under paragraph 3.d thereof (the "Employee Benefits," and together with the Retiree Benefits, the "GM Benefit Claims," and collectively, with the GM Buyout Claims, the "GM Claims"). The New Programs also seek to eliminate the right of parties in interest to object to the GM Benefit Claims on the basis that the claims were not assertable under Delphi's general indemnity of GM under the MSA. Proposed Order, ¶ 10.

16. Despite the fact that the GM Buyout Claims are still contingent and unliquidated, and the GM Benefit Claims have not even been asserted by GM at this time, the Debtors nonetheless seek to waive unilaterally the rights of interested parties to object at a later time to the GM Claims. This forced waiver violates section 502 of the Bankruptcy Code by effectively precluding creditors and other interested parties from having a meaningful opportunity to object.

17. Section 502(a) provides that a claim or interest is "deemed allowed" unless a party in interest objects. 11 U.S.C. § 502(a); see also In re Dynamic Brokers, Inc., 293 B.R. 489, 496 (9th Cir. 2003) ("The filing of a formal objection to a claim trumps the 'deemed allowed' status and necessitates formal allowance of the claim."). Interested parties are afforded an extensive opportunity to review claims and determine whether objections are necessary; indeed, there is no deadline for filing claim objections. See, e.g., In re Thompson, 965 F.2d 1136, 1147 (1st Cir. 1992) ("Unlike a proof of claim, which must be filed before the bar date, an objection to a proof of claim may be filed at any time."); In re Kolstad, 928 F. 2d 171, 174 (5th Cir. 1991) ("There is no bar date or deadline for filing objections.").

18. Furthermore, a "debtor may not waive th[e] right [to object] on behalf of creditors." In re FCX, Inc., 54 B.R. 833, 842 (Bankr. E.D.N.C. 1985); In re UNR Indus., Inc., 71 B.R. 467, 477 (N.D. Ill. 1987) (debtor's waiver of government contract defense as to certain

claims did not preclude other interested parties from objecting to claim on the ground of the government contract defense).  For example, in FCX, Inc., the debtor and a creditor bank had entered into a financing agreement with the approval of the court, which agreement included several provisions relating to the collateralization and perfection of the bank's pre-petition claims in the bankruptcy proceeding.  54 B.R. at 837.  The court held that while the debtor was bound by the agreement, the creditors were not, further noting that a debtor may not waive the right of creditors to object to the allowance of a claim.  Id. at 842.  Accordingly, the Debtors should not be entitled to unilaterally waive the rights of parties in interest to raise all claims and defenses to the GM Claims.

19. Additionally, by giving GM an allowed claim for providing Buyout Payments to employees to sever all ties to Delphi and GM (including obligations to pay OPEB) and forcing interested parties to waive defenses to the GM Claims, Delphi is effectively settling in advance claims GM might assert for its obligation to pay OPEB under the Benefit Guarantees.  Such settlement does not properly weigh the significant defenses to the allowability, priority and amount of any such claim GM could assert as would be required under Rule 9019 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").  See Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 424 (1968) (To approve settlement under Rule 9019, courts consider: (1) the probability of success in the litigation; (2) the difficulty in collecting after obtaining a judgment in the litigation; (3) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; and (4) the interest of creditors and stockholders and a proper deference to their reasonable views of the settlement).  Such a backdoor settlement should not be permitted without establishing the Bankruptcy Rule 9019 factors.

     **B.**    **The Parties' Rights to Raise Defenses Under**
           **Section 502(d) of the Bankruptcy Code Should be Preserved**

        20.    If the Court finds that the New Programs otherwise meet the requirements for approval, the approval order should be without prejudice to parties' rights to seek reconsideration of the allowability (in whole or in part) of the GM Claims pursuant to section 502(d) of the Bankruptcy Code. Section 502(d) provides, in pertinent part, that

> the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

11 U.S.C. § 502(d).

        21.    Given the nature of the relationship between GM and the Debtors, it is reasonable to expect that GM will be subject to causes of action brought under Chapter 5 of the Bankruptcy Code. If and when such actions are commenced, parties' rights to seek set-off or disallowance of the GM Claims pursuant to section 502(d) should be preserved. See In re McLean Indus., Inc., 30 F.3d 385, 388 (2d Cir. 1994) ("Section 502(d) requires a court to disallow an entity's claim against the bankruptcy estate if the estate is entitled to recover property from that entity, such as because of a voidable preference, but that entity has failed to first transfer this property back to the bankruptcy estate.").

     **C.**    **The Parties' Right to Seek Reconsideration**
           **of the GM Claims Should be Expressly Preserved**

        22.    In addition, section 502(j) of the Bankruptcy Code provides, in pertinent part, that "[a] claim that has been allowed or disallowed may be reconsidered for cause." 11 U.S.C. § 502(j). Although the Motion and Proposed Order make no mention of section 502(j) of the Bankruptcy Code, any order entered granting the Motion should clarify that parties' rights

under this section to seek reconsideration and disallowance of the GM Claims are specifically preserved. The Ad Hoc Equity Committee proposes that such order should explicitly provide:

> all estate rights and remedies (as asserted by the Debtors or any other party in interest) vis à vis any GM claims (including, without limitation, objections, defenses, counterclaims, offsets, rights of subordination and recharacterization, claims to recover avoidable transfers and rights under 502(d) of the Bankruptcy Code, as well as the enforceability of any indemnification claims under the MSA) are preserved for the benefit of all parties in interest.

**II.     Section 502(e) of the Bankruptcy Code Prohibits Allowance of Contingent Claims For Reimbursement For Which the Debtors Are Co-Liable**

23.     Because the GM Claims have not been quantified by the Debtors and remain completely contingent at this time, section 502(e) of the Bankruptcy Code prohibits allowance of such claim at this time. See Aetna Cas. & Sur. Co. v. Georgia Tubing Corp., 93 F.3d 56, 57 (2d Cir. 1996) (section 502(e) "bars any claim for 'reimbursement or contribution' if such claim 'is contingent as of the time of allowance or disallowance of such claim.'"). Section 502(e) provides, in pertinent part, that

> the court shall disallow any claim for reimbursement or contribution of an entity that is liable with the debtor on or has secured the claim of a creditor, to the extent that . . . such claim for reimbursement or contribution is contingent as of the time of allowance or disallowance of such claim for reimbursement or contribution.

11 U.S.C. § 502(e)(1)(B); see also Aetna Cas. and Surety Co. v. Georgia Tubing Co., 1995 WL 429018, *2 (S.D.N.Y. Jul. 20, 1995) (discussing policy behind section 502(e)(1)(B) and noting that the section "allows for the expeditious resolution of issues so as not to burden the estate by claims which have not come to fruition" (citation omitted)).

24.     Here, the GM Claims seek reimbursement for GM's payment of Employee Benefits and Retiree Benefits; those payments are contingent at this time, and the Debtors would be co-liable with GM under the programs; thus, they fit within the purview of section 502(e) of

the Bankruptcy Code. See id. at *2. Accordingly, the Bankruptcy Code prohibits allowance of the GM Claims until such time as the claim becomes non-contingent.

25. In short, the means by which the Debtors propose to establish and waive objections to the GM Claims impermissibly replaces the due process protections embodied in detailed procedures for claim allowance set forth in section 502 of the Bankruptcy Code with the Debtors' own summary procedure.

### III. The Debtors Have Not Carried their Burden of Proving that GM is Entitled to Be Indemnified under the Master Separation Agreement

26. The Debtors cannot force parties to waive their right to object to the GM Benefits Claims on the ground that GM is entitled to indemnity under the MSA because they have not proven GM's entitlement. Courts have held that to establish the right to indemnification, the indemnitee must present evidence to establish such factors as, *inter alia*, the scope of the indemnification agreement; the parties' intent to indemnify under the agreement; the reasonableness of the alleged expense; and, where the underlying action is settled rather than resolved by payment of a judgment, the validity of the underlying claim and the reasonableness of settlement. See Hatco Corp. v. W.R. Grace & Co.-Conn., 59 F.3d 400, 405 (3d Cir. 1995) (noting that "New York law specifies that an indemnity agreement be strictly construed and that a clear and unmistakable intent to indemnify be manifest in the contract"); Am. Motorists Ins. Co. v. United Furnace Co., 699 F. Supp. 46, 49 (S.D.N.Y. 1988) (holding that in order for plaintiff to establish a prima facia case for indemnification, he must present evidence to establish the amount of the claim under the terms of the indemnity agreement); see also McClure v. Deerand Corp., 585 A.2d 19, 22 (Pa. Super. Ct. 1991) (setting forth factors).

27. Significantly, the Debtors have not made a legal or factual case supporting their assertion that GM would have a right to indemnification under the MSA against the estate

for any obligations it may assume.  Indeed, GM has independent obligations under its IUE-CWA Benefit Guarantee to guarantee certain benefits to IUE-CWA-represented employees.  Delphi, on the other hand, is not a party to the IUE-CWA Benefit Guarantee, and has no legal obligation to indemnify GM for such guarantee.  This is in stark contrast to the specific indemnification agreement that Delphi executed in connection with the UAW Benefit Guarantee, i.e., the Delphi-UAW-GM Indemnity Agreement.  The absence of a separate indemnification agreement specifically tailored to the IUE-CWA Benefit Guarantee is a clear indication that Delphi had no intent to indemnify GM for any obligations arising from such guarantee.  Indeed, the Debtors fail to present any evidence that GM is entitled to indemnity under the MSA, and even if they had presented any evidence, the parties should not be precluded from challenging the GM Benefits Claims on this ground at a later date.

### IV. By Creating Claims Against and Obligations For Delphi That Properly Belong to Delphi Subsidiaries, Delphi is Improperly Providing A Benefit To Insolvent Subsidiaries For No Consideration

28.     Under the New Programs, the GM Claims are assertable only against Delphi notwithstanding the fact that Delphi's operating subsidiaries may be the parties ultimately liable for such claims.  This is particularly problematical where the applicable subsidiary is insolvent.  See In re Owens Corning, 419 F.3d 195, 211 (3d Cir.2005) ("[T]he general expectation of . . . the Bankruptcy Code . . . is that courts respect entity separateness absent compelling circumstances calling equity . . . into play."); Union Sav. Bank v. Augie/Restivo Baking Co. (In re Augie/Restivo Baking Co.), 860 F.2d 515, 520 (2d Cir.1988).  Under such circumstances, it is hard to understand what benefit Delphi receives.

29.     The court in Augie/Restivo reasoned that a stakeholder cannot be made to "sacrifice the priority" of its claim based on the bankruptcy court's decision that doing so would benefit the estate as a whole.  Augie/Restivo, 860 F.2d at 520; In re Adelphia Comm'n Corp.,

333 B.R. 649, (S.D.N.Y. 2005). Thus, <u>Augie/Restivo</u> stands for the proposition that each debtor must look out for the interests of its estate, and not merely benefit the enterprise as a whole. By providing that any claims assertable by GM under the New Programs are assertable against Delphi, the New Programs improperly elide the corporate distinction between Delphi and its operating subsidiaries which may be benefited by GM's participation in the New Programs.[4]

30. To prevent the New Programs from improperly creating claims against Delphi the order approving the programs should either (a) specify that GM's claims (to the extent they relate to OPEB that vests after October 2007) can only be asserted against the subsidiary where the employee was providing services, or (b) contain a reservation of rights consistent with that contained in the UAW Program Order. That Order states, in relevant part,

> Further, nothing in the Motion, the UAW Special Attrition Program Agreement, this Court's approval of such agreement, the performance of any obligation thereunder, or any other document shall prejudice any right or remedy of any Debtor against any other Debtor with respect to the allocation of Delphi's obligations under the UAW Special Attrition Program Agreement or claims asserted against Delphi thereunder, all of which rights are expressly preserved.

UAW Program Order, ¶ 10.

## V.    The Debtors Have Not Provided this Court With Any Basis for Waiving the Ten-Day Stay Provided Under Bankruptcy Rule 6004(g)

31. The Debtors have asked this Court to waive the ten-day stay provided under Bankruptcy Rule 6004(g) that would otherwise apply to any order regarding the New Programs. Absent an appropriate showing of cause – which the Debtors have failed to establish in their Motion – any such waiver is improper.

---

[4] The Ad Hoc Equity Committee believes that all of GM's payments under the programs, in fact, inure to GM's benefit and not to the benefit of any Delphi debtor.

32. As the Debtors readily concede, any abrogation of the stay contemplated under Bankruptcy Rule 6004(g) is improper absent a showing of some business exigency requiring immediate relief. In re PSINet Inc., 268 B.R. 358, 379 (Bankr. S.D.N.Y. 2001) (holding that insufficient cause existed to dispense with the automatic ten-day stay provided under Bankruptcy Rule 6004(g) where "Debtors made no showing of a business exigency . . . ."). The Debtors' Motion falls short of providing this Court with any valid "business exigency" that would require the shortening of the statutory stay.

33. Specifically, the Debtors have failed to provide this Court with any justification for the expedited relief requested in their Motion other than a general proclamation that such relief is crucial "[g]iven the current stance of the Debtors' negotiations with GM and their major unions over the Debtors' labor cost issues and the 1113/1114 Motion . . . ." Motion ¶ 46. This argument lacks merit. As an initial matter, the Debtors have not presented this Court with any facts to suggest that the immediate implementation of the New Programs is somehow a condition precedent to continued negotiations with GM and/or the Debtors' Unions. Further, the Debtors, who have repeatedly stated that they have no intention of rejecting their collective bargaining agreements at this juncture and cannot argue that their pending request for authority to do so (pursuant to their 1113/1114 Motion) somehow makes it necessary for this Court to waive the statutory protections offered by Bankruptcy Rule 6004(g) with regard to completely unrelated agreements.

34. Aggrieved parties are afforded the statutory right to appeal final orders, 28 U.S.C. § 158(a)(1), and the concomitant right to seek a stay of such orders pending appeal. Fed. R. Bankr. P. 8005. In furtherance of these rights, Bankruptcy Rule 6004(g) stays all orders relating to the use, sale, or lease of property. The Debtors have failed to provide this Court with

any justification for circumventing these well-established rights.  As such, the Ad Hoc Equity Committee respectfully submits that the expedited relief sought in the Motion should be denied.

## CONCLUSION

35.     For the reasons set forth herein and in the Preliminary Objection, the Ad Hoc Equity Committee respectfully requests that the order granting the Motion expressly provide the modifications set forth above.

Dated: June 28, 2006
       Miami, Florida

>WHITE & CASE LLP
>Glenn M. Kurtz (GK-6272)
>Gerard Uzzi (GU-2297)
>Douglas P. Baumstein (DB-1948)
>1155 Avenue of the Americas
>New York, New York 10036-2787
>(212) 819-8200
>
>Thomas E Lauria (Admitted *Pro Hac Vice*)
>Frank L. Eaton (FE-1522)
>Ileana A. Cruz
>Wachovia Financial Center
>200 South Biscayne Boulevard
>Miami, Florida 33131
>(305) 371-2700
>
>By:   /s/ Frank L. Eaton
>         Frank L. Eaton
>
>ATTORNEYS FOR APPALOOSA MANAGEMENT L.P., WEXFORD CAPITAL LLC, LAMPE CONWAY & CO., LLC, HARBINGER CAPITAL PARTNERS, LLC AND MARATHON ASSET MANAGEMENT LLC