062806.txt

1

```
 1              Cimalore - rough draft
 2         MR. FOX:  I want to confirm with
 3    Mr. Hogan that the -- UAW's counsel, Babette
 4    Ceccotti had contacted me last night asking
 5    us to provide Cohen, Weiss and Simon with a
 6    copy of the unredactedded version of
 7    Wilmington Trust's objection filed yesterday,
 8    which is June 27.  I told him I would be
 9    happy to do that if it was acceptable to
10    debtors' counsel, so if you would just
11    confirm that that's acceptable, I'll be happy
12    too give it to Cohen, Weiss and Simon's
13    counsel today.
14         MR. HOGAN:  Sure.  I actually was
15    informed of that, and sent an e-mail last
16    night, and indicated on the representation
17    that UAW agreed to be bound by the same
18    confidentiality protections that apply to
19    confidential and highly confidential
20    material, I think as it pertains to the 1113
21    motion, or any other motion that they signed
22    off on, I'm fine with it.
23         MR. HOCK:  I believe Babette responded
24    that that was acceptable.
25         MR. HOGAN:  She did.  So we're all on
```

2

```
 1              Cimalore - rough draft
 2    the same page.
 3  STEVEN CIMALORE,
 4    called as a witness, having been first
```

Page 1

062806.txt
```
 5        duly sworn by Jeffrey Benz, a Notary

 6        Public within and for the State of New

 7        York, was examined and testified as

 8        follows:

 9    EXAMINATION BY MR. HOGAN:

10        Q.   Good morning, sir.  Could you please

11   state and spell your name for the record?

12        A.   Miami is Steven Cimalore.  Steven with a

13   v, Cimalore is C-I-M-A-L-O-R-E.

14        Q.   And Mr. Cimalore, do you understand that

15   you're here today pursuant to a deposition notice

16   directed to Wilmington Trust company?

17        A.   Yes.

18        Q.   Have you ever had your deposition taken

19   before?

20        A.   Yes.

21        Q.   How many times?

22        A.   Once, I think.

23        Q.   Okay.  Just -- some quick background

24   rules.  The basics here are, I'm going to ask

25   questions, and you're going to provide information
```
                                                        3
```
 1             Cimalore - rough draft

 2   and answers, so if any of my questions are

 3   unclear, please let me know, and I'll clarify

 4   them.  Throughout the day your counsel may object

 5   0 to questions, unless your counsel instructs you

 6   not to answer a particular question, I'm going to

 7   ask you to go haired and answer it, and you will

 8   be obligated to do so, is that fair?

 9        A.   Fair.

10        Q.   And another one, because the
```
                    Page 2

062806.txt

11   stenographer is taking down what we say here, it's

12   important to try to give audible answers, and it's

13   important that we not try to take over each other.

14       A.   Okay.

15       Q.   If you wanted to take a break any time,

16   let me know.

17       A.   Fair.

18           MR. FOX:   Before you begin, I just want

19           to put on the record that we had a

20           conversation with chambers yesterday, and I

21           just wanted to medication clear that pursuant

22           to the judge's instruction that the discovery

23           is limited to factual allegations supporting

24           Wilmington's basis for objecting to the

25           attrition motion which is on for a hearing

                                                    4

1            Cimalore - rough draft

2            tomorrow.  And the other thing that I just

3            want to point out is that in order to help

4            you get answers, substantive answers, I just

5            want to point out that you're going to need

6            to establish the basis of the witness's

7            information, because witness is going to have

8            to information based on the fact that

9            Wilmington Trust is a member of the unsecured

10           creditors committee, and we've already agreed

11           that this deposition is -- that in this

12           discovery, it is based on Wilmington Trust's

13           individual capacity not as a committee

14           member, and they be secondly, so the witness

15           is not going to testify with respect to

                        Page 3

062806.txt

16          knowledge that he has as a committee member,

17          and secondly, the witness is not going to be

18          able to testify as to information that's

19          gained in the course of communications with

20          his counsel, due to the privilege.

21              So like I said, in order to assist you,

22          in getting the best answers you can, rather

23          than privilege objections, I'm going to ask

24          you to try to establish a real foundation for

25          the witness's knowledge, because otherwise

                                                                5

1              Cimalore - rough draft

2          you're going to run into that roadblock, and

3          I don't want to belabor the process.

4              MR. HOGAN:  Okay.  We certainly did have

5          a conversation with chambers yesterday, and

6          obviously, we intend to limit the deposition

7          to the subject matter that the court has

8          indicated is proper.  With respect to your --

9          Mr. Fox, your comment that the witness is not

10         going to testify in terms of knowledge

11         learned, on behalf of Wilmington's

12         membership, on the creditor's committee, I

13         don't know that we agreed to anything like

14         that, and I don't know how I can -- or the

15         witness, for that matter, can segregate those

16         things in his mind.  What we discussed

17         yesterday was in terms of discovery requests,

18         we -- we didn't want to see information

19         produced to us that was produced to

20         Wilmington by virtue of their membership on

21         the committee.  So I'll try and explore where

062806.txt

22      bases of information come from, but I'm not

23      agreeing to limit the deposition in terms of

24      where the witness's, or Wilmington's source

25      of knowledge, in terms of facts, related to

6

1           Cimalore - rough draft

2      the motion, came from.

3           MR. FOX:  Well, I -- okay.  I mean, I

4      just amplify in terms of the committee aspect

5      of it, again, I think Wilmington's here in

6      its individual capacity, and to the extent

7      that it does have information as committee

8      member it's primarily gained through counsel

9      or committee professionals, so it's going to

10      be privilege or work product, or prepared in

11      the context of or in preparation for

12      litigation.  So --

13           MR. HOGAN:  Privileged stuff, I

14      understand completely.

15           MR. FOX:  So I just -- you know I'm just

16      trying to be helpful to you, so we don't

17      belabor this.

18      Q.   So Mr. Cimalore, do you -- other than

19   conversations and communications with your

20   counsel, which are privileged, and we'll into some

21   specific questions on that, but I won't ask for

22   the substance of those, this your mind, as you sit

23   here, are you thinking about answering your

24   questions one way or the other dimension on

25   Wilmington's independent role O is their role as a

7

062806.txt
                    Cimalore - rough draft
1
2   member of the creditors committee?  Can you make

3   that distinction in your mind?

4       A.   It depends on the question.  Yeah, I --

5       Q.   Is there any subject matter or anything

6   that you're thinking about, that you had in mind

7   as we head into the dep that you would answer

8   differently, or you wouldn't be able to answer

9   solely in Wilmington's individual capacity?

10          MR. FOX:  Maybe it would be better to

11          just hold that till you get to specific

12          questions, and if he feels that way, he will

13          tell you at the time.

14      Q.   Do you feel that way now?  Is there any

15  subject matter where you're going to have

16  problems, based on the admonition of your counsel?

17      A.   Like I said, depends on what you ask, I

18  guess.

19      Q.   But as you sit here Indiana, you don't

20  have any subject matter in mind, where it would be

21  a problem in terms of Wilmington's individual as

22  opposed to capacity as a creditor committee.

23      A.   No.

24      Q.   You're employed by Wilmington Trust

25  company?

                                                    8

1                   Cimalore - rough draft

2       A.   That's correct.

3       Q.   What is your position, sir?

4       A.   I'm a vice president, and I'm a section

5   manager of the bankruptcy group.

6       Q.   And are you employed by any other entity
                        Page 6

062806.txt

```
 7   or company?

 8        A.   No.

 9        Q.   Are you a member of a board of directors

10   of any organization?

11        A.   No.

12        Q.   How long have you been employed by

13   Wilmington Trust company?

14        A.   Five and a half years.

15             You know what?  Let me clarify one thing

16   by used to be on the boarded -- I have a cousin

17   who has fashion -- I want to make sure, because I

18   don't know if I'm still on or not, to be honest

19   with you, she is an interior designer in Houston,

20   Texas, and I was on her board at one time, to so

21   just to be clear, I don't know if I'm still on

22   that.  Just to be clear.  That's the only other.

23        Q.   What is your business address?

24        A.   It is -- you know what?  We're in a

25   different location than our address, so if I could
```

9

```
 1             Cimalore - rough draft

 2   just check my card.  You can't mail to where our

 3   building is, but our mailing address would be 1100

 4   north market street, Wilmington Trust, Delaware,

 5   19890.

 6        Q.   And what do do you as a section manager

 7   of the bankruptcy group at Wilmington Trust?

 8        A.   Basically, handle certain types of

 9   accounts has it have gone into default, or Chapter

10   11, serve on committees, and I also manage a group

11   of five people.  Six including myself.
```

Page 7

062806.txt

12       Q.   Do you -- do you handle the account

13   related to the Delphi estates?

14       A.   Yes.

15       Q.   When did you begin handling the account

16   related to the Delphi estates?

17       A.   We became successor trustee for Chase

18   around the time of the filing.  And then we were

19   appointed it the committee, I believe it was fine

20   days after filing.

21       Q.   Have you been involved in the management

22   of the Delphi account, since Wilmington Trust was

23   appointed successor trustee?

24       A.   Yes.

25       Q.   What have you done to prepare for this

                                                    10

1            Cimalore - rough draft

2   deposition today?

3       A.   Met with my counsel.

4       Q.   Anything else?

5       A.   Reviewed all the -- the draft -- the

6   objection.

7       Q.   Anything else?

8       A.   And basically reviewed your request.

9   That was it.

10       Q.   Did you have any conversations with

11   anyone else at Wilmington Trust?

12       A.   Just my direct report that I was doing a

13   deposition.

14       Q.   Okay.  So you didn't discuss the

15   substance of Wilmington's management of the Delphi

16   account?

17       A.   No.

                        Page 8

062806.txt

18      Q.    Just to be clear, other than with your

19   counsel, have you had discussions with anyone in

20   preparation for this deposition?

21      A.    No.

22      Q.    Other than the objections, have you

23   reviewed any documents, in preparation for your

24   deposition?

25      A.    No.

                                                                11

 1              Cimalore - rough draft

 2      Q.    Are you familiar with the -- the

 3   indentures, under which Wilmington Trust serves as

 4   the indenture trustee with respect to certain

 5   Delphi debt?

 6            MR. FOX:  Let me just clarify, there's

 7        only a single indenture.

 8      Q.    Are you familiar with the indenture

 9   under which Wilmington Trust serve as indenture

10   trustee with respect to certain Delphi debt?

11      A.    Somewhat.  I mean, I am, but I may

12   not -- verbatim right here, yes.

13      Q.    Is that the indenture that was put in

14   place when Wilmington Trust became the successor

15   trustee?

16      A.    Yes.

17            MR. FOX:  Depending, let me clarify, it

18        was not put in place -- the indenture was in

19        place, when the bonds were issued, which I

20        think was 1999.  That continues to be the

21        same indenture.  Wilmington became the

22        successor trustee, even August or

                         Page 9

062806.txt

23        September 2005, to J.P. Morgan Chase when

24        they resigned. (tape)

25        Q.   Correct.  Just to get back to your

                                                        12

1                    Cimalore - rough draft

2    initial, when I asked you if you were familiar

3    with the -- I'll ask this question, are you

4    familiar with the initial indentures relative to

5    the $2 billion in senior debt that are subject not

6    motion?

7              MR. FOX:  Objection.  Again, to clarify.

8         There's a single indenture.  And it's the

9         only indenture.  There's -- not an initial

10        indenture, and subsequent.  There's only a

11        single, original indenture.

12        Q.   Is it your understanding that there's

13   only a single, original indenture?

14        A.   Yes, absolutely.

15        Q.   And then is there a supplement of any

16   sort that you're aware of?

17        A.   No.

18        Q.   So is there any document to which

19   Wilmington Trust is a party, reflecting your --

20   your status as the indenture trustee?

21        A.   That would be a try party agreement.

22        Q.   Between who?

23        A.   Between Delphi, previous trustee, and

24   ourselves.

25        Q.   And are you familiar with that document?

                                                        13

1                    Cimalore - rough draft

2         A.   Yes.

                         Page 10

062806.txt

3        Q.    And when was that executed, roughly?

4        A.    I believe it was roughly -- some --

5   shortly before the filing of the case.  I don't

6   have the exact date, but I -- sure it wasn't too

7   much earlier than when they filed.

8        Q.    What are your responsibilities, you

9   personally, your responsibilities, with respect to

10  managing the Delphi account?  & is it fair if we

11  refer to it as the Delphi account?

12       A.    Yes.

13       Q.    Is that the way you refer to the

14  Wilmington Trust?

15       A.    Yes.

16       Q.    What are your responsibilities with

17  respect to managing the Delphi account?

18           MR. FOX:  I'm just going to interject.

19           I'm going to let the witness answer this

20           question, because I give you a little

21           background, but we've haded discussion about

22           not getting into, you know, certain issues

23           related to Wilmington Trust's role as

24           indenture trustee, so I want to make sure

25           we're not going too far afield.

                                                    14

1               Cimalore - rough draft

2           MR. HOGAN:  Understood.

3        A.    At the present time, we -- we were

4   appointed the -- a member of the creditors

5   committee, so it's pretty much our role.

6        Q.    What do you personally do with respect

7   to managing the Delphi account??

062806.txt

8      A.   I monitor the account.  I attend all

9  the -- as many committee meetings as I can.  I do

10  all the general administration that I'm required

11  to do.

12      Q.   Okay.  When you say that you -- when you

13  say that you monitor the account, can you give me

14  a sense of the kinds of things that you do?

15      A.   Well, as mentioned, I attend creditor

16  committee meetings, participate on creditor calls.

17           You know, take phone calls.  That come

18  in.  You know.

19      Q.   When you say you take phone calls in a

20  come in?

21      A.   If there's an inquiry from the outside

22  somewhere, related to the account, I'll takes it.

23      Q.   Has Wilmington had discussions with

24  holders of Delphi debt, in connection with your

25  management of the Delphi account?

                                                  15

1           Cimalore - rough draft

2      MR. FOX:  I'm going to stop there.

3      That's beyond the scope of the deposition --

4      of the discovery as limited by the court.

5      MR. HOGAN:  I don't think so.  I'm

6      trying to get at -- I'm trying to go to at

7      how information -- how Wilmington has

8      collected the information to support the

9      factual basis for the motion.

10      Q.   So maybe if you could answer my question

11  yes or no to begin with.

12      MR. FOX:  But -- that -- that question

13      is beyond the scope.  And it's not limited

062806.txt

14      to -- to the factual allegation supportinged

15      objection.

16          MR. HOGAN:  It's a 30(b)(6) deposition.

17      I'm trying to get at the source of this

18      knowledge.  I think it's a very fair

19      question.  So --

20          MR. FOX:  Well, if you want to ask him

21      about specific facts and what the source of

22      his knowledge is, go ahead.

23          MR. HOGAN:  We'll get there, but I

24      wanted to ask him in the first instance, he

25      medical in the course of monitoring the

                                                        16

1           Cimalore - rough draft

2       Delphi account, one of the things he did was

3       take phone calls that come in.

4       Q.    And my question is, take phone calls

5   from who.

6       A.    Could be internally.  I haven't received

7   very many.  I may be someone -- an operational

8   question that someone may have, someone may call

9   on proof of claim, if the trustee is filing it,

10  you know, do we have an obligation to file it.

11  Those kinds of inquiries.

12      Q.    Okay.  Are you familiar with the

13  objection that Wilmington Trust filed to Delphi's

14  motion for order approving implementation of a

15  subject to attrition plan with the UAW, and a

16  special attrition plan with the IUE-CWA.

17      A.    Yes.

18      Q.    Who authorized the filing of that

062806.txt
19    objection?

20         MR. FOX:  I'm going to object, it's

21         outside the scope of the inquiry.

22  DIR  Q.    You can answer.

23         MR. FOX:  No.  I'm going to direct him

24         not to answer.

25         MR. HOGAN:  This is going to be a real

                                                    17

1              Cimalore - rough draft

2         short dep, because --

3         MR. FOX:  The court was specific that

4         discussion should be limited to factual basis

5         for Octobers to the motion.  (tape).  Asking

6         who authorized Wilmington Trust to file it

7         has nothing to do with the -- the narrow

8         window set by the court.

9         MR. HOGAN:  Well, the window set by the

10        court was what it was.

11        MR. FOX:  And that's what we're going to

12        stick to today.

13        MR. HOGAN:  And if you want to instruct

14        him not to answer, these some basic questions

15        about Wilmington Trust's knowledge, and

16        administration of this account, and now I'm

17        talking specifically about this objection.

18        Who authorized the filing of that objection,

19        is a question that I'm going to ask, and they

20        be the next question is going to be, was that

21        a group of people, was it a single person,

22        how did you go about doing that?  That always

23        goes to the basis for filing the objection.

24        Q.    So my question was, who authorized the
                              Page 14

062806.txt

25    filing of that objection?

                                                              18

 1                    Cimalore - rough draft
 2              MR. FOX:  You can answer that question.
 3         A.   Wilmington Trust company, based on the
 4    advice of counsel.
 5         Q.   Okay.  Now, I don't want to talk about
 6    the advice that you received from your counsel.
 7    But who at Wilmington Trust company -- what
 8    people, authorized the filing?
 9         A.   Myself.
10         Q.   Anybody else?
11         A.   I was -- it was mentioned to my boss,
12    also, I always escalate that.  So he was aware
13    also.
14    DIR  Q.   Did you have to seek approval or
15    authorization from anyone else before authorizing
16    the filing of the motion?
17              MR. FOX:  I'm going to object.  I'm
18         going to instruct the witness not to answer.
19              MR. HOGAN:  Not on privilege grounds, I
20         assume.
21              MR. FOX:  On the court's limitation on
22         the subject matter of this deposition.
23         Q.   Well, in terms of getting to the point
24    where you were comfortable authorizing the filing
25    of this motion, did you have discussions with

                                                              19

 1                    Cimalore - rough draft
 2    anyone other than your lawyers, to understand the
 3    point of the motion and the objection?
                        Page 15

062806.txt
4          MR. FOX:  You can answer.

5      A.    No.

6      Q.    Did anyone other than yourself review

7  Wilmington Trust's objection, prior to the time

8  that it was filed?

9      A.    No.

10     Q.    Did you review Wilmington Trust's

11 objection prior to the time that it was filed?

12     A.    Yes.

13     Q.    Okay.  In terms of authorizing the

14 filing of the motion -- I'm sorry, of the

15 objection, did anyone, including your counsel,

16 provide you with factual information to support

17 that decision?

18         MR. FOX:  I'm going to object.  And

19     simply instruct the witness to answer yes or

20     no so that we don't get into privileged

21     communications.

22     A.    Could you repeat it?

23     Q.    Sure.  In terms of authorizing the

24 filing of the motion -- strike that?

25         MR. FOX:  You know what?  Al, when you

                                              20

1              Cimalore - rough draft

2     ask it again, ask it separately, for counsel

3     and anybody else.

4         MR. HOGAN:  That's fine.  Then we'll

5     avoid the objection.

6     Q.    In terms of authorizinged filing of the

7  objection, did anyone other than your lawyers

8  provide you with factual information to support

9  that decision?

062806.txt

```
10        A.   No.

11        Q.   In terms of -- and this is a yes-or-no

12   question -- in terms of authorizinged filing of

13   the objection, did your counsel provide you with

14   factual information to support that decision?

15        A.   Yes.

16        Q.   Okay.  Now, I would like to know what

17   facts were provided to you by your counsel, in

18   terms of your decision to authorize the filing of

19   the objection.

20             Just the facts.

21             MR. FOX:  Okay, now, let me interject

22        there.  If you can differentiate between

23        facts and legal advice, then -- and limit

24        your answer to providing specific facts, you

25        can answer the question.  If you can't do
```

```
                                                    21

1             Cimalore - rough draft

2        that, then you should not answer the

3        question, because you'll be revealing

4        privileged information.

5        Q.   Do you have the question in mind?

6        A.   No.

7        Q.   With that admonition, let me read the

8   question back.  What facts were provided to you by

9   your counsel, in terms of your decision to

10   authorize the filing of the objection?

11        A.   I don't believe I'm able to distinguish

12   between the two.

13             (Discussion off the record.)

14             MR. HOGAN:  Sorry about that.  Let's
```

062806.txt
```
15        mark this as Exhibit 1.

16            (description                was marked

17        Cimalore Exhibit 1 for identification, as of

18        this date.)

19        Q.   Mr. Cimalore, we're showing you what's

20   been marked as Exhibit 1 to your deposition.

21   Is -- is this the objection of Wilmington Trust

22   that you have seen prior to today?

23        A.   I'm sorry, was that a question?

24        Q.   Yes.

25            Have you seen this objection prior to
```
                                                    22
```
 1                Cimalore - rough draft

 2   today?

 3        A.   Yes.

 4        Q.   Is this the objection that you reviewed

 5   prior to the time it was filed?

 6        A.   Yes.

 7        Q.   If you could take a look at paragraph 5

 8   of this objection, on page 2.

 9            Maybe read that whole paragraph, and let

10   me know when you're through with it.

11            (The witness reads the document.)

12        A.   Okay.

13        Q.   Take aking a look at the first clause of

14   paragraph 5, which reads, consequently, since

15   Delphi Corporation does not actually employ any of

16   the debtors unionized employees, and will not

17   realize any direct benefit from a reduction in the

18   level of the debtor's unionized work force.  You

19   see that clause?

20        A.   Yes.
```
                     Page 18

062806.txt

21        Q.    What's Wilmington's factual basis for

22    that assertion, in that clause?  You can break it

23    up, because it's a clause that actually is --

24    contains two parts to it.

25              MR. FOX:  Why don't you answer one

                                                          23

1                   Cimalore - rough draft

2        clause at a time.

3        Q.    Sure.  Let me ask a different question.

4    What is the -- what is Wilmington's basis for the

5    assertion that Delphi Corporation does not

6    actually employ any of the debtor's unionized

7    employees?

8        A.    Based on the advice of counsel.

9        Q.    Any other facts that you're relying on

10   in terms of making that assertion?

11       A.    No.

12       Q.    Has Wilmington done anything to

13   investigate whether or not Delphi Corporation

14   actually employs any of its unionized employees?

15             MR. FOX:  Let me object.  When you say

16         has Wilmington, are you talking about -- the

17         bank itself, or are you talking through

18         counsel?

19       Q.    About the bank itself.  The bank itself.

20             MR. FOX:  Independent of its counsel.

21             MR. HOGAN:  Yes.

22       A.    Not independent of counsel, no.

23       Q.    Did you have -- did you instruct counsel

24   to investigate whether or not Delphi Corporation

25   actually employs any of its unionized employees?

062806.txt

24

```
 1              Cimalore - rough draft
 2       A.   Yes.
 3       Q.   When did you do that?
 4       A.   In conversation.  I don't know a
 5  specific time, in conversations brought up.
 6       Q.   As you understand it, what's the --
 7  what's the -- what's the point of the objection,
 8  in your own words?
 9            MR. FOX:  I'm going to object, but -- I
10       think the objection speaks for itself.
11            You can answer if you can.
12       A.   I agree it speaks for itself.  I don't
13  know, picking out any one part would give it
14  justice.  You know, I don't.
15       Q.   Well, would you agree with me that
16  Wilmington's margin theme in this objection is
17  that Delphi Corporation should not bear the cost
18  of labor transformation in this reorganization?
19            MR. FOX:  I'm going to object to the
20       question, because I think again we're getting
21       outside the scope as limited by the court,
22       which is the factual allegations supporting
23       the basis for the objection.  So I'll let him
24       answer this, if he can, but -- let's --
25            MR. HOGAN:  I'm going somewhere with
```

25

```
 1              Cimalore - rough draft
 2  this.
 3            MR. FOX:  Let's get back to facts.
 4       A.   Would you repeat.
 5       Q.   Would you agree that women's many theme
```

Page 20

062806.txt

6    is that Wilmington corporation, that entity should

7    not bear the cost of labor transformation in this

8    reorganization?

9        A.    I'm not sure that it's that cut and dry.

10   I don't -- I think it's clear that they shouldn't

11   bed only one to take the brunt of it.

12       Q.    And why does Wilmington care whether or

13   not Delphi Corporation is the only entity that

14   takes the brunt of the cost of labor

15   transformation?

16           MR. FOX:  You can answer.

17       A.    Because our -- our debt and claims are

18   at the parent level.

19       Q.    How do you know that?

20           What's your basis for saying that?

21       A.    I would say the indenture.

22       Q.    And what about the indenture makes you

23   believe that the debt and claims are at the parent

24   level?

25       A.    It only references Delphi corp. as --

                                                    26

1                 Cimalore - rough draft

2           MR. FOX:  Al, if you're offering to have

3           some of the other entities be on the hook for

4           the bonding we'd be happy to discuss that.

5           MR. HOGAN:  I'm just asking his

6           understanding, that's all.

7       Q.    So your answer is, is owning references

8    Delphi corp.?

9        A.    In the indenture, I don't have it in

10   front of me, but Delphi Corporation is the debtor

                       Page 21

062806.txt

11    on the indenture entity.

12        Q.    I should have asked this earlier, but

13    real fast, can you just tell me what your

14    educational background is?

15        A.    I have a business degree in business

16    administration, I mean a BS in business

17    administration, and I have a JD.

18        Q.    When did you get your JD?

19        A.    Getting old.  1980.

20        Q.    You -- you yourself have read the

21    indenture that's the subject of the Delphi

22    account, before?

23        A.    Yes.

24        Q.    So it's important to you that Delphi

25    Corporation is the entity that is the counterparty

                                                    27

1               Cimalore - rough draft

2    to that indenture?  Is that correct?

3        A.    Yes.

4               MR. FOX:  Objection.

5        Q.    And is that because the indenture is the

6    written document, or contract, as you understand

7    it, that establishes the rights and obligations

8    among the parties?

9        A.    Correct.

10        Q.    In terms of the factual assertion that

11    Delphi Corporation does not actually employ any of

12    the debtor's unionized employee, take a look back

13    at paragraph 5 -- are you with me?

14        A.    Uh-huh.

15        Q.    Have you -- has Wilmington reviewed any

16    other documents to substantiate that assertion, or

062806.txt

17    test that assertion?

18        A.    No.

19            MR. FOX:   I just wanted to clarify,

20        you're talking about individuals of the trust

21        company, not counsel.

22        Q.    Correct.

23        A.    No.

24        Q.    Do you know whether or not your counsel

25    has reviewed any other documents to substantiate

                                                          28

1            Cimalore - rough draft

2    that assertion?

3            Do you know one way or the other?

4        A.    Yes.

5        Q.    And what's the answer to that question?

6    They have?

7        A.    Oh, yes, they have.

8        Q.    And what documents -- what documents are

9    you aware of that your counsel has reviewed to

10    substantiate the assertion that Delphi Corporation

11    does not actually employ any of the debtor's

12    unionized employees?

13            MR. FOX:   I'm just going to object, and

14        point out that you produced documents to us

15        that have been labeled highly confidential,

16        that we're not able to even share with our

17        client.  So -- and those relate directly to

18        the subject matter of this motion objection,

19        so I presume you're not asking the witness

20        about those things.

21            MR. HOGAN:   I'm just asking him what

062806.txt

22          documents he's aware of that -- that -- the

23          point of my question is what documents he's

24          aware of that Wilmington or its agent,

25          including its counsel, has reviewed.

                                                            29

 1                  Cimalore - rough draft

 2          Q.    And so if you can tell me, what those

 3      documents are --

 4                  MR. FOX:  You mean other than the highly

 5          confidential documents?

 6                  MR. HOGAN:  I'm assuming he hasn't seen

 7          them, if he knows that is you've reviewed

 8          them, he can tell me about that.

 9                  MR. FOX:  You're asking him to identify

10          them?

11                  MR. HOGAN:  Yes.

12                  MR. FOX:  I don't know how he can do

13          that.

14                  MR. HOGAN:  Coming back up a few

15          questions, I asked if you knew that counsel

16          is reviewing documents.  The answer is yes.

17          So my question is, do you know which

18          documents the counsel has reviewed to support

19          the assertion that Delphi Corporation did not

20          support any of the unionized debtor

21          employees.

22                  MR. FOX:  He said he doesn't know.

23                  MR. HOGAN:  He said he did know.

24                  MR. FOX:  He said he will looked at

25          documents, now you're asking him what were

                                                            30

 1                  Cimalore - rough draft
                        Page 24

062806.txt

2        they, and now I'm asking you, because of your

3        stamping the documents highly confidential,

4        he can't know the answer (tape).

5        Q.   To clear up my question, what I'm asking

6   for is do you know one way or the other what those

7   documents were, that counsel reviewed, to support

8   the assertion that Delphi Corporation does not

9   actually employ any of the debtor's unionized

10  employees.  Do you know any or all of what that

11  was your counsel looked at?

12       A.   No.

13            (description                was marked

14       Cimalore Exhibit 2 for identification, as of

15       this date.)

16       Q.   Showing you what's been marked as

17  Exhibit 2 to your deposition.  Can you tell me if

18  you've seen this before?

19       A.   Yes.

20       Q.   When did you -- when did you first see

21  Exhibit 2?

22       A.   I -- I don't know the exact date.

23       Q.   After you -- after you reviewed

24  Exhibit 2, did you discuss, which is the debtor's

25  motion for order under 11 USC 363 B, concerning

                                                    31

1                 Cimalore - rough draft

2   the UAW supplement and the IEW special attrition

3   program.  After you received this, did you have

4   any discussions with anyone at Wilmington about

5   the motion?

6        A.   No.

062806.txt

 7        Q.   Did you have anyone -- any discussions

 8    with anyone outside of Wilmington, about the

 9    motion?

10            MR. FOX:   I'll just --

11        Q.   With anyone.

12            MR. FOX:   The witness can answer the

13        question, but just limit your answer to yes

14        or no.

15        A.   Oh, yes.

16        Q.   Other than your counsel, did you have

17    discussions with anyone outside of Wilmington

18    Trust Company, about the motion?

19        A.   No.

20            MR. FOX:   We're excluding from that any

21        committee discussions concerning the motion.

22            MR. HOGAN:   I don't know if I so limited

23        it.

24        Q.   Have you had discussions with anyone on

25    the committee concerning the motion?

                                                    32

 1            Cimalore - rough draft

 2            MR. FOX:   Well, the -- committee counsel

 3        has been the leading -- leading any

 4        discussions that have occurred.  So they're

 5        going to be privileged.

 6        Q.   Let me ask it this way, other than

 7    discussions with lawyers, have you had discussions

 8    with anyone about the motion?

 9        A.   No.

10        Q.   Does -- does Wilmington Trust company

11    agree with the factual assertion that Delphi

12    Corporation those restructure its labor costs, in

                     Page 26

062806.txt

13    order to engate in a successful reorganization?

14        A.    Yes.

15        Q.    Does Wilmington Trust company agree with

16    the factual assertion that Delphi Corporation has

17    to restructure its manufacturing footprint in the

18    United States to engage in a successful

19    reorganization?

20            MR. FOX:   Excuse me, do you mean just

21        the parent company Delphi Corporation, or do

22        you mean the consolidated entity?

23        Q.    I mean the consolidated entity.

24            MR. FOX:   You can answer.

25        A.    Yes.

                                                          33

1              Cimalore - rough draft

2        Q.    Does Wilmington Trust company agree with

3    the factual assertion that to successfully

4    restructure, the debtors will be better served by

5    reaching a consentual resolution of its labor cost

6    issues with its major unions?

7        A.    Yes.

8        Q.    Other than the -- other than the

9    objection to the allocation of the costs of the

10    program, outlined in the motion, does Wilmington

11    Trust object to any other assertion in terms of

12    the advisability of the attrition programs that

13    are subject to the motion?

14            MR. FOX:   I'm going to object there,

15        because again we're getting outside the scope

16        of the deposition, as limited by the court,

17        which is limited to factual allegations

062806.txt

18      supporting Wilmington Trust's basis for

19      objecting to the motion.  So you know, if we

20      objected, fine, ask about that.  If there's

21      some other issue, I think you get beyond the

22      scope at that point.

23          MR. HOGAN:  Okay.  That's my last

24      question on that line, really, so if you

25      could answer that one.

                                                    34

1           Cimalore - rough draft

2           MR. FOX:  What's the question.

3       Q.   Other than the allegation of altercation

4   of cost of of the attrition program outline in the

5   motion does Wilmington Trust to be the any other

6   assertions in terms of the advisability of the

7   attrition programs that are subject to the motion?

8           MR. FOX:  Well, the objection speaks for

9       itself, too.

10      Q.   Do you know if?

11      A.   As he said, it's spelled in the

12  objection.

13  DIR  Q.   What's your understanding?  What's

14  Wilmington's understanding?

15          MR. FOX:  I think we're getting far

16      afield.

17          We're just beyond the scope, so let's

18      just move on.

19          MR. HOGAN:  Is that an instruction not

20      to answer?

21          MR. FOX:  Yes.

22          MR. HOGAN:  Take a three-minute break,

23      if we could.

062806.txt

24          (A recess was taken.)

25          MR. HOGAN:  Can we mark this next?

                                                    35

1               Cimalore - rough draft

2          (description              was marked

3     Cimalore Exhibit ExNo          for

4     identification, as of this date.)

5     Q.    Showing you what's been marked as

6     Exhibit 3 to your deposition.  Do you know what

7     that is?

8               Take your time.  Look at it.

9               (The witness reads.)

10    Q.    Are you able to tell what that is?

11              While you're radioing, let me ask a

12    different question.  Would you be able to quickly

13    recognize the operative indenture with respect to

14    the Delphi account?

15    A.    No.

16    Q.    You would not be able to quickly

17    recognize it.

18    A.    Uh-uh.

19    Q.    Is this it?

20    A.    It's hard to tell.  I can't tell from --

21    Q.    Might be, might not be.

22    A.    Right.

23    Q.    I just want to look at a couple section.

24    Could you go to section 6.06, page 27 of the

25    document.

                                                    36

1               Cimalore - rough draft

2     A.    6.07?

                          Page 29

062806.txt

3      Q.   6.06.  It's entitled direction

4  proceedings.  On page 27 of the document.

5      A.   Okay.

6      Q.   If you could read that first paragraph,

7  let me know when you're through.

8      A.   Okay.

9      Q.   In the actuality operative indenture, is

10  there a similar provision, whether or not this is

11  1, is there a similar provision?

12           MR. FOX:  I'm going to object.  This is

13           beyonded scope of --

14           MR. HOGAN:  It's not.  It's not.

15           MR. FOX:  How is it not.

16           MR. HOGAN:  It's a little bit of

17           foundation to get to the question I want to

18           ask, but -- I just want to know is the

19           indenture that you're operating under in the

20           Delphi account have -- assuming this is not

21           it -- strike that.

22

23      Q.   Does the Delphi indenture that you're

24  familiar with have a provision regarding direction

25  of proceedings?

                                                        37

1                Cimalore - rough draft

2      A.   Without it in front of me, I don't know

3  it's exact language that it says.

4      Q.   In general, does the indenture have

5  provision regarding direction of proceedings?

6      A.

7      A.   I don't know if they're labeled it's a

8  direction of proceedings, it may be included

                      Page 30

062806.txt

 9   somewhere in another section.  I don't know if it

10   specifically has that section.  I don't know what

11   the subtitle, what's it's listed under.

12           You know what I'm saying?  It could be

13   under a different section.

14      Q.   With respect to the objection that

15   Wilmington Trust filed, did it do so at the

16   direction of any of the holders of Delphi

17   securities?

18           MR. FOX:  I'm going to object.  That's

19           just completely beyond the scope of the

20           deposition.  It's clearly beyond the scope as

21           limited by the court.  We're just not going

22           to get into that.

23           MR. HOGAN:  I -- I disagree strongly.

24           MR. FOX:  Well.

25           MR. HOGAN:  Because there are some

                                                             38

 1              Cimalore - rough draft

 2           assertions in here about who employee, and

 3           who's getting concrete benefits from in

 4           attrition plan.  That's what I'm getting at.

 5           MR. FOX:  Why don't you ask about those

 6           things, then, as opposed to --

 7           MR. HOGAN:  This is the direct way to do

 8           it.

 9      Q.   Did you have any discussions with any

10   security holders about filing this objection?

11   That's my objection.  And that will obviate?

12           MR. FOX:  You already asked that, and

13           you got an answer.  And --

                      Page 31

062806.txt
```
14              MR. HOGAN:  So asked and answered is
15       fine.  If that's your objection.
16              I'm referring to this --
17              MR. FOX:  Well, but you're heading in a
18       different path.  You're heading --
19              The question you have on the table is
20       beyond the scope, which is limited to factual
21       allegations supporting Wilmington Trust's
22       basis for objecting to the motion.  The
23       question is beyond that, we're knot going to
24       go there.
25              MR. HOGAN:  I don't think to stay within
                                                         39
 1              Cimalore - rough draft
 2       what the court instructed us, I don't think I
 3       have to couch every question in terms of
 4       pointing to a factual allegation.  This is
 5       very much about the foundation for the
 6       assertions in the motion.  That's what I'm
 7       getting at.
 8              MR. FOX:  Then you should limit your
 9       questions to the assertions in the motion.
10              MR. HOGAN:  I did.  With respect to the
11       filing of the motion, and any of the
12       assertions that you made in the motion, was
13       Wilmington Trust directed in any respect by
14       the holders of Delphi securities?
15              MR. FOX:  I suggest, Al, if you want an
16       answer, the way you should ask -- a different
17       way.  Which is whether any of the assertions
18       set forth in the motion were -- are factual
19       information set forth in the motion was
```
Page 32

062806.txt

20        communicated to Wilmington, by anybody, quite

21        frankly.

22        Q.

23              MR. HOGAN:  I appreciate that

24        suggestion.  But I think my question is the

25        one indicated to ask, and that is -- so I'll

                                                              40

 1              Cimalore - rough draft

 2        ask it again.

 3    DIR  Q.  With respect to the filing of the

 4    motion, and any of the assertions that you made in

 5    the motion, that Wilmington made in the motion,

 6    was Wilmington Trust directed in any respect by

 7    the holdsers of Delphi securities?

 8              MR. FOX:  I'm going to object, and

 9        instruct the witness not to answer that

10        question.

11        Q.  Did you have any communications with any

12    holders of Delphi securities, in connection with

13    the filing of this objection?

14              MR. FOX:  I'm going to object.  You can

15        answer it.

16        A.  No.

17        Q.  If you would take a look at Exhibit 3,

18    and that is the indenture.  It's a indenture.  If

19    you could take a look at section 7.01 on page 28,

20    and read just that first paragraph, at 7.01.  And

21    let me know when you're through with that.

22        A.  The second paragraph?

23        Q.  The first paragraph, I'm sorry.

24        A.  Okay.

                        Page 33

062806.txt
```
25            (The witness reads.)
```

                                                        41

```
 1              Cimalore - rough draft

 2      A.   Okay.

 3      Q.   Taking a look at the last clause of that

 4   paragraph, there's a reference to the same degree

 5   of care and skill as a prudent man would exercise

 6   under the circumstances.  Do you see that.

 7      A.   Yes.

 8   DIR  Q.   Was that your understanding of

 9   Wilmington Trust's obligations when it authorized

10   the filing of the objection?

11              MR. FOX:  I'm going to instruct the

12         witness not answer.  It's well beyond the

13         scope of the discovery as limited by the

14         court.

15   DIR  Q.   Did you -- did you have a standard of

16   care in mind when you authorized the filing of the

17   motion?

18              MR. FOX:  I'm going to object and

19         instruct the witness not answer.  It's way

20         beyond the scope of the discovery as limited

21         by the court.

22   DIR  Q.   Did you have a standard of care in mind,

23   when you reviewed the proposed objection,

24   including the assertions in the objection, and

25   then offer up the filing of the objection?
```

                                                        42

```
 1              Cimalore - rough draft

 2              MR. FOX:  I'm going to object and

 3         instruct the witness not answer the question,

 4         as well beyond the scope of the discovery as
```
                        Page 34

062806.txt

5      limited by the court.

6          You're asking him for his standard in

7      conducting himself rather than a factual

8      allegations supporting the objection.

9      There's a very real distinction.  It is none

10     of the debtor's business as to how Wilmington

11     conducts itself internally in deciding

12     whether or how to object, and the court

13     agreed with us on that pointed.  We're not

14     going there.

15         MR. HOGAN:  Well, I disagree with your

16     characterization of what the debtors are

17     entitled to understand.  I'm trying to get at

18     the question -- the question is, what was

19     your mind set, in terms of evaluating the

20     factual assertions contained in the

21     objection.

22         MR. FOX:  I'm going to object.  In the

23     context of the past few questions, it seems

24     to me that that question is just another

25     attempt to go beyond the scope of the

                                                    43

1          Cimalore - rough draft

2      discovery as limited by the court.  And the

3      witness is not going to answer those

4      questions.

5      Q.   And to be clear, and this is for the

6  record, the instructions not to answer, we several

7  reserve our right to go back to the court and seek

8  a further deposition.  So that's --

9          MR. FOX:  Be my guest.

Page 35

062806.txt
```
10              MR. HOGAN:  It's not a threat.

11              MR. FOX:  You can if you want.

12              MR. HOGAN:  It's a preservation of the

13         record.  That's the implication of

14         instructing not no answer, because there's no

15         privilege basis for doing so.

16              MR. FOX:  Well, I'm not sure about that,

17         either, but the question at the outset is

18         beyond the scope.  As limited by the court.

19              MR. HOGAN:  You're instructing him not

20         answer is beyond a privilege objection, I

21         assume.

22              MR. FOX:  Well, I think there's

23         privilege objection there, too, but you're

24         just beyond the scope.  We don't need to talk

25         about privilege.
```

                                                        44
```
 1              Cimalore - rough draft

 2         Q.   Do you have -- do you have the objection

 3    back in front of you?

 4              MR. FOX:  It's Exhibit 1?

 5         Q.   It's Exhibit 1.

 6              And could you take a look at the second

 7    paragraph of the objection, on page 2.

 8              Okay?

 9         A.   Okay.

10         Q.   The last clause of that paragraph, can

11    you look at the language, it says the debtors have

12    not demonstrated that Delphi Corporation and its

13    creditors will receive any concrete benefits,

14    benefit from that restructuring.  Do you see that?

15         A.   Yes.
```

062806.txt

16      Q.   What's the -- does Wilmington Trust

17  believe that Delphi will not receive any concrete

18  benefit congratulate restructuring of its labor

19  cost?

20          MR. FOX:  You're referring to Delphi

21      Corporation?

22          MR. HOGAN:  Yeah.

23      A.   Repeat that, please?

24      Q.   Yes.  Does Wilmington Trust believe that

25  Delphi Corporation will not receive any concrete

                                                        45

1              Cimalore - rough draft

2  benefits from restructuring its labor costs?

3      A.   We think that -- I'm sorry, say that one

4  more time.

5      Q.   Sure.  Does Wilmington Trust believe

6  that Delphi Corporation will not receive any

7  concrete benefit from restructuring its labor

8  costs?

9      A.   At this point, none that's been

10  demonstrated to us.

11      Q.   And has Wilmington Trust discussed with

12  anyone other than counsel the subject of whether

13  or not Delphi Corporation will receive any

14  concrete benefit from restructuring labor cost?

15      A.   Other than -- I'm sorry, other than.

16      Q.   Other than --

17      A.   Our counsel, or committee counsel?

18      Q.   Yes.

19      A.   No.

20      Q.   Has Wilmington Trust tried to analyze

Page 37

062806.txt

21    whether or not Delphi Corporation will receive any

22    concrete benefit from restructuring of its labor

23    costs?

24          Other than discussions with counsel.

25    A.    None other than committee --

                                                        46

1              Cimalore - rough draft

2    participation or counsel, right.

3    Q.    This -- this objection, Wilmington Trust

4    is asserting this in its capacity as indenture

5    trustee; is that right?

6    A.    Correct.

7    Q.    Ultimately, on whose behalf -- or --

8    ultimately, whose interests is Wilmington Trust

9    representing, purporting to represent by filing

10   this objection?

11          MR. FOX:  I'll object.  The witness can

12        answer, I suppose.

13   Q.    Whose interests, group of people?

14   A.    That would be the bondholders who own

15   the debt under the indenture.

16   Q.    Does Wilmington Trust believe that the

17   bond holdsers who own the debt under the indenture

18   will not be better off if Delphi reorganizes its

19   labor structure?

20          MR. FOX:  I -- could you repeat that

21        question?

22          MR. HOGAN:  Yeah.  I'll put it in terms

23        of --

24   Q.    Does Wilmington believe that there's any

25   concrete benefit to the holders of the debt under

                                                        47

Page 38

062806.txt

1                Cimalore - rough draft
2    the indenture, in the event that Delphi is
3    successful at restructuring its labor costs?
4            MR. FOX:  Just read that back.  I'm
5        having trouble.
6        Q.   Does Wilmington believe that there's any
7    concrete benefit to the holder, the holders of the
8    debt, under the indenture, in the event that
9    Delphi is successful at restructuring its labor
10   costs?
11           MR. FOX:  Which Delphi?
12           MR. HOGAN:  Delphi corp.
13           MR. FOX:  I don't think there's a
14       foundation to your question.
15       Q.   Do you understand my question?
16       A.   I do not.
17       Q.   Does Wilmington believe that Delphi has
18   no labor cost?  Delphi Corporation has no labor
19   costs?
20           MR. FOX:  You can answer.
21       A.   I don't believe direct labor costs.
22       Q.   You're aware of the factual assertion, I
23   guess the factual agreement, in the objection,
24   that Delphi Corporation is the counterparty to
25   collective bargaining agreements with several

                                                    48

1                Cimalore - rough draft
2    major union, correct?
3        A.   Correct.
4        Q.   Are you aware that Delphi Corporation is
5    the plan sponsor with respect to its pension

062806.txt

6    plans, with its hourly work force?

7            Do you know one way or the other?

8        A.    I'm not sure.

9        Q.    Do you know whether or not Delphi

10   Corporation is the signatory to collectively

11   bargained hourly pension plans?

12           MR. FOX:  You can answer if you know.

13       A.    I'm -- I do not know.

14       Q.    Does -- is Wilmington aware whether or

15   not Delphi Corporation is the signatory to

16   collectively bargained personal savings plans?

17       A.    I have not seen those documents.

18       Q.    Is democrat -- is Wilmington aware one

19   way or the other whether or not Delphi Corporation

20   is a signatory to collectively bargained life

21   insurance plans?

22       A.    I do not.

23       Q.    Is Wilmington aware whether or not

24   Delphi Corporation is the signatory entity to

25   collectively bargained healthcare plans with its

                                                    49

1            Cimalore - rough draft

2    unions?

3        A.    I do not.

4        Q.    Do you know whether or not Delphi

5    Corporation maintains any control over the

6    utilization of its union work force?

7            MR. FOX:  I'm just going to object, and

8            instruct the witness, if he knows, to limit

9            his answer so as not to reveal the

10           conversation with counsel.

11       A.    I do not.

062806.txt

12      Q.   Do you know whether or not Delphi

13   Corporation maintains control of its U.S.

14   manufacturing operating subsidiaries?

15      A.   I do not.

16      Q.   Do you know whether or not the function

17   of labor relations and human resources is

18   controlled by Delphi Corporation, as it pertains

19   to the worldwide hourly work force?

20         MR. FOX:  You have to answer audibly.

21      A.   I do not.

22      Q.   In a slightly different question.  Do

23   you know whether or not the function of labor

24   relations and human resource is controlled by

25   Delphi Corporation as it pertains to the U.S.

                                                    50

 1            Cimalore - rough draft

 2   hourly work force?

 3      A.   I do not.

 4   DIR  Q.  Do you know, the holders of the Delphi

 5   Corporation bonds that you said that ultimately

 6   that's the interest that you represent, have you

 7   done anything to investigate whether or not those

 8   bondholders believe that Delphi Corporation will

 9   benefit from a restructuring of its labor costs?

10         MR. FOX:  I'm going to object.  That's

11         outside the scope of the discovery as limited

12         by the court.

13         MR. HOGAN:  Oh, that's dead on in the

14         discovery.  Because there's a factual

15         assertion that they're not going to benefit,

16         a I want no know what they've begun to

                    Page 41

062806.txt

17          investigate.

18               MR. FOX:  No, no.  Read the question

19     back?

20               MR. HOGAN:  Do you know, have you done

21     anything to investigate whether or not the

22     bondholders of the $2 billion of Delphi

23     Corporation debt referenced in the objection

24     believe that Delphi Corporation will benefit

25     from a restructuring of its labor cost.

                                                    51

1               Cimalore - rough draft

2               MR. FOX:  How does that go to factual

3     allegation supporting Wilmington Trust's

4     basis for objecting.

5               MR. HOGAN:  Because there's factual

6     assertion that there wouldn't won't be any

7     concrete benefit asserted on behalf of the

8     bondholders and I wanted to know if the

9     bondholders know.

10               MR. FOX:  What they think --

11               MR. HOGAN:  My question was, have you

12     done anything to investigate whether the

13     bolders, who holds the $2 billion of Delphi

14     debt referenced in the objection, believe

15     that Delphi Corporation would benefit from a

16     restructuring of its labor cost.

17               MR. FOX:  That's going to judgment, Al,

18     as opposed to factual allegations.  And

19     that's where we're not going.  This is --

20     this is not --

21               MR. HOGAN:  Can I get a yes or no to

22     that question.

062806.txt

23          MR. FOX:  No.  It's outside the scope.

24          MR. HOGAN:  I don't think it's outside

25      the scope at all.

                                                    52

1              Cimalore - rough draft

2          MR. FOX:  If you wanted to know what

3      other bond holdsers think, I guess you can

4      take their depositions and ask them for their

5      views.

6          MR. HOGAN:  I wasn't asking what other

7      bondholders think.

8          MR. FOX:  Your question goes judgment as

9      opposed to factual determination, and we're

10      not going there.

11          MR. HOGAN:  I'm going to read the

12      question one nor time.  It doesn't go to any

13      judgment.  The question is, has Wilmington

14      done anything toe investigate whether or not

15      the holders of the $2 billion of Delphi debt

16      reference it's in the objection believe that

17      Delphi Corporation will benefit from a

18      restructuring of its labor costs?

19          MR. FOX:  That's beyond the scope, we're

20      not going to answer that question.

21      Q.   Have you read any of the offering

22   memoranda with respect to the bonds under the

23   indenture?

24      A.   I have never seen a copy.

25      Q.   So in terms of the factual assertions

                                                    53

1              Cimalore - rough draft

062806.txt

 2  contained in the objection, it's fair to say that

 3  Wilmington did not consider any of the statements

 4  in the offering documents associated with the

 5  bonds that it represents.  Fair?

 6          MR. FOX:  When you ask that question,

 7       you say Wilmington.  Who are you referring

 8       to?

 9          MR. HOGAN:  Wilmington.

10          MR. FOX:  Specifically as --

11          MR. HOGAN:  It's a 30(b)(6) dep.

12          MR. FOX:  As opposed to its counsel?

13          MR. HOGAN:  Yeah, as opposed to its

14       counsel.

15      Q.   It's fair to say that Wilmington did not

16  consider any of the statements in the offering

17  documents associated with the bonds that it

18  represented.  Is that fair?

19      A.   The offering documents being prospectus?

20      Q.   Yes, sir.

21      A.   Correct.

22      Q.   Do you know has Wilmington reviewed any

23  10 Ks filed by Delphi Corporation?

24      A.   No.

25          You're talking prior to bankruptcy?

                                                    54

 1              Cimalore - rough draft

 2      Q.   Yes, sir.

 3      A.   No, I have not, and I don't believe we

 4  received any from the successor trustee.  But I

 5  have not.

 6          MR. HOGAN:  Why don't we take a

 7       two-minute break.  Thanks.
                     Page 44

062806.txt

```
 8              (description                    was marked
 9         Cimalore Exhibit 4 for identification, as of
10         this date.)
11              (description                    was marked
12         Cimalore Exhibit 5 for identification, as of
13         this date.)
14              (description                    was marked
15         Cimalore Exhibit 6 for identification, as of
16         this date.)
17              (description                    was marked
18         Cimalore Exhibit 7 for identification, as of
19         this date.)
20         Q.    Showing you what's been marked as
21    Exhibit 4 to your deposition.  Not to try and
22    trick you.  You testified a moment ago that you
23    don't believe you had reviewed any of the offering
24    documentation for the Delphi Corporation bonds
25    referenced in the objection.  I'll represent to
```

                                                    55

```
 1                   Cimalore - rough draft
 2    you that this is such a document.  Looking at
 3    this, does that refresh you in any sense in terms
 4    of having seen this document before?
 5         A.    I have not.
 6         Q.    You've seen prospectuses, though,
 7    correct?
 8         A.    I'm -- pertaining to this case, or
 9    pertaining to other cases in general?
10         Q.    In general.
11         A.    I have seen in my prior life, yes.
12         Q.    And you're familiar with the concept of
```

062806.txt

13    a risk factors section in prospectuses?

14        A.   Yes.

15        Q.   And in fact, on the --

16             In fact, on the document with the page

17    numbers S-3, of Exhibit 4, that's entitled risk

18    factors.  You see that?

19        A.   Yes.

20        Q.   Would you agree with me that for the

21    holder of a bond, that the elimination or

22    mitigation of a risk to the company that issued

23    that bond is a -- is a benefit to the bondholder?

24             MR. FOX:  I'm going to object.  And come

25             back to the court's determination.  Which is

                                                        56

1                 Cimalore - rough draft

2             to limit this to factual allegations

3             supporting Wilmington Trust's basis for

4             objecting to the motion.

5                 So I don't know how what you're

6             referring to would be a factual allegation

7             supporting Wilmington Trust's basis for the

8             objection.  It's your defense, and you can

9             raise this with the court if you want, be my

10            guest.  But I don't know how it supports

11            Wilmington Trust's trust basis for the

12            objection.

13            MR. HOGAN:  Well, that's the factual

14            assertion in the objection that Wilmington

15            has made that Delphi Corporation won't

16            receive any concrete benefit from that

17            restructuring.

18            MR. FOX:  Okay.

062806.txt

```
19          MR. HOGAN:  I'm testing that assertion.
20     That's completely what the deposition is
21     about, and we'll definitely be back in front
22     of the judge on this one.
23          MR. FOX:  And you're testing it with a
24     prospectus from 1999, how?
25          MR. HOGAN:  Well, my first question, I
```

                                                              57

```
 1               Cimalore - rough draft
 2     directed him there, and I'm talking
 3     generally, and I said, I want to know if the
 4     witness would agree that for the holder of a
 5     bond, the elimination or mitigation of a risk
 6     to the company that issued that bond is a
 7     benefit, or potential benefit to the
 8     bondholder.
 9          MR. FOX:  Well, who's to say -- the
10     debtor said it, so the --
11          MR. HOGAN:  Is your objection
12     speculation?
13          MR. FOX:  Well, you don't have a
14     foundation.  The fact that you wrote it, the
15     debtor wrote a document, and said in the
16     document that the debtor thought it was risk
17     factor.
18          MR. HOGAN:  Are you going to testify, or
19     is it a speculation objection.
20          MR. FOX:  No, I want to have a
21     discussion --
22          MR. HOGAN:  I don't want to have a
23     discussion.
```

                              Page 47

062806.txt

24          MR. FOX:  Well, we are, because I said,

25      it's way beyond the scope as limited by the

                                                        58

1              Cimalore - rough draft

2      court, and I think the foundation is real

3      suspect here.  Now -- I don't -- this witness

4      can't testify about this, and what he thinks,

5      what he tells you about this is irrelevant.

6          You can -- you can take this --

7          MR. HOGAN:  I appreciate your question.

8      So your objections, I think, are foundation,

9      speculation and irrelevant.

10          MR. FOX:  And beyond the scope as

11      limited by the court.

12          MR. HOGAN:  I guess agree with that, so

13      with all your objection --

14      Q.   My question is certainly, looking at the

15      risk factor section in a prospect you can us, any

16      prospectus, as a general matter, is the case that

17      a elimination or the mitigation of a risk is a

18      benefit to the bondholders?

19          MR. FOX:  If you understand and can

20      answer that, go ahead.

21      A.   I really don't.

22      Q.   Okay.  So in terms of -- does Wilmington

23      Trust seek to identify risks to the corporations,

24      to the corporations, with which it is -- engaged

25      as indenture trustee, or serves at indenture

                                                        59

1              Cimalore - rough draft

2      trustee?

3          MR. FOX:  I'll object to that.
                    Page 48

062806.txt

```
 4      Q.   Do you try to figure out if the

 5  companies have risks to their operations and

 6  finances, in your capacity as an indenture

 7  trustee?

 8      A.   Repeat that one more time.

 9      Q.   Yeah.  In Wilmington's capacity as an

10  indenture trustee, does it attempt to assess the

11  risks to a company's finances and operations?

12      A.   At what time?  If I'm not privy to the

13  document, I don't know --

14      Q.   At any time.  As you sit here today, are

15  you attempt to go assess the risks to the

16  companies for those accounts that you're managing?

17          MR. FOX:  Objection.  That's way beyond

18          the scope of this.  Objection.  You

19          specifically wanted to get into the internal

20          operations of Wilmington generally, and the

21          court said you can't.  And we're not going to

22          go down a path now.

23          MR. HOGAN:  I'm here because you're

24          objecting to a question that's pretty simple,

25          and I'm just trying to get a foundation.
                                                        60
 1          Cimalore - rough draft

 2          MR. FOX:  I understand, but the question

 3          is way beyond the scope of the deposition.

 4          MR. HOGAN:  It's not.  There's an

 5          assertion in the objection that Delphi

 6          Corporation won't receive any concrete

 7          benefit from the restructuring.

 8          MR. FOX:  Yeah.
```

Page 49

062806.txt

```
 9            MR. HOGAN:  And I'm testing that.

10      That's all I'm doing.

11            MR. FOX:  But you're not testing it

12      based on anything this witness knows anything

13      about.

14            MR. HOGAN:  If that's going to be the

15      answer, then that's fine.

16            MR. FOX:  He already testified, he's

17      never seen this before.

18            MR. HOGAN:  I can still put the document

19      in front of him, and test some of the

20      assertions and see if he has an opinion,

21      agrees one way or the other, whether or not

22      they've investigated.  That's all fair game.

23            MR. FOX:  Well, I don't think you can

24      based on the judge ace limitation, but if the

25      witness can answer, I'll let him answer.
```

                                                    61

```
 1                 Cimalore - rough draft

 2      Q.   Okay, so let's look at Exhibit 4, and on

 3  page S-4 of the document.  This is still in the

 4  risk factor section.  Of the prospectus for

 5  $1.5 billion of Delphi bonds.

 6            Do you see --

 7      A.   I'm sorry, where are you?

 8      Q.   I'm on page S-4, about two-thirded way

 9  down the page N all capital letters it reads, our

10  which is may be adversely impacted by work

11  stoppages and other labor relations matters

12  arising from the general conduct of business or

13  from the separation.  You see that?

14      A.   Uh-huh.  Yes.
```

Page 50

062806.txt

15        Q.    And then, the paragraph below that.

16   Could you see the sentence says, we are subject to

17   a risk of work stoppages and other labor relations

18   matters because our hourly work force is highly

19   unionized?  You see that?

20        A.    Yes and it's injection, General Motors,

21   in connection with the preparation of our company,

22   we will assume the terms of the national labor

23   agreements negotiated by General Motors.  You see

24   that sentence.

25        A.    Yes.

                                                          62

1              Cimalore - rough draft

2        Q.    Now, in terms of the statements in

3    Wilmington's objection that Delphi Corporation

4    won't receive any concrete benefit from a

5    restructuring of its labor costs, did you consider

6    the fact that the corporation was subject to a

7    risk of work stoppages and other labor relations

8    matters, because its hourly work force was highly

9    unionized?

10             MR. FOX:  I'm going to object.  I think

11        we need to clarify the question.  Are you

12        asking him whether he reviewed these risk

13        factors, in making his determination?  Or

14        whether he considered the issue generally?

15        Because he already told you, he never read

16        this.

17             MR. HOGAN:  My question was, in terms of

18        authorizing the objection, did Wilmington

19        consider the fact that Delphi Corporation was

062806.txt

```
20        subject to a risk of work stoppages and other
21        labor relations matters, because its hourly
22        work force was highly unionized?  Did you
23        consider that?
24            MR. FOX:  Well, and then the other
25        question, I think, the clarification is
```

                                                      63

```
 1            Cimalore - rough draft
 2        needed, you're talking about democrat
 3        corporation specifically?
 4            MR. HOGAN:  I said definitely
 5        corporation is.
 6            MR. FOX:  Or the U.S. entities
 7        generally.
 8            MR. HOGAN:  I said Delphi Corporation.
 9            MR. FOX:  Well, then, you don't have a
10        foundation for the question.  The witness can
11        answer if he can.
12        Q.   In terms of authorizing the objection,
13    did Wilmington consider the fact that Delphi
14    Corporation was subject to a risk of work
15    stoppages and other labor relations matters
16    because its hourly work force was highly
17    unionized?
18            MR. FOX:  Objection.
19            You can answer.
20        A.   Yes.
21        Q.   How did you consider it?
22        A.   Through discussions with counsel.
23        Q.   Any other way?
24        A.   In committee meetings.
25        Q.   Do you agree that Delphi Corporation is
```

062806.txt

64

```
 1              Cimalore - rough draft
 2    subject to a risk of worm work stoppages and other
 3    labor relations matters because its work force is
 4    highly unionized?
 5          MR. FOX:  Objection.  There's no
 6          foundation for that question.
 7      Q.   Is that your belief one way or the
 8    other?
 9      A.   Repeat it?
10      Q.   Do you agree that dealt corporation is
11    subject to a risk of work stoppages and other
12    labor relations matters because its work force is
13    highly unionized?
14          MR. FOX:  Again, I'm going to object.
15          And just to clarify, you're specifically
16          referring to Delphi Corporation or the
17          operating entities?
18          MR. HOGAN:  I keep saying Delphi
19          Corporation.
20          MR. FOX:  I want to be sure, because
21          that gets misunderstood a lot.
22          MR. HOGAN:  If you listen, that's what
23          my questions are saying.
24          MR. FOX:  Okay.  You can answer if you
25          can.
```

65

```
 1              Cimalore - rough draft
 2      A.   I do not know.
 3      Q.   If you can take a look at page S-20 of
 4    Exhibit 4.
```

062806.txt

      5       A.    S-20?

      6       Q.    Yes.

      7             Do you understand in general that part

      8    of Wilmington's objection relates to the granting

      9    of certain claims to General Motors for General

     10    Motors agreeing to assume certain pension and post

     11    retirement benefits?

     12       A.    Yes.

     13       Q.    And I take it it's your position that

     14    Delphi Corporation won't receive any concrete

     15    benefit from General Motors agree to go assume

     16    certain pension and post retirement benefit

     17    obligations.  Is that right?

     18             MR. FOX:  I'm going to object, but you

     19        can answer.

     20       Q.    Do you have the question in mind?

     21       A.    No.  None that was demonstrated to me,

     22    no.

     23       Q.    Now taking a look at page S-20 of

     24    Exhibit 4, about a third of the way down, in all

     25    capital letters, there's a heading that says, our

                                                             66

      1             Cimalore - rough draft

      2    other post retirement employee benefits in

      3    underfunded pension obligation.  You see that?

      4       A.    Yes.

      5       Q.    And then the first sentence of that

      6    reads in connection with our separation from

      7    General Motors, we have entered into several

      8    agreements relating to pensions and other post

      9    retirement employee benefits for our employees, as

     10    well as certain employees associated with prior

                          Page 54

062806.txt

11  divestitures.

12          Do you see that?

13  A.    Yes.

14  Q.    And so, in -- in reaching your

15  conclusion that Delphi Corporation won't receive

16  any concrete benefits from the attrition plan, did

17  you consider any agreements that Delphi

18  Corporation had entered into, relating to pensions

19  and other post retirement employee benefits?

20          MR. FOX:   I'm going to object.

21  Q.    Did Wilmington consider?

22          MR. FOX:   You can answer.

23  A.    I haven't seen any agreement.

24          MR. FOX:   And by the way, we have the --

25          you produced some of the agreements and they

                                                        67

1           Cimalore - rough draft

2           were produced as highly confidential, so he's

3           not able to see them.

4   Q.    My question wasn't related to

5   rereviewing the agreements.  My question was, did

6   you consider any agreements that Delphi

7   Corporation had entered into relating to pensions

8   and other post retirement employee benefits?

9           MR. FOX:   How can he consider the

10          agreement, Al if you won't let him see them?

11          MR. HOGAN:   He can take a look at page S

12          20 of the offering document and realize that

13          Delphi Corporation said that it entered into

14          agreement regarding pension and other post

15          retirement pro benefits.

                        Page 55

062806.txt

16          MR. FOX:  Yeah, but you can't look at

17     the agreements themselves and see what they

18     are say.

19          MR. HOGAN:  I don't want to argue.

20          MR. FOX:  Listen, I appreciate the fact

21     that you want to ask the question, but let's

22     not play a game of gotcha where you're asking

23     him about a description of documents, you

24     produced the documents but won't let him see

25     them, and then you want to help point out to

                                                    68

1          Cimalore - rough draft

2     the court, apparently, that you know, he

3     didn't consider that.  Well, you know what?

4     Wilmington Trust through its counsel sure

5     did, and we'll be prepared to go true that

6     with the court if you want to, to the extent

7     it's all relevant.  But it's inappropriate,

8     in my view, to bring a witness here and then

9     ask him whether he's considered things based

10     on document us that won't let him look at,

11     and we're not going to continue down this

12     path.

13          MR. HOGAN:  I'm not asking about

14     documents that he hasn't looked at.

15          MR. FOX:  Yes, you are, because that is

16     description of documents that he contact see.

17          MR. HOGAN:  It's a statement that's

18     publishly disclosed.  And my question is --

19          MR. FOX:  Well if you want to ask him if

20     he considered the statement, you can ask him

21     that.

062806.txt

22          MR. HOGAN:  Sure.

23          MR. FOX:  But you want to ask him about

24      the underlying substance without letting him

25      see the documents.

                                                    69

 1          Cimalore - rough draft

 2          MR. HOGAN:  I didn't ask him any

 3      questions, so let's agree to disagree with

 4      what my prior question was.

 5      Q.   In terms of authorizing the objection

 6  and the statement about no concrete benefits to

 7  Delphi Corporation, did Wilmington consider

 8  whether or not Delphi would benefit in terms of

 9  relieving obligations under agreements that it

10  might have entered into, relating to pensions and

11  other post retirement employee benefits?

12          MR. FOX:  I'm going to object, and have

13      you clarify.  When you say Wilmington, are

14      you including its counsel?

15          MR. HOGAN:  If I want to do that at any

16      time during this deposition, I can make it

17      explicit.

18          MR. FOX:  Is so, when you say

19      Wilmington, you mean independent of its

20      counsel.

21          MR. HOGAN:  I mean Wilmington Trust.

22      That's right.

23      A.   No.

24      Q.   Other than discussions with counsel,

25  have you engated in any discussions with anyone

                                                    70

Page 57

062806.txt

1              Cimalore - rough draft

2    about the agreements relating to pensions and

3    other post retirement pro benefits, that Delphi

4    Corporation might be a party to?

5         A.   No.

6              (Discussion off the record.)

7         Q.   Can we go to what's been marked as

8    Exhibit 7 to your deposition.

9              Again, not a trick question.  I think

10   you answered previously, that you have not

11   reviewed form 10 Ks for Delphi Corporation prior

12   to the filing of the bankruptcy, and this appears

13   to be such a document, but looking at Exhibit 7,

14   does that refresh you at all that you might have

15   seen this before?

16        A.   I have not.

17        Q.   Taking a look at page 17 of Exhibit 7,

18   there is -- halfway down the page, there is

19   something that's titled employees -- union

20   representation.  You see that?

21        A.   Yes.

22        Q.   Take a look at that paragraph, and then

23   the chart below that.  Let me know when you've

24   looked at that.

25        A.   Okay.

                                                    71

1              Cimalore - rough draft

2         Q.   In that paragraph, you see that Delphi

3    Corporation is disclosing that as of December 31,

4    2000 --

5              MR. FOX:  Objection.

6         Q.   Exclude --
              Page 58

062806.txt

7           MR. HOGAN:  I'm not done with my
8       question.
9           MR. FOX:  Your question does not
10      necessarily accurately reflect what the
11      document says.
12          MR. HOGAN:  And I appreciate it's your
13      objection.  Let me finish my question.
14          MR. FOX:  Well, why don't you correct
15      your question.
16          MR. HOGAN:  I'll ask it, and they be --
17      I know what objection you're going to make,
18      and you can make T and then we'll go from
19      there.
20          MR. FOX:  I'm not sure do you.
21          MR. HOGAN:  I'm pretty sure I do.
22          MR. FOX:  Okay.
23      Q.   The -- page 17, the paragraph that I
24  directed to you, Delphi Corporation discloses in
25  its 10 K that as of December 31, 2000, excluding

                                                72

1               Cimalore - rough draft
2   all joint ventures and other venture, we employed
3   approximately 211,000 people, of which
4   approximately 38,000 were salaried employees, and
5   approximately 173,000 were hourly employees.
6           Do you see that sentence?
7       A.   Yes.
8       Q.   In the next sentence goes on discuss the
9   composition of those hourly employees, in terms of
10  their respective unions.  You see that?
11      A.   Yes.

                        Page 59

062806.txt

12        Q.   Now, in terms of the statement in the

13   objection, that Delphi Corporation will not

14   receive any concrete benefit from a restructuring

15   of its labor costs, did Wilmington consider the

16   fact that Delphi Corporation has a significant

17   union work force?

18        MR. FOX:  I'm sorry.  Wait a minute.

19        Q.   And again, that's irrespective of your

20   counsel.  I'm saying did Wilmington.

21        MR. FOX:  Wait a minute.  That question

22        is all over the line.  First of all, let's

23        decide whether we're asking a question based

24        on the document or whether you're just asking

25        him the question without reference to the

                                                        73

1             Cimalore - rough draft

2        document.  And if you're asking with respect

3        to the document, then this document is based

4        on a -- is -- all these statements are on a

5        consolidated basis.  And then you're trying

6        ask him about Delphi Corporation.  The

7        individual entity presumably.  You know, come

8        on, you can't -- you can't play that.

9        Doesn't work.

10        MR. HOGAN:  Uh-huh.

11        MR. FOX:  We're not going to do that.

12        Q.   My question is, in looking at the

13   motion, the objection -- strike that.

14             In looking at the objection, the

15   statement that there's -- that Delphi Corporation

16   won't receive any concrete benefit from the

17   restructuring of labor costs, did Wilmington

062806.txt

18   consider one way or the other whether or not

19   Delphi Corporation employed a significant union

20   labor force?

21           MR. FOX:  Objection.  Lack of

22       foundation.

23       Q.   Did you consider it one way or the

24   other?

25           MR. FOX:  If you understand, you can

                                                      74

1           Cimalore - rough draft

2        answer.  You can try to answer.

3        A.   Sure.

4        Q.   How did you consider it?

5        A.   Other than, you know, based on my

6    discussions with counsel, and what we've put in

7    our objection, I don't have anything else to add

8    to that.

9    DIR  Q.   Do you think a reasonably prudent

10   investor would believe that there's a concrete

11   benefit to Delphi Corporation for restructuring

12   its labor costs?  To Delphi Corporation.

13           MR. FOX:  I'm going to object.  That's

14       outside the scope of this examination.  The

15       witness is not going to answer that question.

16   DIR  Q.   Do you know one way or the other?

17           MR. FOX:  That -- the witness isn't

18       going to answer the question.

19       Q.   In terms of authorizing the filing of

20   the objection -- strike that.

21           A little bit of foundation.  Having read

22   the motion, you understand at least it's the

062806.txt

23   debtor's position that the UAW supplement and the

24   IUE-CWA special attrition plan will benefit the

25   debtor's estate, correct?  You understand that's

                                                          75

1              Cimalore - rough draft

2   their position.  I'm not asking if you agree with

3   it.

4        A.   Yes.

5        Q.   In terms of Wilmington's decision to

6   agree to file -- with the filing of the objection

7   to the motion, other than discussions with

8   counsel, did you do anything to assess what the

9   benefits to the estates and Delphi Corporation in

10   particular might be, if the attrition plans were

11   approved?

12       A.   Repeat that one more time.

13       Q.   Yeah.  In terms of Wilmington's decision

14   to file the objection to the motion, other than

15   discussions with counsel, did you do anything to

16   assess what the benefits to Delphi Corporation

17   might be, if the attrition plans were approved?

18       A.   No.

19       Q.   Same question in terms of the decision

20   to file objection other than discussions with

21   counsel, did you do anything to assess what the

22   cost to Delphi Corporation might be, if the

23   attrition plans were not approved?

24       A.   No.

25       Q.   Other than discussions with counsel,

                                                          76

1              Cimalore - rough draft

2   have you had any conversations with anyone about

                    Page 62

062806.txt

```
 3   the risks to Delphi Corporation if the attrition
 4   plans aren't approved?
 5        A.   No.
 6             MR. HOGAN:  Let's take two minutes, we
 7        might be done.
 8             (A recess was taken.)
 9             (description                was marked
10        Cimalore Exhibit 8 for identification, as of
11        this date.)
12        Q.   Showing you what's been marked as
13   Exhibit 8 to your deposition, can you tell me what
14   that is?
15        A.   It's the instrument of resignation,
16   appointment and acceptance.
17        Q.   Is there a -- is there any other
18   document or agreement that you're aware of that
19   exists between Delphi Corporation and Wilmington
20   Trust company?
21        A.   No.
22   DIR  Q.   Is there -- is there a steering
23   committee -- is there a steering committee of
24   securities holders, that you've worked with in
25   terms of managing this account?
```

                                              77

```
 1             Cimalore - rough draft
 2             MR. FOX:  Objection.  It's outside the
 3        scope of the examination as limited by the
 4        court.  Not going to answer that.
 5   DIR  Q.   In terms of -- in terms of the -- the
 6   various objections that Wilmington Trust has filed
 7   in this case, just some foundation questions.
```

062806.txt

8          Can you tell me yes or no, have you been

9   the person that's approved the filing of all of

10  the previous objections?

11          MR. FOX:  I'm going to object, instruct

12      the witness not to answer.  It's outside the

13      scope of this deposition, as instructed by

14      the court.

15      Q.   Here is my point.  I'm the not trying to

16  hide anything am I'm trying to get it the facts

17  that we've been talking about this objection.

18  Some of the factual assertions are recitation of

19  themes that we've seen previously.  I'm just

20  trying to get at if there's anything that's

21  happened previously in terms of learning facts

22  from other parties other than counsel that I need

23  to explore?

24          MR. FOX:  Why don't you ask him if that

25      fashion, okay?

                                                78

1          Cimalore - rough draft

2          MR. HOGAN:  That's what what I was

3      trying to do.

4      Q.   So let me ask this question.  In terms

5   of the filing of any other objection by Wilmington

6   Trust in this case --

7          Have you had conversations with parties

8   other than counsel?

9          MR. FOX:  I'm going to object.  And

10      instruct the witness not to answer.  It's

11      outside it's scope.  And it's -- it's outside

12      the scope of this exam.

13  DIR  Q.   As a yes-or-no proposition, can you tell

                        Page 64

062806.txt

14    me if you've had discussions with anyone?

15         MR. FOX:  I'm going to object and

16         instruct the witness not to answer.  It's

17         outside the scope of this examination.

18  DIR  Q.   Have you been the person who as approved

19  the filing of Wilmington Trust's prior objections?

20         MR. FOX:  Objection go object, and

21         instruct the witness not it answer.  It's

22         outside the scope of this examination as

23         limbed by the court.

24         MR. HOGAN:  It's absolutely not.  It's

25         not outside the scope, it's not a harmful

                                                    79

1              Cimalore - rough draft

2         question in any respect, I'm trying to get at

3         the foundation of this questions as built up

4         over time (tape).

5  DIR  Q.   Let me ask a few foundational questions,

6  and it's answer may be obvious.  So let me try

7  again.

8         Are you the person that has authorized

9  the filing of the previous objections on behalf of

10  Wilmington Trust in this case?

11         MR. FOX:  Objection.  Instruct the

12         witness not to answer.  It's outside the

13         scope of this exam as limited by the court.

14         Q.   Are any of the facts that you're relying

15  on in the current objection derived from your

16  prior analysis or consideration of any other

17  filing on behalf of Wilmington Trust in this case?

18         A.   Off the top of my head, I don't know.  I

                            Page 65

062806.txt

19    don't have the other objections here.

20         Q.   In terms of assessing the -- the

21    assertions in the motions -- I'm sorry, in terms

22    of assessing the motions made in the objection,

23    did you rely on any discussions you had had with

24    parties other than your counsel, at any time?

25              MR. FOX:   Could you just read that back?

                                                        80

 1              Cimalore - rough draft

 2              MR. HOGAN:   Yeah.

 3              MR. FOX:   Just as you said.   Just --

 4         Q.   In terms of assessing the assertions in

 5    the objection we're been discussing today, did you

 6    rely on any discussions you had with parties other

 7    than your counsel, at any time?

 8         A.   Including committee?

 9         Q.   Yeah.

10         A.   No.

11         Q.   In terms of the final decision as to

12    whether or not to file the objection, did you rely

13    on discussions that you had with any parties other

14    than your counsel, at any time?

15              MR. FOX:   I'm going to object.   That's

16              outside it's scope of the direct as limited

17              by court.

18              MR. HOGAN:   It's really not, and if the

19              answer is no, we know what the answer is.

20              I --

21              MR. FOX:   It's outside the scope.

22              MR. HOGAN:   Why don't you confer with

23              your client, see if the answer is no --

24              MR. FOX:   I think I know what the answer

                    Page 66

062806.txt

25        is going to be, it's still outside the scope.

                                                      81

1              Cimalore - rough draft
2         MR. HOGAN:  If the answer, as I suspect
3     is, no, we're eliminating a potential fight
4     when we don't have to have it.
5         MR. FOX:  No, it just gives your partner
6     another, you know, something else to say.
7     Q.   Okay, well, then, let me ask this
8  question, then, I tell you, if you're not --
9  you're going to follow your counsel's instruction,
10  to not provide the answer, to the question, that
11  I'm about to read.  In terms of the final decision
12  as to whether or not to file this objection, did
13  you rely on discussions that you had with any
14  parties other than your counsel, at any time?
15        MR. FOX:  If you limit it to factual
16     matters, then he can answer.
17        MR. HOGAN:  I'm not going to limit it to
18     factual matters.
19        MR. FOX:  You can answer as to factual
20     matters.
21        MR. HOGAN:  I'm not so limiting my
22     question.
23        MR. FOX:  That's okay.  But I'm limiting
24     how he can answer.
25     A.   As to factual matters, no.

                                                      82

1              Cimalore - rough draft
2     Q.   Okay.
3        MR. HOGAN:  I'm done.  Thanks.  Anybody
                    Page 67

                              062806.txt
      4          else?
      5               Thank you.
      6
      7
      8
      9
     10
     11
     12
     13
     14
     15
     16
     17
     18
     19
     20
     21
     22
     23
     24
     25